CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Carlos Holguín (Cal. Bar No. 90754)
Peter A. Schey (Cal. Bar No. 58232)
Marchela Iahdjian (Cal. Bar No. 295595)
256 South Occidental Boulevard
Los Angeles, CA  90057
Telephone:   (213) 388-8693
Facsimile:    (213) 386-9484
Email: crholguin@centerforhumanrights.org
          pschey@centerforhumanrights.org
          marchela@centerforhumanrights.org

WILLIAM A. MOLINSKI (STATE BAR NO. 145186)
wmolinski@orrick.com
T. WAYNE HARMAN (STATE BAR NO. 254089)
wharman@orrick.com
ELENA GARCIA (STATE BAR NO. 299680)
egarcia@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street
Suite 3200
Los Angeles, California  90017
Telephone:  +1-213-629-2020
Facsimile:    +1-213-612-2499

*Attorneys for Plaintiffs* (listing continues on following page)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| Jenny Lisette Flores, *et al.*,<br><br>              Plaintiffs,<br><br>       v.<br><br>Jeh Johnson, Secretary, U.S. Department of Homeland Security, *et al.*,<br><br>              Defendants. | Case No. CV 85-4544-DMG<br><br>REPLY TO OPPOSITION TO MOTION TO ENFORCE SETTLEMENT OF CLASS ACTION<br><br>Hearing:   March 27, 2015<br>Time:        9:30 a.m.<br>Courtroom 7, 312 N. Spring Street |

1

*Plaintiffs' counsel, continued:*

2

3   LA RAZA CENTRO LEGAL, INC.
    Michael S. Sorgen (Cal. Bar No. 43107)

4   474 Valencia Street, #295
    San Francisco, CA 94103

5   Telephone: (415) 575-3500

6
    THE LAW FOUNDATION OF SILICON VALLEY
7   LEGAL ADVOCATES FOR CHILDREN AND YOUTH
    Jennifer Kelleher Cloyd (STATE BAR NO. 197348)
8   Katherine H. Manning, (STATE BAR NO. 229233)

9   PUBLIC INTEREST LAW FIRM
    Kyra Kazantzis (STATE BAR NO. 154612)
10  James Zahradka (STATE BAR NO. 196822)

11  Annette Kirkham (STATE BAR NO. 217958)
    152 North Third Street, 3rd floor
12  San Jose, CA 95112

13  Telephone:  (408) 280-2437
    Email: jenniferk@lawfoundation.org
14          kate.manning@lawfoundation.org

15          kyrak@lawfoundation.org
            jamesz@lawfoundation.org
16          annettek@lawfoundation.org

17
    *Of counsel:*
18

19  YOUTH LAW CENTER
    Alice Bussiere (Cal. Bar No. 114680)
20  Virginia Corrigan (Cal. Bar No. 292035)

21  200 Pine Street, Suite 300
    San Francisco, CA 94104
22  Telephone: (415) 543-3379 x 3903

23
    Ranjana Natarajan (Cal. Bar No. 230149)
24  UNIVERSITY OF TEXAS SCHOOL OF LAW

25  Civil Rights Clinic
    727 E. Dean Keeton St.
26  Austin, TX 78705

27  Telephone: (512) 232-7222
    Email: rnatarajan@law.utexas.edu
28

TABLE OF CONTENTS

I   INTRODUCTION ................................................................................................. 1

II  THE COURT SHOULD CONSTRUE THE SETTLEMENT ACCORDING TO ITS PLAIN
    MEANING: THAT IS, AS APPLYING TO *ALL* CHILDREN TAKEN INTO
    IMMIGRATION CUSTODY, AND NOT ONLY THOSE WHO ARE
    UNACCOMPANIED AT THE TIME OF APPREHENSION. ........................................... 2

    A   The plain text of the Settlement clearly protects *all* minors in
        defendants' custody, accompanied or not. .............................................. 2

    B   Nothing in the "context" of the Settlement supports denying
        accompanied children the agreement's protections. ............................... 6

        1   The Settlement properly provides more children greater
            protections than requested in plaintiffs' original
            complaint. ......................................................................................... 6

        2   The Settlement's class definition is wholly unrelated to
            the INA's definition of "child." .................................................... 7

        3   The Settlement's referring to "dependent" minors in no
            way excludes accompanied children from its protections. ......... 8

        4   The regulatory scheme at the time the parties settled
            demonstrates that the Settlement's release requirements
            apply fully to children apprehended with their mothers. .......... 10

    C   Courts have previously held the Settlement applicable to
        accompanied minors; defendants offer no reason this Court
        should not do the same. ............................................................................ 11

III ICE'S "FAMILY" DETENTION FACILITIES ARE FAR FROM SUBSTANTIALLY
    COMPLIANT WITH THE SETTLEMENT. .................................................................. 14

IV  A TEMPORARY INCREASE IN THE NUMBER OF CHILDREN APPREHENDED
    WITH THEIR MOTHERS DOES NOT EXCUSE DEFENDANTS' BREACHING A
    CONSENT DECREE OR DETAINING CHILDREN FOR UNLAWFUL ENDS. ................ 15

V   ICE MUST PROPERLY EXERCISE DISCRETION TO RELEASE FAMILIES
    TOGETHER. ............................................................................................................ 16

1

**TABLE OF CONTENTS**
(continued)

2                                                                                   **Page**

3    VI    DEFENDANTS FAIL TO CONTEST THE FACTS SET OUT IN NUMEROUS

4          DECLARATIONS DETAILING SUBSTANDARD CONDITIONS IN BORDER

5          PATROL FACILITIES. ........................................................................ 16

6    VII   CONCLUSION ............................................................................... 24

7    / / /

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alday v. Raytheon Co.*, 693 F.3d 772 (9th Cir. 2012)................................5

*Badgley v. Santacroce*, 800 F.2d 33 (2d Cir. 1986), *cert. denied*, 479 U.S. 1067 (1987) ................................14

*Bunikyte v. Chertoff*, 2007 WL 1074070; 2007 U.S. Dist. LEXIS 26166 (W.D. Tex. Apr. 9, 2007)................................12

*de Jesus Ortega Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) ................23

*Local 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501; 92 L. Ed. 2d 405; 106 S. Ct. 3063 (1986) ................................7

*Matter of Granados-Gutierrez*, No. A206-848-455 (IJ, October 28, 2014) ..........13

*Matter of Granados-Gutierrez*, No. A206-848-455 (IJ, September 8, 2014) ................................13

*Missouri P. R. Co. v. Winburn Tile Mfg. Co.*, 461 F.2d 984 (8th Cir. 1972) ................................5

*Orantes-Hernandez v. Smith*, 541 F. Supp. 351 (C.D. Cal. 1982)................23

*Reno v. Flores,* 507 U.S. 292; 113 S.Ct.1439; 123 L.Ed.2d 1 (1993) ................10

*Taracorp, Inc. v. NL Indus., Inc.*, 73 F.3d 738 (7th Cir. 1996)................5

*United States v. Asarco Inc.*, 430 F.3d 972, (9th Cir. 2005) ................5

*United States v. Davis*, 261 F.3d 1 (1st Cir. 2001)................6

*Warehousemen's Union Local No. 206 v. Continental Can Co.*, 821 F.2d 1348 (9th Cir. 1987) ................6

**Statutes and Regulations**

42 U.S.C. 5633(a)(11)................................9

47 Fed. Reg. 30044, 30045 (July 9, 1982) ................................11

8 C.F.R. § 1236.3(b) (2015) ................................16

REPLY TO OPPOSITION TO ENFORCE SETTLEMENT OF
CLASS ACTION
CV 85-4544-DMG

8 C.F.R. § 212.5 (1983)........................................................................................11

8 C.F.R. § 212.5(a)(3) (1997) ..............................................................................11

Cal. Health & Safety Code §§ 1500, *et seq.*.........................................................9

Cal. Welf. & Inst. Code § 300 ...............................................................................10

**Other authority**

17 C.J.S. Contracts § 31 .........................................................................................6

/ / /

# I       INTRODUCTION

Defendant Immigration and Customs Enforcement (ICE) admits it makes no effort to minimize children's detention as Part VI of the Settlement requires. ICE similarly concedes that contrary to Settlement ¶ 19 it is now holding hundreds of children in secure facilities that are not licensed to house dependent minors.

Defendants urge the Court to condone both violations on the ground that the Settlement protects only *unaccompanied* minors, and not children apprehended with their mothers, despite the agreement's expressly covering "'[a]ll minors who are detained in the legal custody of the INS'" or its successor agencies, including ICE. Settlement ¶ 10.

As will be seen, defendants offer no valid reason the Court should decline to enforce the Settlement in accord with its plain terms. Nothing in the agreement, or in law or fact, supports defendants' claim that ICE should be free to *maximize* the detention of children merely because they were apprehended with their mothers. Nor does anything in the agreement support defendants' notion that ICE may consign children apprehended with their mothers to unlicensed lock-ups.

For its part, Customs and Border Protection concedes the Settlement requires it to treat all children—accompanied or not—with due regard "for the particular vulnerability of minors." Settlement ¶ 12. The agency instead argues that it in fact treats children properly, despite having neither coherent standards for, nor effective monitoring of, the actual conditions and treatment children experience in Border

Patrol holding cells. CBP makes no effort to refute the facts set out in plaintiffs' many declarations, in which *numerous* detainees consistently describe Border Patrol conditions as wholly unacceptable. Plaintiffs' evidence that children are poorly treated in Border Patrol facilities is simply too voluminous and disturbing to brush aside on the weight of defendants' general protestation to the contrary.

II    THE COURT SHOULD CONSTRUE THE SETTLEMENT ACCORDING TO ITS PLAIN MEANING: THAT IS, AS APPLYING TO *ALL* CHILDREN TAKEN INTO IMMIGRATION CUSTODY, AND NOT ONLY THOSE WHO ARE UNACCOMPANIED AT THE TIME OF APPREHENSION.

   A    **The plain text of the Settlement clearly protects *all* minors in defendants' custody, accompanied or not.**

Paragraph 10 of the Settlement unambiguously defines the class it protects as follows: "The certified class in this action shall be defined as follows: 'All minors who are detained in the legal custody of the INS.'" In *numerous* other provisions, the Settlement reinforces the plain language of ¶ 10, providing that the agreement shall extend to *all* minors whether unaccompanied at the time of apprehension or not.

• Settlement definition 4 defines the term "minor" "[a]s used throughout this Agreement" as applying to "*any person under the age of eighteen (18) years who is detained in the legal custody of the INS.*" (Emphasis supplied.)

• In ¶ 9 the Settlement declares: "This Agreement sets out nationwide policy

- 2 -

for the detention, release and treatment of *minors in the custody of the INS…"* (Emphasis added.)

- Settlement ¶ 11 provides: "The INS … shall continue to treat, *all minors in its custody* with dignity, respect and special concern for their particular vulnerability as minors," and further, that "[t]he INS shall place *each detained minor* in the least restrictive setting appropriate to the minor's age and special needs …" (Emphasis added.)

- Addressing the delay an "influx" may cause before INS can transfer a child to a licensed placement, Settlement ¶ 12 provides: "The INS … shall place *all minors* pursuant to Paragraph 19 as expeditiously as possible…" (Emphasis added.)

- Paragraph 12C requires that "the INS shall have a written plan that describes the reasonable efforts that it will take to place *all minors* as expeditiously as possible …" in licensed placements. (Emphasis supplied.)

- Paragraph 24B provides:  "*Any minor* who disagrees with the INS's determination to place that minor in a particular type of facility, or who asserts that the licensed program in which he or she has been placed does not comply with the standards set forth in Exhibit 1 attached hereto, may seek judicial review ...." (Emphasis supplied.)

- Settlement ¶ 24D provides, "The INS shall promptly provide *each minor* not released with … an explanation of the right of judicial review …" (Emphasis

added.)

• In ¶ 28A the agreements states: "An INS Juvenile Coordinator … shall maintain an up-to-date record of *all minors* who are placed in proceedings and remain in INS custody for longer than 72 hours." (Emphasis added.)

Though defendants complain that the "entirey of Plaintiffs' argument rests upon the premise that … the Agreement defines the class as '[a]ll minors in the legal custody of the INS…" Opposition at 10, references to "all minors" permeate the Settlement and are *far* too numerous to dismiss as mere imprecision in drafting.

To the contrary, the plain text of the Settlement demonstrates that the parties specifically addressed *unaccompanied* minors *when they wished to do so*.

Parapraph 12 thus provides: "The INS will segregate *unaccompanied* minors from unrelated adults. Where such segregation is not immediately possible, an *unaccompanied* minor will not be detained with an unrelated adult for more than 24 hours." (Emphasis supplied.)

Again in ¶ 25, the parties stipulated: "*Unaccompanied* minors arrested or taken into custody by the INS should not be transported by the INS in vehicles with detained adults …" (Emphasis supplied.)

Finally, the parties also *expressly* identified those detained minors to whom the class definition would *not* apply: "The term "minor" shall *not* include an emancipated minor or an individual who has been incarcerated due to a conviction for a criminal offense as an adult." Settlement, definitions ¶ 4 (emphasis added).

- 4 -

The Settlement's *numerous* provisions expressly protecting "all minors" aside, the parties' *expressly* excluding emancipated and criminal juveniles from the class definition, and their *expressly* addressing unaccompanied minors *when they wished,* underscore the want of merit in defendants' cause. "In construing a contract, [courts] assume that the use of different language to define different obligations was deliberate and accompanied by an intention to convey different meanings rather than the same one." *Missouri P. R. Co. v. Winburn Tile Mfg. Co.*, 461 F.2d 984, 988-89 (8th Cir. 1972); *accord Alday v. Raytheon Co.*, 693 F.3d 772, 784 n.10 (9th Cir. 2012), *quoting Taracorp, Inc. v. NL Indus., Inc.*, 73 F.3d 738, 744-45 (7th Cir. 1996) ("We assume that the same words have the same meaning … and that the choice of substantially different words to address analogous issues signals a different approach."). Obviously, had the parties intended the agreement to protect only a subgroup of "all minors" they would have inserted a single word into the class definition to accomplish that purpose: *e.g.,* "[a]ll *unaccompanied* minors who are detained in the legal custody of the INS."

Though they concede that the meaning of the Settlement "must be discerned within its four corners, extrinsic evidence being relevant only to resolve ambiguity in the decree," Opposition at 8, *citing United States v. Asarco Inc.*, 430 F.3d 972, 980 (9th Cir. 2005), defendants insist the Settlement does not mean what it says— *i.e.,* that it protects "[a]ll minors," not only those unaccompanied at the time of apprehension—over and over again. Defendants' arguments for ignoring the plain

REPLY TO OPPOSITION TO ENFORCE SETTLEMENT OF
CLASS ACTION
CV 85-4544-DMG

1   text of the agreement are meritless.

2   **B      Nothing in the "context" of the Settlement supports denying**
3
4           **accompanied children the agreement's protections.**

5       Attempting to evade the unambiguous text of the agreement (and

6   inconvenient principles for construing consent decrees), defendants offer a grab bag

7   of reasons the Court should "interpret" the agreement contrary to its plain terms.[1]

8   Each of these reasons is quickly discovered as insubstantial.

9

10          1      The Settlement properly provides more children greater

11
12                 protections than requested in plaintiffs' original complaint.

13      Defendants first suggest that the Settlement should be held inapplicable to

14  accompanied children because plaintiffs initially challenged the former-INS's

15
16  policy to release minors only to their parents or legal guardians. Opposition at 4.

17      Even assuming, *arguendo*, this action were as narrow as defendants

18
19  contend—and it was not[2]—it is well-settled that even "unpleaded claims … [can]

20  be part of consent decrees." *United States v. Davis*, 261 F.3d 1, 22 (1st Cir. 2001).

21  In short, nothing barred defendants from "from entering a consent decree merely

22

23  _____

24  [1] "'The fact that differences subsequently arise between the parties as to the
    construction of the contract . . . is not of itself sufficient to affect the validity of the
25  original contract or to show that the minds of the parties did not meet with respect
    thereto.'" *Warehousemen's Union Local No. 206 v. Continental Can Co.*, 821 F.2d
26  1348, 1350-51 (9th Cir. 1987), *quoting* 17 C.J.S. Contracts § 31.

27  [2] Nothing in the original proposed class definition limited plaintiffs' claims to
28  unaccompanied minors. *See* Complaint, July 11, 1985, at 8-9.

because the decree provides broader relief than the court could have awarded after a trial." *Local 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525; 92 L. Ed. 2d 405; 106 S. Ct. 3063 (1986).

Whatever the parameters of the parties' initial dispute, they were free to protect all apprehended children—as the Settlement expressly does—and not merely those who are unaccompanied.[3]

> 2      The Settlement's class definition is wholly unrelated to the INA's definition of "child."

Defendants next dismiss the Settlement's extending protections to "all minors" as a device to avoid confusion with the INA's definition of "child."

The Settlement, however, *consistently* refers to the beneficiaries of the agreement as "minors" or "juveniles," and uses the term "child" *only* to specify the type of facilities in which non-delinquent class members must be placed. *See* Settlement definition ¶ 6 ("The term 'licensed program' shall refer to any program, agency or organization that is licensed by an appropriate State agency to provide

---

[3] Defendants' argument that at the time they settled the parties could not have anticipated "a significant increase[ ] in the numbers of alien children accompanied by their parents..." Opposition at 12, is equally unavailing.

The agreement in fact specifically anticipates a future "influx" of class members, Settlement ¶ 12B, and grants defendants additional time to move children to licensed placements in that event.

Nor, as plaintiffs have elsewhere established, does the temporary "surge" in apprehended children of 2014 warrant modification of the Settlement. *See* Opposition to Motion to Amend, Dkt. 122, at 11-17.

REPLY TO OPPOSITION TO ENFORCE SETTLEMENT OF CLASS ACTION
CV 85-4544-DMG

residential, group, or foster care services for dependent children…"); ¶ 12C ("This plan shall include the identification of 80 beds … that are licensed by an appropriate State agency to provide residential, group, or foster care services for dependent children.").

In short, the parties had no reason to define "child" differently from the INA because the Settlement consistently uses entirely *different* terms—"minor" or "juvenile"—to describe the individuals the agreement protects. Defendants' contending to the contrary is pure speculation and no reason to read the Settlement contrary to its unambiguous text.[4]

### 3 The Settlement's referring to "dependent" minors in no way excludes accompanied children from its protections.

Defendants next seek to leverage the Settlement's use of the term "dependent" as proof that the parties intended to exclude accompanied minors from the agreement's protections.

Here again, the Settlement uses the term "dependent" *exclusively* with reference to the type of facilities in which the non-delinquent class members would thenceforth be housed. Settlement definition ¶ 6 ("The term 'licensed program'

---

[4] Defendants' assertion that the parties crafted the class definition only to avoid confusion with the INA's definition of "child" is also factually incorrect. *See* Declaration of Carlos Holguin, March 10, 2015, Exhibit 58 filed herewith, ¶ 3 ("I recall no instance during the negotiations that preceded the Settlement when any party expressed any concern that the class definition be crafted so as to avoid confusion with the INA's definition of a "child.").

shall refer to any program, agency or organization that is licensed by an appropriate State agency to provide residential, group, or foster care services for dependent children,…"); ¶ 12C ("This plan shall include the identification of 80 beds … that are licensed by an appropriate State agency to provide residential, group, or foster care services for dependent children.").

As lawyers involved in negotiating the agreement attest, the Settlement's use of "dependent" has *nothing* to do with excluding accompanied minors from the protected class, but rather serves to incorporate by reference state standards for facilities in which non-delinquent class members may be housed and distinguish those facilities from lock-ups appropriate for delinquent youth. *See* Declaration of Alice Bussiere, March 11, 2015, Exhibit 59 filed herewith, ¶ 3 ("The Settlement employs the term 'dependent' to define licensed programs to distinguish these programs from … facilities that house delinquent children.").[5]

---

[5] The Juvenile Justice and Delinquency Prevention Act (JJDP) prohibits states from incarcerating children—including immigrant children—in secure facilities. 42 U.S.C. § 5633(a)(11).

The California Community Care Facilities Act, Cal. Health & Safety Code §§ 1500, *et seq.*, prescribes standards for residential facilities in which dependent minors may be housed, but excludes juvenile correctional facilities from those standards. Cal. Health & Safety Code § 1505(c) & (d).

Settlement ¶ 21 allows defendants to place youth who have been accused of serious delinquent acts in secure facilities, but requires that all other youth be placed in facilities licensed to care for dependent children.

Thus, in requiring that non-delinquent class members be placed in facilities licensed to care for dependent children, the Settlement incorporates by reference both the JJDP and state law.

REPLY TO OPPOSITION TO ENFORCE SETTLEMENT OF
CLASS ACTION
CV 85-4544-DMG

4       The regulatory scheme at the time the parties settled

demonstrates that the Settlement's release requirements apply

fully to children apprehended with their mothers.

Defendants next contend "there is absoutely no basis" to find that the parties intended to minimize accompanied children's detention. Opposition at 13-14. Rather, defendants assert, the Settlement "clearly contemplate[s]" that a detained child's "parent … was previously in the interior of the United States." *Id*. at 13.

As defendants know, however, the INS detained families for *many* years before the Settlement,[6] and the agreement was negotiated in the context of the agency's then-existing policies and procedures. Those policies and procedures had *always* contemplated that minors could be released to available custodians *notwithstanding that they were accompanied at the time of apprehension*:

(i) *Juveniles may be released* to a relative (brother, sister, aunt, uncle, or grandparent) not in Service detention who is willing to sponsor a minor and the minor may be released to that relative *notwithstanding that the juvenile has a relative who is in detention*.

---

In any event, nothing in standard state law definitions excludes accompanied minors from being "dependent" children. *See, e.g.*, Cal. Welf. & Inst. Code § 300.

[6] In 1993—some four years before the parties settled—the Supreme Court observed that the INS "must assure itself that someone will care for [apprehended] minors pending resolution of their deportation proceedings. *That is easily done when the juvenile's parents have also been detained and the family can be released together*; …" *Reno v. Flores,* 507 U.S. 292, 295; 113 S.Ct.1439; 123 L.Ed.2d 1 (1993) (citations omitted; emphasis added).

(ii) If a relative who is not in detention cannot be located to sponsor the minor, *the minor may be released with an accompanying relative who is in detention*.

8 C.F.R. § 212.5(a)(3) (1997) (emphasis supplied).[7]

This, then, was the regulatory context in which the parties negotiated the Settlement.[8] The parties transparently adapted defendants' own general approach toward the release of minors—whether accompanied or not—to grant class members *greater* rights to release than they had previously.

Defendants' insisting that the Settlement's release provisions "clearly" apply only where a child's parent is already in the United States not be squared with neither the plain text of the agreement nor with the regulatory scheme existing at the time the parties settled. The Court should reject defendants' attempt to deny children rights the Settlement plainly confers.

## C      Courts have previously held the Settlement applicable to

---

[7] INS regulations providing for the release of accompanied juveniles go all the way back to 1982. *See* 8 C.F.R. § 212.5 (1983), *added by* 47 Fed. Reg. 30044, 30045 (July 9, 1982).

[8] Defendants' arguing that enforcing the Settlement as written "threatens family unity," Opposition at 2, similarly ignores that under pre-existing regulations the INS routinely broke up family units in order to release accompanied minors. More importantly, for many years before June of 2014 defendants apprehended and detained families, usually without systematically violating the Settlement. Nothing stops defendants from returning to the *status quo ante* June 2014. And even that failing, nothing in the Settlement precludes a detained minor's mother from deciding that her child should remain in custody with her.

REPLY TO OPPOSITION TO ENFORCE SETTLEMENT OF
CLASS ACTION
CV 85-4544-DMG

**accompanied minors; defendants offer no reason this Court should not do the same.**

Were the foregoing not enough, courts have specifically rejected defendants' instant argument, holding that the Settlement applies to *all* minors, whether accompanied or unaccompanied; defendants offer no coherent reason this Court should not do so as well.

In 2006 ICE undertook to detain families at the Hutto facility in Texas. *See Bunikyte v. Chertoff*, 2007 WL 1074070; 2007 U.S. Dist. LEXIS 26166 (W.D. Tex. Apr. 9, 2007). As they do here, defendants then argued that the Settlement did not apply to accompanied children. The district court squarely disagreed:

> [T]he *Flores* Settlement, by its terms, *applies to all "minors in the custody of ICE and DHS, not just unaccompanied minors."* … [The agreement] sets out the foundation of the detention standards applicable to any minor in United States immigration custody, and *there is no reason why its requirements should be any less applicable in a family detention context than in the context of unaccompanied minors*."

2007 U.S. Dist. LEXIS 26166 at *10-11 (emphasis added).[9]

More recently, in an unusually lengthy and detailed opinion, an immigration

---

[9] Defendants shuttered the Hutto facility in 2009 and thereafter abandoned the systematic confinement of families in secure, unlicensed facilities— that is, until the summer of 2014. *See* Defendants' Motion to Amend Settlement Agreement, Dkt. 120, at 9 n.8.

- 12 -

court likewise held the Settlement protects a child arrested with his mother during

the 2014 "surge":

> [T]he Government also contends that the [Settlement] only applies to
>
> "unaccompanied minors" as opposed to all minors. It would follow then that
>
> Minor Respondent is not covered by the *Flores* Agreement because, while he
>
> is fourteen years of age, he is accompanied by his mother. Though the Court
>
> understands  DHS' argument, it disagrees and finds it to be *a patently*
>
> *incorrect interpretation* of the [*Flores* settlement].

*Matter of Granados-Gutierrez*, No. A206-848-455 (IJ, September 8, 2014), Exhibit

56 filed herewith, at 17 (emphasis added); *see also, Matter of Granados-Gutierrez*,

No. A206-848-455 (IJ, October 28, 2014), Exhibit 57 filed herewith, at 7 (again

rejecting DHS's "habitual[] conten[tion] that the [Settlement] should not apply to

an accompanied detained juvenile.").

    Habitual contentions apparently die hard, however patently incorrect they

may be. The Court should forthwith enjoin defendants to release children

apprehended with their mothers to qualified custodians as the Settlement requires

and to place them in non-secure and properly licensed facilities for howsoever long

as they may be detained. In agreeing to the Settlement, defendants obliged

themselves to do no less. [10]

---

[10] Defendants also imply that plaintiffs' instant claims are somehow less substantial
because they are based on a consent decree and have "no constitutional or statutory

REPLY TO OPPOSITION TO ENFORCE SETTLEMENT OF
CLASS ACTION
CV 85-4544-DMG

III   ICE'S "FAMILY" DETENTION FACILITIES ARE FAR FROM SUBSTANTIALLY COMPLIANT WITH THE SETTLEMENT.

Plaintiffs have elsewhere refuted defendants' argument that the conditions class members experience in ICE's family detention centers are good enough to comply "substantially" with the Settlement's requirements for properly licensed placement. *See* Opposition to Motion to Amend Settlement, March 6, 2015, Dkt. 122, at 18-23.

Plaintiffs there establish that (1) defendants' facilities in Leesport, Dilley and Karnes City are highly and needlessly secure; (2) defendants have no rational basis for confining children in secure facilities merely because they were apprehended with their mothers; (3) holding children in secure facilities is inimical to children's well-being regardless of other conditions; (4) it is clearly *not* the case that the conditions children experience in ICE's family detention facilities are acceptable; (5) scrapping the Settlement's licensing requirement would strip vulnerable children of an essential protection: *i.e.*, regular and comprehensive oversight by *independent* child welfare agencies of innumerable conditions children experience

---

basis…" Opposition at 2. In *Badgley v. Santacroce*, 800 F.2d 33, 38 (2d Cir. 1986), *cert. denied*, 479 U.S. 1067 (1987), the court stated:

> The respect due the federal judgment is not lessened because the judgment was entered by consent. … When the defendants chose to consent to a judgment … the result was a fully enforceable federal judgment ... The strong policy encouraging settlement of cases requires that the terms of a consent judgment … be respected as fully as a judgment entered after trial.

- 14 -

during federal custody; and (6) it is clearly *not* the case that ICE must detain families together to keep them together.

ICE's keeping children in lock-ups such as Dilley and Karnes City does not "substantially comply" with the Settlement— it blatantly violates it.

IV     A TEMPORARY INCREASE IN THE NUMBER OF CHILDREN APPREHENDED WITH THEIR MOTHERS DOES NOT EXCUSE DEFENDANTS' BREACHING A CONSENT DECREE OR DETAINING CHILDREN FOR UNLAWFUL ENDS.

Defendants again suggest that releasing accompanied children and their mothers "encourages increased migration and attendant national security concerns, while the availability of detention is proven to reduce migration and reduce these threats." Opposition at 16.

Plaintiffs have elsewhere demonstrated that (1) no competent evidence supports defendants' claim that ICE's complying with the Settlement has encouraged unlawful immigration; (2) no competent evidence supports defendants' claim that ICE's no-release policy *or* housing children in improper facilities has discouraged or will discourage any signficant number of third persons from entering unlawfully; (3) at most ICE's no-release policy encourages mothers to deliver their children to smugglers, human traffickers, or strangers during entry; (4) the event provoking defendants' violations of the Settlement—the "surge" in unaccompanied minors in the summer of 2014—has ended, whereas defendants' violations continue; and (5) as a matter of law, defendants may not detain

children—nor, *a fortiori*, violate a consent decree—to deter future entrants. *See* Opposition to Motion to Amend, *supra*, Dkt. 122, at 18-23.

V    ICE MUST PROPERLY EXERCISE DISCRETION TO RELEASE FAMILIES TOGETHER.

Defendants argue that the Settlement does not "require[] ICE to release … [class members'] parents." Opposition at 14. Plaintiffs, of course, do not contend otherwise.

Plaintiffs do contend, however, that ICE's categorical no-bond policy, as applied to children's mothers, may as a practical matter eviscerate class members' right to preferential release to a parent. Thus, ICE's *refusing to properly exercise discretion* in determing whether to release mothers apprehended with children does indeed deny *class members* a right the Settlement confers. *See* Motion to Enforce, Dkt. 100, at 11-14.

Defendants offer no answer to this argument, and the Court should accordingly require ICE to exercise individualized discretion to release class members and their mothers simultaneously.[11]

VI    DEFENDANTS FAIL TO CONTEST THE FACTS SET OUT IN NUMEROUS

DECLARATIONS DETAILING SUBSTANDARD CONDITIONS IN BORDER PATROL

FACILITIES.

---

[11] The same is clearly required by defendants' own regulation. *See* 8 C.F.R. § 1236.3(b) (2015) ("(2) If … the juvenile has identified a parent, legal guardian, or adult relative in Service detention, *simultaneous release of the juvenile and the parent, legal guardian, or adult relative shall be evaluated on a discretionary case-by-case basis*." (Emphasis added.)).

REPLY TO OPPOSITION TO ENFORCE SETTLEMENT OF
CLASS ACTION
CV 85-4544-DMG

1

2

3

4

The foregoing has shown that plaintiffs' motion to enforce should be granted
as a matter of law; there are simply no material issues of fact to preclude the
Court's doing so.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

Defendants' single declaration answering plaintiffs' voluminous evidence
that CBP fails to house children "in facilities that are safe and sanitary and that are
consistent with [defendants'] concern for the particular vulnerability of minors,"
Settlement ¶ 12, is so general as to warrant the Court's also granting the modest
relief plaintiffs thus far request against CBP: *i.e.,* that defendants, in consultation
with plaintiffs, "propose standards, and procedures for monitoring compliance with
such standards, … cover[ing] children's access to adequate [1] drinking water and
food, [2] toilets, sinks, showers, [3] bedding and [4] medical care, as well as [5]
temperature control, ventilation, and maximum capacity of rooms in which children
are held." [Proposed] Order Enforcing Settlement, February 13, 2015, Dkt. No.
118, at 4.

20

21

22

23

Plaintiffs' evidence and defendants' counter thereto reveal that defendants
have failed to refute plaintiffs' showing of widespread violations of the Settlement
in Border Patrol facilities.

24

25

26

27

28

| Plaintiffs' Evidence | Defendants' Counter-evidence |
|---|---|
| 1) <u>Inadequate food and drink</u>. *E.g.*, Exhibit 18, Dkt. 101-6, ¶¶ 3-5 ("I believe it was the next morning when we were finally given something to eat, which was a baloney sandwich. For the next days, we were given nothing else to eat except baloney sandwiches three times a day. We were constantly hungry."); *see also* Memorandum In Support of Motion to Enforce Settlement (MTE), Dkt. 100, at 20 & notes 34-36 (collecting references). | Defendant offer *no* evidence in rebuttal. They instead reference http://foiarr.cbp.gov/streamingWord.asp?i=378, a web site containing an unauthenticated and heavily redacted version of a document dated June 2, 2008, that purports to set out Border Patrol policy on "hold rooms and short term custody." ("Hold Room Policy" or "HRP"). The policy specifically states it "is *an internal policy statement ... and does not create or confer any rights, privileges, or benefits on any person or party.*" *Id*. ¶ 10 (emphasis added). Even were it binding, the HRP merely states that juveniles are to receive meals every six hours, and two of every three meals must be hot. *Id*. ¶¶ 6.8 & 6.24.9. |

| | |
|---|---|
| | The policy further states that "potable drinking water will be available to detainees." *Id*. ¶ 6.9. <br><br> Nowhere does the HRP specify either the nutritional quantity or quality of food or drink children are to receive. |
| 2) <u>Substandard sanitation and hygene</u>. *E.g.* Exhibit 19 at ¶ 2 ("The cell had only one toilets for [perhaps 125] of us. There were short walls about the toilet but people were standing and even leaning against the toilet so people would be watching when you went to the toilet. There was no place to throw dirty diapers, so we had to throw them in the corner by the toilet. There was no soap for us to use to wash our hands, and we could not bathe or brush our teeth during the days we were there. Some people didn't bathe or brush their teeth for eight | "[H]old room capacity for any room requires … the appropriate number of toilets for the occupants it is designed to accommodate." Declaration of K. Oaks (Oaks), Def's Exhibit A, Dkt. 121-1. The non-binding HRP ¶ 6.24.6 states, "*If showers are available*, the juveniles will be permitted to take one shower every 48 hours… Agents and supervisors *may* give these items to and privileges to any juvenile at any time based on the availability and the condition of the juvenile." (Emphasis added). |

- 19 -

| | |
|---|---|
| days. The stench in the room was very strong."); *see also* MTE at 20 & notes 32-33. | Nowhere does the HRP specify the minimum ratio of toilets to detainees, and access to other sanitary facilities is optional and subject to availability. |
| 3) <u>No or inadequate bedding.</u><br>*E.g.*, Exhibit 13 ¶ 4 ("There was not room enough to lie down, nor were there any mattresses. The Border Patrol took our sweaters, and there was only a large silver blanket for all of us. It was very cold, and they left the lights on all the time. Nobody could sleep. We all stood, and the children mostly cried ..."); *see also* MTE at 20 & n.26. | "In certain circumstances, aliens who are in Border Patrol's custody may require some form of bedding." Oaks ¶ 21.<br>The HRP ¶ 6.11 states: "Detainees requiring bedding will be given clean bedding." HRP ¶ 6.24.6 states, "Juveniles detained longer than 24 hours will be given access to … a blanket and a mattress…"<br>The Oaks declaration makes clear that children receive "some form of bedding" only in unspecified "circumstances."<br>Neither the Oaks declaration nor internally contradictory statements in |

| | |
|---|---|
| | the non-binding HRP counter plaintiffs' evidentiary showing. |
| 4) <u>Improper temperature control</u>.<br><br>*E.g.*, Exhibit 19 ¶ 5 ("The Border Patrol officials took all of our clothing except an undershirt, pants, shoes and socks. The cell was very cold, and we were given no blankets or anything else to help us with the cold. We called this the 'hielara' or icebox, because it was so cold it felt like we were in an icebox. I could see fog coming from the air conditioning vents. I knew it was warm outside, so it seemed that the cell was being kept very cold to punish us."); *see also* MTE at 19 n.28. | "In general the temperature in a Border Patrol station is maintained at a comfortable temperature…" Oaks ¶ 20. Defendants' standard is so vague as to be meaningless. |
| 5) <u>Overcrowding</u>.<br><br>*E.g.,* Exhibit 19 ¶ 4 ("The Border Patrol put us in a cell with perhaps 125 other women and children. … There were so | "[H]old room capacity for any room requires sufficient space … for the occupants it is designed to accommodate." Declaration of K. Oaks, |

| | |
|---|---|
| many of us that we could not lie down. I spent most of the night standing up holding my son in my arms, shoulder-to-shoulder with many, many other detainees."); *see also* MTE at 19 & n.29. | Feb. 22, 2015, Def's Exhibit A, Dkt. 121-1 (Oaks).<br><br>Defendants' standard is so vague as to be meaningless. |

     Defendants' evidence reveals that Border Patrol standards are so vague, general, and optional that they are scarcely better than no standards at all. Nor do defendants provide any evidence that actual compliance with even these hazy standards is regularly and effectively monitored.

     Yet even assuming, *arguendo*, that defendants' counter-declaration were sufficient to show they have coherent standards for how children should be treated during Border Patrol custody, the *many* detainee declarations recounting substandard conditions in multiple Border Patrol stations should not be ignored. Faced with analogous evidence of widespread Border Patrol abuse, this Court ruled many years ago:

     The record in this case indicates that the mistreatment of Salvadorans is not limited to any particular geographic area or to the conduct of a few INS agents. The experiences of the plaintiffs and proposed class members took place in a wide variety of locations, including California, Arizona, Texas, Oklahoma, and Massachusetts. ... These stories are corroborated by

- 22 -

affidavits from persons who have spoken with hundreds of Salvadorans after

their arrest and interrogation by the INS. … *The sheer volume of evidence*

*before the Court and the similarity of the experiences therein belie the*

*contention by defendants that plaintiffs' claims center on isolated incidents of*

*misconduct.*

*Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 362 (C.D. Cal. 1982) (emphasis

added).

Here, too, it is impossible to ignore the sheer volume of evidence that class

members are not in fact treated in Border Patrol facilities as Settlement ¶ 12

prescribes.[12] The Court should accordingly grant the modest relief plaintiffs have

requested as an initial remedy for the substandard conditions children experience in

Border Patrol custody. After all, given all the evidence against it, CBP should

hardly object to evaluating their current standards and monitoring procedures if in

fact defendants wish to treat children with real concern for their vulnerability. *Cf.*

*de Jesus Ortega Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("The

Defendants cannot be harmed by an order enjoining an action they will not take.").

---

[12] At a very minimum, the Court should hold an evidentiary hearing on CBP's compliance with the Settlement after affording the parties a reasonable opportunity to conduct discovery.

- 23 -

1

VII    CONCLUSION

2

3          For the foregoing reasons, this Court should enforce the Settlement by

4    entering an order in the form previously lodged herein.

5     Dated: March 6, 2015.                    CENTER FOR HUMAN RIGHTS &

6                                              CONSTITUTIONAL LAW
                                               Carlos Holguín
7                                              Peter A. Schey
8                                              Marchela Iahdjian

9                                              ORRICK, HERRINGTON & SUTCLIFFE LLP
                                               William A. Molinski
10                                             T. Wayne Harman
11                                             Elena García

12                                             LA RAZA CENTRO LEGAL, INC.
13                                             Michael S. Sorgen

14                                             YOUTH LAW CENTER
                                               Alice Bussiere
15                                             Virginia Corrigan

16                                             RANJANA NATARAJAN
17

18                                             /s/Carlos Holguín _____
19

20                                             /s/Peter A. Schey _____
21                                             *Attorneys for plaintiffs*

22

23

24

25

26

27

28