# EXHIBIT C

Case 2:85-cv-04544-DMG-AGR   Document 138-4   Filed 04/21/15   Page 2 of 5   Page ID #:2418



**The New York Times Magazine** | http://nyti.ms/1NYYOmI

Magazine

# A Federal Judge and a Hunger Strike Take on the Government's Immigrant Detention Facilities

By WIL S. HYLTON    APRIL 10, 2015

Since a surge of asylum seekers from Central America began to cross the U.S. border last spring, the Obama administration has adopted a policy to house thousands of them in detention centers. This includes the construction of new facilities specifically for women and children, who have been forced to live for months at a time in conditions that closely resemble prison, surrounded by high fencing and barbed wire, under the supervision of armed guards. They work for as little as $1 a day, with restricted access to the outside world.

Last week, after prolonged confinement in these conditions, 78 young women at a facility in Karnes County, Tex., took the drastic final measure of prisoners everywhere: They announced a "hunger strike" and declared their refusal to work or "use any service in this place" until conditions improve. "We include mothers who have been locked up in this place for 10 months," the declaration began, in Spanish. "We have come to this country with our children in search of help and shelter, and are being treated as criminals — which we are not, much less are we a danger to this country."

I was among the reporters who wrote about facilities like Karnes; our Feb. 8 cover story described the horrific conditions in Central America that led many of these women and children to flee. In recent years, Honduras, El Salvador and Guatemala have been plunged into chaos by the rise of criminal gangs that in some cases rival the state in their power. American law offers a pathway for those who are seeking asylum from this sort of mayhem. To qualify, an applicant must typically present herself to border officials, demonstrate a "credible fear" of returning home

1

and proceed through a formal asylum hearing, during which an immigration judge can assess the merits of the claim.

The first few steps of this process can be completed in days, but the final hearing may take months to schedule, so officials have traditionally allowed asylum applicants to live with family and friends while they await a final decision. Since June of last year, the Obama administration has upended that tradition. Rather than release the families on bond to await a hearing, officials place virtually all women with children into the new detention facilities.

The administration has defended this approach as a means of discouraging future asylum seekers from coming to the United States. "The decision to establish family detention facilities was in large part driven by the need to create a deterrent effect," Esther Olavarria, the senior counselor for immigration issues for the Department of Homeland Security, told me in January. When I asked Olavarria to explain the legal philosophy that permits the D.H.S. to punish one group of people — today's migrants — merely to send a message to others, Olavarria declined. "I'm not going to opine on my philosophic views," she said.

Two weeks after the magazine's article appeared, a federal judge opined on precisely that question. Responding to a lawsuit filed on behalf of women and children placed in detention, Judge James E. Boasberg of the United States District Court for the District of Columbia granted a preliminary injunction to stop the deterrence policy. "The Government," Boasberg wrote, "maintains that one particular individual may be civilly detained for the sake of sending a message of deterrence to other Central American individuals who may be considering immigration. This appears out of line with analogous Supreme Court decisions."

In his decision, Boasberg cited our article as evidence of the damage inflicted by the policy. Under the terms of a 1997 settlement in the case of Flores v. Meese, children in the custody of immigration officials are entitled to certain protections. First, they must be granted a "general policy favoring release," and when there is specific reason to detain them, they must be housed separately from adult strangers, in a nonsecure facility with access to regular medical care, schooling and exercise. But in my reporting, I found that hundreds of children, many of them under age 6, had been subject to a general policy favoring detention. At a facility in Artesia, N.M. — since closed — they reported sleeping eight to a room with little access to education or outdoor exercise.

Visitors to that compound, including lawyers, faith-based groups and elected officials, described an environment of rampant disease, where children lost weight rapidly under the strain of confinement. In his decision, Boasberg concluded that the conditions described in our article were a source of "irreparable harm to mothers and children."

The decision is rather limited. Because the injunction arose from a case involving women who had not previously been detained in the United States, the decision applies to only similar families. Any women and children who have been deported in the past will continue to fall under the blanket detention policy while their cases are litigated separately. Many of those families have already spent months in legal limbo and could remain there for many months to come. Most of the women on the hunger strike fall into this uncertain category. But for cases in which D.H.S. officials are bound by the injunction and must offer bond to the detainees, advocates say they have consistently set the payment amount at a level that few asylum seekers can afford. Stephen Manning, a pro bono attorney with the American Immigration Lawyers Association, told me that some of the recent bonds have been as high as $15,000. Most are set around $7,500.

What results is a policy that technically follows Boasberg's injunction but, in practice, changes very little. For a family that has fled the violence and instability in Central America and traveled 1,500 miles or more — much of the journey on foot — to reach the United States, Manning said, "$7,500 is like a million."

Attorneys like Manning have challenged the bond amounts in court with some success, but officials continue to set new bonds at the same high levels. In early March, a young mother in a facility in Dilley, Tex., who had been in custody since December, attempted suicide after receiving a $5,000 bond that she could not afford to pay. The woman's attorney, Bryan Johnson, told me that officials responded to her suicide attempt by moving the woman to a psychiatric hospital and placing her 4-year-old daughter in a program for unaccompanied minors.

The woman has since been released, but her daughter was already assigned to a foster family, she told me on Wednesday. "Now I can only speak with her two times a week," the mother said. "She gets sad and cries and tells me to come get her. I miss her so much, but I have to remember to have faith and patience." Officials at D.H.S. declined to comment on the case, citing privacy concerns. Corrections Corporation of America, which manages the Dilley facility, also declined to comment.

3

Immigration attorneys say that officials reacted to the hunger strike in a similar fashion. "They told the women en masse that if they undertook the fast, their children would be taken from them," says Jonathan Ryan, the executive director of the Refugee and Immigrant Center for Education and Legal Services. According to Ryan, officials warned the protesters that if they refused to eat, "they would have reduced brain functioning, and if they had reduced brain functioning, they would be declared unfit guardians of the children, and the children would be taken."

When asked about this, Marsha Catron, a D.H.S. spokeswoman, replied by email on behalf of Immigration and Customs Enforcement: "ICE has been in constant communication with the residents at the facility. This communication has included discussing the negative health effects of not eating and how the decision of parents to stop eating may affect the care of their children."

By the end of last week, many of the women had resumed eating and working. But Ryan says they are preparing for a second hunger strike. "They're stopping for 10 days," he said. "They will resume next week." In the letter announcing their strike, the women wrote: "We will not stop until we achieve our goal. This strike will continue until every one of us is released into freedom."

Officials are preparing for a new surge of migrants to arrive with the spring, and they are working on a significant expansion to the detention program. Plans are currently in place to double the capacity of the Karnes camp, and construction is underway at the Dilley facility, which will soon become the largest ICE detention center in the country, with room for 2,400 women and children. Perhaps the only thing officials and immigration activists share is the belief that soon, those beds will be full.

Wil S. Hylton is the author of "Vanished: The Sixty-Year Search for the Missing Men of World War II."

© 2015 The New York Times Company