# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY LISETTE FLORES; *et al.*, | ) Case No. CV 85-4544-DMG |
| Plaintiffs, | ) |
| v. | ) |
| ERIC H. HOLDER, JR., Attorney General of the United States; *et al.*, | ) |
| Defendants. | ) |

## SECOND DECLARATION OF STEPHEN M. ANTKOWIAK

Pursuant to 28 U.S.C. § 1746, I, Stephen M. Antkowiak, do hereby declare:

1. My name is Stephen M. Antkowiak. Since April 2011, I have served as the Unit Chief of Juvenile and Family Residential Management Unit (JFRMU), Enforcement and Removal Operations (ERO), U.S. Immigration and Customs Enforcement (ICE) in Washington, D.C. I joined JFRMU in February 2009.
2. I have a Bachelor's Degree in Criminology/Criminal Justice.
3. Prior to joining ICE, from September 2005 until February 2009, I worked for the U.S. Department of Justice's Office of Juvenile Justice and Delinquency Programs working to improve outcomes for at-risk youth and those involved in the juvenile justice and child welfare systems and to integrate substance abuse treatment into the family dependency court and the juvenile justice system.
4. As Chief of JFRMU, I oversee and direct the management of the ICE Family Residential Program for family groups who come into ICE/ERO custody. As part of my management and oversight responsibilities, I periodically travel to the ICE Family Residential Centers (FRC) and am familiar with the features of the FRCs currently in operation, which include: Karnes Family Residential Center, in Karnes City, Texas, Berks Family Residential Center, in Leesport, Pennsylvania, and South Texas Family Residential Center, in Dilley, Texas. The statements contained in this declaration are based upon my personal knowledge or upon information provided to me in my official capacity.
5. I have reviewed the exhibits attached to the Plaintiffs' Request for Judicial Notice in support of its Motion to Enforce Settlement, filed April 21, 2015, which include:
    - An undated, unsworn statement in the Spanish language. (Exhibit A)

1

- An undated statement in English from female residents at Karnes FRC stating they will begin a hunger strike, refuse to work, not send their children to school and not make use of any of the services at Karnes until they are released. (Exhibit B-1)
- Certificate of Translation dated April 20, 2015. (Exhibit B-2)
- An article from the New York Times, April 10, 2015, "A Federal Judge and a Hunger Strike Take on the Government's Immigrant Detention Facilities," noting that sometime during the week of March 30, 2015, 78 residents of Karnes FRC announced a hunger strike, which included refusing to work or "use any service in this place" but by the end of that week most "had resumed eating and working." (Exhibit C)
- An article from The Guardian, dated April 1, 2015, "Mothers held at Texas Detention Centre go on Hunger Strike to Demand Release," noting that mothers being held at Karnes "have reportedly begun a hunger strike." (Exhibit D)
- An article from ibtimes.com, dated April 15, 2015, "Immigrant Mothers Begin Second Hunger Strike at Massive Texas Detention Center," noting Karnes residents began a second hunger strike and that a group of 10 mothers are "having just one meal a day and declining all other food" and refusing to send their children to school at the FRC. (Exhibit E)
- An article from the Austin Chronicle, dated April 17, 2015, "Detainees Strike for Freedom," describing that "80 women" at Karnes "launched a hunger strike" during "Holy Week" and that a "second, weeklong hunger strike" would begin shortly. (Exhibit F)
- An article from the Huffington Post, dated April 14, 2015, noting a group of 10 mothers in Karnes FTC "vowed Tuesday" to begin a hunger strike

      to demand their release by consuming one meal every 24 hours for one week. (Exhibit G)

6. ICE fully respects the rights of all individuals to express their constitutionally-protected rights of expression including through the use of hunger strikes.

7. The ICE Family Residential Standards specifically address hunger strikes and ICE's FRCs operate in accordance with those standards to ensure the health and well-being of residents. Under the standard, a resident is determined to be on a hunger strike when a resident declares himself or herself to be on a hunger strike or when staff observes that a resident has abstained from eating for seventy two (72) hours (or the equivalent of nine meals). This definition is consistent with the Bureau of Prisons' definition provided at 28 C.F.R. § 549.61 (defining a hunger strike as when a person refrains from food for 72 hours) and provides the flexibility necessary for monitoring large groups of people who may occasionally skip meals for religious reasons or due to temporary conditions, such as illness.

8. A resident who engages in a hunger strike is monitored by medical staff and if medically indicated, is transferred to a hospital or alternate ICE facility that is appropriately equipped to provide treatment. Consistent with the hunger strike standards, forced medical treatment is not administered at family residential centers.

9. If residents must be taken off-site for medical treatment, ICE arranges for program staff to provide one-on-one supervision of their children until the resident returns to the FRC.

10. If a hunger striker becomes unable to physically care for his or her child, ICE may need to transfer the child to the care of the U.S. Department of Health and Human Services, Office of Refugee Resettlement.

11. Although there are reports of a hunger strike being planned for the week of March 30, 2015 at Karnes FRC, no residents actually declared themselves to be on a hunger strike and no residents were observed abstaining from food for seventy two hours.

12. Although there are reports of a hunger strike taking place during the week of April 13, 2015 at Karnes FRC, no residents actually declared themselves to be on a hunger strike and no residents were observed abstaining from food for seventy two hours.

13. No resident at Berks FRC, Karnes FRC, or STFRC has declared herself or himself to be on a hunger strike, or been observed to be on a hunger strike in the past month, nor has any resident indicated a plan to initiate one.

I declare, under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

DATED: April 23, 2015

_____
STEPHEN M. ANTKOWIAK
Unit Chief
Juvenile and Family Residential Management Unit
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement