1                UNITED STATES DISTRICT COURT

2                CENTRAL DISTRICT OF CALIFORNIA

3                          ---

4          HONORABLE DOLLY M. GEE, JUDGE PRESIDING

5                          ---

6

7

8    **JENNY L. FLORES**, et al.,              )
                                                )
9                                               )
                                                )
10                         Plaintiffs,          )
                                                )No. 85-4544DMG
11               VS                             )
                                                )
12   **EDWIN MEESE**, et al.,                   )
                                                )
13                                              )
                         Defendants.            )
14   _____)

15

16           Reporter's Transcript of Proceedings
     **Plaintiffs' Motion to Enforce Settlement of Class Action**
17      **Defendant's motion to Modify Settlement Agreement**
                 Los Angeles, California
18              **FRIDAY, APRIL 24, 2015**

19

20

21

22

               ANNE KIELWASSER, CRR, RPR, CSR
23             Federal Official Court Reporter
               312 North Spring Street, Room 432
24             Los Angeles, California 90012
               Telephone: (213) 894-2969
25             anne.kielwasser@gmail.com
                   AKtranscripts.com

```
 1                    A P P E A R A N C E S

 2

 3      ON BEHALF OF THE PLAINTIFFS:

 4      Carlos Holguin
        Peter A Schey
 5      T. Wayne Harman
        Center For Human Rights & Constitutional Law
 6      256 South Occidental Boulevard
        Los Angeles, CA 90057
 7      213-388-8693
        Fax:  213-386-9484
 8      E-mail:  Crholguin@centerforhumanrights.org
        E-mail:  Peter@peterschey.com
 9

10      ON BEHALF OF THE DEFENDANTS:

11      Leon Fresco
        Sarah B Fabian
12      US Department of Justice
        950 Pennsylvania Avenue NW Suite 3129
13      Washington, document 20530
        202-307-6482
14      E-mail:  Leon.fresco@usdoj.gov

15

16

17

18

19

20

21

22

23

24

25
```

```
 1   FRIDAY, APRIL 24, 2015                        3:00 P.M.

 2                           ~ ~ ~

 3                     P R O C E E D I N G S

 4                           ~ ~ ~

 5           COURT CLERK:  Calling Item No. 5.  CV 85-4544DMG.

 6   Jenny L. Flores versus Edwin Meese.

 7               Counsel, your appearances please.

 8           MR. HOLGUIN:  Carlos Holguin, Peter Schey and

 9   Wayne Harmen for plaintiffs.

10           MR. FRESCO:  Leon Fresco and Sarah Fabian for

11   defendants, Your Honor.

12           THE COURT:  Good afternoon, counsel.

13               Would the defendants like to address the

14   Court's tentative?

15           MR. FRESCO:  Yes, Your Honor.

16               May it please the Court, Your Honor.  Lee

17   Fresco from the Department of Justice.

18               Your Honor, first of all, I appreciate very

19   much the hard work that went into this order, and so I just

20   want to address any questions the Court has but also specific

21   aspects of this order.

22               Your Honor, the Flores Settlement Agreement

23   was signed in 1997 and didn't take into account the -- the

24   factors that are in place today, and I want to get into where

25   there were some things that we can look at in the Court's
```

1 order that I think we need to discuss.

2         The first, Your Honor, is that one of the

3 things, if you look at plaintiffs' proposed order, it talks

4 about the fact that a parent would have a role to play in one

5 of our fatalities to determine if the parent wanted to stay

6 with the child, the parent could stay with the child or the

7 parent can ask for their child to be released from the

8 facility, none of that is in the Flores Settlement Agreement,

9 Your Honor.

10     **THE COURT:**  Right.  But that isn't really the

11 material issue in dispute here.

12     **MR. FRESCO:**  Well, Your Honor, so, the material

13 issue in dispute is whether the Flores Agreement applies to

14 all minors or to unaccompanied minors; and, Your Honor, there

15 are four, I think, key facts that the order should take into

16 account.

17         The first, Your Honor, is that we have been

18 operating family residential facilities where parents are

19 with minors in a secure facility since 2001, Your Honor.

20         For 14 years we've been operating these

21 facilities, and the first time we got a lawsuit on this was

22 in February of 2015 from the Flores counsel.  And that I

23 think is an -- I think that is evidence --

24     THE COURT:  What about the January one from -- in

25 DC?

1          **MR. FRESCO:**  The January one in DC was not about

2     us violating the Flores Agreement, Your Honor.

3          **THE COURT:**  Oh, that's true.

4          **MR. FRESCO:**  And so here is, I think, an important

5     point about that.  In 2004 the plaintiffs' counsel sued for

6     violating the Flores Agreement, they sued the government.  If

7     you look at that lawsuit, there are 13 very technical

8     violations, things are much less material than this larger

9     issue of family detention; and family detention was not

10    mentioned as one of the 13 items where we were in violation

11    of the Flores Settlement Agreement.

12          We have been engaging in family detentions

13    since 2001, and under no circumstance had the agreement been

14    read to preclude family residential facilities from

15    operating.  That's why we didn't think it was in violation of

16    the Flores Settlement Agreement, Your Honor.

17          **THE COURT:**  Wait.  Let me see if I understand what

18    you're saying.  You're saying that these family residential

19    centers have been in operation for 13 years?

20          **MR. FRESCO:**  Since 2001, the Berks Residential

21    Facility in Pennsylvania has been holding families:  Mothers,

22    fathers, and children.  We've been doing it since 2001 for

23    children and for families in removal proceedings.

24          **THE COURT:**  Right, but that, again, I'm not sure

25    is addressing the issue.  The issue is whether during that

 1 | 13-year period you had a blanket policy refusing to determine

 2 | whether or not any of those people held in detention were a

 3 | flight risk or a danger to the community.

 4 |           **MR. FRESCO:**  First of all, Your Honor, we do not

 5 | have such a blanket policy, first of all.  That was -- that

 6 | claim was discredited by Judge Boasberg in the DC district

 7 | court.

 8 |           But second of all, Your Honor, this case is

 9 | about the Flores Settlement Agreement, and what the four

10 | corners of the Flores Settlement Agreement mean, Your Honor.

11 | And the debate in the -- there is sort of two debates.

12 |           The first debate is:  Does this mean all

13 | minors, or does this mean unaccompanied minors?  And what

14 | we're saying is, the plaintiffs, themselves, showed that this

15 | meant just unaccompanied minors when we've been operating

16 | these facilities that have families in them since 2001, and

17 | they haven't objected until 2015, and they even filed the

18 | lawsuit in 2004, Your Honor, with 13 material violations of

19 | the Flores Settlement Agreement, many of which were a lot

20 | more minor than this large issue that we're debating today.

21 | It's an important issue.  And they let that go, Your Honor.

22 | They did not say that there was a reason.

23 |           And I think it's important that we look at

24 | the Flores Settlement Agreement itself, Your Honor, for a

25 | second --

```
 1              THE COURT:  No, believe me, I've been studying it

 2   for quite some time.

 3              MR. FRESCO:  Yes -- no, I know you looked at it,

 4   Your Honor.  I'm just going to cite a couple of points that I

 5   think are helpful here in terms of where the parties were

 6   impending.

 7                   If you go to the first page where it says

 8   Stipulated Settlement Agreement, the "whereas" is, it says:

 9   "Whereas the district court has certified this case as a

10   class action on behalf of all minors," that's actually not

11   what happened.

12                   If Your Honor goes to the 1986 class

13   certification, actual order, it wasn't -- so, "all minors" is

14   a shorthand.

15              THE COURT:  In fact, why don't you tell me where

16   that is, because I was looking on the docket for it, and I

17   couldn't find the order.  So, I assumed that the parties had

18   stipulated to the class.

19              MR. FRESCO:  No, Your Honor, and there is actually

20   not a merger clause in this Agreement, which means we can

21   submit this kind of parole evidence.  And I just found it

22   recently, so I can put it in the record, Your Honor.

23              THE COURT:  Well, I can take judicial notice of an

24   order.

25              MR. FRESCO:  Yes.  Yes.
```

```
 1              THE COURT:  Well, where is it?

 2              MR. FRESCO:  It's -- well, we have it in our files

 3   in DC, and I have all the --

 4              THE COURT:  Is there a docket number of that

 5   order?

 6              MR. FRESCO:  Do you know the docket number?

 7                   I mean, I can -- it's in the -- it's in --

 8                   I mean I literally can get it scanned and

 9   into the Court's file in an hour.

10              THE COURT:  Well, of all of the piles of documents

11   that we received, we were looking for that order, and we

12   couldn't find it.

13              MR. FRESCO:  Yes, Your Honor, and I apologize.

14   I -- it's not obviously available on the Pacer, and so we

15   didn't have everything in our -- you know, we warehouse these

16   things in the government, and we have to pick them up.  So, I

17   just recently saw them, Your Honor.

18                   But here is what's critical about the class

19   that was certified in 1986.  It was:  "All persons under the

20   age of 18 years who have been, are, or will be arrested and

21   detained pursuant to 8 USC 1252 by the immigration service

22   within the INS western region and who have been, are, or will

23   be denied release from INS custody because a parent or legal

24   guardian fails to personally appear to take custody of them."

25                   So, that's what we were talking about when it
```

1  says whereas, this is who the class that was certified was.

2  It was people who were not with a parent, who didn't have a

3  parent to come pick them up.

4          So, when they're talking about all of the

5  minors, that's what this talks about in that second

6  paragraph, all minors, those are the "all minors" that

7  they're talking about, Your Honor.

8       THE COURT:  So, then, why in your stipulated

9  settlement agreement did you not limit it to "unaccompanied

10  minors"?

11       MR. FRESCO:  Because in 1997, unlike in 2001, we

12  were not engaging in family detentions.  Nobody knew about

13  that concept.  It didn't exist.  There was no --

14          There was nothing to foreseeably see because

15  no one -- that thought hadn't even occurred to anyone's mind.

16  And that's what the judge ruled in the Bunikyte case which

17  Your Honor's court order cites.  If nobody thought of that,

18  and there is no dispute that nobody thought about family

19  detention, and here is why, Your Honor.

20          First of all, the word "parent" appears one

21  time in this 30-page Flores Settlement Agreement.  I did the

22  math, and the only place the word "parent" appears is when it

23  talks about --

24       THE COURT:  -- releasing.

25       MR. FRESCO:  Yes, releasing the child to the

1    parent.  It doesn't appear anywhere else because the

2    Agreement didn't contemplate people coming with their

3    parents, people being detained with their parents, Your

4    Honor.  So, that's a critical point.

5                    The second point, Your Honor, is, the

6    solution for the fact that the Agreement doesn't contemplate

7    parents, the only way the plaintiffs can square that is to

8    write a whole new language in about the parent having now the

9    say over where the kid is housed, which is not what this

10   agreement talks about.  It talks about the minor being in

11   complete control and being able to file court actions and

12   being able to do anything the minor chooses to get released.

13                   Now, if you look at the plaintiffs' court

14   order, Your Honor, it says:  If a parent wants to stay with

15   the child, the parent can stay about the child.  That's

16   rewriting this agreement.  And the reason it has to rewrite

17   this agreement is because the agreement didn't contemplate

18   that, Your Honor.

19           **THE COURT:**  I'm not sure that that means it's

20   rewriting the agreement.  They're asking you to comply with

21   the terms of the agreement.

22                   If someone voluntarily wants to excuse

23   themselves from your implementation of this settlement

24   agreement, they're saying there should be some accommodations

25   for that.  I'm not ordering it.  I haven't ordered any remedy

1     yet.  That's partly the reason, is because I don't think

2     there has been sufficient briefing of what relief is

3     appropriate once I found a breach.

4               **MR. FRESCO:**  But that's the question, Your Honor.

5     Is that only underscores the point.  Who's choice is it?  The

6     entire Flores Settlement Agreement, talks about the choice

7     being the minor's.  The parent isn't in there at all.  The

8     parent is not contemplated.  The child -- the idea that the

9     child is coming with their parent is not taken into account

10    anywhere, in the transportation section, in the housing

11    section, anywhere.

12              So, that's what we're trying --

13              **THE COURT:**  Well, isn't that presumed in

14    paragraph 14, if the first category of preferred release

15    custodian is the parent?

16              **MR. FRESCO:**  I don't think so, Your Honor, and

17    here is why I don't think so.  Because it talks about

18    releasing to the parent, not releasing simultaneously.  But

19    also it talks about the need to conduct a study of the home

20    to determine if that home is going to be suitable.

21              **THE COURT:**  But wasn't -- wasn't the statutory

22    context in 1997 the same as it is now, which is, that people

23    who are detained have to be determined to be either a flight

24    risk or a danger to the community; and if they are not, then

25    they must be released.

 1          **MR. FRESCO:**  Your Honor, the statutory framework

 2   is the same, but I would respectfully submit that's not the

 3   statutory framework.  The statutory framework gives broad

 4   discretion to ICE to detain someone in removal proceedings.

 5   Those are two of the main factors, but the statute does not

 6   limit it to only those two factors.

 7          But I think this raises an important point,

 8   which is discussed in the Bunikyte case, and I think it's

 9   critical here that not just the broad discretion but

10   paragraph 14 of Flores itself talks about being able to

11   maintain the custody of the child if it's in the safety

12   interest of the child.

13          And what I fear about this draft order, Your

14   Honor, is that now we've taken a situation where the child is

15   safe, we don't have any allegations from the plaintiffs that

16   a child has been harmed at one of our family -- physically

17   harmed -- at one of our family residential facilities, and

18   we're creating uncertainty in that process, because we're not

19   going to -- we're not going to release the adults.  The

20   adults there are either reinstatement cases, meaning they've

21   crossed a second time over the boarder which means -- one, we

22   have to detain them, but second, it's clear they're a flight

23   risk because now they've come back a second time in violation

24   of the law, or they've been adjudicated in a bond proceeding

25   to be a flight risk.

1          So, we're not going to release the parents;

2     and so, now the question is, what the Court is potentially

3     doing is injecting uncertainty about what is going to happen

4     to these children into this proceeding.

5          **THE COURT:**  What is your practice with regard to

6     unaccompanied minors?

7          **MR. FRESCO:**  Unaccompanied minors, by definition,

8     do not have a parent.  The parent has either abandoned,

9     abused or neglected them.  So, we have to do something with

10    this unaccompanied minor.

11         **THE COURT:**  No, but don't you apply the Flores

12    Settlement Agreement to unaccompanied minors?

13         **MR. FRESCO:**  Your Honor, that is one of the

14    reasons the Flores Settlement Agreement needs to be updated,

15    because basically, the answer is no.  It's now all done by

16    TVPRA, the Trafficking Victims Protection and Reauthorization

17    Act of 2008.

18               Everything the Flores Settlement Agreement

19    talks about is old and outdated.  Now the child goes for HHS

20    custody.  HHS is not anywhere in this agreement.  There is

21    not contemplation of this.

22               HHS then tries to figure out if there is a

23    guardian available, Your Honor; and if there is not a

24    guardian available, then HHS maintains the child in their

25    custody.

 1          **THE COURT:**  But there was a stipulation between

 2    the parties addressing that, wasn't there?  Dealing with the

 3    change of the names of the parties.

 4          **MR. FRESCO:**  Your Honor, there is certainly

 5    continuity in -- in the enforceability of the Flores

 6    Agreement, but the Flores Agreement does not trump an act of

 7    Congress.  And so the act of Congress, the TVPRA, changes how

 8    we are to handle children.  And here is why this is critical,

 9    and why the Court's order is potentially difficult for us to

10    implement in a way that preserves the safety of children.

11          DHS no longer is in this business of trying

12    to determine if you order a release of someone in their

13    facility about whether that child is going to be safe.

14          All of the expertise, all of the skill, all

15    of that is now done by HHS, Your Honor.  And Congress knew

16    about accompanied minors in 2008 when they passed the TVPRA,

17    and they say we're only going to have HHS do this for

18    unaccompanied minors.  We're not going to have a scenario

19    where we're doing this analysis for accompanied minors,

20    because they have a parent who's there.

21          And so that's the fundamental flaw, I think,

22    in this -- in this draft order, Your Honor, is, we're taking

23    a situation where the parent is with the child, they're

24    looking after the child, especially if you look at the Dilley

25    facility, Your Honor, the new facility, there is almost no

1     evidence of any discord there.  And, in fact, the mothers --

2     I read this with great heartening, call their residences "my

3     house," you know, "my home," because that -- the conditions

4     in the Dilley facility are not even disputed in this

5     recorded, Your Honor.  So, we're going to be moving children

6     from that safe and secure environment into one of potential

7     uncertainty.

8                    And then, second, what most worries me, Your

9     Honor, is that once it's known that again we've returned to a

10    situation where families are not able to be housed in these

11    facilities, even as a discretionary basis -- I know the Court

12    has a problem with blanket policy which we can discuss -- but

13    even as a discretionary basis when necessary, then we allow

14    dangerous smugglers to use children to fool the system and to

15    say this is my child, and then we have no ability to house

16    people to figure that out, Your Honor.

17              **THE COURT:**  Well, what were you doing for the past

18    13 years?

19              **MR. FRESCO:**  Your Honor, if we couldn't verify

20    this within the very short term custody of the CBP facility,

21    we had to release those individuals.  That's the problem,

22    Your Honor.

23              **THE COURT:**  And what evidence in the record is

24    there that there was a raft of problems as a result of

25    compliance with Flores during the past 13 years?

```
 1              MR. FRESCO:  Your Honor, with -- with which issue?

 2    With the issue of safety to the children?

 3              THE COURT:  Yes.

 4              MR. FRESCO:  Yes, Your Honor, the Tae Johnson

 5    affidavit talks about the fact that -- I will read -- I will

 6    read the affidavit.

 7              It talks about the fact that:  "Unrelated

 8    children are at increased risk of trafficking by smugglers

 9    who bring them across the border in an attempt to avoid

10    detention by representing themselves as a family unit."

11              THE COURT:  That is what is called a conclusory

12    statement.

13              MR. FRESCO:  But, Your Honor, at this --

14              First of all, we would -- we should have an

15    opportunity to further develop the record here.  This is sort

16    of the equivalent of a complaint idea, and I don't view this

17    as the end of the proceeding; I view this as the beginning of

18    the proceeding.  But second of all, discounting the person

19    who Congress put in charge of making these tough choices when

20    they're saying that this is what they've observed and they've

21    seen, Your Honor, I think is a very dangerous step at this

22    point.

23              THE COURT:  Well, I'm not suggesting that I don't

24    think it's true.  I don't have anything in the record from

25    which I can make a determination in that regard.
```

1                What I'm saying is, if this is something that

2       was of concern in the past 13 -- 18 years, since the Flores

3       Settlement Agreement was entered into, why in the world

4       didn't you seek to modify the agreement or promulgate

5       regulations that would deal with the situation?

6                **MR. FRESCO:**  So, again, modifying the agreement

7       presupposes something that we simply, categorically reject

8       which is that family residential facilities for accompanied

9       minors, as opposed to unaccompanied minors, violates this

10      agreement.  In 2001 we opened our first family residential

11      facility, and we got no lawsuits from the plaintiff.

12               There was a lawsuit in 2004 about 13 other

13      factors, nothing about operating family residential

14      facilities, Your Honor.  So, we have operated family

15      residential facilities.  Their legality has not been

16      questioned, Your Honor.

17               Even in the Bunikyte case --

18               **THE COURT:**  But there is -- I don't think there's

19      anybody who is saying that family residential centers per se

20      are violative of anything.  The question is, who are you

21      putting in them and for how long?

22               **MR. FRESCO:**  Yes, but, Your Honor, the threshold

23      question, believe it or the not, is if you say that family

24      residential centers don't violate anything, it implicitly

25      acknowledges that we're not in violation of the Flores --

1          **THE COURT:**  No, it doesn't.  I'm simply saying

2     that just because you built these family residential centers

3     alone doesn't mean that you've violated the Flores Agreement.

4              What they're saying you violated is the

5     requirement to exercise your discretion to determine on a

6     case-by-case basis whether any of these minors are a flight

7     risk or a danger to the community; and if so -- or if not,

8     then they have to be treated in accordance with the

9     requirement under the Flores Settlement Agreement.

10          **MR. FRESCO:**  This is where I think I have to

11     correct a few -- a few -- a misunderstanding here.

12              The plaintiffs -- and I don't want to make

13     their argument for them, would say, if we're housing children

14     at all for any reason past 72 in a family residential

15     facility, we're violating the Flores Settlement Agreement.

16     And so that we're saying, is, we do not believe that.  I

17     don't know if the Court believes that.

18              With regard to the reasons why we detain

19     someone, everyone now who's at one of our family residential

20     centers, Your Honor, the parents have been declared either in

21     mandatory detention, meaning they can't leave because they're

22     in a category that their detention is mandatory, or that

23     parent has now been adjudicated as a flight risk, Your Honor,

24     or potentially in some small situation a dangerous person.

25              So, the question is, what do we do with the

```
1    child in that situation?  And what VHS has decided, both
2    consistently with paragraph 14 -- although we don't think the
3    Flores Settlement Agreement applies -- but consistent with
4    that paragraph and consistent with their congressionally
5    mandated authority to make these tough choices, is that the
6    child's best interests are maintained by keeping the child
7    with that parent that we have to keep detained rather than
8    turning that child into a de facto unaccompanied child.
9               What I would note, which is incredibly
10   powerful to me, is that in that Bunikyte decision, the
11   plaintiffs agreed with the government.  They said it would be
12   harmful to separate the parents with the children.  Only now
13   are we getting a claim where maybe that's not harmful; but I
14   think any person of reasonable view here --
15        THE COURT:  Well, I -- I think that even now
16   they're not going to content that if a mother wants to assert
17   her authority to keep her child with her that the Flores
18   Agreement has to be imposed upon them involuntarily.
19        MR. FRESCO:  But that only underscores the point,
20   Your Honor, of where is any of that in the settlement
21   agreement?  We're just making this up as we go along.  None
22   of it is in there.
23        THE COURT:  Isn't there something that says you
24   have to take into account the wishes of the minor?
25        MR. FRESCO:  The wishes of the minor, Your Honor.
```

1    Exactly.  Here, the proposed order of the plaintiff says we

2    take into account the wishes of the parent, not the wishes of

3    the minor, Your Honor.

4                    So, if the minor wants to stay, and the

5    parent wants the minor released, what do we do then?

6         **THE COURT:**  Well, generally it's consonant, but in

7    the rare occasion when it's not, I suppose the Flores

8    Agreement requires you to take into consideration the

9    interests of the -- or the wishes of the minor.

10        **MR. FRESCO:**  Okay.  Now on the flip side, when the

11   minor wants to be released and the parent doesn't want to

12   be -- so the minor --

13                    When the minor wants to be released, and the

14   parent doesn't want the minor to released, what do we do

15   there?  That's -- those are -- those are the tough questions,

16   Your Honor.

17        **THE COURT:**  Well, the upshot of it is, I didn't

18   draft this agreement.

19        **MR. FRESCO:**  Yes, Your Honor.

20        **THE COURT:**  You did.

21        **MR. FRESCO:**  Yes, Your Honor.

22        **THE COURT:**  So, if there is ambiguity in the

23   agreement or if the parties think that they can mutually

24   agree to revise the agreement so that it clarifies certain

25   issues that have crystalized in the last 18 years that should

1    have been addressed sooner, you're free to do that.

2                    This is -- this is a contract.  You can

3    modify the agreement if you wish.  But what you're asking me

4    to do is to unilaterally modify the agreement, and that I

5    cannot do.

6            **MR. FRESCO:**  Well, there's two steps, Your Honor;

7    and, first, we're not asking you to -- the first step is not

8    asking you to unilaterally modify the agreement.

9                    The first step is saying, which I think is

10   our threshold argument, that if you look at this agreement,

11   it doesn't take into account the situation where a minor came

12   to the United States with their parents, and the class

13   certification definition there which we will file immediately

14   after this hearing shows you that the fact that the word

15   "parent" is only in that contract, the one that shows you

16   that; the plaintiffs' interpretation of this contract for the

17   last 15 years shows you that, Your Honor.

18                   And I think it would be a manifest injustice

19   to now, 15 years later, come back and say:  Wait a second,

20   you shouldn't have been having this family detention that

21   you've had since 2001.

22           **THE COURT:**  Well, it is not unusual, and I have

23   had many a class action settlement come before me, that the

24   class that is certified is not the class that is specified in

25   the parties' settlement agreement.

1           If the parties had wanted to limit the

2      settlement agreement to those minors who were unaccompanied,

3      why didn't they do that in the Flores Settlement Agreement?

4           **MR. FRESCO:**  Your Honor, the entirety of this

5      agreement is about unaccompanied minors.  There is no even a

6      thought process that anybody here involved a parent coming

7      across with their child.

8                Again, the best evidence of that, Your Honor,

9      was the class that was certified in the case.  The

10     best evidence of --

11          **THE COURT:**  But there is a definition of what the

12     class is in the settlement agreement to which these

13     provisions apply; and it does not qualify it to accompanied

14     or unaccompanied minors.  Even the Court in Bunikyte, or

15     however you pronounce it, made that finding.

16          **MR. FRESCO:**  Yes, Your Honor.  I know that it's

17     correct that the Court made that finding.  And I think with

18     the all minor section --

19               I'll tell you -- a few things.

20               The *all minor* section, Your Honor, is

21     contemplating what the parties viewed at that time, and here

22     is how we know that, because of all the tough questions we

23     talked about would necessarily need to have been in the

24     agreement for us to figure out.

25               What was going to be the role of a parent in

1    a situation where a parent wanted to keep the child in

2    custody?  What was going to be --

3               What were we going to have to do with the

4    parent when we were transporting the child?  What were we

5    going to do with a parent when there was an objection that

6    the child wanted --

7               None of that is in the agreement, Your Honor.

8          **THE COURT:**  Well, that is the reason why

9    agreements need to be clear, because apparently the

10   plaintiffs don't agree with you that was their intent when

11   they entered into the agreement.

12         **MR. FRESCO:**  Well, of course, Your Honor.  But

13   then -- I would say this.  If the Court thinks this agreement

14   is ambiguous, which I think from the debates that we're

15   having here are all of these very difficult, fundamental

16   unanswered questions, an unambiguous agreement shouldn't be

17   read to trump the congressionally mandated discretionary

18   authority that DHS has to resolve these questions of who is

19   going to be detained and when, Your Honor.  That is a very

20   dangerous precedent to read, and especially when we look at

21   what the outcome is going to be.

22              The outcome of this is going to be to

23   separate families, create uncertainty where we don't have

24   that uncertainty now, and to endanger children in two ways,

25   Your Honor, both from encouraging people, just as normal

 1    family units that come across; but more importantly, Your

 2    Honor, these very dangerous smugglers who take children

 3    because they know that they won't then released, Your Honor.

 4              All of that are legitimate, unavoidable

 5    consequences of a decision like the draft decision.  And so,

 6    what I would ask the Court is, if the Court is not interested

 7    in reconsidering these arguments, to at least not issue the

 8    order and let us try to figure out some way that could work,

 9    you know, to satisfy some of the concerns of the plaintiffs.

10    But to issue this order, Your Honor, I think would create a

11    very difficult environment to resolve these very difficult

12    security concerns.

13              The Department of Homeland Security

14    doesn't -- is trying to do the best they can.  This is a very

15    difficult situation.  What was happening last year, nobody

16    was prepared for it, and --

17         **THE COURT:**  I don't disagree with that.

18         **MR. FRESCO:**  Yes.  And so what we were trying to

19    do, Your Honor, was to figure out how best to resolve the

20    emergent situation in a way that respected both the family

21    unit that was coming across the United States and the public

22    safety interests, and that's why we did what we did, Your

23    Honor.  And it's worked to the extent that those numbers have

24    gone down.

25              We're in the middle of the high season now,

1    the cert season, and so we should at least have the

2    opportunity to get through this season, Your Honor, and we

3    can work with the plaintiffs to try to figure out how to

4    resolve these situations.  But an order like this at this

5    time creates a very difficult scenario.

6            **THE COURT:**  You talk about this like it's salmon

7    spotting or something.  Is there a prescribed season?

8            **MR. FRESCO:**  Your Honor, unfortunately, yes.

9    During the spring -- this is -- this is the way these cycles

10    have gone during the spring season when it's no longer too

11    cold.  March and April, you start to see, historically, the

12    numbers pick up dramatically.  And those numbers continue

13    until September -- August, September and then those numbers

14    drop down again.

15            I don't think the plaintiffs would dispute

16    that.  Those are -- or however -- however you want to

17    describe that phenomenon, I just want to describe it

18    numerically and statistically, and that is a well known

19    statistical phenomenon.

20            **THE COURT:**  And how long, approximately, do people

21    remain in these residential centers?

22            **MR. FRESCO:**  So, the current numbers that I have

23    are -- just give me a second and I will -- at the Karnes

24    facility, it's 60 days is the average length of stay.  This

25    is what I -- gave me a couple of days ago.

1              At the South Texas, which is Dilley, the new

2     one that I was talking to you about, where they don't have

3     the complaints, is 41 days, Your Honor.  And at Berks, which

4     is the one that's been operating since 2001, it's a 116 days.

5              And they're -- almost everybody is applying

6     for asylum.  So, when you have these asylum claims, Your

7     Honor, they take longer because people get continuances to

8     get lawyers, and you've got to get people time to marshal

9     evidence, et cetera, et cetera.  And so we can't, obviously,

10    try to make people's cases go faster when they're trying to

11    build their case.

12             So, those are the average days that we have

13    of detention there.

14             If you look at the one case that talks about

15    length of detention, the ^ Moore versus Kim, six months is

16    what's considered an unreasonable amount of detention, same

17    thing as if -- with post custody, we're not there with

18    regard --

19             **THE COURT:**  I'm familiar with it --

20             **MR. FRESCO:**  Yes, yes --

21             **THE COURT:**  -- (simultaneously speaking.)

22             **MR. FRESCO:**  Sorry.

23             (Simultaneously speaking.)

24             **MR. FRESCO:**  Yes, yes.  I'm sure you have many

25    cases --

1                    So, we're not anywhere near there, Your

2      Honor, on -- on -- on those timings.

3                    And, again, one thing that's very important

4      here is, people get bond hearings already, and people are

5      winning in bond hearing cases at these facilities.

6                    Moms are getting released; children are

7      getting released.  What we're talking about is orders -- an

8      order that doesn't -- which the draft order would currently

9      do -- prevent us from -- in any circumstance housing people

10     in this situation.

11                   We need to have the flexibility for, if a

12     parent is considered a flight risk or if a parent is

13     considered dangerous, or if we think it's safer to have the

14     child with the parent to house -- and we've made the decision

15     to house the parent, to house that child with that parent at

16     this facility, Your Honor; and I'm very concerned that this

17     order is now preventing us from doing that.

18              **THE COURT:**  All right, thank you.

19              **MR. FRESCO:**  Thank you, Your Honor.

20              **THE COURT:**  Would plaintiffs like to address those

21     arguments?

22                   And I have some questions for the plaintiffs

23     as well.

24              **MR. HOLGUIN:**  Yes, Your Honor, Carlos Holguin for

25     the plaintiffs.

```
 1                    I think there's a number of items that
 2      Mr. Fresco asserted that I -- that simply aren't the way
 3      things are.
 4                    Berks has been in operation for a -- for a
 5      number of times, but it holds about 85 people.  The process
 6      that we're confronting now is exponentially more difficult.
 7      Mr. Fresco talks about the dangers of separating -- of
 8      separating parents from children, and the --
 9                 THE COURT:  Before you -- before yo get to that --
10                 MR. HOLGUIN:  Yes.
11                 THE COURT:  During that 13-year period, when, I'm
12      told, these were -- there were residential centers that were
13      in operation, is it true that plaintiffs didn't think that
14      they were in violation of Flores?
15                 MR. HOLGUIN:  Plaintiffs -- plaintiffs and lawyers
16      on behalf of plaintiffs sued the government, federal
17      government for the Huddle facility.  That's the Bunikyte
18      dictionary where all of a sudden they decided they were going
19      to detain families.
20                    They shuttered that facility.  So, it's not
21      as though these -- these residential facilities have gone on
22      without challenge.
23                    Berks is a special case, and Berks, we can
24      submit a letter from the Pennsylvania Department of Social
25      Welfare showing that it is not even a secure facility.  In
```

```
 1    addition to having a very small population, it is not a

 2    secure facility, and it has a license.  In contrast to Huddle

 3    and in contrast to -- to Dilley and in contrast it on Karnes.

 4                    So, the -- but -- but the main problem here

 5    is that at the time that -- and for the many years that Berks

 6    has been in operation, the periods of detention were a week

 7    or two.  We have declarations in the record showing from

 8    advocates who work and represent people at Berks that the

 9    period of detention there is very, very short.

10                    And so, the question becomes the degree of

11    harm to the class, because after all, we're talking about

12    enforcing a settlement and asking for equitable relief.  If

13    it's a question of detaining a family for one week or so

14    until they can be bonded out or paroled out, that is simply

15    not the same sort of injury as we're talking about now, with

16    thousands -- hundreds and thousands of mothers and children

17    are being detained for up to ten months.

18                    Now, we can talk about averages, but we can

19    provide the Court with evidence showing that ten months

20    that -- that these women and children have been

21    languishing --

22             THE COURT:  Then aren't they in violation of -- I

23    mean they have other problems when they detain people for

24    that long if they haven't found that they're a safety or

25    flight risk problems.
```

1          **MR. HOLGUIN:**  Well, the problem is this, is that

2     these facilities are located in rural areas, far away from

3     people.  I know that American Immigration Lawyers Association

4     and a number of other organizations have organized pro bono

5     contentions to try to represent people in these facilities.

6     It's extremely difficult.

7               Without a lawyer, the chances of one of these

8     mothers or their children being released on bail is virtually

9     nil.  Those few that can, do manage to get a pro bono lawyer,

10    then there is an uphill fight against ICE as to whether

11    they'll be granted bond or not.

12               Now, I will say this, that many, many of

13    these women and their children will pass credible fear

14    interviews after which they are statutorily eligible to be

15    released; and yet, even after passing those credible fear

16    interviews, showing that they have a credible fear of being

17    returned to their countries of origin, for most -- for many

18    reasons but primarily for violence, fleeing extreme

19    insecurity, poverty and -- and domestic violence and abuse,

20    many, many of these women or a very high percentage are

21    passing credible fear interviews, and the statistics show

22    that once they do, 70 percent of them will be granted asylum.

23    They'll be allowed to remain in the United States

24    indefinitely.

25               So, this entire period of detention that

1     they've gone through has been proven a complete waste of

2     taxpayer money which runs about $300 a day for taxpayers to

3     keep women and children in these facilities.

4               Now, I'm surprised, because until now the

5     main justification of the argument the government has offered

6     for all of this detention is deterring others, okay?

7     Apparently that is not something that -- that figures into

8     their calculus at least at this point in time.  It's all

9     about trying to save families from separation.

10     **THE COURT:**  Well, how about their argument that

11     you never contemplated within the Flores Agreement covering

12     unaccompanied minors?

13     **MR. HOLGUIN:**  Your Honor, I've been working on

14     this case since 1985.  I was involved in the -- in

15     negotiations that led to this.  I know what went on in --

16     during those negotiations.

17               The class definition expands and clearly

18     protects all minors because the parties did agree and did

19     anticipate that there would be children and mothers and --

20     well, fathers as well, in detention for some periods of time.

21               The regulations -- it's -- at the time this

22     settlement was negotiated specifically contemplated that

23     families would be detained.

24     **THE COURT:**  So, are you saying that if I look at

25     the class certification order, it's not going to be limited

```
 1    to unaccompanied minors?

 2          MR. HOLGUIN:  The class certification order that

 3    the Court initially entered, as I recall it, is as Mr. Fresco

 4    read it.  However, it was also -- it was also limited to the

 5    western region.

 6              The settlement clearly says -- this is going

 7    to go nationwide, and it's going to cover all minors.  The --

 8    the -- and it's -- and -- and as the Court pointed out, it's

 9    certainly legitimate for -- for litigants to decide to expand

10    the coverage of a class in doing -- when they wish to do so

11    in the context of a settlement.

12              We have pointed out in numerous provisions of

13    the settlement that it applies to all minors and not simply

14    those who happen to be unaccompanied.

15              There is no reason why the plaintiffs would

16    have allowed the intolerable conditions that generated this

17    lawsuit to be visited upon simply because they had the chance

18    of being arrested with their mothers or their fathers.  That

19    was not something we would have --

20          THE COURT:  Let me ask you another question.

21              I don't have any questions about the fact

22    that the -- the preexisting plaintiffs had standing would

23    have standing now to say that the agreement that they agreed

24    to was breached, but do they have standing to seek

25    affirmative relief?
```

1          **MR. HOLGUIN:**  The original plaintiffs --

2               This is -- as a certified class action, the

3     class itself becomes the plaintiff before the Court, and we

4     can -- we're happy -- we're happy to submit legal authority

5     to that effect.

6               The original plaintiffs in this litigation

7     has long reached the age of majority, but it is the class as

8     a whole that continues to provide standing.

9          **THE COURT:**  Right.  But do -- is it -- do I need

10    to have a plaintiff with standing in this action to enforce

11    the agreement, or is it sufficient that because it's a

12    certified class that a -- any class member who has suffered

13    as a result of a breach would allow this case to go forward?

14         **MR. HOLGUIN:**  Yes, Your Honor.  There is no

15    question that the numerous class members are being affected

16    by this.

17         **THE COURT:**  In other words, do you have to name

18    one of them as a plaintiff, or do we simply assume that

19    because they're class members that there is sufficient

20    standing to go forward without a named plaintiff who has

21    standing?

22         **MR. HOLGUIN:**  Yes, there is sufficient standing,

23    Your Honor, because the class itself is the entity, is the

24    plaintiff now before the Court --

25         **THE COURT:**  As far as the affirmative relief that

1    the plaintiffs seeks, does the Court have to consider that

2    after the filing of a motion for a preliminary injunction

3    or -- where you have to show likelihood of success on the

4    merits and irreparable harm?

5              That's part of the reason why in my

6    conclusion I did not issue specific remedies, because I

7    wasn't entirely sure that you can simply file a motion for

8    enforcement to seek affirmative relief as opposed to a

9    declaration that the agreement has been breached.

10              **MR. HOLGUIN:**  As a technical, matter, Your Honor,

11    the settlement itself operates perspectively as an

12    injunction.  And we could have brought this motion as one for

13    contempt.  So, therefore, the same remedies that would be

14    available to the Court on a motion for contempt are available

15    to the Court 0at this time.

16              Nonetheless, plaintiffs are satisfied that

17    the proposed order of the Court, which simply says to the

18    parties:  Meet and confer and come up with something to

19    remedy the violations that the Court has found is -- is a

20    reasonable remedy at this point in time.

21              If we cannot do that, then we'll have to

22    trouble the Court with more; but we believe that it's worth

23    the time to try to do this now that the Court has expressed

24    its opinions on these matters and are hopeful that we'll work

25    it out.

```
1              THE COURT:  What do you think of Mr. Fresco's

2    proposal that I should stay issuance of my order and allow

3    the parties to meet and confer so that they can work out

4    something mutually satisfactory without the need for my

5    order?

6              MR. HOLGUIN:  There is -- there is little -- I

7    think there is little advantage to proceeding in that way.

8    The advantage of a particular order is that we know what the

9    Court's views are.  There is a time limit in which we're

10   required to act, and the parties are operating under a

11   structure that we can then determine which way is best to go,

12   given our various interests.

13              To leave the matter pending, to leave it open

14   strikes me as when the Court has already determined that

15   there are violations of the settlement, strikes me as being

16   something that simply delays and would not -- would not

17   likely be productive in -- in the parties coming to an

18   agreement on an actual form of relief.

19              THE COURT:  Well, you already know what the

20   Court's thinking is.  You've read my tentative, and you know

21   that I will give you a timeframe within which to try to knock

22   out an agreement between the parties.

23              Mr. Fresco is simply saying that he thinks

24   that all hell will break loose if I issue my order and cause

25   this whole system of residential centers to collapse of its
```

1    own weight.

2              **MR. HOLGUIN:**  Well, Your Honor, the sky is not

3    going to fall.  The point here is that, where the parties are

4    going to meet, that's the only substantive remedy that's

5    being -- relief that the Court is granting at this time.

6              And -- and having the record, the Court on

7    the record is saying that there are violations of the

8    settlement, this is not the right thing to be doing, singling

9    out women and children for this kind of treatment, it's

10   not -- the sky is not going to fall on that.

11             It's simply a question of justice for a group

12   of people that have been --

13             The way I would put it is that, you know,

14   if -- the writing -- the -- the -- his -- his inferno today

15   places like Dilley, Texas, places like Karnes City, places

16   like these women are coming from, like -- and Honduras would

17   be mentioned in those circles of medieval torment.  This is

18   something that should not go on indefinitely, should be --

19   and should be -- and should be ended as quickly as possible.

20   And we think -- plaintiffs believe that the process will be

21   greatly expedited by the Court issuing the order in its form

22   that it has -- it has provided tentatively today.

23             **THE COURT:**  Would you agree with the Court's

24   observation that these residential -- family residential

25   centers would still -- could still be used as temporary

```
 1   housing in situations where there is a search, such that they

 2   could be housed there pending a determination as to where

 3   they should be sent?

 4           MR. HOLGUIN:  Yes, Your Honor.  The settlement --

 5   the settlement contemplates, and when there is a large number

 6   of individuals, then they can be housed in noncompliant

 7   facilities.  But the government must be making efforts to

 8   either release or transfer the minors to properly licensed

 9   facilities.

10           And -- and that is something that we can work

11   out if we're talking about with the -- with the defendants

12   about how those facilities -- how long people could be kept

13   there and so forth.  As long as there is a good faith effort

14   to minimize the amount of time that children spend in

15   detention.  That's the whole purpose of the settlement.  And

16   to keep them in properly licensed facilities.

17           And as long as the government is moving in

18   that direction, the plaintiffs are willing to be reasonable

19   in providing some kind of accommodations to allow the

20   transition to take place in an orderly fashion.

21           THE COURT:  And does the agreement as it stands

22   allow for an accomodation to either a minor or a parent who

23   wishes to remain in the facility?

24           MR. HOLGUIN:  Your Honor, our -- the plaintiffs'

25   position is, and we can provide authority to this, if we
```

```
1    haven't already done, I believe we have, is that whenever

2    there is a settlement that confers rights on a class member,

3    a class member is entitled to waive those rights.

4                    Mothers and parents speak for children all

5    the time.  I don't really consider this to be an unusual

6    situation or one that sets up some untenable chain of order

7    where there's a conflict between a parent and a child.

8                    I have children of my own, and the law is

9    quite clear when I get to make decisions for them and when

10   they get -- when they reach the age of maturity, when they're

11   able to make their decisions.

12                   So, this is -- this is something that I think

13   can also be worked out.

14           THE COURT:  All right, anything further?

15           MR. HOLGUIN:  No, Your Honor.

16           THE COURT:  Mr. Fresco?

17           MR. FRESCO:  Just -- just a couple of notes, Your

18   Honor, quickly.  Plaintiffs' Exhibit 10, Paragraph 6 from

19   their affidavit of Brigit Cambria, it says quote/unquote:

20   "Berks is clearly a secure facility."

21                   So, any evidence they're going to have now to

22   be opposite will be in conflict with that statement, Your

23   Honor.

24                   Second of all, Your Honor, there is no

25   dispute that Berks has been operating since 2001 as a secure
```

1  family residential facility and that the first time we have

2  been sued by the Flores class about operating family

3  residential facilities is in January, February of 2015.

4          **THE COURT:**  Yeah, but what about Ms. Holguin's

5  point that previously you were only engaging in de minimis

6  violations and not wholesale violations?

7          **MR. FRESCO:**  I think, Your Honor, the operation of

8  family residential facilities is either a violation of the

9  Flores Agreement or it's not.  And the days in which how many

10  people have been there has changed.  Sometimes it was long,

11  sometimes it was short.  But it wasn't always one way, and it

12  always wasn't at one time.  And if they were going to have a

13  lawsuit in 2004 with just --

14          I ask the Court to look at those 13

15  violations.  Some of them are extremely technical, something

16  this massive, you know, of -- of:  Can you operate a family

17  detention facility or not?  I think is important.

18          Second, Your Honor, on the class

19  certification order, I think it's critical that the parties'

20  understanding of that be framed by the second "whereas" on

21  the first page of the agreement.  Where it says:  "Whereas

22  the district court certified this case as a class action on

23  behalf of all minors."

24          So, when they said "all minors," that's not

25  what the class action said.  It said what we both agree it

said.  And so that's what people meant when they meant [sic] "all minors."  They meant "All minors who don't have a parent to pick them up."  That's what they meant.  They didn't mean anybody else, Your Honor.

Having said all of that, we understand that Your Honor is concerned about this issue.  I am very thrilled to convey Your Honor's concern to the Department of Homeland Security who's trying to do the best they can; but to have the order out I think is nonproductive.  Your Honor can give us a deadline.

We know what the order says, theoretically, and we -- you know, I think we have good experience. Maybe -- I don't know if Judge Matz would want to do it again or not, but I heard that we had good experience with Franco litigation with him.  We could try somebody else.  And try to work this out with the plaintiffs.

But I think to have the order out makes the conditions of a settlement harder because the -- it's a complete capitulation to -- there is nothing in there for the government to point to about our interests.  All of our interests are completely discounted in -- discounted in the sense that Your Honor can consider them, but we lost 100 percent.

And so, it leaves us nowhere to go to take our legitimate security concerns about separating parents

1       from minors, about taking into account --

2                       The plaintiffs say this hasn't happened.  We

3       have habeas cases currently, Your Honor, where we have

4       situations where minors don't want to leave and the parents

5       want the child to leave, and we have other situations where

6       minors wants to leave, and the parents doesn't want us to

7       leave, and we're betwixt in between trying to figure out what

8       to do in those.

9                       And what we've done is we've made the

10      determination, that is both consistent with paragraph 14 of

11      Flores, even though, again, different case in our opinion,

12      but consistent with our congressionally mandated authority to

13      say that we think the safest thing to do is not to have this

14      uncertainty, to keep the parent with the child, which

15      oddly --

16                      I don't know why we're debating this because

17      that wasn't a debate in the 2007 Huddle litigation.  This

18      idea now that we want to encourage separation of parents and

19      children, that we want to turn accompanied minors into

20      unaccompanied minors is completely anathema to me, but that's

21      something I think we need to work out with the plaintiff to

22      try to figure out are we really going to be encouraging that

23      in situations where we have to detain the mother.  This isn't

24      a situation where we want to detain the mother; these are

25      situations where we have to detain the mother, Your Honor.

1            **THE COURT:**  All right.  Well, I am going to ask

2      you to lodge a copy of the Court's order certifying the

3      class --

4            **MR. FRESCO:**  Yes, Your Honor.

5            **THE COURT:**  -- hopefully by next week.

6            **MR. FRESCO:**  Oh, sure.  I mean we're in Los

7      Angeles, but maybe we can make a call to one of our people in

8      DC.  I mean I literally know where the document is sitting in

9      our office, but we got -- we've got to just get it and put it

10     in.

11           **THE COURT:**  All right.  And I am going to hold my

12     order in abeyance, and I'm going to order the parties to meet

13     and confer within 30 days and provide the Court with a joint

14     status report within one week after 30 days.

15           **MR. FRESCO:**  Yes, Your Honor.  Thank you very

16     much.  I appreciate that.

17           **THE COURT:**  All right?

18           **MR. FRESCO:**  Thank you.

19           **MR. HOLGUIN:**  Your Honor, may I?

20           **THE COURT:**  Yes.

21           **MR. HOLGUIN:**  Would we be able to retain a copy of

22     the tentative so that we know -- during -- during the

23     discussions?  Whether -- the Court's thinking on the matter.

24           **THE COURT:**  I will permit you to retain a copy of

25     the tentative, but I would ask that you not share it with

1    anyone or publicize it in any way.

2            **MR. HOLGUIN:**  Thank you, Your Honor.

3            **MR. FRESCO:**  Thank you.

4            COURT CLERK:  All rise.

5                This Court is now in recess.

6            (Recess taken.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                       C E R T I F I C A T E

2      I hereby certify that the foregoing is a true and correct

3      transcript of the stenographically recorded proceedings in

4      the above matter.

5      Fees charged for this transcript, less any circuit fee

6      reduction and/or deposit, are in conformance with the

7      regulations of the judicial conference of the United States.

8

9

10     /S/Anne Kielwasser                    05/01/2015
       _____               _____
11     Anne Kielwasser, CRR, RPR, CSR        Date
       Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| **$** | **3** |
|---|---|
| **$300** [1] - 31:2 | **30** [2] - 42:13, 42:14 |

**/**

**/S/Anne** [1] - 44:10

**0**

**05/01/2015** [1] - 44:10
**0at** [1] - 34:15

**1**

**10** [1] - 38:18
**100** [1] - 40:22
**116** [1] - 26:4
**1252** [1] - 8:21
**13** [9] - 5:7, 5:10, 5:19, 6:18, 15:18, 15:25, 17:2, 17:12, 39:14
**13-year** [2] - 6:1, 28:11
**14** [5] - 4:20, 11:14, 12:10, 19:2, 41:10
**15** [2] - 21:17, 21:19
**18** [3] - 8:20, 17:2, 20:25
**1985** [1] - 31:14
**1986** [2] - 7:12, 8:19
**1997** [3] - 3:23, 9:11, 11:22

**2**

**2001** [10] - 4:19, 5:13, 5:20, 5:22, 6:16, 9:11, 17:10, 21:21, 26:4, 38:25
**2004** [4] - 5:5, 6:18, 17:12, 39:13
**2007** [1] - 41:17
**2008** [2] - 13:17, 14:16
**2015** [5] - 1:18, 3:1, 4:22, 6:17, 39:3
**202-307-6482** [1] - 2:13
**20530** [1] - 2:13
**213** [1] - 1:24
**213-386-9484** [1] - 2:7
**213-388-8693** [1] - 2:7
**24** [2] - 1:18, 3:1
**256** [1] - 2:6

**3**

**30** [2] - 42:13, 42:14
**30-page** [1] - 9:21
**312** [1] - 1:23
**3129** [1] - 2:12
**3:00** [1] - 3:1

**4**

**41** [1] - 26:3
**432** [1] - 1:23

**5**

**5** [1] - 3:5

**6**

**6** [1] - 38:18
**60** [1] - 25:24

**7**

**70** [1] - 30:22
**72** [1] - 18:14

**8**

**8** [1] - 8:21
**85** [1] - 28:5
**85-4544DMG** [2] - 1:10, 3:5
**894-2969** [1] - 1:24

**9**

**90012** [1] - 1:24
**90057** [1] - 2:6
**950** [1] - 2:12

**A**

**abandoned** [1] - 13:8
**abeyance** [1] - 42:12
**ability** [1] - 15:15
**able** [6] - 10:11, 10:12, 12:10, 15:10, 38:11, 42:21
**abuse** [1] - 30:19
**abused** [1] - 13:9
**accommodations** [2] - 10:24, 37:19
**accomodation** [1] - 37:22
**accompanied** [5] - 14:16, 14:19, 17:8, 22:13, 41:19
**accordance** [1] - 18:8
**account** [7] - 3:23, 4:16, 11:9, 19:24, 20:2, 21:11, 41:1
**acknowledges** [1] - 17:25
**Act** [1] - 13:17
**act** [3] - 14:6, 14:7, 35:10
**action** [6] - 7:10, 21:23, 33:2, 33:10, 39:22, 39:25
**Action** [1] - 1:16
**actions** [1] - 10:11
**actual** [2] - 7:13, 35:18
**addition** [1] - 29:1
**address** [3] - 3:13, 3:20, 27:20
**addressed** [1] - 21:1
**addressing** [2] - 5:25, 14:2
**adjudicated** [2] - 12:24, 18:23
**adults** [2] - 12:19, 12:20
**advantage** [2] - 35:7, 35:8
**advocates** [1] - 29:8
**affected** [1] - 33:15
**affidavit** [3] - 16:5, 16:6, 38:19
**afternoon** [1] - 3:12
**age** [3] - 8:20, 33:7, 38:10
**ago** [1] - 25:25
**agree** [5] - 20:24, 23:10, 31:18, 36:23, 39:25
**agreed** [2] - 19:11, 32:23
**agreement** [37] - 5:13, 9:9, 10:10, 10:16, 10:17, 10:20, 10:21, 10:24, 13:20, 17:4, 17:6, 17:10, 19:21, 20:18, 20:23, 20:24, 21:3, 21:4, 21:8, 21:10, 21:25, 22:2, 22:5, 22:12, 22:24, 23:7, 23:11, 23:13, 23:16, 32:23, 33:11, 34:9, 35:18, 35:22, 37:21, 39:21
**Agreement** [33] - 1:17, 3:22, 4:8, 4:13, 5:2, 5:6, 5:11, 5:16, 6:9, 6:10, 6:19, 6:24, 7:8, 7:20, 9:21, 10:2, 10:6, 11:6, 13:12, 13:14, 13:18, 14:6, 17:3, 18:3, 18:9, 18:15, 19:3, 19:18, 20:8, 22:3, 31:11, 39:9
**agreements** [1] - 23:9
**aKtranscripts.com** [1] - 1:25
**al** [2] - 1:8, 1:12
**allegations** [1] - 12:15
**allow** [5] - 15:13, 33:13, 35:2, 37:19, 37:22
**allowed** [2] - 30:23, 32:16
**almost** [2] - 14:25, 26:5
**alone** [1] - 18:3
**ambiguity** [1] - 20:22
**ambiguous** [1] - 23:14
**American** [1] - 30:3
**amount** [2] - 26:16, 37:14
**analysis** [1] - 14:19
**anathema** [1] - 41:20
**Angeles** [4] - 1:17, 1:24, 2:6, 42:7
**Anne** [1] - 44:11
**ANNE** [1] - 1:22
**anne.kielwasser@gmail.com** [1] - 1:25
**answer** [1] - 13:15
**anticipate** [1] - 31:19
**apologize** [1] - 8:13
**appear** [2] - 8:24, 10:1
**appearances** [1] - 3:7
**applies** [3] - 4:13, 19:3, 32:13
**apply** [2] - 13:11, 22:13
**applying** [1] - 26:5
**appreciate** [2] - 3:18, 42:16
**appropriate** [1] - 11:3
**APRIL** [1] - 1:18, 3:1
**April** [1] - 25:11
**areas** [1] - 30:2
**argument** [4] - 18:13, 21:10, 31:5, 31:10
**arguments** [2] - 24:7, 27:21
**arrested** [2] - 8:20, 32:18
**aspects** [1] - 3:21
**assert** [1] - 19:16
**asserted** [1] - 28:2
**Association** [1] - 30:3
**assume** [1] - 33:18
**assumed** [1] - 7:17
**asylum** [3] - 26:6, 30:22
**attempt** [1] - 16:9
**August** [1] - 25:13
**authority** [6] - 19:5, 19:17, 23:18, 33:4, 37:25, 41:12
**available** [5] - 8:14, 13:23, 13:24, 34:14
**Avenue** [1] - 2:12
**average** [2] - 25:24, 26:12
**averages** [1] - 29:18
**avoid** [1] - 16:9

**B**

**bail** [1] - 30:8
**basis** [3] - 15:11, 15:13, 18:6
**becomes** [2] - 29:10, 33:3
**beginning** [1] - 16:17
**BEHALF** [2] - 2:3, 2:10
**behalf** [3] - 7:10, 28:16, 39:23
**believes** [1] - 18:17
**Berks** [9] - 5:20, 26:3, 28:4, 28:23, 29:5, 29:8, 38:20, 38:25
**best** [7] - 19:6, 22:8, 22:10, 24:14, 24:19, 35:11, 40:8
**between** [4] - 14:1, 35:22, 38:7, 41:7
**betwixt** [1] - 41:7
**blanket** [2] - 6:1, 6:5, 15:12
**boarder** [1] - 12:21
**Boasberg** [1] - 6:6
**bond** [4] - 12:24, 27:4, 27:5, 30:11
**bonded** [1] - 29:14
**bono** [2] - 30:4, 30:9
**border** [1] - 16:9
**Boulevard** [1] - 2:6
**breach** [2] - 11:3, 33:13
**breached** [2] - 32:24, 34:9
**break** [1] - 35:24
**briefing** [1] - 11:2
**Brigit** [1] - 38:19
**bring** [1] - 16:9
**broad** [2] - 12:3, 12:9
**brought** [1] - 34:12
**build** [1] - 26:11

built [1] - 18:2
Bunikyte [6] - 9:16, 12:8, 17:17, 19:10, 22:14, 28:17
business [1] - 14:11

## C

CA [1] - 2:6
calculus [1] - 31:8
CALIFORNIA [1] - 1:2
California [2] - 1:17, 1:24
Cambria [1] - 38:19
cannot [2] - 21:5, 34:21
capitulation [1] - 40:19
Carlos [3] - 2:4, 3:8, 27:24
case [15] - 6:8, 7:9, 9:16, 12:8, 17:17, 18:6, 22:9, 26:11, 26:14, 28:23, 31:14, 33:13, 39:22, 41:11
case-by-case [1] - 18:6
cases [5] - 12:20, 26:10, 26:25, 27:5, 41:3
categorically [1] - 17:7
category [2] - 11:14, 18:22
CBP [1] - 15:20
Center [1] - 2:5
centers [9] - 5:19, 17:19, 17:24, 18:2, 18:20, 25:21, 28:12, 35:25, 36:25
CENTRAL [1] - 1:2
cert [1] - 25:1
certain [1] - 20:24
certainly [2] - 14:4, 32:9
certification [5] - 7:13, 21:13, 31:25, 32:2, 39:19
certified [8] - 7:9, 8:19, 9:1, 21:24, 22:9, 33:2, 33:12, 39:22
certify [1] - 44:2
certifying [1] - 42:2
cetera [1] - 26:9
chain [1] - 38:6
challenge [1] - 28:22
chance [1] - 32:17
chances [1] - 30:7

change [1] - 14:3
changed [1] - 39:10
changes [1] - 14:7
charge [1] - 16:19
charged [1] - 44:5
child [32] - 4:6, 4:7, 9:25, 10:15, 11:8, 11:9, 12:11, 12:12, 12:14, 12:16, 13:19, 13:24, 14:13, 14:23, 14:24, 15:15, 19:1, 19:6, 19:8, 19:17, 22:7, 23:1, 23:4, 23:6, 27:14, 27:15, 38:7, 41:5, 41:14
child's [1] - 19:6
children [26] - 5:22, 5:23, 13:4, 14:8, 14:10, 15:5, 15:14, 16:2, 16:8, 18:13, 19:12, 23:24, 24:2, 27:6, 28:8, 29:16, 29:20, 30:8, 30:13, 31:3, 31:19, 36:9, 37:14, 38:4, 38:8, 41:19
choice [2] - 11:5, 11:6
choices [2] - 16:19, 19:5
chooses [1] - 10:12
circles [1] - 36:17
circuit [1] - 44:5
circumstance [2] - 5:13, 27:9
cite [1] - 7:4
cites [1] - 9:17
City [1] - 36:15
claim [2] - 6:6, 19:13
claims [1] - 26:6
clarifies [1] - 20:24
Class [1] - 1:16
class [31] - 7:10, 7:12, 7:18, 8:18, 9:1, 21:12, 21:23, 21:24, 22:9, 22:12, 29:11, 31:17, 31:25, 32:2, 32:10, 33:2, 33:3, 33:7, 33:12, 33:15, 33:19, 33:23, 38:2, 38:3, 39:2, 39:18, 39:22, 39:25, 42:3
clause [1] - 7:20
clear [3] - 12:22, 23:9, 38:9
clearly [3] - 31:17, 32:6, 38:20
CLERK [2] - 3:5, 43:4
cold [1] - 25:11
collapse [1] - 35:25
coming [6] - 10:2,

11:9, 22:6, 24:21, 35:17, 36:16
community [3] - 6:3, 11:24, 18:7
complaint [1] - 16:16
complaints [1] - 26:3
complete [3] - 10:11, 31:1, 40:19
completely [2] - 40:21, 41:20
compliance [1] - 15:25
comply [1] - 10:20
concept [1] - 9:13
concern [2] - 17:2, 40:7
concerned [2] - 27:16, 40:6
concerns [3] - 24:9, 24:12, 40:25
conclusion [1] - 34:6
conclusory [1] - 16:11
conditions [3] - 15:3, 32:16, 40:18
conduct [1] - 11:19
confer [3] - 34:18, 35:3, 42:13
conference [1] - 44:7
confers [1] - 38:2
conflict [2] - 38:7, 38:22
conformance [1] - 44:6
confronting [1] - 28:6
Congress [4] - 14:7, 14:15, 16:19
congressionally [3] - 19:4, 23:17, 41:12
consequences [1] - 24:5
consider [3] - 34:1, 38:5, 40:22
consideration [1] - 20:8
considered [3] - 26:16, 27:12, 27:13
consistent [4] - 19:3, 19:4, 41:10, 41:12
consistently [1] - 19:2
consonant [1] - 20:6
Constitutional [1] - 2:5
contemplate [3] - 10:2, 10:6, 10:17
contemplated [3] - 11:8, 31:11, 31:22
contemplates [1] - 37:5
contemplating [1] - 22:21

contemplation [1] - 13:21
contempt [3] - 34:13, 34:14
content [1] - 19:16
contentions [1] - 30:5
context [2] - 11:22, 32:11
continuances [1] - 26:7
continue [1] - 25:12
continues [1] - 33:8
continuity [1] - 14:5
contract [3] - 21:2, 21:15, 21:16
contrast [1] - 29:2, 29:3
control [1] - 10:11
convey [1] - 40:7
copy [3] - 42:2, 42:21, 42:24
corners [1] - 6:10
correct [3] - 18:11, 22:17, 44:2
counsel [3] - 3:12, 4:22, 5:5
Counsel [1] - 3:7
countries [1] - 30:17
couple [3] - 7:4, 25:25, 38:17
course [1] - 23:12
court [6] - 6:7, 7:9, 9:17, 10:11, 10:13, 39:22
COURT [68] - 1:1, 3:5, 3:12, 4:10, 4:24, 5:3, 5:17, 5:24, 7:1, 7:15, 7:23, 8:1, 8:4, 8:10, 9:8, 9:24, 10:19, 11:13, 11:21, 13:5, 13:11, 14:1, 15:17, 15:23, 16:3, 16:11, 16:23, 17:18, 18:1, 19:15, 19:23, 20:6, 20:17, 20:20, 20:22, 21:22, 22:11, 23:8, 24:17, 25:6, 25:20, 26:19, 26:21, 27:18, 27:20, 28:9, 28:11, 29:22, 31:10, 31:24, 32:20, 33:9, 33:17, 33:25, 35:1, 35:19, 36:23, 37:21, 38:14, 38:16, 39:4, 42:1, 42:5, 42:11, 42:17, 42:20, 42:24, 43:4
Court [31] - 1:23, 3:16, 3:20, 13:2, 15:11, 18:17, 22:14, 22:17, 23:13, 24:6, 29:19,

32:3, 32:8, 33:3, 33:24, 34:1, 34:14, 34:15, 34:17, 34:19, 34:22, 34:23, 35:14, 36:5, 36:6, 36:21, 39:14, 42:13, 43:5, 44:11
Court's [9] - 3:14, 3:25, 8:9, 14:9, 35:9, 35:20, 36:23, 42:2, 42:23
cover [1] - 32:7
coverage [1] - 32:10
covering [1] - 31:11
create [2] - 23:23, 24:10
creates [1] - 25:5
creating [1] - 12:18
credible [4] - 30:13, 30:15, 30:16, 30:21
crholguin@ centerforhumanrights .org [1] - 2:8
critical [5] - 8:18, 10:4, 12:9, 14:8, 39:19
crossed [1] - 12:21
CRR [2] - 1:22, 44:11
crystalized [1] - 20:25
CSR [2] - 1:22, 44:11
current [1] - 25:22
custodian [1] - 11:15
custody [8] - 8:23, 8:24, 12:11, 13:20, 13:25, 15:20, 23:2, 26:17
CV [1] - 3:5
cycles [1] - 25:9

## D

danger [3] - 6:3, 11:24, 18:7
dangerous [6] - 15:14, 16:21, 18:24, 23:20, 24:2, 27:13
dangers [1] - 28:7
Date [1] - 44:11
days [8] - 25:24, 25:25, 26:3, 26:4, 26:12, 39:9, 42:13, 42:14
DC [5] - 4:25, 5:1, 6:6, 8:3, 42:8
de [2] - 19:8, 39:5
deadline [1] - 40:10
deal [1] - 17:5
dealing [1] - 14:2
debate [3] - 6:11,

6:12, 41:17
**debates** [2] - 6:11, 23:14
**debating** [2] - 6:20, 41:16
**decide** [1] - 32:9
**decided** [2] - 19:1, 28:18
**decision** [4] - 19:10, 24:5, 27:14
**decisions** [2] - 38:9, 38:11
**declaration** [1] - 34:9
**declarations** [1] - 29:7
**declared** [1] - 18:20
**Defendant's** [1] - 1:17
**DEFENDANTS** [1] - 2:10
**defendants** [4] - 1:13, 3:11, 3:13, 37:11
**definition** [4] - 13:7, 21:13, 22:11, 31:17
**degree** [1] - 29:10
**delays** [1] - 35:16
**denied** [1] - 8:23
**Department** [5] - 2:12, 3:17, 24:13, 28:24, 40:7
**deposit** [1] - 44:6
**describe** [2] - 25:17
**detain** [8] - 12:4, 12:22, 18:18, 28:19, 29:23, 41:23, 41:24, 41:25
**detained** [7] - 8:21, 10:3, 11:23, 19:7, 23:19, 29:17, 31:23
**detaining** [2] - 29:13
**detention** [18] - 5:9, 6:2, 9:19, 16:10, 18:21, 18:22, 21:20, 26:13, 26:15, 26:16, 29:6, 29:9, 30:25, 31:6, 31:20, 37:15, 39:17
**detentions** [2] - 5:12, 9:12
**determination** [3] - 16:25, 37:2, 41:10
**determine** [6] - 4:5, 6:1, 11:20, 14:12, 18:5, 35:11
**determined** [2] - 11:23, 35:14
**deterring** [1] - 31:6
**develop** [1] - 16:15
**DHS** [2] - 14:11, 23:18
**dictionary** [1] - 28:18
**different** [1] - 41:11
**difficult** [8] - 14:9,

23:15, 24:11, 24:15, 25:5, 28:6, 30:6
**Dilley** [5] - 14:24, 15:4, 26:1, 29:3, 36:15
**direction** [1] - 37:18
**disagree** [1] - 24:17
**discord** [1] - 15:1
**discounted** [2] - 40:21
**discounting** [1] - 16:18
**discredited** [1] - 6:6
**discretion** [3] - 12:4, 12:9, 18:5
**discretionary** [3] - 15:11, 15:13, 23:17
**discuss** [2] - 4:1, 15:12
**discussed** [1] - 12:8
**discussions** [1] - 42:23
**dispute** [5] - 4:11, 4:13, 9:18, 25:15, 38:25
**disputed** [1] - 15:4
**DISTRICT** [2] - 1:1, 1:2
**district** [3] - 6:6, 7:9, 39:22
**docket** [3] - 7:16, 8:4, 8:6
**document** [2] - 2:13, 42:8
**documents** [1] - 8:10
**DOLLY** [1] - 1:4
**domestic** [1] - 30:19
**done** [4] - 13:15, 14:15, 38:1, 41:9
**down** [2] - 24:24, 25:14
**draft** [5] - 12:13, 14:22, 20:18, 24:5, 27:8
**dramatically** [1] - 25:12
**drop** [1] - 25:14
**during** [8] - 5:25, 15:25, 25:9, 25:10, 28:11, 31:16, 42:22

**E**

**e-mail** [3] - 2:8, 2:8, 2:14
**EDWIN** [1] - 1:12
**Edwin** [1] - 3:6
**effect** [1] - 33:5
**effort** [1] - 37:13
**efforts** [1] - 37:7
**either** [7] - 11:23,

12:20, 13:8, 18:20, 37:8, 37:22, 39:8
**eligible** [1] - 30:14
**emergent** [1] - 44:20
**encourage** [1] - 41:18
**encouraging** [2] - 23:25, 41:22
**end** [1] - 16:17
**endanger** [1] - 23:24
**ended** [1] - 36:19
**Enforce** [1] - 1:16
**enforce** [1] - 33:10
**enforceability** [1] - 14:5
**enforcement** [1] - 34:8
**enforcing** [1] - 29:12
**engaging** [2] - 5:12, 9:12, 39:5
**entered** [3] - 17:3, 23:11, 32:3
**entire** [2] - 11:6, 30:25
**entirely** [1] - 34:7
**entirety** [1] - 22:4
**entitled** [1] - 38:3
**entity** [1] - 33:23
**environment** [2] - 15:6, 24:11
**equitable** [1] - 29:12
**equivalent** [1] - 16:16
**especially** [2] - 14:24, 23:20
**et** [4] - 1:8, 1:12, 26:9
**evidence** [9] - 4:23, 7:21, 15:1, 15:23, 22:8, 22:10, 26:9, 29:19, 38:21
**exactly** [1] - 20:1
**excuse** [1] - 10:22
**exercise** [1] - 18:5
**Exhibit** [1] - 38:18
**exist** [1] - 9:13
**expand** [1] - 32:9
**expands** [1] - 31:17
**expedited** [1] - 36:21
**experience** [2] - 40:12, 40:14
**expertise** [1] - 14:14
**exponentially** [1] - 28:6
**expressed** [1] - 34:23
**extent** [1] - 24:23
**extreme** [1] - 30:18
**extremely** [2] - 30:6, 39:15

**F**

**Fabian** [2] - 2:11, 3:10
**facilities** [20] - 4:18,

4:21, 5:14, 6:16, 12:17, 15:11, 17:8, 17:14, 17:15, 27:5, 28:21, 30:2, 30:5, 31:3, 37:7, 37:9, 37:12, 37:16, 39:3, 39:8
**Facility** [1] - 5:21
**facility** [19] - 4:8, 4:19, 14:13, 14:25, 15:4, 15:20, 17:11, 18:15, 25:24, 27:16, 28:17, 28:20, 28:25, 29:2, 37:23, 38:20, 39:1, 39:17
**fact** [4] - 4:4, 7:15, 10:6, 15:1, 16:5, 16:7, 21:14, 32:21
**facto** [1] - 19:8
**factors** [4] - 3:24, 12:5, 12:6, 17:13
**facts** [1] - 4:15
**fails** [1] - 8:24
**faith** [1] - 37:13
**fall** [2] - 36:3, 36:10
**familiar** [1] - 26:19
**families** [8] - 5:21, 5:23, 6:16, 15:10, 23:23, 28:19, 31:9, 31:23
**family** [29] - 4:18, 5:9, 5:12, 5:14, 5:18, 9:12, 9:18, 12:16, 12:17, 16:10, 17:8, 17:10, 17:13, 17:14, 17:19, 17:23, 18:2, 18:14, 18:19, 21:20, 24:1, 24:20, 29:13, 36:24, 39:1, 39:2, 39:8, 39:16
**FLORES** [1] - 1:8
**fool** [1] - 15:14
**foregoing** [1] - 44:2
**foreseeably** [1] - 9:14
**form** [2] - 35:18, 36:21
**forth** [1] - 37:13
**forward** [2] - 33:13, 33:20
**four** [2] - 4:15, 6:9
**framed** [1] - 39:20
**framework** [3] - 12:1, 12:3
**Franco** [1] - 40:14
**free** [1] - 21:1
**Fresco** [8] - 2:11, 3:10, 3:17, 28:2, 28:7, 32:3, 35:23, 38:16
**FRESCO** [51] - 3:10, 3:15, 4:12, 5:1, 5:4, 5:20, 6:4, 7:3, 7:19, 7:25, 8:2, 8:6, 8:13, 9:11, 9:25, 11:4, 11:16, 12:1, 13:7, 13:13, 14:4, 15:19, 16:1, 16:4, 16:13, 17:6, 17:22, 18:10,

24:19, 25:3, 41:7, 41:22
**figures** [1] - 31:7
**file** [4] - 8:9, 10:11, 21:13, 34:7
**filed** [1] - 6:17
**files** [1] - 8:2
**filing** [1] - 34:2
**first** [17] - 3:18, 4:2, 4:17, 4:21, 6:4, 6:5, 6:12, 7:7, 9:20, 11:14, 16:14, 17:10, 21:7, 21:9, 39:1, 39:21
**flaw** [1] - 14:21
**fleeing** [1] - 30:18
**flexibility** [1] - 27:11
**flight** [8] - 6:3, 11:23, 12:22, 12:25, 18:6, 18:23, 27:12, 29:25
**flip** [1] - 20:10
**Flores** [36] - 3:6, 3:22, 4:8, 4:13, 4:22, 5:2, 5:6, 5:11, 5:16, 6:9, 6:10, 6:19, 6:24, 9:21, 11:6, 12:10, 13:11, 13:14, 13:18, 14:5, 14:6, 15:25, 17:2, 17:25, 18:3, 18:9, 18:15, 19:3, 19:17, 20:7, 22:3, 28:14, 31:11, 39:2, 39:9, 41:11
**FLORES** [1] - 1:8
**fool** [1] - 15:14
**foregoing** [1] - 44:2
**foreseeably** [1] - 9:14
**form** [2] - 35:18, 36:21
**forth** [1] - 37:13
**forward** [2] - 33:13, 33:20
**four** [2] - 4:15, 6:9
**framed** [1] - 39:20
**framework** [3] - 12:1, 12:3
**Franco** [1] - 40:14
**free** [1] - 21:1
**Fresco** [8] - 2:11, 3:10, 3:17, 28:2, 28:7, 32:3, 35:23, 38:16
**FRESCO** [51] - 3:10, 3:15, 4:12, 5:1, 5:4, 5:20, 6:4, 7:3, 7:19, 7:25, 8:2, 8:6, 8:13, 9:11, 9:25, 11:4, 11:16, 12:1, 13:7, 13:13, 14:4, 15:19, 16:1, 16:4, 16:13, 17:6, 17:22, 18:10,

19:19, 19:25, 20:10, 20:19, 20:21, 21:6, 22:4, 22:16, 23:12, 24:18, 25:8, 25:22, 26:20, 26:22, 26:24, 27:19, 38:17, 39:7, 42:4, 42:6, 42:15, 42:18, 43:3
**Fresco's** [1] - 35:1
**FRIDAY** [2] - 1:18, 3:1
**fundamental** [2] - 14:21, 23:15

## G

**GEE** [1] - 1:4
**generally** [1] - 20:6
**generated** [1] - 32:16
**given** [1] - 35:12
**government** [9] - 5:6, 8:16, 19:11, 28:16, 28:17, 31:5, 37:7, 37:17, 40:20
**granted** [2] - 30:11, 30:22
**granting** [1] - 36:5
**great** [1] - 15:2
**greatly** [1] - 36:21
**group** [1] - 36:11
**guardian** [3] - 8:24, 13:23, 13:24

## H

**habeas** [1] - 41:3
**handle** [1] - 14:8
**happy** [2] - 33:4
**hard** [1] - 3:19
**harder** [1] - 40:18
**harm** [2] - 29:11, 34:4
**Harman** [1] - 2:5
**harmed** [2] - 12:16, 12:17
**Harmen** [1] - 3:9
**harmful** [2] - 19:12, 19:13
**heard** [1] - 40:14
**hearing** [2] - 21:14, 27:5
**hearings** [1] - 27:4
**heartening** [1] - 15:2
**held** [1] - 6:2
**hell** [1] - 35:24
**helpful** [1] - 7:5
**hereby** [1] - 44:2
**HHS** [6] - 13:19, 13:20, 13:22, 13:24, 14:15, 14:17

**high** [2] - 24:25, 30:20
**historically** [1] - 25:11
**hold** [1] - 42:11
**holding** [1] - 5:21
**holds** [1] - 28:5
**Holguin** [3] - 2:4, 3:8, 27:24
**HOLGUIN** [19] - 3:8, 27:24, 28:10, 28:15, 30:1, 31:13, 32:2, 33:1, 33:14, 33:22, 34:10, 35:6, 36:2, 37:4, 37:24, 38:15, 42:19, 42:21, 43:2
**Holguin's** [1] - 39:4
**home** [3] - 11:19, 11:20, 15:3
**Homeland** [2] - 24:13, 40:7
**Honduras** [1] - 36:16
**Honor** [107] - 3:11, 3:15, 3:16, 3:18, 3:22, 4:2, 4:9, 4:12, 4:14, 4:17, 4:19, 5:2, 5:16, 6:4, 6:8, 6:10, 6:18, 6:21, 6:24, 7:4, 7:12, 7:19, 7:22, 8:13, 8:17, 9:7, 9:19, 10:4, 10:5, 10:14, 10:18, 11:4, 11:16, 12:1, 12:14, 13:13, 13:23, 14:4, 14:15, 14:22, 14:25, 15:5, 15:9, 15:16, 15:19, 15:22, 16:1, 16:4, 16:13, 16:21, 17:14, 17:16, 17:22, 18:20, 18:23, 19:20, 19:25, 20:3, 20:16, 20:19, 20:21, 21:6, 21:17, 22:4, 22:8, 22:16, 22:20, 23:7, 23:12, 23:19, 23:25, 24:2, 24:3, 24:10, 24:19, 24:23, 25:2, 25:8, 26:3, 26:7, 27:2, 27:16, 27:19, 27:24, 31:13, 33:14, 33:23, 34:10, 36:2, 37:4, 37:24, 38:15, 38:18, 38:23, 38:24, 39:7, 39:18, 40:4, 40:6, 40:9, 40:22, 41:3, 41:25, 42:4, 42:15, 42:19, 43:2
**Honor's** [2] - 9:17, 40:7
**HONORABLE** [1] - 1:4
**hopeful** [1] - 34:24
**hopefully** [1] - 42:5

**hour** [1] - 8:9
**house** [5] - 15:3, 15:15, 27:14, 27:15
**housed** [4] - 10:9, 15:10, 37:2, 37:6
**housing** [4] - 11:10, 18:13, 27:9, 37:1
**Huddle** [3] - 28:17, 29:2, 41:17
**Human** [1] - 2:5
**hundreds** [1] - 29:16

## I

**ICE** [2] - 12:4, 30:10
**idea** [3] - 11:8, 16:16, 41:18
**immediately** [1] - 21:13
**Immigration** [1] - 30:3
**immigration** [1] - 8:21
**impending** [1] - 7:6
**implement** [1] - 14:10
**implementation** [1] - 10:23
**implicitly** [1] - 17:24
**important** [6] - 5:4, 6:21, 6:23, 12:7, 27:3, 39:17
**importantly** [1] - 24:1
**imposed** [1] - 19:18
**increased** [1] - 16:8
**incredibly** [1] - 19:9
**indefinitely** [2] - 30:24, 36:18
**individuals** [2] - 15:21, 37:6
**inferno** [1] - 36:14
**injecting** [1] - 13:3
**injunction** [2] - 34:2, 34:12
**injury** [1] - 29:15
**injustice** [1] - 21:18
**INS** [2] - 8:22, 8:23
**insecurity** [1] - 30:19
**intent** [1] - 23:10
**interest** [1] - 12:12
**interested** [1] - 24:6
**interests** [6] - 19:6, 20:9, 24:22, 35:12, 40:20, 40:21
**interpretation** [1] - 21:16
**interviews** [3] - 30:14, 30:16, 30:21
**intolerable** [1] - 32:16
**involuntarily** [1] - 19:18
**involved** [2] - 22:6,

**31:14
**irreparable** [1] - 34:4
**issuance** [1] - 35:2
**issue** [14] - 4:11, 4:13, 5:9, 5:25, 6:20, 6:21, 16:1, 16:2, 24:7, 24:10, 34:6, 35:24, 40:6
**issues** [1] - 20:25
**issuing** [1] - 36:21
**Item** [1] - 3:5
**items** [2] - 5:10, 28:1
**itself** [5] - 6:24, 12:10, 33:3, 33:23, 34:11

## J

**January** [3] - 4:24, 5:1, 39:3
**Jenny** [1] - 3:6
**JENNY** [1] - 1:8
**Johnson** [1] - 16:4
**joint** [1] - 42:13
**JUDGE** [1] - 1:4
**judge** [1] - 9:16
**Judge** [2] - 6:6, 40:13
**judicial** [2] - 7:23, 44:7
**justice** [1] - 36:11
**Justice** [2] - 2:12, 3:17
**justification** [1] - 31:5

## K

**Karnes** [3] - 25:23, 29:3, 36:15
**keep** [6] - 19:7, 19:17, 23:1, 31:3, 37:16, 41:14
**keeping** [1] - 19:6
**kept** [1] - 37:12
**key** [1] - 4:15
**kid** [1] - 10:9
**Kielwasser** [2] - 44:10, 44:11
**KIELWASSER** [1] - 1:22
**Kim** [1] - 26:15
**kind** [3] - 7:21, 36:9, 37:19
**knock** [1] - 35:21
**known** [2] - 15:9, 25:18

## L

**language** [1] - 10:8
**languishing** [1] - 29:21

**large** [2] - 6:20, 37:5
**larger** [1] - 5:8
**last** [3] - 20:25, 21:17, 24:15
**Law** [1] - 2:5
**law** [2] - 12:24, 38:8
**lawsuit** [6] - 4:21, 5:7, 6:18, 17:12, 32:17, 39:13
**lawsuits** [1] - 17:11
**lawyer** [2] - 30:7, 30:9
**lawyers** [2] - 26:8, 28:15
**Lawyers** [1] - 30:3
**least** [3] - 24:7, 25:1, 31:8
**leave** [7] - 18:21, 35:13, 41:4, 41:5, 41:6, 41:7
**leaves** [1] - 40:24
**led** [1] - 31:15
**Lee** [1] - 3:16
**legal** [2] - 8:23, 33:4
**legality** [1] - 17:15
**legitimate** [3] - 24:4, 32:9, 40:25
**length** [2] - 25:24, 26:15
**Leon** [2] - 2:11, 3:10
**leon.fresco@usdoj. gov** [1] - 2:14
**less** [2] - 5:8, 44:5
**letter** [1] - 28:24
**license** [1] - 29:2
**licensed** [2] - 37:8, 37:16
**likelihood** [1] - 34:3
**likely** [1] - 35:17
**limit** [4] - 9:9, 12:6, 22:1, 35:9
**limited** [2] - 31:25, 32:4
**literally** [2] - 8:8, 42:8
**litigants** [1] - 32:9
**litigation** [3] - 33:6, 40:15, 41:17
**located** [1] - 30:2
**lodge** [1] - 42:2
**look** [11] - 3:25, 4:3, 5:7, 6:23, 10:13, 14:24, 21:10, 23:20, 26:14, 31:24, 39:14
**looked** [1] - 7:3
**looking** [3] - 7:16, 8:11, 14:24
**loose** [1] - 35:24
**Los** [4] - 1:17, 1:24, 2:6, 42:6
**lost** [1] - 40:22

**M**

**mail** [3] - 2:8, 2:8, 2:14
**main** [3] - 12:5, 29:4, 31:5
**maintain** [1] - 12:11
**maintained** [1] - 19:6
**maintains** [1] - 13:24
**majority** [1] - 33:7
**manage** [1] - 30:9
**mandated** [3] - 19:5, 23:17, 41:12
**mandatory** [2] - 18:21, 18:22
**manifest** [1] - 21:18
**March** [1] - 25:11
**marshal** [1] - 26:8
**massive** [1] - 39:16
**material** [4] - 4:11, 4:12, 5:8, 6:18
**math** [1] - 9:22
**matter** [4] - 34:10, 35:13, 42:23, 44:4
**matters** [1] - 34:24
**maturity** [1] - 38:10
**Matz** [1] - 40:13
**mean** [10] - 6:10, 6:12, 6:13, 8:7, 8:8, 18:3, 29:23, 40:3, 42:6, 42:8
**meaning** [2] - 12:20, 18:21
**means** [3] - 7:20, 10:19, 12:21
**meant** [5] - 6:15, 40:1, 40:2, 40:3
**medieval** [1] - 36:17
**Meese** [1] - 3:6
**MEESE** [1] - 1:12
**meet** [4] - 34:18, 35:3, 36:4, 42:12
**member** [3] - 33:12, 38:2, 38:3
**members** [2] - 33:15, 33:19
**mentioned** [2] - 5:10, 36:17
**merger** [1] - 7:20
**merits** [1] - 34:4
**middle** [1] - 24:25
**mind** [1] - 9:15
**minimis** [1] - 39:5
**minimize** [1] - 37:14
**minor** [18] - 6:20, 10:10, 10:12, 13:10, 19:24, 19:25, 20:3, 20:4, 20:5, 20:9, 20:11, 20:12, 20:13, 20:14, 21:11, 22:18,

22:20, 37:22
**minor's** [1] - 11:7
**minors** [39] - 4:14, 4:19, 6:13, 6:15, 7:10, 7:13, 9:5, 9:6, 9:10, 13:6, 13:7, 13:12, 14:16, 14:18, 14:19, 17:9, 18:6, 22:2, 22:5, 22:14, 31:12, 31:18, 32:1, 32:7, 32:13, 37:8, 39:23, 39:24, 40:2, 41:1, 41:4, 41:6, 41:19, 41:20
**misunderstanding** [1] - 18:11
**Modify** [1] - 1:17
**modify** [4] - 17:4, 21:3, 21:4, 21:8
**modifying** [1] - 17:6
**moms** [1] - 27:6
**money** [1] - 31:2
**months** [2] - 26:15, 29:17, 29:19
**Moore** [1] - 26:15
**most** [2] - 15:8, 30:17
**mother** [4] - 19:16, 41:23, 41:24, 41:25
**mothers** [5] - 5:21, 15:1, 29:16, 30:8, 31:19, 32:18, 38:4
**Motion** [1] - 1:16
**motion** [5] - 1:17, 34:2, 34:7, 34:12, 34:14
**moving** [2] - 15:5, 37:17
**MR** [70] - 3:8, 3:10, 3:15, 4:12, 5:1, 5:4, 5:20, 6:4, 7:3, 7:19, 7:25, 8:2, 8:6, 8:13, 9:11, 9:25, 11:4, 11:16, 12:1, 13:7, 13:13, 14:4, 15:19, 16:1, 16:4, 16:13, 17:6, 17:22, 18:10, 19:19, 19:25, 20:10, 20:19, 20:21, 21:6, 22:4, 22:16, 23:12, 24:18, 25:8, 25:22, 26:20, 26:22, 26:24, 27:19, 27:24, 28:10, 28:15, 30:1, 31:13, 32:2, 33:1, 33:14, 33:22, 34:10, 35:6, 36:2, 37:4, 37:24, 38:15, 38:17, 39:7, 42:4, 42:6, 42:15, 42:18, 42:19, 42:21, 43:2, 43:3

**must** [2] - 11:25, 37:7
**mutually** [2] - 20:23, 35:4

**N**

**name** [1] - 33:17
**named** [1] - 33:20
**names** [1] - 14:3
**nationwide** [1] - 32:7
**near** [1] - 27:1
**necessarily** [1] - 22:23
**necessary** [1] - 15:13
**need** [8] - 4:1, 11:19, 22:23, 23:9, 27:11, 33:9, 35:4, 41:21
**needs** [1] - 13:14
**neglected** [1] - 13:9
**negotiated** [1] - 31:22
**negotiations** [2] - 31:15, 31:16
**never** [1] - 31:11
**new** [3] - 10:8, 14:25, 26:1
**next** [1] - 42:5
**nil** [1] - 30:9
**nobody** [4] - 9:12, 9:17, 9:18, 24:15
**noncompliant** [1] - 37:6
**none** [3] - 4:8, 19:21, 23:7
**nonetheless** [1] - 34:16
**nonproductive** [1] - 40:9
**normal** [1] - 23:25
**North** [1] - 1:23
**note** [1] - 19:9
**notes** [1] - 38:17
**nothing** [3] - 9:14, 17:13, 40:19
**notice** [1] - 7:23
**nowhere** [1] - 40:24
**number** [6] - 8:4, 8:6, 28:1, 28:5, 30:4, 37:5
**numbers** [5] - 24:23, 25:12, 25:13, 25:22
**numerically** [1] - 25:18
**numerous** [2] - 32:12, 33:15
**NW** [1] - 2:12

**O**

**objected** [1] - 6:17

**objection** [1] - 23:5
**observation** [1] - 36:24
**observed** [1] - 16:20
**obviously** [2] - 8:14, 26:9
**occasion** [1] - 20:7
**Occidental** [1] - 2:6
**occurred** [1] - 9:15
**oddly** [1] - 41:15
**OF** [3] - 1:2, 2:3, 2:10
**offered** [1] - 31:5
**office** [1] - 42:9
**official** [1] - 44:11
**Official** [1] - 1:23
**old** [1] - 13:19
**ON** [2] - 2:3, 2:10
**once** [3] - 11:3, 15:9, 30:22
**one** [27] - 4:2, 4:4, 4:24, 5:1, 5:10, 9:15, 9:20, 12:16, 12:17, 12:21, 13:13, 15:6, 18:19, 21:15, 26:2, 26:4, 26:14, 27:3, 29:13, 30:7, 33:18, 34:12, 38:6, 39:11, 39:12, 42:7, 42:14
**open** [1] - 35:13
**opened** [1] - 17:10
**operate** [1] - 39:16
**operated** [1] - 17:14
**operates** [1] - 34:11
**operating** [9] - 4:18, 4:20, 5:15, 6:15, 17:13, 26:4, 35:10, 38:25, 39:2
**operation** [5] - 5:19, 28:4, 28:13, 29:6, 39:7
**opinion** [1] - 41:11
**opinions** [1] - 34:24
**opportunity** [2] - 16:15, 25:2
**opposed** [2] - 17:9, 34:8
**opposite** [1] - 38:22
**order** [39] - 3:19, 3:21, 4:1, 4:3, 4:15, 7:13, 7:17, 7:24, 8:5, 8:11, 9:17, 10:14, 12:13, 14:9, 14:12, 14:22, 20:1, 24:8, 24:10, 25:4, 27:8, 27:17, 31:25, 32:2, 34:17, 35:2, 35:5, 35:8, 35:24, 36:21, 38:6, 39:19, 40:9, 40:11, 40:17, 42:2, 42:12
**ordered** [1] - 10:25

**ordering** [1] - 10:25
**orderly** [1] - 37:20
**orders** [1] - 27:7
**organizations** [1] - 30:4
**organized** [1] - 30:4
**origin** [1] - 30:17
**original** [2] - 33:1, 33:6
**outcome** [2] - 23:21, 23:22
**outdated** [1] - 13:19
**own** [2] - 36:1, 38:8

**P**

**P.M** [1] - 3:1
**Pacer** [1] - 8:14
**page** [2] - 7:7, 39:21
**paragraph** [6] - 9:6, 11:14, 12:10, 19:2, 19:4, 41:10
**Paragraph** [1] - 38:18
**parent** [43] - 4:4, 4:5, 4:6, 4:7, 8:23, 9:2, 9:3, 9:20, 9:22, 10:1, 10:8, 10:14, 10:15, 11:7, 11:8, 11:9, 11:15, 11:18, 13:8, 14:20, 14:23, 18:23, 19:7, 20:2, 20:5, 20:11, 20:14, 21:15, 22:6, 22:25, 23:1, 23:4, 23:5, 27:12, 27:14, 27:15, 37:22, 38:7, 40:2, 41:14
**parents** [4] - 4:18, 10:3, 10:7, 13:1, 18:20, 19:12, 21:12, 28:8, 38:4, 40:25, 41:4, 41:6, 41:18
**parole** [1] - 7:21
**paroled** [1] - 29:14
**part** [1] - 34:5
**particular** [1] - 35:8
**parties** [15] - 7:5, 7:17, 14:2, 14:3, 20:23, 22:1, 22:21, 31:18, 34:18, 35:3, 35:10, 35:17, 35:22, 36:3, 42:12
**parties'** [2] - 21:25, 39:19
**partly** [1] - 11:1
**pass** [1] - 30:13
**passed** [1] - 14:16
**passing** [2] - 30:15, 30:21
**past** [4] - 15:17, 15:25,

17:2, 18:14
**pending** [2] - 35:13, 37:2
**Pennsylvania** [3] - 2:12, 5:21, 28:24
**people** [23] - 6:2, 9:2, 10:2, 10:3, 11:22, 15:16, 23:25, 25:20, 26:7, 26:8, 27:4, 27:9, 28:5, 29:8, 29:23, 30:3, 30:5, 36:12, 37:12, 39:10, 40:1, 42:7
**people's** [1] - 26:10
**per** [1] - 17:19
**percent** [2] - 30:22, 40:23
**percentage** [1] - 30:20
**period** [4] - 6:1, 28:11, 29:9, 30:25
**periods** [2] - 29:6, 31:20
**permit** [1] - 42:24
**person** [3] - 16:18, 18:24, 19:14
**personally** [1] - 8:24
**persons** [1] - 8:19
**perspectively** [1] - 34:11
**Peter** [2] - 2:4, 3:8
**peter@peterschey.com** [1] - 2:8
**phenomenon** [2] - 25:17, 25:19
**physically** [1] - 12:16
**pick** [4] - 8:16, 9:3, 25:12, 40:3
**piles** [1] - 8:10
**place** [3] - 3:24, 9:22, 37:20
**places** [1] - 36:15
**plaintiff** [8] - 17:11, 20:1, 33:3, 33:10, 33:18, 33:20, 33:24, 41:21
**PLAINTIFFS** [1] - 2:3
**plaintiffs** [28] - 1:10, 3:9, 6:14, 10:7, 12:15, 18:12, 19:11, 23:10, 24:9, 25:3, 25:15, 27:20, 27:22, 27:25, 28:13, 28:15, 28:16, 32:15, 32:22, 33:1, 33:6, 34:1, 34:16, 36:20, 37:18, 40:16, 41:2
**plaintiffs'** [6] - 4:3, 5:5, 10:13, 21:16, 37:24, 38:18
**Plaintiffs'** [1] - 1:16

**play** [1] - 4:4
**point** [12] - 5:5, 10:4, 10:5, 11:5, 12:7, 16:22, 19:19, 31:8, 34:20, 36:3, 39:5, 40:20
**pointed** [2] - 32:8, 32:12
**points** [1] - 7:4
**policy** [3] - 6:1, 6:5, 15:12
**population** [1] - 29:1
**position** [1] - 37:25
**possible** [1] - 36:19
**post** [1] - 26:17
**potential** [1] - 15:6
**potentially** [3] - 13:2, 14:9, 18:24
**poverty** [1] - 30:19
**powerful** [1] - 19:10
**practice** [1] - 13:5
**precedent** [1] - 23:20
**preclude** [1] - 5:14
**preexisting** [1] - 32:22
**preferred** [1] - 11:14
**preliminary** [1] - 34:2
**prepared** [1] - 24:16
**prescribed** [1] - 25:7
**preserves** [1] - 14:10
**PRESIDING** [1] - 1:4
**presumed** [1] - 11:13
**presupposes** [1] - 17:7
**prevent** [1] - 27:9
**preventing** [1] - 27:17
**previously** [1] - 39:5
**primarily** [1] - 30:18
**pro** [2] - 30:4, 30:9
**problem** [4] - 15:12, 15:21, 29:4, 30:1
**problems** [3] - 15:24, 29:23, 29:25
**proceeding** [5] - 12:24, 13:4, 16:17, 16:18, 35:7
**proceedings** [3] - 5:23, 12:4, 44:3
**Proceedings** [1] - 1:16
**process** [4] - 12:18, 22:6, 28:5, 36:20
**productive** [1] - 35:17
**promulgate** [1] - 17:4
**pronounce** [1] - 22:15
**properly** [2] - 37:8, 37:16
**proposal** [1] - 35:2
**proposed** [3] - 4:3, 20:1, 34:17

**Protection** [1] - 13:16
**protects** [1] - 31:18
**proven** [1] - 31:1
**provide** [4] - 29:19, 33:8, 37:25, 42:13
**provided** [1] - 36:22
**providing** [1] - 37:19
**provisions** [2] - 22:13, 32:12
**public** [1] - 24:21
**publicize** [1] - 43:1
**purpose** [1] - 37:15
**pursuant** [1] - 8:21
**put** [4] - 7:22, 16:19, 36:13, 42:9
**putting** [1] - 17:21

**Q**

**qualify** [1] - 22:13
**questioned** [1] - 17:16
**questions** [7] - 3:20, 20:15, 22:22, 23:16, 23:18, 27:22, 32:21
**quickly** [2] - 36:19, 38:18
**quite** [2] - 7:2, 38:9
**quote/unquote** [1] - 38:19

**R**

**raft** [1] - 15:24
**raises** [1] - 12:7
**rare** [1] - 20:7
**rather** [1] - 19:7
**reach** [1] - 38:10
**reached** [1] - 33:7
**read** [8] - 5:14, 15:2, 16:5, 16:6, 23:17, 23:20, 32:4, 35:20
**really** [3] - 4:10, 38:5, 41:22
**reason** [7] - 6:22, 10:16, 11:1, 18:14, 23:8, 32:15, 34:5
**reasonable** [3] - 19:14, 34:20, 37:18
**reasons** [3] - 13:14, 18:18, 30:18
**Reauthorization** [1] - 13:16
**received** [1] - 8:11
**recently** [2] - 7:22, 8:17
**recess** [1] - 43:5
**Recess** [1] - 43:6
**reconsidering** [1] -

24:7
**record** [7] - 7:22, 15:23, 16:15, 16:24, 29:7, 36:6, 36:7
**recorded** [2] - 15:5, 44:3
**reduction** [1] - 44:6
**refusing** [1] - 6:1
**regard** [4] - 13:5, 16:25, 18:18, 26:18
**region** [3] - 8:22, 32:5
**regulations** [3] - 17:5, 31:21, 44:7
**reinstatement** [1] - 12:20
**reject** [1] - 17:7
**release** [7] - 8:23, 11:14, 12:19, 13:1, 14:12, 15:21, 37:8
**released** [12] - 4:7, 10:12, 11:25, 20:5, 20:11, 20:13, 20:14, 24:3, 27:6, 27:7, 30:8, 30:15
**releasing** [4] - 9:24, 9:25, 11:18
**relief** [7] - 11:2, 29:12, 32:25, 33:25, 34:8, 35:18, 36:5
**remain** [3] - 25:21, 30:23, 37:23
**remedies** [2] - 34:6, 34:13
**remedy** [4] - 10:25, 34:19, 34:20, 36:4
**removal** [2] - 5:23, 12:4
**report** [1] - 42:14
**Reporter** [1] - 1:23, 44:11
**Reporter's** [1] - 1:16
**represent** [2] - 29:8, 30:5
**representing** [1] - 16:10
**required** [1] - 35:10
**requirement** [2] - 18:5, 18:9
**requires** [1] - 20:8
**residences** [1] - 15:2
**Residential** [1] - 5:20
**residential** [22] - 4:18, 5:14, 5:18, 12:17, 17:8, 17:10, 17:13, 17:15, 17:19, 17:24, 18:2, 18:14, 18:19, 25:21, 28:12, 28:21, 35:25, 36:24, 39:1, 39:3, 39:8
**resolve** [4] - 23:18,

24:11, 24:19, 25:4
**respected** [1] - 24:20
**respectfully** [1] - 12:2
**result** [2] - 15:24, 33:13
**retain** [2] - 42:21, 42:24
**returned** [2] - 15:9, 30:17
**revise** [1] - 20:24
**rewrite** [1] - 10:16
**rewriting** [2] - 10:16, 10:20
**Rights** [1] - 2:5
**rights** [2] - 38:2, 38:3
**rise** [1] - 43:4
**risk** [9] - 6:3, 11:24, 12:23, 12:25, 16:8, 18:7, 18:23, 27:12, 29:25
**role** [2] - 4:4, 22:25
**Room** [1] - 1:23
**RPR** [2] - 1:22, 44:11
**ruled** [1] - 9:16
**runs** [1] - 31:2
**rural** [1] - 30:2

**S**

**safe** [3] - 12:15, 14:13, 15:6
**safer** [1] - 27:13
**safest** [1] - 41:13
**safety** [5] - 12:11, 14:10, 16:2, 24:22, 29:24
**salmon** [1] - 25:6
**Sarah** [2] - 2:11, 3:10
**satisfactory** [1] - 35:4
**satisfied** [1] - 34:16
**satisfy** [1] - 24:9
**save** [1] - 31:9
**saw** [1] - 8:17
**scanned** [1] - 8:8
**scenario** [2] - 14:18, 25:5
**Schey** [2] - 2:4, 3:8
**se** [1] - 17:19
**search** [1] - 37:1
**season** [5] - 24:25, 25:1, 25:2, 25:7, 25:10
**second** [14] - 6:8, 6:25, 9:5, 10:5, 12:21, 12:22, 12:23, 15:8, 16:18, 21:19, 25:23, 38:24, 39:18, 39:20
**section** [4] - 11:10,

11:11, 22:18, 22:20
**secure** [6] - 4:19, 15:6, 28:25, 29:2, 38:20, 38:25
**security** [2] - 24:12, 40:25
**Security** [2] - 24:13, 40:8
**see** [3] - 5:17, 9:14, 25:11
**seek** [3] - 17:4, 32:24, 34:8
**seeks** [1] - 34:1
**sense** [1] - 40:22
**sent** [1] - 37:3
**separate** [2] - 19:12, 23:23
**separating** [1] - 28:7, 28:8, 40:25
**separation** [2] - 31:9, 41:18
**September** [2] - 25:13
**service** [1] - 8:21
**sets** [1] - 38:6
**Settlement** [21] - 1:16, 1:17, 3:22, 4:8, 5:11, 5:16, 6:9, 6:10, 6:19, 6:24, 7:8, 9:21, 11:6, 13:12, 13:14, 13:18, 17:3, 18:9, 18:15, 19:3, 22:3
**settlement** [20] - 9:9, 10:23, 19:20, 21:23, 21:25, 22:2, 22:12, 29:12, 31:22, 32:6, 32:11, 32:13, 34:11, 35:15, 36:8, 37:4, 37:5, 37:15, 38:2, 40:18
**share** [1] - 42:25
**short** [3] - 15:20, 29:9, 39:11
**shorthand** [1] - 7:14
**show** [2] - 30:21, 34:3
**showed** [1] - 6:14
**showing** [4] - 28:25, 29:7, 29:19, 30:16
**shows** [3] - 21:14, 21:15, 21:17
**shuttered** [1] - 28:20
**sic** [1] - 40:1
**side** [1] - 20:10
**signed** [1] - 3:23
**simply** [12] - 17:7, 18:1, 28:2, 29:14, 32:13, 32:17, 33:18, 34:7, 34:17, 35:16, 35:23, 36:11
**simultaneously** [3] - 11:18, 26:21, 26:23

**singling** [1] - 36:8
**sitting** [1] - 42:8
**situation** [13] - 12:14, 14:23, 15:10, 17:5, 18:24, 19:1, 21:11, 23:1, 24:15, 24:20, 27:10, 38:6, 41:24
**situations** [6] - 25:4, 37:1, 41:4, 41:5, 41:23, 41:25
**six** [1] - 26:15
**skill** [1] - 14:14
**sky** [2] - 36:2, 36:10
**small** [2] - 18:24, 29:1
**smugglers** [3] - 15:14, 16:8, 24:2
**Social** [1] - 28:24
**solution** [1] - 10:6
**someone** [4] - 10:22, 12:4, 14:12, 18:19
**sometimes** [2] - 39:10, 39:11
**sooner** [1] - 21:1
**sorry** [1] - 26:22
**sort** [3] - 6:11, 16:15, 29:15
**South** [2] - 2:6, 26:1
**speaking** [2] - 26:21, 26:23
**special** [1] - 28:23
**specific** [2] - 3:20, 34:6
**specifically** [1] - 31:22
**specified** [1] - 21:24
**spend** [1] - 37:14
**spotting** [1] - 25:7
**Spring** [1] - 1:23
**spring** [2] - 25:9, 25:10
**square** [1] - 10:7
**standing** [8] - 32:22, 32:23, 32:24, 33:8, 33:10, 33:20, 33:21, 33:22
**stands** [1] - 37:21
**start** [1] - 25:11
**statement** [2] - 16:12, 38:22
**STATES** [1] - 1:1
**States** [4] - 21:12, 24:21, 30:23, 44:7
**statistical** [1] - 25:19
**statistically** [1] - 25:18
**statistics** [1] - 30:21
**status** [1] - 42:14
**statute** [1] - 12:5
**statutorily** [1] - 30:14
**statutory** [4] - 11:21, 12:1, 12:3

**stay** [7] - 4:5, 4:6, 10:14, 10:15, 20:4, 25:24, 35:2
**stenographically** [1] - 44:3
**step** [3] - 16:21, 21:7, 21:9
**steps** [1] - 21:6
**still** [2] - 36:25
**Stipulated** [1] - 7:8
**stipulated** [2] - 7:18, 9:8
**stipulation** [1] - 14:1
**Street** [1] - 1:23
**strikes** [2] - 35:14, 35:15
**structure** [1] - 35:11
**study** [1] - 11:19
**studying** [1] - 7:1
**submit** [4] - 7:21, 12:2, 28:24, 33:4
**substantive** [1] - 36:4
**success** [1] - 34:3
**sudden** [1] - 28:18
**sued** [4] - 5:5, 5:6, 28:16, 39:2
**suffered** [1] - 33:12
**sufficient** [4] - 11:2, 33:11, 33:19, 33:22
**suggesting** [1] - 16:23
**suitable** [1] - 11:20
**Suite** [1] - 2:12
**suppose** [1] - 20:7
**surprised** [1] - 31:4
**system** [2] - 15:14, 35:25

**T**

**Tae** [1] - 16:4
**talks** [14] - 4:3, 9:5, 9:23, 10:10, 11:6, 11:17, 11:19, 12:10, 13:19, 16:5, 16:7, 26:14, 28:7
**taxpayer** [1] - 31:2
**taxpayers** [1] - 31:2
**technical** [3] - 5:7, 34:10, 39:15
**telephone** [1] - 1:24
**temporary** [1] - 36:25
**ten** [2] - 29:17, 29:19
**tentative** [3] - 3:14, 35:20, 42:22, 42:25
**tentatively** [1] - 36:22
**term** [1] - 15:20
**terms** [2] - 7:5, 10:21
**Texas** [2] - 26:1, 36:15
**THE** [67] - 2:3, 2:10,

3:12, 4:10, 4:24, 5:3, 5:17, 5:24, 7:1, 7:15, 7:23, 8:1, 8:4, 8:10, 9:8, 9:24, 10:19, 11:13, 11:21, 13:5, 13:11, 14:1, 15:17, 15:23, 16:3, 16:11, 16:23, 17:18, 18:1, 19:15, 19:23, 20:6, 20:17, 20:20, 20:22, 21:22, 22:11, 23:8, 24:17, 25:6, 25:20, 26:19, 26:21, 27:18, 27:20, 28:9, 28:11, 29:22, 31:10, 31:24, 32:20, 33:9, 33:17, 33:25, 35:1, 35:19, 36:23, 37:21, 38:14, 38:16, 39:4, 42:1, 42:5, 42:11, 42:17, 42:20, 42:24
**themselves** [3] - 6:14, 10:23, 16:10
**theoretically** [1] - 40:11
**therefore** [1] - 34:13
**they've** [6] - 12:20, 12:23, 12:24, 16:20, 31:1
**thinking** [2] - 35:20, 42:23
**thinks** [2] - 23:13, 35:23
**thousands** [2] - 29:16
**threshold** [2] - 17:22, 21:10
**thrilled** [1] - 40:6
**timeframe** [1] - 35:21
**timings** [1] - 27:2
**today** [4] - 3:24, 6:20, 36:14, 36:22
**torment** [1] - 36:17
**tough** [6] - 16:19, 19:5, 20:15, 22:22
**Trafficking** [1] - 13:16
**trafficking** [1] - 16:8
**Transcript** [1] - 1:16
**transcript** [2] - 44:3, 44:5
**transfer** [1] - 37:8
**transition** [1] - 37:20
**transportation** [1] - 11:10
**transporting** [1] - 23:4
**treated** [1] - 18:8
**treatment** [1] - 36:9
**tries** [1] - 13:22
**trouble** [1] - 34:22
**true** [4] - 5:3, 16:24, 28:13, 44:2

**trump** [2] - 14:6, 23:17
**try** [9] - 24:8, 25:3, 26:10, 30:5, 34:23, 35:21, 40:15, 41:22
**trying** [8] - 11:12, 14:11, 24:14, 24:18, 26:10, 31:9, 40:8, 41:7
**turn** [1] - 41:19
**turning** [1] - 19:8
**TVPRA** [3] - 13:16, 14:7, 14:16
**two** [6] - 6:11, 12:5, 12:6, 21:6, 23:24, 29:7

**U**

**unaccompanied** [18] - 4:14, 6:13, 6:15, 9:9, 13:6, 13:7, 13:10, 13:12, 14:18, 17:9, 19:8, 22:2, 22:5, 22:14, 31:12, 32:1, 32:14, 41:20
**unambiguous** [1] - 23:16
**unanswered** [1] - 23:16
**unavoidable** [1] - 24:4
**uncertainty** [6] - 12:18, 13:3, 15:7, 23:23, 23:24, 41:14
**under** [4] - 5:13, 8:19, 18:9, 35:10
**underscores** [2] - 11:5, 19:19
**unfortunately** [1] - 25:8
**unilaterally** [2] - 21:4, 21:8
**unit** [2] - 16:10, 24:21
**UNITED** [1] - 1:1
**United** [4] - 21:12, 24:21, 30:23, 44:7
**units** [1] - 24:1
**unlike** [1] - 9:11
**unreasonable** [1] - 26:16
**unrelated** [1] - 16:7
**untenable** [1] - 38:6
**unusual** [2] - 21:22, 38:5
**up** [8] - 8:16, 9:3, 19:21, 25:12, 29:17, 34:18, 38:6, 40:3
**updated** [1] - 13:14
**uphill** [1] - 30:10
**upshot** [1] - 20:17

**US** [1] - 2:12
**USC** [1] - 8:21

**V**

**various** [1] - 35:12
**verify** [1] - 15:19
**versus** [2] - 3:6, 26:15
**VHS** [1] - 19:1
**Victims** [1] - 13:16
**view** [3] - 16:16, 16:17, 19:14
**viewed** [1] - 22:21
**views** [1] - 35:9
**violate** [1] - 17:24
**violated** [2] - 18:3, 18:4
**violates** [1] - 17:9
**violating** [3] - 5:2, 5:6, 18:15
**violation** [7] - 5:10, 5:15, 12:23, 17:25, 28:14, 29:22, 39:8
**violations** [8] - 5:8, 6:18, 34:19, 35:15, 36:7, 39:6, 39:15
**violative** [1] - 17:20
**violence** [2] - 30:18, 30:19
**virtually** [1] - 30:8
**visited** [1] - 32:17
**voluntarily** [1] - 10:22
**vS** [1] - 1:11

**W**

**wait** [2] - 5:17, 21:19
**waive** [1] - 38:3
**wants** [8] - 10:14, 10:22, 19:16, 20:4, 20:5, 20:11, 20:13, 41:6
**warehouse** [1] - 8:15
**Washington** [1] - 2:13
**waste** [1] - 31:1
**Wayne** [2] - 2:5, 3:9
**ways** [1] - 23:24
**week** [4] - 29:6, 29:13, 42:5, 42:14
**weight** [1] - 36:1
**Welfare** [1] - 28:25
**western** [2] - 8:22, 32:5
**whereas** [5] - 7:8, 7:9, 9:1, 39:20, 39:21
**whole** [4] - 10:8, 33:8, 35:25, 37:15
**wholesale** [1] - 39:6

**willing** [1] - 37:18
**winning** [1] - 27:5
**wish** [2] - 21:3, 32:10
**wishes** [6] - 19:24, 19:25, 20:2, 20:9, 37:23
**women** [6] - 29:20, 30:13, 30:20, 31:3, 36:9, 36:16
**word** [3] - 9:20, 9:22, 21:14
**words** [1] - 33:17
**world** [1] - 17:3
**worries** [1] - 15:8
**worth** [1] - 34:22
**write** [1] - 10:8
**writing** [1] - 36:14

**Y**

**year** [1] - 24:15
**years** [10] - 4:20, 5:19, 8:20, 15:18, 15:25, 17:2, 20:25, 21:17, 21:19, 29:5
**yo** [1] - 28:9