1   David J. Kaloyanides SBN 160368
    E: djpkaplc@me.com
2   **DAVID J.P. KALOYANIDES**
    **A PROFESSIONAL LAW CORPORATION**
3   15338 Central Avenue
    Chino, CA 91710
4   T: (213) 623-8120/F: (213) 402-6292

5   Attorney for Third Party
    Bryan Johnson
6

7

8                UNITED STATES DISTRICT COURT

9          FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                    WESTERN DIVISION

11  JENNY L. FLORES, *et al.*,          )   Case No.: 2:85-CV-04544 DMG (AGRx)
                                        )
12              Plaintiffs,             )   LETTERS IN SUPPORT OF BRYAN
                                        )   JOHNSON'S RESPONSE TO ORDER TO
13      vs.                             )   SHOW CAUSE
                                        )
14  JEH JOHNSON, *et al.,*              )   Date:      August 24, 2015
                                        )   Time:      10:00 a.m.
15              Defendants.             )   Courtroom: Spring Street 7
                                        )            Hon. Dolly M. Gee
16  _____    )

17

18          Third party Bryan Johnson, by and through his counsel of record in this case,

19  David J. Kaloyanides, hereby submits the attached Letters of Support to his Response

20  to Order to Show Cause:

21          Attached hereto are the following Exhibits:

22      Exhibit 1:    Letter of Professor Lauris Wren

23      Exhibit 2:    Letter of Margaret Stock

24      Exhibit 3:    Letter of Matthew Archambeault

25  _____
    LETTERS IN SUPPORT OF BRYAN JOHNSON'S RESPONSE TO OSC RE
26                          CONTEMPT

1    Exhibit 4:    Letter of Matthew Guadagno

2    Exhibit 5:    Letter of David Bennion

3    Exhibit 6:    Letter of Christina Gaudio

4    Exhibit 7:    Letter of Matthew Kolken

5    Exhibit 8:    Letter of Maurice Goldman

6

7                                      Respectfully submitted,

8

9    Date:  August 5, 2015

10                                     David J. Kaloyanides
                                       Attorney for Third Party
11                                     Bryan Johnson

12

13

14

15

16

17

18

19

20

21

22

23

24

25    LETTERS IN SUPPORT OF BRYAN JOHNSON'S RESPONSE TO OSC RE
                                   CONTEMPT
26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

EXHIBIT 1

24

25

LETTERS IN SUPPORT OF BRYAN JOHNSON'S RESPONSE TO OSC RE CONTEMPT

26



MAURICE A. DEANE SCHOOL OF LAW

HOFSTRA ◆ LAW

HOFSTRA LAW CLINIC

108 Hofstra University     tel: 516-463-5934
Hempstead, NY 11549        fax: 516-463-5937
                           lawclinic@hofstra.edu
                           law.hofstra.edu

Theo Liebmann
*Director of Clinical Programs*

Stefan H. Krieger
*Director Emeritus of
Clinical Programs*

ATTORNEYS-IN-CHARGE

Linda Galler
*Professor of Law
Federal Tax Clinic Practicum*

Michael Haber
*Associate Clinical Professor
Community and Economic
Development Clinic*

Stefan H. Krieger
*Professor of Law
Law Reform Advocacy Clinic*

Paige Lescure
*Assistant Clinical Professor
Health Law & Policy Clinic*

Theo Liebmann
*Clinical Professor
Youth Advocacy Clinic*

C. Benjie Louis
*Visiting Associate Clinical Professor
Disaster Recovery Clinic*

Lewis R. Mandel
*Special Professor of Law
Federal Tax Clinic Practicum*

Elizabeth Nevins-Saunders
*Assistant Clinical Professor
Criminal Justice Clinic*

Deborah Rebore
*Special Professor of Law
Juvenile Justice Clinic Practicum*

Lauris P. Wren
*Clinical Professor
Asylum Clinic*

Patrick Young
*Special Professor of Law
Immigration Clinic Practicum*

July 6, 2015

The Honorable Dolly M. Gee
United States District Court
Central District of California

Re: Order to Show Cause/ Bryan Johnson

Dear Judge Gee:

I write this letter regarding Bryan Johnson. I am a Clinical Professor at the Maurice A. Deane School of Law at Hofstra University, where I direct the Asylum Clinic and teach Immigration Law. At Hofstra and elsewhere, I have been representing refugees and other immigrants in the New York City/Long Island area for nearly twenty years. Mr. Johnson was a student in the Asylum Clinic in fall 2009, and he continued working on his cases through his graduation in spring 2010. Following his graduation, I kept in touch with Mr. Johnson as he began his career in immigration law. As he and his partner started their own firm and became more prominent in the immigration advocacy community, I continued to be in contact with them.

As a young attorney, Mr. Johnson is dedicated to the clients that he serves. On Long Island, where he practices, Mr. Johnson and his partner have a reputation for excellent service to the immigrant community, in particular young people from Central America. They take on a very large number of cases for very low fees, they do a significant amount of pro bono work, and they are very involved with charitable endeavors for this population. A group that Mr. Johnson has particularly been dedicated to is

detained Central American families.  Mr. Johnson is deeply disturbed by the suffering of this population in long term detention, and he has been very active in trying to end the practice of family detention.  I believe it is because of his extensive work in this area that Mr. Johnson was initially asked to be a consultant on the case in front of this Court.

While I do not seek to minimize the gravity of disobeying a confidentiality order of this Court, I do wish to communicate my belief as to the reasons why Mr. Johnson violated this order.  Mr. Johnson represents many families who have been in detained for lengthy periods of time in distressing situations.  Mr. Johnson has been increasingly upset by the treatment of his clients (and others), which he believes is in violation of the law.  In particular, Mr. Johnson was distressed by the treatment and subsequent deportation of one of his clients who attempted suicide.  I believe Mr. Johnson was convinced that speaking of the settlement would help prevent his clients from being harmed in family detention centers and would protect other children at risk of harm. I do not believe that Mr. Johnson intended any disrespect of this Court.  I believe that his sense of obligation to his clients and his deep concern at the harm they were suffering motivated his actions.

In recent years, Mr. Johnson has dedicated himself to the protection of Central American families fleeing violence, in particular to those who are currently or have been detained.  He has truly provided significant service to this population. His youth, idealism, and passion has, however, caused a significant problem in this case.  Nevertheless, Mr. Johnson's action, even if misguided, came from a desire to help his clients.  I urge you to consider this in your decision as to whether to hold him in contempt or to report him to the State Bar of New York.  If Mr. Johnson's ability to practice law were to be restricted, even temporarily, the many clients he serves would be very adversely affected.

If I can provide you with any further information, please do not hesitate to call me at 516-463-5934.

Sincerely,

Lauris Wren

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

EXHIBIT 2

LETTERS IN SUPPORT OF BRYAN JOHNSON'S RESPONSE TO OSC RE
CONTEMPT



4141 B Street, Suite 205
Anchorage, AK  99503
T: 360.671.5945
F: 360.676.5459
www.cascadialawalaska.com

Reply To:
**Margaret Stock**, Attorney At Law
mstock@cascadialawalaska.com

July 17, 2015

The Honorable Dolly M. Gee
United States District Court
Central District of California

**Re: Order to Show Cause for Bryan Johnson, Esq.**

Dear Judge Gee:

I am writing this letter on behalf of Bryan Johnson, an attorney who is admitted to practice in New York and who is appearing before your Honor in connection with an Order to Show Cause why Mr. Johnson should not be held in contempt and referred to New York attorney disciplinary authorities.

I am a graduate of the Harvard Law School (Class of 1992); a member of the Alaska Bar Association, the Association of the Bar of the City of New York, the American Immigration Lawyers Association, and the American Bar Association; a retired Lieutenant Colonel, Military Police, US Army Reserve; and a John D. & Catherine T. MacArthur Foundation Fellow (Class of 2013).  I formerly taught as an Associate Professor in the Department of Law at the United States Military Academy, West Point, New York.  I have practiced immigration law for more than twenty years and have been involved in many different immigration law conferences over those twenty years.  I met Mr. Johnson at an immigration lawyers conference several years ago and I am extremely familiar with his work on behalf of immigrants and their family members.  Since meeting Mr. Johnson, I have corresponded with him regularly over the years with regard to immigration policy matters and individual cases, and I have enjoyed working with Mr. Johnson on many different occasions.  I have always struck by his passionate dedication to the clients he represents; not every lawyer shares such passion for our very difficult field of practice.

Over the years, Mr. Johnson has provided much needed assistance to hundreds of immigrants and refugees.  His dedication to his clients and people in need of his expertise is so strong he often works for low fees and pro bono, no doubt to his economic detriment.  He is willing to take on difficult cases that few other lawyers are willing to handle.  He is an invaluable asset to immigration law practice in New York and in the United States.

Mr. Johnson's position in the front lines of the fight for justice for Central American refugees has led to a very personal connection with the people he represents. This close connection is one of Mr. Johnson's greatest assets when it comes to his work in immigration law and one of the greatest assets any immigration lawyer can have.

At the same time, Mr. Johnson often witnesses the harsh treatment that immigrants experience due to the politicization of immigration law and policy. Mr. Johnson, like myself and other advocates, views this harsh treatment as contrary to many American values and legal norms. While his behavior with regard to violating a court order was not acceptable, Mr. Johnson's distress over the treatment of his clients fueled his reaction. He acted out of concern for his clients without the intention of showing disrespect to this Court. He has realized the gravity of what he has done and feels a great deal of remorse for his violation of the confidentiality order and his actions.

Mr. Johnson is an immense asset to immigration law. He is singularly dedicated to the protection of Central American refugees in a time when effective legal advocates for such refugees are sorely lacking. I respectfully request that you take the time to consider this mitigating factor as you make your decision to hold him in contempt or report him to the State Bar of New York.

Thank you for giving me the opportunity to speak on behalf of Mr. Johnson. If I can provide any further information to aid in your decision, feel free to contact me at (907) 242-5800.

Sincerely,

Margaret D. Stock
Cascadia Cross Border Law Group, LLC

**creating** TRANSPARENT **borders**™

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

EXHIBIT 3

LETTERS IN SUPPORT OF BRYAN JOHNSON'S RESPONSE TO OSC RE
CONTEMPT



Matthew J. Archambeault, Esq.
Direct 215-599-2189
matthew@ccmalaw.com

July 29, 2015

The Honorable Judge Dolly M. Gee
United States District Judge
United States District Court
Central District of California

RE:    CV 85-4544 DMG (AGRx)
       Jenny L. Flores, et al. v. Jeh Johnson, et al
       Order to Show Cause against Bryan Johnson, Esquire

Dear Judge Gee:

My name is Matthew J. Archambeault and am a practicing immigration attorney out of
Philadelphia, PA. I have been practicing exclusively immigration law for about thirteen years,
concentrating on removal proceedings and detained representation. Since October of last year I
have been involved in representing families at the Berks Family Prison on a pro bono and low
bono basis. I have also been involved in the larger advocacy fight attempting to end family
detention. It is through this larger advocacy fight I came to know Bryan Johnson.

I offer no excuses for Mr. Johnson's actions and I know he regrets his violation of your order. I
only offer my support for Mr. Johnson as a person and as an advocate. I also offer context to the
pressures and emotions we feel as attorneys on the front lines.

Since October of last year my clients have included a 19 year old rape and torture survivor from
Honduras who was imprisoned at the Berks Family Prison with her three year old son only to
have to become a survivor of an institutional sexual assault by a Berks guard. After the assaults
my client was confronted by staff at Berks and told that they would deal with the guard and that
ICE would deal with her. Her and her child were then denied privileges granted to other
detainees. The rapes happened in August of 2014 and her and her child were not released until
mid December of 2014. Despite ICE's fully acknowledgement of the attacks they continued to
imprison her and her son at the same place where she had been assaulted.

Berks took immediate action after the assaults on my client. They did fire the guard and then
they implemented a new clothing policy restricting the detainees from wearing tight clothing or
loose and revealing clothing. The other detainees knew this new policy was due to my client and
my client was shamed and isolated because of it. The other detainees understood the message



Matthew J. Archambeault, Esq.
Direct 215-599-2189
matthew@ccmalaw.com

that the assaults against my client were her fault for choosing to wear tight clothing. The other detainees also saw that my client and her son lost privileges and received the message that informing on guard misconduct led to loss of privilege and they assumed, would lead to deportation.

I also witnessed the almost complete emotional breakdown of another client, a 21 year old mother from Guatemala, herself a survivor of rape and torture. Despite numerous reports from ICE's own mental health staff outlining her severe depression and suicidal tendencies (she was on suicide watch for weeks) ICE refused to allow her release. The Enforcement and Removal branch refused her parole and the ICE attorney fought our request for a bond. It was only after the immigration judge granted her claim for withholding of removal in May of this year was she released. She had been detained for ten months.

When I heard the report of a young mother in a family detention facility having attempted suicide (Mr. Johnson's client, L RED ACT ) I immediately felt nauseas. I began to sweat and panic as I reached out to the other advocates for information. It took me about 15 minutes to confirm that it was another unfortunate young mother who had attempted to take her life and not my client. While feeling relieved for my client, I began to hurt for L RED ACT.

I have sat with these women while they cried or tried to keep their children from crying with desperation and fear due to their imprisonment at Berks. My assistant and wife has taken phone calls from these women at all times of the day and night as they cried and trembled with fear. I have picked up these women from Berks upon their release and seen them still shaken from their experience even as they were experiencing their long sought after freedom.

Bryan Johnson has been an integral part of a team of us attorneys working at Berks. We exchange messages and emails on a daily basis, sharing information and strategies. Mr. Johnson, other than the release of your order, never shared details of his consultations with the plaintiffs' attorneys with us. He did solicit our thoughts on the litigation. He was the only one of the plaintiffs' attorneys to do so. I should add that Mr. Holguin, during oral argument, incorrectly argued that Berks was a non-secured facility. We are grateful that you recognized Berks as the secured facility that it actually is. Mr. Holguin's statement was particularly upsetting as Bridgett Cambria, Esquire, who provided a sworn affidavit to this court, specifically stated that Berks was a secured facility. We, those of us advocating at Berks, have been challenging the license given to Berks and asserting what you ruled to be true, that Berks is a secured facility, so for Mr. Holguin to argue to the contrary, without ever consulting with attorneys who actually work at Berks was disappointing.



Matthew J. Archambeault, Esq.
Direct 215-599-2189
matthew@ccmalaw.com

While Mr. Johnson's actions were wrong, I ask you to compare them to the wanton disregard for
the law exhibited by the Department of Homeland Security and the Obama administration since
June of 2014 before coming to a decision on any sanction.

Thank you.


Respectfully submitted,
/s/Matthew J. Archambeault
Matthew J. Archambeault

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

EXHIBIT 4

25   LETTERS IN SUPPORT OF BRYAN JOHNSON'S RESPONSE TO OSC RE CONTEMPT

26

# Law Office of Matthew L. Guadagno

265 Canal Street, Suite 506
New York, NY 10013

Tel: (212) 343-1373
Fax: (212) 537-0019

July 31, 2015

Hon. Dolly M. Gee
U.S. District Court, Central District of California
312 North Spring Street
Los Angeles, CA 90012

Re:    OSC to Bryan Johnson

Dear Judge Gee:

I am writing in support of Bryan Johnson. I am writing to request that he not be sanctioned or reported to the New York Bar for discipline.

I am an adjunct professor at Brooklyn Law School. I teach a course on deportation defense. I teach approximately 3-5 continuing legal education courses a year about the practice of immigration law. The reason that I do this is that the quality of the New York immigration bar is very poor. See Kirk Semple, In a Study, Judges Express a Bleak View of Lawyers Representing Immigrants, N.Y. Times, December 18, 2011 (attached).[1] I teach about the practice of immigration law with the hope of improving the immigration bar. The New York Bar needs more immigration lawyers like Bryan. Despite his accomplishments, Bryan is still a relatively young and inexperienced lawyer. He was only admitted to the bar in 2011. He needs guidance, not punishment.

I have known Bryan for approximately two years. I met Bryan through social media. I am also an immigration lawyer. Bryan started a group on Facebook that I follow. Through that group, I have come to know Bryan. We have collaborated together. I have appeared "of counsel" for his firm. When an unaccompanied minor that I was representing pro bono in immigration court needed representation in Family Court, his firm represented my client pro

---

[1] The article indicates that a poll of Immigration Judges found that "[i]mmigrants received 'inadequate' legal assistance in 33 percent of the cases between mid-2010 and mid-2011 and 'grossly inadequate' assistance in 14 percent of the cases."

*OSC to Bryan Johnson*                                          *Page 2*

bono. Bryan occasionally contacts me when he has questions about immigration law or wants to discuss a case. I have contacted Bryan about immigration matters that he has special expertise over.

Since the Court issued the Order to Show Cause, I have personally spoken to Bryan about this matter. He told me that he regretted his decision to be a consultant. He expressed to me that he did not realize the conflicts that he would face being a consultant. I believe that he was sincere. When I spoke to him, I made it clear to him that he could always come to me for advice in the future.

I think very highly of Bryan. I know through his posts on social media that he does extensive pro bono work. Bryan has great respect in the immigration bar. He is recognized as an expert in representing unaccompanied minors in removal proceedings. The American Immigration Lawyers Association recently had its national conference in June and Bryan was an invited speaker on the subject of unaccompanied minors. Most of all, he is very passionate about his work and helping children. Dealing with the Government's immigration policy of family detention has been very stressful for him. It is not just the policy that has been stressful to him, but how that policy has been carried out that has been upsetting to Bryan. He has had to deal with extremely difficult problems and situations.

I know what Bryan has done. I think that he did not act properly. However, I hope that the Court concludes that admonishment is a sufficient punishment. Obviously, being sanctioned and reported to the New York Bar would be detrimental to his legal career. That would be a tragedy because he helps so many people whether they are pro bono or retained clients. Any punishment beyond admonishment could prevent Bryan from doing all the things that he does to help people as a lawyer.

Respectfully submitted,

Law Office of Matthew L. Guadagno

Matthew L. Guadagno

Encl.



## The New York Times

N.Y. / REGION

# In a Study, Judges Express a Bleak View of Lawyers Representing Immigrants

**By KIRK SEMPLE**   DEC. 18, 2011

They are often poorly prepared or make incoherent arguments in court. Some fail to present key evidence or witnesses. Others simply do not show up.

The performance of many lawyers who represent immigrants facing deportation in New York has long been considered mediocre. But in a new report that seeks to measure the extent of the problem, immigration judges themselves step forward and offer a scathing assessment of much of the lawyering they have witnessed in their courtrooms.

Immigrants received "inadequate" legal assistance in 33 percent of the cases between mid-2010 and mid-2011 and "grossly inadequate" assistance in 14 percent of the cases, the judges said. They gave private lawyers the lowest grades, while generally awarding higher marks to pro bono counsel and those from nonprofit organizations and law school clinics.

The study was conducted by a group of lawyers and researchers under the auspices of Robert A. Katzmann, a federal appellate judge in New York City. A year ago, they began sifting through government data and surveying immigration judges in an attempt to measure the quality and availability of legal representation for immigrants facing deportation.

Their report will be published this week in the Cardozo Law Review, a
publication of the Benjamin N. Cardozo School of Law at Yeshiva University
in Manhattan.

"We began this effort with an intuitive sense of the scale of the
problem," the report says. "The numbers sadly bear out that intuition in the
starkest form."

Judge Katzmann blames predatory lawyers who are not familiar with
immigration law for much of the poor representation. The immigrants who
hire them often do not speak English and are unfamiliar with the court
system, making them particularly vulnerable.

"They are easy prey for ambulance-chasing-style lawyers who do not
adhere to the highest standards of responsibility," said the judge, who for
several years has been pushing for better legal representation of immigrants
in New York.

For the judges' survey, researchers polled judges in five immigration
courts — three in New York City and two in the northern suburbs — about
the representatives who appeared before them. All but 2 of the 33 sitting
judges at the time participated in the investigation.

While much legal representation in New York immigration courts is
shoddy, the report found that many immigrants do not have representation
at all. (Unlike in criminal courts, respondents in immigration courts are not
entitled to court-appointed lawyers.)

Immigrants in 27 percent of cases between October 2005 and July 2010
appeared in court without a legal representative, according to the report. For
detained immigrants, 67 percent appeared alone before a judge.

The report found that immigrants' fate can depend largely on whether
they can find legal representation: About 67 percent of all immigrants with

counsel during that five-year period had successful outcomes in their cases, while only 8 percent of those without lawyers prevailed.

Where detainees were held also appeared to make a considerable difference in their cases. Nearly two-thirds of those detained in New York are sent to detention centers out of state, often as far away as Louisiana and Texas. Yet only 21 percent of detainees transferred out of New York between October 2005 and July 2010 received representation, the report said.

Even a short transfer to New Jersey can have a considerable impact, the researchers found. Among immigrants transferred to Newark, only 22 percent had representation.

Judge Katzmann's study group said this was a significant finding because immigration authorities were expanding detention capacity in Newark to hold detainees from around the region.

"It's hard to get New York lawyers to go to New Jersey and do those cases," said Peter L. Markowitz, a clinical associate professor at the Cardozo law school and chairman of the research team that produced the report. "To take a day to go do a case out in Newark is just disruptive to their practice and not worth it to them."

The Obama administration has acknowledged the problem of inadequate representation. In 2009, immigration officials announced plans to overhaul the detention system, including providing more detention capacity in and around cities with large immigrant populations, like New York, so detainees are closer to their families and lawyers.

While immigration officials recently closed a detention center in Lower Manhattan, they are planning to double detention capacity in Newark. The study group's report, however, did not address the potential impact of these proposed changes.

The report also did not consider the potential impact of a new Obama administration plan to review all pending deportation cases in the immigration courts and to train enforcement agents and government lawyers in the use of new prosecutorial guidelines. The plan is intended to unclog the immigration system and to focus the government's deportation efforts on convicted criminals.

"I'm somewhat skeptical still of that process," Mr. Markowitz said. "Skeptical but hopeful."

He added: "Meaningful prosecutorial discretion on the front end is something that could have a real impact."

Judge Katzmann's group is currently in the midst of another project: to develop a system that would guarantee competent legal representation for all immigrants facing deportation. The group hopes its project will provide a model for the rest of the country.

"Having the data means that we can think sensibly about how to address this dire crisis," the judge said.

A version of this article appears in print on December 19, 2011, on page A24 of the New York edition with the headline: In a Study, Judges Express a Bleak View of Lawyers Representing Immigrants.

© 2015 The New York Times Company

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

EXHIBIT 5

LETTERS IN SUPPORT OF BRYAN JOHNSON'S RESPONSE TO OSC RE
CONTEMPT

DAVID C. BENNION, ESQ.
ATTORNEY AT LAW

July 31, 2015

Honorable Dolly M. Gee
U.S. District Court, Central District of California
312 North Spring Street
Los Angeles, CA 90012

**Re:    Attorney Bryan Johnson**

Dear Judge Gee,

I write in support of Bryan Johnson, Esq., who is facing disciplinary action in Your Honor's Court relating to his role as consulting attorney to the plaintiffs in the *Flores v. Johnson* case pending before Your Honor. I am a practicing attorney with an office in Philadelphia, Pennsylvania, and I practice exclusively immigration law. I have been in communication with Mr. Johnson over the past few years to discuss discrete legal issues and case strategies. I have found Mr. Johnson to be an innovative and fearless legal strategist, one who is fiercely devoted to his clients' well-being. I believe that he shares my frustration with an immigration regime that is unjust, inefficient, and to an extent, corrupted by political machinations. He and I have seen our respective non-citizen clients suffer inordinately under the harsh and often arbitrary laws and policies which govern every aspect of their lives, and which sometimes determine whether they will live or die.

I am representing a mother and son who were detained at the Berks County Residential Center ("BCRC") for over 13 months until their release on May 15, 2015. It was in this capacity that I began to communicate last year with Mr. Johnson and other attorneys representing families detained at BCRC regarding legal strategies to advocate for our clients and ensure that the U.S. Department of Homeland Security ("DHS") complied with its legal obligations under the Immigration and Nationality Act and international human rights law.

Mr. Johnson not only advocated zealously for his clients, he also fought against the policies and dubious tactics of DHS that have so negatively impacted all of our clients at BCRC. While he maintained information about the settlement negotiations confidential in his discussions with us—aside from the violation of the Court's order regarding the tentative settlement agreement which is currently at issue—he made efforts to stay informed, through us, about what was happening at BCRC to an extent that the other class counsel did not. Those of us representing clients at BCRC worried that class counsel—aside from Mr. Johnson—were not fully considering the needs of families detained at BCRC, and we worried that BCRC might be excluded in important ways from any settlement agreement. I do not believe that DHS and its attorneys in the *Flores* matter have acted in good faith in instituting and defending the program of mass family detention, and I believe that their actions were improperly motivated by political considerations.

While I don't condone Mr. Johnson's violation of the Court's confidentiality order, I do wish to

inform the Court of the context in which his actions were taken. I ask that the Court exercise leniency in determining any legal consequences which may apply to Mr. Johnson in this matter, and I request that the Court consider in its decision the numerous violations of law that DHS has committed in the course of defending its morally indefensible family detention program.

Please contact me if any additional information is needed at this time. Thank you.

Very truly yours,

David C. Bennion, Esq.
Attorney at Law

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

EXHIBIT 6

LETTERS IN SUPPORT OF BRYAN JOHNSON'S RESPONSE TO OSC RE
CONTEMPT

July 29, 2015

Honorable Dolly M. Gee
United States District Court
Central District of California
312 North Spring Street
Los Angeles, CA 90012-4701

Re: Order to Show Cause/ Bryan Johnson

Dear Judge Gee,

I am an attorney on Long Island, New York who works as the Immigration Unit Supervisor at the Legal Aid Society of Suffolk County, Inc. I have known Bryan Johnson both personally and professionally for over seven years. I write to describe the Bryan Johnson I know, a man with great character who has dedicated his practice to helping immigrant children and families in need.

Mr. Johnson and I first met while attending the Maurice A. Deane School of Law at Hofstra University. During our second year of law school we were paired as clinic partners in Hofstra's Asylum Clinic. As with most law school clinical experiences, ours was very demanding. I quickly came to admire Mr. Johnson's strong work ethic, passion, dedication and excitement for immigration law.

Those qualities helped him to thrive after graduation and he soon opened up his own law firm with the assistance of his partner, "Amoachi & Johnson, Attorneys at Law, PLLC." The law firm quickly gained a reputation as being on the forefront of immigration representation on Long Island. Mr. Johnson went on to develop a particular focus on assisting one of our most vulnerable populations, children and families fleeing Central American violence.

As Long Island received a surge of unaccompanied minors, non-profit legal service organizations quickly became overloaded and many reached capacity. Amoachi & Johnson stepped us as one of the few private firms willing to represent these youth on a pro-bono and low-bono basis. As someone who works to connect indigent individuals with immigration legal services on Long Island, I can attest that it is often a difficult task. I can always however count on Mr. Johnson, despite his increasingly busy schedule, to assist me in any way he can. His practice is selfless and his generosity and commitment to helping those most in need is unparalleled. Mr. Johnson has provided tremendous support for immigration advocates practicing on long island, including myself, giving presentations, attending meetings and providing individual advice and assistance. It is rare that the successes Long Island has seen in assisting immigrant children and families are discussed without the mention of the tireless work Mr. Johnson and his firm have been doing.

There can be no doubt that Mr. Johnson takes his duty to zealously advocate for his clients with the upmost seriousness.  He sympathizes with the dire situations that many of his clients are facing and knows the extreme importance of his work in their lives.  It is because of this that I believe Mr. Johnson is now in front of Your Honor.

I understand the severity of this matter and do not provide this letter as an excuse for Mr. Johnson's actions but rather as a way to shed light on his strong character.  I hope that the Court will consider the devastating impact any sanction on Mr. Johnson's license to practice law will have on immigrant children and their families who are in desperate need of his advocacy.

Sincerely,

Christina M. Gaudio

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

EXHIBIT 7

LETTERS IN SUPPORT OF BRYAN JOHNSON'S RESPONSE TO OSC RE CONTEMPT

# KOLKEN & KOLKEN

## ATTORNEYS AT LAW

ROBERT D. KOLKEN
*Direct e-mail*
rkolken@kolkenlaw.com

SUITE 101
135 DELAWARE AVENUE
BUFFALO, NEW YORK 14202

MATTHEW L. KOLKEN
*Direct e-mail*
mkolken@kolkenlaw.com

PHONE: (716) 854-1541
FACSIMILE: (716) 854-6223
www.kolkenlaw.com
immigration@kolkenlaw.com

July 23, 2015

The Honorable Dolly M. Gee
United States District Court
Central District of California

Re: Order to Show Cause/ Bryan Johnson

Dear Judge Gee,

I write this letter on behalf of my colleague Bryan Johnson. I am the managing partner of
Kolken & Kolken, located in Buffalo, New York. I have been practicing United States
immigration law since 1997. My legal opinions and analysis are regularly solicited by various
news sources, and I have appeared nationally on MSNBC, CNN, NPR, and Fox News, while
having been quoted in The Washington Post, Forbes Magazine, and The Los Angeles Times,
among others. I am also frequently asked to speak on the topic of removal defense at
immigration law conferences.

I first became acquainted with Mr. Johnson due to the exemplary work he has provided
representing indigent immigrants on a pro bono basis. I have been impressed by the quality of
his work product, as well as the way he ethically and zealously fights for his clients. In a
relatively short time in practice Mr. Johnson has earned a national reputation in the field of
immigration law, having been asked to speak at the American Immigration Lawyers Association
annual conference this past June. Mr. Johnson has also appeared before Congress with three of
his young clients who were invited to testify, which was moving and effective.

I have referred several cases to Mr. Johnson because of my confidence that anyone that receives
the benefit of his representation will be in the capable hands of a nimble litigator who will find a
way to win what to most appear to be impossible cases. There are very few individuals in the
entirety of the private immigration bar nationwide that I would shower such praise upon, and I
count Mr. Johnson among an elite group of practitioners in the field of deportation defense.

I am fully aware of Mr. Johnson's actions with regard to this Court's order, and I am confident
that his motivations were in no way a reflection of his respect for the authority of the Court, but
instead were motivated by his unyielding, and at times overzealous desire to help his clients,
many of whom are young immigrant mothers with children escaping unimaginable violence and
abuse. Mr. Johnson is a father himself with a young toddler, and I have seen him visibly affected
by the tragic plight of the children he represents. I humbly request that you heavily weigh these

factors against the severity of any violation of this Court's order, and I thank you for allowing me an opportunity to support an individual whom I believe to be both worthy and deserving of your favorable consideration.

Should you require any additional information to aid you in your decision making process, please do not hesitate to reach out to me. My office number is 716-854-1541.

Respectfully,

Matthew L. Kolken

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

EXHIBIT 8

LETTERS IN SUPPORT OF BRYAN JOHNSON'S RESPONSE TO OSC RE CONTEMPT



Goldman & Goldman, P.C.
*Attorneys at Law*

Gloria A. Goldman
*Member:* Arizona State Bar
D. C. Bar

Maurice H. Goldman
*Member:* New York State Bar
Arizona State Bar

July 16, 2015

The Honorable Dolly M. Gee
United States District Court
Central District of California

**Re: Order to Show Cause for Bryan Johnson, Esq.**

Dear Judge Gee:

I am writing this letter on behalf of Bryan Johnson. Mr. Johnson and I met over two years ago as we both specialize in immigration law and have similar practices. I am located in Tucson, Arizona but originally started my practice in Garden City, New York after graduating from the same alma mater as Bryan, Hofstra University School of Law. I first noticed Bryan through his advocacy for immigrants on social media. He was outspoken and passionate about his profession and the individuals he represented. I was pleased to see someone with Bryan's make-up on Long Island where the immigrant community needs more honest legal assistance.

I have practiced immigration law since 2000 and have mentored many newer practitioners over those years. I have also held numerous positions with the American Immigration Lawyers Association, including chairing the Arizona chapter of the organization. Therefore, I have been exposed to hundreds of colleagues and I can discern who are working in our field because they are passionate fighters for their clients and the others that are more fixated on making money over the well-being of the immigrant. Bryan is a passionate fighter.

Over the past year I have witnessed Bryan become even more visible on a national level with his advocacy for Central American children and families. He has assisted hundreds of special immigrant juveniles navigating through this draconian immigration system. He is in the trenches on a daily basis, taking on extremely difficult cases and does work that many in our profession shy away from doing. Mr. Johnson does a considerable amount of this work in either a pro bono or low bono capacity.

Bryan's overall frustration in witnessing the injustices done to his clients can often fuel his reaction. That said, he has demonstrated remorse for his actions against this court and violation of the confidentiality order. His intentions were strictly for the sake of his clients and other similarly situated immigrants. I have noticed that he sometimes lets his enormous heart make decisions for him before thinking of the possible repercussions. He cares for his clients and these individuals as if they are his own family.

Bryan is an asset to the legal profession. It is not everyday that you find a person who performs their legal work as passionately as Bryan. I have spoken to him late at night on occasion where he is conducting strategy sessions for his clients. He has recently spoken at the American Immigration Lawyers Association national conference on the topic of family detention and he will continue to lead the legal community in this area. I respectfully request that you take this all into consideration in your decision to hold him in contempt or report him to the State Bar of New York. Please utilize your discretion and allow him to have a mea culpa in this instance.

Thank you for giving me the opportunity to speak out on behalf of Bryan. If you need to contact me feel free to call (520) 797-9229.

Sincerely,

Maurice H. Goldman
Goldman & Goldman, PC