**EXHIBIT 69**



# May 14, 2015 STATEMENT — LIRS Urges Administration to Abandon Symbolic Reforms and End Family Detention

FOR IMMEDIATE RELEASE

Press Contact: Miji Bell
mbell@lirs.org, (410) 230-2841

**WASHINGTON, DC** – On Wednesday, the U.S. Department of Homeland Security, Immigration and Customs Enforcement agency (ICE) announced "a series of actions to enhance oversight and accountability, increase access and transparency" to improve its family detention centers. Based on over 75 years of experience working with individuals whose lives have been uprooted by violence and trauma, Lutheran Immigration and Refugee Service remains firmly opposed to the Administration's policy of detaining children and their mothers, especially families who are fleeing harm and persecution.

The Administration's announced reforms appear largely symbolic and perpetuate a misguided message that it is possible to humanely detain families," stated Brittney Nystrom, LIRS Director for Advocacy. "Efforts such as changing the physical design of detention facilities or providing additional amenities ignore the reality that detaining children and their parents is morally unacceptable." It is well-understood that any length of time in detention causes psychological damage to a child, regardless of whether the child is detained alongside a parent. Yet, many of the families currently detained have now been held in custody for several months and, in some cases, children have lived behind bars longer than not.

This policy is not only inhumane and entirely inappropriate for mothers and children, it runs counter to international and humanitarian obligations. Under both international and U.S. law, it is permissible for an individual fleeing persecution to present themselves at an international border with the intent to request asylum. Rather than acknowledging that the overwhelming majority of these families are fleeing persecution and threats to their very lives, the Obama Administration persists in referring to the act of seeking protection as "illegal," which is fundamentally untrue.

Despite ongoing lawsuits, negative press and the likelihood that this policy will largely shape its legacy on immigration, the Obama Administration continues its unwavering defense of this harmful policy. The Administration is well-aware of previous failed attempts to detain families such as the notorious T. Don Hutto facility, which closed in 2009. The current detention of families is no different.

If the government is to be believed that the well-being of families is of paramount importance, then they should begin releasing mothers and children from

**Exhibit 69 - page 1**

detention immediately. DHS officials know that effective alternatives to detention exist, including programs piloted by LIRS on behalf of ICE. Such programs should be maximized for low risk populations with extreme vulnerabilities such as these families.

As an organization with a faith-based mission to "welcome the stranger," LIRS calls on the Obama Administration to stand on the side of justice and end the practice of family detention.

**Exhibit 69 - page 2**

# EXHIBIT 71



# Congress of the United States
## House of Representatives

May 27, 2015

Secretary Jeh Johnson
U.S. Department of Homeland Security
Washington, DC 20528

Dear Secretary Johnson:

We are troubled by the Department of Homeland Security's continued detention of mothers and children in secure, jail-like facilities. For nearly one year we have been closely following the troublesome conditions of confinement, due process issues, and serious developmental and medical concerns of those being detained. Many of us have raised these matters in writing and continue to bring concerns to DHS through individual case examples and systemic complaints. We believe your Department has heard many of our concerns but has not fully grasped the serious harm being inflicted upon mothers and children in custody. We believe the only solution to this problem is to end the use of family detention.

The recent announcement by Immigration and Customs Enforcement on family detention does not acknowledge that even detention for a brief period of time, especially in a secure setting, is detrimental to child development. Based upon his 39 years of clinical experience and interviews with families at the Karnes Residential Center, the Dean of Social Work at the University of Texas, Dr. Luis Zayas, found that the children at Karnes are "facing some of the ***most adverse childhood conditions of any children I have ever interviewed or evaluated***."[1] In his affidavit, Dean Zayas concluded that "[d]etention has had serious and long-lasting impacts on the psychological health and well-being" of the families at Karnes and that these impacts were evident in families who were detained for as little as two weeks.

<u>We believe it is undeniable that detention in a secure facility is detrimental to mothers and children and is not reflective of our values as a Nation. Children require special protections and should not be placed in jail-like settings.</u>

We are particularly troubled by the current practice of family detention because the detained population is largely comprised of refugees fleeing violence and persecution in their home countries. We have heard horrific stories of sexual assault, intense physical violence,

---

[1] Declaration of Luis H. Zayas (December 10, 2014) *available at:*
http://chu.house.gov/sites/chu.house.gov/files/documents/Declaration%20of%20Luis%20Zayas_0.pdf

**Exhibit 70 - page 1**

Letter to Secretary Johnson
May 27, 2015
Page 2

kidnapping, and sex trafficking. These stories come not only from adult mothers, but also from young children who have been victims of such abuse. Detaining children who have already been victims of abuse exacerbates past trauma and raises unique and serious problems.

DHS has repeatedly used deterrence as a justification for the existence of family detention, but this theory has not been substantiated with compelling evidence. Moreover, a federal court in the District of Columbia rejected this argument and found that DHS cannot detain asylum-seeking mothers and children from Central America for the purpose of deterring other migrants from entering the country.[2] We agree and believe that the hypothetical recurrence of a future refugee flow does not justify the very real harm being inflicted upon mothers and children in a secure setting.

Lastly, we are disturbed by the fact that many mothers and children remain in family detention despite serious medical needs. In the past year, we have learned of the detention of children with intellectual disabilities, a child with brain cancer, a mother with a congenital heart disorder, a 14-day-old baby, and a 12-year-old child who has not eaten solid food for two months, among many others. Recently, we learned of a three-year-old child at the Berks County Residential Center who was throwing up for three days and was apparently offered water as a form of medical treatment. It was only after the child began throwing up blood on the fourth day that the facility finally transferred her to a hospital.[3] This is simply unacceptable. We cannot continue to hear reports of serious harm to children in custody and do nothing about it.

We must prioritize the health and well-being of mothers and children while also prioritizing our enforcement objectives. Detaining mothers and children in jail-like settings is not the answer. We have an opportunity to do the right thing and are confident that DHS has the capacity to honor our Nation's longstanding commitment both to the protection and well-being of refugee families and to law enforcement and public safety.

Sincerely,

Hon. Zoe Lofgren          Hon. Lucille Roybal-Allard          Hon. Luis V. Gutiérrez

---

[2] RILR, *et al.*, v. Johnson, Legal Documents, (updated Feb. 23, 2015) *available at:* https://www.aclu.org/cases/rilr-v-johnson?redirect=immigrants-rights/rilr-v-johnson.

[3] Ed Pilkington, *Child immigrant detainees: 'There's an overwhelming sadness among them,'* The Guardian, May 12, 2015 *available at:* http://www.theguardian.com/us-news/2015/may/12/immigration-detention-centers-children

**Exhibit 70 - page 2**

Letter to Secretary Johnson
May 27, 2015
Page 3

Hon. Nancy Pelosi, Democratic Leader

Hon. Steny H. Hoyer, Democratic Whip

Hon. John Conyers, Jr.

Hon. Charles B. Rangel

Hon. Marcy Kaptur

Hon. Eliot L. Engel

Hon. Nita M. Lowey

Hon. José E. Serrano

Hon. David E. Price

Hon. Rosa L. DeLauro

Hon. Maxine Waters

Hon. Jerrold Nadler

Hon. Corrine Brown

Hon. Gene Green

Hon. Alcee L. Hastings

Hon. Eddie Bernice Johnson

**Exhibit 70 - page 3**

Letter to Secretary Johnson
May 27, 2015
Page 4

Hon. Carolyn B. Maloney

Hon. Nydia M. Velázquez

Hon. Lloyd Doggett

Hon. Chaka Fattah

Hon. Sheila Jackson Lee

Hon. Elijah E. Cummings

Hon. Danny K. Davis

Hon. Diana DeGette

Hon. Rubén Hinojosa

Hon. Adam Smith

Hon. Gregory W. Meeks

Hon. Lois Capps

Hon. Barbara Lee

Hon. Janice D. Schakowsky

Hon. Steve Israel

Hon. Rick Larsen

**Exhibit 70 - page 3**

Letter to Secretary Johnson
May 27, 2015
Page 5



Hon. Betty McCollum

Hon. Adam B. Schiff

Hon. Linda T. Sánchez

Hon. G. K. Butterfield

Hon. Emanuel Cleaver

Hon. Al Green

Hon. Gwen Moore

Hon. Doris O. Matsui

Hon. Albio Sires

Hon. Yvette D. Clarke

Hon. Steve Cohen

Hon. Keith Ellison

Hon. Henry C. "Hank" Johnson, Jr.

Hon. Jerry McNerney

Hon. Peter Welch

Hon. Donna F. Edwards

**Exhibit 70 - page 4**

Letter to Secretary Johnson
May 27, 2015
Page 6

Hon. Gerald E. Connolly

Hon. Ben Ray Luján

Hon. Chellie Pingree

Hon. Paul Tonko

Hon. Mike Quigley

Hon. Judy Chu

Hon. John Garamendi

Hon. Theodore E. Deutch

Hon. David N. Cicilline

Hon. Eleanor Holmes Norton

Hon. Pedro R. Pierluisi

Hon. Ruben Gallego

Hon. Sander M. Levin

Hon. Jim McDermott

Hon. Xavier Becerra

Hon. Robert C. "Bobby" Scott

**Exhibit 70 - page 5**

Letter to Secretary Johnson
May 27, 2015
Page 7

Hon. Sam Farr

Hon. Earl Blumenauer

Hon. Ron Kind

Hon. Loretta Sanchez

Hon. Michael E. Capuano

Hon. Joseph Crowley

Hon. John B. Larson

Hon. Grace F. Napolitano

Hon. Susan A. Davis

Hon. Michael M. Honda

Hon. Raúl M. Grijalva

Hon. Tim Ryan

Hon. Chris Van Hollen

Hon. Jared Polis

Hon. Bill Foster

Hon. Julia Brownley

**Exhibit 70 - page 6**

Letter to Secretary Johnson
May 27, 2015
Page 8

Hon. Tony Cardenas

Hon. Lois Frankel

Hon. Jared Huffman

Hon. Hakeem S. Jeffries

Hon. Derek Kilmer

Hon. Grace Meng

Hon. Beto O'Rourke

Hon. Raul Ruiz

Hon. Mark Takano

Hon. Juan Vargas

Hon. Robin L. Kelly

Hon. Katherine M. Clark

Hon. Donald Norcross

Hon. Pete Aguilar

Hon. John Lewis

Hon. Frank Pallone, Jr.

**Exhibit 70 - page 7**

Letter to Secretary Johnson
May 27, 2015
Page 9

Hon. James E. Clyburn

Hon. Anna G. Eshoo

Hon. Michael F. Doyle

Hon. James P. McGovern

Hon. Robert A. Brady

Hon. Frederica S. Wilson

Hon. Kathy Castor

Hon. John A. Yarmuth

Hon. Karen Bass

Hon. Cedric L. Richmond

Hon. Janice Hahn

Hon. Suzan K. DelBene

Hon. Donald M. Payne, Jr.

Hon. Alan Grayson

Hon. Dina Titus

Hon. Joaquin Castro

**Exhibit 70 - page 8**

Letter to Secretary Johnson
May 27, 2015
Page 10

_____
Hon. Tammy Duckworth

_____
Hon. Joseph P. Kennedy, III

_____
Hon. Daniel T. Kildee

_____
Hon. Alan Lowenthal

_____
Hon. Michelle Lujan Grisham

_____
Hon. Mark Pocan

_____
Hon. Eric Swalwell

_____
Hon. Marc A. Veasey

_____
Hon. Donald S. Beyer, Jr.

_____
Hon. Bonnie Watson Coleman

_____
Hon. Mark DeSaulnier

_____
Hon. Debbie Dingell

_____
Hon. Ted Lieu

_____
Hon. Mark Takai

_____
Hon. Norma J. Torres

_____
Hon. Gregorio Kilili Camacho Sablan

**Exhibit 70 - page 9**

Letter to Secretary Johnson
May 27, 2015
Page 11

Hon. James R. Langevin

Hon. Brenda L. Lawrence

Hon. Debbie Wasserman Schultz

Hon. Brad Sherman

Hon. Filemon Vela

Exhibit 70 - page 10

# United States Senate
WASHINGTON, DC 20510

June 1, 2015

The Honorable Jeh Johnson
Secretary of the Department of Homeland Security
U.S. Department of Homeland Security
Washington, D.C. 20528

Dear Secretary Johnson:

We appreciate that U.S. Immigration and Customs Enforcement (ICE) acknowledged in its recent announcement that the family detention system is in need of oversight and accountability. However, we believe the announced reforms do not go far enough.  As many of us expressed to you in a letter last October, the prolonged detention of asylum-seeking mothers and children who pose no flight risk or danger to the community is unacceptable and goes against our most fundamental values.

Most of these families have come seeking refuge from three of the most dangerous countries in the world, countries where women and girls face shocking rates of domestic and sexual violence and murder. Treating these victims like criminals is wrong.  The latest data from the United States Citizenship and Immigration Service Asylum Division confirm the misguided nature of this detention policy, showing that 88% of the families detained across the government's three family detention facilities have been found to have legitimate refugee claims by establishing a credible fear of persecution if returned to their home countries.

While these mothers and children wait their turn before an immigration judge, there are many alternatives to detention that are more humane, cost-efficient, and will keep families together. We are deeply concerned by the growing evidence that detention of young children, particularly those who have experienced significant trauma, is detrimental to their development and physical and mental health. That evidence has been reinforced by specific examples of individual children in these detention facilities struggling to eat or sleep, and exhibiting signs of serious depression.

We appreciate all that you have done to improve conditions at family detention facilities, however we do not believe there is any system of mass family detention that will work or is consistent with our moral values and historic commitment to provide safe and humane refuge to those fleeing persecution.  We urge you to end the practice of presumptive detention of families and return to the policy of utilizing detention only as a last resort, when there is a serious public safety or flight risk that cannot be mitigated by alternatives to detention.

Sincerely,

PATRICK J. LEAHY
United States Senator

PATTY MURRAY
United States Senator

**Exhibit 71 - page 11**

The Honorable Jeh Johnson
June 1, 2015

HARRY REID
United States Senator

RICHARD J. DURBIN
United States Senator

CHARLES E. SCHUMER
United States Senator

ROBERT MENENDEZ
United States Senator

MICHAEL F. BENNET
United States Senator

AL FRANKEN
United States Senator

KIRSTEN GILLIBRAND
United States Senator

TOM UDALL
United States Senator

SHELDON WHITEHOUSE
United States Senator

EDWARD J. MARKEY
United States Senator

GARY C. PETERS
United States Senator

DEBBIE STABENOW
United States Senator

MARIA CANTWELL
United States Senator

TAMMY BALDWIN
United States Senator

Exhibit 71 - page 12

The Honorable Jeh Johnson
June 1, 2015

MAZIE K. HIRONO
United States Senator

ELIZABETH WARREN
United States Senator

RICHARD BLUMENTHAL
United States Senator

TIM KAINE
United States Senator

SHERROD BROWN
United States Senator

CORY A. BOOKER
United States Senator

BERNARD SANDERS
United States Senator

JEFFREY A. MERKLEY
United States Senator

BRIAN SCHATZ
United States Senator

RON WYDEN
United States Senator

BENJAMIN L. CARDIN
United States Senator

ROBERT P. CASEY, JR.
United States Senator

**Exhibit 71 - page 13**

The Honorable Jeh Johnson
June 1, 2015

CHRISTOPHER A. COONS
United States Senator

MARTIN HEINRICH
United States Senator

JACK REED
United States Senator

CHRISTOPHER MURPHY
United States Senator

BARBARA A. MIKULSKI
United States Senator

cc:    The Honorable Sarah R. Saldaña, Director of Immigration and Customs Enforcement

**Exhibit 71 - page 14**

# EXHIBIT 72

Home

/ Press

/ Press Releases

/ Press Release

06.24.15

# Comment Of Senator Patrick Leahy (D-Vt.), Ranking Member, Senate Judiciary Committee, On Changes to the Administration's Family Detention Practices

*[Senate Judiciary Committee Ranking Member Patrick Leahy (D-Vt.) issued the following comment Wednesday after Department of Homeland Security Secretary Jeh Johnson announced changes to the administration's practice of detaining immigrant families and children. Senator Leahy has urged the administration to end its family detention policy, which was reinstated last summer in response to the increase in unaccompanied children and families arriving at the southern border.]*

"The practice of detaining immigrant families and children is wrong, and it conflicts with America's values. That is why I have urged the Department of Homeland Security to end this practice, and why I welcome today's announcement. By taking small steps to scale back this bad policy, the administration is acknowledging the reality that a large number of the women and children in prolonged detention are bona fide asylum seekers that have come to the United States fleeing extreme violence and persecution in Central America. Vulnerable asylum seekers should not be treated like criminals. I am cautiously optimistic about the changes announced today, but they must be implemented quickly and only as a first step toward ending the misguided policy of family detention."

*#####*

## Press Contact

### Press Contact

David Carle: 202-224-3693

# EXHIBIT 73



*United States Senator for Nevada*
# HARRY REID

(http://www.reid.senate.gov/es/)

**Reid Sobre La Decisión De La Administración De Revisar Su Política De Detención Familiar**

(https://plus.google.com/u/1/b/117638047383317683088/117638047383317683088/posts)

*mayo 15, 2015 | Press Releases*
(//addthis.com/bookmark.php?v=300)

SHARE

*Washington, D.C. –* El líder demócrata del Senado hizo hoy las siguientes declaraciones después de que Sarah Saldaña, Directora del Servicio de Inmigración y Control de Aduanas (ICE, por sus siglas en inglés), anunciara que su agencia mejorará la supervisión del sistema de detención familiar.

"Aunque me da gusto que la Administración haya reconocido que el sistema de detención familiar necesita supervisión y rendición de cuentas, las reformas propuestas no son suficientes. Ponerle fin a la detención familiar es la única solución. Detener a mujeres y niños que están huyendo de la pobreza extrema, persecución, abuso y violencia es inaceptable y va en contra de nuestros valores fundamentales.

"Hay muchas alternativas a la detención que son humanas, sostenibles y que no socavan la salud mental ni el bienestar de los niños. Trabajaré con la directora Saldaña en los próximos meses para asegurar que estas familias y niños sean tratados con dignidad y respeto".

### ###

*Washington, D.C. –* Nevada Senator Harry Reid released the following statement after Sarah Saldaña, Director of U.S. Immigration and Customs Enforcement (ICE), announced the agency would improve oversight of the family detention system.

"While I welcome the Administration's recognition that the family detention system is in need of oversight and accountability, the proposed reforms are not enough. Ending family detention is the only answer. Detaining mothers and their children who are fleeing extreme poverty, persecution, abuse and violence is unacceptable and goes against our most fundamental values.

"There are many alternatives to detention that are humane, cost-efficient and do not undermine children's mental health and overall wellbeing. I will work with Director Saldaña in the coming months to ensure these families and children are treated with dignity and respect."

### ###

(//addthis.com/bookmark.php?v=300)

SHARE

Inicio (http://www.reid.senate.gov/es/)

English (Inglés) (http://www.reid.senate.gov/)
Español (http://www.reid.senate.gov/es/press_releases/2015-5-15-reid-sobre-la-decision-de-la-administracion-de-revisar-su-politica-de-detencion-familiar)

(https://twitter.com/SenatorReid)    (https://www.facebook.com/SenatorReid)    (https://plus.go

Copyright © 2013 Senador Harry Reid

AILA Doc. No. 15051530. (Posted 5/18/15)

# EXHIBIT 74



United States Senator for Nevada

(http://www.reid.senate.gov)

**Reid Statement On Administration's Decision To Reform Family Detention Policies**

ɪ) 🔗 (https://plus.google.com/u/1/b/117638047383317683088/117638047383317683088/posts) ✉

*June 24, 2015 | Press Releases*

(//addthis.com/bookmark.php?v=300)

*Washington, D.C. –* Nevada Senator Harry Reid released the following statement after Homeland Security Secretary Jeh Johnson announced plans to reform family detention practices:

"I welcome the Secretary's recognition that the long-term detention of families should be discontinued.  The prolonged detention of asylum-seeking mothers and children goes against our long-standing tradition of welcoming those fleeing violence and persecution. Releasing these families on bond or alternatives to detention will ensure that they do not endure any further suffering as they pursue their asylum claims.

"Last month, I co-signed a letter to the Department of Homeland Security calling for the end of the presumptive detention of families. While these reforms are welcomed, ending family detention is the real answer.  The mass family detention of those fleeing violence and persecution is inconsistent with American values. "

(//addthis.com/bookmark.php?v=300)

Facebook
Twitter
Email
Print
Gmail
Favorites
More (#more)

Powered by   AddThis (//www.addthis.com/website-tools/overview?utm_source=AddThis%20Tools&utm_medium=image&utm_campaign=AddThis%20compact%20menu)

Privacy Policy (http://www.reid.senate.gov/privacy-policy)

Contact (http://www.reid.senate.gov/contact)

Email Signup (/newsletter)

English (http://www.reid.senate.gov/press_releases/2015-06-24-reid-statement-on-administrations-decision-to-reform-family-detention-policies)

Español (Spanish) (http://www.reid.senate.gov/es/)

🐦 (https://twitter.com/SenatorReid) 📘 (https://www.facebook.com/SenatorReid) 🔗 (https://plus.goog

Copyright 2013 Senator Harry Reid

**Exhibit 74 - page 17**

# EXHIBIT 75

# The time to end family detention is now: Judy Chu

*By Judy Chu*

DailyNews.com



Daniel Zambrano, of Tijuana, Mexico, holds one of the bars that make up the border wall separating the U.S. and Mexico where the border meets the Pacific Ocean in San Diego. (AP Photo/Gregory Bull)

A hunger strike is a desperate act. For many, it's the last option to change a person's circumstances, no matter the cost to her health. That is exactly what a group of immigrant mothers being detained at Karnes family detention center did just last month.

These women are not criminals. They were not caught sneaking into the country. Tired, scared and hungry, these women and their children came to the border and ran toward guards, hoping for safety.

A vast majority of these women and children escaped the dangerous Northern Triangle region in Central America, many fleeing gender-based or gang violence. In fact, many, if not all, have legal claims to be here. New data shows that more than 75 percent of detained families have demonstrated "credible fear" of persecution in their home countries. They came here seeking protection; instead they face prolonged detention for months at a time.

Until recently, family detention had been largely done away with. That changed with last summer's influx of unaccompanied minors at our Southwest border. Suddenly, the government decided that immigrant women and children could not stay with families or loved ones in communities as they awaited hearings. A year ago we had around 80 beds for families. Today, we have three family detention facilities with nearly 1,000 women and children.

These detentions are the wrong use of our limited federal resources and the wrong way to fix a broken system. Not only are they wrong, they are illegal.

In 1997, a legal settlement was reached in a class action lawsuit (Flores v. Meese) against the former Immigration and Naturalization Services, which set national standards regarding the detention, release and treatment of all children, including those being detained with a parent in INS custody. The Flores settlement, which now extends to the Department of Homeland Security, requires juveniles to be held in the least restrictive setting, and that the facilities be non-secure and licensed to care for minors. When detention is not required, juveniles must be released from custod to their family.

But our growing family detention regime has turned Flores on its head. Women and children are held in unlicensed and secure facilities, they face prohibitively high bond amounts for release and they continue to be detained even when they pose no flight or security risk. All the while, there is significant evidence that detention in jail-like facilities re-traumatizes victims of violence, and children in particular. The stress and uncertainty of detention has led children to experience weight loss and express suicidal thoughts. Experts have found that detention significantly compromises their cognitive development and contributes to the development of chronic illness.

Advertisement

Exhibit 75 - page 18

Page 1 of 2

Jul 23, 2015 08:53:09PM MDT

http://www.dailynews.com/opinion/20150529/the-time-to-end-family-detention-is-now-judy-chu

The truth is, there is no way to detain families humanely. This was recently reaffirmed by U.S. District Court Judge Dolly Gee in L.A. in a lawsuit to enforce the Flores settlement. In a tentative ruling, Gee said children and mothers can't be held in detention facilities around the country due to their violation of the 1997 settlement. I couldn't agree more.

The purpose of immigrant detention is to keep people from fleeing. But many of these families may be eligible for asylum and want their day in court. They aren't going anywhere.

We must establish better options that suit a moral country. There is no reason that families should not be able to stay together in safe conditions while waiting for their asylum claims to be heard. Instead, for those who do not pose a flight risk, DHS should implement community-based alternatives to detention that cost much less and have been proven to be effective. Immigration and Customs Enforcement just last week announced it would increase oversight and improve conditions of family detention facilities, but this fails to address the fundamental issues: family detention can't be fixed.

Despite the physical and mental costs to their children and themselves, mothers who remain in detention are fighting for their immigration cases. The law is on their side. It's time for our government to be as well, time to end family detention once and for all.

*Rep. Judy Chu, D-Pasadena, represents the 27th Congressional District.*

# EXHIBIT 76



# Smith Statement on Family Detention

May 15, 2015   | Press Release

*Congressman Smith released the following statement in response to U.S. Immigration and Customs Enforcement's (ICE) announced action on family detention centers:*

"ICE's announced action to improve oversight and conditions at family detention centers misses the point.  It is wrong and irresponsible for our government to continue detaining children and their mothers.  We must not ignore that jailing children can have devastating impacts on a child's development and cause serious psychological harm to these families.   We have less expensive and more humane alternatives to detention to monitor families while still adequately managing their cases.  Our government must focus on utilizing these alternatives, and I will continue to advocate for policies that do so.  We need to get out of the business of detaining children and their mothers."



**Exhibit 76 - page 20**   1/1

# EXHIBIT 77

FOR IMMEDIATE RELEASE:
May 14, 2015

CONTACT:
Juan_Pachon@menendez.senate.gov<mailto:Juan_Pachon@menendez.senate.gov>

Menendez on Family Detention Announcement

WASHINGTON, DC – U.S. Senator Bob Menendez (D-NJ) today issued the following statement after U.S. Immigration and Customs Enforcement (ICE) announced a series of changes to improve oversight of family detention centers for immigrant families.

"The announcement that the Administration will implement enhanced oversight for family detention centers after the drastic expansion of family detention over the past year is deeply disappointing. The Administration's efforts simply do not go far enough and are an unacceptable response to adequately address the grave concerns of detaining women and children. This is a wrong response to the serious concerns raised by faith leaders, human rights experts, immigration groups and Members of Congress. Suggesting an Advisory Committee is a timid reaction to a deeply-seeded problem of treating women and children like criminals.

"It is unacceptable to keep family detention as an automatic default for immigrant families. This policy is a disservice to those that are fleeing violence and do not represent a flight risk or pose any danger to our national security. The fact remains that we must stop acting like there are practical reasons for locking up women and children, especially when the negative mental health repercussions are abysmal.

"Our efforts should be directed at apprehending real criminals or those who pose a national security threat to the United States. Instead we are blindly funneling families into privately-owned detention centers and paying for it with taxpayer dollars.

"Put simply, there is no humane way to detain women and children. Detention should be used only as a last resort and I will continue to do everything I can to get the Administration to rethink this misguided policy and change course."

Limiting the use of family detention centers has been one of Senator Menendez's priorities. In October 16, 2014, he was part of a group of 10 Senators who sent a letter to Secretary Johnson<http://www.menendez.senate.gov/download/family-detention-letter-2014> expressing concerns over a decision to build a new 2,400 bed immigration detention facility for women and children in Dilley, Texas.  More recently, in a March 31, 2015 to leaders of the Senate Subcommittee on Homeland Security, Senator Menendez requested specific bill language and report language on the exorbitant use and cost of family detention centers.

###

**Exhibit 77 - page 21**

# EXHIBIT 78

iOS app    Android app    More                                                          Desktop Alerts    |    Log in    |    Create Account

July 23, 2015



 **Elise Foley**    Become a fan
elise@huffingtonpost.com

# Democratic Members Say Reforming Family Immigrant Detention Isn't Enough

Posted: 06/24/2015 2:19 pm EDT  |  Updated: 06/24/2015 3:59 pm EDT



WASHINGTON -- Under intense scrutiny from congressional Democrats and human rights groups, Department of Homeland Security Secretary Jeh Johnson announced plans Wednesday to make reforms to the family immigrant detention system to shorten the period women and children are detained.

If he was hoping to quell criticism, though, it didn't seem to work.

Eight Democratic House members who visited family detention centers in Texas on Tuesday told reporters soon after Johnson's announcement that they appreciate the response, but don't think it goes far enough.

"I understand that DHS is making some initiatives to try to soften the situation in these two detention centers and others, but quite frankly, I don't care how much lipstick you put on it," Rep. Raúl Grijalva (D-Ariz.) said at a press conference on Wednesday. "The fact of the matter is that it is a prison for women and children."

The Texas family immigrant detention centers in Dilley and Karnes City were created last year to supplement an existing facility in Berks County, Pennsylvania, after a surge in apprehensions along the border. Nearly 70,000 family units, usually mothers from Central America traveling with children, came to the U.S. in the 2014 fiscal year, and many of them are seeking asylum.

Critics say that holding mothers and children for prolonged periods, even in nice facilities, is highly damaging to their mental and physical health.

Johnson announced the new policies will be aimed at limiting detention times. He said they will process women and children more quickly by conducting credible fear interviews "within a reasonable timeframe" to determine whether the women and children are eligible for asylum or other relief.

**Exhibit 78 - page 22**

Because some workers have been granted bond to leave the facility, and others are unable to pay, Johnson said immigration and Customs Enforcement had established new criteria to set bond amounts "at a level that is reasonable and realistic, taking into account ability to pay, while also encompassing risk of flight and public safety." A spokesman for ICE declined to provide further details about what those criteria will entail.

"I have reached the conclusion that we must make substantial changes in our detention practices with respect to families with children," Johnson said in a statement. "In short, once a family has established eligibility for asylum or other relief under our laws, long-term detention is an inefficient use of our resources and should be discontinued. "

It was a step in the right direction for the Democrats on the trip, who were scheduled to meet with Johnson on Wednesday afternoon, although they still want family immigrant detention limited further.

Democrats who made the trip said they witnessed women and children who were highly distressed about being detained, and that following the visit they were even more resolved to have the practice of long-term family detention ended. Along with Grijalva, the members on the trip were Democratic Whip Steny Hoyer of Maryland; Rep. Luis Gutiérrez of Illinois; Reps. Joaquín Castro and Sheila Jackson-Lee of Texas; and Reps. Zoe Lofgren, Judy Chu and Lucille Roybal-Allard of California.

They said they were asked to hand over their cell phones and cameras for the visit to the detention centers, but refused. One member took video inside the Dilley facility -- called the South Texas Family Residential Center -- of women and children chanting outside in a plea for help. They said they met with women who said they had been yelled at and demeaned by guards, and that children who were ill were being told to just drink more water. Although there are amenities like playgrounds in the facilities, members said they weren't being used.

As of Tuesday, according to an Immigration and Customs Enforcement spokesman, there were 461 people in the Karnes facility and 2,043 people at the Dilley facility. The Berks center, which members did not visit on the trip, held 89 people.

ICE announced other reforms to family detention in May, which were also met with skepticism. Some of the changes promised were to review the cases of all people held for longer than 90 days and to stop using detention as a deterrent to more people coming to the U.S.

Those reforms may not be being implemented fully, critics have said. The members said that many women they spoke to in the facilities had been inside well past 90 days and hadn't heard anything about the review policy.

The Democrats said Johnson's announcement was appreciated as a move in the right direction, but that they will push him for more details and to go further by limiting family detention to the bare minimum needed to process cases before releasing women on bond or their own recognizance.

"Our goal isn't to fix the place," Gutiérrez said at the press conference. "We shouldn't have over 1,000 children detained in a prison camp."

Republicans in Congress criticized the announcement, saying that releasing mothers and children seeking asylum would encourage more people to come to the U.S. House Judiciary Committee Chairman Bob Goodlatte (R-Va.) condemned the move, arguing that once released, families wouldn't show up for their court dates.

"By refusing to detain unlawful immigrants until their claims are proven legitimate, the Obama Administration is practically guaranteeing that they will disappear into our communities and never be removed from the United States," he stated.

**MORE:** Immigrant Family Detention  Family Immigrant Detention  Immigration  Border Crisis  Berks  Dilley Detention Center  Karnes Family Detention  Karnes County Detention Facility  South Texas Residential Center

## Conversations

**5 Comments**                                                                      Sort by  Top ▼

   Add a comment...

   **Holly Barker**
To future asylum seekers, you know that you will be detained in a family detention center. If you don't like that idea, then seek asylum in another country. Otherwise we can only think that you want to take advantage of the freebies paid for by the American taxpayer no matter how they are delivered.

Like · Reply · 👍 11 · Jun 24, 2015 12:21pm

**Barbara Clayton** · Sacramento, California
Why does this administration feel that it has to change detention housing just because the illegal aliens don't like where and how they are placed. Most of them will not return for court if released.

**Exhibit 78 - page 23**

# EXHIBIT 79

June 15, 2015

President Barack Obama
The White House
1600 Pennsylvania Avenue, N.W.
Washington, DC 20500

Dear Mr. President:

We, the undersigned human service providers, faith, civil rights, labor, and other policy and advocacy organizations, write to call for an end to your administration's practice of family detention.

This month marks the one-year anniversary of your administration's announcement to expand family detention for refugee mothers and children fleeing from extreme violence in Central America. As of June 2015, the administration will operate almost 3,700 family detention beds—a 4,300% increase from early June 2014, when only 85 beds were in existence.

Your administration closed the Hutto Family Detention Center in 2009 after litigation and reports of the trauma of incarceration. For years, families seeking asylum met their legal requirements without the harm of detention.  Now, a federal judge has ruled tentatively that detaining mothers and children violates the 1997 Flores v. Reno settlement, with negotiations taking place now with the Department of Justice to attempt to satisfy the court's concerns. Another court ruling in February blocked the use of detention of asylum-seekers as a means of deterring future migrants.

Reverting to mass detention despite the body of research and legal proceedings demonstrating its harm is immensely troubling to us.  Though Immigrations and Customs Enforcement (ICE) announced enhanced oversight of conditions of confinement inside its family detention facilities on May 13, 2015, these measures cannot fix the underlying wrong of detaining children and mothers seeking asylum. The only way for the administration to address the inhumanity of family detention is for ICE to release these families to the community, under individually determined terms of release or supervision, while their immigration cases make their way through the courts.

Over the past year, overwhelming evidence has shown again that there is no humane way of detaining families. First-hand accounts from detained mothers and media reports confirm that detention is psychologically damaging and inappropriate for children and victims of trauma. At a press conference led by House Members on May 21, 2015, one formerly detained mother spoke of how her son, who was detained with her for six months, said that he wanted to jump off the roof of the facility and kill himself to be free. Similarly, detained mothers at Karnes County Residential Center wrote to you earlier in May, stating that "what worries us the most is that the say that they are going to throw themselves off the top of the building because they won't let us leave. Other adolescents say that they prefer to tie a sheet around their necks and kill themselves because they no longer want to be detained here….We have been despised, humiliated, deceived, and rejected." In March 2015, one Honduran mother, who had fled death threats from gangs,

1

**Exhibit 79 - page 24**

attempted to commit suicide while detained with her four-year-old daughter at the South Texas Family Residential Center, because she could not afford to pay bond.

After interviewing 10 mothers and 23 children detained at the Karnes facility, Luis Zayas, Dean of the School of Social Work at the University of Texas at Austin concluded that the "psychological traumas experienced by these mothers and children – in their home countries, during their travel to the United States, and after their arrival in the United States when they found themselves locked up in immigration detention facilities – will require years of mental health services to alleviate.  The ongoing stress, despair, and uncertainty of detention compromises children's intellectual and cognitive development and contributes to the development of chronic illnesses.  Institutionalized children and the threats they face are similar to those of trauma, and result in recurrent, distressing memories, nightmares, dissociative reactions, prolonged psychological distress, and negative alterations in cognition."  Dean Zayas, based on his interviews and his extensive knowledge of the scientific literature concerning trauma, stated in a legal filing "…I can unequivocally state that the children in the Karnes facility are facing some of the most adverse childhood conditions of any children I have ever interviewed or evaluated.  Untold harm is being inflicted on these children by the trauma of detention."[1]

Moreover, though children and families require specialized medical, educational, and legal support, there have been reports that those in family detention facilities are not receiving the care they need. Detention already prohibits due process by cutting off access to legal support that families need to navigate the extremely complex U.S. immigration laws. Media reports and accounts from advocates suggest that many facilities are not only neglecting their duties to provide these services, but they may be barring advocates and volunteers from entering facilities.

Yet, DHS continues to support family detention, despite recommending against the detention of mothers, children, and vulnerable populations to its field offices. A November 20, 2014 memorandum on "Policies for the Apprehension, Detention and Removal of Undocumented Immigrants" states grounds for alternatives to detention when asylum-seekers are primary caregivers of children or an infirm person, suffering from serious mental or physical illness, disability, or other conditions, including status as a victim in a criminal proceeding or other humanitarian factors.  Many of the mothers and children in family detention facilities are victims and have fled horrific sexual assault, intense physical violence, kidnapping, and sex trafficking. In fact, a very high percentage of these families who have had the opportunity to present their stories to either an immigration judge or an asylum officer have been granted asylum or have been found to have a credible fear of persecution.

We urge you to listen to the thousands of voices that have already called on the administration to end this practice for humanitarian and legal reasons. On June 1, 33 U.S. senators wrote to Department of Homeland Security (DHS) Secretary Jeh Johnson urging him to "end the practice of presumptive detention…" That followed a May 27 letter to Secretary Johnson signed by 136 House members stating that the "Department…has not fully grasped the serious harm being

---

[1] Luis H. Zayas, Dean of the School of Social Work, University of Texas at Austin, Declaration of his competency as an expert witness, filed December 10, 2014.

Exhibit 79 - page 25

inflicted upon mothers and children in custody," and that "the only solution to this problem is to end the use of family detention."

We strongly agree.  Please end family detention now.

Sincerely,

9to5
AFL-CIO
African American Ministers In Action
AIDS Alliance for Women, Infants, Children, Youth & Families
Alliance of Baptists
American Federation of State, County and Municipal Employees (AFSCME)
American Friends Service Committee
American Immigration Lawyers Association
American Psychological Association
Americans for Democratic Action (ADA)
America's Voice Education Fund
Asian Pacific American Labor Alliance, AFL-CIO (APALA)
ASISTA Immigration Assistance
Bend the Arc Jewish Action
Campaign for Youth Justice
Center for Effective Government
Center for Law and Social Policy
Children's Advocacy Institute
Children's Defense Fund
Children's Leadership Council
Christian Church (Disciples of Christ) Refugee and Immigration Ministries
Church World Service
Coalition on Human Needs
Coalition to Abolish Slavery & Trafficking (CAST)
Community of St. Francis, Province of the Americas
Conference of Major Superiors of Men
Congregation of the Humility of Mary
Daughters of Charity - USA
Disciples Justice Action Network
Disciples Women
Ecumenical Poverty Initiative
Evangelical Lutheran Church in America
Farmworker Justice
First Focus
Franciscan Action Network
Franciscan Sisters of the Atonement, JPIC Office
Friends Committee on National Legislation
General Council of the Adrian Dominican Sisters
Global Women's Strike

**Exhibit 79 - page 26**

HIV Prevention Justice Alliance
Holy Spirit Missionary Sisters - USA - JPIC
Ignatian Solidarity Network
Immigrant Legal Resource Center
In The Public Interest
International Women's Leadership Association
Jesuit Conference of the United States and Canada
Joint Immigration Venture
Justice and Peace Committee of the Sisters of St. Francis of Philadelphia
Latino Commission on AIDS
Leadership Conference of Women Religious
Leadership Team of the Felician Sisters of North America
Lutheran Immigration and Refugee Service
Maryknoll Office for Global Concerns
Mennonite Central Committee U.S. Washington Office
Missionary Servants of the Most Holy Trinity
MomsRising
NAFSA: Association of International Educators
National Advocacy Center of the Sisters of the Good Shepherd
National Association of Social Workers
National Coalition Against Domestic Violence (NCADV)
National Immigrant Justice Center
National Immigration Forum
National Immigration Law Center
National Justice for Our Neighbors
National Korean American Service and Education Consortium
National Latin@ Network: Casa de Esperanza
National LGBTQ Task Force Action Fund
National Low Income Housing Coalition
National Network to End Domestic Violence
National Viral Hepatitis Roundtable
National Women's Law Center
Network for Environmental & Economic Responsibility of United Church of Christ
NETWORK, A National Catholic Social Justice Lobby
NOW
Office of Peace, Justice and Ecological Integrity/Sisters of Charity of Saint Elizabeth
Pax Christi USA
Peace and Justice Office of the Congregation of Notre Dame
PICO National Network
Presbyterian Church (U.S.A.)
Provincial Council of the Clerics of St. Viator (Viatorians)
Racial and Ethnic Health Disparities Coalition
Religious Sisters of Charity
RESULTS
SC Ministry Foundation
Sinsinawa Dominican Sisters

**Exhibit 79 - page 27**

Sisters of Bon Secours, USA
Sisters of Charity Federation
Sisters of Charity of Nazareth Congregational Leadership
Sisters of Charity, BVM
Sisters of Mercy of the Americas
Sisters of the Holy Spirit and Mary Immaculate
United Methodist Church, General Board of Church and Society
United States Ursulines of the Roman Union
United We Dream
Voices for Progress
Workers Defense Project
YWCA USA

**Exhibit 79 - page 28**

# EXHIBIT 80



**Lutheran Immigration and Refugee Service**

# June 24, 2015 STATEMENT — LIRS Statement regarding proposed DHS reforms to family immigration detention policies

FOR IMMEDIATE RELEASE

Press Contact: Miji Bell

MBell@lirs.org, (410) 230-2841

WASHINGTON, DC) — Today, Department of Homeland Security Secretary Jeh Johnson announced several important reforms to the inhumane practice of immigration family detention. This action came just prior to a press conference called by eight members of the House of Representatives to discuss their tour of two Texas family detention facilities earlier this week. In recent weeks, 136 members of the House of Representatives and 33 members of the Senate sent letters to Secretary Johnson asking the Obama Administration to end the practice of detaining mothers and children who have fled to the United States seeking refuge. Over 6,300 individuals have been booked into a family detention facility since July 2014; some families have now been detained for over a year.

Lutheran Immigration and Refugee Service is encouraged that the Obama Administration is now recognizing that the practice of family detention is an inefficient use of federal resources. Detaining families is also inherently inhumane. While the measures Secretary Johnson is proposing may make detention stays shorter for some, LIRS remains concerned that detention of mothers and children who have sought protection in the U.S. will still result in unnecessary and enduring spiritual, psychological and emotional suffering.

"It is not against the law to arrive at our borders seeking asylum in the United States," said Linda Hartke, President and CEO of LIRS. "These are mothers and their babies fleeing terrible and unfathomable violence and evil who deserve to be comforted and welcomed by our great nation."

"LIRS remains firm in our position that there is no humane way to detain families for any length of time in secure facilities. We implore the Administration to explore lower-cost, more humane options such as case management and community-based release programs that provide support, achieve the government's goals, and cost tax-payers significantly less money.

"There is no justification for jailing mothers and children who come to our country seeking protection," says Brittney Nystrom, LIRS director for advocacy. "We will not be satisfied with changes or patches. This inhumane and damaging practice needs to end."

###

**Exhibit 80 - page 29**

Founded in 1939, Lutheran Immigration and Refugee Service is the second largest refugee resettlement agency in the United States. It is nationally recognized for its leadership advocating with refugees, asylum seekers, unaccompanied children, immigrants in detention, families fractured by migration and other vulnerable populations. Through more than 75 years of service and advocacy, LIRS has helped over 500,000 migrants and refugees rebuild their lives in America.

Exhibit 80 - page 30

# EXHIBIT 81

March 26, 2015

Honorable Barack H. Obama
President
United States of America
The White House
1600 Pennsylvania Avenue, N.W.
Washington, D.C. 20500

Mr. President:

As faith leaders representing churches, synagogues, and faith-based organizations in the United States who are deeply committed to upholding this country's moral leadership to protect children and the sanctity of the family, we call on you to end the harsh policy of family detention and employ alternatives to detention where deemed necessary. We believe this practice to be inhumane and harmful to the physical, emotional, and mental well-being of this vulnerable population.

We also believe that it is inappropriate and unjust to seek to deter anyone, especially a woman and her children, from fleeing violence in their homeland to seek safe haven in the United States. A recent decision by the U.S. District Court in Washington, D.C., which issued an injunction halting the detention of families, agreed with this assessment, concluding that a strategy of deterrence does not warrant the deprivation of individual liberty.

As people of faith, we are guided by admonitions to care for and protect children. Studies have shown that detention has a harmful psychological effect on children, in which they grow despondent, lose weight, and do not advance in their intellectual or emotional growth. Detention also undermines family bonds and parental authority. Moreover, children and their parent(s) have already experienced trauma on their journey, with many of the women having endured sexual violence. Placing survivors of violence in detention only adds to their trauma and sense of insecurity. It also subjects them to possible further emotional or physical abuse.

These families are not a threat to our communities—they pose no risk to our safety and have committed no crimes. They are themselves fleeing real forms of terror, with a majority having valid asylum claims. While in detention they have less ability to access counsel to help them with their claims, leaving them without due process protections. Their detention also hinders the ability to gather evidence of their persecution, diminishing their chances of obtaining protection.

Instead of incarcerating these vulnerable families, we urge you to reconsider the need to detain them and release them on their recognizance or explore other alternatives, such as placement in a community-based case management program.

Mr. President, detaining mothers and babies who come to this country in search of refuge from violence and abuse is morally troubling. The Bible is very clear—we are called to welcome the stranger. We ask you to consider whether you are prepared for your legacy to include the

**Exhibit 81 - page 31**

purposeful detention of innocent mothers and babies in furthering an ineffective policy of deterrence that violates fundamental tenants of our faiths and the American ideal of providing freedom and refuge to the persecuted. The incarceration of vulnerable mothers and children fleeing violence in their home countries is a stain on the record of this Administration.

We urge you to reverse course on this policy and implement alternatives for all families in immigration detention which are humane and uphold the human rights of this vulnerable population.  Our faith communities are ready and willing to welcome and assist families seeking refuge.

Sincerely,

**U.S. Catholic Bishops**

Most Reverend Gustavo Garcia-Siller
Archbishop of San Antonio, Texas

Most Reverend Thomas Wenski
Archbishop of Miami, FL

Most Reverend Nicholas DiMarzio
Bishop of Brooklyn, NY

Most Reverend Eusebio Elizondo
Auxiliary Bishop of Seattle, WA

Most Reverend Gerald Kicanas
Bishop of Tucson, AZ

Most Reverend Mark Seitz
Bishop of El Paso, Texas

Most Reverend Jaime Soto
Bishop of Sacramento, CA

Most Reverend James Tamayo
Bishop of Laredo, Texas

Most Reverend Anthony B. Taylor
Bishop of Little Rock, AR

Most Reverend John C. Wester
Bishop of Salt Lake City, UT

**Evangelical Lutheran Church in America**

Presiding Bishop Elizabeth A. Eaton, ELCA

Bishop Abraham Allende, Northeastern
Ohio Synod, ELCA

Bishop Jon Anderson, Southwestern
Minnesota Synod, ELCA

Bishop Jim Arends, La Crosse Area Synod,
ELCA

Bishop Jeff Barrow, Greater Milwaukee
Synod, ELCA

Bishop Tracie L. Bartholomew, New Jersey
Synod, ELCA

Bishop Leonard Bolick, North Carolina
Synod, ELCA

Bishop Terry Brandt, Eastern North Dakota
Synod, ELCA

Bishop Dave Brauer-Rieke, Oregon Synod,
ELCA

Bishop Michael Burk, Southeastern Iowa
Synod, ELCA

Bishop Claire S. Burkat, Southeastern
Pennsylvania Synod, ELCA

**Exhibit 81 - page 32**

Bishop Jessica Crist, Montana Synod, ELCA

Bishop Steven Delzer, Southeastern Minnesota Synod, ELCA

Bishop Suzanne Dillahunt, Southern Ohio Synod, ELCA

Bishop Robert L. Driesen, Upper Susquehanna Synod, ELCA

Bishop Ralph Dunkin, West Virginia-West Maryland Synod, ELCA

Bishop Jim Dunlop, Lower Susquehanna Synod, ELCA

Bishop R. Guy Erwin, Southwest California Synod, ELCA

Bishop Murray D. Finck, Pacifica Synod, ELCA

Bishop Mary Froiland, South-Central Synod of Wisconsin, ELCA

Bishop William Gafkjen, Indiana-Kentucky Synod, ELCA

Bishop Michael Girlinghouse, Arkansas-Oklahoma Synod, ELCA

Bishop Julian Gordy, Southeastern Synod, ELCA

Bishop Richard H. Graham, Metropolitan Washington, D. C. Synod, ELCA

Bishop Roger Gustafson, Central States Synod, ELCA

Bishop Wolfgang Herz-Lane, Delaware-Maryland Synod, ELCA

Bishop Mark Holmerud, Sierra Pacific Synod, ELCA

Bishop Rick Hoyme, Northwest Synod of Wisconsin, ELCA

Bishop Richard Jaech, Southwestern Washington Synod, ELCA

Bishop Kevin S. Kanouse, Northern Texas-Northern Louisiana Synod, ELCA

Bishop Donald P. Kreiss, Southeast Michigan Synod, ELCA

Bishop Marcus C. Lohrmann, Northwestern Ohio Synod, ELCA

Bishop Brian Maas, Nebraska Synod, ELCA

Bishop John Macholtz, Upstate New York Synod, ELCA

Bishop Gerald Mansholt, Central Synod of Wisconsin, ELCA

Bishop James Mauney, Virginia Synod, ELCA

Bishop Wayne Miller, Metropolitan Chicago Synod, ELCA

Bishop Mark Narum, Western North Dakota Synod, ELCA

Bishop Rodger Prois, Western Iowa Synod, ELCA

Bishop Michael Rhyne, Allegheny Synod, ELCA

Bishop Robert Rimbo, Metropolitan New York Synod, ELCA

Bishop Michael Rinehart, Texas-Louisiana Gulf Coast Synod, ELCA

**Exhibit 81 - page 33**

Bishop S. John Roth, Central/Southern Illinois Synod, ELCA

Bishop Craig Satterlee, North/West Lower Michigan Synod, ELCA

Bishop Robert Schaefer, Florida-Bahamas Synod, ELCA

Bishop Ann Svennungsen, Minneapolis Area Synod, ELCA

Bishop Steve Talmage, Grand Canyon Synod, ELCA

Bishop Ray Tiemann, Southwestern Texas Synod, ELCA

Bishop Steven Ullestad, Northeastern Iowa Synod, ELCA

Bishop B. Kirby Unti, Northwest Washington Synod, ELCA

Bishop Shelley Wickstrom, Alaska Synod, ELCA

Bishop Lawrence R. Wohlrabe, Northwestern Minnesota Synod, ELCA

Bishop Gary Wollersheim, Northern Illinois Synod, ELCA

Bishop Herman Yoos, South Carolina Synod, ELCA

Bishop David B Zellmer, South Dakota Synod, ELCA

**Lutheran Church - Missouri Synod**

Rev. John R Denninger, President, Southeastern District, LCMS

Rev. Kurtis D. Schultz, President, Southern District, LCMS

Rev. Dr. Larry Stoterau, President, Pacific Southwest District, LCMS

Rev. Gregory S. Walton, President, Florida-Georgia District, LCMS

**National Hispanic Evangelical Coalition**

Dr. Gabriel Salguero
President, National Hispanic Evangelical Coalition
Pastor, Lambs Church

**Jewish Leaders**

Robert Cohen, Executive Director, Jewish Community Relations Council of Metropolitan Detroit

Rabbi Michael E. Feinberg, Executive Director, Greater New York Labor-Religion Coalition

Rabbi Eli Freedman

Rabbi Jonathan D. Klein, Executive Director, Clergy and Laity United for Economic Justice (CLUE-LA)

Rabbi George Stern

**Christian Reformed Church North America**

Dr. Steve Timmermans, Executive Director, Christian Reformed Church North America

**United Church of Christ**

Rev. Geoffrey A. Black, General Minister and President, United Church of Christ

Rev. M. Linda Jaramillo, Executive Minister, Justice and Witness Ministries, United Church of Christ

**Exhibit 81 - page 34**

Rev. James Moos, Executive Minister, Wider Church Ministries, United Church of Christ

Rev. J. Bennett Guess, Executive Minister, Local Church Ministries, United Church of Christ

Exhibit 81 - page 35

# EXHIBIT 82



**AMERICAN
IMMIGRATION
LAWYERS
ASSOCIATION**

# AILA: Little Meaningful Change in ICE Announcement on Family Detention

*AILA Doc No. 15051462 | Dated May 14, 2015*

**FOR IMMEDIATE RELEASE**

Thursday, May 14, 2015

**CONTACTS:**

George Tzamaras        Belle Woods
202-507-7649           202-507-7675
**gtzamaras@aila.org  bwoods@aila.org**

WASHINGTON, DC - Leslie A. Holman, President of the American Immigration Lawyers Association (AILA), responded to the announcement of plans by Immigration and Customs Enforcement (ICE) for "enhanced oversight for family residential centers" with the following statement:

"After months of detailing the many failures of the family detention apparatus by AILA and other stakeholders, after months of ICE ignoring those failures and neglecting to act, the announcement is, at its core, almost meaningless. Yes, better oversight of operations and greater access for desperately needed pro bono legal services are long overdue. However, the rest of this announcement is lipstick on a pig.

"ICE announced that now they will work with stakeholders 'to listen and discuss their concerns regarding family residential centers.' Are you kidding me? The concerns have been expressed exhaustively. Are they saying that now they are going to finally listen? If so, why did they issue this 'more of the same' release?

"Mothers trying to find refuge from violence for their children should never have been detained in the first place. Yet they are treated as though they are threats to public safety or national security. One example is Melida and her four-year-old daughter Estrella, locked up for nine months and counting; Estrella's health has deteriorated under the stress of detention and she has lost weight and is chronically ill. They have had the review process that this announcement says will be extended to others. The result? They remain in indefinite detention. And they are not alone in this. How can anyone take seriously the announced review process when it already has proven worthless?

**Exhibit 82 - page 36**        1/3

"Will an agency that has fought for detention without bond for victims of domestic abuse be able to 'ensure the designated bond amount continues to be appropriate'? That implies that they were appropriate in the first place, yet when finally forced by a court to issue bonds, ICE has issued them in amounts that are so unattainable as to be equivalent to no bond. It has only been through lengthy immigration court processes that bonds have been brought within reason.

"This new announcement does almost nothing to address the fundamental issue that there is no humane way to detain families. Instead of five new action items, the Administration should turn instead to smart solutions and end family detention once and for all. No innocent child and courageous mother should waste away in a jail."

###

*The American Immigration Lawyers Association is the national association of immigration lawyers established to promote justice, advocate for fair and reasonable immigration law and policy, advance the quality of immigration and nationality law and practice, and enhance the professional development of its members.*

## AILA Offers Reality Check on ICE Announcement

Read about the key aspects of the new plans and the difference between what ICE says and what AILA knows from our ongoing efforts to end family detention.

*Cite as AILA Doc. No. 15051462.*

American Immigration Lawyers Association 1331 G Street NW, Suite 300 Washington, DC 20005

Copyright © 1993-2015 American Immigration Lawyers Association.

# EXHIBIT 83



*For Immediate Release*

**Government Shows No Signs of Backing Down on Family Detention**

**May 14, 2015**

**Washington D.C.** - Yesterday, Immigration and Customs Enforcement (ICE) announced efforts to "enhance oversight" to help ensure that families are detained in "safe and humane facilities" and in doing so demonstrated no signs of reevaluating its misguided family detention policy. The American Immigration Council welcomes efforts to increase access to legal counsel, improve detention conditions, and provide for more supervisory review of custody determinations, but yesterday's announcement misses the mark. It is simply unlawful, inhumane, and unnecessary to detain children and mothers on a large scale, and the government must begin taking steps to roll back its strategy of detaining those fleeing violence and persecution.

This week, the American Immigration Council, along with other groups, toured the newly built family detention center in Dilley, Texas. As of Tuesday, 776 children and women were detained there, increased from an initial capacity of 480. Construction on the 50-acre property is scheduled to be completed by the end of the month, and ICE will have the capacity to detain 2400 individuals there. The scale is unprecedented, and as the population has grown, the need for legal services for the families has rapidly overwhelmed pro bono resources.

The CARA Family Detention Pro Bono Project is working onsite to meet with as many women as possible to help them navigate the complex immigration process. But as the population grows exponentially week after week—and given the sheer volume and speed at which legal proceedings are taking place—many women have no opportunity to even talk to a lawyer (let alone work with a lawyer to prepare) before their legal proceeding are underway or even completed.

The administration seems unable or unwilling to acknowledge that these women and children are fleeing undeniable violence in their home countries and that we

**Exhibit 83 - page 38**

should be treating them as refugees. We must honor our obligations under international law and must ensure that asylum seekers are afforded basic due process rights, including the right to counsel. Installing additional "oversight mechanisms" will not remedy the injustices taking place in our rapidly expanding family detention system. The only viable option is for the government to end the shameful practice of detaining these families and redirect the time and resources of the agency toward release or, when necessary, the investment in viable, less expensive alternatives to detention that are safer,  effective and more humane.

### 

For more information, contact Wendy Feliz at wfeliz@immcouncil.org or 202-507-7524.

---



You have received this email through your subscription to the American Immigration Council's email list. If you did not subscribe, or would no longer like to receive email updates, unsubscribe here.

 



Exhibit 83 - page 39

# EXHIBIT 84

# Texas advocates throw cold water on ICE's promises to 'fix family detention'

*Federal officials say they'll try harder ahead of a legal decision that many think is likely to dismantle the policy of detaining refugee families*

(Austin, TEXAS) — Texas immigration advocates and attorneys today derided an Immigration and Customs Enforcement (ICE)'s announcement that it will "enhance oversight" at the notorious detention camps in Texas and Pennsylvania for asylum-seeking families.

Since last summer, momentum has been building to end the detention of immigrant mothers and children in secure facilities in Karnes City, Texas; Dilley, Texas; and Berks County, Pennsylvania. In July 2014 more than 100 faith, immigrant rights, and civil rights and civil liberties organizations sent a letter calling on Homeland Security officials to reconsider plans to put families and children into prison-like detention centers. On May 2, more than 500 people shut down Texas Highway 85 as they marched to the Dilley, Texas family detention camp to protest the policy of locking up refugee women and children and call for the closure of all family detention camps. Most recently, the U.S. Conference of Catholic Bishops issued a statement on May 11, calling for a transformation of the immigrant detention system, including an end the use of detention for vulnerable groups including families and asylum seekers.  The Bishops statement followed an outpouring of opposition to family detention from many faith organizations.

Important strides have been made on the legal front as well. Most recently, at the end of April 2015, a federal judge issued a preliminary decision to enforce the 1997 Flores settlement, which set standards for the care of children in INS custody. The 1997 settlement states clearly that children must be held in open, licensed childcare facilities and have the right to released first to their parents. Many observers believe that if the Flores settlement were fully enforced, it would dismantle the entire system of immigrant family detention in secure facilities operated by for-profit prison corporations. Parties are currently in the process of negotiating a settlement based on the judge's preliminary decision and a final negotiation is scheduled for the end of this month.

Advocates in Texas roundly rejected the notion that the family detention camps can be improved and instead reiterated their call for the immediate closure of the for-profit facilities in Karnes City and Dilley, Texas as well as the one in Berk County, Pennsylvania.

"While families and little children suffer in these detention camps, private prison corporations are profiting from every bed and every crib," said Bob Libal, executive director of Grassroots Leadership in Austin.  "Family detention cannot be 'fixed.' The only fix is to end the policy of locking up families and children, to close the detention camps permanently, and to never again return to this shameful policy."

Texans United for Families, the community group that organized the massive protest in Dilley, Texas on May 2, remains committed to seeing family detention ended for good.

"All detention is immoral and should be illegal. Perhaps seeing children held against their will, prohibited from leaving an enclosed facility, is the most glaring and sobering form of this imprisonment. "Enhancing oversight" is the equivalent of condoning the existence of detention centers and reveals a focus on the wrong issues," said Rakhi Agrawal, Texans United for Families member.

**Exhibit 84 - page 40**

Astrid Dominguez, Advocacy Coordinator of the ACLU of Texas said, "The fact remains that detaining vulnerable children and their mothers in federal detention centers is simply wrong and inhumane. These are women and children who are fleeing unspeakable violence and trauma, yet we continue to lock them up despite clear evidence that jail conditions profoundly harm children and all survivors of violence. The only right thing for the government to do is close these facilities and invest in the far less costly alternatives that exist."

Attorneys who have seen the conditions in family detention first hand for many months, joined advocates in their assertions that detention cannot be made more palatable with tweaks of administrative policy. They too, say that closing the camps is the only answer.

"Locking up refugee children is immoral, unconscionable, unconstitutional, and unwise.  Every credible psychologist, social worker, and social science researcher knows that detention causes severe damage to children, damage that is long-lasting and likely permanent.  You cannot "fix" family detention; you cannot make it pretty or nice or tolerable.  Family detention must end," said Virginia Raymond, an Austin-based attorney who has been representing several families at Karnes.

Professor Barbara Hines, attorney, retired law professor and the former director of the University of Texas at Austin School of Law Immigration Clinic, added, "Now that ICE has abandoned its ill-thought and illegal use of deterrence as a pretext to lock up mothers and children, it should release families immediately as there is no reason to detain asylum seekers. ICE's press release is merely a post-hoc litigation stance in light of the Flores litigation.  Nothing in their press release would put ICE in compliance with the requirements of the Flores settlement that requires that children be held in nonsecure, state-licensed facilities and that they be released as quickly as possible. ICE facilities are not safe and humane.  In fact, it is clear based on my experience at the Karnes detention center and the abuses that have occurred there, that there is no humane or moral way to lock up families in for-profit detention facilities. ICE has ignored stakeholders before and during the almost one year of this shameful practice of locking up families. I do not think that ICE is sincerely interested in engaging with advocates to end family detention."

A group of women who have been on multiple hunger strikes inside Karnes to protest their lengthy detention sent a letter to President Obama early this week where they explained why detention itself is so harmful to them and their young children.

"We have cases of reasonable or credible fear. We do not feel that we are in conditions to be able to do our final case hearings while we are locked up because we are in poor mental health. We suffer from constant headaches, we can't sleep for thinking about so many problems. For these reasons, many mothers loose [sic] when they go to their final hearing with the judge. Our children don't eat, they don't want to go to school, and they feel bad when they see hundreds of families come and go from this detention center. What worries us the most is that the [sic] say that they are going to throw themselves off the top of the building because they won't let us leave. Other adolescents say that they prefer to tie a sheet around their necks and kill themselves because they no longer want to be detained here. We come fleeing from violence in our home countries, seeking refuge and protection here, but we never thought that they were going to treat us like this. We have been despised, humiliated, deceived, and rejected," they wrote.

###

Cristina Parker
Immigration Projects Director
Grassroots Leadership
office: 512-499-8111
cell: 915-497-2747
www.grassrootsleadership.org

Exhibit 84 - page 41

# EXHIBIT 85





May 14, 2015

# Reforms to Family Detention System Are Insufficient

Like ⟨ 2 ⟩    Tweet ⟨ 8 ⟩    g+1 ⟨ 0 ⟩         2

**RELATED CAMPAIGNS & TOPICS**
**Immigration Detention (/topics/immigration-detention)**, **Refugee Protection (/topics/refugee-protection)**

*Washington, D.C.*—Human Rights First said today that proposed reforms to the family immigration detention system by U.S. Immigration and Customs Enforcement (ICE) are insufficient to address human rights concerns.  The organization urges the Obama Administration to immediately abandon its misguided policy of detaining families and children.

"Reforming the family detention system is like putting a bandaid on a gaping wound," said Human Rights First's Eleanor Acer, who toured the Dilley Family Detention Facility in Texas this week. "The fact is that family detention is a critically flawed program; putting mothers and children seeking U.S. protection into immigration detention is an affront to American ideals of liberty and due process, as well as international human rights law."

Last year, U.S. immigration authorities adopted a policy of denying and opposing release from detention for asylum seekers based on a desire to deter others from migrating. The administration continues to try to justify this rationale in federal court, defending its approach of detaining asylum seekers for months even when they are otherwise eligible for release on bond and present no risk of flight based on their individual circumstances.

"ICE has proposed a review process for any families detained beyond 90 days, but detaining children and their families for months is simply unacceptable," said Acer. "In many cases we're talking about women and small children, some of whom have been detained for up to ten months. The bottom line is that asylum seekers should not generally be detained, and immigration detention is not appropriate for children and their families."

The Department of Homeland Security is slated to spend $345.3 million in fiscal year 2016 to fund the escalation of family detention. This amount is in addition to the roughly $2 billion already spent on immigration detention each year. The Dilley facility, run by Corrections Corporation of America, will cost the U.S. government over $300 a day per person held in the facility, amounting to roughly $260 million each year.

By contrast, community-based support programs and other alternative measures that are proven to secure appearance for immigration hearings and deportation are much more fiscally prudent, costing only 17 cents to $17 per person a day. These effective and cost-efficient programs enjoy support across the political spectrum.

**Exhibit 85 - page 42**

An asylum seeker's best hope of protection is in having a lawyer to represent him or her in immigration court proceedings. Yet it is much more difficult for immigrants to secure legal counsel when they are held in immigration detention. Without an attorney, a mother has almost no chance of receiving asylum. According to recent TRAC data, 98.5 percent of lawyer-less women with children were deported, even when the government had determined they had a credible fear of persecution if returned home. With a lawyer, their ability to prove their cases increases significantly.

Rather than continuing its flawed policy of detaining women and children fleeing violence and persecution, the Obama Administration should:

- End the detention of families and all attempts to base detention determinations on the desire to send a message to others;
- Remove all impediments to counsel, allow pro bono attorneys to use the tools they need to facilitate legal representation and provide funding for the representation of detained immigrants; and,
- Use case management and community based alternatives to detention in cases where additional measures are needed to assure appearance.

For more information or to speak with Acer, contact Corinne Duffy at DuffyC@humanrightsfirst.org (mailto:DuffyC@humanrightsfirst.org) or 202-370-3319.

## OUR IMPACT

"Human Rights First's approach is smart, strategic, and principled."
— *Secretary of State Hillary Rodham Clinton*



**Ensuring the International Olympic Committee Respects Equality**

Exhibit 85 - page 43

# EXHIBIT 86

Mohammad Abdollahi

Cell: 210-544-7811

Media@RaicesTexas.org
May 14, 2015

# Obama Administration Policy on Family Detention Continues to Violate the Law & Flores Settlement

The Obama Administration's newly announced enhanced oversight of family detention fails to meaningfully address the lifelong impact detention has had, and will continue to have, on vulnerable children and mothers fleeing violence.  Since beginning the practice of family detention in July of 2014, ICE has dismissed every concern about family detention as lies and rumors. If family detention was in fact the rosy image that has been painted by ICE, there would be no need for these remedial "enhancements."

"The timing of this announcement conspicuously coincides with court-ordered settlement negotiations for implementation of the Flores protections to children in family detention. The government's statement appears intended to influence the settlement process and takes no actions to actually protect children seeking refuge." Jonathan Ryan, Executive Director of the Refugee and Immigrant Center for Education and Legal Services.

"Now that ICE has abandoned its ill-thought and illegal use of deterrence as a pretext to lock up mothers and children, it should release families immediately as there is no reason to detain asylum seekers. ICE's press release is merely a post-hoc litigation stance in light of the Flores litigation.  Nothing in their press release would put ICE in compliance with the requirements of the Flores settlement." Professor Barbara Hines, attorney, former director of the University of Texas at Austin School of Law Immigration Clinic.

"The Obama administration is feeling public pressure about its policy of indefinite imprisonment of children, and instead of releasing the children, has decided to double down. ICE's oversight guidelines change nothing about the government's commitment to keep imprisoning child refugees." David Bennion, attorney representing families in the Berks Detention Camp in Pennsylvania.

Of the 300 children and mothers currently held at the Karnes Detention Camp in South Texas, at least 130 have been in custody for more than 90 days. At least 20 families at the facility have been held since it first opened in August of 2014. Many of these families have already undergone 90 day custody re-determinations, and ICE has always said that they are not eligible for release because of the Administration's deterrence strategy. **If the Administration is no longer using these families to send a message of deterrence to others, then why are they still behind bars?**

Exhibit 86 - page 44

"The only solution here is for the immediate end to the jailing of young children and mothers. We call for an immediate end to family detention." Jonathan Ryan.

###

*RAICES mission is to provide justice to immigrant families by providing them with access to pro-bono legal services. Since August, RAICES has been coordinating the Karnes Family Pro-Bono Project. Through the Project we have helped over 400 families detained inside Karnes and know first-hand the harm these children face.*

Exhibit 86 - page 45

# EXHIBIT 87

NATIONAL IMMIGRANT JUSTICE CENTER

HEARTLAND ALLIANCE PROGRAM

Toggle Navigation

REGISTER   LOGIN

HOME | ABOUT | PROGRAMS | CLIENT SERVICES | LITIGATION | POLICY & RESEARCH | ATTORNEY RESOURCES | IMMIGRANT RESOURCES | PRESS ROOM | HOW TO HELP

# Obama Administration Concedes that Detaining Mothers and Children Who Seek Asylum is Harmful and Unnecessary, Still Plans to Detain Them

June 24, 2015

Today's statement from U.S. Secretary of Homeland Security Jeh Johnson calling for "substantial" changes to family detention practices is a step in the right direction. The policy has potential to significantly reduce the long-term detention of families who have established their eligibility for protection under U.S. laws. If adequately enforced, the new policy could begin to roll back some of the more harmful effects of the careless and inhumane family detention system the Obama administration has built over the past 12 months.

However, the new Department of Homeland Security (DHS) policy would still require some asylum seekers to pay bonds to be released, even though women and children who flee persecution rarely have access to such resources. Where families, who pose no flight risk, are unable to pay even the lowest bond amounts, the administration must offer other forms of release.

Since last summer, the U.S. government has increased the detention of mothers and children by more than 4,000 percent. Nearly all of these women and children are fleeing rampant violence and persecution in their home countries; 88 percent of families in detention have passed their preliminary screenings to demonstrate their fear of return to their home countries. Yet some have been detained for nearly a year as they await their asylum hearings. Studies have shown that even short detention stays cause long-term negative effects for children and trauma survivors.

We agree with Secretary Johnson that families must receive education about their rights and responsibilities in the U.S. immigration system. We also recognize, however, that the best way to ensure that families understand their rights and can participate in the asylum process is to provide them access to legal services. As long as the administration continues to hold immigrants in massive

**PRESS CONTACT:**

Contact Tara Tidwell Cullen, director of communications, at (312) 660-1337 or by email.

TAKE ACTION ●

DONATE ●

## MORE PRESS RELEASES

**Filter NIJC press releases by topic.**

search

**Exhibit 87 - page 46**

obstacles in securing legal counsel.

and remote detention centers such as those in Karnes and Dilley, Texas, mothers and children will continue to face significant

NIJC will continue to monitor the administration's use of immigration detention, including the bond amounts families are given and the number of people who are actually released under the new policy, and hold the administration accountable to protect the rights of all people who come seeking safety and security.

Tags: policy Asylum Detention

National Immigrant Justice Center
208 S. LaSalle St., Suite 1300, Chicago, IL 60604

© 2011-2013 National Immigrant Justice Center | Website by WireMedia

**Exhibit 87 - page 48**