1   David J. Kaloyanides SBN 160368
    E: djpkaplc@me.com
2   **DAVID J.P. KALOYANIDES**
    **A PROFESSIONAL LAW CORPORATION**
3   15338 Central Avenue
    Chino, CA 91710
4   T: (213) 623-8120/F: (213) 402-6292

5   Attorney for Third Party
    Bryan Johnson
6

7

8               UNITED STATES DISTRICT COURT

9        FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                  WESTERN DIVISION

11  JENNY L. FLORES, *et al.*,          )   Case No.: 2:85-CV-04544 DMG (AGRx)
                                        )
12              Plaintiffs,             )   SUPPLEMENTAL EXHIBITS OF
                                        )   LETTERS IN SUPPORT OF BRYAN
13     vs.                              )   JOHNSON'S RESPONSE TO ORDER TO
                                        )   SHOW CAUSE
14  JEH JOHNSON, *et al.,*              )
                                        )   Date:        August 24, 2015
15              Defendants.             )   Time:        10:00 a.m.
                                        )   Courtroom:   Spring Street 7
16                                      )         Hon. Dolly M. Gee
                                        )
17  _____

18       Third party Bryan Johnson, by and through his counsel of record in this case,

19  David J. Kaloyanides, hereby files for the Court's consideration this Supplemental

20  Exhibits of Letters of Support to his Response to Order to Show Cause.

21       Attached hereto are the following Exhibits, numbered sequentially from Mr.

22  Johnson's prior submission:

23       Exhibit 9:   Letter of Professor Theo Liebmann

24
                              _____
25  LETTERS IN SUPPORT OF BRYAN JOHNSON'S RESPONSE TO OSC RE
                              CONTEMPT
26                                    1

Exhibit 10:   Letter of Lory D. Rosenberg

Exhibit 11:   Letter of Carol Anne Donohoe

Exhibit 12:   Letter of Jennifer Durkin

Exhibit 13:   Letter of Patrick Young

Exhibit 14:   Letter of Gayle Oshrin


Respectfully submitted,


Date:  August 19, 2015

David J. Kaloyanides
Attorney for Third Party
Bryan Johnson

LETTERS IN SUPPORT OF BRYAN JOHNSON'S RESPONSE TO OSC RE CONTEMPT

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

EXHIBIT 9

24

25

LETTERS IN SUPPORT OF BRYAN JOHNSON'S RESPONSE TO OSC RE
CONTEMPT

26



MAURICE A. DEANE SCHOOL OF LAW

HOFSTRA ⧫ LAW

HOFSTRA LAW CLINIC

108 Hofstra University    tel: 516-463-5934
Hempstead, NY 11549       fax: 516-463-5937
                          lawclinic@hofstra.edu
                          law.hofstra.edu

Theo Liebmann
*Director of Clinical Programs*

Stefan H. Krieger
*Director Emeritus of
Clinical Programs*

ATTORNEYS-IN-CHARGE

Linda Galler
*Professor of Law
Federal Tax Clinic Practicum*

Michael Haber
*Associate Clinical Professor
Community and Economic
Development Clinic*

Stefan H. Krieger
*Professor of Law
Law Reform Advocacy Clinic*

Paige Lescure
*Assistant Clinical Professor
Health Law & Policy Clinic*

Theo Liebmann
*Clinical Professor
Youth Advocacy Clinic*

C. Benjie Louis
*Visiting Associate Clinical Professor
Disaster Recovery Clinic*

Lewis R. Mandel
*Special Professor of Law
Federal Tax Clinic Practicum*

Elizabeth Nevins-Saunders
*Assistant Clinical Professor
Criminal Justice Clinic*

Deborah Rebore
*Special Professor of Law
Juvenile Justice Clinic Practicum*

Lauris P. Wren
*Clinical Professor
Asylum Clinic*

Patrick Young
*Special Professor of Law
Immigration Clinic Practicum*

August 10, 2015

The Honorable Dolly M. Gee
United States District Court
Central District of California

Re: Order to Show Cause / Bryan Johnson

Dear Judge Gee:

I am Director of Hofstra Law School's Clinical Program, and I regularly teach Lawyer's Ethics. I am writing this letter regarding Bryan Johnson and the Order to Show Cause issued by Your Honor.

I first met Mr. Johnson while he was a student at Hofstra. I did not know him well at the time, as he was in a different clinic from mine. Since Mr. Johnson's graduation, however, I have come to know him quite well professionally. Our Youth Advocacy Clinic handles cases of unaccompanied minors, and when Long Island recently began to see an exponential growth in the number of immigrant children and families who needed legal representation, our paths crossed frequently.

Mr. Johnson's small firm is without doubt one of the best and most selfless providers of low bono services to indigent immigrant children and families on Long Island. Mr. Johnson is an extraordinarily diligent and passionate advocate. He treats his clients with the utmost respect and care. He collaborates generously with other attorneys – sharing his experiences, expertise, and opinions freely. And he is constantly striving to find ways to better serve the interests of his individual clients and the immigrant population generally. It is a true boon to have someone as skilled and selfless as Mr. Johnson in the professional community here on Long Island.

That said, there is no doubt that Mr. Johnson crossed a line when he did not honor the confidentiality order from your Court. While there is no excuse for that action, it seems clear that the impetus behind Mr. Johnson's breach was almost certainly his feeling that he was

4

doing what he thought was best for his client, and not a desire to insult the Court in any way.  More important, and to Mr. Johnson's great credit, he is embarrassed by what he did, and he obviously recognizes that his actions were neither appropriate nor respectful of the Court.

Mr. Johnson is a young attorney, and is already turning into a leader in many positive ways.  I truly believe that he will learn much from his experience in this matter, and that neither a contempt finding nor a referral to the New York State Bar is necessary for him to understand why his actions were improper.

If you need any further information about Mr. Johnson, please do not hesitate to contact me. I can be reached at 516 463 4736 or by email at lawtsl@hofstra.edu

Sincerely,

Theo Liebmann

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

EXHIBIT 10

LETTERS IN SUPPORT OF BRYAN JOHNSON'S RESPONSE TO OSC RE CONTEMPT

6



LORY D. ROSENBERG Attorney & Counselor at Law

IDEAS Consultation and Coaching, 14015 Berryville Rd, Darnestown, MD 20874, 301-990-9257, lory@ideaswithlory.com

August 5, 2015

The Honorable Dolly M. Gee
United States District Court
Central District of California
312 North Spring Street
Los Angeles, CA 90012

Re: CV 85-4544 DMG (AGRx) Jenny L. Flores, et al. v. Jeh Johnson, et al.
Order to Show Cause for Bryan Johnson, Esquire

Dear Judge Gee:

I write to you in support of attorney Bryan Johnson to urge that you refrain from referring this matter to the State Bar of New York or imposing other discipline on Mr. Johnson.

I have been involved in the practice of immigration law and immigration litigation for 38 years and served as an appointed Member of the United States Department of Justice, Board of Immigration Appeals between 1995 and 2002. I am a member of the bars of the Commonwealth of Massachusetts and the District of Columbia, a member of the American Immigration Lawyers Association, the Federal Bar Association, and a former member of the National Association of Women Judges and the International Association of Refugee Law Judges. I was an adjunct professor of Immigration Law and Policy and Refugee and Asylum Law at American University, Washington School of Law for 7 years, and am the former director of the Legal Action Center of the American Immigration Council and the Defending Immigrants Partnership of the National Legal Aid and Defender Association, the founder and co-director of the legal representation and pro bono programs of Centro Presente, a Cambridge, MA. Central American Refugee Center. I presently consult on complex cases/appeals, and provide practice development, professional support, training, coaching and mentoring to immigration attorneys.

Mr. Johnson is a young immigration lawyer whom I have come to respect highly for his excellent work representing minor children and families who are desperately seeking special juvenile status, asylum protection and relief from removal. Together with his partner, Mr. Johnson's diligence and tireless advocacy on behalf of his clients sets a standard of practice that is admirable and provides leadership to other attorneys in the field, generously sharing his growing expertise with his immigration colleagues. He has reached out to me on a number of occasions seeking my expertise in matters involving the practices and jurisprudence of the Board of Immigration Appeals. We have engaged in mutual pro bono work on behalf of some of the hundreds of young mothers who have come to the United States in 2014 and 2015 with their infants, toddlers and older children seeking protection from violence and persecution only to face imprisonment in DHS jails.

1



As I am sure you are aware, this is an unduly detained population for whom individual pro bono triage has been critically necessary. Yet, the impressive response of immigration attorneys from all over the country volunteering to represent these families has not been enough to prevent or stop the serious mental and physical trauma they are experiencing in prison-like detention facilities.  Mr. Johnson has been in the trenches day and night in his attempt to secure liberty, fair hearing processes and competent representation for as many of these mothers and children as possible, and it has been an uphill battle over a prolonged period of time.  He has regularly updated other immigration attorneys through a social media group he founded, expressing a range of emotion from incredulity to frustration, to utter pain in reporting on such "collateral" matters as a toddler's loss of 1/3 of his body weight due to untreated illness. Although I have never mentioned this to Mr. Johnson, who is a proud and loving father, I often could not help but picture Mr. Johnson's own little daughter, who just turned 3 years old, when he wrote with such anguish about the mistreatment of the little children detained in DHS jails.

As a former member of the Board of Immigration Appeals, I observed a range of attorney misconduct or negligence before our immigration courts, and I had occasion to participate in ruling on practices that were deemed objectionable or violated the Board's disciplinary rules and code of conduct. I understand the purpose of such rules and the need to impose sanctions in order to preserve the professionalism and the authority of the Court.  I certainly do not condone Bryan Johnson's action in violating the Court's order of confidentiality by disclosing the temporary settlement agreement as he did; at the same time, I do not believe Mr. Johnson intended any disrespect for the Court.  His disclosure to the media was the rash, ill-considered act of a dedicated young attorney who likely was emotionally and physically exhausted by the stress of his work with traumatized and endangered refugee families at the time of the breach.

I urge the Court to view Mr. Johnson's violation in the broader context of his commendable mission, dedicated legal advocacy, and the absence of any ill-intent on Mr. Johnson's part in breaching the confidentiality order of the Court.  I feel confident that Mr. Johnson's breach of the Court's trust was an unfortunate mistake of judgment, which will not be repeated.  Mr. Johnson more than realizes his error and has suffered an adverse impact on his reputation and relationships in the immigration law community as the result of his improper disclosure.  Mr. Johnson's passion, dedication, and the actual contribution he is making in the lives of the immigrants and refugees he represents, to the immigration bar, and to the community as a whole is immeasurable. We need him providing the advocacy and representation that is so sorely needed by the  minor children and families he represents.

Sincerely,

*s/ Lory D Rosenberg, Esquire*

Lory D Rosenberg, Esquire
IDEAS Consultation and Coaching

Empowering Successful Immigration Lawyers

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

EXHIBIT 11

LETTERS IN SUPPORT OF BRYAN JOHNSON'S RESPONSE TO OSC RE CONTEMPT

10

**Carol Anne Donohoe, Esquire**
**539 Court Street**
**Reading, PA  19601**
**(610) 370-7956**
**Fax: (610) 743-8626**

August 6, 2015

The Honorable Judge Dolly Gee
U.S. District Court, Central District of California
312 North Spring Street
Los Angeles, CA 90012

Re:    Attorney Bryan Johnson

Dear Judge Gee:

I write this letter in regard to attorney Bryan Johnson's Order to Show Cause.  I am an immigration attorney who practices in Reading, Pennsylvania, only a short distance from the Berks Family Residential Center (hereinafter "Berks" or the "detention center"). As of last summer, I have represented untold numbers of asylum seeking mothers, fathers, and children held at the Berks detention center. I am also a consultant on the *Flores* negotiations and I signed a confidentiality agreement. Although I do not condone Attorney Johnson's actions in violating the confidentiality agreement, I can certainly understand his frustration and his reasons for doing so.

I have been practicing immigration law in Berks County for the past four years. Prior to June of last year I had never had occasion to represent anyone at Berks. Those who were detained there were seldom in need of attorneys because they were released quickly on parole once processed.  That changed after June of last year. I was encouraged to visit the detention center around that time by two other attorneys, Bridget Cambria and Jackie Kline, who had been contacted by a detainee there. What they (and I) found once we arrived were scores of mothers and fathers lined up to meet with us, holding their files in their hands, desperate to find an attorney who could help them. Many had already had at least one, sometimes two, Master Calendar Hearings without any representation. They were handed I-589 Asylum applications in English and told to fill them out prior to their next court date. Needless to say, none of the detainees could read the forms. Some were illiterate even in their own countries.

Many of the mothers were told they were ineligible for bond because they had prior removals. I was informed by countless mothers that they had told CBP about their fear of

return the first time they arrived in the United States, only to be removed back to their home country. Out of desperation, they turned right back and fled again to the United States. Due to an arbitrary change in policy, the prior removal made them ineligible for bond and subject to mandatory detention. This meant they would have to fight their case while detained. Initially, the Merits Hearings were set so soon after the Master Calendar Hearing that it was extremely difficult to obtain supporting documents from their home country and to have sufficient time to meet with my clients to obtain their full story. These women were traumatized and I, at first, was a stranger. It is the human condition to not want to tell a stranger about the most personal, horrifying moments of your life. Yet, we were requiring them to do just that, not only to their attorney but then in front of a male immigration judge and, most often, a male government trial attorney. The questions asked of these women in their Merits Hearings were devastatingly insensitive and, I believe, cruel.

Let there be no mistake that this administration intentionally set a policy of "rocket dockets" for these families. The immigration judge specifically said to me that he was being pressured to schedule Merits Hearings within 60 days of the Master. He expressed frustration at the due process violations inherent in such a policy but felt that his hands were tied.

What followed from that initial visit was the most stressful, most anger-inducing, yet most rewarding year of my legal career. It was stressful because I represented a number of detainees who otherwise would not have had a lawyer and took them through their application process, Merits Hearings, and appeal process, if necessary.

My year was anger-inducing because every time I thought the Obama administration, the courts, ICE, and the detention center staff themselves could not go any lower in their abominable treatment of these detained families, they proved me wrong. In short, there was an institutional sexual assault witnessed by mothers and children at the facility. The response by the County and ICE was to fire the guard involved and change the clothing policy so that no "tight" or provocative clothing was allowed. This policy pertained to children as young as 5 years old. At one point a girl was sleeping at night in shorts, woken up, and told to change because her attire was against the clothing policy. There were innumerable egregious cases of medical neglect. We attorneys would get desperate calls and emails from the mothers that their children were extremely sick and the staff was not helping them. They didn't know where else to turn.

Lastly, my year was the most rewarding because I was granted the opportunity to get to know these extraordinary mothers, fathers, and children who had already faced extreme violence and trauma in their home countries only to be met with detention, not shelter, in the United States. These were women who had been shot at by gangs, young girls who had been raped with a gun to their head, women who had been sexually and physically abused by their spouses. Now they had to steel themselves for the day to day uncertainty of detention, not knowing if or when they might be deported, not being able to answer their children's questions about why they could not leave. One mother said to me "this place makes you crazy. I don't know if I will ever be normal again after leaving here." This is a woman who was chased in her car and shot at by gang members. The bullets ended up

killing a passenger on a passing bus. Yet, it was the time spent at Berks that she said would
forever traumatize her.

It was against this backdrop that we received notice of the tentative ruling in *Flores*. About
one month after, our long term clients were called down and told by the immigration
officers that they should have the individualized custody determinations they should have
been receiving all along. They were told they had less than a week to provide documents in
support of these custody reviews and that they would be given a determination by June 30,
2015. They were also told that it was likely that the longest held detainees (several were
detained a year or longer) would be released. Everyone was hopeful. We attorneys
scrambled to get the necessary documents together and submit them to ICE. We advised
mothers who were giving up and ready to accept deportation to hold on, that a change was
coming. However, we also warned them that promises had been made before by ICE that
had been broken. Prior to June 30th, the teachers helped the children make t-shirts that they
all signed in anticipation of their departure.

Sadly, we were reminded once again that DHS/ICE does not act in good faith when one of
the mothers, who had submitted her custody review documents, was awakened a couple of
nights later and deported with her 12 year old daughter. This led the other mothers to believe
that, rather than signing acknowledgement of their custody review documents, they had
actually been tricked into signing their removal papers.

On June 30th, at 5:00 in the afternoon, the mothers were given their custody determinations.
These reviews were boiler-plate forms with only the name and Alien Registration Number
changed. The majority of the detainees (and all of the longest term) were denied bond. This
denial occurred after Jeh Johnson's statement that those who passed their CFI/RFI
interviews would be released.  All of those mothers had met that criteria.

These events were taking place at the same time the *Flores* negotiations were going on. As a
consultant, it was maddeningly frustrating to see the lack of progress and lack of willingness
on the government's part to reach an agreement that would correspond with the dictates of
*Flores*. It was discouraging to see Plaintiff's counsel in *Flores* agree to further extensions
when we knew of the very real damage that these delays were causing. No doubt counsel
believed the government was negotiating in good faith. Nevertheless, there were several
times during the negotiations when I also was tempted to resign so that I could fully
advocate for my clients who remained detained despite the government's knowledge that
their detention was illegal. That is why I understand why Attorney Johnson took the steps he
felt were necessary to best advocate for his client. As attorneys, we are required to be
zealous advocates. What could be more devastating for one of these mothers than to be
removed back to the very country that she fled in fear? A conscientious, compassionate
attorney would feel the need to do everything in his or her power to prevent that injustice,
particularly knowing that legal avenues exist to prevent it but are not being brought to light.

I apologize for the length of this letter but I felt it necessary to give a history of the many
instances where this administration, through DHS/ICE, has not acted in good faith. In fact, it
seems that DHS/ICE has deliberately prolonged the negotiations in order to cover their

tracks on paper while, on the ground, doing as much harm to these mothers and children as ever. It is in that context that Attorney Johnson made his decision. I ask that you take that into consideration when determining his consequences.

Please do not hesitate to contact me if you have any questions.

Sincerely,

Carol Anne Donohoe

Carol Anne Donohoe, Esq.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

EXHIBIT 12

LETTERS IN SUPPORT OF BRYAN JOHNSON'S RESPONSE TO OSC RE CONTEMPT

15


DURKIN & PURI LLP
immigration law

August 11, 2015

The Honorable Dolly M. Gee
United States District Court
Central District of California

Re: Order to Show Cause/ Bryan Johnson

Dear Judge Gee:

I am writing this letter in support of Bryan Johnson. I have been exclusively practicing immigration law for over 15 years with a focus on removal defense. For the past eight years, my pro bono work has included running a monthly court docket for unaccompanied minors in the New York Immigration Court and placing those cases with pro bono counsel. In addition, in September 2014, I spent a week providing pro bono representation "on the ground" at the Artesia Detention Center when it was still in operation and I continue to represent many of the families that I encountered during my work there. I am currently serving as Secretary of the New York Chapter of the American Immigration Lawyers Association (the largest chapter in the nation with over 1,600 members); however, I speak in my private capacity.

I first met Bryan approximately four years ago when he volunteered at our Children's Docket. I was incredibly excited when I heard that he and his partner were opening an office in Suffolk County, New York and that they, in addition to their staff, spoke Spanish. For many years, the bulk of the children on our Children's Docket have been based in Long Island, New York which is comprised of Suffolk and Nassau Counties. There is an incredible dearth of access to representation in those counties and it can be an immense expense for families to travel into New York City multiple times over the course of representation in order to meet with an attorney. From his first time volunteering at our docket, Bryan agreed to take on a pro bono case. After that, he became my "go to" person when I had any case that involved an age-out emergency for a child and he never said no to my request. I would say that, in all, he has taken approximately seven cases off of our docket. As a comparative yardstick, other than myself, I don't think any attorney in the history of our project has ever accepted more than two cases off of our docket. Further, Bryan doesn't stop at providing legal representation; he helps his clients access social services, find therapy as needed, and is a source of immense emotional support to his clients and their families. In my opinion, this type of holistic approach in these kinds of cases is absolutely essential and something that very few attorneys factor in to their representation. Bryan has also been selfless in his

Jennifer Durkin* | Richa Puri

MANHATTAN: 150 Broadway, Suite 1001, New York, NY 10038 | PH: (646) 612-7555 | WEBSITE: www.durkin-puri.com
WHITE PLAINS: 50 Main Street, Suite 1000 White Plains, NY 10606 | PH: (914) 682-2022 | WEBSITE: www.durkin-puri.com
*Admitted in California and the District of Columbia only. Practice limited to federal immigration law.

16

willingness to mentor attorneys who take on pro bono cases for immigrant children; even during the past nine months when his commitment to fighting against family detention has consumed him. All of this has made Bryan an invaluable resource to me and to the New York immigration bar as a whole.

Bryan has been invited to speak at no fewer than three CLE conferences in the past nine months, including a local meeting, an annual symposium, and a national conference attended by more than 3,500 immigration attorneys. His presentations have all focused on representing children and detained families who are in immigration proceedings and I have no hesitation in stating that he is regarded nationally as one of the foremost experts on the topic.

I strongly feel that the area of immigration law in which Bryan and I specialize is fraught with stressors and, for those of us who view this as a calling and a passion rather than simply a niche market, is often incredibly emotionally draining, frustrating and enraging. I have not done even a small percentage of the representation or advocacy that Bryan has done for detained families over the past year, but there is no question that my emotional and mental coping mechanisms have been severely impacted by the things that I have seen at Artesia and in speaking to my children and family clients. It is a relentless onslaught of stories recounting trauma, persecution, neglect, abuse, and violence; sadly, so often, these indignities and struggles have continued once these clients are ensnared in the family detention system our Government has instituted.

I do believe that Bryan made an unfortunate error in judgment when he released the information that Your Honor had directed be sealed; however, I can honestly say that I am completely confident that his decision was not made with any disrespect for you and was only fueled by his understandable, genuine and all-consuming outrage about this Administration's family detention policies. He has seen firsthand on countless occasions over the past year the inhumanity with which these mothers and children are being treated by our country that sets such great store in its reputation as a beacon for the desperate. I know that Bryan regrets that his zeal and passion against family detention led him to make an unwise decision in this matter. He has made it clear that he regrets his actions; not only due to the consequences of being brought up on charges, but due to the lack of perspective that caused him to make the choice in the first place.

I greatly respect Bryan, however, he is still a young lawyer and I believe that this debacle has impressed upon him the need for him to have a good mentoring circle including those who have practiced for a lot longer than he has and who have experience in these areas who can provide guidance and encourage restraint as needed. I want to emphasize once again though that in my opinion, Bryan's regrettable decision was not based even remotely by a feeling of contempt towards the Court but with driven by stunned disillusionment and shock towards what the Administration is allowing to take place among the most vulnerable amongst us.

I cannot emphasize enough what an enormous resource Bryan is in the New York immigration community. Since he began his practice, he has been an invaluable asset in

the fight on behalf of unaccompanied minors and, over the past year, he has been fearless
and devoted with all of his heart to the plight of detained families. I would entreat the
Court to limit the consequences of his actions to an admonishment so that he remains
able to perform the essential work he provides to these two very fragile and easily re-
victimized populations on Long Island, a particularly underserved and overly in need
geographic region. I can say without reservation that I would never hesitate to refer
Bryan a case or to seek his guidance on a case involving unaccompanied minors or
family detention as I view him as an expert in these areas and I know unequivocally that
he will be a tireless and devoted advocate for all of his clients.

I think it is so admirable for someone with a private practice and a young family to care
for and spend countless hours of every single day fighting family detention with the
passion and zeal that Bryan does. I also think it is worth noting that in addition to the
numerous cases he has taken on pro bono for the children's docket I administer, I know
for a fact that every case in which he has represented clients at any of the family
detention centers over the past year has been on a pro bono basis. This is an admirable
and impressive commitment that he has made and is a testament to Bryan as a lawyer and
as a person. Bryan detests the concept of family detention, and so many of us agree with
him on that topic, he has made the commitment to follow through on this righteous
outrage by fighting it on a volunteer basis so that those without a voice have access to
one. And what a voice Bryan's is to have in your corner. Perhaps too strident from time
to time, but he is committed to zealously representing his clients and upholding what so
many of us believe to be self-evident: family detention is a stain on our nation and an
abomination.

I respectfully request that you consider these mitigating factor as you make your decision
whether to hold him in contempt or report him to the State Bar of New York.

I can be reached at (646) 612-7555 if you would like any further information.

Very truly yours,

Jennifer Durkin

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

EXHIBIT 13

LETTERS IN SUPPORT OF BRYAN JOHNSON'S RESPONSE TO OSC RE
CONTEMPT

19

# CARECEN

## Central American Refugee Center
## 91 N. Franklin St. Suite 208
## Hempstead, N.Y. 11550

The Honorable Dolly M. Gee
United States District Court
Central District of California
**Re: Order to Show Cause/ Bryan Johnson**

Hon. Judge Gee,

I am writing as a character reference for attorney Bryan Johnson.

I have known Mr. Johnson for six years, both as a law student and as a young attorney. I am an immigration lawyer who has practiced exclusively on behalf non-profit organizations and their immigrant clients since 1985.

I am the Legal Services Director of the Central American Refugee Center (CARECEN) with offices in Hempstead and Brentwood on Long Island. I am the former chairman of both the New York Immigration Coalition and the Long Island Immigrant Alliance, as well as the former legal director of the Westchester Hispanic Coalition. Over the years I have advised both local and state government on immigration legal services matters. I am also Special Professor of Immigration Law at Hofstra University. It was in that capacity that I first met Mr. Johnson in 2008-2009.

Bryan Johnson has, from his days as a law student to today, always displayed a deep and overriding concern for the legal representation of immigrants. I rarely see a student so dedicated to representing indigent immigrants before the Immigration Courts and the Department of Homeland Security. He maintained this commitment as a new lawyer, and when he established his own firm with his partner, he told me that he wanted to focus on those people who could not otherwise afford representation.

There are no other private practitioners on Long Island who provide as many hours of volunteer immigration legal services as Bryan. He was one of the few experts on Long Island on relief for Unaccompanied Minors when this area became the destination for the third largest number nationally of these child refugees last year. Bryan made himself available to CARECEN, Catholic Charities, and several other legal services groups working with these children as a trusted legal advisor without ever asking for a fee. He also took on representation of cases pro bono.

Throughout last year, Mr. Johnson expressed concern to me about the deplorable conditions that many of the children endured during detention and the lack of respect by the Federal government for their need for legal representation. He has a deep personal concern for these children and a desire to be a voice for the voiceless among them. He told me that he wanted the American people to understand what was happening to the boys and girls he represented. He was deeply troubled by the politicization

of removal proceedings regarding these children in response misleading media reports which characterized them as a dangerous element. Mr. Johnson was also involved in assisting refugee children denied admission to school by districts engaging in unlawful discrimination.

Mr. Johnson is outspoken in his advocacy for indigent refugees, and his passion for justice may have led to this breach of confidentiality. I will not try to excuse his actions, but I implore the court to take his dedication to the high goal of our profession to represent the poor and the marginalized into account. I also ask the court to recognize the ongoing contribution Mr. Johnson makes and will hopefully be able to continue to make to provide legal services to Central American children.

Mr. Johnson's ability to continue to practice law directly impacts on the lives of hundreds of immigrants here on Long Island.

Thank you for allowing me to present this side of Bryan Johnson's practice. If I can be of assistance to you in this matter, please feel free to call me at (516)455-5612.

Sincerely,

Patrick Young, Esq.

Director of Legal Services

8/13/2015

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

EXHIBIT 14

LETTERS IN SUPPORT OF BRYAN JOHNSON'S RESPONSE TO OSC RE
CONTEMPT

22

August 17, 2015

The Honorable Dolly M. Gee
United States District Court
Central District of California

Re: Oder to Show Cause for Bryan Johnson, Esq.

Dear Judge Gee:

I am writing this letter in support of Bryan Johnson. I am a member of the American Immigration Lawyers Association (AILA) and have been involved in planning continuing legal educational programs for the association on a local and national level for over fifteen years.  In developing CLEs, I am constantly looking for immigration attorneys that are experts in particular areas to speak at events and speak with others about different attorneys within the immigration bar on a regular basis.  This is how I came to know Bryan Johnson.

On numerous planning calls, Bryan's name was brought up as an expert for sessions on family detention and immigration options for children.  He was initially described to me as someone that was incredibly passionate about protecting children in immigration proceedings. He developed a reputation within the immigration bar for the work that he has done for children that frequently do not have anyone advocating on their behalf. I personally selected him to speak on sessions at AILAs annual conference in June 2015, as well as the New York Chapter of AILA annual CLE in December 2014.

In addition to the valuable work that he has done for his clients, Bryan has volunteered time to train other attorneys so that they might also represent and protect children. He has spoken at a number of CLEs - locally and nationally - and has done a tremendous effort in educating attorneys. This is incredibly important as these cases are often complex and ineffective assistance can result in dire consequences for children.

There are very few within the immigration bar that have done as much good work for children as Bryan has. In fact, in a bar association as big as the immigration bar is, sadly there are very few willing to volunteer their time and work for the benefit of children. It would be detriment to the immigration bar, as well as the children he represents, if Bryan were unable to continue his good work in the field.

 Please contact me if you would like additional information.

Sincerely

Gayle Oshrin