1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **CENTRAL DISTRICT OF CALIFORNIA**
10

11  JENNY LISETTE FLORES, *et al.*,            )   Case No. CV 85-04544 DMG (Ex)
                                               )
12                        Plaintiffs,          )   **ORDER RE RESPONSE TO ORDER**
                                               )   **TO SHOW CAUSE**
13              v.                             )
                                               )
14                                             )
    LORETTA E. LYNCH, Attorney                 )
15  General of the United States, *et al.*,    )
                                               )
16                        Defendants.          )
17  _____

18

19                            **I.**

20                    **INTRODUCTION**

21      "*An error does not become truth by reason of multiplied propagation, nor does
            truth become error because nobody sees it.*"
22
                                        —Mahatma Gandhi
23

24      On February 2, 2015, Plaintiffs filed a motion to enforce the parties' 18-year-old

25  consent decree ("the Agreement") against Defendants Jeh Johnson and the U.S.

26  Department of Homeland Security ("DHS") and its subordinate entities, U.S.

27  Immigration and Customs Enforcement ("ICE") and U.S. Customs and Border Protection

28

("CBP").[1]  *See* Plaintiffs' First Set of Exhibits in Support of Motion to Enforce Settlement, Exh. 1 [Doc. # 101.]  On April 24, 2015, the Court held a hearing on the motion.  [Doc. # 143.]  After giving the parties an opportunity to informally resolve their dispute, the Court ultimately granted the motion on July 24, 2015, finding that Defendants had indeed breached the Agreement, and ordered Defendants to comply with the Agreement within 90 days.  [Doc. # 177 ("July 24, 2015 Order").]

In particular, contrary to Defendants' interpretation, the Court found that the Agreement encompasses both accompanied and unaccompanied minors.  In accordance with the consent decree, therefore, the Court ordered Defendants to release class members subject to specific provisions of the Agreement, while they await the results of removal proceedings.  *See* July 24, 2015 Order at 24-25.  The Court then gave Defendants an opportunity to respond to the Court's six-point remedy.  *Id.*

Instead of responding to the Court's Order to Show Cause ("OSC") solely as to the proposed remedies, Defendants submitted a 51-page brief that served primarily as a vehicle for a thinly-veiled motion for reconsideration, rehashing many of the same arguments which the Court previously rejected.  [Doc. #184 ("Defendants' Resp.").][2] Thereafter, Plaintiffs filed their response to the OSC.  [Doc. # 186 ("Plaintiffs' Resp.").]

Because Defendants fail to meet the standard for a reconsideration motion by, among other things, demonstrating the existence of new material facts or a change of law occurring after the time of the July 24, 2015 Order, the Court **DENIES** Defendants' motion for reconsideration.  As such, the Court's July 24, 2015 Order stands, with some

---

[1] The Court in its July 24, 2015 Order clarified the identities of the named Defendants.  *See* July 24, 2015 Order at 1 n.2.

[2] Defendants exceeded the 25-page limit for memoranda of points and authorities in violation of Local Rule 11-6.  Despite Defendants' flouting of the Local Rules, *see infra* Part II.A, the Court will address Defendants' reconsideration motion and the merits of some of their claims in the interest of clarity and thoroughness.

clarifications to the remedy.  Defendants must implement the Court's remedies for their breach of the Agreement as set forth below by October 23, 2015.

## II.

## DISCUSSION

### A.    Motion for Reconsideration

The Court construes Defendants' brief as a motion for reconsideration under Federal Rule of Civil Procedure 60(b).  This rule permits a court to relieve a party from any prior order or decision for a number of reasons including, but not limited to:  (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that could not have been discovered with reasonable diligence; and (3) any other reason that justifies relief.  Fed. R. Civ. P. 60(b)(1), (6).

Local Rule 7-18 limits reconsideration, however, to three enumerated grounds: "(a) a material difference in fact or law from that presented to the court before the decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of the decision, or (b) the emergence of new material facts or a change of law occurring after the time of the decision, or (c) a manifest showing of a failure to consider material facts presented to the court before the decision." C.D. Cal. L. R. 7-18.  Additionally, "[n]o motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion."  *Id.*

Notably, "[m]otions for reconsideration are disfavored and rarely granted."  *Brown v. United States*, 2011 WL 333380, *2 (C.D. Cal. Jan. 31, 2011).  "Whether to grant a motion for reconsideration under Local Rule 7-18 is a matter within the court's discretion."  *Daghlian v. DeVry Univ., Inc.*, 582 F. Supp. 2d 1231, 1251 (C.D. Cal. 2007).

Here, while Defendants frame their brief as a "Response to the Court's Order to Show Cause Why the Remedies Set Forth in the Court's July 24, 2015 Order Should Not Be Implemented," the brief is actually a motion for reconsideration, albeit an improper one.  *See, e.g.*, Defendants' Resp. at 9 ("Defendants respectfully request that the Court

reconsider its order"); *id.* at 46 ("Because the Court failed to take account of the history of the litigation and the intent of the parties, the Court's conclusion merits reconsideration.").  Indeed, despite repeatedly stating that the Court should "reconsider" its findings made in the July 24, 2015 Order, Defendants fail to discuss the legal standard governing motions for reconsideration, including the limitations imposed by the Local Rules.  In particular, Defendants fail to assert which of the three enumerated grounds under Local Rule 7-18 serves as the basis for their motion.

The Court discusses below whether any of the three enumerated limitations can support Defendants' motion for reconsideration.

### 1. Material Difference in Fact or Law That Could Not Have Been Known Before the Order

First, to properly bring a motion for reconsideration based on Local Rule 7-18(a), Defendants must show that there is a material difference in fact or law that could not have been known to them, in the exercise of reasonable diligence, before the Court's July 24, 2015 Order.  Defendants have not established this basis.

For instance, as to material differences in fact, Defendants refer to the "May and June directives" issued by the DHS Secretary and ICE Director.  Defendants' Resp. at 41.  According to Defendants, these "directives" consist of "publicly announced policies fundamentally changing the character of family detention and the use of ICE's family residential centers."  *Id.* at 18 (citing Homan Decl. ¶¶ 24-26 [Doc. # 184-1].)  Specifically, on May 13, 2015, ICE announced it would implement a review process for any family detained beyond 90 days.  Homan Decl. ¶ 25.  Further, on June 24, 2015, the DHS announced that it would commit to evaluating claims for humanitarian relief "within a reasonable timeframe."  *Id.* ¶ 26.

Yet, as the directives' dates indicate, these policies were known to Defendants well before the July 24, 2015 Order.  In fact, the Court noted in its July 24, 2015 Order that Defendants lodged a press release on May 13, 2015, announcing a series of changes as to the family residential centers.  *See* July 24, 2015 Order at 7 n.4.

-4-

Still, Defendants may argue that the results of those directives could not have been known until after the July 24, 2015 Order, even with the exercise of reasonable diligence. For instance, according to Defendants, "of those families booked into a family facility during the two-week period of June 28 to July 11, 2015, more than 60% had been released or removed by July 29 – or within two to four weeks . . . compared to the last six months of 2014, in which only 21% of families booked into family facilities were released or removed within 30 days." Defendants' Resp. at 14 (citing Homan Decl. ¶¶ 22, 27). Thus, this 60-percent statistic touted by Defendants involved detainees released or removed by July 29, 2015, or five days after the July 24, 2015 Order. Yet, Defendants have not shown how their subsequent remedial measures bear any significance to the question of whether Defendants breached the Agreement *before* the May and June policy announcements. At most, these announcements show that Defendants may be less in breach than they were before.

As to material differences in the law, Defendants also fail to identify any that could not have been known at the time of the Court's July 24, 2015 Order with reasonable diligence. Defendants spill much ink discussing the Immigration and Nationality Act ("INA") provisions for expedited removal and reinstatement, but these laws existed well before the Court's July 24, 2015 Order. Indeed, they existed before the parties entered into their Agreement in 1997.

Defendants have utterly failed to satisfy the requirements for a motion for reconsideration under Local Rule 7-18(a).

**2.    Emergence of New Material Facts or Change of Law After the Order**

Defendants also fail to demonstrate the emergence of new material facts or change of law after the Court's July 24, 2015 Order. *See* L.R. 7-18(b). For example, Defendants point to improvements to detention facilities in Texas, including construction in July 2014 of a "new and permanent 55,000 square foot Border Patrol Facility in the Rio Grande Valley specifically for families and unaccompanied children." Vitello Decl. ¶ 33 [Doc. # 184-2.] Defendants do not establish the materiality of such facts. The May and

June 2015 directives—which Defendants characterize as "new policies and practices," Defendants' Resp. at 14—are not material to the question of their breach of the Agreement because, as the Court has pointed out before, the voluntary cessation of illegal conduct does not render a dispute moot.  July 24, 2015 Order at 7 n.4 (citing *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014), *cert. denied sub nom. Rosebrock v. Hoffman*, 135 S. Ct. 1893 (2015)).  More importantly, Defendants do not represent that the "new policies and practices" include the complete cessation of detention of accompanied minors in secure, unlicensed facilities.

### 3.   Manifest Showing of Failure to Consider Material Facts

Finally, Defendants claim that "[b]ecause the Court failed to take account of the history of the litigation and the intent of the parties, the Court's conclusion merits reconsideration."  Defendants' Resp. at 46.  Had the Court done so, Defendants assert that it would have come to their point of view that the *Flores* parties did not anticipate the Agreement's application to accompanied children or family detention.

Such conclusory statements and assertions hardly constitute a "manifest showing" under Local Rule 7-18(c).  The Court had access to the entire record the parties presented.[3]  Ultimately, while Defendants "may disagree with the court's application of the facts to the law, there is not 'a manifest showing of a failure to consider material facts' by the court."  *Aventis Pharms. S.A. v. Amphastar Pharms, Inc.*, 2005 U.S. Dist. LEXIS 45949, at *6 (C.D. Cal. Mar. 25, 2005) (citing *Pegasus Satellite TV Inc. v DirecTV, Inc.*, 318 F. Supp. 2d 968, 981 (C. D. Cal 2004) ("Under L.R. 7-18, a motion for reconsideration may not be made on the grounds that a party disagrees with the Court's application of legal precedent.")).

---

[3] The Court reviewed the history of this case, as reflected on the docket, which includes not only the parties' filings in support of their most recent motions, but also years of status reports, prior efforts to enforce the consent decree, and Defendants' unsuccessful attempt to defend their right to strip search children detained by the INS.  *See Flores v. Meese*, 681 F. Supp. 665, 666 (C.D. Cal. 1988).

### 4.   Prohibition on Repetitive Arguments

In addition to their failure to satisfy any of the three enumerated grounds discussed above, Defendants also violated Local Rule 7-18's prohibition against repetitive arguments.  *See* L.R. 7-18 ("No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion.").

In fact, Defendants reiterate a number of arguments they raised in earlier briefing—which this Court rejected—including on the central issue of whether the consent decree applies to accompanied children.  *See, e.g.*, Defendants' Resp. at 43 ("*As noted in prior briefing to the Court*, the Agreement should not be interpreted to apply to such children as there was no meeting of the minds between the parties with respect to such a population.  *See* ECF No. 121, at 7-19.") (emphasis added).  Defendants' reheated and repackaged arguments are improper.  *See, e.g.*, *Aventis Pharms.*, 2005 U.S. Dist. LEXIS 45949, at *4 (denying reconsideration motion because it was "merely repeating an argument" the movant made previously in opposition papers); *Watanabe v. Home Depot USA, Inc.*, 2003 WL 24272634, *2 (C.D. Cal. Aug. 26, 2003) (denying reconsideration as "Defendant improperly argues the exact same points it raised in its previously filed Motion for Summary Judgment") (citing L.R. 7-18).

Regardless, the Court has already found that the consent decree's language clearly and unambiguously applies to accompanied minors.  July 24, 2015 Order at 4-7.  Therefore, the Court need not consider the parties' subjective, unexpressed intent.  *See, e.g.*, *Lockett v. Ericson*, 656 F.3d 892, 897 (9th Cir. 2011) ("[A]s is typical in contract cases, if the terms are clear and unambiguous, we will not look further.") (internal quotation marks and citation omitted); 11 Williston on Contracts § 31:4 (4th ed.) ("Except in cases of ambiguity . . . the object in interpreting or construing a written contract is to ascertain the meaning and intent of the parties as expressed in and determined by the words they used, irrespective of their supposed actual, subjective intent") (footnotes omitted).

In sum, Defendants have brought an improper motion for reconsideration and the Court need not consider their arguments anew. *See FDIC v. Countrywide Sec. Corp. (In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.)*, 966 F. Supp. 2d 1031, 1040 (C.D. Cal. 2013) ("Plaintiffs have not satisfied any of these conditions [under Local Rule 7-18], and the Court may properly refuse to consider their arguments as a consequence.").

Nonetheless, to ensure clarity, the Court will address a few of the issues concerning the July 24, 2015 Order that Defendants grossly misconstrue.

## B.   Defendants Misconstrue the July 24, 2015 Order

### 1.   The Remedy Does Not Contravene the INA

Defendants argue that "[t]he broader remedies proposed by the Court [in the July 24, 2015 Order] would create a conflict between the Court's reading of what is required under the Agreement, and the statutory authority for streamlined removal processes and detention that is currently effectuated through the use of family facilities [under the INA]." Defendants' Resp. at 31 (citing 8 U.S.C. §§ 1225, 1226, 1231). Specifically, Defendants focus on certain accelerated removal processes, and the detention of individuals subject to those processes, that are governed by the INA: "expedited removal" and "reinstatement."[4] According to Defendants, the July 24, 2015 Order would "interfere with the Government's ability to place individuals into expedited removal at all" and "thwart Congress's clear intent to provide expedited removal, including detention, as a tool for DHS . . . ." Defendants' Resp. at 33, 34. That is because

---

[4] "Expedited removal proceedings provide a streamlined process by which U.S. officers can remove aliens who attempt to gain entry to the United States but are not admissible." *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1080 n.2 (9th Cir. 2011) (citing 8 U.S.C. § 1225(b)). In *Barajas-Alvarado*, the Ninth Circuit explained: "The expedited removal statute, § 1225(b), provides that when an alien seeks admission to the United States after arriving at a port of entry and does not have entry documents, misrepresents the alien's identity or citizenship, or presents fraudulent identity or immigration documents, 'the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates an intention to apply for asylum . . . or a fear of persecution.' § 1225(b)(1)(A)(i)." *Id.* at 1081. Reinstatement refers to the process by which the DHS may "reinstate" a prior order of removal for an individual it finds "has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal[.]"  8 U.S.C. § 1231(a)(5).

"expedited removal requires detention until eligibility for relief is established."  *Id.* at 33; 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.").

In short, Defendants' primary objection concerns timing:  "If this Order is maintained in its current form and interpreted in this manner, it would functionally terminate the ability of DHS to place families into expedited removal or reinstatement proceedings, which cannot be completed in three to five days."  Homan Decl. ¶ 33. Defendants represent that DHS's new policies will mean individuals will be detained for an average of 20 days—the time needed for credible fear and reasonable fear processing. Defendants Resp. at 14; Homan Decl. ¶ 28.

Defendants mischaracterize the July 24, 2015 Order, and their fears that the remedial order will contravene the INA are unfounded.  As an initial point, the Court notes that the parties in the *Flores* consent decree expressly stated that they knew "of nothing in this Agreement that exceeds the legal authority of the parties or is in violation of any law."  Agreement ¶ 41.  And the Court in its July 24, 2015 Order already rejected Defendants' contention that the consent decree rendered the INA unenforceable due to organizational changes in the INS.  July 24, 2015 Order at 20-23.

While the consent decree requires Defendants to place a minor with an available adult[5] or in a non-secure, licensed facility upon apprehension within five days, there is an exception to the five-day rule "in the event of an emergency or influx of minors into the United States."  Agreement ¶ 12A.  In those instances, the government "shall place all

---

[5] It may be the case that a minor's parent is in mandatory detention.  In that situation, in order to effectuate the least restrictive form of detention for the child, Defendants must follow an order of preference for the minor's release to an available adult under Paragraph 14 of the Agreement.  Under Paragraph 14, the order of preference begins with the parent, followed by a legal guardian, an adult relative (brother, sister, aunt, uncle, grandparent), an adult individual or entity designated by the parent or legal guardian, a licensed program willing to accept legal custody, and ending with an adult individual or entity seeking custody.  Agreement ¶ 14.

minors pursuant to Paragraph 19 *as expeditiously as possible*[.]"[6]  *Id.* (emphasis added).
The consent decree defines the term "influx of minors into the United States" as "those
circumstances where the INS has, at any given time, more than 130 minors eligible for
placement in a licensed program under Paragraph 19, including those who have been so
placed or are awaiting such placement."  Agreement ¶ 12B.

What Defendants characterize as an immigration "surge" constitutes an "influx"
under the consent decree—that is, the government has before it more than 130 minors
eligible for placement in a licensed program.  Assuming the existence of an "influx of
minors into the United States," Paragraph 12A gives Defendants some flexibility to
reasonably exceed the standard five-day requirement so long as the minor is placed with
an authorized adult or in a non-secure licensed facility, in order of preference under
Paragraph 14, "as expeditiously as possible."  At a given time and under extenuating
circumstances, if 20 days is as fast as Defendants, in good faith and in the exercise of due
diligence, can possibly go in screening family members for reasonable or credible fear,
then the recently-implemented DHS polices may fall within the parameters of Paragraph
12A of the Agreement, especially if the brief extension of time will permit the DHS to
keep the family unit together.[7]  A *de minimis* extension of the five-day requirement under

---

[6] Paragraph 19 governs procedures for certain minors who must be "placed temporarily in a
licensed program" until release can be effected in accordance with Paragraph 14—which establishes an
order of preference for the minor's release to an adult when detention is not required—or the minor's
immigration proceedings are concluded.  Agreement ¶ 19.

[7] Plaintiffs state in their OSC response that the Agreement does not "state or imply that
Defendants may detain children in unsafe unlicensed secure facilities for as long as they deem necessary
to accomplish 'processing' Defendants have now decided only class members apprehended with
'mothers' must suffer through; nor does the Settlement permit Defendants to adopt a 'goal' on some
unknown date to reach an 'anticipated average of [detention time of] approximately 20 days. . . .'"
Plaintiffs' Resp. at 10-11 (quoting Defendants' Resp.).  Plaintiffs are partly correct.  While the
Agreement does not permit Defendants to routinely detain children in unlicensed, secure facilities "for
as long as they deem necessary" no matter what the circumstances, Paragraph 12A requires that
Defendants "place all minors pursuant to Paragraph 19 as expeditiously as possible" in "the event of an
emergency or influx of minors into the United States."  This language, on its face, gives Defendants
some latitude, provided it is exercised reasonably and in good faith, to deal with emergency situations.

individualized circumstances will not necessarily result in a breach of the Agreement or contravene the INA in all cases. The facts presented by Plaintiffs, however, show that prior to their motion to enforce, Defendants routinely failed to proceed as expeditiously as possible to place accompanied minors, and in some instances, may still be unnecessarily dragging their feet now. *See, e.g.*, Homan Decl. ¶ 25 (discussing recent ICE review of families "detained for 90 days or more" at a family residential center); Free Decl. ¶¶ 1-4 [Doc. # 187-6] (attorney for women and children detainees stating each mother he represented the week of July 20, 2015, at the Dilley, Texas facility "had been detained with her minor child for well over one month").

### 2. The Remedy Will Not Hamper Compliance Efforts

Defendants suggest that the July 24, 2015 Order will *enjoin* their *current* policies and practices that "were not challenged by Plaintiffs in their enforcement motion, are authorized by the INA, and do not violate the Agreement." Defendants' Resp. at 9. The July 24, 2015 Order will do no such thing. The Court is not enjoining current policies and practices that comply with the Agreement—only those that do not.[8]

Still, Defendants state that "the proposed remedies could heighten the risk of another surge in illegal migration across our Southwest border by Central American families, including by incentivizing adults to bring children with them on their dangerous journey as a means to avoid detention and gain access to the interior of the United States." Defendants' Resp. at 12. This statement is speculative at best, and, at worse, fear-mongering. *See* July 24, 2015 Order at 9-11 (finding evidence Defendants presented "insufficient to establish causation between Defendants' current policy of detaining female-headed families in family detention centers and the decline in family units apprehended at the border"); *id.* at 23 ("Nor do Defendants proffer any competent

---

[8] The Court emphasizes once more that Defendants' late-blooming efforts at compliance with the consent decree will not render the case moot. *See* July 24, 2015 Order at 7 ("Even assuming Defendant's new policy complies with the Agreement, Defendants could easily revert to the former challenged policy as abruptly as they adopted the new one.").

1   evidence that ICE's detention of a subset of class members in secure, unlicensed facilities

2   has deterred or will deter others from attempting to enter the United States.").

3        In sum, Defendants have offered no credible reason why they cannot comply with

4   the INA while simultaneously adhering to the Agreement's proscription against holding

5   children for prolonged periods in secure, unlicensed facilities.  The Court's remedial

6   order does not enjoin policies and practices that *comply* with the Agreement.

7        **3.   Border Patrol Stations**

8        Defendants contend that the Court's conclusion that they "have wholly failed to

9   meet even [the] minimal standard" for "safe and sanitary" temporary holding cells—at

10  Border Patrol stations—is "overbroad" and "ask that the Court reconsider it."

11  Defendants' Resp. at 51.  Defendants reiterate that they submitted "documentary and

12  testimonial evidence that they do, in fact, have standards in place, and that these

13  standards necessarily also consider the safety and security needs at Border Patrol

14  facilities given the nature and purpose of those facilities as short term processing

15  centers."  *Id.* at 52 (citing brief opposing motion to enforce and attached exhibits); *see*

16  *also, e.g.*, Oaks Decl. ¶¶ 5-6 [Doc. # 121-1] (stating he is "familiar with the policies and

17  procedures that govern the apprehension, processing, and temporary detention of aliens"

18  and that "the policies and procedures discussed [in this declaration] are implemented

19  nationwide").

20       Defendants' primary objection is that the "anecdotal evidence" Plaintiffs presented

21  (e.g., declarations from detainees), limited by both time and geography, cannot

22  sufficiently establish that Defendants are in breach of the Agreement nationwide.

23  Defendants Resp. at 52-53.  As such, Defendants contend that the Court's remedy calling

24  for an implementation of "*nationwide* standards and procedures governing conditions at

25  Border Patrol facilities under the Agreement" cannot stand.  *Id.* at 52 (emphasis in

26  original).

27       The Court disagrees in part.  Given that Plaintiffs presented evidence of at least

28  one non-compliant station, the Court clarifies that the July 24, 2015 Order does not

specifically find that *all* Border Patrol stations in the nation are out of compliance. *See* July 24, 2015 Order at 16-18. The parties simply did not present evidence as to the conditions at every Border Patrol station one way or the other. Nonetheless, the Court need not find that *all* Border Patrol stations are in breach of the Agreement before it can enforce standards set out in that Agreement. Thus, to the extent any Border Patrol station is out of compliance with the Agreement, those stations must comply with the Agreement and Defendants' own acknowledged standards and procedures.

Accordingly, Defendants' request for an evidentiary hearing—made in part to have an "opportunity to cross examine any of the declarants . . . regarding their anecdotal claims"— is denied. *See* Defendants' Resp. at 53. Such a hearing is unnecessary. In any event, Defendants already had an opportunity to submit declarations as to the conditions at the Border Patrol stations. None of Defendants' declarations challenged or contradicted the deplorable conditions Plaintiffs' declarants described, even if they pertained only to stations located in the Rio Grande Valley. *See* July 24, 2015 Order at 16-18 (Defendants' declarant's testimony as to policies at Border Patrol stations says nothing about a Border Patrol station's actual conditions); Defendants' Resp. at 55 (stating "Plaintiffs provide no testimony from any declarant that he or she spent time in any Border Patrol station in any location other than the Rio Grande Valley in Texas") (citing Plaintiffs' exhibits). Defendants had multiple opportunities to request an evidentiary hearing before the Court ruled against them, but did not. Four months have now passed since the Court held its hearing on the motion to enforce—it is too late for a second bite at the apple.

### III.

### CONCLUSION

Based on the record in this case, the findings in the Court's July 24, 2015 Order, and the Court's review of the parties' responses to the OSC, the July 24, 2015 Order stands, with some clarifying modifications to the remedial portion of the Order as reflected below. The Court **DENIES** Defendants' motion for reconsideration.

The Court orders Defendants to implement the following remedies by no later than October 23, 2015:

1. As required by Paragraph 18 of the Agreement, Defendants, upon taking an accompanied class member into custody, shall make and record prompt and continuous efforts toward family reunification and the release of the minor pursuant to Paragraph 14 of the Agreement.

2. Unless otherwise required by the Agreement or the law, Defendants shall comply with Paragraph 14A of the Agreement by releasing class members without unnecessary delay in first order of preference to a parent, including a parent who either was apprehended with a class member or presented herself or himself with a class member. Class members not released pursuant to Paragraph 14 of the Agreement will be processed in accordance with the Agreement, including, as applicable, Paragraphs 6, 9, 21, 22, and 23.

3. Subject to Paragraph 12A of the Agreement, accompanied class members shall not be detained by Defendants in unlicensed or secure facilities that do not meet the requirements of Paragraph 6 of the Settlement or, in appropriate cases, as set forth in the Agreement, in facilities that do not meet the requirements of Paragraphs 12A, 21, and 23. Defendants shall not selectively apply the "influx" provision of Paragraph 12C of the Agreement to house class members apprehended with a parent in facilities that do not comply with the Agreement.

4. To comply with Paragraph 14A of the Agreement and as contemplated in Paragraph 15, a class member's accompanying parent shall be released with the class member in accordance with applicable laws and regulations unless the parent is subject to mandatory detention under applicable law or after an individualized custody determination the parent is determined to pose a significant flight risk, or a threat to others or the national security, and the flight risk or threat cannot be mitigated by an appropriate bond or conditions of release.

5. As contemplated in Paragraph 28A of the Agreement, Defendants or their Regional Juvenile Coordinator shall monitor compliance with their acknowledged standards and procedures for detaining class members in facilities that are safe and sanitary, consistent with concern for the particular

vulnerability of minors, and consistent with Paragraph 12 of the Agreement, including access to adequate drinking water and food, toilets and sinks, medical assistance if the minor is in need of emergency services, temperature control, ventilation, adequate supervision to protect minors from others, and contact with family members who were arrested with the minor. In the alternative, the parties may stipulate to the appointment of a special monitor for this purpose.

6. Defendants shall monitor compliance with the Agreement and this Order and shall provide Class Counsel on a monthly basis statistical information collected pursuant to Paragraph 28A of the Agreement.

**IT IS SO ORDERED.**

DATED:      August 21, 2015

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE