1  CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
   Peter A. Schey (Cal. Bar No. 58232)
2  Carlos Holguín (Cal. Bar No. 90754)
   256 South Occidental Boulevard
3  Los Angeles, CA 90057
4  Telephone: (213) 388-8693
   Facsimile: (213) 386-9484
5  Email: crholguin@centerforhumanrights.org
          pschey@centerforhumanrights.org
6
   ORRICK, HERRINGTON & SUTCLIFFE LLP
7  T. Wayne Harman (Cal. Bar No. 254089)
8  Elena Garcia (Cal. Bar No. 299680)
   777 South Figueroa Street, Suite 3200
9  Los Angeles, CA 90017
   Telephone:    (213) 629-2020
10 Email: wharman@orrick.com
          egarcia@orrick.com
11
12 *Attorneys for plaintiffs (listing continues on following page)*

13            UNITED STATES DISTRICT COURT
      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
14

15 JENNY LISETTE FLORES, *et al.*,        ) Case No. CV 85-4544 DMG (AGRx)
                                          )
16          Plaintiffs,                   )
                                          )
17 - vs -                                 ) **[REDACTED VERSION OF DOCUMENT
                                          ) PROPOSED TO BE FILED UNDER SEAL]**
18 LORETTA E. LYNCH, Attorney General of the ) EXHIBITS IN SUPPORT OF PLAINTIFFS' MOTION
   United States, *et al.*,               ) TO ENFORCE SETTLEMENT AND FOR
19                                         ) APPOINTMENT OF A SPECIAL MONITOR
                                          ) VOLUME 2 OF 2 [EXHIBITS 36-59]
20          Defendants.                    )
                                          )
21 ─────────────────────────────           Hearing: June 10, 2016.
                                           Time: 9:30 a.m.
22                                          Courtroom 7, 312 N. Spring Street
23
24
25
26
27
28

*Plaintiffs' counsel, continued*

LA RAZA CENTRO LEGAL, INC.
Michael S. Sorgen (Cal. Bar No. 43107)
474 Valencia Street, #295
San Francisco, CA 94103
Telephone: (415) 575-3500

THE LAW FOUNDATION OF SILICON VALLEY
LEGAL ADVOCATES FOR CHILDREN AND YOUTH
PUBLIC INTEREST LAW FIRM
Jennifer Kelleher Cloyd (Cal. Bar No. 197348)
Katherine H. Manning (Cal. Bar No. 229233)
Kyra Kazantzis (Cal. Bar No. 154612)
Annette Kirkham (Cal. Bar No. 217958)
152 North Third Street, 3rd floor
San Jose, CA 95112
Telephone:     (408) 280-2437
Facsimile:      (408) 288-8850
Email: jenniferk@lawfoundation.org
            kate.manning@lawfoundation.org
            kyrak@lawfoundation.org
            jamesz@lawfoundation.org
            annettek@lawfoundation.org

*Of counsel:*

YOUTH LAW CENTER
Alice Bussiere (Cal. Bar No. 114680)
Virginia Corrigan (Cal. Bar No. 292035)
200 Pine Street, Suite 300
San Francisco, CA 94104
Telephone: (415) 543-3379 x 3903

*/ / /*

ii

INDEX OF EXHIBITS

Exhibit 2.     Excerpts of Declarations in Support of Plaintiffs' Motion to Enforce 1

Exhibit 3.     Declaration of Bridget Cambria                              38

Exhibit 21.    Declaration of Victor Rxxxxx xxxxxxx                        49

Exhibit 22.    Declaration of Walter Axxxxxxx xxxxxxxx                     53

Exhibit 23.    Declaration of Yeslin Lxxxx xxxxxxx                         57

Exhibit 24.    Declaration of Sara  Exxxxxxxx xxxxx                        60

Exhibit 25.    Declaration of Mirna Mxxxxxx xxxxx                          63

Exhibit 26.    Declaration of Raquel Axxxxxx xxxxx                         66

Exhibit 27.    Declaration of Yessenia Exxxxxxxx xxxxxxx                   69

Exhibit 28.    Declaration of Celina Sxxxxxx-xxxx                          72

Exhibit 29.    Declaration of Cesia Vxxxxxxxxx-xxxx                        77

Exhibit 30.    Declaration of Isamar Sxxxxxx xxxxxx                        81

Exhibit 31.    Declaration of Kelly Gxxxxxxxx-xxxx                         87

Exhibit 32.    Declaration of Maria Dxxxx xxxxxxx                          91

Exhibit 33.    Declaration of Lindsey Gxxxx xxxxx                          95

Exhibit 34.    Declaration of Katerin Yxxxxxx xxxxxxx                      100

Exhibit 35.    Declaration of Sonia Axxxxx-xxxxxx                          104

Exhibit 36.    Declaration of Kenia  Yxxxx xxxxxxx                         107

Exhibit 37.    Declaration of Bianca Cxxxxxxxx xxxxx                       111

Exhibit 38.    Declaration of Astrid Dominguez                            115

Exhibit 39.    Declaration of Karen Zxxxxx xxxxxxx                         118

Exhibit 40.    Declaration of Allison Mxxxx xxxxx                          121

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 41.   Declaration of Benina C[xxxxx xxxxx]                126

Exhibit 42.   Declaration of Evelin J[xxxxx xxxxxxxx]             130

Exhibit 43.   Declaration of Diana C[xxxxx xxxxx]                 135

Exhibit 44.   Declaration of Amarilis L[xxxxxx xxxxx]            138

Exhibit 45.   Declaration of Franklin R[xxxx xxxxxxxx]           141

Exhibit 46.   Declaration of Herson L[xxxxx xxxxx]               145

Exhibit 47.   Declaration of Vilma S[xxxx xx xxxx]               148

Exhibit 48.   Declaration of Leny A[xxxxx xxxxx]                 152

Exhibit 49.   Declaration of Edgardo D[xxxxx xxxxxxxx]           155

Exhibit 50.   Declaration of Flember J[xxx xxxxxxxx]             158

Exhibit 51.   Declaration of Karen L[xxxxx xxxxxxxx]             161

Exhibit 52.   Declaration of Madelyn M[xxxxxxx-xxxxx]            164

Exhibit 53.   Declaration of Faustino C[xxx]                     167

Exhibit 54.   Declaration of Fanny E[xxxxxxx xxxxxxxx]           170

Exhibit 55.   Declaration of Josselyn M[xxxxx xxxxx]             173

Exhibit 56.   Declaration of Silvia V[xxxxx xxxx]                178

Exhibit 57.   Declaration of Yesenia Y[xxxxx xxxx]               182

Exhibit 58.   Declaration of Eloisa R[xxxx xxxxx]                185

Exhibit 59.   Declaration of Melvin M[xxxxx xxxxx]               189

# Exhibit 36
## Conditionally Filed Under Seal

DECLARATION OF KENIA Y▮

I, Kenia Y▮ , depose and say:

1. I am 23 years old and detained at the detention center in Karnes City, Texas. My date of birth is ▮ 1992. I was born in Honduras.

2. I am detained here with my daughter, Briana B▮ . She is two-years old.

3. In summary, we left Honduras because a gang member that my dad met in jail began threatening me. He started coming to my house and making advances. When I would refuse, he would make threats that I was his and he could do anything to me. I was terrified of him and fled Honduras with my daughter.

4. We entered the United States the afternoon of December 18, 2015. We were taken to a border patrol office but I don't know where. We were cold in the cell. The officers took my daughter's diapers but didn't give her dry clothes.

5. After that, we were transported to a border patrol station where we were held for about 2 nights. No one at the border patrol facilities notified me about rights my daughter had under the Flores case. No one told me that I could use a phone to call a lawyer nor did I see any phones to use to call a lawyer. No one gave me a list of lawyers I could call. There was no list of lawyers anywhere that I saw. No one told me that I had a right to see an Immigration Judge about my detention or my daughter's detention. An officer asked why I left Honduras and I told him I was afraid. He laughed and jokingly said "afraid of what." He then laughed with other officers.

6. No one talked to me about whether my daughter had a relative or if there was a friend I would consent to have my daughter released to. My daughter's father lives in Georgia. He could take care of my daughter. We were planning to live with him in Georgia.

7. We arrived on a Friday, and on Sunday they interviewed me over video. The officer asked me basic questions and then another officer told me to sign several documents. They were all in English and no one explained them to me so I didn't sign anything.

8. We were there for 2 nights and it was bad. The toilet at this station were out in the open, with only a short wall surrounding it. There is no privacy when using the toilet. The cell was very cold. Freezing cold. The detainees called it the "ice box." I had no jacket and was freezing cold. My clothes were still very wet from my journey and I had nothing to change into. My daughter's pants were very wet as was her diaper. I asked the officers for a diaper for her but it took several hours for us to get one. During that time she didn't have a diaper or pants on. We used the silver paper they gave us to cover her body. There were no beds or pillows. There was water but it tasted bad, and they gave me a sandwich of 2 slices of bread with a slice of cold meat, and juice. I didn't eat anything. I gave the bread to my daughter. This facility was very crowded the whole time we were there. There was about 40 people in one room the size of a bedroom. There was no space to do anything. Every time we tried to stand up, they just kept yelling that we should sit or lay down, but there was barely any space. We didn't ask for medical help because the officers were so hostile.

9. After being in this "ice box" for two nights we were moved to another place—the "dog pound." This was better, but still not good. The food was a little better and they gave us a cot. My daughter and I were together here. At neither of these offices did they explain anything about my daughters rights under the Flores case or give me any documents about my daughters rights under the Flores case. On one ever asked me anything about whether my daughter could be released to a relative or close friend in the U.S.

10. I came to Karnes with my daughter on December 21, 2015. Although they gave us a list of lawyers, other people here said no one answers so we didn't call. Also, we have no money to make phone calls and there are no free phones to call and consult with lawyers.

11. As best I remember I have not been told about my daughter's rights under the Flores case at this detention facility. I have not been told that any decision has been made about releasing me or my daughter. No one has questioned me about whether we have relatives here who could care for my daughter if she is released.

12. My daughter and I had our credible fear interview on December 29, 2015 and it was about 15 minutes. Then the officer told me they'd call me again for another interview, and that was on January 2, 2016 and was about 30 minutes. Then they said we'd have another interview and that was on January 5, 2016. I don't really know why there were so many interviews. Despite all of these interviews, the officer never really let me explain my story—the officers were different at each interview and they would stop me in the middle of my sentences so the interpreter could talk, and then wouldn't let me continue.

13. On January 7, 2016, an asylum officer told us we failed our credible fear but didn't explain why. I cannot understand the decision because its in English but it looks like a form letter with a few boxes checked. They gave me a stack of documents in English and said I'd see a judge soon. I learned from a friend here about what would happen next and she gave me the number of RAICES, lawyers that work here.

14. I called RAICES and they met with me and represented me in front of the judge on January 20, 2016. The judge didn't change the asylum officer's decision.

15. Since that time, my lawyers at RAICES have done two requests for reconsideration but both have been denied. They told me they're still working on my case.

I declare under penalty of perjury that the foregoing facts are true and correct. Executed this 3rd day of February, 2016, in Karnes City, Texas.



Kenia Y

Certification of Translation.

I, Manoj Govindaiah, depose and say: I am fluent in English and Spanish. I read the above declaration to the declarant Kenia Y                    and she confirmed its accuracy before

she executed the declaration. I declare under penalty of the perjury that the foregoing
certification is true and correct. Executed this 3rd day of February, 2016, in Karnes City, Texas.

Manoj Govindaiah

110

# Exhibit 37
## Conditionally Filed Under Seal

Declaration of Bianca C███ ███ ██ ████

I, Bianca C█████ ██████, declare under penalty of perjury the following is true to the best of my recollection and knowledge.

1. My name is Bianca C████████████ ██
2. I am from Brazil. I was born on ██ 1998.
3. I am 17 years old. I arrived with my father, Claudeo C███████████
4. This is my 3rd time coming to the US. The first time I arrived on a 6 month visa, and overstayed. The second time I was deported from the airport. This is my 3rd time.
5. I was apprehended by immigration on Friday, February 29, 2016. I have been here for 4 days. I was apprehended around 8 p.m.
6. I have been in a cement cell with other women and their children separated from my father the last 4 days. I have been able to talk to my dad for 10-15 minutes three times since arriving to this station-

112

The food is always the same. It's 2 pieces of bread w/one slice of bologne 3 times a day.

The concrete is very cold. this makes it hard to sleep. There is about 40 people here yesterday, there was double now. My cell is very crowded.

This cell had a sink that does not work; no water coming out. There is no soap. I have not been given a brush, toothbrush, or toothpaste.

7.  I do not know what will happen to me if I return to Brazil. My dad risked everything to bring me here. We have both been robbed numerous times and my house was broken into.

8.  I have eaten some bread since arriving.

9.  I have slept on the cement floor. I did not have a mattress, pillow or blanket, just a piece of foil. The lights have been on since I arrived.

10.  I have not been able to shower.

11.  The water they have given me tastes dirty, so I have not drank water since arriving.

12.  When I use the bathroom, there is no door on the stall.

13.  I have not been able to leave the cell except to get juice and bread, and when they clean the cell. I have not been able to go outside a single time.

14.  I was told I can not see a Judge because I was deported before.

15.  I was not given a phone call or told I can make a call.

16.  I was not given a call to my consulate.

17.  I was not given a list of lawyers. or told I can get a lawyer

113

18. This is not a place for humans.

19. I am fluent in English and ~~Spanish~~. Portuguese.

████████████████                    02/01/2016

I, Shalyn Fluharty, declare that I am proficient in English and Spanish. I obtained the above declaration from �myself and read it to her in the Spanish language. She affirmed its accuracy before executing the above declaration. I declare under penalty of perjury the above facts are true and correct.

Executed February 1, 2016
in McAllen, Texas

114

# Exhibit 38
## Conditionally Filed Under Seal

## Declaration of Astrid Dominguez

I, Astrid Dominguez, depose and say:

1. I 8p interviewed Erika J█████████████ from Guatemala, born on █████████, 1984.

2. She fled Honduras with her two children, Jocelyn N████████████, 15 years old, ~~and~~ born on ███████, 2000, and her son Steven J████████████████, born on ████████, 2013, because it was not safe for her and her children.

3. She was apprehended by Border Patrol on January 29, 2016 near McAllen, Texas

4. She was taken to a Border Patrol Station where she stayed for three nights. During her stay at the facility she had to sleep on the floor (concrete floor), with no mattress or blanket. They gave her an aluminum silver sheet to cover herself a day after she arrived.

5. She stated that she was held in a cell with more than 40 people, it was so crowded that some had to sleep on the toilet area,

6. They they were given sandwiches three days, only a slice of bologne a two slices of bread.

116

(29) Erika J [REDACTED]

7. When she arrived at the Ursula facility her oldest daughter was separated from her. She has not talked to her since their arrival.

I declare under penalty of perjury that the forgoing facts were declared to me. Executed this 1st day of February. 2016 in McAllen, TX.

Astrid Dominguez

117

# Exhibit 39
## Conditionally Filed Under Seal

DECLARATION OF KAREN Z▮▮▮▮▮▮

I, Karen Z▮▮▮▮▮▮, depose and say:

1. I am detained at the detention center in Berks, Pennsylvania. I was born in El Salvador on ▮▮▮▮▮▮, 1993.
2. I am detained with my son, who was born on the ▮▮▮▮▮▮, 2010.
3. We were apprehended near Piedras Negras in Texas on the 29th of August, 2015.
4. Border Patrol agents took us to a border station. We were not told the location of the border patrol station. We arrived around 11 a.m.
5. Conditions at the facility were very bad. For every meal, they gave children small portions of the same thing: corn, macaroni and cheese, and nuggets. After two meals, my son would not eat the food anymore. They only gave me one burrito for each meal. We did not drink any water because it was right near the bathroom and the container was disgusting. Instead, I would ration the small bags of juice for my son.
6. We were not given the chance to take a bath or shower. We did not want to go to the bathroom because there was no real door to the bathroom. There was one small sink with only cold water. There was no soap to use to wash our hands and no paper towels to dry our hands. We had nothing to brush our teeth or brush our hair. We had no change of clothes. Our clothes were soaking wet from crossing the river and our pants and shoes were full of mud. They did not give us dry clothes or shoes to wear.
7. We could not sleep because the air conditioning was turned up high and we were very cold. We only had cement planks to lie on and they did not give us blankets. They gave us plastic sheets. My son was cold and wearing wet clothes, so he was so cold that his lips turned purple. I had to wrap him in a plastic sheet and hold him on my lap so that he would not have to sleep on the cold cement.
8. No one told me about my son's rights under the *Flores* agreement. They never told me that I could call a lawyer for free, nor did they give me a list of lawyers and I never saw one posted anywhere.
9. They asked me if I was afraid to return to El Salvador and I said yes.
10. The officers told me that I could be released to stay with a family member. They told me to call the person who I could stay with and have him send money so that I could buy bus tickets. When we left this facility, they told me that I was going to a bus station where we could take a bus to Houston to stay with my son's uncle. But, when I got out of the border patrol vehicle, I was at a detention center in Dilley, Texas. This was a terrible surprise because no one had told me that we were going to a detention center.
11. The officials and staff at the detention center in Dilley never advised me of my son's rights under the *Flores* case. No official told me that my son had any right to seek release from an immigration judge. No official questioned me about relatives or friends in the U.S. able to care for my son. No one asked me if I wanted my son transferred to a licensed facility for children. The first time I was told of any rights was when I met with the pro bono lawyers at the detention center.
12. My credible fear interview took place over two weeks after I was first detained, I think around the 15th of September 2015. I spoke to the asylum officer about why I fled El Salvador. I had no idea what it means to be persecuted because of membership in a social group and no one explained this to me.
13. About three days later, I got a negative credible fear determination. This is a form denial which did not explain on an individual basis why my case was denied. They did not provide the notice in Spanish. The officer used a telephonic interpreter to translate it, but

the technical and legal terms confused me and the only thing I understood was that the determination was negative.

14. About the 22nd of September, I was told that an immigration judge would review that decision. On the 23rd of September, I had a review with the immigration judge, who appeared by video. Later that afternoon, I was told that I got a negative determination again.

15. At Dilley, I was never informed by any officials at Dilley that under the Flores case I had the right to seek release for my son in front of a judge.

16. I was finally represented by a CARA pro bono lawyer at Dilley.

17. My son and I were unexpectedly transferred to the detention center in Berks on or about 28th of October of 2015. Officers told us we were being transferred for release to my family, but it turned out this was not true. We have now been here for about over six months. My son's and my detention exceeds eight months in total. At this time I have a habeas corpus appeal pending in the federal court and have received a temporary stay from the court.

18. No staff member at Berks has ever told me about the Flores agreement or that I have the right to ask a judge to consider releasing my son.

19. I have been given many custody reviews, but every time they told me that they decided not to release me or my son.

20. I am now represented by volunteer attorney Bridget Cambria in my immigration case at Berks. The ACLU is handling the habeas corpus case which I am told deals only with the denial of my fear claim.

21. The conditions here at Berks are horrible for my son. We cannot get a real night's rest here. At night, the staff members open the doors loudly and shine lights in our faces every 15 minutes. If my son is cold or afraid, he sometimes sleeps with me. If the guards see that he has moved to my bed, they wake us up and make him move. In the middle of the night my son often cries uncontrollably.

22. The food here is disgusting. They often give us expired food, including milk and yogurt, and bread. Sometimes the bread even has mold. My son refuses most of the food here.

23. Detained men here are comingled with detained mothers and children and this makes the children and woman very uncomfortable.

24. Staff members wash their mops and oily rags from the kitchen in the same place that we wash our clothes. This leaves dirt in our clothes that gives us rashes.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my information, knowledge, and belief. Signed on May 1, 2016, in Leesport, Pennsylvania.

Karen Z██████

I declare that I am competent to interpret from English to Spanish and Spanish to English, and that the above statement was interpreted from English to Spanish to Karen Z██████. Ms. Z██████ agreed to the accuracy of the statement before executing her statement above. I declare under penalty of perjury that the foregoing is true and correct. Executed this 1st day of May, 2016.

Martha Sandoval-Reyna
Martha Sandoval Reyna

# Exhibit 40
## Conditionally Filed Under Seal

<u>Declaration of Allison M█████████████</u>

I, Allison M█████████████ depose and say:

1. My name is Allison M█████████████ and I am detained with my 16 year old sister  and my mother at a detention center in Berks County, Pennsylvania. I have been detained by immigration with my sister and mother for six months.

2. My date of birth is █████████, 2001. I was born in El Salvador and am 14 years old.

3. I am detained here with my sister, Estefany A█████████████ who was born in El Salvador on ██████ 1999. She is 16 years old. I am also detained with my mother, Carmen L██████. She was born in El Salvador on ██████ 1975 and is 40 years old.

4. We left our home in El Salvador because of violence directed at my family and the growing violence against women and girls without protection committed by the gangs in El Salvador. We cannot be protected by the government of El Salvador.

5. We were apprehended on or about August 23, 2015, after entering the United States. We were apprehended while walking.  Border Patrol took us to an empty road and took our hair ties, our shoelaces, our phones and identification. We were taken to a holding cell. I am not sure where this was located..

6. Every time more people came it seems to get colder in the room. There were so many people squeezed into the room. There were no beds, just a few cement slabs to lay on. There was no sink, but there was a toilet that was open so that everyone could see you if you went to the bathroom. We had to use a trashcan to block ourselves so other people could not see us using the bathroom.

7. Our mother told the immigration officials that we have a fear of return. My mom told us that immigration was mad at her that she said she was afraid for us. We were not permitted to use a phone.

8. We were afterwards taken to the *perrera* . I know we were taken sometime at night. It is called a *perrera* because we are treated like dogs. It looks like a dog kennel and we are the little dogs. It is a giant room with lots of cages where people are kept. The lights are always on. I was kept with my sister, but I was separated from my mother for two nights. On one occasion I was able to visually see my mom, but I was prevented from talking with her.

9. At 2 AM officers came into our cage and kicked our mattress.That is what they would do to kids all throughout the night. But it usually meant that you were leaving. So when they came in and kicked our mattress we were happy because we thought we were going with

122

our dad in Dallas, Texas. We were not taken to our father, however, we were taken with
our mother to a detention center in Dilley, TX.  We were taken there by bus and it was
full.

10. At no point did any officer or official ever talk to me, my sister, or my mom about our legal
rights or the *Flores* case. We had no notice that we had a right to an attorney. At no point
did anyone ever talk to me or my sister about our rights as children. I was never talked to
about any ability to be released to my dad or to receive a bond in front of an immigration
judge.

11. The entire eight months we have been detained neither me, nor my sister, nor my mother
have ever been spoken to by officials about a case called  Flores.

12. There was no need for me, my sisters or my mom to be placed in detention. Our father,
Elias Mendez Avala, lives in Dallas, Texas. He has been here for about 12 years. My
mother also has a sister, Sonia Escobar, who lives in Maryland and is a Legal Permanent
Resident. She has a husband who is a resident and children who are U.S. Citizens. My
mom also has an Aunt in Maryland who is a U.S. citizen, her name is Blanca Menjivar.
We also have a cousin named Jose Menjivar. Immigration knows that we have family
willing to care for us, and they have denied our release for the last 8 months.

13. I did not know that there was a Flores case that requires immigration to provide me with
continuous efforts to release me from detention. Why then has 240 days passed, and me and
my sister are still in  detention?

14. When we were in Dilley, my mother, sister and I received an interview from the
Asylum office. We were all separated. The officer spoke English and we had an
interpreter by phone. They interviewed me, my mom and my sister. I know that I was
very nervous and scared for the interview. I didn't understand completely the interview,
but all I knew was how I answered was going to decide whether I could live in safety. It
was a lot of pressure.

15. In my interview I told the officer that I was afraid to be deported. I told the officer that I
was afraid to return because of the violence that has happened to my family and because
of the dangers of the gangs. It is not safe for girl in El Salvador, especially when our
house was just women, my mother, my sister and I. The officer never explained to me
that it is a requirement that I face persecution because of my membership in a social
group or what that means.

16. We received a negative decision. I believe this was a form letter denial. My mother then
went in front of an Immigration Judge. Even though my sister and I were interviewed by
the Asylum Office, my sister and I were not permitted to go before the Immigration
Judge. I believe that this is wrong because some children my age were allowed to talk to
the judge and had their cases granted. In my case, I was never allowed to see a
judge, only my mother.

123

17. The Judge agreed with the negative decision. We were told at this time that we were being transferred to another detention center in Berks, Pennsylvania. So the three of us were sent from Texas to the detention in Pennsylvania even though our dad lives in Dallas, Tx.

18. In Berks, every morning at 6:30AM the staff bangs on our doors to wake up. We are stuck in one building, corralled in common areas all day long. It is boring. At night, we cannot sleep through the night because the guards shine flashlights in our faces every 15 minutes. We must go to bed at 9:00PM no matter the day. They do not permit us out of the room after 9:00 PM. This has been every day for eight months.

19. One night my mother, sister and I were woken at 3:00AM. by Immigration officials. At that time I had never seen anyone deported. So I initially thought, again, that we were being sent to our family. That was not the case. They were trying to deport us. We had been working with attorneys in Texas and had asked for help from Bridget Cambria, an attorney who works with people in the Berks facility. She had filed a request for a re-interview with the asylum office.

20. We were taken out of the facility at 3AM. We were being taken to the airport. At the airport we noticed that immigration was talking on their phones. They were angry. They found out that they were not permitted to deport me or my sister or my mom because we had a request for a re-interview pending.

21. I have only seen a mental health worker on one occasion. I suffer from depression and it's very hard to deal with being trapped every day. I believe I am suffering emotionally and in school.

22. I have never attempted to escape from the Berks facility and neither has my family. Because I am in the custody of immigration, it is my belief that if I would attempt to leave that the guards would arrest me. I am scared. I know that we are in a facility that is locked. At certain parts of the day we are only permitted in certain areas and blocked from certain parts of the facility. There are key pads throughout the facility. I watch the staff members use a key card to enter certain parts of the facility. I see the staff use key cards to unlock internal doors which prevent us from passing. After 8 PM we are kept only on the second floor. We are not permitted to return to the first floor. Our movement is stopped by Berks staff and by some doors. I just want to be safe, and I believe I can best fight my case with my family, outside of detention. Like I said before we have family here in the U.S., including my father, who is able to provide care for my sister, my mother and I.

23. I am a 14 year old girl. I am scared for me and my sister. I can see how this time here, these eight months are destroying us. It is hurting my relationships with my mother and my father. I am suffering from emotional distress and depression. I do not want to run. I want to continue to fight to seek protection in the United States for myself, my sister and my family. I have absolutely no criminal history and I would appear for all future appointments and hearing upon any release. I am not going to run away because I want to pursue my case. I have never received a bond hearing or been told that my son could receive a bond hearing.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.

Signed on May 1, 2016 in Leesport, Pennsylvania

5/1/16

Date                                                    Allison M

I declare that I am competent to interpret from English to Spanish and that the above document was interpreted from English to Spanish to Allison M         Ms. M      agreed to the accuracy of the statement before executing her statement above. I declare under the penalty of perjury that the foregoing is true and correct. Executed this 1st day of May, 2016 in Leesport, PA.

Martha Sandoval Reyna

Martha Sandoval Reyna

# Exhibit 41
## Conditionally Filed Under Seal

DECLARATION OF BENINA C███████

I, BENINA C███ ███████, DEPOSE ξ SAY:

1. I AM A CITIZEN OF HONDURAS.

2. MY DATE OF BIRTH IS ██████ 1984.

3. I LEFT HONDURAS BECAUSE MY FATHER WAS MURDERED AND I WAS THREATENED. I FEARED FOR MY LIFE IN HONDURAS.

4. I FLED HONDURAS WITH MY CHILD NAMED CRITZA S██████████████████, BORN ON ████████████, 2013.

5. I CAME INTO CONTACT WITH U.S. BORDER PATROL AGENTS ABOUT 15 MINUTES AFTER ENTERING THE U.S. ON FRIDAY JANUARY 29, 2016, NEAR MCALLEN, TEXAS. I WAS APPREHENDED WITH MY DAUGHTER.

6. I HAVE BEEN DETAINED BY BORDER PATROL SINCE FRIDAY JANUARY 29, 2016.

7. FRIDAY NIGHT AND SATURDAY NIGHTS MY DAUGHTER AND I SLEPT ON THE CONCRETE FLOOR OF OUR CELL ALONG WITH ABOUT 40 PEOPLE. THE CELL FLOOR IS FILLED WITH PEOPLE SLEEPING ON THE CONCRETE FLOORS. THEY ARE ALL MOTHERS AND CHILDREN OF ALL AGES. NO ONE IS PROVIDED A MATTRESS. EACH PERSON IS GIVEN A SILVER PAPER BLANKET. NO ONE IS GIVEN A PILLOW OR ANY TOILETRIES.

8. SINCE WHEN I WAS APPREHENDED I HAVE NOT BEEN GIVEN ANY TOILETRIES FOR MY DAUGHTER OR ME. IN THE CELL THERE IS A TOILET AND SMALL SINK SHARED BY ABOUT 40 PEOPLE WITH NO SOAP

2

OR PAPER TOWELS. THE TOILET IS NOT PRIVATE.
IT HAS A SMALL WALL TO PROVIDE PARTIAL
PRIVACY. WE USE TOILET PAPER TO DRY
OUR HANDS. WE HAVE NO SOAP, NO
TOOTHBRUSHES, NO TOWELS, NOTHING TO
BRUSH OUR HAIR, NO WASTE BASKETS.

9.   THE CONCRETE FLOOR WE SLEEP ON
IS HARD AND COLD. THE LIGHTS STAY
ON ALL DAY AND ALL NIGHT. CHILDREN
ARE CRYING ALL THE TIME. MOTHERS
AND CHILDREN ARE EXHAUSTED, SLEEP-
DEPRIVED AND HUNGRY.

10.   THE ONLY FOOD I HAVE BEEN GIVEN IS
THREE SANDWICHES PER DAY. EACH
SANDWICH IS TWO SLICES OF BREAD
AND ONE SLICE OF MORTADELA. MY
CHILD HAS ALSO ONLY BEEN GIVEN THE
SAME THREE SANDWICHES A DAY.

11.   THERE ARE NO PHONES I CAN USE TO
CALL MY SISTER WHO LIVES IN VIRGINIA
AND IS MARRIED TO A U.S. CITIZEN.
MY SISTER COULD CARE FOR MY DAUGHTER
IF NECESSARY BUT NO EFFORT THAT
I KNOW ABOUT HAS BEEN UNDERTAKEN
BY THE BORDER PATROL TO RELEASE
MY DAUGHTER TO MY SISTER.

  I DECLARE UNDER PENALTY OF
PERJURY THE ABOVE FACTS ARE TRUE.
EXECUTED THIS 1ST DAY OF FEBRUARY, 2016,
IN EL ~~PASO~~ McALLEN, TEXAS.

BENINA C ███████

128

Certification of Translation

I, Astrid Dominguez, depose and say: I am fluent in English and Spanish. I read the
above declaration to Benina C▇▇▇▇▇▇ and she confirmed its accuracy before
she executed the declaration. I declare under penalty of perjury that the foregoing
certification is true and correct. Executed this 1st day of February, 2016, in
McAllen, Texas.

Astrid Dominguez

# Exhibit 42
## Conditionally Filed Under Seal

Declaration of Evelin J█████

I, Evelin J█████████████████, declare under penalty of perjury the following is true and correct to the best of my recollection and knowledge.

1. My name is Evelin J█████████████. I was born in El Salvador on ████/1994. I am 21 years old.

2. I came to the US with my son, Jeferson A███████████ He is 2 years old and was born on ████/2013.

3. I am currently detained at the Ursela Detention Center. I was apprehended by immigration on Saturday evening - January 30, 2016. I was taken to two different CBP stations before being brought here.

4. When at the 2nd CBP station I was interviewed by an immigration official. He told me I had to sign a paper agreeing to be departed. I told him I was afraid to return to ES. He told me it didn't matter, that I was going to be departed and that if I didn't sign, he would sign for me. I asked him if I could

[fight] my case. He said "What for?"
That it would be a waste of time because I would be deported no matter what.

5. The CBP stations - both of them - were awful. They were freezing. There were no beds, blankets or pillows. We had to lay on the cold concrete floor. The lights were always on. I was transported multiple times, once around 2 am and another time around 11 pm. I am now very tired. Both my son and I are also now sick.

6. Since my detention) I have not been allowed a phone call or told that I or my son have a right to make a phone call)

7. No one has told me [my son] or I have the right to see a judge. In fact they told me we couldn't. No one told me I can have a lawyer nor gave me a list of lawyers either.

8. I also haven't had the chance to see a consulate

10. I have not had a chance to shower, change my clothes, or been given any toiletries

132

while in CBP custody - not even here at Ursula.

2/1/16

Certification of Translation

I, Shalyn Fluharty, depose and say: I am fluent in English and Spanish. I read the above declaration to Evelin J███████████ and she confirmed its accuracy before she executed the declaration. I declare under penalty of perjury that the foregoing certification is true and correct. Executed this 1st day of February, 2016, in McAllen, Texas.

Shalyn Fluharty

# Exhibit 43
## Conditionally Filed Under Seal

Declaration of Diana C████████

I, Diana C██████████ depose and say:

1. I am seventeen years of age and detained at the detention center in Dilley, Texas.

2. My date of birth is███████████ 1998. I was born in El Salvador.

3. I am detained here at Dilley with my mother, Ana O███████████████.

4. In brief, we left El Salvador because of threats of violence against me and my family in our village.

5. I entered the United States with my mother on or about June 2014. We entered without inspection and were quickly apprehended near McAllen, Texas. We were detained at border patrol facilities in McAllen for a few days and then transferred to El Paso for processing. My family and I were released and we went to Atlanta, Georgia, where we lived with my uncles all of which are U.S. citizens. I attended school in Atlanta for a year and a half.

6. While I was in detention before my release the authorities never gave me any notice of my rights as a juvenile or under the Flores case.

7. In Atlanta, my mother was supposed to appear in court but made a mistake and missed her court date. Once she realized her error she immediately presented herself at the local ICE office. As a result she was placed with ankle monitor and reported to her bi-monthly reports and I believe did not miss further appointments. In addition, my siblings and I appeared with my mother before an Immigration Judge. We had three court hearings and best I know we always appeared as required. The judge eventually issued an order of deportation. Our attorney, Rathy Roa, assured us that she would get our family a stay of removal and permission to stay in the country.

8. On or about January 3, 2016, immigration agents came to our house and arrested my family. They took us to the immigration office in Atlanta. We were searched and around 5 PM we were put on an airplane and brought to Dilley. None of the opfficers advised me or my mother of any rights that I had as a detained minor under the Flores case. We have now been here for about one month.

9. During our time here at Dilley no one has given me or my mother any notice about my rights as a minor or my rights under the Flores case. We have received word from our family back in El Salvador that a family from Dilley that was deported has been killed upon arrival at the airport by gang members. In addition, our photos were used in a media report on Telemundo and broadcast in El Salvador. As a result, our family has been threatened to the point that no one will even pick us up at the airport if we are deported for fear of being murdered.

10. While here at Dilley for the past month no one working with the immigration has talked to me about being released or my right to see a judge to decide if I should be

released. My mother has told me that while we have been detained here no one has spoken to her about us being released or my right to see a judge about my release.

I declare under penalty of perjury that the foregoing facts are true and correct. Executed this 2nd day of February, 2016, in Dilley, Texas.

Diana Ca

## Certification of Translation

I, Christopher Clay, depose and say: I am fluent in English and Spanish. I read the above declaration to Diana Ca           and she confirmed its accuracy before she executed the declaration. I declare under penalty of the perjury that the foregoing certification is true and correct. Executed this 2nd day of February, 2016, in Dilley, Texas.

Christopher Clay

137

# Exhibit 44
## Conditionally Filed Under Seal

DECLARATION OF AMARILIS L████████████████

I, Amarilis L████████████, depose and say:

1. I am 28 years old and detained at the detention center in Karnes City, TX.

2. My date of birth is ██████████ 1986. I was born in Guatemala.

3. I am detained here with my son, Diego ████████████████████. My son is 6 years old.

4. In summary, we left Guatemala because MS gang members threatened to kill my son, my husband, and me if we did not agree to pay them extortion money. They threatened us with death multiple times.

5. We were apprehended on January 23, 2016 near El Paso, TX.

6. We were transported to a border patrol station. I do not know where it was located. I was there for about 3 days with my son. When we arrived it was about 5 pm and my son and I were very hungry. I asked for food from the officials but they refused to give us any food. They later said that they would only give my son food, and all they gave him was a juice and a cookie. I went to sleep hungry. The next day all they gave us was soup for our 3 meals and we were still very hungry because it was not enough food. They gave us only 1 small bottle of water and a juice bottle for my son each day.

7. The border patrol station was very cold. It was only concrete in my cell and we had to sleep on a concrete bench, which was also a very cold temperature. We were not given mattresses or pillows for the concrete bench on which we had to sleep. It was very difficult to sleep. My son was very cold during the night and I asked to get my son his sweater that was kept outside of the room with out belongings but the officials said no. My son was crying because of the cold and I did not know what to do. We could not leave the cell at night. One night I had to use the restroom, which was located outside of the room, and I knocked for an official to open the door so that I could use the restroom. The officials did not answer me so I could not relieve myself until the next day and it was very painful. The whole experience was a total nightmare for my son. We were treated like animals.

7. No one at the border patrol facilities notified my son or I about the rights that my son had under the Flores case. No one told me that I could use a phone to call a lawyer nor did I see any phones to use to call a lawyer. No one gave me a list of lawyers I could call. There was no list of lawyers or free legal aid programs to call posted anywhere that I saw. No one asked me if I had relatives in the United States that could care for my son. No one told me that I had a right to see an Immigration Judge about my detention.

8. I came to the Karnes County Detention Center on January 26, 2016 with my son. The phones available cost 10 cents a minute and someone needs to deposit funds to use the phones. I am not aware of any free phones that can be used by minors or adults to speak

1

139

with lawyers. Neither my son nor I have not been told anything about his rights under the Flores case at this detention facility. I have not been told why my son and I are being detained. I have not been told that any decision has been made about releasing me. I have not been told that I can see a judge about my detention or release. Since the time we were apprehended no one has asked me any questions about whether I have any relatives or friends my son could live with in the U.S.

9. I had a credible fear interview with an asylum officer on February 2nd, 2016. I explained to the asylum officer that the reasons why my son and I fled Guatemala was because MS gang members threatened to kill me multiple times and extorted my family. I have not received any notification of a decision from the interview. In the meantime, no one at the detention center has told me how long it will take for me to be able to be released from detention or if I can be released on bond. No one has discussed with me the release of my son.

10. The water here is very chlorinated. My stomach hurts when I drink the water. I have to buy the bottled water using my commissary money because it is very difficult to drink the water from here. Each bottle costs about $1.30. It is very hard to be able to buy these bottles because I do not have much money so we try to consume as little water as possible. My son is having a very difficult time eating and no longer wants to eat the food here. My son and I have become sick from being here because of the cold temperature and large number of people in our room (8 people). It is very disturbing for my child to be detained here with several hundred unrelated adults. He is becoming more and more depressed and anxious the longer we are in this detention center unsure of our future and detained with hundreds of unrelated adults.

I declare under penalty of perjury that the foregoing facts are true and correct. Executed this 3rd day of February, 2016, in Karnes, Texas.



Amarilis L

Certification of Translation.

I, Tali Gires, depose and say: I am fluent in English and Spanish. I read the above declaration to the declarant and she confirmed its accuracy before she executed the declaration. I declare under penalty of the perjury that the foregoing certification is true and correct. Executed this 3rd day of February, 2016, in Karnes City, Texas.

Tali Gires

140

# Exhibit 45
## Conditionally Filed Under Seal

DECLARATION OF FRANKLIN R█████████████████████.

I, Franklin R█████████████████ depose and say:

1. I am 16 years old and detained at a detention center in Karnes City, Texas.

2. My date of birth is █████████ 1999. I was born in El Salvador.

3. I am detained here with my mother, Raquel de█████████████████████

4. In short, we left El Salvador because the MS gang members recruited me to join the gang and told me that if I did not join they would kill my mother and I. They told me this various time.

5. We were apprehended on January 22, 2016. I do not know where we were apprehended.

6. We were transported together to a border patrol station in McAllen for two days. I know my mother was held at the same place because later we were transported together to a second facility known as La Perrera (dog kennel). We spent two days here at La Perrera. After this we were transported together and we have been detained together at Karnes City.

7. At the border patrol station in McAllen I was held in an over-crowded cell with about 20 other minors. The cell was only concrete and had a concrete bench around the edge of the cell except where there was a metal toilet with a short wall around two sides. The toilet was a silver metal and had no toilet seat. There was a silver metal sink right on top of the toilet. There was no soap and no hand dryer or paper towels. Bright lights were left on all nightlong making it difficult to sleep and border patrol officials were constantly coming in and out of the cell. Making it even harder to sleep, we were not given mats or mattresses to sleep on. We were required to sleep on the concrete floor, which was also very cold. We had no pillows or blankets. Sleeping there was almost impossible. In the morning I felt completely weak and wasted.

8. The first day that I was there they gave me a cookie for breakfast, a sandwich (2 pieces of bread with one thin slice of meat) for lunch, and another cookie for dinner. I was very hungry all day because this was not enough food. The officials put a container with water in our room and gave us one cup to share amongst the 20 people in my cell. The water tasted very bad and the container was not clean. Very few minors held in my cell were willing to drink the water.

9. I was detained by border patrol for about two nights and two days and was not allowed to see my mother during that time. The first time I again saw my mother was when we were transported together to Karnes City.

10. No one at the border patrol facility notified me about any rights I had under the Flores case. I never heard of the Flores case until I was interviewed to provide this declaration. No one at the border patrol station asked me any questions about whether I had any

relatives or family friends to whom I could be released in the United States. My mother
was with me when I was interviewed and provided this declaration and she also says that
no one ever asked her about any relatives or close friends we have in the U.S. that could
take care of me if I was released from detention. I do have an uncle named Leandro Ortiz
Garcia, and he has permission to be in the United States and travels in and out of the
country frequently. He lives in San Antonio, Texas and he could care for me if I am
released from custody. My uncle owns his house. He works in construction. My uncle's
address is 12809 Old Spanish Trl. Live Oak, San Antonio, TX 78233. My uncle could
pick me up from Karnes City if I were released. My mother and I were planning to travel
to San Antonio, TX to live with my uncle. But no one has made any effort to reunite me
with my uncle. Since being detained and being in close contact with many other detained
minors and talking to them every day, to the best of my knowledge not one minor in
custody has been questioned about relatives in the U.S. or close family friends to whom
they could be released. Release is not an option if you are arrested with your mother.

11. No one with the border patrol told me that I could use a phone to call a lawyer. No
made a free phone available to me so I could have conversations with lawyers to help me
get released. No one told me that I had a right to see an Immigration Judge about my
detention. I have talked to my mother and my mother has said that no one told her about
any rights that I have as a minor, or any rights I may have to see an immigration judge, or
any rights I may have under the Flores case.

12. I came to Karnes City with my mother on January 25, 2016. Here at Karnes City the
phones available cost 10 cents a minute and someone needs to deposit funds to use the
phones. I cannot call an attorney when I want to. It is difficult for me to use the phone
because I do not have money in my account often. I am not aware of any free phones that
can be used by minors or adults to speak with lawyers. I have not been told about
anything about any rights I may have under the Flores case at this detention facility. I
have not been told that any decision has been made about releasing me. I have not been
told that I can see a judge about my detention or release. No one here has interviewed me
or my mother or asked us any questions about me being released to a relative or close
family friend here in the U.S.

13. On February 2, 2016, my mother and I were finally interviewed by an officer about
whether we fear returning to El Salvador. I told the officer I had been harrassed by the
MS gang in El Salvador who demanded that I join them and if I refused, they told me that
they would kill my mother or myself. They threatened me multiple times and on
December 26th they broke into my house to find me and I hid in my room. My mom and
I left for the U.S. on January 5th. As of now, we have not heard a result from our asylum
interview and no one has told us when we will find out this result.

14. In the meantime, no officer here at Karnes has said anything to me (or my mother)
about being released from detention or seeing an immigration judge to decide if I or my
mother should be released from detention. I feel like I am suspected of being a terrorist. I
am not a flight risk. I will always appear as required if I am released from detention. I am
not a criminal. I am not a danger to myself or to others. I think the only reason I have
been treated so inhumanely is so the U.S. immigration authorities can use me and other

2

143

detained minors as an example to convince other young people facing violence and even death in El Salvador to stay home, deal with the violence, risk death, but don't come here for protection.

I declare under penalty of perjury that the foregoing facts are true and correct. Executed this 3rd day of February, 2016, in Karnes City, Texas.

Franklin R

Certification of Translation.

I, Tali Gires, depose and say: I am fluent in English and Spanish. I read the above declaration to the declarant and he confirmed its accuracy before he executed the declaration. I declare under penalty of the perjury that the foregoing certification is true and correct. Executed this 3rd day of February, 2016, in Karnes City, Texas.

Tali Gires

3

144

# Exhibit 46
## Conditionally Filed Under Seal

Declaration of Herson L██████████████.

I, Herson Le██████████████, depose and say:

1. I am thirteen years of age and detained at the detention center in Karnes City, Texas.

2. My date of birth is █████████ 2002. I was born in El Salvador.

3. I am detained here at Karnes with my mother, Vanessa E██████████████ ████████.

4. In brief, we left El Salvador because of threats of violence against me. The MS 13 gang was trying to recruit me and I did not want to join them. I was not able to go to school because of the threats to my life. Once they entered our house and threatened my whole family.

5. We came to the United States before when I was four years old. My mother was concerned about the gangs, who were starting to take hold in the area where we lived. Immigration detained me and my mother during that time, although I don't remember everything that happened. I do remember being afraid of a room in the detention center where a man had committed suicide. We were deported.

6. I entered the United States with my mother on or about January 30, 2016. We tried to enter the United States at the bridge in El Paso, Texas. As my mother and I were walking through the inspection station, Border Patrol officers grabbed us from behind. An officer pulled my arm behind me and took me and my mother into a room.

7. When we were in that first room, an officer came to us and started telling us that we had broken the law and had no right to be in the United States. My mother tried to explain why we had come to seek protection and the officer said that he had no interest.

8. We were taken to another room that was quite cold. My mother called it the "heilera." The room was very small. We were given a small thin cushion to sleep on. We were not able to shower or bathe or brush our teeth. We were not given any soap or towels. Immigration gave us soup and a burrito only once a day. I was very hungry. I was sad, afraid, hungry, desperate.

9. We were detained at the border patrol facility there at the border crossing for about three nights until the early morning of February 2, 2016. My mother and I were taken my plane to the detention center in Karnes. To date, I have not been advised of my rights under the Flores case. My mother was not provided any information about my rights under the Flores case.

I declare under penalty of perjury that the foregoing facts are true and correct. Executed this 3rd day of February, 2016, in Karnes City, Texas.

Herson L██████████████.

146

Certification of Translation

I, Elissa Steglich, depose and say: I am fluent in English and Spanish. I read the above declaration to Herson Le█████████████████ and he confirmed its accuracy before she executed the declaration. I declare under penalty of the perjury that the foregoing certification is true and correct. Executed this 3rd day of February, 2016, in Karnes City, Texas.

_____
Elissa Steglich

147

# Exhibit 47
## Conditionally Filed Under Seal

Declaration of Vilma S███████

I, Vilma S█████████ depose and say:

1. My name is Vilma S█████████ I am the mother of Yeimi N███████
██████, who is four years old. She was born on████ 2011 in El Salvador. We are
both detained at the Karnes City, Texas detention center.

2. We came to the United States with my husband, Jose F███████ seeking
protection. As soon as immigration arrested us, they took my husband away. I have
not been able to contact him since that time. I believe that he is detained in New
Jersey.

4. We left El Salvador because a gang the government was unable or unwilling to
control was threatening our lives.

5. My husband and daughter and I entered the United States on December 18,
2015 by crossing the river along the US-Mexico border. Immigration officers arrested
us almost immediately. We were all still wet when they brought us to a border patrol
station called hielera in Rio Grande City, Texas. They separated us from my husband. I
haven't been able to speak to him since.

6. In the hielera, my daughter and I were held with about 15 other mothers and
their children. We were only fed two times a day. I watched as every one else was taken
out to be interviewed and to give their statement. I thought it was strange that I was not
being taken to give my statement and to ask for protection. Finally, an officer came and
told me to sign my deportation papers. I refused. He chastised me for not cooperating.

7. The next day, December 19, 2015, an officer came and tried to get me to sign
my deportation papers again. I refused. I was never advised of my rights other than to
contact my consulate or given any opportunity to ask for protection or explain how afraid
I was to return to El Salvador. I was never provided any information about the Flores
case with regards my child's rights. I asked to get my documents, which the officer had
taken the day before together with my husband's ID. The officer got my ID and my
daughter's birth certificate, but still refused to let me see or speak to my husband.

8. Officers then took me and my daughter to a car, and I thought we were being
deported. Instead, we were transported to the "perreira" about an hour and a half away.
There, my daughter and I were kept with about 25 or 30 other mothers and their children.
It was still very cold. No one there asked me any questions about whether my daughter
had any relatives she could be reunited with in the U.S. or whether there was any
responsible adult I wanted to designate for the care of my child if released from
detention. I have a sister who has temporary protected status and lives in Boston and
could easily care for my daughter. No one there told me anything about any rights my
daughter had under the Flores case. No forms relating to the Flores case were given to
me.

149

9. After two nights in the perreira, at 4 am on December 21, my daughter and I were taken by bus to the Karnes detention center. When I got here, another of the women said that I should write a note to immigration to explain my fear of return. I did so, and put the note in the immigration box on December 22nd or December 23rd. No one here has asked me any questions about whether my daughter has any relatives she could be reunited with in the U.S. or whether there was any responsible adult I want to designate for the care of my child if released from detention. As mentioned above, my sister lives in Boston and easily could take care of my daughter in a safe environment. No one here has told me anything about any rights my daughter has under the Flores case. No forms relating to the Flores case have bee given to me.

10. After almost a week, I finally received information about the credible fear process.

11. Almost a week later, on January 5, 2016, I had an interview with the asylum officer. The asylum officer showed me the documents that I had refused to sign at the border patrol station. They were filled with lies. They said that I was coming to the US to work and to live with relatives in Houston. They said that I was not afraid to return to El Salvador. I felt that I had been deceived. I came fleeing for my life, and the officers just made things up that have hurt my case. I think that they just took the information from my ID and my daughter's birth certificate to prepare the documents. The part about working in Houston, they just made up. My sister lives in Boston, not Houston, and my motive in coming was to protect my family from harm.

12. The interview with the asylum officer went poorly. My daughter was with me and was playing with the phone and very distracted. She began to cry, and we had to interrupt the interview while I took her to childcare. The officer asked her questions that didn't have anything to do with why we came, like if she was afraid of the dark or of spiders. That night, she told me, "Mommy, I'm not afraid of the dark or spiders. I'm afraid of the guns." She was thinking of the gangs, but the officer never heard that information.

13. Two days after my interview, I was told that I failed to show asylum eligibility. I asked to see the judge. At that point, I contacted RACIES whose attorneys are now helping me.

14. It took a couple of weeks to see the judge. On January 20, 2016, the judge denied my review. I can't understand why no one can see how much danger my family faces. I cannot go back to El Salvador.

15. RAICES is helping me to ask the asylum office to reconsider its decision. I know that officers come in the middle of the night to deport families. I go to bed every night afraid.

16. My daughter and I have been detained 45 days. I still have not been able to communicate with my husband. Additionally, no one has asked if I have any other family here in the United States willing to house Yeimi. My sister lives in Boston, and of course would open her home to my daughter or to our entire family.

2

150

I declare under penalty of perjury that the foregoing facts are true and correct. Executed this 3rd day of February, 2016, in Karnes, Texas.



Vilma S

## Certification of Translation

I, Elissa Steglich, depose and say: I am fluent in English and Spanish. I read the above declaration to Vilma S            and she confirmed its accuracy before she executed the declaration. I declare under penalty of the perjury that the foregoing certification is true and correct. Executed this 3rd day of February, 2016, in Karnes City, Texas.

Elissa Steglich

3

# Exhibit 48
## Conditionally Filed Under Seal

DECLARATION OF LENY A▊

I, Leny A▊, depose and say:

1. I am detained at the detention center in Karnes City, Texas, with my mother, Blanca R▊ ▊, who was born in El Salvador on ▊ 1969.

2. My date of birth is ▊ 2000. I was born in El Salvador.

3. In summary, I left El Salvador because I suffered death threats. I have explained my situation in detail to the immigration authorities.

4. My mother and I arrived in the United States on January 21, 2016 and presented ourselves to U.S. Customs and Border Patrol soon after entering the United States.

5. My aunt, named Blanca A▊, lives at ▊ and is a United States citizen. She has told me that she would like me to live with her, and I would also like to go live with her in Houston. My aunt works in a restaurant and would be able to take care of me in her home, where she lives with her son, my cousin. My mother would also like me to go live with my ~~aunt~~ mother. If I were released today, my aunt could pick me up and take me to her home. However, as explained below, for the past two weeks no official has talked to me or my mother about who I could be released to pending the outcome of my case.

6. On January 21, 2016, my mom and I were transported to a border patrol station where we were held for about a day and a half. We spent one night in the border patrol station. At that border patrol station, my mother did a video interview. I wasn't present during the interview but she told me about it. She told me that they asked her if she had family in the United States, and she told them that my aunt (my father's sister) lived here and gave them my aunt's address. My mother told me that during the interview, nobody mentioned the possibility that I could be released to my aunt or asked any questions about whether my aunt could take custody of me.

7. On or about January 23, 2016, we were taken to a place called La Perrera (dog cage). After a few hours, we were transported to Karnes, where we are still detained.

8. To this day no officer or employee at Karnes has discussed with me or my mom the possibility that I could be released to my aunt in Houston. To the best of my knowledge no one has contacted my aunt to learn more about whether she can take care and custody of me.

9. I am not a flight risk. I am not a danger to myself or anyone else. I am not a juvenile delinquent. I have fled a violent situation hoping to find protection and safety in this country. Instead, I am being detained with hundreds of unrelated adults and have no idea when or how I will ever be released.

I declare under penalty of perjury that the foregoing facts are true and correct. Executed this 3rd day of February, 2016, in Karnes City, Texas.



Leny A▊

1

153

Certification of Translation.

I, Virginia Corrigan, depose and say: I am fluent in English and Spanish. I read the above declaration to the declarant Leny A███████████████ and he confirmed its accuracy before he executed the declaration.

I declare under penalty of the perjury that the foregoing certification is true and correct. Executed this 3rd day of February, 2016, in Karnes City, Texas.

Virginia Corrigan

# Exhibit 49
## Conditionally Filed Under Seal

DECLARATION OF EDGARDO D███████████████████,

I, Edgardo D█████████████, depose and say:

1. I am fourteen years of age and detained at the detention center in Dilley, Texas.

2. My date of birth is ███████ 2001. I was born in El Salvador.

3. I am detained here with my mother, Francisca M██████████████.

4. In summary, we left El Salvador because I was threatened with death if I refused to join a gang and my mother was threatened with death if she refused to pay extortion money to a gang.

5. We were apprehended on Monday January 18, 2016, around San Miguel Aleman a few minutes after entering the United States.

6. We were transported to a border patrol station in McAllen where we were held for about 24 hours. We were separated and held in different cells. I know my mother was held at the same place because later we were transported together to a second facility known as La Perrera (dog kennel) and later we have been detained together at Dilley. At the border patrol station in McAllen I was held in a crowded cell with about 15 other minors. The cell was all concrete and had a concrete bench around the edge of the cell. There was a toilet with a short wall around it. The toilet was metal and had no toilet seat. There was one roll of toilet paper. There was a metal sink right above the toilet. There was no soap and no hand dryer or paper towels. Anyone could look over the short wall into the toilet area. The cell was very cold. I did not have a jacket and was not provided a jacket to wear in the cold cell. I felt very, very cold in that cell. The cell had bright lights on the ceiling. These lights were left on all night long making it very had to sleep. Making it even harder to sleep, we were not given mats or mattresses to sleep on. We were required to sleep on the concrete floor, which was also super cold. We had no pillows or blankets. Each minor was given a thin silver foil paper to cover ourselves with. The minors were so cold we would wrap the foil around us all the time. But it didn't make much difference. Sleeping there was almost impossible. In the morning I was exhausted and the other minors also seemed exhausted.

7. For the one night and next day I was there I was only given one sandwich to eat. This was two slices of dry bread with one slice of bologna in the middle. Nothing else was in the sandwich. The cell had a cooler of water but there was only one cup for all the minors to share and the cooler was very dirty so very few of the minors drank that water.

8. My mom told me later that she asked to see me while we were detained by the border patrol but her request was denied. I was detained by border patrol for two nights and two days and was not allowed to see my mother during that time. The first time I again saw my mother was when we were transported together to Dilley.

9. No one at the border patrol facilities notified me about rights I had as a minor or any rights I had under the Flores case. No one told me that I could use a phone to call a lawyer nor did I see any phones to use to call a lawyer. No one gave me a list of lawyers I could call. There was no list of lawyers or free legal aid programs to call posted anywhere that I saw. No one asked me if I had relatives in the United States other than my mother who could care for me. I do

have an uncle named Francisco Martinez, a lawful permanent resident, living in Maryland who could care for me if I am released from custody. My mother and I were planning to travel to Maryland to live with my uncle. No one told me that I had a right to see an Immigration Judge about my detention. No one asked me if I feared return to my home country. I have talked to my mother and my mother has said that no one has told her about any rights that I have as a minor, or any rights I may have to see an immigration judge.

10. I came to Dilley with my mother on Wednesday, January 20, 2016. Here at Dilley I cannot call an attorney. The phones available cost 10 cents a minute and someone needs to deposit funds to use the phones. I am not aware of any free phones that can be used by minors or adults to speak with lawyers. As best I remember I have not been told about my rights under the Flores case at this detention facility. I have not been told that any decision has been made about releasing me. I have not been told that I can see a judge about my detention or release. On January 25, 2016 my mother and I were finally interviewed by an officer about whether we feared returning to El Salvador. I told the officer I had been harassed by gangs (Pandeas 18) in El Salvador who demanded I join them or would be killed. If I did not join, they said, they would kill me. This happened about a month before we fled the country. My mother explained that she was also threatened with death if she refused to pay the gang "rent" for running a small used book store. Four days later, on January 29, 2016, we received a decision denying our claim of fear. A form denial is used with a box checked that says there is "no significant possibility that you could establish that the harm you fear would be inflicted by, or at the instigation of, or with the consent or acquiescence of, a government official …"

11. No individualized reasons are given for the denial. We had told the officer during our interview that the police are accomplices with the gangs in their extortion and violence against youth and store owners. We even explained that we faced arrest by the police if we failed to pay extortion by the gangs. We have appealed the negative decision to an Immigration Judge. In the meantime, no officer here at Dilley has said anything to me or my mother about being released from detention or seeing an immigration judge to decide if I or I and my mother should be released from detention. We do not know  how long it will take to see an Immigration Judge about the denial of our fear claim.

I declare under penalty of perjury that the foregoing facts are true and correct. Executed this 2nd day of February, 2016, in Dilley, Texas.

Certification of Translation.

I, Christopher Clay, depose and say: I am fluent in English and Spanish. I read the above declaration to the declarant and he confirmed its accuracy before he executed the declaration. I declare under pealty of the perjury that the foregoing certification is true and correct. Executed this 2nd day of February, 2016, in Dilley, Texas.

Christopher Clay

2

# Exhibit 50
## Conditionally Filed Under Seal

DECLARATION OF FLEMBER J█████████████████

I, Flember J█████████████ depose and say:

1.     I am twelve years of age and detained at the detention center in Dilley, Texas.

2.     My date of birth is █████████ 2003. I was born in El Salvador. I am detained here with my mother, Claudia C█████████████ and sister Angie P████████████████ (5 years old).

3.   We left El Salvador with my mother, sister and father.  We left because my parents were being extorted for money by gang members every month.  Our family didn't have the money, so the gang members threatened to kill me.  We couldn't move to any other city in El Salvador because we had a non-payment target on our back.

4.   We were apprehended on January 26, 2016, after crossing the river and entering the United States.

5.   After that, we were transported to a border patrol station where we were held for about two days and three nights.  I was separated from my family the whole time.  I was not allowed to see my mother or my father.  I was held with other boys.  I barely slept because the floor was too cold, the temperature was very cold, and I was scared. I got very sick, and my nose bled.  When I complained of my nose bleeds, the officers said they couldn't do anything.  We were give three baloney sandwiches a day.  The water tasted like it had bleach and my stomach hurt when I drank it.  Later my mom told me that she was given the same thing.  My sister who is 5 years old was not given any special food or blankets.  The officer threw away the sweater my mom used to keep my sister warm.  During the three nights we were there, I was not given the opportunity to shower or brush my teeth.  I wore the same clothes the whole time.  My mother also told me that she was separated from my father.  The toilets at this station were out in the open, with only a short wall surrounding it.  The toilet had not water.  Everyone could see me when I used the toilet.  I had to use the bathroom with no privacy. There was no soap to wash my hands. My sister got sick and threw up.

6.   No one at the border patrol facilities notified me about rights I had as a minor or any rights I had under the Flores case.  No one told me that I could use a phone to call a lawyer nor did I see any phones to use to call a lawyer.  No one gave me a list of lawyers I could call. There was no list of lawyers or free legal aid programs to call posted anywhere that I saw. No one told me that I had a right to see an Immigration Judge about my detention.  My mother later told me that the officers at the border patrol took her fingerprints.  After the second night, my mother was asked if we feared return to my home country. She said yes and explained that we received death threats from the gang.  I have talked to my mother and my mother has said that no one has told her about any rights that I have as a minor, or any rights I may have to see an immigration judge.

7.   After being in the border patrol facility for three nights, we were moved to a second place.  We were there one day.  My father was not with us anymore.  My mother and sister were separated from me.  There were no beds or blankets, only mattresses on the floor. We were given a burrito to eat.

8. I came to Dilley with my mother and sister on Friday, January 29, 2016 and 11:00PM. Right now, I cannot use the phones because I have used up all my three free minutes. I am not aware of any free phones that can be used by minors or adults to speak with lawyers. As best I remember I have not been told about my rights under the Flores case at this detention facility. I have not been told that any decision has been made about releasing me. I have not been told that I can see a judge about my detention or release. We have not yet had our credible fear interview.

I declare under penalty of perjury that the foregoing facts are true and correct. Executed this 2nd day of February, 2016, in Dilley, Texas.



Flember .

Certification of Translation.

I, Elena Garcia, depose and say: I am fluent in English and Spanish. I read the above declaration to the declarant and he confirmed its accuracy before he executed the declaration. I declare under penalty of the perjury that the foregoing certification is true and correct. Executed this 2nd day of February, 2016, in Dilley, Texas.

Elena Garcia

2

160

# Exhibit 51
## Conditionally Filed Under Seal

DECLARATION OF KAREN L██████████████████

I, Karen L██████████████ depose and say:

1. I am twelve years of age and detained at the detention center in Dilley, Texas.

2. My date of birth is ████ 2003. I was born in El Salvador.

3. I am detained here with my mother, Ana B█████████████████

4. In summary, we left El Salvador because I was threatened with death if I refused to be of "service" to a gang and my mother was threatened with death if she refused to hand me over to the gang. The gang then killed and mutilated two of my cousins. My mother and I left El Salvador shortly after.

5. We were apprehended on January 21, 2016, a few minutes after crossing the river and entering the United States.

6. We were first put in a truck with a cage. We called this the "dog catcher." The immigration officers kept us in the truck for a couple of hours. We were still soaking wet. My mother told the officer that we were wet but instead of giving us clothes, he turned up the air conditioner. There were four of us in the truck. My mother and I were then taken to a station and held for 2 hours. The officers took down all our information but didn't inform us of any rights. We were not given any food or water.

7. After that, we were transported to a border patrol station where we were held for about 24 hours. No one at the border patrol facilities notified me about rights I had as a minor or any rights I had under the Flores case. No one told me that I could use a phone to call a lawyer. I did not see any telephones we could use to call a lawyer. No one gave me a list of lawyers I could call. There was no list of legal programs to call posted anywhere in my cell. None of the officers questioned me about any relatives I had in the U.S. who could care for me. I do have an uncle named Eliezer living in California who could care for me if I am released. My mother and I were planning to travel to California to live with my uncle.

8. No one told me that I had a right to see an Immigration Judge about my detention. My mother was asked if we feared return to my home country. She said yes and explained that we received death threats from the gang. I have talked to my mother and my mother has said that no one spoke to her about my legal rights as a child, or anything about my right to see an immigration judge. Instead, we were told that we had to sign a deportation paper. My mother told them she would not, and the officer told my mother that he could sign for her. My mother refused to sign this form because the officers refused to read the form back to me. We later found out that the officers filled out the "Record of Sworn Statement" with false information. For example, when asked if we fear persecution upon our return, my mother answered "Yes" and explained our situation. But the form reads "No." When asked why we left our Country, my mother answered that it was because of the gang threats, but the form reads "to find work."

9. The toilets at this station were out in the open, with only a small wall around the toilet. Everyone could see me when I used the toilet. I had to use the bathroom with no privacy. The cell was very cold. We called it the "ice box." I did not have a jacket and was not given a jacket to wear

in the ice cold cell. My clothes were still wet from my journey. Each minor was given a thin silver paper to cover ourselves with but it didn't make much difference. We didn't have beds, blankets or pillows. We were given water that tasted like bleach. This facility was very crowded the whole time we were there. There was about 60 people in one room. There was no space to sit or lay down. We could not sleep because there was no space. I got sick from the cold and also had a really bad headache. We didn't ask for medical help because the officers were so hostile.

10. After being in the "ice box" for about one day, we were moved to a third facility. We called this facility the "dog pound" because the holding rooms looked like cages. We were there one day, and one night. First, they checked us for lice. This facility was horrible because I was separated from my mother the whole night. Later, my mom told me she asked to be put in a room with me or to visit me, but that the officers refused. My mom was put in a room with only adults. I slept on a mattress that night. We were not given any food upon our arrival there. We were only given one sandwich to eat the next morning. This was two slices of dry bread with one slice of ham in the middle. Nothing else was in the sandwich.

11. I came to Dilley with my mother on Sunday, January 23, 2016. Here at Dilley I cannot call an attorney because I cannot afford the phone calls. The phones cost 10 cents a minute. I am not aware of any free phones that can be used by minors (or anyone else) speak with lawyers. My mother feels as though there aren't enough resources to call attorneys and inquire about representation. I have not been told about my rights under the Flores case at this detention facility. I have not been told that any decision has been made about releasing me. I have not been told that I can see a judge about my release.

12. On January 28, 2016 my mother and I were finally interviewed by an officer about whether we fear returning to El Salvador. I told the officer I had been harassed by gangs in El Salvador who demanded I join them or would be killed. They told my mother that if I was not given over to them, they would kill my family. My mother explained the death threats she received and also explained that my cousins had been killed by the same gang. My mom presented the death certificates for my cousin's death which indicated how they were killed. We have not yet received a decision regarding our claim of fear.

I declare under penalty of perjury that the foregoing facts are true and correct. Executed this 2nd day of February, 2016, in Dilley, Texas.



Karen L█████████████

Certification of Translation.

I, Elena Garcia, depose and say: I am fluent in English and Spanish. I read the above declaration to the declarant and she confirmed its accuracy before she executed the declaration. I declare under penalty of the perjury that the foregoing certification is true and correct. Executed this 2nd day of February, 2016, in Dilley, Texas.

Elena Garcia

2

163

# Exhibit 52
## Conditionally Filed Under Seal

Declaration of Madelyn M███████

I, Madelyn M███████, depose and say:

1. I am thirteen years of age and detained at the detention center in Dilley, Texas.

2. My date of birth is ████████ 2002. I was born in El Salvador.

3. I am detained here at Dilley with my mother, Elsy N█████████.

4. In brief, we left El Salvador because of threats of violence against me at the school I was attending.

5. I entered the United States with my mother on or about May 12, 2015. We entered without inspection and were quickly apprehended near McAllen, Texas. We were detained at border patrol facilities in McAllen for a few days and then transferred to Dilley. We were detained at Dilley for about a month and eight days and then released on a bond of $5,000 after it was found that we had a fear of return to El Salvador. We went to Atlanta, Georgia, where we lived with my father Joel Edgardo Menjivar. I attended school in Atlanta starting in August 2015. While I was in detention before my release the authorities never gave me any notice of my rights as a juvenile or under the Flores case.

6. In Atlanta I appeared with my mother before an Immigration Judge. This was about July 2015. We did not have a lawyer with us. The judge told us we had to come next time with an attorney. We went back to the court in about August and this time had an attorney my mother or father paid for. The judge gave us another date to appear in about September. In September we went to court with the attorney and were told there was an order of deportation against us. I did not understand what was happening in the hearing. The attorney told us not to worry that she was going to get us permission to remain in the country for another year.

7. During this time I continued in public school in the seventh grade and we lived with my father. My mother told me around December that our attorney was still saying that she would soon get us papers to remain in the United States.

8. On January 3, 2016, immigration agents came to our house and arrested my mother and me. I was still on school break. They took us to the immigration office in Atlanta. Around 5 PM we were put on an airplane and brought back to Dilley. We have now been here for about one month.

9. During our time here at Dilley no one has given me or my mother any notice about my rights as a minor or my rights under the Flores case. No one has questioned me about release and placement back with my father. To the best of my knowledge my father has never been arrested or charged with any crimes in the United States. My father works as a painter and rents a 4 bedroom house in Atlanta. He has never abused me or my mother in any way that I am aware of. He took good care of me while we were living with him in Atlanta.

10. While here at Dilley for the past month no one working with the immigration has talked to me about being released or my right to see a judge to decide if I should be released. My mother has told me that while we have been detained here no one has spoken to her about us being released or my right to see a judge about my release.

11. Here at Dilley there is a high fence surrounding us and we cannot leave the detention center. There are guards everywhere. It is too far from Atlanta for my father to visit us. We share a room with three other families. Guards come into our rooms at night every hour to check on us. I am always afraid that we are close to being deported and returned to El Salvador where we will not be safe. I am very depressed and worry every day about our situation. I am told that our removal from the country has been temporarily blocked. I have no idea how long this process is going to take. I did not run away when we were released before and I have no idea why I am being detained now with unrelated adults, without a hearing and without being released until our case is resolved.

I declare under penalty of perjury that the foregoing facts are true and correct. Executed this 2nd day of February, 2016, in Dilley, Texas.



Madelyn M████████

## Certification of Translation

I, Christopher Clay, depose and say: I am fluent in English and Spanish. I read the above declaration to Madelyn M████████ and she confirmed its accuracy before she executed the declaration. I declare under penalty of the perjury that the foregoing certification is true and correct. Executed this 2nd day of February, 2016, in Dilley, Texas.

Christopher Clay

2

166

# Exhibit 53
## Conditionally Filed Under Seal

1

Declaration of FAUSTINO C█

I, Faustino C█ depose and say:

1. I am a citizen of Guatemala.

2. My date of birth is ████████ 1983.

3. I left Guatemala with my son, WILLIAM
S████████, born ████████ 1999,
because my brother was killed in 2015 and
it was not safe for us to remain in the
country. My son and I were apprehended
by US Border Patrol on Friday January 29, 2016,
near McAllen, Texas.

4. Since our arrest, I have not been
allowed to visit with my son. We were
detained in a Border Patrol station for 3
nights. We were held in different cells.
We finally were together for a few minutes
when we were transported to the Ursula
facility where we are now detained in
separate pods.

5. When being transported here my son
told me that while he was detained at the Border
Patrol station, like me, he had to sleep for
about three nights on a cold concrete floor,
he had no mattress or blanket, and he was
given a silver sheet to cover himself at
night. Like me he was only given three
thin sandwiches a day with one slice of cold meat,
one for breakfast, one for lunch, and one
for dinner.

6. Both my son and I asked to visit each
other and these requests have been denied.
My son told me when being transported here
that no one with the border patrol
has told him anything about his rights and

168

② FAUSTINO C██████

no one has told me about his rights as a minor. No one has told me about my son's rights under the Flores cases.

7. I am informed that I may soon be released with my son because the authorities here only detain mothers with children.

I declare under penalty of perjury that the foregoing facts are true and correct. Executed this 1st day of February 2016 in McAllen, Texas.

████████████████

FAUSTINO C████████

I Astrid Dominguez declare that I'm proficient in English and Spanish. I obtained the above declaration from Faustino C██████ and read it to him in the Spanish language. He affirmed its accuracy before executing and dating the above declaration.

I declare under penalty of perjury that the above paragraph is true and correct. Executed this 1st day of February, 2016, in the city of McAllen, TX

169

# Exhibit 54
## Conditionally Filed Under Seal

Declaration of Fany E▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1. I am a citizen and national of Honduras. I was born on ▮▮▮▮▮▮, 1991.

2. I am currently detained at the ICE detention center in Karnes Texas with my son, Kenner S▮▮▮▮▮▮▮▮. Kenner was born on ▮▮▮▮▮▮, 2012 in Honduras.

3. I first entered the United States on Thursday December 17, 2015 and was apprehended by U.S. Border Patrol on Friday December 18, 2015.

4. I was held by the Border Patrol with my son for two days and two nights. I do not know the location where I was detained. My son and I had to sleep on the floor. The room where we were held was very cold and very crowded. We were not given mattresses or blankets. We were each given a foil sheet to use as a blanket. The floor we had to sleep on was very hard and very cold. Bright lights were kept on all day and all night long. With these conditions it was almost impossible to sleep for several days. There was no soap to wash with. There were no cloth or paper towels to dry ourselves with. There was only a metal toilet with no toilet seat everyone had to share, and a small sink sitting right above the dirty toilet with only cold water. We got very little food while there. We got food two times a day but the quantities were tiny and Kenner and I were very hungry the whole time we were detained. This experience was terrifying for both of us. We were exhausted from lack of sleep, hungry, had no access to telephones, and were locked down in a dirty overcrowded cell for two days and nights. During this time no one told me that my son had any special rights under the Flores case. I tried to explain that I feared return to Honduras, but no one seem to care and I was having trouble communicating because I felt very sick from the trip.

5. On or about December 20, 2015, I was woken at about 4 AM and Kenner and I were transported to Karnes where we have been detained since that time. Here at Karnes no officer has explained any special rights my son may have under the Flores case.

6. I was finally given a fear interview about fifteen days after arriving here at Karnes. I do not know why it took about two weeks to schedule the fear interview. I was interviewed over the course of a few days, on January 4, 6, and 7, 2016. I do not know why I was interviewed on three different days. I did not have an attorney present to help me during the interview.

7. On January 8, 2016 I received a negative determination on my credible fear interview and received a notice of referral to an immigration judge. I cannot read the form because its in English but I have been told one box is checked saying that there is a significant possibility that my statements underlying my claim could be found credible in a full asylum hearing but that I have not established a credible fear of persecution. I am afraid to return to Honduras because I was threatened by the people who killed my cousin. I was working with my cousin and I saw people come into the place we were working. I fled and my cousin was killed. After that, I received threats because the

1

people who killed my cousin believed I would report on them. They threatened to kill me. I told the person who interviewed me all of this.

8. I did not receive a hearing before the immigration judge until January 16, 2016. I do not know why it took so long to receive a hearing before an immigration judge. The judge affirmed the decision of the asylum officer.

9. My attorney asked for a reconsideration of my case shortly after my hearing before the immigration judge. That request was not denied until on or about January 29, 2016. I do not know why it took so long for my request to be denied.

10. Since being at the Karnes facility, my son has not been eating anything but apples and bananas. We have not been able to drink much water because it tastes like chlorine. Being detained this long has really been affecting my son negatively. I have been having trouble sleeping because I am so worried for my son.

I declare under penalty of perjury the foregoing is true and correct. Executed this 3rd day of February, 2016 in Karnes City, Texas.



Fany E                                                    z

### Certification of Translation

I, Virginia Corrigan, depose and say: I am fluent in English and Spanish. I read the above declaration to Fany E                        and she confirmed its accuracy before she executed the declaration. I declare under penalty of the perjury that the foregoing certification is true and correct. Executed this 3rd day of February, 2016, in Karnes City, Texas.

Virginia Corrigan

# Exhibit 55
## Conditionally Filed Under Seal

Declaration of Josselyn M████████

I, Josselyn M████████, declare under penalty of perjury that the following is true to the best of my recollection and knowledge, and that the following statement has been read to me in Spanish.

1. My name is Josselyn M████████
2. I am from El Salvador.
3. I am 14 years old. I was born ████ /200█
4. I came to the US with my father, Jose A████████, and my brother, Oscar H████████. Oscar is 17 years old.
5. I am not sure when immigration caught me. I think it was Saturday January 30, 2016 around 6 pm.
6. Since I was apprehended I have not spoken to immigration officials or been interviewed. They have not explained anything to me or given me any papers.
7. I have been held in a cement cell with other women and their children. I have not seen or spoken to my father or brother since being placed in this cell. This cell is very crowded. I think there are 40 or 50 people here. Yesterday I think there were more than 70 people in this cell.

8. I am afraid to return to El Salvador. My two brothers were killed. I cannot think about this without crying. I have cried a lot since arriving to this station. I want to tell someone who can help me that I am afraid.

9. I have not seen a Judge and no one has told me I have a right to see one.

10. The lights have been on since I got to this station. There are no beds or blankets here, just pieces of foil. I have slept on the concrete floor and a concrete bench that lines the wall. They are very cold. _I wish there was a mattress or pillows here_

11. I have not been told I can have a lawyer or been given a list of phone numbers for lawyers.

12. The food here is not good. It is always the same - a bad sandwich.

13. The water tastes like chlorine.

14. There is no door on the bathroom, so there is not privacy.

15. I have not been given access to a phone or told I can make a phone call. I would like to call my mom, because she is in the United States.

16. I have not been told I can speak to my consulate.

175

17. I have only been taken out of this cell when they clean it and when they distribute the food. I have not had the chance to go outside or play.

18. This place makes me scared and sad.

19. I also want to talk about the way the people here treat me. They are very mean and angry. They scream.

20. I want to get out of here as quickly as possible and do not understand why I have been here so long.

2/1/2016

176

## Certification of Translation

I, Shalyn Fluharty, depose and say: l am fluent in English and Spanish. I read the above declaration to Josselyn M █████████ and she confirmed its accuracy before she executed the declaration. I declare under penalty of perjury that the foregoing certification is true and correct. Executed this 1st day of February, 2016, in McAllen, Texas.

Shalyn Fluharty

177

# Exhibit 56
## Conditionally Filed Under Seal

DECLARATION OF SILVIA V█████

I, SILVIA V█████, DEPOSE AND SAY:

1. I AM A CITIZEN OF GUATEMALA. I AM PROVIDING THIS STATEMENT WHILE DETAINED AT A BORDER PATROL FACILITY IN MCALLEN, TEXAS.

2. MY DATE OF BIRTH IS █████, 1996. I WAS BORN IN MONJAS, JALAPA, GUATEMALA.

3. I LEFT GUATEMALA WITH MY MOTHER, BLANCA ESTELA LIMA GARCIA, MY THREE YEAR OLD BROTHER ALVARO C█████, AND MY TWO YEAR OLD SON JUNIOR A█████. WE FLED GUATEMALA AS A RESULT OF VIOLENT DOMESTIC ABUSE INCLUDING VIOLENT PHYSICAL ATTACKS AND DEATH THREATS. WE WERE APPREHENDED BY U.S. BORDER PATROL AS SOON AS WE ENTERED THE COUNTRY CLOSE TO MCALLEN, TEXAS.

4. HERE AT THE BORDER PATROL FACILITY WE ARE HELD IN A CELL WITH ABOUT THIRTY TO FOURTY OTHER MOTHERS AND CHILDREN. THE CELL HAS NO FURNITURE. THERE IS A CONCRETE FLOOR AND CONCRETE BENCH AROUND THE WALLS OF THE CELL. PEOPLE FILL THE FLOOR AND BENCHES. EVERYONE SLEEPS ON THE CONCRETE FLOORS AND BENCHES SIDE BY SIDE. THE BRIGHT LIGHTS ON THE CEILING STAY ON ALL NIGHTS. WE HAVE NO MATTRESSES OR PILLOWS OR BLANKETS. WE ONLY HAVE A THIN SILVER FOIL PAPER TO COVER OURSELVES WHEN TRYING TO SLEEP. IT IS VERY HARD TO GET ANY SLEEP BECAUSE THE FLOOR IS HARD AND COLD, THE CELL IS VERY CROWDED, THE LIGHTS ARE ON & VERY BRIGHT, AND CHILDREN ARE CRYING AND COUGHING ALL NIGHT

②    SILVIA ███████

LONG.

5. WE HAVE NO SOAP, NO TOWELS, NO TOOTHBRUSHES, NO PAPER TOWELS, NO BABYWIPES, ETC. IN THE CELL THERE ARE 2 METAL TOILETS WITH NO TOILET SEATS AND TWO SMALL METAL SINKS (WITH NO SOAP) USED TO WASH OUR HANDS AND FOR DRINKING. THE SINKS ONLY HAVE COLD WATER. IN THE CELL THERE IS A PLASTIC CONTAINER WITH WATER BUT OFTEN THERE ARE NO CUPS TO USE TO GET WATER FROM THE CONTAINER.

6. OUR ONLY FOOD HAS BEEN TWO PIECES OF BREAD WITH ONE THIN, SLICE OF BOLOGNE OR SOMETHING THAT LOOKS LIKE MEAT. THESE SANDWICHES ARE DISTRIBUTED FOR BREAKFAST, LUNCH AND DINNER. EVERYONE ALSO GETS A SMALL PLASTIC CONTAINER (250 ML) OF "FRUTOSO" TWICE A DAY. THIS TASTES LIKE COLORED WATER WITH SUGAR. WE ARE VERY HUNGRY BECAUSE OF THE LACK OF FOOD AND EXHAUSTED BECAUSE OF LACK OF SLEEP AT THIS FACILITY.

7. WE HAVE NO PHONES TO CONTACT LAWYERS OR FAMILY MEMBERS. YOU HAVE TO REQUEST TO USE A PHONE AND PERMISSION MAY BE GRANTED OR DENIED. EITHER WAY, THERE ARE NO PHONES WHERE YOU CAN HAVE A CONFIDENTIAL CONVERSATION WITH A LAWYER.

8. NO EFFORTS HAVE BEEN MADE BY THE BORDER PATROL TO RELEASE MY BROTHER OR MY SON TO TWO UNCLES LIVING IN CONNECTICUT, U.S.

180

③          SILVIA █████

I DECLARE UNDER PENALTY OF PERJURY
THAT THE FOREGOING FACTS ARE TRUE &
CORRECT. EXECUTED THIS FIRST DAY OF
FEBRUARY, 2016, IN McALLEN, TEXAS.

████████
SILVIA V█████████

I Astrid Dominguez declare that I'm proficient in
English and Spanish. I obtained the above declaration
from Silvia V█████ and read it to her in Spanish language.
She affirmed its accuracy before executing and
dating the above declaration

I declare under penalty of perjury that the
above paragraph is true and correct. Executed
this 1st day of February, 2016, in the city of
McAllen, TX

181

# Exhibit 57
## Conditionally Filed Under Seal

DECLARATION OF Yesenia Y_____ A# _____

I, Yesenia Y_____, declare under penalty of perjury that the following is true to the best of my recollection and knowledge, and that the following statement has been read to me in the Spanish language:

1. I am a citizen of El Salvador.

2. My date of birth is _____, 1992.

3. I left El Salvador with my son, whose name is Dinien A_____ His date of birth is _____ 2014.

4. I left El Salvador because I was afraid for my life and the life of my son.

5. I came into contact with and presented myself to U.S. Border Patrol Agents about 20 minutes after entering the U.S. on Sunday, January 31, 2016, near McAllen, Texas. I presented with my son.

6. I have been detained by Border Patrol since Sunday, January 31, 2016.

7. After presenting myself, my son and I waited for about 8 hours by the side of a road. I was not given any food. I waited with my son from about 4 p.m. to about midnight.

8. I was brought to this center last night in the middle of the night. I sat with my son on a concrete bench and was unable to sleep. No one is provided a mattress or pillow. If a person asks, they recieve a silver paper. I did not ask and did not receive one. No one receives any toiletries.

9. Since I was apprehended I have not been given any toiletries for myself or my son. In the cell there is a toilet and a small sink shared by about 30 people with no soap. It has a small wall to provide partial privacy. We have no soap, toothbrushes, or combs.

10. The cells have the lights on all the time. We only get bread sandwiches with something in them. We have been given food twice since I have been here. Everyone in the cell

_____                         February 1, 2016        (see
                                                Date                    overleaf)

I certify that I am proficient in the English and Spanish languages and that the foregoing was read to

Yesenia Y_____ in Spanish.

~~Maria Fortino~~ Virginia Corrigan                February 1, 2016
                                                Date

is tired and hungry.

11. I have not had the chance to use the phone to call anyone. I have not had the chance to speak to an attorney about my immigration case.

12. My son has diharrea and I am pregnant. ~~Nobody~~ We have not seen a doctor.

13. I want to leave this place. I am very uncomfortable.

February 1. 2016

# Exhibit 58
## Conditionally Filed Under Seal

Declaration of Eloisa R███████████

1. My name is Eloisa R██████

2. I am a citizen of Mexico.

3. My date of birth is ████, 1976.

4. I left Mexico because my husband and family were threatened. I feared for my life in Mexico.

5. I fled Mexico with my husband and my daughter. My daughter is named Laura L███████████, born on ████, 1998.

6. I came into contact with U.S. Customs and Border Patrol on Friday or Saturday, January 29 or 30, 2016. I was apprehended with my husband and daughter.

7. After I was apprehended, I was taken with my husband and daughter to a facility where my fingerprints were taken. My husband was separated from me and I have not seen him since.

8. My daughter and I ~~spent two~~ were taken to another facility, where we spent a day and a night. We were in a cell with about 60 people, We could not lie down to sleep, we were not given mattress. My clothes and my daughter's clothes were wet and we were not given dry clothes. I was very cold. After about 4 hours I was given a silver blanket.

9. My daughter and I had a joint interview on the phone. I told the agent I was afraid to return to Mexico.

10. I arrived at this facility around 5 in the afternoon on Sunday, January 31, 2016. My daughter was separated from me. I have only spoke to her for half an hour since.

11. I have not had the opportunity to make a telephone call since coming into custody.

12. I was very cold at night in the first facility.

13. When I was interviewed, I wasn't given any paperwork

186

about my rights or about attorneys.
I declare ~~that~~ under penalty of perjury that the above facts ar.
true and correct. Executed this 1st day of February, 2016 in
McAllen, Texas.

Certification of Translation

I, Virginia Corrigan, depose and say: I am fluent in English and Spanish. I read the above declaration to Eloisa R███████ and she confirmed its accuracy before she executed the declaration. I declare under penalty of perjury that the foregoing certification is true and correct. Executed this 1st day of February, 2016, in McAllen, Texas.

Virginia Corrigan

# Exhibit 59
## Conditionally Filed Under Seal

DECLARATION OF MELVIN M█████████████

I, Melvin M█████████████, depose and say:

1.  I am sixteen and detained at the detention center in Karnes, Texas.

2.  My date of birth is █████████, 1999. I was born in Honduras.

3.  I am detained here with my mother, Oneyda G█████████

4.  We left Honduras because we were targeted by the gang. I was walking down the
street on my way to school on November 7, 2015; during this walk, several men from a gang
approached me. The gang told me that if I did not join the gang and sell drugs, that they would
kill me and my mother. I told them I could not, so they beat me up. On November 12, 2015, the
gang members started called my house many times to threaten to kill me. They told my mom
that if I did not sell drugs, they would also kill me and her. The calls continued for about a
month. On December 17, 2015, the gang told my mother that if I did turn my son over, that they
would kill us. We left Honduras on December 20, 2015.

5.  We were apprehended on or about January 20, 2016 after crossing the river. We were
first put in a truck. They took away all our belongings, even our shoelaces. They threw away my
asthma medicine.

6.  My mom and I were then taken to the McAllen Border Patrol Station. We called this
the "ice box." We were there one day and a half. They separated me from my mom. I was told I
was too old to be with my mom. We were fed a sandwich three times a day with some juice.
They did not let us shower or brush our teeth. We would sleep on the floor with no blankets or
pillows. The place was very cold – we could not stand how cold it was. There was a toilet it was
surrounded only by a short wall. There was no privacy. No one at the border patrol facilities
notified me about rights my rights as minors or any rights I had under the Flores case. No one
told me that I could use a phone to call a lawyer nor did I see any phones to use to call a lawyer.
No one gave me a list of lawyers I could call. There was no list of lawyers or free legal aid
programs to call posted anywhere that I saw. There was one toilet for everyone that was there.
It was very crowded. There was space to sit down but there was no space to lie down. While
there, they took my fingerprints but did not ask any questions. Later, I found that there was a
Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act (Form I-867A),
but I didn't see any form at the station, was not asked to sign it, and was not even asked any
questions. For example, the form has a transcript of questions I was allegedly asked, but I was
*not asked one question*. In answer to the question "Why did you leave your home country or
country of last residence?" the form indicates I answer "I came to work," when in fact, I was not
even asked the question. The form indicates that I refused to sign this form, but I was not asked
to sign this form.

7.  My mother told me that in McAllen, she tried to explain why were scared to go back
to Honduras. When she tried to explain it, the officer told her that he didn't care about our story.
The officer made her cry.

8.  After that, we were transported to another border patrol station where we were held
for another day and half. They separated me from my mother again. No one at the border patrol

facilities notified me about rights my daughter or son had as minors or any rights I had under the Flores case. No one told me that I could use a phone to call a lawyer nor did I see any phones to use to call a lawyer. No one gave me a list of lawyers I could call. There was no list of lawyers or free legal aid programs to call posted anywhere that I saw. No one asked me why I left Honduras. They fed us a burrito, small water bottle and some chips. Here, we could not shower or brush our teeth.

9. I came to Karnes with my Mother on or about January 23, 2016. To the best of my recollection, I don't remember anyone explaining that I had any rights as a minor under the Flores case. In fact I knew nothing about the Flores case until today when lawyers came to visit Karnes to check about minors' treatment under the Flores case. My mother has a friend who lives in the United States - she has known him for 16 years. No one with the border patrol or here at Karnes has talked to me or my mother about whether her friend could care for me and house me if I am released from this detention center. I am not aware of any steps taken by the authorities to get me released from custody.

10. I didn't have my first credible fear interview until about February 1, 2016. This was about ten days after I was detained at the border patrol facility and my mother communicated our fear of returning to Honduras. The interview lasted more than two hours. They asked questions to both me and my mother. The immigrant officer only spoke English, but someone translated for us over the phone. I told the officer about the death threats I received from the gangs.

I declare under penalty of perjury that the foregoing facts are true and correct. Executed this 3rd day of February, 2016, in Karnes, Texas.

Melvin M

Certification of Translation.

I, ~~Elena Garcia~~ Virginia Corrigan, depose and say: I am fluent in English and Spanish. I read the above declaration to the declarant and she confirmed its accuracy before she executed the declaration. I declare under penalty of the perjury that the foregoing certification is true and correct. Executed this 3rd day of February, 2016, in Karnes, Texas.



~~Elena Garcia~~
Virginia Corrigan

191

CERTIFICATE OF SERVICE

I, Peter Schey, declare and say as follows:

I am over the age of eighteen years of age and am not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 256 S. Occidental Blvd., Los Angeles, CA 90057, in said county and state.

On May 17, 2016, I electronically filed the following document(s):

STIPULATED APPLICATION FOR LEAVE TO FILE DECLARATIONS OF ASYLUM APPLICANTS AND MEMORANDA IDENTIFYING ASYLUM APPLICANTS UNDER SEAL, APPLICANTS' ORDER GRANTING LEAVE TO FILE DECLARATIONS OF ASYLUM APPLICANTS AND MEMORANDA IDENTIFYING ASYLUM APPLICANTS UNDER SEAL [PROPOSED], REDACTED DECLARATIONS OF ASYLUM APPLICANTS, AND REDACTED MEMORANDA IDENTIFYING ASYLUM APPLICANTS with the United States District Court, Central District of California by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/*Peter Schey*
*Attorney for Plaintiffs*