DEFENDANTS' EXHIBIT 7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Jenny Lisette Flores, *et. al.* | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | No. CV 85-4544 |
| | ) | |
| Jeh Johnson, Secretary | ) | |
| U.S. Department of | ) | |
| Homeland Security | ) | |
| *Defendants* | ) | |

**DECLARATION OF CHIEF PATROL AGENT, LAREDO SECTOR, MARIO MARTINEZ**

1. I am the Chief Patrol Agent of the United States Border Patrol (USBP), Laredo Sector, Laredo, Texas. The USBP is a component of U.S. Customs and Border Protection (CBP). I have been employed in this capacity since August 9, 2015. In my capacity as the Chief Patrol Agent I am primarily responsible for supervising the detection and prevention of illegal entries by aliens in my area of operations, with a priority of preventing terrorists, and terrorist weapons—including weapons of mass destruction—from entering the United States. These efforts are part of CBP's overarching goal of facilitating the flow of legal immigration and trade, while preventing the illegal trafficking of people and contraband.

2. I make this declaration on the basis of my own knowledge, as well as the documents and information made available to me in my position.

3. The Laredo Sector is comprised of seven Border patrol stations: Laredo North, Laredo South, Laredo West, Zapata, Hebbronville, Cotulla, and Freer, Texas. I oversee all seven stations within the Laredo Sector and am responsible for the oversight of more than 1,600 agents and

support personnel, who work to secure approximately 171 miles of border along the Rio

Grande River, and over 101,000 square miles of southwest and northeast Texas. I have

oversight of the day-to-day law enforcement operations of U.S. Border Patrol in the Laredo

Sector, including the apprehension and processing of aliens.

4. I am familiar with the policies and procedures that govern the apprehension, processing, and

temporary detention of aliens. As Chief Patrol Agent, I am responsible for ensuring that those

policies and procedures are implemented and adhered to by the Border Patrol Agents in my

charge and properly overseen by my cadre of Supervisory Border Patrol Agents.

5. I am familiar with the terms of the Flores Settlement Agreement ("Agreement"), including

the requirement that juveniles be held in facilities that are safe and sanitary; the requirement

that juveniles be provided access to food, drinking water, toilets, sinks, medical care, and

adequate ventilation; and that CBP monitor its own compliance with these terms.  I am aware

that these terms apply to all juveniles, regardless of whether they are accompanied by adult

family members.

6. In fiscal year 2015, Laredo Sector personnel encountered 2,491 unaccomanpanied alien

children (UAC), as defined by Section 462(g)(2) of the Homeland Security Act of 2002. As

of May 20, 2016, Laredo Sector personnel encountered 1,988 UACs.

7. I am similarly familiar with the William Wilberforce Trafficking Victims Protection

Reauthorization Act of 2008 (TVPRA). I am familiar with the guidance issued by the then

Chief of Border Patrol on the implementation of the TVPRA on March 20, 2009.

8. I understand that the District Court for the Central District in California issued two Orders in

the above referenced case, the first on July 24, 2015, and the second on August 21, 2015. I

am aware that the District Court required CBP to monitor its compliance with the standards

2

and procedures for detaining class members in facilities that are safe and sanitary, in a manner consistent with the concern for the particular vulnerability of minors and with Paragraph twelve of the Flores Settlement Agreement.

**Operations and Processing**

9. Individuals apprehended by USBP in the Laredo Sector are typically brought to the station from which the apprehending Border Patrol Agent is based.

10. When a detainee arrives at a Border Patrol Station, the detainee is taken to an area referred to as a "sally port" or "intake". Each detainee is initially searched for contraband. Outer clothing and any baggage is removed in order to avoid concealed contraband entering the Border Patrol Station. This procedure exists for the safety of detainees and Border Patrol Agents. Juveniles are permitted to retain their outer clothing after the initial check. All personal property that is removed from a detainee is placed in a serial number-specific storage bag, and the serial number is associated with the owner of the property in the e3 Detention Module ("e3DM") system. The property is stored in an area that is not accessible to detainees. Property is returned to detainees who are administratively removed, or who are transferred to the custody of another federal agency. Detainees who face criminal prosecution have to arrange for recovery of their items within 30 days. Detainees are then taken to a station processing area—an open area where detainees wait to be interviewed by Border Patrol Agents.

11. At the outset of processing, biographical information is obtained and biometrics are taken and entered into CBP's systems of records. After a detainee is identified, he or she is then fully processed, including the preparation of any arrest report, immigration processing,

service of immigration forms, consular notifications, and communication with family
members, as appropriate.

12. Another initial step of processing is to determine, if not already determined upon initial
encounter, whether a detainee is a juvenile (also referred to as a child), that is, under the age
of eighteen years. Border Patrol Agents also determine whether the child has any lawful
status under the immigration laws of the United States. Moreover, Border Patrol Agents
determine whether the child is accompanied by a parent, legal guardian, or other family
member.

13. Consistent with Border Patrol's March 20, 2009 guidance on the TVPRA, Border Patrol
Agents are required during questioning to record the location of any parents/legal guardians,
as well as the location and contact information for any relatives in the United States for
UACs. That information is provided to the Department of Health and Human Services,
Office of Refugee Resettlement (HHS/ORR).

14. For detainees who have children accompanying them, Border Patrol Agents ask about other
contacts in the United States. If provided, that information is placed into CBP systems of
records, where it is available to Immigration and Customs Enforcement (ICE).

15. When detainees are not inside the processing area, they are placed into holding rooms based
on a number of factors including age, gender, whether they are traveling as a family unit, and
if they are suspected of a serious crime.

16. UACs are separated from unrelated adults as quickly as possible, including during transport
to a Border Patrol Station, unless impractical. If a holding room is not available to keep
UACs segregated from unrelated adults, UACs are kept in the station processing area away
from unrelated adults and in sight of Border Patrol Agents. This open area is outside of the

holding rooms. If possible, families are segregated from the rest of the detained population. If segregated holding rooms are not available for families due to a high number of detainees present in a station, families are placed in the processing area. In the event that a Border Patrol Station is holding such a high number of detainees that families are not effectively segregated because other detainees are in the processing area waiting to be interviewed, families are nonetheless kept together.

17. Detainees may be transferred into different holding rooms depending on their stage of processing, for meals, for consular interviews and for holding room cleaning.

18. Each Border Patrol station must be kept safe, secure and clean. The size of holding rooms at Border Patrol stations varies. However, holding room capacity for any room requires sufficient space and the appropriate number of toilets for the maximum number of occupants. Typically a holding room is constructed of impervious materials that can be easily cleaned and are hygienic. A true and accurate copy of a photo of a holding room is attached as Exhibit A.

19. If the number of detainees nears or exceeds the maximum capacity of a particular Border Patrol station in the Laredo Sector, the shift Supervisory Border Patrol Agent coordinates with other Border Patrol stations in the Laredo Sector to transport, detain and process the detainees who would otherwise be detained at the original station.

20. Consistent with the Flores Settlement Agreement, the Border Patrol's March 20, 2009 guidance on the TVPRA, and the National Standards on Transportation, Escort, Detention and Search (TEDS), all areas where juveniles are detained must provide access to toilets and sinks; drinking water and food, as appropriate; emergency medical assistance; adequate temperature and ventilation; and adequate supervision to protect juveniles from others.

21. Laredo Sector implemented its meals and snacks schedule according to the Hold Rooms and Short Term Custody Policy dated January 31, 2008. All stations serve meals and snacks within a certain time interval. Adults are provided a meal if detained more than eight hours or if detention is anticipated to exceed eight hours. This meal can consist of a burrito, a taco, or a sandwich. Snacks (choice of either peanut butter or cheese crackers) and juice are offered to juveniles between meals. Additionally, adult subjects are served a meal once they arrive at each facility to prevent detainees missing meals which would have occurred during the transportation process. If an adult detainee requests a snack or meal before the next meal service, it may be provided by a Border Patrol Agent on a case-by-case basis.

22. The Cotulla Border Patrol Station is the transportation hub and point of coordination for UACs encountered in the Laredo Sector.  UACs are transported to the Cotulla Border Patrol Station after their initial processing is completed by the encountering station. Meals and snacks are provided at the Cotulla Border Patrol Station according to the Hold Rooms and Short Term Custody Policy dated January 31, 2008.

23. Laredo Sector stations contact Consular officials of the Mexican consulate when a detainee apprehended by Laredo Sector personnel appears to be, or claims to be, a Mexican juvenile and does not appear to be a victim of trafficking. Typically, the detainee is transported to the Mexican consulate in Laredo, Texas, for an interview. If the Mexican consulate determines that the detainee is not a Mexican citizen, Laredo Sector personnel maintain custody of the detainee. If the Mexican consulate determines that the detainee is a Mexican citizen, and Border Patrol concurs that it is in the best interest of the child, Laredo Sector personnel transfers custody of the juvenile to the Mexican consulate in Laredo, Texas.

24. When Laredo Sector Border Patrol Agents detain a UAC from a country other than Mexico, a Border Patrol Agent notifies a Consular official of the UAC's country of nationality by telephone or electronic mail.

25. Juveniles and pregnant women have regular access to meals, snacks, and juice. Meals are provided 3 times per day. Snacks and juice are provided in between meals.

26. It is incumbent on each individual station to know if a detainee will exceed the time limit to be provided a meal, or snack and juice. If that time will be exceeded before arrival to the detainee's next destination then a meal or snack will be provided to the detainee before they depart. In addition, food or water is never withheld from a detainee as a form of punishment.

27. Laredo Sector currently has food contracts with local distributors. Laredo Sector has found throughout the years that serving meals, crackers, and juice in the manner which it does today is palatable to detainees, and the most operationally feasible approach.

28. In the 2015 fiscal year, Laredo Sector spent $379,887.66 for food and assorted items for detainees. In addition, Laredo Sector purchases or acquires all of the following for detainees: cups, sport coolers, bottled water, and other items that are needed on a case-by-case basis.

29. Potable water for subjects in custody is provided by a water fountain type fixture in each room. Furthermore, some stations have purchased sport style five gallon water coolers (sport cooler) for use in holding rooms, and a cup is provided to every detainee in custody. These sport coolers are cleaned as directed by a shift supervisor. If a water fountain is deemed to be inoperable, sole use of the sport cooler is sufficient and a work order is placed to repair the fountain. A true and accurate photo of a water fountain in a detention cell is attached as Exhibit B.

30. As in other detention-like setting, Border Patrol cannot guarantee absolute privacy. Holding rooms are designed to have no exterior windows. But allowing locked or closed doors within holding rooms would be a safety and security concern. The holding rooms, instead, employ low walls to address privacy needs. I instructed my staff to photograph a typical holding room bathroom facility in a Border Patrol station of the Laredo Sector. A true and accurate copy of those pictures is attached as Exhibit C. The walls, shown in these pictures, allow for an environment in which detainees, especially children, can have a modicum of privacy when using the facilities, but can still be monitored and protected.

31. In order to ensure the safety of detainees, there are typically cameras that monitor each holding room at Border Patrol stations within the Laredo Sector. These cameras provide Border Patrol Agents the ability to visually inspect the holding rooms, although they do not provide sight lines to the toilet facilities. In my experience, periodic visual inspection of adult detainees (welfare checks) are conducted at least every two hours, and more often—up to continuous observation—on a case-by-case basis as directed by a shift supervisor.

32. Trash cans are not kept in holding rooms due to safety concerns. However, they are available in the processing area and made available to detainees after meals are served for disposal of refuse. Trash cans are also made available to detainees in holding rooms, as needed, when Border Patrol Agents conduct welfare checks.

33. Laredo Sector Stations maintain a temperature conducive to the health of detainees, with particular caution given to overheating. I have never heard of temperature being used by Border Patrol Agents in a punitive manner. In holding rooms designated for juveniles, the temperature is maintained between 66-80 degrees Fahrenheit.

34. During periods of cooling or heating system malfunctions, a case-by-case analysis is done. Remedial actions could include providing mylar blankets to detainees or the transfer of detainees to a different station in the Laredo Sector until systems can be repaired.

35. CBP's Facilities Management and Engineering (FM&E) and the General Services Administration (GSA) fund custodial staff to regularly address sanitation needs and any required maintenance of the holding areas.

36. Laredo Sector has a cleaning contract with TRECO Services for the Cotulla Border Patrol Station, B and A Maintenance for the Laredo South Station, and PCSI Incorporated for the rest of the Border Patrol stations in Laredo Sector. These locations follow the same basic model: cleaning and sanitizing of the holding rooms and processing area twice daily, emptying trash cans, and resupplying the holding rooms with toilet paper. If a Border Patrol Agent finds a holding room or processing area insufficiently maintained, Border Patrol contacts the CBP Facilities Management and Engineering (FM&E) representative. The FM&E representative then contacts the particular cleaning contractor for corrective service. The cleaning contractor responds in accordance with the critical nature of the deficiency. The contractor will address the deficiency no later than the next business day.

37. No stations in the Laredo Sector have shower facilities available. The National Standards on Transport, Escort, Detention, and Search dictate that reasonable efforts will be made to provide showers, soap, and a clean towel to detainees who are approaching 72 hours in custody. It is the intent of Laredo Sector to intake and process every detainee and transfer them to their next destination as quickly as possible. In most cases, detainees will not approach 72 hours in custody and, therefore, will not require showers while in Border Patrol custody. It would require significant structural changes to Border Patrol facilities in Laredo

Sector to allow every detainee to shower upon arrival at a Border Patrol facility, or it would require that every detainee be transferred immediately to a facility with shower capabilities and then be transferred back to the original station for processing. In either case, it would have a significant impact on the time in custody for all detainees.

38. During each shift turnover, a walkthrough is conducted of the holding rooms, and a review of the facilities is annotated in the e3DM. If any facilities issue is found, a work order will be issued. If specialized or additional cleaning is required in a holding room, the FM&E representative employee supervisor is contacted.

39. In March 2016, the CBP Office of Administration, Chief Accountability Officer (CAO) Management Inspections Division (MID) conducted audits at several Laredo Sector stations and examined the immediately preceding span of time beginning on October 23, 2015. It was discovered that (1) no reports had been maintained to document UACs viewing the video *Know What to Expect* (video intended to provide a clear and consistent message in simple Spanish explaining to the UACs what they can expect while in CBP custody); (2) welfare checks were conducted insufficiently; (3) Amenity reports were not completed; and (4) reports indicating assigned holding rooms were not generated. However, as explained in paragraph sixty-eight, below, sector-wide retraining was conducted, and I continue to emphasize both the compliance with the Flores Agreement, and documentation of that compliance. While Laredo Sector Stations were found to have not been in full compliance with facilities walkthrough and reporting requirements, I have not been made aware of any situation where a detainee's health or safety was compromised as a result of Laredo Sector's previous deficiencies. In addition, the period under review by MID largely corresponded with

the period in which Laredo Sector stations were in the process of conducting training and implementing the changes explained below, beginning in paragraph fifty-four.

40. The lights typically remain on at all times while detainees remain in Border Patrol custody for security reasons and due to operational necessity. Border Patrol Stations are 24/7 facilities, and Border Patrol Agents may arrive with newly apprehended aliens at all hours of the night. Border Patrol Agents must be able to maintain visual control over the holding rooms to ensure the safety and security of the detainees.

41. Since before January 2013, Laredo Sector has provided mylar blankets to detainees. In addition, sleeping mats are provided to juveniles. Previously, cloth blankets were provided. However, we found that the spread of communicable diseases such as scabies and lice was facilitated by the use of cloth blankets. Furthermore, it was difficult to maintain consistent cleaning services for cloth blankets.

42. All Border Patrol Agents receive first aid training, which covers basic treatment for cuts and abrasions, bandaging, and applying pressure to a wound. A number of Border Patrol Agents have also received first responder training. Laredo Sector also has an Emergency Medical Technician (EMT) program which includes approximately 122 agents trained as EMTs. When Border Patrol Agents encounter individuals in the field that display obvious signs of injury or are requesting emergency medical care, agents can request assistance from a Border Patrol EMT to evaluate and treat, or they can contact local emergency services for transfer to an appropriate medical facility for care.

43. When an alien who is encountered by Laredo Sector personnel is in need of medical services, they are transported to the Doctors Hospital of Laredo, located at 10700 McPherson Road, Laredo, Texas, or the Laredo Medical Center at 1700 East Sanders, Laredo, Texas.

44. The same process is used for emergency care once a detainee is in a Border Patrol Station. During processing, detainees are asked about any health or medical issues and appropriate action—up to and including transfer to a local medical center—is taken if the detainee requires medical care. If the detainee possesses medication that is not accompanied by a valid prescription by a U.S. doctor, the detainee is not allowed access to that medication. If a detainee is prescribed medication from a U.S. doctor, Laredo Sector will allow the detainee access to this medication and will attempt to fill the prescription at a local pharmacy if needed. This medication will then be stored by Border Patrol at the station and made available to the detainee for self-administration as prescribed.

45. Border Patrol's March 20, 2009 guidance on the TVPRA requires that each UAC is screened for possible victimization concerns. This screening continues for all UAC.  That screening is conducted utilizing the CBP Form 93: Unaccompanied Alien Child Screening Addendum.

46. All personnel in Laredo Sector are required to notify the ICE Field Office Juvenile Coordinator and Department of Health and Human Services, Office of Refugee Resettlement (HHS/ORR) as soon as possible after identifying a detainee as a UAC. That notification is accomplished by use of the e3DM system, which automatically transmits the placement request for the unaccompanied juvenile to HSS/ORR. This system was developed by the Laredo Sector and found to be successful by the Agency, resulting in its implementation nation-wide. Every effort is made to notify HHS/ORR as quickly as possible, but those notifications must be made no later than 48 hours from the apprehension or discovery of a UAC (or any claim or suspicion that an alien in custody is unaccompanied and under the age of eighteen years).

47. Consistent with the TVPRA, Border Patrol Agents within the Laredo Sector may only reunify UACs with parents or legal guardians who are in possession of supporting documentation and are within the United States. HHS/ORR is responsible for the determination that any other proposed guardian, including a family member who lacks documentation of guardianship (e.g. grandparent, aunt/uncle, or brother/sister), is capable of providing care and physical custody.

48. Prior to the Court's order of August 21, 2015 CBP's policy was to provide UACs with a Form I-770. Currently, in light of the Court's order, all juveniles in the Laredo Sector are provided a Form I-770. This form provides juveniles with a notice of their rights consistent with the Flores Settlement Agreement. This form, upon completion, must be placed in the juvenile's Alien File (commonly known as the "A File"). Consistent with CBP policy, the apprehending Border Patrol Agent and the juvenile, or their custodian of record, must sign the I-770.

49. Consistent with Border Patrol's March 20, 2009 policy on the TVPRA, all children are provided with a list of free legal services at the time of processing.

50. The layouts of the processing area and holding rooms in Laredo Sector Border Patrol stations do not allow for a large number of rooms where detainees can maintain private conversations.

51. Border Patrol stations are not designed for long-term care and detention. Every effort is made to promptly process, transfer, or remove detainees in custody. Those actions are taken as quickly as operationally feasible.

52. Detainees are not allowed access to legal representation at Laredo Sector Border Patrol stations. Individuals who will be detained for a longer period of time are provided access to

legal representation upon being transferred to U.S. Immigration and Customs Enforcement-Enforcement and Removal Operations (ICE-ERO). Individuals who will be detained for a short period may obtain legal representation upon release from custody if they remain in removal proceedings, such as those proceedings under INA § 240.

53. Detainees are transferred out of Border Patrol custody as quickly as possible. For family units, those detainees are typically transferred to the custody of ICE-ERO. Border Patrol may only transfer UACs to the custody of HHS/ORR. Although infrequent, a receiving agency is sometimes unable to receive a detainee due to a breakdown in their intake procedures or lack of space. If that happens, transfer from Border Patrol will not be accepted until the receiving agency resolves any issues on their end.

**Specific Steps Taken in Compliance with Court Order**

54. As part of the Border Patrol's efforts to comply with the terms of the Agreement, a memorandum was issued to the field explaining the changes made to the e3DM requiring the electronic documentation of conditions in facility holding rooms.

55. I received a copy of that memorandum on or about October 16, 2015.

56. Consistent with the memorandum issued on October 16, 2015, I reminded all of the Border Patrol Agents in Laredo Sector that they remain responsible to ensure that juveniles in Laredo Sector custody have access to drinking water, food, toilets, and sinks, and are held in a facility that is safe and sanitary. I also instructed that such conditions must be electronically documented in the e3DM system. If electronic documentation is unavailable, the information must be tracked and retained in hard copy form until the information can be inputted into e3DM.

14

57. Moreover, consistent with the memorandum, agents were reminded during a beginning-of-
    shift muster that the station must also conduct a daily check of each holding room occupied
    by a juvenile.

58. After conducting these checks, an Agent must confirm the following information into e3DM:

    a.  Functionality of water fountains;

    b.  Functionality of toilets;

    c.  Functionality of sinks;

    d.  Cleanliness of the holding room;

    e.  Presence of Pests

    f.  Availability of bottled water;

    g.  Temperature (should be within 66-80 degrees Fahrenheit); and

    h.  Ventilation.

59. If, upon a check, a particular holding room does not meet the required standards, the
    observing Agent must report the problem to his or her direct supervisor.

60. The station must then document all steps taken to address the particular problem. All issues
    that have not been resolved within twelve hours must be reported to the Patrol Agent in
    Charge (PAIC) and the local Office of Chief Counsel.

61. Consistent with the October 16, 2015 guidance, Border Patrol Agents log in e3DM each time
    that a juvenile is offered any food. In addition to the above requirements, Agents must also
    document in e3DM any provision of medical care.

62. Since April 2016, Laredo Sector Border Patrol Agents conduct welfare checks on juveniles
    when detained in holding rooms in the following manner: if a juvenile is thirteen years of age
    or younger, every two hours; fourteen years of age and older, every three hours; special

15

needs/tender age/at risk subjects will be monitored continuously or at fifteen minute intervals as determined on a case-by-case basis. Welfare checks were also conducted before April 2016, but were required at the beginning and end of each shift, and as directed by the shift Supervisory Border Patrol Agent. In my experience, even prior to April 2016, welfare checks on juveniles were conducted at least every two hours, and more often—up to continuous observation—on a case-by-case basis as directed by shift supervisor.   During those checks, Border Patrol Agents must ensure that all toilets and sinks are functional, that water is available to juveniles, that there are no pests, and that the holding rooms appear sanitary. All welfare checks are now recorded in Border Patrol's e3DM system.

63. Although Border Patrol has long maintained appropriate temperatures in its stations, in response to the Court's order, the Laredo Sector also obtained infrared temperature meters in order to take the temperature in any holding room prior to placing a juvenile in that room and every twenty-four hours thereafter. A true and accurate copy of photos of one of these infrared temperature takers is attached as Exhibit D. Consistent with the October 16, 2015 guidance, Border Patrol Agents record in e3DM if the temperature is within range (66-80 degrees Fahrenheit) or must specifically note when the temperature is out of range. If the temperature is out of range, Border Patrol Agents must immediately inform their supervisors who will contact FM&E for immediate corrective action.

64. If e3DM is offline or otherwise not available at any time, the Laredo Sector has paper forms available to document the information and retain the paper until the information can be entered into e3DM.

65. Consistent with longstanding Border Patrol practice, the Laredo Sector attempts to maintain family unity for those in its custody. Consistent with the October 16, 2015 guidance, the

Laredo Sector now records any separation of a juvenile from his or her family. When separation occurs, Agents will also record any contact between the family members that occurs during the period of separation and when the family can be reunified.

66. If such contact cannot be facilitated, the Agents must document the reasons for the lack of contact, using one of the following options:

   a.  Operational infeasibility;

   b.  Security concerns;

   c.  Lack of certainty regarding the familial relationship;

   d.  Medical concerns; or

   e.  The family remains in Border Patrol custody for fewer than 4 hours.

This information must also be documented in paper form at any time that e3DM is offline or otherwise unavailable.

67. From January 12, 2016, through January 15, 2016, Laredo Sector conducted training in addition to the information provided on October 16, 2016 by Border Patrol Headquarters for Border Patrol Agents selected to train other Border Patrol Agents from their respective stations on how to most effectively enter the above information into e3DM.

68. Consistent with Border Patrol's longstanding practice, I ensured that all Agents in Laredo Sector were reminded on October 22, 2015, that they are required to ask every juvenile who must be separated from his or her legal guardian (on account of, among other reasons, the juvenile or guardian requiring medical treatment), about other family members in the United States. Agents must record this information and provide it to HHS/ORR.

69. In March 2016, a MID inspection team came to the Laredo Sector. After the discussions after those inspections, a PowerPoint instruction presentation was generated and distributed

throughout the Laredo Sector to remind Border Patrol Agents on the requirements of the Agreement, specifically that juvenile detainees must have access to drinking water; functioning toilets and sinks; a clean and pest free environment; a temperature between 66-80 degrees Fahrenheit in holding rooms; and proper ventilation. The instruction also included the requirement to document compliance with the Agreement, and the avenue by which such documentation is completed with the e3DM system. The procedures described in paragraph sixty-one were also implemented in order to ensure Laredo Sector meets or exceeds the standards set forth in the Agreement.

70. Pursuant to the provisions of 28 U.S.C. § 1746, I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.


Mario Martinez
Chief Patrol Agent
Laredo Sector
U.S. Border Patrol
U.S. Customs and Border Protection

# EXHIBIT A



EXHIBIT B







EXHIBIT C



NOTICE / AVISO

THIS WATER IS
SAFE TO DRINK
ESTA AGUA ES
POTABLE



# EXHIBIT D





