DEFENDANTS' EXHIBIT 8

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION**

| | |
|---|---|
| Jenny Lisette Flores, *et. al.* ) | |
| ) | |
| *Plaintiffs,* ) | |
| ) | |
| v. ) | No. VC 85-4544 |
| ) | |
| Jeh Johnson, Secretary ) | |
| U.S. Department of ) | |
| Homeland Security, ) | |
| ) | |
| *Defendants.* ) | |

## DECLARATION OF BRIAN S. HASTINGS

1.      I am Brian S. Hastings, Chief Patrol Agent of Buffalo Sector, which is one of 20 sectors within the U.S. Border Patrol. I have been employed in my current position as a Chief Patrol Agent since March of 2012. The U.S. Border Patrol is a component of U.S. Customs and Border Protection ("CBP"), an agency within the United States Department of Homeland Security ("DHS"). CBP's mission is to protect the borders of the United States against terrorists and the instruments of terror, enforce the customs and immigration laws of the United States, and foster our Nation's economy by facilitating lawful international trade and travel. In my capacity as the Chief Patrol Agent of Buffalo Sector, I am responsible for executing the mission of CBP in general, and for planning, organizing, and directing the enforcement efforts within Buffalo Sector's area of responsibility in particular.

2.      I make this declaration on the basis of my own knowledge, as well as the documents and information made available to me in my position.

3.      Buffalo Sector is comprised of six Border Patrol stations: Buffalo, Niagara Falls, Rochester, Oswego, and Wellesley Island, all located in New York, and the Erie Station, located in

1

Pennsylvania.  I oversee all six stations within Buffalo Sector and am responsible for the oversight of more than 285 Border Patrol agents and 40 support personnel, who work to secure over 341 border/zone miles.  I have oversight of the day-to-day law enforcement operations of the U.S. Border Patrol in Buffalo Sector, including the apprehension and processing of aliens.

4.      I am familiar with the policies and procedures that govern the apprehension, processing, and temporary detention of aliens.  As Chief Patrol Agent of Buffalo Sector, I am responsible for ensuring that those policies and procedures are communicated to agents, overseen by supervisors, as well as implemented and adhered to by personnel throughout Buffalo Sector.

5.      I am familiar with the Flores Settlement Agreement, including the requirements in the Flores Settlement Agreement that juveniles be held in facilities that are safe and sanitary; that juveniles be provided access to food, drinking water, toilets, sinks, medical care, and adequate ventilation; and that CBP monitor its compliance with these terms.  I am aware that pursuant to the Court's order the Flores Settlement Agreement  applies to all juveniles, regardless of whether or not they are accompanied by adult family members.

6.      I am also familiar with the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), as well as the March 20, 2009 guidance issued by the then Chief of Border Patrol David V. Aguilar regarding implementation of the TVPRA.

7.      I understand that the Court issued two orders in this case, one on July 24, 2015 and the other on August 21, 2015.  I am aware that the August order requires CBP to monitor its compliance with the standards and procedures for detaining juveniles in facilities that are safe and sanitary, consistent with the Flores Settlement Agreement.

8.      Since January 1, 2013, Buffalo Sector has processed 13 unaccompanied alien children.  Although the apprehension of unaccompanied alien children within Buffalo Sector is statistically low, Buffalo Sector has enacted policies to ensure compliance with the Flores Settlement Agreement.

9.      Buffalo Sector stations maintain local processing guidelines and reference materials that

2

ensure adherence to all national-level policies and procedures consistent with the Flores Settlement
Agreement and identified below.  Similar procedures are used in all Buffalo Sector Border Patrol
stations.

10.     Individuals apprehended by Border Patrol within Buffalo Sector are first brought
to Border Patrol stations within Buffalo Sector.

11.     When a detainee to include juveniles, arrives at a Border Patrol station, he or she is first
taken to an area called a "sally port" or "intake." Agents there search each detainee for contraband.
Outer clothing and any baggage is removed to avoid concealed contraband entering the Border Patrol
station.  All personal property that is removed from a detainee is tagged with Form I-77 and stored in
an area that is not accessible to detainees.  Personal property is returned when detainees are transferred
or released.  These procedures exist for agent and detainee safety.

12.     At the outset of processing, agents obtain biographical information from detainees, and
then enter the biometrics into CBP's systems of records.  After a detainee is identified, agents prepare
any arrest reports, complete immigration processing, serve immigration forms, conduct consular
notifications, and provide a means of communication with family members, as appropriate.

13.     Agents also determine during initial processing whether a detainee is a juvenile (also
referred to as a child)—*i.e.*, someone under 18 years of age.  If a detainee is a juvenile, then agents
determine whether the juvenile has any lawful status under the immigration law of the United States,
and whether the juvenile is accompanied by a parent, legal guardian, or other family member.

14.     Consistent with Border Patrol's March 20, 2009 guidance on the TVPRA, agents are
required to record the location of any unaccompanied alien child's parents/legal guardians, as well as the
location and contact information for any unaccompanied alien child's relatives in the United States.
This information is made available to the Department of Health and Human Services, Office of Refugee
Resettlement ("HHS/ORR").

15.     For those detainees who are processed and have children accompanying them, in my

3

experience, agents normally ask about other contacts in the United States including contact information.
That information is placed into a CBP systems of records and made available to U.S. Immigration and
Customs Enforcement, Enforcement and Removal Operations ("ICE ERO"), who may then relay the
information to HHS/ORR and facilitate transferring a juvenile into their custody.

16.     When detainees are brought inside to the processing area, they are placed into hold rooms
based on a number of factors which include age, gender, whether they are traveling as a family unit, and
whether they are suspected of a serious crime.

17.     Juveniles are immediately separated from unrelated adults.  Families are detained
together, but segregated from the rest of the detained population for several reasons, including
maintaining family unity.  If this cannot be done due to the limited number of hold rooms in certain
Buffalo Sector locations, agents will try to keep the family unit together as per guidance from a June 2,
2008 memorandum by Chief David V. Aguilar titled "Hold Rooms and Short Term Custody."

18.     Detainees may be transferred into different hold rooms depending on their stage in
processing, such as during meal consumptions, for consular interviews, and for hold room cleaning.
However when transfers occur, all detention policies are followed.

19.     Each Buffalo Sector facility is safe, secure, and clean.  And all children are provided
access to toilets and sinks; drinking water and food, as appropriate; emergency medical assistance;
adequate temperature control and ventilation; and adequate supervision to protect them from
others.

20.     The capacity of hold rooms at Buffalo Sector stations is determined by the Fire Marshal.
To my knowledge, Buffalo Sector has never experienced an issue with overcrowding.

21.     Buffalo Sector has implemented a meals and snacks schedule according to the Hold
Rooms and Short Term Custody Policy, dated June 2, 2008, such that all stations serve meals and
snacks within the prescribed time frames outlined in this policy.  For example, each detainee is
provided a meal if detained more than eight hours or if detention is anticipated to exceed eight

4

hours.  This meal is nutritionally balanced and sensitive to culinary, cultural, and religious dietary
restrictions, to the extent feasible.  Additionally, detainees are served a meal once they arrive at
each facility to prevent them from missing meals that would have occurred during the
transportation process.

22.     Juveniles and pregnant women have regular access to snacks, milk, or juice.

23.     Each Buffalo Sector station must know if a detainee will exceed the four hour limit to
provide a snack and juice or if the detainee will exceed the eight hour limit to be provided a meal.  If
that time will be exceeded before arrival to the detainee's next destination, then a meal or snack will be
provided to the detainee before departure.

24.     Buffalo Sector utilizes a USBP wide internal auditing function within the e3 Detention
Module ("e3DM") that alerts agents when a detainee is approaching these timelines and displays a
flashing red box if at any time a detainee exceeds these timelines.

25.     Buffalo Sector budgets annually for the purchase of detainee meals.  This fiscal year
Buffalo Sector's budget for detainee meals is approximately $3,750.00.

26.     Potable water for subjects in custody is provided either by a water fountain-type fixture
in the detention area, or with packaged bottled water. *Exhibits A; B*.

27.     Due to safety and security concerns, Buffalo Sector cannot provide absolute privacy for
detainees.  Hold rooms are designed to have no exterior windows, instead, hold rooms employ half-
walls by the bathroom to address privacy needs. *Exhibit B*.  The half-walls allow for an environment in
which detainees, especially children, can have a modicum of privacy when using the facilities, but can
still be monitored and protected.

28.     To ensure the safety of detainees, Border Patrol stations within Buffalo Sector are
equipped with cameras.  These cameras provide agents the ability to visually inspect the hold rooms,
although they do not provide sight lines to the toilet facilities.

29.     Agents closely supervise hold rooms when in use.  Monitoring occurs in a regular and

5

frequent manner.  Physical inspections are recorded in e3DM as soon as practicable.

30.     For security reasons and operational necessity, lights normally remain on at all times while detainees remain in Border Patrol custody.  Border Patrol stations are 24/7 facilities, and there may be agents arriving with newly apprehended aliens at all hours of the night.  Agents must be able to maintain visual control over the holding rooms to ensure the safety and security of the detainees.

31.     CBP's Facilities Management and Engineering and the General Services Administration  fund custodial staff to regularly address sanitation needs and any required maintenance of the holding areas.

32.     Buffalo Sector has a cleaning contract for all stations within Buffalo Sector.  Contractors at each station are responsible for cleaning and sanitizing of the hold rooms and processing area after use, emptying trash cans, and resupplying the hold room toilet areas.  Each station can submit a monthly satisfaction survey to provide feedback to the contracting officer.

33.     Hold rooms are typically constructed of impervious materials that can be easily cleaned and are hygienic. ***Exhibit B.***

34.     For agent safety, trash receptacles are not located in the hold rooms within Buffalo Sector.  Trash receptacles are located just outside the doors to the hold rooms, and all trash is disposed of properly.

35.     After each detainee leaves a hold room, a walkthrough is conducted of the hold rooms.  If any facility issue is identified, a work order will be issued.  If specialized or additional cleaning is required in a hold room, the contract employee supervisor is contacted and the request is made.

36.     Buffalo Sector stations maintain a comfortable temperature in hold rooms.  Hold room temperatures are recorded once daily when the hold rooms are occupied and are entered in the e3DM.  In my 21 years of Border Patrol experience, I have never observed an agent using hold room temperature in a punitive manner.

37.     In periods of outage or system malfunction of a government leased facility, the applicable

lessor is contacted and is responsible for scheduling required repairs and/or emergency service. In
government-owned facilities, contractors are called directly by station staff. Meanwhile, steps are taken
either to provide additional blankets (mylar, cloth, or both, depending on the station), or to relocate
detainees if conditions are extreme. ***Exhibit C***.

38.    In cases where non-disposable linens are utilized for detention purposes, Buffalo Sector
has established contracts to ensure these items are properly laundered after each use. This fiscal year
Buffalo Sector's budget for the laundering of non-disposable linens is approximately $1,500.00.

39.    In 2014, Buffalo Sector had two instances where juvenile detainees approached 72
hours in custody. In both cases, arrangements were made to provide those juveniles with access to
shower facilities. Since the national standards related to the Transport, Escort, Detention, and Search
("TEDS") was implemented in October 2015, Buffalo Sector, if necessary and in compliance with
policy, would make reasonable efforts to provide showers, soap, and clean towels to juveniles
approaching 48 hours in custody. As Buffalo Sector is able to quickly transfer detainees to include
juveniles to their next destination, the majority of detainees do not approach this length of time in
custody and will not require showers.

40.    Buffalo Sector has soap or soap dispensers available to allow detainees to wash off their
hands before eating or after utilizing the facilities. Contracted janitorial services staff are responsible for
ensuring soap is available.

41.    Buffalo Sector supplies paper towels for detainees to dry their hands after hand washing.
Buffalo Sector uses disposable emergency blankets to provide bedding to detainees.

42.    All Border Patrol agents receive basic first aid training, which covers basic treatment for
cuts and abrasions, bandaging, and applying pressure to a wound. A number of agents have also
received first responder training. Buffalo Sector also has a small number of Emergency Medical
Technicians ("EMTs"). When agents encounter individuals in the field that display obvious signs of
injury or are requesting emergency medical care, agents can contact a Border Patrol EMT to evaluate

and treat if one is available, or they can contact local emergency services for transfer to an appropriate medical facility for care.

43.     The same process is used for emergency care of detainees in a Border Patrol station. During processing, detainees are asked about any health or medical issues and appropriate action—up to and including transfer to a local medical center—is taken if the detainee requires medical care. If the detainee possesses medication that is accompanied by a valid prescription of medication by a U.S. doctor, the medication will then be stored by Border Patrol at the station, and made available to the detainee for self-administration as prescribed.

44.     Adhering to the March 20, 2009 guidance on the TVPRA, each unaccompanied alien child is screened for possible victimization concerns. Screening is conducted using CBP Form 93—Unaccompanied Alien Child Screening Addendum. Signs are also posted in all stations' processing areas encouraging detainees to report any victimization concerns. *Exhibit D*.

45.     All Buffalo Sector agents are required to notify the ICE Field Office Juvenile Coordinator and HHS/ORR as soon as possible after identifying a juvenile detainee as an unaccompanied child. That notification is accomplished by station supervisory staff. Every effort is made to notify HHS/ORR as quickly as possible, but those notifications must be made within 48 hours from the apprehension or discovery of an unaccompanied child (or any claim or suspicion that an alien in custody is unaccompanied and under the age of 18).

46.     Consistent with the TVPRA, agents within Buffalo Sector may only reunify unaccompanied alien children with parents or legal guardians who are in possession of supporting documentation and are within the United States. HHS is responsible for the determination that any other proposed guardian, including a family member who lacks documentation of guardianship (*e.g.*, grandparent, aunt/uncle, or brother/sister), is capable of providing care and physical custody.

47.     All children in Buffalo Sector—both accompanied and unaccompanied—are given Form I-770, which provides children with a notice of their rights consistent with the Flores Settlement

8

Agreement.  The apprehending agent and the child must both sign the I-770.  Once completed, this form

is placed in the child's Alien File, or "A File".

48.      Consistent with Border Patrol's March 20, 2009, policy on the TVPRA, and with the

2015 Flores court order, all children are provided with a list of free legal services at the time of

processing.  ***Exhibit E***.

49.      Due to limited space, Buffalo Sector stations do not have a large number of rooms

where private conversations between detainees and others can occur.

50.      Because Buffalo Sector Border Patrol stations are not designed for long-term care and

detention, every effort is made to promptly process, transfer, or remove those in custody as appropriate.

Those actions are taken as quickly as operationally feasible.

51.      Consular information is available and furnished to all detainees in custody.  These

individuals are provided the opportunity to make a call to contact the consulate office of their native

country for possible interviews and communication.  The Mexican Consulate operates a 24-hour call

center providing around the clock communication with their nationals in Buffalo Sector custody.

Buffalo Sector agents also arrange telephone contact if a detainee wants to contact a consular

representative from a country with no local representative.  Allowing unfettered access between

detainees and their consulate provides an additional opportunity for detainees to share needs with their

consular officials, who, in return, often relay that information to the Border Patrol.  This process is

routinely used to ensure quick responses to personal needs, such as family issues, concerns, medical

needs, or questions related to procedures and their ultimate detainee custody dispositions.

52.      Buffalo Sector stations allow for telephonic access to family members post-arrest.  This

access is meant to inform family members of the whereabouts of the detainee, and where future housing

space will be located (e.g., where the detainee will be moved.)

53.      Detainees are transferred out of Buffalo Sector custody as quickly as possible.  For

family units, those individuals are normally transferred to the custody of ICE ERO.  Buffalo Sector only

transfers unaccompanied children to the custody of HHS/ORR. Although infrequent, a receiving agency

is sometimes unable to receive a detainee due to a breakdown in their intake procedures or lack of space.

If that happens, transfer from Border Patrol will not be accepted until the receiving agency resolves any

issues on their end.

54.     On October 2, 2013, I disseminated a memorandum titled "Use of the updated e3

Detention Module," which requires all agents to utilize the e3DM to the fullest extent possible to capture

the custodial actions and transportation for all detainees, as noted above.

55.     In July 2015, I directed the Buffalo Sector Juvenile Coordinator to work with the Field

Office Juvenile Coordinator—who is assigned to ICE ERO—to develop and distribute an

unaccompanied alien children ("UAC") e-mail mailbox. The creation and distribution of this email

address is intended to speed up the notification and communication between Buffalo Sector and

HHS/ORR during movement or placement of unaccompanied children.

56.     On October 2, 2015, I directed all Buffalo Sector agents to the mandatory use of

the "Family Panel" in the e3 Intake Module.

57.     By memorandum dated October 8, 2015, Chief Michael J. Fisher outlined national

standards related to the Transport, Escort, Detention, and Search ("TEDS") to those in our custody. As

Chief Patrol Agent of Buffalo Sector, I disseminated guidance to all agents on the changes and ensured

receipt of compliance to same.

58.     As part of the Border Patrol's efforts to comply with the Flores Settlement Agreement, a

memorandum was issued on October 16, 2015, explaining the changes made to e3DM requiring the

electronic documentation of conditions in facility hold rooms. I received a copy of that memorandum

the same day.

59.     Consistent with that memorandum, I disseminated guidance on October 19, 2015, to all

Buffalo Sector stations and required training completion documentation in a memorandum titled "Reno

v. Flores Compliance." I instructed all Buffalo Sector agents to ensure that facilities housing juveniles

are safe and sanitary, and that those facilities provide access to drinking water, food, toilets, and sinks.
This order relates to all juveniles regardless of whether or not they are accompanied by adult family
members.

60.     Under the new e3DM processing policies, I ensured that all agents in Buffalo Sector were
reminded that they must comply with the Flores Settlement Agreement, and I directed those agents to
follow the Flores Compliance Check-List.

61.     Consistent with the October 16, 2015, guidance, I ensured that each of the stations within
Buffalo Sector made the necessary changes to the e3DM with respect to the ability to track those
necessary functions in a hold room, such as the availability of a functioning toilet and/or sink.

62.     Moreover, consistent with the memorandum, each agent was reminded at a muster that
the station must also conduct a daily inspection of each hold room occupied by a juvenile.

63.     After each inspection, an agent must confirm the following information into e3DM:

    a.     Functionality of water fountains;

    b.     Functionality of toilets;

    c.     Functionality of sinks;

    d.     Cleanliness of the hold room;

    e.     Presence of pests;

    f.     Availability of bottled water;

    g.     Temperature (should be within 66-80 degrees Fahrenheit); and

    h.     Adequate ventilation.

64.     If a hold room does not meet the required standards, the agent must report the problem to
his or her direct supervisor.

65.     If a problem is encountered during the inspection, the station must then document all
steps taken to address the particular problem.  All issues that have not been resolved within twelve (12)
hours must be reported to the Patrol Agent in Charge of the Station.

66.      Consistent with the October 16, 2015, guidance, agents log each time that a juvenile is offered any food.

67.      Agents must also document in e3DM any provision of medical care to a juvenile.

68.      Agents must conduct "welfare checks" in a regular and frequent manner.  During "welfare checks," agents must ensure that all toilets and sinks appear functional, that potable water is available to juveniles, that there are no pests and that the hold rooms appear sanitary.  All "welfare checks" are now recorded in the e3DM system.

69.      Although Border Patrol has long maintained a consistent and comfortable temperature in its stations, in response to the Court's order, Buffalo Sector obtained handheld infrared thermometers to take the temperature in any hold room prior to placing a juvenile in that room and every 24 hours thereafter, as noted above.  For approximately $20 per unit, Buffalo Sector purchased handheld infrared thermometers for each location that could possibly hold detainees. *Exhibit F*.  Consistent with the October 16, 2015, guidance, agents must record the temperature being within range (66-80 degrees Fahrenheit) or they must specifically note when the temperature is out of range.  If the temperature is out of range, agents must immediately inform their supervisors and steps will be taken to remedy or mitigate the concerns and correct the temperature.

70.      If e3DM is offline or otherwise not available at any time, Buffalo Sector has paper forms available to document the information and retains the paper until the information can be entered into e3DM.

71.      As noted above, Buffalo Sector attempts to maintain family unity for those in its custody.  Consistent with the October 16, 2015, guidance, Buffalo Sector now records any separation of a juvenile from his or her family. Where that separation does occur, agents will also record any family contact that occurs in the custodial actions portion of the e3DM.

72.      If such contact cannot be facilitated, the agents must document the reasons for the lack of contact using one of the following options:

    a.      Operational infeasibility;

    b.      Security concerns;

    c.      Lack of certainty regarding the familial relationship;

    d.      Medical concerns; or

    e.      The family remains in Border Patrol custody for fewer than four hours.

73.    This information must also be documented in paper form at any time that e3DM is offline or otherwise unavailable; if documented in paper form, the information is input into e3DM once e3DM is back online.

74.    Consistent with the memorandum issued October 16, 2015, I instructed all agents in Buffalo Sector receive training on how to enter the above information into e3DM.  All agents completed this training by November 6, 2015.

75.    Consistent with Border Patrol's longstanding practice, I have ensured that all agents in Buffalo Sector were reminded on October 22, 2015, that they are required to ask every unaccompanied juvenile who must be separated from his or her legal guardian about other family members in the United States.  Agents must record this information in a CBP systems of records which is made available to HHS.

76.    On December 23, 2015, I disseminated a memorandum titled "Review of Customs and Border Protection Conditions of Detention," which provided that the DHS Office of the Inspector General would be conducting periodic inspections of CBP detention facilities to monitor compliance with TEDS.

77.    On February 2, 2016, I also disseminated to Buffalo Sector agents a memorandum titled "Policy Reminder on TEDS and Reno v. Flores."  Compliance was tracked to verify that all agents were issued/reissued guidance on the Flores Settlement Agreement, TEDS, and the Hold Rooms  and Short Term Custody Policy.

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge, information, and belief.

Signed this 1st day of June, 2016.

Brian S. Hastings
Chief Patrol Agent, Buffalo Sector
U.S. Border Patrol
U.S. Customs and Border Protection
U.S. Department of Homeland Security

## Exhibit List

*Exhibit A* – Detention Area Potable Water (Water Fountain) Photograph

*Exhibit B* – Hold Room Photographs

*Exhibit C* – Detainee Blanket Photograph

*Exhibit D* – Detention Area Signage Photographs

*Exhibit E* – Free Legal Services Information

*Exhibit F* – Infrared Thermometer Photograph

# EXHIBIT A



# EXHIBIT B





WATER SAFE FOR DRINKING

AGUA POTABLE

EXHIBIT C





ECONO BLANKET

DISPOSABLE EMERGENCY
BLANKET
54" X 80"

REORDER NUMBER
55-1003

Distributed By

*Swift ❖ First Aid*

Valencia, CA 91355



**MEDLINE**

*Tissue/Poly*
**Pillowcases**

Reorder: **NON24345**

21 in x 30 in (53.3 cm x 76.2 cm) - White

Contents: **100 Each per Case**

*Tissue/Poly*
**Pillow**

Reorder: **NON**

21 in x 30 in (53.3

Contents: **100**

# EXHIBIT D



# Keep Detention Safe
## CBP Has Zero Tolerance for Sexual Abuse & Assault

Break the Silence
Report Confidentially
Be Safe and Get Help

**Don't Wait! Report now an incident of sexual abuse or assault by:**
Telling any CBP official ◆ Calling a Hotline number

## 1-800-323-8603
DHS Office of Inspector General Hotline

U.S. Customs and Border Protection

**Report Sexual Assault Now**
بلغ عن الاعتداء الجنسي الآن
即刻举报性侵犯事件
Rapportez les agressions sexuelles
Denonse agresyon seksyèl touswit
Denuncie crimes sexuais agora
Báo cáo các hành vi phạm tội tình dục ngay lập tức
**Reporte la agresión sexual ahora**

# Tráfico humano
## Problema global

## Prostitución. Esclavitud. Trabajo forzado.

Cada año, cientos de miles de hombres, mujeres y niños inocentes son explotados en confabulaciones para el tráfico humano.

ICE es líder en la lucha global contra el tráfico.

Teniendo como objetivo las organizaciones de tráfico mientras apoya a las víctimas, ICE procura desmantelar la infraestructura delictiva que sustenta el tráfico.

### Indicadores communes de tráfico

- La víctima carece de identificación o de documentos de viaje.
- La víctima fue entrenada para hablar con oficiales del orden público o inmigración.
- La víctima está en situación de trabajo forzado o de comercio sexual.
- El salario de la víctima es embargado para pagar su viaje contrabandeado.
- Se niega libertad de movimiento a la víctima.
- Se amenaza con dañar a la víctima o a su familia si intenta escapar.
- Se amenaza a la víctima con deportación o arresto.
- Se ha hecho daño a la víctima o negado comida, agua o atención médica.
- Se ha negado a la víctima contacto con sus familiares o amistades.
- No se permite a la víctima alternar socialmente o asistir a servicios religiosos.

### Traficar vs contrabandear

El tráfico humano se define como:

- Tráfico sexual en el cual se induce un acto sexual comercial por medio de fuerza, fraude o coacción, o en el cual la persona inducida a tal acto es menor de 18 años; o
- El reclutar, amparar, transportar, suministrar u obtener una persona para trabajos o servicios, por medio de fuerza, fraude o coacción, con el propósito de someter a esa persona a servicio involuntario, peonaje, servidumbre por deudas o esclavitud.

El contrabando humano se define como:

- La importación de personas a Estados Unidos evadiendo deliberadamente las leyes de Inmigración. Se incluye en este delito la importación de extranjeros ilegales al país, así como también el transportar y albergar extranjeros que ya estén en Estados Unidos.



Homeland Security
Blue Campaign

Denuncie actividades sospechosas:
**1-866-DHS-2-ICE**
1-866-347-2423
www.dhs.gov/humantrafficking



**Death is not the only way to lose your life.**

**Be alert. Be strong. Be free.**

Ask for help if:

- Your identification documents are taken away from you.
- You are indebted to a smuggler or employer and must work off your debt.
- You or your family are threatened or abused.
- You are not allowed to leave your home or job or are subjected to limited movement.
- You are forced to do things against your will.
- You are denied any freedom of choice or human right.

**Call 1-800-BE-ALERT (1-800-232-5378)**

 U.S. Customs and Border Protection | WWW.CBP.GOV

EXHIBIT E



# READ THIS
## *BEFORE* YOU TAKE LEGAL ADVICE

If you have a case in immigration court, only take legal advice from:

♦ a licensed attorney

An "attorney" is a person who has a valid license from a state to practice law.

♦ an accredited representative

An "accredited representative" is an individual who works with a recognized organization and has been given permission by the United States Government to help people in immigration court. A "recognized organization" is a nonprofit, religious, charitable, social service, or similar organization that has been given permission by the United States Government to help people in immigration court.

If someone claims to be an attorney and you want to know if that person is allowed to represent you in immigration court:

♦ Ask in what state(s) he or she is licensed to practice law.

♦ Call the office that licenses attorneys in that state (this is usually the "state bar association" or the supreme court of that state) and ask that office if the attorney has a bar number and is in "good standing."

♦ Go to the EOIR Web site at www.justice.gov/eoir. Click on "Find Legal Representation," then click on "List of Attorneys and Representatives who are currently Ineligible to Practice Immigration Law" to find out who is **not** permitted to represent you in immigration court.

If someone claims to be an accredited representative and you want to know if that person is allowed to represent you in immigration court, go to the EOIR Web site at www.justice.gov/eoir. Click on "Find Legal Representation," click "Recognition and Accreditation Program," and then select "Accredited Representatives List," or call (703) 305-9029 for information.

If you think you have been a victim of immigration fraud, contact the EOIR Fraud and Abuse Prevention Program at: EOIR.Fraud.Program@usdoj.gov or (703) 305-0470.

Prepared by the Executive Office for Immigration Review (EOIR)

# List of Pro Bono Legal Service Providers

Updated January 2016

*new provider

http://www.justice.gov/eoir/list-pro-bono-legal-service-providers

## Buffalo Immigration Court

### Buffalo, New York (page 1 of 2)

| Erie County Bar Association | Legal Aid Society of Rochester, Inc. |
|---|---|
| Volunteer Lawyers Project<br>237 Main Street, Suite 1000<br>Buffalo, NY 14203<br>(716) 847-0662 ext 301 for non-detained individuals and detained women<br>(716) 847-0752 for men detained at BFDF<br>• Will only represent individuals who qualify as low-income | One West Main Street, Rm. 800<br>Rochester, NY 14614<br>(585) 295-5745 (within Monroe County)<br>(800) 963-5604 (outside Monroe County)<br><br>• Represents aliens seeking Asylum<br>• Representation limited to persons residing in Allegany, Cattaraugus, Chautauqua, Genesee, Livingston, Monroe, Niagara, Ontario, Orleans, Seneca, Steuben, Wayne, Wyoming, and Yates Counties<br>• Will not represent detained aliens |
| Parmanand L. Prashad, Esq. | Stephen K. Tills, Esq. |
| 259 Traders Blvd. East, Unit 13<br>Mississauga, Ontario<br>Canada L4Z 2E5<br>(905) 712-1680 or (416) 410-8721 | P.O. Box 635<br>6413 West Quaker Road<br>Orchard Park, NY 14127<br>(716) 662-5080 |
| Eric W. Schultz, Esq. | Andrew Slepian, Esq. |
| Hiscock & Barclay, LLP<br>1100 M&T Center<br>3 Fountain Plaza<br>Buffalo, NY 14203-1414<br>Tel: (716) 566-1412<br>Fax: (716) 846-1216 | The Law Office of Andrew Slepian, Esq.<br>14 Lafayette Square, Suite 1800<br>Buffalo, New York 14203<br>Tel: (716) 870-4788 |
| Alejandro Gutierrez, Esq. | Robert Kolken, Esq.<br>Matthew Kolken, Esq. |
| Law Offices of Alejandro Gutierrez PLLC<br>745 Englewood Avenue<br>Buffalo, NY 14223-2406<br>Tel: (716) 877-4276.<br>Toll Free Fax: (855) 260-1323<br>Aglawo1@gmail.com<br>www.alejandrogutierrezpllc.com | Kolken & Kolken, Attorneys at Law<br>135 Delaware Avenue, Suite 101<br>Buffalo, New York 14202<br>(716 )854-1541 |
| Anne E. Doebler, Esq. | Annick T. Koloko , Esq. |
| 14 Lafayette Square, Suite 1800<br>Buffalo, NY 14203<br>Tel: (716) 898-8568<br>Fax: (716) 898-8929 | Law Office of Annick T. Koloko<br>266 Elmwood Avenue, #161<br>Buffalo, NY 14222<br>(716) 200-1720 |

**Disclaimer:** As required by 8 C.F.R. § 1003.61, the Executive Office for Immigration Review (EOIR), Office of the Director, Office of Legal Access Programs maintains a list of organizations and attorneys qualified under the regulations who provide pro bono or free legal services. The information posted on this list is provided to EOIR by the Providers. EOIR does not endorse any of these organizations or attorneys. Additionally, EOIR does not participate in, nor is it responsible for, the representation decisions or performance of these organizations or attorneys.

# List of Pro Bono Legal Service Providers

Updated January 2016

## Buffalo, New York (page 2 of 2)

| Michael Berger, Esq. | Sarah E. Murphy, Esq. |
|---|---|
| Berger, Berger & Slepian<br>5530 Sheridan Drive, Suite 1<br>Buffalo, NY 14221<br>(716) 634 - 6500 | Serotte Reich Wilson<br>300 Delaware Avenue<br>Buffalo, NY 14202<br>Tel: (716) 854-7525<br>Fax: (716) 854-0294 |

| Nevin F. Murchie, Esq. | Matthew Borowski, Esq. |
|---|---|
| Law Office of Nevin F. Murchie, PLLC.<br>8555 Main Street<br>Williamsville, NY 14221<br>Tel: (716) 342-8340<br>Email: nmurchie@murchielaw.com<br>www.murchielaw.com<br>  ▪ Will represent indigent aliens in immigration proceedings pro bono<br>  ▪ Will represent indigent aliens in asylum proceedings | Law Office of Mathew Borowski, Esq.<br>474 Elmwood Ave, Suite 204<br>Buffalo, NY 14222<br>Tel: (716) 418-7431<br>Website: www.borowskilaw.com |
| | **Jose, E. Perez, Esq.**<br><br>Law Offices of Jose Perez, P.C.<br>Oficinas de abogado Jose Perez<br>651 Delaware Avenue, Suite 118<br>Buffalo, New York 14202<br>Tel: (716) 362-1204<br>Fax: (315) 466-5673<br>www.joseperezyourlawyer.com<br>  ▪ Will provide free legal services to indigent aliens<br>  ▪ Will represent indigent aliens in asylum proceedings<br>  ▪ Will represent indigent aliens in immigration proceedings pro bono |

**Disclaimer:** As required by 8 C.F.R. § 1003.61, the Executive Office for Immigration Review (EOIR), Office of the Director, Office of Legal Access Programs maintains a list of organizations and attorneys qualified under the regulations who provide pro bono or free legal services. The information posted on this list is provided to EOIR by the Providers. EOIR does not endorse any of these organizations or attorneys. Additionally, EOIR does not participate in, nor is it responsible for, the representation decisions or performance of these organizations or attorneys.

# EXHIBIT F

