DEFENDANTS' EXHIBIT 9

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION**

| | | |
|---|---|---|
| Jenny Lisette Flores, *et. al.* | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | No. CV 85-4544 |
| | ) | |
| Jeh Johnson, Secretary | ) | |
| U.S. Department of | ) | |
| Homeland Security | ) | |
| *Defendants* | ) | |

**DECLARATION OF MANUEL PADILLA JR.**

1. I am the Chief Patrol Agent of the Rio Grande Valley (RGV) Sector, U.S Border Patrol, U.S. Customs and Border Protection as well as the Commander of the Joint Task Force – West, South Texas Corridor (JTF-W STC). I have been employed in this capacity since December 20, 2015. Prior to that date, I was the Chief Patrol Agent for the Tucson, Arizona Border Patrol Sector.  In my capacity as the Chief Patrol Agent of the RGV Sector, I have direct oversight of the tactical and strategic operations of nine stations responsible for securing 316 river miles, 317 coastal miles, and 34 counties.

2. I am responsible for executing the missions of the Department of Homeland Security (DHS), CBP, and of the U.S. Border Patrol (Border Patrol) within the Rio Grande Valley Sector.  CBP's mission includes facilitating the flow of legitimate trade and travel while safeguarding America's borders from dangerous people and contraband.

1

3. I make this declaration on the basis of my own knowledge, as well as the documents and information made available to me in my position.

4. The RGV Sector is comprised of nine Border Patrol stations: Brownsville, Corpus Christi, Falfurrias, Fort Brown, Harlingen, Kingsville, McAllen, Rio Grande City, and Weslaco. I oversee all nine stations within the RGV Sector and am responsible for the oversight of more than 3,000 Border Patrol agents (agents) and support personnel combined. I have oversight of the day-to-day law enforcement operations of Border Patrol in the RGV Sector, including the apprehension and processing of aliens.

5. In addition to the nine stations, RGV Sector has established a Centralized Processing Center (RGV CPC), which I also oversee.  The RGV CPC consists of CPC-Ursula (short-term holding of processed aliens only), CPC-McAllen (McAllen Station processing area), and CPC-Weslaco (Weslaco Station processing area when operationally required). The CPC is an integral part of the RGV Sector's strategy to more efficiently process all categories of aliens.

6. CPC-Ursula currently has the ability to hold 1,000 detainees, with the ability to provide services associated with the care and temporary custody of children and families. These services include 24/7 medical screening and treatment, (Dec. Exh. 1), hot meals, (Dec. Exh. 2), showers, (Dec. Exh. 3), child monitors/caregivers, and laundry services, (Dec. Exh. 4), among others. CPC-Ursula currently only houses family units and unaccompanied alien children (UACs). Its purpose is to provide a safe and comfortable environment for these populations until the Department of Health and Human Services, Office of Refugee Resettlement (ORR) and/or U.S.

Immigration and Customs Enforcement (ICE) can take them into custody for further proceedings.

7. Statistically, the RGV Sector currently apprehends more UACs and family units than any other Border Patrol Sector. As of May 31, 2016, in Fiscal Year 2016 RGV Sector has apprehended 29,714 family unit members and 23,165 UACs. Respectively, these numbers represent a 110% and 75% increase in family unit and UAC apprehensions respectively as compared to the same time period in Fiscal Year 2015.

8. I am familiar with the policies and procedures that govern the apprehension, processing, and temporary detention of aliens. As Chief Patrol Agent of RGV Sector, I am responsible for ensuring that those policies and procedures are communicated to the agents, overseen by the supervisors, and implemented within the RGV Sector.

9. I am familiar with the Flores Settlement Agreement (Agreement), including the requirement that juveniles be held in facilities that are safe and sanitary; the requirement that juveniles be provided access to food, drinking water, toilets, sinks, medical care, and adequate ventilation; and that CBP monitor its own compliance with these terms. I am aware that according to the Court's order, the Agreement applies to all juveniles, regardless of whether they are accompanied by adult family members.

10. I am similarly familiar with the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA). I am familiar with the guidance issued by the then Chief of Border Patrol providing guidance to Border Patrol on the implementation of the TVPRA on March 20, 2009.

11.  Once an agent encounters an individual the agent believes to be an illegal alien, the agent will first establish alienage and determine if the alien is a minor.  A pat-down search for contraband is conducted on each individual upon arrest. Personal property, including any baggage is also searched for contraband and secured prior to entering a Border Patrol transportation vehicle. Once the initial questioning is completed in the field, the alien is segregated by vulnerability for transportation purposes and is brought to one of the nine Border Patrol stations for further processing. Family units and juveniles apprehended in the McAllen, Weslaco, and Rio Grande City station area of operations are generally directly brought from the field to the CPC-McAllen, for priority processing at a location in close proximity to the CPC-Ursula facility.

12. When a detainee arrives at a Border Patrol station, he or she generally disembarks the service vehicle in an area referred to as a "sally port." A pat-down search for contraband is again conducted on each individual. Personal property, including any baggage is also searched for contraband and secured prior to entering the Border Patrol station.  This procedure exists for officer and detainee safety. Detainees (both juveniles and adults) are generally permitted to retain their clothing. All personal property that is removed from the individual is tagged with a Form I-77 (Baggage Check) and a baggage check stub is provided to the individual.  The tagged personal property is secured and stored in an area that is not accessible to detainees. Personal property is returned when individuals are transferred.

13. Processing is initiated during "intake" where biographical information is obtained, and biometrics captured and entered into CBP's systems of records. After biometrics

are captured and queried against DHS databases and a detainee is identified, case preparation commences.  This includes but is not limited to execution of arrest reports, immigration processing forms and service of said forms, making consular notifications, and affording communication privileges with consular officials and family members, as appropriate.

14. Before capturing biometric information on the individual, a determination is made whether an individual is a juvenile (also referred to as a child) under 18 years of age. Agents also determine whether the child has any lawful status under the immigration law of the United States. If the individual is identified as a juvenile, agents also determine whether the child is accompanied by a parent, legal guardian or other family member.

15. Consistent with Border Patrol's March 20, 2009 guidance on the TVPRA, during questioning agents are required to record the location of any parents/legal guardians, as well as the location and contact information for any relatives in the United States for UACs.  That information is made available to ORR.

16. For those detainees who have children accompanying them, in my experience, agents normally ask about other family contacts in the United States including contact information. That information is placed into CBP systems of records and made available to ICE to assist with the expeditious reunification with other relatives in the United States in the event the family is released from DHS custody.

17. Border Patrol stations in the RGV Sector have general similarities in layout and procedures. Each of the Border Patrol stations have holding areas, often known as

holding cells or hold rooms, where people are detained in Border Patrol facilities. At
the McAllen Border Patrol Station, for instance, the cell capacities vary from as low
as 22 to as high as 60 adults.

18. When detainees are brought inside to the processing area, they are placed into hold
rooms based on a number of factors including age, gender, whether they are traveling
as a family unit, and if they are suspected of a serious crime.

19. UACs are separated from unrelated adults as quickly as operationally possible, and
generally within few minutes upon arriving at a Border Patrol facility. Families are
normally segregated from the rest of the detained population. In order to maintain
family unity and for other operational reasons, Border Patrol normally detains
families together in the same holding cell. However, due to medical issues, criminal
history, or capacity issues, there are times when Border Patrol, for operational need,
must detain family members separately.

20. Detainees may be transferred into different hold rooms depending on their stage in
processing, for meals, for consular interviews and for hold room cleaning.

21. Each Border Patrol station must be kept safe, secure and clean.  The size of hold
rooms at Border Patrol stations varies. Each hold room varies in capacity, has
concrete benches, a toilet, a sink, and or a toilet with sink combination unit, and a
water fountain and or access to drinking water provided in beverage
cooler/dispensers. Typically a hold room is constructed of impervious materials that
can be easily cleaned and are hygienic. (Dec. Exh. 5.)

22. Due the fact that the number of apprehensions varies widely on a daily basis, the number of detainees per station and, in turn, per holding cell fluctuates greatly. For this reason, there are times when a large number of detainees may be held in a certain hold room. As the RGV Sector has nine stations as well as the CPC-Ursula, our agents are able to take various steps to reduce overcrowding. This includes activating CPC-Weslaco, detailing agents from other sectors, and moving aliens to stations that have a lower detainee population.

23. The Agreement, the Border Patrol's March 20, 2009 TVPRA guidance, and the CBP National Standards on Transportation, Escort, Detention and Search (TEDS), provide that all areas where juveniles are detained must provide access to toilets and sinks; drinking water and food, as appropriate; emergency medical assistance; adequate temperature control and ventilation; and adequate supervision to protect children from others.

24. I understand that this Court issued two Orders in the above referenced case, the first on July 24, 2015 and the second on August 21, 2015.  I am aware that the District Court, in its August Order required, among other things, CBP to monitor its compliance with the standards and procedures for detaining class members in facilities that are safe and sanitary, consistent with the concern for the particular vulnerability of minors, and consistent with Paragraph 12 of the Flores Settlement Agreement.

25. As part of the Border Patrol's efforts to comply with the terms of the Flores Settlement Agreement, a memorandum was issued to the field explaining the changes

made to the e3 Detention Module ("e3DM") requiring the electronic documentation
of conditions in facility hold rooms.

26. Consistent with the memorandum issued on October 16, 2015, all of the agents in
RGV Sector were advised that they must take steps properly log compliance with the
various amenities provided to juveniles detained in Border Patrol custody. Under the
new e3DM processing policies, RGV Sector management ensured that all agents were
reminded via musters that they must conduct a thorough check of each hold room
before placing a juvenile in the room.

27. To further institutionalize these changes, RGV Sector generated various Power Point
instructional trainings that were provided to agents throughout the Sector.

28. RGV Sector management also ensured that each of the Stations within RGV Sector
made the necessary changes to the e3DM with respect to amenities available in each
hold room such as drinking water, a functioning toilet and or sink, to include tracking
of hold room temperature, cleanliness, absence of pests, and adequate ventilation.

29. Moreover, at a series of musters across RGV Sector, each agent was reminded that the
station must also conduct a check of each hold room prior to placing a juvenile in a
hold room and a daily check of each hold room occupied by a juvenile.

30. After conducting these checks an Agent must confirm the following information into
e3DM:

    a. Functionality of water fountains;

    b. Functionality of toilets;

    c. Functionality of sinks;

    d.  Cleanliness of the hold room;

    e.  Presence of Pests

    f.  Availability of bottled water;

    g.  Temperature (should be within 66-80 degrees Fahrenheit); and

    h.  Ventilation.

31. If, upon a check, a particular hold room does not meet the required standards, the observing agent must report the problem to his or her direct supervisor.

32. The station must then document all steps taken to address the particular problem.  All issues that have not been resolved within twelve (12) hours must be reported to the Patrol Agent In Charge (PAIC).

33. Consistent with the October 16, 2015 guidance, agents log each time that a juvenile is offered any food. Agents must also document in e3DM any provision of medical care.

34. Consistent with Border Patrol's longstanding practice in RGV Sector, agents must conduct what are known as "welfare checks" on a regular and frequent basis. During those checks, agents must ensure that all toilets and sinks are functional, that water is available to juveniles, that there are no pests, and that the hold rooms are sanitary. All welfare checks are now recorded in Border Patrol's e3DM system.

35. Although Border Patrol has long maintained a consistent and comfortable temperature in its stations, in response to the Court's 2015 order, RGV Sector also obtained approximately 60 infrared thermometers in order to take the temperature in any hold room prior to placing a juvenile in that room and every 24 hours thereafter.

36. Consistent with the October 16, 2015 guidance, agents record whether the temperature is within range (66-80 degrees Fahrenheit) or must specifically note when the temperature is out of range.  If the temperature is out of range, agents must immediately inform their supervisors and corrective action is taken with CBP's Facilities Management and Engineering (FM&E).

37. If e3DM is offline or otherwise not available at any time, the RGV Sector has paper forms available to document the information and retain the paper until the information can be entered into e3DM.

38. Consistent with longstanding Border Patrol practice, the RGV Sector attempts to maintain family unity for those in its custody. Consistent with the October 16, 2015 guidance, the RGV Sector now records any separation of a juvenile from his or her family.  Where that separation does occur, agents will also record any contact that occurs during the period of separation, and when the family can be reunified.

39. If such contact cannot be facilitated, the agents must document the reasons for the lack of contact, using one of the following options:

    a.  Operational infeasibility;

    b.  Security concerns;

    c.  Lack of certainty regarding the familial relationship;

    d.  Medical concerns; or

    e.  The family remains in Border Patrol custody for fewer than four hours.

     f.  This information must also be documented in paper form at any time that e3DM is offline or otherwise unavailable, and input into e3DM when it becomes available.

40. In October 2015, all Supervisory Border Patrol Agents in RGV Sector received training on how to enter this information into e3DM via a Power Point presentation.

41. Consistent with Border Patrol's longstanding practice, all agents RGV Sector were reminded on or about October 22, 2015, that they are required to ask every unaccompanied juvenile about other family members in the United States. Agents must record this information and provide it to ORR, to assist with their reunification efforts.

42. In the RGV Sector, the vast majority of UACs and family units are immediately transferred to CPC-Ursula following completion of administrative case processing. At CPC Ursula, these populations have access to a wide range of "wrap around" services to include showers, laundry services, clean clothes, and mattresses, while transfer to ORR or ICE is pending. Detainees transferred to CPC-Ursula generally remain at the facility for less than 24 hours after administrative case processing has been completed by RGV pending their transfer into ORR or ICE custody.

43. All juveniles (accompanied and unaccompanied) detained by RGV Border Patrol stations are generally given the opportunity to make at least one free domestic telephonic call while in custody. Due to operational necessity, juveniles often are not permitted to make telephone calls until the time they are processed or after processing is complete. However, a Mexican juvenile who is being processed for voluntary return

11

is always given the opportunity to make a telephone call before being offered the
opportunity to voluntarily return to Mexico.

44. The telephones available for juvenile use are generally situated next to the processing
areas at the Border Patrol stations.

45. At the CPC-Ursula, there is a separate phone bank available for use. (Dec. Exh. 6.)
These phones allow free domestic phone calls, and juveniles are provided various
opportunities during detention to make phone calls.  There is no set limit on the
number of phone calls that can be made by detainees at CPC-Ursula.

46. RGV Sector currently contracts with Deployed Resources LLC to supply the meals
needed to feed detainees. From October 12, 2015 through May 8, 2016, RGV Sector
spent $529,793.35 on this contract. Under the contract, Deployed Resources provides
a "menu conforming to a culturally Hispanic diet." Pursuant to the statement of work,
the meals provided "must meet Texas Department of Agriculture Food & Nutrition
guidance and additional quality control requirements."

47. RGV Sector's policy regarding meals for juveniles applies the same to both
accompanied and unaccompanied juveniles. In addition, RGV Sector treats pregnant
females as covered by the juvenile feeding policy.

48. In RGV Sector, juveniles (under 18 years old) and pregnant women are provided the
following meals:

     a. Breakfast.
        i. Burrito (or sandwich upon request)
       ii. Crackers, granola bars, or fruit cups
      iii. Juice drink

b. Morning Snack
    i. Crackers, granola bars, or fruit cups
    ii. Juice drink
c. Lunch
    i. Burrito (or sandwich upon request)
    ii. Crackers, granola bars, or fruit cups
    iii. Juice drink
d. Afternoon Snack
    i. Crackers, granola bars, or fruit cups
    ii. Juice drink
e. Dinner
    i. Burrito (or sandwich upon request)
    ii. Crackers, granola bars, or fruit cups
    iii. Juice drink

49. In addition to these scheduled meals, juveniles and pregnant women and provided access to snacks, juice, fruit, and other food items at all times.

50. Due to the large number of infants that are apprehended as part of family units, RGV Sector also stocks baby formula, nursery purified water, baby bottles, diapers, and other essential products for infants. These products are made available to infants and their parents during the various meal times. (Dec. Exh. 7.)

51. From approximately October 21, 2015 through May 10, 2016, RGV Sector spent approximately $127,714.46 on miscellaneous food purchases on top of the food contract with Deployed Resources.

52. The welfare of all juveniles is checked at all meal and snack times to ensure that their needs are being met.

53. All meals and welfare checks are entered into the e3 Detention Module (e3DM). Under Border Patrol policy, agents are required to input all custodial actions (to including feedings, medical care, and welfare checks) in e3DM.

54. It is incumbent on each individual station to know if a detainee will exceed the four hour limit to provide a snack and juice or if the detainee will exceed the eight hour limit to be provided a meal.  If that time will be exceeded before arrival to the detainee's next destination then a meal or snack will be provided to the detainee before they depart.  In addition, food or water will never be withheld from a detainee as a form of punishment.

55. There is also an internal auditing function within e3DM that will warn agents when a detainee is approaching these timelines and will display a flashing red box if at any time a detainee exceeds these timelines.

56. Potable water for detainees in custody is provided by a water fountain type fixture in each hold cell. (Dec. Exh. 8.) Except for the two checkpoints in the Rio Grande Valley (the Falfurrias Border Patrol Checkpoint and Sarita Border Patrol Checkpoint), the water available to detainees is piped in from the local municipal water systems and is the same water made available to the employees in the stations. In addition to the water fountains, the holding rooms in the Rio Grande Valley each have sport style five gallon water coolers, (Dec. Exh. 9), with disposable cups made available to the detainees. The water in the jug comes from the same water supply as the fountains. Detainees have the choice or consuming water from either the faucets or jugs.

57. The water jugs and disposable cup supply are generally rinsed out with water and refilled every shift. Bleach is not used to clean the jugs.  The water level and number of disposable cups are regularly monitored throughout each shift and replenished as needed.

58. In addition to the water fountains and water coolers, juveniles at the Ursula-CPC are provided bottled water with all of their meals.

59. Due to their remoteness in location, the Falfurrias Border Patrol Checkpoint and Sarita Border Patrol Checkpoint obtain their water from ground water wells, which is the same water made available to the Border Patrol employees. In the RGV Sector, there are two CBP employees who are certified as Class D Water Operators by the Texas Commission on Environmental Quality. These two employees are responsible for monitoring the water quality at the Falfurrias Border Patrol Checkpoint and Sarita Border Patrol Checkpoint. These responsibilities include: (1) conducting weekly chlorine level checks; (2) sending samples to the county laboratories for testing for Coliform bacteria and E.Coli bacteria; (3) sending quarterly reports to the Texas Commission on Environmental Quality (TCEQ); (4) sending monthly reports to the county health office; and (5) maintaining a chlorinator injection system. In the event that the testing of the water quality is problematic, the Border Patrol pays for potable water to be transported to the checkpoints until the ground water once again satisfies testing.

60. Rio Grande Valley Sector has multiple contracts that covering the cleaning needs for the stations throughout the Sector. Principally, these contracts are with TRDI Inc. and Ace Communications.

61. Consistent with these contracts, on a daily basis, and as needed throughout the day, the cleaning contractors mop and hose down the holding cells, clean and descale the bathroom fixtures to include the toilets and sinks, restock bathroom supplies to

include toilet paper, paper towels, and soap, empty trash receptacles, and clean the mattresses.

62. RGV Sector purchased trash receptacles in 2015 for its stations' hold rooms. (Dec. Exh. 10.) The trash receptacles are emptied by the janitorial contractors throughout the day on an as needed basis.

63. The stations in the RGV Sector are climate controlled facilities. The stations within the RGV Sector maintain a comfortable temperature. However, in my experience, those who are not accustomed to air conditioning, at times, find it cooler than they are accustomed to.

64. The temperature in the Rio Grande City, Falfurrias, Fort Brown and Brownsville stations is regulated by a central control system. The temperature in all other stations is regulated at the station by either GSA or CBP Facility Managers.  GSA Stations in the RGV Sector are McAllen, Harlingen, and Weslaco.  All other stations in the RGV Sector are CBP owned.

65. In periods of outage or malfunction of the climate systems, the Border Patrol Facilities Department is contacted and they in turn contact a contractor to respond for an emergency service repair.

66. In the event that that the air conditioning or heating units in a facility are out of service for an extended period, detainees are relocated to other nearby stations.

67. As detailed in paragraph 34, in response to the Court's order, the RGV Sector also purchased thermometers in order to regularly monitor the temperature in the station hold rooms. These thermometers are used to take the temperature of each cell at the

beginning of every shift. Agents record if the temperature is within range (66-80 degrees Fahrenheit) or specifically note when the temperature is out of range. If the temperature is out of range, agents must immediately inform their supervisors and work with FM&E to bring the temperature to an acceptable level.

68. The National Standards on Transport, Escort, Detention, and Search dictates that reasonable efforts will be made to provide showers to juvenile detainees approaching 48 hours in custody. Although not all stations in RGV Sector have shower and laundry facilities available, approximately 93% of the juveniles apprehended in the RGV Sector are transferred following their processing to CPC-Ursula where shower and laundry services are provided to all detainees. On average, juveniles in RGV Sector are transferred to CPC-Ursula within approximately 33 hours of apprehension and processing.

69. For the small minority of juveniles who are not transferred to CPC-Ursula, it is the intent of RGV Sector to intake and process every detainee (both juvenile and adult), and transfer them to their next destination, as quickly as possible, so that in most cases individuals will not approach this length of time in custody and will not require showers while in Border Patrol custody.

70. CPC-Ursula contracts with Active Deployment Systems to supply shower and laundry services. The annual cost for the shower and laundry service under the current contract is $2,589,837.00.

71. Upon arrival at CPC-Ursula, every juvenile is provided an opportunity to shower, have their clothes laundered, and receive a change of new clothes. (Dec. Exh. 11.)

72. A separate contractor, Dependable Health Services, supplies staff specifically to assist with the monitoring of the showers to provide for a safe environment for the juveniles, as well as to handle the laundering of the clothing. From October 14, 2015 to April 13, 2016, RGV Sector paid $223,861.80 to Dependable Health Services for its services. Specifically, this contractor has on-site staff that: (1) coordinate the collection and bagging of dirty laundry; (2) issue and collect Government-furnished shower/hygiene supplies; (3) monitor (i.e., maintain visual contact and assuring multiple detainees are not in the same shower stall) at all times all detainees going into and out of showers, taking care to adhere to DHS regulations implementing the Prison Rape Elimination Act;  (4) assist in bathing children, as required; (5) store Government-furnished clothing in designated shelves and issuing it to juvenile detainees while the detainees' clothing are being washed; (6) maintain inventory of the clothing, towels, and hygiene kits available for use and notifies Border Patrol staff of any low-inventories; (7) assist with the general care of children to include monitoring, changing diapers, assisting with toilet use and hand-washing, feeding when a child is not able to feed him or herself, and identifying and tending to other similar basic needs of children as they arise; and (8) clean/sanitize shower stalls between uses.

73. The change of clothing Border Patrol provides to the juveniles at CPC-Ursula consists of shirts, sweat pants, socks, and undergarments. (Dec. Exh. 11.) Border Patrol maintains a regular supply of this clothing by making purchases from various clothing suppliers.

74. After receiving a shower and a change of clothes, juveniles at CPC-Ursula are provided their laundered clothes in a property bag that transfers with them upon release or transfer to ORR or ICE.

75. In addition to these services, juvenile detainees at CPC-Ursula are provided a hygiene kit consisting of a towel, toothbrush, toothpaste, mouthwash, soap, and shampoo. (Dec. Exh. 12.)

76. Although the vast majority of juveniles receive a shower, laundry, and other services provided at CPC-Ursula, a small subset of juveniles apprehended in the RGV Border Patrol Sector, for a variety of operational reasons, are never transferred to CPC-Ursula. Almost all of this subset are transferred out of Border Patrol custody within 72 hours of apprehension.

77. Due to the large number of young children apprehended by Border Patrol, CPC-Ursula and all nine stations stock a large quantity of diapers of diapers in various sizes. (Dec. Exh. 13.)

78. All facilities housing detainees in the RGV Sector also stock various feminine hygiene products that are made available at all times upon request.

79. At RGV Sector's nine Border Patrol stations, the lights normally remain on at all times while detainees remain in Border Patrol custody for security reasons and due to operational necessity. Border Patrol stations are 24/7 facilities, and there is a high likelihood that agents will arrive with newly apprehended aliens at all hours of the night. The agents must also be able to maintain visual control over the holding cells to ensure the safety and security of the detainees.

80. All agents receive basic first aid training, which covers basic treatment for cuts and abrasions, bandaging, and applying pressure to a wound. A number of agents have also received first responder training.  RGV Sector also has an Emergency Medical Technician (EMTs) program which includes approximately 150 agents trained as EMTs. When agents encounter individuals in the field that display obvious signs of injury or are requesting emergency medical care, agents can contact a Border Patrol EMT to evaluate and treat, or they can contact local emergency services for transfer to an appropriate medical facility for care.

81. In addition to these aforementioned medical services, CPC-McAllen and CPC-Ursula are staffed 24/7 with a contracted medical team of EMTs, physician assistants, and nurse practitioners. Loyal Source Government Servicing is the current contractor for medical staffing. From November 1, 2015 through March 31, 2016, RGV Sector spent $1,090,262.19 for the medical services provided by this contractor. In addition, when the number of apprehensions increase and CPC-Weslaco is activated, medical staffing is provided at that location. Every detainee (both juvenile and adult) who passes through a CPC location receives a medical screening from the contracted medical staff. (Dec. Exh. 14.)

82. The purpose of the preliminary health screening is to determine if the alien has any contagious diseases, outward signs of illness, or complains of any illness or discomfort.  If the alien displays any symptoms of illness/serious contagious disease, or complains of an illness that may require medical care, the alien is taken to the appropriate medical facility, normally the local emergency department.  If the medical

issue presented at a CPC facility is one that can be addressed by a contract medical provider, such as lice, scabies, insect bites, fever, upper respiratory infections, ear and eye infections, minor scrapes/cuts/bruises, body aches, or pregnancy testing, those issues will normally be addressed by the contract medical provider. Any medical issues that cannot be addressed by the contract medical provider at a CPC facility are treated by the appropriate medical facility.

83. If a detainee in Border Patrol custody possesses medication that is not accompanied by a valid prescription of medication by a U.S. doctor, the detainee is transported to the appropriate medical facility. Any U.S-prescribed medication from the hospital or nearby pharmacy is stored at the station, and made available to the detainee for self-administration as prescribed.  Detainees with a chronic medical condition based on medications found on their person at the time of apprehension are prioritized for processing.

84. Border Patrol's March 20, 2009 guidance on the TVPRA requires that each UAC is screened for possible victimization concerns. That screening is conducted utilizing the CBP Form 93—Unaccompanied Alien Child Screening Addendum.

85. Like any other detention-like setting, Border Patrol cannot guarantee absolute privacy. Hold rooms are designed to have no exterior windows, and allowing locked or closed doors would be a safety and security concern. The hold rooms at the Border Patrol station, instead, employ screen walls by the bathroom to address privacy needs. (Dec. Exh. 5.) The screen walls allow for an environment in which detainees, especially juveniles, can have a modicum of privacy when using the facilities, but can still be

21

monitored and protected. The toilets in the station hold rooms are connected to a sink, which the detainees may use to wash their hands with soap or hand sanitizer. Paper towels are made available to the detainees as well.

86. At CPC-Ursula, private portable toilets are made available for all detainees. (Dec. Exh. 14.) Next to the bathrooms are hand washing/hand sanitizer stations that are regularly stocked with soap, hand sanitizer, and towels. (Dec. Exh. 14.) The private portable toilets, hand washing / hand sanitizing stations are serviced by Rockwell American Services. Significant and effective ventilation systems are connected to the private portable toilets and surround the area.

87. In order to ensure the safety of detainees, there are normally cameras that monitor each hold room and private portable toilet within the RGV sector detention areas. These cameras provide agents the ability to visually inspect the hold rooms and private portable toilets without encroaching on the privacy of the detainees. The agents also visually check each hold room approximately on a regular and frequent basis. The checks of the hold rooms are logged using the e3DM system.

88. During each shift turnover, a walkthrough is conducted of the hold rooms and a review of the facilities is annotated in the e3DM. If any facilities issue is found, a work order will be issued. If specialized or additional cleaning is required in a hold room, the contract employee supervisor is contacted and the request is made.

89. During the summer of 2014, the RGV Sector began using, in most circumstances, mylar blankets to provide bedding to detainees. (Dec. Exh. 15.)  In the RGV sector, the use of these blankets was necessary in order to provide cost effective bedding

which did not require routine laundering (which can be operationally challenging) and which did not transmit communicable diseases such as lice or scabies. In addition to the mylar blankets, at CPC-Ursula, Border Patrol provides mattresses designed with non-porous material to all the detainees. (Dec. Exh. 16.) In 2015, $15,450.00 was spent on purchasing mattresses for CPC-Ursula. Providing mattresses to detainees at CPC-Ursula is feasible due to the layout of the facility and the fact it is solely used as a post-processing center.

90. The mattresses at CPC-Ursula are cleaned (i.e., decontaminated) after each use. The contactors use a designated mop to wipe the mattresses down with a disinfectant after each use. CPC-Ursula has a designated area where the mattresses are cleaned and dried.

91. The RGV Sector historically has provided the Form I-770 (Notice of Rights and Request for Disposition) to all UACs. After clarification from headquarters, the Form I-770 is also provided to accompanied children (and their parents as appropriate).

92. This form, upon completion, must be placed in the juvenile's Alien File (commonly known as the "A File").

93. All juveniles detained by Border Patrol are provided with a list of free legal services at the time of processing.

94. Consular officials from the Consulate of Mexico, Consulate of Guatemala, and Consulate of El Salvador have local offices in the Rio Grande Valley and conduct daily in-person meetings with detainees. In addition, at CPC-Ursula Border Patrol has a designated area where detainees are able to meet with consular officials. Border

Patrol arranges telephone contact if a detainee wants to contact a consular representative from a country for which there is no local representative.

95. All personnel in my Sector are required to notify ORR as soon as possible after identifying a child as an unaccompanied child. That notification is now accomplished electronically through the e3 Processing System.  Every effort is made to notify ORR as quickly as possible, but those notifications must be made within 48 hours from the apprehension or discovery of a UAC (or any claim or suspicion that an alien in custody is unaccompanied an under the age of 18).

96. Consistent with the TVPRA, Agents within the Sector may only reunify UACs with parents or legal guardians who are in possession of supporting documentation and are within the United States.  ORR is responsible for the determination that any other proposed guardian, including a family member who lacks documentation of guardianship (e.g. grandparent, aunt/uncle, or brother/sister), is capable of providing care and physical custody.

97. Detainees are transferred out of Border Patrol custody as quickly as possible. For family units, those individuals are generally transferred to the custody of ICE ERO. Border Patrol may only transfer UACs to the custody of ORR.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 1st day of June, 2016.

Manuel Padilla Jr.
Chief Patrol Agent
Rio Grande Valley Sector
U.S. Border Patrol
U.S. Customs and Border Protection
Edinburg, Texas