DEFENDANTS' EXHIBIT 15

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*,<br>　　　Plaintiffs,<br><br>　　　v.<br><br>LORETTA E. LYNCH, Attorney General<br>Of the United States, *et al.*,<br>　　　Defendants. | Case No. CV 85-8544 DMG |

## DECLARATION OF CARLA PROVOST

I, CARLA PROVOST, make the following declaration, which, unless otherwise indicated, is based upon my personal knowledge and belief, as well as information and documents made available to me in my position:

1. I am in the Senior Executive Service, currently serving as the Deputy Assistant Commissioner in the Office of Professional Responsibility ("OPR"), within U.S. Customs and Border Protection ("CBP"). I have been in this position since September 8, 2015. I have been working for CBP, or its legacy agency the U.S. Border Patrol, since January 8, 1995.

2. In my role as Deputy Assistant Commissioner for OPR, my duties include overseeing the investigative activity of approximately 200 Special Agents who are assigned to conduct investigations into allegations of criminal and serious non-criminal misconduct on the part of CBP employees.

3. Prior to becoming the OPR Deputy Assistant Commissioner, I served as Chief Patrol Agent of the El Centro Border Patrol Sector from February 2013 to September 2015. Prior to that I was the Deputy Chief Patrol Agent of the El Paso Border Patrol Sector from January 2011 to February 2013. From January 2009 to January 2011, I was the Patrol Agent in Charge

1

of the Wellton, AZ Border Patrol Station and the Interim Patrol Agent in Charge of the Nogales, AZ Border Patrol Station (September 2010 to January 2011). From March 2006 to January 2009, I was an Assistant Chief Patrol Agent in the Yuma Border Patrol Sector. From January 1995 to March 2006 I was a Border Patrol Agent, Supervisory Border Patrol Agent and a Field Operations Supervisor at the Douglas, AZ Border Patrol Station within the Tucson Border Patrol Sector.

4. OPR has oversight authority for all aspects of CBP operations, personnel and facilities. OPR is responsible for ensuring compliance with all CBP-wide programs and policies relating to corruption, misconduct, or mismanagement, and for executing the internal security and integrity awareness programs. Through the national headquarters in Washington, D.C., and strategically located regional field offices, OPR screens potential CBP employees for suitability; conducts polygraph examinations for law enforcement applicants; educates employees concerning ethical standards and integrity responsibilities; maintains a robust investigative capability to investigate allegations of employee corruption; and evaluates physical security threats to CBP employees, facilities, and sensitive information.

5. Within OPR, the Investigative Operations Division ("IOD") is responsible for conducting investigations of alleged criminal and serious non-criminal misconduct on the part of CBP employees. IOD is comprised of approximately 200 Special Agents assigned to OPR Headquarters and 22 OPR field offices. OPR field offices are managed by 10 Special Agents in Charge and 12 Resident Agents in Charge located strategically throughout the United States where the threat of internal corruption is highest. IOD's Special Agents are comprised of both GS-1811 Criminal Investigators and GS-1801 Investigators. IOD

2

coordinates its internal investigative activity with the Office of Inspector General ("OIG"), U.S. Immigration and Customs Enforcement's Office of Professional Responsibility ("ICE/OPR"), the FBI and numerous other federal, state and local law enforcement authorities.

6. The Joint Intake Center ("JIC") is a unit within IOD that serves as the central clearinghouse for receiving, documenting and processing allegations of misconduct or other reportable matters involving CBP employees or operations. CBP employees can contact the JIC in a number of different ways, including by e-mail, a 24-hour telephone hotline, in person, by facsimile or by mail. Employees can report allegations to the JIC either anonymously or for attribution by name.

7. When an allegation is reported to the JIC, a Joint Intake Specialist will create an electronic case file in the Joint Integrity Case Management System ("JICMS"), the database used by CBP to record and track misconduct allegations. Each allegation or report is recorded under a unique case number consisting of a fiscal year identifier (e.g., 2011, 2012, 2013) followed by a 5-digit tracking number (00001, 00002, 00003, etc.) that is systems-generated in sequential order. The electronic case file serves as the repository for all materials related to that case.

8. Once a case is created in JICMS, it is routed electronically to the Department of Homeland Security ("DHS") OIG. Pursuant to DHS Management Directive 0810.1, the OIG maintains the right-of-first-refusal for any allegation of misconduct pertaining to a DHS employee. The OIG will review the case and determine whether it will accept the allegation for investigation. If the OIG declines to investigate an allegation, the case is referred back to OPR.

9. If referred back to OPR, OPR Headquarters Desk Officers will determine whether the allegation rises to the level of suspected criminal misconduct or serious non-criminal misconduct. If the allegation falls into one of these two categories, OPR will begin investigating the allegation. If not, OPR will refer the case to the appropriate CBP management office for handling. Management may conduct its own management inquiry, refer the case back to OPR to request reconsideration, initiate immediate corrective action or close the case without action.

10. In addition, allegations raised directly to OIG relating to potential misconduct by CBP employees will be referred to OPR if the OIG declines to investigate. Similarly, allegations raised to ICE/OPR that relate to potential misconduct by CBP employees will be referred to CBP OPR.

11. When OPR refers a case to CBP management, OPR transmits the electronic case file either to a particular office's OPR liaison, or to Labor and Employee Relations ("LER"), which serves as management's surrogate case custodian. LER will then consult with management to make a determination regarding the allegation and the ultimate disposition of the case, i.e., corrective action or no action.

12. When OPR determines that it will investigate a case, the electronic case file is assigned to one of OPR's 22 field offices, which will initiate and conduct an investigation pursuant to OPR's Standard Operating Procedures. The assigned investigators will conduct witness interviews that are documented by recordings and affidavits, and utilize other investigative techniques as are deemed necessary in a particular case.

13. When the OPR investigation is complete, OPR will draft a Report of Investigation ("ROI"), also called a "Blue Book," containing the results of the investigation as well as all supporting documentation.

14. The ROI also contains OPR's investigative findings from the investigation. For each allegation, OPR will make one of the four following investigative findings:

    a. Sustained: An allegation is sustained when the evidence would cause a reasonable person to conclude that the subject employee more likely than not committed one or more of the alleged acts of misconduct.

    b. Not sustained: An allegation is not sustained when the evidence is not sufficient for a reasonable person to determine whether the subject employee committed the alleged act(s) of misconduct. Generally speaking, the allegation cannot be proved or disproved.

    c. Unfounded: An allegation is unfounded when the evidence would cause a reasonable person to conclude that the subject employee did not commit the alleged act(s) of misconduct or that no misconduct in fact occurred.

    d. Exonerated: A subject is exonerated when it is found that the act occurred, but was lawful and consistent with policy.

15. The final ROI is electronically routed to LER, which then consults with management to determine whether and what discipline is warranted in a particular situation.

16. With respect to detainees in CBP custody, OPR generally investigates allegations of sexual abuse, excessive force, or other acts of alleged civil rights abuses committed by CBP employees against detainees.

17. In CBP detention facilities, there are signs posted in both English and Spanish advising detainees that CBP has zero tolerance for sexual abuse and assault. Detainees are advised to report any incidents of sexual abuse or assault by telling any CBP official or by calling the DHS OIG hotline.

18. If any detainee reports sexual abuse or assault to a CBP officer, the officer is duty bound to report the allegation to the JIC. Similarly, if advised of excessive force or other potential misconduct by a CBP employee, CBP officials are expected to report those allegations to the JIC.

19. OPR does not usually receive or investigate allegations relating to detention facilities, temperature, food, and the like, because these allegations typically do not involve CBP employee misconduct.

20. On infrequent occasions, OPR will receive a group, or bundle, of allegations from a non-governmental organization relating to conditions at detention facilities. These allegations will typically be referred from the DHS OIG or from the DHS Office for Civil Rights and Civil Liberties, which investigates civil rights and civil liberties claims filed by members of the public regarding DHS policies, activities, or actions by DHS personnel.

21. In my experience as the Interim Patrol Agent in Charge of the Border Patrol Station in Nogales, AZ, the largest station in the United States, complaints about the physical conditions within the detention facility – such as food, water, temperature, light levels – would typically come from the Consular offices of the home countries of detainees. In my experience, the relevant Consulate would contact me or another station manager and would advise of the complaint or complaints received at that Consulate. Border Patrol

management would then work directly with the Consulate to determine whether and what changes could be made to address the concerns raised.

22. There are signs posted at CBP detention facilities in both English and Spanish advising detainees that they have the right to communicate with a Consular official from their home country. Detainees are advised to tell the CBP processing officer if they wish to speak to their Consular representatives.

I declare under penalty of perjury that the information provided above is true and correct to the best of my knowledge.

DATED this 31st day of May, 2016.

*[signature: Carla L. Provost]*

Signature of Declarant
Carla Provost