CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Carlos Holguín (Cal. Bar No. 90754)
Peter A. Schey (Cal. Bar No. 58232)
256 South Occidental Boulevard
Los Angeles, CA  90057
Telephone: (213) 388-8693
Email: crholguin@centerforhumanrights.org
        pschey@centerforhumanrights.org

Holly S. Cooper
Director, Immigration Law Clinic
University of California Davis School of Law
One Shields Ave. TB 30
Davis, CA 95616
Telephone: (530) 754-4833
Email: hscooper@ucdavis.edu

*Of counsel:*
YOUTH LAW CENTER
Alice Bussiere (Cal. Bar No. 114680)
Virginia Corrigan (Cal. Bar No. 292035)
200 Pine Street, Suite 300
San Francisco, CA 94104
Telephone: (415) 543-3379 x 3903

*Attorneys for plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| Jenny Lisette Flores, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Jeh Johnson, Secretary, U.S. Department of Homeland Security, *et al.*,<br><br>Defendants. | Case No. CV 85-4544-DMG (AGRx)<br><br>PLAINTIFFS' EXHIBITS [ORR-PT.2]<br><br>[Exhibits 12–16]<br><br>Hearing:   September 9, 2016<br>Time:      9:30 a.m.<br>Courtroom 7, 312 N. Spring Street |

INDEX TO EXHIBITS

| No. | Description | Page |
|---|---|---|
| 1 | Email from Defendants to Plaintiffs, November 23, 2015 | 1 |
| 2 | Letter from Plaintiffs to Defendants, December 28, 2015 | 5 |
| 3 | Email from Plaintiffs to Defendants, February 12, 2016 | 11 |
| 4 | Statement of Principles Between DHS and HHS Unaccompanied Alien Children Program, April 6, 2004 | 15 |
| 5 | Office of Refugee Resettlement, Children Entering the United States Unaccompanied: Section 2, January 30, 2015 | 18 |
| 6 | In re: Pablo Alexander Aguilar-Ramirez, A206 775 662 (BIA 2016) | 37 |
| 7 | *Matter of A--*, 2005 Immig. Rptr. LEXIS 54924 (BIA 2005) | 40 |
| 8 | *In Re: Rodriguez-Lopez*, 2004 WL 1398660 (BIA 2004) | 42 |
| 9 | *Matter of Granados-Gutierrez*, A206 848 455 [I.J. 2014) | 46 |
| 10 | Affidavit of Lorilei Alicia Williams, August 5, 2016 | 81 |
| 11 | Declaration of Megan Stuart, July 29, 2016 | 93 |
| 12 | Declaration of Hector Estiven Boteo, March 1, 2016 | 121 |
| 13 | U.S. Dept. of Homeland Security, Form I-770 Notice of Rights and Request for Disposition, August 1, 2007 | 135 |
| 14 | Declaration of Bryan Ortiz, January 12, 2016 | 138 |
| 15 | Letter from Plaintiffs to Defendants, May 26, 2016 | 146 |
| 16 | Contract Between Department of Health and Human Services and Vera Institute of Jutice, Inc., July 31, 2009 | 160 |

1

2   Dated: August 12, 2016          CENTER FOR HUMAN RIGHTS &

3                                  CONSTITUTIONAL LAW
                                  Carlos Holguín

4                                  Peter A. Schey

5                                  Holly Cooper

6                                  University of California Davis School of
                                  Law

7

8                                  YOUTH LAW CENTER
                                  Alice Bussiere

9                                  Virginia Corrigan

10

11  / / /                         /s/Carlos Holguín _____

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 12-ORR

## DECLARATION OF HECTOR ESTIVEN BOTEO FAJARDO

I, Hector Estiven Boteo Fajardo, declare the following:

   1.  I am from Guatemala City, Guatemala. I am 15 years old. I am currently in Yolo County Juvenile Detention Facility, in Woodland, California, where I have been detained since January 26, 2016.

   2.  I left Guatemala for the first time in 2002, because my mom, who was in the United States, wanted to bring us—an older sister of mine, who was at the time approximately nine years old, an older brother, who was eight or seven years old, and me—to save us from the abuse we were subjected to by our paternal grandparents, who use to beat us and would leave us on the streets. We came accompanied by an aunt, from my dad's side.

   3.  Although I was really young, I have some memories of this event. I recall my aunt use to beat us, especially when she was drunk. I remember that after some time, her husband came to Mexico, and that suddenly she sold us to a coyote, so she could go back to Guatemala with him, without us. I recall that the coyote kidnapped us for around three years so he could extort our mom. I remember that the coyote would give us dog food to eat. I remember that he raped my sister and that he would beat us. In fact, the coyote was able to build a house with all the money that my mom gave him.

   4.  In the end, my mom could not pay him anymore, and the coyote turned us in

122

to the Mexican immigration. We were detained, and we stayed about a month and a half arrested in the migration station in San Luis Potosi. They never took us to DF.

5.   The conditions in the migration station were bad. We shared dormitories with a lot of people: minors and adults, of both sexes, very cramped and everything was very dirty. The food was the same for all three meals: a soup or sandwich and water, or sometimes juice. No one informed us that there were any possibilities of staying in Mexico legally, with a humanitarian visa, asylum, or with other legal status.

6.   In 2006, we were deported to Guatemala. We went to live with my grandmother. In the beginning, everything was going well, but with time, she started to abuse us. Since I was older, I decided to abandon the house and live alone, on my own accord.

7.   I found a job as a bread maker, but right away the mara found out I was working and they started to extort me. I paid them two times, and soon I refused to pay them more, because I needed money for my rent, for which they tried to kill me.

8.   One time, they shot at me when I was working in the bakery. They arrived in a black Nissan and shot at me. I threw myself on the floor, and that way I was able to save my life. Another time, I was on a motorcycle, when they surrounded me

2

123

and started to shoot. Another time, I was playing in a field, when they surrounded me and started shooting. When they started shooting, I threw myself in a ditch, and was able to survive.

9.  In August 2015, I decided to go to the United States. I could no longer stand the violence in Guatemala; I really wanted to reunite with my mom. In Mexico, the federal police took me many times when I was going through the checkpoints.

10. Around August 12 or 13, border patrol arrested me in the United States, when I was crossing the border through San Ysidro, California. They took me to jail there, in San Ysidro. I was detained in the station by the border patrol for two or three days. There, the detainees endured cold and also dealt with being cramped in the cells. There was not enough room for me to sleep and they kept the lights on at all times, so we couldn't tell whether it was night or day. No one could go shower, or brush our teeth.

11. The day after I was arrested, after 12 hours of being detained, they grabbed me to get my information. They asked me why I had left Guatemala, and I told the officer about the gang extortion and their intentions to kill me. I also told him that my mother was living in the United States, and that I had two brothers who were born in the United States. I gave the officer my mom's name and phone number. They didn't tell me anything other than that they would send me to Arizona. I arrived in Phoenix, a program called Southwest Key, where I stayed for two or

3

124

three months. In the beginning, they told me I would be detained for 15 days, or maybe a month, before I could leave and live with my mom.

12. But, that is not what happened. I had been advised by an adult in Mexico that if I was arrested in the United States, I should tell the immigration that I had killed someone in Mexico. Even though that sounded weird, I was in the United States for the first time, so I told them that in Southwest Key, even though it was a total lie. I had never killed anybody. After I told them this, I was detained in Southwest Key another half of a month, thinking that the lie would help me, but that is not what happened.

13. One day in November, if I remember correctly, they came to tell me that they were going to send me to Shenandoah, Virginia, for a psychological evaluation and an evaluation of my mom's house. Two days after I arrived in Virginia, I told the officers that it was not true what I told them about killing someone, that I had only said that because of the older man's advice in Mexico, and because I was desperate to be with my mother. In November or December, they informed me that I had passed the psychological evaluation, but that they were going to keep me detained for maybe another month, until they could finish evaluating my mom's house. Currently, it has been one month or one and a half months since they informed me that the evaluation of my mom's house had also

4

been positive, but I remain detained, and I have no idea when I will leave detention.

14. They have also not given me any explanation why they transferred me to another detention center for delinquents like Yolo, instead of a place like Southwest Key. I never had any problems with the other detainees or with those in charge of Southwest key.

15. In Yolo, we live in a real prison. The food, the program, the life, the routine: everything is a penitentiary. They treat us badly, like delinquents. The entire time, we live locked up. They don't grab us to go to the park, the library, or anywhere normal. They lock us up in the cells every night, to sleep on benches made out of cement with mattresses. They take us out one hour each day to the courtyard. The food is always the same: something bad with oatmeal for breakfast; for lunch, a sandwich, milk and an orange or apple. Dinner varies a bit—out of all three meals it's the one that is so-so.

16. Since I arrived in Yolo, I have never consulted with a lawyer. (Now, a lawyer named Helen is helping me.) I never saw a list of lawyers who help detained minors. No one ever gave me a written explanation of the reason they held me in a high-security prison in Virginia or in Yolo. Up until now, they have not brought me in front of an immigration judge.

17. My case-worker explained to me that I only have two options: If I can put

5

126

up with more time in detention, the best possibility is that they will give me a positive response, which is saying that, I can go live with my mom; the second option, I can demand an answer sooner, and it will give me less chances to avoid deportation.

18. Now, I feel desperate. My only wish is to leave detention, live with my mom, and study. I have no future in Guatemala, apart from the mara killing me.

I declare under penalty of perjury that the above is true and correct.

Made on February 29, 2016, in Woodland, California.


/s/_____
Hector Estiven Boteo Fajardo


///

6

127

INTER-AMERICAN COMMISSION ON HUMAN RIGHTS
OF THE ORGANIZATION OF AMERICAN STATES

**TRANSLATOR DECLARATION**

Jesus Castro, et al.,

v. United States of America and
United Mexican States

I, _Ana Luiza R. Sousa_ , hereby declare that
I am fluent in English and _Spanish_ .

I hereby certify that I have translated the attached document and to the best of my knowledge,
the attached document is a true, accurate and complete translation of

_Hector Esteven Boteo Fajardo declaration_ (description of document)

Date: _04/01/2016_

Signature of translator

_[signature]_

Printed name of translator

_Ana Luiza R. Sousa_

128

## DECLARACIÓN DE HÉCTOR ESTIVEN BOTETO FAJARDO

Yo, Héctor Estiven Boteto Fajardo, declaro y digo lo siguiente:

1. Soy de la Ciudad de Guatemala, Guatemala. Tengo 15 años de edad. Actualmente estoy en Yolo County Juvenile Detention Facility, en Woodland, California, donde me encuentro detenido desde el 16 de enero, 2016.

2. Salí de Guatemala por primera vez en 2002, porque mi mamá, que estaba en los estados unidos, quería traernos a nosotros—una hermana mayor, en ese entonces de aproximadamente nueve años, un hermano mayor, de unos ocho o siete años, y mi— para rescatarnos del abuso de mis abuelos paternos, que nos golpeaban y nos dejaban en la calle. Veníamos acompañados por una tía, de parte de mi papá.

3. Aunque estaba muy chiquito, si tengo unas memorias de ese entonces. Me acuerdo que mi tía nos pegaba, especialmente cuando andaba tomada. Me acuerdo que después de un tiempo llegó su esposo a México, y que de repente nos vendió ella a un coyote, para que pudiera volver a Guatemala con él y sin nosotros. Me acuerdo que el coyote nos tuvo secuestrados por unos tres años, para que pudiera extorsionarle a nuestra mamá. Me acuerdo que el coyote nos daba de comer comida de perro. Me acuerdo que él violó a mi hermana, y que nos pegaba. De hecho el coyote logró construir una casa con todo el dinero que mi mamá le daba.

129

4. Al fin, mi mamá no pudo pagarle más, y el coyote nos entregó a la inmigración mexicana. Nos detuvieron, y pasamos como un mes y medio encerrados en la estación migratoria en San Luis Potosí. Nunca nos trasladaron al DIF.

5. Las condiciones en la estación migratoria eran feas. Compartíamos dormitorios con muchos: menores de edad y adultos, de ambos sexos, todos muy apretados, y todo muy sucio. La comida era lo mismo los tres tiempos del día: una sopa o un sándwich, y agua, o a veces un jugo. Nadie nos informó que había cualquier posibilidad de quedarnos en México legalmente, con visa humanitaria, asilo, o con otro estatus legal.

5. En 2006, salimos deportados a Guatemala. Fuimos a vivir con mi abuela materna. Al principio, todo nos fue bien, pero con tiempo, ella empezó a abusarnos. Ya más grande, me decidí abandonar la casa y vivir solo y por mi propia cuenta.

6. Encontré trabajo de panadero, pero pronto la mara se enteró que estaba yo trabajando, y empezaron a extorsionarme. Les pagué dos veces, y luego me rehusé de pagarles más, porque necesitaba el dinero para mi renta, por lo cual luego intentaron matarme.

7. Una vez, me dispararon cuando estaba trabajando en la panadería. Llegaron en un carro negro Nissan, y me dispararon. Yo me tiré en el piso, y así logré salvarme la vida. Otra vez andaba yo en moto, cuando me acercaron a disparar. Otra vez, estaba jugando en un campo, cuando llegaron dos pandilleros. Me empezaron a disparar, pero me tiré en un barranco, y así logré sobrevivir.

8. En agosto de 2015, me decidí ir a los estados unidos. No pude aguantar más la violencia en Guatemala, tenía muchas ganas de unirme con mi mamá. En México, pasando por los retenes, las policías federales me robaron varias veces.

9. Me arrestó la Patrulla Fronteriza de los estados unidos por el 12 o 13 de agosto de 2015, cruzando la frontera por San Ysidro, California. Me llevaron a la hielera allí mismo, en San Ysidro. Me quedé detenido en la estación de la Patrulla por unos dos o tres días. Allí sufrimos nosotros los detenidos mucho frío, y también por estar muy apretados en las celdas. Ni había campo suficiente para acostarse, y la luz la mantenían encendida todo el tiempo, hasta que ni pudimos distinguir día de noche. A nadie sacaron a bañarse, ni pudimos limpiarnos los dientes.

10. El día siguiente de caerme preso, después de unas 12 horas de detenido, me sacaron a tomar mis datos. Me preguntaron porque había salido de Guatemala, y le conté al oficial lo de la extorsión de la mara y de sus intentos de matarme. También le informé que mi mamá vivía en los estados unidos, y que yo tenía a dos hermanos nacidos en los estados unidos. Le di al oficial el nombre y el teléfono de mi mamá. No me dijeron nada, aparte de que me iban a mandar para Arizona. Llegué a Phoenix, a programa que se llama Southwest Key, donde me quedé dos o tres meses. Al principio, me dijeron iba a quedar yo detenido unos 15 días, o tal vez hasta un mes, antes de poder salir y vivir con mi mamá.

11. Pero no sucedió así. Me había aconsejado una persona mayor en México que al caerme preso en los estados unidos, me convendría decirle a la inmigración que había matado a alguien en Guatemala. Aunque me soñó raro, andaba yo en los estados unidos por primera vez; así que, a los del Southwest Key les conté eso, aunque era mentira completa. Nunca he matado a nadie. Después de haberles dicho eso, me quedé detenido en Southwest Key otro medio mes, pensando que la mentira me iba a ayudar, pero no fue así.

12. Un día en noviembre, si me acuerdo bien, me llegaron a decir que me iban a mandar a Shenandoah, Virginia, para uno estudio psicológico y un estudio de la casa de mi mamá. Como a dos días después de llegar a Virginia, les informé a los oficiales que lo que había dicho de matar a alguien no era cierto, que lo había dicho solo por el consejo de ese señor en México y por andar desesperado a salir con mi mamá. En noviembre o diciembre, me informaron que me había salido todo positivo del estudio psicológico, pero que me iban a detener tal vez un mes más, hasta que se terminara el estudio de la casa de mi mamá. Actualmente hace como un mes o mes y medio desde que me informaron que el estudio de la casa había salido positivo también, pero sigo detenido, y ni idea tengo cuando vaya a salir de la detención.

13. Tampoco me dijeron ninguna explicación del porque me habían trasladado a otro centro de detención para delincuentes como Yolo, en vez de un lugar como

Southwest Key. Nunca tuve ningún problema con los demás detenidos, ni con los encargados de Southwest Key.

14. En Yolo vivimos de pura cárcel. La comida, el programa, la vida, la rutina: todo de reclusorio. Nos tratan feo, como delincuentes. Vivimos todo el tiempo encerrados. No nos sacan para ir al parque, a la biblioteca, ni a ningún lugar normal. Nos encierran con llave en celdas todas la noches, para dormir sobre bancos de cemento con colchones. Nos sacan una hora por día a la cancha. La comida es siempre lo mismo: una cosa fea como avena para el desayuno; para el lonche, un sandwich, leche, y una naranja o manzana. La cena sí varia un poco— de los tres tiempos es el único que es más o menos.

15. Nunca tuve consulta con abogado hasta que llegué a Yolo. (Ahora me está ayudando la abogada Helen.) Nunca vi una lista de abogados que ayudaran a los menores de edad detenidos. Nunca me dieron explicación escrita de la causa por detenerme en alta seguridad en Virginia o en Yolo. Hasta la fecha, no me han presentado ante un juez de inmigración.

16. Me explicó mi trabajador de caso que solo tengo dos opciones: si aguanto más tiempo detenido, mejores posibilidades habrá de que me den una respuesta positiva, es decir, que puedo salir a vivir con mi mamá; la segunda opción, exijo un respuesta más rápida, y habría menos posibilidades de evitar la deportación.

17. Ahora me siento desesperado. Solamente deseo salir de la detención, vivir con mi mamá, y estudiar. No tengo ningún futuro en Guatemala, aparte de que los mara me maten.

Declaro bajo protesta de ley y castigo de perjurio que lo anterior es cierto y correcto.

Hecho el día _29_ de _Febrero_, del año 2016, en la Woodland, California.

*Hector Estiven Boteo Fajardo*
HÉCTOR ESTIVEN BOTEO FAJARDO

///

# Exhibit 13-ORR

**U.S. Department of Homeland Security**          **Notice of Rights and Request for Disposition**

Alien's Name:                                                    A Number (if any):

_____          A-_____

---

### Your Rights.

You have been arrested because Immigration Officers believe that you are illegally in the United States.  When you are arrested in the United States you have certain rights.  No one can take these rights away from you.  This paper explains your rights.

### You have the right to use the telephone.

You may call your mother or father or any other adult relative.  You may call your adult friend.  If you do not know how to use a telephone, the immigration agent will help you.

### You have the right to be represented by a lawyer.

Attached to this paper is a list of lawyers who can talk to you, and help you, for free.  A lawyer can fully explain all your rights to you, and can represent you at a hearing.

### You have the right to a hearing before a judge.

The judge will decide whether you must leave or whether you may stay in the United States.  If for any reason you do Not want to go back to your country, or if you have any fears of returning, you should ask for a hearing before a judge. If you do not want to have a hearing before a judge, you may choose to go back to your country without a hearing.

---

**Reading this Notice:**

☐ I have read this notice.
☐ This notice has been read to me.

**Right to Use Telephone:**

☐ I have contacted my parent(s) or a legal guardian by telephone.
☐ I have contacted an adult friend or relative by telephone.
☐ I do not want to talk to anyone by telephone.

| **Completion of the following is optional:** |
| The person contacted is:  (Relationship) |
| The person contacted is:  (Name) |

**Right to be Represented by a Lawyer:**

☐ I have spoken with a lawyer.
☐ I do not want to speak with a lawyer.

**Right to a Hearing:**

☐ I understand my right to a hearing before a judge.

---

☐ **I request a hearing before a judge.**



Signature:_____          Date: _____

---

☐ **I do not want a hearing before a judge.**
    I am in the United States illegally and ask that I be allowed to return to my country, which is named below.



                                                                    Country:_____

Signature:_____          Date:_____

Form I-770 (08/01/07) (Prior editions may not be used)

# INSTRUCTIONS TO OFFICERS

This advisal is required to be given to all persons who are taken into custody and who appear, are known, or claim to be under the age of eighteen and who are not accompanied by one of their natural or lawful parents. No such person can be offered or permitted to depart voluntarily from the United States except after having been given this notice.

The required procedure distinguishes between two classes of minors.

1) The first class are those minors apprehended in the immediate vicinity of the border and who permanently reside in Canada or Mexico. These persons shall be informed that they have a right to make a telephone call to any of the persons mentioned in the notice. The purpose of this call is so that they can seek advice as to whether they should voluntarily depart or whether they should request a deportation hearing. We are required to make a record of any refusal to accept our offer of a telephone call.

2) As to all other minors, *they must not only be given access to a telephone, they must establish communication, telephonic or otherwise, with one of the persons listed in the notice* before they can be offered voluntary departure.

The DHS retains the right to decide when to allow telephone calls. The only prohibition is that the minor cannot be asked to voluntarily depart until after telephone access is provided. If the minor is not offered voluntary departure but is put into deportation proceedings by issuance of a Notice to Appear, this procedure is not necessary. It is our duty to make reasonable efforts to contact the person of the minor's choice, but after unsuccessful efforts to reach that person, we can facilitate contact with another such person. Whenever the minor elects to pursue a process, such as a call to a foreign country, which is operationally unacceptable, we can always proceed to issue a Notice to Appear.

The minor must tell the type of person that he/she talked to but need not give us that person's name or identifying information. If a minor, *of his/her own volition,* asks to contact a consular officer, this will satisfy the requirements of the notice.

The officer need not read the notice to the minor unless the minor is under 14 years of age, or unable to understand the notice. The officer must ask the minor whether he/she wanted to make a call, whether a communication was made and, if made, to whom. The officer must also verify whether the minor wanted voluntary departure or a hearing, and must sign and date the form to show this was done.

**Officers are not to offer any advise to any minor as to what he/she should or should not do.**

---

## To be completed by the Officer:

*I verify that:* _____     **A-** _____

1.a. ☐   The subject named was given this notice to read.
   b. ☐   I read this notice to the name subject in the following language: _____

2.   ☐   I asked this subject whether he/she wanted to make a telephone call, and offered assistance in the use of the telephone.

3.a. ☐   The subject told me that he/she did not want to make a telephone call, or
   b. ☐   The subject told me that he/she established communication and the form was marked to indicate it;
   c. ☐   The subject was unable to establish telephone communication with the desired individual. The following number of attempts were made:

4.a. ☐   The subject requested a hearing.
   b. ☐   The subject admitted deportability and requested to return to his/her country voluntarily, without a hearing.
5.a. ☐   A Notice to Appear was issued because, the subject was unable to establish contact with any of the individuals specified after making the number of attempts indicated above (Item **3** c), and after assistance to establish contact was given or offered.

_____          _____
        *Signature of Officer*                                    *Date*

# Exhibit 14-ORR

## <u>Declaration of Bryan Ortiz Vela</u>

I, Bryan Ortiz Vela, declare and say as follows:

1. I was born in El Salvador on May 13, 1997. From February 27, 2015 to May 13, 2015, the Office of Refugee Resettlement of the U.S. Department of Health and Human Services (ORR) detained me at the Yolo County Juvenile Detention Facility in Woodland, California. I execute this declaration to recount the facts and circumstances surrounding ORR's detaining me and the treatment and conditions I experienced during confinement.

2. My mother and father sent me from El Salvador to the United States when I was about three years old. My entire family in the United States has legal status. My mother and my father have Temporary Protected Status (TPS) and my sister and my brother are U.S. citizens. I grew up with my mother in North Wilkesboro, North Carolina. When I was in the 6th grade, I moved to Tyler, Texas to live with my father. I am currently living with my mother and my sister again in North Wilkesboro, North Carolina. Since my arrival to the United States, I have never left the country.

3. When I was living in Texas I was arrested as a minor, which resulted in me spending time in juvenile detention facilities in Texas. On February 27, 2015, I completed my sentence for delinquency, but no sooner had I done so when immigration officials continued to detain me on account of my immigration status. I was committed to the custody of ORR, which then moved me from Tyler, Texas to the Yolo County Juvenile Hall. When I was told I was being moved to California by immigration officers, I was in disbelief. I was scared and confused because I had never been that far away from my family and I did not know anything about California.

4. The day after my arrival at the Yolo Juvenile Hall, I had a meeting with my case managers who told me why I was sent there. They explained to me that conditional upon good

139

behavior, I would be moved to a group home after spending a minimum of 30 days in secure

confinement. I remember they gave me four papers to read and sign. I can't remember exactly

what each one was about. I think they went over the rules of ORR, my rights, and the

information about being moved to a group home in 30 days.

5. I arrived at Yolo Juvenile Hall on a Friday and that following week everything began

moving so fast. That first Monday I began participating in group meetings and classes.

Volunteers would come in and talk to us about making better choices and staying away from

drugs. The Tuesday after my arrival I had a meeting with a psychologist. The psychologist

informed me that she would have to share any information I gave her during our sessions with

ORR. She had me a sign a paper, which I did not really understand, but which I think gave her

permission to share my information with ORR, which she said she would anyway. A few weeks

later, they switched me to a different psychologist. I felt that I had developed a relationship with

the first psychologist I was meeting with and felt uncomfortable having to share my thoughts and

feelings with a new person.

6. The Legal Services organization would come to the facility and visit us, but ORR

never gave us a list of free legal aid or lawyers we could contact.

7. It took some time to get used to certain conditions at the juvenile detention facility. For

example, our pod and my room were always very hot so it was uncomfortable to sleep at night.

People would complain about the heat but the guards said that they did not have the ability to

control the air conditioning. Sometimes because of toilets flooding, the water in the facility

would be turned off for thirty minutes to one hour at a time. The water in the shower was also

too hot to use. The guards told us that they could not control the water temperature. You could

- 2 -

never directly stand under the shower water because it was so hot. You had to move in and out from under the water to avoid burning or hurting your skin.

8. A lot of the kids at the facility had issues with the guards. It seemed like the guards at the facility kept trying to provoke the kids to make them angry by yelling at them. They would always scream at the kids to be quiet and talk to them with an attitude. The guards were very strict and if they felt anyone was acting up, they would lock him in his room. I was worried about my immigration problems so I tried to be on good behavior in hopes of being able to leave the juvenile hall and go to a group home. The guards still did give me trouble at times because of my knee. I hurt my knee when I was detained in Texas. The nurses both at Texas and at Yolo County knew about my knee problems. If there was an incident at the facility, such as a fight, the guards would yell for all the kids to get down on the ground. I cannot bend my knee well, so I would just get down on the floor to the extent that my knee would allow. One time, a guard came up to me when I was supposed to be on the ground and starting screaming at me. I tried to tell her that I could not bend my knee but she kept screaming. She was pointing her pepper spray can at me and then two other guards ran over to join her. They were pointing their pepper spray cans at me as well. The guards locked me in my room. After about an hour, a supervisor let me out and apologized.

9. I was not allowed out of the Yolo Juvenile Hall to attend school, but instead had the option to attend classes inside the detention facility itself. I already had my GED from Texas so it was optional for me to attend. If you did not have your GED and chose not to go to school, you would get in trouble by losing some of your free time. The teachers had the power to suspend kids they thought were making trouble in the classroom. Since it was optional for me, I had the

choice of either going to classes or staying in my room all day. There were no classes offered beyond the high school level.

10. I had two case managers at ORR and every time they checked in with me I would ask about my situation and my opportunity for release to the group home. They would always reply that they had not heard anything about my situation and did not know when I would be released. After I had spent 30 days in the juvenile hall I asked again about my situation and whether I would be released to a group home. I had a meeting with the case managers and now they told me I would not be able to go to the group home because I was too close to turning 18.

11. Two weeks after the initial 30 days had passed, a woman in charge of ORR detainees came in for a visit; I believe her name was Alex. I remember we were told she was in charge of releases. She spoke to all of us as a group and I asked to speak to her in private. I told her that my mother had been trying for weeks to have me released to her custody and had done everything she could so that ORR would approve a home study verifying she could take care of me. I did not really understand the need for a home study since my mother had taken care of me when I was a young child, and now I was 17 years old. The ORR official told me that it had seemed like I had changed and that she was giving me another chance. She told me I would be able to get released within the next few weeks. I thanked her and told her I greatly appreciated being given this chance. My lead ORR case manager came up to me and said that she had good news. The same woman had spoken to her and informed her that I would be getting released soon.

12. I was so happy that day. I called home and told my mom I would be home within two weeks. I told everyone around me that I would be going home soon. At that point I wasn't asking anymore questions; I was just waiting for the home study to get approved and to be released.

13. I later learned that my roommate in the facility was actually given a similar story. He too, was told that he would be released soon. We were both so happy. During those two weeks I was super anxious. I couldn't wait for the time to fly by. That was the happiest I had been in a long time.

14. I had an immigration court date on May 11, 2015, two days before my 18th birthday. My mom had flown to California to see me for Mother's Day. She thought my release was around the corner and she was ready to purchase a plane ticket for me. The home study report had come back with positive results. My mom has no criminal history and had my room waiting for me back in North Carolina. We talked about celebrating my 18th birthday at home together.

15. After I returned from court, my case managers sat me down for a private meeting. They used a much softer tone than they normally spoke to me in. I was told that the woman who told me I would be released changed her mind. She gave an order that I could not be released. I was informed that Texas had charged me with delinquent acts that were too serious for me to be sent home. This made no sense to me since ORR had always known about the trouble I had gotten into as a juvenile, I had completed my sentence for delinquency, and had gotten into no further trouble ever since. I did not receive anything in writing about this denial. The ORR official who had promised my release never bothered to speak to me again in person or to explain why ORR had changed its decision based on facts it had known about all along. No one at ORR reached out to my mom to inform her about this decision, so I had to tell her myself.

16. My case managers apologized to me. They seemed very cautious with their words, as if they were afraid of what my reaction would be. I felt lied to. I was so angry and scared and had no idea what to expect moving forward. My case managers and everyone that did my paperwork at ORR had recommended my release. My case managers even expressed disagreement with the

denial of my release. They said that they thought I deserved to be released after my home study results came back positive.

17. I don't know why the ORR official lied to me. I feel that it was wrong to be lied to about my released because I felt like my emotions were played with. It was like she didn't care about my feelings or didn't think about them before promising me another chance. I felt so angry and resentful at everyone around me. I then learned that ORR had done the same thing to my roommate. They lied to him just like they had to me, and he went through a lot of anger as well. I think anyone in our shoes would be mad. We were extremely stressed out. After that happened my roommate ended up signing for voluntary deportation because he felt he couldn't believe anything ORR told him. I felt like the program did not care about us. We were told ORR was a special program to help kids go home to their families and we found out this was not true. On May 13, the date of my 18th birthday, I was transferred to the custody of Immigration and Customs Enforcement (ICE) which moved me to an adult jail in Yuba County, California.

18. The only thing that kept me from signing up for voluntary departure after going through everything was my mom. The stress was killing me and I felt like I could not even smile anymore but my mom continued to support me and try to keep me positive. I did not care about my life anymore, but I did not want to ruin hers. Even though my mom was keeping me strong and trying to keep me hopeful, I know she went through a lot of emotional stress as well. My sister was also very sad and stressed the whole time. I knew I did not want to hurt my family so I tried my best to appear that I was strong for them.

19. Shortly after I arrived at the Yuba County jail I requested an immigration judge to release me on bond. At the hearing, the immigration judge considered my background and determined that I was not a flight risk or was I a danger to the community. The judge ordered

ICE to grant me bond. My sister and my mother were at the hearing, paid the bond, and I was freed. I could not understand why my delinquent acts were so serious I could not be released safely when I was a minor, yet somehow they did not matter so much once I turned 18.

20. Looking back at the process, I just wish that nobody else has to go through that experience the way I did. I think about the other kids in the facility all the time. I am worried about other kids being lied to because you can really hurt somebody that way. When a person becomes stressed out in an emotional situation like that, it's not good and I wouldn't want that for anybody.

21. I do not know why I was lied to about my release but I am just thankful that I am finally able to be with my family in North Carolina. I am hopeful that the rest of my immigration case will be successful so that I can become a nurse and continue to live in the United States and support my family who has done so much for me.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this **14** day of January, 2015, at **North Wilkesboro**, North Carolina.

Bryan Ortiz Vela

/ / /

# Exhibit 15-ORR

# CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW

256 S. OCCIDENTAL BOULEVARD
LOS ANGELES, CA 90057
Telephone:  (213) 388-8693 Facsimile:  (213) 386-9484
www.centerforhumanrights.org

May 26, 2016

William C. Silvis
Assistant Director
Sarah B. Fabian
Trial Attorney
Office of Immigration Litigation – District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044

Michael Johnson (or successor-in-office)
Assistant United States Attorney
300 N. Los Angeles St., Rm. 7516
Los Angeles, CA  90012

Allen Hausman (or successor-in-office)
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC  20044

*Via first class mail (and email to Mr. Silvis and Ms. Fabian)*

Re: Hector Estiven Boteo Fajardo, A 208-311-655

Dear Madam/Sirs:

Pursuant to ¶¶ 24 and 37 of the settlement[1] approved in *Flores*, et al., *v. Lynch,* et al.*,* No. CV 85-4544 DMG (C.D. Cal.), on January 25, 1997 (Settlement), you are hereby given notice of claims that defendants are breaching the Settlement in the following particulars:

---

[1] Paragraph 37 provides in pertinent part as follows: "This paragraph provides for the enforcement, in this District Court, of the provisions of this Agreement except for claims brought under Paragraph 24.  The parties shall meet telephonically or in person to discuss a complete or partial repudiation of this Agreement or any alleged non-compliance with the terms of the Agreement, prior to bringing any individual or class action to enforce this Agreement."

Paragraph 24E provides: "Exhausting the procedures established in Paragraph 37 of this Agreement shall not be a precondition to the bringing of an action under this paragraph in any United District Court. Prior to initiating any such action, however, the minor and/or the minors' attorney shall confer telephonically or in person with the United States Attorney's office in the

147

1) Paragraph 11 of the Settlement provides in part: "The INS treats, and shall continue to treat, all minors in its custody with dignity, respect and special concern for their particular vulnerability as minors."

Settlement Exhibit 1 ¶ C provides: "Minors shall not be subjected to corporal punishment, humiliation, mental abuse, or punitive interference with the daily functions of living ..."

In violation of the foregoing, on or about May 20, 2016, at approximately 7:00 a.m., defendants tightly shackled fifteen-year-old class member Boteo, causing him physical pain, humiliation, and severe emotional distress, and continued him in shackles during transport him to San Francisco, California, where he was to appear for an interview on his application for asylum.[2]

The shackles bound the insides of Boteo's wrists to each other and then tightly attached the wrists to a binding around his waist and then connected to bindings around his ankles.

Notwithstanding that the asylum interview had been transferred to a secure federal building – the sixth floor of 630 Sansome Street in San Francisco, California—defendants refused to unshackle class member Boteo for his asylum interview, thereby prejudicing his right to a fair, child-appropriate adjudication of his asylum claim. This setting is the same space where detained adults are interviewed by asylum officers without restraints. The asylum officer requested that defendants unshackle class member Boteo, but that request was denied.

Boteo, his attorney and the asylum officer tried to resolve the shackling issue for over two hours before deciding to reschedule the interview for another day.  No arrangements were made for Boteo to eat lunch during the course of the day. When the officers placed his sack lunch on the asylum officer's desk for him, Boteo was unable to reach his sandwich. Even placing the sandwich in his hands, he could not raise to his mouth to eat it. He remained shackled during his bathroom visit. Towards the end of his visit to San Francisco, Boteo's veins bulged from his skin due to the tightness of the shackles.

Defendants thereafter continued class member Boteo in shackles while transporting him in a secure vehicle—a lone child accompanied by two guards—back to Yolo County Juvenile Hall.

At no time did class member Boteo exhibit imminent escape behavior, make violent threats, or demonstrate violent behavior. At no time did Yolo County Juvenile Hall or ORR make an individualized determination that class member Boteo posed a high risk of violence or escape if unrestrained.

---

judicial district where the action is to be filed, in an effort to informally resolve the minor's complaints without the need of federal court intervention."

[2] Defendants' failure to permit class member Boteo to appear before an asylum officer in an open, non-adversarial setting appropriate to his special vulnerability as a child also violates, *inter alia*, § 235d(7) the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, 110 Pub. L. 457, 122 Stat. 5044, *codified at* 8 U.S.C. § 1158(b)(3)(C).

Defendants have refused to renounce shackling class member Boteo without individualized cause during future administrative proceedings, or during transport to and from such proceedings, including his rescheduled asylum interview which has been requested for June 3, 2016.

2) Paragraph 18 provides: "Upon taking a minor into custody, the INS, or the licensed program in which the minor is placed, shall make and record the prompt and continuous efforts on its part toward family reunification and the release of the minor pursuant to Paragraph 14 above. Such efforts at family reunification shall continue so long as the minor is in INS custody."

Paragraph 14 provides: "Where the INS determines that the detention of the minor is not required either to secure his or her timely appearance before the INS or the immigration court, or to ensure the minor's safety or that of others, the INS shall release a minor from its custody without unnecessary delay, in the following order of preference, to: ... a parent; ..."

Defendants have failed to make good faith efforts to reunify class member Boteo with his mother, but have instead refused to release him to her custody. Defendants' continuing to detain class member Boteo is required neither to secure his timely appearance nor to ensure his safety or that of others.

Pursuant to ¶ 28B of the Settlement, we request that defendants investigate the foregoing and inform us of the reasons why class member Boteo has not been released.

3) Paragraph 24A provides: "A minor in deportation proceedings shall be afforded a bond redetermination hearing before an immigration judge in every case, unless the minor indicates on the Notice of Custody Determination form that he or she refuses such a hearing."

Defendants have not afforded class member Boteo a bond redetermination.

4) Paragraph 23 provides in part: "The INS will not place a minor in a secure facility pursuant to Paragraph 21 if there are less restrictive alternatives that are available and appropriate in the circumstances, such as transfer to (a) a medium security facility which would provide intensive staff supervision and counseling services or (b) another licensed program."

Paragraph 11 provides in part: "The INS shall place each detained minor in the least restrictive setting appropriate to the minor's age and special needs, provided that such setting is consistent with its interests to ensure the minor's timely appearance before the INS and the immigration courts and to protect the minor's well-being and that of others."

Paragraph 7 provides: "The INS shall assess minors to determine if they have special needs and, if so, shall place such minors, whenever possible, in licensed programs in which the INS places children without special needs, but which provide services and treatment for such special needs."

In violation of the foregoing, defendants have continued to confine class member Boteo in a secure detention facility despite the availability of less restrictive alternatives, including release to his mother, transfer to a licensed placement, and transfer to a medium-secure facility.

149

William Silvis, Sarah Fabian
May 26, 2016
Page 4 of 4

Defendants have also failed to place class member Boteo in a *licensed* program equipped to provide him appropriate services and treatment, but instead continue to detain him in a secure juvenile detention facility that is not licensed to care for dependent children.

Given the short time remaining before his asylum interview should be rescheduled we request defendants confer telephonically on Tuesday, May 31, 2016, at 9:00 a.m. pacific, in an effort to resolve the foregoing and avoid class member Boteo's having to resort to formal legal action aimed at securing his rights under the Settlement.

We also request that defendants provide the undersigned counsel with *complete* copies of class member Boteo's HHS and DHS files, including (1) the psychological report on class member Boteo Dr. Rife prepared and forwarded to ORR on or about November 15, 2015, and (2) the notification, if any, Yolo County Juvenile Hall provided ORR advising of the intended shackling of class member Boteo and of the reasons therefor, and ORR's response to such notification, if any.

We ask that the specified records be forwarded to us by the close of business tomorrow, Friday May 27, 2016. Counsel formally requested these files pursuant to the Freedom of Information Act over two months ago, and that defendants' unlawful failure to disclose the requested records is seriously compromising class member Boteo's ability to secure his rights. A copy of counsel's G-28 authorizing the release of files and the Freedom of Information Act requests previously submitted are attached.

Sincerely,

Carlos Holguín



Helen Lawrence
Attorneys for class member
Hector Estiven Boteo Fajardo


ccs:   Peter A. Schey, Center for Human Rights & Constitutional Law
       Alice Bussiere, Youth Law Center



### Notice of Entry of Appearance
### as Attorney or Accredited Representative
#### Department of Homeland Security

**DHS**
**Form G-28**
OMB No. 1615-0105
Expires 03/31/2018

---

| Part 1. Information About Attorney or Accredited Representative | Part 2. Notice of Appearance as Attorney or Accredited Representative |

**1.** USCIS ELIS Account Number (*if any*)
▶ ☐☐☐☐☐☐☐☐☐☐☐☐☐

**Part 2.** This appearance relates to immigration matters before (*Select only one box*):

**1.a.** ☐ USCIS

**1.b.** List the form numbers

*Name and Address of Attorney or Accredited Representative*

**2.a.** Family Name (*Last Name*)  LAWRENCE

**2.a.** ☐ ICE

**2.b.** Given Name (*First Name*)  HELEN

**2.b.** List the specific matter in which appearance is entered

**2.c.** Middle Name  ELIZABETH

**3.a.** Street Number and Name  1254 Market Street

**3.a.** ☐ CBP

**3.b.** Apt. ☐  Ste. ☐  Flr. ☒  3

**3.b.** List the specific matter in which appearance is entered

**3.c.** City or Town  San Francisco

**3.d.** State  CA   **3.e.** ZIP Code  94102

I enter my appearance as attorney or accredited representative at the request of:

**3.f.** Province

**4.** Select only one box:
☒ Applicant  ☐ Petitioner  ☐ Requestor
☐ Respondent (ICE, CBP)

**3.g.** Postal Code

**3.h.** Country  USA

*Information About Applicant, Petitioner, Requestor, or Respondent*

**4.** Daytime Telephone Number  5109220261

**5.a.** Family Name (*Last Name*)  BOTEO FAJARDO

**5.b.** Given Name (*First Name*)  HECTOR

**5.** Fax Number  5109220763

**5.c.** Middle Name  ESTIVEN

**6.** E-Mail Address (*if any*)  HELENLAWRENCE.ESQ@GMAIL.COM

**6.** Name of Company or Organization (*if applicable*)

**7.** Mobile Telephone Number (*if any*)

---



Form G-28  03/04/15  N

Page 1 of 4

## Part 2. Notice of Appearance as Attorney or Accredited Representative *(continued)*

### Information About Applicant, Petitioner, Requestor, or Respondent *(continued)*

**7.** USCIS ELIS Account Number *(if any)*

▶ [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]

**8.** Alien Registration Number (A-Number) or Receipt Number

[                    ]

**9.** Daytime Telephone Number

5109220262

**10.** Mobile Telephone Number *(if any)*

[                    ]

**11.** E-Mail Address *(if any)*

[                    ]

### Mailing Address of Applicant, Petitioner, Requestor, or Respondent

**NOTE:** Provide the mailing address of the applicant, petitioner, requestor, or respondent. If the applicant, petitioner, requestor, or respondent has used a safe mailing address on the application, petition, or request being filed with this Form G-28, provide it in these spaces.

**12.a.** Street Number and Name [                    ]

**12.b.** Apt. ☐  Ste. ☐  Flr. ☐ [                    ]

**12.c.** City or Town [                    ]

**12.d.** State [        ]   **12.e.** ZIP Code [                ]

**12.f.** Province [                    ]

**12.g.** Postal Code [                    ]

**12.h.** Country [                    ]

## Part 3. Eligibility Information for Attorney or Accredited Representative

Select **all applicable** items.

**1.a.** ☒ I am an attorney eligible to practice law in, and a member in good standing of, the bar of the highest courts of the following states, possessions, territories, commonwealths, or the District of Columbia. *(If you need additional space, use Part 6.)*

Licensing Authority

SUPREME COURT OF CALIFORNIA

**1.b.** Bar Number *(if applicable)*

CA 267094

**1.c.** Name of Law Firm

LAW OFFICE OF HELEN LAWRENCE

**1.d.** I *(choose one)* ☒ **am not** ☐ **am**

subject to any order of any court or administrative agency disbarring, suspending, enjoining, restraining, or otherwise restricting me in the practice of law. If you are subject to any orders, explain in the space below. *(If you need additional space, use Part 6.)*

[                    ]

**2.a.** ☐ I am an accredited representative of the following qualified nonprofit religious, charitable, social service, or similar organization established in the United States, so recognized by the Department of Justice, Board of Immigration Appeals, in accordance with 8 CFR 292.2. Provide the name of the organization and the expiration date of accreditation.

**2.b.** Name of Recognized Organization

[                    ]

**2.c.** Date accreditation expires

*(mm/dd/yyyy)* ▶ [                ]



## Part 3. Eligibility Information for Attorney or Accredited Representative *(continued)*

3. ☐ I am associated with

_____

the attorney or accredited representative of record who previously filed Form G-28 in this case, and my appearance as an attorney or accredited representative is at his or her request.

**NOTE:** If you select this item, also complete **Item Numbers 1.a. - 1.b. or Item Numbers 2.a. - 2.c.** in **Part 3.** *(whichever is appropriate).*

4.a. ☐ I am a law student or law graduate working under the direct supervision of the attorney or accredited representative of record in accordance with the requirements in 8 CFR 292.1(a)(2)(iv).

4.b.  Name of Law Student or Law Graduate

_____

## Part 4. Applicant, Petitioner, Requestor, or Respondent Consent to Representation, Contact Information, and Signature

### *Consent to Representation and Release of Information*

1. I have requested the representation of and consented to being represented by the attorney or accredited representative named in **Part 1.** of this form. According to the Privacy Act of 1974 and DHS policy, I also consent to the disclosure to the named attorney or accredited representative of any record pertaining to me that appears in any system of records of USCIS, ICE or CBP.

   When you (the applicant, petitioner, requestor, or respondent) are represented, DHS will send notices to both you and your attorney or accredited representative either through mail or electronic delivery.

   DHS will also send the Form I-94, Arrival Departure Record, to you **unless you select Item Number 2.a.** in **Part 4.** All secure identity documents and Travel Documents will be sent to you (the applicant, petitioner, requestor, or respondent) unless you ask us to send those documents to your attorney of record or accredited representative.

If you do not want to receive original notices or secure identity documents directly, but would rather have such notices and documents sent to your attorney of record or accredited representative, please select **all applicable** boxes below:

2.a. ☒ I request DHS send any notice (including Form I-94) on an application, petition, or request to the business address of my attorney of record or accredited representative as listed in this form. I understand that I may change this election at any future date through written notice to DHS.

2.b. ☒ I request that DHS send any secure identity document, such as a Permanent Resident Card, Employment Authorization Document, or Travel Document, that I am approved to receive and authorized to possess, to the business address of my attorney of record or accredited representative as listed in this form. I consent to having my secure identity document sent to my attorney of record or accredited representative and understand that I may request, at any future date and through written notice to DHS, that DHS send any secure identity document to me directly.

3.a. Signature of Applicant, Petitioner, Requestor, or Respondent

*Hector Ectivan Bateo Fajardo*

3.b. Date of Signature *(mm/dd/yyyy)* ▶ 2/2/16

## Part 5. Signature of Attorney or Accredited Representative

I have read and understand the regulations and conditions contained in 8 CFR 103.2 and 292 governing appearances and representation before the Department of Homeland Security. I declare under penalty of perjury under the laws of the United States that the information I have provided on this form is true and correct.



1. Signature of Attorney or Accredited Representative

2. Signature of Law Student or Law Graduate

3. Date of Signature *(mm/dd/yyyy)* ▶ 2/2/16

Form G-28   03/04/15  N

## Part 6. Additional Information

Use the space below to provide additional information pertaining to **Part 3., Item Numbers 1.a. - 1.d.**

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____



Form G-28   03/04/15   N



# Freedom of Information/Privacy Act Request

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

**USCIS**
**Form G-639**
OMB No. 1615-0102
Expires 03/31/2017

**NOTE:** Use of this request is optional. Any written format for a Freedom of Information or Privacy Act request is acceptable.

▶ **START HERE - Type or print in black ink.**

## Part 1.  Type of Request

Select **only one** box.

**NOTE:** If you are filing this request on behalf of another individual, respond as it would apply to that individual.

**1.a.** ☒ Freedom of Information Act (FOIA)

**1.b.** ☐ Privacy Act (PA)

**1.c.** ☐ Amendment of Record (PA only)

## Part 2.  Requestor Information

**1.** Are you the Subject of Record for this request?

☐ Yes  ☒ No

If you answered "No" to **Item Number 1.**, provide the information requested in **Part 2.** If you answered "Yes" to **Item Number 1.**, skip to **Part 3.**

### Requestor's Full Name

**2.a.** Family Name (Last Name)   *LAWRENCE*

**2.b.** Given Name (First Name)   *HELEN*

**2.c.** Middle Name

### Requestor's Mailing Address

**3.a.** In Care Of Name (if any)   *Helen Lawrence*

**3.b.** Street Number and Name   *1254 Market Street*

**3.c.** ☐ Apt. ☐ Ste. ☒ Flr.   *3*

**3.d.** City or Town   *San Francisco*

**3.e.** State ▼   **3.f.** ZIP Code *94102*

**3.g.** Province   *N/A*

**3.h.** Postal Code

**3.i.** Country   *USA*

### Requestor's Contact Information

**4.** Requestor's Daytime Telephone Number   *510-922-0261*

**5.** Requestor's Mobile Telephone Number (if any)   *925-788-6985*

**6.** Requestor's Email Address (if any)   *helenlawrence.esq@gmail.com*

### Requestor's Certification

By my signature, I consent to pay all costs incurred for search, duplication, and review of documents up to $25. (See Form G-639 Instructions for more information.)

**7.a.** Requestor's Signature

**7.b.** Date of Signature (mm/dd/yyyy)   *2/25/2016*

## Part 3.  Description of Records Requested

**NOTE:** While you are not required to respond to every item in **Part 3.**, failure to provide complete and specific information may delay processing of your request or create an inability for U.S. Citizenship and Immigration Services (USCIS) to locate the records or information requested.

**1.** **Purpose (Optional:** You are not required to state the purpose of your request. However, providing this information may assist USCIS in locating the records needed to respond to your request.)

### Full Name of the Subject of Record

**2.a.** Family Name (Last Name)   *BOTEO FAJARDO*

**2.b.** Given Name (First Name)   *HECTOR*

**2.c.** Middle Name   *ESTIVEN*

## Part 3.  Description of Records Requested (continued)

### Other Names Used by the Subject of Record (include nicknames, aliases, and maiden name, if applicable)

| | | |
|---|---|---|
| 3.a. | Family Name (Last Name) | |
| 3.b. | Given Name (First Name) | |
| 3.c. | Middle Name | |

### Full Name of the Subject of Record at Time of Entry into the United States

| | | |
|---|---|---|
| 4.a. | Family Name (Last Name) | |
| 4.b. | Given Name (First Name) | |
| 4.c. | Middle Name | |

### Other Information About the Subject of Record

5.  Form I-94 Number Arrival-Departure Record
    ▶

6.  Alien Registration Number (A-Number) (if any)
    ▶ A- 2 0 8 3 1 1 6 5 5

7.  Application, Petition, or Request Receipt Number
    ▶

### Information About Family Members that May Appear on Requested Records

For example, provide the requested information about a spouse or children.  If you need extra space to complete this section, use the space provided in **Part 5. Additional Information.**

#### Family Member 1

| | | |
|---|---|---|
| 8.a. | Family Name (Last Name) | |
| 8.b. | Given Name (First Name) | |
| 8.c. | Middle Name | |

9.  Relationship

#### Family Member 2

| | | |
|---|---|---|
| 10.a. | Family Name (Last Name) | |
| 10.b. | Given Name (First Name) | |
| 10.c. | Middle Name | |

11.  Relationship

### Parents' Names for the Subject of Record

#### Father

| | | |
|---|---|---|
| 12.a. | Family Name (Last Name) | |
| 12.b. | Given Name (First Name) | |
| 12.c. | Middle Name | |

#### Mother

| | | |
|---|---|---|
| 13.a. | Family Name (Last Name) | |
| 13.b. | Given Name (First Name) | |
| 13.c. | Middle Name | |

13.d.  Maiden Name (if applicable)

## Part 4.  Verification of Identity and Subject of Record Consent

**NOTE:**  The information requested in **Part 4.** is **REQUIRED.** Complete all applicable **Item Numbers.**  In addition, the Subject of Record **MUST** sign **Part 4.** of this request.

### Full Name of the Subject of Record

| | | |
|---|---|---|
| 1.a. | Family Name (Last Name) | |
| 1.b. | Given Name (First Name) | |
| 1.c. | Middle Name | |

## Part 4. Verification of Identity and Subject of Record Consent (continued)

### Mailing Address for the Subject of Record

**2.a.** In Care Of Name (if any)

**2.b.** Street Number and Name

**2.c.** ☐ Apt. ☐ Ste. ☐ Flr.

**2.d.** City or Town

**2.e.** State [ ▼ ]   **2.f.** ZIP Code

**2.g.** Province

**2.h.** Postal Code

**2.i.** Country

### Other Information for the Subject of Record

**3.** Date of Birth (mm/dd/yyyy)   *5/26/2000*

**4.** Country of Birth

### Contact Information for the Subject of Record

Providing this information is **optional**.

**5.** Daytime Telephone Number

**6.** Mobile Telephone Number (if any)

**7.** Email Address (if any)

### Signature and Notarized Affidavit or Declaration of the Subject of Record

Select **only one** box.

**NOTE:** The Subject of Record **MUST** provide a signature in **Item Number 8.a.** Notarized Affidavit of Identity **OR** Item **Number 8.b.** Sworn Declaration Under Penalty of Perjury. If the Subject of Record is deceased, read **Item Number 8.c.** and attach proof of death.

**8.a.** ☐ **Notarized Affidavit of Identity** (Do **NOT** sign and date below until the notary public provides instructions to you.)

By my signature, I consent to USCIS releasing the requested records to the requestor (if applicable) named in **Part 2.** I also consent to pay all costs incurred for search, duplication, and review of documents up to **$25** (if filing this request for myself).

_____
Signature of Subject of Record

_____
Date of Signature (mm/dd/yyyy)

Subscribed and sworn to before me on this _____

day of _____ in the year _____.

Daytime Telephone Number _____

_____
Signature of Notary

My Commission Expires on _____

**8.b.** ☒ **Declaration Under Penalty of Perjury**

By my signature, I consent to USCIS releasing the requested records to the requestor (if applicable) named in **Part 2.** I also consent to pay all costs incurred for search, duplication, and review of documents up to **$25** (if filing this request for myself).

I certify, swear, or affirm, under penalty of perjury under the laws of the United States of America, that the information in this request is complete, true, and correct.

*Hector Estiven Bateo Fajardo*
Signature of Subject of Record

*2/12/16*
Date of Signature (mm/dd/yyyy)

**8.c.** **Deceased Subject of Record** (NOTE: You **MUST** attach an obituary, death certificate, or other proof of death.)

## Part 5.  Additional Information

If you need extra space to provide any additional information within this request, use the space below.  If you need more space than what is provided, you may make copies of this page to complete and file with your request or attach a separate sheet of paper.  Type or print the name of the Subject of Record and his or her A-Number (if any) at the top of each sheet; indicate the **Page Number, Part Number, and Item Number** to which the information refers; and sign and date each sheet.

**1.a.**  Family Name (Last Name)

**1.b.**  Given Name (First Name)

**1.c.**  Middle Name

**2.**  Alien Registration Number (A-Number) (if any)

▶ A-

**3.a.**  Page Number  **3.b.**  Part Number  **3.c.**  Item Number

**3.d.**

**4.a.**  Page Number  **4.b.**  Part Number  **4.c.**  Item Number

**4.d.**

**5.a.**  Page Number  **5.b.**  Part Number  **5.c.**  Item Number

**5.d.**

**6.a.**  Page Number  **6.b.**  Part Number  **6.c.**  Item Number

**6.d.**

NOTICE OF HEARING IN REMOVAL PROCEEDINGS
IMMIGRATION COURT
630 SANSOME STREET, SUITE 475
SAN FRANCISCO, CA 94111

DATE: March 14, 2016

RE:  **BOTEO FAJARDO, HECTOR ESTIVEN**
FILE:  **A# 208-311-655**


TO: RESPONDENT

Please take notice that the above captioned case has been scheduled for a

CUSTODY  MASTER  /  INDIVIDUAL   hearing before the Immigration Court

on _____*April 11, 2016*_____ at ___*1:00 Pm*___ at:
630 SANSOME STREET - 4th FLOOR, COURTROOM 1
SAN FRANCISCO, CA 94111

You may be represented in these proceedings, at no expense to the Government, by an attorney or other individual who is authorized and qualified to represent persons before an Immigration Court. Your hearing date has not been scheduled earlier than 10 days from the date of service of the Notice to Appear in order to permit you the opportunity to obtain an attorney or representative. If you wish to be represented, your attorney or representative must appear with you at the hearing prepared to proceed. You can request an earlier hearing in writing.

Failure to appear at your hearing except for exceptional circumstances may result in one or more of the following actions: (1) You may be taken into custody by the Department of Homeland Security and held for further action. OR (2) Your hearing may be held in your absence under section 240(b)(5) of the Immigration and Nationality Act. An order of removal will be entered against you if the Department of Homeland Security established by clear, unequivocal and convincing evidence that a) you or your attorney has been provided this notice and b) you are removable.

IF YOUR ADDRESS IS NOT LISTED ON THE NOTICE TO APPEAR, OR IF IT IS NOT CORRECT, WITHIN FIVE DAYS OF THIS NOTICE YOU MUST PROVIDE TO THE IMMIGRATION COURT SAN FRANCISCO, CA  THE ATTACHED FORM EOIR-33 WITH YOUR ADDRESS AND/OR TELEPHONE NUMBER AT WHICH YOU CAN BE CONTACTED REGARDING THESE PROCEEDINGS. EVERYTIME YOU CHANGE YOUR ADDRESS AND/OR TELEPHONE NUMBER, YOU MUST INFORM THE COURT OF YOUR NEW ADDRESS AND/OR TELEPHONE NUMBER WITHIN 5 DAYS OF THE CHANGE ON THE ATTACHED FORM EOIR-33. ADDITIONAL FORMS EOIR-33 CAN BE OBTAINED FROM THE COURT WHERE YOU ARE SCHEDULED TO APPEAR. IN THE EVENT YOU ARE UNABLE TO OBTAIN A FORM EOIR-33, YOU MAY PROVIDE THE COURT IN WRITING WITH YOUR NEW ADDRESS AND/OR TELEPHONE NUMBER BUT YOU MUST CLEARLY MARK THE ENVELOPE "CHANGE OF ADDRESS." CORRESPONDENCE FROM THE COURT, INCLUDING HEARING NOTICES, WILL BE SENT TO THE MOST RECENT ADDRESS YOU HAVE PROVIDED, AND WILL BE CONSIDERED SUFFICIENT NOTICE TO YOU AND THESE PROCEEDINGS CAN GO FORWARD IN YOUR ABSENCE.

A list of free legal service providers has been given to you. For information regarding the status of your case, call toll free 1-800-898-7180 or 240-314-1500. For information on Immigration Court procedures, please consult the Immigration Court Practice Manual, available at www.usdoj.gov/eoir.

Application: I-589, E-42B, E-42A, I-485, I-191, other:_____ due by: _____

Attorney brief due by: _____        DHS brief due by: _____

CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVED BY:    MAIL (M)    PERSONAL SERVICE (P)    FAX (F)
TO: [✓] ALIEN    [ ] ALIEN c/o Custodial Officer    [ ] ALIEN's ATT/REP    [✓] DHS
DATE: 3/14/16_____  BY: COURT STAFF  YLR_____        N3
Attachments: [ ] EOIR-33  [ ] EOIR-28  [ ] Legal Services List  [ ] Biometrics Served  [ ] Other

159

# Exhibit 16-ORR

OMB No. 0990-0115

| SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEM OFFEROR TO COMPLETE BLOCKS 12, 17, 23, 24, & 30 | 1. REQUISITION NUMBER See Schedule | | PAGE OF 1 | 24 |
|---|---|---|---|---|

| CONTRACT NO. IS10F0105N | 2. AWARD EFFECTIVE DATE | 4. ORDER NUMBER HHSP233200900316G | 5. SOLICITATION NUMBER | 6. SOLICITATION ISSUE DATE |
|---|---|---|---|---|

| 7. FOR SOLICITATION INFORMATION CALL: | a. NAME BRENDAN MILLER | b. TELEPHONE NUMBER (No collect calls) | c. OFFER DUE DATE/LOCAL TIME |
|---|---|---|---|

9. ISSUED BY     CODE DAM

DHHS/PSC/SAS/DAM
Parklawn Building, Room 5-101
5600 Fishers Lane
Rockville MD 20857

10. THIS ACQUISITION IS
☒ UNRESTRICTED OR ☐ SET ASIDE: ____ % FOR:
☐ SMALL BUSINESS ☐ EMERGING SMALL BUSINESS
NAICS: ☐ HUBZONE SMALL BUSINESS ☐ SOLE SOURCE
SIZE STANDARD: ☐ SERVICE-DISABLED VETERAN-OWNED SMALL BUSINESS ☐ 8(A)

| 11. DELIVERY FOR FOB DESTINATION UNLESS BLOCK IS MARKED ☐ SEE SCHEDULE | 12. DISCOUNT TERMS | ☐ 13a. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700) | 13b. RATING |
|---|---|---|---|
| | | 14. METHOD OF SOLICITATION ☐ RFQ ☐ IFB ☐ RFP | |

15. DELIVER TO    CODE

Multiple Destinations

16. ADMINISTERED BY    CODE DAM

DHHS/PSC/SAS/DAM
Parklawn Bldg., Room 5-101
5600 Fishers Lane
Rockville MD 20857

| 17a. CONTRACTOR/ OFFEROR   CODE 356370 | FACILITY CODE | 18a. PAYMENT WILL BE MADE BY    CODE FMS |
|---|---|---|

VERA INSTITUTE OF JUSTICE INC 356370
VERA INSTITUTE OF JUSTICE, INC.
233 BROADWAY FL 12
NEW YORK NY 10279-1299

FMS

TELEPHONE NO.

☐ 17b. CHECK IF REMITTANCE IS DIFFERENT AND PUT SUCH ADDRESS IN OFFER

18b. SUBMIT INVOICES TO ADDRESS SHOWN IN BLOCK 18a UNLESS BLOCK BELOW IS CHECKED ☐ SEE ADDENDUM

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | Tax ID Number: 13-1941627 DUNS Number: 073299836 Questions concerning this order may be referred to Mr. Brendan Miller (301) 443-5241. | | | | |
| 1 | Pro-Bono Legal Services for Unaccompanied Children Base Year Requisition No: ACF11997, ACF2778 Continued ... | | | | 5,050,000.00 |
| | (Use Reverse and/or Attach Additional Sheets as Necessary) | | | | |

| 25. ACCOUNTING AND APPROPRIATION DATA See schedule | 26. TOTAL AWARD AMOUNT (For Govt. Use Only) $5,050,000.00 |
|---|---|

☐ 27a. SOLICITATION INCORPORATES BY REFERENCE FAR 52.212-1, 52.212-4. FAR 52.212-3 AND 52.212-5 ARE ATTACHED. ☐ ARE ☐ ARE NOT ATTACHED.
☒ 27b. CONTRACT/PURCHASE ORDER INCORPORATES BY REFERENCE FAR 52.212-4. FAR 52.212-5 IS ATTACHED. ADDENDA ☐ ARE ☐ ARE NOT ATTACHED.

☐ 28. CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN ____ COPIES TO ISSUING OFFICE. CONTRACTOR AGREES TO FURNISH AND DELIVER ALL ITEMS SET FORTH OR OTHERWISE IDENTIFIED ABOVE AND ON ANY ADDITIONAL SHEETS SUBJECT TO THE TERMS AND CONDITIONS SPECIFIED HEREIN.

☒ 29. AWARD OF CONTRACT REF. ____ DATED 07/27/2009 . YOUR OFFER ON SOLICITATION (BLOCK 5), INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN IS ACCEPTED AS TO ITEMS:

| 30a. SIGNATURE OF OFFEROR/CONTRACTOR *Ronen Goldstein* | 31a. UNITED STATES OF AMERICA (SIGNATURE OF CONTRACTING OFFICER) *Donald S. Hadrick* |
|---|---|
| 30b. NAME AND TITLE OF SIGNER (Type or print) EN GOLDSTEIN VICE PRESIDENT | 30c. DATE SIGNED 7/31 09 | 31b. NAME OF CONTRACTING OFFICER (Type or print) DONALD S. HADRICK | 31c. DATE SIGNED 7/31/09 |

AUTHORIZED FOR LOCAL REPRODUCTION
PREVIOUS EDITION IS NOT USABLE

STANDARD FORM 1449 (REV. 3/2005)
Prescribed by GSA - FAR (48 CFR) 53.212

161

| 19.<br>ITEM NO. | 20.<br>SCHEDULE OF SUPPLIES/SERVICES | 21.<br>QUANTITY | 22.<br>UNIT | 23.<br>UNIT PRICE | 2 of  24<br>24.<br>AMOUNT |
|---|---|---|---|---|---|
| | Delivery Location Code: ACF | | | | |
| | Admin for Children + Families | | | | |
| | Administration for Children and Fam | | | | |
| | 370 L'Enfant Promenade, S.W. | | | | |
| | Washington DC 20447 US | | | | |
| | Amount: $1,000,000.00 | | | | |
| | Accounting Info: | | | | |
| | 2009.G99UPR9.25102 Appr. Yr.: 2009 CAN: G99UPR9 Object Class: 25102 | | | | |
| | Funded: $1,000,000.00 | | | | |
| | | | | | |
| | Delivery Location Code: PERRYPOINT-201 | | | | |
| | PerryPoint-201 | | | | |
| | 228 3RD STREET | | | | |
| | ROOM 350 | | | | |
| | HARRISBURG PA 17101 US | | | | |
| | Amount: $4,050,000.00 | | | | |
| | Accounting Info: | | | | |
| | 2009-G99UPR9-25102 Appr. Yr.: 2009 CAN: G99UPR9 Object Class: 25102 | | | | |
| | Funded: $4,050,000.00 | | | | |
| | Period of Performance: 08/01/2009 to 07/31/2010 | | | | |
| | | | | | |
| 2 | Pro-Bono Legal Services for Unaccompanied Children | | | | 0.00 |
| | Option Year I | | | | |
| | Amount: $5,303,385.00(Option Line Item) | | | | |
| | Period of Performance: 08/01/2010 to 07/31/2011 | | | | |
| | Continued ... | | | | |

32a. QUANTITY IN COLUMN 21 HAS BEEN

ACCEPTED, AND CONFORMS TO THE CONTRACT, EXCEPT AS

☐ RECEIVED   ☐ INSPECTED   ☐ NOTED:

32b. SIGNATURE OF AUTHORIZED GOVERNMENT REPRESENTATIVE | 32c. DATE | 32d. PRINTED NAME AND TITLE OF AUTHORIZED GOVERNMENT REPRESENTATIVE

32e. MAILING ADDRESS OF AUTHORIZED GOVERNMENT REPRESENTATIVE | 32f. TELEPHONE NUMBER OF AUTHORIZED GOVERNMENT REPRESENTATIVE

32g. E-MAIL OF AUTHORIZED GOVERNMENT REPRESENTATIVE

| 33. SHIP NUMBER | 34. VOUCHER NUMBER | 35. AMOUNT VERIFIED CORRECT FOR | 36. PAYMENT | 37. CHECK NUMBER |
|---|---|---|---|---|
| ☐ PARTIAL  ☐ FINAL | | | ☐ COMPLETE  ☐ PARTIAL  ☐ FINAL | |
| 38. S/R ACCOUNT NUMBER | 39. S/R VOUCHER NUMBER | 40. PAID BY | | |

41a. I CERTIFY THIS ACCOUNT IS CORRECT AND PROPER FOR PAYMENT

41b. SIGNATURE AND TITLE OF CERTIFYING OFFICER | 41c. DATE | 42a. RECEIVED BY (Print)

42b. RECEIVED AT (Location)

42c. DATE REC'D (YY/MM/DD) | 42d. TOTAL CONTAINERS

STANDARD FORM 1449 (REV. 3/2005) BACK

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED GS10F0105N/HHSP233200900316G | | | | PAGE 3 | OF 24 |
|---|---|---|---|---|---|---|
| NAME OF OFFEROR OR CONTRACTOR VERA INSTITUTE OF JUSTICE INC 356370 | | | | | | |

| ITEM NO. (A) | SUPPLIES/SERVICES (B) | QUANTITY (C) | UNIT (D) | UNIT PRICE (E) | AMOUNT (F) |
|---|---|---|---|---|---|
| 3 | Pro-Bono Legal Services for Unaccompanied Children<br><br>Option Year II<br>Amount: $5,519,828.00(Option Line Item)<br>Period of Performance: 08/01/2011 to 07/31/2012 | | | | 0.00 |
| 4 | Pro-Bono Legal Services for Unaccompanied Children<br><br>Option Year III<br>Amount: $5,763,983.00(Option Line Item)<br>Period of Performance: 08/01/2012 to 07/31/2013 | | | | 0.00 |
| 5 | Pro-Bono Legal Services for Unaccompanied Children<br><br>Option Year IV<br>Amount: $6,008,896.00(Option Line Item)<br>Period of Performance: 08/01/2013 to 07/31/2014<br><br>The total amount of award: $27,646,092.00. The obligation for this award is shown in box 26. | | | | |

NSN 7540-01-152-8067

OPTIONAL FORM 336 (4-86)
Sponsored by GSA
FAR (48 CFR) 53.110

163

STANDARD FORM 1449, continued

HHSP233200900316G
ORR Pro Bono Legal Services for Unaccompanied Children

**Consideration and Payment** - In consideration of satisfactory performance of the work as described throughout this order, the Government will pay the Contractor the firm fixed price minus travel each month in performance of the work described herein.  Please see Attachment I – Pricing Template for complete breakdowns.

| | |
|---|---|
| Total Base Year: | $5,050,000 |
| Total Option Year I: | $5,303,385 |
| Total Option Year II: | $5,519,828 |
| Total Option Year III: | $5,763,983 |
| Total Option Year IV: | $6,008,896 |
| Total Base and Option Years: | $27,646,092 |

4

164

STANDARD FORM 1449, continued

HHSP233200900316G
ORR Pro Bono Legal Services for Unaccompanied Children

**Statement of Work**

Scope of Work:

The U.S. Department of Health and Human Services, Administration for Children and Families, Office of Refugee Resettlement (ORR) requires a contractor to develop and coordinate a program to increase capacity of *pro bono* legal service representation efforts before the Executive Office for Immigration Review (EOIR) for unaccompanied alien children (UAC) in HHS custody and care, to recommend models for recruiting, training, and supervising linguistically capable and independent volunteer child advocates, and to facilitate access to legal representation for UAC who are released to sponsors, including coordination with EOIR in providing legal orientation presentations to the sponsors.

Background:

On March 1, 2002, the Homeland Security Act of 2002, §462, 6 U.S.C. § 279, transferred the functions under U.S. immigration laws regarding the care and placement of unaccompanied alien children (UAC) from the former Immigration and Naturalization Service to the Director of the Office of Refugee Resettlement (ORR). The Division of Unaccompanied Children's Services (DUCS) was created within ORR to serve this purpose. The UAC population includes those who: (1) have no lawful immigration status in the United States; (2) have not attained 18 years of age; and (3) with respect to whom – (i) there is no parent or legal guardian in the United States; or (ii) no parent or legal guardian in the United States is available to provide care and physical custody.

On December 23, 2008, the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA) was passed. The law modified and expanded HHS' role in the care of UAC. Relevant to this Statement of Work, section 235(c)(5) of the (TVPRA), 8 U.S.C. § 1232(c)(5) states, "[t]he Secretary of Health and Human Services shall ensure, to the greatest extent practicable and consistent with section 292 of the Immigration and Nationality Act (8 U.S.C. 1362), that all unaccompanied alien children who are or have been in the custody of the Secretary [of HHS] or the Secretary of Homeland Security . . . have counsel to represent them in legal proceedings . . . To the greatest extent practicable, the Secretary of Health and Human Services shall make every effort to utilize the services of pro bono counsel who agree to provide representation to such children without charge." In addition, section 235(c)(6), 8 U.S.C. § 1232(c)(6) notes, "[t]he Secretary of Health and Human Services is authorized to appoint independent child advocates for child trafficking victims and other vulnerable unaccompanied alien children."[1]

DUCS identifies care options and placements for UAC in licensed shelters, group homes, secure facilities, or foster care, according to their specific needs. In making placements, DUCS is guided by the principles that all UAC should be treated with dignity, respect,

---

[1] Section 235 of the TVPRA became effective on March 23, 2009.

165

STANDARD FORM 1449, continued

HHSP233200900316G

ORR Pro Bono Legal Services for Unaccompanied Children

and special concern for their particular vulnerability, all UAC must be placed in the least restrictive setting that is in the best interest of the UAC, and each UAC shall be provided care and services free from discrimination based on race, religion, national origin, sex, handicap, or political belief.

UAC are particularly vulnerable, having faced traumatic situations in their home countries, such as dire poverty, war, forced military recruitment, domestic violence, gang violence, and government neglect. Some are also very young, most have little or no formal education, and are primarily non-English speaking. After apprehension by DHS, and housed in DUCS contracted shelters, these children face a complicated legal system. Professional legal counsel assists in determining if the children qualify for any immigration relief from removal back to their home countries. Other forms of relief may be available if the child has been a victim of human trafficking or other forms of criminal violence. In addition, UAC in HHS custody may have relatives in the United States to whom they can be released while their immigration cases are pending.

Legal representation for UAC can allow for increased efficiency in the immigration court system. Without dedicated, professional legal counsel to write persuasive, detailed applications, gather supporting documentation, and in some cases, provide compelling oral arguments, UAC may have very limited success in obtaining relief in immigration court. Furthermore, UAC without any relief from removal may need assistance to ensure a safe return back to his or her home country. In addition, the immigration system becomes more efficient because immigration judges do not need to delay cases to allow children to find attorneys. Qualified and competent legal service providers can provide legal representation or can successfully recruit and train pro bono attorneys. Moreover, these same legal service providers can facilitate the continuation of legal representation once a UAC is released to a sponsor.

Moreover, appointing a child advocate to vulnerable UAC in ORR custody can ensure the child's best interests are identified. An assigned child advocate spends time with the child and develops a relationship of trust with the child. Some of the duties of the child advocate will be to develop a service plan with the shelter facility staff and child's attorney, visit the child regularly, explain communication limitations and confidentiality to the child, obtain background information on the child, including information concerning the child's departure from his or her country or origin, the child's journey to the United States, the child's arrival in the United States, the period between apprehension and transfer to HHS custody, and time in the United States before apprehension, if any.

Significantly, the child advocate spends time with the UAC and speaks with the child's Clinical Counselor, Family Reunification Specialist, teachers, and other shelter staff to understand the child's current situation (for example, education, therapeutic services, social support, etc). The child advocate helps the child process information and explains the consequences of decisions, and assists the child to make decisions in situations in which the child requests help. For children who are not able to make decisions (due to

6

STANDARD FORM 1449, continued

HHSP233200900316G
ORR Pro Bono Legal Services for Unaccompanied Children

cognitive or other reasons), the child advocate will identify the options that are in the child's best interests in a written report and will explain why other apparent options are excluded. The child advocate develops recommendations and advocates as to the best interests of the child with respect to issues related to the child's custody, care, detention, release and repatriation as well as with respect to any state and federal court proceedings involving the child.

HHS intends to develop a program based on the findings of a three year pilot program on capacity building to enhance pro bono representation with the result of increasing the capacity of non-profit legal service providers that can provide high-quality *pro bono* services for UAC in HHS custody. In addition, this legal access program will facilitate the legal representation for UAC who are released from HHS and coordinate the development of a child advocate program for vulnerable UAC in HHS custody. This will be achieved by building the capacity of organizations to develop and facilitate pro bono legal representation for UAC in HHS custody (including efforts focused on recruiting, training, mentoring, and retaining *pro bono* attorneys for UAC upon release from HHS custody), and by implementing a child advocate model to serve UAC in HHS custody. Such a model will be implemented after researching best practices and models for appointment of child advocates, including evaluating a current child advocate pilot program in Chicago to assess if this model can be applied at additional sites where HHS has children in custody.

Task Requirements:

A) Contractor will identify legal service providers and organizations located near HHS-funded facilities. Criteria for the identification of organizations:

   1) Average Daily Number of UAC in HHS-funded facilities located near the Organizations;
   2) Capacity and Resources of the Organization;
   3) Organization's experience in providing immigration legal services;
   4) Organization's experience working with children who suffer from trauma and/or who are victims of abuse, war, or political persecution.

B) Contractor shall send requests for proposals to the identified organizations, evaluate submitted proposals, and award 10-15 subcontracts over the period of this award (this may increase if DUCS capacity increases) which will be subject to HHS approval. Subcontractors shall, in conjunction with and guidance from, the Contractor:

   1) Develop and implement procedures for screening UAC in HHS custody and identifying the children's legal needs;

7

167

STANDARD FORM 1449, continued

HHSP233200900316G
ORR Pro Bono Legal Services for Unaccompanied Children

2) Develop and implement strategies to conduct outreach to legal community surrounding the site to increase the pool of attorneys willing to volunteer their time to represent the children. This will also include:

   i)  Protocol for screening each volunteer to ensure that they have the appropriate experience, adequate resources, and the skills to work appropriately with children.
   ii) Training for volunteer attorneys to enter information for the children into the contractor designed case management system

3) Coordinate assignment of *pro bono* attorneys for UAC in HHS custody;
4) Track scheduled immigration court dates and immigration judge decisions for UAC screened by the program;
5) Coordinate with other legal service providers and *pro bono* attorneys to ensure representation before immigration courts continues following release from HHS custody or transfer to another DUCS facility;
6) Perform on-site record keeping and maintenance of case management system created by contractor. This shall include, among other areas of information:

   i)   Children screened;
   ii)  Attorneys recruited;
   iii) Children represented by the volunteer attorneys.

7) Conduct training on immigration law and procedures for newly recruited attorneys.

C) Contractor shall award subcontracts based upon:

1) Average number of children in HHS custody in the locality of the subcontractor
2) Cost of living where the organization is based
3) Existing capacity of the subcontractor and the cost of the capacity increase
4) Subcontract funds are specifically restricted to the services outlined in this Statement of Work, and must be consistent with § 292 of the Immigration and Nationality Act, 8 U.S.C. 1362.
5) Measures of performance for subcontractors will include:

   i)   Number of children screened;
   ii)  Time taken to secure legal representation;
   iii) Number of children receiving legal representation;
   iv)  Number of children receiving formal legal representation;
   v)   Duration and level of commitment for each trained attorney, i.e. has the attorney taken more than one case, how many were asylum or SIJV as opposed to voluntary departure?

8

168

STANDARD FORM 1449, continued

HHSP233200900316G

ORR Pro Bono Legal Services for Unaccompanied Children

6) Contractor shall provide technical assistance to Subcontractors including, but not limited to, the following areas:

  i) Gathering information on national practices related to the outreach and maintenance of a pool of pro bono attorneys for UAC in HHS custody;
  ii) Maintaining clear channels of communication, involving onsite visits, teleconferences and/or video conferences, and monthly data review;
  iii) Sharing information on practices and resources among Subcontractors.

D) Contractor shall:

  1)   Research and evaluate various models for the recruitment, training, and supervision of linguistically capable volunteer child advocates.

  2)   Provide a report on best practices and best models for appointing child advocates for UAC.

  3)   Implement a child advocate program in a site to be determined by HHS and, after evaluating whether the program can serve as a national model, expand this same program to multiple locations as additional funding will allow.

E) Contractor shall make on-going qualitative analysis to HHS on a quarterly basis related to the effectiveness of sites' legal access programs and child advocate program using:

  a.  Data
  b.  Information gathered from site visits, interviews with represented UAC, and technical assistance

9

169

STANDARD FORM 1449, continued

HHSP233200900316G
ORR Pro Bono Legal Services for Unaccompanied Children

## INSPECTION AND ACCEPTANCE

1. The Contractor's performance and the quality of services provided hereunder shall be subject to final inspection and acceptance by the Contracting Officer in conjunction with the Contracting Officer's Technical Representative (COTR).

2. **PERIODIC INSPECTIONS:**

   The COTR shall periodically conduct on-the-job inspections to determine the overall quality of contract performance, the job knowledge of individual employees, the effectiveness of training, and to observe and determine the conduct and appearance of uniformed personnel.

3. **TERM OF THE CONTRACT:**

   Performance of this contract shall be 12 months, with the anticipated start date August 1, 2009. This contract contains four (4), twelve (12) month option periods which may which may be exercised at the Government's discretion in accordance with FAR Clause 52.217-9, "Option to Extend the Term of the Contract" (March 2000) [30 days].

4. **TYPE OF CONTRACT**

   This contract shall be Fixed Price with re-imburseable travel expenses.

5. **SCHEDULE OF DELIVERABLES**

   Informal draft materials may be e-mailed to the COTR for review. Deliverables shall not contain any identification or logos of the contractor.

   A) Identify legal service providers and organizations near DUCS facilities and where UAC are released to sponsors. Assess where access to legal services should be expanded. [60 days after contract signing]

   B) Identify sites where legal orientation services for sponsors will be set up. [60 days after contract signing]

   C) Provide a draft plan for a national referral network that will facilitate pro bono legal representation for UAC once released to a sponsor. [90 days after contract signing].

   D) Provide a draft plan for a national child advocate program to serve UAC in HHS custody which allows for HHS to appoint such advocates for vulnerable UAC. [90 days after contract signing].

10

STANDARD FORM 1449, continued

HHSP233200900316G
ORR Pro Bono Legal Services for Unaccompanied Children

E) Develop and expand training for pro bono attorneys and legal service provider attorneys on T-visas, U Visas, SIJ visas, and child welfare and child development, in order to improve the effectiveness of the legal orientation presentations for UAC.

F) Notify legal service providers and organizations of request for proposals. [45 days after contract signing]

G) Award of subcontracts to organizations [90 days after contract signing].

H) Technical Assistance relating to outreach and training efforts from Contractor to Subcontractor [Ongoing during contract life]

I) National training conferences shall occur in the base year and any awarded option years.

J) A final report with recommendations submitted to HHS shall be produced within four weeks of the conclusion of the contract and shall demonstrate performance-based results, such as the overall impact of the child advocate program and legal access programs, how many children were served, etc.

K) On-going analysis [Quarterly following award of subcontracts]


Unless otherwise specified, all reports or copies of reports shall be delivered to:

Department of Health and Human Services
Program Support Center
Division of Acquisition Management
5600 Fishers Lane, Room 5-101
Rockville, Maryland 20857

*Attn: Brendan Miller*


and

Department of Health and Human Services
Office of Refugee Resettlement
Aerospace Building
901 D Street, S.W.
Washington, DC 20447
Attn: Maureen Dunn

11

STANDARD FORM 1449, continued

HHSP233200900316G
ORR Pro Bono Legal Services for Unaccompanied Children

6.    **CONTRACTOR PERFORMANCE**

At the COTR's discretion, he/she and the contractor's program manager will meet quarterly to evaluate the manner in which the contractor performed in accordance with the contract requirements and standards such as: good workmanship, the contractor's record of forecasting and controlling cost; the contractor's adherence to contract schedule, contractor's history of reasonable and cooperative behavior and commitment to customer satisfaction, and generally, the contractor's business like concern for the interest of the customer. The contracting officer may attend these meetings.

7.    **FEDERAL HOLIDAYS**

The Contractor shall observe the following Federal holidays on the days observed by the Federal Government:

(a)    New Year's Day
(b)    Martin Luther King's Birthday
(c)    Presidents Day
(d)    Memorial Day
(e)    Independence Day
(f)    Labor Day
(g)    Columbus Day
(h)    Veterans Day
(i)    Thanksgiving Day
(j)    Christmas Day

12

172

STANDARD FORM 1449, continued

HHSP233200900316G
ORR Pro Bono Legal Services for Unaccompanied Children

## CONTRACT ADMINISTRATION

1.  **INVOICE SUBMISSION:**

In addition to the information required by FAR clause 52.212-4 Contract Terms and Conditions-Commercial Items (MAR 2009), the following information is also required for submission of a proper invoice.

a.  Signature of an authorized official certifying the invoice to be correct and proper for payment;

b.  Period of performance for which costs are claimed; and

c.  Tax identification number (employer's identification number) or social security number.

d.  The Contractor shall submit an original and one (1) copy of its invoice to:

> Financial Management Services/Program Support Center
> Parklawn Building, Room 16a-12
> 5600 Fishers Lane
> Rockville, Maryland 20857
> Attn: HHSP233200900316G

e.  One additional copy shall be sent to the following:

> DHHS, Program Support Center
> Division of Acquisition Management, SAS
> Parklawn Building, Room 5-101
> 5600 Fishers Lane
> Rockville, Maryland 20857
> Attn: HHSP233200900316G

> and

> Department of Health and Human Services
> Office of Refugee Resettlement
> Aerospace Building
> 901 D Street, S.W.
> Washington, DC 20447
> Attn: Maureen Dunn

f.  Payment shall be made by:

13

173

STANDARD FORM 1449, continued

HHSP233200900316G
ORR Pro Bono Legal Services for Unaccompanied Children

Financial Management Services/Program Support Center
Parklawn Building, Room 16a-12
5600 Fishers Lane
Rockville, Maryland 20857

g.    Electronic Transfer of Funds Payment

Pursuant to FAR 52.232-33, Payment of Electronic Funs Transfer –
Central Contractor Registration, payments under this contract shall be
made by electronic funds transfer (EFT)

## 2.    INVOICE PAYMENT:

In consideration of satisfactory performance of the work as described throughout this order, the Government shall pay the Contractor 1/12 the yearly price of the contract excluding travel, plus any travel expenses incurred during that month. This amount will be payable upon presentation of a proper invoice and upon receipt and acceptance by the Government of the services specified in the Schedule.  It is the requirement of the Government to obtain complete and satisfactory performance in accordance with the terms of the specifications and quality standards of this contract.  The Government is contracting for satisfactory performance of all work identified in the specifications, and deductions will, therefore, be made for any service not provided.  The Government will determine monetary deductions for nonperformance of work under this contract, or for deficiencies in the performance of work and supplements "Termination for Cause."

It is agreed that failure to: accomplish any work required under this contract; to satisfactorily accomplish such work; or to comply with any provisions of this contract, where due to the carelessness, neglect, or fault of the contractor, shall constitute a deficiency for which a reduction of payment will be made in accordance with the provisions of this contract.

## 3.    TECHNICAL MONITORING:

Contracting Officers' Technical Representative Appointment and Authority

(a) Performance of work under this contract must be subject to the technical direction of the Contracting Officers' Technical Representative identified above, or a representative designated in writing. The term "technical direction" includes, without limitation, direction to the contractor that directs or redirects the labor effort, shifts the work between work areas or locations, fills in details and

14

STANDARD FORM 1449, continued

HHSP233200900316G
ORR Pro Bono Legal Services for Unaccompanied Children

otherwise serves to ensure that tasks outlined in the work statement are accomplished satisfactorily.

(b) Technical direction must be within the scope of the specification(s)/work statement.

The Contracting Officers' Technical Representative does not have authority to issue technical direction that:

(1) Constitutes a change of assignment or additional work outside the specification(s)/statement of work;

(2) Constitutes a change as defined in the clause entitled "Changes";

(3) In any manner causes an increase or decrease in the contract price, or the time required for contract performance;

(4) Changes any of the terms, conditions, or specification(s)/work statement of the contract;

(5) Interferes with the contractor's right to perform under the terms and conditions of the contract; or

(6) Directs, supervises or otherwise controls the actions of the contractor's employees.

(c) Technical direction may be oral or in writing. The Contracting Officers' Technical Representative shall confirm oral direction in writing within five work days, with a copy to the Contracting Officer.

(d) The contractor shall proceed promptly with performance resulting from the technical direction issued by the Contracting Officers' Technical Representative. If, in the opinion of the contractor, any direction of the Contracting Officers' Technical Representative, or his/her designee, falls within the limitations in (c), above, the contractor shall immediately notify the Contracting Officer no later than the beginning of the next Government work day.

(e) Failure of the contractor and the Contracting Officer to agree that technical direction is within the scope of the contract shall be subject to the terms of the clause entitled "Disputes."

15

STANDARD FORM 1449, continued

HHSP233200900316G
ORR Pro Bono Legal Services for Unaccompanied Children

4.  **Contracting Officer's Technical Representative (COTR):**

The COTR responsible for the technical requirements covered by this contract, as contemplated above, "Technical Monitoring" hereof, will be designated by separate correspondence.

5.  **Performance Standards:**

Contractor performance will be evaluated based on –

A.  Adherence to order schedule and delivery dates;
B.  Extent to which the final deliverables address the statement-of-work;
C.  Extent of relevance and applicability of concepts in the deliverables to HHS constraints.
D.  Quality of content, including text, figures, and linkage.

6.  **CONTRACTOR PERFORMANCE EVALUATION REPORT**

The Contractor's performance shall be evaluated annually. This evaluation shall become a part of the contract file and shall be used as past performance information in evaluating the Contractor's and any significant subcontractors' or affiliates' past performance on future contracts. The Contractor shall be given a minimum of 30 days to submit comments, rebutting statements, or additional information. A sample of the "Contractor Performance Report" form that may be used to conduct these evaluations is located at http://cps.od.nih.gov. Contractors are required to register with the NIH Contractor Performance System at http://cpscontractor.nih.gov.

7.  **KEY PERSONNEL HHSAR 352.270-5 (JAN 2006):**

The personnel specified in this contract are considered to be essential to the work being performed hereunder. Prior to diverting any of the specified individuals to other programs, the Contractor shall notify the Contracting Officer reasonably in advance and shall submit justification (including proposed substitutions) in sufficient detail to permit evaluation of the impact on the program. No diversion shall be made by the Contractor without written consent of the Contracting Officer; provided, that the Contracting Officer may ratify in writing such diversion and such ratification shall constitute the consent of the Contracting Officer. The contract may be modified from time to time during the course of the contract to either add or delete personnel, as appropriate.

16

STANDARD FORM 1449, continued

HHSP233200900316G
ORR Pro Bono Legal Services for Unaccompanied Children

| Name | Title |
|------|-------|
| (b)(4), (b)(6) | Director<br>Project Manager |

8. **GOVERNMENT FURNISHED MATERIALS:**

The Government will provide the contractor with any pertinent and existing information and/or data to assist the contractor in the performance of the task requirements.

9. **CONFERENCE/MEETING FACILITIES:**

**The Contractor, if responsible for the selection of a conference/meeting facility for 30 or more attendees, shall consider a minimum of three sites and select the site offering the most cost savings to the Government**

The Contractor shall ensure that all facilities, meetings and seminars held pursuant to this contract are accessible to persons with disabilities per the stipulations set forth in HHSAR Clause 352.270-1.

10. **TRAVEL COSTS:**

The Contractor will be reimbursed, not to exceed the amounts stated below, for all domestic travel as described below, incurred directly and specifically in the performance of this contract, claimed by the Contractor and accepted by the Contracting Officer.

The travel expense for this acquisition is not to exceed $225,578 for the base year, and the subsequent option years.

A. Airfare costs in excess of the lowest customary standard, coach, or equivalent airfare offered during normal business hours are unallowable except when such accommodations require circuitous routing, require travel during unreasonable hours, excessively prolong travel, result in increased costs that would offset transportation savings, are not reasonably adequate for the physical or medical needs of the traveler, or are not reasonably available to meet mission requirements. However, in order for airfare costs in excess of the above standard airfare to be allowable, the applicable conditions set forth must be documented and justified.

17

STANDARD FORM 1449, continued
HHSP233200900316G
ORR Pro Bono Legal Services for Unaccompanied Children

B. Costs of rail travel by most direct route, first-class with lower berth or nearest equivalent.

C. Travel by motor vehicle shall be reimbursed on a reasonable actual expense basis, or at the Contractor's option, on a mileage basis at the current Federal Travel Regulation rate (at the time of contract award), plus any toll or ferry charges.

D. Reasonable subsistence not in excess of actual itemized expenses not to exceed the ceilings in the Federal Travel Regulations in effect at the time of incurred cost.

11. **PROVISIONS APPLICABLE TO DIRECT COSTS:**

Notwithstanding FAR 52.216-7, Allowable Cost and Payment, and FAR 52.244-2, Subcontracts (Cost-Reimbursement and Letter Contracts), unless otherwise expressly provided elsewhere in this contract or in any modification thereto, the costs of the following items or activities shall be unallowable as direct costs:

A. Acquisition, by purchase or lease, of any interest in real property;

B. Special rearrangement or alteration of facilities;

C. Purchase or lease of any item of general purpose, office furniture or office equipment; and

D. Travel to foreign countries.

Any equipment having a unit acquisition cost in excess of $1,000.00, of which the Contractor wishes to be reimbursed as a direct item of cost, shall not be acquired by the Contractor without the specific advance written approval of the Contracting Officer.

12. **FAR 52.252-2 CLAUSES INCORPORATED BY REFERENCE (FEB 1998)**

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available. Also, the full text of a clause may be accessed electronically at this address: "http://www.arnet.gov/far/."

1. **FEDERAL ACQUISITION REGULATION (48 CFR CHAPTER 1) CONTRACT CLAUSES**

1. 52.217-8 Option to Extend Services (NOV 1999) [30 days]

18

178

STANDARD FORM 1449, continued

HHSP233200900316G

ORR Pro Bono Legal Services for Unaccompanied Children

    2.    52.237-3 Continuity of Services (JAN 1991)

13.    **DEPARTMENT OF HEALTH AND HUMAN SERVICES ACQUISITION REGULATION (HHSAR) (48 CFR CHAPTER 3) CLAUSES**

1. 352.202-1 Definitions - Alternate I (JAN 2006)
2. 352.224-70 Confidentiality of Information (JAN 2006)
3. 352.232-9 Withholding of Contract Payments (JAN 2006)
4. 352.270-1 Accessibility of Meetings, Conferences, and Seminars to Persons with Disabilities (JAN 2001)
5. 352.270-5 Key Personnel (JAN 2006)
6. 352.270-6 Publication and Publicity (JAN 2006)
7. 352.270-7 Paperwork Reduction Act (JAN 2006)



| Attachment I - Pricing Template | | | | | |
| Base Year: August 1, 2009 - July 31, 2010 | | | | | |
| | Rate 8/1-11/30 | Days | Rate 12/1-7/31 | Days | |
| Director of Planning | | | | | |
| Project Director | | | | | |
| Senior Project Associate | | | | | |
| Director of Research | | | | | |
| Research Associate/ Writer-Editor | | | | | |
| Project Coordinator | | | | | |
| Research Interns | | | | | |
| Total Labor | | | | | |
| | | | | | |
| Sub-Contract Costs | | | | | |
| Consultant Costs | | | | | |
| Other Direct Material Costs | | | | | |
| Travel Costs | | | | | |
| | | | | | |
| TOTAL | | | | $ | 5,050,000 |

180

| Attachment I - Pricing Template | | | | | |
|---|---|---|---|---|---|
| Option Year I: August 1, 2010 - July 31, 2011 | | | | | |
| | Rate 8/1-11/30 | Days | Rate 12/1-7/31 | Days | |
| Director of Planning | | | | | |
| Project Director | | | | | |
| Senior Project Associate | | | | | |
| Director of Research | | | | | |
| Research Associate/ Writer-Editor | | | | | |
| Project Coordinator | | | | | |
| Research Interns | | | | | |
| Total Labor | | | | | |
| | | | | | |
| Sub-Contract Costs | | | | | |
| Consultant Costs | | | | | |
| Other Direct Material Costs | | | | | |
| Travel Costs | | | | | |
| | | | | | |
| TOTAL | | | | | $ 5,303,385 |

(b) (4)

181

### Attachment I - Pricing Template

#### Option Year II: August 1, 2011 - July 31, 2012

| | Rate 8/1-11/30 | Days | Rate 12/1-7/31 | Days | |
|---|---|---|---|---|---|
| Director of Planning | | | | | |
| Project Director | | | | | |
| Senior Project Associate | | | | | |
| Director of Research | | | | | |
| Research Associate/ Writer-Editor | | | | | |
| Project Coordinator | | | | | |
| Research Interns | | | | | |
| Total Labor | | | | | |
| | | | | | |
| Sub-Contract Costs | | | | | |
| Consultant Costs | | | | | |
| Other Direct Material Costs | | | | | |
| Travel Costs | | | | | |
| | | | | | |
| TOTAL | | | | | $ 5,519,828 |



| Attachment I - Pricing Template | | | | | |
| Option Year III: August 1, 2012 - July 31, 2013 | | | | | |
| | Rate 8/1-11/30 | Days | Rate 12/1-7/31 | Days | |
| Director of Planning | | | | | |
| Project Director | | | | | |
| Senior Project Associate | | | | | |
| Director of Research | | | | | |
| Research Associate/ Writer-Editor | | | | | |
| Project Coordinator | | | | | |
| Research Interns | | | | | |
| Total Labor | | | | | |
| | | | | | |
| Sub-Contract Costs | | | | | |
| Consultant Costs | | | | | |
| Other Direct Material Costs | | | | | |
| Travel Costs | | | | | |
| | | | | | |
| TOTAL | | | | | $ 5,763,983 |



183

| Attachment I - Pricing Template | | | | | |
|---|---|---|---|---|---|
| Option Year IV: August 1, 2013 - July 31, 2014 | | | | | |
| | Rate 8/1-11/30 | Days | Rate 12/1-7/31 | Days | |
| Director of Planning | | | | | |
| Project Director | | | | | |
| Senior Project Associate | | | | | |
| Director of Research | | | | | |
| Research Associate/ Writer-Editor | | | | | |
| Project Coordinator | | | | | |
| Research interns | | | | | |
| Total Labor | | | | | |
| Sub-Contract Costs | | | | | |
| Consultant Costs | | | | | |
| Other Direct Material Costs | | | | | |
| Travel Costs | | | | | |
| TOTAL | | | | | $ 6,008,896 |

(b) (4)

184

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | | 1. CONTRACT ID CODE | | PAGE OF PAGES | |
|---|---|---|---|---|---|
| | | | | 1 | 2 |
| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | | 5. PROJECT NO. (If applicable) | |
| 0001 | 07/12/2010 | ACF36601 | | | |
| 6. ISSUED BY                    CODE   DAM | | 7. ADMINISTERED BY (If other than item 6)   CODE   DAM | | | |
| DHHS/PSC/SAS/DAM<br>Parklawn Building, Room 5-101<br>5600 Fishers Lane<br>Rockville MD 20857 | | DHHS/PSC/SAS/DAM<br>Parklawn Bldg., Room 5- 101<br>5600 Fishers Lane<br>Rockville MD 20857 | | | |
| 8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code) | | (x) | 9A. AMENDMENT OF SOLICITATION NO. | | |
| VERA INSTITUTE OF JUSTICE INC 356370<br>233 BROADWAY FL 12<br>NEW YORK NY 10279-1299 | | | 9B. DATED (SEE ITEM 11) | | |
| | | x | 10A. MODIFICATION OF CONTRACT/ORDER NO.<br>GS10F0105N<br>HHSP233200900316G | | |
| CODE   356370 | FACILITY CODE | | 10B. DATED (SEE ITEM 13)<br>07/31/2009 | | |
| 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS | | | | | |

☐ The above numbered solicitation is amended as set forth in item 14.  The hour and date specified for receipt of Offers ☐ is extended.  ☐ is not extended.
Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

| 12. ACCOUNTING AND APPROPRIATION DATA (If required) | |
|---|---|
| See Schedule | Net Increase:          $274,379.00 |

| 13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14. | |
|---|---|
| CHECK ONE | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation data, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| X | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:<br>FAR 43.103(a)(3) Mutual Agreement of the Parties |
| | D. OTHER (Specify type of modification and authority) |

E. IMPORTANT:     Contractor   ☐ is not.   ☒ is required to sign this document and return   1   copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

Tax ID Number:  13-1941627
DUNS Number:  073299836
The purpose of this modification is to increase the funding for the base year by $274,379.00 from $5,050,000.00 to $5,324,379.00 in order to provide additional pro-bono legal services.

Total Amount for this Modification: $274,379.00
New Total Amount for this Award: $27,920,471.00
Obligated Amount for this Modification: $274,379.00
New Total Obligated Amount for this Award: $5,324,379.00

Continued ...

Except as provided herein, all terms and conditions of the document referenced in item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | | | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) | |
|---|---|---|---|---|
| Karen Goldstein, Vice President | | | ERICA K. BINNIX | |
| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | | 16C. DATE SIGNED |
| *(Signature of person authorized to sign)* | 13 July 2010 | *(Signature of Contracting Officer)* | | 7\|14\|10 |

NSN 7540-01-152-8070
Previous edition unusable

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED<br>GS10F0105N/HHSP233200900316G/0001 | | | PAGE<br>2 | OF<br>2 |
|---|---|---|---|---|---|

NAME OF OFFEROR OR CONTRACTOR
VERA INSTITUTE OF JUSTICE INC 356370

| ITEM NO.<br>(A) | SUPPLIES/SERVICES<br>(B) | QUANTITY<br>(C) | UNIT<br>(D) | UNIT PRICE<br>(E) | AMOUNT<br>(F) |
|---|---|---|---|---|---|
| | All other terms and conditions remain unchanged by reason of this modification.<br>FOB: Destination | | | | |
| | Change Item 1 to read as follows(amount shown is the obligated amount): | | | | |
| 1 | Pro-Bono Legal Services for Unaccompanied Children | | | | 274,379.00 |
| | Base Year | | | | |
| | Accounting Info:<br>2009.G99UPR9.25102 Appr. Yr.: 2009 CAN: G99UPR9 Object Class: 25102<br>Funded: $0.00 | | | | |
| | Accounting Info:<br>2009-G99UPR9-25102 Appr. Yr.: 2009 CAN: G99UPR9 Object Class: 25102<br>Funded: $0.00 | | | | |
| | Accounting Info:<br>2010-G99UPR0-25102 Appr. Yr.: 2010 CAN: G99UPR0 Object Class: 25102<br>Funded: $274,379.00 | | | | |

NSN 7540-01-152-8067

OPTIONAL FORM 336 (4-86)
Sponsored by GSA
FAR (48 CFR) 53.110

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | | | 1. CONTRACT ID CODE | | PAGE OF PAGES | |
|---|---|---|---|---|---|---|
| | | | | | 1 | 3 |
| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | | 4. REQUISITION/PURCHASE REQ. NO. | | 5. PROJECT NO. (if applicable) | |
| 0002 | 08/01/2010 | | See Schedule | | | |
| 5. ISSUED BY | CODE | DAM | 7. ADMINISTERED BY (if other than Item 6) | CODE | DAM | |
| DHHS/PSC/SAS/DAM Parklawn Building, Room 5-101 5600 Fishers Lane Rockville MD 20857 | | | DHHS/PSC/SAS/DAM Parklawn Bldg., Room 5-101 5600 Fishers Lane Rockville MD 20857 | | | |

| 8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code) | | 9A. AMENDMENT OF SOLICITATION NO. |
|---|---|---|
| VERA INSTITUTE OF JUSTICE INC 356370 233 BROADWAY FL 12 NEW YORK NY 10279-1299 | | 9B. DATED (SEE ITEM 11) |
| | | 10A. MODIFICATION OF CONTRACT/ORDER NO. GS10F0105N HHSP233200900316G |
| CODE   356370 | FACILITY CODE | 10B. DATED (SEE ITEM 13) 07/31/2009 |

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.
Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

| 12. ACCOUNTING AND APPROPRIATION DATA (if required) | Net Increase: | |
|---|---|---|
| 2010-G99UPRO-25102 | | $6,092,410.00 |

13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| CHECK ONE | |
|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| X | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: FAR 52.217-9 Option to Extend the Term of the Contract (MAR 2000) |
| | D. OTHER (Specify type of modification and authority) |

| E. IMPORTANT:   Contractor   ☐ is not.   ☒ is required to sign this document and return _____ 1 _____ copies to the issuing office. | |
|---|---|

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

Tax ID Number:  13-1941627

DUNS Number:  073299836

The purpose of this modification is to exercise option year I in the amount of $6,092,410.00 for the period of 8/1/2010 through 7/31/2011.  Option year I pricing is increased by $789,025.00 from $5,303,385.00 to $6,092,410.00 due to increased level of effort.  Revised pricing template for option year I is attached.

Total Amount for this Modification:          $789,025.00
New Total Amount for this Award:            $28,709,496.00
Obligated Amount for this Modification:      $6,092,410.00
New Total Obligated Amount for this Award:  $11,416,789.00
Continued ...

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) | |
|---|---|---|---|
| Michael Jackson Director/President | | ERICA K. BINNIX | |
| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | 16C. DATE SIGNED |
| (Signature of person authorized to sign) | 8/01/2010 | (Signature of Contracting Officer) | 9/1/10 |

NSN 7540-01-152-8070
Previous edition unusable

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

187

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED GS10F0105N/HHSP233200900316G/0002 | | | | PAGE 2 | OF 3 |
|---|---|---|---|---|---|---|

NAME OF OFFEROR OR CONTRACTOR
VERA INSTITUTE OF JUSTICE INC 356370

| ITEM NO. (A) | SUPPLIES/SERVICES (B) | QUANTITY (C) | UNIT (D) | UNIT PRICE (E) | AMOUNT (F) |
|---|---|---|---|---|---|
| | Appr. Yr.: 2010 CAN: G99UPR0 Object Class: 25102 FOB: Destination Period of Performance: 08/01/2010 to 07/31/2011 Change Item 2 to read as follows(amount shown is the obligated amount): | | | | |
| 2 | Pro-Bono Legal Services for Unaccompanied Children Option Year I Requisition No: ACF44051, ACF47005 Amount: $5,580,410.00 Amount: $512,000.00 | | | | 6,092,410.00 |

NSN 7540-01-152-8067

OPTIONAL FORM 336 (4-86)
Sponsored by GSA
FAR (48 CFR) 53.110

188

| Attachment I - Pricing Template | | | | | |
|---|---|---|---|---|---|
| Option Year I: August 1, 2010 - July 31, 2011 | | | | | |
| | Rate 8/1-11/30 | Days | Rate 12/1-7/31 | Days | |
| Director of Planning | | | | | |
| Project Director | | | | | |
| Senior Project Associate | | | | | |
| Director of Research | | | | | |
| Research Associate/ Writer-Editor | | | | | |
| Project Coordinator | | | | | |
| Research Analyst | | | | | |
| Planning Analyst | | | | | |
| Research Interns | | | | | |
| Total Labor | | | | | |
| | | | | | |
| Sub-Contract Costs | | | | | |
| Consultant Costs | | | | | |
| Other Direct Material Costs | | | | | |
| Travel Costs | | | | | |
| TOTAL | | | | | $ 6,092,410 |



189

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | | 1. CONTRACT ID CODE | | PAGE OF PAGES 1     2 |
|---|---|---|---|---|
| 2. AMENDMENT/MODIFICATION NO. 0003 | 3. EFFECTIVE DATE 07/28/2011 | 4. REQUISITION/PURCHASE REQ. NO. ACF69089 | | 5. PROJECT NO. (If applicable) |
| 6. ISSUED BY                   CODE  DAM | | 7. ADMINISTERED BY (If other than item 6)   CODE  DAM | | |

DHHS/PSC/SAS/DAM
Parklawn Building, Room 5-101
5600 Fishers Lane
Rockville MD 20857

7. ADMINISTERED BY (If other than item 6)   CODE DAM

DHHS/PSC/SAS/DAM
Parklawn Bldg., Room 5-101
5600 Fishers Lane
Rockville MD 20857

| 8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code) | | | 9A. AMENDMENT OF SOLICITATION NO. |
|---|---|---|---|
| VERA INSTITUTE OF JUSTICE INC  356370 233 BROADWAY FL 12 NEW YORK NY 10279-1299 | | | 9B. DATED (SEE ITEM 11) |
| | | x | 10A. MODIFICATION OF CONTRACT/ORDER NO. GS10F0105N HHSP233200900316G |
| CODE   356370 | FACILITY CODE | | 10B. DATED (SEE ITEM 13) 07/31/2009 |

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in item 14. The hour and date specified for receipt of Offers      ☐ is extended.    ☐ is not extended.
Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

| 12. ACCOUNTING AND APPROPRIATION DATA (If required) 2011.G99UPRO.25102 | | Net Increase: | $5,519,828.00 |
|---|---|---|---|

13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| CHECK ONE | | |
|---|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. | |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation data, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). | |
| x | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: FAR 52.217-9 Option to Extend the Term of the Contract (MAR 2000) | |
| | D. OTHER (Specify type of modification and authority) | |

E. IMPORTANT:    Contractor    ☐ is not.   ☒ is required to sign this document and return _____ 1 _____ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

Tax ID Number: 13-1941627
DUNS Number:  073299836
Legal Servcie Orientation by Very Institute
Delivery Location Code: HHS
HHS
200 Independence Avenue, SW
Washington DC 20201 US

Appr. Yr.: 2011 CAN: G99UPRO Object Class: 25102
FOB: Destination
Period of Performance: 08/01/2010 to 07/31/2012
Continued ...

Except as provided herein, all terms and conditions of the document referenced in item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) KAREN GOLDSTEIN VICE PRESIDENT | | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) CLINT DRUK |
|---|---|---|
| 15B. CONTRACTOR/OFFEROR _Karen Goldstein_ (Signature of person authorized to sign) | 15C. DATE SIGNED 7/29/11 | 16B. UNITED STATES OF AMERICA _signature_ (Signature of Contracting Officer)          16C. DATE SIGNED 7/29/11 |

NSN 7540-01-152-8070
Previous edition unusable

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

190

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED GS10F0105N/HHSP233200900316G/0003 | | | | PAGE 2 | OF 2 |
|---|---|---|---|---|---|---|
| NAME OF OFFEROR OR CONTRACTOR VERA INSTITUTE OF JUSTICE INC 356370 | | | | | | |

| ITEM NO. (A) | SUPPLIES/SERVICES (B) | QUANTITY (C) | UNIT (D) | UNIT PRICE (E) | AMOUNT (F) |
|---|---|---|---|---|---|
| | Change Item 3 to read as follows(amount shown is the obligated amount): | | | | |
| 3 | Pro-Bono Legal Services for Unaccompanied Children | | | | 5,519,828.00 |
| | Option Year II | | | | |
| | The purpose of this modification is to exercise option year II and to update the key personal. The following changes are made: | | | | |
| | 1) Option Period II is exercised (August 1, 2011 - July 31, 2012. | | | | |
| | 2) The total amount of funds obligated is increased from $11,416,789.00 to $16,936,617.00. | | | | |
| | 3) Susan Shah is replaced with Ann Marie Mulcahy as the current Project Manager. | | | | |

NSN 7540-01-152-8067

OPTIONAL FORM 336 (4-86)
Sponsored by GSA
FAR (48 CFR) 53.110

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | | 1. CONTRACT ID CODE | | PAGE OF PAGES | |
|---|---|---|---|---|---|
| | | | | 1 | 3 |
| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | | 5. PROJECT NO. (If applicable) | |
| 04 | See Block 16C | ACF79392 | | | |
| ISSUED BY                    CODE  DAM | 7. ADMINISTERED BY (If other than Item 6)          CODE  DAM | | | | |
| DHHS/PSC/SAS/DAM<br>Parklawn Building, Room 5-101<br>5600 Fishers Lane<br>Rockville MD 20857 | DHHS/PSC/SAS/DAM<br>Parklawn Bldg., Room 5-101<br>5600 Fishers Lane<br>Rockville MD 20857 | | | | |

8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code)

VERA INSTITUTE OF JUSTICE INC 356370
233 BROADWAY FL 12
NEW YORK NY 10279-1299

| | |
|---|---|
| (x) | 9A. AMENDMENT OF SOLICITATION NO. |
| | 9B. DATED (SEE ITEM 11) |
| X | 10A. MODIFICATION OF CONTRACT/ORDER NO.<br>GS10F0105N<br>HHSP233200900316G |
| | 10B. DATED (SEE ITEM 13)<br>07/31/2009 |

CODE  356370          FACILITY CODE

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended. ☐ is not extended.
Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)          Net Increase:          $572,582.00
See Schedule

13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

CHECK ONE

☐ A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority)  THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

☐ B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b).

☒ C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:
X      FAR 43.103(a)(3) Mutual Agreement of the Parties

☐ D. OTHER (Specify type of modification and authority)

E. IMPORTANT:  Contractor  ☐ is not.  ☒ is required to sign this document and return _____ 1 _____ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)
Tax ID Number:  13-1941627
DUNS Number:  073299836
Office of Refugee Resettlement Pro-Bono Legal Services for Unaccompanied Children

Option year II pricing is increased by $572,582.00 from $5,519,828.00 to $6,092,410.00 in order to expand service coverage.  Revised pricing template for option year II is attached.

Obligated Amount for this Modification:  $572,582.00
New Total Obligated Amount for this Award: $17,509,199.00

FOB: Destination
Continued ...

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) |
|---|---|
| KAREN GOLDSTEIN   VICE PRESIDENT | CLINT DRUK |
| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | 16C. DATE SIGNED |
| (Signature of person authorized to sign) | 10/1/11 | (Signature of Contracting Officer) | 12/2/11 |

BSN 7540-01-152-8070          STANDARD FORM 30 (REV. 10-83)
Previous edition unusable          Prescribed by GSA
FAR (48 CFR) 53.243

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED GS10F0105N/HHSP233200900316G/0004 | | | | PAGE 2 | OF 3 |
|---|---|---|---|---|---|---|

NAME OF OFFEROR OR CONTRACTOR
INSTITUTE OF JUSTICE INC 356370

| A NO. (A) | SUPPLIES/SERVICES (B) | QUANTITY (C) | UNIT (D) | UNIT PRICE (E) | AMOUNT (F) |
|---|---|---|---|---|---|
| | Period of Performance: 08/01/2009 to 07/31/2012 | | | | |
| | Change Item 3 to read as follows(amount shown is the obligated amount): | | | | |
| 3 | Pro-Bono Legal Services for Unaccompanied Children | | | | 572,582.00 |
| | Option Year II | | | | |
| | Accounting Info: 2011.G99UPR0.25102 Appr. Yr.: 2011 CAN: G99UPR0 Object Class: 25102 Funded: $0.00 | | | | |
| | Accounting Info: 2012.G99UPR2.25102 Appr. Yr.: 2012 CAN: G99UPR2 Object Class: 25102 Funded: $572,582.00 | | | | |

OPTIONAL FORM 336 (4-86)
Sponsored by GSA
FAR (48 CFR) 53.110



| Attachment I - Pricing Template | | | | | |
|---|---|---|---|---|---|
| Option Year II: August 1, 2011 - July 31, 2012 | | | | | |
| | Rate 8/1-11/30 | Days | Rate 12/1-7/31 | Days | |
| Director of Planning | | | | | |
| Project Director | | | | | |
| Senior Project Associate | | | | | |
| Director of Research | | | | | |
| Research Associate/ Writer-Editor | | | | | |
| Research Analyst | | | | | |
| Planning Analyst | | | | | |
| Project Coordinator | | | | | |
| Research Interns | | | | | |
| Total Labor | | | | | |
| | | | | | |
| Sub-Contract Costs | | | | | |
| Consultant Costs | | | | | |
| Other Direct Material Costs | | | | | |
| Travel Costs | | | | | |
| TOTAL | | | | | $ 6,092,410 |

194

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | | 1. CONTRACT ID CODE | | PAGE OF PAGES | |
|---|---|---|---|---|---|
| | | | | 1 | 7 |
| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | | 5. PROJECT NO. (If applicable) | |
| 0005 | See Block 16C | ACF90523 | | | |
| 6. ISSUED BY                CODE | DAM | 7. ADMINISTERED BY (If other than Item 6) | CODE | DAM | |

6. ISSUED BY

DHHS/PSC/SAS/DAM
Parklawn Building, Room 5-101
5600 Fishers Lane
Rockville MD 20857

7. ADMINISTERED BY (If other than Item 6)

DHHS/PSC/SAS/DAM
Parklawn Bldg., Room 5-101
5600 Fishers Lane
Rockville MD 20857

| 8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code) | | (x) | 9A. AMENDMENT OF SOLICITATION NO. | |
|---|---|---|---|---|
| VERA INSTITUTE OF JUSTICE INC 356370 233 BROADWAY FL 12 NEW YORK NY 10279-1299 | | | 9B. DATED (SEE ITEM 11) | |
| | | X | 10A. MODIFICATION OF CONTRACT/ORDER NO. GS10F0105N HHSP233200900316G | |
| CODE    356370 | FACILITY CODE | | 10B. DATED (SEE ITEM 13) 07/31/2009 | |

| 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS |
|---|

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended. ☐ is not extended. Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

| 12. ACCOUNTING AND APPROPRIATION DATA (If required) | Net Increase: | $231,172.00 |
|---|---|---|
| See Schedule | | |

| 13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14. |
|---|

| CHECK ONE | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
|---|---|
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| X | FAR 43.103(a)(3) Mutual Agreement of the Parties |
| | D. OTHER (Specify type of modification and authority) |

E. IMPORTANT:   Contractor   ☐ is not.   ☒ is required to sign this document and return _____1_____ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

Tax ID Number:   13-1941627
DUNS Number:   073299636
Office of Refugee Resettlement Pro-Bono Legal Services for Unaccompanied Children

1.   The Statement of Work and Schedule of Deliverables are revised as specified on the attached pages (3-7).

2.   Option year II pricing is increased by $231,172.00 from $6,092,410.00 to $6,323,582.00 due to an increase in the number of unaccompanied alien children receiving legal services.

FOB: Destination
Continued ...

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) |
|---|---|
| Ernest Duncan, Chief Operating Officer and Chief Financial Officer | CLINT DRUK |
| 15B. CONTRACTOR/OFFEROR        (Signature of person authorized to sign) | 15C. DATE SIGNED    6/13/2012 | 16B. UNITED STATES OF AMERICA        (Signature of Contracting Officer) | 16C. DATE SIGNED    6/13/12 |

| NSN 7540-01-152-8070 Previous edition unusable | STANDARD FORM 30 (REV. 10-83) Prescribed by GSA FAR (48 CFR) 53.243 |
|---|---|

Contract:       GS10F0105N
Task Order:     HHSP233200900316G                          Page 3 of 7
Modification:   0005

The subject task order is modified as follows:

**The Statement of Work is revised by deleting the existing task requirements A-E and replacing with task requirements A-E below:**

A) Contractor will identify legal service providers and organizations located near HHS-funded facilities for which funding for legal services is provided. Criteria for the identification of organizations:

   1) Average Daily Number of UAC in HHS-funded facilities located near the Organizations;
   2) Capacity and Resources of the Organization;
   3) Organization's experience in providing immigration legal services;
   4) Organization's experience working with children who suffer from trauma and/or who are victims of abuse, war, or political persecution.

B) Contractor shall send requests for proposals to the identified organizations, evaluate submitted proposals, and award 10-15 subcontracts over the period of this award (this may increase if DUCS capacity increases) which will be subject to HHS approval. Subcontractors shall, in conjunction with and guidance from, the Contractor:

   1) Develop and implement procedures for conducting legal rights presentations and screening 95 percent of UAC in HHS custody for whom funding for legal services is provided to identify their legal needs. Legal rights presentations shall be conducted within 14 days of placement, and legal screenings shall be conducted within 30 days of placement, or as soon as practicable thereafter in the event of extenuating circumstances;
   2) Develop and implement strategies to conduct outreach to legal community surrounding the site to increase the pool of attorneys willing to volunteer their time to represent the children. This will also include:

      i) Protocol for screening each volunteer to ensure that they have the appropriate experience, adequate resources, and the skills to work appropriately with children.
      ii) Training for volunteer attorneys to enter information for the children into the contractor designed case management system (see Task E)

   3) Coordinate assignment of in-house and volunteer pro bono attorneys for UAC in HHS custody;
   4) Track scheduled immigration court dates and immigration judge decisions for UAC screened by the program;
   5) Coordinate with other legal service providers and pro bono attorneys to ensure representation before immigration judges occurs while UAC are in HHS custody to the extent practicable and continues through until completion of immigration proceedings, which may extend to the time the children are reunified and living with family members in the community. Coordinate with other legal service providers and pro bono attorneys to ensure continuity in legal services and representation when UAC are transferred to another DUCS facility. Coordinates with Case Workers, other legal service providers,

Contract:        GS10F0105N
Task Order:      HHSP233200900316G                                          Page 5 of 7
Modification:    0005

    v) Number of children receiving sub-contractor representation, and percentage of those children receiving sub-contractor representation from the entire number of UAC in HHS custody who have court appearances while at the care provider(s) served by that sub-contractor.

6) Contractor shall provide technical assistance to subcontractors including, but not limited to, the following areas:

    i) Gathering information on national practices related to the outreach and maintenance of a pool of pro bono attorneys for UAC in HHS custody;

    ii) Maintaining clear channels of communication, involving onsite visits, teleconferences and/or video conferences, and monthly data review;

    iii) Sharing information on practices and resources among Subcontractors.

    iv) Providing technical assistance on family, juvenile, and criminal law issues related to UAC immigration cases.

D) Contractor shall:

1) Research and evaluate various models for the recruitment, training, and supervision of linguistically capable child advocates.

2) Provide a report on best practices and best models for appointing child advocates.

3) Implement a child advocate program in a site to be determined by HHS, evaluate the efficacy of child advocate program models, and expand child advocate services to multiple locations as additional funding will allow.

4) Conduct the recruitment, screening, training, and oversight of individual child advocates. Ensure that individual child advocates meet State licensing background check requirements for child care provider staff or volunteers prior to contact with children; conduct all corresponding background checks, references and clearances; and maintain personnel files with documentation of such.

5) Make timely recommendations to ORR for the assignment of individual child advocates, based on the UAC's individual needs.

6) For each UAC that has an assigned child advocate, provide a service plan for child advocate services and keep ORR and other stakeholders, as applicable, apprised of the service plan and any changes to the service plan with respect to custody, care and release. Upon identifying the need for advocacy with ORR, or within three (3) business days of a request by ORR, child advocates shall provide written recommendations to ORR.

E) Contractor shall make on-going quantitative and qualitative analysis to HHS on a quarterly basis related to the effectiveness of sites' legal access programs and child advocate program using:

197

H) Technical assistance relating to outreach, training, and legal services Contractor to Subcontractor (ongoing during contract life), including provision of one annual site visit, at minimum, to each Subcontractor.

I) National training shall occur in the base year. If option years are awarded, national trainings may occur if approved by the COTR.

J) A final report, including any supplements, with recommendations submitted to HHS shall be produced within 90 days of the conclusion of the contract and will demonstrate performance-based results, using numbers of UAC served (legal rights presentations; screenings for legal relief; matched with legal representation), legal outcomes for those represented UAC whose cases concluded while working with a subcontractor, and statistics and other information, on the overall impact of the child advocate program and the legal access program.

K) On-going analysis due 60 days from the end of each quarter. The written quarterly performance report should address performance on the task requirements and deliverables in a quantitative and qualitative manner. Subcontractor monitoring reports for the corresponding quarter shall be attached. Information shall be broken down by in care versus released UAC, and pro bono versus sub-contractor representation, and shall address quality of services.

L) Annual analysis, based upon program data and necessary ORR-provided data, due 90 days from the end of each option year, starting with Option Year II. The written annual report shall address performance on the task requirements and deliverables in a qualitative and quantitative manner and shall address:
   a. Legal outcomes
   b. Court and cost efficiencies, including impact on continuances and length of stay
   c. Impact of direct representation by the increase in the percentage of children who obtained representation for the duration of their immigration proceedings and by the increase in appearance rates in immigration court in Houston

M) Provide representation annually, barring legal or ethical prohibitions, for:
   a. 70 eligible UAC who will be released in the Houston area from care providers outside of the Houston area
   b. 70 eligible UAC who were initially served by the subcontractor in Houston area care providers and who were then reunified/released in the Houston area
   c. 100% of UAC who seek removal or voluntary departure while in ORR custody at a care provider served by a subcontractor.

198

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | | | 1. CONTRACT ID CODE | | PAGE OF PAGES | |
|---|---|---|---|---|---|---|
| | | | | | 1 | 6 |

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. (If applicable) |
|---|---|---|---|
| 0006 | See Block 16C | ACF94871 | |

| 6. ISSUED BY | CODE | DAM | 7. ADMINISTERED BY (If other than Item 6.) | CODE | |
|---|---|---|---|---|---|

6. ISSUED BY   CODE  DAM

DHHS/PSC/SAS/DAM
Twinbrook Place, Suite 400
12501 Ardennes Avenue
Rockville MD 20857

| 8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code) | (x) | 9A. AMENDMENT OF SOLICITATION NO. |
|---|---|---|
| VERA INSTITUTE OF JUSTICE INC 356370<br>233 BROADWAY FL 12<br>NEW YORK NY 10279-1299 | | 9B. DATED (SEE ITEM 11) |
| | X | 10A. MODIFICATION OF CONTRACT/ORDER NO.<br>GS10F0105N<br>HHSP233200900316G |
| CODE   356370 | FACILITY CODE | 10B. DATED (SEE ITEM 13)<br>07/31/2009 |

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended. ☐ is not extended.
Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

| 12. ACCOUNTING AND APPROPRIATION DATA (If required) | Net Increase: | $9,000,000.00 |
|---|---|---|
| 2012.G99UPR2.25102 | | |

**13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

| CHECK ONE | | |
|---|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. | |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). | |
| X | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:<br>FAR 52.212-4(c) Changes | |
| X | D. OTHER (Specify type of modification and authority)<br>FAR 52.217-9 Option to Extend the Term of the Contract (Mar 2000) | |

E. IMPORTANT:   Contractor   ☐ is not.   ☒ is required to sign this document and return _____ 1 _____ copies to the issuing office.

**14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)**

Tax ID Number:  13-1941627
DUNS Number:  073299836
Office of Refugee Resettlement Pro-Bono Legal Services for Unaccompanied Children

This modification exercises option year 3 with changes, updates the invoicing instructions, and adds two HHSAR clauses to the task order.  Please see the attached continuation pages.

Appr. Yr.: 2012 CAN: G99UPR2 Object Class: 25102
FOB: Destination
Period of Performance: 08/01/2009 to 07/31/2013

Continued ...

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) |
|---|---|
| Karen Goldstein, Vice President & General Counsel | CLINT DRUK |
| 15B. CONTRACTOR/OFFEROR<br>(Signature of person authorized to sign) | 15C. DATE SIGNED<br>7/30/12 | 16B. UNITED STATES OF AMERICA<br>(Signature of Contracting Officer) | 16C. DATE SIGNED<br>7/31/12 |

NSN 7540-01-152-8070
Previous edition unusable

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

199

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED<br>GS10F0105N/HHSP233200900316G/0006 | | | PAGE<br>2 | OF<br>6 |

NAME OF OFFEROR OR CONTRACTOR
VERA INSTITUTE OF JUSTICE INC 356370

| NO.<br>(A) | SUPPLIES/SERVICES<br>(B) | QUANTITY<br>(C) | UNIT<br>(D) | UNIT PRICE<br>(E) | AMOUNT<br>(F) |
|---|---|---|---|---|---|
| | Change Item 4 to read as follows(amount shown is the obligated amount): | | | | |
| 4 | Pro-Bono Legal Services for Unaccompanied Children | | | | 9,000,000.00 |
| | Option Year III | | | | |
| | Contractor's Statement of Release | | | | |
| | In consideration of the modification agreed to herein as complete equitable adjustments for the Contractor's proposal for revised pricing for option year 3 dated 7/19/2012 "proposal for adjustment," the Contractor hereby releases the Government from any and all liability under this contract for further equitable adjustments attributable to such facts or circumstances giving rise to the "proposal for adjustment" (except for - no exceptions). | | | | |

NSN 7540-01-152-8087

OPTIONAL FORM 336 (4-86)
Sponsored by GSA
FAR (48 CFR) 53.110

200

| | |
|---|---|
| Contract: | GS10F0105N |
| Task Order: | HHSP233200900316G |
| Modification: | 0006 |

Page 3 of 6

The subject task order is modified as follows:

1. Option year 3 is exercised in the amount of $9,000,000.00 for the period of 8/1/2012 through 7/31/2013. Due to an increase in the number of unaccompanied alien children receiving legal services, option year 3 pricing is increased by $3,236,017.00 from $5,763,983.00 to $9,000,000.00. The revised pricing template for option year 3 is attached.

2. The existing Section 1 under Contract Administration, Invoice Submission, is deleted entirely and replaced with the following updated invoicing instructions:

The Contractor shall submit invoices once per month. A complete invoice with all required back-up documentation shall be sent electronically, via email, to:

1. Contract Specialist via DAM mailbox: pscsas.invoices@psc.hhs.gov.*
2. Contracting Officer's Representative (COR): name and email address shall be provided via email
3. Financial Management Service (FMS): psc_invoices@psc.hhs.gov.*

   * No other non-invoice related documents (i.e. deliverables, reports, balance statements) shall be sent to the DAM and FMS mailboxes. Invoices Only.

The subject line of your email invoice submission shall contain the contract number, contract line item number, the order number, if applicable, and the number of invoices. The Contractor shall send one email per contract per month. The email may have multiple invoices for the contract. Invoices must be in the following formats: PDF, TIFF, or Word. No Excel formats will be accepted. The electronic file cannot contain multiple invoices; example, 10 invoices requires 10 separate files (PDF or TIFF or Word).

Invoices shall be submitted in accordance with the contract terms, i.e. payment schedule, progress payments, partial payments, deliverables, etc.

All calls concerning contract payment shall be directed to the COR.

In accordance with FAR 52.212-4, Contract Terms and Conditions—Commercial Items, a proper invoice must include the following items:

FAR 52.212-4(g) Invoice.

(1) The Contractor shall submit an original invoice and three copies (or electronic invoice, if authorized) to the address designated in the contract to receive invoices. An invoice must include—

(i) Name and address of the Contractor;

(ii) Invoice date and number;

(iii) Contract number, contract line item number and, if applicable, the order number;

(iv) Description, quantity, unit of measure, unit price and extended price of the items delivered;

(v) Shipping number and date of shipment, including the bill of lading number and weight of shipment if shipped on Government bill of lading;

201

Contract:       GS10F0105N
Task Order:     HHSP233200900316G                                          Page 4 of 6
Modification:   0006

(vi) Terms of any discount for prompt payment offered;

(vii) Name and address of official to whom payment is to be sent;

(viii) Name, title, and phone number of person to notify in event of defective invoice; and

(ix) Taxpayer Identification Number (TIN). The Contractor shall include its TIN on the invoice only if required elsewhere in this contract.

(x) Electronic funds transfer (EFT) banking information.

(A) The Contractor shall include EFT banking information on the invoice only if required elsewhere in this contract.

(B) If EFT banking information is not required to be on the invoice, in order for the invoice to be a proper invoice, the Contractor shall have submitted correct EFT banking information in accordance with the applicable solicitation provision, contract clause (e.g., 52.232-33, Payment by Electronic Funds Transfer—Central Contractor Registration, or 52.232-34, Payment by Electronic Funds Transfer—Other Than Central Contractor Registration), or applicable agency procedures.

(C) EFT banking information is not required if the Government waived the requirement to pay by EFT.

(2)     Invoices will be handled in accordance with the Prompt Payment Act (31 U.S.C. 3903) and Office of Management and Budget (OMB) prompt payment regulations at 5 CFR Part 1315.

Additionally, the FMS requires the contractor to include its Dunn and Bradstreet Number (DUNS) on each invoice.

In accordance with OMB Memorandum, M-11-32, Agencies shall make payments to small businesses as soon as practicable, with the goal of making payments within 15 days of receipt of a proper invoice. If a small business contractor is not paid within this (15 day) accelerated period, the contractor will not be given a late-payment interest penalty. Interest penalties, as prescribed by the Prompt Payment Act, remain unchanged by means of this memorandum. All small businesses shall label all invoices as "Small Business."

Additionally, in accordance with OMB Memorandum, M-12-16, all prime contractors are encouraged to disburse funds received from the Federal Government to their small business subcontractors in a prompt manner. To assist prime contractors in expediting contractor payments to small business subcontractors, Agencies shall, to the full extent permitted by law, temporarily establish an earlier, accelerated date for making agency payments to all prime contractors. Consistent with OMB Memorandum M-11-32 above, Agencies shall have a goal of paying all prime contractors within 15 days of receiving proper documentation. In an effort to support small business growth, drive economic activity and job creation, the Contractor is encouraged to accelerate payments to their small business subcontractors.

In accordance with the requirements of the Debt Collection Improvement Act of 1996, all payments under this order will be made by electronic funds transfer (EFT). The Contractor shall provide financial institution information to the Finance Office designated above in accordance with FAR 52.232-33 Payment by Electronic Funds Transfer – Central Contractor Registration.

Contract:        GS10F0105N
Task Order:      HHSP233200900316G                         Page 5 of 6
Modification:    0006

3.  Two HHSAR clauses (HHSAR 352.203-70 (as updated) and HHSAR 352.237-73) are added to the
    task order in accordance with Consolidated Appropriations Act, 2012 - Public Law 112-74. The
    clauses are included in full text below.

HHSAR 352.203-70 ANTI-LOBBYING (MAR 2012)

Pursuant to the current HHS annual appropriations act, Public Law 112-74, except for normal and
recognized executive-legislative relationships, the Contractor shall not use any HHS contract funds for:

(a) Publicity or propaganda purposes;

(b) The preparation, distribution, or use of any kit, pamphlet, booklet, publication, electronic
communication, radio, television or video presentation designed to support or defeat the enactment of
legislation before the Congress or any State or local legislature or legislative body, except in
presentation to the Congress or any State or local legislature itself; or designed to support of defeat any
proposed or pending regulation, administrative action, or order issued by the executive branch of any
State or local government, except in presentation to the executive branch of any State or local
government itself; or

(c) Payment of salary or expenses of the Contractor, or any agent acting for the Contractor, related to
any activity designed to influence the enactment of legislation, appropriations, regulation, administrative
action, or Executive order proposed or pending before the Congress or any State government, State
legislature or local legislature or legislative body, other than for normal and recognized executive-
legislative relationships or participation by an agency or officer of a State, local or tribal government is
policymaking and administrative processes within the executive branch of that government.

The prohibitions in subsections (a), (b), and (c) above shall include any activity to advocate or promote
any proposed, pending, or future Federal, State or local tax increase, or any proposed, pending, or
future requirement for, or restriction on, any legal consumer product, including its sale or marketing,
including, but not limited to, the advocacy or promotion of gun control.

(End of clause)

HHSAR 352.237-73 NON-DISCRIMINATION IN SERVICE DELIVERY (MAR 2012)

It is the policy of the Department of Health and Human Services that no person otherwise eligible will be
excluded from participation in, denied the benefits of, or subjected to discrimination in the
administration of HHS programs and services based on non-merit factors such as race, color, national
origin, religion, sex, gender identify, sexual orientation, or disability (physical or mental). By acceptance
of this contract, the contractor agrees to comply with this policy in supporting the program and in
performing the services called for under this contract. The contractor shall include this clause in all sub-
contracts awarded under this contract for supporting or performing the specified program and services.
Accordingly, the contractor shall ensure that each of its employees, and any sub-contractor staff, is
made aware of, understands, and complies with this policy.

(End of clause)

Contract:       GS10F0105N
Task Order:     HHSP233200900316G
Modification:   0006

Page 6 of 6

| Attachment I - Pricing Template | | | | | |
|---|---|---|---|---|---|
| Option Year III: August 1, 2012 - July 31, 2013 | | | | | |
| | Rate 8/1-11/30 | Days | Rate 12/1-7/31 | Days | |
| Director of Planning | | | | | |
| Project Director/ Sr Research Associate | | | | | |
| Senior Project Associate | | | | | |
| Director of Research | | | | | |
| Research Associate | | | | | |
| Research Analyst | | | | | |
| Planning Analyst | | | | | |
| Project Coordinator | | | | | |
| Research Interns | | | | | |
| Total Labor | | | | | |
| | | | | | |
| Subcontract Costs | | | | | |
| Consultant Costs | | | | | |
| Other Direct Material Costs | | | | | |
| Travel Costs | | | | | |
| TOTAL | | | | $ | 9,000,000 |



204

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | | 1. CONTRACT ID CODE | | PAGE OF PAGES | |
|---|---|---|---|---|---|
| | | | | 1 | 2 |

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. *(If applicable)* |
|---|---|---|---|
| 0007 | See Block 16C | | |

| 6. ISSUED BY | CODE | DAM | 7. ADMINISTERED BY *(If other than Item 6)* | CODE | |
|---|---|---|---|---|---|

S/PSC/SAS/DAM
Enbrook Place, Suite 400
12501 Ardennes Avenue
Rockville MD 20857

| 8. NAME AND ADDRESS OF CONTRACTOR *(No., street, county, State and ZIP Code)* | (x) | 9A. AMENDMENT OF SOLICITATION NO. |
|---|---|---|

VERA INSTITUTE OF JUSTICE INC 356370
VERA INSTITUTE OF JUSTICE, INC.
233 BROADWAY FL 12
NEW YORK NY 10279-1299

| | 9B. DATED *(SEE ITEM 11)* |
|---|---|
| x | 10A. MODIFICATION OF CONTRACT/ORDER NO. |
| | GS10F0105N |
| | HHSP233200900316G |
| | 10B. DATED *(SEE ITEM 13)* |
| | 07/31/2009 |

| CODE | 356370 | FACILITY CODE | |
|---|---|---|---|

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended. ☐ is not extended.
Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA *(If required)*
See Schedule

**13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

| CHECK ONE | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: *(Specify authority)* THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
|---|---|
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES *(such as changes in paying office, appropriation date, etc.)* SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| X | |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| | D. OTHER *(Specify type of modification and authority)* |

E. IMPORTANT:   Contractor ☒ is not. ☐ is required to sign this document and return _____ 0 _____ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION *(Organized by UCF section headings, including solicitation/contract subject matter where feasible.)*

Tax ID Number:  13-1941627
DUNS Number:  073299836
All contract-related questions should be referred to Nicole Bennett at
nicole.bennett@psc.hhs.gov

The purpose of this modification is update the Contracting Officer's Representative (COR)
assigned to the subject award.

By reason of this modification the COR is hereby changed to Faith Hurt; and all references
to correspondence or inquiries to the COR should directed to her at faith.hurt@acf.hhs.gov
or at (202) 260-5186.
Continued ...

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER *(Type or print)* | 16A. NAME AND TITLE OF CONTRACTING OFFICER *(Type or print)* | |
|---|---|---|
| | DAWN T. GRESHAM | |
| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | 16C. DATE SIGNED |
| *(Signature of person authorized to sign)* | | *(Signature of Contracting Officer)* | 5/7/2013 |

NSN 7540-01-152-8070
Previous edition unusable

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED GS10F0105N/HHSP233200900316G/0007 | | | | | PAGE 2 | OF 2 |
|---|---|---|---|---|---|---|---|

NAME OF OFFEROR OR CONTRACTOR
VERA INSTITUTE OF JUSTICE INC 356370

| ITEM NO. (A) | SUPPLIES/SERVICES (B) | QUANTITY (C) | UNIT (D) | UNIT PRICE (E) | AMOUNT (F) |
|---|---|---|---|---|---|
| | All other terms and conditions remain unchanged by reason of this modification. | | | | |

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | | 1. CONTRACT ID CODE | | PAGE OF PAGES | |
|---|---|---|---|---|---|
| | | | | 1 | 2 |

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | | 5. PROJECT NO. (If applicable) |
|---|---|---|---|---|
| 0008 | 08/01/2013 | ACF115827 | | |

| 6. ISSUED BY | CODE | DAM | 7. ADMINISTERED BY (If other than Item 6) | CODE | |
|---|---|---|---|---|---|

D.   PSC/SAS/DAM
Twinbrook Place, Suite 400
12501 Ardennes Avenue
Rockville MD 20857

| 8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code) | (X) | 9A. AMENDMENT OF SOLICITATION NO. |
|---|---|---|

VERA INSTITUTE OF JUSTICE INC 356370
VERA INSTITUTE OF JUSTICE, INC.
233 BROADWAY FL 12
NEW YORK NY 10279-1299

| 9B. DATED (SEE ITEM 11) |
|---|

| x | 10A. MODIFICATION OF CONTRACT/ORDER NO. |
|---|---|
| | GS10F0105N |
| | HHSP233200900316G |

| CODE   356370 | FACILITY CODE | 10B. DATED (SEE ITEM 13) |
|---|---|---|
| | | 07/31/2009 |

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.
Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

| 12. ACCOUNTING AND APPROPRIATION DATA (If required) | | |
|---|---|---|
| ..2013.G99UPR3.25102 | Net Increase: | $6,008,896.00 |

**13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

| CHECK ONE | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
|---|---|
| X | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| X. | D. OTHER (Specify type of modification and authority)   FAR 52.217-9 OPTION TO EXTEND THE TERM OF THE CONTRACT (MAR 2000) |

| E. IMPORTANT: | Contractor | ☒ is not. | ☐ is required to sign this document and return   0   copies to the issuing office. |
|---|---|---|---|

**14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)**

Tax ID Number:  13-1941627

DUNS Number:  073299836

For any questions regarding this modification, please contact the Contract Specialist, Lisa Slavin at Lisa.Slavin@psc.hhs.gov or 301-443-1171.

ACF COR: Jallyn Sualog (Jallyn.Sualog@acf.hhs.gov; 202-401-4997)

The purpose of this modification is to: 1) Exercise the Government's unilateral right to exercise an Option in accordance with the contract's clause FAR 52.217-9, Option to Extend the Term of the Contract, and 2) Update the COR assignment.

Continued . . .

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | | | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) | |
|---|---|---|---|---|
| | | | DAWN T. GRAHAM | |
| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | | 16C. DATE SIGNED |
| (Signature of person authorized to sign) | | (Signature of Contracting Officer) | | 7/24/13 |

NSN 7540-01-152-8070
Previous edition unusable

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

207

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED GS10F0105N/HHSP233200900316G/0008 | | | | PAGE 2 | OF 2 |
|---|---|---|---|---|---|---|

NAME OF OFFEROR OR CONTRACTOR
VERA INSTITUTE OF JUSTICE INC 356370

| ITEM NO. (A) | SUPPLIES/SERVICES (B) | QUANTITY (C) | UNIT (D) | UNIT PRICE (E) | AMOUNT (F) |
|---|---|---|---|---|---|
| | BY REASON OF THIS MODIFICATION: | | | | |
| | 1. The Government hereby exercises Option Period 4 (CLIN 0005) on the above referenced contract for the pre-priced amount of $6,008,896.00; | | | | |
| | 2. The contract obligation amount is hereby increased by $6,008,896.00 from $26,740,371.00 to $32,749,267.00 to fully fund this option; | | | | |
| | 3. The period of performance is hereby changed from 08/01/2009 – 07/31/2013 to 08/01/2009 – 07/31/2014; | | | | |
| | 4. The COR is hereby changed from Faith Hurt to Jallyn Sualog (Jallyn.Sualog@acf.hhs.gov; 202-401-4997); and | | | | |
| | 5. All other terms and conditions remain unchanged by this modification. Appr. Yr.: 2013 CAN: G99UPR3 Object Class: 25102 FOB: Destination Period of Performance: 08/01/2013 to 07/31/2014 | | | | |
| | Add Item 6 as follows: | | | | |
| 6 | Probono Legal Services for Unaccompanied Children Option Period 4 Period of Performance: 08/01/2013 – 07/31/2014 | | | | 6,008,896.00 |

NSN 7540-01-152-8067

OPTIONAL FORM 336 (4-86)
Sponsored by GSA
FAR (48 CFR) 53.110

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | | 1. CONTRACT ID CODE | | PAGE OF PAGES | |
|---|---|---|---|---|---|
| | | | | 1 | 7 |

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. (If applicable) |
|---|---|---|---|
| 0009 | 09/27/2013 | ACF115832 | |

| 6. ISSUED BY | CODE | DAM | 7. ADMINISTERED BY (If other than Item 6) | CODE |
|---|---|---|---|---|
| DEBS/PSC/SAS/DAM<br>Twinbrook Place, Suite 400<br>12501 Ardennes Avenue<br>Rockville MD 20857 | | | | |

| 8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code) | | |
|---|---|---|
| VERA INSTITUTE OF JUSTICE INC 356370<br>VERA INSTITUTE OF JUSTICE, INC.<br>233 BROADWAY FL 12<br>NEW YORK NY 10279-1299 | | |

| | |
|---|---|
| (X) | 9A. AMENDMENT OF SOLICITATION NO. |
| | 9B. DATED (SEE ITEM 11) |
| X | 10A. MODIFICATION OF CONTRACT/ORDER NO.<br>GS10F0105N<br>HHSP233200900031SG |
| | 10B. DATED (SEE ITEM 13)<br>07/31/2009 |

| CODE | 356370 | FACILITY CODE | |
|---|---|---|---|

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended. ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

| 12. ACCOUNTING AND APPROPRIATION DATA (If required) | | |
|---|---|---|
| .2013.G990PR3.25102 | Net Increase: | $7,079,348.00 |

**13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

| CHECK ONE | | |
|---|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. | |
| X | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). | |
| X | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:<br>FAR 52.212-4 (c) -- Contract Terms and Conditions -- Commercial Items (Jul 2013) | |
| | D. OTHER (Specify type of modification and authority) | |

E. IMPORTANT: Contractor ☐ is not. ☒ is required to sign this document and return _____ 1 _____ copies to the issuing office.

**14. DESCRIPTION OF AMENDMENT/MODIFICATION** (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

Tax ID Number: 13-1941627

DUNS Number: 073299836

Contract Specialist: Lisa Slavin (Lisa.Slavin@psc.hhs.gov; 301-443-1171)

ACF COR: Toby Biswas (Toby.Biswas@acf.hhs.gov; 202-205-4440)

The purpose of this modification is to: 1) Revise Attachment I - Pricing Template - Option Year Four (4) of the Base Task Order from $6,008,896.00 to $13,088,244.00, and the Firm Fixed Price total contract value to $39,828,615.00, by $7,079,348.00 and 2) Update the Contract Administration Section.

See continuation pages 3-7 for detail.

Continued ...

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) |
|---|---|
| Ernest Duncan, COO/CFO | DAWN T. ABRAHAM |
| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | 16C. DATE SIGNED |
| (Signature of person authorized to sign) | 9-27-13 | (Signature of Contracting Officer) | 9/27/13 |

NSN 7540-01-152-8070
Previous edition unusable

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

209

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED GS10F0105N/HHSP233200900316G/0009 | | | | PAGE 2 | OF 7 |
|---|---|---|---|---|---|---|

NAME OF OFFEROR OR CONTRACTOR
VERA INSTITUTE OF JUSTICE INC 356370

| ITEM NO. (A) | SUPPLIES/SERVICES (B) | QUANTITY (C) | UNIT (D) | UNIT PRICE (E) | AMOUNT (F) |
|---|---|---|---|---|---|
| | Appr. Yr.: 2013 CAN: G99UFR3 Object Class: 25102 FOB: Destination Period of Performance: 08/01/2013 to 07/31/2016 | | | | |
| 7 | Add Item 7 as follows: Additional funding to be added to Option Period Four (4) to support increased level of effort | | | | 7,079,348.00 |

NSN 7540-01-152-8067

OPTIONAL FORM 336 (4-86)
Sponsored by GSA
FAR (48 CFR) 53.110

CONTINUATION PAGE
GS10F0105N/HHSP233200900316G

BY REASON OF THIS MODIFICATION, THE BASE TASK ORDER IS MODIFIED AS FOLLOWS:

1) The total Option Period Four (4) Firm Fixed Price amount is hereby increased by $7,079,348.00 from $6,008,896.00 to $13,088,244.00, in accordance with Vera Institute of Justice's quote provided on 07/12/2013, which is hereby incorporated by reference;

2) Attachment I – Pricing Template – Option Year IV: August 1, 2013 – July 31, 2014, found on page 24 of the base order is revised to the following:

| Attachment I – Pricing Template | | | |
|---|---|---|---|
| Option Yr IV: AUG 1, 2013 - JULY 31, 2014 | | | |
| | Daily Rates 8/1/13-7/31/14 | Days | Total Cost |
| Director of Planning | | | |
| Project Director | | | |
| Senior Project Associates | | | |
| Director of Research | | | |
| Research Associate | | | |
| Research Analyst | | | |
| Planning Analyst | | | |
| Project Coordinator | | | |
| Research Interns | | | |
| Total Labor | | | |
| | | | |
| Subcontract Costs | | | |
| Consultant Costs | | | |
| Other Direct Material Costs | | | |
| Travel Costs | | | |
| | | | |
| TOTAL | | | $13,088,244.00 |



3) The total obligation amount for Option Period Four (4) is hereby increased by $7,079,348.00 from $6,008,896.00 to $13,088,244.00;

4) The total order obligation amount and total order value are hereby increased by $7,079,348.00 from $32,749,267.00 to $39,828,615.00 to fully fund Option Period Four (4);

5)  Section 3 – Technical Monitoring of the Contract Administration section of the base order (pages 14-15) is revised to the following:

Section 3 – Contracting Officer's Representative (COR) Authority

(a) Performance of work under this contract must be subject to the technical direction of the Contracting Officer's Representative identified above, or a representative designated in writing. The term "technical direction" includes, without limitation, direction to the contractor that directs or redirects the labor effort, shifts the work between work areas or locations, fills in details and otherwise serves to ensure that tasks outlined in the work statement are accomplished satisfactorily.

(b) Technical direction must be within the scope of the specification(s)/work statement.

The Contracting Officer's Representative does not have authority to issue technical direction that:

(1) Constitutes a change of assignment or additional work outside the specification(s)/statement of work;

(2) Constitutes a change as defined in the clause entitled "Changes";

(3) In any manner causes an increase or decrease in the contract price, or the time required for contract performance;

(4) Changes any of the terms, conditions, or specification(s)/work statement of the contract;

(5) Interferes with the contractor's right to perform under the terms and conditions of the contract; or

(6) Directs, supervises or otherwise controls the actions of the contractor's employees.

(c) Technical direction may be oral or in writing. The Contracting Officer's Representative shall confirm oral direction in writing within five work days, with a copy to the Contracting Officer.

(d) The contractor shall proceed promptly with performance resulting from the technical direction issued by the Contracting Officer's Representative. If, in the opinion of the contractor, any direction of the Contracting Officer's Representative, or his/her designee, falls within the limitations in (b), above, the contractor shall immediately notify the Contracting Officer no later than the beginning of the next Government work day.

(e) Failure of the contractor and the Contracting Officer to agree that technical direction is within the scope of the contract shall be subject to the terms of the clause entitled "Disputes."

**CONTINUATION PAGE**
GS10F0105N/HHSP233200900316G

6) Section 4 – Contracting Officer's Technical Representative (COTR) of the Contract Administration section of the base order (page 16) is hereby updated to include the COR designation to Toby Biswas, changed from Jailyn Sualog, and revised to the following:

**Section 4 – Authorization of Government Personnel**

Notwithstanding the Contractor's responsibility for total management during the performance of this task order, the administration of the Task order will require maximum coordination between the Government and the Contractor. The following individuals will be the Government's points of contact during the performance of this task order:

1. **Contract Specialist**

   All order administration shall be performed by a PSC Contract Specialist, Division of Acquisition Management-A:

   Lisa Slavin
   Contract Specialist
   301.443.1171
   Lisa.Slavin@psc.hhs.gov

2. **Contracting Officer**

   The PSC Contracting Officer is the only individual authorized to modify this order. The Contracting Officer responsible for administrative and contractual issues concerning this task order is:

   Dawn Gresham
   Branch Chief, PSC/SAS/DAM-A

3. **Contracting Officers' Technical Representative Appointment and Authority**

   The name and contact information of the COR assigned to this project is:

   Toby Biswas
   202-205-4440
   Toby.Biswas@acf.hhs.gov

7) Section 1 – Invoice Submission of the Contract Administration section of the base order (pages 13-14) is revised to the following:

**Section 1 – Invoice Submission**

The Contractor shall submit invoices once per month. A complete invoice with all required back-up documentation shall be sent electronically, via email, to:

1. Contract Specialist via DAM mailbox: pscsas.invoices@psc.hhs.gov.*
2. Contracting Officer's Representative (COR): toby.biswas@acf.hhs.gov
3. Financial Management Service (FMS): psc_invoices@psc.hhs.gov.*

* No other non-invoice related documents (i.e. deliverables, reports, balance statements) shall be sent to the DAM and FMS mailboxes. Invoices Only.

CONTINUATION PAGE
GS10F0105N/HHSP233200900316G

per month. The email may have multiple invoices for the contract. Invoices must be in the following formats: PDF, TIFF, or Word. No Excel formats will be accepted. The electronic file cannot contain multiple invoices; example, 10 invoices requires 10 separate files (PDF or TIFF or Word).

Invoices shall be submitted in accordance with the contract terms, i.e. payment schedule, progress payments, partial payments, deliverables, etc.

All calls concerning contract payment shall be directed to the COR.

In accordance with FAR 52.212-4, Contract Terms and Conditions—Commercial Items, a proper invoice must include the following items:
FAR 52.212-4(g) invoice.
(1) The Contractor shall submit an original invoice and three copies (or electronic invoice, if authorized) to the address designated in the contract to receive invoices. An invoice must include:
(i) Name and address of the Contractor;
(ii) Invoice date and number;
(iii) Contract number, contract line item number and, if applicable, the order number;
(iv) Description, quantity, unit of measure, unit price and extended price of the items delivered;
(v) Shipping number and date of shipment, including the bill of lading number and weight of shipment if shipped on Government bill of lading;
(vi) Terms of any discount for prompt payment offered;
(vii) Name and address of official to whom payment is to be sent;
(viii) Name, title, and phone number of person to notify in event of defective invoice; and
(ix) Taxpayer Identification Number (TIN). The Contractor shall include its TIN on the invoice only if required elsewhere in this contract.
(x) Electronic funds transfer (EFT) banking information.
(A) The Contractor shall include EFT banking information on the invoice only if required elsewhere in this contract.
(B) If EFT banking information is not required to be on the invoice, in order for the invoice to be a proper invoice, the Contractor shall have submitted correct EFT banking information in accordance with the applicable solicitation provision, contract clause (e.g., 52.232-33, Payment by Electronic Funds Transfer System for Award Management, or 52.232-34, Payment by Electronic Funds Transfer—Other Than System for Award Management), or applicable agency procedures.
(C) EFT banking information is not required if the Government waived the requirement to pay by EFT.
(2) Invoices will be handled in accordance with the Prompt Payment Act (31 U.S.C. 3903) and Office of Management and Budget (OMB) prompt payment regulations at 5 CFR Part 1315.

CONTINUATION PAGE
GS10F0105N/HHSP233200900316G

Additionally, the FMS requires the contractor to include its Dunn and Bradstreet Number (DUNS) on each invoice.

In accordance with OMB Memorandum, M-11-32, Agencies shall make payments to small businesses as soon as practicable, with the goal of making payments within 15 days of receipt of a proper invoice. If a small business contractor is not paid within this (15 day) accelerated period, the contractor will not be given a late-payment interest penalty. Interest penalties, as prescribed by the Prompt Payment Act, remain unchanged by means of this memorandum. All small businesses shall label all invoices as 'Small Business.'

Additionally, in accordance with OMB Memorandum, M-12-16, all prime contractors are encouraged to disburse funds received from the Federal Government to their small business subcontractors in a prompt manner. To assist prime contractors in expediting contractor payments to small business subcontractors, Agencies shall, to the full extent permitted by law, temporarily establish an earlier, accelerated date for making agency payments to all prime contractors. Consistent with OMB Memorandum M-11-32 above, Agencies shall have a goal of paying all prime contractors within 15 days of receiving proper documentation. In an effort to support small business growth, drive economic activity and job creation, the Contractor is encouraged to accelerate payments to their small business subcontractors.

In accordance with the requirements of the Debt Collection Improvement Act of 1996, all payments under this order will be made by electronic funds transfer (EFT). The Contractor shall provide financial institution information to the Finance Office designated above in accordance with FAR 52.232-33 Payment by Electronic Funds Transfer—System for Award Management.

3) All other terms and conditions of the order remain unchanged by this modification.

AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

| | | | | 1. CONTRACT ID CODE | | PAGE OF PAGES |
|---|---|---|---|---|---|---|
| | | | | | | 1    2 |

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | | 5. PROJECT NO. (if applicable) |
|---|---|---|---|---|
| 0010 | 07/31/2014 | ACF137585 | | |

| 6. ISSUED BY | CODE | DAM | 7. ADMINISTERED BY (if other than Item 6) | CODE | |
|---|---|---|---|---|---|

DHHS/PSC/SAS/DAM
Twinbrook Place, Suite 400
12501 Ardennes Avenue
Rockville MD 20857

8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code)

VERA INSTITUTE OF JUSTICE INC 356370
VERA INSTITUTE OF JUSTICE, INC.
233 BROADWAY FL 12
NEW YORK NY 10279-1299

| 9A. AMENDMENT OF SOLICITATION NO. |
|---|
|  |

9B. DATED (SEE ITEM 11)

| X | 10A. MODIFICATION OF CONTRACT/ORDER NO. |
|---|---|
| | HHSP23320090031SG |

10B. DATED (SEE ITEM 13)
07/31/2009

| CODE | 356370 | FACILITY CODE | |
|---|---|---|---|

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended. Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

| 12. ACCOUNTING AND APPROPRIATION DATA (if required) | Net Increase: | $7,204,096.00 |
|---|---|---|
| See Schedule | | |

13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| CHECK ONE | |
|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| X | FAR 52.217-8 Option to Extend Services (Nov 1999) |
| | D. OTHER (Specify type of modification and authority) |

| E. IMPORTANT:   Contractor   ☐ is not,   ☒ is required to sign this document and return   1   copies to the issuing office. |
|---|

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

Tax ID Number: 13-1941627
DUNS Number: 073299836
Contract Specialist: Linda O'Neil (Linda.Jules-O'Neil@psc.hhs.gov) 301-443-2655)

ACF COR: Toby Biswas (Toby.Biswas@acf.hhs.gov) 202-205-8440)

The purpose of this modification is to extend services under the order for two months through September 30, 2014 at an additional cost of $7,204,718.00. The Period of Performance for the order is hereby revised from August 1, 2013 through July 31, 2014 and revised to August 1, 2014 through September 30, 2014.

Continued ...

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) |
|---|---|
| KAREN GOLDSTEIN   VICE PRESIDENT | ROSANNA BROWNING |

| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | 16C. DATE SIGNED |
|---|---|---|---|
| *(Signature of person authorized to sign)* | 7/31/14 | *(Signature of Contracting Officer)* | 07/31/2014 |

| NSN 7540-01-152-8070 | STANDARD FORM 30 (REV. 10-83) |
|---|---|
| Previous edition unusable | Prescribed by GSA |
| | FAR (48 CFR) 53.243 |

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED GS10F0105N/HHSP233200900316G/0010 | | | | PAGE 2 | OF 2 |
|---|---|---|---|---|---|---|

NAME OF OFFEROR OR CONTRACTOR
VERA INSTITUTE OF JUSTICE INC 356370

| ITEM NO. (A) | SUPPLIES/SERVICES (B) | QUANTITY (C) | UNIT (D) | UNIT PRICE (E) | AMOUNT (F) |
|---|---|---|---|---|---|
| | The total amount obligated is increased by $7,204,096.00 from $39,828,615.00 to $47,032,711.00. | | | | |
| | The total contract value is $47,032,711.00. | | | | |
| | Change Item 7 to read as follows(amount shown is the obligated amount): | | | | |
| 7 | Extend the services under this order for two months through 09/30/2014 | | | | 7,204,096.00 |
| | Delivery Location Code: ACF Admin for Children + Families Administration for Children and Fam 370 L'Enfant Promenade, S.W. Washington DC 20447 US Amount: $7,079,348.00 Accounting Info: ..2013.G99UPR3.25102 Appr. Yr.: 2013 CAN: G99UPR3 Object Class: 25102 Funded: $0.00 | | | | |
| | Delivery: 09/30/2014 Delivery Location Code: ACF ACF Administration for Children and Fam 370 L'Enfant Promenade, S.W. Washington DC 20447 US Amount: $7,204,096.00 Accounting Info: ..2014.G99UPR4.25102 Appr. Yr.: 2014 CAN: G99UPR4 Object Class: 25102 Funded: $7,204,096.00 | | | | |

NSN 7540-01-152-8007

OPTIONAL FORM 336 (4-86)
Sponsored by GSA
FAR (48 CFR) 53.110

217

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | 1. CONTRACT ID CODE | | PAGE OF PAGES | |
|---|---|---|---|---|
| | | | 1 | 2 |

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. (If applicable) |
|---|---|---|---|
| 0011 | 09/30/2014 | ACF141904 | |

| 6. ISSUED BY | CODE | DAM | 7. ADMINISTERED BY (if other than Item 6) | CODE |
|---|---|---|---|---|

DHHS/PSC/SAS/DAM
Twinbrook Place, Suite 400
12501 Ardennes Avenue
Rockville MD 20857

| 8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code) | (x) | 9A. AMENDMENT OF SOLICITATION NO. |
|---|---|---|

VERA INSTITUTE OF JUSTICE INC 356370
VERA INSTITUTE OF JUSTICE, INC.
233 BROADWAY FL 12
NEW YORK NY 10279-1299

9B. DATED (SEE ITEM 11)

x | 10A. MODIFICATION OF CONTRACT/ORDER NO.

GS10F0105N
HHSP23320090003I6G

10B. DATED (SEE ITEM 13)
07/31/2009

| CODE   356370 | FACILITY CODE | |

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

☐ The above numbered solicitation is amended as set forth in item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.
Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

| 12. ACCOUNTING AND APPROPRIATION DATA (If required) | Net Increase: | $3,602,048.00 |
|---|---|---|
| ..2014.G99UPR4.25102 | | |

**13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

CHECK ONE

☐ A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

☐ B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b).

☐ C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:
X   FAR 52.217-8 Option to Extend Services (Nov 1999)

☐ D. OTHER (Specify type of modification and authority)

E. IMPORTANT:   Contractor   ☐ is not.   ☒ is required to sign this document and return _____ 1 _____ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

Tax ID Number:  13-1941627

DUNS Number:  073299836

Contract Specialist: Linda O'Neil (Linda.Jules-O'Neil@psc.hhs.gov; 301-443-2655)

ACF COR: Toby Biswas (Toby.Biswas@acf.hhs.gov; 202-205-4440)

The purpose of this modification is to extend services under the order for one month through October 31, 2014 at an additional cost of $3,602,048.00.  The Period of Performance for the order is hereby revised from August 1, 2013 through September 30, 2014 to August 1, 2013 through October 31, 2014.

Continued ...

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) |
|---|---|
| KAREN GOLDSTEIN   VICE PRESIDENT | ROSANNA BROWNING |

| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | 16C. DATE SIGNED |
|---|---|---|---|
| _(Signature of person authorized to sign)_ | 9/30/14 | _(Signature of Contracting Officer)_ | 09/30/2014 |

NSN 7540-01-152-8070
Previous edition unusable

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

218

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED GS10F0105N/HHSP233200900316G/0011 | | | | PAGE 2 | OF 2 |
|---|---|---|---|---|---|---|

NAME OF OFFEROR OR CONTRACTOR
VERA INSTITUTE OF JUSTICE INC 356370

| ITEM NO. (A) | SUPPLIES/SERVICES (B) | QUANTITY (C) | UNIT (D) | UNIT PRICE (E) | AMOUNT (F) |
|---|---|---|---|---|---|
| | The total amount obligated is increased by $3,602,048.00 from $47,032,711.00 to $50,634,759.00. | | | | |
| | The total contract value is $50,634,759.00. | | | | |
| | Delivery Location Code: ACF | | | | |
| | ACF | | | | |
| | Administration for Children and Fam | | | | |
| | 370 L'Enfant Promenade, S.W. | | | | |
| | Washington DC 20447 US | | | | |
| | Appr. Yr.: 2014 CAN: G990PR4 Object Class: 25102 | | | | |
| | FOB: Destination | | | | |
| | Period of Performance: 08/01/2013 to 10/31/2014 | | | | |
| | Add Item 8 as follows: | | | | |
| 8 | Extend the services under this order for one month through 10/31/2014 | | | | 3,602,048.00 |

NSN 7540-01-152-8067

OPTIONAL FORM 336 (4-86)
Sponsored by GSA
FAR (48 CFR) 53.110

| ~ENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | | 1. CONTRACT ID CODE | | | PAGE  OF PAGES | |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 2. AMENDMENT/MODIFICATION NO. 0012 | 3. EFFECTIVE DATE 10/31/2014 | 4. REQUISITION/PURCHASE REQ. NO. ACF144946 | | | 5. PROJECT NO. (If applicable) | |
| 6. ISSUED BY                CODE | DAM | 7. ADMINISTERED BY (If other than item 6) | | CODE | | |
| DHHS/PSC/SAS/DAM Twinbrook Place, Suite 400 12501 Ardennes Avenue Rockville MD 20857 | | | | | | |

8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code)

VERA INSTITUTE OF JUSTICE INC 356370
VERA INSTITUTE OF JUSTICE, INC.
233 BROADWAY FL 12
NEW YORK NY 10279-1299

| (x) | | |
|---|---|---|
| (x) | 9A. AMENDMENT OF SOLICITATION NO. | |
| | 9B. DATED (SEE ITEM 11) | |
| x | 10A. MODIFICATION OF CONTRACT/ORDER NO. GS10F0105N HHSP233200900316G | |
| | 10B. DATED (SEE ITEM 13) 07/31/2009 | |

CODE   356370          FACILITY CODE

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.
Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)
2015.G99UPR5.25102                                    Net Increase:                        $1,820,000.00

13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| CHECK ONE | | |
|---|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. | |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). | |
| X | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: FAR 52.217-8 Option to Extend Services (Nov 1999) | |
| | D. OTHER (Specify type of modification and authority) | |

E. IMPORTANT:   Contractor   ☐ is not.   ☒ is required to sign this document and return _____1_____ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

Tax ID Number:  13-1941627
DUNS Number:  073299836
Contract Specialist: Linda O'Neil (Linda.Juliss-O'Neil@psc.hhs.gov; 301-443-2655)

ACF COR: Toby Biswas (Toby.Biswas@acf.hhs.gov; 202-205-4440)

The purpose of this modification is to extend services under the order for three (3)months through January 31, 2015, adding additional funds in the amount of $1,820,000.00. The Period of Performance for the order is hereby revised from August 1, 2013 through October 31, 2014 to August 1, 2013 through January 31, 2015.

Continued ...

Except as provided herein, all terms and conditions of the document referenced in item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) | |
|---|---|---|
| Karen Goldstein, Vice President/ General Counsel | ROSANNA BROWNING | |
| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | 16C. DATE SIGNED |
| (Signature of person authorized to sign) | 10/31/2014 | (Signature of Contracting Officer) | 10/31/2014 |

NSN 7540-01-182-80?0
Previous edition unusable

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

220

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED GS10F0105N/HHSP233200900316G/0012 | | | | | PAGE 2 | OF 2 |
|---|---|---|---|---|---|---|---|

NAME OF OFFEROR OR CONTRACTOR
VERA INSTITUTE OF JUSTICE INC 356370

| ITEM NO. (A) | SUPPLIES/SERVICES (B) | QUANTITY (C) | UNIT (D) | UNIT PRICE (E) | AMOUNT (F) |
|---|---|---|---|---|---|
| | The total amount obligated is increased by $1,820,000.00 from $50,634,759.00 to $52,454,759.00. | | | | |
| | The total contract value is $52,454,759.00. | | | | |
| | Delivery Location Code: ACF Admin for Children + Families Administration for Children and Fam 370 L'Enfant Promenade, S.W. Washington DC 20447 US | | | | |
| | Appr. Yr.: 2015 CAN: G99UPR5 Object Class: 25102 FOB: Destination Period of Performance: 08/01/2013 to 01/31/2015 | | | | |
| | Add Item 9 as follows: | | | | |
| 9 | Funds Vera extension thru Jan 31  2015 | | | | 1,820,000.00 |

SN 7540-01-152-8067

OPTIONAL FORM 336 (4-86)
Sponsored by GSA
FAR (48 CFR) 53.110

221