1

2   CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
    Carlos Holguín (Cal. Bar No. 90754)
3   Peter A. Schey (Cal. Bar No. 58232)
    256 South Occidental Boulevard
4   Los Angeles, CA  90057
    Telephone: (213) 388-8693
5   Email: crholguin@centerforhumanrights.org
6           pschey@centerforhumanrights.org

7
    HOLLY S. COOPER
8   Director, Immigration Law Clinic
    University of California Davis School of Law
9   One Shields Ave. TB 30
    Davis, CA 95616
10  Telephone: (530) 754-4833
    Email: hscooper@ucdavis.edu
11

12
    *Of counsel:*
13  YOUTH LAW CENTER
    Alice Bussiere (Cal. Bar No. 114680)
14  Virginia Corrigan (Cal. Bar No. 292035)
    200 Pine Street, Suite 300
15  San Francisco, CA 94104
    Telephone: (415) 543-3379
16

17

18  *Attorneys for plaintiffs*
19                    UNITED STATES DISTRICT COURT

20          CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

21  | Jenny Lisette Flores, *et al.*, | Case No. CV 85-4544-DMG (AGRx) |
22  | | |
    | Plaintiffs, | REPLY TO OPPOSITION TO MOTION TO |
23  | | ENFORCE SETTLEMENT |
    | v. | |
24  | | Hearing:   September 16, 2016 |
25  | Jeh Johnson, Secretary, Dept. of | Time:       10:00 a.m. |
    | Homeland Security, *et al.*, | Room:       Spring St. Courtroom 7 |
26  | | |
    | Defendants. | |
27

28

OUTLINE OF CONTENTS

I      Introduction ..................................................................................... 1

II     Neither the HSA nor the TVPRA bars ORR from affording detained
       juveniles bond hearings. ................................................................ 3

       A     ORR regularly confines class members as dangerous or flight-
             risks, and nothing in logic, experience, or the TVPRA makes
             immigration judges' reviewing such determinations
             "impermissible." ...................................................................... 3

             1    Flight risk and dangerousness remain integral to ORR's
                  custody of unaccompanied class members. .......................... 5

             2    HHS has no peremptory power to prescribe what process
                  is due children whom ORR refuses to release. ..................... 7

       B     ORR's perfunctory detention protocol is palpably inconsistent
             with its professed concern for placing class members in accord
             with their "best possible interest." ........................................... 9

III    The instant motion proposes to save vulnerable children from on-
       going and future injury; it is accordingly wholly timely. ............... 14

IV     Conclusion ...................................................................................... 20

TABLE OF AUTHORITIES

**Cases**

*Apache Survival Coalition v. United States*, 21 F.3d 895 (9th Cir. 1994) ............... 19

*Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011) .................................................. 9

*EEOC v. Massey-Ferguson, Inc.*, 622 F.2d 271 (7th Cir. 1980) ............................... 18

*Equal Employment Opportunity Commission v. Radiator Specialty Co.*,
    610 F.2d 178 (4th Cir. 1979) ............................................................................ 18

*Flores v. Lynch*, _ F.3d _, 2016 U.S. App. LEXIS 12439 (9th Cir. 2016) ................... 14

*Havens Realty Corp. v. Coleman,* 455 U.S. 363, 102 S. Ct. 1114, 71 L.
    Ed. 2d 214 (1982) ............................................................................................. 15

*In re Beaty*, 306 F.3d 914 (9th Cir. 2002) ................................................................ 17

*In re Gault*, 387 U.S. 1, 87 S. Ct. 1428; 18 L. Ed. 2d 527 (1967) ............................ 12

*In Re: Aguilar-Ramirez*, A206 775 662 (BIA 2016) ................................................. 15

*Matter of A--*, 2005 Immig. Rptr. LEXIS 54924 (BIA 2005) ..................................... 5

*Matter of Patel*, 15 I. & N. Dec. 666 (BIA 1976) ...................................................... 6

*Orantes-Hernandez v. Gonzales*, 2006 U.S. Dist. LEXIS 95388 (C.D. Cal.
    2006) ................................................................................................................ 20

*Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*,
    324 U.S. 806, 89 L. Ed. 1381, 65 S. Ct. 993 (1945) ......................................... 16

*Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367; 112 S. Ct. 748;
    116 L. Ed. 2d 867 (1992) .................................................................................. 20

*United States v. Dunkel*, 927 F.2d 955 (7th Cir. 1991) ............................................ 17

*United States v. ITT Continental Baking Co.*, 420 U.S. 223; 95 S. Ct.
    926; 43 L. Ed. 2d 148 (1975) ............................................................................ 16

**Statutes and regulations**

6 U.S.C. § 279 ................................................................................ 4

6 U.S.C. § 279(b)(2) ....................................................................... 6

8 U.S.C. § 1232(c)(2) ...................................................................... 7

8 C.F.R. § 1003.1(h) (2016) ........................................................... 1

Homeland Security Act of 2002, Pub. L. 107-296, , 116 Stat. 2135 ................*passim*

William Wilberforce Trafficking Victims Protection Reauthorization
   Act of 2008, 110 Pub. L. 457, 122 Stat. 5044 ...............................*passim*

**Other authority**

2A N. Singer, Sutherland On Statutory Construction § 46.07 (6th Ed.
   2000) ........................................................................................ 8

Barry Holman & Jason Ziedenberg, *The Dangers of Detention: The
   Impact of Incarcerating Youth in Detention and Other Secure
   Facilities* (Justice Policy Institute, ed.) .................................... 11

Institute of Judicial Administration & American Bar Association,
   *Juvenile Justice Standards Annotated: A Balanced Approach* (1996) ................ 11

National Council of Juvenile and Family Court Judges, *Resource
   Guidelines: Improving Court Practice in Child Abuse & Neglect
   Cases* 30 (1995) ....................................................................... 10

Staff Report, U.S. Senate Permanent Subcommittee on
   Investigations, *Protecting Unaccompanied  Alien Children from
   Trafficking and Other Abuses*, January 2016 ................................ 17, 19

I       INTRODUCTION

Defendants fail to point to anything in Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135 ("HSA"), that trumps ¶ 24A of the Settlement. To the contrary, they all but concede that until June of this year the Board of Immigration Appeals (BIA) had affirmed immigration judges' jurisdiction to review ORR's detaining class members. Opposition to Motion to Enforce, Dkt. 247, at n.10 ("Opposition"). Defendants make no pretense of having sought review of those rulings. *See* 8 C.F.R. § 1003.1(h) (2016) (BIA decisions subject to review by Attorney General).

As for the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, 110 Pub. L. 457, 122 Stat. 5044 ("TVPRA"), reading defendants' opposition one would expect something like this in the statute's text: "HHS's decisions to detain unaccompanied minors in lieu of releasing them to their parents or other reputable custodians shall be final and not subject to review by any other authority." The TVPRA, of course, contains no such language, nor anything remotely close.

What defendants' statutory argument boils down to is this: because the TVPRA "cemented" HHS's authority over the custody of unaccompanied class members, ORR now has *carte blanche* to detain unaccompanied class members without hearing, never mind that in both the TVPRA and the HSA Congress

1

explicitly saved class members' right under the Settlement to a bond redetermination. The Court should reject defendants' bid to distend the term "custody" to grant ORR extravagant prerogative over children's lives and liberty.

The Court should likewise reject HHS's bid for exclusive power to decide what process is due class members ORR wishes to detain indefinitely. The TVPRA nowhere grants HHS the unbridled power to prescribe release procedures defendants claim.

Nor should the Court decline to enforce ¶ 24A on the ground ORR is an inerrant and wholly benevolent child welfare agency. The agency's *ad hoc* protocol for deciding whether a minor should be detained would be unrecognizable to anyone familiar with accepted child welfare and juvenile justice standards, which uniformly counsel transparency and procedural fairness in decisions to detain children.

And, of course, ORR is neither infallible nor invariably benevolent. The agency rather manifests a penchant for leaving detained, traumatized youth to twist in the wind, puzzling over why they have been refused release and with no way of knowing when the hardships of imprisonment may end.[1]

───────────────────

[1] *E.g.*, Declaration of Hector Estiven Boteo, March 1, 2016, Exhibit 12-ORR ("Boteo") ("In Yolo, we live in a real prison. The food, the program, the life, the routine: everything is a penitentiary. They treat us badly, like delinquents. The

1    This Court should order ORR to comply with ¶ 24A forthwith.

2

3    II    NEITHER THE HSA NOR THE TVPRA BARS ORR FROM AFFORDING DETAINED

4          JUVENILES BOND HEARINGS.

5          **A      ORR regularly confines class members as dangerous or flight-**

6                  **risks, and nothing in logic, experience, or the TVPRA makes**

7

8                  **immigration judges' reviewing such determinations**

9                  **"impermissible."**

10

11         Nowhere does the text of the TVPRA compel a conclusion that affording

12   unaccompanied children bond hearings is "no longer possible or even feasible..."

13

14   Opposition at 1-2. To the contrary, as plaintiffs established in their opening brief,

15   in both the TVPRA and the HSA Congress took pains to safeguard class members'

16   rights under the Settlement against implied repeal.

17

18         The best defendants manage in reply: "The savings clause, in itself, should

19   not be viewed as rigidly freezing in place provisions aimed at the now defunct INS,

20

21   or as creating free-standing authority for actions Congress did not authorize in

22   either statute." Opposition at n.11.

23

24         Defendants' point should give scant pause. Of course the HSA's and TVPRA's

25   savings clauses do not create "free-standing authority for actions," but they do

26   _____

27   entire time, we live locked up. They don't grab us to go to the park, the library, or
     anywhere normal. They lock us up in the cells every night, to sleep on benches
28   made out of cement with mattresses.").

                                        3

preserve rights and benefits of the Settlement from implied repeal. To the extent defendants contend that explicit savings clauses are not enough to preserve class members' settlement rights, they argue contrary to law. As this Court held, "'A party seeking modification of a consent decree may meet its initial burden by showing ... a significant change ... in law.'" *The change in the law must be so significant that complying with both statute and a prior agreement would be 'impermissible.'"* Order re: Plaintiffs' Motion to Enforce Settlement, etc., July 24, 2015 (Dkt. #177), at 20 (citations omitted; emphasis added) (2015 Enforcement Order).

Likewise unavailing is defendants' argument that the TVPRA's "cementing" ORR's authority over the "custody" of unaccompanied class members vitiates ¶ 24A.

Defendants concede that prior to the HSA the Immigration and Naturalization Service ("INS") "was responsible for the care *and custody* of all UACs, and had the authority to make all decisions regarding their custody and release." Opposition at 10 (emphasis added). Nor do defendants dispute that the HSA transferred to ORR *all* the functions "with respect to the care of unaccompanied alien children that were vested by statute in, or performed by, the [INS] ..." 6 U.S.C. § 279(a).

The TVPRA's affirming HHS's authority over the custody of unaccompanied children, therefore, is hardly the game-changer defendants conjure: the agency already had such authority, yet unaccompanied class members were entitled to bond hearings regardless. *Matter of A--*, 2005 Immig. Rptr. LEXIS 54924 (BIA 2005), Exhibit 7-ORR.

Defendants concede almost as much in characterizing the TVPRA as having "cemented HHS's full responsibility for not just care, but also custody," of unaccompanied class members. Opposition at n.7. Obviously, the TVPRA's "cementing" the authority ORR received in 2002 worked no qualitative change and accordingly could not have rendered the agency's complying with ¶ 24A "impermissible."

1    Flight risk and dangerousness remain integral to ORR's custody of unaccompanied class members.

Defendants next suggest that immigration judges' reviewing unaccompanied class members' dangerousness or likelihood to abscond is inherently incompatible with ORR's "child-welfare-related function...," Opposition at n.11, a function they characterize as hermetically apart from ICE's job of deporting them. Yet ORR's disavowal of any interest in detaining unaccompanied class members on grounds of flight-risk or dangerousness simply does not square with what the HSA and TVPRA actually prescribe.

5

The HSA requires ORR to "consult with [Immigration and Customs Enforcement] to ensure that ... unaccompanied alien children ... (i) are likely to appear for all hearings or proceedings ... and (iii) are placed in a setting in which they are not likely to pose a danger to themselves or others..." 6 U.S.C. § 279(b)(2).

The TVPRA likewise affirms ORR's duty to consult ICE and provides that ORR may "consider danger to self, danger to the community, and risk of flight" before releasing a class member. 8 U.S.C. § 1232(c)(2)(A).

ORR's claim that its "custody determinations are designed to further [nothing] other than the best interests of the child," Opposition at n.8, crumbles in light of what the TVPRA and HSA actually say.[2]

Immigration judges' reviewing initial determinations regarding flight-risk and dangerousness is hardly novel; indeed, they have decades of expertise reviewing such grounds for continued detention. *E.g., Matter of Patel*, 15 I. & N. Dec. 666 (BIA 1976).[3] In this regard, ORR is the relative novice, yet it insists upon

---

[2] Nor is there any doubt that ORR *does* refuse to release class members because it thinks them dangerous or flight-risks. *E.g.*, Exhibit 17-ORR (class member refused release because he "poses a safety risk to the community."); Declaration of Bryan Ortiz, January 12, 2016, Exhibit 14-ORR, ¶ 15 (same).

[3] Nothing in an immigration judge's findings regarding dangerousness or flight-risk would necessarily require ORR to release. To the extent ORR has grounds to

REPLY TO OPPOSITION TO MOTION TO ENFORCE SETTLEMENT
CV 85-4544-DMG (AGRx)

no less than *carte blanche* to confine unaccompanied children without affording

them anything close to the procedural fairness and transparency both

accompanied class members and adults enjoy before immigration judges.

Paragraph 24A obliges defendants to provide all class members a hearing on

whether they should be detained as flight-risks or dangerous. Nothing in logic,

experience, or the TVPRA warrants stripping unaccompanied children alone of that

basic protection.

> 2      HHS has no peremptory power to prescribe what process is
>        due children whom ORR refuses to release.

Defendants' final statutory argument—that 8 U.S.C. § 1232(c)(2) gives HHS

absolute authority to ordain what process is due children ORR detains, Opposition

at 9—is likewise meritless.

As concerns HHS authority to prescribe procedures, § 1232(c)(2) provides in

pertinent part: "The *placement of a child in a secure facility* shall be reviewed, at a

minimum, on a monthly basis, *in accordance with procedures prescribed by the*

---

conclude that an available custodian would harm or neglect a minor, it could
retain a class member in custody regardless. *Matter of A--*, *supra*; Settlement ¶ 11
(defendants need not release a minor to anyone who might "harm or neglect the
minor...").

Flight-risk and dangerousness aside, ORR would be obliged to search out other
qualified custodians to whom it could safely release the class member. Settlement
¶ 18.

*Secretary*, to determine if such placement remains warranted." *Id*. (emphasis added). Paragraph 24A, in contrast, concerns *release*, not placement of class members in secure facilities.

Section 1232(c)(2), therefore, not only fails to help defendants, it does quite the opposite. In granting HHS explicit authority decide procedures for secure placement reviews, Congress implicitly denied it like prerogative to prescribe procedures for children's release. 2A N. Singer, SUTHERLAND ON STATUTORY CONSTRUCTION § 46.07, at 202-04 (6th Ed. 2000) ("Where one section of a statute contains a particular provision, omission of the same provision from a similar section is significant to show different legislative intent for the two section[s].").

In sum, the vast power defendants would tease from a single word— "custody"—is astonishing. Not only do they imagine the word as giving the *less qualified* agency final say on whether the *most defenseless* children should be confined as dangerous or flight-risks, but also *carte blanche* to do so pursuant to whatsoever procedures HHS condescends to give. This Court should not countenance defendants' bid for such inordinate power over children's lives and personal liberty.

**B**     **ORR's perfunctory detention protocol is palpably inconsistent with its professed concern for placing class members in accord with their "best possible interest."**

Defendants next grossly mischaracterize plaintiffs' discussion regarding ORR's release protocol as asserting independent "constitutional claims" nowhere grounded in the Settlement. Opposition at 16-18.

Plaintiffs' actual reasons for drawing the Court's attention to the dearth of fairness and transparency in ORR's custody decisions are two: First, construing the TVPRA as granting ORR unbridled power to detain unaccompanied children pursuant to relentlessly perfunctory procedures would raise superfluous constitutional questions contrary to the rule of "constitutional avoidance," *Diouf v. Napolitano*, 634 F.3d 1081, 1086 (9th Cir. 2011); second, ORR's *ad hoc* detention protocol so little resembles a bond hearing that defendants could not plausibly contend they are in substantial compliance with ¶ 24A.

Defendants' opposition, however, raises a new reason for the Court to examine ORR's *ad hoc* detention protocol: As contrasted with accepted child welfare and juvenile justice standards, ORR's procedures for release are so profoundly aberrant as to set it a world apart— a world in which, much to the detriment of detained children, *neither* immigration *nor* child welfare standards apply.

REPLY TO OPPOSITION TO MOTION TO ENFORCE
SETTLEMENT
CV 85-4544-DMG (AGRx)

In modern child welfare and juvenile justice systems, youth typically enjoy comprehensive procedural protections when they are detained. Such procedures are widely accepted as required both to save children from needless confinement and to ensure that decisions government purports to make in a child's best interest actually *are*.

It is generally accepted in the juvenile justice and child welfare realms that when a child is detained—that is, removed from the custody of his or her parent and placed in the state's custody—a hearing must occur promptly to determine the need for continued detention. Guidelines of the National Council of Juvenile and Family Court Judges (NCJFCJ), widely followed in all states, require that a "preliminary protective hearing" "must take place promptly" – in most states, within one two three days of removal. National Council of Juvenile and Family Court Judges, *Resource Guidelines: Improving Court Practice in Child Abuse & Neglect Cases* 30 (1995), *available at www.ncjfcj.org/sites/default/files/ resguide_0.pdf* ("NCJFCJ Guidelines").

In the juvenile justice context, the American Bar Association's Juvenile Justice Standards similarly require that upon a child's being detained, juvenile authorities must request a hearing before a judge or referee no later than 24 hours following the juvenile's arrival at a detention facility, and further, that the juvenile court should hear such a petition no more than 24 hours after that.

10

Institute of Judicial Administration & American Bar Association, *Juvenile Justice Standards Annotated: A Balanced Approach* (1996), at 131, 134, *available at* www.ncjrs.gov/pdffiles1/ojjdp/166773.pdf ("ABA Standards").

ORR, of course, not only fails to provide children detention hearings within any time certain, it fails to give them a hearing at all. ORR's policies permit class members to languish in detention indefinitely without an opportunity to be heard. *See, e.g.,* Affidavit of Lorilei Williams, August 5, 2016, Exhibit 10-ORR, ¶ 8 ("Williams") (ORR "affords detained youth little or no opportunity to examine or contest the grounds for continuing to detain them or house them in less restrictive settings"); *id*. ¶ 17 (ORR provides "no written information regarding when or if it will reach a decision on whether to detain or release a child"); Declaration of Megan Stuart, July 29, 2016, Exhibit 11-ORR, ¶ 12 ("Stuart") (same).

ORR's protocol is inherently incompatible with protecting a child's best interests. It has long been recognized that even short periods of detention are inimical to the well-being of children and youth. *See generally* B. Holman & J. Ziedenberg, *The Dangers of Detention: The Impact of Incarcerating Youth in Detention and Other Secure Facilities* (Justice Policy Institute, ed.) *available at* www.justicepolicy.org/images/upload/06-11_rep_dangersofdetention_jj.pdf.

Not surprisingly, advocates and class members have reported the damage prolonged detention causes youth, particularly when ORR fails to tell them when

11

or if they will ever be released. Williams ¶ 18 (prolonged detention without the prospect of release has "deleterious effects" on detained clients, including "profound hopelessness and despair"); Boteo ¶ 18 (class member reports feeling "desperate"); Declaration of Bryan Ortiz Vela, January 14, 2015, Exhibit 15-ORR, ¶ 18 (after being refused release "stress was killing" class member, who "could not even smile anymore," and "did not care about [his] life anymore").

Competent child welfare and juvenile justice standards further prescribe the basic procedural protections of a fair and effective detention hearing. To begin, a child must be given notice of the hearing and of the reasons the state has taken him or her into custody. NCJFCJ Guidelines at 36; ABA Standards at 134; *In re Gault*, 387 U.S. 1, 34, 87 S. Ct. 1428; 18 L. Ed. 2d 527 (1967). Child and parent must have a full opportunity to present and confront evidence relevant to custodial status. NCJFCJ Guidelines at 30-35; ABA Standards at 134-35.

A judge or other neutral decision maker must preside over the hearing. NCJFCJ Guidelines at 33; ABA Standards at 131. Minors subject to continued detention after a hearing must be provided with a written explanation of the reasons for continued detention. NCJFC Guidelines at 40-41; ABA Standards at 135-36.

Since ORR fails provide detained children a hearing at all, these critical protections are necessarily absent. Nor are the procedures posted by ORR in any

way equivalent to those considered essential in modern child welfare and juvenile justice systems.

As appears in plaintiffs' opening brief, under ORR's detention protocol class members receive no advance notice of the agency's reasons for refusing release, nor any right to examine, explain, or rebut whatever evidence ORR believes justifies their continued detention. ORR's policy nowhere requires that a judge or or other neutral adjudicator review its initial detention decisions. As regards administrative appeal, ORR allows parents—but no other available custodians or detained children themselves—to write to the ACF Assistant Secretary if they object to the continued detention of their children.

In practice, ORR often fails to adhere even to its informal detention protocol. Class members and their lawyers report that ORR fails to furnish detained children, their parents and guardians with a written explanation for refusing to release children from secure confinement. *See* Williams ¶¶ 12, 15, 17 (ORR provides class members and their families no written information about the reasons that class members are housed in restrictive facilities and describing cases); Stuart ¶ 12, 18, 19 (ORR provides no information of reasons for placement in secure facility or opportunity to examine, contest, or rebut evidence justifying secure placement). These deficiencies in ORR's policy cannot help but result in arbitrary decisions and needless detention.

In sum, ORR's protocol appears concerned far more with its own convenience than with truly serving children's best interests, and as such is entirely incompatible with defendants' professed role as an infallible and benevolent child welfare agency.

III     THE INSTANT MOTION PROPOSES TO SAVE VULNERABLE CHILDREN FROM ON-GOING AND FUTURE INJURY; IT IS ACCORDINGLY WHOLLY TIMELY.

Defendants lastly argue that the instant motion should be denied because plaintiffs have unreasonably delayed bringing it. Their argument is readily quashed.[4]

First, the instant motion does not seek redress for stale violations of ¶ 24A, but rather to save vulnerable children—untold numbers of whom have not yet come into ORR custody—from *future* injury. ORR breaches the Settlement anew

_____

[4] Defendants' present "delay" argument is much of a piece with the argument ICE repeatedly offered in defense of its placing accompanied class members in secure unlicensed facilities. *See, e.g.*, Brief for Appellants, *Flores v. Lynch*, No. 15-56434 (9th Cir.), Exhibit 19-ORR, at 19, 47-49 ("Berks has been in operation, and has housed accompanied children ... since 2001... Nonetheless, until this action, Plaintiffs never challenged the detention of minors with their parents at Berks as violating the Agreement.").

Defendants' argument failed to earn so much as a mention in the Ninth Circuit's analysis affirming that the Settlement requires ICE to house the general population of accompanied class members in licensed facilities. *Flores v. Lynch*, _ F.3d _, 2016 U.S. App. LEXIS 12439 (9th Cir. 2016). It merits similarly short shrift here.

each time it refuses to release a class member without affording him or her a meaningful opportunity to be heard. *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 380-81, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982) (where violation begins outside the limitations period but continues into the limitations period, action timely if filed within the required limitations period as measured from "*the last asserted occurrence of that practice.*" (emphasis added)); *cf., Romano v. Rockwell Internat., Inc.*, 14 Cal.4th 479, 491; 59 Cal.Rptr. 2d 20; 926 P.2d 1114 (1996) (limitations period does not start upon anticipatory breach of contract; "under established principles [plaintiff] could elect not to bring suit immediately, but instead await actual [breach]."). The instant motion is clearly timely.

Second, defendants concede that the BIA held that immigration judges lack jurisdiction to review ORR's custody decisions for the first time on June 18, 2016. Opposition at n.10. Until then, by all appearances the BIA offered a viable administrative remedy for class members denied bond hearings. *In Re: Aguilar-Ramirez*, A206 775 662 (BIA 2016), Exhibit 3-ORR.

Third, the uncontroverted evidence establishes that ORR has taken pains to hobble legal aid lawyers who represent indigent class members—as a practical matter, detained children's only real source of legal representation—from challenging its release decisions or procedures. Williams ¶ 16 (legal services lawyer formerly funded by ORR through Vera Institute "told explicitly that we

REPLY TO OPPOSITION TO MOTION TO ENFORCE SETTLEMENT
CV 85-4544-DMG (AGRx)

could not take legal action against ORR because our Vera Institute funding to help detained children would be at risk"); Stuart ¶¶ 22-24 (same).

If defendants have suffered from any delay in plaintiffs' suing to end their on-going breach of ¶ 24A, they have only ORR's efforts to silence class members' lawyers to blame. Declaration of Carlos Holguín, August 31, 2016, Exhibit 18-ORR, ¶ 3 ("Holguín"). ORR's seeking to handcuff children's lawyers alone suffices to bar its resort to equitable defense. *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 814, 89 L. Ed. 1381, 65 S. Ct. 993 (1945) ("he who comes into equity must come with clean hands.").

Fourth, *defendants*—not plaintiffs—were obliged to ask this Court to reform the Settlement if they believed their complying with ¶ 24A impermissible in the wake of the TVPRA. *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 236-37; 95 S. Ct. 926; 43 L. Ed. 2d 148 (1975); *United States v. Atlantic Refining Co.*, 360 U.S. 19, 23; 79 S. Ct. 944; 3 L. Ed. 2d 1054 (1959) (that government's interpretation of consent decree might better accord with statute would "not warrant our substantially changing the terms of a decree … without any adjudication of the issues.").

Defendants instead took it upon themselves to violate ¶ 24A for howsoever long it might take plaintiffs to win remediation. Again, defendants may not resort

to equity when they themselves have flaunted their legal obligation to request modification of the Settlement. *Precision Instrument Mfg. Co., supra.*

Fifth, as the above discussion of the TVPRA has made abundantly clear, nothing in the enactment placed plaintiffs on notice that defendants would take it upon themselves to ignore ¶ 24A. It is unreasonable to expect class counsel to act "like pigs, hunting for truffles" in statutory text, *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991), attempting to divine whether some innocuous word or other might rouse defendants to shirk their long-standing obligations. And, of course, defendants *never* bothered to notify plaintiffs' counsel they would ignore ¶ 24A, Holguín ¶ 2, despite the Settlement's enjoining them to "provide to Plaintiffs' counsel ... each INS policy or instruction issued to INS employees regarding the implementation of this Agreement," Settlement ¶ 29.[5]

Finally, "laches is not a doctrine concerned solely with timing. Rather, it is primarily concerned with prejudice." *In re Beaty*, 306 F.3d 914, 924 (9th Cir. 2002). Even assuming, *arguendo*, plaintiffs were to have unreasonably delayed bringing

_____

[5] Remarkably, ORR never saw fit to post its nominal release procedure to the internet until January 2015. Staff Report, U.S. Senate Permanent Subcommittee on Investigations, *Protecting Unaccompanied Alien Children from Trafficking and Other Abuses*, January 2016, at 26, *available at* www.hsgac.senate.gov/download/majority-and-minority-staff-report_-protecting-unaccompanied-alien-children-from-trafficking-and-other-abuses-the-role-of-the-office-of-refugee-resettlement (last visited August 9, 2016) ("Senate Staff Report").

REPLY TO OPPOSITION TO MOTION TO ENFORCE SETTLEMENT
CV 85-4544-DMG (AGRx)

the instant motion, defendants must demonstrate they suffered substantial

prejudice as a result. *EEOC v. Massey-Ferguson, Inc.*, 622 F.2d 271, 275-76 (7th Cir.

1980). Generalized harm from the mere passage of time does not amount to a

showing of prejudice. *Equal Employment Opportunity Commission v. Radiator*

*Specialty Co.*, 610 F.2d 178, 183 (4th Cir. 1979).

Defendants' complaining that ORR's having enjoyed free rein to violate ¶

24A prejudices them borders on the preposterous. Defendants suggest that ORR

would not have wasted "significant administrative resources" developing and

posting its *ad hoc* release procedure to the internet had it only known plaintiffs

would object to denying detained children bond hearings. Opposition at 21. The

Staff Report of U.S. Senate Permanent Subcommittee on Investigations provides

as good an answer as any to defendants' claim:

> ORR's policies are kept and revised in an ad hoc manner. ORR maintains a
>
> "Policy Guide" on its website that provides general guidance on ... "Safe and
>
> Timely Release from ORR Care," ... The guidance has existed in draft form
>
> since 2006, but was not made available on the Internet until January 30,
>
> 2015. ...
>
> The Policy Guide is constantly being revised. ...Under its current practice,
>
> *ORR can make major changes to its placement procedures without notice to*
>
> *the public, care providers, or other interested parties*.

*Setting governmental policy on the fly*—without basic public notice or even a clear record of revisions to that policy—is *inconsistent with the accountability and transparency that should be expected of every administrative agency*.

Senate Staff Report at 26 (emphasis added).

Accepting defendants' claim that ORR expended "significant administrative resources" prescribing procedure "on the fly" demands extravagant credulity. If anything, plaintiffs' forbearance only benefitted defendants, allowing ORR to breach the Settlement with impunity until now. That is hardly the kind of prejudice equity demands; indeed, it is no prejudice at all. *Grand Canyon Trust v. Tucson Elec. Power Co.*, 391 F.3d 979, 988 (9th Cir. 2004) ("We do not see how this delay prejudiced Tucson Electric. Rather, it appears that Grand Canyon's delay worked to the benefit of Tucson Electric because it allowed Tucson Electric the opportunity to recover some or all of its investment in Springerville Units 1 and 2 before this suit was filed.").[6]

---

[6] Even if defendants' claims of prejudice were at all credible, applying laches to deny children fundamental fairness would remain disfavored. *Apache Survival Coalition v. United States*, 21 F.3d 895, 905-06 (9th Cir. 1994) (laches "must be invoked sparingly in suits brought to vindicate the public interest." (internal quotation marks and citations omitted)).

IV     CONCLUSION

Defendants do not come close to carrying their burden of establishing that ORR's complying with § 24A is impermissible. Nor have they raised any plausible equitable defense to the Court's granting the instant motion.

If defendants believe the TVPRA or any other enactment bars their complying fully with the Settlement, they are free to negotiate an appropriate modification with plaintiffs; that failing, they may move this Court to harmonize the agreement with the statutory change.

In either case, class members are entitled to the benefit of as much of the parties' bargain as possible. *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 391; 112 S. Ct. 748; 116 L. Ed. 2d 867 (1992) (where "changed circumstances warrant a modification in a consent decree, ... modification [must be] *tailored to resolve the problems created by the change in circumstances*." (emphasis added)); *Orantes-Hernandez v. Gonzales*, 2006 U.S. Dist. LEXIS 95388, 13-26 (C.D. Cal. 2006) (same).

The law simply does not permit defendants to excise provisions of the Settlement wholesale merely because they unilaterally imagine them passé.

20

1     For the foregoing reasons, the Court should grant this motion and order

2

3   ORR to comply with ¶ 24A forthwith.

4   Dated: September 1, 2016.                Respectfully submitted,
                                             Center for Human Rights &
5                                            Constitutional Law
                                             Carlos Holguín
6                                            Peter A. Schey
7

8                                            Holly Cooper
9                                            University of California Davis School of
                                             Law
10

11                                           Youth Law Center
                                             Alice Bussiere
12                                           Virginia Corrigan
13

14                                            /s/ Carlos Holguín
                                             _____
15

16                                           /s/ Virginia Corrigan
                                             _____
17

18

19

20

21

22

23

24

25

26

27

28