BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
Civil Division
LEON FRESCO
Deputy Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director, District Court Section
Office of Immigration Litigation
SARAH B. FABIAN
Senior Litigation Counsel, District Court Section
Office of Immigration Litigation
     P.O. Box 868, Ben Franklin Station
     Washington, D.C. 20044
     Tel:  (202) 532-4824
     Fax:  (202) 305-7000
     Email:  sarah.b.fabian@usdoj.gov

Attorneys for Defendants

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY LISETTE FLORES; *et al.*, | ) Case No. CV 85-4544 |
| | ) |
|     Plaintiffs, | ) **DEFENDANTS' SUPPLEMENTAL** |
| | ) **RESPONSE IN OPPOSITION TO** |
|     v. | ) **PLAINTIFFS' MOTION TO** |
| | ) **ENFORCE SETTLEMENT AND** |
| LORETTA E. LYNCH, Attorney | ) **APPOINT A SPECIAL MONITOR** |
| General of the United States; *et al.,* | ) |
| | ) Hearing Date:  October 6, 2016 |
|     Defendants. | ) Time: 10:00am |
| | ) Dept: Courtroom 7, Los Angeles - Spring |
| | ) Street Courthouse |

## **<u>TABLE OF CONTENTS</u>**

I.      INTRODUCTION…………………………………………………..1

II.     ARGUMENT……………………………………………………..6

        A. The Court Should Not Impose the Very Severe Sanction of
           Appointing A Special Monitor Where Defendants Are Complying
           with this Court's Orders, And With the Explicit and Unambiguous
           Terms of the Agreement Itself……………………………………6

        B. The Agreement Does Not Require CBP To Provide Sleeping
           Accommodations In Its Facilities…………………………………8

        C. Individuals In ICE Family Residential Centers Are Lawfully Detained
           Under the Immigration and Nationality Act………………………11

III.    CONCLUSION…………………………………………………..17

# TABLE OF AUTHORITIES

## CASES

*Bailey v. Roob*,
    567 F.3d 930 (7th Cir. 2009)……………………………………………..7

*Bayer Chems. Corp. v. Albermarle Corp.*,
    171 F. App'x 392 (3d Cir. 2006)………………………………………..10

*Castro v. DHS*,
    Case No. 15-6153, 2016 WL 614862 (E.D. Pa. Feb.16, 2016)……………13

*Castro v. DHS*,
    Case No. 16-1339 (3d Cir. Aug. 29, 2016)……………………………...4, 14

*DeGidio v. Pung*,
    704 F. Supp. 922 (D. Minn. 1989)………………………………………..8

*Flores v. Lynch*,
    828 F.3d 898 (9th Cir. 2016)…………………………………………2, 16

*Kelly v. Wengler*,
    822 F.3d 1085 (9th Cir. 2016)……………………………………………7

*Pena v. Lynch*,
    815 F.3d 425 (9th Cir. 2016)…………………………………………..14

*Ruiz v. Estelle*,
    679 F.2d 1115 (5th Cir. 1982)……………………………………………8

*United States v. Armour & Co.*,
    402 U.S. 673 (1971)……………………………………………………..10

# I.     __INTRODUCTION__

Plaintiffs' supplemental brief (ECF No. 262) ("Brief"), unambiguously confirms that the underlying purpose of their enforcement motion is to obtain the same result this Court has already denied: a Court Order that would make it virtually impossible for the Government to take action to address the record breaking number of families currently illegally crossing the southern border[1] other than to: (1) immediately release them into the United States upon their apprehension pending their appearance before an immigration judge;[2] and (2) place them into non-expedited removal proceedings under Section 240 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1229a,[3] which would often take several years to complete, where a record backlog of cases exists,[4] and where a large percentage of such aliens fail to appear for their hearings.[5]

---

[1] As of August 31, 2016, fiscal year ("FY") 2016 apprehensions of family units had already far surpassed the record number of apprehensions that occurred in FY 2014 and are on pace to more than double the number of apprehensions that occurred in FY2015. *See* United States Border Patrol, Southwest Border Sectors, available at: https://www.cbp.gov/sites/default/files/assets/documents/2016-Sep/BP%20Southwest%20Border%20Family%20Units%20and%20UAC%20Apps%20-%20August.pdf (last viewed Sept. 25, 2016).

[2] *See* Brief at 4-6.

[3] *See Id.* at 14-18

[4] *See* Esther Yu His Lee, *Immigrants Told To 'Get In Line' Are Waiting For Years Because Of Court Case Backlog*, Think Progress (Jul. 22, 2016), available at: https://thinkprogress.org/immigrants-told-to-get-in-line-are-waiting-for-years-because-of-court-case-backlog-2a00f42ee290#.a38t52y9d/

[5] *See* FY 2015 EOIR Statistical Yearbook at P2-P3, *available at* https://www.justice.gov/eoir/page/file/fysb15/download (stating that there is currently a 41-44% *in absentia* rate for aliens in immigration court proceedings).

Plaintiffs' motion also ignores the critical intervening decision of the U.S. Court of Appeals for the Ninth Circuit that was entered in this case after their motion was filed. The Ninth Circuit has clearly held that attempting to read new rights into the 1997 *Flores* Settlement Agreement ("Agreement"), where those rights are not explicitly and unambiguously provided for by the plain text of the Agreement, is erroneous and subject to reversal.[6]

With regard to conditions at U.S. Customs and Border Protection ("CBP") facilities, the Agreement explicitly and unambiguously requires facilities to provide minors with "toilets and sinks, drinking water and food as appropriate, medical assistance if the minor is in need of emergency services, adequate temperature control and ventilation, adequate supervision to protect minors from others, and contact with family members who were arrested with the minor."[7] However, Plaintiffs' Brief largely ignores these issues, and instead claims that a Special Monitor should be ordered primarily because it disagrees with the Government on issues related to sleep and blankets—matters that are not explicitly and unambiguously addressed by the Agreement.[8]  Plaintiffs do not – and cannot – allege that Defendants are not in compliance with this Court's August Order,

---

[6] *See Flores v. Lynch*, 828 F.3d 898, 908-09 (9th Cir. 2016). Notably, Plaintiffs' requested relief, assignment of a Special Monitor at government expense, would be exactly the type of new right not provided for in the Agreement that the Ninth Circuit has rejected.

[7] Agreement ¶ 12.

[8]  *See* Brief at 4-8.

which required Defendants to monitor their compliance with the actual matters covered by the Agreement listed above.[9] There is no dispute that such monitoring is occurring.[10] Instead, Plaintiffs' Brief makes clear that their problem with the Government's monitoring system is that "it does not cover many of the issues *raised in the Motion* and its effectiveness is unknown."[11] Plaintiffs should not be permitted to obtain extraordinary sanctions against the Government—which the appointment of a monitor at taxpayer expense certainly would be—by filing a motion which raises issues that are extraneous to the Agreement, and then arguing that the Government's monitoring system did not foreshadow the need to monitor these new and extraneous issues which had not been agreed to by the parties. Moreover, Plaintiffs' conclusory statement that they believe the effectiveness of the Government's monitoring system is unknown does not convert the Government's significant and time-consuming efforts to implement a sophisticated monitoring system in response to the Court's August Order—which undisputedly tracks the enumerated conditions above for class members—into conduct which now merits the imposition of severe sanctions by this Court.

As to the current state of affairs at U.S. Immigration and Customs Enforcement ("ICE") family residential centers ("FRCs"), Plaintiffs' Brief does

---

[9] *See* August Order, ECF 189, at 14-15.

[10] *See* Opposition, ECF No. 208, at 3-23.

[11] See Brief at 8 (emphasis added).

not and cannot dispute that nearly every family that is housed at one of these facilities and expresses a fear of return is provided with a complete credible fear or reasonable fear screening, as appropriate, within twenty days, and is promptly released if such fear is established, in accordance with the INA and ICE policy.[12] Instead, Plaintiffs assert that in a very small number of cases where those families have failed to establish a credible or reasonable fear, and a final order of removal now exists, the minors must nonetheless be released and separated from their mothers if their physical removal cannot take place within twenty days from the date of their entry into the United States. Not only does that contention contravene Paragraphs 21 and 22 of the Agreement, it also contravenes Paragraph 14 which the Ninth Circuit has recognized allows minors to be detained with legally detainable adult parents if the Government believes it is in their safety interests to remain together. The fact that some families have been detained at an FRC for longer than twenty days because they have sought and received stays of their removal while they pursued (ultimately unsuccessful) challenges to their final expedited removal orders,[13] does not provide any basis for releasing those families from detention. Contrary to Plaintiffs' arguments, this Court did not find that

---

[12] *See* August Order, ECF No. 189, at 9-10.

[13] *See Castro v. DHS*, Case No. 16-1339, Document: 003112392295, Slip Op. at 19 n. 7 (3d Cir., Aug. 29, 2016).

where a parent was a flight risk ICE must release the minor; in fact this Court reached the opposite conclusion.[14]

Consequently, because Defendants have not violated any aspect of either the Agreement or this Court's Orders, Plaintiffs' enforcement motion should be denied.[15]

---

[14] *See* July Order, ECF No. 177, at 9, n.5 ("The parties also do not address the situation where the mother chooses to stay in the detention facility or has been deemed a flight or safety risk. ***As a practical matter, Defendants would be justified in detaining both mother and child in that case*** . . . .") (emphasis added).

[15] To the extent that the Court believes that Plaintiffs raise arguments that may potentially implicate constitutional issues, Plaintiffs should be required to bring those claims in a new lawsuit, and should not be allowed to raise these arguments here under the guise of reading the Agreement to avoid constitutional concerns. The Ninth Circuit has plainly held that ***this case*** solely involves determining whether Defendants are complying with provisions that they explicitly and unambiguously agreed to abide by. To hold otherwise would expand the Agreement beyond its explicit and unambiguous terms, and such expansion should not be accomplished by adjudicating an enforcement motion in this case.

5

## II.   ARGUMENT[16]

### A. The Court Should Not Impose the Very Severe Sanction of Appointing A Special Monitor Where Defendants Are Complying with this Court's Orders, And With the Explicit and Unambiguous Terms of the Agreement Itself.

Plaintiffs' request for the appointment of a Special Monitor at taxpayer expense is a severe sanction that should not be imposed unless the Court finds that Defendants have disregarded this Court's previous orders, and are not in compliance with the Agreement.[17] It is the Plaintiffs' burden to show that this is the case, and where Plaintiffs cannot establish that to be the case, the imposition of the severe sanction of a monitor is inappropriate.

Plaintiffs argue throughout their Brief that the Court should appoint a Special Monitor in order to discover whether Defendants are complying with the

---

[16] Defendants responded to Plaintiffs' arguments regarding the necessity of an evidentiary hearing to resolve disputed issues of fact in their September 22, 2016 Reply in support of their motion for an evidentiary hearing (ECF No. 267). Defendants do not repeat those arguments here, but maintain their position that all issues of disputed fact should be resolved through an evidentiary hearing as argued in their motion and their portion of the parties' Joint Statement being filed on September 26, 2016.

[17] It must be considered that the parties bargained for, and agreed to, certain monitoring provisions in the Agreement, and Plaintiffs have relied on those provisions to monitor compliance the Agreement for nearly twenty years. Plaintiffs now seek the appointment of a Special Monitor over and above those bargained-for provisions, despite the fact that no such monitoring was ever agreed to by the parties or provided for in the terms of the Agreement itself. There is nothing in the terms of the Agreement that provides for any such monitoring or remedy for breach. Plaintiffs should not be allowed to add monitoring provisions to the Agreement any more than they should be allowed to expand the other terms of the Agreement as discussed herein.

Agreement. The Court should decline to appoint a Special Monitor for such a purpose, because the Court's power to appoint a Special Monitor permits such appointment only if Plaintiffs can first establish that some exceptional condition exists, and that the appointment of a Special Monitor is necessary to facilitate compliance with the Agreement and the Court's orders. *See* Fed. R. Civ. P. 53(a) (providing for the appointment of a special master only where appointment is warranted by "(i) some exceptional condition; or (ii) the need to perform an accounting or resolve a difficult computation of damages . . . .").

Plaintiffs brought a motion alleging that Defendants are breaching the Agreement and this Court's orders, and it is their burden to establish that their allegations are true by providing clear and convincing evidence of such breach.[18] The Court should not appoint a Special Monitor to do Plaintiffs' job for them.

---

[18] As Defendants explained in their Motion for Evidentiary Hearing (ECF No. 256), Plaintiffs' Motion is more than a simple motion to enforce the terms of the Agreement, and it seeks relief beyond what is available under the Agreement. Most notably, Plaintiffs' request for the appointment of a Special Monitor asks the Court to order a coercive remedy to ensure future compliance with the Agreement, based on its inherent powers to enforce the Agreement and its own orders. Motion at 22-24. Such a request should be treated as a request for sanctions, under the framework of a civil contempt proceeding, requiring Plaintiffs to bear the burden of proof by clear and convincing evidence. *See Bailey v. Roob*, 567 F.3d 930, 934-35 (7th Cir. 2009) ("The parties agree that this circuit's case law requires the party seeking sanctions to demonstrate that the opposing party is in violation of a court order by clear and convincing evidence."); *Kelly v. Wengler*, 822 F.3d 1085, 1097 (9th Cir. 2016) (discussing how court-ordered remedies designed to ensure compliance with a settlement agreement, and to cure breach, are properly considered under civil contempt standards). Plaintiffs have not disputed that this is the standard of proof that should be applied in this case.

Rather, the Court should fully analyze and rule on all of Plaintiffs claims, including holding an evidentiary hearing to determine if Plaintiffs can meet their burden of proving their factual allegations, and then should only appoint a Special Monitor if it determines that such appointment is the appropriate and necessary injunctive remedy for any breach of the Agreement. *See DeGidio v. Pung*, 704 F. Supp. 922, 960 n.28 (D. Minn. 1989) ("Appointment of a special master is inappropriate in the absence of present constitutional violations or injunctive relief requiring monitoring.") (citing *Ruiz v. Estelle*, 679 F.2d 1115, 1159-63 (5th Cir. 1982), *cert. denied* 460 U.S. 1042 (1983); 5A Moore's Federal Practice paragraph 53.05[2]).

### B. <u>The Agreement Does Not Require CBP To Provide Sleeping Accommodations In Its Facilities.</u>

Plaintiffs spend a significant portion of their Brief suggesting that CBP is in breach of the Agreement because it does not affirmatively monitor whether minors in its custody have the exact sleeping conditions Plaintiffs contend are required by the Agreement. See Brief at 4-6. By this argument, Plaintiffs ignore the plain terms of the Agreement, which does not address sleep anywhere within its four corners, and seek to add specific and detailed sleeping requirements to the Agreement twenty years after it was signed and agreed to by the parties. Plaintiffs contend that the Agreement requires CBP "to adopt policies and practices that assure children of the opportunity to sleep after a certain amount of time in custody." Brief at 4.

However, no such requirement is contained in the Agreement, and the Court should not find Defendants in breach of a requirement that does not exist.[19]

The Agreement requires that "[f]ollowing arrest, the INS shall hold minors in facilities that are safe and sanitary and that are consistent with the INS's concern for the particular vulnerability of minors." Agreement ¶ 12.A.  More specifically, the Agreement requires CBP to "provide access to toilets and sinks, drinking water and food as appropriate, medical assistance if the minor is in need of emergency services, adequate temperature control and ventilation, adequate supervision to protect minors from others, and contact with family members who were arrested with the minor." *Id.* None of these enumerated terms require CBP to provide sleeping accommodations or to monitor the amount of sleep that a minor gets in CBP custody.

The Court should not add requirements to the Agreement that the parties did not choose to include when they negotiated and signed the Agreement in 1997. If the parties had wanted to include a requirement that CBP provide sleeping accommodations or ensure that minors got a certain amount of sleep while in initial

---

[19] To the extent Plaintiffs allege that Defendants deliberately or maliciously interfere with the sleep of any minors in their custody, Defendants dispute such claim. Plaintiffs have submitted no evidence of any such actions on the part of Defendants. At the same time, Defendants have submitted evidence that they take several steps specifically designed to accommodate minors, including processing them on a priority basis, providing a variety of special accommodations for minors at their facilities, and providing mattresses and blankets to minors where feasible. Opposition (ECF No. 208) at 20-22.

custody immediately following arrest, then they could have explicitly included these requirements, yet they did not. As discussed above, the Ninth Circuit has already held that Plaintiffs should not be allowed to use the Agreement to raise new challenges, and the Court should not find CBP in breach of terms that are not contained within the Agreement itself.[20] *See United States v. Armour & Co.*, 402 U.S. 673, 681  (1971) ("[T]he scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it."). If Plaintiffs wish to challenge the availability of sleeping accommodations in CBP facilities, or the lack thereof, they must do so in a new lawsuit.

---

[20]  Plaintiffs contend that the provision of the Agreement requiring Defendants to treat minors in their custody "with dignity, respect and special concern for their particular vulnerability as minors," forms the basis for their claim. Brief at 4. As explained in their Opposition, Defendants take several steps to ensure the comfort and safety of minors, and have taken steps to accommodate the particular needs of minors at their facilities. *See* Opposition at 14-18, 20-22. But to read this term of the Agreement as the basis for the very specific contention that Defendants must provide sleeping accommodations and ensure that minors sleep for a certain amount of time, takes this general provision of the Agreement too far. Defendants should not be found in breach of a requirement that is not contained anywhere within the four corners of the Agreement. Moreover, at most such a term is ambiguous, and the Court should therefore look at the course of dealing of the parties to determine its meaning. *See, e.g., Bayer Chems. Corp. v. Albermarle Corp.*, 171 F. App'x 392, 399 (3d Cir. 2006). Here, Plaintiffs have not previously challenged the lack of sleeping accommodations in CBP facilities for the twenty years the Agreement has been in existence, and this should be considered evidence that the parties never believed the Agreement contained any such explicit term.

Finally, even if this Court finds that the Agreement contains an implied obligation to provide children with specific sleeping conditions, it would be patently unreasonable to penalize Defendants by imposing the sanction of a Special Monitor based on the breach of a condition that Defendants had no reason to know was part of the Agreement, and which Plaintiffs are only now contending for the first time should be considered an explicit term of the Agreement twenty years after the Agreement was put into place. If the Court finds that the scope of the Agreement should be expanded to include new requirements about which Defendants could not reasonably have been aware before any such order by the Court, then Defendants must be given the opportunity to come into compliance with these new requirements, and should not be sanctioned for non-compliance before ever having such an opportunity.

## C. **Individuals In ICE Family Residential Centers Are Lawfully Detained Under the Immigration and Nationality Act.**[21]

In their Brief, Plaintiffs again seek to revisit an argument that has previously been considered and rejected by this Court, contending that the Government should be prohibited from using its statutory authority to place family units into expedited

---

[21] Plaintiffs do not expressly raise any challenges to the conditions at ICE FRCs. However, they submitted with their enforcement motion multiple declarations that contain sweeping and uncorroborated allegations concerning those conditions. Defendants renew their prior objections to these declarations and again request that the Court decline to consider allegations regarding conditions at ICE FRCs that are irrelevant to the violations actually raised by Plaintiffs in their enforcement motion.

removal or reinstatement proceedings under 8 U.S.C. § 1225 or 8 U.S.C. § 1231(a)(5). Brief at 4-6, 14-18.

As an initial matter, this argument is specifically precluded by 8 U.S.C. § 1252(f)(1), which provides that "no court other than the Supreme Court shall have jurisdiction or authority to enjoin or restrain the operations of the provisions of [8 U.S.C. §§ 1221-1231], other than with respect to an individual alien against whom proceedings under such part have been initiated." Under 8 U.S.C. § 1252(f)(1), this Court cannot, on a class-wide basis, preclude the Government from using its statutory authority under 8 U.S.C. § 1225 to place individuals into expedited removal and detain them pending removal, or to detain individuals pending execution of a reinstated order of removal under 8 U.S.C. § 1231.

Moreover, the Government's current use of ICE FRCs is fully compliant with the Agreement and with the Court's orders. In the August Order, the Court indicated that the Government's target of a twenty-day average detention time "may fall within the parameters of Paragraph 12A of the Agreement . . . ." August Order at 10. The Court also explained that in periods of influx – as defined in the Agreement – family units may be housed at FRCs for the period of time necessary to conduct credible fear and other protection-related screenings, so long as the length of detention is "as fast as Defendants, in good faith and in the exercise of due diligence, can possibly go in screening family members for reasonable or credible fear . . . especially if the brief extension of time will permit the DHS to

keep the family unit together." August Order at 10. As the Government explained in its Opposition, for virtually all families who pass through ICE FRCs, their short detention is fully compliant with this order, and Plaintiffs do not appear to contend otherwise. Accordingly, the current operation of the facilities provides no basis for the Court to order oversight by a Special Monitor.

The detention of the very small number of individuals who have remained in ICE FRCs for longer periods of time also is consistent with the Agreement and the Court's orders. Those individuals – including minors as well as their parents or guardians – are subject to mandatory detention pending expedited removal under 8 U.S.C. § 1225 after having been found to lack a credible fear of persecution, or detention pending removal under 8 U.S.C. § 1231(a)(1)-(2). As noted above, under 8 U.S.C. § 1252(f)(1), the Court cannot simply order that their detention be prohibited on a class-wide basis.[22]

---

[22] As the Government noted in its Opposition, the vast majority of aliens who have been detained at FRCs for a longer period of time are individuals who have been determined to lack a credible fear of persecution or torture upon removal after being interviewed by a USCIS asylum officer, having that determination reviewed by a supervisory asylum officer, and having his or her claim of credible fear heard by an immigration judge. These individuals are therefore subject to mandatory detention pending their removal from the United States. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV); 8 C.F.R. § 235.3(b)(2)(iii). Although execution of their expedited removal orders is required by 8 U.S.C. § 1225(b)(1), these aliens filed constitutional challenges to the credible fear process and their expedited removal orders in federal district court starting in November 2015. *See Castro v. DHS*, Case No. 15-6153, 2016 WL 614862 at *1-2 (E.D. Pa. Feb.16, 2016). Although the Government briefed the issues in this case in an expedited manner, the District Court stayed these aliens' removal for three months only to then dismiss their case,

Moreover, in earlier filings made in this case, Plaintiffs have acknowledged that the authority to detain individuals for purposes of removal under 8 U.S.C. § 1231 applies to minors, and is not precluded by the Agreement so long as it does not otherwise violate the statute. *See* ECF No. 19 at 31 ("[N]othing in the settlement precludes defendants from detaining a child in the course of physically removing him or her, but neither does it permit months or years of open-ended incarceration."); *id.* at 32 (acknowledging that detention in secure facilities to effectuate removal is proper if there is a "reasonable expectation that the Government will be able to effect removal promptly"). And this Court also has recognized that in a "situation where the mother . . . has been deemed a flight or safety risk . . . , Defendants would be justified in detaining both mother and child in that case . . . ." July Order at 9 n.5.

Thus, in this small percentage of cases where a minor is subject to mandatory detention with his or her mother, or is being held with his or her mother who is subject to a final order of removal and has been adjudged to be a flight risk,

---

finding that "Petitioners' contentions have been rejected by almost every court to address them." *Id.* These individuals then sought and received a stay of removal from the Third Circuit, which has since denied their appeal eight months after it was filed. *Castro v. DHS*, Case No. 16-1339, Document: 003112392295 (3d Cir, Aug. 29, 2016). As soon as the mandate is issued in that case, these individuals will be eligible for removal. Plaintiffs should not be rewarded with release simply because they chose to file was has been uniformly unsuccessful litigation, during which they sought stays of removal. The Ninth Circuit and every other Circuit to consider the question have rejected similar claims. *See Pena v. Lynch*, 815 F.3d 425 (9th Cir. 2016) (collecting cases).

the Court cannot require the minor's release without contravening the INA and prior orders of this Court. Therefore, Plaintiffs' motion on this point should be denied as a matter of law.[23]

---

[23] Plaintiffs spend a substantial portion of their Brief selectively quoting from deposition transcripts for Assistant Field Office Directors ("AFODs") Valentin de la Garza, Juanita Hester, and Joshua Reid to suggest that these individuals are not familiar with the requirements of the Agreement, and therefore that it is necessary for the Court to appoint a special monitor to ensure compliance. This argument fails for two reasons. First, as discussed above, the Court should not appoint a special monitor for the purpose of conducting a fishing expedition into Defendants' compliance with the Agreement. Any such appointment is appropriate if, and only if, Plaintiffs first can meet their burden to show that there is significant noncompliance with the Agreement, and that injunctive relief requiring the oversight of a special monitor is the appropriate remedy. Second, Plaintiffs' argument is a red herring to the extent that it suggests that AFODs de la Garza, Hester, and Reid, should be familiar with the specific terms of the Agreement and their requirements, and that their lack of familiarity suggests noncompliance with the Agreement. These three individuals are not lawyers whose job it is to read and interpret the requirements of the Agreement; they are operators within the facility charged with overseeing the facilities and ensuring compliance with ICE policies and practices. ICE's policies and practices, as outlined above and in Defendants' Opposition, are based upon and fully comply with the Agreement and with the INA. AFODs de la Garza, Hester, and Reid, all testified that they are running these facilities consistently with these policies and practices, including obtaining information about family members with whom a family unit may live upon release, and facilitating the prompt release of family units when they become eligible to be released. *See* Declaration of Valentin de la Garza  ¶¶ 1-4; 11); Deposition of Valentin de la Garza at 58-60, 61-21, 88-89, 97, 102-03, 125-28; Declaration of Juanita Hester ¶¶ 1-4, 11-12; Deposition of Juanita Hester at 7-9, 21-22, 24-25, 47-48, 62-64, 85-86, 94, 98-99; Declaration of Joshua G. Reid ¶¶ 1, 6-8; 18; Deposition of Joshua G. Reid at 9-10, 11-12, 14-15, 43-45, 86, 97-98, 110-11; *see also* Gurule Decl. ¶¶ 5, 13, 15.Thus, the fact that they may express a lack of familiarity with the specific legal terms or requirements of the Agreement has no bearing on the issue of Defendants' compliance.

Further, even if the Court did have authority to order Defendants to release

minors in these situations, the question for the Court becomes whether it is

preferable to break up families in order to effectuate the release of the child, or to

maintain family unity by holding the child in an ICE FRC with his or her parent.

The Government contends that even if it were possible to release the child

separately from his or her parent or guardian in these instances, such release would

not be required if, as an initial matter, the Government determines that it is

necessary to keep the child with his or her mother "to ensure the minor's safety or

that of others . . . ." Agreement ¶ 14. In the majority of cases, it is safer for the

child to remain with his or her parent at an ICE FRC than for that child to be

released to a purported family member who ICE has no ability to screen for

suitability to care for that child.[24] The Court previously responded to this concern

by ordering that the Government must release the accompanying parent along with

the child, but the Ninth Circuit has since found that this solution is not required by

the Agreement. *See Flores v. Lynch*, 828 F.3d 898, 908-09 (9th Cir. 2016).[25] Thus,

---

[24] *See* Gurule Decl. ¶ 16 (noting ICE lacks the institutional capacity to assess the
suitability of custodians other than a parent or legal guardian and is not authorized
to expend appropriated resources to conduct such suitability analyses). The only
agency that has such expertise and ability is the U.S. Department of Health and
Human Services ("HHS"), so that if it were necessary to release any minor
separately from their accompanying parent or guardian, it would be necessary to
transfer that minor to HHS custody so that HHS could screen the proposed
custodian for suitability prior to releasing the child to the custody of that custodian.
[25] *See also Flores v. Lynch*, Case No. 15–56434, Oral Argument dated June 7,
2016, *available at* *https://www.youtube.com/watch?v=Kbykk6nFMLU* (the Court's

in the majority of cases, even if the INA does not preclude the Government from releasing a child separately from his or her parent or guardian, this exception to the release provision will counsel in favor of maintaining the child in custody with his or her parent.

## III.  **CONCLUSION**

For all of the reasons discussed above, as well as those contained in Defendants' June 3, 3016 Opposition (ECF No. 208), the Government requests that the Court deny Plaintiffs' Motion.

---

discussion from 22:45 to 24:20 supports the Government's contention that the Ninth Circuit agrees with its interpretation of Paragraph 14's safety provision such that minors are better off not being separated from parents that will remain in detention). It should also be noted that Plaintiffs in *Bunikyte*, who were *Flores* class members, argued in that case that it was far better for families to remain together at a family facility than to be separated. *See Bunikyte*, 2007 WL 1074070 at *16 ("Both Plaintiffs and Defendants recognize that keeping the minor Plaintiffs with their parents is in their best interests . . . ."). Plaintiffs here have not provided any evidence as to why it would be better to separate families in these instances in contravention to what was argued by other class members in *Bunikyte*.

17

DATED:      September 26, 2016          Respectfully submitted,


BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
Civil Division

LEON FRESCO
Deputy Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation

WILLIAM C. SILVIS
Assistant Director, District Court Section
Office of Immigration Litigation

*/s/ Sarah B. Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-4824
Fax: (202) 305-7000
Email: sarah.b.fabian@usdoj.gov

*Attorneys for Defendants*

1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 26, 2016, I served the foregoing pleading on all counsel of record by means of the District Clerk's CM/ECF electronic filing system.

/s/ *Sarah B. Fabian*
SARAH B. FABIAN
U.S. Department of Justice
District Court Section
Office of Immigration Litigation

Attorney for Defendants