BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
Civil Division
LEON FRESCO
Deputy Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director, District Court Section
Office of Immigration Litigation
SARAH B. FABIAN
Senior Litigation Counsel, District Court Section
Office of Immigration Litigation
    P.O. Box 868, Ben Franklin Station
    Washington, D.C. 20044
    Tel:  (202) 532-4824
    Fax:  (202) 305-7000
    Email:  sarah.b.fabian@usdoj.gov

Attorneys for Defendants

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY LISETTE FLORES; *et al.*, | ) Case No. CV 85-4544 |
| | ) |
| Plaintiffs, | ) **DEFENDANTS' SECOND** |
| | ) **SUPPLEMENTAL RESPONSE IN** |
| v. | ) **OPPOSITION TO PLAINTIFFS'** |
| | ) **MOTION TO ENFORCE** |
| LORETTA E. LYNCH, Attorney | ) **SETTLEMENT AND APPOINT A** |
| General of the United States; *et al.*, | ) **SPECIAL MONITOR** |
| | ) |
| Defendants. | ) Hearing Date:  January 30, 2017 |
| | ) Time: 9:30am |
| | ) Dept: West Street Courthouse - Los |
| | ) Angeles, Courtroom 8C, 8th Floor |

## **TABLE OF CONTENTS**

I.     INTRODUCTION……………………………………………...…………1

II.    ARGUMENT……………………………………………...…………4

   A. Burden Of Proof And Evidence To Be Considered At The January 30, 2017
     Evidentiary Hearing………………………………………………………4

   B. Issues To Be Considered At The Evidentiary Hearing…………...……………6

      a. Whether conditions at the U.S. Customs and Border Protection facilities
        violate the Flores Agreement…………………………………………..7
        1. Scope……………………………………..7
        2. Disputes of Fact Requiring Court Resolution…………………………9
           A. *Provision of Food*………………..…………………………10
           B. *Availability of Water*………………………………………11
           C. *Sanitary Conditions*…………………………………………12
           D. *Temperature*…………………………………………………13
        3. Issues That Are Not Covered By The Agreement……………………..13
           A. *Sleep*.................................................................................14
           B. *Provision of Toothbrushes, Toothpaste, Showers, and Dry*
              *Clothing*…………………………………………………15

      b. Whether provisions of the Flores Agreement, in particular
        Paragraphs 14 and 19, require Defendants to make and record
        efforts to release minors from custody separate from the accompanying
        parent under certain circumstances………………………………………..16

      c. Whether keeping minors in ICE Family Residential Centers for
        longer than 20 days violates the Flores Agreement………………………16

      d. Whether Defendants have violated Paragraph 27 of the Flores
        Agreement by transferring minors who are represented by
        counsel without advance notice to their counsel…………………………..21

   C. The Court Should Not Consider New Issues That Plaintiffs Did Not Raise In
     Their Enforcement Motion……………………………………………………23

III.   CONCLUSION…………………………………………………………24

i

## <u>TABLE OF AUTHORITIES</u>

*Bailey v. Roob*,
  567 F.3d 930 (7th Cir. 2009)……………………………………………..…...5

*Earp v. Ornoski*,
  431 F.3d 1158 (9th Cir. 2005)……………………………………………….6

*Flores v. Lynch*,
  828 F.3d 898 (9th Cir. 2016)……………………………………………….21

*FTC v. Affordable Media*, LLC,
  179 F.3d 1228 (9th Cir. 1999)……………………………………………….5

*Hubbard v. Houghland*,
  471 Fed. Appx. 625 (9th Cir. 2012)………………………………………….6

*In re Dual-Deck Video Cassette Recorded Antitrust Litigation*,
  10 F.3d 693 (9th Cir. 1993)………………………………………………….5

*Kelly v. Wengler*,
  822 F.3d 1085 (9th Cir. 2016)……………………………………………….4

*San Francisco NAACP v. San Francisco Unified Sch. Dist.*,
  896 F.2d 412 (9th Cir.1990)……………………………………………….14

*Shillitani v. United States*,
  384 U.S. 364 (1966)………………………………………………………….4

*Spallone v. United States*,
  493 U.S. 265 (1990) ……………………………………………………...4

*Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co., Inc.*,
  520 F. Supp. 2d 1184 (C.D. Cal. 2007)……………………………………….4

*United Commercial Ins. Serv., Inc. v. Paymaster Corp.*,
  962 F.2d 853 (9th Cir. 1992)……………………………………………….6

*United States v. Armour & Co.*,
  402 U.S. 673 (1971) …………………………………………………….14

# I.     **INTRODUCTION**

On October 7, 2016, the Court issued an Order setting the following four issues for an evidentiary hearing:

    a) Whether conditions at U.S. Customs and Border Protection facilities violate the *Flores* Agreement.

    b) Whether provisions of the *Flores* Agreement, in particular Paragraphs 14 and 19, require Defendants to make and record efforts to release minors from custody separate from the accompanying parent under certain circumstances.

    c) Whether keeping minors in ICE Family Residential Centers for longer than 20 days violates the *Flores* Agreement.

    d) Whether Defendants have violated Paragraph 27 of the *Flores* Agreement by transferring minors who are represented by counsel without advance notice to their counsel

October 7, 2016 Order (ECF No. 274) at 1. The Court also asked the parties to address: a) the scope of the group affected by each issue; b) the scope of the violations alleged by Plaintiffs; and c) the legal standard to be applied to Plaintiffs' enforcement motion. *Id.* at 2. The Government submits this brief to address these issues as requested by the Court, and to supplement its prior briefing in response to Plaintiffs' May 19, 2016 enforcement motion.

The Court's authority to enforce the Flores Settlement Agreement ("Agreement") in the event of a breach by Defendants stems from its civil contempt authority. Therefore, Plaintiffs must establish Defendants' alleged violations of the Agreement under the clear and convincing evidence standard. In applying this standard at the evidentiary hearing, the Court should rely only on evidence that is admissible under the Federal Rules of Evidence, and should assess issues of witness credibility for itself based on oral testimony, rather than on inadmissible – and frankly unreliable – hearsay declarations.

Additionally, the Court should not allow Plaintiffs to raise new issues that were not in their original enforcement motion at this stage of the proceedings. The Court has already stated that it is limiting this proceeding to the issues contained in the original motion and opposition. Nonetheless, in their September 19, 2016 supplemental brief, as well as their most recent brief, Plaintiffs continue to bring forward new claims not raised in their May 19, 2016 enforcement motion. The Court should unequivocally and explicitly prohibit Plaintiffs from litigating new issues raised since the filing of the May 19, 2016 enforcement motion.

Further, the Court should decline to expand the scope of the Agreement beyond its express terms. Plaintiffs ask the Court to find Defendants in breach of the Agreement based on allegations that Defendants are not complying with terms that are found nowhere within its express language, and were not contemplated by the parties to the Agreement in 1997. The Court should decline to interpret the Agreement expansively, and should not redraft it to add requirements that exist nowhere within the four corners of the Agreement itself.

With regard to the issue of whether the conditions at U.S. Customs and Border Protection ("CBP") facilities comply with the Agreement, the Court should consider Plaintiffs' enforcement motion to raise claims only as to a limited number of CBP facilities in Texas where Plaintiffs' declarants were detained, rather than to CBP facilities nationwide. Because each facility operates in a slightly different manner based on a number of factors, including the numbers of minors apprehended in a given area, a minor detained in a CBP facility in Texas may have a different experience than a minor detained in a CBP facility in another location for a variety of reasons, though CBP maintains each are compliant.

Accordingly, the Court should decline to find that Plaintiffs have alleged any breach of the Agreement at facilities for whom Plaintiffs have identified no witnesses and proffer no evidence regarding any alleged breach. Moreover, for those allegations for which there are disputed issues of fact, the Court should determine whether Plaintiffs have met their burden to establish by clear and convincing evidence that Defendants are in breach of the Agreement at an evidentiary hearing, considering only evidence that is admissible under the Federal Rules of Evidence.

The Court can resolve the two issues related to the release of minors from custody at U.S. Immigration and Customs Enforcement ("ICE") family residential centers (b and c), as a matter of law. Both of these issues raise a single legal question: can the Court read the Agreement to prohibit, on a class-wide basis, the continued detention of a minor who is in statutorily mandatory detention, particularly where he or she is subject to expedited removal, and/or is being detained under a final order of removal? As Defendants have explained in previous briefing, the answer to that question is no. Because the Agreement cannot be redrafted in this way, ICE's practice of detaining minors with their parents who are in mandatory detention during the brief period of time that it takes to assess a claim of credible fear or reasonable fear, or for longer periods of time where the minor is subject to a final order of removal and pending removal, or to mandatory detention because of a final expedited removal order, does not violate the Agreement.

Finally, as to the issue regarding notice to counsel prior to the transfer of minors, the Court can find that as a matter of law the evidence proffered by Plaintiffs is not sufficient to meet their burden of proof on this issue, and thus can dismiss this issue without an evidentiary hearing. Even if Plaintiffs' evidence on this issue were admissible at an evidentiary hearing – which it is not – at most it raises a single

alleged instance where an attorney was not notified of the transfer of a minor. This does not establish that Defendants are in breach of the Agreement by clear and convincing evidence. Moreover, the totality of undisputed evidence from Defendants shows that Defendants remain in substantial compliance with this provision of the Agreement. Thus, the Court can dismiss this claim without the need for an evidentiary hearing. However, if the Court does find that there is a genuine dispute of fact on this issue, then it should require Plaintiffs to prove that Defendants are in breach based solely on admissible evidence, and not hearsay, conjecture, or speculation. *See* Fed. R. Evid. 1101(b).

## II. <u>ARGUMENT</u>

### A. <u>Burden Of Proof And Evidence To Be Considered At The January 30, 2017 Evidentiary Hearing</u>

The Court asked the parties to address the burden of proof that should apply at the evidentiary hearing on Plaintiffs' Motion. *See* October 7, 2016 Order at 2.c.

"Plaintiff has the burden at trial of proving all elements of its breach of contract claim." *Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co., Inc.*, 520 F. Supp. 2d 1184, 1194 (C.D. Cal. 2007). The Court's authority to enforce the Agreement as a consent decree arises from its civil contempt powers. *See Spallone v. United States*, 493 U.S. 265, 276 (1990) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). ("In selecting a means to enforce the consent judgment, the District Court was entitled to rely on the axiom that 'courts have inherent power to enforce compliance with their lawful orders through civil contempt.'"). Thus, Plaintiffs' motion to enforce the Agreement amounts to a request for civil sanctions against Defendants, and the Court should require Plaintiffs to establish any violation of the Agreement under the clear and convincing evidence standard. *See Kelly v. Wengler*, 822 F.3d 1085, 1097 (9th

Cir. 2016) (discussing how court-ordered remedies designed to ensure compliance with a settlement agreement, and to cure breach, are properly considered under civil contempt standards); *FTC v. Affordable Media*, LLC, 179 F.3d 1228, 1239 (9th Cir. 1999) (a party requesting that a court hold another party in contempt must prove by clear and convincing evidence that the party violated a specific order of the court); *Bailey v. Roob*, 567 F.3d 930, 934-35 (7th Cir. 2009) ("The parties agree that this circuit's case law requires the party seeking sanctions to demonstrate that the opposing party is in violation of a court order by clear and convincing evidence."). If Plaintiffs meet their burden of showing breach be clear and convincing evidence, the burden would then shift to the Government to demonstrate that it substantially complied with the Agreement, or complied with a good faith and reasonable interpretation of the Agreement. *See In re Dual-Deck Video Cassette Recorded Antitrust Litigation*, 10 F.3d 693, 695 (9th Cir. 1993).

Given the serious nature of Plaintiffs' allegations and their demand for what amounts to a sanction, together with the high burden Plaintiffs must meet, Defendants also reiterate their position that the Court should decline to consider inadmissible evidence at the January 30, 2017 hearing, and should conduct the hearing in accordance with the Federal Rules of Evidence. In conjunction with this supplemental brief, Defendants are submitting specific objections to a significant portion of the evidence relied upon by Plaintiffs to support their Motion. *See generally* Defendants' Statement of Evidentiary Objections to Plaintiffs' Statement of Uncontroverted Facts ("Objections"), filed herewith. These Objections make clear that Plaintiffs rely almost entirely on inadmissible and unreliable hearsay statements.

Given that there are significant reasons to question the reliability of Plaintiffs' evidence, the Court should not evaluate whether Plaintiffs have met their heavy

burden in this case without evaluating for itself the bias and credibility of Plaintiffs' witnesses. *See Hubbard v. Houghland*, 471 Fed. Appx. 625, 626-27 (9th Cir. 2012) (citing *Earp v. Ornoski*, 431 F.3d 1158, 1169-70 (9th Cir. 2005)) (noting that it is only "[i]n rare instances-instances in which it is possible to 'conclusively' decide credibility based on documentary testimony and evidence in the record-[that] credibility may be determined without an evidentiary hearing"). As is evident from the discussion below regarding the disputes of fact that exist in this case, the Court's determination of whether Plaintiffs have met their burden will turn on whether the Court believes the hearsay proffer of Plaintiffs' witnesses over the record evidence maintained by Defendants and the testimony of Government witnesses regarding their policies and practices. This means that where factual disputes exist, an assessment of the credibility of Plaintiffs' witnesses is central to determining whether Plaintiffs can meet their burden in this case. Thus, the Court should hear oral testimony from the parties' witnesses on all issues where a dispute of facts exists, so that it can evaluate for itself whether the testimony of Plaintiffs' witnesses is sufficient evidence to meet their burden. *See United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 858 (9th Cir. 1992) ("Where factual questions not readily ascertainable from the declarations of witnesses or questions of credibility predominate, the district court should hear oral testimony.").

## B.  **Issues To Be Considered At The Evidentiary Hearing**

The Court identified four issues to be heard at the evidentiary hearing. As explained below, Defendants submit that only one of these issues requires the Court to resolve disputed issues of fact, and that the remaining three issues may be resolved as a matter of law in favor of Defendants.

a. <u>*Whether conditions at the U.S. Customs and Border Protection facilities violate the Flores Agreement.*</u>

1. <u>Scope</u>

In determining whether Plaintiffs have met their burden on the question of conditions at CBP facilities, the Court should limit the scope of the hearing on this issue to the facts proffered in Plaintiffs' enforcement motion. *See* October 7, 2016 Order at 2.b. While Plaintiffs do not directly address the issue of scope in their supplemental briefing, it appears that Plaintiffs continue to seek nationwide relief from this Court related to the conditions at CBP facilities, and acknowledge no limitations on the scope of their claims. *See* Supp. Brief, ECF No. 287 at 22 ("Declarants' reports of conditions in CBP facilities are not anecdotal but rather reflect widespread violations of the Flores Agreement.").

Yet, the only evidence Plaintiffs have supplied in support of their claims is the hearsay declaration or deposition testimony of individuals who experienced conditions in only eleven CBP facilities (one port of entry operated by the Office of Field Operations ("OFO"), and ten Border Patrol stations), all of which are within the state of Texas. *See* CBP Locations Chart (identifying the Border Patrol Stations where each of Plaintiffs' witnesses were held) and Map of Border Patrol Stations, Exhibits 47 and 48. This fails to establish the type of nationwide or systematic failure on the part of Defendants that Plaintiffs' ask the Court to find. In fact, for OFO facilities, Plaintiffs' evidence regarding a single facility (out of 328 OFO ports of entry nationwide) comes from a single witness, and establishes any type of systematic claims regarding OFO facilities. For Border Patrol facilities, where the evidence is limited to three Sectors in the state of Texas, it entirely fails to establish the type of nationwide or systematic failure that Plaintiffs seek to allege. To the extent the Court

7

finds that Plaintiffs have met their burden on any of their claims regarding CBP conditions, however, the fact that Plaintiffs' evidence only relates to a limited number of facilities means that any findings of fact reached by the Court should not extend beyond the OFO Field Office or Border Patrol Sectors about which Plaintiffs have actually provided affirmative evidence, as opposed to conjecture and speculation.

This is especially true because Plaintiffs have provided no basis to believe that the conditions described by their witnesses would be the same as conditions that exist at other CBP facilities in different locations. Each CBP facility applies CBP policies on holding and detention in a manner appropriate to meet those standards and to address the unique factual circumstances in any given facility.  The Declaration of Peter Jaquez and attached exhibits, Defendants' Exhibit 46 (exhibits filed separately under seal),  – submitted in response to a request from the Court at the October 6, 2016 hearing, Tr. at 9:22-10:23 - show that conditions at Border Patrol stations can vary between locations due to the different operations circumstances in each sector. For example, because of the extremely large numbers of minors apprehended in the Rio Grande Valley Sector, that Sector uses its Ursula facility to provide for the needs of minors in its custody. *See* Rio Grande Valley Sector Photos. Conversely, because El Paso Sector generally has a much lower population of minors, that Sector is able to use its existing hold rooms to hold minors, while making modifications consistent with the needs of minors. *See* El Paso Sector Photos. Moreover, as is evident from the declarations submitted by Defendants in response to Plaintiffs' enforcement motion, differences exist between conditions at Border Patrol facilities and those at OFO facilities. Compare Def. Exh 10, ECF No. 211 (Declaration of Manuel Padilla, Jr., U.S. Border Patrol, Rio Grande Valley Sector) *with* Def. Exh. 12, ECF No. 212-3 (Declaration of Robert E. Perez, New York Office of Field Operations).

Defendants submitted declarations with their Opposition regarding a number of facilities, including those for which Plaintiffs had presented no evidence, out of an abundance of caution to emphasize that the Court should not find CBP in breach nationwide based on evidence submitted by Plaintiffs from only a very limited area. Plaintiffs have submitted absolutely no evidence regarding conditions at any CBP facilities outside of the three Border Patrol Sectors and one OFO Field Office within the state of Texas. Yet Plaintiffs now ask the Court to find the Government in breach in other locations based solely on the Government's own evidence.

Based on the limited evidence submitted by Plaintiffs, there is good reason for the Court to limit the scope of any hearing on Plaintiffs' enforcement motion to the conditions in Border Patrol stations within the Rio Grande Valley, Laredo, and Del Rio Sectors, and OFO ports of entry within the El Paso Field Office.[1]

## 2.  Disputes of Fact Requiring Court Resolution

Defendants' Statement of Genuine Disputes of Material Fact ("Defendants' Statement"), filed concurrently with this supplemental brief, shows that on the subjects of food, water, sanitary conditions, and temperature (i.e., the conditions raised in Plaintiffs' enforcement motion that are addressed in the Agreement), there are disputes of fact that must be resolved by this Court to determine whether Plaintiffs

---

[1] Defendants further submit that for the El Paso Field Office, Del Rio Sector, and Laredo Sector, there is good reason to find that the evidence submitted by Plaintiffs is sufficiently de minimus to warrant excluding these areas from the hearing as well. There are five witnesses who provide declarations regarding stations in the Del Rio Sector, two witnesses who provide declarations about a single facility in the El Paso Field Office, and one witness who appears to provide a declaration regarding a single facility in Laredo Sector. This limited evidence – consisting entirely of unreliable and inadmissible hearsay declarations – is not sufficient to meet Plaintiffs' heavy burden to show that Defendants are in violation of the Agreement within that Sector or Field Office.

have met their burden to establish that CBP is in breach of the Agreement. For all of these issues, the Court should require that Plaintiffs present evidence that is admissible under the Federal Rules of Evidence in order to determine whether Plaintiffs can meet their heavy burden to establish that Defendants are in breach of the Agreement by clear and convincing evidence. Where Plaintiffs rely largely – or entirely – on evidence that would be inadmissible at the evidentiary hearing, the Court should find that Plaintiffs have not met their burden as a matter of law, unless Plaintiffs state that they are able to present oral testimony by their declarants consistent with their declarations.[2]

## A. Provision of Food

Plaintiffs' enforcement motion relies largely on the statements of a few individuals who allege that they received insufficient food while in a limited number of CBP facilities. *See* Plaintiffs' Corrected Statement of Uncontroverted Facts ("Plaintiffs' Statement") (ECF No. 293) at 1.A; Exhibit 47 (identifying the CBP facilities at which Plaintiffs' witnesses were held). This evidence is disputed by records maintained by CBP with regard to those individuals, other statements made by those individuals, and the declaration and deposition testimony of Defendants'

---

[2] While Defendants rely on declarations that would be inadmissible at an evidentiary hearing under the Federal Rules of Evidence to establish that there are disputes of fact, both in this document and in their Statement of Genuine Disputes of Material Fact, Defendants submit that their witnesses will be made available to testify at the evidentiary hearing, and will testify consistently with the information presented in their declarations. This is in contrast to Plaintiffs who have stated that they do not intend to present direct testimony from any of their witnesses. If the Court determines that the evidentiary hearing should be conducted in accordance with the Federal Rules of Evidence, then the Court should disregard the evidence proffered by Plaintiffs in the form of inadmissible declarations, as well as deposition testimony from witnesses who Plaintiffs cannot establish will be unavailable for live testimony. *See* Objections.

witnesses who testify regarding the practices at the facilities where Plaintiffs' witnesses were in CBP custody. *See* Defendants' Statement at 1.A. Defendants' evidence establishes that CBP has food contracts to ensure that it serves children regular meals; that CBP policy provides for children to be served hot and cold meals along with snacks, milk, and juice; and that Plaintiffs' witnesses received regular meals while in custody. *Id.* While some of Plaintiffs' witnesses may complain about the type of food that is served, such complaints do not establish that the food is not "adequate" for the short period of time that class-members remain in CBP custody. Thus, even if the Court finds at an evidentiary hearing that Plaintiffs have met their heavy burden on this issue, there is still good reason to find that Defendants can establish that they are substantially in compliance with the Agreement.

## B. Availability of Water

For this issue, Plaintiffs' rely on statements by witnesses from a limited number of CBP facilities that they were not provided sufficient cups for the drinking water, or that the water seemed dirty or tasted bad. Plaintiffs' Statement at 1.B.; Exhibit 47 (identifying the CBP facilities at which Plaintiffs' witnesses were held). To the extent such evidence might be found to meet Plaintiffs' burden – which Defendants submit it does not – Defendants' evidence disputes these contentions, showing that water fountains are available in hold rooms at Border Patrol stations, and that hold rooms may be stocked with sport style five gallon coolers and cups. Defendants' Statement at 1.B. Detainees have the option to drink from either of these. *Id.* Thus, detainees have access to water at all times. *Id.* Border Patrol agents regularly check to make sure water is available to minors. *Id.* In addition, the water jugs in CBP hold rooms are regularly cleaned, and bleach is not used for cleaning these water jugs. *Id.*

Plaintiffs' witnesses state in their own depositions that they had access to drinking

water.  *Id.* Therefore, even if the Court finds at an evidentiary hearing that Plaintiffs

have met their heavy burden on this issue, there is still good reason to find that

Defendants can establish that they are substantially in compliance with the

Agreement.

### C.  Sanitary Conditions

Plaintiffs present almost no evidence that would establish that the conditions in

CBP facilities are unsanitary. *See* Plaintiff' Statement at 1.C. The evidence they

identify to suggest that CBP hold rooms are unclean consists of the statements of three

individuals, one of whom is class counsel Peter Schey, who purportedly observed that

a single hold room was dirty. *Id.* The remainder of the evidence identified by

Plaintiffs on this topic consists of general statements that individuals had to lie down

or sleep close to the toilet in CBP hold rooms. *Id.* However, this evidence is

insufficient to meet Plaintiffs' burden to establish that Defendants have breached the

Agreement on this issue.

Moreover, this evidence is substantially disputed by Defendants' evidence,

which establishes that the hold rooms in CBP facilities where Plaintiffs' witnesses

were held are cleaned regularly and are monitored for cleanliness and to ensure that

the toilets and sinks function properly. Defendants' Statement at 1.C. Thus, even if the

Court finds at an evidentiary hearing that Plaintiffs have met their heavy burden on

this issue, there is still good reason to find that Defendants can establish that they are

substantially in compliance with the Agreement.

### D. Temperature

Plaintiffs' evidence on the issue of temperature consists of statements by individuals that they experienced what they felt were cold temperatures while in CBP custody at a limited number of CBP facilities. Plaintiffs' Statement at 1.G; Exhibit 47 (identifying the CBP facilities at which Plaintiffs' witnesses were held). Notably, Plaintiffs provide no evidence from a medical professional that any class member suffered any medical issue or harm related to the temperatures in a CBP facility. Plaintiffs rely only on statements of lay witnesses regarding issues they believed stemmed from cold temperatures, such as colds, or "spots" on a child's face. *Id.* In contrast, Defendants' evidence establishes that at the facilities where Plaintiffs' witnesses were held, Defendants regularly monitor the temperatures in hold rooms. Defendants' Statement at 1.G. The acceptable range of temperature at these facilities is between 66-80 degrees. *Id.* Detainees are also provided mylar blankets for additional warmth. *Id.* Thus, even if the Court finds at an evidentiary hearing that Plaintiffs have met their heavy burden on this issue, which Defendants submit they cannot, there is still good reason to find that Defendants can establish that they are substantially in compliance with the Agreement.

### 3.   Issues That Are Not Covered By The Agreement

Plaintiffs ask the Court to read requirements into the Agreement that do not appear anywhere within its terms, including a requirement that CBP provide minors with sleeping accommodations, toothbrushes, toothpaste, showers, soap, towels, and dry clothes, all in the specific manner Plaintiffs believe would be required or appropriate. *See* Plaintiffs' Supp. Brief at 7-9, 10-12; Plaintiffs' Statement at 1.D. However, the Court should decline to redraft the Agreement to include terms that

were not agreed upon in 1997. *See United States v. Armour & Co.*, 402 U.S. 673, 682 (1971) ("[T]he scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it."); *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 896 F.2d 412, 413 (9th Cir.1990) (noting the same). If Plaintiffs wish to challenge the availability of sleeping accommodations in CBP facilities, or assert that certain hygiene items or clothing items must be provided, they must do so in a new lawsuit. To find otherwise would allow Plaintiffs to use the Agreement to require any number of conditions at CBP facilities that were never intended to be covered by this Agreement.

## A. Sleep

As Defendants explained in the last round of supplemental briefing, and for the reasons discussed above, CBP is not in in breach of the Agreement because it does not provide minors in its custody the exact sleeping conditions that Plaintiffs desire, but that are found nowhere in the Agreement. On this issue, Plaintiffs ignore the plain terms of the Agreement, which does not address sleep anywhere within its four corners, and seek to add specific and detailed sleeping requirements to the Agreement twenty years after it was signed and agreed to by the parties. For all of the reasons addressed in their September 26, 2016, supplemental briefing, Defendants contend that the Court should not find that the Agreement contains a requirement to provide specific sleeping accommodations, where no such requirement is articulated therein.[3]

---

[3] Moreover, if the Court does find that the Agreement contains a sleeping requirement, then the Court should allow testimony at the evidentiary hearing regarding what conditions are available at CBP facilities, and whether it is in fact possible for minors to sleep at those facilities. Defendants contend that minors do routinely sleep in CBP custody, and dispute Plaintiffs' contention that they subject minors to sleep deprivation. *See* Defendants' Statement at 1.H. In fact there is no

### B.  Provision of Toothbrushes, Toothpaste, Showers, and Dry Clothing

Plaintiffs contend that "Class Members are not provided with soap and towels to wash when detained or warm showers, towels or toothbrushes after being detained for longer periods of time." Plaintiffs' Supp. Brief at 7. Plaintiffs also assert in their Statement of Facts that Defendants do not provide class members with dry clothing when theirs is soiled or wet. Plaintiffs' Statement at 1.C. As above, these requirements are not contained in the Agreement, and should not be read into it in the absence of any explicit indication within the four corners of the Agreement that the parties intended to require CBP to take such steps.

If the Court decides that the Agreement does contain implicitly these requirements, then this issue requires resolution of disputed issues of fact by the Court. Plaintiffs' evidence – which is inadmissible in large part – establishes only a few instances where witnesses claim they were not provided access to soap, or were not provided a shower or toothbrush despite being in CBP custody more than forty-eight hours. Plaintiffs' Statement at 1.E and 1.F. Similarly, Plaintiffs provide limited evidence of a few instances where individuals allege that they were wearing wet clothes and were not provided the ability to change those clothes. Plaintiffs' Statement at 1.D.

---

evidence that Defendants in any way prohibit minors from sleeping, or make efforts to limit their ability to sleep. Because there are disputes of fact on this issue, if the Court finds that the Agreement contains a sleep requirement, Plaintiffs should be required to prove a breach of that requirement at the evidentiary hearing by clear and convincing evidence.

Defendants' evidence establishes that as a matter of policy and practice, Defendants provide minors with access to soap while in hold rooms at CBP facilities, and provide toothbrushes, toothpaste, and showers, to minors who must remain in CBP facilities for longer periods of time, to the greatest extent possible. Defendants' Statement at 1.E and 1.F. Defendants' evidence also establishes that CBP provides minors with clean and dry clothing. Defendants' Statement at 1.D. In light of the fact that the Agreement does not contain these requirements within its four corners, the Court should find that Plaintiffs have not met their burden to show that Defendants have breached the Agreement with regard to this issue, and that CBP is complying with a good faith and reasonable interpretation of the Agreement. *See Dual Deck Video*, 10 F.3d at 695.

> b. <u>Whether provisions of the Flores Agreement, in particular Paragraphs 14 and 19, require Defendants to make and record efforts to release minors from custody separate from the accompanying parent under certain circumstances.</u>

and

> c. <u>Whether keeping minors in ICE Family Residential Centers for longer than 20 days violates the Flores Agreement.</u>

Both of these are legal issues that the Court can resolve without resolution of any factual issues.[4] And both turn on a central legal question: can the Court read the Agreement to prohibit, on a class-wide basis, the continued detention of a minor who is in mandatory detention because he or she is subject to an expedited removal order,

---

[4] Defendants' witnesses acknowledge that ICE generally does not seek to release minors who are accompanied by a parent or guardian to another adult. *See* Declaration of Hectero D. Salina ("Salina Decl."), Exhibit 44, at ¶ 3; Declaration of Juanita Hester ("Hester Decl."), Exhibit 42, at ¶ 3; Declaration of Joshua Reid ("Reid Decl."), Exhibit 43, at ¶ 3.

and/or is being detained under a final order of removal? As Defendants have explained in previous briefing, the answer to that question is no.

The Agreement states that ICE "shall make and record the prompt and continuous efforts on its part toward . . . the release of the minor pursuant to Paragraph 14." Agreement ¶ 18.  Paragraph 14 then states that "[w]here INS determines that the detention of the minor is not required either to secure his or her timely appearance before the INS or the immigration court, or to ensure the minor's safety or that of others, the INS shall release a minor from its custody without unnecessary delay." Agreement ¶ 14. Thus, according to the plain terms of the Agreement, if detention of a minor is required to secure his or her appearance before ICE for removal, or before an immigration judge, ICE is not obligated to release the minor.

It must be considered that in cases where an individual is being held in mandatory detention, Congress has already specified that detention is required to secure the appearance of that individual. As applicable here, Congress has deemed to make detention mandatory in cases of expedited removal. 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). Thus, Paragraph 14 should not be read to require the release of a minor who is in mandatory detention under the expedited removal provision of the INA.

When ICE does not release a minor pursuant to Paragraph 14 of the Agreement, "the minor shall remain in [ICE] custody . . . until such time as release can be effected in accordance with Paragraph 14 above or until the minor's immigration proceedings

17

are concluded." Agreement ¶ 19. In the event of an influx (more than 130 minors available for placement), ICE must place minors according to Paragraph 19 as "expeditiously as possible." Agreement ¶ 12. Thus, as Defendants have previously argued, and the Court has suggested it agrees, where ICE is detaining minors who are in mandatory detention for a short period of time while their claims of credible or reasonable fear are adjudicated, this detention is fully consistent with the Agreement, and with the Court's August 2015 Order. See October 6, 2016 Hearing Tr. at 12-13.

In response to the Court's query, *see* October 7, 2016 Order at 2.a, Defendants are submitting evidence to demonstrate that the number of minors who remain in Government custody at an ICE family residential center for longer than twenty days continues to be a very small percentage of those who are apprehended. *See* Declaration of Philip T. Miller, Exhibit 45, at ¶ 5 (stating that for the 48,940 residents initially booked into an ICE family residential center from October 23, 2015 to November 19, 2016, and subsequently released or removed as of November 19, 2016, 34% were released in ten days or less, 95% were released in 20 days or less, and 99% were released in 30 days or less; also stating that the average length of stay for those individuals was 12.6 days).[5]

More specifically, on November 19, 2016, out of a total of 1,085 minors who were in custody at an ICE family residential center, 59 minors had been in custody for

---

[5] Notably, ICE maintained these averages despite the fact that family unit apprehensions on the U.S. southwest border increased by more than two and a half times in the months of October and November from FY2015 to FY2016: from 2162 (Oct) and 2415 (Nov) to 6026 (Oct) and 6471 (Nov). *See* United States Border Patrol, Family Unit Apprehension Statistics, available at:
https://www.cbp.gov/sites/default/files/documents/BP%20Total%20Monthly%20Family%20Units%20by%20Sector%2C%20FY13-FY16TD-Jan.pdf

more than 20 days. *See* Salina Decl. ¶ 4; Hester Decl. ¶ 4; Reid Decl. ¶ 4. In all of those cases except three (who had recently been issued an NTA and were subsequently released), those minors in custody for longer than twenty days on November 19, 2016 were subject to mandatory detention because they were in expedited removal proceedings pending assessment of their credible fear claims, including review by an immigration judge, and/or were subject to a final order of expedited removal under 8 U.S.C. § 1225,[6] or they were subject to a final order of

---

[6] The expedited removal process is a streamlined administrative process that results in the prompt issuance of removal orders for individuals apprehended at or near the border, and provides for limited forms of relief and review. If a Border Patrol agent or other immigration officer makes a determination that the alien is an arriving alien, or other "designated alien," with some exceptions, expedited removal proceedings may be instituted against the alien. Designated aliens under 8 U.S.C. § 1225(b)(1)(A), encompass any alien encountered within 100 air miles of the border and 14 days of entry, and aliens who arrived in the United States by sea. 8 C.F.R. § (b)(1)(ii).  If an arriving alien or designated alien is inadmissible under 8 U.S.C.  §§ 1182(a)(6)(C) for having attempted entry by fraud or misrepresentation,  or 1182(a)(7), for not being in possession of valid entry documents, the alien "shall be ordered removed from the United States without further hearing or review."  8 U.S.C.  § 1225(b)(1)(A)(i), (iii); 8 C.F.R. § 235.3(b)(2). The statute provides for a narrow exception for individuals who express a fear of returning to their home country or an intention to file for asylum. This is the only specified possible form of relief available in these proceedings. In the event fear is expressed, the officer "shall not proceed further" until a credible fear interview is conducted by an asylum officer. 8 C.F.R. § 235.3(b)(4). If the asylum officer finds that the alien has established a credible fear of persecution or torture, a Notice to Appear is issued and the alien is placed in 8 U.S.C. § 1229 proceedings before an immigration judge. If the asylum officer does not find credible fear is established, DHS "shall order the alien removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(I);  8 C.F.R. § 208.30(g)(ii). However, the alien can request that an immigration judge review the negative credible fear determination. 8 U.S.C. § 1225(b)(1)(B)(iii)(III); 8 C.F.R. § 1208.30(g)(ii).  If the immigration judge concurs with the asylum officer's negative credible fear finding, the "case shall be returned to the Service for removal of the alien." 8 C.F.R. § 1208.30(g)(iv)(A). The immigration judge can also overturn the asylum officer's determination and find credible fear is established. In that case, the judge's decision vacates the underlying expedited removal order. 8 C.F.R. § 1208.30(g)(iv)(B). Note that aliens may raise a claim of fear at any time in the

removal under 8 U.S.C. § 1231, and detained pending their removal from the United States. *See* Salina Decl. ¶ 4, Exhibit 1; Hester Decl. ¶ 4, Exhibit 1; Reid Decl. ¶ 4, Exhibit 1.The Court has stated that the detention for longer than twenty days of individuals with a final order of removal is permissible under the Agreement. October 6, 2016 Hearing Tr. at 12:14-16. Moreover, for the reasons discussed above the continued detention of individuals who are in mandatory detention is also permissible under the Agreement – and is required by law. Thus, there is good reason to find that these limited instances of continued detention under a final order of removal, and in many cases subject to mandatory detention, do not violate the Agreement.

Finally, even if the Court decided that in fact it does have authority to order Defendants to release minors otherwise subject to mandatory detention, and/or who have a final order of removal and are awaiting removal – which Defendants maintain it does not for all of the reasons argued in prior briefing – the question for the Court becomes whether it is preferable to break up families in order to effectuate the release of the child, or to maintain family unity by holding the child in an ICE family residential center with his or her parent. The Government contends that even if it were possible to release the child separately from his or her parent or guardian in these instances, such release would not be required if, as an initial matter, the Government determines that it is necessary to keep the child with his or her mother "to ensure the minor's safety or that of others . . . ." Agreement ¶ 14. In the majority of cases, it is safer for the child to remain with his or her parent at an ICE FRC than for that child to

---

process. 8 C.F.R. § 235.3(b)(4). In addition, aliens in expedited removal proceedings are subject to mandatory custody at all stages of the proceedings. 8 U.S.C. §§ 1225(b)(1)(B)(iii)(IV), 1225(b)(1)(B)(ii); 8 C.F.R. § 235.3(b)(2)(iii).

be released to a purported family member.[7] The Court previously responded to this concern by ordering that the Government must release the accompanying parent along with the child, but the Ninth Circuit has since found that this solution is not required by the Agreement. *See Flores v. Lynch*, 828 F.3d 898, 908-09 (9th Cir. 2016). Thus, even if the INA does not preclude the Court from ordering that the Government release a child separately from his or her parent or guardian, in the majority of cases this exception to the release provision will counsel in favor of maintaining the child in custody with his or her parent.

> d. <u>Whether Defendants have violated Paragraph 27 of the Flores Agreement by transferring minors who are represented by counsel without advance notice to their counsel.</u>

As an initial matter, Plaintiffs have not offered any evidence on this issue that would be admissible under the Federal Rules of Evidence at an evidentiary hearing, and Plaintiffs do not state that any of the witnesses who provided declarations on this issue will be offered to present live testimony at the evidentiary hearing. *See* Plaintiffs' Statement at 7; Objections. Therefore, the Court should find that Plaintiffs cannot meet their burden of proof on this issue and should deny their motion on this claim.

However, even if the Court chooses to consider Plaintiffs' evidence on this issue, then the Court can resolve this issue without an evidentiary hearing because

---

[7] If it were necessary to release any minor separately from their accompanying parent or guardian, in nearly every instance it would be necessary to transfer that minor to U.S. Department of Health and Human Services ("HHS") custody so that HHS could screen the proposed custodian for suitability prior to releasing the child to the custody of that custodian. This is because HHS is the only agency with the institutional expertise in assessing potential sponsors for suitability and determining whether release is appropriate.

Plaintiffs still cannot meet their burden of proof. Specifically, Plaintiffs identify only one declaration, that of Attorney Steven McCarthy, which identifies a specific instance in which a minor was transferred without notice to his attorney. Plaintiffs' Statement at 7. However, Mr. McCarthy was not notified in that instance because he was not the attorney of record for the minor in question. *See* Hester Decl. ¶ 6. Thus, the Court can find that ICE did not violate the Agreement with regard to the incident described by Mr. McCarthy because ICE is not required to notify an attorney of the transfer of a minor if that attorney has not entered a G-28 form identifying himself as the attorney of record.

Moreover, the Court should find that Plaintiffs have not met their burden of proof on this issue because other than the single instance described by Mr. McCarthy, Plaintiffs' evidence consists of vague, general statements that ICE does not notify attorneys before transferring minors, provided by two attorneys, with no specific examples provided. Plaintiffs' Statement at 7. This evidence, without more, does not meet Plaintiffs' burden to establish that Defendants are breaching the Agreement in this regard.

Finally, if the Court somehow finds that Plaintiffs' evidence is sufficient to meet their burden on this issue, and decides that this issue should be resolved at the evidentiary hearing, then the evidence Defendants are prepared to present at the hearing gives good reason to find that Defendants are not in breach of the Agreement. ICE witnesses, who are prepared to testify at an evidentiary hearing, state that ICE policy is to provide advance notice to a minor's attorney of record before transferring the minor, and that ICE records show that in all but a very small number of cases, where a minor was transferred, his or her attorney was notified in advance of that transfer. Salinas Decl. ¶ 5; Hester Decl. ¶ 5; Reid Decl. ¶ 5; Def. Exh. 20, ECF No.

215-1, at ¶ 16; Def. Exh. 21, ECF No. 216-1, at ¶ 16. Thus Defendants can conclusively rebut Plaintiffs' allegations, and can show that they are in substantial compliance with the Agreement on this point.

### C. The Court Should Not Consider New Issues That Plaintiffs Did Not Raise In Their Enforcement Motion.

Plaintiffs' supplemental brief raises new issues that the Court did not identify as issues to be addressed at the evidentiary hearing, and that were not identified as claims in Plaintiffs' enforcement motion nor otherwise previously briefed or argued in this case. Specifically, Plaintiffs now argue for the first time:

- "Defendants have no contracts with licensed programs to place accompanied minors pursuant to the Flores Agreement, Paragraph 14E, nor do Defendants promptly place minors in licensed programs under Paragraphs 19 and 12A." Plaintiffs' Supp. Br. at 16-17.
- "Defendants have not prepared or provided Class Counsel with copies of 'a written plan that describes the reasonable efforts that [Defendants] will take to place all minors as expeditiously as possible' during periods of influx as required by Paragraph 12C." Plaintiffs' Supp. Br. at 17.
- "Defendants do not have procedures in place to obtain Affidavits of Support for those willing to accept custody of a minor as required by Paragraph 15 or to conduct suitability assessments of those willing to accept custody of a minor as required by Paragraph 17 of the Flores Settlement." Plaintiffs' Supp. Br. at 18.
- "Defendants do not assess whether individual Class Members pose a substantial flight risk merely because their mothers did not pass a credible fear interview." Plaintiffs' Supp. Br. at 18-19.
- "Flores Class Member children are held in unlicensed facilities in violation of Paragraphs 6, 12A, and 19." Plaintiffs' Supp. Br. at 19-20.

At the October 6, 2016 Hearing, the Court stated, "Well, let me just say my rule of thumb is that we are -- the base from which we are proceeding is the motion that was filed. That defines the parameters of the issues that we're dealing with. So I'm not going to have new allegation[s]. I mean, I have enough to deal with the current motion. Let's focus on the issues raised in the motion itself." October 6, 2016 Hearing Tr. at 54:14-20. In reliance on this statement, Defendants are not responding to these

23

new arguments Plaintiffs raise for their first time in their supplemental brief, and contend that the Court should decline to consider these new issues in this proceeding. To the extent the Court intends to address these new issues at the evidentiary hearing or consider them in conjunction with the pending motion, Defendants request the opportunity to submit further briefing on these issues.[8]

### III.   <u>CONCLUSION</u>

Defendants request that the Court find in favor of Defendants as a matter of law on Issues b through d, identified in the Court's October 7, 2016 hearing. For Issue a, or any of the other issues for which the Court finds there are disputed issues of fact to be resolved, Defendants request that the Court hold the January 30, 2017 evidentiary hearing in accordance with the Federal Rules of Evidence and require that Plaintiffs provide admissible evidence in order to meet their heavy burden to establish that Defendants are in breach of the Agreement by clear and convincing evidence. In conclusion, Defendants ask the Court to find that Plaintiffs cannot meet their burden to establish that Defendants are in breach of the Agreement, and that even if they have met that burden, Defendants are in substantial compliance with the terms of the Agreement. Accordingly, Defendants request that the Court deny Plaintiffs' enforcement motion in its entirety.

---

[8] Plaintiffs also continue to argue that the commingling of minors and unrelated adults at ICE facilities violates the Agreement, and that Defendants are violating Plaintiffs' right to counsel. Both of these arguments were rejected by the Court at the October 6, 2016 hearing, and not set to be considered at the evidentiary hearing. *See* Hearing Tr. at 9:14-21; 13:9-18. To the extent the Court continues to consider these issues, Defendants incorporate herein the arguments laid out in their June 3, 2016 Opposition brief.

DATED:       December 16, 2016           Respectfully submitted,


BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
Civil Division

LEON FRESCO
Deputy Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation

WILLIAM C. SILVIS
Assistant Director, District Court Section
Office of Immigration Litigation

*/s/ Sarah B. Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-4824
Fax: (202) 305-7000
Email: sarah.b.fabian@usdoj.gov

*Attorneys for Defendants*

1

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2016, I served the foregoing pleading on all counsel of record by means of the District Clerk's CM/ECF electronic filing system.

/s/ *Sarah B. Fabian*
SARAH B. FABIAN
U.S. Department of Justice
District Court Section
Office of Immigration Litigation

Attorney for Defendants