# Defendants' Exhibit 30

```
                                                                    1
                    UNITED STATES DISTRICT COURT
              FOR THE CENTRAL DISTRICT OF CALIFORNIA

     JENNY LISETTE FLORES,      )
     et al.,                    )
                                )
                                )
                Plaintiffs,     )
     VS.                        ) Case No. CV 85-4544 DMG
                                )
                                )
     LORETTA E. LYNCH,           )
     Attorney General of the    )
     United States, et al.,     )
                                )
                                )
                Defendants.     )
     ---------------------------x
```

ORAL DEPOSITION OF MANUEL PADILLA, JR., produced as a witness at the instance of the Plaintiffs and duly sworn, was taken in the above-styled and numbered cause on the 23rd day of September, 2016 from 1:36 p.m. to 3:21 p.m. before Katherine J. Brookbank, CSR in and for the State of Texas, reported by method of machine shorthand, at the office of Rio Grande Valley Sector, 4400 South Highway 281, Edinburg, Texas, 78539, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record hereto.


Job No. 46492

```
                                                                          2

  1                         A P P E A R A N C E S

  2
         FOR THE PLAINTIFF, JENNY LISETTE FLORES:
  3

  4          CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
             256 South Occidental Boulevard
  5          Los Angeles, California 90057
             BY:  Peter A. Schey, Esq. (Via telephone)
  6               pschey@centerforhumanrights.org

  7

  8      FOR THE DEFENDANTS LORETTA E. LYNCH, Attorney General of
         the United States, et al.:
  9
             DISTRICT COURT SECTION
 10          OFFICE OF IMMIGRATION LITIGATION
             P.O. Box 868, Ben Franklin Station
 11          Washington, D.C. 20044
             BY:  Sarah B. Fabian, Esq., Senior Litigation Counsel
 12               sarah.b.fabian@usdoj.gov

 13

 14

 15

 16      ALSO PRESENT:

 17          U.S. DEPARTMENT OF HOMELAND SECURITY
             4400 South Expressway 281
 18          Edinburg, Texas  78542
             BY:  Eric J. Drootman
 19               eric.drootman@cbp.dhs.gov

 20

 21

 22

 23

 24

 25
```

```
                                                                  3
 1                              INDEX
                                                               PAGE
 2
     Appearances -------------------------------------------    2
 3
     Stipulations (Attached hereto) ---------------------------  N/A
 4
     MANUEL PADILLA, JR.
 5
          Examination by Mr. Peter Schey ----------------------  4
 6

 7

 8
                               EXHIBITS
 9   NO. DESCRIPTION                                           PAGE

10   Exhibit 1 - Declaration of Mr. Manuel Padilla, Jr.          4

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1   down and sleep, would you give that -- would you say:  Yes, go
2   ahead and do that?  Or would you have a problem with -- with
3   the supervisor doing that?
4              MS. FABIAN:  Object to form.  Foundation.
5              THE WITNESS:  Yes, sir.  I would have a -- I
6   would do an assessment of the -- of the facilities and
7   resources that we have available here.  As you are describing
8   that scenario, if we are talking about a minor that has been
9   processed, he or she would have the opportunity to sleep
10  comfortably at UrsUla.  And of course he or she would have the
11  opportunity to sleep in one of the processing facilities.
12       Q    (BY MR. SCHEY) You mean the ICE processing facilities
13  or CBP?
14       A    Well, if they are within CBP custody, I am talking
15  about CBP facilities.
16       Q    Okay.  And that would be -- if they went to Ursula,
17  they would be driven to Ursula.  Correct?
18       A    Correct.
19       Q    And if they went to another Border Patrol station
20  where they might be able to sleep, they would be also driven in
21  a vehicle.  Is that correct?
22       A    Correct.
23       Q    And would your agents be able to look on-line at some
24  capacity report for that day to determine where there may be
25  space before they called the supervisor of that station?

23

1     MS. FABIAN: Object to form.

2     THE WITNESS: We are -- we are discussing,
3 Peter, a hypothetical situation. Because again, I have not
4 seen Ursula being at a capacity where we do not have any space.
5     Q     (BY MR. SCHEY) I see.
6     A     Yeah.
7     Q     So basically your response is, it should be possible
8 to resolve those by going to Ursula rather than resorting to
9 another station. Is that what you are saying?
10    A     Yes, sir.
11    Q     Okay. If Ursula was filled for some reason, could
12 that supervisor then contact other supervisors in the sector to
13 determine if they had space for that child to sleep?
14    MS. FABIAN: Object to form.
15    THE WITNESS: Yes, sir. I am not connecting too
16 much with the scenario because if Ursula was full there would
17 be larger issues that we would have -- that we would be dealing
18 with. So we would -- you know, we would kind of triage the
19 situation and find out what the point of failure is, why Ursula
20 is full. Would it be the processing? Would it be the
21 transition to the other agencies? Or start triaging that
22 situation. To the very core of your question, yeah, we would
23 do an assessment and see what -- you know, how we could -- how
24 we could get a child to sleep.
25    Q     (BY MR. SCHEY) Including potentially at another

1    Q   I understand that.  But I am just saying, there is no
2  place in the welfare check E3DM system -- there is no field to
3  say that this person or the mother complained that it was too
4  cold to sleep.  Is that fair to say?
5    A   That is fair to say.
6    Q   And there is also no place to check if a person
7  claimed that they did not get fed.  Is that correct?
8           MS. FABIAN:  Object to form.  Foundation.
9    Q   (BY MR. SCHEY) I realize that agents are supposed to
10 record when people are fed.
11   A   Correct.
12   Q   But I am saying, there is no field to enter if the
13 alien claimed that he had not been fed.
14   A   That is correct.  But the likelihood of somebody
15 going unfed when you have the -- you know, the feeding times
16 and the contractors in there, you know, that many people in
17 there, it's so unlikely, Peter, that it's -- that it is an
18 anomaly that I would have -- I would require more information
19 to find out exactly what happened.
20   Q   All right.  I understand from the -- at least the
21 visit that I had in McAllen a few months ago, I understand that
22 the Border Patrol agents go to a local outlet to purchase the
23 food for the detainees.  Is that correct?
24   A   Correct.
25   Q   And I understand that with regards to the sandwiches,