UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544 DMG (AGRx)** | Date | January 20, 2017 |
| Title | *Jenny L. Flores, et al. v. Loretta E. Lynch, et al.* | Page | 1 of 8 |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
| None Present | None Present |

Proceedings:  **IN CHAMBERS - ORDER RE PLAINTIFFS' MOTION TO ENFORCE [239]**

**I.**
**INTRODUCTION**

On August 12, 2016, Plaintiffs Jenny L. Flores and other class members filed a motion to enforce the parties' 19-year-old consent decree[1] ("the *Flores* Agreement") against Defendants Loretta Lynch and the U.S. Department of Homeland Security ("DHS") and its subordinate entities, U.S. Immigration and Customs Enforcement ("ICE") and U.S. Customs and Border Protection ("CBP").  ("Mot.") [Doc. # 239.]  Plaintiffs contend that the *Flores* Agreement "guarantee[s] children whom the Government refuses to release the right to a bond redetermination hearing . . . as a procedural check against wrongful detention."  Mot at 1.

After having duly considered the parties' written submissions and oral argument, the Court **GRANTS** Plaintiffs' motion to enforce the *Flores* Agreement.

**II.**
**FACTUAL BACKGROUND**

**A.**    **Paragraph 24A of the *Flores* Agreement**

The *Flores* Agreement arose out of a settlement between class members—accompanied and unaccompanied immigrant minors detained by federal authorities at the United States' southern border—and Defendants in an action originally filed on July 11, 1985.  *See generally* July 24, 2015 Order at 1-2 [Doc. # 177]; *see also Flores v. Lynch*, 828 F.3d 898, 901-904 (9th

---

[1] *See* Plaintiffs' First Set of Exhibits in Support of Motion to Enforce Settlement, Exh. 1 ("*Flores* Agreement").  [Doc. # 101.]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | | Date | January 20, 2017 |
|---|---|---|---|---|
| Title | *Jenny L. Flores, et al. v. Loretta E. Lynch, et al.* | | Page | 2 of 8 |

Cir. 2016) (providing history of the *Flores* litigation and affirming this Court's finding that the *Flores* Agreement applies to accompanied and unaccompanied minors).

Paragraph 24A of the *Flores* Agreement states: "A minor in deportation proceedings[2] shall be afforded a bond redetermination hearing before an immigration judge in every case, unless the minor indicates on the Notice of Custody Determination form that he or she refuses such a hearing."[3] *Flores* Agreement ¶ 24A.

Paragraph 24A of the *Flores* Agreement appears to be consistent with the Immigration and Nationality Act.  Section 236 of the INA gives the Attorney General authority to exercise discretion to release a detained alien on bond.  8 U.S.C. § 1226(a)-(b).  This authority has been expressly delegated to immigration judges.  *See* 8 C.F.R. §§ 1003.19; 1236.1(d).  Thus, immigration judges may "exercise the authority in 236 of the [INA] . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released[.]"  8 C.F.R. § 1236.1(d).  Among other requirements, an alien in a custody determination must establish that he or she does not present a danger to persons or property and is not a flight risk.  *See, e.g.*, *Matter of Guerra*, 24 I & N Dec. 37, 38 (BIA 2006).

**B.     Post-*Flores* Agreement Statutes**

According to Defendants, Paragraph 24A no longer applies to unaccompanied minors because it has been superseded by two federal statutes enacted after the 1997 *Flores* Agreement:

---

[2] According to Plaintiffs, administrative proceedings to determine a non-citizen's right to remain in the United States have generally been re-designated as "removal," rather than "deportation" proceedings.  Mot. at 2 n.3 (citing Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. 104-208, Div C, § 309(a), 110 Stat. 3009 (1996)).  Defendants do not challenge this characterization.  The Court will therefore treat "deportation proceedings" as written in the *Flores* Agreement as synonymous with "removal proceedings."

[3] Generally, "bond redetermination hearings" refer to an immigration judge's review of any bond set by DHS or ICE shortly after it detains an undocumented immigrant.  *See* 8 C.F.R. §§ 1003.19, 1236.1.  The parties appear to use the terms "bond hearing" and "bond redetermination hearing" interchangeably, likely in part because Plaintiffs contend most affected class members never received a bond hearing to begin with.  *See* Oral Tr. at 9/16/16 (Defense counsel stating that the Department of Health and Human Services ("HHS") generally does not issue bonds to unaccompanied minors) [Doc. # 259].  Defendants use only the term "bond hearing" throughout their opposition brief.  *See, e.g.*, Opp. at 5 ("The [Flores] Agreement provides that for minors in immigration proceedings, a bond hearing should be provided in all cases unless waived by the minor.").  While there is at least one example in the record of an unaccompanied minor receiving a $20,000 bond upon detention, *see* Declaration of Megan Stuart ("Stuart Decl.") ¶ 17 [Doc. # 239-2], the Court will use the terms "bond hearing" and "bond redetermination hearing" interchangeably.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544 DMG (AGRx)** | Date | January 20, 2017 |
|---|---|---|---|

| Title | **_Jenny L. Flores, et al. v. Loretta E. Lynch, et al._** | Page | 3 of 8 |
|---|---|---|---|

the Homeland Security Act of 2002 and the Trafficking Victims Protection Reauthorization Act of 2008.

Under the Homeland Security Act, Congress transferred functions relating to the care and placement of unaccompanied children from the INS[4] to the Director of Office of Refugee Resettlement ("ORR") of the Department of Health and Human Services ("HHS"). 6 U.S.C. § 679(a). This includes functions like "coordinating and implementing the care and placement of unaccompanied alien children," making placement determinations, and overseeing the facilities where certain unaccompanied children may reside. _Id._ § 679(b)(1). When it comes to making placement determinations, however, the Homeland Security Act requires ORR to coordinate efforts with other government entities (i.e., Bureau of Border Security and Bureau of Citizenship and Immigration Services). _Id._ § 679(b)(2). It also mandates that ORR "shall not release [unaccompanied alien] children upon their own recognizance." _Id._

Like the Homeland Security Act, the TVPRA creates rules for how the government should handle unaccompanied alien children. For instance, under the TVPRA, "the care and custody of all unaccompanied alien children, including responsibility for their detention, where appropriate, shall be the responsibility of the Secretary of Health and Human Services," consistent with the Homeland Security Act. _See_ 8 U.S.C. § 1232(b)(1) (citing 6 U.S.C. § 279). The TVPRA requires HHS to promptly place unaccompanied children in the "least restrictive setting that is in the best interest of the child," and consider "danger to self, danger to the community, and risk of flight." _Id._ § 1232(c)(2)(A). Moreover, the TVPRA states children shall not be placed in secure facilities "absent a determination that the child poses a danger to self or others or has been charged with having committed a criminal offense." _Id._

## C.   Class Plaintiffs

Plaintiffs submit declarations from class members or their attorneys illustrating how unaccompanied children have been denied bond hearings even though Defendants have commenced removal proceedings against them. For example, Hector Estiven Boteo Fajardo entered the United States when he was 15 or 16 years old and was arrested in San Ysidro, California. Declaration of Hector Estiven Boteo Fajardo ("Boteo Decl.") ¶¶ 9-10 [Doc. # 239-3]; Declaration of Helen Lawrence ("Lawrence Decl.") ¶ 3, 23 [Doc. # 253.] Originally from Guatemala, his past experiences include being kidnapped by a coyote, suffering physical abuse

---

[4] With passage of the Homeland Security Act, Congress abolished the INS and formed the Department of Homeland Security and the Immigration and Customs Enforcement ("ICE"), which, among other governmental entities, assumed the INS's former immigration functions. 6 U.S.C. §§ 111, 251, 291.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544 DMG (AGRx)** | | Date | January 20, 2017 |
|---|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Loretta E. Lynch, et al.* | | Page | 4 of 8 |
|---|---|---|---|---|

from his extended family, and being exposed to gang violence and threats. Boteo Decl. ¶¶ 2-8. Boteo has a mother residing in Los Angeles. Lawrence Decl. ¶ 6. Yet, he is currently in a secure juvenile detention facility in Yolo County, California that is not licensed to care for dependent children. *Id.* ¶ 3; Mot., Ex. 15 at 4 (May 26, 2016 letter from Plaintiffs to Defendants) [Doc. # 239-3]. The ORR has not provided Boteo's attorney with an explanation for his ongoing detainment, which has now exceeded 13 months. Lawrence Decl. ¶¶ 3, 8-9. To date, as far as the Court is aware, Boteo has not been provided with a bond hearing. *Id.* ¶ 23; Ex. 15 at 3.

According to class counsel, there are roughly 200 or 300 unaccompanied children currently detained by HHS/ORR in secure facilities nationwide. *See* Oral Tr. at 9/16/16.

**II.**
**LEGAL STANDARD**

The Court incorporates the legal standard that it articulated in its July 24, 2015 Order and need not repeat it here. [Doc. # 177.]

**III.**
**DISCUSSION**

**A.      Savings Clause**

The Homeland Security Act contains the following savings clause:

Savings provisions. Subsections (a), (b), and (c) of section 1512 [6 USCS § 552] shall apply to a transfer of functions under this section in the same manner as such provisions apply to a transfer of functions under this Act to the Department of Homeland Security.

6 U.S.C. § 279(f)(2) (brackets in original). Section 1512 in turn states:

(a) Completed administrative actions.
   (1) Completed administrative actions of an agency shall not be affected by the enactment of this Act or the transfer of such agency to the Department, but shall continue in effect according to their terms until amended, modified, superseded, terminated, set aside, or revoked in accordance with law by an officer of the United States or a court of competent jurisdiction, or by operation of law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | January 20, 2017 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Loretta E. Lynch, et al.* | Page | 5 of 8 |
|---|---|---|---|

(2) For purposes of paragraph (1), the term "completed administrative action" includes orders, determinations, rules, regulations, personnel actions, permits, agreements, grants, contracts, certificates, licenses, registrations, and privileges.

6 U.S.C. § 552(a).

Plaintiffs contend that these savings provisions, which the TVPRA incorporated, preserve Paragraph 24A of the *Flores* Agreement. Mot. at 11; 8 U.S.C. 1232(b)(1) (setting out standards for the care and custody of unaccompanied children "[c]onsistent with section 462 of the Homeland Security Act of 2002 (6 U.S.C. § 279)"). The Court agrees. The savings provisions expressly preserve the effect of existing "completed administration actions." The *Flores* Agreement falls under this category—it is an agreement or contract. *See* 6 U.S.C. § 552(a)(2). Indeed, Defendants "do not dispute that the savings clause maintained the [*Flores*] Agreement in effect as a consent decree (for example, in creating a hierarchy for release to certain sponsors)." Opp. at 15 n.11.

The next question then becomes whether Congress amended, modified, superseded, terminated, set aside, or revoked Paragraph 24A of the *Flores* Agreement by operation of law. *See* 6 U.S.C. § 552(a)(1). As discussed below, the Court finds that it did not.

**B.      Plain Language of Homeland Security Act and TVPRA**

Defendants argue that the savings clause "applies only to the extent it was not superseded or in conflict with subsequent laws" and "should not be viewed as rigidly freezing in place provisions aimed at the now defunct INS, or as creating free-standing authority for actions Congress did not authorize in either [the Homeland Security Act or the TVPRA]." Opp. at 15 n.11. In essence, Defendants contend that because the TVPRA created an entirely new immigration framework for unaccompanied children—by, among other things, giving HHS the authority to evaluate custodial adults before releasing minors to them—it superseded Paragraph 24A, such that unaccompanied children in HHS/ORR custody need not be provided with bonding hearings. *See id.* (describing the "different, child-welfare related function" served by HHS that is "not a part of the immigration enforcement scheme").

The problem with Defendants' argument is that the TVPRA (as well as the Homeland Security Act) is silent on the subject of bond hearings or whether the safety and placement provisions replace bond hearing requirements. This silence is in stark contrast to federal immigration laws and regulations, which explicitly reference bond hearings. *See* 8 USC § 1226(a)(2) (immigrant detainee may be released on "bond of at least $1,500 with security

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | January 20, 2017 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Loretta E. Lynch, et al.* | Page | 6 of 8 |
|---|---|---|---|

approved by, and containing conditions prescribed by, the Attorney General"); 8 C.F.R. 1003.19 (describing applications for an "initial bond redetermination" and "for the exercise of authority to review bond determinations"); 8 C.F.R. 1236.1(d)(1) ("After an initial custody determination by the district director, including the setting of a bond, the respondent may . . . request amelioration of the conditions under which he or she may be released."). The Court will not presume Congress intended to silently abrogate the *Flores* Agreement's bond hearing provision in the absence of actual or express language relating to bonds. *See Redmond-Issaquah R.R. Pres. Ass'n v. Surface Transp. Bd.*, 223 F.3d 1057, 1062 (9th Cir. 2000) ("Under established canons of statutory construction, 'it will not be inferred that Congress, in revising and consolidating the laws, intended to change their effect unless such intention is clearly expressed.'") (quoting *Finley v. United States*, 490 U.S. 545, 554 (1989)); *In re Mark Anthony Const., Inc.*, 886 F.2d 1101, 1107 (9th Cir. 1989) (stating that the rule articulated in *Finley* which "bars a court from construing a statute to have abrogated the common law, or to have established a new rule of law, without clear evidence in favor of such a construction . . . is firmly and sensibly entrenched in federal jurisprudence"); *see also Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154 (1976) ("It is, of course, a cardinal principle of statutory construction that repeals by implication are not favored.") (internal quotation marks and citation omitted).

To be sure, the TVPRA addresses the safety and secure placement of unaccompanied children. *See* 8 U.S.C. § 1232(c)(2). In particular, Defendants hone in on the TVPRA provision requiring HHS to evaluate a proposed custodian's ability to provide for the child's physical and mental well-being before placing an unaccompanied child with that person or entity. *Id.* § 1232(c)(3). But identifying appropriate custodians and facilities for an unaccompanied child is not the same as answering the threshold question of whether the child should be detained in the first place—that is for an immigration judge at a bond hearing to decide. *See* 8 U.S.C. § 1226; 8 C.F.R. §§ 1003.19; 1236.1(d). Assuming an immigration judge reduces a child's bond, or decides he or she presents no flight risk or danger such that he needs to remain in HHS/ORR custody, HHS can still exercise its coordination and placement duties under the TVPRA.[5] The Court sees no conflict between the TVPRA's requirements and Paragraph 24A of the *Flores*

_____

[5] Defendants argue that the TVPRA's provisions involving review of potential custodians are "inconsistent with the scheme proposed by Plaintiffs in which an immigration judge could order [an unaccompanied alien child] released even where HHS has determined that no suitable custodian is available to take custody of the [child]." Opp. at 16. Not so. If the initial proposed custodian is unfit to care for the unaccompanied child under the TVPRA, Defendants should follow Paragraph 14 of the *Flores* Agreement, which outlines an order of preference for the minor's release, in order to effectuate the least restrictive form of detention. *Flores* Agreement ¶ 14 (order of preference begins with the parent, followed by a legal guardian, an adult relative (brother, sister, aunt, uncle, grandparent), an adult individual or entity designated by the parent or legal guardian, a licensed program willing to accept legal custody, and ending with an adult individual or entity seeking custody).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | January 20, 2017 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Loretta E. Lynch, et al.* | Page | 7 of 8 |
|---|---|---|---|

Agreement. *Cf. Radzanower*, 426 U.S. at 154 (recognizing repeal by implication occurs when the legislature's intent is "clear and manifest" and where either "provisions in the two acts are in irreconcilable conflict" or where "the later act covers the whole subject of the earlier one and is clearly intended as a substitute"). What is more, nothing in the text of the TVPRA suggests it is intended to cover the whole immigration scheme for unaccompanied minors. In fact, the TVPRA specifically states that the care and custody of unaccompanied children must be consistent with the Homeland Security Act. *See supra*, section III.A.

In short, the bond hearing provision of the *Flores* Agreement was not superseded by operation of law because both the TVPRA and the Homeland Security Act are silent on the subject of bond hearings. Moreover, the *Flores* Agreement remains consistent with federal immigration laws requiring bond hearings for immigrant detainees, and poses no irreconcilable conflict with the TVPRA's safety and placement provisions.

**C.     Canon of Constitutional Avoidance**

Under the canon of constitutional avoidance, if it is "fairly possible" for a court to interpret a statute in a way that avoids raising serious constitutional problems, it must do. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006) (citing *INS v. St. Cyr*, 533 U.S. 289, 299-300 (2001)). "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993); *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

Here, Defendants ask the Court to construe the TVPRA in a way that could run afoul of the Constitution. That is, Defendants want this Court to construe the TVPRA in a way that could result in the indefinite detention of unaccompanied children without the due process protection offered to adult detainees through a bond hearing. *See Rodriguez v. Robbins*, 804 F.3d 1060, 1081-84 (9th Cir. 2015) (adults in immigration custody may not be subjected to prolonged detention (more than six months) without a bond hearing), *cert. granted sub nom. Jennings v. Rodriguez*, 136 S. Ct. 2489 (2016). Indeed, as Boteo's case illustrates, there is evidence that minors have been languishing in secured, unlicensed detention facilities for over a year without a bond hearing and with no requirement that ORR/HHS justify the detainment. *Cf. Singh v. Holder*, 638 F.3d 1196, 1203-04 (9th Cir. 2011) (due process requires the government prove by clear and convincing evidence in a bond hearing that a detainee presents a flight risk or danger to the community). Boteo is looking forward to his 18th birthday, but not so that he can enjoy the newfound freedoms that traditionally come with casting off the shackles of adolescence. Rather,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | January 20, 2017 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Loretta E. Lynch, et al.* | Page | 8 of 8 |
|---|---|---|---|

for him, entering adulthood means he will be eligible for a bond hearing, a process afforded only to adults under Defendants' proposed construction. *See* Lawrence Decl. ¶ 23; *see also* Declaration of Bryan Ortiz Vela ¶¶ 3, 17, 19 (spending two or three months in a secure ORR detention facility without a bond hearing but transferred to ICE custody on his 18th birthday and subsequently released on bond after a hearing before an immigration judge).

Given this anomalous result, the Court will not construe the TVPRA in the way that Defendants suggest. An alternative construction exists that avoids the due process problems discussed above. *See supra*, sections III.A and III.B.

**IV.**
**CONCLUSION**

In light of the foregoing, the Court finds that Defendants are in breach of the *Flores* Agreement by denying unaccompanied immigrant children the right to a bond hearing. Plaintiffs' motion to enforce Paragraph 24A of the *Flores* Agreement is **GRANTED**. Defendant Office of Refugee Resettlement of the Department of Health and Human Services shall forthwith comply with Paragraph 24A of the *Flores* Agreement.

**IT IS SO ORDERED**.