1   CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
2   Carlos Holguín (Cal. Bar No. 90754)
    Peter A. Schey (Cal. Bar No. 58232)
3   256 South Occidental Boulevard
4   Los Angeles, CA  90057
    Telephone: (213) 388-8693
5   Email: crholguin@centerforhumanrights.org
6              pschey@centerforhumanrights.org

7   Holly S. Cooper
8   Director, Immigration Law Clinic
    University of California Davis School of Law
9   One Shields Ave. TB 30
10  Davis, CA 95616
    Telephone: (530) 754-4833
11  Email: hscooper@ucdavis.edu

12
    *Of counsel:*
13  YOUTH LAW CENTER
14  Virginia Corrigan (Cal. Bar No. 292035)
15  200 Pine Street, Suite 300
    San Francisco, CA 94104
16  Telephone: (415) 543-3379 x 3903

17
    *Attorneys for plaintiffs*
18                  UNITED STATES DISTRICT COURT

19          CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| 20 | Jenny Lisette Flores, *et al.*, | Case No. CV 85-4544-DMG (AGRx) |
|---|---|---|
| 21 | Plaintiffs, | OPPOSITION TO EX PARTE APPLICATION |
| 22 | | FOR STAY OF ORDER ENFORCING |
| 23 | v. | SETTLEMENT ¶ 24A |
| 24 | Jeh Johnson, Secretary, Dept. of Homeland Security, *et al.*, | Hearing:   None |
| 25 | | Time:      n/a |
| 26 | Defendants. | Room:      n/a |

27

28

OUTLINE OF CONTENTS

I       Introduction ........................................................................................1

II      There is no appreciable likelihood Defendants will prevail on appeal..1

III     Defendants' claims regarding irreparable injury are without merit. ....2

        A       ORR's claim that it would be injured irreparably if required to
                resume complying with a long-standing settlement fails as a
                matter of law and of fact. ...........................................................3

        B       Granting a stay would cause detained children irreparable
                injury. ........................................................................................9

IV      The genuine public interest is served when detained children are
        afforded due process. ........................................................................13

V       Conclusion..........................................................................................15

/ / /

TABLE OF AUTHORITIES

**Cases**

*Andreiu v. Ashcroft*, 253 F.3d 477 (9th Cir. 2001) ................................................... 11

*Beltran v. Cardall*, 2016 WL 6877035; 2016 U.S. Dist. LEXIS 162111 (E.D. Va. 2016) ........................................................................................................... 12

*British Airways Board v. Boeing Co.*, 585 F.2d 946 (9th Cir. 1978), *cert. denied*, 440 U.S. 981 (1979) .................................................................................................. 4

*de Jesus Ortega Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) ................ 11, 15

*Drummond v. Fulton County Dep't of Family & Children's Servs.*, 532 F.2d 1001 (5th Cir. 1976) ............................................................................................... 1

*Elias v. Connett*, 908 F.2d 521 (9th Cir. 1990) ......................................................... 3

*Elrod v. Burns*, 427 U.S. 347, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976) .................... 11

*Heryford v. Parker*, 396 F.2d 393 (10th Cir. 1968) ................................................. 14

*Hilton v. Braunskill*, 481 U.S. 770, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987) ............. 1

*In Re: Rodriguez-Lopez*, 2004 WL 1398660 (BIA 2004) ............................................. 5

*LaForest v. Former Clean Air Holding Co.*, 376 F.3d 48 (2d Cir. 2004) .................... 11

*Lopez v. Heckler*, 713 F.2d 1432 (9th Cir. 1983) ................................................. 2, 9

*Los Angeles Memorial Coliseum Comm'n v. NFL*, 634 F.2d 1197 (9th Cir. 1980) ..... 2

*Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150 (6th Cir. 1991) ......................................................................................... 2

*Sammartano v. First Judicial Dist. Court*, 303 F.3d 959 (9th Cir. 2002) ................. 14

*Sampson v. Murray*, 415 U.S. 61, 94 S. Ct. 937, 39 L. Ed. 2d 166 (1974) .............. 3, 4

*Tribal Village of Akutan v. Hodel*, 859 F.2d 662 (9th Cir. 1988) .............................. 2

iii

*United Steelworkers of America v. Textron, Inc.*, 836 F.2d 6 (1st Cir. 1987) .......... 11

*Wisconsin Gas Co. v. Federal Energy Regul. Comm'n*, 758 F.2d 669 (D.C. Cir. 1985) 3

**Statutes and regulations**

6 U.S.C. § 279(b)(2) .................................................................................. 6

8 U.S.C. § 1232(c)(2)(A) ....................................................................... 6, 14

**Other authority**

United States Government Accountability Office, *Unaccompanied Alien Children:
Actions Needed to Ensure Children Receive Required Care in DHS Custody*, GAO-
15-521 (July 2015) ............................................................................... 8

/ / /

OPPOSITION TO EX PARTE APPLICATION FOR STAY
CV 85-4544-DMG (AGRx)

I       INTRODUCTION

Defendants move the Court to stay its order requiring them to resume providing detained children bond hearings in accord with ¶ 24A of the Settlement. The requirements Defendants must satisfy to receive such a stay are well established:

> [T]he factors regulating the issuance of a stay are …: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987).

Defendants bear the burden of establishing each of these requirements. *Drummond v. Fulton County Dep't of Family & Children's Servs.*, 532 F.2d 1001, 1002 (5th Cir. 1976). As will be seen, they satisfy none.

II      THERE IS NO APPRECIABLE LIKELIHOOD DEFENDANTS WILL PREVAIL ON APPEAL.

Defendants must first show a sufficient likeliood they will likely prevail on appeal by demonstrating "'either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor.'" *Tribal Village of*

1

*Akutan v. Hodel*, 859 F.2d 662, 663 (9th Cir. 1988), *quoting Los Angeles Memorial Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1201 (9th Cir. 1980).

If Defendants succeed only in raising a "serious legal question" however, they must demonstrate that the balance of equities tips *sharply* in their favor. *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983) (emphasis added).

This Court's order enforcing ¶ 24A ably forecloses any probability that Defendants will succeed on the merits. In seeking a stay Defendants offer nothing new in the way of legal argument, and their old, discredited arguments gain nothing by repetition. It makes little sense for Plaintiffs to recapitulate the Court's analysis here.

Indeed, the Court's analysis forecloses as well Defendants' ability to raise even a serious legal question for appeal. Yet even assuming, *arguendo*, Defendants were to present a serious question for appeal, their application would collapse under the elevated burden Defendants' must carry of proving that the equities tip strongly in their favor.

III   DEFENDANTS' CLAIMS REGARDING IRREPARABLE INJURY ARE WITHOUT MERIT.

In evaluating a party's showing of irreparable injury, courts consider three factors: (1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided. *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991).

1      Among these factors, "'the key word ... is *irreparable*. Mere injuries,

2

3   however substantial, in terms of money, time and energy necessarily expended in

4   the absence of a stay, are not enough.'" *Sampson v. Murray*, 415 U.S. 61, 90, 94 S.

5
    Ct. 937, 39 L. Ed. 2d 166 (1974) (emphasis in original); *Elias v. Connett*, 908 F.2d
6

7   521, 526 (9th Cir. 1990) ("'Merely serious or substantial' harm is not irreparable

8   harm.").

9
        The allegedly irreparable harm must also be both certain and immediate,
10

11  rather than speculative or theoretical. *Wisconsin Gas Co. v. Federal Energy Regul.*

12
    *Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985).
13

14      Finally, a movant must provide *evidence* that such harm has occurred in the

15
    past and is likely to occur again. *Id*.
16

17  **A      ORR's claim that it would be injured irreparably if required to**

18          **resume complying with a long-standing settlement fails as a**

19
            **matter of law and of fact.**
20

21      Defendants offer two factual ways[1] in which their resuming compliance with

22  ¶ 24A of the Settlement would injure them irreparably: First, ORR would have to

23

24  "transport UACs to immigration court" and figure out who would "represent[] the

25

26  _____

27  [1] The remainder of Defendants' claims regarding irreparable injury boils down to a
    reiteration of legal arguments this Court has rejected. Those claims are properly
28  evaluated under the rubric of likelihood of success, not irreparable injury.

OPPOSITION TO EX PARTE APPLICATION FOR STAY
CV 85-4544-DMG (AGRx)

Government in such bond hearings" and "what the appropriate standard of review would be"; second, affording detained children an opportunity to be heard would "improperly burden[] immigration judges ..." Memorandum in Support of Ex Parte Application for Stay (Dkt. No. 322-1) ("Defendants' Memo"). These assertions fall far short of alleging, much less proving, irreparable injury.

First, even assuming, *arguendo*, Defendants were to suffer the burdens they imagine, their giving detained youth an opportunity to be heard would at most be inconvenient or entail extra costs. But it is apodictic that expense or inconvenience is *not* irreparable injury. *Sampson*, *supra*, 415 U.S. at 90.

Second, apart from unsubstantiated statements in their brief, Defendants offer *nothing* to show that this Court's order would cause them any injury at all, much less irreparable injury. Unsupported statements of counsel, of course, are not evidence, *British Airways Board v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978), *cert. denied*, 440 U.S. 981 (1979) ("[L]egal memorandum and argument are not evidence."), yet Defendants offer nothing else; that omission, standing alone, is fatal to their stay application.

Third, Defendants' contending they would be irreparably injured if required to transport children to bond hearings demands extravagant credulity. As Defendants surely know, ORR manages to transport detained class members for hearings before immigration judges all the time. Declaration of Helen Lawrence,

OPPOSITION TO EX PARTE APPLICATION FOR STAY
CV 85-4544-DMG (AGRx)

January 30, 2017, Exhibit 21-ORR, filed herewith, at ¶ 7 (Lawrence II)  ("... ORR routintely presents children for master calendar hearings at San Francisco Immigration Court...."). Immigration judges' holding bond hearings could not possibly add appreciably to Defendants' existing transportation obligations. In all events, in ¶ 24A Defendants *agreed* they would bring detained children before immigration judges for bond hearings. Implicit in that agreement is that they would do so despite the cost or inconvenience of transport.

Fourth, Defendants' having to tease out "the appropriate standard of review" should be trivial, and hardly amounts to irreparable injury. Determining a standard of review requires little more than a bit of legal research, surely a small imposition on the Government's multitudinous lawyers.[2]

Fifth, Defendants' suggesting that ORR cannot find lawyers to defend itself against detained children before immigration judges is fatuous: ORR has previously managed to find lawyers to oppose detained children's release, note 2,

_____

[2] Indeed, the Board of Immigration Appeals has on at least two occasions decided ORR appeals from immigration judge's having reviewed its release decisions. *In Re: Rodriguez-Lopez*, 2004 WL 1398660 (BIA 2004), Exhibit 8-ORR, Plaintiffs' Exhibits [ORR-Pt.1] (Dkt. 292-2) at 42; *Matter of A--*, 2005 Immig. Rptr. LEXIS 54924 (BIA 2005), Exhibit 7-ORR.

If Defendants now find the apposite standard of review overly perplexing, they might be well advised to review and Shephardize the authorities cited in the briefs on file in those appeals.

Opposition to Ex Parte Application for Stay
CV 85-4544-DMG (AGRx)

*supra*; HHS and DHS are required by law to cooperate respecting release of

unaccompanied class members, 6 U.S.C. § 279(b)(2), 8 U.S.C. § 1232(c)(2)(A); and

both ORR and DHS are represented by the same lawyers before this Court.[3]

Sixth, Defendants could suffer no injury, much less irreparable injury, as a

result of immigration judges' holding bond hearings for detained children. After

all, in ¶ 24A Defendants *agreed* that immigration judges would hold such hearings.

For its part, Congress, with full knowledge of the Settlement, preserved that

agreement in both the HSA and TVPRA savings clauses. Immigration judges'

merely doing what Defendants agreed they should do—and which Congress said

they should continue to do—cannot possibly injure Defendants, much less

irreparably.[4]

_____

[3] Defendants' complaining of hardship in securing legal representation goes too far for yet another reason: the great majority of unaccompanied children have *no* lawyer to defend them at *any* stage of removal proceedings, *see* Transactional Records Access Clearinghouse (TRAC) at Syracuse University, *Representation for Unaccompanied Children in Immigration Court* (November 25, 2014), *available at* trac.syr.edu/immigration/reports/371/ (last visited January 30, 2017).

One suspects ORR will end up finding plenty of lawyers to represent it in bond hearings. To the extent it does not, it should hardly be heard to complain that it must for once contend against children on a relatively level playing field.

[4] Plaintiffs have repeatedly suggested, to no avail, that if Defendants now think submitting ORR custody decisions for immigration judge review objectionable, HHS could itself afford detained children hearings equivalent to bond redeterminations. *See, e.g.*, Exhibit 3-ORR. On the other hand, plaintiffs have

OPPOSITION TO EX PARTE APPLICATION FOR STAY
CV 85-4544-DMG (AGRx)

Finally, whatever inconvienience or expense giving a detained child a chance to be heard might cause Defendants should be evaluated in light of the vastly greater costs of needless confinement. Though it is impossible to predict how many detained children will prevail in such hearings, it is clear immigration judges will reduce children's detention overall and thereby, the government's costs of detaining them. *E.g.*, Declaration of Bryan Ortiz, January 12, 2016, Exhibit 14-ORR, ¶¶ 11-15 (ORR detained class member without hearing for months, transferred him to ICE following his 18th birthday, which released him pursuant to immigration judge's order following bond hearing).  Such savings would be far from trivial.

According to the Government Accountability Office, in 2014 ORR spent on average $248 per day to hold a child in a "basic shelter." United States Government Accountability Office, *Unaccompanied Alien Children: Actions Needed to Ensure Children Receive Required Care in DHS Custody*, GAO-15-521 (July 2015), at 67, *available at* www.gao.gov/assets/680/671393.pdf (last visited January 27, 2017) (GAO Cost Report).

ORR detained class member Hector Boteo for some 489 days, presumably, though it never said so, because he was dangerous. Declaration of Hector Estiven

---

emphasized that ORR's locking up children without a bond hearing or its equivalent is not an option; therein lies the apparent rub.

Boteo, March 1, 2016, Plaintiffs' Exhibits [ORR-Pt.2] (Dkt. 292-3) Exhibit 12-ORR

(Boteo); Lawrence II at ¶ 3. ORR finally release him shortly before last Christmas.

*Id*.

Using the GOA's detention cost figure, ORR accordingly spent *at leas*t

$121,000[5] detaining Hector, only to release him to the proposed custodian who

had been asking for his release all along: his mother. *Id*.

ORR also squandered at least $76,000 locking away class member Cesar

Villalobos at Yolo without hearing for 330 days, once again, only to release him to

his mother. *Id.* at ¶ 4.

As if things could not get any worse, ORR has now spent an astonishing

$157,000 to detain class member Edwin David Aguayo Zavalza without hearing for

_____

[5] ORR confined Hector without hearing for the better part of a year and four
months at Yolo Juvenile Hall, a secure juvenile detention facility. Boteo at ¶¶ 13,
15 ("In Yolo, we live in a real prison. The food, the program, the life, the routine:
everything is a penitentiary. They treat us badly, like delinquents. The entire time,
we live locked up. They don't grab us to go to the park, the library, or anywhere
normal. They lock us up in the cells every night, to sleep on benches made out of
cement with mattresses.").

The cost of housing a youth in such a facility substantially exceeds that of non-
secure placements, though the Government is seemingly unable to calculate just
how much secure ORR placements actually cost. *See* GAO Cost Report at 66 n103
("According to ORR officials, the average cost per bed for secure and therapeutic
shelters is generally higher than for basic shelters."); *id*. (GOA "unable to report on
the average cost per bed for secure and therapeutic shelters because the annual
cost and bed capacity data were not comparable across these shelter types.").

633 days— over one year and eight months. *Id.* at ¶ 5 (Edwin taken into ORR custody May 8, 2015, where, as of January 30, 2017, he remains).

Remarkably, ORR has *still* not said when it will release Edwin *or* give him a hearing on the cause for such seemingly interminable detention. *Id*. ("To date, ORR has still not presented Edwin for a bond redetermination hearing in accordance with ¶ 24A of the *Flores* settlement, nor has it advised me when it will present him for a bond hearing.").

In sum, Defendants claims of irreparable injury (1) fail as a matter of law; (2) are wholly unsupported by evidence; and (3) are factually meritless regardless. Defendants have wholly failed to carry their burden of showing they would be irreparably injured absent a stay.

**B      Granting a stay would cause detained children irreparable injury.**

A stay is an equitable remedy, *Lopez, supra*, 713 F.2d at 1435, and the Court should therefore consider the hardship a stay would cause detained children.

It is virtually self-evident that needlessly detaining children—particularly in secure facilities such as Yolo—profoundly, irrevocably and irreparably harms them. *E.g.*, Declaration of Luis Zayas, December 10, 2014, Plaintiffs' First Set of Exhibits [Part 8] (Dkt. 101-7), Exhibit 24 at ¶¶ 1-6 ("The medical and psychiatric literature

has shown that incarceration of children ... has long-lasting psychological,

developmental, and physical effects.").

Class member Boteo's counsel observed the effects indefinite detention had

on her client:

> [O]ver the course of representing Estiven I observed a marked deterioration
>
> in his mental functioning. His aspect has transformed from one of optimism
>
> and hope to depression and hopelessness, which he attributes to prolonged
>
> detention with no end in sight. He reports suffering from fatigue, despair,
>
> and insomnia. He now appears isolated from his peers, and reports a
>
> preference for being alone. Estiven said that Yolo is "not a detention center,
>
> but an insane asylum" and has worried about his own mental health status
>
> after so much time detained.

Lawrence I at ¶ 44; *see also* Affidavit of Lorilei Alicia Williams, August 5, 2016,

Plaintiffs' Exhibits [ORR-PT.1] (Dkt. 239-2), Exhibit 10-ORR, at ¶ 18 ("... I have

noted the deleterious effects ORR's opaque and oft-delayed release and step-

down decisions have on detained youth... In the face of such extended and

faceless uncertainty, detained children—already traumatized by horrific

experiences in their countries of origin—have expressed to me feeling profound

helplessness and despair...").

OPPOSITION TO EX PARTE APPLICATION FOR STAY
CV 85-4544-DMG (AGRx)

Such harm to children is irreparable *per se*. *Cf., United Steelworkers of America v. Textron, Inc.*, 836 F.2d 6, 8 (1st Cir. 1987) (irreparable injury shown where "... retired workers [deprived of health insurance] would likely suffer emotional distress, concern about potential financial disaster, and possibly deprivation of life's necessities (in order to keep up insurance payments)."); *LaForest v. Former Clean Air Holding Co.*, 376 F.3d 48, 55 (2d Cir. 2004) (same); *see also Andreiu v. Ashcroft*, 253 F.3d 477, 484 (9th Cir. 2001) (en banc) (family separation is irreparable injury).

In addition, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *de Jesus Ortega Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012), *quoting Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976). Denying detained children an opportunity to be heard, therefore, would itself constitutes irreparable injury regardless of whether a hearing results in reducing the time they are detained.

As this Court has noted, Defendants' position demands it "construe the TVPRA in a way that could run afoul of the Constitution. That is, Defendants want this Court to construe the TVPRA in a way that could result in the indefinite detention of unaccompanied children without the due process protection offered to adult detainees through a bond hearing." Order re Plaintiffs' Motion to Enforce, January 20, 2017 (Dkt. 318), at 7 (Enforcement Order).

11

Defendants' again detaining children without hearing would almost

certainly violate Fifth Amendment due process[6] and in so doing injure class

members irreparably.

Defendants' sole riposte to the foregoing is now familiar: the TVPRA , they

contend, charges ORR with vetting class members' proposed custodians, and

immigration judges accordingly lack absolute authority to order a child released. A

bond hearing, they argue, therefore, "cannot materially alter the terms of a UAC's

custody ..." Defendants' Memo at 9.[7] The Court will recall having pointed out the

flaws in Defendants' reasoning previously:

_____

[6] The Court's applying the rule of constitutional avoidance was not the same as holding ORR's detaining children without a hearing unconstitutional. Nevertheless, one court has held unconstitutional ORR's failure to give a juvenile a proper hearing while refusing to release him to his mother. *Beltran v. Cardall*, 2016 WL 6877035; 2016 U.S. Dist. LEXIS 162111, *21 (E.D. Va. 2016) ("...once ORR decided to withhold RMB from Petitioner's care, ... ORR owed Petitioner some form of adversarial process, and ... could not 'adopt for itself an attitude of 'if you don't like it, sue.'" (citations omitted)).

[7] Of course, immigration judges have *always* reviewed dangerousness and flight-risk, but not custodial fitness. *See, e.g.*, *Matter of A--*, *supra*, Exhibit 7-ORR. This was the case when the Settlement was signed, and ¶ 24A therefore guarantees detained children bond hearings even though release to a particular custodian may not be required. This hardly cancels the very real benefit of giving children an opportunity to be heard.

As the Court states, "If the initial proposed custodian is unfit to care for the unaccompanied child under the TVPRA, Defendants should follow Paragraph 14 of the Flores Agreement, which outlines an order of preference for the minor's

But identifying appropriate custodians and facilities for an unaccompanied child is not the same as answering the threshold question of whether the child should be detained in the first place—that is for an immigration judge at a bond hearing to decide. Assuming an immigration judge reduces a child's bond, or decides he or she presents no flight risk or danger such that he needs to remain in HHS/ORR custody, HHS can still exercise its coordination and placement duties under the TVPRA.

Enforcement Order at 6.

Repetition adds nothing to Defendants' discredited argument. Detained children would plainly be injured irreparably were this Court to stay its order; Defendants fall far short of carrying their burden to establish otherwise.

IV    THE GENUINE PUBLIC INTEREST IS SERVED WHEN DETAINED CHILDREN ARE AFFORDED DUE PROCESS.

Defendants attempt to show a stay would be in the public interest by asserting that this Court's order undercuts (1) "the Executive's 'sovereign prerogative' of setting immigration policy," Defendants' Memo at 9; and (2) and

---

release, in order to effectuate the least restrictive form of detention."
Enforcement Order at 6, n5.

13

ORR's "*parens patriae* interest" in exercising autocratic control over detained children. *Id*.[8]

The short answer to Defendants' first point is that they *agreed* to give detained children bond hearings, and this Court's holding them to that agreement in no way impairs ORR's legitimate prerogatives.

As for their second point, Defendants' detaining children without opportunity be be heard is wholly inconsistent with the duty of an agency that undertakes to act legitimately in *parens patriae*: "Where, as in both proceedings for juveniles ... the state undertakes to act in *parens patriae*, it has the inescapable *duty to vouchsafe due process*..." *Heryford v. Parker*, 396 F.2d 393, 396 (10th Cir. 1968) (emphasis added).

Defendants accordingly badly misapprehend the public interest. This Court has previously remarked Congress's determination that the public interest lies in ORR's "promptly place[ing] [plaintiff children] in the least restrictive setting that is in the best interest of the child," 8 U.S.C. § 1232(c)(2)(A), and minimizes confining them "absent a determination that the child poses a danger to self or others ..."

---

[8] The public interest inquiry "primarily addresses impact on non-parties rather than parties." *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002). Though Defendants would conflate the public interest with ORR's wish to detain children without the trouble of affording them due process, the two are clearly not the same.

14

*Id*.; Order re: Plaintiffs' Motion to Enforce Settlement, etc., July 24, 2015 (Dkt.

177), at 22 (TVPRA "consistent with the Agreement's preference for release

provision ...").

The Ninth Circuit has repeatedly affirmed that "'it is *always* in the public

interest to prevent the violation of a party's constitutional rights.'" *de Jesus Ortega*

*Melendres*, *supra*, 695 F.3d at 1002 (emphasis added).  Affording detained children

an opportunity to be heard does no violence to the public interest. To the

contrary, it encourages ORR's fidelity thereto.

V     CONCLUSION

For the foregoing reasons, the Court should deny Defendants' application

for a stay.

Dated: January 30, 2017.                    CENTER FOR HUMAN RIGHTS &
                                            CONSTITUTIONAL LAW
                                            Carlos Holguín
                                            Peter A. Schey

                                            HOLLY COOPER
                                            University of California Davis School of
                                            Law

                                            YOUTH LAW CENTER
                                            Virginia Corrigan

                                            /s/ Carlos Holguín

OPPOSITION TO EX PARTE APPLICATION FOR STAY
CV 85-4544-DMG (AGRx)