# EXHIBIT A

CHAD A. READLER
Acting Assistant Attorney General
Civil Division
AUGUST E. FLENTJE
Special Counsel to the Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director, District Court Section
Office of Immigration Litigation
SARAH B. FABIAN
Senior Litigation Counsel, District Court Section
VINITA B. ANDRAPALLIYAL
Trial Attorney
Office of Immigration Litigation
    P.O. Box 868, Ben Franklin Station
    Washington, D.C. 20044
    Tel:  (202) 598-8085
    Fax:  (202) 305-7000
    Email:  Vinita.b.andrapalliyal@usdoj.gov

Attorneys for Defendants

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY LISETTE FLORES; *et al.*, | Case No. CV 85-4544-DMG |
| Plaintiffs, | **DEFENDANTS' CORRECTED** |
| | **MEMORANDUM IN OPPOSITION** |
| v. | **TO PLAINTIFFS' MOTION FOR** |
| | **AWARD OF ATTORNEY'S FEES** |
| JEFFERSON B. SESSIONS III, | |
| Attorney General of the United States; *et al.*, | |
| Defendants. | |

# Table of Contents

I.      INTRODUCTION ..................................................................................1

II.     FACTUAL BACKGROUND ................................................................1

III.    LEGAL STANDARD ...........................................................................2

III.    ARGUMENT........................................................................................4

   A.   Plaintiffs are not entitled to EAJA fees because Defendants were substantially justified in their litigation positions. .......................................................... 4

   B.   Alternatively, Plaintiffs' Requested Fees and Costs are Excessive.................................... 8

      a.   Plaintiffs Were Only Partially Successful and Thus, At Best, Merit a Limited Award.................. 8

      b.   Hourly Rate.................................................................. 10

      c.   Hours Reasonably Expended ................................................ 15

   C.   Ninth Circuit's Order on Fees.............................................. 18

IV.     CONCLUSION.....................................................................................19

i

# TABLE OF AUTHORITIES

### Cases

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,*
  421 U.S. 240 (1975) ........................................................................2

*Ardestani v. I.N.S.,*
  502 U.S. 129 (1991) .......................................................................2

*Atkins v. Apfel,*
  154 F.3d 986 (9th Cir. 1998) .......................................................10

*Bell v. Clackamas Cty.,*
  341 F.3d 858 (9th Cir. 2003) .......................................................14

*Catholic Soc. Servs., Inc. v. Napolitano,*
  837 F. Supp. 2d 1059 (E.D. Cal. 2011) ......................................14

*Chalmers v. City of Los Angeles,*
  796 F.2d 2105 (9th Cir. 1986) .....................................................14

*Cobell v. Norton,*
  407 F. Supp. 2d 140 (D.D.C. 2005) ............................................18

*Comm'r, I.N.S. v. Jean,*
  496 U.S. 154 (1990) .....................................................................10

*Flores v. Lynch,*
  828 F.3d 898 (9th Cir. 2016) ................................................ passim

*Frew ex rel. Frew v. Hawkins,*
  540 U.S. 431 (2004) .......................................................................6

*Gonzalez v. City of Maywood,*
  729 F.3d 1196 (9th Cir. 2013) .....................................................19

*Greater Los Angeles Council on Deafness v. Cmty. Television of S. California,*
  813 F.2d 217 (9th Cir. 1987) .........................................................9

*Gutierrez v. Barnhart,*
  274 F.3d 1255 (9th Cir. 2001) .......................................................4

*Hardisty v. Astrue*,
   592 F.3d 1072 (9th Cir. 2010)......................................................... 17, 18

*Harvey v. Mohammed*,
   951 F. Supp. 2d 47 (D.D.C. 2013) ...........................................................17

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .................................................................................. 9, 11

*Hernandez v. Grullense*,
   No. 12-CV-03257-WHO, 2014 WL 1724356 (N.D. Cal. Apr. 30, 2014) ...........16

*Horne v. Flores*,
   557 U.S. 433 (2009) ...................................................................................7

*Ibrahim v. U.S. Dep't of Homeland Sec.*,
   835 F.3d 1048 (9th Cir. 2016)................................................................5, 9

*Ingram v. Oroudjian*,
   647 F.3d 925 (9th Cir. 2011) ....................................................................18

*Kali v. Bowen*,
   854 F.2d 329 (9th Cir. 1988).....................................................................4

*League of Wilderness Defs./Blue Mountains Biodiversity Project v. U.S. Forest Serv.*,
   No. 3:10-CV-01397-SI, 2014 WL 3546858 (D. Or. July 15, 2014)....................15

*Love v. Reilly*,
   924 F.2d 1492 (9th Cir. 1991) ..................................................................17

*Lozano v. Astrue*,
   No. 06-15935, 2008 WL 5875573 (9th Cir. Sept. 4, 2008) .................................17

*Missouri v. Jenkins by Agyei*,
   491 U.S. 274 (1989) ...................................................................................16

*Moreno v. City of Sacramento*,
   534 F.3d 1106 (9th Cir. 2008).....................................................................16

*Nadarajah v. Holder*,
  569 F.3d 906 (9th Cir. 2009) ........................................................ 14, 16

*Nat. Res. Def. Council, Inc. v. Winter*,
  543 F.3d 1152 (9th Cir. 2008) ..................................................... 11, 15

*Nayab v. Astrue*,
  No. 07CV0733 JM(WMC), 2008 WL 4748172 (S.D. Cal. Oct. 28, 2008) .......... 12

*New Jersey v. E.P.A.*,
  703 F.3d 110 (D.C. Cir. 2012) .......................................................... 17

*Oregon Nat. Desert Ass'n v. McDaniel*,
  No. CIV 06-242-AA, 2011 WL 4625715 (D. Or. Sept. 30, 2011) .................. 16

*Petition of Hill*,
  775 F.2d 1037 (9th Cir. 1985) ........................................................... 4

*Pierce v. Underwood*,
  487 U.S. 552 (1988) ......................................................................... 4

*Probe v. State Teachers' Ret. Sys.*,
  780 F.2d 776 (9th Cir. 1986) ........................................................... 20

*Ruckelshaus v. Sierra Club*,
  463 U.S. 680 (1983) ......................................................................... 2

*Rufo v. Inmates of Suffolk Cty. Jail*,
  502 U.S. 367 (1992) ......................................................................... 7

*Saysana v. Gillen*,
  614 F.3d 1 (1st Cir. 2010) ................................................................. 5

*Schock v. United States*,
  254 F.3d 1 (1st Cir. 2001) ................................................................. 5

*Sorenson v. Mink*,
  239 F.3d 1140 (9th Cir. 2001) ....................................................... 9, 17

*Taylor v. Astrue*,
  No. C07-5335BHS, 2010 WL 445902 (W.D. Wash. Feb. 1, 2010) ................. 5

iv

*Thangaraja v. Gonzales,*
  428 F.3d 870 (9th Cir. 2005).................................................................. 11, 12, 14
*United States v. Real Prop. Known as 22249 Dolorosa St., Woodland Hills, Cal.,*
  190 F.3d 977 (9th Cir. 1999)..................................................................12
*Webb v. Sloan,*
  330 F.3d 1158 (9th Cir. 2003).................................................................10
*Welch v. Metro. Life Ins. Co.,*
  480 F.3d 942 (9th Cir. 2007)..................................................................17

<u>Statutes</u>

28 U.S.C. § 2412(d)(1).................................................................4, 8
28 U.S.C. § 2412(d)(1)(A)..............................................................2
28 U.S.C. § 2412(d)(2)(A)..............................................................18

## I.   INTRODUCTION

Defendants hereby oppose Plaintiffs' motion for fees and costs under the Equal Access to Justice Act ("EAJA"). Defendants were substantially justified in defending against Plaintiffs' February 2015 motion to enforce. Alternatively, Plaintiffs' requested fees and costs are excessive. Therefore, the Court should deny Plaintiffs' motion, or, in the alternative, reduce the fees and costs as described below.

## II.   FACTUAL BACKGROUND

On February 2, 2015, Plaintiffs filed a motion to enforce the *Flores* Settlement Agreement.  ECF No. 100. Plaintiffs claimed that Defendants were in breach of the Agreement in the following ways: (1) Defendants' policy of detaining accompanied children along with their parents violated Paragraphs 14 and 18 of the Agreement, (2) Defendants' family residential centers were secure, unlicensed facilities in violation of Paragraphs 6, 19, and 23 of the Agreement, and (3) the conditions in which class members were housed at Defendants U.S. Customs and Border Protection's ("CBP") Border Patrol facilities did not meet the required standards under Paragraph 12 of the Agreement. Pls.' Mot. to Enforce, ECF No. 100.

Defendants opposed the motion, arguing that (1) the Agreement did not apply to accompanied minors or their parents, (2) family residential centers fell outside the scope of the Agreement, and (3) Defendants' Border Patrol facilities were in compliance with Paragraph 12 of the Agreement. Defs.' Opp. To Pls.' Mot. to Enforce, ECF No. 121. Defendants also moved in the alternative to modify the Agreement to exclude accompanied minors in light of changed circumstances. ECF No. 120. On July 24, 2015, this Court granted Plaintiffs' motion in full, denied Defendants' motion to modify the Agreement, and ordered Defendants to show cause why the Court should not enter its proposed relief against the Government. July 24, 2015 Order, ECF No. 177. On August 21, 2015, the Court issued a clarifying remedial order. Aug. 21, 2015 Order, ECF No. 189.

1

Defendants appealed this Court's decision on the issues of whether the Agreement applies to accompanied minors, whether the district court erred in finding the Agreement required the release of the accompanying parent, and whether Defendants' motion to modify the agreement should have been granted in the alternative. Notice of Appeal, ECF No. 191. On July 6, 2016, the Ninth Circuit issued a decision, affirming in part and reversing in part. The court held that the Agreement applied to accompanied minors, but did not provide any rights to their parents.  Therefore, the Agreement did not require the parents to be released so that accompanied minors could be released to them under Paragraph 14A. *Flores v. Lynch*, 828 F.3d 898, 905–09 (9th Cir. 2016). The court also affirmed the denial of Defendants' motion to modify the Agreement. *Id.* at 909.  In addition, the Ninth Circuit ordered that "[e]ach party shall bear its own costs."  *Id.* at 910.

On November 2, 2016, Plaintiffs filed the instant motion for fees and costs in the Ninth Circuit. ECF No. 65, *Flores v. Lynch*, No. 15-56434 (9th Cir.). The Ninth Circuit remanded the motion to be decided in the first instance by the district court. ECF No. 276; *see also* ECF No. 351, at 3.

## III.   LEGAL STANDARD

Under the "American Rule," each party ordinarily bears its own attorney's fees unless there is express statutory authorization to the contrary. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 245 (1975). One such statutory authorization is the Equal Access to Justice Act ("EAJA"). "The EAJA renders the United States liable for attorney's fees for which it would not otherwise be liable, and thus amounts to a partial waiver of sovereign immunity. Any such waiver must be strictly construed in favor of the United States." *Ardestani v. I.N.S.*, 502 U.S. 129, 137 (1991) (citations omitted); *see also Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685–86 (1983) ("Waivers of immunity must be construed strictly in favor of the sovereign," and not "enlarge[d] . . . beyond what the language requires.") (citations omitted).

2

The EAJA provides,

> [A] court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).  Accordingly, a litigant is entitled to attorney fees and costs only if: (1) he is the prevailing party; (2) the government fails to show that its position was substantially justified or that special circumstances make an award unjust; and (3) the requested fees and costs are reasonable.  *Id.*  In order to obtain fees pursuant to this provision, an EAJA applicant must,

> within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

*Id.* § 2412(d)(1)(B). The EAJA provides that attorneys' fees shall not be awarded in excess of $125.00/hour unless the court determines that "an increase in the cost of

3

living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved justifies a higher fee." *Id.* § 2412(d)(2)(A)(ii).

## III. ARGUMENT

As set forth below, Defendants' litigation positions were substantially justified, rendering Plaintiffs' motion meritless. Alternatively, Plaintiffs' requested fees are unreasonably excessive, because they seek fees for a claim in which they were not successful, they request excessively enhanced fees, and they claim fees for hours not reasonably expended.

### A. Plaintiffs are not entitled to EAJA fees because Defendants were substantially justified in their litigation positions.

A prevailing party may recover attorney fees only if the position of the United States was not "substantially justified." 28 U.S.C. § 2412(d)(1). Although the prevailing party is required to clearly allege that the position of the United States was not substantially justified, the Government bears the burden of establishing substantial justification. *E.g., Gutierrez v. Barnhart*, 274 F.3d 1255, 1258 (9th Cir. 2001). The Government may meet that burden by establishing that its position was "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). In determining whether the Government's position was reasonable, a reviewing court must ascertain "first, whether the government was substantially justified in taking its original action; and second, whether the government was substantially justified in defending the validity of the action in court." *Kali v. Bowen*, 854 F.2d 329, 332 (9th Cir. 1988).

A position can be justified even though a court ultimately finds that it is not correct. *Pierce*, 487 U.S. at 566. The government may sustain its burden by showing that its position is a novel but credible extension or interpretation of the law. *Petition of Hill*, 775 F.2d 1037, 1042 (9th Cir. 1985). That the government lost does not raise a presumption that its position was not substantially justified, and the government need not show that it had a substantial likelihood of prevailing. *Id.*

Here, the Government's positions regarding the *Flores* Agreement raised particularly novel and complex issues, and therefore were substantially justified. *Saysana v. Gillen*, 614 F.3d 1, 6 (1st Cir. 2010) ("Where, as here, a case presents a novel issue and one on which there is little precedent, courts have found that an award of EAJA fees is not warranted.") (citing *Schock v. United States*, 254 F.3d 1, 6 (1st Cir. 2001)). The Ninth Circuit has states that "courts are to make but one substantial justification determination on the case as a whole." *Ibrahim v. U.S. Dep't of Homeland Sec.*, 835 F.3d 1048, 1055 (9th Cir. 2016). Defendants explain their positions one by one below to establish that they were substantially justified overall.

As an initial matter, Defendants prevailed in the litigation on their position that the Agreement cannot be read to require the release of accompanying parents. *Flores*, 828 F.3d at 908–09. Further, the court ordered that "[e]ach party shall bear its own costs," persuasive evidence that the court believed Defendants were substantially justified in their position on appeal. *E.g.*, *Taylor v. Astrue*, No. C07-5335BHS, 2010 WL 445902, at *4 (W.D. Wash. Feb. 1, 2010) ("[T]he Ninth Circuit most likely felt that the position was substantially justified as it held that each party shall bear its own costs on appeal.") (internal citation and quotation marks omitted).

Moreover, with regard to the issue of conditions at CBP facilities, Defendants' position throughout the litigation has been that CBP has in place standards and procedures relating to the conditions in its facilities, and that those standards and procedures comply with the *Flores* Agreement. The Court ordered that "to the extent any Border Patrol station is out of compliance with the Agreement, those stations must comply with the Agreement and Defendants' own acknowledged standards and procedures," clarifying that any findings of noncompliance with the Agreement were limited to a single CBP facility. August Order at 13. The Court then ordered that "to the extent any Border Patrol station is out of compliance with the Agreement, those stations must comply with the Agreement and Defendants' own acknowledged standards and procedures." *Id.* This ruling essentially adopts Defendants' position

throughout the litigation that CBP has in place standards and procedures relating to the conditions in its facilities, and that those standards and procedures comply with the *Flores* Agreement. Because the Court made *no* finding that CBP's own policies and procedures did not comply with the Agreement, it should be concluded that Defendants were substantially justified in their position on this issue as well.

On the remaining issues in the litigation, Defendants were substantially justified in their positions in light of the sparse precedent under which they were operating, both legally, in terms of what was required under the Agreement, and practically, given the historic influx at the border in the years immediately preceding Plaintiffs' enforcement motion.

Specifically, while Defendants did not ultimately prevail on the issue of whether the Agreement pertained to accompanied minors, Defendants' position was substantially justified for a number of reasons. First, although the Court held that the term "all minors" in the Agreement should be read to include accompanied minors, there are several reasons that the Defendant's position that the Agreement did not cover accompanied minors was substantially justified. These include: (1) language in the Agreement indicating that the parties entered into the settlement to resolve a challenge to the detention and release of unaccompanied minors, Agreement at 3; (2) language in the Agreement incorporating the underlying litigation's class definition, which is limited to unaccompanied minors, Agreement at 3; (3) the lack of any language in the Agreement pertaining to the treatment of accompanied minors or family units, including extending the class definition to accompanied minors, *see generally* Agreement; and (4) the general principle that the scope of a consent decree should be limited to "the general scope of the case made by the pleadings," *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004). In addition, Defendants were justified in taking the position that the Agreement did not apply to accompanied minors because Defendants had housed accompanied minors and their parents in the Berks Family Residential Center beginning in 2001, and Plaintiffs had never once

6

challenged this use of the facility or claimed that it was subject to (or that it violated) the *Flores* Agreement prior to the February 2015 filing.

Defendants were also substantially justified in their defense to the claim that they violated the Agreement's requirement to house accompanied minors in non-secure facilities that are licensed by the appropriate state agency to care for dependent children. As Defendants pointed out, facilities licensed to care for "dependent children" could not be used to house accompanied children, and in fact no such license is available to U.S. Immigration and Customs Enforcement (ICE) family residential facilities. It is reasonable to contend that at the time the Agreement was signed, the parties could not have contemplated a requirement that the Government must obtain a license that did not exist for facilities that were not currently in existence. Thus, Defendants reasonably argued that this licensing requirement could not and should not be applied to family residential facilities. Moreover, as the Court concluded, Defendants' practice of releasing family units who were eligible for release "as expeditiously as possible" (generally within 20 days) complied with the Agreement's "influx" provision, and thus the Government's actions with regard to the expeditious processing and release of family units were substantially justified. *See* August Order at 9–11; Agreement, ¶ 12A.

Finally, Defendants were substantially justified in moving in the alternative to amend the Agreement due to changed circumstances to exclude accompanied minors from its terms. Supreme Court case law strongly favors the amendment of agreements to which the Government is a party, especially where there has been a substantial passage of time since the agreement was signed. *See Horne v. Flores*, 557 U.S. 433, 447 (2009) ("[T]he passage of time frequently brings about changed circumstances – changes in the nature of the underlying problem, changes in governing law or its interpretation by the courts, and new policy insights – that warrant reexamination of the original judgment."); *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 381 (1992) ("[T]he public interest is a particularly significant

reason for applying a flexible modification standard in institutional reform litigation because such decrees 'reach beyond the parties involved directly in the suit and impact on the public's right to the sound and efficient operation of its institutions.'"). The unprecedented levels of illegal migration of family units at the Southern border and the humanitarian crisis such migration generated in 2014 necessitated the creation of family residential centers, which were not contemplated in the Agreement did not fit into its framework, and did not raise the same concerns that the Agreement was designed to allay: the detention and expeditious release of minors to an appropriate family member. Thus, to the extent the Agreement was found to apply to accompanied minors, there were significant changes in the immigration landscape that justified Defendants' attempt to update the Agreement to reflect those changes.

Because Defendants were substantially justified in the legal positions they took before and during the underlying litigation, an award for fees and costs under the EAJA is inappropriate here. 28 U.S.C. § 2412(d)(1).

**B. Alternatively, Plaintiffs' Requested Fees and Costs are Excessive**.

Even if Defendants were not substantially justified in all of their legal positions, Plaintiffs' requested fees and costs are excessive. Plaintiffs' request should be reduced because Plaintiffs: (1) were only partially successful on the claims they brought (2) impermissibly seek an enhancement on the hourly rate; and (3) request time for hours and work not reasonably expended.

> *a. Plaintiffs Were Only Partially Successful and Thus, At Best, Merit a Limited Award.*

The Supreme Court has set forth the following analysis when a plaintiff has achieved partial success on her claims:

> [W]here a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief . . . . two questions must be addressed. First, did the plaintiff fail to prevail on claims that were

unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

*Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436; *see also Greater Los Angeles Council on Deafness v. Cmty. Television of S. California*, 813 F.2d 217, 222 (9th Cir. 1987). While courts "do not use a mathematical ratio of winning claims to losing claims," the Ninth Circuit "compare[s] 'the significance of the overall relief obtained' to all the claims and remedies plaintiffs pursued in the litigation." *Greater Los Angeles Council on Deafness*, 813 F.2d at 222 (quoting *Hensley*, 461 U.S. at 435). Under *Helmsley*, the court must first "determine whether the claims upon which the plaintiff prevailed are related to the unsuccessful claims." *Ibrahim*, 835 F.3d at 1060–61. "Second, a court must consider "whether 'the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.'" *Id.* at 1061 (quoting *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001)).

Here, Plaintiffs' claims were all distinct issues of contract interpretation. *See Flores*, 828 F.3d at 905. Thus, Plaintiffs' success regarding their interpretation of the provisions of the Agreement pertaining to (1) class members being housed in non-secure, licensed facilities, *see* Agreement ¶¶ 6, 19, 23, and (2) class members being held in safe and sanitary facilities following arrest, to the extent it can be said that Plaintiffs prevailed, *id.* ¶ 12, are clearly unrelated to their first claim, which alleged that Defendants' policy of declining to release adult parents so that accompanied minors could be released to them. ECF No. 100. Plaintiffs' first claim was based on a separate source of contractual language, focused on a distinct set of actions undertaken by Defendants (*i.e.*, their decision not to release the parents of accompanied minors and subsequently release their minor children into their care),

and required separate analysis to resolve; thus, it is both "both factually and legally distinct" from the other two claims raised in Plaintiffs' motion to enforce. *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003).

Further, Plaintiffs did not ultimately succeed on their first claim. On appeal, while the Ninth Circuit affirmed Plaintiffs and the district court's position that the Agreement applies to accompanied minors, the court reversed on the issue of whether the Agreement mandates release of accompanying parents so that accompanied minors can be released to their parents under Paragraphs 14 and 18 of the Agreement and found no such release was warranted. Thus, Plaintiffs did not obtain their desired remedy on this claim—*i.e.*, that accompanied minors be released from DHS custody into the custody of their released, accompanying parents. *See* Pls.' Mot. to Enforce, ECF No. 100, at 11–14.

Therefore, Plaintiffs should not receive any fees for time expended presenting this claim, either in district court or on appeal. "[F]ees . . . should be excluded to the extent that the applicant ultimately fails to prevail in such litigation." *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163 n. 10 (1990); *Atkins v. Apfel*, 154 F.3d 986, 990 (9th Cir. 1998). Accordingly, Defendants estimate that Plaintiffs' claimed hours should be reduced overall by 40 percent, from 2027.72 to 1216.63, to appropriately exclude time spent on the claim in district court, where this claim was one of three,[1] and on appeal, where the claim was one of two. *See* Defendants' EAJA Calculations, Ex A.

### b. Hourly Rate

Next, Plaintiffs impermissibly seek enhanced rates for their attorneys that are well above the default EAJA hourly rate of $125. *See* Pls.' Mot. for Fees and Costs,

---

[1] Defendants concede that their motion to amend the Agreement was a separate issue considered by the district court, apart from Plaintiffs' three claims. However, even if Plaintiffs' spent approximately one quarter of their time working on this claim in district court and one half of their time on the same claim on appeal, that would average to approximately 40% of the claimed hours, assuming approximately equal time spent on the claim at both stages of the litigation.

ECF No. 351-1, at 16–21. Peter Schey requests an hourly rate of $875; Alice Bussiere, $800; Carolos Holguin, $725; and Kate Manning, $543. *Id.* at 30. Further, Plaintiffs request attorney's fees at the statutory maximum rate for Chapman Noam, a legal assistant and paralegal. *See* 351-1, at 41, 101–07. To receive enhanced fees,

> (1) the attorney must possess distinctive knowledge and skills developed through a practice specialty; (2) those distinctive skills must be needed in the litigation; and (3) those skills must not be available elsewhere at the statutory rate.

*Nat. Res. Def. Council, Inc. v. Winter*, 543 F.3d 1152, 1158 (9th Cir. 2008) (citation and internal quotation marks omitted). Enhanced hourly rates for general work on immigration cases are not available "pursuant to the statutory exception for limited availability of qualified attorneys where the litigation in question required no 'distinctive knowledge' or 'specialized skill.'" *Thangaraja v. Gonzales*, 428 F.3d 870, 876 (9th Cir. 2005) (order) (citation omitted).

Here, as the Ninth Circuit noted in its decision, the primary issue was the interpretation of the *Flores* Agreement, and contractual analysis was the legal skill required to represent Plaintiffs in the litigation. *See Flores*, 828 F.3d at 905 ("The Settlement is a consent decree, which, "like a contract, must be discerned within its four corners, extrinsic evidence being relevant only to resolve ambiguity in the decree.") (internal citation and quotation marks omitted). Plaintiffs argue that "prosecuting Plaintiffs' action required specialized expertise in immigration law, the *Flores* Agreement, and application of California contract law to the interpretation of federal consent decrees." Mot. at 19. However, Plaintiffs fail to establish that any of these three categories qualify as distinctive skills that were required for the contractual interpretation issues in this litigation. Moreover, even if they were, Plaintiffs fail to establish that attorneys who possessed these skills were unavailable at the statutory rate. *See Natural Resources Defense Council, Inc.*, 543 F.3d at 1158;

*see also United States v. Real Prop. Known as 22249 Dolorosa St., Woodland Hills, Cal.*, 190 F.3d 977, 984 (9th Cir. 1999) ("Even assuming that expertise in defending civil forfeiture actions qualifies as a practice specialty requiring distinctive knowledge and skills, the second and third requirements have not been met here. This was a routine civil forfeiture case, not needing specialized skills.").

First, Plaintiffs fail to explain how "knowledge of . . . particular, esoteric nooks and crannies of immigration law" was necessary in this case to give Plaintiffs "a fair shot at prevailing." *Thangaraja*, 428 F.3d at 876. In fact, neither this Court nor the Ninth Circuit engaged in any meaningful analysis of the immigration laws to reach their results.[2] *See* ECF No. 177, at 3–25; *Flores*, 828 F.3d at 905–09.

Second, while firsthand knowledge about the terms of the *Flores* Agreement and its underlying litigation may have been helpful in bringing this lawsuit, Plaintiffs do not establish that such knowledge was necessary to adequately represent Plaintiffs on the issue of whether Defendants were in breach of the agreement. *See* ECF No. 351, at 28–29; ECF No. 351-1, at 9–13, 48–50. In fact, in this litigation regarding contractual interpretation of the *Flores* Agreement, the parties and the Court looked for the answers within the four corners of the Agreement itself, and such a review requires no historical knowledge regarding the Agreement.

Third, nowhere in this motion do Plaintiffs establish the distinctive skills or knowledge they possessed and that were required to interpret California contract law, and, indeed, cannot credibly claim that such a background is a distinctive set of knowledge that is otherwise unavailable within the State of California at the statutory

---

[2] Plaintiffs further claim that Schey's conversational skills and Holguin's fluency in Spanish require an enhanced fee but again do not demonstrate that this is a necessary skill for the instant litigation. For example, Plaintiffs do not establish that Schey or Holguin's skills prevented counsel for Plaintiffs from having to use a translator to write up declarations or an interpreter to gather or convey information pertaining to Plaintiffs' claims, legal advice, etc. *See, e.g.*, *Nayab v. Astrue*, No. 07CV0733 JM(WMC), 2008 WL 4748172, at *6 (S.D. Cal. Oct. 28, 2008).

rate. *See* ECF No. 351, at 28–29; ECF No. 351-1, 9–13, 48–50, 75–76; ECF No. 351-2, at 103–05.

Finally, Plaintiffs do not establish how counsel Bussiere and Manning's background in child welfare matters was a distinctive skill set or knowledge base necessary to litigate this case, which, again, turned upon the application of the terms of the *Flores* Agreement. *See* ECF No. 351, at 28–29; ECF No. 351-1, at 75–76; ECF No. 351-2, at 103–05. While Bussiere claims that she "participated in discussions with co-counsel about the application of licensing standards to accompanied children, factors that must be taken into consideration when children and parents are detained, and responses to Defendants' assertions that federal family detention practice and standards were consistent with good child welfare practice," ECF No.351-1, at 76, Plaintiffs do not explain why legal expertise in child welfare matters was specifically required to litigate their enforcement motion. Moreover, no part of the Court's analysis of the underlying motions focused on Plaintiffs' assertions regarding child welfare practices; rather the Court focused on the requirements of the *Flores* Agreement itself. The Court did not adjudicate whether ICE family residential facilities complied with any specific standards, and looked only to whether the facilities were licensed and non-secure, based on the terms of the Agreement. *See Hardisty v. Astrue*, 592 F.3d 1072, 1077 (9th Cir. 2010) ("Section 2412(d)(1)(A) provides no indication that attorneys' fees should be awarded with respect to positions of the United States challenged by the claimant but unaddressed by the reviewing court. Nor does the definition clause in Section 2412(d)(2)(D) support fee-shifting.").

Moreover, Plaintiffs do not rely on any specific evidence to support their cursory statement that no attorneys were available at the statutory rate.[3] *See Love v.*

---

[3] Plaintiffs attach the declarations of Richard Pearl, Abigail Trillin, and Katie Annand only for the propositions that the fees proposed by Manning and Busierre are reasonable. *See* ECF No. 351-2, at 7–94, 135–36, 141–43.

*Reilly*, 924 F.2d 1492, 1496 (9th Cir. 1991). For example, there are over 200 attorneys listed on the State Bar of California who are certified specialists in immigration law.   *See* State Bar of California, Certified Legal Specialists: Immigration & Nationality Law, https://members.calbar.ca.gov/search/ls_results.aspx?county=All+Specialists&specialty=05 (last accessed May 11, 2017.) Thus, because counsel for Plaintiffs do not establish that their distinctive knowledge and skills were necessary to litigate this case, or that other attorneys were unavailable to litigate at the statutory rate, Plaintiffs' fees must be reduced to the statutory rate.

Finally, even if counsel for Plaintiffs were entitled to enhanced fees, the amount they seek for their attorneys, particularly for Schey and Holguin, is excessive. In determining hourly rates, the Court must look to the "prevailing market rates for the kind and quality of the services furnished   . . . ." 28 U.S.C. § 2412(d)(2)(A); *see also Bell v. Clackamas Cty.*, 341 F.3d 858, 868 (9th Cir. 2003). The rates of comparable attorneys in the forum district are usually used. *See Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 2105, 1210–11 (9th Cir. 1986) ("In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community performed by attorneys of comparable skill, experience, and reputation."). Here, attorney Schey claims to charge $900 an hour for privately performed work. ECF No. 351-1, at 3. However, even assuming that attorney Schey has established an entitlement to enhanced fees of this amount for his  claimed specialized skills (and that other counsel for Plaintiffs have established entitlement to enhanced fees), such fees should be capped at no more than $500 per hour. *See Thangaraja*, 428 F.3d at 876; *Catholic Soc. Servs., Inc. v. Napolitano*, 837 F. Supp. 2d 1059, 1076 (E.D. Cal. 2011). For Chapman, a legal assistant and paralegal, his fee should be capped at no more than $100 per hour. *See Nadarajah v. Holder*, 569 F.3d 906, 918 (9th Cir. 2009).

14

### c. *Hours Reasonably Expended*

Next, Plaintiffs request fees for hours not reasonably expended. *Sorenson*, 239 F.3d at 1146–57 (holding that fees may not be collected for hours that are "poorly documented, excessive, or the result of overstaffing"). "The district court may determine, in one of two ways, whether hours are excessive, redundant, or otherwise unnecessary, and thus excludable. The court may conduct an hour-by-hour analysis of the fee request." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. U.S. Forest Serv.*, No. 3:10-CV-01397-SI, 2014 WL 3546858, at *7 (D. Or. July 15, 2014) (citing *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013)). "Alternatively, 'when faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure." *League of Wilderness*, 2017 WL 3546858, at *7 (quoting *Gonzalez*, 729 F.3d at 1203)). Here, Defendants provide estimates for across the board or per-attorney reductions based on their attached, highlighted review of Plaintiffs' billing records, and provide their proposed fees based on calculations made off of Plaintiffs' Fee Calculation spreadsheet.[4] Exs. A– G; ECF No. 351-1, at 41.

Here, a significant percentage of Plaintiffs' fee request is excessive, redundant, or otherwise unnecessary. First, Plaintiffs request fees for nine staff members, seven of whom are attorneys and four of whom request billing at an enhanced rate. ECF No. 351, at 30. While the Ninth Circuit has held that, in large class action cases, the participation of multiple attorneys is not unreasonable, *see Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 785 (9th Cir. 1986), courts routinely recognize that large-scale litigation brings with it some inefficiencies and can impose a ten percent reduction across the board "based on its exercise of discretion

---

[4] Defendants have color coded various examples deficiencies or excesses in Plaintiffs' billing records to reflect the hours which should be excluded or reduced. Exs. B–G.

and without a more specific explanation." *Hernandez v. Grullense*, No. 12-CV-03257-WHO, 2014 WL 1724356, at *15 (N.D. Cal. Apr. 30, 2014) (citing *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)). Therefore, Defendants propose across-the-board reduction of ten percent based on basic billing judgment.

Moreover, Attorney Schey seek attorney's fees for time billed to clerical tasks. Such time is not recoverable under EAJA. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989); *Nadarajah*, 569 F.3d at 921 ("[T]he government contends that the filing, transcript, and document organization time was clerical in nature and should have been subsumed in firm overhead rather than billed at paralegal rates. This contention has merit  . . . . When clerical tasks are billed at hourly rates, the court should reduce the hours requested to account for the billing errors."). Here, for example, attorney Schey has billed for time spent on a phone call "updating digital files, updating contact info for counsel rep cl. Members at detention facilities, travel to DC etc." Ex. B, at 4; at ECF No. 351-1, at 52, and such proposed fees should be excluded as clerical tasks. Therefore, Attorney Schey's time should be further reduced by five percent. In addition, Attorney Manning seeks fees ($543 per hour) for clerical work (*e.g.* "assemble litigation binder," "print D's pleadings for review," "print D's filed pleadings," "print and read D's and P's filed pleadings."). *See* Ex. I, at 1; ECF No. 351-2, at 124. These fees should be excluded and her time further reduced by three percent.

Next, counsel for Plaintiffs' fees for travel time should also be excluded in an exercise of billing judgment, particularly because Plaintiffs do not demonstrate why local counsel could not be retained or otherwise relied upon to reduce the amount of travel required.[5] *See, e.g.*, *Oregon Nat. Desert Ass'n v. McDaniel*, No. CIV 06-242-

---

[5] Attorneys Schey and Manning have also requested costs for their travel. Ex, J, K.

AA, 2011 WL 4625715, at *4 (D. Or. Sept. 30, 2011).[6] Therefore, Attorneys Schey, Holguin, Manning, and Garcia's hours should be reduced by five percent, and Attorney Corrigan's hours should be reduced by ten percent. Exs. B, C, H.

Attorneys Schey and Iahdijan's submitted time records are also poorly-kept in some circumstances, with vague records of unspecified calls and emails. *See, e.g.*, Ex. B, at 5 (Schey) (billing 51 minutes for "Calls to/from office"); Ex. D, at 1 (billing 1 hour for "emails"). Such poorly-kept hours should be excluded. *See Sorenson*, 239 F.3d at 1146–57; *New Jersey v. E.P.A.*, 703 F.3d 110, 14 (D.C. Cir. 2012) (Generic time records, such as "[r]eview[ing] case materials and review of key strategy issues . . . are inadequate to meet a fee applicant's heavy obligation to present well-documented claims.") (citation and quotation marks omitted). Accordingly, Attorney Schey and Iahdijan's hours should be further reduced by five percent.

Further, each attorney in this case engaged in block billing, which "makes it more difficult to determine how much time was spent on particular activities." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007). The Ninth Circuit has approved a reduction of twenty percent for hours that are block billed. *See id.*

---

[6] While the Ninth Circuit found in *Lozano v. Astrue*, No. 06-15935, 2008 WL 5875573, at *2 (9th Cir. Sept. 4, 2008), that the attorney's travel time in that case was compensable under EAJA, that case was significantly distinguishable. For one, the travel time at issue in *Lozano* was much lower: just seven hours of travel for oral argument. Here, Attorney Schey himself claims more than 40 hours of travel. *See* Ex. B. Further, the attorney in *Lozano* was billing at the statutory maximum rate adjusted for the cost of living, and the court noted that the "relatively modest amount at issue" figured into its decision to grant fees for travel without a more searching inquiry. *Id.* n.1.

Alternatively, Defendants submit that the attorneys' travel time here should be billed at the statutory maximum adjusted for the cost of living, or half the attorneys' hourly rates, whichever is lower. *See Harvey v. Mohammed*, 951 F. Supp. 2d 47, 63 (D.D.C. 2013).

Defendants submit that approximately half of all attorneys' hours were block billed and accordingly request that each attorney's hours be further reduced by ten percent. *See* Ex. B–I.

Finally, the hours Plaintiffs' counsel expended on issues that did not come before the court, such as general calls with advocates, and time responding to press releases, should also be excluded.[7] *See Hardisty*, 592 F.3d at 1077 ("We . . . decline to extend the EAJA to require review of those issues raised by the plaintiff but not addressed by the district court."). The time Plaintiffs' counsel spent on settlement negotiations should also be excluded, as they were unsuccessful. *Cobell v. Norton*, 407 F. Supp. 2d 140, 156 (D.D.C. 2005); *See* Ex. B, at 1–9 (Schey) (billing more than 20 hours for settlement discussions); Ex. I, at 1–3 (Manning) (billing nearly 30 hours for settlement discussions).  Therefore, the hours expended should be further reduced by ten percent.

In sum, Attorney Schey's hours should be reduced forty five percent to exclude hours not reasonably expended for excessive staffing, clerical tasks, poorly kept records, block billing, travel, and hours expended on issues not before the Court. Further, Attorney Corrigan's hours should be reduced by forty percent; Attorney Manning's hours should be reduced by thirty eight percent; Attorneys Iahdijan, Holguin, and Garcia's hours should be reduced by thirty five percent; and all other attorney and paralegal hours should be reduced by thirty percent, to exclude hours not reasonably expended for excessive staffing, block billing, travel, and hours expended on issues not before the Court. Accordingly, Plaintiffs' awardable hours should be capped at 752.97, and their fees capped at $141,121.86. *See* Defendants' Proposed Fee Chart, Ex. A.

### C. Ninth Circuit's Order on Fees

The Ninth Circuit ordered: "Each party shall bear its own costs." *Flores*, 828

---

[7] Attorney Schey also bills several hours for discussions about and reviews of amicus briefs. *E.g.*, Ex. B, at 10–11.

F.3d at 910.  Accordingly, any costs claimed by Plaintiffs related to the appeal to the Ninth Circuit must be denied.   Because this court issued its decision on the motion to enforce on August 21, 2015, all costs incurred after that date must be denied.  Here, nearly all of the Center for Human Rights and Constitutional Law's ("CHRCL") costs appear to have been incurred in 2016. *See* Ex.  J.  Therefore,  CHRCL's $5623.29 in costs should be excluded. Ex. J. So too should the $697.81 in costs incurred by Attorney Manning in May and June 2016. Ex.  K.  Therefore,  Plaintiffs' fees  should  be  reduced  by $6321.15, to $3848.77.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for fees and costs. In the alternative, the court should reduce the awardable hours to 752.79, the hourly fee for all attorneys to the appropriate statutory maximum, and the overall award to $141,121.86, as demonstrated by the attached calculations. Ex. A. Further, Plaintiffs' costs should be reduced by $6321.15, to $34848.77.

Dated: May 12, 2017          Respectfully submitted

                             CHAD A. READLER
                             Acting Assistant Attorney General
                             Civil Division

                             AUGUST E. FLENTJE
                             Special Counsel to the Assistant Attorney General
                             Civil Division

                             WILLIAM C. PEACHEY
                             Director

                             WILLIAM C. SILVIS
                             Assistant Director

                             SARAH B. FABIAN
                             Senior Litigation Counsel

                             By: /s/ Vinita B. Andrapalliyal
                             VINITA B. ANDRAPALLIYAL
                             Trial Attorney
                             United States Department of Justice
                             Civil Division
                             Office of Immigration Litigation
                             District Court Section
                             P.O. Box 868, Ben Franklin Station
                             Washington, DC 20044
                             Telephone: (202) 598-8085
                             Facsimile: (202) 305-7000
                             Email: Vinita.b.andrapalliyal@usdoj.gov

                             *Attorneys for Defendants*

20

## <u>CERTIFICATE OF SERVICE</u>

CASE NO. CV 85-cv-4544

I certify that on May 12, 2017, I served a copy of the foregoing pleading on all counsel of record by means of the District Court's CM/ECF electronic filing system.

/s/ Vinita B. Andrapalliyal

VINITA B. ANDRAPALLIYAL
Trial Attorney
United States Department of Justice

21