CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Peter A. Schey (Cal. Bar No. 58232)
Carlos Holguín (Cal. Bar No. 90754)
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Facsimile: (213) 386-9484
Email: pschey@centerforhumanrights.org
        crholguin@centerforhumanrights.org

ORRICK, HERRINGTON & SUTCLIFFE LLP
Elena Garcia (Cal. Bar No. 299680)
egarcia@orrick.com
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone: (213) 629-2020

*Attorneys for plaintiffs (listing continues on following page)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*, | ) Case No. CV 85-4544 DMG (AGRx) |
| | ) |
| Plaintiffs, | ) PLAINTIFFS' REPLY TO DEFENDANTS' |
| - vs - | ) OPPOSITION TO PLAINTIFFS' MOTION |
| | ) FOR FEES AND COSTS. |
| JEFFERSON B. SESSIONS, ATTORNEY | ) |
| GENERAL, *et al.*, | ) Hearing Date: July 7, 2017 |
| | ) Time:10 AM |
| Defendants. | ) Dept: Courtroom 8C – Los Angeles, |
| | ) 1st Street Courthouse |

*Plaintiffs' counsel, continued next page:*

La Raza Centro Legal, Inc.
Michael S. Sorgen (Cal. Bar No. 43107)
474 Valencia Street, #295
San Francisco, CA 94103
Telephone: (415) 575-3500

The Law Foundation of Silicon Valley
Legal Advocates for Children and Youth
Public Interest Law Firm
Jennifer Kelleher Cloyd (Cal. Bar No. 197348)
Katherine H. Manning (Cal. Bar No. 229233)
Kyra Kazantzis (Cal. Bar No. 154612)
Annette Kirkham (Cal. Bar No. 217958 )
152 North Third Street, 3rd floor
San Jose, CA 95112
Telephone:  (408) 280-2437
Facsimile:   (408) 288-8850
Email: jenniferk@lawfoundation.org
kate.manning@lawfoundation.org
kyrak@lawfoundation.org

Of counsel:

Youth Law Center
Virginia Corrigan (Cal. Bar No. 292035)
200 Pine Street, Suite 300
San Francisco, CA 94104
Telephone: (415) 543-3379

Plaintiffs' Reply to Defendants' Opposition
to Plaintiffs' Motion for Fees and Costs.

# TABLE OF CONTENTS

I.   DEFENDANTS PRE-LITIGATION AND LITIGATION POSITIONS WERE
     NOT SUBSTANTIALLY JUSTIFIED ........................................................................1

II.  PLAINTIFFS' REQUESTED FEES AND COSTS ARE NOT EXCESSIVE.........6

   1.   CLASS COUNSEL ARE ENTITLED TO ENHANCED RATES ......................7

   2.   CO-COUNSEL BUSSIERE AND MANNING ARE ENTITLED TO
        ENHANCED RATES ..................................................................................10

   3.   DEFENDANTS' REMAINING ARGUMENTS AIMED AT REDUCING AN
        EAJA AWARD ARE WITHOUT MERIT ......................................................11

III.  CONCLUSION ...........................................................................................14

# TABLE OF AUTHORITIES

## Cases

*Belcher v. Astrue*, 2010 WL 5111435 (E.D. Cal. Dec. 9, 2010)....................................11

*Blackwell v. Astrue*, 2011 WL 1077765 (E.D. Cal. Mar. 21, 2011) .............................11

*Citizens for Better Forestry v. U.S. Dep't of Agric.*, 2010 WL 3222183 (N.D. Cal. Aug. 13, 2010)..........................................................................................................................12

*Commissioner, INS v. Jean*, 496 U.S. 154 (1990) .......................................................11

*Eastern Marine, Inc. v. U.S.*, 10 U.S. Cl. Ct. 184 (1986) ...............................................6

*Flores v. Lynch*, 828 F.3d 898 (9th Cir. 2016) ..........................................................1, 4

*Garrity v. Sununu*, 752 F.2d 727 (1st Cir. 1984) .........................................................13

*Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1992) ...................................................7

*Hardesty v. Astrue*, 592 F.3d 1072 (9th Cir. 2010)......................................................11

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ............................................................7, 12

*Ibrahim v. U.S. Dep't of Homeland Sec.*, 835 F.3d 1048 (9th Cir. 2016) ......................7

*Kali v. Bowen*, 854 F.2d 329 (9th Cir. 1988)..................................................................1

*Kansas v. Crane*, 534 U.S. 407 (2002) ..........................................................................3

*Keith v. Volpe,* 833 F.2d 850 (9th Cir.1987)................................................................13

*Mendez v. County of San Bernadino*, 540 F.3d 1109 (9th Cir. 2008)...........................12

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008). ..................................11

*Muhur v. Ashcroft*, 382 F.3d 653 (7th Cir. 2004) .........................................................8

*Nadarajah v. Holder*, 569 F.3d 906 (9th Cir. 2009).................................................9, 13

*Orantes-Hernandez v. Holder*, 713 F. Supp. 2d 929 (C.D. Cal. 2010) ....................8, 13

*Portland Audubon Soc. v. Lujan*, 865 F. Supp. 1464 (D. Or. 1994)............................14

*R.I.L-R v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015).................................................1

*Taylor v. Astrue*, No. C07- 5335BHS, 2010 WL 445902 (W.D. Wash. Feb. 1, 2010) ...5

*Thangaraja v. Gonzales*, 428 F.3d 870 (9th Cir. 2005)................................................8, 10

United States v. 22249 Dolorosa St., 190 F.3d 977 (9th Cir. 1999)................................6

*United States v. Atlantic Refining Co.*, 360 U.S. 19; 79 S. Ct. 944; 3 L. Ed. 2d 1054 (1959) ...................................................................................................................3

*United States v. ITT Continental Baking Co.*, 420 U.S. 223; 95 S. Ct. 926; 43 L. Ed. 2d 148 (1975) ...............................................................................................................3

*Webb v. Sloan*, 330 F.3d 1158 (9th Cir. 2003) .............................................................7

*Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942 (9th Cir. 2007)..............................12

## Other Authorities

8 C.F.R. § 212.5(a)(3)........................................................................................................9

8 C.F.R. § 212.5(b)(3)(ii)...................................................................................................5

8 U.S.C. § 1232..................................................................................................................8

Homeland Security Act of 2002, Pub. L. No. 107-296......................................................8

William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, § 235 ...................................................................................................8

/ / /

## I.  Defendants pre-litigation and litigation positions were not substantially justified.

To win a "substantial justification" defense against an award of EAJA fees, the Government must show both that "the government was substantially justified in taking its original action; and second, … the government was substantially justified in defending the validity of the action in court." *Kali v. Bowen*, 854 F.2d 329, 332 (9th Cir. 1988). Dkt # 358-1, Defendants' Corrected Memorandum in Opposition To Plaintiffs' Motion For Award Of Attorney's Fees ("Defs Opp.") fails to explain why their pre-litigation position was substantially justified. For that reason alone, their "substantial justification" defense fails.

Defendants' pre-litigation conduct was blatantly unlawful, both in substance and in process. Regarding its substance, in response to a temporary spike in apprehensions of unaccompanied and accompanied minors along the southern border, Defendants unilaterally decided to "deter" future intending migrants by "detaining" mothers and children arrested along the border. In response, as the Court of Appeals explains, in January 2015 a group of Central American migrants filed suit challenging the deterrence policy under the Due Process Clause. *Flores v. Lynch*, 828 F.3d 898, 904 (9th Cir. 2016), *citing R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 170 (D.D.C. 2015). On

1

February 20, 2015, the U.S. District Court for the District of Columbia granted the plaintiffs' motion for a preliminary injunction. *Id.*[1]

On February 2, 2015, Flores filed a motion in this Court to enforce the Settlement, arguing, in summary, that ICE had breached it by not processing accompanied minors for release under the Settlement and confining children in secure, unlicensed facilities. In response, Defendants raised the deterrence justification. Later, after briefing and in response to this Court's Order to Show Cause, Defendants informed the Court "ICE no longer considers general deterrence as a factor in individual bond determinations for Central American women and children." Defendants' Response to Court's Order to Show Cause, etc., Dkt # 184 at 6.[2] Defendants offer no argument explaining why their pre-litigation unlawful reliance on "deterrence" to detain class members was justified at all, let alone was "substantially" justified.

After abandoning it before this Court, Defendants incredibly resurrected their deterrence argument before the Court of Appeals. Defendants argued to the Court of

_____

[1] The *R.I.L-R* court found that "DHS policy directs ICE officers to consider deterrence of mass migration as a factor in their custody determinations, and … this policy has played a significant role in the recent increased detention of Central American mothers and children." *Id.* quoting *R.I.L-R* at 174.

[2] On May 13, 2015, ICE announced that it would "discontinue invoking general deterrence as a factor in custody determinations in all cases involving families." DHS Press Release, 9th Cir. Case #15-56434, Dkt # 11-2, RE 154, at 154; Homan Decl. *Id.* at 160-161 ¶7 ("ICE no longer uses deterrence as a factor in individual custody determinations . . .").

Appeals—to no avail—that their no-release policy was "essential … to signal to potential illegal entrants that individuals who do not make meritorious claims for relief will not be permitted to remain in the United States." Brief for Appellants at 22 (emphasis supplied). Even had Defendants established a nexus between their detention policy and deterrence, which they never did,[3] it was obviously impermissible to punish innocent class members to deter future migration by family units. *Kansas v. Crane*, 534 U.S. 407, 412 (2002) (civil detention may not "become a 'mechanism for … general deterrence' – functions properly those of criminal law, not civil commitment"). There was no more justification for Defendants' litigation position than there was for their pre-litigation conduct.

Defendants' conduct was also unjustified in terms of the *process* they followed. If in 2014 a spike in apprehensions caused Defendants to believe the Settlement needed to be modified, they were obligated to meet and confer with class counsel. Dkt. # 101 at 1, Agreement at ¶ 37. Failing agreement, Defendants' remedy was to file a motion to modify the Settlement.[4] Instead, Defendants started treating accompanied minors as if,

---

[3] "Defendants [failed to] proffer *any* competent evidence that ICE's detention of a subset of class members in secure, unlicensed facilities has deterred or will deter others from attempting to enter the United States." Order Dkt # 177, at 23 (emphasis added). This court found it "astonishing" that in 2014 Defendants enacted a policy requiring "such expensive infrastructure without more evidence to show that it would be compliant with an Agreement that has been in effect for nearly 20 years or effective at achieving [the deterrent effect] Defendants hoped it would accomplish." *Id* at 23-24.

[4] *E.g., United States v. ITT Continental Baking Co.*, 420 U.S. 223, 236-37; 95 S. Ct. 926; 43 L. Ed. 2d 148 (1975); *United States v. Atlantic Refining Co.*, 360 U.S. 19, 23;

1  for the first time since 1997, they were *not* class members. Defendants' pre-litigation

2  conduct of acting *unilaterally* was an appalling violation of the plain terms of

3  Settlement's dispute resolution terms and was wholly unjustified.

4

5      This Court and the Court of Appeals have dealt in depth with and rejected the

6  arguments Defendants developed to defend their position that accompanied children

7  were not class members, and there is no reason for Plaintiffs to repeat those reasons

8  here. There was no justification for Defendants' sudden change in their interpretation

9  of the class definition. The Court of Appeals concluded: "We agree with the district

10  court that '[t]he plain language of the Agreement clearly encompasses accompanied

11  minors.'" *Flores v. Lynch*, *supra*, at 905, *quoting* Order Dkt # 177 at 4 (emphasis

12  supplied). Defendants offer no plausible explanation why their belated claim that the

13  class definition did not include accompanied minors was justified in any way.

14

15      Defendants also argue that their litigation position regarding CBP conditions

16  was substantially justified because "CBP has in place standards and procedures relating

17  to the conditions in its facilities, and … those standards and procedures [allegedly]

18  comply with the Flores Agreement." Defs Opp. at 5. This Court long ago made clear:

19  "The mere existence of those policies tells the Court nothing about whether those

20  policies are actually implemented, and the current record shows quite clearly that they

21

22

23

24

25

26  _____

27  79 S. Ct. 944; 3 L. Ed. 2d 1054 (1959) (that government's interpretation of consent
    decree might better accord with statute would "not warrant our substantially changing

28  the terms of a decree … without any adjudication of the issues.")

Plaintiffs' Reply to Defendants' Opposition
to Plaintiffs' Motion for Fees and Costs.

were not." Order Dkt. #177 at 18.[5] In the end, Defendants did not appeal this Court's

decision that they had breached the Settlement as to conditions in CBP stations.

Defendants argue they were justified in their position that facilities licensed to

care for "dependent children" could not be used to house accompanied children. Defs

Opp. at 14.[6] They have never offered any evidence of this claim. Defendants argue that

it was "reasonable to contend that at the time the Agreement was signed, the parties

could not have contemplated a requirement that the Government must obtain a license

… for facilities that were not currently in existence." Defs Opp at 14. Defendants know

this is not the case. In 1997 the agency's extant regulation, 8 C.F.R. § 212.5(b)(3)(ii),

clearly stated: "If a relative who is not in detention cannot be located to sponsor the

minor, *the minor may be released with an accompanying relative who is in detention.*"

(Emphasis supplied).[7]

---

[5] *See also* Dkt. # 189, Order dated August 21, 2015, at 13 ("None of Defendants'
declarations challenged or contradicted the deplorable conditions Plaintiffs' declarants
described, even if they pertained only to stations located in the Rio Grande Valley.").

[6] As the Court pointed out: "The purpose of the licensing provision is to provide class
members the essential protection of regular and comprehensive oversight by an
independent child welfare agency.  Defendants agree with Plaintiffs that oversight was
the animating concern behind the licensing provision." Order Dkt # 177 at 14.

[7] Defendants finally argue that "[t]he court [of appeals] ordered that '[e]ach party shall
bear its own costs,' [and this is] persuasive evidence that the court believed Defendants
were substantially justified in their position on appeal." Defs Opp. at 12 citing *Taylor
v. Astrue*, No. C07- 5335BHS, 2010 WL 445902, at *4 (W.D. Wash. Feb. 1, 2010)
(court suggests this approach in *dicta*). Courts that have squarely addressed this
argument have rejected it. *See, e.g.*, *Eastern Marine, Inc. v. U.S.*, 10 U.S. Cl. Ct. 184,
186 (1986) ("The Government's contention that the law of the case precludes a finding

Plaintiffs' uncontested showing that they are eligible parties shifted the burden to Defendants to demonstrate that their position, both before and during the litigation, was substantially justified or that special circumstances make an award of attorney's fees unjust. *United States v. 22249 Dolorosa St.*, 190 F.3d 977, 983-84 (9th Cir. 1999). Defendants have not met that burden.

## II.    Plaintiffs' Requested Fees and Costs are not Excessive.

### 1. There is no basis for an across-the-board reduction of 40% because mother's are not protected by the Settlement

Defendants argue that any fee award should be reduced by 40% because on appeal the Circuit Court reversed a small portion of this Court's Order relating to the release of mothers in accordance with existing laws. Defs Opp. at 10. Review of the briefing in this Court and the Court of Appeals shows that this issue received extremely limited attention in Plaintiffs' briefs and time records.[8] In any event, "the court must determine whether the claims upon which the plaintiff prevailed are related to the unsuccessful claims." *Ibrahim v. U.S. Dep't of Homeland Sec.*, 835 F.3d 1048,

---

that [plaintiff] was a 'prevailing party' is without merit. The CAFC's one sentence order ... that each party bear its own costs does not necessarily imply that [plaintiff] did not prevail. Moreover, the costs at issue in the CAFC were appeal costs, not attorneys fees and costs in this court." If the Ninth Circuit believed Defendants pre-litigation and litigation positions were substantially justified, all signaled by ordering each party to bear its costs on appeal, it likely would not have remanded the motion to this Court to adjudicate the matter on its merits.

[8] Of a total of about 148 pages in Plaintiffs' principle briefs (Dkt. ## 101-1, 122, 127, and 186; 9th Cir. Dkt #12), Plaintiffs dedicated less than 9 pages to briefing the release of mothers, or something less than 6%, hardly a basis for a "40%" reduction in fees.

1060-61 (9th Cir. 2016) (*citing Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003)).[9]

Time spent on unsuccessful but related claims or claims involving a common core of facts are compensable under EAJA. *Id*. Here, the claim for limited relief for the mothers related directly to the rights of class members to win their release, was based on the terms of the Settlement not some other source of alleged parental rights, and arose from a common core of facts. The few hours dedicated to seeking limited relief for the mothers of class members are compensable.[10]

## 2.    Class Counsel are entitled to enhanced rates

Defendants' position that class counsel (Peter Schey and Carlos Holguin) are not entitled to enhanced rates has no basis in law or fact. As their declarations show, their unique experience and skills were essential to the successful litigation of the motion to enforce. Dkt #351-1, Ex. ## 3-4 (Dec. of Peter Schey; Dec. of Carlos Holguin).

Pursuant to the terms of the Settlement, class counsel are the only attorneys in the country authorized to inspect detention facilities and to gather evidence from

---

[9] "[This] inquiry rests on whether the 'related claims involve a common core of facts or are based on related legal theories.'" *Id*. at 1061 (*quoting Webb*, 330 F.3d at 1168) (emph. added).

[10] *See also Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("the fee should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reduced a fee. The result is what matters.") This Court should not be asked to and should not engage in an "hour-by-hour analysis of the fee request." *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992).

groups of class members and their accompany parents.[11] Only class counsel had

meaningful access to class members in the Berks, Dilley and Karnes facilities, not to

mention Border Patrol stations and staging areas. Such access was clearly required to

give plaintiffs "a fair shot at prevailing." *Thangaraja v. Gonzales*, 428 F.3d 870, 876

(9th Cir. 2005), *quoting Muhur v. Ashcroft*, 382 F.3d 653, 655-56 (7th Cir. 2004).

Defendants do not dispute that class members are almost all monolingual

Spanish-speakers. Nor does it deny that the ability to speak Spanish is a specialized

skill. Rather, it argues that the ability to speak Spanish was not required because

interpreters were available. The same may be said in all cases and accordingly is no

reason to disregard this factor. *Orantes-Hernandez v. Holder*, 713 F. Supp. 2d 929

(C.D. Cal. 2010).

Matters such as the impact of the Homeland Security Act of 2002, Pub. L. No.

107-296, and the William Wilberforce Trafficking Victims Protection Reauthorization

Act of 2008, Pub. L. No. 110-457, § 235 (codified in principal part at 8 U.S.C. § 1232),

addressed in detail in Plaintiffs' briefing and this Court's Orders (*see, e.g.* Order Dkt. #

177 at 18, 20-23), at the very least are esoteric statutory "nooks and crannies" that go

---

[11] As the record discloses, Defendants have routinely restricted' lawyers access to detention facilities even when they represent individual class members. *See, e.g.*, Dkt. ## 187-6 at 287, 305, and 312; 187-7 at 346; 187-8 at 380, 382, and 405; and 187-10 at 503 and 505.

1    beyond "established principles of law with which the majority of attorneys are

2    familiar." *Nadarajah v. Holder*, 569 F.3d 906, 914 (9th Cir. 2009). [12]

3

4        The same is true with respect to the juvenile release regulations extant at the

5    time the settlement was negotiated, which Plaintiffs asserted and this Court relied upon

6    to reject Defendants contention that the INS did not detain families in 1997, and the

7    parties therefore never intended the settlement to apply to accompanied minors. *See*

8    Order Dkt. # 177 at 6 (8 C.F.R. § 212.5(a)(3) (1997) provides "If a relative who is not

9    in detention cannot be located to sponsor the  minor, the minor may be released *with an*

10

11   *accompanying relative* who is in detention.")

12

13       There is no serious question but that class counsels' unique familiarity with the

14   earliest pre-settlement stages of this litigation, their participation in drafting the

15   Settlement, the many years of litigation experience that inform the Settlement's intent

16   and terms, and the many years class counsel monitored compliance with the

17   Settlement, all contributed to class counsel being uniquely situated to bring and

18

19   prosecute the motion to enforce the Settlement. Indeed, it was this experience that

20   allowed class counsel to effectively and efficiently discount the Defendants' several

21   justifications offered in defense of their violating the Settlement before this Court and

22

23

24

25

26

27   [12] In *Nadarajah* the government unsuccessfully contended that no distinctive
     knowledge or special skill was required because the litigation "turned on statutory
28   interpretation and did not involve the application of complex statutes or regulations."
     569 F.3d at 913-14.

Plaintiffs' Reply to Defendants' Opposition
                                                                               to Plaintiffs' Motion for Fees and Costs.

the Court of Appeals.[13] Despite scores of lawyers volunteering at Defendants' various detention centers, this was the only action anyone ever brought to enforce the settlement.[14]

## 2.  Co-counsel Bussiere and Manning are entitled to enhanced rates

Defendants contend that Attorney Bussiere's and Attorney Manning's skill sets as experts in child welfare matters were not necessary to litigate this case. Defs'Opp. at 20. This expertise was necessary both to formulate Plaintiffs' arguments and to respond to Defendants' arguments. Plaintiffs' enforcement motion was based in part on issues for which such expertise was necessary.[15] Expertise in child welfare was also required to evaluate and respond to Defendants' settlement proposals to insure compliance with accepted standards for the care of children in custody.

Defendants argue that Attorneys Bussiere and Manning should not be compensated at an enhanced rate because the Court did not rely on child welfare

---

[13] Enhanced rates have been awarded in immigration cases where counsel established that "knowledge of foreign cultures or of particular esoteric nooks and crannies of immigration law ... [was] needed to give the alien a fair shot at prevailing." *Thangaraja,* 428 F.3d at 876.

[14] Because specialized immigration expertise was necessary to give plaintiff class a fair shot at prevailing in their motion to enforce the settlement agreement, qualified counsel was not available for this litigation at the maximum rate provided under EAJA.

[15] For example, Plaintiffs argued that housing children in unlicensed facilities is detrimental to children's well-being, and that the conditions in CBP facilities were neither safe and sanitary nor consistent with concern for the particular vulnerability of minors. Plaintiffs' Motion to Enforce, Dkt. #101-1 at 13, 15, and 20.  These arguments required specialized child welfare knowledge as to the rights of children, the purpose of licensing, and the acceptable standards of care for children in government custody.

arguments in reaching its decision. Defs. Opp at 13.[16] In *Hardesty v. Astrue*, 592 F.3d 1072, 1077-78 (9th Cir. 2010), relied upon by Defendants, the court declined to award attorneys' fees for issues a Plaintiff raised but the court never decided because the court would have no basis for deciding whether the defendant's positions were substantially justified.  Here, Plaintiffs are seeking an enhanced fee for the expertise attorneys Bussiere and Manning provided in developing arguments that this Court decided in Plaintiffs' favor.[17]

### 3.   Defendants' remaining arguments aimed at reducing an EAJA award are without merit

The Ninth Circuit has made clear that "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).[18]

---

[16] Co-counsel Bussiere served as one of the class counsel for many years and the points raised *supra* regarding the special expertise of class counsel apply equally to her.

[17] District courts have repeatedly refused to extend Hardesty to apply when at issue is whether a given fee request is reasonable, as opposed to whether a defendant's position was substantially justified.  *See, e.g., Belcher v. Astrue*, 2010 WL 5111435 at *2-3 (E.D. Cal. Dec. 9, 2010); *Blackwell v. Astrue*, 2011 WL 1077765 at *3-4 (E.D. Cal. Mar. 21, 2011).

[18] *See also Commissioner, INS v. Jean*, 496 U.S. 154, 161-62 (1990) ("the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items.")

Plaintiffs' counsel have not engaged in "block billing." Defendants fail to properly define "block billing." The Ninth Circuit has defined it as "the method by which each lawyer and legal assistant enters the total *daily* time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007) (emph. added).[19] Time entries that specify the tasks billed do not constitute block billing. *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 2010 WL 3222183, at *11 (N.D. Cal. Aug. 13, 2010).[20] Review of the time entries that Defendants argue constitute "block billing" reveals that the entries are not "block billing."[21] The fact that a time entry has two or more different tasks does not constitute block billing. Because Defendants have not identified any "block billed" hours in which the Court cannot determine whether an attorney's time was reasonable spent on the litigation, no reduction is warranted.

---

[19] An attorney seeking fee recovery "should identify the general subject matter of his time expenditures," but "is not required to record in great detail how each minute of his time was expended." *Hensley*, 461 U.S. at 437 n.12.

[20] Even if block billing exists, which in this case it does not, the Ninth Circuit has rejected resorting to an across the board percentage cut in fees as proposed by Defendants. *See, e.g., Mendez v. County of San Bernardino*, 540 F.3d 1109, 1129 (9th Cir. 2008) (block billing "does not justify an across-the-board reduction … of all hours" in a fee application).

[21] *See, e.g.* Plaintiffs' Ex. 3-A (Peter Schey Time Records), Dkt #351-1 ("7-17-14 1 hr. 10 mins. Review news reports re Govt. response to surge, review listservs etc. re advocates observations/reports"; "10-30-14 1 hr. Prep/confs re Meet and Confer with Opp Counsel; post-M&C conf w/ co-counsel re same"; "5-20-16 1 hr. 24 mins. Phone Call w/ Carlos Holguin; etc."). Of the 16 time entries Defendants identify, none involve what courts have referred to as "block billing."

Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion for Fees and Costs.

Defendants argue that Plaintiffs should not be permitted to recover fees for the time spent traveling to detention centers to visit class members or to appear for hearings before this Court. The courts have rejected this argument. *See, e.g., Orantes-Hernandez v. Holder, supra*, 713 F. Supp. 2d at 968 (request by class of Salvadoran citizens for attorney fees for time and travel to collect declarations from 37 detained Salvadorans was not excessive or unnecessary).[22] Defendants fail to identify travel time that was not directly relevant to the successful litigation of Plaintiffs' claims.[23]

Defendants assert that certain time entries of Plaintiffs' counsel were poorly recorded. This argument is belied by the records themselves.[24] Courts have rejected this claim, particularly where, as here, the lawyers submitting time records were public interest lawyers who were not in the ordinary course billing their clients. *See, e.g.,*

---

[22] *See also Nadarajah v. Holder, supra*, 569 F.3d at 924 (time spent by immigrant's attorney communicating with him regarding appeal of denial of his habeas corpus petition, including travel time to and from detention center, was reasonably expended).

[23] This Circuit has held that "post-judgment monitoring by the [plaintiffs] was … `a necessary aspect of plaintiffs' `prevailing' in the case.'" *Keith v. Volpe,* 833 F.2d 850, 857 (9th Cir.1987), *quoting Garrity v. Sununu,* 752 F.2d 727, 738-39 (1st Cir. 1984).

[24] For example, with regards class counsel Schey's records, Defendants claim the following were "poorly recorded": "5-11-15 Telecon co-counsel and consultants; 2-5-16 Draft Answering Brief - Summary of the Argument"; "2-17-16 Drafted Answering Brief - Statement of Case"; "6-25-15 Conference Call w/ Co-Counsel; 2-15-16 Drafted Answering Brief - Jurisdictional Statement, Statement of issues, statement of case"; "2-8-16 Res & draft Answering Brief - District Court Properly Held that the Settlement Applies to Accompanied Minors, (d)(i), (d)(ii)"; etc. Peter Schey Time Records, Dkt #351-1. Of the approximately 40 time entries Defendants claim are "poorly documented" in Schey's records, they all appear to more than adequately explain what tasks were performed.

*Portland Audubon Soc. v. Lujan*, 865 F. Supp. 1464, 1476 (D. Or. 1994) (hours for which counsel for successful plaintiffs would be compensated under EAJA would not be reduced on ground that some time records were poorly documented). In any event, counsels' time records are clear, specific, and concise.

Defendants seek to reduce hours spent on settlement discussions that ultimately were not fruitful. Courts have included these hours in EAJA awards. *See Portland Audubon Soc.*, *supra*, 865 F. Supp. at 1476.[25] In this case the settlement negotiations were ordered by the Court and there is no basis for concluding that time reasonably dedicated to these negotiations are not now compensable.

III.    Conclusion

For all the reasons stated above, Plaintiffs respectfully request that this Court grant their motion for fees and costs.[26]

Dated: June 23, 2017                Respectfully Submitted,

                                    Center For Human Rights and
                                    Constitutional Law
                                    Peter A. Schey
                                    Carlos Holguín

---

[25] Defendants also argue that certain largely undefined billed hours are not recoverable because they involved clerical work. Plaintiffs have exercised billing judgment to avoid billing for clerical work. Any potential clerical work reflected in counsels' time records is entirely *de minimis*, involving filing documents on ECF and effecting service.

[26] Plaintiffs may promptly submit to the Court additional time records for time dedicated to the preparation of this memorandum.

Orrick, Herrington & Sutcliffe LLP
Elena García

La Raza Centro Legal, Inc.
Michael Sorgen
Amanda Alvarado Ford

Law Foundation of Silicon Valley -
Legal Advocates for Children & Youth
Jennifer Kelleher Cloyd
Katherine H. Manning
Kyra Kazantzis
Annette Kirkham

Of counsel:
Youth Law Center
Virginia Corrigan


/s/   Peter Schey
Attorneys for Plaintiffs

/ / /

CERTIFICATE OF SERVICE

I, Peter Schey, declare and say as follows:

I am over the age of eighteen years of age and am a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 256 S. Occidental Blvd., Los Angeles, CA 90057, in said county and state.

On June 23, 2017, I electronically filed the following document(s):

Plaintiffs' Reply to Defendants Opposition to Plaintiffs' Motion for Attorneys Fees

with the United States District Court, Central District of California by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.


/s/   Peter Schey
Attorney for Plaintiffs

16