UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544 DMG (AGRx)** | Date | June 27, 2017 |
|---|---|---|---|

| Title | ***Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.*** | Page | 1 of 34 |
|---|---|---|---|

Present: The Honorable      DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS - ORDER RE PLAINTIFFS' MOTION TO ENFORCE AND APPOINT A SPECIAL MONITOR [201, 202]**

## I.
## INTRODUCTION

On July 24, 2015, the Court found that Defendants Jeh Johnson and the U.S. Department of Homeland Security ("DHS") and its subordinate entities, U.S. Immigration and Customs Enforcement ("ICE") and U.S. Customs and Border Protection ("CBP") had breached the settlement agreement (the "Agreement") that they had reached with Plaintiff Jenny L. Flores and other class members—accompanied and unaccompanied minors—in 1997. *Flores v. Johnson*, 212 F. Supp. 3d 864 (C.D. Cal. 2015) ("July 24, 2015 Order"). The Court subsequently gave Defendants an opportunity to respond to the Court's proposed remedies. On August 21, 2015, the Court issued its remedial order. *Flores v. Lynch*, 212 F. Supp. 3d 907 (C.D. Cal. 2015) ("August 21, 2015 Order"). Defendants appealed.

On July 6, 2016, the Ninth Circuit issued its opinion, affirming the district court in part and reversing in part. In particular, the Ninth Circuit concluded that while "the Settlement unambiguously applies both to accompanied and unaccompanied minors," it "does not create affirmative release rights for parents." *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016).

Before the Court is Plaintiffs' motion to enforce the Agreement. ("Pl. Mot.") [Doc. ## 201, 202.] According to Plaintiffs, Defendants are in breach of the Agreement by (1) continuing to detain class members in deplorable and unsanitary conditions in CBP facilities (also referred to as "Border Patrol Stations"); (2) failing to advise class members of their rights under the Agreement; (3) failing to make and record ongoing efforts aimed at release or placement of class members; (4) detaining class members for weeks or months in secure, unlicensed facilities; (5) commingling class members with unrelated adults for extend periods; and (6) interfering with class members' right to counsel. Plaintiffs request that the Court appoint a special monitor to ensure Defendants' compliance with the Agreement. Defendants filed an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544 DMG (AGRx)** | Date | June 27, 2017 |
|---|---|---|---|

| Title | ***Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.*** | Page | 2 of 34 |
|---|---|---|---|

opposition. ("Def. Resp.") [Doc. # 208.]  They then filed a motion for an evidentiary hearing, which the Court granted in part and denied in part.  ("October 7, 2016 Order") [Doc. # 274.]

The Court in its October 7, 2016 Order stated that it would hold a January 30, 2017 evidentiary hearing on four of the six issues Plaintiffs identified.  *Id.* at 1.  In response to the Court's order, Plaintiffs filed supplemental briefing as well as a Statement of Uncontroverted Facts.  *See* ("Pl. Supp.") [Doc. # 287]; ("Plaintiff's SUF") [Doc. # 314].  In turn, Defendants filed a separate Statement of Genuine Disputes of Material Fact and a Second Supplemental Response in opposition to Plaintiff's motion.  *See* ("Def. Sec. Supp. Resp.") [Doc. # 296]; ("Def. SGDMF") [Doc. # 297].

For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' motion to enforce and appoint a special monitor.[1]

## II.
## LEGAL STANDARD

**A.     Burden of Proof – Preponderance of the Evidence**

"The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally."  *O'Neil v. Bunge Corp.*, 365 F.3d 820, 822 (9th Cir. 2004) (internal citations and quotation marks omitted); *Adams v. Johns-Manville Corp.*, 876 F.2d 702, 704, 709 (9th Cir. 1989) ("Under California law, settlement agreements are governed by general principles of contract law. . . .  The motion to enforce the settlement agreement essentially is an action to specifically enforce a contract."); July 24, 2015 Order, 212 F. Supp. 3d at 870.  Under state law, courts apply the preponderance of the evidence standard to motions to enforce settlement agreements.  *See Buss v. Superior Court*, 16 Cal. 4th 35, 54 (1997) (preponderance of the evidence standard applies to "contractual causes of action") (citations omitted).

According to Defendants, the Court should use a clear and convincing standard.  The cases that Defendants cite apply this higher burden of proof to civil contempt actions.  *See, e.g.*, *Kelly v. Wengler*, 822 F.3d 1085, 1096 (9th Cir. 2016) ("The district court found by clear and convincing evidence that [defendant] was in civil contempt because it violated the settlement

---

[1] Due to the numerous issues raised by the parties and the voluminous record presented, consisting of over 100 declarations and deposition excerpts, the Court will summarize the facts as necessary as it addresses the parties' various claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | | Date | June 27, 2017 |
|---|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | | Page | 3 of 34 |
|---|---|---|---|---|

agreement and had failed to take all reasonable steps to comply."). As Defendants put it, "because Plaintiffs' motion to enforce the Agreement amounts to a request for civil sanctions against Defendants, . . . the Court should require Plaintiffs to establish any violation of the Agreement under the clear and convincing standard." Def. Sec. Supp. Resp. at 4 (citations omitted).

The Court disagrees. Plaintiffs make no attempt to hold Defendants in civil contempt. Pl. Supp. at 24 ("Plaintiffs do not seek a contempt ruling against Defendants."); *cf. Labor/Cmty. Strategy Ctr. v. L.A. Cty. Metro. Transp. Auth.*, 564 F.3d 1115, 1123 (9th Cir. 2009) (moving party in motion for contempt must show alleged party in contempt violated court order by clear and convincing evidence). Plaintiffs' motion asserts breach of contract and seeks enforcement of the Agreement.

The Court therefore will apply the preponderance of the evidence standard to Plaintiffs' motion to enforce.

**B.     Substantial Compliance**

"Like terms in a contract, distinct provisions of consent decrees are independent obligations, each of which must be satisfied before there can be a finding of substantial compliance." *Rouser v. White*, 825 F.3d 1076, 1081 (9th Cir. 2016). "Substantial compliance" means more than "taking significant steps toward compliance" with a consent decree. *Id.* at 1082. In California, "a party is deemed to have substantially complied with an obligation only where any deviation is 'unintentional and so minor or trivial as not substantially to defeat the object which the parties intend to accomplish.'" *Id.* (quoting *Wells Benz, Inc. v. U.S. for Use of Mercury Elec. Co.*, 333 F.2d 89, 92 (9th Cir. 1964) (citation and some quotation marks omitted)). "This standard doesn't require perfection. . . . Deviations are permitted so long as they don't defeat the object of the decree." *Id.* (citation omitted).

Defendants contend that if Plaintiffs satisfy their burden to show breach of the Agreement, the burden then shifts to the government to demonstrate that it substantially complied with the Agreement. Substantial compliance with a court order, however, is typically a "*defense* to an action for civil contempt." *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 466 (9th Cir. 1989) (emphasis added) (citation omitted). As discussed above, Plaintiffs do not bring a civil contempt action.

Nonetheless, Plaintiffs appear to agree that they must show Defendants "have not demonstrated 'substantial compliance' as required by Paragraph 30 of the Flores Agreement."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | | Date | June 27, 2017 |
|---|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | | Page | 4 of 34 |
|---|---|---|---|---|

Pl. Supp. at 24 ("The appropriate governing standard is substantial compliance by a preponderance of the evidence."); *cf. Jeff D. v. Otter*, 643 F.3d 278, 283–84 (9th Cir. 2011) ("Because consent decrees have many of the attributes of ordinary contracts [and] . . . should be construed basically as contracts, the doctrine of substantial compliance, or substantial performance, may be employed.") (internal citation and quotation marks omitted.) Indeed, as Plaintiffs point out, there is a particular provision of the Agreement that explicitly bears on the "substantial compliance" inquiry. *See* Agreement ¶ 30 ("the Coordinator shall state to the court whether or not the INS is in substantial compliance with the terms of this Agreement") [Doc. # 101 at 8].

As such, the Court will apply the preponderance of the evidence standard to the issue of whether Plaintiffs have demonstrated that Defendants have failed to substantially comply with certain provisions of the Agreement.

**III.**
**EVIDENTIARY OBJECTIONS AND REQUEST FOR JUDICIAL NOTICE**

Plaintiffs interpose no evidentiary objections, arguing instead that Defendants' evidence presents no genuine dispute of material facts that would require live in-court testimony in an evidentiary hearing. Defendants raise numerous objections to Plaintiffs' evidence, submitting two sets of objections. *See* Doc. ## 217-5, 296-1. As to the first set of objections, the Court incorporates its rulings from its January 24, 2017 Order. [Doc. # 320.] With regard to Defendants' second set of objections, the Court does not address objections pertaining to facts it deems immaterial to the resolution of the motion. Rather, the Court addresses these objections only to the extent it deems it necessary.

**A.       Defendants' Objection to Declaration and Deposition Testimony**

As an initial matter, Defendants "object to the Court's consideration of inadmissible out of court statements made by witnesses who were not produced for examination at the [January 30, 2017 evidentiary] hearing." Def. Statement Regarding Witnesses at 1 [Doc. # 327]. In effect, Defendants object to all of Plaintiffs' witness declarations and deposition evidence "on the ground that Plaintiffs are not making these witnesses available for cross-examination [at the January 30, 2017 hearing]." *Id.* at 2. Defendants also object to the consideration of declaration and deposition evidence from Plaintiffs' witnesses "without the opportunity to show bias on the part of the witness through cross examination or other means." *See, e.g.*, Def. Objections to Plaintiffs' SUF (Objection No. 9) at 4 [Doc. # 296-1].

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | | Date | June 27, 2017 |
|---|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | | Page | 5 of 34 |
|---|---|---|---|---|

The Court **OVERRULES** these objections. On more than one occasion, this Court has expressed that the January 30, 2017 evidentiary hearing would be "limited only to cross-examination and redirect examination of witnesses." *See* Evidentiary Hearing Order at 2 [Doc. # 274]. The Court gave the parties *three months* to allow depositions to be taken and made it known that it would rely on witness statements (i.e., declarations, deposition transcripts) submitted in advance in an effort to streamline the evidentiary hearing rather than requiring the parties to present over 100 witnesses from various parts of the country for direct examination. The Court also instructed the parties to designate those witnesses whose live testimony would be necessary.[2]

Still, Defendants argue, just as they did during the October 6, 2016 hearing that preceded the evidentiary hearing, that the Court must hear live testimony from all of Plaintiffs' witnesses in order to evaluate their credibility. Hearing Tr. dated Oct. 6, 2016, at 51–52. In a November 22, 2016 Joint Status Report, Defendants reiterated their position that "the Court simply cannot resolve such [factual] disputes without making an assessment of each witness's credibility. . . . This requires that the Court hear in-court testimony, rather than consider statements made in inadmissible declarations." *See* Doc. # 279 ("Nov. 22, 2016 Joint Status Report" at 10). The Court rejects Defendants' position. In fact, in bench trials, courts in this district routinely rely upon declarations and deposition testimony in lieu of in-court direct examination, reserving in-court testimony only for cross-examination and redirect.

In the final analysis, Defendants failed to designate which witnesses they wished to cross-examine at the January 30, 2017 evidentiary hearing. Instead, Defendants requested that the "Court clarify that the Federal Rules of Evidence will apply at the January 30, 2017 evidentiary hearing, and that Plaintiffs will be required to establish their claim of breach based on admissible evidence, in accordance with those Rules." *Id.* at 10–11. In contrast, Plaintiffs explicitly stated that they did not "intend to call witnesses for cross-examination" and instead would "rely upon uncontested facts" on the record. *Id.* at 1.

---

[2] At an October 6, 2016 Hearing, the Court clarified the following regarding the forthcoming evidentiary hearing:

> You [Defense Counsel Sarah Fabian] and [Plaintiffs' counsel Peter] Schey or the plaintiff's team can meet and confer regarding which witnesses need to actually show up for an evidentiary hearing, which can be sufficient with the use of declarations and depositions, and then you shall file a joint status report regarding the results of your meet and confer as to how you envision the evidentiary hearing to proceed and how many defendant's or plaintiff's witnesses are going to be showing up for live testimony, if any.

Hearing Tr. dated Oct. 6, 2016, at 54.

**CIVIL MINUTES—GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | June 27, 2017 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 6 of 34 |
|---|---|---|---|

By failing to designate witnesses for cross-examination, Defendants waived their right to cross-examine all of Plaintiffs' witnesses in court. Plaintiffs submitted the evidence on which they expected to rely in connection with their Statement of Uncontroverted Facts. Contrary to Defendants' position, it was not Plaintiffs' responsibility to designate which witnesses they wished to have testify at the evidentiary hearing. Rather, it was incumbent upon Defendants to identify the witnesses they intended to cross-examine. *See* Hearing Tr. dated Oct. 6, 2016 at 59 (The Court: "[I]f there is an issue of credibility, it should be done during cross-examination. So no one should have direct testimony. We'll already have had tons of direct testimony from your declarations and from depositions." . . . Mr. Schey: "Okay. And so it's plaintiffs deciding who of the defendant's people they want to cross-examine and defendant's deciding who of plaintiff's people.").

## B.     Defendants' Other Blanket Objections

Defendants make blanket objections to 90 deposition excerpts and declarations presented by Plaintiffs. Defendants list—by page or paragraph number—numerous passages or paragraphs within each deposition excerpt or witness statement. Yet, Defendants fail to identify which of the multiple objections identified per declaration/deposition applies to which passage. Instead, Defendants repeatedly copy and paste the same overbroad "boilerplate recitations" regarding, for instance, hearsay, bias, or foundation for all of the passages within the same witness statement.

The Court will not parse through each declaration or transcript and try to determine which statements Defendants believe constitute hearsay or lack foundation, and then decide whether any hearsay exceptions apply or if a proper foundation has been laid. *See, e.g.*, *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1033 (C.D. Cal. 2013) ("All of the parties' objections are boilerplate recitations of evidentiary principles or blanket objections without analysis applied to specific items of evidence. . . . On this basis alone, the Court will not scrutinize each objection and give a full analysis of identical objections raised as to each fact.") (citation and internal quotation marks omitted).

The Court therefore **OVERRULES** Defendants' myriad blanket hearsay and foundation objections. That being said, the Court has applied the Federal Rules of Evidence and has relied upon only evidence it deems admissible. To the extent that the Court relies on Plaintiffs' facts, it **OVERRULES** Defendants' blanket objections that those facts are irrelevant.

Finally, the Court **DENIES** as moot *Amici Curiae* American Immigration Council and American Immigration Lawyers Association's request for judicial notice of the Report of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | | Date | June 27, 2017 |
|---|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | | Page | 7 of 34 |
|---|---|---|---|---|

Department of Homeland Security Advisory Committee on Family Residential Centers. [Doc. # 286.]  The Court did not rely upon this report in its analysis below.

**IV.**
**DISCUSSION**

A.     **Border Patrol Station Conditions**

In its July 24, 2015 Order, this Court found that "[i]n light of the voluminous evidence that Plaintiffs have presented of the egregious conditions of the holding cells [at Border Patrol Stations], . . . Defendants have materially breached the Agreement's term that Defendants provide 'safe and sanitary' holding cells for class members while they are in temporary custody." 212 F. Supp. 3d at 882.  The Court referred to Paragraph 12A of the Agreement, which provides that class members shall be held in "safe and sanitary" facilities following arrest.  Such CBP facilities, where class members spend one to several nights before transfer to a family residential center (accompanied minors) or to the Office of Refugee Settlement (unaccompanied minors), must "provide access to toilets and sinks, drinking water and food as appropriate, . . . [and] adequate temperature control and ventilation."  Agreement ¶ 12; *see also* 6 U.S.C. § 279.  The conditions at these facilities must also be "consistent with the INS's concern for the particular vulnerability of minors."  Agreement ¶ 12A.

At the time of the Court's July 24, 2015 Order, Defendants relied solely on their Hold Rooms and Short Term Custody Policy as well as a single declaration from a Border Patrol officer to support their position that they satisfied the Agreement's standards.  212 F. Supp. 3d at 881–82.  Moreover, they argued that it would be impossible for them to provide the same level of care at the Border Patrol stations that they offered at longer-term facilities due to the short duration of stay at the Border Patrol stations and the large volume of individuals that pass through.  *Id.*

Here, Plaintiffs argue that Defendants continue to detain class members in deplorable and unsanitary conditions in violation of the Agreement.  Plaintiffs present voluminous testimony from class members in the form of declarations and deposition excerpts, which attest to the unsafe and unsanitary conditions at the CBP facilities in five different categories:  (1) inadequate food; (2) inadequate access to clean drinking water; (3) inadequate hygiene (bathrooms, soap, towels, toothbrushes); (4) cold temperatures; and (5) inadequate sleeping conditions.

Though Plaintiffs have submitted a plethora of detainee declarations in support of their motion, the Court notes that the overwhelming majority of them come from detainees who

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | June 27, 2017 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 8 of 34 |
|---|---|---|---|

stayed at CBP stations located within the Rio Grande Valley Sector ("RGV Sector"). One or two declarations from detainees located within other sectors that span over one hundred miles and have multiple CBP stations is not enough to satisfy the preponderance of the evidence standard regarding the conditions at those facilities.

As such, the Court limits its discussion of conditions and the scope of any resultant monitoring to those CBP facilities located within the RGV Sector, rather than the CBP facilities at the other sectors.[3] While the Court certainly did not limit the scope of its August 21, 2015 Order in this way, there is insufficient evidence to suggest that any other CBP stations in locales outside of the RGV Sector have failed to comply with the Court's earlier order that they should "comply with the Agreement and Defendants' own acknowledged standards and procedures." 212 F. Supp. 3d at 915.

As discussed below, however, there is ample evidence that CBP stations in the RGV Sector must be brought into compliance with the Agreement and Defendants' existing standards.

### 1. Access to Food

Recent detainees assert that Defendants failed to provide them with adequate access to food. In addition to food standards under the Agreement, Plaintiffs point to the CBP National Standards on Transport, Escort, Detention, and Search ("TEDS Manual"), which lays out standards for meals and snacks for class members in detention. Def. Supp., Ex. 30 ("TEDS Manual") [Doc. # 298-2]. According to the CBP's own standards, minors "will be offered a snack upon arrival and a meal at least every six hours thereafter, at regularly scheduled meal times. At least two of those meals will be hot." TEDS Manual § 5.6. Additionally, the food provided "must be in edible condition (not frozen, expired, or spoiled)" and minors "must have regular access to snacks, milk, and juice." *Id.* §§ 4.13, 5.6.

Despite the TEDS Manual standards and Paragraph 12A of the Agreement, many detainees attested to, among other things, not receiving hot, edible, or a sufficient number of meals during a given day spent at a CBP facility. *See, e.g.*, Declaration of Walter A. ("Walter A Decl.") ¶¶ 5–6 ("The only food we got was sandwiches of 2 pieces of dry bread and one thin

---

[3] There are nearly a dozen U.S. Border Patrol Sectors along the southern border. *See* Doc. # 299-7 (map depicting sectors and locations of CBP stations throughout the United States). Plaintiffs contest neither the map nor Defendants' document identifying the locations of where Plaintiffs' declarants/deponents were detained. *See* Doc. # 299-6. Plaintiffs' handful of non-RGV-Sector declarations come only from the Del Rio Sector, the Laredo Sector, and the El Paso Field Office. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | June 27, 2017 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 9 of 34 |
|---|---|---|---|

slice of ham and a small box of juice. We were fed three times over the two days we were there. We were hungry, very cold, scared, and unable to sleep.") [Doc. # 202-1 at 58]; Deposition of Karina V. ("Karina V. Depo.") at 28 (she and her three-year old son were offered a "sandwich with frozen ham" with "a kind of ice under the bread" as the first meal) [Doc. # 287-4]; Declaration of Karina V. ¶ 7 ("Karina V. Decl.") (stating son got diarrhea within an hour of eating the sandwich) [Doc. # 342-5 at 37]; Declaration of Franklin R. ("Franklin R. Decl.") ¶ 8 (received "a cookie for breakfast, a sandwich (2 pieces of bread with one thin slice of meat) for lunch, and another cookie for dinner. I was very hungry all day because this was not enough food.") [Doc. # 202-2 at 40].

Defendants dispute Plaintiffs' evidence. To support their argument, Defendants rely upon the declaration or deposition testimony of chief patrol agents of the various CBP Sectors[4], CBP field operations directors, and other officials in leadership positions within ICE and CBP. These witnesses generally discuss the policies and practices at the CBP stations. *See e.g.*, Declaration of Manuel Padilla, Jr. ("Padilla Decl.") ¶¶ 46–48 (Chief Patrol Agent for the RGV Sector describing policy to provide scheduled meals to class members and what they consist of) [Doc. # 211-1]. Such witnesses also highlight contracts with third party entities that address certain CBP conditions. *See, e.g.*, *id.* ¶ 46 (describing RGV Sector's contract with Deployed Resources LLC to provide for a "menu conforming to a culturally Hispanic diet" and that "[p]ursuant to the statement of work, the meals provided must meet Texas Department of Agriculture Food & Nutrition guidance and additional quality control requirements") (internal quotation marks omitted).

None of this generalized evidence, however, undermines the veracity of Plaintiffs' first-hand experiences. Defendants repeat what they did before in response to Plaintiffs' 2015 Motion to Enforce: point to their own policies and practices. But "[t]he mere existence of those policies tells the Court nothing about whether those policies are actually implemented, and the current record shows quite clearly that they were not." July 24, 2015 Order, 212 F. Supp. 3d at 881–82.

Defendants do introduce data logs from a CBP computer system known as the e3 Detention Module ("e3DM"), which allows Defendants to track and monitor when Border Patrol agents have provided certain detainees with meals, water, and other amenities. Declaration of David Strange ("Strange Decl.") ¶¶ 2–3 [Doc. # 344-2]. Defendants cite to the e3DM logs for a

---

[4] Defendants submitted a map depicting over 100 CBP stations, with each station being part of a larger "sector." *See* Doc. # 299-7. In Texas, for instance, there exists the RGV Sector, the Big Bend Sector, the Del Rio Sector, and the Laredo Sector. In contrast, New Mexico has only one sector—the El Paso Sector. Each sector contains a certain number of CBP stations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544 DMG (AGRx)** | | Date | June 27, 2017 |
|---|---|---|---|---|
| Title | ***Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.*** | | Page | 10 of 34 |

handful of detainees to show that the records contradict their statements as to the number of meals received and whether they were served hot or cold. *See* Def. Resp. at 11–12.

There are several problems associated with the activity logs that undermine their reliability. For example, they do not identify the type of meal provided. The logs also show that some detainees went for extended periods (e.g., 11 hours) without food, which Defendants themselves admit is an error. *See, e.g.*, Strange Decl., Ex. F (arrest time of 1:00 p.m. for Dina P., Alison A., Anderson A., Susan A. with first meal not served until 12:10 a.m. the following day); *id.*, Ex. A (arrest time of 5:15 a.m. for Franklin C. with first meal not served until 3:22 p.m.); *id.*, Ex. I (arrest time of 2:00 p.m. for Jenyffer G. and Angel T. with first meal not served until 2:00 a.m. the following day); Deposition of Manuel Padilla, Jr. ("Padilla Depo") at 26–27 [Doc. # 287-1 at 31].[5]

Defendants fail to explain these time-gap discrepancies or what efforts, if any, they undertook to monitor the accuracy of the records entered. *See* Deposition of Paul Beeson at 45–46 (Chief Patrol Agent of Tucson Sector answered "No" when asked if he was aware of what training agents undergo with respect to inputting data into the e3DM system or what efforts exist to monitor the accuracy of meal records entered) [Doc. # 287-1 at 73]. At oral argument, when the Court asked government counsel to address the discrepancies Plaintiffs raised with respect to activities entered in the e3DM logs, counsel merely reiterated Defendants' policy of feeding children snacks every three hours and attributed the errors to e3DM being a "new" system rolled out with "new monitoring procedures" that would require some time "before agents are . . . fully compliant." Hearing Tr. dated Jan. 30, 2017, at 40.

In any event, to the extent some discrepancies exist between a detainee's claim regarding the frequency and quality of food and the corresponding e3DM log, Defendants only point to a small number of discrepancies.[6] *See* Def. Resp. at 11-12. This pales in comparison to the large

---

[5] During Padilla's telephonic deposition, Defense counsel objected to questioning from Plaintiffs regarding these e3DM documents on grounds of foundation—Plaintiffs apparently failed to send the documents in advance to Defense counsel so that the witness could view the documents concurrently with the examination. Padilla stated that without the e3DM documents in front of him, he could not determine if the time-gap discrepancies resulted from a "system error or input error or what caused that anomaly." Padilla Depo. at 26–27. The Court will nonetheless accept Padilla's answer that the apparent 10 to 12 hour periods without food is, at a minimum, an error of some sort related to the inputting of the data onto the e3DM system or the e3DM system itself.

[6] Even with these limited examples, not all of the e3DM records show that the detainee's statements are inaccurate or misleading. For instance, Defendants argue that the e3DM record contradicts Franklin R's claim that he received only two cookies and one ham sandwich during his first day in CBP custody. *See* Franklin R. Decl. ¶ 8 ("The first day that I was there they gave me a cookie for breakfast, a sandwich (2 pieces of bread with one thin slice

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | | Date | June 27, 2017 |
|---|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | | Page | 11 of 34 |
|---|---|---|---|---|

volume of statements by detainees who described receiving inadequate food. In short, the Court does not find that Defendants' e3DM records undermine the credibility of the detainee statements presented regarding the frequency and quality of the food Defendants served them.

Given the above, the Court finds that Plaintiffs' have satisfied their burden of establishing Defendants' substantial non-compliance with the Agreement and **GRANTS** Plaintiffs' motion to enforce as to the RGV Sector on the issue of adequate access to food.

**2.    Access to Clean Drinking Water**

Plaintiffs proffer evidence that child detainees had no adequate access to clean drinking water. Under the CBP's standards, "[f]unctioning drinking fountains or clean drinking water along with clean drinking cups must always be available to detainees." TEDS Manual § 4.14. But Plaintiffs present testimony that recent detainees drank water that tasted dirty and did not have access to clean drinking cups. *See, e.g.*, Franklin R. Decl. ¶ 8 ("The officials put a container with water in our room and gave us one cup to share amongst the 20 people in my cell. The water tasted very bad and the container was not clean. Very few minors held in my cell were willing to drink the water."); Declaration of Bianca C. ¶ 11 ("The water they have given me tastes dirty, so I have not drank water since arriving.") [Doc. # 202-2 at 10]; Declaration of Josselyn M. ("Josslyn M. Decl.") ¶ 13 ("The water tastes like chlorine.") [Doc. # 202-2 at 72]; Declaration of Alexander Mensing ("Mensing Decl.") ¶ 6, Ex. P (Declaration of Rosemary Y.) ¶ 18 ("We had to share a cup among all the women and children – about 20 people – and the water hurt my stomach.") [Doc. # 342-5].

In response, Defendants again point to their general policies and practices and contracts with third party providers. *See, e.g.*, Padilla Decl. ¶¶ 56–57 ("the holding rooms in the Rio Grande Valley each have sport style five gallon water coolers . . . with disposable cups made available to detainees"). This does not contradict the specific detainee statements provided by

---

of meat) for lunch, and another cookie for dinner"); Def. Resp. at 11 ("Border Patrol records indicate that he was provided ten meals in the just over 48 hours he was in custody"). But an examination of the e3DM record for this detainee shows he was arrested on January 22, 2016 at 5:15 a.m. Strange Decl., Ex. A. Within the next 24 hours, Defendants' own record indicates that Franklin R. received his first meal at 3:22 p.m. (1522) and a second meal at 11:36 p.m. (2336). *Id.* He received his third meal on January 23, 2016 at 7:16 a.m. *Id.* The e3DM record does not contradict Franklin R.'s declaration that he received two cookies and a ham sandwich as the Defendants' records do not indicate what type of meal they served detainees. If anything, based on Defendants' position at oral argument, they would probably suggest that another "anomaly" occurred with the data entry because Franklin R.'s e3DM record suggests he was not fed for a 10-hour period following apprehension.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | June 27, 2017 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 12 of 34 |
|---|---|---|---|

Plaintiffs. *See infra*, section IV.A.1. Indeed, Defendants have not offered evidence based on records or a witness' personal knowledge to contradict the specific accounts by Plaintiffs' witnesses of inadequate water, both in quality and availability, during their CBP-facility detention.

The Court therefore finds that Plaintiffs have satisfied their burden of establishing Defendants' substantial non-compliance with the Agreement and **GRANTS** Plaintiffs' motion to enforce as to the RGV Sector on the issue of inadequate access to water.

### 3.    Unsanitary Conditions

Recent detainees describe unsanitary conditions at the CBP facilities in the RGV Sector. According to CBP standards, "[a]ll facilities or hold rooms used to hold detainees must be regularly and professionally cleaned and sanitized"; detainees "must be provided with basic personal hygiene items, consistent with short term detention and safety and security needs"; "[d]etainees using the restroom will have access to toiletry items, such as toilet paper and sanitary napkins," and, whenever "operationally feasible," soap; and minors would be provided with clean bedding. TEDS Manual §§ 4.6, 4.11, 4.12. Moreover, CBP agents would enable detainees to shower where they are available, "perform bodily functions, and change clothing without being viewed by staff of the opposite gender . . . ." *Id.* § 4.6.

There is an apparent disconnect between the CBP's standards and class members' experiences, all of whom describe unsanitary conditions with respect to the holding cells and bathroom facilities, and lack of privacy while using the restroom, access to clean bedding, and access to hygiene products (i.e., toothbrushes, soap, towels). *See, e.g.*, Declaration of Celina S. ("Celina S. Decl.") ¶ 8 ("There was an open toilet in the room [of 50 people] with no toilet seat for everyone to use. Everyone could see if we were using the toilet.") [Doc. # 202-1 at 77]; Karina V. Depo. at 25–27 (describing having to sleep on the holding room's concrete floor, which was "dirty" with "soil from outside," having no access to a sink to wash hands, and being given one aluminum sheet to share with her son during sleep) [Doc. # 287-4]; Mensing Decl., Ex. O, Declaration of Ritza M. ¶ 8 ("In the bathroom there was no soap to wash my hands or space to shower.") [Doc. # 342-5]; *id.* ¶ 5 (describing having to stay in wet clothes (from crossing through river) during entire stay at the CBP facility); Declaration of Yessenia E. ("Yessenia E. Decl.") ¶ 6 (no soap, no brush, no change of clothes, no pillows or blankets, and no toothbrushes for three days) [Doc. # 202-1 at 74].

Defendants' reliance on their policies, practices, and third party contracts on this issue of unsanitary conditions again fails to controvert Plaintiffs' first-hand accounts. *See, e.g.*, Padilla

---

**CIVIL MINUTES—GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | | Date | June 27, 2017 |
|---|---|---|---|---|
| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | | Page | 13 of 34 |

Decl. ¶ 60 ("Rio Grande Valley Sector has multiple contracts covering the cleaning needs for the stations throughout the sector . . . [including] with TRDI Inc. and Ace Communications"); *see supra*, section IV.A.1.

On the specific issue of hygiene products, Defendants argue that the Agreement does not require them to provide class members with soap, towels, showers, dry clothing, or toothbrushes. According to Defendants, "If Plaintiffs wish to . . . assert that certain hygiene items or clothing items must be provided, they must do so in a new lawsuit." Def. Sec. Supp. Resp. at 14. The Agreement certainly makes no mention of the words "soap," "towels," "showers," "dry clothing," or "toothbrushes."

Nevertheless, the Court finds that these hygiene products fall within the rubric of the Agreement's language requiring "safe and sanitary" conditions and Defendants' own established standards.

Defendants argue that they have shown as a matter of policy and practice that they provide class members at CBP facilities with soap, toothbrushes, toothpaste, and access to showers "to the greatest extent possible." Def. Sec. Supp. Resp. at 16. The evidence that they cite pertains primarily to conditions at CPC-Ursula[7], a CBP facility located within the RGV Sector in Texas.

According to the Chief Patrol Agent Padilla of the RGV Sector, "[a]lthough not all stations in RGV Sector have shower and laundry facilities available, approximately 93% of the juveniles apprehended in the RGV Sector are transferred following their processing to CPC-Ursula where shower and laundry services are provided to all detainees." Padilla Decl. ¶ 68. Class members in the RGV Sector are transferred, on average, to CPC-Ursula "within approximately 33 hours of apprehension and processing." *Id.* This is consistent with many of Plaintiffs' class member declarations from the RGV Sector who report being transferred to a second facility—albeit not always within 33 hours—before being taken to a longer-term family residential center. *See, e.g.*, Yessenia E. Decl. ¶¶ 6, 9 (spending three days at the McAllen CBP station before being transferred to another facility that detainees called "*La Perrera*"[8] where she could shower for the first time since being taken into custody, and then to the family residential center at Dilley). At CPC-Ursula, detainees have "an opportunity to shower, have their clothes laundered, and receive a change of new clothes." Padilla Decl. ¶ 71; *see id.* ¶¶ 73 ("The change

---

[7] CPC refers to "Centralized Processing Center." *See* Declaration of Todd Owen ¶ 7 [Doc. # 208-3].

[8] Detainees in the record often refer to CPC-Ursula as *la perrera* or "the dog house."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | | Date | June 27, 2017 |
|---|---|---|---|---|
| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | | Page | 14 of 34 |

of clothing Border Patrol provides to the juveniles at CPC-Ursula consists of shirts, sweat pants, socks, and undergarments."), 74 ("juveniles at CPC-Ursula are provided their laundered clothes in a property bag that transfers with them upon release or transfer to ORR or ICE"). Padilla also states that class members at CPC-Ursula are provided with "a hygiene kit consisting of a towel, toothbrush, toothpaste, mouthwash, soap, and shampoo." *Id.* ¶ 75.

This evidence of Defendants' policies and practices at CPC-Ursula, however, does not undermine the credibility of the assertions made by numerous class members regarding the lack of hygiene products at the other stations. *See also, e.g.*, Declaration of Sara E. ("Sara E. Decl.") ¶¶ 6–8 (throughout two days at a CBP station in Welasco, Texas and a third day at another CBP station, her daughter "was not able to shower, wash or change underwear or clothes" and was not given the opportunity to brush teeth) [Doc. # 202-1 at 65]; Yessenia E. Decl. ¶ 6 ("For three days [at McAllen station] we were given no soap to wash, no toothbrushes to brush our teeth, no paper towels to dry our hands when we washed our hands, nothing to brush our hair, no change of underwear or clothes, no pillows or blankets and no beds to sleep in."). Even assuming that the 93 percent transfer figure is correct—and Plaintiffs do not appear to challenge Padilla's estimate—that still leaves approximately seven percent of potentially thousands of class members who do not make it to CPC-Ursula within the 33-hour window.

More significantly, Plaintiffs present uncontroverted declarations from detainees who, even while at CPC-Ursula, never received either soap, toothbrushes, towels, or showers. *See, e.g.*, Declaration of Dina R. ¶ 5 ("We were not able to bathe in the *hielera* or the *perrera*. We were dirty the whole time.") [Doc. # 342-5 at 61]; Sara E. Decl. ¶¶ 6–8 (her daughter "was not able to shower, wash or change underwear or clothes" and not given the opportunity to brush teeth); Declaration of Denis A. ¶ 13 ("We had no opportunity to bathe while we were in the *hieleras* or the *perrera*, so we were unable to bathe for three days until we got to the detention center [at Dilley]") [Doc. # 342-5 at 106].

Even the deposition excerpts identified by Defendants in their Statement of Genuine Dispute of Material Fact to challenge Plaintiffs' facts about the hygiene products fail to undermine the credibility of class members' statements. *See* Deposition of Franklin C. at 17 (did not receive soap, but did receive paper towels and a toothbrush), 21 (testified to receiving a shower at the Karnes family residential center) [Doc. # 344-5 at 1]; Deposition of Mirna G. at 18–19 (cell did not have soap with the sink but there were paper towels) [Doc. # 344-8].[9]

---

[9] Defendants further identify the declaration of Chief Patrol Agent of the Del Rio Sector Matthew J. Hudak and the declaration of Hector A. Mancha Jr., the Director of Field Operations for the CBP in El Paso, Texas. The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | June 27, 2017 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 15 of 34 |
|---|---|---|---|

Defendants also present three exhibits from the Strange Declaration, which consist of e3DM forms. While some of these forms list "Shower Provided" to Nathaly R. (daughter of Sara E.), Franklin C., and Dina R's three children—Alison, Anderson, Susan—the Court will not rely on this data for the same reasons already discussed above with regard to the e3DM forms' reliability issues. *See supra* section IV.A.1. Moreover, the "Station/Facility" box on these activities logs has been left blank such that the Court is unable to discern to which facility the forms apply.

In light of the discussion above, the Court finds that, at a minimum, Plaintiffs have satisfied their burden of establishing Defendants' substantial non-compliance with the Agreement at all non-CPC-Ursula CBP stations located within the RGV sector and **GRANTS** Plaintiffs' motion to enforce the Agreement on the issue of unsanitary conditions as to those stations. Because there is some evidence, albeit to a lesser degree, of non-compliance at CPC-Ursula—not just on the issue of unsanitary conditions but also other conditions identified by Plaintiffs—monitoring of that station is nonetheless warranted. *Cf. Unknown Parties v. Johnson*, 2016 WL 8188563, at *12 (D. Ariz. Nov. 18, 2016) ("Given the evidence of noncompliance related to conditions of sanitation, compliance monitoring is warranted.").

### 4. Cold Temperatures

Plaintiffs present evidence that recent child detainees experienced extremely cold temperatures at the CBP stations. Just like the declarants cited in the Court's July 24, 2015 Order, many continue to describe the CBP facilities as *hieleras* or "iceboxes." *See, e.g.*, Declaration of Julissa H. ("Julissa H. Decl.") ¶ 2 ("Immigration officials brought me to the *hielera*, where we were held for two days.") [Doc. # 342-5 at 31]; July 24, 2015 Order, 212 F. Supp. 3d at 880. Even though CPB standards require Border Patrol officers to "maintain hold room temperature within a reasonable and comfortable range for both detainees and officers/agents," TEDS Manual § 4.7, numerous declarants describe great discomfort with the cold temperatures. *See, e.g.*, Julissa H Decl. ¶ 4 (describing that five-year-old son was "shaking" from the cold air conditioning and only had an aluminum blanket to cover himself); Declaration of Kenia G. ¶ 8 (detained in "freezing cold" cell with two-year old daughter who wore wet pants and a wet diaper and used only "[t]he silver paper they gave us to cover her body") [Doc. # 202-2 at 6]; Celina S. Decl. ¶ 5 ("The cell was extremely cold very crowded. I believe that as more people came into the room, the air conditioners were turned up."); Declaration of Lindsay G. ("Lindsay G. Decl.") ¶¶ 4, 7 ("There were no beds, pillows, or blankets. I held [my three-year-old daughter] tight, wrapping my arms around her to keep her warm. . . . Her hands started to

---

Court did not consider this evidence, as the scope of this Order is limited to CBP stations located within the Rio Grande Valley Sector.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | June 27, 2017 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 16 of 34 |
|---|---|---|---|

turn colors, she was so cold.") [Doc. # 202-1 at 100]. Furthermore, according to TEDS Manual § 4.7, "[u]nder no circumstances will officers/agents use temperature controls in a punitive manner."

Yet, Plaintiffs present evidence that officers lowered the temperature in response to detainee complaints. *See, e.g.*, Julissa H. Decl. ¶ 4 ("I asked the officers if they could turn down the air conditioning because the kids were getting very chilly, but after I asked they actually made it colder. . . . Sometimes the officers yelled to the kids to shut up because the children were crying so loud because of the cold."); Declaration of Mirna M. ¶ 4 ("We never got a mattress or a blanket, and it was very cold. The children began crying, and when they [sic] children cried they would turn the temperature down even further. We were completely unable to sleep because it was so cold. . . .") [Doc. # 202-1 at 68].

On this cold-temperature issue, Defendants once again rely upon the declaration or deposition testimony of chief patrol agents to describe their policies and practices. *See, e.g.*, Padilla Decl. ¶ 67 ("Agents record if the temperature is within range (66–80 degrees Fahrenheit) or specifically note when the temperature is out of range."). The e3DM records also state entries for the temperature in some "comments" sections. *See, e.g.*, Strange Decl., Ex. F ("temp 73"). But this evidence does not contradict the large volume of specific accounts by Plaintiffs' witnesses that they experienced extreme discomfort with cold temperatures.

Accordingly, the Court finds that Plaintiffs have satisfied their burden of establishing Defendants' substantial non-compliance with the Agreement in the RGV Sector and **GRANTS** Plaintiffs' motion to enforce on the issue of adequate temperature controls at a reasonable and comfortable range.

5.      **Sleeping Conditions**

Finally, with regard to sleeping conditions, Plaintiffs introduce recent detainee testimony attesting to conditions at the CBP stations—cold temperatures, overcrowding, lack of proper bedding (i.e., blankets, mats), constant lighting—that together "force [class members] to endure sleep deprivation." Pl. Mot. at 10; *see, e.g.*, Celina S. Decl. ¶ 8 ("At the border patrol station there were about 50 other people in our cell. It was so crowded there was barely room for everyone. My son and I were freezing. There were no beds, it was just a room with cement floors and benches. . . . We were not able to sleep."); Declaration of Silvia V. ¶ 4 ("[W]e are held in a cell with about thirty to forty other mothers and children. . . . The bright lights on the ceiling stay on all nights. We have no mattresses or pillows or blankets. We only have a thin silver foil paper to cover ourselves. . . . It is very hard to get any sleep because the floor is hard

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | June 27, 2017 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 17 of 34 |
|---|---|---|---|

and cold, the cell is very crowded, the lights are on and very bright, and children are crying and coughing all night long.") [Doc. # 202-2 at 77.]

Defendants argue that Plaintiffs' allegations relating to sleep presuppose requirements that do not exist in the Agreement. After all, the word "sleep" does not appear in the Agreement.

Nonetheless, whether Defendants have set up conditions that allow class members to sleep in the CBP facilities is relevant to the issue of whether they have acted in a manner that is consistent with the INS's concern for the particular vulnerability of minors" as well as the Agreement's "safe and sanitary" requirement. *See* Agreement ¶ 12A; *see also* July 24, 2015 Order, 212 F. Supp. 3d at 880–82 (overcrowding at the CBP facilities, "which forced children to sleep standing up or not at all," contributed to finding that "Defendants have materially breached the Agreement's term that Defendants provide 'safe and sanitary' holding cells for class members while they are in temporary custody"). Plaintiffs have submitted a number of declarations attesting to the dismal conditions at the CBP facilities that make it difficult for class members to sleep. *See, e.g.*, Declaration of Ismar S. ¶ 5 (only place for detainee and seven-year-old daughter to sleep was on the floor, "[b]ut there were so many people in the room that there was not enough room for us all to lay down") [Doc. # 202-1 at 86]; Josslyn M. Decl. ¶ 10 ("The lights have been on since I got to this station. There are no beds or blankets here, just pieces of foil. I have slept on the concrete floor and a concrete bench that lines the wall. They are very cold."); Declaration of Sonia A. ¶¶ 3, 6 ("I had to sleep on the floor, because there wasn't enough space to lie down. There were about 35 or 40 people in the cell. We had to sleep sitting up, which was very difficult. . . . We [Sonia A. and son] arrived in wet, muddy clothes, and we were not given a change of clothes or underwear. The wet clothes made it even colder, more uncomfortable, and more difficult to sleep.") [Doc. # 202-1 at 109].

Defendants offer deposition excerpts from three detainees who state that they or their children were able to sleep while in CBP custody. *See* Def. SGDMF at 9 (citing Karina V. Depo. at 22 (McAllen)[10]; Lindsay L. Depo. at 14, 18 (CPC-Ursula); Zulma R. Depo. at 25 (CPC-Ursula) (stating her and her son slept in *la perrera*)[11]. They also submit testimony from Chief Patrol Agent Padilla that at the CPC-Ursula Border Patrol Station, Defendants provide detainees with mattresses. Padilla Decl. ¶ 89. Plaintiffs' own witness testimony from CPC-Ursula mentions conditions like the constant lighting, but ultimately do not state they could not sleep. *See, e.g.*, Declaration of Maria D. ¶ 7 (stating that "[t]he lights were kept on all night and there

---

[10] *See* Doc. # 299-6 (identifying Karina V as having been detained at McAllen CBP station).

[11] *See also* Doc. # 299-6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | June 27, 2017 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 18 of 34 |
|---|---|---|---|

were no windows" at the *perrera* but not discussing difficulty sleeping) [Doc. # 202 at 96]; *cf. id.* ¶ 6 (stating that at the *hielera* her son "barely slept" because of overcrowding, having to sleep on the floor, and no blankets). This evidence, however, does not undercut the credibility of the assertions made by numerous detainees regarding sleeping conditions at the other stations.

In sum, the Court finds that Plaintiffs' have satisfied their burden of establishing Defendants' substantial non-compliance with the Agreement at all non-CPC-Ursula CBP stations located within the RGV Sector on the issue of sleeping conditions. The Court therefore **GRANTS** Plaintiffs' motion to enforce the Agreement as to the sleeping conditions issue at non-CPC-Ursula stations within the RGV Sector. On the other hand, Plaintiffs have not met their burden of showing substantial non-compliance on this issue with respect to the CPC-Ursula station—in that limited respect, Plaintiffs' motion is **DENIED**.

**B.       Failure to Provide Three Advisals**

According to Plaintiffs, Defendants routinely fail to advise class members of their rights under the Agreement. But in their motion, Plaintiffs fail to identify what part of the Agreement Defendants are failing to follow, and vaguely refer only to the "advisal of rights." Pl. Mot. at 11. The Agreement does not provide for "advisals of rights about the *Flores* case" *per se*.

In their response, Defendants point to Paragraph 24D, which requires Defendants to provide class members with three rights advisals: "(a) INS Form I-770, (b) an explanation of right of judicial review as set out in Exhibit 6 [("Notice of Right to Judicial Review")][12], and (c) the list of free legal services available in the district pursuant to INS regulations (unless previously given to a minor)."

To the extent Plaintiffs contend that Defendants have failed to substantially comply with Paragraph 24D(a), the Court finds that Plaintiffs have not satisfied their burden. Not only do

---

[12] A copy of Exhibit 6 is attached to the Agreement. It is entitled "Notice of Right to Judicial Review" and states the following:

> The INS usually houses persons under the age of 18 in an open setting, such as a foster or group home, and not in detention facilities. If you believe that you have not been properly placed or that you have been treated improperly, you may ask a federal judge to review your case. You may call a lawyer to help you do this. If you cannot afford a lawyer, you may call one from the list of free legal services given to you with this form.

*See* Exhibit 6, Doc. # 101 at 52.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | June 27, 2017 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 19 of 34 |
|---|---|---|---|

Plaintiffs fail to provide sufficient evidence that Defendants have failed to distribute the Form I-770 to class members, Plaintiffs fail to explain to the Court what the Form I-770 is.

Defendants concede that they failed to comply with Paragraph 24D(b) at the time Plaintiffs filed their motion. Defendants admit that "the precise notice provided in Exhibit 6 to the Agreement is not provided to juveniles in family residential centers." Def. Resp. at 34. They go on to state, however, that in light of Plaintiffs' motion they are "working to implement a procedure to provide the notice" to class members and cite to the depositions of Juanita Hester, Valentine de la Garza, and Joshua Reid. *Id.*; *see* Deposition of Juanita Hester ("Hester Depo.") at 35–36 (Sept. 9, 2016) (the directive to distribute Exhibit 6 to juveniles issued "[s]everal months ago") [Doc. ## 262-3, 262-4]; Deposition of Valentin de la Garza ("de la Garza Depo.") at 43 (Sept. 9, 2016) (could not recall exactly when they started distributing Exhibit 6 to class members) [Doc. ## 262-1, 262-2]; Deposition of Joshua Reid ("Reid Depo.") at 12–13 (Sept. 12, 2016) (Exhibit 6 issued "sometime towards the end of July of 2016") [Doc. ## 262-5, 262-6].

To the extent Defendants contend that the intervening reforms render Plaintiffs' motion moot on this issue, they are incorrect. As the Court stated in its prior order, "[e]ven assuming Defendant's new policy complies with the Agreement, Defendants could easily revert to the former challenged policy as abruptly as they adopted the new one." July 24, 2015 Order, 212 F. Supp. 3d at 873 n.4; *see also McCormack v. Herzog*, 788 F.3d 1017, 1025 (9th Cir. 2015) ("A defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."). As such, Defendants' most recent efforts to comply with Paragraph 24D(b), while laudable, do not render this part of the motion moot.

Finally, with regard to Paragraph 24D(c), the Court finds that Plaintiffs have provided sufficient evidence of substantial non-compliance, namely declarations from class members (or their parents) stating that they never received a list of legal counsel or services. *See, e.g.*, Yessenia E. Decl. ¶ 8 ("No one gave me a list of lawyers I could call. There was no list of lawyers or free legal aid programs to call posted anywhere that I could see."); Declaration of Cesia V. ¶ 8 (same) [Doc. # 202-1 at 82]; *see also* Lindsay G. Decl. ¶¶ 4, 10, 12 ("Since being placed in immigration custody [with her three-year-old daughter] I have not had access to a phone or been given the chance to make a phone call. . . . I have not been given a list of legal service providers"). Indeed, Paragraph 24D(c) goes hand-in-hand with the Notice of Right of Judicial Review (Exhibit 6), which states that "[i]f you cannot afford a lawyer, you may call one from the list of free legal services given to you with this form."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | June 27, 2017 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 20 of 34 |
|---|---|---|---|

In summary, the Court **GRANTS** Plaintiff's motion to enforce Paragraph 24D with regard to the requirements that Defendants provide class members with a list of legal services and the Notice of Right of Judicial Review (Exhibit 6). The Court **DENIES** the motion with respect to the Form I-770 requirement for lack of evidence.

**C.      Efforts to Release Minors and Detainment in Secure, Licensed Facilities**

As the Ninth Circuit has acknowledged, "[t]he [Flores] Settlement creates a *presumption in favor of releasing minors* and requires placement of those not released in licensed, non-secure facilities that meet certain standards." *Flores*, 828 F.3d at 901 (emphasis added).

Specifically, the Agreement requires ICE to (1) "release a minor from its custody without unnecessary delay" to a parent, a legal guardian, or other qualified adult custodian, except where the detention of the minor is required "either to secure his or her timely appearance before the INS or the immigration court, or to ensure the minor's safety or that of others"; and (2) "[u]pon taking a minor into custody, . . . [to] make and record prompt and continuous efforts on its part toward family reunification and the release of the minor . . . ." Agreement ¶¶ 14, 18. Paragraphs 19 and 23 go on to state that when ICE does not release a minor pursuant to Paragraph 14, the minor shall be placed in a non-secure, licensed facility. *See* July 24, 2015 Order, 212 F. Supp. 3d at 877.

Here, Plaintiffs contend that Defendants refuse to "make and record continuous efforts" aimed at the release of class members. Moreover, they argue Defendants still fail to place class members in non-secure, licensed facilities, in violation of the Agreement.

**1.      Failure to Make Continuous Efforts to Release Minors**

**i.      Expedited Removal Generally**

According to Defendants, the Agreement does not require them to make and record continuous efforts to release accompanied minors who are in expedited removal proceedings because they are subject to mandatory detention. Def. Sec. Supp. Resp. at 17. Defendants contend that because class members who have been detained at the U.S.-Mexican border have been placed in "expedited removal" under section 235 of the Immigration and Nationality Act ("INA"), 8 U.S.C. section 1225(b)(1), they must be detained.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | June 27, 2017 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 21 of 34 |
|---|---|---|---|

"Expedited removal proceedings provide a streamlined process by which U.S. officers can remove aliens who attempt to gain entry to the United States but are not admissible."[13] *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1080 n.2 (9th Cir. 2011) (citing 8 U.S.C. § 1225(b)); *see also* August 21, 2015 Order, 212 F. Supp. 3d at 912 n.4. "The expedited removal statute, § 1225(b), provides that when an alien seeks admission to the United States after arriving at a port of entry and does not have entry documents, misrepresents the alien's identity or citizenship, or presents fraudulent identity or immigration documents, 'the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates an intention to apply for asylum . . . or a fear of persecution.' § 1225(b)(1)(A)(i)." *Barajas-Alvarado*, 655 F.3d at 1081. All detainees in expedited removal whose inadmissibility is being considered or who have been ordered removed "shall be detained" pending determination and removal, subject to a few exceptions. 8 C.F.R. § 235.3(b)(2)(iii); *see infra*, section IV.C.1.ii (discussing standards for parole).

If the undocumented detainee intends to seek asylum or expresses a fear of persecution, the expedited removal statute requires the immigration officer to refer the detainee for an interview with an asylum officer. 8 U.S.C. § 1225(b)(1)(A). If an asylum officer finds that the detainee does not have a credible fear of persecution, the detainee may request review by an immigration judge. 8 C.F.R. § 208.30(g). "Pending the credible fear determination by an asylum officer and any review of that determination by an immigration judge, the alien *shall be detained*." 8 C.F.R. § 235.3(b)(4)(ii) (emphasis added); 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) ("Mandatory Detention—Any alien subject to the procedures under this clause *shall be detained* pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.") (emphasis added).

Even where an asylum officer determines that the detainee has a credible fear of persecution, he or she "shall be detained," 8 U.S.C. § 1225(b)(1)(B)(ii), and placed in regular INA section 240 removal proceedings before an immigration judge, rather than the expedited removal proceedings discussed above, for a determination of the asylum claim.[14] *See* 8 C.F.R. §§ 208.30(f), 1235.6(a)(1)(ii) (referral to immigration judge).

---

[13] Plaintiffs do not dispute that the expedited removal statute gives Defendants the discretion to place class members apprehended at the border in expedited removal proceedings. *See* 8 U.S.C. § 1225(b)(1). Both sides also do not dispute that some class members have been placed in expedited removal upon entry into the United States.

[14] "Section 240 removal proceedings" refer to removal proceedings conducted by an immigration judge under section 240 of the INA. *See* 8 U.S.C. § 1229a(a)(1) ("An immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien."). Section 240 of the INA is codified in 8 U.S.C. § 1229.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | | Date | June 27, 2017 |
|---|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | | Page | 22 of 34 |
|---|---|---|---|---|

In sum, the expedited removal statute and the accompanying regulations generally require the detention of undocumented detainees apprehended at the U.S.-Mexican border, who have been placed in expedited removal proceedings, until eligibility for relief is established. There are, however, statutory exceptions.

## ii.    Discretion to Release Minors in Expedited Removal

"Although Section 1225(b) generally mandates the detention of aliens seeking admission pending their removal proceedings, individuals detained under the statute may be eligible for discretionary parole from ICE custody." *Rodriguez v. Robbins*, 715 F.3d 1127, 1132 (9th Cir. 2013) (citing 8 U.S.C. § 1182(d)(5)(A)). Congress authorizes the Attorney General to permit parole or release "temporarily under such conditions as he may prescribe only on a *case-by-case basis* for urgent humanitarian reasons or significant public benefit," provided that the person presents neither a danger nor flight risk. INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A) (emphasis added); 8 C.F.R. § 212.5. Under the regulations promulgated by the Attorney General, detainees in expedited removal are eligible for parole if they are pregnant, have serious medical conditions, *are juveniles who meet certain conditions*, or will be witnesses in judicial, administrative, or legislative proceedings. 8 C.F.R. § 212.5(b); *see also* 8 C.F.R. § 208.30(f) ("Parole of the alien may be considered only in accordance with section 212(d)(5) of the [INA] and [8 C.F.R.] § 212.5").

Thus, a detainee in expedited removal "whose inadmissibility is being considered . . . or who has been ordered removed" may be paroled under the above standards. *See* 8 C.F.R. § 235.3(b)(2)(iii).

In particular, with regard to juveniles, the regulations governing parole state that Defendants "shall follow the guidelines set forth in § 236.3(a) of this chapter and paragraphs (b)(3)(i) through (iii) of this section" in determining under what conditions a juvenile should be released from detention. 8 C.F.R. § 212.5(b)(3). Section 236.3(a) merely defines a juvenile as "an alien under the age of 18 years." 8 C.F.R. § 236(a). Section 212.5(b)(3) sets forth the order of preference governing the conditions for a minor's parole:

(i) Juveniles may be released to a relative (brother, sister, aunt, uncle, or grandparent) not in Service detention who is willing to sponsor a minor and the minor may be released to that relative notwithstanding that the juvenile has a relative who is in detention.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | | Date | June 27, 2017 |
|---|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 23 of 34 |
|---|---|---|---|

(ii) If a relative who is not in detention cannot be located to sponsor the minor, the minor may be released with an accompanying relative who is in detention.

(iii) If the Service cannot locate a relative in or out of detention to sponsor the minor, but the minor has identified a non-relative in detention who accompanied him or her on arrival, the question of releasing the minor and the accompanying non-relative adult shall be addressed on a case-by-case basis;

8 C.F.R § 212.5(b)(3)(i)–(iii).

In this case, the issue is whether the statutes and accompanying regulations for detainees in expedited removal create an exception to the *Flores* Agreement's requirement that Defendants make and record prompt and continuous efforts toward the release of class members. The Court finds that they do not.

### iii.    Paragraph 14 and Regulations Governing Juvenile Release

Defendants argue that under "the plain terms of the Agreement, if detention of a minor is required to secure his or her appearance before ICE for removal, or before an immigration judge, ICE is not obligated to release the minor." Def. Sec. Supp. Resp. at 17. This goes to the flight-risk issue and the Court agrees with Defendants' statement to that limited extent.

The Court disagrees with Defendants that class members' placement in expedited removal absolves them of their obligations under the Agreement to make individualized determinations regarding a minor's risk of absconding. *See* Agreement ¶ 14. While the expedited removal statute generally requires detention, 8 C.F.R. section 212.5 gives Defendants the discretion to release certain detainees on a case by case basis, including class members (juveniles), who are in various stages of the expedited-removal process.

Thus, the Agreement does not contravene the expedited removal statute.[15] Indeed, under both the Agreement and 8 C.F.R. section 212.5(b), part of the release/parole analysis includes a

---

[15] In any event, as the Ninth Circuit noted, the expedited removal statute was enacted in 1996 before the district court approved the Agreement in 1997. *Flores*, 828 F.3d at 910 (citing Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208, § 302 , 110 Stat. 3009-546, 579-85 (1996)). The parties to the Agreement expressly stated that they knew "of nothing in this Agreement that exceeds the legal authority of the parties or is in violation of any law." Agreement ¶ 41. This necessarily includes all parts of the INA, including the expedited-removal provision at INA § 235, codified at 8 U.S.C. § 1225.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | June 27, 2017 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 24 of 34 |
|---|---|---|---|

case-by-case assessment of whether the minor poses a flight risk. *Compare* Agreement ¶ 14 (whether detention is required to secure timely appearance before the immigration court), *with* 8 C.F.R. § 212.5(b) (whether there is a "risk of absconding").

Defendants argue that Congress "specified that detention [for minors in expedited removal] is required *to secure the appearance of that individual*" before ICE or an immigration judge. Def. Sec. Supp. Resp. at 17 (emphasis added). Nothing in the statute or the regulations suggests that Congress automatically deemed everyone in mandatory detention under 8 U.S.C. section 1225 a flight risk. Section 212.5(b) provides special guidelines for parole. It would make little sense to have rules specifically requiring that Defendants assess a potential parolee's flight risk if Congress intended to declare everyone in expedited removal to be a flight risk.[16]

In addition to allowing for the release of certain minors, the Agreement's general presumption of release and Paragraph 14 work in harmony with Defendants' discretionary-parole policy in another way: both provisions provide an order of preference for release of minors, beginning with adult relatives.[17] The two provisions do differ in certain ways. For instance, the

---

[16] Defendants also argue that detaining class members for "longer periods of time where the minor is subject to a final order of removal and pending removal" does not violate the Agreement as a matter of law. Def. Sec. Supp. Resp. at 3. As one Defendant witness explains, "If [detainees] claim credible fear, then they can go in front of Asylum. If they don't claim fear, they're a final order of removal, and we will process them and have them returned to their country as soon as possible." Hester Depo. at 71.

But on the issue of mandatory detention, the expedited removal statute does not distinguish between detainees who are awaiting their credible-fear determinations and those who are awaiting removal after receiving a negative credible fear determination. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). Thus, the Court does not find that class members in the latter group should be treated any differently than the former with regard to the release provisions under the Agreement and Defendants' discretionary-parole regulations.

In simpler terms, that class members are in mandatory detention because they are awaiting removal does not defeat the Agreement's presumption of release. Defendants' must still engage in a case-by-case determination as described above.

[17] While the Ninth Circuit cited 8 C.F.R. section 212.5(b)(3)(ii), which unambiguously provides that a "minor may be released with an accompanying parent who is in detention" under certain circumstances, it nevertheless found that the *Flores* Agreement did not require the release of adults with class members. *See Flores*, 828 F.3d at 908–09. This Court did not intend to suggest otherwise. It merely assumed that the release of adults must, in some circumstances (especially situations involving prolonged detention), comport with existing Supreme Court and Ninth Circuit case law requiring bond hearings within 180 days. *See, e.g.*, *Rodriguez v. Robbins*, 804 F.3d 1060, 1081–84 (9th Cir. 2015) (adults in immigration custody may not be subjected to prolonged detention (more than six months) without a bond hearing), *cert. granted sub nom. Jennings v. Rodriguez*, 136 S. Ct. 2489 (2016); *Casas-Castrillon v. Dep't of Homeland Security*, 535 F.3d 942 (9th Cir. 2008); *see also Clark v. Martinez*, 543 U.S. 371, 386 (2005); *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).

---

**CIVIL MINUTES—GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | June 27, 2017 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 25 of 34 |
|---|---|---|---|

discretionary-parole regulation prioritizes release of a minor to an adult relative not in detention whereas Paragraph 14 ranks a "legal guardian" above the non-parent adult relative. Nonetheless, the key factor is that Defendants' own regulations contemplate release of Class Members after an individualized assessment.[18]   In fact, the ICE director who oversees operations relating to the case management of detainees at the Berks Family Residential Center states that "ICE has released minors (and their accompanying parents) from the BFRC where, for example, the minors are found to have a credible fear of persecution or where there is a medical emergency regarding the *child or parent* warranting release."  Declaration of Joshua Reid ("Reid Decl.") ¶ 3 (emphasis added) [Doc. # 299-2].

Thus, the *Flores* Agreement creates an affirmative obligation on the part of Defendants to individually assess each class members' release, while 8 C.F.R. section 212.5(b) allows for Defendants to do so—notwithstanding the general mandatory-detention practice—in cases involving minors in expedited removal.

Defendants argue that "under 8 U.S.C. § 1252(f)(1), the Court cannot simply order that [class members'] detention be prohibited on a class-wide basis."[19]  Def. Supp. Resp. at 13 [Doc. # 268].   The Court will issue no such order.   To be clear, the Court will not dictate how Defendants must exercise their discretion to parole or release minors in every single case— instead, the Court will order Defendants to comply with the unambiguous charge of the *Flores* Agreement to make *individualized* determinations regarding a minor's flight risk rather than blanket determinations.  *See Flores*, 828 F.3d at 903 ("The Settlement creates a presumption in favor of release and favors family reunification").

Ultimately, based upon an individualized review of the facts, Defendants may conclude that it is in the best interests of an accompanied minor to remain with a parent who is in detention.  *See* July 24, 2015 Order, 212 F. Supp. 3d at 875 n.5 ("The parties also do not address the situation where the mother chooses to stay in the detention facility or has been deemed a

---

[18] At the January 30, 2017 hearing, the Court requested additional briefing on the issue of whether expedited removal requires mandatory detention.  In their response brief, Defendants mention that the government may exercise its discretion to release detainees experiencing a medical emergency or for legitimate law enforcement objections.  Def. Supp. Brief Regarding Expedited Removal at 3–4 [Doc. # 336].  They conveniently omit, however, any citation to 8 C.F.R. section 212.5(b) and fail to mention that juveniles qualify for discretionary parole under existing regulations.

[19] Section 1252(f)(1) states that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter," which includes the expedited removal statute.  Defendants must nonetheless comply with Paragraph 14 of the Agreement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | June 27, 2017 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 26 of 34 |
|---|---|---|---|

flight or safety risk.  As a practical matter, Defendants would be justified in detaining both mother and child in that case").  On the other hand, it may be the case that "in order to effectuate the least restrictive form of detention for the child, Defendants must follow an order of preference for the minor's release to an available adult [not in detention] under Paragraph 14 of the Agreement."  August 21, 2015 Order, 212 F. Supp. 3d at 913 n.5.  Either way, the expedited removal statute does not excuse Defendants from the commitment they made in the *Flores* Agreement to make and record efforts to release minors in ICE custody, even if the minor or her parent is in expedited removal (i.e., awaiting a credible fear determination).

Here, Defendants all but concede their failure to make and record efforts to release children in accordance with Paragraph 14, especially when the class member is accompanied by a parent or legal guardian.  *See, e.g.*, Reid Decl. ¶ 3 ("Generally, ICE does not seek to release minors housed at the [Berks Family Residential Center], who are accompanied by a parent, to another adult.").  If it is discovered that a *bona fide* familial relationship (i.e., parent or legal guardian) does not exist between a minor and the accompanying adult encountered at the family residential center, the minor is deemed "unaccompanied" and transferred to the Department of Health and Human Services' Office of Refugee Resettlement.  *See* Declaration of Homero D. Salinas ("Salinas Decl.") ¶ 3 [Doc. # 299-3]; Declaration of Juanita Hester ("Hester Decl.") ¶ 3 [Doc. # 299-1].

Defendants also present the declaration of Jon Gurule, the Assistant Director of Field Operations for Enforcement and Removal Operations for ICE.  Declaration of Jon Gurule ("Gurule Decl.") ¶ 1 [Doc. # 217-1].  Gurule directs and oversees the nationwide day-to-day immigration enforcement and removal operations of 24 ERO Field Office Directors and 5,800 immigration enforcement officers.  *Id.*

According to Gurule, ICE lacks the "institutional capacity or resources to assess whether an adult (other than a parent or guardian) seeking custody of a minor already detained with a parent is a suitable custodian who will house the minor in a suitable home environment."  *Id.* ¶ 16.  This failure to assess non-parent/guardian custodians flies in the face of the *Flores* Agreement.  Third in the order of preferences under Paragraph 14 is an adult relative (brother, sister, aunt, uncle, or grandparent) of the minor.  Paragraph 17 of the Agreement further states that a "positive suitability assessment may be required prior to release to any individual or program pursuant to Paragraph 14."[20]  This assessment may include investigating the adult

---

[20] Defendants argue that because Plaintiffs made no mention of Paragraph 17 violations in their opening motion to enforce, the Court should decline to consider this issue.  Def. Second Supp. Resp. at 23.  To be sure, the Court must focus on the issues raised in the motion itself, and not new ones raised for the first time in supplemental

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544 DMG (AGRx)** | Date | June 27, 2017 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 27 of 34 |
|---|---|---|---|

custodian's living conditions, verifying the adult's identity, and consideration of the minor's wishes and concerns.  Agreement ¶ 17.

Nonetheless, Gurule states that "ICE is not authorized to expend resources to conduct suitability analyses, and any resources devoted to such endeavors would no longer be available to process families as expeditiously as possible through [family residential centers]."  *Id.* ¶ 16. ICE cannot simply release children to just any adult who claims custody of the child.  For one, the Agreement requires that the proposed custodian execute an agreement with Defendants to, among other things, "provide for the minor's physical, mental, and financial well-being." Agreement ¶ 15.  By failing to conduct suitability analyses of non-parent/guardian custodians seeking custody of class members, Defendants essentially concede to violating the Agreement.

Defendants assert that "[i]n the majority of cases, it is safer for the child to remain with his or her parent at an ICE [family residential center] than for that child to be released to a purported family member who ICE has no ability to screen for suitability to care for that child." Def. Supp. Resp. at 19.  Even if the Court takes Defendants at their word that in the majority of cases, accompanied minors should stay with a parent in detention, that still leaves the rest of the potentially significant numbers of children who could be released to a custodian but for the Defendants' inability to screen.

This purported lack of institutional resources to screen is no excuse for non-performance. Defendants entered into the *Flores* Agreement and now they do not want to perform—but want this Court to bless the breach.  That is not how contracts work.

In short, Defendants are not absolved of their contractual obligation to make and record efforts to release children by virtue of the expedited removal statute.  In light of Defendants' own evidence that they are not substantially complying with Paragraph 14 (and the related paragraphs involving release of minors to custodians), the Court **GRANTS** Plaintiffs' motion to enforce.
//

---

briefing.  But Paragraph 17 is directly linked to the Paragraph 14 issues that Plaintiffs raised in their motion—namely, the standards governing the release of children to non-detained adults.  The Court cannot examine claims of breach of Paragraph 14 without examining existing claims that Defendants violated the "positive suitability assessments" under Paragraph 17 that may be required to effectuate Paragraph 14.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | June 27, 2017 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 28 of 34 |
|---|---|---|---|

2.      **Secure, Unlicensed Facilities**

i.      **Unlicensed Facilities**

ICE currently operates three family residential centers:  the Karnes County Residential Center ("Karnes"); the South Texas Family Residential Center ("Dilley"); and the Berks Family Residential Center ("Berks").  Gurule Decl. ¶ 5.  Plaintiffs continue to present evidence that these family residential centers are unlicensed.  *See, e.g.*, Deposition of Phillip Miller ("Miller Depo.") at 103 (confirming that Dilley and Karnes facilities are not licensed) [Doc. # 287-3 at 6]; Letter from Pennsylvania Department of Human Services (informing Defendants of decision to "non-renew and revoke" the previously-issued certificates of compliance because Berks County Residential Center is a not a child residential facility under state regulations, but rather a "residential center for the detention of immigration families, including adults") [Doc. # 201-6 at 46]; *Grassroots Leadership Inc. v. Tex. Dep't of Family and Protective Serv.*, No. D-1-GN-15-004336, slip op., Travis Cty. Dist. Court (Dec. 16, 2016) (ordering Texas state entity to refrain from issuing child care licenses to the Karnes and Dilley family residential centers) [Doc. # 329].

Defendants do not dispute that the family residential centers continue to be unlicensed.  Still, they contend that the licensed-facility issue is "new" and not previously briefed or argued in Plaintiffs' original May 19, 2016 Motion. Def. SGDMF at 14.  This is incorrect.  *See* Pl Mot. at 15 ("Class Members are detained in secure facilities (also not licensed for the care of dependent children) for weeks and months on end").

Defendants next point out that the licensing issue is "a question of state law" and appear to argue that state licensing requirements essentially cannot be applied to family residential centers.  *See* Hearing Tr. dated Jan. 30, 2017, at 54.  For instance, they emphasize that while they have "made efforts to obtain licenses in accordance with state law," if the family residential centers are "unlicensed because state law does not provide a license for those facilities, they are as licensed as they can be under state law."  *Id.*; Declaration of Robert Doggett ¶¶ 3–4 (stating that Texas state court issued an order enjoining the state from issuing a license to Dilley) [Doc. # 287-5 at 124].  This reasoning is a mere reprise of Defendants' well-worn argument against Plaintiffs' February 2, 2015 Motion to Enforce—which the Court rejected—that the licensing provision in the *Flores* Agreement cannot be interpreted to apply to family residential centers, in part because there are no state licensing processes available for Defendants' specific facilities.  *See* July 24, 2015 Order, 212 F. Supp. 3d at 877–78 (discussing Defendants' argument and concluding that "Defendants are required to provide children who are not released temporary placement in a licensed program"); Def. Opp. to Feb. 2. 2015 Mot. at 17 ("The 'Licensing' Provision of the Agreement Should Not Apply to Family Residential Centers") [Doc. # 121].

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | June 27, 2017 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 29 of 34 |
|---|---|---|---|

As the Court previously stated, "[t]he fact that the family residential centers cannot be licensed by an appropriate state agency simply means that, under the Agreement, class members cannot be housed in these facilities except as permitted by the Agreement." July 24, 2015 Order, 212 F. Supp. 3d at 877.

### ii.    Secure Facilities

Much like in its February 2, 2015 Motion, Plaintiffs continue to proffer evidence showing that ICE's family residential centers remain secure (i.e., detainees are held in custody and not free to leave). *See* July 24, 2015 Order, 212 F. Supp. 3d at 879–80; *see also* Walter A. Decl. ¶ 14 ("The doors here at Berks are sometimes locked and sometimes unlocked . . . Even if the doors are unlocked, we cannot just leave because there are always guards by the doors); Declaration of Allison Maria Mendez Leiva ("Allison M. Decl.") ¶ 22 ("I know that we are in a facility that is locked. At certain parts of the day we are only permitted in certain areas and blocked from certain parts of the facility. There are key pads throughout the facility. . . . I see the staff use key cards to unlock internal doors which prevent us from passing.") [Doc. # 202-2 at 20]; de la Garza Depo. at 22 (stating detainees are not free to leave Dilley "until we tell them it's – it's okay to leave") [Doc. # 287-2 at 26]. As before, Defendants do not dispute that the facilities are secure.

For the reasons already discussed in previous orders and since Plaintiffs have satisfied their burden, the Court once again finds that because the family residential centers are secure, unlicensed facilities, Defendants cannot be deemed in substantial compliance with the Agreement.

In short, the Court **GRANTS** Plaintiffs' motion to enforce the Agreement to the extent Defendants are not making and recording continuous efforts to release class members or placing children in non-secure, licensed facilities in accordance with the Agreement.

### D.    20-Day Detention Period

Plaintiffs contend that Defendants routinely detain class members for weeks or months in secure, non-licensed facilities, in violation of Paragraphs 12A and 14 of the *Flores* Agreement, which requires that Defendants release class members "without unnecessary delay" to certain adults, or place them in a licensed program within five days of apprehension. In response, Defendants emphasize that they released 95 percent of 48,940 detainees booked into the three ICE family residential centers (Berks, Karnes, and South Texas) from October 23, 2015 to November 19, 2016, within 20 days of detention. Def. Sec. Supp. Resp. at 26; Declaration of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544 DMG (AGRx)** | Date | June 27, 2017 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 30 of 34 |
|---|---|---|---|

Philip T. Miller ("Miller Decl.") ¶ 5 [Doc. # 299-4].   According to Defendants, a small percentage of individuals remain in detention for longer periods of time because they (1) are in mandatory detention and are seeking to establish a credible fear claim; (2) have been denied a credible fear finding and are awaiting removal; or (3) are part of a family unit where the parent has been deemed a flight risk.  Gurule Decl. ¶ 14.

This Court has already acknowledged that while the Agreement requires Defendants to place a minor with an available adult or in a non-secure, licensed facility upon apprehension within five days, there is an exception "in the event of an emergency or influx of minors into the United States."   Agreement ¶ 12A.   Thus, a 20-day period for release can fall within the Agreement's parameters:

> At a given time and under extenuating circumstances, if 20 days is as fast as Defendants, in good faith and in the exercise of due diligence, can possibly go in screening family members for reasonable or credible fear, then the recently-implemented DHS polices may fall within the parameters of Paragraph 12A of the Agreement, especially if the brief extension of time will permit the DHS to keep the family unit together.

August 21, 2015 Order, 212 F. Supp. 3d at 914.

The issue here, however, is that Plaintiffs present evidence of class members' detention exceeding 20 days.  *See, e.g.*, Reid Depo. at 37–38 (describing having held a class member in detention at Berks for 13 months) [Doc. # 287-2 at 54]; Sara E. Decl. ¶¶ 9–11 (detained with class member child for over five weeks at Karnes); Allison M. Decl. ¶¶ 9, 11, 17 (detained at Dilley and Berks for total of eight months).

Even using Defendants' own numbers, a significant number of detainees still remained in detention for over 20 days during the 13-month period Defendants identified:  approximately 2,447 individuals (five percent of 48,940).  What is more, Defendants' length-of-stay statistics only account for individuals *already released*.  *See* Deposition of Philip T. Miller ("Miller Depo.") at 141–143 (explaining that the length-of-stay is measured by "the difference between when you book into a [family residential center] and when you're released," and that "I can't tell you how long someone has stayed until they're no longer [detained]") [Doc. # 350].  Thus, it is unclear to the Court how many *unreleased* class members and their parents remained in detention at the family residential centers during the 13-month period from October 23, 2015 to November 19, 2016.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544 DMG (AGRx)** | | Date | June 27, 2017 |
|---|---|---|---|---|
| Title | ***Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.*** | | Page | 31 of 34 |

In light of these statistics, Plaintiffs' witness statements, the evidence that the family residential centers remain unlicensed, secure facilities, and the fact that use of the expedited removal procedure does not automatically render the Agreement's preference-for-release provision inapplicable, the Court finds Plaintiffs have established Defendants' substantial non-compliance with Paragraphs 12A and 14 of the *Flores* Agreement, notwithstanding the emergency-influx exception.

Accordingly, the Court **GRANTS** Plaintiffs' motion to enforce these paragraphs of the Agreement on the length-of-detention issue.

### E.    Commingling of Minors with Adults

Paragraph 12A of the Agreement states that upon apprehension, Defendants "will segregate unaccompanied minors from unrelated adults." Here, Plaintiffs assert that Defendants "routinely commingle Class Member children with unrelated adults . . . . Young girls may even be detained with unrelated men." Pl. Mot. at 14–16.

Plaintiffs fail, however, to satisfy their burden of demonstrating Defendants' substantial non-compliance with this provision by a preponderance of the evidence. The Agreement's commingling provision applies only to *unaccompanied* class members. Plaintiffs' examples involve statements from *accompanied* class members (or their accompanying parents) who state that Defendants mixed them in with unrelated adults. *See* Pl. SUF at 110–117; *e.g.*, Declaration of Yeslin L. ¶ 2 ("I am detained with my mother, my younger sister and my younger brother.") [Doc. # 202-1 at 62]. Plaintiffs' statements from various ICE directors also do not help: they involve statements regarding conditions at family residential centers, which house only accompanied minors and their families. Pl. SUF at 110–114; *see also* January 20, 2017 Order at 3–4 (describing how Congress transferred responsibility for the care and placement of unaccompanied minors from ICE to the Department of Health and Human Services) [Doc. # 318]. At other times, Plaintiffs' witness statements fail to differentiate whether the observed commingling involved accompanied or unaccompanied minors.

Accordingly, the Court **DENIES** Plaintiffs' motion to enforce Paragraph 12A of the Agreement on the issue of commingling class members with adults.

### F.    Right to Counsel/Failure to Notify

Plaintiffs contend that Defendants routinely interfere with class members' right to counsel, which frustrates their ability to protect and assert their rights under the *Flores*

---

**CIVIL MINUTES—GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544 DMG (AGRx)** | Date | June 27, 2017 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 32 of 34 |
|---|---|---|---|

Agreement. The Court notes at the outset that there is no provision of the *Flores* Agreement that establishes class members' right to counsel. *See also J.E.F.M. v. Lynch*, 837 F.3d 1026, 1033 (9th Cir. 2016) ("[R]ight-to-counsel claims must be raised through the [petition for review] process because they 'arise from' removal proceedings. The counsel claims are not independent or ancillary to the removal proceedings.") (quoting 8 U.S.C. § 1259(b)(9)).

To the extent Plaintiffs' motion to enforce is based on Defendants' failure to provide class members' counsel with advance notice regarding class members' transfers between ICE facilities pursuant to Paragraph 17 of the Agreement, the Court **DENIES** Plaintiffs' motion. Plaintiffs provide only one example where Defendants allegedly failed to give an attorney representing a group of class members notice of their relocation. *See* Pl. SUF at 143–44 (quoting from Declaration of Ed McCarthy, Esq.). Plaintiffs also do not challenge Defendants' evidence establishing a valid reason for their failure to notify counsel: attorney McCarthy was not the attorney of record for the class members in question. *See* Second Declaration of Juanita Hester ¶ 6 ("ICE is only able to notify attorneys of the transfer of a minor where that attorney filed a DHS Form G-28, with ICE, notifying ICE of the attorney-client relationship," which McCarthy failed to do) [Doc. # 299-1].

**G.     Appointment of a Monitor**

Paragraph 24A of the *Flores* Agreement provides as follows:

An INS Juvenile Coordinator in the Office of the Assistant Commissioner for Detention and Deportation shall monitor compliance with the terms of this Agreement and shall maintain an up-to-date record of all minors who are placed in proceedings and remain in INS custody for longer than 72 hours.

*See also* Agreement ¶¶ 25–31.

It is unclear to the Court whether a Juvenile Coordinator has ever existed during the more than 20 years since the parties entered into the *Flores* Agreement—and if one did, whether he or she ever fulfilled any of the duties identified in Paragraph 24A. It is high time for Paragraph 24A to be meaningfully enforced.

Although Plaintiffs request the appointment of an independent monitor, the Court finds it appropriate—at least at this juncture—to breathe life back into Paragraph 24A. To that end, the Court will order Defendants within 30 days of this Order to identify and propose to the Court the name of a Juvenile Coordinator and provide that person's curriculum vitae and his or her

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544 DMG (AGRx)** | Date | June 27, 2017 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 33 of 34 |
|---|---|---|---|

qualifications for the position. The Juvenile Coordinator will monitor compliance with those terms of the *Flores* Agreement, which this Court has found must be enforced and shall report directly to the Court regarding the status of Defendants' compliance. Once the Juvenile Coordinator has been designated, the Court shall establish a schedule for the Juvenile Coordinator's periodic written reports to the Court, as well as Plaintiffs' response to those reports. Within one year from the date of the Juvenile Coordinator's appointment, the Court shall assess whether Defendants are in substantial compliance with the *Flores* Agreement and whether the objectives of the Coordinator have been met. If the Court is not satisfied with the progress made within that time frame, it will reconsider Plaintiffs' renewed request for appointment of an independent monitor.

**V.**

**CONCLUSION**

**A.** **Findings**

Based on the foregoing, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' motion to enforce the *Flores* Agreement as follows:

1.  Conditions at CBP stations in the RGV Sector:

    a.  Plaintiffs' motion to enforce Paragraph 12A of the Agreement on the issue of access to adequate food is **GRANTED**;

    b.  Plaintiffs' motion to enforce Paragraph 12A of the Agreement on the issue of access to clean drinking water is **GRANTED**;

    c.  Plaintiffs' motion to enforce Paragraph 12A of the Agreement on the issue of unsanitary conditions is **GRANTED** as to all non-CPC-Ursula CBP stations located within the RGV Sector. For reasons discussed in section IV.A.3, the Court also orders compliance monitoring at CPC-Ursula;

    d.  Plaintiffs' motion to enforce Paragraph 12A of the Agreement on the issue of temperature control is **GRANTED**;

    e.  Plaintiffs' motion to enforce Paragraph 12A of the Agreement on the issue of sleeping conditions is **GRANTED** as to all non-CPC-Ursula CBP stations within the RGV Sector, and **DENIED** as to CPC-Ursula;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544 DMG (AGRx)** | Date | June 27, 2017 |
|---|---|---|---|

| Title | ***Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.*** | Page | 34 of 34 |
|---|---|---|---|

    2.      Failure to Provide Advisals:  Plaintiff's motion to enforce Paragraph 24D with regard to the requirements that Defendants provide class members with a list of legal services and the Notice of Right of Judicial Review (Exhibit 6) is **GRANTED**.  The Court **DENIES** the motion with respect to the Form I-770 requirement;

    3.      Efforts to Release Class Members:  Plaintiffs' motion to enforce Paragraphs 14, 18, 19, and 23 of the Agreement on the issue of whether Defendants are making and recording continuous efforts to release class members or place them in non-secure, licensed facilities in accordance with the Agreement is **GRANTED**;

    4.      20-Day Detention Period:  Plaintiffs' motion to enforce Paragraphs 12A and 14 of the Agreement on the length-of-detention issue is **GRANTED**;

    5.      Commingling:  Plaintiffs' motion to enforce Paragraph 12A of the Agreement on the issue of commingling class members with adults is **DENIED**;

    6.      Right to Counsel:  Plaintiffs' motion to enforce based on a right-to-counsel claim is **DENIED**; and

    7.      Within 30 days from the date of this Order, Defendants shall submit the name of a proposed Juvenile Coordinator pursuant to Paragraph 12A of the Agreement and his or her qualifications for the position.

**IT IS SO ORDERED**.