IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| Jenny Lisette Flores, *et. al.*, )<br>　　　*Plaintiffs*, )<br>　　　　　　　　　　　　　　　　)<br>v. 　　　　　　　　　　　　　　 )<br>　　　　　　　　　　　　　　　　)<br>Jefferson B. Sessions, III, *et al.*, )<br>　　　*Defendants.* 　　　　　　　) | No. CV 85-4544 |

## DECLARATION OF HENRY A. MOAK, JR.

1. I am currently the Acting Chief Accountability Officer, U.S. Customs and Border Protection (CBP), U.S. Department of Homeland Security (DHS). I have been employed in this position since April 2017. In my current role, I oversee CBP's Office of Accountability, which is comprised of various Director-level divisions aimed at ensuring that CBP maintains accountability and integrity in all of its mission areas and operational programs. In this role, I, working through and with appropriate staff members throughout CBP, proactively identify areas of potential vulnerabilities or conditions that could hinder the successful accomplishment of CBP's operational goals. One of the divisions I oversee is CBP's Management Inspection Division (MID), which, among other things, has conducted compliance reviews of various CBP facilities across the country to ensure compliance with the terms of the *Flores* Settlement Agreement ("Agreement").

2. Between June 2011 and April 2017, I directed and managed the Performance Management and Analysis Division (PMAD) for CBP, in which I oversaw a staff of seven reporting analysts, and crafted CBP's Performance Management Framework (PMF). The PMF is a systematic approach to align CBP planning systems to robust, top-down performance management in order to translate strategic goals into quantifiable outcomes. The PMF

provides CBP with improved performance management and oversight, contributing to efficiency and effectiveness, through improved performance measurement, analysis and reporting.

3. Prior to joining CBP in 2010, I was deployed as a Forward Operational Commander in Southwest Asia from November 2001 to July 2003 in support of Operation Enduring Freedom and Operation Iraqi Freedom. During this time I had command responsibility of all logistical support in Southwest Asia. In 2005, I was ordered to the Headquarters Department of the Army, where I served as the Special Assistant for Reserve Affairs to the Vice Chief of Staff Army. I also served in the personal staff of the Chairman of the Joint Chiefs until retiring in 2009 at the rank of Colonel.

4. I am also currently serving as CBP's Juvenile Coordinator, in accordance with the terms of Paragraph 28A of the Agreement and the Court's June 27, 2017 Order in this case. As Juvenile Coordinator, I understand that I am responsible for monitoring CBP's compliance with the terms of the Agreement, for maintaining various statistical information regarding minors in CBP custody, and for reporting pertinent information related to these two requirements to the Court. I understand that the Court will establish a schedule for my periodic reports regarding CBP's compliance with the Agreement.

5. I understand that, as Juvenile Coordinator, I play a critical role in ensuring that CBP remains in compliance with the Agreement. I am fully committed to this responsibility. I also understand that I will need to thoroughly monitor and document CBP's compliance with the Agreement, which will include reviewing existing compliance mechanisms and existing data, and conducting my own independent monitoring of the agency's data and actions related to compliance.

6. I make this declaration on the basis of my own personal knowledge, as well as documents

and information made available to me in my official capacity, including this Court's August 24, 2017 Order, which directed me to submit a declaration "detailing what [I] have done to familiarize [myself] with the issues identified in the Court's June 27, 2017 Order . . . and what course of action [I] will undertake to address the deficiencies outlined in the June 2017 Order and to bring the CBP Stations located in the Rio Grande Valley Sector into compliance with the *Flores* Agreement and the CBP's own standards."

INITIAL FAMILIARIZATION EFFORTS

7. Since becoming CBP's Juvenile Coordinator on August 24, 2017 by Order of this Court, I have familiarized myself with the requirements of the Agreement, as well as the history of this litigation. I am generally familiar with the requirements of the Agreement, including the requirement that minors be held in facilities that are safe and sanitary; the requirement that minors be provided access to food, drinking water, toilets, sinks, medical care, and adequate ventilation; and the requirement that CBP monitor its own compliance with these terms. I am aware that these terms apply to all minors, regardless of whether they are accompanied by adult family members, and that the terms of the Agreement do not apply to adults. I am aware that these terms apply to both the U.S. Border Patrol (USBP) and the Office of Field Operations (OFO), the two CBP operational components with short term detention facilities, and apply to all CBP facilities nationwide. I am also familiar with the substance of plaintiffs' motions to enforce in this case, and with the Court's Orders granting those motions to enforce, including the requirement that CBP document its compliance with the Agreement and with its own policies.

8. My staff and I also held five discussion sessions with USBP and OFO to develop a preliminary understanding of CBP's efforts to implement and monitor its compliance with

3

the Agreement, existing mechanisms for documenting compliance, and the current conditions in which minors in CBP custody are held. I also visited both USBP and OFO facilities in the San Diego area, where I observed CBP operations on the ground.

EFFORTS TO ENSURE COMPLIANCE ACROSS CBP NATIONWIDE

9. I understand that, as Juvenile Coordinator, my mandate is to ensure that CBP complies with the Agreement in all facilities where CBP detains minors.

10. In the first quarter of fiscal year (FY) 2018, should CBP be authorized appropriated funding, I intend to visit CBP facilities in the Rio Grande Valley (RGV) USBP Sector and at least one other location around the country. These site visits will include visits to both OFO and USBP facilities. Thereafter, in conjunction with OFO and USBP, I intend to continue to visit CBP facilities in different areas of the country in order to further enhance my understanding of the variety of operational environments in which CBP holds minors, and to observe how OFO and USBP comply with the Agreement in these different environments.

11. It is important for me to visit both OFO and USBP facilities in several different areas of the country, because no two CBP facilities are the same. For example, OFO maintains a wide variety of different types of ports of entry (POEs), ranging from land POEs to international airports to seaports. The operating environment at each type of POE varies greatly from one location to another, both in size and scope. The locations of these POEs also vary greatly, and there is a large difference between the operating environment in remote areas of the Southwest border or the Northern border and those in metropolitan areas throughout the country. Similarly, while the majority of USBP facilities are stations, each location has its own set of unique operational challenges. As Juvenile Coordinator, I must have a comprehensive understanding of each type of environment in

order to effectively perform my role in ensuring CBP's compliance with the Agreement.

12. In order to document this compliance, and in accordance with my general monitoring duties, I am committed to conducting more detailed monitoring of USBP and OFO's compliance with the Agreement across the entire country, including in the RGV Sector.

INITIAL FOCUS ON RGV SECTOR

13. In order to address the specific concerns raised by this Court regarding the RGV Sector, I am focusing the majority of my initial monitoring actions on that Sector.

14. Subject to the authorization of appropriated funds, I will visit the RGV Sector, including the Central Processing Center-Ursula, which is specifically mentioned in this Court's order, in the first quarter of FY18 in order to familiarize myself with the facilities, the operating environment, and the existing USBP efforts to comply with the Agreement.

15. I also intend to work with USBP to examine the existing methods for documenting compliance with the Agreement, and determine whether additional methods for documenting compliance are required. In the first quarter of FY18, I intend to work with USBP to review the data points that agents currently track in the e3 Detention Module ("e3DM") for purposes of tracking compliance with the Agreement, and to develop a data analytics plan. Within the first two quarters of FY18, I intend to have the preliminary data analytics begun, and I intend to develop recommendations for enhanced data collection, if appropriate.

16. Additionally, I, working with all relevant staff in my office, intend to work with USBP on the following actions, among others:

    a. Work with USBP headquarters to conduct spot checks of e3DM records from the RGV Sector and other sectors around the country.

    b. Work with USBP headquarters to develop enhancements to e3DM, should they be needed, to increase mandatory reporting of certain data elements, and to increase

accountability for agents in the field.

    c. Coordinate with USBP headquarters to ensure that data points are being captured in a uniform manner so as to best document compliance with the Agreement.

    d. Evaluate existing Flores training requirements and make recommendations to ensure an accurate understanding of the requirements of the Agreement and the need to monitor compliance.

    e. Continue inspections of USBP stations, to ensure that stations continue to comply with the Agreement, and to conduct on the spot inspections of the data being entered into e3DM.

17. Over time, I intend to extend these actions to other USBP Sectors and, modified as appropriate to the operational environment, to OFO.

18. Over time, and in conjunction with USBP and OFO, I also intend to develop reliable, and comparable, data analytics to track compliance with the Agreement in RGV Sector as well as other CBP facilities nationwide.

19. I understand that, in taking these actions, I may identify other areas in which monitoring may be appropriate. I have begun pulling a team together who is able to quickly pivot from one issue to another, should the need arise, and which is equipped to conduct all the activities listed for FY18 and going forward.

20. My reporting to the Court on my compliance monitoring will reflect any new issues and how these issues will be addressed.

21. I will provide the Court with accurate and honest reporting about every aspect of CBP's compliance with the Agreement, in accordance with the Court's reporting schedule and any applicable Orders from the Court. Unless otherwise ordered, I propose to submit a preliminary report by December 1, 2017. Additionally, in consultation with me and my staff,

CBP will provide monthly updates to the Department of Justice (DOJ) senior attorney involved in this litigation.

I make this statement under the penalty of perjury on this 8th day September, 2017.

_____
Henry A. Moak, Jr.
Acting Chief Accountability Officer,
U.S. Customs and Border Protection
Washington, DC