UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 85-4544-DMG (AGRx)** | Date | November 14, 2017 |

| | | | |
|---|---|---|---|
| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 1 of 12 |

Present: The Honorable    DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: [IN  CHAMBERS]  ORDER  RE  PLAINTIFFS'  MOTION  FOR
ATTORNEYS' FEES AND COSTS [351, 382]**

**I.
INTRODUCTION**

On July 24, 2015, the Court found that Defendants Jeh Johnson and the U.S. Department
of Homeland Security ("DHS") and its subordinate entities, U.S. Immigration and Customs
Enforcement ("ICE") and U.S. Customs and Border Protection ("CBP") had breached the
settlement agreement (the "Agreement") that they had reached with Plaintiff Jenny L. Flores and
other class members—accompanied and unaccompanied minors—in 1997. *Flores v. Johnson*,
212 F. Supp. 3d 864 (C.D. Cal. 2015) ("July 24, 2015 Order").  After additional briefing, the
Court issued its remedial order.  *Flores v. Lynch*, 212 F. Supp. 3d 907 (C.D. Cal. 2015) ("August
21, 2015 Order").  Defendants appealed.

On July 6, 2016, the Ninth Circuit issued its opinion, affirming the district court in part
and reversing in part.  The Ninth Circuit concluded that although "the Settlement unambiguously
applies both to accompanied and unaccompanied minors," it "does not create affirmative release
rights for parents."  *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016).

Plaintiffs now move for attorneys' fees and costs under the Equal Access to Justice Act
("EAJA"), 28 U.S.C. § 2412(d), in connection with their motion to enforce the Agreement [Doc.
# 100], and their subsequent appeal before the Ninth Circuit.  ("Mot.") [Doc. # 351.]  For the
reasons discussed below, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' motion.
//

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | | |
|---|---|---|---|---|
| Case No. | **CV 85-4544-DMG (AGRx)** | | Date | November 14, 2017 |

| | | | | |
|---|---|---|---|---|
| Title | ***Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.*** | | Page | 2 of 12 |

**II.**
**ANALYSIS**

Plaintiffs move for an award of attorneys' fees in the amount $1,180,729.20 and $10,169.92 in costs and expenses. *See* Mot. at 22; *id.*, Ex. 2.

Under the Equal Access to Justice Act ("EAJA"), "a court shall award to a prevailing party other than the United States fees and other expenses . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d). "The government bears the burden of demonstrating substantial justification." *Gonzales v. Free Speech Coal.*, 408 F.3d 613, 618 (9th Cir. 2005). If a court finds the government's position not substantially justified, it must then determine whether the requested fees are reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). As a starting point, a court examines "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.*

Here, Defendants do not dispute that Plaintiffs are a "prevailing party" in this action under the EAJA. Instead, Defendants argue that the Court should deny Plaintiffs' attorneys' fee request in its entirety because Defendants' litigation positions were substantially justified.[1] Alternatively, Defendants contend that Plaintiffs' fee request is unreasonable. The Court addresses these arguments in turn.

**A.      Substantial Justification**

"The test for whether the government is substantially justified is one of 'reasonableness.'" *Id*. "Put another way, substantially justified means there is a dispute over which 'reasonable minds could differ.'" *Id.* (quoting *League of Women Voters v. FCC*, 798 F.2d 1255, 1260 (9th Cir. 1986)); *see also Pierce v. Unde*rwood, 487 U.S. 552, 566 n.2 (position can be substantially justified "even though it is not correct . . . if it has a reasonable basis in law and fact").

In analyzing the reasonableness of the government's position, the court must consider the totality of the circumstances, which incorporates both the underlying governmental action and the government's trial court position. *See Kali v. Bowen*, 854 F.2d 329, 332 (9th Cir. 1988) (inquiry includes whether both the original action and the defense of the action was substantially

---

[1] Defendants make no argument regarding whether "special circumstances" make Plaintiffs' award request unjust.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | November 14, 2017 |
|---|---|---|---|

| Title | ***Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.*** | Page | 3 of 12 |
|---|---|---|---|

justified); *see also Rawlings v. Heckler*, 725 F.2d 1192, 1196 (9th Cir. 1984). "The government's failure to prevail does not raise a presumption that its position was not substantially justified." *Kali*, 854 F.2d at 332. It is the government's burden to demonstrate its position was substantially justified. *Id.*

Here, Defendants seek a finding that their position that the term "all minors" in the Agreement does not include accompanied minors was substantially justified. The Court cannot conscientiously make such a finding for the reasons it articulated in past orders. *See, e.g.*, July 24, 2015 Order, 212 F. Supp. 3d at 871–73 ("In light of the Agreement's clear and unambiguous language, which is bolstered by the regulatory framework in which the Agreement was formed and Defendants' past practice, the Court finds that the Agreement applies to accompanied minors."). Additionally, as the Ninth Circuit recognized, "the Settlement unambiguously applies to accompanied minors." *Flores*, 828 F.3d at 908; *see id.* at 905 ("We agree with the district court that "[t]he plain language of the Agreement clearly encompasses accompanied minors."). Thus, to the extent Defendants did not apply the Agreement to accompanied minors in detention, such conduct was unreasonable and not substantially justified.

Defendants also were not substantially justified in their defense to the claim that they violated the Agreement's requirement to house accompanied minors in non-secure, licensed facilities. According to Defendants, they reasonably argued that the licensing requirement "could not and should not be applied to family residential facilities" because "facilities licensed [by state agencies] to care for 'dependent children' could not be used to house accompanied children, and . . . no such license is available to . . . [ICE] family residential facilities." Opp. at 7 [Doc. # 357.] Such an assertion, however, "is a mere reprise of Defendants' well-worn argument against Plaintiffs' February 2, 2015 Motion to Enforce—which the Court rejected—that the licensing provision in the Flores Agreement cannot be interpreted to apply to family residential centers, in part because there are no state licensing processes available for Defendants' specific facilities." June 27, 2017 Order at 28–29 [Doc. # 363.] Defendants continue to fail to sufficiently justify this line of argument. Once more, "[t]he fact that the family residential centers cannot be licensed by an appropriate state agency simply means that, under the Agreement, class members cannot be housed in these facilities except as permitted by the Agreement." July 24, 2015 Order, 212 F. Supp. 3d at 877.

On the issue of conditions at custom border patrol facilities, Defendants contend that "[b]ecause the Court made *no* finding that CBP's own policies and procedures did not comply with the Agreement, it should be concluded that Defendants were substantially justified in their position on this issue as well." Opp. at 6 (emphasis in original). This misstates the issue—the allegations pertained to Defendants' on-the-ground practices, not their official policies and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | November 14, 2017 |
|---|---|---|---|

| Title | ***Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.*** | Page | 4 of 12 |
|---|---|---|---|

procedures. For instance, the Court explicitly found that "[i]n light of the voluminous evidence that Plaintiffs have presented of the egregious conditions of the holding cells [at Border Patrol Stations], . . . Defendants have materially breached the Agreement's term that Defendants provide 'safe and sanitary' holding cells for class members while they are in temporary custody." July 24, 2015 Order, 212 F. Supp. 3d at 882.

Finally, the Court rejects Defendants' argument that they were substantially justified in moving to amend the Agreement to exclude accompanied minors from its terms because of the sudden influx of immigrants at the U.S.-Mexico border in 2014. *See* Opp. at 7–8. As the Ninth Circuit acknowledged, "[t]he Settlement expressly anticipated an influx, and provided that, if one occurred, the government would be given more time to release minors or place them in licensed programs." *See Flores v. Lynch*, 828 F.3d 898 at 910. In other words, Defendants' motion to amend was unreasonable because "modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree." *See id.* (quoting *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 385 (1992)).

Because Defendants have failed to satisfy their burden to show that their positions were substantially justified, the Court proceeds to analyze reasonableness of Plaintiffs' fee request.

**B.      Reasonableness of Fee Request**

According to Defendants, Plaintiffs' fee request is unreasonable and excessive because (1) it relies upon work performed on an unsuccessful claim; (2) is based on an unreasonable enhanced hourly rate; and (3) accounts for hours unreasonably expended as well as a poorly-kept record that includes block billing.

**1.      Alleged Unsuccessful Claim**

Courts have discretion to reduce attorney-fee awards based on the "results obtained" in the lawsuit, which is a "particularly crucial" factor "where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Hensley*, 461 U.S. at 434. If a group of plaintiffs succeed on some claims but not others, courts "must evaluate whether the successful and unsuccessful claims are 'distinctly different claims for relief that are based on different facts and legal theories' or whether they 'involve a common core of facts or [are] based on related legal theories.'" *Schwarz v. Secy. of Health and Human Serv's*, 73 F.3d 895, 901 (9th Cir. 1995) (quoting *Hensley*, 461 U.S. at 434–35).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | November 14, 2017 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 5 of 12 |
|---|---|---|---|

Here, Defendants argue that Plaintiffs' claims regarding non-secure licensed facilities and sanitary CBP stations, are "clearly unrelated" to the release claim because they involve "distinct issues of contract interpretation," or are "based on . . . separate source[s] of contractual language, focused on a distinct set of actions undertaken by Defendants" that require separate analysis. Opp. at 9–10. This is unconvincing. The claims are related: they involve the same class members and the same consent decree. *See Webb v. Sloan*, 330 F.3d 1158, 1169 (9th Cir. 2003) ("Claims may be related if either the facts *or* the legal theories are the same.") (emphasis in original). In any event, Defendants do not appear to seek a reduction in fees due to the supposed unrelatedness of the above claims. *See* Opp. at 10.

Defendants do seek to reduce Plaintiffs' claimed hours overall by 40 percent to exclude time Plaintiffs spent on the issue of whether the "Agreement mandates release of accompanying parents so that accompanied minors can be released to their parents under Paragraphs 14 and 18." *See id.* Yet, Plaintiffs did not seek the relief of parental release as part of their motion to enforce. This was a remedy fashioned by the Court in recognition of existing law after it found Defendants breached the Agreement's release provisions through its blanket detention policy. Notwithstanding Defendants' mischaracterization of the remedy and the Ninth Circuit's reversal on that basis, the Court did not intend to create any new affirmative right for parents under the Agreement.[2] In any event, this issue shares a "common core of facts" (e.g., the prolonged detention of class members) with Plaintiffs' other successful claims. Defendants have not otherwise shown how this parental-release issue is distinctly different from the facts and legal theories that underlie Plaintiffs' other claims.

Accordingly, the Court declines to reduce Plaintiffs' claimed hours based on the Ninth Circuit's finding that the Court "erred in interpreting the Settlement to provide release rights to adults." *Flores*, 828 F.3d at 908.

## 2. Enhanced Hourly Rate

The EAJA permits fee awards "based upon the prevailing market rates for the kind and quality of the services furnished," capped at $125 per hour, "unless the court determines that an

---

[2] *See* Court's June 27, 2017 Order at n. 17 [Doc. # 363]; July 22, 2016 minute order re status conference [Doc. # 234]. The Court's intent was that, instead of the challenged government policy of blanket detention, detained children should be released in accordance with the Agreement when their accompanying parent is released in accordance with existing law—the Court did not intend that adults would have any affirmative rights to release under the Agreement. Thus, in this Court's view, rather than prevailing on this issue on appeal, Defendants successfully constructed a straw man and knocked it down.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | November 14, 2017 |
| --- | --- | --- | --- |

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 6 of 12 |
| --- | --- | --- | --- |

increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."  28 U.S.C. § 2412(d)(1)(D)(2)(A). In certain cases, courts in the Ninth Circuit may authorize enhanced EAJA rates—above inflation-adjusted rates—where there was a "limited availability of qualified attorneys for the proceedings involved" and the attorneys had "distinctive knowledge" and "specialized skill" that was "needful to the litigation in question" and "not available elsewhere at the statutory rate." *Nadarajah v. Holder*, 569 F.3d 906, 912 (9th Cir. 2009) (citations omitted).

Here, Plaintiffs request attorneys' fees at rates above the EAJA statutory cap for four of its 10 legal team members:  Peter Schey, Carlos Holguin, Alice Bussiere, and Kate Manning. *See* Mot. at 21; Doc. # 357-1 (EAJA Fee Calculation Spreadsheet).  Defendants oppose the requested enhancement rates.[3]

### i.      Peter Schey and Carlos Holguin

Plaintiffs request attorneys' fees at a rate of $875 per hour and $725 per hour for Schey and Holguin, respectively.  According to Defendants, however, Plaintiffs' action was a simple case of contract interpretation that required "no historical knowledge regarding the Agreement" or "distinctive skills."  *See* Opp. at 11.  Moreover, Defendants assert that "Plaintiffs fail[ed] to establish that attorneys who possessed these skills were unavailable at the statutory rate."  *Id.* The Ninth Circuit has declined to apply an upward adjustment for representation of immigrants in connection with common applications for asylum and withdrawal of removal.  *See Thangaraja v. Gonzales*, 428 F.3d 870, 876 (9th Cir. 2005) ("We decline to adopt counsel's proposed per se rule that 'the practice of immigration law should be classified as a specialty similar to practicing patent law.'").

This case, however, does not involve typical issues that arise routinely under immigration law.  Rather, Plaintiffs' action involved a one-of-a-kind settlement dating back to 1997 affecting a specific group of immigrants—accompanied and unaccompanied minors detained at the border. Schey and Holguin have intimate knowledge of the Agreement as they themselves negotiated it on behalf of class members.  In addition to litigating the matter that led to the Agreement, both Schey and Holguin have been involved with monitoring the government's compliance with the Agreement since its inception.  *See* Schey Decl. ¶ 7; Holguin Decl. ¶ 6; *see also* Agreement at

---

[3] Defendants do not challenge Plaintiffs' cost-of-living adjustment calculations, and the Court agrees such an increase is proper for the 2014, 2015, and 2016 years in this case.  *See* Mot. at 14–15; *see, e.g.*, *United States v. Real Property Known as 22249 Dolorosa Street*, 190 F.3d 977, 984 (9th Cir. 1999) (using regional consumer price index for urban consumers (CPI-U) to calculate cost-of-living adjustment).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | November 14, 2017 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 7 of 12 |
|---|---|---|---|

21, 23.   Schey and Holguin are therefore uniquely positioned to efficiently litigate the
enforcement action in question.

In fact, they are two of a handful of Plaintiffs' attorneys who approved the Agreement
and who are entitled to attorney-client visits with "class members even though they may not have
the names of class members who are housed at a particular location." Agreement ¶ 32A; *see also
id.* ¶ 32B ("Every six months, Plaintiffs' counsel [e.g., Schey and Holguin] shall provide the INS
with a list of those attorneys who may make such attorney-client visits, as Plaintiffs' counsel, to
minors during the following six month period."). Furthermore, the enforcement action involved
legal arguments regarding various federal statutes—Homeland Security Act of 2002 and the
William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008—and how they
intersect, if it at all, with the Agreement.

Finally, the Court notes that both Schey and Holguin speak fluent Spanish, which
allowed them to directly communicate with class members, many of whom are monolingual
Spanish-speakers. Schey ¶ Decl. ¶ 6; Holguin Decl. ¶ 5. Class member declarations were
essential to obtaining, among other things, a favorable ruling regarding the conditions at the CBP
stations. *See* July 24, 2015 Order, 212 F. Supp. 3d at 880–82. The Court is not convinced by
Defendants' assertion that other attorneys with Schey's and Holguin's knowledge, skills, and
experience with the Agreement and class members, were available at the statutory rate.

Accordingly, the Court **GRANTS** Plaintiffs' request to enhance the hourly rate of
attorneys Schey and Holguin.[4]

### ii.      Alice Bussiere and Kate Manning

Plaintiffs request enhanced attorneys' fees at a rate of $800 per hour and $543 per hour
for Bussiere and Manning, respectively. Defendants oppose any fee enhancement. They argue
that "Plaintiffs do not establish how counsel Bussiere and Manning's background in child
welfare matters was a distinctive skill set or knowledge base necessary to litigate the case, which
again, turned upon the application of the terms of the *Flores* Agreement." Opp. at 13.

---

[4] Defendants assert in a conclusory fashion that any enhanced "fees should be capped at no more than $500
per hour." Opp. at 14. But Defendants cite to *Thangaraja*, which is inapposite. In *Thangaraja*, unlike here, the
immigration attorney sought enhanced rates without establishing that he possessed distinctive knowledge or
specialized skill necessary to the case. Additionally, Defendants reliance on *Catholic Social Services vs. Napolitano*
does not undermine Plaintiffs' enhancement fee request. In *Catholic Services*, Plaintiffs' sought an enhanced fee of
$500 per hour, which the court awarded—it did not reduce a higher requested fee to that amount. *See* 837 F. Supp.
2d 1059, 1076 (E.D. Cal. 2011).

**CIVIL MINUTES—GENERAL**                    Initials of Deputy Clerk <u>KT</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | November 14, 2017 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 8 of 12 |
|---|---|---|---|

To the contrary, Bussiere has intimate knowledge regarding the Agreement and its background—she was an original signatory. *See* Agreement at 23. Her legal work has involved "enforcing licensing standards for children in community care facilities," and, in this case, her work involved analyzing the "application of licensing standards to accompanied children, factors that must be taken into consideration when children and parents are detained" and preparing "responses to the Defendants' assertions that federal family detention practices and standards were consistent with good child welfare practice." *See* Brussiere Decl. ¶ 4. Indeed, one of Plaintiffs' grounds for their motion to enforce was that the ICE facilities were unlicensed under the applicable standards. Thus, Bussiere possessed distinctive knowledge and specialized skill regarding the Agreement and class members that was not available elsewhere at the statutory rate.

In contrast to Bussiere, Manning was not an original signatory to the Agreement. To be sure, since graduating law school in 2003, she has represented children in various settings, including family court, juvenile court, and probate court. Manning Decl. ¶ 3. In 2009, she began representing undocumented youth who have been abused, abandoned or neglected by their parents, also known as Special Immigration Juvenile Status (SIJS) minors. *Id.* ¶ 4. While this experience may make her well-suited to work with class members in general, neither her declaration nor other evidence from Plaintiffs establishes how her specialized skills were "not available elsewhere at the statutory rate" and "needful to the litigation in question" at the stage of the proceedings relevant to the pending motion.

To summarize, the Court GRANTS Plaintiffs' enhanced-fee request as to Schey ($875), Holguin ($725), and Bussiere ($800). The request is DENIED as to Manning, who shall be awarded fees based on the inflation-adjusted EAJA rate ($190.06 for 2014; $190.28 for 2015; and $191.70 for 2016).

### 3.      Hours Reasonably Expended

Defendants argue that the court should impose across-the-board reductions to Plaintiffs' fee request due to block billing; vague entries; and time attorneys spent on clerical tasks, unnecessary travel, talking to the media, and in settlement discussions. Opp. at 15-18.

### i.      Block Billing

"Block billing" is "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 (9th Cir. 2007); *see also*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | November 14, 2017 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 9 of 12 |
|---|---|---|---|

*Mendez v. County of San Bernardino*, 540 F.3d 1109, 1128-29 (9th Cir. 2008) (block billing is a legitimate ground for reducing attorney hours claimed as excessive because such practices "frustrat[e] the Court's efforts to determine whether the fees were, in fact, reasonable"). Defendants "submit that approximately half of all attorneys' hours block billed and accordingly request that each attorney's hours be further reduced by ten percent. *See* Ex. B–I." Opp. at 18. For instance, one of the alleged impermissibly block-billed entries comes from Schey's billing on July 9, 2014 for 3 hours and 40 minutes of work and contains the following information: "Emails, telecons. Research re surge and Govt response." *See* Def. Ex. B at 12. This entry does not allow the Court to discern whether counsel expended a reasonable amount of time on the individual tasks identified. Such block-billed entries appear in the time records for Schey, Marchela Iahdijan, and Chapman Noam.

Although such block billing exists, it is hardly pervasive among all Plaintiffs' attorneys. The vast majority of entries are specific enough in their description of individual tasks for this court to assess reasonableness. The Court finds that a 5% across-the-board reduction in hours for block billing is appropriate as to attorneys Schey and Iahdijian, and legal assistant Noam.

### ii.     Vague Entries

Defendants also point to vague entries by attorneys Schey and Iahdijian, for which they seek a five-percent reduction. Attorneys seeking fee awards are "not required to record in great detail how each minute of [their] time was expended." *Hensley*, 461 U.S. at 437 n. 12. They need only "keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed." *Id.* at 441 (Burger, C.J., concurring); *United Steelworkers of Am. v. Ret. Income Plan For Hourly–Rated Employees of ASARCO, Inc.*, 512 F.3d 555, 565 (9th Cir. 2008) ("We have reviewed the relevant time records, and hold that they are sufficiently detailed for the district court to have made a determination of reasonableness.").

Here, the Court finds a reason to reduce the fee award slightly due to these "vague" entries. Such short descriptions as "Calls to/from the office," "Emails," and "Research," do not sufficiently permit the Court to evaluate the reasonableness of the time expended. *See* Def. Ex. B. These "vague" descriptions, however, are not as rampant as Defendants describe.

The Court finds a 2.5% across-the-board reduction as to Schey and Iahdijian's hours appropriate. *See* Opp. at 17 (requesting five percent reduction as to these two attorneys).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | November 14, 2017 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 10 of 12 |
|---|---|---|---|

### iii.    Clerical Tasks

Plaintiffs may not recover fees for time spent on purely clerical work.  *See Davis v. City of San Francisco*, 976 F.2d 1536, 1543 (9th Cir.1992) ("[P]urely clerical or secretarial tasks should not be billed at a paralegal [or lawyer's] rate, regardless of who performs them. . . .  [The] dollar value [of such non-legal work] is not enhanced just because a lawyer does it.") (internal quotation marks and citation omitted).

What Defendants characterize as "clerical tasks," however, involved activities that differ from the "purely clerical or secretarial tasks" in *Davis*.  For instance, the disputed entries include communicating with legal assistants regarding outreach to representatives of class members and how to describe to them the status of the case and next steps.  *See, e.g.*, Def. Ex. B (Schey entry for April 29, 2015).  An attorney's explanation to legal staff regarding the best way to communicate the status of the case to other parties is hardly "a purely clerical task."

Accordingly, the Court will not reduce Plaintiffs' fee request on the basis of alleged "clerical work."

### 4.    Travel Time

Defendants argue that Plaintiffs' counsel's fees should be reduced by 5-10 percent "because Plaintiffs do not demonstrate why local counsel could not be retained or otherwise relied upon to reduce the amount of travel required."  Opp. at 16–17.  To support their position, Defendants cite *Oregon National Desert Association v. McDaniel*, 2011 WL 4625715, at *4 (D. Or. Sept. 30, 2011).  *Oregon National* contains no analysis, however, with respect to fees for travel.  Defendants do not otherwise make any valid argument concerning why travel by Plaintiffs' counsel was excessive, redundant, or unnecessary.

The Court therefore denies Defendants' request to reduce Plaintiffs' counsel's hours or fees because of time spent traveling in connection with the litigation.

### v.    Media and Settlement Negotiations

Defendants assert that Plaintiffs' counsel's hours should be reduced by ten percent across the board because they include time "expended on issues that did not come before the court, such as general calls with advocates, and time responding to press releases."  Opp. at 18.  The only case Defendants cite to support this argument, *Hardisty v. Astrue*, 592 F.3d 1072, 1079 (9th Cir. 2010), says nothing about whether a prevailing party under the EAJA should receive attorneys'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | November 14, 2017 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 11 of 12 |
|---|---|---|---|

fees for time spent on media-related activities or settlement negotiations.  *Cf. Davis v. City of San Francisco*, 976 F.2d 1536, 1545 (9th Cir. 1992) ("Where the giving of press conferences and performance of other lobbying and public relations work is directly and intimately related to the successful representation of a client, private attorneys do such work and bill their clients. Prevailing civil rights plaintiffs may do the same."), *reh'g denied and opinion vacated in non-relevant part*, 984 F.2d 345 (1993).  Accordingly, Plaintiffs' attorneys' compensable time will not be reduced on this basis.

> ### vi.  Costs Related to Appeal

Plaintiffs request a total of $10,169.92 in costs.  *See* Mot. at 22; Schey Decl., Ex. C ($7,174.51 for expenses incurred by Center for Human Rights and Constitutional Law ("CHRCL")); Kazantzis Decl., Ex. B ($2,995.41 for expenses incurred by the Law Foundation of Silicon Valley – Legal Advocates for Children & Youth).

In its *Flores* opinion, the Ninth Circuit ordered that "[e]ach party shall bear its own costs."  *Flores*, 828 F.3d at 910.  Defendants therefore request all costs incurred after this Court issued its August 21, 2015 Order not be awarded to Plaintiffs.  Specifically, Defendants ask the Court to subtract $5,623.29 in costs from expenses incurred by CHRCL after the August 21, 2015 Order.[5]  They also ask that $697.81 in costs incurred by attorney Manning in May 2016 and June 2016 be subtracted from the request for costs.  *See* Kazantzis Decl., Ex. B.

Because Plaintiffs incurred these costs after the August 21, 2015 Order, and mostly in connection with its appeal before the Ninth Circuit, the Court will reduce Plaintiffs' request for costs by $6,321.10.  The Court awards Plaintiffs $3848.82 in costs ($10,169.92 – $6,321.10).
//
//
//

---

[5] Defendants arrived at this figure by subtracting the following pre-August 2015 amounts from the total costs requested by CHRCL:  $967.20 for May 11, 2015 flight; $76.82 in credit card charges from May 2015; $507.20 in travel expenses from January 6, 2015 ($7174.51 - $1,551.22 = $5623.29).  *See* Schey Decl., Ex. C.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | November 14, 2017 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 12 of 12 |
|---|---|---|---|

**III.**
**CONCLUSION**

In light of the foregoing, Plaintiffs' motion for attorneys' fees and costs is **GRANTED in part** and **DENIED in part**.  Defendants are ordered to pay Plaintiffs' attorneys' fees in the amount of $1,061,160.80 ($1,106,350.84 (requested amount) minus $45,190.04 (Court's reductions)).[6]  The Court orders Defendants to pay Plaintiffs in the amount of $3,848.82 in costs and expenses.  The parties' joint request for decision is **DENIED as moot**.  [Doc. # 382.]

**IT IS SO ORDERED**.

---

[6] Plaintiffs identify $1,180,729.20 as the requested total fee amount.  *See* Mot., Ex. 2.  But based on the Court's own calculations, Plaintiffs' pre-reduction total amounted to only $1,106,350.84.  *See* Court Exhibit 1.

**COURT EXHIBIT 1:  TOTAL FEE AWARDS AFTER COURT REDUCTIONS**

| Last | First | 2014 Hours | 2014 Fee Rate | 2015 Hours | 2015 Fee Rate | 2016 Hours | 2016 Fee Rate | Total Fees Before Reductions | Block Bill Reduction (5%) | Vague Entry Reduction (2.5%) | Total Fees After Reduction |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Schey | Peter | 46.75 | $875.00 | 372.45 | $875.00 | 236.8 | $875.00 | $574,000.00 | $28,700.00 | $14,350.00 | $530,950.00 |
| Holguin | Carlos | 254.59 | $725.00 | 171.69 | $725.00 | 6.39 | $725.00 | $313,685.75 | $0.00 | $0.00 | $313,685.75 |
| Iahdijan | Marchela | 0 | $190.06 | 109.8 | $190.28 | 0 | $191.70 | $20,892.74 | $1,044.64 | $522.32 | $19,325.78 |
| Noam | Chapman | 0 | $190.06 | 5.5 | $190.28 | 54.33 | $191.70 | $11,461.60 | $573.08 | $0.00 | $10,888.52 |
| Garcia | Elena | 58.26 | $190.06 | 104.56 | $190.28 | 54.52 | $191.70 | $41,420.06 | $0.00 | $0.00 | $41,420.06 |
| Molinski | William | 0.2 | $190.06 | 9.7 | $190.28 | 0 | $191.70 | $1,883.73 | $0.00 | $0.00 | $1,883.73 |
| Harman | T. Wayne | 13.3 | $190.06 | 137.6 | $190.28 | 0.7 | $191.70 | $28,844.52 | $0.00 | $0.00 | $28,844.52 |
| Manning | Kate | 35.1 | $190.06 | 170.1 | $190.28 | 4 | $191.70 | $39,804.53 | $0.00 | $0.00 | $39,804.53 |
| Bussiere | Alice | 5.1 | $800.00 | 54.6 | $800.00 | 5.5 | $800.00 | $52,160.00 | $0.00 | $0.00 | $52,160.00 |
| Corrigan | Virginia | 5.6 | $190.06 | 45.5 | $190.28 | 65.08 | $191.70 | $22,197.91 | $0.00 | $0.00 | $22,197.91 |
| **Totals** | | | | | | | | $1,106,350.84 | $30,317.72 | $14,872.32 | **$1,061,160.80** |