CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Peter A. Schey (Cal. Bar No. 58232)
Carlos Holguín (Cal. Bar No. 90754)
256 South Occidental Boulevard
Los Angeles, CA  90057
Telephone: (213) 388-8693
Facsimile: (213) 386-9484
Email: pschey@centerforhumanrights.org
          crholguin@centerforhumanrights.org

ORRICK, HERRINGTON & SUTCLIFFE LLP
Elena Garcia (Cal. Bar No. 299680)
egarcia@orrick.com
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone:  (213) 629-2020

*Attorneys for plaintiffs (listing continues on following page)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*,<br><br>              Plaintiffs,<br><br>     - vs -<br><br>JEFFERSON B. SESSIONS, ATTORNEY GENERAL OF THE UNITED STATES, *et al.*,<br><br>              Defendants. | Case No. CV 85-4544 DMG (AGRx)<br><br>PLAINTIFFS' RESPONSE TO DEFENDANTS' FIRST JUVENILE COORDINATORS' REPORTS [**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**]<br><br>[HON. DOLLY M. GEE]<br><br>Hearing: None<br>Time: n/a<br>Room: n/a |

1

2       *Plaintiffs' counsel, continued:*

3
        LA RAZA CENTRO LEGAL, INC.
4       Michael S. Sorgen (Cal. Bar No. 43107)
        474 Valencia Street, #295
5       San Francisco, CA 94103
6       Telephone: (415) 575-3500

7
        THE LAW FOUNDATION OF SILICON VALLEY
8       LEGAL ADVOCATES FOR CHILDREN AND YOUTH
        PUBLIC INTEREST LAW FIRM
9       Jennifer Kelleher Cloyd (Cal. Bar No. 197348)
10      Katherine H. Manning (Cal. Bar No. 229233)
        Annette Kirkham (Cal. Bar No. 217958)
11      152 North Third Street, 3rd floor
12      San Jose, CA 95112
        Telephone:  (408) 280-2437
13      Facsimile:   (408) 288-8850
14      Email: jenniferk@lawfoundation.org
15       kate.manning@lawfoundation.org
         annettek@lawfoundation.org
16
17      *Of counsel:*

18      YOUTH LAW CENTER
19      Virginia Corrigan (Cal. Bar No. 292035)
        832 Folsom Street, Suite 700
20      San Francisco, CA 94104
21      Telephone: (415) 543-3379

22

23

24

25

26

27

28

PLAINTIFFS' RESPONSE TO FIRST
JUVENILE COORDINATOR REPORTS        ii        CV 85-4544-DMG (AGRX)

## <u>Table of Contents</u>

I.  INTRODUCTION .................................................................. 1

II.  SECTION BY SECTION RESPONSE TO MONITORS' REPORTS .............. 3

A.  BORDER PATROL STATION CONDITIONS ..................................... 3

  1.  ACCESS TO FOOD ................................................................ 4

    a.  *June 2017 Order re CBP Food* ........................................... 4

    b.  *Juvenile Coordinator Report* ............................................. 4

    c.  *Class Members and Mothers Declarations regarding food based on Plaintiffs December 2017 monitoring* ............... 5

  2.  ACCESS TO CLEAN DRINKING WATER ..................................... 7

    a.  *June 2017 Order re Clean Water* ....................................... 7

    c.  *Class Members and Mothers Declarations re Food based on Plaintiffs December 2017 monitoring* ............... 8

  3.  UNSANITARY CONDITIONS ................................................... 10

    a.  *June 2017 Order re CBP unsanitary conditions* ................. 10

    b.  *Juvenile Coordinator Report* ........................................... 10

    c.  *Class Members and Mothers Declarations regarding unsanitary conditions based on Plaintiffs December 2017 monitoring* ............... 10

  4.  COLD TEMPERATURES ......................................................... 12

    a.  *June 2017 Order regarding CBP Cold Temperatures* .......... 12

    b.  *Juvenile Coordinator Report* ........................................... 12

    c.  *Class Members and Mothers Declarations regarding cold temperatures based on Plaintiffs December 2017 monitoring* ............... 13

  5.  SLEEPING CONDITIONS ....................................................... 14

    a.  *June 2017 Order regarding CBP sleeping conditions* .......... 14

    b.  *CBP Report* ................................................................ 14

    *c.    Class Members and Mothers Declarations regarding Sleeping Conditions based on Plaintiffs December 2017 monitoring* ...................................................14

**B.    FAILURE TO PROVIDE ADVISALS** ...........................................................16

    A.    JUNE 2017 ORDER REGARDING ADVISALS ...........................................16

    B.    CBP REPORT ......................................................................................16

    C.    ICE REPORT ......................................................................................16

    D.    CLASS MEMBERS AND MOTHERS DECLARATIONS REGARDING PROVISION OF ADVISALS BASED ON PLAINTIFFS DECEMBER 2017 MONITORING .................................17

**C.    EFFORTS TO RELEASE MINORS AND DETENTION IN SECURE, UNLICENSED FACILITIES** ...............................................................................18

    1.    FAILURE TO MAKE CONTINUOUS EFFORTS TO RELEASE MINORS .....................18

        *a.    June 2017 Order regarding Required Efforts Aimed at Release of Class Members* .......................................................................................18

        *b.    CBP Report* ..................................................................................19

        *c.    ICE Report* ..................................................................................19

        *d.    Class Members and Mothers Declarations regarding Efforts at Release based on Plaintiffs December 2017 monitoring* .................................................20

    2.    HOLDING CLASS MEMBERS IN SECURE, UNLICENSED FACILITIES.........................21

        *a.    June 2017 Order re secure, unlicensed facilities* .............................21

        *b.    ICE Reports.* .................................................................................22

        *c.    Defendants continue to hold class members in secure, unlicensed facilities in violation of the plain terms of the Agreement and this Courts repeated Orders* ....22

**D.    EXTENDED DETENTION OF CLASS MEMBERS** .....................................23

    A.    JUNE 2017 ORDER RE EXTENDED DETENTION OF CLASS MEMBERS .......................23

    B.    ICE REPORT ......................................................................................24

**IV.    CONCLUSION** .................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Flores v Sessions*, 862 F.3d 863 (9th Cir. 2017)...............................................................1

*Grassroots Leadership, Inc. v. Texas Dep't of Family and Protective Services (DFPS), et al*, D-1-GN-15-004336 (Travis County Dis. Crt. 2016).........................................23

**Statutes**

62 P.S. §§ 1001 et seq....................................................................................................23

62 P.S. §§ 901 et seq......................................................................................................23

**Other Authorities**

The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVRPA) ...................................................................................................................2

I.     INTRODUCTION

"The 'Flores Settlement' sets the minimum standards for the detention, housing, and release of non-citizen juveniles who are detained by the government, and obliges the government to pursue a 'general policy favoring release' of such juveniles." Flores v Sessions, 862 F.3d 863, 866 (9th Cir. 2017). According to Plaintiffs Motion to Enforce [Doc. #201], Defendants were in breach of the Flores Settlement ("Agreement") by, inter alia, "(1) continuing to detain class members in deplorable and unsanitary conditions in CBP facilities (also referred to as 'Border Patrol Stations'); (2) failing to advise class members of their rights under the Agreement; (3) failing to make and record ongoing efforts aimed at release or placement of class members; [and] (4) detaining class members for weeks or months in secure, unlicensed facilities …" [Doc. #363] Order Re Plaintiff's Motion to Enforce and Appoint a Special Monitor [201, 202], June 27, 2017 ("June 2017 Order") at 1.

The Court granted Plaintiffs' motion on the four claims mentioned above and ordered Defendants to come into compliance and nominate a Juvenile Coordinator to monitor compliance and provide reports to the Court. Id. at 33-34. This memorandum responds to the appointed monitors first reports.[1] These reports are inadequate, incomplete, and lacking in detail necessary to determine the extent of Defendants' compliance. The reports actually disclose non-compliance at a significant level. This is

---

[1] See U.S. Customs and Border Protection Juvenile Coordinator Report Regarding Flores Compliance in the Rio Grande Valley Border Patrol Sector ("CBP Report") [Doc. #384-1], and Report Of Juvenile Coordinator Deane Doughtery ("ICE Report") [Doc. # 384-2].

PLAINTIFFS' RESPONSE TO FIRST
JUVENILE COORDINATOR REPORTS                    CV 85-4544-DMG (AGRX)

confirmed by the approximately 60 class members and mothers who Plaintiffs interviewed as part of their monitoring in December 2017. Virtually all declarants provided sworn statements confirming Defendants' substantial non-compliance.[2]

This Administration has made clear in the White House's October 2017 "Immigration Principles and Policies" addressed to Congress exactly what President Trump wants in return for agreeing to a remedy for about 700,000 young DACA recipients (Dreamers). One of his core demands is that Congress must "[t]erminate the Flores Settlement Agreement …"[3] The Administration demands that Congress amend current law "to ensure the expeditious return of [unaccompanied minors] and family units." *Id*. In the Administration's mind, the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVRPA) and the *Flores* Agreement stand in the way of achieving its goal of "expeditious[ly]" deporting class members.

In light of this Administration's strenuous opposition to the *Flores* Settlement, Defendants' abysmal failure to adhere to the Court's June 2017 Order, and the newly

---

[2] There is no reason to believe the universe of class members and mothers interviewed by Plaintiffs based on random dates selected by the parties for detention site visits was experiencing anything different than the thousands of class members held in custody by Defendants since the Court issued its June 2017 Order.

[3] *See* White House, *Immigration Principles and Policies*, issued October 9, 2017, Section B(iii) (White House demand to "[t]erminate the Flores  Settlement Agreement (FSA) …") Available at https://www.scribd.com/document/361091383/Read-White-House-immigration-policies-and-principles; The White House insists that "loopholes" "prevent unaccompanied minors that arrive in the country illegally from being removed." *Id*. Rather than "being deported," class members are housed by the Department of Health and Human Services, "at taxpayer expense …" *Id*.

2

PLAINTIFFS' RESPONSE TO FIRST
JUVENILE COORDINATOR REPORTS                    CV 85-4544-DMG (AGRX)

developing policy and practice of separating apprehended mothers and children,[4] the need for judicial enforcement is more important than ever before in the history of this case. Based on the monitors' inadequate reports and the filed class member declarations, all showing Defendants' non-compliance with this Court's June 2017 Order, Plaintiffs intend to continue gathering information from class members pursuant to ¶ 32A of the Agreement, conduct site inspections pursuant to ¶ 33, seek copies of instructions issued by Defendants pursuant to ¶ 29A, and seek information regarding compliance pursuant to ¶ 29. Plaintiffs urge the Court to reject the Defendants' monitors' reports, set a briefing schedule for the parties to address Defendants' ongoing non-compliance and how an Order may be structured to finally achieve compliance with the Agreement and this Court's prior Orders, and schedule a hearing on the matter.

II.     SECTION BY SECTION RESPONSE TO MONITORS' REPORTS[5]

   A.     BORDER PATROL STATION CONDITIONS

---

[4] *See* CourtHouse News, Immigrant Parents Jailed in Texas Fight to Reunite With Kids, November 28, 2017, available at https://www.courthousenews.com/immigrant-parents-jailed-in-texas-fight-to-reunite-with-kids/; Houston Chronicle, *Trump moves to end 'catch and release', prosecuting parents and removing children who cross border, Questionable court policy separates parents, children*, November 25, 2017, available at http://www.houstonchronicle.com/news/houston-texas/houston/article/Trump-moves-to-end-catch-and-release-12383666.php; *see also* New York Times, December 21, 2017*, Trump Administration Considers Separating Families to Combat Illegal Immigration*, available at https://www.nytimes.com/2017/12/21/us/trump-immigrant-families-separate.html?_r=0

[5] For the convenience of the Court, the numbering of sections used in the following discussion matches the numbering in the Court's June 2017 Order.

PLAINTIFFS' RESPONSE TO FIRST
JUVENILE COORDINATOR REPORTS                    CV 85-4544-DMG (AGRX)

"Plaintiffs present voluminous testimony from class members … which attest to the unsafe and unsanitary conditions at the CBP facilities in five different categories: (1) inadequate *food*; (2) inadequate access to *clean drinking water*; (3) inadequate hygiene (*bathrooms, soap, towels, toothbrushes*); (4) *cold temperatures*; and (5) inadequate *sleeping conditions*." June 2017 Order at 7. The Court granted Plaintiffs' motion on these issues as to CBP facilities in the Rio Grande Valley Sector. *Id*. at 33.

### 1.     Access to Food

#### a.     June 2017 Order re CBP Food

The June 2017 Order concludes that "Defendants failed to provide [class members] with adequate access to food ... Additionally, the food provided must be in edible condition (not frozen, expired, or spoiled) and minors must have regular access to snacks, milk, and juice." June 2017 Order at 8 (internal quotation and citations omitted). The Court granted Plaintiff's motion to enforce as to the RGV Sector on the issue of adequate access to food. *Id.* at 10.

#### b.     Juvenile Coordinator Report

On one day, during a visit of unknown duration to the CBP Ursula facility, the Juvenile Coordinator "observed the preparation for the delivery of the second of three meals provided to minors ... The Juvenile Coordinator also saw the assortment of snacks, including fresh apples, and bottled water openly available to minors upon their

4

request." CBP Report at 7.[6] A single visit to one facility to observe a single meal provided to class members (without even identifying the type or quantity of food the meal consisted of, or the other meals served that day), is inadequate monitoring.

### c.   Class Members and Mothers Declarations regarding food based on Plaintiffs December 2017 monitoring

Exhibit 2 filed herewith includes excerpts from class members' and mothers' declarations obtained during several days of Plaintiffs' monitoring in December 2017. *See* Exhibit 1, Declaration of Peter Schey re December 2017 Flores Monitoring ("Exhibit 1"). The following are a small number of examples of class members' and mothers' declarations on the subject of food at CBP facilities.

Romanian national Luminita B███ is detained with her daughter, 12-year-old class member, Ducesa B███, at the South Texas Family Residential Center in Dilley, TX ("Dilley"). Luminita and her daughter were apprehended on November 18, 2017 after presenting themselves to Border Patrol Agents near McAllen, TX (Rio Grande Valley Sector) and then booked in to Dilley on November 21, 2017. Exhibit 1 ¶ 6. Luminita declares: "The food [at the CBP facility] was awful. It made both my daughter and me nauseated. I vomited repeatedly. I suffer from gastritis and told the guards that I had medication, but they would not let me access it. When I vomited in the waste basket

---

[6] The Juvenile Coordinator does not explain how he knows, other than by being told by Defendants, that snacks and bottled water are "openly" available to minors "upon their request."

PLAINTIFFS' RESPONSE TO FIRST
JUVENILE COORDINATOR REPORTS                CV 85-4544-DMG (AGRX)

in my cell, they would leave it there until midnight so that the cell smelled like vomit." Declaration of Luminita B██████, Ex. 21 ¶ 7.

Darinel L████████, an 18-year-old citizen of Guatemala, is detained at the Berks County Family Residential Center in Berks, Pennsylvania ("Berks"), with his son, class member Daladier L██████. On December 4, 2017, Darinel presented himself and his son to CBP agents at a port of entry near Tornillo, Texas (El Paso Sector) and were immediately taken into custody. Exhibit 1 ¶ 6. Darinel and his son were transferred to Berks 4 days later. Darinel declares: "At both of these [CBP] facilities, there was not enough food and my son suffered from hunger the whole time. At the CBP facility, they gave us a cup of soup each for every meal. The soup was just liquid, no solid food. My son was very hungry because he only drank one cup of soup for the first two days when where detained at that facility." Declaration of Darinel L██████, Ex. 63 ¶ 4.

Class member Maybelline E████████ is a 13-year-old national of El Salvador detained with her mother at the South Texas Family Residential Center in Dilley, TX. Maybelline and her mother were apprehended by Border Patrol Agents on November 18, 2017 near McAllen, TX (Rio Grande Valley Sector) and booked in to Dilley on or about November 21, 2017. Ex. 1 ¶ 6. Maybelline declares, "[t]he food at la perrera was terrible. We were given a flour tortilla with rice and beans twice a day.

PLAINTIFFS' RESPONSE TO FIRST
JUVENILE COORDINATOR REPORTS                    CV 85-4544-DMG (AGRX)

Although there was lettuce, the lettuce was spoiled." Declaration of Maybelline Es███

███, Ex. 24 ¶ 5.[7]

Exhibit 2, at 1-11, includes numerous additional excerpts of declarations

regarding the lack of food in CBP facilities.

### 2.   Access to Clean Drinking Water

#### a.   June 2017 Order re Clean Water

"… Defendants have not offered evidence based on records or a witness'

personal knowledge to contradict the specific accounts by Plaintiffs' witnesses of

inadequate water, both in quality and availability, during their CBP-facility detention."

---

[7] Martin F███████████ a citizen of Guatemala, is detained at the Berks County Family Residential Center in Berks, PA, with his daughter, 7-year-old Flores Class Member J████████████. On or about November 28, 2017, Martin and his daughter were apprehended by Border Patrol agents at the border near El Paso, Texas (El Paso Sector) and were immediately taken into custody. Martin reported that he and his daughter, "were very hungry the six days we were detained by CBP. Three times a day we were given cookies and the children were given some soup. My daughter would cry often because she was so hungry. A few times, I asked CBP officers for food and they said no because it's not time for food." Declaration of Martin F███████, Ex. 60 ¶ 6. Maria V████████████████, a citizen of Honduras, is detained at the Karnes County Residential Center in Karnes City, Texas, with her son, 12-year-old Flores Class Member Jose A████████████. On November 24, 2017 Maria presented herself at the Port of Entry between Juarez, Mexico and El Paso, Texas (El Paso Sector) and was immediately taken into custody. Maria and her son were then transferred to ICE custody on November 25, 2017 and arrived at Karnes two days later. Maria declares that by her second day in CBP custody, "I was very hungry by this point because I had not been given enough food to eat. My stomach also got sick and I got diarrhea from eating so much soup. This was difficult because the bathrooms were always full." Declaration of Maria V████████████, Ex. 36 ¶ 7.

PLAINTIFFS' RESPONSE TO FIRST
JUVENILE COORDINATOR REPORTS                    CV 85-4544-DMG (AGRX)

June 2017 Order at 12. "Plaintiffs' motion to enforce Paragraph 12A of the Agreement on the issue of access to clean drinking water is GRANTED**.**" *Id*. at 33.

### b.   CBP Juvenile Coordinator Report

The CBP Monitor dedicates only part of one sentence to report on the agency's compliance at one facility with the Court's June Order: "The Juvenile Coordinator … saw … bottled water openly available to minors upon their request." CBP Report at 7. This observation was made during a visit to the Ursula CBP station. *Id*.

### c.   Class Members and Mothers Declarations re Food based on Plaintiffs December 2017 monitoring

Bessy L███████████ is a Honduran national and mother detained with her three children, class members Katherine G███████████ (14 years old), Dixie Y███ ███████████ (11 years old), and Luis F███████████████ (9 years old), at the Dilley detention center. Exhibit 1 ¶ 6. Bessy and her children were apprehended on November 14, 2017 after entering near Calexico, California (El Centro Sector). *Id*. She reported that at the El Centro CBP facility, "[w]e were not given clean water to drink. We had to drink water from the bathroom sink with our bare hands, which were dirty since we were not able to wash them after toileting because there was no soap." Declaration of Bessy L███████████, Ex. 9 ¶ 5.

Mayra J███████████████ is a citizen of Guatemala and mother detained with her son, 4-year-old Flores Class Member, Dayron F███████████, at the South Texas Family Residential Center in Dilley, Texas. On November 14, 2017 Mayra and

PLAINTIFFS' RESPONSE TO FIRST
JUVENILE COORDINATOR REPORTS                    CV 85-4544-DMG (AGRX)

1  her son presented themselves to Border Patrol Agents at the port of entry in San Luis

2  Colorado, Arizona (Tucson Sector) and were immediately taken into custody. Exhibit 1

3  ¶ 6. She declares that while at the Tucson Sector CBP facility, "[t]he only water we had

4  to drink was from the tap on the sink in the bathrooms. There were no cups to drink

5  from, so we had to use our hands to drink. There was no soap for us to use to wash our

6  hands, so we were drinking from our dirty hands. This was all very strange and

7  uncomfortable for us." Declaration of Mayra J███████████████, Ex. 16 ¶ 13.[8]

8  

9  

10        Exhibit 2, at 11-13, includes numerous additional excerpts of declarations

11  regarding lack of access to clean water.

12  

13  

14  

15  

16  

17  _____

18  [8] Class member mother Damaris C██████████████, a citizen of Guatemala, is detained at Karnes with her two children, 3-year-old Missrai I█████████ and 9-year-old Linney S█████████████. Exhibit 1 ¶ 6. On November 16, 2017 Damaris and her children presented themselves to Border Patrol Agents and were immediately taken into custody. *Id.* She declares that during the three days she was in CBP custody in Arizona, she "drank water out of the sink and it tasted like it had chlorine." Declaration of Damaris C██████████ Ex. 29 ¶ 3. Class member Katherine G██████████ is a 15-year-old Guatemalan national detained with her mother, Bessie L██████████████, and two younger brothers, Luis F██████████ (9-years-old) and Dixie V██████████ (11-years-old), at Dilley. Katherine and her family were apprehended by CBP on November 14, 2017 near Calexico, CA (El Centro Sector) and transferred to ICE's San Diego District Staging facility on November 16, 2017 before arriving at Dilley the following day. Katherine declares that while detained in El Centro, "[w]e were not given clean water to drink. We had to drink water from the bathroom sink with our bare hands, which were dirty since we were not able to wash them after toileting because there was no soap." Declaration of Katherine G██████████, Ex. 20 ¶ 5.

9

PLAINTIFFS' RESPONSE TO FIRST
JUVENILE COORDINATOR REPORTS                    CV 85-4544-DMG (AGRX)

### 3.    Unsanitary Conditions

#### a.    June 2017 Order re CBP unsanitary conditions

"The Agreement certainly makes no mention of the words 'soap,' 'towels,' 'showers,' 'dry clothing,' or 'toothbrushes.'  Nevertheless, the Court finds that these hygiene products fall within the rubric of the Agreement's language requiring 'safe and sanitary' conditions and Defendants' own established standards." June 2017 Order, at 13.[9] "Plaintiffs' motion to enforce Paragraph 12A of the Agreement on the issue of unsanitary conditions is **GRANTED** as to all … CBP stations located within the RGV Sector … [T]he Court also orders compliance monitoring at CPC-Ursula." *Id*. at 33.

#### b.    Juvenile Coordinator Report

Based on a visit to the Ursula facility, the Juvenile Coordinator reports that he "saw the shower facility and the toiletries provided to minors, which included towels, toothbrushes, and toothpaste. He also saw the large inventory of clean clothing available for minors to wear …[and] saw that laundry services are available to minors arriving in wet and dirty clothing." CBP Report at 7.

#### c.    Class Members and Mothers Declarations regarding unsanitary conditions based on Plaintiffs December 2017 monitoring

Aurelia D█████████ is a mother and Romanian national detained with her 13-year-old son class member, Giovani D███████, at the South Texas Family Residential

---

[9] "There is an apparent disconnect between the CBP's standards and class members' experiences, all of whom describe unsanitary conditions with respect to the holding cells and bathroom facilities, and lack of privacy while using the restroom, access to clean bedding, and access to hygiene products (i.e., toothbrushes, soap, towels)." June 2017 Order at 12.

PLAINTIFFS' RESPONSE TO FIRST
JUVENILE COORDINATOR REPORTS                    CV 85-4544-DMG (AGRX)

Center in Dilley, TX. Aurelia was apprehended with her son on December 2, 2017 after presenting themselves to CBP near Brownsville, TX (Rio Grande Valley Sector) and booked in to Dilley on or about December 5, 2017. Exhibit 1 ¶ 6. She declared that "[p]rior to arriving at the Dilley Center, we were detained at another facility for approximately three days where there were no hygiene products. There was no soap, no water for washing our hands or face, no toothbrushes or toothpaste." Declaration of Aurelia D██████, Ex. 8 ¶ 3.

Class Member mother Jozelia d███████████ is a citizen of Brazil detained with her daughter, Evelyn d█████████ at the South Texas Family Residential Center in Dilley, TX. Jozelia and her daughter were taken into custody by CBP on November 22, 2017 after they presented themselves at the U.S. port of entry at Juarez, Mexico (El Paso Sector). Exhibit 1 ¶ 6. Jozelia declares that "[a]fter we went to the immigration authorities, they took us … to a facility that was damp, cold, and dirty. The toilet was inside the cell with us. No one could bathe. The smell was very bad. One woman had been there for four days with her one-year-old daughter, without being able to bathe. There were eight people in the cell with us, women and children from babies to a girl who was 16 years of age." Declaration of Jozelia d█ Oliveira Rodriguez, Ex. 18 ¶ 3.

Class Member Maybelline E█████████ was detained at a CBP facility near McAllen, TX and declared that while there, "[W]e were taken to a holding facility that is referred to [as] the *hielera* – the freezer, for about 6 hours. The conditions were very

PLAINTIFFS' RESPONSE TO FIRST
JUVENILE COORDINATOR REPORTS                    CV 85-4544-DMG (AGRX)

crowded and the sanitation system was not working well…". Declaration of Maybelline E███████, Ex. 24 ¶ 3 (detained 20 days).[10]

Exhibit 2, at 13-20, includes numerous additional excerpts of declarations regarding unsanitary conditions in various CBP facilities.

**4.    Cold Temperatures**

**a.    June 2017 Order regarding CBP Cold Temperatures**

"Plaintiffs present evidence that recent child detainees experienced extremely cold temperatures at the CBP stations.  Just like the declarants cited in the Court's July 24, 2015 Order, many continue to describe the CBP facilities as hieleras or 'iceboxes.'" June 2017 Order at 15. "Plaintiffs' motion to enforce Paragraph 12A of the Agreement on the issue of temperature control is **GRANTED."** *Id*. at 33.

**b.    Juvenile Coordinator Report**

---

[10] Rigoberto L███████, a citizen of Guatemala, is detained at the Berks County Family Residential Center in Berks, PA, with his son, 4-year-old Flores Class Member Gregorio L████. On or about December 10, 2017, Rigoberto and his son presented themselves to Border Patrol agents at the border near El Paso, Texas (El Paso Sector) and were immediately taken into custody. Rigoberto and his son were not transferred to Berks until December 20, 2017, 10 later. Rigoberto declared that "[a]t both [CBP] facilities [I was detained at before Berks], there was only one toilet for about eight people. There was no soap to wash our hands.  There were showers but we were not given any soap or shampoo to shower." Declaration of Rigoberto L███████, Ex. 56 ¶ 10. Class member mother Bessy L███████ declares that "[p]rior to arriving at the Dilley Center, we were detained [by CBP] at another facility [in El Centro] for three days where there were no hygiene products. There was no soap to wash our hands, no toothbrushes or toothpaste. We went the whole time without washing or bathing. We had no clean clothes." Declaration of Bessy L███████, Ex. 9 ¶ 3.

12

The monitor's report does not appear to confirm any monitoring of temperatures where class members are detained.

### c. Class Members and Mothers Declarations regarding cold temperatures based on Plaintiffs December 2017 monitoring

Class Member Mother Mayra J█████████████████ reported that while detained at a CBP facility in the Tucson Sector, "[i]t was very, very cold in this cell and many of the children were sick. Some had fevers, but they did not receive medical care... I asked them to turn down the temperature, but they refused." Declaration of Mayra J██████████████, Ex. 16 ¶ 9.

Alma S█████████████ is a 17-year-old class member and Honduran national detained with her mother at Dilley. On or about November 15, 2017, she was in CBP custody after crossing the Rio Grande River. She declares: "[The facility] was extremely cold. Since we had crossed the Rio Grande on inner tubes our clothes were wet when we were taken into detention. We were not offered any dry clothes for the two days and two nights we were there; they just gave us each a space blanket, which barely helped at all." Declaration of Alma S█████████████, Ex. 6 ¶ 3. She goes on to state that "it was very cold in the [Ursula CBP facility in McAllen]. They gave us space blankets, but they were not sufficient to keep ourselves warm. In the perrera, I saw a number of small children who were having respiratory problems due to the cold air. They had colds and were coughing a lot." Declaration of Alma S█████████████ ██████, Ex. 6 ¶ 14.

PLAINTIFFS' RESPONSE TO FIRST
JUVENILE COORDINATOR REPORTS                    CV 85-4544-DMG (AGRX)

Class Member mother Aurelia D█████ reported that while detained at a CBP facility in the Rio Grande Valley sector, "[i]t was so cold that our teeth would hurt and our throats would hurt. We were given nothing but a plastic blanket to keep us warm. I asked the guards to please turn down the air conditioner, but they refused." Declaration of Aurelia D█████, Ex. 8 ¶ 5.

Exhibit 2, at 20-27, includes numerous additional excerpts from class member declarations describing the unhealthy and cold temperatures in various CBP facilities.

**5.     Sleeping Conditions**

    **a.     June 2017 Order regarding CBP sleeping conditions**

"Defendants [evidence] … does not undercut the credibility of the assertions made by numerous detainees regarding sleeping conditions ..." June 2017 Order at 17. "Plaintiffs' motion to enforce Paragraph 12A of the Agreement on the issue of sleeping conditions is **GRANTED** as to all non-CPC-Ursula CBP stations within the RGV Sector ...." *Id*. at 33.

    **b.     Juvenile Coordinator Report**

The CBP monitor ignored his obligation to monitor and report on sleeping conditions of class members in custody in the RGV Sector.

    **c.     Class Members and Mothers Declarations regarding Sleeping Conditions based on Plaintiffs December 2017 monitoring**

Class Member mother Dinora E█████████ declared that during the three days she spent in CBP custody, "[i]t was extremely crowded at the

14

1  holding center. My daughter and I were first brought to a cell measuring about 40

2  square meters. I estimate there were about 60 people in that small area. There was not

3  enough space for everyone to lie down, so some people had to try to sleep while

4  seated." Declaration of Dinora E█████████████████████, Ex. 12 ¶ 7.

5

6      Flores Class Member Alma S████████████ declared that the first CBP

7  facility she was detained at in McAllen, TX, "…was extremely difficult to sleep at…

8  Everyone had to sleep on the floor, which was made of cement and was both hard and

9  cold. They kept the lights on full strength all night long." Declaration of Alma S█████

10 █████████, Ex. 6 ¶ 6.

11     Ducesa B█████ is a 12-year-old class member and Romanian national detained

12 with her mother at Dilley. She declares that while in CBP custody in November 2017,

13 "[i]t was very cold in [our] cell. We were each given a metallic blanket, but no mats.

14 We had to sleep on the concrete floor. There were many of us in a very small space. I

15 can't count how many there were. We were all sitting right next to each other, touching

16 shoulder to shoulder." Declaration of Ducesa B█████, Ex. 13 ¶ 4.

17     Blanca E████████████ is a citizen of El Salvador and mother

18 detained with her three children at Dilley. She had been in DHS custody for 43 days

19 when she declared: "[At] [t]he first [CBP facility in McAllen] … [t]here were no

20 private bathrooms. We were packed in a cell with at least forty other women, plus their

21 children. There were two benches; whoever was there first got a seat. My son had to

22 sleep by the garbage can." Dec. of Blanca E██████████████, Ex. 10 ¶ 4.

15

PLAINTIFFS' RESPONSE TO FIRST
JUVENILE COORDINATOR REPORTS                CV 85-4544-DMG (AGRX)

Exhibit 2, at 27-33, includes numerous additional excerpts of class member declarations regarding continuing sleep deprivation in CBP facilities.

B.    FAILURE TO PROVIDE ADVISALS

**a.    June 2017 Order regarding Advisals**

"… Paragraph 24D … requires Defendants to provide class members with three rights advisals: "(a) INS Form I-770, (b) an explanation of right of judicial review… and (c) the list of free legal services available in the district pursuant to INS regulations (unless previously given to a minor)." June 2017 Order at 18. "Plaintiff's motion to enforce Paragraph 24D with regard to the requirements that Defendants provide class members with a list of legal services and the Notice of Right of Judicial Review (Exhibit 6) is **GRANTED**." *Id*. at 34.

**b.    CBP Report**

The report does not mention compliance with notice requirements. These advisals should be distributed by CBP after taking class members into custody.

**c.    ICE Report**

At the Dilley, Karnes and Berks facilities, the monitor reports that all class member files reviewed "showed that the Notice of Advisals [Agreement Exhibit 6] was provided to class members ..." ICE Report at 4-5. However, the ICE Report does *not* address the provision of lists of available free legal services required by Paragraph 24D(c) of the Agreement. The Court found that Plaintiffs provided "sufficient evidence

16

of substantial non-compliance, namely declarations from class members … stating that

they never received a list of legal counsel or services." June 2017 Order at 19.

> ### d. Class Members and Mothers Declarations regarding Provision of Advisals based on Plaintiffs December 2017 monitoring

17-year-old Flores Class Member Katya J█████████████████, a

citizen of El Salvador, was detained with her father at Ursula. On December 6, 2017,

Katya and her father presented themselves to Border Patrol agents after crossing the Rio

Grande River into the United States. Exhibit 1 ¶ 6. Katya declares: "Since arriving at

this facility [Ursula], no one has given me information about my rights as a *Flores* class

member.  I have not received a list of attorneys. I have not had the opportunity to call an

attorney or to call any family members. My father was … not able to speak to an

attorney … We want to be able to tell our story because we are afraid to return …"

Declaration of Katya J█████████████████, Ex. 42 ¶ 6.

Class member Alma S█████████████ declares that at the CBP facility

where she was detained in McAllen, TX, "[m]y mother and I were told nothing about

any rights that we had. I did not see any written notice of our rights, and my mother

tells me that she did not see any written notice either." Declaration of Alma S█████

█████████, Ex. 6 ¶ 8.

Class Member mother Blanca E█████████████ declares that during

the two days she was in CBP custody in McAllen, TX, "nobody gave us any

PLAINTIFFS' RESPONSE TO FIRST
JUVENILE COORDINATOR REPORTS                    CV 85-4544-DMG (AGRX)

explanation of any rights whatsoever. Nor could I make a call." Declaration of Blanca E███████████████, Ex. 10 ¶ 5.

Exhibit 2, at 33-40, includes numerous additional excerpts of declarations regarding Defendants' failure to provide a current list of available free legal services.

C.   EFFORTS TO RELEASE MINORS AND DETENTION IN SECURE, UNLICENSED FACILITIES

**1.   Failure to Make Continuous Efforts to Release Minors**

**a.   June 2017 Order regarding Required Efforts Aimed at Release of Class Members**

"… [T]he Agreement requires ICE to (1) 'release a minor from its custody without unnecessary delay' to a parent, a legal guardian, or other qualified adult custodian, except where the detention of the minor is required 'either to secure his or her timely appearance before the INS or the immigration court, or to ensure the minor's safety or that of others'; and (2) *'[u]pon taking a minor into custody, . . . [to] make and record prompt and continuous efforts on its part toward family reunification and the release of the minor . . . .'"* June 2017 Order, at 20 (emph. added).[11] Defendants must "make individualized determinations regarding a minor's risk of absconding." *Id*., at 23,

---

[11] The Settlement also requires that children *not* released pursuant to Paragraph 14 be placed in a licensed program provided for by ICE. Settlement ¶ 19. To date, ICE does not have a single contract Class Counsel is aware of to place children pursuant to Paragraph 19 of the Settlement. We have repeatedly raised this concern with the Court. *See, e.g*. Doc. #289-2, Plaintiffs' Supplemental Brief in Support of Motion to Enforce Settlement and Appoint a Special Monitor ("Plaintiffs Supp. Brief") at 16.

PLAINTIFFS' RESPONSE TO FIRST
JUVENILE COORDINATOR REPORTS                    CV 85-4544-DMG (AGRX)

citing Agreement ¶ 14.[12] "Plaintiffs' motion to enforce Paragraphs 14, 18, 19, and 23 of the Agreement on the issue of whether Defendants are making and recording continuous efforts to release class members or place them in non- secure, licensed facilities in accordance with the Agreement is **GRANTED."** *Id*. at 34.

### b.   CBP Report

The CBP Report says nothing about compliance with Paragraphs 14, 18, 19, and 23 of the Agreement. Class member declarations confirm that CBP is *not* complying with Paragraphs 14, 18, 19, and 23, even though compliance must commence "upon taking a minor into custody."

### c.   ICE Report

According to the ICE Report, at all ICE facilities (South Texas Dilley, Karnes and Berks), all class member files reviewed "contained a Parole Determination Worksheet with information relating to the individual parole determinations made in each class member's case." ICE Report, at 3-5.

The monitor did not provide copies of the Parole Determination Worksheets she reviewed. Neither the Court nor class counsel has any idea what the Parole Determination Worksheets actually say. All that we know is that the ICE monitor believes that completed Parole Determination Worksheets were "appropriately

---

[12] "To be clear … the Court will order Defendants to comply with the unambiguous charge of the *Flores* Agreement to make individualized determinations regarding a minor's flight risk rather than blanket determinations." June 2017 Order at 25.

PLAINTIFFS' RESPONSE TO FIRST
JUVENILE COORDINATOR REPORTS                    CV 85-4544-DMG (AGRX)

completed." Dkt. 384-2 at p. 6.[13] On its face, the Parole Determination Worksheet captures information inconsistent with the release provisions of the Agreement, and omits factors that must be considered under the Agreement.

### d.   Class Members and Mothers Declarations regarding Efforts at Release based on Plaintiffs December 2017 monitoring

Class Member mother Blanca E████████████████, who had been detained with her children for 43 days at the time her declaration was executed, declared that, "I never heard that my kids could have left before me. I wish that someone had because I would have let them go to my family here." Declaration of Blanca E████████████, Ex. 10 ¶ 10.

Class member mother Iris A████████ had been in DHS custody for 32 days when Iris declared, "[a]t no time has anyone asked me whether I would like my son to be released to a relative or friend in the United States. I have not been informed that that is an option." Declaration of Iris A████████, Ex. 15 ¶ 7.

Flores Class Member Maybelline Estrada Posada reported that, "[a]t no time has anyone asked me or my mother whether I would like to be released to my father or older sister who live in the United States. My father lives in Arkansas and [m]y 23-year old sister lives in New Jersey. Neither my mother nor I have been informed that that is an option." Declaration of Maybelline E████████, Ex. 24 ¶ 6.

---

[13] The report provides no explanation of what the Monitor means by "appropriately completed," nor are copies of any of the "appropriately completed" forms provided for the Court's or Class Counsel's review.

PLAINTIFFS' RESPONSE TO FIRST
JUVENILE COORDINATOR REPORTS                    CV 85-4544-DMG (AGRX)

Silvia S███████, mother of a Flores Class Member, reported that, "I am planning to live with my brother in Louisiana after I am released. No one has asked me if I would want my daughter to be released to him or anyone else instead of continuing to be detained." Declaration of Silvia S████ ████████, Ex. 39 ¶ 3.

Exhibit 2, at 40-43, includes numerous additional excerpts of declarations regarding Defendants' failure to implement Paragraphs 14, 18, 19, and 23 of the Agreement.

## 2.   Holding class members in secure, unlicensed facilities

### a.   June 2017 Order re secure, unlicensed facilities

"Defendants do not dispute that the family residential centers continue to be unlicensed." June Order at 28. As this Court has now held twice: "'The fact that the family residential centers cannot be licensed by an appropriate state agency simply means that, under the Agreement, class members cannot be housed in these facilities except as permitted by the Agreement.'" June 2017 Order at 29, *quoting* July 24, 2015 Order, 212 F. Supp. 3d at 877. "[T]he Court *once again* finds that because the family residential centers are secure, unlicensed facilities, Defendants cannot be deemed in substantial compliance with the Agreement." *Id*. (emphasis added).[14] Plaintiffs' motion

---

[14] The Agreement provides that "[i]n any case in which the INS does not release a minor pursuant to Paragraph 14, ... [e]xcept as provided in Paragraphs 12 or 21, such minor shall be placed temporarily in a licensed program . . . ." Agreement ¶ 19. Such placement must happen "as expeditiously as possible." *Id*.

PLAINTIFFS' RESPONSE TO FIRST
JUVENILE COORDINATOR REPORTS                    CV 85-4544-DMG (AGRX)

that Defendants fail to hold class members in "non- secure, licensed facilities in accordance with the Agreement is **GRANTED."** *Id.* at 34.

### b.   ICE Reports.

The ICE monitoring report fails to address whether the Juvenile Coordinator in fact monitored whether the ICE facilities at Karnes, Dilley and Berks continue to violate the Agreement by holding minors who are neither a substantial flight risk nor a danger to themselves or others in secure, unlicensed facilities.

### c.   Defendants continue to hold class members in secure, unlicensed facilities in violation of the plain terms of the Agreement and this Courts repeated Orders

Disregarding the Agreement and this Court's two previous Orders on the matter, Defendants continue to hold class members in secure unlicensed facilities with no regard to the exceptional circumstances under the Agreement in which they may detain class members in secure facilities.

Defendants' facilities at Karnes, Dilley and Berks remain secure. *See* Exhibit 3, Declaration of Virginia Corrigan, ¶¶ 2-6; Exhibit 4, Declaration of Bridget Cambria ¶¶ 2-5. In violation of the Court's June 2017 Order, Dilley and Karnes continue to operate without a license.[15]. On December 6, 2016, the Travis County District Court "enjoined the State from issuing a license to Dilley or any other facility," and held the proposed rule "contravenes Texas Human Resources Code § 42.002(4) and runs counter

---

[15] Doc. #201-2, Declaration of Robert Doggett, at 131-136

PLAINTIFFS' RESPONSE TO FIRST
JUVENILE COORDINATOR REPORTS                    CV 85-4544-DMG (AGRX)

1   to the general objectives of the Texas Human Resources Code and is therefore

2   invalid."[16] This order remains in effect.

3        The Berks facility's operating license was revoked by the Pennsylvania

4   Department of Human Services in January 2016.[17] On April 20, 2017, an

5   Administrative Judge temporarily reinstated the license. The Department of Human

6   Services filed a petition for reconsideration on May 5, 2017. Petition for

7

8   Reconsideration, Dept. of Human Services, Bureau of Hearings and Appeal, BHA

9   Docket No. 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 (May 5, 2017). Plaintiffs believe the petition is pending.

10        D.     EXTENDED DETENTION OF CLASS MEMBERS

11

12             a.     June 2017 Order re extended detention of class members

13        Nothing in the Flores Settlement states, explicitly or implicitly, that there is a "20

14   day average" detention rule regarding compliance with the release provisions of the

15

16   Agreement.[18] "Paragraphs 12A and 14 of the *Flores* Agreement … require [ ] that

17

18

---

19   [16] The Texas Department of Family and Protective Services (DFPS) has acknowledged
20   egregious violations at Dilley and Karnes. Despite these violations, DFPS
     unsuccessfully attempted to bypass routine licensing requirements for facilities housing
21   minors by enacting new licensing rules. *Grassroots Leadership, Inc. v. Texas Dep't of
     Family and Protective Services (DFPS), et al*, D-1-GN-15-004336 (Travis County Dis.
22   Crt. 2016); *see also* Dkt. 201-2, Declaration of Robert Doggett, at 131-136.
23   [17] "The Department of Human Services (Department) is not renewing the certificate of
24   compliance issued to the Berks County Commissioners to operate the Berks County
     Residential Center as a child residential facility pursuant to the Article IX of the
25   Human Services Code, 62 P.S. §§ 901 et seq., Article X of the Human Services Code,
26   62 P.S. §§ 1001 et seq., and 55 Pa. Code Chaps. 20 and 3800." Doc. #201-6, Ex. 60, at
     47.
27   [18] As noted above, ¶ 18 provides: "*Upon taking a minor into custody*, the [Defendants]
28   … shall make and record the prompt and continuous efforts … toward family

23

Defendants release class members 'without unnecessary delay' to certain adults, or
place them in a licensed program …" June 17, 2017 Order at 29. In light of "statistics
[the Court examined] … and the fact that use of the expedited removal procedure does
not automatically render the Agreement's preference-for-release provision inapplicable,
the Court finds Plaintiffs have established Defendants' substantial noncompliance with
Paragraphs 12A and 14 of the Flores Agreement ..." *Id*. at 31. Accordingly, "the Court
GRANTS Plaintiffs' motion to enforce these paragraphs of the Agreement on the
length-of-detention issue." *Id*.

### b.    ICE Report

For all three detention sites the ICE Report states that for about three weeks
starting November 1, 2017, the ICE facilities submitted weekly reports to the
Juvenile Coordinator of class members "who had been at the facility for more than
20 days … [with] an explanation for the continued detention." ICE Report at 3-5
(under headings "Releasing Class Members As Expeditiously as Possible").[19]

The ICE Report states that "1,416 class members [were] detained at ICE's three
FRC during this reporting period [November 1-18, 2017]." ICE Report at 6. Of these,

_____

reunification and the release of the minor pursuant to Paragraph 14 above. Such efforts
… *shall continue so long as the minor is in custody*." *Id*.  (emphasis added).

[19] The Juvenile Coordinator states that "[t]he majority of cases detained over 20 days
[this could be anything between 51% and 99% of the cases] were due to
circumstances including: lack of sponsor; delay in transportation arrangements by
the resident or sponsor; a parent requesting to not be separated from his or her
child …; and flight risk factors including a final order of removal and limited
equities in the United States." *Id*.

24

923 class members "were held in DHS custody for 20 days or more …" *Id*. In short, about 65% of class members were detained for 20 or more days.[20] In any event, the report does not explain how it arrives at an "average" length of stay of "20.85" days. Defendants "average" argument is meaningless because it appears they only take into account residents booked and released. They do not take into account class members not released. *See* June 17, 2017 Order at 30 ("What is more, Defendants' length-of-stay statistics only account for individuals already released."). Neither the Court nor the Plaintiffs have been provided with copies of the class members' Parole Determination Worksheets or the "explanation[s] for the continued detention[s]" beyond 20 days reviewed by the monitor, so the Court and Plaintiffs have *no idea* why the majority of class members continue to be detained for longer than 20 days.

IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully urge the Court to reject the Defendants' monitors' reports, set a briefing schedule for the parties to address Defendants' persistent non-compliance and how an Order may be structured to actually achieve compliance with the Agreement and this Court's June 2017 Order, and schedule a status conference or hearing on the matter.

Dated: January 8, 2018                    Respectfully submitted,

                                          CENTER FOR HUMAN RIGHTS &
                                          CONSTITUTIONAL LAW

---

[20] The ICE Report provides no numbers showing how many class members were, for example, detained for 20-30 days, or 30-60 days, or longer.

25

1

2

               Peter A. Schey
               Carlos Holguín

3

4

               ORRICK, HERRINGTON & SUTCLIFFE LLP
               Elena García

5

6

               LA RAZA CENTRO LEGAL, INC.

7

               Michael Sorgen

8

9

               LAW FOUNDATION OF SILICON VALLEY -
               LEGAL ADVOCATES FOR CHILDREN & YOUTH
               Jennifer Kelleher Cloyd

10

               Katherine H. Manning

11

               Annette Kirkham

12

13

               Of counsel:

14

15

               YOUTH LAW CENTER
               Virginia Corrigan

16

               /s/*Peter Schey*_____

17

               *Attorneys for Plaintiffs*

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' RESPONSE TO FIRST
JUVENILE COORDINATOR REPORTS          CV 85-4544-DMG (AGRX)

CERTIFICATE OF SERVICE

I, Peter Schey, declare and say as follows:

I am over the age of eighteen years of age and am a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 256 S. Occidental Blvd., Los Angeles, CA 90057, in said county and state.

On January 8, 2018, I electronically filed the following document(s):

- PLAINTIFFS' RESPONSE TO DEFENDANTS' FIRST JUVENILE COORDINATORS' REPORTS [**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**]

with the United States District Court, Central District of California by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/*Peter Schey*
*Attorney for Plaintiffs*