## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY LISETTE FLORES; *et al.*, | ) Case No. CV 85-4544-DMG |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| ERIC H. HOLDER, JR., Attorney | ) |
| General of the United States; *et al.,* | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

### REPORT OF JUVENILE COORDINATOR DEANE DOUGHERTY SUBMITTED BY IMMIGRATION AND CUSTOMS ENFORCEMENT

On June 27, 2017, the Court ordered Defendants to appoint Juvenile Coordinators to monitor their component's compliance with the Flores Settlement Agreement (FSA) and, in response, Immigration and Customs Enforcement (ICE) timely named Deane Dougherty. In addition to identifying Ms. Dougherty, ICE also explained that it would spot check five percent of its records to ensure class members were timely notified of their rights, promptly and continuously considered for release, and expeditiously released if parole or placement was not made. On October 18, 2017, the Court ordered quarterly reporting from the Juvenile Coordinators with the first report due December 1, 2017. The second quarterly report is due March 2, 2018.

The Court's June 27, 2017 Order identified three areas of noncompliance for ICE relating to: (1) the Notice of Advisals and the free legal service providers list; (2) prompt and continuous efforts to release/parole FSA class members; and (3) releasing class members as expeditiously as

1

possible. In order to monitor compliance in these areas, ICE implemented new practices and

created additional forms to ensure accountability. Specifically, ICE created two forms to gather

data on release/parole determinations. The first is entitled the Parole Worksheet, and it gathers

information regarding individual parole determinations for class members, including the basis for

any parole decision. The second document is the Family Sponsor Contact Form, which gathers

data regarding potential sponsors that may be willing to assist in housing class members. In

addition, to assist in reporting on the compliance issues, ICE created a web-based repository to

facilitate the collection and review of the compliance data and forms. The current report covers

ICE's compliance at its three Family Residential Centers (FRC) between November 19, 2017

and January 31, 2018.

### I.   South Texas Family Residential Center (STFRC)

During the reporting period, STFRC housed approximately 3,057 class members. Five

percent of this number is 153 individuals. This is the number of files ICE committed to

reviewing to verify its compliance with providing the pertinent notices and making and recording

prompt and continuous efforts to release class members.

### a)   Notice of Advisals and List of  Legal Service Providers

Of the 153 files reviewed, all files showed that the Notice of Advisals and a copy of the

list of legal service providers were provided to class members.  All 153 files contained a copy of

the Notice of Advisals, which is Exhibit 6 in the FSA, and a copy of the list of legal service

providers signed by a parent or legal guardian.  There were no instances of a refusal to sign by a

parent or class member who is old enough (i.e., 14 years of age) to sign for themselves, and 3

forms that were signed by a class member over the age of 14. Accordingly, ICE appears to have

fully complied with the requirement to provide the Notice of Advisals and list of legal service providers to all class members at STFRC.

### b)      Make and Record Prompt and Continuous Efforts Toward Release

Of the 153 files reviewed, all files showed that a parole determination was made. All 153 files contained a Parole Determination Worksheet with information relating to the individual parole determinations made in each class member's case.

### c)      Releasing Class Members As Expeditiously as Possible

Starting November 1, 2017, STFRC submitted a list to the Juvenile Coordinator every Monday of class members who had been at the facility for more than 20 days which included an explanation for the continued detention. The Juvenile Coordinator reviewed these weekly reports and concurred with the continued detention in each case. The majority of cases detained over 20 days were due to circumstances including: lack of sponsor; delay in transportation arrangements by the resident or sponsor; a parent requesting to not be separated from his or her child despite the child being eligible for parole; and flight risk factors including a final order of removal and limited equities in the United States.

## II.      Karnes Family Residential Center (KFRC)

During the reporting period, KFRC housed approximately 1,434 class members. Five percent of this number is 72 individuals. This is the number of files ICE committed to reviewing to verify its compliance with providing pertinent notices and making and recording prompt and continuous efforts to release class members.

**a)        Notice of Advisals and List of Legal Service Providers**

Of the 72 files reviewed, 72 files showed that the Notice of Advisals was provided to class members and 72files showed a copy of the list of legal service providers was provided to class members. Of these files, 72 contained a copy of the Notice, which is Exhibit 6 in the FSA, and a copy of the list of legal service providers signed by a parent or legal guardian.  There were 0 instances of a refusal to sign by a parent or class member who is old enough (i.e., 14 years old) to sign for themselves.  Five files contained a completed Notice of Advisals and a copy of the list of legal service providers with only a fingerprint, but no signature.  The Juvenile Coordinator will ensure that ICE facility staff will properly annotate the circumstances under which 'fingerprint signatures' occur in the future (e.g., when a person cannot write their name).  Accordingly, ICE appears to have fully complied with the requirement to provide the Notice of Advisals to all class members at KFRC.

**b)        Make and Record Prompt and Continuous Efforts Toward Release**

Of the 72 files reviewed, 72 files showed that a parole determination was made in the class member's case. Of these files, 72 contained a Parole Determination Worksheet with information relating to the individual parole determinations made in each class member's case. In addition, 72 files contained a facility-specific family sponsor contact forms.

**c)        Releasing Class Members As Expeditiously as Possible**

Stating November 1, 2017, KFRC submitted a list to the Juvenile Coordinator every Monday of class members who had been at the facility for longer than 20 days which included an explanation of the continued detention. The Juvenile Coordinator reviewed these weekly reports and concurred with the continued detention in each case. The majority of cases detained over 20 days were due to circumstances including: lack of sponsor; delay in transportation arrangements

by the resident or sponsor; a parent requesting to not be separated from his or her child despite the child being eligible for parole; and flight risk factors including a final order of removal and limited equities in the United States

### III.    Berks Family Residential Center (BFRC)

During the reporting period, BFRC housed 127 class members. Five percent of this number amounted to seven individuals. This is the number of files ICE committed to reviewing to verify its compliance with providing pertinent notices and making and recording prompt and continuous efforts toward release.

### a)    Notice of Advisals and List of Legal Service Providers

Of seven files reviewed, seven showed that the Notice of Advisals and the list of legal service providers were provided to class members.  All seven files contained a copy of the Notice, which is Exhibit 6 in the FSA, and the list of legal service providers signed by the parent and also signed by the class member who was over the age of 14.  Accordingly, ICE appears to have fully complied with the requirement to provide the Notice of Advisals and list of legal service providers to all class members at BFRC.

### b)    Make and Record Prompt and Continuous Efforts Toward Release

Of seven files reviewed, seven showed that a parole determination was made in the class member's case.  All seven files contained a Parole Determination Worksheet with information relating to the individual parole determinations made in each class member's case. In addition, seven files contained facility-specific family sponsor contact forms.

### c)    Releasing Class Members As Expeditiously as Possible

Starting on November 1, 2017, BFRC submitted a list to the Juvenile Coordinator every Monday of class members who had been at the facility for more than 20 days which included an

explanation for the continued detention. The Juvenile Coordinator reviewed these weekly reports

and concurred with the continued detention in each case.  In seven of the cases, the reason for

detention for more than 20 days was deemed appropriate because there was no appropriate

sponsor available.

**IV.    Conclusion**

During this reporting period, ICE continued to monitor compliance with the FSA. All the

files reviewed at the respective facilities contained appropriately completed forms demonstrating

compliance with the procedures established by ICE to monitor FSA compliance.  In total, there

were approximately 5,889 class members detained at ICE's three FRC during this reporting

period.  Although 2,756 of these individuals were held in DHS custody for 20 days or more, the

average length of stay (ALOS) for the 2,756 class members was 22.04 days in custody at an

FRC.

Overall, the data demonstrate that ICE complied with the FSA during this reporting period.

**V.    Response to Plaintiffs' Allegations of Noncompliance**

In their response to the first Juvenile Coordinator Report, Plaintiffs alleged a number of

areas noncompliance with the FSA or the Court's orders.  I have reviewed the allegations related

to ICE and find that they are largely unsubstantiated, misleading, and/or irrelevant to the

information provided in the ICE Juvenile Coordinator's report.

**a)    General Claims**

Plaintiffs make a number of general assertions about noncompliance with the FSA

and the Court's orders.  These assertions are addressed below.

1. Provision of Advisals

On page 16, ECF No. 388-1, Plaintiffs state that "the ICE Report does not address

the provision of lists of available free legal services."

Response:  Plaintiffs' point is well taken.  This was an oversight in reporting, not implementation.  Although ICE was and is providing a list of free legal service providers to the parents of class members and to the class members who are 14 years old or older, we did not mention that in our last report.  This report includes our findings regarding our compliance checks concerning the provision of notice of free legal service providers.

On page 18, ECF No. 388-1, Plaintiffs state that "Exhibit 2, at 33-40, includes numerous additional excerpts of declarations regarding Defendants' failure to provide a current list of available free legal services."

Response:  ICE has reviewed each allegation in Plaintiffs Exhibit 2 that ICE failed to provide a list of legal service providers.  ICE officers personally serve either the parent of a child under the age of fourteen or the child, if over the age of fourteen, a copy of the local legal service providers at in-processing.  To ensure continued compliance, I conduct spot-checks of at least five percent of *Flores* class members.  In addition, copies of the free legal service providers are posted in common areas throughout the FRCs. The declarants claiming that they were not provided a list of legal service providers or did not know how to find a lawyer are:

Karla *** (A*** *** 999), Plaintiffs Ex. 19

Rigoberto *** (A*** *** 569), Plaintiffs Ex. 56

Ignacio *** (A*** *** 581), Plaintiffs Ex. 59

Martin *** (A*** *** 914), Plaintiffs Ex. 60

Miguel *** (A*** *** 011), Plaintiffs Ex. 62.

I've attached at Exhibit 1, Legal Services Documents, copies of the list of service providers served on these declarants.  For the BFRC residents, I've also attached the Legal Visitor and Family Narrative forms that show that they met with an attorney and

7

attended a legal orientation presentation (LOP) by the Pennsylvania Immigration Resource Center (PIRC).

   2. <u>Continuous Efforts to Release</u>

   On page 20, ECF No. 388-1, Plaintiffs state that "[o]n its face, the Parole Determination Worksheet captures information inconsistent with the release provisions of the Agreement, and omits factors that must be considered under the Agreement."

   <u>Response</u>:  Plaintiffs do not identify the information that is "inconsistent with the release provisions" nor do they list any of the allegedly omitted factors.  ICE's Parole Determination Worksheet complies with the FSA and the Court's orders.

   On page 20, ECF No. 388-1, Plaintiffs quote from a number of declarations saying that the declarant was not told that his or her child could be released to a relative or friend in the United States.  For example, on page 20, Iris states "[a]t no time has anyone asked me whether I would like my son to be released to a relative or friend in the United States. I have not been informed that that is an option."  Plaintiffs Ex. 15.

   <u>Response</u>:  In the declaration I submitted to the Court on September 8, 2017, I outlined ICE's efforts at making and recording prompt and continuous efforts at release of class members.  Specifically, I explained:

> ICE has issued guidance directing the FRCs to evaluate whether, upon initially taking a class member into custody, the class member is eligible for parole under conditions established by 8 U.S.C. § 1182(d)(5) and 8 C.F.R. § 212.5(b).  Class members will be re-evaluated for parole when new, pertinent information is received concerning continued custody.  In addition, when an FSA class member is admitted into an FRC, ICE [gives] the parent of the class member the class member the opportunity to list potential sponsors.

> I also stated that I would verify compliance by spot-checking the parole worksheet and sponsor identification forms for at least five percent of *Flores* class

members.  The Court reviewed my declaration and established deadlines for my compliance report.  *See* ECF No. 380.  I am reporting the results of my compliance checks regarding efforts at release as outlined in my declaration.

It appears Plaintiffs are dissatisfied with ICE's decision not to parole the class member.  However, there is no evidence that the review itself was improperly conducted, especially where no information was proffered that would meet the parameters for parole.

3.  <u>Holding Class Members in Secure, Unlicensed Facilities</u>

On page 22, ECF No. 388-1, Plaintiffs assert that "Karnes, Dilley and Berks remain secure."  Plaintiffs cite a declaration by Virginia Corrigan regarding Karnes and Dilley: "[M]y understanding is that class members are not permitted to leave these facilities, and that any class member who left the facility, unless with facility or ICE consent and a facility or ICE escort, would be immediately returned to the facility."  Plaintiffs Ex. 3, ¶ 6.  Plaintiffs also cite the declaration of Bridget Cambria: "I am aware that Berks is a secure facility.  Any class member who left the facility, unless with facility or ICE consent and a facility or ICE escort, would be immediately arrested."  Plaintiffs Ex. 4, ¶ 5.

<u>Response</u>:  Contrary to Plaintiffs' declarations, the fact that class members, who are in ICE's legal custody, are precluded from leaving the FRC and its grounds does not render the center itself a secured facility.  Unlike in a typical detention setting where there are physical barriers and law enforcement officers policing the movement of detainees, class members may physically leave an FRC. However, they would be doing so without permission but this does not mean the center must be deemed physically secure. Insofar as class members remain in ICE's legal custody, there will be consequences, for example re-arrest, against those residents who leave the residential

center without permission.  The absence of such consequences would undermine and effectively invalidate ICE's legal custody of the residents.  The consequences that flow from a resident's unauthorized departure have no bearing on whether the residential center is secured.  Such a determination turns on a factual assessment of how the residential center operates and the type of free movement and activities that are afforded to the residents.  The fact that a resident can physically leave a residential center demonstrates in and of itself that the centers are not secure.

The FRCs continue to operate as un-secured facilities.  Residents can freely move about within the facilities' non-restricted areas and its outdoor recreational spaces.  There are no locks on the exits, no barbwire on perimeter fences, and residents can walk out of the facility.  However, for safety reasons, a counselor will not allow a child to leave unaccompanied.

Unlike in a detention setting, the FRCs have no guards or correction officers. Although there are counselors stationed throughout the center, they are not law enforcement officers and have no arrest authority.  The counselors are present to ensure the safety and security of the residents and to assist them with any issues or needs.

On page 22-23, ECF No. 388-1, Plaintiff state that in violation of the Court's Order, Dilley and Karnes continue to operate without a license."  They also state that Berks' license was revoked, then reinstated, but that a petition for reconsideration of the reinstatement is pending.

Response.  As an initial matter, FRCs do not have to be licensed if the facilities are processing class members as expeditiously as possible.  FSA ¶ ¶ 12, 19.  For this reporting period, the average length of stay was 22.04 days.

Berks is currently licensed.

By way of background, on April 20, 2017, the Board of Hearing and Appeals of the Pennsylvania Department of Public Welfare (Board) issued a decision sustaining the BFRC's appeal of the DHS, Bureau of Human Services Licensing (BHSL) January 27, 2016 notice revoking the BFRC's license to operate as a child residential and day treatment facility during the February 21, 2016 through February 21, 2017 period. *See* Exhibit 2, BFRC License Documents.  BHSL was directed to rescind its revocation of the license, based on a finding that its actions were arbitrary and capricious.  BHSL filed an appeal of the Board's decision with the Secretary of the PA Department of Human Services (PA-DHS). In a decision dated January 30, 2018, the Deputy Secretary for PA DHS set-aside the Board's order and remanded the case for Board to, in essence, reconsider the record of evidence. *Id.* On February 8, 2018, the BFRC filed a motion to reconsider the Deputy Secretary's decision and requested certification through interlocutory appeal to the Pennsylvania Commonwealth Court.  The motion and the remanded proceeding before the Board remain pending.

In the interim, the BFRC filed separate applications to renew its license for the February 2017 to 2018 and February 2018 to 2019 periods with BHSL.  In both instances, the BHSL failed to act, which prompted the BFRC to file mandamus actions in the Commonwealth Court of Pennsylvania.  In both actions, the parties have agreed to stay the proceedings pending the outcome of the original litigation relating to BHSL's revocation of the BFRC's 2016-2017 license.  It is unclear when a final resolution of these matters will be reached.

Significantly, the BFRC remains licensed.  This position is corroborated in the decision of the Commonwealth of Pennsylvania granting the parties' joint request to stay

the pending mandamus actions. *Id.*, 1/22/18 Order ("The joint stay is intended to maintain the status quo and permit the BCRC to continue to operate pursuant to the 2016-2017 Certificate of Compliance despite the expiration of the Certificate of Compliance and the Department of Human Services failure to act on BCRC application for the 2018-2019 Certification of compliance."), and "2/3/2017 Stipulation & Order" ("This Stipulation is intended to permit the BCRC to continue to operate pursuant to the 2016-2017 Certificate of Compliance despite the expiration of that Certificate of Compliance on February 21, 2017."). Further evidencing the BFRC's operation as a licensed facility is PA-DHS' continued conduct of random inspections approximately every thirty days to ensure the BFRC's on-going compliance with Title 55, PA Code, Chapter 3800. *Id.*, BFRC Visitors Log (visits by Office of Children, Youth and Families –"OCYF"). Clearly, PA-DHS would not undertake such actions if the BFRC was not deemed to be licensed, even if provisionally.

   Karnes and Dilley Licensure.

   The state court decision invalidating the administrative rule that authorized the licensing of Karnes and Dilley and enjoining Texas Department of Family Protective Services is currently under appeal. *Tex. Dep't of Family and Protective Services v. Grassroots Leadership, Inc.*, No. 08-16-334 (Tex. App. filed Dec. 6, 2016).

   4. Extended Detention of Class Members

   On page 25, ECF No. 388-1, Plaintiffs state "923 class members 'were held in DHS custody for 20 days or more' . . . about 65% of class members were detained for 20 or more days."

   Response: If an FRC is unlicensed, ICE must place the minor as expeditiously as possible. During the current reporting period, 2,756 class members (47%) of 5,889 were

detained 20 days or more.  Every Monday I receive a weekly report of class members held over 20 days.  I review this report weekly to ensure there is an explanation for continued detention and that I agree with the continued detention in each case.

**b)**     **Individualized Claims**.

In addition to general claims of noncompliance, Plaintiffs' declaration also include a number of specific allegations of noncompliance that were shown to be misleading or inaccurate.

1. Jessica ***(A*** *** 611), Plaintiffs Ex. 17

Claim, ¶ 10.  "I have been at Dilley for 31 days at this point, and received a positive fear determination 17 days ago.  No one has explained to me why I have not yet been released."

Response:  The Declarant and her daughter were transferred to STFRC on November 7, 2017.  USCIS found a credible fear of removal and issued Notices to Appear (NTAs) on November 18, 2017.  The NTAs were served on the residents on November 20, 2017.  Their sponsor was contacted and advised to make travel plans, and the family was released on parole on December 8, 2017.

ERO does not provide family members with information on how to buy tickets. Rather, ERO informs the family members or other sponsors that tickets are needed because the family is going to be released; that the tickets can either be for a bus or an airline; and ERO gives the family the date and time needed for the tickets (for example, tomorrow after 1:00 p.m.).  It is up to the family member or sponsor to decide what type of ticket to buy and how to buy them.

2. Maria *** (A*** *** 967), Plaintiffs Ex. 36

<u>Claim</u>, ¶ 11. "My son and I have been at the Karnes Residential Facility for about eleven days. We are planning to go to live with a sister-in-law in Tennessee. I told officials that I want to stay with my son."

<u>Response</u>:  Declarant and her son entered the United States on November 23, 2017.  They were booked into the KFRC on November 27.  Declarant was approved for release on parole on December 11.  After travel arrangements were made, Declarant and her son were released on parole on December 13, 2017.  Declarant and her son spent 4 days in CBP custody and 16 days in ICE custody.

3.  The following residents complained that they spoke a dialect and had difficulty understanding Spanish.

Rigoberto *** (A*** *** 569), Plaintiffs Ex. 56

Martin *** (A*** *** 914), Plaintiffs Ex. 60

Mario *** (A*** *** 613), Plaintiffs Ex. 61

Gaspar *** (A*** *** 385), Plaintiffs Ex. 57

Miguel *** (A*** *** 011), Plaintiffs Ex. 62

I have attached at Exhibit 3, Interpreter Documents, sheets demonstrating that ICE used an interpreter to communicate with these residents.  In one case, Miguel *** (A*** *** 011), Plaintiffs Ex. 62 ¶ 10, the declarant stated that "[n]obody has talked to me and my son about our rights or what is happening in Akateko."  ICE provided explanations in Akateko.  Notably, his declaration was read to him in Spanish, not Akateko.

4.  Rigoberto *** *** (A*** *** 569), Plaintiffs Ex. 56

Claim, ¶ 13:  "My son refuses to eat the food at the BCRC because he is accustomed to eating tortillas and beans and rice.  He only eats cookies and rice sometimes.  It hurts me to see him eat so little."

Response:  The BFRC offers rice, beans and tortilla as daily food options for the residents during meal times.

Declarant commented to ICE Health Service Corps (IHSC) staff during a routine medical visit that his son's appetite was poor because he was not accustomed to the food at the BFRC. Additionally, Declarant stated that he was trying to introduce as many new foods as possible to his son in small amounts.  IHSC staff, who did not find it medically necessary to impose any special dietary recommendations, instructed Declarant to return to the medical clinic for assessment if he believed his son was losing weight.  In response, Declarant stated that he would do so if necessary, but failed to raise the issue again or take any further action. Please note, his son's weight went from 33.8 lbs. to 35.2 lbs. during his 19-day stay at the BFRC.

5.  Ignacio *** (A*** *** 581), Plaintiffs Ex. 59

Claim, ¶ 9: "My son eats very little food here at the BCRC."

Response:  Declarant made his claim after only one day at BFRC.  At no time did Declarant raise concerns regarding his son having special dietary needs or poor eating habits with IHSC, ERO or the BFRC County staff.  During his son's thirteen-day stay at the BFRC, his weight ranged from 50.6 lbs. on admission to 50.2 lbs. upon discharge.

Respectfully submitted,

Deane Dougherty
Juvenile Coordinator

Exhibit 1
Legal Services Documents

* Non Profit Organization
** Referral Service
*** Private Attorney

# List of Pro Bono Legal Service Providers

Updated April 2017

http://www.justice.gov/eoir/list-pro-bono-legal-service-providers

## San Antonio Immigration Court

**San Antonio, Texas**

| | |
|---|---|
| **American Gateways\***<br><br>One Highland Center<br>314 Highland Mall Blvd., Ste. 501<br>Austin, TX 78752<br>(512) 478-0546<br>www.americangateways.org | **RAICES\***<br><br>Refugee and Immigrant Center for Education and Legal Services<br>1305 N. Flores<br>San Antonio, TX 78212<br>Tel: (210) 226-7722<br>Fax: (210) 212-4856<br>www.raicestexas.org |
| **Catholic Charities Archdiocese of San Antonio, Inc.\***<br>202 W French Place<br>San Antonio, TX 78212<br>(210) 433-3256<br><br>• Only represents clients in San Antonio Immigration Court | • Will represent aliens in asylum cases<br><br>**St. Mary's Immigration and Human Rights Clinic\*** |
| **Immigration Clinic of the University of Texas School of Law\***<br><br>727 East Dean Keeton Street<br>Austin, TX 78705-3299<br>(512) 232-1292<br><br>• Will represent aliens in Asylum cases<br>• Clinic is closed from May 1st until September 1st | 2507 NW 36th St<br>San Antonio, TX 78228<br>Phone: (210) 431-2596<br>Fax: (210) 431-5700 |
| | **Texas RioGrande Legal Aid, Inc.\***<br><br>1111 N. Main Ave<br>San Antonio, TX 78212<br>Tel: (210) 212-3700<br>Fax: (210) 212-3774<br><br>• Toll Free 1-888-988-9996 |

999        X L p _____

**Disclaimer:** As required by 8 C.F.R. § 1003.61, the Executive Office for Immigration Review (EOIR), Office of the Director, Office of Legal Access Programs maintains a list of organizations and attorneys qualified under the regulations who provide pro bono or free legal services. The information posted on this list is provided to EOIR by the Providers. EOIR does not endorse any of these organizations or attorneys. Additionally, EOIR does not participate in, nor is it responsible for, the representation decisions or performance of these organizations or attorneys.

* Non Profit Organization
** Referral Service
*** Private Attorney

# List of Pro Bono Legal Service Providers

Updated April 2017

http://www.justice.gov/eoir/list-pro-bono-legal-service-providers

## San Antonio Immigration Court

| San Antonio, Texas | |
|---|---|
| **American Gateways\*** <br><br> One Highland Center <br> 314 Highland Mall Blvd., Ste. 501 <br> Austin, TX 78752 <br> (512) 478-0546 <br> www.americangateways.org <br><br> **Catholic Charities Archdiocese of San Antonio, Inc.\*** <br> 202 W French Place <br> San Antonio, TX 78212 <br> (210) 433-3256 <br><br> • Only represents clients in San Antonio Immigration Court | **RAICES\*** <br><br> Refugee and Immigrant Center for Education and Legal Services <br> 1305 N. Flores <br> San Antonio, TX 78212 <br> Tel: (210) 226-7722 <br> Fax: (210) 212-4856 <br> www.raicestexas.org <br><br> • Will represent aliens in asylum cases |
| **Immigration Clinic of the University of Texas School of Law\*** <br><br> 727 East Dean Keeton Street <br> Austin, TX 78705-3299 <br> (512) 232-1292 <br><br> • Will represent aliens in Asylum cases <br> • Clinic is closed from May 1st until September 1st | **St. Mary's Immigration and Human Rights Clinic\*** <br><br> 2507 NW 36th St <br> San Antonio, TX 78228 <br> Phone: (210) 431-2596 <br> Fax: (210) 431-5700 |
| | **Texas RioGrande Legal Aid, Inc.\*** <br><br> 1111 N. Main Ave <br> San Antonio, TX 78212 <br> Tel: (210) 212-3700 <br> Fax: (210) 212-3774 <br><br> • Toll Free 1-888-988-9996 |

998                    X L D

**Disclaimer:** As required by 8 C.F.R. § 1003.61, the Executive Office for Immigration Review (EOIR), Office of the Director, Office of Legal Access Programs maintains a list of organizations and attorneys qualified under the regulations who provide pro bono or free legal services. The information posted on this list is provided to EOIR by the Providers. EOIR does not endorse any of these organizations or attorneys. Additionally, EOIR does not participate in, nor is it responsible for, the representation decisions or performance of these organizations or attorneys.

## Family Narrative

| Name | A# | Age | Relationship |
|------|-----|-----|--------------|
| • Rigoberto ███████ | ███ 569 | 24 | father |
| • ███████ | ███████ | 4 | son |

12/17/17   The family was admitted to the program.

12/18/17   2:30-3:15   I met with Rigoberto. I explained my role as a caseworker.  We
reviewed the orientation paperwork.  I informed him that the immigration officers
are ████████████████████████████.  I gave him a tour of the
facility and reviewed the information areas with him.  He had no questions at this
time.

12/20/17   PIRC Attorney ███████ met with Rigoberto for the LOP presentation.

12/22/17   We received a G-28 from Attorney ███████.



# Berks County Residential Center
## Legal Visit Register



Resident Name: _Rigoberto_ ▇ ▇

Resident A#: _▇ ▇_ 569

| Date | Time In | Time Out | Visitor Name & Supervising attorney's name (if applicable) | Visitor's Address | Reason for Visit |
|------|---------|----------|-----------------------------------------------------------|-------------------|------------------|
| 12-20-17 | 1525 | 1440 | ███████ | | LeP |
| Staff Int. → | KUK | NT | ███████ | | |
| 12-23-17 | 0840 | 0908 | ███████ | | legal |
| Staff Int. → | RV | du | ███████ | | |
| 12-27-17 | 1535 | 1536 | ███████ | | legal |
| Staff Inc → | MJK | MJ | ███████ | | |
| | | | | | |
| Staff Int. → | | | | | |
| | | | | | |
| Staff Int. → | | | | | |
| | | | | | |
| Staff Int. → | | | | | |
| | | | | | |
| Staff Int. → | | | | | |
| | | | | | |
| Staff Int. → | | | | | |
| | | | | | |
| Staff Int. → | | | | | |
| | | | | | |
| Staff Int. → | | | | | |

(Revised 6/16) Form 37.010B





U.S. Department of Justice
Executive Office for Immigration Review
*Immigration Court*
3400 Concord Rd., Suite 2
PO Box 20370
York, PA 17402

## LIST OF FREE LEGAL SERVICE PROVIDERS-YORK

HIAS AND COUNSEL
Migration Services
2100 Arch Street, 3rd Floor
Philadelphia, PA 19103
(215) 832-0900
* Represent aliens seeking asylum
* May charge a nominal fee
* Representation limited to residents of Southeast Pennsylvania and Delaware

NATIONALITIES SERVICE CENTER
1300 Spruce Street
Philadelphia, PA 19107
(215) 893-8400
* Represent aliens seeking asylum
* May charge a nominal fee

PENNSYLVANIA IMMIGRATION RESOURCE CENTER (PIRC)
~~50 MT. Zien Rd~~
York, PA 17402
(T) (717) 600-8099
(F) (717) 600-8044
* Represent aliens in detention
* Represent aliens seeking asylum, CAT
* Represents aliens with mental and physical disabilities

ECUMENICAL COMMITMENT TO REFUGEES - PRIME
129 Owen Ave., P.O. Box 5
Lansdowne, PA 19050-0005
(T) (610) 259-4500
(F) (610) 259-4515        *Rigoberto*
        And
701 N. Lime St.
Lancaster, PA 17602
(T) (717) 396-9300                                    *569*
(F) (717) 396-9374

### Disclaimer

As required by 8 C.F.R. § 1003.61, the Office of the Chief Immigration Judge (OCIJ) maintains a list of organizations and attorneys qualified under the regulations who provide free legal services. The information posted on this is provided to OCIJ by the Free Legal Services Providers. The Executive Office for Immigration Review (EOIR) does not endorse any of these organizations or attorneys. Additionally, EOIR does not participate in, nor is it responsible for, the representation decisions or performance of these organizations or attorneys.

REVISED: 10/01/2011



Name ▮▮▮▮▮▮▮▮▮▮

Alien No.: ▮▮▮▮▮▮▮ 570

### Notice of Rights
### (Exhibit 6 of the Flores Settlement Agreement)

This notice is provided pursuant to the decision of the U.S. Court of Appeals for the Ninth Circuit in *Flores v. Lynch*, No. 15-56434, --- F.3d --- (9th Cir. July 6, 2016), applying the Flores Settlement Agreement (FSA) to accompanied minors. The notice is to inform persons under the age of 18 in the custody of the Department of Homeland Security, U.S. Immigration and Customs Enforcement (ICE), of rights they may have under the FSA.

### NOTICE OF RIGHT TO JUDICIAL REVIEW

The U.S. government usually houses persons under the age of 18 in an open setting, such as a foster or group home, and not in detention facilities. If you believe that you have not been properly placed or that you may have been treated improperly, you may ask a federal judge to review your case. You may call a lawyer to help you do this. If you cannot afford a lawyer, you may call one from the list of free legal services given you with this form.

---

### Certificate of Service

I hereby certify that the Notice of Rights was served by me on ▮▮▮▮▮▮

(Name of Alien)

and ~~Rigoberto~~     12/18/17 , and the contents of
(Name of Parent/Alien Age 14 or Older)     (Date of Service)

this notice were read to him/her/them in the *Quiche* language.
(Language)

▮▮▮▮▮▮     # 322202
Name or Number of Interpreter (if applicable)

Rigoberto ▮▮▮▮▮

## Family Narrative

| Name: | A# | Age: | Relationship |
|-------|-----|------|--------------|
| • Ignacio ████ | ████ 581 | 27 | Father |
| • ████████ | ████ | 5 | Son |

12/27/17    Ignacio met with PIRC for the legal presentation.

12/28/17    Ignacio was provided with a free phone call per his request.

12/29/17    Ignacio participated in an exercise session.

12/30/17    Ignacio was provided with another free phone call per his request.



# Berks County Residential Center
## Legal Visit Register



Resident Name: _Ignacio_ ███████████    Resident A#: ███████████ 58/

| Date | Time In | Time Out | Visitor Name & Supervising attorney's name (if applicable) | Visitor's Address | Reason for Visit |
|---|---|---|---|---|---|
| 12/23/17 | 6931 | 0942 | ███████████ | | legal |
| Staff Int. → | ℒ. | ℒ2 | | | |
| 12-27-17 | 0920 | 1115 | ███████████ | | legal |
| Staff Int. → | 𝒫𝓋 | 𝓃𝓋 | | | |
| 12/27/17 | 1:20 | 1:50 | ███████████ | | legal |
| Staff Int. → | Rℒ | 𝓃𝓋 | | | |
| Staff Int. → | | | | | |
| Staff Int. → | | | | | |
| Staff Int. → | | | | | |
| Staff Int. → | | | | | |
| Staff Int. → | | | | | |
| Staff Int. → | | | | | |
| Staff Int. → | | | | | |

(Revised 6/16) Form 37.010B



\* Non-Profit Organization
\*\* Referral Service
\*\*\* Private Attorney

## List of Pro Bono Legal Service Providers   Updated January 2017
http://www.justice.gov/eoir/list-pro-bono-legal-service-providers

### York Immigration Court

**York Pennsylvania**

**HIAS and Counsel Migration Services\***

2100 Arch Street, 3rd Floor
Philadelphia, PA 19103
(215) 832-0900
• Will represent aliens seeking asylum.
• May charge a nominal fee.
• Representation limited to residents of Southeast Pennsylvania and Delaware.

**Prime – Ecumenical Commitment to Refugees\***

129 Owen Ave., P.O. Box 5
Lansdowne, PA 19050-0005
Tel: (610) 259-4500
(610) 259-4515
         and
701 N. Lime St.
Lancaster, PA 17602
Tel: (717) 396-9300
Fax: (717) 396-9374

**HIAS (Silver Spring)**

1300 Spring St, Suite 500
Silver Spring, MD 20190
Phone: (301) 844-7246
legalhelp@hias.org
hias.org
• Children and families from Central America seeking humanitarian relief
• Asylum seekers who are scientists, sholars, artists, or professionals
• Languages: Spanish and Portugause

**Pennsylvania Immigration Resource Center (PIRC)\***

112 Pleasant Acres Rd, PO Box 20339, Suite I
York, PA 17402
Tel: (717) 600-8099
Fax: (717) 600-8044
info@pirclaw.org
pirclaw.org
• All removal deiense won
• Languages: Spanish

**Nationalities Service Center\***

1300 Spruce Street
Philadelphia, PA 19107
(215) 893-8400
• Will represent aliens seeking asylum
• May charge a nominal fee.



12/21/17
581
(minor 7/4/12)

Disclaimer: As required by 6 C.F.R. § 1003.61, the Executive Office for Immigration Review (EOIR), Office of the Director, Office of Legal Access Programs maintains a list of organizations and attorneys qualified under the regulations who provide pro bono or free legal services. The information posted on this list is provided to EOIR by the Providers. EOIR does not endorse any of these organizations or attorneys. Additionally, EOIR does not participate in, nor is it responsible for, the representation decisions or performance of these organizations or attorneys.



## LEA ESTO

## ANTES DE TOMAR ASESORAMIENTO LEGAL

Si usted tiene un caso en la corte de inmigración, sólo seguir el consejo legal de:

* A licensed attorney

   Un "abogado" es una persona que tiene una licencia válida de un estado para ejercer la abogacía.

* Un representante acreditado

   Un "representante acreditado" es una persona que trabaja con una organización reconocida y se le ha dado permiso por parte del Gobierno de los Estados Unidos para ayudar a la gente en la corte de inmigración. Una "organización reconocida" es una organización religiosa sin fines de lucro,. De caridad, de servicio social, o una organización similar que se le ha dado permiso por parte del Gobierno de los Estados Unidos para ayudar a la gente en la corte de inmigración.

Si alguien dice ser abogado y quiere saber si esa persona se le permite que lo represente en la corte de inmigración:

* Pregunte en qué estado (s) que él o ella tiene licencia para ejercer la abogacía.
* Llame a la oficina que las licencias de abogados en el estado (este suele ser el "State Bar Association" o la Corte Suprema de ese estado) y pedir que la oficina si el abogado tiene una serie de barras y se encuentra en "buen estado".
* Visite el sitio Web EOIR en www.justice.gov/eoir/discipline.htm para saber que no esté permitido para que lo represente en la corte de inmigración.

Si alguien dice ser un representante acreditado y desea saber si esa persona se le permite que lo represente en la corte de inmigración, visite el sitio Web de la EOIR en www.justice.gov/eoir/ra.html y seleccione "Lista de Representantes Acreditados" o llame al (703) 305-9029 para obtener información

Si usted cree que ha sido víctima, si el fraude de inmigración, comuníquese con el fraude EOIR y el Programa de Prevención del Abuso en: EOIR.Fraud.Program @ usdoj.gov o (703) 305-0470

Prepared by the Executive Office for Immigration Review (EOIR)

X



12/21/17

58 1