CARLOS R. HOLGUÍN (Cal. Bar No. 90754)
PETER A. SCHEY (Cal. Bar No. 58232)
Center for Human Rights & Constitutional Law
256 South Occidental Boulevard
Los Angeles, CA  90057
Telephone: (213) 388-8693
Email: crholguin@centerforhumanrights.org
        pschey@centerforhumanrights.org

LEECIA WELCH (Cal. Bar No. 208741)
National Center for Youth Law
405 14th Street, 15th Floor
Oakland, CA 94612
Telephone: (510) 835-8098
Email: lwelch@youthlaw.org

*Listing continues on next page*

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| Jenny Lisette Flores, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Jefferson B. Sessions, Attorney General, *et al*.,<br><br>Defendants. | Case No. CV 85-4544-DMG (AGRx)<br><br>EXHIBITS IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT (VOL. 2: EXS. 21-30, PAGES 109-73, PUBLICLY FILED EXHIBITS ONLY)<br><br>Hearing:  May 18, 2018<br>Time:     9:30 a.m.<br>Room:     1st St. Courthouse<br>          Courtroom 8C |

*Counsel for Plaintiffs, continued*

HOLLY S. COOPER (Cal. Bar No. 197626)
Co-Director, Immigration Law Clinic
CARTER C. WHITE (Cal. Bar No. 164149)
Director, Civil Rights Clinic
University of California Davis School of Law
One Shields Ave. TB 30
Davis, CA 95616
Telephone: (530) 754-4833
Email: hscooper@ucdavis.edu
        ccwhite@ucdavis.edu

I, Carlos Holguín, do hereby declare that true and correct copies of the following documents are attached hereto:

INDEX TO EXHIBITS

| No. | Description | Page(s) |
|---|---|---|
| 1 | Declaration of the Mother of Nicolás C., February 6, 2018 (proposed to be filed partially under seal) | 1-10 |
| 2 | Declaration of Nicolás C., February 4, 2018 (proposed to be filed partially under seal) | 11-19 |
| 3 | Morrison Paso Case Review re: Nicolás C., September 17, 2017 (proposed to be filed partially under seal) | 20-26 |
| 4 | Custody Order of the Immigration Judge re: Nicolás C., December 19, 2017 (proposed to be filed partially under seal) | 27-28 |
| 5 | Declaration of Leland Baxter-Neal, February 6, 2018 (proposed to be filed partially under seal) | 29-34 |
| 6 | Email from Erich Corona re: Nicolás C., January 9, 2018 (proposed to be filed partially under seal) | 35-38 |
| 7 | Declaration of James M. Owens, February 7, 2018 (proposed to be filed partially under seal) | 39-43 |
| 8 | ORR Interim Guidance re: Custody Hearings, July 18, 2017 | 44-55 |
| 9 | Declaration of Daniella Q., February 28, 2018 (proposed to be filed partially under seal) | 56-59 |
| 10 | Declaration of Isabella M., December 1, 2017 (proposed to be filed partially under seal) | 60-63 |
| 11 | Supplemental Declaration of Isabella M., February 28, 2018 (proposed to be filed partially under seal) | 64-68 |
| 12 | Declaration of the Mother of Isabella M., February 28, 2018 (proposed to be filed partially under seal) | 69-75 |
| 13 | Declaration of Victoria R., February 28, 2018 (proposed to be filed partially under seal) | 76-79 |

EXHIBITS IN SUPPORT OF MOTION TO
ENFORCE SETTLEMENT
CV 85-4544-DMG (AGRx)

14   Declaration of David I., November 30, 2017 (proposed to be
     filed partially under seal) ...................................................................... 80-84

15   Supplemental Declaration of David I., February 28, 2018
     (proposed to be filed partially under seal) ........................................... 85-88

16   Declaration of Eduardo A., March 1, 2018 (proposed to be filed
     partially under seal) ............................................................................... 89-93

17   Declaration of Rosa L., December 1, 2017 (proposed to be filed
     partially under seal) ............................................................................... 94-97

18   Supplemental Declaration of Rosa L., February 28, 2018
     (proposed to be filed partially under seal) ........................................ 98-100

19   Declaration of Gabriela N., December 1, 2017 (proposed to be
     filed partially under seal) ................................................................... 101-104

20   Supplemental Declaration of Gabriela N., February 28, 2018
     (proposed to be filed partially under seal) ........................................ 105-108

21   Declaration of Arturo S., February 28, 2018 (proposed to be
     filed partially under seal) ................................................................... 109-112

22   ORR Form Notice of Placement in a Restrictive Setting,
     February 5, 2018 ................................................................................. 113-115

23   ORR FAQ: July 2017 Bond Hearings for Unaccompanied Alien
     Children (UAC) .................................................................................. 116-118

24   ORR FAQ: ORR Directors Release Decision, January 26, 2018 ..... 119-121

25   Letter from Carlos Holguín to Office of Immigration Litigation,
     December 19, 2017 ............................................................................. 122-129

26   Email from Sarah Fabian re: Flores Meet and Confer
     Discussion, January 12, 2018 ........................................................... 130-131

27   Letter from Leecia Welch to Office of Immigration Litigation
     re: Psychotropic Medications, and Attachments, January 16,
     2018 (proposed to be filed partially under seal) .............................. 132-161

28   Letter from Carlos Holguín to Office of Immigration Litigation,
     February 16, 2018 ............................................................................... 162-164

EXHIBITS IN SUPPORT OF MOTION TO
ENFORCE SETTLEMENT
CV 85-4544-DMG (AGRx)

29   Email from Sarah Fabian re: Flores Meet and Confer Discussion, March 2, 2018 ............................................................ 165-168

30   Declaration of Javier C., November 15, 2017 (proposed to be filed partially under seal) ................................................. 169-173

31   Declaration of Carlos A., November 16, 2017 (proposed to be filed partially under seal) ................................................. 174-177

32   Declaration of Miguel B., November 16, 2017 (proposed to be filed partially under seal) ................................................. 178-181

33   Declaration of Luis D., November 15, 2017 (proposed to be filed partially under seal) ................................................. 182-192

34   Declaration of Andrés D., July 11, 2017 (proposed to be filed partially under seal) ................................................. 193-197

35   Declaration of Jorge E., July 11, 2017 (proposed to be filed partially under seal) ................................................. 198-205

36   Declaration of Gustavo H., July 11, 2017 (proposed to be filed partially under seal) ................................................. 206-210

37   Declaration of Roberto F., July 11, 2017 (proposed to be filed partially under seal) ................................................. 211-220

38   Declaration of Natalia T., November 21, 2017 (proposed to be filed partially under seal) ................................................. 221-223

39   Declaration of Ricardo U., November 21, 2017 (proposed to be filed partially under seal) ................................................. 224-226

40   Declaration of Sofia O., December 1, 2017 (proposed to be filed partially under seal) ................................................. 227-231

41   Declaration of Gloria P., December 1, 2017 (proposed to be filed partially under seal) ................................................. 232-235

42   Declaration of Edwin B., March 1, 2018 (proposed to be filed partially under seal) ................................................. 236-242

43   Letter from Carlos Holguín to Cynthia Nunes Colbert, *et al.,* re: Legal Representation for Specified Class Members, March 12, 2018 (proposed to be filed partially under seal) ........................... 243-246

v

44     Declaration of Samuel W., October 26, 2017 (proposed to be
       filed partially under seal) ................................................................ 247-250

45     Declaration of Jaime V., October 26, 2017 (proposed to be filed
       partially under seal) ........................................................................ 251-254

46     Declaration of Mateo X., October 26, 2017 (proposed to be
       filed partially under seal) ................................................................ 255-256

47     Declaration of Mario Y., October 26, 2017 (proposed to be filed
       partially under seal) ........................................................................ 257-260

48     Declaration of Maricela J., November 30, 2017 (proposed to be
       filed partially under seal) ................................................................ 261-264

49     Declaration of Teresa K., November 30, 2017 (proposed to be
       filed partially under seal) ................................................................ 265-268

50     Declaration of Diego E., January 16, 2018 (proposed to be filed
       partially under seal) ........................................................................ 269-273

51     Declaration of Daniel F., March 21, 2018 (proposed to be filed
       partially under seal) ........................................................................ 274-278

52     Declaration of Alejandro G., March 21, 2018 (proposed to be
       filed partially under seal) ................................................................ 279-285

53     Transcript of Testimony of James De La Cruz, *Saravia v.
       Sessions*, Case No. 3:17-cv-03615-VC (N.D. Cal. June 29,
       2017), Dkt. No. 28 .......................................................................... 286-382

54     Defendant Brent Cardall's Responses to Plaintiff's Request for
       Admission, Set One, *Saravia v. Sessions*, Case No. 3:17-cv-
       03615-VC (N.D. Cal. Sept. 20-21, 2017), Dkt. No. 61-3 ............... 383-390

55     Declaration of Camila G., April 3, 2018 (proposed to be filed
       partially under seal) ........................................................................ 391-396

56     Patient Profile – Active Medications of Victoria R., January 9,
       2018 (proposed to be filed partially under seal) ............................ 397-398

57     Patient Profile – Active Medications of David I., November 27,
       2017 (proposed to be filed partially under seal) ............................ 399-400

EXHIBITS IN SUPPORT OF MOTION TO
ENFORCE SETTLEMENT
CV 85-4544-DMG (AGRx)

58   Patient Profile – Active Medications of Rosa L., July 31, 2017
     (proposed to be filed partially under seal) ........................................ 401-402

59   Medication Information and Reconciliation and Over-the-
     Counter Medication Release Forms for Isabella M., September
     28-29, 2017 (proposed to be filed partially under seal).................... 403-405

60   Medication Information and Reconciliation Form for Gabriela
     N., September 7, 2017 (proposed to be filed partially under
     seal)...................................................................................................... 406-407

61   Medication Information and Reconciliation Form for Sofia O.,
     September 18, 2017 (proposed to be filed partially under seal) ....... 408-409

62   Yolo County Juvenile Detention Facility Parental Medical
     Authorization Form for Julio Z., December 14, 2016 (proposed
     to be filed partially under seal) ........................................................ 410-411

63   Patient Profile – Active Medications of Julio Z., December 12,
     2016 (proposed to be filed partially under seal) .............................. 412-413

64   Declaration of Julio Z., November 13, 2017 (proposed to be
     filed partially under seal) .................................................................. 414-424

65   Declaration of Sister of Victoria R., March 13, 2018 (proposed
     to be filed partially under seal) ......................................................... 425-431

66   Declaration of Proposed Sponsor of Victoria R., March 13,
     2018 (proposed to be filed partially under seal) .............................. 432-435

67   Declaration of Grandfather of Gabriela N., March 15, 2018
     (proposed to be filed partially under seal) ....................................... 436-441

68   Custody Order of the Immigration Judge re: Santiago H.,
     February 21, 2018 (proposed to be filed partially under seal).......... 442-443

69   Order of the Immigration Judge with Respect to Custody re:
     Santiago H., March 20, 2018 (proposed to be filed partially
     under seal)........................................................................................... 444-446

70   Email from Toby Biswas re: Santiago H. Follow Up, February
     23, 2018 (proposed to be filed partially under seal) ........................ 447-449

EXHIBITS IN SUPPORT OF MOTION TO
ENFORCE SETTLEMENT
CV 85-4544-DMG (AGRx)

71    Case Review re: Santiago H., November 29, 2017 (proposed to
      be filed partially under seal) ............................................................ 450-452

72    ORR Information Memo re: Community Safety Initiative for
      the Unaccompanied Alien Children Program, August 16, 2017 ...... 453-457

73    Declaration of John Doe 1, *John Doe 1 v. Shenandoah Valley
      Juvenile Ctr. Comm'n*, Case No. 5:17-cv-00097-EKD-JCH,
      (W.D. Va. Jan. 17, 2018), Dkt. No. 34-1 ........................................ 458-464

74    Declaration of John Doe 2, *John Doe 1 v. Shenandoah Valley
      Juvenile Ctr. Comm'n*, Case No. 5:17-cv-00097-EKD-JCH,
      (W.D. Va. Jan. 5, 2018), Dkt. No. 34-2 .......................................... 465-471

75    Declaration of John Doe 3, *John Doe 1 v. Shenandoah Valley
      Juvenile Ctr. Comm'n*, Case No. 5:17-cv-00097-EKD-JCH
      (W.D. Va. Jan. 5, 2018), Dkt. No. 34-3 .......................................... 472-478

76    Declaration of D.M, *John Doe 1 v. Shenandoah Valley Juvenile
      Ctr. Comm'n*, Case No. 5:17-cv-00097-EKD-JCH, (W.D. Va.
      Jan. 2, 2018), Dkt. No. 34-5 ............................................................ 479-484

77    Declaration of R.B., *John Doe 1 v. Shenandoah Valley Juvenile
      Ctr. Comm'n*, Case No. 5:17-cv-00097-EKD-JCH, (W.D. Va.
      Jan. 8, 2018), Dkt. No. 34-6 ............................................................ 485-490

78    Transcript of Jonathan White, *Saravia v. Sessions*, Case No. 18-
      15114 (9th Cir. Oct. 27, 2017), Dkt. No. 9-2 ................................... 491-548

79    Exhibit 1 to Appellees' Request for Judicial Notice, *Saravia v.
      Sessions*, Case No. 18-15114 (9th Cir. March 16, 2018), Dkt.
      No. 20 ................................................................................................ 549-555

80    Stipulated Settlement Agreement, *Flores v. Reno*, Case No.
      CV 85-4544-RJK(Px) ....................................................................... 556-584

81    Declaration of Justin Mixon, October 19, 2017 ................................ 585-591

82    Email from Sarah Fabian re: Correspondence re: Legal
      Representation for Flores Class Members, March 23, 2018 ............. 592-594

83    Letter from James De La Cruz to Flores Counsel re:
      Psychotropic Medications, April 2, 2018 (proposed to be filed
      partially under seal) ......................................................................... 595-601

viii

84   Individual Service Plan – Residential Treatment for Victoria R.,
     Shiloh Treatment Center, Inc., December 26, 2017 (proposed to
     be filed partially under seal) ............................................................... 602-606

85   Declaration of Lorelei Alicia Williams, previously filed in this
     case in Docket No. 239-2, August 5, 2016 ....................................... 607-618

86   Declaration of Megan Stuart, previously filed in this case in
     Docket No. 239-2, August 1, 2016 .................................................... 619-646

87   Declaration of Carlos Holguín, April 10, 2018 ................................. 647-649

88   ORR Authorization for Medical, Dental, and Mental Health
     Care for Carlos A., July 31, 2017 (proposed to be filed partially
     under seal)........................................................................................... 650-652

89   Declaration of Carter White, April 14, 2018, attaching Shiloh
     Treatment Center Consent to Medical Care Form............................. 653-655

EXHIBITS IN SUPPORT OF MOTION TO
ENFORCE SETTLEMENT
CV 85-4544-DMG (AGRx)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 14th day of April, 2018, at Santa Clarita, California.

Respectfully submitted,

Carlos Holguín

/s/ Carlos Holguín

x

# Exhibit 22

Exhibit 22
Page 113



**Notice of Placement
in a Restrictive Setting**
Office of Refugee Resettlement

You are in the custody of the Office of Refugee Resettlement (ORR), and have been placed in a restrictive setting - a secure or staff secure facility, or a Residential Treatment Center (RTC). The reason you have been placed in a restrictive setting is listed below.

If you have any questions about this placement, please discuss them with your case manager, your attorney, or an ORR-funded legal service provider.

| UAC Name | Alien Number | Country of Birth | Date of Birth | Gender |
|---|---|---|---|---|
|  |  |  |  |  |

| Name of Care Provider Facility | | | Type of Facility | |
|---|---|---|---|---|
|  |  |  |  |  |

**Secure Care:** ORR has determined that you pose a danger to self or others; or have been charged with having committed a criminal offense. ORR considered that you:

☐ Are charged with, may be chargeable, or have been convicted of a crime; or are the subject of delinquency proceedings, have been adjudicated delinquent, or are chargeable with a delinquent act[1];

☐ Have committed, or have made credible threats to commit a violent or malicious act while in ORR custody;

☐ Have committed, threatened to commit, or engaged in serious, self-harming behavior that poses a danger to self while in ORR custody;

☐ Have engaged in conduct that has proven to be disruptive of the normal functioning of a staff secure facility in which you were placed such that transfer may be necessary to ensure your welfare or the welfare of others;

☐ Have reported gang involvement or display gang affiliation while in care;

☐ Have self-disclosed violent criminal history or gang involvement prior to placement in ORR custody that requires further assessment; and/or,

☐ Have a history of or display sexual predatory behavior, or have inappropriate sexual behavior.

**Staff Secure Care:** ORR has determined that you require close supervision, but do not require placement in a secure care provider facility. ORR considered that you:

☐ Have been disruptive to the normal functioning of a shelter care facility such that transfer is necessary to ensure the welfare of others;

☐ Are an escape risk;

☐ Have non-violent criminal or delinquent history not warranting placement in a secure care provider facility, such as isolated or petty offenses; or,

☐ Could be stepped down from a secure facility.

**Residential Treatment Center:** ORR has determined that you have a psychiatric or psychological issue that cannot be addressed in an outpatient setting. A licensed psychologist or psychiatrist has indicated that you:

☐ Have not shown reasonable progress in the alleviation of your mental health symptoms after a significant period of time in outpatient treatment;

☐ Demonstrate behavior that is a result of your underlying mental health symptoms and/or diagnosis and cannot be managed in an outpatient setting;

☐ Require therapeutic-based intensive supervision as a result of mental health symptoms and/or diagnosis that prevent you from independent participation in the daily schedule of activities; and/or,

☐ Present a continued and real risk of harm to self, others, or the community, despite the implementation of short-term clinical interventions.

---

[1] Excluding: isolated offenses that (1) were not within a pattern or practice of criminal activity and (2) did not involve violence against a person, or the use or carrying of a weapon (e.g., breaking and entering, vandalism, DUI, etc.); or petty offenses which are not considered grounds for a stricter means of detention in any case (e.g., shoplifting, joy riding, disturbing the peace, status offenses).

Notice of Placement in a Restrictive Setting, 02/05/2018
ORR UAC/P-4

**Exhibit 22
Page 114**

Notice of Placement in a Restrictive Setting

Summary of placement decision or case review:

ORR will review your placement, at a minimum, every 30 days to determine whether your placement in a restrictive level of care is still necessary. If you remain in a secure facility or RTC after 30 days, you may request that the ORR Director reconsider your placement.  For more information on this process, please ask your case manager.

If you believe you have not been properly placed or that you have been treated improperly you may also ask a Federal District Court to review your case. You may call a lawyer to assist you.

UAC's acknowledgement of receipt:

_____          _____

UAC's Signature                                Date

**Exhibit 22
Page 115**

# Exhibit 23

Exhibit 23
Page 116



**ADMINISTRATION FOR**
# CHILDREN & FAMILIES
Office of Refugee Resettlement | 330 C Street, S.W., Washington, DC 20201
www.acf.hhs.gov/programs/orr

**Division of Policy and Procedures**
**FAQ: July 2017 Bond Hearings for Unaccompanied Alien Children (UAC)**

*Q: What is a bond redetermination hearing?*

A: Traditionally, bond redetermination hearings (bond hearings) are used by aliens in DHS custody who wish to have an immigration judge (EOIR) determine whether the alien should remain in DHS custody or be released from custody.

*Q: Are bond hearings for aliens in DHS custody the same for UAC in HHS custody?*

A: No. Bond hearings for aliens in DHS custody are covered by statute and regulations under the Immigration and Nationality Act. *Flores* bond hearings for UAC in HHS custody are judicially created by the Federal courts under a Ninth Circuit Court of Appeals decision in *Flores v. Sessions.* However, *Flores* bond hearings for UAC in HHS custody fall under the same strictures as bond hearings for aliens in DHS custody.

*Q: According to section 2.9, UAC have a right to a bond hearing to determine if they are a danger to the community. What information will ORR provide at the bond hearing for the immigration judge to determine if the UAC is a danger?*

A: ORR will provide all information that went into making a placement decision based on danger to the community, and information used to justify continued placement in a restrictive level of care or to deny release based upon a danger to the community. This information can include placement documents, police and court records, relevant SIRs, assessments, etc. ORR is required to provide any evidence it uses to support a finding that a child is a danger to the community to the immigration court and to the UAC's representative prior to the bond hearing.

*Q: Would a determination in a Flores bond hearing that a UAC is a danger negatively affect the UAC's legal case?*

A: The *Flores* bond hearings are separate and apart from UAC immigration proceedings under the Immigration and Nationality Act (UAC "removal" hearings and any DHS custody hearings). Findings from a *Flores* bond hearing may address similar factors that will be considered in removal or DHS custody hearings. However, ORR is not a party to DHS proceedings.

*Q: If a judge determines that a UAC is not a danger to the community, but the UAC is a Category 4 with no option for legal relief and no sponsor, would the shelter have to release the UAC?*

A:  No.  ORR will continue to base release decisions on existing policies.  ORR is prohibited by law from releasing UAC on their own recognizance, even if an immigration judge finds that the child is not a danger to the community.

*Q:  Are there costs involved for the UAC if he or she requests a bond hearing?*

A:  Generally speaking, no.

*Q:  Does this policy affect UAC in Residential Treatment Centers (RTCs)?*

A:  RTCs will be treated as secure placements for purposes of this policy. RTC providers will provide notice of bond hearings to UAC placed in an RTC as if the child were placed into a secure care provider.

*Q: Does the policy apply to UAC in shelters or long term foster care?*

A: All UAC may request a *Flores* bond hearing. However, ORR places UAC in these types of care providers based on a determination that they are not a danger to the community.  As a result, the *Flores* bond hearing would not affect the vast majority of UAC in shelters and foster care programs.  If a UAC is stepped up to a secure facility or staff secure facility from a shelter or foster care program, the UAC is provided notice of the *Flores* bond hearings at the time of admission into the secure or staff secure facility.

*Q: Will the notice of a bond hearing form be available in languages other than English?*

A:  Yes.  ORR has distributed a Spanish language version of the flyer.  Care provider should connect children who speak other languages to a translation line as used for other legal notifications.  ORR is evaluating whether there is a need for additional translations of the notice.

*Q: If a judge determines that a UAC in secure is not a danger to the community, will ORR step the UAC down to a less restrictive level of care?*

A:  Potentially, yes.  ORR will work with programs directly to resolve these types of cases.

# Exhibit 24

**Exhibit 24**
**Page 119**



Office of Refugee Resettlement | 330 C Street, S.W., Washington, DC 20201
www.acf.hhs.gov/programs/orr

**Division of Policy and Procedures**

**FAQ: ORR Director's Release Decision**

*Q: What UAC release decisions require elevation to the ORR Director before a final release decision can be made?*

Under ORR Policy Guide, section 2.7, the ORR/FFS elevates release decisions to the ORR Director, or the Director's designee, for any UAC in a secure or staff secure facility, or for any UAC who had previously been in a secure or staff secure facility. The ORR Director or designee makes release decisions for children in these types of facilities.

*Q: Does a release decision for a UAC who was previously placed into a staff-secure facility because of concerns that the UAC was a flight risk (but not dangerous) require elevation to the ORR Director under the policy?*

Yes. The ORR Director makes a release decision for any case in which a UAC was previously placed in a secure or staff-secure facility or is currently placed in a secure or staff-secure facility, regardless of the reasons for the child's placement,.

*Q: Does a release decision for a UAC who was previously placed into a secure facility based solely on an erroneous report that the child was affiliated with a gang require elevation to the ORR Director under the policy?*

Yes. These cases require elevation to the Director even if the restrictive placement decision was based on incomplete, inaccurate or erroneous information.

*Q: Do UAC who are in or were previously placed in a secure or staff-secure facility AND have prevailed in a Flores bond hearing on a question of dangerousness require a release decision elevated to the ORR Director under the policy?*

Yes. However, in these cases the ORR Director is precluded from denying the release based on the UAC's dangerousness (because an Immigration Judge has ruled that the child is not a danger). There are other factors for the ORR Director to consider when making a release decision.

*Q: Do UAC who are in or were previously placed in a secure or staff-secure facility AND have prevailed in a Saravia hearing related to their apprehension by DHS/ICE require a release decision elevated to the ORR Director under the policy?*

No. UACs who prevail in *Saravia* hearings must be released immediately to their previous sponsor. The ORR/FFS verifies with staff from the Division of Policy and Procedures that the child received a valid *Saravia* order prior to the child's release from custody.

*Q: Does the ORR Director deny all release decisions for cases from a secure or staff-secure facility or UAC previously placed in a secure or staff-secure facility?*

No. The ORR Director assesses each case individually under the same ORR release policies used to approve or deny a release to a sponsor found in the ORR Policy Guide, section 2.7.

# Exhibit 25

Exhibit 25
Page 122

# CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW

256 S. OCCIDENTAL BOULEVARD
LOS ANGELES, CA 90057
Telephone:  (213) 388-8693 Facsimile:  (213) 386-9484
www.centerforhumanrights.org

December 19, 2017

Sarah B. Fabian
Vinita B. Andrapalliyal
Office of Immigration Litigation – District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044

Michael Johnson (or successor in office)
Assistant United States Attorney
300 N. Los Angeles St., Rm. 7516
Los Angeles, CA  90012

Allen Hausman (or successor in office)
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC  20044

*Via email.*

Re: *Flores*, et al., *v. Sessions,* et al*.,* No. CV 85-4544 DMG (C.D. Cal.).

Dear Counsel:

Pursuant to ¶ 37 of the settlement[1] approved in the above referenced action on January 25, 1997 (Settlement), plaintiffs give notice of claims that Defendants are in breach of the Settlement in the following particulars:

---

[1] Paragraph 37 provides in pertinent part as follows: "This paragraph provides for the enforcement, in this District Court, of the provisions of this Agreement except for claims brought under Paragraph 24.  The parties shall meet telephonically or in person to discuss a complete or partial repudiation of this Agreement or any alleged non-compliance with the terms of the Agreement, prior to bringing any individual or class action to enforce this Agreement."

**Exhibit 25**
**Page 123**

1)   <u>Class-wide violations of ¶¶ 14 and 18: Denial of due process in declaring available custodians unfit.</u>

Paragraph 14 of the Settlement provides: "Where the INS determines that the detention of the minor is not required either to secure his or her timely appearance before the INS or the immigration court, or to ensure the minor's safety or that of others, the INS shall release a minor from its custody without unnecessary delay, in the following order of preference, to: A. a parent; B. a legal guardian; C. an adult relative (brother, sister, aunt, uncle, or grandparent); D. an adult individual or entity designated by the parent or legal guardian as capable and willing to care for the minor's well-being in (i) a declaration signed under penalty of perjury before an immigration or consular officer or (ii) such other document(s) that establish(es) to the satisfaction of the INS, in its discretion, the affiant's paternity or guardianship; E. a licensed program willing to accept legal custody; or F. an adult individual or entity seeking custody, in the discretion of the INS, when it appears that there is no other likely alternative to long term detention and family reunification does not appear to be a reasonable possibility."

Paragraph 18 of the Settlement provides: "Upon taking a minor into custody, the INS, or the licensed program in which the minor is placed, shall make and record the prompt and continuous efforts on its part toward family reunification and the release of the minor pursuant to Paragraph 14 above.  Such efforts at family reunification shall continue so long as the minor is in INS custody."

Plaintiffs are informed that Defendant ORR regularly refuses to release class members to custodians described in ¶ 14 on the ground that such proposed custodians are unfit.

Plaintiffs are advised that in deeming class members' proposed custodians unfit, ORR gives neither the class member nor the proposed custodian meaningful notice or an opportunity to be heard regarding the proposed custodian's fitness. Defendant ORR thereby ensures that class members are regularly continued in detention needlessly and in derogation of their rights under ¶¶ 14 and 18 of the Settlement, as well as their right to placement in the least restrictive setting consistent with a juvenile's best interests, in violation of § 235(c)(2)(A) of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, 110 Pub. L. 457, 122 Stat. 5044, *codified at* 8 U.S.C. § 1232(c)(2)(A) ("TVPRA").

2)   <u>Class-wide violations of ¶¶ 11, 19, 21, 23 and 24C: Peremptory placement of class members in unlicensed programs.</u>

Paragraph  19 of the Settlement provides: "Except as provided in Paragraphs 12 or 21, such minor shall be placed temporarily in a licensed program until such time as release can be effected in accordance with Paragraph 14 above or until the minor's immigration proceedings are concluded, whichever occurs earlier. ..."[2]

_____

[2] The Settlement defines a "licensed program" as a "program, agency or organization that is licensed by an appropriate State agency to provide residential, group, or foster care

**Exhibit 25**
**Page 124**

Paragraph 23 provides: "The INS will not place a minor in a secure facility pursuant to Paragraph 21 if there are less restrictive alternatives that are available and appropriate in the circumstances, such as transfer to (a) a medium security facility which would provide intensive staff supervision and counseling services or (b) another licensed program."

Paragraph 24C provides: "... Defendants shall provide minors not placed in licensed programs with a notice of the  reasons for  housing the minor in a detention or medium security  facility."

Plaintiffs are informed that ORR regularly places class members in staff-secure or secure facilities without providing them meaningful notice and an opportunity to be heard, either before or after placement, regarding the reasons for placing them in facilities that are not licensed to care for dependent juveniles. Rather, ORR regularly places class members ICE re-arrests in unlicensed programs on the basis of untested accusation, typically unsubstantiated allegations of gang-involvement.

As regards class members initially placed in licensed programs and subsequently "stepped up" to staff-secure or secure facilities, ORR's practice is to awaken class members in the middle of the night, order them to gather their belongings, and summarily transfer them to an unlicensed placement. ORR and its contractors tell such class members little or nothing about the reasons they are being sent to an unlicensed program, and ORR provides class members no meaningful opportunity to see, explain, or rebut the evidence that ostensibly justifies such transfers. Often, ORR steps up class members to secure or staff-secure placement on the basis of alleged minor infractions or misbehavior that could be effectively addressed via less drastic means.

Once ORR places class members in an unlicensed program, it affords them little or no notice or opportunity to be heard regarding the propriety of continuing them in staff-secure or secure settings. ORR's periodic reviews of class members' placement in staff-secure or secure facilities are wholly perfunctory, permitting detained youth little or no opportunity to be heard regarding the grounds for continuing them in secure or staff-secure placement.

ORR's placing class members in staff-secure and secure facilities, and continuing them in such placements, without providing a meaningful notice and opportunity to be heard regarding the cause for such placement, ensures that class members are regularly continued in unlicensed placements needlessly and in derogation of their rights under ¶¶ 11, 19, 21, 23 and 24C of the Settlement, as well as their right to placement in the least restrictive setting consistent with a juvenile's best interests, in violation of § 235(c)(2)(A)

---

services for dependent children, including a program operating group homes, foster homes, or facilities for special needs minors.  A licensed program must also meet those standards for licensed programs set forth in Exhibit 1 attached hereto.  All homes and facilities operated by licensed programs, including facilities for special needs minors, shall be non-secure as required under state law; ..."). Settlement Definition 6.

**Exhibit 25
Page 125**

of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, 110 Pub. L. 457, 122 Stat. 5044, *codified at* 8 U.S.C. § 1232(c)(2)(A) ("TVPRA"), and their right to have their interests properly considered in decisions and actions relating to their care and custody, in violation of 6 U.S.C. § 279(b)(1)(B).

3)   Class-wide violations of ¶¶ 7 and 12 at Shiloh RTC: Involuntarily and
     inappropriately medicating class members and/or in derogation of parental
     prerogative.

Paragraph 7 of the Settlement provides in pertinent part: "The INS shall assess minors to determine if they have special needs …" A minor may have special needs "due to drug or alcohol abuse, serious emotional disturbance, mental illness or retardation, or a physical condition or chronic illness that requires special services or treatment. A minor who has suffered serious neglect or abuse may be considered a minor with special needs if the minor requires special services or treatment as a result of the neglect or abuse."

Paragraph 12 of the Settlement provides in pertinent part: "Following arrest, the INS shall hold minors in facilities that are safe and sanitary and that are consistent with the INS's concern for the particular vulnerability of minors. Facilities will provide access  to toilets and sinks, drinking water and food as appropriate, medical assistance if the minor is in need of emergency services, adequate temperature control and ventilation, adequate supervision to protect minors from others, and contact with family members who were arrested with the minor."

Plaintiffs are informed that class members with special mental health needs housed at Shiloh Residential Treatment Center (RTC) are regularly medicated involuntarily and inappropriately. Plaintiffs are advised that class members are consistently placed on multiple psychotropic medications and are uninformed as to what medications they are being given. Class members report suffering negative side effects without any meaningful way of objecting to the propriety or efficacy of the medications they are prescribed.

Plaintiffs are further advised that class members are frequently medicated against their will at Shiloh RTC. Class members report being told that if they refuse to take a medication, their detention at Shiloh will be extended.  Some class members report being forcibly tranquilized and left in the middle of common areas until they recover; others report witnessing their peers being forcibly tranquilized. Some class members report that the treatment they receive at Shiloh is far from therapeutic. They report being subjected to inappropriate and abusive practices, including being screamed at, cursed at, and bullied by staff.

In addition, Plaintiffs are advised that ORR condones a policy and practice at Shiloh RTC whereby Shiloh case workers usurp class members' parents' authority to consent to medicating their children, even when such parents are readily accessible to ORR and/or Shiloh staff.

**Exhibit 25
Page 126**

Pursuant to Texas law, parents have the right to control their minor child's medical and dental care, as well as psychiatric, psychological and surgical treatment. Tex. Fam. Code Ann. § 151.001(a)(6). There are limited categories of non-parents that may consent to the health care treatment of a minor when the person having power to consent (parent or conservator) cannot be contacted and that person has not given express notice to the contrary. Tex. Fam. Code Ann. § 32.001. Within these categories, adults with "the actual care, control, and possession of the child" must still obtain "written authorization to consent from a person having the right to consent" in order to consent lawfully to a minor's receiving medical treatment. *Id*.

Plaintiffs are informed that Shiloh RTC staff, as a matter of policy and practice, do not obtain, nor even attempt to obtain, parental consent for the medical treatment of class members. Plaintiffs are advised that class members' parents have not given Shiloh RTC or ORR written permission to consent to class members' medical treatment, notwithstanding that class members' parents may be readily accessible to ORR and/or Shiloh RTC staff.

Plaintiffs are advised that Shiloh RTC staff have not been authorized by any court to consent to medical care on behalf of the class members. Instead, Shiloh RTC staff usurp parental prerogative to consent to medical treatment on behalf of class members as evidenced by the attached form.

Defendants are thereby in class-wide breach of ¶¶ 7 and 12 of the Settlement, as well as applicable Texas law.

4)    Class-wide violations of ¶ 12 and Exhibit 1: Denying class members contact with family members.

We are informed that Defendants are regularly separating class members from their parents shortly after arresting them as a family unit and thereafter denying such class members contact with their family members, even to the point of concealing the whereabouts of children from their parents and vice versa, as well as obstructing class members' ability to communicate with their parents telephonically.

As a result, Defendants are regularly detaining class members under conditions inconsistent with ¶ 12 of the Settlement, as well as with ¶¶ A.11 and A.12 of Exhibit 1 to the Settlement.

5)    Class-wide violations of ¶¶ 11 and 14: Blocking fair and open access to long-term foster care benefits.

Paragraph  11 of the Settlement provides: "The INS shall place each detained minor in the least restrictive setting appropriate to the minor's age and special needs, ..."

Plaintiffs are informed that Defendant ORR peremptorily—that is, without providing meaningful notice or an opportunity to be heard regarding eligibility for long-term foster

**Exhibit 25
Page 127**

care—denies class members services established pursuant to § 412(d) of the Immigration
and Nationality Act, *codified at* 8 U.S.C. § 1522(d), and thereby needlessly continues class
members in detention, in violation of ¶¶ 11 and 14 of the Settlement, 6 U.S.C. § 279(b)(3)
and TVPRA § 235(c)(2)(A).

6)   <u>Class-wide violations of ¶ 24: Denying class members legal assistance in matters
     relating to placement, detention and release.</u>

Paragraph 24A of the Settlement provides: "A minor in deportation proceedings shall be
afforded a bond redetermination hearing before an immigration judge in every case, unless
the minor indicates on the Notice of Custody Determination form that he or she refuses
such a hearing."

Paragraph 24B provides: "Any minor who disagrees with the INS's determination to place
that minor in a particular type of facility, or who asserts that the licensed program in which
he or she has been placed does not comply with the standards set forth in Exhibit 1
attached hereto, may seek judicial review in any United States District Court with
jurisdiction and venue over the matter to challenge that placement determination or to
allege noncompliance with the standards set forth in Exhibit 1."

Paragraph A.14 of Exhibit 1 to the Settlement requires licensed programs to provide class
members with "[l]egal services information regarding the availability of free legal
assistance, ..."

Plaintiffs are informed that ORR regularly precludes legal services providers funded
through the Vera Institute of Justice, pursuant to appropriation implementing TVPRA §
235(c)(5), from representing class members in legal proceedings or matters relating to
their placement, detention, or release.

As a practical matter, class members' rights to meaningful bond redetermination and
judicial review of their placement are dependent on their having legal assistance. In many
places, Vera Institute-funded providers are the only legal services class members have
available. ORR's blocking Vera Institute-funded legal services providers from representing
class members in legal proceedings or matters relating to their placement, detention, or
release violate ¶ 24 of the Settlement, as well as TVPRA § 235(c)(5).

* * * * *

**Exhibit 25
Page 128**

Sarah B. Fabian, *et al.*
December 19, 2017
Page 7 of 7

In accordance with ¶ 37 and Rule 7-3 of the Rules of the United States District Court for the
Central District of California, plaintiffs request that Defendants Attorney General,
Department of Homeland Security (DHS), and Office of Refugee Resettlement of the U.S.
Department of Health and Human Services ("Defendants") meet with plaintiffs
telephonically within the next seven days, or in person in the Central District of California
within the next fourteen days, in a good faith effort to resolve the matters discussed herein
and avoid the need for litigation. Please advise regarding proposed dates and times you are
available to confer.

Thank you,

Carlos Holguín
One of the attorneys for Plaintiffs

ccs:    Peter A. Schey, CHRCL
        William C. Silvis, OIL

**Exhibit 25**
**Page 129**

# Exhibit 26

Exhibit 26
Page 130

Flores Meet and Confer Discussion

Subject: Flores Meet and Confer Discussion
From: "Fabian, Sarah B (CIV)" <Sarah.B.Fabian@usdoj.gov>
Date: Fri, 12 Jan 2018 21:00:08 +0000
To: Leecia Welch <lwelch@youthlaw.org>, Cooper Holly <hscooper@ucdavis.edu>, Poonam Juneja <pjuneja@youthlaw.org>, Neha Desai <ndesai@youthlaw.org>, Carlos Holguín <crholguin@centerforhumanrights.org>
CC: "Alsterberg, Cara E. (CIV)" <Cara.E.Alsterberg@usdoj.gov>, "Murley, Nicole (CIV)" <Nicole.Murley@usdoj.gov>, "Silvis, William (CIV)" <William.Silvis@usdoj.gov>

Counsel:

During our meet and confer discussion on January 2, 2018, Defendants agreed to get back to you today regarding a few items from your meet and confer letter.

With regard to ORR's step-up process, ORR is willing to review the process to see if they believe that changes should be made, but do not commit to making any changes at this time. ORR also remains willing to review any examples you may provide regarding the issues you identified at Shiloh Treatment Center, which you had committed to providing to us by today.

With regard to the issue of facilitating communications, Defendants believe that a solution can be found to facilitate communications that is consistent with the Flores Settlement Agreement. Defendants are currently discussing a plan that would leverage existing technologies and address known issues. However, the details of the plan remain under discussion. Defendants agree to provide counsel with an update on the progress of this plan in thirty (30) days, or by Monday February 12.

In the meantime, to the extent counsel has known communications issues where minors have been unable to reach their parents or family members with whom the minor was arrested Defendants are willing to review these issues and facilitate communication if possible on an individualized basis.  In these cases, inquiries should be provided to me, including names, citizenship, A numbers, and dates of birth, to assist the agencies in facilitating the communications more quickly.

Please let me know if you have any questions regarding the above, or would like to talk further regarding these issues.
Best regards,

Sarah B. Fabian
Senior Litigation Counsel
Office of Immigration Litigation – District Court Section
Department of Justice
PO Box 868, Ben Franklin Station
Washington, DC 20044
(202) 532-4824

**Exhibit 26**
**Page 131**

3/7/18, 12:31 PM

# Exhibit 28

**Exhibit 28**
**Page 162**

# CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW

256 S. OCCIDENTAL BOULEVARD
LOS ANGELES, CA 90057
Telephone:  (213) 388-8693 Facsimile:  (213) 386-9484
www.centerforhumanrights.org

February 16, 2018

Sarah B. Fabian
Cara E. Alsterberg
Office of Immigration Litigation – District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044

*Via email.*

Re: *Flores*, et al., *v. Sessions,* et al., No. CV 85-4544 DMG (C.D. Cal.).

Dear Counsel:

Plaintiffs' counsel are in receipt of your email dated January 12, 2018, elaborating upon Defendants' positions with respect to certain of the matters discussed during the parties' meet-and-confer of January 2, 2018.

You therein stated that ORR is prepared to review its procedures for "stepping up" class members to staff-secure and secure facilities.

You further invited Plaintiffs to provide examples of class members' being obliged to take psychotropic medications without their parents' consent. On January 16, 2018, Plaintiffs forwarded a letter detailing two such cases and providing Defendants with full documentation corroborating the salient facts of both examples.

We have heard nothing from Defendants since regarding these matters.

You also agreed to provide Plaintiffs with an update on a plan to facilitate communication between class members and their parents and other adult relatives separated following arrest. Yesterday you advised that Defendants have "preliminarily discussed a framework" for such a plan and that Defendants "anticipate [they] ... will further discuss the plan," but provide no time frame within which Defendants expect to have mechanisms for such communication in place.

Plaintiffs remain hopeful that Defendants will remedy the foregoing violations of the *Flores* settlement, but we are unwilling to postpone formal enforcement indefinitely.

We accordingly ask that Defendants advise if they intend to afford class members greater process before they are denied licensed placements, and if so, what form such process will take and when and how it will be provided.

**Exhibit 28**
**Page 163**

Sarah B. Fabian, *et al.*
February 16, 2018
Page 2 of 2

We also ask that Defendants respond to our correspondence  of January 16, 2018, detailing
what changes, if any, ORR is prepared to make with respect to administering psychotropic
drugs to class members and when such changes, if any, will be put into effect.

Finally, we ask that Defendants explain how they intend to facilitate communication
between class members and their parents and other relatives and provide an approximate
date by which a plan for doing so will be put into effect.

Thank you,

Carlos Holguín
One of the attorneys for Plaintiffs

ccs:    Leecia Welch, NCYL
        Neha Desai, NCYL
        Poonam Juneja, NCYL
        Holly Cooper, U.C. Davis Legal Clinic
        Peter A. Schey, CHRCL
        William C. Silvis, OIL

**Exhibit 28**
**Page 164**

# Exhibit 29

**Exhibit 29**
**Page 165**

Subject: RE: Flores Meet and Confer Discussion
From: "Fabian, Sarah B (CIV)" <Sarah.B.Fabian@usdoj.gov>
Date: Sat, 3 Mar 2018 00:52:47 +0000
To: "crholguin@centerforhumanrights.org" <crholguin@centerforhumanrights.org>
CC: "'Leecia Welch'" <lwelch@youthlaw.org>, "'Cooper Holly'" <hscooper@ucdavis.edu>, "'Poonam Juneja'" <pjuneja@youthlaw.org>, "'Neha Desai'" <ndesai@youthlaw.org>, "Silvis, William (CIV) <William.Silvis@usdoj.gov>, "Schey Peter" <pschey@centerforhumanrights.org>, "Murley, Nicole (CIV)" <Nicole.Murley@usdoj.gov>, "Alsterberg, Cara E. (CIV)" <Cara.E.Alsterberg@usdoj.gov>

Carlos:

As Defendants previously explained by email and by phone, Defendants believe that existing processes in place comply fully with the *Flores* Settlement Agreement. Accordingly, with regard to the issues raised in your letter, while Defendants continue to review these processes to determine if any changes should be made, Defendants do not commit to making any changes to these existing processes at this time.

That said, although Defendants believe that their efforts towards facilitating communication between parents and their children who are separated while in Government custody go beyond the requirements of the *Flores* Agreement, Defendants continue to move forward with those efforts. Specifically, HHS, CBP, and ICE all have identified their existing policies and processes related to facilitating such communication, have discussed how those existing policies and processes can be used to coordinate between the agencies to facilitate such communication, and are taking steps to ensure compliance with those policies and processes. In so doing, HHS also considers the fact that its efforts to facilitate communication also must be consistent with its mandate under the TVPRA to provide for the care and custody of UAC. To further ensure that existing policies and processes are consistently applied, CBP and ICE are working together to develop automation in applicable technology systems to efficiently identify and prioritize communication at the earliest possible time Defendants do not have a final date for implementation of this fix, but intend to develop a timeline shortly.

Please let me know if you have any further questions regarding the above information. Please be aware that I will be out of the country, with limited access to email, from March 5-19. Therefore, during that time please ensure that my colleague Nicole Murley, who is cc'ed above, is included on any communications regarding this case.

Best regards,
Sarah


Sarah B. Fabian
Senior Litigation Counsel
Office of Immigration Litigation – District Court Section
(202) 532-4824

---

**From:** Carlos Holguin [mailto:crholguin@centerforhumanrights.org]
**Sent:** Friday, February 16, 2018 2:45 PM
**To:** Fabian, Sarah B (CIV) <sfabian@CIV.USDOJ.GOV>; Alsterberg, Cara E. (CIV) <caalster@CIV.USDOJ.GOV>
**Cc:** 'Leecia Welch' <lwelch@youthlaw.org>; 'Cooper Holly' <hscooper@ucdavis.edu>; 'Poonam Juneja' <pjuneja@youthlaw.org>; 'Neha Desai' <ndesai@youthlaw.org>; Silvis, William (CIV) <WSilvis@civ.usdoj.gov>; Schey Peter <pschey@centerforhumanrights.org>
**Subject:** Re: Flores Meet and Confer Discussion

Please see attached correspondence.

**Exhibit 29**
**Page 166**

3/7/18, 12:36 PM

Thank you.

--
Carlos Holguín
General Counsel
Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, California 90057
213.388-8693 x.309 (v)
213.386.9484 (fax)
http://www.centerforhumanrights.org
--

Fabian, Sarah B (CIV) wrote:

>    Counsel:
>
>    I write with an update regarding the agencies' work towards facilitating communication. I was
>    traveling this week, so I apologize that this is a couple of days later than stated below.
>
>    CBP, ICE and HHS have preliminarily discussed the framework for a plan that would allow minors to
>    have communications with family members with whom they were arrested.  This framework is
>    intended to encompass the ranges of facilities in which individuals can be processed and held, both as
>    minors and adults.  Additional internal operational discussions are occurring this week to discuss
>    available resources.  In the next month, we anticipate the three agencies will further discuss the plan,
>    with the goal of partial or full implementation in facilities where communication can be readily
>    facilitated, and a plan to address the remaining areas so that communication between minors and
>    family members across the range of facilities can be accomplished.
>
>    Please let me know if you have any follow up questions at this time.
>
>    Best regards,
>    Sarah
>
>
>    Sarah B. Fabian
>    Senior Litigation Counsel
>    Office of Immigration Litigation – District Court Section
>    (202) 532-4824
>
>    _____
>    **From:** Fabian, Sarah B (CIV)
>    **Sent:** Friday, January 12, 2018 4:00 PM
>    **To:** Leecia Welch <lwelch@youthlaw.org>; Cooper Holly <hscooper@ucdavis.edu>; Poonam Juneja
>    <pjuneja@youthlaw.org>; Neha Desai <ndesai@youthlaw.org>; Carlos Holguín
>    <crholguin@centerforhumanrights.org>
>    **Cc:** Alsterberg, Cara E. (CIV) <caalster@CIV.USDOJ.GOV>; Murley, Nicole (CIV)
>    <NMurley@civ.usdoj.gov>; Silvis, William (CIV) <WSilvis@civ.usdoj.gov>
>    **Subject:** Flores Meet and Confer Discussion
>
>    Counsel:
>
>    During our meet and confer discussion on January 2, 2018, Defendants agreed to get back to you

**Exhibit 29**
**Page 167**

today regarding a few items from your meet and confer letter.

With regard to ORR's step-up process, ORR is willing to review the process to see if they believe that changes should be made, but do not commit to making any changes at this time. ORR also remains willing to review any examples you may provide regarding the issues you identified at Shiloh Treatment Center, which you had committed to providing to us by today.

With regard to the issue of facilitating communications, Defendants believe that a solution can be found to facilitate communications that is consistent with the Flores Settlement Agreement. Defendants are currently discussing a plan that would leverage existing technologies and address known issues. However, the details of the plan remain under discussion. Defendants agree to provide counsel with an update on the progress of this plan in thirty (30) days, or by Monday February 12.

In the meantime, to the extent counsel has known communications issues where minors have been unable to reach their parents or family members with whom the minor was arrested Defendants are willing to review these issues and facilitate communication if possible on an individualized basis.  In these cases, inquiries should be provided to me, including names, citizenship, A numbers, and dates of birth, to assist the agencies in facilitating the communications more quickly.

Please let me know if you have any questions regarding the above, or would like to talk further regarding these issues.

Best regards,

Sarah B. Fabian
Senior Litigation Counsel
Office of Immigration Litigation – District Court Section
Department of Justice
PO Box 868, Ben Franklin Station
Washington, DC 20044
(202) 532-4824

**Exhibit 29**
**Page 168**

3/7/18, 12:36 PM