CARLOS R. HOLGUÍN (Cal. Bar No. 90754)
PETER A. SCHEY (Cal. Bar No. 58232)
Center for Human Rights & Constitutional Law
256 South Occidental Boulevard
Los Angeles, CA  90057
Telephone: (213) 388-8693
Email: crholguin@centerforhumanrights.org
          pschey@centerforhumanrights.org

LEECIA WELCH (Cal. Bar No. 208741)
National Center for Youth Law
405 14th Street, 15th Floor
Oakland, CA 94612
Telephone: (510) 835-8098
Email: lwelch@youthlaw.org

*Listing continues on next page*

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| Jenny Lisette Flores, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Jefferson B. Sessions, Attorney General, *et al.*,<br><br>Defendants. | Case No. CV 85-4544-DMG (AGRx)<br><br>EXHIBITS IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT (VOL. 2: EXS. 21-30, PAGES 109-73, REDACTED EXHIBITS ONLY)<br><br>Hearing:  May 18, 2018<br>Time:  9:30 a.m.<br>Room:  1st St. Courthouse<br>          Courtroom 8C |

## <u>REDACTED VERSIONS OF DOCUMENTS PROPOSED TO BE FILED UNDER SEAL</u>

1

2

*Counsel for Plaintiffs, continued*

3

HOLLY S. COOPER (Cal. Bar No. 197626)
Co-Director, Immigration Law Clinic

4

CARTER C. WHITE (Cal. Bar No. 164149)
Director, Civil Rights Clinic

5

University of California Davis School of Law

6

One Shields Ave. TB 30
Davis, CA 95616

7

Telephone: (530) 754-4833

8

Email: hscooper@ucdavis.edu
         ccwhite@ucdavis.edu

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBITS IN SUPPORT OF MOTION TO
ENFORCE SETTLEMENT
CV 85-4544-DMG (AGRx)

1    I, Carlos Holguín, do hereby declare that true and correct copies of the following

2    documents are attached hereto:

3                                    INDEX TO EXHIBITS

4

5    No.   Description                                                          Page(s)

6    1    Declaration of the Mother of Nicolás C., February 6, 2018
         (proposed to be filed partially under seal) ................................ 1-10

7

8    2    Declaration of Nicolás C., February 4, 2018 (proposed to be
         filed partially under seal) ...................................................... 11-19

9

10   3    Morrison Paso Case Review re: Nicolás C., September 17, 2017
         (proposed to be filed partially under seal) .............................. 20-26

11

12   4    Custody Order of the Immigration Judge re: Nicolás C.,
         December 19, 2017 (proposed to be filed partially under seal) ........... 27-28

13

14   5    Declaration of Leland Baxter-Neal, February 6, 2018 (proposed
         to be filed partially under seal) ............................................. 29-34

15

16   6    Email from Erich Corona re: Nicolás C., January 9, 2018
         (proposed to be filed partially under seal) .............................. 35-38

17

18   7    Declaration of James M. Owens, February 7, 2018 (proposed to
         be filed partially under seal) ................................................ 39-43

19
     8    ORR Interim Guidance re: Custody Hearings, July 18, 2017 ............. 44-55

20   9    Declaration of Daniella Q., February 28, 2018 (proposed to be
         filed partially under seal) ...................................................... 56-59

21

22   10   Declaration of Isabella M., December 1, 2017 (proposed to be
         filed partially under seal) ...................................................... 60-63

23

24   11   Supplemental Declaration of Isabella M., February 28, 2018
         (proposed to be filed partially under seal) .............................. 64-68

25

26   12   Declaration of the Mother of Isabella M., February 28, 2018
         (proposed to be filed partially under seal) .............................. 69-75

27

28   13   Declaration of Victoria R., February 28, 2018 (proposed to be
         filed partially under seal) ...................................................... 76-79

14    Declaration of David I., November 30, 2017 (proposed to be filed partially under seal) .................................................................. 80-84

15    Supplemental Declaration of David I., February 28, 2018 (proposed to be filed partially under seal) ........................................... 85-88

16    Declaration of Eduardo A., March 1, 2018 (proposed to be filed partially under seal) .................................................................. 89-93

17    Declaration of Rosa L., December 1, 2017 (proposed to be filed partially under seal) .................................................................. 94-97

18    Supplemental Declaration of Rosa L., February 28, 2018 (proposed to be filed partially under seal) ........................................ 98-100

19    Declaration of Gabriela N., December 1, 2017 (proposed to be filed partially under seal) .................................................................. 101-104

20    Supplemental Declaration of Gabriela N., February 28, 2018 (proposed to be filed partially under seal) ........................................ 105-108

21    Declaration of Arturo S., February 28, 2018 (proposed to be filed partially under seal) .................................................................. 109-112

22    ORR Form Notice of Placement in a Restrictive Setting, February 5, 2018 .................................................................. 113-115

23    ORR FAQ: July 2017 Bond Hearings for Unaccompanied Alien Children (UAC) .................................................................. 116-118

24    ORR FAQ: ORR Directors Release Decision, January 26, 2018 ..... 119-121

25    Letter from Carlos Holguín to Office of Immigration Litigation, December 19, 2017 .................................................................. 122-129

26    Email from Sarah Fabian re: Flores Meet and Confer Discussion, January 12, 2018 .................................................................. 130-131

27    Letter from Leecia Welch to Office of Immigration Litigation re: Psychotropic Medications, and Attachments, January 16, 2018 (proposed to be filed partially under seal) .............................. 132-161

28    Letter from Carlos Holguín to Office of Immigration Litigation, February 16, 2018 .................................................................. 162-164

iv

29    Email from Sarah Fabian re: Flores Meet and Confer
       Discussion, March 2, 2018 ............................................................. 165-168

30    Declaration of Javier C., November 15, 2017 (proposed to be
       filed partially under seal) ............................................................. 169-173

31    Declaration of Carlos A., November 16, 2017 (proposed to be
       filed partially under seal) ............................................................. 174-177

32    Declaration of Miguel B., November 16, 2017 (proposed to be
       filed partially under seal) ............................................................. 178-181

33    Declaration of Luis D., November 15, 2017 (proposed to be
       filed partially under seal) ............................................................. 182-192

34    Declaration of Andrés D., July 11, 2017 (proposed to be filed
       partially under seal) ..................................................................... 193-197

35    Declaration of Jorge E., July 11, 2017 (proposed to be filed
       partially under seal) ..................................................................... 198-205

36    Declaration of Gustavo H., July 11, 2017 (proposed to be filed
       partially under seal) ..................................................................... 206-210

37    Declaration of Roberto F., July 11, 2017 (proposed to be filed
       partially under seal) ..................................................................... 211-220

38    Declaration of Natalia T., November 21, 2017 (proposed to be
       filed partially under seal) ............................................................. 221-223

39    Declaration of Ricardo U., November 21, 2017 (proposed to be
       filed partially under seal) ............................................................. 224-226

40    Declaration of Sofia O., December 1, 2017 (proposed to be
       filed partially under seal) ............................................................. 227-231

41    Declaration of Gloria P., December 1, 2017 (proposed to be
       filed partially under seal) ............................................................. 232-235

42    Declaration of Edwin B., March 1, 2018 (proposed to be filed
       partially under seal) ..................................................................... 236-242

43    Letter from Carlos Holguín to Cynthia Nunes Colbert, et al., re:
       Legal Representation for Specified Class Members, March 12,
       2018 (proposed to be filed partially under seal) ......................... 243-246

44    Declaration of Samuel W., October 26, 2017 (proposed to be
      filed partially under seal) ...................................................................247-250

45    Declaration of Jaime V., October 26, 2017 (proposed to be filed
      partially under seal) ..........................................................................251-254

46    Declaration of Mateo X., October 26, 2017 (proposed to be
      filed partially under seal) ...................................................................255-256

47    Declaration of Mario Y., October 26, 2017 (proposed to be filed
      partially under seal) ..........................................................................257-260

48    Declaration of Maricela J., November 30, 2017 (proposed to be
      filed partially under seal) ...................................................................261-264

49    Declaration of Teresa K., November 30, 2017 (proposed to be
      filed partially under seal) ...................................................................265-268

50    Declaration of Diego E., January 16, 2018 (proposed to be filed
      partially under seal) ..........................................................................269-273

51    Declaration of Daniel F., March 21, 2018 (proposed to be filed
      partially under seal) ..........................................................................274-278

52    Declaration of Alejandro G., March 21, 2018 (proposed to be
      filed partially under seal) ...................................................................279-285

53    Transcript of Testimony of James De La Cruz, *Saravia v.
      Sessions*, Case No. 3:17-cv-03615-VC (N.D. Cal. June 29,
      2017), Dkt. No. 28 ............................................................................286-382

54    Defendant Brent Cardall's Responses to Plaintiff's Request for
      Admission, Set One, *Saravia v. Sessions*, Case No. 3:17-cv-
      03615-VC (N.D. Cal. Sept. 20-21, 2017), Dkt. No. 61-3 ................383-390

55    Declaration of Camila G., April 3, 2018 (proposed to be filed
      partially under seal) ..........................................................................391-396

56    Patient Profile – Active Medications of Victoria R., January 9,
      2018 (proposed to be filed partially under seal) ..............................397-398

57    Patient Profile – Active Medications of David I., November 27,
      2017 (proposed to be filed partially under seal) ..............................399-400

vi

58    Patient Profile – Active Medications of Rosa L., July 31, 2017
      (proposed to be filed partially under seal) ........................................ 401-402

59    Medication Information and Reconciliation and Over-the-
      Counter Medication Release Forms for Isabella M., September
      28-29, 2017 (proposed to be filed partially under seal) .................... 403-405

60    Medication Information and Reconciliation Form for Gabriela
      N., September 7, 2017 (proposed to be filed partially under
      seal) ..................................................................................................... 406-407

61    Medication Information and Reconciliation Form for Sofia O.,
      September 18, 2017 (proposed to be filed partially under seal) ....... 408-409

62    Yolo County Juvenile Detention Facility Parental Medical
      Authorization Form for Julio Z., December 14, 2016 (proposed
      to be filed partially under seal) ........................................................ 410-411

63    Patient Profile – Active Medications of Julio Z., December 12,
      2016 (proposed to be filed partially under seal) .............................. 412-413

64    Declaration of Julio Z., November 13, 2017 (proposed to be
      filed partially under seal) ................................................................. 414-424

65    Declaration of Sister of Victoria R., March 13, 2018 (proposed
      to be filed partially under seal) ........................................................ 425-431

66    Declaration of Proposed Sponsor of Victoria R., March 13,
      2018 (proposed to be filed partially under seal) .............................. 432-435

67    Declaration of Grandfather of Gabriela N., March 15, 2018
      (proposed to be filed partially under seal) ....................................... 436-441

68    Custody Order of the Immigration Judge re: Santiago H.,
      February 21, 2018 (proposed to be filed partially under seal) .......... 442-443

69    Order of the Immigration Judge with Respect to Custody re:
      Santiago H., March 20, 2018 (proposed to be filed partially
      under seal) ......................................................................................... 444-446

70    Email from Toby Biswas re: Santiago H. Follow Up, February
      23, 2018 (proposed to be filed partially under seal) ........................ 447-449

71    Case Review re: Santiago H., November 29, 2017 (proposed to
      be filed partially under seal) ............................................................. 450-452

72    ORR Information Memo re: Community Safety Initiative for
      the Unaccompanied Alien Children Program, August 16, 2017 ...... 453-457

73    Declaration of John Doe 1, *John Doe 1 v. Shenandoah Valley
      Juvenile Ctr. Comm'n*, Case No. 5:17-cv-00097-EKD-JCH,
      (W.D. Va. Jan. 17, 2018), Dkt. No. 34-1 ......................................... 458-464

74    Declaration of John Doe 2, *John Doe 1 v. Shenandoah Valley
      Juvenile Ctr. Comm'n*, Case No. 5:17-cv-00097-EKD-JCH,
      (W.D. Va. Jan. 5, 2018), Dkt. No. 34-2 ........................................... 465-471

75    Declaration of John Doe 3, *John Doe 1 v. Shenandoah Valley
      Juvenile Ctr. Comm'n*, Case No. 5:17-cv-00097-EKD-JCH
      (W.D. Va. Jan. 5, 2018), Dkt. No. 34-3 ........................................... 472-478

76    Declaration of D.M, *John Doe 1 v. Shenandoah Valley Juvenile
      Ctr. Comm'n*, Case No. 5:17-cv-00097-EKD-JCH, (W.D. Va.
      Jan. 2, 2018), Dkt. No. 34-5 ........................................................... 479-484

77    Declaration of R.B., *John Doe 1 v. Shenandoah Valley Juvenile
      Ctr. Comm'n*, Case No. 5:17-cv-00097-EKD-JCH, (W.D. Va.
      Jan. 8, 2018), Dkt. No. 34-6 ........................................................... 485-490

78    Transcript of Jonathan White, *Saravia v. Sessions*, Case No. 18-
      15114 (9th Cir. Oct. 27, 2017), Dkt. No. 9-2 ................................... 491-548

79    Exhibit 1 to Appellees' Request for Judicial Notice, *Saravia v.
      Sessions*, Case No. 18-15114 (9th Cir. March 16, 2018), Dkt.
      No. 20 .............................................................................................. 549-555

80    Stipulated Settlement Agreement, *Flores v. Reno*, Case No.
      CV 85-4544-RJK(Px) ..................................................................... 556-584

81    Declaration of Justin Mixon, October 19, 2017 ............................... 585-591

82    Email from Sarah Fabian re: Correspondence re: Legal
      Representation for Flores Class Members, March 23, 2018 ............. 592-594

83    Letter from James De La Cruz to Flores Counsel re:
      Psychotropic Medications, April 2, 2018 (proposed to be filed
      partially under seal) ....................................................................... 595-601

EXHIBITS IN SUPPORT OF MOTION TO
ENFORCE SETTLEMENT
CV 85-4544-DMG (AGRx)

84    Individual Service Plan – Residential Treatment for Victoria R.,
      Shiloh Treatment Center, Inc., December 26, 2017 (proposed to
      be filed partially under seal) ............................................................ 602-606

85    Declaration of Lorelei Alicia Williams, previously filed in this
      case in Docket No. 239-2, August 5, 2016 ...................................... 607-618

86    Declaration of Megan Stuart, previously filed in this case in
      Docket No. 239-2, August 1, 2016 .................................................. 619-646

87    Declaration of Carlos Holguín, April 10, 2018 ............................... 647-649

88    ORR Authorization for Medical, Dental, and Mental Health
      Care for Carlos A., July 31, 2017 (proposed to be filed partially
      under seal) ....................................................................................... 650-652

89    Declaration of Carter White, April 14, 2018, attaching Shiloh
      Treatment Center Consent to Medical Care Form ........................... 653-655

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 14th day of April, 2018, at Santa Clarita, California.

Respectfully submitted,

Carlos Holguín

/s/ Carlos Holguín

# Exhibit 21

## REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Exhibit 21
Page 109

I, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ declare as follows:

1.     This declaration is based on my personal knowledge. If called to testify in this case, I would testify competently about these facts.

2.     I am 16 years old. I came by myself to the United States from Mexico in 2017. I was taken to Southwest Key in San Diego, where I stayed for three months. I have been at Shiloh Residential Treatment Center for approximately nine months.

3.     I want to live with my dad, who is in San Jose, California, and he wants me to live with him. He applied to be my sponsor and has been trying to reunify with me since I was at Southwest Key. When I was at Southwest Key, I was told that I would be released to my dad within three months. Things move much faster at Southwest Key. Things move very slowly at Shiloh. We have been waiting to reunify for about one year. My dad completed all the reunification requirements. He completed a home study, and it went well. I talk with him twice a week. I have been told that the doctor has to say it is alright to release me to my dad. I was supposed to be released at the end of this month, but I was told that I am a bit aggressive, so I am still here. My brother was murdered recently, so I have been more sad than normal.

4.     I can't remember exactly when this happened, but a few months ago, an attorney met with me and explained that I had a right to seek a bond hearing. I signed a form requesting a bond hearing, but the attorney never came back, and I've never had a bond hearing.

5.     I take two types of medications. I am told that both medications are for depression.

6.     I have said bad words to other minors here. The staff here say I need to behave myself. No one has ever accused me of being in a gang.

7.     I would rather be living with my dad rather than living at Shiloh right now.

Exhibit 21
Page 110

1    I declare under penalty of perjury that the foregoing is true and correct.  Executed on this

2    ____ day of _____, 2018, at _____, Texas.

Exhibit 21
Page 111

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF TRANSLATION

I, ⁓SAN JUANA CASTILL⁓ hereby certify that I am proficient in both Spanish and English, and that I accurately translated the foregoing statement and read it back to ███████████ in its entirety in Spanish on  February 28, 2018 .

San Juana Castillo

Exhibit 21
Page 112

# Exhibit 27

**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

**Exhibit 27
Page 132**



**National Center for Youth Law**

BOARD OF DIRECTORS

*President*
**Peter B. Edelman**
Georgetown University Law Center

*Vice President*
**Christopher Wu**
Casey Family Programs

*Secretary*
**Brian Rocca**
Morgan, Lewis & Bockius LLP

*Treasurer*
**James D. Weill**
Food Research & Action Center (FRAC)

**Mary Bissell**
ChildFocus

**Alexander L. Brainerd**
Judicial Arbitration and Mediation Services, Inc. (JAMS)

**David E. Brown**
The Annie E Casey Foundation

**Thomas Ehrlich**
Stanford University School of Education

**Laura K. Lin**
Munger Tolles & Olson LLP

**Jack Londen**
Morrison & Foerster LLP

**Walter Patrick Loughlin**
K&L Gates LLP

**Mary E. McCutcheon**
Farella, Braun + Martel LLP

**Ryan J. Smith**
The Education Trust-West

**Jory C. Steele**
Stanford Law School

*Executive Director*
**Jesse Hahnel**

Tuesday, January 16, 2018

Sarah B. Fabian
Office of Immigration Litigation – District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044

Judith Haron
Department of Health and Human Services
Office of the General Counsel
330 Independence Ave., S.W., Room 4280-Cohen Bldg.
Washington, DC 20201

*Via email.*

Re: *Flores*, et al., *v. Sessions,* et al., No. CV 85-4544 DMG (C.D. Cal.).

Dear Counsel:

Thank you for considering measures to address the inappropriate administration of psychotropic medications to children in the custody of the Office of Refugee Resettlement ("ORR").

Psychotropic medications have profound and long-lasting impacts on children. As federal District Court Judge Laughrey recently explained,

> Psychotropic drugs are powerful medications that directly affect the central nervous system. They are particularly potent when administered to children. Children administered psychotropic medications are at particularly serious risk of long-lasting adverse effects. They are more vulnerable to psychosis, seizures, irreversible movement disorders, suicidal thoughts, aggression, weight gain, organ damage, and other life-threatening conditions.

*M.B. v. Corsi*, No. 2:17-cv-04102-NKL, 2018 U.S. Dist. LEXIS 3232, at * 4 (W. D. Mo. Jan. 8, 2018)

Many psychotropic medications have limited or no approved uses by the Food & Drug Administration ("FDA") for children and adolescents. For example, while a few antipsychotic medications have some FDA-approved uses with older children or adolescents, some, including several of those administered to the youth described below (e.g., Lurasidone and Ziprasidone), have no FDA-approved uses for persons below age 18. In addition, many antidepressants have a "black box" warning for children and youth. A black box warning is the strictest warning put in the labeling of prescription drug by the FDA when there is reasonable evidence of an association of a

405 14th Street, 15th Floor, Oakland, CA 94612-2701 | 510.835.8098 tel | 510.835.8099 fax
info@youthlaw.org • www.youthlaw.org

**Exhibit 27**
**Page 133**

serious hazard with the drug.  The black box warning for antidepressants advises that they may increase the risk of suicidal thinking and behavior in some children and adolescents.

As described in Plaintiffs' letter of December 19, 2017, class members with special mental health needs, particularly those housed at the Shiloh Residential Treatment Center ("Shiloh RTC"), are regularly placed on multiple psychotropic medications, told little or nothing about these medications, and often suffer negative side effects from such medications without recourse.  The evidence also shows that children are often medicated at Shiloh RTC without the consent of parents who are present in the United States and accessible to facility and ORR staff.

During the parties' meet-and-confer of January 2, 2018, Defendants requested that Plaintiffs supply specific examples of these allegations; we do so below.

████████████████████████████

████████████████████████ came into federal immigration custody on February 21, 2016.  Attachment 1. He was transferred to Shiloh RTC on March 14, 2016, Attachment 2, where he remained until April 12, 2016. Attachment 3.

While at Shiloh RTC, ███████ was prescribed multiple psychotropic medications: Prazosin, Quetiapine, Sertraline, and Olanzapine.  Attachment 4.  This combination of drugs includes two antipsychotics, an antidepressant, and an antihypertensive (sometimes prescribed for adults for anxiety or posttraumatic stress disorder ("PTSD")).  The concurrent administration of more than one antipsychotic medication and/or multiple classes of psychotropic medications conflicts with professional association guidelines.  Children administered multiple psychotropic medications at the same time suffer from an increasing number and severity of adverse effects.  Published research also confirms that the administration of an antipsychotic and antidepressant concurrently to children or youth substantially increases the likelihood they will develop Type II diabetes and other cardiovascular problems.

Parents of youth prescribed these drugs are cautioned to weigh carefully the risks and benefits of taking them. For example, the National Institute of Health cautions parents of youth prescribed Quetiapine as follows: "[Y]our parent, or your caregiver should talk to your doctor about the risks and benefits of treating your condition with an antidepressant or with other treatments.  You should also talk about the risks and benefits of not treating your condition.  You should know that having depression or another mental illness greatly increases the risk that you will become suicidal."  National Institute of Health, U.S. National Library of Medicine, available at Medline Plus, available at https://medlineplus.gov/druginfo/meds/a698019.html.

Plaintiffs' review of ███████ ORR file, produced December 27, 2017, uncovered nothing to indicate this his mother had consented to ███████ being given psychotropic medications.  Nothing prevented Shiloh RTC from seeking ███████ mother's consent to medicating him.  Shiloh RTC knew that Lutheran Social Services had already begun evaluating ███████ mother as a potential custodian for him, Attachment 5, and that his mother resided in Nebraska.  Attachment 6.  Shiloh RTC also logged ███████ numerous phone calls to his mother, Attachment 7, foreclosing the possibility that Shiloh RTC staff could not have reached her via telephone.

405 14th Street, 15th Floor, Oakland, CA 94612-2701  |  510.835.8098 tel  |  510.835.8099 fax

info@youthlaw.org • www.youthlaw.org

Exhibit 27
Page 134

Plaintiffs' review of ████ ORR file uncovered nothing to indicate that at Shiloh RTC ████ himself had consented to taking psychotropic medications. When he was later transferred to Yolo County Juvenile Detention Facility, his ORR file notes that "he does not want to continue taking the medication as he feels it is pointless." Attachment 8. The Yolo County case management notes report the following response to ████ objection: "I informed youth that we continue to work towards his goal of reunification but has to do his part in … being medication compliant." *Id.*

████████████ came into federal immigration custody in January 2016. He was transferred to Shiloh RTC in June of 2016 where he remained until December 2016.

During his time at Shiloh RTC, ████ was placed on numerous psychotropic medications including Duloxetrine, Clonazepam, Olanzapine, Geodon, Latuda, Divalproex, and Haloperidol. Attachment 9. This combination of drugs includes four different classes of medication, the majority of which, four of the six, are antipsychotics with very limited FDA-approved uses in children and adolescents. The use of multiple antipsychotic medications at the same time is inconsistent with medical guidelines. Moreover, the use of Clonezepam (trade name Klonipin) indicates that the other drug combination may have caused significant adverse effects – such as akathisia, a severe movement disorder.

ORR Records indicate that, at times, ████ was simultaneously placed on six psychotropic drugs, plus two additional drugs "as needed." Attachment 9. In addition to the regular psychotropic medications he was placed on, ████ was forcibly medicated on several occasions at Shiloh RTC, as well. Plaintiffs' review of ████ file revealed nothing to indicate that either ████ or any family members provided consent for any of these medications.

An independent psychologist who evaluated ████ concluded that the multiple diagnoses ████ was assigned while at Shiloh RTC were not justified based on his behavior and clinical presentation. For example, ████ was diagnosed with Psychotic Disorder when he displayed none of the typical features of a psychotic disorder, but instead presented with autoimmune encephalitis and pneumonia. During his time at Shiloh RTC, the Shiloh psychologist identified multiple diagnoses, including Psychotic Disorder, Obsessive Compulsive Disorder and Bipolar Disorder assigned to ████ that were inconsistent with his behavior. These diagnoses resulted in the prescription of inappropriate medications that had adverse side effects, including weight gain of almost 100 pounds. After ████ arrived at Yolo County Juvenile Detention Facility, the Yolo psychologist recommended that he taper off of his medications. Attachment 10. Records indicate that ████ health and behavior improved after his medications were reduced. Attachment 11.

The foregoing examples are no aberration, rather they are representative of medication practices prevailing at facilities in which ORR regularly places class members. Detaining class members at Shiloh RTC—as regards the administration of psychotropic medications and in numerous other respects—is peculiarly at odds with Defendants' obligation to house children in facilities that are "safe and sanitary and that are consistent with [a]

3

concern for the particular vulnerability of minors."  Flores Settlement ¶ 12.  We accordingly urge ORR to stop placing class members at Shiloh RTC entirely.[1]  Should it decline to do so, ORR should at a very minimum

---

[1] The Shiloh RTC is owned and operated by the same entity that formerly operated Daystar Treatment Center, also in Manvel, Texas.

In December 2015, the U.S. District Court for the Southern District of Texas had this to say about the Daystar facility:

> [Texas Child Care Licensing] has closed one facility in the past five years, but it is a story of horror rather than optimism regarding enforcement. The Daystar facility in Manvel, Texas had a capacity of 141 children. Between 1993 and 2002, three teenagers died at Daystar from asphyxiation due to physical restraints. In most cases, the children were hog-tied. Beyond these deaths, there were reports of sexual abuse and staff making developmentally disabled girls fight for snacks. Numerous stakeholders, including the district attorney, spoke out against Daystar, but the facility kept its license. In November 2010, a fourth child died in what was ruled a homicide by asphyxiation due to physical restraints. Daystar's license was still not revoked until January 2011. [Texas Department of Family and Protective Services] allowed this facility—that was responsible for four deaths, numerous allegations of sexual abuse, and unthinkable treatment of developmentally disabled children—to operate for 17 years. ... The Court understands DFPS's concern that enforcement might affect placement availability. The Court does not understand, nor tolerate, the systemic willingness to put children in mortal harm's way. The Court finds that [Texas Department of Family and Protective Services'] inadequate licensing and inspecting causes an unreasonable risk of harm to [Licensed Foster Care] children.

*M.D. v. Abbott*, 152 F. Supp. 3d 684, 803-04 (S.D. Tex. 2015).

In December 2014, the Houston Chronicle published an expose about the Shiloh RTC itself. Carroll, *Federal agency's shelter oversight raises questions*, Houston Chronicle (US & World), Dec. 19, 2014, *available at* www.houstonchronicle.com/news/article/Federal-agency-s-shelter-oversight-raises-5969617.php (last visited December 28, 2017).

Shortly thereafter, Congresswoman Sheila Jackson Lee, a senior member of the House Homeland Security and Judiciary Committees and Founder and Co-Chair of the Congressional Children's Caucus released the following statement:

> I am appalled by record of abuse and mistreatment of children at the Shiloh Treatment Center in Manvel documented by the Houston Chronicle in an expose published December 19, 2014. The abuses documented in that report – ranging from physical violence, unreasonable and excessive use of physical restraints, administering emergency medications without notice to governmental authorities, and several deaths of minor children while in custody – is not reflective of the quality of care and support that should be provided to the at-risk children, including the dozens of unaccompanied immigrant children, committed to its care.

405 14th Street, 15th Floor, Oakland, CA 94612-2701  |  510.835.8098 tel  |  510.835.8099 fax

info@youthlaw.org • www.youthlaw.org

**Exhibit 27
Page 136**

*dramatically* increase its scrutiny of the treatment and conditions children experience during ORR custody at Shiloh RTC.

We look forward to Defendants' response to the foregoing.

Sincerely,

Leecia Welch
One of the attorneys for Plaintiffs

---

jacksonlee.house.gov/media-center/press-releases/shiloh-treatment-center-in-manvel-should-be-closed-by-hhs-for (last visited December 28, 2017).

405 14th Street, 15th Floor, Oakland, CA 94612-2701  |  510.835.8098 tel  |  510.835.8099 fax
info@youthlaw.org • www.youthlaw.org

**Exhibit 27**
**Page 137**

# Attachment 1

Exhibit 27
Page 138

U.S. Department of Homeland Security

**Warrant for Arrest of Alien**

FINS #:1200597984

File No. 
Event No:MCS1602000568
Date: February 22, 2016

To any officer delegated authority pursuant to Section 287 of the Immigration and Nationality Act:

From evidence submitted to me, it appears that:

_____
(Full name of alien)

an alien who entered the United States at or near _____HIDALGO, TEXAS_____ on
                                                              (Port)

**February 21, 2016**____ is within the country in violation of the immigration laws and is
     (Date)

therefore liable to being taken into custody as authorized by section 236 of the Immigration and Nationality Act.

By virtue of the authority vested in me by the immigration laws of the United States and the regulations issued pursuant thereto, I command you to take the above-named alien into custody for proceedings in accordance with the applicable provisions of the immigration laws and regulations.

_____
(Signature of Designated Immigration Officer)
WILLIAM A. RAMSEY
_____
(Print name of Designated Immigration Officer)

ACTING PATROL AGENT IN CHARGE
_____
(Title)

### Certificate of Service

Served by me at ___McAllen, Texas___ on __February 22, 2016__ at ___04:42 AM___ .
I certify that following such service, the alien was advised concerning his or her right to counsel and was furnished a copy of this warrant.

FELIX GARCIA
_____
(Signature of officer serving warrant)

Border Patrol Agent
_____
(Title of officer serving warrant)

Form I-200 [Rev. 08/01/07] N

Exhibit 27
Page 139

# Attachment 2

**Exhibit 27**
**Page 140**

Shiloh Treatment Center

Psychosocial History
*Office of Refugee Resettlement*

**Treatment History**

Have you ever been taken to the hospital or emergency room because you were hurt?

Denied

Have you ever talked to a psychiatrist or counselor about an emotional problem?

@ previous placement for SI

Have you ever been seen in a psychiatric emergency room or been hospitalized for psychiatric reasons?

@ prev. placement for SI

Have you ever been advised to take medication for anxiety, depression, hearing voices for any other emotional problems?

Rx for depressive symptoms. given @ prev. placement.

List the shelters, foster homes and facilities you have resided in since being detained in the United States.

| Facility or Organization | Dates of Placement | Type of Care | Outcome |
|---|---|---|---|
| Lutheran Social Service NY | 2/23/16 – 3/14/16 | shelter | transfer to RTC |
| Bellevue Hospital | 2/26/16 – 3| | Hospital | discharged |
| Shiloh RTC | 3/14/16 – present | RTC | — |

**Substance Abuse History**

☐ Denies Any History of Substance Abuse

| Substance | Date of First Use | Frequency | Date of Last Use |
|---|---|---|---|
| Alcohol | | | |
| Marijuana | | | |
| Cocaine | | | |
| Other Stimulants (Meth, Ritalin, etc.) | | | |
| Other Opiates (Oxycodone, Morphine) | | | |
| Nicotine | ≃ 13/14 years old | 10 cigarettes / day | ≃ 2/22/16 |

Triggers for Substance Abuse: N/A

Consequences of Substance Abuse:

# Attachment 3

Exhibit 27
Page 142

identified?

Specify:

| Mental Health |
|---|

Provide a short summary of the UAC's current functioning:

05/12/2016 - ▮▮▮ was transferred to NOVA from Shiloh RTC on 4/12/2016, but he came into ORR care on 02/23/2016. During this time, he moved from a shelter, to a psychiatric hospital, to a residential treatment center, ultimately being placed in NOVA secure. Upon arrival, ▮▮▮ initially presented with severe depression and complications associated with a traumatic head injury, resulting in psychiatric hospitalization for crisis stabilization and a recommendation for on-going inpatient treatment. He was also prescribed seroquel and zoloft to manage his mood and sleep. However, while at Shiloh, ▮▮▮ began exhibiting aggressive behaviors towards staff and peers, which resulted in the move to NOVA.

Upon his arrival, ▮▮▮ exhibited symptoms of depression and he reported symptoms of PTSD. He also refused to leave his room and made threats against staff and peers. However, it seemed that, as a result of his traumatic experiences, ▮▮▮ was afraid to leave his room and would use threats to avoid having to leave. He was assessed by the psychiatrist, who added Minipress to his medication regimen to treat his PTSD. Clinician also recommended a slow integration into the community to ease his anxiety about being in a secure environment. In the past two weeks, ▮▮▮ has reported an improvement in depression, anxiety and sleep and a decrease in threatening and destructive behavior. He also reported a decrease in intrusive thoughts. He has been able to attend school every day for almost all of the school day. Finally, he participates appropriately in therapy and is committed to continuing his medication regimen. If he is able to maintain this behavior, clinician will discuss whether to refer the UC back to a residential treatment center for intensive treatment or to a staff secure program.

Psychological Evaluation

Date of
Evaluation:

Evaluator:

Axis I:

Axis II:

Axis III:

Axis IV:

Axis V:

Summary of Recommendations:

| Trafficking |
|---|

Who planned/organized your journey?

What were you told about the arrangements before the journey?

Did the arrangements change during the journey?                                                       ○ ●
                                                                                                    Yes No

If yes, how?

Does your family owe money to anyone for the journey?                                                  ○ ●
                                                                                                    Yes No

If yes, how much?

Whom is the money owed?

Who is expected to pay?

What do you expect to happen if payment is not made?

Coercion Indicators

Did anyone threaten your or your family?                                                               ○ ●
                                                                                                    Yes No

If yes, who made the threats?

Were you ever physically harmed?                                                                       ○ ●
                                                                                                    Yes No

If yes, how?

Was anyone around you ever physically harmed?                                                          ○ ●
                                                                                                    Yes No

If yes, who?

Were you ever held against your will?                                                                  ○ ●
                                                                                                    Yes No

If yes, where?

Did anything bad happen to anyone else in this situation or anyone else who tried to leave?            ○ ●
                                                                                                    Yes No

What happened and to whom?

Did anyone ever keep/destroy your documents?                                                           ○ ●
                                                                                                    Yes No

If yes, who and what?

Did anyone ever threaten to report you to the police/immigration?                                      ○ ●
                                                                                                    Yes No

If yes, who?

Are you worried anyone might be trying to find you?                                                    ○ ●
                                                                                                    Yes No

If yes, who?

Debt Bondage/ Labor Trafficking

Did you perform any work or provide any services?                                                     ○ ●
                                                                                                    Yes No

Exhibit 27
Page 143

# Attachment 4

**Exhibit 27**
**Page 144**

04/04/2016

## Patient Profile - Active Medications

**Client:** ███████████████████                    **Teaching Home:** 58-B
**Physician:** JAVIER RUIZ-NAZARIO, MD
**Allergies:** No Known Drug Allergy

| Rx # | Medication | | Instructions | Start Date |
|---|---|---|---|---|
| | | | *** Psychotropic Medications *** | |
| 53227 | PRAZOSIN HCL | CAP 2MG | TAKE 1 CAPSULE BY MOUTH DAILY at 9:00 PM | 03/16/2016 |
| 53285 | QUETIAPINE | TAB 200MG | TAKE 1 TABLET BY MOUTH DAILY at 9:00 PM | 03/29/2016 |
| 53249 | SERTRALINE | TAB 50MG | TAKE 1 & 1/2 TABLETS BY MOUTH DAILY at 7:45 AM | 03/22/2016 |
| | | | *** PRN Psychotropic Medications *** | |
| 53294 | OLANZAPINE | TAB 10MG | TAKE 1 TABLET BY MOUTH EVERY 6 HOURS AS NEEDED FOR MILD AGITATION | 03/30/2016 |
| 53300 | OLANZAPINE | TAB 10MG ODT | DISSOLVE 1 TABLET BY MOUTH EVERY 6 HOURS AS NEEDED FOR MODERATE AGITATION | 03/31/2016 |
| | | | *** Non-Psychotropic Medications *** | |
| 53230 | BAC/NEO/POLY | OIN | APPLY TO AFFECTED AREA ON FEET TWICE A DAY at 7:45 AM and 9:00 PM | 03/16/2016 |
| 53229 | DEEP SEA | SPR 0.65% | INHALE 2 SPRAYS INTO NOSTRIL TWICE A DAY AS NEEDED at 7:45 AM and 9:00 PM | 03/16/2016 |
| 53295 | OLANZAPINE | INJ 10MG | INJECT 10MG INTRAMUSCULARLY EVERY 6 HOURS AS NEEDED FOR SEVERE AGITATION | 03/30/2016 |

**Exhibit 27**
**Page 145**

# Attachment 5

Exhibit 27
Page 146

**Admission Assessment**                                  Name: ███████████████

Shiloh Treatment Center, Inc.                                      Case#: ████████

Honduras. He tried again on 1-31-16, leaving alone and on foot, and paying his own way. He stopped in Mexico a few times to work in construction and to save up more money for the remainder of his trip. He asked other travelers along the way for directions, and traveled with other groups of travelers when he could. He crossed the border near Hidalgo by swimming across the river and then walking through the desert. He was apprehended by border guards on 2-21-16 and sent to shelter at Lutheran Social Services while his case could be evaluated.

He was placed at Lutheran Social Services in New York on 2-23-16, where he made runaway threats and suicidal threats with a plan and he was sent to Bellevue Hospital for psychiatric inpatient services on 2-26-16. During his treatment at previous facilities, he has also shared that he has suffered from many traumatic events. He reported that he has intruding flashbacks from witnessing his uncle getting shot in the leg by gang members, and eventually having to have that leg amputated. He also reported witnessing several other gang related incidences which included his grandmother getting injured, and being robbed by gang members while riding the train through Mexico. LSS has referred him to Shiloh Treatment Center for subacute care and a 30-day psychiatric evaluation while his mother is attempting to be approved as his sponsor so that they can reunite.

| | |
|---|---|
| Aliases: | None reported |
| Marital Status: | Single |
| Abuse, Neglect, Persecution, or Exploitation: | Abandonment by father. History of severe traumatic events instigated by gang members in home country, and while traveling to the US. |
| Typical Day in Home Country: | ██████ reports that he would wake up at 5am, eat breakfast, and go to work in the fields. He quit school in 2012 so that he could work and save money to come to the US. Work ended at 2pm, when he would return home, relax, listen to music, and clean up and get ready for dinner at 6:30. Depending on how tired he was, he would go to bed between 8 and 11. |

**Physical Characteristics:**       He is of average weight and height, and appears his stated age.

| | |
|---|---|
| Size: | 5'-7""   170 lbs. |
| Characteristics: | He has a medium complexion with brown eyes and black hair that he wears short and spiked up. He has some scars on his head from injuries sustained in home country. |

Exhibit 27
Page 147

# Attachment 6

Exhibit 27
Page 148

Shiloh Treatment Center

Psychosocial History
*Office of Refugee Resettlement*

Recreation and Leisure, Extracurricular Activities or Vocational Interests: Listen to music, watch TV

---

Sexually Active: ☑Yes  ☐No

Sexually Orientation: ☑Heterosexual  ☐Homosexual  ☐Bi-sexual

History of Sexual Activity: began sexual activity at age 12

## Legal History

☐Denies Any Involvement With Legal System

Arrests: Was detained with COO. Client states it was mistaken in

Pending Charges (None) identity. 2nd time because client was detained →

Pending Court Case: None

Probation: None        Probation Officer: N/A

Relationship Between Presenting Conditions and Legal Involvement: N/A

## Family History

Birthplace (City, State, Country): Olancho, Honduras

Current place of residence (City, State): Manvel, TX

*List Family Members and Persons Living in Home Country.*

| Name | Relationship to Client | Age | Country |
|---|---|---|---|
| ███████████ | M. Grandmother, but BC reports her as bio mother | ? | Honduras |
| ██████ | uncle | ≈40 | Honduras |
| | | | |
| | | | |
| | | | |
| | | | |

*List Family Members and Persons Living in the United States.*

| Name | Relationship to Client | Age | City, State |
|---|---|---|---|
| ████████████████ | Bio. Mother | ? | Nebraska |
| | Step-father | ? | Nebraska |

# Attachment 7

**Exhibit 27**
**Page 150**

Shiloh Treatment Center, Inc.

## Monthly Phone Log

Client: ████████████████████████████████

Month: April          Year: 2016

*Record all calls made or received by the client, as well as all calls Shiloh staff makes or receives on behalf of the client.*

| Source of Call | Date | Time | Call From / To | Individual(s) Called or Calling *List All* | Duration | Reason For / Details of Call | Client Initials |
|---|---|---|---|---|---|---|---|
| ☑Initiated ☐Received | 04/05 16 | 11:35 AM | ☑Client ☐Service Director | Mom | 15 min | Weekly Call | ████ |
| ☑Initiated ☐Received | 04/05 16 | 11:45 | ☐Client ☐Service Director | Sponsor | 15 min | Weekly call | ████ |
| ☑Initiated ☐Received | 04/08 16 | 1:00 PM | ☑Client ☐Service Director | Sponsor | 15 min | weekly call | ████ |
| ☐Initiated ☐Received | | | ☐Client ☐Service Director | | | | |
| ☐Initiated ☐Received | | | ☐Client ☐Service Director | | | | |
| ☐Initiated ☐Received | | | ☐Client ☐Service Director | | | | |
| ☐Initiated ☐Received | | | ☐Client ☐Service Director | | | | |
| ☐Initiated ☐Received | | | ☐Client ☐Service Director | | | | |

Revised 01/22/15

**Exhibit 27**
**Page 151**

Attachment 8

Exhibit 27
Page 152

# Yolo County Juvenile Detention Facility
## Office of Refugee Resettlement Program: Yolo Secure Facility
## Case Management Notes

| Youth Name: | ██████████████████ |
|---|---|
| **DOB:** | ████/2000 |

| | |
|---|---|
| Date: 11/18/2016 Case Manager: Jose C. | Met with youth to discuss recent behavioral issues. Youth reported he has been frustrated with the actions of other youth in his housing unit and his current case status. Youth was reminded of what has been requested in his case and the completion of an Interpol check. Youth reported he does not want to continue taking medication as he feels it is pointless. We discussed his concerns and how he should follow up with the Dr. for clarification on medication and possible adjustment. Youth stated he is not interested in speaking with the Dr. I informed youth that we continue to work towards his goal of reunification but has to do his part in correcting his behavior and being medication compliant. Youth was provided a phone call to his mother for an update and to discuss his recent behavioral issues. Was reminded that his Clinician will be facilitating family session as well. |
| Date: Click here to enter a date. Case Manager: Choose an item. | |
| Date: Click here to enter a date. Case Manager: Choose an item. | |
| Date: Click here to enter a date. Case Manager: Choose an item. | |
| Date: Click here to enter a date. Case Manager: Choose an item. | |
| Date: Click here to enter a date. Case Manager: Choose an item. | |
| Date: Click here to enter a date. Case Manager: Choose an item. | |
| Date: Click here to | |

**Exhibit 27**
**Page 153**

# Attachment 9

**Exhibit 27**
**Page 154**

12/12/2016

## Patient Profile - Active Medications

Client: ██████████████

Teaching Home: 58-A

Physician: JAVIER RUIZ-NAZARIO, MD

Allergies:

| Rx # | Medication | | Instructions | Start Date |
|------|-----------|---|--------------|-----------|
| | | | *** Psychotropic Medications *** | |
| 53713 | BENZTROPINE | TAB 1MG | TAKE 1 TABLET BY MOUTH DAILY at 9:00 PM | 07/05/2016 |
| 54435 | CLONAZEPAM | TAB 2MG | TAKE 1 TABLET BY MOUTH TWICE A DAY at 7:45 AM and 9:00 PM | 12/12/2016 |
| 54434 | DIVALPROEX | TAB 500MG ER | TAKE 1 TABLET BY MOUTH TWICE A DAY at 7:45 AM and 9:00 PM | 12/12/2016 |
| 53974 | DULOXETINE | CAP 60MG | TAKE 1 CAPSULE BY MOUTH DAILY at 7:45 AM | 09/14/2016 |
| 54427 | GUANFACINE | TAB 2MG ER | TAKE 1 TABLET BY MOUTH DAILY at 7:45 AM | 12/06/2016 |
| 54384 | LATUDA | TAB 120MG | TAKE 1 TABLET BY MOUTH DAILY FOR 4 DAYS THEN INC at 9:00 PM | 11/29/2016 |
| 54385 | LATUDA | TAB 40MG | TAKE 1 TABLET BY MOUTH DAILY (TAKE ALONG WITH 160MG AFTER BEING ON 120MG 4 DAYS) at 9:00 PM | 11/29/2016 |
| | | | *** PRN Psychotropic Medications *** | |
| 53580 | GEODON | INJ 20MG | INJECT 20MG INTRAMUSCULARLY EVERY 8 HOURS AS NEEDED FOR AGGRESSIVE BEHAVIOR | 06/02/2016 |
| 53997 | OLANZAPINE | INJ 10MG | INJECT 10MG INTRAMUSCULARLY EVERY 6 HOURS AS NEEDED SEVERE AGITATION, PHSICAL AGRESSION | 09/20/2016 |
| 53998 | OLANZAPINE | TAB 10MG ODT | DISSOLVE 1 TABLET BY MOUTH EVERY 6 HOURS AS NEEDED FOR AGITATION AND AGGRESSION | 09/20/2016 |
| | | | *** Non-Psychotropic Medications *** | |
| 54399 | MEAL REPLACEMENT SHAKE | | GIVE 1 SHAKE 3 TIMES DAILY (OFFER TO REPLACE A MEAL) at 7:45 AM, 12:00 PM and 6:00 PM | 11/30/2016 |

**Exhibit 27**
**Page 155**

06/13/2016

## Patient Profile - Active Medications

**Client:** ███████████████            **Teaching Home:** 58-A

**Physician:** JAVIER RUIZ-NAZARIO, MD

**Allergies:**

| Rx # | Medication | | Instructions | Start Date |
|------|-----------|---|-------------|-----------|
| | | | *** Psychotropic Medications *** | |
| 53577 | BENZTROPINE | TAB 0.5MG | TAKE 1 TABLET BY MOUTH DAILY at 9:00 PM | 06/02/2016 |
| 53578 | HALOPERIDOL | TAB 1MG | TAKE 3 TABLETS BY MOUTH DAILY at 9:00 PM | 06/02/2016 |
| 53579 | LORAZEPAM | TAB 1MG | TAKE 3 TABLETS BY MOUTH 3 TIMES DAILY at 7:45 AM, 3:30 PM and 9:00 PM | 06/02/2016 |
| 53606 | LORAZEPAM | TAB 2MG | TAKE 1 & 1/2 TABLETS BY MOUTH 3 TIMES DAILY at 7: 45 AM, 4:00 PM and 9:00 PM | 06/08/2016 |
| | | | *** ~~Non~~-Psychotropic Medications *** _PRN_ | |
| 53580 | GEODON | INJ 20MG | INJECT 20MG INTRAMUSCULARLY EVERY 8 HOURS AS NEEDED FOR AGGRESSIVE BEHAVIOR | 06/02/2016 |

Attachment 10

Exhibit 27
Page 157

S - SUBJECTIVE
O - OBJECTIVE
A - ASSESSMENT
P - PLAN

**CFMG**
California Forensic Medical Group
I N C O R P O R A T E D

NAME: ████████████████          DOB: ████████ ██          BOOKING NO.: ____
                     (M.I.)

| PROBLEM(S) TREATED | DATE | PROGRESS NOTES |
|---|---|---|
| | 29 Dec 16 1:37 | I/mseen; Federal — |
| | | Drug Use — denies |
| | Cont. 28 Feb 17 | Mental Health — on lock up. |
| | | Dx — "Don't Know" |
| Spanish Speaking | | See list |
| | | New C/o — "No" problems. |
| YJH 14 Dec 16 Locked up 11 mos. | | |
| | | Disoriented to date; Knows JH. |
| b. Guatemala | | Thoughts — euthmic; clear. |
| Family — Mother. Father sis. Cir. | | Mood — Neutral |
| | | Affect a bit blunted |
| | | Speech — good in Spanish. |
| | | Eye contact OK |
| | | Cooperative. |
| | | ∅ SI          ∅ HI |
| | | Imp ⓐ Overmedicated |
| | | Plan  Taper off meds + recheck. |
| | | [signature] |

**PROGRESS NOTES**

CFMG SOAP1

Exhibit 27
Page 158

S - SUBJECTIVE
O - OBJECTIVE
A - ASSESSMENT
P - PLAN

**CFMG**
California Forensic Medical Group
I N C O R P O R A T E D

NAME: _____ , _____     DOB: ____     BOOKING NO.: _____
(Last)          (First)          (M.I.)

| PROBLEM(S) TREATED | DATE | PROGRESS NOTES |
|---|---|---|
| A16 | 12.18.16 0932 0940M | **New Intake** – Writer met with Youth on B-Pod for new intake. Youth reports that he was transferred to this facility due to maladaptive bhx in his previous placement. Youth denies any current or past MH Rx, though his chart reveals that this incorrect. Youth is currently Rx'd Cymbalta, Atarax, Depakote, Klonopin, Latuda, and Cogentin. Youth denies any family hx of mental illness or suicide. Youth denies any current thoughts of SI/HI or SIB. He clearly contracted for safety. He denies any past SA. Youth denies any current sxs of depression or anxiety though this appears incongruent as it was reported to this writer by medical staff that Youth was very tearful upon intake. Youth denies any past substance abuse. Youth will be placed on MHMD s/c.  MH F/U x4 weeks or PRN. He is aware of s/c process. |
| | | MSE: Youth presented with good eye contact, but a flat and guarded affect/mood. Insight and judgment are poor. Thoughts were clear and linear, goal oriented. No psychosis sxs observed or expressed. Speech was clear. No acute distress. |
| | | B. Halsted, LCSW |

PROGRESS NOTES

# Attachment 11

Exhibit 27
Page 160

01/05/2017  12:05   166125577      JOHN BAKER                              PAGE  01/13

## CFMG
### California Forensic Medical Group
INCORPORATED

S - SUBJECTIVE
O - OBJECTIVE
A - ASSESSMENT
P - PLAN

NAME: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓   DOB: ▓▓▓▓▓▓ 00   BOOKING NO.: _____

| PROBLEM(S) TREATED | DATE | PROGRESS NOTES |
|---|---|---|
| 5 | Jan 17 1/05 | S/ "I'm been. On less meds. Feels better on less meds. More relaxed. Gets along with staff. Cooperative, calm. Sleep - Good.<br><br>Dx ① Improved off so many meds.<br>Plan Continue to taper off meds & observe for any problems. |

PROGRESS NOTES

CFMG.SOAP1

Exhibit 27
Page 161

# Exhibit 30

## REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**Exhibit 30**
**Page 169**

1   I, ███████████████████████████ declare as follows:

2   1.     This declaration is based on my personal knowledge. If called to testify in this

3   case, I would testify competently about these facts.

4   2.     I arrived in the United States at the end of 2014. I have been in six shelters and one

5   hospital. I am currently in the shelter at MercyFirst in Syosset, New York.

6   3.     After I arrived in the U.S., I was in a shelter in Texas and then they transferred me

7   to a hospital for crazy people. Being there made me feel desperate; I felt like I would go

8   crazy. The walls were all white and they made you sit in a special seat if you misbehaved.

9   I stayed for 14 days.

10   4.     After the hospital, I went to a shelter in El Paso, Texas called Southwest Key and

11   then to one in Houston. They moved me to Houston because the staff there could give me

12   more medicine. I don't remember if I got anything in writing about their decision but I

13   don't think I had an opportunity to challenge it.

14   5.     From Houston, I was moved to Shiloh. In Shiloh they gave me even more

15   medicine. I took nine pills in the morning and seven in the evening. I don't know what

16   medications I was taking; no one ever told me that. I don't know what my diagnosis or

17   illness is. The medicine made me fat. I used to be really skinny. It made me very hungry;

18   I used to eat three plates at a time.

19   6.     Some of the staff at Shiloh would provoke the children there and make us angry

20   intentionally. They made us act violently so then we had to be given shots. The staff

21   would insult us and call us names like "son of a whore." They often did it in English but I

22   understood some English so I would know what they were saying and get really angry.

23   7.     Two of the staff members were violent with me. One was a teacher whose name

24   was "Hors." He called the medical staff to the classroom to give me shots many times.

25   One time, I got angry in class and wanted to leave the classroom. I was sitting down but

26   he came and touched me so I got angrier. Then he grabbed me and twisted my arm

27   behind my back then lifted up so I felt like my shoulder was braking. I screamed. The

28   teacher had done the same thing to one of my friends.

1

**Exhibit 30
Page 170**

8.      When he would call the medical staff, they would come and give me a shot to tranquilize me. It happened many times. They would give me the shot and then I would start to feel sleepy and heavy, and like I didn't have any strength. I would sleep for three or four hours and then wake up and slowly start to feel my strength return. When the staff did that, they left me in the classroom near the wall to sleep. I also saw them do that to one of my friends, ▇.

9.      Another staff member at Shiloh was also violent with me twice. I don't know his name; he was older and he retired while I was there. When he grabbed me, he would bend my hand all the way back so it almost touched my wrist. It really hurt. I almost cried, but he just laughed.

10.     I wanted to stop taking all the medication they were giving me at Shiloh but when I told the doctors that they told me that I had to continue because it calmed me. I met with two different doctors there; both were men. I said the problem is this place, it makes me angry. I was so scared there, I tried to behave well to get transferred.

11.     Finally, I was transferred to Sky in Chicago in November, 2016. There, the doctor let me begin to stop taking the medications I didn't like. I was right. From the day I got to Chicago, I never got angry again. I felt better every day, as I stopped taking so much medication.

12.     In May, 2017, I was moved to the Residential Treatment Center at MercyFirst. I don't know why exactly. The staff said I would be treated better here. I didn't want to go because I had gotten accustomed to the program there but I agreed and I went voluntarily. I don't remember if I was given anything in writing.

13.     I was taken to the hospital three or four times while I was at RTC but I never stayed overnight. I did not have any discipline problems that I remember.

14.     In October, 2017, I was stepped down from the RTC to the shelter at MercyFirst. Now, my case worker says she is about to submit the paperwork for me to go to long-term foster care and live with a family. My only relative in the U.S. is my grandmother's

2

Exhibit 30
Page 171

1 | brother and he does not want to sponsor me. I miss my family in Mexico, especially my
2 | mom, but I am scared to go back there because of the people who threatened to kill me.
3 | 15.     I have not gotten a notice about a bond hearing or a list of legal services.
4
5 | I declare under penalty of perjury that the foregoing is true and correct. Executed on this
6 | 15th day of November, 2017, at MercyFirst, Syosset, New York.
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3

Exhibit 30
Page 172

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF TRANSLATION

I, Andrea Barrientos, hereby certify that I am proficient in both Spanish and English, and that I accurately translated the foregoing statement and read it back to ███ in its entirety in Spanish on November 15, 2017.

Andrea Barrientos

4

Exhibit 30
Page 173