CARLOS R. HOLGUÍN (Cal. Bar No. 90754)
PETER A. SCHEY (Cal. Bar No. 58232)
Center for Human Rights & Constitutional Law
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Email: crholguin@centerforhumanrights.org
        pschey@centerforhumanrights.org

LEECIA WELCH (Cal. Bar No. 208741)
National Center for Youth Law
405 14th Street, 15th Floor
Oakland, CA 94612
Telephone: (510) 835-8098
Email: lwelch@youthlaw.org

*Listing continues on next page*

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| Jenny Lisette Flores, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Jefferson B. Sessions, Attorney General, *et al.*, <br><br> Defendants. | Case No. CV 85-4544-DMG (AGRx) <br><br> EXHIBITS IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT (VOL. 4: EXS. 41-60, PAGES 232-407, REDACTED EXHIBITS ONLY) <br><br> Hearing: May 18, 2018 <br> Time: 9:30 a.m. <br> Room: 1st St. Courthouse <br>        Courtroom 8C |

**REDACTED VERSIONS OF DOCUMENTS PROPOSED TO BE FILED UNDER SEAL**

1

*Counsel for Plaintiffs, continued*

2

HOLLY S. COOPER (Cal. Bar No. 197626)
Co-Director, Immigration Law Clinic
CARTER C. WHITE (Cal. Bar No. 164149)
Director, Civil Rights Clinic
University of California Davis School of Law
One Shields Ave. TB 30
Davis, CA 95616
Telephone: (530) 754-4833
Email: hscooper@ucdavis.edu
        ccwhite@ucdavis.edu

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBITS IN SUPPORT OF MOTION TO
ENFORCE SETTLEMENT
CV 85-4544-DMG (AGRx)

1    I, Carlos Holguín, do hereby declare that true and correct copies of the following

2    documents are attached hereto:

3                                    INDEX TO EXHIBITS

4

5    No.    Description                                                                    Page(s)

6    1      Declaration of the Mother of Nicolás C., February 6, 2018
            (proposed to be filed partially under seal) ............................................... 1-10
7

8    2      Declaration of Nicolás C., February 4, 2018 (proposed to be
            filed partially under seal) ....................................................................... 11-19
9

10   3      Morrison Paso Case Review re: Nicolás C., September 17, 2017
            (proposed to be filed partially under seal) ............................................ 20-26

11   4      Custody Order of the Immigration Judge re: Nicolás C.,
12          December 19, 2017 (proposed to be filed partially under seal)............ 27-28

13   5      Declaration of Leland Baxter-Neal, February 6, 2018 (proposed
14          to be filed partially under seal) .............................................................. 29-34

15   6      Email from Erich Corona re: Nicolás C., January 9, 2018
            (proposed to be filed partially under seal) ............................................ 35-38
16

17   7      Declaration of James M. Owens, February 7, 2018 (proposed to
            be filed partially under seal) .................................................................. 39-43
18

19   8      ORR Interim Guidance re: Custody Hearings, July 18, 2017 ............. 44-55

20   9      Declaration of Daniella Q., February 28, 2018 (proposed to be
            filed partially under seal) ....................................................................... 56-59
21

22   10     Declaration of Isabella M., December 1, 2017 (proposed to be
            filed partially under seal) ....................................................................... 60-63
23

24   11     Supplemental Declaration of Isabella M., February 28, 2018
            (proposed to be filed partially under seal) ............................................ 64-68
25

26   12     Declaration of the Mother of Isabella M., February 28, 2018
            (proposed to be filed partially under seal) ............................................ 69-75
27

28   13     Declaration of Victoria R., February 28, 2018 (proposed to be
            filed partially under seal) ....................................................................... 76-79

14    Declaration of David I., November 30, 2017 (proposed to be
      filed partially under seal) ............................................................ 80-84

15    Supplemental Declaration of David I., February 28, 2018
      (proposed to be filed partially under seal) ............................... 85-88

16    Declaration of Eduardo A., March 1, 2018 (proposed to be filed
      partially under seal) .................................................................. 89-93

17    Declaration of Rosa L., December 1, 2017 (proposed to be filed
      partially under seal) .................................................................. 94-97

18    Supplemental Declaration of Rosa L., February 28, 2018
      (proposed to be filed partially under seal) ............................ 98-100

19    Declaration of Gabriela N., December 1, 2017 (proposed to be
      filed partially under seal) ...................................................... 101-104

20    Supplemental Declaration of Gabriela N., February 28, 2018
      (proposed to be filed partially under seal) ........................... 105-108

21    Declaration of Arturo S., February 28, 2018 (proposed to be
      filed partially under seal) ...................................................... 109-112

22    ORR Form Notice of Placement in a Restrictive Setting,
      February 5, 2018 .................................................................... 113-115

23    ORR FAQ: July 2017 Bond Hearings for Unaccompanied Alien
      Children (UAC) ...................................................................... 116-118

24    ORR FAQ: ORR Directors Release Decision, January 26, 2018 ..... 119-121

25    Letter from Carlos Holguín to Office of Immigration Litigation,
      December 19, 2017 ................................................................. 122-129

26    Email from Sarah Fabian re: Flores Meet and Confer
      Discussion, January 12, 2018 ............................................... 130-131

27    Letter from Leecia Welch to Office of Immigration Litigation
      re: Psychotropic Medications, and Attachments, January 16,
      2018 (proposed to be filed partially under seal) .............. 132-161

28    Letter from Carlos Holguín to Office of Immigration Litigation,
      February 16, 2018 .................................................................. 162-164

EXHIBITS IN SUPPORT OF MOTION TO
ENFORCE SETTLEMENT
CV 85-4544-DMG (AGRx)

29    Email from Sarah Fabian re: Flores Meet and Confer
      Discussion, March 2, 2018 ........................................................... 165-168

30    Declaration of Javier C., November 15, 2017 (proposed to be
      filed partially under seal) ........................................................... 169-173

31    Declaration of Carlos A., November 16, 2017 (proposed to be
      filed partially under seal) ........................................................... 174-177

32    Declaration of Miguel B., November 16, 2017 (proposed to be
      filed partially under seal) ........................................................... 178-181

33    Declaration of Luis D., November 15, 2017 (proposed to be
      filed partially under seal) ........................................................... 182-192

34    Declaration of Andrés D., July 11, 2017 (proposed to be filed
      partially under seal) ................................................................... 193-197

35    Declaration of Jorge E., July 11, 2017 (proposed to be filed
      partially under seal) ................................................................... 198-205

36    Declaration of Gustavo H., July 11, 2017 (proposed to be filed
      partially under seal) ................................................................... 206-210

37    Declaration of Roberto F., July 11, 2017 (proposed to be filed
      partially under seal) ................................................................... 211-220

38    Declaration of Natalia T., November 21, 2017 (proposed to be
      filed partially under seal) ........................................................... 221-223

39    Declaration of Ricardo U., November 21, 2017 (proposed to be
      filed partially under seal) ........................................................... 224-226

40    Declaration of Sofia O., December 1, 2017 (proposed to be
      filed partially under seal) ........................................................... 227-231

41    Declaration of Gloria P., December 1, 2017 (proposed to be
      filed partially under seal) ........................................................... 232-235

42    Declaration of Edwin B., March 1, 2018 (proposed to be filed
      partially under seal) ................................................................... 236-242

43    Letter from Carlos Holguín to Cynthia Nunes Colbert, et al., re:
      Legal Representation for Specified Class Members, March 12,
      2018 (proposed to be filed partially under seal) ............................. 243-246

v

44    Declaration of Samuel W., October 26, 2017 (proposed to be
      filed partially under seal) ................................................................... 247-250

45    Declaration of Jaime V., October 26, 2017 (proposed to be filed
      partially under seal) ........................................................................ 251-254

46    Declaration of Mateo X., October 26, 2017 (proposed to be
      filed partially under seal) ................................................................... 255-256

47    Declaration of Mario Y., October 26, 2017 (proposed to be filed
      partially under seal) ........................................................................ 257-260

48    Declaration of Maricela J., November 30, 2017 (proposed to be
      filed partially under seal) ................................................................... 261-264

49    Declaration of Teresa K., November 30, 2017 (proposed to be
      filed partially under seal) ................................................................... 265-268

50    Declaration of Diego E., January 16, 2018 (proposed to be filed
      partially under seal) ........................................................................ 269-273

51    Declaration of Daniel F., March 21, 2018 (proposed to be filed
      partially under seal) ........................................................................ 274-278

52    Declaration of Alejandro G., March 21, 2018 (proposed to be
      filed partially under seal) ................................................................... 279-285

53    Transcript of Testimony of James De La Cruz, *Saravia v.
      Sessions*, Case No. 3:17-cv-03615-VC (N.D. Cal. June 29,
      2017), Dkt. No. 28 ........................................................................... 286-382

54    Defendant Brent Cardall's Responses to Plaintiff's Request for
      Admission, Set One, *Saravia v. Sessions*, Case No. 3:17-cv-
      03615-VC (N.D. Cal. Sept. 20-21, 2017), Dkt. No. 61-3 ................ 383-390

55    Declaration of Camila G., April 3, 2018 (proposed to be filed
      partially under seal) ........................................................................ 391-396

56    Patient Profile – Active Medications of Victoria R., January 9,
      2018 (proposed to be filed partially under seal) ............................ 397-398

57    Patient Profile – Active Medications of David I., November 27,
      2017 (proposed to be filed partially under seal) ............................ 399-400

58    Patient Profile – Active Medications of Rosa L., July 31, 2017 (proposed to be filed partially under seal) ........................................ 401-402

59    Medication Information and Reconciliation and Over-the-Counter Medication Release Forms for Isabella M., September 28-29, 2017 (proposed to be filed partially under seal) ................... 403-405

60    Medication Information and Reconciliation Form for Gabriela N., September 7, 2017 (proposed to be filed partially under seal) ............................................................................................. 406-407

61    Medication Information and Reconciliation Form for Sofia O., September 18, 2017 (proposed to be filed partially under seal) ....... 408-409

62    Yolo County Juvenile Detention Facility Parental Medical Authorization Form for Julio Z., December 14, 2016 (proposed to be filed partially under seal) ........................................ 410-411

63    Patient Profile – Active Medications of Julio Z., December 12, 2016 (proposed to be filed partially under seal) .............................. 412-413

64    Declaration of Julio Z., November 13, 2017 (proposed to be filed partially under seal) .................................................. 414-424

65    Declaration of Sister of Victoria R., March 13, 2018 (proposed to be filed partially under seal) ......................................... 425-431

66    Declaration of Proposed Sponsor of Victoria R., March 13, 2018 (proposed to be filed partially under seal) ........................... 432-435

67    Declaration of Grandfather of Gabriela N., March 15, 2018 (proposed to be filed partially under seal) ........................................ 436-441

68    Custody Order of the Immigration Judge re: Santiago H., February 21, 2018 (proposed to be filed partially under seal) .......... 442-443

69    Order of the Immigration Judge with Respect to Custody re: Santiago H., March 20, 2018 (proposed to be filed partially under seal) .................................................................................. 444-446

70    Email from Toby Biswas re: Santiago H. Follow Up, February 23, 2018 (proposed to be filed partially under seal) ........................ 447-449

vii

71  Case Review re: Santiago H., November 29, 2017 (proposed to
    be filed partially under seal) ............................................................ 450-452

72  ORR Information Memo re: Community Safety Initiative for
    the Unaccompanied Alien Children Program, August 16, 2017 ...... 453-457

73  Declaration of John Doe 1, *John Doe 1 v. Shenandoah Valley
    Juvenile Ctr. Comm'n*, Case No. 5:17-cv-00097-EKD-JCH,
    (W.D. Va. Jan. 17, 2018), Dkt. No. 34-1 ........................................ 458-464

74  Declaration of John Doe 2, *John Doe 1 v. Shenandoah Valley
    Juvenile Ctr. Comm'n*, Case No. 5:17-cv-00097-EKD-JCH,
    (W.D. Va. Jan. 5, 2018), Dkt. No. 34-2 .......................................... 465-471

75  Declaration of John Doe 3, *John Doe 1 v. Shenandoah Valley
    Juvenile Ctr. Comm'n*, Case No. 5:17-cv-00097-EKD-JCH
    (W.D. Va. Jan. 5, 2018), Dkt. No. 34-3 .......................................... 472-478

76  Declaration of D.M, *John Doe 1 v. Shenandoah Valley Juvenile
    Ctr. Comm'n*, Case No. 5:17-cv-00097-EKD-JCH, (W.D. Va.
    Jan. 2, 2018), Dkt. No. 34-5 ........................................................... 479-484

77  Declaration of R.B., *John Doe 1 v. Shenandoah Valley Juvenile
    Ctr. Comm'n*, Case No. 5:17-cv-00097-EKD-JCH, (W.D. Va.
    Jan. 8, 2018), Dkt. No. 34-6 ........................................................... 485-490

78  Transcript of Jonathan White, *Saravia v. Sessions*, Case No. 18-
    15114 (9th Cir. Oct. 27, 2017), Dkt. No. 9-2 .................................. 491-548

79  Exhibit 1 to Appellees' Request for Judicial Notice, *Saravia v.
    Sessions*, Case No. 18-15114 (9th Cir. March 16, 2018), Dkt.
    No. 20 ............................................................................................... 549-555

80  Stipulated Settlement Agreement, *Flores v. Reno*, Case No.
    CV 85-4544-RJK(Px) ...................................................................... 556-584

81  Declaration of Justin Mixon, October 19, 2017 .............................. 585-591

82  Email from Sarah Fabian re: Correspondence re: Legal
    Representation for Flores Class Members, March 23, 2018 ............. 592-594

83  Letter from James De La Cruz to Flores Counsel re:
    Psychotropic Medications, April 2, 2018 (proposed to be filed
    partially under seal) ......................................................................... 595-601

EXHIBITS IN SUPPORT OF MOTION TO
ENFORCE SETTLEMENT
CV 85-4544-DMG (AGRx)

84    Individual Service Plan – Residential Treatment for Victoria R., Shiloh Treatment Center, Inc., December 26, 2017 (proposed to be filed partially under seal) ............................................................ 602-606

85    Declaration of Lorelei Alicia Williams, previously filed in this case in Docket No. 239-2, August 5, 2016 ........................................ 607-618

86    Declaration of Megan Stuart, previously filed in this case in Docket No. 239-2, August 1, 2016 .................................................... 619-646

87    Declaration of Carlos Holguín, April 10, 2018 ................................ 647-649

88    ORR Authorization for Medical, Dental, and Mental Health Care for Carlos A., July 31, 2017 (proposed to be filed partially under seal)............................................................................................ 650-652

89    Declaration of Carter White, April 14, 2018, attaching Shiloh Treatment Center Consent to Medical Care Form........................... 653-655

EXHIBITS IN SUPPORT OF MOTION TO
ENFORCE SETTLEMENT
CV 85-4544-DMG (AGRx)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 14th day of April, 2018, at Santa Clarita, California.

Respectfully submitted,

Carlos Holguín

/s/ Carlos Holguín

# Exhibit 41

## REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**Exhibit 41**
**Page 232**

I, ███████████████████████████████, declare as follows:

1.     This declaration is based on my personal knowledge.  If called to testify in this case, I would testify competently about these facts.

2.     I am 13 years old. I am from Mexico.  I am currently being held in ORR custody in the Shiloh Residential Treatment Facility, in Texas.  Shiloh is a locked facility with 24-hour surveillance and monitoring.  The children are detained here and no one is free to leave.

3.     Approximately seven months ago, I was taken into the custody of the Office of Refugee Resettlement ("ORR").  I was held at a shelter in El Paso, Texas. I was then transferred to Shiloh Residential Treatment Center ("Shiloh").  In regard to my transfer, the staff at the shelter told me that I was being transferred to another shelter. However, I was sent to Shiloh. I don't remember receiving any document that explained that I had the right to challenge the government's decision to send me to Shiloh. If I had, I would have challenged the decision.

4.     I arrived at Shiloh in about August of 2017. Since then, I have not been told about, and I have not received, a 30-day review to review my custody classification.  No one has sat down with me and reviewed whether I should be stepped down to a lower level of security or told me how I'm doing here or what I have to do in order to step down.

5.     I thought my aunt would be my sponsor, but according to my case manager, my aunt went to Mexico.

6.     At Shiloh, I take pills in the morning, afternoon, and night.  In the morning, there are a lot of pills in a cup. I have never counted them so I don't know how many.  I have asked the name of the pills, but I don't remember. During the afternoon and the night, there are about the same number of pills in a cup. Sometimes the pills make me feel tired and it is hard to concentrate at school.  One pill used to make me throw up, but I don't have to take that one anymore.  The staff told me that some of the pills are vitamins because they think I need to gain weight. The vitamins changed about two times, and

**Exhibit 41
Page 233**

each time I feel different. The doctor told me that my level is now lowered. I do not know what this means.  I take the pills because I think it will help me leave here more quickly. I don't know if they have talked to my mother about giving me these pills.

7.      I want to return to the shelter where I was first held in ORR custody. At that shelter, there was a teacher who cared about me and I didn't get to say goodbye to her.  I don't like living at Shiloh because the staff scream at me and I am not learning anything at school here.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 7 day of December, 2017, at Manvel, Texas.



2

Exhibit 41
Page 234

1    CERTIFICATE OF TRANSLATION

2    I certify that I am fluent in the Spanish and English languages and that I truthfully and

3    accurately translated the above declaration from English to Spanish.

4

5

6    Dated: December 7, 2017

7    SAIRA SALAZAR

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

Exhibit 41
Page 235

# Exhibit 42

## REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**Exhibit 42**
**Page 236**

DECLARACIÓN DE ███████████████████

Yo, ██████████████████ declaro y digo lo siguiente:

1. Soy de Guatemala. Tengo 17 años de edad. Actualmente me encuentro detenido en Southwest Key Mesa Staff-secure en Houston, Texas. Los siguientes hechos los sé personalmente, y los afirmo por conocimiento personal.

2. En total, tengo seis meses de detención. Pasé como un mes en un albergue en Arizona, pero ahora tengo entendido que como mostré mucha ansiedad y no podía dormir, y que empezé a lastimarme, me mandaron para staff-secure. Todo esto me dijeron aquí en staff-secure. En Arizona, no me dieron ninguna hoja ni nada avisándome porque me iban a mandar a staff-secure. Al contrario, como dos días antes de trasladarme a staff-secure, me llegó la consejera y me informó que me iban a mandar a un lugar mejor, donde tendría yo más libertad, más apoyo, y que mi caso de salir de la detención y vivir con mi hermano avanzaría más. Todo lo que me dijo ella era mentira.

3. De hecho, en staff-secure hay mucho menos libertad que en Arizona. Siempre nos están vigilando el staff. Aquí el ritmo de la vida es más controlado y rígido. Hacemos menos actividades. Nos permiten llamadas telefónicas solo por diez minutes, dos veces por semana, solo con personas aprobadas. No nos permiten nuestros propios teléfonos celulares. En mi cuarto solo tengo un cuaderno, ropa, y unas hojas con letra de canciones. Los días escolares nos permiten una hora de recreo en la mañana, y otra en la tarde. Los fines de semana, nos permiten una hora y media. Está muy seguro el área del

**Exhibit 42**
**Page 237**

centro para que nadie pueda fugarse. El staff controla los movimientos de los menores y

hay una reja alta por toda el area.

    4. Poco despues de caerme preso, informé al gobierno que tengo a un hermano

mayor que vive en Oklahoma con quien puedo vivir, y mi hermano empezó a pedir mi

custodio cuando yo aún estaba en Arizona. Hace como dos o tres meses, me informó mi

trabajadora social que el estudio de casa de mi hermano había salido positivo. Mi

hermano me dijo hace como tres semanas que ha complido con todos los requisitos para

recibirme, y mi trabajadora social me dijo que todo estaba bien y que iban a presentar

mi caso en dos días. No era cierto. Ya pasaron dos semanas y no me han dicho nada

más. No sé que vaya a pasar al fin, si van a pedirle más documentos a mi hermano, o

ponerle otros requisitos para que pueda salir yo con él.

    / / /

**Exhibit 42**
**Page 238**

5. La semana pasada me informaron mi trabajadora social y su jefa, Laura Zambrano, que yo tenía derecho a una audiencia para decidir si soy un peligro para la comunidad. También me dijo la jefa que no importaba si yo tuviera abogado, que ellos me llevarían a la audiencia y yo mismo me representaría. Yo decidí no pedir la audiencia porque asistir yo solo me desanimó y porque me habían dicho que pronto me iban a dejar salir para vivir con mi hermano. Si no me dejan salir de la detención, yo sí pediría una audiencia, pero solo con abogado.

Declaro bajo protesta de decir la verdad que toda la información que aquí he proporcionado es correcta y completa, consciente de las consecuencias legales de declarar con falsedad ante la autoridad.

Hecho el día 1 de marzo del año 2018, en Houston, Texas.

/ / /

**Exhibit 42**
**Page 239**

DECLARATION OF ███████████████████

I, █████████████████, declare and say the following:

1. I am from Guatemala. I am 17 years old. I am currently detained at Southwest Key Mesa Staff-secure in Houston, Texas. The following facts I know personally, and I affirm them by personal knowledge.

2. In total, I have six months of detention. I spent about a month in a shelter in Arizona, but now I have been told that since I showed a lot of anxiety and could not sleep, and that I started to hurt myself, they sent me to staff-secure. All this was told to me here in staff-secure. In Arizona, they did not give me any papers or anything warning me because they were going to send me to staff-secure. On the contrary, about two days before moving me to staff-secure, the counselor arrived and informed me that they were going to send me to a better place, where I would have more freedom, more support, and that my case to be released from detention and live with my brother would advance further. Everything she told me was a lie.

3. In fact, in staff-secure there is much less freedom than in Arizona. We are always being watched by the staff. Here the rhythm of life is more controlled and rigid. We do fewer activities. They allow us telephone calls only for ten minutes, twice a week, only with approved people. We are not allowed our own cell phones. In my room I only have a notebook, clothes, and some sheet music. In school days we are allowed one hour of recess in the morning, and another in the afternoon. On weekends, they allow us an hour and a half. The area of the center is very secure so that nobody can flee. The staff controls the movements of minors and there is a high fence around the area.

4. Shortly after I was imprisoned, I informed the government that I have an older brother who lives in Oklahoma with whom I can live, and my brother started asking for my custody

**Exhibit 42**
**Page 240**

when I was still in Arizona. About two or three months ago, my social worker informed me that the review of my brother's house had turned out positive. My brother told me about three weeks ago that he had complied with all the requirements to receive me, and my social worker told me that everything was fine and they were going to hear my case in two days. It was not true. Two weeks have passed and they have not told me anything else. I do not know what will happen at the end, if they are going to ask for more documents from my brother, or to put other requirements so that I can go out with him.

5. Last week I was informed by my social worker and her boss, Laura Zambrano, that I had the right to a hearing to decide if I am a danger to the community. The boss also told me that it did not matter if I had a lawyer, that they would take me to the hearing and I would represent myself. I decided not to ask for a hearing because I got discouraged going alone and because they had told me that soon they would let me leave to live with my brother. If they do not let me leave from detention, I would ask for a hearing, but only with a lawyer.

I declare under protest to tell the truth that all the information that I have provided here is correct and complete, aware of the legal consequences of declaring with falsehood before the authority.

Done on March 1 of the year 2018, in Houston, Texas.

_____

███████████████

///

**Exhibit 42**
**Page 241**

DECLARATION OF TRANSLATOR

I, Jorge Medina, declare and say as follows:

1. I speak, read and write English and Spanish.

2. On this day I translated the declaration of ███████████████ from Spanish to English.

The annexed is a true and accurate translation of said declaration.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___6th___ day of March 2018, at Los Angeles, California.

_____
Jorge Medina

/ / /

Exhibit 42
Page 242

# Exhibit 43

## REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**Exhibit 43**
**Page 243**

# CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW

256 S. OCCIDENTAL BOULEVARD
LOS ANGELES, CA 90057
Telephone:  (213) 388-8693 Facsimile:  (213) 386-9484
www.centerforhumanrights.org

March 12, 2018

Cynthia Nunes Colbert
Chief Operating Officer/President
Catholic Charities of the Archdiocese of Galveston-Houston
2900 Louisiana Street
Houston, Texas 77006

Paola Midence, Esq.
Katherine Chapman, Esq.
St. Frances Cabrini Center for Immigrant Legal Assistance
2707 North Loop West, Suite 300
Houston, TX 77008
*Via email*

Anne Marie Mulcahy
Program Director, Legal Services for Unaccompanied Children
Vera Institute of Justice
233 Broadway, 12th Floor
New York, NY 10279

E. Scott Lloyd, Director
Office of Refugee Resettlement
U.S. Department of Health & Human Services
Mary E. Switzer Building, 330 C ST SW
Washington DC 20201

Sarah B. Fabian, Esq.
Cara E. Alsterberg, Esq.
William C. Silvis
Office of Immigration Litigation – District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
*Via email*

Re: *Flores*, et al., *v. Sessions,* et al*.,* No. CV 85-4544 DMG (C.D. Cal.).

Dear Madams and Sir:

This office serves as counsel for minors in ORR custody with respect to their rights under the class-wide settlement in the above referenced action.

**Exhibit 43**
**Page 244**

Cynthia Nunes Colbert, *et al.*
March 12, 2018
Page 2 of 3

On February 28 through March 1, 2018, counsel interviewed class members detained at the Shiloh Residential Treatment Center in Manvel, Texas, and the Southwest Key Mesa staff-secure facility in Houston, Texas.

We wish to notify you that the following class members have a *prima facie* need for legal representation in (1) bond hearings pursuant to ¶ 24A of the *Flores* settlement; (2) with respect to ORR's housing them in staff-secure or treatment facilities that are not licensed to house dependent minors; and/or (3) with respect to ORR's administering psychotropic drugs to juveniles without parental consent:



Paragraph 24A of the *Flores* settlement provides: "A minor in deportation proceedings shall be afforded a bond redetermination hearing before an immigration judge in every case, unless the minor indicates on the Notice of Custody Determination form that he or she refuses such a hearing."

Paragraph 24B provides: "Any minor who disagrees with the INS's determination to place that minor in a particular type of facility, or who asserts that the licensed program in which he or she has been placed does not comply with the standards set forth in Exhibit 1 attached hereto, may seek judicial review in any United States District Court with jurisdiction and venue over the matter to challenge that placement determination or to allege noncompliance with the standards set forth in Exhibit 1."

Paragraph A.14 of Exhibit 1 to the *Flores* settlement requires licensed programs to provide class members with "[l]egal services information regarding the availability of free legal assistance, ..."

Section 235 of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, 110 Pub. L. 457, 122 Stat. 5044, *codified at* 8 U.S.C. § 1232(c)(5), directs the Secretary of the Department of Health & Human Services to "ensure, to the greatest extent practicable ... that all unaccompanied alien children who are or have been in the custody of the Secretary or the Secretary of Homeland Security, and who are not [from contiguous countries], have counsel to represent them in legal proceedings or matters and protect them from mistreatment ..."

The aforementioned class members accordingly request that HHS, through its contractor, the Vera Institute of Justice, and its subcontractor, the St. Frances Cabrini Center for Immigrant Legal Assistance, provide them legal representation in the legal matters enumerated above.

**Exhibit 43**
**Page 245**

Cynthia Nunes Colbert, *et al.*
March 12, 2018
Page 3 of 3

Please advise at your earliest convenience whether you intend to honor this request, and if not, the reasons for denying class members legal representation as herein requested.

Thank you,

Carlos Holguín
One of the attorneys for Plaintiffs

ccs:    Leecia Welch, NCYL
        Neha Desai, NCYL
        Poonam Juneja, NCYL
        Crystal Adams, NCYL
        Holly Cooper, U.C. Davis Legal Clinic
        Peter A. Schey, CHRCL

**Exhibit 43**
**Page 246**

# Exhibit 44

## REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**Exhibit 44**
**Page 247**

I, █████████████████, declare as follows:

1.     This declaration is based on my personal knowledge.  If called to testify in this case, I would testify competently about these facts.

2.     I am 17 years old.  I am from Honduras.  I speak Spanish and only a few words of English.  I have been in the United States for about two months.  I am currently in immigration detention in the custody of ORR at Yolo Juvenile Detention Center.

3.     After I was taken into immigration custody, I was held by ICE and then sent into shelter care at Southwest Key in San Diego, California.

4.     I was in shelter care at Southwest Key for about a month.  While I was there, I tried to run away from the facility, because I was desperate for freedom.

5.     I never had any other rule violations while I was at Southwest Key.  I was never in any fights.

6.     On that same day that I tried to run away, the government said that because I had tried to run away that one time, they were sending me to a secure detention center, the Yolo Juvenile Detention Center.  They first took me to a holding cell and then they moved me to the juvenile detention center on about September 29, 2017.

7.     When the government sent me to Yolo Juvenile Detention Center, they never gave me a written notice about why they were transferring me there.  I don't remember them ever giving me any explanation of my rights in Spanish in writing or verbally.  They never told me that I could challenge or appeal the decision to put in the detention center to anyone, including to a judge.

8.     I am suffering a lot being in the Yolo Juvenile Detention Center.  It is a jail and I sleep in a locked, small jail cell.  I can't leave here and have no freedom at all.  We only get one hour of time outside each day.  I have to live in a small cell with concrete walls. We have to sleep on hard beds with very thin mattresses.

9.     If they had told me that I could appeal, I would have done that, so that I could show that I should not be here and that I can be in a better place.

1

**Exhibit 44**
**Page 248**

1

2   I declare under penalty of perjury that the foregoing is true and correct.  Executed on this

3   26 day of October , 2017, at Woodland, California.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

Exhibit 44
Page 249

1

CERTIFICATE OF TRANSLATION

2   My name is Gladys Hernandez and I swear that I am competent in both the English and

3   Spanish languages and I translated the foregoing declaration from English to Spanish to

4   the best of my abilities.

5

6   Dated: October 26, 2017

_____

Gladys Hernandez

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

**Exhibit 44
Page 250**

# Exhibit 45

## REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**Exhibit 45**
**Page 251**

1    I, ███████████████ , declare as follows:

2

3    1.      This declaration is based on my personal knowledge.  If called to testify in this

4    case, I would testify competently about these facts.

5    2.      I came to the United States in 2013 from Guatemala and crossed the border in

6    Arizona.

7    3.      I stayed in a shelter in Arizona for about one month and fifteen days.  Then I was

8    sent to live with my mother in Florida.

9    4.      I lived with my mother in Florida from 2013 until September 18, 2017.

10   5.      One day I saw that my sister had a black eye.  I knew that her husband hit her and

11   gave her the black eye but she was too scared of him to admit what happened.

12   6.      I wanted my brother-in-law to know that it was not ok for him to hit my sister and

13   that I would protect her.  I got into a fight about this with my brother-in-law and he called

14   the police.

15   7.      A few days later, I was sent to juvenile detention in West Palm Beach, Florida.

16   8.      I went to court and the juvenile court judge sent me home on probation.

17   9.      One day my Probation Officer came to visit me at home but I was not there so I

18   was sent back to Juvenile Hall. I was then released from Juvenile Hall with an ankle

19   monitor and went back to my mother's home.

20   10.     I had several more violations of probation.  After one of my visits to Probation, I

21   was told that I would be released again on an ankle monitor and that I should call my

22   mother to pick me up.  The juvenile court judge mentioned a 6-month program I could go

23   to for school.

24   11.     Before my mother arrived to pick me up, ICE came and took me. No one explained

25   why they were taking me or where I was going.  I did not get to speak with a probation

26   officer or judge.

27   12.     ICE drove me for about two hours to a hotel in Miami.  I kept asking where I was

28   going but no one answered my questions.

1

Exhibit 45
Page 252

13.     When we got to the hotel, different ICE agents took turns standing outside of my room.

14.     Then, in the middle of the night they took me to the airport.  Again, I asked where we were going but no one told me.  I thought I was being deported.

15.     Even when I arrived at the San Francisco Airport, no one told me why I was there or where I was going next.

16.     When I got to Yolo County Detention Center, they told me the reason I was there was that the program that the judge in Florida wanted to send me to, was not ready.

17.     I have been at Yolo County Detention Center for about a month.  I think I have an immigration court hearing in about two or three months but I am not sure.

18.     I have not spoken to an attorney yet about my immigration case.

19.     I still do not understand why I am here in Yolo County Detention Center. I am confused. This is a juvenile jail with cells and a locked perimeter. We were prison uniforms and sleep in locked cells.

20.     I just want to go back to Florida and be with my family again.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 26 day of October, 2017, at Woodland, California.

████████████████████████

1

CERTIFICATE OF TRANSLATION

2  My name is Gladys Hernandez and I swear that I am competent in both the English and

3  Spanish languages and I translated the foregoing declaration from English to Spanish to

4  the best of my abilities.

5

6  Dated: October 26, 2017

_____

7  Gladys Hernandez

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

**Exhibit 45**
**Page 254**

# Exhibit 46

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

**Exhibit 46**
**Page 255**

I, ███████████████████, declare as follows:

1.    This declaration is based on my personal knowledge.  If called to testify in this case, I would testify competently about these facts.

2.    I am 16 years old.  I am currently being held in ORR custody placed at the Yolo County Juvenile Detention Center.

3.    I was taken into immigration custody in Texas about a month ago on about September 21, 2017, and I was brought here to Yolo on that same day by plane.  The government did not tell me or my family where I was going before they took me to the plane.

4.    I don't remember ever being told or reading that I could appeal or challenge the government's decision to put me into Yolo County Juvenile Detention Center, or that I could go to court about it.

5.    I have never had a thirty-day review to review my custody classification since I have been here.  No one has formally sat down with me and reviewed whether I should be stepped down to a lower level of security or told me how I'm doing here or what I have to do in order to step down.

6.    I wish that I could be stepped down from Yolo County Juvenile Detention Center to a less secure facility.  It's really bad here.  It's a jail and I sleep in a small, locked cell with a small opening to see outside of the cell.  We are locked up inside a lot.  We almost never go outside.  We are stuck inside concrete walls all the time.  I want to be able to see the sky more.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 26ᵗʰ day of Oct., 2017, at Woodland, California.

████████████████████████

1

**Exhibit 46
Page 256**

# Exhibit 47

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

**Exhibit 47**
**Page 257**

I, ███████████████████████, declare as follows:

1.      This declaration is based on my personal knowledge.  If called to testify in this case, I would testify competently about these facts.

2.      I am 17 years old.  I am from El Salvador.  I am currently being held in ORR custody in the Yolo County Juvenile Detention Center.  I am held in a locked jail cell and only permitted one hour a day of outdoor time.  I read and speak Spanish.  I only understand a small amount of English.

3.      I was first taken into ORR custody in about June of 2015, and held at a shelter in El Paso, Texas for about three weeks.  After those three weeks, I was released to my mother as my sponsor, and I went to go live with her in New York.

4.      About a month ago, I was arrested by a police department in New York and accused of a delinquency offense as a juvenile.  I contested the charge, and was released from custody.  I was supposed to go home.  But instead one of the detectives called ICE, and ICE came to the police station to arrest me.  I don't know why I was taken into immigration custody instead of being allowed to go home.

5.      After I was in ICE custody for about three days, the government transferred me to ORR and moved me across the country to Woodland, California to the Yolo County Juvenile Detention Center.  My mother didn't know where I was during that time.  I wasn't allowed to call her and tell her where I was until I arrived at the jail across the country.

6.      I haven't been told why the government decided to hold me in Yolo.  I don't remember ever being given any papers that explained why I was put here instead of in a different type of facility.  I also don't remember receiving any papers at Yolo that explained what my rights are, including if I have a right to challenge the government's decision to keep me here.

7.      My mother is again going through the procedure to be approved as a sponsor so that I can be released to her.  I don't know why I haven't been released back to her yet.

**Exhibit 47
Page 258**

No one, including ORR, has ever given me any explanation about why ORR has to re-approve her as my sponsor when they have already approved her before.  I don't understand why I have to sit in a jail for a long time while ORR goes through a lengthy process to decide again that she is a qualified sponsor, when they have already decided that she is before.

8.     I wish I weren't being held in immigration custody and that I was not in the Yolo County Juvenile Detention Center.  It is a jail.  We don't get to go outside very much, and we are locked inside for a lot of the time.  I hate the food here.  I've developed health problems since they have put me here.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 26 day of October, 2017, at Woodland, California.

## CERTIFICATE OF TRANSLATION

My name is Gladys Hernandez and I swear that I am competent in both the English and Spanish languages and I translated the foregoing declaration from English to Spanish to the best of my abilities.

Dated: October 26, 2017

Gladys Hernandez

2

**Exhibit 47**
**Page 260**

# Exhibit 48

## REDACTED VERSION OF DOCUMENT
## PROPOSED TO BE FILED UNDER SEAL

**Exhibit 48**
**Page 261**

Declaration of ████████████████

I, ████████████████████, declare as follows:

1.      This declaration is based on my personal knowledge.  If called to testify in this case, I would testify competently about these facts.

2.      I was born in Honduras in 2006. I am 11 years old.  I have been in the United States since I was 8 years old.  My alien # is ████████████. I speak Spanish and some English. I have been detained at the Shiloh Regional Treatment Center in Manvel, Texas ("Shiloh"), since October 24, 2017. Shiloh is a locked facility, and none of the people who live here are free to leave. I have not been told how long I will be here or why I am being detained here. I do not want to be in this shelter.  I was here once before and I don't want to be here again. I also once stayed at a foster home which was much better than here. The staff at Shiloh scream and get mad easily, they say bad words, they go crazy. I do not feel safe here.

3.      Before I was detained at Shiloh, I was at Saint PJ's Children's Home in San Antonio, Texas. While at Saint PJ's, the doctor there had me on only three medications. I took all three of these medications at night.

4.      At Shiloh, Dr. Ruiz has me on many more medications, and I have to take them during the day and at night. I take 4 pills in the morning, I do not know what they are for. I take another pill at 4pm and then I have to take 5 more pills at night. I have not been told why I am required to take all this medication.

5.      When I was in Honduras, I did not take any pills and I was good.  I was a normal kid.  When I take medicine, I do not have any mood.  It is disgusting.  I do not like being on this many medications and I have suffered side effects including headaches, loss of appetite and nausea. I have complained about receiving too many medications and Dr. Ruiz says it is not within his control but because of another doctor that I am receiving all these medications. The doctor is another female doctor who works in the facility.

**Exhibit 48
Page 262**

6.      When other girls refuse to take the medication, they get threatened by staff members. They threaten to "give then a report." The report is similar to a write up and every time I receive one, my time in this facility gets extended by 30 days.

7.      To the best of my knowledge I have never signed any informed consent or other form granting permission to the doctors to give me medication.  I don't think anyone in my family was asked if it was okay for me to take medicine.

8.      Also, I witnessed staff members forcefully give medication four times.  Today, one of the girls was upset and someone was trying to calm her down but then the teacher said don't talk to her, just give her a shot. Once I saw staff give an injection by force, two staff members pinned down the girl while she was sitting down and a doctor gave her one or two injections in the arm. The injections were given against their will.

9.      One time I was in the bathroom crying and I didn't want to come out, and then one of the staff members pulled me out forcefully and it really hurt.

10.     I always feel really sad here. I feel so sad that I want to hurt myself; I want to kill myself; and I want to cut myself, but I haven't learned how to cut myself.

11.     Staff members say bad words here.  When the girls are crying, the staff says things like, "I'm going to fuck her up" or "I'm going to kick your little ass." And then if we say bad words, we get in trouble.

12.     On at least two occasions staff members have tried to hurt me.  One time a staff member put her two thumbs up to my throat and her hands around my neck.  It hurt and I was gasping for breath.  The staff member said she was just "playing" but I felt scared.

<u>Education Issues</u>

13.     At Shiloh, we attend school on week days. My teacher is a man we call "Mister George." Mr. George does not treat me well and he has been verbally abusive to me the entire time he has been my teacher. He repeatedly tells me "shut up." On at least ten occasions he has called me a "dumb ass" and "you're stupid." He also tells me, "no one likes you here."

**Exhibit 48
Page 263**

14.     When I have complained to other staff at Shiloh about the way Mr. George treats
me, they tell me that he treats everyone that way. I know that this is not true; that he
treats me worse than the others because I have not heard him call anyone else a "dumb
ass."

<u>Communication with family</u>

15.     When I was at Saint PJ's, I was allowed regular telephone calls to my family.
Since I have been at Shiloh, the staff has repeatedly told me that my family is not
answering the phone and I have only had one call with them. I have only seen them call
my family members three times, and I have not been allowed to call them myself.

16.     I have no idea why I'm here or why I've been here for so long when other kids get
to go with their families. I would rather go back to Honduras and live on the streets than
be at Shiloh.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this
30th day of November, 2017, at Manvel, Texas.

I certify that I am fluent in the Spanish and English languages and that I truthfully
and accurately translated the above declaration from English to Spanish for ▮▮▮▮
▮▮▮▮▮▮ before she signed the declaration.

Dated: November 30th, 2017

Saira Salazar

# Exhibit 49

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

**Exhibit 49**
**Page 265**

I, ████████████████████, declare as follows:

1.      This declaration is based on my personal knowledge.  If called to testify in this case, I would testify competently about these facts.

2.      I am 16 years old. I am from Mexico. I am currently being held in ORR custody in the Shiloh Residential Treatment Facility, in Texas.

3.      I first entered the United States when I was approximately 7 years old.

4.      Until I was approximately 12 years old, I lived with my aunt and my sister in San Jacinto, California. I ran away from home because my aunt hit me with a belt and she tied me to the gate for about one to two hours. I explained to a friend my reasons for running away. My friend then told the school's principal about my aunt and the police came to my aunt's house.

5.      I do not remember how I came to be under the custody of the Office of Refugee Resettlement ("ORR"). It was a very confusing time.

6.      In total, I have been in ORR custody for almost 4 years. I spent approximately two years at a shelter in Santa Fe, New Mexico. I then went to live at Crittenton in Los Angeles.  I was then transferred to the Shiloh Residential Treatment Center. I was told that they were sending me to live with my mom. I was not told that they were sending me to a treatment center. I was also not told that they were sending me outside California.

7.      I arrived at the Shiloh in about June of 2016. During this time, I was not told about, and I did not receive a 30-day review.

8.      At Shiloh, I take medication every morning and night. In the morning, I take seven pills. I think there are four vitamins, a trazedone, and two other pills. At night, I take 7 pills: one to sleep and I'm told that the other six are vitamins.  The evening medications make me feel sleepy.  I don't like taking the medicine because it makes me feel angry. It makes me feel like hitting a wall or ripping up paper.  I was told that I cannot refuse to take the medication because an incident report would be written up. I'm told that each

1

**Exhibit 49**
**Page 266**

1  time I refuse, it would mean I have to spend a couple more days at Shiloh. So, I take the

2  pills every time.

3  9.      During my time in ORR custody, my aunt was identified as a potential sponsor.

4  However, I told ORR that I did not want my aunt to sponsor me because this was the

5  same aunt who used to abuse me. I do not have any potential sponsors.

6  10.     I have been in ORR custody for four years. That is far too long, and I want to be

7  free again. My dream is to live with my mom.

8

9  I declare under penalty of perjury that the foregoing is true and correct.  Executed on this

10  30th day of November, 2017, at Manvel, Texas.

11

12  

13

CERTIFICATE OF TRANSLATION

I certify that I am fluent in the Spanish and English languages and that I truthfully
and accurately translated the above declaration from English to Spanish for ███████
██████████████ before she signed the declaration.

Dated: November 30, 2017

*Maria Martes Campos*

Maria Jose Martinez Campos

3

**Exhibit 49
Page 268**

# Exhibit 50

**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

**Exhibit 50
Page 269**

I, ███████████████████████, declare as follows:

1.    This declaration is based on my personal knowledge. If called to testify in this case, I would testify competently about these facts.

2.    I am 15 years old. I am from Mexico. I speak Spanish and some English. I have been in the United States for about one year and nine months. I am currently in immigration detention in the custody of ORR at Mercy First Residential Treatment Center.

3.    When I came to the United States, I was taken into immigration custody and then transferred to BCFS in San Antonio. I was just there for four days. One morning, they woke me up at 4 am and put me on a plane. They did not tell me where I was going; they just said that I was being taken to a better place, which turned out to be a lie. When I arrived in Virginia, they finally told me where I was and that they were taking me to Shenandoah Juvenile Detention Center.

4.    I don't remember ORR telling me why they were moving me to Shenandoah. I don't remember ever getting anything in writing that told me the reason that they moved me to Shenandoah. I don't remember being told that I could challenge or appeal the decision to put me in Shenandoah.

5.    I was in Shenandoah for seven months. I did not like being in Shenandoah or the way that the staff treated us there. The staff members would say ugly things about my mother and my family members. I think they did that to try to make me mad and to act out. I saw them do similar things to the other kids who were there. I think the worst thing about being in Shenandoah was the fights and seeing the staff members hit other kids in the facility.

6.    At Shenandoah, they punished us by putting us in solitary confinement for long periods of time. If we got into a fight, refused to go into our rooms or to follow the program, or broke the rules in another minor way, they would put us into our rooms for weeks at a time. Three times, they put me into my room in solitary confinement for two

1

**Exhibit 50
Page 270**

weeks, and one time, they put me in my room for three and a half weeks.  When we were on solitary confinement, they did not let us out for any reason, including to eat, take showers or use the bathroom.  Each room had a bathroom which we used to do our necessities so we would not go out. We had to do all of that in our rooms.  I didn't know of any way to try to appeal or challenge the staff's decision to put me into solitary confinement; no one seemed to pay attention to how they were treating us.

7.       They also tied us to restraint chairs as punishment.  One time, when I was at Shenandoah, I didn't want to go into my room.  The staff members reacted by pushing me to the floor, and one of the staff members grabbed my head and forced my head down to the ground.  Then they handcuffed me and put a white bag of some kind onto my head. They took off all of my clothes and put me into a restraint chair, where they attached my hands and feet to the chair.  They also put a strap across my chest.  They left me naked attached to that chair for two and a half days, including at night.   They took the bag off my head when they sat me down on the restraint chair. There were staff members in the room at times but they would leave me alone for a few hours. I do not remember very well. I never saw a doctor while I was in the chair or after they took me out.

8.       I saw three other children tied to the restraint chair at different times.  Each time, they were left there for about a day.

9.       Early one morning at about 3 am when I was at Shenandoah, the staff woke me up and told me that I was leaving.  I was moved to Yolo Juvenile Detention Center that day. I don't remember ever getting anything in writing about the transfer telling me why I was being moved or that I could appeal or challenge the decision to put me in Yolo.

10.      Yolo was also a horrible place.  They used pepper spray on the kids there, and I was sprayed seven times in my eyes.  It burned and hurt a lot.

11.      After I was at Yolo for five months, they moved me to Mercy First in the RTC program.  I have been here for nine months now.

12.      I receive a number of medications here, to help me sleep and for my emotions, including depression and anxiety.  They told me here that I have to take the medications,

2

**Exhibit 50
Page 271**

1 and that it is mandatory.  When I have refused to take my medications, they put me on the
2 red level of our program, which means that I cannot leave the unit.
3 13.     During the time that I have been in immigration detention, I do not remember
4 being told that I could have a bond hearing if I requested one.
5 14.     I considered taking voluntary departure because of the way that I have been treated
6 at the different centers that I have been held at.  Because of the things that have happened
7 to me, I do not have any trust in them that they will treat me properly or that the
8 government will try to release me to a sponsor or to be held in a less restrictive
9 environment.  I have been in immigration detention for a long time, and I have never had
10 any good news in the time that I have been here.  I just want to have freedom and to not
11 have to live in these types of places.

12

13 I declare under penalty of perjury that the foregoing is true and correct.  Executed on this
14 16 day of January , 2018, at ___New York___ , New York.

1

## CERTIFICATE OF TRANSLATION

2     I, Denise Guerrero            , hereby certify that I am proficient in both

3  Spanish and English, and that I accurately translated the foregoing statement and read it

4  back to ███████████  in its entirety in Spanish on _____ [DATE] 1\8\18 .

5

6     _____

7                [NAME]

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

**Exhibit 50
Page 273**

# Exhibit 51

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

**Exhibit 51**
**Page 274**

1  I,                                          declare as follows:

2

3  1.      This declaration is based on my personal knowledge. If called to testify in this
4  case, I would testify competently about these facts.

5  2.      I am 17 years old. I came with my half brother to the United States from Mexico
6  in November 2017. I am currently detained at Northern Virginia Juvenile Detention
7  Center (NoVA) in Alexandria, Virginia.

8  3.      When I first arrived at the border, I was detained at a shelter in Conroe, Texas,
9  where I stayed for approximately two weeks. While at the shelter, I confided in a
10 clinician, who told me that our conversation was confidential and that he would not share
11 anything I told him. I told the clinician that when I was younger, my friends and I used
12 to pretend we were in a gang. We wore all black and experimented with graffiti. We
13 used the graffiti to write love notes to impress girls. We also drew pictures of faces,
14 buildings, and our names. We just fooled around and did it to look cool. When I was
15 fourteen, I stopped pretending to be in a gang because I realized what real gangs actually
16 did. I was never in a real gang, and never wanted to be. I started going to church and
17 became more mature. After I told this to the clinician, he wrote a report, and I later
18 learned that it was used to justify my transfer to a staff secure facility at Casa Mesa in
19 Houston, Texas, where I stayed for two weeks.

20 4.      At Casa Mesa, I also confided in a clinician who told me that our conversation was
21 private. I told him similar information about how I used to pretend that I was in a gang.
22 Then the same thing happened: the clinician wrote a report, and I was transferred to
23 NoVA.

24 5.      I was given no prior warning when I was transferred to NoVA. Immigration
25 officials just came to my room one night and told me I was being transferred without any
26 explanation. I wasn't told about the reports the clinicians wrote until I arrived at NoVA.
27 My case manager at NoVA told me that the reports stated that I was involved in a real
28 gang, Marasalvatrucha, which is a gang from El Salvador. That gang does not exist in

1

Exhibit 51
Page 275

1  Mexico, so it doesn't make sense that I would be involved with them. The reports also
2  claimed that I was a gang informant, that I used drugs and trafficked drugs. I told my
3  case manager that the reports were false and that the clinicians changed the story that I
4  told them. I am not in a gang and was never in a gang in the past. My case manager told
5  me that he would ask ORR why the reports stated a different story, but I have never been
6  given an update. I feel like the staff do not listen to me and that the government just
7  views me as a number. I want to contest my detention, but I have not been given an
8  opportunity to do so.

9  6.    I have been at NoVA for approximately three months. One youth here has
10  physically assaulted me. I never fight back because I don't want to get in trouble. At
11  first, the youth was detained in the same unit as me, but he has since been moved to a
12  different unit. I have filed at least twelve complaints to the staff to report the youth's
13  conduct, but the staff have taken no action to protect me from the youth. I am certain that
14  I will continue to have problems with the youth as long as I am detained at NoVA.

15  7.    My aunt applied to be my sponsor in December. She and her husband, my uncle,
16  are completing the reunification process. My mom sent my aunt a notarized letter stating
17  that she wants my aunt to be my sponsor. My uncle submitted his fingerprints two
18  months ago, but my aunt is still waiting to receive a fingerprinting appointment. After
19  my uncle submitted his fingerprints, the government investigated him because they
20  thought he had a criminal record, which slowed down the reunification process. The
21  investigation concluded that my uncle does not have a criminal record, but my uncle's
22  brother does. My uncle's brother does not live with my aunt, so the investigation was
23  closed.

24  8.    My case manager says that the therapist must complete a psychological study
25  before I can be transferred to a staff secure facility. I have been told that the study is a
26  test of how I will function in society. I have been waiting for the study to be completed
27  for one month. I do not know why this process is taking so long.

28

2

Exhibit 51
Page 276

1    9.      The government told me that the reunification process would move more quickly

2    once I am transferred back to a shelter.  I was supposed to be transferred to a shelter in

3    Houston by the end of February, but it never happened.  I don't know why I am still

4    detained here.  I've never had an opportunity to find out why I'm still here or to challenge

5    my prolonged detention here.

6

7    I declare under penalty of perjury that the foregoing is true and correct.  Executed on this

8    21st day of March , 2018, at    No VA          , Virginia.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

Exhibit 51
Page 277

1

## CERTIFICATE OF TRANSLATION

2      I, _Maria Ignacia Klopf_____, hereby certify that I am proficient in both

3  Spanish and English, and that I accurately translated the foregoing statement and read it

4  back to ███████████████ in its entirety in Spanish on _March 21 2016_

5

6                           _Maria Ignacia Klopf_

7                           Maria Klopf

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 52

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

**Exhibit 52**
**Page 279**

I, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, declare as follows:

1.     This declaration is based on my personal knowledge. If called to testify in this case, I would testify competently about these facts.

2.     I am 17 years old. I came by myself to the United States from Guatemala on August 11, 2017. I was fleeing violence and hoped I would live a better life with my uncle here. I have been detained at three different ORR facilities. I am currently detained at Northern Virginia Juvenile Detention Center (NoVA) in Alexandria, Virginia.

3.     When I first arrived at the border, I was taken to a Southwest Key shelter in Arizona, where I stayed for approximately eight days. While there, I spoke to a clinician and told her about some of the traumatic experiences that I had in my home country. For example, I told her that when I was younger, I had seen people tortured and killed. I was coerced and forced to do things that I didn't want to do. I often feared for my life and the safety of my family. I thought that my conversation with the clinician would be confidential because we always spoke in private in the clinician's office, and no one ever interrupted us when we met. After I met with the clinician, I was placed on one-to-one security; a staff member was always by my side. I later learned that the clinician wrote a report documenting what I confided in her, and the government used that report to justify my transfer to the staff secure facility at Children's Village in New York.

4.     I was transferred to Children's Village on August 18, 2017. I was terrified. During the transfer, I had no idea what was happening and wondered whether I was being kidnapped. No one told me where I was going or why. The staff didn't answer me when I asked why I was leaving the shelter. They just told me to stop talking and only spoke to me in English, which they knew I couldn't understand very well. I was not given any prior notice of the transfer or any opportunity to challenge the transfer. Five days after I arrived at Children's Village, Jesse, the supervisor of the case managers at Children's Village, told me that I had been transferred there because of what the clinician from the shelter reported. This conversation with Jesse was the first time that I learned that the

1

Exhibit 52
Page 280

1  clinician shared what I believed was a private conversation and that the conversation had

2  been used against me.

3  5.  I feared for my life when I was at Children's Village. The staff punished me when

4  I tried to protect myself and when I told them that I felt unsafe. When I first arrived at

5  Children's Village, I talked to another young man about how scared I was when I was

6  transferred from the shelter. The staff found out what I had said and punished me for

7  discussing my experience. I didn't know I wasn't allowed to talk about my experience,

8  but the staff didn't care. I was placed on "red" behavior level, which is assigned to youth

9  who misbehave. On "red" level, I wasn't allowed to go outside for a week and didn't

10 have as many freedoms as the other youth. For example, I wasn't allowed to play soccer

11 outside, play in the gym, go to the swimming pool, play video games, and I had to go

12 sleep two hours earlier than the other youth. I do not think it was fair for me to be

13 punished for talking about my experience.

14 6.  At Children's Village, multiple youth bullied me and another young man because

15 we didn't speak or understand English very well. I was also bullied because I reported

16 incidents to the staff whenever I felt unsafe. One of the bullies lived in the same room as

17 me. I spoke to the staff many times about the bullying, but they never did anything to

18 prevent it from happening again. After many weeks of bullying passed with no change, I

19 finally wrote a formal complaint to the staff to express how scared I felt. The staff told

20 me to stop complaining about the bullies and threatened that if I submitted any more

21 complaints, my immigration case would be jeopardized.

22 7.  I told multiple supervisors that I wanted to move to a shelter so I could get away

23 from the bullies. The staff told me that I would not be able to move to a shelter, and they

24 did not explain why. I was told that my therapist had to recommend that I be transferred

25 to a shelter. When I asked my therapist to write the recommendation, she said that I

26 didn't need to go to a shelter because I was going to live with my uncle soon. At first,

27 when the therapist told me this, I was very happy. But after awhile, I realized that the

28 therapist was just making excuses; she never intended to recommend that I transfer to a

**Exhibit 52**
**Page 281**

1  shelter. I continued to be bullied and I kept begging my therapist to recommend that I

2  transfer to a shelter, but my situation just got worse. I wanted to transfer to a shelter

3  because I felt like every time I shared my concerns with my therapist, she never did

4  anything to help me. I did not feel like she believed me or wanted to help me. I wanted

5  to go to a shelter so that I would be treated better.

6  8.    A few days before I was transferred to NoVA, the staff at Children's Village

7  accused me of cutting my wrists, which was a false accusation. I did not try to harm

8  myself, and I showed the staff my wrists to prove that there were no marks. The staff

9  punished me and prohibited me from being in the same room as the other youth. The

10  staff did not conduct an investigation or show me any evidence but used the accusations

11  to justify my transfer to NoVA. I told the staff at NoVA, including my therapist, that I

12  wanted to appeal the transfer, but no one gave me the opportunity to appeal. I do not

13  believe I was sent to NoVA for legitimate reasons, and I still want to appeal my transfer.

14  Every time I have tried to tell the staff at NoVA that I do not believe I was transferred

15  fairly, they do not take my statements seriously.

16  9.    I have requested bond hearings multiple times. At Children's Village, I asked for a

17  bond hearing, and no one ever scheduled one. I want to have a bond hearing so I can

18  explain to the judge that I am not dangerous, and I will not run away. I just want to live

19  with my uncle and help provide my younger siblings with better opportunities than I had

20  when I was growing up.

21  10.    My uncle has applied to be my sponsor so that I can live with him in Nashville,

22  Tennessee. He and I have a good relationship and we speak regularly. My mom signed

23  documents designating my uncle to be my sponsor. He applied to be my sponsor when I

24  was detained at Children's Village and has done everything the government has asked of

25  him, including providing fingerprints and completing a home study. The government

26  told my uncle that he failed the home study because he did not know about the traumatic

27  events that happened to me when I was younger and because he did not have enough

28  furniture in his home. Once I got to NoVA, I told my uncle all about my experiences

3

Exhibit 52
Page 282

1  when I was in Guatemala, and my uncle submitted photos of all the furniture he bought in
2  preparation for my arrival.  Once the government received those photos, my uncle was
3  told that he passed the home study.  However, my case manager recently told me that my
4  uncle needs to send the government a paycheck to prove that he has a job, but I don't
5  know if my uncle knows that he is supposed to send a paycheck.  In addition, the staff at
6  NoVA have told me that before I can be released to my uncle, my therapist needs to
7  complete a psychological study.  The staff told me that I am on a waitlist and that the
8  therapist hasn't completed the psychological study yet because there are too many other
9  youth on the waitlist.  Some of the youth on the waitlist are about to turn 18, and it
10 doesn't look like they will receive a completed psychological study before they age out of
11 ORR.  I am frustrated because I already had a psychological study at Children's Village,
12 and I have been waiting for two months for this additional study at NoVA to be
13 completed.
14 11.    Any time I want to find out more information about the status of my uncle's
15 reunification application, I have to ask the staff here.  They don't tell me what is going on
16 with my uncle's application unless I ask.  The government keeps adding more steps to the
17 process.  For example, a few weeks ago, my uncle was required to attend a class that
18 teaches adults how to care for children.  I feel like the government keeps delaying my
19 release for no legitimate reason.
20 12.    I have not been able to speak to my uncle for two weeks because the staff at NoVA
21 told me there is a new phone system, and the system does not allow me to speak to my
22 uncle.  I am only able to speak with my mother, and my mother has to pay by the minute,
23 which is very inconvenient.  I do not understand why she has to pay.  Under the old
24 system, my family didn't have to pay to speak to me on the phone.  Whenever I have
25 asked to call my uncle, the staff tell me I have to use a different phone, but that phone is
26 broken.  I have told the staff and a supervisor several times that the phone is broken, but
27 the staff and supervisor say that it is not their responsibility to fix the phone.  I asked my
28 case manager to let me use the office phone for five minutes to talk to my uncle about the

4

Exhibit 52
Page 283

1 reunification process, but she refused and said if she let me do that, then she would have
2 to let all the other youth use her phone as well.

3 13.  At Children's Village, I took one pill every day. At NoVA, I continue to take
4 medication. It is supposed to calm me down when I am upset, but it doesn't help me at
5 all. I get upset because I am detained, and I don't want to be detained anymore. Anytime
6 I feel frustrated, I do my best to distract myself and calm down. The medication doesn't
7 calm me down; I have to calm myself down. I am trying so hard to be a good student and
8 be on my best behavior. I would not get upset if I were living with my uncle, and I would
9 not need the medication if I were living with him. I asked my doctor to lower the
10 medication dosage because I am preparing to live with my uncle, and I do not want to
11 take the medication after I am released.

12 14.  I try hard to be on my best behavior and avoid trouble. I am an honor student. I
13 have received certificates from several teachers that recognize that I am a good student,
14 and I have received at least four letters of recommendation from different teachers.

15 15.  I really want to live with my uncle. I know I would feel safer and happier if I were
16 living with him.

17

18 I declare under penalty of perjury that the foregoing is true and correct. Executed on this
19 21st day of March , 2018, at ____NoVA____, Virginia.

20
21
22
23
24
25
26
27
28

5

**Exhibit 52**
**Page 284**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CERTIFICATE OF TRANSLATION

I, MARIA IGNACIA KLOPF      , hereby certify that I am proficient in both

Spanish and English, and that I accurately translated the foregoing statement and read it

back to ▮▮▮▮▮▮▮▮▮ in its entirety in Spanish on March 21 2018

Maria Ignacia Klopf

Maria Klopf

# Exhibit 55

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

**Exhibit 55**
**Page 391**

I, ███████████████████████████         declare as follows:

1.     This declaration is based on my personal knowledge.  If called to testify in this case, I would testify competently about these facts.

2.     I am 17 years old.  I am currently being held in ORR custody detained at the Bokenkamp Children's Shelter. I arrived here on January 22, 2017.

3.     My mother passed away when I was only nine months old. Before she died, she did not officially register my birth so I never had an official birth certificate. I never knew my father. I was raised by my maternal grandparents and an aunt in El Salvador. My aunt told me that when my mother was in the hospital, before she passed away, she told them that if she died she wanted me to live with my aunt ████.

4.     My mother wanted my aunt ████ to take care of me because aunt ████ had a very close relationship with my mother and always gave her good advice and took care of her. My mother considered my aunt to be very responsible because she would support me, enroll me in school, and have me go to church. My mother knew that aunt ████ could give me a better life than my grandparents or family in El Salvador could give me. My family in El Salvador have to work all the time and they often do not have enough money to buy food to eat.

Sponsorship Process

5.     Since I arrived at this shelter, I have been asking to have my aunt ████ become my sponsor. My aunt started the application process to be my sponsor when I first arrived at the shelter. She has done everything that ORR has asked of her in order to be my sponsor – she has talked to my case worker, had her fingerprints taken, and submitted all the documents that they have requested. When she submitted all the documentation, she was told that she couldn't be my sponsor because I didn't have an official birth certificate. That's when she hired an attorney to help her.

1

Exhibit 55
Page 392

6.     My lawyer has been working hard to try and get me released from the shelter. My lawyer recently went to the immigration judge to ask why I haven't been released and ask for a bond hearing. The judge granted the request for a bond hearing. Before the bond hearing was scheduled to occur, ORR sent a letter to my lawyer and the judge saying that they did not consider me to be a danger to the community or a flight risk.

7.     In March 2018, I had a bond hearing before the immigration judge. The judge decided that I was not a danger to myself, others, or the community, and that I was not a flight risk. The judge issued a bond order saying this. The hearing happened a few weeks ago, but I still haven't been released.

8.     My case worker told me that the only reason that I haven't been released to my aunt ▮ is because I don't have an official birth certificate from El Salvador. My mother died before she could register me for an official birth certificate.

9.     Since I have never had an official birth certificate, my lawyer has worked hard to submit other documentation to ORR to prove my relationship with my aunt ▮. My lawyer provided ORR with an official certificate from the hospital where I was born in El Salvador. She also provided ORR with a DNA test that shows that my aunt ▮ and I are family, with a 61% DNA match. My whole family is trying to help show that I am who I say I am. My grandparents and aunt have scheduled a hearing in front of a judge in El Salvador to say that they were witnesses to my birth and plead my case so that the judge can make an order stating that I was born in El Salvador. That hearing is supposed to take place on April 9th, 2018.

10.    I don't know what other documents I could provide to prove my relationship with my aunt. My case worker once told me that my case was "perfect" and that I was "golden" to get released, but I'm still here.

11.    I never received a letter or notification from ORR telling me that my aunt ▮ was no longer under consideration as my sponsor or that I could appeal that decision.

12.    The shelter is not considering releasing me to any other sponsors. I do not have any other family members in the United States that could be my sponsor.

2

Exhibit 55
Page 393

13.    I don't know what I can do or what the next step can be for me to try and get out of the shelter if ORR does not allow me to live with my aunt ███.

Relationship with Aunt

14.    My aunt ███ would be a good sponsor for me because I know that she loves me and cares about my future. I know that she will do all the things that my mother would do if she were alive – like supporting my education, taking me to the doctor if I am sick, helping me learn how to cook, and teaching me how to be a good person. My aunt ███ has always supported me emotionally and financially. Whenever I call and talk to her, she gives me good advice and tells me that I need to study and behave well. She worries about me and will take good care of me. My aunt doesn't have to take care of me but she wants to. I love her very much.

15.    My aunt ███ has been able to visit me three times since I have been detained. When she visits, she always brings me clothes, shoes, and food that she knows I enjoy – like pupusas and quesadillas.

16.    Education is very important to me. I know that I want to go to school and graduate. I know my aunt ███ will enroll me in school and support my education. When I was little, I wanted to grow up to be a flight attendant. Now my dream is to be a lawyer for an organization like RAICES. My lawyer has really helped me to learn about my rights and has supported me in times where I have been very afraid. I want to help other children like my lawyer has helped me. No one in my family has ever graduated from school, and I want to be different.

17.    I know that my aunt ███ will take me to my court hearings and meetings with my lawyer. She knows that if I do not attend my hearings I can be deported because I am not being responsible with my immigration case. We both take these court hearings very seriously. She will help make sure that I am doing everything correctly, like updating the court with a new address if we move and keeping in contact with my lawyer.

3

Exhibit 55
Page 394

18.     I am only allowed two calls per week. Sometimes I talk to my aunt ▮ and sometimes I talk to my aunt in El Salvador who helped take care of me when I was little. When I talk to my aunt ▮ on the phone, I sometimes get so sad that I can't help but cry. She is very supportive and tells me that I need to be patient because I will eventually be released and go to live with her. My aunt encourages me to learn English and gives me hope that I will be able to go to school when I am released.

19.     I try to stay as positive as I can while being detained at the shelter. I am very excited to be learning English. I also like to participate in the church services when we have them. If the pastor cannot come to the church services, then I help to preach to the younger kids. I enjoy preaching because I think that the word of God is very important and will help give strength to the younger children who are detained here.

20.     I have been detained at Bokenkamp Children's Shelter for about a year and three months. It is very hard to be here, because I know that my aunt ▮ wants to care for me and is ready for me to come and live with her. I have seen many other children come and go, which makes me sad. I just want to live with my aunt.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 3ʳᵈ day of April 2018, at Corpus Christi, Texas.

4

Exhibit 55
Page 395

1

2              CERTIFICATE OF TRANSLATION

3

4  My name is Itzel Almazan and I swear that I am fluent in both the English and Spanish

5  languages and I translated the foregoing declaration from English to Spanish to the best

6  of my abilities.

7

8  Dated: 4/3/2018

9                                                Itzel Almazan

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

Exhibit 55
Page 396

# Exhibit 56

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Exhibit 56
Page 397

01/09/2018

## Patient Profile - Active Medications

**Client:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮    **Teaching Home:** WOOD HOUSE
**Physician:** JAVIER RUIZ-NAZARIO, MD
**Allergies:** IBUPROFEN;SPICY FOODS , FISH , SOUR CREAM

| Rx # | Medication | Instructions | Start Date |
|------|------------|--------------|------------|
| | | *** Psychotropic Medications *** | |
| 56169 | BUPROPION    TAB 100MG SR | TAKE 1 TABLET BY MOUTH DAILY at 8:00 PM | 12/19/2017 |
| 56100 | GABAPENTIN   CAP 100MG | TAKE 1 CAPSULE BY MOUTH 3 TIMES DAILY at 8:00 AM, 2:00 PM and 8:00 PM | 12/05/2017 |
| | | *** Non-Psychotropic Medications *** | |
| 56127 | CALCIUM PLUS | TAKE 2 TABLETS BY MOUTH DAILY at 8:00 PM | 12/06/2017 |
| 56126 | COREPLEX WITH IRON | TAKE 2 TABLETS BY MOUTH WITH BREAKFAST DAILY at 8:00 AM | 12/06/2017 |
| 56124 | OMEGAPLEX | TAKE 1 CAPSULE BY MOUTH WITH BREAKFAST AND DINNER TWICE A DAY at 8:00 AM and 4:00 PM | 12/06/2017 |
| 56125 | PROBIOTIC RESTORE ULTRA | TAKE 1 CAPSULE BY MOUTH WITH BREAKFAST DAILY at 8:00 AM | 12/06/2017 |

**Exhibit 56**
**Page 398**

# Exhibit 57

**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

**Exhibit 57
Page 399**

11/27/2017

## Patient Profile – Active Medications

Client: ███████ ███████ ██████                    Teaching Home: 58-A
Physician: JAVIER RUIZ-NAZARIO, MD
Allergies: NKDA

| Rx # | Medication | Instructions | Start Date |
|---|---|---|---|
| | | *** Psychotropic Medications *** | |
| 56042 | CLONIDINE    TAB 0.1MG | TAKE 1 TABLET BY MOUTH DAILY at 8:00 PM | 11/21/2017 |
| 56007 | ESCITALOPRAM TAB 20MG | TAKE 1 TABLET BY MOUTH DAILY at 8:00 PM | 11/14/2017 |
| 56009 | QUETIAPINE   TAB 100MG | TAKE 1 TABLET BY MOUTH DAILY at 8:00 PM | 11/14/2017 |
| 56043 | QUETIAPINE   TAB 50MG | TAKE 1 TABLET BY MOUTH (TAKE WITH THE 100MG TABLET TO MAKE 150MG DOSE) DAILY at 8:00 PM | 11/21/2017 |
| | | *** Non-Psychotropic Medications *** | |
| 55904 | CALCIUM PLUS | TAKE 2 TABLETS BY MOUTH DAILY at 8:00 PM | 10/18/2017 |
| 55903 | COREPLEX | TAKE 2 TABLETS BY MOUTH DAILY WITH BREAKFAST at 8:00 AM | 10/18/2017 |
| 55901 | OMEGAPLEX | TAKE 1 CAPSULE BY MOUTH TWICE A DAY WITH BREAKFAST AND DINNER at 8:00 AM and 4:00 PM | 10/18/2017 |
| 55902 | PROBIOTIC RESTORE ULTRA | TAKE 1 CAPSULE BY MOUTH DAILY WITH BREAKFAST at 8:00 AM | 10/18/2017 |
| 56011 | DIPHENHYDRAM INJ 50MG/ML | INJECT 25MG INTRAMUSCULARLY EVERY 6 HOURS AS NEEDED FOR AGITATION/ANXIETY (USE WITH ATIVAN) | 11/14/2017 |
| 56010 | LORAZEPAM    INJ 2MG/ML | INJECT 0.5ML INTRAMUSCULARLY EVERY 6 HOURS AS NEEDED FOR AGITATION/ANXIETY (USE WITH BENADRYL) | 11/14/2017 |

**Exhibit 57**
**Page 400**

# Exhibit 58

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

**Exhibit 58**
**Page 401**

07/31/2017

## Patient Profile - Active Medications

**Client:** ▓▓▓▓▓▓▓▓▓▓▓▓                          **Teaching Home:** 58-C

**Physician:** JAVIER RUIZ-NAZARIO, MD

**Allergies:** No Known Drug Allergy

| Rx # | Medication | Instructions | Start Date |
|------|-----------|--------------|-----------|
| | | *** Psychotropic Medications *** | |
| 55501 | ARIPIPRAZOLE TAB 10MG | TAKE 1 TABLET BY MOUTH DAILY at 8:00 PM | 07/18/2017 |
| 55353 | BENZTROPINE  TAB 1MG | TAKE 1 TABLET BY MOUTH TWICE A DAY at 8:00 AM and 8:00 PM | 06/07/2017 |
| 55522 | CHLORPROMAZ  TAB 25MG | TAKE 1 TABLET BY MOUTH DAILY at 8:00 PM | 07/25/2017 |
| 55354 | DESMOPRESSIN TAB 0.2MG | TAKE 2 TABLETS BY MOUTH DAILY at 8:00 PM | 06/07/2017 |
| 55503 | ESCITALOPRAM TAB 20MG | TAKE 1 TABLET BY MOUTH DAILY at 8:00 AM | 07/18/2017 |
| 55524 | LAMOTRIGINE  TAB 25MG | TAKE 2 TABLETS BY MOUTH DAILY FOR 7 DAYS, THEN INCREASE at 8:00 PM *ON this dose started 7-30* | 07/25/2017 |
| 55525 | LAMOTRIGINE  TAB 25MG | TAKE 3 TABLETS BY MOUTH (75MG) DAILY FOR 7 DAYS, THEN INCREASE, BEGIN LITHIUM DECREASE, at 8:00 PM | 07/25/2017 |
| 55526 | LAMOTRIGINE  TAB 25MG | TAKE 4 TABLETS BY MOUTH (100MG) DAILY at 8:00 PM | 07/25/2017 |
| 55504 | LITHIUM CARB CAP 300MG | TAKE 1 CAPSULE AFTER TWICE A DAY at 8:00 AM and 8:00 PM | 07/18/2017 |
| 55527 | LITHIUM CARB CAP 300MG | TAKE 1 CAPSULE BY MOUTH DAILY FOR 7 DAYS THEN D/C (BEGIN DECREASE ON 3RD WEEK OF LAMOTRIGINE) at 8:00 PM | 07/25/2017 |
| | | *** PRN Psychotropic Medications *** | |
| 55428 | ARIPIPRAZOLE TAB 5MG | TAKE 1 TABLET BY MOUTH EVERY 8 HOURS AS NEEDED HALLUCINATIONS | 06/28/2017 |
| 55505 | TRAZODONE    TAB 50MG | TAKE 1 TABLET BY MOUTH DAILY AS NEEDED FOR SLEEP at 8:00 PM | 07/18/2017 |
| | | *** Non-Psychotropic Medications *** | |
| 55351 | DOK          CAP 100MG | TAKE 1 CAPSULE BY MOUTH DAILY at 8:00 AM | 06/07/2017 |
| 55430 | BANOPHEN     CAP 50MG | TAKE 1 CAPSULE BY MOUTH EVERY 8 HOURS AS NEEDED | 06/28/2017 |
| 55357 | BANOPHEN     CRE 2-0.1% | APPLY TO AFFECTED AREA EVERY 8 HOURS AS NEEDED | 06/07/2017 |

*8/1/17*

**Exhibit 58**
**Page 402**

# Exhibit 59

**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

**Exhibit 59
Page 403**

Shiloh Treatment Center, Inc.
Admission Packet

*Office of Refugee Resettlement*

## Medication Information and Reconciliation
Include all medication the client is currently prescribed.

_____     9-28-17     Tabatha Ketner

Client Name            Date of Completion        Form Completed By

Source of Medication Information:    ☑Pharmacy Label    ☐Parent or Client     ☐Physician Prescription
*Check All That Apply*

☑Discharge Summary/Records From Transferring Facility    Facility: _____

☐Other: _____

| Medication at Admission | | | | | | | | | For Use by Clinic Staff | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Name of Medication | Dose | Frequency | Route | Prescriber | Date Prescribed | Target Symptoms | Last Dose | | Quantity Provided at Admit | Quantity Received at Admit | Order on Admit | Change on Admit | Discontinue on Admit |
| | | | | | | | Date | Time | | | | | |
| Topiramate | 200mg | BID | PO | Villalobos | 8-19-17 | Seizure | 9/28 | Am | 66 | 66 | Y | N | N |
| Levetiracetam | 1000mg | BID | PO | Villalobos | 8-19-17 | Seizure | 9/28 | AM | 31 | 31 | Y | N | N |
| Divalproex ER | 500mg | BID | PO | Villalobos | 8-19-17 | Seizure | 9/28 | AM | 67 | 67 | Y | N | N |
| Oxcarbazepine | 150mg | BID | PO | Torres | 9-15-17 | Mood Stability | 9/28 | Am | 33 | 33 | Y | N | N |
| Sertraline | 50mg | daily | PO | Torres | 9-15-17 | Depression | 9/28 | Am | 17 | 17 | Y | N | N |
| Pro-Air HFA | 90mcg | 2puff q 4-6hr PRN | Inhaled | Torres | | Shortness of Breath | unk | — | 1 | 1 | Y | N | N |
| Diastat Acudial | 10mg | PRN | Rectal | | 8-28-17 | Seizure | unk | — | 1 | 1 | Y | N | N |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

_____                    9-28-17
**Parent, Guardian, or Conservator**               **Date**

**For Use by Clinic Staff**
Review of Medication Conducted By:   Sheri Pitts    Date: 9-28-17    Time: 3:50 PM
Physician Approving Medication:   ☐Rafael Guerrero, MD    ☐Victor Oderinde, MD    ☑Javier Ruiz, MD    ☐Vernon Walling, MD
Change in Medication:   NONE

**Exhibit 59**
**Page 404**

Shiloh Treatment Center, Inc.                                      *Office of Refugee Resettlement*
Admission Packet

## Over-the-Counter (OTC) Medication Release

Client Name: ████████████████

The following non-prescription (OTC) medications may be administered to your child/ward for the designated reason for use without a written order from a Shiloh physician.

**Check box if you do not wish to be treated with any of the medications listed.**

| Do Not Use | Medication | Reason for Use |
|---|---|---|
| ☐ | Acetaminophen 325mg Tablet (ages 12 and over) | Fever > 100° Minor aches and pains Headache |
| ☐ | Acetaminophen Liquid (ages 2 – 11 years) | Fever > 100° Minor aches and pains |
| ☒ | Ibuprofen 200mg Tablet (ages 12 and over)  *Allergy* | Mild pain Menstrual cramps |
| ☐ | Hibiclens (Liquid) | Minor cuts, scrapes and abrasions |
| ☐ | Insect Repellant (Aerosol) | Prevent insect bites |
| ☐ | Triple Antibiotic Ointment | Minor cuts scrapes abrasions |
| ☐ | Milk of Magnesia (Liquid) | Constipation |
| ☐ | Pepto Bismol | Upset stomach |
| ☐ | Swimmer's Ear (Solution) | Prevent infection from swimming |
| *Off-site Day Campuses Only* | | |
| ☐ | Benadryl | Allergic Reaction EPS Symptoms |

_Jabalba Ketner_ RN
_____
**Parent, Guardian, or Conservator**

9-29-17
_____
Date

**Exhibit 59
Page 405**

# Exhibit 60

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

**Exhibit 60**
**Page 406**

DOB -00

Shiloh Treatment Center, Inc.
Admission Packet

Office of Refugee Resettlement

## Medication Information and Reconciliation

~~Indicate all medication the client is currently prescribed.~~

9-7-17                    Sheri Pitts

| Client Name | Date of Completion | Form Completed By |
|---|---|---|

Source of Medication Information:
*Check All That Apply*

[X] Pharmacy Label          [ ] Parent or Client          [ ] Physician Prescription

[X] Discharge Summary/Records From Transferring Facility     Facility: _____

[ ] Other: _____

| Medication at Admission | | | | | | | | | | For Use by Clinic Staff | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Name of Medication | Dose | Frequency | Route | Prescriber | Date Prescribed | Target Symptoms | Last Dose | | Quantity Provided at Admit | Quantity Received at Admit | Order on Admit | Change on Admit | Discontinue on Admit |
| | | | | | | | Date | Time | | | | | |
| Fluoxetine | 20mg | 1 Qpm | PO | PA, Petrus | 8/14/17 | depression | 9/6 | HS | 38 | 38 | Y | N | N |
| (OTC) Melatonin | 3mg | 1 QHS | PO | | | sleep | 9/6 | HS | 486 | 486 | Y | N | N |

_Isabeth Shelton_ RN                    9-7-17
Parent, Guardian, or Conservator                   Date

**For Use by Clinic Staff**

Review of Medication Conducted By: _Sheri Pitts_   Date: _9-7-17_   Time: _1:00 PM_

Physician Approving Medication:   [ ] Rafael Guerrero, MD   [ ] Victor Oderinde, MD   [X] Javier Ruiz, MD   [ ] Vernon Walling, MD

Change in Medication: _____

Rev. 09/10          *Copy to Medical Chart and Copy Completed Form to Pharmacy*          R-1

**Exhibit 60
Page 407**