# Exhibit 91

Exhibit 91
Page 663

## Declaration of James M. Owens

I, James M. Owens, declare and say as follows:

1. All facts stated herein are of my own personal knowledge, and if sworn I could competently testify thereto.

2. I am an attorney licensed to practice law in the State of California. I am a Retired Assistant County Counsel from Los Angeles County. I retired in March of 2014. For the last 15 years of County service, I managed the Dependency Division in Los Angeles County. The Dependency Division handles child abuse and neglect cases for the Los Angeles County Department of Children and Family Services ("DCFS"). We had 120 attorneys handling approximately 25,000 dependency cases and appeals. The attorneys staffed 20 courts and would routinely handle over 500 matters each court day. I am very familiar with the laws and time lines relating to children detained by and placed in the custody of California child welfare agencies. I am generally familiar with the policies and practices of child protection agencies in other states and counties as state and local child welfare agencies are required to comply with minimum guidelines set forth in the Adoptions and Safe Families Act and the Child Abuse Protection Act to receive federal funds. I believe Los Angeles County's policies and practices as described herein to be generally consistent with those of other jurisdictions in the United States.

3. California child welfare agencies are not permitted to commit a child to a treatment facility involuntarily merely because adequate mental health care may be unavailable elsewhere. Involuntary placement in a treatment facility is impermissible without a hearing. *In re Michael E* (1975) 15 Cal. 3d 183; *see also* Cal. Welf. & Inst. Code §§ 5250-5258, 5275-77. Under California law, a judge must authorize the administration of psychotropic medications to a minor in the child welfare system. Cal. Welf. & Inst. Code §§ 369.5, 739.5.

4. I am advised that ORR currently insists that post-release services be in place before it will release a minor whose custodian has been the subject of a home study. My

Exhibit 91
Page 664

understanding is that these post-release services are described at www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-6.

5. Post-release services should be designed to improve child welfare outcomes. These services should be tailored to the specific child and should not be used to prolong detention unnecessarily. In my experience, having such services in place is generally not a precondition to release in a child dependency case. In practice, mental health services and counseling programs will take a week or two to set up the initial appointments. The benefits of the programs may take months or years to achieve.

6. Los Angeles County does not have a shelter for abused and neglected minors. All those alleged or found to be dependent children are either placed with parents or guardians, relatives, or some form of foster placement. California law requires that children be placed in the least restrictive placement most consistent with a family setting. This is consient with the federal law. *See* 42 U.S.C. § 675(5). For dependent children these placements are for the protection of the child. With children alleged or adjudicated to be delinquent the court would also consider the threat that the child poses to the safety of the community.

7. Cal. Welf. & Inst. Code § 362(a) gives courts broad authority to issue reasonable orders for the care, supervision, custody, conduct, maintenance and support of dependent minors, including medical and mental health treatment programs. In my experience, a judge would not continue a secure placement if a less restrictive placement was available consistent with the protection of the child and for delinquent children the community. Continuing a minor in custody until post-release services are in place should be limited to children with very high needs, where the evidence presented persuades the court that having such services in place could mean the difference between a failed placement and one that is successful. In these cases, courts should

carefully assess whether the individual minor's need for specific post-release services is so great that prolonging detention is in his or her best interests.

8. California law also requires that child welfare agencies protect children without regard to federal immigration status. During my County service, the Dependency Division of Los Angeles County Counsel routinely handled 500 matters each court day for the Los Angeles County Departmen of Children and Family Services ("DCFS") . The DCFS has a special unit which handles immigration issues for dependent children of the court. Although Los Angeles County has a large population of undocumented children and youth, I am aware of no instance in which DCFS refused to protect a child because she or he lacked lawful immigration status or had previously been in federal immigration custody. Had any such instance come to my attention, I would have advised the attorney or social worker to process the case as they would process any other matter to insure that children involved would be protected from further abuse or neglect.

8. In preparation for this declaration, I reviewed the declaration of Jallyn N. Suaolog, executed May 25, 2018 ("Sualog"). The Sualog declaration indicates that, on average, a child who is placed in a staff-secure or secure facility may expect to spend more than four and one half times longer in detention than one who is not placed in such facilities, Sualog ¶¶ 30, 44, and that about one in such youth spend over a year in federal custody. *Id.* ¶ 45. I am advised that these periods of detention are imposed without trial on children who have not been adjudicated delinquent. In my experience, an unnecessary period of restrictive detention is inconsistent with child welfare practice requiring that children be placed in least restictive most family like setting.

9. A common practice among hearing officers in the Los Angeles County Juvenile Court is to order DCFS to complete a pre-release investigation to assess a relative's home for temporary placement. Such orders often issue at the initial petition hearing, which occures 72 hours after the child is placed in protective custody by the social worker or peace officer. DCFS is usually given one week to complete the assessment of

Exhibit 91
Page 666

a relative's home. The assessment covers both a physical assessment of the prospective home and the proposed caretaker. In addition to assessing the caretaker's ability to protect the child and provide a loving and nuturing home, a criminal background check will be completed on those residing in the proposed careprovider's home. This is a non statutory processs, which is common place in Los Angeles County.

10. The time frame for hearing on the merits of petition filed by DCFS is 15 judicial days if the child is detained and 30 calendar days if the child is released to a parent who had custody prior to the commencement of the juvenile court case. This hearing is called an adjudication. At this hearing, the court determines whether or not the allegations alleged are true by a preponderance of evidence. Adjudication hearings commonly take place beyond the statutory time period because attorneys request additional time to prepare the case.

11. In practice, the adjudication hearing is combined with the next hearing in the dependency process called a dispostion hearing. At the disposition hearing, the court will declare the child to be a dependent of the Juvenile Court and makes the first custody and placement orders. The statute requires that the dispostion hearing take place 10 judicial days after the adjudication hearing if the child is detained from the parents. *See* Welf. & Inst. Code § 358(a)(1).

11. California's time frames are different from the time frames federal law encourages states to observe. Federal guidelines generally focus on achieving a permanency hearing within 12 months of a child's entering foster care. The California statute will have the review hearings (of which the permanency hearing is the last review) start 6 months from the disposition hearing. *See* Welf. & Inst. Code §§ 366.21 and 366.22. In order to meet the federal timeframes, the agencies working in the Juvenile Court strive to complete the Disposition Hearing within 60 days of the intial detention.

Exhibit 91
Page 667

12. In practice, the Jurisdiction and Disposition hearings will be combined with the court ordering DCFS to complete a jurisdictional/disposition report within four weeks of the detention hearing.

13. A goal of the juvenile is to conduct proceedings in a nonadversial manner if possible. *See* California Rule of Court 5.534(b). Towards that end, those cases which can be settled are settled. This avoids devisive feelings that can occur in the aftermath of contested hearings, which can disrupt the reunification process. More than 80 percent of our cases will settle on an agreed statement of facts, placement and prospective programs.

14. Some cases will proceed to a trial on one or more of the above isssues. While this hearing can occur on the hearing date which the social worker's report is received, most trials are continued to a later date to permit the attorneys to prepare for the issues raised in the social worker's report. In the vast majority of our cases, the dispostion hearing will be completed within the 60 day time frame. The exceptions are usually complex cases involving medical or mental health expert witnesses or the County Coroner, who's report is dependent upon tests which take time to complete.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 12th day of June, 2018, at Long Beach, California.

*[signature]*
James M. Owens

///