CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Peter A. Schey (Cal. Bar No. 58232)
Carlos Holguín (Cal. Bar No. 90754)
256 South Occidental Boulevard
Los Angeles, CA  90057
Telephone: (213) 388-8693
Facsimile: (213) 386-9484
Email:  pschey@centerforhumanrights.org
        crholguin@centerforhumanrights.org

*Attorneys for plaintiffs*

*(Additional counsel listed next page)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*,<br><br>     Plaintiffs,<br><br>- vs -<br><br>JEFFERSON B. SESSIONS, ATTORNEY GENERAL, U.S. DEPARTMENT OF JUSTICE, *et al.*,<br><br>     Defendants. | Case No. CV 85-4544 DMG (AGRx)<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION FOR LIMITED RELIEF FROM FLORES SETTLEMENT AGREEMENT<br><br>Hearing: N/A |

/ / /

LA RAZA CENTRO LEGAL, INC.
Michael S. Sorgen (Cal. Bar No. 43107)
474 Valencia Street, #295
San Francisco, CA 94103
Telephone: (415) 575-3500

LAW FOUNDATION OF SILICON VALLEY
Jennifer Kelleher Cloyd (Cal. Bar No. 197348)
Katherine H. Manning (Cal. Bar No. 229233)
Annette Kirkham (Cal. Bar No. 217958)
152 North Third Street, 3rd floor
San Jose, CA 95112
Telephone:   (408) 280-2437
Facsimile:    (408) 288-8850
Email: jenniferk@lawfoundation.org
          kate.manning@lawfoundation.org
          annettek@lawfoundation.org

Of counsel:

YOUTH LAW CENTER
Virginia Corrigan (Cal. Bar No. 292035)
832 Folsom Street, Suite 700
San Francisco, CA 94107
Telephone: (415) 543-3379

/ / /

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................1

II.  BACKGROUND ........................................................................................4

   1.  LEGAL STANDARD ...........................................................................4

   2.  RELEVANT PROVISIONS OF THE AGREEMENT ......................................4

III. ARGUMENT ...........................................................................................5

   1.  DEFENDANTS' "DETERRENCE" ARGUMENT HAS PREVIOUSLY BEEN CONSIDERED
      AND REJECTED BY THIS COURT ........................................................6

   2.  DEFENDANTS' "INFLUX" ARGUMENT HAS PREVIOUSLY BEEN CONSIDERED AND
      REJECTED BY THIS COURT AND THE COURT OF APPEALS ...................8

   3.  AVAILABLE EVIDENCE SHOWS DEFENDANTS ARE NOT FACING AN
      UNANTICIPATED SURGE IN FAMILY APPREHENSIONS WARRANTING
      MODIFICATION OF THE AGREEMENT .................................................9

   4.  DEFENDANTS' PROPOSED "NARROW MODIFICATION[ ]" TO ELIMINATE
      ACCOMPANIED CLASS MEMBER'S RIGHT TO PROMPT RELEASE IS NOT A
      "NARROW" MODIFICATION NOR IS IT NECESSARY TO ALLOW FAMILIES TO STAY
      TOGETHER ...................................................................................13

   5.  DEFENDANTS' PROPOSED "NARROW MODIFICATION[ ]" TO ELIMINATE THE
      OPTION OF CLASS MEMBERS TO BE HOUSED IN LICENSED FACILITIES IS NOT A
      "NARROW" MODIFICATION NOR IS IT NECESSARY TO ALLOW FAMILIES TO STAY
      TOGETHER ...................................................................................16

IV.  CONCLUSION .......................................................................................17

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Flores v. Johnson*, 212 F. Supp. 3d 864 (C.D. Cal. 2015) .................................................7

*Flores v. Lynch*, 828 F.3d 898 (9th Cir. 2016) ...........................................4, 6, 7, 10, 14

*Kansas v. Crane*, 534 U.S. 407 (2002) .............................................................................8

*Kansas v. Hendricks*, 521 U.S. 346 (1997) ......................................................................8

*L. v. United States Immigration & Customs Enf't ("ICE")*, No. 18cv0428 DMS (MDD), 2018 U.S. Dist. LEXIS 107365 (S.D. Cal. June 26, 2018) ....................3, 16

*Orantes-Hernandez v. Gonzales*, 504 F. Supp. 2d 825 (C.D. Cal. 2007) .....................5

*Orantes-Hernandez v. Holder*, 321 F. App'x 625 (9th Cir. 2009)................................5

*Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367 (1992)..............................4, 9, 10, 12

**Statutes**

8 U.S.C. § 1182(d)(5) .....................................................................................................16

**Other Authorities**

Exec. Order No. 13841, Affording Congress an Opportunity to Address Family Separation, 83 FR 29435 (June 20, 2018)...........................................................2, 3

Federal Rule of Civil Procedure 60(b) ...........................................................................4

INA § 212(d)(5)...............................................................................................................16

## I.   INTRODUCTION

Defendants' *Ex Parte* Application for Limited Relief from the Flores Settlement Agreement ("Defs' App.") [Dkt. #435], asks this Court on an emergency basis to eliminate the rights of accompanied class members under the court-approved 1997 *Flores* settlement ("Agreement") to prompt and continuous efforts on the part of Defendants to release class members to a list of custodians (including parents, relatives, other responsible adults or licensed group homes), and if not released to be housed in facilities properly licensed to safeguard children's health, mental and emotional well-being, and physical safety.[1]

The ground on which Defendants seek relief from these previously agreed-upon safeguards – an inaccurate claim of an influx of families crossing the border, and the purported deterrent effect that indefinite detention of children in remote unlicensed facilities might have on parents contemplating coming to the U.S. with their children to seek asylum – was considered and rejected by this Court three years ago.  Defendants have provided the Court with no legitimate basis on which to depart from that sound and subsequently affirmed ruling.

Defendants' *ex parte* application acknowledges that only previously unforeseeable material changes in circumstances may provide a basis for modifying the

---

[1] Defendants' Notice of Compliance ("Notice of Compliance") [Dkt. #447] adds nothing of substance to the arguments in Defendants' *Ex Parte* Application for Limited Relief from the Flores Settlement Agreement.

Agreement, but concedes – by omission and obfuscation among other means – that no such circumstances truly exist today.

At bottom, Defendants bring their emergency application not because of their inability to house and process a new "surge" of apprehended families – as we discuss below there is no new surge and Defendants' family detention sites today operate far from capacity – but because last week President Trump ordered them to do so. *See* Exec. Order No. 13841, Affording Congress an Opportunity to Address Family Separation, 83 FR 29435 (June 20, 2018) ("Executive Order").

The President ordered the Attorney General to "promptly" file a request with this Court to modify the *Flores* Agreement to "permit the Secretary … to detain alien families together throughout the pendency of criminal proceedings for improper entry or any removal or other immigration proceedings." Executive Order, paragraph 3(e).

President Trump's Executive Order also announces: "It is … the policy of this Administration to maintain family unity, including by detaining alien families together where appropriate and consistent with law and available resources." *Id*. at Section 1. Just weeks earlier the Administration initiated its policy of separating class members from their parents. When the President cancelled his own policy, he blamed Congress and the courts for separating children from their parents: "It is unfortunate that Congress's failure to act and court orders have put the Administration in the position of separating alien families to effectively enforce the law." *Id*.

Defendants now seek emergency relief supposedly to eliminate restrictions in the Agreement and this Court's Orders that force Defendants to "separate[e] alien families …" *Nothing in the Agreement or this Court's Orders require that Defendants separate families*. Even assuming, *arguendo,* that anything in the Agreement or this Court's Orders required Defendants to separate immigrant families – which they do not – modifying the agreement to strip accompanied class members of the right to reasonably prompt release would not improve Defendants' ability to keep families together.  It would permit Defendants to *force* families to stay together in unlicensed facilities by eliminating class members' right – subject to opt out by a parent – to be released or placed under the terms of the Agreement.[2]

Defendants' *ex parte* application should be summarily denied.

---

[2] . The President directed that "The Secretary of Homeland Security (Secretary), shall, *to the extent permitted by law* … maintain custody of alien families during the pendency of any criminal improper entry or immigration proceedings involving their members." Executive Order ¶ 3(a). Plaintiffs read the "to the extent permitted by law" language to include compliance with the Agreement whether or not Defendants' application to modify is granted. However, Defendants' Notice of Compliance appears to state that Defendants will now unilaterally violate the Agreement regardless how this Court rules on the *ex parte* application to modify the Agreement. Defendants state that to comply with the injunction issued in *L. v. United States Immigration & Customs Enf't ("ICE")*, No. 18cv0428 DMS (MDD), 2018 U.S. Dist. LEXIS 107365 (S.D. Cal. June 26, 2018), "the Government will not separate families but detain families together *during the pendency of immigration proceedings ...*" Notice of Compliance at 1 (emphasis supplied). Nothing in the *Ms. L* injunction requires that result. While not clearly written, Defendants' Notice of Compliance seems to indicate that Defendants will now detain class members without regard to Paragraphs 14 and 18 of the Agreement, and without waiting for this Court to issue a ruling on Defendants' ex parte application.

## II.    BACKGROUND

### 1.    LEGAL STANDARD

Federal Rule of Civil Procedure 60(b)(5) provides that the Court may relieve a party from a final judgment, order or proceeding if "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable."  Fed. R. Civ. Proc. 60(b)(5).  The Federal Rules of Civil Procedure permit relief for "any other reason that justifies relief."  Fed. R. Civ. Proc. 60(b)(6).

The party seeking to alter the terms of a consent decree "bears the burden of establishing that a *significant* change in circumstances warrants revision of the decree." *Flores v. Lynch*, 828 F.3d 898, 909 (9th Cir. 2016) (quoting *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 383 (1992)) (emphasis added).  The test for a "significant change" is exacting: Defendants must establish that the Settlement no longer "effectively addresses the problem it was designed to remedy."  *Orantes-Hernandez v. Gonzales*, 504 F. Supp. 2d 825, 831 (C.D. Cal. 2007), *aff'd sub nom., Orantes-Hernandez v. Holder*, 321 F. App'x 625 (9th Cir. 2009).  "The question in this case, therefore, is whether … evolving circumstances have resolved the underlying problems, thereby rendering the [agreement] unnecessary." *Id*.

### 2.    RELEVANT PROVISIONS OF THE AGREEMENT

The Agreement establishes a series of standards for the treatment of class members in Defendants' custody.  Defendants' application seeks relief from two

4

primary provisions of the Agreement.  First, the Agreement establishes a general

policy favoring release of children.  It provides that Defendants "shall release a minor

from [their] custody without unnecessary delay" where they determine that the

detention of the class member is not required "either to secure his or her timely

appearance before the INS [now Immigration and Customs Enforcement] or the

immigration court, or to ensure the minor's safety or that of others."  Agreement, ¶ 14.

Second, in situations in which a class member is not released pursuant to Paragraph 14,

the Agreement requires that the minor be "placed temporarily in a licensed program

until such time as release can be effected in accordance with Paragraph 14 [ ] or until

the minor's immigration proceedings are concluded, whichever occurs earlier." *Id.* ¶

19.

     As discussed *infra*, Defendants have entirely failed to meet their burden of

establishing a legitimate basis to eliminate the protections of these terms of the

Agreement for accompanied class members.

## III.   ARGUMENT

     Over three years ago, Defendants moved to modify the Agreement by arguing,

in part, that a modification was necessary because a "surge" in unauthorized family

units then entering the United States was not anticipated at the time the parties

executed the Agreement.  *See* Defendants' Motion to Modify Settlement Agreement,

[Dkt. # 120] (Feb. 27, 2015). This Court denied Defendants' motion, and in affirming

that decision the Ninth Circuit explained that paragraph 12 of the Agreement

"expressly anticipated an influx, and provided that, if one occurred, the government would be given more time to release minors or place them in licensed programs." *Flores v. Lynch*, 828 F.3d 898, 910 (9th Cir. 2016).

With even less evidence than they offered three years ago, Defendants now resurrect their "surge" argument.  Defendants use selected statistics to claim there is a "worsening influx of families unlawfully entering the United States at the southwest border." Defs' Memo [Dkt # 435-1] at 12. The evidence in fact shows Defendants have hundreds of empty beds at their largest family detention site and there is no significant change in factual circumstances warranting modification of the Agreement. The only real change was President Trump's Executive Order requiring Defendants to file the instant application.[3]

1. DEFENDANTS' "DETERRENCE" ARGUMENT HAS PREVIOUSLY BEEN CONSIDERED AND REJECTED BY THIS COURT

Defendants claim, as they did in 2015, that "detaining these individuals 'deters others from unlawfully coming to the United States.'" Defs' Memo [Dkt. #435-1] at 13, *quoting* Declaration of Tae D. Johnson, [Dkt. #120-1] at 4 ¶ 8 (Feb. 27, 2015).

_____

[3] Defendants also resurrect their previously unsuccessful argument that this Court should modify the Agreement because it "arose from litigation solely about *unaccompanied* minors," and there is currently a purported increase in accompanied minors entering the United States. Defs. Memo [Dkt. #435-1] at 13.  Both this Court and the Court of Appeals have considered and rejected that argument. *See Flores*, 828 F.3d at 910; *Flores v. Johnson*, 212 F. Supp. 3d 864, 885 (C.D. Cal. 2015). Defendants offer this Court no reason to change its prior ruling on the inclusion of accompanied minors in the class definition.

Plaintiffs previously responded to this argument: "[T]here is simply no competent evidence that ICE's detaining a minority of class members [those who are accompanied] in secure, unlicensed facilities has discouraged or will discourage others from fleeing crushing poverty and rampant lawlessness in Central America. Even were there such evidence, as a matter of law ICE simply may not detain children to deter others." Plaintiff's Opposition to Motion to Modify [Dkt. # 122] at 2.

The Settlement has been in effect since 1997, yet Defendants offer no evidence establishing that its enforcement now encourages others to enter the United States without authorization. In any event, deterring others is simply not a lawful basis to refuse anyone release, much less vulnerable children. The Supreme Court has declared such "general deterrence" justifications impermissible. *See Kansas v. Crane*, 534 U.S. 407, 412 (2002) (warning that civil detention may not "become a 'mechanism for retribution or general deterrence' – functions properly those of criminal law, not civil commitment") (*quoting Kansas v. Hendricks*, 521 U.S. 346, 372-74 (1997) (Kennedy, J., concurring).[4]

---

[4] In 2015 the Court "considered in detail the evidence Defendants presented of the deterrent effect of the detention policy and [found] the evidence distinctly lacking in scientific rigor." Order [Dkt. #177] at 23. However, because Defendants failed to present any evidence that the policy they implemented either caused or addressed the alleged 2014 change in factual circumstances, the Court decided it "need not rule on the issue of whether deterrence is a lawful criterion for denying release." *Id*. at 24, n. 11.

## 2. DEFENDANTS' "INFLUX" ARGUMENT HAS PREVIOUSLY BEEN CONSIDERED AND REJECTED BY THIS COURT AND THE COURT OF APPEALS

The government also argues that "the number of family units crossing the border illegally has increased dramatically since the Government sought relief in 2015—by 30% since the 2014 influx that led the Government to seek relief from this Court." Defs Memo [Dkt. #435-1] at 14.

The identical argument has already been considered and rejected by this Court.[5] As this Court stated in its Order re Response to Order to Show Cause: "what Defendants characterize as an immigration 'surge' constitutes an 'influx' under the consent decree … assuming the existence of an 'influx of minors into the united states,' paragraph 12A gives defendants some flexibility to reasonably exceed the standard five-day requirement so long as the minor is placed with an authorized adult or in a non-secure licensed facility, in order of preference under paragraph 14, 'as expeditiously as possible.'" Order re Response to Order to Show Cause [Dkt. # 189] at 10.

The Court of Appeals also rejected Defendants' surge argument:

_____

[5] "With respect to whether the Agreement's provisions caused the surge [in 2014], Defendants do not satisfactorily explain why the Agreement, after being in effect since 1997, should only now encourage others to enter the United States without authorization … Defendants are effectively proposing that the Court unilaterally modify the Agreement because enforcement of the Agreement without modification would be detrimental to the public interest." Order [Dkt. #177] at 23, citing _Rufo_, 502 U.S. at 383.

8

The government first argues that the settlement should be modified because of the surge in family units crossing the southwest border. "Ordinarily, however, modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree" ... The settlement expressly anticipated an influx, and provided that, if one occurred, the government would be given more time to release minors or place them in licensed programs.

*Flores v. Lynch*, 828 F.3d 898, 910 (9th Cir. 2016), *quoting Rufo*, 502 U.S. at 385.[6]

3.   AVAILABLE EVIDENCE SHOWS DEFENDANTS ARE NOT FACING AN UNANTICIPATED SURGE IN FAMILY APPREHENSIONS WARRANTING MODIFICATION OF THE AGREEMENT.

The government argues that "the number of family units crossing the border illegally has increased dramatically since the Government sought relief in 2015—by 30% since the 2014 influx that led the Government to seek relief from this Court." Defs' Memo [Dkt. #435-1] at 14. Defendants claim that the projection for FY18 is "a 17% increase over" the number of unauthorized family apprehensions for 2017. *Id*. at 7. Nothing in Defendants' statistics shows that this Court's 2015 decision resulted in a "sharp rise" in family apprehensions.[7]

---

[6] "And, even if the parties did not anticipate an influx of this size, we cannot fathom how a 'suitably tailored' response to the change in circumstances would be to exempt an entire category of migrants from the Settlement ..." *Id*.

[7] Defendants selectively rely on 2015 data – which had the lowest number of apprehensions in the last four years – to show a "sharp rise" in family apprehensions following this Court's 2015 decision. *See* Defs Memo [Dkt. #. 435-1] at 9. In fact,

9

Defendants' motion indicates that there were 59,113 family apprehensions during 8 months in FY18, and that the 12-month projection of 88,670 apprehensions is based on the "assumption that illegal crossers for the remaining four months will arrive *at the same rate* as in the prior eight months, a projection that *does not account for seasonal variations*." *Id*. at 8 (emphasis supplied). Defendants' projection of 88,670 is artificially high since it fails to reflect seasonal fluctuations in migration.

The only year-over-year trend that Defendants' motion actually reflects is a *decrease* in family apprehensions from 77,674 in FY16 to 75,622 in FY17, or a decline of 2.64 percent.[8]  *Id*.  These figures are not significantly higher than the 68,445 apprehensions during FY14, which prompted Defendants' 2015 motion.  *See id*.

Statistics show that from March to September 2017 there was a range of 1,000-4,200 family apprehensions across all Border Patrol sectors, a significant decrease in

---

Defendants' statistics demonstrates that the 2015 month-to-month figures reflect unremarkable fluctuations within longer-term trends.  *See* https://www.cbp.gov/newsroom/stats/southwest-border-unaccompanied-children/fy-2016 (last checked June 29, 2018). The December 2015 high of 8,973 family apprehensions was followed by a steep decrease in January 2016 to 3,143 apprehensions – a level that remained consistent for the subsequent few months. Similarly, the January 2015 low of 1,622 apprehensions was preceded by months of much higher numbers, including a four-year high in June 2014 of 16,330 apprehensions.  Overall this data in no way indicates this Court's 2015 decision impacted migration of families one way or the other.

[8] *Available at* https://www.cbp.gov/sites/default/files/assets/documents/2017-Dec/BP%20Total%20Monthly%20Family%20Units%20by%20Sector%2C%20FY13-FY17.pdf (last checked June 28, 2018).

10

the total number of family apprehensions compared to March-September 2016 when total family apprehensions ranged from 4,400 to 9,600.[9]

Although there was an increase in family apprehensions in fiscal year 2016 with 77,857 families being apprehended across all sectors, there has been a decrease in the total number of apprehensions from FY 2016 to FY 2017 by 2.64 percent.

Furthermore, CBP published a secondary chart comparing Southwest border family unit apprehensions from FY 2017 (October 1, 2016 – May 31, 2018) to FY 2018 (October 1, 2017 - May 31, 2018). The chart provides evidence of a 19% - 48% decrease in family unit apprehensions over 6 sectors and a 3% decrease in family unit apprehensions overall.[10]

Finally, class counsel monitoring conducted this week at Defendants' largest facility used to detain family units shows that of 2,400 available beds, only 1,514 are currently occupied. *See* Declaration of Warren Binford, attached as Exhibit 1. In short, modification of the Agreement is not necessary because compliance has become

---

[9] *Available at* https://www.cbp.gov/sites/default/files/assets/documents/2017-Dec/BP%20Total%20Monthly%20Family%20Units%20by%20Sector%2C%20FY13-FY17.pdf (last checked June 28, 2018).

[10] *Available at* https://www.cbp.gov/newsroom/stats/usbp-sw-border-apprehensions (last checked June 28, 2018).

"substantially more onerous," or "unworkable because of unforeseen obstacles …"

*Rufo*, *supra*, 502 U.S. at 383.[11]

Nevertheless, President Trump's lawyers now argue "[t[he current situation is untenable," Defs' Memo [Dkt. # 435-1] at 12, and illegal entries are "increas[ing] dramatically …" *Id*. at 14. These claims stand in stark contrast to the President's recent public statements that his immigration policies had greatly *lowered* the number of apprehensions along the southern border: "I'm very proud to say that we're way down in the people coming across the border. We have fewer people trying to come across because they know it's not going to happen. But we do need the wall … anyway." Remarks by President Donald Trump and Vice President Mike Pence and Bipartisan Members of Congress at Signing of H.R. 2142, INTERDICT Act (January 10, 2018).[12] The President made clear the numbers were not only down, in fact they were "way, way down …" *Id*.

---

[11] Defendants make no effort to argue that continued compliance with the Agreement "would be detrimental to the public interest. " *Rufo*, 502 U.S. at 383.

[12] *Available at* https://www.whitehouse.gov/briefings-statements/remarks-president-donald-trump-vice-president-mike-pence-bipartisan-members-congress-signing-h-r-2142-interdict-act/ (last checked June 28, 2018).

4. Defendants' proposed "narrow modification[ ]" to eliminate accompanied class member's right to prompt release is not a "narrow" modification nor is it necessary to allow families to stay together

Defendants argue that given the circumstances discussed above, two "tailored" modifications to the Agreement are warranted at this time. Defs' Memo [Dkt. # 4235-1] at 16.

First, Defendants ask the Court to provide the Government an "exemption" from Paragraph 14 of the Agreement "so that children may be placed in ICE custody with their parent or guardian, rather than be released to another individual or placed into HHS custody." *Id.* at 16-17.

Defendants claim that "[s]o long as paragraph 14 of the Agreement is applied as written to accompanied children, ICE is required to separate parents or guardians from their children in situations where the law requires detention or ICE or an immigration judge determines that a parent or guardian should be detained to prevent flight or danger to the community during removal proceedings." *Id.* at 17.[13] Defendants remind us that "family detention … has been a continuing goal of DHS for a considerable time …" *Id.* at 19.

_____

[13] Defendants' Notice of Compliance similarly states in error that "one impact of the *Flores* requirement[s] [of Paragraph 14] if applied to minors that come into DHS custody accompanied by their parents, would be the separation of parents from their children." Notice of Compliance [Dkt. #447] at 2.

13

Nothing in Paragraph 14 of the Agreement states or implies that ICE is "required to separate parents or guardians from their children" in *any* circumstance. [14]

Paragraph 14 requires that when the Defendants determine that the detention of a minor class member is not required either to secure his or her timely appearance before DHS or the immigration court, or to ensure the minor's safety or the safety of others, the Defendants shall release a minor from their custody without unnecessary delay, in a prescribed order of preference, to a parent, legal guardian, an adult relative, an adult designated by a parent, a licensed program willing to accept legal custody, or an adult individual. *Id*.

For minors detained with a parent or legal guardian, Paragraph 14 provides an alternative to detention for a child (who is not a flight risk or danger) if the parent decides it is in his or her child's best interest to be released under Paragraph 14. [15]

Indeed, in their Notice of Compliance filed today, Defendants concede:

_____

[14] Defendants incorrectly assert that the Ninth Circuit in this case "understood that the separation of parents from children was a direct consequence of its holding" affirming this Court's earlier Orders. Notice of Compliance [Dkt. #447] at 3 *citing Flores v. Lynch*, 828 F.3d 898, 908-09 (9th Cir. 2016). All the Court of Appeals held was that parents were not plaintiffs in the *Flores* action, nor are they members of the certified classes, and the Agreement "therefore provides no affirmative release rights for parents." *Id*. at 909. Nowhere does the Court of Appeals say or imply that the separation of parents from children was or would ever be a consequence of its holding.

[15] A parent may at any time decide that her or his child should be released under Paragraph 14 even if the parent initially decided to opt the child out of the release terms.

Relying on a parent's consent in these circumstances where the family is together makes sense, particularly because plaintiffs in this case have always agreed that detention of the family together is permissible if the parent consents. *See Flores,* Transcript at 37-38 (April 24, 2015) (in response to question whether the "agreement allows[s] for an accommodation to . . . a parent who wishes to remain in the [family residential] facility," "the plaintiffs' positions is . . . a class member is entitled to waive those rights" and that waiver may "parents speak for children all the time.")

Notice of Compliance [Dkt. #447] at 9.

In short, nothing Plaintiffs have ever argued or this Court has ever ruled prevents a parent from knowingly and voluntarily waiving her or his child's right to release under Paragraph 14 and therefore no modification of the Agreement is required to accommodate Defendants' desire to maintain their "continuing goal" of not separating families subject to removal proceedings. *Id.* At 19.[16] Nothing

---

[16] Defendants now also claim the preliminary injunction issued in *Ms. L* prohibits DHS from releasing class members consistent with the terms of Paragraphs 14 and 18. Notice re Compliance [Dkt. #447] at 5. Defendants' reading of the injunction is ludicrous. Nowhere does the injunction issued in *Ms. L* prevent Defendants from releasing a minor under Paragraph 14 when the class member's parent wants her or his child released under that paragraph and the child is otherwise eligible for release (is not a flight risk or a danger). *See L. v. United States Immigration & Customs Enf't ("ICE"),* No. 18cv0428 DMS (MDD), 2018 U.S. Dist. LEXIS 107365 (S.D. Cal. June 26, 2018). After several pages of arguing that the *Ms. L* injunction prohibits Defendants from releasing *Flores* class members, Defendants finally concede that

prevents Defendants from releasing parents with their children on other bases,

including pursuant to humanitarian parole or upon a positive credible fear

determination, if they exercise their discretion to do so. *See* INA § 212(d)(5); 8

U.S.C. § 1182(d)(5).

> 5. DEFENDANTS' PROPOSED "NARROW MODIFICATION[ ]" TO ELIMINATE THE
> OPTION OF CLASS MEMBERS TO BE HOUSED IN LICENSED FACILITIES IS NOT A
> "NARROW" MODIFICATION NOR IS IT NECESSARY TO ALLOW FAMILIES TO
> STAY TOGETHER

Defendants urge the Court to provide an "exemption" for ICE family residential

centers from the licensing provisions of the Agreement. Defs' Memo [Dkt. # 435-1] at

19. The licensing provisions require that minors not released under Paragraph 14 "be

placed temporarily in a licensed program." Agreement ¶ 19; *see also* Agreement

Exhibit 1 (laying out the minimum standards for conditions in facilities holding

minors).[17] Defendants argue that an exemption is necessary because of ongoing and

unresolved disputes over the ability of States to license these types of facilities that

house both adults and children. *Id*. at 17-18.

---

"[t]he *Ms. L* decree … provides that the parent [of a *Flores* class member] *may consent*
to the release of the child without the parent." Notice re Compliance [Dkt. #447] at 8
(emphasis supplied). This authority "permits the continued operation of the provisions
of the Flores Agreement governing release of the child …" *Id*.

[17] A "licensed program" is one "that is licensed by an appropriate State agency to
provide residential, group, or foster care services for dependent children." Agreement ¶
6.

This Court has previously ruled: "The purpose of the licensing provision is to provide class members the essential protection of regular and comprehensive oversight by an independent child welfare agency." Chambers Order [Dkt. # 177] at 14.

Defendants assert, as they did before, that an exemption is necessary because of disputes over the ability of States to license facilities that house both adults and children.  Defs' Memo [Dkt. #435-1] at 17-18.  This Court has previously responded to this argument: "The fact that the family residential centers cannot be licensed by an appropriate state agency simply means that, under the Agreement, class members cannot be housed in these facilities except as permitted by the Agreement."  Chambers Order [Dkt. # 177] at 12-13.

Defendants have offered no significant change in circumstances warranting revision of Paragraph 19 of the Agreement so that it's terms would no longer apply to accompanied children.

## IV.   CONCLUSION

Defendants argue that the "equities" and "human considerations" support the "narrow" relief they seek.  Def. Memo [Dkt. #435-1] at 19.  Revoking the right of accompanied class members to prompt release from custody or placement in a facility properly licensed for their care, is hardly a "narrow" matter, and the "equities" and "human considerations" hardly suggest that detained accompanied minors should now be stripped of the protections they possess under the Agreement for no other reason than President Trump's ordering the Attorney General to move this Court to modify

the Agreement as part of his attempt to remedy the chaos his decision to separate children from their parents caused in the first place.

Defendants have failed entirely to meet their burden of establishing a significant change in circumstances meriting modification of the Agreement.

/ / /

1    Accordingly, Plaintiffs respectfully request that this Court summarily deny

2    Defendants' *ex parte* application.

3

4    Dated: June 29, 2018                    Respectfully submitted

5                                            CENTER FOR HUMAN RIGHTS &
                                             CONSTITUTIONAL LAW
6                                            Peter A. Schey
                                             Carlos Holguín
7

8                                            LA RAZA CENTRO LEGAL, INC.
                                             Michael Sorgen
9

10                                           LAW FOUNDATION OF SILICON VALLEY -
                                             LEGAL ADVOCATES FOR CHILDREN & YOUTH
11                                           Jennifer Kelleher Cloyd
                                             Katherine H. Manning
12                                           Annette Kirkham
13

14                                           Of counsel:

15                                           YOUTH LAW CENTER
16                                           Virginia Corrigan

17

18

19                                           /s/*Peter Schey*_____
                                             *Attorneys for Plaintiffs*
20

21

22   ///

23

24

25

26

27

28

19

CERTIFICATE OF SERVICE

I, Peter Schey, declare and say as follows:

I am over the age of eighteen years of age and am a party to this action. I am

employed in the County of Los Angeles, State of California. My business address is

256 S. Occidental Blvd., Los Angeles, CA 90057, in said county and state.

On June 29, 2018 I electronically filed the following document(s):

- **Plaintiffs' Opposition to Defendant's Ex Parte Application for Limited
  Relief from the Flores Settlement Agreement**

with the United States District Court, Central District of California by using the

CM/ECF system. Participants in the case who are registered CM/ECF users will be

served by the CM/ECF system.

/s/__*Peter Schey*_____
*Attorney for Plaintiffs*

1