MICHAEL K.T. TAN*
mtan@aclu.org
JUDY RABINOVITZ*
jrabinovitz@aclu.org
ACLU IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, New York 10004-2400
Telephone: (212) 549-2618
Facsimile: (212) 549-2654

AHILAN T. ARULANANTHAM (SBN 237841)
aarulanantham@aclu-sc.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5232
Facsimile: (213) 977-5297

*Attorneys for Amici Curiae*
*Pro hac vice application forthcoming

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JENNY LISETTE FLORES, et al., <br><br> Plaintiffs, <br><br> v. <br><br> JEFFERSON B. SESSIONS, Attorney General, et al., <br><br> Defendants. | Case No. 85-4544-DMG (Px) <br><br> **BRIEF OF *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS' OPPOSITION TO THE GOVERNMENT'S *EX PARTE* APPLICATION FOR RELIEF** <br><br> Judge: Hon. Dolly M. Gee <br> Courtroom: 8C, Los Angeles Courthouse |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii
STATEMENT OF INTEREST ................................................................................... 1
INTRODUCTION ....................................................................................................... 1
ARGUMENT ............................................................................................................... 4
   I. THE GOVERNMENT MAY NOT DETAIN FAMILIES FOR DETERRENCE PURPOSES. ............................................................................... 4
      A. General Deterrence Is Not a Permissible Basis for Civil Immigration Detention. ..................................................................................................... 4
      B. The Government Presents No Probative Evidence that the *Flores* Agreement or this Court's July 2015 Order Have Caused a Migratory Crisis. .......................................................................................................... 7
   II. THE GOVERNMENT MAY NOT SUBJECT FAMILIES TO BLANKET DETENTION FOR THE PENDENCY OF THEIR REMOVAL CASES ... 12
CONCLUSION .......................................................................................................... 16

Proposed Brief by *Amici Curiae* ACLU Immigrants' Rights Project and ACLU Foundation of Southern California

# TABLE OF AUTHORITIES

**CASES**

*Flores v. Lynch*, 828 F.3d 898 (9th Cir. 2016) ........................................................... 4

*INS v. Nat'l Ctr. for Immigrants' Rights, Inc.*, 502 U.S. 183 (1991) ....................... 14

*Jennings v. Rodriguez*, 138 S. Ct. 830 (2018) ................................................. 1, 6, 14

*Kansas v. Crane*, 534 U.S. 407 (2002) ................................................................. 5, 9

*Kansas v. Hendricks*, 521 U.S. 346 (1997) .......................................................... 5, 9

*Matter of Adeniji*, 22 I. & N. Dec. 1102 (BIA 1999) ............................................. 13

*Reno v. Flores*, 507 U.S. 292 (1993) ...................................................................... 13

*RILR v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) ...................................... *passim*

*Rufo v. Inmates of the Suffolk Cnty. Jail*, 502 U.S. 367 (1992) ............................... 4

*United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) ...................... 14

*United States v. Salerno*, 481 U.S. 739 (1987) ...................................................... 12

*Zadvydas v. Davis*, 533 U.S. 678 (2001) ......................................................... *passim*

**STATUTES**

8 U.S.C. § 1225(b)(1) ......................................................................................... 8, 14

8 U.S.C. § 1225(b)(1)(A) .......................................................................................... 8

8 U.S.C. § 1225(b)(1)(B)(ii) ..................................................................................... 8

8 U.S.C. § 1225(b)(1)(B)(v) ..................................................................................... 8

8 U.S.C. § 1226(a) .......................................................................................... 2, 6, 13

**REGULATIONS**

8 C.F.R. § 208.30(f) .................................................................................................. 8

8 C.F.R. § 1003.19(a) .............................................................................................. 13

8 C.F.R. § 1236.1(c)(8) ........................................................................................... 13

## OTHER AUTHORITIES

Adam Cox & Ryan Goodman, *Detention of Migrant Families as "Deterrence": Ethical Flaws and Empirical Doubts*, justsecurity.org (June 22, 2018) ....... 10, 11

Executive Order, Affording Congress an Opportunity to Address Family Separation, 2018 WL 3046068 (June 20, 2018) .................................................. 12

ICE Directive 11002.1, Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture (Dec. 8, 2009) ............................................................ 14

Ingrid Eagly, Steven Shafer, & Jana Whalley, *Detaining Families: a Study of Asylum Adjudication in Family Detention*, 106 Calif. L. Rev. 785 (June 2018) .................................................................... 15

Memorandum from John Kelly, Secretary of Homeland Security, Implementing the President's Border Security and Immigration Enforcement Improvements Policies (Feb. 20, 2017) ................................................................................... 14

**STATEMENT OF INTEREST**

The ACLU is a nationwide, nonprofit, nonpartisan organization with more than 1.75 million members dedicated to the principles of liberty and equality embodied in the Constitution and this nation's civil rights laws. The Immigrants' Rights Project ("IRP") of the ACLU engages in a nationwide program of litigation and advocacy to enforce and protect the constitutional and civil rights of immigrants. The ACLU Foundation of Southern California is the Southern California affiliate of the ACLU.

IRP and the ACLU Foundation of Southern California have litigated numerous major cases on immigration detention, either as counsel of record or counsel for *amicus curiae*. *See, e.g.*, *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). IRP has particular interest in and experience with family detention. IRP serves as class counsel in *RILR v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015), a nationwide class action lawsuit challenging the government's detention of migrant families, including many *Flores* class members, for the purpose of deterring future migration to the United States.

**INTRODUCTION**

*Amici curiae* the ACLU Immigrants' Rights Project and ACLU Foundation of Southern California (hereinafter "ACLU" or "*Amici*") submit this brief in support of Plaintiffs' opposition to the government's *ex parte* application for relief from the *Flores* Settlement Agreement (hereinafter, "*Flores* Agreement" or "Agreement").[1] *Amici* submit that the government's *ex parte* motion should be denied for at least two reasons.

---

[1] The government specifically asks that this Court (1) permit U.S. Immigration and Customs Enforcement ("ICE") to detain parents and children in ICE family detention centers pending their immigration proceedings and (2) waive the *Flores* Agreement's state licensure requirements for family detention facilities. Gov't Br. 4.

Proposed Brief by *Amici Curiae* ACLU
Immigrants' Rights Project and ACLU
Foundation of Southern California

1

*First*, the government seeks emergency relief on the grounds that the *Flores* Agreement and this Court's July 2015 Order have purportedly "precipitated a destabilizing migratory crisis" by sending a message to migrant families that they will not be detained and deported if they come to the United States. Gov't Br. 2 (referring to ECF No. 177). The government claims that modification of the Agreement to permit family detention during the pendency of immigration proceedings is necessary to "dispel[] such expectations, and deter[] others from unlawfully coming to the United States." Gov't Br. 13 (internal quotation marks and citation omitted).

Even assuming the government's factual claims were correct—and they are not—its *ex parte* motion should be rejected. General deterrence is not a permissible purpose for family detention because this form of detention is civil rather than criminal in nature. The U.S. District Court for the District of Columbia held exactly that, in the context of family detention, in *RILR v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015). Based on controlling Supreme Court precedent, *RILR* concluded that the detention of individuals for the purpose of deterring the migration of others to the United States raises serious due process concerns and violates the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(a). The Due Process Clause and the INA permit detention based only on individualized characteristics such as flight risk and danger to the community. Where the government lacks an individualized basis to detain, incarceration in this context is impermissible. *See RILR*, 80 F. Supp. 3d at 186-90.

Moreover, the government itself agreed not to detain families based on general deterrence as a condition of dissolving the *RILR* injunction and administratively closing the case.[2] Thus, even if the government were correct that

---

[2] *See* Notice to the Court, 1 (ECF No. 40) and Order, 1 (ECF No. 43), *RILR v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) (No. 1:15-cv-00011-JEB).

Proposed Brief by *Amici Curiae* ACLU Immigrants' Rights Project and ACLU Foundation of Southern California

2

*Flores* and this Court's July 2015 Order have impacted migration patterns, it still would be prohibited—by the Constitution, the immigration laws, and its own policy—from imprisoning families to deter other migrants from coming to the United States. *See* Point I.A, *infra*.

In any event, the government has failed to justify its interest in deterrence here. It is unclear why the government has any legitimate interest in deterring the families who primarily benefit from the release provisions of the *Flores* Agreement—namely, asylum seekers whom the immigration authorities have found to have credible asylum claims that must be heard in full immigration court hearings inside the United States. The government has failed to provide any probative evidence either of the "migratory crisis" supposedly precipitated by *Flores* and this Court's July 2015 Order, or that long-term family detention—if permitted by this Court—would effectively deter migrants from seeking asylum in the United States. In short, the government has failed to show that modification of the *Flores* Agreement is warranted. *See* Point I.B, *infra*.

*Second*, the government's motion appears to assume that if the *Flores* Agreement did not require that children be released promptly from custody, then the government could subject the parents and children to prolonged detention pending completion of their removal proceedings, and thereby avoid the need for family separation. *See, e.g.*, Gov't Br. 5. However, the government may not subject families to such categorical detention. Instead, the Due Process Clause, the INA, and the INA's implementing regulations all require that the government make an individualized determination that detention is warranted based on flight risk and danger.

# ARGUMENT

## I. THE GOVERNMENT MAY NOT DETAIN FAMILIES FOR DETERRENCE PURPOSES.

### A. General Deterrence Is Not a Permissible Basis for Civil Immigration Detention.

The government seeks emergency relief from the *Flores* Agreement based on a purported influx of migrant families that it claims resulted from this Court's July 2015 Order denying the government's motion to amend the Agreement. *See* Gov't Br. 2-3, 8-9; *see also* ECF No. 177. As set forth below, the government's claims are factually incorrect and do not remotely show a "significant change in circumstances" warranting extraordinary relief under Rule 60(b)(5). *See Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 (1992). *See also* Point I.B., *infra*. But even if the government *had* shown a significant change in circumstances—which it has not—it still would be prohibited from deploying family detention for the purpose underlying its *ex parte* motion: that is, to deter other migrants from traveling to the United States.

This is made clear by the district court's preliminary injunction ruling in *RILR v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015). *See also Flores v. Lynch*, 828 F.3d 898, 904-05 (9th Cir. 2016) (discussing *RILR* injunction). In *RILR*, a plaintiff class of Central American mothers and children challenged, among other things, the Department of Homeland Security's ("DHS") policy and practice of detaining families for the purpose of deterring other migrants from coming to the United States.[3] The district court concluded, based on controlling Supreme Court

---

[3] The class as provisionally certified by the district court consists of Central American mothers and children who:

> (a) have been or will be detained in ICE family detention facilities since June 2014; (b) have been or will be determined to have a credible fear of persecution in their home country, *see* 8 U.S.C. §

(cont'd)

precedent, that such detention raised serious due process concerns. *See RILR*, 80 F. Supp. 3d at 187-90. As the Supreme Court repeatedly has recognized, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Thus, "government detention violates [the Due Process Clause] unless the detention is ordered in a criminal proceeding with adequate procedural protections, or, in certain special and narrow nonpunitive circumstances, where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* at 690 (emphasis in original) (internal citations omitted).

In contrast to *criminal* detention, "general deterrence" is not a permissible basis for *civil* detention—including under the immigration laws. *See RILR*, 80 F. Supp. 3d at 188-89. *See also Kansas v. Crane*, 534 U.S. 407, 412 (2002) (warning that civil detention may not "become a 'mechanism for retribution or general deterrence'—functions properly those of criminal law, not civil commitment") (quoting *Kansas v. Hendricks*, 521 U.S. 346, 372-73 (1997) (Kennedy, J., concurring)); *Hendricks*, 521 U.S. at 373 ("[W]hile incapacitation is a goal common to both the criminal and civil systems of confinement, retribution and general deterrence are reserved for the criminal system alone."). Indeed, as the court in *RILR* explained, the Supreme Court has permitted immigration detention based only on "characteristics inherent in the alien himself or in the category of

---

1225[(b)(1)](B)(v), § 1158; 8 C.F.R. § 208.31; and (c) are eligible for release on bond, recognizance, or other conditions, pursuant to 8 U.S.C. § 1226(a)(2) and 8 C.F.R. § 1236.1[(c)](8), but (d) have been or will be denied such release after being subject to an ICE custody determination that took deterrence of mass migration into account.

Order ¶ 2, *RILR v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) (No. 1:15-cv-00011-JEB) (ECF No. 32).

Proposed Brief by *Amici Curiae* ACLU
Immigrants' Rights Project and ACLU
Foundation of Southern California

5

aliens *being detained*—that is, the Court countenanced detention of an alien or category of aliens on the basis of *those aliens'* risk of flight or danger to the community." *RILR*, 80 F. Supp. 3d at 188. *Accord Zadvydas*, 533 U.S. at 690-92. By contrast, the Due Process Clause does not permit the detention of a particular individual "for the sake of sending a message of deterrence to other Central American individuals who may be considering immigration." *RILR*, 80 F. Supp. 3d at 188-89.

In light of these serious due process concerns, the court in *RILR* applied the canon of constitutional avoidance[4] to interpret the INA, 8 U.S.C. § 1226(a), to prohibit detention based on general deterrence, and granted the plaintiffs' motions for a preliminary injunction and provisional class certification. *See id.* at 186-87, 191. Subsequently, in May 2015, the government notified the district court that it had decided to discontinue detaining families on deterrence grounds. *See* Notice to the Court, *RILR v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) (No. 1:15-cv-00011-JEB) (ECF No. 40). In June 2015, by agreement of the parties, the district court then dissolved the preliminary injunction and closed the case, allowing the plaintiffs to move to reinstate the preliminary injunction if the government again seeks to detain class members for the purpose of deterring future immigration to the United States. *See* Order, *RILR v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) (No. 1:15-cv-00011-JEB) (ECF No. 43).[5]

---

[4] *See Zadvydas*, 533 U.S. at 689 (explaining that the canon of constitutional avoidance requires courts to "ascertain whether a construction of the statute is fairly possible by which the [constitutional question] may be avoided."). *See also Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018) (the canon of constitutional avoidance "permits a court to choose between competing plausible interpretations of a statutory text" (internal quotation marks and emphasis omitted)).

[5] The June 2015 Order in *RILR* requires the government to notify the district court that it has decided to detain class members on general deterrence grounds at least ten days prior to making any change in policy, so that the plaintiffs may seek reinstatement of the preliminary injunction. *See* Order ¶ 2.a, *RILR v. Johnson*, 80 (cont'd)

However, despite the *RILR* preliminary injunction ruling and the parties' agreement in *RILR*, the government now asks in its instant motion that this Court waive critical provisions of the *Flores* Agreement precisely so that it can detain families for the purpose of general deterrence. The government claims that the Agreement has "creat[ed] a powerful incentive for aliens to enter this country with children in violation of our criminal and immigration laws" and that this Court's July 2015 ruling has "precipitated a destabilizing migratory crisis" by sending a "message . . . to those seeking illegal entry: we will not detain and deport you." Gov't Br. 1-2. In the government's view, detaining families until their removal cases are resolved is necessary to "dispel such expectations, and deter[] others from unlawfully coming to the United States." Gov't Br. 13 (internal quotation marks and citation omitted).

Even if the government's assertions regarding the effects of *Flores* and this Court's July 2015 Order were correct—and they are not, *see* Point I.B, *infra*—the Due Process Clause, the immigration statutes, and the government's own stated policy prohibit it from subjecting families to detention in order to deter them. Put simply, general deterrence is not a permissible purpose for civil immigration detention. For this reason, the government's motion for emergency relief should be rejected.

**B.    The Government Presents No Probative Evidence that the *Flores* Agreement or this Court's July 2015 Order Have Caused a Migratory Crisis.**

Even assuming that general deterrence could constitute a permissible basis for detaining families, the government has not justified its interest in deterrence here. As the district court asked in *RILR*, the government "seeks to deter future

---

F. Supp. 3d 164 (D.D.C. 2015) (No. 1:15-cv-00011-JEB) (ECF No. 43). To date, the government has not filed any such notice in *RILR*, despite the position it has adopted in its *ex parte* motion to this Court.

mass immigration; but to what end?" *RILR*, 80 F. Supp. 3d at 189. The government's interest in deterrence is particularly insubstantial given that—contrary to the government's assertions—the overwhelming majority of families who benefit from the release provisions of the *Flores* Agreement have *bona fide* asylum claims. *Compare, e.g.,* Gov't Br. 19 (asserting that the *Flores* Agreement gives families who have "no valid asylum claim" the opportunity to "disappear[]" into the United States), *with* U.S. Citizenship and Immigration Services, Asylum Division, Family Facilities Credible Fear (Apr. 27, 2015), *available at* https://www.uscis.gov/sites/default/files/USCIS/Outreach/PED-CF-RF-familiy-facilities-FY2015Q2.pdf (reporting that nearly 90% of families screened by an asylum officer from January through March 2015 were found to have a credible asylum claim); *see also* Declaration of Manoj Govindaiah ¶ 3 (attached as Ex A.) (explaining that approximately 5,000 of the 5,177 families detained at the Karnes County Residential Center who were provided legal services by RAICES between July 2017 to July 2018 were found to have a credible asylum claim). These families have been found by the immigration authorities to have a credible fear of persecution in Central America—meaning a "significant possibility" that they "could establish eligibility for asylum," 8 U.S.C. § 1225(b)(1)(B)(v)—and deemed to have asylum claims that should be heard in full immigration court hearings inside the United States. *See id*. § 1225(b)(1)(B)(ii); 8 C.F.R. § 208.30(f). By contrast, immigrants found to *not* have a credible fear are immediately deported pursuant to the expedited removal process, without ever receiving a hearing before an immigration judge. *See* 8 U.S.C. § 1225(b)(1)(A). *See also* Govindaiah Dec. ¶ 4 (reporting that the "small minority" of families at Karnes who did not have a fear of return "received expedited removal orders and were generally deported from the United States within a few days afterwards"). Thus, only immigrants found to have credible asylum claims and referred for a full removal hearing face detention for significant periods of time and benefit from the release provisions of the *Flores*

Agreement. It is unclear why the government has a legitimate interest in deterring such *bona fide* asylum seekers, particularly when they already have means to immediately deport immigrants who lack credible asylum claims. Indeed, as the district court reasoned in *RILR*, "a general-deterrence rationale seems less applicable where—unlike pedophiles, *see Hendricks,* 521 U.S. at 354–55, 362, or other violent sexual offenders, *see Crane,* 534 U.S. at 409-11—neither those being detained nor those being deterred are certain wrongdoers, but rather individuals who may have legitimate claims to asylum in this country." 80 F. Supp. 3d at 189.[6]

Moreover, much like when the government attempted to justify its deterrence policy in *RILR*, the government here has failed to present probative evidence that the *Flores* Agreement or this Court's July 2015 Order have "precipitated a destabilizing migratory crisis," *see* Gov't Br. 2, or that family detention would actually deter families from seeking asylum in the United States. *See RILR*, 80 F. Supp. 3d at 189 ("Defendants have presented little empirical evidence, moreover, that their detention policy even achieves its only desired effect—*i.e.,* that it actually deters potential immigrants from Central America.").

As an initial matter, the government's bare assertions regarding the purported impact of *Flores* on migration patterns contradict the social science literature. As the district court found based on expert evidence in *RILR*, "'rumors regarding lenient immigration detention policies in the United States are not a significant factor motivating current Central American immigration.'" *Id*. (quoting

---

[6] The government vaguely asserts that the *Flores* Agreement "encourages parents to subject their children to [a] dangerous journey in order to avoid their own detention" and puts children at "increased risk of trafficking by smugglers," Gov't Br. 6 (internal quotation marks and citation omitted). In addition to offering no evidence for these assertions, the government fails to acknowledge that the parents of children with *bona fide* asylum claims presumably know and have decided that leaving their children in situations of violence and death puts their lives in equal, if not greater, peril.

Declaration of Nestor Rodriguez, Ph.D, ¶ 14, *RILR v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) (No. 1:15-cv-00011-JEB) (ECF No. 9-23)). *See also* Declaration of Cecilia Menjivar, Ph.D, ¶ 15, *RILR v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) (No. 1:15-cv-00011-JEB) (ECF No. 38-1) ("[I]t is my conclusion that any perception of lax border enforcement or detention policies does not meaningfully contribute to the migration of families from Central America to the United States."). Instead, the main "push factors" to drive families from Central America to migrate to the United States are the life-threatening conditions in their home countries. *Id*. ¶ 15. "Compared to the other[] expected risks—such as rape or death—detention is actually less serious and thus less likely to function as a significant deterrent . . . ." *Id*. ¶ 23.

Although the government cites statistics purporting to show the impact of *Flores* and this Court's July 2015 Order on migration patterns, the government's data undermines, rather than confirms, its claims. For example, the government asserts that

> [a]fter a significant reduction in family units crossing the border in FY 2015 when the Government was holding families together, *see* ECF 184-1 at 8 ¶ 17, family crossings away from legal ports of entry nearly doubled in FY 2016, as measured by apprehensions . . . . The month-to-month figures show the sharp rise in family border crossings during 2015—from a figure in the range of 1,600 to 4,000 before this Court's July 2015 decision, to a figure ranging from 5,000 to nearly 9,000 in the months after the decision.

Gov't Br. 7-9. However, as explained in a recent analysis by legal scholars, "[t]he government's correlational statistics fail on their own terms." Adam Cox & Ryan Goodman, *Detention of Migrant Families as "Deterrence": Ethical Flaws and Empirical Doubts*, justsecurity.org (June 22, 2018), https://www.justsecurity.org/58354/detention-migrant-families-deterrence-ethical-flaws-empirical-doubts/. As Cox and Goodman explain:

> At first blush**,** these numbers do sound like there is at least a correlation between *Flores* and families' migration decisions. But the apparent relationship is based on the selective use of only a small slice of apprehensions data . . . . *[In fact,] border apprehensions began rising months before the decision*. The [July 2015 Order] was simply not an inflection point. Forget causation: there's not even a correlational relationship between *Flores* and family migration, as the government asserted in its brief.

*Id*. (emphasis added).[7]

In sum, even assuming detention-for-deterrence were permissible, the government has failed to establish that family detention in fact deters the migration of families seeking asylum in the United States, or that *Flores* has impacted migration patterns as it claims. The government plainly has not met its heavy burden of showing "significant changed circumstances" that could warrant modification of the *Flores* Agreement.

---

[7] Cox and Goodman further explain that

> if the 2015 *Flores* decision really had changed the incentives for families, you would expect crossings for families and unaccompanied minors to respond differently after the decision. After all, unaccompanied minors had always been covered by the *Flores* settlement. The fight in 2015 was over whether the settlement also covered families. If the government wants to claim that the court's decision applying *Flores* to families was the "treatment" that caused a migration surge by families, then unaccompanied minors are the "control group," unaffected by the court decision. So do we see sharply different responses by these two different groups? None whatsoever . . . . The pattern of apprehensions for these two groups track[s] each other almost perfectly over time. This is devastating evidence against the government's contention that rising rates of family apprehensions in the second half of 2015 were caused by the court's July decision in *Flores*.

Cox & Goodman, *Detention of Migrant Families*, *supra.*

## II. THE GOVERNMENT MAY NOT SUBJECT FAMILIES TO BLANKET DETENTION FOR THE PENDENCY OF THEIR REMOVAL CASES.

The government's *ex parte* motion is flawed for an additional reason. The government's motion appears to assume that if the *Flores* Agreement did not require that children be released, then the government could subject the parents and children to prolonged detention pending completion of their removal proceedings, and thereby avoid the need for family separation. *See, e.g.*, Gov't Br. 5 (stating the government's interest in discussing "options . . . that will permit families to be kept together at residential facilities *during the time needed to complete immigration proceedings*" (emphasis added)). Similarly, the President's recent Executive Order directs the Secretary of Homeland Security "maintain custody of alien families during the pendency of . . . immigration proceedings involving their members", "to the extent permitted by law." *See* Executive Order, Affording Congress an Opportunity to Address Family Separation, § 3(a), 2018 WL 3046068 (June 20, 2018).

However, the categorical detention of families pending removal proceedings is *not* permitted by law. Instead, the Due Process Clause, as well as the INA and its implementing regulations, permit detention only upon an individualized determination that the person presents a flight risk or danger to the community. As explained above, *see* Point I.A., *supra*, the Due Process Clause requires "special justifications" for the deprivation of liberty—deterrence not among them—and "strong procedural protections" to ensure that detention is serving a legitimate goal. *Zadvydas*, 533 U.S. at 690-91. As a result, immigration detention generally requires an individualized determination of flight risk and danger to the community. *Id. See also United States v. Salerno*, 481 U.S. 739, 751-52 (1987) (affirming Bail Reform Act in light of procedures for "determining the appropriateness of detention" based on individualized factors). By contrast, due

process does not permit the categorical use of civil detention contemplated by the government's motion.

Likewise, the INA does not permit the categorical detention of families either. Section 1226(a) states only that, "pending a decision on whether the alien is to be removed from the United States," the government "may continue to detain the arrested alien," or "may release the alien" on bond or parole. 8 U.S.C. § 1226(a). The statute contains no authorization for a blanket policy of detaining arrested migrant families, without regard to their individual circumstances, and must be read to avoid the serious constitutional problems that such a policy would present. *See Zadvydas*, 533 U.S. at 689.

The regulations implement this provision by permitting immigration judges to individually review any case where ICE agents determine that an individual should remain detained. *See* 8 C.F.R. § 1003.19(a). The regulations provide for the discretionary release of a noncitizen on bond or other conditions of supervision if the noncitizen "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). *See also Matter of Adeniji*, 22 I. & N. Dec. 1102, 1112-13 (BIA 1999) (applying the same regulation to bond determinations by the immigration judge); *Matter of Guerra*, 24 I. & N. Dec. 37, 39 (BIA 2006) (requiring at discretionary determinations of flight risk and danger have a "reasonable foundation"). As the Supreme Court has repeatedly confirmed in the immigration context, this sort of "discretion" inherently requires some form of individualized determination.

For example, in *Reno v. Flores*, 507 U.S. 292 (1993), the Court was asked to interpret the Attorney General's "broad discretion" to release or detain aliens pending a final determination of deportability. *Id.* at 295-96 & n.1. Although the Court held that certain presumptions guiding the exercise of discretion may be appropriate, it also recognized that an "exercise of discretion . . . requires 'some

Proposed Brief by *Amici Curiae* ACLU Immigrants' Rights Project and ACLU Foundation of Southern California

13

level of individualized determination.'" *Id*. at 313 (quoting *INS v. Nat'l Ctr. for Immigrants' Rights, Inc*. ("*NCIR*"), 502 U.S. 183, 194 (1991)). The Court applied similar reasoning in *NCIR*, in which it interpreted a statute that conferred discretion on the Attorney General to impose conditions on the release of excludable noncitizens. *NCIR*, 502 U.S. at 184-85. Again, the Court held that "the lawful exercise of the Attorney General's discretion . . . requires some level of individualized determination," because "in the absence of such judgments, the legitimate exercise of discretion is impossible in this context." *Id*. at 194-95. More broadly, the Supreme Court has held that "if the word 'discretion' means anything in a statutory or administrative grant of power, it means that the recipient must exercise his authority according to his own understanding and conscience." *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266-67 (1954). Discretion does not mean categorical detention, regardless of the individual's facts and circumstances.[8]

---

[8] In contrast to families detained under Section 1226(a), "arriving" noncitizens who request asylum at a port-of-entry to the United States are detained pursuant to 8 U.S.C. § 1225(b)(1) and not eligible for bond hearings before an immigration judge. *See Jennings*, 138 S. Ct. at 836-37, 842-46. However, pursuant to DHS's own policy directive, arriving noncitizens who establish a credible fear of persecution are entitled to an individualized "parole" review by DHS to determine if they pose no danger or flight and, absent such a determination, their release from detention is "in the public interest." *See* ICE Directive 11002.1, Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture, ¶ 6.2 (Dec. 8, 2009), https://www.ice.gov/doclib/dro/pdf/11002.1-hd-parole_of_arriving_aliens_found_credible_fear.pdf (providing that "absent additional factors," a noncitizen with a credible fear who establishes his or her identity and presents no flight risk or danger should be paroled "on the basis that his or her continued detention is not in the public interest" and that "[e]ach alien's eligibility for parole should be considered on its own merits and based on the facts of the individual alien's case"). The Secretary of Homeland Security stated in February 2017 that the Parole Directive "remain[s] in full force and effect" pending "further review and evaluation." Memorandum from John Kelly, Secretary of Homeland Security, Implementing the President's Border Security and

(cont'd)

The requirement of individualized custody reviews especially matters because—contrary to the government's assertions, *see, e.g.*, Gov't Br. 1—families generally do not need to be detained to ensure their appearance at court hearings. Indeed, the government's own data shows that families are highly likely to appear for their court hearings. A recent comprehensive study of data from the Department of Justice's Executive Office of Immigration Review shows that, between 2001-2016, 86% of family detainees attended all their court hearings. Families who applied for asylum were especially likely to attend future court hearings, with 96% attending all their hearings. And asylum applicants with lawyers had an even higher appearance rate: 97% attended all their hearings during the study period. Ingrid Eagly, Steven Shafer, & Jana Whalley, *Detaining Families: a Study of Asylum Adjudication in Family Detention*, 106 Calif. L. Rev. 785, 848 (June 2018), *available at* http://www.californialawreview.org/wp-content/uploads/2018/06/4-Eagly_Shafer_Whalley.pdf.

In sum, the Constitution, INA, and regulations prohibit the categorical detention of families pending removal proceedings. Instead, the government may detain families only upon an individualized determination that the person presents a flight risk or danger that makes his or her detention necessary.[9]

---

Immigration Enforcement Improvements Policies, at 9-10 (Feb. 20, 2017), https://www.dhs.gov/sites/default/files/publications/17_0220_S1_Implementing-the-Presidents-Border-Security-Immigration-Enforcement-Improvement-Policies.pdf.

[9] Finally, the government claims that modification of the *Flores* Agreement to permit the prolonged detention of families is necessary to avoid family separation—that is, the detention of the parent in an ICE facility and separate placement of the child in the custody of the Department of Health and Human Service's Office of Refugee Resettlement. *See, e.g.*, Gov't Br. 1. However, this is a false choice. In the overwhelming majority of cases, parents pose no danger or flight risk. Thus, there is no legal basis to keep them in detention at all, and families should be released together to the community. *See* Point II, *supra*. Moreover, family separation is not objectionable when a parent makes the decision

(cont'd)

## CONCLUSION

For the foregoing reasons, the government's ex parte application for relief from the *Flores* Agreement should be denied.

Respectfully submitted,

ACLU IMMIGRANTS' RIGHTS PROJECT

ACLU FOUNDATION OF SOUTHERN CALIFORNIA

Dated: June 29, 2018     By:   /s/ Michael K.T. Tan
                                MICHAEL K.T. TAN
                                JUDY RABINOVITZ
                                AHILAN T. ARULANANTHAM
                                *Attorneys for* Amici Curiae

---

that temporary separation is in the best interests of their child. What violates due process is the government's policy of separating families over the objection of a parent, and the *Flores* Agreement in no way requires this. The *Flores* Agreement was intended to protect children.

Proposed Brief by *Amici Curiae* ACLU Immigrants' Rights Project and ACLU Foundation of Southern California

16