UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 85-4544-DMG (AGRx) | Date | July 9, 2018 |
| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 1 of 7 |

Present: The Honorable    DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS - ORDER DENYING DEFENDANTS' "*EX PARTE* APPLICATION FOR LIMITED RELIEF FROM SETTLEMENT AGREEMENT" [435]**

On June 20, 2018, President Donald J. Trump issued an Executive Order requiring "[t]he Attorney General [to] promptly file a request with [this Court] to modify the [*Flores* Agreement], in a manner that would permit the Secretary [of Homeland Security], under present resource constraints, to detain alien families together throughout the pendency of criminal proceedings for improper entry or any removal or other immigration proceedings." *See* Affording Congress an Opportunity to Address Family Separation, Exec. Order No. 13841, 83 Fed. Reg. 29435, 29435 (June 20, 2018) [hereinafter Exec. Order No. 13841]. On June 21, 2018, Defendants filed an *Ex Parte* Application seeking the following "limited" relief: (1) an exemption from the *Flores* Agreement's release provisions so that Immigration and Customs Enforcement ("ICE") may detain alien minors who have arrived with their parent or legal guardian together in ICE family residential facilities, and (2) an exemption from the *Flores* Agreement's state licensure requirement. [Doc. # 435.] Defendants claim that such relief is warranted under Federal Rules of Civil Procedure 60(b)(5) and 60(b)(6). *See Ex Parte* Appl. at 10 [Doc. # 435-1].[1]

Although Defendants did not notice their *Ex Parte* Application for a hearing, they seek "a prompt hearing on [their] request for immediate relief, together with any additional proceedings the Court believes appropriate." *See id.* at 21. Plaintiffs filed an opposition to the *Ex Parte* Application [Doc. # 450], as did the American Civil Liberties Union ("ACLU") [Doc. # 451] and the City of Los Angeles, the City of Chicago, the City of New York, and the City & County of San Francisco ("The Cities") [Doc. # 453] as *amici curiae*.

Defendants' *Ex Parte* Application is a thinly veiled motion for reconsideration without any meaningful effort to comply with the requirements of Local Rule 7-18. On July 24, 2015,

---

[1] All page references herein are to page numbers inserted by the CM/ECF system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 85-4544-DMG (AGRx) | Date | July 9, 2018 |
| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 2 of 7 |

the Court denied Defendants' motion seeking to modify the *Flores* Agreement on the same grounds now raised anew in Defendants' *Ex Parte* Application. *See* Defs.' Motion to Amend at 13, 17–21, 27–28, 30–33 [Doc. # 120]; July 24, 2015 Order at 19–25 [Doc. # 177]; *Ex Parte* Appl. at 15–16 [Doc. # 435-1] (repeating Defendants' position that detaining family units in unlicensed family residential facilities deters others from unlawfully entering the country). In short, Defendants have run afoul of Local Rule 7-18 because the *Ex Parte* Application "repeat[s] . . . oral or written argument made in support of" the earlier Motion to Amend. C.D. Cal. L.R. 7-18.

Even if Local Rule 7-18 did not bar Defendants' *Ex Parte* Application, it would still fail under a Rule 60(b) analysis. The Court's July 24, 2015 Order analyzed in great detail the relevant *Flores* Agreement language and applicable legal authorities, responding to the same issues raised in Defendants' current *Ex Parte* Application. In the absence of a showing of changed circumstances that the parties could not have foreseen at the time of their Agreement, it is unnecessary to replow the same familiar territory. *See Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 383 (1992) ("Ordinarily, . . . modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree. . . . [A] party seeking modification of a consent decree [under Rule 60(b)(5)] bears the burden of establishing that a significant change in circumstances warrants revision of the decree."); *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993) ("[Rule 60(b)(6)] is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment.").

At bottom, Defendants' arguments rest in part on the premise that the July 24, 2015 Order resulted in a "3 to 5-fold increase in the number of illegal family border crossings" because it led arriving families to believe that Defendants would rather release them than separate the children from their families. *See, e.g.*, *Ex Parte* Appl. at 3 [Doc. # 435-1]. Assuming *arguendo* that Defendants' representations regarding the increase in border crossings are correct (*i.e.*, 68,445 apprehensions in 2014; 39,838 in 2015; 77,674 in 2016; and 75,622 in 2017), they do not establish that the Court's July 24, 2015 Order in any way caused this "surge." *See id.* at 3, 9. Defendants' reasoning suffers from the "'logical fallacy of *post hoc, ergo propter hoc*' . . . literally, 'after this, therefore because of this[.]'" *See Kozulin v. INS*, 218 F.3d 1112, 1117 (9th Cir. 2000) (quoting *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000)). Any number of other factors could have caused the increase in illegal border crossings, including civil strife, economic degradation, and fear of death in the migrants' home countries. *See, e.g.*, Govindaiah Decl. at ¶¶ 1–3 (between July 1, 2017 and June 16, 2018, RAICES provided legal assistance to 5,177 family units detained at Karnes County Residential Center; approximately 5,000 of those family units received positive credible fear determinations from an asylum officer

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544-DMG (AGRx) | Date | July 9, 2018 |
|---|---|---|---|
| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 3 of 7 |

or an immigration judge) [Doc. # 451-1]; Adam Cox & Ryan Goodman, *Detention of Migrant Families as "Deterrence": Ethical Flaws & Empirical Doubts*, justsecurity.org (June 22, 2018), https://www.justsecurity.org/58354/detention-migrant-families-deterrence-ethical-flaws-empirical-doubts/ (concluding that "there's not even a correlational relationship between [the July 24, 2015 Order] and family migration," and pointing out that the apprehension patterns for accompanied and unaccompanied minors after the decision did not differ from one another). As it did before, the Court finds Defendants' logic "dubious" and unconvincing.[2] *See* July 24, 2015 Order at 11 [Doc. # 177].

Moreover, the *Flores* Agreement has required accompanied minors to be placed in licensed facilities since 1997. *See Flores* Agreement at ¶ 19 [Doc. # 101]. Defendants did not request an alteration of their legal obligations until many years later in 2015 and again now. The Court's July 24, 2015 Order merely reaffirmed Defendants' pre-existing obligations under the Agreement, and could not have caused the surge in border crossings any more than the implementation of the *Flores* Agreement itself caused the numerous surges that occurred after 1997. *See Ex Parte* Appl. at 3 [Doc. # 435-1].

Additionally, the relief Defendants seek is improper because their proposed modifications are not "*suitably* tailored to the changed circumstance[,]" if any. *Rufo*, 502 U.S. at 391 (emphasis added). Instead, Defendants seek to light a match to the *Flores* Agreement and ask this Court to upend the parties' agreement by judicial fiat.

The *Flores* Agreement allows Defendants up to **five days** to place minors in licensed programs if they are apprehended in districts that do not have those programs, or "as expeditiously as possible" if there is an "influx of minors into the United States[.]" *See Flores* Agreement at ¶ 12.A. In 2015, the Court found that the *Flores* Agreement could accommodate Defendants' request for a 20-day deadline during an influx.[3] Yet, Defendants now seek to hold

---

[2] Because Defendants fail to show that the *Flores* Agreement and the July 24, 2015 Order are responsible for the so-called "surge" in illegal family border crossings, the Court need not address Plaintiffs' and the ACLU's argument that general deterrence is not a permissible purpose of civil detention. *See* Pls.' Opp'n at 11 [Doc. # 450]; ACLU's Opp'n at 8–11 [Doc. # 451]; *see also* July 24, 2015 Order at 24 n.11 (declining to address this issue because Defendants failed to show that detaining families would deter future illegal border crossings) [Doc. # 177].

[3] Paragraph 12.A provides in pertinent part that "[t]he INS will transfer a minor . . . to a [licensed program] . . . within five (5) days [if the minor is apprehended in a district that does not have a licensed program with space available], except . . . in the event of an emergency or influx of minors into the United States, in which case the INS shall place all minors [into licensed placements] as expeditiously as possible[.]" The Court previously observed that, during an influx, a 20-day delay in placement may comply with Paragraph 12.A if that is "as fast as Defendants, in good faith and in the exercise of due diligence, can possibly go in screening family members for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544-DMG (AGRx) | Date | July 9, 2018 |
|---|---|---|---|
| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 4 of 7 |

minors in *indefinite* detention in unlicensed facilities, which would constitute a fundamental and material breach of the parties' Agreement. *Cf. Flores v. Lynch*, 828 F.3d 898, 910 (9th Cir. 2016) (holding that exempting accompanied minors from the *Flores* Agreement was not a suitably tailored response to the influx in family units crossing the border).

Defendants also assert that "families frequently fail to appear at the required proceedings" if they are released from custody. *See Ex Parte* Appl. at 2–3 (citing Homan Decl. at ¶ 30 (attesting that from July 2014 to July 2015, there were 41,297 cases involving family apprehensions and 11,976 removal orders issued *in absentia*) [Doc. # 184-1]) [Doc. # 435-1]. *But see* Ingrid Eagly, *et al.*, *Detaining Families: A Study of Asylum Adjudication in Family Detention*, 106 Calif. L. Rev. 785, 847–48 (2018), *available at* http://www.californialawreview.org/wp-content/uploads/2018/06/4-Eagly_Shafer_Whalley.pdf (Executive Office of Immigration Review data shows that between 2001 and 2016, 86% of family detainees attended all of their court hearings). The evidentiary record is unclear as to the accuracy of Defendants' assertion. Even assuming Defendants are correct, however, this risk was plainly contemplated by the parties when they executed the *Flores* Agreement in 1997. *See, e.g.*, *Flores* Agreement at ¶ 24.A (providing that a minor in deportation proceedings shall be afforded a bond redetermination hearing). It does not support a blanket non-release policy or warrant the Agreement's modification or abrogation.

After submitting their *Ex Parte* Application, Defendants filed a "Notice of Compliance[,]" wherein they contend that a preliminary injunction recently entered in *Ms. L v. U.S. Immigration & Customs Enforcement*, No. CV 18-0428 DMS (MDD), 2018 WL 3129486 (S.D. Cal. June 26. 2018), allows them to nullify the release and state licensure provisions of the *Flores* Agreement. *See* Notice of Compl. at 5–8 [Doc. # 447]. *Ms. L* concluded that a class of certain parents would likely succeed on the merits of their due process challenge to the "practice of separating [certain parents] from their minor children, and failing to reunify [parents] with those children, without any showing the parent is unfit or presents a danger to the child[.]" *See Ms. L*, 2018 WL 3129486, at *7. The District Court ordered ICE and other governmental officers and agencies to reunite these parents with their children (the former of whom were in Department of Homeland Security ("DHS") custody) within 14 to 30 days of that Order, unless (*inter alia*) "the parent affirmatively, knowingly, and voluntarily declines to be reunited with the child in DHS custody." *See id.* at *11–12.

---

reasonable or credible fear[.]" *See* Order re Resp. to Order to Show Cause at 10 [Doc. # 189]. The 20-day deadline arose from Defendants' *own* request for that additional time to comply with their contractual obligations during an influx. *See* Def.'s Resp. to Order to Show Cause at 14, 23–24, 34 n.33 [Doc. # 184].

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 85-4544-DMG (AGRx) | Date | July 9, 2018 |
| Title | Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al. | Page | 5 of 7 |

Defendants advance a tortured interpretation of the *Flores* Agreement in an attempt to show that the *Ms. L* preliminary injunction permits them to suspend the *Flores* release and licensure provisions. They claim that detaining *Flores* Class Members with their parents complies with Paragraph 14's command that Class Members be "release[d] from . . . custody *without unnecessary delay*" because separating a Class Member from a parent would violate the *Ms. L* Order. *See* Notice of Compl. at 6 (emphasis in original) (quoting *Flores* Agreement at ¶ 14 [Doc. # 101]) [Doc. # 447]. Similarly, Defendants contend that indefinite detention in ICE unlicensed family residential facilities is consistent with: (1) their obligation to transfer minors to licensed placements "as expeditiously as possible" if there is an influx of minors, and (2) Paragraph 12.A's proviso that such transfer is unnecessary when "any court decree or court-approved settlement" provides otherwise. *See id.* at 7 n.1 (quoting *Flores* Agreement at ¶ 12.A.2–3 [Doc. # 101]). The Court rejects this strained construction of the *Flores* Agreement it renders meaningless paragraph 12.A (deadlines for transfers to licensed placements), paragraph 14 (persons to whom Class Members may be released), paragraph 18 (efforts toward release and reunification), and paragraph 19 (placement of Class Members in licensed programs).[4] *See Pinel v. Aurora Loan Servs., LLC*, 814 F. Supp. 2d 930, 943 (N.D. Cal. 2011) ("Courts must interpret contractual language in a manner [that] gives force and effect to every provision, and not in a way [that] renders some clauses nugatory, inoperative or meaningless." (alteration in original) (quoting *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 473 (1998))); *O'Neil v. Bunge Corp.*, 365 F.3d 820, 822 (9th Cir. 2004) ("[T]he construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." (internal quotation marks omitted) (quoting *United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992))).

To the extent Defendants claim that the *Ms. L* Order supports their request for modification, their argument fares no better because they have not shown that *Ms. L* required Defendants to violate the *Flores* Agreement or that compliance with the *Ms. L* Order would "directly conflict" with the *Flores* Agreement's release and state licensure provisions. *See Flores v. Sessions*, 862 F.3d 863, 874 (9th Cir. 2017) (noting that this is the standard for modifying a decree on change of law grounds). Absolutely nothing prevents Defendants from reconsidering their current blanket policy of family detention and reinstating prosecutorial discretion. *See* Exec. Order No. 13841, 83 Fed. Reg. at 29435; *see also* 8 U.S.C. § 1226(a)(2)(A) (providing that the Attorney General has the discretion to release certain aliens

---

[4] There is yet another flaw in Defendants' reasoning—*i.e.*, they seek to indefinitely detain *all* migrant children who have arrived with their parents or legal guardians, *see Ex Parte* Appl. at 21 [Doc. # 435-1], even though the *Ms. L* preliminary injunction by its terms excludes a number of family units from its scope, including those who are subject to Executive Order 13841, *see Ms. L*, 2018 WL 3129486, at *3 n.5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 85-4544-DMG (AGRx)** | Date | July 9, 2018 |
| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 6 of 7 |

on a bond of at least $1,500); 8 U.S.C. § 1182(d)(5)(A) (providing that the Attorney General has the discretion to parole certain aliens).

Further, detained parents who are entitled to reunification under the *Ms. L* Order may "affirmatively, knowingly, and voluntarily decline[] to be reunited" with their children, *see Ms. L.*, 2018 WL 3129486, at *11, and all parties admit that these parents may also affirmatively waive their children's rights to prompt release and placement in state-licensed facilities, *see* Notice of Compl. at 9 ("[P]laintiffs in this case have always *agreed* that detention of the family together is permissible if the parent consents." (emphasis added)) [Doc. # 447]; Pls.' Opp'n to *Ex Parte* Appl. at 7 (asserting that Class Members' have the right—"*subject to opt out by a parent*—to be released or placed under the terms of the Agreement" (emphasis added)) [Doc. # 450]; *see also Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1204 (9th Cir. 2005) ("[T]he right of parents to make decisions concerning the care, custody, and control of their children is a fundamental liberty interest protected by the Due Process Clause."); *Wyler Summit P'ship v. Turner Broad. Sys.*, 135 F.3d 658, 662 (9th Cir. 1998) ("It is a well settled maxim that a party may waive the benefit of any condition or provision made in his behalf, no matter to what manner it may have been made or secured." (emphasis omitted) (quoting *Knarston v. Manhattan Life Ins. Co.*, 140 Cal. 57, 63 (1903))); *Jeffrey Kavin, Inc. v. Frye*, 264 Cal. App. 4th 35, 45 (2012) ("It is well settled a contracting party may waive conditions placed in a contract solely for that party's benefit." (quoting *Sabo v. Fasano*, 154 Cal. App. 3d 502, 505 (1984)) (internal quotation marks omitted)). Given the situation arising from Defendants' earlier family separation policy, detained parents may choose to exercise their *Ms. L* right to reunification or to stand on their children's *Flores* Agreement rights. Defendants may not make this choice for them.[5]

Lastly, Defendants have known for *years* that there is "no state licensing readily available for facilities that house both adults and children." *See* Defs.' Motion to Amend at 32 (filed on Feb. 27, 2015) [Doc. # 120]. Yet, Defendants have not shown that they made any efforts to resolve this issue since July 2015, let alone 1997, nor have they demonstrated that any such attempt would be futile. To the contrary, certain local governments charged with enforcing state child welfare laws have indicated their "strong interest . . . in the continued licensed regulation of Defendants' child welfare programs." *See* The Cities' Opp'n at 13 [Doc. # 453]. Given that the *Flores* Agreement has "unambiguously applie[d] both to accompanied and unaccompanied minors" for over 20 years, *see Flores*, 828 F.3d at 901, Defendants cannot now complain that the

---

[5] The Court also observes that there is no inconsistency between the *Flores* Agreement and Executive Order No. 13841. *See* Exec. Order No. 13841, 83 Fed. Reg. at 29435 ("The Secretary of Homeland Security . . . shall, *to the extent permitted by law* . . . maintain custody of alien families during the pendency of any criminal improper entry or immigration proceedings involving their members." (emphasis added)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544-DMG (AGRx) | Date | July 9, 2018 |
|---|---|---|---|
| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 7 of 7 |

Agreement leaves them no choice but to separate parents from their children and violate the *Ms. L* Order.

It is apparent that Defendants' Application is a cynical attempt, on an *ex parte* basis, to shift responsibility to the Judiciary for over 20 years of Congressional inaction and ill-considered Executive action that have led to the current stalemate. The parties voluntarily agreed to the terms of the *Flores* Agreement more than two decades ago. The Court did not force the parties into the agreement nor did it draft the contractual language. Its role is merely to interpret and enforce the clear and unambiguous language to which the parties agreed, applying well-established principles of law. Regardless, what is certain is that the children who are the beneficiaries of the *Flores* Agreement's protections and who are now in Defendants' custody are blameless. They are subject to the decisions made by adults over whom they have no control. In implementing the Agreement, their best interests should be paramount.

In sum, Defendants have not shown that applying the *Flores* Agreement "prospectively is no longer equitable[,]" *see* Fed. R. Civ. P. 60(b)(5), or that "manifest injustice" will result if the Agreement is not modified, *see United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993). Of course, the parties are always free to meet and confer regarding any contractual amendments on which they can mutually agree. This is basic contract law.

In light of the foregoing, the Court **DENIES** the *Ex Parte* Application because it is procedurally improper and wholly without merit.

**IT IS SO ORDERED**.