1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Peter A. Schey (Cal. Bar No. 58232)
Carlos Holguín (Cal. Bar No. 90754)
256 South Occidental Boulevard
Los Angeles, CA  90057
Telephone: (213) 388-8693
Facsimile: (213) 386-9484
Email: pschey@centerforhumanrights.org
        crholguin@centerforhumanrights.org

ORRICK, HERRINGTON & SUTCLIFFE LLP
Elena Garcia (Cal. Bar No. 299680)
egarcia@orrick.com
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone:  (213) 629-2020

*Attorneys for plaintiffs (listing continues on following page)*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*, | ) Case No. CV 85-4544 DMG (AGRx) |
| Plaintiffs, | ) |
| | ) PLAINTIFFS' MEMORANDUM RE |
| - vs - | ) STATUS CONFERENCE AND |
| | ) RESPONSE TO THIRD |
| JEFFERSON B. SESSIONS, ATTORNEY | ) GOVERNMENT MONITORS' |
| GENERAL OF THE UNITED STATES, *et al.*, | ) REPORTS [**REDACTED VERSION** |
| | ) **OFDOCUMENT PROPOSED TO** |
| Defendants. | ) **BE FILED UNDER SEAL**] |
| | ) |
| _____ | ) [HON. DOLLY M. GEE] |

Hearing: July 27, 2018
Time: 10 AM

1

2

*Plaintiffs' counsel, continued:*

3

LA RAZA CENTRO LEGAL, INC.

4

Michael S. Sorgen (Cal. Bar No. 43107)

5

474 Valencia Street, #295

San Francisco, CA 94103

6

Telephone: (415) 575-3500

7

THE LAW FOUNDATION OF SILICON VALLEY

8

Jennifer Kelleher Cloyd (Cal. Bar No. 197348)

9

Katherine H. Manning (Cal. Bar No. 229233)

Annette Kirkham (Cal. Bar No. 217958)

10

152 North Third Street, 3rd floor

11

San Jose, CA 95112

Telephone: (408) 280-2437

12

Facsimile:  (408) 288-8850

13

Email: jenniferk@lawfoundation.org

 kate.manning@lawfoundation.org

14

 annettek@lawfoundation.org

15

*Of counsel:*

16

17

YOUTH LAW CENTER

Virginia Corrigan (Cal. Bar No. 292035)

18

832 Folsom Street, Suite 700

19

San Francisco, CA 94104

Telephone: (415) 543-3379

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MEMORANDUM
RE STATUS CONFERENCE                    ii                    CV 85-4544-DMG (AGRX)

# **TABLE OF CONTENTS**

I.  INTRODUCTION ..................................................................................... 1

II.  THIS A COURT SHOULD NOW APPOINT A SPECIAL MONITOR TO OVERSEE AND MONITOR DEFENDANTS' COMPLIANCE ............................ 4

III.  DEFENDANTS' MATERIAL BREACHES NOT DISCLOSED BY THEIR MONITORS .................................................................................................... 6

   1.  DEFENDANTS HAVE NO CONTRACTS WITH LICENSED PROGRAMS TO PLACE ACCOMPANIED MINORS PURSUANT TO THE AGREEMENT, PARAGRAPH 14E, NOR DO DEFENDANTS PROMPTLY PLACE MINORS IN LICENSED PROGRAMS UNDER PARAGRAPHS 19 AND 12A. ............................................................................. 6

   2. DEFENDANTS HAVE NOT PROVIDED CLASS COUNSEL WITH COPIES OF A "WRITTEN PLAN DESCRIBING THE REASONABLE EFFORTS THAT [DEFENDANTS] WILL TAKE TO PLACE ALL MINORS AS EXPEDITIOUSLY AS POSSIBLE" DURING PERIODS OF INFLUX AS REQUIRED BY PARAGRAPH 12C. .............................. 7

   3. DEFENDANTS DO NOT HAVE PROCEDURES IN PLACE TO OBTAIN AFFIDAVITS OF SUPPORT FOR THOSE WILLING TO ACCEPT CUSTODY OF A MINOR AS REQUIRED BY PARAGRAPH 15 OR TO CONDUCT SUITABILITY ASSESSMENTS OF THOSE WILLING TO ACCEPT CUSTODY OF A MINOR AS REQUIRED BY PARAGRAPH 17 OF THE AGREEMENT. ................................................................................................. 8

   4. DEFENDANTS DO NOT ASSESS WHETHER INDIVIDUAL ACCOMPANIED CLASS MEMBERS POSE A SUBSTANTIAL FLIGHT RISK OR ARE A DANGER BUT RATHER CLAIM THE RIGHT TO DETAIN ALL ACCOMPANIED CLASS MEMBERS UNTIL THEIR PARENTS' IMMIGRATION AND CRIMINAL CASES ARE COMPLETED ................................ 9

   5. FLORES CLASS MEMBER CHILDREN ARE HELD IN UNLICENSED AND SECURE FACILITIES IN VIOLATION OF PARAGRAPHS 6, 12A, AND 19 ...................... 10

6.  **CLASS MEMBERS HAVE BEEN AND ARE BEING DENIED THE PROTECTIONS OF THE AGREEMENT BY DEFENDANTS SEPARATING THEM FROM THEIR DECISION-MAKING PARENTS** ...................................................................................... 11

7. **CLASS MEMBERS ARE PROVIDED INADEQUATE AND EDIBLE FOOD AT BORDER PATROL STATIONS** .......................................................................... 13

8. **Class members are not provided access to clean drinking water at Border Patrol stations** ........................................................................ 17

9.  **CLASS MEMBERS ARE SUBJECT TO UNSANITARY CONDITIONS IN BORDER PATROL STATIONS** .................................................................... 19

10.  **CLASS MEMBERS ARE SUBJECT TO UNHEALTHY COLD CONDITIONS IN BORDER PATROL STATIONS** ............................................................. 22

11.  **CLASS MEMBERS ARE SUBJECT TO HARMFUL IMPEDIMENTS TO NORMAL SLEEP IN BORDER PATROL STATIONS** .......................................... 24

12. **DEFENDANTS FAIL TO ADVISE CLASS MEMBERS ABOUT THEIR FLORES RIGHTS** ........................................................................................ 26

13. **DEFENDANTS FAIL TO MAKE PROMPT AND ONGOING EFFORTS TO RELEASE CLASS MEMBERS** ................................................................. 28

IV.  **CONCLUSION** ...................................................................... 30

# TABLE OF AUTHORITIES

**Cases**

*Brown v. Plata*, 563 U.S. 493, 131 S.Ct. 1910 (2011) ....................................................4

*Flores v. Lynch*, 828 F.3d 898 (9th Cir. 2016) ............................................................1

*Franco-Gonzalez v. Holder*, Docket No. CV-10-02211-DMG (DTBx) (C.D. Calif. 2015) ........................................................................................................................5

*Grassroots Leadership, Inc. v. Texas DFPS*, No. D-1-GN-15-004336 ......................11

*Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015), *cert. denied sub nom. Maricopa Cty., Ariz. v. Melendres*, 136 S. Ct. 799, 193 L. Ed. 2d 711 (2016) ...........................6

*Ms. L v. U.S. Immigration and Customs Enforcement*, No. 18-428 (S.D. Cal. June 26, 2018) ........................................................................................................................1

*Plata v. Schwarzenegger*, 603 F.3d 1088 (9th Cir. 2010) ............................................6

**Other Authorities**

Affording Congress an Opportunity to Address Family Separation, Exec. Order No. 13841, 83 Fed. Reg. 29435 (June 20, 2018) ................................................................2

**Rules**

Fed. R. Civ. P. 53 ........................................................................................................5

*/ / /*

I.      INTRODUCTION

Recent events have shown that Defendants have mounted a full-scale assault on the 1997 Flores settlement ("Agreement"). Even *before* their baseless Ex Parte Application For Limited Relief From Settlement Agreement ("Ex Parte Application") [Dkt. #435], to dismantle the Agreement for accompanied minors was denied by this Court ("July 9, 2018 Order") [Dkt. #455], Defendants stated in Defendants' Notice of Compliance filed June 29, 2018 ("Notice of Compliance") [Dkt. #447], that "the Government *will* … detain families together *during the pendency of immigration proceedings* when they are apprehended at or between ports of entry." *Id*. at 1 (emphasis supplied).[1] Defendants repeat that regardless of this Court's ruling on their Ex Parte application to eliminate the Agreement's release and licensing provisions for accompanied class members, class member

---

1 To justify this position, Defendants repeat their argument, long ago rejected by this Court and the Court of Appeals, that detention, which Congress has made mandatory in "many circumstances" under 8 U.S.C. § 1225(b) requires the detention of class members regardless of their right to release under Paragraph 14. Notice of Compliance [Dkt. #447] at 2. This Court and the Court of Appeals have repeatedly rejected this argument. *Flores v. Johnson*, 212 F. Supp. 3d 864 (C.D. Cal. 2015) ("July 24, 2015 Order") [Dkt. #177] at 10-11]; Order re Plaintiffs' Motion to Enforce and Appoint a Special Monitor ("June 27, 2017 Order") [Dkt. # 363] at 20-21; *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016). Consistent with the Agreement and this Court's July 24, 2015 and June 27, 2017 Orders, the court's order in *Ms. L v. U.S. Immigration and Customs Enforcement*, No. 18-428 (S.D. Cal. June 26, 2018) (attached as exhibit to Dkt.#447), provides that separated parents must be reunited with their children in DHS custody but that a child would be released if Defendants choose to release a parent *or* if a parent consents to the child's release option under Paragraph 14 of the Agreement.  Ms. L. Order at 23.

children now will "not be separated from their parents [i.e. will be detained] where

it is determined that continued detention is appropriate for the parent." Notice of

Compliance at 4.[2]

This position is consistent with President Trump's direction that once he reunites

separated class members with their parents, they will be detained throughout the

pendency of criminal proceedings for improper entry or any immigration

proceedings. *See* Affording Congress an Opportunity to Address Family

Separation, Exec. Order No. 13841, 83 Fed. Reg. 29435, 29435 (June 20, 2018)

[hereinafter Exec. Order No. 13841] (Defendants will "maintain custody of alien

families during the pendency of any criminal improper entry or immigration

proceedings involving their members").

. Defendants' "monitoring" reports ignore Defendants' wholesale breach of

the Agreement as it pertains to unaccompanied minors.

---

2 Defendants' Notice of Compliance defended Defendants' position by quoting
this Court's Order of June 26, 2018 [Dkt. #83]: "[F]or 'children placed in federal
custody, there are two options,' the first option is separating the family and placing
the child alone in ORR custody and 'the second option is family detention'." Order
at 7. Defendants incredibly persist in their breach of the Agreement by refusing to
accept that the "option" is the option of the class member or her or his mother, it is
*not* Defendants' option. No one remotely familiar with the English language can
read the plain language of Paragraphs 14 and 17 to mean the Defendants have the
"option" to grant or withhold the protections of those paragraphs. This Court has
now made this clear twice, and its understanding of the Agreement with regards
the rights of accompanied minors was fully affirmed by the Court of Appeals.
[Dkt. # 365].

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

At the scheduled status conference, the Court has stated it will "assess whether Defendants are in substantial compliance with the Flores Agreement … If the Court is not satisfied with the progress made within that time frame, it will reconsider Plaintiffs' renewed request  for appointment of an independent monitor." June 27, 2017 Order [Dkt. # 363] at 33.

Defendants' own recent ill-advised briefing to this Court and the evidence filed herewith shows that Defendants remain in material breach of the Agreement in numerous ways. While grounds exist for this Court to hold Defendants in civil contempt, Plaintiffs conclude that doing so will not accomplish compliance in the real world.

Class counsel is now certain that there are only two ways to accomplish substantial compliance with the Agreement:

(1) Appointment of a qualified and impartial Special Monitor as proposed in Plaintiffs' Notice of Motion and Motion to Enforce Settlement and Appoint a Special Monitor ("Motion") [Dkt. #201] at 22-24, and Plaintiffs' Proposed Order Appointing a Special Monitor [Dkt. #201-8]; and

(2) To require Defendants to follow a simple step-by-step protocol to fully, fairly, and timely advise class members and their accompanying parents about class members' rights under the Agreement, and, unless the minor is a flight risk or

danger, or the class members' parent does not wish to have her child released, to take and record prompt steps to release the class member under Paragraph 14.[3]

## II.   THIS A COURT SHOULD NOW APPOINT A SPECIAL MONITOR TO OVERSEE AND MONITOR DEFENDANTS' COMPLIANCE

Defendants' unsafe treatment of children continues unabated. Rather than signaling a willingness to end their breach of the Agreement, Defendants have doubled down on their breach seemingly for no other reason than that's what the President wants.[4]

As Plaintiffs pointed out in their Motion to Enforce, the Supreme Court has noted that "[c]ourts faced with the sensitive task of remedying … unconstitutional prison conditions must consider a range of available options, including appointment of special masters or receivers …" *Brown v. Plata*, 563 U.S. 493, 511, 131 S.Ct. 1910 (2011). Courts appointing monitors rely on their equitable powers

---

3 Exhibit 2 to the Agreement sets out instructions to Defendants' officers regarding the "processing, treatment, and placement of minors." Assuming that Defendants would in good faith implement the release provisions of the Agreement, particularly Paragraph 14, the Plaintiffs did not insist on a more detailed exhibit describing the steps Defendants would take to fully implement the Agreement's release provisions. Now is the time to adopt such a protocol that simply describes how the release provisions must be implemented to end Defendants' ongoing breach of these provisions.

4 Initially, Defendants' non-compliance, "[was] confirmed by the approximately 60 class member and mothers who Plaintiffs interviewed as part of their monitoring efforts in December 2017." Plaintiffs' Response to First Juvenile Coordinators Report [Dkt. # 391] at 2. Defendants' ongoing non-compliance is confirmed by the approximately 200 class members and mothers Plaintiffs interviewed in June –July 2018. Virtually all declarants provided sworn statements confirming Defendants' material and consistent non-compliance.

to enforce settlements, decrees and Orders, or Fed. R. Civ. P. 53.[5]

Because of the Defendants' intentional and persistent violation of the Agreement as discussed in detail below, and the importance of compliance to the class of vulnerable children, pursuant to Fed. R. Civ. P. 53 and this Court's inherent powers to enforce its Orders, the Court should now appointment a Special Monitor to ensure compliance with the Agreement and this Court's Orders that have largely gone ignored by Defendants.

In an Order lodged with their Motion to Enforce [Dkt. # 201-8], Plaintiffs proposed a detailed Order regarding appointment of a Special Monitor including the following proposals:

• Appointment of a Special Monitor for twenty-four months to oversee compliance with the Settlement and this Court's several Orders. The Special Master should have broad discretion regarding how to exercise her authority. Her authority should be subject to oversight by the Court.

• The Special Monitor should have the authority to gather information and documentation from all parties in furtherance of her monitoring function.

• The Monitor should have the authority to receive from class members or their detained mothers or representatives communications regarding alleged violations of the Agreement and this Court's Orders and to investigate those claims, obtain Defendants' and class counsels' views, and recommend remedial action. The Special Monitor will advise all parties and the Court if her recommended remedial steps are not implemented.

• The Special Monitor should have the authority to mediate Plaintiffs' claims

---

5 In *Franco-Gonzalez v. Holder*, Docket No. CV-10-02211-DMG (DTBx) (C.D. Calif. 2015), this Court entered an Order appointing a monitor to oversee the DHS. Franco-Gonzalez involves a class of immigration detainees who have been determined to be incompetent to represent themselves by reason of mental disability.

of non-compliance to reduce entanglement of the Court in future motions to enforce the Agreement.

• The Special Monitor should not have the authority to issue orders or impose any sanctions, but may recommend to the Court various orders, including any contempt sanction.

• The Special Monitor's fees, costs and expenses, including with respect to the assistance of other experts or specialists, should be paid by Defendants.

This litigation's history underscores that the mandated rights of vulnerable children will go unprotected unless the Government's behavior is monitored.[6]

## III.  DEFENDANTS' MATERIAL BREACHES NOT DISCLOSED BY THEIR MONITORS

**1. Defendants have no contracts with licensed programs to place accompanied minors pursuant to the Agreement, Paragraph 14E, nor do Defendants promptly place minors in licensed programs under Paragraphs 19 and 12A.**

When asked in his deposition whether ICE has *any* contracts with any unsecure licensed programs to place accompanied minors (other than the secure family detention centers), Deputy Executive Associate Director for Enforcement and Removal Operations, Phillip Miller, responded: "Not placement locations."[7]

---

6 *See, e.g. Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015), *cert. denied sub nom. Maricopa Cty., Ariz. v. Melendres*, 136 S. Ct. 799, 193 L. Ed. 2d 711 (2016) (injunctive relief to class of Latino persons against sheriff based on allegations of racial profiling; Court of Appeals affirmed: "In context, most of the provisions dealing with the scope of the Monitor's assessment authority are aimed at eliminating the constitutional violations found by the district court and therefore do not constitute an abuse of discretion"); *Plata v. Schwarzenegger*, 603 F.3d 1088, 1095 (9th Cir. 2010) (monitor to oversee remedies re California prison overcrowding);.

7 Ex. 9, Miller Dep. 60-1:16-25,1-9 [Dkt. #287].

1   Asked "[a]re you aware of -- of any licensed program, other than your family

2

3   detention centers, your three family detention centers, that ICE has contracted with

4   for the placement of minors [under Paragraph 19 of the Settlement] who for one

5   reason or another placement with an individual [under Paragraph 14] is not

6

7   available or appropriate," Deputy Executive Associate Director Miller answered

8   "No." Ex. 9, Deposition of Phillip Miller 61-2:18-25, 1-2 [Dkt. #287].[8]

9        Defendants should be ordered to provide class members and the parents of

10

11  accompanied class members a list of licensed group homes that class members

12  may be transferred to under Paragraph 8 of the Agreement.[9]

13  **2.    Defendants have not provided Class Counsel with copies of a "written**

14      **plan describing the reasonable efforts that [Defendants] will take to**

15      **place all minors as expeditiously as possible" during periods of influx as**
        **required by Paragraph 12C.**

16

17        Defendants routinely cite a surge of accompanied and uaccompanied

18  minors as the reason they refuse or are unable to abide by the Agreement.[10]

19

20  8 Manuel Padilla, Jr., Chief Patrol Agent for the Rio Grande Valley Sector,

21  testified that he was "not aware of any program that Border Patrol works with"
    when asked if he knew of any licensed program for accompanied minors to be

22  placed temporarily if they were not eligible for release from custody under
    Paragraph 14 of the Settlement. Ex. 2, Deposition of Manuel Padilla, Jr.[Dkt. #

23  287-1] 20:13-20:25.

24  9 Class counsel have prepared such a list (see Exhibit 2 filed herewith) and are
    prepared to work with Defendants to insure that a national list of licensed group

25  homes is prepared for distribution to class members (and their detained parents)

26  when they are provided the *Flores* advisals and other documents required by
    Agreement.

27  10 *See, e.g.*, discussion in Plaintiffs' Opposition to Defendants' Ex  Parte

28  Application for Limited Relief from Flores Settlement [Dkt. # 450] at 9-13. *See*

While the United States has seen several temporary influxes of accompanied and unaccompanied minors over the past few years, the Agreement requires a written plan shared with class counsel setting forth how Defendants will respond to an influx.[11]

In violation of the Agreement, no such plan has been provided to class counsel. Unforeunately, receent chaotic events indicate no real plan may exist. Defendants should be ordered to provide class counsel with their emergency plans now in effect describing the reasonable efforts Defendants are taking "to place all minors as expeditiously as possible." Agreement, ¶12C.

**3.    Defendants do not have procedures in place to obtain Affidavits of Support for those willing to accept custody of a minor as required by Paragraph 15 or to conduct suitability assessments of those willing to accept custody of a minor as required by Paragraph 17 of the Agreement.**

Evidence submitted with the Motion to Enforce [Dkt. # 201, 202] and described in Plaintiffs' Statement of Uncontroverted Facts ("Pl. Supp.") [Doc. # 287]; ("Plaintiff's SUF") [Doc. # 314], make clear that Defendants

---

*also* Ex. 1, Decl. of Thomas Homan, ¶ 10 [Dkt. # 184-1]. "Q: And do you understand why in 2014 the decision was made to start detaining mothers and children? THE WITNESS:  In response to the surge on the southern border, we were asked to increase our capacity so as to, you know, re-establish a secure border." Ex. 226, Supplemental Miller Dep. Excerpts; 19:15-19:24.
11 "In preparation for an 'emergency' or 'influx,' as described in Subparagraph B, the INS shall have a written plan that describes the reasonable efforts that it will take to place all minors as expeditiously as possible." Agreement, ¶12C.

do not have procedures in place to obtain Affidavits of Support for those

willing to accept custody of a minor as required by Paragraph 15 or to

conduct suitability assessments of those willing to accept custody of a minor

as required by Paragraph 17 of the Agreement. Defendants have offered no

evidence (such as class members' agency "A"files) to show that they ever

take steps set out in ¶¶ 15 or 17 of the Agreement to assess the suitability of

placements of class members.

**4.     Defendants do not assess whether individual accompanied class
         members pose a substantial flight risk or are a danger but rather claim
         the right to detain all accompanied class members until their parents'
         immigration and criminal cases are completed**

Defendants do not deny that their practice is not to evaluate on an

individual basis whether class members pose a "substantial flight risk" ("a

serious risk that the minor will attempt to escape") before deciding to detain

accompanied minors *before or after* denials of credible fear claims.

Defendants' policy and practice is to merely detain accompanied minors

before and after denials of their mothers' credible fear claims.[12]  There is no

training regarding the meaning of escape-risks pursuant to the Ageement,

---

12 At least before the issuance of Exec. Order No. 13841, Defendants testified that
"[f]or individuals in the expedited removal process, detention is mandatory [and]
unless the individual is determined to possess a credible fear remain in the
expedited removal process and are generally detained until removal." Dec. of de la
Garza, Ex. 21, ¶ 13 [Dkt. # 216-1].

and it is generally disregarded.[13]

Despite this Court's ruling,[14] Defendants do not assess flight risk or

dangerousness factors as required by the Agreement, but instead will hold

most class members with their parents until the parent's immigration and

criminal cases are concluded.

**5.     Flores Class Member children are held in unlicensed and secure
         facilities in violation of Paragraphs 6, 12A, and 19**

This Court has reiterated that accompanied class members are not to be

housed in "unlicensed or secure facilities." August 21, 2015 Order [Dkt. #189] at

14. *See also* Order Denying Defendants' Ex Parte Application For Limited Relief

From Settlement Agreement ("July 9, 2018 Order") [Dkt. #455] at 3 ("the Flores

Agreement has required accompanied minors to be placed in licensed facilities

since 1997.")

---

13 "Q. Are you aware of any written instructions issued to ICE officers, and, if so,
please identify those instructions, that explains to them what the term escape risk
means in the Flores settlement? A. No. Q. Are you aware of any in-person training
about that? A. About defining terms from Flores? Q. Explaining to the officers
what the term escape risk means under the *Flores* settlement, are you aware of any
in-person training on that question? A. No. Q. Do you recall what the -- or how the
term escape risk is -- is defined in -- in the *Flores* settlement in general? A. No."
Ex. 9, Miller Dep. 101:22-102:19 [Dkt. #350].
14 "[U]nder both the Agreement and 8 C.F.R. section 212.5(b), part of the
release/parole analysis includes a case-by-case assessment of whether the minor
poses a flight risk. Compare Agreement ¶ 14 (whether detention is required to
secure timely appearance before the immigration court), with 8 C.F.R. § 212.5(b)
(whether there is a "risk of absconding")." June 27, 2017 Order [Dkt. # 363] at 23-
24.

Yet, the Family Residential Center at Dilley (the largest of Defendants' three family detention facilities) remains an unlicensed and secure facility in violation of the Agreement, as confirmed in the deposition of Phillip Miller.[15] The Karnes license has also been blocked by a Texas State Court.[16]

The largest facilty operated by Defendants for unaccompanied children called Casa Padre (operated by Southwest Key) currently holds close to 1,000 class members for weeks or months and is a secure facility in violation of Paragraph 6 (licensed group home shall be "non-secure"). *See* Declaration of Peter Schey, Exhibit 1 filed herewith at ¶ 2.

The Court should require that the Special Monitor work with Defendants to determine where licensed facilities may be established in states other than Texas where it appears Defendants' family detention facilities do not qualify for state-issued licenses.

**6.**     **Class members have been and are being denied the protections of the Agreement by Defendants separating them from their decision-making parents**

---

[15] Ex. 9, Miller Dep. [Dkt. # 350] 103:15-17 ("Q. And so at the present time the Dilley facility is not licensed; is that correct?  A. Yes."). *See also* Valentin de la Garza, supervisor at Dilley, further demonstrates this point in his deposition: "Q. To your knowledge, is ICE currently attempting to obtain a license for Dilley, a license to hold children? A. No, sir.  We're not." Ex. 7, De la Garza Dep. [Dkt. # 287-2] 47: 12-15.

[16] Dec. of Robert Doggett, Ex. 26 [Dkt. # 287-5]  ¶ 4 (referencing *Grassroots Leadership, Inc. v. Texas DFPS*, No. D-1-GN-15-004336).

Following the Trump Administration's Zero Tolerance policy, hundreds or over a thousand separated class members as of this date have been placed in a precarious position in which their parents' decision-making authority has been blocked by the parent-class member separation. Separated parents are no longer in a position to determine whether their children should exercise or opt out of their rights provided for under the Agreement.[17] Separated class members have no one, other than the Office of Refugee Resettlement, to make those decisions for him or her.[18]

For class members who Defendants separated from their parents with no plan for reunification and no plan to maintain parental decision-making during the

17 Per policy instruction, unaccompanied children are "provided the opportunity to make a minimum of two telephone calls per week (10 minutes each) to family members and/or sponsors …" Children Entering the United States Unaccompanied: Section 3.3.10 Telephone Calls, Visitation, and Mail (Jan. 28, 2015). Interviews with separated class members indicate many are unable to contact their parents because they do not know where they are detained, and others are permitted only one 10 minute telephone call a week. Declaration of Peter Schey, Ex. 1 ¶ 3.

18. Under Paragraph 32, class counsel has the right to interview class members. Class counsel seek and get the consent of parents at a family detention facilities prior to interviewing class member children. By separating class members from their parents without a plan to maintain parental decision-making, Defendants made class members' parents unavailable to class counsel to seek consent to interview their children. Despite numerous requests over the past two weeks to meet and confer and for the names and locations of separated class members' parents, Defendants have declined, making obtaining consent for class member interviews under Paragraph 32 almost impossible. Because of the urgency of the situation caused by the separations, and under objection, class counsel have commenced interviews with separated class members. *See* Declaration of Class Counsel Peter Schey, Ex. 1 ¶ 4.

separation, *Defendants effectively suspended operation of the Agreement for separated class members*. This suspension was and continues to be a material breach of the Agreement.[19]

As of the date of this submission, class counsel are interviewing separated class members and assessing whether interim relief may be sought to remedy class members' isolation from decision-making parents. In the event interim relief is not sought, Plaintiffs seek an Order following the Status Conference suspending removals of parents, reasserting parental decision-making over class members, and requiring Defendants to identify to class counsel the identities and locations of separated parents under the same confidentiality terms associated with Defendants' monthly reports to class counsel of all detained class members nationwide (includes names, A numbers, locations, etc.). Agreement ¶ 28A. *See also* August 21, 2015 Order 2015 [Dkt. # 189] at 15 (requires that Paragraph 28A reports be provided monthly to class counsel).

**7.      Class members are provided inadequate and edible food at Border Patrol Stations**

---

[19] The unilateral unannounced separation of class members, including children as young as three years old, also is a material breach because the Agreement requires that class members be treated with "dignity, respect and special concern for their particular vulnerability as minors." Agreement at ¶ 11. The psychological harm to class members of the separation is profound and undeniable.

### (i) June 2017 Order re CBP Food

The June 2017 Order concludes that "Defendants failed to provide [class members] with adequate access to food ... Additionally, the food provided must be in edible condition (not frozen, expired, or spoiled) and minors must have regular access to snacks, milk, and juice." June 2017 Order at 8 (internal quotation and citations omitted). The Court granted Plaintiff's motion to enforce as to the RGV Sector on the issue of adequate access to food. *Id.* at 10.

### (ii) Juvenile Coordinator Report

The monitor's report provides similar text for all facilities inspected, concluding the food available to class members is adequate.[20]

### (iii) Class member declarations

Lidia S█████████████████, a 22-year-old citizen of El Salvador, is detained at the South Texas Family Residential Center in Dilley, Texas, with her son, 4-year-old Flores Class Member Marcos M██████████████. On June 13, 2018, Lidia and her son were apprehended close to the border and taken into custody. Lidia and her son spent about two days in CBP custody. Declaration of

---

20 The Monitor also reports on several incidents in which expired food was found being served to class members: "MID ... alerted the agents on-site of the expired food at Indio Station and fruit flies at Yuma Station." 3rd CBP Report [Doc. #430-1] at 31. At the San Diego Field Office "MID observed expired food at the Calexico West POE ..." 3rd CBP Report [Doc. #430-1] at 32. The MID noted, "Expired juice bottles were observed in Andrade POE ..." 3rd CBP Report [Doc. #430-1] at 33. At the e Tucson Field Office (Office of Field Operations Facilities), the monitor states "[e]xpired food and formula were observed at San Luis POE." 3rd CBP Report [Doc. #430-1] at 33.

1  Lidia S████████████████, Ex. 3, ¶ 1, 3, 4, 5, 6. Lidia declares: "[T]he only

2
3  food we were given were sandwiches that were frozen and not able to be eaten. We

4  went hungry the entire time we were there [in CBP custody]. My son was crying

5  from hunger. My son was not able to eat the food and neither was I." *Id.* ¶ 4.

6
7      Dilsia ████ is the mother of 12-year-old Flores Class Member Ashley

8  ████████. Dilsia is a citizen of Honduras who fled with her daughter and

9  presented themselves at the border on June 25, 2018.  Dilsia was separated from

10  her daughter and transferred to other facilities before being reunited in Dilley,
11
12  where they were being detained. Declaration of Dilsia ████, Ex. 4. She declares:

13  "There [in CBP custody] we were given another sandwich with a water bottle and
14
15  an apple. This time the sandwich was frozen. You could feel the ice when you bit

16  into the sandwich." *Id.* at ¶ 5.

17      Flores Class Member Josselin H████████ is a 13-year-old national
18
19  from Honduras. She presented herself at the border with her mother on about June

20  25, 2018.  Josselin and her mother were in CBP custody for at least two days.

21  Declaration of Josselin H████████, Ex. 5, ¶ 4. Josselin declares: "There
22
23  was a small container of juice and sandwiches that were very small.  We were very

24  hungry. It was painful how hungry we were. The sandwiches they gave us were

25
26
27
28

still frozen and when I tried to eat it made me nauseous so I was not able to eat it and neither was my mother." *Id.* ¶ 4.[21]

---

21 Flores class member Keylin M███████ is a 16-year-old citizen of Honduras and is detained at the South Texas Family Residential Center in Dilley, Texas, with her mother, Daise M███████. On or about June 21, 2018, Keylin and her mother were apprehended and then separated by CBP. After four days they were reunited and transferred to another CBP facility for one day, and then to another CBP facility, where they were again separated. Declaration of Keylin M███████, Ex. 6, ¶ 1, 3, 6, 18-21. Keylin declares: "The food at the Dog House was the same as at the Ice House. It was frozen and smelled bad. I did not eat it, and I went hungry the entire time I was there." *Id.* at ¶ 13.Iris A███████████, a 38-year-old citizen of Honduras, is detained at the South Texas Family Residential Center in Dilley, Texas, with her daughter, 6-year-old Flores class member Sherlyn A███████. Declaration of Iris A███████, Ex 7, ¶ 1, 3, 6, 14. She declares: "We were given food, but the food was frozen and not fit for consumption. My daughter tried a few bites of the sandwich, but it made her sick. Both my daughter and I were hungry the entire time we were at the [CBP facilities]." *Id.* ¶¶ 5, 8. 10-year-old Flores class member Dixiana S███████ crossed the border near McAllen, TX with her mother on or about May 23, 2018. Dixiana and her mother were were separated until May 28, 2018. Declaration of Dixiana S███████, Ex. 8. She declares: "For breakfast, they gave me a frozen ham sandwich. The ham was black. I took one bite, but did not eat the rest because of the taste." *Id.* at ¶ 4. Maria A███████████ is the mother of 4-year-old Flores class member Henry J███████. Maria and Henry are from Honduras and presented themselves at the border on June 4, 2018. Maria declares: "We were given ham sandwiches at this place but we could not eat the sandwiches because the ham looked green and it did not seem like it would be safe to eat. I think that my son is very sick now because of the experience of this and here because it was so cold and he was not able to get help from the doctors." Declaration of Maria A███████, Ex. 9, ¶ 8. Ana V███████, a 26-year-old citizen of El Salvador, was detained with her daughter, 6-year-old Flores class member Ashli D███████. On or about May 4, 2018, Ana and her daughter presented themselves to border patrol and were immediately taken into custody. Declaration of Ana V███████, Ex. 10, ¶ 1, 3, 7. She declares: "The sandwiches at the Dog Pound were partially frozen and the lettuce was brown. My daughter would not eat much of the food and went hungry. I also was hungry because the food I was forced to take was frozen and bad. It was unable to be eaten." *Id.* at ¶ 4.

Exhibit 11 at 11, includes numerous additional excerpts of declarations

regarding the lack of adequate and unfrozen food in CBP facilities.

**8.   Class members are not provided access to clean drinking water at
Border Patrol stations**

**(i)     June 2017 Order re Clean Water**

"… Defendants have not offered evidence based on records or a witness'

personal knowledge to contradict the specific accounts by Plaintiffs' witnesses of

inadequate water, both in quality and availability, during their CBP-facility

detention." June 2017 Order at 12. "Plaintiffs' motion … on the issue of access to

clean drinking water is GRANTED." *Id.* at 33.

**(ii)    CBP Juvenile Coordinator Report**

The reports regarding drinking water are all largely the same stating that

clean drinking is available to CBP detainees. See, e.g., 3rd CBP Report [Doc.

#430-1] at 9 (Santa Teresa Hold Room), 10 (Clint Station), 18 (Ajo Station).

**(iii) Class Member Declarations**

Cristobal R██████████████ and his 7-year old son, Flores class member

Cristobal E██████████████ are both from Guatemala and were forced to

flee due to gang violence and threats. Cristobal and his son were apprehended near

El Paso on June 23, 2018, and were detained at CBP facilities. Declaration of

Cristobal R██████████, Ex. 12, ¶¶ 3-21. Cristobal declares: "[At the CBP

stations] [t]here was no water for us to drink. We were thirsty and we would ask

for water and they would tell us to drink from the sink above the toilet. We did not get any clean water that entire time. My son only got one juice." *Id.* ¶ 7.

Delmis V████████ is the mother of two-year-old Flores class member Oscar C████████ and nine-year-old Brigni C████████. The family is from Honduras and presented themselves at the border on June 6, 2018. They spent about four days in CXBP custody. Declaration of Delmis V████████, Ex. 13, ¶ 5. Delmis declares: "[T]he worst thing was the water. I had to plug my nose to be able to drink it. It came out of the faucet and smelled terrible. I only drank a small amount of water when really thirsty because the water tasted very bad and the smell was terrible." *Id.* ¶ 5.[22]

---

22 Flores class member Justin L████████████, born May 18, 2005, a citizen of El Salvador, entered the U.S. on or June 13, 2018 in the evening. Declaration of Justin L████████████, Ex. 14, ¶ 1, 3, 4. Justin declares: "There was water in the [CBP] cell, in large plastic Thermos. It tasted funny, like chlorine, like it came from a pool. I only drank from it twice because I didn't trust it. I don't think people really believed that water was clean. A lot of other boys didn't drink it. It made me feel funny in my stomach the times I drank it." *Id.* at ¶ 12. Mayra S████████ is the detained mother of class members ages 2 and 9 years. Declaration of Mayra S████████, Ex. 15. She declares: "I begged for water for my daughter, but the officials would not give us any. My daughter started crying. The officers told me to shut her up. They gave us ham sandwiches that were bad, and a container of foul-tasting water." *Id.* at ¶ 9. Ruth M████████ ████████ is the mother of a 7-year-old Flores class member who crossed the border on June 4, 2018 near Hidalgo, TX. Declaration of Ruth M████████, Ex. 16. She declares: "We had a thermos of water, but it was bad quality and had too much chlorine. My son later told me that the water was nasty and he did not drink it. There was not enough water for all of us." *Id.* at ¶ 7. Flores class member Keylin M████████ declares: "We stayed there for one day, but we were not given food or water the entire day." Ex. 6, ¶ 18. Elda R████████████████ is from Guatemala and is the mother of 4-year-old Flores class member Darlyn

Exhibit 11, at 30, includes numerous additional excerpts of declarations regarding the lack of access to clean water in CBP facilities.

**9.      Class members are subject to unsanitary conditions in Border Patrol stations**

**(i) June 2017 Order re CBP unsanitary conditions**

"[T]he Court finds that these hygiene products [soap, towels, showers, dry clothing, toothbrushes] fall within the rubric of the Agreement's language requiring 'safe and sanitary' conditions and Defendants' own established standards." June 2017 Order, at 13.

**(ii) Class Member Declarations**

Lourdes R████████ is a Honduran national and the mother of 5-year-old Flores class member Lourdes G████████. Declaration of Lourdes ████████, Ex. 19. They were held in CBP custody for about six days. *Id.* ¶ 5. Lourdes declares: "Hygiene at his facility was very poor. We were

_____

G████████. Elda and Darlyn are from Guatemala and were apprehended on or about June 25, 2018. Elda and her daughter were taken to the El Centro Border Patrol Facility. Ex. 17, ¶ 1, 2,3. After three days at El Centro Elda declares: "There is water available to drink where we stay. It tastes like chlorine...There are no glasses or cups." *Id.* ¶ 11. Bridis F████████, a citizen of Honduras, is detained with her son, Sander, a 4-year-old Flores class member. On or about June 15, 2018, Bridis and her son were taken into CBP custody for about four days. Declaration of Bridis F████████, Ex. 18, ¶¶ 1-5, 9. Bridis declares: "We were tired and thirsty. My baby was dehydrated. I begged for water and although the officer had some he denied me water. We sat down and waited for another officer to come. He had water and gave us a small cup of water but it wasn't enough." *Id.* ¶ 3.

1  not allowed to shower except for once in six days and toilets were dirty and over

2  flooding every day." *Id.* ¶ 4.

3

4       Blanca M██████████ is from Guatemala and the mother of 4-year-old

5  Flores class member Britney. They were taken into CBP custody on or about May

6  24, 2018. Declaration of Blanca M██████████, Ex. 20. Blanca declares: "I did not

7

8  shower [while in CBP custody] for 5 days. The only bathrooms were the small

9  plastic bathrooms that do not flush. The officials told us that there were too many

10  people and we could only shower after we had been there for five days. I never

11

12  showered at the ice house or the dog house. My daughter was also not permitted to

13  shower. Both of us were covered in dirt and dust from our walk through the desert

14  after we crossed the river." *Id.* at ¶ 5.

15

16       Flores class member Brandon S██████████ is a 14-year-old

17  national of Guatemala detained on or about July 4, 2018, with his mother and two

18

19  brothers at the San Ysidro Pedestrian West Facility in San Ysidro, CA. Declaration

20  of Brandon S██████████, Ex. 21. He was separated from his mother and

21

22  brother. Brandon declares: "Since I arrived, I have not been able to shower or

23  brush my teeth. There is no soap in my room and no towels. I had a toothbrush

24  when I came here, but they took it away when I got to the facility. No one has

25

26  allowed me to brush my teeth and no one has told me when I will be able to take a

27  shower." *Id.* at ¶ 6.

28

1     Fatima O█████ is a national of Honduras and the mother of Flores class

2     member Ashley. Fatima and Ashley fled Honduras and presented themselves at the

3

4     U.S. border on May 15, 2018. They were in CBP  custody for about five days.

5     Declaration of Fatima O█████, Ex. 22. Fatima declares: "There was no access to

6     showers… On the second or third day there, my daughter soiled herself from

7

8     peeing and pooping and wanted to wash her private parts … I asked if l could clean

9     her because her underwear [was] soiled. The guards said, 'No.' … She remained in

10

11    her dirty underwear until we arrived at Dilley several days later." *Id.* at ¶ 3.[23]

12    Exhibit 11 at 139, includes numerous additional excerpts of declarations

13

14    regarding the unsanitary conditions in CBP facilities.

15

16

17    ────────────────────
       23 Nohemi P█████████ was detained with her class meber three year old
18    daughter by CBP El Centro, Ca. Declaration of Nohemi P█████████, Ex. 23.
19    Nohemi declares: "No soap has been provided to me. Neither myself nor my
       daughter have been given an opportunity to shower. My daughter has a rash from
20    no showering." *Id.* at ¶ 4. Cristobal R█████████ declares: "They did not let
       us shower for days. Before we were transferred to Berks, we were given five
21    minutes to shower. We were not given clean clothes. Prior to this they took the
       toothpaste that I had from my journey and threw it in the trash. We could not brush
22    our teeth." Ex 12, ¶ 18. Doris M████ is the mother of 2-year-old Flores class
23    member Jordan. They were detained by CBP after presenting themselves on or
       about May 19, 2018. Declaration of Doris M████, Ex. 24. Doris declares: "I was
24    only able to take one shower with my son in the 8 days that we were there." *Id.* ¶ 2.
25    Iris A█████████ declares: "The bathrooms at the Dog House were dirty and
       disgusting. The bathrooms were so bad that my daughter was afraid to go to the
26    bathroom and did not go for the entire time we were there. This caused my
27    daughter a lot of pain and caused my daughter to develop constipation."
       Declaration of Iris A█████████ (mother of Sherlyn █████████
28    █████), Ex. 7, ¶ 9.

PLAINTIFFS' RESPONSE TO THIRD        21
PLAINTIFFS' STATUS CONFERENCE SUBMISSION                    CV 85-4544-DMG (AGRX)

**10.    Class members are subject to unhealthy cold conditions in Border Patrol stations**

**(i) June 2017 Order regarding CBP Cold Temperatures**

"Just like the declarants cited in the Court's July 24, 2015 Order, many [class members] continue to describe the CBP facilities as hieleras or 'iceboxes.'" June 2017 Order at 15. "Plaintiffs' motion to enforce Paragraph 12A of the Agreement on the issue of temperature control is **GRANTED.**" *Id.* at 33.

**(ii) Class Member Declarations**

Class Member mother Karen B███████████████, detained with her children ages 4 and 5 years, declares: "At the [CBP] facility it is very very cold. Especially when we were wet from the river. There were no clean clothes or towels available. I cannot sleep because I am so cold...my children cry from fear and from the cold. I can only hold one at a time to keep them warm. Whoever I am not holding is cold." Declaration of Karen B██████████████, Ex. 25, pages 2-3.

Class member mother Flor P█████████, detained with her nine year old class member son in the Tucson CBP facility, declares: "It is extremely cold here. They gave us aluminum blankets that are like paper and they don't keep you warm. It was so cold that we were shivering." Declaration of Flor P████████, Ex. 26, ¶ 10.

Maria A████████████████ declares: "It was extremely cold. It was hard to keep warm. When other people would leave there would be extra blankets so we would try to take them to have more to keep warm but then the guards would

1   notice that we had more blankets and they would take them from us so that we

2   only had one." Ex. 9, ¶ 5 (discussing La Hielera).

3

4         Class member mother Daise M███████ was detained on or about June

5   21,2018, with her 16-year class member daughter. She declares: "The Dog House

6   is even colder than the Ice Box, and my daughter and I were shivering the entire

7   time. My daughter was so cold that she had severe pain in her leg. The guards told

8   her that if she was hurt she would have to stay in the Dog House longer, so [my]

9   daughter did not ask for medical care." Declaration of Daise M█████, Ex.

10  27, ¶ 10.[24]

11

12

13

14        Exhibit 11 at 112, includes numerous additional excerpts of declarations

15  regarding the cold temperature in CBP facilities.

16

17

─────────────────

18  24 Class member mother Iris A████████ declares: "The Ice Box is freezing,
    and my daughter and I were shivering the entire time. We were so cold that my
19  daughter was miserable. The cold was so severe that it made … caused us to have
    headaches." Declaration of Iris A████████ Ex. 7, ¶ 4. Delmis V████
20  ████, detained by CBP with a two-year-old and a nine-year old class members,
    declares: "At the dog house, we were brought in soaking wet since we had just
21  swum across river. When we walked into the dog house, it was awful. My daughter
    was crying because she was wet and freezing. We were given aluminum blankets
22  but that was not enough to temper the cold air in the dog house. We wore the same
    wet clothing for two days. The cold was unbearable. My son is still suffering from
23  a terrible cough and cold from how cold the dog house was those 4 nights."
    Declaration of Delmis V███████, Ex. 13, ¶ 3. (discussing La Perrera). Leydi
24  X████████, detained with her nine-year old class member child by
    CBP on or about June 2, 2018, declares about La Hirlera: "It was extremely cold.
25  All we got was a thin metallic blanket. It [was] hard to wrap the blanket around my
    daughter and myself to keep warm. Plus, we had to sit directly on the cement floor,
26  which was very cold. Declaration of Leydi X████████, Ex. 30, ¶ 3.
27

28

**11.     Class members are subject to harmful impediments to normal sleep in Border Patrol stations**

### (i) June 2017 Order regarding CBP sleeping conditions

The Court found credible "the assertions made by numerous detainees regarding sleeping conditions ..." June 2017 Order at 17. "Plaintiffs' motion to enforce Paragraph 12A of the Agreement on the issue of sleeping conditions is **GRANTED** as to all non-CPC-Ursula CBP stations within the RGV Sector ...." *Id.* at 33.

### (ii) Class Member Declarations

Class member mother Floridalma was detained with her three-year-old class member son Broswin R█████████ by CBP on or about June 26, 2018, and taken to the El Centro Border Patrol facility. Two days later she declared: "The room we are in is crowded. We are eight people, four mothers and four children, in a small room. It is approximately 10 feet by 10 feet wide. We have two mattresses to share. We sleep with our heads on the mattresses and our bodies on the cement floor because there are only two mattresses for eight people." Declaration of Floridalma L█████████ (mother of Broswin R███████████), Ex 31, ¶ 7, 8.

Anet M████████████████ is a 15-year-old class member detained at the El Centro CBP Facility. She was apprehended on or about June 28, 2018. She declares: "The room I am being has only three mattresses. 18 women are in this room. Three are teenager/minors. The other are women. We have 15 sheets of nylon. We asked for more mattresses but the officers said no. Some of us sleep on

the benches, some of us in the mattresses, some on the cement floor. It was very cold." Declaration of Anet M███████████, Ex. 32, ¶ 9, 11.

Sindy S███████████ declares: "It was very cold, and that made it really difficult to sleep. And on top of that, we kept getting woken up by officials. For some reason they didn't want to let us sleep. I told an official that my daughter was asleep and I didn't want to wake her up to make her stand in line, but he yelled at me and made me wake her." Declaration of Sindy S███████████, Ex. 33, ¶ 12. (La Perrera).

Timofei F██████████, a 15-year-old citizen of Russia, is detained with his mother and father at the San Ysidro Pedestrian West Facility in San Ysidro, CA. Timofei declares: "My body hurts because we have to sleep on hard mats. The reason my body hurts is that we're crowded and we have to sleep in uncomfortable positions." Declaration of Timofei F███████, Ex. 34, ¶ 7, 11.[25]

---

[25] Class member Cesar A███████████ was detained June 13, 2018, at the McAllen CBP station. He declares: "There were no mats, so we sat either on the concrete ground or on the cement bench along the walls. We stayed there like that and slept there." Declaration of Cesar A███████████, Ex 35, ¶ 28, 33. Class member Kevin U███████ was apprehended on June 13, 2018 and was taken to the McAllen CBP facility. He declares: "The cell was very crowded. There were so many of us that we could not stretch out on the ground or the benches. Most of us had to sit upright and stay in one place … When I entered the cell I was not given a blanket. When some other boys left later a few of us who didn't have blankets at first took the opportunity to get the ones they had used. None of us had mats for sleeping." Declaration of Kevin U███████████ Ex 36, ¶ 7, 8. Class member Justin L███████████ declares: "I did not receive a blanket. There were no mattresses. We slept directly on the floor. I am not used to this. The dirt from our clothes was on the floor and it felt very

Exhibit 11 at 54, includes numerous additional excerpts of declarations regarding the sleeping conditions in CBP facilities.

**12.   Defendants fail to advise class members about their Flores rights**

    **(i)     June 2017 Order regarding Advisals**

"… Paragraph 24D … requires Defendants to provide class members with three rights advisals: "(a) INS Form I-770, (b) an explanation of right of judicial review… and (c) the list of free legal services available in the district pursuant to INS regulations (unless previously given to a minor)." June 2017 Order at 18.

    **(ii) Class Member Declarations**

Class member Alma R█████████████, a citizen of Guatemala, is detained with her 13-year-old daughter Maria at the Chula Vista CBP Facility. They were apprehended on June 10, 2018. Alma declares: "I was not informed of any rights in regards to my daughter including the possibility of releasing her to my brother or responsible adult. Or any right to change my decision if I made one concerning my daughter….We were not allowed to read our declaration written by the CBP agent when we were first apprehended but were told just to sign it." Declaration of Alma R███████████, Ex. 38, ¶ 9, 11.

---

uncomfortable to have to sit on the dirty ground." Declaration of Justin L███████████ Ex 14, ¶ 7, 10, 18. (Ursula Detention Center).

1    Marlyn E██████████████ is detained with her 8-year-old class

2    member daughter Claudia and 6-year-old class member Emerson They were

3

4    apprehended on June 27, 2018 and taken to the El Centro Border Patrol Facility.

5    Marlyn declares: "I was given a paper to sign about eight times. I think it was in

6    English. I didn't know what it said ...I have not been given information about

7    obtaining a lawyer ... I have not been advised of my children's rights while they

8

9    are detained." Declaration of Marlyn E████████████, Ex. 39, ¶ 11-15.

10   Class member Jeidy ██████████████ was apprehended with a

11   parent on or about June 25, 2018 near the Mexicali/Calexico border. At the time of

12   his declaration he had been at the El Centro CBP facility for four days. Jeidy

13

14   declares: "Since being at this facility, I have received no papers telling me about

15   any rights I may have. I have not received any notices about lawyers I may contact

16   ... My father has also not received any papers about legal rights." Declaration of

17

18   Jeydi ████████████, Ex. 40, ¶ 8.[26]

19

20   ─────────────

21   26 Tarino A████ is a 15-year-class member detained with his grandfather in the El Centro CBP facility. He was apprehended on June 25, 2018. He was separated from his grandfather after being at the facility for ten minutes. Tarino declares: "I

22   did not receive any papers explaining my legal rights. I did not see any notices

23   posted about my legal rights. I did not see any telephone or make any phone calls. I was not told I could have a lawyer or given information about speaking to a

24   lawyer." Declaration of Tarino A████, (Grandchild of Vicente A████, brother of

25   Claudia A████). Ex. 41, ¶ 8, 9. Dinora C████████ is detained with her one-

26   year-old son Rigoberto C████████. Regarding her detention at the McAllen

27   CBP station Dinora declares: "They have not told me anything about my rights or my child's rights. They have not given me any info. They asked me if I had a

28   contact here and where I was headed." Declaration of Dinora C████████, Ex.

1   Exhibit 11, at 74, includes numerous additional excerpts of declarations

2

3   regarding the failure to provide notice of class members rights.

4   **13.     Defendants fail to make prompt and ongoing efforts to release class members**

5

6         **(i)     June 2017 Order regarding Required Efforts Aimed at Release of Class Members**

7         "... [T]he Agreement requires ICE to (1) 'release a minor from its custody

8   without unnecessary delay' to a parent, a legal guardian, or other qualified adult

9

10  custodian, except where the detention of the minor is required 'either to secure his

11  or her timely appearance before the INS or the immigration court, or to ensure the

12  minor's safety or that of others'; and (2) *'[u]pon taking a minor into custody, . . .*

13

14  *[to] make and record prompt and continuous efforts on its part toward family*

15  *reunification and the release of the minor . . . .'*" June 2017 Order, at 20 (emph.

16

17  added).

18  _____

19  29, pp. 2-3. Alejandra R▬▬▬▬▬ was apprehended July 5, 2018, and
    detained at the CBP facility in San Ysidro with her four children class members.

20  She declares: "When I arrived at the facility I was not told anything about the legal
    rights of my children. There is no ability to use a telephone and there is nothing

21  posted in the facility that I can see about getting help from attorneys." Declaration

22  of Alejandra R▬▬▬▬▬, Ex. 28, ¶ 10. Class member Alma S▬▬▬ is
    detained at the San Ysidro CBP facility with her mother and four siblings. She

23  declares: "I have not, and I don't think that my mother has, received any

24  information regarding my legal rights. I have not been advised of my right to a
    hearing or my right to see a judge. I have not been given any information regarding

25  free legal services that may be available to me." Declaration of Alma S▬▬▬

26  ▬▬▬, Ex. 44, ¶ 11. Brandon S▬▬▬ is a 14-year-old class member
    detained by CBP at San Ysidro CA. He declares: "No one has talked to me about

27  my rights since I arrived. I don't know if I can talk to an attorney. There is a poster

28  in the room, but it is in English. I cannot read English, so I don't know what the
    posters say." Declaration of Brandon S▬▬▬▬▬, Ex. 21, ¶ 7.

**(ii) Class Member Declarations**

Gladys I█████████████ and her 5-year-old daughter, Flores class member Daniela are detained at Karnes. Declaration of Gladys I█████████, Ex 46. Gladys declares: "I came to Karnes on June 11, 2018. And I had my interview last Tuesday, June 19, 2018. I told the officer I feared returning to my country because threats had been made against my life. I am still waiting to hear the outcome of my interview. I have a sponsor in Trenton, New Jersey, but the authorities have not called them yet. I have called my sponsor and they told me no one called. Calls are very expensive here." *Id.* ¶ 4.

Ana P█████████ is the mother of 11-year-old Flores class member Andrea. Both are detained Dilley.  Declaration of Ana P█████████, Ex. 37. Ana declares: "They did not give us any information about our legal rights or try to contact my sister in the United States." *Id.* ¶ 10.

Class member Elmer S█████████████ is a fifteen-year-old national of Honduras. She apprehended on or about January 20, 2018 and subsequently transferred to Casa Padre on or about June 8, 2018. Elmer declares: "Up until today, nobody had explained my rights under the Flores Settlement. Before my meeting today, center staff gave us a folder with documents in English that we did not understand … Center staff did not tell us that we had a right to reunify with our

1     family without unnecessary delay. Declaration of Elmer S███████████ Ex.

2

3     66, ¶ 13.[27]

4     IV.    CONCLUSION

5         For all of the reasons stated above, the Court should appoint a Special

6

7     Monitor to oversee Defendants' compliance with the Agreement and further require

8

---

9     27 Diego M█████ is a 14-year-old national from Guatemala detained for about

10    twenty-six days. Diego declares: "No one explained to me what I need to do if want to leave … I think the counselor and my case manager have talked to my

11    father but they have not told me anything about how I can see him or leave here."

12    Declaration of Diego M█████, Ex. 49 ¶ 8. Class member Kevin Y████████

13    █████ is a 17-year-old Honduran national detained at the Southwest Keys Casa Padre Facility in Brownsville, TX. Kevin declares: "No one has ever explained

14    anything about the *Flores* settlement agreement to me. No one has told me that I

15    can leave Casa Padre promptly." Declaration of Kevin Y██████████, Ex. 50, ¶ 17, 18. Fifteen-year-old Guatemalan national Elmer E█████████ was

16    apprehended in late January 2018 near the Rio Grande. Elmer declares: "I was

17    never made aware of the Flores Settlement and my rights under the settlement …" "I do not know what else I can do or need to do to get released … I do not know

18    whether I have the right to appeal my placement … or to find out about other

19    placements that are better for me." Declaration of Elmer E██████████, Ex. 51, ¶ 8, 9.Flores Class Member Sergio C██████████ is16-years-old and currently

20    detained at the Casa Padre Facility. Sergio and his father presented themselves at

21    the border in McAllen, Texas and were subsequently detained and then separated. Sergio declares: "Nobody has ever talked about my legal rights as to my own case

22    with me. I have never heard of the Flores case until today when attorneys spoken

23    with me about it. I have never been told I have options to leave." Declaration of Sergio C██████████, Ex. 52, ¶ 7. Class member mother Gladys I████████

24    ████████ and her daughter are detained at Karnes. Declaration of Gladys I█████

25    ███████, Ex 53. Gladys declares: "I came to Karnes on June 11, 2018 … I have a sponsor in Trenton, New Jersey, but the authorities have not called them

26    yet. I have called my sponsor and they told me no one called." *Id.* ¶ 4. Class

27    member mother Ana P█████████ declares: "They did not give us any information about our legal rights or try to contact my sister in the United States." Declaration

28    of Ana P█████████, Ex. 54, ¶ 10.

---

1    that Defendants' adopt and implement a form and protocol that fully advises class

2    members about their Flores rights and monitors all steps taken by Defendants to

3

4    release children under Paragraph 14. Plaintiffs will shortly propose such a protocol.

5    Dated: July13, 2018                    Respectfully submitted,

6
                                            CENTER FOR HUMAN RIGHTS &
7                                           CONSTITUTIONAL LAW
                                            Peter A. Schey
8                                           Carlos Holguín
9
                                            ORRICK, HERRINGTON & SUTCLIFFE LLP
10                                          Elena García
11
                                            LA RAZA CENTRO LEGAL, INC.
12                                          Michael Sorgen
13
                                            LAW FOUNDATION OF SILICON VALLEY -
14                                          LEGAL ADVOCATES FOR CHILDREN & YOUTH
                                            Jennifer Kelleher Cloyd
15                                          Katherine H. Manning
16                                          Annette Kirkham
17
                                            Of counsel:
18
19                                          YOUTH LAW CENTER
                                            Virginia Corrigan
20
21                                          /s/*Peter Schey*_____
22                                          *Attorneys for Plaintiffs*

23

24

25

26

27

28

CERTIFICATE OF SERVICE

I, Peter Schey, declare and say as follows:

I am over the age of eighteen years of age and am a party to this action. I am

employed in the County of Los Angeles, State of California. My business address is

256 S. Occidental Blvd., Los Angeles, CA 90057, in said county and state.

On July 13, 2018, I electronically filed the following document(s):

PLAINTIFFS' MEMORANDUM RE STATUS CONFERENCE AND RESPONSE TO
THIRD GOVERNMENT MONITORS' REPORTS [**REDACTED VERSION
OFDOCUMENT PROPOSED TO BE FILED UNDER SEAL**]

with the United States District Court, Central District of California by using the

CM/ECF system. Participants in the case who are registered CM/ECF users will be

served by the CM/ECF system.

/s/*Peter Schey*
*Attorney for Plaintiffs*