U.S. Department of Homeland Security
Washington, DC 20229



**U.S. Customs and Border Protection**

AUG 1 6 2018

The Honorable Dolly M. Gee
U.S. District Court for the Central District of California
350 West 1st St.
Los Angeles, CA 90012
Courtroom 8C, 8th Floor

Dear Judge Gee:

I respectfully submit this letter in my capacity as the U.S. Customs and Border Protection (CBP) Juvenile Coordinator, in accordance with Paragraph 28A of the *Flores* Settlement Agreement (Agreement) and this Court's June 27, 2017, October 18, 2017, and July 27, 2018 Orders.

When I was first appointed as the CBP Juvenile Coordinator in August 2017, I immediately recognized the important role I play to monitor CBP's compliance with the terms of the Agreement and to ensure the health and safety of minors in CBP's custody. After serving in this capacity for a year, I fully understand how critical it is for me to continue building upon the extensive monitoring efforts CBP has undertaken. I understand that the Court has ordered an Independent Monitor to oversee compliance with the Agreement in the Rio Grande Valley (RGV) Border Patrol Sector. I stand ready to assist the Independent Monitor as he or she requires, including traveling with him or her to the RGV Sector or otherwise acting as a resource.

Since August 2017, I have visited the RGV Sector seven times and directed MID to visit various CBP facilities in the RGV Sector an additional 21 times. I am confident that the RGV Sector is compliant with the Agreement, and ultimately, I believe the Independent Monitor will come to this same conclusion.

Given my mandate and the Independent Monitor's focus on the RGV Sector, I have directed U.S. Border Patrol to pull subject activity logs and amenity reports corresponding to all of the declarations submitted by Plaintiffs on July 13, 2018 that related to RGV Sector. I have attached, as Attachment B, all subject activity

logs and amenity reports corresponding to Plaintiffs' declarations from RGV Sector that the Agency was able to locate in the time between the Court's Order and when this letter was signed, to allow the Independent Monitor to have immediate access to them. These represent the types of U.S. Border Patrol records that I regularly review as part of my duties as the Juvenile Coordinator.

I have reviewed 18 of Plaintiffs' declarations from RGV Sector, which correspond to the minors in Plaintiffs' Exhibits 3, 4, 6, 8, 10, 22, 37, 40, 96, 98, 154, 156, 157, 164, 172, 179, 185, and 191. These records are attached to this letter as Attachment A. Based on the subset that I have reviewed, the records indicate that minors were generally held in conditions consistent with the Agreement, where such data was available. For example, the records indicate that minors were provided meals and snacks regularly throughout their time in custody.

Many declarant statements are not able to be either verified or refuted based on the data U.S. Border Patrol collects. However, of the declarations I reviewed that contained allegations related to personal hygiene products, access to showers, food availability, or other amenities offered, the custodial records indicate many of the minors were provided some or all of these amenities.

For example, KM, Plaintiffs' Exhibit 6, is a 16-year-old who was in U.S. Border Patrol custody for five days. KM's declaration says that she went hungry instead of eating the food offered. However, custodial records show 22 meals were accepted, one meal was rejected, and seven snacks were offered during the minor's time in custody. The declaration also states that the minor did not receive a shower, or a toothbrush and toothpaste. Custodial records indicate that KM received a body cleansing product, a dental hygiene product, and two showers during her time in custody.

Another example, Plaintiffs' Exhibit 191, is the declaration of BR, a 17-year-old minor who states that she slept on a concrete floor and that she was not given a change of clothes during her four days in custody. However, custodial records indicate that a sleeping cot/mat was provided to BR and that she received a change of clothes.

These examples illustrate how many of the 18 declarations I reviewed contain allegations that are inconsistent with the actual data collected by U.S. Border Patrol during the minors' time in custody. Given my ongoing mandate to monitor compliance with the Agreement, and my ongoing review of the RGV records

related to Plaintiffs' declarations, I will continue to follow up on any issues that may be identified.

Still, there are other allegations or statements contained in the declarations that cannot be resolved based solely on the attached RGV records. For example, some of the declarations include statements that the facility was cold or that the declarant disliked the food served. Of the declarations that contained allegations related to cold temperatures, and for which the specific hold rooms where the minor was located could be identified, the records indicate the temperature of the room was within the acceptable range of 66 to 80 degrees Fahrenheit. However, I understand that records cannot rebut an individual's subjective experience of a particular temperature. From my interviews with minors, none of the minors had air conditioning in their homes, and only one had electricity. I also learned that the food served at CBP is different from what some minors are used to. I continue to emphasize that CBP cannot accommodate each minor's individual temperature or food preferences, and that the temperature and food at CBP facilities may be different from a minor's living conditions. However, CBP can ensure that objective standards are upheld, like maintaining hold rooms at an appropriate temperature range, generally between 66 to 80 degrees Fahrenheit, and only serving food that is edible and within the expiration date.

Furthermore, the allegations related to agent or officer misconduct are particularly concerning because such behavior is not compatible with the integrity and professionalism required of CBP's workforce. I understand that CBP's Office of Professional Responsibility (OPR) received all of the declarations and it is actively investigating any allegations of agent or officer misconduct. I am confident that OPR will investigate these allegations fully and will take any further actions as necessary.

Although the Independent Monitor will focus his or her efforts on RGV Sector, my mandate is nationwide. Between August 2017 and June 2018, in my role as Juvenile Coordinator, I conducted 21 site visits across the southwest border, analyzed 733 minors' custodial records, and interviewed 38 minors and/or their parents about their experience in CBP custody. Under my direction, the Management Inspections Division (MID) conducted an additional 61 site visits across the southwest border and reported their findings to me. I detailed the results of the site visits and analysis in my three reports submitted to this Court on December 1, 2017, March 2, 2018, and June 1, 2018.

I am committed to continuing my monitoring and reporting duties in the RGV Sector, and nationwide. Since the submission of my June report, I have conducted another unannounced site visit, and directed MID to visit six CBP facilities and report their findings to me. The results of these site visits, and my ongoing monitoring efforts, will be detailed in my next report, due to be filed with the Court no later than July 1, 2019.

My priority continues to be ensuring that CBP upholds the terms of the Agreement, and the agents and officers I have met across the southwest border share this commitment. To that end, I will continue to work with USBP and OFO to enhance CBP's monitoring and reporting capabilities, where possible. I will also continue the robust monitoring processes I developed this year, which includes unannounced site visits nationwide, interviewing minors and/or their parents on-site, and reviewing the data collected in CBP's systems of record related to minors in USBP and OFO custody.

I look forward to working with the Independent Monitor in the RGV Sector, and welcome any insight he or she may be able to provide.

Respectfully submitted,

Henry A. Moak, Jr.
(A) Chief Accountability Officer,
U.S. Customs and Border Protection