CHAD A. READLER
Acting Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director, District Court Section
Office of Immigration Litigation
SARAH B. FABIAN
Senior Litigation Counsel, District Court Section
Office of Immigration Litigation
    P.O. Box 868, Ben Franklin Station
    Washington, D.C. 20044
    Tel:  (202) 532-4824
    Fax:  (202) 305-7000
    Email:  sarah.b.fabian@usdoj.gov

Attorneys for Defendants

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY LISETTE FLORES; *et al.*,<br><br>      Plaintiffs,<br><br>      v.<br><br>JEFFERSON B. SESSIONS III,<br>Attorney General of the United States;<br>*et al.*,<br><br>      Defendants. | Case No. CV 85-4544<br><br>**DEFENDANTS' PROPOSAL REGARDING APPOINTMENT OF INDEPENDENT MONITOR** |

## IDENTIFICATION OF INDEPENDENT MONITOR

Defendants propose the following independent monitor(s) for the Court's consideration: Hon. Michael H. Schneider, Sr. and John Amaya.

- **Hon. Michael H. Schneider, Sr. (Ret.)**, (https://www.jamsadr.com/schneider/):
  - Hon. Michael H. Schneider, Sr. (Ret.) served as United States District Judge for the Eastern District of Texas from 2004-2016, previously serving as a Judge of the Supreme Court of Texas from 2002-2004.  Judge Schneider entered his judicial career as a State District Judge, 157th District of Harris County, Texas from 1990-1996 and served as Chief Justice of the First Court of Appeals, State of Texas from 1996-2002.
  - Judge Schneider is known for his good judgement, integrity, keen intelligence, and fortitude. He is fair, open-minded, patient, experienced, decisive, and faithful to the rule of law.  His decisions as reflected in his opinions are clear, concise, and well-reasoned.
  - In addition to his tenure on the bench, Judge Schneider practiced law for 20 years where he gained diverse and unique experience, including six years as Vice President - General Counsel of Bawden Drilling International Ltd. (later acquired by Noble Drilling) and five years as an attorney at Dresser Industries where, at both companies, he was responsible for managing litigation worldwide.  He also served as General Solicitor, Union Pacific Railroad Company—acting as the top railroad legal official in Texas, New Mexico, Oklahoma, Arkansas, Louisiana and Mississippi—where his in-house litigation team tried cases and handled business transactions related to the transportation industry.
  - Judge Schneider has tried hundreds of cases as a lawyer, presided over and made decisions in thousands of cases as a Judge, written hundreds of legal opinions, negotiated hundreds of domestic and international contracts, qualified American and Canadian entities to do business in energy producing countries, formed and negotiated international joint ventures, and negotiated settlements of hundreds of domestic and foreign lawsuits.

- **John Amaya**, Berliner Corcoran & Rowe LLP (http://bcr.tv/attorney/john-amaya):
  - Prior to joining Berliner Corcoran & Rowe LLP, Mr. Amaya served in senior leadership roles within the Department of Homeland Security (DHS) from 2014 to 2017. Most recently, he served as Deputy Chief of Staff at U.S. Immigration and Customs Enforcement (ICE) where he managed for the

Director a broad portfolio of responsibility regarding ICE operations and policy focusing on immigration enforcement, preventing terrorism, combating the illegal movement of people and trade, including the trafficking of controlled dual-use technology.

o From 2010 to 2014, Mr. Amaya served as Senior Counsel to then-Chairman of the U.S. Senate Judiciary Committee, Senator Patrick Leahy (VT), conducting oversight and advising on civil and criminal justice, immigration and homeland security, foreign sovereign immunity, foreign corruption, sanctions, nominations, and federal courts.

o Mr. Amaya also served in leadership positions at the Mexican American Legal Defense and Educational Fund (MALDEF) and the National Council of La Raza (NCLR) where he directed and executed federal legislative strategies on civil rights, immigration policy and criminal justice. In 2006, he began his legal career as a trial attorney at the U.S. Department of Justice (DOJ) following a judicial clerkship in Billings, Montana.

o Mr. Amaya is a native of California and earned both his Bachelor of Arts and Juris Doctor from the University of Washington where he served on the Board of Regents.  He also earned his Master of Laws degree in International Business and Economic Law from the Georgetown University Law Center.

## **GENERAL AUTHORITY OF THE INDEPENDENT MONITOR**

Defendants object to Plaintiffs' proposed language because it goes beyond this Court's stated intent for the independent monitor. Defendants propose the following alternative language.

PROPOSED LANGUAGE

(a) The independent monitor shall have the authority set forth in this Order to monitor compliance with this Court's June 27, 2017 Order regarding the Agreement, ECF No. 363. The independent monitor shall be subject to oversight by the Court.

(b) The independent monitor shall have the duties, powers and responsibilities detailed in this Order; provided that if to accomplish his or her duties, the independent monitor must undertake necessary measures not specifically referred to herein or seek modifications to this Order due to unforeseen circumstances, the independent monitor is authorized to do so, as long as he or she has informed the Court and the parties of the nature of, and need for, such measures or modifications, and received the Court's written approval. Should the independent monitor determine that such measures or modifications are necessary, the parties shall receive notice and an opportunity to comment (or to submit a stipulation and proposed Order) before the Court approves such measures.

(c) The independent monitor shall be permitted to engage in ex parte communications with the Court and with the parties.

## LIMITATIONS ON THE POWERS OF THE INDEPENDENT MONITOR

Defendants propose the following language, which reflects Defendants' position that the independent monitor's powers should be limited to monitoring compliance with this Court's June 27, 2017 Order regarding the Agreement, and not with the Agreement generally.

PROPOSED LANGUAGE

The independent monitor may not issue any orders or impose any sanctions, but may make recommendations to the Court. The independent monitor shall have

no authority to intervene in or direct Defendants' activities. The independent

monitor does not have the authority to review Defendants' activities, operations, or

record outside of those necessary to assess compliance with this Court's June 27,

2017 Order regarding the Agreement, ECF No. 363.

## TERM AND EXTENSIONS

Defendants object to an initial appointment of the independent monitor for

two years as unnecessary. Defendants instead propose a term of one year, subject

to a request for extension at the end of that term only after briefing and a decision

by the Court.

### PROPOSED LANGUAGE

The Court appoints the independent monitor for a term of 12 months,

commencing 30 days from the date of this Order. At least four weeks before the

end of that term, either party or the independent monitor may submit to the Court a

request that the term be extended. Such request must state the reasons the

extension is being sought, and the length of extension being requested. If any party

opposes the request for extension, that party shall have 14 days to respond to the

extension request before the Court rules on the extension request.

## DILIGENCE OF SPECIAL MASTER

Defendants take no position on Plaintiffs' proposed language in this section,

but do not believe this section is necessary.

## **EX PARTE COMMUNICATIONS**

Defendants object to Plaintiffs' proposed language in this section. Defendants have included language above their proposal that states that the independent monitor may be permitted to engage in ex parte communications with the Court and the parties. Defendants also propose below that the independent monitor may be permitted to speak to class members during visits to the facility. Defendants strongly object to Plaintiffs' attempts to obtain additional discovery rights for themselves through the appointment of the independent monitor, including the proposal in this section that Defendants be required to post a facility notice that includes contact information for Plaintiffs' counsel. Defendants propose omitting this section.

## **SCOPE OF MONITORING**

Defendants object to the section of Plaintiffs' proposed order entitled SPECIAL MASTER'S ACCESS TO INFORMATION in its entirety. As a general matter, Plaintiffs' proposed language is far too broad, and seeks information beyond what would be needed to assess compliance with this Court's June 27, 2017 Order regarding the Agreement.

More specifically, Defendants object to Plaintiffs' proposed language for the following reasons. First, Plaintiffs' proposed language would allow the independent monitor access to information regarding class members which is

prohibited from disclosure by law. Any request by the independent monitor for information regarding class members must be subject to applicable limitations on disclosure in governing statutes and regulations. Second, while Defendants agree that the independent monitor may interview employees of Defendants, Plaintiffs' proposed language provides for no limitations on such interviews to ensure that they are related to the appropriate scope of monitoring. Similarly, in several places, the proposed language seeks to require Defendants to provide information and statistics that are entirely unrelated to the scope of the monitoring ordered by the Court, and in some cases the information is unrelated to any requirement of the Agreement itself. Defendants' proposal below is preferable because it identifies specific materials to be provided that relate to the scope of the monitoring ordered by the Court, and also provides the independent monitor with the ability to request additional information as needed within the scope of his or her monitoring duties.

Third, in many places Plaintiffs seek to require Defendants to provide Plaintiffs' counsel with information and discovery that is not otherwise required by the Agreement. These requests for discovery to Plaintiffs' counsel, on top of providing information to the independent monitor, are an inappropriate attempt by Plaintiffs to expand the monitoring provisions of the Agreement through the independent monitoring process. Plaintiffs still have the monitoring provisions provided to them in the Agreement once the independent monitor is appointed, and

should not seek to expand the terms of the Agreement via the scoping of the independent monitor's mandate. Finally, Plaintiffs' proposal seeks to require Defendants to provide information from U.S. Customs and Border Protection ("CBP") in areas beyond the Rio Grande Valley, which is outside the scope of the Court's June 27, 2017 order.

Defendants instead propose the following language to govern the scope of monitoring by the independent monitor to ensure that CBP and U.S. Immigration and Customs Enforcement ("ICE") are in compliance with the Court's June 27, 2017 Order regarding the Agreement.

PROPOSED LANGUAGE

# I.  U.S. Customs and Border Protection

On June 27, 2017, the Court granted Plaintiffs' motion to enforce Paragraph 12A of the *Flores* Settlement Agreement ("Agreement") against CBP with regard to the following conditions within the U.S. Border Patrol's Rio Grande Valley Sector[1] ("RGV Sector"): 1) access to adequate food; 2) access to clean drinking water; 3) sanitary conditions; 4) temperature control; and 5) sleeping conditions

---

[1] RGV Sector is comprised of U.S. Border Patrol facilities, including a headquarters, and facilities in Brownsville, Corpus Christi, Falfurrias, Fort Brown, Harlingen, Kingsville, McAllen Station, a Central Processing Center (Ursula), Rio Grande City, and Weslaco.  Not all RGV facilities have holding areas, and thus are outside of the scope of the independent monitor's jurisdiction as class members are not located in those facilities.

(except for CPC-Ursula). The independent monitor therefore will oversee CBP's compliance with this Court's June 27, 2017 Order regarding the Agreement, with regard to these five conditions in the RGV Sector. To conduct this monitoring, the independent monitor will: 1) review CBP's processes, policies and procedures in the RGV Sector, as well as national processes, policies and procedures that impact the holding of minors in RGV Sector; 2) conduct facility visits to CBP facilities within the RGV Sector where minors are held; and 3) monitor certain information stored in U.S. Border Patrol's e3 Detention Module (3DM) relating to the conditions in which minors are held in RGV Sector. This monitoring will continue until the independent monitor reports to the Court that he or she believes CBP is in substantial compliance with the Agreement in the RGV Sector, or until such other time as the independent monitor is released by the Court.

In order to enter CBP processing areas, the independent monitor must pass CBP background investigations, which include a review of any criminal history. Any additional individuals hired or retained by the independent monitor to assist the monitor who require access to CBP facilities also will need to pass a CBP background investigation. Upon appointment of the independent monitor, the independent monitor will provide to CBP all information necessary to conduct these background checks, including a copy of his or her driver's license or other government-issued photographic identification such as a passport, full name, and

home address. If any problems arise with these background checks, such as concerns about past criminal history, or safety (such as arrests for or allegations of involvement in child pornography or sexual abuse), CBP will notify the Court immediately.

A.    <u>CBP Processes, Policies, and Procedures</u>

Upon the appointment of the independent monitor, CBP will provide to the independent monitor the following materials that document the processes, policies, and procedures, that govern the custody of minors in the RGV Sector:

*National Standards on Transport, Escort, Detention, and Search* (TEDS)

*Hold Rooms and Short-Term Custody*

2015 Memo- Flores v. Reno *Compliance*

Policies and memos related to e3DM, including those related to e3DM updates

CBP also will provide the independent monitor with copies of all government forms or other official documents used to comply with the Agreement and the Court's order, including forms that provide minors with a notice of their rights under the Agreement.

CBP will ensure that all documents are appropriately marked (e.g., FOUO, LES), before providing them to the independent monitor.  The independent monitor will treat all documents in accordance with their requisite designation, and

in accordance with any protective order that he or she will sign. Should the independent monitor wish to review any other materials, the independent monitor may request those materials from CBP, and CBP will provide those materials, subject to any applicable privileges that may apply. CBP may ask the independent monitor to agree to a protective order as needed, to allow CBP to provide materials requested by the independent monitor.

If the independent monitor wishes to have direct access to CBP IT systems, such direct access will require a more extensive background clearance process given cyber-security, data fidelity, and law enforcement concerns. Should the independent monitor request direct access to any system, CBP will assist the independent monitor to fulfill the necessary background clearance requirements based on the independent monitor's request, and will alert the Court and opposing counsel of these additional requirements. CBP will prioritize the processing of any additional completed background materials when received from the independent monitor.

If, during the course of the monitor's duties, he or she uncovers any evidence of misconduct by an agent or other person, he or she will report it directly to CBP and CBP will take appropriate action in accordance with existing procedures for reporting misconduct. If CBP learns of any evidence of misconduct

on the part of the monitor, CBP will raise it, through counsel, to the Court and to Plaintiffs' counsel.

          B.    <u>Facility Visits</u>

The independent monitor may conduct visits to CBP facilities within the RGV Sector. Those visits may be arranged with CBP personnel. The independent monitor will, to the extent practical, coordinate with the CBP Juvenile Coordinator on any planned facility visit to avoid overlap or undue burden on any facility. In the event that the independent monitor wishes to make unannounced visits to CBP facilities, the independent monitor may reach out to Defendants' counsel to determine the best way to arrange those visits to ensure that the independent monitor will be granted access to secure facilities, while also ensuring that advance notice of the visit is not provided to the facility.

If the independent monitor requests to interview CBP employees, such requests may be subject to the terms of any applicable bargaining unit contract to which that employee is a party.

During facility visits, the independent monitor also may speak to minors and any accompanying parents/legal guardians who are temporarily detained by CBP, if those minors and any accompanying parents/legal guardians give their consent. CBP will provide the independent monitor with access to a room where he or she can speak privately with such minors and any accompanying parents/legal

guardians. If the independent monitor wishes to use electronic equipment, including a laptop, during any interview, CBP may provide for the interview to take place outside of the processing area so that he or she may do so.  The monitor will use any interviews, or personal notes taken during those interviews, for purposes of his or her official duties only, and may not release these materials to the general public, absent prior authorization by the parties. No recording of CBP facilities may be made without express, prior authorization by CBP, which will be given so long as the recording can be conducted in a manner that will protect the privacy of individuals in CBP custody and ensure the protection of information that may be law enforcement sensitive. If needed, CBP will provide translators from U.S. Border Patrol, or allow the independent monitor access to telephonic translation services, to facilitate these interviews.

The independent monitor will need to be accompanied through any CBP facility for his/her safety as well as the safety of Border Patrol employees and detainees. CBP will work with the independent monitor to ensure that such accompaniment does not interfere with the duties of the independent monitor. The independent monitor will make every effort not delay transport or extend the time in custody for minors and any accompanying parents/legal guardians by conducing site visits or interviews.

B.   E3DM

CBP will provide the independent monitor with reasonable access to individuals who can explain how the e3DM system works, what data is included in the system, what reports can be generated, and how the system is used for tracking compliance with the Agreement. The independent monitor may also request that CBP provide him or her with pertinent data from e3DM, including data about specific minors, if appropriate. CBP will provide such data quickly, but may take into account the priority of other agency work in responding to those requests. If other work may delay a response to such requests, CBP will inform the independent monitor, and will work with him or her to get the information needed by the independent monitor in a timely manner.

D. Juvenile Coordinator

CBP will make its current Juvenile Coordinator available to the independent monitor.  The independent monitor and CBP's Juvenile Coordinator will endeavor to develop a plan that enables each of them to perform their duties appropriately. The Juvenile Coordinator and the independent monitor may share information, if appropriate, and in coordination with counsel for CBP, as needed.

## II.   **U.S. Immigration and Customs Enforcement**

On June 27, 2017, the Court granted Plaintiffs' motion to enforce against ICE on three provisions of the Agreement: (1) the requirements that ICE provide

class members with a list of legal services providers and the Notice of Right of Judicial Review ("Rights Advisal"); (2) whether ICE is making and recording continuous efforts to release class members or place them in non-secure, licensed facilities; and (3) whether ICE is releasing class members as expeditiously as possible from its three Family Residential Centers ("FRCs").  The independent monitor therefore will oversee ICE's compliance with this Court's June 27, 2017 Order regarding the Agreement, with regard to these three requirements.

To conduct this oversight, the independent monitor will: (1) review ICE records and data at ICE FRCs to ensure that the parents of class members and class members who are 14 years or older have received the proper notices during initial orientation with ICE at the FRCs; (2) review ICE records and data at ICE FRCs to ensure the FRCs are making and recording efforts at release; and (3) review ICE records and data at ICE FRCs to evaluate whether those class members who remain in ICE FRCs for longer than 20 days are being released as expeditiously as possible. The independent monitor will develop a plan for monitoring these three requirements of the Agreement. To assist the independent monitor in developing this monitoring plan, ICE will make available to the independent monitor ICE personnel who can answer any questions the independent monitor may have regarding ICE records and data that can be used for monitoring compliance with these requirements of the Agreement. This monitoring will continue until the

independent monitor reports to the Court that he or she believes ICE is in substantial compliance with the Agreement in its FRCs, or until such other time as the independent monitor is released by the Court.

A. ICE Information and Data

Upon the appointment of the independent monitor, ICE will provide to the independent monitor the following materials:

- Handbooks for the three Family Residential Centers
- Family Residential Standards

ICE also will provide the independent monitor with copies of all government forms or other official documents used to comply with the Agreement and the Court's order, including forms that provide minors with a notice of their rights under the Agreement.

Should the independent monitor wish to review any other materials related to his or her duties, the independent monitor may request those materials from ICE, explaining why such material is needed. ICE will evaluate the request and provide the appropriate materials, subject to any applicable privileges. As a condition of receiving the material, ICE may ask the independent monitor to agree to a protective order as needed to allow ICE to provide materials requested by the independent monitor.

The independent monitor may also wish to review ICE records or data relating to individual class members or groups of class members. The independent

monitor may request such records or data from ICE, and ICE will provide that information as requested, or will explain why such information cannot be provided in the manner requested. ICE will work with the independent monitor to provide the information necessary for the independent monitor to review ICE's compliance in accordance with the plan developed by the independent monitor. Prior to receiving any information related to class members, the independent monitor shall agree to a protective order regarding the use, protection, and disclosure of such information, including the return of all material when duties are completed.

B.   Facility Visits

Should the independent monitor wish to conduct a site visit of any ICE FRC, the independent monitor must provide ICE timely notice of the proposed visit and pass an ICE background investigation. The independent monitor may speak to individuals who are detained by ICE at the FRCs, so long as those individuals give their consent, and so long as those individuals are permitted to consult with their attorneys prior to speaking with the independent monitor if they wish to do so. ICE will provide the independent monitor with access to a room where he or she can speak privately with such individuals. Because of the need to protect the privacy and safety of individuals in ICE custody, no recording of ICE facilities may be done without express, prior authorization. The independent monitor will need to be accompanied through any FRC for his/her safety as well as that of the residents.

To the greatest extent possible, the independent monitor will not delay transport or extend the time in custody for individuals by conducing site visits or interviews.

## RECOMMENDATIONS TO ENSURE COMPLIANCE

Defendants have no objection to plaintiffs' proposed language in this section. However, Defendants also propose that, unless adopted by both parties, such communications shall be confidential.

## SUPPORT AND COMPENSATION

Defendants object to Plaintiffs' proposed language in this section because it is excessive, and reflects Plaintiffs' overall request for the Court to order monitoring that is far beyond of what the Court's previous statements regarding monitoring appear to envision. Defendants instead propose the following language.

PROPOSED LANGUAGE

(a) Support. The independent monitor may seek assistance from others, including but not limited to independent experts or specialists. The independent monitor shall advise the parties of any person he or she seeks to retain, including a brief description of how the individual will assist the independent monitor, and his or her qualifications and rate of pay. The parties shall have ten business days to object to the retention of any such persons by the independent monitor, with reasons for the objection. If the matter is not resolved by the monitor, parties shall bring the matter to the Court. In the event such assistance is approved, the

individual chosen will be subject to the same background checks and confidentiality provisions as the independent monitor.

(b) Compensation.  All fees and costs of the independent monitor will be borne by Defendants. The independent monitor may not request any payment that Defendants are otherwise prohibited from paying by any applicable law governing the payment of such fees or costs by the Government, and payment of such fees or costs are, as with all uses of appropriated funds, subject to the availability of appropriations. Defendants will work with the independent monitor to determine an appropriate rate of payment, including an agreed-upon limit on annual fees, and a schedule for billing and payment.

To facilitate this determination, Defendants will pay the independent monitor a flat fee not to exceed $10,000 to conduct an initial assessment of Defendants' Court-ordered monitoring needs and develop an initial plan for monitoring Defendants' compliance with the June 27, 2017 Order. The independent monitor will include in that initial assessment a proposed budget that includes an estimate of the number of hours the monitor will need to fulfill the monitoring plan, and identifies anticipated fees and costs including those related to travel, administration, and supplies. If Defendants object to the independent monitor's initial assessment, then Defendants shall bring their concerns to the

Court within fourteen (14) days of receiving the plan and budget from the independent monitor, and will seek further guidance from the Court.

## REPORTING TO THE COURT AND PLAINTIFFS' COUNSEL; JUDICIAL REVIEW; DISPUTE RESOLUTION

Defendants have no objections to Sections (a) through (d) of Plaintiffs' proposed language in this section. Defendants submit that Plaintiffs' proposed Section (e) is inapplicable here. Defendants object to Plaintiffs' proposed Section (f). The role of the independent monitor should be to work with Defendants to ensure that they are in compliance with the Agreement, not to bring new actions to the Court for non-compliance.

## MISCELLANEOUS PROVISIONS; RETENTION OF JURISDICTION

Defendants have no objection to Plaintiffs' proposed language in this section. Defendants propose the addition of the following language.

PROPOSED LANGUAGE

During the period while this independent monitor order is in place, Plaintiffs will not file any motions to enforce the Settlement Agreement with this Court against ICE or CBP.

DATED:     August 24, 2018          Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director, District Court Section
Office of Immigration Litigation

*/s/ Sarah B. Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-4824
Fax: (202) 305-7000
Email: sarah.b.fabian@usdoj.gov

*Attorneys for Defendants*