# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

JENNY L. FLORES, *et al.*,

     Plaintiffs,

         v.

JEFFERSON B. SESSIONS, III,
U.S. Attorney General, *et al.*,

     Defendants.

Case No.: CV 85-4544-DMG (AGRx)

**ORDER APPOINTING SPECIAL MASTER/INDEPENDENT MONITOR [363] [469] [470]**

# **TABLE OF CONTENTS**

A.   THE SPECIAL MASTER/INDEPENDENT MONITOR ...................3

    1.   *Appointment of the Monitor.*.........................................................3

    2.   *Authority of the Monitor.*..............................................................3

    3.   *Term and Extensions.*. ..................................................................5

    4.   *Limitation on the Monitor's Powers*...........................................6

    5.   *Diligence of Monitor.* ..................................................................6

    6.   *Ex Parte Communications.* ...........................................................6

B.   THE MONITOR'S ACCESS TO INFORMATION ..........................7

    1.   *Class Member Information.* ...........................................................7

    2.   *Current Advisal Forms.*...............................................................15

    3.   *Contracts with Service Providers and Licenses.* ......................15

    4.   *Legal Representative Organizations.* ........................................15

    5.   *Training by Defendants.*. .............................................................16

    6.   *Notice of Implementation Materials.*. ........................................16

    7.   *Inspection of Facilities.* ..............................................................16

C.   SUPPORT AND COMPENSATION FOR THE MONITOR ..........17

    1.   *Support.*.......................................................................................17

    2.   *Compensation.* ............................................................................17

D.   REPORTING TO THE COURT AND CLASS COUNSEL; JUDICIAL REVIEW; DISPUTE RESOLUTION ...............................18

    1.   *Reporting to the Court.*...............................................................18

    2.   *Judicial Review.*.........................................................................20

    3.   *Dispute Resolution* .....................................................................20

E.   MISCELLANEOUS PROVISIONS; RETENTION OF JURISDICTION.................................................................................21

    1.   *Confidentiality of Information.*...................................................21

    2.   *Cooperation of Parties.* ..............................................................22

i

3.    *Preservation of Materials.*.......................................................22

4.    *Retention of Jurisdiction; Amendments*....................................22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ORDER APPOINTING AN INDEPENDENT MONITOR

Plaintiffs initiated this action on July 11, 1985. [Doc. # 1.] On January 28, 1997, the Court approved a class-wide settlement of this action pursuant to Federal Rule of Civil Procedure 23 ("*Flores* Agreement" or "Agreement"). [Doc. # 101 at 8–52.]

On June 27, 2017, the Court granted in part and denied in part Plaintiffs' Motion to Enforce and Appoint a Special Monitor ("June 27, 2017 Order"). [Doc. # 363.] In particular, the Court found that: (1) conditions at the U.S. Customs and Border Protection ("CBP") stations in the Rio Grande Valley sector ("RGV" sector) did not comport with Paragraph 12A of the *Flores* Agreement; (2) Defendants violated Paragraph 24D of the Agreement by failing to provide Class Members[1] with a list of legal services and the Notice of Right of Judicial Review; (3) Defendants violated Paragraphs 14, 18, 19, and 23 of the Agreement by failing to make and record continuous efforts to release Class Members and place them in non-secure, licensed facilities; and (4) Defendants violated Paragraphs 12A and 14 of the Agreement by failing to release Class Members without unnecessary delay and/or timely place Class Members in licensed facilities. *See id.* at 33–34. Instead of granting Plaintiffs' request to appoint an Independent Monitor at that time, the Court indicated it would appoint a Juvenile Coordinator consistent with Paragraph 28A of the *Flores* Agreement.[2] *Id*. at 32-33. In response to that Order, Defendants proposed the names of two individuals—Henry A. Moak, Jr. from the CBP and Deane Dougherty from Immigration and Customs Enforcement ("ICE")—to serve in the role of Juvenile Coordinator for their respective agencies. [Doc. # 368.] Thereafter, the Court

---

[1] To the extent that a term is not explicitly defined in this Order, it shall have the meaning provided in the *Flores* Agreement and/or the Court's Orders enforcing that Agreement.

[2] The June 27, 2017 Order cited Paragraph 24A, but it was a typographical error.

1

1  appointed Mr. Moak and Ms. Dougherty as the Juvenile Coordinators  for CBP and

2  ICE, respectively, pursuant to Paragraph 28A of the Agreement.  [Doc. # 371.]

3  The Court stated that if it was not satisfied with the progress made within

4  approximately one year of the appointment of the Juvenile Coordinators, it would

5  reconsider Plaintiffs' renewed request for the appointment of an Independent

6  Monitor.  [Doc. # 363 at 32–33.]

7      On July 19, 2018, Plaintiffs submitted numerous declarations from Class

8  Members and their relatives indicating that Defendants failed to comply with the

9  Court's June 27, 2017 Order.[3]  [Doc. ## 463-1 to 463-9.]  On July 27, 2018, the

10  Court held a status conference to discuss whether the Court should appoint an

11  Independent Monitor.  [Doc. # 469.]

12      On July 30, 2018, the Court found that the Office of Refugee Resettlement

13  ("ORR") breached the *Flores* Agreement by (*inter alia*):  (1) detaining certain

14  Class Members in Shiloh Residential Treatment Center ("RTC") in violation of

15  Paragraphs 6, 7, 8, and 19 and Exhibit 1 of the Agreement, (2) failing to timely

16  provide a written notice of reasons for placing a Class Member in a secure facility,

17  staff-secure facility, or RTC in violation of Paragraph 24C of the Agreement,

18  (3) placing certain Class Members in secure facilities in violation of Paragraph 21

19  of the Agreement, (4) administering psychotropic medication to Class Members at

20  Shiloh RTC in violation of Paragraphs 6 and 9 and Exhibit 1 of the Agreement,

21  and (5) undertaking certain policies that unnecessarily delay the release of Class

22  Members to custodians in violation of Paragraphs 14 and 18 of the Agreement

23  ("July 30, 2018 Order").  [Doc. # 470.]  On August 27, 2018, Plaintiffs' counsel in

24  a related matter filed a declaration from a mental health specialist, wherein she

25  attests that ORR has failed to transfer any Class Members out of Shiloh RTC or

26  ───────────────

27  [3] Additionally, Juvenile Coordinator Henry Moak acknowledged that CBP's
custodial records sometimes do not accurately reflect Class Members' experiences

28  in the agency's custody.  [Doc. # 430-1 at 5.]

-2-

modify the agency's policies regarding the administration of psychotropic medication to Class Members.  *See* Cohen Decl. at ¶¶ 9–10, *Lucas R., et al. v. Alex Azar, et al.*, No. CV 18-5741 (C.D. Cal.) [Doc. # 64-1].

Because of the complexity of the *Flores* Agreement, the Court's findings of non-compliance, and ongoing disputes between the parties relating to the implementation of the *Flores* Agreement, the Court finds that the appointment of a Special Master and Independent Monitor is warranted.  *See* Fed. R. Civ. P. 53(a); *Hook v. State of Ariz.*, 120 F.3d 921, 926 (9th Cir. 1997); *United States v. Suquamish Indian Tribe*, 901 F.2d 772, 774–75 (9th Cir. 1990).

## A.    THE SPECIAL MASTER/INDEPENDENT MONITOR

1.    *Appointment of the Monitor*.   The Court hereby appoints **Andrea Sheridan Ordin** as the Special Master/Independent Monitor ("the Monitor").

2.    *Authority of the Monitor*.   The Monitor shall have the authority to perform the following tasks, subject to the oversight of this Court:

a.    Monitor compliance with the Court's June 27, 2017 and July 30, 2018 Orders, and other Court orders issued during the Term ("the Court's Orders");

b.    Meet with the Parties and their counsel and receive and/or hear evidence and legal arguments on issues pertaining to compliance with the Court's Orders;

c.    Make findings of fact and prepare formal Reports and Recommendations to the Court regarding achievement of the goals of monitoring and substantial compliance with the Court's Orders;

d.    Conduct such investigation, interviews, and site visits as are necessary to achieve the goals of monitoring or aid in the preparation of Reports and Recommendations;

e.    Hire and retain others, including but not limited to independent experts, specialists, associate attorneys, law clerks, paralegals, and/or

1  interpreters (collectively "aides"), to assist the Monitor in the
2  performance of her duties;

3  f.   Direct the Parties to produce such information or documents as the
4       Monitor deems relevant to achieve the goals of monitoring or to
5       prepare Reports and Recommendations;

6  g.   Resolve such disputes as may arise between the Parties regarding the
7       implementation of the Court's Orders, including this Order;

8  h.   Preside over and facilitate mediations and/or settlement negotiations
9       between the Parties as to any issues pertaining to the implementation
10      of the Court's Orders; and

11 i.   Advise and update the Court on the status of Defendants' compliance
12      with the Court's Orders.

13      While the Monitor shall have broad discretion regarding how to exercise her
14 authority, her responsibilities shall focus initially on monitoring compliance with
15 the June 27, 2017 and July 30, 2018 Orders, recommending measures to cure any
16 violations thereof, and mediating disputes relating to Defendants' compliance or
17 non-compliance with those Orders.  Pursuant to the July 27, 2018 Order [Doc. #
18 469], the Monitor shall also have the authority to review the declarations filed by
19 the Parties regarding conditions at Defendants' facilities and recommend remedial
20 action, if necessary.

21      During the course of her monitoring duties, if the Monitor discovers
22 potential breaches of the *Flores* Agreement that are beyond the scope of the
23 June 27, 2017, July 27, 2018, or July 30, 2018 Orders, she shall bring them to the
24 Court's and the Parties' attention.  The Court, in its discretion, may authorize the
25 Monitor to investigate the potential breaches, request briefing from the Parties
26 thereon, hold hearings or mediation relating thereto, and issue a Report and
27 Recommendation thereon to the Court if the matter cannot be resolved through
28 mediation.   The Monitor shall have the authority to gather information and

-4-

documentation in furtherance of the monitoring function, as identified herein. The Monitor shall have the duties, powers, and responsibilities detailed in this Order; *provided* that if to accomplish her duties, the Monitor must undertake necessary measures not specifically referred to herein or seek modifications to this Order due to unforeseen circumstances, the Monitor is authorized to do so, as long as she has informed the Court and the Parties of the nature of, and need for, such measures or modifications, and received the Court's written approval. Should the Monitor determine that such measures or modifications are necessary, the Parties shall receive notice and an opportunity to comment or object (or to submit a stipulation and proposed order) before the Court approves such measures.

3. *Term and Extensions*. The Court appoints the Monitor for a term of 12 months ("Initial Term") commencing on October 17, 2018 (the "Effective Date"). The Initial Term may be extended ("Extended Term")[4] if, at least four (4) weeks before the expiration of the Initial Term, any of the Parties and/or the Monitor file with the Court a Notice requesting an extension of the Monitor's term for an additional term based on specific and ongoing concerns regarding Defendants' compliance with the June 27, 2017 and/or July 30, 2018 Orders, or other Orders that the Court may issue within the Term. The Notice shall identify an appropriate extension of time in order to ensure that the goals of the monitoring are met.[5] The Parties shall have the right to respond to any such Notice filed by the Monitor within 10 days after the Notice's filing. Opposing Parties and the Monitor shall have the right to respond to any such Notice filed by a Party within 10 days after the Notice's filing. The Parties and/or the Monitor may apply for additional

---

[4] The Initial Term, together with any Extended Terms, shall collectively be referred to as "the Term."

[5] The goals of the monitoring include ensuring Defendants' ongoing substantial compliance with the June 27, 2017 and July 30, 2018 Orders, and that such substantial compliance will continue without the presence of the Monitor.

extensions under the same standard by filing a Notice requesting an extension no later than four (4) weeks before the end of any Extended Term.  Absent a showing of serious, specific, and ongoing concerns by the Parties and/or the Monitor, the presumptive end of the Term shall be no later than 36 months after the Effective Date.

4. *Limitation on the Monitor's Powers*.  The Monitor may not issue any orders or impose any sanctions, but may recommend to the Court various orders pertaining to the goals of monitoring, including any contempt sanction, provided that the Parties are given notice and an opportunity to respond.  The Monitor shall have no authority to intervene in or direct Defendants' activities.

5. *Diligence of Monitor*.  The Monitor is directed to proceed with all reasonable diligence to carry out the duties assigned by the Court.

6. *Ex Parte Communications*.  The Monitor shall be permitted to engage in *ex parte* communications under the following circumstances:

> a. **The Court.**  The Monitor shall be permitted to confer *ex parte* with the Court regarding any issue arising under or relating to this Order.  All such communications shall be privileged and shall not be subject to discovery.
>
> b. **The Parties.**  The Monitor shall be allowed to engage in *ex parte* communications with the Parties' counsel who have been designated as the "primary contacts," Defendants' "points of contact," and the Juvenile Coordinators relating to the performance of her duties.  Prior to the Effective Date, each side shall designate its primary contact and notify the Monitor of that person's contact information.
>
> c. **Class Members or their Representatives**.  The Monitor shall be allowed to speak with Class Members or their Representatives. The Parties shall meet and confer with the Monitor regarding a

Detention Facility Notice which shall be disseminated to all detention centers where Class Members may reside and which will include email contact information for the Monitor in the event a Class Member or his or her parent or Representative[6] wishes to report a problem with compliance with the Court's Orders.

 d. ***Notice of Ex Parte Communications.*** For all *ex parte* communications of a substantive nature during the applicable Reporting Period (as defined *infra* in note 7), except those with the Court, the Juvenile Coordinators, and the Parties' primary contacts, the Monitor shall provide a list of the parties involved and the date of the *ex parte* communication in the Monitor's Reports and Recommendations to the Court.

**B. THE MONITOR'S ACCESS TO INFORMATION**

 1. <u>Class Member Information</u>. The Monitor's authority to gather information and documentation in furtherance of the monitoring function includes the following non-exhaustive methods of obtaining information regarding Class Members:

 a. ***Interviews.*** The Monitor may from time to time interview any individual (including Defendants' employees, agents, contractors, and subcontractors, and the agents or employees of such contractors or subcontractors) she believes possesses information relevant to Defendants' compliance with the Court's Orders, including:  (i) any individuals responsible for implementing or issuing policies concerning the *Flores*

---

[6] Representatives include attorneys and representatives who represent Class Members and are accredited by the Board of Immigration Appeals.

Agreement; (ii) any individuals acting in any supervisory capacity over individuals implementing the *Flores* Agreement, including individuals responsible for training or supervising, ICE officers, ORR personnel, or detention facility officials; (iii) any Representatives of Class Members; and (iv) any former or current Class Member or former or current Class Member's relatives or accompanying adults (provided that the interviewee, or her or his   Representative, does not object to such an interview).  Defendants shall provide the Monitor a point of contact or points of contact from CBP, ICE, the U.S. Citizenship and Immigration Service, the Executive Office of Immigration Review, and ORR, along with contact information for Defendants' employees, agents, contractors, and subcontractors who are involved in implementing the *Flores* Agreement.  The Monitor may from time to time confer with those points of contact.  If requested, Defendants shall provide suitable facilities and arrangements for the conduct of such interviews under conditions satisfactory to the Monitor.  The Monitor may, in her discretion, invite the Parties' primary contacts to attend such interviews.

b.   ***Requests for Documents.***  From time to time, the Monitor may serve requests for any non-privileged information or documents, or class of documents, created, received or maintained by Defendants or their employees, agents, contractors, or subcontractors that is directly relevant to a determination of compliance with the Court's Orders.  The Monitor must provide Defendants with a Notice reasonably describing the documents sought and the reason for such

1  requests, and shall make reasonable efforts to ensure that the
2  requests are in accordance with Federal Rule of Civil Procedure
3  26(b).  Any such Notice shall be filed on the docket.  The
4  Monitor shall consider the burden such requests for information
5  or documentation will cause Defendants.  Defendants shall
6  provide the documents sought unless the documents are not
7  relevant to any issue arising from their compliance with the
8  Court's Orders.  Any dispute regarding such a request shall be
9  heard in the first instance by Hon. Alicia G. Rosenberg, United
10  States Magistrate Judge.  Class Counsel shall have a right to
11  participate in any proceedings regarding disputed requests for
12  documents.  Any dispute between the Parties shall be presented
13  to Judge Rosenberg in a joint stipulation in conformity with
14  Local Rule 37 and this Court's Orders, including this Order.

15  c.  ***Class Member Statistics.***  The Monitor may, in her discretion,
16  request information from Defendants, including but not limited
17  to information stored in Defendants' e3 Detention Module
18  ("e3DM") relating to Class Members' conditions of
19  confinement in the RGV sector, as well as the following
20  database information for all Class Members:

21  i.  **Identifying Information and Detention History**:
22  (i) Full name, (ii) alien #, (iii) date of birth, (iv) country
23  of birth, (v) name and alien # of accompanying relative
24  (if any), (vi) date and location of apprehension,
25  (vii) dates, locations, and reasons for all transfers of
26  Class Members, (viii) if the Class Member was not
27  released under Paragraph 14 of the Agreement or placed
28  pursuant to Paragraphs 12A(3) and/or 19 of the

-9-

Agreement within 20 days of apprehension, the reason why the Class Member was not released under Paragraph 14 of the Agreement or placed under Paragraph 12A(3) and/or 19 of the Agreement, (ix) if the Class Member was not released pursuant to Paragraph 14 of the *Flores* Agreement, the date on which the Class Member was placed in one of Defendants' facilities and the name and location of the facility, (x) whether a licensed psychologist or psychiatrist has determined that the Class Member poses a risk of harm to self or others and, if so, the date on which this determination was made, the identity of the psychologist or psychiatrist who made that determination, and the basis for that determination, (xi) if the Class Member is detained at Shiloh RTC and is being administered any psychotropic medication, then (a) the name of the prescribed medication(s), (b) the dosage of those medication(s), (c) the identities and qualifications of the individual(s) prescribing them, (d) the basis for diagnosis, (e) whether, on which date(s), and from whom ORR has obtained informed written consent in accordance with 26 Texas Administrative Code sections 748.2001 and 748.2253 for the administration of the psychotropic medication(s), (f) whether and, if so, on which date(s) ORR obtained a court order in accordance with Texas law authorizing the administration of the psychotropic medication(s), and (g) whether the psychotropic medication(s) was/were administered because of an "emergency" as that term is defined in

-10-

1    Texas Family Code section 266.009 and 26 Texas

2    Administrative Code section 748.2257 and, if so, the

3    basis for that determination, the date(s) on which it was

4    made, and the identity and qualifications of the

5    individual(s) making it;

6    ii.   **Information Regarding CBP Detention**:   (i) The

7    number of hours the Class Member spent in a CBP

8    facility following arrest, (ii) the size of CBP cells where

9    the Class Member was detained and the largest number

10   of detainees held in the cell while the Class Member was

11   detained therein, (iii) the content and number of meals

12   and drinks provided to the Class Member while in CBP

13   custody, (iv) whether the Class Member was provided

14   with toiletries and towels while in CBP custody,

15   (v) temperature recordings taken while the Class Member

16   was detained, (vi) whether the Class Member was

17   provided with a blanket and mat or mattress to sleep on if

18   held overnight in a CBP facility, and (vii) whether the

19   Class Member was provided with a notice of her or his

20   rights as required by Paragraphs 12A and 24D of the

21   Agreement;

22   iii.  **Continuous Efforts at Release Pursuant to**

23   **Paragraph 14 of the Agreement**:   (i) The dates on

24   which the option for release was explained by

25   Defendants' employees to Class Members or their

26   accompanying parents, the names of the officers who

27   provided the information, the location where the

28   information was provided, and the dates on which the

-11-

information was provided, (ii) the dates on which a Class Member's parent opted her or his Class Member child out of the release provisions of the Agreement, (iii) the dates on which efforts were made and recorded by Defendants' employees to release the Class Member pursuant to Paragraph 14 of the Settlement, and the names, titles, and locations of the person(s) who made such efforts, (iv) identities of relatives, friends or licensed group homes contacted for release or placement of the Class Member under Paragraph 14, and the dates of such contacts, and names, titles, and locations of Defendants' employees who made the contacts, and (v) the results of efforts aimed at release of the Class Member pursuant to Paragraph 14 of the Settlement;

iv.   **Continuous Efforts at Placement Pursuant to Paragraph 19 of the Agreement**:   (i) The dates and nature of efforts made and recorded that are aimed at the placement of the Class Member pursuant to Paragraph 19 of the Agreement, (ii) the name and location of licensed group homes contacted for placement of the Class Member under Paragraph 19 of the Agreement, and the names, titles, and locations of the person(s) who made such contacts, and (iii) the results of efforts aimed at the placement of the Class Member pursuant to Paragraph 19 of the Agreement, including the dates and locations of placements of the Class Member under Paragraph 19 of the Agreement;

-12-

v.  **Placement of Class Members in Secure Facilities Under Paragraph 21 of the Agreement**: (i) The dates on which a Class Member was held in or transferred to a State or county juvenile detention facility or a secure detention facility or contracted facility (collectively "secure facilities"), (ii) the reasons why the Class Member was transferred to a secure facility, (iii) the names of the facilities to which the Class Member was transferred, (iv) the reasons why the Class Member was not transferred out of that facility pursuant to the July 30, 2018 Order, and (v) the date on which the Class Member was released (if no longer detained) or transferred to a non-secure placement;

vi.  **Provision of Notices of Rights**: (i) The dates on which Class Members were provided with a notice of their rights pursuant to Paragraph 12A of the Agreement, including the names, titles, and locations of Defendants' employees who provided the notice of rights, (ii) the dates on which Class Members were provided with written notices of the reasons under Paragraph 24C of the Agreement for housing the minor in a detention facility, medium security facility, secure facility, staff-secure facility, or RTC, (iii) dates on which, pursuant to Paragraph 24D of the Agreement, Class Members were provided (a) an INS Form I-770, (b) an explanation of the right of judicial review as set out in Exhibit 6 to the Agreement, and (c) the list of free legal services available

-13-

1    in the district pursuant to Defendants' regulations (unless

2    previously given to the Class Member);

3    vii.   **Released Class Member Statistics**:   For each Class

4    Member who has been released from detention, in

5    addition to the information mentioned above:  (i) the date

6    of release, (ii) the number of days in detention prior to

7    release, (iii) the location of release, (iv) the name,

8    relationship, telephone number, and address of the person

9    or licensed group home to whom the minor was released

10   and (if applicable) that person's relationship to the minor,

11   (v) whether the Class Member was re-detained, (vi) the

12   date of re-detention, (vii) the location of re-detention, and

13   (viii) the reason for the re-detention; and

14   viii.   **Compliance with Paragraph 28A of the Agreement:**

15   Documents showing that pursuant to Paragraph 28A of

16   the Agreement, one or more of Defendants' designated

17   officials have maintained an up-to-date record of all

18   minors who remain in Defendants' custody for longer

19   than 72 hours.

20   d.   ***Data Concerning Emergencies or Influxes.***   On a monthly

21   basis commencing with the Effective Date, Defendants shall

22   provide the Monitor with statistics (in the form of a searchable

23   electronic file such as an Excel file) on (i) the number and

24   location by CBP station of Class Members in the RGV sector

25   who presented themselves for admission or were apprehended,

26   (ii) the numbers of Class Members identified in (i) who were

27   either placed in expedited removal or were issued Notices to

28   Appear ("NTAs") in regular removal proceedings, (iii) the

-14-

number of Class Members identified in (ii) who were released or placed pursuant to Paragraphs 14 or 19 of the Agreement before being transferred to ICE custody because they were issued NTAs, and (iv) the number of CBP agents assigned to the stations where the apprehensions identified in (i) took place. On a monthly basis commencing with the Effective Date, Defendants shall provide the Monitor with reports regarding emergencies described in Paragraph 12B of the Agreement, including the nature of and response to the emergency.

2.    *Current Advisal Forms*.    By the Effective Date, Defendants shall provide the Monitor with all forms advising Class Members of their rights that are used at Defendants' facilities.  Throughout the Term, Defendants shall promptly provide to the Monitor updated forms if they are changed in any way.

3.    *Contracts with Service Providers and Licenses*.    By the Effective Date, Defendants shall provide the Monitor with copies of their current contract(s) with entities for the detention of Class Members and licenses issued for the operation of such entities implicated in the Court's Orders.  If entities with which Defendants have contracted have in turn subcontracted with other entities to perform detention functions for Class Members, Defendants shall provide copies of current versions of those subcontracts and any licenses issued to such subcontractors.  Defendants shall promptly provide updates to the Monitor if any contracts, subcontracts, or licenses mentioned in this paragraph change during the Term or if there are proposed amendments or renewals of such contracts, subcontracts, or licenses.

4.    *Legal Representative Organizations*.    By the Effective Date, and once every three (3) months thereafter until the expiration of the Term, Defendants shall provide the Monitor with a list of all organizations listed in their list of free legal services provided to detained Class Members or their accompanying relatives by

-15-

Defendants' officials.  Defendants shall promptly provide updates if those lists change during the Term.

5.       *Training by Defendants.*  Defendants shall provide the Monitor with the categories of individuals trained to implement the *Flores* Agreement, including the individuals' titles and duty locations, the dates of trainings, and all final training materials bearing upon implementation of the *Flores* Agreement.  The dates and locations of all such trainings shall be provided to the Monitor at least ten (10) days prior to the training dates and the Monitor may attend any such trainings.  In her discretion, the Monitor may invite the parties' representatives to join her.  The Monitor may also in her discretion attend formal meetings of any task force or implementing group of Defendants or their appointees, designees, contractors, or subcontractors regarding implementation of the Agreement.

6.       *Notice of Implementation Materials.*   By the Effective Date, Defendants shall provide the Monitor with any non-privileged final copies of any regulations, policy directives, manual sections, guidance, memoranda, instructions, orders, and other non-privileged implementation materials aimed at compliance with the *Flores* Agreement and the Court's Orders.  Defendants shall promptly provide updates to the Monitor if any such implementation materials change at any time during the Term.

7.       *Inspection of Facilities.*  The Monitor shall have the right to conduct reasonable inspections of detention facilities implicated in the Court's Orders used by, contracted with, or acting on behalf of Defendants to hold Class Members. With or without prior notice, the Monitor shall have the right to tour and inspect Defendants' detention facilities and interview staff (including Defendants' employees), Class Members, and their accompanying relatives to assess compliance with the Court's Orders.  Class Members and their accompanying relatives may elect not to be interviewed by the Monitor.  Class Counsel and Defendants' counsel or designated representatives may, at the discretion of the

-16-

1    Monitor, be present during site inspections and interviews.   Defendants shall

2    designate one or more persons the Monitor may contact to promptly address any

3    access or inspection issues that may arise during the course of a site inspection.

4    **C.    SUPPORT AND COMPENSATION FOR THE MONITOR**

5        1.    *Support*.  The Monitor may, as she deems necessary to carry out her

6    functions, seek assistance from aides whose services the Monitor deems important

7    to performing her duties.  Prior to retaining the services of an independent expert,

8    however, the Monitor must consult with the parties and the Court and provide an

9    explanation of the need for such expert, and his or her qualifications.  Thereafter,

10   the Court shall make a determination of whether to authorize the retention of the

11   expert.  The parties may request background information regarding other aides to

12   the extent necessary to conform to any statutes or regulations.

13       2.    *Compensation*.   All of the Monitor's fees, costs, and expenses,

14   including those with respect to aides, are to be paid by Defendants.  *See* Fed. R.

15   Civ. P. 53(g)(3) (providing that courts should consider several factors when

16   allocating payment among the parties, including "the extent to which any party is

17   more responsible than other parties for the reference to a master").  The Monitor

18   shall be compensated at the hourly rate of $250 during the first year of the Term,

19   $275 during the second year and, if necessary, $300 during the third year.  The

20   services of the Monitor's aides shall be billed at a rate not to exceed $125 per hour.

21   The Monitor is entitled to reimbursement for all reasonable expenses incurred.  On

22   a monthly basis, the Monitor shall provide Defendants with a detailed record of

23   hours billed and expenses incurred in the preceding month.  If Defendants dispute

24   a bill from the Monitor, they shall have 15 days to review and submit objections to,

25   and/or request additional clarifying information or documentation from the

26   Monitor, with a copy served on Class Counsel and filed with the Court.  If within

27   30 days of presentation of the Monitor's bill, there is still a dispute, Defendants

28   shall submit the dispute to the Court for resolution.  Defendants and the Monitor

-17-

1   shall prepare a joint statement regarding the disputed payment for filing within 30

2   days after Defendants' receipt of the Monitor's bill.  If the Monitor anticipates that

3   her annual compensation, costs, and expenses shall exceed $300,000 per year, she

4   shall notify the Parties and the Court, preferably within six months after the

5   Effective Date, and make a showing of good cause and provide an estimate of the

6   amount she anticipates will be required for her to properly perform the duties and

7   obligations set forth in this Order.  Upon such notification, the Court shall set a

8   schedule that will permit the Parties to submit written comment.

9   **D.**     **REPORTING TO THE COURT AND CLASS COUNSEL; JUDICIAL**

10         **REVIEW; DISPUTE RESOLUTION**

11        1.   *Reporting to the Court*.  The Monitor shall provide regular Reports

12   and Recommendations to the Court in the following manner:

13            a.    Within 90 days after the Effective Date, and every 90 days

14                 thereafter through the end of the Term, the Monitor shall file on

15                 the case docket a Report and Recommendation regarding

16                 Defendants' substantial compliance with the June 27, 2017 and

17                 July 30, 2018 Orders, or other Court orders issued during the

18                 Term, as well as any recommendations for steps necessary to

19                 remedy any non-compliance.  If necessary, the Monitor may

20                 seek a reasonable extension of time to file her Report and

21                 Recommendation.  The Monitor's First Report and

22                 Recommendation shall also discuss Defendants' responses to

23                 the declarations Plaintiffs filed on July 19, 2018 [Doc. ## 475

24                 to 475-7] and Plaintiffs' reply thereto [Doc. ## 481 and 481-1],

25                 and opine on the extent (if any) to which Defendants have

26                 rebutted Plaintiffs' evidence.  The geographical scope of the

27                 Monitor's duties shall not be expanded in the absence of a

28                 Court Order, following a hearing on a duly noticed motion filed

by Plaintiffs. The Monitor shall append to her Reports and Recommendations any documents that the Monitor deems important for the conclusions therein ("Appendix").   If applicable, the Monitor's Reports and Recommendations may also address any suspected breaches of the *Flores* Agreement that have been brought to her attention but which are beyond the scope of the June 27, 2017 and July 30, 2018 Orders.  The Monitor may, in her discretion, meet with the Parties to discuss these suspected breaches and/or request briefing and evidence and hold a hearing regarding (1) whether the scope of her monitoring functions should be expanded to cover such suspected breaches and/or (2) any proposals for curing them. The parties shall file on the docket all documents submitted for the Monitor's consideration.  The Monitor shall have the sole discretion to determine the appropriate procedures for briefing and hearing arguments and evidence regarding such suspected breaches, so long as those procedures and measures are not inconsistent with this Order.

b.   At least twenty-eight (28) days before filing the Report and Recommendation and Appendix on the case docket, the Monitor shall serve the Parties with copies of each, and the Parties shall have 10 days from the date of service to submit to the Monitor written comments to the Report and Recommendation.  In her discretion, the Monitor may modify the Report and Recommendation in any manner suggested by a Party before filing it with the Court, although the Monitor has no obligation to explain her response (or lack thereof) to any

-19-

1  suggestions.   The Monitor shall file the Parties' written
2  comments together with the Report and Recommendation.

3      c.    If the Monitor has a good faith basis to believe that there is a
4  significant violation of the Court's Orders that cannot
5  reasonably be addressed through a Report and
6  Recommendation due to its exigency, the Monitor shall file on
7  the case docket an interim report and recommendation ("Interim
8  Report and Recommendation"), including any
9  recommendations for steps necessary to improve Defendants'
10  compliance and the reason for the urgency.  Prior to filing the
11  Interim Report and Recommendation, the Monitor shall afford
12  the Parties a reasonable opportunity to be heard and to
13  expeditiously cure any violation.

14      d.    Nothing in this Order limits the Monitor's ability to notify the
15  Parties jointly of issues relating to the discharge of her duties
16  through reasonable means, including in-person or telephonic
17  meetings, status conferences, or correspondence.   Nor shall
18  anything in this Order limit the Monitor's ability to promptly
19  notify the Parties of violations of the Court's Orders that, due to
20  their exigency, should not be addressed on the normal timeline
21  for Reports and Recommendations.

22      2.    *Judicial Review*. The Court adopts the review procedures and time
23  lines set forth in Federal Rule of Civil Procedure 53(f) and incorporates them
24  herein by this reference.   Any Party seeking review of any finding or
25  recommendation of the Monitor shall comply with Rule 53(f).

26      3.    *Dispute Resolution*.   In the event Class Counsel alleges that
27  Defendants have failed to comply with the Court's Orders, the following procedure
28  shall apply:

-20-

a.     Class Counsel shall provide Defendants and the Monitor with a written statement describing the alleged non-compliance and specifying the portion(s) of the June 27, 2017 Order, the July 30, 2018 Order, and/or this Order that Defendants allegedly violated ("Notice of Non-Compliance"). Defendants shall provide a written statement responding to the alleged violation within 14 calendar days from receipt of the Notice of Non-Compliance and, within 21 calendar days from the Notice of Non-Compliance, counsel for the Parties shall meet and confer in a good faith effort to resolve their dispute informally.

b.     In the event that the Notice of Non-Compliance cannot be resolved informally within the time period set forth herein, counsel for the Parties shall request that the Monitor mediate the dispute. If the dispute has not been resolved within 14 days of referral to the Monitor, Class Counsel may request that the Court issue an order requiring compliance. Thereafter, the Monitor may file her recommendations concerning the dispute within a time frame to be established after conferring with the Court. In an emergency, Class Counsel may request that the Monitor and the Court waive the time periods set forth in Section D.3 of this Order.

**E.    MISCELLANEOUS PROVISIONS; RETENTION OF JURISDICTION**

1.    *Confidentiality of Information.* The Protective Order governing this litigation [Doc. # 270] shall continue to apply to all documents or information produced by Defendants pursuant to this Order. Any individual who assists the Monitor must agree to be bound by the terms of the Protective Order and execute the Acknowledgment of Protective Order for Discovery. The Monitor may, in her

discretion, share documents or information produced by Defendants with Class Counsel to the extent it is in furtherance of the performance of her duties under this Order.

      2.     *Cooperation of Parties*.  The Parties and the Juvenile Coordinators shall cooperate in good faith with the Monitor to facilitate the performance of her duties.

      3.     *Preservation of Materials*.  The Monitor shall preserve and, where appropriate, file those materials reflecting the essential activities she and any of her aides perform in carrying out the monitoring duties.  The Monitor shall file on the case docket all requests for modification of this Order and all status reports.

      4.     *Retention of Jurisdiction; Amendments*.  The Court retains jurisdiction to enforce this Order and to amend it for good cause.

**IT IS SO ORDERED.**

DATED:  October 5, 2018

DOLLY M. GEE
UNITED STATES DISTRICT JUDGE

-22-