JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation

WILLIAM C. SILVIS
Assistant Director, District Court Section
Office of Immigration Litigation

SARAH B. FABIAN
Senior Litigation Counsel, District Court Section
Office of Immigration Litigation
    P.O. Box 868, Ben Franklin Station
    Washington, D.C. 20044
    Tel:  (202) 532-4824
    Fax:  (202) 305-7000
    Email:  sarah.b.fabian@usdoj.gov

Attorneys for Defendants

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY LISETTE FLORES; *et al.*,<br><br>              Plaintiffs,<br><br>         v.<br><br>JEFFERSON B. SESSIONS III,<br>Attorney General of the United States;<br>*et al.*,<br><br>              Defendants. | Case No. CV 85-4544<br><br>**Defendants' Ex Parte Application for Partial Reconsideration of Order Appointing Special Master/Independent Monitor;**<br><br>**Memorandum of Points and Authorities;**<br><br>**Declaration.**<br><br>**[Hon. Dolly M. Gee]** |

**<u>Defendants' Ex Parte Application for</u>**
**<u>Partial Reconsideration of Order Appointing</u>**
**<u>Special Master/Independent Monitor</u>**

Pursuant to Local Rule 7-19, Defendant the U.S. Department of Health and Human Service, Office of Refugee Resettlement ("ORR) hereby applies ex parte for partial reconsideration of this Court's October 5, 2018 Order Appointing Special Master/Independent Monitor ("Monitoring Order"). Specifically, ORR asks the Court to reconsider the Monitoring Order to the extent that it expands, without notice, the scope of the monitor's oversight to include ORR's compliance with this Court's July 30, 2018 order finding ORR in partial breach of the *Flores* Settlement Agreement. The relief is being requested on an ex parte basis because ORR had no notice or opportunity to respond to the appointment of a monitor to oversee ORR prior to the issuance of the Monitoring Order late in the day on October 5, 2018, which was the Friday before a federal holiday, and because effective date of this unexpected Monitoring Order against ORR is less than two weeks later on October 17, 2018.

Counsel for Plaintiffs are:

CARLOS R. HOLGUÍN (Cal. Bar No. 90754)
PETER A. SCHEY (Cal. Bar No. 58232)
Center for Human Rights & Constitutional Law
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Email: crholguin@centerforhumanrights.org
pschey@centerforhumanrights.org

Leecia Welch (Cal. Bar No. 208741)
National Center for Youth Law
405 14th Street, 15th Floor
Oakland, CA 94612
Telephone: (510) 835-8098
Email: lwelch@youthlaw.org

Holly S. Cooper (Cal. Bar No. 197626)
Co-Director, Immigration Law Clinic
Carter C. White (Cal. Bar No. 164149)
Director, Civil Rights Clinic
University of California Davis School of Law
One Shields Ave. TB 30
Davis, CA 95616
Telephone: (530) 752-5440
Email: hscooper@ucdavis.edu
ccwhite@ucdavis.edu

Counsel for Defendants, Sarah B. Fabian left a telephone message for counsel for Plaintiffs Peter Schey on October 12 2018, but received no return call. *See* Declaration of Sarah B. Fabian ¶ 3 (attached hereto). Counsel for Defendants also reached out to counsel for Plaintiffs Peter Schey, Carlos Holguin, and Holly Cooper, by email on October 12, 2018 and offered to discuss the subject of this Application. *Id.* ¶ 4. Mr. Holguin responded by stating: "Please advise the Court that Plaintiffs oppose your ex parte application and request five business days following service of the ex parte application to present written arguments in support of their opposition." *Id.* Given that the effective date of the Monitoring Order is October 17, 2018, Defendants oppose Plaintiffs' request for five business days to respond to Defendants' Application. *Id.* ¶¶ 5-6. If the Court is inclined to

grant Plaintiffs five business days to respond, Defendants ask that the Court stay the effective date of the Monitoring Order with regard to ORR until the Court has the opportunity to rule on Defendant's Application.

This ex parte application is based upon this Application, the attached memorandum of points and authorities, the attached declaration, and the records in this case.

DATED:       October 12, 2018          Respectfully submitted,

                                        JOSEPH H. HUNT
                                        Assistant Attorney General
                                        Civil Division
                                        WILLIAM C. PEACHEY
                                        Director, District Court Section
                                        Office of Immigration Litigation
                                        WILLIAM C. SILVIS
                                        Assistant Director, District Court Section
                                        Office of Immigration Litigation

                                        */s/ Sarah B. Fabian*
                                        SARAH B. FABIAN
                                        Senior Litigation Counsel
                                        Office of Immigration Litigation
                                        District Court Section
                                        P.O. Box 868, Ben Franklin Station
                                        Washington, D.C. 20044
                                        Tel: (202) 532-4824
                                        Fax: (202) 305-7000
                                        Email: sarah.b.fabian@usdoj.gov

                                        *Attorneys for Defendants*

# TABLE OF CONTENTS

I. Introduction……………………………………………………………..1

II. Background……………………………………………………………….3

     A. Enforcement Proceedings Against HHS…………………………..3

     B. Enforcement Proceedings against CBP and ICE…………….….9

III. Argument……………………………………………………………...11

    A. Legal Standard for Reconsideration………………………………11

    B. The Court Should Reconsider The Scope of Its
       Monitoring Order to Exclude ORR………………………………12

IV. Conclusion……………………………………………………………..16

# <u>TABLE OF AUTHORITIES</u>

*Bailey v. Roob*,
      567 F.3d 930 (7th Cir. 2009)……………………………………………12

*Brown v. United States*,
      2011 WL 333380 (C.D. Cal. Jan. 31, 2011)…………………………..11

*Daghlian v. DeVry Univ., Inc.*,
      582 F. Supp. 2d 1231 (C.D. Cal. 2007)………………………………11

*Hook v. State of Ariz.*,
      120 F.3d 921 (9th Cir. 1997)……………………………………………13

*Kelly v. Wengler*,
      822 F.3d 1085 (9th Cir. 2016)…………………………………………...12

*L.V.M. v. Lloyd*,
      318 F.Supp.3d 601 (S.D.N.Y. 2018)…………………………………..7

*United States v. Suquamish Indian Tribe*,
      901 F.2d 772 (9th Cir. 1990)……………………………………………13

## <u>Memorandum of Points and Authorities</u>

## I.     INTRODUCTION

Defendant the U.S. Department of Health and Human Service, Office of Refugee Resettlement ("ORR"), hereby moves for partial reconsideration of the Court's October 5, 2018 Order Appointing Special Master/Independent Monitor, ECF No. 494 ("Monitoring Order"), to the extent that this order without notice, and with an effective date less than two weeks after issuance, expands the scope of the monitor's oversight to include ORR's compliance with this Court's July 30, 2018 order finding ORR in partial breach of the *Flores* Settlement Agreement. To be clear, all Defendants continue to object to the imposition of the sanction of a monitor without any finding that any Defendant is in breach of the Agreement by clear and convincing evidence, and without any basis to conclude that any "exceptional condition" exists that would justify the Monitor's appointment. However, reconsideration is appropriate as to ORR because while U.S. Customs and Border Protection ("CBP"), and U.S. Immigration and Customs Enforcement ("ICE"), have had the opportunity to raise their arguments in opposition to the appointment of a monitor before this Court, thus providing Defendants CBP and ICE the ability to readily appeal this Court's Monitoring Order, the sanction of a special monitor is imposed on ORR in the Monitoring Order despite the facts that Plaintiffs never requested such a monitor in the underlying enforcement motion against ORR, and

ORR had no notice that the Court was considering whether to appoint a monitor, and no opportunity to defend against the imposition of this sanction.

In imposing this sanction against ORR, the Court relies entirely on a single declaration in a separate case to which ORR had no opportunity to respond. And unlike CBP and ICE, ORR has been provided no opportunity to develop evidence of its own compliance through internal monitoring by a Juvenile Coordinator. This single declaration in a separate case provides no basis at all to impose the sanction of a monitor on ORR in this litigation. Further, even if it were an adequate basis to impose such a sanction, the scope of any resulting monitoring should be limited to the allegations of continued breach addressed in that declaration.

Accordingly, ORR requests that this Court reconsider its Monitoring Order to the extent that it includes broad monitoring of ORR's compliance with the Court's July 30 Order based only on this minimal and limited evidence of any purported breach of the Agreement by ORR. Instead, ORR asks the Court to remove ORR from the scope of the existing Monitoring Order, and set a briefing schedule which would permit ORR to respond to the declaration the Court relies on in its finding of noncompliance against ORR. Following that briefing, if the Court continues to believe that monitoring is necessary, then ORR should be permitted to conduct a period of internal monitoring by a Juvenile Coordinator as was permitted for CBP and ICE. Finally, at a minimum, ORR asks that if the Court proceeds with allowing

the monitor to oversee ORR, then the Court should make clear that any such monitoring is expressly limited to the allegations of noncompliance contained in the declaration upon which the Court's Monitoring Order relies with regard to ORR.

## II.   BACKGROUND

### A. Enforcement Proceedings Against HHS

On April 16, 2018, Plaintiffs filed a motion to enforce the *Flores* Settlement Agreement (ECF No. 409), claiming that ORR was in breach of the Agreement in three ways: (1) improperly placing class members in Residential Treatment Centers ("RTCs"), staff-secure facilities, and secure facilities; (2) administering psychotropic drugs to Class Members without first obtaining a court order or the informed consent of a person authorized by state law to approve such decisions; and (3) unnecessarily prolonging Class Members' detention in ORR facilities. To cure these alleged breaches, Plaintiffs requested that the Court order a number of procedural remedies that were not otherwise provided for within the Agreement.

The Government opposed Plaintiffs' motion on numerous grounds (ECF No. 425). First, the Government argued that the Court should not impose on ORR procedural remedies that are contained nowhere within the terms of the Agreement itself. Second, the Government contended that ORR's use of RTCs, staff-secure facilities, and secure facilities, was not in violation of the Agreement. Third, the Government asserted that ORR's medication practices comply with the Agreement.

And fourth, the Government argued that ORR's practices for the release of class members does not violate the Agreement.

On July 30, 2018, this Court granted in part and denied in part Plaintiffs' motion to enforce. Order, July 30, 3018, ECF No. 470. As a preliminary matter, the Court noted that Plaintiffs sought procedural remedies not otherwise set forth in the Flores Agreement, and denied Plaintiffs' request for such remedies, concluding that "on this motion to enforce, Plaintiffs are entitled to only such relief as is explicitly or implicitly authorized by the Flores Agreement." *Id.* at 2-6. Notably, in so finding, the Court concluded that ordering such extraneous relief, outside the contours of what is required by the Agreement itself, would require that the court apply the "clear and convincing evidence" standard. *Id.* at 3-4. The Court also concluded that the TVPRA did not supersede any of the provisions of the Flores Agreement at issue in Plaintiffs' motion, "because the two can be easily reconciled and Congress did not explicitly abrogate Class Members' rights under the Agreement." *Id.* at 9.

The Court then turned to Plaintiffs' specific allegations of breach. First, the Court analyzed Plaintiffs' claim that ORR violated the Agreement in making its placement decisions. *Id.* at 9-20. With regard to Shiloh RTC, the Court concluded that the level of security at that facility necessitated a finding that a minor presents a risk of harm to self, others, or the community before a minor could remain in, or be placed at, the facility. *Id.* at 10. , The Court ordered Defendants to: 1) transfer all

class members out of Shiloh RTC unless a licensed psychologist or psychiatrist has determined or determines that a particular class member poses a risk of harm to self or others; 2) cease employing at Shiloh RTC any security measures that are not necessary for the protection of minors or others, such as the denial of access to drinking water; and 3) permit Class Members at Shiloh RTC to "talk privately on the phone, as permitted by the house rules and regulations." *Id.* at 13-14.

The Court also evaluated whether ORR provided proper notice and opportunity to be heard when placing class members into secure or medium-secure facilities. *Id.* at 15-20. The Court cited to Declarations provided by Plaintiffs alleging that class members had not received imminent notice, *Id.* at 16-17, and found that Defendants' policy contained some grounds that were an improper basis for placement into a secure facility. *Id.* at 19.  On this point then, the Court order Defendants: 1) to comply with Paragraph 24C by providing each Class Member with a written notice of reasons for placing him or her in a secure facility, staff-secure facility, or an RTC within a reasonable time of ORR's placement decision in a language that the Class Member understands; and 2) "to remove from a secure facility any Class Member who was placed or whose placement has been maintained there solely because: the Class Member "may be chargeable" (as opposed to "is chargeable") with an offense; the Class Member reported gang involvement or displayed gang affiliation while in care and Defendants lack probable cause to

5

believe that the individual committed any other specified offense; and/or the Class Member self-disclosed gang involvement prior to placement in ORR custody that does not give rise to probable cause to believe that the individual has committed a specified offense." *Id.* at 19-20.

Second, the Court analyzed ORR's provision of psychotropic medications to class members at Shiloh RTC. *Id.* at 20-24. The Court held that under the Agreement, ORR was required to ensure that the shelter complies with Texas law and ensure administration of medication in accordance with such law. The Court analyzed state law and found that such law requires parental consent, or a court order. *Id.* at 20-21. The Court further found that there was evidence that ORR's practices at Shiloh did not comply with the Court's reading of what Texas law required. *Id.* at 21-23. Accordingly, the Court ordered ORR to "comply with all Texas child welfare laws and regulations governing the administration of psychotropic drugs to class members at Shiloh RTC, and specifically to "do the following before administering any psychotropic medication to a Class Member at Shiloh RTC: (1) provide the disclosure required by 26 Texas Administrative Code section 748.2253 to a "person legally authorized to give medical consent" as that term is defined in 26 Texas Administrative Code section 748.43(47), and (2) obtain the written consent of that person in accordance with 26 Texas Administrative Code sections 748.2001 and 748.2253. If Defendants are not able to obtain such informed written consent, then

they may not administer the psychotropic medication to the Class Member unless they obtain a court order authorizing them to do so under Texas law or there is an "emergency" as that term is defined in Texas Family Code section 266.009 and 26 Texas Administrative Code section 748.2257. If Defendants administer psychotropic medication on an emergency basis, then Defendants shall adhere to all of the notification and documentation requirements imposed by Texas Family Code section 266.009 and 26 Texas Administrative Code section 748.2257." *Id.*at 23-24.

Finally, the Court analyzed whether ORR's release procedures violate the Agreement. *Id.* at 24-30. In general, the Court found that "ORR does not violate the Flores Agreement merely because it unilaterally determines the suitability criteria for potential sponsors." *Id.* at 25. The Court also found that generally ORR's release practices did not constitute unreasonable delay, and in many instances "appear to be reasonably calculated to protect Class Members from 'harm or neglect' and to ensure that they have an adequate 'standard of care.'" *Id.* at 25-26. The Court did find, however, that some of ORR's practices violate the Agreement. Specifically, the Court found that director review[1] created unnecessary delay in certain instances, *Id.* at 27-29, and ordered ORR "to cease requiring ORR Director or designee approval prior to release of Class Members who: (1) were previously placed in secure or staff-

---

[1] At the time of the Court's Order, Director review had ceased pursuant to the Order in *L.V.M. v. Lloyd,* 318 F.Supp.3d 601 (S.D.N.Y. 2018).

secure facilities but have since been transferred to less restrictive settings; (2) prevailed on their Flores bond hearings; and/or (3) were placed in secure or staff-secure facilities based on incomplete, inaccurate, or erroneous information." *Id.* at 29. The Court also found that a blanket policy requiring post-release services to be in place could violate the Agreement in some cases, and ordered ORR "to cease uniformly requiring post-release services to be in place before the release of a Class Member to a sponsor. Such detention shall be permitted if and only if ORR conducts an individualized assessment and determines that, given the particularized needs of the Class Member, the sponsor would not be a suitable custodian if such post-release services were not in place prior to release." *Id.* at 29-30.

On September 27, 2018, Defendants filed a notice of appeal of the Court's July 30, 2018 Order to the U.S. Court of Appeals for the Ninth Circuit. ECF No. 490. On October 10, 2018, Plaintiffs filed a cross-appeal of this order. ECF No. 496.

On October 5, 2018, this Court issued its Monitoring Order, and without warning to ORR, appointed the monitor to have oversight of ORR's compliance with this Court's July 30, 2018 order. The Court's sole basis for this appointment was a declaration filed in a separate matter, which the Court stated "attests that ORR has failed to transfer any Class Members out of Shiloh RTC or modify the agency's policies regarding the administration of psychotropic medication to Class

Members." Monitoring Order at 5-6. Notably, ORR never had any opportunity to respond to this minimal evidence in the course of that separate litigation.

### B. Enforcement Proceedings against CBP and ICE

At the same time that the above motion was being considered by this Court, the Court also was overseeing the resolution of an unrelated enforcement motion filed by Plaintiffs on May 29, 2016 against CBP and ICE. ECF No. 201. That motion alleged breaches of the settlement agreement related to conditions at CBP facilities, and related to ICE's procedures and ICE family residential centers, and sought the appointment of a special monitor in conjunction with those alleged breaches. Defendants opposed Plaintiffs' motion. ECF No. 208. During the course of the ongoing litigation on this motion, Defendants ICE and CBP argued repeatedly that the Court should not impose the remedy of appointing a special monitor unless it found that Defendants were in breach of the settlement agreement by "clear and convincing" evidence. *See* ECF No. 256 at 2 n.1; ECF No. 268 at 7.

On June 27, 2017, the Court issued an order finding Defendants ICE and CBP in breach of the Agreement. ECF No. 363. The Court explicitly rejected Defendants' contention that the Court should apply the clear and convincing standard, finding that in their motion, "Plaintiffs make no attempt to hold Defendants in civil contempt." ECF No. 363 at 3. In so holding, however, the Court did not address Plaintiffs' request that the Court appoint a special monitor, and the Court did not

order the appointment of a special monitor at that time. *Id.* at 32-33. Instead, the Court ordered that Defendants ICE and CBP appoint a Juvenile Coordinator in accordance with Paragraph 24.A of the Agreement, and that the Juvenile Coordinator should then be responsible for monitoring compliance with the Court's order and with the Settlement Agreement. *Id.*

Following that order, CBP and ICE each appointed a Juvenile Coordinator, and each Juvenile Coordinator submitted quarterly reports to the Court. Following a year of monitoring this this fashion, the Court held a status conference on July 27, 2018, and at that status conference stated its intent to appoint a special master/independent monitor because of the conflicting evidence submitted by Plaintiffs, and by ICE and CBP with regard to the compliance of Defendants ICE and CBP with the Agreement. ECF No. 469. At that status conference, counsel for the government reiterated Defendants' objections that a monitor should not be appointed unless the Court found Defendants in breach under the heightened clear and convincing evidentiary standard, but the Court again rejected this argument. Following several submissions by Plaintiffs and by Defendants ICE and CBP at the request of the Court, the Court issued its Monitoring Order.

### III.   ARGUMENT

#### A. <u>Legal Standard for Reconsideration</u>

The Local Rules require in order to obtain reconsideration of a Court's order, a party must show: "(a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision." Civ. L.R. 7-18. "Motions for reconsideration are disfavored and rarely granted." *Brown v. United States*, 2011 WL 333380, *2 (C.D. Cal. Jan. 31, 2011). "Whether to grant a motion for reconsideration under Local Rule 7-18 is a matter within the court's discretion." *Daghlian v. DeVry Univ., Inc.*, 582 F. Supp. 2d 1231, 1251 (C.D. Cal. 2007).

Here, Defendant ORR meets the standard for reconsideration because ORR had no opportunity in the underlying litigation to object to the imposition of a monitor to oversee its compliance with the Agreement. Specifically, no such remedy was ever requested by Plaintiffs against ORR, and the Court never indicated that it was considering appointing a monitor to oversee ORR. Thus, at the time of the Court's Monitoring Order, even with reasonable diligence, ORR could not have raised to the Court its arguments against such an appointment because it had no idea

that any such appointment was contemplated. Relatedly, ORR also had no notice or opportunity to be heard regarding the appointment of a monitor as required by Rule 53(b)(1). Accordingly, reconsideration of this Court's Monitoring Order with regard to its appointment of a monitor against ORR is appropriate.

## B. The Court Should Reconsider The Scope of Its Monitoring Order to Exclude ORR

In this case, the appointment of a monitor is being used as a coercive remedy to ensure Defendants' future compliance with the Agreement. Notably, nothing in the *Flores* Agreement provides for independent monitoring of Defendants' compliance with its terms. By imposing a remedy for breach that is outside the terms of the Agreement, the Court is in effect imposing a sanction on Defendants for breach of the Agreement, and such a remedy should only be imposed if the Court finds that Defendants are in breach of the Agreement by clear and convincing evidence. *See Bailey v. Roob*, 567 F.3d 930, 934-35 (7th Cir. 2009) ("The parties agree that this circuit's case law requires the party seeking sanctions to demonstrate that the opposing party is in violation of a court order by clear and convincing evidence."); *Kelly v. Wengler*, 822 F.3d 1085, 1097 (9th Cir. 2016) (discussing how court-ordered remedies designed to ensure compliance with a settlement agreement, and to cure breach, are properly considered under civil contempt standards). Indeed, this Court specifically recognized that this is the standard that applies where the Court is asked to impose remedies for breach of the Agreement that are not

12

"explicitly or implicitly authorized by the *Flores* Agreement." Order, ECF No. 470, at 3. And the Court relatedly declined to find that ORR was in breach under this heightened standard. *Id.*

In light of the fact that this Court's appointment of a monitor results from allegations of breach of a settlement agreement, the Court's reliance on case law providing for a monitor in circumstances not involving a consent decree is misplaced. *See* Monitoring Order at 6 (citing Fed. R. Civ. P. 53(a); *Hook v. State of Ariz.*, 120 F.3d 921, 926 (9th Cir. 1997); *United States v. Suquamish Indian Tribe*, 901 F.2d 772, 774–75 (9th Cir. 1990)). In the cited cases, the Ninth Circuit found an appointment of a monitor was warranted under the "exceptional conditions" provision of Rule 53 because of the complexity of the cases and a need to monitor because of previous noncompliance by the Defendants with the court's order. *Hook*, 120 F.3d at 926; *Suquamish Indian Tribe*, 901 F.2d at 774. But neither of those cases considered a situation where a monitor was being appointed to oversee compliance with a consent decree, agreed to by the parties, in which the parties had already specifically delineated the rights and obligations of the parties, the manner in which the decree was to be monitored, and the method by which the parties to the agreement could seek redress for violations of the Agreement. In a case such as this one, mere findings of "complexity" and "ongoing disputes" should not be considered sufficient "exceptional conditions" to warrant imposition of a monitor. Because this

13

Court has explicitly declined to find ORR in breach by clear and convincing evidence, the Court should reconsider its appointment of a monitor with regard to ORR.

Further, even if the "exceptional conditions" standard does apply here without regard to the fact that this case concerns a consent decree, the Court's findings in the Monitoring Order with regard to ORR do not establish that this standard has been met. The Court's sole stated basis for its appointment of a monitor with regard to ORR was its reference to a declaration filed in a separate matter, which the Court stated "attests that ORR has failed to transfer any Class Members out of Shiloh RTC or modify the agency's policies regarding the administration of psychotropic medication to Class Members." Monitoring Order at 5-6. The Court does not explain how this declaration establishes "complexity" or "ongoing disputes" with regard to ORR's compliance with the Agreement, particularly where ORR never had any opportunity to respond to this minimal evidence in the course of that separate litigation. Moreover, while ostensibly limited to the July 30 Order, the Appointment is expandable beyond even that order, allowing the Monitor to evaluate "other Court orders issued during the Term," and to discover new "potential breaches of the Flores Agreement that are beyond the scope of the . . . July 30, 2018 Orders." Monitoring Order at 6-7. Even under the more lenient Rule 53(a) standard, there is no basis for the Court to appoint a monitor to oversee ORR's compliance with the Court's July

30 Order, or especially to expand even beyond such Order to other orders issued during the term of the appointment or to license additional investigations for breaches.

Finally, at a minimum, considering the procedural posture of this case with regard to ORR and the minimal evidence upon which the Court is relying to find that ORR is not in compliance with the Court's July 30 Order, the Court should reconsider its order to either: 1) allow ORR the same opportunity for internal monitoring and the development of evidence of compliance by a Juvenile Coordinator before an outside monitor is appointed that was provided to ICE and CBP; or 2) specifically limit the Monitor's oversight with regard to ORR to Shiloh, and to the specific assertions of non-compliance contained in the declaration upon which the Court relies.

Accordingly, ORR requests that this Court reconsider its Monitoring Order to the extent that it includes broad monitoring of ORR's compliance with the Court's July 30 Order based only on this minimal and limited evidence of any purported breach of the Agreement by ORR. Instead, ORR asks the Court to remove ORR from the scope of the existing Monitoring Order, and set a briefing schedule which would permit ORR to respond to the declaration the Court relies on in its finding of noncompliance against ORR. Following that briefing, if the Court continues to believe that monitoring is necessary, then ORR should be permitted to conduct a

period of internal monitoring by a Juvenile Coordinator as was permitted for CBP and ICE. Finally, at a minimum, ORR asks that if the Court proceeds with allowing the monitor to oversee ORR, then the Court should make clear that any such monitoring is expressly limited to the allegations of noncompliance contained in the declaration upon which the Court's Monitoring Order relies with regard to ORR.

## IV.    CONCLUSION

For all of the above reasons, the Court should reconsider its Monitoring Order to exclude ORR from the scope of monitoring. Instead, the Court should set a briefing schedule which would permit ORR to respond to the declaration the Court relies on in its finding of noncompliance against ORR. Following that briefing, if the Court continues to believe that monitoring is necessary, then ORR should be permitted to conduct a period of internal monitoring by a Juvenile Coordinator as was permitted for CBP and ICE. Finally, at a minimum, if the Court proceeds with allowing the monitor to oversee ORR, then the Court should make clear that any such monitoring is expressly limited to the allegations of noncompliance contained in the declaration upon which the Court's Monitoring Order relies with regard to ORR.

DATED:  October 12, 2018

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation

WILLIAM C. SILVIS
Assistant Director, District Court Section
Office of Immigration Litigation

BY:  */s/ Sarah B. Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
Office of Immigration Litigation
District Court Section
U.S. Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel:  (202) 532-4824
Fax:  (202) 305-7000
sarah.b.fabian@usdoj.gov

Attorneys for Defendants

17

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

DATED:  October 12, 2018          */s/ Sarah B. Fabian*
                                  SARAH B. FABIAN
                                  Senior Litigation Counsel
                                  District Court Section
                                  Office of Immigration Litigation
                                  Civil Division, U.S. Department of Justice