# Exhibit 9

## [Provisionally Filed Under Seal]

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 2 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 508-12   Filed 10/19/18   Page 52 of 116   Page ID
#:24878

**DECLARATION OF CECILIA SACO IN SUPPORT OF** ▓▓▓▓▓▓ **DENIAL TO SPONSOR** ▓▓▓▓▓▓

▓▓▓ **BY ORR**

I, Cecilia Saco, declare as follows:

1. I write this declaration in support of ▓▓▓▓▓ regarding her denial by ORR to sponsor her brother ▓▓▓▓▓▓ I make all of the statements herein of my personal knowledge, except as to those matters based on information and belief, which I believe to be true. I believe the statements herein to be true and if called to testify as a witness thereto, could do so competently under oath.

2. I am a retired Supervising Social Worker with Los Angeles County Department of Children and Family Services' (DCFS) Special Immigrant Status (SIS) Unit. I was a Los Angeles County employee for 32 years and 5 months. I was a Supervising Children's Social Worker for the past 28 years and have extensive experience working with abused and neglected children. I have a Master degree in Social Work and I have received training on Intervention in Child Maltreatment & Domestic Violence from UCLA's School of Public Policy & Social Research, Department of Social Welfare.  Also, I have extensive child welfare and immigration experience working with undocumented immigrant children and families. I have managed a specialized unit within DCFS responsible for the filing of over 3000 Special Immigrant Juvenile Status (SIJS) applications with USCIS on behalf of DCFS undocumented immigrant dependent children. I was also the designated U Visa Certifier for DCFS for the period of 2008-2018.

3. During my tenure with DCFS, I investigated hundreds of reports of child abuse and neglect. Such investigations typically included evaluating children's relatives and their homes in an effort to determine whether a child could be safely placed with family, rather than in taxpayer-funded foster or group homes.

4. I am a native Spanish-speaker; I am bicultural as well, and I was accordingly tasked with investigating many monolingual Spanish-speaking families. As part of my duties with DCFS, I also had occasion to discuss child protection practices with colleagues from other states and counties; I believe DCFS's policies and practices with respect to evaluating the suitability of family members to care for children to be fairly typical of child welfare practices nationwide.

5. I have been asked to give an opinion regarding the suitability of ▓▓▓▓▓ and ▓▓▓▓▓▓▓ to care for their brother, ▓▓▓▓▓, whom I understand has currently been detained by the Office of Refugee Resettlement ("ORR") at the Shiloh Residential Treatment Center in Texas. I have reviewed ORR's files for ▓▓▓▓ and its

Page 1 of 4

Case 2:85-cv-04544-DMG-AGR  Document 510-1  Filed 10/30/18  Page 3 of 95  Page ID
Case 2:85-cv-04544-DMG-AGR  Document 505-13 Filed 10/19/18  Page 53 of 116  Page ID
#:24879

home study of ██. These were provided by Carlos Holguín, one of the lawyers for the
plaintiffs in *Flores v. Sessions*. On July 9, 2018, I visited the home of ████ and ██████
████, in Los Angeles, California. I spoke with ████ and ████████ at length, and
following standard DCFS practices and standards, evaluated their suitability to serve as
custodians for ████.

6. ORR's file indicates that it denied ████ custody of her brother because of two concerns:
   First, that her roommate's brother, who was present at the time ORR's investigator
   visited the home, failed to appear for fingerprinting; and second, that ████ was unlikely
   to address ████'s mental health needs following release.

7. With respect to the first of ORR's concerns, when any adult applies with DCFS to
   become a resource family, he/she and all adult members of the household complete the
   same paperwork to live scan (fingerprint). Applicants don't have to have documented
   immigration status, but they do need appropriate ID to live scan (*matricula consular* or
   passport in the case of undocumented people). DCFS sends the live scan paperwork to
   three data bases: California Department of Justice ("DOJ"), FBI and California CACI (Child
   Abuse Central Index). When the applicant reports he/she has lived out of state, DCFS
   also checks the appropriate out-of-state CACI. To the best of my knowledge, DCFS does
   not share live scan information with ICE except pursuant to court order. It is my
   understanding that California DOJ sometimes shares information with ICE on a case-by-
   case basis, but that ICE needs a court order to access California DOJ records.

8. ████ assured me that her roommate's brother does not live in the home. She stated
   that she told ORR's investigator, Brenda, the same. During my visit, the roommate's
   brother was not present, nor did I observe anything in the home to indicate that he in
   fact lives there. I explained to ████ that if I had a reason to suspect that an adult male
   was residing in the home and would not appear for fingerprinting, I would need a letter
   from his actual landlord verifying that he was living elsewhere. ████ readily agreed to
   get such a letter, or similar proof.

9. I then asked ████ if ORR's investigator had been similarly open to the family's clearing
   up questions about her roommate's brother's residence. ████ reported that ORR had
   given her no chance to change its belief that her roommate's brother lived in ████'s
   home.

10. I next discussed with ████ and ████████ whether they were open to seeking mental
    health services for ████. ████ initially assured me that ████ is not "crazy" and does
    not need mental health care. In my experience, ████'s equating mental health concerns
    with psychosis is fairly typical in Latin America, where cultural attitudes and limited
    education engender a reluctance to seek help for common mental health conditions

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 4 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 501-44   Filed 10/19/18   Page 54 of 116   Page ID
#:24880

such as anxiety and depression. I explained that many people who are not "crazy" nonetheless have mental health problems that should be treated, and that they should be open to the possibility that ████ too, may such have such mental health needs. ████ and ████████ indicated they understood and agreed to have ████ treated for any mental health issues he may have following release. I also asked ████ if anyone from ORR had discussed ██████'s mental health with her. She said no one had.

11. ██████ also related that ORR had given her nothing in writing explaining its reasons for refusing to release ██████ to her, and that as far as she knew, she had no right to a hearing, administrative appeal, or other procedure by which the family might seek to change ORR's decision. In my opinion, ORR's denying ████████████'s custody failed to meet accepted child welfare standards in several particulars.

12. First, standard child welfare practice requires that families receive a detailed, written explanation of why they are being denied custody of a dependent minor. This gives the family guidance about how to cure any problems the child welfare investigator uncovers during a home evaluation. Unless a family member has committed major crimes such as murder, rape or sex-related offenses, child endangerment, willful cruelty, or similarly irremediable safety-risk, standard child welfare practice is to encourage families to make any needed changes to reduce or eliminate concerns. This reflects the consensus among child welfare professionals that it is better to place children with their families whenever it is safe to do so.

13. Second, in county child welfare systems, social workers assess the caregivers' home, the caregivers' ability to care and provide for the child, and the caregiver's background check; finally they make recommendations. Our reports are reviewed by State legal counsel after which families are entitled to contest and rebut social workers' findings and recommendations. According to ████, however, ORR gave her no opportunity to appeal or otherwise contest ORR's decision to deny her ██████'s custody. I know of no child protection agency that is similarly empowered to issue final, unreviewable decisions regarding the suitability of family members to care for dependent children.

14. Third, ORR should have explained to the family that not all persons with mental health needs are psychotic, and that there is no shame in getting help for mental health problems. As noted, I often had to explain this to our Spanish-speaking families; I did not always succeed in convincing them, but in my experience the majority of families do understand this explanation when given a chance, and they thereafter follow through with seeing to it that a child receives needed mental health treatment. In the case of ████████████, if ████ was to be released to her, she assured me her willingness to look for mental health resources in her community, educate herself about the possible issues concerning her brother ██████, and to get the appropriate services for him, before a crisis may arise. In my opinion, if given the opportunity, ████ and ████████ would not

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 5 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 501-45   Filed 10/19/18   Page 55 of 116   Page ID
#:24881

neglect ▮▮▮▮ mental health needs.

15. If I was still working for DCFS, as long as I was presented with proof that the roommate's brother lives in a different residence, and I had the commitment of ▮▮▮▮ and ▮▮▮▮▮ to seek mental health services for ▮▮▮▮ I would release ▮▮▮▮ to his siblings. I would also continue to support the family after the release with the appropriate community resources to secure a permanent home for ▮▮▮▮.

I declare under penalty of perjury and the laws of the United States that the foregoing is true and correct.

Executed at Los Angeles, California on:

04/14/18
Date

Cecilia Saco

# Exhibit 15

# [Provisionally Filed Under Seal]

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 7 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 504-47   Filed 10/19/18   Page 89 of 116   Page ID
#:24915

1    I, ███████████████████, declare as follows:

2

3    1.      This declaration is based on my personal knowledge.  If called to testify in this

4    case, I would testify competently about these facts.

5    2.      I am 17 years old.  My alien registration number is ████████. I am currently

6    being held in ORR custody detained at the Yolo County Juvenile Detention Center. This

7    is a jail. The children are detained here and no one is free to leave.

8    3.      I have been detained in this facility since August 25, 2018. This is the first time I

9    have ever been in immigration custody.

10   4.      Before being detained here, I was being held in a county jail in Charlotte, North

11   Carolina. I was falsely accused of several criminal charges. After approximately three

12   months, all of the charges were dropped, but I was kept in county custody for an

13   additional four days, and then I was transferred to immigration custody.  I have never

14   before in my life been accused of any criminal conduct.

15   5.      I have never had any gang involvement, I have never displayed any gang

16   affiliation, and I have never given anyone here at Yolo or anywhere else any reason to

17   believe I have any gang involvement or affiliation. From what I understand about the

18   ORR detention system, to the extent I should be held in custody at all, the most

19   appropriate placement for me would be in a shelter, and not in a secure or staff-secure

20   facility.

21   6.      On Tuesday of this week, I witnessed two other youth fighting, and I reported this

22   to one of the guards. Instead of taking this report, the guard threatened me, saying "you

23   do not have any rights here. We can do whatever we want with you." He told me to stay

24   quiet and not to make this report.

25   7.      Since I have been held here at Yolo, I have witnessed guards physically abusing

26   the youths detained here. I have seen them use pepper spray three times on other youth

27   and each time it was unnecessary as the people were already in handcuffs with their hand

28

1

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 8 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 504-48   Filed 10/19/18   Page 90 of 116   Page ID
#:24916

1   behind their backs. Guards also unnecessarily place their knees on the heads of youth

2   who are lying on the ground.

3   8.    I am not permitted to have any private telephone conversations here at Yolo. My

4   social worker told me that I am not allowed to have private telephone calls because she

5   suspects that I would talk to people about gang activity. I have only been allowed to call

6   one person in North Carolina while I have been here. I have been denied access to the

7   telephone numbers of other individuals in North Carolina who might agree to serve as

8   sponsors for me; those numbers are on my cell phone and I have been denied access to it

9   and to the information on that phone).

10   9.    The food here at Yolo is very bad. When I arrived here almost a month ago I

11   weighed about 180 pounds, and now I weight 158 because I cannot eat most of the food

12   we are given. The food is often frozen and inedible. The vegetables are cold and lacking

13   in flavor. We are also prohibited from sharing food with other detainees; if we were to do

14   so we would be punished.

15   10.    The water in the showers here is much too hot and burns your skin, and there is no

16   way to regulate the water temperature in the shower.

17   11.    About two weeks ago, a group of us met with another social worker and raised the

18   issue of the fact that the soccer equipment here needs to be replaced. She told us that we

19   should not be requesting this, and like to other guards have said, "you don't have any

20   rights here."

21   12.    I have I declare under penalty of perjury that the foregoing is true and correct.

22   Executed on this 21st day of September, 2018, at Woodland, California.



27             CERTIFICATE OF TRANSLATION

2

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 9 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 504-9   Filed 10/19/18   Page 91 of 116   Page ID
#:24917

1   My name is _Suyapa Lainez_ and I swear that I am fluent in both the English and

2   Spanish languages and I translated the foregoing declaration from English to Spanish to

3   the best of my abilities.

4

5   Dated: September 21, 2018

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 10 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 35450   Filed 10/19/18   Page 92 of 116   Page ID
#:24918

# Exhibit 16

## [Provisionally Filed Under Seal]

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 11 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 505-1   Filed 10/19/18   Page 93 of 116   Page ID
#:24919

I, ███████ █ ███ declare as follows:

1.  This declaration is based on my personal knowledge.  If called to testify in this case, I would testify competently about these facts.

2.  I am 17 years old. My alien number is ███████. I am currently being held in ORR custody at the Yolo County Juvenile Detention Center.

### Notification

3.  I was apprehended by authorities in Texas after crossing the U.S. border. The immigration authorities there kept me for four days before transferring me to a shelter called BCC in Maryland; no one gave me any advanced notice about this transfer.

4.  After two weeks in the BCC shelter, I tried to escape by running through an open door but I was caught when I encountered an electrified fence. The next day early I was transferred to the NOVA center in northern Virginia.

5.  I was never told why I was being sent to NOVA. I do not remember being given any notice or explanation by the immigration authorities, I guess it was because I tried to escape.

6.  I stayed in NOVA for about a month. I went to school about four hours a day, and we were only ever allowed to go outside for about one or two hours per week. The amount of time we were allowed to be outside depended on our behavior. While there, I remember that one day I was playing with another kid. We were both taking our shoes off and throwing them in the air. On occasion, one of our shoes landed on one of the guards. We tried to explain that we did not intend to hit him but he was so angry that he did not listen. Because of this, the guards tried to put me in a green jacket which is used to restrict our movement. I resisted because I was just playing and was not trying to hit

1

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 12 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 505-12   Filed 10/19/18   Page 94 of 116   Page ID
#:24920

him with the shoes. This is the only reason that I can think of for why I was transferred to Yolo.

7.   No one ever explained to me why I was leaving NOVA. I was not given any notice that I was leaving, or any explanation as to why. I just remember that the next day after the shoe incident the guards woke me up at 3:00 am and told me that everything was ready for me to go.

8.   Now I have been told that I am being moved from Yolo, and they told me they are moving me on Tuesday, October 9th. I don't know why.

<u>Unnecessary Punishment</u>

9.   Three days after I arrived at Yolo, I was told to "cover" but I was never explained what "cover" meant. Because I didn't hit the ground, the guards sprayed pepper spray into my eyes. It was so painful that I passed out. I don't know if this was because of the pain or the spray but the only thing that I remember is that I woke up in the hospital.

10. On one occasion I had a problem with a kid here in Yolo. The guard took me away to a room after one kid threw food at me and I reacted. After that, while playing soccer, the same kid started giving me strange looks. The guard again took me to a room but this time asked me to give him my clothes. I did what he asked because I know how the guards are here but I asked if they would give me a blanket. They said they would, but instead they gave me the green jacket. I remember that that night was very cold. The people here do not care if you need something, because that night I asked for a blanket and they ignored me, knowing that it is cold and that they do not regulate the temperature.

2

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 13 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 504-3   Filed 10/19/18   Page 95 of 116   Page ID
#:24921

<u>Medication Compliance</u>

11. I am given medication to help me sleep here at Yolo. I do not have any family in the

U.S., and no one has contacted my family for permission to give me medication.

<u>Conditions</u>

12. Here in Yolo, I cannot shower because the water is so hot that it is making my hair fall

out.

13. The food here tastes bad, the only thing that I eat is fruit because the rest does not have

any flavor. I have lost weight since being in Yolo because I can't eat the food.

14. No one here speaks Q'eqchí. To make me understood I have to speak Spanish and that

make me feel uncomfortable because my Spanish is not my first language.

15. I cannot stand it here in Yolo, I have been detained for like a year but I am afraid for my

life if I am sent back to my home country.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this $8$

day of October, 2018, at Woodland, California.

———————————————————

## CERTIFICATE OF TRANSLATION

My name is Emily Child and I swear that I am fluent in both the English and

Spanish languages and I translated the foregoing declaration from English to Spanish to

the best of my abilities.

Dated: October 8, 2018          Emily Child

———————————————————

3

Case 2:85-cv-04544-DMG-AGR   Document 501-5   Filed 10/19/18   Page 96 of 116   Page ID
#:24922

# Exhibit 17

# [Provisionally Filed Under Seal]

Case 2:85-cv-04544-DMG-AGR    Document 510-1    Filed 10/30/18    Page 15 of 95    Page ID
Case 2:85-cv-04544-DMG-AGR    Document 505-15    Filed 10/19/18    Page 97 of 116    Page ID
#:24923

1    I, ███████████████████████████████, declare as follows:

2

3    1.    This declaration is based on my personal knowledge.  If called to testify in this

4    case, I would testify competently about these facts.

5    2.    I am 17 years old. I am from Guatemala City. I entered the United States on

6    January 4, 2018 with my brother ████████

7    3.    My brother and I were taken into immigration custody at Southwest Key in

8    Phoenix, Arizona. We were there for 25 days.

9    4.    We were released to our father in Greenbelt, Maryland. I remained with my father

10   for four months but unfortunately, I was arrested and sent to Children's Village staff

11   secure in New York.

12   5.    When I was at Children's Village, I missed my family all the time.

13   6.    I took a medication at Children's Village to help me sleep. I don't think my father

14   was told about the medication I was on.

15   7.    I had some trouble at Children's Village and so I was sent to Yolo.

16

17   **Yolo**

18   8.    I have been at Yolo for three months. I hate it here. The staff have abused me many

19   times. In fact, the staff have put me in handcuffs and thrown me onto the ground more

20   about ten times.  On one specific occasion, I didn't want to go into my room so four staff

21   members threw me to the ground and then they bent my arms, and it hurt a lot. They

22   handcuffed me and threw me into my cell and then removed the handcuffs once I was in

23   a cell.

24   9.    Another time, I covered the window slit with a piece of paper and then staff got

25   really angry.  Four or five staff members put on extra gear including protective vest and a

26   helmet, forced themselves into my room and then beat me.  They injured my right

27   shoulder, it was bleeding and painful.  I couldn't move my shoulder at all for two days. I

28   also had bruises all over my shoulders and legs.

1

**Page 103**

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 16 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 505-16   Filed 10/19/18   Page 98 of 116   Page ID
#:24924

10.    I take multiple medications. I think they are for sleep and anger. I do not know the name of the medications. I do not believe that my father knows about the medications I am on.

11.    When I talk to my father on the phone, I am in an open space not a private room.

12.    The water in the showers is scalding hot. Its burns my skin. The staff say that they can't change the temperature.

13.    I desperately want to get out of here. I want to be back with my father and brother. I miss them all the time.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 21 day of 9 , 2018, at ____Woodland____California.

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 17 of 95   Page ID
#:24925
Case 2:85-cv-04544-DMG-AGR   Document 501-7   Filed 10/19/18   Page 99 of 116   Page ID
#:24925

1                 CERTIFICATE OF TRANSLATION

2     I, _Karen Pedraza_____, hereby certify that I am proficient in both

3 Spanish and English, and that I accurately translated the foregoing statement and read it

4 back to ██████████████ in its entirety in Spanish on September 21, 2018.

5

6                        _____

7                        Karen Pedraza

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 18 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 505-58   Filed 10/19/18   Page 100 of 116   Page ID
#:24926

# Exhibit 18

# [Provisionally Filed Under Seal]

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 19 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document#5084559   Filed 10/19/18   Page 101 of 116   Page ID
#:24927

I, ██████████████████, declare as follows:

1.     This declaration is based on my personal knowledge.  If called to testify in this case, I would testify competently about these facts.

2.     I am 15 years old.  I came to the United States from Honduras in May 2018. When I arrived at the border, I was taken to the Southwest Key Casa Antigua shelter, where I was detained for about two months.

3.     At the shelter, I thought a lot about traumatic events from my childhood.  I began experiencing a lot of anxiety and couldn't control how I felt.  It became so overwhelming, and I started having thoughts about hurting others.

4.     One day, as I was getting ready for my P.E. class, the staff told me to change my clothes because I was going on an outing.  I was confused because I didn't have any appointments scheduled for that day.  The staff told me that I was going to be transferred to a new facility.  I had no prior notice of the transfer and neither did my family.  I didn't know anything about the new placement except that the staff said that the placement would be "better," and my mom would be able to visit me.  Once I arrived at Shiloh, I realized that the staff had lied.  Shiloh is not a good place, and my mom has not been able to visit me here because she lives in Maryland.

5.     I have been at Shiloh since July, and I don't know when I'll be allowed to leave.

6.     I want to live with my mom.  She applied to be my sponsor when I was detained at the shelter.  We usually speak on the phone twice a week and we are very close.  These phone calls are not in private; my case manager is always in the room.  I would prefer to talk to my mom privately because there are lots of things that I would like to tell her but don't want my case manager to overhear.

7.     As far as I know, my mom has done everything the government has asked her to. She completed a home study and received a positive recommendation.  She submitted her fingerprints in early July, as did my aunt and uncle who live with her.  My mom's

1

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 20 of 95   Page ID
#:25460
Case 2:85-cv-04544-DMG-AGR   Document 501-60   Filed 10/19/18   Page 102 of 116   Page ID
#:24928

1  fingerprints showed an error through the immigration records system.  After all these
2  months, we're still waiting for the federal agent to approve my mom's fingerprints.
3  8.      The doctor just approved my release.  When I first arrived at Shiloh, I was told that
4  I would not be approved for release unless I was no longer sad.  The doctor told me that I
5  needed to smile and talk to the other girls here – then he'd know that I was feeling better.
6  9.      I take three medications at night.  One is for insomnia, one is for depression, and
7  the other is for allergies.  As far as I know, my mom has not given permission for me to
8  take the medication.
9  10.     Since July 30, 2018, I do not remember receiving a psychiatric evaluation to
10  determine whether I am dangerous.
11  11.     I liked the shelter better than Shiloh.  Here, the staff play favorites – if they don't
12  like you, they don't talk to you or include you in group activities.  One time, one of the
13  staff members was playing a card game with some of the other girls.  I asked to join
14  them, and the staff member said that I wasn't invited.  That kind of rejection happens all
15  the time here.  One time, the staff hurt my feelings so badly, that I just started crying; I
16  tried not to but I couldn't help it – tears just started pouring down my face.
17  12.     I am ready to live with my mom right now.  I'm so miserable here.  I often look at
18  a picture of my mom and I get very emotional.  I miss her so much.  I know I would be
19  happier and healthier if I lived with her.
20
21  I declare under penalty of perjury that the foregoing is true and correct.  Executed on this
22  18th day of October, 2018, at _____Manvel_____, Texas.
23
24  
25
26
27
28

2

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 21 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 505-1   Filed 10/19/18   Page 103 of 116   Page ID
#:24929

CERTIFICATE OF TRANSLATION

I, ___Lexie Villa_____, hereby certify that I am proficient in both
Spanish and English, and that I accurately translated the foregoing statement and read it
back to ███████████████ in its entirety in Spanish on ___October 18, 2018___.

_Lexie V. Villa_____
Lexie Villa

3

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 22 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 505-2   Filed 10/19/18   Page 104 of 116   Page ID
#:24930

# Exhibit 19

# [Provisionally Filed Under Seal]

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 23 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document #:24463 Filed 10/19/18   Page 105 of 116   Page ID
#:24931

DECLARATION OF ███████████████

I, ███████████████, declare as follows:

1.     This is based on my personal knowledge.  If called to testify in this case, I would testify competently about the following.

2.     I am seventeen years old.  I came to the United States on September 10, 2017. My father passed away years ago. My mom lives in Guatemala. She beat me, and I felt that no one loved me there, and also because it is very dangerous in Guatemala, I decided to come to the United States.

3.     I am currently detained at Shiloh RTC, where I arrived about six months ago. Before arriving here, I spent about nine months in two shelters in Arizona.

4.     My Uncle ██████ has applied to be my sponsor.  I would like to live with him. They have already visited his house, and everything went well. His finger prints have also cleared, which has allowed him to visit me in person.  My case manager tells me that they are waiting on a check of some kind to make sure that he is not on a registry relating to abuse of children, and then I will be able to live with him.  I have heard from my case manager and other children here that this additional registry check is causing many children's releases to be delayed.

5.     When I was detained for many months at the Casa Phoenix shelter, my uncle tried to call the shelter staff and apply to be my sponsor. But the staff would not answer his calls, and I was not allowed to call him.

6.     For a while, the shelter told me that they were going to send me to a foster family. But then a girl living at the shelter falsely stated that I said inappropriate things, and after that they told me that they weren't going to send me to a foster family anymore.

7.     When they gave me that false report, I felt very depressed because I had already been confined for so long and I tried to kill myself. After that, they sent me to the Campbell shelter for about a week.  They told me I was there because it was a smaller

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 24 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 503-4 Filed 10/19/18   Page 106 of 116   Page ID
#:24932

1  place and I would have more attention. While at the Campbell shelter, they started giving
2  me medication.  Soon after I arrived, they told me I was being sent to another shelter and
3  then to a foster family.  They woke me up at 3 a.m., and two staff members flew with me
4  to Shiloh. They never told me where I was going or why.

5  8.      For about three months, the staff at Shiloh were giving me four medications a day:
6  one for anxiety, another for depression, and two for sleep. Now I am taking two
7  medications at night: one for anxiety and another that I don't know.  Until two weeks
8  ago, no one from Shiloh or the shelters had asked permission from my mother or anyone
9  else from my family to give me the medications. My mom told me that the staff recently
10 asked her during a phone call if she was okay with me taking the medications.

11 9.      At Shiloh, I am able to use the phone to call my family, but the calls are not
12 private. My case manager is always in the room. I would prefer if I could talk privately
13 with my family.

14 10.     As of July 30, 2018, no one has interviewed me to assess whether I am a danger to
15 myself or others. The truth is that I have never felt like I wanted to hurt anyone else.
16 When I feel very disappointed, for example, when I get very bad news, I only think of
17 hurting myself. But, it has been six months since I have tried to harm myself. Sometimes
18 I feel sad because I'm still here at Shiloh, but other than that, I have been fine.  I get
19 along well with the other girls at Shiloh.

20 11.     Until last Tuesday, I was here because the doctor would not approve me to be
21 released.  But last week, the doctor told me that I do not have to be here and that he
22 would release me if everything was final with my sponsor.  We have just been waiting on
23 the response from the government on the child abuse registry check.

24
25
26
27
28

2

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 25 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 508-155 Filed 10/19/18   Page 107 of 116   Page ID
#:24933

12.     For me, what I want to do is to get out of here and be with my family. I already feel good, just tired from being detained for so long. I want to learn English and study to be a police officer, and earn enough to get my mother out of her house in Guatemala because my uncle hits her.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 18th day of October, 2018, at Manvel, Texas.



Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 26 of 95   Page ID
#:24466
Case 2:85-cv-04544-DMG-AGR   Document 503-6   Filed 10/19/18   Page 108 of 116   Page ID
#:24934

1
2

CERTIFICATE OF TRANSLATION

3      I, KARINA MARQUEZ , hereby certify that I am proficient in both

4  Spanish and English, and that I accurately translated the foregoing statement and read it

5  back to ██████████████ in its entirety in Spanish on  10·18·18  .

6
7
8                                    Karina Marquez
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 27 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 505-7 Filed 10/19/18   Page 109 of 116   Page ID
#:24935

# Exhibit 20

## [Provisionally Filed Under Seal]

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 28 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 505-68 Filed 10/19/18   Page 110 of 116   Page ID
#:24936

I, ██████████████████ declare as follows:

1.      This declaration is based on my personal knowledge.  If called to testify in this case, I would testify competently about these facts.

2.      I am 17 years old.  I came to the United States from Guatemala in January 2018. When I arrived at the border, I was taken to the Southwest Key Lighthouse shelter in Phoenix, Arizona, where I was detained for about six months.

3.      At the shelter, I was having a lot of bad dreams.  The bad dreams kept coming, and they didn't get better.  One day, the staff at the shelter said that they were taking me to a new place in Texas.  I didn't want to leave, but the staff told me that I had to go.  The staff woke me up around 3:00am and took me to Shiloh.  I have been at Shiloh since June, and I have no idea when I'll be allowed to leave.

4.      I want to live with my uncle.  My mom wants me to live with him too.  He lives in Florida and applied to be my sponsor once I arrived at Shiloh.  We usually speak on the phone twice a week and we get along really well.  These phone calls are not in private; my case manager is always in the room.

5.      As far as I know, my uncle has done everything the government has asked him to. Recently, I've been devastated because my case manager told me that my uncle's reunification application was denied.  Apparently, the government doesn't think my uncle speaks Spanish well enough, and they're worried that, once I'm released, he won't be able to explain things properly to doctors on my behalf.  I think the government's view of my uncle's Spanish skills is the only obstacle preventing me from living with him.  I don't understand because, even though my uncle primarily speaks in a dialect, he has told me that he speaks Spanish well.

6.      When I arrived at Shiloh, my case manager told me that the doctor had to approve my release.  The doctor says that he won't approve my release until I start behaving better.  I have been struggling to improve my behavior because I've been so upset about my uncle's application.

Case 2:85-cv-04544-DMG-AGR   Document 503-69   Filed 10/19/18   Page 111 of 116   Page ID
#:24937

7.    I take multiple medications: about seven medications at night and two medications in the morning.  I think one of the medications is for my mind, and another one is supposed to help me sleep better.  I don't what the other medications are for.  I think I took some of the same medications at the Southwest Key shelter too.  As far as I know, my uncle and mom have not given permission for me to take the medication.

8.    Since July 30, 2018, I do not remember receiving a psychiatric evaluation to determine whether I am at risk of harming myself or others.

9.    I liked the shelter much more than Shiloh.  I could talk to everyone at the shelter, and I could go outside more often.  There were more activities; for example, I could take classes to learn English.  At Shiloh, I don't learn anything.  I was happier at the shelter.

10.    I am ready to live with my uncle right now.  I'm so miserable here.  I know I would be happier and healthier if I lived with him.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 18th day of October, 2018, at _____Manvel_____, Texas.



Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 30 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 505-170 Filed 10/19/18   Page 112 of 116   Page ID
#:24938

CERTIFICATE OF TRANSLATION

I, ___Lexie Villa_____, hereby certify that I am proficient in both
Spanish and English, and that I accurately translated the foregoing statement and read it
back to ███████████ in its entirety in Spanish on __10/18/18_____.

_Lexie O. Villa_____

Lexie Villa

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 31 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 508-1   Filed 10/19/18   Page 113 of 116   Page ID
#:24939

# Exhibit 21

# [Provisionally Filed Under Seal]

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 32 of 95   Page ID
#:25472
Case 2:85-cv-04544-DMG-AGR   Document 503-1   Filed 10/19/18   Page 114 of 116   Page ID
#:24940

1   I, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, declare as follows:

2

3   1.      This declaration is based on my personal knowledge.  If called to testify in this

4   case, I would testify competently about these facts.

5   2.      I am 9 years old.  My grandma and I came to the United States from Guatemala in

6   April 2018.  When we arrived at the border, I was separated from my grandma, and I was

7   taken to the Southwest Key El Presidente shelter in Brownsville, Texas, where I was

8   detained for about two months.

9   3.      At the shelter, the staff were really strict.  Certain things staff members did really

10  bothered me, and I began to act out.  I would throw things at the staff.  When I started

11  misbehaving, the staff would grab me so hard that I couldn't breathe.  Each time the staff

12  grabbed me, I was in more and more pain.

13  4.      One night, the staff told me to get in the car because we were going to go look at

14  the stars outside.  It was really late at night, and I was tired and fell asleep.  When I woke

15  up, I was furious because I realized that they had lied to me.  They had taken me to

16  Shiloh and left all my personal belongings behind at the shelter.  No one had told me that

17  I would be transferring to a new facility.  I had no prior notice of the transfer and neither

18  did my family.

19  5.      I have been at Shiloh since July, and I have no idea when I'll be allowed to leave.

20  6.      I want to live with my uncle.  He lives in Houston and applied to be my sponsor

21  once I arrived at the other shelter.  We usually speak on the phone twice a week and we

22  get along really well.  These phone calls are not in private; my case manager is always in

23  the room.

24  7.      My grandma, aunt, and cousins live with my uncle too. ·They've all come to visit

25  me here many times.

26  8.      As far as I know, my uncle has done everything the government has asked him to.

27  He completed a home study and received a positive recommendation.

28

1

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 33 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document #505473Filed 10/19/18   Page 115 of 116   Page ID
#:24941

9.     I am still waiting for the doctor to approve my release.  I've been told that I behave

badly, and I won't be allowed to live with uncle until I improve my behavior.

10.     I take multiple medications in the morning, afternoon, and night.  I don't know

what they're for or how many I take.  Sometimes, I feel like I've been given twenty pills

in one day.  As far as I know, my uncle and other family members have not given

permission for me to take the medication.

11.     Since July 30, 2018, I do not remember receiving a psychiatric evaluation to

determine whether I am at risk of harming myself or others.

12.     I miss the field trips we used to take at the shelter.  I enjoyed getting out into the

community.  At Shiloh, we only take trips to the store.

13.     I am ready to live with my uncle right now.  I'm so unhappy here.  I know I would

be happier and healthier if I lived with him.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this

18th day of October, 2018, at _____Manvel_____, Texas.

2

**Page 121**

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 34 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 501-4   Filed 10/19/18   Page 116 of 116   Page ID
#:24942

1
2

<div align="center">CERTIFICATE OF TRANSLATION</div>

3

I, ___Lexie Villa_____, hereby certify that I am proficient in both

4

Spanish and English, and that I accurately translated the foregoing statement and read it

5

back to ▮▮▮▮▮▮▮▮▮▮▮▮ in its entirety in Spanish on _October 18, 2018_ .

6
7

*Lexie V. Villa*

8

Lexie Villa

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<div align="center">3</div>

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 35 of 95   Page ID
#:25475
Case 2:85-cv-04544-DMG-AGR   Document 501-2   Filed 10/19/18   Page 1 of 57   Page ID
#:24943

# Exhibit 22

# [Provisionally Filed Under Seal]

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 36 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 504-2   Filed 10/19/18   Page 2 of 57   Page ID
#:24944

DECLARATION OF ▓▓▓▓▓▓▓▓▓▓▓▓▓

I, ▓▓▓▓▓▓▓▓▓▓▓▓▓, declare as follows:

1.      This is based on my personal knowledge.  If called to testify in this case, I would testify competently about the following.

2.      I am seventeen years old.  I came to the United States about a year ago from Honduras.

3.      I am currently detained at Shiloh RTC, where I have lived for about five months. Before arriving here, I spent about seven months in a shelter in Arizona.

4.      For about my first six months at the shelter, I was doing okay.  But, as time wore on, I got more and more depressed about being detained and not knowing when I would be released, and I began cutting myself.

5.      The staff at the shelter sent me to a hospital two times for cutting.  After the second time, they told me that they were going to send me to another place because they couldn't give me the attention that I needed at the shelter.  They woke me up at 4 a.m., and flew me to Shiloh.  I didn't want to come because I was scared of going to a new place.

6.      At first Shiloh was not good at all. But, it got better when my aunt who lives in Houston was cleared to visit me.  My aunt applied to be my sponsor back in July.  My case worker said that her home study, application, and finger prints were good, and we are only waiting on finger prints to clear for my twenty-three-year-old cousin who is to act as my backup caregiver.  They told me the finger prints would only take 15 days, but that time has now passed.

7.      I talk to my aunt once a week.  I enjoy talking to her, but am not allowed to speak to her in private.  My case manager is always in the room.  Nobody here has private calls.

8.      At Shiloh they give me three medications in the morning: Zoloft and two others they haven't explained, and four medications in the night: melatonin and three others they haven't explained to me.  I see the doctor every two weeks.  He tells me the drugs I need

1

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 37 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 304-7   Filed 10/19/18   Page 3 of 57   Page ID
#:24945

1   to take, but doesn't explain why. The drugs make me feel really tired and sluggish.  I

2   have trouble concentrating in class.  Sometimes I have stomach pain and a lot of

3   headaches.  Sometimes I feel numb on one side of my body.  I tell the doctor about these

4   problems, and he says it is all normal.

5   9.      I would prefer not to be on any type of medications, but I just take whatever pills

6   they give me because if not, they will report me. If you get reports, you stay longer

7   because it is considered being disobedient of the rules.  No one from Shiloh has asked

8   permission from my mother or my aunt to give me the medications.

9   10.     As of July 30, 2018, no one has interviewed me to assess whether I am a danger to

10  myself or others. It is really hard to be here not knowing when I will get to live with my

11  aunt. A month ago, I became really sad about how long I have been detained and cut

12  myself to try to relieve the pain. But, it has been over a month since I have felt the need

13  to do that.

14  11.     I usually see the doctor every two weeks.  Last Tuesday, the doctor said that he

15  was putting me down a level and that when my cousin's finger prints came in, he was

16  going to approve my release. Previously he would not approve release because he said

17  my case wasn't ready.  He said I still needed to follow the rules and behave.  I'm not sure

18  if he will really approve my release because sometimes they say one thing and do

19  another.

20

21

22

23

24

25

26

27

28

2

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 38 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 501-2   Filed 10/19/18   Page 4 of 57   Page ID
#:24946
#:25478

1  12.    I have been living here so long, sometimes I just feel desperate.  I really want to be

2  with my family. I know it will make me feel better. I also want to graduate and go on to

3  college. I want to be an attorney someday.

4

5

6  I declare under penalty of perjury that the foregoing is true and correct.  Executed on this

7  18th day of October, 2018, at Manvel, Texas.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 39 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 504-9   Filed 10/19/18   Page 5 of 57   Page ID
#:24947

1
2

# CERTIFICATE OF TRANSLATION

3    I, _KARINA MARQUEZ_ , hereby certify that I am proficient in both

4  Spanish and English, and that I accurately translated the foregoing statement and read it

5  back to Melissa Portillo Pavon in its entirety in Spanish on October 18, 2018.

6
7
8                                      Karina Marquez
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 40 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 390   Filed 10/19/18   Page 6 of 57   Page ID
#:24948
#:25430

# Exhibit 23

## [Provisionally Filed Under Seal]

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 41 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 504-2   Filed 10/19/18   Page 7 of 57   Page ID
#:24949

1   I, ████████████████████, declare as follows:

2

3   1.      This declaration is based on my personal knowledge.  If called to testify in this

4   case, I would testify competently about these facts.

5   2.      I am 17 years old.  I came to the United States from Guatemala over a year ago.

6   When I arrived at the border, I was taken to a Southwest Key shelter in Brownsville,

7   Texas, where I was detained for about seven months.  I have now been living at Shiloh

8   for seven months.

9   3.      One day, the staff at the Southwest Key shelter said that they were taking me to a

10  new place in Texas because I was hurting myself.  I was sad because I didn't want to

11  leave.  I had friends in Southwest Key, and I had gotten used to being there.  The staff

12  told me that I had to leave because they could not help me.  One morning, the staff woke

13  me up around 3:00 a.m. and took me to Shiloh.  They had not told me the night before

14  that I would be leaving that morning.

15  4.      I want to live with my mom.  She lives in Indiana and applied to be my sponsor

16  when I was detained in the shelter.  My mom has done everything the government has

17  asked her to do.  She has had two home studies, and has received a positive

18  recommendation both times.  I guess the first home study expired.  My case manager has

19  told me that they are waiting on the fingerprints for my twenty-year-old brother to clear

20  because he lives with my mother.  It has been a month since they had the fingerprinting

21  done. I am not sure why they didn't do my brother's fingerprints sooner.

22  5.      I speak on the phone twice a week with my mom.  These phone calls are not in

23  private; my case manager is in the room. My case manager doesn't give me the choice to

24  speak to my mom in private, which I would prefer.  I don't think any kids here are having

25  private phone conversations.

26  6.      At Shiloh, I take three medications in the morning, one at noon, and three at night.

27  One in the morning is for anxiety and one at night is to help me sleep, but I don't know

28  what the others are for.  I have been told that the medications are supposed to help me,

1

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 42 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 504-2   Filed 10/19/18   Page 8 of 57   Page ID
#:24950

1   but I don't remember why. My stomach hurts almost every day. I don't know if it is

2   related to the medication. I also think the medication makes me feel tired and

3   unmotivated. As far as I know, my mom has not given permission for me to take the

4   medication. If I were able to live with my mom and not have to take the medications any

5   more, I wouldn't take them.

6   7.      I used to see the psychiatrist, ▇▇▇▇▇, every week, but now I see him once a

7   month. A couple weeks ago, the doctor told me that I was dropping to a lower level and

8   that I was ready to be released. The doctor has told me that as soon as my brother's

9   fingerprints clear, he will give his permission for me to leave. But I don't know when my

10  brother's fingerprints will be ready. I know that many other youth are also here because

11  they are waiting on fingerprints.

12  8.      Since July 30, 2018, I have not received a psychiatric evaluation to determine

13  whether I am a risk to myself or others. I do not believe I am either. It has been a long

14  time since I felt like I wanted to hurt myself, and more than two months since I cut

15  myself.

16  9.      I am ready to live with my mom right now. I miss her very much, and I know I

17  would be happier and healthier if I lived with her. I love school, and look forward to

18  studying a lot. I would like to be a doctor. I want to help my mom so that she doesn't

19  have to work so hard.

20

21  I declare under penalty of perjury that the foregoing is true and correct. Executed on this

22  18th day of October, 2018, at Manvel, Texas.

23

24

25

26

27

28

2

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 43 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 510-2   Filed 10/19/18   Page 9 of 57   Page ID
#:24951

## CERTIFICATE OF TRANSLATION

1

2

3   I, _KARINA MARQUEZ_ , hereby certify that I am proficient in both

4   Spanish and English, and that I accurately translated the foregoing statement and read it

5   back to ▓▓▓▓▓▓▓▓▓▓ in its entirety in Spanish on _10·18·18_ .

6

7

8                                Karina Marquez

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 44 of 95   Page ID
#:25484
Case 2:85-cv-04544-DMG-AGR   Document 501-2   Filed 10/19/18   Page 10 of 57   Page ID
#:24952

# Exhibit 24

# [Provisionally Filed Under Seal]

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 45 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 804-35   Filed 10/19/18   Page 11 of 57   Page ID
#:24953

1      DECLARATION OF █████████████████████████

2

3    I, ██████████████████████, declare as follows:

4

5    1.    This declaration is based on my personal knowledge.  If called to testify in this

6    case, I would testify competently about these facts.

7    2.    I am 16 years old.  I came to the United States from El Salvador about three years

8    ago.  When I arrived at the border, I was taken to live at a shelter in Brownsville for

9    pregnant minors, where I was detained for about two months. I had my baby there. I then

10    went to live with my aunt in Virginia when my baby was three weeks old. I lived with my

11    aunt for about three years.

12    3.    One day, I was helping a friend clean up and move from his house.  In the middle

13    of the night, police officers came to the house. The police pointed their guns at us; sat us

14    down; and took our pictures. They asked my name and where I lived, and then took me in

15    for questioning.  They then took me to the hospital for blood tests.  After that, they took

16    me to Shenandoah, which is like a jail.  We had cells with beds made out of cement and

17    metal toilets inside. I was detained at Shenandoah for seven months. They told me I had

18    to stay there because they thought I was part of a criminal group, and they needed to

19    investigate.  They never gave me anything in writing saying why I was at Shenandoah.

20    After seven months, they released me to Shiloh because they didn't find I had done

21    anything wrong. They said everything was fine. I tried to call the detective about the

22    investigation, but she never answered.

23    4.    One morning they woke me up at 5 a.m., and told me that I was going to Shiloh.

24    My worker told me that I was going to Shiloh because they accepted me first and the

25    other shelters would not accept youth coming from Shenandoah.  This was the only

26    reason they gave.  They never told me it was a residential treatment center for youth with

27    mental health needs.  I have now been at Shiloh for three months.

28

1

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 46 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 504-86   Filed 10/19/18   Page 12 of 57   Page ID
#:24954

5.      For the first few months at Shiloh, I was seeing the doctor every other week. He would ask me how I was doing, but I didn't want to tell him because if you say you are feeling said they will keep you here longer. The doctor is making me take medication for anxiety at night, but I don't know why. I also take medication in the morning, but I don't know what some of it is for. I have never had problems with anxiety. The doctor has told me that they are working on another placement for me, but no one has told me when I will be able to leave.

6.      My aunt in Houston started the process to be my sponsor. The problem is that the government is making my aunt fix her birth certificate from El Salvador because one letter in her middle name is spelled incorrectly: it says "█████" instead of "█████". This spelling does not match the spelling on my aunt's mom's birth certificate, and so they are telling her she needs to get an attorney to get it fixed. They will not let her move forward with a home study or finger printing until she gets this birth certificate spelling fixed. They won't even let me talk to my aunt on the phone because of this.

7.      My aunt in Virginia is willing to sponsor me, but I have been waiting on the government for over a month to let me know if they will let her.

8.      I am allowed to talk to my Dad and my aunt in Virginia on the phone, but the calls are not private. A case manager is always in the room.

9.      I would like to live with my son. I miss him so much. He just turned two. Last month, he sang "Happy Birthday" to me on the phone, and it made me so happy. I hope we can be together soon.


I declare under penalty of perjury that the foregoing is true and correct. Executed on this 18th day of October, 2018, at Manvel, Texas.



1

## CERTIFICATE OF TRANSLATION

2

3       I, Karina Marquez, hereby certify that I am proficient in both Spanish and English,

4   and that I accurately translated the foregoing statement and read it back to ███████████

5   ███████████ in its entirety in Spanish on October 18, 2018.

6

7

8                                          Karina Marquez

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 27

# [Provisionally Filed Under Seal]

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 49 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 501-29   Filed 10/19/18   Page 29 of 57   Page ID
#:24971

1    I, ███████████████████████ , declare as follows:

2

3    1.    This declaration is based on my personal knowledge. If called to testify in this

4    case, I would testify competently about these facts.

5    2.    I am 15 years old, and I will turn 16 next month. My alien registration number is

6    ███████ . I am currently being detained in ORR custody at the Yolo County

7    Juvenile Detention Center in Woodland, California ("Yolo"). Yolo is a jail. The children

8    are detained here and no one is free to leave.

9    3.    I have been in immigration custody since March 13, 2018. This is the first time I

10    have ever been in immigration custody. Before being held in Yolo, I was detained for a

11    time in a Southwest Key facility in El Paso, Texas, and at a staff-secure facility near

12    Brownsville, Texas.

13                   Attempts at Reunification

14    4.    Since I have been in detention, my family members have been trying to get me out

15    here. From what I understand, I should have been released already but ORR officials

16    keep asking for additional documentation and delaying the process. My aunt in Virginia

17    has agreed to serve as my sponsor. I am sad and worried because of the delays and I do

18    not know if I will ever get out of here.

19                   Medication

20    5.    When I was in the Southwest Key facility in Texas, a doctor there gave me nine

21    shots. I was told these were vaccinations. Here at Yolo, on September 19, 2018, I was

22    given five more injections. I was only told that they were necessary and I was not given

23    any further explanation. To my knowledge, neither my aunt nor any other responsible

24    adult gave permission for me to receive any of these injections.

25                   Conditions at Yolo

26    6.    It is really hard to take a shower here at Yolo. The water is so hot that it can burn

27    your skin. A couple of day ago a staff member stayed overnight and they could not take a

28    shower because the water temperature was too hot.

<div align="center">1</div>

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 50 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 501-20   Filed 10/19/18   Page 30 of 57   Page ID
#:24972

<u>Unnecessary punishment</u>

7.    Last week, here at Yolo I witnessed three guards holding and using pepper spray against another youth. This was unnecessary and excessive because the youth was already under the control of two guards when the third guard sprayed pepper spray in the youth's face.

8.    The guards routinely search us by twisting the left hand and arm and then making us lift the leg on that side while they frisk us. On September 18, 2018 I complained to a guard because he was bending my hand and arm too hard and it was inflicting pain. I said, "stop doing that so hard, you are treating me like an animal." The guard told me that this was how they had been trained.

9.    The social worker Castaneda was nearby and  witnessed this interaction. The social worker then took me alone to another room and tried to bend my arm the same way that the guard had done, explaining to me that this was the way that they were trained. I asked the social worker to stop because he was hurting my arm the way the guard had done before. The youth that are more well behaved are housed on the upper tier of our pod, so that the guards have more ready access to the youth who have behavior problems. Castaneda threatened me that if I did not behave myself he was going to have me moved from the upper tier to the lower one.

10.    One of the methods of disciplining us is to make us wear different colored shorts. If you behave well you wear a yellow shirt. If you misbehave you can be assigned a gray or purple shirt. As a punishment for my having complained about the guard's physical treatment of me, I was stepped down two colors and not allowed to have Cheetos in snack time. I was also sent to sleep one hour early. In the report on the incident, the officer lied and falsely stated that I had kept a closed fist during the search when in truth I opened my hand and did not keep my fist closed.

//

//

//

2

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 51 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 504-1   Filed 10/19/18   Page 31 of 57   Page ID
#:24973

1    11.    I declare under penalty of perjury that the foregoing is true and correct.  Executed

2    on this 21  day of September, 2018, at Woodland, California.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 52 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 501-2   Filed 10/19/18   Page 32 of 57   Page ID
#:24974

1

CERTIFICATE OF TRANSLATION

2        My name is Jonathan Mulligan and I swear that I am fluent in both the English

3   and Spanish languages and I translated the foregoing declaration from English to

4   Spanish to the best of my abilities.

5

6   Dated: September 21 , 2018

7                                                    Jonathan Mulligan

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 53 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 501-23   Filed 10/19/18   Page 33 of 57   Page ID
#:24975
#:25493

# Exhibit 28

## [Provisionally Filed Under Seal]

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 54 of 95   Page ID
#:25494
Case 2:85-cv-04544-DMG-AGR   Document 501-2   Filed 10/19/18   Page 34 of 57   Page ID
#:24976

I, ███████████████████ , declare as follows:

1. I have reviewed the document called Notice of Placement in a Restrictive Setting dated August 12, 2018.
2. The signature on the notice is my signature, but I did not understand what I was signing.
3. I do not read, write, or speak English and the document was never presented or read to me in a language that I understand.

I declare under penalty of perjury that the foregoing is true and correct. Executed on <u>October 18, 2018</u> at Woodland, California.

████████████████   ——————   ——————————————————

I <u>KAREN PEDRAZA</u>, hereby certify that I am proficient in both Spanish and English, and that I accurately translated the foregoing statement and read it back to ████████████████ <u>SOSA</u> in its entirety in Spanish on <u>October 18, 2018</u>.

_Karen Pedraza._

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 55 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 851-25   Filed 10/19/18   Page 35 of 57   Page ID
#:24977

# Exhibit 29

# [Provisionally Filed Under Seal]

**Notice of Placement**
**in a Restrictive Setting**
Office of Refugee Resettlement

You are in the custody of the Office of Refugee Resettlement (ORR), and have been placed in a restrictive setting - a secure or staff secure facility, or a Residential Treatment Center (RTC). The reason you have been placed in a restrictive setting is listed below.

If you have any questions about this placement, please discuss them with your case manager, your attorney, or an ORR-funded legal service provider.

| UAC Name | Alien Number | Country of Birth | Date of Birth | Gender |
|---|---|---|---|---|
| [redacted] | [redacted] | Honduras | [redacted] | Male |

| Name of Care Provider Facility | Type of Facility |
|---|---|
| Southwest Key Nueva Esperanza Staff Secure | Staff Secure |

**Secure Care:** ORR has determined that you pose a danger to self or others; or have been charged with having committed a criminal offense. ORR considered that you:

- ☐ Are charged with, may be chargeable, or have been convicted of a crime; or are the subject of delinquency proceedings, have been adjudicated delinquent, or are chargeable with a delinquent act[1];
- ☐ Have committed, or have made credible threats to commit a violent or malicious act while in ORR custody;
- ☐ Have committed, threatened to commit, or engaged in serious, self-harming behavior that poses a danger to self while in ORR custody;
- ☐ Have engaged in conduct that has proven to be disruptive of the normal functioning of a staff secure facility in which you were placed such that transfer may be necessary to ensure your welfare or the welfare of others;
- ☐ Have reported gang involvement or display gang affiliation while in care;
- ☐ Have self-disclosed violent criminal history or gang involvement prior to placement in ORR custody that requires further assessment; and/or,
- ☐ Have a history of or display sexual predatory behavior, or have inappropriate sexual behavior.

**Staff Secure Care:** ORR has determined that you require close supervision, but do not require placement in a secure care provider facility. ORR considered that you:

- ☐ Have been disruptive to the normal functioning of a shelter care facility such that transfer is necessary to ensure the welfare of others;
- ☒ Are an escape risk;
- ☐ Have non-violent criminal or delinquent history not warranting placement in a secure care provider facility, such as isolated or petty offenses; or,
- ☐ Could be stepped down from a secure facility.

**Residential Treatment Center:** ORR has determined that you have a psychiatric or psychological issue that cannot be addressed in an outpatient setting. A licensed psychologist or psychiatrist has indicated that you:

- ☐ Have not shown reasonable progress in the alleviation of your mental health symptoms after a significant period of time in outpatient treatment;
- ☐ Demonstrate behavior that is a result of your underlying mental health symptoms and/or diagnosis and cannot be managed in an outpatient setting;
- ☐ Require therapeutic-based intensive supervision as a result of mental health symptoms and/or diagnosis that prevent you from independent participation in the daily schedule of activities; and/or,
- ☐ Present a continued and real risk of harm to self, others, or the community, despite the implementation of short-term clinical interventions.

[1] Excluding isolated offenses that (1) were not within a pattern or practice of criminal activity and (2) did not involve violence against a person, or the use or carrying of a weapon [illegible]

**Notice of Placement in a Restrictive Setting**

**Summary of placement decision or case review:**

Minor was placed at Southwest Key Processing Center Staff Secure for absconding from Southwest Key Casa Del Valle during a church outing. No criminal activity was reported in cancel or previous placement. Please note the following as noted in the attached UAR "Requesting SECURE facility placement. Minors escaped from SWK shelter in El Paso, Texas on Sunday June 3, 2018. Minor was apprehended by Border Patrol Agents in the El Paso station's Area of Responsibility on June 1, 2018." At this moment's staff secure setting is appropriate for the minor. The minor will be re-evaluated in the next 30 days for consideration for a step-down to a less restrictive setting.

Update 07/13/2018: The minor's 30 day Notice of Placement was staffed with the Program, FFS, Secundo Barrera and Case Coordinator, Christopher Chavez on 07/12/2018 and it was noted that staff secure placement is appropriate for the minor as the moment. Upon arrival the minor was placed on run risk restriction due to the minor presenting an escape risk. On 06/24/2018 the minor was removed from run-risk restriction due to no longer presenting an escape risk. However, minor is still on a 30 day outing restriction. The ending restriction will end on 06/23/2018 if the minor no longer presents any run-risk behavior. The minor's Notice of Placement will be re-evaluated in the next 30 days.

Update 08/12/2018: The minor's 60day Notice of Placement was staffed with the Program, FFS, Secundo Barrera and Case Coordinator, Christopher Chavez on 08/09/2018 and it was noted that staff secure placement is appropriate for the minor at the moment. Minor has not completed 30 days of good behavior. Minor has not been able to attend any outings due to receiving Loss of Privileges for behavior issues. The minor's Notice of Placement will be re-evaluated in the next 30 days.

ORR will review your placement, at a minimum, every 30 days to determine whether your placement in a restrictive level of care is still necessary. If you remain in a secure facility or RTC after 30 days, you may request that the ORR Director reconsider your placement. For more information on this process, please ask your case manager.

If you believe you have not been properly placed or that you have been treated improperly you may also ask a Federal District Court to review your case. You may call a lawyer to assist you.

**UAC's acknowledgement of receipt:**

_____     8/14/18
UAC's Signature                                  Date

Notice of Placement in a Restrictive Setting, 02/05/2018
ORR UAC P-4

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 58 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document #:25498   Filed 10/19/18   Page 38 of 57   Page ID
#:24980

# Exhibit 30

# [Provisionally Filed Under Seal]

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 59 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 804-99   Filed 10/19/18   Page 39 of 57   Page ID
#:24981



U.S. Department of Health and Human Services

Office of Refugee Resettlement
Authorization for Medical, Dental, and Mental Health Care, Rev. 11/01/2011

**OFFICE OF REFUGEE RESETTLEMENT**
**Division of Children's Services**
**AUTHORIZATION FOR MEDICAL, DENTAL, AND MENTAL HEALTH CARE**

The Department of Health and Human Service (HHS), Office of Refugee Resettlement (ORR), Division of Children's Services (DCS) is responsible for coordinating and implementing the care and custody of the following minor pursuant to section 462 of the Homeland Security Act of 2002 (6 U.S.C. §279):

| Minor's Name: | ████████████ | Alien Number: | ██████ |
| Date of Birth: | ██████ | Nationality: | Honduras |

ORR hereby Authorizes , hereinafter "care provider," to arrange medical, dental, and mental health care for said minor under the following terms and conditions:

care provider :   Yolo County Juvenile Detention

**1. Licensing and Reimbursement**

•All medical, dental, or mental health services for the minor will be by a State licensed provider.

•The licensed medical, dental, or mental health provider must be willing to accept the Medicare reimbursement rate, payment on a fee for service basis, or to provide services for no fee.

**2. Authorization and Notification**

•The care provider shall secure authorization from ORR before consenting to any non-emergency medical, dental or medical health services; except for initial medical screening.

•The care provider shall consent to the provision of emergency treatment recommended by a licensed medical, dental, or mental health provider. The care provider shall notify ORR of the emergency immediately following treatment if possible, or within 24 hours after the initial incident.

•Significant surgical or medical procedures require heightened ORR involvement. Please refer to ORR instructions and procedures on medical services requiring heightened ORR involvement in these special cases.

•Minors have the right to be tested for HIV or other sexually transmitted diseases; the care provider shall ensure the minor receives the test(s) as requested.

•The care provider is authorized to dispense over-the-counter medications and prescription

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 60 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 85500   Filed 10/19/18   Page 40 of 57   Page ID
#:24982



U.S. Department of Health and Human Services

Office of Refugee Resettlement
Authorization for Medical, Dental, and Mental Health Care, Rev. 11/01/2011

### 3. Medical and Dental Exams/Screenings

•Minors in care shall receive a medical exam within 48 hours of placement in a care provider program, unless the minor obtained a medical exam within one calendar year and while under the care of another ORR-funded care provider.

•Minors in care shall also receive an initial dental examination within 90 days of placement, but no sooner than their 30th day in the custody of ORR.

### 4. Immunizations

•The care provider shall ensure that all minors in care receive necessary immunizations.

•Females 10 years or older must undergo a quantitative blood pregnancy test, with the minor's consent, before being administered any immunization.

### 5. Medical, Dental, and Mental Health Records/Confidentiality

•Care providers shall (1) obtain copies of all screenings, exams, or testing performed on a minor in care, signed by the licensed health care professional, (2) provide copies to ORR, when requested, and (3) ensure that medical records are maintained in the minor's file.

•All records maintained by the care provider in reference to the minor's health care are the property of ORR. Care providers may not release health information about the minor to any individual or organization without prior express authorization of ORR, except in the following instances: to the minor's educational program or medical, mental health, dental, and other service providers to the extent that the information is needed for the minor's education, recreation, social development,

| | | |
|---|---|---|
| Signature – Authorized Representative of Care Provider | 09/01/2018<br>Date | 530/406-5317.<br>Telephone Number |
| Signature – Official Representative<br>Office of Refugee Resettlement<br>Administration for Children and Families | 09/01/2018<br>Date | 202-401-5709<br>Telephone Number |

1. "Immunizations and Pregnancy Testing," April 2, 2008. http://www.acf.hhs.gov/programs/orr/programs/ORRPolicy4208.pdf

# Exhibit 31

## [Provisionally Filed Under Seal]

1. I, ███████████, of legal age, with place of residence at 1161 Sharon Lane in the city of Harrisonburg state of Virginia declare the following;

2. I am the aunt of ███████████, my brother ███████████ was the father of █████. Approximately in the year 2007 my brother was assassinated and since then we have assumed the economic responsibility of ███████████.

3. Approximately in the month of March I heard rumors from my sister that █████ had crossed the border, I was also notified that he had been detained by the immigration authorities.

4. The first time that someone contacted me on behalf of █████ was when he was in the first detention center "Southwest Key Casa del valle". The person that contacted me from that place was the case worker named Emy. She mailed me some forms and requested I take a digital fingerprint exam. Among other things she also requested a birth certificate and place of residence. To her I, more than anything, sent her those documents through Whatsapp, through fax, and a few times also through postal mail.

5. Emy at the beginning was telling me that they were not rushing on █████ case because I was not answering my cell phone and that if █████ case did not advance and came to a halt I was at fault for not answering the phone. I explained to her that if that had happened it was not because I was not willing to help but rather it was because the hours in which she was calling me I was usually working, aside from that I did not know that they needed me to support █████ in this. At first it was my understanding that it was my sister who was sponsoring him, after speaking about this with the caseworker my sister and I talked.

6. My sister commented that she had abandoned the case since they told her many things that discouraged her among those being negative comments about █████.

7. Emy also requested a DNA test through my mom. She considered it to be of much importance to know if there was really any blood relationship with █████ for the reason that █████ last name appears to be different than ours.

1

**Page 164**

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 63 of 95   Page ID
#:25503
Case 2:85-cv-04544-DMG-AGR   Document 501-8   Filed 10/19/18   Page 43 of 57   Page ID
#:24985

8.  This whole reunification process started with me around the months of April and May
    2018.

9.  Both case workers had assured me on many occasions that everything was ready but
    they always asked for something more. This process is very stressful since one never
    knows when it will end, I sometimes doubt that they will really hand ▆▆▆ over to me.

10. I feel that the excuses they give me and ▆▆▆ are absurd, with the first case worker,
    she told me that the only thing that remained was the DNA exam and that with it
    everything was ready, that the only other thing left would be to buy the ticket for the
    trip. She then gave me the excuse that it was the government that put these obstacles.
    She also asked me if I had the money for the DNA test, I asked her how much it cost,
    she answered me saying she did not know but would investigate. After all this she never
    gave me an answer. Many weeks passed and I feel that ▆▆▆ became frustrated with
    waiting so much, one day after many weeks had passed with no news the caseworker
    contacted me and said that it was the government that was not putting a date for these
    tests. I remember on one occasion ▆▆▆ had commented to me that the caseworker had
    told him to sign his deportation since he did not have anybody to watch out for him, I
    recall telling ▆▆▆ to not sign anything since he had us.

11. The second case worker was named Aimy, she contacted me when ▆▆▆ was at the
    second detention center "Southwest Key"

12. I think that this second case worker was kind, since she contacted me to restart the
    reunification process again. Once more I provided fingerprints and provided responses
    to the envelope full of documents that was sent for me to sign, I mailed this documents
    through the postal mail. As I have mentioned this process seems to have no end, since I
    have once again started mailing those documents to the case worker. Aimy requested
    photographs with ▆▆▆ mom, she also asked me for the call records and the
    economic records proving that I was sending money for the care of ▆▆▆, I felt this
    was very strange because she also asked me for access to my Western Union account.

2

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 64 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 805-24   Filed 10/19/18   Page 44 of 57   Page ID
#:24986

13. This case worker also asked me for access to both my mail and call records. I felt that they were investigating me too much and the saddest part was that at the end of all this, she told me that because ███ had behaved badly they were not going to give me. She also told me that she had not wanted to tell me earlier everything that was happening with ███ at the center because she liked him very much. The weird thing about all of this was that according to this case worker, he only needed a week to be delivered to me.

14. The last case worker is named Monica Moncada, she is from the center where he currently is "YOLO"

15. This lady has contacted me more than anything through phone calls, but she always comes up with things telling me that they can't give me ███, first it was because my migratory status is uncertain since I have TPS, then she asked me for a co-sponsor, I sent her the name and information of this to her. Apart from this she asked me again for information that I had already sent to the past case workers. Currently she is telling me that the only thing missing is the study of the house, which I have been waiting on for a long time, she only lets me know that it is the government that is putting these obstacles.

16. I declare this under the penalty of perjury and I testify that the foregoing is true and correct.

17. This declaration was realized on the month of October on the 17 of the year 2018, in the city of Harrisonburg, state of Virginia.

3

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 65 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 505-5   Filed 10/19/18   Page 45 of 57   Page ID
#:24987

1    CERTIFICATE OF TRANSLATION

2    My name is Cassie Tadeo Godina and I swear that I am fluent in both the English and

3    Spanish languages and I translated the foregoing declaration from English to Spanish to

4    the best of my abilities.

5

6    Dated: October 18, 2018

7    CASSIE TADEO GODINA

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 66 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 505-6   Filed 10/19/18   Page 46 of 57   Page ID
#:24988

1.   Yo, ███████████ mayor de edad, con lugar de domicilio en 1161 Sharon Lane en la cuidad de Harrisonburg estado de Virginia declaro lo siguiente;

2.   Yo soy la tia de ███████████ , mi hermano ███████████ era el padre de █████ . Aproximadamente en el año 2007 mi hermano fue asesinado y desde entonce nosotros hemos asumindo la responsabilidad economica de ███████████ .

3.   Aproximadamente en el mes de Marzo yo escuche rumores de parte de mi hermana que █████ habia cruzado la frontera, tambien me notificaron que este habia sido detenido por las autoridades migratorias.

4.   La primera vez que alguien me contacto en nombre de █████ fue cuando el estaba en el primer centro de detencion "Southwest Key Casa del valle". La persona que me contacto de ese lugar como trabajadora del caso se llamaba Emy. Esta me envio unas formas y me solicito el examen de huellas digitales. Entre otras cosas tambien me solicito la partida de nacimiento, lugar de domicilio. A ella yo mas que todo yo le enviaba los documentos a traves del Whatsaapp por medio de Fax, algunas veces tambien por correo postal.

5.   Emy al principio me decia que ellos no se apresuraron con el caso de █████ porque yo no contestaba el telefono celular y que si el caso de █████ no avanzaba y se habia detenido, era porque yo tenia la culpa, por no contestar el telefono. Yo a ella le explique, que si eso habia pasado no era porque yo no estaba dispuesta a ayudar, si no mas bien era porque a las horas en las que ella me llamaba  usualmente yo estaba trabajando aparte, yo no sabia que me necesitaban para apoyar en esto a █████ . Al principio yo tenia entendido que era mi hermana la que lo patrocinaria, despues de hablar sobre esto con la trabajadora yo y mi hermana hablamos.

6.   Mi hermana me comento que ella habia abandonado el caso ya que le decian muchas cosas que la desalientaban entre esa cosas comentarios negativos de █████

1

**Page 168**

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 67 of 95   Page ID
#:24987
Case 2:85-cv-04544-DMG-AGR   Document 591-27   Filed 10/19/18   Page 47 of 57   Page ID
#:24989

7.      Emy tambien solicito la prueba de ADN a traves de mi mama. Ella consideron que era de mucha importancia saber si realmente habia algun parentezco sanguineo con ████ por la razon de que en el apellido de ████ aparese uno diferente al nuestro.

8.      Todo este proceso de reunificacion comenzo con mi persona alrededor de los meses Abril y Mayo 2018.

9.      Ambas tabajadoras del caso me habian asegurado en muchas ocasiones que todo estaba listo pero siempre pedian algo mas. Este proceso es muy estresante ya que uno nunca sabe cuando termina, habeses dudo que ellos realmente me entregaran a ████.

10.     Siento que las excusas que me dan a mi y a ████ son absurdas, con la primera trabajadora de caso, ella me dijo que solo faltaba el examen de ADN y que con eso to estaba listo, que lo unico faltante seria la comprar del boleto de viaje. Esta luego me salio con la excusa que era el gobierno el ponia las trabas. Esta tambien me pregunto si tenia el dinero para el examen de ADN, yo le pregunte a esta que cuanto costaba, y ella me contesto que no sabia que iba a investigar.  A todo esto ella nunca mas me volvio a dar una respuesta pasaron muchas semanas y siento  que ████ se desespero de tanta espera, un dia despues de muchas semanas sin novedad la trabajadora me contacto y dijo que era el gobierno el que no ponia fecha para estos examenes. Recuerdo que en una occasion, ████ me comento que la trabajadora le dijo a el que firmara su deportacion ya que el no tenia a nadie que viera por el, recuerdo que yo le dije a ████ que no firmara nada ya que el nos tenia a nosotros.

11.     La segunda rabajadora del caso se llamaba Aimy, esta me contacto cuando ████ estaba en el Segundo centro de detencion "Southwest key"

12.     Pienso que esta segunda trabajadora fue amable, ya que me contacto para reiniciar el proceso reunificacion nuevamente. Una vez mas, yo volvi a presentar huella y proveer respuesta a un sobre con mucha documentacion que me envio para firmar, yo envie esta documentacion a traves de correo postal. Como ya mensione este proceso parese no tener fin, ya que una vez mas comence a enviar los documentos a la trabajadora del case. Aimy

2

1  me solito fotografias con la mama de ████, tambien me pidio el record de las llamadas

2  y registro economicos comprobando que yo enviaba dinero para el cuidado de ████, yo

3  lo senti esto muy extraño porque tambien me pidio tener acceso a mi cuenta de Wester

4  Union.

5  13.    Esta trabajadora a la vez me pidio acceso a mi correos, mis registros de llamadas.

6  Yo sentia que me estaban investigando demasiado y los mas triste fue que al final de todo

7  esto, ella me dejo que porque ████ se habia portado mal no me iban a dar. Esta

8  tambien me dijo que ella no había querido decirme antes todo lo que estaba pasando con

9  ████ en el centro por que ella lo queria mucho. Lo raro de todo esto, era que segun esta

10 trabajadora de caso, a el solo hacia falta una semana para entregarmelo.

11 14.    La aultima trabajadora de caso se llama Monica Moncada, esta es del centro en el

12 que el esta acutalmente "YOLO"

13 15.    Esta muchacha se ha contactado conmigo mas que todo por medio de llamadas

14 telfonicas, pero esta siempre me sale con cosas deciendome que no me pueden dar a

15 ████ primero que porque mi estatus migratorio es dudoso ya que yo tengo TPS, luego

16 que me pidio un co- patrocinador, le envie el nombre y los datos de este a ella. Aparte de

17 todo esto me pidio de nuevo la informcaion que ya le habia enviado a las muchachas

18 anteriores. Actualmente lo que ella me dice que solo falta el estudio de casa el cual llevo

19 esperando desde hace mucho, ella solo me sabe decir que es el govierno el que esta

20 poniendo trabas.

21 16.    Yo declaro esto bajo la penalidad de perjurio y testifico que lo anterior es

22     verdadero y correcto.

23 17. Este declacion fue realizada en el mes de Octubre el dia 17 del año 2018, en la

24     ciudad de Harrisonburg, estado de Virginia.

25

26

27

28

3

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 69 of 95   Page ID
#:25509
Case 2:85-cv-04544-DMG-AGR   Document 501-2   Filed 10/19/18   Page 49 of 57   Page ID
#:24991

# Exhibit 32

# [Provisionally Filed Under Seal]

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 70 of 95   Page ID
#:25120
Case 2:85-cv-04544-DMG-AGR   Document 501-20   Filed 10/19/18   Page 50 of 57   Page ID
#:24992



**CFMG**
California Forensic Medical Group
I N C O R P O R A T E D

## CONSENT FOR MEDICATIONS

1. The nature of my mental condition has been explained to me by the doctor.

2. I have been informed that medication is a helpful form of mental health treatment, that there is a reasonable expectation I may benefit from prescribed medication, but there is no guarantee of improvement.

3. The doctor told me that there are five major groups of medications used for serious mental problems and that the medication(s) I take will be from the group(s) checked below:

   ☐ Major Tranquilizers (Neuroleptics)
   ☐ Lithium
   ☐ Anti-depressants
   ☐ Anti-anxiety Agents
   ☐ Stimulants (in children, for treatment of hyperactivity)

4. The probable side effects commonly known to occur with the drugs being prescribed have been discussed with me, I understand that if I want to know more about my medications I can ask for further information.

5. If the doctor prescribed a major tranquilizer (neuroleptic), he/she discussed with me tardive dyskinesia, an additional side effect which may cause involuntary movement of the face or mouth, hands and feet if the medication is taken beyond 3 months. This side effect may be potentially irreversible and may appear after the medication has been discontinued.

6. I understand that the use of alcohol and/or other medications while taking the prescribed medications may increase the severity of the side effects described to me.

7. I have been informed of my right to accept or refuse medications, and what, if any, reasonable alternatives are available.

8. I understand that this consent may be withdrawn at any time by stating such intention to any member of the treatment staff.

*I acknowledge that I have read and understand the above and agree to accept the medications prescribed for me.*

_____          _____
SIGNATURE OF PATIENT                        SIGNATURE OF PHYSICIAN

                                            8/22/18
PARENT/GUARDIAN/CONSERVATOR                 DATE

*I have discussed this form and its contents and the proposed medication with patient.*

   ☐ He/she understands the nature and effects of the medication and consents to taking such medication but does not wish to sign this form.

   ☐ He/she understands the nature and effects of the medication and refuses to take such medication.

_____          _____
DATE                                        SIGNATURE OF PHYSICIAN

*The patient whose name appears on this form has stated to me that he/she wishes to withdraw consent for the use of this medication*

_____          _____
DATE                                        SIGNATURE OF PHYSICIAN OR MEMBER OF THE TREATING STAFF

Medications (optional) _____

CFMG-CFM

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 71 of 95   Page ID
#:85511
Case 2:85-cv-04544-DMG-AGR   Document 301-2   Filed 10/19/18   Page 51 of 57   Page ID
#:24993

# Exhibit 33

# [Provisionally Filed Under Seal]

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 72 of 95   Page ID
#:25512
Case 2:85-cv-04544-DMG-AGR   Document 509-2   Filed 10/19/18   Page 52 of 57   Page ID
#:24994





## CONSENT FOR MEDICATIONS

1. The nature of my mental condition has been explained to me by the doctor.

2. I have been informed that medication is a helpful form of mental health treatment, that there is a reasonable expectation I may benefit from prescribed medication, but there is no guarantee of improvement.

3. The doctor told me that there are five major groups of medications used for serious mental problems and that the medication(s) I take will be from the group(s) checked below:

☐ Major Tranquilizers (Neuroleptics)
☐ Lithium
☐ Anti-depressants
☒ Anti-anxiety Agents
☐ Stimulants (in children, for treatment of hyperactivity)

4. The probable side effects commonly known to occur with the drugs being prescribed have been discussed with me. I understand that if I want to know more about my medications I can ask for further information.

5. If the doctor prescribed a major tranquilizer (neuroleptic), he/she discussed with me tardive dyskinesia, an additional side effect which may cause involuntary movement of the face or mouth, hands and feet if the medication is taken beyond 3 months. This side effect may be potentially irreversible and may appear after the medication has been discontinued.

6. I understand that the use of alcohol and/or other medications while taking the prescribed medications may increase the severity of the side effects described to me.

7. I have been informed of my right to accept or refuse medications, and what, if any, reasonable alternatives are available.

8. I understand that this consent may be withdrawn at any time by stating such intention to any member of the treatment staff.

*I acknowledge that I have read and understand the above and agree to accept the medications prescribed for me.*

_____    SIGNATURE OF PHYSICIAN _____
SIGNATURE OF PATIENT                                    8/14/18
                                                         DATE

PARENT/GUARDIAN/CONSERVATOR

*I have discussed this form and its contents and the proposed medication with patient.*

☐ He/she understands the nature and effects of the medication and consents to taking such medication but does not wish to sign this form.

☐ He/she understands the nature and effects of the medication and refuses to take such medication.

_____    _____
DATE                         SIGNATURE OF PHYSICIAN

*The patient whose name appears on this form has stated to me that he/she wishes to withdraw consent for the use of this medication*

_____    _____
DATE                         SIGNATURE OF PHYSICIAN OR MEMBER OF THE TREATING STAFF

Medications (optional) _____

CFMG-CFM

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 73 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 505-3   Filed 10/19/18   Page 53 of 57   Page ID
#:24995

# Exhibit 34

# [Provisionally Filed Under Seal]

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 74 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 305-24   Filed 10/19/18   Page 54 of 57   Page ID
#:24996

I, ████████████, declare as follows:

1. This declaration is based on my personal knowledge. If called to testify in this case, I would testify competently about these facts.

2. I am 17 years old. My alien number is ████████. I am currently being held in ORR custody at the Yolo County Juvenile Detention Center in Woodland, California.

<u>Notification and Medication</u>

3. I came to the United States from El Salvador, crossing the Texas border on February 5, 2018.

4. I was apprehended by officers and kept detained in a prison for 5 days in Texas. I do not remember much about the cell that I was kept in but I remember the I was alone in one cell.

5. I was first taken to Holy Family in Pennsylvania. When I was in Holy Family, I got in a verbal fight with another kid. The other kid approached me and showed me his fist, which made me fear that he was going to hit me. In response I did not punch back, but I pushed him away from me. The head of the center called the police, and when the police came they were waiting for me to capture me and take me away.

6. The police took me to the psychiatric hospital to evaluate my behavior. My father was never informed that I was being taken to the hospital.

7. I was in the psychiatric hospital for nine days, without being able to call my father to tell him where I was. The hospital took blood tests from me, and also tried to make me take pills every day, sometimes putting them in my mouth directly. They did not explain what the pills were for. I did not want to take the pills so I hid them in my mouth. Since my father was never told I was in the hospital, he did not know about the medication that the hospital staff tried to force me to take.

8. I was taken from the hospital to Yolo on March 5. I was not told where I was going—I was only told that I was being moved to a juvenile jail. I was then given a document that

1

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 75 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 385-25   Filed 10/19/18   Page 55 of 57   Page ID
#:24997

said I was being transferred to Yolo for behavioral issues. I was given a short time to read and sign this document. My father was not told where I was being taken.

9. I was put on a flight with other strangers, who looked like tourists. I could not talk to them; I was intimidated and embarrassed to be on the flight.

<u>Delay in Sponsorship Approval</u>

10. My father first started the sponsorship process when I was in Holy Family. After I was hospitalized and I was moved to Yolo, my father restarted the sponsorship process.

11. At Yolo, the social worker has requested more information from my father.

12. Around 45 days ago, my father submitted his fingerprints. We have not gotten back any results back. The social worker keeps telling me that the government is being slow, that I need to be patient, and that my father should be approved shortly.

13. Today the social worker told me that she is going to pressure the government to process my father's fingerprints because that is the only thing holding me from being reunited with my father.

14. While I have been here at Yolo, I have tried to be on my best behavior. It has been hard staying patient while I have been told I will be released any day, and yet I have been kept here for eight months.

<u>Unnecessary Punishment</u>

15. Within the first two weeks of my being at Yolo, I was pepper sprayed. Some other kids and I got frustrated when the guard refused to give us chips, and started throwing our milk around. The guard got angry and told us to cover. We did not obey the guard because we did not understand why we were being told to cover just for playing around. One of the other kids kept throwing milk again, and that is when the guard pepper sprayed me right in my face.

16. After the guard sprayed me, he took me into a corner and forced me to kneel. The pepper spray hurt so bad that I stood up and tried to find water to wash off the spray. The guards handcuffed me and took me outside, leaving me and other kids outside in the

2

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 76 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 305-26   Filed 10/19/18   Page 56 of 57   Page ID
#:24998

hot sun for around 15 minutes without giving us water to wash off the spray. It was so painful that I rubbed my face in the grass to try and get the spray off. After this the doctor and nurse helped me and asked the guards to take me to showers. As further punishment, I was not allowed to go outside at all the next day.

17. In class, the teacher did not speak Spanish and we had a hard time understanding him. One day we kept asking him questions trying to understand him, but he would not explain better what he was saying. Everyone in the classroom became upset and rebelled, standing up from their desks. The teacher called in the staff, which used a big can of pepper spray because they could not control the group.

18. About two months after I was taken to Yolo, I tried to stay out of trouble, and I stayed on my best behavior. I stayed on my best behavior for three months but was frustrated that I was never stepped down. This frustration has made me act out a few times since, but in the past two months again I have been behaving well again. It is so hard to behave well when I know I have no reason to stay here.

19. Yesterday I was feeling unwell in the afternoon and did not feel that I could eat the lunch they gave me. The staff deducted me a point just because I did not eat the lunch. Eventually I was able to talk with the supervisor, who was understanding, and said that he would make sure I got the point back.

Medication

20. Yesterday I was given four vaccination shots. The staff told me that I must get the shots in order to leave Yolo. They tell me I need to get three more shots. I do not know if my father was told about this, or if he gave Yolo permission.

Conditions

21. The food here is awful, especially the lunch. They do not give us much to drink besides water and milk every day. Water and milk.

3

**Page 178**

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 77 of 95   Page ID
Case 2:85-cv-04544-DMG-AGR   Document 305-27   Filed 10/19/18   Page 57 of 57   Page ID
#:24999

22. The water is so hot ("esa agua puta de aqui quema todo"). There is one shower that we
   all wait for, that only has one water stream. We all want to use that shower because it
   burns us less.

23. Since July, workers at Yolo have kept telling me that I will be leaving soon, and to be
   patient. They have told me this so often that I have stopped believing them.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 17
day of October, 2018, at Woodland, California.

## CERTIFICATE OF TRANSLATION

My name is Suyapa Lainez and I swear that I am fluent in both the English and Spanish languages and I
translated the foregoing declaration from English to Spanish to the best of my abilities.

Dated: October 17, 2018

Suyapa Lainez

4

# Exhibit 35

# [Provisionally Filed Under Seal]



**Notice of Placement
in a Restrictive Setting**
Office of Refugee Resettlement

You are in the custody of the Office of Refugee Resettlement (ORR), and have been placed in a restrictive setting - a secure or staff secure facility, or a Residential Treatment Center (RTC). The reason you have been placed in a restrictive setting is listed below.

If you have any questions about this placement, please discuss them with your case manager, your attorney, or an ORR-funded legal service provider.

| UAC Name | Alien Number | Country of Birth | Date of Birth | Gender |
|---|---|---|---|---|
| ▉ | ▉ | Honduras | ▉ | Male |

| Name of Care Provider Facility | Type of Facility |
|---|---|
| Yolo County Juvenile Detention Facility | Secure |

**Secure Care:** ORR has determined that you pose a danger to self or others; or have been charged with having committed a criminal offense. ORR considered that you:

☐ Are charged with, may be chargeable, or have been convicted of a crime; or are the subject of delinquency proceedings, have been adjudicated delinquent, or are chargeable with a delinquent act[1];

☐ Have committed, or have made credible threats to commit a violent or malicious act while in ORR custody;

☐ Have committed, threatened to commit, or engaged in serious, self-harming behavior that poses a danger to self while in ORR custody;

☐ Have engaged in conduct that has proven to be disruptive of the normal functioning of a staff secure facility in which you were placed such that transfer may be necessary to ensure your welfare or the welfare of others;

☐ Have reported gang involvement or display gang affiliation while in care;

☐ Have self-disclosed violent criminal history or gang involvement prior to placement in ORR custody that requires further assessment; and/or,

☐ Have a history of or display sexual predatory behavior, or have inappropriate sexual behavior.

**Staff Secure Care:** ORR has determined that you require close supervision, but do not require placement in a secure care provider facility. ORR considered that you:

☐ Have been disruptive to the normal functioning of a shelter care facility such that transfer is necessary to ensure the welfare of others;

☐ Are an escape risk;

☐ Have non-violent criminal or delinquent history not warranting placement in a secure care provider facility, such as isolated or petty offenses; or,

☐ Could be stepped down from a secure facility.

**Residential Treatment Center:** ORR has determined that you have a psychiatric or psychological issue that cannot be addressed in an outpatient setting. A licensed psychologist or psychiatrist has indicated that you:

☐ Have not shown reasonable progress in the alleviation of your mental health symptoms after a significant period of time in outpatient treatment;

☐ Demonstrate behavior that is a result of your underlying mental health symptoms and/or diagnosis and cannot be managed in an outpatient setting;

☐ Require therapeutic-based intensive supervision as a result of mental health symptoms and/or diagnosis that prevent you from independent participation in the daily schedule of activities; and/or,

☐ Present a continued and real risk of harm to self, others, or the community, despite the implementation of short-term clinical interventions.

---

[1] Excluding: isolated offenses that (1) were not within a pattern or practice of criminal activity and (2) did not involve violence against a person, or the use or carrying of a weapon (e.g., breaking and entering, vandalism, DUI, etc.); or petty offenses which are not considered grounds for a stricter means of detention in any case (e.g., shoplifting, joy riding, disturbing the peace, status offenses).

Notice of Placement in a Restrictive Setting, 02/05/2018
ORR UAC/P-4

Vol. VII 404

Notice of Placement in a Restrictive Setting

Summary of placement decision or case review:

███ was previously placed at Yolo Secure (5/4/18 to 6/5/18) prior to returning to Honduras on a Voluntary Departure order. ███ will be reassessed to determine if appropriately placed.

ORR will review your placement, at a minimum, every 30 days to determine whether your placement in a restrictive level of care is still necessary. If you remain in a secure facility or RTC after 30 days, you may request that the ORR Director reconsider your placement. For more information on this process, please ask your case manager.

If you believe you have not been properly placed or that you have been treated improperly you may also ask a Federal District Court to review your case. You may call a lawyer to assist you.

**UAC's acknowledgement of receipt:**

████████████     29/8/2018

UAC's Signature            Date

Usted está bajo la custodia de la Oficina de Restablecimiento de Refugiados (ORR) y se le ha colocado en el lugar restrictivo - Instalación segura o de seguridad personal o un Centro de Tratamiento Residencial (RTC).   La razón por la que ha sido colocado en un lugar restrictivo está documentada en la sesión de abajo.

Si tienes alguna pregunta sobre este traslado o ubicación, la puedes discutir con tu administrador de casos, tu abogado o algún proveedor de servicios legales financiado por ORR.

| Nombre de UAC | Numero de Extranjero | País de Nacimiento | Fecha de Nacimiento | Género |
|---|---|---|---|---|
| ███████████ | ████████ | Honduras | ████████ | M |

| Nombre de  Instalación  bajo Cuidado | Tipo de Instalación |
|---|---|
| Yolo County Juvenile Detention Facility | Seguro |

**Centro Seguro:** ORR ha determinado que usted representa un peligro para sí mismo o para los demás; o has sido acusado de haber cometido un delito. ORR consideró que usted:

- o Estas acusados, o puedes ser acusados o han sido condenados de un delito; o eres sujeto a un procedimiento por delincuencia, o has sido declarado delincuente o tienes un cargo por un acto de delincuencia.

- o Ha cometido o ha hecho una amenaza creíble de cometer un acto violento o malicioso mientras te encuentra bajo la custodia de ORR.

- o Has cometido, amenazado con cometer, o a tenido comportamiento serio y autodestructivo que representan un peligro para sí mismos mientras se encuentran bajo la custodia de la ORR.

- o Has participado en una conducta que ha demostrado ser perjudicial para el funcionamiento normal de una instalación segura o el personal en la que fue colocado, de tal manera que su transfiero tuvo que ser necesario para garantizar su bienestar o el bienestar de los demás.

- o Has reportado la participación de estar en una pandilla o de estar afiliado a una pandilla mientras estas bajo cuidado;

- o Tu mismo reportaste haber tenido antecedentes penales violentos o de haber participado en pandillas antes de estar bajo el cuidado de ORR y ahora requiere una evaluación adicional; y/o,

- o Tienes un historial o has exhibido una conducta depredadora, o de tener un comportamiento sexual inapropiado.

**Centro Seguro Personal:** ORR ha determinado que tú requieres una supervisión cercana, pero no requieres la colocación en un centro seguro. ORR consideró lo siguiente;

- o Has sido cambiado debido a tu comportamiento destructivo en el albergue/amparo de tal manera que el traslado fue necesario para garantizar el bienestar de los demás;

- o Estas en riesgo de escape/fuga,

- o Tienes antecedentes penales no violentos o tienes antecedentes delincuentes que no justifican el traslado a un centro seguro, como ofensas aisladas u ofensas menores; o,

- o Puedes ser dimitido a una instalación de seguridad baja.

**Centro de tratamiento residencial:** ORR ha determinado que tienes un problema psiquiátrico o psicológico que no puede ser tratado en un lugar ambulatorio.  Un psicólogo (con licencia) o psiquiatra ha indicado que tu:

- o No has mostrado un progreso razonable de tus síntomas de salud mental después de un período significativo en tratamiento;

- o Tu comportamiento ha demostrado que es un resultado debido de tu salud mental, o tu diagnóstico de salud mental y no puede ser tratado en un lugar ambulatorio;

- o Requieres una base terapéutica intensa con supervisión debido de tus síntomas de salud mental o tu diagnostico te impide tener la participación independiente en programas diarios de actividades; y/o,

- o Presentas un riesgo continuo de hacerte daño a sí mismo, a otros en la comunidad, a pesar de la implementación de intervenciones clínicas a corto plazo.

Resumen de decisión sobre la colocación o revisión de caso

██████ se colocó previamente en Yolo Secure (5/4/18 al 6/5/18) antes de regresar a Honduras en una orden de Salida Voluntaria. Se volverá a evaluar a ██████ para determinar si se colocó adecuadamente

ORR revisará tu colocación, como mínimo, cada 30 días para determinar si su ubicación en un nivel restrictivo de atención sigue siendo necesaria. Si permaneces en un centro seguro o RTC después de 30 días, puede solicitar que el Director de ORR reconsidere tu ubicación. Para obtener más información sobre este proceso, consulte a su administrador de casos.

Si crees que no has sido colocado correctamente o que te trataron de manera incorrecta, también puedes pedirle a un Tribunal del Distrito Federal que revise tu caso. También, puedes llamar a un abogado para que lo asista.

UAC Reconocimiento de recibo:



_____                    29/8/2018
Firma de UAC                                Fecha

# Exhibit 36

## [Provisionally Filed Under Seal]



U.S. Department of Health and Human Services

Office of Refugee Resettlement
Authorization for Medical, Dental, and Mental Health Care, Rev. 11/01/2011

### OFFICE OF REFUGEE RESETTLEMENT
### Division of Children's Services
### AUTHORIZATION FOR MEDICAL, DENTAL, AND MENTAL HEALTH CARE

The Department of Health and Human Service (HHS), Office of Refugee Resettlement (ORR), Division of Children's Services (DCS) is responsible for coordinating and implementing the care and custody of the following minor pursuant to section 462 of the Homeland Security Act of 2002 (6 U.S.C. §279):

Minor's Name: ███████████     Alien Number: ██████████

Date of Birth: ████████     Nationality: Honduras

ORR hereby Authorizes , hereinafter "care provider," to arrange medical, dental, and mental health care for said minor under the following terms and conditions:

care provider : Yolo County Juvenile Detention

**1. Licensing and Reimbursement**

• All medical, dental, or mental health services for the minor will be by a State licensed provider.

• The licensed medical, dental, or mental health provider must be willing to accept the Medicare reimbursement rate, payment on a fee for service basis, or to provide services for no fee.

**2. Authorization and Notification**

• The care provider shall secure authorization from ORR before consenting to any non-emergency medical, dental or medical health services; except for initial medical screening.

• The care provider shall consent to the provision of emergency treatment recommended by a licensed medical, dental, or mental health provider. The care provider shall notify ORR of the emergency immediately following treatment if possible, or within 24 hours after the initial incident.

• Significant surgical or medical procedures require heightened ORR involvement. Please refer to ORR instructions and procedures on medical services requiring heightened ORR involvement in these special cases.

• Minors have the right to be tested for HIV or other sexually transmitted diseases; the care provider shall ensure the minor receives the test(s) as requested.

• The care provider is authorized to dispense over-the-counter medications and prescription



U.S. Department of Health and Human Services

Office of Refugee Resettlement
Authorization for Medical, Dental, and Mental Health Care, Rev. 11/01/2011

### 3. Medical and Dental Exams/Screenings

•Minors in care shall receive a medical exam within 48 hours of placement in a care provider program, unless the minor obtained a medical exam within one calendar year and while under the care of another ORR-funded care provider.

•Minors in care shall also receive an initial dental examination within 90 days of placement, but no sooner than their 30th day in the custody of ORR.

### 4. Immunizations

•The care provider shall ensure that all minors in care receive necessary immunizations.

•Females 10 years or older must undergo a quantitative blood pregnancy test, with the minor's consent, before being administered any immunization.

### 5. Medical, Dental, and Mental Health Records/Confidentiality

•Care providers shall (1) obtain copies of all screenings, exams, or testing performed on a minor in care, signed by the licensed health care professional, (2) provide copies to ORR, when requested, and (3) ensure that medical records are maintained in the minor's file.

•All records maintained by the care provider in reference to the minor's health care are the property of ORR. Care providers may not release health information about the minor to any individual or organization without prior express authorization of ORR, except in the following instances: to the minor's educational program or medical, mental health, dental, and other service providers to the extent that the information is needed for the minor's education, recreation, social development,

| | | |
|---|---|---|
| _signature_ | 08/29/2018 | 530/406 - 5317 |
| Signature - Authorized Representative of Care Provider | Date | Telephone Number |
| _signature_ | 08/29/2018 | 202-401-5709 |
| Signature - Official Representative | Date | Telephone Number |

**Office of Refugee Resettlement**
**Administration for Children and Families**

1. "Immunizations and Pregnancy Testing," April 2, 2008, http://www.acf.hhs.gov/programs/orr/programs/ORRPolicy4208.pdf

# Exhibit 37

# [Provisionally Filed Under Seal]



**Notice of Placement
in a Restrictive Setting**
Office of Refugee Resettlement

You are in the custody of the Office of Refugee Resettlement (ORR), and have been placed in a restrictive setting - a secure or staff secure facility, or a Residential Treatment Center (RTC). The reason you have been placed in a restrictive setting is listed below.

If you have any questions about this placement, please discuss them with your case manager, your attorney, or an ORR-funded legal service provider.

| UAC Name | Alien Number | Country of Birth | Date of Birth | Gender |
|---|---|---|---|---|
| ▮ | ▮ | Honduras | ▮ | Male |

| Name of Care Provider Facility | Type of Facility |
|---|---|
| Yolo County Juvenile Detention Facility | Secure |

**Secure Care:** ORR has determined that you pose a danger to self or others; or have been charged with having committed a criminal offense. ORR considered that you:

☐ Are charged with, may be chargeable, or have been convicted of a crime; or are the subject of delinquency proceedings, have been adjudicated delinquent, or are chargeable with a delinquent act[1];

☐ Have committed, or have made credible threats to commit a violent or malicious act while in ORR custody;

■ Have committed, threatened to commit, or engaged in serious, self-harming behavior that poses a danger to self while in ORR custody;

■ Have engaged in conduct that has proven to be disruptive of the normal functioning of a staff secure facility in which you were placed such that transfer may be necessary to ensure your welfare or the welfare of others;

☐ Have reported gang involvement or display gang affiliation while in care;

☐ Have self-disclosed violent criminal history or gang involvement prior to placement in ORR custody that requires further assessment; and/or,

☐ Have a history of or display sexual predatory behavior, or have inappropriate sexual behavior.

**Staff Secure Care:** ORR has determined that you require close supervision, but do not require placement in a secure care provider facility. ORR considered that you:

☐ Have been disruptive to the normal functioning of a shelter care facility such that transfer is necessary to ensure the welfare of others;

☐ Are an escape risk;

☐ Have non-violent criminal or delinquent history not warranting placement in a secure care provider facility, such as isolated or petty offenses; or,

☐ Could be stepped down from a secure facility.

**Residential Treatment Center:** ORR has determined that you have a psychiatric or psychological issue that cannot be addressed in an outpatient setting. A licensed psychologist or psychiatrist has indicated that you:

☐ Have not shown reasonable progress in the alleviation of your mental health symptoms after a significant period of time in outpatient treatment;

☐ Demonstrate behavior that is a result of your underlying mental health symptoms and/or diagnosis and cannot be managed in an outpatient setting;

☐ Require therapeutic-based intensive supervision as a result of mental health symptoms and/or diagnosis that prevent you from independent participation in the daily schedule of activities; and/or,

☐ Present a continued and real risk of harm to self, others, or the community, despite the implementation of short-term clinical interventions.

[1] Excluding: isolated offenses that (1) were not within a pattern or practice of criminal activity and (2) did not involve violence against a person, or the use or carrying of a weapon (e.g., breaking and entering, vandalism, DUI, etc.); or petty offenses which are not considered grounds for a stricter means of detention in any case (e.g., shoplifting, joy riding, disturbing the peace, status offenses).

**Notice of Placement in a Restrictive Setting**

Summary of placement decision or case review:

150 day review- ████ has began to demonstate improvement in his behavior. It appears that now that his reunification case is making progress, he is more receptive and determined to succeed. A recommendation for consideration of a Residential Treatment Center was submitted after staffing case with FFS due to concerns. Both RTC programs within the ORR network denied placement due to past and recent behavior. Yolo Secure will continue to explore all options while his home study process is completed.

ORR will review your placement, at a minimum, every 30 days to determine whether your placement in a restrictive level of care is still necessary. If you remain in a secure facility or RTC after 30 days, you may request that the ORR Director reconsider your placement.  For more information on this process, please ask your case manager.

If you believe you have not been properly placed or that you have been treated improperly you may also ask a Federal District Court to review your case. You may call a lawyer to assist you.

**UAC's acknowledgement of receipt:**

████████████████   _____   9/28/2018

UAC's Signature                              Date

Usted está bajo la custodia de la Oficina de Restablecimiento de Refugiados (ORR) y se le ha colocado en el lugar restrictivo - Instalación segura o de seguridad personal o un Centro de Tratamiento Residencial (RTC).   La razón por la que ha sido colocado en un lugar restrictivo está documentada en la sesión de abajo.

Si tienes alguna pregunta sobre este traslado o ubicación, la puedes discutir con tu administrador de casos, tu abogado o algún proveedor de servicios legales financiado por ORR.

| Nombre de UAC | Numero de Extranjero | País de Nacimiento | Fecha de Nacimiento | Género |
|---|---|---|---|---|
| ■■■■■■■ | ■■■■ | Honduras | ■■■■■ | M |

| Nombre de Instalación bajo Cuidado | Tipo de Instalación |
|---|---|
| Yolo County Juvenile Detention Facility | Seguro |

**Centro Seguro:** ORR ha determinado que usted representa un peligro para sí mismo o para los demás; o has sido acusado de haber cometido un delito. ORR consideró que usted:

- o   Estas acusados, o puedes ser acusados o han sido condenados de un delito; o eres sujeto a un procedimiento por delincuencia, o has sido declarado delincuente o tienes un cargo por un acto de delincuencia.

- o   Ha cometido o ha hecho una amenaza creíble de cometer un acto violento o malicioso mientras te encuentra bajo la custodia de ORR.

- ✓   Has cometido, amenazado con cometer, o a tenido comportamiento serio y autodestructivo que representan un peligro para sí mismos mientras se encuentran bajo la custodia de la ORR.

- ✓   Has participado en una conducta que ha demostrado ser perjudicial para el funcionamiento normal de una instalación segura o el personal en la que fue colocado, de tal manera que su transfiero tuvo que ser necesario para garantizar su bienestar o el bienestar de los demás.

- o   Has reportado la participación de estar en una pandilla o de estar afiliado a una pandilla mientras estas bajo cuidado;

- o   Tu mismo reportaste haber tenido antecedentes penales violentos o de haber participado en pandillas antes de estar bajo el cuidado de ORR y ahora requiere una evaluación adicional; y /o,

- o   Tienes un historial o has exhibido una conducta depredadora, o de tener un comportamiento sexual inapropiado.

**Centro Seguro Personal:** ORR ha determinado que tú requieres una supervisión cercana, pero no requieres la colocación en un centro seguro. ORR consideró lo siguiente:

- o   Has sido cambiado debido a tu comportamiento destructivo en el albergue/amparo de tal manera que el traslado fue necesario para garantizar el bienestar de los demás;

- o   Estas en riesgo de escape/fuga,

- o   Tienes antecedentes penales no violentos o tienes antecedentes delincuentes que no justifican el traslado a un centro seguro, como ofensas aisladas u ofensas menores; o,

- o   Puedes ser dimitido a una instalación de seguridad baja.

**Centro de tratamiento residencial:** ORR ha determinado que tienes un problema psiquiátrico o psicológico que no puede ser tratado en un lugar ambulatorio. Un psicólogo (con licencia) o psiquiatra ha indicado que tu:

- o   No has mostrado un progreso razonable de tus síntomas de salud mental después de un periodo significativo en tratamiento;

- o   Tu comportamiento ha demostrado que es un resultado debido de tu salud mental, o tu diagnóstico de salud mental y no puede ser tratado en un lugar ambulatorio;

- o   Requieres una base terapéutica intensa con supervisión debido a tus síntomas de salud mental o tu diagnostico te impide tener la participación independiente en programas diarios de actividades; y/o,

- o   Presentas un riesgo continuo de hacerte daño a sí mismo, a otros en la comunidad, a pesar de la implementación de intervenciones clínicas a corto plazo.

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 90 of 95   Page ID
#:25530
Case 2:85-cv-04544-DMG-AGR   Document 501-3   Filed 10/19/18   Page 13 of 23   Page ID
#:25012

Resumen de decisión sobre la colocación o revisión de caso

Revisión de 150 días ███ ha comenzado a demostrar una mejoría en su comportamiento. Parece que ahora que su caso de reunificación está progresando, él es más receptivo y está decidido a tener éxito. Una recomendación para la consideración de un Centro de Tratamiento Residencial se presentó después del caso de dotación de personal con FFS debido a preocupaciones. Ambos programas de RTC dentro de la red de ORR negaron la colocación debido a un comportamiento pasado y reciente. Yolo Secure continuará explorando todas las opciones mientras se completa el proceso de estudio de su hogar.

ORR revisará tu colocación, como mínimo, cada 30 días para determinar si su ubicación en un nivel restrictivo de atención sigue siendo necesaria. Si permaneces en un centro seguro o RTC después de 30 días, puede solicitar que el Director de ORR reconsidere tu ubicación.  Para obtener más información sobre este proceso, consulte a su administrador de casos.

Si crees que no has sido colocado correctamente o que te trataron de manera incorrecta, también puedes pedirle a un Tribunal del Distrito Federal que revise tu caso. También, puedes llamar a un abogado para que lo asista.

UAC Reconocimiento de recibo:

Firma de UAC

Fecha

# Exhibit 38

## [Provisionally Filed Under Seal]



U.S. Department of Health and Human Services

Office of Refugee Resettlement
Authorization for Medical, Dental, and Mental Health Care, Rev. 11/01/2011

**OFFICE OF REFUGEE RESETTLEMENT**
**Division of Children's Services**
**AUTHORIZATION FOR MEDICAL, DENTAL, AND MENTAL HEALTH CARE**

The Department of Health and Human Service (HHS), Office of Refugee Resettlement (ORR), Division
of Children's Services (DCS) is responsible for coordinating and implementing the care and custody of
the following minor pursuant to section 462 of the Homeland Security Act of 2002 (6 U.S.C. §279):

Minor's Name: ███████████     Alien Number: ████████

Date of Birth: ████████     Nationality: Honduras

ORR hereby Authorizes, hereinafter "care provider," to arrange medical, dental, and mental
health care for said minor under the following terms and conditions:

care provider :     Yolo County Juvenile Detention

**1. Licensing and Reimbursement**

•All medical, dental, or mental health services for the minor will be by a State licensed provider.

•The licensed medical, dental, or mental health provider must be willing to accept the Medicare
reimbursement rate, payment on a fee for service basis, or to provide services for no fee.

**2. Authorization and Notification**

•The care provider shall secure authorization from ORR before consenting to any non-emergency
medical, dental or medical health services; except for initial medical screening.

•The care provider shall consent to the provision of emergency treatment recommended by a
licensed medical, dental, or mental health provider. The care provider shall notify ORR of the
emergency immediately following treatment if possible, or within 24 hours after the initial incident.

•Significant surgical or medical procedures require heightened ORR involvement. Please refer to
ORR instructions and procedures on medical services requiring heightened ORR involvement in
these special cases.

•Minors have the right to be tested for HIV or other sexually transmitted diseases; the care provider
shall ensure the minor receives the test(s) as requested.

•The care provider is authorized to dispense over-the-counter medications and prescription



U.S. Department of Health and Human Services

Office of Refugee Resettlement
Authorization for Medical, Dental, and Mental Health Care, Rev. 11/01/2011

### 3. Medical and Dental Exams/Screenings

•Minors in care shall receive a medical exam within 48 hours of placement in a care provider program, unless the minor obtained a medical exam within one calendar year and while under the care of another ORR-funded care provider.

•Minors in care shall also receive an initial dental examination within 90 days of placement, but no sooner than their 30th day in the custody of ORR.

### 4. Immunizations

•The care provider shall ensure that all minors in care receive necessary immunizations.

•Females 10 years or older must undergo a quantitative blood pregnancy test, with the minor's consent, before being administered any immunization.

### 5. Medical, Dental, and Mental Health Records/Confidentiality

•Care providers shall (1) obtain copies of all screenings, exams, or testing performed on a minor in care, signed by the licensed health care professional, (2) provide copies to ORR, when requested, and (3) ensure that medical records are maintained in the minor's file.

•All records maintained by the care provider in reference to the minor's health care are the property of ORR. Care providers may not release health information about the minor to any individual or organization without prior express authorization of ORR, except in the following instances: to the minor's educational program or medical, mental health, dental, and other service providers to the extent that the information is needed for the minor's education, recreation, social development,

| | | |
|---|---|---|
| Signature - Authorized Representative of Care Provider | 09/02/2018 | 530/406-5717 |
| | Date | Telephone Number |
| Signature - Official Representative | 09/02/2018 | 202-401-5709 |
| **Office of Refugee Resettlement** | Date | Telephone Number |
| **Administration for Children and Families** | | |

1. "Immunizations and Pregnancy Testing," April 2, 2008. http://www.acf.hhs.gov/programs/orr/programs/ORRPolicy4208.pdf

# Exhibit 39

## [Provisionally Filed Under Seal]

Case 2:85-cv-04544-DMG-AGR   Document 510-1   Filed 10/30/18   Page 95 of 95   Page ID
#:25535
Case 2:85-cv-04544-DMG-AGR   Document 501-3   Filed 10/19/18   Page 18 of 23   Page ID
#:25017





## CONSENT FOR MEDICATIONS

1.  The nature of my mental condition has been explained to me by the doctor.

2.  I have been informed that medication is a helpful form of mental health treatment, that there is a reasonable expectation I may benefit from prescribed medication, but there is no guarantee of improvement.

3.  The doctor told me that there are five major groups of medications used for serious mental problems and that the medication(s) I take will be from the group(s) checked below:

    ☐ Major Tranquilizers (Neuroleptics)
    ☐ Lithium
    ☐ Anti-depressants
    ☒ Anti-anxiety Agents  *Venex*
    ☐ Stimulants (in children, for treatment of hyperactivity)

4.  The probable side effects commonly known to occur with the drugs being prescribed have been discussed with me. I understand that if I want to know more about my medications I can ask for further information.

5.  If the doctor prescribed a major tranquilizer (neuroleptic), he/she discussed with me tardive dyskinesia, an additional side effect which may cause involuntary movement of the face or mouth, hands and feet if the medication is taken beyond 3 months. This side effect may be potentially irreversible and may appear after the medication has been discontinued.

6.  I understand that the use of alcohol and/or other medications while taking the prescribed medications may increase the severity of the side effects described to me.

7.  I have been informed of my right to accept or refuse medications, and what, if any, reasonable alternatives are available.

8.  I understand that this consent may be withdrawn at any time by stating such intention to any member of the treatment staff.

*I acknowledge that I have read and understand the above and agree to accept the medications prescribed for me.*

_____          _____
SIGNATURE OF PATIENT                          SIGNATURE OF PHYSICIAN

_____          8/8/18
PARENT/GUARDIAN/CONSERVATOR                   DATE

*I have discussed this form and its contents and the proposed medication with patient.*

☐  *He/she understands the nature and effects of the medication and consents to taking such medication but does not wish to sign this form.*

☐  *He/she understands the nature and effects of the medication and refuses to take such medication.*

_____          _____
DATE                                          SIGNATURE OF PHYSICIAN

*The patient whose name appears on this form has stated to me that he/she wishes to withdraw consent for the use of this medication*

_____          _____
DATE                                          SIGNATURE OF PHYSICIAN OR MEMBER OF THE TREATING STAFF

Medications (optional)_____

CFMG-CFM