CARLOS R. HOLGUÍN (Cal. Bar No. 90754)
PETER A. SCHEY (Cal. Bar No. 58232)
Center for Human Rights & Constitutional Law
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Email: crholguin@centerforhumanrights.org
         pschey@centerforhumanrights.org

ORRICK, HERRINGTON & SUTCLIFFE LLP
Elena Garcia (Cal. Bar No. 299680)
egarcia@orrick.com
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone:  (213) 629-2020

*Listing continues on next page*

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*, | Case No. CV 85-4544-DMG(AGRx) |
| Plaintiffs, | NOTICE OF MOTION AND MOTION TO ENFORCE SETTLEMENT |
| v. | |
| JEFFERSON B. SESSIONS, Attorney General, *et al.*, | Hearing:  November 30, 2018<br>Time:      9:30 a.m.<br>Room:     1st St. Courthouse<br>              Courtroom 8C |
| Defendants. | |

*Counsel for Plaintiffs, continued*

LEECIA WELCH (CAL. BAR NO. 208741)
NEHA DESAI (CAL. RLSA BAR NO. 803161)
CRYSTAL ADAMS (CAL. BAR NO. 308638)
National Center for Youth Law
405 14th Street, 15th Floor
Oakland, CA 94612
Telephone: (510) 835-8098
Email: lwelch@youthlaw.org
        ndesai@youthlaw.org
        cadams@youthlaw.org

HOLLY S. COOPER (Cal. Bar No. 197626)
Co-Director, Immigration Law Clinic
CARTER C. WHITE (Cal. Bar No. 164149)
Director, Civil Rights Clinic
University of California Davis School of Law
One Shields Ave. TB 30
Davis, CA 95616
Telephone: (530) 754-4833
Email: hscooper@ucdavis.edu
        ccwhite@ucdavis.edu

LA RAZA CENTRO LEGAL, INC.
Michael S. Sorgen (Cal. Bar No. 43107)
474 Valencia Street, #295
San Francisco, CA 94103
Telephone: (415) 575-3500

THE LAW FOUNDATION OF SILICON VALLEY
Jennifer Kelleher Cloyd (Cal. Bar No. 197348)
Katherine H. Manning (Cal. Bar No. 229233)
Annette Kirkham (Cal. Bar No. 217958)
152 North Third Street, 3rd floor
San Jose, CA 95112
Telephone: (408) 280-2437
Facsimile:  (408) 288-8850
Email:   jenniferk@lawfoundation.org
         kate.manning@lawfoundation.org
         annettek@lawfoundation.org

1

*Of counsel:*

2

YOUTH LAW CENTER
3
Virginia Corrigan (Cal. Bar No. 292035)

4
832 Folsom Street, Suite 700

5
     San Francisco, CA 94104
     Telephone: (415) 543-3379
6

7
     / / /
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

To Defendants and their attorneys of record:

PLEASE TAKE NOTICE that on November 30, 2018, at at 9:30 a.m. or as soon thereafter as counsel may be heard, Plaintiffs will and do hereby move the Court for a class-wide order (i) declaring Defendants in anticipatory breach of the settlement approved by this Court on January 28, 1997 ("Settlement"); (ii) provisionally adjudicating Defendants in civil contempt of the Settlement and the Court's orders enforcing it; and (iii) enjoing Defendants against implementing the proposed regulations published at 83 Fed. Reg. 45486 (Sept. 7, 2018), or their material equivalents.

This motion is based upon the memorandum of law and exhibits filed concurrently herewith, and all other matters of record; it is brought following a meeting of counsel pursuant to Local Rule 7-3 and ¶ 37 of the Settlement on, *inter alia*, October 19, 2018.

Dated: November 2, 2018.

CARLOS R. HOLGUÍN
PETER A. SCHEY
Center for Human Rights &
Constitutional Law

LEECIA WELCH
NEHA DESAI
National Center for Youth Law

HOLLY S. COOPER
CARTER WHITE
U.C. Davis School of Law

ELENA GARCIA
Orrick, Herrington & Sutcliffe, LLP

LA RAZA CENTRO LEGAL, INC.
Michael S. Sorgen (Cal. Bar No.
43107)
THE LAW FOUNDATION OF SILICON
VALLEY

*Of counsel:*
YOUTH LAW CENTER
Virginia Corrigan (Cal. Bar No.
292035)

*Carlos Holguín*
Carlos Holguín
*One of the Attorneys for Plaintiffs*

4

CARLOS R. HOLGUÍN (Cal. Bar No. 90754)
PETER A. SCHEY (Cal. Bar No. 58232)
Center for Human Rights & Constitutional Law
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Email: crholguin@centerforhumanrights.org
          pschey@centerforhumanrights.org

ORRICK, HERRINGTON & SUTCLIFFE LLP
Elena Garcia (Cal. Bar No. 299680)
egarcia@orrick.com
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone: (213) 629-2020


(*Listing continues on next page.*)

*Attorneys for Plaintiffs.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*,<br><br>                    Plaintiffs,<br><br>          v.<br><br>JEFFERSON B. SESSIONS, Attorney General, *et al.*,<br><br>                    Defendants. | Case No. CV 85-4544-DMG (AGRx)<br><br>MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT, FOR PERMANENT INJUNCTION AND FOR ADJUDICATION OF CIVIL CONTEMPT.<br><br>Hearing:   November 30, 2018<br>Time:       9:30 a.m.<br>Room:      1st St. Courthouse<br>               Courtroom 8C |

*Attorneys for Plaintiffs, continued:*

LEECIA WELCH (CAL. BAR NO. 208741)
NEHA DESAI (CAL. RLSA BAR NO. 803161)
CRYSTAL ADAMS (CAL. BAR NO. 308638)
National Center for Youth Law
405 14th Street, 15th Floor
Oakland, CA 94612
Telephone: (510) 835-8098
Email: lwelch@youthlaw.org
        ndesai@youthlaw.org
        cadams@youthlaw.org

HOLLY S. COOPER (Cal. Bar No. 197626)
Co-Director, Immigration Law Clinic
CARTER C. WHITE (Cal. Bar No. 164149)
Director, Civil Rights Clinic
University of California Davis School of Law
One Shields Ave. TB 30
Davis, CA 95616
Telephone: (530) 754-4833
Email: hscooper@ucdavis.edu
        ccwhite@ucdavis.edu

LA RAZA CENTRO LEGAL, INC.
Michael S. Sorgen (Cal. Bar No. 43107)
474 Valencia Street, #295
San Francisco, CA 94103
Telephone: (415) 575-3500

THE LAW FOUNDATION OF SILICON VALLEY
Jennifer Kelleher Cloyd (Cal. Bar No. 197348)
Katherine H. Manning (Cal. Bar No. 229233)
Annette Kirkham (Cal. Bar No. 217958)
152 North Third Street, 3rd floor
San Jose, CA 95112
Telephone:   (408) 280-2437
Facsimile:    (408) 288-8850
Email: jenniferk@lawfoundation.org
        kate.manning@lawfoundation.org
        annettek@lawfoundation.org

1

*Of counsel:*

2

YOUTH LAW CENTER

3

Virginia Corrigan (Cal. Bar No. 292035)

4

832 Folsom Street, Suite 700 [L] [SEP]

San Francisco, CA 94104

5

Telephone: (415) 543-3379

6

7

/ / /

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................... 1

II.  THE PROPOSED RULE FAILS TO IMPLEMENT THE SETTLEMENT ................................................................................. 3

III.  DEFENDANTS' PROPOSED RULE, STATEMENTS AND CONDUCT PLACE THEM IN ANTICIPATORY BREACH. ..................... 5

    A.  DHS's proposed regulations abrogate children's protections against unnecessary detention and substandard placement. ................. 6

        1.  Defendants propose to detain accompanied children indefintely .................................................................................. 6

        2.  Defendants vow to consign accompanied children to unlicensed family detention centers in violation of Settlement ¶ 19 ........................................................................ 8

    B.  HHS's proposed regulations expand the grounds for unlicensed placement and eliminate neutral and detached review of grounds to detain children on account of dangerousness or flight-risk ........... 12

    C.  The Proposed Rule replaces the Settlement's mandatory protections with aspirational statements of dubious enforceability. .. 13

    D.  Defendants have unequivocally declared their resolve to esviscerate the protections the Settlement grants detained children. . 15

    E.  Defendants cannot conform the Proposed Rule with the Settlement without beginning the rulemaking process anew. .............................. 17

    F.  This Court has repeatedly found Defendants in breach of the Settlement; the available evidence shows Defendants have no intention of complying fully with the agreement. .............................. 18

IV.  THE COURT SHOULD ENJOIN DEFENDANTS AGAINST IMPLEMENTING REGULATIONS IN VIOLATION OF THE SETTLEMENT AND PROVISIONALLY ADJUDICATE THEM IN CIVIL CONTEMPT. ................................................................................. 19

    A.  The Court should enjoin Defendants from implementing regulations that fail to implement and are inconsistent with the Settlement. ................................................................................................ 19

    B.  The Court should provisionally adjudicate Defendants in civil contempt. ................................................................................................ 21

V.  CONCLUSION ........................................................................................ 24

# TABLE OF AUTHORITIES

## Cases

*Bunikyte ex. rel. Bunikiene v. Chertoff*, No. A-07-CA-164-SS, 2007 WL 1074070 (W.D. Tex. Apr. 9, 2007) ................................................................................ 18, 19

*Caribbean Marine Services Co. v. Baldrige*, 844 F.2d 668 (9th Cir. 1988) ............... 20

*Clean Air Council v. Pruitt*, 862 F.3d 1 (D.C. Cir. 2017) ........................................... 18

*Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir. 2014) ............................. 20

*Environmental Defense Center v. U.S. Environmental Protection Agency*, 344 F.3d 832 (9th Cir. 2003) ..................................................................................................... 18

*First Interstate Bank v. Small Bus. Admin.*, 866 F.2d 340 (9th Cir. 1989) .................. 5

*Franconia Associates v. United States*, 536 U.S. 129 (2002) ...................................... 6

*Guerrieri v. Severini*, 51 Cal.2d 12 (1958) .................................................................. 5

*Hill v. U.S. Immigr. & Naturalization Serv.*, 714 F.2d 1470 (9th Cir. 1983) ............. 15

*Kingdomware Technologies, Inc. v. United States*, 136 S. Ct. 1969 (2016) ............... 14

*Kennewick Irrigation District v. United States*, 880 F.2d 1018 (9th Cir. 1989) ....... 4, 5

*Lydo Enterprises, Inc. v. City of Las Vegas*, 745 F.2d 1211 (9th Cir. 1984) .............. 20

*Marr Enterprises, Inc. v. Lewis Refrigeration Co.*, 556 F.2d 951 (9th Cir. 1977) ....... 6

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) .................................................... 20

*Minidoka Irrigation District v. U.S. Department of the Interior*, 154 F.3d 924 (9th Cir. 1998) ................................................................................................................... 6

*Mobil Oil Exploration & Producing Southeast, Inc. v. U.S. Department of the Interior*, 530 U.S. 605 (2000) ...................................................................................... 6

*Natural Resources Defense Council v. U.S. Environmental Protection Agency*, 863 F.2d 1420 (9th Cir. 1988) .......................................................................................... 18

*Ngou v. Schweiker*, 535 F. Supp. 1214 (D.D.C. 1982) ................................................. 3

*Nodine v. Shiley Inc.*, 240 F.3d 1149 (9th Cir. 2001) ................................................... 4

*O'Neil v. Bunge Corp.*, 365 F.3d 820 (9th Cir. 2004) ................................................... 5

*Pennsylvania Bureau of Corrections v. U.S. Marshals Service*, 474 U.S. 34 (1985) . 19

*Riverbend Farms, Inc. v. Madigan*, 958 F.2d 1479 (9th Cir. 1992) ............................. 3

*Roehm v. Horst*, 178 U.S. 1 (1900) ............................................................................... 6

*Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992) ................................. 4, 22

MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE
SETTLEMENT, **ETC.**
CV 85-4544-DMG (AGRx)

*Sekaquaptewa v. MacDonald*, 544 F.3d 396 (9th Cir. 1976)........................................1

*Taylor v. Johnston*, 15 Cal.3d 130 (1975)...........................................................5

*Tzung v. State Farm Fire & Casualty Co.*, 873 F.2d 1338 (9th Cir. 1989) .................5

*United States v. Armour & Co.*, 402 U.S. 673 (1971) ...........................................4

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008)...................20

*Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515 (9th Cir. 1983) ...............................................................................................................19

**Prior Filings and Decisions**

Flores Settlement Agreement (C.D. Cal. Jan. 28, 1997)..................................*passim*

Stipulation Extending Settlement Agreement, *Flores v. Reno*, No. CV 85-4544-RJK (C.D. Cal. Dec. 7, 2001) ........................................................................*passim*

*Flores v. Lynch*, 828 F.3d 898 (9th Cir. 2016)...........................................8, 10, 19, 23

Order Denying Defendants' *Ex Parte* Application for Limited Relief from Settlement Agreement, *Flores v. Sessions*, No. CV 85-4544 DMG (C.D. Cal. July 9, 2018) (ECF No. 455) ................................................................................10, 19, 21, 23

Order Denying Defendants' Motion, *Flores v. Sessions*, No. CV 85-4544 DMG (C.D. Cal. June 27, 2017) (ECF No. 363).......................................................8, 9, 10, 12

*Flores v. Johnson*, 212 F. Supp. 3d 864 (C.D. Cal. 2015)......................................11

Order Re: Response to Order to Show Cause, *Flores v. Sessions*, No. CV 85-4544 DMG (C.D. Cal. Aug. 21, 2015) (ECF No. 189)..................................................8

Order Re: Plaintiffs' Motion to Enforce Settlement of Class Action and Defendants' Motion to Amend Settlement Agreement, *Flores v. Sessions*, No. CV 85-4544 DMG (C.D. Cal. July 24, 2015) (ECF No. 177) ........................................8, 10, 17

**Statutes**

Administrative Procedure Act, 5 U.S.C. § 553 ..........................................................#

All Writs Act, 28 U.S.C. § 1651 .......................................................................1, 19, 20

Declaratory Judgement Act, 28 § 2201 ...................................................................1

Pa. Code § 3800.271 ....................................................................................11, 12

**Other Citations & Authorities**

Federal Rule of Civil Procedure 65...........................................................................1, 20

Proposed Rule, *Apprehension, Processing, Care, and Custody of Alien Minors and
    Unaccompanied Alien Children*, 83 Fed. Reg. 45,486 (2018)........................*passim*

Restatement (Second) of Contracts ................................................................ 6

Uniform Law Commission (National Conference of Commissioners on Uniform State
    Laws), Drafting Rules (2012) ................................................................ 15

Executive Order 13,841 (June 20, 2018) ..................................................... 16

Letter to House & Senate Leaders & Immigration Principles and Policies (Oct. 8,
    2017) ............................................................................................. 15

Merriam-Webster Dictionary ........................................................................ 4

B.E. Witkin, Summary of Cal. Law (8th ed.) .............................................. 6

Lewis Carroll, Through the Looking Glass (Bantam 2018) ....................... 11

I.     INTRODUCTION

Plaintiffs move the Court to enjoin Defendants against implementing proposed regulations, *Apprehension, Processing, Care and Custody of Alien Minors and Unaccompanied Alien Children*, 83 Fed. Reg. 45,486–45,534 ("Proposed Rule"), on the ground such implementation would violate the class-wide settlement this Court approved on January 28, 1997 ("Settlement").[1]

The Settlement protects "all minors who are detained in the legal custody of the INS," and generally requires Defendants Department of Homeland Security ("DHS"), U.S. Immigration and Customs Enforcement ("ICE"), U.S. Customs and Border Protection ("CBP"), and the Office of Refugee Resettlement of the U.S. Department of Health & Human Services ("ORR") to minimize the detention of children and, thereby, the harm detention causes them. *Id*. ¶ 14. The Settlement further provides that for howsoever long Defendants keep children in immigration-related custody, they must, except in exceptional circumstances, place those children in non-secure facilities holding a state license to care for dependent, as opposed to delinquent, minors. *Id*. ¶ 19.[2]

---

[1] As discussed *post*, the Court should issue injunctive relief pursuant to the All Writs Act, 28 U.S.C. § 1651, and Federal Rule of Civil Procedure 65. The Court should also exercise authority to declare the Proposed Rule unlawful pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, as well as its inherent power to enforce the Settlement and hold Defendants in civil contempt. *See Sekaquaptewa v. MacDonald*, 544 F.2d 396, 406 (9th Cir. 1976).

[2] The Settlement expressly binds the INS and Department of Justice, as well as "their agents, employees, contractors, and/or successors in office." *Id*. ¶ 1.

In 2002, the Homeland Security Act, Pub. L. 107-296, 116 Stat. 2135 ("HSA"), dissolved the INS and transferred its law enforcement functions to DHS. Congress directed that ORR should have authority over the detention and release of unaccompanied minors. 6 U.S.C § 279. DHS retains authority over the detention and release of accompanied minors.

The HSA included savings provisions that continued the Settlement in effect as to the INS's successor agencies, Defendants herein. HSA §§ 462(f)(2), 1512(a)(1).

Pursuant to Settlement ¶ 9, Defendants may "publish the relevant and substantive terms of this Agreement as a Service regulation." Settlement ¶ 9. However, "*[t]he final regulations shall not be inconsistent with the terms of this Agreement*." *Id*. (emphasis supplied). In December 2001, the parties stipulated that the Settlement should remain binding for 45 days following Defendants' publishing final regulations that "implement" the agreement. Pls.' Ex. 2 (Stipulation Extending Settlement Agreement (Dec. 7, 2001)).

In September 2018 Defendants published their Proposed Rule, which they contend will trigger the Settlement's sunset clause. Defendants' regulations, however, transparently are not consistent with the terms of the Settlement and fail to implement the Settlement. Instead, the Proposed Rule eviscerates class members' rights under the Settlement. Under the Proposed Rule, DHS would have carte blanche to detain children indefinitely in secure, unlicensed facilities even when perfectly qualified family members, adults designated by parents, and licensed group homes are available to care for them as permittted by Settlement ¶ 14. ORR would enjoy broad powers to declare children dangerous and dispatch them to juvenile halls and psychiatric facilities by ipse dixit, stripping class members of the limited rights to transparency and fair process the Settlement confers. Defendants guilefully replace children's enforceable Settlement rights with anemic declarations of what ORR and DHS purport to do, but, as this Court has now found several times, often do not. Finally, all monitoring and transparency authorized by the Settlement would terminate.

Defendants seek to strip detained minors' rights under the Settlement notwithstanding that they have repeatedly breached and continue to be in breach of the Settlement. Defendants' repeated violations of the Settlement recently prompted this Court to appoint a Special Master/Independent Monitor.

The Court should accordingly declare the Proposed Rule unlawful, enjoin Defendants against violating ¶¶ 9 and 40 of the Settlement and, if need be, adjudicate

1   them in civil contempt.[3]

2   II.   THE PROPOSED RULE FAILS TO IMPLEMENT THE SETTLEMENT.

3       In pertinent part, Settlement ¶ 9 provides that when Defendants publish "the

4   relevant and substantive terms of this Agreement as a Service regulation," the final

5   regulations "*shall not be inconsistent with the terms of this Agreement.*" (emphasis

6   added.) The agreement's sunset clause, Settlement ¶ 40, in turn provides as follows:

7       All terms of this Agreement shall terminate 45 days following defendants'

8       publication of final regulations *implementing this Agreement*. Notwithstanding

9       the foregoing, the INS shall continue to house the general population of minors

10      in INS custody in facilities that are state-licensed for the care of dependent

11      minors.

12

13

_____

14  [3] The public comment period for Defendants' proposed regulations closes on
15  November 6, 2018. 83 Fed. Reg. 45,486.

16  The Administrative Procedure Act generally requires a 30-day waiting period
    between publication of a final rule and its effective date. 5 U.S.C. § 553(d);
17  *Riverbend Farms, Inc. v. Madigan*, 958 F.2d 1479, 1484–86 (9th Cir. 1992); *Ngou v.*
18  *Schweiker*, 535 F. Supp. 1214, 1216 (D.D.C. 1982) (publishing notice of proposed
    rulemaking does not commence 30-day notice requirement). However, the 30-day
19  waiting period may be waived "for good cause found and published with the rule." 5
20  U.S.C. § 553(d)(3).

21  Paragraph 40 of the Settlement, in contrast, requires Defendants to abide by the
    consent decree for 45 days following publication of final regulations implementing
22  the agreement and contains no waiver proviso.

23  Plaintiffs have repeatedly sought, but have yet to receive, Defendants' assurance
24  that they will not implement final regulations immediately, as this would cause chaos
    as thousands of Defendants' employees wrongly follow regulations that conflict with
25  a still-binding consent decree.

26      It is therefore entirely possible—even probable—that Defendants may attempt
    to implement the final rule on or shortly after November 6. Should Defendants do so,
27  Plaintiffs will ask the Court for emergency relief enjoining implementation pending
28  disposition of the instant motion.

The Settlement is construed as a contract. *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 378 (1992).[4] The Court therefore is to interpret the agreement "according to the plain meaning of its terms." *Nodine v. Shiley Inc.*, 240 F.3d 1149, 1154 (9th Cir. 2001); *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971). The agreement is also to "be read as a whole and every part interpreted with reference to the whole." *Kennewick Irri. Dist. v. United States*, 880 F.2d 1018, 1032 (9th Cir. 1989). Finally, "[p]reference must be given to reasonable interpretations as opposed to those that are unreasonable, or that would make the contract illusory." *Id.*

Applying these rules, it is clear the Settlement requires Defendants to promulgate rules that incorporate class members' rights into federal regulations. Paragraph 9 is explicit: "implementing" regulations must be consistent with the protections the Settlement gives detained children. Yet even were Paragraph 9 not expressly to require consistency, Defendants could not possibly discharge their duty to *implement* the Settlement by promulgating *in*consistent regulations aimed at erasing class members' protections.

To "implement" means to "carry out, accomplish; especially: to give practical effect to and *ensure of actual fulfillment* by concrete measures." Merriam-Webster Dictionary, *available at* www.merriam-webster.com/dictionary/implement (last visited Oct. 25, 2018) (emphasis added). According to the term's plain meaning, regulations designed to strip class members of fundamental protections the Settlement confers do not implement it.[5] There is no reason to believe the parties intended the

---

[4] This Court has previously affirmed its jurisdiction to enforce the Settlement. Order re: Pls.' Mot. to Enforce Settlement, at 3 (July 24, 2015) (ECF No. 177).

[5] Holding Defendants' duty discharged upon its promulgating inconsistent regulations would, of course, lead to absurd results. After all, were inconsistent regulations enough to "implement" the agreement, Defendants could arguably end the Settlement by publishing any rule whatsoever. Such a reading would be manifestly absurd and

4

Memorandum in support of motion to enforce
Settlement, etc.
CV 85-4544-DMG (AGRx)

1  term to have anything other than its plain meaning.

2      Were promulgating inconsistent rules enough to terminate the Settlement,

3  Plaintiffs would be denied the benefit of the bargain: Defendants will have never

4  incorporated class members' Settlement rights into federal rules, leaving children

5  without the protections of either the consent decree *or* equivalent federal regulations.

6  That result that would be contrary to the plain meaning of ¶¶ 9 and 40.[6]

7      As explained below, Defendants' Proposed Rule falls far short of discharging

8  their obligation to promulgate regulations consistent with and implementing the

9  Settlement. Defendants have nonetheless proclaimed their resolve to implement the

10  Proposed Rule sometime after November 6, 2018. Defendants have thereby placed

11  themselves squarely in anticipatory breach of the Settlement.

12  III.   DEFENDANTS' PROPOSED RULE, STATEMENTS AND CONDUCT PLACE THEM IN

13         ANTICIPATORY BREACH.

14      Generally, "the construction and enforcement of settlement agreements are

15  governed by principles of local law." *O'Neil v. Bunge Corp.*, 365 F.3d 820, 822–23

16  (9th Cir. 2004). However, "federal law controls the interpretation of a contract

17  entered pursuant to federal law when the United States is a party." *Kennewick Irr.*

18  *Dist.*, 880 F.2d at 1032.

19      Federal law generally mirrors the traditional common law of contracts, *First*

20  *Interstate Bank v. Small Bus. Admin.*, 868 F.2d 340, 343 n.3 (9th Cir. 1989),[7]

21  thus disfavored. *Tzung v. State Farm Fire & Cas. Co.*, 873 F.2d 1338, 1340–41 (9th

22  Cir. 1989).

23  [6] The Settlement "sets out nationwide policy for the detention, release, and treatment

24  of minors in the custody of the INS and shall supersede all previous INS policies that

25  are inconsistent with the terms of this Agreement." Settlement ¶ 9.

26  [7] California law accords with the federal law of anticipatory breach. *See Taylor v.*

27  *Johnston*, 15 Cal.3d 130, 137–38 (1975) (party commits anticipatory breach when it

28  expressly or impliedly repudiates a contract); *Guerrieri v. Severini*, 51 Cal.2d 12, 18

    (1958) (party may repudiate contract by acts or statements or both indicating it will

including the doctrine of anticipatory breach. *See, e.g.*, *Franconia Assocs. v. United States*, 536 U.S. 129, 148 (2002) ("We comprehend no reason why an Act of Congress may not constitute a repudiation of a contract to which the United States is a party."); *Mobil Oil Expl. & Producing Se., Inc. v. U.S. Dep't of the Interior*, 530 U.S. 604, 621 (2000).

The doctrine of anticipatory breach allows "the promisee . . . [to] avert, or, at all events, materially lessen the injurious effects which would otherwise flow from the nonfulfillment of the contract." *Roehm v. Horst*, 178 U.S. 1, 20 (1900). A party commits anticipatory breach when it makes "a positive statement to the promisee . . . indicating that the promisor will not or cannot substantially perform [its] contractual duties." *Marr Enters., Inc. v. Lewis Refrigeration Co.*, 556 F.2d 951, 956 (9th Cir. 1977); *see also* Restatement (Second) of Contracts § 250 cmt. b (ALI 1981) (same).[8] Here, Defendants' Proposed Rule and public statements clearly and unequivocally repudiate the Settlement.[9]

## A. DHS's proposed regulations abrogate children's protections against unnecessary detention and substandard placement.

1. <u>Defendants propose to detain accompanied children indefinitely</u>.

Settlement ¶ 14 provides: "Where . . . the detention of the minor is not required

---

not adhere to a contract's essential terms); 1 B.E. Witkin, Summary of Cal. Law § 632, at 538–39 (8th ed.). Defendants are in anticipatory breach under both state and federal law.

[8] Whether a party has repudiated a contractual obligation is a question of fact. *Minidoka Irr. Distr. v. U.S. Dep't of the Interior,* 154 F.3d 924, 927 (9th Cir. 1998).

[9] As discussed *post*, an anticipatory breach also exists where a party's repudiation is equivocal, but he or she has also actually breached a contract. *Minidoka Irr. Distr.*, 154 F.3d at 926–27 (citing Restatement (Second) of Contracts § 250, cmt. b). Thus, even assuming, *arguendo*, Defendants' statements and the Proposed Rule were at all equivocal, coupled with their many past and ongoing breaches of the Settlement, Defendants would remain in anticipatory breach of the Settlement.

either to secure his or her timely appearance . . . or to ensure the minor's safety or that of others, the [Defendants] shall release a minor from [their] custody without unnecessary delay."[10] If a class member has more than one potential custodian, Defendants must release him or her first to a parent, then to a legal guardian, adult sibling, aunt, uncle, or grandparent, an unrelated adult or entity designated by the minor's parent, a licensed juvenile shelter, and finally, if there is no likely alternative to long-term detention, an unrelated adult. Settlement ¶ 14.

Proposed 8 C.F.R. § 212.5(b)(3)(i) and (ii), materially circumscribe class members' eligible custodians, providing that children may be released only "to a parent or legal guardian not in detention . . . [or] with an accompanying parent or legal guardian who is in detention." Such detention is wholly inconsistent with the Settlement. Indeed, Defendants seek to accomplish through rulemaking what they could not in court: to legitimate the mandatory, long-term detention of children in secure, unlicensed detention centers regardless of their and their families' wishes.

Declaring all other custodians ineligible to receive and care for such class members effectively consigns accompanied class members to mandatory detention for howsoever long Defendants may require to remove the entire family. *See* 83 Fed. Reg. at 45,526 ("DHS's policy is to maintain family unity, including by detaining families together where appropriate and consistent with law and available resources."). By any measure, this is "family unity" with a vengance coming from an agency that only recently was enjoined against separating thousands of children, some still nursing, from their parents.[11]

---

[10] Further grounding ORR's obligation to minimize children's detention, Settlement ¶ 18 provides, "Upon taking a minor into custody, the INS . . . shall make and record the prompt and continuous efforts on its part toward . . . the release of the minor."

[11] If they wish to remain together, nothing in the Settlement or this Court's orders prevents families from waiving their children's rights to release to other available custodians or to placement in a properly licensed dependent care facility.

7

Memorandum in support of motion to enforce
Settlement, etc.
CV 85-4544-DMG (AGRx)

Defendants' Proposed Rule clearly implements their oft-stated and unfounded view that detaining families for the duration of removal proceedings deters other would-be unauthorized entrants.[12] It does not, however, implement or comply with the Settlement.

2.      Defendants vow to consign accompanied children to unlicensed family detention centers in violation of Settlement ¶ 19.

Settlement ¶ 19 generally requires DHS to place class members in non-secure facilities licensed to care for dependent, as opposed to delinquent, minors. Defendants may deny children licensed placement only under defined circumstances. Settlement ¶ 21. A child being apprehended with a parent is not among those circumstances.

It is well settled that the Settlement applies to *all* minors in immigration-related custody, accompanied or not. Order (June 27, 2017) (ECF No. 363); Order Re: Pls.' Mot. to Enforce Settlement (July 24, 2015) ("July 24, 2015 Order") (ECF No. 177) *and* Order Re: Response to Order to Show Cause (Aug. 21, 2015) (ECF No. 189), *both aff'd in relevant part*, *Flores v. Lynch*, 828 F.3d 898 (9th Cir. 2016). It therefore grants children in DHS custody the right to prompt placement in a non-secure, licensed dependent care facility. Defendants' Proposed Rule posits an end-run of this requirement and this Court's orders enforcing it.

In proposed 8 C.F.R. § 236.3(a)(9), Defendants transparently torture the Settlement's definition of "licensed placement,"[13] to fit their unlawful goal of

---

[12] Even apart from the Settlement, Defendants' detaining class members to deter unlawful immigration would be unlawful regardless. *See Kansas v. Crane*, 534 U.S. 407, 412 (2002) (civil detention may not "become a mechanism for retribution or general deterrence—functions properly those of criminal law, not civil commitment" (internal quotation and citation omitted)).

[13] A "licensed program" must be "licensed by an appropriate State agency to provide residential, group, or foster care services for dependent children. . . . All homes and facilities operated by licensed programs . . . [must] be non-secure as required under state law." Settlement Definition 6.

mandatory family detention:

> *Licensed Facility* means an ICE detention facility that is licensed by the state, county, or municipality in which it is located, *if such a licensing scheme exists*. . . . If a licensing scheme for the detention of minors accompanied by a parent or legal guardian is not available in the state, county, or municipality in which an ICE detention facility is located, DHS shall employ an entity outside of DHS that has relevant audit experience to ensure compliance with the family residential standards established by ICE.

83 Fed. Reg. at 45,525 (emphasis added).

Defendants admit, however, that few, if any, States "have licensing schemes for facilities to hold minors who are together with their parents or legal guardians." *Id*. at 45,488. Defendants' nod to state licensing is hollow: as a practical matter, the Proposed Rule will simply strip accompanied class members of their right to licensed placement.[14]

Had Plaintiffs wished to let the Defendants—or an unidentified entity of their choosing—set minimum standards for children's detention, the Settlement would so provide. It does not because Defendants have historically placed children in substandard facilities. Plaintiffs therefore insisted, and Defendants agreed, to place children in facilities holding a state-issued, dependent care license.[15]

---

[14] Inasmuch as DHS intends to confine all accompanied class members in secure facilities indefinitely, the Proposed Rule eliminates —

> (i) its obligation to notify accompanied minors of the reasons for placing them in a secure setting, a breach of Settlement ¶ 24C, 83 Fed. Reg. at 45,517; and

> (ii) most accompanied class members' right to a bond hearing, a breach of Settlement ¶ 24A. *See* Proposed 8 C.F.R. § 236.3(m) ("Minors in DHS custody who are not in section 240 proceedings are ineligible to seek review by an immigration judge of their DHS custody determinations.").

[15] Defendants' Proposed Rule also transparently seeks to circumvent this Court's order of June 27, 2017:

Defendants' wrapping their thrice discredited argument in the guise of a federal regulation does nothing implement the Settlement and instead constitutes an anticipatory breach the Settlement.[16]

Defendants do not stop there. The Settlement requires that a "licensed program" be "non-secure as required under state law." Settlement ¶ 6.[17] Defendants contrive to define the term, "non-secure," to legitimate their confining children indefinitely in unquestionably secure facilities.

Proposed 8 C.F.R. § 236.3(b)(11) declares a facility non-secure so long as

---

Defendants . . . emphasize that . . .  if the family residential centers are "unlicensed [it is] because state law does not provide a license for those facilities, . . ." This reasoning is a mere reprise of Defendants' well-worn argument against Plaintiffs' February 2, 2015 Motion to Enforce—which the Court rejected—that the licensing provision in the *Flores* Agreement cannot be interpreted to apply to family residential centers, in part because there are no state licensing processes available for Defendants' specific facilities.

As the Court previously stated, "[t]he fact that the family residential centers cannot be licensed by an appropriate state agency simply means that, under the Agreement, class members cannot be housed in these facilities except as permitted by the Agreement."

Order, at 28–29 (June 27, 2017) (ECF No. 363) (*quoting* Chambers Order at 12–13 (ECF No. 177) (emphasis added)); *see also* Order Re: Pls.' Mot. to Enforce, at *13 (July 24, 2015) (ECF No. 177); Order Denying Defs.' *Ex Parte* Application, at *6 (July 9, 2018) (ECF No. 455).

[16] Defendants' Proposed Rule would also strip accompanied class members of their right to licensed placement, a breach of the Settlement even after it otherwise terminates. Though Defendants may argue that accompanied class members are not within the "the general population of minors in INS custody," the law of this case holds that the Settlement applies equally to all children, both accompanied and unaccompanied. *See Flores v. Lynch*, 828 F.3d 898 (9th Cir. 2016).

[17] Although staff-secure, RTC, and secure facilities may hold a license of some sort, they are not "licensed placements" as the Settlement defines them. *See* 24A Order at 4 (Yolo juvenile hall "not licensed to care for dependent children.").

MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT, ETC.
CV 85-4544-DMG (AGRx)

"egress from a portion of the facility's building is not prohibited through internal locks within the building or exterior locks and egress from the facility's premises is not prohibited through secure fencing around the perimeter of the building."[18]

Defendants would therefore entirely prohibit egress from a facility's detention area through internal locks, yet would call the facility "non-secure" so long as one part—a reception area, for example—is unlocked.[19] "'When I use a word,' Humpty Dumpty said in rather a scornful tone, 'it means just what I choose it to mean—neither more nor less.'" Lewis Carroll, Through the Looking Glass 178 (Bantam 2018). Defendants' family detention facilities, however, are "secure" by any rational definition. *See Flores v. Johnson*, 212 F. Supp. 3d 864, 879–80 (C.D. Cal. 2015) (describing uncontroverted evidence that Karnes City facility is secure).[20]

---

[18] Defendants' definition is a bowdlerized version of Pennsylvania's definition of a secure facility. *See* 83 Fed. Reg. at 45,497 n.14 (Pa. Code § 3800.5 provided model for proposed 8 C.F.R. § 236.3(b)(11)). Pa. Code § 3800.5 provides as follows:

> *Secure care* — Care provided in a 24-hour living setting to one or more children who are *delinquent or alleged delinquent*, from which voluntary egress is prohibited through one of the following mechanisms:
>
> > (i)  Egress from the building, or a portion of the building, is prohibited through internal locks within the building or exterior locks.
> >
> > (ii)  Egress from the premises is prohibited through secure fencing around the perimeter of the building.

*See also* Pa. Code § 3800.271 ("Secure care is permitted only for children who are alleged delinquent, or adjudicated delinquent and court ordered to a secure facility.").

[19] As shown in Plaintiffs' Memorandum re Status Conference, at 10 to 11 (July 16, 2018) (ECF No. 459-1), and exhibits, whether Defendants keep a door or two unlocked at their detention facilities, minors are subject to immediate arrest if they leave Defendants' facilities.

[20] Nor is it much comfort that the Proposed Rule purports to apply Defendants' definition only if state law fails to define a non-secure facility. After all, the entire purpose of Defendants' definition is to permit the indefinite detention of children in its existing family detention facilities, including Karnes City and Berks, which is

11

In sum, the Proposed Rule would sanction indefinite family detention, a policy this Court has repeatedly held violates class members' rights to prompt release and licensed placement.[21]

**B.      HHS's proposed regulations expand the grounds for unlicensed placement and eliminate neutral and detached review of grounds to detain children on account of dangerousness or flight-risk.**

HHS's proposed regulations would diminish unaccompanied class members' right to a licensed placement pursuant to Settlement ¶¶ 19 and 21.

First, proposed 8 C.F.R. § 410.203(a)(5) would grant ORR license to dispatch children to unlicensed placement when, in ORR's opinion, a minor is "otherwise a danger to self or others," a ground for secure confinement appearing nowhere in the Settlement and one so vague as to render Defendants' obligation to "place each detained minor in the least restrictive setting appropriate to the minor's age and special needs" Settlement ¶ 11, all but meaningless.

Next, Settlement ¶ 24A requires Defendants to afford children it detains on account of flight-risk or dangerousness a bond hearing at which a neutral and detached decisionmaker—an immigration judge—reviews ORR's evidence for

---

located in Pennsylvania and defines a "secure" facility contrary to Defendants' purposes. Though they never manage to say so, Defendants transparently intend to apply their definition to all three family detention centers regardless of what state law may or may not say.

[21] The Settlement provides that Defendants "will segregate unaccompanied minors from unrelated adults. Where such segregation is not immediately possible, an unaccompanied minor will not be detained with an unrelated adult for more than 24 hours." Settlement ¶ 12. Defendants' proposed regulations fail to provide similar protections for detained minors.

The Settlement also requires that detained class members be provided sleeping mats, blankets, and adequate space to sleep in CBP facilities. Order (June 27, 2017) (ECF No. 363). Here again, Defendants' proposed regulations provide no analogous protection.

MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE
SETTLEMENT, ETC.
CV 85-4544-DMG (AGRx)

refusing release. *See generally*, *Flores v. Sessions*, 862 F.3d at 863. The Proposed Rule would scuttle this protection. In its stead, HHS would allow unaccompanied children to request a hearing before one of their own officials, hardly a neutral and detached decisionmaker the Settlement demands. 83 Fed. Reg. at 45,509–45,510, 45,533.

As the Ninth Circuit held, "the bond hearing under Paragraph 24A is a fundamental protection guaranteed to unaccompanied minors." *Flores*, 862 F.3d at 867. HHS's replacing class members' fundamental protection against needless confinement with a pro forma process before its own personnel does not implement ¶ 24C at all. It rather reduces it to an empty formality.

**C.    The Proposed Rule replaces the Settlement's mandatory protections with aspirational statements of dubious enforceability.**

Defendants' Proposed Rule promises to eviscerate the Settlement in yet another way: Whereas many of the Settlement's core provisions use the verb "shall" to posit a mandatory, non-discretionary obligation, the Proposed Rule omits nearly all instances of "shall" from both DHS's and HHS's regulations and replaces them with declaratory substitutes. No great cynicism is required to conclude that Defendants' abjuring the mandatory "shall" aims to strip class members of nearly all unforceable rights the Settlement grants. Here again, the Proposed Rule repudiates the Settlement by dismantling its fundamental protections.

The Settlement is suffused with repeated references to "shall," a term which denotes a mandatory obligation. The Settlement uses "shall" in general provisions, definitions to key substantive rights and procedures, and policies regarding placement, custody, transfer, release, monitoring and attorney visits. A survey of the Settlement demonstrates heavy reliance on the mandatory term to create enforceable rights:

- all homes and facilities operated by licensed programs "shall be non-secure," Settlement ¶ 6;

- Defendants "shall continue to treat all minors in its custody with dignity, respect and special concern for their particular vulnerability as minors." *Id*. ¶ 11;

- Defendants "shall place each detained minor in the least restrictive setting appropriate to the minor's age and special needs." *Id*.;

- "A minor in deportation proceedings shall be afforded a bond redetermination hearing before an immigration judge in every case, unless the minor indicates on the Notice of Custody Determination form that he or she refuses such a hearing," *Id*. ¶ 24A;

- "Defendants shall provide minors not placed in licensed programs with a notice of the reasons for housing the minor in a detention or medium security facility." *Id*. ¶ 24C;

In contrast, the Proposed Rule strips the term "shall" from these and nearly all other of the Settlement's substantive provisions, indicating that ORR will thereafter treat those provisions as optional.[22]

_____

[22] For example, the Settlement's licensed program requirement, which requires that homes and facilities "shall be non-secure," in the Proposed Rule reads: "All homes and facilities operated by a licensed program . . . are non-secure." 83 Fed. Reg. at 45,529.

The requirement that INS "shall place" detained minors in the least restrictive setting appropriate to the minor's age and special needs is replaced with a statement that the Office of Refugee Resettlement "places" each minor in the least restrictive setting. *Id*.

The Proposed Rule transforms the Settlement's requirement that "minors shall be separated from delinquent offenders," Settlement ¶ 12A, to "ORR separates UAC from delinquent offenders." 83 Fed. Reg. at 45,530.

The Proposed Rule makes similar changes to provisions regarding DHS's protocols. *Compare* Settlement ¶ 14 (when INS determines that detention is not required, the INS "shall release a minor from its custody"), *with* 83 Fed. Reg. at 45,528 ("If DHS determines that detention of a minor who is not a UAC is not required . . . "the minor *may* be released" (emphasis added)).

14

It is axiomatic that the term "shall" signifies a mandatory obligation. *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1977 (2016) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement."); *accord Hill v. U.S. Immigr. & Naturalization Serv.*, 714 F.2d 1470, 1475 (9th Cir. 1983); Uniform Law Commission (Nat'l Conference of Comm'rs on Uniform State Laws), Drafting Rules (2012) (recommending "shall" or "must" to "express a duty, obligation, requirement or condition precedent").

Inasmuch as the overwhelming weight of authority holds that "shall" creates a mandatory duty, Defendants' deleting that term from the Proposed Rule demonstrates their resolve to strip class members of the protections the Settlement now confers. Again, that is a clear anticipatory breach of their rulemaking obligation: Defendants "*shall* initiate action to publish the relevant and substantive terms of this Agreement as a Service regulation. The final regulations *shall* not be inconsistent with the terms of this Agreement." Settlement ¶ 9 (emphasis added).[23]

**D.     Defendants have unequivocally declared their resolve to esviscerate the protections the Settlement grants detained children.**

Even were the text of Defendants' Proposed Rule not enough to place them in anticipatory breach, their statements would. Defendants have consistently inveighed against the Settlement and its class members, leaving no substantial doubt of their resolve to strip detained children of its protections.

President Trump has demanded Congress terminate the Settlement. Letter to House & Senate Leaders & Immigration Principles and Policies (Oct. 8, 2017), *available at* www.whitehouse.gov/briefings-statements/president-donald-j-trumps-

---

[23] The foregoing has examined only some of the ways that the Proposed Rule fails to implement class members' Settlement rights. Appendix A attached hereto is a chart reporting numerous other conflicts between Defendants' proposed regulations and the Settlement.

MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE
SETTLEMENT, ETC.
CV 85-4544-DMG (AGRx)

letter-house-senate-leaders-immigration-principles-policies/.[24] The President thereafter issued an executive order demanding the Court allow Defendants to detain accompanied children indefinitely in secure, unlicensed family detention facilities. Executive Order 13841 (June 20, 2018).

Defendants have embraced the President's call for ever-harsher treatment of class members and their family members—including separating families and detaining accompanied children indefinitely—as a deterrent to future unauthorized immigration. Steven Wagner, acting assistant secretary at HHS's Administration for Children and Families, impugned the Settlement and the TVPRA as creating an "immigration loophole [in which] HHS is forced to release minors from Central America into the United States," and releasing children as "an example of open borders," that "creates an economic incentive for further violation of federal immigration law." *Illegal Immigrant Program Creating Proxy Foster Care System, Says Official*, EPOCH TIMES (June 23, 2018); *see also*, U.S. Dep't of Homeland Security, *Unaccompanied Alien Children and Family Units Are Flooding the Border Because of Catch and Release Loopholes* (Press Release, Feb. 15, 2018), *available at* www.dhs.gov/news/2018/02/15/unaccompanied-alien-children-and-family-units-are-flooding-border-because-catch-and (last visited Oct. 17, 2018) ("The *Flores* settlement agreement . . . handicap[s] the government's ability to detain and promptly remove UACs. . . . These legal loopholes lead to 'catch and release' policies that act as a 'pull factor' for increased future illegal immigration."); *How the Trump Administration Got Comfortable Separating Immigrant Kids from Their Parents*, NEW YORKER, (May 20, 2018) (reporting DHS's family separation policy intended

---

[24] The President also continued to insist, notwithstanding this Court's and the Ninth Circuit's rulings to the contrary, that "alien minors who are not UACs…are not entitled to the presumptions or protections granted to UACs." Executive Order 13841.

1 "to discourage others from traveling to the United States illegally.").

2      Nor is there any question that the Proposed Rule aims to evade contractual

3 obligations that Defendants presently deem inconvenient, never mind that they have

4 repeatedly failed to prove that their objections warrant modification or recission of

5 the Settlement.[25] Upon announcing the Proposed Rule, DHS Secretary Nielsen stated:

6       Today, legal loopholes significantly hinder the Department's ability to

7       appropriately detain and promptly remove family units that have no legal basis

8       to remain in the country, . . . This rule addresses one of the primary pull factors

9       for illegal immigration and allows the federal government to enforce

10       immigration laws as passed by Congress.

11 Pls.' Ex. 3 (U.S. Dep't of Homeland Security Press Release, "DHS and HHS

12 Announce New Rule to Implement the Flores Settlement Agreement" (Sept. 6,

13 2018)). Defendants are quite clear that in their view, "[p]romulgating this regulation

14 and terminating the [Settlement] is an important step towards regaining control over

15 the border." *Id*.

16      Defendants' efforts to detain children indefinitely—in Defendants' parlance,

17 "ending catch-and-release"—leaves no doubt that actually implementing the

18 Settlement is the last reason for the Proposed Rule. Defendants' claiming that their

19 regulations "implement the relevant and substantive terms" of the Settlement is, in

20 Orwell's formulation, transparently "designed to make lies sound truthful and . . .

21 give an appearance of solidity to pure wind." *Politics and the English Language*

22 (1946). Their sole aim is to do away with the Settlement and the rights it gives

23 detained children.

24     **E.**    **Defendants cannot conform the Proposed Rule with the Settlement**

25           **without beginning the rulemaking process anew.**

26 _____

27 [25] In 2015 this Court "considered in detail the evidence Defendants presented of the
deterrent effect of the detention policy and [found] the evidence distinctly lacking in

28 scientific rigor." Order re: Pls.' Mot. to Enforce, at 23 (July 24, 2015) (ECF No. 177).

Defendants' Proposed Rule must conform to the notice and comment provisions of the Administrative Procedure Act, 5 U.S.C. § 553. A notice of proposed rulemaking must provide the substantive terms of the proposed regulation, a description of the issues involved, the agency's rationale for its proposals, and the research or data underlying the agency's proposal. 5 U.S.C. § 553(b)(3). A final rule is lawful only if its differences from the proposed rule are "in character with the original proposal" and a "logical outgrowth" of the original notice and comments. *Envtl. Def. Ctr. v. U.S. Envtl. Protection Agency*, 344 F.3d 832, 851 (9th Cir. 2003). The text of a final rule, therefore, may not be "distant" from that of what an agency initially proposed. *Clean Air Council v. Pruitt*, 862 F.3d 1, 10 (D.C. Cir. 2017); *Nat. Res. Def. Council v. U.S. Envtl. Protection Agency*, 279 F.3d 1180, 1186 (9th Cir. 2002).

As has been discussed in detail, the Proposed Rule flagrantly violates the Settlement. The Proposed Rule is so different from the Settlement that a final rule could not conform both to the Settlement and comply with the APA. Unless they withdraw the Proposed Rule and begin the rulemaking process anew, Defendants have necessarily repudiated the Settlement and are accordingly in anticipatory breach.

**F.    This Court has repeatedly found Defendants in breach of the Settlement; the available evidence shows Defendants have no intention of complying fully with the agreement.**

Even assuming, *arguendo*, the Proposed Rule and Defendants' statements were at all equivocal, when considered with their past and continuing violations of the Settlement, there is little question that they intend to repudiate the agreement.

Despite several court orders holding that the Settlement applies to accompanied minors, Defendants have repeatedly insisted that the Settlement does not apply to children apprehended with a parent. *See* Order re Pls.' Mot. to Enforce, at *6; *Bunikyte ex rel. Bunikiene v. Chertoff*, No. A-07-CA-164-SS, 2007 WL 1074070, at *3 (W.D. Tex. Apr. 9, 2007).

MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE
SETTLEMENT, ETC.
CV 85-4544-DMG (AGRx)

As for the Settlement's release and licensed placement requirements, Defendants have likewise demonstrated a pattern and practice of violations. *See Flores*, 828 F.3d at 910; Order re Pls.' Mot. to Enforce (July 30, 2018) (ECF 470); Order Denying Defs.' *Ex Parte* Application (July 9, 2018) (ECF 455) (denying Defendants' request to exempt accompanied children from Settlement's licensure and release provisions); Order re Pls.' Mot. to Enforce (July 24, 2015) (ECF 177); *Bunikyte*, No. A-07-CA-164-SS (W.D. Tex. 2015) (finding *Flores* violations related to family unit detention).

This conduct leaves no doubt of Defendants' resolve to strip children of rights the Settlement confers by promulgating regulations that esviscerate the agreement. Defendants' releasing a Proposed Rule to terminate the Settlement and undermine its protections, together with their prior and continuing breaches of the Settlement, confirm Defendants' anticipatory breach.

IV.  THE COURT SHOULD ENJOIN DEFENDANTS AGAINST IMPLEMENTING REGULATIONS IN VIOLATION OF THE SETTLEMENT AND PROVISIONALLY ADJUDICATE THEM IN CIVIL CONTEMPT.

**A.  The Court should enjoin Defendants from implementing regulations that fail to implement and are inconsistent with the Settlement.**

Pursuant to the All Writs Act, this Court should enjoin the implementation of the Proposed Rule to protect its jurisdiction to enforce the Settlement.

As has been seen, Defendants have "shown [their] intention continually to relitigate claims that have been previously" rejected. *Wood v. Santa Barbara Chamber of Com., Inc.*, 705 F.2d 1515, 1524 (9th Cir. 1983); *see also Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 41 (1985) (the All Writs Act fills "the interstices of federal judicial power when those gaps threatened to thwart the

otherwise proper exercise of federal courts' jurisdiction").[26]

In the alternative, to obtain injunctive relief, Plaintiffs must "demonstrate that irreparable injury is likely in the absence of an injunction," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008), and that the harm is definite and will result in "actual and imminent injury." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). "Subjective apprehensions and unsupported predictions . . . are not sufficient to satisfy a plaintiff's burden." *Caribbean Marine Servs. Co.*, 844 F.2d at 674. Courts have interpreted "actual and imminent injury" to mean that "corrective relief" will not be available later "in the ordinary course of litigation." *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984). A moving party may demonstrate evidence of harm if "the defendant had, at the time of the injury, a written policy, and . . . the injury 'stems from' that policy." *Melendres v. Arpaio*, 695 F.3d 990, 998 (9th Cir. 2012) (internal citation omitted). When the Government is a party to a dispute where a plaintiff seeks a preliminary injunction, the balancing of equities and public interest factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014); *see also Winter*, 555 U.S. at 20.

The Court should also enjoin Defendants' Proposed Rule pursuant to Federal Rule of Civil Procedure 65, in order to protect class members from irreparable harm.

There is scant doubt that Defendants' implementing the Proposed Rule or its substantial equivalent will cause Plaintiffs irreparable harm. Without a Court order barring the implementation of the Proposed Rule, Plaintiffs will be subject overnight to new standards that are unrecognizable, contrary to their best interests, and violative

---

[26] Unfortunately, neither res judicata nor collateral estoppel have proven effective against Defendants' repetitive breaches of the Settlement. Defendants' proposed rulemaking directly conflicts with at least three prior orders of this Court. *See Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1102 (11th Cir. 2004) (Pursuant to the All Writs Act, this Court may enjoin conduct "which, left unchecked, would have . . . the practice effect of diminishing the court's power to bring the litigation to a natural conclusion.").

MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT, ETC.
CV 85-4544-DMG (AGRx)

of the rights provided to them in the Settlement. Implementing the Proposed Rule would expose thousands of children held in immigration detention across the country to unlicensed and indefinite detention against which they would have no effective recourse.

The balance of equities and public interest clearly favor the Court's issuing an injunction as Plaintiffs request. On the one hand, the public interest in ensuring that children are not subjected to unnecessary trauma is clearly compelling. The Settlement stands as a bulwark protecting children's basic rights to health, safety, and freedom from unnecessary physical restraint.

On the other hand is Defendants' discredited refrain: deterring would-be unauthorized entrants justifies using children as a tool of border control, as the Proposed Rule would allow. 83 Fed. Reg. at 45,493–45,494. This Court has already rejected Defendants' "dubious and unconvincing" claims that long-term family detention policies bear any causal, let alone correlational, relationship to deterrence. Order, at *3 (July 9, 2018) (ECF No. 455).

The balance of equities favors ensuring that thousands of detained minors may rely on the Settlement's protections. Those should not vanish by dint of rulemaking that plainly fails to discharge Defendants' obligation to implement the Settlement in good faith.

**B.    The Court should provisionally adjudicate Defendants in civil contempt.**

Plaintiffs also request that the Court provisionally adjudicate the Defendants in contempt. The Court should make clear to Defendants that their implementing regulations in violation of ¶¶ 9 and 40 would place them in civil contempt.[27]

---

[27] Defendants have previously opposed the Court's issuing remedial orders that would foster consistent compliance with the Settlement, arguing that such relief is available only through civil contempt proceedings and not a motion to enforce. *See, e.g.*, Defs.'

This Court has the inherent authority to enforce its orders through civil contempt proceedings. *Young v. United States ex rel. Vuitton et Fils, S.A.*, 481 U.S. 787, 794 (1987); *Primus Auto Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997). "Civil contempt in this context consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993).

Defendants' "contempt 'need not be willful,' and there is no good faith exception to the requirement of obedience to a court order." *Go-Video v. Motion Picture Ass'n of Am.*, 10 F.3d 693, 695 (9th Cir. 1993) (*quoting In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987)). Although "a person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the court's order," *id.*, a party who violates the plain terms of a consent decree must have "taken all reasonable steps to comply" to avoid a finding of contempt. *Gen. Signal Corp. v. Donallco, Inc.,* 787 F.2d 1376, 1379 (9th Cir. 1986).[28]

The Settlement is both a contract and, by consent, a decree of this Court. *Rufo*, 502 U.S. at 378. The prospective provisions of a consent decree may operate as an injunction. *See United States v. Oregon,* 913 F.2d 576, 580 (9th Cir. 1990) (citing with approval *Williams v. Vukovich,* 720 F.2d 909, 920 (6th Cir. 1983))*; Plummer v. Chem. Bank*, 668 F.2d 654, 659 (2d Cir. 1982); *Reynolds v. McInnes*, 338 F.3d 1201,

---

Opp'n to Mot. to Enforce Settlement, at 4 (May 25, 2018) (ECF No. 425). Plaintiffs accordingly move for an adjudication of civil contempt.

[28] Although Plaintiffs have the burden of showing by clear and convincing evidence that the Defendants have violated a specific and definite order of the court, *Fed. Trade Comm'n v. Affordable Media LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999) (internal citation omitted), the foregoing shows clearly that Plaintiffs have done so. The burden is now on Defendants to demonstrate why they have failed to comply with the Settlement and this Court's several orders enforcing it. *Id.*

1208 (11th Cir. 2003) ("[C]onsent decrees, like all injunctions, are to be enforced through the trial court's civil contempt power.").

As discussed, the Settlement unambiguously obliges Defendants to promulgate regulations that faithfully implement the Settlement. Nonetheless, Defendants' Proposed Rule, the preface thereto, and numerous public statements, all supply clear and convincing—indeed, irrefutable and conclusive—evidence that they have not "taken all reasonable steps" to implement the Settlement. Instead, Defendants seek to deprive Plaintiffs of the benefit of the bargain.

Both this Court and the Ninth Circuit have disapproved Defendants' disregarding the Settlement because of purported "conflicts" with subsequent legislation. *E.g., Flores*, 828 F.3d at 910 ("creation of statutory rights for unaccompanied minors does not make application of the Settlement to accompanied minors 'impermissible.'"); *Flores*, 862 F.3d at 880–81 (rejecting Defendants' argument that providing class members bond hearings would conflict with subsequent legislation).

Both have also disapproved Defendants' disregarding the Settlement because of "changed circumstances" that they continue to argue make complying with the Settlement difficult. *E.g., Flores*, 828 F.3d at 909–10 (rejecting Defendants' argument "that the Settlement should be modified because of the surge in family units crossing the Southwest border."); Order (July 9, 2018) (ECF No. 455) (declining to modify the Settlement on the basis of unsupported assertions that compliance with the Settlement has "caused the surge in border crossings"); *see generally Rufo*, 502 U.S. at 385 (where party anticipates "changing conditions that would make performance of the decree more onerous but nevertheless agreed to the decree," it must "satisfy a heavy burden to convince a court that . . . [it] made a reasonable effort to comply with the decree, and should be relieved of the undertaking under Rule 60(b).").

Undaunted, Defendants seek to circumvent the courts' prior rulings by recycling the same discredited arguments into their Proposed Rule. *See, e.g.*, 83 Fed.

MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT, ETC.
CV 85-4544-DMG (AGRx)

1    Reg. at 45,488 ("The proposed regulations would take account of certain changed
2    circusmtances"); *id*. ("compliance with the HSA, the TVPRA, other immigration law,
3    and the [Settlement is] problematic"); *id*. at 45,494 (enforcement of the Settlement's
4    licensing requirement "correlated with a sharp increase in family migration.").

5          The Court should reject Defendants' efforts to strip detained children of crucial
6    rights that the Settlement confers. Defendants' attempted end-run around of this
7    Court's jurisdiction and orders, and the Ninth Circuit's rulings, is not inadvertently
8    contemptuous: it is deliberately so.

9    V.    CONCLUSION.

10         For the foregoing reasons, this Court should grant this motion, enjoin
11   Defendants from implementing regulations that are inconsistent with the Settlement,
12   declare Defendants' conduct as contrary to the Settlement and law, and provisionally
13   adjudicate Defendants in civil contempt.

14

15   Dated: November 2, 2018                CARLOS R. HOLGUÍN,
                                            PETER A. SCHEY
16                                          Center for Human Rights &
                                            Constitutional Law
17

18                                          LEECIA WELCH
                                            NEHA DESAI
19                                          National Center for Youth Law

20                                          HOLLY S. COOPER
21                                          CARTER WHITE
                                            U.C. Davis School of Law
22

23                                          ELENA GARCIA
                                            Orrick, Herrington & Sutcliffe, LLP
24

25                                          LA RAZA CENTRO LEGAL, INC.
                                            Michael S. Sorgen (Cal. Bar No. 43107)

26                                          THE LAW FOUNDATION OF SILICON VALLEY
27                                          Jennifer Kelleher Cloyd
                                            Katherine H. Manning
28                                          Annette Kirkham

MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE
                                                   SETTLEMENT, ETC.
                                                CV 85-4544-DMG (AGRx)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Of counsel:*
YOUTH LAW CENTER
Virginia Corrigan (Cal. Bar No. 292035)

*Carlos Holguín*
Carlos Holguín

*Peter Schey*
Peter Schey

*Holly S. Cooper*
Holly S. Cooper

MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE
SETTLEMENT, ETC.
CV 85-4544-DMG (AGRx)

APPENDIX A[1]

*FLORES* SETTLEMENT AND PROPOSED RULE: ANALOGOUS PROVISIONS COMPARED

| Issue[2] | *Flores* Settlement | Proposed DHS Rule | Proposed HHS Rule |
|---|---|---|---|
| Definition of "licensed program" | ¶ 6:<br>"The term 'licensed program' shall refer to any program, agency or organization that is licensed by an appropriate State agency to provide residential, group, or foster care services for dependent children, including a program operating group homes, foster homes, or facilities for special needs **minors**.[3] A licensed program must also meet those standards for licensed programs set forth in Exhibit 1 attached hereto. All homes and facilities operated by licensed programs, including facilities for special needs **minors**, shall be **non-secure as required under state law**; provided, however, that a facility for special needs **minors** may maintain that level of security permitted under state law which is necessary for the protection of a **minor** or others in appropriate circumstances, e.g., cases in which a **minor** has drug or alcohol | § 236.3(b)(9); 83 Fed. Reg. 45,525:<br>"Licensed Facility means an ICE detention facility that is licensed by the state, county, or municipality in which it is located, if such a licensing scheme exists. Licensed facilities shall comply with all applicable state child welfare laws and regulations and all state and local building, fire, health, and safety codes. If a licensing scheme for the detention of minors accompanied by a parent or legal guardian is not available in the state, county, or municipality in which an ICE detention facility is located, DHS shall employ an entity outside of DHS that has relevant audit experience to ensure compliance with the family residential standards established by ICE."<br><br>*See also:* § 236.3(i)(4); 83 Fed. Reg. 45,527: "Standards. Non-secure, licensed ICE facilities to which minors who are not UACs are transferred pursuant to the procedures in paragraph (e) of this section **shall abide by applicable standards established by ICE.** | § 410.101; 83 Fed. Reg. 45,529:<br>"Licensed program means any program, agency, or organization that is licensed by an appropriate State agency to provide residential, group, or foster care services for dependent children, including a program operating group homes, foster homes, or facilities for special needs **UAC**. A licensed program must meet the standards set forth in § 410.402 of this part. All homes and facilities operated by a licensed program, including facilities for special needs minors, are non-secure as required under State law. However, a facility for special needs minors may maintain that level of security permitted under State law which is necessary for the protection of a **UAC** or others in appropriate circumstances, e.g., cases in which a **UAC** has drug or alcohol problems or is mentally ill." |

---

[1] Plaintiff counsel's monitoring authority will cease once the Government issues final regulations replacing the *Flores* Settlement Agreement. The importance of the final regulations wholly and precisely implementing the provisions of the Agreement cannot be overestimated.

[2] This Appendix highlights sections of the proposed regulations that are inconsistent with the Settlement. It is not intended to be an exhaustive list.

[3] All text in this Appendix that is bolded has been done so by Plaintiffs' counsel for emphasis.

1

| Issue[2] | *Flores* Settlement | Proposed DHS Rule | Proposed HHS Rule |
|---|---|---|---|
| | problems or is mentally ill. The INS shall make reasonable efforts to provide licensed placements in those geographical areas where the majority of **minors** are apprehended, such as southern California, southeast Texas, southern Florida and the northeast corridor." | At a minimum, such standards shall include provisions or arrangements for the following services for each minor who is not a UAC in its care:…" | |
| Definition of "special needs minor" | ¶ 7: "The term "special needs minor" **shall refer** to a minor whose mental and/or physical condition requires special services and treatment by staff. A minor may have special needs due to drug or alcohol abuse, serious emotional disturbance, mental illness or retardation, or a physical condition or chronic illness that requires special services or treatment. A minor who has suffered serious neglect or abuse may be considered a minor with special needs if the minor requires special services or treatment as a result of the neglect or abuse. The INS **shall assess minors** to determine if they have special needs and, if so, **shall place such minors**, whenever possible, **in licensed programs in which the INS places children without special needs, but which provide services and treatment for such special needs."** | § 236.3(b); 83 Fed. Reg. 45,525: "(2) Special Needs Minor means a minor whose mental and/or physical condition requires special services and treatment as identified during an individualized needs assessment as referenced in paragraph (i)(4)(iii) of this section. A minor may have special needs due to drug or alcohol abuse, serious emotional disturbance, mental illness or retardation, or a physical condition or chronic illness that requires special services or treatment. A minor who has suffered serious neglect or abuse may be considered a minor with special needs if the minor requires special services or treatment as a result of the neglect or abuse."<br><br>§ 236.3(i); 83 Fed. Reg. 45,526: "In any case in which DHS does not release a minor who is not a UAC, said minor shall remain in DHS detention. Consistent with 6 CFR 115.14, minors **shall be detained in the least restrictive setting appropriate to the minor's age and special needs,** | § 410.101; 83 Fed. Reg. 45,529: "Special needs minor means a UAC whose mental and/or physical condition requires special services and treatment by staff. A UAC may have special needs due to drug or alcohol abuse, serious emotional disturbance, mental illness or retardation, or a physical condition or chronic illness that requires special services or treatment. A UAC who has suffered serious neglect or abuse may be considered a special needs minor if the UAC requires special services or treatment as a result of neglect or abuse."<br><br>§ 410.208; 83 Fed. Reg. 45,531: "ORR **assesses** each UAC to determine if he or she has special needs, and if so, **places** the UAC, whenever possible, in a licensed program in which ORR places unaccompanied alien children without special needs, but which provides services and treatment for such special needs." |

| Issue[2] | *Flores* Settlement | Proposed DHS Rule | Proposed HHS Rule |
|---|---|---|---|
| | | **provided that such setting is consistent with the need** to ensure the minor's timely appearance before DHS and the immigration courts and **to protect the minor's well-being and that of others,** as well as with any other laws, regulations, or legal requirements."<br><br>§ 236.3(i)(4); 83 Fed. Reg. 45,527: "Non-secure, licensed ICE facilities to which minors who are not UACs are transferred pursuant to the procedures in paragraph (e) of this section shall abide by **applicable standards established by ICE. At a minimum, such standards shall include provisions or arrangements for the following services for each minor who is not a UAC in its care:** . . . **(iii) An individualized needs assessment . . .**" | |
| Definition of "medium security facility" | ¶8:<br>"The term "medium security facility" shall refer to a facility that is operated by a program, agency or organization licensed by an appropriate State agency and that meets those standards set forth in Exhibit 1 attached hereto. **A medium security facility is designed for minors who require close supervision but do not need placement in juvenile correctional facilities. It provides 24-hour awake** | Preamble, 83 Fed. Reg. 45,497: "DHS does not propose to adopt the FSA's term ''medium security facility'' because DHS does not maintain any medium security facilities for the temporary detention of minors, and the definition is now unnecessary." | § 410.101; 83 Fed. Reg. 45,529: "Staff secure facility means a facility that is operated by a program, agency or organization licensed by an appropriate State agency and that meets the standards for licensed programs set forth in § 410.402 of this part. A staff secure facility is designed for a UAC who requires close supervision but does not need placement in a secure facility. It provides 24-hour awake supervision, custody, care, and treatment. It maintains stricter security measures, such as intensive staff supervision, |

| Issue[2] | *Flores* Settlement | Proposed DHS Rule | Proposed HHS Rule |
|---|---|---|---|
| | supervision, custody, care, and **treatment. It maintains stricter security measures, such as intensive staff supervision, than a facility operated by a licensed program in order to control problem behavior and to prevent escape.** Such a facility may have a secure perimeter but shall not be equipped internally with major restraining construction or procedures typically associated with correctional facilities." | | than a shelter in order to control problem behavior and to prevent escape. A staff secure facility may have a secure perimeter but is not equipped internally with major restraining construction or procedures typically associated with correctional facilities." |
| General applicability | ¶11: "The INS treats, and **shall continue to treat**, all minors in its custody with dignity, respect and special concern for their particular vulnerability **as minors. The INS shall place** each detained minor in the least restrictive setting appropriate to the minor's age and special needs, provided that such setting is consistent with **its interests to ensure the minor's timely appearance before the INS and the immigration courts** and to protect the minor's well-being and that of others. Nothing herein shall require the INS to release a minor to any person or agency whom the INS has reason to believe may harm or neglect the minor | § 236.3(a)(1); 83 Fed. Reg. 45,525: "Generally. (1) DHS **treats** all minors and UACs in its custody with dignity, respect and special concern for their particular vulnerability." <br><br> § 236.3(g)(2)(i); 83 Fed. Reg. 45,526: "Consistent with 6 CFR 115.114, minors and UACs shall be held in the least restrictive setting appropriate to the minor or UAC's age and special needs, provided that such setting is consistent with the need to protect the minor or UAC's well-being and that of others, **as well as with any other laws, regulations, or legal requirements**." <br><br> § 236.3(i); 83 Fed. Reg. 45,526-27: | § 410.102; 83 Fed. Reg. 45,530: "ORR shall hold UACs in facilities that are safe and sanitary and that are consistent with ORR's concern for the particular vulnerability of minors. **Within all placements**, UAC shall be treated with dignity, respect, and special concern for their vulnerability." <br><br> § 410.201(a); 83 Fed. Reg. 45,530: "ORR **places** each UAC in the least restrictive setting that is in the best interest of the child and appropriate to the UAC's age and special needs, provided that such setting is consistent with its interests to ensure the UAC's timely appearance before DHS and the immigration courts and to protect the UAC's well-being and that of others." |

| Issue[2] | *Flores* Settlement | Proposed DHS Rule | Proposed HHS Rule |
|---|---|---|---|
| | or fail to present him or her before the INS or immigration courts when requested to do so." | "In any case in which DHS does not release a minor who is not a UAC, said minor shall remain in DHS detention. Consistent with 6 CFR 115.14, minors shall be detained in the least restrictive setting appropriate to the minor's age and special needs, provided that such setting is consistent with the need to ensure the minor's timely appearance before DHS and the immigration courts and to protect the minor's well-being and that of others, as well as with **any other laws, regulations, or legal requirements.**" | |
| Notice of rights upon apprehension | ¶ 12A: "Whenever the INS takes a minor into custody, it **shall expeditiously process** the minor and shall provide the minor with a notice of rights, including the right to a bond redetermination hearing if applicable." | § 236.3(g)(2)(i); 83 Fed. Reg. 45,526: "(i) Following the apprehension of a minor or UAC, DHS **will process** the minor or UAC as expeditiously as possible."<br><br>§ 236.3(g)(1); 83 Fed. Reg. 45,526: "(i) Notice of rights and request for disposition. Every minor or UAC who enters DHS custody, including minors and UACs who request voluntary departure or request to withdraw their application for admission, will be issued a Form I–770, Notice of Rights and Request for Disposition, which will include a statement that the minor or UAC may make a telephone call to a parent, close relative, or friend. If the minor or UAC is believed to be less than 14 years of age, or is unable to comprehend the information contained in the Form I–770, the notice shall | |

| Issue[2] | *Flores* Settlement | Proposed DHS Rule | Proposed HHS Rule |
|---|---|---|---|
| | | be read and explained to the minor or UAC in a language and manner that he or she understands. In the event that a minor or UAC is no longer amenable to voluntary departure or to a withdrawal of an application for admission, the minor or UAC will be issued a new Form I–770 or the Form I–770 will be updated, as needed." <br><br> § 236.3(g)(1); 83 Fed. Reg. 45,526: "(ii) Notice of Right to Judicial Review. Every minor who is not a UAC who is transferred to or remains in a DHS detention facility will be provided with a Notice of Right to Judicial Review, which informs the minor of his or her right to seek judicial review in United States District Court with jurisdiction and venue over the matter if the minor believes that his or her detention does not comply with the terms of paragraph (i) of this section." | |
| Conditions for the detention of minors | ¶ 12A: "Following arrest, the INS **shall hold** minors in facilities that are safe and sanitary and that are consistent with the INS's concern for the particular vulnerability of minors.  Facilities will provide access to toilets and sinks, drinking water and food as appropriate, medical assistance if the minor is in need of emergency | § 236.3(g)(2)(i); 83 Fed. Reg. 45,526: "DHS **will hold** minors and UACs in facilities that are safe and sanitary and that are consistent with DHS's concern for their particular vulnerability. Facilities will provide access to toilets and sinks, drinking water and food as appropriate, access to emergency medical assistance as needed, and adequate temperature and ventilation. DHS will provide **adequate supervision** and | § 410.201(d); 83 Fed. Reg. 45,530: "(d) Facilities where ORR places UAC will provide access to toilets and sinks, drinking water and food as appropriate, medical assistance if the UAC is in need of emergency services, adequate temperature control and ventilation, **adequate supervision to protect UAC from others**, and contact with family members who were arrested with the minor." |

| Issue[2] | *Flores* Settlement | Proposed DHS Rule | Proposed HHS Rule |
|---|---|---|---|
| | services, adequate temperature control and ventilation, **adequate supervision to protect minors from others**, and contact with family members who were arrested with the minor." | will provide contact with family members arrested with the minor or UAC **in consideration of the safety and well-being of the minor or UAC, and operational feasibility.**"<br><br>§ 236.3(g)(2)((i); 83 Fed. Reg. 45,526: "UACs **generally will be held separately** from unrelated adult detainees in accordance with 6 CFR 115.14(b) and 6 CFR 115.114(b). In the event that such separation is not immediately possible, UACs in facilities covered by 6 CFR 115.114 **may be housed with an unrelated adult for no more than 24 hours except in the case of an emergency or other exigent circumstances.**" | |
| Conditions for the detention of minors | ¶12A: "The INS **will segregate** unaccompanied minors from unrelated adults.  Where such segregation is not immediately possible, an unaccompanied minor **will not be detained with an unrelated adult for more than 24 hours**. . . . However, minors **shall be separated** from delinquent offenders.  Every effort **must be taken** to ensure that the safety and well-being of the minors detained in these facilities are satisfactorily provided for by the staff. . . .' | § 236.3(g)(2)(i); 83 Fed. Reg. 45526: "UACs **generally will be held separately** from unrelated adult detainees in accordance with 6 CFR 115.14(b) and 6 CFR 115.114(b). In the event that such separation is not immediately possible, UACs in facilities covered by 6 CFR 115.114 **may be housed with an unrelated adult for no more than 24 hours except in the case of an emergency or other exigent circumstances.**" | § 410.201(b); 83 Fed. Reg. 45,530: "ORR **separates** UAC from delinquent offenders." |

| Issue[2] | *Flores* Settlement | Proposed DHS Rule | Proposed HHS Rule |
|---|---|---|---|
| Emergency placement | ¶ 12A(3): "in the event of an emergency or influx of minors into the United States, in which case the INS **shall place** all minors pursuant to Paragraph 19 **as expeditiously as possible**; . . . " | § 236.383(e)(1); Fed. Reg. 45,526: "In the case of an influx or emergency, as defined in paragraph (b) of this section, DHS will transfer a minor who is not a UAC, and who does not meet the criteria for secure detention pursuant to paragraph (i)(1) of this section, to a licensed facility as defined in paragraph (b)(9) of this section, which is non-secure, as expeditiously as possible." | § 410.201; 83 Fed. Reg. 45,530: "(e) If there is no appropriate licensed program immediately available for placement of a UAC pursuant to Subpart B, and no one to whom ORR may release the UAC pursuant to Subpart C, the UAC **may be placed** in an ORR-contracted facility, having separate accommodations for minors, or a State or county juvenile detention facility. In addition to the requirement that UAC shall be separated from delinquent offenders, every effort must be taken to ensure that the safety and well-being of the UAC detained in these facilities are satisfactorily provided for by the staff. ORR **makes all reasonable efforts to place** each UAC in a licensed program as expeditiously as possible." |
| Preparations for an "emergency" or "influx" | ¶ 12C: "In preparation for an 'emergency' or 'influx,' as described in Subparagraph B, the INS **shall have a written plan that describes the reasonable efforts that it will take to place** all minors as expeditiously as possible." | § 236.383(e)(2); 83 Fed. Reg. 45,526: ". . . DHS **will abide by written guidance** detailing all reasonable efforts that it will take to transfer all minors who are not UACs as expeditiously as possible." | § 410.209; 83 Fed. Reg. 45,531: "In the event of an emergency or influx that prevents the prompt placement of UAC in licensed programs, ORR makes all reasonable efforts to place each UAC in a licensed program as expeditiously as possible using the following procedures." |
| Release of a minor required except for two circumstances ; order of | ¶14: "Where the INS determines that the detention of the minor is not required either to secure his or her timely appearance before the INS or the immigration court, or to ensure the | § 236.3(j); 83 Fed. Reg. 45,528: "Release of minors from DHS custody. DHS will make and record prompt and continuous efforts on its part toward the release of the minor. DHS will make and record prompt and continuous efforts on its part toward the | § 410.301; 83 Fed. Reg. 45,531: "(a) ORR **releases** a UAC to an approved sponsor without unnecessary delay, but may continue to retain custody of a UAC if ORR determines that continued custody is necessary to ensure the UAC's safety or the safety of |

| Issue[2] | *Flores* Settlement | Proposed DHS Rule | Proposed HHS Rule |
|---|---|---|---|
| preference for the release | minor's safety or that of others, the INS **shall release** a minor from its custody without unnecessary delay, in the following order of preference, to:<br><br>A.  A parent;<br>B.  A legal guardian;<br>C.  An adult relative (brother, sister, aunt, uncle, or grandparent);<br>D.  An adult individual or entity designated by the parent or legal guardian as capable and willing to care for the minor's well-being in (i) a declaration signed under penalty of perjury before an immigration or consular officer or (ii) such other document(s) that establish(es) to the satisfaction of the INS, in its discretion, the affiant's paternity or guardianship;<br>E.  A licensed program willing to accept legal custody; or<br>An adult individual or entity seeking custody, in the discretion of the INS, when it appears that there is no other likely alternative to long term detention and family reunification does not appear to be a reasonable possibility." | release of the minor. If DHS determines that detention of a minor who is not a UAC is not required to secure the minor's timely appearance before DHS or the immigration court, or to ensure the minor's safety or the safety of others, the minor may be released, as provided under existing statutes and regulations, pursuant to the procedures set forth in this paragraph. (1) DHS **will release** a minor from custody to a parent or legal guardian who is available to provide care and physical custody. (2) Prior to releasing to a parent or legal guardian, DHS will use all available reliable evidence to determine whether the relationship is bona fide. If no reliable evidence is available that confirms the relationship, the minor will be treated as a UAC and transferred into the custody of HHS as outlined in paragraph (f) of this section. (3) For minors in DHS custody, DHS shall assist without undue delay in making transportation arrangements to the DHS office nearest the location of the person to whom a minor is to be released. DHS may, in its discretion, provide transportation to minors. (4) Nothing herein shall require DHS to release a minor to any person or agency whom DHS has reason to believe may harm or neglect the minor or fail to present him or her before DHS or the immigration courts when requested to do so." | others, or that continued custody is required to secure the UAC's timely appearance before DHS or the immigration courts.<br>(b) When ORR releases a UAC without unnecessary delay to an approved sponsor, it releases in the following order of preference:<br>(1) A parent;<br>(2) A legal guardian;<br>(3) An adult relative (brother, sister, aunt, uncle, or grandparent);<br>(4) An adult individual or entity designated by the parent or legal guardian as capable and willing to care for the UAC's well-being in: (i) A declaration signed under penalty of perjury before an immigration or consular officer, or (ii) Such other document that establishes to the satisfaction of ORR, in its discretion, the affiant's parental relationship or guardianship;<br>(5) A licensed program willing to accept legal custody; or<br>(6) An adult individual or entity seeking custody, in the discretion of ORR, when it appears that there is no other likely alternative to long term custody, and family reunification does not appear to be a reasonable possibility." |

| Issue[2] | *Flores* Settlement | Proposed DHS Rule | Proposed HHS Rule |
|---|---|---|---|
| | | 83 Fed. Reg. 45,503:<br>"Once it is determined that the applicable statutes and regulations permit release, proposed **§ 236.3(j) would permit release of a minor only to a parent or legal guardian** who is available to provide care and custody, in accordance with the TVPRA, using the same factors for determining whether release is appropriate as are contained in paragraph 14."<br><br>83 Fed. Reg. 45,516:<br>"The proposed rule adds that any decision to release must follow a determination that such release is permitted by law, including parole regulations. In addition, the proposed rule does not codify the list of individuals to whom a non-UAC minor can be released, because the TVPRA has overtaken this provision. **Per the TVPRA, DHS does not have the authority to release juveniles to non-parents or legal guardians. Under the TVPRA, DHS may release a juvenile to a parent or legal guardian only.**" | |
| Requirements for the custodian of a minor to be released | ¶15:<br>"Before a minor is released from INS custody pursuant to Paragraph 14 above, the custodian must execute an Affidavit of Support (Form I-134) and an agreement to: | | § 410.302(e); 83 Fed. Reg. 45,531:<br>(e) The proposed sponsor must sign an affidavit of support and a custodial release agreement of the conditions of release. The custodial release agreement requires that the sponsor: |

| Issue[2] | *Flores* Settlement | Proposed DHS Rule | Proposed HHS Rule |
|---|---|---|---|
| | A. provide for the minor's physical, mental, and financial well-being; <br> B. ensure the minor's presence at all future proceedings before the INS and the immigration court; <br> C. notify the INS of any change of address within five (5) days following a move; <br> D. in the case of custodians other than parents or legal guardians, not transfer custody of the minor to another party without the prior written permission of the District Director; <br> E. notify the INS at least five days prior to the custodian's departing the United States of such departure, whether the departure is voluntary or pursuant to a grant of voluntary departure or order of deportation; and <br> F. if dependency proceedings involving the minor are initiated, notify the INS of the initiation of a such proceedings and the dependency court of any immigration proceedings pending against the minor. <br><br> In the event of an emergency, a custodian may transfer temporary physical custody of a minor prior to securing permission from the INS but shall notify the INS of the transfer as soon as is practicable thereafter, but in | | (1) Provide for the UAC's physical, mental, and financial well-being; <br> (2) Ensure the UAC's presence at all future proceedings before DHS and the immigration courts; <br> **(3) Ensure the UAC reports for removal from the United States if so ordered;** <br> (4) Notify ORR, DHS, and the Executive Office for Immigration Review of any change of address within five days following a move; <br> (5) Notify ORR and DHS at least five days prior to the sponsor's departure from the United States, whether the departure is voluntary or pursuant to a grant of voluntary departure or an order of removal; <br> (6) Notify ORR and DHS if dependency proceedings involving the UAC are initiated and also notify the dependency court of any immigration proceedings pending against the UAC; <br> (7) Receive written permission from ORR if the sponsor decides to transfer legal custody of the UAC to someone else. Also, in the event of an emergency (e.g., serious illness or destruction of the home), a sponsor may transfer temporary physical custody of the UAC prior to securing permission from ORR, but the sponsor must notify ORR as soon as possible and no later than 72 hours after the transfer; and <br> **(8) Notify ORR and DHS as soon as possible and no later than 24 hours of learning that** |

| Issue[2] | *Flores* Settlement | Proposed DHS Rule | Proposed HHS Rule |
|---|---|---|---|
| | all cases within 72 hours. For purposes of this Paragraph, examples of an "emergency" shall include the serious illness of the custodian, destruction of the home, etc. In all cases where the custodian in writing seeks written permission for a transfer, the District Director shall promptly respond to the request." | | **the UAC has disappeared, has been threatened, or has been contacted in any way by an individual or individuals believed to represent an immigrant smuggling syndicate or organized crime.** |
| Custodian suitability assessment | ¶17:<br>"A positive suitability assessment may be required prior to release to any individual or program pursuant to Paragraph 14. A suitability assessment may include such components as an investigation of the living conditions in which the minor would be placed and the standard of care he would receive, verification of identity and employment of the individuals offering support, interviews of members of the household, and a home visit. Any such assessment should also take into consideration the wishes and concerns of the minor." | | § 410.302; 83 Fed. Reg. 45,531-32:<br>"(b) ORR requires a background check, including verification of identity and which may include verification of employment of the individuals offering support, prior to release. (c) ORR also may require further suitability assessment, which may include interviews of members of the household, investigation of the living conditions in which the UAC would be placed and the standard of care he or she would receive, a home visit, **a fingerprint-based background and criminal records check on the prospective sponsor and on adult residents of the prospective sponsor's household, and follow-up visits after release.** Any such assessment also takes into consideration the wishes and concerns of the UAC. (d) If the conditions identified in TVPRA at 8 U.S.C. 1232(c)(3)(B) are met, and require a home study, no release to a sponsor may occur in the absence of such a home study." |

| Issue[2] | *Flores* Settlement | Proposed DHS Rule | Proposed HHS Rule |
|---|---|---|---|
| | | | |
| Efforts for family reunification required | ¶18:<br>"Upon taking a minor into custody, the INS, or the licensed program in which the minor is placed, **shall make and record** the prompt and continuous efforts on its part toward **family reunification** and the release of the minor pursuant to Paragraph 14 above. Such efforts at family reunification **shall continue** so long as the minor is in INS custody." | § 236.3(j); 83 Fed. Reg. 45,528:<br>"DHS **will make and record** prompt and continuous efforts on its part toward the **release of the minor**." | § 410.201(f); 83 Fed. Reg. 45,530:<br>"ORR **makes and records** the prompt and continuous efforts on its part toward family reunification. ORR **continues** such efforts at **family reunification** for as long as the minor is in ORR custody." |
| Licensed placement default if not released | ¶ 19:<br>"In any case in which the INS does not release a minor pursuant to Paragraph 14, the minor shall remain in INS legal custody. Except as provided in Paragraphs 12 or 21, such minor shall be placed temporarily in a licensed program until such time as release can be effected in accordance with Paragraph 14 above or until the minor's immigration proceedings are concluded, whichever occurs earlier. All minors placed in such a licensed program remain in the legal custody of the INS and may only be transferred or released under the authority of the INS; provided, however, that in the event of an emergency a licensed | § 236.3(i); 83 Fed. 45,526:<br>"The minor shall be placed temporarily in a licensed facility, which will be non-secure, until such time as release can be effected or until the minor's immigration proceedings are concluded, whichever occurs earlier. **If immigration proceedings are concluded and result in a final order of removal, DHS will detain the minor for the purpose of removal. If immigration proceedings result in a grant of relief or protection from removal where both parties have waived appeal or the appeal period defined in 8 CFR 1003.38(b) has expired, DHS will release the minor."**<br><br>§ 236.3(i)(5); 83 Fed. 45,528: | § 410.202; 83 Fed. 45,530<br>"(a) ORR places UAC into a licensed program promptly after a UAC is transferred to ORR legal custody, except in the following circumstances: (1) UAC meeting the criteria for placement in a secure facility set forth in § 410.203 of this part; (2) As otherwise required by any court decree or court-approved settlement; or, (3) In the event of an emergency or influx of UAC into the United States, in which case ORR places the UAC as expeditiously as possible in accordance with § 410.209 of this part; or (4) If a reasonable person would conclude that the UAC is an adult despite his or her claims to be a minor."<br><br>§ 410.207; 83 Fed. Reg. 45,531: |

| Issue[2] | *Flores* Settlement | Proposed DHS Rule | Proposed HHS Rule |
|---|---|---|---|
| | program may transfer temporary physical custody of a minor prior to securing permission from the INS but shall notify the INS of the transfer as soon as is practicable thereafter, but in all cases within 8 hours." | "In the event of an emergency, a licensed, non-secure facility described in paragraph (i) of this section may transfer temporary physical custody of a minor prior to securing permission from DHS, but shall notify DHS of the transfer as soon as is practicable thereafter, but in all cases within 8 hours." | "A UAC who is placed in a licensed program pursuant to this subpart remains in the custody of ORR, and may only be transferred or released under its authority in the event of an emergency, a licensed program may transfer temporarily the physical placement of a UAC prior to securing permission from ORR, but must notify ORR of the transfer as soon as possible, but in all cases within eight hours of the transfer. Upon release to an approved sponsor, a UAC is no longer in the custody of ORR." |
| Secure placement criteria | ¶21:<br>"A minor may be held in or transferred to a suitable State or county juvenile detention facility or a secure INS detention facility, or INS-contracted facility, having separate accommodations for minors whenever the **District Director or Chief Patrol Agent determines that the minor:** A. has been charged with, is chargeable, or has been convicted of a crime, or is the subject of delinquency proceedings, has been adjudicated delinquent, or is chargeable with a delinquent act; **provided, however, that this provision shall not apply to any minor whose offense(s) fall(s) within either of the following categories:** | § 236.3(i)(1); 83 Fed. 45,527:<br>"(1) **A minor who is not a UAC referenced under this paragraph** may be held in or transferred to a suitable state or county juvenile detention facility, or a secure DHS detention facility, or DHS contracted facility having separate accommodations for minors, whenever the **Field Office Director and the ICE supervisory or management personnel have probable cause to believe that the minor:** (i) **Has been charged with, is chargeable with**, or has been convicted of a crime or crimes, or is the subject of delinquency proceedings, has been adjudicated delinquent, or is chargeable with a delinquent act or acts, that fit within a pattern or practice of criminal activity; | § 410.203; 83 Fed. 45,530:<br>"(a) Notwithstanding § 410.202 of this part, ORR may place a UAC in a secure facility if the UAC:<br>(1) Has been charged with, is chargeable, or has been convicted of a crime, or is the subject of delinquency proceedings, has been adjudicated delinquent, or is chargeable with a delinquent act, and where ORR deems those circumstances demonstrate that the UAC poses a danger to self or others. **"Chargeable" means that ORR has probable cause to believe that the UAC has committed a specified offense.** This provision does not apply to a UAC whose offense is: (i) An isolated offense that was not within a pattern or practice of criminal activity and did not involve violence against a person or the use or carrying of a weapon; or (ii) A petty offense, |

| Issue[2] | *Flores* Settlement | Proposed DHS Rule | Proposed HHS Rule |
|---|---|---|---|
| | **i) Isolated offenses that (1) were not within a pattern or practice of criminal activity and (2) did not involve violence against a person or the use or carrying of a weapon (Examples: breaking and entering, vandalism, DUI, etc. This list is not exhaustive.);** <br> **ii) Petty offenses, which are not considered grounds for stricter means of detention in any case (Examples: shoplifting, joy riding, disturbing the peace, etc. This list is not exhaustive.);** <br> **As used in this paragraph, "chargeable" means that the INS has probable cause to believe that the individual has committed a specified offense;** <br> B. has committed, or has made credible threats to commit, a violent or malicious act (whether directed at himself or others) while in INS legal custody or while in the presence of an INS officer; <br> C. has engaged, while in a licensed program, in conduct that has proven to be unacceptably disruptive of the normal functioning of the licensed program in which he or she has been placed and removal is necessary to ensure the welfare of the minor or | (ii) **Has been charged with, is chargeable with**, or has been convicted of a crime or crimes, or is the subject of delinquency proceedings, has been adjudicated delinquent, or is chargeable with a delinquent act or acts, **that involve violence against a person or the use or carrying of a weapon;** <br> (iii) Has committed, or has made credible threats to commit, a violent or malicious act (whether directed at himself or others) while in **federal or state government custody** or while in the presence of an immigration officer; <br> (iv) Has engaged, while in the licensed facility, in conduct that has proven to be unacceptably disruptive of the normal functioning of the licensed facility in which the minor has been placed and transfer to another facility is necessary to ensure the welfare of the minor or others, as determined by the staff of the licensed facility; <br> (v) Is determined to be an escape-risk pursuant to paragraph (b)(6) of this section; or <br> (vi) Must be held in a secure facility for his or her own safety." <br><br> *See also*: <br> § 236.3(i)(3); 83 Fed. 45,527: <br> "(3) Non-secure facility. Unless a secure facility is otherwise authorized pursuant to | which is not considered grounds for stricter means of detention in any case; <br> (2) While in DHS or ORR's custody or while in the presence of an immigration officer, has committed, or has made credible threats to commit, a violent or malicious act (whether directed at himself/herself or others); <br> (3) Has engaged, while in a licensed program or staff secure facility, in conduct that has proven to be unacceptably disruptive of the normal functioning of the licensed program or staff secure facility in which he or she has been placed and removal is necessary to ensure the welfare of the UAC or others, as determined by the staff of the licensed program or staff secure facility (e.g., drug or alcohol abuse, stealing, fighting, intimidation of others, or sexually predatory behavior), and ORR determines the UAC poses a danger to self or others based on such conduct; <br> (4) For purposes of placement in a secure RTC, if a licensed psychologist or psychiatrist determines that the UAC poses a risk of harm to self or others. <br> (5) Is otherwise a danger to self or others. (b) ORR Federal Field Specialists review and approve all placements of UAC in secure facilities consistent with legal requirements." |

| Issue[2] | *Flores* Settlement | Proposed DHS Rule | Proposed HHS Rule |
|---|---|---|---|
| | others, as determined by the staff of the licensed program (Examples: drug or alcohol abuse, stealing, fighting, intimidation of others, etc. This list is not exhaustive.); <br> D. is an escape-risk; or <br> E. must be held in a secure facility for his or her own safety, **such as when the INS has reason to believe that a smuggler would abduct or coerce a particular minor to secure payment of smuggling fees.**" | this section, ICE facilities used for the detention of minors who are not UACs shall be non-secure facilities. <br><br> *But see contra*: <br> § 236.3(b)(11); 83 Fed. 45,525: "Non-Secure Facility means a facility that meets the definition of nonsecure in the state in which the facility is located. If no such definition of nonsecure exists under state law, a DHS facility shall be deemed non-secure if egress from a portion of the facility's building is not prohibited through internal locks within the building or exterior locks and egress from the facility's premises is not prohibited through secure fencing around the perimeter of the building." <br><br> *See also*: Commentary at 83 Fed. Reg. 45,501. | |
| Prohibition against default secure placement | ¶ 23: <br> "The INS will not place a minor in a secure facility pursuant to Paragraph 21 if there are less restrictive alternatives that are available and appropriate in the circumstances, such as transfer to (a) a medium security facility which would provide intensive staff supervision and counseling services or (b) another licensed | § 236.3(i)(2); 83 Fed. Reg. 45,527: <br> "DHS will not place a minor who is not a UAC in a secure facility pursuant to paragraph (i)(1) if there are less restrictive alternatives that are available and appropriate in the circumstances, such as **transfer to a facility** which would provide intensive staff supervision and counseling services **or another licensed facility.** All determinations to place a minor in a secure | § 410.205; 83 Fed. Reg. 45,531: <br> "ORR does not place a UAC in a secure facility pursuant to § 410.203 of this part **if less restrictive alternatives are available and appropriate under the circumstances**.  ORR may place a UAC in a **staff secure facility or another licensed program as an alternative to a secure facility.**" |

| Issue[2] | *Flores* Settlement | Proposed DHS Rule | Proposed HHS Rule |
|---|---|---|---|
| | program. All determinations to place a minor in a secure facility will be reviewed and approved by the regional juvenile coordinator." | facility will be reviewed and approved by the Juvenile Coordinator referenced in paragraph (o) of this section. Secure facilities shall permit attorney-client visits in accordance with applicable facility rules and regulations."<br><br>*But see contra* 83 Fed. Reg. 45,525*:* "(11) Non-Secure Facility means a facility that meets the definition of non-secure in the state in which the facility is located. If no such definition of non-secure exists under state law, a DHS facility shall be deemed non-secure if egress from a portion of the facility's building is not prohibited through internal locks within the building or exterior locks and egress from the facility's premises is not prohibited through secure fencing around the perimeter of the building." | |
| Right to a bond hearing | ¶24A:<br>"A minor in deportation proceedings **shall be afforded a bond redetermination** hearing **before an immigration judge in every case**, unless the minor indicates on the Notice of Custody Determination form that he or she refuses such a hearing." | § 236.3(m); 83 Fed. Reg. 45,528:<br>"Bond determinations made by DHS for minors who are **in removal proceedings pursuant to section 240 of the Act and who are also in DHS custody may be reviewed** by an immigration judge pursuant to 8 CFR part 1236 **to the extent permitted by 8 CFR 1003.19. Minors in DHS custody who are not in section 240 proceedings are ineligible** to seek review by an immigration judge of their DHS custody determinations." | § 410.810; 83 Fed. Reg. 45,533:<br>(a) A UAC may request that an **independent hearing officer employed by HHS** determine, through a written decision, whether the UAC would present a risk of danger to the community or risk of flight if released. (1) Requests under this section may be made by the UAC, his or her legal representative, or his or her parent or legal guardian. (2) UACs placed in secure or staff secure facilities will receive a notice of the procedures under this section and may use a form provided to them |

| Issue[2] | *Flores* Settlement | Proposed DHS Rule | Proposed HHS Rule |
|---|---|---|---|
| | | *See also* 83 Fed. Reg. 45,504: "The proposed regulations at § 236.3(m) provide for review of DHS bond determinations by immigration judges to the extent permitted by 8 CFR 1003.19, **but only for those minors**: (1) Who are in removal proceedings under INA section 240, 8 U.S.C. 1229a; and (2) who are in DHS custody. **Those minors who are not in section 240 proceedings are ineligible to seek review by an immigration judge of their DHS custody determination.**" | to make a written request for a hearing under this section. (b) In hearings conducted under this section, **the burden is on the UAC to show that he or she will not be a danger to the community (or risk of flight) if released, using a preponderance of the evidence standard.** (c) In hearings under this section, the UAC may be represented by a person of his or her choosing, at no cost to the government. The UAC may present oral and written evidence to the hearing officer and may appear by video or teleconference. ORR may also choose to present evidence either in writing, or by appearing in person, or by video or teleconference. (d) A hearing officer's decision that a UAC would not be a danger to the community (or risk of flight) if released is binding upon ORR, unless the provisions of paragraph (e) of this section apply. (e) A hearing officer's decision under this section **may be appealed to the Assistant Secretary of the Administration for Children and Families.** Any such appeal request shall be in writing, and must be received within 30 days of the hearing officer decision. The Assistant Secretary **will reverse a hearing officer decision only if there is a clear error of fact, or if the decision includes an error of law.** Appeal to the Assistant Secretary shall not effect a stay of the hearing |

| Issue[2] | *Flores* Settlement | Proposed DHS Rule | Proposed HHS Rule |
|---|---|---|---|
| | | | officer's decision to release the UAC, unless within five business days of such hearing officer decision, the Assistant Secretary issues a decision in writing that release of the UAC would result in a significant danger to the community. Such a stay decision must include a description of behaviors of the UAC while in care and/or documented criminal or juvenile behavior records from the UAC demonstrating that the UAC would present a danger to community if released. **(f) Decisions under this section are final and binding on the Department, and a UAC may only seek another hearing under this section if the UAC can demonstrate a material change in circumstances.** Similarly, ORR may request the hearing officer to make a new determination under this section if at least one month has passed since the original decision, and ORR can show that a material change in circumstances means the UAC should no longer be released. (g) This section cannot be used to determine whether a UAC has a suitable sponsor, and neither the hearing officer nor the Assistant Secretary may order the UAC released. **(h) This section may not be invoked to determine the UAC's placement while in ORR custody. Nor may this section be invoked to determine level of custody for the UAC."** |

| Issue[2] | *Flores* Settlement | Proposed DHS Rule | Proposed HHS Rule |
|---|---|---|---|
| Right to judicial review of placement in a particular facility | ¶24B: "Any minor who disagrees with the INS's determination to place that minor in a particular type of facility, or who asserts that the licensed program in which he or she has been placed does not comply with the standards set forth in Exhibit 1 attached hereto, may seek judicial review in any United States District Court with jurisdiction and venue over the matter to challenge that placement determination or to allege noncompliance with the standards set forth in Exhibit 1. In such an action, the United States District Court shall be limited to entering an order solely affecting the individual claims of the minor bringing the action." <br><br> ¶ 24(D): "The INS shall promptly provide each minor not released with (a) INS Form I-770, (b) an explanation of the right of judicial review as set out in Exhibit 6, and (c) the list of free legal services available in the district pursuant to INS regulations (unless previously given to the minor)." | *See, generally* 83 Fed. Reg. 45,5317: "(*Note*: The proposed rule does not expressly provide for judicial review of placement/ compliance, but does not expressly bar such review.)." <br><br> *See, also* § 236.3(g)(ii); 83 Fed. Reg. 45,526: "(ii) Every minor who is not a UAC who is transferred to or remains in a DHS detention facility **will be provided with a Notice of Right to Judicial Review, which informs the minor of his or her right to seek judicial review** in United States District Court with jurisdiction and venue over the matter if the minor believes that his or her detention does not comply with the terms of paragraph (i) of this section." | 83 Fed. Reg. 45,508: "Also, once these regulations are finalized and the FSA is terminated, it would be even clearer that any review by judicial action must occur under a statute where the government has waived sovereign immunity, such as the Administrative Procedure Act. Therefore, **we are not proposing regulations for most of paragraphs 24(B) and 24(C) of the FSA, although we do propose that all UACs will continue to receive a notice . . .**" <br><br> *See also* 83 Fed. Reg. 45,510: "Furthermore, while the FSA contains procedures for judicial review of a UAC's placement in a secure or staff-secure shelter, and a standard of review, once these regulations are finalized and the FSA is vacated, any review by judicial actions would occur in accordance with the Administrative Procedure Act and any other applicable Federal statute. Therefore, **we are not proposing regulations for most of paragraphs 24(B) and 24(C) of the FSA.**" |
| Notice requirement | ¶ 24C: "In order to permit judicial review of Defendants' placement decisions as | [none] <br><br> *See also* table at 83 Fed. Reg. 45,517 | § 410.206; 83 Fed. Reg. 45,531: "**Within a reasonable period of time, ORR provides** each UAC placed or transferred to a |

| Issue[2] | *Flores* Settlement | Proposed DHS Rule | Proposed HHS Rule |
|---|---|---|---|
| | provided in this Agreement, Defendants **shall provide** minors **not placed in licensed programs** with a notice of the reasons for housing the minor in a detention or medium security facility." | | **secure or staff secure facility** with a notice of the reasons for the placement **in a language the UAC understands."**<br><br>§ 410.801; 83 Fed. Reg. 45,533: "For UACs not placed in licensed programs, ORR shall—**within a reasonable period of time**—provide a notice of the reasons for housing the minor in secure or staff secure facility. **Such notice shall be in a language the UAC understands."** |
| Conditions for the transfer of UAC | ¶25: "Unaccompanied minors arrested or taken into custody by the INS should not be transported by the INS in vehicles with **detained adults** except A. when being transported from the place of arrest or apprehension to an INS office, or B. where separate transportation would be **otherwise impractical**. When transported together pursuant to Clause (B) minors shall be separated from adults. The INS shall take necessary precautions for the protection of the well-being of such minors when transported with adults." | § 236.3(f); 83 Fed. Reg. 45,526: "(4) Conditions of transfer. (i) A UAC will not be transported with an **unrelated detained adult(s)** unless the UAC is being transported from the place of apprehension to a DHS facility or if separate transportation is **otherwise impractical or unavailable**. (ii) When separate transportation is impractical or unavailable, necessary precautions will be taken to ensure the UAC's safety, security, and well-being. If a UAC is transported with any unrelated detained adult(s), DHS will separate the UAC from the unrelated adult(s) **to the extent operationally feasible** and take necessary precautions for protection of the UAC's safety, security, and well-being." | § 410.500; FR 45533, "(a) ORR does not transport UAC with adult detainees." |

| Issue[2] | *Flores* Settlement | Proposed DHS Rule | Proposed HHS Rule |
|---|---|---|---|
| Conditions for the transfer of UAC | ¶26:<br>"The INS **shall assist** without undue delay in making transportation arrangements to the INS office nearest the location of the person or facility to whom a minor is to be released pursuant to Paragraph 14. The INS may, in its discretion, provide transportation to minors." | § 236.3(j); 83 Fed. Reg. 45,528:<br>"(3) For minors in DHS custody, DHS **shall assist** without undue delay in making transportation arrangements to the DHS office nearest the location of the person to whom a minor is to be released. DHS may, in its discretion, provide transportation to minors." | § 410.500; 83 Fed. Reg. 45,533:<br>"(b) When ORR plans to release a UAC from its custody under the family reunification provisions at sections 410.201 and 410.302 of this part, ORR **assists** without undue delay in making transportation arrangements. ORR may, in its discretion, provide transportation to UAC." |
| Monitoring compliance with the *Flores* Settlement; collection of data on minors | ¶28A:<br>"An INS Juvenile Coordinator in the Office of the Assistant Commissioner for Detention and Deportation shall monitor compliance with the terms of this Agreement and shall maintain an up-to-date record of all minors who are placed in proceedings and remain in INS custody for longer than 72 hours. Statistical information on such minors shall be collected **weekly** from **all INS district offices and Border Patrol stations**. Statistical information **will include** at least the following:<br>**(1) biographical information such as each minor's name, date of birth, and country of birth,**<br>**(2) date placed in INS custody,**<br>**(3) each date placed, removed or released,**<br>**(4) to whom and where placed, transferred, removed or released,** | 236.3(o); 83 Fed. Reg. 45,528:<br>"(1) CBP and ICE each shall identify a Juvenile Coordinator for the purpose of monitoring compliance with the terms of this section.<br>(2) **The Juvenile Coordinators** shall collect and periodically examine relevant statistical information about UACs and minors who remain in CBP or ICE custody for longer than 72 hours. Such statistical information **may include** but not necessarily be limited to:<br>**(i) Biographical information;**<br>**(ii) Dates of custody; and**<br>**(iii) Placements, transfers, removals, or releases from custody, including the reasons for a particular placement."** | [none] |

22

| Issue[2] | *Flores* Settlement | Proposed DHS Rule | Proposed HHS Rule |
|---|---|---|---|
| | **(5) immigration status, and (6) hearing dates.** The INS, through the Juvenile Coordinator, **shall** also collect information regarding the reasons for every placement of a minor in a detention facility or medium security facility." | | |
| Scope of requirements and basic elements | Exhibit 1, Preamble: "A. Licensed programs **shall comply with all applicable state child welfare laws and regulations and all state and local building, fire, health and safety codes** and shall provide or arrange for the following services for each minor in its care." | § 236.3(i); 83 Fed. Reg.  45,527: "(4) Standards. Non-secure, licensed ICE facilities to which minors who are not UACs are transferred pursuant to the procedures in paragraph (e) of this section **shall abide by applicable standards established by ICE.** At a minimum, such standards shall include provisions or arrangements for the following services for each minor who is not a UAC in its care. . ." | § 410.402(a)-(c); 83 Fed. Reg. 45,532: "Licensed programs must: (a) Be **licensed by an appropriate State agency** to provide residential, group, or foster care services for dependent children. (b) **Comply with all applicable state child welfare laws and regulations and all state and local building, fire, health and safety codes**; (c) Provide or arrange for the following services for each UAC in care, including. . . " |
| Reunification services | Exhibit 1, Section A, Paragraph 13: "[A licensed program shall provide for each minor in its care:] 13. **Family reunification services** designed to identify relatives in the United States as well as in foreign countries and assistance in obtaining legal guardianship when necessary for the release of the minor." | § 236.3(i)(4); 83 Fed. Reg.  45,528: "[Standards for non-secure, licensed ICE facilities to which non-UAC minors are transferred shall include provisions or arrangements for:] (xiii) **When necessary, communication with adult relatives living in the United States and in foreign countries regarding legal issues related to the release and/or removal of the minor. . ."** | § 410.402(c); 83 Fed. Reg. 45,532: "[A licensed program must provide for each UAC in its care:] (13) **Family reunification services** designed to identify relatives in the United States as well as in foreign countries and assistance in obtaining legal guardianship when necessary for release of the UAC." |

| Issue[2] | *Flores* Settlement | Proposed DHS Rule | Proposed HHS Rule |
|---|---|---|---|
| Determining whether a minor is a UAC | [none] | § 236.3; 83 Fed. Reg. 45,525:<br>"(d) Determining whether an alien is a UAC. (1) Immigration officers will make a determination as to whether an alien under the age of 18 is a UAC at the time of encounter or apprehension and prior to the detention or release of such alien.<br>**(2) When an alien previously determined to have been a UAC has reached the age of 18, when a parent or legal guardian in the United States is available to provide care and physical custody for such an alien, or when such alien has obtained lawful immigration status, the alien is no longer a UAC.** An alien who is no longer a UAC is not eligible to receive legal protections limited to UACs under the relevant sections of the Act. **Nothing in this paragraph affects USCIS' independent determination of its initial jurisdiction over asylum applications filed by UACs pursuant to section 208(b)(3)(C) of the Act.**<br>(3) Age-out procedures. When an alien previously determined to have been a UAC is no longer a UAC because he or she turns eighteen years old, relevant ORR and ICE procedures shall apply." | *See* 83 Fed. Reg. 45,497:<br>"Under the proposed rule, **immigration officers will make a determination of whether an alien meets the definition of a UAC each time they encounter the alien.**"<br><br>§ 410.101; 83 Fed. Reg. 45,530:<br>"*Unaccompanied alien child* (UAC) means an individual who: Has no lawful immigration status in the United States; has not attained 18 years of age; and with respect to whom: There is no parent or legal guardian in the United States; or no parent or legal guardian in the United States is available to provide care and physical custody. **When an alien previously determined to have been a UAC has reached the age of 18, when a parent or legal guardian in the United States is available to provide care and physical custody for such an alien, or when such alien has obtained lawful immigration status, the alien is no longer a UAC. An alien who is no longer a UAC is not eligible to receive legal protections limited to UACs.**" |
| Family detention | [none] | § 236.3(h); 83 Fed. Reg. 45,526:<br>"DHS's policy is to maintain family unity, including by detaining families together | [none] |

24

| Issue[2] | *Flores* Settlement | Proposed DHS Rule | Proposed HHS Rule |
|---|---|---|---|
| | | where appropriate and consistent with law and available resources. If DHS determines that detention of a family unit is required by law, or is otherwise appropriate, the family unit may be transferred to a Family Residential Center which is a licensed facility and non-secure." | |
| Definition of "family residential center" | [none] | § 236.3(b); 83 Fed. Reg. 4,525: "(8) Family Residential Center means a facility used by ICE for the detention of Family Units." | [none] |
| Definition of "family unit" | [none] | § 236.3(b); 83 Fed. Reg. 45,525: "(7) Family unit means a group of two or more aliens consisting of a minor or minors accompanied by his/her/their adult parent(s) or legal guardian(s). In determining the existence of a parental relationship or a legal guardianship for purposes of this definition, DHS will consider all available reliable evidence. If DHS determines that there is insufficient reliable evidence available that confirms the relationship, the minor will be treated as a UAC." | [none] |
| Non-secure definition | [none] | § 236.3(b)(11); 83 Fed. Reg. 45,525: " *Non-Secure Facility* means a facility that meets the definition of nonsecure in the state in which the facility is located. If no such definition of nonsecure exists under state law, a DHS facility shall be deemed non- | [none] |

| Issue[2] | *Flores* Settlement | Proposed DHS Rule | Proposed HHS Rule |
|---|---|---|---|
| | | secure if egress from a portion of the facility's building is not prohibited through internal locks within the building or exterior locks and egress from the facility's premises is not prohibited through secure fencing around the perimeter of the building." | |

Plaintiffs' Exhibit 1- Declaration of Peter Shey

CARLOS R. HOLGUÍN (Cal. Bar No. 90754)
PETER A. SCHEY (Cal. Bar No. 58232)
Center for Human Rights & Constitutional Law
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Email: crholguin@centerforhumanrights.org
        pschey@centerforhumanrights.org

ORRICK, HERRINGTON & SUTCLIFFE LLP
Elena Garcia (Cal. Bar No. 299680)
egarcia@orrick.com
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone:  (213) 629-2020

*Listing continues on next page*

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*,<br><br>                Plaintiffs,<br><br>        v.<br><br>JEFFERSON B. SESSIONS, Attorney General, *et al.*,<br><br>                Defendants. | Case No. CV 85-4544-DMG (AGRx)<br><br>DECLARATION OF CLASS COUNSEL PETER SCHEY.<br><br>Hearing:  November 30, 2018<br>Time:      9:30 a.m.<br>Room:     1st St. Courthouse<br>              Courtroom 8C |

1    *Counsel for Plaintiffs, continued*

2

3    HOLLY S. COOPER (Cal. Bar No. 197626)
     Co-Director, Immigration Law Clinic

4    CARTER C. WHITE (Cal. Bar No. 164149)
     Director, Civil Rights Clinic

5    University of California Davis School of Law

6    One Shields Ave. TB 30
     Davis, CA 95616

7    Telephone: (530) 754-4833

8    Email: hscooper@ucdavis.edu
               ccwhite@ucdavis.edu

9

10   LA RAZA CENTRO LEGAL, INC.
     Michael S. Sorgen (Cal. Bar No. 43107)

11   474 Valencia Street, #295

12   San Francisco, CA 94103
     Telephone: (415) 575-3500

13

14   THE LAW FOUNDATION OF SILICON VALLEY
     Jennifer Kelleher Cloyd (Cal. Bar No. 197348)

15   Katherine H. Manning (Cal. Bar No. 229233)

16   Annette Kirkham (Cal. Bar No. 217958)
     152 North Third Street, 3rd floor

17   San Jose, CA 95112

18   Telephone:   (408) 280-2437
     Facsimile:    (408) 288-8850

19   Email: jenniferk@lawfoundation.org

20    kate.manning@lawfoundation.org
      annettek@lawfoundation.org

21

22   *Of counsel:*

23

24   YOUTH LAW CENTER
     Virginia Corrigan (Cal. Bar No. 292035)

25   832 Folsom Street, Suite 700
            San Francisco, CA 94104

26          Telephone: (415) 543-3379

27

28

                        ii              CLASS COUNSEL DECLARATION RE MEMORANDUM IN
                                        SUPPORT OF MOTION FOR **PERMANENT INJUNCTION,**
                                        **ETC.**
                                        CV 85-4544-DMG (AGRx)

## DECLARATION OF CLASS COUNSEL PETER SCHEY

I, Peter Schey, depose and say:

1. Carlos R. Holguin and I serve as class counsel in this case, *Flores v.Sessions,* Case No. CV 85-4544-DMG (AGRx)

2. Pursuant to the *Flores* Settlement, Paragraph 37, and Local Rule L.R. 7-3, I met and conferred with Defendants counsel telephonically and via email communications on several dates between October 14 and 19, 2018, regarding Defendants' proposed regulations intended to abrogate portions of the *Flores* settlement.

3. In light of the chaos caused by Defendants recent separation of class members from their parents, and subsequent at least temporary recalling of that policy, I conveyed to Defendants that Class Counsel believe issuance of final regulations materially similar to the proposed regulations would place Defendants in immediate and material breach of the Settlement and cause chaos as thousands of Defendants' employees were placed in a position of either complying with the Settlement or the new regulations, the terms of which are obviously inconsistent.

4. Plaintiffs proposed to Defendants that they promptly agree that (1) prior to issuing final regulations they provide the Court and Plaintiffs with their final regulations and agree to a briefing schedule leaving the Court sufficient time to resolve the parties' disputes, or (2) issue final regulations but make clear they will not

become effective until the Court terminates the agreement. I also advised Defendants of Plaintiffs intention to file the accompanying motion to enforce the settlement.

5. Despite this issue having been raised with Defendants commencing October 14, 2018, Defendants have not provided Class Counsel with any substantive response or assurances that final regulations may not shortly be issued or that they will not go into effect for at least 45 days or until the Court rules that the regulations are consistent with and implement the Settlement and therefore terminate it.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 2nd day of November, 2018, in Los Angeles, California.


Peter Schey

Plaintiffs' Exhibit 2- Stipulation

LODGED

CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Carlos Holguin
Peter A. Schey
Charles Song
256 South Occidental Boulevard
Los Angeles, CA  90057
Telephone: (213) 388-8693; Fax: (213) 386-9484

LATHAM & WATKINS
Steven Schulman
555 Eleventh St., NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2184

*Of counsel:*

YOUTH LAW CENTER
Alice Bussiere
417 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 543-3379 x 3903

*Attorneys for plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JENNY LISETTE FLORES, et al., | ) | Case No. CV 85-4544-RJK(Px) |
| | ) | |
| Plaintiffs, | ) | STIPULATION EXTENDING |
| | ) | SETTLEMENT AGREEMENT AND FOR |
| -vs- | ) | OTHER PURPOSES; AND ORDER |
| | ) | THEREON |
| JANET RENO, Attorney General | ) | |
| of the United States, et al. | ) | |
| | ) | |
| Defendants. | ) | |

/ / /

1

2        IT IS HEREBY STIPULATED by and between the parties as follows:

3        1. Paragraph 40 of the Stipulation filed herein on January 17, 1997, is modified to read

4   as follows:

5        "All terms of this Agreement shall terminate ~~the earlier of five years after the date of~~

6        ~~final court approval of this Agreement or three years after the court determines that~~

7        ~~the INS is in substantial compliance with this Agreement,~~ *45 days following defendants'*

8        *publication of final regulations implementing this Agreement*

9        ~~except that~~ *Notwithstanding the foregoing,* the INS shall continue to house the general

10       population of minors in INS custody in facilities that are state-licensed for the care of

11       dependent minors."

12   / / /

2  For a period of six months from the date this Stipulation is filed, plaintiffs shall not initiate legal proceedings to compel publication of final regulations implementing this Agreement  Plaintiffs agree to work with defendants cooperatively toward resolving disputes regarding compliance with the Settlement. The parties agree to confer regularly no less frequently than once monthly for the purpose of discussing the implementation of and compliance with the settlement agreement  However, nothing herein shall require plaintiffs to forebear legal action to compel compliance with this Agreement where plaintiff class members are suffering irreparable injury

Dated: December 7, 2001.

CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Carlos Holguín
Peter A. Schey

LATHAM & WATKINS
Steven Schulman

YOUTH LAW CENTER
Alice Bussière

Carlos Holguín, *for plaintiffs*.

Dated: December 7, 2001

Arthur Strathern
Office of the General Counsel
U.S. Immigration & Naturalization Service

Arthur Strathern, *for defendants*
Per tax authorization

IT IS SO ORDERED

Dated: December _____ 2001

UNITED STATES DISTRICT JUDGE

1       2. For a period of six months from the date this Stipulation is filed, plaintiffs shall not

2  initiate legal proceedings to compel publication of final regulations implementing this

3  Agreement. Plaintiffs agree to work with defendants cooperatively toward resolving

4  disputes regarding compliance with the Settlement. The parties agree to confer regularly no

5  less frequently than once monthly for the purpose of discussing the implementation of and

6  compliance with the settlement agreement. However, nothing herein shall require plaintiffs

7  to forebear legal action to compel compliance with this Agreement where plaintiff class

8  members are suffering irreparable injury.

9  Dated: December 7, 2001.            CENTER FOR HUMAN RIGHTS &

10                            CONSTITUTIONAL LAW
                              Carlos Holguin

11                            Peter A. Schey

12                            LATHAM & WATKINS
                            Steven Schulman

13

14                            YOUTH LAW CENTER
                            Alice Bussiere

15

16

17                           _____
                            Carlos Holguin, *for plaintiffs*

18  Dated: December 7, 2001.           Arthur Strathern

19                            Office of the General Counsel

20                            U.S. Immigration & Naturalization Service

21

22

23                            Arthur Strathern, *for defendants*
                            Per fax authorization

24

25  IT IS SO ORDERED

26  Dated: December 7, 2001.

27                            UNITED STATES DISTRICT JUDGE

28

PROOF OF SERVICE BY MAIL

I, Carlos Holguin, declare and say as follows:

1   I am over the age of eighteen years and am not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 256 South Occidental Boulevard, Los Angeles, California 90057, in said county and state

2   On December 7, 2001, I served the attached STIPULATION on defendants in this proceeding by placing a true copy thereof in a sealed envelope addressed to their attorneys of record as follows:

Arthur Strathern
Office of the General Counsel
U.S. Immigration & Naturalization Service
425 I St. N.W.
Washington, DC 20536

and by then sealing said envelope and depositing the same, with postage thereon fully prepaid, in the mail at Los Angeles, California; that there is regular delivery of mail between the place of mailing and the place so addressed.

I declare under penalty of perjury that the foregoing is true and correct

Executed this 7th day of December, 2001, at Los Angeles, California

Plaintiffs' Exhibit 3- Press Release From Dept. Of Homeland Security (Sept. 6, 2018).

**From:** DHS.IGA [mailto:dhs.iga@hq.dhs.gov]   **Sent:** Thursday, September 6, 2018 9:53 AM   **To:** DHS.IGA   **Subject:** DHS and HHS Announce New Rule to Implement the Flores Settlement Agreement

## DHS and HHS Announce New Rule to Implement the Flores Settlement Agreement

*DHS and HHS Publish New Proposed Rules to Fulfill Obligations under Flores Settlement Agreement*

WASHINGTON – Today, Secretary of Homeland Security Kirstjen M. Nielsen and Secretary of Health and Human Services Alex Azar announced a new proposed rule that would adopt in regulations relevant and substantive terms of the Flores Settlement Agreement (FSA).

 Vastly more families are now coming illegally to the southern border, hoping that they will be released into the interior rather than detained and removed.   Promulgating this regulation and terminating the FSA is an important step towards regaining control over the border.

 **The Department of Homeland Security (DHS) and the Department of Health and Human Services (HHS) are proposing a rule that would:**

·      Codify relevant and substantive terms of the FSA and enable the termination of the FSA and litigation concerning its enforcement.

·      Formalize the way HHS accepts and cares for alien children

·      Satisfy the basic purpose of the FSA in ensuring that all alien minors and unaccompanied alien children in the Government's custody are treated with dignity, respect, and special concern for their particular vulnerability as minors.

·      Allow U.S. Immigration and Customs Enforcement (ICE) to hold families with children in licensed facilities or facilities that meet ICE's family residential standards, as evaluated by a third-party entity engaged by ICE.

·      Create a pathway to ensure the humane detention of families while satisfying the goals of the FSA.

·      Implement related provisions of the Trafficking Victims Protection

Reauthorization Act (TVPRA) that DHS and HHS are already following including the transfer of unaccompanied alien children to HHS within 72 hours, absent exceptional circumstances.

 "Today, legal loopholes significantly hinder the Department's ability to appropriately detain and promptly remove family units that have no legal basis to remain in the country," **said Secretary Nielsen**. "This rule addresses one of the primary pull factors for illegal immigration and allows the federal government to enforce immigration laws as passed by Congress."

"Under this proposed rule, HHS would implement the Flores Settlement Agreement and our duties under the law to protect the safety and dignity of unaccompanied alien children in our custody," **said Secretary Azar.**

In 1985, a class-action suit challenged the policies of the former Immigration and Naturalization Service (INS) relating to the detention, processing, and release of alien children; the case eventually reached the U.S. Supreme Court.   The Court upheld the constitutionality of the challenged INS regulations on their face and remanded the case for further proceedings consistent with its opinion.    In January 1997, the parties reached a comprehensive settlement agreement, referred to as the FSA. The FSA was to terminate five years after the date of final court approval; however, the termination provisions were modified in 2001, such that the FSA does not terminate until forty-five days after publication of regulations implementing the agreement. Since 1997, intervening statutory changes, including passage of the Homeland Security Act (HSA) and the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA), have significantly changed the applicability of certain provisions of the FSA.

Recent litigation regarding the FSA began in February 2015 after the Obama administration's response to the surge of aliens crossing the U.S.-Mexico border in 2014, including the use of family detention. The district court and the U.S. Court

of Appeals for the Ninth Circuit have interpreted the FSA in a manner that imposes operational challenges and burdens on DHS components implementing the FSA's terms.

Additionally, in 2016 the Ninth Circuit held for the first time that the FSA applied to all minors, both accompanied and unaccompanied.

The Trump Administration is completing an overdue action that no prior administration has successfully completed, which is to terminate the FSA through the adoption of implementing regulations rather than continuing to burden the courts with immigration policy.

The 60-day public comment period on the proposed rule begins on the date of publication in the Federal Register.