UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 85-4544-DMG (AGRx) | Date | November 5, 2018 |
| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 1 of 6 |

Present: The Honorable  DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS - ORDER RE DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION OF ORDER APPOINTING SPECIAL MASTER/INDEPENDENT MONITOR [498]**

On October 5, 2018, the Court issued an Order appointing Andrea Sheridan Ordin as the Special Master/Independent Monitor ("Appointment Order"), which authorized her to (*inter alia*) "[m]onitor compliance with the Court's June 27, 2017 and July 30, 2018 Orders, and other Court orders issued" during her term. [Doc. # 494 at 6.][1] On October 12, 2018, Defendants filed an *Ex Parte* Application for Partial Reconsideration of the Appointment Order, wherein Defendants request that the Court exempt the July 30, 2018 Order from the scope of the Appointment Order, along with any other Orders the Court issues during the Monitor's Term. [Doc. # 498 at 7–9, 20–21.] On October 15, 2018, the Court construed Defendants' *Ex Parte* Application as a motion for partial reconsideration, set a briefing schedule on the motion, and *sua sponte* stayed those aspects of the Appointment Order that relate to the enforcement of the Court's July 30, 2018 Order. [Doc. # 500.] Defendants' motion has since been fully briefed. [Doc. ## 501, 506.] The Court deems this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons discussed in this Order, the Court **DENIES** Defendants' motion.

"[A]s long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *See City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 889 (9th Cir. 2001) (quoting *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981)); *see also* Fed. R. Civ. P. 54(b) ("[A]ny order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."). As movants, Defendants bear the burden of demonstrating that the Court should modify the scope of the Monitor's responsibilities. *See* Fed. R. Civ. P. 7(b)(1)(B)

---

[1] All page references herein are to page numbers inserted by the CM/ECF system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 85-4544-DMG (AGRx)** | Date | November 5, 2018 |
| Title | ***Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.*** | Page | 2 of 6 |

("A request for a court order must be made by motion. The motion must: . . . be in writing unless made during a hearing or trial[.]"). Defendants have failed to discharge that burden.

First, Defendants contend that they lacked notice and an opportunity to be heard regarding whether the Monitor would oversee their compliance with Orders other than the June 27, 2017 Order, which focused on Customs and Border Protection's ("CBP's") and Immigration and Customs Enforcement's ("ICE's") breaches of the *Flores* Agreement, *see* June 27, 2017 Order at 18–34 [Doc. # 363]; *see also* Fed. R. Civ. P. 53(b)(1) ("Before appointing a master, the court must give the parties notice and an opportunity to be heard."). This objection is now moot because the Court has afforded Defendants an opportunity to be heard before the aforementioned provisions of the Appointment Order go into effect.

Second, Defendants argue that the Court may not "sanction" the Office of Refugee Resettlement ("ORR") by subjecting it to independent monitoring unless the Court finds by clear and convincing evidence that the agency breached the *Flores* Agreement, especially given that the Agreement specifies "the manner in which the decree was to monitored[.]" *See* Mot. for Recons. at 18–20. Defendants entirely misapprehend the purpose of the Monitor's appointment and the scope of the Court's authority for doing so. Federal Rule of Civil Procedure 53 and the All Writs Act (*i.e.*, 28 U.S.C. § 1651(a)) authorize the appointment of a special master to *monitor* compliance with a court's orders, and not to *coerce* that compliance or *punish* a defendant for non-compliance. *Compare Nat'l Org. for the Reform of Marijuana Laws v. Mullen*, 828 F.2d 536, 542–44 (9th Cir. 1987) (holding that Rule 53 and Section 1651(a) confer such authority to appoint special masters), *with Kelly v. Wengler*, 822 F.3d 1085, 1097 (9th Cir. 2016) (holding that a contempt sanction may "coerce[] compliance with a court order" or punish violations thereof), *and Labor/Community Strategy Ctr. v. L.A. Cty. Metro. Transp. Auth.*, 564 F.3d 1115, 1123 (9th Cir. 2009) (holding that civil contempt sanctions may be imposed only if a breach is shown by clear and convincing evidence). A district court may appoint a monitor if "some exceptional condition" exists and/or if there are any "posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." *See* Fed. R. Civ. P. 53(a)(1)(B). Such conditions exist in this case because it is particularly complex, Defendants have previously failed to comply with this Court's Orders, and there are ongoing disputes regarding the implementation of those orders. *See* Appointment Order at 4–6; *Hook v. State of Ariz.*, 120 F.3d 921, 925–26 (9th Cir. 1997) (affirming a district court's order appointing a special master to monitor compliance with a consent decree); *United States v. Suquamish Indian Tribe*, 901 F.2d 772, 774–75 (9th Cir. 1990) (special masters may be appointed to aid a district court in enforcing its decree and because of complexity and problems with compliance). Furthermore, the Court rejects Defendants' outlandish argument that the parties impliedly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 85-4544-DMG (AGRx) | Date | November 5, 2018 |
| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 3 of 6 |

bargained away its authority to appoint a monitor to oversee compliance with the instant consent decree.[2] *See* Mot. for Recons. at 19–20; Reply at 3–5.

Third, Defendants claim that "[t]he Court's sole stated basis for the appointment of a monitor with regard to ORR was its reference to a declaration filed in a separate matter," and that the Monitor's oversight relating to the July 30, 2018 Order should be limited to "the specific assertions of non-compliance contained in the declaration . . . ." *See id.* at 20–21. Defendants neglect the fact that the July 30, 2018 Order found that ORR was responsible for numerous violations of yet another Court Order—*i.e.*, the *Flores* Agreement itself. *See* July 30, 2018 Order at 30–32 [Doc. # 470]; *Flores v. Sessions*, 862 F.3d 863, 875 (9th Cir. 2017) (noting that the *Flores* Agreement is a court order).[3] Additionally, the immense complexity of this case hinders the Court's ability to determine whether ORR has remedied its violations of the Agreement. *See, e.g.*, *Flores* Agreement at ¶¶ 12.A, 14, 17, 19, Ex. 1 at ¶ A (governing multiple aspects of a Class Member's confinement, including the conditions thereof, the policy favoring release, suitability determinations for custodians, and minimum standards for licensed programs in which Class Members must be placed) [Doc. # 101]. Therefore, even apart from Dr. Amy Cohen's declaration, there was ample justification for empowering the Monitor to oversee ORR's compliance with the *entirety* of the July 30, 2018 Order. Dr. Amy Cohen's declaration merely reinforced that conclusion. Therein, she attested that following the July 30, 2018 Order, ORR had not transferred any children out of Shiloh RTC and continued to represent that it may unilaterally administer psychotropic medication to Class Members on a non-emergent basis. *See* Cohen Decl. at ¶¶ 8–11, *Lucas R., et al. v. Alex Azar, et al.*, No. CV 18-5741-DMG (PLAx) (C.D. Cal.) [Doc. # 64-1]. On the other hand, Defendants also assert that it has on file the consent of a parent for each child at issue for the administration of psychotropic medications at

---

[2] To support this argument, Defendants cite cases that stand for the wholly unremarkable proposition that ordinary contract principles govern the interpretation of consent decrees. *See* Reply at 4 (citing *City of Las Vegas v. Clark Cty.*, 755 F.2d 697, 702 (9th Cir. 1985); *United States v. Asarco, Inc.*, 430 F.3d 972, 980 (9th Cir. 2005)). Defendants fail to cite *any* authority establishing that the parties can impliedly abrogate the Court's statutory power to appoint a monitor by simply *omitting* discussion of that remedy from a consent decree. *See id.* at 3–5.

[3] After the Court issued the July 30, 2018 Order, ORR apparently "sought further guidance from the State Attorney General's Office" regarding whether Texas law on the administration of psychotropic medications protects Class Members detained at Shiloh RTC. *See* Fields Decl., Ex. 1 at 2 (Sept. 13, 2018 Letter from ORR to Shiloh) [Doc. # 506-2]. Yet, the agency has already "concede[d] that 'Shiloh RTC's operations *are governed by* the Texas Department of Family and Protective Services (TDFPS) Licensing Division's Minimum Standards for General Residential Operations, which include polic[ies], procedures, and practices concerning the use of psychotropic medication.'" *See* July 30, 2018 Order at 20 (emphasis in original) (quoting Sualog Revised Decl. at ¶ 14 [Doc. # 466-1]) [Doc. # 470]. Thus, even if the state attorney general ultimately opines that Shiloh RTC's operations are not governed by the TDFPS's minimum standards, ORR may not disobey the July 30, 2018 Order unless it has been modified or overturned on appeal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 85-4544-DMG (AGRx)** | Date | November 5, 2018 |
| Title | ***Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.*** | Page | 4 of 6 |

Shiloh RTC. Fields Decl. at ¶¶ 8–10, Ex. 3 [Doc. ## 506, 514].[4] Regardless of the veracity of these assertions, they further demonstrate the existence of ongoing disputes regarding the implementation of the *Flores* Agreement and the need for a monitor to provide the Court with independent verification of the facts. If Defendants are in full compliance with prior Orders as they say they are, then they should have nothing to fear from oversight by an independent monitor.

Moreover, Plaintiffs offer additional evidence showing that Defendants have violated the July 30, 2018 Order. Plaintiffs' counsel attests that data received from ORR on September 7, 2018 shows that the agency continued to detain three children at Shiloh even though it had determined that none of them posed a risk of harm. *See* Pl.'s Ex. 3 at ¶ 7 (Holguín Decl.) [Doc. # 501-1.][5] Several Class Members detained in Shiloh RTC attest that after the issuance of the July 30, 2018 Order, they have not received any sort of psychiatric evaluation regarding whether they are a risk to themselves or others. *See* Pl.'s Ex. 18 at ¶ 10 (Declaration of C.) ("Since July 30, 2018, I do not remember receiving a psychiatric evaluation to determine whether I am dangerous.") [Doc. # 511]; Pl.'s Ex. 19 at ¶ 8 (Declaration of E.) (same) [Doc. # 511]; Pl.'s Ex. 20 at ¶ 8 (Declaration of F.) (same) [Doc. # 511]; Pl.'s Ex. 21 at ¶ 11 (Declaration of M1) (same) [Doc. # 511]; Pl.'s Ex. 22 at ¶ 10 (Declaration of M2) (same) [Doc. # 511]; Pl.'s Ex. 23 at ¶ 8 (Declaration of N.) (same) [Doc. # 511]. Class Members confined in Shiloh RTC also report that staff continue to monitor telephone calls that the children have with family members. *See* Pl.'s Ex. 18 at ¶ 6 (Declaration of C.) ("[My mother and I] usually speak on the phone twice a week and we are very close. These phone calls are not in private; my case manager is always in the room.") [Doc. # 511]; Pl.'s Ex. 19 at ¶ 8 (Declaration of F.) (case manager is always in the room when E. makes telephone calls to her mother) [Doc. # 511]; Pl.'s Ex. 20 at ¶ 4 (Declaration of F.) (case manager is always in the room when F. speaks with his

---

[4] Class Members attest that as far as they know, their close relatives have not authorized Shiloh RTC to administer psychotropic medication to them. *See* Pl.'s Ex. 18 at ¶ 9 (Declaration of C.) [Doc. # 511]; Pl.'s Ex. 20 at ¶ 7 (Declaration of F.) [Doc. # 511]; Pl.'s Ex. 21 at ¶ 10 (Declaration of M1) [Doc. # 511]; Pl.'s Ex. 22 at ¶¶ 8–9 (Declaration of M2) [Doc. # 511]; Pl.'s Ex. 23 at ¶ 6 (Declaration of N.) [Doc. # 511]. When Plaintiffs requested a copy of the consent forms, Defendants' counsel refused to provide them. *See* Pl.'s Ex. 25 at 15–16 (email correspondence) [Doc. # 501-2]. The Court's Appointment Order authorizes the Monitor to obtain such information in order to determine whether ORR has complied with the July 30, 2018 Order. *See* Appointment Order at 11–14.

[5] In a declaration dated October 26, 2018, an ORR official attests that he reviewed Shiloh RTC's files for 27 Class Members who were detained at the facility, and that 14 of them were ultimately released or transferred to less restrictive settings. *See* Fields Decl. at ¶¶ 4–6 [Doc. # 506-1]. Conspicuously absent from this declaration are (*inter alia*) the precise dates on which the official conducted this review (*i.e.*, whether it occurred only after the Court issued the Appointment Order) and the locations of these supposed less restrictive settings. *See id.* The Monitor would be able to obtain answers to these questions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 85-4544-DMG (AGRx) | Date | November 5, 2018 |
| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 5 of 6 |

uncle on the telephone) [Doc. # 511]; Pl.'s Ex. 21 at ¶ 6 (Declaration of M1) ("[P]hone calls [with my uncle] are not in private; my case manager is always in the room.") [Doc. # 511]; Pl.'s Ex. 22 at ¶ 7 (Declaration of M2) ("Nobody here has private calls.") [Doc. # 511]; Pl.'s Ex. 23 at ¶ 5 (Declaration of N.) (N.'s telephone calls with her mother "are not in private") [Doc. # 511]; Pl.'s Ex. 24 at ¶ 8 (Declaration of Y.) ("I am allowed to talk to my Dad and my aunt in Virginia on the phone, but the calls are not private. A case manager is always in the room.") [Doc. # 511]. Plaintiffs also proffer evidence that after the July 30, 2018 Order, at least one Class Member was placed in a secure facility without receiving a Notice of Placement in a language that he understood. *See* Pl.'s Ex. 29 (Notice of Placement for B. in a Restrictive Setting, dated Aug. 12, 2018, which is completely in English) [Doc. # 511]; Pl.'s Ex. 28 (Declaration of B.) ("I do not read, write, or speak English, and the [Notice of Placement] was never presented or read to me in a language that I understand.") [Doc. # 511]. Again, irrespective of whether these allegations are true, they reinforce the conclusion that ongoing disputes concerning ORR's compliance with the *Flores* Agreement warrant independent oversight of the agency's activities. For that reason, the Court declines Defendants' invitation to construe Plaintiff's Opposition as a motion to enforce the *Flores* Agreement.[6] *See* Reply at 7.

Lastly, Defendants urge the Court to allow ORR's recently appointed juvenile coordinator to monitor the agency's compliance with the Agreement instead of entrusting the Monitor with that responsibility. *See* Mot. for Recons. at 21–22. Defendants do not cite any authority requiring the Court to reverse course. *See id.*; Reply at 7; *see also Hook*, 120 F.3d at 926 (observing that a district court has the discretion to appoint a special master to monitor compliance with its orders). Moreover, Defendants have apparently forgotten that at the time the Court ordered them to nominate juvenile coordinators to monitor CBP's and ICE's operations, the Court had not yet appointed the Monitor. *See* June 27, 2017 Order at 32–33 (finding it appropriate—"at least at th[at] juncture"—to appoint a juvenile coordinator in lieu of an independent monitor) [Doc. # 363]. It was only over a year later, and after numerous continued disputes between the parties about the actual conditions arose, that the Court decided to appoint an independent monitor to assist it in overseeing enforcement of the consent decree. Any logistical barriers to the appointment of an independent monitor of ORR's operations have since been mitigated, given that the Court and the parties have already undertaken the time-consuming process of identifying a highly qualified candidate to be Monitor and ascertaining the proper

---

[6] Plaintiffs' Opposition alleges many other violations of the *Flores* Agreement that were not addressed by the July 30, 2018 Order (*e.g.*, ORR's decision to house minors in a tent city near the Tornillo Port of Entry). *See* Opp'n at 11–22. The Appointment Order was designed to handle such contingencies by allowing the Monitor to request leave from the Court to (*inter alia*) obtain briefing from the parties, attempt to mediate such disputes, and issue a Report and Recommendation thereon. *See* Appointment Order at 7–8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544-DMG (AGRx) | Date | November 5, 2018 |
|---|---|---|---|
| Title | *Jenny L. Flores, et al. v. Jefferson B. Sessions, III, et al.* | Page | 6 of 6 |

scope of her duties and responsibilities. The Court and the Monitor will continue to rely upon the Juvenile Coordinators to enforce aspects of the Court's orders, as necessary.

For the foregoing reasons, the Court **DENIES** Defendants' Motion for Partial Reconsideration and **LIFTS** the stay of the Appointment Order. The Court **VACATES** the November 9, 2018 hearing.[7]

**IT IS SO ORDERED**.

---

[7] The Court **CORRECTS** an error in the Appointment Order to delete the phrase "during the applicable Reporting Period as defined *infra* in note 7)" from the provision regarding the Monitor's duty to provide notice of *ex parte* applications. [Doc. # 494 at 10, ll. 8-9.]