JOSEPH H. HUNT
Assistant Attorney General
Civil Division
AUGUST E. FLENTJE
Special Counsel to the Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director, District Court Section
Office of Immigration Litigation
SARAH B. FABIAN
Senior Litigation Counsel, District Court Section
Office of Immigration Litigation
    P.O. Box 868, Ben Franklin Station
    Washington, D.C. 20044
    Tel: (202) 532-4824
    Fax: (202) 305-7000
    Email: sarah.b.fabian@usdoj.gov

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JENNY LISETTE FLORES; *et al.*, | Case No. CV 85-4544 |
| Plaintiffs, | **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT** |
| v. | |
| MATTHEW G. WHITAKER, Acting Attorney General of the United States; *et al.*,[1] | Hearing Date: November 30, 2018 Time: 10:00am Dept: 350 West 1st Street, Los Angeles, CA, 90012, Courtroom 8C, 8th Floor |
| Defendants. | |

---

[1] *See* Fed. R. Civ. P. 25(d).

# INTRODUCTION

The Court should deny Plaintiffs' Motion to Enforce Settlement, ECF No. 516, as premature because the Flores Settlement Agreement ("FSA") remains fully in effect, and will remain in effect until at least 45 days following the promulgation of a final rule. Should the final rule contain provisions that are objectionable to Plaintiffs, that 45 day period will permit the orderly litigation of claims at that time.

The Departments of Homeland Security and Health and Human Services ("the agencies") are currently engaged in a notice and comment rulemaking in accordance with the requirements of the Administrative Procedure Act ("APA") to implement the *Flores* Settlement Agreement. This process is ongoing, the agencies should be permitted to continue the process unimpeded, and there is no basis to enjoin that statutory process prior to its completion. It has been less than 72 hours since the comment period closed for the agencies' notice of proposed rulemaking ("NPRM"), Apprehension, Processing, Care, and Custody of Alien Minors and Unaccompanied Alien Children, 83 Fed. Reg. 45,486 (Sep. 7, 2018), in which the agencies have received more than 95,000 comments. In order to comply with the rulemaking requirements of the APA, 5 U.S.C. § 553, the agencies must consider and respond to the significant comments they have received before publishing a final rule. Based on the number of public comments received, the government expects it will take an appreciable period of time for those comments to be considered and for a final rule to be published in the Federal Register.

Once such a rule is published, it can be reviewed by Plaintiffs, and the premature claims they are now making can be considered, to the extent they remain applicable to the final rule. Further, under the plain language of the *Flores* Settlement Agreement, the Agreement could not terminate until at least *forty-five days after*

*publication of the Final Rule*. Until that time, the Flores Agreement will remain effective and in place and fully operational, and will continue to bind Defendants. Thus, there is no anticipatory breach now, and there will be an opportunity for orderly consideration of the issues presented by the final rule once that rule is actually promulgated.  In fact it would be inappropriate for Defendants to address the provisions of the proposed rule in this forum, as the APA provides that before any final rule is issued, there must be consideration of the significant comments that have been submitted in that process. And because there will be an opportunity for orderly consideration of a final rule once it is promulgated, Plaintiffs suffer from no immediate harm, making their motion premature. Accordingly, the Court should deny Plaintiffs' motion and permit the agencies to continue the notice and comment rulemaking process under the APA unimpeded.

## ARGUMENT

### A.   The Court should permit the agencies' APA notice and comment rulemaking to continue unimpeded.

The Court should deny Plaintiffs' motion and permit the agencies' APA notice and comment rulemaking to continue to its conclusion. The agencies are currently reviewing more than 95,000 public comments received in response to the NPRM (the public docket currently includes 72,585 public comments, but additional comments are being uploaded). That review process is essential to considering the merits of the issues relating to the proposed rule – including the issues raised in Plaintiffs' premature "motion to enforce." While Plaintiffs assert they are enforcing the settlement agreement, this cannot be correct – the settlement agreement, and not a non-final proposed rule, governs the parties conduct, and irrespective of the content of the rule *proposal*, there is no agency action here as the rules are merely proposed at this time and subject to the consideration of the many comments that have been

2

submitted. Plaintiff cannot obtain review of an agency rule before it is even finalized. And at the same time, Defendants cannot properly defend proposed agency action on the merits–such a defense would, in itself, improperly prejudge the agency review process laid out in the APA. Importantly, Plaintiffs will suffer no harm because the *Flores* Settlement Agreement remains fully in effect and binds Defendants while the agencies continue the rulemaking process. Moreover, even after a Final Rule is eventually promulgated, the *Flores* Settlement Agreement cannot terminate until at least forty-five days after the publication of a Final Rule. *See Flores* Settlement Agreement ¶ 40.

Under the APA, there is a three-step process for agency notice and comment rulemaking. *See Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1203 (2015); 5 U.S.C. §553(a)-(c). First, an agency must issue a general notice of proposed rulemaking in the Federal Register. *Perez*, 135 S. Ct. at 1203. Second, the agency must give interested parties an opportunity to participate in the rulemaking process through the submission of comments. *Id.* As part of this step, the agency must consider and respond to significant comments received during the period for public comment. *See id.*, 135 S. Ct. at 1203 (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, (1971); *Thompson v. Clark*, 741 F.2d 401, 408 (D.C. Cir. 1984)). This consideration must be "made with a mind that is open to persuasion." *See Advocates for Hwy. & Auto Safety v. Fed. Hwy. Admin.,* 28 F.3d 1288, 1292 (D.C. Cir. 1994). Third, when the agency promulgates the final rule, it must include in the rule's text a concise general statement of the basis and purpose of the rule. *See Perez*, 135 S. Ct. at 1203; 5 U.S.C. § 553(c). This is the process Congress authorized for the promulgation of agency rules. And as Plaintiffs acknowledge, and this Court has recognized, the *Flores* Settlement Agreement

specifically recognizes that Defendants will utilize this process to promulgate a rule implementing the *Flores* Agreement. *See* FSA ¶¶ 9 & 40; *see also* Order at 24, Dkt. 177 (July 24, 2015) (imploring Defendants to "implement[] appropriate regulations to deal with this complicated area of immigration law").

Here, the agencies have completed step one of the APA rulemaking process, and commenced step two less than *72 hours* ago. On November 6, 2018, the public comment period for the NPRM closed.[2] *See* 83 Fed. Reg. 45,486 (indicating that "[w]ritten comments and related material must be submitted on or before November 6, 2018."). In response to the NPRM, the agencies received over 95,000 comments. As of November 9, over 72,000 comments had been uploaded to the public docket and that uploading process is ongoing. *See* https://www.regulations.gov/docket?D=ICEB-2018-0002 (last visited Nov. 9, 2018). In accordance with the APA, the agencies are currently in the process of reviewing all comments received, and determining which comments are significant and require consideration and a response. *See Perez*, 135 S. Ct. at 1203; 5 U.S.C. § 553(b). Based on the number of comments received, the agencies will not be able to commence step three of the rulemaking process – promulgation of the Final Rule – for a substantial period of time.[3]

---

[2] The Government notes that Plaintiffs filed their motion on November 2, 2018, four days before the NPRM's comment period closed. *See* ECF No. 516.

[3] Because the proposed Rule is a significant regulatory action, *see* 83 Fed. Reg. at 45,510, under Executive Orders 12866 and 13563, the agencies must involve the Office of Information and Regulatory Affairs ("OIRA") at the Office of Management and Budget ("OMB"). Under section 6(b)(2) of Executive Order 12866, OIRA will be provided up to 90 days to review any draft Final Rule and may extend its review for an additional time period. As part of this process, the agencies must evaluate costs and benefits, explain why the regulation is needed, explain how the action will meet the need, and respond to any questions posed by OIRA.

Plaintiffs, through their motion, and under the guise of purportedly suffering from immediate harm, are effectively asking the Court to interfere with APA rulemaking procedures created by Congress and impede the agencies' ongoing rulemaking process. The Court, however, should decline Plaintiffs' request as there is no immediate harm – the FSA remains in place and in effect, and would only terminate at the earliest forty-five days after the publication of a Final Rule. This Court will have the opportunity to address any concerns Plaintiffs have with a final rule after its publication. Accordingly, the Court should deny Plaintiffs' motion and permit the agencies to continue the notice and comment rulemaking process under the APA unimpeded.

### B. Plaintiffs' motion is not ripe for review.

In determining whether an administrative matter is ripe for judicial review, courts examine both the "fitness of the issues for judicial decision" and the "hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967).  The Supreme Court has explained that the ripeness doctrine is designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Id*. at 148–149.

For example, in analyzing a challenge to a land resource management plan, the Supreme Court considered: (1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented. *Ohio Forestry Ass'n, Inc. v. Sierra*

5

*Club*, 523 U.S. 726, 732–33 (1998) (reversing and finding challenge to plan was premature); *see, e.g., In re Murray Energy Corp.*, 788 F.3d 330, 334 (D.C. Cir. 2015) (holding that "we do not have authority to review proposed rules"); *Nevada v. Dep't of Energy*, 457 F.3d 78, 86 (D.C. Cir. 2006) (finding that challenge to interim plan was premature because the "plan is nothing more than a *possible* course of action the . . . [agency] *may* take given a *possible* turn of events") (emphasis original); *Am. Portland Cement All. v. E.P.A.*, 101 F.3d 772, 777 (D.C. Cir. 1996) (explaining that when "a proposed regulation is still in flux, review is premature . . .) (citations and quotations omitted).

Here, the agencies are engaged in proposed rulemaking under the APA. *See* Dkt. 516 at 3, n.3   Plaintiffs' request is not "fit" for judicial review because any adjudication regarding the proposed rule is premature and amounts to nothing more than an "abstract disagreement over administrative policies." *See Abbott Laboratories,* 387 U.S. at 148–149.  Because the rule has not yet been finalized, the policies discussed in the proposed rule reflect only a possible course of action that the agencies may take.  Judicial intervention at this point would necessarily interfere with the ability of the agencies to develop a rule that could be reviewed at a later date. *See Ohio Forestry*, 523 U.S. at 732–33. And the *Flores* Settlement Agreement cannot plausibly be violated by a rule that is merely proposed – litigation would need to await the final rule and the accompanying rationale provided by the agency in addressing comments to that rule and changes, if any, from the *Flores* Settlement Agreement provisions and from the provisions of the proposed rule.

As Plaintiffs recognize, the comment period just closed on November 6, 2018. *See* Dkt. 516 at 3, n. 3 *citing* Fed. Reg. 45,486. Thus, the proposed rule is just that – a possible course of action that the agencies may take. *See Nevada*, 457 F.3d at 86.

6

As a result, it is not fit for review at this time. *See Abbott Laboratories,* 387 U.S. at 148–149.

Additionally, Plaintiffs will not suffer any hardship if they are denied immediate judicial review. As they note, the parties previously stipulated that the Agreement would remain binding for at least 45 days following the issuance of regulations implementing it. *See* Dkt. 516 at 9. Thus, there will be opportunity for the orderly judicial review of any claims that Plaintiffs might have once, and if, a final rule is promulgated. *See Ohio Forestry*, 523 U.S. at 732–33. There is no reason for this Court to "short-circuit" the rulemaking process by entangling itself in an ongoing administrative matter.[4]

---

[4] Further, because no final agency action has yet issued, 5 U.S.C. § 704, there has been no waiver of sovereign immunity over the issue of the validity of the proposed rules, such that the Court could intervene in the orderly process required under the APA. "A party may bring a cause of action against the United States only to the extent [the United States] has waived its sovereign immunity." *Cunningham v. United States*, 786 F.2d 1445, 1446 (9th Cir.1986) (citations omitted). "[A] waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192, (1996) (citations omitted). While Plaintiffs have styled their motion as seeking relief for an "anticipatory breach," the relief they request (either a declaration or injunction on the proposed rule) would effectively enjoin a rule not yet final. It would usurp the Executive Branch of its rulemaking power, and eviscerate the deference provided to agencies to assess the "wisdom of . . . policy choices" and "resolv[e] . . . the struggle between competing views of the public interest," *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 866 (1984), and even change agency position where supported under the statute. *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000). Because the Executive Branch was charged by Congress with executing the enactments of Congress through the issuance of final rules, intervention prior to any action would contravene the separation of powers. The Constitution vests each branch of government with a different type of power. See Art. I, § 1; Art. II, § 1, cl. 1; Art. III, § 1. By vesting each branch with an exclusive form of power, the Framers kept those powers

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' motion and permit the agencies to continue the notice and comment rulemaking process under the APA unimpeded.

DATED:	November 9, 2018	Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division
AUGUST E. FLENTJE
Special Counsel to the Assistant Attorney General, Civil Division
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director, District Court Section
Office of Immigration Litigation

*/s/ Sarah B. Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-4824
Fax: (202) 305-7000
Email: sarah.b.fabian@usdoj.gov

*Attorneys for Defendants*

---

separate. *See INS v. Chadha,* 462 U.S. 919, 946 (1983). Each branch "exercise[s] ... the powers appropriate to its own department," and no branch can "encroach upon the powers confided to the others." *Kilbourn v. Thompson,* 103 U.S. 168, 191 (1881). Here, the power to execute the law by the issuance of rules under the APA was assigned to the Executive Branch.

8

# CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2018, I served the foregoing pleading on all counsel of record by means of the District Clerk's CM/ECF electronic filing system.

/s/ *Sarah B. Fabian*
SARAH B. FABIAN
U.S. Department of Justice
District Court Section
Office of Immigration Litigation

Attorney for Defendants