CARLOS R. HOLGUÍN (Cal. Bar No. 90754)
PETER A. SCHEY (Cal. Bar No. 58232)
Center for Human Rights & Constitutional Law
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Email: crholguin@centerforhumanrights.org
        pschey@centerforhumanrights.org

*Listing continues on next page*

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| Jenny Lisette Flores, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>William P. Barr, Attorney General, *et al.*,<br><br>　　　　　Defendants. | Case No. CV85-4544-DMG-AGR<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS<br><br>Hearing:　May 17, 2019<br>Time:　　9:30 a.m.<br>Room:　　1st St. Courthouse<br>　　　　　Courtroom 8C |

*Counsel for Plaintiffs, continued*

HOLLY S. COOPER (Cal. Bar No. 197626)
Co-Director, Immigration Law Clinic
CARTER C. WHITE (Cal. Bar No. 164149)
Director, Civil Rights Clinic
University of California Davis School of Law
One Shields Ave. TB 30
Davis, CA 95616
Telephone: (530) 752-5440
Email: hscooper@ucdavis.edu
        ccwhite@ucdavis.edu

LEECIA WELCH (Cal. Bar No. 208741)
NEHA DESAI (Cal. RLSA Bar No. 803161)
POONAM JUNEJA (Cal. Bar No. 300848)
FREYA PITTS (Cal. Bar No. 295878)
National Center for Youth Law
405 14th Street, 15th Floor
Oakland, CA 94612
Telephone: (510) 835-8098
Email: lwelch@youthlaw.org
        ndesai@youthlaw.org
        pjuneja@youthlaw.org
        fpitts@youthlaw.org

CRYSTAL ADAMS (Cal. Bar No. 308638)
National Center for Youth Law
1313 L St. NW, Suite 130
Washington, DC 20005
Telephone: (202) 868-4785
Email: cadams@youthlaw.org

TABLE OF CONTENTS

I.      INTRODUCTION. ..................................................................................... 1

II.     PLAINTIFFS SATISFY ALL REQUIREMENTS FOR AN AWARD
        OF EAJA FEES AND COSTS............................................................... 1

        A.     Plaintiffs are prevailing parties.............................................. 3

        B.     Plaintiffs' net worth is far less than $2,000,000. ................ 4

        C.     EAJA fees and costs may be awarded for work to enforce and
               monitor a consent decree and court order. ........................... 5

        D.     Defendants' position lacked substantial justification. .......... 6

III.    LODESTAR CALCULATION. ............................................................. 8

IV.     SPECIAL FACTORS WARRANT A FEE AWARD AT MARKET
        RATES FOR PLAINTIFFS' SENIOR COUNSEL. ...................... 10

        A.     Plaintiffs' counsel possess distinctive knowledge and
               specialized skill that was needful to the litigation. ........... 12

        B.     Other qualified counsel unavailable at statutory rate. ....... 15

        C.     Market rates for Plaintiffs' senior counsel........................ 17

V.      PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE
        COSTS. ................................................................................................ 18

VI.     CONCLUSION...................................................................................... 19

# Table of Authorities

**Cases**

*Animal Lovers Vol. Assn. v. Carlucci*, 867 F.2d 1224 (9th Cir. 1989) .....................9

*Ardestani v. I.N.S.*, 502 U.S. 129 (1991) ..................................................................2

*Balla v. Idaho*, 677 F.3d 910 (9th Cir. 2012)..........................................................3

*Buchannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598 (2001)..........................................................................3

*Bullfrog Films, Inc. v. Wick*, 959 F.2d 782 (9th Cir. 1992).....................................6

*Cobell v. Norton*, 407 F. Supp. 2d 140, (D. D.C. 2005)...........................................4

*Fang v. Gonzales*, No. 03-71352, 2006 WL 5669901 (9th Cir. Oct. 30, 2006) (Unpub. Disp.) ...............................................................................................11

*Flores v. Johnson*, 212 F. Supp. 3d 864 (C.D. Cal. 2015) .....................................12

*Flores v. Meese*, 681 F. Supp. 665 (C.D. Cal. 1988) .............................................12

*Flores v. Meese*, 934 F.2d 991 (9th Cir. 1990) ......................................................12

*Flores v. Meese*, 942 F.2d 1352 (9th Cir. 1992) (en banc)....................................12

*Flores v. Sessions*, 862 F.3d 863 (9th Cir. 2017)...................................................12

*Gutierrez v. Barnhart*, 274 F.3d 1255 (9th Cir. 2001) ...........................................7

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .............................................................9

*Ibrahim v. U.S. Dep't of Homeland Sec.,* 912 F.3d 1147 (9th Cir. 2019) (en banc) ..........................................................................................................2

*In re Mgndichian*, 312 F. Supp. 2d 1250 (C.D. Cal. 2003).....................................8

*Jeff D. v. Andrus,* 899 F.2d 753 (9th Cir. 1989).......................................................5

*Kali v. Bowen*, 854 F.2d 329 (9th Cir. 1988)........................................................6, 7

*Keith v. Volpe*, 833 F.2d 850 (9th Cir. 1987).......................................................3, 5

*League of United Latin Am. Citizens v. Wilson*, 908 F. Supp. 755 (C.D. Cal. 1995) ...........................................................................................12

*League of Women Voters v. FCC*, 798 F.2d 1255 (9th Cir. 1986) ...........................6

*Love v. Reilly*, 924 F.2d 1492 (9th Cir. 1991)...........................................................6

*Muhur v. Ashcroft*, 382 F.3d 653 (7th Cir. 2004) ...................................................11

*Nadarajah v. Holder*, 569 F.3d 906 (9th Cir. 2009) .........................................10, 17

*Orantes-Hernandez v. Holder*, 713 F. Supp. 2d 929 (C.D. Cal. 2010) .............11, 17

*Oregon Environmental Council v. Kunzman*, 817 F.2d 484, 498 (9th Cir. 1987)...........................................................................................................6

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986).......................................................................................5

*Perez-Arellano v. Smith*, 279 F.3d 791 (9th Cir. 2002) ............................................3

*Perez-Olano v. Gonzalez*, 248 F.R.D. 248 (C.D. Cal. 2008)..................................12

*Pierce v. Underwood*, 487 U.S. 552 (1988).......................................................6, 10

*Prison Legal News v. Schwarzenegger*, 608 F.3d 446 (9th Cir. 2010)....................3

*Rawlings v. Heckler*, 725 F.2d 1192 (9th Cir. 1984) ...............................................7

*Reno v. Flores*, 507 U.S. 292 (1993) ....................................................................12

*Scarborough v. Principi*, 541 U.S. 401 (2004)....................................................2, 8

*Sorenson v. Mink*, 239 F.3d 1140 (9th Cir. 2001).................................................9

*Thangaraja v. Gonzales*, 428 F.3d 870 (9th Cir. 2005) ........................................10

*United States v. 22249 Dolorosa St.*, 190 F.3d 977 (9th Cir. 1999).......................6

**Statutes and Regulations**

28 U.S.C. § 1920.....................................................................................................18

28 U.S.C. § 2412(d) .................................................................................................1

28 U.S.C. § 2412(d)(1)(B) ....................................................................................2, 8

28 U.S.C. § 2412(d)(2)(A) ...................................................................................18

28 U.S.C. § 2412(d)(2)(B)(i).................................................................................. 4

Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135 ........................12

Pub. L. No. 96-481, §§ 201-08, 94 Stat. 2321 (1980)............................................ 2

William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008,
    110 Pub. L. 457, 122 Stat. 5044 .......................................................................12

**Other Authorities**

H.R. Rep. No. 96-1418, 1980 U.S.C.C.A.N. at 4984.............................................18

I.    INTRODUCTION.

Plaintiffs move the Court to award them attorney's fees and costs incurred to prosecute Plaintiffs' motion (Dkt. #409) for class-wide enforcement of the settlement approved herein on January 28, 1997 ("Settlement").

On July 30, 2018, the Court granted Plaintiffs' motion in nearly all substantial respects and entered an order (Dkt. #470) restraining Defendant Office of Refugee Resettlement of the U.S. Department of Health and Human Services ("ORR"), from, *inter alia*, administering psychotropic drugs to class members without informed parental consent ("July 30 Order").

As will be seen, (1) Plaintiffs are prevailing parties; (2) Defendants' position in this matter was not substantially justified; and (3) no special circumstances make an award of fees unjust. The Court should accordingly award Plaintiffs attorney's fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), for fees and costs incurred in securing and monitoring Defendants' compliance with the July 30 Order, in the amount of $1,212,638.

II.   PLAINTIFFS SATISFY ALL REQUIREMENTS FOR AN AWARD OF EAJA FEES AND COSTS.

Pursuant to 28 U.S.C. § 2412(d),[1] "eligibility for a fee award in any civil action requires: (1) that the claimant be 'a prevailing party'; (2) that the

---

[1] In pertinent part, the EAJA provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), . . . brought by or against the United States in any court having jurisdiction

Government's position was not 'substantially justified'; (3) that no 'special circumstances make an award unjust'; and, (4) pursuant to 28 U.S.C. § 2412(d)(1)(B), that any fee application be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement." *Ibrahim v. U.S. Dep't of Homeland Sec.,* 912 F.3d 1147, 1167 (9th Cir. 2019) (en banc) (quoting *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 158 (1990)).

"The clearly stated objective of the EAJA is to eliminate financial disincentives for those who would defend against unjustified governmental action and thereby to deter the unreasonable exercise of Government authority." *Id.* (quoting *Ardestani v. I.N.S.*, 502 U.S. 129, 138 (1991)). Congress specifically intended the EAJA to deter unreasonable agency conduct. Pub. L. No. 96-481, §§ 201-08, 94 Stat. 2321, 2325-30 (1980).

Thereafter, the burden shifts to the Government to prove that its position, both before and during the litigation, was substantially justified or that special circumstances make an award of attorney's fees and costs unjust. *Scarborough v. Principi*, 541 U.S. 401, 416-17 (2004).[2]

---

of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

[2] The EAJA also requires that a successful litigant file the fee application within thirty days of "final judgment." 28 U.S.C. § 2412(d)(1)(B). A "final judgment" is not subject to further review either in the court of appeals or the Supreme Court. 28 U.S.C. § 2412(d)(2)(G).

On March 22, 2019, the Ninth Circuit granted Defendants' request to dismiss their appeal from the July 30 Order, and on April 1, 2019, it granted Plaintiffs' request to dismiss their cross-appeal. The instant fee motion is therefore timely.

MEMORANDUM IN SUPPORT OF MOTION FOR AWARD
OF ATTORNEY'S FEES
No. CV 85-4544-DMG-AGR

### A.     Plaintiffs are prevailing parties.

Under the EAJA, a party prevails when it has been granted "some relief by a court." *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001).[3] To prove prevailing party status, an EAJA petitioner must establish: (1) a "material alteration of the legal relationship of the parties," and (2) a "judicial imprimatur on the change." *Id.* at 604-05.

A party prevails—and thereafter remains a prevailing party—when it has obtained an enforceable settlement or consent decree. *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 451-52 (9th Cir. 2010); *Keith v. Volpe*, 833 F.2d 850, 857 (9th Cir. 1987); *see also Balla v. Idaho*, 677 F.3d 910, 918 (9th Cir. 2012) (prevailing party entitled to recover fees for "compliance monitoring" of settlement). Plaintiffs accordingly prevailed in this action in concluding the Settlement entered herein in 1997.

In any event, this Court's July 30 Order enjoined multiple breaches of the Settlement and requires the Government, *inter alia*, to (i) provide written notice to class members of reasons for placing them in a secure or staff-secure facility or residential treatment center ("RTC"); (ii) comply with all child welfare laws governing the administration of psychotropic drugs at Shiloh RTC; (iii) cease a blanket policy of requiring that post-release services be in place prior to release of a class member to a sponsor for whom home study services were conducted; (iv)  provide children drinking water and private phone calls; (v) remove class

---

[3] Although *Buckhannon* involved non-EAJA fee-shifting statutes, this Court has held that the requirements for a prevailing party announced in that decision are applicable to EAJA awards as well. *Perez-Arellano v. Smith*, 279 F.3d 791, 793 (9th Cir. 2002).

members from secure detention centers placed there solely because the class member "may be" chargeable for an unspecified offense; and (vi) stop delaying children's release pending the personal approval of ORR's director or his designee.

Because Plaintiffs succeeded in obtaining this relief and the Court has ordered Defendants to adjust their policies and practices, Plaintiffs clearly prevailed on their motion and accordingly satisfy the first requirement for an EAJA fees and costs award.

**B.**    **Plaintiffs' net worth is far less than $2,000,000.**

Pursuant to 28 U.S.C. § 2412(d)(2)(B)(i), a party's "net worth [must] not exceed $2,000,000 at the time the civil action was filed . . . ."

The original named plaintiffs in this action were indigent at the time this action commenced. Declaration of Carlos Holguín, April 18, 2019, Exhibit 1 ("Holguín") ¶ 5. It is virtually self-evident that plaintiff class members are generally indigent as well. By definition, they are immigrant or refugee youth in federal custody because the Government wishes to remove them. Settlement ¶¶ 10-11; Holguín ¶ 5 (affirming that *Flores* plaintiff class members are on the whole indigent).

Plaintiffs accordingly meet the second requirement for an EAJA fee award. *See Cobell v. Norton*, 407 F. Supp. 2d 140, 148 (D.D.C. 2005) ("[A]ffidavits signed by the class representatives, attesting to the fact that their net worth fell within EAJA statutory guidelines at the time the litigation was initiated . . . amply satisfy the requirements of the statute for the entire class.").

**C.     EAJA fees and costs may be awarded for work to enforce and
monitor a consent decree and court order.**

"[P]ost-judgment monitoring of a consent decree is a compensable activity
for which counsel is entitled to a reasonable fee." *Pennsylvania v. Delaware Valley
Citizens' Council for Clean Air*, 478 U.S. 546, 559 (1986).

In *Delaware Valley*, the plaintiff obtained a consent decree and thereafter
conducted additional litigation and administrative advocacy to protect that decree.
The Court held the plaintiff entitled to recover attorney's fees and costs for this
post-settlement work. *Id*. at 559-60.

Numerous courts have affirmed litigants' right to recover attorney's fees and
costs for work to enforce court-approved settlements. *E.g.*, *Keith v. Volpe*, 833 F.2d
850, 857 (9th Cir. 1987) ("the district court here 'was entitled to believe that relief
[for the plaintiffs under the consent decree] would occur more speedily and
reliably' if the [plaintiffs] engaged in these monitoring activities, and this post-
judgment monitoring by the [plaintiffs] was, therefore, 'a necessary aspect of
plaintiffs' "prevailing"' in the case'"); *Jeff D. v. Andrus,* 899 F.2d 753, 765 (9th
Cir. 1989) (plaintiffs entitled to attorney's fees for work subsequent to the
settlement despite waiving pre-settlement fees; "issues in these appeals are separate
from the settlement of the underlying litigation and the waiver of attorney's fees in
the settlement does not affect our disposition here").[4]

---

[4] In both *Keith* and *Jeff D.*, the court reviewed fees awarded under 42 U.S.C.
§ 1988. *Jeff D.*, 899 F.2d at 765; *Keith*, 833 F.2d at 860. Identical principles apply
to an award of post-judgment attorney's fees under the EAJA. *Bullfrog Films, Inc.
v. Wick*, 959 F.2d 782, 785-86 (9th Cir. 1992) (discussing the principles in *Keith*

MEMORANDUM IN SUPPORT OF MOTION FOR AWARD
OF ATTORNEY'S FEES
No. CV 85-4544-DMG-AGR

This Court has previously awarded Plaintiffs EAJA fees and costs for work to enforce the Settlement in favor of accompanied, as well as unaccompanied, minors. Order re Plaintiffs' Attorney's Fees and Costs (Nov. 14, 2017) (Dkt. #383) ("Family Detention Fees Order"). Plaintiffs' work surrounding the July 30 Order is therefore recoverable as well.

### D. Defendants' position lacked substantial justification.

Because Plaintiffs prevailed and meet the EAJA's net worth standard, "an award of fees is mandatory under the EAJA unless the Government's position is substantially justified or special circumstances exist that make an award of fees unjust." *Love v. Reilly*, 924 F.2d 1492, 1495 (9th Cir. 1991). Defendants must carry the burden of proof with respect to both factors. *Id.*; *see also Ibrahim*, 912 F.3d at 1167; *United States v. 22249 Dolorosa St.*, 190 F.3d 977, 982 (9th Cir. 1999); *Oregon Environmental Council v. Kunzman*, 817 F.2d 484, 498 (9th Cir. 1987).[5]

"The test for whether the government is substantially justified is one of 'reasonableness.'" *Gonzales v. Free Speech Coal.*, 408 F.3d 613, 618 (9th Cir. 2005). "Put another way, substantially justified means there is a dispute over which 'reasonable minds could differ.'" *Id.* (*quoting League of Women Voters v. FCC*, 798 F.2d 1255, 1260 (9th Cir. 1986)); *see also Pierce v. Underwood*, 487 U.S. 552,

_____

and *Jeff D.* in its review of the district court's denial of an award of attorney's fees under the EAJA).

[5] "To show substantial justification for [its] position, the [Government] has the burden of establishing that the conduct had a 'reasonable basis both in law *and* fact.'" *Kali v. Bowen*, 854 F.2d 329, 332 (9th Cir. 1988) (*quoting Pierce v. Underwood*, 487 U.S. 552, 565 (1988)) (emphasis added).

566 n.2 (1988) (position can be substantially justified "even though it is not correct . . . if it has a reasonable basis in law and fact").

In analyzing the reasonableness of the Government's position, a court considers the totality of the circumstances, which incorporates both the underlying governmental action and the Government's trial court position. *Gutierrez v. Barnhart*, 274 F.3d 1255, 1259 (9th Cir. 2001) ("Thus we 'must focus on two questions: first, whether the government was substantially justified in taking its original action; and, second, whether the government was substantially justified in defending the validity of the action in court.'"); *Kali v. Bowen*, 854 F.2d 329, 332 (9th Cir. 1988) (inquiry includes whether both the original action and the defense of the action was substantially justified); *see also Rawlings v. Heckler*, 725 F.2d 1192, 1196 (9th Cir. 1984). Moreover, "the EAJA—like other fee-shifting statutes— favors treating a case as an inclusive whole, rather than as atomized line-items." *Ibrahim,* 912 F.3d at 1169 (quoting *Jean*, 496 U.S. at 161-62).

For the time being, Plaintiffs' having alleged that Defendants' position was without substantial justification and that no special circumstances make a fee award unjust suffice to shift the burden to Defendants to show their position substantially justified or that special circumstances would make a fee award unjust.[6]

---

[6] In all events, ORR's —

    (a) drugging children without their parents' consent;

    (b) failing to provide class members with written notice of the reasons for placing them in secure facilities;

    (c) denying youth private telephone calls;

*Scarborough*, 541 U.S. at 416-17; *In re Mgndichian*, 312 F. Supp. 2d 1250, 1255 (C.D. Cal. 2003) (prevailing party need only "alleg[e] that the government's position was not substantially justified and that no special circumstances exist that make an award unjust."); 28 U.S.C. § 2412(d)(1)(B) ("A party seeking an award of fees and other expenses . . . shall also allege that the position of the United States was not substantially justified.").

Defendants will not likely succeed in making either showing.

III.   LODESTAR CALCULATION.

A "lodestar" figure for the amount of fees Plaintiffs should recover is calculated by multiplying the number of hours counsel reasonably dedicated by the

_____

(d) indiscriminately demanding that a vast array of "post-release services" be in place before children will be reunited with their families;

(e) requiring the ORR Director to approve the release of any class member placed in an unlicensed facility;

(f) placing children in secure detention centers without probable cause as to a specified offense; and

(g) failing to provide children with water and private phone calls;

were self-evidently without justification, substantial or otherwise. *See, e.g.*, July 30 Order at 28 ("Given that Class Members who were previously (but are no longer) in secure or staff-secure facilities are no more dangerous than others who have been placed in less restrictive settings, there is *no* apparent justification for subjecting such Class Members to an extra layer of review that would inevitably prolong their detention . . . ." (emphasis added)).

inflation-adjusted EAJA hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).[7]

The inflation-adjusted EAJA base rates during the years counsel worked to secure and monitor Defendants' compliance with the July 30 Order appear at www.ca9.uscourts.gov/content/view.php?pk_id=0000000039 (last visited April 4, 2019).[8]

The hours counsel devoted to prosecuting this action, adjusted for time that was poorly documented or excessive, appear in the itemized time records annexed to the declarations of Plaintiffs' counsel. Holguín ¶ 10, Exhibit B; Declaration of Leecia Welch, Apr. 19, 2019, Exhibit 2 ("Welch") ¶ 22, Exhibit C; Declaration of Holly C. Cooper, Apr. 15, 2019, Exhibit 3 ("Cooper") ¶ 19, Exhibit A; and Declaration of Carter C. White, Apr. 17, 2019, Exhibit 8 ("White") ¶¶ 12-14,

---

[7] An increase over the base rate to account for inflation is granted in all but unusual circumstances. *Animal Lovers Volunteer Ass'n v. Carlucci*, 867 F.2d 1224, 1227 (9th Cir. 1989).

[8] Prior to 1996 the EAJA set a base rate of $75 per hour. 28 U.S.C. § 2412(d)(2)(A) (1994). In 1996 Congress increased the base rate to $125 per hour for cases commenced on or after March 29, 1996. *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001).

The Ninth Circuit's rates appear to adjust the 1996 base rate for inflation. Since this action commenced in 1985, it would appear the applicable base rate is $75 per hour. Inflation adjustments to the $75 rate appear in Exhibit D to the Declaration of Carlos Holguín. The lodestar differs little whether one uses the Ninth Circuit's hourly rates or the inflation-adjusted rate applicable to actions commenced before March 1996.

Exhibits A, B.[9] These hours multiplied by the Ninth Circuit's inflation-adjusted base rates yield a lodestar fee request of $413,859. Holguín Exhibit D.[10]

As will be seen, however, the Court should award Plaintiffs fees for senior counsel's work at market, or "enhanced," hourly rates.

IV.   SPECIAL FACTORS WARRANT A FEE AWARD AT MARKET RATES FOR PLAINTIFFS' SENIOR COUNSEL.

The EAJA authorizes the Court to award attorney's fees at market rates where there is a "limited availability of qualified attorneys for the proceedings involved," and where plaintiffs' counsel possess "distinctive knowledge" and "specialized skill" that was "needful for the litigation in question" and "not available elsewhere at the statutory rate." *Thangaraja v. Gonzales*, 428 F.3d 870, 876 (9th Cir. 2005); *see also Pierce v. Underwood*, *supra*, 487 U.S. at 572 ("Examples . . . would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language.").

---

[9] Time spent preparing the instant EAJA motion is itself compensable. *See Jean*, 496 U.S. at 164.

[10] Plaintiffs request fees for paralegals' work at $100 per hour and law students' work at $175 per hour. *See Lara v. Berryhill*, No. 2:16-CV-0034 DB, 2017 WL 4679989, at *3 (E.D. Cal. Oct. 18, 2017) ("[a] prevailing party that satisfies EAJA's other requirements may recover its paralegal fees from the Government at prevailing market rates"; fees awarded at $100 for paralegal hours). As appears in the Declaration of Michael N. Mills, Apr. 19, 2019, Exhibit 9 ¶ 5, the market rate for law students is $185 per hour. *See also* Declaration of Kimberly A. Lucia, April 16, 2019, Exhibit 12 ¶ 5 (billing rates for law students in 2017 and 2018 $225 and $240, respectively). The lodestar appearing in the text excludes both paralegal and student fees.

MEMORANDUM IN SUPPORT OF MOTION FOR AWARD
OF ATTORNEY'S FEES
NO. CV 85-4544-DMG-AGR

In *Nadarajah v. Holder*, 569 F.3d 906, 912 (9th Cir. 2009), the Ninth Circuit held this test satisfied where counsel had "distinctive knowledge and specialized skill in immigration law and, in particular, constitutional immigration law and litigation involving the rights of detained immigrants." *See also Fang v. Gonzales*, No. 03-71352, 2006 WL 5669901, at *3 (9th Cir. Oct. 30, 2006) ("Counsel Smith's specialized skills and distinctive 'knowledge of . . . particular, esoteric nooks and crannies of immigration law,' . . . enabled her . . . to succeed in obtaining relief from removal for Fang," *quoting Muhur v. Ashcroft*, 382 F.3d 653, 656 (7th Cir. 2004)). In *Nadarajah*, the Ninth Circuit accordingly awarded the prevailing party's most experienced attorney fees at $500 per hour. 569 F.3d at 916-18.

In *Orantes-Hernandez v. Holder*, 713 F. Supp. 2d 929 (C.D. Cal. 2010), the Government moved to dissolve an injunction requiring immigration authorities to follow specific procedures when detaining, processing and removing Salvadoran nationals. The court largely denied the motion, and the plaintiffs sought EAJA fees at market rates because defending against the Government's motion required specialized knowledge of, *inter alia*, the history of the litigation that had resulted in the injunction. *Id*. at 959-61.

The district court awarded fees at $625-675 for senior counsel. *Id*. at 964. In addition to requiring special knowledge of immigration law and procedure, the court held, the prevailing parties' counsel had *specialized knowledge of the proceedings that had led to the entry of the challenged injunction*, *id*. at 960, and had specialized skills—including proficiency in Spanish—that were necessary to defend the injunction. *Id*. at 960-63.

**A.      Plaintiffs' counsel possess distinctive knowledge and specialized skill that was needful to the litigation.**

As in *Orantes* and *Nadarajah,* Plaintiffs' counsel here have extensive experience, knowledge and specialized skill in immigration law, youth law, and more particularly, the rights of detained immigrant and asylum-seeking juveniles as they exist at the intersection of the Settlement, the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 ("HSA"), the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, 110 Pub. L. No. 110-457, 122 Stat. 5044 ("TVPRA"), and the United States Constitution.

First, Plaintiffs' senior counsel are highly skilled litigators with vast expertise in representing immigrants, refugees and youth.

This Court has previously held that class counsel, Carlos Holguín, possesses "intimate knowledge of the [Settlement]"; that "[i]n addition to litigating the matter that led to the Agreement, . . . Holguin [has] been involved with monitoring the government's compliance with the Agreement since its inception"; and that he is "therefore uniquely positioned to efficiently litigate the enforcement action in question." Family Detention Fees Order at 6-7.[11]

_____

[11] Class counsel Holguín is among the leading lawyers litigating class actions on behalf of immigrant and refugee children. *See Perez-Olano v. Gonzalez*, 248 F.R.D. 248 (C.D. Cal. 2008), and *League of United Latin Am. Citizens v. Wilson*, 908 F. Supp. 755 (C.D. Cal. 1995).

In the instant matter, he has argued for the Plaintiff class numerous times before this Court, the Supreme Court, and the Ninth Circuit, and numerous reported decisions have resulted therefrom. *Flores v. Meese*, 681 F. Supp. 665 (C.D. Cal. 1988); *Flores v. Meese*, 934 F.2d 991 (9th Cir. 1990); *Flores v. Meese*, 942 F.2d 1352 (9th Cir. 1992) (en banc); *Reno v. Flores*, 507 U.S. 292 (1993); *Flores v.*

Co-counsel Holly Cooper is similarly accomplished in representing detained immigrant and refugee children, has received multiple national awards for her expertise defending detained immigrant children, and trains lawyers nationally on complex federal litigation. Declaration of Stacy Tolchin, April 10, 2019, Exhibit 10 ¶¶ 9-11; Declaration of Jayashri Srikantiah, April 26, 2019, Exhibit 11 ¶¶ 9-11.

Co-counsel Leecia Welch is a national expert in the area of child welfare, and has spent the majority of her career representing children and youth in cases focused on enforcing their statutory and constitutional rights. Declaration of John F. O'Toole, April 16, 2019, Exhibit 16 ("O'Toole") ¶¶ 9, 13; Declaration of Richard M. Pearl, April 18, 2019, Exhibit 17 ("Pearl") ¶ 13. Ms. Welch's specialized expertise at the intersection of child welfare and complex federal class action litigation, and in particular her expertise regarding the administration of psychotropic medications to children in government custody, coupled with the

---

*Johnson*, 212 F. Supp. 3d 864 (C.D. Cal. 2015); *Flores v. Sessions*, 862 F.3d 863 (9th Cir. 2017).

He "is among a very few advocates for immigrant children's rights in the country with the knowledge and experience needed to give the *Flores* class a fair chance of prevailing against ORR." Declaration of Justin Mixon, October 19, 2017, Exhibit 5 ("Mixon") ¶ 6; *accord* Declaration of Mark Bowers, October 23, 2017, Exhibit 6 ("Bowers") ¶ 3 (same). He is able to communicate with detained class members in Spanish, the language the vast majority speaks, has deep knowledge of the Settlement and the litigation and negotiations that preceded the Settlement, and has for years monitored Defendants' treatment of and policies and practices toward detained immigrant and refugee children. Holguín ¶¶ 5-6, 9.

Mr. Holguín's work was featured in the American Bar Association Journal. Lorelai Laird, *Meet the Father of the Landmark Lawsuit that Secured Basic Rights for Immigrant Minors*, ABA JOURNAL (Feb. 1, 2016), *available at* www.abajournal.com/magazine/article/meet_the_father_of_the_landmark_lawsuit_that_secured_basic_rights_for_immig (last visited April 19, 2019).

National Center for Youth Law's institutional knowledge of this litigation, uniquely positioned her to litigate Plaintiffs' enforcement motion. O'Toole ¶¶ 14-5; Pearl ¶ 13; Welch ¶¶ 4, 25.

Second, pursuant to ¶¶ 32 and 33 of the Settlement, Plaintiffs' counsel are unique in having broad access to children and youth in ORR detention facilities.[12] Plaintiffs' lawyers relied heavily on this unique access to class members in investigating and documenting Plaintiffs' instant claims against ORR. Holguín ¶ 7.[13]

Third, vindicating the rights of children in ORR custody required far more than skill in enforcing contracts: it required specialized expertise at the intersection of multiple sources of law as they affect a discrete and vulnerable subclass: immigrant and refugee youth in ORR custody:

> The *Flores* settlement is now some 20 years old, yet it contains many protections for detained immigrant and refugee children found nowhere else. In other aspects, the *Flores* settlement contains provisions that precede and are now parallel to or analogous with other sources of law, particularly the

---

[12] Pursuant to Settlement ¶ 32A class counsel "are entitled to attorney-client visits with class members even though they may not have the names of class members who are housed at a particular location."

Settlement ¶ 33 further provides, "Plaintiffs' counsel may request access to any licensed program's facility in which a minor has been placed pursuant to Paragraph 19 or to any medium security facility or detention facility . . . ."

[13] Defendants themselves insisted that specific class counsel, and not lawyers generally, should have such access to detained children. Holguín ¶ 7. Defendants therefore ensure that detained children would find it difficult, if not impossible, to secure comparably positioned counsel elsewhere.

MEMORANDUM IN SUPPORT OF MOTION FOR AWARD OF ATTORNEY'S FEES
No. CV 85-4544-DMG-AGR

2002 Homeland Security Act and the 2008 William Wilberforce Trafficking

Victims Protection Reauthorization Act. Understanding how these disparate

sources of law potentially intersect to delimit ORR's authority to detain

immigrant and refugee children without hearing is not commonplace

amongst lawyers generally, nor even among members of the immigration bar.

Mixon ¶ 7; O'Toole ¶ 15 ("In my opinion, the successful litigation of Plaintiffs'

motion to enforce the *Flores* settlement agreement required specialized expertise at

the intersection of child welfare and complex federal class action litigation, and

particular expertise regarding the administration of psychotropic medications to

children in government custody.").

**B.     Other qualified counsel unavailable at statutory rate.**

Clearly, few, if any, other lawyers in the country could have or would have

prosecuted a class-wide action on behalf of indigent, non-English-speaking

children, whom ORR generally detains in remote locations.

"In most places in the country, the only free or low cost legal services

children and youth in ORR custody have are those funded by the Vera Institute,"

Bowers ¶ 4, via "a master grant from the Office of Refugee Resettlement . . . ."

Mixon ¶ 4. Vera-funded legal services consist "primarily of conducting 'know your

rights' presentations and assisting [detained juveniles] with applications for

affirmative immigration benefits, such as Special Immigrant Juvenile status and

asylum." *Id*. Lawyers formerly funded by the Vera Institute report being warned

against challenging ORR's custody or placement decisions:

Although the TVPRA directs HHS to ensure that such children receive

representation in "legal matters" to the greatest extent practicable, during my

employment with HIAS Pennsylvania *I was instructed that I could not assist detained children challenge ORR's release or placement decisions, no matter how arbitrary or otherwise unlawful ORR's decisions appeared*. I know of no Vera-funded legal services provider who has ever represented a minor in federal court against ORR.

Mixon ¶ 9 (emphasis added). Defendants themselves accordingly ensure that few lawyers are available to represent plaintiff children against ORR in federal court.

The availability of private practitioners to represent plaintiff children at the EAJA base rate is scarcely better:

[F]ew members of the immigration bar regularly engage in federal court litigation; those who do, typically pursue cases on behalf of individual clients; and only a very small number are willing and able to prosecute class actions, or indeed, any federal litigation in which a favorable outcome is not reasonably assured with a minimal investment of time and money.

Mixon ¶ 11; *accord* Declaration of Kristen Jackson, October 16, 2018, Exhibit 7 ¶ 4 ("[I]n my experience few legal aid lawyers or members of the private bar are willing to dedicate the time and resources to undertake federal litigation on behalf of detained immigrant and refugee minors. When private practitioners do pursue federal litigation, they typically charge much more than the inflation-adjusted EAJA statutory rate."); Bowers ¶ 5 (same); O'Toole ¶ 16 ("I believe that it would have been impossible to find appropriately qualified attorneys to undertake this representation at the inflation-adjusted EAJA rate."); Pearl ¶ 14 ("[Ms. Welch's] specialized skills are certainly not available elsewhere at the statutory rate (plus

MEMORANDUM IN SUPPORT OF MOTION FOR AWARD
OF ATTORNEY'S FEES
No. CV 85-4544-DMG-AGR

COLA); and were patently useful in this case and the instant motion to enforce . . . .").

These factors warrant the Court's awarding attorney's fees at rates "'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Nadarajah*, 569 F.3d at 916 (internal citation omitted; alteration in original).

### C.   Market rates for Plaintiffs' senior counsel.

As appears in the Declaration of Carol Sobel, Oct. 31, 2017, Exhibit 4 ("Sobel") ¶¶ 27, 35, Mr. Holguín's hourly market rate in 2017 was $850.[14] Ms. Sobel is a Los Angeles attorney whose expertise in market rates courts have repeatedly recognized. *See, e.g.*, *Nadarajah*, 569 F.3d at 912-13; *Orantes-Hernandez*, 713 F. Supp. 2d at 959. Plaintiffs request the Court award fees for Mr. Holguín's work in 2017, 2018 and 2019 at his 2017 market rate.[15]

Market rates for Leecia Welch ($630 per hour in 2017, $665 per hour in 2018, and $690 per hour in 2019) and Holly Cooper ($650 per hour) are supported in the declaration of Richard Pearl, a California attorney specializing in issues

---

[14] Ms. Sobel prepared Exhibit 4 in support of a previous fee request in this matter and did not review Mr. Holguín's work for which Plaintiffs are now seeking fees.

[15] In 2017 Plaintiffs requested, and the Court awarded, fees for Mr. Holguín at $725 hourly, or $125 below market for work performed in 2017. Family Detention Fees Order at 8; Motion for Fees and Costs Under the Equal Access to Justice Act (Dkt. #351-1) at 21 (requesting hourly rate of $725 for Mr. Holguín).

Mr. Holguín performed much of the work for which Plaintiffs now seek fees in 2018 and 2019, years in which lawyers' hourly rates were generally higher than 2017 levels. Plaintiffs' instant fee request for Mr. Holguín's work is also below his market rate.

MEMORANDUM IN SUPPORT OF MOTION FOR AWARD
OF ATTORNEY'S FEES
NO. CV 85-4544-DMG-AGR

related to court-awarded attorney's fees. Pearl ¶¶ 11-16. Courts have frequently

relied on Mr. Pearl's opinions and writings on court-award attorney's fees. Pearl

¶¶ 4, 7-10.

Fees for Plaintiffs' senior counsel calculated at enhanced rates come to

$842,623. Plaintiffs' total fees request, with senior counsel's time billed at

enhanced rates, additional counsel's at inflation-adjusted base rates, and paralegal

and student fees at market rates, is $1,120,826. Holguín at Exhibit D.

V.     PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE COSTS.

Congress crafted the EAJA to "reduce the deterrents and disparity by

entitling certain prevailing parties to recover an award of attorney fees, expert

witness fees, and other expenses against the United States." H.R. Rep. No. 96-1418

at 6, 1980 U.S.C.C.A.N. at 4984. The EAJA therefore provides for the award of

costs as enumerated in 28 U.S.C. § 1920, and for "fees and other expenses." 28

U.S.C. § 2412(a), (d)(1)(A). The EAJA also allows recovery of "the reasonable cost

of any study, analysis, engineering report, test, or project which is found by the

court to be necessary for the preparation of the party's case." 28 U.S.C.

§ 2412(d)(2)(A).

Plaintiffs request the Court award them costs totaling $91,812.[16] Evidentiary

support for these costs appears in the following: Welch ¶ 21 and Exhibit B;

_____

[16] This total includes the amounts reflected in the annexed invoices of James Owens
and Dr. Amy Cohen, experts who prepared reports evaluating ORR's treatment of
class members against prevailing child welfare and mental health care practices.

The Court relied on Mr. Owens' declaration in its July 30 Order, *see* July 30 Order
at 29-30; and on Dr. Cohen's in appointing a special master/independent monitor
charged with overseeing ORR's compliance with the July 30 Order. Order

18

Declaration of Queluntam Banjai, April 18, 2019, Exhibit 15; White ¶ 15 and

Exhibit C; Invoice of Dr. Amy Cohen, M.D., Exhibit 13; Invoice of James Owens,

Exhibit 14.

VI.    CONCLUSION.

    For the foregoing reasons, this Court should award Plaintiffs attorney's fees

and costs pursuant to 28 U.S.C. § 2412(d) as herein requested.

Dated: April 19, 2019.                CARLOS R. HOLGUÍN
                                      PETER A. SCHEY
                                      Center for Human Rights &
                                      Constitutional Law

                                      HOLLY COOPER
                                      CARTER WHITE
                                      University of California Davis School
                                      of Law

                                      LEECIA WELCH
                                      NEHA DESAI
                                      POONAM JUNEJA
                                      FREYA PITTS
                                      CRYSTAL ADAMS
                                      National Center for Youth Law

                                      /s/  *Carlos Holguín*
                                      Carlos Holguín

/ / /

―――――――――――――
Appointing Special Master/Independent Monitor, Oct. 5, 2018 (Dkt. #494), at 2-3;
*see also* Order re Defendants' Motion for Partial Reconsideration of Order
Appointing Special Master/Independent Monitor, Nov. 5, 2018 (Dkt. #518) at 3-4
(Dr. Cohen's declaration reinforces "justification for empowering the Monitor to
oversee ORR's compliance with the entirety of the July 30, 2018 Order.").