1   CARLOS R. HOLGUÍN (Cal. Bar No. 90754)
2   PETER A. SCHEY (Cal. Bar No. 58232)
    Center for Human Rights & Constitutional Law
3   256 South Occidental Boulevard
4   Los Angeles, CA 90057
    Telephone: (213) 388-8693
5   Email: crholguin@centerforhumanrights.org
6            pschey@centerforhumanrights.org

7   *Listing continues on next page*

8   *Attorneys for Plaintiffs*

9

10

11

12

13              UNITED STATES DISTRICT COURT

14      CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

15  | JENNY LISETTE FLORES, *et al.*, | Case No. CV85-4544-DMG-AGR |
16  | | |
    | Plaintiffs, | EXHIBITS IN SUPPORT OF MOTION FOR |
17  | | AWARD OF ATTORNEY'S FEES AND |
    | v. | COSTS—VOL. 1 (EXHIBITS 1-4) |
18  | | |
19  | WILLIAM P. BARR, Attorney General, *et al.*, | Hearing:   May 17, 2019 |
20  | | Time:      9:30 a.m. |
    | Defendants. | Room:      1st St. Courthouse |
21  | | Courtroom 8C |

22

23

24

25

26

27

28

1

*Counsel for Plaintiffs, continued*

2

3
HOLLY S. COOPER (Cal. Bar No. 197626)
Co-Director, Immigration Law Clinic
4
CARTER C. WHITE (Cal. Bar No. 164149)
Director, Civil Rights Clinic
5
University of California Davis School of Law
6
One Shields Ave. TB 30
Davis, CA 95616
7
Telephone: (530) 752-5440
8
Email: hscooper@ucdavis.edu
        ccwhite@ucdavis.edu
9

10
LEECIA WELCH (Cal. Bar No. 208741)
NEHA DESAI (Cal. RLSA Bar No. 803161)
11
POONAM JUNEJA (Cal. Bar No. 300848)
FREYA PITTS (Cal. Bar No.  295878)
12
National Center for Youth Law
13
405 14th Street, 15th Floor
Oakland, CA 94612
14
Telephone: (510) 835-8098
15
Email: lwelch@youthlaw.org
16
        ndesai@youthlaw.org
        pjuneja@youthlaw.org
17
        fpitts@youthlaw.org

18

19
CRYSTAL ADAMS (Cal. Bar No. 308638)
National Center for Youth Law
20
1313 L St. NW, Suite 130
Washington, DC 20005
21
Telephone: (202) 868-4785
22
Email: cadams@youthlaw.org

23

24

25

26

27

28

I, Carlos Holguín, declare that true and correct copies of the following documents are attached hereto:

| No. | Description | Page |
|---|---|---|
| 1 | Declaration of Carlos Holguín, April 18, 2019 | 1 |
| 2 | Declaration of Leecia Welch, April 19, 2019 | 23 |
| 3 | Declaration of Holly Cooper, April 15, 2019 | 77 |
| 4 | Declaration of Carol Sobel, October 31, 2017 | 113 |
| 5 | Declaration of Justin Mixon, October 19, 2017 | 256 |
| 6 | Declaration of Mark Bowers, October 23, 2017 | 263 |
| 7 | Declaration of Kristen Jackson, December 16, 2018 | 268 |
| 8 | Declaration of Carter White, April 17, 2019 | 280 |
| 9 | Declaration of Michael N. Mills, April 9, 2019 | 321 |
| 10 | Declaration of Stacy Tolchin, April 10, 2019 | 326 |
| 11 | Declaration of Jayashri Srihantiah, April 16, 2019 | 337 |
| 12 | Declaration of Kimberly A. Lucia, April 16, 2019 | 344 |
| 13 | Invoice, Dr. Amy Cohen, M.D. | 349 |
| 14 | Invoice, James Ownes, Esq. | 352 |
| 15 | Declaration of Queluntam Banjai, April 18, 2019 | 354 |
| 16 | Declaration of John O'Toole, April 16, 2019 | 357 |

/ / /

17     Declaration of Richard Pearl, April 18, 2019 ........................................ 363

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 19th day of April, 2019, at Santa Clarita, California.

/s/ *Carlos Holguín*

Carlos Holguín

/ / /

Exhibit 1

Case 2:85-cv-04544-DMG-AGR   Document 535-3   Filed 04/19/19   Page 6 of 259   Page ID
#:26001

ECLARATION OF CARLOS HOLGUIN

, Carlos Holguín, declare and say as follows:

1.  I execute this declaration in support of Plaintiffs' motion for an award of attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), for work performed to compel the Office of Refugee Resettlement of the U.S. Department of Health and Human Services to comply with the settlement in *Flores v. Sessions*. This work resulted in the Court's Order re Plaintiffs' Motion to Enforce Class Action Settlement, July 30, 2018 (Dkt. #470).

2. I am one of two attorneys who currently serve as class counsel for Plaintiffs in *Flores v. Sessions*. I have represented Plaintiffs in *Flores* since 1985. I have argued this cause for Plaintiffs before this Court, the United States Court of Appeals for the Ninth Circuit, and the United States Supreme Court. A true and correct copy of my resume detailing my experience and qualifications is attached as Exhibit A to this declaration.

3. I am employed by, and serve as General Counsel of, the Center for Human Rights and Constitutional Law (CHRCL), a non-profit, public interest law firm. Since 1984 my practice has focused on litigation, advocacy and technical support in furtherance of the rights of immigrants and refugees. The California Legal Services Trust Fund has funded CHRCL since 1982 to provide technical support and training to qualified legal services programs and attorneys serving *pro bono publico* in the areas of immigration law, constitutional law, international human rights, and complex litigation. In my capacity as CHRCL's general counsel, I regularly provide technical support, advocacy support, and training to legal aid and *pro bono* lawyers in these areas.

4. In addition to this matter, I have served as lead or co-counsel in many class actions seeking to vindicate the rights immigrants and refugees: *e.g.*, *Perez-Olano v. Gonzalez*, 248 F.R.D. 248 (C.D. Cal. 2008), which resulted in a nationwide settlement expanding eligibility for special immigrant status, an immigration benefit for abused, abandoned and neglected children; *We Are America v. Maricopa County*, 297 F.R.D. 373

(D. Ariz. 2013), which secured a state-wide class injunction against prosecuting migrants for conspiring to transport themselves; *Orantes-Hernandez v. Smith*, 541 F.Supp. 351 (C.D. Cal. 1982), a national class action on behalf of Salvadoran nationals blocked from applying for political asylum; *League of United Latin American Citizens v. Wilson*, 908 F. Supp. 755 (C.D. Cal. 1995), a state-wide class action that overturned a state proposition that would have denied health care, social services and education to allegedly undocumented immigrants; *Catholic Social Services v. Immigration and Naturalization Service*, 232 F.3d 1139 (9th Cir. 2000) (en banc), a national class action that restored the right of some 500,000 class members to apply for legalization under the Immigration Reform and Control Act of 1986; and *Plyler v. Doe*, 457 U.S. 202 (1982), a state-wide class action that established the right of children to a public elementary education regardless of their immigration status. In this matter, I served as lead counsel and argued for Plaintiffs in *Flores v. Meese*, 681 F. Supp. 665 (C.D. Cal. 1988); *Flores v. Meese*, 934 F.2d 991 (9th Cir. 1990); *Flores v. Meese*, 942 F.2d 1352 (9th Cir. 1992) (en banc); *Reno v. Flores*, 507 U.S. 292 (1993); *Flores v. Johnson*, 212 F. Supp. 3d 864 (C.D. Cal. 2015); and *Flores v. Sessions*, 862 F.3d 863 (9th Cir. 2017).

5. CHRCL's services are available only to clients whose income is below 125 percent of federal poverty guidelines. Before undertaking representation, CHRCL regularly inquiries into a prospective client's income and resources. I accordingly verified that the original plaintiffs and class representatives in this matter were wholly indigent. In the years since, I have interviewed dozens of class members in detention facilities nationwide. I affirm, on the basis of  more than 30 years' experience representing detained immigrant and refugee children, that *Flores* plaintiff class members are on the whole indigent, often having arrived in the United States with little more than the clothes on their backs.

6. I believe that the successful prosecution of the instant action required a combination of skills, knowledge, access to detained class members, and experience not

possessed by lawyers generally. Since 1985 I have devoted a good part of my practice to working with immigrant and asylum-seeking minors. I am also fluent in English and Spanish. The majority of class members in the litigation the CHRCL conducts, including *Flores*, are monolingual Spanish-speakers. In my opinion, the ability to communicate with these class members in their native language is essential to afford them a fair chance of prevailing.

7. The *Flores* settlement provides class counsel with unique access to class members and information regarding the plaintiff class. Since 1997, I have regularly monitored compliance with the *Flores* settlement by, *inter alia*, reviewing population reports furnished only to class counsel pursuant to ¶ 29 of the *Flores* settlement, conducting facility visits pursuant to ¶ 33 of the *Flores* settlement, and interviewing class members pursuant to ¶ 32 of the *Flores* settlement. As noted, I participated in the negotiations that resulted in the *Flores* settlement, and on the basis of personal knowledge affirm that Defendants insisted that only class counsel should have access to and information about detained class members, whereas Plaintiffs would have preferred such access and information be generally available to reputable non-profits and private counsel serving *pro bono publico*. Plaintiffs' counsel relied heavily on their special access to class members under the *Flores* settlement to investigate and document the violations of the settlement the July 30 Order addresses.

8. Paragraph 37 of *Flores* settlement also reserves to class counsel the right to seek class-wide enforcement of the agreement only in the United States District Court for the Central District of California. Here again, the Settlement reflects Defendants' preference, not Plaintiffs'. In sum, Defendants themselves insisted that the Settlement not be enforceable by lawyers generally, but instead only by class counsel alone.

9. I believe that the knowledge, insight, and experience I developed over more than 30 years' representing detained immigrant and refugee children in *Flores* were essential to plaintiffs' prevailing. As a practical matter, very few, if any, lawyers have

comparable expertise regarding the interplay of the *Flores* settlement, the Homeland Security Act of 2002, and the William Wilberforce Trafficking Victims Protection Reauthorization Act. I routinely advise immigration lawyers regarding the rights of detained immigrant and refugee youth. I believe Plaintiffs herein would be unable to find counsel with comparable expertise for the inflation-adjusted rate prescribed by 28 U.S.C. § 2412(d).

10.  Throughout this litigation, I have maintained contemporaneous records of time I have spent on this case. Exhibit B to this declaration sets forth a true and correct itemization of this time. For the most part, I record a summary of my activity, which sometimes comprises related tasks. For example, a time entry indicating time I spent researching and writing a brief includes time spent researching pertinent legal authorities, including their history, treatment, and related cases, in addition to drafting and editing the text itself. I have exercised billing judgment in preparing the attached time records to avoid block billing, and to exclude time I deemed duplicative, excessive, or inadequately related to the July 30 Order. The total time I devoted to securing the July 30 Order, monitoring ORR's compliance with the July 30 Order, and preparing the instant fee application, is 542.65 hours, as detailed in the attached itemized time records.

11. Attached as Exhibit C to this declaration is a true and correct print-out of the Bureau of Labor Statistics current table showing changes in the CIP-U from 2009 through February 2019. I generated the table on April 9, 2019, at https://data.bls.gov/pdq/SurveyOutputServlet.

/ / /

12. Attached as Exhibit D to this declaration are calculations reflecting the hours counsel dedicated to prosecuting the motion the July 30 Order resolves multiplied by the inflation-adjusted rate prescribed in the Equal Access to Justice Act for the respective time periods.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18th day of April, 2019, at Los Angeles, California.

_____
Carlos Holguin

/ / /

# Exhibit A

*Curriculum Vitae*

**CARLOS HOLGUIN**

Home:                                                  Office:
15920 Calle El Capitan                                 256 S. Occidental Blvd.
Santa Clarita, California 91390                         Los Angeles, CA 90057
(661) 270-0912                                          (213) 388-8693 x109
e-mail: crholguin@centerforhumanrights.org

**PROFESSIONAL DEGREES**

- Juris Doctorate, May 1979.

  Peoples College of Law, Los Angeles, California. Emphasis on civil rights, labor, and administrative law.

**BAR ADMISSIONS**

- Supreme Court of the State of California, November 1979.

- United States District Court for the Central District of California, December 1979.

- United States District Court for the Eastern District of California, December 1979.

- United States Circuit Court of Appeals for the Ninth Circuit, May 1982.

- United States Supreme Court, February 1992.

- United States District Court for the Southern District of California, July 1992.

- United States District Court for the Northern District of California, March 2007.

**PROFESSIONAL EXPERIENCE**

- *General Counsel, Center for Human Rights & Constitutional Law, Los Angeles, California.  1984 to present.*

Duties:  General counsel for non-profit, public interest legal advocacy center specializing in legal, legislative, and educational work in furtherance of the rights of immigrants and refugees.  Serve as lead and co-counsel in impact litigation involving deportation, political asylum, the rights of juveniles, and social services.

Additional duties include administration of grants, financial operations, office computerization, and community liaison.

- *Staff attorney, Westside Legal Services, Santa Monica, California, 1982-83.*

Duties:  Serve as sole staff attorney for community legal assistance office providing services for eligible low income clients.  Coordinate and supervise U.C.L.A. law students in clinical program involving counseling and direct representation of eligible clients.  Maintain caseload with emphasis on eviction defense, government benefits, and consumer rights.

- *Staff attorney, National Center or Immigrants' Rights, Los Angeles, California (Research Associate prior to bar admission), 1977-82.*

Duties:  Serve as principal and co-counsel for national Legal Services support center. Heavy emphasis on impact litigation involving immigration, civil rights of non-citizens, administrative law and procedure, eligibility for government benefits, and constitutional law.

Additional duties include serving as a resource attorney for Legal Services field programs in the areas of immigration law and procedure, refugee rights, and federal litigation; training of Legal Services attorneys and paralegals; legislative monitoring and analysis; preparation of technical articles and training materials on immigrants' and refugees' rights and federal litigation; coordination and supervision of El Rescate, a direct services project providing legal assistance to Central American refugees.

SPECIAL SKILLS

Read, write, and speak Spanish. Extensive experience in non-profit administration.

REFERENCES

Furnished on request.

Exhibit B

10

## Flores v. Sessions MTE re: Psychotropics, etc. Time Report - Carlos Holguin

| Date | Elapsed Time | Description | 2017 Hours | 2018 Hours | 2019 Hours |
|---|---|---|---|---|---|
| 4/27/17 | 1.18 | Conf. call w/NCVL, UC Davis re: security level litigation. | 116.69 | 391.56 | 34.4 |
| 5/1/17 | 1.57 | Coordinate Yolo, BCFS site visits. | | | |
| 5/3/17 | 0.88 | Research placement due process standards. | | | |
| 5/9/17 | 0.63 | R&D interview guidelines for Yolo, BCFS visits. | | | |
| 5/11/17 | 2.43 | Prep 4 Fairfield, Yolo monitoring. | | | |
| 5/15/17 | 3.72 | Tour BCFS facility; interview class members. | | | |
| 5/16/17 | 5.67 | Interview class members at Yolo. | | | |
| 6/23/17 | 0.62 | Teleconf w/Lawyers' Committee re: Shenandoah monitoring. | | | |
| 6/26/17 | 0.6 | Prepare Shenandoah monitoring letter. | | | |
| 7/10/17 | 3.6 | Class mbr. interviews - Shenandoah VJC | | | |
| 7/10/17 | 1.6 | Shenandoah facility inspection. | | | |
| 7/11/17 | 6.77 | Class mbr. interviews - Shenandoah VJC | | | |
| 7/14/17 | 0.97 | Conf call w/ACLU, Holly, etc. | | | |
| 7/17/17 | 0.78 | Conf. call w/Lawyer's Committee re: Shenandoah conditions. | | | |
| 7/17/17 | 1.6 | Submit ORR file requests for Shenandoah class members. | | | |
| 7/24/17 | 1.28 | Draft letter re: inadequate ¶ 28A reports. | | | |
| 7/24/17 | 0.6 | Revise and resend class member file request. | | | |
| 7/27/17 | 0.85 | Review class member ORR file. | | | |
| 8/1/17 | 0.38 | Edit and send letter re: inadequate reporting of class members. | | | |
| 8/2/17 | 1.25 | Telecon w/ACLU NorCal re: Flores sub-class litigation. | | | |
| 8/24/17 | 0.85 | Conf call w/co-counsel, ACLU, etc. | | | |
| 8/28/17 | 2.88 | Research pro bono funding, standards for secure & treatment facilities. | | | |
| 9/1/17 | 1.23 | Conf. call w/co-counsel. | | | |
| 9/13/17 | 1.57 | Research settlement remedial options. | | | |
| 9/15/17 | 1.1 | Coordinating conf. call w/co-counsel. | | | |
| 10/2/17 | 2.47 | Prep and conf. call w/co-counsel re: litigation prep. | | | |
| 10/3/17 | 0.38 | Prepare summary of co-counsel call/division of work, site visit dates, etc. | | | |
| 10/5/17 | 0.7 | Review population reports; identify monitoring sites. | | | |
| 10/13/17 | 0.35 | Prepare and send letter re: Yolo site visit. | | | |
| 10/17/17 | 0.62 | Telecon w/co-counsel re: monitoring visits. | | | |
| 10/24/17 | 0.48 | Telecon w/H. Cooper re: Yolo monitoring visit. | | | |

| Date | Hours | Description |
| --- | --- | --- |
| 11/1/17 | 1.33 | Conf. call w/co-counsel re: site visits, etc. |
| 11/8/17 | 0.57 | Telecon w/Catholic Charities, et al., re: monitoring visit. |
| 11/13/17 | 2.17 | Telecons w/co-counsel, ACLU, et al. re: monitoring visits & litigation coordination. |
| 11/14/17 | 9.47 | TV to New York for monitoring visit. |
| 11/15/17 | 9.23 | Tour & interview class mbrs @ MercyFirst; TV to Dobbs Ferry. |
| 11/16/17 | 5.68 | Tour & interview class mbrs @ Children's Village. |
| 11/16/17 | 11.5 | TV to LA. |
| 11/27/17 | 0.77 | Review monitoring and facility reports. |
| 11/27/17 | 0.65 | R&D meet/confer demand re: inadequate population reports. |
| 11/27/17 | 1.55 | Conf. call w/co-counsel. |
| 11/30/17 | 1.5 | Investigate denial of parent-child communication. |
| 12/4/17 | 0.33 | Assemble 6-month list of ORR facility monitors. |
| 12/5/17 | 1.52 | Conf. call w/co-counsel re: Shiloh, mental health & next steps. |
| 12/6/17 | 1.57 | R&D meet & confer demand letter. |
| 12/7/17 | 2.3 | Review Shiloh decs; flag issues they raise; ID those needing ORR files. |
| 12/13/17 | 1.42 | Revise and edit meet/confer letter. |
| 12/14/17 | 5.72 | R&D Motion to enforce. |
| 12/19/17 | 0.8 | Telecons w/regional advocates re: settlement violations. |
| 12/19/17 | 1.12 | Conf. call w/co-counsel. |
| 12/21/17 | 2.08 | R&D MTE re: court's remedial authority. |
| 12/28/17 | 5.8 | R&D motion to enforce settlement. |
| 1/2/18 | 1.68 | Prep 4 meet/confer; meet/confer; de-brief w/co-counsel. |
| 1/4/18 | 5.32 | Review & excerpt class mbr ORR files for MTE briefing, ltr re: involuntary medicating. |
| 1/5/18 | 2 | Draft letter to ORR re: psychotropic meds, etc. |
| 1/22/18 | 1.18 | Telecon w/co-counsel re: litigation progress. |
| 1/23/18 | 1.5 | Prep. & call w/NYACLU re: release delays, etc. |
| 1/23/18 | 0.52 | Telecon w/Nat. Immig. Justice Center, Holly, re: settlement violations. |
| 1/25/18 | 0.92 | Telecon w/Oregon Defenders re: class member & delayed release. |
| 1/29/18 | 1.15 | Conf. call w/co-counsel. |
| 2/1/18 | 4.17 | Research & draft motion to enforce re: custodian, placement due process. |
| 2/2/18 | 0.63 | Conf. call w/co-counsel re: MTE, supplemental complaint. |
| 2/5/18 | 0.73 | Conf. call w/co-counsel re: litigation progress. |
| 2/5/18 | 5.8 | R&D motion to enforce re: JMRR. |
| 2/6/18 | 9.45 | R&D motion to enforce re: JMRR. |

| | | |
|---|---|---|
| 2/7/18 | 4.6 | Edit brief, draft notice of motion, motion, proposed order re: JMRR. |
| 2/12/18 | 1.13 | Conf. call w/co-counsel. |
| 2/14/18 | 0.35 | Telecon w/Catholic Charities-Houston re: SWK Mesa. |
| 2/14/18 | 0.35 | Email to co-counsel re: SWK Mesa. |
| 2/16/18 | 0.88 | Prep & call w/Defs re: population reports. |
| 2/21/18 | 0.83 | Conf. call w/co-counsel. |
| 2/22/18 | 0.88 | Conf. call w/Houston LSP re: Shiloh, Mesa detainees. |
| 2/22/18 | 2.58 | Review & summarize ¶ 29 document production. |
| 2/26/18 | 7.18 | Travel to Houston. |
| 2/27/18 | 1.45 | Telephone interviews of class member parents, relatives. |
| 2/27/18 | 6.8 | Interview class members at Shiloh RTC |
| 2/28/18 | 0.78 | Travel to Houston |
| 2/28/18 | 0.83 | Travel to Keman to take declaration of class member's mother |
| 2/28/18 | 1.37 | Meet w/Manuel Solis & staff to set up pro bono representation for class members. |
| 2/28/18 | 2.85 | Interview class members - Shiloh RTC |
| 2/28/18 | 1.37 | Prepare declaration of class member's mother |
| 3/1/18 | 3.9 | Travel to Los Angeles |
| 3/1/18 | 6.45 | Tour and interview class members - Soutwest Key -Mesa detention center. |
| 3/5/18 | 1.48 | Litigation coordinating meeting. |
| 3/5/18 | 1.85 | Review and evaluate class member files to identify class reps. |
| 3/5/18 | 0.82 | Draft demand letter re: legal representation in bond hearings, etc. |
| 3/7/18 | 4.85 | R&D motion to enforce settlement-custodian vetting process. |
| 3/8/18 | 0.37 | Conf. call w/Becky Wolozin re: lack of bond hearing impact on placement, release |
| 3/12/18 | 1.25 | Litigation coordinating meeting. |
| 3/14/18 | 1.7 | Research & draft motion to enforce - custodian vetting process. |
| 3/15/18 | 2.73 | Research ORR's So.Cal. detention facilities, populations, and LSPs. |
| 3/15/18 | 0.52 | R&D motion to enforce, custodian due process. |
| 3/16/18 | 0.37 | Telecon w/Leecia Welch re: briefing strategy. |
| 3/16/18 | 0.9 | R&D motion to enforce, custodian due process. |
| 3/17/18 | 3.23 | Research & write motion to enforce re: custodian vetting. |
| 3/17/18 | 3.6 | R&D motion to enforce |
| 3/19/18 | 1.18 | Litigation coordinating call. |
| 3/20/18 | 3.33 | R&D motion to enforce - psychiatric committment. |
| 3/21/18 | 1.12 | Telecon w/Immigrant Defenders re: Crittenton, et al. |

13

| Date | Hours | Description |
|---|---|---|
| 3/21/18 | 5.08 | R&D motion to enforce |
| 3/23/18 | 4.13 | Review & draft comments re: meds, step-up arguments. |
| 3/23/18 | 1.2 | Review & select evidence from class member ORR files. |
| 3/27/18 | 0.95 | R&D motion to enforce. |
| 3/28/18 | 5.23 | R&D motion to enforce. |
| 3/30/18 | 5.08 | R&D motion to enforce. |
| 3/30/18 | 2.77 | R&D motion to enforce. |
| 4/1/18 | 1 | Litigation coordinating call. |
| 4/1/18 | 2.8 | R&D motion to enforce brief. |
| 4/2/18 | 1.17 | Litigation coordinating call. |
| 4/3/18 | 7.1 | R&D motion to enforce - step ups process. |
| 4/4/18 | 4.63 | R&D motion to enforce - step ups process. |
| 4/5/18 | 7.22 | R&D motion to enforce-overall brief |
| 4/6/18 | 0.85 | Conf. call w/NYCLU re: release delay. |
| 4/9/18 | 0.98 | Litigation coordinating call. |
| 4/10/18 | 3.28 | Integrate & edit MTE brief. |
| 4/11/18 | 6.13 | Edit MTE brief. |
| 4/13/18 | 5 | Final edit of motion to enforce brief. |
| 4/16/18 | 0.97 | Litigation coordinating call. |
| 4/17/18 | 2.65 | Revise proposed order. Draft explanation for changes. |
| 4/20/18 | 0.7 | Revise proposed order. |
| 4/24/18 | 1 | Litigation coordinating call. |
| 4/24/18 | 0.23 | Revise proposed order. |
| 4/25/18 | 0.55 | Finalize proposed enforcement order. |
| 4/30/18 | 1.18 | Litigation coordinating call. |
| 5/7/18 | 1.18 | Litigation coordinating call. |
| 5/9/18 | 1.68 | Prepare for Crittendon, David & Margaret monitoring. |
| 5/10/18 | 10.35 | TV to Fullerton; interview class mbrs. at Crittendon. |
| 5/11/18 | 9.35 | TV to La Verne; interview class mbrs. at David & Margaret. |
| 5/14/18 | 1.08 | Litigation coordinating call. |
| 5/15/18 | 0.5 | Telecon w/Jimmy Leyva re: class mbr at Dorothy Mitchell. |
| 5/17/18 | 0.57 | Telecon w/Claudia H. lawyer. |
| 5/17/18 | 0.4 | Consulte w/TRAC re: detention statistics and trends. |
| 5/18/18 | 1.43 | Telecons w/detained class mbr. family members. |
| 5/21/18 | 1.33 | Litigation coordinating call. |

14

| | |
|---|---|
| 5/30/18 | 1.42 Litigation coordinating call. |
| 5/30/18 | 1.4 Review and analyze MTE opposition. |
| 5/30/18 | 0.77 Follow up calls to potential custodians for class members. |
| 6/1/18 | 3.85 Research & draft reply to MTE opposition. |
| 6/2/18 | 4.53 Research & draft reply to MTE opposition. |
| 6/3/18 | 0.63 Research & draft reply to MTE opposition. |
| 6/4/18 | 1.28 Litigation coordinating call. |
| 6/4/18 | 5.78 Research & draft reply to MTE opposition. |
| 6/5/18 | 4.68 Research & draft reply to MTE opposition. |
| 6/6/18 | 5.52 Research & draft reply to MTE opposition. |
| 6/9/18 | 2.95 Research & draft reply to MTE opposition. |
| 6/10/18 | 3.7 Research & draft reply to MTE opposition. |
| 6/11/18 | 1.52 Litigation coordinating call. |
| 6/11/18 | 3.95 R&D MTE reply. |
| 6/12/18 | 7.55 R&D MTE reply. |
| 6/13/18 | 5.4 R&D MTE reply. |
| 6/14/18 | 3.58 R&D MTE reply. |
| 7/11/18 | 4.33 Contend with ORR's refusing admission to Dr. Cohen. |
| 7/12/18 | 1.82 Prep & conf. call w/MJ re: Dr. Cohen & Shiloh entry. |
| 7/26/18 | 5.77 Prep for MTE hearing. |
| 7/27/18 | 1.68 Prep for MTE hearing. |
| 7/30/18 | 1.68 Litigation coordinating call. |
| 8/10/18 | 1.42 R&D status report. |
| 8/10/18 | 0.73 Meet/confer w/OIL; debrief w/Holly. |
| 8/13/18 | 1.42 Interview class mbrs at Shiloh |
| 8/23/18 | 7.45 Interview class members at Shiloh; return to LA. |
| 8/24/18 | 12.18 Interview class members at Shiloh; return to LA. |
| 9/5/18 | 0.43 Meet-confer re: 7/30 order compliance. |
| 9/9/18 | 2.37 R&D email to co-counsel re: proposed regs, July 30 order compliance, denial of PI. |
| 10/9/18 | 1.7 Prepare notice of x-appeal re: July 30 order. |
| 10/10/18 | 0.5 Review order re: monitoring 7/30 order |
| 10/10/18 | 0.78 Telecon w/PAS re: monitor order. |
| 10/14/18 | 1 Prepare for monitor hearing. |
| 10/15/18 | 4.78 Travel & attend hearing & conference re: monitoring. |
| 10/15/18 | 1.2 Telecon w/co-counsel re: monitor & next steps. |

15

| Date | | Description |
|---|---|---|
| 10/16/18 | 2.9 | R&D opp. 2 modify monitor order |
| 10/17/18 | 6.68 | R&D opp. to motion to modify monitoring order. |
| 10/18/18 | 5.62 | R&D opp. to motion to modify monitoring order. |
| 10/19/18 | 12.6 | R&D opp. to motion to modify monitoring order. |
| 10/29/18 | 1.48 | Litigation coordinating call. |
| 11/4/18 | 2.5 | Litigation coordinating call. |
| 11/26/18 | 2.03 | R&D monitoring request to Spec. Master. |
| 11/26/18 | 1.02 | Conf. call re: Shiloh monitoring visit, etc. |
| 11/28/18 | 0.97 | Edit letter to Spec.Mstr re: Shiloh visit. |
| 11/28/18 | 0.27 | Telecon w/Dr. Cohen re: Shiloh visit. |
| 11/28/18 | 0.52 | Prep. & call w/Special Master re: Shiloh monitoring. |
| 11/29/18 | 3.52 | R&D opp2 motion to reconsider. |
| 12/2/18 | 8 | Travel to Shiloh. |
| 12/3/18 | 10.02 | Travel to Los Angeles. |
| 12/3/18 | 4.5 | Special master visit to Shiloh RTC. |
| 12/5/18 | 1.95 | Draft declaration re: Shiloh. |
| 12/10/18 | 1.1 | Conf. call w/Special Master & defendants |
| 12/10/18 | 1.18 | R&D notice of non-compliance. |
| 12/13/18 | 4.6 | R&D notice of non-compliance. |
| 12/14/18 | 0.82 | Finalize letter invoking ADR re: Shiloh. |
| 12/19/18 | 0.32 | Email re: Shiloh ADR. |
| 12/19/18 | 1.25 | Prepare 4 mediation; email re: Shiloh ADR. |
| 12/20/18 | 2.65 | Teleconference w/Special Master, defendants. |
| 12/20/18 | 0.33 | Telecon w/Dr. Cohen re: meeting w/Shiloh staff. |
| 12/21/18 | 1.35 | Telecon w/PAS & email to Special Master. |
| 12/27/18 | 1.45 | Prep & telecon w/Special Master. |
| 1/3/19 | 1.22 | Litigation coordinating call. |
| 1/17/19 | 0.7 | Telecons re: special mstr meet/confer. |
| 1/18/19 | 1.68 | Conf. call w/Special Master. |
| 1/25/19 | 1.55 | Prep 4 settlement call, conf. call, & followup call. |
| 2/6/19 | 4.07 | Draft/edit Shiloh settlement proposal. |
| 2/7/19 | 1.43 | Draft/edit Shiloh settlement proposal. |
| 2/13/19 | 3.35 | R&D comments to Special Master draft 1st report. |
| 2/19/19 | 1.07 | Revise comments to Spec. Mastr. |

| Date | Hours | Description |
|---|---|---|
| 2/21/19 | 2.22 | Draft reply to OIL email re: Shiloh resolution. |
| 3/28/19 | 6.08 | Mediation re: informed consent. |
| 4/1/19 | 1.12 | Email & telecon w/Dr. Cohen re: informed consent settlement. |
| 4/3/19 | 1.92 | R&D EAJA motion. |
| 4/4/19 | 5.83 | R&D EAJA motion. |
| 4/18/19 | 1.23 | Finalize July 30 EAJA motions. |
| 4/11/19 | 0.93 | Prep 4 meet-confer; conference re: EAJA motion; debrief re next steps. |
| Total Hours | 542.65 | |

# Exhibit C

18

**CPI-All Urban Consumers (Current Series)**
Original Data Value

| | |
|---|---|
| Series Id: | CUUR0000SA0 |
| | Not Seasonally Adjusted |
| Series Title: | All items in U.S. city average, all urban consumers, not |
| Area: | U.S. city average |
| Item: | All items |
| Base Period: | 1982-84=100 |
| Years: | 2009 to 2019 |

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Annual | HALF1 | HALF2 |
|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|--------|-------|-------|
| 2009 | 211.143 | 212.193 | 212.709 | 213.240 | 213.856 | 215.693 | 215.351 | 215.834 | 215.969 | 216.177 | 216.330 | 215.949 | 214.537 | 213.139 | 215.935 |
| 2010 | 216.687 | 216.741 | 217.631 | 218.009 | 218.178 | 217.965 | 218.011 | 218.312 | 218.439 | 218.711 | 218.803 | 219.179 | 218.056 | 217.535 | 218.576 |
| 2011 | 220.223 | 221.309 | 223.467 | 224.906 | 225.964 | 225.722 | 225.922 | 226.545 | 226.889 | 226.421 | 226.230 | 225.672 | 224.939 | 223.598 | 226.280 |
| 2012 | 226.665 | 227.663 | 229.392 | 230.085 | 229.815 | 229.478 | 229.104 | 230.379 | 231.407 | 231.317 | 230.221 | 229.601 | 229.594 | 228.850 | 230.338 |
| 2013 | 230.280 | 232.166 | 232.773 | 232.531 | 232.945 | 233.504 | 233.596 | 233.877 | 234.149 | 233.546 | 233.069 | 233.049 | 232.957 | 232.366 | 233.548 |
| 2014 | 233.916 | 234.781 | 236.293 | 237.072 | 237.900 | 238.343 | 238.250 | 237.852 | 238.031 | 237.433 | 236.151 | 234.812 | 236.736 | 236.384 | 237.088 |
| 2015 | 233.707 | 234.722 | 236.119 | 236.599 | 237.805 | 238.638 | 238.654 | 238.316 | 237.945 | 237.838 | 237.336 | 236.525 | 237.017 | 236.265 | 237.769 |
| 2016 | 236.916 | 237.111 | 238.132 | 239.261 | 240.229 | 241.018 | 240.628 | 240.849 | 241.428 | 241.729 | 241.353 | 241.432 | 240.007 | 238.778 | 241.237 |
| 2017 | 242.839 | 243.603 | 243.801 | 244.524 | 244.733 | 244.955 | 244.786 | 245.519 | 246.819 | 246.663 | 246.669 | 246.524 | 245.120 | 244.076 | 246.163 |
| 2018 | 247.867 | 248.991 | 249.554 | 250.546 | 251.588 | 251.989 | 252.006 | 252.146 | 252.439 | 252.885 | 252.038 | 251.233 | 251.107 | 250.089 | 252.125 |
| 2019 | 251.712 | 252.776 | | | | | | | | | | | | | |

Bureau of Labor Statistics

Source: Bureau of Labor Statistics

# Exhibit D

# Flores v. Sessions: July 30 Order EAJA Calculations

## Lodestar - all lawyers

### $75 base rate adjusted for inflation

| Year | CPI-U | Multiplier | Adjusted rate | 9th Cir. inflation-adjusted rate |
|---|---|---|---|---|
| Oct. 1981 | 93.4 | | $ 75.00 | |
| 2017 | 245.12 | 2.624 | $ 196.83 | $ 196.79 |
| 2018 | 251.107 | 2.689 | $ 201.64 | $ 201.60 |
| Jan-19 | 251.712 | 2.695 | $ 202.12 | $ 201.60 |
| Feb-19 | 252.776 | 2.706 | $ 202.98 | $ 201.60 |

| Attorneys | Year | Hours | Fees @ $75 inflation-adjusted rate | Fees @ 9th Cir. Inflation-adjusted rate | Fees @ Market Rates |
|---|---|---|---|---|---|
| Carlos Holguin | 2017 | 136.01 | $ 26,771 | $ 26,765 | $ 115,609 |
| | 2018 | 427.06 | $ 86,112 | $ 86,095 | $ 363,001 |
| | 2019 | 34.40 | $ 6,953 | $ 6,935 | $ 29,240 |
| **Firm sub-total** | | **597.47** | **$ 119,836** | **$ 119,796** | **$ 507,850** |
| Holly Cooper | 2017-19 | 235.61 | $ 47,508 | $ 46,366 | $ 153,147 |
| Carter White | 2017-19 | 40.00 | $ 8,066 | $ 8,064 | $ 26,000 |
| Students | 2017-19 | 411.61 | | | $ 72,032 |
| **Firm sub-total** | | **687.22** | **$ 55,574** | **$ 54,430** | **$ 251,178** |
| Leecia Welch | 2017 | 80.0 | $ 15,746 | $ 15,743.20 | $ 50,400 |
| | 2018 | 157.3 | $ 31,718 | $ 31,712 | $ 104,605 |
| | 2019 | 0.9 | $ 182 | $ 181 | $ 621 |
| Crystal Adams | 2017 | 41.4 | $ 8,149 | $ 8,147 | $ 8,149 |
| | 2018 | 159.3 | $ 32,121 | $ 32,115 | $ 32,121 |
| | 2019 | 8.4 | $ 1,698 | $ 1,693 | $ 1,698 |
| Freya Pitts | 2018 | 47.0 | $ 9,477 | $ 9,475 | $ 9,477 |
| | 2019 | 1.3 | $ 263 | $ 262 | $ 263 |
| Kira Setren | 2018 | 141.3 | | | $ 14,130 |
| Melissa Adamson | 2017 | 46.2 | $ 9,094 | $ 9,092 | $ 9,094 |
| | 2018 | 136.3 | $ 27,483 | $ 27,478 | $ 27,483 |
| | 2019 | 6.4 | $ 1,294 | $ 1,290 | $ 1,294 |
| Neha Desai | 2017 | 122.2 | $ 24,053 | $ 24,048 | $ 24,053 |
| | 2018 | 115.1 | $ 23,209 | $ 23,204 | $ 23,209 |

### Market Rates

| | C. Holguin | L. Welch | H. Cooper | C. White | Students | Paralegal |
|---|---|---|---|---|---|---|
| | $ 850 | $ 630 | $ 650 | $ 650 | $ 175 | $ 100 |
| | $ 850 | $ 665 | $ 650 | $ 650 | $ 175 | $ 100 |
| | $ 850 | $ 690 | $ 650 | $ 650 | $ 175 | $ 100 |

| | | | | |
|---|---|---|---|---|
| Poonam Juneja | 2017 | 131.0 | $ 25,785 | |
| | 2018 | 145.9 | $ 29,419 | |
| **Firm sub-total** | | **1340** | **$ 239,689** | |
| | | | $ 239,634 | |
| | | | $ 25,785 | |
| | | | $ 29,419 | |
| | | | **$ 361,799** | |
| **Total Fees** | | **2624.69** | **$ 415,098** | |
| | | | $ 413,859 | |
| | | | **$ 1,120,826** | |
| **Costs** | | | | |
| CHRCL | | | $ 7,995 | |
| UC Davis | | | $ 6,433 | |
| NCYL | | | $ 13,609 | |
| Experts | | | $ 63,775 | |
| **Total costs** | | | **$ 91,812** | |
| **Total fees & Costs** | | | **$ 1,212,638** | |

# Exhibit 2

I, Leecia Welch, declare as follows:

1.     I am an attorney, duly licensed to practice law in the states of California, Washington, and Illinois.  I am the Senior Director of Child Welfare and Legal Advocacy at the National Center for Youth Law (NCYL).  I submit this declaration in support of Plaintiffs' Motion for Award of Attorney's Fees and Costs.  The facts set forth in this declaration are based upon my personal knowledge, and if called to do so, I would competently testify under oath regarding the same.

**Qualifications of NCYL Attorneys**

2.     NCYL is a privately-funded, non-profit organization founded in 1970 to advocate for low-income children and adolescents.  NCYL regularly represents plaintiffs in complex class action lawsuits designed to protect the rights of youth and improve child-serving systems.  NCYL attorneys have significant experience in cases involving child welfare, juvenile justice, adolescent health, immigration, and children's mental health needs.  They are among the most experienced, knowledgeable, and respected children's lawyers in the country.

3.     One of NCYL's primary substantive areas of expertise is advocating for children in child welfare systems.  NCYL has worked to reform child-serving systems through litigation in various states, including California, Washington, and Utah.  For example, in *Braam v. Washington*, No. 98-2-01570 (Whatcom Cnty.), we represent thousands of Washington foster children and play a key role in the ongoing monitoring and enforcement of the settlement agreement.  In *David C. v. Leavitt*, No. 93-C-206W (D. Utah), we successfully represented a class of foster children and children reported to be abused or neglected.  Both of these lawsuits resulted in significant improvements to the child welfare systems in those states.  NCYL has also spearheaded reform of child welfare systems in Arkansas (*Angela*

1

*R. v. Clinton*, No. 91-cv-415 (E.D. Ark.)) and Maryland (*L.J. v. Massinga*, No. 84-cv-4409 (D. Md.)).

4.     Over the past ten years, NCYL has played a leading role in addressing the improper administration of psychotropic medications to vulnerable children in government custody.  We are currently class counsel in *M.B. v. Corsi*, No. 17-cv-4102 (W.D. Mo.), a groundbreaking class action addressing the state of Missouri's failure to properly oversee the prescription and administration of psychotropic medications to foster children.  NCYL has also successfully advocated for policy reforms to reduce the misuse of psychotropic medications on children in foster care in California.  Through this work, we have gained a deep understanding of the harm to children in government custody that can result from the over-reliance on and improper administration of psychotropic medications.  We have also developed expertise concerning the need for procedural protections, including a process for obtaining informed consent, prior to administering these powerful drugs to traumatized, vulnerable children.

5.     NCYL attorneys also have extensive experience at the intersection of child welfare and immigration.  NCYL was one of the original organizations to file the *Flores* case, and has devoted tens of thousands of hours to the case since it was filed in 1985.  In addition to our work on *Flores*, we also represent five classes of detained immigrant children in the federal custody of the Office of Refugee Resettlement in *Lucas R. v. Azar*, No. 18-cv-5741-DMG-PLA (C.D. Cal.) and a putative class of immigrant children whose release from government custody has been delayed due to unlawful fingerprinting policies and practices in *Duchitanga v. Hayes*, No. 18-cv-10332-PAC (S.D.N.Y).  The team at NCYL currently working on *Flores* includes Neha Desai, Poonam Juneja, Freya Pitts, Melissa Adamson, Crystal Adams, Kira Setren, and me.  Attached hereto as Exhibit A to my declaration are true and correct copies of our resumés.

2

DECLARATION OF LEECIA WELCH

6. I have been an attorney at the National Center for Youth Law since 2004. I have dedicated my career to representing children and youth in cases focused on enforcing their statutory and constitutional rights. I have been lead or co-counsel in multiple federal court class action lawsuits and other individual cases on behalf of children in need.

7. I attended Loyola University Chicago School of Law, where I was selected to be in the first cohort of fellows of the newly founded Civitas ChildLaw Fellowship program. The Civitas ChildLaw Program was the first law school program in the country to integrate a traditional J.D. curriculum with a specialized three-year course of study in children's law. The fellowship program included a scholarship, internship funding and support, extensive coursework focusing on children's law, a children's law clinic, a specialized children's law trial practice course, and a journal and policy institute. I graduated *magna cum laude* in 1996, and was admitted to practice in the State of Washington later that year.

8. I began my career as a litigation associate at the Seattle office of Perkins Coie and the San Francisco office of Morrison & Foerster. While at Morrison & Foerster, I worked on a variety of litigation matters, but I spent the vast majority of my time litigating a class action lawsuit on behalf of California school children entitled *Williams v. State of California*.

9. Morrison & Foerster partnered with the ACLU of Southern California and numerous other non-profit organizations to bring *Williams v. State of California* because thousands of school children were being denied the essential ingredients of an adequate public education: instructional materials, qualified teachers, and safe facilities. For more than three years, I worked closely with the *Williams* class representatives, managed the day-to-day operations of a team of more than thirty attorneys, oversaw all filings and discovery matters, and spent hundreds of hours taking depositions of high-ranking state officials and defendants' experts and defending depositions of our young clients. This high-profile case

3

DECLARATION OF LEECIA WELCH

1   concluded in 2004 with a landmark settlement agreement that resulted in the state

2   allocating $138 million in additional funding for standards-aligned instructional

3   materials, $50 million for enhanced oversight of low performing schools, and $800

4   million for critical repairs to school facilities.  The *Williams* team at Morrison &

5   Foerster received numerous awards for our work on behalf of California students,

6   and the case was discussed at length in a book by Peter Schrag entitled <u>Final Test:</u>

7   <u>The Battle for Adequacy in America's Schools</u> (2003).

8       10.    Throughout my time at Perkins Coie and Morrison & Foerster, I also

9   represented numerous individual youth and families in a range of pro bono matters.

10  This work included representing youth charged with first degree murder, foster

11  children and their representatives in child welfare matters, children in school

12  discipline matters, and low-income families in guardianship cases.

13      11.    At the conclusion of the *Williams* case, I was fortunate to receive an

14  offer to work at NCYL – my dream job.  NCYL is one of only a handful of non-

15  profits across the country whose attorneys specialize in representing youth in foster

16  care in class action cases and impact litigation.  Some of the cases I have worked on

17  while at NCYL include:

18          a) *David C. v. Leavitt*, No. 93-C-206W (D. Utah): I was lead counsel

19             representing a statewide class of children in foster care in Utah

20             from 2004 until 2007, when the case successfully concluded.  I led

21             the negotiation and implementation of a settlement that resulted in

22             substantial improvements to Utah's foster care system, including

23             tripling the amount of funding allocated to foster care and

24             improving key outcomes for youth in care.

25          b) *T.R. v. Quigley*, No. 2:09-cv-01677 (W.D. Wash.): I am currently

26             co-lead counsel representing a statewide class of low-income

27             children in need of intensive mental health services in the state of

28             Washington.  The Court has referred to our settlement in the *T.R.*

4

DECLARATION OF LEECIA WELCH

case as a "resounding success" and "nothing less than a landmark reform." Verbatim Report of Proceedings at 25, *T.R. v. Quigley*, No. C09-1677TSZ (W.D. Wash. Dec. 19, 2013). The Settlement Agreement resulted in the funding and development of community-based intensive mental health services, called Wraparound with Intensive Services, to Medicaid-eligible children in Washington statewide.

    c) *Henry A. v. Willden*, No. 2:10-cv-00528 (D. Nev.): I was co-counsel in a lawsuit on behalf of seven foster youth who were subjected to physical and mental harm while in foster care in Clark County, Nevada. The lawsuit resulted in a $2 million settlement.

    d) *M.B. v. Corsi*, No. 17-4102 (W.D. Mo.) (described above).

    e) *Lucas R. v. Azar*, No. 18-cv-5741-DMG-PLA (C.D. Cal.) (described above).

    f) *Duchitanga v. Hayes*, No. 18-cv-10332-PAC (S.D.N.Y) (described above).

    g) *M.B. and S.E. v. Kelly*, No. 18-cv-2617-JWL-GEB (D. Kan.), a putative class action lawsuit in Kansas challenging the state's failure to ensure foster youth are provided a place to live and needed mental health services.

12.     Although I spend most of my time on litigation matters, I also regularly engage in policy work and train lawyers on issues related to enforcing the statutory and constitutional rights of youth in foster care. I have also taught law school courses at U.C. Berkeley School of Law on reforming child-serving systems through impact litigation. My work has been recognized by the American Bar Association, the California State Bar, and the Impact Fund.

13.     Neha Desai is a Senior Attorney and the Director of Immigration at NCYL. She is a 2006 graduate of Berkeley School of Law. For the past thirteen

years, she has been working with and on behalf of children, including immigrant children in federal custody, as well as youth in the child welfare and juvenile justice systems.  At NCYL, Ms. Desai currently works on *Flores*, *Lucas R.*, and *Duchitanga* and previously worked on *T.R.*  She began her legal career as a Zubrow Fellow and then a staff attorney at the Juvenile Law Center where she represented children in dependency proceedings, drafted amicus briefs to federal courts, and served as a member of the legal team litigating the infamous "Kids for Cash" scandal.  Ms. Desai has also represented individual children in federal immigration custody, including victims of child trafficking and child asylum seekers, in their petitions for individual relief.  Additionally, Ms. Desai has worked on immigration legislation including the federal Trafficking Victims Protection Reauthorization Act of 2008 and California's Trafficking Victims Protection Act of 2005.

14.     Poonam Juneja is a Senior Attorney with NCYL who graduated from Yale Law School in 2009.  Since that time, Ms. Juneja has primarily engaged in impact litigation protecting the rights of children in government custody, including in juvenile justice, child welfare, and immigration settings.  Ms. Juneja focuses on class action litigation within our office.  Cases at NCYL that Ms. Juneja works on currently include *M.B. v. Corsi*, *M.B. and S.E. v. Kelly*, *Flores*, and *Lucas R. v. Azar.*  Ms. Juneja previously worked at Public Counsel and the Southern Poverty Law Center, where she fought to end unconstitutional and abusive conditions of confinement in juvenile detention centers and punitive, unlawful school discipline practices.  While at those firms, she served as co-counsel on a number of federal class action cases addressing the constitutional rights of young people, including *E.W. v. Lauderdale County, Mississippi*, No. 09-137 TSL (S.D. Miss.), and *A.M. v. Jackson Public Schools Board of Trustees*, No. 11-344 TSL (S.D. Miss.).  Ms. Juneja has also clerked for the Honorable Marsha S. Berzon of the Ninth Circuit Court of Appeals and the Honorable Claudia Wilken of the United States District Court for the Northern District of California.

15.     Freya Pitts is a Staff Attorney at NCYL, where she focuses on class action litigation.  She graduated from Yale Law School in 2013.  Cases in our office that Ms. Pitts currently works on include *M.B. v. Corsi*, *M.B. & S.E. v. Kelly*, *Flores*, and *Lucas R. v. Azar*.   Ms. Pitts previously worked at Disability Rights Advocates, first as an Arthur Liman Public Interest Fellow, and then as a staff attorney.  In these roles, she worked to advance the rights of children and youth with disabilities through impact litigation.  For example, as a member of the legal teams working on *G.F. v. Contra Costa County*, No. 14-cv-03667-MEJ (N.D. Cal.), and *T.G. v. Kern County*, 18-cv-00257-DAD (E.D. Cal.), she advocated for the rights of young people with disabilities detained in California juvenile halls, including by seeking to enforce their rights under the Americans with Disabilities Act (ADA) and the Individuals with Disabilities Education Act (IDEA).  Before working at Disability Rights Advocates, Ms. Pitts clerked for the Honorable Judith W. Rogers of the United States Court of Appeals for the District of Columbia Circuit and for the Honorable Jon S. Tigar of the United States District Court for the Northern District of California.

16.     Crystal Adams is a Staff Attorney at NCYL who focuses on impact litigation on behalf of vulnerable children.  Ms. Adams graduated from the University of California Irvine School of Law in 2015.  In addition to *Flores*, Ms. Adams works on *Lucas R.* and *Council of Parent Attorneys and Advocates, Inc. v. DeVos*, No. 18-1636 (D.D.C.), which addresses the U.S. Department of Education's abdication of its obligations to ensure children with disabilities get the education services they need in the most appropriate setting without regard to their race.  Prior to joining NCYL, Ms. Adams worked as a trial attorney for the U.S. Department of Housing and Urban Development, where she pursued injunctions and damages under the Fair Housing Act for victims of discriminatory conduct.  As a student, Ms. Adams worked on *Cruz v. California*, No. 14727139 (Alameda Super. Ct.), an educational equity lawsuit that sought to protect low-income students' access to

DECLARATION OF LEECIA WELCH

1  meaningful learning time, and *Puente Arizona v. Arpaio*, No. 14-1356 (D. Ariz.), a

2  class action aiming to end former-Maricopa County Sheriff Arpaio's

3  unconstitutional workplace raids of businesses employing immigrant workers.

4        17.    Melissa Adamson is a Staff Attorney at NCYL who focuses on impact

5  litigation and policy advocacy on behalf of immigrant children.  Ms. Adamson

6  graduated from U.C. Berkeley School of Law in 2017.  Ms. Adamson currently

7  works on the *Flores*, *Lucas R.*, and *Duchitanga* litigation.  Ms. Adamson has also

8  worked on impact litigation on behalf of youth in foster care whose constitutional

9  privacy interests were being violated.  Additionally, she has directly represented

10  youth in delinquency proceedings, guardianship petitions, and expulsion hearings at

11  the East Bay Community Law Center in Berkeley, California, and Legal Services

12  for Children in San Francisco, California.

13        18.    Kira Setren is a Paralegal at NCYL. Her work focuses on impact

14  litigation on behalf of vulnerable children, including immigrant children in federal

15  custody, as well as youth in the child welfare and juvenile justice systems. Prior to

16  joining NCYL, Ms. Setren worked as a Litigation Paralegal at Cleary Gottlieb

17  Steen & Hamilton LLP, where her work centered primarily on class action suits and

18  pro bono advocacy focused on immigrants' rights, human trafficking, and the

19  unlawful use of sealed records. Ms. Setren has also worked with various nonprofits,

20  government agencies, and volunteer organizations to provide aid and direct service

21  to underserved communities.

22

23  **NCYL's Role in the Motion to Enforce and Subsequent Monitoring Relating to**

24  **the Court's July 30 Order**

25        19.    As noted above, NCYL attorneys have worked on *Flores* since it was

26  filed in 1985. NCYL has dedicated significant resources to the case over the past

27  two years, and, in particular, has devoted over 1,000 hours to Plaintiffs' April 30

28  enforcement motion and related monitoring of the Court's July 30 Order.  NCYL's

DECLARATION OF LEECIA WELCH

work has included conducting extensive legal research on the underlying legal issues; conducting a time-consuming fact investigation involving interviewing numerous class members and preparing declarations; drafting sections of the enforcement motion; reviewing thousands of pages of class member files; and playing an active role in monitoring and enforcement of the Court's July 30 order. NCYL's work on the April 30 enforcement motion was informed by its attorneys' substantial experience in litigation aimed at the reform of child-serving systems.

20.     NCYL attorneys have spent a significant number of hours traveling to visit class members where they were being detained, reviewing their records, and following up with their advocates and sponsors.  As child welfare experts, we understand the importance of conducting client-centered interviews and focusing on the particularized needs of vulnerable children.  Given our commitment to the well-being of our clients, we have also spent hundreds of hours assisting class members with other challenges unrelated to the subject matter of the enforcement motion. We have not included this work in our billable time for this matter.

**NCYL Attorneys' Lodestar on Work Related to the Motion to Enforce and Monitoring the Court's July 30 Order**

21.     NCYL has expended substantial resources related to the preparation of the April 30 motion to enforce and implementation of the Court's July 30 order. NCYL has incurred over $13,000 in costs and expenses.  A true and correct itemization of our costs and expenses is attached as Exhibit B to my declaration. NCYL has advanced these costs out of its own funds and will not seek reimbursement of these costs from the clients.

22.     NCYL has also devoted significant attorney time to this matter.  From March 2017 to March 2019, NCYL attorneys expended more than 1,100 compensable hours on work related to the April 30 motion to enforce and implementation of the Court's July 30 Order.  A true and correct itemization of our

9

DECLARATION OF LEECIA WELCH

billable time is attached as Exhibit C to my declaration.  I have personally reviewed these time entries to ensure accuracy, validity, and compensability under the law. As part of a rigorous exercise to ensure billing judgment, NCYL has waived any time that seemed redundant, inefficient, or not reasonably connected to issues upon which Plaintiffs were the prevailing party, amounting to more than 120 hours in deductions.  In addition, NCYL has also waived the time of all law clerks who assisted NCYL with the litigation, which amounted to more than 100 hours.  The services for which fees have been charged are reasonable and were actually and necessarily performed.

23.     NCYL's attorneys and paralegal are trained on how to maintain contemporaneous attorney fee logs, billed to the one-tenth of an hour, to keep track of their time.  All of NCYL's attorneys and NCYL's paralegal on this case maintained contemporaneous electronic attorney fee logs.  Our fee logs are recorded contemporaneously in excel spreadsheets or into a timekeeping application, and are then uploaded to our file sharing system by NCYL's paralegal. These logs are reviewed quarterly to ensure that records have been accurately maintained.

24.     NCYL attorneys bill for their time based on their respective levels of experience.  NCYL has calculated its lodestar based on the established EAJA rates, with the exception of my rate for which we are seeking a specialist rate based on my child welfare expertise, as discussed above and in declarations submitted by John F. O'Toole and Richard Pearl.  Even this specialist rate is lower than the prevailing market billing rates in the Bay Area where I practice law.

25.     The specialist rate is justified given my particularized expertise in child welfare issues and substantial experience litigating civil rights issues on behalf of youth in government custody.  My expertise in the reform of child welfare systems informed Plaintiffs' litigation of numerous issues raised in the April 30, 2018 enforcement motion, including standards for the treatment of children in

DECLARATION OF LEECIA WELCH

government custody, the types of settings in which children in government custody may be placed, procedural safeguards generally in place for youth in foster care, licensing standards, and the process by which foster care placements are approved. In addition, my expertise regarding oversight of the use of psychotropic medications in foster care systems was critical to Plaintiffs' success in challenging the government's failure to comply with Texas's child welfare laws and regulations regarding the administration of such medications to class members at Shiloh Residential Treatment Facility.  To my knowledge, few attorneys in the country have comparable expertise, especially on issues relating to the improper administration of psychotropic medications to children in government custody. Moreover, this rate is comparable to the rates that other civil rights attorneys have received in this case and that I have received for litigating other civil rights cases on behalf of youth.  A summary of NCYL's billing on this matter is attached as Exhibit D.

26.     As has been NCYL's practice for forty-five years, Plaintiffs' counsel will not be seeking payment of attorney's fees or costs from any individual Plaintiffs.  NCYL undertook this work without any payment from the clients and with the knowledge that it might not recover its attorney's fees or out-of-pocket expenditures.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED this 19th of April, 2019 in Kansas City, Missouri.

_____
LEECIA WELCH

11

DECLARATION OF LEECIA WELCH

# Exhibit A

405 14th Street, 15th Floor       Phone: 510/835-8098 ext. 3023
Oakland, California              Fax: 510/835-8099
94612                           E-mail lwelch@youthlaw.org

# Leecia Welch

**Professional
Experience**

**National Center for Youth Law**
Oakland, CA
*Senior Director, Legal Advocacy and Child Welfare*
August 2016-present
*Senior Attorney,*
November 2004-August 2016

- Senior Director, Legal Advocacy and Child Welfare specializing in complex litigation, civil rights class action cases, and policy initiatives related to improving the lives of children in foster care.
- Lead Counsel in *David C. v. Leavitt*, a federal statewide class action resulting in significant improvements to Utah's foster care system, *T.R. v. Quigley*, a federal statewide class action to improve access to community-based children's mental health services for Medicaid-eligible children in Washington, and multiple California state court cases focusing on adoption subsidies, foster youth access to reproductive health care, and foster youth education rights.
- Co-counsel on class action and putative class action cases in Missouri, Kansas, New York and California focused on protecting the constitutional rights of children and improving state and federal foster care systems, access to children's mental health services, and special education systems.
- Policy and training expertise in child-serving system reform, foster youth education issues, and sibling rights.

**Morrison & Foerster LLP**
San Francisco, CA
*Senior Associate,* Litigation Department
September 2000- November 2004

- Provided full range of litigation services on complex litigation disputes, including acting as senior associate on class action aimed at reforming the State of California's public school system.
- Conducted and defended depositions of expert and lay witnesses; argued various motions; and prepared numerous briefs, including 400-page California education system liability disclosure statement.
- Participated on trial team of a habeas corpus case, including drafting portions of trial brief and post-trial brief and cross-examining witnesses

in federal court.

**Perkins Coie LLP**
Seattle, WA
*Associate*, Litigation Department
October 1996-October 1997, January 1999-June 2000

- Provided full range of litigation services on class action lawsuits, cases involving complex contract and technology disputes and intellectual property matters.
- Conducted and defended depositions of expert and lay witnesses and worked extensively with experts focusing on technology and intellectual property issues.
- Focused extensive pro bono efforts on representation of juveniles in criminal cases, grandparents in custody cases, parents in adoptions, and guardians *ad litem* in suits on behalf of children.

**CIVITAS Initiative**                                                      Chicago, IL
*Children's Law Fellow*
November 1997- November 1998

- Responsible for the development and implementation of all programs and initiatives related to children's legal issues.
- Represented children and families in a variety of legal matters.
- Participated in the development of materials, curriculum and training for professionals and caregivers interfacing with the court system.

**Education**          **Loyola University Chicago School of Law**          Chicago, IL
J.D. awarded May 1996, *Magna Cum Laude*
Cumulative GPA: 3.79/4.00    Class Rank: 4 out of 184

Academic Honors and Activities
Eve Jacobs CIVITAS ChildLaw Fellowship Recipient
Editor, Loyola University Chicago Law Journal and Children's Legal Rights Journal
Williams Fellow Research Assistant and Children's Law Legal Writing Teaching Assistant

**Northwestern University**
B.A with Distinction and Honors in English, June 1992
Evanston, IL
Cumulative GPA: 3.78/4.00; Phi Beta Kappa

| | |
|---|---|
| **Professional Activities and Honors** | • 2005 California State Bar President's Pro Bono Services Award (*Williams v. State of California* team), 2007 Recipient of the American Bar Association Young Lawyers Division Child Advocacy Award, 2014 Impact Fund Award (*T.R. v. Quigley* team) |
| | • Occasional Adjunct Professor at University of California, Berkeley School of Law teaching course entitled Child Welfare Reform Litigation and Co-Supervisor for Foster Education Project student-led clinic |

# Neha Desai, Esq.

ndesai@youthlaw.org

---

Education:

**University of California, Berkeley School of Law,** Juris Doctorate, 2006
> Selected Activities: Berkeley Journal of Gender, Law & Justice: *Article Screener & Symposium Speakers Chair*; Center for Social Justice: *Student Advisory Board*; Coalition for Diversity: *Outreach Chair*; South Asian Law Students Association; Student Liaison for Faculty Hiring Committee
> International Human Rights Clinic; California Asylum Representation Clinic; Domestic Violence Clinic

**University of Chicago**, Bachelor of Arts, 2002
> History with Departmental and General Honors; Dean's List every quarter

Work Experience:

**National Center for Youth Law**                                    *Winter 2014 – Present*
*Director, Immigration*
> Lead National Center for Youth Law's work on behalf of immigrant children, including litigation, policy and stakeholder education efforts.

**County of Santa Clara**                                    *Fall 2012 – Winter 2014*
*Policy Advisor, Dually Involved Youth Initiative*
> Led Macarthur Foundation funded reform initiative designed to improve outcomes for youth involved in the juvenile justice and child welfare systems.  Worked with juvenile court judges, agency directors and other key leaders to develop new policies and procedures.

**Center for Gender and Refugee Studies**                                    *Fall 2011- Fall 2012*
*Attorney*
> Provided technical assistance on intakes regarding refugee children.  Drafted legal resources on complex arena of asylum law.  Contributed to various litigation and policy efforts on behalf of refugee youth.

**Casa Cornelia Law Center**                                    *Summer 2010- Fall 2010*
*Attorney*
> Represented detained unaccompanied minors in immigration proceedings and asylum hearings. Interviewed children, counseled children on their options, prepared applications for immigration relief.

**Juvenile Law Center**                                    *Fall 2006- Summer 2010*
*Zubrow Fellow/ Staff Attorney*
> Represented children in abuse & neglect proceedings.  Drafted *amicus* briefs to the U.S. Supreme Court & lower federal courts.  Worked on federal and state policy reform initiatives.  Conducted trainings on the legal rights of youth in foster care.  Drafted pleadings for federal class action civil rights litigation.

Selected Honors:

- Casa Cornelia Law Center Pro Bono Publico: *"for outstanding contribution to the legal profession"*
- First Judicial District 2010 Pro Bono Roll of Honor, Support Center for Child Advocates
- Boalt Hall Pro Bono Service: *Recognizing graduating students for substantial pro bono service*
- Boalt Hall Fellowship; Dorothy M. Williams Fund: *Funds public interest legal internships*
- Maroon Key Society: *University Honorary society, "serve as advisors to the Dean"*
- Perry Herst Prize: *Awards the combination of "study with social responsibility"*
- Howell Murray: "*One of the College's highest honor" awarded for "outstanding contribution"*
- Human Rights Fellow: *Awarded to students with exemplary commitment to international human rights*

# POONAM JUNEJA

5971 Keith Avenue, Oakland, CA 94618 • poonam.juneja@gmail.com • (925) 858-8606

## EDUCATION

**Yale Law School**, J.D., 2009

*Selected Activities:*      Immigration Legal Services Clinic; Advocacy for Children and Youth Clinic; Pro bono research for the Brennan Center for Justice and Human Rights First; Senior editor, *Yale Law and Policy Review*

*Selected Honors:*      Florence M. Kelly '37 Family Law Prize for exceptional achievement in family law

**University of Cambridge**, M.Phil in Criminology, 2006

*Thesis:*      *Ideas about children in the juvenile justice system: The use of transfer in the United States and the abolition of the presumption of* doli incapax *in England and Wales*

**University of California, Berkeley**, B.A. in Sociology and Legal Studies, 2005

*Thesis:*      *Cultural versus structural explanations for delinquency among immigrant groups: An examination of Asian and Pacific Islander youth in Oakland, California* (Advisor: Franklin Zimring)

*Selected Honors:*      Highest Distinction in General Scholarship (*summa cum laude*)
Departmental Citation in Legal Studies (awarded to the top graduating student)

## WORK EXPERIENCE

**National Center for Youth Law**, Oakland, CA, *Senior Staff Attorney*      2015-present
Work as part of a team to develop and litigate class action and other impact cases on behalf of children in need, with a focus on reforming child welfare systems.

**Public Counsel**, Berkeley, CA, *Staff Attorney*      2014-2015
Assisted school districts and community leaders across the state to implement research-based alternatives to punitive school discipline practices. Worked on class action litigation to reform education in the juvenile justice system and end the school-to-prison pipeline. Helped lead state legislative and policy reform efforts around these areas.

**Honorable Marsha S. Berzon**, Ninth Circuit Court of Appeals, *Law Clerk*      2013-2014

**Honorable Claudia Wilken**, Northern District of California, *Law Clerk*      2011-2013

**Southern Poverty Law Center**, Jackson, MS, *Law Fellow*      2009-2011
Designed and implemented legal and policy strategies to reform Mississippi's juvenile justice system and to reduce the criminalization and imprisonment of children. Represented children in federal class action lawsuits challenging conditions of confinement in juvenile facilities and abusive school discipline practices.

**Office of the State Public Defender**, San Francisco, CA, *Legal Intern*      Summer 2008
Researched and drafted memoranda regarding possible state habeas corpus claims related to newly discovered evidence and mitigating factors in a death penalty case.

**United States Attorney's Office,** New Haven, CT, *Legal Extern*      Fall 2007

**Federal Bureau of Investigation**, Washington, DC, *Honors Intern*      Summer 2007

**National Council on Crime and Delinquency**, Oakland, CA,
*Intern, Research Assistant, Research Associate*      2002-2005
Co-authored multiple reports using quantitative research methods to analyze the well-being of minority youth populations in Northern California on a number of dimensions, including education, juvenile justice, and health.

## BAR ADMISSIONS

Admitted to practice in California and Mississippi.

# FREYA E. K. PITTS

Attorney, Legal Advocacy ▪ National Center for Youth Law
405 14th Street, 15th Floor ▪ Oakland, CA 94612 ▪ (510) 899-6572 ▪ fpitts@youthlaw.org

## EDUCATION

**YALE LAW SCHOOL,** J.D., 2013
    Khosla Memorial Fund for Human Dignity Prize

**YALE UNIVERSITY,** B.A., 2008
    *summa cum laude*, with Distinction in History and International Studies

## EXPERIENCE

**NATIONAL CENTER FOR YOUTH LAW,** Oakland, California        Aug. 2018 – present
*Attorney, Legal Advocacy*
- Develop and litigate impact cases on behalf of marginalized children and youth nationwide, including in cases related to child welfare, mental health, immigration, and education.
- Draft complaints, motions, briefs, and research memoranda; collaborate with clients, co-counsel, and expert witnesses; engage in discovery; pursue alternative dispute resolution; monitor compliance with post-litigation settlement agreements.

**DISABILITY RIGHTS ADVOCATES,** Berkeley, California
*Staff Attorney*        Sept. 2017 – Aug. 2018
*Arthur Liman Public Interest Fellow*        Sept. 2015 – Sept. 2017
- Developed and litigated impact cases in California and New York, focusing on the needs of youth with disabilities, including young people in juvenile halls, in schools, on college campuses, and in childcare programs.
- As a fellow, represented individual youth in expulsion defense proceedings as a member of the Legal Services for Children Pro Bono Panel.

**HON. JON S. TIGAR,** U.S. District Court for the Northern District of California    Sept. 2014 – Sept. 2015
*Law Clerk*

**HON. JUDITH W. ROGERS,** U.S. Court of Appeals for the D.C. Circuit    Aug. 2013 – Aug. 2014
*Law Clerk*

**LOWENSTEIN INTERNATIONAL HUMAN RIGHTS CLINIC,** Yale Law School    Jan. 2011 – May 2013
*Student Director and Law Student Intern*
- Pursued sentencing reform in Connecticut state legislature for prisoners convicted as minors.
- Developed recommendations for protection and support of survivors of sexual violence testifying in international criminal trials.
- Prepared amicus brief for Bangladesh International Crimes Tribunal discussing crimes against humanity.

**IMMIGRATION LEGAL SERVICES CLINIC,** Yale Law School    Jan. 2012 – May 2013
*Student Director and Law Student Intern*
- Obtained relief for client in removal proceedings advancing domestic violence-based asylum claim.
- Assisted clients with post-asylum immigration matters, including family reunification.

**ADVOCACY FOR CHILDREN AND YOUTH CLINIC,** Yale Law School                    Jan. 2013 – May 2013
*Law Student Intern*
- Represented child clients in child protection proceedings in the New Haven Superior Court for Juvenile Matters.

**TAHIRIH JUSTICE CENTER,** Falls Church, Virginia                    May 2012 – Aug. 2012
*Immigration Law Intern*
- Provided trauma-informed legal services to women fleeing gender-based harm, including domestic violence, sexual assault, forced marriage, and female genital cutting.
- Conducted client and intake interviews; drafted filings in asylum, Violence Against Women Act, T-visa, and U-visa cases; conducted country conditions research; coordinated supporting documentation from expert witnesses; and provided support to pro bono counsel.

**DOUGHTY STREET CHAMBERS & DEATH PENALTY PROJECT,** London, U.K.      June 2011 – Aug. 2011
*Human Rights Research Fellow*
- Researched and wrote litigation memoranda for immigration, extradition, criminal, and prisoners' rights cases in British, foreign, and international courts.

**RENAISSANCE MIDDLE SCHOOL / TEACH FOR AMERICA,** Fairburn, Georgia        July 2008 – June 2010
*Social Studies Teacher*
- Led classroom instruction and extracurricular enrichment for middle school students in a low-income urban community.
- Developed original global studies curriculum based on revised state standards.

# PUBLICATIONS

*The Power to Detain: Detention of Terrorism Suspects After 9/11*, 38 YALE J. INT'L L. 123 (2013) (with Oona Hathaway, Samuel Adelsberg, Spencer Amdur, Philip Levitz, and Sirine Shebaya).

*The Chilling Effect of the 'Material Support' Law on Humanitarian Aid: Causes, Consequences, and Proposed Reforms*, 4 HARV. NAT'L SEC. J. 282 (2013) (with Samuel Adelsberg and Sirine Shebaya).

# OTHER SKILLS AND QUALIFICATIONS

*Languages:* Proficient French (written and spoken).

*Bar Memberships:* State of California; U.S. Court of Appeals for the D.C. Circuit; U.S. Court of Appeals for the Ninth Circuit; U.S. District Court for the Northern District of California; U.S. District Court for the Eastern District of California; U.S. District Court for the Central District of California.

# CRYSTAL ADAMS

cadams@youthlaw.org ◆ (408) 679-7010 ◆ 1201 W Mount Royal Ave., Unit 406, Baltimore, MD 21217

## EXPERIENCE

**National Center for Youth Law,** Washington, D.C.                        October 2017 – Present
*Attorney, Legal Advocacy Team.*

Co-counsel enforcing the *Flores v. Sessions* settlement agreement, which provides national standards for the treatment and placement of detained immigrant youth.  Drafted numerous documents in support of Plaintiffs' motion to enforce, including the memorandum of points and authorities, application for leave to proceed using pseudonyms, and class member declarations.

Co-counsel representing detained immigrant youth in *Lucas R. v. Azar,* a federal class action suit challenging: (1) their inappropriate detention in unnecessarily restrictive detention centers without due process, (2) their unlawful medication without parental or other appropriate authorization, (3) the government's failure to promptly release them to family members in the United States, and (4) the government's denial of access to legal counsel.  Drafted portions of the complaint, Plaintiffs' application for leave to proceed using pseudonyms, and client declarations. Interview class members and clients in federal immigration detention centers across the country.

Litigating *Council of Parent Attorneys and Advocates, Inc. v. DeVos,* a federal suit challenging the U.S. Department of Education's abdication of its obligations to ensure children with disabilities receive the education services they need in the most appropriate setting without regard to their race.

**U.S. Department of Housing and Urban Development,** Washington, D.C.            August 2015 – September 2017
*Trial Attorney, Office of General Counsel, Fair Housing Enforcement Division.*

Investigated complaints of discriminatory conduct and sought injunctive and monetary relief for complainants.

Drafted policy guidance, regulations, and legal memoranda interpreting the application of the Fair Housing Act on novel civil rights matters.

Trained HUD staff and external stakeholders on fair housing matters.

Reviewed state and local fair housing laws to determine whether those jurisdictions could prosecute federal Fair Housing Act violations.  Reviewed departmental clearance documents to ensure they complied with fair housing laws.

**U.S. Department of Education,** Washington, D.C.                    September 2014 – December 2014
*Full-time Legal Extern, Office for Civil Rights, University of California D.C. Law Program.*

Drafted legal and policy memoranda and talking points for external stakeholders on policy projects interpreting the application of Title VI of the Civil Rights Act of 1964 on novel civil rights matters.

Edited policy guidance.  Helped develop policy and enforcement strategies regarding compliance reviews.

**University of California, Irvine School of Law Immigrant Rights Clinic,** Irvine, CA            Spring 2014, Spring 2015
*Student Attorney.*

Litigated *Puente Arizona v. Arpaio,* a federal class action suit on behalf of a grassroots, community-based organization, challenging unconstitutional immigration law enforcement practices in Maricopa County, Arizona. Drafted portions of the complaint.  Interviewed and retained clients.  Researched federal preemption claims.

Investigated wage theft on behalf of immigrant truck drivers who filed claims with the California Division of Labor Standards Enforcement.

Researched labor rights violations against warehouse workers in the San Bernardino Valley.

# CRYSTAL ADAMS

cadams@youthlaw.org ◆ (408) 679-7010 ◆ 1201 W Mount Royal Ave., Unit 406, Baltimore, MD 21217

**Lawyers' Committee for Civil Rights Under Law,** Washington, D.C.          May 2014 – August 2014
*Legal Intern.*

> Drafted legal memoranda analyzing how rules of professional conduct limited counsel from interviewing certain employees of a school district that was a prospective defendant.

> Prepared testimony and briefing materials for congressional hearings.  Met with Hill and White House staffers to advocate for voting rights, immigrant rights, and criminal justice reform.

> Drafted white papers for the Director of the Public Policy Project and other senior attorneys on racial justice initiatives such as the school-to-prison pipeline, juvenile justice, and diversity of federal judicial nominations.  Participated in coalition meetings.

**Public Counsel, Impact Litigation Project,** Los Angeles, CA          May 2013 – August 2013
*Law Clerk.*

> Conducted legal research and fact investigation for five class action suits, including *Cruz v. California*, an educational equity suit that sought to protect students' access to meaningful learning time under a novel case theory.  Drafted declarations for witnesses and prospective plaintiffs and participated in client interviews.

> Composed legal memoranda analyzing California's Labor Code Private Attorneys General Act and exemptions to requests under the California Public Records Act.

## EDUCATION

**University of California, Irvine School of Law,** Irvine, CA
*Juris Doctor*, May 2015

> Honors: Pro Bono Honors (200 hours over three years); Pro Bono Leadership Award; Immigrant Rights Clinic (top grade); Education Law and Policy Course (second highest grade)

> Activities: UC Irvine Law Review, *Staff Editor*; Black Law Students Association, *President*

**Claremont McKenna College,** Claremont, CA
*Bachelor of Arts in Government and Psychology, Leadership Studies Sequence,* May 2012

## COMMUNITY LEADERSHIP

**University of California, Irvine School of Law Alumni Association,** *Council Member & Alumni Liaison to the Career Development Office* (2016 – Present) – Coordinate initiatives with the Career Development Office to promote alumni engagement with students in their career search.  Facilitate social activities among alumni and students.

**The Posse Foundation,** *Volunteer* (2016 – 2017) – Helped a Posse Scholar transition from high school to college-level writing.  Evaluated hundreds of high school students to help select Posse Scholars.

## BAR ADMISSIONS

California
U.S. District Court for the Central District of California

# Melissa A. Adamson

405 14th Street, 15th Fl., Oakland, CA 94612 • 510.899.6573 • madamson@youthlaw.org

---

## EDUCATION

**University of California, Berkeley, School of Law**                                   **Berkeley, CA**
*Juris Doctor,* Order of the Coif                                                                          **May 2017**

    Honors:    Best Oral Argument Award; 1L Competition, 2015
                Jessup International Law Moot Court; Best Individual Oralist Award for Pacific Region, 2016
                Best Oral Advocate, Berkeley Law Moot Court Team, 2016
                Herma Hill Kay Fellow, 2015 (awarded to students advancing women's interests in law)
                University of Michigan Bergstrom Child Welfare Law Fellow, 2016
                Justice John Paul Stevens Public Interest Fellow, 2016
    Journals:   *California Law Review* (Executive Board, Technology & Communications Editor)
    Activities*:*  Foster Education Project (Chair), Moot Court Team, Written & Oral Advocacy Teaching Assistant

**Tufts University**                                                                                          **Medford, MA**
*Bachelor of Arts with Honors, International Relations and Community Health*                **May 2011**

    Honors:    Dean's List (7 semesters), Wendell-Phillips Award Finalist (oral advocacy and public service)
    Abroad:    Pontificia Universidad Católica Argentina, Buenos Aires, Argentina (Spring 2010)

---

## RELEVANT EXPERIENCE

**National Center for Youth Law**                                                          **Oakland, CA**
*Attorney – Immigration & Legal Advocacy Teams*                          **September 2018 - Present**
*Berkeley Law Public Interest Fellow*                                      **September 2017 – September 2018**
- Litigation: Investigate, develop, and assist in litigating class action cases on behalf of unaccompanied immigrant youth (*Flores, Lucas R., Duchitanga*).
- Policy: Research, publish, and present educational materials for judges, state and federal legislators, providers, caregivers, and youth. Provide technical assistance to state and federal legislators on potential legislation and hearings.

**Legal Services for Children**                                                          **San Francisco, CA**
*Law Clerk – Immigration, Education, & Guardianship Divisions*                          **Summer 2016**
- Prepared and filed client declarations and court forms in SIJS, DACA, asylum, and guardianship cases.
- Represented clients in school expulsion hearings and negotiated settlements with school districts.

**East Bay Community Law Center**                                                          **Berkeley, CA**
*Advanced Clinical Student – Education Defense and Justice for Youth Clinic*               **Spring, Fall 2016**
- Represented clients in school expulsion hearings, Individualized Education Program meetings, Manifestation Determination Review hearings, and juvenile court proceedings.
- Researched, wrote, and filed appellate briefs regarding juvenile restitution and record sealing.

**National Center for Youth Law**                                                          **Oakland, CA**
*Summer Law Clerk, Fall Extern – Health & Legal Advocacy Teams*                    **June – December 2015**
- Drafted sections of complaint and petitions for writ of mandate, researched potential claims, and assisted in civil rights litigation related to the reproductive health rights of foster youth in group homes.
- Researched novel issues of youth and health law, wrote legal and policy memoranda, and responded to community requests for assistance.

**Foster Education Project, UC Berkeley School of Law**                                                  **Berkeley, CA**
*Co-Chair, Member*                                                                                  **Fall 2014 – Spring 2017**
- Trained first-year law students to be educational rights holders for local foster youth and collaborated with local attorneys to provide trainings on disability and education law.

**Bay Area Legal Aid**                                                                           **San Francisco, CA**
*Law Clerk – San Francisco Medical-Legal Partnership*                                                    **Summer 2014**
- Conducted client intake for pediatric patients in special needs clinics at San Francisco General Hospital.
- Provided assistance for legal issues including education, disability rights, public benefits, and housing.

**St. Louis Society for the Physically Disabled**                                                       **St. Louis, MO**
*Community Training Specialist*                                                                     **August 2013 – June 2014**
- Conducted assessments and implemented service plans for children and adults with disabilities.

**SeriousFun Children's Network Global Partnership Program**                                               **Botswana**
*Field Consultant – Camp Hope Botswana*                                                                  **Summer 2013**
- Trained local leadership team to direct the first year of Camp Hope, a camp for children with HIV.

**The Painted Turtle**                                                                              **Santa Monica, CA**
*Hospital Outreach Program Manager*                                                                  **August 2011 – May 2013**
- The Hospital Outreach Program brings therapeutic activities to children in pediatric hospitals.
- Independently expanded program by 80% to serve seven new hospitals and dialysis centers.
- Hired, trained, and supervised over 200 volunteers and five interns.

## SELECTED PRESENTATIONS & PUBLICATIONS

Neha Desai, Melissa Adamson, Maureen Allwood, Carly Baetz, Emma Cardeli, Osob Issa, Julian Ford, *Primer for Juvenile Court Judges: A Trauma-Informed Approach to Judicial Decision-Making for Newcomer Immigrant Youth in Juvenile Justice Proceedings* (Feb. 2019), available at https://youthlaw.org/wp-content/uploads/2019/02/Judicial-Primer_FINAL.pdf.

Melissa Adamson, *Minor Consent and Confidentiality*, California Department of Health Care Services, Medi-Cal Managed Care Quality and Monitoring Division (Presented July 2018), UCSF Valley Children's Hospital Fresno (Presented March 2019).

Neha Desai, Melissa Adamson, *Child Welfare and Immigration: Implications for Funders*, Publication by the National Center for Youth Law (June 2018).

Hon. Maria D. Hernandez, Hon. Margaret Henry, Melissa Adamson, *NMD & TAY – Meeting Their Needs, Addressing Homeless, and Ensuring Their Rights to Sexual and Reproductive Health Care and Information*, Juvenile Law Institute, Judicial Council (Presented June 2018).

Melissa Adamson, *HIPAA, FERPA, and Sharing Information in a School Setting*, Tamalpais Union School District (Presented January 2018), Roseville Joint Union School District (Presented April 2018).

## ORGANIZATIONS AND INTERESTS

**Admitted to the California Bar (July 2017)**
**Languages:** Spanish (proficient)

# KIRA SETREN

405 14th St., 15th Fl. • Oakland, CA 94612 • 510 435 2185 • ksetren@gmail.com

## EDUCATION

**Brandeis University**, Waltham, MA                                    January 2012-May 2015
- Bachelor of Arts, International and Global Studies; Minors: Business, Hispanic Studies
- Honors: *Magna cum laude*, Dean's List every semester; Gold medal in community service

**City University**, London, UK                                    September-December 2011
**International Institute**, Madrid, Spain                                    January-May 2014

## RELEVANT EXPERIENCE

**National Center for Youth Law**, Oakland, CA                                    January 2018-Present
*Paralegal*
- Assist with impact litigation aimed at reforming the systems that serve vulnerable children and youth
- Perform factual and legal research; gather and analyze evidence to bolster legal claims
- Prepare court filings: edit, bluebook, cite-check, review court rules, and ECF file legal documents
- Draft case declarations, filings, and correspondence; conceptualize, author, and publish media communications
- Create and implement internal programs and systems; prepare guides and lead trainings
- Collaborate across campaigns to develop and further organizational goals; assist with nonprofit growth

**Cleary Gottlieb Steen & Hamilton LLP**, New York, NY                                    July 2015-January 2018
*Litigation Paralegal*
- Provided litigation assistance for robust caseload of high-profile and pro bono matters
- Worked on all aspects of case development from engagement through discovery, settlement, and trial
- Interacted extensively with clients; prepared, participated in, and memorialized client interviews
- Conducted, organized, and analyzed legal, internet, factual, social science, and field research
- Drafted, edited, and managed court documents; developed and maintained databases and case materials
- Oversaw paralegal teams; liaised with counsel, internal and external departments, and vendors

**United States Agency for International Development**, Washington, DC                                    June-September 2014
*Intern, Bureau for Policy, Planning and Learning*
- Assisted in the planning and implementation of the Frontiers in Development Forum: multi-day event that brought together global leaders and the public to further goal of ending extreme poverty by 2030
- Staffed forum, interacted with visiting leaders and attendees in a professional manner

**ILP Abogados**, Madrid, Spain                                    February-May 2014
*Legal Intern*
- Researched and distilled Spanish and U.S. civil procedure for use in international law digest
- Translated documents from Spanish to English and proofread materials

**WorldBoston**, Boston, MA                                    July-August 2013
*Program Assistant*
- Planned, executed, and oversaw private meetings with international and local leaders
- Researched and drafted proposals for U.S. State Department; created original blog and social media content

**Community Art Center,** Cambridge, MA                                    June-August 2013
*Administrative and Marketing Intern*
- Provided marketing and operational support for enrichment program that served low-income youth
- Wrote, edited, and designed publications that were delivered to 2,000+ subscribers

## PERSONAL
- Language: Proficient in Spanish

# Exhibit B

| Date | Biller | Expense Description | Amount |
|---|---|---|---|
| 05/15/17 | Neha Desai | Lunch expense for Neha's Flores site monitoring visit to Fairfield (staff secure) | $7.70 |
| 05/15/17 | Neha Desai | Mileage expense for Neha Desai's site monitoring tour and interviews at BCFS facility in Fairfield | $51.36 |
| 05/16/17 | Poonam Juneja | Lunch expense (Swagat Indian Cuisine) for Leecia's, Poonam's, and Neha's Flores site monitoring visit to Yolo | $35.54 |
| 05/16/17 | Leecia Welch | Breakfast expense at Savory Cafe for Leecia's, Poonam's, and Neha's Flores site monitoring visit to Yolo | $39.12 |
| 05/16/17 | Poonam Juneja | Mileage and toll for Flores site monitoring visit to Yolo | $90.07 |
| 10/25/17 | Neha Desai | Lunch expense for Neha's Flores site monitoring visit to Yolo | $15.00 |
| 10/25/17 | Poonam Juneja | Breakfast and Lunch per diem for Poonam's Flores site monitoring visit to Yolo | $25.00 |
| 10/25/17 | Neha Desai | Mileage and toll for Poonam's and Neha's Flores site monitoring visit to Yolo | $86.32 |
| 11/02/17 | Poonam Juneja | Virgin America Flight to New York on Nov. 14 for monitoring visit to Children's Village and MercyFirst | $143.20 |
| 11/02/17 | Poonam Juneja | JetBlue Flight from New York on Nov. 15 for monitoring visit to Children's Village and MercyFirst | $158.20 |
| 11/03/17 | Crystal Adams | Amtrack (NYP -> BAL) for 11/16/17 return from Flores monitoring visist to Children's Village and MercyFirst | $84.00 |
| 11/03/17 | Crystal Adams | Amtrack (WAS -> NYP) for 11/14/17 travel to Children's Village and MercyFirst for Flores monitoring | $122.00 |
| 11/07/17 | Neha Desai | Parking at Oakland airport for Flores monitoring trip | $72.00 |
| 11/07/17 | Crystal Adams | Hampton Inn & Suites Yonkers - Hotel booking for Flores monitoring visist to Children's Village and MercyFirst | $185.25 |
| 11/09/17 | Crystal Adams | Comfort Inn - Hotel booking for Flores monitoring visist to Children's Village and MercyFirst | $119.52 |
| 11/14/17 | Poonam Juneja | Bart ride for trip to airport on Nov. 14 for monitoring visist to Children's Village and MercyFirst | $9.50 |
| 11/14/17 | Crystal Adams | Pret A Manger - dinner purchased at DC union station | $15.38 |
| 11/14/17 | Crystal Adams | Lyft ride from NY Penn station to hotel | $102.00 |
| 11/15/17 | Crystal Adams | Panera Bread - lunch bought during Mercy First visit | $13.34 |
| 11/15/17 | Poonam Juneja | Comfort Inn - Hotel for night of Nov. 14 for monitoring visit to CV/MercyFirst | $113.58 |
| 11/16/17 | Crystal Adams | Don Pepi Pizza - dinner bought at NY Penn station | $8.00 |
| 11/16/17 | Crystal Adams | Chipotle - lunch bought during Children's Village visit | $8.01 |
| 11/16/17 | Crystal Adams | Aphalad Investment Inc - taxi from train station to home | $8.10 |
| 11/16/17 | Poonam Juneja | Lyft ride from airport on Nov. 16 (monitoring visit to CV/MercyFirst) | $49.50 |
| 11/16/17 | Poonam Juneja | Hampton Inn - Hotel for night of Nov. 15 for monitoring visit to CV/MercyFirst | $150.97 |
| 11/16/17 | Poonam Juneja | Car Rental from Budget Rental Car for monitoring visit to Children's Village and MercyFirst | $318.37 |
| 11/17/17 | Poonam Juneja | Gas in rental car during monitoring visit | $14.72 |
| 11/17/17 | Poonam Juneja | Full day Per Diem for Poonam's Flores site monitoring visit to Children's Village & MercyFirst for 11/14-11/16 | $135.00 |
| 11/18/17 | Leecia Welch | Flight to and from Texas for Shiloh RTC monitoring | $457.98 |
| 11/24/17 | Poonam Juneja | Tolls during Poonam Juneja's and Crystal Adams's site monitoring visits to Children's Village & MercyFirst | $28.85 |
| 11/30/17 | Leecia Welch | Lunch expense at Zoe's for Leecia's and Neha's Flores site monitoring visit to Shiloh RTC | $13.52 |
| 11/30/17 | Neha Desai | Lunch expense at Zoe's for Leecia's and Neha's Flores site monitoring visit to Shiloh RTC | $13.93 |
| 11/30/17 | Leecia Welch | Lunch expense at Chipotle for self and interpreters for Flores site monitoring visit to Shiloh RTC | $40.27 |
| 11/30/17 | Leecia Welch | Taxi to client meetings for site monitoring trip for Shiloh RTC | $48.15 |
| 12/01/17 | Neha Desai | Lunch expense for Neha's Flores site monitoring visit to Shiloh RTC | $9.50 |
| 12/01/17 | Neha Desai | Lyft to Shiloh RTC Neha Desai's and Leecia Welch's site monitoring trip | $22.94 |
| 12/02/17 | Neha Desai | Meal expense for Flores site monitoring visit to Shiloh RTC | $12.98 |
| 12/02/17 | Leecia Welch | Meal expense for Flores site monitoring visit to Shiloh RTC | $14.96 |
| 12/02/17 | Leecia Welch | Breakfast for site monitoring trip to Shiloh RTC | $17.70 |
| 12/02/17 | Leecia Welch | Parking at Oakland airport for Flores Shiloh monitoring trip | $58.00 |
| 12/02/17 | Leecia Welch | Hotel expense for site monitoring trip to Shiloh RTC | $385.33 |
| 12/02/17 | Neha Desai | Hotel expense for site monitoring trip to Shiloh RTC | $398.21 |
| 12/07/17 | Melissa Adamson | Payment for child materials for Leecia's and Neha's site monitoring trip to Shiloh RTC | $22.35 |
| 12/07/17 | Melissa Adamson | Payment to interpreter for translating UAC interviews at Shiloh RTC | $80.00 |
| 12/14/17 | Leecia Welch | Uber to airport for Neha Desai's and Leecia Welch's site monitoring trip for Shiloh RTC | $63.70 |
| 02/07/18 | Crystal Adams | Lyft - travel from NoVa detention to office | $18.00 |
| 02/07/18 | Crystal Adams | The Club B&S - meal expense - NoVa monitoring visit | $18.60 |
| 02/07/18 | Crystal Adams | Lyft - travel from office to NoVa detention center | $18.76 |
| 02/21/18 | Crystal Adams | 2/26/18 Southwest flight (BWI--HOU) for Flores monitoring trip to Shiloh and Southwest Key Mesa | $255.98 |
| 02/21/18 | Crystal Adams | 3/1/18 Southwest flight (HOU--DCA) returning from Flores monitoring trip to Shiloh and Southwest Key Mesa | $342.98 |

| 02/26/18 | Crystal Adams | Lyft - travel (home -> BWI) for Shiloh and Southwest Key Mesa facility visits | $27.00 |
|---|---|---|---|
| 02/26/18 | Crystal Adams | Taxi - travel (HOU airport -> Best Western hotel) for Shiloh and Southwest Key Mesa facility visits | $27.05 |
| 02/26/18 | Crystal Adams | Paradise Shops - BWI - Youth materials for Crystal Adams's Flores monitoring trip at Shiloh RTC | $35.99 |
| 02/27/18 | Crystal Adams | Chipotle - lunch bought during Flores monitoring visit | $9.63 |
| 02/28/18 | Crystal Adams | La Quinta Inn - 1 night stay in TX for Flores monitoring | $104.43 |
| 02/28/18 | Crystal Adams | Best Western - 2 night stay in TX for Flores monitoring | $225.92 |
| 03/01/18 | Crystal Adams | Lyft - return from Shiloh and Southwest Key Mesa facility visits | $43.00 |
| 03/01/18 | Crystal Adams | Meal expense - Pappadeaux Seafood, Houston, TX airport - for Flores monitoring trip to Shiloh and Southwest Key Mesa | $53.32 |
| 03/02/18 | Crystal Adams | UVC - tansit expense (VA -> DC) for Shiloh and Southwest Key Mesa facility visits | $28.21 |
| 05/31/18 | Crystal Adams | Flights for Shiloh RTC for Flores monitoring trip | $537.96 |
| 06/03/18 | Neha Desai | Flight for 7/27 hearing | $141.96 |
| 06/06/18 | Crystal Adams | Meal expense (the Club B&S) for Flores monitoring trip to NoVA | $17.50 |
| 06/06/18 | Crystal Adams | Transportation expense (taxi) for Flores monitoring trip to NoVA | $34.98 |
| 06/07/18 | Crystal Adams | Meal expense (Sprouts Farmers Market) for Flores monitoring trip to Shiloh RTC | $5.31 |
| 06/08/18 | Crystal Adams | Transit expense (shell oil) for Flores monitoring trip to Shiloh RTC | $7.63 |
| 06/08/18 | Crystal Adams | Meal expense (Chick-Fil-A) for Flores monitoring trip to Shiloh RTC | $15.46 |
| 06/09/18 | Crystal Adams | Meal expense (Pappas Burger) for Flores monitoring trip to Shiloh RTC | $27.95 |
| 06/09/18 | Crystal Adams | Transportation expense (taxi) for Flores monitoring trip to Shiloh RTC | $45.48 |
| 06/09/18 | Crystal Adams | Hotel expense (Courtyard by Marriott) for Flores monitoring trip to Shiloh RTC | $157.07 |
| 06/12/18 | Crystal Adams | Payment to interpreter Karina Marquez for translation of UAC interviews during Crystal Adams's site monitoring trip to Shiloh RTC | $247.00 |
| 06/26/18 | Crystal Adams | Payment to interpreter Karina Marquez for translation services for Shiloh monitoring site visit with Crystal Adams | $17.00 |
| 06/27/18 | Neha Desai | Flight for 7/27 hearing (ticket change fee) | $28.01 |
| 07/09/18 | Crystal Adams | Flights to and from Shiloh RTC for Flores monitoring trip via Southwest | $1,118.06 |
| 07/10/18 | Crystal Adams | Meal expense (Silver Diner) for Flores monitoring trip to Shiloh RTC | $33.52 |
| 07/10/18 | Crystal Adams | Meal expense for Flores monitoring trip to Shiloh RTC | $45.75 |
| 07/11/18 | Crystal Adams | Printing materials for Shiloh RTC visit | $0.25 |
| 07/11/18 | Crystal Adams | Breakfast (Courtyard by Marriott) for Flores monitoring trip to Shiloh RTC | $8.66 |
| 07/11/18 | Crystal Adams | Meal expense (Salata) for Flores monitoring trip to Shiloh RTC | $12.99 |
| 07/11/18 | Crystal Adams | Meal expense (Courtyard by Marriott) for Flores monitoring trip to Shiloh RTC | $21.20 |
| 07/12/18 | Crystal Adams | Food expense (Courtyard by Marriott) for Flores monitoring trip to Shiloh RTC | $5.87 |
| 07/12/18 | Crystal Adams | Hotel expense (Courtyard by Marriott) for Flores monitoring trip to Shiloh RTC | $11.85 |
| 07/12/18 | Crystal Adams | Meal expense (Chick-Fil-A) for Flores monitoring trip to Shiloh RTC | $23.78 |
| 07/12/18 | Crystal Adams | Transit expense (Texaco) for Flores monitoring trip to Shiloh RTC | $25.00 |
| 07/13/18 | Crystal Adams | Transit expense (taxi) for Flores monitoring trip to Shiloh RTC | $47.38 |
| 07/13/18 | Crystal Adams | Hotel expense (Courtyard by Marriott) for Flores monitoring trip to Shiloh RTC | $393.24 |
| 07/27/18 | Melissa Adamson | Travel expenses for hearing on MTE | $81.00 |
| 08/21/18 | Crystal Adams | Meal expense (Silver Diner) for Flores monitoring trip to Shiloh RTC | $6.88 |
| 08/21/18 | Crystal Adams | Flights to and from Shiloh RTC for Flores monitoring trip (Southwest) | $876.07 |
| 08/22/18 | Crystal Adams | Meal expense (Chipotle) for Flores monitoring trip to Shiloh RTC | $12.35 |
| 08/22/18 | Crystal Adams | Transportation expense (taxi) for Flores monitoring trip to NoVA | $42.15 |
| 08/23/18 | Crystal Adams | Breakfast (Courtyard by Marriott) for Flores monitoring trip to Shiloh RTC | $12.83 |
| 08/24/18 | Crystal Adams | Breakfast (Courtyard by Marriott) for Flores monitoring trip to Shiloh RTC | $14.99 |
| 08/24/18 | Crystal Adams | Preparing materials for Shiloh RTC site monitoring visit | $17.50 |
| 08/25/18 | Crystal Adams | Hotel expense (Courtyard by Marriott) for Flores monitoring trip to Shiloh RTC | $348.04 |
| 10/03/18 | Leecia Welch | Airline fee for flight for Shiloh RTC monitoring | $25.00 |
| 10/03/18 | Crystal Adams | Flight for Shiloh RTC monitoring | $104.98 |
| 10/03/18 | Crystal Adams | Car rental for Shiloh RTC monitoring | $110.48 |
| 10/03/18 | Crystal Adams | Flight for Shiloh RTC monitoring | $162.98 |
| 10/03/18 | Leecia Welch | Flight for Shiloh RTC monitoring | $233.98 |
| 10/03/18 | Leecia Welch | Flight for Shiloh RTC monitoring | $397.20 |
| 10/04/18 | Crystal Adams | Courtyard by Marriot hotel for Shiloh RTC monitoring | $363.86 |
| 10/16/18 | Melissa Adamson | Flights to and from NJ for Flores site monitoring visits of Flores site monitoring at Children's Village & MercyFirst shelters | $442.40 |
| 10/17/18 | Crystal Adams | Breakfast at Courtyard by Marriott for Shiloh RTC monitoring | $12.99 |
| 10/17/18 | Crystal Adams | Meal expense at Jason's Deli for Shiloh RTC monitoring | $14.70 |
| 10/17/18 | Leecia Welch | Lunch at Jason's Deli in Pearland TX on Shiloh RTC monitoring trip | $18.48 |
| 10/17/18 | Leecia Welch | Breakfast at the Courtyard by Marriot Pearland TX on Shiloh RTC monitoring trip | $18.62 |
| 10/17/18 | Freya Pitts | Travel to Shenandoah site visit - flight (BOS -> DCA) | $141.20 |

| 10/17/18 | Freya Pitts | Travel from Shenandoah site visit- flight (DCA -> OAK) | $246.80 |
|---|---|---|---|
| 10/18/18 | Crystal Adams | Transit expense (Shell Oil) for Shiloh RTC monitoring | $10.48 |
| 10/18/18 | Crystal Adams | Breakfast at Courtyard by Marriott for Shiloh RTC monitoring | $16.07 |
| 10/18/18 | Leecia Welch | Breakfast at the Courtyard by Marriot Pearland TX on Shiloh RTC monitoring trip | $18.05 |
| 10/18/18 | Leecia Welch | Lunch at BJS Restaurants for Leecia, Crystal, and translators for Shiloh RTC monitoring trip | $41.61 |
| 10/18/18 | Leecia Welch | Transportation for Shiloh monitoring visit (cab from SFO) | $53.88 |
| 10/18/18 | Leecia Welch | Dinner for Leecia and Crystal on Shiloh RTC monitoring trip | $92.10 |
| 10/19/18 | Leecia Welch | Travel expense for Shiloh RTC Flores site monitoring | $32.92 |
| 10/19/18 | Leecia Welch | Marriott Hotel for Shiloh RTC monitoring visit | $370.19 |
| 10/23/18 | Melissa Adamson | Meal expense en route to Flores site monitoring at Children's Village & MercyFirst | $13.04 |
| 10/23/18 | Crystal Adams | Car rental for Shenendoah Flores monitoring visit | $62.67 |
| 10/24/18 | Melissa Adamson | Meal expense (Starbucks) for Flores site monitoring of Children's Village & MercyFirst | $4.83 |
| 10/24/18 | Melissa Adamson | Meal expense (Mamoun's Falafel) for Flores site monitoring of Children's Village & MercyFirst | $8.70 |
| 10/24/18 | Freya Pitts | Meal expense (McDonalds) for Flores site monitoring at Shenandoah | $9.23 |
| 10/24/18 | Melissa Adamson | Transit expense (Shell Oil) for Flores site monitoring of Children's Village & MercyFirst | $24.99 |
| 10/24/18 | Freya Pitts | Rental car for Flores site monitoring at Shenandoah | $372.00 |
| 10/25/18 | Melissa Adamson | Meal expense (Starbucks) for Flores site monitoring of Children's Village & MercyFirst | $4.24 |
| 10/25/18 | Melissa Adamson | Meal expense (Starbucks) for Flores site monitoring of Children's Village & MercyFirst | $4.70 |
| 10/25/18 | Crystal Adams | Meal expense (McDonald's) for Flores monitoring visit for Shenandoah | $5.30 |
| 10/25/18 | Crystal Adams | Meal expense (Hardees) for Flores monitoring visit for Shenandoah | $8.84 |
| 10/25/18 | Freya Pitts | Meal expense (Chick-Fil-A) for Flores site monitoring at Shenandoah | $9.13 |
| 10/25/18 | Melissa Adamson | Meal expense (Chipotle) for Flores site monitoring of Children's Village & MercyFirst | $10.52 |
| 10/25/18 | Melissa Adamson | Transit expense (Shell Oil) for Flores site monitoring of Children's Village & MercyFirst | $29.78 |
| 10/25/18 | Crystal Adams | Meal expense for Flores monitoring visit for Shenandoah | $31.51 |
| 10/25/18 | Crystal Adams | Transit expense (Sunoco) for Shiloh RTC monitoring | $33.23 |
| 10/26/18 | Freya Pitts | Documents for Flores site monitoring at Shenandoah | $1.52 |
| 10/26/18 | Freya Pitts | Documents for Flores site monitoring at Shenandoah | $8.48 |
| 10/26/18 | Melissa Adamson | Meal expense (Java Moon Express) for Flores site monitoring of Children's Village & MercyFirst | $15.59 |
| 10/26/18 | Freya Pitts | Meal expense (Wendy's) for Flores site monitoring at Shenandoah | $15.92 |
| 10/27/18 | Freya Pitts | Meal expense (Starbucks) for Flores site monitoring at Shenandoah | $8.83 |
| 10/27/18 | Crystal Adams | Transit expense (Rental car tolls) for Shiloh RTC monitoring | $9.65 |
| 10/27/18 | Freya Pitts | Transit expense (ExxonMobil) for Flores site monitoring at Shenandoah | $10.53 |
| 10/27/18 | Freya Pitts | Fuel for rental car for Shenandoah Site Visit | $17.26 |
| 10/27/18 | Freya Pitts | Hotel expense (Best Western) for Flores site monitoring at Shenandoah | $424.07 |
| 10/28/18 | Freya Pitts | Meal expense (Cava Mezze Mediterrane) for Flores site monitoring at Shenandoah | $14.58 |
| **Total** | | | **$13,608.77** |

# Exhibit C

| Date | Name | Case Name | Description | Duration |
|---|---|---|---|---|
| 4/27/17 | Leecia Welch | Flores | Phone call with team re next steps in investigating facilities for Flores violations | 1 |
| 5/8/17 | Leecia Welch | Flores | Reviews materials in preparation for Yolo site visit | 1.2 |
| 5/11/17 | Leecia Welch | Flores | Review regulations concerning secure faciliites | 0.5 |
| 5/15/17 | Leecia Welch | Flores | Driving to facility for site visit | 1.5 |
| 5/15/17 | Leecia Welch | Flores | Attend BCFS tour and conduct client interviews | 4.2 |
| 5/15/17 | Leecia Welch | Flores | Driving from Fairfield for site visit | 1.5 |
| 5/15/17 | Leecia Welch | Flores | Edit and finalize youth interview questionnaire | 0.5 |
| 5/16/17 | Leecia Welch | Flores | Meet with PJ and ND to prep for site visit | 0.5 |
| 5/16/17 | Leecia Welch | Flores | Driving to Yolo for monitoring visit | 1.8 |
| 5/16/17 | Leecia Welch | Flores | Site visit and youth interviews | 6.2 |
| 5/16/17 | Leecia Welch | Flores | Driving from Yolo for monitoring visit | 2 |
| 5/22/17 | Leecia Welch | Flores | Prepare interview summaries from site visits | 1.3 |
| 5/23/17 | Leecia Welch | Flores | Prepare interview summaries from site visits | 1.1 |
| 6/1/17 | Leecia Welch | Flores | TC with PJ and ND re investigation next steps | 1 |
| 6/15/17 | Leecia Welch | Flores | Call with team re investigation next steps | 0.5 |
| 7/20/17 | Leecia Welch | Flores | Meeting with PJ an ND re investigation next steps | 1 |
| 8/21/17 | Leecia Welch | Flores | Call with team re investigation next steps | 1 |
| 8/28/17 | Leecia Welch | Flores | Meeting with PJ and ND re investigation and research needs | 0.7 |
| 9/15/17 | Leecia Welch | Flores | Team meeting re investigation and enforcement issues | 1 |
| 10/2/17 | Leecia Welch | Flores | Team call re facility visits, research needs | 1.2 |
| 10/12/17 | Leecia Welch | Flores | NCYL call re site visit prep | 0.8 |
| 11/1/17 | Leecia Welch | Flores | Team call re facility visits, MTE | 0.8 |
| 11/11/17 | Leecia Welch | Flores | Edit and revise client declaration re psych meds overmedication at Shiloh | 0.8 |
| 11/12/17 | Leecia Welch | Flores | Team call re facility visits | 1.2 |
| 11/14/17 | Leecia Welch | Flores | Research issues re Shiloh in prep for site visit | 1.5 |
| 11/15/17 | Leecia Welch | Flores | Review and analyze materials re Shiloh in prep for site visit and client meetings | 2.1 |
| 11/17/17 | Leecia Welch | Flores | Meeting with MA re MTE research needs | 0.8 |
| 11/17/17 | Leecia Welch | Flores | Team call re facility visits | 0.8 |
| 11/27/17 | Leecia Welch | Flores | Research issues re Shiloh in prep for site visit | 1.2 |
| 11/27/17 | Leecia Welch | Flores | Team meeting re Shiloh site visit; MTE | 1.4 |
| 11/28/17 | Leecia Welch | Flores | Review materials in prep for Shiloh RTC site visit and interviews | 2.2 |
| 11/29/17 | Leecia Welch | Flores | Travel to Houston | 8.5 |
| 11/30/17 | Leecia Welch | Flores | Prep meeting with ND for Shiloh interviews | 1.2 |
| 11/30/17 | Leecia Welch | Flores | Interview class members and prepare declarations | 10.2 |
| 11/30/17 | Leecia Welch | Flores | Meet with lsp re Shiloh issues | 0.9 |
| 12/1/17 | Leecia Welch | Flores | Return travel home from Houston | 6.5 |
| 12/1/17 | Leecia Welch | Flores | Interview class members and prepare declarations | 5.5 |
| 12/5/17 | Leecia Welch | Flores | Team call re Shiloh visit | 1.3 |
| 12/10/17 | Leecia Welch | Flores | Prepare and edit meet and confer letter re Shiloh issues | 1.2 |
| 12/14/17 | Leecia Welch | Flores | Review Shiloh meet and confer letter | 0.2 |
| 12/18/17 | Leecia Welch | Flores | Call with ND, PJ, and CA re research re psych meds issues | 0.2 |
| 12/19/17 | Leecia Welch | Flores | Team call re Flores violations and next steps | 1 |
| 1/2/18 | Leecia Welch | Flores | Team call re Flores violations and next steps | 0.6 |
| 1/2/18 | Leecia Welch | Flores | Attend meet and confer call with Govt attorney; prepare fore same | 0.8 |
| 1/12/18 | Leecia Welch | Flores | Research issues re Shiloh for follow up letter; revise same | 1.2 |
| 1/16/18 | Leecia Welch | Flores | Edit and finalize Shiloh follow up letter | 0.4 |
| 1/22/18 | Leecia Welch | Flores | Team call re Flores violations and next steps | 1.1 |
| 1/29/18 | Leecia Welch | Flores | Attend team meeting re Flores investigation issues | 1.0 |
| 1/30/18 | Leecia Welch | Flores | Research issues re informed consent; meeting with PJ and ND re same | 1.5 |

| 2/5/18 | Leecia Welch | Flores | Team call re Flores violations and next steps | 0.6 |
|---|---|---|---|---|
| 2/5/18 | Leecia Welch | Flores | Review and edit motion to seal for MTE | 0.3 |
| 2/6/18 | Leecia Welch | Flores | Edit and revise draft MTE | 2.2 |
| 2/7/18 | Leecia Welch | Flores | Edit and revise draft MTE | 2.5 |
| 2/22/18 | Leecia Welch | Flores | Call with ND, CH and CA re Shiloh visit | 0.7 |
| 2/24/18 | Leecia Welch | Flores | Edit and revise memo re psych meds issues | 2.2 |
| 3/5/18 | Leecia Welch | Flores | Team call re Flores violations and next steps | 0.7 |
| 3/12/18 | Leecia Welch | Flores | Team call re Motion to enforce draft and evidence; prepare for same | 1 |
| 3/14/18 | Leecia Welch | Flores | Review and prepare motion to enforce section | 2.7 |
| 3/15/18 | Leecia Welch | Flores | Review and prepare portion of motion to enforce draft | 3.2 |
| 3/16/18 | Leecia Welch | Flores | Review and draft moton to enforce section | 2.7 |
| 3/18/18 | Leecia Welch | Flores | Edit and revise MTE draft | 2.2 |
| 3/19/18 | Leecia Welch | Flores | Team meeting re MTE draft; prepare for same | 1.1 |
| 3/19/18 | Leecia Welch | Flores | Edit and revise MTE draft | 2.6 |
| 3/20/18 | Leecia Welch | Flores | TX with PJ re motion to enforce issues | 0.5 |
| 3/22/18 | Leecia Welch | Flores | Edit and revise MTE and supporting documents | 2.2 |
| 3/23/18 | Leecia Welch | Flores | Review and edit MTE supporting documents | 1.5 |
| 3/26/18 | Leecia Welch | Flores | Review and edit MTE draft | 2.8 |
| 3/26/18 | Leecia Welch | Flores | Team meeting re MTE draft; prepare for same | 1.1 |
| 3/29/18 | Leecia Welch | Flores | Meeting with ND re next steps | 0.7 |
| 3/29/18 | Leecia Welch | Flores | Edit and revise MTE and supporting documents | 3.2 |
| 3/29/18 | Leecia Welch | Flores | Email to team re MTE draft | 0.1 |
| 3/30/18 | Leecia Welch | Flores | team call re motion to enforce | 1.1 |
| 3/30/18 | Leecia Welch | Flores | Prepare supporting documents for motion to enforce | 1.3 |
| 3/30/18 | Leecia Welch | Flores | Edit and revise MTE draft | 2.1 |
| 4/9/18 | Leecia Welch | Flores | TX with PJ re motion to enforce issues | 0.7 |
| 4/9/18 | Leecia Welch | Flores | Edit and revise MTE draft | 2.1 |
| 4/10/18 | Leecia Welch | Flores | Edit and revise MTE draft; research issues for same | 1.3 |
| 4/11/18 | Leecia Welch | Flores | Edit and revise MTE | 2.1 |
| 4/11/18 | Leecia Welch | Flores | Review and edit MTE supporting documents | 2.1 |
| 4/12/18 | Leecia Welch | Flores | Edit and revise MTE | 1.3 |
| 4/12/18 | Leecia Welch | Flores | Edit and revise motion to seal draft | 0.4 |
| 4/12/18 | Leecia Welch | Flores | Edit and revise near final MTE draft | 1.3 |
| 4/13/18 | Leecia Welch | Flores | Review and analyze MTE supporting docs and exhibits | 2.1 |
| 4/14/18 | Leecia Welch | Flores | Edit and revise MTE and supporting documents | 1.2 |
| 4/14/18 | Leecia Welch | Flores | Edit MTE declaration | 0.3 |
| 4/16/18 | Leecia Welch | Flores | Edit and revise MTE order | 0.4 |
| 4/16/18 | Leecia Welch | Flores | Edit and finalize MTE and supporting docs | 2.7 |
| 4/19/18 | Leecia Welch | Flores | TC with PJ re revised order | 0.1 |
| 4/19/18 | Leecia Welch | Flores | Edit and revise MTE order; research issues re same | 0.7 |
| 4/23/18 | Leecia Welch | Flroes | Team call re MTE next steps | 1.2 |
| 4/24/18 | Leecia Welch | Flores | Team call re MTE order; prepare fore same | 0.7 |
| 4/24/18 | Leecia Welch | Flores | Edit and revise MTE order | 0.5 |
| 4/25/18 | Leecia Welch | Flores | Revise MTE order | 0.1 |
| 5/2/18 | Leecia Welch | Flores | Edit and revise letter re Shiloh documents | 0.4 |
| 5/3/18 | Leecia Welch | Flores | Finalize letter re Shiloh documents | 0.2 |
| 5/22/18 | Leecia Welch | Flores | Interview Yolo class members and prepare declarations; debrief with team re same | 9.6 |
| 5/22/18 | Leecia Welch | Flores | Travel to Yolo for class member interviews | 1.7 |
| 5/22/18 | Leecia Welch | Flores | Travel from Yolo | 2.5 |
| 5/25/18 | Leecia Welch | Flores | Analyze and review response to MTE | 2.2 |
| 5/26/18 | Leecia Welch | Flores | Prepare notes re Yolo class members | 2.4 |
| 5/29/18 | Leecia Welch | Flores | Team call re reply and next steps | 1.3 |
| 5/31/18 | Leecia Welch | Flores | Meet with PJ re reply brief issues | 0.2 |

| 5/31/18 | Leecia Welch | Flores | Research issues for reply brief | 1.2 |
|---|---|---|---|---|
| 6/1/18 | Leecia Welch | Flores | Call with NCYL team re reply section drafting | 0.8 |
| 6/2/18 | Leecia Welch | Flores | Review and analyze JCAHO standards | 0.8 |
| 6/3/18 | Leecia Welch | Flores | Prepare memo re relevant JCAHO standards | 1.2 |
| 6/5/18 | Leecia Welch | Flores | Revise draft of MTE reply | 1.9 |
| 6/7/18 | Leecia Welch | Flores | Revise MTE reply | 1.3 |
| 6/12/18 | Leecia Welch | Flores | Prepare section of MTE reply; research issues re same | 2.8 |
| 6/13/18 | Leecia Welch | Flores | Edit and revise MTE reply; TC with PJ re same | 1.8 |
| 6/14/18 | Leecia Welch | Flores | Edit MTE reply; research isues for same | 1.4 |
| 6/15/18 | Leecia Welch | Flores | Edit and finalize MTE reply and supporting docs | 2.8 |
| 7/26/18 | Leecia Welch | Flores | Travel to LA for Flores oral argument | 3.5 |
| 7/27/18 | Leecia Welch | Flores | Prepare materials for oral argument | 1.2 |
| 7/27/18 | Leecia Welch | Flores | Review MTE tentative ruling; attend oral argument | 1.5 |
| 7/27/18 | Leecia Welch | Flores | Debrief with team re oral argument and next steps | 1.4 |
| 7/27/18 | Leecia Welch | Flores | Return travel from oral argument | 3.5 |
| 8/9/18 | Leecia Welch | Flores | Edit and revise letter re 7/30 Order | 0.8 |
| 8/10/18 | Leecia Welch | Flores | Research issues for 7/30 Order letter; revise same | 1.2 |
| 8/10/18 | Leecia Welch | Flores | TC with CH and HC re govt position on 7/31 Order | 0.5 |
| 8/11/18 | Leecia Welch | Flores | Call with LSP re medication of youth in ORR custody | 0.7 |
| 8/13/18 | Leecia Welch | Flores | Review status report re 7/30 order and draft dec | 0.8 |
| 9/5/18 | Leecia Welch | Flores | Review MC letter re 7/30 order | 0.2 |
| 9/7/18 | Leecia Welch | Flores | Review govt materials in response to 7/30 order letter | 0.8 |
| 9/14/18 | Leecia Welch | Flores | Review Shiloh materials from govt | 0.4 |
| 9/22/18 | Leecia Welch | Flores | Review research re motion for contempt | 0.5 |
| 9/23/18 | Leecia Welch | Flores | Review and edit practive advisory re 7/30 order implementation; research issues re same | 0.8 |
| 9/25/18 | Leecia Welch | Flores | Edit and revise practice advisory re psych meds issues | 0.4 |
| 10/16/18 | Leecia Welch | Flores | Travel to Houston for Shiloh class member interviews | 6.5 |
| 10/16/18 | Leecia Welch | Flores | Review materials and prepare for Shiloh interviews | 2.7 |
| 10/17/18 | Leecia Welch | Flores | Interview class members and prepare declarations re Shiloh compliance with 7/30 order; debrief with CA re same | 9.5 |
| 10/18/18 | Leecia Welch | Flores | Interview class members and prepare declarations re Shiloh compliance with 7/30 order; debrief with CA re same | 6.5 |
| 10/18/18 | Leecia Welch | Flores | Travel to SF from Houston | 6.2 |
| 10/19/18 | Leecia Welch | Flores | Review and edit supporting motions for monitor brief | 0.7 |
| 10/19/18 | Leecia Welch | Flores | Research issues for monitor brief; edit same | 1.3 |
| 2/8/19 | Leecia Welch | Flroes | Review and edit Shiloh counter-proposal | 0.5 |
| 2/22/19 | Leecia Welch | Flores | Edit letter re Shiloh issues | 0.4 |
| **Total** | | | | **238.2** |

| Date | Name | Case Name | Description | Duration |
|---|---|---|---|---|
| 4/25/17 | Neha Desai | Flores | Plan for upcoming visits to facilities | 0.9 |
| 5/1/17 | Neha Desai | Flores | Initial prep for Yolo visit (develop interview questions, prioritize which youth to interview) | 1.8 |
| 5/12/17 | Neha Desai | Flores | Final prep for Yolo visit (Finalize Interview questions, complete additional prep for interviews) | 2.1 |
| 5/15/17 | Neha Desai | Flores | BCFS Tour & interviews | 6.4 |
| 5/16/17 | Neha Desai | Flores | Yolo Tour & Interviews | 6.9 |
| 5/18/17 | Neha Desai | Flores | Clean up and circulate inteview notes | 1.1 |
| 5/22/17 | Neha Desai | Flores | Prep docs for file request | 0.6 |
| 5/23/17 | Neha Desai | Flores | Flores Check in with Leecia and Poonam | 1 |
| 6/3/17 | Neha Desai | Flores | Review and edit research memo on ORR procedures | 1.2 |
| 7/13/17 | Neha Desai | Flores | Co-counsel call re possible motion to enforce | 1.2 |
| 7/17/17 | Neha Desai | Flores | Flores debrief Shenandoah | 1.1 |
| 7/28/17 | Neha Desai | Flores | Prelim review of Yolo client file | 0.8 |
| 7/28/17 | Neha Desai | Flores | Doc review of client file | 0.3 |
| 8/2/17 | Neha Desai | Flores | Correspondence with Yolo client attorney | 1.2 |
| 8/5/17 | Neha Desai | Flores | Review doc review draft | 1.8 |
| 8/24/17 | Neha Desai | Flores | Follow up from prior counsel call, including outreach to organizational plaintiffs re Flores violations | 0.6 |
| 8/25/17 | Neha Desai | Flores | Correspondence with Holly's students re: doc review | 0.3 |
| 8/28/17 | Neha Desai | Flores | Co-counsel Check in | 1.2 |
| 8/29/17 | Neha Desai | Flores | Plan for next Yolo visit | 0.6 |
| 8/29/17 | Neha Desai | Flores | Correspondence with Holly re: prep for Yolo | 0.4 |
| 8/29/17 | Neha Desai | Flores | Review Carlos' dec for MLH and provide feedback | 0.3 |
| 8/29/17 | Neha Desai | Flores | Prep docs for file request | 0.2 |
| 8/31/17 | Neha Desai | Flores | Research and draft Flores memo re: procedural protections in JJ & CW | 2.7 |
| 9/12/17 | Neha Desai | Flores | Research and draft Flores memo re: procedural protections in JJ & CW | 3.6 |
| 9/14/17 | Neha Desai | Flores | Review standard on related cases; review cases on court's ability to fashion rememedies for violation | 0.9 |
| 9/15/17 | Neha Desai | Flores | Flores co-counsel call re investigation issues | 1.1 |
| 9/19/17 | Neha Desai | Flores | Review memo on procedural protections | 0.6 |
| 9/25/17 | Neha Desai | Flores | Review and edit Melissa's memo re: VA system timeline and procedural protections | 0.7 |
| 9/26/17 | Neha Desai | Flores | Work with Poonam on interview intake form | 0.4 |
| 9/29/17 | Neha Desai | Flores | Flores co-counsel call & NCYL debrief | 1.3 |
| 10/12/17 | Neha Desai | Flores | Research and draft Flores Memo (VA & CA Juvenile Justice procedural standards) | 2.3 |
| 10/12/17 | Neha Desai | Flores | NCYl Flores team call | 0.8 |
| 10/13/17 | Neha Desai | Flores | Flores Co-Counsel Call | 0.9 |
| 10/17/17 | Neha Desai | Flores | Flores Co-Counsel Call | 1.2 |
| 10/23/17 | Neha Desai | Flores | Prep for Yolo visit | 1.4 |
| 10/25/17 | Neha Desai | Flores | travel to Yolo | 1.3 |
| 10/25/17 | Neha Desai | Flores | Interview youth at Yolo | 6.4 |
| 10/25/17 | Neha Desai | Flores | return travel from Yolo | 1.4 |
| 10/25/17 | Neha Desai | Flores | write up notes from Yolo interviews | 0.8 |
| 10/27/17 | Neha Desai | Flores | clean up & circulate  notes from Yolo interviews | 1.1 |
| 10/30/17 | Neha Desai | Flores | Flores Check-in (NCYL) | 0.5 |
| 11/1/17 | Neha Desai | Flores | Draft agenda for Flores co-counsel call | 0.3 |
| 11/1/17 | Neha Desai | Flores | Flores Co-counsel call | 0.8 |
| 11/1/17 | Neha Desai | Flores | Draft and circulate notes to the team on call with legal service providers | 0.3 |
| 11/2/17 | Neha Desai | Flores | Correspondence with Yolo client's attorney re: his release; | 0.6 |
| 11/2/17 | Neha Desai | Flores | Draft To Do items for team | 0.3 |
| 11/2/17 | Neha Desai | Flores | correspondence with TX disability rights advocate re: Shiloh | 0.7 |
| 11/3/17 | Neha Desai | Flores | Review Shiloh Orientation Packet | 0.4 |
| 11/6/17 | Neha Desai | Flores | NCYL Flores check-in re: assignments | 0.5 |
| 11/10/17 | Neha Desai | Flores | Review draft decs & provide feedback | 0.6 |
| 11/13/17 | Neha Desai | Flores | Flores co-counsel call & NCYL Debrief | 1.1 |
| 11/13/17 | Neha Desai | Flores | NCYL Debrief from co-counsel call (divvy up tasks) | 0.8 |
| 11/14/17 | Neha Desai | Flores | Doc review and follow up on a particular youth | 0.7 |
| 11/15/17 | Neha Desai | Flores | Review Shiloh Licensing Memo and input feedback | 1.3 |
| 11/16/17 | Neha Desai | Flores | call with lsp re: Yolo client psych meds issues | 1.2 |
| 11/20/17 | Neha Desai | Flores | Review notes & declarations from MercyFirst and Children's Village | 0.8 |
| 11/27/17 | Neha Desai | Flores | Begin prep for Shiloh visit (review notes and decs from Davis trip & revise interview Qs accordingly | 3.6 |
| 11/29/17 | Neha Desai | Flores | Complete Shiloh prep (reviewing files, prior notes, prior declarations) | 2.7 |
| 11/29/17 | Neha Desai | Flores | Travel to Houston | 8.7 |
| 11/30/17 | Neha Desai | Flores | Prep for Shiloh interviews with Leecia | 1.2 |
| 11/30/17 | Neha Desai | Flores | Conduct interviews and drafts declarations | 10.5 |
| 11/30/17 | Neha Desai | Flores | Meeting with lsp to discuss Shiloh | 0.9 |
| 12/1/17 | Neha Desai | Flores | Interviews with youth at Shiloh and draft declarations | 2.2 |
| 12/1/17 | Neha Desai | Flores | Return travel from Houston | 9.8 |
| 12/5/17 | Neha Desai | Flores | Call with attorney re: Children's Village | 0.7 |
| 12/5/17 | Neha Desai | Flores | Call with Carlos re: Shiloh | 0.5 |
| 12/5/17 | Neha Desai | Flores | compile and circulate Shiloh declarations and other documents to team | 0.6 |

| 12/5/17 | Neha Desai | Flores | Co-counsel Shiloh debrief & next steps | 1.4 |
|---|---|---|---|---|
| 12/6/17 | Neha Desai | Flores | Follow up with lsp re: class member's dec | 0.3 |
| 12/7/17 | Neha Desai | Flores | Yolo youth psych eval follow up | 0.6 |
| 12/8/17 | Neha Desai | Flores | Assist with Yolo youth bond hearing prep | 0.7 |
| 12/8/17 | Neha Desai | Flores | Call with lsp re: clients at Shiloh | 0.6 |
| 12/8/17 | Neha Desai | Flores | Draft psych meds portion of Meet and Confer letter | 1.7 |
| 12/12/17 | Neha Desai | Flores | Call with lsp re: use of psych meds | 0.9 |
| 12/12/17 | Neha Desai | Flores | Check in with Poonam re: research assignements | 0.4 |
| 12/18/17 | Neha Desai | Flores | Follow up call with lsp | 0.6 |
| 12/19/17 | Neha Desai | Flores | Draft agenda for co-counsel call | 0.3 |
| 12/19/17 | Neha Desai | Flores | Flores co-counsel call | 1.1 |
| 12/19/17 | Neha Desai | Flores | review ORR policies on medication adminsitration and management | 0.4 |
| 1/2/18 | Neha Desai | Flores | Flores co-counsel call | 0.9 |
| 1/2/18 | Neha Desai | Flores | Review Poonam's notes from calls with lsps | 0.3 |
| 1/2/18 | Neha Desai | Flores | Follow up call with lsp | 0.7 |
| 1/3/18 | Neha Desai | Flores | Review and provide feedback on Melissa's memo on law re: parental consent | 0.6 |
| 1/5/18 | Neha Desai | Flores | Follow up with lsp re: youth | 0.7 |
| 1/5/18 | Neha Desai | Flores | call with Poonam & Crystal re: Flores legal research needs | 0.6 |
| 1/5/18 | Neha Desai | Flores | Follow up with Carlos re: letter to gvt on Shiloh | 0.6 |
| 1/7/18 | Neha Desai | Flores | Check in with Bill to get his review on specific psych meds used | 0.4 |
| 1/8/18 | Neha Desai | Flores | Flores co-counsel call | 1.1 |
| 1/8/18 | Neha Desai | Flores | correspondence with attys on their clients who are not being released to sponsors in timely fashion | 0.4 |
| 1/9/18 | Neha Desai | Flores | Review Melissa's spreadhsheet with youth's psych meds flags | 0.6 |
| 1/10/18 | Neha Desai | Flores | Call with direct service provider | 0.4 |
| 1/11/18 | Neha Desai | Flores | Draft new content for Shiloh follow up letter to gvt | 1.2 |
| 1/11/18 | Neha Desai | Flores | call with direct service provider (clients not being promptly released) | 0.5 |
| 1/12/18 | Neha Desai | Flores | Potential plaintiff follow up emails with direct service providers | 0.2 |
| 1/12/18 | Neha Desai | Flores | Internal NCYL Flores check in | 0.5 |
| 1/16/18 | Neha Desai | Flores | final edits to Shiloh letter | 0.6 |
| 1/18/18 | Neha Desai | Flores | Call with lsp | 0.8 |
| 1/18/18 | Neha Desai | Flores | Review and provide feedback on Melissa's memos on PDP claim (psych meds) | 0.9 |
| 1/22/18 | Neha Desai | Flores | review lsp spreadsheet re class members | 1.3 |
| 1/22/18 | Neha Desai | Flores | Flores co-counsel call | 1.1 |
| 1/22/18 | Neha Desai | Flores | Correspondence with Leecia and Poonam re: PDP issues | 0.3 |
| 1/23/18 | Neha Desai | Flores | call with lsp re: class members | 0.4 |
| 1/24/18 | Neha Desai | Flores | Touch base with Melissa re: lsp client issues | 0.8 |
| 1/29/18 | Neha Desai | Flores | Flores co-counsel call | 1.1 |
| 1/30/18 | Neha Desai | Flores | LSP  call | 0.9 |
| 2/1/18 | Neha Desai | Flores | LSP (NY) call | 0.9 |
| 2/2/18 | Neha Desai | Flores | Flores co-counsel call | 0.9 |
| 2/2/18 | Neha Desai | Flores | follow up with direct service atty | 0.7 |
| 2/6/18 | Neha Desai | Flores | Call with LSP | 0.7 |
| 2/6/18 | Neha Desai | Flores | revise draft MTE | 1.2 |
| 2/6/18 | Neha Desai | Flores | review Crystal memo on DP re: involuntary medication and provide feedback | 0.9 |
| 2/12/18 | Neha Desai | Flores | Flores co-counsel call | 0.7 |
| 2/14/18 | Neha Desai | Flores | correspondence re: upcoming Shiloh visit | 0.6 |
| 2/14/18 | Neha Desai | Flores | review correspondence re: incidents at NoVa | 0.6 |
| 2/15/18 | Neha Desai | Flores | Internal NCYL discussion re: follow up needed for NoVA | 0.3 |
| 2/22/18 | Neha Desai | Flores | Call with LSP re Shiloh | 0.8 |
| 2/23/18 | Neha Desai | Flores | Follow up with lsp re: incidents at SWK Mesa (physical assault of class member) | 0.4 |
| 2/27/18 | Neha Desai | Flores | correspondence with lsp re: client inappropriately stepped up | 0.3 |
| 3/5/18 | Neha Desai | Flores | Review Melissa's summary of UAC Manual of Procedures | 0.7 |
| 3/5/18 | Neha Desai | Flores | Call with Crystal in preparation for Shiloh visit | 0.5 |
| 3/7/18 | Neha Desai | Flores | Work on outline for MTE psych meds | 1.8 |
| 3/7/18 | Neha Desai | Flores | Follow up correspondence with co-counsel on next steps for MTE | 0.3 |
| 3/8/18 | Neha Desai | Flores | Call with LSP | 0.7 |
| 3/8/18 | Neha Desai | Flores | Work on draft MTE | 1.4 |
| 3/12/18 | Neha Desai | Flores | Review interview notes from UCD visit | 0.4 |
| 3/12/18 | Neha Desai | Flores | Review notes from LSP detailing specific harms of clients | 0.4 |
| 3/12/18 | Neha Desai | Flores | Draft agenda for co-counsel call | 0.3 |
| 3/12/18 | Neha Desai | Flores | Co-counsel call | 1 |
| 3/12/18 | Neha Desai | Flores | Call with Crystal re: class member | 0.5 |
| 3/12/18 | Neha Desai | Flores | Doc review - review class member's file | 2.3 |
| 3/12/18 | Neha Desai | Flores | Internal NCYL check-in | 0.6 |
| 3/13/18 | Neha Desai | Flores | Prep for sponsor interview | 0.5 |
| 3/13/18 | Neha Desai | Flores | Review and provide edits on Motion to Enforce draft | 1.1 |
| 3/13/18 | Neha Desai | Flores | Review and provide edits on sponsor declaration | 0.4 |
| 3/14/18 | Neha Desai | Flores | Follow up with NoVA youth | 0.7 |

| 3/15/18 | Neha Desai | Flores | Call with LSP | 0.5 |
|---|---|---|---|---|
| 3/15/18 | Neha Desai | Flores | Follow up with class members | 0.6 |
| 3/15/18 | Neha Desai | Flores | Draft next steps for co-counsel | 0.3 |
| 3/15/18 | Neha Desai | Flores | Flag additional info needed for sponsor dec | 0.4 |
| 3/16/18 | Neha Desai | Flores | Motion to Enforce editing (fact checking with class member files) | 2.6 |
| 3/19/18 | Neha Desai | Flores | Prep for Plaintiffs Counsel Call (review emails, draft agenda, review draft language for MTE) | 1.5 |
| 3/19/18 | Neha Desai | Flores | Review NoVa decs | 0.6 |
| 3/19/18 | Neha Desai | Flores | Plaintiffs counsel call | 0.4 |
| 3/19/18 | Neha Desai | Flores | NCYL debrief from co-counsel call, includig plan for next steps | 0.6 |
| 3/19/18 | Neha Desai | Flores | Input comments on draft NoVa decs re: additional info needed | 0.5 |
| 3/20/18 | Neha Desai | Flores | Call with LSP re: mental health concerns for clients at NoVa | 0.8 |
| 3/20/18 | Neha Desai | Flores | Mtg with Melissa re: declarations | 0.3 |
| 3/20/18 | Neha Desai | Flores | Mtg re: next steps for MTE draft | 0.7 |
| 3/20/18 | Neha Desai | Flores | Follow up with LSP | 0.2 |
| 3/20/18 | Neha Desai | Flores | Call with direct service provider re: client at NoVa repeatedy moved to psych hospital (re: NoVa) | 1.2 |
| 3/20/18 | Neha Desai | Flores | Review and provide comments on child's dec | 0.3 |
| 3/21/18 | Neha Desai | Flores | Draft update for co-counsel team | 0.4 |
| 3/21/18 | Neha Desai | Flores | Follow up correspondence re: Yolo youth that want to meet | 0.6 |
| 3/21/18 | Neha Desai | Flores | Debrief with Crystal | 0.7 |
| 3/22/18 | Neha Desai | Flores | Review Shiloh docs | 1.2 |
| 3/22/18 | Neha Desai | Flores | follow up with legal service provider | 0.3 |
| 3/22/18 | Neha Desai | Flores | Edit MTE draft | 2.1 |
| 3/23/18 | Neha Desai | Flores | Client's sponsor dec review | 1.5 |
| 3/23/18 | Neha Desai | Flores | call with Holly re MTE | 0.5 |
| 3/26/18 | Neha Desai | Flores | Draft agenda for counsel call | 0.4 |
| 3/26/18 | Neha Desai | Flores | Plaintiffs counsel call | 1.2 |
| 3/26/18 | Neha Desai | Flores | Internal NCYL mtg | 0.7 |
| 3/26/18 | Neha Desai | Flores | Prep for class member interview with Melissa | 0.6 |
| 3/27/18 | Neha Desai | Flores | Debrief with Melissa re: class member interview | 0.9 |
| 3/27/18 | Neha Desai | Flores | Review declarations and evaluate which ones we can use | 1.3 |
| 3/27/18 | Neha Desai | Flores | Mtg with Poonam re: follow up items | 0.6 |
| 3/27/18 | Neha Desai | Flores | Create master spreadsheet of tasks | 0.7 |
| 3/27/18 | Neha Desai | Flores | Call with LSP | 0.5 |
| 3/28/18 | Neha Desai | Flores | Reivew Carlos' comments on draft | 0.6 |
| 3/28/18 | Neha Desai | Flores | Evaluate next steps on Bokencamp class member | 0.4 |
| 3/28/18 | Neha Desai | Flores | Mtg with melissa re: additional info needed for Bokemcamp class member declaration | 0.4 |
| 3/29/18 | Neha Desai | Flores | call with Leecia re: next steps | 0.7 |
| 3/29/18 | Neha Desai | Flores | Reviews decs and make final determination of which ones should be added to the MTE draft | 1.2 |
| 3/29/18 | Neha Desai | Flores | Mtg with Melissa on next steps re: finalizing MTE draft | 0.6 |
| 3/29/18 | Neha Desai | Flores | Provide Melissa feedback on dec | 0.5 |
| 3/30/18 | Neha Desai | Flores | Work on spreadsheet on declarations | 1.8 |
| 3/30/18 | Neha Desai | Flores | Doc review (to verify information in decs) | 2.3 |
| 3/30/18 | Neha Desai | Flores | Co-counsel call | 1 |
| 4/2/18 | Neha Desai | Flores | Review and input edits on MTE step up section | 1.8 |
| 4/2/18 | Neha Desai | Flores | Prep for counsel call (review relevant correspondence, draft agenda) | 0.4 |
| 4/2/18 | Neha Desai | Flores | Co-counsel call | 1.1 |
| 4/2/18 | Neha Desai | Flores | Internal NCYL debrief (divide up tasks) | 0.7 |
| 4/3/18 | Neha Desai | Flores | Review OIL letter re: Shiloh and analyze impact on our legal arguments | 0.8 |
| 4/3/18 | Neha Desai | Flores | Delineate next steps for the team | 0.4 |
| 4/4/18 | Neha Desai | Flores | Review decs from Shenandoah and evaluate which ones to use | 0.7 |
| 4/4/18 | Neha Desai | Flores | Follow up with Yolo youth | 0.4 |
| 4/4/18 | Neha Desai | Flores | Doc review for Shenandoah and Yolo youth (verifying info from decs) | 2.7 |
| 4/5/18 | Neha Desai | Flores | Call with LSP | 0.7 |
| 4/5/18 | Neha Desai | Flores | Review summary of a child's doc review | 0.6 |
| 4/5/18 | Neha Desai | Flores | Evaluate next steps for that child | 0.3 |
| 4/12/18 | Neha Desai | Flores | Input edits on current draft of MTE | 1.8 |
| 4/17/18 | Neha Desai | Flores | Review draft order and input edits | 1.6 |
| 4/18/18 | Neha Desai | Flores | Research Tx psych meds law, update language in draft order accordingly | 1.3 |
| 4/19/18 | Neha Desai | Flores | Input additional revisions to draft Order | 0.7 |
| 4/19/18 | Neha Desai | Flores | Provide edits on dec | 0.6 |
| 4/23/18 | Neha Desai | Flores | Prep for Plaintiffs Counsel call, including drafting agenda | 0.4 |
| 4/23/18 | Neha Desai | Flores | Plaintiffs counsel call | 1 |
| 4/23/18 | Neha Desai | Flores | Internal NCYL debrief | 0.7 |
| 4/24/18 | Neha Desai | Flores | Call with co-counsel re: proposed order | 0.7 |
| 4/30/18 | Neha Desai | Flores | Review and provide edits on response letter to gvt re: Shiloh | 0.7 |
| 5/24/18 | Neha Desai | Flores | Review interview notes from Poonam and Holly; review Yolo mace policy | 0.7 |
| 6/1/18 | Neha Desai | Flores | Review Reply | 0.7 |
| 6/1/18 | Neha Desai | Flores | Call with internal NCYL team re: Reply | 0.8 |

| | | | | |
|---|---|---|---|---:|
| 6/4/18 | Neha Desai | Flores | Edit draft Reply to Gvt's opposition | 1.3 |
| 6/5/18 | Neha Desai | Flores | Complete edits to Reply draft | 0.8 |
| 6/14/18 | Neha Desai | Flores | Review and discuss new section on Remedies | 1.3 |
| 6/14/18 | Neha Desai | Flores | Input final edits on brief | 0.8 |
| 7/27/18 | Neha Desai | Flores | Travel to LA for Flores oral arguments (from Oak to LA Courthouse) | 4.9 |
| 7/27/18 | Neha Desai | Flores | oral arguments | 1.2 |
| 7/27/18 | Neha Desai | Flores | debrief with team | 2.2 |
| 7/27/18 | Neha Desai | Flores | return travel | 4.3 |
| 9/20/18 | Neha Desai | Flores | review Motion for Contempt spreadsheet and standard | 0.3 |
| **Total** | | | | **237.3** |

| Date | Name | Case Name | Description | Duration |
|---|---|---|---|---|
| 3/30/17 | Poonam Juneja | Flores | Researching past litigation related to the TVPRA | 2.1 |
| 4/27/17 | Poonam Juneja | Flores | phone call with ND LW CH HC re next steps in investigation of agreement violations | 1.0 |
| 5/9/17 | Poonam Juneja | Flores | reviewing CA regs re juvenile detention center standards | 1.7 |
| 5/12/17 | Poonam Juneja | Flores | Revising interview questionnaire for facility visits | 3.1 |
| 5/15/17 | Poonam Juneja | Flores | Driving from Fairfield for site visit | 1.0 |
| 5/15/17 | Poonam Juneja | Flores | Driving to Fairfield for site visit | 1.5 |
| 5/15/17 | Poonam Juneja | Flores | Site visit and youth interviews | 4.0 |
| 5/16/17 | Poonam Juneja | Flores | Driving to facility for site visit | 0.2 |
| 5/16/17 | Poonam Juneja | Flores | Meeting with Leecia and Neha to prepare for site visit | 0.6 |
| 5/16/17 | Poonam Juneja | Flores | Driving to Yolo for site visit | 1.4 |
| 5/16/17 | Poonam Juneja | Flores | Driving back from Yolo site visit | 1.5 |
| 5/16/17 | Poonam Juneja | Flores | Site visit and youth interviews | 7.0 |
| 5/18/17 | Poonam Juneja | Flores | Editing and circulating interview notes | 1.0 |
| 5/19/17 | Poonam Juneja | Flores | cleaning up visit notes from Monday and circulating | 0.8 |
| 5/23/17 | Poonam Juneja | Flores | cleaning up and circulating tour/interview notes | 1.1 |
| 5/23/17 | Poonam Juneja | Flores | check in with LW and ND re investigation and next steps | 0.6 |
| 6/1/17 | Poonam Juneja | Flores | phone call with ND LW re next steps in investigation | 1.0 |
| 6/15/17 | Poonam Juneja | Flores | co-counsel call re next steps in investigation | 0.6 |
| 6/23/17 | Poonam Juneja | Flores | emailing LW and ND re Shenandoah call and follow up visit to facility | 0.2 |
| 6/23/17 | Poonam Juneja | Flores | phone call re issues at Shenandoah | 1 |
| 7/5/17 | Poonam Juneja | Flores | reviewing law clerk memo re ORR procedures and Flores agreement | 0.4 |
| 7/7/17 | Poonam Juneja | Flores | meeting with ND re research findings, progress and needs | 0.9 |
| 7/10/17 | Poonam Juneja | Flores | sharing interview questions with attys doing site visits | 0.2 |
| 7/13/17 | Poonam Juneja | Flores | phone call with CH HC ND re possible motion to enforce due process | 1 |
| 7/14/17 | Poonam Juneja | Flores | reviewing class member declarations | 0.3 |
| 7/17/17 | Poonam Juneja | Flores | meeting with ND re needed analysis of settlement provisions related to issues | 0.5 |
| 7/17/17 | Poonam Juneja | Flores | phone call re issues at shenandoah juv hall | 0.9 |
| 7/20/17 | Poonam Juneja | Flores | discussion with LW and ND re Flores next steps in investigation of agreement violations | 0.8 |
| 7/20/17 | Poonam Juneja | Flores | meeting with ND re claims and research needed | 0.5 |
| 7/26/17 | Poonam Juneja | Flores | check in with Neha re next steps in investigation and doc review | 0.6 |
| 7/27/17 | Poonam Juneja | Flores | preparing docs for doc review | 0.3 |
| 7/31/17 | Poonam Juneja | Flores | reviewing draft letter re boomerang detentions and related research | 0.4 |
| 8/4/17 | Poonam Juneja | Flores | researching ORR policies | 0.5 |
| 8/21/17 | Poonam Juneja | Flores | Co-counsel call re investigation | 1.0 |
| 8/24/17 | Poonam Juneja | Flores | emailing Neha and Leecia re needed next steps on investigation and research | 0.4 |
| 8/28/17 | Poonam Juneja | Flores | discussion with ND and LW re next steps on investigation and legal research | 0.8 |
| 9/15/17 | Poonam Juneja | Flores | Co-counsel call re investigation and enforcement mechanisms | 1.1 |
| 9/15/17 | Poonam Juneja | Flores | reviewing case law re remedies for violation of consent decree | 0.5 |
| 9/19/17 | Poonam Juneja | Flores | meeting with ND and LW to discuss next steps on investigation and research | 0.8 |
| 9/25/17 | Poonam Juneja | Flores | Creating intake form for class member outreach | 1.4 |
| 9/29/17 | Poonam Juneja | Flores | Reviewing feedback and revising intake form | 0.3 |
| 10/2/17 | Poonam Juneja | Flores | Co-counsel call re research, facility visits, pop reports issues, etc | 1 |
| 10/5/17 | Poonam Juneja | Flores | circulating detention facility list to team and identifying SS locations to visit | 0.4 |
| 10/5/17 | Poonam Juneja | Flores | reviewing MA map of ORR facilities and discussing same with her | 0.8 |
| 10/11/17 | Poonam Juneja | Flores | emails to team re possible Yolo site visit | 0.2 |
| 10/12/17 | Poonam Juneja | Flores | NCYL team call to discuss case development - Crystal, LW, ND | 0.8 |
| 10/13/17 | Poonam Juneja | Flores | prepping letter for monitoring visit | 0.5 |
| 10/13/17 | Poonam Juneja | Flores | reviewing and commenting on class member's sibling's draft dec | 0.4 |
| 10/13/17 | Poonam Juneja | Flores | co-counsel call | 1.0 |
| 10/17/17 | Poonam Juneja | Flores | co-counsel call re investigation and monitoring trips | 1.2 |
| 10/17/17 | Poonam Juneja | Flores | reviewing draft youth declaration and discussing with ND | 0.5 |
| 10/24/17 | Poonam Juneja | Flores | creating declaration template | 0.8 |
| 10/24/17 | Poonam Juneja | Flores | prepping for monitoring trip for next day | 0.2 |
| 10/25/17 | Poonam Juneja | Flores | drafting declarations based on interview notes from youth and circulating to team | 1.2 |

| 10/25/17 | Poonam Juneja | Flores | monitoring visit at Yolo JDC and interviews with class members | 6.1 |
|---|---|---|---|---|
| 10/25/17 | Poonam Juneja | Flores | driving from Yolo for monitoring visit | 1.6 |
| 10/25/17 | Poonam Juneja | Flores | driving to Yolo for monitoring visit | 1.5 |
| 10/30/17 | Poonam Juneja | Flores | planning monitoring trip for following month | 0.7 |
| 10/30/17 | Poonam Juneja | Flores | check in with ND re next steps in investigation | 0.6 |
| 10/30/17 | Poonam Juneja | Flores | reviewing youth draft declaration | 0.4 |
| 10/31/17 | Poonam Juneja | Flores | reviewing Yolo monitoring trip notes | 0.3 |
| 10/31/17 | Poonam Juneja | Flores | reviewing monitoring visit notes | 0.3 |
| 11/1/17 | Poonam Juneja | Flores | Co-counsel call re monitoring visits, outreach to legal service providers, research | 1 |
| 11/1/17 | Poonam Juneja | Flores | reviewing govt emails regarding status of release of youth and emailing ND/LW re admission | 0.2 |
| 11/2/17 | Poonam Juneja | Flores | phone call with direct service provider re issues at Shiloh | 1 |
| 11/2/17 | Poonam Juneja | Flores | arranging travel to NY for monitoring trip and emailing team re same | 1.1 |
| 11/3/17 | Poonam Juneja | Flores | emailing ND HC re monitoring of phone calls and Flores settlement terms | 0.2 |
| 11/3/17 | Poonam Juneja | Flores | reviewign Shiloh orientation packet | 0.3 |
| 11/3/17 | Poonam Juneja | Flores | emailing people looking for interpreters | 0.3 |
| 11/7/17 | Poonam Juneja | Flores | emailing updates on NY monitoring trip | 0.3 |
| 11/8/17 | Poonam Juneja | Flores | collecting docs needed for monitoring visits nad circulating to team | 0.9 |
| 11/8/17 | Poonam Juneja | Flores | phone call with direct service providers re upcoming monitoring visit | 1.1 |
| 11/8/17 | Poonam Juneja | Flores | emailing CH CA re interpreters | 0.2 |
| 11/8/17 | Poonam Juneja | Flores | reviewing draft youth declaration | 0.2 |
| 11/8/17 | Poonam Juneja | Flores | circulating notes from call with direct service provider | 0.3 |
| 11/9/17 | Poonam Juneja | Flores | emailing possible interpreters | 0.3 |
| 11/9/17 | Poonam Juneja | Flores | emailing LW re interpreters | 0.2 |
| 11/10/17 | Poonam Juneja | Flores | emailing team re youth being stepped down from yolo | 0.1 |
| 11/13/17 | Poonam Juneja | Flores | preparing for monitoring trip | 1.2 |
| 11/13/17 | Poonam Juneja | Flores | reviewing info re Shiloh circulated by ND | 0.3 |
| 11/13/17 | Poonam Juneja | Flores | emaling with CA re monitoring visit prep | 0.3 |
| 11/13/17 | Poonam Juneja | Flores | emailing attys re trip logistics | 0.2 |
| 11/14/17 | Poonam Juneja | Flores | travel from Oakland to NY | 7.8 |
| 11/15/17 | Poonam Juneja | Flores | meeting with co-counsel before facility visits to prepare for class member interviews | 0.3 |
| 11/15/17 | Poonam Juneja | Flores | reviewing Shiloh info from ND and discussing the same with her | 0.5 |
| 11/15/17 | Poonam Juneja | Flores | drive from hotel to Mercy First | 0.2 |
| 11/15/17 | Poonam Juneja | Flores | touring Mercy First facility and interviewing class members | 7.5 |
| 11/15/17 | Poonam Juneja | Flores | drive from Syosset to Dobbs Ferry | 1.6 |
| 11/16/17 | Poonam Juneja | Flores | driving from hotel to CV facility | 0.2 |
| 11/16/17 | Poonam Juneja | Flores | touring Children's Village facility and interviewing class members | 9.5 |
| 11/16/17 | Poonam Juneja | Flores | Travel back from NY | 5.7 |
| 11/17/17 | Poonam Juneja | Flores | Travel back from NY | 2.5 |
| 11/17/17 | Poonam Juneja | Flores | exchanging emails with Carlos re contacting boomerang youth atty | 0.3 |
| 11/17/17 | Poonam Juneja | Flores | NCYL co-counsel call re debriefing monitoring visit | 1.1 |
| 11/17/17 | Poonam Juneja | Flores | emailing interpreters re certificates | 0.2 |
| 11/17/17 | Poonam Juneja | Flores | reviewing documents from trip and circulating to team | 1.2 |
| 11/17/17 | Poonam Juneja | Flores | emailing team re youth in Childrens Village | 0.2 |
| 11/18/17 | Poonam Juneja | Flores | phone call with HC re upcoming visit at Shiloh | 0.3 |
| 11/20/17 | Poonam Juneja | Flores | reviewing translators certificates | 0.1 |
| 11/20/17 | Poonam Juneja | Flores | phone call with attys re youth experiences at Shenandoah | 0.8 |
| 11/20/17 | Poonam Juneja | Flores | drafting declaration based on interview notes from youth and circulating to team | 1.1 |
| 11/20/17 | Poonam Juneja | Flores | drafting and sending letter with notice of visit to govt | 0.3 |
| 11/20/17 | Poonam Juneja | Flores | researching TX state law re consent for youth in JJ and foster care systems and emailing team re same | 0.5 |
| 11/21/17 | Poonam Juneja | Flores | reviewing emails from co-counsel re medical consent form used in facility | 0.2 |
| 11/21/17 | Poonam Juneja | Flores | phone call with atty re youth at Mercy First | 0.3 |
| 11/21/17 | Poonam Juneja | Flores | sending declaration to atty to go over and execute with youth | 0.3 |
| 11/21/17 | Poonam Juneja | Flores | exchanging emails with interpreters | 0.2 |

| 11/22/17 | Poonam Juneja | Flores | emailing attys re youth declaration | 0.2 |
|---|---|---|---|---|
| 11/28/17 | Poonam Juneja | Flores | emailing attys re youth declaration | 0.2 |
| 12/1/17 | Poonam Juneja | Flores | emailing atty re youth declaration | 0.1 |
| 12/4/17 | Poonam Juneja | Flores | reviewing youth psych eval | 0.3 |
| 12/5/17 | Poonam Juneja | Flores | listening to messages left by youth and discussing with ND | 0.4 |
| 12/9/17 | Poonam Juneja | Flores | emailing with ND re thoughts on draft meet and confer letter | 0.2 |
| 12/10/17 | Poonam Juneja | Flores | reviewing and editing meet and confer letter | 0.4 |
| 12/11/17 | Poonam Juneja | Flores | phone call with CA to debrief re youth from Childrens Village | 0.8 |
| 12/11/17 | Poonam Juneja | Flores | meeting with LW MP LC re communications strategy around case | 0.5 |
| 12/14/17 | Poonam Juneja | Flores | reviewing draft meet and confer letter to govt | 0.3 |
| 12/15/17 | Poonam Juneja | Flores | reviewing ORR spreadsheet for status of disabled child and emailing team on same | 0.2 |
| 12/15/17 | Poonam Juneja | Flores | reviewing emails re release of youth from Yolo and phone call with ND re same | 0.3 |
| 12/16/17 | Poonam Juneja | Flores | sending case law and briefs to CA for legal research background | 0.3 |
| 12/18/17 | Poonam Juneja | Flores | researching ORR policy on chemical restraints at RTCs and emailing team | 0.4 |
| 12/18/17 | Poonam Juneja | Flores | phone call with LW CA ND re legal research next steps | 1.0 |
| 12/18/17 | Poonam Juneja | Flores | reviewing emails re Oregon bond hearing victory | 0.2 |
| 12/19/17 | Poonam Juneja | Flores | discussion with ND re outreach to direct service providers | 0.3 |
| 12/19/17 | Poonam Juneja | Flores | reviewing final meet and confer letter | 0.3 |
| 12/19/17 | Poonam Juneja | Flores | phone call with CA re psych meds claims legal research and emailing re same | 0.9 |
| 12/19/17 | Poonam Juneja | Flores | co-counsel meeting | 1.0 |
| 12/20/17 | Poonam Juneja | Flores | emailing direct service providers to set up times to talk about issues they are seeing with clients in ORR custody | 0.3 |
| 12/21/17 | Poonam Juneja | Flores | phone call with direct service provider re issues seeing with clients in ORR custody | 1 |
| 12/22/17 | Poonam Juneja | Flores | phone call with direct service provider re issues seeing with clients in ORR custody | 1.1 |
| 12/22/17 | Poonam Juneja | Flores | phone call with direct service provider re issues seeing with clients in ORR custody | 0.9 |
| 12/22/17 | Poonam Juneja | Flores | phone call with direct service provider re issues seeing with clients in ORR custody | 0.6 |
| 12/22/17 | Poonam Juneja | Flores | reviewing ORR spreadsheets for status of youth and emailing team re release of two class members from ORR custody | 0.2 |
| 12/22/17 | Poonam Juneja | Flores | emailing co-counsel team re scheduling for meet and confer with govt | 0.1 |
| 12/22/17 | Poonam Juneja | Flores | exchanging emails with attys re obtaining youth declaration | 0.2 |
| 12/28/17 | Poonam Juneja | Flores | circulating class member declaration to team | 0.2 |
| 1/2/18 | Poonam Juneja | Flores | meet and confer with government re demand letter | 0.5 |
| 1/2/18 | Poonam Juneja | Flores | team debrief and planning of next steps after meet and confer with government | 1 |
| 1/2/18 | Poonam Juneja | Flores | reviewing notes of meet and confer | 0.2 |
| 1/2/18 | Poonam Juneja | Flores | review of childrens village decs re psych meds issues and emails with CH re same | 0.5 |
| 1/3/18 | Poonam Juneja | Flores | summarizing phone calls with direct srevice providers and circulating to team | 1.2 |
| 1/4/18 | Poonam Juneja | Flores | phone call with ND and CA re legal research needs | 0.5 |
| 1/5/18 | Poonam Juneja | Flores | reviewing draft letter re psych meds | 0.6 |
| 1/7/18 | Poonam Juneja | Flores | reviewing and circulating case summaries from direct service provider to team | 0.4 |
| 1/11/18 | Poonam Juneja | Flores | reviewing CA memo re PDP analysis of release ot parent custodians | 0.4 |
| 1/12/18 | Poonam Juneja | Flores | reviewing revised psych meds letter | 0.4 |
| 1/15/18 | Poonam Juneja | Flores | revisions to letter to govt re psych meds issues at shiloh | 0.5 |
| 1/16/18 | Poonam Juneja | Flores | reviewing info from direct services atty re Flores class member issues | 0.4 |
| 1/16/18 | Poonam Juneja | Flores | reviewing final declaration signed by class member | 0.3 |
| 1/17/18 | Poonam Juneja | Flores | circulating class member declaration to team | 0.2 |
| 1/19/18 | Poonam Juneja | Flores | co-counsel call | 1.0 |
| 1/22/18 | Poonam Juneja | Flores | meeting with Neha, Leecia, Crystal re next steps on investigations related to motion to enforce | 0.4 |
| 1/22/18 | Poonam Juneja | Flores | reviewing MA draft memo re informed consent and doing related research | 1.2 |
| 1/22/18 | Poonam Juneja | Flores | discussing issues brought up by MA memo re informed consent with ND | 0.5 |

| | | | | |
|---|---|---|---|---|
| 1/23/18 | Poonam Juneja | Flores | reviewing MA draft memo re informed consent and circulating thoughts to LW ND | 1.1 |
| 1/28/18 | Poonam Juneja | Flores | co-counsel call | 1.1 |
| 1/29/18 | Poonam Juneja | Flores | reviewing CJLG decision for impact on our planned motion to enforce | 0.4 |
| 1/29/18 | Poonam Juneja | Flores | reviewing emails from co-counsel re potential plaintiff for motion to enforce | 0.4 |
| 1/30/18 | Poonam Juneja | Flores | reviewing MA's memo re informed consent under TX state law and discussing with LW and ND | 1.2 |
| 1/31/18 | Poonam Juneja | Flores | reviewing files produced for individual youth | 0.6 |
| 1/31/18 | Poonam Juneja | Flores | phone call with CA re needed research on PDP psych meds claim | 0.5 |
| 2/1/18 | Poonam Juneja | Flores | emails with lsp attys re issues on particular Flores class members | 0.4 |
| 2/1/18 | Poonam Juneja | Flores | phone call with lsp re issues on particular Flores class members | 1.0 |
| 2/1/18 | Poonam Juneja | Flores | Preparing application to file under seal and supporting documents | 3.0 |
| 2/2/18 | Poonam Juneja | Flores | co-counsel call | 1.0 |
| 2/5/18 | Poonam Juneja | Flores | Preparing application to file under seal and supporting documents | 0.3 |
| 2/2/18 | Poonam Juneja | Flores | co-counsel call | 0.6 |
| 2/5/18 | Poonam Juneja | Flores | Phone call with immigration attorney re client issues | 0.5 |
| 2/6/18 | Poonam Juneja | Flores | revisions to motion to seal and addressing issues with evidence supporting to motion to enforce | 0.5 |
| 2/6/18 | Poonam Juneja | Flores | reviewing draft motion to enforce | 0.4 |
| 2/6/18 | Poonam Juneja | Flores | edits to draft motion to enforce and related exhibit preparation | 1.9 |
| 2/7/18 | Poonam Juneja | Flores | emails re revisions to and filing of motion to seal | 0.4 |
| 2/15/18 | Poonam Juneja | Flores | reviewing correspondence between CH and Sarah Fabian | 0.2 |
| 2/16/18 | Poonam Juneja | Flores | phone call with CA re feedback on PDP psych meds claim memo and further research needs | 0.5 |
| 2/21/18 | Poonam Juneja | Flores | co-counsel call | 1.0 |
| 2/21/18 | Poonam Juneja | Flores | meeting with ND re CA memo on pysch meds PDP claim | 0.5 |
| 2/22/18 | Poonam Juneja | Flores | revising and circulating MA memo re TX consent laws | 0.5 |
| 2/23/18 | Poonam Juneja | Flores | Reviewing and revising CA memo re PDP psych meds claim | 2.3 |
| 2/23/18 | Poonam Juneja | Flores | phone call with CA re edits to PDP psych meds claim memo | 0.5 |
| 3/7/18 | Poonam Juneja | Flores | email re outline for portion of motion to enforce | 0.1 |
| 3/11/18 | Poonam Juneja | Flores | reviewing class member declaration and related documents | 0.3 |
| 3/12/18 | Poonam Juneja | Flores | meeting with NCYL attorneys re next steps on motion and complaint | 0.6 |
| 3/12/18 | Poonam Juneja | Flores | co-counsel call with full team re motion to enforce | 1.0 |
| 3/13/18 | Poonam Juneja | Flores | revising draft declaration | 0.6 |
| 3/14/18 | Poonam Juneja | Flores | Reviewing and editing portion of motion draft | 0.8 |
| 3/15/18 | Poonam Juneja | Flores | Revising portion of motion to enforce draft | 2.4 |
| 3/15/18 | Poonam Juneja | Flores | email to LW and ND re consitutional avoidance doctrine | 0.1 |
| 3/16/18 | Poonam Juneja | Flores | Revising portion of motion to enforce draft | 0.9 |
| 3/17/18 | Poonam Juneja | Flores | Meeting with ND and CA re Flores next steps | 0.4 |
| 3/19/18 | Poonam Juneja | Flores | reviewing and commenting on draft declarations | 0.4 |
| 3/19/18 | Poonam Juneja | Flores | Meeting with ND re comments on declarations | 0.4 |
| 3/19/18 | Poonam Juneja | Flores | co-counsel call re motion to enforce | 1.2 |
| 3/19/18 | Poonam Juneja | Flores | discussion with nd and ma re revisions to section of motion | 0.3 |
| 3/20/18 | Poonam Juneja | Flores | phone call with LW re next steps in motion drafting/editing | 0.5 |
| 3/20/18 | Poonam Juneja | Flores | conversation with CA and ND re phone call with GAL and child's atty re child in custody | 0.3 |
| 3/20/18 | Poonam Juneja | Flores | conversation with CA and ND re declaration drafts | 0.2 |
| 3/21/18 | Poonam Juneja | Flores | researching and drafting motion to use psuedonyms | 0.6 |
| 3/21/18 | Poonam Juneja | Flores | conversation with MA re mother declaration | 0.2 |
| 3/21/18 | Poonam Juneja | Flores | researching and drafting motion to use psuedonyms | 0.5 |
| 3/22/18 | Poonam Juneja | Flores | reviewing and commenting on draft declarations | 0.2 |
| 3/22/18 | Poonam Juneja | Flores | creating full to do lists for motions to enforce, to seal, for additional pages, to use pseudonyms | 0.9 |
| 3/22/18 | Poonam Juneja | Flores | researching and drafting motion to use psuedonyms | 2.0 |
| 3/22/18 | Poonam Juneja | Flores | reviewing drafts of section of motion to enforce and editing | 0.6 |
| 3/26/18 | Poonam Juneja | Flores | Conversation with ND re to do items on Flores enforcement motion and next steps | 0.8 |
| 3/27/18 | Poonam Juneja | Flores | revisions/comments on draft motion to enforce | 2.0 |

| | | | | |
|---|---|---|---|---|
| 3/27/18 | Poonam Juneja | Flores | co-counsel call re preparation for motion to enforce | 1.0 |
| 3/28/18 | Poonam Juneja | Flores | emails to CA re supporting motions for motion to enforce | 0.4 |
| 3/29/18 | Poonam Juneja | Flores | reviewing latest draft of motion to enforce sections | 0.5 |
| 3/29/18 | Poonam Juneja | Flores | Phone call with CA re motion to seal | 0.2 |
| 3/29/18 | Poonam Juneja | Flores | editing application for additional pages | 0.1 |
| 3/29/18 | Poonam Juneja | Flores | Revising portion of motion to enforce draft | 0.3 |
| 3/29/18 | Poonam Juneja | Flores | co-counsel call re motion to enforce | 1.0 |
| 3/29/18 | Poonam Juneja | Flores | meeting with LW and ND re psych meds legal issues | 0.5 |
| 3/29/18 | Poonam Juneja | Flores | Revising portion of motion to enforce draft | 0.2 |
| 3/29/18 | Poonam Juneja | Flores | editing application for additional pages | 0.6 |
| 3/29/18 | Poonam Juneja | Flores | Revising portion of motion to enforce draft | 0.9 |
| 3/30/18 | Poonam Juneja | Flores | call wtih ND re motion to enforce draft | 0.2 |
| 3/30/18 | Poonam Juneja | Flores | call with LW re motion to enforce | 0.3 |
| 3/30/18 | Poonam Juneja | Flores | co-counsel call re motion to enforce | 0.9 |
| 3/30/18 | Poonam Juneja | Flores | Reviewing and assembling evidence in support of motion to enforce | 3.9 |
| 3/30/18 | Poonam Juneja | Flores | co-counsel call re motion to enforce | 1.2 |
| 4/2/18 | Poonam Juneja | Flores | NCYL call re motion to enforce | 0.5 |
| 4/2/18 | Poonam Juneja | Flores | reviewing letter from govt and emailing NCYL team thoughts | 0.4 |
| 4/3/18 | Poonam Juneja | Flores | conversation with ND re follow up on govt letter re psych meds | 0.3 |
| 4/4/18 | Poonam Juneja | Flores | Meeting with ND and KS re next step in evidence gathering/organization | 0.7 |
| 4/5/18 | Poonam Juneja | Flores | phone call with CH and other consulting attys re orr practices | 0.9 |
| 4/6/18 | Poonam Juneja | Flores | Reviewing and assembling evidence in support of motion to enforce | 1.5 |
| 4/9/18 | Poonam Juneja | Flores | team call re motion to enforce draft and evidence | 1.0 |
| 4/9/18 | Poonam Juneja | Flores | Phone call with CA re motion to seal | 0.7 |
| 4/9/18 | Poonam Juneja | Flores | reviewing/revising full draft of motion to enforce | 1.2 |
| 4/9/18 | Poonam Juneja | Flores | phone calls with LW re motion to enforce draft | 0.7 |
| 4/9/18 | Poonam Juneja | Flores | revising motion to enforce draft | 1.4 |
| 4/10/18 | Poonam Juneja | Flores | revising motion to enforce draft | 0.3 |
| 4/10/18 | Poonam Juneja | Flores | compiling and updating exhibits for motion to enforce | 3.0 |
| 4/10/18 | Poonam Juneja | Flores | exchanging emails with translator re certification | 0.4 |
| 4/10/18 | Poonam Juneja | Flores | Revisions to section of draft motion to enforce | 0.3 |
| 4/10/18 | Poonam Juneja | Flores | sorting out issues with exhibits for motion to enforce | 0.5 |
| 4/11/18 | Poonam Juneja | Flores | compiling exhibits for preparation by paralegals | 0.5 |
| 4/11/18 | Poonam Juneja | Flores | revising motion to seal and supporting documents | 2.5 |
| 4/11/18 | Poonam Juneja | Flores | phone call with co counsel CH re motion to enforce edits and remaining to-do items | 0.9 |
| 4/11/18 | Poonam Juneja | Flores | revising motion to use pseudonyms and supporting documents | 2.0 |
| 4/11/18 | Poonam Juneja | Flores | drafting email to govt re consent to seal and psuedonyms and sending to CH and LW | 0.3 |
| 4/11/18 | Poonam Juneja | Flores | putting pseudonyms and page numbers into exhibit list | 1.6 |
| 4/11/18 | Poonam Juneja | Flores | revising application to proceed using pseudonyms and supporting documents | 1.3 |
| 4/12/18 | Poonam Juneja | Flores | revising motion to seal and supporting documents | 0.5 |
| 4/12/18 | Poonam Juneja | Flores | revisions to motion to enforce draft | 1.5 |
| 4/12/18 | Poonam Juneja | Flores | phone call with atty re interpreter cert | 0.2 |
| 4/12/18 | Poonam Juneja | Flores | emailing ND and LW re additional evidence re motion to enforce | 0.2 |
| 4/12/18 | Poonam Juneja | Flores | research re placement appeals to ORR director | 0.5 |
| 4/12/18 | Poonam Juneja | Flores | exchanging emails with Carlos re application to use psuedonyms and seal, and contacting govt | 0.2 |
| 4/12/18 | Poonam Juneja | Flores | reviewing emails between CH and SF | 0.2 |
| 4/12/18 | Poonam Juneja | Flores | phone call with Holly re motion to enforce revisions and to do items | 0.3 |
| 4/12/18 | Poonam Juneja | Flores | Phone call with co-counsel re evidence preparation | 0.8 |
| 4/13/18 | Poonam Juneja | Flores | updating exhibits for motion to enforce | 1.0 |
| 4/13/18 | Poonam Juneja | Flores | revisions to applications to seal and to use pseudonyms | 0.5 |
| 4/13/18 | Poonam Juneja | Flores | updating exhibits for motion to enforce | 0.4 |
| 4/13/18 | Poonam Juneja | Flores | call with LW re to do items on motion to enforce | 0.2 |
| 4/13/18 | Poonam Juneja | Flores | revising and finalizing sealing documents | 1.3 |
| 4/13/18 | Poonam Juneja | Flores | phone call with CH re motion to enforce final steps | 0.5 |
| 4/13/18 | Poonam Juneja | Flores | Preparing filing list for Monday | 0.9 |

| 4/13/18 | Poonam Juneja | Flores | revising and finalizing pseudonym application | 0.8 |
|---|---|---|---|---|
| 4/13/18 | Poonam Juneja | Flores | revising motion to enforce brief | 3.1 |
| 4/13/18 | Poonam Juneja | Flores | preparing exhibits for filing | 1.0 |
| 4/14/18 | Poonam Juneja | Flores | preparing exhibits for filing | 0.5 |
| 4/14/18 | Poonam Juneja | Flores | revising motion to enforce brief | 2.3 |
| 4/14/18 | Poonam Juneja | Flores | revising and finalizing pseudonym and sealing application | 0.5 |
| 4/14/18 | Poonam Juneja | Flores | revising motion to enforce brief and circulating to team | 0.1 |
| 4/14/18 | Poonam Juneja | Flores | revising motion to enforce brief and circulating to team | 0.5 |
| 4/15/18 | Poonam Juneja | Flores | Preparing exhibit sets for filing | 0.8 |
| 4/15/18 | Poonam Juneja | Flores | co-counsel call re motion to enforce | 1.0 |
| 4/16/18 | Poonam Juneja | Flores | revising and finalizing pseudonym and sealing application | 1.3 |
| 4/16/18 | Poonam Juneja | Flores | revising motion to enforce brief | 1.0 |
| 4/16/18 | Poonam Juneja | Flores | finalizing exhibit sets for filing | 0.6 |
| 4/16/18 | Poonam Juneja | Flores | e-filing documents, serving Ds, sending proposed orders to court, prepping for chambers copies | 2.1 |
| 4/16/18 | Poonam Juneja | Flores | Emails to team re proposed order | 0.2 |
| 4/16/18 | Poonam Juneja | Flores | preparing and efiling appearance notices | 0.7 |
| 4/17/18 | Poonam Juneja | Flores | conversations with ND and LW re proposed order and revisions to po per discussions | 1.4 |
| 4/18/18 | Poonam Juneja | Flores | phone call and email with paralegal re exhibit preparation for response to Judge's order to seal | 0.3 |
| 4/19/18 | Poonam Juneja | Flores | conversation with ND re follow up on motion to enforce filing and experts | 0.3 |
| 4/19/18 | Poonam Juneja | Flores | phone call with LW re proposed order | 0.1 |
| 4/19/18 | Poonam Juneja | Flores | reviewing revised proposed order | 0.3 |
| 4/19/18 | Poonam Juneja | Flores | co-counsel call re preparation for follow up on motion to enforce | 0.5 |
| 4/20/18 | Poonam Juneja | Flores | conversation with KS re chambers copies and f/u emails | 0.3 |
| 4/23/18 | Poonam Juneja | Flores | researching court rules and drafting notice of lodging of sealed docs | 0.3 |
| 4/23/18 | Poonam Juneja | Flores | finalizing, filing and serving sealed docs per court order | 1.0 |
| 4/23/18 | Poonam Juneja | Flores | reviewing and revising draft proposed order | 0.4 |
| 4/23/18 | Poonam Juneja | Flores | locating and sending team ORR policies and docs re reunification packet | 0.3 |
| 4/24/18 | Poonam Juneja | Flores | co-counsel call re proposed order | 1.0 |
| 4/24/18 | Poonam Juneja | Flores | finalizing and filing proposed order | 0.5 |
| 4/24/18 | Poonam Juneja | Flores | Drafting notice of lodging of proposed order | 0.3 |
| 4/30/18 | Poonam Juneja | Flores | phone call with local advocate re investigation | 0.5 |
| 5/8/18 | Poonam Juneja | Flores | searching for JCAHO standards | 0.3 |
| 5/14/18 | Poonam Juneja | Flores | conversations with ND re investigation and outreach to stakeholders | 0.4 |
| 5/24/18 | Poonam Juneja | Flores | reading govt response brief and supporting dec | 0.4 |
| 5/25/18 | Poonam Juneja | Flores | Closely reviewing and taking notes on govt response brief | 0.6 |
| 5/29/18 | Poonam Juneja | Flores | co-counsel call re reply brief and further investigation | 1.4 |
| 5/30/18 | Poonam Juneja | Flores | emailing MA CA law re medication consent for reply brief section | 0.2 |
| 5/31/18 | Poonam Juneja | Flores | talking to LW re reply brief drafting | 0.2 |
| 6/1/18 | Poonam Juneja | Flores | team meeting re reply brief draft - LW, ND, MA, CA, PJ | 1.3 |
| 6/1/18 | Poonam Juneja | Flores | reviewing and taking notes on govt response brief | 0.3 |
| 6/4/18 | Poonam Juneja | Flores | check in with LW ND CA re planning for CA investigatory trips to facilities this week | 1.0 |
| 6/4/18 | Poonam Juneja | Flores | revising portion of reply brief draft | 1.5 |
| 6/5/18 | Poonam Juneja | Flores | reviewing LW monitoring visit notes | 0.3 |
| 6/5/18 | Poonam Juneja | Flores | phone call wtih CA re class member interviews at NoVA | 0.4 |
| 6/6/18 | Poonam Juneja | Flores | revising reply brief draft | 0.5 |
| 6/6/18 | Poonam Juneja | Flores | revising reply brief draft | 0.4 |
| 6/7/18 | Poonam Juneja | Flores | Exchanging text messages with CA regarding the Texas monitoring visit trip | 0.2 |
| 6/7/18 | Poonam Juneja | Flores | conference call with co-counsel re investigation and reply brief | 1.5 |
| 6/9/18 | Poonam Juneja | Flores | conversation with ND re agenda for co-counsel call | 0.3 |
| 6/11/18 | Poonam Juneja | Flores | revisions of reply brief | 0.4 |
| 6/11/18 | Poonam Juneja | Flores | circulating thoughts on reply declaration | 0.5 |
| 6/11/18 | Poonam Juneja | Flores | reviewing docs re Shiloh circulated by HC from FOIAs etc | 0.5 |
| 6/11/18 | Poonam Juneja | Flores | answering KS questions re formatting of citations in reply brief | 0.3 |
| 6/12/18 | Poonam Juneja | Flores | conversation with ND re responding to atty request | 0.3 |

| | | | | |
|---|---|---|---|---:|
| 6/13/18 | Poonam Juneja | Flores | reviewing and revising reply brief | 2.4 |
| 6/13/18 | Poonam Juneja | Flores | phone call with LW re needed revisions to reply brief | 0.3 |
| 6/14/18 | Poonam Juneja | Flores | discussion with ND re revisions to reply brief | 0.3 |
| 6/14/18 | Poonam Juneja | Flores | reviewing and revising reply brief | 3.9 |
| 6/14/18 | Poonam Juneja | Flores | revisions to and finalizing reply brief, tables, etc. | 5.5 |
| 6/14/18 | Poonam Juneja | Flores | reviewing local rules re brief formatsa | 0.2 |
| 6/15/18 | Poonam Juneja | Flores | emails re chambers copies of reply brief docs | 0.2 |
| 6/18/18 | Poonam Juneja | Flores | emails with CA re conversation with mother of class member re meds | 0.1 |
| 7/23/18 | Poonam Juneja | Flores | revising oral arg prep documents re psych meds claim | 1.1 |
| 7/26/18 | Poonam Juneja | Flores | team debriefing following hearing | 0.4 |
| 7/26/18 | Poonam Juneja | Flores | phone call with ND re hearing | 0.3 |
| 7/27/18 | Poonam Juneja | Flores | phone call with LW re hearing | 0.4 |
| **Total** | | | | **276.9** |

| Date | Name | Case Name | Description | Duration |
|---|---|---|---|---|
| 8/20/18 | Freya Pitts | Flores | Call with L. Welch, M. Adamson, and consulate atty re: medication of youth in ORR custody | 0.7 |
| 8/20/18 | Freya Pitts | Flores | Follow up meeting with L. Welch and M. Adamson re: call with consulate atty c re: medication of youth | 0.3 |
| 8/20/18 | Freya Pitts | Flores | Review and propose edits to M. Adamson summary of consulate atty call | 0.3 |
| 8/24/18 | Freya Pitts | Flores | Review documents from C. Adams monitoring trip to Shiloh | 0.3 |
| 8/27/18 | Freya Pitts | Flores | Review notes from C. Adams monitoring trip to Shiloh | 0.2 |
| 9/24/18 | Freya Pitts | Flores | Review revised practice advisory re: DMG order on motion to enforce | 0.2 |
| 9/24/18 | Freya Pitts | Flores | Email correspondence with N. Desai and C. Adams re: compliance monitoring visits to Shenandoah and Mercy First | 0.1 |
| 10/11/18 | Freya Pitts | Flores | Email correspondence with C. Adams re: logistics for 10/25-10/26 monitoring visit to Shenandoah Valley Juvenile Center | 0.2 |
| 10/18/18 | Freya Pitts | Flores | Email correspondence with C. Adams re: logistics for 10/25-10/26 monitoring visit to Shenandoah Valley Juvenile Center | 0.1 |
| 10/21/18 | Freya Pitts | Flores | Travel from Boston to Shenandoah Valley | 7 |
| 10/23/18 | Freya Pitts | Flores | Review sample declarations, interview template, list of prioritized youth, and compile notes in preparation for Shendandoah visit | 2.1 |
| 10/24/18 | Freya Pitts | Flores | Travel to Shenandoah Valley Juvenile Center | 0.2 |
| 10/25/18 | Freya Pitts | Flores | Monitoring visit of Shenandoah Valley Juvenile Center, including class member interviews and preliminary and follow-up conversations with C. Adams and volunteer interpreters | 8.8 |
| 10/25/18 | Freya Pitts | Flores | Travel from Shenandoah Valley Juvenile Center | 0.2 |
| 10/25/18 | Freya Pitts | Flores | Compile notes from class member interviews and begin to draft declarations | 1.6 |
| 10/25/18 | Freya Pitts | Flores | Prep for second day of SVJC monitoring visit: complete class member declarations; review C. Adams declarations; draft interview questions for ORR director; compile notes and documents | 1.8 |
| 10/25/18 | Freya Pitts | Flores | Print documents for visit and travel to SVJC | 0.5 |
| 10/26/18 | Freya Pitts | Flores | Monitoring visit of Shenandoah Valley Juvenile Center, including preliminary and follow up conversations with interpreter and class member and ORR director interviews | 7.7 |
| 10/26/18 | Freya Pitts | Flores | Travel from Shenandoah Valley Juvenile Center | 0.2 |
| 10/26/18 | Freya Pitts | Flores | Review and compile documents from site visit to Shenandoah Valley Juvenile Center | 0.6 |
| 10/26/18 | Freya Pitts | Flores | Travel from Shenandoah Valley Juvenile Center to Oakland | 9.4 |
| 10/27/18 | Freya Pitts | Flores | Compile notes from class member and program director interviews | 1.1 |
| 10/27/18 | Freya Pitts | Flores | Email correspondence with C. Adams re: follow up from Shenandoah visit | 0.1 |
| 10/27/18 | Freya Pitts | Flores | Team co-counsel call, including re: proposed regulations and facility visits | 1.5 |
| 10/29/18 | Freya Pitts | Flores | Follow up discussion with M. Adamson and K. Setren post team co-counsel call re: facility visits | 0.2 |
| 10/29/18 | Freya Pitts | Flores | Review M. Adamson declarations from classmembers at Mercy First and Children's Village | 0.3 |
| 10/31/18 | Freya Pitts | Flores | Collect and circulate declarations from classmembers interviewed at Shenandoah to Flores team | 0.4 |
| 11/1/18 | Freya Pitts | Flores | Compile documentation from class members at Shenandoah for record requests; instructions to K. Setren re: same | 0.4 |
| 11/1/18 | Freya Pitts | Flores | Review monitoring declarations from Shiloh visit | 0.1 |
| 11/29/18 | Freya Pitts | Flores | Review C. Holguin declaration re: Shiloh RTC | 0.1 |
| 12/14/18 | Freya Pitts | Flores | Review C. Holguin correspondence re: monitoring order | 0.3 |
| 1/7/19 | Freya Pitts | Flores | Review Defendants' letter to monitor re: enforcement | 0.2 |
| 1/24/19 | Freya Pitts | Flores | Email correspondence re: Shiloh enforcement | 0.1 |
| 2/5/19 | Freya Pitts | Flores | Review monitor's draft report | 0.1 |
| 2/7/19 | Freya Pitts | Flores | Complete review of monitor's draft report | 0.5 |
| 2/11/19 | Freya Pitts | Flores | Review C. Holguin draft correspondence re: monitor's draft report | 0.2 |
| 2/11/19 | Freya Pitts | Flores | Confer with N. Desai re: C. Holguin draft corresondence re: monitor's draft report | 0.1 |
| 2/14/19 | Freya Pitts | Flores | Review email correspondence re: informed consent issues at Shiloh RTC | 0.1 |
| **Total** | | | | **48.3** |

| Date | Name | Case Name | Description | Duration |
|---|---|---|---|---|
| 10/12/17 | Crystal Adams | Flores | internal NCYL call with Poonam Juneja, Neha Desai, and Leecia Welch to discuss status of case and site visits to NY and Shenandoah detention facilities | 0.7 |
| 11/1/17 | Crystal Adams | Flores | co-counsel call with Carlos Holguin, Leecia Welch, Poonam Juneja, Neha Desai to discuss status of case and NY trip to detention facilities | 1 |
| 11/12/17 | Crystal Adams | Flores | co-counsel call with Carlos Holguin, Leecia Welch, Poonam Juneja, Neha Desai, Holly Cooper to discuss NY trip to detention facilities | 1.2 |
| 11/14/17 | Crystal Adams | Flores | travel from Washington, DC to Syosset, NY for site visit at Mercy First facility | 4.8 |
| 11/15/17 | Crystal Adams | Flores | travel from hotel to Mercy First facility | 0.1 |
| 11/15/17 | Crystal Adams | Flores | touring Mercy First facility | 1.7 |
| 11/15/17 | Crystal Adams | Flores | interviewing class members about their experiences in ORR custody at Mercy First facility | 2.3 |
| 11/15/17 | Crystal Adams | Flores | debrief with team about interviews with class members at Mercy First facility | 0.8 |
| 11/15/17 | Crystal Adams | Flores | assist in drafting declaration for class member at Mercy First facility | 0.8 |
| 11/15/17 | Crystal Adams | Flores | travel from Mercy First facility to hotel | 1.8 |
| 11/15/17 | Crystal Adams | Flores | travel from hotel to Children's Village facility | 0.2 |
| 11/16/17 | Crystal Adams | Flores | touring Children's Village facility | 1.7 |
| 11/16/17 | Crystal Adams | Flores | interviewing class members about their experiences in ORR custody at Children's Village facility | 2.3 |
| 11/16/17 | Crystal Adams | Flores | debrief with team about interviews with class members at Children's Village facility | 0.8 |
| 11/16/17 | Crystal Adams | Flores | drafting declaration for class member at Children's Village facility | 0.8 |
| 11/16/17 | Crystal Adams | Flores | reviewing declaration with class member at Children's Village facility | 0.6 |
| 11/16/17 | Crystal Adams | Flores | travel from Children's Village facility in Dobbs Ferry, NY to home in Washington, DC | 4.6 |
| 11/17/17 | Crystal Adams | Flores | internal NCYL Flores team call with Poonam Juneja, Neha Desai, Melissa Adamson about visit to NY detention facilities | 0.7 |
| 11/17/17 | Crystal Adams | Flores | completing and submitting to government G-28 forms and authorization for release of records forms for 11 class members interviewed at NY detention facilities | 2.8 |
| 11/18/17 | Crystal Adams | Flores | drafting analysis of visit to NY detention centers: Mercy First and Children's Village facilities, and sharing with co-counsel | 6.5 |
| 11/27/17 | Crystal Adams | Flores | co-counsel call with Carlos Holguin, Leecia Welch, Neha Desai, Holly Cooper to discuss Yolo trip and trip to Shiloh RTC | 1.5 |
| 12/4/17 | Crystal Adams | Flores | internal NCYL call with Seth G., Catherine L., Poonam J., Neha D., and Leecia W. to discuss status of case, legal theories, site visits to Shiloh RTC | 1 |
| 12/11/17 | Crystal Adams | Flores | researched federal government policies and laws governing detention and release of accompanied minors and their parents | 1.3 |
| 12/14/17 | Crystal Adams | Flores | emailed NY immigration attorney to discuss class member's case | 0.1 |
| 12/14/17 | Crystal Adams | Flores | emailed Children's Village staff: Audy Grullon, Jesse Pereda, and Kennsy Ruiz to discuss class member's case | 0.1 |
| 12/19/17 | Crystal Adams | Flores | co-counsel call with Carlos Holguin, Leecia Welch, Neha Desai, Holly Cooper to discuss meet and confer letter regarding Flores violations and legal research | 1.2 |
| 1/2/18 | Crystal Adams | Flores | meet and confer call with Plaintiffs' counsel: Poonam J., Neha D., Leecia W., Carlos H., Holly C.; and opposing counsel: Sarah Fabian | 1.0 |
| 1/2/18 | Crystal Adams | Flores | meet and confer debrief call with Plaintiffs' counsel: Poonam J., Neha D., Leecia W., Carlos H., Holly C. | 0.6 |
| 1/22/18 | Crystal Adams | Flores | research and fact development iso motion to enforce; discuss upcoming visit to Northern | 1.1 |
| 1/22/18 | Crystal Adams | Flores | co-counsel debrief call with Poonam J., Neha D., and Leecia W. to discuss upcoming visit to Northern Virginia Juvenile Detention Center | 0.4 |
| 1/24/18 | Crystal Adams | Flores | call with Neha Desai to discuss upcoming visit to Northern Virginia Juvenile Detention Center | 0.2 |
| 1/29/18 | Crystal Adams | Flores | co-counsel call with Carlos Holguin, Leecia Welch, Neha Desai, Holly Cooper to discuss legal research, fact development, and upcoming visit to Northern Virginia Juvenile Detention Center | 1.0 |
| 2/6/18 | Crystal Adams | Flores | call with Poonam Juneja, Neha Desai to prepare for interviews with youth detained at NoVA juvenile detention center | 0.4 |
| 2/7/18 | Crystal Adams | Flores | Travel from DC office to NoVa juvenile detention center | 0.4 |
| 2/7/18 | Crystal Adams | Flores | Interviewed class members at NoVA juvenile detention center (Alexandria, VA) | 6.2 |
| 2/7/18 | Crystal Adams | Flores | Travel from NoVa juvenile detention center to DC office | 0.7 |
| 2/12/18 | Crystal Adams | Flores | Call with class member (detained at NoVA) to discuss his questions and concerns re his case | 0.6 |
| 2/13/18 | Crystal Adams | Flores | Call with immigration advocate re class member (detained at NoVA) to discuss his case | 0.3 |
| 2/22/18 | Crystal Adams | Flores | call with Neha Desai, Leecia Welch, and Carlos Holguin to prepare for Shiloh RTC visit | 0.8 |
| 2/24/18 | Crystal Adams | Flores | travel from DC office to hotel in Houston (for trip to Shiloh RTC and SWK Mesa) | 5.9 |
| 2/26/18 | Crystal Adams | Flores | travel from hotel to Shiloh RTC | 0.4 |
| 2/27/18 | Crystal Adams | Flores | interview Flores class members at Shiloh Residential Treatment Center (RTC) | 7.3 |

| 2/27/18 | Crystal Adams | Flores | debrief with team regarding interviews with class members at Shiloh RTC | 0.3 |
|---|---|---|---|---|
| 2/27/18 | Crystal Adams | Flores | travel from Shiloh RTC to hotel | 0.3 |
| 2/27/18 | Crystal Adams | Flores | draft declarations for Flores class members at Shiloh RTC | 2.1 |
| 2/27/18 | Crystal Adams | Flores | travel from hotel to Shiloh RTC | 0.3 |
| 2/28/18 | Crystal Adams | Flores | interview Flores class members at Shiloh Residential Treatment Center (RTC) | 3.9 |
| 2/28/18 | Crystal Adams | Flores | debrief with team regarding interviews with class members at Shiloh RTC | 0.8 |
| 2/28/18 | Crystal Adams | Flores | travel from hotel to Southwest Key Mesa facility | 0.4 |
| 3/1/18 | Crystal Adams | Flores | tour Southwest Key Mesa and meet with staff | 0.8 |
| 3/1/18 | Crystal Adams | Flores | interview Flores class members at Southwest Key Mesa facility | 2.4 |
| 3/1/18 | Crystal Adams | Flores | draft declaration for Flores class member at Southwest Key Mesa | 1.9 |
| 3/1/18 | Crystal Adams | Flores | debrief with team regarding interviews with class members at Southwest Key Mesa | 0.8 |
| 3/1/18 | Crystal Adams | Flores | travel from Southwest Key Mesa to home in Washington, DC | 4.5 |
| 3/12/18 | Crystal Adams | Flores | draft portions of motion to enforce re due process and psychotropic medication legal standards | 5.7 |
| 3/15/18 | Crystal Adams | Flores | draft declarations for class members at NoVA to support motion to enforce | 1.7 |
| 3/16/18 | Crystal Adams | Flores | draft declarations for class members at NoVA to support motion to enforce | 3.3 |
| 3/16/18 | Crystal Adams | Flores | draft declarations for class members at NoVA to support motion to enforce | 3.2 |
| 3/20/18 | Crystal Adams | Flores | draft declarations for class members at NoVA to support motion to enforce | 2.8 |
| 3/20/18 | Crystal Adams | Flores | call with Neha Desai re trip to NoVA on 3/21/18 | 0.4 |
| 3/21/18 | Crystal Adams | Flores | interview class members in NoVA detention center | 5.5 |
| 3/21/18 | Crystal Adams | Flores | debrief with Neha Desai and Poonam Juneja about interviews with class members at NoVA | 0.7 |
| 3/21/18 | Crystal Adams | Flores | draft declarations for class members at NoVA to support motion to enforce | 0.8 |
| 3/21/18 | Crystal Adams | Flores | travel from NoVa juvenile detention center to home | 1 |
| 3/21/18 | Crystal Adams | Flores | debrief call with Neha Desai re: NoVA trip | 0.6 |
| 3/21/18 | Crystal Adams | Flores | edit psych meds section of motion to enforce | 0.4 |
| 3/23/18 | Crystal Adams | Flores | analyze ORR files of class members for evidence to support motion to enforce | 3.7 |
| 3/28/18 | Crystal Adams | Flores | analyze ORR files of class members to support motion to enforce | 1.0 |
| 3/28/18 | Crystal Adams | Flores | draft motion for additional pages re motion to enforce | 1.3 |
| 3/29/18 | Crystal Adams | Flores | draft motion for additional pages re motion to enforce | 1.1 |
| 3/29/18 | Crystal Adams | Flores | call with Neha Desai to discuss drafting motion to enforce | 0.2 |
| 3/29/18 | Crystal Adams | Flores | analyze class members' files for evidence to support motion to enforce | 0.6 |
| 3/29/18 | Crystal Adams | Flores | drafting portions of motion to enforce | 2.5 |
| 4/2/18 | Crystal Adams | Flores | drafting ex parte motion to permit filing of overlength brief in support of motion to enforce | 2.6 |
| 4/2/18 | Crystal Adams | Flores | drafting motion to seal in support of motion to enforce | 1.6 |
| 4/2/18 | Crystal Adams | Flores | co-counsel call with Neha Desai, Poonam Junjea, Melissa Adamson, Carlos Holguin, UC Davis team to discuss motion to enforce, fact development | 1.2 |
| 4/3/18 | Crystal Adams | Flores | drafting motion to seal for motion to enforce | 3.9 |
| 4/3/18 | Crystal Adams | Flores | drafting internal correspondence to Neha Desai, Leecia Welch, Poonam Juneja, Melissa Adamson about ORR's letter regarding administration of psych medication at Shiloh RTC -- to support preparation for motion to enforce | 1.6 |
| 4/5/18 | Crystal Adams | Flores | analyzing file of class member to find evidence to support motion to enforce | 2.1 |
| 4/9/18 | Crystal Adams | Flores | Flores counsel call with UC Davis team, Carlos Holguin, Leecia Welch, Poonam Juneja, Kira Setren re motion to enforce timeline and substance of motion | 0.9 |
| 4/9/18 | Crystal Adams | Flores | Flores counsel call debrief with Poonam Juneja, Kira Setren re motion to seal draft for motion to enforce | 0.5 |
| 4/9/18 | Crystal Adams | Flores | analyze ORR files of class member for evidence to support motion to enforce | 0.6 |
| 4/10/18 | Crystal Adams | Flores | drafting motion to seal and related documents for motion to enforce | 4.2 |
| 4/12/18 | Crystal Adams | Flores | drafting motion to seal and related documents for motion to enforce | 3.5 |
| 4/16/18 | Crystal Adams | Flores | Flores counsel call with UC Davis team, Carlos Holguin, Neha Desai, Poonam Juneja, Kira Setren re timeline re motion to enforce litigation, proposed order for motion to enforce | 1.2 |
| 4/17/18 | Crystal Adams | Flores | drafting notice of appearance form for Flores | 0.3 |
| 4/19/18 | Crystal Adams | Flores | Edit declaration of class member's sponsor re updates in reunification process | 0.7 |
| 4/23/18 | Crystal Adams | Flores | Flores counsel call with Cappy and UC Davis team, Carlos Holguin, Neha Desai, Poonam Juneja, Leecia Welch, Melissa Adamson, Kira Setren re motion to enforce timeline and next steps for filing | 0.3 |
| 4/23/18 | Crystal Adams | Flores | Call with Neha Desai, Poonam Juneja, Leecia Welch, Melissa Adamson, Kira Setren re: motion to enforce timeline, visits to Yolo and Shiloh facilities | 0.9 |
| 4/24/18 | Crystal Adams | Flores | Flores counsel call with Holly Cooper, Carlos Holguin, Neha Desai, Poonam Juneja, Leecia Welch, Melissa Adamson, Kira Setren re proposed order for motion to enforce | 1.0 |
| 4/24/18 | Crystal Adams | Flores | draft language re reunification portion of proposed order for motion to enforce | 1.1 |

| | | | | |
|---|---|---|---|---|
| 4/30/18 | Crystal Adams | Flores | co-counsel call with Neha Desai, Leecia Welch, Poonam Juneja, Melissa Adamson, Kira Setren, Holly Cooper, Carlos Holguin to discuss fact development; motion to enforce timeline | 1.1 |
| 5/7/18 | Crystal Adams | Flores | call with sponsors of class members re reunification process | 0.4 |
| 5/7/18 | Crystal Adams | Flores | co-counsel call with Neha Desai, Leecia Welch, Poonam Juneja, Melissa Adamson, Kira Setren, Holly Cooper, Carlos Holguin to discuss fact development; motion to enforce timeline | 1.1 |
| 5/14/18 | Crystal Adams | Flores | analyze class member ORR files to find evidence to support motion to enforce | 2.7 |
| 5/17/18 | Crystal Adams | Flores | analyze class member ORR files to find evidence to support motion to enforce | 0.2 |
| 5/18/18 | Crystal Adams | Flores | analyze class member ORR files to find evidence to support motion to enforce | 1.3 |
| 5/21/18 | Crystal Adams | Flores | analyze class member ORR files to find evidence to support motion to enforce | 0.7 |
| 5/22/18 | Crystal Adams | Flores | analyze class member ORR files to find evidence to support motion to enforce | 0.5 |
| 5/24/18 | Crystal Adams | Flores | analyze class member ORR files to find evidence to support motion to enforce | 0.4 |
| 5/25/18 | Crystal Adams | Flores | analyze class member ORR files to find evidence to support motion to enforce | 2.1 |
| 5/30/18 | Crystal Adams | Flores | analyze class member ORR files to find evidence to support motion to enforce | 5.0 |
| 5/30/18 | Crystal Adams | Flores | Flores counsel call with Carlos H., Holly C., Leecia W., Neha D., Poonam J., Melissa A., Kira S. re upcoming trips to NoVA detention center and Shiloh RTC, government's response to motion to enforce | 1.4 |
| 6/1/18 | Crystal Adams | Flores | internal NCYL call with Leecia W., Neha D., Poonam J., Melissa A., re: reply to government's opposition to psych meds section of motion to enforce | 1.1 |
| 6/5/18 | Crystal Adams | Flores | Flores counsel call with Carlos H., Holly C., Cappy W., Leecia W., Neha D., Melissa A., Kira S. re upcoming trips to NoVA detention center and Shiloh RTC, government's response to motion to enforce | 1.2 |
| 6/5/18 | Crystal Adams | Flores | prep class member sponsor to increase public awareness of Flores violatons at Shiloh RTC | 0.6 |
| 7/25/18 | Crystal Adams | Flores | counsel call in preparation for oral argument re motion to enforce | 1 |
| 8/20/18 | Crystal Adams | Flores | Meeting with Carlos H. and Dr. Amy Cohen to discuss named plaintiffs and prepare for Shiloh visit | 0.8 |
| 8/20/18 | Crystal Adams | Flores | Interviews with class members at Shiloh | 5.5 |
| 8/24/18 | Crystal Adams | Flores | Call with Neha D. to debrief Shiloh visit | 0.4 |
| 8/24/18 | Crystal Adams | Flores | Travel from Houston to home | 5 |
| 8/24/18 | Crystal Adams | Flores | share with co-counsel analysis of Flores site visit in Houston | 1.0 |
| 8/27/18 | Crystal Adams | Flores | editing letter re noncompliance with 7/30 order granting Flores motion to enforce order | 0.8 |
| 8/27/18 | Crystal Adams | Flores | call with Kira Setren re motion for contempt related to violations of 7/30 order granting motion to enforce | 0.2 |
| 9/5/18 | Crystal Adams | Flores | call with Holly Cooper re facility monitoring under Flores | 0.1 |
| 9/18/18 | Crystal Adams | Flores | research re 9th Cir standard for motion for contempt | 2.7 |
| 9/18/18 | Crystal Adams | Flores | review/edit practice advisory re 7/30 order granting motion to enforce | 1.8 |
| 9/18/18 | Crystal Adams | Flores | working on motion for contempt re violatons of 7/30 order | 2.3 |
| 9/20/18 | Crystal Adams | Flores | working on motion for contempt re violatons of 7/30 order | 0.8 |
| 9/21/18 | Crystal Adams | Flores | draft practice advisory re 7/30 order granting motion to enforce | 1.0 |
| 11/1/18 | Crystal Adams | Flores | Drafting Shiloh noncompliance letter to government | 0.3 |
| 11/8/18 | Crystal Adams | Flores | Drafting letter analyzing government's noncompliance with 7/30 order at Shiloh | 2.3 |
| 11/16/18 | Crystal Adams | Flores | Editing letter analyzing government's noncompliance with 7/30 order at Shiloh | 0.7 |
| 11/26/18 | Crystal Adams | Flores | Drafting letter analyzing government's noncompliance with 7/30 order at Shiloh | 1.2 |
| 11/28/18 | Crystal Adams | Flores | Editing letter analyzing government's noncompliance with 7/30 order at Shiloh | 1.6 |
| 12/10/18 | Crystal Adams | Flores | edit letter analyzing government's noncompliance with 7/30 order at Shiloh | 0.5 |
| 2/4/19 | Crystal Adams | Flores | drafting informed consent settlement proposal re administration of psych meds | 1.5 |
| 2/4/19 | Crystal Adams | Flores | drafting informed consent settlement proposal | 2.5 |
| 2/19/19 | Crystal Adams | Flores | researching legal standard applied to motions to modify interlocutory orders re 7/30 order | 1.2 |
| 3/4/19 | Crystal Adams | Flores | researching legal standard applied to motions to modify interlocutory orders re 7/30 order | 0.5 |
| 3/6/19 | Crystal Adams | Flores | researching legal standard applied to motions to modify interlocutory orders re 7/30 order | 2.1 |
| 3/7/19 | Crystal Adams | Flores | researching contempt motion standard  re violation of 7/30 order | 0.7 |
| **Total** | | | | **209.1** |

| Date | Name | Case Name | Description | Duration |
|------|------|-----------|-------------|----------|
| 9/22/17 | Melissa Adamson | Flores | Perform legal research re DP in preparation for Motion to Enforce | 2.8 |
| 9/25/17 | Melissa Adamson | Flores | Perform legal research in preparation for Motion to Enforce | 3 |
| 9/26/17 | Melissa Adamson | Flores | Perform legal research in preparation for Motion to Enforce | 2.4 |
| 9/27/17 | Melissa Adamson | Flores | Perform legal research re DP in preparation for Motion to Enforce | 1.3 |
| 9/28/17 | Melissa Adamson | Flores | Perform legal research re DP in preparation for Motion to Enforce | 2 |
| 11/15/17 | Melissa Adamson | Flores | Perform legal research in preparation for letter to opposing counsel | 1.5 |
| 11/16/17 | Melissa Adamson | Flores | Review of class member file in preparation for letter to opposing counsel | 2.2 |
| 11/16/17 | Melissa Adamson | Flores | Perform legal research in preparation for letter to opposing counsel | 0.9 |
| 11/17/17 | Melissa Adamson | Flores | Confer with Leecia on legal research for Motion to Enforce | 0.8 |
| 11/21/17 | Melissa Adamson | Flores | Perform legal research re DP issues in preparation for Motion to Enforce | 4.1 |
| 11/27/17 | Melissa Adamson | Flores | Perform legal research in preparation for Motion to Enforce | 3.6 |
| 12/7/17 | Melissa Adamson | Flores | Draft section of meet and confer letter re Shiloh issues | 1.8 |
| 12/11/17 | Melissa Adamson | Flores | Perform legal research in preparation for Motion to Enforce | 1.2 |
| 12/12/17 | Melissa Adamson | Flores | Perform legal research in preparation for Motion to Enforce | 1.4 |
| 12/13/17 | Melissa Adamson | Flores | Perform legal research in preparation for Motion to Enforce | 2 |
| 12/19/17 | Melissa Adamson | Flores | Perform legal research in preparation for Motion to Enforce | 4.4 |
| 12/22/17 | Melissa Adamson | Flores | Perform legal research in preparation for Motion to Enforce | 3.7 |
| 12/27/17 | Melissa Adamson | Flores | Perform legal research in preparation for Motion to Enforce | 1.5 |
| 12/27/17 | Melissa Adamson | Flores | Perform legal research in preparation for Motion to Enforce | 5.6 |
| 1/2/18 | Melissa Adamson | Flores | Perform legal research in preparation for Motion to Enforce | 2.4 |
| 1/3/18 | Melissa Adamson | Flores | Meet with Neha regarding legal research | 0.8 |
| 1/4/18 | Melissa Adamson | Flores | Perform legal research in preparation for Motion to Enforce | 1 |
| 1/10/18 | Melissa Adamson | Flores | Prepare letter to opposing counsel | 1.1 |
| 1/12/18 | Melissa Adamson | Flores | Perform legal research in preparation for Motion to Enforce | 2.3 |
| 1/16/18 | Melissa Adamson | Flores | Confer with Neha regarding legal research | 2 |
| 1/17/18 | Melissa Adamson | Flores | Perform legal research in preparation for Motion to Enforce | 1.5 |
| 1/22/18 | Melissa Adamson | Flores | Flores team meeting (PJ, ND, LW, CA, HC, CH) | 1 |
| 1/24/18 | Melissa Adamson | Flores | Perform legal research in preparation for Motion to Enforce | 1.4 |
| 1/24/18 | Melissa Adamson | Flores | Perform legal research in preparation for Motion to Enforce | 2.6 |
| 1/25/18 | Melissa Adamson | Flores | Perform legal research in preparation for Motion to Enforce | 3 |
| 1/26/18 | Melissa Adamson | Flores | Perform legal research in preparation for Motion to Enforce | 3.5 |
| 1/29/18 | Melissa Adamson | Flores | Flores team meeting (PJ, ND, LW, CA, HC, CH) | 1 |
| 1/30/18 | Melissa Adamson | Flores | Circulate legal research to Flores team | 0.1 |
| 2/1/18 | Melissa Adamson | Flores | Review of client declarations in preparation for Motion to Enforce | 1.5 |
| 2/1/18 | Melissa Adamson | Flores | Call with Neha re: review of client declarations | 0.5 |
| 2/2/18 | Melissa Adamson | Flores | Review of client declarations in preparation for Motion to Enforce | 2 |
| 2/2/18 | Melissa Adamson | Flores | Flores team meeting (PJ, ND, LW, CA, HC, CH) | 0.8 |
| 2/5/18 | Melissa Adamson | Flores | Meet with Neha re: Motion to Enforce | 0.5 |
| 2/5/18 | Melissa Adamson | Flores | Flores team meeting (PJ, ND, LW, CA, HC, CH) | 1 |
| 2/6/18 | Melissa Adamson | Flores | Review of client declarations in preparation for Motion to Enforce | 1.5 |
| 2/7/18 | Melissa Adamson | Flores | Preparation of Motion to Enforce | 2.8 |
| 3/1/18 | Melissa Adamson | Flores | Review of ORR UAC Procedures in preparation for Motion to Enforce | 3.1 |
| 3/4/18 | Melissa Adamson | Flores | Review of ORR UAC Procedures in preparation for Motion to Enforce | 1.6 |
| 3/5/18 | Melissa Adamson | Flores | Flores team meeting (PJ, ND, LW, CA, HC, CH) | 1.2 |
| 3/5/18 | Melissa Adamson | Flores | Flores team meeting (PJ, ND, LW, CA) | 0.7 |
| 3/6/18 | Melissa Adamson | Flores | Review of class member files in preparation for Motion to Enforce | 2.1 |
| 3/8/18 | Melissa Adamson | Flores | Review of class member declarations in preparation for Motion to Enforce | 2.5 |
| 3/8/18 | Melissa Adamson | Flores | Draft Motion to Enforce | 1.9 |
| 3/9/18 | Melissa Adamson | Flores | Draft Motion to Enforce | 2.3 |
| 3/10/18 | Melissa Adamson | Flores | Draft Motion to Enforce | 1.4 |
| 3/12/18 | Melissa Adamson | Flores | Flores team meeting (PJ, ND, LW, CA, CH) | 1 |
| 3/12/18 | Melissa Adamson | Flores | Flores team meeting (PJ, ND, LW, CA) | 0.5 |
| 3/12/18 | Melissa Adamson | Flores | Prepare client declaration | 1.1 |
| 3/15/18 | Melissa Adamson | Flores | Prepare client declaration | 0.3 |
| 3/15/18 | Melissa Adamson | Flores | Meet with Neha re: client interviews | 1.1 |
| 3/15/18 | Melissa Adamson | Flores | Prepare and submit G-28s for clients | 0.7 |
| 3/20/18 | Melissa Adamson | Flores | Emails with ORR facility in preparation for client interviews | 0.2 |
| 3/21/18 | Melissa Adamson | Flores | Left voicemail for ORR facility | 0.1 |
| 3/22/18 | Melissa Adamson | Flores | Review of ORR facility guidelines in preparation for Motion to Enforce | 2.5 |
| 3/22/18 | Melissa Adamson | Flores | Emails with ORR facility in preparation for client interviews | 0.2 |
| 3/23/18 | Melissa Adamson | Flores | Prepare for client interview | 0.9 |
| 3/23/18 | Melissa Adamson | Flores | Phone calls to client in preparation for interview | 0.4 |
| 3/23/18 | Melissa Adamson | Flores | Client interview | 2.3 |

| 3/23/18 | Melissa Adamson | Flores | Prepare client declaration | 1.1 |
|---|---|---|---|---|
| 3/23/18 | Melissa Adamson | Flores | Review of class member's files in preparation for Motion to Enforce | 2 |
| 3/23/18 | Melissa Adamson | Flores | Flores team meeting (PJ, ND, LW, CA, HC) | 1 |
| 3/26/18 | Melissa Adamson | Flores | Flores team meeting (PJ, ND, LW, CA) | 0.5 |
| 3/27/18 | Melissa Adamson | Flores | Client interview via phone | 1.9 |
| 3/27/18 | Melissa Adamson | Flores | Phone call with advocate | 0.3 |
| 3/27/18 | Melissa Adamson | Flores | Prepare client declaration | 0.9 |
| 3/27/18 | Melissa Adamson | Flores | Review edits on Motion to Enforce | 1 |
| 3/28/18 | Melissa Adamson | Flores | Prepare client declaration | 1.2 |
| 3/29/18 | Melissa Adamson | Flores | Client interview via phone | 2.3 |
| 3/29/18 | Melissa Adamson | Flores | Prepare client declaration | 1.5 |
| 3/29/18 | Melissa Adamson | Flores | Prepare exhibits for Motion to Enforce | 0.7 |
| 3/30/18 | Melissa Adamson | Flores | Prepare client declaration | 0.6 |
| 3/30/18 | Melissa Adamson | Flores | Flores team meeting (PJ, ND, LW, CA, HC, CH) | 1 |
| 4/2/18 | Melissa Adamson | Flores | Flores team meeting (PJ, ND, LW, CA, HC) | 1 |
| 4/2/18 | Melissa Adamson | Flores | Flores team meeting (PJ, ND, LW, CA) | 0.5 |
| 4/3/18 | Melissa Adamson | Flores | Prepare response to opposing counsel | 1.2 |
| 4/11/18 | Melissa Adamson | Flores | Review Motion to Enforce in preparation for filing | 1.3 |
| 4/11/18 | Melissa Adamson | Flores | Update Motion to Enforce exhibit list with pseudonyms | 0.8 |
| 4/14/18 | Melissa Adamson | Flores | Review accompanying motions in preparation for Motion to Enforce filing | 2.2 |
| 4/15/18 | Melissa Adamson | Flores | Review Motion to Enforce in preparation for filing | 2.8 |
| 4/16/18 | Melissa Adamson | Flores | Flores team meeting (PJ, ND, CA, HC, CH) | 0.9 |
| 4/16/18 | Melissa Adamson | Flores | Review Motion to Enforce in preparation for filing | 2.4 |
| 4/23/18 | Melissa Adamson | Flores | Flores team meeting (PJ, ND, LW, CA) | 0.6 |
| 4/24/18 | Melissa Adamson | Flores | Flores team meeting (PJ, ND, LW, HC, CA, CH) | 0.5 |
| 4/24/18 | Melissa Adamson | Flores | Perform legal research in preparation for response to opposing counsel | 1.5 |
| 5/1/18 | Melissa Adamson | Flores | Flores team meeting (PJ, ND, LW, CA, HC, CH) | 1.4 |
| 5/3/18 | Melissa Adamson | Flores | Flores team meeting (PJ, ND, LW, CA) | 0.5 |
| 5/7/18 | Melissa Adamson | Flores | Perform legal research in preparation for response to opposing counsel | 0.4 |
| 5/9/18 | Melissa Adamson | Flores | Flores team meeting (PJ, ND, LW, CA, HC, CH) | 1.3 |
| 5/14/18 | Melissa Adamson | Flores | Flores team meeting (PJ, ND, LW, CA) | 0.6 |
| 5/16/18 | Melissa Adamson | Flores | Obtained JCAHO standards | 2.1 |
| 5/29/18 | Melissa Adamson | Flores | Review of government's reply | 1.7 |
| 5/30/18 | Melissa Adamson | Flores | Flores team meeting (PJ, ND, LW, CA, HC, CH) | 1.4 |
| 6/1/18 | Melissa Adamson | Flores | Discussion of response draft (LW, ND, PJ, CA) | 0.9 |
| 6/1/18 | Melissa Adamson | Flores | Draft section of the response | 5.9 |
| 6/1/18 | Melissa Adamson | Flores | Draft section of the response | 4.3 |
| 6/5/18 | Melissa Adamson | Flores | Edit draft section of the reply | 2.4 |
| 6/15/18 | Melissa Adamson | Flores | Edits for the reply | 0.9 |
| 7/17/18 | Melissa Adamson | Flores | Preparation of materials for oral argument | 1.2 |
| 7/18/18 | Melissa Adamson | Flores | Preparation of materials for oral argument | 1.7 |
| 7/24/18 | Melissa Adamson | Flores | Call to prepare for hearing (CH, PJ, ND, CA, HC) | 0.9 |
| 7/27/18 | Melissa Adamson | Flores | Travel to hearing | 5.8 |
| 7/27/18 | Melissa Adamson | Flores | Hearing on MTE | 1.2 |
| 9/24/18 | Melissa Adamson | Flores | Meet with Neha re: legal research | 1.1 |
| 9/25/18 | Melissa Adamson | Flores | Research re: state law | 3.2 |
| 12/12/18 | Melissa Adamson | Flores | Perform legal research in preparation for Motion to Enforce | 2.4 |
| 12/15/18 | Melissa Adamson | Flores | Confer with Neha regarding legal research | 0.9 |
| 1/14/19 | Melissa Adamson | Flores | Review and analysis of govt Shiloh proposal | 2.5 |
| 1/22/19 | Melissa Adamson | Flores | Confer with ND, CA re: govt Shiloh proposal | 0.6 |
| 1/24/19 | Melissa Adamson | Flores | Confer with ND, CA, HC, CH re: govt Shiloh proposal | 0.7 |
| 1/24/19 | Melissa Adamson | Flores | Confer with ND re: govt Shiloh proposal | 0.5 |
| 1/25/19 | Melissa Adamson | Flores | Preparation of Plaintiff's Shiloh counter-proposal | 0.7 |
| 2/6/19 | Melissa Adamson | Flores | Edits to Plaintiff's Shiloh counter-proposal | 1.4 |
| **Total** | | | | **188.9** |

| Date | Name | Case Name | Description | Duration |
|------|------|-----------|-------------|----------|
| 2/6/18 | Kira Setren | Flores | Exhibit preparation for motion to enforce filing per P. Juneja | 3.75 |
| 2/7/18 | Kira Setren | Flores | Exhibit preparation for motion to enforce filing per P. Juneja and N. Desai | 3.75 |
| 3/7/18 | Kira Setren | Flores | Prepare Flores binder for MTE | 0.2 |
| 3/12/18 | Kira Setren | Flores | Binders for Neha and Melissa for MTE | 1.8 |
| 3/14/18 | Kira Setren | Flores | Binders for Neha and Melissa for MTE | 1.8 |
| 3/16/18 | Kira Setren | Flores | Prepare Flores binder for MTE | 1.4 |
| 3/20/18 | Kira Setren | Flores | Flores binders for Neha and Melissa | 0.7 |
| 3/22/18 | Kira Setren | Flores | Flores binders for Neha and Melissa | 0.3 |
| 3/22/18 | Kira Setren | Flores | Flores MTE exhibits discussion with Poonam; reviewed rules to prep motion to seal; prepped exhibits for MTE | 4 |
| 3/23/18 | Kira Setren | Flores | Flores MTE exhibit preparation | 2 |
| 3/26/18 | Kira Setren | Flores | Flores e-binder updates and corr. - Neha, Melissa | 0.6 |
| 3/26/18 | Kira Setren | Flores | Flores MTE exhibit preparation | 0.4 |
| 3/26/18 | Kira Setren | Flores | Flores MTE declarations to cross-reference with brief and doc review | 0.8 |
| 3/27/18 | Kira Setren | Flores | Flores action items from meeting per Neha | 0.8 |
| 3/27/18 | Kira Setren | Flores | Flores MTE exhibit preparation | 2.8 |
| 3/27/18 | Kira Setren | Flores | Flores tracker - MTE, declarations, case files per Neha | 1.2 |
| 3/28/18 | Kira Setren | Flores | Flores MTE exhibit preparation | 3.3 |
| 3/29/18 | Kira Setren | Flores | Flores tracker updates per Neha and Poonam; attention to and maintenance of plaintiffs' files | 3.1 |
| 4/2/18 | Kira Setren | Flores | Meeting with Neha re: case/exhibit updates; prepared same | 1.3 |
| 4/2/18 | Kira Setren | Flores | Prepared MTE exhibits; corr. re: same | 0.7 |
| 4/3/18 | Kira Setren | Flores | Prepared MTE exhibits | 2.2 |
| 4/3/18 | Kira Setren | Flores | Flores tracker updates | 0.3 |
| 4/3/18 | Kira Setren | Flores | Reviewed govt Shiloh letter per Neha | 0.1 |
| 4/3/18 | Kira Setren | Flores | Prepared MTE exhibits; meeting with Melissa re: same | 1.8 |
| 4/5/18 | Kira Setren | Flores | MTE exhibit prep; corr. Re: same; tracker updates | 2.5 |
| 4/5/18 | Kira Setren | Flores | Filing logistics prep | 0.2 |
| 4/5/18 | Kira Setren | Flores | Meeting with Neha and Poonam re: MTE and prep re: same; follow up re: same | 1.8 |
| 4/6/18 | Kira Setren | Flores | Prepared MTE exhibits | 4.5 |
| 4/9/18 | Kira Setren | Flores | Meeting prep and TPs | 0.2 |
| 4/9/18 | Kira Setren | Flores | Flores MTE and exhibit prep; corr. Re: same | 3.4 |
| 4/9/18 | Kira Setren | Flores | Flores co-counsel and internal calls | 1.5 |
| 4/10/18 | Kira Setren | Flores | MTE exhibit tracking/prep; pseudonym tracker; Flores tracker | 9.1 |
| 4/11/18 | Kira Setren | Flores | MTE exhibit prep; corr. Re: same. | 6.5 |
| 4/12/18 | Kira Setren | Flores | Bluebooked, citechecked, proofread, and edited the motion to enforce and accompanying papers | 9.6 |
| 4/13/18 | Kira Setren | Flores | Prepared the motion to enforce and exhibits | 8.7 |
| 4/16/18 | Kira Setren | Flores | MTE prep; corr. re: same and re: related comms | 6.2 |
| 4/16/18 | Kira Setren | Flores | Co-counsel call re: MTE | 1 |
| 4/19/18 | Kira Setren | Flores | Named Plaintiffs file maintenance; prepared MTE portions for external partners; corr. re: same | 4 |
| 4/23/18 | Kira Setren | Flores | MTE exhibit filing prep | 0.8 |
| 4/23/18 | Kira Setren | Flores | finalizing, filing, and serving sealed docs per court order | 2.2 |
| 4/25/18 | Kira Setren | Flores | MTE order filing and prep | 2 |
| 5/7/18 | Kira Setren | Flores | Meetings with Neha and Crystal re: flores tracker next steps; prepared tracker | 2.3 |
| 5/7/18 | Kira Setren | Flores | Drafted Yolo Monitoring Letter per Neha | 0.5 |
| 5/7/18 | Kira Setren | Flores | Drafted Yolo Monitoring Letter per Neha; corr. Re: same | 0.9 |
| 5/18/18 | Kira Setren | Flores | Prepare YOLO visit; meeting with Neha re: same | 1.6 |
| 6/7/18 | Kira Setren | Flores | Assisted P. Juneja with MTE Reply | 0.7 |

| 6/11/18 | Kira Setren | Flores | Prepared the motion to enforce and exhibits | 4.8 |
|---|---|---|---|---|
| 6/14/18 | Kira Setren | Flores | Flores MTE prep; corr. re: same | 1.5 |
| 6/15/18 | Kira Setren | Flores | MTE Reply citecheck and edit | 7.8 |
| 6/25/18 | Kira Setren | Flores | Drafted visit letter to OIL per N. Desai | 0.5 |
| 6/25/18 | Kira Setren | Flores | Drafted visit letter to OIL per N. Desai | 0.9 |
| 7/17/18 | Kira Setren | Flores | Drafted visit letter to OIL per N. Desai | 0.3 |
| 7/26/18 | Kira Setren | Flores | Carlos MTE oral argument prep call | 0.8 |
| 9/18/18 | Kira Setren | Flores | Prepared contempt motion per Neha | 0.7 |
| 9/19/18 | Kira Setren | Flores | Meeting with Neha re: Yolo trip | 0.7 |
| 9/20/18 | Kira Setren | Flores | Prepared materials for Neha's Yolo trip | 1.6 |
| 9/30/18 | Kira Setren | Flores | Tornillo letter prep per Neha | 1.5 |
| 10/15/18 | Kira Setren | Flores | Motion to Enforce filing prep per Neha | 2 |
| 10/16/18 | Kira Setren | Flores | Motion to Enforce filing prep; drafted filing papers; corr. with Neha, Holly Cooper, and Rene Kathawala re: same | 4 |
| 11/28/18 | Kira Setren | Flores | Shiloh letter assistance per Neha & Crystal | 0.7 |
| 11/28/18 | Kira Setren | Flores | Shiloh letter assistance per Neha | 4.2 |
| **Total** | | | | **141.3** |

# Exhibit D

| | | $75 base rate adjusted for inflation | | | 9th Cir. inflation- | Market Rates | |
|---|---|---|---|---|---|---|---|
| | Year | CPI-U | Multiplier | Adjusted rate | adjusted rate | L. Welch | Paralegal |
| | Oct. 1981 | 93.4 | | $ 75.00 | | | |
| | 2017 | 245.12 | 2.624 | $ 196.83 | $ 196.79 | $ 630 | $ 100 |
| | 2018 | 251.107 | 2.689 | $ 201.64 | $ 201.60 | $ 665 | $ 100 |
| | Jan-19 | 251.712 | 2.695 | $ 202.12 | $ 201.60 | $ 690 | $ 100 |

| Attorneys | Law School Graduation Year | Year Work was Performed | Hours | Fees at $75 inflation-adjusted rate | Fees at 9th Cir. Inflation-adjusted rate | Fees at Market Rates | Fees Requested |
|---|---|---|---|---|---|---|---|
| Leecia Welch | 1996 | 2017 | 80.0 | $ 15,746 | $ 15,743.20 | $ 50,400 | $ 50,400 |
| | | 2018 | 157.3 | $ 31,718 | $ 31,712 | $ 104,605 | $ 104,605 |
| | | 2019 | 0.9 | $ 182 | $ 181 | $ 621 | $ 621 |
| Neha Desai | 2006 | 2017 | 122.2 | $ 24,053 | $ 24,048 | | $ 24,053 |
| | | 2018 | 115.1 | $ 23,209 | $ 23,204 | | $ 23,209 |
| Poonam Juneja | 2009 | 2017 | 131.0 | $ 25,785 | $ 25,779 | | $ 25,785 |
| | | 2018 | 145.9 | $ 29,419 | $ 29,413 | | $ 29,419 |
| Freya Pitts | 2013 | 2018 | 47.0 | $ 9,477 | $ 9,475 | | $ 9,477 |
| | | 2019 | 1.3 | $ 263 | $ 262 | | $ 263 |
| Crystal Adams | 2015 | 2017 | 41.4 | $ 8,149 | $ 8,147 | | $ 8,149 |
| | | 2018 | 159.3 | $ 32,121 | $ 32,115 | | $ 32,121 |
| | | 2019 | 8.4 | $ 1,698 | $ 1,693 | | $ 1,698 |
| Melissa Adamson | 2017 | 2017 | 46.2 | $ 9,094 | $ 9,092 | | $ 9,094 |
| | | 2018 | 136.3 | $ 27,483 | $ 27,478 | | $ 27,483 |
| | | 2019 | 6.4 | $ 1,294 | $ 1,290 | | $ 1,294 |
| Kira Setren | Paralegal | 2018 | 141.3 | | | $ 14,130 | $ 14,130 |
| Firm sub-total | | | 1340.0 | $ 239,689 | $ 239,634 | | $ 361,799 |

Exhibit 3

No. 18-56286

_____

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT
_____

JENNY LISETTE FLORES, et. al.,

Plaintiffs/Appellees,

v.

WILLAIM BARR, Attorney General; et. al.,

Defendants/Appellants.

_____

DECLARATION OF HOLLY S. COOPER IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEY'S FEES
_____

I, HOLLY S. COOPER, declare:

1.   I am an attorney, clinical professor, and Co-director of the UC Davis School
of Law's Immigration Law Clinic. My business address is: One Shields Ave.
TB-30, Davis, CA 95616. I am licensed to practice law before the courts of
the State of California, the United States District Courts for the Northern,
Central, Southern and Eastern Districts of California, the United States
Courts of Appeals for the Ninth Circuit and the Supreme Court of the United
States. My California State Bar number is 197626.

1

2.   I received my Juris Doctorate from U.C. Davis School of Law in May of
1998.

3.   I make this declaration in support of Plaintiffs' Motion for Attorney Fees
under the Equal Access to Justice Act in *Flores v. Barr*, Docket Number: 18-
56286. I am co-counsel in the case representing Plaintiffs-Appellees.

4.   Before coming to U.C. Davis School of Law, I worked at Reed Smith LLP
(formerly Crosby, Heafey, Roach & May LLP), Fellom & Solorio, and the
Florence Immigrant & Refugee Rights Project in Florence, Arizona.  At the
Florence Project I initiated the first friend of the court program for detained
immigrant children in collaboration with the Executive Office for
Immigration Review. These experiences helped me develop an expertise in
litigating the rights of immigrants, especially the rights of detained
immigrants.

5.   I began teaching at UC Davis School of Law in March 2006 as the Associate
Director of the Immigration Law Clinic. I became the Co-Director of the
Clinic around 2016. The focus of my practice at the Clinic is training students
in complex federal immigration litigation. The Clinic represents immigrants
in detention in federal court actions, including writs of habeas corpus,
petitions for review, petitions at the Supreme Court, and class action
litigations in pursuit of more procedural fairness and to obtain better
conditions in immigration detention centers.

6.   Since 1998, my practice has been almost exclusively in the area of
immigration law. I specialize in the intersection of immigrants' rights, civil
rights, and prisoners' rights. In the Immigration Law Clinic, I focus on
creating a pedagogical program to educate law students on the civil rights of

2

immigrant prisoners and detainees and how to effectively advocate on their behalf.

7.  Since 1998, I estimate that I have represented hundreds of individuals in individual proceedings before the United States Citizenship and Immigration Services, the former Immigration and Naturalization Service, the Department of Homeland Security, the Executive Office for Immigration Review, the Board of Immigration Appeals, the United States district courts, the United States Circuit Courts of Appeals for the Ninth Circuit, and the Supreme Court of the United States. I have also represented thousands of class members in class action litigations.

8.  I have been a member of the American Immigration Lawyers Association ("AILA") since 1999.  I was appointed for two years to the AILA Liaison Committee to the Office of the Chief Immigration Judge and Board of Immigration Appeals. I also served for a full five-year tenure on the ABA's Immigration Commission, and currently serve on the Immigration Committee under the Criminal Justice Section of the ABA.

9.  I have also received the following awards for my advocacy:

- Woman of the Year 2018 for District 04 (selected by Assemblymember Aguiar-Curry)
- Woman of the Year 2018 Congressman Garamendi
- Mexican American Concilio Community Award (2017)
- Legal Services for Children's Community Partner Award (2017)
- Yolo County District Attorney's Multi-Cultural Community Council Award (2017)
- UC Davis Immigration Law Clinic Recognition State Senate (2017)

3

- UC Davis Immigration Law Clinic Recognition State Assembly (2016)
- National Lawyers Guild – Carol Weiss King Award (2011)
- King Hall Legal Foundation – Outstanding Alumni Award (2011)
- UC Davis Immigration Clinic Alumni Council – Public Interest Award (2007)

10.  I have successfully litigated, as the attorney of record and as amicus counsel, several cases published as precedent by the federal courts and the California Supreme Court, and many more that were not designated as precedent.  I have won or provided amicus briefing in multiple favorable published decisions, including but not limited to: *Flores v. Sessions,* 862 F. 3d. 863 (9th Cir. 2017)(holding detained children have a continued right to a bond hearing under the Flores Settlement Agreement); *Saravia v. Sessions,* 280 F. Supp. 3d 1168  (N.Dist. Cal. 2017)(finding immigrant children who were rearrested on purported gang allegations had right to a bond hearing*); Rodriguez, et al. v. Robbins,* 804 F.3d 1060 (9th Cir. 2015)(finding immigrants have a right to an individualized bond hearing)[1]; *People v. Patterson,* 2 Cal. 5th 885 (2017)(holding criminal defenders have a duty to provide specific advice as to the immigration consequences of a plea*); Flores-Torres v. Mukasey,* 548 F.3d 708 (9th Cir. 2008)(finding federal court could exercise habeas jurisdiction over person in immigration custody with colorable claim to US citizenship), and *Flores-Torres v. Holder*, 680 F. Supp. 2d 1099 (N.D. Cal. 2010) (declaring petitioner was a US citizen*), Robles-Urrea v. Holder,* 678 F.3d 702 (9th Cir. 2012)(holding misprision of a felony

---

[1] This case was overruled in part by the Supreme Court of the United States in *Jennings v. Rodriguez,* but remand on the constitutional issue is pending. 138 S. Ct. 830 (2018).

4

was not a crime involving moral turpitude); *Flores-Lopez v. Holder,* 685 F.3d 857(9th Cir. 2012)(finding resisting arrest was not an aggravated felony); *Singh v. Holder,* 638 F.3d 1196 (9th Cir. 2011)(holding government bore the burden of proof by clear and convincing evidence in administrative bond hearings where immigrant in prolonged detention). The cases have changed the legal landscape of immigration detention, federal court habeas jurisdiction, and criminal deportability.

11.  I have lectured and provided numerous trainings throughout the United States on litigating immigration detention issues at continuing legal education seminars and at the national conferences of the AILA, the National Immigration Project of the National Lawyers' Guild, and the American Bar Association.  I also served a full tenure on the ABA Immigration Commission as an advisor and member of the commission.

12.  I have published various articles on detention litigation strategies for AILA including: *Getting Out: Strategies for Challenging Unlawful Detention in Federal Court* (2006) *and Freedom from ICE Custody: A Desert Illusion or A Litigation Possibility?* (2009). I also authored the detention chapter in the Immigrant Legal Resource Center's book entitled <u>Defending Immigrants in the Ninth Circuit</u> (ILRC 2008). A full list of my publications is attached as an addendum to this declaration in the form of my curriculum vitae.

13.  I have testified twice as an expert witness on immigration law. I have served as an expert consultant to Amnesty International and Human Rights Watch for their reports on immigration detention conditions and the rights of immigrant detainees, and provide expert consultations to Santa Barbara County. Moreover, I provided expert declarations for *USA v. California,* Case

5

No. 2:18-cv-00490-JAM-KJN (lawsuit filed by Trump administration against California, in part, regarding the legality of California's sanctuary laws) and *Padilla v. ICE,* Case No. 2:18-cv-00928-MJP (class action litigation surrounding the legality of detention for arriving asylum seekers). My declarations were cited by the courts their favorable orders.

14.   I believe that my particular expertise and knowledge were required for successful resolution of this case. This was a complex case that raised complex issues of immigration detention jurisprudence as it pertains to immigrant children, federal litigation, child welfare laws, consent decrees, and constitutional standards.

**15.**   Successful resolution of this case required comprehensive understanding of the evolution of immigration law after the enactments of the Homeland Security Act and the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA, P.L. 110-457). My experience successfully litigating *Flores v. Sessions,* 862 F. 3d. 863 (9th Cir. 2017) gave me the critical litigation experience to understand legal standards governing consent decrees, and their intersectionality with legislative changes. I also litigated *Saravia v. Sessions,* 280 F. Supp. 3d 1168 (N.Dist. Cal. 2017) where we were able to obtain a preliminary injunction granting bond hearings to immigrant children rearrested by Immigration Customs Enforcement who were detained on purported gang allegations. I also litigated *Singh v. Holder,* 638 F.3d 1196 (9th Cir. 2011) where I successfully challenged the legal standards applied to immigrants in prolonged detention. Moreover, I gained expertise in federal court jurisdiction through my litigation of *Flores-Torres v. Mukasey*, 548 F.3d 708 (9th Cir. 2008) and *Flores-Torres v. Holder*, 680 F.

6

Supp. 2d 1099 (N.D. Cal. 2010) –where critical aspects  of the cases was federal court jurisdiction and the constitutionality and legality of the detention. I also assisted on the amici brief in *Casas-Castrillon v. Dept. of Homeland Sec.,* 535 F.3d 942 (9th Cir. 2008) and *Rodriguez v. Robbins*, 804 F.3d 1060, where the critical issues were determining the substantive and procedural due process rights of immigrants who are detained for prolonged periods of time.  I also successfully filed a petition for writ of habeas corpus *Ramirez v. Burwell,* Case No. 2:16-cv-1511-TLN-EFB, a case involving the legality of the detention of an unaccompanied minor in the custody of the Office of Refugee Resettlement ("ORR").  It was one of the first habeas petitions filed against ORR for a child in prolonged detention. Moreover, most of my published legal articles have dealt with substantive and procedural due process rights of detained immigrants.

16.  I believe that my expertise in these fields of law was necessary for successful resolution of this case because of the important but complicated statutory construction issues, child welfare law analysis, and thorough investigation of consent decree violations that Plaintiffs suffered. Moreover, development of the legal issues at the hearing and in the motion to enforce required someone with my knowledge and experience of detention standards, especially as they pertain to immigrant children.

17.  Very few immigration attorneys in the country engage in federal court litigation on behalf of detained immigrant children—in fact *Ramirez v. Burwell* was one of the few habeas petitions in the entire nation that had been filed on behalf of a detained child in the custody of the Office of Refugee Resettlement. Of those attorneys, very few would have taken on a case of this

7

complexity. I do not believe that there are any qualified attorneys that would be willing to engage in this complex litigation at the EAJA statutory rate of around $196 to 201 per hour (depending on the year of the work). I am requested an enhanced rate of $650 per hour for my time.

18.  I am proficient in Spanish. The majority of class members in the litigation the CHRCL conducts, including *Flores*, are monolingual Spanish-speakers. In my opinion, the ability to communicate with these class members in their native language is essential to afford them a fair chance of prevailing.

19.  I have personally reviewed the record to accurately determine which claims Plaintiffs prevailed on and which ones they did not. I am now seeking attorneys' fees for only 235.16 hours I spent on this litigation and the enforcement of the court's order. This is a conservative number and is nowhere close to the amount of time I have expended on this litigation. A printout of these time records is attached to this declaration as **Exhibit A.**

20.  I personally and closely supervised the work of the law students working on this case.

21. I have categorically reduced the number of hours claimed by the students on prevailing claims in this case by 20%.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 15, 2019 in Davis, California.

/s/ Holly S. Cooper
Holly S. Cooper
Declarant

8

**Holly Stafford Cooper**
**UNIVERSITY OF CALIFORNIA, DAVIS**
**SCHOOL OF LAW**
**One Shields Avenue TB 30**
**Davis, CA 95616**

---

## EDUCATION

University of California, Davis, School of Law
        Juris Doctorate, May 1998

Loyola University School of Law
        1995-1996

University of California, San Diego
        Bachelor of Arts in Political Science, June 1993

*Universita di Padova*, Italy  1991-1992
        *Facolta delle Scienze Politiche*

---

## IMMIGRATION-RELATED WORK EXPERIENCE

**University of California, Davis School of Law**
Davis, California

Lecturer March 2006-present
Teach weekly classes for the Immigration Law Clinic on timely litigation strategies for detained immigrants.  Classes focus on practical litigation skills for students enrolled in the Immigration Law Clinic.  The course engages students to explore immigration consequences for criminal defendants; federal litigation strategies for detained immigrants; post-conviction relief for immigrant criminal defendants and students strategize about the immigration cases being represented by the students.

Supervising Attorney for the King Hall Immigrant Detention Program ("KHID")
Supervise law students representing immigrant detainees.  Students represent detained immigrant clients before the Executive Office for Immigration Review, the Ninth Circuit Court of Appeals, before the District Courts on writ of habeas corpus and before the Board of Immigration Appeals. KHID also advocates for legislative change for detained immigrants.

ABA Immigration Commission Member (2012 – present)
Help in drafting amicus briefs for the ABA on immigration detention issues, authored resolutions, authored comments on immigration and detention regulations, help plan panels, MCLE trainings on immigration law, and participated in border delegations.

1

**Florence Immigrant & Refugee Rights Project**
Florence, Arizona

Senior Staff Attorney 2002-2006
Supervise legal staff, legal interns, and pro bono lawyers at the Florence Project.  Conduct daily
rights presentations at the Eloy Detention Center and conduct individual interviews with detainees.
Represent detainees in immigration proceedings and supervise law students representing detainees
before the immigration court.  Represent individuals on appeal before the Board of Immigration
Appeals.  Assist detainees with pro se writs of habeas corpus, petitions for review at the Ninth
Circuit, any application for relief before the immigration court.  Write legal briefs, motions and
pleading sheets for individual detainees.  Advise state and federal public defenders on potential
immigration consequences for criminal convictions.


Detained Children's Attorney October 2000-October 2002
Initiated Detained Children's Project for minors detained in Department of Homeland Security
custody. Created a model for rights presentations for detained children. Provided rights
presentations and individual orientations to all children in DHS custody in Arizona. Represented
children in immigration proceedings. Developed and trained network of  pro bono attorneys for
detained children's cases. Advocated for improved conditions of confinement for detained children.
Assisted in federal litigation allowing detained juveniles to access state court dependency
proceedings.  Developed model briefs for national distribution on asylum issues for children.

**Law Offices of Fellom & Solorio**
San Francisco, CA

Staff Attorney  October 1999-October 2000
Represented clients with immigration related matters, i.e., removal, asylum proceedings, asylum
interviews, adjustment of status interviews and naturalization interviews.  Wrote legal briefs.

**La Raza Centro Legal**
San Francisco, CA October 1999 - October 2000
Volunteered at legal clinic to provide immigration-related advice to clients.

**San Francisco Bar Association Immigrant HIV Assistance Program**
August 1999-October 2000.
Volunteered to assist HIV-positive asylees with applications to adjust status.

MCLE Training on "How to Adjust an HIV-positive Asylee."

**Lawyers' Committee for Civil Rights**
San Francisco, CA, November 1998 - October 2000


Volunteered to represent multiple political asylum applicants in preparing asylum applications,
researching country conditions, and preparing briefs.

2

Presented MCLE lecture for immigration lawyers on August 31, 1999 on Pro Bono Representation for Asylees

Volunteered for Street Law Program. Taught class about affirmative action legislation.

**National Network for Immigrant and Refugee Rights**
Oakland, CA January 1999 – October 2000
Volunteered to prepare article persuading jurisdictions to pass municipal ordinances creating "safe havens" for immigrants.

**U.C. Davis School of Law, Immigration Clinic**
August 1997 – September 1998
Represented clients in removal proceedings as a law student under the supervision of Professor Smith.  Prepared clients for hearings.  Drafted legal briefs in support of clients' cases.

**Immigration Bond Project of the National Lawyers Guild**, San Francisco, CA
September 1997- March 1998
Represented detainees in DHS detention facility for bond redetermination hearings. Wrote legal motions and gathered evidence.

**Proyecto Adelante,** Dallas, Texas
August 1995-August 1995
Volunteered at an immigration clinic for political asylum applicants.
Drafted declarations and asylum applications.

---

## OTHER LEGAL EXPERIENCE

**Crosby, Heafey, Roach and May, P.C**., Oakland, CA
Associate Attorney -September 1998- October 1999

Researched and prepared legal memoranda and motions. Attended mediations. Prepared discovery.

**Kean, Miller, Hawthorne, D'Armond, McCowan, & Jarman**, L.L.P., Baton Rouge, LA
Legal Intern- June 1996-August 1996

Researched and prepared legal memoranda on recent tort reforms, environmental issues, contract disputes, and labor law.

**Legal Services of North Texas, Pro Bono Division**, Dallas, Texas
Legal Assistant – June 1994-August 1995

Placed pro bono cases with volunteer attorney and local law firms.

Prepared pleadings, answers and motions for volunteers. Translator for Spanish speaking clients.

---

## RECOGNITION AND AWARDS

Woman of the Year for District 04 (selected by Assemblymember Aguiar-Curry)
Mexican American Concilio Community Award (2017)
Legal Services for Children's Community Partner Award (2017)
Yolo County District Attorney's Multi-Cultural Community Council Award (2017)
UC Davis Immigration Law Clinic Recognition State Senate (2017)
UC Davis Immigration Law Clinic Recognition State Assembly (2016)
National Lawyers Guild – Carol Weiss King Award (2011)
King Hall Legal Foundation – Outstanding Alumni Award (2011)
UC Davis Immigration Clinic Alumni Council – Public Interest Award (2007)

## PROFESSIONAL AFFILIATIONS

American Immigration Lawyers' Association

National Lawyers Guild

American Bar Association, Appointed as Member of the Immigration Commission (2012-2017)

American Bar Association Criminal Justice Section – Immigration Committee (2015- present)

Pro Bono Mentor to Circuit Court of Appeals for the Ninth Circuit (2008 – present).

AILA Liaison Committee to the Office of Chief Immigration Judge and Board of Immigration Appeals (2006-2008)

Appointed by AILA to Committee to Enforce the Alberto Gonzales Memorandum on Accountability for Immigration Judges

## ADVISORY BOARD AND STEERING COMMITTEE MEMBERSHIP

ABA Immigration Commission Member
American Bar Association Criminal Justice Section – Immigration Committee (2015- present)
UC Haiti Initiative (Executive Steering Committee)
UC Davis Gifford Center for Population Studies (Advisory Board)

## PUBLICATIONS

"Asylum and Detention: The New "Normal,"" (AILA Nov. 2016). Discussing litigation tactics for asylum applicants detained by ICE.

"Documenting U.S. Citizenship: Fighting the Battle on All Fronts," (AILA 2016). Discussing how to prove one is a United States citizen, and federal litigation possibilities for persons claiming citizenship.

4

"BIA, Federal Court, And State Legislative Updates 2016," (AILA 2016). An analysis of the major cases of the Supreme Court, the federal courts, and the Board of Immigration Appeals for 2016.

"Efforts to Prevent Refugee Resettlement Are Deplorable," (Dec. 2015). Op-ed in Daily Journal regarding the diminishing numbers of refugee admissions in the U.S.

"The Refugee Tragedy in Our Own Backyard," Op-Ed LA Times (Oct. 8, 2015). Op-ed regarding the U.S. treatment of refugees inside the United States.

"Immigration Detention Checklist," (AILA 2012, 2013, 2014, 2015). A comprehensive article for practitioners to understand immigration court bond jurisdiction, federal challenges to immigration detention, and the basic requirements and legal standards employed when determining bond amounts.

"Immigrants Have Special Sixth Amendment Rights But Limited Time to Enforce Them," Prison Legal News, Vol. 22, No. 12 (Dec. 2011). Discussing on the limited timeframes immigrants have to enforce their Sixth Amendment right to counsel (authored with Anel Carrasco).

"Freedom from ICE Custody: A Desert Illusion or a Litigation Possibility?" (AILA Publications 2009). Updated article on litigation strategies for immigrants in civil detention.

Brady, Kathy, Defending Immigrants in the Ninth Circuit (ILRC 2008) edited the book and authored Chapter 10, "Immigration Detention."

Brady, Kathy, Defending Immigrants in the Ninth Circuit (ILRC 2007) edited the book and authored Chapter 10, "Immigration Detention."

"QUICK REFERENCE CHART AND ANNOTATIONS FOR DETERMINING IMMIGRATION CONSEQUENCES OF SELECTED ARIZONA OFFENSES," (ILRC 2006).

"NOTES ACCOMPANYING THE QUICK REFERENCE CHART FOR DETERMINING THE IMMIGRATION CONSEQUENCES OF SELECTED ARIZONA OFFENSES," (ILRC 2006).

Arizona Crimes Chart and Notes Accompanying the Chart is a 200 page publication which dissects the Arizona Revised Statute and advises criminal defense lawyers and defendants of the potential immigration consequences for each crime.  It is now published on the Immigrant Legal Resource Center's website www.ilrc.org/arizona.pdf.

"Getting Out: Strategy for Challenging Unlawful Detention in Federal Court," (AILA Publications 2006).  Article on the litigation strategies for immigrants in civil confinement.

_____

## PUBLIC SPEAKING AND CONTINUING LEGAL EDUCATION PRESENTATIONS

**UC Davis Public Defender Immigration Law Bootcamp**
**August 2017**
Four day intensive immigration law training focused on the intersection of criminal and immigration law.

5

**Practicing Law Institute**
**July 2017**
Ethics of Immigration Law Practice.

**American Immigration Lawyers Association**
**June 2017**
Modified Categorical Approach.

**Arsalyn Youth Forum**
**June 2017**
Immigration Policy.

**American Bar Association**
**May 2017 Webinar**
Immigration Law Practice—A day in the life of an immigration lawyer.

**Santa Barbara Defenders Association**
**April 2017**
Immigration Consequences of Criminal Convictions.

**Practicing Law Institute**
**March 2017**
Habeas Litigation In-Depth Training

**Practicing Law Institute**
**February 2017**
Habeas Challenges to the Muslim Ban

**American Immigration Lawyers Association**
**November 2016**
Asylum and Detention: the New "Normal"

**Bar Association San Francisco**
**August 2016**
Evidentiary issues in immigration litigation.

**American Bar Association**
**August 2016 Showcase Panel**
Refugees: International and Domestic Law.

**American Immigration Lawyers Association**
**June 2016**
Federal court case analyses for the year.

**American Immigration Lawyers Association**
**May 2016**
Litigating claims to U.S. citizenship.

**American Bar Association**
**April 2016**

6

Standards governing immigration detention centers.

**Journal of International Law & Policy Symposium**
**March 2016**
Spoke on the detention of immigrant children.

**U.S. Court of Appeals for the Ninth Circuit**
**March 2016 MCLE**
Presented on panel for Ninth Circuit's immigration law training on brief writing and oral argument.

**Bakersfield College Levan Center**
**February 2016 Distinguished Lecture**
Refugees in Our Backyard

**U.S. Court of Appeals for the Ninth Circuit**
**October 2016 MCLE**
Presented on panel for Ninth Circuit's immigration law training on motions and federal jurisdiction.

**Arizona Bar Association**
**October 2015**
How to file a habeas corpus petition for a detained immigrant.

**Vacaville Boys and Girls Club**
**October 2015**
How to obtain a U visa certificate from the police department.

**Dixon High School**
**September 2015**
Immigration policy issues.

**American Immigration Lawyers Association**
**June 2015**
Federal litigation relating to detention issues.

**American Immigration Lawyers Association Northern California Conference**
**November 2014**
Spoke on Detention Litigation Updates

**October 2014 Boalt Hall**
Guest Lecture on Sex Crimes and Deportation

**September 2014 National Lawyers Guild Annual Conference**
**Chicago, IL**
Spoke on Immigration Detention Litigation Strategies and Litigation Updates

**June 2014 American Immigration Council**
National Litigation Strategy Meeting Washington, D.C.
Spoke on Detention Conditions Litigation for 2014

**January 2014 National Lawyers Guild CLE**

7

Detention Litigation Updates

**National Legal Aid and Defenders Association November 2013**
Los Angeles, CA
Spoke on 2 panels: "How to Design an Immigration Detention Clinic" and "Crimimmigration Issues"

**National Lawyers Guild – Northern California Chapter Conference September 2013 UC Hastings School of Law**
Spoke on "Cutting Edge Issues in Immigration Detention"

**American Bar Association CLE August 2013**
Spoke panel regarding "How to litigate immigration cases in the Ninth Circuit."

**2013 American Immigration Lawyers Association Annual Conference (June 2013) San Francisco, CA**
Spoke on federal court updates on immigration detention litigation.

**2013 National Immigration Project Annual Conference (May 2013) Boston, Massachusetts**
Spoke on a panel about reinstatement of removal and expedited removal procedures.

**2013 UC Davis Extension – Training to California Child Protective Services (May 2013)**
Spoke on a panel about Comprehensive Immigration Review and working with incarcerated or detained parents.

**2013 American Immigration Council – Litigation Strategy Meetings (May 2013) Washington, D.C.**
Discussion leader on litigation challenges to conditions of confinement.

**2013 American Association of Law Schools (February 2013) San Francisco, California**
Spoke on ethical issues confronting law professors and students in clinical education.

**2013 UC Davis SURJ (February 2013) Davis, California**
Spoke on advocacy for reducing prison and detention center phone rates.

**2013 American Association of Law Schools (February 2013) San Francisco, California**
Spoke on ethical issues confronting law professors and students in clinical education.

**2012 Inn Of The Court (November 2012) Davis, California**
Provided expert analysis of the California Supreme Court case *In re Sergio Garcia* to a local bar association.

**2012 AILA California Regional Conference (November 2012) San Diego, California**
"Bond and Detention – Client Release Strategies." Also, on the panel was Honorable Zsa Zsa De Paolo, Immigration Judge, Veronica Barba of the ABA Immigrant Justice Project and Stacy Tolchin, private practitioner.

**2012 Panel on *In re Sergio Garcia* UC Davis School of Law (October 2012)**
Moderated panel on the *In re Sergio Garcia* case at the UC Davis School of Law.

8

**California Legislature Testimony (August 2012) Sacramento, California**
Holly Cooper briefed members of the California Legislature on immigration detention.  The briefing was entitled "Lost Voices: Evaluating Health Care Access for LGBT Immigrant Detainees," and was organized by the California Latino Legislative Caucus Select Committee on Lesbian, Gay, Bisexual and Transgender Latinos.  The briefing was chaired by Assembly Member Ricardo Lara. Cooper testified about the immigration detention facilities within the state of California and the impact of detention on the LGBT immigrant community.

**American Immigration Council's Annual Litigation Strategy Meeting (July 2012) Washington, D.C.**
 Holly S. Cooper was a discussion leader on "Challenging Immigration Detention."

**Allied Media Conference (July 2012) Detroit, Michigan**
Holly S. Cooper spoke on a panel about how telephone rates and telephone access impacts immigrant detainees' access to courts and counsel.

**California Psychological Association's Immigration Task Force Training  (June 2012) Palo Alto, California.**
Ms. Cooper trained around one hundred doctors on immigration law and the use of experts in immigration court.  Her presentations were entitled, "Overview of the Immigration Court System: Use of Experts," and "Effective Collaborations between Expert Psychologists and Lawyers."

**UC Davis School of Law Public Interest Law Graduation (April 2012)**
Faculty speaker for the public interest law graduation.

**2012 AILA Upper Midwest Immigration Law Conference (April 2012)**
Spoke on two panels:  "No Objection?!? Underutilized Litigation Tools That Immigration Attorneys Should Be Using," and "Setting the Table for an Appeal: Presenting Arguments and Positioning Your Case for Success on Appeal."

**2012 Northern California Clinical Conference (February 2012) UC Davis School of Law**
Moderated panel discussion on how to teach critical race theory to students.

**UC Hastings School of Law (January 2012) San Francisco, California**
Guest Lectured on Immigration Law as applied to Haitians

**UC Davis UC Haiti Initiative Guest Lecture (January 2012)**
Spoke on the rebuilding of Haiti and legal obstacles to migration.

**UC Davis General Campus Lecture Series (November 2011)**
Spoke on history of prisoner rights movement in the US.

**Northern California AILA Conference**
San Francisco, CA; November 2011
Spoke on panel regarding detention litigation updates from the Ninth Circuit

**American Immigration Council National Webinar**
November 2011
Spoke on immigrants' right to counsel and legal strategies to ensure that right to counsel is enforced

9

**National Lawyers' Guild Litigation Meeting**
Philadelphia, PA; October 2011
Litigation update on the new *en banc* Ninth Circuit case *Aguila-Montes de Oca v. Holder*.

**National Lawyers' Guild Membership Meeting**
Philadelphia, PA; October 2011
Discussion leader on detention litigation updates

**National Immigration Project National Conference**
Philadelphia, PA; October 2011
Panel presentation on aggravated felony grounds of deportation

**University of San Francisco School of Law**
San Francisco, CA; July 2011
Lecture on U.S. immigration law as applied to Haitian migrants

**AILA National Conference**
San Diego, CA; June 2011
Panel presentation on the grounds of criminal deportability and inadmissibility

**UC Davis Training for USAID**
Davis, CA; May 2011
"Haitian Migration to the USA due to Climate Change"

**ABA Equal Justice Conference**
Las Vegas, NV; May 2011
Panel presentation on *Padilla v. Kentucky* litigation strategies

**UC Davis School of Law, Bill Smith Memorial Lecture**
Davis, CA; April 2011
Welcoming remarks and introduction of prestigious guest speaker, Paul M. Smith

**American Immigration Council's National Litigation Strategy Meeting**
Washington, D.C.; March 2011
Discussion leader for developing a national litigation strategy for criminal immigration issues at a highly prestigious invitation-only meeting with forty of the top national litigators in the United States.

**The Gifford Center for Population Studies – Second Annual UC Migration Conference**
Davis, CA; February 2011
Lecture on climate refugees and the inadequacies of U.S. domestic laws to address this migration

**UC Haiti Initiative**
Berkeley, CA; February 2011
Discussion of proposals regarding how UC can assist higher education in Haiti

**United Nations High Commissioner for Refugees Roundtable with Regional Director**
San Francisco, CA; January 2011
Addressed Director Vincent Cochetel about concerns of treatment of refugees in detention facilities

10

**National Lawyers' Guild National Conference**
New Orleans, LA; September 2010
Discussion group leader on the topic of trends in immigration detention

**California International Law Center Lunchtime Speaker Series**
Davis, CA; September 2010
Presentation on human rights situation in Haiti post-earthquake and about migration possibilities to
the United States.

**California Association of Public Defenders' Conference**
Berkeley, CA; August 2010
Panel presentation: "Immigration Competence After *Padilla*."

**American Bar Association National Conference**
San Francisco, CA; August 2010
Panel addressing "Immigration Law Basics"

**American Association of Sociology National Conference**
Atlanta, GA; August 2010
Presentation on the correlation between the internment of the Japanese and the modern day
immigration detention system.

**Immigration Professor Conference**
Chicago, IL; May 2010
Spoke on panel about model immigration clinics. Gave overview of UC Davis Immigration Law
Clinic, case selection process, and advice on starting an immigration clinic.

**May Day Rally**
Sacramento, CA; May 2010
Spoke at rally of 5,000 individuals on Arizona's SB 1070.

**Press Conference at Sacramento USCIS Building**
Sacramento, CA; April 2010
Spoke on Arizona's SB 1070.

**University of San Francisco School of Law – Teach-In for Haiti**
San Francisco, CA; April 2010
Presentation on immigration solutions for Haiti

**UC Davis School of Law – Lunchtime Panel: "Public Interest Advice for Graduates"**
Davis, CA; April 2010

**Roundtable Discussion with Ivan Fong of the Department of Homeland Security**
San Francisco, CA; 2010
Participated in discussion with DHS's counsel. Two of Ms. Cooper's suggests were later adopted by
DHS.

**Child Migration Symposium**
Davis, CA; January 2010

11

**AILA National Conference**
Las Vegas, NV; June 2009
Panel presentation: "Litigation Strategies for Detention"

**Immigrant Legal Resource Center Webinar**
April 2009
Presented webinar on immigration detention.

**Univision**
March 2009
Commented on Proposition 8's impact on immigrants' civil rights

**Press Conference at Sacramento County Jail**
Sacramento, CA; March 2009
Commented on conditions of confinement for immigrants.

**Jesuit High School – Social Justice Forum**
Sacramento, CA; March 2009
Spoke on "Teenage Migration to the United States."

**Humboldt State University**
Humboldt, CA; October 2008
Presentation about the civil rights of immigrants during ICE raids.

**MCLE, California Western School of Law**
San Diego, CA; June 2008
Nuts and Bolts of Federal Habeas Litigation

**American Immigration Lawyers' Association National Conference**
Vancouver, B.C.; June 2008
Panel 1:  Open Forum Panel with the BIA and Chief Immigration Judge
Panel 2:  Mock Interview on Sexual Orientation Claim

**Immigrant Legal Resource Center MCLE**
San Francisco, CA; May 2008
Spoke on recent trends in the Ninth Circuit on the "Modified Categorical Approach."

**UC Davis Campus Book Project**
Davis, CA; April 2008
"Criminalization of Immigrants"

**Advocates for the Rights of Children**
Davis, CA; April 2008
Spoke on panel regarding ICE detention policies towards children

**World Jurist Association Annual Conference**
Los Angeles, CA
"Criminalization of Immigrants"

**American Immigration Legal Foundation Annual National Litigation Strategy Meeting**

12

Phoenix, AZ; February 2008
Moderator on Detention Panel

**Northern California Clinicians Conference – Berkeley School of Law**
Berkeley, CA; February 2007
Panel Presentation "Intra-Clinic Collaboration"

**American Immigration Lawyers Association - Northern California Chapter MCLE**
February 2007
Legal training on nuts and bolts of immigration bond hearings and federal litigation strategies on obtaining release for immigrant detainees.

**Alameda County Public Defenders - MCLE**
Oakland, CA; November 2006
Conducted MCLE training for public defenders on how to avoid immigration consequences for non-citizen defendants.

**Arizona Public Defenders Conference - MCLE/Annual Conference**
June 2006
Legal presentations about how to avoid immigration consequences for certain criminal pleas and "safe haven" pleas under the Arizona Revised Statute.  Updated the annual training materials in collaboration with Kathy Brady about specific Arizona criminal statutes and the potential immigration affect for a conviction under each of the more common statutes.

**American Immigration Lawyers Association - Annual Conference**
June 2006
Legal presentation and co-authored published article on federal litigation strategies for detained immigrants.  The article proposed differing litigation theories to challenge prolonged civil confinement through the writ of habeas corpus.  The article also contemplated litigation strategies for refugees and arriving aliens who are often held in indefinite detention.

**Arizona Public Defenders Conference - MCLE/Annual Conference**
May 2005
Legal presentations about how to avoid immigration consequences for certain criminal pleas and "safe haven" pleas under the Arizona Revised Statute.  Updated the annual training materials in collaboration with Kathy Brady about specific Arizona criminal statutes and the potential immigration affect for a conviction under each of the more common statutes.

**American Immigration  Lawyers Association Litigation Conference**
Seattle, WA; September 2005
Immigration Custody, Bonds and Supervised Release Panel

**American Immigration  Lawyers Association California Chapter Conference**
San Francisco, California; November 2004
Immigration Custody, Bonds and Procedures Panel

**Asian Bar Association Luncheon**
September 2004
Immigration Issues Affecting Asian Immigrants:  Non-Repatriation Agreements for Southeast Asians

13

**Arizona Public Defenders Conference  - MCLE/Annual Conference**
May 2004
Legal presentation about how to avoid immigration consequences for certain criminal pleas.
Produced lengthy training materials about specific Arizona criminal statutes and the potential immigration affect for a conviction under each of the more common statutes.

**Prevent Child Abuse, Inc.  Healthy Families of Arizona**
May 2003
Legal presentation on working with undocumented families in Arizona.  Potential forms of relief for undocumented abused women and children.

**Arizona Bar Association Annual Convention**
Phoenix, AZ; May 2003
Legal presentation on the potential immigration consequences for common Arizona convictions.

**Pro Bono MCLE**
Phoenix, AZ; October 2002
Challenging Indefinite Detention of Immigrants Through Writs of Habeas Corpus, Federal Litigation with Respect to Special Immigrant Juvenile Visas

**Detention Watch Network Conference**
September 2002
Led roundtable discussion on detained children's issues.

**Doctors of the World**
Phoenix, AZ; February 2002
Trained volunteer doctors on drafting expert affidavits and preparing expert testimony in support of an asylum claim.

**Sanctuary Movement Twentieth Anniversary**
Tucson, AZ; February 2002
Spoke on a panel regarding issues facing detained juveniles in DHS custody.

**The University of Texas, El Paso MCLE Training**
El Paso, TX; February 2002
Legal presentation on Cutting Edge Asylum Law for Detained Children

**American Bar Association Convention - Detained Immigrant Children's Summit**
Chicago, IL; August 2001
Presented MCLE regarding Children's Asylum Law

**Pro Bono MCLE**
Phoenix, AZ; July 2001
Forms of Relief from Removal for the Child Immigrants

**American Immigration Lawyers' Association National Convention**
Boston, MA; June 2001
Presented on a panel regarding detained children's issues.

14

**Arizona Minorities and Women in the Law Bar Convention**
Phoenix, AZ; April 2001
Spoke on Panel with then Attorney General Janet Napolitano about Minorities' Access to Justice in Arizona

**S.F. Bar Association Immigrant HIV Assistance Prog. - MCLE for Pro Bono Lawyers**
San Francisco, CA; October 2000
How to adjust an HIV positive asylee or refugee

**Lawyers' Committee for Civil Rights - MCLE Training for Pro Bono Lawyers**
San Francisco, CA; August 1999
Nuts and Bolts of Applying for Political Asylum

---

## LANGUAGES

Spanish and Italian

---

## SELECTED SAMPLES OF MEDIA EXPOSURE

### Profile pieces on Holly Cooper and students:

Rocha, Victoria, "California Lawyer Refuses to Allow Trump's Immigration Policies to Keep Youth Locked in Cages," *The Chronicle of Social Change* (July 13, 2017). (found at: https://chronicleofsocialchange.org/news-2/california-lawyer-refuses-allow-trump-immigration-policies-keep-youth-locked-cages/27533).

Magagnini, Steve, "Meet the law professor who's been on the frontlines of the Trump immigration battles," *The Sacramento Bee* (July 31, 2017). (found at: http://www.sacbee.com/news/politics-government/article164085802.html).

Stavely, Zaidee, "US Law Students Are Helping Asylum Seekers Driven by Their Own Family Stories," *Public Radio International,* (April 20, 2017) (listen at: https://www.pri.org/stories/2017-04-20/us-law-students-are-helping-asylum-seekers-driven-their-own-family-stories).

### Coverage of published Ninth Circuit case *Flores v. Sessions:*

Jordan, Miriam, "Detained Immigrant Children Are Entitled to Hearings- Court Rules," *The New York Times* (July 5, 2017)( found at: https://www.nytimes.com/2017/07/05/us/detained-immigrant-children-are-entitled-to-hearings-court-rules.html?action=click&contentCollection=us&region=rank&module=package&version=highlights&contentPlacement=1&pgtype=sectionfront).

15

Alvarez, Priscilla, "Federal Court: Undocumented Minors Have the Right to Bond Hearings," *The Atlantic* (July 6, 2017) (found at: https://www.theatlantic.com/politics/archive/2017/07/do-unaccompanied-minors-have-the-right-to-a-bond-hearing/532794/).

Associated Press, "Court: Detained immigrant children entitled to court hearing," *The Daily News,* (July 5, 2017)(found at: http://www.dailynews.com/social-affairs/20170705/court-detained-immigrant-children-entitled-to-court-hearing ).

Josh Gerstein, "9th Circuit: Unaccompanied immigrant children entitled to bail hearings," *Politico,* (July 5, 2017) (found at: http://www.politico.com/blogs/under-the-radar/2017/07/05/immigrant-kids-bail-hearings-240249).

Chabria, Anita, "Immigrant kids can't be detained without their day in court, 9th Circuit rules," *Sacramento Bee* (July 5, 2017)(found at: http://www.sacbee.com/news/local/article159835739.html).

Greenwood, Max, "Federal court says unaccompanied immigrant minors have right to bond hearings," *The Hill,* (July 5, 2017)(found at: http://thehill.com/homenews/news/340774-federal-court-says-unaccompanied-immigrant-minors-have-right-to-bond-hearings).

"Tribunal dictamina que menores indocumentados tendran derecho a una audiencia de fianze y no tienen que ser detenidos," *Univision,* (July 5, 2017) (video found at:  http://www.univision.com/los-angeles/kmex/tribunal-dictamina-que-menores-indocumentados-tendran-derecho-a-una-audiencia-de-fianza-y-no-tienen-que-ser-detenidos-video).

Commented for media, including Sacramento's KCRA-3 on the 21st annual "Immigrant Day" rally at the state Capitol.

**Coverage on clinic client, G-E-:**

de Sa, Karen, "Honduran boy wins asylum, but remains in jail," *San Francisco Chronicle,* March 5, 2017, (found at: http://www.sfchronicle.com/bayarea/article/Honduran-boy-14-wins-U-S-asylum-but-remains-in-10977616.php).

"Honduran teen granted asylum held in Yolo County Jail for nearly a year," March 9 2017 (found at: http://fox40.com/2017/03/09/honduran-teen-granted-asylum-held-in-yolo-county-jail-for-nearly-a-year/).

de Sa, Karen, "Honduran refugee, 14, released into foster care," March 13, 2017 (found at: http://www.sfchronicle.com/bayarea/article/Honduran-refugee-14-released-into-foster-care-10999348.php).

**Travel ban media coverage:**

16

Media outlets including Sacramento television stations KCRA-3, CBS-13, and ABC-10, as well as the *Sacramento Bee*, Dateline UC Davis, and the *Daily Journal* reported on the clinic's activities during the Travel Ban.

Smith, Darrel; Furillo, Andy; Hice, Jessica; "Protesters fill Sacramento airport denouncing Trump refugee order," *Sacramento Bee,* (January 29, 2017) (found at: http://www.sacbee.com/news/local/article129482184.html).

"UC Davis Attorneys Help Families Dealing with Detainment at SFO," *KCRA,* (January 30, 2017) (found at: http://www.kcra.com/article/uc-davis-attorneys-help-families-dealing-with-detainment-at-sfo/8653121).

**Coverage of Holly Cooper's Volunteer Service in Greek Refugee Camps:**

Jordan, Miriam, "The American Lawyers Helping Syrian Refugees," *The Wall Street Journal,* (October 14, 2017) (found at: https://www.wsj.com/articles/the-american-lawyers-helping-syrian-refugees-1476467232).

**Holly Cooper Op-Eds on Refugee Issues:**

Holly Cooper & Jayashri Srikantiah, "Refugees in Our Own Backyard," *LA Times* (October 10, 2015) (found at: http://www.latimes.com/opinion/op-ed/la-oe-cooper-and-srikantiah-refugees-without-rights-in-us-20151007-story.html).

Holly Cooper & Jayashri Srikantiah, "Refugee Admissions Abysmal," *The Daily Journal,* (November 4, 2015).

**Coverage of clinic's habeas litigation for detained children:**

Hendricks, Tyche, "Hundreds of Migrant Teens Are Being Held Indefinitely in Locked Detention," *KQED* (April 11, 2016) (found at: https://ww2.kqed.org/news/2016/04/11/hundreds-of-migrant-teens-are-being-held-indefinitely-in-locked-detention/).

Bravin, Jess, "DOMA defender takes on new unlikely client," *Wall Street Journal* (July 23, 2013) (found at: *http://blogs.wsj.com/law/2013/07/23/doma-defender-takes-on-new-unlikely-client/* ).

PC World's profile of Cooper's work on FCC regulation of prison phone rates: *http://www.pcworld.idg.com.au/article/441688/human_rights_groups_telecoms_gouging_prison_callers/*

Blog on Obama's new immigration order: *http://lawprofessors.typepad.com/immigration/2014/11/professor-holly-cooper-on-president-obamas-immigration-initiatives.html*

Blog on immigration activists' civil disobedience: http://lawprofessors.typepad.com/immigration/2013/07/a-blog-on-cir-by-holly-cooper.html

Cooper selected as an Ella Baker Center Heroine: *http://ellabakercenter.org/blog/2012/11/immigration-detention-in-the-united-states*

17

*The Daily Journal* (April 2011) wrote an article on Ms. Cooper and the students' published Ninth Circuit decision in *Singh v. Holder*.

www.asianamericanvoices.com (April 2011) commented on Ms. Cooper and the students' published Ninth Circuit decision in *Singh v. Holder*.

www.aclu.org (April 2011) commented on Ms. Cooper and the students' published Ninth Circuit decision in *Singh v. Holder*.

*UC Davis Magazine* (Spring 2011) profiled the Ms. Cooper and the work of the Immigration Law Clinic in an article entitled, "Immigration ER."

*University of California Magazine* (December 2010) profiled Ms. Cooper's humanitarian work with amputees in Haiti.

www.judicialview.org (August 2010) commented on Ms. Cooper's published Ninth Circuit decision in *Rodriguez v. Holder*.

www.findlaw.org (August 2010) commented on Ms. Cooper's published Ninth Circuit decision in *Rodriguez v. Holder*.

CBS (May 2010): Interviewed on SB 1070 predicting certain portions will fail court challenges.

*Univision* (May 2010):  Interviewed in Spanish on SB1070 for evening news.

*Univision* guest commentator on *Voz y Voto* (May 2010) debating SB 1070 on Saturday talk show.

*Texas Tribune* (May 27, 2010) quoted Ms. Cooper on the lack of notice given to lawyers when immigrant detainees are transferred to a new jail.

Published Op-Ed in *The Guardian* by Holly S. Cooper (April 2010), Ms. Cooper argues for generous use of humanitarian parole for Haitians. The article is entitled, "Haiti not Hades."

www.newamericanmedia.com (April 2010) comprehensive article with video footage interviewing Ms. Cooper while in a tent camp in Port Au Prince Haiti.

*San Jose Mercury News* (Dec.2, 2009) - quoted Ms. Cooper on conditions of confinement for immigrant detainees.

*Amnesty International* (Dec. 2009) - interviewed and quoted Ms. Cooper in its report on immigration detention.

www.latina.com (July 29, 2009) - quoted Ms. Cooper on the detention of U.S. citizens in ICE custody.

*Human Rights Watch* (2009) quoted Ms. Cooper in its report "Locked Up Far Away."

www.huffingtonpost.com (August 14, 2009), Ms. Cooper is quoted in the article "America's Broken Immigration System" commenting on the lack of an efficient immigration system.

18

Local News and Univision (March 3 and March 6, 2010) commenting on immigrants' civil rights in detention and commenting on Proposition 8.

*Voz y Voto*, Univision (interview on Spanish-speaking television regarding her expert predictions on pending immigration legislation.

*Prison Legal News* (July 26, 2008) Ms. Cooper is quoted regarding immigration law.

Press Conference June 2007, Immigration Legal Resource Center (statement regarding impact of pending proposals on immigrant communities).

*The Daily Recorder* (October 2007) "Immigrants Confront Legal Maze of Windows," Article regarding the work of the UC Davis Immigration Law Clinic students in the Yuba County Jail.

Channel 5 (San Francisco, California) CBS, Anna Werner Investigative Report on Ethical Obligations of Deporting U.S. Informants.

San Francisco Local Radio Broadcasts (April 2006) Spoke about the affects of pending immigration legislation on non-citizens with criminal convictions.  The press release was broadcast throughout the San Francisco Bay Area.

---

## PROFESSIONAL AFFILIATIONS

American Immigration Lawyers' Association

National Lawyers Guild

American Bar Association, Appointed as Member of the Immigration Commission (2012-present)

Pro Bono Mentor to Circuit Court of Appeals for the Ninth Circuit (2008 – present).

AILA Liaison Committee to the Office of Chief Immigration Judge and Board of Immigration Appeals (2006-2008)

Appointed by AILA to Committee to Enforce the Alberto Gonzales Memorandum on Accountability for Immigration Judges

---

## EXPERT CONSULATATIONS

California State Attorney General's Office (September 2017)

19

Reed Smith, LLP March 2010-present
Consult in medico-legal human rights delegations to Haiti and Greece with Reed Smith, LLP as an expert in immigration law.

Pima County Public Defender's Office
May 2006
Testified regarding whether non-citizen is unavailable for trial where the non-citizen signed a stipulated removal order.

Expert Consultations to Arizona Public Defenders' Office/ California Public Defenders' Offices (on as needed basis regarding immigration consequences of criminal convictions 2006-present)

_____

20

# Exhibit A

Holly S. Cooper Timesheets Flores v. Sessions MTE re: Psychotropics, Step-ups, etc.

| Date | Description | Hours |
|---|---|---|
| 4/27/17 | Strategic litigation call with Holguin and NCYL | 1.1 |
| 5/5/17 | Research notice standards for step-ups | 2.5 |
| 5/12/17 | Prepare materials for Flores visit to BCFS Fairfield and Yolo Juvenile Detention Center | 1.7 |
| 5/15/17 | Flores Settlement inspection of BCFS detention center in Fairfield, CA | 1.2 |
| 5/15/17 | Interview Flores class members BCFS Fairfield | 2.6 |
| 5/16/17 | Interview class members at Yolo County Juvenile Detention Center and draft declarations re Flores violations | 5.8 |
| 5/17/17 | Finalize declarations of class members | 1.7 |
| 7/14/17 | Strategy call with Holguin and ACLU consultants re Flores litigation | .78 |
| 8/21/17 | Legal strategy call with Holguin, NCYL re MTE litigation | 1.2 |
| 8/24/17 | Legal strategy call with Holguin, NCYL re MTE litigation | .80 |
| 8/30/17 | Met with class member in Yolo regarding forced medication at Shiloh Treatment Center | 1.13 |

| | | |
|---|---|---|
| 9/01/17 | Legal strategy call with Holguin, NCYL re MTE litigation | 1.23 |
| 9/12/17 | Review class member file and edit declaration | 4.6 |
| 9/15/17 | Edited class member (Y) declaration re treatment in Shiloh and Yolo | 3.4 |
| 9/28/17 | Teleconf with sponsor of Y and drafted dec re his delayed release and his treatment in Shiloh | 3.20 |
| 10/2/17 | Legal strategy call with Holguin, NCYL re MTE litigation | .91 |
| 10/17/17 | Legal strategy call with Holguin, NCYL re monitoring visits and division of labor | .62 |
| 10/24/17 | Legal strategy call with Holguin re Flores site visit at Yolo County Juvenile Hall | .48 |
| 10/24/17 | Teleconf co-counsel re Y's declaration re Shiloh—researching Shiloh RTC | 1.0 |
| 10/25/17 | Flores monitoring visit Yolo Detention Center and meetings with class members | 7.2 |
| 10/30/17 | Reading final declarations from Yolo | .5 |
| 11/1/17 | Legal strategy call with co-counsel re site visits | 1.33 |
| 11/10/17 | Meeting re Y's declaration and researching psych meds and consent | .5 |
| 11/13/17 | Strategic litigation call re MTE with co-counsel | 2.17 |
| 11/19/17 | Prepare for site visit to Shiloh RTC in Manvel, TX | 1.51 |
| 11/19/17 | Travel to Manvel, TX | 8.72 |
| 11/20/17 | Meeting with co-counsel re strategy for site visit to Shiloh RTC | 1.17 |

| 11/20/17 | Inspection of Shiloh RTC | 2.52 |
|----------|--------------------------|------|
| 11/20/17 | Interviews with class members and drafting declarations re treatment at Shiloh RTC | 9.67 |
| 11/21/17 | Meeting with Shiloh director and medical staff | 1.78 |
| 11/21/17 | Finalizing declarations with class members re treatment at Shiloh RTC | 6.75 |
| 11/21/17 | Return travel to CA from Manvel TX | 6.25 |
| 11/25/17 | Review ORR files of class member at Shiloh RTC | 5.5 |
| 11/27/17 | Strategy call with co-counsel re administration of psychotropic drugs and Flores Settlement Agreement | 1.55 |
| 11/28/17 | Prepare report to co-counsel re findings at Shiloh RTC | 3.7 |
| 12/5/17 | Litigation strategy call with co-counsel re Shiloh RTC and medication and consent issues; and failure to notice step-ups | 1.5 |
| 12/13/17 | Draft Motion to Enforce re failure to provide notice of step ups | 4.3 |
| 12/14/17 | Review class member files re notice | 3.75 |
| 12/15/17 | Edit Motion to Enforce Statement of Facts | 2.51 |
| 12/19/17 | Conference call with co-counsel re MTE | 1.12 |
| 1/2/18 | Prep for Meet & Confer; Meet and Confer with Opposing counsel and debrief | 1.55 |
| 1/22/18 | Litigation call with co-counsel re MTE | 1.10 |
| 1/23/18 | Call with NYACLU re Flores violations | 1.5 |

| 1/23/18 | Call with NIJC re Flores violations | .52 |
| 1/25/18 | Call with Leland Baxter Neil re declaration re Flores violations | .92 |
| 1/29/18 | Call with co-counsel re MTE | 1.15 |
| 2/5/18 | Call with co-counsel re MTE | .74 |
| 2/12/18 | Call with co-counsel re MTE | 1.10 |
| 2/21/18 | Call with co-counsel re MTE | .80 |
| 3/5/18 | Litigation coordination meeting | 1.48 |
| 3/12/18 | Litigation coordination meeting | 1.25 |
| 3/15/18 | Draft MTE re step ups and notice | 3.44 |
| 3/17/18 | Draft and edit MTE re pre-emptory placements | 6.7 |
| 3/19/18 | Draft MTE on step ups and Flores violations | 2.54 |
| 3/19/18 | Litigation coordination meeting | 1.18 |
| 3/20/18 | Texas and California state law research on consent to medicate children | 3.45 |
| 3/22/18 | Review declaration of children, class member case files for supporting evidence | 2.15 |
| 3/23/18 | Draft motion to enforce on step-ups | 3.33 |
| 3/26/18 | Read and edit motion to enforce draft | 2.56 |
| 4/2/18 | Litigation coordination meeting | 1.17 |
| 4/2/18 | Reviewed and analyzed exhibits to support MTE | .75 |
| 4/8/18 | Drafted statement of facts for MTE | 2.63 |
| 4/9/18 | Litigation coordination meeting | 1.0 |

| 4/9/18 | Edit Motion to Enforce brief | 1.83 |
|--------|------------------------------|------|
| 4/11/18 | Edit MTE | 2.2 |
| 4/16/18 | Litigation coordination meeting | .97 |
| 4/24/18 | Litigation coordination meeting | 1 |
| 4/30/18 | Litigation coordination meeting | 1.18 |
| 5/7/18 | Litigation coordination meeting | 1.1 |
| 5/10/18 | Travel to Fullerton, CA | 3.35 |
| 5/10/18 | Meet with class members and inspect detention center | 5.67 |
| 5/10/18 | Meeting with co-counsel re strategy | 1.23 |
| 5/10/18 | Travel to lodging in Pasadena | .56 |
| 5/11/18 | Travel to Laverne, CA | 1.23 |
| 5/11/18 | Inspect detention center and meet with class members | 5.63 |
| 5/14/18 | Speak with class member's sister re class member's prolonged detention | .47 |
| 5/14/18 | Litigation coordination meeting | 1.0 |
| 5/17/18 | Consult with statistics expert re Flores statistics | .4 |
| 5/21/18 | Litigation coordination meeting | 1.3 |
| 5/30/18 | Litigation coordination meeting | 1.42 |
| 5/30/18 | Read and analyze motion to enforce response (opposition) | 1.23 |
| 6/4/18 | Legal research for reply to government response to motion to enforce re notice | 2.33 |
| 6/4/18 | Litigation coordination meeting | 1.2 |

| | | |
|---|---|---|
| 6/5/18 | Draft reply to government's opposition to motion to enforce re notice of step up | 3.7 |
| 6/6/18 | Edit reply brief | 2.5 |
| 6/7/18 | Edit reply brief | 2.3 |
| 7/26/18 | Travel to Los Angeles for hearing on MTE | 2.1 |
| 7/26/18 | Prepare for hearing on MTE | 3.7 |
| 7/27/18 | Reading provisional order of J. Gee and analyzing | 1.0 |
| 7/27/18 | Discussion with opposing counsel | .5 |
| 7/30/18 | Read and analyze judicial order re MTE | 4.4 |
| 7/30/18 | Litigation coordinating call | 1.68 |
| 8/13/18 | Meet and confer with OIL and debrief with Carlos | .73 |
| 10/5/18 | Read and analyze order re special monitor | 1.23 |
| 10/17/18 | Draft and edit response to motion to modify monitoring order | 4.8 |
| 10/18/18 | Read and edit response to monitoring order | 3.6 |
| 10/19/18 | Read and draft response to monitoring order | 10.8 |
| 12/20/18 | Teleconference with monitor | 2.63 |
| 1/18/19 | Teleconference with monitor | 1.68 |
| HOLLY COOPER | | 235.61 X 650 |
| | | **$153,146.50** |

Exhibit 4

113

## DECLARATION OF CAROL A. SOBEL

I, CAROL A. SOBEL, declare:

1.    I am an attorney admitted to practice before the Supreme Court of the State of California.  I submit this declaration in support of the fees requested by counsel in this matter.  It is based on facts of which I  have personal knowledge and, if I called to testify to those facts, I could and would do so competently.

2.    I graduated from law school and was admitted to practice in 1978. Following 20 years with the ACLU Foundation of Southern California, I entered private  practice in April of 1997.  My practice primarily involves complex civil rights litigation, focusing on the rights of homeless persons, First Amendment rights and police practices.  Exhibit "1" is my resumé.

3.    I have received many awards for my legal work over the years.  In 2008, I was named a California Lawyer of the Year (CLAY) recipient for civil rights by California Lawyer Magazine.  That same year, I was also named as one of the Top 75 Women Litigators in California by the Daily Journal Corporation.  In 2007, I received an Angel Award from California Lawyer Magazine for pro bono work and was also named by the Daily Journal as one of the Top 100 Most Influential Lawyers in California.  In 2013, 2014, and 2017, I was named one of the top 50 women lawyers in Los Angeles or Southern California. In the past, I have received several awards from the ACLU Foundation of Southern California, including the First Amendment Award.  In June 2017, I received a lifetime award from the ACLU Foundation of

Southern California.  I have been named as a Superlawyer in the area of First Amendment or civil rights litigation consistently for more than a decade.  Additional recognition of my legal work is set forth in my attached resumé.

4.     For the six years prior to 1997, I held the position of Senior Staff Counsel in the legal department of the ACLU Foundation of Southern California.  During that time period, I was responsible for preparing many of the fee motions in cases where the ACLU represented the prevailing party.  Because the ACLU does not bill clients on an hourly basis for its services, I was required to obtain information to establish reasonable market rates for the ACLU lawyers.  It was my practice to obtain current billing rates for lawyers of comparable skill and experience at several firms throughout the City.  I did this on an annual basis, contacting partners who were familiar with the ACLU lawyers in question so that they could make an informed judgment about the comparable skill levels of the attorneys at their firms whose rates were used to establish ACLU billing rates.  At the time that I consulted these individuals, I was aware that the partners had been personally involved as pro bono counsel with the ACLU and worked with the ACLU lawyers for whom I sought to establish market billing rates, so they were able to assess the skill and experience of the ACLU lawyers based on personal knowledge.

6.     Since entering private practice, I have continued to survey firms each year to obtain relevant comparisons for billing rates.  I generally begin this process the first time in each year I prepare a fee motion, or enter into settlement discussions

regarding fees.  As part of my survey, I make it a point to obtain information concerning rates for attorneys in both larger law firms engaged in complex litigation, as well as smaller boutique civil rights law firms.  Based on the information I obtained regarding rates at each of these firms, I am of the opinion that there is a significant difference between fees sought and awarded to attorneys at smaller civil rights firms and those at larger firms that sometimes do pro bono civil rights work.

7.     Based on my review of fee motions, fee awards and other supporting market rate information, I hold the opinion that, in general, the rates sought by civil rights attorneys are at least 10 to 20 percent lower, and in some instances even more so, than the rates of comparable attorneys in commercial firms that do similarly complex litigation. This is so even when the commercial firm serves as co-counsel with public interest lawyers.  Based on my experience over 39 years, including working at the ACLU and with the pro bono bar, the skill, experience and reputation of the lawyers at smaller boutique civil rights law firms is often greater than that of many lawyers in large firms with comparable years of practice, especially for those with 20 years or less experience, because there is a less hierarchal work distribution and the civil rights lawyers handle all aspects of major litigation from the start.

8.     To obtain information concerning market rates charged by attorneys in various legal markets in Southern California, I also review attorney fee applications and awards in other cases than my own.  Specifically, I regularly review fee applications submitted by, and awards to, private attorneys practicing the range of

civil rights law, as well as court awards made to the ACLU, Disability Rights Legal
Center ("DRLC"), Disability Rights Advocates, Asian Americans Advancing Justice,
the Western Center on Law and Poverty ("WCLP"), MALDEF and other public
interest groups in Los Angeles.  I also review fee motions filed by private civil rights
and public interest firms and attorneys, including Kaye McLane Bednarski & Litt,
Sconbrun Seplow Harris & Hoffman, Hadsell Stormer & Renick, Dale Galipo, The
Cochran Firm and McNicholas & McNicholas, among other firms.  I do this to
determine what is being sought and approved as market rates for lawyers from these
firms.  Because many of the cases brought by public interest groups are co-counseled
by attorneys at private commercial firms, I have access to those billing rates as well.
In addition to these two methods, when I become aware of a case where statutory fees
are sought, I regularly obtain fee applications and any resulting awards from on-line
public records for the courts, as well as from legal research databases such as LEXIS
and Westlaw.   Included in my review of fee applications and awards are those by,
and awards to, large firms engaged in complex litigation to assess customary billing
rates for these firms, many of which also serve as pro bono counsel in public interest
cases.   I estimate that I review around 100 or more fee motions, supporting
declarations and fee awards annually.

9.      My declarations in support of fee applications for civil rights and public
interest attorneys have been cited repeatedly by courts as evidence of reasonable
market rates in Los Angeles.  For example, in *Nadarajah v. Holder,* 569 F.3d 906,

912-914 (9th Cir. 2009), the Ninth Circuit referenced my declaration with approval in support of the application of attorneys from the ACLU for fees under the Equal Access to Justice Act ("EAJA").  In *Torrance Unified School District v. Magee*, 2008 U.S. Dist. LEXIS 95074 (CD CA 2008), granting fees pursuant to the  federal IDEA statute, 20 U.S.C. §1415(i)(3)(c), the Court cited to my declaration as persuasive evidence of market rates.  In *Atkins v. Miller*, CV 01-01574 DDP (CD CA 2007), this Court awarded fees to a 1975 graduate at $675 an hour, specifically citing to my declaration and that of Barry Litt to support the requested rates. Id. at pp. 8-9 and n.4. Additional cases in which my declarations have been cited favorably include, among others, *Charlebois v. Angels Baseball LP*, SACV 10-0853 DOC (May 30, 2012); *Orantes-Hernandez v. Holder*, 713 F.Supp.2d 29, 963-964 (C.D.Cal.2010); *Hiken v. DOD*, 2013 U.S. Dist. LEXIS 118165 (N.D. Cal. Jan. 14, 2013), *Vasquez v. Rackauckas*, 2011 U.S. Dist. LEXIS 83696 (C.D. Cal. 2011); *Rauda v. City of Los Angeles*, 2010 U.S. Dist. LEXIS 138837 (C.D. Cal. 2010); *Jochimsen v. County of Los Angeles, supra*; *Dugan v. County of Los Angeles*, cv-11-08145 CAS (C.D. Cal. March 3, 2014); and *Flores v. City of Westminster*, SA-CV-11-0278 DOC (C.D. Cal. Oct. 23, 2014).  In Jochimsen, a unanimous court held that I was qualified to opine on reasonable market rates.

10.    In addition, I have litigated statutory fee issues at the appellate level in several of my cases.  Most notably, I was lead counsel before the California Supreme Court in *Tipton-Whittingham v. City of Los Angeles*, 34 Cal.4th 604

(2004), the companion case to *Graham v. Daimler-Chrysler*, 34 Cal.4th 533 (2004), establishing the continued vitality of the "catalyst" fee doctrine in California courts.  I was also lead counsel in *Jones v. City of Los Angeles*, 555 Fed.Appx. 659 (2014), establishing entitlement to fees as a "prevailing party" based on the Ninth Circuit's necessary approval of a settlement that was conditioned on vacatur of the panel decision.

11.    My present billing rate is $975 an hour for complex litigation.  It is rare for me to use a lower rate based on the type of case.  As my resumé indicates, my primary areas of practice range across homelessness litigation, First Amendment issues, Fourth Amendment claims and other statutory and constitutional matters.  I do individual cases, multiple plaintiff cases and class actions.  I also have considerable experience in employment litigation, although I no longer do such cases.  The *Tipton-Whittingham* case, identified in paragraph 10, was a class-action employment discrimination case against the Los Angeles Police Department.  While some of my cases are more simple than others, I use the same rate in each on the premise that my skill generally allows me to handle a simpler case in fewer hours than it would a less experienced attorney.

12.    I have not filed a fee motion at my current rate; however, I settled a case earlier this year applying $975 an hour to calculate the lodestar.  The most recent court-approved fee awards I received were in 2014, when my rate of $875 an hour was approved.  I applied this rate in *Desertrain v. City of Los Angeles*,

754 F.3d 1147 (9th Cir. 2014).  The parties then settled the trial court and appellate fees together with an approximately 5 percent reduction of the appellate lodestar.  In a second case in 2015, the Circuit approved the full requested fee award at $875 an hour rate.  See *CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1098 (9th Cir. 2015).

13.    In 2012, I was paid at $795 an hour in a non-contingency case in the Central District.  *Federal Deposit Insurance Company v. Larry B Faigin,* 2:12-cv-03448-DDP-CW (C.D. Cal. 2012).  In 2010, I was awarded fees at $725 an hour in *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011 (9th Cir. 2009), a First Amendment case.  In 2009, I was awarded fees at $710 an hour in *Fitzgerald v. City of Los Angeles*, 2009 U.S. Dist. LEXIS 34803 (CD Cal. 2009), and in *Multi-Immigrant Worker Organizing Network ("MIWON") v. City of Los Angeles*, cv 07-7032 AHM, both police misconduct cases.  In 2008, I was awarded fees in the district court at $695 an hour in *Jones v. City of Los Angeles*, cv-03-1142 R.  *See* 444 F.3d 1118 (2006), vacated per settlement 505 F.3d 1006 (9th Cir. 2007).  The fee award was affirmed on appeal. 2014 U.S. App. LEXIS 1952 (9th Cir. Jan. 31, 2014.

14.    My opinion on the reasonableness of the rates sought by counsel is based on comparisons to rates approved for attorneys of comparable skill, experience and reputation in the Central District legal market.  *Blum v. Stenson*, 465 U.S. 886 (1984), instructs that "rates charged in private representations may

afford relevant comparisons." *Id.* at 895 fn. 11.  I understand this to mean that fees for civil rights lawyers should approximate the rates charged by attorneys of comparable skill, experience and reputation in the relevant legal market, who are engaged in similarly complex litigation, regardless of whether the attorneys work for a non-profit, represent individuals on contingency, serve as in-house counsel, or charge a minimal rate for paying clients with the possibility of receiving a market rate award if successful.  *See, Nadarajah v Holder,* 569 F3d at 910 (awarding market rates to attorneys at the ACLU).

15.    I apply several additional principles to analyze reasonable market rates.  First, when available, I look to rates awarded to the attorney in previous cases because such awards are strong evidence of reasonable market rates. *See Chaudhry v. City of Los Angeles*, 751 F3d 1096, 1111 (9th Cir. 2014); *U.S. v. $28,000 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015); *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 976 (9th Cir. 2008).

16.   Next, I look to evidence of billing rates by attorneys engaged in similarly complex business litigation as an approved method of establishing reasonable market rates for civil rights attorneys who do not regularly bill clients on an hourly basis.  This approach, approved by the federal courts, recognizes that most civil rights attorneys are not paid hourly for their services at market rates.  *See e.g.,* Pearl, *California Attorney Fee Awards*, CEB 2012, §9.109

(2012).  Evidence of billing rates for other attorneys that I have relied on is

drawn from fee awards as well as declarations regarding rates filed in pending

cases. Such evidence is one of the most common ways to establish market rates.

*See e.g., Beauchamp v Anaheim Union High Sch. Dist,* 816 F3d 1216, 1224 (9th

Cir 2016); *U.S. v $28,000 in U.S. Currency*, 802 F3d at 1106 (district court erred

by ignoring plaintiff's supporting rate declarations); and *Chaudhry*, 751 F3d at

1111.  Third, I apply the rule that the relative "simplicity" or "complexity" of a

case is reflected in the efficiency of hours, not the lodestar rate of the attorney.

*See Van Skike v Director, Office of Workers' Compensation Programs,* 557 F3d

1041, 1046 (9th Cir. 2009).

17.    I obtain information on current rates and fee awards from court

orders in prior years awarding statutory fees or awarding fees as a discovery

sanction.  I subscribe to several websites that report legal news.  If I learn of a

case where there is likely to have been a fee motion, I review the docket and

obtain a copy of any fee motion, supporting declarations and fee award from

public sources, including on-line documents for the Los Angeles Superior Court

and PACER.  If I provide a fee declaration and the opposition then files an

expert challenging the proposed rates, I search on line to find cases where the

defense expert provided fee declarations, as well as cases where the same expert

filed a declaration supporting high market rates in fee-shifting cases.

18.     Although the use of rate surveys is allowed as one method to evince support for market rates, I do not to use them for several reasons.  In my opinion, most of the surveys depart in several key respects from the lodestar analsyis.  They provide rates based solely on broad categories or ranges of years of practice.   Some provide only the high, low and mean rate for partners or associates in the relevant market.  For example, attached at Exhibit 7 is a true and correct copy of a National Law Journal story containing parts of the 2013 National Law Journal Survey.  The survey includes several large commercial firms with offices in Los Angeles and Orange County, two of the major population areas in the Central District legal market.

19.     The headings on the survey indicate that it provides the high, low and average rates for partners and associates.  While it may be useful to know what the highest and lowest rates are, that data does not identify whether the partners at the top are practicing 20 years or 40 years.  It is my understanding that the Ninth Circuit has rejected this approach of reliance on an average or "range" of fees. *Jordan v. Multnomah County*, 815 F.2d 1258, 1263-64 (9th Cir. 1987).  In addition to the absence of information about how long the various partners and associates have practiced, there is no indication of whether they do transactional law, or anti-trust or other similarly complex litigation.

20.     In reviewing opposition fee expert declarations over the last year,

10

123

I have observed that several now rely on the TyMetrix Real Rate Report.  I have reviewed this report on several occasions.  Based on my experience, this report is inconsistent with the lodestar analysis for several reasons.  First, like the National Law Journal survey discussed in the proceeding paragraph, the Real Rate Report provides no specifics on the individuals whose billing rates it includes, so there is no basis upon which to judge equivalent skill, experience and reputation. Moreover, most of the surveys rely on information that does not reflect current rates and is at least two years out of date.  For example, the 2015 TyMetrix Real Rate Report I reviewed is based on rates that cover up to 2014, with some from earlier years.  I obtained a copy of the 2015 Real Rate Report from PACER as the document was submitted as an exhibit by defense expert Gerald Knapton in opposition to a fee motion submitted in the Central District.

21.    The fact that the TyMetrix survey is based on rates that are now several years old is significant in my opinion because a prevailing party's attorney is entitled to current market rates.  In *Hiken v. DOD*, the Ninth Circuit recently reiterated that "market rates in effect more than two years *before* the work was performed" are not current rates under the lodestar analysis.  802 F.3d at 1107 (emphasis in original).

22.    The Real Rate Report sets out a bottom, median and third-quartile rate for all partners, all associates and all paralegals engaged in a particular type

11

of litigation.  Again, there is no way to tell if the partners reporting their rates have been practicing for nine years or 29 years.  Necessarily, such a survey includes partners at much higher rates than the third quartile, but that information is not available from the Real Rate Report, so it makes it difficult, if not impossible, to use that information to make a comparison to civil rights lawyers with experience equvialent to Ms. Intender.

23.    In my opinion, the Real Rate Report is also less relevant because it relies heavily on, but does not distinguish, rates paid to defense counsel on an hourly basis.  Assuming the Real Rate Report includes rates paid to defense counsel,  it is not an apt comparison of the range of market rates in the Los Angeles legal market.  As many courts have noted, defense counsel are paid, win or lose. They may discount rates because there is no delay in payment.  For all of these reasons, in my opinion, the Real Rate Report provides far less reliable evidence of reasonable market rates in the Central District for civil rights attorneys engaged in complex litigation.

24.    Based on my review of fee motions and awards, I am of the opinion that the billing rates in Southern California have increased annually at FAR more than the cost-of-living rate.  For example, in *Charlebois v. Angels Baseball, LP*, 2012 U.S. Dist. LEXIS 91069, cv 10-0853 DOC (C.D. Cal. May 30, 2012), Judge Carter rejected the defense argument that the rate then sought by V. James

DeSimone should be limited to what he had received in prior years.  "[C]ourts routinely recognize that fee rates increase over time based on a variety of factors." 2012 U.S. Dist. LEXIS 91069, *24.  In *Parker v. Vulcan Materials Co. Long Term Disability Plan*, No. EDCV 07-1512 ABC (OPx), 2012 WL 843623, *7 (C.D. Cal. Feb. 16, 2012), an increase of approximately 10 percent in one year was approved because "[i]t is common practice for attorneys to periodically increase their rates for various reasons, such as to account for expertise gained over time, or to keep up with the increasing cost of maintaining a practice."  *See also Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 649 (7th Cir. 2011) ("market value increased by more than the amount of inflation as [attorney] acquired additional experience and successful outcomes over the past decade").

25.    This same principle was also applied by Judge Wilken in *Armstrong v. Brown*, 94-cv-002307 CW (N.D. Cal. Aug. 8, 2011) Dkt. #1919.  Responding to the State's argument that the proposed increases in rates from 2008 to 2010 for plaintiffs' attorneys were too great, the Court noted that the 5 percent increase in rates each year "reflects only the across-the-board rise in firms' overall rates, not the increase in individual attorney's  hourly rates for the additional experience accrued over the two-year period." *Id.* at *5.  Among the evidence Judge Wilken cited  to for this  point was the declaration of Bingham McCutcheon attorney Geoffrey Holtz, pro bono counsel in *Armstrong*, and state

regulations providing for "merit" increases for judicial employees beyond the annual salary schedule increase. *Id.* The net result in *Armstrong* was an increase of more than one-third for associates in two years.

26.  As a further example of courts approving significant annual increases in rates, a  true and correct copy of the order in *Avila  v. Los Angeles Police  Department*, cv-11-01326  SJO (C.D. Cal. Aug. 2, 2012) is attached at Exhibit 8.  There, Judge Otero concluded that a reasonable 2012 rate for Matthew McNicholas, a 1997 graduate, was $700 an hour. Judge Otero rejected the defense assertion that Mr. McNicholas should only receive $650 an hour, noting that rates increase as attorneys gain more skills. *Id.* at pp.3-4.

27.  I understand that Mr. Holguin is seeking enhanced EAJA fees for the years 2015 through 2017.  In my opinion, these rates are well within the range of reasonable rates for an attorney of his skill, experience and reputation.  The rates sought are as follows: 2015 - $790; 2016 - $820; and 2017 - $850.

28.  I know Mr. Holguin personally.  He was a year behind me in law school, so I know him for more than 40 years.  In addition, I am very familiar with the work he has done over the years.  His organization often co-counseled cases with the ACLU of Southern California during the time that I worked there. I am aware of the numerous significant cases that he has been engaged in over the years, including but not limited to *Catholic Social Services v. Immigration*

*and Naturalization Services*, 232 F.3d 1139 (9th Cir. 2000); *Immigrant Assistance Proj. of the L.A. County Fed'n of Labor v. INS*, 306 F.3d 842 (9th Cir. 2002); and *Plyler v. Doe*, 457 U.S. 202 (1982).

29.    To support my opinion, I attach fee awards and supporting declarations in several EAJA cases, as well as recent civil rights cases in the Los Angeles legal market.  Each is a true and correct copy of the document as it appears on the Court's on-line files.  Several are now two or more years old.  I use these older exhibits to support the rates sought by this motion but do not assert that these are current market rates.  *See*, *Hiken v. DOD*, 802 F.3d at 1107.

30.    The information from the attached exhibits is summarized in the chart below.  For each person, I have listed the exhibit number, the attorney's name, the date of the award or declaration, the years the attorney was practicing at the time of the award and the rate.

| Ex. | Attorney | Year | Experience | Rate |
|-----|----------|------|------------|------|
| 2 | Judy Rabinovitz | 2015 | 30 | $825 |
| 2 | James Preis | 2015 | 37 | $875 |
| 2 | Judy London | 2015 | 25 | $775 |
| 3 | V. James DeSimone | 2016 | 31 | $825 |
| 3 | Michael Seplow | 2016 | 26 | $760 |
| 4 | Ron Kaye | 2014 | 26 | $775 |
| 6 | Anne Richardson | 2016 | 27 | $825 |

| 6 | Olu Orange | 2016 | 17 | $765 |

31.     Attached at Exhibit 2 is a true and correct copy of the ECF filed declaration I provided in support of the motion for EAJA fees in *Franco-Gonzalez v. Holder,* cv-10-2221 DMG (CD CA 2015). The Court approved the settlement in *Franco*, including approximately $10 million in attorney fees. [Doc 866].  I am personally familiar with nearly all of the attorneys who sought enhanced EAJA rates in the case, including Judy Rabinovitz, James Preis and Judy London, including those listed in the table above.  In 2015, they had 30, 37 and 25 years of experience, respectively.  Mr. Holguin, who had 34 years of experience in 2015, seeks an enhanced EAJA rate of $790 an hour for 2015, only $15 higher than the rate for Judy London, then with 11 years less experience than Mr. Holguin has now.

32.     Attached at Exhibit 3 is a true and correct copy of the order awarding EAJA enhanced attorney fees post appeal in *Xue Lu v. United States*, 01-cv–1758 CBM (C.D. Cal. 2016).  The attorneys in the case were with the firm of Schonbrun DeSimone Seplow Harris & Hoffman.  I know each of them personally as I have co-counseled with the firm on many occasions.  In addition, I became familiar with their backgrounds, skills and experience while filing declarations in support of the firm's fee motions.  Two of the named partners, V.

16

James DeSimone and Michael Seplow, are among the attorneys awarded enhanced EAJA fees in *Xue Lu*. Mr. DeSimone is known to me to be a 1985 law graduate and Mr. Seplow is known to me to be a 1990 law graduate and a classmate of Judy London, one of the attorneys awarded enhanced EAJA fees in *Franco*. In 2016, Mssrs. DeSimone and Seplow had 31 and 26 years of experience, respectively. They were awarded attorney fees at $825 and $760 an hour. Mr. Holguin seeks a rate for 2016 that is $5 an hour below Mr. DeSimone's 2016 rate and $60 an hour above the rate approved for Mr. Seplow. The differential between Mr. Holguin's rate and that of Mr. Seplow amounts to $10 an hour for each year.

33.    Attached at Exhibit 4 is the order awarding fees to attorneys at the law firm of Kaye, McLane, Bednarski & Litt ("KMBL") in 2014 in *Rodriguez v. County of Los Angeles*, cv-10-6432 CBM (C.D. Cal. Dec. 16, 2014). I submitted a declaration in support of the fee motion submitted by the plaintiffs' attorneys. Three years ago in *Rodriguez*, the Court approved the rate of $775 an hour for attorney Ron Kaye, a 1988 law graduate then practicing 26 years.

34.    Attached at Exhibit 5 is the Order approving the settlement in *Christian Rodriguez v. City of Los Angeles*, 17-cv-01136 DMG (C.D. Cal. Mar. 25, 2017), approving the final settlement in a class-action case challenging gang injunctions in Los Angeles. The Court's approved the reasonableness of the fees

sought and notes that the parties agreed to attorneys fees of $5,750,000, which was reached through mediation after a motion for court approval was filed. I provided a supporting fee declaration in the case, a a true and correct copy of which is attached at Exhibit 6. The rates sought by the motion included $765 an hour for Olu Orange, whom I know personally and believe to be a 1999 law graduate. The motion also included fees for Anne Richardson, both for her time at Hadsell Stormer and later at Public Counsel, at $825 an hour. I know Anne Richardson personally and believe her to be a 1989 law graduate.

35. Based on the foregoing, I am of the opinion that the rates sought by this motion for Mr. Holguin for the years 2015, 2016 and 2017 are all within the range of reasonable rates in the Southern California legal market for attorneys of comparable skill, experience and reputation.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 31st day of October, 2017 at Los Angeles, California.

CAROL A. SOBEL

131

Sobel Exhibit 1

# CAROL A. SOBEL

725 Arizona Avenue• Suite 300 • Santa Monica, CA 90401 •
Tel. 310 393-3055 • Email carolsobellaw@gmail.com

## Employment:

| | |
|---|---|
| LAW OFFICE OF CAROL A. SOBEL | APRIL, 1997 TO PRESENT |
| Solo civil rights law firm. | |

SENIOR STAFF COUNSEL                                                      1990 TO APRIL, 1997
*ACLU Foundation of Southern California*

Responsible for conducting civil rights and civil liberties litigation in state and federal courts in California;
supervise litigation by ACLU volunteer counsel and other ACLU legal staff.

STAFF ATTORNEY                                                                    1985 TO 1990
*ACLU Foundation of Southern Califonia*

Civil liberties litigation, primarily in the areas of Establishment Clause and Free Exercise violations, as well as other
First Amendment rights.

ASSOCIATE DIRECTOR                                                            1979 TO 1985
*ACLU Foundation of Southern California*
*American Civil Liberties Union of Southern California*

Under the direction of the Executive Director, responsible for administration of two non-profit organizations,
including working with Boards of Directors on development of policy on civil liberties issues.  Engaged in litigation
and assisted Legal Director in coordination and supervision of pro bono attorneys.

DEVELOPMENT DIRECTOR                                                       1977 TO 1979
*ACLU Foundation of Southern California*
*American Civil Liberties Union of Southern California*

Responsible for conducting a variety of fundraising efforts to meet a million-dollar plus annual budget for a
501(c)(3) and a 501(c)(4).

## Admitted to Practice:

| | |
|---|---|
| California Supreme Court | No vember, 1978 |
| United States Supreme Court | Sep tember, 1991 |
| Ninth Circuit Court of Appeals | August, 1986 |
| U.S.D.C. Central District of California | February, 1986 |
| U.S.D.C.  Eastern District of California | June, 1990 |

## Litigation Experience:

### Federal courts:   (Partial listing of published opinions and significant cases)

*CPR for SKID ROW,*
779 F.3d 1098 (9th Cir. 2015)
Partial reversal of summary judgment in favor of the Defendant and holding that California Penal Code §403
could not lawfully be applied to criminalize the expressive activity of the Plaintiffs for protesting on Skid
Row.
(Lead counsel and argued on appeal)

*Desertrain v. City of Los Angeles*
754 F.3d 1114 (9th Cir. 2014)
Reversal of summary judgment in favor of the Defendants and holding that Los Angeles Municipal Code §85.02, prohibiting parking a vehicle on public streets or parking lots any time of day or night if a person "lives" in the vehicle, is unconstitutionally vague.
(Lead counsel and argued on appeal)

*Lavan v. City of Los Angeles*
693 F.3d 1022 (9th Cir. 2012), *affirming* grant of preliminary injunction 797 F.Supp.2d 1005 (C.D. Cal. 2011)
Preliminary injunction barring City from confiscating and immediately destroying the property of homeless individuals on Los Angeles' Skid Row.
(Lead Counsel)

*Long Beach Area Peace Network v. City of Long Beach*
522 F.3d 1010 (9th Cir. 2008), as amended July 24, 2009
Upholding and reversing in part on appeal a decision of the district court granting Plaintiffs' request for a preliminary injunction to enjoin a municipal parade ordinance that included vague permit standards setting, *inter alia,* advance-notice requirements  police charges based on the past unlawful conduct of third parties without adequate standards to limit the discretion of public officials charged with implementing the parade ordinance.
(Lead counsel)

*Fitzgerald v. City of Los Angeles*
485 F.Supp.2d 1137 (CD CA 2008)
Extending injunction against police sweeps of homeless persons on Los Angeles' Skid Row on the grounds of searching for parole and probation violations.  See below for discussion of permanent injunction in 2003.
(Co-Counsel)

*Multi-Ethnic Immigrant Worker Organizing Network (MIWON) v. City of Los Angeles*
246 F.R.D. 621 (C.D. Cal. 2007)
Order granting class certification in challenge to police assault on a lawful assembly of immigrant rights supporters by the Los Angeles Police Department on May Day, 2007.
(Class Co-Counsel)

*Edward Jones, et al., v. City of Los Angeles,*
444 F.3d 1118 (9th Cir. 2006), vacated pursuant to settlement 505 F.3d 1006 (2007)
Challenge to City of Los Angeles Municipal Code §41.18(d), prohibiting sitting, lying or sleeping on any street or sidewalk anywhere in the City at any time of day or night.  Plaintiffs, all of whom are homeless persons, brought an 8th Amendment as-applied challenge to their arrests and citations for violating the ordinance when their was no available adequate shelter.
(Co-counsel)

*Terry Tipton-Whittingham, et al. v. City of Los Angeles*
316 F.3d 1059 (9thCir. 2003)
Challenge by City of Los Angeles to interim fee award granting plaintiffs' fees as "catalysts" under state civil rights fee shifting statutes.  Following oral argument, the Ninth Circuit certified issue of continued availability of "catalyst" fees under California law after adverse decision by the United States Supreme Court rejecting catalyst fee doctrine under federal law absent express legislative authorization.  Certified for hearing before the California Supreme Court and ultimately upheld the catalyst fee doctrine under California law.
(Co-counsel*; argued in Ninth Circuit)

*Fitzgerald v. City of Los Angeles*
2003 U.S. Dist. LEXIS 27382 (CD CA 2003)
Permanent injunction enjoining Fourth Amendment violations by the Los Angeles Police Department (LAPD). The injunction prevents the LAPD  from engaging in stops of homeless persons for parole and probation sweeps on Skid Row without reasonable suspicion to believe that specific individuals are on parole or probation and subject to a search condition, or that the individual has engaged in, or is about to commit a crime.
(Lead counsel)

*Khademi v. South Orange County Community College District*
194 F.Supp.2d 1011 (C.D. CA 2002)
First Amendment facial challenge invalidating college policy  regulating time, place and manner of student speech on campus.
(Lead counsel)

*Mardi Gras of San Luis Obispo v. City of San Luis Obispo*
189 F. Supp.2d 1018 (C.D. Cal. 2002)
Preliminary injunction to enjoin a municipal parade ordinance that required lengthy advance-notice requirement and permitted high insurance and police charges based on the past unlawful conduct of third parties without adequate standards to limit the discretion of public officials charged with implementing the parade ordinance.

*Bauer v. Sampson*
261 F.3d 775 (9th Cir. 2001)
First Amendment challenge to disciplinary action against college professor for publication of an alternative newsletter criticizing elected and appointed public officials and disclosing wrongdoing by college officials and personnel. The college sought to discipline the professor for violating the district's policies on discrimination and work-place violence. The polices were declared unconstitutional as applied to the professor's speech.

*H.C. v. Koppel*
203 F.3d 610 (9th Cir. 2000)
Dismissal of federal civil rights action filed in federal court against state court judge and appointed counsel for minor in family law matter. Circuit held that Younger Abstention applied and non-custodial parent had adequate state court remedy.

*Justin v. City of Los Angeles*
2000 U.S. Dist. LEXIS (CD Cal. 2000)
Class action to enjoin police sweeps of homeless population on Los Angeles' Skid Row. Permanent injunction stipulated to in settlement following certification of the injunctive relief class.
(Lead counsel)

*Los Angeles Alliance for Survival, et al. v. City of Los Angeles*
987 F. Supp. 819 (1997); 157 F.3d 1162 (9th Cir. 1998); on certification to the California Supreme Court, 22 Cal.4th 352 (2000); 224 F.3d 1076 (9th Cir. 2000)
Injunction issued in challenge to municipal ordinance barring so-called "aggressive solicitation" in broad areas of traditional public fora. Preliminary injunction entered by district court based on California Constitution. On appeal, the Ninth Circuit certified the California Constitution question to the California Supreme Court. Following decision by the California Supreme Court, the Ninth Circuit upheld the original injunction.
(Co-counsel)

*Service Employees International Union 660 v. City of Los Angeles*
114 F. Supp.2d 966 (C.D. Cal. 2000)
Challenge to the "no-protest zone" at the Democratic National Convention in Los Angeles in 2000, as well as a preliminary injunction to enjoin the City of Los Angeles parade ordinance.
(Co-counsel)

*United States v. Wunsch*
54 F.3d 579 (9th Cir. 1995);84 F.3d 1110 (9th Cir. 1996) (reargument)
First Amendment challenge to discipline of male attorney for "gender bias" in sending note to female Asst. U.S. Attorney after she successfully moved to disqualify him as defense counsel in a criminal case. Ninth Circuit invalidated the penalty and declared unconstitutional California's "offensive personality" regulation on attorneys' professional conduct. (Argued and briefed on appeal).

*American Jewish Congress v. City of Beverly Hills*
65 F.3d 1539 (9th Cir. 1995);90 F.3d 379 (9th Cir. 1996) (en banc)
First Amendment challenge to display of a religious symbol on public property and to permit scheme for expressive activities in public fora in the City of Beverly Hills. The en banc panel held the permit scheme unconstitutional and found that a preference had occurred for the display of a particular religious symbol. The en banc decision was unanimous. (Argued and briefed on appeal)

*Baca v. Moreno Valley Unified School District*
936 F. Supp. 719 (C.D. Cal. 1996)
First Amendment challenge to school board regulations preventing speakers from making disparaging remarks about public employees during public board meetings.

*Wallin v. City of Los Angeles*,
1194 U.S. App. LEXIS 2343 (9th Cir. 2004)

Circuit dismissed appeal of defendant City and law enforcement officers from denial of qualified immunity. Appellee, a female officer with the Los Angeles Police Department, alleged that appellants violated her right to equal protection, due process and right to petition the government because they violated LAPD confidentiality regulations and delayed the investigation into her allegations of co-worker rape.

(Lead counsel)


*National Abortion Federation v. Operation Rescue*
8 F.3d 680 (9th Cir. 1993)
Class-action state-wide injunction against blockades of women's health care clinics by anti-abortion activists. First case decided under the "frustrate and hinder" clause of 42 U.S.C. § 1985(3), the 1871 Ku Klux Klan Act. Appeals court held cause of action under "frustrate and hinder" clause was properly plead and reversed 12(b)(6) ruling on that claim.

(Co-lead counsel throughout; argued on appeal)

*Hewitt v. Joyner*

940 F.2d 1561 (9th Cir. 1991)

Establishment Clause challenge to Christian theme park, Desert Christ Park, owned and operated by San Bernardino County.  Ninth Circuit held County ownership and operation of the park violated the Establishment Clause.

(Lead counsel throughout litigation; argued on appeal).

*Standing Deer v. Carlson*

831 F.2d 1525 (9th Cir. 1986)

First Amendment challenge for Native Americans at Lompoc Federal Penitentiary to regulation barring religious headbands in the dining facilities for purported health reasons.

(Argued and briefed on appeal)

*Burbridge v. Sampson*

74 F.Supp.2d 940 (C.D. Ca. 1999)

First Amendment challenge to community college policy regulating student speech in public fora on campus. Court issued a preliminary injunction, declaring the college's speech regulations unconstitutional.

*Rubin v. City of Santa Monica*

823 F.Supp. 709 (C.D. Ca. 1993)

First Amendment challenge to city permit scheme limiting access to public parks for protected expressive activities.  Court issued a preliminary injunction and declared the permit scheme unconstitutionally on vagueness grounds and procedural due process grounds.  (Lead counsel)

# State Court

*Terry Tipton-Whittingham, et al. v. City of Los Angeles*

34 Cal.4th 604 (2002)

California continues to recognize "catalyst" fee awards to prevailing parties under the private attorney-general statute (Cal. Code  of  Civ. Proc. §1021.5) and Fair Employment and Housing Act (FEHA) despite change in federal civil rights fee-shifting law.  Under California law, there is no requirement of a judicial determination establishing a change in the legal obligations of the parties.

(Co-counsel and argued at California Supreme Court)

*Los Angeles Alliance for Survival v. City of Los Angeles*

22 Cal.4th 352 (2000)

Ordinance restricting certain activity as "aggressive solicitation" was not content-based under California Constitution

(co-counsel)

*Williams v. Garcetti*

5 Cal.4th 561 (1993), *sub nom Williams v. Reiner*, 13 Cal.App.4th 392 (1991)

Challenge on due process grounds to portion of STEPP law which imposed a criminal penalty  on parents of minor children engaged in or at risk of delinquent conduct.

(Argued and brief on appeal to California Supreme Court)

*Sands v. Morongo Unified School District*

53 Cal.3d 863 , *cert denied*, 112 U.S. 3026 (1991)

225 Cal.App.3d 1385 (1989)

Establishment Clause challenge invalidating prayers at public high-school graduations.

(Argued and briefed as lead counsel throughout litigation)

*Walker v. Superior Court of Sacramento*

47 Cal.3d 112 (1988)

Establishment Clause/Free Exercise/Due Process challenge to criminal prosecution of Christian Science parents for death resulting from use of prayer instead of traditional medicine in treatment of ill child.  (Wrote amicus brief on due process issues).

*Irvine Valley College Academic Senate, et al. v. South Orange County Community College District*

129 Cal.App.4th 1482 (2005)

Statutory construction of plain language of Education Code §87360, bolstered by legislative intent, requires actual joint agreement and mutual development of revisions to faculty hiring policies.

(co-counsel, drafted final briefs on appeal)

*Fashion 21, et al. v. Coalition for Humane Immigrant Rights (CHIRLA), et al.*

111 Cal.App.4th 1128 (2004)

Special motion to strike defamation complaint by retainer against garment worker advocates must be granted as the plaintiff retailer could not establish a probability of prevailing on the merits of their claims.  Garment worker advocates properly relied on draft labor commission regulations suggesting retailer could be liable for sweatshop conditions of manufacturing of its retail goods.

(lead counsel at all stages)

*Gonzalez v. Superior Court*

33 Cal.App.4th 1539 (1995)

Challenge to discovery order in sexual harassment case requiring plaintiff to disclose name of confidential informant who provided her with photographic evidence of harassment.  "After-acquired evidence" rule applied to require disclosure.

(Lead counsel in trial court and appeal)

*Lantz. v. Superior Court of Kern County*

28 Cal.App.4th 1839 (1994)

Privacy rights challenge to interpretation of Consumer Personnel Records Statute (CCP § 1985(3), requiring strict adherence to statutory procedures and limiting exemption of local government agencies from adhering to statutory requirements.

(Lead counsel throughout litigation)

*Rudnick v. McMillan*

25 Cal.App.4th 1183 (1994)

Defamation verdict involving public figure plaintiff and local environmentalist author of letter to editor overturned on basis that letter was protected opinion and public figure subject to constitutional malice proof burden.  Wrote amicus brief which formed basis of appellate ruling.

*Westside Sane/Freeze v. Hahn*

224 Cal.App.3d 546 (1990)

Challenge to restrictions on First Amendment petition activities in shopping center.

(Co-counsel, co-wrote appeal)

*City of Glendale v. Robert George*

208 Cal.App.3d 1394 (1989)

Reversal of trial court order imposing prior restraints on speech of "Presidential Santa" on the basis that he constituted a public nuisance to his neighbors in a residential area.

(Argued and briefed on appeal)

*McCarthy v. Fletcher*

207 Cal.App.3d 130 (1989)

Challenge to removal of textbooks from school reading list based on community-based religious objections.  Court of Appeal reversed summary judgment decision, holding that there was sufficient evidence of constitutionally impermissible factors in evaluation of appropriateness of class-room reading materials.

(Argued and brief on appeal)

*Fiske v. Gillespie*

200 Cal.App.3d 130 (1988)

Challenge to sex-based actuarial presumptions in insurance industry rate for particular types of life insurance and annuity benefits.

(Co-Counsel, Argued on appeal)


# Publications:

# (Partial listing)s


*Catalyst Fees After Buckhannon*

Civil Rights Litigation and Attorney Fees Annual Handbook

(January 2006)


*Free Speech and Harassment: An Overview*

*in the Public Employee Sector*

CPER: CALIFORNIA PUBLIC EMPLOYEE RELATIONS

Institute of Industrial Relations - UC Berkeley

June 1999  No. 136


*Defeating Employer Defenses to Supervisor Liability*

*After* Ellerth *and* Faragher

ADVOCATE, October 1998


*Student Expression Under California Law*

UCLA Journal of Education

Volume 3, pp. 127-137 (1989)


*Should Attorneys Be Disciplined For Gender Bias*

Point/Counterpoint ABA Journal   August, 1995


*Fight Illegal Police Practices in State Court*

Los Angeles Daily Journal

March 6, 1992


*Judicial Oversight Limited by Supreme Court*

Los Angeles Daily Journal

May 6, 1991


*Jury Nullification is Conscience of Community*

Los Angeles Daily Journal

August 31, 1990


*A Basic Right Merits Shield From The Mob*

Los Angeles Times

August 11, 1991 p.M5


138

*Prop 115 revisited: Police charged with crimes*
*deserve fair trials too*
Los Angeles Daily News
May 7, 1991

*Prayer Doesn't Belong at Graduation*
USA Today
May 15, 1991 p. A10

*Killea Tactic Can Only Hurt the Church in the Long Run*
Los Angeles Times (San Diego)
November 20, 1989 p.B7

*The Fifth is a Shield for All*
Los Angeles Times
August 6, 1988    II8
(authored for Exec. Dir. ACLU)

*Which Way Will Rehnquist Court Turn?*
Los Angeles Daily News
June 18, 1986 p.21

*Constitution Exacts Cost for Religious Freedom*
Los Angeles Daily News
June 8, 1986 FOCUS  p.3

## Education:

| | |
|---|---|
| Peoples College of Law | J.D.  May, 1978 |
| Douglass College.For Women, Rutgers University | B.A . June, 1968 |

## Professional and
## Community Activities:

| | |
|---|---|
| Adjunct Professor - Loyola Law School<br>Civil Rights Advocacy Practicum | 2007-present |
| Blue Ribbon Panel on LAPD Rampart Inquiry, Member | 2004-2006 |
| Ninth Circuit Gender Bias Task Force<br>Convenor, Advisory Committee on Employment Law | 1992-1993 |
| Ninth Circuit Conference on "Ethnicity, Race, and Religion in the Ninth Circuit"<br>Member, Working Subcommittee | 1993 |
| Los Angeles Public Interest Law Journal<br>Advisory Board | 2007-present |

139

| | |
|---|---|
| Los Angeles Center for Law and Community Action<br>Member, Board of Directors | 2015-present |
| National Police Accountability Project<br>Member, Advisory Board and Board of Directors | 2006-present |
| National Lawyers Guild, Los Angeles - President | 2001-2008 |
| National Lawyers Guild - National Executive Vice President | 2009-2011 |
| National Lawyers Guild Far West Regional Vice-President | 2003-2005 |
| National Lawyers Guild, National Executive Committee | 2003-2012 |
| NLG National Mass Defense Committee, Co-chair | 2003-2012 |
| Women Lawyers Association of Los Angeles<br>Member, ProChoice Committee | 1985-2002 |
| The California Anti-SLAPP Project<br>Member, Board of Directors | 1995-2010 |

## Awards:
## (Partial listing)

| | |
|---|---|
| PEN Freedom to Write Award | 1991 |
| American Jewish Congress Tzedek Award | 1992 |
| Planned Parenthood Los Angeles, Distinguished Service Award | 1990 |
| Freethought Heroine Award | 1992 |
| National Lawyers Guild - Los Angeles | 1999 |
| ACLU of Southern California Pro Bono Attorney Award | 2001 |
| Asian Pacific American Legal Center Pro Bono Award | 2003 |
| California Lawyer: Super Lawyer -Civil Rights/Constitutional Law | 2004-2014 |
| ACLU of Southern California Freedom of Expression Award | 2007 |
| Daily Journal Top 100 Most Influential Lawyers in California | 2007 |

National Lawyers Guild - Ernie Goodman Award                                    2007

Angel Award - California Lawyer Magazine Award for pro bono work               2007

CLAY Award (California Lawyer of the Year - civil rights) - California Lawyer Magazine    2008

Top 75 Women Litigators in California - Daily Journal                     2008, 2013

California Super Lawyers - Top 50 Women Lawyers in Southern California          2014

National Lawyers Guild, Los Angeles Law for the People Award                   2014

ACLU Lifetime Achievement Award                                                2017

Sobel Exhibit 2

AHILAN T. ARULANANTHAM (State Bar No. 237841)
aarulanantham@aclusocal.org
CARMEN IGUINA (State Bar No. 277369)
ciguina@aclusocal.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, California 90017
Telephone: (213) 977-5211
Facsimile: (213) 417-2211

MICHAEL H. STEINBERG (State Bar No. 134179)
steinbergm@sullcrom.com
SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100
Los Angeles, California 90067-1725
Telephone: (310) 712-6600
Facsimile: (310) 712-8800

*Attorneys for Plaintiffs-Petitioners*
(Additional Counsel for Plaintiffs on Following Page)

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

JOSE ANTONIO FRANCO-GONZALEZ, et al.,

    *Plaintiffs-Petitioners,*

    v.

ERIC H. HOLDER, Jr., Attorney General, et al.,

    *Defendants-Respondents.*

Case No. 10-CV-02211 DMG (DTBx)

**DECLARATION OF CAROL SOBEL IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**

Honorable Dolly M. Gee

143

1  JUDY LONDON (State Bar No. 149431)
   jlondon@publiccounsel.org
2  TALIA INLENDER (State Bar No. 253796)
   tinlender@publiccounsel.org
3  PUBLIC COUNSEL
   610 South Ardmore Avenue
4  Los Angeles, California 90005
   Telephone: (213) 385 2977
5  Facsimile: (213) 385-9089

6  JUDY RABINOVITZ (State Bar No. JR-1214)
   JRabinovitz@aclu.org
7  ACLU IMMIGRANTS' RIGHTS PROJECT
   125 Broad Street, 18th Floor
8  New York, New York 10004-2400
   Telephone: (212) 549-2618
9  Facsimile: (212) 549-2654

10 BARDIS VAKILI (State Bar No. 247783)
   bvakili@aclusandiego.org
11 DAVID LOY (SBN 229235)
   davidloy@aclusandiego.org
12 ACLU OF SAN DIEGO & IMPERIAL COUNTIES
   P.O. Box 87131
13 San Diego, California 92138
   Telephone: (619) 232-2121
14 Facsimile: (619) 232-0036

15 JAMES PREIS (State Bar No. 82690)
   jpreis@mhas-la.org
16 MENTAL HEALTH ADVOCACY SERVICES
   3255 Wilshire Boulevard, Suite 902
17 Los Angeles, California 90010
   Telephone: (213) 389-2077
18 Facsimile: (213) 389-2595

19 MATT ADAMS (State Bar No. 28287)
   matt@nwirp.org
20 NORTHWEST IMMIGRANT RIGHTS PROJECT
   615 2nd Avenue, Suite 400
21 Seattle, Washington 98104-2244
   Telephone: (206) 957-8611
22 Facsimile: (206) 587-4025

23 JAMES LYALL (State Bar No. 330045)
   jlyall@acluaz.org
24 ACLU FOUNDATION OF ARIZONA
   3707 N. 7th Street, Suite 235
25 Phoenix, Arizona 85014
   Telephone: (602) 773-6001
26 Facsimile: (602) 650-1376

27 *Attorneys for Plaintiffs-Petitioner*

28

### DECLARATION OF CAROL A. SOBEL

I, CAROL A. SOBEL, declare:

1.     I am an attorney admitted to practice before the Supreme Court of the State of California and the Central District of California.  Because few, if any, of the public interest lawyers involved in this litigation are paid by clients to establish a market rate, I am submitting this declaration to provide the court with information concerning reasonable market rates in support of the attorney fees requested by Plaintiffs' counsel in the above-captioned matter. I have personal knowledge of the facts set forth below and, if I were called to testify to those facts, I could and would do so competently.

2.     I graduated from law school in 1978 and was admitted to practice in December of that same year.  Until April of 1997, I was employed by the ACLU Foundation of Southern California (ACLU).  For the six years prior to leaving, I was a Senior Staff Counsel.  Throughout the time that I was an attorney at the ACLU, my primary areas of litigation were First Amendment rights and police litigation.  A true and correct copy of my résumé is attached at Exhibit 1.  I have received numerous awards for my work in the area of First Amendment litigation and, more recently, on behalf of homeless persons. I have been qualified as an expert in ethics and practices of public-interest legal groups, including once before the State Bar and once in the Los Angeles Superior Court.

3.     For many years, I have regularly gathered and submitted declarations containing information about reasonable market rates in support of fee motions filed by civil rights lawyers in private practice and public interest attorneys in Los Angeles.  My declarations have been approved by numerous courts as evidence of reasonable market rates throughout California.   The decisions that have noted my declarations favorably include, among others, *Nadarajah* v. *Holder,* 569 F.3d 906, 916-917 (9th Cir. 2009); *Orantes-Hernandez v. Holder,* 713 F.Supp.2d 29, 963-964(C.D.Cal.2010); *Torrance*

1

*Unified Sch. Dist.* v. *Magee,* CV 07-2164 CAS (Rzx) (C.D.Cal. 2008), [2008 U.S.Dist. Lexis 11 95074, 21]; *Atkins* v. *Miller,* CV-01-01574 DDP (C.D.Cal 2007); *Jochimsen v. County of Los Angeles,* B223518 (2d Dist. June 23, 2011) (unpublished); *Dugan v. County of Los Angeles*, cv 11-08145 CAS (C.D. Cal. Mar. 3, 2014); and *Flores v. City of Westminster*, SA-CV-11-0278 (C.D. Cal. 2014). In *Jochimsen*, the appellate court found me qualified as an expert on rates.

4.      My current billing rate is $875 an hour for complex civil rights litigation. Although I have settled several cases calculating the lodestar on my annual rate, I have limited my discussion in this paragraph to the contested fee awards over the last six years in which judges of this Court found my rate to be reasonable.    I was awarded fees in 2008 at $695 an hour by the Hon. Manuel Real in *Jones v. City of Los Angeles*, 444 F.3d 1118 (2006), *vacated per settlement* 505 F.3d 1006 (9th Cir. 2007. In 2009, I was awarded fees at $710 an hour by the Hon. Dean Pregerson in *Fitzgerald v. City of Los Angeles*, 2009 U.S. Dist. LEXIS 34803 (C.D. Cal. 2009). Later in 2009, I was awarded fees at the same rate by the Hon. A. Howard Matz in *Multi-Ethnic Immigrant Worker Organizing Network v. City of Los Angeles,* cv 07-3072 AHM (C.D. Cal.)*,* a hybrid class-action. Exhibit 2. In 2010, I was awarded fees at $725 an hour by the Hon. S. James Otero in *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011 (9th Cir. 2009). Although I rarely have paying clients, I was paid at $795 an hour in 2012 in a case in which I defended an outside director of a small bank taken over and sued by the Federal Deposit Insurance Corporation ("FDIC") in an attempt to recover investment losses. *Federal Deposit Insurance Company v. Faigin, et al.*, cv-12-03448 DDP (CWx) (C.D. Cal.). Most recently, the Ninth Circuit awarded me full fees in *CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1098 (9th Cir. 2015). The 2015 rate of $875 an hour is shown in the motion filed with the Court, a copy of which is

2

attached at Exhibit 7.

5.     As Senior Staff Counsel at the ACLU, I was responsible for preparing many fee motions in cases where the ACLU represented the prevailing party.  Since the ACLU does not bill clients on an hourly basis, I had to obtain information to establish market rates for the ACLU lawyers.  I did this annually by telephoning partners at firms who knew the ACLU lawyers in question so that they could make an informed judgment about the comparable skill levels of attorneys at their firms whose rates were then used to set ACLU billing rates.

6.     Since entering private practice, I have continued to survey firms each year to obtain relevant comparisons for billing rates as I do not charge my clients for representation and continue to do the same type of cases as I did at the ACLU.  My cases are brought on behalf of low-income persons, who are unable to afford legal representation.  I generally survey annual billing rates at firms the first time each year I prepare a fee motion or enter into settlement discussions regarding fees. I apply this methodology based on my understanding of the U.S. Supreme Court in *Blum v. Stenson*, 465 U.S. 886 (1984), holding that representation by a non-profit legal group is not a factor in arriving at billing rates for attorneys of comparable skill, experience and reputation.  I also research information on rates approved for lawyers at boutique civil rights firms and public-interest organizations whose skills and experience are comparable to those of attorneys who do other types of complex litigation.

7.     I understand that Plaintiffs are seeking market rate fees under both the Rehabilitation Act and enhanced EAJA fees for the following attorneys:

| Attorney | Entity | Grad. | 2015 | 2014 | 2013 | 2012 | 2011 | 2010 |
|---|---|---|---|---|---|---|---|---|
| James Preis | MHAS | 1978 | $875 | $850 | $825 | $775 | $725 | $685 |
| Judy Rabinovitz | ACLU IRP | 1985 | $825 | $790 | $760 | $720 | $680 | $630 |
| Michael Steinberg | Sullivan | 1986 | $1040 | $1020 | $1010 | $1000 | $950 | $890 |
| Judy London | Pub.Counsel | 1990 | $775 | $750 | $725 | $680 | $630 | $600 |

3

| Matt Adams | NW IRP | 1998 | $710 | $680 | $650 | $620 | $580 | $550 |
| A.Arulanantham | ACLUSoCal | 1999 | $690 | $670 | $640 | $600 | $550 | $525 |

I am informed that the rates for Michael Steinberg are discounted from his customary billing rate.

8. In addition to the attorneys listed above, I am informed that Plaintiffs are seeking market-rate fees under the Rehabilitation Act for the attorneys listed in the table below, but not enhanced EAJA rates.

| Attorney | Entity | Grad. | 2015 |
|---|---|---|---|
| Victoria Lopez | ACLU AZ | 2001 | $640 |
| Bardis Vakili | ACLU SDIC | 2006 | $535 |
| Talia Inlender | Pub. Counsel | 2007 | $535 |
| Sean Riordan | ACLU SDIC | 2007 | $535 |
| James Lyall | ACLU AZ | 2007 | $535 |
| Shawn Lichaa | Sullivan | 2007 | $865 |
| Damion D.D. Robinson | Sullivan | 2007 | $865 |
| Marisol Orihuela | ACLU SoCal | 2008 | $510 |
| Asel Aliyasova | Sullivan | 2008 | $850 |
| Theresa Buckley | Sullivan | 2008 | $850 |
| Alexa Lawson-Remer | Sullivan | 2009 | $800 |
| Sarah Mehta | ACLU IRP | 2009 | $490 |
| Victor Leung | ACLU SoCal | 2009 | $490 |
| Jennifer Stark | ACLU SoCal | 2009 | $490 |
| Riddhi Mukhopadyay | NW IRP | 2009 | $490 |
| Antonia Stamenova-Dancheva | Sullivan | 2009 | $800 |
| Michael Murtagh | Sullivan | 2010 | $750 |
| Carmen Iguina | ACLU SoCal | 2010 | $475 |
| Esha Bhandari | ACLU IRP | 2010 | $475 |
| Thea Bernas | Pub. Counsel | 2011 | $450 |
| Stephen Kang | ACLU IRP | 2011 | $450 |

4

| Sofia Corona | ACLU SDIC | 2014 | $340 |
| Lauren Cruz | Sullivan | 2014 | $370 |

9. Of the attorneys who seek enhanced EAJA rates by this motion, I am most familiar with James Preis, Judy Rabinovitz, Judy London and Ahilan Arulanantham. Most of these attorneys I know primarily by reputation. I have known James Preis for more than 30 years. Although I never worked with him on a case, he co-counseled several cases with other staff attorneys at the ACLU when I was there. In my experience, he is widely regarded as the expert on mental health litigation. Similarly, I am of the opinion that Judy Rabinovitz and Judy London are both widely respected and highly skilled immigration attorneys. I have been at award presentations for each of them recently where there experience and accomplishments have been detailed.

10. Ahilan Arulanantham and I worked together on several cases, including *Barakat v. Arrellano*, CV 05-08635 SVW, a de novo hearing on the denial of a naturalization application involving a one-week trial in the District Court in June, 2006. We have also worked together on other immigration-related matters that, ultimately, were resolved without litigation. Based on my discussions with other attorneys on *Barakat*, including Georgetown law professor David Cole, and other immigration attorneys who have worked with Mr. Arulanantham, I am of the opinion that he enjoys an exceptional reputation as an attorney and displays skills and experience far beyond those of most attorneys practicing for 16 years.

11. Finally, although they are only seeking market rates for 2015, I know three of the ACLU attorneys. I know Sean Riordan and Bardis Vakili. I have spoken with them about their litigation at various times and reviewed briefs written by them. In addition, before he transferred to the ACLU of San Diego, Mr. Vakili and I participated in a coalition working on homelessness issues in Orange County. I also have known Marisol Orihuela since she was a summer

5

student at the ACLU after her first year of law school. She assisted on the *Barakat* case. I continued to have contact with her and an opportunity to observe her work during the years she was at the ACLU as a fellow and then a staff attorney. For those attorneys I do not know personally, I reviewed materials on line regarding each attorney's experience, successful litigation they have brought, and recognition they have received for their work. With these factors in mind, I believe that all are highly skilled and enjoy exceptional reputations as such.

12. Based on my knowledge of billing rates for lawyers of similar skill, reputation a nd experience in the greater Los Angeles area, I am of the opinion that the hourly compensation sought for these attorneys is well within the range of reasonable market rates in Los Angeles. I base this opinion on the court orders and declarations of counsel identified below and attached as exhibits to my declaration. Each exhibit is a true and correct copy of the document as it appears in the Court's records, bearing the ECF filing header for documents from the federal courts and the filing stamp for state court documents.

**JAMES PREIS - 1978**

13. Mr. Preis and I have been practicing the same length of time. As stated above, in my experience in the civil rights community in Los Angeles over the past 37 years, James Preis is widely recognized as the expert on mental health issues. I was informed by Mr. Preis that he was awarded fees at the rate of $685 an hour in 2010 by former Judge Matz. This is below the rate I was awarded by Judge Real two years earlier in *Jones v. City of Los Angeles*, and below the rate of $710 an hour I was awarded in 2009 by Judges Pregerson and Matz, as well as the 2010 rate of $725 an hour I was awarded by Judge Otero. Attached at Exhibit 3 is a copy of the fee award issued in *Jones. See ¶3, supra.* Because the 2008 award in *Jones* did not set out the individual rates approved, I have also attached a copy of the Court's order on remand, explaining the basis

6

1   for the 2008 decision and setting out the approved rates. *See* Exhibit 4.

2   Attached at Exhibit 5 is a copy of the 2010 fee award identified in paragraph 3 in

3   *Long Beach Area Peace Network v. City of Long Beach*, approving the rate of

4   $725 an hour for me when I was practicing 32 years.

5        14.    Attached at Exhibit 6 is an excerpt from the order awarding fees to

6   attorneys at Litt, Estuar and Hadsell & Stormer at 2011 rates in *Pierce v. County*

7   *of Orange*, cv-01-00981 ABC. The case involved both PRLA and non-PRLA

8   fees. In *Pierce*, Barbara Hadsell was awarded market rate fees at $775 an hour

9   for 2011. Exhibit 6, p.3. I know Ms. Hadsell personally and, on that basis, am

10   aware that we both graduated law school in 1978, the same year as Mr. Preis.

11   Ms. Hadsell's approved rate for 2011 is $50 an hour higher than the historic rate

12   sought for James Preis. In 2012, I was paid an hourly rate of $795 an hour to

13   represent John Lannan in an action brought by the Federal Deposit Insurance

14   Corporation ("FDIC") to recover assets from a small regional bank that failed

15   during the recent economic downturn. *See* para. 3, *supra*. My role in the case

16   was to file a motion to dismiss based on procedural due process, as I would do in

17   a civil rights case.

18        15.    I filed no fee motions in 2013. However, I note that Mr. Preis'

19   requested rate of $825 an hour is only $30, or 3.75 percent, above the rate I was

20   paid on a non-contingent basis in 2012, as described in the preceding paragraph.

21   In 2014, I filed a motion seeking fees at the rate of $875 an hour in the Ninth

22   Circuit in *Desertrain v. City of Los Angeles*, 754 F.3d 1147 (9th Cir. 2014). The

23   Circuit approved the entitlement to fees and transferred the matter to the

24   Appellate Commissioner to determine the amount of fees. While that was

25   pending, the fee award in the district court in *Desertrain* was decided by Judge

26   Klausner, who reduced my rate to $750 an hour, a rate just three percent above

27   the rate I was awarded in 2010 and about an equal percentage below the hourly

28   rate I was paid on a non-contingent basis in 2012. Because of the fee order in

7

*Desertrain*, I did not raise my rate for 2015: however, just a few weeks after the settlement of fees at the reduced rate in *Desertrain*, the Ninth Circuit approved full fees in *CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1098 (9th Cir. 2015). Exhibit 7.  My rate for the motion was $875 an hour.  Exhibit 8, pp. 7,11.

### JUDY RABINOVITZ - 1985

16.    Judy Rabinovitz seeks enhanced EAJA rates of $630 an hour for 2010, $680 for 2011, $720 for 2012, $760 for 2013, $790 for 2014 and $825 for 2015.  Ms. Rabinovitz has been practicing the same length of time as V. James DeSimone, a named partner in the Schonbrun, DeSimone, Seplow, Harris & Hoffman firm, and Laurence Paradis, an attorney with Disability Rights Advocates ("DRA").    She has been practicing two years longer than Ron Elsberry, an attorney formerly at DRA and then at Disability Rights Legal Center ("DRLC"), and one year less than civil rights attorney Theresa Traber.  I am familiar with each of these attorneys.  In my opinion, they have litigation.

17.    In 2010, Laurence Paradis was awarded fees at $740 an hour in *Californians for Disability Rights v. California Dept. of Transportation*, 2010 U.S. Dist. LEXIS 141030, C 06-05125 SBA (N.D. Cal. 2010), *15. Exhibit 9, p. 11.  In the same decision, Ron Elsberry was awarded fees at the rate of $640 an hour. *Id.*   Although this decision issued in the Northern District, attorneys at DRA apply the same rates statewide.  *See* Exhibit 11, ¶ 17 (Decl. of Laurence Paradis of Disability Rights Advocates ("DRA") filed in the Ninth Circuit in support of the motion for attorney fees by Disability Rights Legal Center in *Los Angeles Unified School District v. Michael Garcia*, Ninth Circuit Case No. 10-55879) (attesting that DRA applies the same rates statewide).    The interchangeability of rates in Los Angeles and San Francisco was also noted in *Minor v. Christie*, 2011 U.S. Dist. LEXIS 9219 (N.D. Cal. 2011) (rates are essentially the same in Los Angeles, San Francisco and New York).  Also in 2010, Jim DeSimone was awarded fees at $650 an hour in *Taylor-Ewing v. City*

8

*of Los Angeles*, cv-07-5556 GHK (C.D. Cal. 2010), an excessive force case. Exhibit 12, p. 7.

18.   In 2012, in *Hickman Mechanical v. FTR International*, LASC Case No. BC 398074, the Court awarded fees to Theresa Traber in an anti-SLAPP case at her 2011 rate of $675 an hour.  Exhibit 13, ¶ 12.  Also in 2012, the Hon. David Carter approved the rate of $695 an hour for Mr. DeSimone in *Charlebois v. Angels Baseball, LP.*, 2012 U.S. Dist. LEXIS 91069 (C.D. Cal. 2012), SACV 10-0853 DOC.  Exhibit 14, pp. 4,10.

19.   In 2013, based on fees set at 2012 rates, the Court approved fees for Laurence Paradis at the rate of $800 an hour in *Communities Actively Living Free and Independent v. City of Los Angeles*, cv-09-0287 CBM (C.D. Cal. June 10, 2013) based on a 2012 rate of $800 an hour.  Exhibit 10, pp. 6-7.   Final approval of the settlement was entered in 2013; however, the parties reached agreement on the terms of the settlement in 2012.  Exhibit 10, ¶ 3, p. 3, l.15-18.

20.   In *Hernandez v. Goliath, Inc.*, LASC BC 462953, the Los Angeles Superior Court approved the 2013 rate of $795 an hour for Theresa Traber in a lodestar crosscheck used in the settlement of a class action. Exhibit 15, p. 5, ¶ 9. Laurence Paradis of DRA attested that his 2013 rate was $825 an hour. Exhibit 11 ¶ 12, Ex. A.  Finally, in 2014, in *Rodriguez v. County of Los Angeles*, cv-10-6432 CBM (C.D. Cal. Dec. 16, 2014), fees were awarded to attorneys Ron Kaye (1988), and Dave McLane and Marilyn Bednarski (1986),at $775 an hour in a police misconduct case.  Exhibit 16, p. 14.

21.   Ms. Rabinovitz's requested 2014 rate of $790 an hour is two percent above the rate approved for attorneys with one to three years less experience.  Her 2015 rate of $825 an hour is the same as the 2013 rate for Mr. Paradis and less than four percent above the 2013 rate approved for Ms. Traber. Thus, the rates sought for Ms. Rabinovitz are fully consistent with  rates approved in the Central District.  In fact, in most instances, they are slightly

9

lower that the rates approved for comparable civil rights attorneys.

**MICHAEL STEINBERG - 1986**

22. I am informed that Michael Steinberg is requesting rates below the customary billing rates he applies to his commercial clients, and below Sullivan & Cromwell LLP rates approved by other courts. He seeks a rate of $890 for 2010. At that time, he was practicing 24 years. I have reviewed the Declaration of Michael Steinberg submitted in support of this fee application, as well as the various court filings and decisions referenced in his declaration regarding rates approved for Sullivan & Cromwell. These rates are the customary billing rates for attorneys at the firm and have been repeatedly approved as reasonable market rates by courts across the country.

23. In addition to the evidence submitted by Mr. Steinberg, I am providing additional fee awards in the Los Angeles legal market. These decisions support the reasonableness of the rates sought. In 2009, partners at Gibson Dunn & Crutcher were awarded fees at the rate of $785 to $905 an hour in *Rogel v. City of Lynwood*, 194 Cal.App.4th 1319 (2011), where the firm co-counseled with several public interest organizations, including Public Counsel. The trial judge accepted the requested rates but, because the defendant was a government entity, applied a significant negative multiplier, which was reversed by the Court of Appeal. *Id.* A true and correct copy of the declaration of Wayne Barsky, setting out the 2009 billing rates at Gibson Dunn, is attached at Exhibit 17. Mr. Barsky, who attested in his declaration that he was a 1983 law graduate, was the highest biller at $905 an hour. Exhibit 17, p. 14. Fees were also approved at $785 an hour for Marcellus McRae, then practicing 21 years. *Id.* The 2009 rate for Wayne Barsky is above the rate sought by Mr. Steinberg for 2010. Although Mr. Steinberg had two years less experience in 2010, Mr. Barsky's rate would be expected to increase significantly for 2010. With three additional years of experience, Mr. Steinberg's 2010 rate is approximately $100

10

higher than the 2009 rate for Mr. McRae.  It would be reasonable to anticipate that Mr. McRae's rate would also increase significantly for 2010, reducing the differential between his rate and Mr. Steinberg's.

24.    In 2011, Skadden, Arps, Slate, Meagher & Flom LLP, was awarded attorney fees in the *Mattel v. MGA Entertainment*, 2011 U.S. Dist. LEXIS 85998 (C.D. Cal. 2011), cv-04-9049 DOC (C.D. Cal.).  The motion sought fees at the rate of $1,030 an hour for Jason Russell, a 1993 law.  I obtained the year of graduation for Mr. Russell by reviewing his profile on the firm's website.  Attached at Exhibit 19 is a "Time Summary" identified as Exhibit 50 to Document 10684, setting out the rates for the Skadden counsel.  With seven years more experience, Mr. Steinberg's requested 2011 rate is well below the rate for the 1993 Skadden partner.  In the same case, Orrick requested fees for a number of attorneys.  Attached at Exhibit 20 is a list of the attorneys seeking fees at Orrick.  Orrick partner Joshua Rosenkranz is listed with a 2011 rate of $985 an hour. Exhibit 20, p. 4.   According to what I observed on the firm's website, he is a 1986 law graduate, the same year as Mr. Steinberg. Mr. Rosenkranz's 2011 customary billing rate is comparable to Mr. Steinberg's rate.

25.    As further support for the rates sought by Mr. Steinberg, I have attached at Exhibit 21 an order from the United States Bankruptcy Court for Nevada, approving 2012 compensation rates for attorneys at Milbank Tweed. *Circus and Eldorado Joint Venture*, BK-12-51156 (D.Nev. BK 2012).  The 2012 standard billing rates for Milbank Tweed set out in the order were $825 to $1,140 for partners.  Mr. Steinberg's 2012 requested rate of $1,000 an hour is well within the partner range of compensation approved for Milbank Tweed attorneys.

26.    Attached at Exhibit 23 is the Declaration of Hannah Cannom of Milbank, Tweed, Hadley & McCloy LLP filed in *Los Angeles Unified School District v. Garcia*, Ninth Circuit Case No. 10-55879, cv09-9289 VBF (C.D.

11

Cal.).  Milbank was pro bono counsel with the Disability Rights Legal Center ("DRLC").  Ms. Cannom attested that she was a 2006 law graduate with a 2014 billing rate of  $800 an hour.  Exhibit 23, ¶ 6.  She also attested that the 2014 customary rate for the partner at Milbank Tweed who worked on the case, Daniel Perry, a 1999 law graduate, was $1,135 an hour.  With 14 years less experience, Mr. Perry's 2014 rate was higher than Mr. Steinberg's rate for 2010 through 2015.

**JUDY LONDON - 1990**

27.    Ms. London seeks rates ranging from $600 an hour in 2010 to $775 an hour in 2015.  She graduated from law school 25 years ago.  In 2010, Melissa Kasnitz, an attorney at DRA identified as a 1992 law graduate, was awarded fees at the rate of $650 an hour.  Exhibit 9, p. 11.  This rate is almost 10 percent above the 2010 rate sought by Ms. London.  In the same decision, the Court approved fees to Julie Nepveu, an attorney with the AARP Foundation Litigation office, at $660 an hour for 2010.  I*d*.  Ms. Nepveu is identified in the order as a 1991 law graduate.  *Id.*  Ms. London seeks a rate of $630 an hour for 2011, well below the 2010 approved rates for Melissa Kasnitz and Julie Nepveu. It is only slightly above the rate of $600 an hour approved for ACLU attorney Hector Villagra, a 1994 law graduate, in 2011 in *Vasquez*.  Exhibit 18, p. 3.  Ms. London's requested rate is more than 25 percent below the 2011 rate of $820 an hour for Orrick partner Annette Hurst, who is listed on the firm's website as a 1990 law graduate.  Ms. Hurst's rate was applied in the *Mattel* litigation. Exhibit 20.

28.    Ms. London seeks a rate of $680 an hour for 2012.  In 2013, Judge Marshall approved the 2012 rate of $700 an hour for Michelle Uzeta, identified in the decision as a 1992 law graduate. Exhibit 10, pp. 6-7.  In 2012, Judge Wright approved fees for Glen Jonas and Christopher Driscoll, 1993 law graduates, at $650 an hour in a police misconduct case.  *See* Exhibit 24, p. 5.

12

While Ms. London's requested rate is $30 higher than the rate approved by Judge Wright, she has three more years of experience than either Mr. Jonas or Mr. Driscoll according to the information available on their firm website and the State Bar.  I reviewed both sources and also downloaded the supporting fee declarations in *Dirks* to form the opinion that Mssrs. Jonas and Driscoll are 1993 law graduates.

29.    The 2013 rate of $700 an hour, the 2014 rate of $730 an hour and the 2015 rate of $750 an hour requested for Ms. London are all below the rates approved for civil rights attorneys with less experience than Ms. London.  For example, in *Hernandez v. Goliath, Inc.*, LASC Case No. BC 462953, the Court approved fees at the 2013 rate of $695 an hour for Emily Rich of Weinberg, Roger & Rosenfeld, just $5 more than is requested as the 2013 rate for Ms. London.  Exhibit 15, p. 5.  Based on reviewing her profile on the firm's website, I have formed the opinion that Ms. Rich is a 1993 law graduate.

30.    Additional evidence of the reasonableness of the rates sought for Ms. London is provided in the order by Judge Otero in *Avila v. Los Angeles Police Department*, 11-cv-01326 SJO (C.D. Cal. Aug. 5, 2012), awarding fees at the 2012 hourly rate of $700 an hour to Matthew McNicholas, a 1997 law graduate.  *See* Exhibit 25, p. 5.  The next year, in a declaration filed in *Simplis v. Culver City Police Dept.,* cv 10-09497 MWF (C.D. Cal. 2013) [Dkt.# 257-1], Mr. McNicholas attested that his 2013 rate was $750 an hour. Exhibit 26, ¶ 16. Based on my review of the PACER docket, I understand that the *Simplis* case settled. Ms. London has seven years more experience than Mr. McNicholas. Her requested rates are also reasonable when measured against the rates previously approved for Peter Eliasberg, a 1994 law graduate at the ACLU, was awarded fees in post-appeal proceedings in *Vasquez* in 2014 at the rate of $730 an hour, the same rate Ms. London seeks for 2014.  Exhibit 27; Exhibit 28, p. 7.

31.    As a point of comparison with commercial rates in similarly

13

1  complex litigation in the Central District, attached at Exhibit 23 is the 2014 fee

2  declaration filed by Hannah Cannom, then an associate at Milbank Tweed &

3  Hadley and pro bono co-counsel in the *Garcia* case with attorneys from the

4  Disability Rights Legal Center. Ms. Cannom attested to the fact that she was

5  then an eighth-year associate and that her 2014 rate was $800 an hour. Exhibit

6  23, ¶¶ 2,6.  The senior Milbank attorney on the case, a 1997 law graduate, was

7  billed at $1,135 an hour, more than 50 percent above the rate now sought for Ms.

8  London with nearly a decade more experience. *Id.* at ¶ 7.   Other Milbank

9  attorneys for whom fees were sought in the case included a 2002 graduate with

10  12 years' experience billed at $900 an hour in 2014 and a 2008 graduate billed at

11  the 2014 rate of $760 an hour.  *Id.* at ¶¶ 8,10.

12  ### MATT ADAMS 1998 and AHILAN ARULANANTHAM 1999

13  32.   I have discussed Matt Adams and Ahilan Arulanantham in the same

14  section because there is only one year difference in their experience.   In

15  addition, there are very few civil rights attorneys in Los Angeles who are 1998

16  law graduates. Matt Adams seeks a market rate of $710 for 2015, $680 for 2014,

17  $650 for 2013, $620 for 2012, $580 for 2011 and $550 for 2010.   Ahilan

18  Arulanantham seeks a market rate of $690 for 2015, $670 for 2014, $640 for

19  2013, $600 for 2012, $550 for 2011 and $525 for 2010.  Mr. Arulanantham was

20  awarded fees at the rate of $550 an*, hour in 2011 in *Islamic Shura Council of

21  Southern Counsel v. Federal Bureau of Investigation,* 2011 U.S. Dist. LEXIS

22  143832, SACV 07-1088 CJC (C.D. Cal. Dec. 14, 2011), *rev'd on other grounds*,

23  725 F.3d 1012 (9th Cir. 2013).  I understand that the sanctions upon which the

24  fee award was based were later overturned for reasons unrelated to the nature or

25  amount of the fee award.

26  33.   In 2012, Judge Otero approved $700 an hour for Matthew

27  McNicholas, a 1997 law graduate, in *Avila v. Los Angeles Police Department,*

28  11-cv-01326 SJO (C.D. Cal. Aug. 2, 2012), an employment/First Amendment

14

retaliation case against the Los Angeles Police Department. Exhibit 25, p. 4. I am familiar with the McNicholas law firm. In the past, Patrick McNicholas and I had similar cases on behalf of female officers with the Los Angeles Police Department subjected to sex discrimination. McNicholas and McNicholas is a small civil rights firm, primarily engaged in employment and civil rights litigation. Based on reviewing the docket and speaking to Mr. Galipo's associate, it is my understanding that the fees and damages were resolved by a settlement. This rate of $700 an hour is considerably above the 2012 rates of $620 and $600 an hour requested for Mssrs. Adams and Arulanantham, respectively. In *Communities Actively Living*, the Court approved the 2012 rate of $665 an hour for Shawna Parks, identified in the order as a 1999 law graduate. Exhibit 10, pp. 6,7.

34. In *Simplis v. Culver City Police Department*, 10-cv-09497 MWF, a wrongful death case. I filed a fee declaration for attorney Dale Galipo, who represented a co-plaintiff in *Simplis*. *Simplis* The *Simplis* attorneys sought $750 an hour for Matthew McNicholas, a 1997 graduate and the same attorney who was awarded fees in 2012 in *Avila*. Mr. McNicholas' declaration in *Simplis* is attached at Exhibit 26. In *Avila*, Judge Otero rejected the defense assertion that McNicholas should only receive $650 an hour and approved the 2012 rate of $700 an hour based on the Court's conclusion that rates increase as attorneys gain more skills. *See* Exhibit 25, pp. 3-4. Mr. Adams is practicing two years longer than Mr. McNicholas was when he was awarded fees in *Avila*. His requested 2015 rate is only $10 above the rate approved for Mr. McNicholas in 2012. Mr. Arulanantham has now been practicing for 15 years, the same length of time that Matthew McNicholas was when he was awarded fees in 2012 at $700 an hour in *Avila*. Mr. Arulanantham's requested 2015 rate is $10 below the rate approved for Matthew McNicholas in 2012 in *Avila*.

35. In his declaration filed in the *Garcia* case, Laurence Paradis attested

that the 2013 rate for a 1998 law graduate at DRA was $655 an hour. *See* Exhibit 11, Ex. A. For 2012, the rate for the same attorney was $645 an hour. Exhibit 11, Ex. B. Mr. Paradis also attested that the 2013 rate for Shawna Parks, a 1999 law graduate like Mr. Arulanantham, was $675 an hour. Exhibit 11, Ex. A. The requested 2012 rates of $600 and $620, as well as the 2013 rates of $640 and $650 for Mr. Arulanantham and Mr. Adams, respectively, are below the comparable year rates for attorneys practicing the same length of time at DRA. Exhibit 11. In 2014, the Court awarded fees at the rate of $640 an hour to Mr. Arulanantham's colleague at the ACLU, Peter Bibring, a 2002 law graduate with 12 years of experience in 2014. *See* Exhibit 27; Exhibit, 28 at ¶ 16. With three additional years of experience, Mr. Arulanantham requests a 2014 rate only $30 an hour higher than the rate approved for Peter Bibring. This rate is also only $10 above the $600 an hour approved by Judge Marshall for Kevin LaHue, a 2004 law graduate, in *Rodriguez.* Exhibit 16, p. 14.

36. As a point of comparison to comparable attorneys in large firms, I have submitted a declaration filed in the Eastern Division in *Jones v. Upland Housing Authority*, EDCV 12-2074 VAP (C.D. Cal. Feb. 24, 2014), by Amy Lally, a partner at Sidley Austin in Los Angeles serving as co-counsel with public interest lawyers. Exhibit 22. Ms. Lally attested that she is a 1998 law graduate and that her 2012 customary billing rate was $700 an hour and her 2014 rate was $825 an hour, an increase of almost 20 percent in just two years. Ms. Lally's 2014 rate is more than 20 percent higher than Mr. Adams' requested rate of $680 and Mr. Arulanantham's rate of $670.

**2015 RATES FOR SULLIVAN & CROMWELL ASSOCIATES**

37. Sullivan & Cromwell is seeking compensation for 2007, 2008 and 2009 law graduates at the 2015 rate of $865 an hour. These rates are supported by the declaration of Michael Steinberg and the various orders and awards identified in, and submitted with, his declaration. In addition to the evidence

16

submitted by Mr. Steinberg, additional support for these market rates is found in the rates for Milbank Tweed. Milbank attorney Hannah Cannom attested that her billing rate for 2014 was $800 an hour with eight years of experience. Exhibit 23, ¶¶ 2,6. This rate is comparable to the $865 requested for the Sullivan 2007 associates. It represents approximately a 7.5 percent increase for an additional year of experience and an increase in base rates.

38.     Similarly, the rates for sixth-year associates are comparable. Milbank Tweed's 2014 billing rate for an associate with six years of experience was $760 an hour. Sullivan now requests $800 an hour, which is little more than a five percent increase from 2014. The rate requested for the 2010 law graduate is also reasonable when compared to the Milbank 2014 rates. Last year, Milbank billed an associate with six years of experience at $760 an hour. With one year less experience, but allowing for a rise in base rates for all associates, the Sullivan rate is $10 below the 2014 Milbank rate for an associate with one year less experience. Sullivan also seeks fees at a 2015 market rate of $370 an hour for a 2014 law graduate. In 2009, Gibson Dunn billed an attorney with the same experience at $345 an hour. Exhibit 17, p. 15. The $25 differential in these rates over six years is little more than a $4 a year increase. As demonstrated by the various fee awards submitted with my declaration, this is far below the actual increases in rates over the past six years.

**2015 RATE FOR 2001 GRADUATE**

39.     The requested 2015 rate for Victoria Lopez, a 2001 law graduate, of $640 an hour is also consistent with the rates approved for civil rights attorneys. For example, in 2014, Peter Bibring, a 2002 law graduate and a staff attorney at the ACLU of Southern California, was awarded fees at $640 an hour by the Hon. Valerie Baker Fairbank in *Vasquez*. Exhibits 27 and 28. With two additional years of experience, Ms. Lopez seeks the same rate for 2015 that was approved for Mr. Bibring last year. Ms. Lopez's requested rate is comparable to the 2013

17

rate of $585 an hour approved for Laboni Hoq. *See* Exhibit 15, p. 5. Both are 2001 law graduates; however, Ms. Lopez has two additional years of experience at this point. The $55 difference in their rates represents an increase of approximately 4.55 annually, including both an adjustment of base rates an step increases.

**2015 RATE FOR 2007 GRADUATES**

40. Three attorneys graduated in 2007. They seek fees at the 2015 rate of $535 an hour. They are now practicing eight years. In *Rodriguez*, Judge Marshall approved the 2014 rate of $600 an hour for Kevin LaHue, identified as a 2006 law graduate. Exhibit 16, p. 14. In *Communities Actively Living,* Judge Marshall approved the 2012 rate of $555 an hour for Mary-Lee Smith, a seventh-year attorney. Exhibit 10, p. 6. In the same decision, the Court approved $525 an hour as the 2012 rate for Matthew Strugar, then an eighth-year attorney. I am very familiar with Sean Riordan, who was an attorney with the ACLU of San Diego and Inland Counties until recently. I am also very familiar with Matthew Strugar, as previously stated, as he was my law clerk and is now my co-counsel. Their skills are comparable as attorneys practicing eight years. The $10 difference in their rates is insignificant in view of the three year time difference since the rates approved for *Communities Actively Living*.

**2015 RATE FOR 2008 GRADUATE**

41. The 2008 graduate, Marisol Orihuela, is now practicing seven years. She seeks a rate of $510 an hour. In 2012, Judge Marshall approved the rate of $555 an hour for Mary-Lee Smith of Disability Rights Advocates, then practicing the same length of time. Exhibit 10, p. 6. That same year, Judge Carter approved the rate of $460 an hour for David Sarnoff, then an associate at Schonbrun DeSimone. Exhibit 14, p. 8. Ms. Orihuela's proposed rate is at the mid-point of what district court's awarded to civil rights lawyers with seven years experience three years ago.

18

**2015 RATE FOR 2009 GRADUATES**

42.   The 2009 graduates are now practicing six years. They seek a 2015 rate of $490 an hour. In *Communities Actively Living*, the Court approved the 2012 rates of $430-450 an hour for attorneys then practicing five years.  Exhibit 10, pp. 6-7.  In *Rodriguez*, Judge Marshall approved the 2014 rate of $500 an hour for Caitlin Weisberg, identified as a 2008 law graduate.  Exhibit 16, p. 14. Laurence Paradis attested that the rate for a sixth-year attorney at DRA in 2013 was $455.  Exhibit 11.  The increase of $35 over two years represents an annual increase of approximately 3.5 percent.

**2015 RATE FOR 2010 GRADUATES**

43.   The 2010 graduates are now practicing five years. They seek a 2015 rate of $475 an hour.   As noted in the preceding section, in *Communities Actively Living*, Judge Marshall approved rates of $430 to $450 an hour for civil rights attorneys practicing five years at the time.  Exhibit 10, pp. 6,7.  The increase of the base rate over three years is a modest 1.5 to 3.3 percent annual increase.  In 2010, DRA attorney Mary Lee Kimber was awarded fees at the same rate of $475 an hour when she was practicing five years.  Exhibit 9, p. 11.

**2015 RATE FOR 2011 GRADUATES**

44.   The 2011 graduates are now practicing four years. They seek a 2015 market rate of $450 an hour.  In *Charlebois*, Judge Carter awarded fees to Schonbrun DeSimone associate Amanda Canning, a 2006 graduate, at the 2010 rate of $450 an hour.  Exhibit 14, p. 10.  The rate of $450 an hour is the same as the 2012 rate approved for a fifth-year attorney in *Communities Actively Living*. Exhibit 10, pp. 6,7.  This rate is the same rate approved by Judge Otero in *Avila* for Alyssa Shabloski, a 2008 law graduate with the McNicholas law firm in *Avila*.  Exhibit 25, p. 4.  At the time of this award in 2012, Ms. Shabloski had only four years of experience.

**2015 RATE FOR 2014 GRADUATE**

19

45. Plaintiffs are seeking fees at $340 an hour for the 2014 graduate. The 2013 rate for a second-year attorney at DRA was $295 an hour. Exhibit 11, Ex. A. The Court approved the 2012 rate of $330 an hour for Kara Janssen, identified as a 2010 graduate. Exhibit 10, p. 7. Also in 2012, the Court approved the rate of $325 an hour for Menaka Fernando, listed as a 2010 graduate. Exhibit 14, p. 8.

**PARALEGALS AND LAW STUDENTS:**

46. Plaintiffs also seek compensation for paralegals with varying degrees of experience. As the exhibits attached to my declaration demonstrate, it is the practice in Los Angeles to bill the time of paralegals. The rates recently approved for paralegals in civil rights cases range from $150 an hour for a certificated, but relatively new paralegal, to $260 an hour for a highly experienced paralegal. In *Hickman,* the Court approved the 2011 paralegal billling rate of $200 an hour at the firm of Traber & Voorhees. Exhibit 13, ¶ 12. In 2011 in *Vasquez*, Judge Baker approved compensation for paralegals at the ACLU at rates ranging from $165 an hour to $200 an hour. Exibit 18, p. 3. In *Charlebois*, Judge Carter approved compensation for paralegals at Schonbrun DeSimone at a 2012 rate of $150 an hour. Exhibit 14, p. 8. The 2012 rates approved for paralegals in *Communities Actively Living* ranged from $230 to $240 an hour. Exhibit 10, p. 7. In *Hernandez*, the Court approved fees to Traber & Voorhees at $200 to $250 an hour for time incurred by paralegals. Exhibit 15, p. 5. In 2014 in *Rodriguez*, the Court approved paralegal rates of $175 to $295 an hour at the Kaye, McLane, Bednarski & Litt firm. Exhibit 16, p. 14.[1]

47. In *Charlebois*, the Court approved $200 an hour for law students at

---

[1] Michael Steinberg's Declaration and Exhibits provide support for the rates of Sullivan & Cromwell LLP support staff.

20

Schonbrun DeSimone.  Exhibit 14, p. 8.  In *Jones v. City of Los Angeles*, Judge Real approved fees for law clerks at $200 an hour for 2008.  Exhibit 4, p. 4.  The rate approved for DRA summer law clerks in *Communities Actively Living* was $250 an hour.  Exhibit 10, p.7.  In *Hernandez*, the Court approved fees for law clerks at Traber & Voorhees at $225 an hour for 2013.  Exhibit 15, p. 5, ¶ 9.

48.     Based on all of the decisions and declarations identified above, I am of the opinion that the rates sought by this motion are well within the range of reasonable market rates for attorneys of comparable skill, experience and reputation engaged in similarly complex litigation in the Central District.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 31st day of July, 2015, at Los Angeles, California.

CAROL A. SOBEL

21

Sobel Exhibit 3

166

1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10
11

XUE LU, JIE HAO,

Case No.: 01-01758-CBM (Ex)

12

Plaintiffs,

13

vs.

**ORDER RE: ATTORNEYS' FEES**

14

UNITED STATES OF AMERICA,

15

Defendant.

16
        The matters before the Court are:  (1) the parties' briefs regarding attorneys'

17
fees following the Ninth Circuit's remand (Dkt. Nos. 335, 336, 341, 342); and (2)

18
Plaintiffs' Motion For Award of Reasonable Attorneys' Fees on Appeal (the

19
"Motion") (Dkt. No. 338).

20
### I.    FACTUAL AND PROCEDURAL HISTORY

21
        Plaintiffs Xue Lu ("Lu") and Jie Hao ("Hao") filed suit in 2001 against the

22
United States of America (the "Government") and individual federal officers.

23
Plaintiffs, who are Chinese asylum seekers, alleged that Thomas Powell, a former

24
asylum officer, requested money and sexual favors from them as a requisite to

25
granting their respective asylum applications.

26
        Following a bench trial, the Court issued Findings of Fact and Conclusions

27
of Law in favor of Plaintiffs.  (Dkt. No. 278.)  Judgment was entered against the

28
Government and in favor of Plaintiffs Lu and Hao on both Plaintiffs' claims under

1

the Federal Torts Claim Act ("FTCA"), and $500,000 in damages was awarded to Lu, and $700,000 in damages was awarded to Hao. (Dkt. No. 279.)

The Court also awarded $881,675.75 in attorneys' fees to Plaintiffs. (Dkt. No. 318, the "Fee Order".) The Court held that Plaintiffs' counsel were entitled to reasonable market rates for the period commencing June 8, 2008 under the Equal Access to Justice Act ("EAJA") based on the following four findings of bad faith: (1) the Government's failure to come to Hao's aid after Powell touched her buttock despite promising to protect Hao if Powell touched her, was bad faith; (2) the Government's defense and arguments regarding Plaintiff Hao's consent/assumption of risk constituted bad faith; (3) the Government's seven-year delay in Plaintiff Hao's asylum case—which lasted from the beginning of the litigation until 2007 and prevented Hao from reuniting with her family— constituted bad faith because Defendant could have adjudicated the asylum case while waiting for Hao to testify at Powell's criminal trial; and (4) the Government's continued argument that Plaintiffs' claims are barred by the intentional tort exception under the FTCA—which the Government raised even after the Ninth Circuit held otherwise in *Lu v. Powell*, 621 F.3d 944, 950 (9th Cir. 2010)—constituted bad faith. (Fee Order at 5-8.) Based on these four findings of bad faith, the Court found, under a totality of circumstances, that from June 8, 2000 forward—when Plaintiff Hao completed the sting operation with Department of Justice officials—the Government's bad faith affected all of the "various phases of litigation," including the Government's pre-litigation conduct and conduct during the litigation. (Fee Order at 5:16-20; 7:21-8:1.)

The Government appealed the judgment entered against it and the Fee Order. On January 27, 2016, the Ninth Circuit affirmed this Court's damages award, but vacated and remanded the fee award for reconsideration of the amount. *Lu v. U.S.*, 638 F. App'x 614 (9th Cir. 2016). The Ninth Circuit found the Court's finding that the Government argued in bad faith that the intentional tort exception

2

barred Plaintiffs' claims in spite of the Ninth Circuit's decision in the first appeal[1]
was "without support in the record." *Id.* at 618.[2]  In light of its reversal of one of
the Court's specific findings of bad faith, the Ninth Circuit vacated and remanded
the fee award to allow the Court "to decide what, if any, changes should be made
to the award of fees incurred after June 8, 2000." *Id.* at 619.[3]

## II.   STATEMENT OF THE LAW

28 U.S.C. § 2412(b) of the Equal Access To Justice Act ("EAJA") provides
that "a court may award reasonable fees and expenses of attorneys . . . to the
prevailing party in any civil action brought by or against the United States or any
agency . . . of the United States . . ..  The United States shall be liable for such fees
and expenses to the same extent that any other party would be liable under the
common law . . .."  The "liable under the common law provision has been used to
allow awards of attorney fees at market rates in cases involving bad faith by the
United States or an agency of the United States." *Brown v. Sullivan*, 916 F.2d
492, 495 (9th Cir. 1990) (internal quotations omitted).  "The district court may
award attorney fees at market rates for the entire course of litigation, including

---

[1] In the first appeal of this matter, the Ninth Circuit held that although the
Government "is immune from liability for an assault or battery by its employee,
. . .  [t]he emotional distress suffered as a result of the demand for sexual favors is
an injury distinct from assault or battery." *Lu v. Powell*, 621 F.3d 944, 950 (9th
Cir. 2010).  In the second appeal, the Ninth Circuit concluded that "[w]henever the
government presented an intentional tort exception-based theory, it provided a
non-frivolous way to reconcile the argument with our previous decision," and that
"it was proper for the government to use the intentional tort exception to counter
Plaintiffs' claim that they could recover for the totality of Powell's conduct
because his battery had been part and parcel of a 'viable' tort." *Lu v. U.S.*, 639 F.
App'x at 618.

[2] The Ninth Circuit also found that the Court's finding that the last two years of
delay between Plaintiff Hao receiving a fair asylum interview and being granted
asylum was in bad faith was clear error because the delay occurred in the ordinary
course of processing Hao's claim once it resumed in 2005. *Lu v. U.S.*, 638 F.
App'x at 619.

[3] The Ninth Circuit also vacated an award of $4,113 in fees for work prior to June
8, 2000, reasoning the Court awarded those fees pursuant to 28 U.S.C. §
2412(d)(2)(A), which does not apply to tort actions. *Lu v. U.S.*, 638 F. App'x at
619 n.3 (citing 28 U.S.C. § 2412(d)(1)(A)).  Accordingly, the Court does not
award any fees for work performed prior to June 8, 2000.

3

time spent preparing, defending, and appealing . . . awards of attorneys' fees, if it finds that the fees incurred during various phases of litigation are ***in some way traceable*** to the [defendant's] bad faith." *Id.* at 497 (emphasis added). *See also Rodriguez v. U.S.*, 542 F.3d 704, 713 (9th Cir. 2008). Accordingly, the Court must determine the fees expended which are traceable to the three findings of bad faith affirmed by the Ninth Circuit.[4]

## III. DISCUSSION

### A. Fees For Underlying Action

The parties disagree as to whether any modification of this Court's original $881,675.75 fee award is warranted on remand.[5]

The evidence submitted by Plaintiffs demonstrates $676,751.00 in fees expended in the underlying action is traceable to one or more of the three findings of bad faith by the Government, as set forth in Table 1. (*See* DeSimone Decl., Exs. A-J.)[6] The amount of traceable fees attributable to each attorney and staff member is calculated in Tables A through I.[7]

---

[4] 28 U.S.C. § 2412(d), and *Commission, I.N.S. v. Jean*, 496 U.S. 154 (1990), which held that a single finding that the government's position lacked substantial justification under § 2412(d) operates as a one-time threshold for fee eligibility, are inapplicable here because this is a case "sounding in tort." *See* 28 U.S.C. § 2412(d)(1)(A); *Lu v. U.S.*, 638 F. App'x at 619 n.3.

[5] The parties do not dispute that Plaintiffs are prevailing parties in the underlying action for purposes of § 2412(b).

[6] The Court also finds the evidence demonstrates these fees were reasonably expended.

[7] The Ninth Circuit remanded the case so that the Court "may consider what, if any, modification of the fee award is appropriate in light of this opinion." *Lu v. U.S.*, 638 F. App'x at 618. The Circuit's opinion did not address Powell's prelitigation conduct since this Court made no finding as to such conduct for purposes of finding bad faith under § 2412(b). Accordingly, Powell's pre-litigation conduct is irrelevant for purposes of determining fees. *See Firth v. U.S.*, 554 F.2d 990, 993 (9th Cir. 1977) ("When a case has been decided by an appellate court and remanded, the court to which it has been remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court."); *Hongesmeier v. C.I.R.*, 621 F.3d 890, 899 (9th Cir. 2010) ("A trial court is prohibited from giving relief beyond the scope of an appellate mandate.").

4

**Table 1:**

| Attorney or Staff | Fees |
|---|---|
| James DeSimone | **$410,986.00** |
| Michael Seplow | **$15,582.00** |
| Meneka Fernando | **$161,816.00** |
| Courtney Abrams | **$10,472.50** |
| Douglas Ingraham | **$4,031.50** |
| Fatemeh Mashouf | **$8,100.00** |
| Kunti Dudakia | **$5,579.00** |
| Emma Huang | **$20,079.50** |
| Bill Clifton | **$4,252.50** |
| Do Kim | **$35,852.00** |
| **TOTAL** | **$676,751.00** |

**Table A:**

| James DeSimone | Hourly Rate | Hours | Total |
|---|---|---|---|
| 2013 | $725.00 | 134.7 | $97,657.50 |
| 2012 | $695.00 | 64.8 | $45,036.00 |
| 2011 | $675.00 | 44.4 | $29,970.00 |
| 2010 | $650.00 | 68.1 | $44,265.00 |
| 2009 | $625.00 | 103.9 | $64,937.50 |
| 2008 | $600.00 | 7.4 | $4,440.00 |
| 2007 | $585.00 | 16.7 | $9,769.50 |
| 2006 | $575.00 | 3.7 | $2,127.50 |
| 2005 | $550.00 | 87.4 | $48,070.00 |
| 2004 | $470.00 | 4.4 | $2,068.00 |
| 2002 | $385.00 | 77.8 | $29,953.00 |
| 2001 | $360.00 | 88.4 | $31,824.00 |
| 2000 | $310.00 | 2.8 | $868.00 |
| **TOTAL** | | **704.5** | **$410,986.00** |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

5

**Table B:**

| Michael Seplow | Hourly Rate | Hours | Total |
|---|---|---|---|
| 2012 | $630.00 | 0.4 | $252.00 |
| 2011 | $610.00 | 0.3 | $183.00 |
| 2010 | $590.00 | 1.7 | $1,003.00 |
| 2009 | $575.00 | 21.5 | $12,362.50 |
| 2005 | $440.00 | 0.6 | $264.00 |
| 2004 | $400.00 | 0.7 | $280.00 |
| 2002 | $325.00 | 1.5 | $487.50 |
| 2001 | $300.00 | 2.5 | $750.00 |
| **TOTAL** | | **29.2** | **$15,582.00** |

**Table C:**

| Meneka Fernando | Hourly Rate | Hours | Total |
|---|---|---|---|
| 2013 | $375.00 | 244.57 | $91,713.75 |
| 2012 | $325.00 | 172.13 | $55,942.25 |
| 2011 | $300.00 | 47.2 | $14,160.00 |
| **TOTAL** | | **463.9** | **$161,816.00** |

**Table D:**

| Courtney Abrams | Hourly Rate | Hours | Total |
|---|---|---|---|
| 2011 | $295.00[8] | 35.5 | $10,472.50 |
| **TOTAL** | | **35.5** | **$10,472.50** |

**Table E:**

| Douglas Ingraham | Hourly Rate | Hours | Total |
|---|---|---|---|
| 2011 | $515.00 | 2.9 | $1,493.50 |
| 2001 | $200.00 | 6.4 | $1,280.00 |
| 2000 | $170.00 | 7.4[9] | $1,258.00 |
| **TOTAL** | | **16.7** | **$4,031.50** |

/ / /

_____

[8] The Court previously awarded fees for work performed by Abrams, Dudakia, Mashouf, Clifton, and Huang based on the "$125 per hour rate authorized by EAJA." (Fee Order at 9.) The $125 per hour statutory rate set forth in 28 U.S.C. § 2412(d)(2)(A)(ii), however, is inapplicable here because this is a case "sounding in tort." 28 U.S.C. § 2412(d); *Lu v. U.S.*, 638 F. App'x at 619 n.3. Accordingly, the Court awards fees based on the market rate for Abrams, Dudakia, Mashouf, Clifton, and Huang.

[9] The Court does not award fees for 4.2 hours of time expended by Ingraham prior to June 8, 2000. (*See* DeSimone Decl. Ex. E.)

6

**Table F:**

| Fatemeh Mashouf | Hourly Rate | Hours | Total |
|---|---|---|---|
| 2012 | $300.00 | 27.0 | $8,100.00 |
| **TOTAL** | | **27.0** | **$8,100.00** |

**Table G:**

| Kunti Dudakia | Hourly Rate | Hours | Total |
|---|---|---|---|
| 2013 | $350.00 | 15.94 | $5,579.00 |
| **TOTAL** | | **15.94** | **$5,579.00** |

**Table H:**

| Emma Huang | Hourly Rate | Hours | Total |
|---|---|---|---|
| 2013 | $175.00 | 64.91 | $11,359.25 |
| 2012 | $175.00 | 49.83 | $8,720.25 |
| **TOTAL** | | **114.74** | **$20,079.50** |

**Table I:**

| Bill Clifton | Hourly Rate | Hours | Total |
|---|---|---|---|
| 2013 | $175.00 | 2.7 | $472.50 |
| 2012 | $175.00 | 5.8 | $1,015.00 |
| 2011 | $175.00 | 9.8 | $1,715.00 |
| 2010 | $175.00 | 6.0 | $1,050.00 |
| **TOTAL** | | **24.3** | **$4,252.50** |

**Table J:**

| Do Kim | Hourly Rate | Hours | Total |
|---|---|---|---|
| 2008 | $390.00 | 14.9 | $5,811.00 |
| 2005 | $290.00 | 99.4 | $28,826.00 |
| 2004 | $270.00 | 4.5 | $1,215.00 |
| **TOTAL** | | **118.8** | **$35,852.00** |

**B.  Fees on Appeal and Post Remand**

Plaintiffs' Motion also seeks an award of attorneys' fees expended on appeal and post remand.[10]

---

[10] The Court finds Plaintiffs are the prevailing parties on appeal. *See Lu v. U.S.*, 638 F. App'x at 619 (affirming the award of damages to Plaintiffs and awarding costs on appeal to Plaintiffs).

7

### 1. Timeliness

The parties disagree as to whether Plaintiffs' Motion for fees on appeal is timely. The Ninth Circuit issued a Mandate stating "[t]he judgment of this Court, entered on January 27, 2016, takes effect this date." (Dkt. No. 332.) Based on applicable rules, Plaintiffs' deadline to file the Appeal Fees Motion was May 10, 2016. *See* Ninth Circuit Rule 39-1.6; Supreme Court Rule 13; 28 U.S.C. § 2101(c); *Arulampalam v. Gonzales*, 399 F.3d 1087, 1090-91 (9th Cir. 2005). Since Plaintiffs filed the Appeal Fees Motion on May 26, 2016, the motion was untimely.

Having found the motion was untimely, the Court must determine whether there is good cause to extend the time to file the Appeal Fees Motion based on excusable neglect. Fed. R. Civ. P. 6(b). The Supreme Court has held that determining whether there is excusable neglect is an "equitable" determination, which takes into account "all relevant circumstances surrounding the party's omission," including: (1) prejudice to the other party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 395 (1993).

Applying the four *Pioneer* factors, the Court finds: (1) there is no evidence of prejudice to the Government; (2) the delay (i.e., 16 days) was not lengthy and did not impact judicial proceedings; (3) the reason for the delay was Plaintiffs' counsel's misinterpretation of the law; and (4) there is no evidence of bad faith. Accordingly, the Court finds, on balance, Plaintiffs' delay in filing the Appeal Fees Motion was a result of excusable neglect. *See Pincay v. Andrews*, 389 F.3d 853, 855-60 (9th Cir. 2004) (en banc) (district court did not abuse its discretion in granting the defendant's motion for an extension of time to file a notice of appeal where there was no prejudice, the length of delay was small, the reason

1    { "pageset": "S9f for the delay was carelessness based on the attorney's reliance on a

2    paralegal's misreading of a rule, and there was no evidence of bad faith).

3           **2.**      **Fees Traceable To the Government's Bad Faith**

4         "The district court may award attorney fees at market rates for the entire

5    course of litigation, including time spent ***preparing, defending, and appealing the***

6    ***two awards of attorney fees***, if it finds that the fees incurred during the various

7    phases of litigation are in some way traceable to the Secretary's bad faith."

8    *Brown*, 916 F.2d at 497 (emphasis added) (citing *General Fed'n of Women's*

9    *Clubs v. Iron Gate Inn, Inc.,* 537 A.2d 1123, 1129-30 (D.C. App. 1988)

10    (upholding a trial court's award of attorneys' fees under the bad faith exception to

11    the American Rule, and stating "[t]he law is well established that, when fees are

12    available to the prevailing party, that party may also be awarded fees on fees, i.e.,

13    the reasonable expenses incurred in the recovery of its original costs and fees.").

14         The evidence submitted by Plaintiffs demonstrates $314,651.50 in fees

15    expended on the second appeal and post-remand is traceable to one or more of the

16    three findings of bad faith by the Government.[11]   (*See* DeSimone Decl. Exs. K-Q.)

17    The amount of traceable fees attributable to each attorney and staff member is set

18    forth in Table 2.[12]

19    / / /

20    / / /

21    / / /

22    / / /

23    / / /

24    / / /

25

26    [11] The evidence demonstrates, for example, that the Government continued to pursue its consent defense on appeal, which this Court found to be made in bad

27    faith.

       [12] The Court also finds the evidence demonstrates these fees were reasonably

28    expended.

**Table 2:**

| ATTORNEY | HOURLY RATE[13] | HOURS | FEE AMOUNT |
|---|---|---|---|
| Paul Hoffman | $900 | 27.3 | $24,570.00 |
| Michael D. Seplow | $760 | 84.0 | $63,840.00 |
| Raya Marinova | $420 | 168.7 | $70,854.00 |
| Kai Valenzuela | $200 | 28.6 | $5,720.00 |
| Emma Huang | $200 | 19.0 | $3,800.00 |
| V. James DeSimone | $825 | 175.5 | $144,787.50 |
| Ryan Hall | $300 | 3.6 | $1,080.00 |
| **TOTAL** | | **506.7** | **$314,651.50** |

## IV.  CONCLUSION

The Court **GRANTS** Plaintiffs' Motion For Award of Reasonable Attorneys' Fees on Appeal.

The Court finds $676,751.00 in fees in the underlying action, and $314,651.50 in fees on appeal and post-remand were reasonably expended and traceable to one or more of the three findings of bad faith by the Government. Accordingly, the Court awards $993,758 in attorneys' fees to Plaintiffs.

**IT IS SO ORDERED.**

DATED:  November 10, 2016.

_____
CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE

---

[13] Plaintiffs provide declarations regarding counsel's qualifications and experience, and a declaration from Carol Sobel who declares the requested hourly rates are within the range of current reasonable market rates.  (DeSimone Decl. ¶¶ 2-12; Seplow Decl. ¶¶ 3-12; Sobel Decl. ¶¶ 3-32.)  *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008).   Accordingly, the Court finds the hourly rates set forth in Table 2 are reasonable based on the individual's experience and qualifications, and are consistent with current prevailing market rates in the community.  *See U.S. v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1107-08 (9th Cir. 2015).

Sobel Exhibit 4

1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT
                        CENTRAL DISTRICT OF CALIFORNIA
9

10                                          )
11   HERIBERTO RODRIGUEZ,                    )   CASE NO. 10-6342-CBM (AJWx)
     CAROLOS FLORES, ERICK                   )
12   NUNEZ, JUAN CARLOS                      )
     SANCHEZ and JUAN TRINIDAD               )   ORDER GRANTING PLAINTIFFS'
13                                           )   MOTION FOR ATTORNEY'S FEES
                Plaintiffs,                  )
14                                           )
           vs.                               )
15                                           )
     COUNTY OF LOS ANGELES, et al.           )
16                                           )
                Defendants.                  )
17                                           )
18                                           )
                                             )
19   _____     )

20        Before the Court is Plaintiffs' Corrected Motion for Attorneys' Fees (the

21   "Motion").  (Dkt. No. 668.)  This matter is fully briefed and was taken under

22   submission without oral argument.

23                       I.    JURISDICTION

24        This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331,

25   1343(3), and 1367.

26            II.   FACTUAL AND PROCEDURAL OVERVIEW

27        Heriberto Rodriguez, Eric Nunez, Juan Carlos Sanchez, Juan Trinidad, and

28

                                          1

Carlos Flores (collectively "Plaintiffs") were prisoners at the Men's Central Jail ("MCJ") in Los Angeles, California when they were involved in a violent conflict with prison guards and officials in the jail.  During this conflict, MCJ guards attempted to extract Plaintiffs from their jail cells using excessive force, including using Tazers for extended periods targeting Plaintiffs' sensitive body parts.  The result of this conflict left the Plaintiffs seriously injured.  On August 25, 2010, Plaintiffs brought a civil rights action against numerous Defendants, including the County of Los Angeles ("COLA"), the Los Angeles Sheriff's Department ("LASD"), and individual guards and supervisors.  In their complaint, Plaintiffs alleged that these Defendants violated Plaintiffs' Eighth and Fourteenth Amendment rights under 42 U.S.C. § 1983 ("Civil Rights Act" or "§1983") and Cal. Civ. Code § 52.1 ("Bane Act" or "§52.1").

On November 7, 2013, after four years of litigation and a month-long trial, a jury returned a verdict in favor of each Plaintiff on all causes of action.[1]  The jury found that the Plaintiffs were subjected to force that was intentional and excessive and determined that Defendants' actions gave rise to liability under both §1983 and §52.1.[2]  On February 6, 2014, this Court entered judgment in Plaintiffs' favor consistent with the jury verdict, awarding Plaintiffs $754,000 in compensatory and $210,000 in punitive damages (for a total damage award of $950,000).  Plaintiffs now request reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and Cal. Civ. Code § 52.1(h) for their success in litigating this hotly contested prisoners' civil rights case.

### III.  PROCEDURAL HISTORY OF THE MOTION

While Defendants' post-trial motions were pending, Plaintiffs filed a Motion for Attorney Fees and Costs, supported by numerous declarations and

---

[1] Plaintiffs prevailed on both causes of action against COLA, LASD, and several, but not all, individual defendants.
[2] Four of the Plaintiffs asserted liability under both statutes and prevailed on both the § 1983 and § 52.1 claims. Mr. Rodriguez asserted liability only under § 1983 and prevailed on that claim.

1  exhibits.[3] (*See* Dkt. Nos. 644, 645, 646, 647, 648, 649, 650.) Almost two weeks

2  later, Plaintiffs filed a Corrected Motion for Attorney's Fees and Costs (the

3  "Motion") supported by an additional declaration and exhibits. (*See* Dkt. Nos.

4  668, 669.) Defendants filed a timely Opposition to the Motion, supported by two

5  declarations and several exhibits. (*See* Dkt. Nos. 678, 679, 680.) Plaintiffs

6  applied *ex parte* to include additional pages in their reply brief, and, without

7  permission of the Court, filed a reply exceeding this Court's page limits by 25

8  pages; Plaintiffs also filed several additional declarations. (*See* Dkt. Nos. 684,

9  687, 688, 689, 690.) The Court granted Plaintiffs' ex parte request for additional

10  pages, but limited Plaintiffs to five additional pages for their reply. (Dkt. No.

11  700.) Plaintiffs then filed a reply within this Court's page limits. (Dkt. No. 702.)

12       Without permission of the Court, Defendants filed another opposition to

13  Plaintiffs' Motion, opposing the additional fees requested in Plaintiffs' reply brief.

14  (Dkt. No. 697.) Defendants then filed "Supplemental Authority in Support of

15  Defendants' Opposition to Plaintiffs' Motion for Attorney's Fees and Costs,"

16  which included further argument opposing the Motion. (Dkt. No. 705.) Plaintiffs

17  filed a response to Defendants' "Supplemental Authority" and offered additional

18  arguments supporting Plaintiffs' Motion. (Dkt. No. 706.) A few weeks later,

19  Plaintiffs filed three more documents all containing additional arguments: a

20  "Supplement," an Application for Leave to File Supplemental Briefing, and a

21  declaration with exhibits introducing new (but previously available) evidence.

22  (Dkt. Nos. 708, 709, 710.) Plaintiffs then filed a document labeled a "Notice of

23  Errata" that proffered additional arguments and requested a larger fee. (Dkt. No.

24  712.)

25       The parties' excessive filing of documents related to Plaintiffs' Motion

26  caused delay in the issuance of this order. The Court finds that both parties

27  ───────────────

28  [3] Plaintiffs' brief exceeded this Court's page limitations. Plaintiffs filed a concurrent ex parte application to exceed page limitations. (Dkt. 643.) The Court later granted Plaintiffs' request to exceed page limitations for the Motion. (Dkt. 655.)

violated the local rules by filing documents after briefing was completed without permission of the Court and by filing appendices containing excessive, and improper, legal arguments. *See* L.R. 7-3 ("A party filing any document in support of, or in opposition to, any motion noticed for hearing as above provided after the time for filing the same shall have expired…shall be subject to the sanctions of L.R. 83-7…"); *see also* L. R. 7-7 ("Declarations shall contain only factual, evidentiary matter and shall conform as far as possible to the requirements of Fed. R. Civ. P. 56(c)(4)"; *see also* L.R. 11-6 ("appendices shall not include any matters which properly belong in the body of the memorandum of points and authorities."). For purposes of ruling on this Motion, the Court considers only the legal arguments made in Plaintiffs' Motion, Defendants' Opposition, and Plaintiffs' fifteen-page Reply. (Dkt. Nos. 668, 678, 702.) The Court also considers the timely evidence offered in support thereof. (Dkt. Nos. 645, 646, 647, 648, 649, 650, 669, 679, 680, 688, 689, 690, 692.)

## IV.  LEGAL STANDARD

### A.  Lodestar Analysis

A plaintiff that prevails in civil rights litigation under federal law (§1983) or state law (§52.1) may be entitled to an award of attorney's fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 989 (2010). For a plaintiff that prevails on a §1983 claim, fees may be awarded fees pursuant to 42 U.S.C. § 1988 ("§1988"). Once a plaintiff establishes that it is the "prevailing party," a reasonable fee award is typically based upon the lodestar method: "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Reasonable hours are those hours that "would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in the pursuit of a successful recovery." *Armstrong v. Davis*, 318 F.3d 965, 971 (9th Cir. 2003) (citing *Hasbrouck v. Texaco, Inc.*, 879 F.2d 632, 638 (9th Cir. 1989)). A

"reasonable rate" may be demonstrated by the moving party submitting "satisfactory evidence in addition to the attorney's own affidavit that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley*, 461 U.S. at 435; *see also Ketchum v. Moses*, 24 Cal.4th 1122, 1132 (2001).  Lodestar analysis is generally the same under California law and Federal law.

**B.    PLRA – Fees Awarded under Federal Law Claims**

Congress has adopted special standards and limitations on attorney's fees for prevailing plaintiffs seeking monetary damages authorized by 42 U.S.C. § 1988 when the prevailing plaintiff is a prisoner, as in this case.  *See* Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.  Under the PLRA, attorney's fees can be awarded only if "directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988." 42 U.S.C. §1997e(d)(1)(A). The fee must be "proportionally related to the court ordered relief for the violation" or "directly and reasonably incurred in enforcing the relief ordered." 42 U.S.C. §1997e(d)(1)(B).  Up to 25 percent of any monetary award a prison plaintiff receives pursuant to §1988 must be applied as a part of fee awarded to counsel (the plaintiff's "PLRA contribution").  42 U.S.C. §1997e(d)(2).

As interpreted by the Ninth Circuit, attorney's fees which are subject to the PLRA are capped at 150% of the judgment awarded to prisoner plaintiffs.  *See Woods v. Carey*, 722 F.3d 1177, 1180 (9th Cir. 2013) (holding that prisoner plaintiffs' attorneys fees are capped at 150% of the judgment, but that appellate work is not subject to the PLRA cap); *see also Dannenberg v. Valadez*, 338 F.3d

1070, 1075 (9th Cir. 2003) (holding that prisoner plaintiffs' attorneys fees are capped at 150% of the judgment, but where plaintiffs obtain injunctive relief their fees are not subject to the PLRA cap).  The hourly rate for fees subject to the PLRA are also capped, and cannot exceed 150% of the authorized hourly rate for court-appointed counsel under the Criminal Justice Act, 18 U.S.C. §3006A ("CJA"). 18 U.S.C. §1997e(d)(3); *see Webb v. Ada Cnty.*, 285 F.3d 829, 839 (9th Cir. 2002).  The maximum rate established by the PLRA is the same for paralegals and other non-attorney billers as it is for attorneys.  *Perez v. Cate*, 632 F.3d 553, 558 (9th Cir. 2011) ("[T]he PLRA limits courts to an hourly rate that is 150 percent of the rate established for court-appointed counsel under the Criminal Justice Act and does not set a separate benchmark rate for paralegal fees.").

## C.   Cal. Gov. Code §52.1(h) – Fees for State Law Claims

Plaintiffs who prevail on a claim under California Civil Code § 52.1 are entitled to attorneys' fees pursuant to Cal. Civ. Code § 52.1(h).  The Ninth Circuit has held that it is proper to use state law to determine an attorney's fee where there are overlapping federal and state civil rights claims and state law provides a greater award than does federal law.  *See Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470 (9th Cir. 1995).  Further, in the Ninth Circuit, "when a plaintiff succeeds on both federal and state claims that support a fee award, the state-law multiplier is available."  *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1106 (9th Cir. 2014) (holding that "[i]f the Estate had prevailed on its § 52.1 claim, [as opposed to just a §1983 claim] it could have received a multiplier of its attorneys' fees to account for the risk of contingent representation.") (internal citation omitted).

## V.   DISCUSSION

It is undisputed that Plaintiffs prevailed at trial and are entitled to fees as "prevailing parties."  The Court must now determine a "reasonable" fee consistent with state and federal law and within the limitations of the PLRA.

**A.      Fees Payable Pursuant to State and Federal Law**

Plaintiffs prevailed on their civil rights claims under both the California Bane Act (§52.1) and under federal Civil Rights Act (§1983).  While these statutes have their own fee provisions, Defendants argue that all attorney's fees must be awarded pursuant to §1988 because the Bane Act's attorney's fees provision conflicts with a valid federal statute (the PLRA).  The Court finds no such conflict in the law and finds that Plaintiffs may be paid pursuant to §52.1(h) for their success on § 52.1 claims.

The PLRA is expressly limited to claims challenging "prison conditions under section 1983 … or any other Federal law."  42 U.S.C. § 1997e(a).  PLRA attorneys' fee restrictions specifically apply to fees payable "under section 1988." 42 U.S.C. § 1997e(d); *see Armstrong*, 318 F.3d at 975 (holding that the PLRA applies only to fees paid pursuant to §1988); *see also Beckford v. Irvin*, 60 F.Supp.2d 85, 88 (W.D.N.Y.1999) ("The PLRA does not limit the award of attorney's fees to a prevailing plaintiff whose award is authorized under a statute separate from § 1988.")  The Ninth Circuit has clearly held that the PLRA restrictions need not apply where a statute independently provides for attorney's fees and fees are not awarded pursuant to §1988.  *Armstrong* 318 F.3d at 975.

When there is a state law cause of action in a federal court, courts recognize that "a state right to an attorney's fee reflects a substantial policy of the state" and "the method of calculating a fee is an inherent part of the substantive right to the fee itself…"  *Mangold*, 67 F.3d at1479 ("The trial court did not err in applying state law to calculate the fees available under state law.").  It is well established that this Court may award fees pursuant to state law for state law claims.  *Id*.; *see also Chaudhry*, 751 F.3d at 1106 (finding that if the plaintiff prevailed on § 52.1 and §1983 claims based on the same conduct, the plaintiff could pursue attorney's fees pursuant to §52.1(h)).

Defendants argue an unpublished order from this district, *Pierce v. County*

*of Orange,* is "on all fours" with the matter now before this Court and, therefore, Plaintiffs may only recover fees pursuant to federal law.   However, in *Pierce*, the Court determined that the PLRA rate cap limited the attorney's fees available under state law (Cal. Civil Code §1021.4) because the plaintiffs' state and federal constitutional claims were not separately discussed or adjudicated by the Court (or the Ninth Circuit on remand) and all constitutional claims were remanded as a violation of §1983.  (*See* Defendants' Ex. 1, p. 34-35 (Dkt No. 679).)  Here, Plaintiffs prevailed on separate state and federal causes of action pursuant to separate state and federal statutes.  The jury found Defendants liable under §1983 and §52.1 in separate jury findings.[4]  (Dkt. Nos. 595, 597, 599, 601.)  Further, unlike in *Pierce*, Plaintiffs' request for fees distinguishes between hours sought for §1983 claims and hours sought for §52.1 claims.  Defendants' reliance on *Pierce* is not persuasive.

Further, the Ninth Circuit has found that Congress, in passing the PLRA, did not intend to discourage the collection of fees in the "extremely small percentage" of meritorious cases with substantial verdicts in favor of prisoner plaintiffs.  *Woods*, 722 F.3d at 1182 & n. 5.  Congress instead sought to limit the number of frivolous prisoner claims filed and to encourage early dismissal of such lawsuits.  *Id.*  The lawsuit before this Court was not a frivolous prisoner lawsuit.  Plaintiffs' lawsuit was meritorious and required competent counsel.  Limiting Plaintiffs' state law fee pursuant to the PLRA would not serve Congress's intent and would not compensate counsel for Plaintiffs' successful California law claims.

Plaintiffs are entitled to attorney's fees pursuant to California law for their successful California law claims and pursuant to federal law (limited by the PLRA) for their successful federal claims.

---

[4] Defendants were only held liable under §1983 as to Plaintiff Rodriguez.

### (i)   Distinguishing Fees Pursuant to State or Federal Law

The next issue the Court must determine is what portion of counsels' fee should be awarded pursuant to §1988, subject to the limitations of the PLRA, and what portion should be awarded pursuant to §52.1(h). This is a complex task because, as noted by the Supreme Court, in civil rights litigation "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley*, 461 U.S. at 435.  Differentiation is particularly difficult here, where Defendants were found liable for both state and federal claims based on the same facts (an underlying Eighth Amendment excessive force violation).

Plaintiffs request over 5,500 hours of billable work on the merits of this litigation through February 28, 2014.[5]  Plaintiffs request 1260.4 hours exclusive to the § 1983 claims (to be awarded pursuant to §1988) and 4412.8 hours for services relevant to Plaintiff's state law claims (to be awarded pursuant to § 52.1(h)).  (*See* Declaration of Barrett S. Litt in support of Corrected Motion for Attorney Fees and Costs ("Litt Decl.") ¶30 (Dkt. No. 669).)  Plaintiffs provide evidence that counsel conducted a careful analysis and categorized each time entry in their billing records for the past four years.  (*See* Declaration of Caitlin Weisberg in Support of Motion for Attorney Fees and Costs ("Weisberg Decl.") (Dkt. No. 650.)  Based on Attorney Weisberg's review of over 3,700 individual billing records, Plaintiffs' attorneys determined that approximately 22% of the time worked on this case was spent exclusively on Plaintiffs' federal claims and should be awarded under §1988 ("§1983 only" time).  Plaintiffs argue that the other 78% of the time was either devoted to Plaintiffs' state law claims or was entwined with Plaintiffs' state law claims, and fees for those hours should be awarded pursuant to §52.1(h).

---

[5] According to Attorney Weisberg, "merits hours" refer to all hours excluding hours spent on Plaintiffs' motion for sanctions for Defendants' failure to comply with the Court's discovery orders, hours spent on Plaintiff's fee motion, and hours spent litigating the interlocutory appeal in the Ninth Circuit.  (*See* Weisburg Decl., ¶¶ 6-7.)

The time Plaintiffs classified as "§1983 only" includes time exclusive to 1) Plaintiff Rodriguez (who had only a federal claim); 2) Plaintiffs' *Monell* claim;[6] 3) qualified immunity issues; and 4) issues relating to attorney's fees under the PLRA.  (Weisberg Decl. ¶ 7.)  For billing entries that had "cross-over utility" for both Plaintiffs' state law and federal law claims, Plaintiffs determined a percentage of the time which should be considered "§1983 only."  This percentage ranged from one hundred percent "1983 only," to time entries which benefitted both Plaintiffs' §1983 and §52.1 claims but of which counsel considered only 5%-60% was work exclusive to Plaintiffs' §1983 claims.   (Weisberg Decl. ¶ 8-10.)

### (ii) Defendants' Challenges to Plaintiffs' Apportionment

Defendants raise several challenges to Plaintiffs' requested apportionment and argue that some work classified by Plaintiffs as pertinent to Plaintiffs' state law claims should be classified as "§1983 only."

Plaintiffs request approximately 50% of their time opposing Defendants' motion for summary judgment as payable pursuant to state law.  The Court finds that Defendants' Summary Judgment motion focused predominantly on qualified immunity and Plaintiffs' Monell claim – neither of which are applicable under California law or entwined with Plaintiffs' §52.1 claims.  Accordingly, the Court finds that the majority of the services rendered on Plaintiffs' opposition to the summary judgment motion should be paid pursuant to §1988 as "§1983 only" time.  Because Plaintiffs do not distinguish the hours or the fee specific to their opposition to summary judgment and the Court has no other means of calculating an appropriate reduction, the Court therefore adopts Defendant's adjusted fee for services rendered opposing the summary judgment motion ($57,075.00).  (*See* Declaration of Robert M. Bruning in Support of Defendants' Opposition to Plaintiffs' Attorney's fees and Costs ("Bruning Decl."), Ex. C, p. 2 (Dkt. No.

---

[6] Plaintiffs' "*Monell* claim" refers to Plaintiffs' §1983 claims against COLA and LASD based on *Monell v. Dept. of Soc. Svcs.*, 439 U.S. 658 (1978).

680).)  Plaintiffs' final fee will therefore be reduced by $84,479.10, reflecting the difference between Plaintiffs' requested fee for opposing Defendants' Motion for summary judgment ($141,554.10) and Defendants' adjusted amount ($57,075.00). (*Id*.)

The Court finds Defendants' additional challenges to Plaintiffs' requested apportionment unpersuasive.  Plaintiffs provide adequate evidence supporting the apportionment of fees between state and federal law and counsel's exercise of careful billing judgment.  It would be unreasonable for this Court to determine, without specific rebuttal evidence, that Plaintiffs' success under §52.1 can be attributed to only 25% of their work (despite Defendants' request that the Court do so).  Defendants' request that fees be apportioned such that 75% of Plaintiffs' fee is payable pursuant to §1988 and 25% pursuant to §52.1 is unsupported and would not compensate Plaintiffs for their success on state law claims.  Defendants fail to meet their "burden of rebuttal," which requires submission of evidence ... challenging the accuracy and reasonableness of the ... facts asserted by the prevailing party in its submitted affidavits." *Chaudhry*, 751 F.3d at 1110 (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008)).  The Court finds that Plaintiffs' requested apportionment is reasonable with a reduction to more accurately reflect the classification of hours spent opposing Defendants' summary judgment motion.

**B.     Lodestar Analysis**

**1.     Reasonable Rates Under PLRA**

For the 1260.4 hours that Plaintiffs' counsel worked exclusively on §1983 claims, Plaintiffs request reasonable rates that comply with the PLRA cap. Plaintiffs base their request on the publicly available Criminal Justice Act ("CJA") hourly rates which are as follows:

| § 230.16(a) Non-Capital Hourly Rates | |
|---|---|
| **If services were performed between...** | **The maximum hourly rate is...** |
| 03/01/2014 to present | $126 |
| 09/01/2013 through 02/28/2014 | $110 |
| 01/01/2010 through 08/31/2013 | $125 |
| 03/11/2009 to 12/31/2009 | $110 |
| 01/01/2008 through 03/10/2009 | $100 |
| 05/20/2007 through 12/31/2007 | $94 |
| 01/01/2006 through 05/19/2007 | $92 |
| 05/01/2002 through 12/31/2005 | $90 |

For fees paid pursuant to §1988 Plaintiffs request an hourly rate capped at
$189 per hour, a rate based on 150% of the rate paid to court-appointed attorneys
in this district (150% of $126).  Plaintiffs request this rate for their attorneys as
well as for some non-attorney billers.  *See Perez*, 632 F.3d at 555 (holding that the
PLRA cap is the same for attorneys and paralegals).

Plaintiffs' requested rates for all of their attorneys and staff on this matter
for fees paid pursuant to §1988 are as follows:

| § 1988 / PLRA Fees | | | | | |
|---|---|---|---|---|---|
| **Attorney/Biller** | **Yrs Practice (Grad Date)** | **Rate** | **Hours (Merits)** | **Hours (Fee/Cost)[7]** | **Total** |
| Barry Litt | 45 (1969) | $189 | 18.9 | 7.7 | $5,027.40 |
| Ronald Kaye | 26 (1988) | $189 | 373.0 | 6.2 | $71,668.80 |
| David McLane | 28 (1986) | $189 | 177.0 | 0.9 | $33,623.10 |
| James Muller | 28 (1986) | $189 | 211.5 | 3.2 | $40,578.30 |
| Kevin LaHue | 10 (2004) | $189 | 134.2 | .3 | $25,420.50 |
| Caitlin Weisberg | 6 (2008) | $189 | 159.2 | 4.7 | $30,977.10 |
| Julia White | Sr. Paralegal | $189 | 47.4 | 25.9 | $13,853.70 |

---

[7] Hours listed as "Fee/Cost" hours are those hours spent working on the fee motion and on the bill of costs.  (*See* Dkt. No. 669, ¶ 44.)

| Veronica Aguilar | Paralegal | $175 | 5.7 | 0 | $997.50 |
|---|---|---|---|---|---|
| Heath White | High tech paralegal | $189 | 6.3 | 0 | $1,190.70 |
| Lisa Mikhailova | Paralegal / Legal Asst. | $175 | 24.1 | .7 | $4,340.00 |
| John Srebalus | Paralegal / Legal Asst. | $175 | .3 | 0 | $52.50 |
| Vi  Hohuynh | Law Clerk | $189 | 102.8 | 0 | $19,429.20 |
| **SUBTOTAL:** | | | 1260.4 | 49.6 | $247,758.80 |
| **SUBTOTAL AFTER 3% REDUCTION:**[8] | | | | | $239,744.04 |
| **Plaintiffs' PLRA Contribution:** | | | | | -$9,500 |
| **TOTAL:** | | | | | $230,244.04 |

Nearly a month after this Motion was taken under submission, Plaintiffs filed a "Notice of Errata" and requested supplemental briefing to argue for an increase in Plaintiffs' requested rates for their "§1983 only" work. (Dkt. 709, 710, 712, 713.)  The Court acknowledges that the maximum rate established under the PLRA is based on the "authorized" CJA rates, and not the "funded" CJA rates. *Webb*, 285 F. 3d at 839.  However, the Court finds that Plaintiffs' requested rates ($175-$189) do not violate the attorney's fee rate cap established by the PLRA and these rates result are reasonable and were used by the Court in calculating a reasonable fee.

### 2.    Reasonable Rates Under 52.1(h) (Not Subject to PLRA Cap)

Plaintiffs' requested rates and hours for their non-PLRA capped hours, the hours attributable to their §52.1 claims, are as follows:

---

[8] To account for any inaccurate or duplicative billing, Plaintiffs implemented an across-the-board three percent deduction on all fees awarded pursuant to both §1988 and §52.1(h).

| § 52.1(h) Fees | | | | | |
|---|---|---|---|---|---|
| **Atty/Biller** | **Yrs Practice (Grad Date)** | **Rate** | **Hours (Merits)** | **Hours (Fee/Cost)** [9] | **Total** |
| Barry Litt | 45 (1969) | $975 | 37.4 | 27.2 | $62,985.00 |
| Ronald Kaye | 26 (1988) | $775 | 1077.9 | 21.9 | $852,345.00 |
| David McLane | 28 (1986) | $775 | 429.2 | 3.3 | $335,187.50 |
| James Muller | 28 (1986) | $700 | 946.4 | 11.5 | $670,530.00 |
| Kevin LaHue | 10 (2004) | $600 | 448.2 | 1.2 | $269,640.00 |
| Caitlin Weisberg | 6 (2008) | $500 | 458.9 | 16.8 | $237,850.00 |
| Julia White | Sr. Paralegal | $295 | 155.7 | 92.0 | $73,071.50 |
| Veronica Aguilar | Paralegal | $175 | 77.5 | 0 | $13,562.50 |
| Heath White | High Tech Paralegal | $235 | 80.0 | 0 | $18,800.00 |
| Lisa Mikhailova | Paralegal / Legal Asst. | $175 | 218.5 | 2.5 | $38,675.00 |
| John Srebalus | Paralegal / Legal Asst. | $175 | 16.0 | 0 | $2,800.00 |
| Vi  Hohuynh | Law Clerk | $250 | 467.1 | 0 | $116,775.00 |
| **SUBTOTAL:** | | | 4412.8 | 176.4 | $2,692,221.50 |
| **SUBTOTAL AFTER 3% REDUCTION:** | | | | | $2,611,454.86 |
| **SUBTOTAL WITH 2.0 MULTIPLIER (merits only):** | | | | | $5,046,762.56 |
| **TOTAL (2.0 Multiplier):** | | | | | $5,222,909.72 |

---

[9] As explained in The Corrected Declaration of Barrett S. Litt in Support of Plaintiffs' Motion for Award of Attorneys' Fees, hours listed as "Fee/Cost" hours are those hours spent working on the fee motion and on the bill of costs.  (*See* Dkt.No. 669, ¶ 44.)

14

1    Plaintiffs submit declarations attesting to the reputation, skill and

2  experience of Plaintiffs' counsel. (*See, e.g.,* Declaration of Donald W. Cook in

3  support of Plaintiffs' Motion for Award of Attorney's Fees ("Cook Decl.") (Dkt.

4  No. 649); Declaration of William J. Genego in Support of Plaintiffs' Motion for

5  Award of Attorney's Fees (Dkt. No. 649-1).)  Plaintiffs also submit declarations

6  from Carol Sobel and Barrett S. Litt demonstrating comparable attorneys' fee rates

7  in this District for attorneys with similar experience to Plaintiffs' counsel.

8  (Declaration of Carol Sobel in Support of Plaintiffs' Motion for Attorey's Fees

9  ("Sobel Decl.") (Dkt. No. 648); Litt Decl.)

10    Plaintiffs provide evidence that Barrett S. Litt, who served predominantly in

11  a consulting role on this case, is considered one of the leading civil rights

12  attorneys in the country.  (*See* Sobel Decl. ¶10.)  Plaintiffs' requested rate of $975

13  per hour for Attorney Litt is supported by his strong reputation and experience.

14    Ronald M. Kaye was lead counsel for Plaintiffs. The Court is familiar with

15  Attorney Kaye from his practice at the Federal Public Defenders and through

16  observing him during the course of this litigation.  Plaintiffs have submitted

17  several declarations attesting to Attorney Kaye's outstanding reputation, skill, and

18  experience. (*See, e.g.*, Declaration of Sean Kennedy in Support of Plaintiffs'

19  Motion for Award of Attorney's Fees (Dkt. No. 649-3); *see also* Declaration of

20  Samuel Paz in Support of Plaintiffs' Motion for Award of Attorney's Fees (Dkt.

21  No. 649-4).)  Attorney Kaye has been engaged in the practice of civil rights law

22  for the past ten years and has extensive criminal trial experience. The Court finds

23  his requested rate of $775 is reasonable and supported by evidence.

24    This Court is familiar with David M. McLane from his past appearances

25  before this Court as a Federal Public Defender and through observing his work on

26  this case.  Plaintiffs submitted declarations attesting to Attorney McLane's

27  outstanding reputation, skill, and experience in criminal defense and more recently

28  in civil rights litigation. (*See, e.g.*, Declaration of Brian A. Vogel in Support of

15

1   Plaintiff's Motion for Award of Attorney's fees (Dkt. No. 649-6).)  Attorney

2   McLane has been engaged in the practice of civil rights law for the past ten years

3   and has many years of criminal trial experience. The Court finds his requested rate

4   of $775 is reasonable and supported by the evidence.

5       James M. Muller has been practicing law for 28 years with a focus in the

6   area of police misconduct.  Plaintiffs submitted declarations attesting to his skill,

7   experience and reputation.  (*See, e.g.,* Declaration of Carol A. Watson in Support

8   of Plaintiffs' Motion for Award of Attorney's Fees (Dkt. No. 649-7); Sobel Deck.

9   ¶ 11.)  The Court finds the requested $700 per hour reasonable based on the

10  evidence presented.

11      The Court similarly finds the requested rates of $600 for Kevin LaHue

12  (2004 graduate), $500 for Caitlin Weisberg (2008 graduate), and the requested

13  paralegal/law clerk rates of $295 to $175 reasonable based on the evidence

14  presented in the Sobel and Litt Declarations.

15      In the Ninth Circuit, reasonable rates for civil rights cases are not based

16  only on rates offered in similar civil rights claims but rather comparison "extends

17  to all attorneys in the relevant community engaged in 'equally complex Federal

18  litigation,' no matter the subject." *Prison Legal News v. Schwarzenegger*, 608

19  F.3d 446, 445 (9th Cir. 2009) (holding that "the proper scope of comparison is not

20  so limited" as to only other attorneys involved in prison litigation).   Plaintiffs

21  provide evidence and case law that their requested rates are comparable to other

22  attorneys in Los Angeles with comparable skill and experience in other complex

23  litigation.  (*See* Litt Decl.).  The Court finds that this litigation was complex and

24  counsel represented Plaintiffs with noticeable skill and professionalism.

25  Plaintiffs' requested rates are reasonable.

26      **3.    Reasonable Hours**

27       "By and large, the [district] court should defer to the winning lawyer's

28  professional judgment as to how much time he was required to spend on the case."

*Chaudhry*, 751 F.3d at 1111 (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)).  Courts generally accept the reasonableness of hours supported by declarations of counsel.  *See, e.g., Horsford v. Bd. Of Trustees of Cal. State Univ.*, 132 Cal. App. 4th 359, 396 (2005) ("[T]he verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous.")

Counsel's sworn declarations and attached time records evidence the attorney, paralegal, and law clerk hours spent in this litigation.  (*See* Weisberg Decl., Exs. A, B.; *see also* Litt Decl. ¶¶ 30-31, 47-48; Declaration of Ronald O. Kaye in Support of Motion for Attorney's Fees ("Kaye Decl.") ¶¶ 5-9, 12, 17-18 (Dkt. No. 646); Declaration of James Muller in Support of Motion for Attorney's Fees ("Muller Decl.") ¶¶ 18-23 (Dkt. No. 647).)  Prior to requesting fees, to account for any arguable duplication, counsel applied a 3% across the board reduction of hours.  In total, Plaintiffs request 5,899.2 hours (adding both merits and fee hours requested under state and federal law).  The Court finds that Plaintiffs' requested hours are reasonable and supported by counsel's verified statements.

### (i)  Muller Pre-Trail Work

Attorney Muller, who began as the sole attorney for Plaintiffs, submitted billing entries totaling 55.30 hours for a two-year period prior to the filing of the August 25, 2010 complaint.  Defendants argue that these hours are unjustified and that 48.0 of these hours pertained to an unrelated class-action matter in state court.  Upon a review of the evidence, the Court finds that Muller's pre-trial work was related to this case and Muller's hours spent were reasonably expended.[10]

---

[10] In their reply brief and supporting declarations, Plaintiffs acknowledge that 4.8 hours requested by Plaintiffs in the Motion could have been excluded from their requested hours.  (*See* James S. Muller in Support of Corrected Motion for Attorney Fees ("Muller Reply Decl."), (Dkt. No. 689); *see also* Declaration of Caitlin S. Weisberg in Support of Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion for Award of Attorney's Fees ("Weisberg Reply Decl.") (Dkt. No. 692), ¶ 6.)  However, Plaintiffs preemptively applied a 3% reduction to all of their hours, and this reduced Plaintiffs' request by significantly more than 4.8 hours.  An additional reduction by this Court is therefore not necessary.

### (ii) Deposition Attendance

Defendants challenge hours for duplicative attendance at six depositions, totaling an excess of 35.4 hours.  The Court finds, because this case involved several Plaintiffs and Defendants and two Plaintiffs' law firms, it is reasonable that more than one Plaintiffs' attorney was present at depositions.  A second attorney may serve as a sounding board or be necessary to assure that valuable testimony (for all Plaintiffs) is obtained during the limited time allotted in deposition.  *See Moreno*, 534 F.3d at 1112 ("By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker").  The Court, therefore, does not reduce Plaintiffs' requested fee based on duplicative attendance at depositions.

### (iii)   "Unsuccessful" Claims

The Court may fully compensate for work that is "expended in pursuit of the ultimate result achieved" even where "the plaintiff failed to prevail on every contention raised in the lawsuit."  *See Hensley*, 461 U.S. at 435; *see also Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005).  Defendants argue that Plaintiffs' hours should be reduced because some individual Defendants were dismissed or prevailed at trial and because Plaintiffs did not succeed on all motions.  Plaintiffs are not required to succeed on all claims against all Defendants to demonstrate full success or excellent results.  *See Dang*, 422 F.3d at 813.  The correct analysis hinges on whether Plaintiffs' work pertaining to unsuccessful motions or non-liable Defendants was work related to Plaintiffs' ultimate success.  *See Hensley*, 461 U.S. at 435; *see also Chavez*, 47 Cal. 4th at 989.  Here, Plaintiffs succeeded on all claims, and the hours requested that pertain to unsuccessful motions and non-liable Defendants directly relate to Plaintiffs' successful claims.  Plaintiffs may therefore recover a fully compensatory fee.  *See id.*

18

(iv)    **Travel Time**

Reasonable travel time by the attorney is compensable, at full rates, if that is the practice in the community.  *See Suzuki v. Yuen*, 678 F.2d 761, 764 (9th Cir. 1982) ("calculation of fees for prevailing civil rights plaintiffs is to be the same as in traditional fee arrangements and that all reasonable time spent is to be compensated").  In Los Angeles, the practice is to compensate at full rates for travel time, even in CJA cases.  (*See* Declaration of Ronald O. Kaye in Support of Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion for Award of Attorneys' Fees ("Kaye Reply Decl.") ¶13.)  Plaintiffs also provide testimony that time was only billed for travel necessary for the proper representation of the client, such as for court appearances and depositions.  (Declaration of Barrett S. Litt in Support of Plaintiffs' Reply to Defendants' Opposition to Motion for Attorneys' Fees ("Litt Reply Decl.") ¶ 30.)  The Court finds that Plaintiffs' request for counsel's travel time is reasonable.

**C.    Lodestar "Multiplier"**

Plaintiffs request a 2.0 multiplier to compensate counsel for excellent work and for the risk counsel assumed in litigating Plaintiffs' case.  "The purpose of a fee enhancement, or multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important constitutional rights… into line with incentives… they are paid on a fee-for-services basis."  *Ketchum*, 24 Cal. 4th at 1132.  California courts consider the following  "*Ketchum* factors" when determining if a lodestar enhancement is warranted: (1) the novelty and difficulty of the questions involved; (2) the skill counsel displayed in litigating the issues; (3) the extent to which the nature of the litigation precluded other employment by the attorneys; and (4) the contingent nature of the fee award.  *Id*.  Enhancements, or multipliers, are "intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or the delay in payment of attorney fees." *Id*. at 1138.  Courts may also consider factors

19

1   such as the source from which the fee will be paid when determining whether or

2   not to apply a lodestar multiplier.  *Serrano v. Priest*, 20 Cal. 3d 25 (1977).

3       The Court finds that Plaintiffs' requested multiplier is justified based on the

4   financial risk Plaintiffs' counsel assumed in litigating this case on a contingency

5   basis, the difficulty of this case, and based on counsel's demonstrated skill.  To

6   litigate this case, counsel invested $3.4 million in services rendered and incurred

7   substantial costs, without any interim payments from the Plaintiffs.  Counsel faced

8   substantial obstacles to success, including representing Plaintiffs that were

9   routinely described as the "worst of the worst" prisoners who were challenging the

10  actions of highly ranked Sheriff's office officials and supervisors (including the

11  former Captain and Sergeants in MCJ).  Further, in litigating this case for several

12  years, through a jury trial, was unable to accept other cases.   Plaintiffs faced

13  aggressive opposition.  In working to secure Plaintiffs' civil rights, counsel faced a

14  serious risk of receiving no payment for their performance of thousands of hours

15  of work over four years.  Counsel also risked obtaining no reimbursement for their

16  sizeable financial investment.  This Court, accordingly, finds that a multiplier is

17  justified to fully compensate Plaintiffs' counsel for litigating this difficult civil

18  rights lawsuit.

19      The Court has considered the fact that the cost of this litigation will "fall on

20  the shoulders of California taxpayers."  *See Nw. Energetic Servs., LLC v.*

21  *California Franchise Tax Bd.*, 159 Cal. App. 4th 841, 881 (2008).  However, the

22  Court finds that this consideration does not justify reducing the lodestar multiplier.

23  Refusing a multiplier in a civil rights case based only on the source of the fee

24  would "effectively immunize large or politically powerful defendants" engaging

25  in conduct that harms the public.  *Horsford v. Bd. of Trustee*, 132 Cal. App. 4th

26  359, 399-401 (2005).  A 2.0 multiplier will be applied to Plaintiffs' fee for

27  services rendered the merits of this litigation. The Court awards $5,046,762.56 in

28  attorney's fees for Plaintiffs' merits work pursuant to 52.1(h).

**D.     PLRA Contribution**

This jury awarded Plaintiffs $950,000 in judgment.  (Dkt. No. 626.)  In order to comply with the PLRA attorney's fee restrictions, Plaintiffs request 1% of Plaintiffs' judgment be applied as a contribution to their requested attorney's fee award.  Neither the plain language of the statute, nor the legislative history of the attorney fees provisions of the PLRA, provide guidance in determining  what percent of the plaintiffs' award should be used to offset an attorney fee award.  However, courts have found that the PLRA contribution should not be a "a rote or mechanical exercise."  *Morrison v. Davis*, 88 F. Supp. 2d 799, 811 (S.D. Ohio 2000) (finding a PLRA contribution of $1 was not too small "because the case involved "a significant violation of the Plaintiff's rights" and the jury sent a "clear signal that the [d]efendants should be punished").  The Court finds that a 1% contribution ($9,500) is supported by the jury's finding that Defendants' conduct (including malicious violence leaving some Plaintiffs permanently injured) warranted punitive damages.

**E.     PLRA Cap**

The total judgment in this case, for Plaintiffs success on both §1983 and §52.1 is $950,000.  Accordingly, even if this Court considered half of that judgment ($475,000) to be Plaintiffs' judgment under §1983, Plaintiffs' requested fee pursuant to §1988 ($230,244.04 ) does not violate the PLRA cap.

**F.     Cost and Litigation Expenses**

On February 20, 2014, Plaintiffs filed an application to the Clerk to tax costs against Defendants.  (Dkt. Nos. 629, 632.)  Plaintiffs requested a total of $35,313.46 in costs. (Dkt. No. 632.)  This application is pending.  Plaintiffs request an additional $53,934.77 in costs in this Motion.  Plaintiffs are directed to apply for all costs pursuant to Local Rule 54-3.  By this Court's order, Plaintiffs may submit an amended application to tax costs with the clerk of the court no later than January 12, 2015.

## VI.  PLAINTIFFS' MOTION TO STRIKE PORTIONS OF THE DECLARATION OF EXPERT ROBERT M. BRUNING

Plaintiffs move to strike portions of the Defendants' Declaration of Robert Bruning under Fed. R. Evid. 702 as improper expert testimony.  (Dkt. No. 691.) Mr. Bruning declares that he "specialize[s] in acting as an expert witness in matters involving legal fees disputes" and, along with his partner, has reviewed and audited hundreds of cases involving attorney's fee requests.  (Bruning Decl. ¶2.) However, there is no evidence that Mr. Bruning has any experience specific to civil rights litigation nor that Mr. Bruning has any familiarity with attorney's fees under the PLRA.  The Court finds that Mr. Bruning has experience and knowledge qualifying him as an expert in analyzing attorney's fees and billing records, generally.  The Court, however, finds that Mr. Bruning is not an expert qualified to opine on the reasonableness of attorney's fees in the civil rights context nor an expert on the PLRA.  Further, the legal opinions provided by Mr. Bruning in his declaration are not helpful to the Court and are not properly considered expert testimony under *Daubert*.  *See Daubert v. Merrill Dow Pharm., Inc*., 509 U.S. 579, 589 (1993); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (holding that an expert's "inference or assertion must be derived by the scientific method" to be admissible).  The Court finds that Sections 4(A), 4(B), and 4(C) of Mr. Bruning's declaration are not within his area of expertise and contain analysis of law, not fact.[11] These sections are therefore stricken pursuant to *Daubert*.  Additionally, Mr. Bruning's declaration violates the Court's local rules.  *See* L.R. 7-7 ("Declarations shall contain only factual, evidentiary matter and shall conform as far as possible to the requirements of F.R.Civ.P. 56(c)(4)"; *see also* L.R. 11-6 ("appendices shall not include any matters which properly belong in the body of the memorandum of points and authorities").  The Court strikes all legal opinions in Mr. Bruning's declaration.  *See Nationwide Transp.*

---

[11] Mr. Bruning's declaration does not provide consistent section numbering. For additional clarity, the Court is referring to the first Section 4, which begins on page 7 of the declaration.

1   *Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) ("an expert

2   witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an

3   ultimate issue of law").  The Court considers only Mr. Bruning's quantification of

4   Plaintiffs' counsel's billing records and the evidence establishing the time

5   Plaintiffs' counsel spent preparing the opposition to Defendants' summary

6   judgment motion.

### VII. DEFENDANTS' MOTION TO STRIKE DECLARATIONS IN SUPPORT OF PLAINTIFFS' REPLY

Defendants filed Objections to and a Request to Strike the Attorney

Declarations filed in support of Plaintiffs' Reply.  (Dkt. No. 701.)  Defendants

oppose declarations provided by Attorneys Kaye, Litt, and Weisberg (Dkt. Nos.

688, 690, 692) based on these declarations' length and inclusion of legal

argument.  Specifically, Defendants argue that Attorneys Litt, Weisberg, and Kaye

proffer improper legal arguments addressing Mr. Bruning's opinions.   As this

Court strikes Mr. Bruning's legal opinions, this Court similarly strikes Plaintiffs'

declarations addressing the legal opinions in the Bruning declaration. (Litt Reply

Decl. ¶¶ 3, 4, 5, 6, 17, 25; Kaye Reply Decl. ¶¶ 10, 11.)  These legal opinions

violate this Court's Local Rules 7-7 and 11-6 and are unnecessary and unhelpful.

In the declarations supporting Plaintiffs' reply, the Court considers only those

statements based on the personal knowledge of the declarants.

### VIII.  CONCLUSION

The Court GRANTS the Plaintiffs' Motion for Attorneys' Fees.  Plaintiffs'

fee for counsel's success on §1983 claims is $239,744.04 paid pursuant to §1988,

with $9,500 of this amount paid as a contribution from Plaintiffs' judgment.

Plaintiffs' fee pursuant to §52.1 is $5,138,430.62.[12]  The total fee award is

$5,378,174.66 ($9,500 contributed from Plaintiffs' judgment).

Plaintiffs' counsel may file a renewed application to tax costs with the

---

[12] Plaintiffs' requested amount of $5,222,909.72 less $84,479.10 for reductions based on Plaintiffs' opposition to Defendants' summary judgment motion.

23

1    Clerk of this Court no later than January 12, 2015.

2            The Court GRANTS Plaintiffs' Motion to Strike Portions of the Declaration

3    of Expert Robert M. Bruning.  (Dkt. No. 691.)  The Court also GRANTS the

4    Defendants' Motion to Strike and strikes portions of the Plaintiffs' declarations

5    offered in support of Plaintiffs' reply.  (Dkt. No. 701.)

6

7    **IT IS SO ORDERED.**

8

9    DATED:  December 26, 2014            **CONSUELO B. MARSHALL**

10                                                CONSUELO B. MARSHALL
                                                UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    24

Sobel Exhibit 5

202



**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

CHRISTIAN RODRIGUEZ,
ALBERTO CAZAREZ, individually
and as class representatives

       *Plaintiffs,*

  vs.

CITY OF LOS ANGELES, CARMEN
TRUTANICH, CHARLES BECK,
ALLAN NADIR, ANGEL GOMEZ
AND DOES 1 THROUGH 10.

       *Defendants.*

Case No.:  CV 11-1135-DMG (PJWx)

**ORDER GRANTING PLAINTIFFS'
UNOPPOSED MOTION FOR
FINAL APPROVAL OF
SETTLEMENT [386, 396]**

The Court, having considered whether to order final approval of the settlement of the above-captioned action pursuant to the Joint Stipulation of Settlement ("Settlement"), having considered all of the papers and argument of the parties and their counsel, having granted preliminary approval on July 29, 2016, having directed that notice be given to all Class Members of preliminary approval of the Settlement and the final approval hearing and the right to object to the Settlement, having considered the objections, and good cause appearing,

**IT IS HEREBY ORDERED AS FOLLOWS:**

1.      Terms used in this Order of Final Approval have the meanings assigned to them in the Settlement.

2.      This Court has jurisdiction over the claims asserted in the Action by Plaintiffs Christian Rodriguez and the Estate of Alberto Cazarez, and over Class Members and Defendants.

3.      The Court hereby finds that the Notice of Settlement, as mailed to all Class Members on August 26, 2016, fairly and adequately described the proposed Settlement, the manner in which Class Members could object to the Settlement; was the best notice practicable under the circumstances; was valid, due, and sufficient notice to all Class Members; and complied fully with the Federal Rules of Civil Procedure, due process, and all other applicable laws.

4.      The Court further finds that a full and fair opportunity has been afforded to Class Members to participate in the proceedings convened to determine whether the proposed Settlement should be given final approval.

5.      The Court finds that Defendants gave notice of the Settlement to relevant state and federal officials on November 16, 2016, as required under 28 U.S.C. § 1715, which is not fewer than 90 days prior to this order.

6.      The Court hereby finds that the Settlement is fair, reasonable, and adequate as to the Class, Plaintiffs, and Defendants, and is the product of good faith, arm's-length negotiations between the Parties, and further, that the

Settlement is consistent with public policy and fully complies with all applicable provisions of law.

7.     The Court finds that while Plaintiffs have already established Defendant City's liability with respect to their classwide Due Process claims, there is a high level of uncertainty surrounding a damages award from a jury. While a jury could award class members significant actual damages, a jury could also determine that damages to class members were only nominal.

8.     The Court finds that the Settlement is preferable to lengthy, expensive litigation with uncertain results.  The Parties anticipated that trial would last five to sixteen days, involving up to dozens of witnesses and as many as 140 exhibits.  The Court also finds that the Settlement includes relief that Plaintiffs could not otherwise obtain from the Court, notably the expedited procedures to seek removal from a gang injunction.

9.     The Court finds that there is a risk that the class would be decertified mid-trial or post-trial, depending on the evidence presented.

10.     The Court finds that the Settlement provides substantial value to class members through the multiple types of benefits:

a. The Jobs and Education program provides class members with educational and job training services, and certain class members can also receive a stipend.  Class Members with a satisfying career can seek additional educational benefits or supportive services to assist them in job retention.  Class members who cannot or do not wish to take advantage of the Jobs and Education benefit can transfer the benefit to a close relative.  The Jobs and Education Program will be monitored by a third-party evaluator from California State University, Northridge, on an annual basis, to ensure that class members receive a valuable benefit.  The City will contribute a minimum of $4.5 million and a maximum of $30 million of new,

1        non-supplanting funds to the Jobs and Education Program over a

2        period of four years.

3     b.   The expedited procedure to seek to be removed from the gang

4        injunction by a hearing before a federal magistrate judge provides

5        class members a benefit of significant value.  The procedure is

6        offered only to class members and guarantees a decision on the

7        petition within a certain time frame as well as the opportunity to

8        present evidence before a federal judge, neither of which is provided

9        to non-class members.

10    c.   The tattoo removal services provided by the Settlement offer class

11       members value.  The City has agreed to pay up to $150,000 per year

12       for such services.

13    d.   The injunctive relief preventing the enforcement of four provisions

14       of the class gang injunctions—Obey curfew; Do not be in the

15       presence of drugs; Do not be in the presence of alcohol; and Obey

16       all laws—provides significant value to Class Members.

17       11.    The Court finds that the Settlement was entered into based on a

18 comprehensive picture of the strengths and weaknesses of Plaintiffs' remaining

19 claims.  The Settlement was entered into on the eve of trial, long after discovery

20 was long complete, and after the Court had ruled on cross-motions for summary

21 judgment and motions *in limine*.

22       12.    The Court finds that Class Counsel are highly experienced in class

23 action and civil rights litigation, and that they have demonstrated a high degree

24 of competence in the litigation here, having secured a preliminary injunction,

25 class certification, and partial summary judgment in favor of Plaintiffs.  Class

26 Counsel strongly believe that the Settlement is a fair, reasonable, and adequate

27 resolution of the claims of the Class and is preferable to going to trial.  The

28 Court accords great weight to their recommendation.

13.   A governmental participant, the City of Los Angeles, has approved this Settlement, and the Los Angeles City Council voted unanimously to approve it.  The Court finds that this participation of a governmental entity weighs in favor of final approval.

14.   The Court further finds that the response of the Class to the Settlement supports approval of the Settlement.  Named Plaintiffs and other Class Members responded favorably to the Settlement.  Furthermore, out of the 5,606 Notices Packets mailed to class members, there was only one response that could reasonably be construed as an objection, and a conditional objection was raised by an organization that may include class members.

   a.   The objector Terrence Kelley objects because he believes that the job program is "excellent" but that class members should receive additional compensation.  The Court finds that given the extreme uncertainty as to the amount of damages that could be obtained at trial, Class Members are being fairly and adequately compensated for their claims.

   b.   A conditional objection was submitted by Peter Arellano, Jose Reza, and Youth Justice Coalition (collectively, the "Youth Justice Coalition Plaintiffs"), plaintiffs in the case *Youth Justice Coalition, et al. v. City of Los Angeles, et al.*, Case No. 2:16-cv-07932-VBF-RAO (C.D. Cal.).  The Youth Justice Coalition Plaintiffs object to the Settlement only if the Release Provision is construed to settle or address the claims in their pending separate suit.  The Court finds that this case, and the release of claims in this settlement, are and always have been limited to the narrow issue of the legality of the curfew provisions in the class gang injunctions, including the service and enforcement of the curfew provisions.  In contrast, the separate action brought by the Youth Justice Coalition plaintiffs

concerns the City's method of determining who should be subject to gang injunctions in the first place and the lack of process for a person to challenge application of the gang injunction imposed by the City regardless of whether the injunction contains a curfew provision. In light of these differences, and the fact that the plaintiffs in this case have never brought any claim that would be construed as raising the sorts of issues that are being raised in the Youth Justice Coalition class action, the Court finds that the release agreement here does not implicate that lawsuit. As a result, the Release Provision is not overly broad and does not render the Settlement unfair, inadequate, or unreasonable.

There were six individuals who opted out from the Class and therefore are not covered by the Settlement. Those individuals are Jonathan Mejia, Fernando Arteaga, Alejandro Gutierrez, Clemente Richard Jimenez, David Barragan, and Freddie Estrada. (Settlement Agreement, ¶ 31.)

15. The Court makes the finding that the Settlement is fair, reasonable, and adequate based on weighing the strength of Plaintiffs' claims and Defendants' defenses with the risk, expense, complexity, and duration of future litigation.

16. On November 16, 2016, Defendant served notice of settlement upon the Attorneys General of the United States and of each State in which one or more class members resides, as required by the Class Action Fairness Act, 28 U.S.C. § 1715(b). No Attorney General objected to the Settlement.

17. In granting final approval of the Settlement, the Court considered the nature of the claims, the value of the settlement, and the fact that the Settlement represents a compromise of the Parties' respective positions. Additionally, the Court finds that the terms of the Settlement have no obvious deficiencies and do not improperly grant preferential treatment to any individual

1   Class Member.  Accordingly, pursuant to Rule 23(e), the Court finds that the

2   terms of the Settlement are fair, reasonable, and adequate to the Class and to

3   each Class Member.  *See Staton v. Boeing*, 327 F.3d 938, 960 (9th Cir. 2003).

4        18.    The Court also hereby finds that Plaintiffs have satisfied the

5   standards and applicable requirements for final approval of this class action

6   settlement under Rule 23, for the reasons stated in the Motion for Final

7   Approval.  Accordingly, the Court hereby finally and unconditionally approves

8   the Settlement and authorizes Defendants to provide class members benefits in

9   accordance with the terms of the Settlement.

10       19.    The Court orders the Parties to implement, and comply with, the

11  terms of the Settlement.

12       20.    The Court approves the settlement of the Released Claims as

13  defined in the Settlement.  As of the Effective Date of the Settlement, as defined

14  in the Settlement, all of the Released Claims of each Class Member who did not

15  timely opt out, as well as the Class Representatives' Released Claims, are and

16  shall be deemed to be conclusively released as against Defendants.  Except as to

17  such rights or claims that may be created by the Settlement, all Class Members

18  as of the date of this Order of Final Approval who did not timely opt out are

19  hereby forever barred and enjoined from commencing or prosecuting any of the

20  Released Claims, either directly, representatively, or in any other capacity,

21  against Defendant.

22       21.    Class Counsel Orange Law Offices, Hadsell, Stormer & Renick, and

23  Public Counsel shall continue to serve as Lead Counsel and shall oversee and

24  perform the duties necessary to effectuate the settlement, including the

25  distribution of attorney's fees and costs.

26       22.    Defendants agreed in the Settlement to pay an Incentive Award to

27  named Plaintiffs Christian Rodriguez and the Estate of Alberto Cazarez in the

28  amount of $20,000 each.  These payments shall be payable to BARCO

Assignments Ltd. to fund future periodic payments payable to Escolastica Camila Rodriguez and Alexa Cazarez as outlined in Exhibit "A." The recipients of these payments shall use the funds solely for the purpose of their education. The Court finds that Christian Rodriguez and Alberto Cazarez expended significant time in serving as Class Representatives and vigorously prosecuted the case. In addition, the Court finds that Christian Rodriguez and Alberto Cazarez faced the notoriety and risk of having their names attached to a case concerning gang injunctions. Good cause appearing, the Court hereby GRANTS this request and authorizes Defendants to pay this amount.

23.     Defendant further agreed in the Settlement to pay the reasonable costs of the Claim Administrator associated with notices to the class and the administration of the Settlement up to an amount of $150,000 over the four-year period. Good cause appearing, the Court hereby authorizes payment to CAC Services, Inc., in accordance with the terms of the Settlement.

24.     The Parties have agreed that Defendant will pay Class Counsel attorney's fees and costs in the amount of $5,750,000. These fees and costs will be payable in two installments: $2.75 million in the fiscal year ending June 30, 2017, and $3 million in the fiscal year beginning July 1, 2017, paid in accordance with instructions from Plaintiffs' counsel. The Court has reviewed Plaintiffs' Motion for Attorney's Fees, Defendant's Opposition to that Motion, Plaintiffs' Reply papers, and the supporting documentation. [Doc. ## 386, 394, and 397.] Having reviewed and analyzed those materials and the outstanding result achieved, and under the totality of the circumstances, the Court finds that attorney's fees in the amount of $5,750,000 is reasonable. Defendants shall have no further liability for costs, expenses, interest, or for any other charge, expense, or liability, in connection with the above-captioned action except as provided in the Settlement. The Parties agree that the Settlement shall not prejudice or prohibit Plaintiffs from seeking additional fees should Plaintiffs have reasonable

1    need to enforce the Settlement Agreement against the City.

2        25.    The Court hereby grants final approval of the Settlement and, in

3    accordance with the terms of the Settlement, will enter judgment approving the

4    terms of the Settlement and ordering that the Action be dismissed in accordance

5    with the Settlement.  The Action will be dismissed on the merits with prejudice

6    on a class-wide basis.  The Named Plaintiffs' Released Claims, as set forth in the

7    Settlement, will be dismissed on the merits with prejudice.

8        26.    Without affecting the finality of the Judgment and this Order of

9    Final Approval, the Court retains exclusive and continuing jurisdiction over the

10   Action, Plaintiffs, all Class Members, and Defendants for purposes of

11   implementing and enforcing the Judgment, this Order of Final Approval, and the

12   Settlement, and for purposes of considering any future motion for reasonable

13   attorney's fees arising from a reasonable need to enforce the Settlement

14   Agreement against the City.  Nothing in the Judgment or this Order of Final

15   Approval precludes any action to enforce the Parties' obligations under the

16   Settlement or under the Judgment and this Order of Final Approval.

17       27.    With respect to the Gang Injunction Removal Procedures as set forth

18   in the Settlement, the Hon. Patrick J. Walsh, Magistrate Judge for the United

19   States District Court of the Central District of California, or, in the event of

20   Judge Walsh's unavailability, such other judicial officer as the Parties may agree

21   on and the Court may appoint, has the authority to conduct hearings pursuant to

22   Exhibit C of the Settlement through the conclusion of the four-year period of

23   implementation of the agreement and has the authority to resolve any differences

24   between the parties regarding implementation of those procedures.

25       28.    All personal information provided by class members in order to

26   participate in any portion of the settlement, including the Jobs and Education

27   program, Expedited Gang Injunction Removal process, tattoo removal, or any

28   other aspect of this Settlement, shall be used by the Parties solely for the

purposes of determining eligibility for settlement benefits and for providing those benefits, and shall not be shared with any other local, state, or federal law enforcement agencies or personnel or used for any other purpose. Such personal information includes, but is not limited to, name, address, date of birth, and social security number. Nothing in this paragraph shall preclude the Los Angeles Police Department or the City Attorney's Office from using or sharing this information as needed for the Expedited Gang Injunction Removal process.

29. If the Settlement does not become final and effective in accordance with the terms of the Settlement, this Order of Final Approval and all orders entered in connection herewith shall be vacated and shall have no further force or effect.

**IT IS SO ORDERED.**

DATED:     March 24, 2017

DOLLY M. GEE
UNITED STATES DISTRICT JUDGE

# Sobel Exhibit 6

1  Olu K. Orange, Esq. [S.B. #213653]
   ORANGE LAW OFFICES
2  3435 Wilshire Blvd., Suite 2900
   Los Angeles, California 90010
3  Telephone: (213) 736-9900
   Facsimile: (213) 417-8800
4  Email: oluorange@att.net

5  Dan Stormer, Esq. [S.B. #101967]
   Cindy Pánuco, Esq. [S.B. #266921]
6  Mohammad Tajsar, Esq. [S.B. #280152]
7  HADSELL, STORMER & RENICK LLP
   128 North Fair Oaks Avenue
8  Pasadena, California 91103-3645
   Telephone: (626) 585-9600
9  Facsimile: (626) 577-7079
   Email: dstormer@hadsellstormer.com
10         cpanuco@hadsellstormer.com
           mtajsar@hadsellstormer.com
11
   Attorneys for Plaintiffs
12
   [Additional counsel listed on next page]
13

14          **UNITED STATES DISTRICT COURT**
            **CENTRAL DISTRICT OF CALIFORNIA**
15

16  CHRISTIAN RODRIGUEZ,                )  Case No.: CV11-01135 DMG (JEMx)
17  ALBERTO CAZAREZ, individually       )
    and as class representatives        )  [Assigned to the Honorable Dolly M.
                                        )  Gee – Courtroom 7]
18                                      )
                          *Plaintiffs,* )  **COMPENDIUM OF EVIDENCE IN**
19       vs.                            )  **SUPPORT OF PLAINTIFFS'**
                                        )  **MOTION FOR ATTORNEY FEES**
20  CITY OF LOS ANGELES, CARMEN         )
21  TRUTANICH, CHARLES BECK,            )  **[VOLUME 5 OF 5]**
    ALLAN NADIR, ANGEL GOMEZ            )
22  AND DOES 1 THROUGH 10.              )  DATE:      December 2, 2016
                                        )  TIME:      2:00 p.m.
23                                      )  CRTRM:     7
                          *Defendants.* )
24                                      )  *[Filed concurrently herewith: 1) Pltfs'*
                                        )  *Mtn for Attorney's Fees; 2) Ntc of*
25                                      )  *Lodging; and, 3) [Proposed] Order]*
                                        )
26                                      )  Complaint Filed:   February 7, 2011
                                        )
27

28

| Exhibit | Description | Bates No(s). |
|---|---|---|
| | dated March 16, 2016 | |
| E | Declaration of Leticia M. Kimble, dated October 11, 2016 | 580 - 581 |
| F | Declaration of Christopher Tayback, dated October 5, 2016 | 582 - 583 |
| Acosta Decl. | Declaration of Yesenia Acosta in support of Plaintiffs' Motion for Attorney's Fees, signed October 13, 2016 | 584 |
| A | Receipts for Expenses of Public Counsel | 585 - 620 |
| Hake Decl. | Declaration of William Hake in support of Plaintiffs' Motion for Attorney's Fees, signed October 11, 2016 | 621- 624 |
| Litt Decl. | Declaration of Barry Litt in support of Plaintiffs' Motion for Attorney's Fees, signed October 11, 2016 | 625 - 657 |
| A | Curriculum Vitae of Barry Litt | 658 - 668 |
| B (Part 1) | Rate Information tables and non-public documents and cases | 669 -781 |
| **VOLUME 4** | | |
| B (Part 2) | Rate Information tables and non-public documents and cases | 782-1076 |
| **VOLUME 5** | | |
| Rohde Decl. | Declaration of Stephen F. Rohde in support of Plaintiffs' Motion for Attorney's Fees, signed October 10, 2016 | 1077 - 1080 |
| Sobel Decl. | Declaration of Carol A. Sobel in support of Plaintiffs' Motion for Attorney's Fees, signed October 13, 2016 | 1081 - 1102 |
| 1 | Curriculum Vitae of Carol Sobel | 1103 - 1111 |
| 2 | Order Granting Plaintiffs' Motion For Award Of Attorneys' Fees And Costs Against Defendant filed in *Long Beach Area Peace Network v. City of Long Beach*, dated July 10, 2012 | 1112 - 1119 |
| 3 | Civil Minute Order Granting Plaintiff's Motion for Attorneys' Fees and Liquidated Damages filed in *Avila v. LAPD, et al,* dated August 2, 2012 | 1120 - 1131 |

# DECLARATION OF CAROL A. SOBEL

I, CAROL A. SOBEL, declare:

1.    I am an attorney admitted to practice in the State of California and in the United States District Court for the Central District of California. I make this declaration in support of the concurrently filed motion for an award of attorneys' fees based on facts of which I have personal knowledge and if I were called to testify as a witness to these facts I could and would do so competently.

2.    I was admitted to the California Bar in December, 1978, following my graduation from law school in May of 1978. From January 1, 1977 until April 24, 1997, I was employed by the ACLU Foundation of Southern California. For the last seven years prior to my departure from the ACLU, I served as a Senior Staff Counsel. I resigned from the ACLU to begin a private civil rights practice in late April, 1997. I have received numerous awards for my work in the area of First Amendment litigation on behalf of the right to demonstrate and, more recently, on behalf of homeless persons. In 2007, I was awarded California Lawyer of the Year (CLAY) for civil rights. That same year, I was named by the Daily Journal legal newspaper as one of the 100 most influential lawyers in California. I have also been named by the Daily Journal as one of the top 75 women litigators in California multiple times. Most recently, I was included as one of the top 50 women lawyers in Southern California for 2014 by the Super Lawyers publication. I have been named a Super Lawyer in either the First Amendment, Constitutional Law, or Civil Rights category every year since 2004. I have been qualified as an expert in ethics and the practices of public-interest legal groups, including once before the State Bar and once in the Los Angeles Superior Court. A copy of my résumé is attached at Exhibit 1.

3.     I have presented at CLEs on attorney fees on several occasions, including training for attorneys at the Legal Aid Foundation of Los Angeles and the ACLU Foundation of Southern California.   My supporting fee declarations have been cited favorably by numerous courts, including, among others, in *Nadarajah v. Holder,* 569 F.3d 906, 916–917 (9th Cir. 2009); *Orantes-Hernandez v. Holder,* 713 F.Supp.2d 929, 963–964 (C.D.Cal. 2010); *Torrance Unified Sch. Dist. v. Magee,* CV 07-2164 CAS (Rzx) (C.D.Cal. 2008), [2008 U.S.Dist. Lexis 95074, 21]; *Atkins v. Miller,* CV-01-01574 DDP (C.D.Cal 2007); *Rauda v. City of Los Angeles,* cv 08-3128 CAS (C.D. Cal. 2010); *Jochimsen v. County of Los Angeles*, B223518 (2d Dist. June 23, 2011) (unpublished); *Dugan v. County of Los Angeles,* cv-11-08145 CAS (C.D. Cal. March 3, 2014); *Xue Lu v. United States*, 2014 U.S. Dist. LEXIS 77789 (C.D. Cal. May 23, 2014); *Flores v. City of Westminster*, SA-CV-11-0278 (C.D. Cal. 2014); and *Carrillo v. Schneider Logistics.,* awarding fees in Circuit Case No. 12-55042 (9th Cir. Apr. 2014), following the affirmance of a  preliminary injunction.  *See* 501 Fed. Appx. 713, 2012 U.S. App. LEXIS 26601 (9th Cir. Dec. 28, 2012).  In *Jochimsen*, the Court held that I was qualified as an expert on reasonable attorney rates in the Los Angeles legal market. Most recently, in *Hiken v. DOD*, 2016 U.S. App. LEXIS 16359, Case No. 13-17073 (9th Cir. Sept. 16, 2016), the Circuit held that the lower court erred in rejecting evidence of market rates presented in my declaration and reversed a fee award which significantly reduced the hourly rates sought.

4.     My current market rate is $925 an hour.  In 2015, I was awarded attorney fees in the Ninth Circuit at the rate of $875 an hour in *CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1098 (9th Cir. 2015).  This followed a decision on fees earlier last year in which the trial court reduced my requested 2014 rate of

$875 to $750 an hour without supporting evidence of a lower market rate. *Desertrain v. City of Los Angeles*, 10-cv-09053 RGK (C.D. Cal. 2015) [Dkt. 143]. Subsequently, I settled the fees in the *Desertrain* case for $1.1 million dollars, inclusive of the appellate fees, which were calculated with the lodestar rate of $875 an hour.  From 2014 to 2015, I kept the same rate because of the district court order in *Desertrain*.  In late November of last year, through a settlement conference in the district court, I resolved the fees in *Lavan v. City of Los Angeles*, 693 F.3d 1022 (9th Cir. 2012), at the full lodestar rate of $875 an hour.

5.     Although I often resolve fee awards through settlement, in the past few years, most of my fee awards resulted from contested motions.  In 2012 and 2013, I did not receive any fee awards; however, in 2012 I billed and was paid my then full rate of $795 an hour in a case in the Central District in which I was co-counsel for an outside director of a small bank sued by the Federal Deposit Insurance Corporation ("FDIC") in an attempt to recover investment losses. *Federal Deposit Insurance Company v. Faigin*, cv-12-03448 DDP.  This was a highly unusual situation for me and only the first time in about 15 years that I was paid a full hourly rate since I entered private practice 17 years ago, and only the fourth or fifth time I was paid at all on an hourly basis.  Nearly all of my cases are done on contingency for low income persons.

6.     In 2008, the federal district court approved the rate of $695 an hour for me in *Jones v. City of Los Angeles*. 444 F.3d 1118 (9th Cir. 2006), *vacated on settlement*, 505 F.3d 1006 (9th Cir. 2007).  The fee award was subsequently affirmed by the Ninth Circuit.  In 2009 I was awarded fees at $710 an hour in two contested fee motions.  The first award was in *Fitzgerald v. City of Los Angeles*,

2009 U.S. Dist. LEXIS 34803 (CD Cal. 2009). The second 2009 award was made in a hybrid class action, arising from a police action against a permitted immigration rally in MacArthur Park on May Day 2007, in which I was one of three class counsel appointed by the federal district court. *MIWON v. City of Los Angeles*, CV 07-7032 AHM, 2009 U.S. Dist. LEXIS 132270 (C.D. Cal. 6/24/09). Because the Ninth Circuit requires a lodestar cross-check before approving fees as a percentage of the settlement of a class action, Judge Matz specifically approved my rate. In 2010, I was awarded fees at $725 an hour in a contested fee motion in *Long Beach Area Peace Network v. City of Long Beach*, a First Amendment challenge to a permitting scheme. *See* 574 F.3d 1011 (9th Cir. 2009). A copy of the district court's order awarding fees, bearing the ECF headline, is attached at Exhibit 2.

7. Because I am a sole practitioner, I set my rate by comparison to lawyers of comparable skill and experience at other firms in the Los Angeles area, as I did when I was employed by the ACLU. When I was at the ACLU, I prepared numerous fee motions under federal and state fee-shifting statutes for cases in which the ACLU represented the prevailing party. I was responsible for preparing these motions both for cases where I was directly involved in the underlying litigation, as well as in cases brought by other staff attorneys and volunteer counsel for the ACLU. As part of this assignment, each year I would survey several law firms to obtain information on their current billing rates in order to establish rates for individuals of comparable experience to ACLU staff. I chose firms where the partners were extremely familiar with the experience levels of the various ACLU attorneys and had co-counseled cases with the ACLU. I have continued a similar

DECLARATION OF CAROL A. SOBEL IN SUPPORT OF MOTION FOR ATTORNEY FEES

4

**Sobel Decl.
Page 1084**

practice for fee motions in cases in which I serve as ACLU cooperating counsel and in my private practice.

8.      Since entering private practice, I review billing rates at firms the first time in each year I prepare a fee motion or enter into settlement discussions regarding fees to ascertain current market rates.  I make it a point to obtain rate information for attorneys in both larger law firms engaged in complex litigation, as well as smaller boutique civil rights law firms and public interest legal organizations.  I regularly review fee motions submitted by, and awards made to, the ACLU Foundation of Southern California, the Mexican America Legal Defense and Educational Fund ("MALDEF"), the Western Center on Law and Poverty, Public Counsel, the Disability Rights Legal Center, Disability Rights Advocates and other public interest groups that litigate in Los Angeles to determine what is being sought and awarded as market rates.  Although I frequently file a declaration in support of fee applications filed by these non-profit groups, I am usually not the only declarant.

9.      In all of the fee declarations that I prepare, I apply my understanding of the U.S. Supreme Court decision in *Blum v. Stenson*, 465 U.S. 886 (1984), that "rates charged in private representations may afford relevant comparisons." *Id.* at 895 fn. 11.  It is my understanding that the same principle is applied by the California Supreme Court.  *See  Folsom v. Butte County Ass'n of Govt's*, 32 Cal.3d 668 (1982).  I understand this to mean that fees for civil rights lawyers should approximate the rates charged by attorneys of comparable skill, experience and reputation in the relevant legal market, who are engaged in similarly complex litigation, regardless of whether the attorneys work for a non-profit, represent

DECLARATION OF CAROL A. SOBEL IN SUPPORT OF MOTION FOR ATTORNEY FEES

5

**Sobel Decl.
Page 1085**

individuals on contingency, serve as in-house counsel, or charge a minimal rate for paying clients with the possibility of receiving a market rate award if successful. *See also, Nadarajah v Holder,* 569 F3d at 910, and *Serrano v. Unruh,* 32 Cal.3d 621, 643 (1982).

10.    I apply several principles to establish reasonable market rates.  First, when available, I look to rates awarded to the attorney in previous cases because I understand that such awards are strong evidence of reasonable market rates.  *See Chaudhry v. City of Los Angeles*, 751 F3d 1096, 1111 (9th Cir. 2014); *U.S. v. $28,000 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015); *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 976 (9th Cir. 2008).  Next, I look to evidence of billing rates by other civil rights attorneys and those engaged in similarly complex business litigation as an approved method of establishing reasonable market rates for civil rights attorneys who do not regularly bill clients on an hourly basis.   This approach, approved by both the California and federal courts, recognizes that most civil rights attorneys are not paid hourly for their services at market rates.  *See e.g.,* Pearl, *California Attorney Fee Awards*, CEB 2012, §9.109 (2012).  Third, I apply the rule that the relative "simplicity" or "complexity" of a case is reflected in the efficiency of hours, not the lodestar rate of the attorney.  *See Van Skike v Director, Office of Workers' Compensation Programs,* 557 F3d 1041, 1046 (9th Cir. 2009).

11.    I estimate that I review dozens of fee motions, fee awards, and supporting declarations in the course of a year.  I obtain this information from recent court orders awarding statutory fees or fees as a discovery sanction.  I also subscribe to several legal news websites.  If I learn of a case where there is a fee

motion, I obtain a copy of the motion, supporting declarations and any fee award from public sources, including the Los Angeles Superior Court website or PACER.

12.     I am informed that fees are being sought for the following attorneys:

| PUBLIC COUNSEL | | |
| --- | --- | --- |
| **Attorney** | **Graduation** | **Rate** |
| Anne Richardson | 1989 | $825 |
| Alisa Hartz | 2012 | $375 |
| Dexter Rappleye | 2014 | $300 |

| HADSELL, STORMER & RENICK, LLP | | |
| --- | --- | --- |
| Dan Stormer | 1974 | $1075 |
| Anne Richardson | 1989 | $825 |
| Gladys Limon | 2003 | $625 |
| Reem Salahi | 2008 | $525 |
| Cindy Pánuco | 2009 | $500 |
| Acrivi Coromelas | 2012 | $375 |
| Caitlin McLeon | 2012 | $375 |
| Brian Olney | 2013 | $325 |

| LAW OFFICES OF OLU ORANGE | | |
| --- | --- | --- |
| Olu Orange | 1998 | $765 |

13.     In my experience, these rates are within the range of reasonable rates for comparably skilled and experienced attorneys in the Los Angeles legal market. As I discuss in more detail below, some of these rates are at the lower end of the civil rights and public interest attorneys rates, and all are well below market rates for attorneys of comparable experience and skill at commercial firms engaged in similarly complex federal litigation, including the rates these firms use in pro bono cases.

DECLARATION OF CAROL A. SOBEL IN SUPPORT OF MOTION FOR ATTORNEY FEES

7

**Sobel Decl.
Page 1087**

14.     I am personally familiar with the work of most of the attorneys for whom fees are sought by this motion.  Over the years, I have co-counseled cases with Dan Stormer, Anne Richardson, Gladys Limon, Reem Salahi and Olu Orange. Ms. Salahi worked with me before she joined Hadsell, Stormer & Renick (HSR). After she joined HSR, we continued to work on a case together.  The case, involving 11 students arrested during a protest of Israeli Ambassador Michael Oren's speech at University of California, Irvine, was known as the Irvine 11.  Mr. Stormer was also co-counsel on the case.  When Ms. Limon was a staff attorney at MALDEF, she was one of my co-counsel in the May Day class action, *MIWON v. City of Los Angeles*, discussed in paragraph 6, above.

15.     Olu Orange was also one of the co-counsel on the *MIWON* case. Although that is the only case we worked together on, I have had considerable opportunity to observe Mr. Orange's skill and experience as an attorney. We are both on the board on the National Lawyers Guild Los Angeles Chapter. He frequently calls me to discuss cases, as he did when he originally saw the gang injunction at issue in this case.  In addition, I have participated in moot courts for Ninth Circuit arguments for Mr. Orange. In my opinion, Olu Orange is exceptionally skilled for an attorney practicing only 18 years.  Moreover, I have litigated gang injunction issues, so I know what is required to reach the degree of success he achieved in this instance.  Approximately 14 years ago, I was counsel for individuals placed under a gang injunction related to MS-13.  Although I was able to get some of the language in the injunction modified, I was unsuccessful in lifting the injunction.  I also consulted with the ACLU when they began the challenge to the Orange County gang injunction at issue in *Vasquez v. Rackauckas*, 734 F.3d 1025 (9th Cir. 2013).

DECLARATION OF CAROL A. SOBEL IN SUPPORT OF MOTION FOR ATTORNEY FEES

8

**Sobel Decl.
Page 1088**

16.     I have considerable professional experience with Anne Richardson and Dan Stormer.   The first time that I recall co-counseling a case with Mr. Stormer was in 1986, when we were part of the legal team representing eight individuals arrested for alleged violations of the McCarthy-era McCarran-Walter Act, criminalizing entry into the United States by individuals who subscribed to "world communism."  The case was commonly known as "the LA Eight."   Most recently, Mr. Stormer, along with Barry Litt, Paul Hoffman and me, was appointed by this Court as class counsel in *Aichele v. City of Los Angeles*, 314 F.R.D. 476 (C.D. Cal. 2013).  I have also been present at CLEs that Dan Stormer has presented on trial skills.  In my experience as a member of the civil rights and public interest bar in Los Angeles for 38 years, he enjoys a reputation as a highly skilled and experienced attorney.

17.     I first became acquainted with Ms. Richardson in 1987, when she was a law clerk at the ACLU of Southern California and I was a staff attorney there. When she returned to Los Angeles after law school and was an attorney at Litt & Stormer, I became familiar with her work as a civil rights attorney working on many complex matters in the same arenas that I was working in.  Later, we were cocounsel, along with the ACLU, in *Fitzgerald v. City of Los Angeles*, 485 F. Supp. 2d 1137 (C.D. Cal. 2007), in which we sought and were granted an extension of an injunction initially entered in 2003 against the LAPD's "stop and frisk" policy on Skid Row.  *See Fitzgerald v. City of Los Angeles*, 2003 U.S. Dist. LEXIS 27382, CV 03-01876 NM (RZx) (C.D. Cal. 2003).   In my experience, Ms. Richardson is widely regarded as a highly skilled attorney.

18.     I also know Cindy Pánuco, Alisa Hartz, Dexter Rappleye, and Brian Olney, although I know each more by reputation than direct work experience.  I

have known Dexter Rappleye and Brian Olney since they were law students.  Both were summer law clerks with Paul Hoffman.  When Mr. Rappleye was a summer clerk with Mr. Hoffman, he prepared research memos on issues in several of the cases I co-counseled with Paul Hoffman at the time, including what later was filed as *Aichele*.

19.     The 2016 rates are warranted because the appropriate measure of the lodestar is the current market rate for an attorney of comparable skill, experience and reputation.  Several courts have recognized that annual increases in rates may well be more than any increase in the cost-of-living.  For example, in *Charlebois v. Angels Baseball, LP*, 2012 U.S. Dist. LEXIS 91069, cv 10-0853 DOC (C.D. Cal. May 30, 2012), Judge Carter rejected the defense's argument that the rate sought by Mr.  DeSimone of Schonbrun, DeSimone, Seplow, Harris & Hoffman should be limited to what he was awarded in prior years.  "[C]ourts routinely recognize that fee rates increase over time based on a variety of factors."  2012 U.S. Dist. LEXIS 91069, *24.   Judge Carter also cited to the decision by former federal Judge Collins in *Parker v. Vulcan Materials Co. Long Term Disability Plan*, No. EDCV 07-1512 ABC (OPx), 2012 WL 843623, *7 (C.D. Cal. Feb. 16, 2012), approving an increase of approximately 10 percent in one year because "[i]t is common practice for attorneys to periodically increase their rates for various reasons, such as to account for expertise gained over time, or to keep up with the increasing cost of maintaining a practice."

20.     This same principle was also applied by Judge Wilken of the Northern District of California in *Armstrong v. Brown*, 94-cv-002307 CW (N.D. Cal. Aug. 8, 2011) Dkt. #1919.  Responding to the State's argument that the proposed increases in rates from 2008 to 2010 for plaintiffs' attorneys were too great, the Court noted

DECLARATION OF CAROL A. SOBEL IN SUPPORT OF MOTION FOR ATTORNEY FEES

10

**Sobel Decl.
Page 1090**

that the 5 percent increase in rates each year "reflects only the across-the-board rise in firms' overall rates, not the increase in individual attorney's hourly rates for the additional experience accrued over the two-year period." *Id.* at *5. Among the evidence Judge Wilken cited to for this point was the declaration of Bingham McCutcheon attorney Geoffrey Holtz, pro bono counsel in *Armstrong*, and state regulations providing for "merit" increases beyond the annual salary schedule increase. *Id.* The net result in *Armstrong* was an increase of more than one-third for associates in two years.

21.    As further examples of courts approving significant annual increases in rates, I have provided a true and correct copy of the order in *Avila v. Los Angeles Police Department*, cv-11-01326 SJO (C.D. Cal. Aug. 2, 2012). *See* Exhibit 3. There, Judge Otero concluded that a reasonable 2012 rate for Matthew McNicholas, a 1997 graduate, was $700 an hour. Judge Otero rejected the defense assertion that Mr. McNicholas should only receive $650 an hour, noting that rates increase as attorneys gain more skills. *Id.* at pp.3-4. Significantly, the approved 2012 rate of $700 an hour for Mr. McNicholas supports the reasonableness of the rate now sought for Olu Orange. Mr. Orange has three years more experience now than Mr. McNicholas had when he was awarded $700 an hour. The difference of $65 an hour represents an annual increase of less than 3 percent a year.

22.    The pool of civil rights lawyers who graduated law school in the early 1970s, when Dan Stormer did, and are still practicing is significantly smaller than those who graduated even in 1978, when I graduated. I have relied more heavily on the rates sought or approved for attorneys at large firms who were engaged in pro bono civil rights litigation, usually with a public interest organization, to support the reasonableness of Dan Stormer's requested rate of $1075 an hour. I

DECLARATION OF CAROL A. SOBEL IN SUPPORT OF MOTION FOR ATTORNEY FEES

11

**Sobel Decl.
Page 1091**

have attached several declarations at Exhibit 10 and 11, providing commercial firm rates in addition to the Sullivan & Cromwell rates from *Franco-Gonzalez*. The Sullivan & Cromwell rates are set out in paragraph 37 and Exhibit 12, the declaration of Michael Steinberg, a 1986 law graduate and a partner at the firm. He attested that he applied his customary 2015 billing rate of $1,040 an hour. Mr. Stormer has 13 years more experience than Mr. Steinberg had in 2015. The other awards to pro bono firm counsel are discussed in paragraphs 40 and 41, below. I note that Mr. Stormer's requested rate is approximately 23 percent above the rate of $875 approved for me by the Ninth Circuit in 2015. With the five additional years of experience Dan Stormer has now, this is less than a five percent annual increase.

23.    The first fee award I discuss is the class-action *Communities Actively Living Free and Independent v. City of Los Angeles*, cv 09-0287 CBM (C.D. Cal. June 10, 2013) [Document #255]. A true and correct copy of the order in this case is attached at Exhibit 4. It is important to note that, although the order approving fees issued in mid-2013, the rates were 2012 rates as the settlement had been reached almost a year earlier but was delayed in being approved by the local government entities that were defendants in the case. *Id.* at ¶ 13.

24.    In *Communities Actively Living*, the Court approved rates for attorneys at Disability Rights Legal Center and Disability Rights Advocates, located in Northern California. Ex. 4, ¶8. The chart below shows the approved rate and graduation year for comparably experienced attorneys;this instant matter.

| Attorney | Graduation Year | Rate | Cite |
|---|---|---|---|
| Laurence Paradis | 1985 | $800 | Ex. 4 ¶6, p.5, l.14 |
| Michelle Uzeta | 1992 | $700 | Ex. 4 ¶6, p.5, l.8 |

| | | | |
|---|---|---|---|
| Shawna Parks | 1999 | $665 | Ex. 4 ¶5, p.4, l.11 |
| Katherine Weed | 2002 | $600 | Ex. 4, ¶6, p.5, l.2 |
| Jennifer Lee | 2003 | $550 | Ex. 4, ¶6, p.6, l.13 |
| Matthew Strugar | 2004 | $525 | Ex. 4, ¶6, p.6, l.11 |
| Mary-Lee Smith | 2005 | $555 | Ex. 4 ¶5, p.4, l.17 |
| Kara Janssen | 2010 | $330 | Ex. 4, ¶6, p.6, l.7 |

25. Anne Richardson has the same amount of experience in 2016 as Laurence Paradis had in 2012, when the fee award was approved in Exhibit 4. She seeks a rate that is only 3 percent above Mr. Paradis' 2012 rate of $800 an hour. Allowing for even a small increase of the base rate for inflation, this is effectively a stand-still rate. Olu Orange has five more years of experience than Shawna Parks had in 2012, when she was approved at $665 an hour as a 1999 law graduate. Mr. Orange's requested rate of $765 represents only a $20 an hour annual increase.

26. Some of the rates sought by this motion are below the comparable rates approved in 2012 in Exhibit 4. For example, Kara Janssen, who had two years of experience in 2012, was approved at $330 an hour. In the present fee motion, plaintiffs' counsel is requesting 10 percent less, or $300 an hour, for Dexter Rappleye who now has two years of experience. The same is true for Reem Salahi and Cindy Pánuco at HSR: with eight and seven years of experience, respectively, they are billing at the same rate approved for Matthew Strugar (8 years) and 10 percent below the rate approved for Mary-Lee Smith (7 years). With four more years of experience than Jennifer Lee had in 2012, when she billed at $550 an hour, Gladys Limon's requested rate of $625 an hour represents an annual increase of less than two percent over the rate approved for Lee.

27. I also reviewed the class-action fee award in *Charlebois v. Angels Baseball, Inc.*, 2012 U.S. Dist. LEXIS 91069, cv-10-0853 DOC (C.D. Cal. May, 2012). The lead firm in the case was Schonbrun, DeSimone, Seplow, Harris & Hoffman. I am very familiar with all of the attorneys at the firm, worked with Paul Hoffman when he was the legal director of the ACLU Foundation of Southern

DECLARATION OF CAROL A. SOBEL IN SUPPORT OF MOTION FOR ATTORNEY FEES

13

**Sobel Decl.
Page 1093**

California, and co-counsel cases with them regularly.  As noted in the decision, I provided a supporting declaration on market rates in the case.  *Id.* at p.7.  In *Charlebois*, the Court approved the following rates:

| Attorney | Graduation Year | Rate | Cite |
|---|---|---|---|
| V. James DeSimone | 1985 | $695 | p.4 |
| Michael Seplow | 1990 | $630 | p.4 |
| David Sarnoff | 2005 | $460 | p.5 |
| Amanda Canning | 2006 | $450 | p.4 |
| Menaka Fernando | 2010 | $325 | p.5 |

28.    Ms. Richardson has the same amount of experience as Mr. DeSimone had in 2012 in the *Charlebois* fee award.  Her 2016 rate of $825 represents an annual increase of 4.6 percent.  Ms. Pánuco's requested rate of $500 an hour is slightly more than a two percent annual increase over the rate approved for David Sarnoff, who had the amount of experience in 2012 as Ms. Pánuco has now.  The $325 an hour approved for Menaka Fernando in 2012 is more than is being sought now for Dexter Rappleye, with the same amount of experience as Ms. Fernando had in 2012.  Moreover, the rate approved for Ms. Fernando in 2012 is the same rate now sought for Brian Olney, who has an additional year of experience.

29.    I also reviewed the class action award in *G.F. v. Contra Costa County, et al.*, 2015 U.S. Dist. LEXIS 159597, C-13-03367 MEJ (N.D. Cal. Nov. 25, 2015).  The case was brought by Disability Rights Advocates ("DRA"), one of the counsel in Exhibit 4, and two other firms.  Although the case was brought in the Northern District, in my experience, attorneys in Southern California and San Francisco apply the same rates statewide in their litigation. The parity of rates in these two legal markets was noted in *Minor v. Christie*, 2011 U.S. Dist. LEXIS

9219, *22 [C-08-0545] (N.D. Cal. 2011) ("While the relevant community is San Francisco, and not Los Angeles or New York where the lawyers [in Minor] predominantly practice, the parties agree that the Los Angeles, San Francisco, and New York communities have comparable community rates."). The same is true for civil rights lawyers who practice statewide. *See e.g.*, Exhibit 5 (Declaration of Paradis, *LAUSD v. Garcia*, 09-cv-9289 VBF (C.D. Cal.), Ninth Circuit Case No. 10-55879), attesting that rates in the Central District are "generally comparable" to those in San Francisco and that "DRA does not make a distinction in its rates between Southern and Northern California cases." Ex. 5 ¶ 17, lines 7-10.

30. In *G.F.*, the Court approved class fees but did not set out individual rates in the order. 2015 U.S. Dist. LEXIS 159597, *33-35. I have provided the underlying declarations filed in support of the fee request. Attached at Exhibit 6 is a true and correct copy of the declaration of Mary-Lee Smith of DRA, setting out the 2014 rates for DRA attorneys as set forth below in paragraph 12:

| Attorney | Graduation Year | Rate |
|----------|-----------------|------|
| Laurence Paradis | 1985 | $845 |
| Shawna Parks | 1999 | $690 |
| Mary-Lee Smith | 2005 | $580 |
| Rebecca Williford | 2009 | $405 |
| Kara Janssen | 2010 | $370 |
| Ann Kelsey | 2012 | $325 |

31. The rates sought by this motion are comparable to the rates approved in Exhibit 5. In 2014, Shawna Parks had 12 years less experience than Anne Richardson has now. The $130 an hour differential in their rates represents barely $10 an hour annual differential. Ms. Parks' approved rate of $690 an hour also

DECLARATION OF CAROL A. SOBEL IN SUPPORT OF MOTION FOR ATTORNEY FEES

15

supports the reasonableness of the rate sought by Olu Orange, who has three years of experience more than Ms. Parks had in 2014. The 10 percent difference in their rates is just slightly more than a three percent annual increase. The rates for the less experienced attorneys are also comparable in this motion and in Exhibit 6. For example, Kara Janssen a 2010 law graduate, was approved at $370 an hour in 2014. Acrivi Coromelas and Caitlin McLeon, both with four years of experience, are requesting $375 an hour for 2016. Similarly, Ann Kelsey, with 2 years experience in 2014, was approved at a rate $25 an hour higher than the rate now sought for Dexter Rappleye, also with two years of experience. Ms. Kelsey's 2014 rate of $325 an hour is the same rate now sought for Brian Olney, who has one additional year of experience.

32. I note that in Exhibit 6, Mr. Paradis' rate increased just under five percent over two years from 2012 to 2014. In my opinion, this is a below market level of annual increases. To contrast, my own rate has increased $130 an hour, or 16 percent, since 2012.

33. The rates sought and awarded in disability rights cases are consistent with the market rates for other types of similarly complex civil rights litigation. For example, in 2014 in *Rodriguez v. County of Los Angeles*, cv-10-6342 CBM, the Court awarded fees to the law firm of Kaye, McLane, Bednarski & Litt ("KMBL") in an excessive force case involving several inmates at the Los Angeles County jail. A true and correct copy of the order in *Rodriguez* is attached at Exhibit 7. The 2014 approved fees for KMBL, set forth at p.14, are as follows:

| Attorney | Graduation Year | Rate |
|---|---|---|
| Barry Litt | 1969 | $975 |
| Ronald Kaye | 1988 | $775 |

DECLARATION OF CAROL A. SOBEL IN SUPPORT OF MOTION FOR ATTORNEY FEES

16

**Sobel Decl.
Page 1096**

| David McLane | 1986 | $775 |
| Kevin LaHue | 2004 | $600 |
| Caitlin Weisberg | 2008 | $500 |

34.     The rates approved in *Rodriguez* support the reasonableness of the rates sought by this motion.  For example, Ron Kaye, a 1988 law graduate, was awarded fees at $775 an hour in 2014.  Anne Richardson, with one more year of experience, requests $825, which represents an annual increase of just slightly over three percent from Mr. Kaye's 2014 rate.  The rate for Reem Salahi, a 2008 law graduate, is only five percent above the rate approved two years ago in *Rodriguez* for Caitlin Weisberg, also a 2008 law graduate.

35.     Another example of comparable market rates is provided in *Franco-Gonzalez v. Holder*, 10-cv-02211-DMG (C.D. Cal. 2015) (Doc. 838).  Attached at Exhibit 8 is a true and correct copy of the declaration I submitted in support of the market rates for attorneys from the ACLU, several other public interest firms and pro bono counsel from Sullivan & Cromwell.  Based on my review of the case docket on PACER, I understand that the parties settled the fees after the motion was filed and that this Court then approved the fees in the course of approving the class-action settlement.

36.     Among those for whom fees were sought in *Franco* was a preeminent disability rights litigator, James Preis of Mental Health Advocacy Services, at the 2014 rate of $850 an hour. Mr. Preis and I graduated law school the same year and I have known him for approximately 36 years.  *Franco* involved market rates fees under the Rehabilitation Act and EAJA enhanced rates. Ex. 8, pp. 3-5. The Rehabilitation Act rates for the primary public interest attorneys are as follows:

Attorney                Graduation Year              Rate

DECLARATION OF CAROL A. SOBEL IN SUPPORT OF MOTION FOR ATTORNEY FEES

17

232

**Sobel Decl.
Page 1097**

| | | |
|---|---|---|
| James Preis | 1978 | $875 |
| Judy Rabinovitz | 1985 | $825 |
| Judy London | 1990 | $775 |
| Matt Adams | 1998 | $710 |
| A. Arulanantham | 1999 | $690 |
| Victoria Lopez | 2001 | $640 |
| Sean Riordan | 2007 | $535 |
| Marisol Orihuela | 2008 | $510 |
| Victor Leung | 2009 | $490 |
| Thea Bernas | 2011 | $450 |
| Sofia Corona | 2014 | $340 |

37.    The rates for pro bono counsel Sullivan & Cromwell were substantially higher.  Michael Steinberg, the partner assigned to the case and a 1986 law graduate, applied his 2015 customary billing rate of $1040 an hour. Ex. 8, p.3.  Other Sullivan & Cromwell rates are set forth below:

| Attorney | Graduation Year | Rate |
|---|---|---|
| Shawn Lichaa | 2007 | $865 |
| Asel Aliyasova | 2008 | $850 |
| Alexa Lawson-Remer | 2009 | $800 |
| Michael Murtagh | 2010 | $750 |

38.    The reasonableness of the rate requested by Olu Orange is supported by the 2012 rate of $700 an hour to Matthew McNicholas in *Avila*, a single plaintiff employment discrimination case.  *See* Exhibit 3.  It is also supported by the 2015 rate of $710 an hour to Matt Adams in *Franco-Gonzalez*.   I provided a supporting fee declaration in *Franco-Gonzalez*.   See Exhibit 8.    Although I

DECLARATION OF CAROL A. SOBEL IN SUPPORT OF MOTION FOR ATTORNEY FEES

18

**Sobel Decl.
Page 1098**

understand from reviewing the Court's docket that the parties reached a settlement of the attorney fees after the motion was filed, the court, nonetheless, reviewed the propriety of the fees in approving the final settlement of the class action.   The requested rate for Mr. Orange is also supported by the 2016 award of $790 an hour to Rob Hennig, a 1994 law graduate, in an employment discrimination case in Los Angeles Superior Court.   A true and correct copy of the fee award to Mr. Hennig, affirming his rate, is attached at Exhibit 9.

39.   The requested rates are also well more than 25 percent below the rates applied in civil rights cases by comparably experienced attorneys at commercial firms serving as pro bono counsel. To illustrate this point, in *Los Angeles Unified School District v. Garcia*, 41 F.3d 922 (9th Cir. 2014), DRLC's co-counsel at Milbank, Tweed, Hadley & McCoy, LLP, Hannah Cannom, also filed a declaration in support of t fee motion.   A copy of the Cannom declaration, with the ECF filing header, is attached at Exhibit 10.   Attorney Cannom, a 2006 graduate, averred that her rate for 2014 was $800 an hour. Ex. 10, ¶¶ 2, 6.  She also averred that the 2014 rates for the other Milbank Tweed attorneys in the case were $1,135 an hour for Daniel Perry, a partner then with 15 years of experience (¶7); $900 an hour for Delilah Vinzon, of counsel then with 11 years of experience (¶8); and $760 an hour for a 2008 graduate (¶10).   In *Franco-Gonzalez*, Michael Steinberg, the Sullivan & Cromwell partner on the case and a 1986 law graduate, applied his 2015 customary billing rate of $1040 an hour.   Ex. 8, p.3.

40.   In *Jones v. Upland Housing Authority*, EDCV 12-2074 VAP (C.D. Cal. Feb. 24, 2014), Sidley Austin served as co-counsel with public interest attorneys at the Western Center on Law and Poverty.   Amy Lally, a partner at the firm who worked on the case, submitted a declaration in support of the plaintiffs'

DECLARATION OF CAROL A. SOBEL IN SUPPORT OF MOTION FOR ATTORNEY FEES

19

**Sobel Decl.
Page 1099**

motion for attorney fees. A true and correct copy of the Lally declaration is attached at Exhibit 11. Ms. Lally attested that she is a 1998 law graduate and that her customary billing rate was $700 an hour for 2012 and $825 for 2014. Ex. 11, ¶7. This is an increase of almost 20 percent in two years. With only 16 years of experience, slightly more than a third of the time Mr. Stormer has been practicing, Ms. Lally's 2014 rate of $825 an hour was only 30 percent below Mr. Stormer's requested rate. No doubt, Sidley's rates have increased significantly in the past two years. In fact, since Sidley's rate for Ms. Lally increased 20 percent in two years, I would expect her current rate is higher than Mr. Stormer's.

41. As my résumé demonstrates, I have taught at Loyola Law School since 2007. I also supervised staff attorneys at the ACLU and the ACLU law clerk program when I was a Senior Staff Counsel. Approximately 30-40 law students were externs each summer. Many of these students now do public interest work, whether as staff or pro bono counsel. In addition, I have supervised large-scale pro bono programs involving young lawyers and law students. For example, in the 1980s, I worked with public interest lawyers in Atlanta and coordinated representation for more than 600 Mariel Cubans who were transferred to the federal prisons at Lompoc and Terminal Island for due process hearings after the Atlanta Federal Penitentiary and another facility were destroyed. A decade ago, I also coordinated attorneys at private firms and public interest groups in representing approximately 5,000 students across Southern California who were criminally charged with truancy and other offenses when they walked out of school to protest then-pending federal immigration legislation. More recently, I have coordinated pro bono representation for individuals arrested in large demonstrations in the City. Over 35 years, I have co-counseled cases with dozens

DECLARATION OF CAROL A. SOBEL IN SUPPORT OF MOTION FOR ATTORNEY FEES

20

**Sobel Decl.
Page 1100**

of attorneys at the ACLU, other public interest law groups and private law firms. Currently, I help coordinate volunteer law students and attorneys at two monthly clinics that provide pro bono representation for homeless individuals issued so-called "quality of life" citations on Skid Row and in Venice. All of this has provided me with extensive and unparalleled experience with which to evaluate the skill and experience of attorneys in the Los Angeles legal market. Moreover, many members of the current civil rights bar in Los Angeles participated in the externships and activities described above.

42. In my experience over the last nearly 40 years, there are very few attorneys in Los Angeles who would be willing and capable of taking on a case such as this. Other than the well-funded public interest legal organizations, there are very few private civil rights lawyers who handle cases of this magnitude. Based on my own experience with the MS-13 gang injunction and what I learned through preparing supporting fee declarations at each stage of the litigation about the amount of time that the ACLU spent prosecuting the Orange County gang injunction at issue in *Vasquez,* I am aware of what is required to achieve the result that Plaintiffs' counsel did in this instance. In light of that, I would not have taken on this case in view of my own caseload over the past several years.

43. I understand that Plaintiffs are requesting a multiplier on their fees under California fee-shifting law. A state-law multiplier is available to plaintiffs who succeed on both federal and state claims. *Chaudhry v. City of Los Angeles*, 2014 U.S. App. LEXIS 9208, *39-40 (9th Cir. 2014). In this instance, plaintiffs' counsel achieved exceptional results in a highly undesirable case. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

DECLARATION OF CAROL A. SOBEL IN SUPPORT OF MOTION FOR ATTORNEY FEES

21

**Sobel Decl.
Page 1101**

44.   *Ketchum v. Moses*, set the rules for a multiplier under California law. A multiplier is assessed by "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." 24 Cal. 4th at 1132. "A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services." *Id.* at 1132-33, citing Posner, Economic Analysis of the Law, 534, 567 (4th ed. 1992).

45.   In my experience, a substantial multiplier of at least two times the lodestar is expected to account for contingent risk and the complexity of the case, among other factors.  *See e.g., Fadhl v. City and County of San Francisco*, 859 F.2d 649, 650 (9th Cir. 1988) ("contingent fees that yield approximately two times the ordinary hourly rate for time expended is the return expected by lawyers in the relevant market"); *Wing v. Asarco, Inc.*, 114 F.3d 986, 989 (9th Cir. 1997) (2.0 multiplier for the risk of loss); *Crommie v. California Public Utilities Commission*, 840 F. Supp. 719 (N.D. Cal. 1994), *aff 'd sub nom, Mangold v. California Public Utilities Commission*, 67 F.3d 1470 (9th Cir. 1995) (contingent-risk enhancement of 2.0 under California substantive law); *Chabner v. United of Omaha Life Insurance Company*, 1999 WL 33227443 (N.D. Cal. 1999) (2.0 multiplier under Ca. Civ. Code §52.1).

I declare under penalty of perjury that the foregoing is true and correct. Executed this 13th day of October, 2016 at Los Angeles, California.

CAROL A. SOBEL

DECLARATION OF CAROL A. SOBEL IN SUPPORT OF MOTION FOR ATTORNEY FEES

22

237

**Sobel Decl.
Page 1102**

Sobel Exhibit 7

238

# $1,000 Per Hour Isn't Rare Anymore; Nominal billing levels rise, but discounts ease blow.

The National Law Journal

January 13, 2014 Monday

Copyright 2014 ALM Media Properties, LLC All Rights Reserved Further duplication without permission is prohibited

## THE NATIONAL LAW JOURNAL

**Section:** NLJ'S BILLING SURVEY; Pg. 1; Vol. 36; No. 20

**Length:** 1860 words

**Byline:** KAREN SLOAN

> **Body**

As recently as five years ago, law partners charging $1,000 an hour were outliers. Today, four-figure hourly rates for indemand partners at the most prestigious firms don't raise eyebrows-and a few top earners are closing in on $2,000 an hour.

These rate increases come despite hand-wringing over price pressures from clients amid a tough economy. But everrising standard billing rates also obscure the growing practice of discounts, falling collection rates, and slow march toward alternative fee arrangements.

Nearly 20 percent of the firms included in The National Law Journal's annual survey of large law firm billing rates this year had at least one partner charging more than $1,000 an hour. Gibson, Dunn & Crutcher partner Theodore Olson had the highest rate recorded in our survey, billing $1,800 per hour while representing mobile satellite service provider LightSquared Inc. in Chapter 11 proceedings.

Of course, few law firm partners claim Olson's star power. His rate in that case is nearly the twice the $980 per hour average charged by Gibson Dunn partners and three times the average $604 hourly rate among partners at NLJ 350 firms. Gibson Dunn chairman and managing partner Ken Doran said Olson's rate is "substantially" above that of other partners at the firm, and that the firm's standard rates are in line with its peers.

"While the majority of Ted Olson's work is done under alternative billing arrangements, his hourly rate reflects his stature in the legal community, the high demand for his services and the unique value that he offers to clients given his extraordinary experience as a former solicitor general of the United States who has argued more than 60 cases before the U.S. Supreme Court and has counseled several presidents," Doran said.

In reviewing billing data this year, we took a new approach, asking each firm on the NLJ 350-our survey of the nation's 350 largest firms by attorney headcount-to provide their highest, lowest and average billing rates for associates and partners. We supplemented those data through public records. All together, this year's survey includes information for 159 of the country's largest law firms and reflects billing rates as of October.

The figures show that, even in a down economy, hiring a large law firm remains a pricey prospect. The median among the highest partner billing rates reported at each firm is $775 an hour, while the median low partner rate is $405. For associates, the median high stands at $510 and the low at $235. The average associate rate is $370.

Multiple industry studies show that law firm billing rates continued to climb during 2013 despite efforts by corporate counsel to rein them in. TyMetrix's 2013 Real Rate Report Snapshot found that the average law firm billing rate increased by 4.8 percent compared with 2012. Similarly, the Center for the Study of the Legal Profession at the Georgetown University Law Center and Thomson Reuters Peer Monitor found that law firms increased their rates by an average 3.5 percent during 2013.

Of course, rates charged by firms on paper don't necessarily reflect what clients actually pay. Billing realization rates-which reflect the percentage of work billed at firms' standard rates- have fallen from 89 percent in 2010 to nearly 87 percent in 2013 on average, according to the Georgetown study. When accounting for billed hours actually collected by firms, the realization rate falls to 83.5 percent.

"What this means, of course, is that- on average-law firms are collecting only 83.5 cents for every $1.00 of standard time they record," the Georgetown report reads. "To understand the full impact, one need only consider that at the end of 2007, the collected realization rate was at the 92 percent level."

In other words, law firms set rates with the understanding that they aren't likely to collect the full amount, said Mark Medice, who oversees the Peer Monitor Index. That index gauges the strength of the legal market according to economic indicators including demand for legal services, productivity, rates and expenses. "Firms start out with the

$1,000 Per Hour Isn't Rare Anymore; Nominal billing levels rise, but discounts ease blow.

idea of, 'I want to achieve a certain rate, but it's likely that my client will ask for discounts whether or not I increase my rate,'" Medice said.

Indeed, firms bill nearly all hourly work at discounts ranging from 5 percent to 20 percent off standard rates, said Peter Zeughauser, a consultant with the Zeughauser Group. Discounts can run as high as 50 percent for matters billed under a hybrid system, wherein a law firm can earn a premium for keeping costs under a set level or for obtaining a certain outcome, he added. "Most firms have gone to a two-tier system, with what is essentially an aspirational rate that they occasionally get and a lower rate that they actually budget for," he said.

Most of the discounting happens at the front end, when firms and clients negotiate rates, Medice said. But additional discounting happens at the billing and collections stages. Handling alternative fee arrangements and discounts has become so complex that more than half of the law firms on the Am Law 100-NLJ affiliate The American Lawyer's ranking of firms by gross revenue-have created new positions for pricing directors, Zeughauser said.

THE ROLE OF GEOGRAPHY

Unsurprisingly, rates vary by location. Firms with their largest office in New York had the highest average partner and associate billing rates, at $882 and $520, respectively. Similarly, TyMetrix has reported that more than 25 percent of partners at large New York firms charge $1,000 per hour or more for contracts and commercial work.

Washington was the next priciest city on our survey, with partners charging an average $748 and associates $429. Partners charge an average $691 in Chicago and associates $427. In Los Angeles, partners charge an average $665 while the average associate rate is $401.

Pricing also depends heavily on practice area, Zeughauser and Medice said. Bet-the-company patent litigation and white-collar litigation largely remain at premium prices, while practices including labor and employment have come under huge pressure to reduce prices.

"If there was a way for law firms to hold rates, they would do it. They recognize how sensitive clients are to price increases," Zeughauser said. But declining profit margins-due in part to higher technology costs and the expensive lateral hiring market-mean that firms simply lack the option to keep rates flat, he said.

BILLING SURVEY METHODOLOGY

The National Law Journal's survey of billing rates of the largest U.S. law firms provides the high, low and average rates for partners and associates.

The NLJ asked respondents to its annual survey of the nation's largest law firms (the NLJ 350) to provide a range of hourly billing rates for partners and associates as of October 2013.

For firms that did not supply data to us, in many cases we were able to supplement billing-rate data derived from public records.

In total, we have rates for 159 of the nation's 350 largest firms.

Rates data include averages, highs and low rates for partners and associates. Information also includes the average full-time equivalent (FTE) attorneys at the firm and the city of the firm's principal or largest office.

We used these data to calculate averages for the nation as a whole and for selected cities.

Billing Rates at the Country's Priciest Law Firms

Here are the 50 firms that charge the highest average hourly rates for partners.

### Billing Rates at the Country's Priciest Law Firms

| FIRM NAME | LARGEST U.S. OFFICE* | AVERAGE FULL-TIME EQUIVALENT ATTORNEYS* | PARTNER HOURLY RATES | | | ASSOCIATE HOURLY RATES | | |
|---|---|---|---|---|---|---|---|---|
| | | | AVERAGE | HIGH | LOW | AVERAGE | HIGH | LOW |
| Debevoise & Plimpton | New York | 615 | $1,055 | $1,075 | $955 | $490 | $760 | $120 |
| Paul, Weiss, Rifkind, Wharton & Garrison | New York | 803 | $1,040 | $1,120 | $760 | $600 | $760 | $250 |
| Skadden, Arps, Slate, Meagher & Flom | New York | 1,735 | $1,035 | $1,150 | $845 | $620 | $845 | $340 |
| Fried, Frank, Harris, Shriver & Jacobson | New York | 476 | $1,000 | $1,100 | $930 | $595 | $760 | $375 |

* Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. For complete numbers, please see NLJ.com.
** Firm did not exist in this form for the entire year.

Lisa Damm

$1,000 Per Hour Isn't Rare Anymore; Nominal billing levels rise, but discounts ease blow.

| FIRM NAME | LARGEST U.S. OFFICE* | AVERAGE FULL-TIME EQUIVALENT ATTORNEYS* | PARTNER HOURLY RATES | | | ASSOCIATE HOURLY RATES | | |
|---|---|---|---|---|---|---|---|---|
| | | | AVERAGE | HIGH | LOW | AVERAGE | HIGH | LOW |
| Latham & Watkins | New York | 2,033 | $990 | $1,110 | $895 | $605 | $725 | $465 |
| Gibson, Dunn & Crutcher | New York | 1,086 | $980 | $1,800 | $765 | $590 | $930 | $175 |
| Davis Polk & Wardwell | New York | 787 | $975 | $985 | $850 | $615 | $975 | $130 |
| Willkie Farr & Gallagher | New York | 540 | $950 | $1,090 | $790 | $580 | $790 | $350 |
| Cadwalader, Wickersham & Taft | New York | 435 | $930 | $1,050 | $800 | $605 | $750 | $395 |
| Weil, Gotshal & Manges | New York | 1,201 | $930 | $1,075 | $625 | $600 | $790 | $300 |
| Quinn Emanuel Urquhart & Sullivan | New York | 697 | $915 | $1,075 | $810 | $410 | $675 | $320 |
| Wilmer Cutler Pickering Hale and Dorr | Washington | 961 | $905 | $1,250 | $735 | $290 | $695 | $75 |
| Dechert | New York | 803 | $900 | $1,095 | $670 | $530 | $735 | $395 |
| Andrews Kurth | Houston | 348 | $890 | $1,090 | $745 | $528 | $785 | $265 |
| Hughes Hubbard & Reed | New York | 344 | $890 | $995 | $725 | $555 | $675 | $365 |
| Irell & Manella | Los Angeles | 164 | $890 | $975 | $800 | $535 | $750 | $395 |
| Proskauer Rose | New York | 746 | $880 | $950 | $725 | $465 | $675 | $295 |
| White & Case | New York | 1,900 | $875 | $1,050 | $700 | $525 | $1,050 | $220 |
| Morrison & Foerster | San Francisco | 1,010 | $865 | $1,195 | $595 | $525 | $725 | $230 |
| Pillsbury Winthrop Shaw Pittman | Washington | 609 | $865 | $1,070 | $615 | $520 | $860 | $375 |
| Kaye Scholer | New York | 414 | $860 | $1,080 | $715 | $510 | $680 | $320 |
| Kramer Levin Naftalis & Frankel | New York | 320 | $845 | $1,025 | $740 | $590 | $750 | $400 |
| Hogan Lovells | Washington | 2,280 | $835 | $1,000 | $705 | - | - | - |
| Kasowitz, Benson, Torres & Friedman | New York | 365 | $835 | $1,195 | $600 | $340 | $625 | $200 |
| Kirkland & Ellis | Chicago | 1,517 | $825 | $995 | $590 | $540 | $715 | $235 |
| Cooley | Palo Alto | 632 | $820 | $990 | $660 | $525 | $630 | $160 |
| Arnold & Porter | Washington | 748 | $815 | $950 | $670 | $500 | $610 | $345 |
| Paul Hastings | New York | 899 | $815 | $900 | $750 | $540 | $755 | $335 |
| Curtis, Mallet-Prevost, Colt & Mosle | New York | 322 | $800 | $860 | $730 | $480 | $785 | $345 |
| Winston & Strawn | Chicago | 842 | $800 | $995 | $650 | $520 | $590 | $425 |
| Bingham McCutchen | Boston | 900 | $795 | $1,080 | $220 | $450 | $605 | $185 |
| Akin Gump Strauss Hauer & Feld | Washington | 806 | $785 | $1,220 | $615 | $525 | $660 | $365 |
| Covington & Burling | Washington | 738 | $780 | $890 | $605 | $415 | $565 | $320 |

$1,000 Per Hour Isn't Rare Anymore; Nominal billing levels rise, but discounts ease blow.

| FIRM NAME | LARGEST U.S. OFFICE* | AVERAGE FULL-TIME EQUIVALENT ATTORNEYS* | PARTNER HOURLY RATES | | ASSOCIATE HOURLY RATES | | | |
|---|---|---|---|---|---|---|---|---|
| | | | AVERAGE | HIGH | LOW | AVERAGE | HIGH | LOW |
| King & Spalding | Atlanta | 838 | $775 | $995 | $545 | $460 | $735 | $125 |
| Norton Rose Fulbright | N/A** | N/A** | $775 | $900 | $525 | $400 | $515 | $300 |
| DLA Piper | New York | 4,036 | $765 | $1,025 | $450 | $510 | $750 | $250 |
| Bracewell & Giuliani | Houston | 432 | $760 | $1,125 | $575 | $440 | $700 | $275 |
| Baker & McKenzie | Chicago | 4,004 | $755 | $1,130 | $260 | $395 | $925 | $100 |
| Dickstein Shapiro | Washington | 308 | $750 | $1,250 | $590 | $475 | $585 | $310 |
| Jenner & Block | Chicago | 432 | $745 | $925 | $565 | $465 | $550 | $380 |
| Jones Day | New York | 2,363 | $745 | $975 | $445 | $435 | $775 | $205 |
| Manatt, Phelps & Phillips | Los Angeles | 325 | $740 | $795 | $640 | - | - | - |
| Seward & Kissel | New York | 152 | $735 | $850 | $625 | $400 | $600 | $290 |
| O'Melveny & Myers | Los Angeles | 738 | $715 | $950 | $615 | - | - | - |
| McDermott Will & Emery | Chicago | 1,024 | $710 | $835 | $525 | - | - | - |
| Reed Smith | Pittsburgh | 1,468 | $710 | $945 | $545 | $420 | $530 | $295 |
| Dentons | N/A** | N/A** | $700 | $1,050 | $345 | $425 | $685 | $210 |
| Jeffer Mangels Butler & Mitchell | Los Angeles | 126 | $690 | $875 | $560 | - | - | - |
| Sheppard, Mullin, Richter & Hampton | Los Angeles | 521 | $685 | $875 | $490 | $415 | $535 | $275 |
| Alston & Bird | Atlanta | 805 | $675 | $875 | $495 | $425 | $575 | $280 |

THE FOUR-FIGURE CLUB
These 10 firms posted the highest partner billing rates.
**THE FOUR-FIGURE CLUB**

| | |
|---|---|
| Gibson, Dunn & Crutcher | $1,800 |
| Dickstein Shapiro | $1,250 |
| Wilmer Cutler Pickering Hale and Dorr | $1,250 |
| Akin Gump Strauss Hauer & Feld | $1,220 |
| Kasowitz, Benson, Torres & Friedman | $1,195 |
| Morrison & Foerster | $1,195 |
| Skadden, Arps, Slate, Meagher & Flom | $1,150 |
| Baker & McKenzie | $1,130 |
| Bracewell & Giuliani | $1,125 |
| Paul, Weiss, Rifkind, Wharton & Garrison | $1,120 |

Contact Karen Sloan at ksloan@alm.com

**Classification**

**Language:** ENGLISH

**Publication-Type:** Newspaper

**Subject:** POLLS & SURVEYS (90%); LEGAL SERVICES (90%); MAJOR US LAW FIRMS (90%); LAW FIRM BILLABLE RATES (90%); LAWYERS (89%); LAW PRACTICE (89%); LAW FIRM BILLABLE HOURS (78%); ECONOMIC CONDITIONS (76%); CORPORATE COUNSEL (73%); US CHAPTER 11 BANKRUPTCY (73%); LAW COURTS & TRIBUNALS (68%); SATELLITE TECHNOLOGY (67%); SUPREME COURTS (63%)

**Company:** GIBSON DUNN & CRUTCHER LLP (93%); LIGHTSQUARED INC (83%)

Lisa Damm

# Sobel Exhibit 8

243

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.: <u>CV 11-01326 SJO (FMOx)</u>         DATE: <u>August 2, 2012</u>

TITLE:         <u>Leonard Avila v. Los Angeles Police Department, et al.</u>

=========================================================================

PRESENT: **THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                                   Not Present
Courtroom Clerk                                    Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**         **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                        Not Present

=========================================================================

**PROCEEDINGS (in chambers): ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND LIQUIDATED DAMAGES** [Docket No. 170]

This matter is before the Court on Plaintiff Leonard Avila's ("Plaintiff") Motion for Attorneys' Fees and Liquidated Damages ("Motion"), filed May 3, 2012. Defendants Los Angeles Police Department ("LAPD"), City of Los Angeles, and Commander Stuart Maislin (collectively, "Defendants") filed an Opposition ("Opposition") on May 14, 2012, to which Plaintiff submitted a Reply ("Reply") on May 21, 2012. On May 14, 2012, Defendants filed a Request for Judicial Notice ("RJN") to which Plaintiff filed no objection. Therefore, the Request for Judicial notice is GRANTED. The Court found the matter suitable for disposition without oral argument and vacated the hearing set for June 4, 2012. *See* Fed. R. Civ. P. 78(b). For the following reasons, Plaintiff's Motion is GRANTED IN PART and DENIED IN PART.

I.      <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

The instant action was brought under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 215(a)(3). Plaintiff is a former police officer employed by Defendant LAPD, and was terminated after he testified in the trial of a coworker regarding FLSA violations in his department. (Mot. 1, May 3, 2012, ECF No. 170.) On April 4, 2012, a unanimous jury determined that Plaintiff's termination was retaliatory, in violation of § 215(a)(3) of the FLSA. (Mot. 1.) Remedies are set forth in 29 U.S.C. § 216(b): "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Plaintiff also seeks liquidated damages in the amount of his jury award of $50,000. (Mot. 11.) Section 216(b) authorizes liquidated damages to plaintiffs prevailing on § 215(a)(3) claims:

> Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title,

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 11-01326 SJO (FMOx)</u>    **DATE:** <u>August 2, 2012</u>

> including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.

29 U.S.C. § 216(b).

Plaintiff's Motion seeks a total of $748,522.50 in attorneys' fees, and liquidated damages of $50,000. (Mot. 14.) Defendants filed an Opposition, arguing that Plaintiff's calculations are inaccurate and that the attorneys' fees requested are excessive and unreasonable. (*See generally* Opp'n, May 14, 2012, ECF No.186.) Defendants also argue that Plaintiff is not entitled to liquidated damages. (Opp'n 15-19.) Plaintiff's Reply argues that his request is reasonable and that there is no basis for reducing the requested attorneys' fees. (*See generally* Reply, May 21, 2012, ECF No. 194.) Plaintiff also argues that liquidated damages are mandatory because Defendants do not have a "good faith" defense. (Reply 5.)

II.    DISCUSSION

    A.    <u>Plaintiff's Request for Attorney's Fees</u>

Section 216(b) authorizes the payment of attorneys' fees by a defendant when a plaintiff is successful in bringing a FLSA claim. 29 U.S.C. § 216(b). The Court holds that Plaintiff is thus entitled to such a recovery and now determines the appropriate amount. The district court uses the lodestar method to determine the appropriate amount of attorneys' fees. *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). Courts calculate the lodestar figure by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate for the region and for the experience of the attorney. *City of Riverside v. Rivera*, 477 U.S. 561, 568-69 (1986); *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009).

Plaintiffs have used the lodestar method to reach a total of $748,522.50 in attorneys' fees. (Mot. 4-5.) The Motion asserts that lead attorney Matthew McNicholas's services are billed at $850 per hour. (Mot. 5.) Plaintiff claims that Mr. McNicholas worked over 500 hours on Plaintiff's case. (Mot. 5.) For Douglas Winter, Plaintiff requests 284 hours at $600 per hour. (Mot. 5.) Catherine Schmidt's 126.25 hours are billed at $550 per hour. (Mot. 5.) For Alyssa Schabloski's 42 hours, Plaintiff requests $450 per hour. (Mot. 5.) Cameron Fredman's 107.50 hours are billed at $350 per hour. (Mot. 5.) Finally, the services of paralegal Dawn McGuire are billed at $150 per hour, for 33.75 hours. (Mot. 5.) In addition to the attorneys at McNicholas & McNicholas, LLP ("McNicholas & McNicholas"), Plaintiff also retained the services of an additional attorney, Stuart Esner, to address the issue of exhaustion of judicial remedies. (Mot. 5.) For his 68.4 hours of work, Mr. Esner requests $400 per hour. (Mot. 6.) Defendants contest Plaintiff's calculations, for various reasons including both the hourly rates and number of hours applied in calculating the lodestar number. (*See generally* Opp'n.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 11-01326 SJO (FMOx)</u>          DATE: <u>August 2, 2012</u>

 

      1.   <u>Reasonable Hourly Rate</u>

A reasonable hourly rate is based on the market rates of the region and the experience of the lawyer. *See Rivera*, 477 U.S. at 568-69; *McCown*, 565 F.3d at 1102. Defendants do not contest the hourly billing rates charged by Mr. Fredman and Ms. McGuire of $350 and $150 per hour, respectively. (Opp'n 10; Decl. of Mark K. Kitabayashi in Supp. of Opp'n ("Kitabayashi Decl.") ¶ 11, May 14, 2012, ECF No. 186-2.) Defendants also do not dispute the hourly rate of $400 charged by independent attorney, Stuart Esner. (Mot. 6; Kitabayashi Decl. ¶ 11.)

For Plaintiff's lead counsel, Mr. McNicholas, Plaintiff requests $850 per hour in attorneys' fees. (Mot. 5.) However, Defendants argue that this rate should be reduced to $600, the amount Mr. McNicholas was awarded in a related case, *Romney v. Bratton*, Case No. CV 09-3048-VPF (PLAx) (C.D. Cal. Dec. 1, 2011).[1] (Opp'n 10-11.) Defendants also note that Mr. McNicholas's request of $850 per hour far exceeds rates charged in the ninth decile by partners practicing in California. (Kitabayashi Decl. ¶ 10(a), Ex. A.) However, the data consulted by Defendants reports the average hourly rates for the entire state of California. (*See generally* Kitabayashi Decl. Ex. A.) This number is the average of all regions in California, including those with significantly lower costs of living than Los Angeles, where McNicholas & McNicholas practices. Thus, it is unreasonable to decrease Mr. McNichlas's rate simply because it exceeds rates charged in the ninth decile in California as a whole. However, the Court finds that Plaintiff's request for $850 per hour is excessive.

Plaintiff argues that this increased rate is supported by the rates he received in two recent cases. (Decl. of Matthew S. McNicholas in Supp. of Mot. ("McNicholas Decl.") ¶ 15, May 3, 2012, ECF No. 171.) In 2011, Plaintiff was retained at an hourly rate of $850 to negotiate a separation package. (McNicholas Decl. ¶ 15.) Plaintiff was also awarded an hourly rate of $800 in a recent case. (McNicholas Decl. ¶ 15.) The Court declines to award Plaintiff an hourly rate of $850 based upon these two outliers. As noted by Mr. McNicholas, his typically awarded rate is $650 per hour. (McNicholas Decl. 4-5.) In the most similar case to the present case, *Romney*, Mr. McNicholas claims he was awarded an hourly rate of $650. (McNicholas Decl. ¶ 15.) However, the Court recognizes that the experience of the attorney is relevant to calculating his appropriate hourly rate. In *Romney*, Mr. McNicholas succeeded in gaining his client a nearly $4 million jury verdict. (McNicholas Decl. ¶ 6.) It is reasonable for Mr. McNicholas to request a higher rate after winning

---

[1] It is unclear whether Mr. McNicholas was awarded $600 or $650 per hour. Plaintiff's Reply states he was awarded $600/hour for his work in *Romney*. (Reply 4.) However, Mr. McNicholas states in his declaration that he was awarded $650/hour. (Decl. of Matthew S. McNicholas in Supp. of Mot. ("McNicholas Decl.") ¶ 15, May 3, 2012, ECF No. 171.)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

**CASE NO.:** <u>CV 11-01326 SJO (FMOx)</u>　　　**DATE:** <u>August 2, 2012</u>

a significant award in a closely related case. Therefore, the Court finds an hourly rate of **$700/hour** to be a reasonable rate for Plaintiff's lead counsel, Mr. McNicholas.

Defendants argue that the rates requested by Plaintiff's attorneys Mr. Winter, Ms. Schmidt, and Ms. Schabloski should be reduced. (Opp'n 10; Kitabayashi Decl. 5.) Mr. McNicholas has attested to the skill and expertise of these attorneys, rates charged in other cases, and their work product at McNicholas & McNicholas. (McNicholas Decl. ¶¶ 17-21.) Defendants make the unsupported assumption that because the rate charged by Mr. McNicholas exceeds what they believe to be a reasonable rate by 30%, the rates charged by the remaining attorneys should also be decreased by 30%. (Kitabayashi Decl. ¶ 10.) Defendants provide no other support for their argument that the rates charged by these attorney should be decreased other than noting once again that the rates charged by Plaintiff's attorneys exceed the rates charged in the ninth decile in California. (Kitabayashi Decl. ¶ 10.) However, as noted above, the rates indicated in Defendants' chart represent the average of rates charged by attorneys in all of California. (Kitabayashi Decl. Ex. A 3-4.) These rates are not indicative of a reasonable rate in Los Angeles.[2] Without further evidence that the rates charged by Mr. Winter, Ms. Schmidt, and Ms. Schabloski are unreasonable, the Court grants the rates requested in Plaintiff's Motion. The Court awards Mr. Winter an hourly rate of **$600/hour**, Ms. Schmidt an hourly rate of **$550/hour**, and Ms. Schabloski an hourly rate of **$450/hour**.

### 2.　Reasonable Number of Hours

In the Ninth Circuit:

> [t]he fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked. The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged . . . .

*Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citation omitted). Plaintiff has submitted a declaration with an attached record of all time expended by his attorneys on the

---

[2] Defendants' argument that Mr. Winter's rate should be reduced because it exceeds rates charged in the ninth decile by partners in California also fails because this argument does not take into account Mr. Winter's experience. (Kitabayashi Decl. ¶ 10(b).) According to Defendants' own chart, a partner in the ninth decile with 22 years of experience (Kitabayashi Decl. ¶ 11; McNicholas Decl. ¶ 17) bills at $665/hr. (Kitabayashi Decl. Ex. A, at 4). Therefore, Defendants' argument is not a basis for reducing Mr. Winter's requested rate of $600/hr.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 11-01326 SJO (FMOx)</u>     **DATE:** <u>August 2, 2012</u>

matter, in fifteen minute increments. (*See generally* McNicholas Decl. Ex. 1.) The record includes not only the amount of time expended, but how the time was spent. (McNicholas Decl. Ex. 1.)

Defendants advance several theories as to why the number of hours used to calculate Plaintiff's lodestar should be reduced. (*See generally* Opp'n.) The Court will consider each of Defendants' theories individually.

### a.    Administrative and Clerical Work

Defendants argue that the number of hours worked by Plaintiff's attorneys should be reduced for all hours spent on administrative or clerical work. (Opp'n 12.) In support of their argument that that all hours spent on administrative and clerical work should be reduced by 100%, Defendants cite *Nadarajah v. Holder*, 569 F.3d 906 (9th Cir. 2009). (Opp'n 12; Decl. of Gerald G. Knapton in Supp. of Opp'n ("Knapton Decl.") ¶¶ 25-27, May 14, 2012, ECF No. 186-3; Knapton Decl. Ex. 3A.) *Nadarajah* states that clerical tasks, such as tracking a package and assembling documents, billed by a **paralegal** should be subsumed in the firm's overhead rather than billed at the paralegal's rates. 569 F.3d at 921. Of the billing entries identified as clerical work by Defendants, the Court finds that only the printing of exhibits by McNicholas & McNicholas's paralegal on November 30, 2011 and the 10.5 hours billed by "YB" at McNicholas & McNicholas constitute clerical work. (Knapton Decl. Ex. 3A.) The Court thus grants Defendants' request as to these hours and reduces the hours billed by paralegal McGuire by **1 hour**, and the hours billed by "YB" by **10.5 hours**.[3]

### b.    Duplicative Work

Defendants argue that Plaintiff's requested attorneys' fees should be substantially reduced for duplicative work. (Opp'n 12.) Alleged duplicative billings include: work repeated by various lawyers; internal conferences; responses to errors made by Plaintiff's attorneys; attendance of multiple attorneys at conferences and hearings; work done by Stuart Esner; and hours that attorneys spent consulting with each other. (Knapton Decl. ¶¶ 38-44.)

---

[3] It is unclear to the Court whether Plaintiff intended to bill the hours clocked by "YB". YB's 10.5 hours are not included in Plaintiff's breakdown of hours and hourly billing rates. (McNicholas Decl. 8; Mot. 5.) Yet, when the sum of hours billed by the attorneys at McNicholas & McNicholas is calculated, a total of $722,900 is reached. This is $262.50 short of the supposed $723,162.50 requested by Plaintiff for work by McNicholas & McNicholas alone (McNicholas Decl. 9; Mot. 5), exactly the amount the records show billed by YB (*see generally* McNicholas Decl. Ex. 1; Knapton Decl. Ex. 3A). Regardless of whether Plaintiff intended to request reimbursement for the work billed by YB, the Court determines that the $262.50 is inappropriate and will not include these fees in the award.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 11-01326 SJO (FMOx)</u>  **DATE:** <u>August 2, 2012</u>

In support of their argument that internal conferences should not be billed, Defendants point only to memoranda issued by the Committee on Mandatory Fee Arbitration, created in 1998 and 2003, which specifically state that the memos have not been adopted by the State Bar and are intended to assist arbitrators in detecting bill padding. (State Bar of Cal. Comm. on Mandatory Fee Arbitration, Arbitration Advisory 98-03, Determination of a "Reasonable" Fee (June 23, 1998); State Bar of Cal. Comm. on Mandatory Fee Arbitration, Arbitration Advisory 03-01, Detecting Attorney Bill Padding (January 29, 2003); Knapton Decl. ¶ 38.) While the Court finds some of the techniques persuasive, the Court will not grant such broad, unspecific cuts without further evidence of duplicative work. Defendants argue that time spent by attorneys consulting one another should be eliminated as duplicative work. The Court declines to reduce Plaintiff's requested attorneys' fees for such a reason, because it is often necessary for attorneys working on a single project to meet and confer about the case in order to provide the best assistance possible.

Defendants also argue that hours spent by the attorneys at McNicholas & McNicholas working on Plaintiff's Opposition to Defendants' Motion for Summary Judgment are duplicative because another attorney, Stuart Esner, was retained to work on the Opposition. (Knapton Decl. ¶ 41.) However, Mr. Esner was retained solely to address the issue of exhaustion of judicial remedies. (Mot. 5.) Defendants have provided no argument to suggest that, because Mr. Esner was retained to address an issue, any work done by the attorneys at McNicholas & McNicholas themselves is necessarily duplicative. Thus, the Court declines to reduce the number of billable hours pursuant to this theory.

The Court agrees with Defendants that time spent on work that ultimately failed due to mistake and oversight of Plaintiff's attorneys is not compensable. (Knapton Decl. ¶ 39.) Therefore, for Plaintiff's attorneys' failure to timely file his motions in limine, the Court will deduct **11 hours** of the time billed by Mr. Winter and **1.75 hours** of the time billed by Mr. McNicholas. The Court will also deduct time spent by Plaintiff's attorneys on the preparation of an expert whom they failed to timely designate as an expert. The Court deducts **5 hours** of the time billed by Mr. Fredman, **12.75 hours** of the time billed by Mr. Winter, and **5.25** of the hours billed by Mr. McNicholas. The Court declines to deduct billable hours for counsels' failure to file a Writ regarding the Board of Rights findings.

### c. Excessive Time Billed

Defendants argue that the hours billed by Plaintiff's attorneys should be reduced because counsel billed excessive hours to complete certain tasks that should have been completed more efficiently. (Knapton Decl. ¶¶ 45-49.) Defendants also note that because Plaintiff's counsel bills in minimum increments of 0.25 hours, shorts tasks such as checking an email are over-billed. (Knapton Decl. ¶ 48.) For the billings that Defendants have identified as excessive, they request a 40% reduction. (Knapton Decl. ¶ 49.) "[D]uplicative work, however, is not a justification for cutting a fee, unless the lawyer does *unnecessarily* duplicative work." *Mendez v. County of San Bernardino*, 540 F.3d

CIVIL MINUTES - GENERAL

CASE NO.: <u>CV 11-01326 SJO (FMOx)</u>    DATE: <u>August 2, 2012</u>

1109, 1129 (9th Cir. 2008) (internal quotation marks omitted).  Therefore, in order to achieve their requested reduction, Defendants must clearly demonstrate that Plaintiff's attorneys engaged in work that was unnecessarily time consuming.

The Court agrees that billing 15 minutes for reviewing a single email is excessive and grants Defendants' request as to those records.  The Court deducts **.5 hours** of the time billed by Ms. Schmidt and **.5 hours** of the time billed by Mr. McNicholas.

Defendants make the unsupported assumption that Plaintiff's counsel billed an excessive amount of time for the completion of certain tasks that do not require such time.  (Knapton Decl. ¶ 47.) They have pointed to several entries that supposedly fall within this group, yet have failed to note exactly which tasks they believe took excessive time, how much time the tasks took, or what a reasonable amount of time would be.  (*See generally* Knapton Decl. Ex. 3E.)  Based upon a review of Plaintiff's counsels' billing records, there do not appear to be any tasks that were grossly over-billed.  (*See generally* Knapton Decl. Ex. 2.; McNicholas Decl. Ex. 1.)  The taking of depositions, preparation of an opposition to summary judgment, and preparation for trial are tasks that are generally time consuming, and the Court sees nothing that necessitates a reduction of 40% as to those tasks.

        d.    <u>Block Billing</u>

Defendants request that the Court reduce Plaintiff's attorneys' fees by 30% overall to account for numerous records that were block billed.  (Knapton Decl. ¶¶ 50-55.)  Block billing is the practice of grouping several tasks into a single time recording. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007).  Courts frown upon block billing because it impedes the court's ability to determine whether billed hours are reasonable and tends to inflate legal fees. *Mendez*, 540 F.3d at 1128-29.  Defendants argue that a total of 274.5 hours have been block billed and should therefore be reduced by 30%. (Knapton Decl. ¶ 54.)  The Court disagrees that such a reduction is necessary and finds that Plaintiff's attorneys have not impermissibly block billed hours.  The entries are sufficiently clear and discrete for the Court to assess what the attorneys were working on and whether they expended an unreasonable amount of time. (*See generally* McNicholas Decl. Ex. 1; Knapton Decl. Ex. 3B.)

The Court also notes that the vast majority of the entries alleged by Defendants  to be block billing are in reality broken-down explanations of each part of a single task.  (*See generally* Knapton Decl. Ex. 3B.)  For example, one entry criticized by Defendants states: "Review CPF's research re defense argument; read and review related cases." (Knapton Decl. Ex. 3B 1.)  While initially appearing to include several tasks, this entry in fact simply provides an explanation of various parts of a single task: the review of CPF's research.  Most of the entries pointed to by Defendants are of the same nature: detailed breakdowns of individual tasks into discrete parts.  Because the Court finds that Plaintiff's attorneys' billing records sufficiently articulate each task, the Court denies Defendants' request to reduce the 274.5 hours by 30%.

CASE NO.:  CV 11-01326 SJO (FMOx)          DATE: August 2, 2012


        e.      Vague Billing Descriptions

Defendants argue that several hours billed should be reduced by 30% because the billing descriptions are vague.  (Knapton Decl. ¶¶ 56-58.)  Records that are not sufficiently detailed prevent the Court from determining whether the hours billed are reasonable and can result in the billing of excessive hours.  *In re Donovan*, 877 F.2d 982, 995 (D.C. Cir. 1989).  The Court concludes that the majority of the records pointed to by Defendants are sufficiently detailed to allow the Court to determine the reasonableness.  However, Mr. McNicholas has billed several hours on tasks simply described as "trial preparation" or "work on trial documents". (*See generally* McNicholas Decl. Ex. 1; Knapton Decl. Ex. 3C 2.)  From these limited descriptions, it is entirely unclear what Mr. McNicholas was working on and whether it required the several hours that he billed.  The Court finds that 34.5 of the hours billed by Mr. McNicholas are impermissibly vague.  The Court will apply the 30% deduction requested by Defendants because this is sufficient to capture the potential inflation of hours attributable to the vague records.  (Knapton Decl. ¶ 58.)  Thus, the Court deducts **10.35 hours** of the time billed by Mr. McNicholas.

        f.      Rounded Off Billing Entries

Defendants argue that the Court should reduce Plaintiff's requested attorneys' fees by 10% to account for their unsupported assumption that Plaintiff's attorneys engage in a routine practice of rounding off their entries to the nearest hour.  (Opp'n 12; Knapton Decl. ¶¶ 59-61.)  Defendants point to several entries that they assume were rounded up, and the support for their argument is simply noting that many billing entries are even numbers.  (Knapton Decl. ¶ 60.)  Defendants also fail to point to case law supporting their argument that attorney time must be billed in six minute increments, and that such alleged roundings are a proper basis for adjusting the calculation of a lodestar.  Thus, the Court declines to reduce Plaintiff's request based on Defedants' allegations of improper rounding.

        3.      Post-Lodestar Calculation Adjustments

The district court may adjust a fee upward or downward after calculating the lodestar to account for special circumstances. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

        a.      Plaintiff's Limited Success

Courts recognize that a party may be the prevailing party, yet have only succeeded on a fraction of its claims. *Id.* at 434.  To account for such situations, courts may award the full amount of attorneys' fees or grant additional reductions. *Id.*; *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 939 (9th Cir. 1999).  Relevant to this inquiry is the similarity between the successful and unsuccessful claims, because "work on an unsuccessful claim cannot be deemed to have been

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 11-01326 SJO (FMOx)</u>     DATE: <u>August 2, 2012</u>

expended in pursuit of the ultimate result achieved." *Hensley*, 461 U.S. at 435 (internal quotation marks omitted).

In this case, Plaintiff prevailed on only his FLSA retaliation claim, losing his due process and state law claims. (Reply 2.) Defendants argue that Plaintiff's successful and unsuccessful claims are substantially unrelated and that Plaintiff's fees should thus be reduced by 80 to 90%. (Opp'n 7-8.) The Court disagrees. The claims are based upon the same core set of facts and generally related legal theories. *See Hensley*, 461 U.S. at 435. The majority of the hours spent on the most time-consuming tasks, such as discovery and trial, would have been necessary regardless of whether Plaintiff had pursued his failed claims. However, the Court recognizes that some effort was expended on the failed claims that did not contribute to Plaintiff's successful claims and therefore grants Defendants a **10% reduction** in the overall amount of fees incurred.

Defendants also argue that an overall reduction is necessary regardless of the relatedness of the claims because Plaintiff's relief is substantially less than what he initially sought. (Opp'n 13.) The Court recognizes that in relation to the multitude of claims brought and Plaintiff's counsels' success in the *Romney* trial, Plaintiff's actual success in this case was limited. The Court believes that the 10% reduction is sufficient to adjust the award for deductions necessary to account for partial success in spite of the relatedness of the claims. *See Hensley*, 461 U.S. at 436 (holding that reductions in attorneys' fees may be necessary even if all claims were interrelated to account for partial success of the plaintiff).

> b.    Similarity to *Romney* Case

Defendants argue that Plaintiff's attorneys' fees award should be substantially reduced to account for the fact that Plaintiff's attorneys also litigated the *Romney* case. (Opp'n 8-9.) Defendants argue that Plaintiff's counsels' experience with the *Romney* case resulted in "nothing novel or difficult about Plaintiff's case" that would require such a substantial amount of the attorneys' time and effort. (Opp'n 9.) Plaintiff disagrees, arguing that there were some significant differences "including the judicial exhaustion issue, Maislin's changed testimony, [and] Avila's resignation." (Reply 3.) While there were many similarities between the instant case and *Romney*, the Court agrees with Plaintiff that there were several differences necessitating the expenditure of additional time and resources. Thus, the Court declines to reduce Plaintiff's request for fees because Mr. McNicholas litigated the *Romney* case.

> B.    Plaintiff's Request for Liquidated Damages

Plaintiff argues that he is entitled to an amount of liquidated damages equal to the amount of lost wages awarded by the jury. (Mot. 11-13.) He argues that the language of 29 U.S.C. § 216(b) requires the Court to award such damages when a violation of the FLSA has been found. (Mot. 12.) Defendants disagree with Plaintiff's interpretation of the statute, arguing that liquidated damages are discretionary when defendants are found to have engaged in retaliatory conduct,

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 11-01326 SJO (FMOx)</u>     DATE: <u>August 2, 2012</u>

rather than wage violations. (Opp'n 15-17.) In support, Defendants point to *Braswell v. City of El Dorado*, 187 F.3d 954 (8th Cir. 1999), and *Blanton v. City of Murfreesboro*, 856 F.2d 731 (6th Cir. 1988), both of which held that an award of liquidated damages in a FLSA retaliation claim is discretionary. (Opp'n 16.) Similarly, in the related *Romney* case, also concerning FLSA retaliation, the court declined to award liquidated damages. (RJN Ex. 4, Ex. 5, May 14, 2012, ECF No. 187-1.) Defendants further argue that the Court should exercise its discretion by not awarding the liquidated damages because an award in this case would not work to advance the purposes of the FLSA. (Opp'n 17.)

Finally, Defendants argue that even if the Court finds that an award would further the purposes of the FLSA, liquidated damages should not be granted because Defendants have a "good faith" defense. (Opp'n 18-19.) Section 260 states that if an employer demonstrates that the violation was committed in good faith, then the court may exercise its discretion and decline to award liquidated damages. 29 U.S.C. § 260. The Court finds that Defendants have not established that they had "reasonable grounds for believing that [their] act or omission was not a violation of the Fair Labor Standards Act." 29 U.S.C. § 260. The Court disagrees with Defendants' argument that because the jury declined to find Defendants liable on Plaintiff's due process and state law claims, Defendants necessarily have a good faith defense. (Opp'n 18-19; Kitabayashi Decl. ¶ 15.)

In the related *Romney* case, liquidated damages were denied not because Defendants had a good faith defense, but because the court found that Plaintiff's award of over $100,000 in past economic damages was sufficient to effectuate the purposes of the FLSA. (RJN Ex. 4 3.) However, the Court believes that in this case, an award of liquidated damages would help advance the goals of the FLSA. In *Romney*, the plaintiff received a nearly $4 million verdict, while here, Plaintiff received only $50,000. (McNicholas Decl. ¶ 6; Opp'n 1.) The Court finds that the additional $50,000 in liquidated damages would work to compensate Plaintiff for a delay in payment of wages owed and also provide an incentive for future employees to report wage and hour violations by their employers. *Hultgren v. Cnty. of Lancaster*, 913 F.2d 498, 508-09 (8th Cir. 1990) ("Section 216's provision for liquidated damages is intended in part to compensate employees for the delay in payment of wages owed under the FLSA; it is a penalty or a punishment."); (RJN Ex. 4 3.) Thus, the Court awards Plaintiff liquidated damages in the amount of his damages award: $50,000.

C.    <u>Final Calculations</u>

Plaintiff's initial Motion includes a request for: (1) 503.75 hours for Matthew McNicholas; (2) 284 hours for Douglas Winter; (3) 126.25 hours for Catherine Schmidt; (4) 42 hours for Alyssa Schabloski; (5) 107.5 hours for Cameron Fredman; (6) 33.75 hours for Dawn McGuire; and (7) 68.4 hours for Stuart Esner. (Mot. 5.) The Court declines to allow Plaintiff to collect for the hours billed by "YB".

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

**CASE NO.:**  **CV 11-01326 SJO (FMOx)**          **DATE:** **August 2, 2012**

The Court holds that the attorneys' hours will be billed accordingly: (1) $700/hr for Mr. McNicholas; (2) $600/hr for Mr. Winter; (3) $550/hr for Ms. Schmidt; (4) $450/hr for Ms. Schabloski; (5) $350/hr for Mr. Fredman; (6) $150/hr for Ms. McGuire; and (7) $400/hr for Mr. Esner.

The hours billed by Mr. McNicholas are reduced by 17.85 hours, bringing his total billable hours to 485.9 hours.  Thus, Mr. McNicholas's fees total $340,130.

The hours billed by Mr. Winter are reduced by 23.75 hours, bringing his total billable hours to 260.25.  Thus, Mr. Winter's fees total $156,150.

Ms. Schmidt's billable hours are reduced by only .5 hours, bringing her total billable hours to 125.75.  Therefore, $69,162.50 is the total for her services.

Mr. Fredman's hours total 102.5, after a reduction of 5 hours.  Thus, Plaintiff may recover $35,875 for the services of Mr. Fredman.

The Court will deduct 1 hour of pay from the total amount billed by Ms. McGuire.  Thus, Plaintiff may recover $2,812.50 for the services of Ms. McGuire.[4]

For the services of Ms. Schabloski[5] and Mr. Esner,[6] the Court grants Plaintiff the full amount requested: $14,287.50 and $25,360 respectively.  (Mot. 5-6.)  This brings the preliminary total to $643,877.50.  Applying a 10% reduction to account for Plaintiff's limited success, the Court **AWARDS** Plaintiff **$579,400 in attorneys' fees**.

The Court also **GRANTS** Plaintiff **$50,000 in liquidated damages**.

///

///

///

---

[4]  Ms. McGuire billed 14 hours at no charge.  (McNicholas Decl. Ex. 1.)  Thus, the fee award for Ms. McGuire is based on an initial request of 19.75 hours billed at the hourly rate.

[5]  Ms. Schabloski's billed 10.25 hours at no charge.  (McNicholas Decl. Ex. 1.)  Thus, the fee award is based on an initial request of 31.75 hours billed at the hourly rate.

[6]  Mr. Esner did not charge for 5 hours at trial.  (Esner Decl. 2.)  Thus, the fee award is based on an initial request of 63.4 hours billed at the hourly rate.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 11-01326 SJO (FMOx)</u>      DATE: <u>August 2, 2012</u>

III.    <u>RULING</u>

For the foregoing reasons, Plaintiff's Motion is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff shall recover attorneys' fees in the amount of **$579,400** and liquidated damages in the amount of **$50,000**.  The Judgment is hereby amended accordingly.

IT IS SO ORDERED.


cc: fiscal