CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Peter A. Schey (Cal. Bar No. 58232)
Carlos Holguín (Cal. Bar No. 90754)
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Facsimile: (213) 386-9484
Email: pschey@centerforhumanrights.org
        crholguin@centerforhumanrights.org
*Attorneys for plaintiffs*

*(Additional counsel listed next page)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*,<br><br>            Plaintiffs,<br><br>        - vs -<br><br>WILLIAM P. BARR, ATTORNEY GENERAL OF THE UNITED STATES, *et al.*,<br><br>            Defendants.<br>_____ | ) Case No. CV 85-4544 DMG<br>) (AGRx)<br>)<br>) EXHIBITS 1-5 IN SUPPORT OF<br>) PLAINTIFFS' MOTION FOR AWARD<br>) OF ATTORNEYS FEES AND COSTS<br>)<br>) Hearing: June 28, 2019<br>) Time: 9:30 a.m.<br>) Room: 1st Street Courthouse<br>) Courtroom 8C<br>     [HON. DOLLY M. GEE] |

///

*Plaintiffs' counsel, continued:*

LA RAZA CENTRO LEGAL, INC.
Michael S. Sorgen (Cal. Bar No. 43107)
474 Valencia Street, #295
San Francisco, CA 94103
Telephone: (415) 575-3500

THE LAW FOUNDATION OF SILICON VALLEY
LEGAL ADVOCATES FOR CHILDREN AND YOUTH
Jennifer Kelleher Cloyd (Cal. Bar No. 197348)
Katherine H. Manning (Cal. Bar No. 229233)
Annette Kirkham (Cal. Bar No. 217958)
4 North 2nd Street, Suite 1300
San Jose, CA 95113
Telephone:   (408) 280-2437
Facsimile:   (408) 288-8850
Email: jenniferk@lawfoundation.org
 kate.manning@lawfoundation.org
 annettek@lawfoundation.org

*Of counsel:*

YOUTH LAW CENTER
Virginia Corrigan (Cal. Bar No. 292035)
832 Folsom Street, Suite 700
San Francisco, CA 94104
Telephone: (415) 543-3379

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

INDEX

| No. | Description | Page |
|-----|-------------|------|
| 1 | Declaration of Peter Schey…………………………………... | 1 |
| 2 | Declaration of Virginia Corrigan……………………………. | 22 |
| 3 | Declaration of Rachel Leach………………………………… | 28 |
| 4 | Declaration of Laura Diamond……………………………… | 35 |
| 5 | Declaration of Carol Sobel……………………………..…… | 43 |

/ / /

Exhibit 1

Declaration of Peter Schey

I, Peter Schey, declare and say as follows:

1. I am one of the class counsel representing plaintiffs in this action. I am employed by, and serve as President of the Center for Human Rights and Constitutional Law (CHRCL), a non-profit, public interest law firm that provides free legal representation to indigent immigrants and refugees. I execute this declaration in support of plaintiffs' motion for an award of attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d).

2. I was admitted to practice before the Supreme Court of the State of California in December 1973. I have since then been admitted to practice in the United States District Court for the Central District of California, the United States District Court for the Eastern District of California, the United States District Court for the Southern District of California, the United States District Court for the Northern District of California, the United States Circuit Court of Appeals for the Ninth Circuit and the United States Supreme Court.

3. Since 1974 my practice has focused on complex litigation, advocacy and technical support in furtherance of the rights of vulnerable communities, in particular immigrants and refugees. As regards legal support services, the California Legal Services Trust Fund has funded CHRCL since 1982 to provide technical support

2

and training to qualified legal services programs and attorneys serving pro bono publico in the areas of immigration law, constitutional law, and impact litigation. In my capacity as CHRCL's President, I regularly provide technical support, advocacy support and training to legal aid and pro bono lawyers on immigration law, constitutional law, and complex litigation.

4. In the area of litigation, I have served as lead or co-counsel in numerous major class actions on behalf of immigrants and refugees, including *Plyler v. Doe*, 457 U.S. 202 (1982), a state-wide class action that established the right of children to a public elementary education regardless of their immigration status; *Reno v. Flores*, 507 U.S. 292 (1993), which resulted in a nationwide settlement fixing standards for the housing and release of children arrested pending deportation proceedings; *Perez-Olano v. Gonzalez*, 248 F.R.D. 248 (C.D. Cal. 2008), which resulted in a nationwide settlement expanding eligibility for special immigrant status, an immigration benefit for abused, abandoned and neglected children; *We Are America v. Maricopa County*, 297 F.R.D. 373 (D. Ariz. 2013), a state-wide class injunction against prosecuting migrants for conspiring to transport themselves; *Orantes-Hernandez v. Smith*, 541 F.Supp. 351 (C.D. Cal. 1982), a national class action on behalf of Salvadoran nationals blocked from applying for political asylum; *League of United Latin American Citizens v. Wilson*, 908 F. Supp. 755

(C.D. Cal. 1995), a state-wide class action that overturned a state proposition that would have denied health care, social services and education to suspected undocumented immigrants; *Catholic Social Services v. Immigration and Naturalization Service*, 232 F.3d 1139 (9th Cir. 2000) (en banc), a national class action that restored the right of some 500,000 class members to apply for legalization under the Immigration Reform and Control Act of 1986; *Lopez v. INS*, Cv. No. 78-1912-WB(xJ), nation-wide settlement impacting requiring persons arrested by the INS to be provided written advisal of their legal rights, including the right to apply for political asylum and a period of time to consult with attorneys before post-arrest interrogation and deportation; *Munoz v. Bell*, Cv. No. 77-3765-WG (C.D. Cal. 1978), federal case resulting in court-approved nation-wide settlement requiring Immigration Judges to advise all persons in deportation proceedings of free legal services available to indigent immigrants.

5.  My market rate based on my years in practice, experience and rate when working on private cases is $950/hour. My resume is attached as Exhibit B.

6.  I am able to converse with class members and their mothers in Spanish. The majority of class members in the litigation the CHRCL conducts, including *Flores*, are monolingual Spanish-speakers, and the ability to communicate with these class members in their native language is invaluable.

4

7.  The successful prosecution of the instant ex parte application opposing Defendants' Ex Parte Application for Limited Relief from the Flores Settlement [Docket # 435] required an unusual combination of skills, knowledge, and experience. Since 1985 CHRCL General Counsel Carlos Holguin and I have devoted a substantial part of our practice to working with immigrant and refugee minors; I believe that the insight we have developed with this population through, for example, our work in litigating, negotiating and monitoring the settlement in Flores v. Lynch, was invaluable to the success of the opposition to Defendants' Ex Parte Application.

8.  I have attached records of time spent on opposing Defendants' Ex Parte Application. Exhibit A to this declaration sets forth an itemization of this time. My activities sometimes comprise of several related tasks. For example, when shepardizing a case I normally review cases identified and then often further shepardize those cases and review other significant sources relied upon by decisions including statutes, regulations, legislative history, etc.

9.  I routinely exercise billing judgment by not seeking reimbursement for multiple tasks including for example routine brief discussions about the litigation with co-class counsel Carlos Holguin, and other co-counsel, etc.

10. The total time I believe compensable for my work on plaintiffs' opposition to

4

Defendants' Ex Parte Application is 36 hours, as reflected in the attached itemization.

11. On May 31, 2019, I discussed with Sarah Fabian, counsel for Defendants, the legal arguments and evidence that are the basis of this motion, but we did not reach a resolution.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 7th day of June, 2019, at Oak View, California.


_____

Peter Schey

6

Exhibit 1-A

Peter Schey Flores Time [Opp to Docket #435]

| Date | Hours | Mins | Task |
|---|---|---|---|
| 6/22/18 | 5 | 30 | Review and research authorities cited in Defs' Ex Parte Application toModify Settlement |
| 6/23/18 | 3 | 0 | Continue review and research authorities cited in Defs' Ex Parte Application toModify Settlement and studies/reports re influx |
| 6/24/18 | 4 | 0 | Review studies/apprehension reports/declarations re Defs'app to modify settlement |
| 6/26/18 | 0 | 15 | Draftex parte applic forextensionn oftimetofileopposition to ex parte applic tomodify settlement |
| 6/28/18 | 7 | 30 | DraftOppto Defs ex parte applic tomodify settlement (Overview of relevant provisions of the Flores Agreement; Defendants' procedural errors should result in denial of their Ex Parte application; Standard to modify) |
| 6/28/18 | 5 | 10 | Draft Defendants offer no new grounds in support of modification of the Agreement;review Holly Cooper edits |
| 6/29/18 | 2 | 10 | Review Kate Manning and Virginia Corrigan edits of draft opposition to Defs applic tomodify settlement |
| 6/29/18 | 7 | 50 | Further research and drafting Plaintiffs'opposition to Defs' ex parte application tomiodify settlement |
| 6/30/18 | 0 | 40 | Review Defendants'Notice of Complaince |
| 5/28/19 | 2 | 30 | Prepare declaration and review/edit motion for fees |

|  | 39 |  |  |
| Enhanced rate | $950 |  |  |
|  | $36,654 |  |  |

Exhibit 1-B

# PETER A. SCHEY RESUME

This resume should not be used in any legal proceeding without contacting
Peter A. Schey to determine whether information contained in this document
requires updating.

------------------------------------------------------------------------

PERSONAL:

Place of Birth: Durban, South Africa

Telephone: (323) 251-3223
Facsimile: (310) 526-6537
E-mail: pschey@centerforhumanrights.org
The State Bar of California: Active # 58232

Websites:      www.centerforhumanrights.org
               www.casalibrela.org
               www.vocesunidas.org
               www.tents4homeless.org

Facebook:   www.facebook.com/center4humanrights
------------------------------------------------------------------------

EDUCATION:

Lowell High School, San Francisco, CA
Graduated (honors) - June, 1964

University of California, Berkeley, CA
Graduated (honors) - June, 1969
Bachelor of Arts in Psychology

California Western School of Law
San Diego, CA Juris Doctor (honors), June, 1973
Outstanding Service Award, March 2, 1972;
California Western Law Review, 1971-72.

------------------------------------------------------------------------

EMPLOYMENT HISTORY:

LAW OFFICES OF PETER A. SCHEY

Part-time private practice of law principally focusing on complex constitutional, transnational, criminal, immigration, and appellate litigation.

UNIVERSITY OF SOUTHERN CALIFORNIA, LAW CENTER

Adjunct Professor, University of Southern California Law Center, teaching courses on international human rights and immigration law (1987-1991).

UNIVERSITY OF CALIFORNIA (LOS ANGELES) SCHOOL OF LAW

Lecturer of Law, University of California School of Law teaching immigration and refugee law (Spring, 1989).

SOUTHWESTERN UNIVERSITY SCHOOL OF LAW (LOS ANGELES)

Adjunct Professor, University of Southern California Law Center, teaching courses on international human rights and administrative law

LEGAL AID SOCIETY OF SAN DIEGO 1973-1978:

Established the first legal aid unit to provide representation for low-income immigrants in the Southern California area and initiated first class action cases on behalf of immigrants.

NATIONAL CENTER FOR IMMIGRANTS RIGHTS 1978-1980:

Founded and served as Executive Director of the first national support center dedicated to the protection and promotion of the legal rights of immigrants. The program continues to function today as the National Immigration Law Center (NILC).

CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW FOUNDATION

1980 – present: Founder and Executive Director of the Center for Human Rights and Constitutional Law Foundation (CHRCL Foundation). The

Center is dedicated to the protection and promotion of fundamental civil liberties and human rights through major class action litigation, education, legal training and the presentation of petitions before international fora. The Center serves as a resource to social, legal, religious and community-based groups throughout the United States involved in civil and human rights advocacy.

CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW, INC.

1997-present: Founder and Executive Director of the Center for Human Rights and Constitutional Law, Inc. (CHRCL Inc.), program that provides emergency services, including shelter, food, counseling, health, and educational services to unaccompanied homeless immigrant and refugee youth. Most of the youth served are from Mexico and Central America. See www.casa-libre.org

------------------------------------------------------------------------

LITIGATION EXPERIENCE:

Served as lead counsel or co-counsel in over 100 major civil rights and class action cases in federal courts throughout the United States involving access to education, health and welfare benefits, administrative law, the rights of immigrants, refugees and indigenous people, and complex individual cases involving constitutional, criminal, transnational, and corporate issues. Represented or supervised the representation of over 2,000 cases in a nation-wide project involving women who have suffered sexual harassment, abuse, or discrimination. Litigation against the federal government has resulted in the largest attorney fee awards in the country.

(1) In re Alien Children Education Litigation, Doe v. Plyler, 457 U.S. 202, 102 S.Ct. 2382, 95 L.Ed.2d 786 (1982) (U.S. Supreme Court) (lead counsel in State-wide class action case finding unconstitutional as a violation of Fourteenth Amendment equal protection a Texas statute which denied public education to undocumented children; over 100,000 children admitted to Texas public schools annually as a result of United States District Court injunction affirmed by United States Supreme Court decision);

(2) Enrique Fuenes v. City of Riverside (U.S. District Court, Central District of California) (lead counsel in lawsuit for damages following video-taped

beating of Mexican national Mr. Fuenes by Riverside Sheriffs; Mr, Fuenes, a Mexican national migrant, was being smuggled in a high-speed chase; case settled and Mr. Fuenes received an award of $700,000)

(3) Jane Doe v. State of Hawaii, Cv. No. 97-00169 (U.S. District Court for the District of Hawaii) (lead counsel in personal injury and injunction lawsuit involving Hawaii state hospital rules for physician-patient relations and sexual assault by psychiatrist; confidential settlement reached for monetary damages for plaintiff and State of Hawaii changes in policies and practices involving psychiatrist-patient relations);

(4) American Apparel LLC: Legal counsel for American Apparel and CEO Dov Charney on range of cases including EEOC conciliation to achieve model sexual harassment policy, EEOC conciliation to achieve model ADA policy, litigation of individual cases, Immigration and Customs Enforcement (ICE) I-9 audit, public relations, and corporate social responsibility issues.

(5) Directing attorney of Voces Unidas Project, a nationwide project involving representation of over 2,000 women victims of sexual harassment, abuse, or discrimination.

(6) Thompson v. United States, Cv. No. 83-0903 (D. Hawaii) (civil action on behalf of prominent Hawaii lawyer resulting in broad injunction limiting manner in which Department of Justice criminal investigation could proceed against attorney target of criminal investigation);

(7) Native American Heritage Commission v. Cal State Long Beach, No. BC 097212 (Los Angeles Superior Court) (lead counsel in State court lawsuit seeking to halt effort by California State University at Long Beach to build a shopping center over a historic Native American burial ground; preliminary injunction halted development plan);

(8) California Medical Board v. Robbins (California Court of Appeals) (lead counsel in successful appeal and reversal of revocation of medical license of prominent surgeon in case involving turf battle with plastic surgeons resulting in unjustified charges; all charges dismissed and decision to revoke surgeon's license reversed by the California Court of Appeals)

(9) League of United Latin American Citizens, et al. v. Pete Wilson, et al., No. Cv. 94-7569-MRP (C.D. Cal.), LULAC v. Wilson, 908 F.Supp. 755

(C.D. Cal. 1995) (lead counsel in California-wide class action case representing numerous elected officials and approximately one million families challenging the constitutionality of Proposition 187, a State-wide initiative denying health care, social services and education to wide classes of California immigrant residents; law declared unconstitutional in federal court decisions in 1995 and 1997);

(10) People of the State of California v. Tariacuri Ramirez, Superior Court, Riverside County (counsel in obtaining full dismissal of first degree murder charge unjustly brought against the 17-year old defendant).

(11) Development Disabilities Area Board 10 v. Smith, Cv. No. 500440 (Los Angeles Superior Court) (lead counsel in state-wide class action leading to class-wide settlement allowing indigent children access to health care services);

(12) Lopez v. INS, Cv. No. 78-1912-WB(xJ) (lead counsel in certified nation-wide class action case involving the right to legal counsel of persons arrested by INS; nation-wide settlement impacting over 1 million class members per year reached requiring immigrants arrested by federal authorities to be provided written advisal of their legal rights and a period of time to consult with attorneys before post-arrest interrogation);

(13) Charo v. United States, U.S. Ninth Circuit Court of Appeals, No. 95-70574 (decided Feb, 20, 1997) (lead counsel for entertainer Charo in successful litigation for attorneys' fees following dismissal of employer sanctions charges brought by the United States Government against Charo's corporation in Hawaii).

(14) Master Yungao Yi (aka Wan-Ko Yee) (Lead counsel for Master Yungao Yi, internationally renowned Buddhist leader and citizen of China now living in the United States in successful representation to have INTERPOL arrest warrant based on pending politically motivated criminal charges in China rescinded and cancelled);

(15) United States v. Dr. Marcel Diennet, No. 90-202636 (U.S. District Court for the Western District of Tennessee) (favorable settlement of major multi-district federal criminal case involving alleged importation of scheduled drugs without proper import licenses by prominent French national physician);

(16) Baliza v. INS, 709 F.2d 1231 (9th Cir. 1982) (lead counsel in federal Court of Appeals precedent case reversing federal agency's use of unauthenticated documents in contested administrative proceedings when maker of document is not made available by agency for cross-examination);

(17) Moreno v. United States, Cv. No. 87-01431-TJH (C.D. Cal.), (lead counsel in settlement of Federal Tort Claim Act and Bivens action for wrongful arrest and deportation of a minor lawful resident by INS; child illegally deported by the INS awarded over $100,000 in damages);

(18) American-Arab Anti-Discrimination Committee, et. Al., v. Anti-Defamation League of B'Nai B'rith, et al., No. Cv. 93-6358-RP (C.D. Cal.) (lead counsel in civil rights federal court case against the City and County of San Francisco and other defendants challenging illegal invations of privacy and surveillance of approximately 5,000 individual class members and 1,000 organizations based solely on lawful First Amendment activities; final settlements required identification of thousands of pages of documents containing unlawful law enforcement information, redaction of documents from defendants' files, and injunctions regarding future policies and conduct; attorneys' fees awarded).

(19) Catholic Social Services v. Meese, 113 S.Ct. 2485 (1993) (U.S. Supreme Court) (lead counsel in nation-wide class action case seeking legalization for 250,000 immigrants who briefly traveled abroad during one-time 1987-88 "amnesty" program and were therefore deemed ineligible to apply by Government; nation-wide injunction won permitted the filing of over 250,000 "late" amnesty applications after the statutory period expired; case settled by Department of Homeland Security following fifteen years of litigation);

(20) Haitian Refugee Center v. Smith, 676 F.2d 1023 (1982) (U.S. Court of Appeals) (lead counsel in first major Florida class action case involving constitutional rights of Haitian refugees seeking political asylum in the United States; won permanent injunction reversing INS' denial of political asylum to over 5,000 Haitian refugees and prohibited their deportation from the United States to Haiti; federal legislation later granted class members permanent resident status);

(21) Flores v. Meese, ___ U.S. ___ (U.S. Supreme Court 1993) (co-lead counsel in nationwide class action case challenging federal policies for apprehended children, including the conditions of detention; national

settlement reached with the U.S. Government addressing the conditions of detention, requiring the federal government to (i) end commingling of detained children with unrelated adults, (ii) provide education and reading materials and visitation with friends and relatives; (iii) requiring release of detained minors in certain circumstances to unrelated responsible adults);

(22) Immigrant Assistance Project of the Los Angeles County Federation Of Labor (AFL-CIO) v. Immigration and Naturalization Service, 306 F.3d 842 (9th Cir. 2002) (co-lead counsel in lawsuit challenging INS's denial of legalization to persons considered ineligible based on "known to government" statute; summary judgment won in favor of class of approximately 50,000 immigrants; INS appeal pending before the U.S. Court of Appeals);

(23) Orantes-Hernandez v. Smith, 541 F.Supp. 351 (C.D. Cal. 1982) (co-lead counsel in nationwide class action case; won preliminary injunction covering about 30,000 Salvadorans fleeing the U.S.- sponsored war in their country regarding their right to seek and obtain political asylum in the United States, and their right to consult with lawyers);

(24) Mendez v. INS, 563 F.2d 956 (1977) (lead counsel in federal Court of Appeals precedent case holding that when an immigrant's deportation by the INS was accomplished in violation of the due process guarantee of the U.S. Constitution, the immigrant must be allowed to return to the United States for further hearings);

(25) Whetstone v. INS, 561 F.2d 1303 (1977) (lead counsel in federal Court of Appeals precedent case striking INS statutory interpretation of immigrant visa process);

(26) Munoz v. Bell, Cv. No. 77-3765-WG (C.D. Cal. 1978) (lead counsel in major federal case resulting in court-ordered nation-wide settlement requiring the federal government to advise all persons in deportation proceedings of free legal services available to indigent immigrants);

(27) Congressman R. Dellums v. Smith, Cv. No. 82-0040-G (S.D. Cal. 1982) (lead counsel in class action resulting in injunction and settlement requiring the federal government to allow public access to administrative hearings at detention facilities);

(28) Aviles-Torres v. INS, 790 F.2d 1433 (1986) (lead counsel in federal
Court of Appeals case reversing Immigration Judge's denial of political
asylum; interpretation of federal asylum and withholding statute)

(29) United States v. Phra Winai (lead counsel in federal criminal and
political asylum case involving high-profile Buddhist monk from Thailand;
federal criminal case favorably resolved through settlement and political
asylum granted avoiding extradition to Thailand where monk faced religious
persecution).

INTERNATIONAL WORK (PARTIAL LISTING):

(1) South Africa Constitution Watch Commission (1990-1994)

Founder and coordinator of an international commission to report on the
constitutional positions of major parties in South Africa as evaluated under
international human rights law. Commission included over 40 prominent
jurists and political leaders, including former Costa Rican President Oscar
Arias and former U.S. President Jimmy Carter.

(2) Haitian Interdiction Petition (Sept. 1990-98)

Lead counsel in successful human rights petition before the Inter-American
Commission on Human Rights of the Organization of American States
(OAS) challenging the U.S. Government's program of interdicting and
returning Haitian refugee boatpeople without regard to their right to life, due
process, to depart their country, and to seek asylum. Petition resulted in
lengthy decision finding United States Government in violation of several
binding international instruments; Commission's final decision was adopted
by the General Assembly of the Organization of American States.

(3) Stecel 11 Case.

Represented 11 leading trade unionists, longest held political prisoners in El
Salvador during U.S.-backed war; petition filed with the Inter-American
Commission on Human Rights of the OAS; release of prisoners negotiated
and safe passage to Amsterdam obtained.

17

(4) Dennis Quintanillia--Kidnapped Child.

Negotiated release of U.S. citizen child kidnapped by Salvadoran National Guard after assassination of mother in El Salvador (New York Times, Feb. 20, 1983, p. 1).

(5) Legal counsel to President Bertrand Aristide of Haiti.

Following his exile by military coup. successful entry into the United States following exile by coup; assisted in negotiations with U.S. Government for return to power; accompanied President Aristide when returned to Haiti.


OTHER ACTIVITIES:

(1) *Founder and director of Voces Unidas,* a nation-wide project undertaken in 2005 with the goal of identifying and representing low-income women and children victims of sexual harassment, abuse and discrimination and provide no cost legal representation.

(2) *Founder and director of "Safe Haven" and "Freedom House" ("Casa Libre")* group homes for unaccompanied immigrant and refugee children; acquired $2 million funding to purchase and operate shelter facilities to provide youth with temporary housing, family reunification services, legal services, medical care, mental health counseling, etc. (www.casa-libre.org)


EDITORIAL SERVICE (for dates of service contact Peter Schey):

Migration Today
Board of Editors of the Immigration Law and Procedure Reporter (Matthew Bender),
Editorial Board, Immigration and Nationality Law Review (Clark Boardman),
Advisory Board, Migration World Magazine (Center for Migration Studies).


BAR ASSOCIATION AND COMMUNITY SERVICE:

President of the Board, El Rescate (2004-2006), Board member 2006-
present.
Board member, People's College of Law (2006-2009).
President of Community Media Project (1993-1998).
Vice-Chairperson of the Individual Rights Section of the Los Angeles
County Bar Association (1986, 1990, 1992, 1994).
General Counsel to the United California Mexican-American Association
(1981-present).
Board member Hermandad Mexicana Nacional (1988-1994).
National Advisory Board Member, the National Asylum Appeals Project of
the Lawyers Committee for Civil Rights (1986-1992).
Board member The Resource Center (New Mexico) (1984-1986, 1990-
1998);
Board member CRISPAZ (Texas) (1986-87);
Advisory Board, Bhopal Justice Campaign (1989-1993)
Advisory Board, Guatemala Information Center (1989-1990).
National Advisory Board, Guatemala Support Network (1992- present).
Board member National Coalition for the Rights of Immigrants and
Refugees (1990-1999).
Executive Committee of the Immigration Section of the Los Angeles County
Bar Association (1986).
General Counsel to the Coalition for Humane Immigration Reform of Los
Angeles (CHIRLA) (1987-88).
Executive Committee, National Lawyers Guild Los Angeles Chapter (1988-
1998).
Chair, International Action Committee of the National Lawyers Guild
(1995-2000).


TREATISE:

(1) Immigration Law and Procedure, chapter on political asylum (8- volume
treatise on immigration and refugee law published by Mathew Bender)

(2) Immigration Law & Crimes,, major contributor (published by Clark
Boardman publishing company, 1984)


AWARDS:

2010 Loyola Marymount University recipient *Intercultural Dialogue Person of the Year Award*

1996 County of Los Angeles and League of United Latin-American Citizens commendation for dedicated service to the affairs of the Latino community in the U.S.

1988 Carol King Award for efforts "to secure justice for Salvadoran asylum seekers" ID 1986 Commendation for Pro Bono Services by State Bar of California

1985 Jack Wasserman Memorial Award by American Immigration Lawyers Association for "excellence in litigation" on behalf of immigrants

1980 Clarence Darrow Foundation Award for civil rights litigation

1980 Award for Outstanding Service to Hispanic Community by United California Mexican American Association
PROFILES:

* New Times of Los Angeles (June 20, 2002)
* National Law Journal, Vol. 9, # 26 (March 1987)
* Los Angeles Times, Deja Vu for Rights Attorney (Nov. 10, 1994)


PARTIAL LISTING OF CLIENTS SUCCESSFULLY REPRESENTED IN U.S. COURTS AND/OR INTERNATIONAL LAW PETITIONS:

U.S. Representative Xavier Becerra
U.S. Representative Ron Dellums
California Senate Majority Leader Richard Polanco
Chinese American Citizens Alliance (Washington, DC)
United Farm Workers of America (AFL-CIO) (California)
National Council of Churches (New York)
United Methodist Church (Washington, DC)
League of United Latin American Citizens (LULAC)
American G.I. Forum (Dallas, Texas)
American Apparel, Inc.
Dov Charney, Founder and CEO of American Apparel
Micro Solutions Enterprises (MSE)

International Commission for the Defense of Salvadoran Refugees (San Salvador)
Gerardo Hernandez (Cuba Five)
Clergy and Laity Concerned (Washington, DC)
Lutheran Council in the U.S.A. (Washington, DC)
International Tribal Council (San Francisco, Ca.)
Guatemala Support Network (Washington, DC)
Global Exchange (San Francisco, Ca.)
California Catholic Conference (Sacramento, Ca.)
Southern California Ecumenical Council (Los Angeles, Ca.)
Arizona Farm Workers Union (Arizona)
California Native American Heritage Commission (Sacramento, Ca.)
International Commission for the Defense of Salvadoran Refugees (San Salvador) Comisión Mexicana de Defensa y Promoción de Los Derechos Humanos, A.C. (Mexico)
Central American Refugee Center (Washington, D.C.)
ACLU Foundation of S. California (Los Angeles, CA)
Center for Constitutional Rights (New York)
American Friends Service Committee (AFSC) (Philadelphia, Pa.)
National Farm Worker Ministries Washington, DC
Washington Office on Haiti (Washington, DC)
Haitian Center for Human Rights (Port-au-Prince, Haiti)
Palestine Aid Society (New York)
National Coalition for Haitian Refugees (New York)
Haitian Refugee Center (Miami, Fla.)
United California Mexican American Association (San Diego, Ca.)
Arab-American Anti-Discrimination Committee (Washington, DC)
Committee in Solidarity with the People of El Salvador (Washington, DC)
National Association of Arab Americans (Washington, DC)
Association of Arab-American University Graduates, Inc.
Bay Area Anti-Apartheid Network (San Francisco, CA)
International Jewish Peace Union
National Conference of Black Lawyers (New York)
American Indian Movement (Colorado)
National Lawyers Guild (New York)
Coalition Against Police Abuse (Los Angeles, CA)
Palestine Solidarity Committee (New York)
Association for Residency and Citizenship of America Academia Mexicana de Derechos Humanos, A.C. (Mexico)

Exhibit 2

1
2
DECLARATION OF VIRGINIA CORRIGAN

3
I, Virginia Corrigan, declare and say as follows:

4
1. I execute this declaration in support of plaintiffs' motion for an award of attorney's

5
fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d).

6
2. I am an attorney who is of counsel to the plaintiffs in this action. I am employed as

7
a staff attorney by the Youth Law Center (YLC), a non-profit, public interest law firm that

8
works to protect the rights of children and youth in the nation's foster care and juvenile

9
justice systems from abuse and neglect. A true and correct copy of my resume detailing my

10
experience and qualifications is included as Exhibit A to this declaration.

11
3. Throughout this litigation, I have maintained contemporaneous records of time I

12
have spent on this case. Exhibit B to this declaration sets forth a true and correct itemization

13
of this time. I have exercised billing judgment in preparing the attached time records.

14
4. The total time I believe compensable for my work in this matter is 9 hours, as

15
reflected in the itemization included as Exhibit B to this declaration.

16
I declare under penalty of perjury that foregoing is true and correct to the best of my

17
knowledge.

18
Executed this 24th day of May, 2019, at San Francisco, California.

19
20
21
Virginia Corrigan

22
/ / /

23
24
25
26
27
28

Exhibit 2-A

# VIRGINIA CORRIGAN
535 41st St. Apt. 2, Oakland, CA 94609 ▪ (248) 840-8981 ▪ vircorri@gmail.com

## PROFESSIONAL EXPERIENCE

**Youth Law Center,** San Francisco, CA                                                                                  **2015-Current**
*Staff Attorney*
Litigation: Act as of counsel for plaintiff class in *Flores v. Whitaker* settlement enforcement litigation.  Draft motions
to enforce in the Central District of California and briefs on appeal to the Ninth Circuit; develop oral argument; in
settlement negotiations; interview clients and draft declarations; conduct monitoring and fact-finding inspections.
Draft and coordinate amicus briefs on issues affecting youth in foster care in California and Michigan state courts.
Regulatory, Legislative, and Policy Advocacy: Draft comments on proposed state and federal regulation and agency
guidance on a wide range of issues, including Title 15 regulations and licensing standards for group care facilities.
Draft and sponsor successful legislation on juvenile justice and foster care issues.  Research and draft policy briefs on
issues including extended foster care, extracurricular participation for systems-involved youth.
Coalition Work: Lead statewide coalition to eliminate the use of chemical agents in juvenile facilities.  Participate in
multiple state and national workgroups on foster care and juvenile justice issues.  Developed collaboration with Santa
Clara Probation, judiciary, and other stakeholders to improve services for transition-aged youth.
Training: Supervise interns and fellows.  Provide training on foster care and juvenile justice issues to judges, attorneys,
court staff, probation and child welfare agencies, California community college support program staff, and researchers.

**Youth Law Center/Contra Costa Public Defender**, San Francisco/Martinez, CA,                    **2013-2015**
*Equal Justice Works Fellow*
Represented Public Defender clients involved in extended foster care before Contra Costa Juvenile Court during
approximately 150 hearings, including periodic reviews, probation violations, and immigration-related requests.
Represented clients in two bench trials.  Briefed multiple novel legal issues, including eligibility for special immigrant
juvenile status and extended foster care.  Drafted complaint to U.S. Department of Justice regarding use of pepper
spray in San Diego juvenile detention facilities.  Created and ran pro bono juvenile record sealing clinic.

**United States District Court, Eastern District of Michigan**, Detroit, MI                              **2011-2013**
*Law Clerk for Judge David M. Lawson*
Researched and wrote bench memos.  Drafted memos and reviewed draft opinions for sittings on the Sixth Circuit.

**Cleary Gottlieb Steen & Hamilton**, New York, NY and London, England                            **Summer 2010**
*Summer Associate*
Researched domestic violence-based asylum claims.  Drafted SEC disclosure language and board resolutions.

**U.S. Attorney's Office**, Boston, MA                                                                                        **Fall 2009**
*Clinical Intern, Organized Crime Division.*
Wrote motion for summary disposition of appeal in First Circuit, immunity request, trial brief, *voir dire*, prosecution
memo, and detention affidavit.  Prepared training for U.S. Marshal Service on entry requirements.

## EDUCATION AND FELLOWSHIPS

**Harvard Law School**, Cambridge, MA, Juris Doctorate                                                          **May 2011**
Honors:  Graduated *cum laude*
Activities:  Managing Editor, *Harvard International Law Journal;* Harvard International Human Rights Clinic

**University of Michigan**, Ann Arbor, MI, Bachelor of Arts in Spanish and English                 **May 2007**
Honors: Graduated with Highest Honors and Honors in English; 8-Semester James B. Angell Scholar

**Stanford Law School**, Palo Alto, CA, Public Interest Leadership Pipeline and Sustainability Program   **2018-2019**
**Fulbright English Teaching Assistant**, Merida, Venezuela                                                        **2007-2008**

## PERSONAL

**Language:** Fluent in Spanish
**Bar Admissions:** California (2013), New York (2012)

Exhibit 2-B

**Flores Defendants' *Ex Parte* Application for Relief**

| | Activity Date | Memo/Description | Duration |
|---|---|---|---|
| **Ms. Virginia Corrigan** | | | |
| | 6/21/18 | review memorandum in support of motion for limited relief, draft internal memorandum summarizing and discussing | 1.5 |
| | 6/22/18 | Flores co-counsel conference call to discuss response to ex parte motion for relief | 1.5 |
| | 6/25/18 | call with Peter Schedy to discuss strategy and drafting response to motion for relief | 1 |
| | 6/25/18 | review draft memo in response to motion for relief | 0.5 |
| | 6/25/18 | internal YLC brainstorm on how to frame arguments in response to motion for relief | 1 |
| | 6/25/18 | research on asylum process for motion for relief response | 1 |
| | 6/27/18 | call with Peter Schey to discuss Dilly visit and response to motion for relief | 0.75 |
| | 6/29/18 | review and edit draft memo in response to motion for relief | 1 |
| | 7/3/19 | read amicus briefs in opposition to motion for relief | 0.75 |
| **Total for Ms. Virginia Corrigan** | | | 9 |

27

Exhibit 3

DECLARATION OF RACHEL LEACH

I, Rachel Leach, declare and say as follows:

1.    I was one of the attorneys representing plaintiffs in this action. I was employed by and served as staff attorney of the Center for Human Rights and Constitutional Law (CHRCL), a non-profit, public interest law firm that provides free legal representation to indigent immigrants and refugees. I execute this declaration in support of plaintiffs' motion for an award of attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d). A true and correct copy of my resume detailing my experience and qualifications is included as Exhibit A to this declaration.

2.    I graduated from the George Washington University Law School in May 2016 and was then admitted to the District of Columbia Bar in July of 2017. I have worked as a staff attorney at CHRCL from January 2018 to present.

3.    Since 1984 CHRCL's practice has focused on litigation, advocacy and technical support in furtherance of the rights of immigrants and refugees. As regards legal support services, the California Legal Services Trust Fund has funded CHRCL since 1982 to provide technical support and training to qualified legal services programs and attorneys serving *pro bono publico* in the areas of immigration law, constitutional law, and impact litigation. In my capacity as CHRCL's staff attorney, I regularly provided technical support, advocacy support, and training to legal aid and *pro bono* lawyers on immigration law and policy.

4.    Throughout this litigation, I maintained records of time I worked on this case. Exhibit B to this declaration sets forth an itemization of this time. I have exercised billing judgment in preparing the attached time records. I have not recorded numerous short discussions and meetings with Carlos Holguin or Peter Schey involving the Flores litigation on almost a daily basis. Nor have I recorded numerous short telephone conversations and emails, with consultants and pro bono attorneys involving the appeal of Defendants' *Ex Parte* Application for Limited Relief from the Settlement Agreement.

5.  The total time I believe compensable for my work related to plaintiffs' opposition to Defendants' *Ex Parte* Application for Limited Relief from the Settlement Agreement, is 15.5 hours, as reflected in the attached itemization.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 28rd day of May, 2019, at Los Angeles, California.


Rachel Leach

/ / /

Exhibit 3-A

Flores v. Sessions
Time Records for Rachel Leach

| Date: | Task: | Notes: | Hours: |
|---|---|---|---|
| 06/22/18 | Flores v. Sessions | Drafting Proposed Order | .25 |
| 06/25/18 | Flores v. Sessions | Excerpting Flores Orders | .75 |
| 06/25/18 | Flores v. Sessions | Phone call/emails with co-counsel | 1 |
| 06/26/18 | Flores v. Sessions | Research on Influx & Data | 3.5 |
| 06/29/18 | Flores v. Sessions | Consolidating Edits on Oppo. | 2 |
| 05/22/19 | Flores v. Barr | Drafting EAJA Motions | 7 |
| 05/23/19 | Flores v. Barr | Drafting Decs for EAJA Motion | 1 |

**Total: 15.5**

Exhibit 3-B

**Rachel Leach**

3142 Green Canyon Rd., Fallbrook, California 92028 · (480) 639 - 7853 · rleach270@gmail.com

## Education

**The George Washington University Law School**                                                **Washington, D.C.**

J.D. 2016                                                                                                           *May 2016*

*Activities:* The Domestic Violence Project (Clinical Course), WomensLaw (trained volunteer for domestic violence email hotline), Law Students for Reproductive Justice, Feminist Forum

**Arizona State University, School of Politics and Global Studies**                        **Tempe, AZ**

B.S. *summa cum laude,* in Political Science and minor in Religious Studies                    *May 2013*

*Honors & Activities:* CLAS (College of Liberal Arts and Sciences) Dean's List, Golden Key International Honour Society (2010 Inductee and Internal Relations Board Member), The National Society for Collegiate Scholars, Provost Scholarship (four-year, full-tuition award), Alumnae of Alpha Gamma Delta

## Admissions

District of Columbia Bar, Admitted July 2017

## Experience

**The Louis D. Brandeis Center for Human Rights Under Law**                           **Washington, D.C.**

*Legal Fellow*                                          *August 2016- December 2016, March 2017- October 2017*

- Analyzed and wrote memoranda on proposed state and federal anti-Semitism Awareness legislation and drafted state anti-Semitism Awareness legislation.
- Assisted with on-going litigation over the adoption of a BDS resolution by a non-profit organization.
- Conducted research and prepared memoranda on the Higher Education Act and the Administration's appropriation of Title VI funding.
- Wrote press releases and editorial submissions for The Brandeis Center blog.

**The D.C. Council, Office of At Large Councilmember Elissa Silverman**       **Washington, D.C.**

*Law Clerk*                                                                                           *January 2016- April 2016*

- Conducted research on issues of paid family leave, paid sick days, and the D.C. Public Sectors Workers' Compensation Program.
- Prepared memorandum on the intersection of employment discrimination and domestic violence and on the practicality of offering free long-acting reversible contraception to low-income women.
- Staffed Councilmember Silverman on various committee hearings.

**The George Washington University Law School, Professor Laurie Kohn**        **Washington, D.C.**

*Legal Research Assistant*                                                                      *May 2015- August 2015*

- Conducted research on domestic violence, civil protection orders, and issues of civil and criminal contempt.
- Edited legal citation format for submission to legal journals.

**The Law Office of Irena Karpinski**                                                               **Washington, D.C.**

*Legal Intern*                                                                                        *May 2015- August 2015*

- Prepared and maintained case files for immigration law and family law cases.
- Assisted in writing and preparing drafts of complaints for custody and child support, parental visitation, and termination of parental rights.
- Researched issues relating to obtaining immigrant visas.

**D.C. Coalition Against Domestic Violence**                                                     **Washington, D.C.**

*Policy Intern*                                                                                      *January 2015- May 2015*

- Conducted legal research and wrote a memorandum on the intersection of domestic violence and sexual assault.
- Researched and wrote summaries on the legal implications of sexual assault.
- Attended D.C. Council hearings and round tables and assisted policy attorneys in advocating for funding.
- Coinciding Field Placement for Domestic Violence Project Clinical Course.

34

Exhibit 4

## DECLARATION OF LAURA DIAMOND

I, Laura Diamond, declare and say as follows:

1.    I am an attorney representing plaintiffs in this action. I am employed by and serve as staff attorney of the Center for Human Rights and Constitutional Law (CHRCL),  a non-profit, public interest law firm that provides free legal representation to indigent immigrants and refugees, and class counsel in the instant matter.

2.    I execute this declaration in support of plaintiffs' motion for an award of attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d). A true and correct copy of my resume detailing my experience and qualifications is included as Exhibit A to this declaration.

3.    I graduated from UC Berkeley School of Law in May 1996 and was admitted to the California Bar in November of 1996. I have been a staff attorney with CHRCL since November 2019. Previously, I was a civil rights litigator with Knauf Associates and Center for Law in the Public Interest, and a clerk for Hon. George H. King on the Central District of California.

4.    In my capacity as CHRCL's staff attorney, I regularly provided technical support, advocacy support, and training to legal aid and *pro bono* lawyers on immigration law and policy.

5.    I maintained records of time I worked on this case. Exhibit B to this declaration sets forth an itemization of this time. I have exercised billing judgment in preparing the attached time records. My requested time incurred in the fee motion related to the July 9, 2018 order is limited to the fee motion itself. I have not recorded short discussions and meetings with Carlos Holguin or Peter Schey involving the Flores litigation on almost a daily basis. Nor have I recorded numerous short telephone conversations and emails, with consultants and pro bono attorneys involving the appeal of Defendants' *Ex Parte* Application for Limited Relief from the Settlement Agreement.

///

- 1

6.   The total time I believe compensable for my work related to plaintiffs' opposition to

Defendants' *Ex Parte* Application for Limited Relief from the Settlement Agreement, is 6 hours,

as reflected in the itemization attached as Exhibit B.


I declare under penalty of perjury that the foregoing is true and correct. Executed this 28th

day of May, 2019, at Los Angeles, California.


_Laura Diamond_

Laura Diamond

/ / /

- 2

37

Exhibit 4-A

**Laura Diamond**
15332 Antioch Street, # 510
Pacific Palisades, CA 90272
310-663-3816
ldiamond@centerforhumanri
ghts.org

---

## CAREER PROFILE

Advocate for civil rights and social justice in every phase of my career, education, and public service, including 10 years as a public interest litigator and 10 years as a Board member of one of L.A.'s leading housing and homelessness agencies.

## LEGAL EXPERIENCE

**Center for Human Rights and Constitutional Law**          **2018 - present**
**Los Angeles, CA**
**Staff Attorney**

- Legal research and drafting briefs in furtherance of enforcement of *Flores* Agreement regarding treatment of detained immigrant minors.
- Represent minors and recently aged-out Unaccompanied Alien Children in Immigration Court proceedings.
- Prepare and present in-person trainings to Los Angeles public service attorneys: Recent Developments in Ninth Circuit Immigration Law (December 2018) and Representing Youth in Immigration Court (February 2019).
- Prepare Practice Advisories and webinars distributed nationwide.

**Knauf Associates**          **2013 - 2018**
**Santa Monica, CA**
**Attorney**

- Civil rights litigation on behalf of individuals with disabilities, including mobility impairments, deafness, autism spectrum disorder, learning disabilities, and mental illness. Experience in federal and state court, and arbitration.
- Implement every aspect of litigation, including initial client interviews; legal research; drafting complaints; conducting discovery; writing and arguing civil motions; and trial.
- Collaborate with legal resource centers to maximize the public impact of private litigation.
- Advise associate attorneys on all aspects of litigation, legal strategy and writing.

**Center for Law in the Public Interest**          **1997 - 2003**
**Los Angeles, CA**
**Staff Attorney**

- Civil rights impact litigation, including educational equity, environmental justice, rights of foster youth and incarcerated youth, disability rights, and consumer rights; expertise in obtaining attorneys' fees for public interest law firm. Experience in federal and state court, at trial and appellate levels.
- Conduct legal research on novel issues of law; draft complaints; research, write, and argue civil motions and appeals; draft and enforce consent decrees.
- Collaborate with non-profit law firms, including ACLU, MALDEF, Western Center on

39

Law and Poverty, and Disability Rights Legal Center.

**United States District Court (Central District, CA)**                    **1996 – 1997**
**Los Angeles, CA**
**Law clerk**

Law clerk to Chief Judge, Hon. George H. King (ret.). Extensive experience in civil law and motion calendar.

## EDUCATION

**University of California, Berkeley, School of Law**                    **1993 - 1996**

J.D. 1996
California Law Review, Women's Law Journal, Berkeley Law Foundation.
Internships: ACLU of Southern California; Legal Services for Children, San Francisco; National Center for Youth Law, San Francisco; O'Melveny & Myers, Los Angeles.

**University of Pennsylvania, Philadelphia, PA**                    **1987 - 1991**

B.A., *cum laude*, 1991
E. Digby Baltzell Award for Best Undergraduate Sociology Thesis
Internships: Women's Law Project, Philadelphia, PA; Office of Congressman Henry Waxman, Washington, D.C.

## PROFESSIONAL AFFILIATIONS

Admitted to California Bar, 1996
Admitted to practice in U.S. District Court, Central and Eastern Districts of California, Ninth Circuit Court of Appeals, and U.S. Supreme Court

## BOARD MEMBERSHIPS/COMMUNITY SERVICE

PATH (People Assisting the Homeless), Board Member (2012 – present)
Beyond Shelter, Board Member (2005 – 2012)
Kehillat Israel, Board of Trustees, VP Social Justice & Tikkun Olam (2009 – 2015)
Westside Food Bank, Turning Point Shelter, CLUE (volunteer)

## LANGUAGES

Spanish

## PERSONAL

Author (*Shelter Us: a novel* (2015); *Deliver Me: True Confessions of Motherhood* (2007).
www.lauranicolediamond.com

Exhibit 4-B

Flores v. Sessions
Time Records for Laura Diamond

| Date: | Task: | Notes: | Hours: |
|---|---|---|---|
| 5/22/19 | Flores v. Sessions | Review EAJA fee motion; Conf R.Leach re same | 1.5 |
| 5/22/19 | Flores v. Barr | Prepare EAJA Exhibits | 1.0 |
| 5/23/19 | Flores v. Barr | Prepare Decs for EAJA Motion | 1.5 |
| 5/24/19 | Flores v. Barr | Conf V.Corrigan re prep exhibits for fee motion; edit motion | 1.0 |
| 5/28/19 | Flores v. Barr | Conf Carol Sobel re reasonable hourly rates, her declaration re same; Prepare exhibits to file with fee motion | 1.0 |
| | | **Total:** | **6.0** |

Exhibit 5

## DECLARATION OF CAROL A. SOBEL

I, CAROL A. SOBEL, declare:

1.    I am an attorney admitted to practice before the Supreme Court of the State of California.  I submit this declaration in support of the fees requested by counsel in this matter.  It is based on facts of which I have personal knowledge and, if I called to testify to those facts, I could and would do so competently.

2.    I graduated from law school and was admitted to practice in 1978. Following 20 years with the ACLU Foundation of Southern California, I entered private  practice in April of 1997.  My practice primarily involves complex civil rights litigation, focusing on the rights of homeless persons, First Amendment rights and police practices.  Exhibit "1" is my resumé.

3.    I have received many awards for my legal work over the years.  In 2008, I was named a California Lawyer of the Year (CLAY) recipient for civil rights by California Lawyer Magazine.  That same year, I was also named as one of the Top 75 Women Litigators in California by the Daily Journal Corporation.  In 2007, I received an Angel Award from California Lawyer Magazine for pro bono work and was also named by the Daily Journal as one of the Top 100 Most Influential Lawyers in California.  In 2013, 2014, and 2017, I was named one of the top women lawyers in Los Angeles or Southern California.  In the past, I have received several awards from the ACLU Foundation of Southern California, including the First Amendment Award. In June 2017, I received a lifetime award from the ACLU Foundation of Southern California.  I have been named as a Superlawyer in the area of First Amendment or civil rights litigation consistently for more than a decade.  Additional recognition of my legal work is set forth in my attached resumé.

4.    For the six years prior to 1997, I held the position of Senior Staff Counsel in the legal department of the ACLU Foundation of Southern California. During that time period, I was responsible for preparing many of the fee motions in cases where the ACLU represented the prevailing party.  Because the ACLU does not

1

bill clients on an hourly basis for its services, I was required to obtain information to establish reasonable market rates for the ACLU lawyers. It was my practice to obtain current billing rates for lawyers of comparable skill and experience at several firms throughout the City. I did this on an annual basis, contacting partners who were familiar with the ACLU lawyers in question so that they could make an informed judgment about the comparable skill levels of the attorneys at their firms whose rates were used to establish ACLU billing rates. At the time that I consulted these individuals, I was aware that the partners had been personally involved as pro bono counsel with the ACLU and worked with the ACLU lawyers for whom I sought to establish market billing rates, so they were able to assess the skill and experience of the ACLU lawyers based on personal knowledge.

6. Since entering private practice, I have continued to survey firms each year to obtain relevant comparisons for billing rates. I generally begin this process the first time in each year I prepare a fee motion, or enter into settlement discussions regarding fees. As part of my survey, I make it a point to obtain information concerning rates for attorneys in both larger law firms engaged in complex litigation, as well as smaller boutique civil rights law firms. Based on the information I obtained regarding rates at each of these firms, I am of the opinion that there is a significant difference between fees sought and awarded to attorneys at smaller civil rights firms and those at larger firms that sometimes do pro bono civil rights work.

7. Based on my review of fee motions, fee awards and other supporting market rate information, I hold the opinion that, in general, the rates sought by civil rights attorneys are at least 10 to 20 percent lower, and in some instances even more so, than the rates of comparable attorneys in commercial firms that do similarly complex litigation. This is so even when the commercial firm serves as co-counsel with public interest lawyers. Based on my experience over 39 years, including working at the ACLU and with the pro bono bar, the skill, experience and reputation of many of the lawyers at smaller boutique civil rights law firms is often greater than

2

that of lawyers in large firms with comparable years of practice, especially for those with 20 years or less experience, because there is a less hierarchal work distribution and the civil rights lawyers handle all aspects of major litigation from the start.

8.    To obtain information concerning market rates charged by attorneys in various legal markets in Southern California, I also review attorney fee applications and awards in other cases than my own.    Specifically, I regularly review fee applications submitted by, and awards to, private attorneys practicing the range of civil rights law, as well as court awards made to the ACLU, Disability Rights Legal Center ("DRLC"), Disability Rights Advocates, Asian Americans Advancing Justice, the Western Center on Law and Poverty ("WCLP"), MALDEF and other public interest groups in Los Angeles. I also review fee motions filed by private civil rights and public interest firms and attorneys, including Kaye McLane Bednarski & Litt, Sconbrun Seplow Harris & Hoffman, Hadsell Stormer & Renick, Dale Galipo, The Cochran Firm and McNicholas & McNicholas, among other firms. I do this to determine what is being sought and approved as market rates for lawyers from these firms. Because many of the cases brought by public interest groups are co-counseled by attorneys at private commercial firms, I have access to those billing rates as well. In addition to these two methods, when I become aware of a case where statutory fees are sought, I regularly obtain fee applications and any resulting awards from on-line public records for the courts, as well as from legal research databases such as LEXIS and Westlaw.    Included in my review of fee applications and awards are those by, and awards to, large firms engaged in complex litigation to assess customary billing rates for these firms, many of which also serve as pro bono counsel in public interest cases.    I estimate that I review around 100 or more fee motions, supporting declarations and fee awards annually.

9.    My declarations in support of fee applications for civil rights and public interest attorneys have been cited repeatedly by courts as evidence of reasonable market rates in Los Angeles. For example, in *Nadarajah v. Holder,* 569 F.3d 906,

912-914 (9th Cir. 2009), the Ninth Circuit referenced my declaration with approval in support of the application of attorneys from the ACLU for fees under the Equal Access to Justice Act ("EAJA"). In *Torrance Unified School District v. Magee*, 2008 U.S. Dist. LEXIS 95074 (CD CA 2008), granting fees pursuant to the federal IDEA statute, 20 U.S.C. §1415(i)(3)(c), the Court cited to my declaration as persuasive evidence of market rates. In *Atkins v. Miller*, CV 01-01574 DDP (CD CA 2007), this Court awarded fees to a 1975 graduate at $675 an hour, specifically citing to my declaration and that of Barry Litt to support the requested rates. Id. at pp. 8-9 and n.4. Additional cases in which my declarations have been cited favorably include, among others, *Charlebois v. Angels Baseball LP*, SACV 10-0853 DOC (May 30, 2012); *Orantes-Hernandez v. Holder*, 713 F.Supp.2d 29, 963-964 (C.D.Cal.2010); *Hiken v. DOD*, 2013 U.S. Dist. LEXIS 118165 (N.D. Cal. Jan. 14, 2013), *Vasquez v. Rackauckas*, 2011 U.S. Dist. LEXIS 83696 (C.D. Cal. 2011); *Rauda v. City of Los Angeles*, 2010 U.S. Dist. LEXIS 138837 (C.D. Cal. 2010); *Jochimsen v. County of Los Angeles, supra*; *Dugan v. County of Los Angeles*, cv-11-08145 CAS (C.D. Cal. March 3, 2014); *Carrillo v. Schneider Logistics*, Case: 12-55042 (9th Cir. 2014); *Wagafe v. Trump*, Case 2:17-cv-00094-RAJ [Doc. 223] (W.D. WA 02/27/19); and *Flores v. City of Westminster*, SA-CV-11-0278 DOC (C.D. Cal. Oct. 23, 2014). In Jochimsen, a unanimous court held that I was qualified to opine on reasonable market rates. A more recent decision approving rates based, in part, on my declaration is *Webb v. Officer J. Ackerman*, 13-cv-01992 PLA (C.D. Cal. January 4, 2018), Doc. 180, p.5.

10.    In addition, I have litigated statutory fee issues at the appellate level in several of my cases. Most notably, I was lead counsel before the California Supreme Court in *Tipton-Whittingham v. City of Los Angeles*, 34 Cal.4th 604 (2004), the companion case to *Graham v. Daimler-Chrysler*, 34 Cal.4th 533 (2004), establishing the continued vitality of the "catalyst" fee doctrine in California courts. I was also lead counsel in *Jones v. City of Los Angeles*, 555

4

47

Fed.Appx. 659 (2014), establishing entitlement to fees as a "prevailing party"
based on the Ninth Circuit's necessary approval of a settlement that was
conditioned on vacatur of the panel decision.

11.    My present billing rate is $1000 an hour for complex litigation. It
is rare for me to use a lower rate based on the type of case. As my resumé
indicates, my primary areas of practice range across homelessness litigation,
First Amendment issues, Fourth Amendment claims and other statutory and
constitutional matters. I do some individual cases, multiple plaintiff cases and
class actions. Also, I have considerable experience in employment litigation,
although I no longer do such cases. The *Tipton-Whittingham* case, identified in
paragraph 10, was a class-action employment discrimination case against the Los
Angeles Police Department. While some of my cases may be more simple than
others, I use the same rate in all cases on the premise that my skill generally
allows me to handle a simpler case in fewer hours than it would a less
experienced attorney.

12.    I have not filed a fee motion at my current rate; however, I settled
several cases in 2018 applying $975 an hour to calculate the lodestar. The most
recent fee awards I received as a result of a contested fee motion were in 2014.
I applied the $875 an hour rate in *Desertrain v. City of Los Angeles*, 754 F.3d
1147 (9th Cir. 2014), in which the parties settled the trial court and appellate
fees together with an approximately 5 percent reduction of the appellate lodestar.
In a second case in 2015, the Circuit panel approved the full requested fee award
at $875 an hour rate. See *CPR for Skid Row v. City of Los Angeles*, 779 F.3d
1098 (9th Cir. 2015).

13.    In 2012, I was paid at $795 an hour in a non-contingency case in the
Central District. *Federal Deposit Insurance Company v. Larry B Faigin,* 2:12-
cv-03448-DDP-CW (C.D. Cal. 2012). In 2010, I was awarded fees at $725 an
hour in *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011

5

48

(9th Cir. 2009), a First Amendment case.  In 2009, I was awarded fees by this Court at $710 an hour in *Fitzgerald v. City of Los Angeles*, 2009 U.S. Dist. LEXIS 34803 (CD Cal. 2009), and in *Multi-Immigrant Worker Organizing Network ("MIWON") v. City of Los Angeles*, cv 07-7032 AHM, both police misconduct cases.  In 2008, I was awarded fees in the district court at $695 an hour in *Jones v. City of Los Angeles*, cv-03-1142 R.  *See* 444 F.3d 1118 (2006), vacated per settlement 505 F.3d 1006 (9th Cir. 2007).  The fee award was affirmed on appeal. 2014 U.S. App. LEXIS 1952 (9th Cir. Jan. 31, 2014.

14.     My opinion on the reasonableness of the rates sought by counsel is based on comparisons to rates approved for attorneys of comparable skill, experience and reputation in the Central District legal market.  In all of the fee declarations that I prepare, I apply my understanding of the decision in *Blum v. Stenson*, 465 U.S. 886 (1984), that "rates charged in private representations may afford relevant comparisons." *Id.* at 895 fn. 11.  I understand this to mean that fees for civil rights lawyers should approximate the rates charged by attorneys of comparable skill, experience and reputation in the relevant legal market, who are engaged in similarly complex litigation, regardless of whether the attorneys work for a non-profit, represent individuals on contingency, serve as in-house counsel, or charge a minimal rate for paying clients with the possibility of receiving a market rate award if successful. *See, Nadarajah v Holder,* 569 F3d at 910 (awarding market rates to attorneys at the ACLU).

15.     I apply several additional principles to analyze reasonable market rates.  First, when available, I look to rates awarded to the attorney in previous cases based on my understanding that such awards are strong evidence of reasonable market rates. *See Chaudhry v. City of Los Angeles*, 751 F3d 1096, 1111 (9th Cir. 2014); *U.S. v. $28,000 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 976 (9th Cir. 2008).

16.   Next, I look to evidence of billing rates by attorneys engaged in similarly complex business litigation as an approved method of establishing reasonable market rates for civil rights attorneys who do not regularly bill clients on an hourly basis.  This approach recognizes that most civil rights attorneys are not paid hourly for their services at market rates. *See e.g.,* Pearl, *California Attorney Fee Awards*, CEB 2012, §9.109 (2012).  Evidence of billing rates for other attorneys that I rely on is drawn from fee awards as well as declarations regarding rates filed in pending cases.  Such evidence is one of the most common ways to establish market rates. *See e.g., Beauchamp v Anaheim Union High Sch. Dist,* 816 F3d 1216, 1224 (9th Cir 2016); *U.S. v $28,000 in U.S. Currency,* 802 F3d at 1106 (district court erred by ignoring plaintiff's supporting rate declarations); and *Chaudhry,* 751 F3d at 1111.

17.   Third, I apply the rule that the relative "simplicity" or "complexity" of a case is reflected in the efficiency of hours, not the lodestar rate of the attorney. *See Van Skike v Director, Office of Workers' Compensation Programs,* 557 F3d 1041, 1046 (9th Cir. 2009).

18.   As stated in paragraph 8, above, I estimate that I review a combination of approximately 100 fee motions, fee awards, and supporting declarations in the course of a year.  I obtain this information from court orders in prior years awarding statutory fees or awarding fees as a discovery sanction. I subscribe to several websites that report legal news.  If I learn of a case where there is likely to have been a fee motion, I review the docket and obtain a copy of any fee motion, supporting declarations and fee award from public sources, including on-line documents for the Los Angeles Superior Court and PACER. In addition, if I provide a fee declaration and the opposition then files an expert challenging the proposed rates, I search PACER and the various Superior Court dockets to find cases where the defense expert provided fee declarations, as well as cases where the same expert filed a declaration supporting high market rates in fee-shifting cases

19.   I do not rely on surveys if other, more specific comparative information is available.  It is my understanding that the Ninth Circuit has

7

rejected reliance on general rate surveys because they do not provide specific rates by years and experience but, instead, rely on an average or "range" of fees, often covering attorneys with unequal experience in a single category and capping rates after approximately 25 years. *Jordan v. Multnomah County*, 815 F.2d 1258, 1263-64 (9th Cir. 1987). In addition to the absence of any information about how long the various partners and associates have been practicing, there is often no indication of whether they do transactional law, or anti-trust or other similarly complex litigation.

20.   To support my opinion, I have relied on several decisions and fee declarations which are now three years old.   Because a prevailing party's attorney is entitled to current market rates, I have extrapolated a comparable current rate by applying a modest increase of 3.1 percent.  This is the average amount of the increase in the legal services component of the Consumer Price Index.   The data is available at http://www.bis.gov/news.release/cpi.102.htm (Table 2. Consumer Price Index for All Urban Consumers (CPI-U): U.S. city average, by detailed expenditure category).  In *Hiken v. DOD*, the Ninth Circuit recently reiterated that "market rates in effect more than two years *before* the work was performed" are not current rates under the lodestar analysis.  802 F.3d at 1107 (9th Cir. 2016) (emphasis in original).

21.   As an example of courts approving annual increases in rates, a true and correct copy of the order in *Avila   v. Los Angeles   Police   Department*, cv-11-01326  SJO (C.D. Cal. Aug. 2, 2012) is attached at Exhibit 4.  There, Judge Otero concluded that a reasonable 2012 rate for Matthew McNicholas, a 1997 graduate, was $700 an hour. Judge Otero rejected the defense assertion that Mr. McNicholas should only receive $650 an hour, noting that rates increase as attorneys gain more skills. *Id.* at pp.3-4.

22.   I am informed that counsel seek EAJA enhanced rates for three attorneys in this motion: Peter Schey and Carlos Holguin.  I am personally familiar with each of them.  I first met Peter Schey in about 1977, when I was at the ACLU.   At the time, he was co-counseling a   case with the ACLU.  Carlos Holguin was a year behind me in law school.  We have known each other for

approximately 44 years. In particular, I am aware that, with Peter Schey and Carlos Holguin, apart from this case, have won major judgments and settlements in numerous important cases involving the rights of vulnerable immigrant groups, including but not limited to *Catholic Social Services v. Immigration and Naturalization Service*, 232 F.3d 1139 (9th Cir. 2000); *Immigrant Assistance Project of the L.A. County Fed'n of Labor v. INS*, 306 F.3d 842 (9th Cir. 2002); and *Plyler v. Doe*, 457 U.S. 202 (1982).

23.    Set out below is the rate sought by each and the amount of experience they now have.

| | | |
|---|---|---|
| Peter Schey | 46 years | $975 |
| Carlos Holguin | 40 years | $900 |

24.    Mr. Schey has five years more experience than do I. The 2019 rate he requests is only $100 above the rate approved for me by the Ninth Circuit in 2015, when I had nine years less experience than he has now. His rate is also lower than the rate approved three years ago for Paul Kiesel, who I believe to be a 1985 law graduate.

25.    Mr. Holguin is seeking enhanced attorney fees pursuant to EAJA for 2019 at the rate of $900 an hour. This is an increase of slightly more than five percent over two years from the rate of $850 an hour approved for Mr. Holguin in this matter in 2017. That is less than his rate would increase applying the 3.1 percent legal services increase in the CPI.

26.    To support my opinion on the reasonableness of the rates sought by this motion, I attach fee awards and supporting declarations in several recent civil rights cases in the Los Angeles legal market. Each document is a true and correct copy of the documents as it appears in the Court's files.

27.   As noted below, I am personally familiar with many of the attorneys identified in the attached exhibits.  In my 40 years of involvement in the civil rights community in Los Angeles, I have co-counseled with, supervised, or taught hundreds of lawyers and law students, many of whom now practice civil rights law in Los Angeles.  This allows me to evaluate comparable skills, experience and reputation for the attorneys.

28.   Attached at Exhibit 2 is the Declaration of Anna Rivera in support of the motion for attorney fees in *Garcia v. Los Angeles*. 2:09-cv-08943 DMG-SH [Doc 443] (C.D. CA 2017).  I provided a supporting declaration in *Garcia*.  Based on discussions with Ms. Rivera, I understand that the parties settled the fees after the motion was filed.  The 2017 rates sought included $875 an hour for Paula Pearlman, the former Executive Director of the Disability Rights Legal Center ("DRLC") in Los Angeles. Ex. 2, ¶ 25.  She is identified as a 1982 law graduate. Ex. 2, ¶¶ 21-23.   In 2017, Ms. Pearlman had 11 years less experience than Mr. Schey has now.  The difference of $100 in their rates is an annual increase of approximately $9 an hour.

29.   Also in *Garcia*, Ms. Rivera attested to the 2017 rate of $745 an hour for Shawna Parks, identified as a 1999 law graduate, Ex. 2, ¶¶ 26-30.  In 2017, Ms Parks had 18 years of experience.  Mr. Holguin, a 1979 law graduate, had 38 years of experience in 2019.  His requested rate is only $155 an hour above the 2017 rate for Ms. Parks.   This averages out to an annual increase of approximately $7.75 an hour.

30.   Attached at Exhibit 3 is the Declaration of Matthew Young, setting outthe rates  for  attorneys  in  the  law  office  of  Paul  Kiesel  and specifically, supporting Mr. Kiesel's 2015 rate of $1100 an hour, $125 above the rate now sought by Peter Schey. Ex. 3, p. 41.  Mr. Young attests that the rates sought were the firm's 2015 customary rates for non-contingent matters and were also approved in other class-action cases, listing several of those actions. *Id.* ¶ 14. I know Mr. Kiesel well.  He was my co-counsel on a case against the LAPD

10

approximately 26 years ago when I was a staff attorney at the ACLU. Based on my personal knowledge, I believe that Mr. Kiesel is a 1985 law graduate, with 30 years of experience in 2015. Mr. Schey has 16 years more experience now.

31.     Attached at Exhibit 4 is the Declaration of Barrett S. Litt filed in support of the motion for attorney fees in *Nozzi v. Authority of the City of Los Angeles*, Case 2:07-cv-00380-PA-FFM (C.D. CA. 2017) [Doc. 323]. I provided a declaration in support of the fee motion. The Court approved the fees as part of a lodestar review of the final settlement in the matter; however, because the Court's Order did not list the rates individually, the Declaration of Barrett S. Litt is attached. Mr. Litt's 2017 rate was $1150 an hour. Ex. 4, ¶ 9. In 2017, Mr. Litt had the same amount of experience as Peter Schey has now.

32.     In *Nozzi*, fees were also approved for Anne Richardson at $850 an hour. She is identified as a 1989 law graduate, then at Public Counsel. Ex. 4, ¶ 9. Carlos Holguin has approximately 12 more years of experience than Ms. Richardson did in 2017. The difference in their rates is approximately $4 an hour annually. Applying the 3.1 percent legal services cost-of-living increase to Judge Richardson's 2017 rate, the equivalent rate for an attorney with 28 years experience would be approximately $910 an hour, higher than the rate Mr. Holguin requests.

33.     Attached at Exhibit 5 is the motion for attorney fees filed in support of the 2018 request for final approval of the settlement in *Housing Works v. County of Los Angeles*, 2:15-cv-08982 GW (RAOx). The Court approved the request but did not set out the individual rates. The motion sought fees for attorneys at Western Center on Law and Poverty (WCLP), Public Counsel, Legal Aid of Los Angeles (LAFLA), Disability Rights Legal Center and the pro bono firm of Morrison & Foerster. The requested rates for each firm are attached at Exhibit 1 to the Motion. The 2018 rates included $975 an hour for Richard Rothschild, identifed as a 1975 law graduate then with 43 years of experience; $950 an hour for Robert Newman, identified as a 1977 law graduate then with 41 years of experience; $850 an hour for Yolanda Arias, identified as a 1986 law

graduate then with 32 years experience; $800 an hour for Barbara Schultz,identified as a 1993 law graduate, then with 23 years of experience; $850 anhour for Anne Richardson, identified as a 1989 law graduate then with 29 yearsexperience; and, $920 an hour for Paula Pearlman, identified as a 1982 law graduate then with 36 years of experience. Ex. 5, pp. 25-8.   The rates for Mssrs. Schey and Holguin are well below comparable rates at these public interest firms.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 28th day of May, 2019 at Santa Monica, California.

CAROL A. SOBEL

12

Exhibit 5-1

# CAROL A. SOBEL

725 Arizona Avenue• Suite 300 • Santa Monica, CA 90401 •
Tel. 310 393-3055 • Email carolsobellaw@gmail.com

## Employment:

| | |
|---|---|
| LAW OFFICE OF CAROL A. SOBEL | APRIL, 1997 TO PRESENT |

Solo civil rights law firm.

| | |
|---|---|
| SENIOR STAFF COUNSEL | 1990 TO APRIL, 1997 |

*ACLU Foundation of Southern California*

Responsible for conducting civil rights and civil liberties litigation in state and federal courts in California; supervise litigation by ACLU volunteer counsel and other ACLU legal staff.

| | |
|---|---|
| STAFF ATTORNEY | 1985 TO 1990 |

*ACLU Foundation of Southern Califorina*

Civil liberties litigation, primarily in the areas of Establishment Clause and Free Exercise violations, as well as other First Amendment rights.

| | |
|---|---|
| ASSOCIATE DIRECTOR | 1979 TO 1985 |

*ACLU Foundation of Southern California*
*American Civil Liberties Union of Southern California*

Under the direction of the Executive Director, responsible for administration of two non-profit organizations, including working with Boards of Directors on development of policy on civil liberties issues. Engaged in litigation and assisted Legal Director in coordination and supervision of pro bono attorneys.

| | |
|---|---|
| DEVELOPMENT DIRECTOR | 1977 TO 1979 |

*ACLU Foundation of Southern California*
*American Civil Liberties Union of Southern California*

Responsible for conducting a variety of fundraising efforts to meet a million-dollar plus annual budget for a 501(c)(3) and a 501(c)(4).

## Admitted to Practice:

| | |
|---|---|
| California Supreme Court | No vember, 1978 |
| United States Supreme Court | Sep tember, 1991 |
| Ninth Circuit Court of Appeals | August, 1986 |
| U.S.D.C. Central District of California | February, 1986 |
| U.S.D.C. Eastern District of California | June, 1990 |

## Litigation Experience:

### Federal courts: (Partial listing of published opinions and significant cases)

*CPR for SKID ROW,*
779 F.3d 1098 (9th Cir. 2015)
Partial reversal of summary judgment in favor of the Defendant and holding that California Penal Code §403 could not lawfully be applied to criminalize the expressive activity of the Plaintiffs for protesting on Skid Row.
(Lead counsel and argued on appeal)

*Desertrain v. City of Los Angeles*
754 F.3d 1114 (9th Cir. 2014)
Reversal of summary judgment in favor of the Defendants and holding that Los Angeles Municipal Code §85.02, prohibiting parking a vehicle on public streets or parking lots any time of day or night if a person "lives" in the vehicle, is unconstitutionally vague.
(Lead counsel and argued on appeal)

*Lavan v. City of Los Angeles*
693 F.3d 1022 (9th Cir. 2012), *affirming* grant of preliminary injunction 797 F.Supp.2d 1005 (C.D. Cal. 2011)
Preliminary injunction barring City from confiscating and immediately destroying the property of homeless individuals on Los Angeles' Skid Row.
(Lead Counsel)

*Long Beach Area Peace Network v. City of Long Beach*
522 F.3d 1010 (9th Cir. 2008), as amended July 24, 2009
Upholding and reversing in part on appeal a decision of the district court granting Plaintiffs' request for a preliminary injunction to enjoin a municipal parade ordinance that included vague permit standards setting, *inter alia*, advance-notice requirements police charges based on the past unlawful conduct of third parties without adequate standards to limit the discretion of public officials charged with implementing the parade ordinance.
(Lead counsel)

*Fitzgerald v. City of Los Angeles*
485 F.Supp.2d 1137 (CD CA 2008)
Extending injunction against police sweeps of homeless persons on Los Angeles' Skid Row on the grounds of searching for parole and probation violations. See below for discussion of permanent injunction in 2003.
(Co-Counsel)

*Multi-Ethnic Immigrant Worker Organizing Network (MIWON) v. City of Los Angeles*
246 F.R.D. 621 (C.D. Cal. 2007)
Order granting class certification in challenge to police assault on a lawful assembly of immigrant rights supporters by the Los Angeles Police Department on May Day, 2007.
(Class Co-Counsel)

*Edward Jones, et al., v. City of Los Angeles*,
444 F.3d 1118 (9th Cir. 2006), vacated pursuant to settlement 505 F.3d 1006 (2007)
Challenge to City of Los Angeles Municipal Code §41.18(d), prohibiting sitting, lying or sleeping on any street or sidewalk anywhere in the City at any time of day or night. Plaintiffs, all of whom are homeless persons, brought an 8th Amendment as-applied challenge to their arrests and citations for violating the ordinance when their was no available adequate shelter.
(Co-counsel)

*Terry Tipton-Whittingham, et al. v. City of Los Angeles*
316 F.3d 1059 (9thCir. 2003)
Challenge by City of Los Angeles to interim fee award granting plaintiffs' fees as "catalysts" under state civil rights fee shifting statutes. Following oral argument, the Ninth Circuit certified issue of continued availability of "catalyst" fees under California law after adverse decision by the United States Supreme Court rejecting catalyst fee doctrine under federal law absent express legislative authorization. Certified for hearing before the California Supreme Court and ultimately upheld the catalyst fee doctrine under California law.
(Co-counsel; argued in Ninth Circuit)

*Fitzgerald v. City of Los Angeles*
2003 U.S. Dist. LEXIS 27382 (CD CA 2003)
Permanent injunction enjoining Fourth Amendment violations by the Los Angeles Police Department (LAPD). The injunction prevents the LAPD from engaging in stops of homeless persons for parole and probation sweeps on Skid Row without reasonable suspicion to believe that specific individuals are on parole or probation and subject to a search condition, or that the individual has engaged in, or is about to commit a crime.
(Lead counsel)

*Khademi v. South Orange County Community College District*
194 F.Supp.2d 1011 (CD CA 2002)
First Amendment facial challenge invalidating college policy regulating time, place and manner of student speech on campus.
(Lead counsel)

*Mardi Gras of San Luis Obispo v. City of San Luis Obispo*
189 F. Supp.2d 1018 (C.D. Cal. 2002)
Preliminary injunction to enjoin a municipal parade ordinance that required lengthy advance-notice requirement and permitted high insurance and police charges based on the past unlawful conduct of third parties without adequate standards to limit the discretion of public officials charged with implementing the parade ordinance.

*Bauer v. Sampson*
261 F.3d 775 (9th Cir. 2001)
First Amendment challenge to disciplinary action against college professor for publication of an alternative newsletter criticizing elected and appointed public officials and disclosing wrongdoing by college officials and personnel. The college sought to discipline the professor for violating the district's policies on discrimination and work-place violence. The polices were declared unconstitutional as applied to the professor's speech.

*H.C. v. Koppel*
203 F.3d 610 (9th Cir. 2000)
Dismissal of federal civil rights action filed in federal court against state court judge and appointed counsel for minor in family law matter. Circuit held that Younger Abstention applied and non-custodial parent had adequate state court remedy.

*Justin v. City of Los Angeles*
2000 U.S. Dist. LEXIS (CD Cal. 2000)
Class action to enjoin police sweeps of homeless population on Los Angeles' Skid Row. Permanent injunction stipulated to in settlement following certification of the injunctive relief class.
(Lead counsel)

*Los Angeles Alliance for Survival, et al. v. City of Los Angeles*
987 F. Supp. 819 (1997); 157 F.3d 1162 (9th Cir. 1998); on certification to the California Supreme Court, 22 Cal.4th 352 (2000); 224 F.3d 1076 (9th Cir. 2000)
Injunction issued in challenge to municipal ordinance barring so-called "aggressive solicitation" in broad areas of traditional public fora. Preliminary injunction entered by district court based on California Constitution. On appeal, the Ninth Circuit certified the California Constitution question to the California Supreme Court. Following decision by the California Supreme Court, the Ninth Circuit upheld the original injunction.
(Co-counsel)

*Service Employees International Union 660 v. City of Los Angeles*
114 F. Supp.2d 966 (C.D. Cal. 2000)
Challenge to the "no-protest zone" at the Democratic National Convention in Los Angeles in 2000, as well as a preliminary injunction to enjoin the City of Los Angeles parade ordinance.
(Co-counsel)

*United States v. Wunsch*
54 F.3d 579 (9th Cir. 1995);84 F.3d 1110 (9th Cir. 1996) (reargument)
First Amendment challenge to discipline of male attorney for "gender bias" in sending note to female Asst. U.S. Attorney after she successfully moved to disqualify him as defense counsel in a criminal case. Ninth Circuit invalidated the penalty and declared unconstitutional California's "offensive personality" regulation on attorneys' professional conduct. (Argued and briefed on appeal).

*American Jewish Congress v. City of Beverly Hills*
65 F.3d 1539 (9th Cir. 1995);90 F.3d 379 (9th Cir. 1996) (en banc)
First Amendment challenge to display of a religious symbol on public property and to permit scheme for expressive activities in public fora in the City of Beverly Hills. The en banc panel held the permit scheme unconstitutional and found that a preference had occurred for the display of a particular religious symbol. The en banc decision was unanimous. (Argued and briefed on appeal)

*Baca v. Moreno Valley Unified School District*
936 F. Supp. 719 (C.D. Cal. 1996)
First Amendment challenge to school board regulations preventing speakers from making disparaging remarks about public employees during public board meetings.

*Wallin v. City of Los Angeles*,
1194 U.S. App. LEXIS 2343 (9th Cir. 2004)

Circuit dismissed appeal of defendant City and law enforcement officers from denial of qualified immunity. Appellee, a female officer with the Los Angeles Police Department, alleged that appellants violated her right to equal protection, due process and right to petition the government because they violated LAPD confidentiality regulations and delayed the investigation into her allegations of co-worker rape.

(Lead counsel)

*National Abortion Federation v. Operation Rescue*
8 F.3d 680 (9th Cir. 1993)
Class-action state-wide injunction against blockades of women's health care clinics by anti-abortion activists. First case decided under the "frustrate and hinder" clause of 42 U.S.C. § 1985(3), the 1871 Ku Klux Klan Act. Appeals court held cause of action under "frustrate and hinder" clause was properly plead and reversed 12(b)(6) ruling on that claim.

(Co-lead counsel throughout; argued on appeal)

*Hewitt v. Joyner*

940 F.2d 1561 (9th Cir. 1991)

Establishment Clause challenge to Christian theme park, Desert Christ Park, owned and operated by San Bernardino County. Ninth Circuit held County ownership and operation of the park violated the Establishment Clause.

(Lead counsel throughout litigation; argued on appeal).

*Standing Deer v. Carlson*

831 F.2d 1525 (9th Cir. 1986)

First Amendment challenge for Native Americans at Lompoc Federal Penitentiary to regulation barring religious headbands in the dining facilities for purported health reasons.

(Argued and briefed on appeal)

*Burbridge v. Sampson*

74 F.Supp.2d 940 (C.D. Ca. 1999)

First Amendment challenge to community college policy regulating student speech in public fora on campus. Court issued a preliminary injunction, declaring the college's speech regulations unconstitutional.

*Rubin v. City of Santa Monica*

823 F.Supp. 709 (C.D. Ca. 1993)

First Amendment challenge to city permit scheme limiting access to public parks for protected expressive activities. Court issued a preliminary injunction and declared the permit scheme unconstitutionally on vagueness grounds and procedural due process grounds. (Lead counsel)

## State Court

*Terry Tipton-Whittingham, et al. v. City of Los Angeles*

34 Cal.4th 604 (2002)

California continues to recognize "catalyst" fee awards to prevailing parties under the private attorney-general statute (Cal. Code of Civ. Proc. §1021.5) and Fair Employment and Housing Act (FEHA) despite change in federal civil rights fee-shifting law. Under California law, there is no requirement of a judicial determination establishing a change in the legal obligations of the parties.

(Co-counsel and argued at California Supreme Court)

*Los Angeles Alliance for Survival v. City of Los Angeles*

22 Cal.4th 352 (2000)

Ordinance restricting certain activity as "aggressive solicitation" was not content-based under California Constitution

(co-counsel)

*Williams v. Garcetti*

5 Cal.4th 561 (1993), *sub nom Williams v. Reiner*, 13 Cal.App.4th 392 (1991)

Challenge on due process grounds to portion of STEPP law which imposed a criminal penalty on parents of minor children engaged in or at risk of delinquent conduct.

(Argued and brief on appeal to California Supreme Court)

*Sands v. Morongo Unified School District*

53 Cal.3d 863 , *cert denied*, 112 U.S. 3026 (1991)

225 Cal.App.3d 1385 (1989)

Establishment Clause challenge invalidating prayers at public high-school graduations.

(Argued and briefed as lead counsel throughout litigation)

*Walker v. Superior Court of Sacramento*

47 Cal.3d 112 (1988)

Establishment Clause/Free Exercise/Due Process challenge to criminal prosecution of Christian Science parents for death resulting from use of prayer instead of traditional medicine in treatment of ill child.  (Wrote amicus brief on due process issues).


*Irvine Valley College Academic Senate, et al. v. South Orange County Community College District*

129 Cal.App.4th 1482 (2005)

Statutory construction of plain language of Education Code §87360, bolstered by legislative intent, requires actual joint agreement and mutual development of revisions to faculty hiring policies.

(co-counsel, drafted final briefs on appeal)


*Fashion 21, et al. v. Coalition for Humane Immigrant Rights (CHIRLA), et al.*

111 Cal.App.4th 1128 (2004)

Special motion to strike defamation complaint by retainer against garment worker advocates must be granted as the plaintiff retailer could not establish a probability of prevailing on the merits of their claims.  Garment worker advocates properly relied on draft labor commission regulations suggesting retailer could be liable for sweatshop conditions of manufacturing of its retail goods.

(lead counsel at all stages)


*Gonzalez v. Superior Court*

33 Cal.App.4th 1539 (1995)

Challenge to discovery order in sexual harassment case requiring plaintiff to disclose name of confidential informant who provided her with photographic evidence of harassment.  "After-acquired evidence" rule applied to require disclosure.

(Lead counsel in trial court and appeal)


*Lantz. v. Superior Court of Kern County*

28 Cal.App.4th 1839 (1994)

Privacy rights challenge to interpretation of Consumer Personnel Records Statute (CCP § 1985(3), requiring strict adherence to statutory procedures and limiting exemption of local government agencies from adhering to statutory requirements.

(Lead counsel throughout litigation)


*Rudnick v. McMillan*

25 Cal.App.4th 1183 (1994)

Defamation verdict involving public figure plaintiff and local environmentalist author of letter to editor overturned on basis that letter was protected opinion and public figure subject to constitutional malice proof burden.  Wrote amicus brief which formed basis of appellate ruling.


*Westside Sane/Freeze v. Hahn*

224 Cal.App.3d 546 (1990)

Challenge to restrictions on First Amendment petition activities in shopping center.

(Co-counsel, co-wrote appeal)


*City of Glendale v. Robert George*

208 Cal.App.3d 1394 (1989)

Reversal of trial court order imposing prior restraints on speech of "Presidential Santa" on the basis that he constituted a public nuisance to his neighbors in a residential area.

(Argued and briefed on appeal)


*McCarthy v. Fletcher*

207 Cal.App.3d 130 (1989)

Challenge to removal of textbooks from school reading list based on community-based religious objections.  Court of Appeal reversed summary judgment decision, holding that there was sufficient evidence of constitutionally impermissible factors in evaluation of appropriateness of class-room reading materials.

(Argued and brief on appeal)

*Fiske v. Gillespie*

200 Cal.App.3d 130 (1988)

Challenge to sex-based actuarial presumptions in insurance industry rate for particular types of life insurance and annuity benefits.

(Co-Counsel, Argued on appeal)

# Publications:
# (Partial listing)s

*Catalyst Fees After Buckhannon*

Civil Rights Litigation and Attorney Fees Annual Handbook

(January 2006)

*Free Speech and Harassment: An Overview*
*in the Public Employee Sector*

CPER: CALIFORNIA PUBLIC EMPLOYEE RELATIONS

Institute of Industrial Relations - UC Berkeley

June 1999  No. 136

*Defeating Employer Defenses to Supervisor Liability*
*After* Ellerth *and* Faragher

ADVOCATE, October 1998

*Student Expression Under California Law*

UCLA Journal of Education

Volume 3, pp. 127-137 (1989)

*Should Attorneys Be Disciplined For Gender Bias*

Point/Counterpoint ABA Journal   August, 1995

*Fight Illegal Police Practices in State Court*

Los Angeles Daily Journal

March 6, 1992

*Judicial Oversight Limited by Supreme Court*

Los Angeles Daily Journal

May 6, 1991

*Jury Nullification is Conscience of Community*

Los Angeles Daily Journal

August 31, 1990

*A Basic Right Merits Shield From The Mob*

Los Angeles Times

August 11, 1991 p.M5

*Prop 115 revisited: Police charged with crimes*
*deserve fair trials too*
Los Angeles Daily News
May 7, 1991

*Prayer Doesn't Belong at Graduation*
USA Today
May 15, 1991 p. A10

*Killea Tactic Can Only Hurt the Church in the Long Run*
Los Angeles Times (San Diego)
November 20, 1989 p.B7

*The Fifth is a Shield for All*
Los Angeles Times
August 6, 1988   II8
(authored for Exec. Dir. ACLU)

*Which Way Will Rehnquist Court Turn?*
Los Angeles Daily News
June 18, 1986 p.21

*Constitution Exacts Cost for Religious Freedom*
Los Angeles Daily News
June 8, 1986 FOCUS  p.3

## Education:

| | |
|---|---|
| Peoples College of Law | J.D.  May, 1978 |
| Douglass College.For Women, Rutgers University | B.A .  June, 1968 |

## Professional and
## Community Activities:

| | |
|---|---|
| Adjunct Professor - Loyola Law School<br>Civil Rights Advocacy Practicum | 2007-present |
| Blue Ribbon Panel on LAPD Rampart Inquiry, Member | 2004-2006 |
| Ninth Circuit Gender Bias Task Force<br>Convenor, Advisory Committee on Employment Law | 1992-1993 |
| Ninth Circuit Conference on "Ethnicity, Race, and Religion in the Ninth Circuit"<br>Member, Working Subcommittee | 1993 |
| Los Angeles Public Interest Law Journal<br>Advisory Board | 2007-present |

139

| | |
|---|---|
| Los Angeles Center for Law and Community Action | 2015-present |
| Member, Board of Directors | |
| | |
| National Police Accountability Project | 2006-present |
| Member, Advisory Board and Board of Directors | |
| | |
| National Lawyers Guild, Los Angeles - President | 2001-2008 |
| | |
| National Lawyers Guild - National Executive Vice President | 2009-2011 |
| | |
| National Lawyers Guild Far West Regional Vice-President | 2003-2005 |
| | |
| National Lawyers Guild, National Executive Committee | 2003-2012 |
| | |
| NLG National Mass Defense Committee, Co-chair | 2003-2012 |
| | |
| Women Lawyers Association of Los Angeles | 1985-2002 |
| Member, ProChoice Committee | |
| | |
| The California Anti-SLAPP Project | 1995-2010 |
| Member, Board of Directors | |

## Awards:
## (Partial listing)

| | |
|---|---|
| PEN Freedom to Write Award | 1991 |
| | |
| American Jewish Congress Tzedek Award | 1992 |
| | |
| Planned Parenthood Los Angeles, Distinguished Service Award | 1990 |
| | |
| Freethought Heroine Award | 1992 |
| | |
| National Lawyers Guild - Los Angeles | 1999 |
| | |
| ACLU of Southern California Pro Bono Attorney Award | 2001 |
| | |
| Asian Pacific American Legal Center Pro Bono Award | 2003 |
| | |
| California Lawyer: Super Lawyer -Civil Rights/Constitutional Law | 2004-2014 |
| | |
| ACLU of Southern California Freedom of Expression Award | 2007 |
| | |
| Daily Journal Top 100 Most Influential Lawyers in California | 2007 |

| | |
|---|---|
| National Lawyers Guild - Ernie Goodman Award | 2007 |
| Angel Award - California Lawyer Magazine Award for pro bono work | 2007 |
| CLAY Award (California Lawyer of the Year - civil rights) - California Lawyer Magazine | 2008 |
| Top 75 Women Litigators in California - Daily Journal | 2008, 2013 |
| California Super Lawyers - Top 50 Women Lawyers in Southern California | 2014 |
| National Lawyers Guild, Los Angeles Law for the People Award | 2014 |
| ACLU Lifetime Achievement Award | 2017 |

Exhibit 5-2

DISABILITY RIGHTS LEGAL CENTER
   Anna Rivera (Bar No. 239601)
   anna.rivera@drlcenter.org
   Maronel Barajas (Bar No. 242044)
   Maronel.barajas@drlcenter.org
350 S. Grand Ave Suite 1520
Los Angeles, CA 90071
Telephone: (626) 389-8277
Facsimile: (213) 736-1428

MILBANK TWEED HADLEY & McCLOY LLP
   Linda Dakin-Grimm (Bar No. 119630)
   ldakin@milbank.com
   Daniel M. Perry (Bar No. 264146)
   dperry@milbank.com
   Samir L. Vora (Bar No. 253772)
   svora@milbank.com
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile: (213) 629-6063
*Attorneys for PLAINTIFF MICHAEL GARCIA and the Plaintiff Class*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GARCIA on behalf of himself and others similarly situated,<br><br>                              Plaintiff,<br><br>     vs.<br><br>LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, a public entity, et al.,<br><br>                         Defendants. | Case No. : CV 09-08943 DMG (SHx)<br><br>DECLARATION OF ANNA RIVERA IN SUPPORT OF PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES RELATED TO CLASS ACTION SETTLEMENT WITH COUNTY OF LOS ANGELES |

## DECLARATION OF ANNA RIVERA

I, ANNA RIVERA, declare:

   1.    I am a Senior Staff Attorney at the Disability Rights Legal Center ("DRLC"). The DRLC, along with co-counsel at Milbank Tweed, Hadley & McCloy ("Milbank"), represents Plaintiff Michael Garcia and has been appointed by the Court as Class Counsel. The facts set forth herein are based upon my personal knowledge, my review of documents prepared and/or maintained by DRLC in the ordinary course of business, and information provided to me by employees of DRLC's co-counsel, Milbank. If called as a witness, I could and would testify competently thereto.

   2.    DRLC is a 501(c)(3) non-profit public interest organization dedicated to advancing the civil rights of people with disabilities through education, advocacy and litigation. Founded in 1975, DRLC is one of the oldest non-profit, public interest law centers to focus on representing individuals with diverse disabilities. DRLC's mission is to champion the rights of people with disabilities through education, advocacy and litigation.  DRLC accomplishes its work through several programs, including the Civil Rights Litigation Program, Education Advocacy Program, Cancer Legal Resource Center, the Inland Empire Program, and the Community Advocacy Program. DRLC, engages in, *inter alia*, class action, multi-plaintiff and other complex impact litigation on behalf of individuals with disabilities who face discrimination or other violations of civil rights or federal statutory protections. DRLC is generally acknowledged to be a leading public interest organization.  Attorneys in the firm have lectured at local, state, and national legal and professional organizations on the law applicable to individuals with disabilities.

-1-

3. DRLC has litigated complex civil rights and public interest cases for over 40 years with a focus on impact complex litigation affecting the disability community. Examples include: *Willits, et. al. v. City of Los Angeles*, Case No. CV 10-05782 CBM (RZx) (a successfully settled class action challenging the City of Los Angeles' failure to maintain pedestrian right of ways, including sidewalks and curb ramps for people with mobility disabilities); *Ms. Wheelchair California v. Starline Tours*, No. CV11-02620JFW (CWx) (C.D. Cal.) (a successfully settled class action resulting in company-wide change in policy governing accessible tours and seating); *Peter Johnson et al. v. Los Angeles County Sheriff's Department et al.*, USDC Case No. CV 08-03515 DDP (SHx) (a successfully settled class action currently in the monitoring stage on behalf of individuals with mobility impairments to obtain program and physical access while detained in the Los Angeles County Jail); *Casey A., et al. v. Robles, et al.*, Case No. CV10-00192-(GHK) (FMx) (C.D. Cal.) (a successfully settled class action addressing Los Angeles County's failure to provide youth in the County's largest probation camp with basic and appropriate education and rehabilitative services); *Doe2 v. County of San Bernardino, et al.*, (CV ED 02-962 SGL) (a successfully settled class action addressing the County's failure to provide special education and mental health services to children with disabilities in their custody in juvenile detention); *Valenzuela v. County of Los Angeles*, Case No. CV 02-9092 (JWJx) (C.D. Cal.) (a successfully settled class action addressing failure to provide effective communication for people who are deaf and hard of hearing in field and jail settings by Los Angeles County Sheriff's Department); and *Lauderdale v. Long Beach Police Department*, Case No. CV 08-979 ABC (JWJx) (a successfully settled class action addressing police department's failure to provide effective communication for people who are deaf or hard of hearing.).

*//*

DECLARATION OF ANNA RIVERA IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES

69

4.    As a non-profit law firm and a provider of legal services pursuant to grants and other funding, DRLC does not charge fees to its clients for any work undertaken on their behalf.  DRLC primarily handles cases in which the client cannot afford to retain a law firm, where other lawyers will not handle the matter, and/or where the injunctive relief is the primary outcome of the litigation. Our legal services are provided free of charge to our clients, with attorneys' fees generally paid pursuant to fee shifting statutes.

### Case History and Settlement with County Defendants

5.    Plaintiff obtained excellent results through the settlement reached with Defendants County of Los Angeles, Los Angeles County Sheriff's Department, Sheriff Baca in his official capacity (collectively, "County Defendants").

6.    As representatives of class, Plaintiffs engaged in thorough discovery to ensure that the parties and the Court had adequate information to assess the barriers to accessing special education in the jail and relief sought for the class—as well as the reasonableness of the Settlement Agreement.  The discovery included: substantial written discovery, including interrogatories, requests for admissions, and requests for production of documents, which resulted in the combined production of approximately hundreds of documents.  Further, Plaintiffs actively pursued discovery in this matter. Due to disagreements that arose during the discovery process, the parties met and conferred on many occasions and Plaintiffs also filed a discovery motion.  In addition to extensive written discovery, Plaintiffs deposed four County of Los Angeles officials and the County of Los Angeles' expert witness. The County of Los Angeles deposed the Named Plaintiff as well as Plaintiff's expert witness.

7.    In addition, the parties filed cross-motions for summary judgment.

8.    In the summer of 2009, the Parties began settlement negotiations. The Parties participated in extensive arms-length settlement negotiations, which

DECLARATION OF ANNA RIVERA IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES

included extensive written negotiations, multiple in-person meetings, telephonic settlement negotiations, and multiple in-person settlement conferences with Judge Terry J. Hatter Jr., who acted as a settlement officer in this case.

9. Concurrently with the Lawsuit, Los Angeles Unified School District ("LAUSD") commenced a civil action ("Related Case") in the United States District Court for the Central District of California, Case No. 2:09-cv-09289-VBF-CT appealing the decision of the California Office of Administrative Hearings ("OAH") which found that, pursuant to California Education Code section 56041, the LAUSD was the entity legally responsible for providing Plaintiff Michael Garcia with a free appropriate public education while he was incarcerated in the LACJ. The District Court in the Related Case subsequently entered orders affirming the OAH decision. On or about June 3, 2010, LAUSD appealed that order to the United States Court of Appeals for the Ninth Circuit.

10. Plaintiffs' settlement negotiations with the County Defendants where effectively stayed pending the outcome of LAUSD's appeal in the Related Case in the Ninth Circuit. On or about January 20, 2012, the Ninth Circuit certified the question to California Supreme Court. On or about March 28, 2012, The California Supreme Court agreed to take the matter. On or about December 17, 2013, the California Supreme Court issued a seminal decision, holding that the assignment of responsibility for providing special education to eligible county jail inmates between the ages of 18 and 22 years is governed by the terms of California Education Code Section 56041. The Ninth Circuit then issued a final decision on January 28, 2014, finding that the District Court's ruling in the Related Case was consistent with the California Supreme Court's answer to the certified question, the Ninth Circuit Court of Appeals affirmed the District Court's decision affirming the 2009 decision of the administrative law judge.

DECLARATION OF ANNA RIVERA IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES

11.     Subsequent to this decision, the Parties renewed their settlement negotiations.  The Parties engaged in several in-person meetings, telephonic negotiations, and exchanged multiple written drafts of the Settlement Agreement. The Parties worked diligently to finalize the terms of the proposed Settlement Agreement. On or about February 9, 2017 the Parties entered into a written Settlement Agreement. Attached hereto as Exhibit A is a true and correct copy of the Settlement Agreement.

12.     Plaintiff obtained excellent results through the settlement reached with Defendants County of Los Angeles, Los Angeles County Sheriff's Department, Sheriff Baca in his official capacity (collectively, "County Defendants").

13.     Plaintiff described the terms of that settlement in more detail in his Motion for Preliminary Approval of Class Action Settlement Agreement. (*See* Dkt. No. 424-1 and 424-3).  As part of the settlement agreement, the County Defendants have agreed to do the following: (a) administer a questionnaire to all newly booked 18-22 year old individuals who are processed through the LACJ Inmate Reception Center aimed at identifying those inmates who would like to receive special education services, (b) notify the charter school that currently provides services at the LACJ of those individuals who affirmatively state they would like to receive special education services, (c) create and distribute an informational pamphlet regarding the availability of special education services and how to request them, (d) modify its Inmate Grievance/Service Request Form to include a box titled "Special Education/IEP," (e) designate an employee or employees who will facilitate the provision of special education services, and (f)  train relevant Sheriff's Department staff regarding the provision of special education services to eligible students.

DECLARATION OF ANNA RIVERA IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES

14.    The qualifications of Class Counsel have been set forth in great detail in the earlier class certification briefing in this case and are discussed further below in paragraphs 19-57.  (*See* Dkt. Nos. 81-84).

### DRLC Rates

15.    In setting our rates, DRLC reviews published cases and unpublished decisions concerning attorneys' fees rates used by comparable non-profit public interest organizations, awards that DRLC has received for attorneys' fees, and other information from private attorneys relating to the rates charged by private firms for comparable litigation.  DRLC also carefully monitors its billing practices to ensure that courts are able to properly perform the lodestar analysis for a fee award. We also take into account the experience of the attorneys and staff working on the case and the complexity of the case.

16.    Several courts have found DRLC's hourly rates reasonable. Examples of courts finding DRLC's hourly rates reasonable include:

- *Michael Garcia v. Los Angeles County Sheriff's Dept.*, Case No. CV 09-8943 MMM (SHx), the United States District Court for the Central District of California approved DRLC's 2011 historical rates in a class action. Attached as Exhibit B is a true and correct copy of that order.

- *California in Communities Actively Living Independent and Free, et al. v. City of Los Angeles et al*., Case No. CV 09-0287 CBM (RZx) the United States District Court for the Central District of California found DRLC's 2012 historical rates reasonable. This included a range of $450-$550 for staff attorneys and $230 for law clerks.  And the court found a 2012 historical hourly rate of $550 for a 2003 law graduate was reasonable. *Id*. at 6:11-14. The court further found that the plaintiffs had "provided sufficient evidence . . . supporting the reasonableness of their 2012 requested hourly rates" and "that requested hourly rates correspond to the prevailing market rates in the

DECLARATION OF ANNA RIVERA IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES

relevant community, considering the experience, skill, and reputation of the attorneys in question." *Id*. at 2:18-20. Attached hereto as Exhibit C is a true and correct copy of that order.

- *Peter Johnson v. Los Angeles County Sheriff's Department*, Case No. CV 08-03515 DDP (SHx), the United States District Court for the Central District of California granted Plaintiffs' Motion for Attorneys' Fees and Costs in full. Attached as Exhibit D is a true and correct copy of that order. In particular, the motion that was granted sought time billed by DRLC attorneys at 2014 historical hourly rates of $800 for a 1982 graduate, $700 for a 1992 graduate, $500 for a 2005 graduate and an hourly rate of $230 for law clerks. See, Declaration of Richard Diaz in support of Plaintiffs' Motion for Attorneys' Fees, attached as Exhibit E (summary of hourly rates sought by Plaintiffs at para. 38 of Diaz Declaration) (exhibits to Declaration omitted due to length).

- *Willits et al v. City of Los Angeles et al*, Case No. CV 10-5782 CBM (RZx), the United States District Court for the Central District granted Plaintiffs' Motion for Attorneys' Fees and Costs and approved DRLC's 2014 historical hourly rates. Attached as Exhibit F is a true and correct copy of that order. In particular, the motion that was granted sought time billed by DRLC attorneys at 2014 historical hourly rates of $680 for a 1987 graduate, $550 for a 2003 graduate, $375 for a 2010 graduate, and an hourly rate of $230 for law clerks. Id. at pg.6.

- *Greater Los Angeles Agency on Deafness, Inc. et al v. Krikorian Premiere Theaters*, LLC, Case No. CV 13-07172-PSG (ASx), the United States District Court for the Central District of California approved DRLC's 2015 historical rates in a class action which had

-7-

1   systemic implications regarding access to movie theaters for
2   individuals who are deaf or hard of hearing.  Attached as Exhibit G is
3   a true and correct copy of that order.

4   17.   Experts in the field have also found DRLC's 2016 historical rates to
5   be reasonable.  For example, in a declaration in support of plaintiff's motion for
6   reasonable attorney fees and costs, Mr. Barrett S. Litt opined as to the
7   reasonableness of DRLC's rates in the matter of *Independent Living Center of*
8   *Southern California et al v. City of Los Angeles, et al.*, Case No. CV 12-0551 FMO
9   (PJW), a class action case currently pending in the United States District Court for
10  the Central District of California. Attached as Exhibit H is a true and correct copy
11  of that declaration (exhibits have been omitted due to length).

12  18.   DRLC's current rates have also been found reasonable by Richard
13  Pearl, an expert in the area of attorney fees charged in California and elsewhere.  In
14  a declaration in support of plaintiff's motion for reasonable attorney fees and costs,
15  Mr. Pearl opined as to the reasonableness of DRLC's rates in the matter of *Ochoa*
16  *et al v. City of Long Beach et al*, Case No. 2:14-cv-04307-DSF-FFM, a class action
17  case currently pending in the United States District Court for the Central District of
18  California. Attached as Exhibit I is a true and correct copy of that declaration.

19  19.   DRLC's hourly rates for staff on this case are set forth in the chart
20  below at paragraph 66. This chart lists the billing attorney, year of law school
21  graduation, and pertinent hourly rate for all DRLC staff for whom fees are
22  requested in this matter.  Based on the information that I reviewed in working with
23  the Director of Litigation to set our hourly rates, I believe our rates to be consistent
24  with the current prevailing market rates charged by other attorneys with
25  comparable skills, qualifications, experience, and reputation in the market covered
26  by the Central District.

27  //
28  //

-8-

DECLARATION OF ANNA RIVERA IN SUPPORT OF PLAINTIFF'S MOTION
FOR AWARD OF ATTORNEYS' FEES

### DRLC Attorneys and Their Roles

20.     In addition to the hours expended by Milbank, Plaintiff is seeking compensation for eight DRLC attorneys who billed on this matter:  (1) Paula Pearlman, former Executive Director; (2) Shawna L. Parks, former Legal Director of the DRLC; (3) Maronel Barajas, Director of Litigation; (4) Matthew Strugar, former Staff Attorney; (5) Umbreen Bhatti, former Staff Attorney; (6) Carly Munson, former Staff Attorney; (7) Andrea Oxman, former Staff Attorney; (8) Elliot Field, former Staff Attorney.

21.     Paula Pearlman was the Executive Director at DRLC when she worked on this instant matter. As Executive Director, her duties included oversight of DRLC's litigation efforts. She also taught a Disability Rights class at Loyola Law School in Los Angeles.  I understand that, prior to joining DRLC, Ms. Pearlman was a former Supervising Attorney at the California Women's Law Center, where she specialized in sex discrimination in employment and education. I understand that Ms. Pearlman graduated from the Southwestern University School of Law in 1982. I understand that she has served on the U. S. Access Board Courthouse Access Advisory Committee, as the board chair of the Employment Round Table of Southern California (ERTSC), as a board member of the Legal Aid Association of California, as co-chair of the Lawyer Representatives of the Central District, Ninth Circuit Judicial Conference, and as a member of the California State Bar Standing Committee on the Delivery of Legal Services.

22.     I understand that Ms. Pearlman has received numerous awards including the 2010 St. Ignatius of Loyola Award, St. Thomas More Society, the 2009 "FEHA 50th Anniversary Civil Rights Award," from the California Department of Fair Employment and Housing, and she was a 2007 Legal Aid Association of California Attorney Award of Merit Recipient. She was named a "Super Lawyer" in 2009 in the area of public interest law and class actions, and

she was a 2007 finalist for "Attorney of the Year" for Trial Lawyers for Public

Justice.

23.    I understand that Ms. Pearlman's experience with the plaintiffs and

understanding of public entity work was important to filing this case. I understand

that Ms. Pearlman participated in depositions, settlement conferences, and

conferred within DRLC to discuss strategy and tasks.

24.    A 2014 historical hourly rate of $800 was previously approved for

Ms. Pearlman in *Peter Johnson v. Los Angeles County Sheriff's Department*, Case

No. CV 08-03515 DDP (SHx); that order and related declaration are attached

hereto as Exhibits D and E.

25.    DRLC seeks compensation for Ms. Pearlman at an hourly rate of

$875, which is DRLC's 2017 billing rate for an attorney of her experience.

26.    Shawna L. Parks is a 1999 graduate of U.C. Berkeley School of

Law, and a 1995 graduate of U.C. Berkeley.  I understand that from 1999-2000

Ms. Parks was a Fulbright Scholar in Budapest, Hungary, where she researched a

recently enacted nondiscrimination statute, worked on developing test litigation,

and co-organized a conference of Eastern European disability rights advocates.

27.    From early 2012 through late 2013 Ms. Parks was a Director of

Litigation at Disability Rights Advocates in Berkeley, California. From 2005

through early 2012 Ms. Parks was at the Disability Rights Legal Center where she

was Legal Director from 2009 through late 2011. Prior to her work at the DRLC

Ms. Parks was a staff attorney and Equal Justice Works Fellow at Disability Rights

Advocates from 2000 through 2003. From 2003 through 2004 she was an associate

at what was then known as Schonbrun DeSimone Seplow Harris & Hoffman,

where she worked primarily on race and gender discrimination employment cases.

Ms. Parks has extensive expertise in the substantive areas of disability rights, civil

rights and education, including special education. She has litigated numerous

-10-

cases, including both class actions and individual cases, in these fields. Ms. Parks is currently the principal attorney in the Law Office of Shawna L. Parks, which she founded in 2014.

28.    I understand that in the instant matter Ms. Parks participated in many aspects of the litigation including discovery, research, settlement, motion work and engaged in strategy sessions.

29.    A 2012 historical rate of $665 was approved for Ms. Parks in *CALIF, et al., v. City of Los Angeles, et al.*, 2011 WL 4595993 (C.D. Cal. 2011), Case No. 2:09-cv-00287- CBM-RZ. A true and correct copy of that fee order is attached hereto as Exhibit C. In that Order the Court describes Ms. Parks as "nationally recognized as a leading disability rights attorney." Order at 4:8

30.    DRLC seeks compensation for Ms. Parks at an hourly rate of $745, which is DRLC's 2017 billing rate for an attorney of her experience.

31.    Maronel Barajas is the Litigation Director at the Disability Rights Legal Center.  As the Director of Litigation, she oversees all aspects of DRLC's litigation program, including supervising and litigating individual, multi-plaintiff, and class action cases. This includes coordinating, supervising and providing substantive expertise and support to attorney staff and legal assistants, as well as law clerks and volunteers in DRLC's two offices.  Further, her duties as the Director of Litigation also include negotiating co-counseling agreements, outreach, grant writing, retaining experts, and budgeting.  She also lectures and provides training on disability rights issues in various forums and participates in legislative and regulatory comment on behalf of the organization.

32.    Ms. Barajas is a 2003 graduate of Columbia Law School and 2000 graduate of the University of California, Irvine. The majority of her practice has focused on civil rights matters, including matters on behalf of individuals with disabilities.  Indeed, civil rights has been my primary focus for approximately twelve years.  Approximately, nine of those years have been spent on cases

-11-

exclusively on behalf of individuals with disabilities. During this time, she litigated various cases in the area of disability rights, including individual, multi-plaintiff and class action cases. These cases have primarily been against public entities, and most often with the goal of system reform. Ms. Barajas has also supervised attorneys in numerous lawsuits affecting the rights of people with disabilities. As a result, she has developed extensive knowledge in the area of disability rights cases, cases requiring policy reform, and cases involving public entities.

33. After law school, from late 2004 through early 2005, Ms. Barajas worked as a legal representative for MACS Copy and Interpreting Inc., where her work focused primarily on worker's compensation matters. In early 2005, Ms. Barajas joined DRLC and held various positions until she left in late 2008. These positions included being an Education Advocate, Staff attorney, Associate Director and ultimately Director of the Education Advocacy Program. During 2005-2008, her work was exclusively on behalf of people with disabilities, with a focus on matters on behalf of students with disabilities. Ms. Barajas worked on cases at the administrative and federal court level. She also regularly lectured and trained on issues relating to individuals with disabilities, including participating in legislative and regulatory comment on behalf of the organization. By way of example, Ms. Barajas was an Adjunct Professor at Loyola Marymount University in Los Angeles where she taught an upper division Special Education and the Law course; guest lectured at Loyola Law School's Disability Rights and Special Education Law class; and wrote articles related to the rights of students with disabilities. In her capacity as Director of the Education Advocacy program, she also supervised attorney staff and managed DRLC's Education Advocacy Program's externship program. In 2007, during Ms. Barajas tenure as the Director, the Education Advocacy Program along with DRLC's litigation program was recognized as the Agency Winner at the National Association of Counsel for Children in Keystone,

Colorado for improving the educational opportunity for students with disabilities held in detention facilities and for improving the access to courts for individuals with disabilities.

34. In late 2008, Ms. Barajas left DRLC to become an associate with the former law firm of Traber & Voorhees, a prominent civil rights litigation firm in Pasadena, California. Traber & Voorhees recently dissolved after one its founding partners, Theresa M. Traber, was appointed to the bench. At Traber & Voorhees, her focused primarily on discrimination cases in the employment, education, and custodial context. Ms. Barajas handled matters at the state, federal and state appellate level. She remained an associate with Traber & Voorhees until early 2011.

35. In early 2011, Ms. Barajas returned to work with DRLC as the sole Senior Staff Attorney in the litigation program. In addition to focusing on impact and complex litigation, she co-authored an article with Paula Pearlman, Esq. for the 2011-2012 Ability magazine issue, titled "a boy and his dog" regarding a case where she was lead counsel from DRLC. To my knowledge, it was the first case of its kind where a federal court judge held that a student with autism had the right to attend school with his service dog. Until approximately 2013, Ms. Barajas also served as an Adjunct Professor at Loyola Marymount University where she taught an upper division Special Education and the Law course. Ms. Barajas also oversaw DRLC's externship program with Loyola Law School until that partnership ended. In 2015, she was promoted to Managing Attorney of the litigation department, and in late 2016, she was again promoted, this time to Director of Litigation, a position that she still holds.

36. I understand that Ms. Barajas participated in settlement and engaged in strategy sessions.

37. A 2012 historical hourly rate of $550 for a 2003 law graduate was previously approved in *California in Communities Actively Living Independent and*

-13-

*Free, et al. v. City of Los Angeles et al.*, Case No. CV 09-0287 CBM (RZx) at 6:11-14; that order and related declaration are attached hereto as Exhibit C.

38.  DRLC seeks compensation for Ms. Barajas at an hourly rate of $675, which is DRLC's 2017 billing rate for an attorney of her experience

39.  Matthew Strugar is a 2004 graduate from the University of Southern California Gould School of Law. When he worked on this matter, he was a Staff Attorney with the litigation department. While at DRLC, Mr. Strugar focused on class action and impact litigation centered on matters in the correctional context. I understand that Mr. Strugar participated in working with plaintiff and class members.

40.  DRLC seeks compensation for Mr. Strugar at an hourly rate of $660, which is DRLC's 2017 billing rate for an attorney of his experience.

41.  Umbreen Bhatti graduated from the University of Michigan Law School in 2005. I understand that prior to joining DRLC she was an associate at Latham & Watkins and later a staff attorney at the ACLU of Delaware, where she managed a caseload involving civil rights cases in state and federal court and before state commissions, litigating a wide variety of civil rights issues. While she worked on this matter she was a Staff Attorney with the litigation department. While at DRLC, Mr. Gibson focused on class action and impact litigation centered on physical and programmatic accessibility for individuals with disabilities. In the instant matter, I understand that Ms. Bhatti participated in settlement and engaged in strategy sessions.

42.  A 2014 historical hourly rate of $500 was previously approved for a 2005 graduate in *Peter Johnson v. Los Angeles County Sheriff's Department*, Case No. CV 08-03515 DDP (SHx); that order and related declaration are attached hereto as Exhibits D and E.

43.  DRLC seeks compensation for Ms. Bhatti at an hourly rate of $640, which is DRLC's 2017 billing rate for an attorney of her experience.

DECLARATION OF ANNA RIVERA IN SUPPORT OF PLAINTIFF'S MOTION
FOR AWARD OF ATTORNEYS' FEES

44. Carly Munson is a 2006 graduate from Boston University School of Law. When she worked on this matter, she was a Staff Attorney. While at DRLC, Ms. Munson focused on impact litigation centered with a focus on matters in the educational context. I understand that Ms. Munson participated in drafting, reviewing, and revising documents related to the complaint, investigating the claims, working with the plaintiffs, motion work and settlement. Ms. Munson also participated in regular conference calls with co-counsel to discuss strategy and tasks and conferred within DRLC and with co-counsel.

45. DRLC seeks compensation for Ms. Munson at an hourly rate of $625, which is DRLC's 2017 billing rate for an attorney of her experience.

46. Andrea Oxman is a 2007 graduate from the University of Southern California Gould School of Law. When she worked on this matter, she was a Staff Attorney with the litigation department. While at DRLC, Ms. Oxman focused on class action and impact litigation centered on physical and programmatic accessibility for individuals with disabilities. Ms. Oxman is currently an associate in private practice at Klinedinst PC. I understand that Ms. Oxman participated in drafting, reviewing, and revising documents related to the complaint, investigating the claims, working with the plaintiffs, discovery, motion work and settlement.

47. DRLC seeks compensation for Ms. Oxman at an hourly rate of $600, which is DRLC's 2017 billing rate for an attorney of her experience.

48. Elliot Field is a 2009 graduate from Loyola Law School. When he worked on this matter, he was a Staff Attorney. While at DRLC, Mr. Field focused on impact litigation centered with a focus on matters in the educational context. I understand that Mr. Fields participated in depositions and worked with plaintiffs.

49. DRLC seeks compensation for Mr. Field at an hourly rate of $525, which is DRLC's 2017 billing rate for an attorney of his experience.

50. DRLC law clerks also worked on this matter. DRLC seeks compensation for law clerks at an hourly rate of $250. DRLC seeks a currently

-15-

hourly rate of $250 for law clerks. DRLC relies on its law clerks primarily to do legal and factual research, and did so in this matter. DRLC's law clerks are law students from local law schools, including Loyola Law School.

51.     In *California in Communities Actively Living Independent and Free, et al. v. City of Los Angeles et al.*, Case No. CV 09-0287 CBM (RZx) the United States District Court for the Central District of California found DRLC's 2012 rates of $230 for law clerks reasonable; that order and related declaration are attached hereto as Exhibit C.

52.     DRLC also seeks compensation for work performed by Legal Assistants at a currently hourly rate of $250.

53.     In *California in Communities Actively Living Independent and Free, et al. v. City of Los Angeles et al.*, Case No. CV 09-0287 CBM (RZx) the United States District Court for the Central District of California found DRLC's 2012 rates of $230 for legal assistants reasonable; that order and related declaration are attached hereto as Exhibit C.

54.     The manner in which DRLC staffed this case is fairly standard for a case of this size and importance.

55.     DRLC made every effort to litigate this matter efficiently by coordinating our work, minimizing duplication, and assigning tasks in a time and cost efficient manner, based on the time keepers' experience levels and talents.

56.     The attorneys at Milbank worked on this matter as co-counsel and as appropriate. It was essential for the DRLC to co-counsel with the attorneys from Milbank in this matter particularly given their expertise and experience with litigation. The specific work that they did on the case and their rates are discussed fully in the Declaration of Samir L. Vora in Support of Plaintiff's Motion for Award of Attorneys' Fees and Expenses that is filed herewith.

//

//

-16-

## Method of Recording Time

57.   DRLC's method of recording attorneys' fees consists of recording time spent on particular cases as contemporaneously as possible with the actual expenditure of the time, in tenth of an hour increments, and submitting those time records in the regular course of business. DRLC's law clerks and support staff do the same.

## Exercise of Billing Judgment and Determining the Lodestar

58.   The $200,000 in fees and costs for DRLC and Milbank attorneys combined represents only a portion of the actual hours expended by Plaintiffs' counsel in the nearly eight years this case has been litigated. In determining the reasonable attorneys' fees for work performed DRLC calculated its lodestar based on its current 2017 hourly rates as well as apportioning those fees for work attributable to County Defendants.

59.   DRLC's total actual fees and costs through October 2011 is $810,851. A true and correct copy of DRLC's billing statement is attached here to as Exhibit J.

60.   In order to determine the amount of fees to apportion to County Defendants, I carefully reviewed DRLC's billing statement on an entry by entry basis in order to categorize time spent in the following categories: (a) time related to general furtherance of Plaintiff's claims in the case as a whole; and (b) time related specifically to County Defendants.

61.   This resulted in 869.70 hours of time, for a total value of $538,213.50 for time spent in general furtherance of the litigation.  And, 163.90 hours of time, for a total value of $101,812.50 for time spent related specifically to County Defendants.

62.   I then equally divided the time spent in general furtherance of the litigation among all Defendants in the litigation, for a total amount of

-17-

approximately 173.9 hours of time per defendant, for a total value of $107,642.70.

63.     I then added $101,812.50 (total value for time spent related specifically to County Defendants) and $107,642.70 (the corresponding fraction of time spent in general furtherance of the litigation among all Defendants). This billing discretion resulted in final lodestar of **$209, 455.20** for approximately 338 hours as applied to the County Defendants

64.     In reaching the lodestar for determining DRLC's fees and costs, I carefully reviewed all of the DRLC attorneys' billing statements.  In reviewing this time spent by DRLC attorneys and law clerks, I exercised billing judgment and in doing so wrote-off certain time, as appropriate.

65.     Below is a table of the DRLC time-keepers on this matter, including hours and total fees attributed to its claims against the County Defendants at the time of settlement:

| Attorney Name | Graduation | Billing Rate | Total Hours | Total Fees |
|---|---|---|---|---|
| Paula Pearlman | 1982 | $875 | 29.10 | $25,462.50 |
| Shawna Parks | 1999 | $745 | 223.70 | $166,656.50 |
| Maronel Barajas | 2003 | $675 | 20.10 | $13,567.50 |
| Matthew Strugar | 2004 | $660 | 12.00 | $7,920.00 |
| Umbreen Bhatti | 2005 | $640 | 11.80 | $7,552.00 |
| Carly Munson | 2006 | $625 | 143.00 | $89,375.00 |
| Andrea Oxman | 2007 | $600 | 758.60 | $455,160.00 |
| Elliot Field | 2009 | $525 | 49.30 | $25,882.50 |
| Law Clerks | N/A | $250 | 75.90 | $18,975.00 |

DECLARATION OF ANNA RIVERA IN SUPPORT OF PLAINTIFF'S MOTION
FOR AWARD OF ATTORNEYS' FEES

| | | | | |
|---|---|---|---|---|
| Paralegals | N/A | $250 | 1.20 | $300.00 |
| DRLC Total Fees | | | 1331.60 | $810,851.00 |
| Subtotal of DRLC Fees Spent in General Furtherance of Litigation | | | 869.70 | $538,213.50 |
| Subtotal of DRLC Fees Spent Specifically Related to County Defendants | | | 169.90 | $101,812.50 |
| **DRLC Fees Apportionment to County Defendants** | | | | **Total: $209, 455.20** |

66.     Since the time of settlement, DRLC has expended additional time negotiating and executing an amendment to the settlement agreement and in preparing the preliminary approval papers as well as the instant attorneys' fee motion.

67.     I have personally reviewed all the entries and calculations in this declaration.  Any calculation errors in the totals of hours, fees, or expenses are inadvertent and mine alone.

68.     In addition to fees, DRLC incurred out-of-pocket costs, as apportioned to County Defendants, which it has not included in its request here. As with time records, costs are recorded in our system as contemporaneously as

-19-

possible to when they are incurred or when we are billed by a third party, and are submitted by DRLC staff in the regular course of business.

69. The fees claimed here are for the work necessary to investigate and develop Plaintiffs' claims, secure class certification, secure discovery needed for trial , prepare a motion for partial summary judgment, and to achieve a resolution that remedies violations of the civil rights of students in jail eligible to received special education services

70. In my opinion, the total $200,000 in fees and costs for DRLC and Milbank attorneys combined is a reasonable figure for attorneys' fees and costs particularly given the amount of work invested in this matter. The amount sought by Plaintiff in this matter represents a fair and reasonable fees and costs award in this case.

I declare under penalty of perjury of the laws of the United States of America and the State of California that the foregoing is true and correct, and that this declaration was executed on June 8, 2017 in Whittier, California.

ANNA RIVERA

DECLARATION OF ANNA RIVERA IN SUPPORT OF PLAINTIFF'S MOTION
FOR AWARD OF ATTORNEYS' FEES

Exhibit 5-3

Paul R. Kiesel, State Bar No. 119854
  kiesel@Kiesel-Law.com
Jeffrey A. Koncius, State Bar No. 189803
  koncius@Kiesel-Law.com
Matthew A. Young, State Bar No. 266291
  young@Kiesel-Law.com
KIESEL LAW LLP
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Tel:   (310) 854-4444
Fax:   (310) 854-0812

Kenneth M. Lipton, State Bar No. 82342
  kenlipton998431@aol.com
LAW OFFICES OF KENNETH M. LIPTON
5900 Sepulveda Boulevard, Suite 400
Van Nuys, California 91411
Tel:   (818) 780-3562
Fax:   (818) 780-9038

Attorneys for Plaintiff LOREN STONE,
on behalf of himself and all others
similarly situated

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| LOREN STONE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>HOWARD JOHNSON INTERNATIONAL, INC., a Delaware Corporation; and DOES 1 - 10,<br><br>Defendants. | Case No. 12-CV-01684 PSG (MANx)<br><br>CLASS ACTION<br><br>**DECLARATION OF MATTHEW A. YOUNG IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FOR ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENT**<br><br>Judge:  Hon. Philip S. Gutierrez<br>Date:   November 30, 2015<br>Time:   1:30 p.m.<br>Crtrm.: 880 - Roybal |

I, Matthew A. Young, declare:

1.      I am an attorney at law licensed to practice before all Courts of the State of California and the United States District Court for the Central District of California. I am an associate at the law firm of Kiesel Law LLP, one of the counsel of record for Plaintiff Loren Stone herein. The following is based upon my personal knowledge, and if called upon as a witness to testify in this matter, I could and would testify competently thereto.

2.      Attached hereto as **Exhibit 1** is a true and correct copy of the Settlement Agreement and Release entered into by the parties (without exhibits).

3.      Plaintiff and the Class Members are represented in this case by counsel who have significant experience in complex class action litigation, have negotiated numerous other substantial settlements, and have the ability to litigate this case on a classwide basis if a fair settlement were not offered. Class Counsel include attorneys highly experienced in privacy rights litigation, and their expertise helped inform the settlement negotiations. Class Counsel were satisfied with the Settlement Agreement only after conducting an intensive settlement negotiation and thorough investigation into the factual and legal issues raised in this case. In negotiating and evaluating the Settlement Agreement, Class Counsel relied on their investigation and drew on their considerable experience, skill, and expertise in determining that the Settlement Agreement was fair, reasonable, and adequate.

4.      That said, in my own personal opinion, the settlement presented in Plaintiff's Motion for Final Approval of Class Settlement, filed herewith, is fair, adequate and reasonable.

5.      Significant discovery was undertaken in this action including, but not limited to, numerous sets of interrogatories and requests for production, as well as third-party subpoenas, resulting in the production of nearly 4,000 pages of documents. Additionally, Plaintiff's deposition was taken, and the depositions of three of Defendants' corporate designees were taken in Aberdeen, South Dakota.

1

**DECLARATION OF MATTHEW A. YOUNG**

This information provided the parties with sufficient evidence to evaluate the strengths and weaknesses of Plaintiff's claims and the benefits of the proposed Settlement.

6. It is also significant that this matter has undergone strenuous motion practice, including motions to dismiss and strike Plaintiff's Complaint. Additionally, Plaintiff's Class Certification motion has been fully briefed, but in light of this pending Settlement, the motion has not been heard.

7. Only after the above-described, hard-fought litigation, the parties retained the Honorable Leo Papas (Ret.) to serve as a third party neutral on November 4, 2014. The mediation on that date was unsuccessful, but the Parties continued settlement discussions through Judge Papas. On November 21, 2014, Judge Papas made a mediator's proposal, which all Parties accepted. At all times, the settlement negotiations, while professional, were adversarial, non-collusive, and conducted at arm's-length.

8. Attached hereto as **Exhibit 2** is a true and correct copy of the firm resume for Kiesel Law LLP, evidencing that Plaintiff is represented by qualified and competent counsel who have the experience and resources necessary to vigorously pursue this action and who have substantial class action experience, including particular experience in litigating Privacy Act claims.

9. My firm acted as co-counsel for the Class in this matter and was actively involved in all proceedings had herein. My firm's work included evaluating and filing this case. We researched and investigated the claims asserted both factually and legally before filing. We participated in an early meeting with Defense counsel pursuant to Rule 26. We drafted written discovery to serve on Defendants and third parties, reviewed the responses thereto, and met and conferred in order to obtain satisfactory responses. Along with our co-counsel, the Law Offices of Kenneth M. Lipton, my firm was actively engaged in document review assignments. We also met with Plaintiff Stone and worked with him on this project, and further

2    **DECLARATION OF MATTHEW A. YOUNG**

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1  prepared him and represented him at his deposition. We took a major role in drafting

2  all documents ultimately filed on behalf of the Plaintiff. Moreover, my firm engaged

3  in substantial work researching, preparing and drafting oppositions to Defendant

4  HJI's motions to dismiss and strike. My firm took the lead in drafting the mediation

5  brief and the mediation, which ultimately resulted in the proposed settlement of this

6  matter, as well as in negotiating and finalizing the terms of the Settlement

7  Agreement, drafting the settlement documents and the motion for preliminary

8  approval. It is respectfully submitted that all this work contributed to the beneficial

9  result reached for the Class herein.

10    10.    Further, even after the parties executed the Settlement Agreement, my

11  firm continued to work diligently on this case, monitoring the Claims Administrator

12  and identifying and dealing with a series of issues related to the notice and claims

13  process. My firm and Class Counsel ensured that the notice plan was properly

14  disseminated to the Class Members and that Class Members could exercise their

15  rights thereunder. Finally, Kiesel Law LLP took the laboring oar on the instant

16  Motions for Final Approval of Class Settlement and for Attorneys' Fees, Costs, and

17  Service Payment.

18    11.    After the filing of the instant Motions, Class Counsel will spend

19  additional time responding to Class Member communications and objections (if

20  any), continuing to supervise the claims process, and preparing for and attending the

21  Fairness Hearing on November 30, 2015.

22    12.    Throughout the course of this litigation, Plaintiff Loren Stone has been

23  continuously involved and has remained in constant contact with Class Counsel with

24  respect to matters pertaining to this case. He took the time to learn the

25  responsibilities of a class representative, and he indicated his willingness to pursue

26  this case not only on his own behalf, but on behalf of the Class. Mr. Stone was

27  available throughout the litigation and met with Counsel, in-person, to prepare for

28  his deposition. His deposition required him to take time off of work. He also

3

**DECLARATION OF MATTHEW A. YOUNG**

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1  searched for relevant documents, and he telephonically participated in the all-day
2  mediation of this lawsuit, as well as reviewed the class notice.

3       13.    Attached hereto as **Exhibit 3** is a detailed schedule indicating the
4  amount of time spent by the attorneys of my firm who were involved in this
5  litigation, and the lodestar calculation based on my firm's current billing rates. The
6  schedule was prepared from contemporaneous, daily time records regularly prepared
7  and maintained by my firm, which are available at the request of the Court. Time
8  expended in preparing the instant motions has not been included. Work performed
9  by the firm's support staff, amounting to over 100 hours, likewise has not been
10 included.

11      14.    The hourly rates for the attorneys in my firm are the same as the regular
12 current rates charged for their services in non-contingent matters and which have
13 been accepted and approved in other class action litigation, including cases in the
14 Central District of California. *See, e.g., Nader v. Capital One Bank (USA), N.A.*,
15 Case No. 12-cv-01265-DSF-RZ (C.D. Cal.); *Mount v. Wells Fargo Bank, N.A.,*
16 California Superior Court, Los Angeles County, Case No. BC395959 ("*Mount*
17 action"); *Greenberg v. E-TRADE Fin. Corp.*, California Superior Court, Los
18 Angeles County, Case No. BC360102; *Raymond v. CarsDirect.com Inc.*, California
19 Superior Court, Los Angeles County, Case No. BC256282. Furthermore, my firm
20 charges rates commensurate with the prevailing market rates for attorneys of
21 comparable experience and skill handling complex litigation and, in this case, made
22 all reasonable attempts to assign tasks to timekeepers at the appropriate billing rates.

23      15.    As of August 14, 2015, the total number of hours expended on this
24 litigation by my firm's attorneys is 844.3 hours. The total lodestar for my firm is
25 $419,640.00.

26      16.    My firm's lodestar figures are based upon the firm's billing rates,
27 which do not include charges for expense items. Expense items are billed separately
28 and such charges are not duplicated in my firm's billing rates.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

17.    Attached hereto as **Exhibit 4** is a schedule of expenses incurred by my firm. As of August 14, 2015, my firm, individually, has incurred a total of $12,822.67 in unreimbursed out-of-pocket expenses in connection with the prosecution of this litigation, which were advanced with no promise of repayment.

18.    The expenses incurred in this action are reflected on the books and records of my firm. These books and records are prepared from expense vouchers, check records, and other source materials and represent an accurate recordation of the expenses incurred. These expenses were reasonable and necessary to achieve the successful result reached in this case.

19.    Class Counsel have carefully considered the proposed *cy pres* remedy and the goal in formulating this proposal was to make a grant to an organization that represents the privacy interests of consumers. The proposed *cy pres* recipient – namely, the Privacy Rights Clearinghouse – seeks funds to support and maintain long-term projects that will provide substantial benefits and a variety of services to consumers. Thus, the proposed *cy pres* remedy will provide indirect benefits to absent Class Members and those people who in the future are anticipated to have similar interests to the members of the present Class – to be free from invasion of their privacy. Neither my firm nor I have any interests or involvement in the governance or work of the proposed *cy pres* recipients. That said, I believe the Privacy Rights Clearinghouse is a reasonable *cy pres* recipient because of the work it performs in the privacy arena.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

5

**DECLARATION OF MATTHEW A. YOUNG**

20.    Attached hereto as **Exhibit 5** is a true and correct copy of a document titled "Declaration of Privacy Rights Clearinghouse" which was provided to my firm by Beth Givens, Executive Director of the Privacy Rights Clearinghouse.

I declare under penalty of perjury, under the laws of the State of California and the United States of America, that the foregoing is true and correct.

Executed on September 11, 2015 at Beverly Hills, California.

_____
Matthew A. Young

6            **DECLARATION OF MATTHEW A. YOUNG**

# Kiesel Law LLP

# STONE v. HOWARD JOHNSON INTERNATIONAL, INC.

## FEE REPORT – Inception through August 14, 2015

| NAME | TOTAL HOURS | HOURLY RATE | LODESTAR |
|------|-------------|-------------|----------|
| **Partners** | | | |
| Paul R. Kiesel | 18.2 | $1,100.00 | $20,020.00 |
| Jeffrey A. Koncius | 360.3 | $625.00 | $225,187.50 |
| Thom Peters | 0.5 | $625.00 | $312.50 |
| | | | |
| **Associates** | | | |
| Matthew Young | 410.5 | $375.00 | $153,937.50 |
| Mariana Aroditis | 1.5 | $375.00 | $562.50 |
| Shehnaz Bhujwala | 36.3 | $375.00 | $13,612.50 |
| Glenn Anaiscourt | 2.6 | $375.00 | $975.00 |
| Tiffany Howard | 2.0 | $350.00 | $700.00 |
| Linna Chen | 12.1 | $350.00 | $4,235.00 |
| Lee Ackerman | 0.1 | $325.00 | $32.50 |
| Maria Weitz | 0.2 | $325.00 | $65.00 |
| | | | |
| **TOTAL** | **844.3** | | **$419,640.00** |

**Exhibit 3**
**Page 40**

Exhibit 5-4

1   Barrett S. Litt, SBN 45527
2   blitt@kmbllaw.com
    Kaye, McLane, Bednarski & Litt, LLP
3   975 East Green Street
4   Pasadena, California 91106
    Telephone: (626) 844-7660
5   Facsimile: (626) 844-7670

6
7   Anne Richardson, SBN 151541
    arichardson@publiccounsel.org
8   Stephanie Carroll SBN 263698
    scarroll@publiccounsel.org
9   PUBLIC COUNSEL
10  610 South Ardmore Avenue
    Los Angeles, California 90005
11  Telephone: (213) 385-2977
12  Facsimile: (213) 385-9089

13
14  Attorneys for Plaintiffs
    MICHAEL NOZZI, et al.

15
16          UNITED STATES DISTRICT COURT

17          CENTRAL DISTRICT OF CALIFORNIA

18  MICHAEL NOZZI, et al.,            Case No. 2:07-cv-00380-PA-FFM)

19
            Plaintiff,               [Honorable Percy Anderson]
20
21          v.                       **DECLARATION OF BARRETT S.
                                     LITT IN SUPPORT OF
22  HOUSING   AUTHORITY   OF   THE   PLAINTIFFS' MOTION FOR
    CITY OF LOS ANGELES, et al.,     FINAL APPROVAL OF
23                                   SETTLEMENT**
24          Defendants.              **Date:      January  29, 2018
                                     Time:      1:30 P.M.
25                                   Place:     Courtroom 9A**
26
27
28

**DECLARATION OF BARRETT S. LITT**

I, Barrett S. Litt, declare as follows:

1.      I am an attorney duly licensed to practice law in the State of California. This declaration is submitted in support of Plaintiffs' Motion for Fees and Costs. The facts set forth herein are within my personal knowledge or knowledge gained from review of the pertinent documents. If called upon, I could and would testify competently thereto. I provide this Declaration in support of Plaintiffs' motion for an award of attorneys' fees and costs.

## I.      FACTS REGARDING INCENTIVE AWARDS SOUGHT IN THE MOTION FOR FINAL APPROVAL OF SETTLEMENT

2.      The settlement provides a slight benefit to the sole class representative, Nidia Pelaez ($5000 in addition to the amount to which she would be entitled as a class member under the Agreement). Ms. Pelaez was actively involved in the case throughout, provided a declaration in support of the motion for class certification, acted as the sole class representative. While she was never deposed, she was available to be deposed and was interviewed by class counsel on several occasions in connection with the litigation.

3.      The settlement also provides a $1,000 total award to Michael Nozzi. Because Mr. Nozzi moved to a less expensive unit within days of the date that his damages began to run (as of which time his rental differential damages terminated), his claim for rental differential damages is only a few dollars. Although he was not active in the later phase of this ten year case, he was instrumental in its initiation, as it was he who approached Public Counsel about the Voucher Payment Standard notice.  In the early stages of development of the case, he was the only tenant client. Without him, there may have been no case, as Ms. Pelaez came forward later. While he was not as instrumental overall as Ms. Pelaez, he nonetheless was key to the case. No itemization of his damages has been provided, but he did incur moving costs, personal effort assisting the

1

99

litigation in its initial stages and a constitutional injury whose value is difficult to assess. $1,000 is a reasonable amount for him in light of all of these factors.

4.     No advance agreement was ever reached with either of them that an incentive award would be sought on their behalf if the case settled. The issue arose only after settlement in principle was reached, and was at Class Counsel's initiative.

## II.     FINAL SIZE OF THE CLASS FUND

5.     Plaintiffs' counsel and defense counsel have conferred and agreed that the final figure available from the primary insurer is $8,933,256.47.[1] Thus, the size of the Class Fund is $9,339,256.47. See ¶ 6 of Settlement Agreement, defining "Class Fund". (Although the claims did not exhaust the available funds under the Settlement Agreement's terms, the final Class Fund size is relevant and necessary because the request for attorney's fees is based on a percentage of the available Class Fund, as finally determined after payment of all defense fees and costs.)

## III.     TOTAL CLAIMS, OBJECTIONS AND OPT-OUTS

6.     The settlement provided for the Class Administrator to mail notice to all class members, as well as to publish notice, and provided class members the opportunity to object or opt out.  As the accompanying Declaration of Jennifer M. Keogh from JND Legal Administration attests, notice was sent out on the scheduled ordered in the Preliminary Approval Order, on August 9, 2017, in compliance with the scheduled ordered in the Preliminary Approval Order; a summary notice was published in the Los Angeles Times for three consecutive weeks, beginning August 18, 2017; address searches were done for returned mail;

---

[1] Defense counsel provided me with the total defense costs to date, and we agreed to add $20,000 to cover remaining defense fees and costs in order to determine the final size of the Class Fund. The fees and costs to date are $1,640,743.53. With the $20,000 added, the figure is $1,660,743.53.

2

and new claim forms were sent; a total of 2,259 valid claim forms were filed on or before December 6, 2017, with a total face value of $2,218,075.26; there were no objections. [2] Sixty three (63) claim forms have been denied as duplicative. An additional six claim forms were received as of December 18 with postmarks dated after December 6. Five hundred forty-five (545) Claims Forms were submitted by individuals who do not appear on the Class List. Seventy Claim Forms were missing signatures or other required information and were deemed deficient; deficiency notices will be sent to them

7.      Although there was one initial objection, attached as Exhibit 1, it was withdrawn after Plaintiffs' counsel spoke with the objector and explained that the content of his objection was unrelated to the settlement. See Declaration of Maria Cabados, ¶ 4; Exhibit 2 (original objection); Exhibit 3 (Withdrawal of Objection).

8.      There was a total of eight opt-outs (collectively attached as Exhibit 4). None of the opt-outs expressed dissatisfaction with the settlement.

## IV.   ADDITIONAL FACTS SINCE FILING OF MOTION FOR ATTORNEYS' FEES REGARDING LODESTAR CROSS CHECK AND COSTS

9.      Plaintiffs filed the motion for attorneys' fees on September 18, 2017, as required by this Court's Preliminary Approval Order. That motion provided lodestar cross-check information through August 31, 2017. The charts below summarize the additional lodestar information since that time, with a subsequent

---

[2] One objection, from Charles Jackson, was initially filed. Upon review of that objection, it was clear that the class member was not objecting to the settlement but separate treatment by HACLA. As a result, a representative of Plaintiffs' Counsel contacted Mr. Jackson to explain why the settlement was unrelated to the concerns expressed in his objection, and inquire if he still wanted to maintain his objection. Mr. Jackson then withdrew his objection. See Dkt. 320 (withdrawal of objection); Declaration of Maria Cabadas.

set of charts providing the total through December 19, 2017.  Plaintiffs estimate that in the range of an additional 30-50 hours will be spent through Final approval and entry of judgment. *Id.*

| LITT FIRM HOURS BETWEEN SEPTEMBER 1-DECEMBER 19, 2017[3] | | | | | |
|---|---|---|---|---|---|
| Biller | Position | Grad Yr | Rate | Hours | Total |
| Barrett S. Litt | Attorney | 1969 | $1150 | 66.1 | $76,015.00 |
| Pat Dunlevy | Attorney | 1992 | $750 | 4.0 | $3,000.00 |
| Julia White | Sr. Paralegal | | $335 | 29.2 | $9.782.00 |
| **TOTAL** | | | | **99.3** | **$88,797.00** |

| PUBLIC COUNSEL TIME BETWEEN SEPTEMBER 1-DECEMBER 20, 2017 | | | | | |
|---|---|---|---|---|---|
| Biller | Position | Grad Yr | Rate | Hours | Total |
| Anne Richardson | Attorney | 1989 | $850 | 6.2 | $5,270.00 |
| Stephanie Carroll | Attorney | 2004 | $640 | 18.6 | $11,904.00 |
| Maria Cabadas | Paralegal | | $190 | 49.5 | $9,405.00 |
| **TOTAL** | | | | **74.3** | **$26,579.00** |

10.　　A summary of the full attorneys' fees lodestar through December 19, 2017 for both firms is contained in the following charts:

| LITT FIRM LODESTAR FROM INCEPTION THROUGH DECEMBER 19, 2017 | | | | | |
|---|---|---|---|---|---|
| Biller | Position | Grad Yr | Rate | Hours | Total |
| Barrett S. Litt | Attorney | 1969 | $1,150 | 1257.1 | $1,445,665.00 |
| Pat Dunlevy | Attorney | 1992 | $750 | 330.8 | $248,100.00 |
| Paul Estuar | Attorney | 1993 | $765 | 519.4 | $397,341.00 |
| Paul Hughes | Attorney | 2008 | $730 | 60 | $43,800.00 |
| Julia White | Sr. Paralegal | | $335 | 541.2 | $181,302.00 |

---

[3] The fee details and summaries attached as Exhibits 5 and 6 for this time period (see include .5 hours for paralegal Marie Bolanos; this time has been eliminated from this chart in an exercise of billing judgment.

4

| LITT FIRM LODESTAR FROM INCEPTION THROUGH DECEMBER 19, 2017 | | | | | |
|---|---|---|---|---|---|
| **Biller** | **Position** | **Grad Yr** | **Rate** | **Hours** | **Total** |
| Miguel Villafuerte | Jr. Paralegal | | $150 | 42.3 | $6,345.00 |
| Charla Gray | Law Clerk | | $200 | 40.1 | $8,020.00 |
| James Debergh | Law Clerk | | $200 | 27.2 | $5,440.00 |
| Jonathan Dale | Law Clerk | | $200 | 29.5 | $5,900.00 |
| **TOTAL** | | | | **2869.8** | **$2,2,35533.00** |

| PUBLIC COUNSE LODESTAR FROM INCEPTION THROUGH DECEMBER 19, 2017 | | | | | |
|---|---|---|---|---|---|
| **Biller** | **Position** | **Grad Yr** | **Rate** | **Hours** | **Total** |
| Anne Richardson | Attorney | 1989 | $1,150 | 1257.1 | $1,445,665.00 |
| Pat Dunlevy | Attorney | 1992 | $200 | 40.1 | $8,020.00 |
| Lisa Jaskol | Attorney | 1988 | $750 | 330.8 | $248,100.00 |
| Hernán Vera | Attorney | 1994 | $765 | 519.4 | $397,341.00 |
| Stephanie Carroll | Attorney | 2004 | $730 | 60 | $43,800.00 |
| Adelaide Anderson | Attorney | 2010 | $335 | 541.2 | $181,302.00 |
| Jackie Chidiac | Paralegal | | $150 | 42.3 | $6,345.00 |
| Maria Cabadas | Litigation Coordinator | | $200 | 27.2 | $5,440.00 |
| **TOTAL** | | | | **1670.8** | **$1,108,872.00** |

11. Attached as Exhibits 5 and 6 are the detail and summaries of the post August 31, 2017 fees and costs for the two Litt firms. The detail and summaries of the post August 31, 2017 fees and costs for Public Counsel are attached to the Declaration of Anne Richardson.

12. Based on the final size of the Class Fund of $ 9,339,256.47, and Plaintiffs' request for an attorneys' fee award (before deduction of costs) of 30%, Plaintiffs request an attorneys' fee award of **$2,801,776.941**.

13. Additional costs since August 31, 2017, are contained in the following post August 31, 2017 chart:

5

| 1459 – Litt Firm Nozzi Costs Summary From 9/1/2017-12/19, 2017 | |
|---|---|
| **Cost Item** | **Amount** |
| E106-Research | $1,053.42 |
| E107-Delivery | $49.50 |
| E119-Experts | $513.00 |
| E145-PrintAudit | $529.35 |
| **Total:** | **$2,145.27** |

14.     The total final Litt firm costs are shown in the following chart.

| Litt Firm Nozzi Total Costs Summary Through 12/19/17 | |
|---|---|
| **Cost Item** | **Amount** |
| E101-Copy | $699.96 |
| E102-Print | $1,461.39 |
| E104-Fax | $60.50 |
| E105-Phone | $143.32 |
| E106-Research | $17,094.02 |
| E107-Delivery | $3,115.33 |
| E108-Postage | $81.71 |
| E109-LocTravel | $13.92 |
| E112-FeesCrt | $350.00 |
| E115-Depo | $1,760.18 |
| E118-LitSup | $104.76 |
| E119-Experts | $118,430.50 |
| E121-Arb/Medi | $18,000.00 |
| E134-Parking | $282.50 |
| E145-PrintAudit | $4,987.85 |
| E146-Scans | $976.74 |
| E148-Conf.call | $491.83 |
| **Total:** | **$168,054.51** |

15.     As was explained in the attorneys' fee motion, Public Counsel had costs previously submitted in the amount of $1,441.37. Including costs since September 1, it has incurred total costs as indicated in the following chart.

6

| Expense Description | Amount |
|---|---|
| Photocopies | $ 202.10 |
| Deposition costs | $ 602.30 |
| Mileage/Parking | $ 392.29 |
| Phone | $ 1.15 |
| Postage | $ 243.53 |
| Outreach Flyer/Poster | $ 204.00 |
| **TOTAL** | **$1,645.37** |

16.    The combined total costs for both firms is **$169,699.88**. Plaintiffs request a cost award in that amount.

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed at Pasadena, California on December 22, 2017.

7

Exhibit 5-5

1  CLAUDIA MENJIVAR (SBN 291981)
   cmenjivar@lafla.org
2  LEGAL AID FOUNDATION OF LOS ANGELES
   5228 Whittier Boulevard
3  Los Angeles, CA  90022
   Telephone:  (213) 640-3940
4  Facsimile:  (213) 640-3911

5  ROBERT D. NEWMAN (SBN 86534)
   rnewman@wclp.org
6  WESTERN CENTER ON LAW AND POVERTY
   3701 Wilshire Boulevard, Suite 208
7  Los Angeles, CA  90010-2826
   Telephone:  (213) 235-2619
8  Facsimile:  (213) 487-4727

9  ANNA RIVERA (SBN 239601)
   anna.rivera@drlcenter.org
10 DISABILITY RIGHTS LEGAL CENTER
   350 South Grand Avenue, Suite 1520
11 Los Angeles, CA  90071
   Telephone:  (626) 389-8277
12 Facsimile:  (213) 736-1428

13 ANNE RICHARDSON (SBN 151541)
   arichardson@publiccounsel.org
14 PUBLIC COUNSEL
   610 South Ardmore Avenue
15 Los Angeles, CA  90005
   Telephone:  (213) 385-2977
16 Facsimile:  (213) 385-9089

17 (Additional counsel listed on following page)

18                    UNITED STATES DISTRICT COURT

19                   CENTRAL DISTRICT OF CALIFORNIA

20 Housing Works, Independent Living      No. 2:15-cv-08982 GW (RAOx)
   Center of Southern California, Inc., and
21 Timothy Laraway,                       Hon. George H. Wu

22              Plaintiffs,               **PLAINTIFFS HOUSING WORKS
                                          AND INDEPENDENT LIVING
23      v.                                CENTER OF SOUTHERN
                                          CALIFORNIA'S NOTICE OF
24 County of Los Angeles, County of       MOTION AND MOTION FOR
   Los Angeles Board of Supervisors, and  ATTORNEYS' FEES AND COSTS
25 Los Angeles County Department of       IN AN AMOUNT SPECIFIED;
   Public Social Services,                MEMORANDUM OF POINTS AND
                                          AUTHORITIES**
26
                Defendants.               Hearing Date: July 12, 2018
27                                        Time: 8:30 a.m.
                                          Courtroom: 9D
28                                        Action Filed:  November 18, 2015
                                          Discovery Cut-off:  October 27, 2017

1 Additional counsel:

2 YOLANDA ARIAS (SBN 130025)
3 yarias@lafla.org
BARBARA SCHULTZ (SBN 168766)
4 bschultz@lafla.org
MATTHEW CLARK (SBN 233736)
5 mclark@lafla.org
LEGAL AID FOUNDATION OF LOS ANGELES
6 5228 Whittier Boulevard
Los Angeles, CA 90022
7 Telephone: (213) 640-3923
Facsimile: (213) 640-3911

8
ANTIONETTE D. DOZIER (SBN 244437)
9 adozier@wclp.org
WESTERN CENTER ON LAW AND POVERTY
10 3701 Wilshire Boulevard, Suite 208
Los Angeles, CA 90010-2826
11 Telephone: (213) 235-2619
Facsimile: (213) 487-4727

12
DEEPIKA SHARMA (SBN 256589)
13 dsharma@publiccounsel.org
PUBLIC COUNSEL
14 610 S. Ardmore Avenue
Los Angeles, CA 90005
15 Telephone: (213) 385-2977
Facsimile: (213) 385-9089

16
CHARLES S. BARQUIST (SBN 133785)
17 cbarquist@mofo.com
RYAN MALLOY (SBN 253512)
18 rmalloy@mofo.com
HERIBERTO ALVAREZ (SBN 307048)
19 halvarez@mofo.com
MATTHEW HOFER (SBN 307055)
20 mhofer@mofo.com
MORRISON & FOERSTER LLP
21 707 Wilshire Boulevard
Los Angeles, CA 90017-3543
22 Telephone: (213) 892-5200
Facsimile: (213) 892-5454

23

24

25

26

27

28

1    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2        **PLEASE TAKE NOTICE** that on Thursday, July 12, 2018, at 8:30 a.m. or

3    as soon thereafter as the matter may be heard, in Courtroom 9D, United States

4    District Court for the Central District of California, located at 350 West 1st Street,

5    Los Angeles, California, Plaintiffs Housing Works and Independent Living Center

6    of Southern California, Inc. ("Plaintiffs") will move the Court for an order

7    awarding Plaintiffs attorneys' fees and costs pursuant to California Code of Civil

8    Procedure § 1021.5, in the lodestar amount of $3,966,426.65 plus a 1.5 multiplier

9    applied to work on the merits for services rendered through November 13, 2017;

10   plus $82,020.13 in costs; plus compensation for time necessarily spent from April

11   28, 2018 through the hearing on this motion.

12       The Motion is made on the grounds that this Court has already held that

13   Plaintiffs are entitled to a fee award under § 1021.5, and as more fully described

14   below, the amount sought is reasonable.

15       The Motion is based upon this notice, the Declarations of Yolanda Arias,

16   Charles Barquist, Grace Carter, David Elson, Barrett Litt, Robert Newman,

17   Shawna Parks, Richard Pearl, Anne Richardson, Anna Rivera, Carol Sobel, and

18   Dan Stormer, and the exhibits attached thereto; and the attached memorandum of

19   points and authorities, the pleadings and records on file in this action, including in

20   particular all of the declarations, exhibits and memoranda of points and authorities

21   previously filed in support of Plaintiffs' previous Motion for Attorneys' Fees, and

22   the reply papers filed in support.  ECF 131 through 131-28; 134 through 134-3.

23       Pursuant to Local Rule 7-3, Plaintiffs did discuss possible resolution of this

24   motion after the April 5, 2018 hearing, at which hearing the Court set the briefing

25   schedule.  Decl. of Robert D. Newman ¶ 58.  The parties were unable to resolve

26   the matter prior to the filing of this motion.

27

28

Dated: May 3, 2018                     Respectfully submitted,

                                       LEGAL AID FOUNDATION OF
                                       LOS ANGELES

                                       By:  /s/ Claudia Menjivar
                                            Claudia Menjivar

                                       WESTERN CENTER ON LAW AND
                                       POVERTY

                                       By:  /s/ Robert D. Newman
                                            Robert D. Newman

                                       MORRISON & FOERSTER LLP

                                       By:  /s/ Charles S. Barquist
                                            Charles S. Barquist

                                       PUBLIC COUNSEL

                                       By:  /s/ Anne Richardson
                                            Anne Richardson

                                       DISABILITY RIGHTS LEGAL
                                       CENTER

                                       By:  /s/ Anna Rivera
                                            Anna Rivera

-2-

la-1378915                                                                 110

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................. 1

ARGUMENT ....................................................................................... 3

I.    STATE LAW APPLIES TO THE CALCULATION OF THE ATTORNEYS' FEE AWARD ........................................................ 3

II.   THE LODESTAR AMOUNT SOUGHT IS REASONABLE. ........ 3

    A.    Plaintiffs' attorneys are entitled to a fully compensatory fee. .............. 3

    B.    The hours claimed are reasonable. ........................................ 4

    C.    Because this litigation achieved excellent results for thousands of mentally disabled General Relief applicants, only a modest reduction for limited success is justified ............................. 8

        1.    Procedural losses do not justify reductions. .............. 8

        2.    Plaintiffs have voluntarily reduced their claim for partial success despite case law holding that no reductions are necessary where all claims are related and overall success is excellent. ........................................................ 9

    D.    The hourly rates claimed are reasonable. .......................... 11

III.  THE COURT SHOULD AWARD A MULTIPLIER. ................. 14

IV.  PLAINTIFFS SHOULD BE AWARDED REIMBURSEMENT FOR THE COSTS CLAIMED. ...................................................... 16

CONCLUSION ................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cabrales v. Cty. of Los Angeles*,
   935 F.2d 1050 (9th Cir. 1991) ................................................................. 8

*Cal. Common Cause v. Duffy*,
   200 Cal. App. 3d 730 (1987) ................................................................ 16

*Charlebois v. Angels Baseball LP*,
   993 F. Supp. 2d 1109 (C.D. Cal. 2012) ................................................ 12

*Children's Hosp. & Med. Ctr. v. Bonta*,
   97 Cal. App. 4th 740 (2002) ................................................................. 12

*City of Riverside v. Rivera*,
   477 U.S. 561 (1986) ............................................................................... 5

*Ctr. for Biological Diversity v. Cty. of San Bernardino*,
   185 Cal. App. 4th 866 (2010) ................................................................. 4

*Davis v. City and County of San Francisco*,
   976 F.2d 1536 (9th Cir. 1992), *vacated on other grounds*, 984 F.2d
   345 (9th Cir. 1993) ................................................................................. 5

*Doe v. United Health Ins. Co.*,
   No. SACV 13-0864, 2014 U.S. Dist. LEXIS 194727 (C.D. Cal.
   Oct. 15, 2014) ....................................................................................... 13

*Envtl. Prot. Info. Ctr. v. Cal. Dep't of Forestry & Fire Prot.*,
   190 Cal. App. 4th 217 (2010) .......................................................... 9, 10

*Graham v. DaimlerChrysler Corp.*,
   34 Cal. 4th 553 (2004) ..................................................................... 8, 12

*Greene v. Dillingham Constr. N.A., Inc.*,
   101 Cal. App. 4th 418 (2002) ............................................................... 15

*Harman v. City & Cty. of San Francisco*,
   136 Cal. App. 4th 1279 (2006) ............................................................... 8

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .......................................................................... 9, 10, 11

*Hogar v. Cmty. Dev. Comm'n of City of Escondido*,
   157 Cal. App. 4th 1358 (2007) ............................................................... 5

*Horsford v. Bd. of Trs. of Cal. State Univ.*,
   132 Cal. App. 4th 359 (2005) ............................................................... 15

*Ketchum v. Moses*,
   24 Cal. 4th 1122 (2001) .............................................................. 3, 14, 15

*In re Lugo*,
   164 Cal. App. 4th 1522 (2008) ............................................................. 16

*Mangold v. California Public Utilities Comm'n*,
   67 F.3d 1470 (9th Cir. 1995) .......................................................... 3, 15

*Serrano v. Priest*,
   20 Cal. 3d 25 (1977) .................................................................. 3, 14, 15

*Serrano v. Unruh*,
   32 Cal. 3d 621 (1982) ...................................................................... 2, 12

*Stokus v. Marsh*,
   217 Cal. App. 3d 647 (1990) ................................................................ 7

*Willits v. City of Los Angeles*,
   No. CV 10-05782 (C.D. Cal. Aug. 25, 2016) ..................................... 13

*Woodland Hills Residents Assn. v. City Council*,
   23 Cal. 3d 917 (1978) ........................................................................... 3

**Statutes**

California Code of Civil Procedure

§ 1021.5 ............................................................................... 1, 3, 4, 16

§ 1032 ............................................................................................... 16

§ 1033.5 ............................................................................................. 16

## **INTRODUCTION**

This lawsuit erased barriers that had prevented individuals with mental and intellectual disabilities from obtaining survival General Relief benefits. As a result, thousands of the most vulnerable people in Los Angeles County now have a greater opportunity to put food on their tables and a roof over their heads.

Achieving this result required monumental and time–consuming work from Plaintiffs' counsel. They were required to investigate and analyze a baffling 11-step GR application process as applied to 14 different offices, affecting applicants with a variety of distinct mental and intellectual disabilities. They sifted through tens of thousands of pages of documents, interviewed numerous General Relief applicants and participants and social services providers, and both took and responded to extensive discovery. They litigated first-impression legal issues, writing major briefs in opposition to summary judgment, in favor of preliminary relief, regarding mediation during the eight month settlement process, regarding voluntary dismissal of their claims without prejudice, and in support of entitlement to attorneys' fees. And they made substantial efforts to settle the case, with four mediations and five-in-person direct negotiations, resulting in a complex agreement which the County then inexplicably rejected (though it nevertheless implemented the major relief sought in the lawsuit).

This Court has already held that Plaintiffs are entitled to an attorneys' fees award under California Code of Civil Procedure § 1021.5. *See* Tentative Ruling on Initial Phase of Plaintiffs' Motion for Attorneys' Fees, ECF 137. Accordingly, all that remains is to determine the amount. Plaintiffs seek a lodestar award of $3,966,426.65, augmented by a 1.5 multiplier applied to work on the merits, or whatever multiplier the Court deems appropriate.

The number of hours claimed is reasonable, particularly in light of Plaintiffs' voluntary billing judgment reductions, which include:

1) deducting time sought for any attorney or other personnel who spent less than 20 hours on the case, and hundreds of hours of law clerk time;

2) only billing for a maximum of two attorneys at any court hearing, status conference, or deposition;

3) only billing for a maximum of 10% of time spent in team conference calls and in-person meetings where counsel worked on strategy, dividing up labor, and the like;

4) taking an overall 5% reduction of the remaining fees after the above reductions in order to eliminate any potential unproductive or duplicative time;

5) deducting time spent exclusively on substantive relief which counsel did not obtain; and

6) an additional 15% reduction for not securing every remedy sought in the litigation.

The remaining hours claimed are reasonable, particularly in light of the novelty and difficulty of the issues litigated and negotiated and the County's uncooperative and litigious response to Plaintiffs' attempts to resolve the matter informally, both before they filed the lawsuit and after the County rejected the tentative settlement that was hammered out over the course of eight months. The government "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *Serrano v. Unruh*, 32 Cal. 3d 621, 638 (1982) (citation omitted).

The hourly rates claimed are reasonable as well. For work performed by Morrison & Foerster attorneys, Plaintiffs are seeking compensation at the actual rate the firm charges its fee-paying clients. For the attorneys employed by non-profit legal services and public interest programs, the hourly rates Plaintiffs seek are within the range of fees that comparably experienced private attorneys charge their fee-paying clients in the Los Angeles area for comparable work. *See* Declarations of Barrett S. Litt, Richard Pearl, Carol Sobel, Dan Stormer, Shawna

1    Parks, Grace Carter, and David Elson, filed concurrently herewith.

2         Plaintiffs additionally request that the Court augment the lodestar with a 1.5

3    multiplier to reflect "the contingent nature of the fee award, both from the point of

4    view of eventual victory on the merits and the point of view of establishing

5    eligibility for an award . . . ." *Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977).  The

6    California Supreme Court has expressly approved contingency multipliers,

7    reasoning that a "lawyer who both bears the risk of not being paid and provides

8    legal services is not receiving the fair market value of his work if he is paid only

9    for the second of these functions."  *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133

10   (2001) (citation omitted).

11                              **ARGUMENT**

12   **I.    State law applies to the calculation of the attorneys' fee award.**

13        In *Mangold v. California Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th

14   Cir. 1995), the court held that where the plaintiffs prevail in federal court on a state

15   law claim, "Ninth Circuit precedent has applied state law in determining not only

16   the right to fees, but also in the method of calculating the fees."

17   **II.   The lodestar amount sought is reasonable.**

18        The starting point for determining the appropriate amount of fees is the

19   lodestar: a "careful compilation of the time spent and reasonable hourly

20   compensation of each attorney . . . involved in the presentation of the case."

21   *Ketchum*, 24 Cal. 4th at 1131-32 (citation omitted).  Plaintiffs' lodestar after the

22   exercise of billing judgment and further voluntary reductions (§ I.C below) is

23   $3,966,426.65, as illustrated in Table 1 attached as part of Exhibit 1.

24        **A.    Plaintiffs' attorneys are entitled to a fully compensatory fee.**

25        The "fundamental objective" of § 1021.5 is "to encourage suits effectuating

26   a strong [public] policy by awarding substantial attorney's fees . . . to those who

27   successfully bring such suits and thereby bring about benefits to a broad class of

28   citizens."  *Woodland Hills Residents Assn. v. City Council*, 23 Cal. 3d 917, 933

(1978) (citation omitted).  To accomplish that purpose, "attorney fee awards under

section 1021.5 'should be fully compensatory' . . . ."  *Ctr. for Biological Diversity*

*v. Cty. of San Bernardino*, 185 Cal. App. 4th 866, 897 (2010) (citation omitted).

Plaintiffs did not bring this suit for financial gain, but rather to reform the

way that the County makes accessible its General Relief benefits for those with

mental and developmental disabilities.  While Plaintiffs did not obtain all the relief

that they sought, they did obtain relief that resulted in no fewer than 13 policy

changes or updates within the Department of Public Social Services in the ten

months between August 2016 and June, 2017, plus additional changes to the

training of DPSS staff.  *See* ECF 131-3 through 131-26, Menjivar Decl. Exs. C

through S; *see also* Section I.C below for discussion of the partial success issue.

Counsel are entitled to a fully compensatory fee award.

## B.    The hours claimed are reasonable.

The hours claimed by this motion are all compensable.  To begin with, the

hours are well documented.  They are based on contemporaneous time records of

the work performed by each of the attorneys and paralegals who worked on the

case.[1]

Plaintiffs are not seeking compensation for nearly all of the hours spent on

the case.  Both individual attorneys and their supervisors exercised considerable

billing judgment.  Among the billing judgment reductions:

- Plaintiffs are not seeking compensation for the many attorneys who
  worked fewer than 20 hours on the case;[2]

---

[1] Western Center on Law and Poverty records are attached as exhibits to the declaration of Robert Newman, Morrison & Foerster records to the declaration of Charles Barquist, Legal Aid Foundation of Los Angeles time to the declaration of Claudia Menjivar, Public Counsel's time to the declaration of Anne Richardson, and Disability Rights Legal Center's time to the declaration of Anna Rivera.

[2] For billing judgment exercised by each firm, *see* Decls. of Newman ¶¶ 53-54; Barquist ¶¶ 6-8; Arias ¶¶ 25, 28-29; Richardson ¶¶ 18-20; and Rivera ¶¶ 35-40.

- Plaintiffs are not billing for law clerk time, which totaled hundreds of hours ;

- Plaintiffs are not billing for more than two attorneys at any court hearing or deposition;

- Plaintiffs have reduced their claim for time spent on team conference calls and in-person meetings to discuss strategy and divide responsibilities so that this conferencing time is limited to 10% of total attorney time. *Cf. City of Riverside v. Rivera*, 477 U.S. 561, 565, 573, n.6 (1986) (affirming district court's refusal to reduce compensation for 197 hours of conversation between counsel out of 1,946.75 total hours).

In addition, to compensate for any remaining arguably duplicative or unproductive hours, Plaintiffs propose a voluntary 5% across-the-board reduction. *See Davis v. City and County of San Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1992) (voluntary 5% reduction "more than compensated for the time challenged by the [defendant] as improperly billed, rendering a further reduction in the lodestar amount unnecessary."), *vacated on other grounds*, 984 F.2d 345 (9th Cir. 1993).

Finally, as will be discussed in § 1.C below, Plaintiffs propose further voluntary reductions to account for not securing all the relief sought in the case. In all, Plaintiffs have reduced their claim by well over a million dollars.

The remaining hours should be compensated. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally, this will encompass all hours reasonably expended on the litigation . . . ." *Hogar v. Cmty. Dev. Comm'n of City of Escondido*, 157 Cal. App. 4th 1358, 1369 (2007) (citation omitted).

The litigation was daunting from the outset. The County has designated 14 separate offices to receive and process the 16,500 monthly GR applications. The application process consisted of no fewer than 11 different steps. Plaintiffs'

1  counsel had to investigate the policies and practices in each of these offices, and

2  each of these 11 steps, to determine what barriers existed for GR applicants and

3  participants with a variety of distinct mental disabilities. Newman Decl. ¶¶ 5-7.

4       That task was made more difficult by the lack of available data. Public

5  Records Act and document requests revealed that the County reportedly did not

6  have studies on such important questions as the prevalence of mental illness among

7  GR applicants or the number of requests for reasonable modifications of GR

8  program requirements. *Id.* ¶ 8.

9       Nor was it a simple task to gather anecdotal evidence. Understandably,

10  homeless mentally disabled individuals were reluctant to talk to strangers, and the

11  circumstances of their lives made it nearly impossible to maintain contact and

12  obtain declarations. It was also difficult to gather declarations from social services

13  providers because many of them received funding and other support from the

14  County and feared retribution. *Id.* ¶¶ 9-10. Nonetheless, counsel interviewed

15  numerous witnesses and gathered declarations.

16       The legal issues were difficult as well. This was a case of first impression

17  requiring extensive legal research. Because there were no regulations or published

18  opinions directly on point governing access of persons with mental and intellectual

19  disabilities to governmental programs such as General Relief, counsel had to

20  research and brief extensively the issue of reasonable access in this context and to

21  reach out to experts around the country to discuss appropriate relief. Finally, the

22  County hired a major law firm with a nationally renowned expert in defending

23  against disability discrimination suits. *Id.* ¶¶ 11-12.

24       The County fought doggedly at every turn. After the filing of the lawsuit,

25  the County allowed Plaintiffs to meet and confer about Plaintiffs' anticipated

26  motion for preliminary injunction, but then claimed to have changed their practice

27  after the motion was filed. After the County inexplicably refused to approve the

28  settlement hammered out over eight months' time and four separate mediation

sessions with the Hon. Edward Infante (Ret.), the County refused to talk resolution of the remaining issues and instead litigated strenuously all the way to the end.  For example, the County prosecuted extensive discovery requests, including taking seven depositions, and served three motions to compel directed to the subject of standing, even after this Court had indicated its views on organizational standing a year previously and after Plaintiffs had announced their intention to voluntarily dismiss.  *See* Newman Decl. ¶ 13 for further examples.

Responding to Defendants' oppositions and lengthy discovery tactics was time-consuming.  "Parties who litigate with no holds barred in cases such as this, in which the prevailing party is entitled to a fee award, assume the risk they will have to reimburse the excessive expenses they force upon their adversaries." *Stokus v. Marsh*, 217 Cal. App. 3d 647, 653-54 (1990).

The numbers tell some of the story of the work required by this litigation. Plaintiffs responded to 86 document requests and propounded 156 requests of their own.  As a result, Plaintiffs produced 12,139 pages of documents.  The County produced 7,867 documents totaling 87,829 pages, all of which had to be reviewed and organized.  Newman Decl. ¶¶ 24-25.  Plaintiffs prepared and responded to interrogatories; prepared requests for admission; and took nine depositions and defended seven, including one over two days.  Plaintiffs' counsel had ten court appearances; and wrote numerous major briefs.  *Id.* ¶ 23.  Counsel participated in ten settlement meetings before filing suit and, during the course of litigation, four mediation sessions with Judge Edward Infante (Ret.) and five direct sessions with the County.  *Id.* ¶¶ 17, 29.

Plaintiffs' counsel divided their tasks efficiently.  As described in detail in Mr. Newman's declaration, counsel limited the number of participants for each task based on an evaluation of what was needed for the task and who had the relevant expertise.  And each of the law firms representing Plaintiffs made unique contributions.  *Id.* ¶¶ 30-31.

-7-

As authorized by California law, the hours claimed include time spent on the
fee issue itself. *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 580 (2004)
("it is well established that plaintiffs and their attorneys may recover attorney fees
for fee-related matters."). In this case, litigating the fee issue has required
Plaintiffs' counsel to respond to extensive discovery and to litigate discovery
issues, as well as major briefing. These hours, as well as all the hours claimed as
adjusted for billing judgment, are reasonable.

> **C.** **Because this litigation achieved excellent results for thousands of mentally disabled General Relief applicants, only a modest reduction for limited success is justified.**

As this litigation made it possible for thousands of poor people with mental
disabilities to secure subsistence benefits, only a modest lodestar reduction is
warranted to account for incomplete success.

In its April 2018 ruling on entitlement to fees, this Court stated that "[b]y
way of guidance, [it] would not find that Plaintiffs were prevailing parties either
procedurally or substantively as to all of the matters litigated in this case," and
requested delineation of the hours and activities engaged in by counsel. ECF 137
at 18 n.7.

> ## 1. Procedural losses do not justify reductions.

As for procedural setbacks, "[i]f a plaintiff ultimately wins on a particular
claim, she is entitled to all attorney's fees reasonably expended in pursuing that
claim—even though she may have suffered some adverse rulings." *Harman v.
City & Cty. of San Francisco*, 136 Cal. App. 4th 1279, 1311-12 (2006) (citing
*Cabrales v. Cty. of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991)) (allowing
fees for unsuccessful opposition to petition for writ of certiorari). As the *Cabrales*
court put it, "[r]are, indeed, is the litigant who doesn't lose some skirmishes on the
way to winning the war." *Id.*

Notably, here, this Court issued a tentative ruling against Plaintiffs on their
motion for preliminary injunction, but delayed ruling on their motion as well as

-8-

1   Defendant's motion for summary judgment, to enable both sides to engage in

2   settlement discussions.  August 4, 2016 Transcript at 25:7-11.  And Plaintiffs

3   ultimately obtained the relief sought in the preliminary injunction:  the opportunity

4   for residents to apply for GR other than in person (by mail, fax, or electronically).

5   **2.   Plaintiffs have voluntarily reduced their claim for partial
6        success despite case law holding that no reductions are
         necessary where all claims are related and overall success is
7        excellent.**

8        As for the level of substantive success, where, as in this case, "a plaintiff has

9   obtained excellent results, his attorney should recover a fully compensatory fee . . .

10  . In these circumstances the fee award should not be reduced simply because the

11  plaintiff failed to prevail on every contention raised in the lawsuit."  *Hensley v.*

12  *Eckerhart*, 461 U.S. 424, 435 (1983).

13       Rather, in such cases, California courts have adopted *Hensley*'s two-step

14  approach.  *Envtl. Prot. Info. Ctr. v. Cal. Dep't of Forestry & Fire Prot.*, 190 Cal.

15  App. 4th 217, 239 (2010) [*EPIC*].  The "first step asks whether 'the plaintiff

16  fail[ed] to prevail on claims that were unrelated to the claims on which he

17  succeeded[.]"  *Id.* (citations omitted).  Claims are unrelated if they are "based on

18  different facts *and* legal theories . . . . Conversely, related claims 'will involve a

19  common core of facts *or* will be based on related legal theories.'"  *Id.* (citations

20  omitted) (emphases added).

21       The relief Plaintiffs obtained and the remedies they were unable to secure

22  were not merely based on "related legal theories."  All of their claims and all of

23  their requests for relief stemmed from the identical legal theory:  the County was

24  violating state and federal statutes prohibiting discrimination against persons with

25  disabilities.  This alone qualifies all of Plaintiffs' claims as being related.

26       In addition, all of Plaintiffs' claims stem from the same County course of

27  conduct, notwithstanding differences in the remedies Plaintiffs sought.  *Hensley*

28  itself illustrates the distinction.  There, the Court upheld a district court finding that

all of plaintiffs' claims against conditions in a state hospital were related, reasoning that although the plaintiffs did not secure all the injunctive relief they sought, all of their claims concerned "the constitutional right to minimally adequate treatment . . . ." *Hensley*, 461 U.S. at 454.

Similarly, this entire litigation concerned the County's policies and procedures for General Relief applicants and participants that systematically excluded individuals with mental disabilities from participation in the program. As all of the claims centered on these policies and procedures, there was no reason for counsel to separate time spent on different remedial aspects of the case, and indeed most of the time the work spent by counsel was for multiple remedies.

Nonetheless, in an exercise of billing judgment, Plaintiffs are not claiming for time spent solely on unsuccessful attempts to require the County to use a validated instrument to screen for mental disabilities. Thus, where feasible, Plaintiffs have deducted hours spent solely on that issue. *See, e.g.*, Newman Decl. ¶ 53. In addition, Plaintiffs are not seeking compensation for time spent litigating on behalf of former Plaintiffs Tim Laraway and Catholic Worker, and settling Mr. Laraway's claim. *Id.* No further reductions for unrelated unsuccessful claims are warranted although, as noted below, Plaintiffs have exercised additional billing judgment to take an additional 15% reduction.

Under the second step of the *Hensley* test, the question is whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award. . . . In this step, the court will evaluate the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *EPIC*, 190 Cal. App. 4th at 239 (citations and internal quotation marks omitted).

Plaintiffs achieved such a level of success. The Court previously agreed with Plaintiffs' contention that the litigation resulted in "'1) a remote application process that could be accessed off-site; 2) a simplification of the GR application

process; 3) same-day assessments by trained health professionals for designations of [NSA]; and 4) improved processes for providing reasonable accommodations to disabled GR applicants and participants.'" ECF 137 at 8. Indeed, starting in August 2016 with a policy implementing a new "mail-in" notice on the website, the County enacted a total of 13 new policies or policy "updates" regarding increasing accessibility to General Relief benefits for people with mental or developmental disabilities, that were directly brought about by this lawsuit. *See* ECF 131-5 through 131-25, Exs. C, D, E, F, G, J, K, L, O, P, R, and S attached to the Declaration of Claudia Menjivar in Support of Motion for Attorneys' Fees. The County also changed its training to implement improvements sought by Plaintiffs. *See* Exs. M & N, ECF 131-12 to 131-16. As a result, "accepting Defendants' figures, the Court may find that the relief afforded by the initiation of this lawsuit benefits upwards of 3,000 GR applicants per month." ECF 137 at 17. This is an "excellent result[]" deserving of a "fully compensatory fee." *Hensley*, 461 U.S. at 435.

While no further reduction is required, Plaintiffs, as another exercise of billing judgment, propose an additional 15% reduction to account for partial success. Accordingly, Plaintiffs' total lodestar claim, including work on the fee motions through April 27, 2018, is $3,966,426.65.

### D. The hourly rates claimed are reasonable.

This motion seeks an award payable to a private law firm working in its pro bono capacity and four nonprofit legal services programs. Plaintiffs seek compensation for the private firm, Morrison & Foerster, at the rates it regularly bills its fee-paying clients. Barquist Decl. ¶ 25; *see also* Decl. of Barrett Litt ¶ 31 (the "rates [Morrison & Foerster attorneys] seek are well in line with the rates I have for commercial attorneys and are also justified by other civil rights fee awards.")

1    Western Center on Law and Poverty, the Legal Aid Foundation of Los

2    Angeles, Public Counsel, and Disability Rights Legal Center are all legal services

3    or public interest programs that do not charge their indigent clients fees and thus

4    depend on fee awards. *See, e.g.*, Newman Decl. ¶ 3. Fees awarded to such

5    programs should be calculated at market rates equal to those charged by private

6    attorneys in the community with comparable skill and experience. *Serrano v.*

7    *Unruh,* 32 Cal. 3d at 640-44. Plaintiffs' attorneys are entitled to their requested

8    rates if those rates are "within the range of reasonable rates charged by and

9    judicially awarded comparable attorneys for comparable work." *Children's Hosp.*

10    *& Med. Ctr. v. Bonta,* 97 Cal. App. 4th 740, 783 (2002).

11    For the public interest and legal services programs on the case, Plaintiffs

12    seek compensation at rates ranging from $525 per hour for a fifth year attorney to

13    $975 per hour for an attorney with 43 years of experience.[3] These rates are well

14    within the range of rates charged by private law firms and awarded in civil rights

15    and other cases in the Los Angeles area, as detailed in the declarations of three

16    recognized fee experts: Barrett Litt, Richard Pearl, and Carol Sobel.

17    For example, Plaintiffs seek $525 per hour for the work of Claudia

18    Menjivar, a Legal Aid Foundation of Los Angeles attorney who played an

19    important role in several aspects of the case. *See* Arias Decl. ¶ 19. The

20    declarations list numerous examples of private law firms billing paying clients

21    higher rates for attorneys with the same level of experience. Pearl Decl. at 13

22    (Arnold Porter LLP 5-year attorney billed at $645 per hour in 2014); *id.* (Boies

23

24    [3] Plaintiffs seek compensation at current hourly rates to compensate for delay
in payment over the course of the case. *See Graham*, 34 Cal. 4th at 583-84

25    (approving use of current rates); *Charlebois v. Angels Baseball LP*, 993 F. Supp. 2d
1109, 1119 (C.D. Cal. 2012) (Generally, for a "fee award to be reasonable, it must

26    be based on current, rather than historic, hourly rates.").

27

28

Schiller & Flexner $560-$610 in 2016); at 15 (Cooley LLP $560 to $590 in 2016);

at 16 (Gibson Dunn & Crutcher $625 per hour in 2013); at 21 (Munger, Tolles &

Olson $660 in 2016; and at 21 (O'Melveny & Myers $700 per hour in 2016). *See

also* Carter Decl. ¶ 3 (standard rate for 2013 law school graduate is $850 per hour

at Paul, Hastings, Janofsky & Walker); Elson Decl. ¶ 2 (average standard billing

rate for 5-year attorney is $585 per hour at Manatt, Phelps & Phillips).

Closer to the high end of the scale, Plaintiffs seek $950 per hour for the

work of Mr. Newman, a 1977 Yale Law School graduate with 41 years of litigation

experience who has been one of the lead counsel in this case. A Los Angeles

Superior Court judge ruled last year that Mr. Newman's then-billing rate of $925

per hour was reasonable. Newman Decl. ¶ 56. In a disability rights case two years

ago in this district, the court awarded lead counsel with 40 years of experience

$1,115.60 per hour. Order Granting Motion for Attorneys' Fees and Costs, *Willits

v. City of Los Angeles*, No. CV 10-05782 CBM (RZx) (C.D. Cal. Aug. 25, 2016),

ECF. 418 (Pearl Decl. at 7). *See also Doe v. United Health Ins. Co.*, No. SACV

13-0864 DOC (JPRx), 2014 U.S. Dist. LEXIS 194727 (C.D. Cal. Oct. 15, 2014)

(attorney with 36 years of experience awarded $950 per hour in 2014) (Pearl Decl.

at 9).

Fee expert Barrett Litt has compiled tables showing awards in civil rights

and consumer cases and rates charged by private law firms adjusted for the passage

of years. *See* Litt Decl. ¶¶ 23-27 (explaining his methodology). Mr. Litt lists no

fewer than 44 instances where attorneys with less experience than Mr. Newman

either were awarded or billed at adjusted rates greater than $950 per hour. Litt

Decl. at 20-23; *see also* Sobel Decl. ¶ 3 (attorney with 40 years of experience

currently bills at $990 per hour); Carter Decl. ¶ 3 (Paul Hastings partners who

graduated in 1977 bill between $1,025 and $1,050 per hour).

The rates are reasonable for the other attorneys in the case as well, as fee

experts Litt, Pearl, and Sobel all agree and justify in substantial detail. Indeed, a

1    court in this district last year approved as reasonable the $850 per hour sought for

2    Anne Richardson, an attorney with 29 years of experience.  Richardson Decl. ¶ 7.

3        As reasonable as the rates sought would be for most attorneys with

4    comparable years of experience, they are particularly justified for the attorneys in

5    this case, who are among the top lawyers in Southern California.  For example,

6    Ms. Richardson has twice won the prestigious California Lawyer Attorney of the

7    Year (in 2006 and 2017) for her work on major public interest litigation, an award

8    Mr. Newman has also won as lead counsel in a suit concerning mental health

9    services to foster children (in 2007).  Richardson Decl. ¶ 3; Newman Decl. ¶ 44;

10   *see also* Newman Decl. ¶ 50 (noting that co-counsel Richard Rothschild has

11   received the highest public service awards given by the State Bar of California, the

12   Los Angeles County Bar Association, and the National Legal Aid & Defender

13   Association).  As another example, Mr. Barquist was named the Los Angeles

14   patent litigation "Lawyer of the Year" in 2017 and twice selected for inclusion in

15   The Best Lawyers in America in his area of practice, along with receiving an

16   award for excellence in legal writing.  Barquist Decl. ¶ 13.

17       As the Court can judge for itself, the quality of the work has been excellent,

18   deserving of the rates sought here.  Those rates are reasonable, as is Plaintiffs'

19   entire lodestar.

20   **III.    The court should award a multiplier.**

21       Once the lodestar has been calculated, a court may augment or reduce that

22   figure.  Among the factors courts have considered is "the contingent nature of the

23   fee award, both from the point of view of eventual victory on the merits and the

24   point of view of establishing eligibility for an award . . . ."  *Serrano v. Priest*, 20

25   Cal. 3d at 49.

26       The *Ketchum* Court endorsed the use of contingency multipliers to

27   "approximate market-level compensation for such services, which typically

28   includes a premium for the risk of nonpayment or delay in payment of attorney

fees." 24 Cal. 4th at 1138. "A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions." *Id.* at 1133 (citation omitted).

In "each case," a trial court should "consider the degree to which the relevant market compensates for contingency risk . . . ." *Id.* at 1138. A trial court commits reversible error when it refuses to consider awarding a contingency multiplier. *Greene v. Dillingham Constr. N.A., Inc.*, 101 Cal. App. 4th 418, 428-29 (2002); *Horsford v. Bd. of Trs. of Cal. State Univ.*, 132 Cal. App. 4th 359, 395 (2005) (trial court must adjust lodestar to bring "financial incentives" for attorneys "into line with incentives they have to undertake claims for which they are paid on a fee-for-service basis."); *see also Mangold*, 67 F.3d at 1478-79 (affirming a 2.0 contingency multiplier under California state law).

In Los Angeles, as elsewhere, private attorneys are unlikely to take a contingent case without the prospect of a multiplier. Stormer Decl. ¶ 12 ("Our firm primarily takes cases on a contingency basis. Because of the contingent nature of payment it is necessary that we recover a fee that is substantially more than that which we would normally charge paying clients on an hourly basis."); Sobel Decl. ¶ 34 ("[t]he multiplier is 'earned compensation' and brings the financial incentives for taking such a case into line with work for fee-paying clients."); Litt Decl. ¶ 52 ("[c]ases of this type entail substantial risk. The market rewards such risk by enhancing the lodestar . . . ."); Pearl Decl. ¶ 16 ("an expert economist who testified in two cases in which I was involved opined that, based on a statistical risk analysis, attorneys who take cases on a contingent basis should receive from three to six times the market rates paid to attorneys on a non-contingent basis.")

This case was particularly risky from the "point of view of establishing eligibility for an award . . . ." *Serrano v. Priest*, 20 Cal. 3d at 49. At no time has a fee award been guaranteed. Even after Plaintiffs' counsel negotiated a settlement

-15-

agreement, the County rejected the settlement, apparently hoping to thwart payment of attorneys' fees while implementing many of the improvements Plaintiffs sought. The County then attempted to deny Plaintiffs the right even *to file* a fee motion and later opposed the fee motion once it did get filed. ECF 114, 133. A contingency multiplier is justified.

Another factor favors a multiplier here. In *In re Lugo*, 164 Cal. App. 4th 1522 (2008), the court affirmed a fee award to the Prison Law Office which included a multiplier. Among the factors the trial court considered was that "the monies awarded will not inure to the individual benefit of Petitioner's counsel but will be used for nonprofit purposes." *Id.* at 1546. The same is true here for the legal services programs and Morrison & Foerster as well. *See, e.g.*, Newman Decl. ¶ 3; Barquist Decl. ¶ 28. Court-awarded attorneys' fees are critical to the ability of the non-profit law firms in this case to continue to serve California's low-income population. This factor, as well as the contingent nature of the litigation, justifies a 1.5 multiplier, or whatever multiplier the Court deems appropriate, for work on the merits.[4]

## IV. Plaintiffs should be awarded reimbursement for the costs claimed.

California Code of Civil Procedure § 1032(b) specifies that a "prevailing party" is entitled to a cost award. As with a fee award under § 1021.5, parties can be awarded costs even without a judgment when, as in this case, they have prevailed as a practical matter. *Cal. Common Cause v. Duffy*, 200 Cal. App. 3d 730, 752 (1987).

The costs sought there, totaling $82,020.13, are compensable under Code of Civil Procedure § 1033.5. Decls. of Barquist ¶ 9, Newman ¶ 57, Arias ¶ 26 and

---

[4] No multiplier is sought for litigating the fee issue. Hence, the cutoff date for purposes of litigating the merits is November 13, 2017.

Rivera ¶ 47.[5]

## CONCLUSION

Plaintiffs request that the Court grant the motion and award a lodestar amount of $3,966,426.65 for work performed through April 27, 2018, augmented by a 1.5 multiplier, or whatever multiplier the Court deems appropriate, applied to work on the merits; plus compensation for time reasonably spent on reply papers and oral argument; plus $82,020.13 reimbursement for costs.

Dated: May 3, 2018                    Respectfully submitted,

LEGAL AID FOUNDATION OF
LOS ANGELES

By: _/s/ Claudia Menjivar_
      Claudia Menjivar

WESTERN CENTER ON LAW AND
POVERTY

By: _/s/ Robert D. Newman_
      Robert D. Newman

MORRISON & FOERSTER LLP

By: _/s/ Charles S. Barquist_
      Charles S. Barquist

PUBLIC COUNSEL

By: _/s/ Anne Richardson_
      Anne Richardson

DISABILITY RIGHTS LEGAL
CENTER

By: _/s/ Anna Rivera_
      Anna Rivera

---

[5] Public Counsel is not seeking reimbursement for costs. Richardson Decl. ¶ 23.

la-1378915                                                                    130

# EXHIBIT 1

# PLAINTIFFS' ATTORNEYS' FEES REQUESTED

## TABLE 1

Table 1 reflects the entire lodestar up through April 27, 2018, shortly before the filing of this Motion.

| Biller | Firm | Position | Yrs Practice (Grad Yr) | Rate | Hrs | Total |
|--------|------|----------|------------------------|------|-----|-------|
| Charles Barquist | Morrison & Foerster | Senior Counsel | 40 (1978) | $1050 | 425.4 | 446,670 |
| Sean P. Gates | Morrison & Foerster | Partner | 22 (1996) | $950 | 231.8 | 220,210 |
| Ryan Malloy | Morrison & Foerster | Partner | 11 (2007) | $875 | 417.8 | 365,575 |
| Heriberto Alvarez | Morrison & Foerster | Associate | 3 (2015) | $550 | 751.6 | 413,380 |
| Matthew Hofer | Morrison & Foerster | Associate | 3 (2015) | $550 | 601.3 | 330,715 |
| Alicia M. Lopez | Morrison & Foerster | Paralegal | N/A | $325 | 318.1 | 103,382.50 |
| Subtotal: | Morrison & Foerster | | | | 2,746 | **1,879,932.50** |

1

la-1379013

| | | | | | | |
|---|---|---|---|---|---|---|
| Richard Rothschild | Western Center | Litigation Director | 43 (1975) | $975 | 38.2 | 37,245 |
| Robert D. Newman | Western Center | General Counsel | 41 (1977) | $950 | 1005 | 954,750 |
| Antionette Dozier | Western Center | Staff Attorney | 12 (2006) | $670 | 327.2 | 219,224 |
| Claudia Menjivar | Western Center (through 2/15) | Staff Attorney | 5 (2013) | $525 | 97 | 50,925 |
| Subtotal: | WCLP | | | | 1,467.4 | **1,262,144** |

| | | | | | | |
|---|---|---|---|---|---|---|
| Yolanda Arias | LAFLA | Managing Attorney | 32 (1986) | $850 | 282.5 | 240,125 |
| Barbara Schultz | LAFLA | Director of Litigation | 25 (1993) | $800 | 22.6 | 18,080 |
| Ryan Bradley | LAFLA | Attorney | 18 (2000) | $700 | 150.6 | 105,420 |
| Matthew Clark | LAFLA | Attorney | 14 (2004) | $690 | 439.9. | 303,531 |
| Claudia Menjivar | LAFLA (from 3/15 to present) | Attorney | 5 (2013) | $525 | 668.7 | 351,068 |

2

la-1379013

| Subtotal: | LAFLA | | | | 1564.3 | 1,018,224 |
|---|---|---|---|---|---|---|
| Anne Richardson | Public Counsel | Directing Attorney | 29 (1989) | $850 | 357.2 | 303,620 |
| Deepika Sharma | Public Counsel | Attorney | 11 (2007) | $650 | 43 | 27,950 |
| Alisa Hartz | Public Counsel | Attorney | 6 (2012) | $545 | 154 | 83,930 |
| Subtotal: | Public Counsel | | | | 554.2 | **415,000** |

| Paula Pearlman | DRLC | Executive Director | 36 (1982) | $920 | 32.1 | 29,532 |
|---|---|---|---|---|---|---|
| Anna Rivera | DRLC | Managing Attorney | 12 (2005) | $690 | 331.4 | 228,666 |
| Kara Janssen | DRLC | Staff Attorney | 8 (2010) | $565 | 71.1 | 40,171.50 |
| Richard Diaz | DRLC | Staff Attorney | 6 (2012) | $545 | 70.3 | 38,313.40 |
| Subtotal: | DRLC | | | | 504.9 | **$336,683** |

3

la-1379013

**TOTAL ALL FIRMS TO APRIL 27, 2018:**

| | |
|---|---|
| Morrison & Foerster | $1,879,932.50 |
| Western Center | $1,262,144 |
| LAFLA | $1,018,224 |
| Public Counsel | $415,000 |
| DRLC | $336,683 |
| **TOTAL** | **$4,911,983.50** |

**TOTAL FOR ALL FIRMS WITH 5% BILLING JUDGMENT REDUCTION**

$4,666,384.30

**TOTAL FOR ALL FIRMS WITH ADDITIONAL 15% REDUCTION FOR PARTIAL SUCCESS**

$3,966,426.65

4

la-1379013

**TABLE 2**

Table 2 reflects the lodestar for the period up through November 13, 2017, which is the date on which the complaint was dismissed. This is the period and the fees for which the attorneys are seeking a multiplier in the court's discretion.

| Biller | Firm | Position | Yrs Practice (Grad Yr) | Rate | Hrs | Total |
|---|---|---|---|---|---|---|
| Charles Barquist | Morrison & Foerster | Senior Counsel | 40 (1978) | $1050 | 337.3 | 354,165 |
| Sean P. Gates | Morrison & Foerster | Partner | 22 (1996) | $950 | 231.8 | 220,210 |
| Ryan Malloy | Morrison & Foerster | Partner | 11 (2007) | $875 | 410.2 | 358,925 |
| Heriberto Alvarez | Morrison & Foerster | Associate | 3 (2015) | $550 | 656.8 | 361,240 |
| Matthew Hofer | Morrison & Foerster | Associate | 3 (2015) | $550 | 504.1 | 277,255 |
| Alicia M. Lopez | Morrison & Foerster | Paralegal | N/A | $325 | 284.6 | 92,495 |
| Subtotal: | Morrison & Foerster | | | | 2424.8 | 1,664,290 |

| Richard Rothschild | Western Center | Litigation Director | 43 (1975) | $975 | 7.5 | 7,312.50 |
| Robert D. Newman | Western Center | General Counsel | 41 (1977) | $950 | 888.3 | 843,885 |

5

la-1379013

| | | | | | |
|---|---|---|---|---|---|
| Antionette Dozier | Western Center | Staff Attorney | 12 (2006) | $670 | 290.3 | 194,501 |
| Claudia Menjivar | Western Center (through February 2015) | Staff Attorney | 5 (2013) | $525 | 97 | 50,925 |
| Subtotal: | Wstrn Ctr | | | | 1,333.10 | 1,096,623.50 |

| | | | | | |
|---|---|---|---|---|---|
| Yolanda Arias | LAFLA | Managing Attorney | 32 (1986) | $850 | 247.8 | 210,630 |
| Barbara Schultz | LAFLA | Director of Litigation | 25 (1993) | $800 | 22.6 | 18,080 |
| Ryan Bradley | LAFLA | Attorney | 18 (2000) | $700 | 150.6 | 105,420 |
| Matthew Clark | LAFLA | Attorney | 14 (2004) | $690 | 383.8 | 264,822 |
| Claudia Menjivar | LAFLA (from March 2015 to present) | Attorney | 5 (2013) | $525 | 603.1 | 316,628 |
| Subtotal: | LAFLA | | | | 1407.9 | 915,580 |

| | | | | | |
|---|---|---|---|---|---|
| Anne Richardson | Public Counsel | Directing Attorney | 29 (1989) | $850 | 235.9 | 200,515 |
| Deepika Sharma | Public Counsel | Attorney | 11 (2007) | $650 | 43 | 27,950 |

6

la-1379013

| Alisa Hartz | Public Counsel | Attorney | 6 (2012) | $545 | 154 | 83,930 |
| Subtotal: | Public Counsel | | | | 432.9 | $312,395 |

| Paula Pearlman | DRLC | Executive Director | 36 (1982) | $920 | 32.1 | 29,532 |
| Anna Rivera | DRLC | Managing Attorney | 12 (2005) | $690 | 298.9 | 206,241 |
| Kara Janssen | DRLC | Staff Attorney | 8 (2010) | $565 | 71.1 | 40,171.50 |
| Richard Diaz | DRLC | Staff Attorney | 6 (2012) | $545 | 70.3 | 38,313.50 |
| Subtotal: | DRLC | | | | 472.4 | $314,258 |

## TOTAL ALL FIRMS THROUGH NOVEMBER 13, 2017:

| | |
| --- | --- |
| **Morrison & Foerster** | **$1,664,290** |
| **Western Center** | **$1,096,623.50** |
| **LAFLA** | **$915,580** |
| **Public Counsel** | **$312,395** |
| **DRLC** | **$314,258** |
| **TOTAL** | **$4,303,146.50** |

7

la-1379013

**TOTAL FOR ALL FIRMS WITH 5% BILLING JUDGMENT REDUCTION**

**$4,087,989.10**

**TOTAL FOR ALL FIRMS WITH ADDITIONAL 15% REDUCTION FOR PARTIAL SUCCESS**

**$3,474,790.80**

8

la-1379013

Dated: June 7, 2019                     Respectfully submitted,

CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Peter A. Schey
Carlos Holguín

LA RAZA CENTRO LEGAL, INC.
Michael Sorgen

LAW FOUNDATION OF SILICON VALLEY -
LEGAL ADVOCATES FOR
CHILDREN & YOUTH
Jennifer Kelleher Cloyd
Katherine H. Manning
Annette Kirkham

Of counsel:

YOUTH LAW CENTER
Virginia Corrigan

/s/*Peter Schey* _____
*Attorneys for Plaintiffs*

2                    CV 85-4544-DMG (AGRX)

# CERTIFICATE OF SERVICE

I, Peter Schey, declare and say as follows:

I am over the age of eighteen years of age and am a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 256 S. Occidental Blvd., Los Angeles, CA 90057, in said county and state.

On June 7, 2019 I electronically filed the following document(s):

- EXHIBITS 1-5 IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS FEES AND COSTS

with the United States District Court, Central District of California by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/Peter Schey

*Attorney for Plaintiffs*

1