CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Peter A. Schey (Cal. Bar No. 58232)
Carlos Holguín (Cal. Bar No. 90754)
Laura N. Diamond (Cal. Bar. No. 185062)
Rachel Leach (D.C. Bar No. 1047683)
256 South Occidental Boulevard
Los Angeles, CA  90057
Telephone: (213) 388-8693
Facsimile: (213) 386-9484
Email:pschey@centerforhumanrights.org
         crholguin@centerforhumanrights.org
         ldiamond@centerforhumanrights.org
         rleach@centerforhumanrights.org

*Listing continues on next page*

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| Jenny Lisette Flores., *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>William Barr, Attorney General of the United States, *et al*.,<br><br>        Defendants. | Case No. CV 85-4544-DMG-AGRx<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION AND CONTEMPT ORDER SHOULD NOT ISSUE**<br><br>Hearing:  None set<br><br>[HON. DOLLY M. GEE] |

Dated:    June 26, 2019

*Counsel for Plaintiffs, continued*

USF SCHOOL OF LAW IMMIGRATION CLINIC
Bill Ong Hing (Cal. Bar No. 61513)
2130 Fulton Street
San Francisco, CA 94117-1080
Telephone: (415) 422-4475
Email: bhing@usfca.edu

ORRICK, HERRINGTON & SUTCLIFFE LLP
Kevin Askew (Cal. Bar No. 238866)
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone:   (213) 629-2020
Email:       kaskew@orrick.com

ORRICK, HERRINGTON & SUTCLIFFE LLP
Elyse Echtman (*pro hac vice* pending)
Shaila Rahman Diwan (*pro hac vice* pending)
51 West 52nd Street
New York, NY  10019-6142
Telephone:  212/506-3753
Email:       eechtman@orrick.com
Email:       sdiwan@orrick.com

LA RAZA CENTRO LEGAL, INC.
Michael S. Sorgen (Cal. Bar No. 43107)
474 Valencia Street, #295
San Francisco, CA 94103
Telephone: (415) 575-3500

THE LAW FOUNDATION OF SILICON VALLEY
Jennifer Kelleher Cloyd (Cal. Bar No. 197348)
Katherine H. Manning (Cal. Bar No. 229233)
Annette Kirkham (Cal. Bar No. 217958)
152 North Third Street, 3rd floor
San Jose, CA 95112
Telephone:   (408) 280-2437
Facsimile:   (408) 288-8850
Email: jenniferk@lawfoundation.org

kate.manning@lawfoundation.org
annettek@lawfoundation.org

NATIONAL CENTER FOR YOUTH LAW
Leecia Welch (Cal. Bar No. 208741)
Neha Desai (Cal. RLSA Bar No. 803161)
405 14th Street, 15th Floor
Oakland, CA 94612
Telephone: (510) 835-8098
Email: lwelch@youthlaw.org
        ndesai@youthlaw.org

U.C. DAVIS SCHOOL OF LAW
Holly S. Cooper (Cal. Bar No. 197626)
One Shields Ave. TB 30
Davis, CA 95616
Telephone: (530) 754-4833
Email: hscooper@ucdavis.edu

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF EX PARTE APPLICATION  FOR
TEMPORARY RESTRAINING ORDER AND ORDER
TO SHOW CAUSE WHY A  PRELIMINARY
INJUNCTION SHOULD NOT ISSUE
CV 85-4544-DMG-AGRX

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................. 1

II.  STATEMENT OF FACTS ................................................................... 4

    A.   CBP Facilities Are Unsafe and Unsanitary ........................................ 4

        1.   The children are denied access to basic hygiene, including soap, showers, toothbrushes and clean clothing ........................ 4

        2.   The children are denied clean clothing ................................ 4

        3.   The children's supplies, including medicine, have been taken away ................................................................. 5

        4.   The children do not have adequate access to sanitary toilet facilities ................................................................. 5

        5.   Young children are irresponsibly and dangerously tasked with the care of very young children and toddlers, endangering the children's welfare .................................. 5

    B.   CBP Denies Children Access to Clean Drinking Water ....................... 6

    C.   The Children are Hungry and Malnourished ..................................... 7

    D.   CBP Keeps the Facilities Unreasonably Cold .................................... 9

    E.   CBP Denies the Children Reasonable Sleeping Conditions ............... 10

    F.   CBP Denies Emergency Medical Care to Detained Children ............ 10

    G.   CBP Improperly Separates Children from Family Members ............. 12

    H.   Defendants do not Make and Record Efforts Aimed at the Prompt Release of Minors or their Placement in Licensed Facilities ................................................................................. 12

III. ARGUMENT ..................................................................................... 14

    A.   Legal Standard ............................................................................. 14

        1.   Standard for Contempt ....................................................... 14

        2.   Standard for Injunctive Relief Under Fed. R. Civ. P. 65 ......... 15

    B.   Defendants' Treatment of Children at CBP Facilities is Inflicting Irreparable Injury on Class Members ............................... 16

    C.   The Equities Weigh Heavily in Plaintiffs' Favor and The Issuance of The Temporary Restraining Order and Preliminary Injunction Is In The Public Interest ............................................... 18

D.      Plaintiffs Are Likely to Succeed on the Merits of Their Claims ........ 19

VII.   CONCLUSION ................................................................................. 21

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY
A PRELIMINARY INJUNCTION AND CONTEMPT ORDER
SHOULD NOT ISSUE
CV 85-4544-DMG-AGRx

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All. for the Wild Rockies v. Cottrell,*
   632 F.3d 1127 (9th Cir. 2011) .................................................................... 15, 19

*Amoco Prod. Co. v. Vill. of Gambell,*
   480 U.S. 531 (1987) ........................................................................................ 18

*Hernandez v. Sessions,*
   872 F.3d 976 (9th Cir. 2017) ......................................................................... 18

*California v. Azar,*
   911 F.3d 558 (9th Cir. 2018) ......................................................................... 18

*Caribbean Marine Servs. Co. v. Baldrige,*
   844 F.2d 668 (9th Cir. 1988) ......................................................................... 16

*Drakes Bay Oyster Co. v. Jewell,*
   747 F.3d 1073 (9th Cir. 2014) ....................................................................... 18

*Flores v. Sessions,*
   2017 WL 6060252 (C.D. Cal. June 27, 2017) ..................................... 19, 20, 21

*Garcia v. Google, Inc.,*
   743 F.3d 1258 (9th Cir. 2014) ....................................................................... 16

*Gifford v. Heckler,*
   741 F.2d 263 (9th Cir. 1984) ......................................................................... 14

*Harris v. Bd. of Supervisors, Los Angeles Cty.,*
   366 F.3d 754 (9th Cir. 2004) ......................................................................... 17

*Jones v. Tex. Dep't. of Crim. Justice,*
   880 F.3d 756 (5th Cir. 2018) ......................................................................... 17

*Labor/Cmty. Strategy Ctr. v. Los Angeles Cty. Metro. Transp. Auth.,*
   263 F.3d 1041 (9th Cir. 2001) ....................................................................... 19

*Lancaster v. Tilton,*
   2007 U.S. Dist. LEXIS 48403 (N.D. Cal. June 21, 2007) ............................ 15

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY
A PRELIMINARY INJUNCTION AND CONTEMPT ORDER
SHOULD NOT ISSUE
CV 85-4544-DMG-AGRx

*Lopez v. Heckler*,
   713 F.2d 1432 (9th Cir. 1983) ................................................................ 18

*McNearney v. Washington Dep't of Corr.*,
   No. 11-cv-5930 RBL/KLS, 2012 WL 3545267, (W.D. Wash. June
   15, 2012) ................................................................................................ 18

*Ms. L. v. ICE*,
   310 F. Supp. 3d 1133 (S.D. Cal. 2018) .................................................. 19

*N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dep't of
   Educ.*,
   600 F.3d 1104 (9th Cir. 2010) ................................................................ 19

*Nken v. Holder*,
   556 U.S. 418 (2009) ................................................................................ 18

*Norsworthy v. Beard*,
   87 F. Supp. 3d 1164 (N.D. Cal. 2015) .................................................... 18

*Peacock v. Thomas*,
   516 U.S. 349 (1996) ................................................................................ 14

*Rodriguez v. Robbins*,
   715 F.3d 1127 (9th Cir. 2013) ................................................................ 19

*Shillitani v. United States*,
   384 U.S. 364 (1966) ................................................................................ 14

*Small v. Avanti Health Sys., LLC*,
   661 F.3d 1180 (9th Cir. 2011) ................................................................ 19

*Spark Indus., LLC v. Kretek Int'l, Inc.*,
   No. CV 14-5726-GW(ASX), 2014 WL 12600262 (C.D. Cal. July
   29, 2014) ................................................................................................ 16

*Stone v. City and County of San Francisco*,
   968 F.2d 850 (9th Cir. 1992) .................................................................. 15

*Unknown Parties v. Johnson*,
   No. CV-15-00250-TUC-DCB, 2016 WL 8188563 (D. Ariz. No. 18,
   2016), *aff'd sub nom Doe v. Kelly*, 878 F.3d 710 (9th Cir. 2017) ...................... 16

*Washington v. Trump*,
  847 F.3d 1151 (9th Cir. 2017) ........................................................................ 15

*Winter v. Nat'l Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ..................................................................... 15, 16, 17, 20

**Statutes**

Trafficking Victims Protection Reauthorization Act ................................................ 4

**Rules**

Fed. R. Civ. P. 65 ........................................................................................... 15

Fed. R. Civ. P. 70(a) ....................................................................................... 14

Fed. R. Civ. P. 70(e) ....................................................................................... 14

**Other Authorities**

11A Charles A. Wright & Arthur R. Miller, Federal Practice and
  Procedure § 2948.1 (3d ed. rev. 2014) ........................................................ 16

- v -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY
A PRELIMINARY INJUNCTION AND CONTEMPT ORDER
SHOULD NOT ISSUE
CV 85-4544-DMG-AGRx

## I.   INTRODUCTION

This motion seeks emergency relief to remedy an imminent threat to the health and welfare of class member children detained for days and weeks at Customs and Border Patrol Protection ("CBP") facilities in the El Paso and Rio Grande Valley Border Patrol Sectors. Under the terms of the Stipulated Settlement Agreement approved by this Court on January 17, 1997 ("Agreement"), these children have the right to safe and sanitary conditions of detention and prompt release or placement in a facility licensed for the care of dependent children. Instead, class member children are held for weeks in deplorable conditions, without access to soap, clean water, showers, clean clothing, toilets, toothbrushes, adequate nutrition or adequate sleep.  The children, including infants and expectant mothers, are dirty, cold, hungry and sleep-deprived.  Because the facilities deny basic hygiene to the children, the flu is spreading among detained class members, who also are not receiving essential medical assessments or prompt medical treatment. Very young children are charged with responsibility for toddlers, with no adult or family supervision.

With each passing day, more hospitalizations are occurring and more lives are at risk.  Immediate judicial intervention is necessary to compel immediate compliance with the Agreement, end this health and welfare crisis, and prevent more illness and child deaths at the border.

U.S. Customs and Border Protection claims that it "urgently need[s] additional humanitarian funding to manage this *crisis*."  Statement of Customs and Border Protection official to Jezebel dated June 23, 2019 (emphasis added), https://theslot.jezebel.com/i-have-never-seen-conditions-as-degrading-and-inhumane-1835727893 (last checked on June 25, 2019).  Yet this is a "crisis" largely of CBP's own making because it is not complying with its obligations under

1    the Agreement and Order, including but not limited to its obligation to move

2    children out of these facilities promptly.

3          Unless these unsafe and unsanitary conditions at the El Paso and Rio Grande

4    sector facilities are cured right away, the spread of illness will continue,

5    endangering children's lives.  The non-compliance evidence is overwhelming and

6    should result in this Court ordering immediate intervention and holding Defendants

7    in contempt of Court.

8          As stated by a pediatrician who visited Ursula and examined the children at

9    that facility:  "The conditions within which [children] are held could be compared

10   to torture facilities.  That is, extreme cold temperatures, lights on 24 hours a day, no

11   adequate access to medical care, basic sanitation, water, or adequate food."  Exhibit

12   13, Declaration of Dr. Dolly Lucio Sevier ("Sevier Decl.") ¶ 5.  As a result of Dr.

13   Sevier's visit, five infants were admitted to the Neonatal Intensive Care Unit at a

14   local hospital.  Dr. Sevier declares that "not supply[ing] this basic necessity [of

15   hand-washing access after bathroom use] is tantamount to intentionally causing the

16   spread of disease."  Sevier Decl. ¶ 6; *see, also* Exhibit 24, Declaration of Dr. Nancy

17   Ewen Wang ("Wang Decl.") ¶ 5 ("Children are also at increased risk to infectious

18   disease.  The younger they are, the sicker they can get.  In general, it is better to

19   prevent illness by avoiding exposure to infectious agents.  Exposure to other people

20   with upper respiratory infections, and symptoms such as fever, cough, vomiting or

21   diarrhea, and drinking from the same water as those who are sick, are practices

22   guaranteed to spread infectious diseases.").  These conditions not only endanger the

23   children's health and welfare, they undermine their human dignity and violate their

24   human rights.  "[T]he United Nations Universal Declaration of Human Rights . . .

25   maintains that everyone is entitled to '. . . food, clothing, housing and medical

26   care[,]' as well as to the avoidance of 'cruel, inhuman or degrading treatment or

27

28

punishment.'"  June 25, 2019 Letter from Concerned Bioethicists (signed by more
than 800 Bioethicists), Declaration of Elyse D. Echtman, Exhibit 3.

This application is supported by over 65 declarations from physicians,
attorneys, detained children and their parents that show the starkly unsanitary and
unsafe conditions at Border Patrol facilities.

Counsel sent a Notice of Non-Compliance to the court-appointed Monitor,
Andrea Sheridan Ordin, on June 19, 2019, in accordance with the Dispute
Resolution procedures contained in the Court's October 5, 2018 Order (Dkt. # 494)
and provided a Supplement to the Notice of Non-Compliance on June 23, 2019.
The Notice of Non-Compliance and Supplement were accompanied by over 50
declarations that detail the overwhelming evidence of Defendants' violations of the
Agreement and the Order.  The content of the Notice and Supplemental Notice is
summarized in the Summary of Evidentiary Record ("Record Summary")
accompanying Plaintiffs' filing.

Because this is an emergency, Counsel requested that the Monitor waive the
time periods set forth in Section D.3 of that Order.  Dkt. #494 at D.3(b).  To date,
the Monitor has not agreed to expedite resolution of the non-compliance.  The class
now seeks immediate relief from this Court to mandate swift compliance and hold
Defendants in contempt.

Plaintiffs seek an emergency order requiring Defendants to bring the CBP
facilities in the El Paso and RGV sectors into immediate compliance with the
Agreement and Order.  In furtherance of that goal, Plaintiffs seek (1) immediate
inspection of all El Paso and RGV sector facilities by a public health expert
authorized to mandate a remediation plan that Defendants must follow to make
these facilities safe and sanitary, (2) immediate access to the facilities by
independent medical professionals appointed by Plaintiffs' class counsel or the
court-appointed Special Master who can assess the medical and psychological

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY
A PRELIMINARY INJUNCTION AND CONTEMPT ORDER
SHOULD NOT ISSUE
CV 85-4544-DMG-AGRx

needs of the children and triage appropriately, and (3) deployment of an intensive case management team to focus on expediting the release of Category 1 and 2 children (as classified in the Trafficking Victims Protection Reauthorization Act) to alleviate the backlog caused by the inadequate Office of Refugee Resettlement placement array.  Finally, as a deterrent to future violations, Plaintiffs request that Defendants be held in contempt for their flagrant and persistent violations of the Agreement and the June 27, 2017 Order.

## II.     STATEMENT OF FACTS

### A. CBP Facilities Are Unsafe and Unsanitary

#### 1.   The children are denied access to basic hygiene, including soap, showers, toothbrushes and clean clothing

This Court's Order provides that "safe and sanitary" conditions require that detained children be provided with "soap, towels, showers, dry clothing, [and] toothbrushes."  Order at 13.  The children at CBP facilities are not provided with soap, clean and dry clothing, regular showers, toothbrushes, towels or sanitary toilet facilities.  *See* Record Summary at 1-4.  The bathroom facilities are filthy and there is no soap to wash hands after using the toilet.  *See id.*   Some children are showering and brushing their teeth once every 4-5 days, while others are going weeks without a shower or the opportunity to brush their teeth.  *See id.*

#### 2.   The children are denied clean clothing

The children and infants are forced to wear soiled and inadequate clothing. *See* Record Summary at 4-5.  Everyone is wearing the same thing they crossed the border in, and their clothing is dirty because there is no place to wash clothing.  *See id.*  Some of the children are wearing clothing stained with vomit or breastmilk. *See id.*  There is no clean clothing available for the children.  *See id.*

### 3. The children's supplies, including medicine, have been taken away

Extra clothing, medicine and supplies that the children have brought with them has been taken away. *See* Record Summary at 5-6. Many detainees testified that the officers threw away any extra clothing, medicine, and baby supplies that they brought with them. *See id.* Some of the children were wet when they arrived, but they were not permitted to change clothing before being put into freezing cold holding cells. *See id.* Babies are being kept in these freezing cold conditions, and some of them have only a diaper and a t-shirt to wear. *See id.*

### 4. The children do not have adequate access to sanitary toilet facilities

Children are given either limited access to toilets or are outright refused access. *See* Record Summary at 6-7. Where the toilets are outside the cells, the children have to ask permission to use the bathrooms, and permission is granted at the discretion of the guard. *See id.* Sometimes the guards punish the children by "closing" the bathrooms. *See id.* In other instances, the toilets are in the same cell where children sleep and they have no privacy while using the toilet. *See id.* Sometimes the children try to cover themselves with a blanket for privacy while they use the toilet. *See id.*

### 5. Young children are irresponsibly and dangerously tasked with the care of very young children and toddlers, endangering the children's welfare.

In violation of the obligation to provide "safe" facilities, the CBP has young children taking care of toddlers and other very young children, in conditions that constitute child endangerment. *See* Exhibit 41, A.M.O.R. Decl. ¶¶ 3-5 ("A Border Patrol Agent came in our room with a two-year-old boy and asked us, 'Who wants to take care of this little boy?' Another girl said she would take care of him, but she lost interest after a few hours and so I started taking care of him yesterday. His bracelet says he is two years old. I feed the 2-year-old boy, change his diaper, and

1   play with him. . . . . The little boy that I am taking care of never speaks. He likes for

2   me to hold him as much as possible.") (Clint); Exhibit 52, G.S.C.C. Decl. ¶ 12

3   ("Most of the children are all alone. One was only two years old. She came to the

4   U.S. with her aunt, but they separated her. One of the girls tried to take care of

5   her.") (Clint); Exhibit 64, K.A.R.L. Decl. ¶ 7 ("There are young children with no

6   parents. There was an 8-year-old with no parent here who was trying to take care of

7   a little 4-year-old girl. She did not know how to take care of a little girl so she kept

8   asking me what to do, . . .") (Clint); Exhibit 49, E.Y.F.C. Decl. ¶ 16 ("There are

9   children who are very young here, only two or three years old, and their mother is

10  not with them. . . . .  Other children who are older try to take care of the little

11  ones.") (Clint).

12   **B. CBP Denies Children Access to Clean Drinking Water**

13   The Agreement and this Court's Order require Defendants to provide

14  children with adequate access to clean drinking water.  Order at 11-12.  The

15  children's declarations make clear that they are not provided with regular or

16  sufficient access to clean water to drink, make formula with, or to sanitize baby

17  bottles.  *See* Record Summary at 7-8.  Often the water that is available in the cells

18  tastes like chlorine or bleach and is not potable.  *See id.*

19   Dr. Sevier recounts that "all parents of infants drinking formula from a bottle

20  reported having no ability to wash bottles."  Sevier Decl. ¶ 7.  "Re-feeding a child

21  spoiled formula is a significant health hazard that can cause severe infectious

22  diarrhea and death in this vulnerable population. . . .  Many mothers regularly boil

23  their infant's bottles to ensure there is no chance of their infant acquiring an

24  infection. . . ., to deny parents the ability to wash their infant's bottles is

25  unconscionable."  *Id.*

26   In addition, nursing mothers at Ursula are experiencing an inadequate milk

27  supply from lack of drinking water.  *Id.* at 11.  The nursing mothers reported to Dr.

28

Memorandum of Points and Authorities in Support
of Plaintiffs' Ex Parte Application for Temporary
Restraining Order and Order to Show Cause Why
A Preliminary Injunction and Contempt Order
Should Not Issue
CV 85-4544-DMG-AGRx

1  Sevier that they are "drinking only 1.5L of water per day (offered at meals)" and

2  that "they would drink more if they had more access to water." *Id.*  "All felt that

3  the water in the cells was undrinkable due to taste."  According to Dr. Sevier, "[a]n

4  average-sized adult requires 2L of water per day to maintain adequate hydration.  A

5  breast-feeding woman requires at least 3L per day and extra caloric needs to

6  maintain adequate hydration." *Id.*  "Breast-feeding mothers should be offered . . .

7  extra bottled water and extra calories since they are producing the primary source of

8  nutrition for their children."  It is Dr. Sevier's medical opinion that Defendants are

9  "endangering the health of these infants" by providing "breastfeeding mothers less

10  than adequate supplies of fluids and nutrition." *Id.*  "An infant without adequate

11  nutrition is at risk of complications from even the most minor of illnesses." *Id.*

12      **C. The Children are Hungry and Malnourished.**

13      The Agreement and this Court's Order require the Defendants to provide the

14  children with adequate access to edible food.  *See* Order at 8-11.  The children's

15  declarations attest that the food is inadequate and often inedible.  *See* Record

16  Summary at 9-11.  They are often given food that is not fully cooked or still frozen.

17  *See id*.  There is an insufficient quantity of food provided, and many children

18  reported that they are hungry all the time.  *See id.*  The teen mothers who are

19  nursing their babies do not have enough to eat or drink, and as a result, they are not

20  producing enough breast milk to feed their babies.  *See id.*

21      Additionally, babies and children are not given age-appropriate food that

22  they can or will eat, and the age-appropriate food that they are given is not provided

23  in sufficient quantity.  *See* Record Summary at 11-14.  Many babies are not being

24  provided with baby food, and they are unable to stomach the adult food they are

25  provided.  *See id.*  The food they are provided is of inferior quality and not

26  appropriate for babies or toddlers.  *See id.*  Some babies are not provided with

27  formula at all, and others are provided with less formula than they need.  *See id.*

28

- 7 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY
A PRELIMINARY INJUNCTION AND CONTEMPT ORDER
SHOULD NOT ISSUE
CV 85-4544-DMG-AGRx

1  Many infants and children are losing weight because of the quality and quantity of

2  food being provided.  *See id.*

3       Dr. Sevier reports that "[i]nfants between 6-12 months should be fed pureed

4  foods in addition to formula."  Sevier Decl. ¶ 9.  But, the infants in that age range

5  are only being provided with "infant formula, apple sauce and solid foods."  *Id.*

6  This improper nutrition of formula and apple sauce "leaves a child at risk for

7  developing nutritional deficiencies, including but not limited to iron deficiency

8  anemia.  This can cause serious health and developmental consequences given

9  anemia in infancy is linked to reduced standardized testing scores in school-aged

10  children."  *Id*. (citation omitted).

11       The CPB's own standards require access to food that is "in edible condition

12  (not frozen, expired, or spoiled)" and provide that minors "must have regular access

13  to snacks, milk, and juice."  CBP National Standards on Transport, Escort,

14  Detention, and Search ("TEDS Manual") §§ 4.13, 5.6.  These conditions are

15  particularly dangerous for the youngest detained children:

16       Age appropriate nutrition and hydration are essential to avoid serious

17       sequelae such as dehydration, electrolyte imbalance, and growth and

18       developmental delay.  Nutrition offered must be appropriate for a

19       child's developmental age.  Babies require adequate quantities of

20       breast milk or formula.  Breast milk is the ideal food for infants.  It is

21       the most nutritious, offers immunologic defenses, and is the most

22       available and affordable but requires adequate nutrition and hydration

23       of the lactating motion.  Formula can be adequate, but must be given in

24       appropriate quantities and be mixed with clean water in the right

25       proportions, otherwise formula can cause electrolyte imbalance,

26       dehydration, and malnourishment.  Young children, as they transition

27       to solid food, are particularly vulnerable to lack of appropriate

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY
A PRELIMINARY INJUNCTION AND CONTEMPT ORDER
SHOULD NOT ISSUE
CV 85-4544-DMG-AGRx

1    nutrition.  In addition to breast milk or formula, young children require

2    baby food of the appropriate nutritional value and texture (so it can be

3    swallowed safely without the need to chew).  Children, after the age of

4    about one, require continued and adequate amounts of nutritious,

5    uncontaminated food, milk and adequate hydration.

6  Wang Decl. ¶ 4.  These concerns are amplified when children are suffering from

7  gastrointestinal illnesses.  *See id.* ¶ 7 ("Children with gastrointestinal disease

8  (vomiting and/or diarrhea) are particularly vulnerable to dehydration.  Children who

9  are malnourished are at increased risk of severe disease and complications from

10  diarrhea.").

11        **D. CBP Keeps the Facilities Unreasonably Cold**

12        This Court's Order requires the Defendants to provide "adequate temperature

13  controls at a reasonable and comfortable range."  *See* Order at 16.  The declarations

14  show that children are held in cages that are described as incredibly cold and

15  crowded with nowhere to sit.  *See* Record Summary 15-17.  There are not sufficient

16  beds for the children and many of the children sleep either on mats on the floor or

17  sleep directly on the cold concrete floor.  *See id.*  The air conditioning is turned up

18  very high, but the children are given only thin mylar blankets, which are not

19  sufficient to keep them warm.  *See id.*  They have a hard time sleeping because they

20  are so cold.  *See id.*

21        These conditions have been independently verified by visiting attorneys.

22  While the attorneys were not permitted to view the living or sleeping quarters, they

23  nonetheless found the temperatures in office spaces to be very cold and noted the

24  children were "visibly chilled and complained of cold temperatures."  *See* Exhibit

25  22, Declaration of Toby Gialluca ("Gialluca Decl.") ¶ 4; Exhibit 21, Declaration of

26  Genevieve Grabman ("Grabman Decl.") ¶ 6 (noting she was forced to wear a

27  sweater and a suit jacket during interviews with detainees).  In addition, the

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY
A PRELIMINARY INJUNCTION AND CONTEMPT ORDER
SHOULD NOT ISSUE
CV 85-4544-DMG-AGRx

1   attorneys noted many children were dirty and without clothing.  Gialluca Decl. ¶ 5

2   ("Most children are wearing filthy clothing and have not bathed or been provided

3   clean clothing since crossing the river.  Many of the babies and toddlers are dirty

4   and most are not fully clothed as a result of CBP confiscating their clothing and

5   failing to provide new clothing."); Grabman Decl. ¶ 9 (discussing K.B.A.J.'s

6   premature infant daughter who was "swaddled in a dirty towel.").

7   **E. CBP Denies the Children Reasonable Sleeping Conditions**

8   This Court's Order requires that Defendants provide the detained children

9   with reasonable sleeping conditions that allow them to sleep.  *See* Order at 16-18.

10   Numerous children have testified that the conditions at the CBP facilities make it

11   impossible to sleep.  Children consistently report that bright lights are on 24 per

12   hours per day, and they are forced to sleep in crowded cages, often sharing blankets

13   or mats that are taken away from them early.  *See* Record Summary 18-20.  They

14   also cannot sleep because it is noisy, in part because the guards enter the cells and

15   wake them up by yelling at or to the children through the night.  *See id.*  In addition,

16   minors and infants often sleep on hard concrete floors and benches, including

17   pregnant mothers.  *See id.* at 20-21

18   Dr. Sevier also reports that the lights are kept on all night long in the Ursula

19   daycare which interferes with the ability of the children to sleep.  Sevier Decl. ¶ 12.

20   "This is a serious detriment to a child's developing brain."  *Id.*

21   **F. CBP Denies Emergency Medical Care to Detained Children**

22   The Agreement requires Defendants to provide the detained children with

23   access to medical care in the case of a medical emergency.  *See* Flores Agreement

24   ¶ 12.  Conditions at Ursula have led to rampant sickness, as reported by the media

25   and documented firsthand by attorneys and physicians visiting the facility.  *See*

26   Cohen Decl. ¶¶ 3-5 (noting observations of "a number of what appeared to be

27   profoundly ill infants and children as well as a pregnant teenager whose toddler has

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY
A PRELIMINARY INJUNCTION AND CONTEMPT ORDER
SHOULD NOT ISSUE
CV 85-4544-DMG-AGRx

tested positive for flu, which may be fatal to pregnant women and their fetuses" and discussing media reports of flu outbreak); Grabman Decl. ¶¶ 8-11 (discussing illnesses of six Ursula child detainees, including K.B.A.J. who was confined to a wheelchair following an emergency caesarian section and her premature infant who was "listless"); Gialluca Decl. ¶¶ 6-10 (describing ill minors, including infants who were "listless," "sallow," and "frail."). *See also* Exhibit 35, W.A.C.L. Decl. ¶ 7 ("The conditions are very crowded in the cage where I am at. There are about 75 people each night that I have been here. We sleep literally stacked on top of each other should to shoulder. So many are sick. On any given day there are at least 20 that are sick. They try to separate the ones that are sick, so that means people come and go. But not everyone goes if they are sick.").

There are numerous sick class members (*see* Sevier Decl. at ¶¶ 7-48 (listing details of medical examinations)), but despite that the flu and other sicknesses are rampant throughout the facility, testimony of numerous declarants shows that there is no access to emergency care. *See* Record Summary at 22-25.

The existing medical issues can only be remedied via immediate care. *See* Wang Decl. ¶ 22 ("These minor children and infants should have immediate access to emergency medical services.") The CBP facility conditions, especially when combined with the weakened immune systems of children, are causing a genuine public health crisis that will persist and worsen if left untreated. *See id.* ¶¶ 4-11, 22 ("In my professional opinion as a pediatric emergency physician, the appropriate place for these children to receive the services that they need is the emergency department of a hospital, which has the needed capacity and capability to appropriately evaluate and treat these children.").

In short, the children need immediate access to emergency care and improved living conditions to prevent more illness and even death.

### G. CBP Improperly Separates Children from Family Members

Paragraph 12A of the Agreement requires that Defendants keep children in contact with their family members.  In violation of that provision, CBP is separating children from their families.  *See* Exhibit 3, J.I.L.Z. Decl. ¶¶ 3, 5-6 ("The immigration agents separated me from my father right away. I was very frightened and scared.  I cried. I have not seen my father again….I have been at this facility for several days.  I have not been told how long I have to stay here. I am frightened, scared, and sad.") (Clint); Exhibit 9, M.F.M.O., K.M.N.O. and S.N.M.O. Decl. ¶ 6 ("At 3 AM the next day the officers told us that our grandmother would be taken away. My grandmother tried to show the officers a paper signed by my parents saying that my grandmother had been entrusted to take care of us. The officers rejected the paperwork saying that it had to be signed by a judge. Then the officers took my dear grandmother away. We have not seen her since that moment….The officers didn't give us any information about how we could reunite with our grandmother.") (Clint); Exhibit 2, C.A.H.H. Decl. ¶¶ 3-4 ("[T]hey separated me from my aunt. I cried and they did not tell me where I was going. I was taken to this place [Clint CBP] where I have been for 3 days.") (Clint); Exhibit 8, L.G.L.L. Decl. ¶ 5 ("There have been boys as young as 3 or 4 years old in the cell with me. The 3 year old had a brother with him. The 4 year old came to the United States with an uncle but they separated him so he has no one here. It is very sad here. We all want to leave.") (Clint).

### H. Defendants do not Make and Record Efforts Aimed at the Prompt Release of Minors or their Placement in Licensed Facilities.

The Agreement requires that, from the time of apprehension, Defendants make and record continuous efforts to release class members to parents or sponsors and if they do not have sponsors then to expeditiously transfer them to licensed facilities.  It is undisputed that Defendants are ignoring the Agreement's terms with regard to children held for weeks in CBP facilities in the El Paso and RGV Sectors.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY
A PRELIMINARY INJUNCTION AND CONTEMPT ORDER
SHOULD NOT ISSUE
CV 85-4544-DMG-AGRx

1    Class member declarations confirm that detention in CBP custody is

2  lengthened, and their exposure to unsanitary, unsafe, unhealthy conditions

3  increased, because Defendants are not making or recording prompt and continuous

4  efforts to reunify minors with sponsors under Paragraph 14 or to place them in

5  licensed programs under Paragraph 19 of the Agreement.

6    S.N.A.M., a 16-year-old class member who fled Guatemala with her son, had

7  been detained at the Clint CBP facility for 17 days when she declared:

8    When arriving at the Clint facility, I informed officers that my father lives in

9    Nebraska. I gave officers my father's name and contact information. Since I

10    gave that information to officers, no one has discussed anything further with

11    me. I have not heard of a release. I have no idea what is going on. I have not

12    been told of any other optional facilities where I can live.

13  Exhibit 66, S.N.A.M. Decl. ¶ 6.

14    Class members routinely report this violation: "I don't know why they have

15  kept us here for so long. I gave them the information for my cousin who lives in the

16  U.S. the first day arrived here in the morning….She says that I can live with her.

17  They never called even called her until two days ago. They said that they cannot

18  send me to go live with her, but have to send me and my baby somewhere else and

19  the people at that facility will decide where I go next." Exhibit 52, G.S.C.C. Decl. ¶

20  13.  S.N.A.M.M. (age 16), left Guatemala with her son to flee violence, and made

21  this declaration at the Clint CBP facility: "When arriving at the Clint facility, I

22  informed officers that my father lives in Nebraska. I gave officers my father's name

23  and contact information. Since I gave that information to officers, no one has

24  discussed anything further with me. I have not heard of a release. I have no idea

25  what is going on. I have not been told of any other optional facilities where I can

26  live." Exhibit 66, S.N.A.M.M. Decl. ¶ 6.

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION AND CONTEMPT ORDER SHOULD NOT ISSUE CV 85-4544-DMG-AGRx

III.   **ARGUMENT**

    A.   **Legal Standard.**

        1.   **Standard for Contempt.**

This Court has "inherent power to enforce its judgments. Without jurisdiction to enforce a judgment entered by a federal court, 'the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution.'" *Peacock v. Thomas*, 516 U.S. 349, 356 (1996).  Among the enforcement remedies available to this Court is the power to have another party perform the required duties, Fed. R. Civ. P. 70(a), and to hold a noncompliant defendant in contempt, Fed. R. Civ. P. 70(e).  "[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 368 (1966).  This Court has "wide latitude in determining whether there has been a contemptuous defiance of its order." *Gifford v. Heckler*, 741 F.2d 263, 266 (9th Cir. 1984).  The law applicable to civil contempt proceedings is summarized as follows:

> If a person disobeys a specific and definite court order, he may properly be adjudged in contempt.  A person fails to act as ordered by the court when he fails to take all the reasonable steps within his power to insure compliance with the court's order.  It does not matter what the intent of the appellants was when they disobeyed the court's order.  The Ninth Circuit has also explained that '[s]ubstantial compliance with the court order is a defense to civil contempt, and is not vitiated by a few technical violations where every reasonable effort has been made to comply.  The standard for finding a party in civil contempt is well settled:  The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and

definite order of the court.  The burden then shifts to the contemnors to demonstrate why they were unable to comply.

*Lancaster v. Tilton*, 2007 U.S. Dist. LEXIS 48403, \*13-\*14 (N.D. Cal. June 21, 2007) (citations omitted).  Good faith attempts at compliance are not a defense to a claim of civil contempt.  *Stone v. City and County of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992).  For the reasons discussed below, the clear and convincing evidence before the Court demonstrates that Defendants are in blatant violation of the Agreement and the Order, which require that children be kept in "safe and sanitary" facilities.  There can be no reasonable dispute that the Ursula, Clint and Weslaco CBP facilities are not "safe and sanitary."  This evidence also entitles Plaintiffs to injunctive relief.

**2.     Standard for Injunctive Relief Under Fed. R. Civ. P. 65.**

A plaintiff seeking preliminary relief under Federal Rule of Civil Procedure 65 must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (noting standards for issuing temporary restraining orders and preliminary injunctions are "substantially identical").  Because these elements are balanced against each other, "a stronger showing of one element may offset a weaker showing of another."  *All. For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  Thus, when the likelihood of grave irreparable injury is palpable and the balance of equities tips sharply in plaintiffs' favor, the plaintiff need only "demonstrate a fair chance of success on the merits or questions serious enough to require litigation."  *Arc of Cal.*, 757 F.3d at 993-94 (internal quotations and citation omitted).

**B.      Defendants' Treatment of Children at CBP Facilities is Inflicting Irreparable Injury on Class Members.**

The irreparable harm prong of the *Winter* test requires that a plaintiff "demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). "Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Spark Indus., LLC v. Kretek Int'l, Inc*., No. CV 14-5726-GW(ASX), 2014 WL 12600262, at *3 (C.D. Cal. July 29, 2014) (citations omitted); *see also* 11A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2948.1 (3d ed. rev. 2014) ("Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered.").  This case presents a paradigmatic example of imminent irreparable harm and also clear and convincing evidence of Defendants' violations of the Order and Agreement.  By failing to maintain safe and sanitary conditions for children in facilities where disease is rampant, and depriving them of basic hygiene needs such as soap, showers, clean clothing, adequate nutrition, and sleep, Defendants increase the risk of additional deaths—"an irremediable and unfathomable" harm. *Garcia v. Google, Inc.*, 743 F.3d 1258, 1268 (9th Cir. 2014) (internal quotations marks omitted).

It is beyond dispute that imminent threats to health and safety present irreparable harm.  In a similar context, the court in *Unknown Parties v. Johnson*, No. CV-15-00250-TUC-DCB, 2016 WL 8188563, at *15 (D. Ariz. No. 18, 2016), *aff'd sub nom Doe v. Kelly*, 878 F.3d 710 (9th Cir. 2017), issued an injunction to curb inhumane treatment of civil immigration detainees where evidence demonstrated "the physiological effects of sleep deprivation or constant discomfort that comes from an inadequate food supply, or health risks related to exposure due

- 16 -

1  to contaminated water or unsanitary cells, or medical risks associated with being

2  unable to continue taking prescription medications or being exposed to

3  communicable diseases."  Likewise, in *Harris v. Bd. of Supervisors, Los Angeles*

4  *Cty.*, 366 F.3d 754, 756 (9th Cir. 2004), the Ninth Circuit found budget cuts would

5  result in closure of a hospital and bed reductions at another constituted irreparable

6  injury to chronically ill indigent patients who relied on county health services.

7  Among the injuries identified as warranting an immediate injunction were "pain,

8  infection, amputation, medical complications, and death due to delayed treatment."

9  *Id.* at 766; *see also Jones v. Tex. Dep't. of Crim. Justice*, 880 F.3d 756, 760 (5th

10  Cir. 2018) (denial of adequate medical care for prisoner's diabetes constituted

11  irreparable harm).

12       The unsafe and unhygienic conditions detailed above pose a continuing threat

13  to the health and well-being of class members.  As Dr. Sevier noted during her

14  investigation, "The conditions within which [the children] are being held could be

15  compared to torture facilities.  That is, extreme cold temperatures, lights on 24

16  hours a day, no adequate access to medical care, basic sanitation, water, or adequate

17  food."  Sevier Decl. ¶ 5.  All of the detainees Dr. Sevier saw "had no access to

18  hand-washing during their entire time in custody, including no handwashing

19  available after bathroom use."  *Id.* ¶ 6.  "All parents of infants drinking formula

20  from a bottle reported having no ability to wash bottles."  *Id.* ¶ 7.  Two thirds of the

21  infants Dr. Sevier examined had a respiratory infection (including two infants with

22  acute respiratory distress), and all of the children she observed showed evidence of

23  trauma.  *Id.* ¶¶ 10, 13.  Dr. Sevier's observations led her to "question whether there

24  is an infections control system in place in these facilities" at all.  *Id.*  ¶ 8.  These

25  dangerous and unsanitary conditions, along with denial of medical care pose an

26  extremely high likelihood of irreparable harm to Plaintiffs, satisfying the first

27  *Winter* factor.

28

C.     **The Equities Weigh Heavily in Plaintiffs' Favor and The Issuance of The Temporary Restraining Order and Preliminary Injunction Is In The Public Interest.**

Here, weighing of the equities and determination of the public interest merge into a single balancing test because the Defendants are the government. *See Nken v. Holder*, 556 U.S. 418, 435 (2009); *see also California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).  In balancing the equities, "[a] court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Arc of Cal.*, 757 F.3d at 991 (*quoting Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987)).  In performing this balancing, "the Ninth Circuit expects lower courts to protect physical harm to an individual over monetary costs to government entities." *McNearney v. Washington Dep't of Corr.*, No. 11-cv-5930 RBL/KLS, 2012 WL 3545267, at *15 (W.D. Wash. June 15, 2012).

The balance of the equities tips decidedly in favor of Plaintiffs' interest in their health and safety, which Defendants are placing at unnecessary risk.  As shown above, Plaintiffs are likely to suffer serious and severe irreparable harm, including potentially deadly infections, unless this Court intervenes.  *See* Cohen Decl. ¶ 7–8.  No purported government interest could justify Defendants' subjecting vulnerable children and youth to these wholly preventable conditions.  *See Norsworthy v. Beard*, 87 F. Supp. 3d 1164, 1193 (N.D. Cal. 2015) (holding equities sharply favored detainee who "established that she is suffering and is likely to continue to suffer *unnecessary* pain") (emphasis added); *see also Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983) ("Faced with [] a conflict between financial concerns and *preventable* human suffering, [the court has] little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor.") (emphasis added) *quoted by Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017).  It is hardly difficult for Defendants to provide class members with soap, showers, food, clean clothing,

reasonable temperature control, and reasonable sleeping conditions.  Moreover, individuals across this country are ready and willing to donate supplies to have them delivered to the children.

Granting Plaintiffs' motion would not subject Defendants to any identifiable hardship outweighing the irreparable harm to Plaintiffs' health and safety.  Indeed, Defendants cannot point to *any* harm because they "'cannot suffer harm from an injunction that merely ends an unlawful practice.'"  *Ms. L. v. ICE*, 310 F. Supp. 3d 1133, 1147 (S.D. Cal. 2018) (quoting *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)).  Moreover, "it is obvious that compliance with the law is in the public interest." *N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dep't of Educ.*, 600 F.3d 1104, 1113 (9th Cir. 2010); *see also Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1197 (9th Cir. 2011) (The "public interest favors applying federal law correctly.").  Because the requested temporary restraining order and preliminary injunction would simply mandate compliance with the *Flores* Settlement Agreement, which is "enforceable as a judicial decree," *Labor/Cmty. Strategy Ctr. v. Los Angeles Cty. Metro. Transp. Auth.*, 263 F.3d 1041, 1048 (9th Cir. 2001), the Government could suffer no harm as a result. Granting Plaintiffs' request for preliminary relief serves the public interest, and the balance of equities strongly weighs in Plaintiffs' favor.

### D.    Plaintiffs Are Likely to Succeed on the Merits of Their Claims

Having demonstrated the threat of irreparable injury to their health and safety and given that the balance of the equities tips sharply in Plaintiffs' favor, Plaintiffs need only demonstrate "a fair chance of success on the merits or questions serious enough to require litigation" to successfully secure preliminary relief here. *Arc of Cal.*, 757 F.3d at 993-94 (internal quotations and citation omitted); *All. for the Wild Rockies*, 632 F.3d at 1132 ("'[S]erious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction,

assuming the other two elements of the *Winter* test are also met.").[1] Plaintiffs'
prospects here far exceed a "fair chance" given the evidence that Defendants
entirely fail to make and record efforts aimed at the release of children and continue
to maintain detention facilities in the El Paso and RGV sectors in an unsafe and
unhygienic state, all while denying Plaintiffs access to urgently needed medical
care.  The conclusion Defendants are currently in violation of the *Flores* Settlement
Agreement is compelled not only by the plain meaning of the Agreement, but by
this Court's prior Orders interpreting the Agreement.

Regarding CBP's duties to release class members or transfer them to licensed
facilities, the Settlement is clear. It provides: "Upon taking a minor into custody,
[Defendants] … shall make and record the prompt and continuous efforts on its part
toward family reunification and release of the minor pursuant to Paragraph 14
above. Such efforts at family reunification shall continue so long as the minor is in
[Defendants'] custody. Agreement ¶ 18 (emphasis supplied). "In any case in which
[Defendants] do[ ] not release a minor pursuant to Paragraph 14 … such minor shall
be placed temporarily in a licensed program …" *Id.*  ¶ 19. "[A]ll minors [shall be
placed in licensed facilities] pursuant to Paragraph 19 as expeditiously as possible."
*Id.* ¶ 12.A. CBP is either intentionally ignoring or abysmally ignorant of the plain
terms of the Agreement. Its failure to comply with the Agreement has caused and is
causing massive overcrowding at the agency's El Paso and RGV sectors, and that in
turn triggers further violations (lack of sleep, lack of sanitation, etc.), which in turn
has led to serious illness.

Paragraph 12A of the *Flores* Settlement Agreement provides that:

---

[1] Plaintiffs' evidence meets and exceeds even the higher "likelihood of success of
the merits" standard that applies when the equites are not as starkly balanced as
they are here.  Preliminary relief is therefore appropriate under either standard.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY
A PRELIMINARY INJUNCTION AND CONTEMPT ORDER
SHOULD NOT ISSUE
CV 85-4544-DMG-AGRx

> Following arrest, the INS[2] shall hold minors in facilities that are *safe and sanitary* and that are consistent with the INS's concern for that particular vulnerability of minors. *Facilities will provide access to toilets and sinks, drinking water and food* as appropriate, medical assistance if the minor is in need of emergency services, adequate temperature control and ventilation . . . .

Agreement at ¶ 12A (emphases added). This Court has already held that these provisions require that Defendants provide soap, showers, toilet access, clean clothing, toothbrushes and toothpaste, edible food in sufficient quantities, clean drinking water, reasonable temperatures and nighttime conditions that allow for sleep. Order at 8-18.

The evidence is overwhelming that CBP currently holds minors in conditions manifestly unsuitable for the detention of children. Because Plaintiffs are likely to prevail in their claim that Defendants are in violation of the Agreement, this factor weighs in favor of the Court granting a temporary restraining order and preliminary injunction. The record also amply supports a finding of contempt.

## VII.   CONCLUSION

For the foregoing reasons, the Court should grant this application for a temporary restraining order and preliminary injunctive relief to remediate the unsafe and unhygienic conditions, and to address the public health emergency at CBP facilities in the El Paso and Rio Grande sectors, and should also find Defendants in contempt.

---

[2] CBP is a successor agency of INS bound by these provisions of the *Flores* Settlement Agreement. *See, e.g.*, *Flores v. Sessions*, 2017 WL 6060252, at *5-12, 22 (C.D. Cal. June 27, 2017) (enforcing other Paragraph 12A requirements against CBP).

Dated:   June 26, 2019

*/s/Peter Schey*
*Attorneys for Plaintiffs*

CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Peter A. Schey
Carlos Holguín
Laura N. Diamond
Rachel Leach

USF School of Law Immigration Clinic
Bill Ong Hing

ORRICK, HERRINGTON & SUTCLIFFE
LLP
Kevin Askew
Elyse D. Echtman
Shaila Rahman Diwan

LA RAZA CENTRO LEGAL, INC.
Michael Sorgen

LAW FOUNDATION OF SILICON
VALLEY
Jennifer Kelleher Cloyd
Katherine H. Manning
Annette Kirkham

NATIONAL CENTER FOR YOUTH LAW
Leecia Welch
Neha Desai

U.C. DAVIS SCHOOL OF LAW
Holly S. Cooper

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY
A PRELIMINARY INJUNCTION AND CONTEMPT ORDER
SHOULD NOT ISSUE
CV 85-4544-DMG-AGRx