# EXHIBIT A

1  XAVIER BECERRA
   Attorney General of California
2  MICHAEL NEWMAN
   Senior Assistant Attorney General
3  SARAH E. BELTON
   Supervising Deputy Attorney General
4  VILMA PALMA-SOLANA (SBN 267992)
   REBEKAH A. FRETZ (SBN 300478)
5  Deputy Attorneys General
    300 South Spring Street, Suite 1702
6   Los Angeles, CA  90013
    Telephone: (213) 269-6401
7   Fax: (213) 897-5926
    E-mail:  Rebekah.Fretz@doj.ca.gov
8  *Attorneys for Amicus Curiae the State of California*

9

10              **UNITED STATES DISTRICT COURT**

              **CENTRAL DISTRICT OF CALIFORNIA**
11

12

13

14  JENNY LISETTE FLORES, et al.,        Case No. 2:85-cv-4544-DMG

15                                       **[PROPOSED] BRIEF OF THE**
                   Plaintiffs,           **STATES OF CALIFORNIA,**
16                                       **MASSACHUSETTS,**
             **v.**                      **CONNECTICUT, DELAWARE,**
17                                       **DISTRICT OF COLUMBIA,**
    WILLIAM P. BARR, Attorney General    **HAWAII, ILLINOIS, MARYLAND,**
18  of the United States, et al.,        **MICHIGAN, MINNESOTA, NEW**
                                         **JERSEY, NEW MEXICO, NEW**
19                 Defendants.           **YORK, NORTH CAROLINA,**
                                         **OREGON, PENNSYLVANIA,**
20                                       **RHODE ISLAND, VERMONT,**
                                         **VIRGINIA, AND WASHINGTON**
21                                       **AS *AMICI CURIAE* IN SUPPORT**
                                         **OF PLAINTIFFS' APPLICATION**
22                                       **FOR TEMPORARY**
                                         **RESTRAINING ORDER**
23

24

25

26

27

28

1

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................... 1

STATEMENT OF INTEREST .............................................................. 2

ARGUMENT ......................................................................................... 3

I.    THE FEDERAL GOVERNMENT'S ACTIONS VIOLATE
      THE *FLORES* SETTLEMENT AGREEMENT BY RE-
      ESTABLISHING THE INTOLERABLE PRE-*FLORES*
      CONDITIONS. ...................................................................... 3

      A.   The *Flores* Settlement Agreement's Requirements Are
           Designed to Ensure Humane Treatment of Children in
           Immigration Custody. .................................................. 3

      B.   CBP is Holding Children in Terrible Conditions in
           Violation of the *Flores* Settlement Agreement. ........ 4

II.   THE FEDERAL GOVERNMENT'S CONTRAVENTION OF
      THE *FLORES* SETTLEMENT AGREEMENT IMPLICATES
      FUNDAMENTAL DUE PROCESS CONCERNS ...................... 7

III.  IMMEDIATE INJUNCTIVE RELIEF IS NECESSARY TO
      PREVENT FURTHER HARM TO CHILDREN .......................... 10

      A.   The Federal Government's Actions are Causing Long-
           Term Harm to Vulnerable Children. ............................ 10

      B.   Amici States Must Address the Harm these Children
           Experience in Federal Custody Upon Their Release to our
           Communities. ................................................................. 13

CONCLUSION ...................................................................................... 14

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Bolling v. Sharpe*
   347 U.S. 497 (1954) ................................................................................. 7

*City of Revere v. Massachusetts Gen. Hosp.*
   463 U.S. 239 (1983) ................................................................................. 8

*Cty. of Sacramento v. Lewis*
   523 U.S. 833 (1998) ............................................................................... 10

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*
   489 U.S. 189 (1989) ................................................................................. 7

*Farmer v. Brennan*
   511 U.S. 825 (1994) ................................................................................. 8

*Foster v. Runnels*
   554 F.3d 807 (9th Cir. 2009) ................................................................... 9

*Halet v. Wend Inv. Co.*
   672 F.2d 1305 (9th Cir. 1982) ................................................................. 9

*Hoptowit v. Spellman*
   753 F.2d 779 (9th Cir. 1985) ................................................................... 9

*In re Gault*
   387 U.S. 1 (1967) ..................................................................................... 7

*Martino v. Carey*
   563 F. Supp. 984 (D. Or. 1983) ............................................................... 9

*Moore v. City of East Cleveland*
   431 U.S. 494 (1977) ................................................................................. 9

*Ms. L. v. ICE*
   302 F. Supp. 3d 1149 (S.D. Cal. 2018) ................................................. 10

*Ms. L. v. ICE*
   310 F. Supp. 3d 1133 (S.D. Cal. 2018) ................................................. 12

ii

# TABLE OF AUTHORITIES
## (continued)

Page

*Reno v. Flores*
507 U.S. 292 (1993) (Stevens, J., dissenting) ..............................................*passim*

*Stanley v. Illinois*
405 U.S. 645 (1972) ........................................................................................ 9

*Unknown Parties v. Johnson*
No. CV-15-00250-TUC-DCB, 2016 WL 8188563 (D. Ariz. Nov. 18, 2016), *aff'd sub nom. Doe v. Kelly,* 878 F.3d 710 (9th Cir. 2017) ........................................................................................................ 8

*Youngberg v. Romeo*
457 U.S. 307 (1982) ........................................................................................ 8

STATUTES

California Code of Regulations tit. 22
§ 84072(d)(6) ................................................................................................ 12

California Welfare & Institutions Code
§ 16001.9(a)(1) .............................................................................................. 12
§ 16001.9(a)(3)-(4) ........................................................................................ 12

**INTRODUCTION**

Amici curiae the States of California, Massachusetts, Connecticut, Delaware, District of Columbia, Hawaii, Illinois, Maryland, Michigan, Minnesota, New Jersey, New Mexico, New York, North Carolina, Oregon, Pennsylvania, Rhode Island, Vermont, Virginia, and Washington (Amici States) respectfully submit this proposed brief in support of Plaintiffs' Application for a Temporary Restraining Order (TRO Application). The TRO Application and countless media reports detail the deplorable and inhumane conditions in which the federal government is currently holding vulnerable immigrant children who are in Customs and Border Protection (CBP) custody in the El Paso and Rio Grande Valley Border Patrol Sectors at, or near, the border. Children are being held in extremely cold facilities, denied access to basic needs such as adequate and sufficient food, drinking water, emergency medical care, soap, showers, toothbrushes and clean clothing, deprived of sleep, and tasked to care for other very young children. The Court's immediate intervention is necessary to prevent further harm to these children by compelling the federal government to comply with its legal obligations to hold children in safe and sanitary conditions.

For more than two decades, the federal government has been required to meet minimum standards for the facilities in which immigrant children may be confined. These minimum standards, established in the *Flores* Settlement Agreement, require, among other things, that the federal government place children in border facilities that are safe and sanitary and make every effort to release children or otherwise promptly transfer children to state-licensed facilities.

The federal government must be immediately compelled to comply with its legal obligations to immigrant children under the *Flores* Settlement Agreement and principles of substantive due process. The harm caused to these children will have long-lasting effects well beyond the time of their release from CBP facilities.

1

## STATEMENT OF INTEREST

Amici States have a substantial interest in protecting immigrant children who reside or will come to reside within our borders and ensuring that they are treated humanely and in accordance with the principles embodied in the *Flores* Settlement Agreement and the U.S. Constitution.  Every year, thousands of immigrant children are released from immigration detention and reunified with family members or other adult sponsors who are residents of the Amici States.[1]  These children become members of our communities, attend our schools, and, in some cases, grow into adults raising their own families in Amici States.

For decades, the *Flores* Settlement Agreement has set minimum standards for the facilities in which immigrant children may be confined, including requirements that these children be placed in safe and sanitary facilities while in CBP custody.  The federal government is clearly failing to meet its legal obligations and in doing so is causing long-lasting physical and mental harm to vulnerable children, which will in turn make it more difficult for the Amici States to provide for the health, education, and well-being of children who come to reside in our communities.

Therefore, Amici States vigorously object to the federal government's despicable and inhumane treatment of immigrant children at border holding facilities.  For the following reasons, Amici States urge the Court to grant Plaintiffs' application for a temporary restraining order.

---

[1] For example, the Office of Refugee Resettlement (ORR) released 4,655 children to family members and other sponsors in California in Fiscal Year 2018. *See* U.S. Dep't of Health & Human Services, Office of Refugee Resettlement, *Unaccompanied Alien Children Released to Sponsors by State* (last visited July 9, 2019), https://www.acf.hhs.gov/orr/resource/unaccompanied-alien-children-released-to-sponsors-by-state.

**ARGUMENT**

**I.   THE FEDERAL GOVERNMENT'S ACTIONS VIOLATE THE *FLORES* SETTLEMENT AGREEMENT BY RE-ESTABLISHING THE INTOLERABLE PRE-*FLORES* CONDITIONS.**

**A.   The *Flores* Settlement Agreement's Requirements Are Designed to Ensure Humane Treatment of Children in Immigration Custody.**

The *Flores* Settlement Agreement (Settlement Agreement) is the guiding document applicable to all immigrant children in federal government custody.  In accordance with its "general policy favoring release," the Settlement Agreement requires that detained children be placed "in the least restrictive setting appropriate to the minor's age and special needs" and be released "without unnecessary delay" to a parent, guardian, adult relative, adult designated by the parent, a licensed program, or another adult deemed appropriate, so long as continued detention is not necessary to secure the child's timely appearance at their immigration hearing or to ensure the child's safety or the safety of others.  Settlement Agreement at ¶¶ 11, 14. Children who cannot be immediately released to a family member or other sponsor must be placed in non-secure, state-licensed facilities.  *Id*. at ¶¶ 6, 12, 19.

To ensure that the federal government treats all children in its custody with "dignity, respect and special concern for their particular vulnerability as minors," the Settlement Agreement sets forth minimum standards for the detention, release, and treatment of children in federal custody, including children being held temporarily in CBP facilities.  Among other requirements, the Settlement Agreement requires that CBP facilities holding children must be "safe and sanitary" and "consistent with the [federal government's] concern for the particular vulnerability of minors."  *Id*. at ¶12.  Facilities must provide children access to toilets and sinks, drinking water and food, medical assistance if the child is in need of emergency services, adequate temperature control and ventilation, adequate supervision, and contact with family members who were detained with the child. *Id*.  Unaccompanied children must be held separately from unrelated adults, unless

1  segregation is not immediately possible, but under no circumstances may these
2  children be detained for more than 24 hours with an unrelated adult. *Id*.

3        The Settlement Agreement's core purpose is to ensure that all children in
4  federal custody are treated with dignity and respect and housed in safe and sanitary
5  facilities. In fact, the minimum standards set forth in the Settlement Agreement,
6  which the federal government expressly agreed to, were a direct response to the
7  federal government's previous systemic failure to provide safe and appropriate
8  facilities and services for children in its care. Prior to the approval of the
9  Settlement Agreement, immigrant children held in federal custody were subjected
10 to deplorable conditions of confinement. Children were placed in detention centers
11 with barbed-wire fences; deprived of education, recreation, and visitation; subjected
12 to arbitrary strip searches; and comingled with unrelated adults. *Reno v. Flores*,
13 507 U.S. 292, 327-328 (1993) (Stevens, J., dissenting). The federal government's
14 continued failure to hold children in facilities that are safe and sanitary thus violates
15 the Settlement Agreement by once again depriving children in federal custody of
16 basic necessities and reverting back to systematic conditions similar to, or arguably
17 worse than, those that gave rise to the *Flores* litigation.

18     **B.   CBP is Holding Children in Terrible Conditions in Violation of
19 the *Flores* Settlement Agreement.**

20     The dire and cruel conditions in the CBP facilities in the El Paso and Rio
21 Grande Valley Border Patrol Sectors are a clear violation of the federal
22 government's legal obligations under the Settlement Agreement. The TRO
23 Application and numerous news reports have described the inhumane and unsafe
24 conditions under which the federal government is holding immigrant children in
25 CBP custody. According to these reports, attorneys who recently visited the CBP
26 facility in Clint, Texas, in the El Paso sector, found at least 250 infants, children
27 and teens being held at the facility, some for nearly a month.[2] Some of the children

28       [2] Cedar Attanasio et al., *Lawyers: 250 children held in bad conditions at*

4

had not showered or bathed or been given a clean change of clothes since arriving at the facility, and they had inadequate access to soap and toothbrushes.[3]  Children were filthy and wearing clothes covered in bodily fluids, including urine.[4]  They were being given insufficient food, and were forced to sleep on cold concrete floors.[5]  At least 15 children at the facility had the flu, and 10 more were being held in medical quarantine.[6]  Children as young as seven or eight years old were being asked to care for toddlers they just met.[7]  And some children who arrived with a parent or non-parent relative have been separated from their adult caregiver.  TRO Application, ECF No. 569-2, Ex. 3 at ¶ 3.[8]  Similar conditions have been found at other CBP facilities in the El Paso and Rio Grande Valley Border Patrol Sectors.[9]

*Texas border*, AP News (June 20, 2019), https://www.apnews.com/a074f375e643408cb9b8d1a5fc5acf6a.

[3] Lizzie O'Leary, *'Children Were Dirty, They Were Scared, and They Were Hungry'*, The Atlantic (June 25, 2019), https://www.theatlantic.com/family/archive/2019/06/child-detention-centers-immigration-attorney-interview/592540/; Isaac Chotiner, *Inside a Texas Building Where The Government Is Holding Immigrant Children*, The New Yorker (June 22, 2019), https://www.newyorker.com/news/q-and-a/inside-a-texas-building-where-the-government-is-holding-immigrant-children.

[4] Lizzie O'Leary, *'Children Were Dirty, They Were Scared, and They Were Hungry'*, *supra* note 3.

[5] Isaac Chotiner, *Inside a Texas Building Where The Government Is Holding Immigrant Children*, *supra* note 3.

[6] Cedar Attanasio et al., *Attorneys: Texas border facility is neglecting migrant kids*, AP News (June 21, 2019), https://www.apnews.com/46da2dbe04f54adbb875cfbc06bbc615.

[7] Lizzie O'Leary, *'Children Were Dirty, They Were Scared, and They Were Hungry'*, *supra* note 3.

[8] Cedar Attanasio et al., *supra* note 6.

[9] A physician who was granted access to the Ursula facility in McAllen, Texas, the largest CBP detention center in the country, found similarly disturbing conditions at the facility, including "extreme cold temperatures, lights on 24 hours a day, no adequate access to medical care, basic sanitation, water, or adequate food." Teen mothers in custody were not able to wash their children's bottles, and children older than 6 months were not provided age-appropriate food.  A flu outbreak at the facility led to five infants being hospitalized.  Serena Marshal, et al., *Doctor compares conditions for unaccompanied children at immigrant holding centers to 'torture facilities'*, ABC News (June 23, 2019), https://abcnews.go.com/Politics/doctor-compares-conditions-immigrant-holding-centers-torture-facilities/story?id=63879031.

In fact, a report by the Office of the Inspector General for the Department of Homeland Security (DHS) published on July 2, 2019, urged DHS "to take *immediate steps* to alleviate dangerous overcrowding and prolonged detention of children and adults in the Rio Grande Valley."[10]  The report specifically found that 32% of children in this sector had been held for longer than the 72 hours allowed by the Settlement Agreement, that many children had not been provided access to showers, clean clothes, or hot meals, and that some children were being held in closed cells.[11]

This Court has already twice found that conditions such as those at the CBP facilities in the El Paso and Rio Grande Valley Border Patrol Sectors violate the Settlement Agreement's "safe and sanitary" standard.  The Court's July 24, 2015 order held that "the widespread and deplorable conditions" in CBP facilities— including extremely cold holding cells with only mylar blankets for warmth, overcrowded holding rooms with 100 or more unrelated adults and children who were forced to sleep standing up or not at all, and inadequate nutrition and hygiene—were a material breach of the Settlement Agreement's requirement that the federal government provide "safe and sanitary" holding cells for children while they are in temporary custody.  *In Chambers – Order re Pls.' Mot. to Enforce Settlement of Class Action and Defs.' Mot. to Amend Settlement Agreement*, No. 2:85-cv-4544-DMG-AGR (C.D. Cal. July 24, 2015), ECF No. 177.  On June 27, 2017, the Court again found that the unsafe and unsanitary conditions at CBP facilities in the Rio Grande Valley Border Patrol Sector—cold temperatures; inadequate food, sleeping conditions, and hygiene products (no soap, no change of clothes, no pillows or blankets, and no toothbrushes); and a lack of access to clean

---

[10] U.S. Dep't of Homeland Security, Office of the Inspector General, *Management Alert – DHS Needs to Address Dangerous Overcrowding and Prolonged Detention of Children and Adults in the Rio Grande Valley*, OIG-19-51, at 1 (July 2, 2019) (emphasis added).

[11] *Id.* at 3, 6.

drinking water—were a violation of the Settlement Agreement. *In Chambers – Order re Pls.' Mot. To Enforce and Appoint a Special Monitor*, No. 2:85-cv-4544-DMG-AGR (C.D. Cal. June 27, 2017), ECF No. 363.  The Court specifically found that hygiene products such as soap, towels, showers, dry clothing, and toothbrushes fell within the rubric of the Settlement Agreement's safe and sanitary standard.  *Id.* at 13.  Yet, despite the Court's *repeated* findings that these conditions are unsafe and unsanitary in violation of the Settlement Agreement, the federal government continues to hold vulnerable children under these same inhumane conditions in complete disregard for the children's health, safety, and well-being.

## II.   THE FEDERAL GOVERNMENT'S CONTRAVENTION OF THE *FLORES* SETTLEMENT AGREEMENT IMPLICATES FUNDAMENTAL DUE PROCESS CONCERNS.

Enforcement of the Settlement Agreement in this instance is all the more critical because of the vital constitutional interests at stake.  The basic safeguards that this Court put into place to protect the well-being of children in federal custody also protect these children's fundamental liberty interests, as enshrined in the Fifth Amendment's Due Process Clause.  "[W]hen the State . . .  so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety—it [violates] . . . the Due Process Clause." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989).  This is as true for children as it is for adults.  *See, e.g., In re Gault*, 387 U.S. 1, 13 (1967) ("[N]either the Fourteenth Amendment nor the Bill of Rights is for adults alone."); *Bolling v. Sharpe*, 347 U.S. 497, 500 (1954) (finding deprivation of a Fifth Amendment liberty interest when children were segregated in Washington, D.C. schools).  By enforcing the Settlement Agreement in this instance, the Court would also protect the constitutional rights of vulnerable migrant children whose health, safety, and well-being are being actively and acutely compromised by the federal government's practices and policies.

Plaintiffs have carefully documented that children are being detained by the federal government in deplorable conditions that are comparable to "torture facilities." TRO Application at 3, 4-14, 17. In such circumstances, fundamental due process concerns are paramount. In the context of adults in a CBP detention center, an Arizona district court recently addressed the constitutionality of similarly unsafe and unsanitary conditions, including "deprivation of sleep, of hygienic and sanitary conditions, of adequate medical screening and care, of adequate food and water, and of warmth." *Unknown Parties v. Johnson*, No. CV-15-00250-TUC-DCB, 2016 WL 8188563, at *1 (D. Ariz. Nov. 18, 2016), *aff'd sub nom. Doe v. Kelly*, 878 F.3d 710 (9th Cir. 2017). Recognizing that such conditions likely violated due process requirements, the court issued a preliminary injunction that required CBP to ensure availability of hygienic items and bedding materials, provide adequate medical care, and monitor the facility's temperature and cleanliness. *See id.* at *15-16. The TRO Application presents an almost identical list of deprivations. The only difference is that the affected class consists of vulnerable and defenseless children, which renders the deprivations even more shocking and inhumane.

Notably, the deprivations at issue here would likely not pass constitutional muster even if they were applied to adults convicted of crimes. Under the Eighth Amendment, "[prisons] must provide humane conditions of confinement[, including] . . . adequate food, clothing, shelter, and medical care . . . ." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).[12] The inadequate hygienic supplies, medicine, sanitation, water, food, temperatures, sleeping conditions, and

---

[12] The Due Process Clause provides protections "at least as great" as those the Eighth Amendment guarantees to convicted prisoners. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *see also Youngberg v. Romeo*, 457 U.S. 307, 315-16 (1982) ("If it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional [under the Due Process Clause] to confine the involuntarily committed—who may not be punished at all—in unsafe conditions.").

1    medical care documented by Plaintiffs would raise serious constitutional questions

2    under that standard.  *See, e.g.*, *Foster v. Runnels*, 554 F.3d 807, 812-15 (9th Cir.

3    2009) (inadequate food violates Eighth Amendment); *Hoptowit v. Spellman*, 753

4    F.2d 779, 783-84 (9th Cir. 1985) (inadequate plumbing and cleaning supplies both

5    produce unhygienic conditions that violate Eighth Amendment); *Martino v. Carey*,

6    563 F. Supp. 984, 999-1002 (D. Or. 1983) (overcrowding and inadequate clothing,

7    sanitation, and heating violate Eighth Amendment).  In other words, the federal

8    government is civilly detaining innocent children in conditions like those that

9    courts have declared unconstitutionally cruel and unusual for adults imprisoned for

10   committing crimes.  Swift and strict enforcement of the Settlement Agreement is

11   necessary to address this constitutionally repugnant situation.

12        Additional constitutional concerns are raised by the forcible separation of

13   children from their parents or relative caretakers and the indefinite detention of

14   these children apart from these caretakers.  The integrity of the family unit is

15   protected by fundamental due process principles.  *Stanley v. Illinois*, 405 U.S. 645,

16   651 (1972).  Indeed, "the right of family members to live together[] is part of the

17   fundamental right of privacy."  *Halet v. Wend Inv. Co.*, 672 F.2d 1305, 1311 (9th

18   Cir. 1982).  Familial liberty interests may extend beyond parent-child relationships

19   to non-parent relatives, especially when such relatives take on a primary caretaking

20   role.  *See Moore v. City of East Cleveland*, 431 U.S. 494, 505 (1977) ("Decisions

21   concerning childrearing, which . . . other cases have recognized as entitled to

22   constitutional protection, long have been shared by grandparents or other relatives

23   who occupy the same household—indeed who may take on major responsibility for

24   the rearing of the children.").  Thus, the practice of forcibly separating children

25   from their parents or relative caretakers in civil detention facilities without any

26   finding of parental unfitness or danger to a child likely violates due process

27   principles.  *Ms. L. v. ICE*, 302 F. Supp. 3d 1149, 1167 (S.D. Cal. 2018).

28        In a substantive due process claim challenging executive action, "the

threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). It is difficult to imagine a circumstance more shocking to the contemporary conscience than children as young as infants being needlessly deprived of warmth, basic hygiene, medical attention, food, sleep, and the comfort of their loved ones. Indeed, the public outcry over the conditions faced by migrant children in recent weeks demonstrates widespread alarm and dismay—across the political spectrum and from all walks of life—at the *Flores* violations documented by Plaintiffs here.[13] Enforcement to remedy these circumstances is necessary to bring these facilities into compliance with not only the Settlement Agreement, but also basic principles of due process and human decency.

## III.   IMMEDIATE INJUNCTIVE RELIEF IS NECESSARY TO PREVENT FURTHER HARM TO CHILDREN.

### A.   The Federal Government's Actions are Causing Long-Term Harm to Vulnerable Children.

Experts have repeatedly warned the federal government that "[c]onditions in U.S. detention facilities," like those described in the TRO Application, "which include forcing children to sleep on cement floors, open toilets, constant light exposure, insufficient food and water, no bathing facilities, and extremely cold

---

[13] Media reports clearly attest to this public outcry. *See, e.g.,* Cedar Attanasio et al, *Lawmakers Decry Perilous Federal Lockups for Migrant Kids*, AP News (June 21, 2019), https://www.apnews.com/7a411d9df0c1453e966287e6fe727616; Editorial, *America Should Be Horrified by This,* Wash. Post (June 24, 2019), https://www.washingtonpost.com/opinions/america-should-be-horrified-at-this/2019/06/24/489e1866-96be-11e9-830a-21b9b36b64ad_story.html?noredirect=on&utm_term=.3ee7d7d59777; Editorial, *Border Policy Is Debatable. Soap for Migrant Children Shouldn't Be,* Hous. Chron. (June 25, 2019), https://www.houstonchronicle.com/opinion/editorials/article/Border-policy-is-debatable-Soap-for-migrant-14049027.php.

temperatures, are traumatizing for children."[14]  In fact, the pediatrician who evaluated 39 children at CBP facilities reported that children she examined "showed symptoms of trauma."  TRO Application, ECF No. 569-2, Ex. 13 at ¶ 13.

Due to the harm caused to children held in these facilities, the American Academy of Pediatrics issued a Policy Statement on the Detention of Immigrant Children, which states "that detention or the separation of families for purposes of immigration enforcement or management are *never* in the best interest of children."[15]  Detention puts children "at risk of exploitation and abuse, denies them access to meaningful health care, and harms their ability to play and learn. Detained children experience acute mental trauma that will have long-term health consequences."[16]  Furthermore, the TRO Application evidences how the federal government's improper separation of children from family members is causing additional harm.  TRO Application at 12, ECF. No. 569-2, Ex. 2 at ¶¶ 3-4; Ex. 3 at ¶¶ 3, 5-6; Ex. 8 at ¶ 5; Ex. 9 at ¶ 6.  "'Children are at risk of suffering great emotional harm when they are removed from their loved ones.'" *Ms. L. v. ICE*, 310 F. Supp. 3d 1133, 1147 (S.D. Cal. 2018) (citing expert evidence).

The harm caused by the deplorable and inhumane conditions at CBP facilities and lack of adequate medical care is evidenced by the multiple child deaths in CBP custody since December 2018.  In December 2018, a 7-year-old girl and an 8-year-old boy, both from Guatemala, died in CBP custody in the El Paso Sector.[17]  In May 2019, a 16-year-old Guatemalan child died while in CBP custody

---

[14] Colleen Kraft, *American Association of Pediatrics Statement Opposing the Border Security and Immigration Reform Act*, Am. Ass'n. of Pediatrics (June 15, 2018), https://www.aap.org/en-us/about-the-aap/aap-press-room/Pages/AAPStatementOpposingBorderSecurityandImmigrationReformAct.aspx.

[15] Linton, et al., Council on Community Pediatrics, *Detention of Immigrant Children*, 139 Am. Acad. of Pediatrics 1, 6 (2017) (emphasis added), https://pediatrics.aappublications.org/content/pediatrics/139/5/e20170483.full.pdf.

[16] Marion Hart, *Why Detaining Children is Harmful*, Unicef USA (June 21, 2018), https://www.unicefusa.org/stories/why-detaining-children-harmful/34488.

[17] Chris Boyette, et al., *Guatemalan boy died of flu and a bacterial infection*

1    in the Rio Grande Valley Sector.[18]  The federal government's failings must be

2    immediately addressed to prevent further harm.

3            To prevent irreversible harms to children, the federal government is required

4    to release children from custody "without unnecessary delay" and, for children who

5    cannot be immediately released to a family member or other sponsor, to place them

6    in non-secure, state-licensed facilities.  Settlement Agreement at ¶¶ 6, 19.  The

7    requirement that children be placed in state-licensed facilities ensures that these

8    children will be housed in humane conditions because the states monitor and

9    regulate these facilities.  California and other Amici States currently license and

10   oversee children's residential placement facilities that contract with the federal

11   government to house immigrant children.  State laws require these facilities to

12   provide safe and sanitary conditions to children.   For example, in California

13   residential placements for children must provide "a safe, healthy, and comfortable

14   home where he or she is treated with respect."  Cal. Welf. & Inst. Code

15   § 16001.9(a)(1).  Children in these facilities "shall […] receive adequate and

16   healthy food, adequate clothing," "medical, dental, vision, and mental health

17   services," plus "[t]oiletries and personal hygiene products," among many other

18   required services.  Cal. Welf. & Inst. Code § 16001.9(a)(3)-(4); Cal. Code Regs. tit.

19   22, § 84072(d)(6).

20           The protections afforded to children by the Settlement Agreement and due

21   process principles are designed to protect children from the very harms that the

22   federal government is causing.  Unless immediately stopped, the federal

23   _____

24   *while in US custody, autopsy shows*, CNN (Apr. 2, 2019),
     https://www.cnn.com/2019/04/02/us/guatemala-felipe-gomez-alonzo-
     autopsy/index.html; Amir Vera, *Autopsy determines 7-year-old Guatemalan girl*

25   *died from sepsis while in US custody*, CNN (Mar. 30, 2019),
     https://www.cnn.com/2019/03/29/us/guatemala-jakelin-caal-maquin-

26   autopsy/index.html.  CBP Sectors are found at: https://www.cbp.gov/border-
     security/along-us-borders/border-patrol-sectors.

27           [18] Nomaan Merchant, *5th migrant child dies after detention by US border*

28   *agents*, Associated Press (May 20, 2019),
     https://www.apnews.com/5a49d65213b54043825acc282830b139.

government will continue causing long-lasting harm to children held in CBP facilities.

### B. Amici States Must Address the Harm these Children Experience in Federal Custody Upon Their Release to our Communities.

Every year, thousands of immigrant children are welcomed into Amici States upon their release from federal immigration custody. Amici States have a strong interest in the well-being of immigrant children held in immigration custody, including CBP facilities, because many of them will eventually join our communities. For example, from October 2018 through May 2019, over 51 percent of all unaccompanied immigrant children, or 23,874 children, released from federal immigration custody were released to adult sponsors residing in Amici States.[19]

Amici States provide education and an array of services, including medical and mental health care services, to foster the development and safeguard the well-being of these vulnerable children and their families as they integrate themselves into their new communities. The long-term physical and mental health harms caused by the federal government's actions, as detailed in the TRO Application, will require more extensive services to the children and their families, requiring Amici States to expend additional funds and redirect resources from other critically needed services. Children who have suffered these harms will also require additional supports and services in state-funded school systems. Amici States request the Court's intervention to limit the damage being done by the federal government to children currently in CBP facilities and, going forward, to prevent these kinds of long-lasting harms to children and their families from occurring in the first instance.

---

[19] *See* U.S. Dep't of Health & Human Services, Office of Refugee Resettlement, *Unaccompanied Alien Children Released to Sponsors by State* (last visited July 9, 2019), https://www.acf.hhs.gov/orr/resource/unaccompanied-alien-children-released-to-sponsors-by-state.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' *ex parte* application for temporary restraining order should be granted.

Dated:  July 9, 2019                                    Respectfully submitted,

                                                        XAVIER BECERRA
                                                        Attorney General of California
                                                        SARAH E. BELTON
                                                        Supervising Deputy Attorney General
                                                        VILMA PALMA-SOLANA
                                                        Deputy Attorney General

                                                        */s/ Rebekah A. Fretz*
                                                        Rebekah A. Fretz
                                                        Deputy Attorney General
                                                        *Attorneys for Amicus Curiae the State*
                                                        *of California*

                                                        [Counsel listing continues on next page]

14

MAURA HEALEY
*Attorney General*
*Commonwealth of Massachusetts*
One Ashburton Place
Boston, MA  02108

WILLIAM TONG
*Attorney General*
*State of Connecticut*
55 Elm Street
Hartford, CT 06106

KATHLEEN JENNINGS
*Attorney General*
*State of Delaware*
820 North French Street
Wilmington, DE 19801

KARL A. RACINE
*Attorney General*
*District of Columbia*
441 4th Street, N.W.
Washington, D.C. 20001

CLARE E. CONNORS
*Attorney General*
*State of Hawaii*
425 Queen Street
Honolulu, HI  96813

KWAME RAOUL
*Attorney General*
*State of Illinois*
100 W. Randolph Street, 12th Fl.
Chicago, IL 60601

BRIAN E. FROSH
*Attorney General*
*State of Maryland*
200 Saint Paul Place
Baltimore, MD 21202

DANA NESSEL
*Attorney General*
*State of Michigan*
P.O. Box 30212
Lansing, MI 48909

KEITH ELLISON
*Attorney General*
*State of Minnesota*
102 State Capitol
75 Rev. Dr. Martin Luther King Jr. Blvd.
St. Paul, MN 55155

GURBIR S. GREWAL
*Attorney General*
*State of New Jersey*
25 Market Street
Trenton, NJ 08625

HECTOR BALDERAS
*Attorney General*
*State of New Mexico*
408 Galisteo Street
Santa Fe, NM 87501

LETITIA JAMES
*Attorney General*
*State of New York*
28 Liberty Street
New York, NY 10005

JOSHUA H. STEIN
*Attorney General*
*State of North Carolina*
114 W. Edenton Street
Raleigh, NC 27603

JOSH SHAPIRO
*Attorney General*
*Commonwealth of Pennsylvania*
Strawberry Square, 16th Fl.
Harrisburg, PA 17120

THOMAS J. DONOVAN, JR.
*Attorney General*
*State of Vermont*
109 State Street
Montpelier, VT 05609

ROBERT W. FERGUSON
*Attorney General*
*State of Washington*
P.O. Box 40100
Olympia, WA 98504

ELLEN F. ROSENBLUM
*Attorney General*
*State of Oregon*
1162 Court Street N.E.
Salem, OR 97301

PETER F. NERONHA
*Attorney General*
*State of Rhode Island*
150 South Main Street
Providence, RI 02903

MARK R. HERRING
*Attorney General*
*Commonwealth of Virginia*
202 North 9th Street
Richmond, VA 23219