JOSEPH H. HUNT
Assistant Attorney General
Civil Division
AUGUST E. FLENTJE
Special Counsel to the Assistant Attorney General
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director, District Court Section
Office of Immigration Litigation
SARAH B. FABIAN
Senior Litigation Counsel, District Court Section
Office of Immigration Litigation
    P.O. Box 868, Ben Franklin Station
    Washington, D.C. 20044
    Tel:  (202) 532-4824
    Fax:  (202) 305-7000
    Email:  sarah.b.fabian@usdoj.gov

Attorneys for Defendants

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY LISETTE FLORES; *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>WILLIAM P. BARR, Attorney General of the United States; *et al.*,<br><br>    Defendants. | Case No. CV 85-4544<br><br>**DEFENDANTS' NOTICE OF MOTION TO EXCLUDE PLAINTIFFS' DECLARATIONS AND REQUEST FOR AN EVIDENTIARY HEARING BEFORE THE SPECIAL MASTER**<br><br>Hearing Date:  August 30, 2019<br>Time: 9:30am<br>Dept: Courtroom 8C, 8th Floor |

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.   RELEVANT PROCEDURAL BACKGROUND ..........................................2

III.  MOTION TO EXCLUDE CERTAIN DECLARATIONS
      FROM EVIDENCE ...............................................................................3

      A. Evidentiary Standards.................................................................3

      B. The Testimony Contained in the Declaration of Hope M. Frye
         that Relies on Inadmissible Hearsay and Opinion Testimony
         Should be Excluded from Evidence. ...........................................4

      C. Declaration of Marsha Rae Griffin, M.D. Should be Excluded as an
         Improper Lay Witness Evidence. ...............................................8

         1. This Court should exclude Dr. Griffin's conclusions as
            improper lay-witness testimony because she has no
            personal knowledge of the conditions at Homestead ...............8

         2. Dr. Griffin has not laid the foundation to give an expert opinion
            as to whether Defendants are complying with the Flores
            Agreement. ...................................................................10

      D. The Declaration of Ryan Matlow, Ph.D. Should be Excluded as
         Improper Lay Witness Evidence .............................................13

         1. Dr. Matlow's conclusions are improper lay-
            witness testimony because he relies on hearsay
            rather than personal knowledge ...........................................13

         2. Dr. Matlow's declaration does not qualify as
            an expert opinion because it is not reliable...........................14

      E. Dr. Wang's Cover Letter and the Attached "Program Report" are not
         Declarations and Should be Excluded ......................................17

IV.   REQUEST FOR EVIDENTIARY HEARING BEFORE THE
      SPECIAL MASTER .............................................................................21

V.    CONCLUSION....................................................................................25

# **TABLE OF CONTENTS**

## **CASES**

*Bank Melli v. Pahlavi,*
  58 F. 3d 1406 (9th Cir. 1995)............................................................5

*Beyene v. Coleman Sec. Services, Inc.*,
  854 F.2d 1179 (9th Cir. 1988)..........................................................2

*Canada v. Blain's Helicopters, Inc.,*
  831 F.2d 920 (9th Cir. 1987)..........................................................18

*Carmen v. San Francisco Unified School District,*
  237 F.3d 1026 (9th Cir. 2001)..........................................................7

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
  509 U.S. 579 (1993) ........................................................ 8, 11, 16, 18

*Evangelista v. Inland Boatman's Union of the Pacific,*
  777 F.2d 1390 (9th Cir. 1985)........................................................6, 7

*Howard v. AMCO Ins. Co.,*
  No. SACV0800175DMGMLGX, 2010 WL 11595719
  (C.D. Cal. Oct. 19, 2010) ...............................................................17

*Hubbard v. Houghland,*
  471 F. Appx. 625 (9th Cir. 2012)....................................................22

*In re Adair,*
  965 F.2d. 777 (9th Cir. 1992)..........................................................23

*Jinro America Inc. v. Secure Investments, Inc.,*
  266 F.3d 993 (9th Cir. 2001)..........................................................10

*Kumho Tire Co., Ltd. V. Carmichael,*
  526 U.S. 137 (1999) ........................................................ 10, 18, 19

*Kuntz v. Sea Eagle Diving Adventures Corp.,*
  199 F.R.D. 665 (D. Haw. 2001)......................................................24

*Los Angeles Times Communications LLC v. Dept. of the Army,*
  442 F. Supp. 2d 880 (C.D. Cal. 2006) .................................................3

*Lust By and Through Lust v. Merrell Dow Pharmaceuticals, Inc.,*
  89 F.3d 594 (9th Cir. 1996)............................................................10

*McClain v. Metabolife Int'l, Inc.,*
  401 F.3d 1233 (11th Cir. 2005)......................................................10

*Messick v. Novartis Pharmaceuticals Corp.,*
  747 F.3d 1193 (9th Cir 2014)..........................................................19

*MLC Intellectual Prop., LLC v. Micron Technology, Inc.*,
  No. 14-cv-03657, 2019 WL 2716512 (N.D. Cal June 28, 2019)..........................10

*Newell Rubbermaid, Inc. v. Raymond Corp.*,
  676 F.3d 521 (6th Cir. 2012)........................................... 10, 11, 14, 15

*Orr v. Bank of America, NT & SA*,
  285 F.3d 764 (9th Cir. 2002)..............................................2, 4

*Plyler v. Whirlpool Corp.*,
  751 F.3d 509 (7th Cir. 2014)..................................................7

*Reinsdorf v. Sketchers U.S.A.*,
  922 F. Supp. 2d 866 (C.D. Cal. 2013) ...............................14

*Ryoo Dental, Inc. v. Thomas D. Han DMD*,
  No. 15-308, 2016 WL 6138413 (C.D. Cal. Apr. 25, 2016) ....................... 14, 15

*Sanders v. Ayers*,
  2008 WL 4224554 (E.D. Cal. Sept. 12, 2008)........................ 23, 24

*Sepulveda v. Walmart Stores, Inc.*,
  237 F.R.D. 229 (C.D. Cal. May 5, 2006)...........................8

*Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co., Inc.*,
  520 F. Supp. 2d 1184 (C.D. Cal. 2007) ...............................21

*United Commercial Ins. Service, Inc. v. Paymaster Corp.*,
  962 F.2d 853 (9th Cir. 1992)..............................................2, 21

*United States v. Durham*,
  464 F.3d 976 (9th Cir. 2006).............................................3, 7

*Wang v. Chinese Daily News, Inc.*,
  231 F.R.D. 602 (C.D. Cal. 2005) ..........................................5

*Wells v. Jeffery*,
  No. CIV.A. 03-00228, 2006 WL 696057 n.7 (D.D.C. Mar. 20, 2006) .................6

## **STATUTES**

28 U.S.C. § 1746 ....................................................... 17, 18

## **RULES**

Fed. R. Civ. P. 43(c)...................................................1, 21

Fed. R. Civ. P. 53(c)(1)(C)..............................................20

Fed. R. Civ. P. 56 .........................................................5

Fed. R. Civ. P. 56(c)(4) ........................................ 1, 3, 4, 17

Fed. R. Evid. 102 .................................................................................23

Fed. R. Evid. 403 .................................................................................15

Fed. R. Evid. 601 ...................................................................................5

Fed. R. Evid. 602 ........................................................................ 1, 3, 5, 7

Fed. R. Evid. 701 ........................................................................... *passim*

Fed. R. Evid. 702 ........................................................................... *passim*

Fed. R. Evid. 702(b) .............................................................................11

Fed. R. Evid. 702(c) .............................................................................11

Fed. R. Evid. 702(d) .............................................................................11

Fed. R. Evid. 801 ..............................................................................4, 5

Fed. R. Evid. 801(c) ...............................................................................4

Fed. R. Evid. 801(d) ...............................................................................4

Fed. R. Evid. 802 .............................................................................5, 23

Fed. R. Evid. 803 .................................................................................17

Fed. R. Evid. 1101(a) ...........................................................................23

## **OTHER AUTHORITIES**

8 James Wm. Moore, et al.,  Moore's Federal Practice—
  Civil § 43.05[2] (3d ed. 2012).............................................................21

9A Wright and Miller, Federal Practice & Procedure
  Evidence on Motions...........................................................................22

30B Wright and Miller, Federal Practice & Procedure:
  Evidence § 7031 ...................................................................................4

C.D. Cal. Local Rule 7 ................................................................. *passim*

C.D. Cal Local Rule 7-6 ............................................................... *passim*

C.D. Cal Local Rule 7-7 ............................................................... *passim*

C.D. Cal. Local Rule 43-1 ..................................................... 20, 23, 24

## NOTICE OF MOTION

NOTICE IS HEREBY GIVEN that the U.S. Department of Health and Human Services (HHS), Office of Refugee Resettlement (ORR), by and through undersigned counsel, will bring this motion for hearing on August 30, 2019, or as soon thereafter as counsel may be heard, before United States District Judge Dolly M. Gee, in Courtroom 8C, at the Los Angeles - located within the Central District of California.

## COMPLIANCE WITH LOCAL RULE 7-3

This motion is made following telephonic meetings of counsel pursuant to L.R. 7-3, which took place on July 26, 2019.  Counsel for Plaintiffs indicated that Plaintiffs oppose Defendants' Motion to Exclude certain declarations, and tentatively oppose Defendants' motion requesting an evidentiary hearing before the District Court because the Court has already ordered the Special Monitor to conduct a hearing and either party may then file objections to any report issued by the Special Monitor. On July 31, 2019, Defendants contacted to Plaintiffs' counsel via email and explained that Defendants now intend to file a motion requesting that the Special Master hold an evidentiary hearing pursuant to Local Rule 43. Defendants explained that they were requesting that any evidentiary hearing before the Special Master be held in accordance with the Federal Rules of Evidence, as well as Local Rule 43-1. On August 1, 2019, Plaintiffs' counsel responding that they do not believe an evidentiary hearing is necessary and oppose Defendants' motion.

**MOTION TO EXCLUDE PLAINTIFFS' DECLARATIONS AND REQUEST FOR EVIDENTIARY HEARING BEFORE SPECIAL MASTER**

Defendants respectfully request that the Court exclude certain portions of the Declaration of Hope M. Frye. Defendants also request that the Court exclude from evidence, in their entirety, the Declarations of Marsha Rae Griffin, M.D. and Ryan Matlow, Ph.D., and the cover letter and attached document from N. Ewen Wang, M.D.   These declarations should be excluded because (1) the declarants lack personal knowledge under Rule 602 of the Federal Rules of Evidence and thus the evidence presented is based on hearsay, (2) the declarants' testimony contains improper lay witness opinion testimony under Rule 701 of the Federal Rules of Evidence, and (3) none of the declarations satisfy requirements of Rule 702, and (4) to the extent the Plaintiffs are offering any of these declarations as setting forth expert opinions, the purported testimony does satisfy the Daubert standard. The cover letter and attached document from N. Ewen Wang, M.D. should also be excluded because it is not a proper declaration under Local Rule 7-7.

In addition, HHS-ORR hereby moves under Rule 43(c) of the Federal Rules of Civil Procedure, for an evidentiary hearing with regard to Plaintiffs' Motion to Enforce Settlement Agreement filed May 31, 2019, ECF 547-2, and corrected June 28, 2019, ECF 578 ("Motion").  Plaintiffs submitted eighty-one (81) declarations in support of their Motion from purported expert witnesses and unaccompanied alien children (UAC) in ORR care. The declarations of many of the fact witnesses do not pass muster under the Federal Rules of Evidence and the purported expert declarations do not pass muster under Daubert and its progeny.  A comparison of information in ORR case files with information in Plaintiffs' declarations indicates significant inconsistencies and contradictions with case notes regarding the declarants' release process.  In addition, information provided by ORR Deputy

Director Jallyn Sualog both contradicts and disproves many of the allegations contained in the declarations submitted by Plaintiffs regarding UAC length of stay and the security level of the Homestead influx care facility. These major discrepancies of basic facts pertinent to resolution of the Motion before the court raise "factual questions not readily ascertainable from the declarations of witnesses, [and for which] questions of credibility predominate . . . ." *United Commercial Ins. Service, Inc. v. Paymaster Corp.*, 962 F.2d 853, 858 (9th Cir. 1992). There are numerous material disputed issues of fact that must be resolved by the Court prior to ruling on Plaintiffs' Motion.  Therefore, the Court should hear oral testimony in accordance with the Federal Rules of Evidence in order to fairly resolve disputed factual issues that form the basis of Plaintiffs' Motion. *Id.*

This motion is based upon the above Notice, the accompanying Memorandum of Points and Authorities, all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

DATED:      August 2, 2019              Respectfully submitted,


                                        JOSEPH H. HUNT
                                        Assistant Attorney General
                                        Civil Division

                                        AUGUST E. FLENTJE
                                        Special Counsel to the Assistant Attorney
                                        General

                                        WILLIAM C. PEACHEY
                                        Director, District Court Section
                                        Office of Immigration Litigation

                                        WILLIAM C. SILVIS

Assistant Director, District Court Section
Office of Immigration Litigation

*/s/ Sarah B. Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-4824
Fax: (202) 305-7000
Email: sarah.b.fabian@usdoj.gov

*Attorneys for Defendants*

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS'
DECLARATIONS AND MOTION FOR EVIDENTIARY HEARING**

## I.     INTRODUCTION

Defendant HHS-ORR moves to exclude in whole, or in part, declarations submitted in support of Plaintiffs' June 28, 2019 Motion to Enforce Settlement Agreement, ECF 578.The declarations of Hope M. Frye, Marsha Rae Griffin, MD, and Ryan Matlow, Ph.D., should be excluded because: (1) the declarants lack personal knowledge under Rule 602 of the Federal Rules of Evidence (Rule 602) and thus the evidence is based on hearsay, (2) the declarants' testimony contains improper lay witness opinion testimony under Rule 701 of the Federal Rules of Evidence (Rule 701), (3) none of the declarations satisfy the requirements of Rule 702 of the Federal Rules of Evidence (Rule 702), and (4) the declarations, to the extent they purport to present expert opinions, do not satisfy Daubert and its progeny. Likewise, the cover letter and attached document "2018 Individual Program Report: Homestead (April 11, 2019)," from N. Ewen Wang, M.D. should be excluded. This cover letter fails to satisfy the threshold requirement that factual contentions in support of a motion be made upon *a declaration* that complies with Rule 56(c)(4) of the Federal Rule of Civil Procedure. Given the problems with Plaintiffs' declarations, they should be excluded from the record and any testimony from these declarants precluded.

HHS further moves under Rule 43(c) of the Federal Rule of Civil Procedure for an evidentiary hearing before the Special Master with regard to Plaintiffs' Motion. ECF 578. There are numerous disputed issues of material fact that must be resolved by the Court with regard to Plaintiffs' Motion. Plaintiffs submitted eighty-six (86) declarations in support of their Motion from lay witnesses and UAC in ORR care. The declarations submitted in support of Plaintiffs' Motion, and the responsive declarations submitted by Defendants, forecast the testimony that might be presented

at an evidentiary hearing; but Plaintiffs' declarations are replete with hearsay, double hearsay, speculation, and are infused with bias. Therefore, the Court should hear oral testimony in accordance with the Federal Rules of Evidence in order to fairly resolve disputed factual issues.

II.   **RELEVANT PROCEDURAL BACKGROUND**

On June 28, 2019, Plaintiffs filed their Motion to enforce the 1997 Flores Settlement Agreement ("Flores Agreement" or "Agreement"). ECF 578. Plaintiffs' motion alleges that the ORR is in violation of the Agreement with regard to the Homestead, Florida facility. Attached to that Motion were eighty-six (86) declarations containing allegations regarding UAC length of stay and the level of security at the Homestead influx care facility. On June 10, 2019, the Court referred the Motion to the Monitor for a Report and Recommendation pursuant to Paragraph A.2 of the Appointment Order. ECF 553. Relevant here, the Court explained that the Monitor may conduct any proceedings she deems appropriate, including requiring the parties to submit supplemental briefing (to be filed on the docket) and holding a hearing on Plaintiffs' Motion.[1] *Id.*

Defendants opposed Plaintiffs' Motion on August 2, 2019 and submitted the declaration of Jallyn Sualog, ORR Deputy Director, along with other evidence related to Plaintiffs' declarants, in support of their Opposition (ECF No. 609).

III.   **MOTION TO EXCLUDE CERTAIN DECLARATIONS FROM EVIDENCE**

A.   **Evidentiary Standards**

Evidence submitted to the Court on motion practice must meet all requirements for admissibility of evidence if offered at the time of trial. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773-74 (9th Cir. 2002); *Beyene v. Coleman Sec.*

---

[1] Please note that the term, "Monitor" as used in the Court's order, and the term "Special Master" as defined in Rule 53 of the Federal Rules of Civil Procedure are used interchangeably in this motion.

2

*Services, Inc.*, 854 F.2d 1179, 1181-82 (9th Cir. 1988). Relevant here, Local Rule 7-6 and 7-7 provide that factual contentions in any motion be presented in a declaration, but require that the declarations "shall contain only factual, evidentiary matter and shall conform as far as possible to the requirements of F.R.Civ.P. 56(c)(4)." In turn, Rule 56(c)(4) of the Federal Rules of Civil Procedure requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

The Federal Rules of Evidence govern the admissibility of evidence. Rule 602 mandates that a "witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." A declaration is a substitute for oral testimony and, therefore, all matters set forth in declarations must be based on personal knowledge and statements in declarations are inadmissible unless the declaration itself affirmatively demonstrates that the declarant has personal knowledge of those facts. *See Los Angeles Times Communications LLC v. Dept. of the Army*, 442 F. Supp. 2d 880, 886 (C.D. Cal. 2006) ("Generally, Rule 602 requires that a witness' testimony be based on events perceived by the witness through one of the five senses.").

Rule 701 governs the admissibility of lay witness opinions. Under Rule 701, opinion testimony of lay witnesses is permissible if the opinions are (1) rationally based on the perception of the witness; (2) helpful to the determination of a fact in issue; and (3) not based on scientific, technical, or specialized knowledge. Fed. R. Evid. 701. That is, opinion testimony of lay witnesses must be "predicated upon concrete facts within their own observation and recollection - that is facts perceived from their own senses, as distinguished from their opinions or conclusions drawn from such facts." *United States v. Durham*, 464 F.3d 976, 982 (9th Cir. 2006).

Opinions based on scientific, technical, or specialized knowledge are governed by Rule 702. Rule 702 provides that a witness who is qualified by knowledge, skill, experience, training, or education (called an "expert witness") may testify in the form of opinion or otherwise as to scientific, technical or other specialized knowledge if: "(a) such testimony will assist the trier of fact to understand the evidence or to determine a fact in issue, (b) the testimony is based upon sufficient facts or data, (c) the testimony is the product of reliable principles and methods, and (d) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. A district court has broad discretion in deciding whether to admit expert testimony.

Out-of-court written statements offered to prove the truth of the matter asserted constitute hearsay. Fed. R. Evid. 801. Hearsay is "a statement that, (1) the declarant does not make while testifying at the current trial or hearing and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). "In the absence of a procedural rule or statute, hearsay is inadmissible unless it is defined as non-hearsay under Federal Rule of Evidence 801(d) or falls within a hearsay exception under Rules 803, 804 or 807." *Orr*, 285 F.3d at 778 (citing Fed. R. Evid. 802; 30B Federal Practice & Procedure: Evidence § 7031 at 279).

**B.    The Testimony Contained in the Declaration of Hope M. Frye that Relies on Inadmissible Hearsay and Opinion Testimony Should be Excluded from Evidence.**

Defendants object to the testimony contained in the Declaration of Hope M. Frye (Frye Declaration) filed in support of Plaintiffs' Motion to Enforce. *See* ECF 547-3, at 16-21 (Pls.' Ex. 2). The Court should exclude significant portions of the Frye Declaration because large swaths of the declaration fall squarely within the definition of hearsay as out-of-court, written statements offered to prove the truth of

the matters asserted. The declaration also lacks foundation, is not based on personal knowledge, calls for speculation, contains improper opinion testimony by a lay witness, and contains improper legal conclusion. *See* Fed. R. Civ. P. 56 (c)(4); L.R. 7-7; Fed. R. Evid. 801-802; Fed. R. Evid. 601-602; Fed. R. Evid. 701; *see also Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 615 (C.D. Cal. 2005) (sustaining hearsay objection to declaration statement)*; Bank Melli v. Pahlavi*, 58 F. 3d 1406, 1412 (9th Cir. 1995) (a declaration not made on personal knowledge is entitled to no weight). Because the Frye Declaration does not follow the clear standards set forth in L.R. 7-7 or the Federal Rules, portions of the Frye Declaration should be precluded from evidence. *See, e.g.*, *Chinese Daily News, Inc.*, 231 F.R.D. at 615.

For ease of reference, Defendants have attached hereto as Defs.' Ex. 1, a copy of the Frye Declaration with the portions Defendants seek to exclude as impermissible hearsay highlighted in yellow, and the portions of the declaration Defendants seek to exclude as improper conclusions of law or improper lay witness opinion testimony highlighted in green. *See* Defs.' Ex. 1.

Specifically, Defendants object to the following paragraphs of the Frye Declaration in their entirety as containing impermissible hearsay: Paragraphs 6-7, Paragraph 9, Paragraphs 17-19, Paragraphs 22-29, and Paragraphs 31-36. *See* Defs.' Ex. 1 (yellow highlights). In addition to the paragraphs listed above, Defendants object to the following specific lines as containing impermissible hearsay: "According to Ms. [], Homestead has 3,321 employees covering three shifts." (ECF 547-3, at 16 ¶ 5 (Pls.' Ex. 2); "Children understand that they are not free to leave and have been told that they will be arrested by local police and ICE and deported, if they do. Even talking about leaving is thought to be a violation of the rules for which children believe they will be stepped-up to a more restrictive facility." (*id.* at 17 ¶ 8); "[] claims that ear plugs are available upon request but that no child has ever asked for them. She also claims that the boys enjoy this sleeping arrangement,

because it 'feels like a slumber party.'  Children we interviewed universally disagreed with [] and denied being offered ear plugs." (*id*. at 17 ¶ 13); "According to the medical experts on our monitoring team, the unsanitary condition of the bathroom area and the incessant and deafening noise of the fan are clear health hazards." (*id*. at 18 ¶ 14); "While we were told that there are 30 security cameras at Homestead" (*id*. at 18 ¶ 15); "We were told the fields are being re-sodded." (*id*. at 17 ¶ 16); "However, several children reported extensive delays, up to several days, in being taken to the clinic, despite repeated requests for medical attention." (*id*. at 19 ¶ 20); "Lead clinicians must be licensed while others with related degrees can practice under a licensed clinician's supervision" (*id*. at 19 ¶ 21). *See* Defs.' Ex. 1 (yellow highlights); *see also* ECF 547-3, at 16-22.

Every statement listed above is inadmissible because they are out of court statements that cannot be introduced for the truth of the matter asserted. Rule 801. What Ms. Frye was allegedly told by various staff and UAC at Homestead and then repeatedly recounted throughout her declaration falls squarely within the definition of hearsay and is inadmissible. *Wells v. Jeffery*, No. CIV.A. 03-00228, 2006 WL 696057, *12 n.7 (D.D.C. Mar. 20, 2006) ("The affidavit or declaration cannot contain hearsay evidence, as such evidence would not be admissible at trial.").

Additional portions of the Frye Declaration should be excluded because they contain improper legal conclusions and improper lay witness opinions. The complete listing of all of the portions Defendants seek to exclude are highlighted green in Defendants' Exhibit A. However, Defendants call the Court's attention to a few particularly egregious examples of inadmissible lay-witness statements. First, with regard to improper legal conclusions, Ms. Frye states: "In all but name, Homestead is a secure facility."[2]  *See* ECF 547-3, at 17 ¶ 8 (Pls.' Ex. 2). This is precisely the type of lay testimony regarding legal conclusion that has been held repeatedly to be

_____

[2] *See* ECF 609, at 21 (Defs.' Opp.).

inadmissible. *See Evangelista v. Inland Boatman's Union of the Pacific*, 777 F.2d 1390, 1398 n.3 (9th Cir. 1985) (lay witness' testimony of legal conclusion is inadmissible under Fed. R. Evid. 701).

Next, Ms. Frye states, "The layout of this immense communal sleeping area and the secluded location of the bathroom make it difficult, if not impossible, for Homestead staff to ensure children's safety." *See* ECF 547-3, at 18 ¶ 15 (Pls.' Ex. 2). This paragraph consists of Ms. Frye's speculation, improper opinion, and conclusion regarding how Homestead officials are able to ensure a minor's safety. These are not factual statements based on her own personal knowledge, and constitute improper opinion testimony by a lay witness. *See  Durham*, 464 F.3d at 982 (Opinion testimony of lay witnesses must be "predicated upon concrete facts within their own observation . . . as distinguished from their opinions or conclusions drawn from such facts."); *see also Plyler v. Whirlpool Corp.*, 751 F.3d 509, 514 (7th Cir. 2014) (a lay witness may testify only to what he observed, e.g., a fire, but may not opine as to the cause of what he observed, because cause is not based on the witness's "perception").

 Similarly, Ms. Frye states, "We observed Homestead's school to be rather makeshift: . . . noise generated by some 2,000 children who fill in 52 classrooms in the tent creates a din. . . . We observed an unstructured and disorganized environment not suitable for nor conducive to learning." *See* ECF 547-3, at 20 ¶ 30 (Pls.' Ex. 2). Ms. Frye's opinions and conclusions regarding educational standards are not statements of fact based on her personal knowledge and are either improper opinion testimony by a lay witness or unsupported and improper expert opinion. A witness cannot simply state conclusions without any explanation regarding her knowledge of the topic or any evidentiary basis. Fed. R. Evid. 602; *see also Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028 (9th Cir. 2001) ("It is not enough for a witness to tell all she knows; she must know all she tells.").

Further, Ms. Frye's statement opining on what constitutes a suitable learning environment appears to be in the nature of expert testimony, and therefore has improperly been brought before this Court as there is no foundation presented as to attorney Frye's expertise in the field of education. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993); *Sepulveda v. Walmart Stores, Inc.*, 237 F.R.D. 229, 235 (C.D. Cal. May 5, 2006).

In sum, large segments of the Frye Declaration fail to conform to the Local Rules and the Federal Rules rendering them inadmissible statements that should be excluded from the record.

## C. The Declaration of Marsha Rae Griffin, M.D. Should be Excluded as an Improper Lay Witness Evidence.

This Court should likewise exclude Dr. Griffin's declaration in its entirety because Dr. Griffin's declaration hinges on inadmissible hearsay and facts about other unrelated federal-agency facilities, and fails to lay any foundation under Rule 702 to permit her reliance on or discussion of such inadmissible evidence. Consequently, her declaration is replete filled with improper lay-witness opinions, and is an inappropriate tool for this Court to use as the factfinder in this case.

### 1. This Court should exclude Dr. Griffin's conclusions as improper lay-witness testimony because she has no personal knowledge of the conditions at Homestead.

Dr. Griffin's declaration is proffered based upon her "personal knowledge." See Pls.' Ex. 6. Her reliance on hearsay and other inadmissible evidence is impermissible because she is a lay witness and her declaration must be based on her personal knowledge. Fed. R. Evid. 701. Dr. Griffin builds the foundation of her entire declaration, however, upon on her observations at facilities other than Homestead, and on hearsay from unidentified children and physicians. For example, Dr. Griffin refers to statements by "some children" who were placed at the Tornillo facility in Texas about their release status. ECF 547-3 at 77, ¶ 8. She also refers to

statements by an unnamed pediatrician (*id.* at 76, ¶ 6), statements by an unknown child made to an unnamed counselor (*id.* at 77, ¶ 7), statements by an unknown sixteen-year-old (*id.* at 77, ¶ 9), statements by the Director of the Tornillo facility (*id.* at 78 ¶ 10), and statements by an unknown child at Tornillo (*id.* at 80, ¶ 15). Because Dr. Griffin has not been proffered as an expert, she cannot rely on hearsay to form the basis of her declaration; she must have personal knowledge that is rationally based on her perception—not based on her expertise as a pediatrician. Fed R. Evid. 701; L.R. 7-7. Thus, her declaration is improper as it relies almost exclusively on inadmissible evidence.

It is also clear that Dr. Griffin relies so heavily on hearsay and her experience at other facilities because she has no personal knowledge about the conditions at Homestead, the subject of Plaintiffs' Motion. In fact, it is unclear from her declaration whether Dr. Griffin has ever been to the Homestead facility to personally observe the conditions there or to speak to the UAC or staff at the facility. She mentions that she has attended *Flores* visits at a number of sites—even non-ORR sites such as CBP facilities and Adult Detention Centers—but she does not mention any visits to Homestead. *See* ECF 547-3 at 75, ¶ 2. She likewise does not state that she has any personal knowledge about ORR procedures for sponsors; in fact, she does not mention the sponsorship process at all in her declaration. *See id.* at 75–81. Because Dr. Griffin's declaration is based solely on hearsay and her opinions as a pediatrician, rather than her personal knowledge of the conditions at Homestead or the sponsorship procedures, Dr. Griffin's declaration is improper lay-witness evidence. Fed. R. Evid. 702; L.R. 7-7. As such, this Court should exclude her declaration.

2.   *Dr. Griffin has not laid the foundation to give an expert opinion as to whether Defendants are complying with the Flores Agreement.*

Because Dr. Griffin's declaration does not lay any foundation as to her qualifications as an expert, Plaintiffs further cannot offer her declaration as expert testimony to circumvent her continued reliance upon inadmissible evidence. The proponent of expert testimony has the burden of proving the admissibility of the testimony under Rule 702. *Lust By and Through Lust v. Merrell Dow Pharmaceuticals, Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). District court judges are the gatekeepers of admitting expert testimony and must ensure that the proffered testimony is both reliable and relevant. *Jinro America Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1005 (9th Cir. 2001). Because of the "assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline," the Federal Rules of Evidence grant experts wide latitude to offer opinions that are not based on firsthand knowledge or experience—unlike lay witnesses. *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 148 (1999). Reliance on anecdotal information and subjective beliefs cannot properly form the basis of expert opinions. *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012) ("Red flags that caution against certifying an expert include reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity."); *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1250 (11th Cir. 2005); *MLC Intellectual Prop., LLC v. Micron Technology, Inc.*, No. 14-cv-03657, 2019 WL 2716512, at *11 (N.D. Cal June 28, 2019). Such red flags exist here.

Here, assuming arguendo, that Plaintiffs were to proffer Dr. Griffin's statement as expert opinion, Dr. Griffin's declaration fails to meet the expert opinion standards set forth in Rule 702 and related legal doctrine. Specifically, Dr. Griffin fails to use sufficient facts and data in coming to her conclusions, and further fails

to apply reliable methods and principals to her conclusions. Dr. Griffin's opinions are largely based on limited anecdotal information drawn from her personal experiences talking to minors in facilities other than Homestead and hearsay from advocates. ECF 547-3 at 76, ¶¶ 6–10; 14–17. In fact, nowhere in Dr. Griffin's declaration does Dr. Griffin state that she is basing her opinions on her expertise, or that she applied reliable methods and principals in forming her conclusions about the conditions at Homestead. *See id.* at 75  ¶¶ 1–18. Nowhere does she describe her methods, explain why they are reliable, explain whether they can be replicated, or make any effort to ground any of her opinions or work in this matter on peer-reviewed principles or methods. Instead, Dr. Griffin states, in the first line of her declaration, that she makes the declaration "based on [her] personal knowledge." *Id.* at ¶ 1. Then, throughout the declaration, she refers to statements made by unidentified children and physicians, reported at an unspecified time, about the conditions at facilities other than Homestead. *See, e.g.*, *id.* at 77, ¶ 9 (referring to a statement made by a "sixteen-year-old girl," but failing to identify which facility she was at, what her relationship to Dr. Griffin was, whether the girl made the statement to Dr. Griffin or to someone else, or when the girl made the statement); *id. at* 80 at ¶ 15 (statement made by unidentified child at the Tornillo facility made at some point within the last "ten years"). Such anecdotal references cannot form the basis of an expert opinion about the conditions at the Homestead facility even if Dr. Griffin were to be properly proffered as an expert, which she was not. Fed. R. Evid. 702(b)–(d); *Newell Rubbermaid, Inc v Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012). Because Dr. Griffin's declaration is based on her "personal knowledge" rather than her expertise, and because her findings are unreliable given her reliance on anecdotal evidence and her subjectivity, Plaintiffs cannot lay the proper foundation to admit her declaration as an expert opinion under Rule 702.

11

Dr. Griffin's declaration further fails to qualify under Rule 702 because her opinion that the government is causing "irrevocable mental and physical harm to every child held in immigration detention" is not helpful in determining the issues in this case. ECF 547-3 at 81, ¶ 18. When an expert's testimony does not have a proper nexus to any issue in the case, it is not relevant and, therefore, not helpful. *Daubert*, 509 U.S. at 591. Here, the issue in Plaintiffs' Motion is not whether congregate care of children while ORR conducts the necessary processes to ensure an expeditious and safe release may negatively affect a child's mental and physical health; this Court already determined that ORR does not violate the *Flores* Agreement when it determines suitability of potential sponsors, even at the risk of potential additional congregate care. *Flores v. Sessions*, No. 85-4544 DMG (C.D.Cal. Jul.30, 2018) at 25-26. Rather, Plaintiffs challenge Defendants' compliance with the Agreement because of the alleged conditions at the Homestead facility, and because of their complaints about ORR's process for release or transfer of minors from the facility. Dr. Griffin's declaration, which relies on the hearsay of minors residing in facilities *other than* Homestead, does not address either of these issues; instead, it hangs its hat on the conclusion that ORR custody of child migrants is not (and indeed she appears to argue is never) in a child's best interest, which is not at issue in this Motion. Accordingly, Dr. Griffin's declaration is not relevant to whether Homestead is compliant with the Agreement, and would not assist the court in understanding the evidence or determining a fact at issue.

Because Plaintiffs fail to lay a foundation for Dr. Griffin's expertise or the reliability of her conclusions, and because Dr. Griffin's opinions about children's well-being in government custody is not helpful in determining this Motion, Dr. Griffin is a lay witness. Accordingly, Dr. Griffin's declaration is subject to the rules of evidence governing lay-witness testimony. Her declaration therefore should be excluded in its entirety.

**D.      The Declaration of Ryan Matlow, Ph.D. Should be Excluded as Improper Lay Witness Evidence.**

Like Dr. Griffin's improper lay-witness declaration, Dr. Matlow relies extensively on inadmissible hearsay, and fails to lay the proper foundation to give an expert opinion in order to justify such reliance. Because his declaration does not comply with L.R. 7-7 given its extensive reliance on inadmissible evidence, this Court should exclude his declaration. Plaintiffs cannot proffer this declaration based on Dr. Matlow's personal experience that–in its entirety–improperly includes expert opinion testimony. Admitting this improper testimony, whether through a declaration or live testimony, would allow Plaintiffs to offer an expert in "lay witness clothing" and thus evade the evidentiary requirements for expert witnesses. *See* Fed.R.Evid. 701 Advisory Committee Notes (2000 Amendment)

1.      *Dr. Matlow's conclusions are improper lay-witness testimony because he relies on hearsay rather than personal knowledge.*

Like Dr. Griffin, Dr. Matlow's reliance on hearsay is impermissible because he is providing a lay-witness declaration and must make the declaration based on his personal knowledge. Large portions of Dr. Matlow's declaration are based on hearsay from unidentified children and ORR employees. *See, e.g.*, *id.* at 94 ("Children reported they must move in groups…Children at Homestead report taking a shower longer than 5 minutes is a violation of the rules…children report that the food is terrible…" etc.). Because Dr. Matlow is not an expert, he cannot rely on hearsay to form the basis of his declaration; he must have personal knowledge rationally based on his perception—not based on his expertise as a psychologist. Fed

R. Evid. 701; L.R. 7-7. Thus, this Court should exclude all references to inadmissible hearsay that Dr. Matlow makes in his declaration.

> 2. *Dr. Matlow's declaration does not qualify as an expert opinion because it is not reliable.*

Dr. Matlow's declaration also cannot be saved by construing this lay witness testimony as expert witness testimony. Like Dr. Griffin, Dr. Matlow appears to base his declaration on his "personal knowledge" rather than his expertise, which lays the foundation for lay-witness testimony. *See* ECF 547-3 at 92 ("I, Ryan Matlow, declare that the follow [*sic*.] is based on my personal experience…"). Although he lists his accolades and qualifications as a psychologist, he never states that his declaration is based on his expertise, or that he used any reliable methods or principals in arriving at his opinions in this case, as required under Rule 702. . For example, Dr. Matlow's declaration references several unidentified studies as a basis of his expert conclusions.  See ECF 547-7, at 99. He not only failed to identify the specific studies, but he also fails to explain how those studies relate to, or support, his opinions.  He also fails to describe his methodology; fails to disclose all of his prior testimony; fails to mention any error rate associated with his methodology; and fails to assert, let alone show, that his work is replicable, reliable, or grounded in peer-reviewed principles.

Dr. Matlow's failure to state the methods and principals that he applied to the interviews he conducted in this case is fatal to establishing the reliability of his findings. The absence of reliable principals and methods is especially problematic here, where a particular problem could have more than one cause. *E.g.*, *Reinsdorf v. Sketchers U.S.A.*, 922 F. Supp. 2d 866, 879–80 (C.D. Cal. 2013) (excluding expert testimony for failure to identify a non-speculative causal link). For example, Dr. Matlow states that he met with a 15-year-old indigenous Guatemalan boy who demonstrated anxiety about his father's well-being. ECF 547-3 at 96. Dr. Matlow concluded that his symptoms started after his separation and detention. *Id.* It is

unlikely, however, that Dr. Matlow met with this particular child in Guatemala before he was in ORR custody (it is unclear whether this child was at Homestead or a different facility). Dr. Matlow does not explain how he was able to reliably determine that this child did not exhibit symptoms of anxiety before coming to the United States. Dr. Matlow's report does not rule out these possibilities—or even discuss them—and he does not state what reliable methods he used to pinpoint the cause of this child's anxiety. Such failure to consider other possible causes is a "red flag" against certifying an expert. *Newell Rubbermaid, Inc.*, 676 F.3d at 527; *accord Reinsdorf*, 922 F. Supp. 2d at 880.

Further, Dr. Matlow's use of vague terms, such as "children reported," without specifying how many children reported these incidents or how many children he interviewed altogether, is unreliable. *See, e.g.*, ECF 547-3 at 94. A "vague reference" to an "unidentified" source is not enough to show that an expert's opinion is based on "sufficient facts or data." *Ryoo Dental, Inc. v. Thomas D. Han DMD*, No. 15-308, 2016 WL 6138413, at *5 (C.D. Cal. Apr. 25, 2016). For instance, based on Dr. Matlow's vague statement that "children" reported the food was terrible and they always eat the same thing, it is not possible to ascertain how many children had this experience or out of how many.  Such important details are unknown because Dr. Matlow does not disclose the underlying facts and data that he relies upon. Also, in some contexts, it is unclear whether Dr. Matlow is referring to children at Homestead, or children in ORR custody in general, which makes it difficult to assess the conditions at Homestead—the facility at issue in this case. *See, e.g.*, *id.* at 96 ("Children reported being bullied and harassed by their peers…"). This vague, anecdotal evidence cannot establish the reliability of Dr. Matlow's conclusions. *Newell Rubbermaid,* 676 F.3d at 527; *Ryoo Dental*, 2016 WL 6138413, at *5.

Additionally, Dr. Matlow makes several assertions without stating the facts or underlying data that allowed him to make that conclusion. For example, Dr. Matlow opines that children who spoke the same indigenous language were "intentionally separated from each other." ECF 547-3 at 93. He does not explain, however, how he knew that the separation was "intentional," nor does he explain whether he made any efforts to learn anything more about such separations beyond relying on a limited number of hearsay statements. *Id.* Dr. Matlow also asserts that children are "frequently threatened both directly and indirectly," and that not complying with the shelter's rules will affect their immigration status. *Id.* at 95. But, again, he does not state from what facts or data he received this information, nor does he describe any efforts to determine any facts surrounding these assertions. *Id.* Dr. Matlow's failure to identify his sources, and his failure to conduct even minimal inquiry before making these generalized assertions, cuts against his reliability. *Ryoo Dental*, 2016 WL 6138413, at *5.

Lastly, this Court should, at the very least, exclude Dr. Matlow's observations of facilities other than Homestead as the bases for his opinions because the situations that he encountered at other facilities are irrelevant to the conditions at Homestead. Rule 403 of the Federal Rules of Evidence permits this Court to exclude evidence if its probative value is substantially outweighed by its unfair prejudicial effect. Fed. R. Evid. 403. Rule 403 is especially crucial in determining the admissibility of expert testimony because of its potential power and ability to mislead. *Daubert*, 509 U.S. at 595. Here, Dr. Matlow's reference to conditions at facilities other than Homestead give little, if any, probative value to determining conditions at Homestead, and are extremely prejudicial because he relies solely on allegations of inadequate conditions that he asserts were provided at these other facilities, without any context for these assertions. *See* ECF 547-3 at 97 ("Children at Casa Padre had grossly inadequate healthcare and little meaningful access to mental health resources…At

Tornillo, there was no mental health care."). Accordingly, the Court should exclude all references to other facilities because their unfair prejudicial effect substantially outweighs any probative value that they have.

Dr. Matlow's declaration also fails as an expert opinion because his conclusions focus on the overall detriments of congregate care rather than whether Defendants are complying with the conditions or processes required by the Agreement. Instead, the issue here is whether Homestead—not Tornillo or Casa Padre—complies with the Agreement. Dr. Matlow's opinion that the "institutionalized setting of childcare detention" (*id.* at 99) is not in the best interest of child migrants does not help the court determine whether Homestead complies with the Agreement. Dr. Matlow's conclusions simply do not isolate and analyze the conditions at Homestead, nor do they consider whether the Homestead conditions cause additional risks to children apart from the risks that they experience as child migrants in congregate care. Accordingly, Dr. Matlow's opinion is not helpful in determining the issues in this Motion, and is therefore improper expert opinion under Rule 702.

Because Plaintiffs lay no foundation as to the reliability of Dr. Matlow's conclusions, and because his opinions about children's well-being in congregate care is not helpful in determining ORR's compliance with the Agreement, Dr. Matlow is not an expert witness. Accordingly, his declaration is subject to the rules of evidence governing lay-witness testimony and should be excluded.

> ### E.   Dr. Wang's cover letter and the attached "Program Report" are not declarations and should be excluded

Defendants move to exclude Plaintiffs' cover letter and attached report, "the 2018 Individual Program Report: Homestead" (Program Report), from Dr. N. Ewen Wang (Dr. Wang), pursuant to Local Rules 7-6 and 7-7 and Rule 702. ECF No. 547-3, Ex. 5. Plaintiffs' cover letter from Dr. Wang, submitted in support of their Motion,

is not a declaration as is defined by L.R. 7-6 and 7-7, which require that factual contentions in support of a motion be made upon a declaration—not a cover letter—that complies with Rule 56(c)(4). Even if Plaintiffs had properly submitted a declaration, the document filed neither qualified Dr. Wang as an expert nor provided any evidence of the reliability of the methodology Dr. Wang employed in forming her opinion and reports. Finally, Dr. Wang's cover letter and reports provide little to no expert opinion, but rather summary opinion based on Dr. Wang's review of government database information that is not relevant to Dr. Wang's stated expertise.

First, as a threshold matter, Defendants move to exclude the cover letter and Program Report in its entirety because it appears that it was not sworn to or notarized under oath (Fed. R. Evid. 803), and it does not substantially comply with 28 U.S.C. § 1746 (authorizing unsworn declarations under penalty of perjury under certain conditions). Local Rule 7-6 states that "[f]actual contentions involved in any motion . . . shall be presented . . . *upon declarations* and other written evidence." To be admissible, an unsworn declaration requires a statement by the declarant substantially similar to the following: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). [¶] (Signature)." *Howard v. AMCO Ins. Co.*, No. SACV0800175DMGMLGX, 2010 WL 11595719, at *2–3 (C.D. Cal. Oct. 19, 2010) (Gee, J.) (quoting 28 U.S.C. § 1746). The cover letter is not admissible under 28 U.S.C. § 1746, because the declarant does not declare that what she has stated in the cover letter or the attached Program Report is true.

While Dr. Wang signed the cover letter, she did not do so under penalty of perjury as is required under 28 U.S.C. § 1746. *See* ECF No. 547-3, Ex. 5 at 62. It is well established that unauthenticated documents cannot be considered on a motion. *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987). To be considered by the court, "documents must be authenticated by and attached to an

affidavit . . . and the affiant must be a person through whom the exhibits could be admitted into evidence." *Id.* (internal quotation marks omitted). Thus, Dr. Wang's cover letter and Program Report are unauthenticated and, on that basis alone, the Court should exclude Plaintiffs' submission from Dr. Wang.

Assuming Dr. Wang's cover letter and Program Report had been filed in compliance with  the Local Rules and the Federal Rules, these documents fail to meet the expert opinion standard of Rule 702 and the related legal document outlined above.  As previously explained, in deciding the admissibility of expert testimony, courts have a "gatekeeping obligation" to ensure expert testimony is reliable. *Kumho Tire Co., Ltd,* 526 U.S. at 141 (internal quotation marks omitted).

Dr. Wang's cover letter fails to satisfy any of the *Daubert* factors or the elements of Rule 702. First, Plaintiffs have not properly qualified her as an expert. Plaintiffs did not submit a curriculum vitae or any other independent evidence of Dr. Wang's experience and skills. *See* ECF No. 547-3, Ex. 5. All that has been provided concerning Dr. Wang's qualifications is a short statement in her cover letter indicating that she is a Professor in Emergency Medicine and Pediatrics. *Id.* She further provides that her "scholarly expertise is in health services research with a focus on Social Emergency Medicine." *Id.* Such conclusory statements concerning Dr. Wang's experience are insufficient to qualify her as an expert pursuant to Rule 702.

Second, Dr. Wang's cover letter does not provide evidence of the reliability of the methodology Dr. Wang employed—let alone any methodology at all—in creating the Program report. *See* ECF No. 547-3, Ex. 5. In fact, Dr. Wang provides no foundation for the statements in her cover letter or in her report. Instead, in her cover letter summarizing her findings that she believes are required by the

Settlement Agreement, Dr. Wang claims paragraph 18 requires "quantifiable data"[3] and she further states that "occasional visual inspections" are not an effective means of assessing compliance with the Settlement Agreement. *Id*. Dr. Wang also makes vague reference to a "data infrastructure" created by her team "that is able to assist in dynamic and effective monitoring of compliance with the terms of the Settlement." *Id.* She does not indicate what measure she uses in the first place to determine what compliance with the terms of the Agreement requires. She also does not indicate whether this "data infrastructure" can be tested or whether it has been subject to peer review—the cover letter fails entirely to explain or define this "data infrastructure." *See Messick v. Novartis Pharmaceuticals Corp.*, 747 F.3d 1193, 1197 (9th Cir 2014). Nor does she indicate whether the methodology she employed to prepare her reports has been tested or has a known rate of error. *Id.* These statements in Dr. Wang's cover letter do not satisfy the requirements of Rule 702 that an expert demonstrate that she applied a reliable methodology in forming her opinions and reports. Further damaging the reliability of her cover letter and Program Report is Dr. Wang's conclusion that the government data that she relied on in making her report has "crucial data quality and validation issues." *Id.* Plaintiffs cannot claim to present reliable expert reports from Dr. Wang based on government data and at the same time submit a cover letter from Dr. Wang that concludes the same government data upon which her reports are based is insufficient and unreliable.

Finally, Plaintiffs have not demonstrated how Dr. Wang's expertise is relevant to the *Flores* Settlement Agreement. Specifically, Dr. Wang claims to have expertise in emergency medicine and not as a statistician or data analyst. She does not provide

---

[3] Presumably she is referencing Paragraph 18 of the Agreement, which requires Defendants to "make and record the prompt and continuous efforts on its part toward family reunification and the release of the minor . . . ." However, she provides no basis whatsoever for her opinion as to the requirements of the Agreement, and nothing in her background suggests that she is qualified to provide a legal opinion as to what the Agreement requires of Defendants.

any foundation at all for how her expertise in emergency medicine is applicable to the Program Report and the summaries contained therein.  Thus, the Court should exclude Plaintiffs' Dr. Wang's cover letter and Program Report.

## IV.  <u>REQUEST FOR EVIDENTIARY HEARING BEFORE THE SPECIAL MASTER</u>

HHS moves under Rule 43(c), for an order requiring the Special Master to hold an evidentiary hearing with regard to Plaintiffs' May 31, 2019, Enforcement Motion. The Special Master may do so in accordance with Federal Rule 53(c)(1)(C) of the Federal Rules of Civil Procedure. *See* ECF 553, para. 6. That hearing should be held in accordance with the Federal Rules of Evidence, as well as Local Rule 43-1, so that even if witnesses are permitted to present their direct testimony through declarations, they are required to appear at the evidentiary hearing and adopt those declarations, and be subject to cross-examination. *See* L.R. 43-1 ("In any matter tried to the Court, the judge may order that the direct testimony of a witness be presented by written narrative statement subject to the witness' cross-examination at the trial. Such written, direct testimony shall be adopted by the witness orally in open court, unless such requirement is waived.").

First, an evidentiary hearing is required because Plaintiffs' Motion seeking to enforce the 1997 Flores Agreement is of national significance. Its resolution could affect the operations of ORR and specifically could affect ORR's ability to fulfill its Congressionally-mandated mission of housing UACs, even when there is an unprecedented influx across the southwest border. Because of the importance of the matters at issue, the Special Master should not make findings of fact with regard to Plaintiffs' Motion without first holding a full evidentiary hearing under Rule 43(c). At that hearing, Plaintiffs would bear the burden to show that Defendants violated the Agreement. *See Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co., Inc.*, 520 F.

Supp. 2d 1184, 1194 (C.D. Cal. 2007) ("Plaintiff has the burden at trial of proving all elements of its breach of contract claim.").

Second, an evidentiary hearing is required because Plaintiffs' Motion relies on more than 81 declarations of various individuals. Defendants have submitted a responsive declaration, as well as evidence that undermines the credibility of several of Plaintiffs' declarants. As a result, there exist many genuine disputes of material fact that are based on conflicting evidence and on declarations which are, by definition, hearsay statements. Such disputes cannot be resolved without determining issues of authenticity, accuracy, reliability, and the Special Master's assessment of each witness's credibility. While Rule 43(c) gives discretion to the Court—and therefore to the Special Master—whether to take oral testimony in deciding motions pending before it, in cases such as this one, hearing oral testimony is the only way for the Court to fairly resolve these factual issues. *See United Commercial Ins. Serv.*, 962 F.2d at 858 ("Where factual questions not readily ascertainable from the declarations of witnesses or questions of credibility predominate, the district court should hear oral testimony."); *see also* 8 James W. Moore, Moore's Federal Practice—Civil § 43.05[2] (3d ed. 2012) ("A district court has considerable discretion to decide Rule 43(c) motions solely on the basis of affidavits or to take oral testimony at a hearing, but when questions of fact or credibility predominate, the district court should hear oral testimony; a failure to do so is likely to be considered an abuse of discretion."); Arthur R. Miller, Federal Practice and Procedure, 9A Fed. Prac. & Proc. Civ. § 2416 (3d ed.) ("However, when questions of fact or credibility predominate, a district court's decision not to hear oral testimony often is found to be an abuse of discretion; courts often cite to Rule 43 to support this inherent proposition."); *Hubbard v. Houghland*, 471 Fed. Appx. 625 (9th Cir. 2012) ("[T]he district court, without holding an evidentiary hearing, determined that Hubbard's statement was not credible. In making this credibility

determination without holding an evidentiary hearing, the district court abused its discretion.").

Third, the need for an evidentiary hearing is particularly strong where, as here, the declarations submitted by Plaintiffs are replete with inadmissible double hearsay statements and indicia of unreliability. As noted elsewhere in this Motion, some of the declarations are so faulty as to warrant being excluded from the record.[4] But even if the Court does not exclude those declarations, the Special Master should hold a hearing to assess for herself the reliability of the witnesses who provided the statements contained therein, and at that hearing she should apply the Federal Rules of Evidence to exclude from consideration statements that do not constitute admissible evidence, or that constitute improper expert testimony without establishing the witness' qualifications as an expert.[5] Likewise, for the remainder of the declarations for which Defendants have submitted evidence that show that the statements contained therein are unreliable, or at least disputed, the Special Master should hold an evidentiary hearing so that she can weigh the credibility of those

---

[4]   In addition to the four declarations the subject of Defendants' motion to exclude, many of Plaintiffs' class member declarations are facially problematic. Specifically, Plaintiffs' Declarations raise issues regarding how they were taken. For example, Pls' Ex. 12 states that the minor spoke Qu'iche, but then that he declared, under penalty of perjury, that a declaration read back to him in Spanish was true and correct. Plaintiffs present a similar declaration at Exhibit 40, ¶3 ("I did not understand Spanish" and at the end, "This declaration was provided in Spanish, a language in which I am fluent, and was read back to me in Spanish."). A number of declarations appear to be duplicates. *See* Pls.' Exh. 25 and 42; 36 and 53, and 16 and 51. Other declarations appear to have signatures crossed out. *See* Pl's Ex. 46, 55, 56, 60, 70, 82 (also noting that declarant speaks little Spanish, but declaration read back to her in Spanish, a language she states she understands). Some of Plaintiffs' declarations are stale as they were taken over a year ago. These declarations are not relevant to the current release policies at Homestead.  A group of such declarations (Plaintiffs' Exhibits 11-34) were obtained more than a year ago, on July 31, 2018 or August 1, 2018.  One declaration proffered by Plaintiffs has the declarant's signature crossed out on the declaration.  Pls. Exh. 55, [H.M.A.L] (signature crossed out on declaration).
[5]  Defendants request that any live testimony proffered by Hope M. Frye, Marsha Rae Griffin, MD, Ryan Matlow, PH.D., or N. Ewen Wang, MD, be limited based on Defendants' objections as outlined in their motion to exclude.

witnesses before determining the reliability of the statements made in those declarations against the evidence submitted by Defendants.

Finally, it is imperative that the Court make clear that any evidentiary hearing on this Motion should be held in accordance with the Federal Rules of Evidence, and Local Rule 43-1. The Federal Rules of Evidence exist, explicitly, "to the end of ascertaining the truth and securing a just determination." Fed. R. Evid. 102. Thus, there is good reason to apply the Federal Rules of Evidence at the hearing on this Motion, as well as the Local Rules governing the admissibility of testimony through declarations. See Fed. R. Evid. 1101(a); L.R. 43-1. Doing so will ensure that these factual issues are fully litigated, and give the Special Master and the Court the best opportunity to fairly resolve any factual disputes in this case.

With limited exceptions, the Federal Rules of Evidence specifically exclude the consideration of hearsay evidence. See Fed. R. Evid. 802. Thus, in accordance with that Rule, Plaintiffs' witnesses should be required to present their testimony to the Special Master on the record, and in a manner that allows them to be subject to cross-examination by Defendants. While the Ninth Circuit has approved the practice of allowing direct testimony through written declarations, that approval was specifically premised on the notion that the witness who provided the declaration would be made available for cross-examination. *See In re Adair*, 965 F.2d. 777, 779 (9th Cir. 1992) (approving a procedure by which "the parties submit written narrative testimony of each witness they expect to call for purposes of direct evidence,: and "[t]he witness then testifies orally on cross-examination and on redirect"); *see also Sanders v. Ayers*, 2008 WL 4224554, at *2 (E.D. Cal. Sept. 12, 2008) (setting procedures for an evidentiary hearing at which direct testimony would be presented by written declaration and requiring that any witnesses whose testimony the parties intended to offer into evidence must be present at the hearing for cross-examination); *Kuntz v. Sea Eagle Diving Adventures Corp.*, 199 F.R.D.

665, 666 (D. Haw. 2001) (discussing permissibility of procedures requiring submission of written testimony on direct in lieu of oral testimony where, "[u]nless otherwise agreed, witnesses must then be made available for live cross-examination and for live redirect examination."). The Local Rules of the Central District of California likewise make clear that while direct testimony in a non-jury proceeding may be heard by written, as opposed to oral, testimony, the acceptance of such written testimony is premised on the witness's adopting the written testimony in open court, thus making that witness available in court for live cross-examination. *See* L.R. 43-1 ("In any matter tried to the Court, the judge may order that the direct testimony of a witness be presented by written narrative statement subject to the witness' cross-examination at the trial. Such written, direct testimony shall be adopted by the witness orally in open court, unless such requirement is waived."). Thus, at any evidentiary hearing, if Plaintiffs wish to present the testimony of a witness using his or her declaration, then Plaintiffs should be required to present that witness at the hearing, and the witness should adopt his or her testimony and be subject to cross-examination.

## V.   **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court exclude from evidence portions the Frye, and the entirety of the Griffin and Matlow declarations. Defendants also ask that the documents submitted by Dr. Wang be excluded in their entirety.  Further, Defendants ask the Court to require that any testimony by their witnesses on which the parties wish the Court to rely in deciding Plaintiffs' Motion must be presented through oral testimony at an evidentiary hearing before the Special Master.

DATED:      August 2, 2019          Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

AUGUST E. FLENTJE
Special Counsel to the Assistant Attorney
General

WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation

WILLIAM C. SILVIS
Assistant Director, District Court Section
Office of Immigration Litigation

*/s/ Sarah B. Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-4824
Fax: (202) 305-7000
Email: sarah.b.fabian@usdoj.gov

*Attorneys for Defendants*

26

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 2, 2019, I served the foregoing pleading on all

counsel of record by means of the District Clerk's CM/ECF electronic filing system.


/s/ *Sarah B. Fabian*
SARAH B. FABIAN
U.S. Department of Justice
District Court Section
Office of Immigration Litigation

Attorney for Defendants