CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Peter A. Schey (Cal. Bar No. 58232)
Carlos Holguín (Cal. Bar No. 90754)
Laura N. Diamond (Cal. Bar. No. 185062)
Rachel Leach (D.C. Bar No. 1047683)
256 South Occidental Boulevard
Los Angeles, CA  90057
Telephone: (213) 388-8693
Facsimile: (213) 386-9484
Email:pschey@centerforhumanrights.org
        crholguin@centerforhumanrights.org
        ldiamond@centerforhumanrights.org
        rleach@centerforhumanrights.org

*Attorneys for Plaintiffs*
*Listing continues on next page*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| Jenny Lisette Flores., *et al.*,<br><br>                Plaintiffs,<br><br>        v.<br><br>William Barr, Attorney General of the United States, *et al*.,<br><br>                Defendants. | Case No. CV 85-4544-DMG-AGRx<br><br>**PLAINTIFFS' PARTIAL OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE EVIDENCE AND FOR AN EVIDENTIARY HEARING**<br><br>**[HON. DOLLY M. GEE]** |

1

*Plaintiffs' counsel continued:*

2

3   USF SCHOOL OF LAW IMMIGRATION CLINIC
    Bill Ong Hing (Cal. Bar No. 61513)
4   2130 Fulton Street
5   San Francisco, CA 94117-1080
    Telephone: (415) 422-4475
6   Email: bhing@usfca.edu

7

8   LA RAZA CENTRO LEGAL, INC.
    Stephen Rosenbaum (Cal. Bar No. 98634)
9   474 Valencia Street, Suite 295
10  San Francisco, CA 94103
    Telephone: (510) 387-3956
11  Email: srosenbaum@law.berkley.edu

12

13

14

15  / / /

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................... 1

II.   ARGUMENT ……………………………………………….....    2

      A.   The Declaration of Hope Frye is based on personal knowledge and her
           statements are either not hearsay or fall within a hearsay exception. ........... 2

      B.   The Declaration of Marsha Rae Griffin, M.D. is admissible as expert
           opinion on the effects of detention on children ............................................ 7

      C.   The Declaration of Ryan Matlow, Ph.D. is admissible expert opinion on the
           effects of detention on children ................................................... 10

      D.   Dr. Ewen Nancy Wang's Report is admissible expert opinion, is based on
           data provided by Defendants and utilizes a reliable methodology ............. 12

      E.   An Evidentiary Hearing is not necessary to adjudicate the pending Motion
           to Enforce challenging Defendants' acknowledged policies. ..................... 17

III.  CONCLUSION ........................................................................... 19

/ / /

# TABLE OF AUTHORITIES

**Cases**

*Dukes v. Wal-Mart, Inc.*, F.R.D. 189 (C.D. Cal 2004) ............................................. 11

*Hangarter v. Provident Life & Accidents Ins. Co.*, 373 F.3d 998 (9th Cir. 2004) ... 11

*Kumbo Tire v. Carmicahel,* 526 U.S. 137 (1999).................................................... 11

*Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023 (C.D. Cal. 2013) .. 2

*United States v. Jawara*, 462 F.3d 1173 (9th Cir. 2006) ......................................... 12

*United States v. Xunmei Li*, 2013 U.S. Dist. LEXIS 170335 (Arizona District Court
Dec. 3, 2013) ...................................................................................................... 9

**Statutes**

Fed. R. Evid. § 602 ................................................................................................. 3

Fed. R. Evid. § 701 ............................................................................................. 5, 7

Fed. R. Evid. § 801(d)(2)..................................................................................... 4, 8

Fed. R. Evid. § 803(1) ......................................................................................... 5, 8

Fed. R. Evid § 807 ................................................................................................. 4

**Other Authorities**

Rules of Professional Conduct 8.4(c) ..................................................................... 4

/ / /

1

2   **PLAINTIFFS' PARTIAL OPPOSITION TO DEFENDANTS' MOTION TO**
3   **EXCLUDE EVIDENCE AND FOR AN EVIDENTIARY HEARING**

4   I.   **INTRODUCTION**

5      On June 28, 2019, Plaintiffs filed a Motion to Enforce the Settlement

6   ("Motion") regarding the detention of class members at Homestead
7
8   ("Homestead"). [Doc. # 578]. In support of the Motion, Plaintiffs filed redacted

9   exhibits, including the Declarations of Hope Frye, Dr. Ryan Matlow, and Dr.
10
11   Marsha Griffin, and report of Dr. Nancy Wang. [Doc. # 578-1].

12      On June 10, 2019, this Court referred the Motion to the Special Monitor

13   ("Monitor") for a Report and Recommendation pursuant to Paragraph A.2 of the
14
15   Appointment Order [Doc. ## 553]. On August 2, 2019, Defendants' filed their

16   Response in Opposition ("Opposition") to the Motion [Doc. # 609], and a Motion

17   to Exclude Plaintiffs' Declarations and Request for an Evidentiary Hearing Before
18
19   the Special Master ("Motion to Exclude"). [Doc. # 612]. On August 6, 2019, the

20   Court referred the Motion to Exclude to the Monitor. [Doc. # 616]. Plaintiffs file

21   this Partial Opposition to the Motion to Exclude, addressing each of the four
22
23   declarations Defendants seek to exclude from consideration, and Defendants'

24   request for an evidentiary hearing.

25      As Plaintiffs explain in the concurrently filed Plaintiffs' Reply to Defendants'
26
27   Opposition to Motion to Enforce ("Reply") [Doc. # 629] , the factual disputes raised

28   by Defendants are inconsequential to adjudication of the Motion. Reply at 2

- 1 -

There are no material factual disputes with regards Defendants' written policies that undeniably result in (i) denials and delays in class members being promptly released to sponsors under Paragraph 14 of the Settlement, (ii) the majority of class members (those with potential sponsors) not being expeditiously or slowly transferred to available and appropriate licensed placements under Paragraphs 12A and 19, and (iii) class members not having adequate telephonic contact with parents or other sponsors under Exhibit 1 Paragraph 11 of the Settlement.

II.   ARGUMENT

A.   The Declaration of Hope Frye is based on personal knowledge and her statements are either not hearsay or fall within a hearsay exception.

Defendants move to exclude testimony in the Declaration of Hope M. Frye (Frye Declaration) filed in support of Plaintiffs' Motion to Enforce. [Doc. #578-1]-1, at 16-21 (Pls.' Ex. 2).

Defendants do not identify any particular statement in the Frye Declaration they claim "lacks foundation, is not based on personal knowledge, [or] calls for speculation." This is the same boilerplate objection this Court previously rejected and should reject again.[1]

---

[1] *See* Court Order June 27, 2017 at 6 [Doc. # 363] ("The Court will not parse through each declaration…and try to determine which statements Defendants believe…lack foundation, and then decide…if a proper foundation has been laid. *See, e.g., Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1033 (C.D. Cal. 2013) ('…the Court will not scrutinize each objection and give a full analysis of identical objections raised as to each fact.')….The Court therefore OVERRULES Defendants' myriad blanket…foundation objections.").

Ms. Frye's Declaration is based on her personal observations: "Between March 25-28, I led a *Flores* visit to an ORR facility for unaccompanied children located on the Homestead Job Corps facility site, adjacent to the Homestead Air Base in Homestead, Florida ("Homestead"). Frye Decl. ¶ 3. "L.W....HHS Lead Program Coordinator and manager of Homestead greeted us, led the facility tour, and answered questions during a meeting following the tour." *Id*. ¶ 5. These statements are sufficient to lay the foundation for personal observations she describes while visiting and being toured throughout Homestead. Statements that are personal observations by Ms. Frye,[2] are admissible. Fed. R. Evid. 602.

Defendants seek to exclude twenty paragraphs of Ms. Frye's declaration as hearsay: ¶¶ 6-7, 9, 17-19, 22-29, and 31-36, as well as several additional phrases. [Doc. # 612-2]. Defendants do not sufficiently explain why each statement in these paragraphs is hearsay. Nevertheless, Plaintiffs address Defendants' hearsay objections to the extent they are discernible.

---

[2] *See, e.g.,* Frye Decl., ¶ 26 ("During our visit, we encountered children … who spoke indigenous languages and were not fluent in Spanish and M who is blind." (Frye Decl., ¶ 17); "We were taken to a small windowless room tucked in the corner of the medical building. The room had four beds and nothing more."; To the extent these statements includes personal observations by Ms. Frye, they are not hearsay and admissible. *See, e.g.* Frye Decl. ¶ 36 ("Of the 13 indigenous children we saw, five were not fluent enough in Spanish to be interviewed. They spoke Mam, Q'eqchi, and K'iche.").

Statements made by detained children and employees at Homestead meet the

standards of the Residual exception to the hearsay Rule. Fed. R. Evid 807. The

statements have "circumstantial guarantees of trustworthiness," in that they are in a

sworn statement made under penalty of perjury, by a member of the Bar, who has

special professional responsibilities of honesty.[3] The statements are offered as

evidence relating to the operation of the Homestead. They are probative in that they

deal with practices by the on-site manager of the facility and a licensed clinician,

shared in the context of a tour and in-person question and answer session, and in the

sworn declarations of children.

Statements by "W" and "O" are not hearsay. Fed. R. Evid. 801(d)(2). "An

Opposing Party's Statement" is not hearsay if "[t]he statement is offered against an

opposing party and: (A) was made by the party in an individual or representative

capacity; (B) is one the party manifested that it adopted or believed to be true; (C) was

made by a person whom the party authorized to make a statement on the subject; (D)

was made by the party's agent or employee on a matter within the scope of that

relationship and while it existed…." Fed. R. Evid. 801(d)(2).

In the alternative, W's and O's statements may be viewed as falling within

Federal Rule of Evidence § 803(2) involving a "statement of the declarant's then-

---

[3] *See, e.g.*, Rules of Professional Conduct 8.4(c) ("It is professional misconduct for a
lawyer to…engage in conduct involving dishonesty, fraud, deceit, or reckless or
intentional misrepresentation.").

4

existing state of mind (such as motive, intent, or plan)…but not including a statement of memory or belief to prove the fact remembered or believed." Statements about Homestead's policies and practices by its employees or contractors address Defendants' plans and intentions and are not hearsay.

Defendants also seek to exclude as hearsay statements regarding detained children. [Doc. 612-1]. Children's statements are not hearsay because they may establish not the truth of the matter asserted, but the class member's state of mind. *See, e.g.*, Frye Decl. ¶ 8 ("Children understand that they are not free to leave and have been told that they will be arrested by local police and ICE and deported, if they do."). Other statements are admissible as "present sense impressions." Fed. R. Evid. § 803(1). *See, e.g.*, Frye Decl. ¶ ("Children uniformly reported that enforcement of Homestead's rules was severe, and that they feared the repercussions of any infraction.")

Defendants seek to exclude portions of Ms. Frye's Declaration as "improper legal conclusions and improper lay witness opinions. " Fed. R. Evid. § 701 (opinion testimony of lay witnesses is permissible if "(a) rationally based on the witness's perception; (2) helpful to clearly understanding the witness's testimony or determining a fact in issue … and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.")

Defendants object to the following:

5

- observing the Homestead facility to be "markedly stark, almost entirely devoid of foliage, and memorable for a drab, institutional quality" (¶ 10);

- describing the noise level in every building she entered as "disturbingly high" (¶ 10);

- describing the buildings she entered as "unclean, and many areas smelled strongly of mildew" (¶ 10);

- describing concrete dormitory buildings she viewed firsthand as "dilapidated" (¶11);

- describing the dormitories she entered and viewed as having "few windows"; children having "few" belongings in plastic boxes kept under their beds; and "the rooms are barren" (¶ 12);

- describing one building she entered as a "cavernous room…appears to have been an airplane hangar" (¶ 13);

- describing a communal bathroom she entered as "large" room with "deep smell of mildew" (¶ 14);

- describing a communal sleeping area she observed as "immense" and observing that "the secluded location" of the bathroom would make "it difficult if not impossible" for Homestead staff to ensure children's safety" (¶ 15);

- "In all but name, Homestead is a secure facility."   (¶ 8).

6

- describing two dirt fields and a small basketball area as "appeared wholly insufficient to accommodate the exercise needs of the hundreds of children being held at Homestead" (¶ 16);

- describing a personal observation of Homestead's school as a "rather makeshift" tent divided into "mostly small" rooms, and the sound created by "some 2,000" children as a "a din" (¶ 30).

The above-quoted words and phrases are not opinions but  descriptions of what Ms. Frye observed. They are "rationally based on the witness's perception and … helpful to clearly understanding the witness's testimony or determining a fact in issue; [or] the determination of a fact in issue…." Fed. R. Evid. 701. These statements are not offered as expert or non-expert opinions.

**B.    The Declaration of Marsha Rae Griffin, M.D. is admissible as expert opinion on the effects of detention on children**

Defendants argue that Dr. Griffin's "reliance on hearsay and other inadmissible evidence is impermissible because she is a lay witness and her declaration must be based on her personal knowledge." Motion to Exclude at 8:20-25.

The purpose of Dr. Griffin's declaration is simply to offer evidence of the harm caused by Defendants'policies of limiting release to sponsors with pre-existing relationhips with their sponsors which obviously indefinitely extends detention for these children, and lengthy detention in an unlicensed facility because Defendants

refuse to transfer children with sponsors to properly licensed facilities. *See* Declaration of Dr. Marsha Rae Griffin ("Griffin Dec.") [Doc. 578-1] Ex. 6 at ¶ 4.

Each statement utilized by Dr. Griffin in her declaration is either not hearsay under Fed. R. Evid. 801(d)(2), or falls under a hearsay exception. *See, e.g.*, Ex. 6 at 70 ¶ 8, 9 ("present sense impression," Fed. R. Evid. 803(1)); ¶ 6 ("medical diagnosis or treatment," Fed R. Evid. 803(4)).

As a result of her personal observations Dr. Griffin offered her assessment that "[c]hildren detained even for short periods experience significant negative physical and emotional symptoms …" Griffin Dec., Ex. 6 at 71 ¶ 11. Her personal observations and evidence procured at various ORR facilities allowed her to deduce that children in detention suffer as a result of their confinement. Defendants agree that Dr. Griffin based her opinions not on irrelevant matters but on "her personal experiences talking to minors in facilities …" Motion to Exclude [Doc. # 612] at 11: 1-2.

Dr. Griffin's declaration satisfies each element of Federal Rule of Evidence 702 allowing her to provide an expert opinion. Dr. Griffin's "expert scientific, technical, or other specialized knowledge will help [the Court] to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). As represented in her declaration, Dr. Griffin's specialized knowledge as a Professor of Pediatrics "[who] studies the effects of immigration enforcement on border community, its children and on those children held in detention," will effectively assist the Court in determining whether extended

detention at Homestead caused by. Defendants' challenged policies negatively impacts class members.

"[E]xperts are permitted wide latitude to offer opinions under Rule 702." *United States v. Xunmei Li*, 2013 U.S. Dist. LEXIS 170335 (Arizona District Court Dec. 3, 2013) ("When an expert is testifying on a non-scientific subject based on his or her experience in a specialized area, the exacting standards of *Daubert* 'simply are not applicable to this kind of testimony, whose reliability depends heavily on experience of the expert, rather than the methodology or theory behind it"). Gathering personal experiences from class members regarding their experiences and current physical, emotional, and psychological feelings is an appropriate way for Dr. Griffin to formher opinions about the impact on class members of extended detention. *United States v. Abu-Jihaad*, 553 F. Supp.2d 121, 126 (D. Conn. 2008) ("Mr. Kohlmann has conducted first-hand interviews of several leaders of terrorist organizations and has reviewed reams of information … on which he will offer testimony").

Dr. Griffin is an expert in her area with over ten (10) years' experience studying the effects of immigration enforcement and childhood detention and attending several visits to detention facilities. She used reliable firsthand experiences in conjunction with her professional background and knowledge to reach her conclusions.

Defendants argue that the issue in Plaintiffs' Motion is not whether Defendants' failure "to ensure an expeditious and safe release may negatively affect a child's mental and physical health." Motion to Exclude at 12:6-9. Defendants are partially

correct inasmuch as Plaintiffs do *not* have to prove medical or mental health harm to class members by Defendants' failure to comply with the Settlement beyond the fact that many class members are harmed by not being promptly released and most are never transferred to a licensed facility. On the other hand, while not necessary to adjudicate Plaintiffs' legal claims, the Court may consider the medical and mental health harms suffered by class members because they are not released or transferred to licensed facilities.

**C.    The Declaration of Ryan Matlow, Ph.D. is admissible expert opinion on the effects of detention on children**

In March 2019, Dr. Matlow attended a *Flores* site visit to Homestead. The purpose of his monitoring visit was to interview class members and "assess their mental health and physical wellness …" Dec. of Ryan Matlow, Ph.D, ("Matlow Dec.") [Doc. # 578-1], Ex. 7 at 86.

Defendants argue that Dr. Matlow "must have personal knowledge rationally based on his perception – not based on his expertise as a psychologist." Motion to Exclude at 13. Dr. Matlow does offer his opinions based on his personal knowledge rationally based on his perceptions. Matlow Dec., at 86.

Defendants assert "[a]lthough he lists his accolades and qualifications as a psychologist, he never states that his declaration is based on his expertise, or that he

used any reliable methods or principals in arriving at his opinions in this case, as required under Rule 702." Motion to Exclude at 14:9-12.[4]

Dr. Matlow clearly possesses specialized knowledge about the issues discussed in his declaration.[5] *See Hangarter v. Provident Life & Accidents Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (Daubert factors (peer review, publication, potential error rate, etc.) are not applicable to testimony whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology); *Kumbo Tire v. Carmicahel,* 526 U.S. 137, 150 (1999) ("Engineering testimony rests upon scientific foundations, the reliability of which will be at issue in some cases … In other cases, the relevant reliability concerns may focus upon personal knowledge or experience.")

Defendants claim that "[t]he absence of reliable principals and methods is especially problematic here, where a particular problem could have more than one cause." Motion to Exclude at 14:20-23. Dr. Matlow relied on his experience and interview skills to assess the cause of certain class members' anxiety. Interviewing is a reliable method and principle used to elicit class member information. *See, e.g., Dukes*

---

[4] Defendants also argue that he "fails to describe methodology; fails to disclose all of his prior testimony; fails to mention any error rate associated with his methodology; and fails to assert, let along show, that his work is replicable, reliable, or grounded in peer-reviewed principles." *Id.* at 14:14-19.

[5] Dr. Matlow has specialized knowledge in the following areas: "addressing the impacts of stress, trauma, and adversity in children, families, and communities," …and "trauma-focused psychological evaluation and therapy for children and families." Dec. of Ryan Matlow, Ph.D, Ex. 7 at 85.

11

*v. Wal-Mart, Inc.*, F.R.D. 189, 198 (C.D. Cal 2004) (it is reasonable to rely on statements of others obtained through an interview when the interview is conducted by an expert). The method of engaging in interviews to assess a child's experience, and analyzing the surrounding environment, "is of a type reasonably relied upon by experts in the [psychiatric] field in forming opinions or inferences upon the subject." *United States v. Jawara*, 462 F.3d 1173, 1190 (9th Cir. 2006).

**D.    Dr. Ewen Nancy Wang's Report is admissible expert opinion, is based on data provided by Defendants and utilizes a reliable methodology**

Defendants move to exclude Dr. Wang's cover letter and Program Report. Motion to Exclude (Doc. #612) at 17.

Defendants object that "Plaintiffs' cover letter from Dr. Wang…is not a declaration as is defined by L.R. 7-6 and 7-7." Motion to Exclude at 17:28 – 18:3. The argue that even if Plaintiffs had submitted the cover letter as a declaration, the document filed neither qualified Dr. Wang as an expert nor provided any evidence of the reliability of the methodology Dr. Wang employed in forming her reports. *Id.* at 18:3-6.[6]

As discussed above, the "district court has 'broad latitude' in deciding the appropriate factors to consider in determining reliability." *Kumho*, 526 U.S. at 141-42.

---

[6] Although Plaintiffs contend that Dr. Wang's initial cover letter is adequate, Plaintiffs concurrently file with this Opposition as Exhibit 1 an amended Cover Letter signed under penalty of perjury and Report addressing Defendants' concerns.

"The circumstances of the particular case will dictate which factors the district court should consider in making its determination. *Id.* at 150.

Dr. Wang's Report meets the standards of Rule 702:

"*My scholarly expertise is in health services research* with a focus on Social Emergency Medicine, or *the intersection of vulnerable populations with the Health Care system*. I am additionally affiliate faculty in the Human Rights in Trauma Mental Health program at Stanford. *My team has over 10 years of experience using national and statewide datasets to analyze population-wide access to specialty care and health outcome*s. We have been funded by the National Institute of Health, as well as by various external and internal grants."[7]

Cover Letter, Plfs' Ex. Vol. 1  at p. 53 (italics added). The addendum to the Cover letter filed herewith elaborates:

Specifically, I use national and statewide datasets to analyze population-wide epidemiologies of different acute and emergent health conditions.  The datasets that I use include governmental datasets such as the Agency for Health Care Research and Quality's (AHRQ), Health Care Cost and Utilization Project (HCUP) data. I have published and presented my research widely as evidenced by my publications, reports and abstract presentations. My expertise is evident

---

[7] Notably, Defendants misstate Dr. Wang's expertise – "Dr. Wang claims to have expertise in emergency medicine and not as a statistician or data analyst." Motion to Exclude [Doc. # 612] at 19:11 – 26.

13

also by my participation as a manuscript reviewer for international and national journals, and grants. Lastly, my research acumen and experience is also evident in my function as a mentor and teacher of research methods to trainees.

Ex. 1.

Dr. Wang's Program Report simply provides an analysis of raw data provided by Defendants to Plaintiffs to make the data meaningful and accessible to the Special Master and the Court. Dr. Wang's report synthesizes the data into a digestible and usable format,. Plaintiffs are concurrently filing an addendum by Dr. Wang with her sworn statement affirming that the entire contents of the original cover letter and addendum are true and correct, including an additional description of methodology, and Dr. Wang's CV.

The addendum further describes the methodology used in her Report, and notes that the methodology "is very standard and does not involve any advanced data manipulation or modeling." *Id*. She declares:

Our data plan was to first identify and follow each individual contained in the records through the different stages of ORR status (Referral, Discharge, Census and Transfer); second, to verify the data and compute custody characteristics and third, to aggregate and visualize descriptors of the class members held in custody.

Identification of individuals: We initially ensured that each person in the data had a unique Alien Number (AN). ANs were compared across datasets for

14

consistency in the following individually descriptive variables: first name, last name, sex, date of birth, country of origin, date of referral to ORR, date of admittance into ORR, date of discharge from ORR. Some ANs only occurred once in the dataset, and so no confirmation of accuracy was possible; in these cases DOJ information was used as is. For ANs occurring more than once in the dataset, the majority of the records were consistent. For ANs that had inconsistent data in multiple occurrences, these were evaluated on a probabilistic match. Records without the predetermined criteria established for the match were excluded. For instance, if name and birthdate were inconsistent, then the AN was excluded from our dataset.

Data was also examined for other inconsistencies.  Impossible values, such as birthdate later than admittance into ORR, when identified were replaced with possible values in records provided, or if no other record available, made blank. Dates outside the range of the dataset were also treated this way. If date of admission into ORR custody was missing, the date of referral to ORR custody was used as date of admission. ANs that did not have a discharge record, but also, did not appear in the census for more than 1 year were eliminated from the dataset (approximately 3000 records, mostly admitted before 2018). The level of data entry errors leading to these above-described errors was on the order of 3%. In all cases where data could not be used, the result is that fewer

individuals are represented in the final dataset of individuals held in ORR

custody rather than more.

Custody characteristics were calculated using dates and locations provided in

the dataset. Length of ORR custody was calculated using the difference in the

date of admittance into ORR custody and the date of discharge, or in cases of

no discharge, the date of the latest census. Both the day of admittance and the

day of discharge were included in the length of custody. A custody dataset was

created with a record for each AN at each month from January 2018 to July

2019 and their custody status at that time. Using this dataset, it is possible to

determine how many class members were in ORR custody each month, how

many were admitted, and how many were discharged, for example.

We use standard SAS Statistical software for data formatting and analysis.  We

use Tableau data visualization software to create the charts and tables provided.

Plaintiffs' Ex. 1.

Finally, Defendants take issue with Dr. Wang's opinion that occasional visual

inspections of detention sites are not an effective means of assessing compliance.

Motion to Exclude at 19-20. The opinion that "occasional visual inspections" does not

provide reliable data in a system caring for thousands of children is hardly the type of

conclusion that should be subject to "peer review," as Defendants suggest is

necessary. Based on her vast experience analyzing data to determine healthy

outcomes, Dr. Wang explains:

Having reviewed the terms of the settlement and carefully analyzed the data that the government is currently providing to Class Counsel, we believe it is urgently important for the relevant agencies to provide additional data points in order to assess compliance with specific provisions of the settlement.

In particular, it does not appear that ORR or Homestead collects or records quantifiable data that would permit ORR, the Special Master, or Class Counsel to monitor Homestead's success or failure in making and recording efforts aimed at the prompt release of minors, as required by Paragraph 18 of the Settlement. Analyzing this data is likely the most accurate, cost-effective, and effective way to monitor compliance with the Settlement. The size of the class, the widespread dispersal of the class members, the large number of facilities, and the security measures taken to detain the class, all combine to make occasional visual inspections a far less accurate and effective means to assess compliance with this provision, than reports that can be prepared based upon contemporaneous agency records of the entire class.

Plfs' Ex., Vol. 1 at 54 [Doc. 578-1].

Dr. Wang's cover letter, Program Report, and addendum, are reliable, are based solely on data provided by Defendants, and are helpful to the Court. Defendants' motion to exclude them should be denied.

**E.    An Evidentiary Hearing is not necessary to adjudicate the pending Motion to Enforce challenging Defendants' acknowledged policies.**

17

An evidentiary hearing is unnecessary to adjudicate Plaintiffs' Motion which challenges undisputed policies. These policies are expressed in Defendants' published Rules and Guides, and are confirmed by the Declaration of Jallyn Sualog, the Deputy Director of the Office of Refugee Resettlement. [Doc. # 609-1].

Although Plaintiffs in general are not opposed to an evidentiary hearing should the Special Monitor or the Court find one necessary, Defendants never identify genuine disputes of material fact necessary to adjudicate the Motion. Defendants state they have submitted "a responsive declaration, as well as evidence that undermines the credibility of several of Plaintiffs' declarants." Opp. at 22:4-6. The fact that Defendants have submitted a responsive declaration and evidence that may undermin the credibility of some parts of Plaintiffs' declarations, does not mean Defendants have placed material facts in dispute such that the Motion could not be adjudicated without an evidentiary hearing.

Whether class members saw their counselors once, twice, three, or four times a month to facilitate their release, would not change the fact that Defendants' policy with regards release is, as written, inconsistent with the options for release under Paragraph 14 of the Settlement, nor would it change the fact that Defendants' policy of only expeditiously transferring minors to licensed facilities if they have special needs or are in "Category 4"—*i.e.* have no sponsors—is inconsistent with the terms of the Settlement. This would be true even if class members saw their counselors every

day, or told visiting doctors they were experiencing no mental health issues as a result of their lengthy detention.

Nothing will be served by a hearing other than to have Defendants' witnesses confirm their policies, or Plaintiffs, if their attendance can even be accomplished, confirm they were by and large treated in conformity with Defendants' policies.

III.   CONCLUSION

Whether or not Defendants offered evidence contradicting some of the declarations filed by Plaintiffs, or reasons why doctors' declarations or Dr. Wang's report should be excluded, the fact remains that Defendants have adopted certain policies that block some class members from prompt release and many from transfer to licensed facilities in a way that conflicts with the terms of the Settlement.

Neither Plaintiffs nor Defendants have argued that in practice Defendants do not follow their policies challenged in the Motion.

To resolve the Motion does not require an evidentiary hearing. Unless the Special Monitor or the Court believe otherwise, the Motion may be submitted and decided without the need for any hearing at all.

/ / /

PLAINTIFFS OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE EVIDENCE AND FOR AN EVIDENTIARY HEARING

1

2

3
                              Respectfully submitted,

4
Dated: August 23, 2019              CENTER FOR HUMAN RIGHTS AND

5                                   CONSTITUTIONAL LAW
                                    Peter A. Schey
6                                   Carlos Holguín
7                                   Laura N. Diamond
                                    Rachel Leach
8

9                                   USF SCHOOL OF LAW IMMIGRATION CLINIC
                                    Bill Ong Hing
10

11                                  LA RAZA CENTRO LEGAL, INC.
                                    Stephen Rosenbaum
12

13

14                                  /s/Peter Schey
15                                  Class Counsel for Plaintiffs

16  / / /

17

18

19

20

21

22

23

24

25

26

27

28

20

**CERTIFICATE OF SERVICE**

I, Peter Schey, declare and say as follows:

I am over the age of eighteen years of age and am not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 256 S. Occidental Blvd., Los Angeles, CA 90057, in said county and state.

On August 23, 2019 I electronically filed the following document(s):

- **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE EVIDENCE AND FOR AN EVIDENTIARY HEARING**

with the United States District Court, Central District of California by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/Peter Schey
*Attorney for Plaintiffs*