1  CARLOS R. HOLGUÍN (Cal. Bar No. 90754)
2  PETER A. SCHEY (Cal. Bar No. 58232)
   Center for Human Rights & Constitutional Law
3  256 South Occidental Boulevard
4  Los Angeles, CA 90057
   Telephone:   (213) 388-8693
5  Email:       crholguin@centerforhumanrights.org
6                pschey@centerforhumanrights.org

7

8  *Additional Plaintiffs' counsel on next page*

9

10

11

12              UNITED STATES DISTRICT COURT

13       CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

14

15

16  JENNY LISETTE FLORES, *et al.*,          Case No. CV 85-4544-DMG (AGRx)

17              Plaintiffs,                  SUPPLEMENTAL MEMORANDUM IN
                                             SUPPORT OF MOTION TO ENFORCE
18        v.                                 SETTLEMENT

19  WILLIAM BARR, Attorney General, *et al.*,
20                                           Hearing:  N/A
              Defendants.
21

22

23

24

25

26

27

28

1    *Plaintiffs' counsel, continued*:

2    ORRICK, HERRINGTON & SUTCLIFFE LLP
     Kevin Askew (Cal. Bar No. 238866)
3    777 South Figueroa Street, Suite 3200
4    Los Angeles, CA 90017
     Telephone:  (213) 629-2020
5    Email:      kaskew@orrick.com

6
     ORRICK, HERRINGTON & SUTCLIFFE LLP
7    Elyse Echtman (admitted *pro hac vice*)
8    Shaila Rahman Diwan (admitted *pro hac vice*)
     Rene Kathawala (admitted *pro hac vice*)
9    51 West 52nd Street
10   New York, NY 10019-6142
     Telephone:  212-506-5000
11   Email:      eechtman@orrick.com
12   Email:      sdiwan@orrick.com
     Email:      rkathawala@orrick.com
13

14   LEECIA WELCH (Cal. Bar No. 208741)
     NEHA DESAI (Cal. RLSA Bar No. 803161)
15   FREYA PITTS (Cal. Bar No. 295878)
16   National Center for Youth Law
     405 14th Street, 15th Floor
17   Oakland, CA 94612
18   Telephone: (510) 835-8098
     Email:      lwelch@youthlaw.org
19               ndesai@youthlaw.org
20               fpitts@youthlaw.org

21   HOLLY S. COOPER (Cal. Bar No. 197626)
22   Co-Director, Immigration Law Clinic
     University of California Davis School of Law
23   One Shields Ave. TB 30
24   Davis, CA 95616
     Telephone: (530) 754-4833
25   Email:      hscooper@ucdavis.edu

26

27

28

# Table of Contents

Table of Authorities ..................................................................................... ii

I.     Introduction.......................................................................................... 1

II.    The Final Rule Breaches Settlement ¶ 9........................................... 4

   A.   Defendants' express aim in promulgating the Final Rule is to free DHS and ORR to do what the Settlement forbids........................................... 4

   B.   The Final Rule jettisons the Settlement's protections against DHS's needlessly and indefinitely confining accompanied class members. ............. 6

   C.   The Final Rule strips accompanied children of their right to prompt, state-licensed, and non-secure placement in violation of Settlement ¶¶ 6 and 19. 10

   D.   The Final Rule guts children's right to neutral and detached review of dangerousness and flight-risk. ........................................................ 13

   E.   The Final Rule contrives to supplant children's enforceable Settlement rights with aspirational declarations immune from judicial review. ....................... 14

III.   The Court Should Order Defendants to Continue to Abide by the Settlement. ........................................................................................ 17

IV.    Conclusion ......................................................................................... 19

1

Table of Authorities

2

Cases

3

*Citizens for a Better Environment v. Gorsuch,*
4     718 F.2d 1117 (D.C. Cir. 1983) ...................................................................18

5

*Ferrell v. Pierce,*
6     560 F. Supp. 1344 (N.D. Ill. 1983), *aff'd*, 743 F.2d 454 (7th Cir.
7     1984) ..........................................................................................................18

8

*Flores v. Barr,*
    __ F.3d __, 2019 WL 3820265 (9th Cir. Aug. 15, 2019) ..............................8
9

*Flores v. Johnson,*
10    212 F. Supp. 3d 864 (C.D. Cal. 2015) ........................................................12

11

*Flores v. Lynch,*
12    2017 WL 6049373 (C.D. Cal. Jan. 20, 2017) ...............................................6

13

*Flores v. Lynch,*
14    212 F. Supp. 3d 907 (C.D. Cal. 2015), *aff'd in relevant part, rev'd*
15    *in part,* 828 F.3d 898 (9th Cir. 2016) ..........................................................4

16

*Flores v. Sessions,*
    2017 WL 6060252,  (C.D. Cal. June 27, 2017) ..................................8, 10, 13
17

18

*Flores v. Sessions,*
    2018 WL 4945000 (C.D. Cal. July 9, 2018)......................................... *passim*
19

*Flores v. Sessions,*
20    862 F.3d 863 (9th Cir. 2017) .............................................................6, 9, 14

21

*Hook v. State of Ariz., Dept. of Corrections,*
22    972 F.2d 1012 (9th Cir. 1992) ....................................................................18

23

*Martin v. Wilks,*
24    490 U.S. 755 (1989).....................................................................................3

25

*Norton v. Southern Utah Wilderness Alliance,*
26    542 U.S. 55 (2004)......................................................................................16

27

*Rufo v. Inmates of Suffolk Cnty. Jail,*
    502 U.S. 367 (1992).....................................................................................13

28

*Thompson v. Enomoto,*
915 F.2d 1383 (9th Cir. 1990), *cert. denied,* 112 S. Ct. 965 (1992)......................3

*Tin Cup, LLC v. United States Army Corps of Engineers,*
904 F.3d 1068 (9th Cir. 2018) ...............................................................16

*United States v. ITT Continental Baking Co.,*
420 U.S. 223 (1975)...............................................................................3

**Statutes**

Homeland Security Act of 2002.........................................................6, 10

Immigration and Naturalization Act ......................................................14

William Wilberforce Trafficking Victim Protection Reauthorization
Act of 2008......................................................................................6, 9, 10

**Other Authorities**

8 C.F.R. § 212.5(b)(3)(ii) .......................................................................16

8 C.F.R. § 235.3(b)(2)(iii) ........................................................................7

8 C.F.R. § 235.3(b)(4)(ii) .........................................................................7

8 C.F.R. § 236.3(b)(9) .............................................................................11

8 C.F.R. § 236.3(g)(2)(i) .........................................................................16

8 C.F.R. § 236.3(j)(2) ...............................................................................7

8 C.F.R. § 236.3(j)(5)(i) ............................................................................8

8 C.F.R. § 263.3(m) ................................................................................14

8 C.F.R. § 1003.19 ..................................................................................14

45 C.F.R. § 410.201(a) ...........................................................................15

45 C.F.R. § 410.201(f) ............................................................................17

45 C.F.R. § 410.208 ...............................................................................15

45 C.F.R. § 410.209 ...............................................................................16

45 C.F.R. § 410.301(a) ................................................................16

45 C.F.R. § 410.810 ...............................................................14, 15

83 Fed. Reg. 45,486 (Sept. 7, 2018) ...............................................1

84 Fed. Reg. 44,392 (Aug. 23, 2019) .................................... *passim*

84 Fed. Reg. 44,393 .....................................................................6

84 Fed. Reg. 44,394 ...................................................................12

84 Fed. Reg. 44,398 ...................................................................18

84 Fed. Reg. 44,400 ...................................................................11

84 Fed. Reg. 44,408 ...................................................................18

84 Fed. Reg. 44,418 ...................................................................12

84 Fed. Reg. 44,488 .....................................................................9

84 Fed. Reg. 44,518 .....................................................................9

84 Fed. Reg. 44,529 ...................................................................14

84 Fed. Reg. at 44526 .................................................................11

Adam Cox & Ryan Goodman, *Detention of Migrant Families as
    "Deterrence": Ethical Flaws & Empirical Doubts,
    JUSTSECURITY.ORG (June 22, 2018)* ....................................4

Fed. R. Civ. P. 60(b)(5)..............................................................13

Julie M. Linton, Marsha Griffin, Alan J. Shapiro, *Detention of
    Immigrant Children*, 139 (5) PEDIATRICS 1, 10 (2017).............8

Office of the Chief Immigration Judge, IMMIGRATION COURT
    PRACTICE MANUAL, § 9.3(d), *available at*
    www.justice.gov/eoir/office-chief-immigration-judge-0 (last visited
    March 2, 2016)..........................................................................14

President Trump Letter (Jan. 4, 2019),
available at
www.whitehouse.gov/wp-content/uploads/2019/01/Border-
Security-Letter.pdf .......................................................................................5

www.cnn.com/2019/08/23/politics/ken-cuccinelli-flores-settlement-
cnntv/index.html (last visited Aug. 28, 2019) .........................................5

www.foxnews.com/media/dhs-illegal-immigration-regulation-
immigrants-flores (last visited Aug. 28, 2019).........................................5

www.dhs.gov/news/2019/08/21/acting-secretary-mcaleenan-dhs-hhs-
federal-rule-flores-agreement (last visited Aug. 28, 2019) ....................4

## I.  INTRODUCTION.

On August 23, 2019, the Department of Homeland Security ("DHS") and the Department of Health and Human Services ("HHS") (collectively, the "Government" or "Defendants") issued a final rule "relating to the apprehension, processing, care, custody, and release" of class members, 84 Fed. Reg. 44,392 (Aug. 23, 2019) (the "Final Rule"). The Final Rule constitutes an egregious and intentional breach of the *Flores* Settlement Agreement (the "Settlement").

The dispute now before the Court is as straightforward as its resolution. Settlement ¶ 9 states that "[t]he final regulations shall not be inconsistent with the terms of this Agreement." *Id.* A Stipulation Extending Settlement Agreement (Dec. 7, 2001) (the "Stipulated Extension") extends the Agreement until 45 days following Defendants' publication of final regulations "implementing this Agreement." *Id.*

The Final Rule violates both Settlement ¶ 9 and the Stipulated Extension. Despite tens of thousands of public comments that went largely ignored, the Final Rule does nothing to cure the ways in which the regulations Defendants proposed nearly a year ago, *see* 83 Fed. Reg. 45,486 (Sept. 7, 2018), would eviscerate the Settlement's crucial protections for vulnerable children. The Final Rule doubles down on the worst of Defendants' proposed regulations.

First, the Final Rule, like the proposed regulations, permits DHS to detain accompanied class members indefinitely. Unless class members are a flight risk or danger,[1] Settlement ¶ 14, in contrast, unambiguously requires Defendants to release children "without unnecessary delay": that is, to reunite them with their parents or

---

[1] *See* Settlement ¶ 21 (describing when a minor may be held in or transferred to a suitable State or county juvenile detention facility or a secure DHS detention facility, or DHS-contracted facility, having separate accommodations for minors), and ¶ 22 (defining "escape-risk").

1  other available listed sponsors as expeditiously as possible. Rather than implement

2  this fundamental core principle of the Settlement, the Final Rule grants DHS

3  authority – indeed in most cases *requires* DHS – to detain children for howsoever

4  long it may take the agency to adjudicate their eligibility to remain in the United

5  States or remove them, regardless of the terms of the Settlement and the devastating

6  impact prolonged confinement unavoidably has on children's well-being.

7          Second, just as the proposed regulations did, the Final Rule would allow

8  DHS to detain children in secure facilities having no state license to house children.

9  Pursuant to Settlement ¶¶ 6, 12 and 19, DHS must generally place children in "non-

10  secure" programs "licensed by an appropriate State agency to provide residential,

11  group, or foster care services for dependent children"— and it must do so "as

12  expeditiously as possible." Under the Final Rule, DHS gives itself the power to

13  confine children in facilities that states refuse to license and to devise its own

14  standards for their operation and monitoring. Obviously, in negotiating the

15  Settlement, the Parties could have granted the former INS self-licensing authority,

16  but they did not, precisely because Plaintiffs understood, and Defendants agreed,

17  that such "licenses" would be pro forma: *i.e.*, worth about as much the paper on

18  which they are issued.

19          Third, the Final Rule strips children of their right to neutral and detached

20  review of decisions of the Office of Refugee Resettlement ("ORR") to detain them

21  in lieu of release to their parents and other available custodians. Under Settlement

22  ¶ 24A, ORR must afford children it refuses to release a hearing at which an

23  independent decisionmaker—an immigration judge—decides whether they are too

24  dangerous to release. The Settlement requires ORR to provide children such

25  hearings unless they affirmatively refuse one. Under the Final Rule, ORR would

26  review its own detention decisions, and even then, only if a child has the

27  wherewithal to ask for review. Again, had Plaintiffs been willing to settle for it, the

28

1   parties could have allowed the INS, and not an immigration judge, to review its

2   own detention decisions, but they did not.

3        Fourth, in numerous instances, the Final Rule supplants the Settlement's

4   mandatory and enforceable provisions with aspirational declarations of dubious

5   force and effect. For example, no longer "shall" homes and facilities operated by a

6   licensed program be non-secure, as Settlement ¶ 6 provides. Rather, the Final Rule

7   baldly declares that such facilities "are" non-secure (whether they are or not). Such

8   artifices of draftsmanship reveal a fundamental conflict between the aspirational

9   declarations of the Final Rule and the enforceable rights the Settlement confers.

10       In Settlement ¶ 9, Defendants pledged that regulations implementing the

11  Agreement "shall not be inconsistent with the terms of the Settlement." The

12  conflicts between the Settlement and the Final Rule are so numerous as to preclude

13  discussing all of them in this supplemental brief. Plaintiffs accordingly attach a

14  chart illustrating the many ways the Final Rule deviates from the Settlement. *See*

15  Plaintiffs' Chart Demonstrating the Conflicts Between the Final Rule and the

16  Settlement, attached hereto as Exhibit A. In the ways discussed herein, as well as

17  myriad others appearing in Exhibit A, the Final Rule clearly conflicts and is

18  inconsistent with the Settlement and flagrantly breaches its terms.[2]

19

20

21

22  _____

    [2] Plaintiffs' analysis is grounded in precedent well-known to and applied
23  consistently in this case by this Court that consent decrees are essentially
    contractual agreements that are given the status of judicial decrees. *See, e.g.,*
24  *Thompson v. Enomoto,* 915 F.2d 1383, 1388 (9th Cir. 1990), *cert. denied,* 112 S.
25  Ct. 965 (1992). Key to the present motion, consent decrees are construed as
    contracts for purposes of compliance and enforcement. *United States v. ITT*
26  *Continental Baking Co.,* 420 U.S. 223, 238 (1975); *see also Martin v. Wilks,* 490
27  U.S. 755, 788 n. 27 (1989). Under the terms of the Settlement, Defendants must
    comply with it in their agency policies, practices, and regulations.
28

## II. THE FINAL RULE BREACHES SETTLEMENT ¶ 9.

A.  <u>Defendants' express aim in promulgating the Final Rule is to free DHS and ORR to do what the Settlement forbids.</u>

In announcing the Final Rule, Defendants made explicit that its *raison d'être* is to strip detained children of the Settlement's protections. During his press conference, Acting DHS Secretary Kevin McAleenan alleged the following:

- ". . . the new rule closes the legal loophole that arose from the reinterpretation of *Flores* . . . ."

- ". . . by closing the key loophole in *Flores* – the new rule will restore integrity to our immigration system and eliminate the major pull factor fueling the current crisis."; and

- "This single ruling has substantially caused, and continued to fuel, the current family unit crisis, and the unprecedented flow of Central American families and minors illegally crossing our border – until today." www.dhs.gov/news/2019/08/21/acting-secretary-mcaleenan-dhs-hhs-federal-rule-flores-agreement (last visited Aug. 28, 2019).

Ken Cuccinelli, the acting director of U.S. Citizenship and Immigration Services, called the Settlement "one of the main motivators for the crisis at the southern border,"[3] and argued that eliminating the Settlement is a "critical part of

---

[3] This Court has specifically rejected Defendants' "magnet" argument. *See Flores v. Sessions*, 2018 WL 4945000 at * 2 (C.D. Cal. July 9, 2018) (Doc # 455) ("Defendants' reasoning suffers from the "'logical fallacy of *post hoc, ergo propter hoc'* literally, 'after this, therefore because of this[.]' " Any number of other factors could have caused the increase in illegal border crossings, including civil strife, economic degradation, and fear of death in the migrants' home countries.") (citing Adam Cox & Ryan Goodman, *Detention of Migrant Families as "Deterrence": Ethical Flaws & Empirical Doubts*, JUSTSECURITY.ORG (June 22, 2018)).

And, of course, the Court never created a bright line "20-day rule." *See Flores v. Lynch*, 212 F. Supp. 3d 907, 914 (C.D. Cal. 2015) ("At a given time and under extenuating circumstances, if 20 days is as fast as Defendants, in good faith and in

1 the solution." He further lauded the Final Rule as "demonstrating to families that

2 are considering coming to the southern border illegally, that they will be detained

3 for the duration until their hearings can be held."

4 www.cnn.com/2019/08/23/politics/ken-cuccinelli-flores-settlement-

5 cnntv/index.html (last visited Aug. 28, 2019).

6    Mark Morgan, Commissioner of U.S. Customs and Border Protection,

7 stated—again, inaccurately—that "[b]ecause of the current *Flores* settlement

8 agreement, everybody knows . . . you grab a kid, that's your U.S. passport into the

9 United States because we can't hold you more than 20 days."

10 www.foxnews.com/media/dhs-illegal-immigration-regulation-immigrants-flores

11 (last visited Aug. 28, 2019).

12    Defendants' rhetoric aligns with this Administration's oft-stated objective to

13 escape at any cost from the Settlement's core purpose: protecting children from the

14 harms of prolonged detention.[4] Though wholly lacking in evidentiary support,

15 Defendants' statements lay bare the animus underlying the Final Rule: *i.e.*,

16 abrogating the Settlement such that DHS and ORR may do what the Settlement

17 forbids.[5] As will be seen, far from implementing the Settlement's protections, the

18 Final Rule would instead eviscerate them.

19 _____

20 the exercise of due diligence, can possibly go in screening family members for
reasonable or credible fear, then the recently implemented DHS polices may fall

21 within the parameters of Paragraph 12A of the Agreement. . . ."), *aff'd in relevant*

22 *part, rev'd in part*, 828 F.3d 898 (9th Cir. 2016).

23 [4] On January 4, 2019, President Donald J. Trump stated in a letter to all Members of

24 Congress that one of the most pressing legal challenges was to "[t]erminate the
*Flores* Settlement Agreement – which is preventing families from being held

25 together through removal." President Trump Letter (Jan. 4, 2019), available at

26 www.whitehouse.gov/wp-content/uploads/2019/01/Border-Security-Letter.pdf

27 [5] Yet another reason Defendants offer for the Final Rule is that "changes to the

28 operational environment since 1997 as well as the enactment of the" Homeland

B.   <u>The Final Rule jettisons the Settlement's protections against DHS's needlessly and indefinitely confining accompanied class members.</u>

Plaintiffs have previously explained how DHS's proposed regulations would condone the indefinite detention of accompanied children contrary to the Settlement. *See* Memorandum in Support of Motion to Enforce Settlement, etc., Nov. 2, 2018 (Doc. #516) ("Plaintiffs' Memorandum") at 6-8. The Final Rule likewise jettisons DHS's duty to release children "without unnecessary delay."[6] In its stead, the Final Rule posits a preference for indefinite detention of accompanied children, the vast majority of whom DHS places in "expedited" removal proceedings.

Final Rule 8 C.F.R. § 236.3(j)(2) provides that the release of an accompanied minor "in expedited removal proceedings (including if he or she is awaiting a

Security Act of 2002 ("HSA") and the William Wilberforce Trafficking Victim Protection Reauthorization Act of 2008 ("TVPRA"), "have rendered some of the substantive terms of the" Settlement "outdated or unsuited to current conditions." 84 Fed. Reg. 44,393.

Again, both this Court and the Ninth Circuit have rejected this rationale for *modifying* the Settlement. *See, e.g., Flores v. Sessions*, 862 F.3d 863, 875 (9th Cir. 2017) ("At the time it enacted the HSA and the TVPRA, Congress was on notice with respect to the government's obligations under the nationwide *Flores* Settlement and resulting consent decree, which had governed the treatment of minors since 1997. Congress therefore had the opportunity to address, and to explicitly modify if it wished to do so, any provisions of the Settlement …."); *Flores v. Lynch*, 2017 WL 6049373, at * 4 (C.D. Cal. Jan. 20, 2017) (Doc. # 318) ("The Court will not presume Congress intended to silently abrogate the *Flores* Agreement's bond hearing provision in the absence of actual or express language relating to bonds.").

[6] Settlement ¶ 14 provides that so long as "the detention of the minor is not required either to secure his or her timely appearance before the [Defendants] or the immigration court, or to ensure the minor's safety or that of others, the [Defendants] shall release a minor from [their] custody without unnecessary delay" in order of preference to a parent and then to a range of other qualified adults.

credible fear determination)" "is governed by § 235.3(b)(2)(iii) or (b)(4)(ii) of this chapter, as applicable." 8 C.F.R. § 235.3(b)(2)(iii) addresses the "[d]etention and parole of alien[s] in expedited removal" and provides that such aliens *shall be detained pending determination and removal*, except that parole of such alien[s], in accordance with section 212(d)(5) of the Act, may be permitted *only* when the Attorney General determines, in the exercise of discretion, that parole is required to meet a *medical emergency* or is *necessary for a legitimate law enforcement objective*." *Id.* (emphasis added).

8 C.F.R. § 235.3(b)(4)(ii) posits a similarly categorical preference for mandatory detention: "Pending the credible fear determination by an asylum officer and any review of that determination by an immigration judge, the alien *shall be detained*. Parole of such alien in accordance with section 212(d)(5) of the Act may be permitted *only* when the Attorney General determines, in the exercise of discretion, that parole is required to meet a medical emergency or is necessary for a legitimate law enforcement objective." *Id.* (emphasis added).

The Settlement, of course, nowhere denies children placed in expedited removal a general right to prompt release or specific protections against confining them needlessly or as a "deterrent." As this Court held: "[T]he expedited removal statute does not excuse Defendants from the commitment they made in the *Flores* Agreement to make and record efforts to release minors in ICE custody, even if the minor or her parent is in expedited removal (*i.e.*, awaiting a credible fear determination)" and "*that class members are in mandatory detention because they are awaiting removal does not defeat the Agreement's presumption of release.*" *Flores*, 2017 WL 6060252, at *16 & n.16 (C.D. Cal. June 27, 2017) (Doc. #363) (emphasis added), *appeal dismissed, Flores v. Barr*, __ F.3d __, 2019 WL 3820265 (9th Cir. Aug. 15, 2019).

As for children whom DHS places in "non-expedited," or "240" removal

proceedings, the Final Rule would eliminate any possibility of their being released to unrelated adults, regardless of the adult's qualifications or how long a child might be confined as a result. *Compare* Settlement ¶¶ 14D and F (providing, respectively, for release to unrelated adults pursuant to parental designation or "when it appears that there is no other likely alternative to long term detention"), *and* Final Rule 8 C.F.R. § 236.3(j)(5)(i) ("Nothing in this paragraph (j)(5)(i) precludes the release of a minor who is not a UAC to an adult relative (brother, sister, aunt, uncle, or grandparent) who is not in detention . . . . Release of a minor who is not a UAC to an adult relative other than a parent or legal guardian is within the unreviewable discretion of DHS."). The Final Rule therefore reduces children's right to be released to their grandparents, siblings, aunts and uncles to the level of unfettered discretion the Settlement permits only with respect to wholly unrelated adults lacking a parental designation. Further, it eliminates the possibility of releasing children to other family members or unrelated adults regardless of the individual circumstances or needs of the child.

The Final Rule's imposition of indefinite and prolonged detention will result in serious harm to children's mental and physical health. Julie M. Linton, Marsha Griffin, Alan J. Shapiro, *Detention of Immigrant Children*, 139 (5) PEDIATRICS 1, 6 (2017). Mental health professionals and attorneys who have interviewed children held for prolonged periods of time in federal immigration custody have witnessed the profound trauma inflicted upon children by their extended detention.[7] Rather

---

[7] *See, e.g.*, Decl. of Dr. Yenys Castillo, ¶¶ 11, 18 ("Detained children indicated that their physical and mental wellbeing increasingly deteriorated as they spent more days in detention. . . [b]eing indefinitely incarcerated in such a regimented environment mimics conditions of abuse and can be further traumatizing and damaging to children's self-esteem and sense of autonomy."); Decl. of Andrea Meza, ¶ 7 ("In my experience, generally, families detained for more than two weeks at Karnes invariably suffer profound effects from their detention. Within about

than responding to this concern flagged by numerous commentators, the government states that "aliens in expedited removal proceedings are not generally detained in mandatory custody for long periods of time." 84 Fed. Reg. 44,518. This unsubstantiated assertion is directly refuted by lawyers from organizations that have represented thousands of children and families at ICE Family Residential Centers in Texas and Pennsylvania. Decl. of Bridget Cambria, ¶ 45 ("Based on my experience, it is disingenuous for the government to allege that family detention will be short term – because during the only times they have utilized indefinite family detention, detention periods lasted from six months to 700 days."); Decl. of Andrea Meza, ¶ 7 (". . . I have worked with hundreds of families subjected to months of detention.").

It is worth noting that prolonged detention has persisted even under the current paradigm in which the courts have constrained the agency from detaining families indefinitely. Were the Final Rule to go into effect, there would be nothing stopping Defendants from indefinitely detaining families. This most certainly does *not* implement the Settlement. Defendants transparently seek to achieve through rulemaking what they could not before this Court or the Ninth Circuit: that is, detain accompanied children indefinitely.[8]

---

fifteen days, nearly every single family I have met with over three years has expressed exasperation and hopelessness in the face of their detention.").

[8] Incredibly, Defendants even assert that finding children after release is so expensive that they would save money by detaining them indefinitely. *See* 84 Fed. Reg. 44,488. That callous notion not only violates the plain language of the Settlement, it is wholly inconsistent with the TVPRA's mandate that ORR place children in the least restrictive setting consistent with their best interest, usually with a family member. *See Flores v. Sessions*, 862 F.3d 880-81 (9th Cir. 2017) ("Like the Settlement, the HSA and TVPRA emphasize placing children in the least restrictive environment, and require that the government ensure that they receive safe and appropriate care"). This Court has also previously rejected this rationale. *Flores v. Sessions*, 2017 WL 6060252, at *18 (C.D. Cal. June 27, 2017) (Doc # 363) ("This purported lack of institutional resources to screen is no excuse for non-performance. Defendants entered into the *Flores* Agreement and now they do not

C. <u>The Final Rule strips accompanied children of their right to prompt,
state-licensed, and non-secure placement in violation of Settlement
¶¶ 6 and 19</u>.

As did the proposed regulations, the Final Rule would eliminate the

Settlement's requirement that a state child welfare agency must license DHS

detention facilities as suitable for the placement of minors. Settlement ¶ 12A states

that "all minors [shall be placed in licensed facilities] pursuant to Paragraph 19 as

expeditiously as possible." *Id*. Settlement ¶ 19 in turn states "[i]n any case in which

[Defendants] do[ ] not release a minor pursuant to Paragraph 14 . . . such minor

shall be placed temporarily in a licensed program until such time as release can be

effected in accordance with Paragraph 14 . . . or until the minor's immigration

proceedings are concluded . . . ." *Id*. Settlement ¶ 6 defines a licensed program as

"any program, agency or organization that is licensed by an appropriate State

agency to provide residential, group, or foster care services for dependent children,

including a program operating group homes, foster homes, or facilities for special

needs minors." *Id*. A licensed program "must" also meet those standards for

licensed programs set forth in Exhibit 1 attached to the. Settlement. *Id*. All facilities

operated by licensed programs "shall be non-secure as required under state law

. . . ." *Id*.

Under Final Rule 8 C.F.R. § 236.3(b)(9), if a state will not license a "family

residential center," DHS will detain children in it regardless.[9] Defendants will

---

want to perform—but want this Court to bless the breach.").

[9] While the government constructs an image of Family Residential Centers as
harmless – even desirable – in the Final Rule commentary, *see* 84 Fed. Reg. 44,400
(describing the environment as a "dormitory setting" where families live in "suites"
and access "a variety of indoor and outdoor daily recreation activities"), the reality
profoundly contradicts this narrative. *See* Decl. of Bridget Cambria, ¶¶ 18-25, 31-
42 (describing Berks County Residential Center's locked doors throughout the
facility, regimented control of children and families' movement within the facility,

1  themselves decide whether their "family residential centers" are eligible or

2  ineligible for licenses depending on the policies and practices they adopt at these

3  facilities.

4      In lieu of state licensing—and the independent review required to obtain a

5  license and periodic monitoring to maintaining it—DHS would "employ an

6  [unidentified] entity outside of DHS that has relevant audit experience to ensure

7  compliance with [unidentified] family residential standards established by ICE." 84

8  Fed. Reg. at 44526. This hardly is consistent with or implements the Settlement

9  which simply states class members shall be placed "in a licensed program until such

10  time as release can be effected in accordance with Paragraph 14 … or until the

11  minor[s'] immigration proceedings are concluded …"

12      Though Defendants assert that the Final Rule would "provide materially

13  identical standards as what the [Settlement] and state licensing would otherwise

14  require," 84 Fed. Reg. 44,394, such "self-licensing" of self-selected policies is a far

15  cry from what the Parties agreed. In addition, even if Defendants provide

16  "materially identical standards" as the Settlement requires,[10] little would prevent

17  them from amending their standards shortly after the Settlement terminated.  Such

invasive bed checks every 15 minutes throughout the night, restriction of children and families' access to legal counsel, and adverse mental and physical health effects); Decl. of Andrea Meza, ¶¶ 5, 10-15, 27-34 (describing Karnes County Residential Center's lack of adequate medical care, regimented control of children and families' movement within the facility, restriction of children and families' access to legal counsel, and lack of adequate food leading to frequent illness, amongst other things.)

[10] Defendants' standards are apparently undergoing review, but they are woefully inadequate in their current form. *See* 84 Fed. Reg. 44,418 ("Existing family residential standards were created with a view to care for vulnerable populations such as minors. DHS is currently working on updating these standards to implement further improvements at FRCs.").

1    standards are not included in the Final Rule and therefore will not have the force of

2    regulations.

3         The Settlement obviously *could* have allowed the former -INS to set its own

4    standards and outsource monitoring for detention facilities in states that refused to

5    license the type of facilities the INS wished to operate. But it does not. Instead, the

6    Settlement requires independent *state* child welfare agencies to determine and

7    monitor whether a facility's policies and practices meet *state* licensing standards. If

8    facilities do not meet state licensing standards, "class members cannot be housed in

9    these facilities except as permitted by the Agreement." Doc # 177, *Flores v.*

10   *Johnson*, 212 F. Supp. 3d 864, 877 (C.D. Cal. 2015); *see generally* Brief of 18

11   Cities and Counties as *Amici Curiae* in Support of Plaintiffs' Motion to Enforce

12   Settlement (Doc. #522) (explaining importance of state licensure framework to

13   child welfare and safety). Plaintiffs previously explained that state licensing is a

14   bedrock protection of the Settlement and that, as this Court has held, Defendants

15   may not escape licensing simply because states have deemed some DHS detention

16   facilities inherently unsuitable for dependent children.

17        Having failed to persuade any court that they should be permitted to detain

18   children indefinitely in unlicensed facilities, Defendants now attempt an end-run

19   around the Settlement by issuing regulations entirely inconsistent with the

20   Settlement. As this Court has succinctly stated: "That is not how contracts work."

21   *Flores v. Sessions*, 2017 WL 6060252, at *18 (C.D. Cal. June 27, 2017) (Doc. #

22   363).

23        Such an unlawful shift in policy would be devastating to children's health,

24   safety, and well-being. As explained by former Acting Assistant Secretary of the

25   Administration for Children and Families, Mark Greenberg, state licensing helps

26   ensure that detention facilities comply with "important requirements to protect the

27

28
                                                    SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
                                                       MOTION TO ENFORCE SETTLEMENT
                                                            CV 85-4544-DMG(AGRx)

1   safety of children in its care." Decl. of Mark Greenberg, ¶ 9.[11]

2      D.   The Final Rule guts children's right to neutral and detached review of
3            dangerousness and flight-risk.

4      This Court will no doubt recall that Settlement ¶ 24A requires Defendants to

5   afford children a "bond redetermination" hearing at which a neutral and detached

6   decisionmaker—an immigration judge—reviews whether they are too dangerous to

7   release. *See* Order re: Plaintiffs' Motion to Enforce, Jan. 20, 2017 (Doc. #318),

8   *aff'd*, *Flores v. Sessions*, 862 F.3d 863 (9th Cir. 2017). Affirming, the Ninth Circuit

9   held, "the bond hearing under Paragraph 24A is *a fundamental protection*

10  *guaranteed to unaccompanied minors.*" 862 F.3d at 867 (emphasis added).

11     The Final Rule would eliminate the right of accompanied children whom

12  DHS places in expedited removal—the vast majority—to bond hearings entirely.

13  Final Rule 8 C.F.R. § 263.3(m) ("Minors in DHS custody who are not in section

14  240 proceedings are ineligible to seek review by an immigration judge of their DHS

15  _____

16  [11] Changed circumstances, not established in the Final Rule, may entitle a party to
    avoid a consent decree (or any equity decree) when continued enforcement of the
17  decree would be a grievous wrong and would thus be inequitable. This requirement
    is codified in Fed. R. Civ. P. 60(b)(5). Rule 60(b)(5) is also satisfied where a
18  change in the law brings the terms of the consent decree in conflict with statutory
    objectives. That is also not the case here. The party seeking modification of a
19
    consent decree under Fed. R. Civ. P. 60(b)(5) bears the burden of showing that a
20  significant change either in factual conditions or in law warrants revision of the
    decree. *See generally Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 388
21  (1992). Changed factual circumstances may warrant modification of a consent
22  decree when they make compliance with the decree substantially more onerous, or
    when enforcement of the decree without modification would be detrimental to the
23  public interest. For a change in law, Defendants must demonstrate that "the
    statutory or decisional law has changed to make legal what the decree was designed
24
    to prevent." *Rufo*, 502 U.S at 388. Neither Defendants' commentary accompanying
25  it nor the text of the Final Rule establish that a significant change in unexpected
26  factual conditions or federal statutes warrants revision of the decree by way of
    implementation of the Final Rule.
27

28

1  custody determinations.").[12]

2        As for unaccompanied children, Final Rule 45 C.F.R. § 410.810 would

3  undermine ¶ 24A in multiple ways: It would require them to affirmatively request a

4  hearing; it would *not* require ORR to commence a hearing within any time

5  certain;[13] and when a hearing is convened, an HHS employee of unspecified rank,

6  qualification and experience—not an immigration judge—would determine whether

7  ORR may continue to confine the child on account of dangerousness or flight-risk.

8        Had Plaintiffs settled for the pro forma "process" § 410.810 prescribes, the

9  Settlement would not expressly guarantee class members a "hearing *before an*

10  *immigration judge in every case*, unless the minor indicates on the Notice of

11  Custody Determination form that he or she *refuses such a hearing*." Settlement

12  ¶ 24A (emphasis added). Here again, the Final Rule patently breaches Settlement

13  ¶ 9.

14        E.    The Final Rule contrives to supplant children's enforceable Settlement
15              rights with aspirational declarations immune from judicial review.

16        Plaintiffs have previously explained that, even where Defendants' proposed

17  rule nominally sought to "implement" the Settlement, it consistently replaced the

18  _____

19  [12] Access to bond hearings for children in removal proceedings under section 240 of
    the Immigration and Naturalization Act would be allowed only to the extent
20  permitted by a separate regulation, 8 C.F.R. § 1003.19. 84 Fed. Reg. 44,529 (to be
    codified at 8 C.F.R. § 236.3(m)). Under this provision, children who are "arriving
21  aliens"—such as asylum seekers that are encountered at a port of entry—would be
22  denied independent review of the need to detain them.

23  [13] In contrast, ¶ 24A hearings are governed by, *inter alia*, the Immigration Court
24  Practice Manual, which provides that upon being notified that an individual wishes
    to be heard on the matter of his or her detention, "the Immigration Court schedules
25  the hearing for *the earliest possible date*." *See* Office of the Chief Immigration
26  Judge, IMMIGRATION COURT PRACTICE MANUAL, § 9.3(d), *available at*
    www.justice.gov/eoir/office-chief-immigration-judge-0 (last visited March 2, 2016)
27  (emphasis added).

28

imperative "shall" as used in the Settlement with aspirational declarations calculated to allow Defendants to violate the regulations with impunity. *See* Plaintiffs' Memorandum at 13-15.

The Final Rule continues the artifice, deleting all of the "shall" language noted below (as well as in numerous other provisions noted in Exhibit A), replacing it with discretionary terms:

- "The INS **shall assess** minors to determine if they have special needs and, if so, **shall place** such minors, whenever possible, in licensed programs in which the INS places children without special needs, but which provide services and treatment for such special needs." Settlement ¶ 7. *Compare with* Final Rule 45 C.F.R. § 410.208 ("ORR **assesses** each UAC to determine if he or she has special needs, and if so, **places** the UAC, whenever possible, in a licensed program in which ORR places unaccompanied alien children without special needs, but which provides services and treatment for such special needs.").

- "…The INS **shall place** each detained minor in the least restrictive setting appropriate to the minor's age and special needs . . . ." Settlement ¶ 11. *Compare with* Final Rule 45 C.F.R. § 410.201(a) ("ORR **places** each UAC in the least restrictive setting that is in the best interest of the child and appropriate to the UAC's age and special needs . . . .").

- "Whenever the INS takes a minor into custody, it **shall expeditiously process** the minor and shall provide the minor with a notice of rights, including the right to a bond redetermination hearing if applicable." Settlement ¶ 12A. *Compare with* Final Rule 8 C.F.R. § 236.3(g)(2)(i) ("Following the apprehension of a minor or UAC, DHS **will process**[14] the minor or UAC **as expeditiously as possible**.").

---

[14] The Supreme Court has distinguished descriptive "will" statements from mandatory "shall" statements. *See Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 69, (2004) (concluding that a statute's requirement that an agency "shall" act in accordance with a land use plan was a mandatory statement, but that a statement in the land use plan about what the agency "will" do was not "a binding commitment"); *see also Tin Cup, LLC v. United States Army Corps of Engineers*, 904 F.3d 1068, 1074 (9th Cir. 2018) (finding that the 1993 Budget Act statement

1

2    • "...in the event of an emergency or influx of minors into the United States, in
3    which case the INS **shall place** all minors pursuant to Paragraph 19 as
     expeditiously as possible . . . ." Settlement ¶ 12A(3). *Compare with* Final
4    Rule 45 C.F.R. § 410.209 ("In the event of an emergency or influx that
     prevents the prompt placement of UAC in licensed programs, ORR **makes**
5    **all reasonable efforts to place** each UAC in a licensed program as
6    expeditiously as possible . . . .").

7    • "Where the INS determines that the detention of the minor is not required
8    either to secure his or her timely appearance before the INS or the
     immigration court, or to ensure the minor's safety or that of others, the INS
9    **shall release** a minor from its custody without unnecessary delay, in the
     following order of preference, to . . . ." Settlement ¶ 14. *Compare with* Final
10   Rule 45 C.F.R. § 410.301(a) ("ORR **releases** a UAC to an approved sponsor
11   without unnecessary delay. . . ."); 8 C.F.R. § 212.5(b)(3)(ii) ("Minors **may be**
12   **released** to a parent, legal guardian, or adult relative . . . .").

13   • "Upon taking a minor into custody, the INS, or the licensed program in
14   which the minor is placed, shall make and record the prompt and continuous
     efforts on its part toward **family reunification** and the release of the minor
15   pursuant to Paragraph 14 above. Such efforts at family reunification **shall**
16   **continue** so long as the minor is in INS custody." Settlement ¶ 18. *Compare*
     *with* Final Rule 45 C.F.R. § 410.201(f) ("ORR makes and records the prompt
17   and continuous efforts on its part toward family reunification. ORR
18   **continues** such efforts at family reunification for as long as the minor is in
     ORR custody.").
19

20   (Emphasis added throughout).

21        The Final Rule thus contrives to transform the Settlement's clear mandates

22   into advisory suggestions.[15]

23   _____

24   that the U.S. Army Corps of Engineers "will continue to use" a 1987 Manual "does
     not bind the Corps to using the 1987 Manual. Had Congress intended to bind the
25   Corps, it would have used the word 'shall'.")

26   [15] These conflicts with the Settlement, as well as numerous others, are presented in
27   detail in the attached chart comparing the Settlement's terms with the language in
     the Final Rule. *See* Exhibit A. The combined impact of the deletion of the

28

III. THE COURT SHOULD ORDER DEFENDANTS TO CONTINUE TO ABIDE BY THE SETTLEMENT.

At the time Plaintiffs filed their motion challenging Defendants' proposed regulations, Defendants had refused to agree that DHS and ORR would abide by the 45-day waiting period the Parties fixed in their stipulation modifying the Settlement's sunset provision, Settlement ¶ 40. As Plaintiffs explained, "It is therefore entirely possible—even probable—that Defendants will implement a final rule materially the same as the Proposed Rule on or shortly after November 6." Plaintiffs' Memorandum at 3 n.3. Compelled to respond to Plaintiffs' motion, Defendants at last pledged to observe the 45-day waiting period, and they have now indicated that the Final Rule will not go into effect until 60 days after its publication date of August 23, 2019.[16] *See* 84 Fed. Reg. 44,398.

The Final Rule grossly violates the Settlement in ways this Court and the Ninth Circuit have repeatedly disapproved, and it would be entirely appropriate to hold Defendants in contempt. At this time, however, Plaintiffs believe a contempt citation unnecessary.

Rather, as stated in the Amended Proposed Order filed concurrently herewith, Plaintiffs respectfully request that the Court order Defendants to adhere to

---

Settlement's mandatory terms, the elimination of Settlement ¶ 24B's guarantee that children have judicial recourse for violations, and the termination of Plaintiffs' counsel's monitoring authority would be a devastating blow to detained children. ORR and DHS would be free to violate even the Final Rule's pallid protections with impunity.

[16] Plaintiffs note that, notwithstanding this 60-day window, absent a ruling that the Final Rule fails to implement the Settlement's terms, Defendants could take the position that the Settlement sunsets before the Final Rule even goes into effect – leaving class members without *any* protections for 15 days. Plaintiffs respectfully request that the Court consider this concern in issuing a ruling.

1  the Settlement notwithstanding the Final Rule.[17] *See, e.g., Hook v. State of Ariz.,*

2  *Dept. of Corrections*, 972 F.2d 1012, 1017 (9th Cir. 1992) (proposed regulations

3  could not be implemented because they were inconsistent with the parties'

4  stipulated agreement); *Citizens for a Better Environment v. Gorsuch*, 718 F.2d

5  1117, 1124-29 (D.C. Cir. 1983) (upholding consent decree that barred agency from

6  using less stringent rulemaking to evade contractual obligations); *Ferrell v. Pierce*,

7  560 F. Supp. 1344, 1364-70 (N.D. Ill. 1983), *aff'd*, 743 F.2d 454 (7th Cir. 1984)

8  (enjoining agency regulations inconsistent with court-approved consent decree

9  regarding HUD mortgages). Such an order should suffice to preserve the

10  Settlement's protections for class members.

11

12

13

14

15

16

17

18

19

20

21

22

23

24  [17] Defendants appear to acknowledge the inevitability that this Court will repudiate the Final Rule, stating: "To the extent any portion of this final rule is declared

25  invalid by a court, the Departments intend for all other parts of the final rule that are capable of operating in the absence of a specific portion that has been invalidated to

26  remain in effect." *See* 84 Fed. Reg. 44,408. Plaintiffs urge the Court to adopt their

27  proposed order in lieu of Defendants' unwieldy severability approach.

28

IV. CONCLUSION

The foregoing has established that the Final Rule cures none of the major conflicts with the Settlement that marked Defendants' proposed rule. Like the proposed regulations, the Final Rule conspicuously fails to implement the Settlement and is grossly inconsistent with it. Its publication is a clear breach of Settlement ¶ 9.

For the foregoing reasons, this Court should grant Plaintiffs' motion and issue an order substantially in the form proposed herewith.

Dated: August 30, 2019

CARLOS R. HOLGUÍN
PETER A. SCHEY
Center for Human Rights &
Constitutional Law

LEECIA WELCH
NEHA DESAI
FREYA PITTS
National Center for Youth Law

HOLLY S. COOPER
U.C. Davis School of Law

KEVIN ASKEW
ELYSE ECHTMAN (ADMITTED PRO HAC VICE)
SHAILA DIWAN RAHMAN (ADMITTED PRO HAC VICE)
RENE KATHAWALA (ADMITTED PRO HAC VICE)
Orrick, Herrington & Sutcliffe LLP

_____
Carlos Holguín

_____
Peter Schey

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

_____ /s/ _____

Elyse Echtman

_____

Leecia Welch

_____

Holly S. Cooper

EXHIBIT A

| Issue[1] | *Flores* Settlement | Final DHS Rule | Final HHS Rule |
|---|---|---|---|
| Definition of "licensed program" | ¶ 6: <br><br> "The term 'licensed program' **shall refer to any program, agency or organization that is licensed by an appropriate State agency to provide** residential, group, or foster care services for dependent children, including a program operating group homes, foster homes, or facilities for special needs minors. A licensed program must also meet those standards for licensed programs set forth in Exhibit 1 attached hereto. All homes and facilities operated by licensed programs, including facilities for special needs minors, **shall be non-secure as required under state law; provided, however, that a facility for special needs minors may maintain that level of security permitted under state law which is necessary for the protection of a minor or others in appropriate circumstances, e.g., cases in which a minor has drug or alcohol problems or is mentally ill. The INS shall make reasonable efforts to provide licensed placements in those geographical areas where the majority of minors are** apprehended, such as southern California, southeast Texas, southern Florida and the northeast corridor." <br><br> Exhibit 1.A: <br><br> "Licensed programs **shall comply with all applicable state child welfare laws and regulations and all state and local building, fire, health and safety codes and shall provide or** | § 236.3(b)(9): <br><br> "Licensed facility means an ICE detention facility that is licensed by the state, county, or municipality in which it is located, if such a licensing process exists. Licensed facilities shall comply with all applicable state child welfare laws and regulations and all state and local building, fire, health, and safety codes. **If a licensing process for the detention of minors accompanied by a parent or legal guardian is not available in the state, county, or municipality in which an ICE detention facility is located, DHS shall employ an entity outside of DHS that has relevant audit experience to ensure compliance with the family residential standards established by ICE. Such audits will take place at the opening of a facility and on a regular, ongoing basis thereafter. DHS will make the results of these audits publicly available."** <br><br> § 236.3(b)(11): <br><br> "**Non-Secure Facility means a facility that meets the definition of non-secure under state law in the state in which the facility is located. If no such definition of nonsecure exists under state law, a DHS facility shall be deemed non-secure if egress from a portion of the facility's building is not prohibited through internal locks within the building or exterior locks and egress from the facility's premises is not prohibited** | § 410.101: <br><br> "Licensed program means any program, **agency, or organization that is licensed by an appropriate State agency to provide** residential, group, or foster care services for dependent children, including a program operating group homes, foster homes, or facilities for special needs UAC. A licensed program must meet the standards set forth in § 410.402. All homes and facilities operated by a licensed program, and facilities for special needs minors, **are non-secure as required under State law. However, a facility for special needs minors may maintain that level of security permitted under State law which is necessary for the protection of a UAC or others in appropriate circumstances, e.g., cases in which a UAC has drug or alcohol problems or is mentally ill."** <br><br> § 410.201(c): <br><br> "**ORR makes reasonable efforts to provide** placements in those geographical areas where DHS apprehends the majority of UAC." <br><br> § 410.402: <br><br> "Licensed programs must: <br> (a) Be licensed by an appropriate State agency to provide residential, group, or foster care services for dependent children. |

---

[1] This Appendix highlights sections of the Final Rule that are inconsistent with the Settlement. It is not intended to be an exhaustive list. Plaintiffs' counsel has bolded text in this Appendix where relevant to emphasize distinctions in the text between the Settlement and Final Rule. Plaintiffs' counsel has also included examples where the language in the Settlement was not incorporated into the Final Rule at all.

| Issue[1] | *Flores* Settlement | Final DHS Rule | Final HHS Rule |
|---|---|---|---|
| | arrange for the following services for each minor in its care. . . . " | **through secure fencing around the perimeter of the building."**<br><br>§ 236.3(i)(4):<br>"**Non-secure, licensed ICE facilities to which minors who are not UACs are transferred** pursuant to the procedures in paragraph (e) of this section **shall abide by applicable family residential standards established by ICE. At a minimum, such standards shall include provisions or arrangements for the following services for each minor who is not a UAC in its care. . . "** | (b) Comply with all applicable state child welfare laws and regulations and all state and local building, fire, health and safety codes;<br>(c) Provide or arrange for the following services for each UAC in care, including. . ." |
| Services for detained minors in licensed programs | Exhibit 1.A:<br>"**Licensed programs shall comply with all applicable state child welfare laws and regulations and all state and local building, fire, health and safety codes** and shall provide or arrange for the following services for each minor in its care. . . .<br>3. An individualized needs assessment which shall **include. . . .**<br>4. Educational services appropriate to the minor's level of development, and communication skills in a structured classroom setting, Monday through Friday, which concentrates primarily on the development of basic academic competencies and secondarily on English Language Training (ELT). **The educational program shall include instruction and educational and other reading materials in such languages as needed.** Basic academic areas should include Science, Social Studies, Math, Reading, Writing and Physical Education. The program shall provide minors with appropriate reading materials in languages other than English for use during the minor's leisure time. . . ." | § 236.3(i)(4):<br>"**Non-secure, licensed ICE facilities to which minors who are not UACs are transferred** pursuant to the procedures in paragraph (e) of this section **shall abide by applicable family residential standards established by ICE. At a minimum, such standards shall include provisions or arrangements for the following services for each minor who is not a UAC in its care. . . .**<br>(iii) An individualized needs assessment which **includes. . . .**<br>(iv) Educational services appropriate to the minor's level of development and communication skills in a structured classroom setting, Monday through Friday, which concentrates primarily on the development of basic academic competencies and secondarily on English Language Training (ELT). The educational program should include subjects similar to those found in U.S. programs and include science, social studies, math, reading, writing, and physical education. The program design should be appropriate for the minor's estimated length of stay and can include the necessary skills appropriate for transition into a | § 410.402:<br>"Licensed programs must:<br>(a) Be licensed by an appropriate State agency to provide residential, group, or foster care services for dependent children.<br>(b) Comply with all applicable state child welfare laws and regulations and all state and local building, fire, health and safety codes;<br>(c) Provide or arrange for the following services for each UAC in care, including. . . .<br>(3) An individualized needs assessment that must include. . . .<br>(4) Educational services appropriate to the UAC's level of development and communication skills in a structured classroom setting, Monday through Friday, which concentrate primarily on the development of basic academic competencies and secondarily on English Language Training (ELT), including:<br>(i) Instruction and educational and other reading materials in such languages as needed;<br>(ii) Instruction in basic academic areas that include science, social studies, math, reading, writing, and physical education; and |

2

| Issue[1] | *Flores* Settlement | Final DHS Rule | Final HHS Rule |
|---|---|---|---|
| | 11. Visitation and contact with family members (regardless of their immigration status) which is structured to encourage such visitation. The staff **shall respect the minor's privacy while reasonably preventing the unauthorized release of the minor**. . . . 13. **Family reunification services designed to identify** relatives in the United States as well as in foreign countries and assistance in obtaining legal guardianship when necessary for the release of the minor. . . . 14. Legal services information regarding the availability of free legal assistance, **the right to be represented by counsel at no expense to the government, the right to a deportation or exclusion hearing before an immigration judge,** the right to apply for political asylum or to request voluntary departure in lieu of deportation." | U.S. school district. The program should also include acculturation and adaptation services which include information regarding the development of social and inter-personal skills that contribute to those abilities as age appropriate . . . . (xi) Visitation and contact with family members (regardless of their immigration status) which is structured to encourage such visitation. The staff **shall respect the minor's privacy while reasonably preventing the unauthorized release of the minor and preventing the transfer of contraband** . . . . **(xiii) When necessary, communication with adult relatives living in the United States and in foreign countries regarding legal issues related to the release and/or removal of the minor** . . . . (xiv) Legal services information regarding the availability of free legal assistance, the right to be represented by counsel at no expense to the Government, the right to apply for asylum or to request voluntary departure . . . . | (ii) The provision to a UAC of appropriate reading materials in languages other than English for use during the UAC's leisure time . . . . (11) Visitation and contact with family members (regardless of their immigration status) which is structured to encourage such visitation. The staff must respect the UAC's privacy while reasonably preventing the unauthorized release of the UAC . . . . (13) Family reunification services designed to identify relatives in the United States as well as in foreign countries and assistance in obtaining legal guardianship when necessary for release of the UAC . . . . (14) Legal services information regarding the availability of free legal assistance, the right to be represented by counsel at no expense to the government, the right to a removal hearing before an immigration judge, the right to apply for asylum or to request voluntary departure in lieu of removal . . . ." |
| Individualized services | Exhibit 1.D: "**A comprehensive and realistic individual plan for the care of each minor must be developed in** accordance with the minor's needs as determined by the individualized need assessment. Individual plans shall be implemented and closely coordinated through an operative case management system." | Excluded from Final Rule | § 410.402: "Licensed programs must . . . (c) Provide or arrange for the following services for each UAC in its care, including: . . . . (3) An individualized needs assessment that must include: . . . . (iii) Identification of the UAC's special needs including any specific problems that appear to require immediate intervention . . . ." |
| Record-keeping | Exhibit 1.E "**Programs shall develop, maintain and safeguard** individual client case records. Agencies | § 236.3(i)(4)(xviii): "**Licensed facilities will maintain and safeguard** individual case records. Agencies and | § 410.402 "Licensed programs must: . . . |

3

| Issue[1] | *Flores* Settlement | Final DHS Rule | Final HHS Rule |
|---|---|---|---|
| | and organizations are **required to develop a** system of accountability which preserves the confidentiality of client information and protects the records from unauthorized use or disclosure." <br><br> Exhibit 1.F <br><br> "Programs **shall maintain** adequate records and make regular reports as required by the INS that permit the INS to monitor and enforce this order and other requirements and standards as the INS may determine are in the **best interests of the** minors." | organizations **will maintain a system of** accountability which preserves the confidentiality of client information and protects the records from unauthorized use or disclosure." <br><br> § 236.3(i)(4)(xix): <br> "Licensed facilities **will maintain adequate** records and make regular reports as required by DHS that permit DHS to monitor and enforce the regulations in this part and other requirements and standards as DHS may determine are in the **best interests of the minors . . . ."** | (g) Develop, maintain and safeguard individual client case records. Licensed programs must develop a system of accountability that preserves the confidentiality of client information and protects the records from unauthorized use or disclosure; and <br> (h) Maintain adequate records and make regular reports as required by ORR that permit ORR to monitor and enforce the regulations in this part and other requirements and standards as ORR may determine are in the **best interests of the UAC."** |
| Placement of minors with special needs | ¶ 7: <br> ". . . The INS shall assess minors to determine if they have special needs and, if so, **shall place** such minors, whenever possible, in licensed programs in which the INS places children without special needs, but which provide services and treatment for such special needs." | Excluded from Final Rule | § 410.208: <br> "ORR assesses each UAC to determine if he or she has special needs, and if so, **places the UAC,** whenever possible, in a licensed program in which ORR places unaccompanied alien children without special needs, but which provides services and treatment for such special needs." <br><br> § 410.402: <br> "Licensed programs must . . . <br> (c) Provide or arrange for the following services for each UAC in its care, including: . . . <br> (3) An individualized needs assessment that must include: . . . <br> (iii) Identification of the UAC's special needs including any specific problems that appear to require immediate intervention. . . ." |
| Definition of "Medium Security Facility" | ¶ 8: <br> ". . . Such a facility may have a secure perimeter but **shall not be equipped** internally with major restraining construction or procedures typically associated with correctional facilities." | N/A | § 410.101: <br> "A staff secure facility may have a secure perimeter but **is not equipped** internally with major restraining construction or procedures typically associated with correctional facilities." |

4

| Issue[1] | *Flores* Settlement | Final DHS Rule | Final HHS Rule |
|---|---|---|---|
| General applicability | ¶ 11:<br>"The INS treats, and **shall continue to treat, all minors** in its custody with dignity, respect and special concern for their **particular vulnerability as minors. The INS shall place each detained minor in the least restrictive setting appropriate to** the minor's age and special needs, provided that such setting is consistent with its interests to ensure the minor's timely appearance before the INS and the immigration courts and to protect the minor's well-being and that of others. Nothing herein shall require the INS to release a minor to any person or agency whom the INS has reason to believe may harm or neglect the minor or fail to present him or her before the INS or immigration courts when requested to do so." | § 236.3(a)(1):<br>"DHS treats all minors and UACs in its custody with dignity, respect and special concern for their **particular vulnerability**."<br><br>§ 236.3(g)(2)(i):<br>"Consistent with 6 CFR 115.114, minors and UACs shall be held in the least restrictive setting appropriate to the minor or UAC's age and special needs, provided that such setting is consistent with the need to protect the minor or UAC's well-being and that of others, as well as with any other laws, regulations, or legal requirements."<br><br>§ 236.3(c):<br>"In any case in which DHS does not release a minor who is not a UAC, said minor shall remain in DHS detention. Consistent with 6 CFR 115.14, minors shall be detained in the least restrictive setting appropriate to the minor's age and special needs, provided that such setting is consistent with the need to protect the minor's well-being and that of others, as well as with any other laws, regulations, or legal requirements." | § 410.102:<br>". . . (c) ORR shall hold UACs in facilities that are safe and sanitary and that are consistent with ORR's concern for the particular vulnerability of minors.<br>(d) Within all placements, UACs shall be treated with dignity, respect, and special concern for their particular vulnerability."<br><br>§ 410.201(a):<br>"ORR places each UAC in the least restrictive setting that is in the best interest of the child and appropriate to the UAC's age and special needs, provided that such setting is consistent with its interests to ensure the UAC's timely appearance before DHS and the immigration courts and to protect the UAC's well-being and that of others." |
| Apprehension and processing of minors | ¶ 12A:<br>"Whenever the INS takes a minor into custody, it **shall expeditiously process the minor and shall provide the minor with a notice of rights, including the right to a bond redetermination hearing if applicable.**" | § 236.3(g)(1):<br>"(i) Notice of rights and request for disposition. Every minor or UAC who enters DHS custody, including minors and UACs who request voluntary departure or request to withdraw their application for admission, will be issued a Form I-770, Notice of Rights and Request for Disposition, which will include a statement that the minor or UAC may make a telephone call to a parent, close relative, or friend. The notice shall be provided, read, or explained to the minor or | N/A |

5

| Issue[1] | *Flores* Settlement | Final DHS Rule | Final HHS Rule |
|---|---|---|---|
| | | UAC in a language and manner that he or she understands. In the event that a minor or UAC is no longer amenable to voluntary departure or to a withdrawal of an application for admission, the minor or UAC will be issued a new Form I-770 or the Form I-770 will be updated, as needed. . . . (2) DHS custodial care immediately following apprehension. (i) Following the apprehension of a minor or UAC, DHS will process the minor or UAC as expeditiously as possible." | |
| Conditions for the detention of minors | ¶ 12A: "Following arrest, the INS shall hold minors in facilities that are safe and sanitary and that are consistent with the INS's concern for the **particular vulnerability of minors.** Facilities will provide access to toilets and sinks, drinking water and food as appropriate, medical assistance if the minor is in need of emergency services, adequate temperature control and ventilation, **adequate supervision to protect minors from others, and contact with family members who were arrested with the minor.**" | § 236.3(g)(2)(i): "**DHS will hold minors and UACs in facilities** that are safe and sanitary and that are consistent with DHS's concern for their **particular vulnerability.** Facilities will provide access to toilets and sinks, drinking water and food as appropriate, access to emergency medical assistance as needed, and adequate temperature and ventilation. DHS will provide **adequate supervision and will provide contact with family members arrested with the minor or UAC in consideration of the safety and well-being of the minor or UAC, and operational feasibility.**" | § 410.102(c): "ORR shall hold UACs in facilities that are safe and sanitary and that are consistent with ORR's concern for the particular vulnerability of minors." § 410.201(d): "Facilities where ORR places UAC will provide access to toilets and sinks, drinking water and food as appropriate, medical assistance if the UAC is in need of emergency services, adequate temperature control and ventilation, adequate supervision to protect UAC from others, and contact with family members who were arrested with the minor." |
| Segregation of detained minors | ¶ 12A: "The INS will segregate unaccompanied minors from unrelated adults. Where such segregation is not immediately possible, an unaccompanied minor will not be detained with an unrelated adult for more than 24 hours." | § 236.3(g)(2)(i)(i): "UACs generally will be held separately from unrelated adult detainees in accordance with 6 CFR 115.14(b) and 6 CFR 115.114(b). In the event that such separation is not immediately possible, UACs in facilities covered by 6 CFR 115.114 may be housed with an unrelated adult for no more than 24 hours except in the case of an emergency." | N/A |

6

| Issue[1] | *Flores* Settlement | Final DHS Rule | Final HHS Rule |
|---|---|---|---|
| Transfer of minors to licensed placements | ¶ 12: " . . . The INS will transfer a minor from a placement under this paragraph 19 (i) within three (3) days, if the minor was apprehended in an INS district in which a licensed program is located and has space available; or (ii) within five (5) days in all other cases; **except**; 1. as otherwise provided under Paragraph 13 or Paragraph 21; 2. as otherwise required by any court decree or court-approved settlement; 3. in the event of an emergency or influx of minors into the United States, in which case the INS shall place all minors pursuant to Paragraph 19 as expeditiously as possible; or 4. where individuals must be transported from remote areas for processing or speak unusual languages such that the INS must locate interpreters in order to complete processing, in which case the INS shall place all such minors pursuant to Paragraph 19 within five (5) business days." | § 236.3(f): "(1) All UACs apprehended by DHS, except those who are processed in accordance with 8 U.S.C. 1232(a)(2), will be transferred to ORR for care, custody, and placement in accordance with 6 U.S.C. 279 and 8 U.S.C. 1232. (2) DHS will notify ORR within 48 hours upon the apprehension or discovery of a UAC or any claim or suspicion that an unaccompanied alien detained in DHS custody is under 18 years of age. (3) Unless exceptional circumstances are present, DHS will transfer custody of a UAC as soon as practicable after receiving notification of an ORR placement, but no later than 72 hours after determining that the minor is a UAC per paragraph (d) of this section. **In the case of exceptional circumstances, DHS shall abide by written guidance detailing the efforts that it will take to transfer all UACs as required by law.**" | N/A |
| Emergency or influx placement | ¶ 12A(3): "in the event of an emergency or influx of minors into the United States, in which case the INS shall place all minors pursuant to Paragraph 19 as **expeditiously as possible . . . .**" | § 236.3(e): "(1) In the case of an influx or emergency, as defined in paragraph (b) of this section, DHS will **transfer a minor who is not a UAC**, and who does not meet the criteria for secure detention pursuant to paragraph (i)(1) of this section, **to a licensed facility as defined in paragraph (b)(9) of this section, which is nonsecure, as expeditiously as possible.** Otherwise, to the extent consistent with law or court order, DHS will transfer such minor within | § 410.202: "ORR places UACs into a licensed program promptly after a UAC is transferred to ORR legal custody, except in the following circumstances: . . . (c) In the event of an emergency or influx of UACs into the United States, in which case ORR **places the UAC as expeditiously as possible in** accordance with § 410.209 . . . ." § 410.209: "In the event of an emergency or influx that prevents the prompt placement of UAC in |

| Issue[1] | *Flores* Settlement | Final DHS Rule | Final HHS Rule |
|---|---|---|---|
| | | three (3) days, if the minor was apprehended in a district in which a licensed program is located, or within five (5) days in all other cases.<br>(2) In the case of an emergency or influx, DHS will abide by written guidance detailing all reasonable efforts that it will take to transfer all minors who are not UACs as expeditiously as possible." | licensed programs, ORR makes **all reasonable efforts to place each UAC in a licensed program as expeditiously as possible** using the following procedures . . . ." |
| Release requirements & Parole | ¶ 14:<br>"Where the INS determines that the detention of the minor is not required either to secure his or her timely appearance before the INS or the immigration court, or to ensure the minor's safety or that of others, the INS **shall release** a minor from its custody without unnecessary delay, in the following order of preference, to:<br>A. a parent;<br>B. a legal guardian;<br>C. an adult relative (brother, sister, aunt, uncle, or grandparent);<br>D. **an adult individual or entity designated by the parent or legal guardian** as capable and willing to care for the minor's well-being in (i) a declaration signed under penalty of perjury before an immigration or consular officer or (ii) such other document(s) that establish(es) to the satisfaction of the INS, in its discretion, the affiant's paternity or guardianship;<br>E. **a licensed program** willing to accept legal custody; or<br>F. **an adult individual or entity seeking custody**, in the discretion of the INS, when it appears that there is no other likely alternative to long term detention and family reunification does not appear to be a reasonable possibility." | § 212.5(b):<br>"The parole of aliens within the following groups who have been or are detained in accordance with § 235.3(c) of this chapter would generally be justified only on a case-by-case basis for "urgent humanitarian reasons[sic] or "significant public benefit," provided the aliens present neither a security risk nor a risk of absconding:<br>. . . (3) Aliens who are defined as minors in § 236.3(b) of this chapter and are in DHS custody. The Executive Assistant Director, Enforcement and Removal Operations; directors of field operations; field office directors, deputy field office directors; or chief patrol agents shall follow the guidelines set forth in § 236.3(j) of this chapter and paragraphs (b)(3)(i) through (ii) of this section in determining under what conditions a minor should be paroled from detention:<br>(i) Minors **may be released** to a parent, legal guardian, or adult relative (brother, sister, aunt, uncle, or grandparent) not in detention.<br>(ii) Minors **may be released** with an accompanying parent or legal guardian who is in detention."<br><br>§ 236.3(j): | § 410.301:<br>"(a) ORR **releases a UAC** to an approved sponsor without unnecessary delay, but may continue to retain custody of a UAC if ORR determines that continued custody is necessary to ensure the UAC's safety or the safety of others, or that continued custody is required to secure the UAC's timely appearance before DHS or the immigration courts.<br>(b) When ORR **releases a UAC** without unnecessary delay to an approved sponsor, it releases in the following order of preference:<br>(1) A parent; (2) A legal guardian; (3) An adult relative (brother, sister, aunt, uncle, or grandparent); (4) An adult individual or entity designated by the parent or legal guardian as capable and willing to care for the UAC's well-being in . . . ." |

8

| Issue[1] | *Flores* Settlement | Final DHS Rule | Final HHS Rule |
|---|---|---|---|
| | | "(1) DHS will make and record prompt and continuous efforts on its part toward the release of the minor who is not a UAC. (2) If a minor who is not a UAC is in expedited removal proceedings (including if he or she is awaiting a credible fear determination), or is subject to a final expedited removal order, custody is governed by § 235.3(b)(2)(iii) or (b)(4)(ii) of this chapter, as applicable. (3) If a minor who is not a UAC is subject to pending removal proceedings under section 240 of the Act, DHS will consider whether to release the minor pursuant to section 212(d)(5) or section 236(a), and the implementing regulations in 8 CFR 212.5 and § 235.3, as applicable. (4) The parole of minors who are not UACs who are detained pursuant to section 235(b)(1)(B)(ii) of the Act or § 235.3(c) of this chapter will generally serve an urgent humanitarian reason warranting release on parole if DHS determines that detention is not required to secure the minor's timely appearance before DHS or the immigration court, or to ensure the minor's safety and well-being or the safety of others. In making this determination, DHS may consider aggregate and historical data, officer experience, statistical information, or any other probative information. The determination whether to parole a minor who is not a UAC is in the unreviewable discretion of DHS. (5) If DHS determines to release a minor who is not a UAC during removal proceedings under section 240 of the Act, the following procedures shall apply: (i) If a parent or legal guardian is available to provide care and physical custody, DHS will make prompt and continuous efforts to release the | |

9

| Issue[1] | *Flores* Settlement | Final DHS Rule | Final HHS Rule |
|---|---|---|---|
| | | minor to that parent or legal guardian. Nothing in this paragraph (j)(5)(i) precludes the release of a minor who is not a UAC to an adult relative (brother, sister, aunt, uncle, or grandparent) who is not in detention and is available to provide care and physical custody. Release of a minor who is not a UAC to an adult relative other than a parent or legal guardian is within the unreviewable discretion of DHS.<br>(ii) Prior to releasing a minor who is not a UAC to an adult relative pursuant to paragraph (j)(5)(i) of this section, DHS will use all available reliable evidence to determine whether the relationship is bona fide. If no reliable evidence is available that confirms the relationship, DHS may continue to keep the minor who is not a UAC in custody or treat the minor as a UAC and transfer the UAC to HHS custody, as outlined in paragraph (f) of this section.<br>(iii) DHS shall assist without undue delay in making transportation arrangements to the DHS office nearest the location of the relative to whom a minor is to be released. DHS may, in its discretion, provide transportation to minors.<br>(iv) Nothing herein shall require DHS to release a minor to any person or agency whom DHS has reason to believe may harm or neglect the minor or fail to present him or her before DHS or the immigration courts when requested to do so." | |
| Transfer of temporary physical custody | ¶ 15:<br>"In the event of an emergency, a custodian may transfer temporary physical custody of a minor prior to securing permission from the INS but shall notify the INS of the transfer as soon as is practicable thereafter, but in all cases within 72 hours. For purposes of this Paragraph, examples of | N/A | § 410.302(e)(7):<br>"**Receive written permission from ORR** if the sponsor decides to transfer legal custody of the UAC to someone else. Also, in the event of an emergency (e.g., serious illness or destruction of the home), a sponsor may transfer temporary physical custody of the UAC prior to securing |

10

| Issue[1] | *Flores* Settlement | Final DHS Rule | Final HHS Rule |
|---|---|---|---|
| | an "emergency" shall include the serious illness of the custodian, destruction of the home, etc. In all cases where the custodian in writing seeks written permission for a transfer, the District Director **shall promptly respond to the request.**" | | permission from ORR, but the sponsor must notify ORR as soon as possible and no later than 72 hours after the transfer; . . . ." |
| Efforts for family reunification required | ¶ 18: "Upon taking a minor into custody, the INS, or the licensed program in which the minor is placed, **shall make and record the prompt and continuous** efforts on its part toward **family reunification and** the release of the minor pursuant to Paragraph 14 above. Such efforts at family reunification **shall continue so long as the minor is in INS custody.**" | § 236.3(i)(X): "**DHS will make and record prompt and** continuous efforts on its part toward the **release of the minor who is not a UAC.**" | § 410.201(f): "ORR **makes and records the prompt and** continuous efforts on its part toward family reunification. ORR **continues** such efforts at family reunification for as long as the minor is in ORR custody." <br><br> § 410.302(a): "The licensed program providing care for the UAC shall make and record the prompt and continuous efforts on its part towards family reunification and the release of the UAC pursuant to the provisions of this section." |
| Secure placement criteria | ¶ 21: " A minor may be held in or transferred to a suitable State or county juvenile detention facility or a secure INS detention facility, or INS-contracted facility, having separate accommodations for minors whenever the **District Director or Chief Patrol Agent determines that the minor:** A. has been charged with, is chargeable, or has been convicted of a crime, or is the subject of delinquency proceedings, has been adjudicated delinquent, or is chargeable with a delinquent act; provided, however, that this provision shall not apply to any minor whose offense(s) fall(s) within either of the following categories: | § 236.3(i)(X): "(1) A minor who is not a UAC referenced under this paragraph (i)(1) may be held in or transferred to a suitable state or county juvenile detention facility, or a secure DHS detention facility, or DHS contracted facility having separate accommodations for minors, whenever the **Field Office Director and the ICE supervisory or management personnel have probable cause to believe that the minor:** (i) Has been charged with, is chargeable with, or has been convicted of a crime or crimes, or is the subject of delinquency proceedings, has been adjudicated delinquent, or is chargeable with a delinquent act or acts, that fit within a pattern or practice of criminal activity; | § 410.203: "(a) Notwithstanding § 410.202 of this part, ORR may place a UAC in a secure facility if the UAC: (1) Has been charged with, is chargeable, or has been convicted of a crime, or is the subject of delinquency proceedings, has been adjudicated delinquent, or is chargeable with a delinquent act, and where ORR deems those circumstances demonstrate that the UAC poses a danger to self or others. "Chargeable" means that ORR has probable cause to believe that the UAC has committed a specified offense. The provision in this paragraph (a)(1) does not apply to a UAC whose offense is: (i) An isolated offense that was not within a pattern or practice of criminal activity and did not |

11

| Issue[1] | *Flores* Settlement | Final DHS Rule | Final HHS Rule |
|---|---|---|---|
| | i) Isolated offenses that (1) were not within a pattern or practice of criminal activity and (2) did not involve violence against a person or the use or carrying of a weapon (Examples: breaking and entering, vandalism, DUI, etc. This list is not exhaustive.);<br>ii) Petty offenses, which are not considered grounds for stricter means of detention in any case (Examples: shoplifting, joy riding, disturbing the peace, etc. This list is not exhaustive.);<br>**As used in this paragraph, "chargeable" means that the INS has probable cause to believe that the individual has committed a specified offense;**<br>B. has committed, or has made credible threats to commit, a violent or malicious act (whether directed at himself or others) while in INS legal custody or while in the presence of an INS officer;<br>C. has engaged, while in a licensed program, in conduct that has proven to be unacceptably disruptive of the normal functioning of the licensed program in which he or she has been placed and removal is necessary to ensure the welfare of the minor or others, as determined by the staff of the licensed program (Examples: drug or alcohol abuse, stealing, fighting, intimidation of others, etc. This list is not exhaustive.);<br>D. is an escape-risk; or<br>**E. must be held in a secure facility for his or her own safety, such as when the INS has reason to believe that a smuggler would abduct or coerce a particular minor to secure payment of smuggling fees."** | (ii) Has been charged with, is chargeable with, or has been convicted of a crime or crimes, or is the subject of delinquency proceedings, has been adjudicated delinquent, or is chargeable with a delinquent act or acts, that involve violence against a person or the use or carrying of a weapon;<br>(iii) Has committed, or has made credible threats to commit, a violent or malicious act (whether directed at himself or others) while in **federal or state government custody** or while in the presence of an immigration officer;<br>(iv) Has engaged, while in the licensed facility, in conduct that has proven to be unacceptably disruptive of the normal functioning of the licensed facility in which the minor has been placed and transfer to another facility is necessary to ensure the welfare of the minor or others, as determined by the staff of the licensed facility;<br>(v) Is determined to be an escape-risk pursuant to paragraph (b)(6) of this section; or<br>(vi) Must be held in a secure facility for his or her own safety." | involve violence against a person or the use or carrying of a weapon; or<br>(ii) A petty offense, which is not considered grounds for stricter means of detention in any case;<br>(2) While in DHS or ORR's custody or while in the presence of an immigration officer, has committed, or has made credible threats to commit, a violent or malicious act (whether directed at himself/herself or others);<br>(3) Has engaged, while in a licensed program or staff secure facility, in conduct that has proven to be unacceptably disruptive of the normal functioning of the licensed program or staff secure facility in which he or she has been placed and removal is necessary to ensure the welfare of the UAC or others, as determined by the staff of the licensed program or staff secure facility (e.g., drug or alcohol abuse, stealing, fighting, intimidation of others, or **sexually predatory behavior**), and ORR determines the UAC poses a danger to self or others based on such conduct;<br>(4) For purposes of placement in a secure residential treatment centers[sic] (RTC), if a licensed psychologist or psychiatrist determines that the UAC poses a risk of harm to self or others; or<br>(5) Is otherwise a **danger to self or others.**" |

12

| Issue[1] | *Flores* Settlement | Final DHS Rule | Final HHS Rule |
|---|---|---|---|
| Escape risk | ¶ 22: "The term "escape-risk" means that there is a serious risk that the minor will attempt to escape from custody. Factors to consider when determining whether a minor is an escape-risk or not include, but are not limited to, whether: A. the minor is currently under a final order of deportation or exclusion; B. the minor's immigration history includes: a prior breach of a bond; a failure to appear before the INS or the immigration court; evidence that the minor is indebted to organized smugglers for his transport; or a voluntary departure or a previous removal from the United States pursuant to a final order of deportation or exclusion; C. the minor has previously absconded or attempted to abscond from INS custody." | § 236.3(b)(6): "Escape-risk means that there is a serious risk that the minor will attempt to escape from custody. Factors to consider when determining whether a minor is an escape-risk include, but are not limited to, whether: (i) The minor is currently subject to a final order of removal; (ii) The minor's immigration history includes: A prior breach of bond, a failure to appear before DHS or the immigration courts, evidence that the minor is indebted to organized smugglers for his transport, or a voluntary departure or previous removal from the United States pursuant to a final order of removal; or (iii) The minor has previously absconded or attempted to abscond from state or Federal custody." | § 410.101: "Escape risk means there is a serious risk that an unaccompanied alien child (UAC) will attempt to escape from custody." <br><br> § 410.204: "When determining whether a UAC is an escape risk, ORR considers, among other factors, whether: (a) The UAC is currently under a final order of removal; (b) The UAC's immigration history includes: (1) A prior breach of a bond; (2) A failure to appear before DHS or the immigration court; (3) Evidence that the UAC is indebted to organized smugglers for his or her transport; or (4) A voluntary departure or a previous removal from the United States pursuant to a final order of removal; and (c) The UAC has previously absconded or attempted to abscond from state or federal custody." |
| Prohibition against default secure placement | ¶ 23: "The INS will not place a minor in a secure facility pursuant to Paragraph 21 if there are less restrictive alternatives that are available and appropriate in the circumstances, such as transfer to (a) a medium security facility which would **provide intensive staff supervision and counseling services** or (b) another licensed **program.** All determinations to place a minor in a secure facility will be reviewed and approved by the regional juvenile coordinator." | § 236.3(d)(2): "DHS will not place a minor who is not a UAC in a secure facility pursuant to paragraph (i)(1) if there are less restrictive alternatives that are available and appropriate in the circumstances, such as transfer to a facility which would provide intensive staff supervision and counseling services or another licensed facility. All determinations to place a minor in a secure facility will be reviewed and approved by the ICE Juvenile Coordinator referenced in paragraph (o) of this section. . . ." | § 410.205: "ORR **does not place** a UAC in a secure facility pursuant to § 410.203 if less restrictive alternatives that are available and appropriate under the circumstances. ORR may place a UAC in a staff secure facility or another licensed program as an alternative to a secure facility." <br><br> § 410.203: ". . . (b) ORR Federal Field Specialists review and approve all placements of UAC in secure facilities consistent with legal requirements. . . ." |

13

| Issue[1] | *Flores* Settlement | Final DHS Rule | Final HHS Rule |
|---|---|---|---|
| Right to a bond hearing | ¶ 24A:<br>"A minor in deportation proceedings shall be afforded a bond redetermination hearing before an immigration judge in every case, unless the minor indicates on the Notice of Custody Determination form that he or she refuses such a hearing" | § 236.3(m):<br>"Bond determinations made by DHS for minors who are in removal proceedings pursuant to section 240 of the Act and who are also in DHS custody may be reviewed by an immigration judge pursuant to 8 CFR part 1236 to the extent permitted by 8 CFR 1003.19. Minors in DHS custody who are not in section 240 proceedings are ineligible to seek review by an immigration judge of their DHS custody determinations." | § 410.810:<br>"(a) A UAC may request that an independent hearing officer employed by HHS determine, through a written decision, whether the UAC would present a risk of danger to the community or risk of flight if released.<br>(1) Requests under this section may be made by the UAC, his or her legal representative, or his or her parent or legal guardian.<br>(2) UACs placed in secure or staff secure facilities will receive a notice of the procedures under this section and may use a form provided to them to make a written request for a hearing under this section.<br>(b) In hearings conducted under this section, HHS bears the initial burden of production to support its determination that a UAC would pose a danger or flight risk if discharged from HHS' care and custody. The burden of persuasion is then on the UAC to show that he or she will not be a danger to the community or flight risk if released, using a preponderance of the evidence standard.<br>(c) In hearings under this section, the UAC may be represented by a person of his or her choosing, at no cost to the government. The UAC may present oral and written evidence to the hearing officer and may appear by video or teleconference. ORR may also choose to present evidence either in writing, or by appearing in person, or by video or teleconference.<br>(d) A hearing officer's decision that a UAC would not be a danger to the community (or risk of flight) if released is binding upon ORR, unless the provisions of paragraph (e) of this section apply. |

14

| Issue[1] | *Flores* Settlement | Final DHS Rule | Final HHS Rule |
|---|---|---|---|
| | | | (e) A hearing officer's decision under this section may be appealed to the Assistant Secretary of the Administration for Children and Families. Any such appeal request shall be in writing, and must be received within 30 days of the hearing officer decision. The Assistant Secretary will reverse a hearing officer decision only if there is a clear error of fact, or if the decision includes an error of law. Appeal to the Assistant Secretary shall not affect a stay of the hearing officer's decision to release the UAC, unless within five business days of such hearing officer decision, the Assistant Secretary issues a decision in writing that release of the UAC would result in a significant danger to the community. Such a stay decision must include a description of behaviors of the UAC while in care and/or documented criminal or juvenile behavior records from the UAC demonstrating that the UAC would present a danger to community if released. (f) Decisions under this section are final and binding on the Department, and a UAC may only seek another hearing under this section if the UAC can demonstrate a material change in circumstances. Similarly, ORR may request the hearing officer to make a new determination under this section if at least one month has passed since the original decision, and ORR can show that a material change in circumstances means the UAC should no longer be released. (g) This section cannot be used to determine whether a UAC has a suitable sponsor, and neither the hearing officer nor the Assistant Secretary may order the UAC released. (h) This section may not be invoked to determine the UAC's placement while in HHS custody. Nor |

| Issue[1] | *Flores* Settlement | Final DHS Rule | Final HHS Rule |
|---|---|---|---|
| | | | may this section be invoked to determine level of custody for the UAC." |
| Judicial review of placement | ¶ 24B:<br>"Any minor who disagrees with the INS's determination to place that minor in a particular type of facility, or who asserts that the licensed program in which he or she has been placed does not comply with the standards set forth in Exhibit 1 attached hereto, **may seek judicial review in any United States District Court with jurisdiction and venue over the matter to challenge that placement determination** or to allege noncompliance with the standards set forth in Exhibit 1. In such an action, the United States District Court shall be limited to entering an order solely affecting the individual claims of the minor bringing the action." | Excluded from Final Rule | Excluded from Final Rule |
| Notice requirement: unlicensed programs | ¶ 24C:<br>"In order to permit judicial review of Defendants' placement decisions as provided in this Agreement, Defendants **shall provide minors not placed in licensed programs** with a notice of the reasons for housing the minor in a detention or medium security facility." | Excluded from Final Rule | § 410.206:<br>"Within a reasonable period of time, ORR **provides each UAC placed or transferred to a secure or staff secure facility** with a notice of the reasons for the placement in a language the UAC understands."<br><br>§ 410.801(a):<br>"For UACs not placed in licensed programs, ORR shall—within a reasonable period of time— **provide a notice of the reasons for housing the minor in secure or staff secure facility.** Such notice shall be in a language the UAC understands." |
| Notice requirement: detention | ¶ 24D:<br>"The INS **shall promptly provide each minor not released with** (a) INS Form I-770; (b) an | § 236.3(g)(1):<br>"(i) Notice of rights and request for disposition. Every minor or UAC who enters DHS custody, | § 410.801(b):<br>"ORR shall promptly provide each UAC not released with:" |

16

| Issue[1] | *Flores* Settlement | Final DHS Rule | Final HHS Rule |
|---|---|---|---|
| | explanation of the right of judicial review as set out in Exhibit 6, and (c) the list of free legal services providers available in the district pursuant to INS regulations (unless previously given to the minor)." <br><br> Ex. 6: <br> "The INS usually houses persons under the age of 18 in an open setting, such as a foster or group home, and not in detention facilities. If you believe that you have not been properly placed or that you have been treated improperly, **you may ask a federal judge to review your case. You may call a lawyer to help you do this. If you cannot afford a lawyer, you may call one from the list of free legal services given to you with this form."** | including minors and UACs who request voluntary departure or request to withdraw their application for admission, **will be issued a Form I-770, Notice of Rights and Request for Disposition, which will include a statement that the minor or UAC may make a telephone call to a parent, close relative, or friend. The notice shall be provided, read, or explained to the minor or UAC in a language and manner that he or she understands. In the event that a minor or UAC is no longer amenable to voluntary departure or to a withdrawal of an application for admission, the minor or UAC will be issued a new Form I-770 or the Form I-770 will be updated, as needed.** (ii) Notice of Right to Judicial Review. Every minor who is not a UAC who is transferred to or remains in a DHS detention facility will be provided with a Notice of Right to Judicial Review, which informs the minor of his or her right to seek judicial review in United States District Court with jurisdiction and venue over the matter if the minor believes that his or her detention does not comply with the terms of paragraph (i) of this section. The Notice shall be read and explained to the minor in a language and manner that he or she understands. (iii) Current list of counsel. Every minor who is not a UAC who is transferred to or remains in a DHS detention facility will be provided the free legal service provider list, prepared pursuant to section 239(b)(2) of the Act." | (1) A list of free legal services providers compiled by ORR and that is provided to UAC as part of a Legal Resource Guide for UAC (unless previously given to the UAC); and (2) The following **explanation of the right of potential review:** "ORR usually houses persons under the age of 18 in an open setting, such as a foster or group home, and not in detention facilities. If you believe that you have not been properly placed or that you have been treated improperly, **you may call a lawyer to seek assistance. If you cannot afford a lawyer, you may call one from the list of free legal services given to you with this form.'"" |
| Exhaustion of procedures | ¶ 24E: <br> **"Exhausting the procedures established in Paragraph 37 of this Agreement shall not be a precondition to the bringing of an action under this paragraph in any United States District Court.** | Excluded from Final Rule | Excluded from Final Rule |

17

Case 2:85-cv-04544-DMG-AGR   Document 634   Filed 08/30/19   Page 45 of 46   Page ID
#:32902

| Issue[1] | *Flores* Settlement | Final DHS Rule | Final HHS Rule |
|---|---|---|---|
| | Prior to initiating any such action, however, the minor and/or the minors' attorney shall confer telephonically or in person with the United States Attorney's office in the judicial district where the action is to be filed, in an effort to informally resolve the minor's complaints without the need of federal court intervention." | | |
| Transfer of UACs for release | ¶ 26: "The INS shall assist without undue delay in making transportation arrangements to the INS office nearest the location of the person or facility to whom a minor is to be released pursuant to Paragraph 14. The INS may, in its discretion, provide transportation to minors." | § 236.3(i)(iii): "DHS shall assist without undue delay in making transportation arrangements to the DHS office nearest the location of the relative to whom a minor is to be released. DHS may, in its discretion, provide transportation to minors." | § 410.500(b) "When ORR plans to release a UAC from its custody under the family reunification provisions at §§ 410.201 and 410.302, ORR assists without undue delay in making transportation arrangements. ORR may, in its discretion, provide transportation to UAC." |
| Procedures upon placement transfer | ¶ 27: "Whenever a minor is transferred from one placement to another, the minor shall be transferred with all of his or her possessions and legal papers; provided, however, that if the minor's possessions exceed the amount permitted normally by the carrier in use, the possessions will be shipped to the minor in a timely manner. No minor who is represented by counsel shall be transferred without advance notice to such counsel, except in unusual and compelling circumstances such as where the safety of the minor or others is threatened or the minor has been determined to be an escape-risk, or where counsel has waived such notice, in which cases notice shall be provided to counsel within 24 hours following transfer." | § 236.3(k): "(1) Possessions. Whenever a minor or UAC is transferred from one ICE placement to another, or from an ICE placement to an ORR placement, he or she will be transferred with all possessions and legal papers; provided, however, that if the minor or UAC's possessions exceed the amount normally permitted by the carrier in use, the possessions shall be shipped to the minor or UAC in a timely manner. (2) Notice to counsel. A minor or UAC who is represented will not be transferred from one ICE placement to another, or from an ICE placement to an ORR placement, until notice is provided to his or her counsel, except in unusual and compelling circumstances, such as where the safety of the minor or UAC or others is threatened or the minor or UAC has been determined to be an escape-risk, or where counsel has waived such notice. In unusual and compelling circumstances, | § 410.600: "(a) ORR transfers a UAC from one placement to another with all of his or her possessions and legal papers. (b) If the UAC's possessions exceed the amount permitted normally by the carrier in use, the possessions are shipped to the UAC in a timely manner. (c) ORR does not transfer a UAC who is represented by counsel without advance notice to his or her legal counsel. However, ORR may provide notice to counsel within 24 hours of the transfer in unusual and compelling circumstances such as: (1) Where the safety of the UAC or others has been threatened; (2) The UAC has been determined to be an escape risk consistent with § 410.204; or (3) Where counsel has waived such notice." |

18

| Issue[1] | *Flores* Settlement | Final DHS Rule | Final HHS Rule |
|---|---|---|---|
| | | notice will be sent to counsel within 24 hours following the transfer." | |
| Collection of statistical information | ¶28A: "An INS Juvenile Coordinator in the Office of the Assistant Commissioner for Detention and Deportation shall monitor compliance with the terms of this Agreement and shall maintain an up-to-date record of all minors who are placed in proceedings and remain in INS custody for longer than 72 hours. Statistical information on such minors shall be collected weekly from all INS district offices and Border Patrol stations. Statistical information will include at least the following: (1) biographical information such as each minor's name, date of birth, and country of birth, (2) date placed in INS custody, (3) each date placed, removed or released, (4) to whom and where placed, transferred, removed or released, (5) immigration status, and (6) hearing dates. The INS, through the Juvenile Coordinator, shall also collect information regarding the reasons for every placement of a minor in a detention facility or medium security facility." | 236.3(o): "(1) CBP and ICE each shall identify a Juvenile Coordinator for the purpose of monitoring compliance with the terms of this section. (2) In addition to the monitoring required by paragraph (o)(1) of this section, the Juvenile Coordinators shall collect and periodically examine relevant statistical information about UACs and minors who remain in CBP or ICE custody for longer than 72 hours. Such statistical information may include but not necessarily be limited to: (i) Biographical information; (ii) Dates of custody; and (iii) Placements, transfers, removals, or releases from custody, including the reasons for a particular placement." | Excluded from Final Rule |

19