CHAPMAN AND CUTLER LLP
PETER BACH-Y-RITA, SBN 267442
bachyrita@chapman.com
595 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 278-9037

JOSEPH P. LOMBARDO *
lombardo@chapman.com
SARA T. GHADIRI*
ghadiri@chapman.com
ERIC S. SILVESTRI*
silvest@chapman.com
111 West Monroe Street, 16th Floor
Chicago, Illinois 60603
Telephone: (312) 845-3000
**pro hac vice* forthcoming

*Attorneys for Lead Amicus
   Children's Rights*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>WILLIAM P. BARR, Attorney General of the United States, *et al.*,<br><br>    Defendants. | Case No. 2:85-cv-4544-DMG (AGR)<br><br>***EX PARTE* APPLICATION FOR LEAVE TO FILE BRIEF OF CHILDREN'S ADVOCACY ORGANIZATIONS AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT NOTWITHSTANDING PUBLICATION OF FINAL RULE** |

    Children's Rights, The Center for the Study of Social Policy, The Center on Children and Families at the University of Florida Fredric G. Levin College of Law,

The Children's Advocacy Institute of the University of San Diego School of Law, First Star, Inc., The Juvenile Law Center, The Center for Children & Youth Justice, and The Children's Law Center, Inc. (*"Amici Children's Advocacy Organizations"*), through lead *amicus* Children's Rights, hereby submit this *ex parte* application for an order granting leave to participate as *amici curiae* in support in support of Plaintiffs' Motion to Enforce Settlement filed November 2, 2018. *See* ECF. No. 516. The proposed brief of *amici curiae* is attached to this application as Exhibit A. *Amici* Children's Advocacy Organizations understand that pursuant to ECF. No. 525, the Court deferred ruling on ECF No. 516, and ordered that parties "file simultaneous supplemental briefing addressing whether the regulations are consistent with the terms of the [Flores Settlement Agreement (*"FSA"*)]."[1] This brief is intended to support therefore not only ECF No. 516, but also Plaintiffs' supplemental briefing as ordered by ECF. No. 525.

As required by Local Civil Rules L.R. 7-19 and 7-19.1, *Amici* Children's Advocacy Organizations, through lead *amicus* Children's Rights, contacted counsel for Plaintiffs and the federal government in order to ascertain the parties' positions on this application. Plaintiffs and the federal government both consented to the participation of *Amici* Children's Advocacy Organizations.[2]

The FSA establishes the conditions under which children can be incarcerated in immigration detention as well as requirements that ensure those children basic

---

[1] *Flores v. Reno*, Stipulated Settlement Agreement, CV 85-4544-RJK(Px) (C.D. Cal. Jan. 28, 1997).

[2] Children's Rights counsel contacted the following counsel: (1) for Plaintiffs: Rene Kathawala, Orrick Herrington and Sutcliffe LLP, 51 West 52nd Street, New York, NY 10019-6142 Phone: 212-506-5100, Email: rkathawala@orrick.com and (2) for the Federal Government, Sarah B. Fabian, U.S. Department of Justice, Office of Immigration Litigation, P.O. Box 868, Ben Franklin Station, Washington, D.C. 20044, Phone: 202-532-4824, Email: sarah.b.fabian@usdoj.gov.

standards of care and protection. *See generally*, FSA. One of those requirements is that children be cared for in state-licensed facilities. FSA, ¶ 6, 19. The FSA's requirement for state licensing provides critical expertise in the oversight of child welfare programs, ensuring that DHS's operations provide minimum standards of care for the health and safety of immigrant children. *See, e.g.*, *Flores v. Johnson*, 212 F. Supp.3d 864, 879 (C.D. Cal. 2015) (licensing provision provides "essential protection of regular and comprehensive oversight by an independent child welfare agency").[3] However, the Final Rules promulgated by the Department of Homeland Security (*"DHS"*) and the Department of Health and Human Services' (*"HHS"* and together with DHS, the *"Departments"*),[4] in practice remove the safeguards promised by that requirement, posing a significant risk of great harm and inhumane treatment to children and impermissibly deviating from the FSA's legally binding requirements.

The FSA wisely requires state law protections that are based on federally mandated mandatory guidelines and informed decades of research and experience regarding child welfare policy and practice. *See* 42 U.S.C. § 671(a)(10). These state licensing programs delineate the standards that a facility must meet and, critically,

---

[3] For these reasons, courts, including this one, have taken enforcement of the licensing requirement very seriously. *See Flores v. Sessions*, 85-CV-4544 (DMG)(AGRX), 2018 WL 4945000, at *3 (C.D. Cal. July 9, 2018) (rejecting the Government's request for relief from the state licensing requirements as a "fundamental and material breach of the [*Flores* Settlement]"); *Flores v. Johnson*, 212 F. Supp. 3d 864, 881 (C.D. Cal. 2015) *aff'd Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016) (finding DHS in violation of the FSA for holding children in unlicensed and secure facilities); *see also Bunikyte, ex rel. Bunikiene v. Chertoff*, No. A-07-CA-164-SS, 2007 WL 1074070, at *6, *8 (W.D. Tex. Apr. 9, 2007) (finding that [a facility] was unlicensed and thus in violation of the FSA).

[4] Apprehension, Processing, Care, and Custody of Alien Minors and Unaccompanied Alien Children, 84 Fed. Reg. 44392-44535 (Aug. 23, 2019) (to be codified at 8 C.F.R. Parts 212 and 236, 45 C.F.R. 410) (the *"Final Rules"*).

provide a system to monitor the facilities through a combination of on-site inspections, rapid responses to reports of violations, and follow-up to ensure compliance with the licensing standards.[5]

The Final Rules provide none of these types of protections, in most cases functionally eliminating the state licensing requirement[6] and permitting the government to license itself as in compliance with child care standards. *See* 84 Fed. Reg. 44418. Additionally, instead of being informed by child welfare and protection principles, the Final Rules are animated by criminal justice principles that prioritize incarceration and detention over child protection and care, and embrace the very conduct that the Immigration and Customs Enforcement Advisory Committee on Family Residential Centers spoke strongly against.[7] All this, despite the fact that adhering to the FSA is not optional, and the fact that, just in the past year, seven children have died in or shortly after being released from DHS custody.[8] By creating a scheme that endorses indefinite detention of children, the Final Rules make as their

---

[5] *See, e.g.,* OFFICE OF INSPECTOR GENERAL, DEP'T OF HEALTH AND HUMAN SERVS., OEI-02-98-00570, STATE OVERSIGHT OF RESIDENTIAL FACILITIES FOR CHILDREN, 2 (2000).

[6] Under the Final Rules, in states without licensing schemes that specifically address and license facilities that hold entire families instead of just children, DHS may utilize its own "licensed facilities" for minors accompanied by a parent or guardian, and are only required to use state-licensed facilities where states will license family detention centers. *See* 12 C.F.R. 236.3(b)(9). As DHS admits, there are very few (if any, given pending litigation) states that already license family detention centers. *Flores v. Sessions*, CV 85-4544 (DMG)(AGRX), 2018 WL 4945000, at *4 (C.D. Cal. July 9, 2018).

[7] ICE ADVISORY COMMITTEE ON FAMILY RESIDENTIAL CENTERS, REPORT OF THE ICE ADVISORY COMMITTEE ON FAMILY RESIDENTIAL CENTERS 26 (2016), https://www.ice.gov/sites/default/files/documents/Report/2016/acfrc-report-final-102016.pdf.

[8] Nicole Acevedo, *Why Are Migrant Children Dying in Custody?*, NBC NEWS (May 29, 2019), http://www.nbcnews.com/news/latino/why-are-migrant-children-dying-u-s-custody-n1010316.

centerpiece a standard of care that has been incontrovertibly shown to cause great harm to children.[9]

*Amici* have a substantial interest in the Court's resolution of this case because the issues this Court will decide will have a direct impact on their work and the populations served by their work—namely, vulnerable children and families, including non-citizens, who are involved in the child welfare, juvenile justice, or immigration systems. As child welfare professionals, *amici* are well-positioned to articulate the nature of the potential harms at the center of this case. *Amici* understand the devastating effect that detention can have on children and their families, particularly if there is ineffective or inadequate oversight of the detention facilities. *See Miller-Wohl Co., Inc. v. Commissioner of Labor and Industry*, 694 F.2d 203, 204 (9th Cir. 1982) ("[T]he classic role of amicus curiae [is] assisting in a case of general public interest, supplementing the efforts of counsel, and drawing the court's attention to law that escaped consideration.").

Accordingly, *Amici* Child Advocacy Organizations, through lead *amicus* Children's Rights, respectfully request that this Court grant their *ex parte* application for leave to file the proposed brief in support of Plaintiffs' Motion to Enforce Settlement Notwithstanding Publication of Final Rule.

Dated: August 30, 2019

Respectfully submitted,

By: /s/ *Peter Bach-y-Rita*

*Attorneys for Lead Amicus Children's Rights*

---

[9] Julie M. Linton, Marsha Griffin, Alan J. Shapiro, *Detention of Immigrant Children*, 139 PEDIATRICS 1, 7 (2017)

**CERTIFICATE OF SERVICE**

I hereby certify that on August 30, 2019, a copy of the foregoing *Ex Parte* Application for Leave to File Brief of Children's Advocacy Organizations as *Amici Curiae* in Support of Plaintiffs' Motion to Enforce Settlement Notwithstanding Publication of Final Rule was filed and served pursuant to the Court's electronic filing procedures using CM/ECF.

/s/      *Peter Bach-y-Rita*
         Peter Bach-y-Rita