1  CARLOS R. HOLGUÍN (Cal. Bar No. 90754)
2  PETER A. SCHEY (Cal. Bar No. 58232)
   Center for Human Rights & Constitutional Law
3  256 South Occidental Boulevard
4  Los Angeles, CA 90057
   Telephone:  (213) 388-8693
5  Email:      crholguin@centerforhumanrights.org
6              pschey@centerforhumanrights.org

7
8  *Additional Plaintiffs' counsel on next page*

9

10

11

12

13                    UNITED STATES DISTRICT COURT

14         CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

15

16

17  JENNY LISETTE FLORES, *et al.*,           Case No. CV 85-4544-DMG (AGRx)

18                 Plaintiffs,               OPPOSITION TO MOTION IN THE
                                             ALTERNATIVE TO TERMINATE THE
19         v.                                *FLORES* SETTLEMENT AGREEMENT
                                             (DOC. #639)
20  WILLIAM BARR, Attorney General, *et al.*,
                                             Hearing:  September 27, 2019
21                 Defendants.               Time:     9:30 a.m.
22                                           Room:     1st St. Courthouse
23                                                     Courtroom 8C

24

25

26

27

28

*Plaintiffs' counsel, continued*:

LEECIA WELCH (Cal. Bar No. 208741)
NEHA DESAI (Cal. RLSA Bar No. 803161)
POONAM JUNEJA (Cal. Bar No. 300848)
FREYA PITTS (Cal. Bar No. 295878)
National Center for Youth Law
405 14th Street, 15th Floor
Oakland, CA 94612
Telephone: (510) 835-8098
Email:      lwelch@youthlaw.org
            ndesai@youthlaw.org
            pjuneja@youthlaw.og
            fpitts@youthlaw.org

HOLLY S. COOPER (Cal. Bar No. 197626)
Co-Director, Immigration Law Clinic
University of California Davis School of Law
One Shields Ave. TB 30
Davis, CA 95616
Telephone: (530) 754-4833
Email:      hscooper@ucdavis.edu

KEVIN ASKEW (CAL. BAR NO. 238866)
Orrick, Herrington & Sutcliffe LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone:  (213) 629-2020
Email:      kaskew@orrick.com

ELYSE ECHTMAN (ADMITTED *PRO HAC VICE*)
SHAILA RAHMAN DIWAN (*ADMITTED PRO HAC VICE*)
RENE KATHAWALA (ADMITTED *PRO HAC VICE*)
Orrick, Herrington & Sutcliffe
51 West 52nd Street
New York, NY 10019-6142
Telephone:  212-506-5000
Email:      eechtman@orrick.com
            sdiwan@orrick.com
            rkathawala@orrick.com

OPPOSITION TO MOTION TO TERMINATE THE
FLORES SETTLEMENT AGREEMENT
CV 85-4544-DMG(AGRx)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. ii

I.     INTRODUCTION .................................................................................. 1

II.    DEFENDANTS' REJECTED ARGUMENTS ARE BARRED BY
       THE LAW OF THE CASE AND LOCAL RULE 7-18 .................................. 4

       A.  This Court should decline to revisit its holding that Defendants
           may not detain accompanied children indefinitely in unlicensed
           facilities .................................................................................... 5

       B.  Defendants offer no reason this Court should reconsider multiple
           prior rulings that enactment of the HSA and the TVPRA in no way
           converts continued compliance with the Settlement into an
           "instrument of wrong." ................................................................. 6

       C.  Defendants offer no reason to reconsider this Court's and the Ninth
           Circuit's rejection of their "influx" claim .................................... 8

III.   DEFENDANTS' REGULATIONS NEED NOT "MIRROR" THE
       SETTLEMENT, BUT THEY MUST BE CONSISTENT WITH AND
       IMPLEMENT IT ................................................................................... 9

IV.    DEFENDANTS FAIL TO ESTABLISH ANY BASIS FOR
       TERMINATING THE SETTLEMENT ..................................................... 11

       A.  Defendants have not substantially complied with the Settlement .......... 12

           1.    The Final Rule eviscerates the Settlement's fundamental
                 purposes ...................................................................... 13

           2     Defendants' woeful record of noncompliance forecloses
                 any claim that the Settlement's goals have been met .............. 14

       B.  No change in fact or law justifies terminating the Settlement ............... 16

       C.  Termination of the Settlement is not in the public interest .................... 20

V.     DEFENDANTS' ARGUMENTS REGARDING CLASS
       CERTIFICATION ARE BARRED, IRRELEVANT, AND
       MERITLESS ........................................................................................ 22

       A. Defendants have waived challenge to class certification .......................... 22

       B. Plaintiffs easily meet the Rule 23 commonality requirement .................... 23

       C. The Settlement creates no "tension" with parental rights ........................ 24

VI.    CONCLUSION .................................................................................... 25

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5
*Abdullah v. U.S. Sec. Assocs., Inc.*,
   731 F.3d 952 (9th Cir. 2013) ...................................................................23, 24

6

7
*Allen v. McCurry*,
   449 U.S. 90 (1980)..................................................................................................7

8

9
*Alliance to End Repression v. City of Chicago*,
   742 F.2d 1007 (7th Cir. 1984) ...........................................................................21

10

11
*Americana Fabrics, Inc. v. L & L Textiles, Inc.*,
   754 F.2d 1524 (9th Cir. 1985) .............................................................................5

12

13
*Arizona v. California*,
   460 U.S. 605 (1983).................................................................................................5

14

15
*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001), *overruled on other grounds by*,
   *Johnson v. California*, 543 U.S. 499 (2005)......................................................23

16

17
*Ass'n of Nat. Advertisers, Inc. v. F.T.C.*,
   627 F.2d 1151 (D.C. Cir. 1979)..........................................................................10

18

19
*Bd. of Educ. v. Dowell*,
   498 U.S. 237 (1991)..............................................................................................15

20

21
*Berne Corp. v. Gov't of Virgin Islands*,
   105 Fed. Appx. 324 (3d Cir. 2004).....................................................................21

22

23
*Carroll v. Nakatani*,
   342 F.3d 934 (9th Cir. 2003) ...............................................................................8

24
*Casey v. Planned Parenthood of Southeastern Pennsylvania*,
   14 F.3d 848 (3d Cir. 1994)....................................................................................4

25

26
*Citizens for a Better Environment v. Gorsuch*,
   718 F.2d 1117 (D.C. Cir. 1983).........................................................................10

27

28

OPPOSITION TO MOTION TO TERMINATE THE
FLORES SETTLEMENT AGREEMENT
CV 85-4544-DMG(AGRx)

*Ferrell v. Pierce*,
  560 F. Supp. 1344 (N.D. Ill. 1983), *aff'd*, 743 F.2d 454 (7th Cir.
  1984) ..................................................................................................14

*Flores v. Barr*,
  _F.3d _; 2019 WL 3820265 (9th Cir. Aug. 15, 2019) ........................15

*Flores v. Johnson*,
  212 F. Supp. 3d 864 (C.D. Cal. 2015), *aff'd in relevant part*, 828
  F.3d 898 (9th Cir. 2016) ................................................................ *passim*

*Flores v. Lynch*,
  2017 WL 6049373 (C.D. Cal. Jan. 20, 2017) .......................................2

*Flores v. Lynch*,
  212 F.Supp.3d 907 (C.D. 2015), *aff'd in relevant part*, 828 F.3d
  898 (9th Cir. 2016) ............................................................................3

*Flores v. Lynch*,
  828 F.3d 898, 905 (9th Cir. 2016) ................................................ *passim*

*Flores v. Sessions*,
  2017 WL 6060252 (C.D. Cal. June. 27, 2017) ....................................15

*Flores v. Sessions*,
  862 F.3d 863 (9th Cir. 2017) ......................................... 7, 12, 16, 17, 21

*Hook v. Arizona Dep't of Corrections*,
  No. 91-15052, 1992 U.S. App. LEXIS 20465 (9th Cir. Feb. 12,
  1992) ..................................................................................................14

*Horne v. Flores*,
  557 U.S. 433 (2009)..............................................................................11

*Jeff D. v. Otter*,
  643 F.3d 278 (9th Cir. 2011) ................................................. 11, 13, 16

*Kansas v. Crane*,
  534 U.S. 407 (2002)..............................................................................20

*Lucas R. v. Azar*,
  No. 18-cv-5741-DMG-PLAx, 2018 WL 7200716 (C.D. Cal. Dec.
  27, 2018) ............................................................................................23

iii

*Matthews v. Diaz*,
    426 U.S. 67 (1976)..................................................................................22

*McClain v. Apodaca*,
    793 F.2d 1031 (9th Cir. 1986) ...............................................................5

*Money Store, Inc. v. Harriscorp Fin. Inc.*,
    885 F.2d 369 (7th Cir. 1989) ................................................................22

*Nat'l Audubon Society v. Watt*,
    678 F.2d 299 (D.C. Cir. 1982)..............................................................21

*NLRB v. Harris Teeter Supermarkets*,
    215 F.3d 32 (D.C. Cir. 2000)................................................................15

*Orantes-Hernandez v. Gonzales*,
    504 F. Supp. 2d 825 (C.D. Cal. 2007) ..............................................4, 15

*Perez-Olano v. Gonzalez*,
    248 F.R.D. 248 (C.D. Cal. 2008)..........................................................24

*R.I.L-R v. Johnson*,
    80 F. Supp. 3d 164 (D.D.C. 2015)........................................................20

*Rezzonico v. H & R Block, Inc.*,
    182 F.3d 144 (2d Cir. 1999).....................................................................4

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ..............................................................23

*Rodriguez v. Nike Retail Servs., Inc.*,
    No. 5:14-cv-01508-BLF, 2016 WL 8729923 (N.D. Cal. Aug. 19,
    2016) ......................................................................................................23

*Rouser v. White*,
    825 F.3d 1076 (9th Cir. 2016) ..............................................11, 13, 14

*Rufo v. Inmates of Suffolk Cty. Jail*,
    502 U.S. 367 (1992)........................................................................ *passim*

*SEC v. Coldicutt*,
    258 F.3d 939 (9th Cir. 2001) ................................................................15

OPPOSITION TO MOTION TO TERMINATE THE
FLORES SETTLEMENT AGREEMENT
CV 85-4544-DMG(AGRx)

*State of California, et. al. v. McAleenan,*
    19-cv-7390-DMG (C.D. Cal. 2019)................................................................7

*Sweet v. Pfizer,*
    232 F.R.D. 360 (C.D. Cal. 2005)...............................................................24

*Walters v. Reno,*
    145 F.3d 1032 (9th Cir. 1998) ...................................................................23

**Statutes**

6 U.S.C. § 279(f)(2) ..........................................................................................7

6 U.S.C. § 552(a)(1)..........................................................................................7

8 U.S.C. § 1232 .................................................................................................1

Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135 .................*passim*

William Wilberforce Trafficking Victims Protection Reauthorization
    Act of 2008, Pub. L. No. 110-457, § 235 ...............................................*passim*

**Other Authorities**

84 Fed. Reg. 44,392 (Aug. 23, 2019)..........................................................*passim*

18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper,
    FEDERAL PRACTICE AND PROCEDURE § 4478 (1981)............................................4

7A Charles A. Wright, Arthur R. Miller, *Federal Practice &*
    *Procedure* § 1763 (3d ed. 2018) ...............................................................23

Federal Rule of Civil Procedure 23................................................... 22, 23, 24

Federal Rule of Civil Procedure 60(b).............................................. 3, 11, 12, 17, 22

LOCAL RULE 7-18 ........................................................................................4, 5, 7

Merriam-Webster Dictionary, *available at* www.merriam-
    webster.com/dictionary/implement..............................................................9

1B MOORE'S FEDERAL PRACTICE ¶ 0.404[1] (2d ed. rev. 1993).................................4

*Report of the DHS Advisory Committee on Family Residential Centers* (Sept. 30, 2016), *available at* www.ice.gov/sites/default/files/documents/Report/2016/ACFRC-sc-16093.pdf.......................................................................... 19, 20, 24, 25

# I.    INTRODUCTION

Defendants again seek to "light a match"[1] to the *Flores* Settlement separate and apart from promulgating final regulations that breach Settlement ¶ 9. Motion in the Alternative to Terminate the *Flores* Settlement Agreement (Doc. #639) ("Motion to Terminate"). Defendants' motion presents a dizzying array of arguments and quasi-arguments, almost all of which this Court and the Ninth Circuit have previously rejected.

First, this Court and the Ninth Circuit have already held that the Settlement was intended to protect accompanied minors, and the government's argument to the contrary is precluded. Motion to Terminate at 21 ("The custody and care of family units was not addressed by the parties in the *Flores* Settlement Agreement . . . ."); *contra*, *Flores v. Johnson*, 212 F. Supp. 3d 864, 872 (C.D. Cal. 2015) ("the plain language of the Agreement is clear that accompanied minors are part of the class . . ."), *aff'd in relevant part*, *Flores v. Lynch*, 828 F.3d 898, 905 (9th Cir. 2016) ("We agree with the district court that '[t]he plain language of the Agreement clearly encompasses accompanied minors.'").

Second, Defendants are incorrect that the HSA and TVPRA "should have terminated the Agreement in 2008...." Motion to Terminate at 54. This Court and the Ninth Circuit have already held that the Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135 ("HSA"), and the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, § 235 (*codified in principal part at* 8 U.S.C. § 1232) ("TVPRA") do not supersede the Settlement. *Flores v. Johnson*, 212 F. Supp. 3d at 885 (". . . Defendants have not met their burden of showing that a significant change in the law, such that complying with the Agreement would be impermissible, has occurred . . ."); *Flores*

---

[1] Order Denying Defendants' "Ex Parte Application for Limited Relief From Settlement Agreement," July 9, 2019 (Doc. #455) ("Ex Parte Order") at 3.

OPPOSITION TO MOTION TO TERMINATE THE
FLORES SETTLEMENT AGREEMENT
CV 85-4544-DMG(AGRx)

1    *v. Lynch*, 828 F.3d at 910 ("The government also notes that the Homeland Security

2    Act of 2002 reassigned the immigration functions of the former INS to DHS; but

3    there is no reason why that bureaucratic reorganization should prohibit the

4    government from adhering to the Settlement.").[2]

5        Third, this Court and the Ninth Circuit have previously rejected the argument

6    that the Settlement failed to anticipate the current "influx" of class members and

7    should therefore be set aside. *E.g.*, Motion to Terminate at 51; *contra*, *Flores v.*

8    *Lynch*, 828 F.3d at 910 ("The Settlement expressly anticipated an influx, and

9    provided that, if one occurred, the government would be given more time to release

10   minors or place them in licensed programs."). Similarly, prior arguments that the

11   Settlement and this Court's orders enforcing it are a "magnet" that incite children to

12   seek asylum in or otherwise enter the United States, *e.g.*, Motion to Terminate at 55

13   ("the numbers of children crossing the Southwest border continue to rise at an

14   extraordinary pace in part due to court decisions that create a powerful incentive to

15   travel with children"), have also been rejected. *Flores v. Johnson*, 212 F. Supp. 3d

16   at 885-86 ("Defendants also appear to assert not only that the Agreement caused the

17   surge but also that their female-headed family detention policy has deterred others

18   who would have come. . . . Defendants do not satisfactorily explain why the

19   _____

20   [2] *See also* Flores v. Lynch, 2017 WL 6049373 (C.D. Cal. Jan. 20, 2017), Order re
     Plaintiffs' Motion to Enforce (Doc. #318) ("24A Order") ("the *Flores* Agreement
21   remains consistent with federal immigration laws requiring bond hearings for
     immigrant detainees, and poses no irreconcilable conflict with the TVPRA's safety
22   and placement provisions"); *Flores v. Sessions*, 862 F.3d 863, 880 (9th Cir. 2017)
     ("the HSA and TVPRA in fact affirm the broad goals of the *Flores* Settlement");
23   Order re Plaintiffs' Motion to Enforce Class Action Settlement, July 30, 2018 (Doc.
24   #470) ("July 30 Order") ("Defendants argue that the TVPRA superseded provisions
25   of the *Flores* Agreement that govern ORR's placement of a UAC in a secure
     facility and the review procedures for such placements. . . . These arguments are
26   meritless. Moreover, if these arguments have a familiar ring, it is because the Court
27   previously rejected Defendants' similar argument in a slightly different context
     relating to enforcement of Paragraph 24A of the Agreement.").

28

OPPOSITION TO MOTION TO TERMINATE THE
FLORES SETTLEMENT AGREEMENT
CV 85-4544-DMG(AGRx)

1    Agreement, after being in effect since 1997, should only now encourage others to

2    enter the United States without authorization. Nor do Defendants proffer *any*

3    competent evidence that ICE's detention of a subset of class members in secure,

4    unlicensed facilities has deterred or will deter others from attempting to enter the

5    United States.") (emphasis in original).[3]

6         Defendants' remaining arguments have similarly been rejected. The

7    argument that the government must indefinitely detain accompanied children in

8    unlicensed "family residential centers" because no state will license a family

9    detention center, Motion to Terminate at 24, has previously failed. *E.g., Flores v.*

10   *Johnson*, 212 F. Supp. 3d at 877 ("The fact that the family residential centers

11   cannot be licensed by an appropriate state agency simply means that, under the

12   Agreement, class members cannot be housed in these facilities except as permitted

13   by the Agreement."). Finally, the Ninth Circuit has already ruled that Defendants

14   have waived objection to class certification. *Flores v. Lynch*, 828 F.3d at 908.

15        As this Court has stated, "Defendants' reheated and repackaged arguments

16   are improper." *Flores v. Lynch*, 212 F. Supp. 3d 907 (C.D. Cal. 2015), Order re

17   Response to Order to Show Cause (Doc. #189) ("2015 Remedial Order") at 7, *aff'd*

18   *in relevant part*, 828 F.3d 898 (9th Cir. 2016). Yet even were they previously

19   unadjudicated, Defendants' arguments for termination would remain meritless. As

20   will be seen, Defendants do not and cannot meet the requirements Federal Rule of

21   Civil Procedure 60(b) posits to modify, much less terminate, the Settlement. The

22   Court should deny Defendants' motion and hold that the consent decree continues

23   to protect vulnerable children against the worst excesses of immigration-related

24   custody.

25   _____

26   [3] *See also* Order Denying Defendants' "Ex Parte Application for Limited Relief
     From Settlement Agreement," July 9, 2019 (Doc. #455) ("Ex Parte Order") at 3 n.2

27   ("Defendants fail to show that the *Flores* Agreement and the July 24, 2015 Order
     are responsible for the so-called 'surge' in illegal family border crossings").

28

OPPOSITION TO MOTION TO TERMINATE THE
FLORES SETTLEMENT AGREEMENT
CV 85-4544-DMG(AGRx)

## II.   DEFENDANTS' REJECTED ARGUMENTS ARE BARRED BY THE LAW OF THE CASE AND LOCAL RULE 7-18.

"Law of the case" rules have been developed "to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." 18B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 4478 (2d ed. 2019). The doctrine "is similar to the issue preclusion prong of *res judicata* . . . [but] is concerned with the extent to which law applied in a decision at one stage of litigation becomes the governing principle in later stages of the same litigation." *Rezzonico v. H & R Block, Inc.,* 182 F.3d 144, 148 (2d Cir. 1999); *see generally Orantes-Hernandez v. Gonzales*, 504 F. Supp. 2d 825, 836 (C.D. Cal. 2007).

Under the law of the case, a court is bound to honor the rulings of a court that stands higher in the hierarchical judicial structure. FED. PRACTICE & PROCEDURE § 4478.[4] "[A]fter the law of the case is determined by a superior court, an inferior court lacks authority to depart from it, and any change must be made by the superior court that established it, or by a court to which it, in turn, owes obedience." 1B MOORE'S FEDERAL PRACTICE ¶ 0.404[1] (2d ed. 1993), at II-2-II-3.[5]

Insofar as this Court's own rulings are concerned, "when a court decides upon a rule of law, [its own] decision should continue to govern the same issues in

---

[4] A trial court must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces. *Casey v. Planned Parenthood of Southeastern Pennsylvania*, 14 F.3d 848, 857 (3d Cir. 1994) (quoting *Bankers Trust Co. v. Bethlehem Steel Corp.,* 761 F.2d 943, 949 (3d Cir. 1985) (citations omitted)).

[5] If circumstances arise that cast doubt on the correctness of the law of the case as established on appeal, arguments in support of departure must be addressed to the appellate court, either in a petition for rehearing, or if the time for filing a motion for rehearing has passed, by motion for recall of the mandate, or on appeal from the judgment rendered after completion of the proceedings for which the case was remanded. *Id.* at II-60 - II-61.

1  subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618

2  (1983). This principle is formally incorporated in Local Rule 7-18.

3      Defendants brazenly invite the Court to revisit multiple rulings, including

4  those of the Ninth Circuit, and in effect, turn a blind eye to Local Rule 7-18 and the

5  law of the case doctrine.[6] Defendants' "reheated and repackaged" arguments, 2015

6  Remedial Order at 7, should be summarily rejected (again).

7      **A.    This Court should decline to revisit its holding that Defendants**

8      **may not detain accompanied children indefinitely in unlicensed**

9      **facilities.**

10     Prominent among the failed arguments Defendants resurrect to support

11 terminating the Settlement is that "changed circumstances" justify the indefinite

12 detention of accompanied minors, an argument this Court has rejected three times

13 and which the Ninth Circuit rejected as well.

14     Defendants first argued that ICE should be permitted to detain accompanied

15 minors indefinitely in their opposition to Plaintiffs' 2015 motion to enforce the

16 Settlement. *See* Defendants' Response in Opposition to Plaintiffs' Motion to

17 Enforce Settlement of Class Action, Feb. 27, 2015 (Doc. #121). This Court (1)

18 rejected Defendants' argument that the Settlement does not apply to accompanied

19 minors; (2) held that a state's refusing to license a family detention center "simply

20 means that, under the Agreement, class members cannot be housed in these

21 facilities except as permitted by the Agreement"; and (3) held that Defendants'

22

23 [6] Even were this Court's prior rulings holding Defendants in breach of the

24 Settlement independent actions, res judicata would foreclose Defendants' repetitive
   arguments. *See McClain v. Apodaca*, 793 F.2d 1031, 1033 (9th Cir. 1986);

25 *Americana Fabrics, Inc. v. L & L Textiles, Inc.*, 754 F.2d 1524, 1529 (9th Cir.

26 1985) (quoting *Brown v. Felsen*, 442 U.S. 127, 131 (1979)) (It "prevents litigation
   of all grounds for, or defenses to, recovery that were previously available to the

27 parties, regardless of whether they were asserted or determined in the prior

28 proceeding.").

OPPOSITION TO MOTION TO TERMINATE THE
FLORES SETTLEMENT AGREEMENT
CV 85-4544-DMG(AGRx)

1  holding family detention centers to their own standards failed to comply with the

2  Settlement's *state* licensing requirement. *Flores v. Johnson*, 212 F.Supp. 3d at 869-

3  79.[7]

4      The Ninth Circuit affirmed, holding that the Settlement applies to

5  accompanied minors, and rejecting Defendants' arguments that the Settlement

6  should be modified due to the surge of family units at the border or enactment of

7  the HSA and TVPRA. *Flores v. Lynch*, 828 F.3d 898. Defendants filed no petition

8  for writ of certiorari.

9      In June 2018, Defendants tried again—this time by *ex parte* application

10  (Doc. #435)—urging the Court to modify the Settlement so that accompanied class

11  members might be detained indefinitely. The Court again deemed Defendants'

12  application a "thinly veiled" motion for reconsideration and held that Defendants

13  had failed to meet the requirements for reconsideration or for modification of the

14  Settlement. Ex Parte Order at 1, 3-7; *see also Flores v. Lynch*, 828 F.3d at 910

15  (denying accompanied minors the Settlement's protections not a "suitably tailored"

16  response to influx).

17    **B.    Defendants offer no reason this Court should reconsider multiple**

18         **prior rulings that enactment of the HSA and the TVPRA in no**

19         **way converts continued compliance with the Settlement into an**

20         **"instrument of wrong."**

21      Defendants next invite the Court to revisit whether enactment of the HSA

22  and TVPRA "have rendered some of the substantive terms of the [Settlement] . . .

23  _____

24  [7] Shortly thereafter, Defendants again argued that that the Settlement excludes
    accompanied minors, this time in response to the Court's order to show cause re:

25  remedy. *See* Defendants' Response to the Court's Order to Show Cause, etc., Aug.
    6, 2015 (Doc. #184). This Court described Defendants' response as a "thinly-

26  veiled" motion to reconsider repeating old, failed arguments. 2015 Remedial Order

27  at 2, 7. The Court again held that neither changes in the law nor facts merited
    modification of the Settlement. *Id.* at 5-6.

28

OPPOSITION TO MOTION TO TERMINATE THE
FLORES SETTLEMENT AGREEMENT
CV 85-4544-DMG(AGRx)

1   outdated or unsuited to current conditions." 84 Fed. Reg. 44,393; Motion to

2   Terminate at 53.[8]

3          Again, both this Court and the Ninth Circuit have rejected this reason for

4   *modifying* the Settlement, a vastly more moderate request than terminating it. *See,*

5   *e.g., Flores v. Johnson*, 212 F. Supp. 3d at 883-85; *Flores v. Sessions,* 862 F.3d

6   863, 875 (9th Cir. 2017); 24A Order at 6 ("The Court will not presume Congress

7   intended to silently abrogate the *Flores* Agreement's bond hearing provision in the

8   absence of actual or express language relating to bonds."). Defendants point to no

9   change in law subsequent to these rulings that would warrant reconsideration under

10  Local Rule 7-18 or the law of the case doctrine.[9]

11

12  _____

13  [8] Defendants tangentially argue that the Final Rule is an administrative action that
    terminates the Settlement pursuant to the HSA's savings clause regardless of

14  consistency with the Settlement. Motion to Terminate at 41-42. This argument is
    without merit. The HSA's "savings" provision provides: "Completed administrative

15  actions of an agency . . . continue in effect according to their terms until amended,

16  modified, superseded, terminated, set aside, or revoked *in accordance with law* by
    an officer of the United States or a court of competent jurisdiction, or by operation

17  of law." 6 U.S.C. § 552(a)(1) (incorporated by reference into 6 U.S.C. § 279(f)(2))

18  (emphasis added).

19  Defendants' bid to end the Settlement by dint of inconsistent rulemaking is not "in

20  accordance with law" because such rulemaking itself is an unlawful violation of the
    Settlement. *See also State of California, et. al. v. McAleenan*, 19-cv-7390-DMG

21  (C.D. Cal. 2019) (alleging that the Final Rule fails to comport with the Due Process

22  Clause of the Fifth Amendment, is *ultra vires*, and is unlawful under the
    Administrative Procedure Act).

23

24  [9] And although Defendants have not explicitly argued previously that the HSA and
    TVPRA wholly supersede the Settlement, they could have so argued against

25  complying with Settlement ¶ 24A, or any of the other individual provisions of the
    Settlement they have sought to evade since 2015. It is too late to do so now. *Cf.*

26  *Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("Under res judicata, a final judgment on

27  the merits of an action precludes the parties or their privies from relitigating issues
    that were or *could have been* raised in that action." (emphasis added)).

28

7

**C.     Defendants offer no reason to reconsider this Court's and the Ninth Circuit's rejection of their "influx" claim.**

Defendants also exhume their failed argument that an increase in the number of children entering their custody justifies termination of the Settlement. Motion to Terminate at 51-53.

Rejecting Defendants' argument in 2015, this Court held that Settlement ¶ 12 expressly anticipates and accommodates an "influx" of class members. *See* 2015 Remedial Order at 10.[10] The Ninth Circuit affirmed:

> The government first argues that the Settlement should be modified because of the surge in family units crossing the Southwest border. "Ordinarily, however, modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree.". . . The Settlement expressly anticipated an influx, and provided that, if one occurred, the government would be given more time to release minors or place them in licensed programs.

*Flores v. Lynch*, 828 F.3d at 910 (quoting *Rufo v. Inmates of Suffolk Cty. Jail,* 502 U.S. 367, 385 (1992) (emphasis added) (internal citations omitted)).

Obstinacy is not a legitimate reason for this Court to reconsider its prior rulings. *See Carroll v. Nakatani,* 342 F.3d 934, 945 (9th Cir. 2003) (motions to alter or amend a judgment offer an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources."). Defendants' motion should be denied.

---

[10] Again in 2018, Defendants argued that a "worsening influx" of family units at the Southwest border warranted modification of the Settlement. Ex Parte Application for Relief from the *Flores* Settlement Agreement, June 21, 2018 (Doc. #435-1), at 12-16. Again the Court rejected Defendants' argument, holding "it is unnecessary to replow the same familiar territory." Ex Parte Order at 2.

**III.  DEFENDANTS' REGULATIONS NEED NOT "MIRROR" THE SETTLEMENT, BUT THEY MUST BE CONSISTENT WITH AND IMPLEMENT IT.**

Defendants next argue that their final rule "relating to the apprehension, processing, care, custody, and release" of class members, 84 Fed. Reg. 44,392 (Aug. 23, 2019) (the "Final Rule") need not incorporate the Settlement verbatim in order to trigger the agreement's sunset clause. *See* Motion to Terminate at 2-3. Plaintiffs have never argued otherwise, but the Settlement clearly requires that the Final Rule implement the Settlement in good faith. It does not.

As Plaintiffs explained in their motion to enforce, Settlement ¶ 40, as modified, provides that the agreement shall remain in force until 45 days after Defendants "publi[sh] final regulations *implementing*" the Settlement. Settlement ¶ 40, Stipulation ¶ 1 (emphasis added). The Settlement further provides that the final regulations "shall not be inconsistent with the terms of this Agreement." Settlement ¶ 9.

Defendants nonsensically argue that even inconsistent regulations that strip children of the Settlement's crucial protections suffice to trigger the Agreement's sunset clause. Motion to Terminate at 3. In effect, Defendants would reduce the Settlement's requiring that regulations implement and not be inconsistent with the agreement to mere surplusage. Defendants offer no authority for such a construction, nor could they.[11]

---

[11] As explained in Plaintiffs' Motion to Enforce, "implement" means to "carry out, accomplish; especially: to give practical effect to and ensure of actual fulfillment by concrete measures." Merriam-Webster Dictionary, *available at* www.merriam-webster.com/dictionary/implement (last visited Sept. 8, 2019). That this definition is precisely what the Parties meant appears throughout the Settlement. *See* Stipulation ¶ 2 (parties agree to confer re: "the *implementation* of . . . the settlement agreement."); Settlement Exhibit 1 ¶ D ("Individual plans [for the care of each minor] shall be implemented . . . ."); Settlement ¶ 9 (licensed placement requirement in ¶ 19 not effective until contracts with facility operators "negotiated and *implemented*"); Settlement ¶ 29 (requiring Defendants to disclose policies and instructions "regarding the *implementation* of this Agreement" and requiring

As discussed in Plaintiffs' supplemental memorandum, the Final Rule transparently does *not* "implement" the Settlement. *See generally* Supplemental Memorandum in Support of Motion to Enforce Settlement, Aug. 30, 2019 (Doc. #634) ("Supplemental Memorandum") & Exhibit A.[12] Instead, a litany of conflicts between the Final Rule and the Settlement strike a mortal blow to crucial rights and protections the Settlement confers on vulnerable children, a clear violation of Settlement ¶ 9.

Nor does holding Defendants to their commitment to promulgate regulations that "implement" and are "not[] inconsistent with" the Settlement violate the APA. The Settlement is a decree Defendants voluntarily entered and itself an exercise of discretion. *Citizens for a Better Environment v. Gorsuch*, 718 F.2d 1117, 1127-30 (D.C. Cir. 1983) (distinguishing *Vermont Yankee*, *Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519 (1978), and finding that a consent decree requiring rulemaking does not impair agency discretion because the decree itself is the work of the agency).[13]

---

Juvenile Coordinator to answer questions regarding "the *implementation* of this Agreement") (emphasis added).

[12] *See also* Brief of *Amici Curiae* the American Academy of Child and Adolescent Psychiatry et al. at 3-9, Sept. 6, 2019 (Doc. #665).

[13] *Ass'n of Nat'l Advertisers, Inc. v. F.T.C.*, 627 F.2d 1151 (D.C. Cir. 1979), addresses whether the chairman of an agency may be prohibited from participating in pending rulemaking proceedings because of a speech allegedly showing prejudgment of the issues involved in the rulemaking. Defendants' reliance on that decision is obviously misplaced.

Nor does the Final Rule "easily survive[] facial constitutional scrutiny." Motion to Terminate at 41. Defendants' dramatic departures from the Settlement protections, detailed in Plaintiffs' Supplemental Memorandum, strip a vulnerable population of both substantive and procedural constitutional rights. *See Rufo*, 502 U.S. at 391 (modification "must not create or perpetuate a constitutional violation").

## IV.   DEFENDANTS FAIL TO ESTABLISH ANY BASIS FOR TERMINATING THE SETTLEMENT.

Federal Rule of Civil Procedure 60(b) provides that a court may grant relief from a judgment, order or decree when it has been satisfied, released, or discharged; applying it prospectively is no longer equitable; or for any other reason that justifies relief. To prevail under Rule 60(b), Defendants must carry "the burden of establishing that they have substantially complied with the [decree] or that facts or law have changed so that 'it is no longer equitable that the judgment should have prospective application.'" *Jeff D. v. Otter*, 643 F.3d 278, 281 (9th Cir. 2011); *see also Rufo v. Inmates of Suffolk County Jail*, 502 U.S. at 383.[14]

In deciding whether to terminate a consent decree, a district court must first "consider 'the more general goals of the decree,'" and, second, review "defendants' entire 'record of compliance'" with it. *Rouser v. White*, 825 F.3d 1076, 1081 (9th Cir. 2016) (internal citations omitted). Where a change in law is the basis for modification, the Government "must establish that the provision it seeks to modify

---

[14] Defendants' primary reliance on *Horne v. Flores*, 557 U.S. 433 (2009), is misplaced. The controlling precedent here is *Rufo*, not *Horne*.

In *Rufo*, the Court reviewed whether a consent decree should be modified based on changed circumstances. 502 U.S. at 393. The Court held that subsequent clarification of "the law will not, in and of itself, provide a basis for modifying a [consent] decree" unless "the parties had based their agreement on a misunderstanding of governing law." *Id.* at 390. Holding that any change in law "automatically opens the door for relitigation of the merits of every affected consent decree," the Court reasoned, "would undermine the finality of such agreements and could serve as a disincentive to negotiation of settlements in institutional reform litigation." *Id.* at 389.

*Horne,* in contrast, involved an injunction issued after trial, which the district court was still enforcing several years later without considering whether the state had otherwise remedied the underlying violation in the interim. 557 U.S. at 441-45. No agreement of the parties was at issue in *Horne*, nor, *a fortiori*, the concern for discouraging settlement that animated the Court's holding in *Rufo*.

has become 'impermissible,'" *Flores v. Sessions,* 862 F.3d at 874 (quoting *Rufo,* 502 U.S. at 383), and that requiring a party to continue complying with the agreement would "convert it into an '*instrument of wrong.*'" *Id.* (emphasis in original) (quoting *Sys. Fed. No. 91 Ry. Emps. Dep't. v. Wright,* 364 U.S. 642, 647 (1961)).

When a moving party carries its burden of establishing cause for modification, a court should modify the agreement "no more" than needed "to resolve the problems created by the change in circumstances." *Rufo,* 502 U.S. at 391. Defendants fail to meet any of these requirements: they have not substantially complied with the Settlement; no change in fact or law warrants modification; even assuming the contrary *arguendo,* terminating the entire Settlement would be anything but "suitably tailored." *See id.*[15]

**A.    Defendants have not substantially complied with the Settlement.**

Defendants insist the Final Rule achieves the goals of the Settlement. In truth, Defendants have crafted the Final Rule to allow them to do what the Settlement—and multiple orders of this Court—do not.

---

[15] Defendants' inviting the Court to terminate the Settlement "except as to [certain] specific issues" addressed by the Rule, Motion to Terminate at 15, in effect requests modification of the Settlement. Inasmuch as Defendants fail to satisfy Rule 60(b)'s requirements for termination, they likewise fail to meet the requirements for modification, particularly as to provisions this Court and the Ninth Circuit have upheld.

If the Final Rule were consistent with the Settlement, whether Defendants purported to follow it or the Settlement would not matter. But until and unless they promulgate consistent regulations that implement the Settlement, it remains in force, and Defendants are obliged to follow the Settlement notwithstanding their inconsistent regulations.

1.   **The Final Rule eviscerates the Settlement's fundamental
purposes.**

The Ninth Circuit requires district courts to "give '[e]xplicit consideration
[to] the goals of [a] decree []." *Rouser v. White*, 825 F.3d at 1081 (citing *Jeff D. v.
Otter*, 643 F.3d at 289). Central to this inquiry is "whether the [defendant] has
demonstrated . . . its good-faith commitment to the whole of the court's decree and
to those provisions of law and the Constitution that were the predicate for judicial
intervention in the first instance.'" *Otter,* 643 F.3d at 288 (quoting *Freeman v. Pitts*,
503 U.S. 467, 491 (1992)).[16] The Final Rule removes any doubt that Defendants
intend to eviscerate the fundamental goals of the Settlement.

Defendants disingenuously assert that "Plaintiffs [have] identified very few
substantive provisions of the proposed rule raising concerns in their Motion to
Enforce filed last year." Motion to Terminate at 3. Plaintiffs have in fact explained
that the Final Rule would fundamentally degrade the treatment and conditions
children in immigration custody experience in multiple respects. *See* Memorandum
in Support of Motion to Enforce Settlement, Nov. 2, 2018 (Doc. #516), at 5-19; and
Supplemental Memorandum at 4-17. The Final Rule would jettison the Settlement's
fundamental goals of ensuring that children are detained no longer than necessary
and are housed in state-licensed facilities for howsoever long as they must be
detained.  The Final Rule brushes aside both goals and thus clearly breaches
Settlement ¶ 9.[17]

---

[16] In *Otter*, the Ninth Circuit found that before vacating the parties' consent decrees,
there must be "careful attention to their purposes, along with consideration of the
Action Items" Defendants were required to complete. *Id*. at 289. The Court
concluded that "[i]f the purposes of the consent decree[] and the Implementation
Plan have not been adequately served, the decree[] may not be vacated." *Id*. at 289.

[17] As Plaintiffs have explained, the Final Rule omits the Settlement's mandatory
language in favor of aspirational declarations about what Defendants purport to do.
*See* Supplemental Memorandum at 14-16. Defendants respond that "a federal
agency is obliged to abide by the regulations it promulgates." Motion to Terminate

1   Defendants cite no authority for the proposition that their breaching the

2   Settlement excuses compliance with their contractual obligations entirely. Not

3   surprisingly, the law fails to support such bootstrapping. *See, e.g., Hook v. Arizona*

4   *Dep't of Corrections,* 972 F.2d 1012 (9th Cir. 1992) (enjoining prison regulations

5   inconsistent with consent decree); *Ferrell v. Pierce*, 560 F. Supp. 1344, 1365-71

6   (N.D. Ill. 1983), *aff'd*, 743 F.2d 454 (7th Cir. 1984) (enjoining regulations

7   inconsistent with consent decree regarding HUD mortgages).

8   **2.      Defendants' woeful record of noncompliance forecloses any**

9   **claim that the Settlement's goals have been met.**

10   Defendants' long record of violating the Settlement precludes any credible

11   argument that the agreement's goals have been met.

12   In determining whether a decree's goals have been met, courts "evaluate

13   whether defendants substantially complied with each" of an agreement's terms.

14   *Rouser,* 825 F.3d at 1081. "Our cases do not treat consent decrees as monolithic

15   commands with which defendants either comply or not." *Id.* "[D]istinct provisions

16   of consent decrees are independent obligations, each of which must be satisfied

17   before there can be a finding of substantial compliance. Accordingly, courts don't

18   release parties from a consent decree unless they have substantially complied with

19   *every one* of its provisions." *Id.* (emphasis in original).

20   Defendants make no attempt to demonstrate that they have complied with

21   each of the Settlement's provisions, nor would any such attempt succeed. A lengthy

22   list of orders enforcing the Settlement establishes that Defendants have *repeatedly*

23   violated it.[18]

---

24   at 34. This is incorrect in that permissive language does not create obligations. As

25   Plaintiffs argued in their Supplemental Memorandum, these changes in language

26   would allow Defendants to do what the Settlement forbids *without* violating the

Final Rule.

27   [18] *E.g.*, 24A Order (holding Defendants in breach of Settlement ¶ 24A); *Flores v.*

28   *Johnson*, 212 F.Supp.3d 864 (holding Defendants in breach of multiple provisions

OPPOSITION TO MOTION TO TERMINATE THE
FLORES SETTLEMENT AGREEMENT
CV 85-4544-DMG(AGRx)

To the extent some of the Settlement's goals have been met, it is only because this Court and the Ninth Circuit have vigilantly enforced it. Defendants' repeated violations of the Settlement are reason enough to continue the agreement in force. *See, e.g., Orantes-Hernandez v. Gonzales*, 504 F. Supp. 2d 825, 845 (C.D. Cal. 2007) ("an enjoined party's good-faith compliance with a decree figures prominently in the court's dissolution inquiry, because it is a proxy for determining whether the underlying problem has been remedied"); *Bd. of Ed.of Okla. City Public Schs. v. Dowell*, 498 U.S. 237, 249 (1991) ("But in deciding whether to modify or dissolve a desegregation decree, a school board's compliance with previous court orders is obviously relevant."); *NLRB v. Harris Teeter Supermarkets*, 215 F.3d 32, 36-37 (D.C. Cir. 2000) (indications that defendants had continued their unfair labor practices counseled against dissolution, since "the reduction in violation frequency might be a reflection of the effectiveness of the prospective fine schedule contained in the consent order rather than a result of good intentions on the company's part"); *SEC v. Coldicutt*, 258 F.3d 939, 942-43 (9th Cir. 2001) (examining defendant's record of compliance with an injunction to determine whether she might resume violations if injunction dissolved).

The Settlement, in short, is the only thing standing between children and indefinite detention in unlicensed facilities, which is precisely what Defendants'

---

of the Settlement with respect to treatment of accompanied class members); July 30 Order (holding Defendants in breach of multiple Settlement provisions re: administration of psychotropic drugs and denying class members licensed placement without adequate cause, among other violations); *Flores v. Sessions*, 2017 WL 6060252 (C.D. Cal. June 27, 2017), Order re Plaintiffs' Motion to Enforce and Appoint a Special Monitor (Doc. #363), *appeal dismissed*; *Flores v. Barr*, No. 17-56297, 2019 WL 3820265 (9th Cir. Aug. 15, 2019) (holding Defendants in breach of Settlement's requirement to provide children safe and sanitary conditions in Border Patrol custody); *see also* Brief of Children's Advocacy Organizations as *Amici Curiae* at 18-21, Sept. 4, 2019, Doc. #659 (describing DHS's "routine[] violat[ions] [of] child welfare standards by mistreating children in its custody").

1   regulations would require were the Settlement jettisoned. *See* Supplemental

2   Memorandum at 6-12. Terminating the Settlement would ensure that its goals—

3   however imperfectly achieved to date—become relics: *i.e.*, that children are

4   returned to the status quo ante 1997.

5       **B.    No change in fact or law justifies terminating the Settlement.**

6       Defendants next argue that facts or law have changed such that it is no longer

7   equitable for the Settlement to have prospective application. Motion to Terminate at

8   51-55. Defendants again resurrect an argument this Court and the Ninth Circuit

9   have rejected while failing to demonstrate that any subsequent change in law or fact

10  warrants terminating the Settlement.[19]

11      As the Ninth Circuit has previously ruled, "when the basis for modification is

12  a change in law, the moving party must establish that the provision it seeks to

13  modify has become *impermissible*." *Flores v. Sessions*, 862 F.3d at 874 (internal

14  quotations omitted) (emphasis in original) (quoting *Rufo*, 502 U.S. at 383).

15  Defendants do not come close to carrying this burden.

16      As discussed above, this Court and the Ninth Circuit have repeatedly rejected

17  Defendants' argument that the HSA and TVPRA supersede the Settlement. *Flores*

18  *v. Johnson*, 212 F. Supp. 3d at 883-5; *Flores v. Lynch*, 828 F.3d at 910; 24A Order;

19  *Flores v. Sessions*, 862 F.3d at 880-81; July 30 Order at 6-9. This Court and the

---

20  [19] Given Defendants' position that the Settlement sunsets on October 7, Plaintiffs

21  respectfully request that that this Court issue an order granting Plaintiffs' Motion to

22  Enforce as expeditiously as possible. Should the Court choose to defer ruling on
    Defendants' motion to terminate, Plaintiffs request the opportunity to engage in

23  discovery (1) to explore the basis for Defendants' assertion that there has been a
    change in facts justifying termination of the Settlement and (2) to determine

24  whether termination of the Settlement would result in any constitutional violations,

25  given that a termination of a consent decree would be improper if it created or

26  perpetuated a constitutional violation. *See Rufo*, 502 U.S. at 391 ("a modification
    must not create or perpetuate a constitutional violation"); the same reasoning

27  extends to termination of consent decrees.

28

Ninth Circuit have thus foreclosed termination of the Settlement on account of the HSA and TVPRA.

Defendants also assert that the issuance of the Final Rule—which itself breaches the Settlement—constitutes a change in law justifying termination. Motion to Terminate at 48-51. It does not. Allowing Defendants to prevail on this self-serving course of action would make a mockery out of Rule 60 and a bargained-for decree.[20]

Defendants next argue that the Settlement should end because a "dramatic increase in minors crossing the Southwest border" was "unforeseen by the parties and unaddressed in the Agreement." Motion to Terminate at 51-53. Again, this Court and the Ninth Circuit have held to the contrary. *See Flores v. Lynch*, 828 F.3d at 910; *Flores v. Johnson*, 212 F. Supp. 3d at 883-85; Ex Parte Order at 2-3 & n.2; *infra* II.C.[21]

Defendants nevertheless (and repeatedly) claim that the "numbers of children crossing the Southwest border continue to rise at an extraordinary pace in part due

---

[20] Notably, even if the Settlement were to otherwise terminate by publication of consistent regulations—which the Final Rule is not—the agreement's requirement that "the general population of minors" be housed in "facilities that are state-licensed for the care of dependent minors" would still continue. Settlement ¶ 40; Stipulation ¶ 1. The Final Rule would allow Defendants to detain accompanied children in unlicensed facilities indefinitely, in clear violation of an obligation that would survive the Settlement's general termination.

[21] Fluctuation in the number of arriving minors was hardly unforeseeable when the Settlement was executed in 1997. Decl. of Susan Martin, ¶¶ 17, 30 ("[T]he migration of children and family units across the southern US border, though recently and prominently in US headlines, is fundamentally not a new phenomenon. . . .The persistence of such patterns of migration – including as overall numbers of unaccompanied minors and children arriving as part of families have increased or decreased – was thus as much the case before and at the time of the *Flores* Settlement Agreement as it remains the case now."). Defendants may not terminate the Settlement due to events they anticipated or should have anticipated at the time of the Settlement's execution. *See Rufo*, 502 U.S. at 385.

to court decisions that create a powerful incentive to travel with children . . . ."

Motion to Terminate at 55. This Court has twice held to the contrary, characterizing

Defendants' logic "'dubious' and unconvincing." Ex Parte Order at 2-3 (citation

omitted).[22] As the Court recognized, there is no correlational relationship between

*Flores* court orders and family migration patterns.[23] This finding is affirmed by

academic experts as well as researchers working directly with children and families

in Central America.[24]

Defendants accordingly fail to identify *any* new facts warranting termination,

but rather simply reiterate their "influx" argument. That is not enough to warrant

---

[22] *See also* Ex Parte Order at 2-3 ("Any number of other factors could have caused the increase in illegal border crossings, including civil strife, economic degradation, and fear of death in the migrants' home countries.") (internal citations omitted); *Flores v. Johnson*, 212 F. Supp. 3d at 886 ("Defendants do not satisfactorily explain why the Agreement, after being in effect since 1997, should only now encourage others to enter the United States without authorization").

[23] Ex Parte Order at 3 (citing Adam Cox & Ryan Goodman, *Detention of Migrant Families as "Deterrence": Ethical Flaws & Empirical Doubts*, justsecurity.org (June 22, 2018), *available at* www.justsecurity.org/58354/detention-migrant-families-deterrence-ethical-flaws-empirical-doubts ("concluding that 'there's not even a correlational relationship between [the July 24, 2015 Order] and family migration,' and pointing out that the apprehension patterns for accompanied and unaccompanied minors after the decision did not differ from one another")).

[24] *See* Decl. of Tom K. Wong, ¶ 12 ("there was no statistically significant increase in U.S. Border Patrol apprehensions of families at the southwest border after the 2015 *Flores* ruling. In other words, there is no evidence that the 2015 *Flores* ruling increased the number of families arriving at the southwest border."); Decl. of Fernando Chang-Muy, ¶ 29 ("In my extensive experience, I have never had reason to believe that the *Flores* Settlement Agreement and subsequent court orders in the *Flores* case have influenced children and families from Central America in their decision to come to the United States. These children and families are coming to the United States because their home countries are deeply afflicted by corruption, crime, violence and poverty. Moreover, few to none of them are even aware of the existence of the *Flores* Settlement Agreement.").

OPPOSITION TO MOTION TO TERMINATE THE
FLORES SETTLEMENT AGREEMENT
CV 85-4544-DMG(AGRx)

1  reconsideration of their multiple bids to modify the Settlement, much less terminate

2  it.

3         In any event, Defendants offer *no* evidence that ending the Settlement would

4  in fact deter would-be asylum-seekers or unauthorized entrants in the slightest. In

5  2015, this Court "considered in detail the evidence Defendants presented of the

6  deterrent effect of the detention policy and [found] the evidence distinctly lacking

7  in scientific rigor." *Flores v. Johnson*, 212 F. Supp. 3d at 886.[25] The Court's finding

8  is wholly consonant with the unanimous conclusions of experts in Central

9  American migration – there is no credible evidence that detaining children or

10  families has discouraged or will discourage others from fleeing poverty and

11  violence in Central America.[26]

12         Finally, even assuming, *arguendo*, the Settlement were somehow to

13  encourage asylum-seekers, general deterrence would still be a legally impermissible

---

14  [25] Because of Defendants' failure to supply evidence, the Court decided it "need not

15  rule on the issue of whether deterrence is a lawful criterion for denying release." *Id.*

16  at 24, n.11. *See also* Ex Parte Order at 3, n.2 ("Because Defendants fail to show that

     the *Flores* Agreement and the July 24, 2015 Order are responsible for the so-called

17  'surge' in illegal family border crossings, the Court need not address [whether]

18  general deterrence is . . . a permissible purpose of civil detention.").

19  [26] *See* Pls' Opp. to Motion to Modify at 14 n.14 (Doc. #122) (collecting sources).

20  *Accord* Decl. of Fernando Chang-Muy, ¶ 27-28, 32 ("When children and families

     are fleeing for their lives, all obstacles pale in comparison to abuse, persecution

21  or certain death. . . . In my experience . . ., neither harsh deterrence practices, nor

22  the promise of particular legal protections have ever been a factor motivating or

     preventing children and families from seeking asylum or other forms of

23  humanitarian immigration relief. . . terminating the *Flores* Settlement Agreement

24  and indefinitely detaining families, will not impact migration patterns."); *see*

     *generally* Decl. of Amy Thompson; *Report of the DHS Advisory Committee on*

25  *Family Residential Centers*, Sept. 30, 2016,

26  www.ice.gov/sites/default/files/documents/Report/2016/ACFRC-sc-16093.pdf (last

     visited Sept. 4, 2019) ("DHS should not use detention for the purpose of deterring

27  future family migration or punishing families seeking asylum in the U.S. Any

28  contrary policy is unlawful, *and ineffective*.") (emphasis added).

1   reason to end the Settlement. *See Kansas v. Crane*, 534 U.S. 407, 412 (2002) (civil

2   detention may not "become a 'mechanism for retribution or general deterrence' –

3   functions properly those of criminal law, not civil commitment") (quoting *Kansas*

4   *v. Hendricks*, 521 U.S. 346, 372-73 (1997) (Kennedy, J., concurring)); *see also*

5   *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 188-91 (D.D.C. 2015) (enjoining ICE from

6   detaining class members for the purpose of deterring future immigration to the

7   United States and from considering deterrence of immigration as a factor in such

8   custody determinations).[27]

9       **C.    Termination of the Settlement is not in the public interest.**

10       Defendants finally argue that the Settlement should be terminated "in the

11  public interest." Motion to Terminate at 58. As numerous *amici curiae* have shown,

12  however, the Settlement uniquely provides vital protections to vulnerable children.

13  *See* Brief of *Amici Curiae* the American Academy of Child and Adolescent

14  Psychiatry et al. at 9-25 (describing the "devastating impact" the Final Rule will

15  have on children, including harm to their mental and physical health, educational

16  development, and parent relationships); Brief of Children's Advocacy

17  Organizations as *Amici Curiae* at 15-18 (criticizing the use of standards derived

18  from correctional, rather than child welfare principles, and discussing the resulting

19  harm to children). Though they never manage to say so, implicit in Defendants'

20  argument is that the Settlement stops them from mistreating children for the sake of

21  improved border control. Reasonable minds may question whether abusing children

22  is ever "in the public interest." Defendants' argument is meritless in any event.

23

---

24  [27] Detention policies aimed at deterrence are also generally unlawful under

25  international human rights law. Brief for *Amici Curiae* Human Rights Watch &

26  Amnesty International in Support of Plaintiffs at 7, Sept. 4, 2019 (Doc. #655)

27  ("Detention decisions must be based on an individual assessment of 'necessity.' . . .

     The necessity standard means that detention must be 'absolutely indispensable' and

28  'no other measure less onerous exists.'").

OPPOSITION TO MOTION TO TERMINATE THE
FLORES SETTLEMENT AGREEMENT
CV 85-4544-DMG(AGRx)

First, Defendants argue that the Settlement "threatens the constitutional separation of powers." Motion to Terminate at 45. That assertion borders on the farcical. "The parties voluntarily agreed to the terms of the *Flores* Agreement . . . The Court did not force the parties into the agreement nor did it draft the contractual language." Ex Parte Order at 7.

And in Settlement ¶ 37, Defendants *agreed* that the Settlement would be enforceable in court. Defendants' histrionics aside, neither the Settlement nor the judiciary's enforcing it threaten the Nation's constitutional order. *See, e.g.*, *Berne Corp. v. Gov't of Virgin Islands*, 105 Fed. Appx. 324, 331 (3d Cir. 2004) ("we conclude that the District Court did not exceed its judicial power when it enforced the Settlement Agreement and ordered the V.I. Government to provide adequate funding for the purpose of its implementation").

Nor is Defendants' complaining that the Settlement has been in place through "four Presidential administrations," Motion to Terminate at 47, at all compelling. Defendants could have ended the Settlement years ago if only they had been willing to promulgate rules that *implement* it. Neither this Court nor Plaintiffs have stood in their way. Though Defendants would conflate their failure to discharge their contractual obligations with the public interest, the two are clearly not the same.[28]

---

[28] The cases Defendants rely on are not to the contrary, if they are even apposite. *E.g.*, *Nat'l Audubon Society v. Watt*, 678 F.2d 299, 311 (D.C. Cir. 1982) (finding that the government's obligations under a stipulation had been discharged and declining to decide the "difficult and far-reaching constitutional issues" raised); *Alliance to End Repression v. City of Chicago*, 742 F.2d 1007, 1019 (7th Cir. 1984) (noting duty of court to enforce consent decree, but finding "any actual . . . threat to compliance . . . lies in the future"); *Money Store, Inc. v. Harriscorp Fin. Inc.*, 885 F.2d 369, 373-74 (7th Cir. 1989) (upholding district court's refusal to modify trademark injunction); *Matthews v. Diaz*, 426 U.S. 67 (1976) (challenge to constitutionality of legislation setting Medicare eligibility of resident aliens).

1    **V.    DEFENDANTS' ARGUMENTS REGARDING CLASS CERTIFICATION ARE BARRED,**

2    **IRRELEVANT, AND MERITLESS.**

3    Defendants, "[w]hile . . . not yet formally moving to decertify the class",

4    curiously argue that the Settlement should end because "fundamental flaws in the

5    class require terminating the agreement in the public interest." Motion to Terminate

6    at 56. Defendants fail to explain how their complaints about the class warrant

7    termination under Rule 60 or any other cognizable legal standard. Yet even

8    assuming, *arguendo*, Defendants were seeking decertification, their arguments

9    would be meritless.[29]

10    **A.    Defendants have waived challenge to class certification.**

11    Defendants simply ignore that the Ninth Circuit has held that "the

12    government waived its ability to challenge the class certification when it settled the

13    case and did not timely appeal the final judgment." *Flores v. Lynch*, 828 F.3d at

14    908.  Defendants also ignore the plain language of Federal Rule of Civil Procedure

15    23(c)(1)(C): "An order that grants or denies class certification may be altered or

16    amended *before final judgment*." (Emphasis added.) The Parties settled this case

17    and the Court entered final judgment thereon more than twenty years ago.[30]

18    

_____

19    [29] Defendants' argument regarding the import of the "bureaucratic reorganization"

20    of the former INS is wholly discredited. *Flores v. Lynch*, 828 F.3d at 910 ("… there is no reason why that bureaucratic reorganization should prohibit the government

21    from adhering to the Settlement").

22    [30] Defendants' decades-late challenge to the class notice and settlement approval

23    procedures are barred for the same reasons. In any event, notice to the class was reasonable: it was posted in the very facilities in which Defendants were detaining

24    class members and followed essentially the same procedure to which the parties

25    have recently stipulated in conjunction with Plaintiffs' motion for attorneys' fees (Doc. #607), which the Court approved (Doc. #613). That a fairness hearing may

26    not have been held when no class member objected is neither surprising nor a

27    deficiency because the Court approved the Settlement before the 2003 amendment

28    to Rule 23, which added the fairness hearing requirement.

**B.      Plaintiffs easily meet the Rule 23 commonality requirement.**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[N]ot every question of law or fact must be common to the class; 'all that Rule 23(a)(2) requires is a single significant question of law or fact.'" *Rodriguez v. Nike Retail Servs., Inc.*, No. 5:14-cv-01508-BLF, 2016 WL 8729923, at *9 (N.D. Cal. Aug. 19, 2016) (quoting *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013)) (original emphasis omitted); *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) ("[T]he commonality requirements[] asks [sic] us to look only for some shared legal issue or a common core of facts.").[31]

Given that Plaintiffs are "entitled to only such relief as is explicitly or implicitly authorized by the *Flores* Agreement," July 30 Order at 3, common questions of law or fact in this case include, at the very least, whether Defendants' Final Rule strips class members of rights and protections the Settlement confers. Even apart from Defendants' having stipulated to a *class-wide* settlement, this

---

Defendants' aspersions against class counsel are both irrelevant and unpersuasive. *See generally* Declaration of Peter A. Schey (Defendants themselves release class members to the Casa Libre licensed youth shelter).

[31] The standard is even more liberal in civil rights cases seeking injunctive relief against "a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005). Such suits "by their very nature often present common questions satisfying Rule 23(a)(2)." 7A Charles A. Wright, Arthur R. Miller, *Federal Practice & Procedure* § 1763 (3d ed. 2018); *see also Rodriguez*, 591 F.3d at 1122-24 (finding commonality satisfied in habeas class action involving challenges to prolonged immigration detention without bond hearing); *Walters v. Reno*, 145 F.3d 1032, 1045-46 (9th Cir. 1998) (finding commonality in case challenging notices of deportation proceedings); *Lucas R. v. Azar*, No. 18-cv-5741-DMG-PLAx, 2018 WL 7200716, at *13-14 (C.D. Cal. Dec. 27, 2018) (finding commonality requirement satisfied in case challenging ORR policies, practices, and procedures affecting immigrant children).

1   question, standing alone, would satisfy Rule 23(a)(2)'s permissive standard.

2   *Abdullah*, 731 F.3d at 957; *Perez-Olano v. Gonzalez,* 248 F.R.D. 248, 257 (C.D.

3   Cal. 2008) ("Courts have found that a single common issue of law or fact is

4   sufficient . . ..") (citations omitted); *Sweet v. Pfizer*, 232 F.R.D. 360, 367 (C.D. Cal.

5   2005) ("there must only be one single issue common to the proposed class")

6   (internal quotation marks and citation omitted).[32]

7       **C.**    **The Settlement creates no "tension" with parental rights.**

8       In a final meritless complaint over class certification, Defendants declare that

9   the Settlement "created and continues to create significant tension with parental

10  rights." Motion to Terminate at 59. This Court has previously dismissed this

11  assertion. Ex Parte Order at 6 ("Given the situation arising from Defendants' earlier

12  family separation policy, detained parents may choose to exercise their *Ms. L* right

13  to reunification or to stand on their children's *Flores* Agreement rights. Defendants

14  may not make this choice for them."). "[P]laintiffs in this case have always *agreed*

15  that detention of the family together is permissible if the parent consents." *Id.* at 6

16  (internal quotation marks and citation omitted) (brackets and emphasis in original).

17      No law requires Defendants to detain families indefinitely, *id.* at 5

18  ("Absolutely nothing prevents Defendants from reconsidering their current blanket

19  policy of family detention . . .."), and research has unequivocally established that

20  detaining families is profoundly harmful to children.[33] Any "tension" with parental

21  _____

22  [32] Of course, numerous other common questions of law and fact persist, including whether Defendants' policies and practices relating to releasing children to

23  sponsors, and whether the conditions of confinement class members are subjected to in Defendants' custody, violate the United States Constitution.

24

25  [33] DHS's own advisory committee urges abandoning family detention in all but exceptional circumstances. *See Report of the DHS Advisory Committee on Family*

26  *Residential Centers* (Sept. 30, 2016), *available at*

27  www.ice.gov/sites/default/files/documents/Report/2016/ACFRC-sc-16093.pdf (last visited September 12, 2019) ("detention is generally neither appropriate nor

28  necessary for families – . . . detention or the separation of families for purposes of

OPPOSITION TO MOTION TO TERMINATE THE
FLORES SETTLEMENT AGREEMENT
CV 85-4544-DMG(AGRx)

1   rights must be attributed to Defendants' fixation with family detention, not the

2   Settlement.

3   **VI.   CONCLUSION**

4    For the foregoing reasons, Defendants' motion should be denied.

5   Dated: September 13, 2019

      CARLOS R. HOLGUÍN

6         PETER A. SCHEY

      Center for Human Rights & Constitutional Law

7

      LEECIA WELCH

8         NEHA DESAI

      POONAM JUNEJA

9         FREYA PITTS

      National Center for Youth Law

10

11

      HOLLY S. COOPER

12         U.C. Davis School of Law

13

      KEVIN ASKEW

14         ELYSE ECHTMAN

      SHAILA DIWAN RAHMAN

15         RENE KATHAWALA

16         Orrick, Herrington & Sutcliffe LLP

17

18         */s/ Carlos Holguín*

      Carlos Holguín

19

20

      Leecia Welch

21

22

      Holly S. Cooper

23

24

25

26

27   immigration enforcement or management, or detention is never in the best interest

28   of children.").

OPPOSITION TO MOTION TO TERMINATE THE
FLORES SETTLEMENT AGREEMENT
CV 85-4544-DMG(AGRx)