JOSEPH H. HUNT
Assistant Attorney General
Civil Division
AUGUST E. FLENTJE
Special Counsel to the Assistant Attorney General
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director, District Court Section
Office of Immigration Litigation
SARAH B. FABIAN
Senior Litigation Counsel, District Court Section
Office of Immigration Litigation
    P.O. Box 868, Ben Franklin Station
    Washington, D.C. 20044
    Tel: (202) 532-4824
    Fax: (202) 305-7000
    Email: sarah.b.fabian@usdoj.gov

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY LISETTE FLORES; *et al.*, | Case No. CV 85-4544 |
|     Plaintiffs, | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE PLAINTIFFS' DECLARATIONS AND REQUEST FOR AN EVIDENTIARY HEARING BEFORE THE SPECIAL MASTER** |
|     v. | |
| WILLIAM P. BARR, Attorney General of the United States; *et al.*, | |
|     Defendants. | |

# **TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................1

    A.    Plaintiffs Have Not Met Their Burden to Establish that the Frye Declaration is Admissible .............................................2

    B.    The Declaration of Marsha Rae Griffin, M.D. Should be Excluded as an Improper Lay Witness Evidence..................8

        1.    *Plaintiffs cannot meet their burden of showing that Dr. Griffin meets all the expert requirements under Rule 702* ...........................................................8

        2.    *Because Plaintiffs have failed to demonstrate that Dr. Griffin's declaration meets all four requirements under Rule 702, the hearsay contained in her declaration is inadmissible*..............................................11

    C.    The Declaration of Ryan Matlow, Ph.D. Should be Excluded as Improper Lay Witness Evidence..........................................12

    D.    Plaintiffs Have Not Met Their Burden to Establish that Dr. N. Ewen Wang's Cover Letter, Addendum, and Attached Program Reports Are Admissible Expert Testimony .........15

II.   REQUEST FOR EVIDENTIARY HEARING BEFORE THE SPECIAL MASTER ........................................................................19

III.  CONCLUSION....................................................................................20

i

# TABLE OF AUTHORITIES

## CASES

*Carmen v. San Francisco Unified Sch. Dist.,*
237 F.3d 1026 (9th Cir. 2001)..............................................................3

*Claar v. Burlington Northern R. Co.,*
29 F.3d 499 (9th Cir. 1994).......................................... 10, 12, 13, 14, 16

*Crow Tribe of Indians v. Racicot,*
87 F.3d 1039 (9th Cir. 1996)..............................................................16

*Daubert v. Merrell Dow Pharm., Inc.,*
43 F.3d 1311 (9th Cir. 1995)................................................. 9, 13, 16

*Daubert v. Merrell,*
509 U.S. 579 (2010) .............................................................. 10, 13, 15

*Diviero v. Uniroyal Goodrich Tire Co.,*
114 F.3d 851 (9th Cir. 1997)..............................................................12

*Dukes v. Wal-Mart Stores, Inc.,*
222 F.R.D. 137 (N.D. Cal. 2004)........................................................14

*Ellis v. Costco Wholesale Corp.,*
657 F.3d 970 (9th Cir. 2011)..............................................................13

*Estate of Barabin v. AstenJOhnson, Inc.,*
740 F.3d 457 (9th Cir. 2014)..............................................................13

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.,*
618 F.3d 1025 (9th Cir. 2010).................................................... 10, 11

*Land Granters in Henderson, Union and Webster Counties, Kentucky v. United States,*
86 Fed. Cl. 35 (Fed. Cl. 2009) ............................................................5

*Kumho Tire Company, Ltd., v. Carmichael,*
526 U.S. 137 (1999) ............................................................ 10, 12, 13

*Lust ex rel Lust v. Merrell Dow Pharms., Inc.,*
89 F.3d 594 (9th Cir. 1996)................................................................9

*Messick v. Novartis Pharm. Corp.,*
747 F.3d 1193 (9th Cir. 2014)............................................................15

*Powell v. Anheuser-Busch Inc.,*
No. CV 09-729-JFW (VBKX), 2012 WL 12953439
(C.D. Cal. Sept. 24, 2012)............................................................9, 11

*PRD Washington-DC v. PRD Maryland,*
311 F.Supp.2d 14 (D.D.C. 2004)........................................................7

ii

*Primiano v. Cook,*
    598 F.3d 558 (9th Cir. 2010) .................................................................................9

*Self-Insurance Inst. Of America, Inc. v. Software and Information Ind. Ass'n,*
    208 F. Supp. 2d 1058 (C.D. Cal. 2000) ...............................................................2

*United States v. Jawara,*
    462 F.3d 1173 (9th Cir. 2006) ...................................................................... 13, 14

*United States v. Jawara,*
    474 F.3d 565 (9th Cir. 2007) ..............................................................................14

*United States v. Phillips,*
    219 F.3d 404 (5th Cir. 2000) ............................................................................4, 5

*United States v. Sanchez–Lima,*
    161 F.3d 545 (9th Cir. 1998) ............................................................................5, 6

*United States v. Sarras,*
    575 F.3d 1191 (11th Cir. 2009) ...........................................................................8

*United States v. Washington,*
    106 F.3d 983 (D.C. Cir. 1997) .........................................................................4, 5

*Walding v. United States,*
    955 F. Supp. 2d 759 (W.D. Tex. 2013) .............................................................6, 7

### **STATUTES**

28 U.S.C. § 1746 ......................................................................................................14

Emergency Supplemental Appropriations for Humanitarian Assistance and
    Security at the Southern Border Act Pub. L. 116-26 ..........................................6

### **RULES**

Fed. R. Evid. 602 ...................................................................................................2, 3

Fed. R. Evid. 702 ............................................................................................ *passim*

Fed. R. Evid. 702(a) ...................................................................................... 9, 15, 17

Fed. R. Evid. 702(a)-(d) ............................................................................................9

Fed. R. Evid. 702(c) ................................................................................................16

Fed. R. Evid. 801 .......................................................................................................3

Fed. R. Evid. 801(d)(2) .............................................................................................6

Fed. R. Evid. 802 .......................................................................................................3

iii

Fed. R. Evid. 803(1)...........................................................................................6, 11

Fed. R. Evid. 803(3)............................................................................................6, 7

Fed. R. Evid. 803(4)....................................................................................... 11, 12

Fed. R. Evid. 807 ..............................................................................................4, 5

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' DECLARATIONS AND MOTION FOR EVIDENTIARY HEARING**

## I.    <u>INTRODUCTION</u>

Plaintiffs have provided no basis for this Court to find that their declarations should not be excluded either in whole, or in part. In their Opposition to Defendants' Motion to Exclude Plaintiffs' Declarations, ECF 630 (Opposition), Plaintiffs assert, with little to no legal justification, that their declarations are admissible because: (1) Hope Frye's declaration is based on personal knowledge and her statements are either not hearsay or fall within a hearsay exception, and (2) their declarations meet the evidentiary requirements and contain sufficiently established reliable principles and methods on which their experts rely. However, Plaintiffs' have not cured the deficiencies in their declarations in a manner that would render them admissible under the Federal Rules of Evidence. A party seeking admission of a piece of evidence bears the burden of demonstrating its admissibility, which Plaintiffs have failed to do. The Federal Rules of Evidence exist to ensure that proceedings are administered fairly, the truth ascertained, and just determinations rendered— Plaintiffs provide this Court no basis to conclude that these Rules should be disregarded in its evaluation of their Motion.  Under these circumstances, the Court should not permit Plaintiffs to rely on inadmissible evidence.

The declarations of Hope M. Frye, Marsha Rae Griffin, MD, and Ryan Matlow, Ph.D., should be excluded  and any testimony from these declarants precluded. Similarly, the cover letter, addendum, and program reports prepared by Dr. N. Ewen Wang should be excluded and any testimony from Dr. Wang also precluded.

### A.     Plaintiffs Have Not Met Their Burden to Establish that the Frye Declaration is Admissible.

In their Opposition, Plaintiffs assert that (1) Defendants have not identified any particular statement in the Frye Declaration that they claim "lacks foundation, is not based on personal knowledge, [or] calls for speculation", and (2) Ms. Frye's statements are either not hearsay or fall within a hearsay exception.  ECF 630 at 6-8. For the reasons below, Plaintiffs' arguments lack merit and the Court should exclude the portions of the Frye Declaration as highlighted in Defendants' Exhibit 1, submitted in support of their Motion to Exclude.  *See* ECF 612-1.

As an initial matter, Plaintiffs' claim that Defendants have not identified any particular statement that they claim lacks foundation, is speculative, or is not based on personal knowledge is without merit. To the contrary, Defendants provided this Court (and Plaintiffs) a color-coded version of the Frye declaration to identify with particularity each statement to which Defendant objected and the reason for that objection. *See* ECF 612-1, Defs.' Ex. 1. Many of the hearsay objections piggyback on the lack of personal-knowledge and foundation objections because the personal knowledge requirement of Rule 602 of the Federal Rules of Evidence prevents a lay witness from testifying as to inadmissible hearsay. Put another way, declarations based on a third-party's personal knowledge or experience are inadmissible because they rely on either hearsay or speculation. *Self-Insurance Inst. Of America, Inc. v. Software and Information Ind. Ass'n*, 208 F. Supp. 2d 1058, 1063–64 (C.D. Cal. 2000) (affirming defendants' objections over (1) a declarant's statements about third persons being "confused" for lack of personal knowledge and (2) statements about "calls to myself and to my staff" from clients because the statements in these calls are inadmissible hearsay). Ms. Frye does not have personal knowledge about the events described in her declaration that rely on the hearsay of other individuals.

Thus, Plaintiffs' accusation that Defendants have only provided boilerplate objections with regard to the Frye Declaration is simply not accurate.

Plaintiffs next claim that Ms. Frye's declaration is based on personal knowledge and that she has laid a proper foundation because she visited the Homestead facility and her statements are based on her personal observations. Plaintiffs misapprehend the personal knowledge requirement of Rule 602. As the Ninth Circuit explained, "[i]t is not enough for a witness to tell all she knows; she must know all she tells." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001). Many of the statements identified by Defendants as inadmissible hearsay are identified as such because Ms. Frye admits that the matters she is discussing are things that she learned from others, and she therefore fails to demonstrate she has personal knowledge of the subject matter of her statements. For example, the following statements reflect hearsay about which Ms. Frye has not demonstrated that she has personal knowledge: "According to Ms. W. Homestead has 3,321 employees covering three shifts." (¶ 5); "Ms. W stated that HHS contracts separately for all service necessary to run Homestead…." (*id.* ¶ 6); "According to Ms. W. there were 2,026 children ages 13-17…." (*id.* ¶ 7); "Children understand that they are not free to leave…." (*id.* ¶ 8); "However, [Ms. W.] reported that local police have been called…. She also said she would expect city of Homestead firefighters…." (*id.* ¶ 9); "[Ms. W.] claims that ear plugs are available upon request…." (*id.* ¶ 13); "According to the medical experts on our monitoring team, the unsanitary condition of the bathroom area and the incessant and deafening noise of the fan are clear health hazards." (*id.* ¶ 14); "[Ms.] W. said that children were put there when they turned 18…." (*id.* ¶ 17). Because such statements reflect matters that Ms. Frye purports to have learned from others, and are not matters that Ms. Frye knows herself or experienced with her five senses, and because Ms. Frye is presenting out-of-court statements of others that she is using for their truth value,

these statements are inadmissible hearsay and should be stricken. Fed. R. Evid. 801, 802.

Ms. Frye also fails to demonstrate personal knowledge where her statements appear to be based on the collective knowledge of the "*Flores* team" whose visit she supervised. For example, Ms. Frye states: "Children we interviewed universally disagreed…." (*id.* ¶ 13); "While we were told that there are 30 security cameras…we observed no one watching…." (*id.* ¶ 15); "We were told the fields are being re-sodded." (*id.* ¶ 16). These statements appear to reflect facts known by the collective team, rather than by Ms. Frye herself. Because large segments of the Frye Declaration reflect hearsay, lack foundation, and fail to conform to the Local Rules and the Federal Rules Evidence, those statements should be excluded from the record.

Plaintiffs then claim that, even if the statements identified by Defendants are hearsay, they are admissible because they fall within various hearsay exemptions and exceptions. Plaintiffs make blanket assertions with little analysis and cite to no case law to support their claims that these various categories of statements are admissible.

First, Plaintiffs assert that "[s]tatements made by detained children and employees at Homestead meet the standards of the Residual exception to the hearsay Rule." ECF 630, at 8. Rule 807 of the Federal Rules of Evidence provide a catchall exception to the hearsay rule in that it permits the introduction of hearsay statements possessing circumstantial guarantees of trustworthiness akin to, but not otherwise covered by, the existing exceptions to the hearsay rule. "The residual hearsay exception is to be used only rarely, in truly exceptional cases." *United States v. Phillips*, 219 F.3d 404, 419 n.23 (5th Cir. 2000) (internal citations omitted). "The proponent of the statement bears a heavy burden to come forward with indicia

4

of both trustworthiness and probative force." *Id.* (quoting *United States v. Washington*, 106 F.3d 983, 1001-02 (D.C. Cir. 1997).

Plaintiffs do not identify any specific statements they claim meet this exception and their arguments here are cursory at best. Moreover, they claim that these unidentified statements have "circumstantial guarantees of trustworthiness" because they are "in a sworn statement made under penalty of perjury, by a member of the bar…." *Id.* And they further assert that these unidentified statements are "probative" because they pertain to the onsite practices of Homestead employees shared by the employee and in the sworn declarations of children. These arguments are entirely without merit, and without more, Plaintiffs cannot meet the heavy burden of demonstrating that these (unspecified) statements fall within the residual hearsay exception.

With regard to Ms. Frye's declaration, Plaintiffs assert that, because Ms. Frye is an attorney and signed her declaration under penalty of perjury, it bears the necessary trustworthiness required under Rule 807. Plaintiffs misapprehend the guarantees of trustworthiness requirement. Rule 807's trustworthiness requirement goes to the reliability of the statement or evidence proffered, not the character of the person introducing the evidence. The residual hearsay exception is inapplicable here as the declarant does not establish personal knowledge of the facts and matters set forth in the declaration at issue. *See Land Grantors in Henderson, Union and Webster Counties, Kentucky v. United States*, 86 Fed. Cl. 35 (Fed. Cl. 2009) (finding residual hearsay exception inapplicable where, inter alia, affiant lacked personal knowledge of facts and events averred to, and affidavit therefore lacked the "circumstantial guarantees of trustworthiness" needed under the residual hearsay exception). Many of Ms. Frye's statements are not her own words—she is recounting what another individual told her. In addition, those statements and conversations were not made under oath or recorded. *United States v. Sanchez–*

*Lima*, 161 F.3d 545, 547 (9th Cir. 1998) (hearsay statements were trustworthy because they were videotaped, made under oath, made voluntarily, and consistent with prior statements). Thus, the circumstantial guarantees of trustworthiness required to overcome the hearsay are not present here.

Second, Plaintiffs claim that the statements of Ms. W. and Ms. O. that are repeated by Ms. Frye in her declaration are not hearsay because they are statements of a party opponent under Rule 801(d)(2) of the Federal Rules of Evidence. However, Rule 801(d)(2) applies to statements made by an opposing party. Neither Ms. W. or Ms. O. are employees or contractors of the federal government, and therefore, they are not parties in this action. It is the federal government that is a party to the *Flores* action, and not any individual grantee or contractor shelter such as the Homestead facility and its employees. Homestead employees do not work directly for the Office of Refugee Settlement (ORR) and do not have a principal-agent relationship where they simply carry out functions of ORR. *See Walding v. United States*, 955 F. Supp. 2d 759, 808 (W.D. Tex. 2013)*; see also* Section 404 of the Emergency Supplemental Appropriations for Humanitarian Assistance and Security at the Southern Border Act, 2019, Pub. L. 116-26 (recognizing that HHS obligates money to "grantees" or "contractors" to house unaccompanied alien children in facilities that are not State-licensed and explaining how the "terms of the grant or contract" should be written to use funds appropriated.). Because Ms. W. and Ms. O. are not party opponents under Rule 801(d)(2), their statements as retold by Ms. Frye in her declaration are inadmissible hearsay.

Third, Plaintiffs claim that, in the alternative, that "[Ms.] W.' and [Ms.] O.'s statements may be viewed as falling within Federal Rule of Evidence § [803(3)] involving a 'statement of the declarant's then existing state of mind....'" [1] ECF 630 at 8-9. More specifically, Plaintiffs appear to seek to apply Rule 803(3) to

---

[1] Plaintiffs cite to 803(2), excited utterance.  However, they quote Rule 803(3), state of mind hearsay exception language, this appears to be an inadvertent error.

"statements regarding detained children."[2] *Id.* However, this exception is wholly inapplicable.

Plaintiffs assert that Ms. W.'s and Ms. O.'s statements about Homestead policies and practices demonstrate Defendants' plans and intentions and thus are not hearsay. Rule 803(3) creates an exception to the hearsay rule for "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed...." Fed. R. Evid. 803(3). Rule 803(3) requires that the statement relate to a relevant state of mind, emotion, or physical condition existing at the time the statement was made. Statements that fall within this exception are classified as hearsay exceptions because they are offered to prove something the declarant actually thinks, believes, or intends at the time the statement is made—for this reason, factual assertions do not fall within this exception. *See PRD Washington-DC v. PRD Maryland*, 311 F.Supp.2d 14, 16-17 (D.D.C. 2004) (the state-of-mind exception does not include "a statement of memory or belief to prove the fact remember or believed").

Plaintiffs' also challenge the objections Defendants lodged regarding Ms. Frye's statements as improper opinion testimony by a lay witness.[3] ECF 630, at 10-11. As explained in Defendants' Motion, lay witnesses may offer opinion testimony if the opinions or inferences are rationally based on the witness's own perceptions, but those opinions cannot be based on specialized knowledge. *United States v. Sarras*, 575 F.3d 1191, 1217 (11th Cir. 2009). Indeed, one of the statements cited

---

[2] Plaintiffs also make a passing reference to Fed. R. Evid. § 803(1), the present sense impression hearsay exception claiming "other statements are admissible as 'present sense impressions." ECF 630, at 9. Without more, Plaintiffs cannot establish that this exception applies to any statements in the Frye Declaration.

[3] Plaintiffs do not appear to challenge Defendants' objections to some of Ms. Frye's statement as improper legal conclusions by a lay witness. ECF 630, at 11.

by Plaintiffs as an example of admissible lay witness opinion testimony is a statement regarding matters about which Ms. Frye does not have the requisite specialized knowledge to testify—to wit, Ms. Frye does not purport to be a doctor or have any specialized knowledge on the exercise standards for children. *See* ECF 547-3 ¶16 (Ms. Frye opines that the outdoor recreation area "appears wholly insufficient to accommodate the exercise needs of the hundreds of children being held at Homestead").

In sum, Plaintiffs fail to establish any actual exemption or exception to the hearsay rule for the large swaths of the Frye Declaration that fail to conform to the Local Rules and the Federal Rules. Plaintiffs thus fail to provide any basis on which the statements identified by Defendants in Defs.' Ex. 1 (ECF 612-1) should be admitted and considered by this Court.

**B.     The Declaration of Marsha Rae Griffin, M.D. Should be Excluded as an Improper Lay Witness Evidence.**

*1.     Plaintiffs cannot meet their burden of showing that Dr. Griffin meets all the expert requirements under Rule 702.*

Plaintiffs have failed to meet their burden of showing that Dr. Griffin is qualified to opine about the conditions of Homestead because Plaintiffs have not demonstrated that Dr. Griffin's declaration meets all the expert-qualification requirements under Federal Rule 702. Specifically, Plaintiffs have failed to show that Dr. Griffin relied upon reliable methods in coming to her conclusions, or that her declaration would be helpful to the Court in determining whether Homestead is compliant with the *Flores* Agreement.

The Federal Rules of Evidence are clear: experts may only testify in the form of an opinion if they are first qualified to do so. Fed. R. Evid. 702. It is the burden of the expert-testimony proponent to demonstrate that the expert meets all four requirements under Rule 702. *Lust ex rel Lust v. Merrell Dow Pharms., Inc.*, 89

F.3d 594, 598 (9th Cir. 1996). Thus, Plaintiffs must prove the following: (1) the expert's specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data, and (3) the expert's testimony is the product of reliable principles and methods, (4) and the expert reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702(a)-(d). Plaintiffs have failed to meet their burden on all four requirements.

First, Plaintiffs have not shown that Dr. Griffin's declaration testimony is helpful to this Court in determining the issue in this Motion to Enforce: whether Homestead is compliant with the *Flores* Agreement. *See* ECF 578, at 6–7. The requirement that the opinion testimony be helpful to the trier of fact "'goes primarily to relevance.'" *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (*quoting Daubert v. Merrell*, 509 U.S. 579, 591 (2010)). Relevant expert testimony "logically advances a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995). Dr. Griffin's observations at locations other than Homestead are not relevant to Homestead's compliance, and Plaintiffs have not met their burden of demonstrating that the conditions at Homestead are the same or sufficiently similar to what Dr. Griffin has observed elsewhere. Although Plaintiffs parade Dr. Griffin's qualifications and experience in their Opposition (ECF 578 at 12–13), this does not cure the fact that her knowledge and experience is from facilities other than Homestead. Further, Plaintiffs concede that Dr. Griffin's testimony regarding medical or mental health in her declaration is "not necessary to adjudicate Plaintiffs' legal claims." *Id.* at 14. Accordingly, because Dr. Griffin has never observed Homestead, and because her medical expertise is not relevant to whether Homestead is complying with the Agreement, her testimony is not helpful here, as required under Rule 702(a).

1      Second, Plaintiffs have failed to show that Dr. Griffin's testimony is based

2 on sufficient facts or data. When an expert relies on "incomplete facts and data,"

3 the expert's opinion is unreliable. *Powell v. Anheuser-Busch Inc.*, No. CV 09-729-

4 JFW (VBKX), 2012 WL 12953439, at *7 (C.D. Cal. Sept. 24, 2012) (finding that

5 expert did not base testimony on sufficient facts because he did not review all

6 witnesses' deposition testimony before forming his opinions). Plaintiffs do not deny

7 that Dr. Griffin has never observed Homestead, nor does Dr. Griffin claim to be

8 familiar with Homestead's policies. Thus, because Dr. Griffin does not base her

9 testimony on her observations of Homestead, but of other unrelated facilities, her

10 underlying facts and data is incomplete and therefore fails under Rule 702.

11      Lastly, Plaintiffs fail to show what reliable methods or principles Dr. Griffin

12 used in coming her to conclusions, and, instead, rest on the assumption that her

13 experience is sufficient. ECF 630 at 12. When an expert fails to provide the

14 reasoning and methods underlying an expert witness's conclusion, the court cannot

15 make the necessary findings of reliability and utility to a fact-finder under Rule 702.

16 *Claar v. Burlington Northern R. Co.,* 29 F.3d 499, 502 (9th Cir. 1994) (holding that

17 the district court could not determine the experts' reliability because the experts'

18 affidavits were void of any explanation about the reasoning and methods underlying

19 their conclusions). Indeed, the court "must ensure that expert testimony, whether it

20 is based on 'professional studies or personal experience,' employs ... the same level

21 of intellectual rigor that characterizes the practice of an expert in the relevant field."

22 *Fortune Dynamic, Inc. v. Victori''s Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025,

23 1035–36 (9th Cir. 2010) (quoting *Kumho Tire Company, Ltd., v. Carmichael,* 526

24 U.S. 137, 152, 119 S.Ct. 1167, 1176 (1999)). Here, the Court cannot make the

25 necessary reliability finding because Dr. Griffin does not explain what methods and

26 principles she used—or whether she applied such principles and methods to this

27 case—in her declaration. Plaintiffs cannot speak on behalf of Dr. Griffin by

28

asserting in their Opposition Brief that Dr. Griffin's use of interviews in this particular case was a reliable method. Dr. Griffin's declaration is void of any assertions that other professionals in her field would consider the interviews that she conducted as a reliable method, or that she has any reason to believe that the interviews she conducted were reliable. As such, Plaintiffs cannot meet their burden of showing that Dr. Griffin's declaration is the product of reliable principles and methods.

### 2. Because Plaintiffs have failed to demonstrate that Dr. Griffin's declaration meets all four requirements under Rule 702, the hearsay contained in her declaration is inadmissible.

As discussed in Defendants' Motion to Exclude, lay witnesses may not rely on inadmissible hearsay. *See* ECF 612 at 4. Here, because Plaintiffs have not shown that Dr. Griffin may give expert testimony under Rule 702, Dr. Griffin's testimony is lay-witness testimony and may not rely on inadmissible hearsay.

Plaintiffs' assertion that the statements upon which Dr. Griffin relies are hearsay exceptions is misinformed. First, Plaintiffs appear to argue that statements in paragraphs 8 and 9 fall under the "present-sense impression" exception. To be a present-sense impression, the statement must describe or explain and event or condition "made *while or immediately after* the *declarant perceived* it." Fed. R. Evid. 803(1) (emphasis added). In paragraph 8 of Dr. Griffin's declaration, she recounts what children told her about how long they had been at the Tornillo facility, what the children were "told" about their case status, and statements about the children's thoughts regarding their release. ECF 578-1, 76 at ¶ 8. These children's statements are not describing an event or condition that was happening while the children perceived it, but are describing events that happened in the past. Similarly, in paragraph 9, Dr. Griffin is describing a series of statements by an unspecified girl regarding past events—not events that were occurring as the

declarant perceived them. *Id.* at ¶ 9. As such, neither of these hearsay statements meet the present-sense-impression exception.

Plaintiffs likewise fail to meet their burden of showing that paragraph 6 is an exception to hearsay under the "medical diagnosis or treatment" exception. To fall under Rule 803(4), the statement must be "made for—and [be] reasonably pertinent to –medical diagnosis or treatment; and describe[] medical history, past or present symptoms or sensations; their inception; or their general cause." Fed. R. Evid. 803(4). Here, Dr. Griffin did not make the statement in paragraph 6 (about how she referred a case to a physician) to describe the adolescent's medical history or symptoms. ECF 578-1, 75, ¶ 6. Nor does it appear that the physician's statement to Dr. Griffin was pertinent to any medical diagnosis or treatment since Dr. Griffin does not assert that she was still treating that particular adolescent. *Id.* Thus, Plaintiffs have not shown that paragraph 6, or any other paragraph, is admissible under the medical-diagnosis exception. All hearsay statements in Dr. Griffin's declaration are therefore inadmissible, and her declaration should be excluded as improper lay-witness evidence.

### C.   The Declaration of Ryan Matlow, Ph.D. Should be Excluded as Improper Lay Witness Evidence.

Plaintiffs have failed to demonstrate that Dr. Matlow is qualified to testify as an expert because Dr. Matlow does not state that his declaration is based upon reliable principles and methods. When an expert opinion fails to explain what methodology he uses or whether others in the field use such methods, the court has no way to judge the expert's the dependability of his opinions. *Claar*, 29 F.3d at 502; *see also Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997) (holding that expert testimony was "unreliable and inadmissible" because expert was unable to "satisfactorily [ ] explain the reasoning behind his opinions," which rendered his opinions "unsubstantiated and subjective"). Like Dr. Griffin, Dr. Matlow does not state anywhere in his declaration that he relied upon reliable

principles and methods in coming to his conclusions and opinions. Because his opinion lacks an explanation as to what methodology he employed and why he chose that methodology, or whether other psychologists would likewise use such a methodology, this Court has no way to judge the dependability of his opinions. *Claar*, 29 F.3d at 502.

Although Dr. Matlow may possess specialized knowledge about child psychology, he still has to meet all four prongs under Rule 702. Even if *Daubert* were inapplicable here because Dr. Matlow's reliability depends heavily on his knowledge and experience—as Plaintiffs allege (ECF 630 at 15)—this does not change the fact that Plaintiffs have the burden to prove that Dr. Matlow is a qualified expert under Rule 702. *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 982 (9th Cir.2011) (District courts "act as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards."); *see also Estate of Barabin v. AstenJOhnson, Inc.*, 740 F.3d 457, 464 (9th Cir. 2014) (noting that, even though *Daubert* hearing was not required, "Rule 702 'clearly contemplates *some* degree of regulation of the subjects and theories about which an expert may testify.'" (*citing Daubert*, 509 U.S. at 589)). Because Dr. Matlow's declaration is silent about the reliability of his interviewing methods and experience, Plaintiffs have failed to properly qualify him as an expert.

Plaintiffs nonetheless contend that Dr. Matlow "relied on his experience and interview skills to assess" certain class members. ECF 630 at 15. But, like Dr. Griffin, Plaintiffs cannot speak on Dr. Matlow's behalf. Indeed, nowhere in Dr. Matlow's declaration does Dr. Matlow state that the interviews he conducted were a reliable methods upon which others in his field would rely, as required under Rule 702. Just because interviewing may be a reliable method in some expert reports, interviewing is not necessarily a reliable method in this case. Without any statements from Dr. Matlow attesting to the reliability of his interviewing, this

1  Court is unable to determine whether his testimony meets the reliability prongs of

2  Rule 702. *Claar*, 29 F.3d at 502.

3       Additionally, the cases that Plaintiffs rely on are no help here. Plaintiffs cite

4  to *United States v. Jawara*, 462 F.3d 1173, 1190 (9th Cir. 2006) for their proposition

5  that interviewing children "is of a type reasonably relied upon by experts in the

6  [psychiatric] field of forming opinions or inferences upon the subject." ECF 630 at

7  16. But *Jawara* did not stand for this proposition. In fact, the full sentence from

8  *Jawara* that Plaintiffs cited to is: "Agent Smalley's testimony *regarding*

9  *comparative country conditions*, founded on State Department country reports, was

10  properly admitted because these reports are 'of a type reasonably relied upon by

11  experts in the particular field in forming opinions or inferences upon the subject…'"

12  *Id.* (emphasis added). Thus, this case does not state that interviewing children is a

13  reliable method, but that relying upon country-conditions reports in the context of

14  immigration proceedings was reliable. *Id.* Additionally, on rehearing, Ninth Circuit

15  held that although "the district court's ruling suggests an implicit finding of

16  reliability, the failure to make an explicit reliability finding was error." *United*

17  *States v. Jawara*, 474 F.3d 565, 583 (9th Cir. 2007).[4] Given the wealth of case law

18  stating that the evidence proponent must demonstrate that an expert used reliable

19  principles and methods, no matter the circumstances, Plaintiffs cannot sidestep the

20  reliability requirement. Consequently, Plaintiffs have not properly proffered Dr.

21  Matlow as an expert, and, thus, his expert opinions and reliance on inadmissible

22  evidence should be excluded.

23

24

25

26

27  [4] Plaintiffs also cite "*Dukes v. Wal-Mart, Inc.*, F.R.D. 189, 198 (C.D. Cal. 2004)." However, after a reasonable search for this case, nothing came up. The closest case to Plaintiffs' cited case is *Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137 (N.D. Cal. 2004), but this case does not mention anything about expert interviews.

28

1
2

**D.    Plaintiffs Have Not Met Their Burden to Establish That Dr. N. Ewen Wang's Cover Letter, Addendum, and Attached Program Reports Are Admissible Expert Testimony**

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

In their Opposition, Plaintiffs attempt to overcome the deficiencies in Dr. Wang's cover letter and attached report by filing corrected documents with their opposition. Specifically, Plaintiffs submitted: (1) an "addendum" to her cover letter and a report containing a statement as required by 28 U.S.C. § 1746 declaring under penalty of perjury that everything in the addendum and her cover letter is true and correct; (ECF 630-1, Ex. 1 at 6); (2) a curriculum vitae highlighting Dr. Wang's experience and research in pediatric health, emergency medicine, and health services (*id*. at 7-50); (3) an edited version of Dr. Wang's May 29, 2019, cover letter; and (4) an updated report, "Facility Report for Flores v. Barr Class Counsel: Homestead" (Program Report), dated August 8, 2019 (*id*. at 1-3, 51-62). The updated Program Report is substantially similar to the original report, "Facility Report for Flores v. Barr Class Counsel: Homestead," dated May 24, 2019, except that it uses an additional two months of data and several of the summary paragraphs have been edited. *Compare* ECF 547-3, Ex. 5 at 56-66, *with* ECF 630-1, Ex. 1 at 51-62. Despite Plaintiffs' submission of these additional documents, they fail to satisfy their burden to present admissible expert testimony and reports from Dr. Wang. Rather than bolster her credibility, Plaintiffs' corrected evidence only damages Dr. Wang's reliability as an expert witness.

21
22
23
24
25
26
27

First, Plaintiffs have not demonstrated how Dr. Wang's expertise in pediatric health, emergency medicine, and health services is relevant to the specific issues raised in Plaintiffs' Motion to Enforce or the *Flores* Settlement Agreement. A proffered expert's experience and specialized knowledge must be relevant to the subject matter about which she testifies in order for her expertise to satisfy Rule 702's requirement that the expert's specialized knowledge assist the Court in understanding evidence. Fed. R. Evid. 702(a); *Messick v. Novartis Pharm. Corp.*,

28

747 F.3d 1193, 1196-97 (9th Cir. 2014) ("[e]xpert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry.") (internal quotations and citation omitted). At most, Dr. Wang's cover letter, addendum, and Program Reports contain summary opinion based on her review of government database information concerning individuals in ORR custody. This is not relevant to her stated expertise and independent research in "health services." ECF 630-1, Ex. 1 at 4. Dr. Wang's opinions, based on her Program Reports, are not founded on matters that flow "naturally and directly" from her independent research. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995). Dr. Wang elaborates in her addendum that she has experience using government data from the Health Care Cost and Utilization Project of the Agency for Health Care Research and Quality. ECF 630-1, Ex. 1 at 4. However, this information and her health services research experience set forth in her CV provide an insufficient foundation to establish how her expertise in emergency medicine and health services is applicable and relevant to government data analysis concerning juveniles in ORR custody. Thus, her expertise is not relevant to the subject matter of her cover letter, addendum, and Program Reports and her conclusions contained therein.

Moreover, Dr. Wang provides no basis whatsoever for her opinion as to the requirements of the Settlement Agreement. Nothing in her background suggests that she is qualified to provide a legal opinion as to what the Settlement Agreement requires of Defendants. Expert testimony is "not proper for issues of law." *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996). Rather, experts "interpret and analyze factual evidence," but refrain from testifying about the law. *Id.* (internal quotations and citation omitted). In her cover letter, Dr. Wang suggests that the Settlement Agreement requires "quantifiable data," and that "occasional visual inspections" are not an effective means of assessing compliance. ECF 630-

1, Ex. 1 at 2. Dr. Wang's statements in her cover letter concerning what is required to comply with the Settlement Agreement constitute legal opinion, which is not the proper subject of expert testimony.

Second, Dr. Wang's cover letter and addendum fail to show that her testimony and reports are products of a reliable and relevant methodology. *See* Fed. R. Evid. 702(c); *See Daubert*, 43 F.3d at 1316-17. In her addendum, Dr. Wang describes the methodology she employed in creating the Program Reports as "very standard and does not involve any advanced data manipulation or modeling." ECF 630-1, Ex. 1 at 5. She then describes how her team went about working with the government data that was provided in Excel format. *Id.* at 5-6. Finally, Dr. Wang states that she and her team "use standard SAS Statistical software for data formatting and analysis" and "Tableau data visualization software to create the charts and tables provided." *Id.* at 6. The description of her methodology as "very standard" and not involving "any advanced data manipulation or modeling" is far from a sufficient explanation that would assure a court of the reliability of Dr. Wang's expert testimony. In addition, Dr. Wang did not explain whether her methodology has been subject to peer review, has a known or potential error rate, and whether her methodology is generally accepted within the relevant scientific community. *See Daubert*, 43 F.3d at 1316-17. Dr. Wang also mentions that her methodology involves "SAS statistical software" and "Tableau," but she does not explain whether these programs have been tested, whether there is an error rate, and whether these programs are also generally accepted for data analysis in her field. *Id.* In addition, Dr. Wang does not explain the statement in her cover letter that her team has created a "data infrastructure" to assist with "dynamic and effective monitoring" of compliance with the Settlement Agreement. ECF 630-1, Ex. 1 at 3.

Finally, additional submissions of an addendum and an updated Program Report, as well as the resubmitted cover letter, do nothing but damage the

reliability of Dr. Wang as an expert witness. Plaintiffs contend that Dr. Wang's Program Reports qualify as expert reports because they "make the data meaningful and accessible" by synthesizing "the data into a digestible and usable format." ECF 630 at 14. But as explained above, in her addendum, Dr. Wang describes the methodology she employed as "very standard and does not involve any advanced data manipulation or modeling." ECF 630-1, Ex. 1 at 5. This statement calls into question whether expert testimony is even necessary for the trier of fact to understand the evidence. *See* Fed. R. Evid. 702(a). Further, with respect to Dr. Wang's legal opinion that "occasional visual inspections" are not an effective means of assessing compliance with the Settlement Agreement, Plaintiffs contend that this opinion "is hardly the type of conclusion that should be subject to 'peer review.'" ECF 630 at 16. Such a contention undercuts Plaintiffs' proffer of Dr. Wang as an expert witness—expert testimony is not needed if it is not even necessary to have peer-reviewed expert evidence to aid the trier of fact on these issues.

Moreover, edits were made to Dr. Wang's May 29, 2019, cover letter; and yet the date on the letter was not changed and Plaintiffs did not identify her edits, further undermining the reliability of her submissions For example, Dr. Wang initially claimed in her letter that there were "crucial data quality and validation issues" with the government's data upon which her first Program Report was based. ECF 547-3 at 54. In her updated cover letter, still dated May 29, 2019, Dr. Wang changed this sentence to state, "There are data quality issues including class members with duplicate alien numbers." ECF 630-1 at 2. This type of substantive change to a previously signed, dated, and submitted statement undermines its reliability. Thus, Plaintiffs have not met their burden, and the Court should exclude Dr. Wang's cover letter, addendum, and Program Reports.

18

## II.  <u>REQUEST FOR EVIDENTIARY HEARING BEFORE THE SPECIAL MASTER</u>

Defendants dispute Plaintiffs' characterization that there is no material factual dispute that would require an evidentiary hearing before the special master. Plaintiffs claim that "an evidentiary hearing is unnecessary to adjudicate Plaintiffs' Motion" because Plaintiffs only challenge Defendants' undisputed written policies. Plaintiffs' assertions ignore the fact they submitted eighty-one (81) declarations in support of their Motion from purported expert witnesses and unaccompanied alien children (UAC) in ORR care. Plaintiffs have relied on the UAC declarations to attempt to show that Homestead is a secure facility, children's release is unnecessarily delayed by ORR, and children suffer harm from being at Homestead as compared to what they would experience upon release or transfer to a licensed facility. In their opposition, Defendants submitted responsive evidence which both contradicts and disproves many of the allegations contained in the declarations submitted by Plaintiffs regarding UAC length of stay and the security level of the Homestead influx care facility. A comparison of information in ORR case files with information in Plaintiffs' declarations indicates significant inconsistencies and contradictions between the parties' evidence regarding the declarants' release process. Thus, there are numerous material disputed issues of fact that must be resolved by the Court prior to ruling on Plaintiffs' Motion.

However, if Plaintiffs withdraw the eighty-one (81) declarations and abandon the arguments that stem from those declarations, and agree to litigate solely legal issues regarding Homestead, Defendants could agree that an evidentiary hearing is not required. Unless Plaintiffs agree to withdraw these arguments and declarations, there exists disputed material facts requiring an evidentiary hearing.

III.   **CONCLUSION**

For the foregoing reasons and those outlines in Defendants Motion, Defendants respectfully request that the Court exclude from evidence the entirety of the Frye, Griffin, and Matlow declarations. Defendants also ask that the documents submitted by Dr. Wang be excluded in their entirety. Further, Defendants ask the Court to require that any testimony by their witnesses on which the parties wish the Court to rely in deciding Plaintiffs' Motion must be presented through oral testimony at an evidentiary hearing before the Special Master.

DATED:       September 20, 2019        Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

AUGUST E. FLENTJE
Special Counsel to the Assistant Attorney
General

WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation

WILLIAM C. SILVIS
Assistant Director, District Court Section
Office of Immigration Litigation

*/s/ Sarah B. Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-4824
Fax: (202) 305-7000
Email: sarah.b.fabian@usdoj.gov

*Attorneys for Defendants*

20

1

<u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on August 2, 2019, I served the foregoing pleading on all

3

counsel of record by means of the District Clerk's CM/ECF electronic filing system.

4

5

/s/ *Sarah B. Fabian*
SARAH B. FABIAN

6

U.S. Department of Justice
District Court Section

7

Office of Immigration Litigation

8

Attorney for Defendants

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28