UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | September 27, 2019 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 1 of 24 |
|---|---|---|---|

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings:   IN CHAMBERS - ORDER RE PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT [516] AND DEFENDANTS' NOTICE OF TERMINATION AND MOTION IN THE ALTERNATIVE TO TERMINATE THE FLORES SETTLEMENT AGREEMENT [639]**

## I.
## INTRODUCTION

On September 7, 2018, Defendants issued a notice of proposed regulations that purportedly "parallel the relevant and substantive terms" of the *Flores* Settlement Agreement and are intended to supersede and terminate the Agreement.  *See* Apprehension, Processing, Care, and Custody of Alien Minors and Unaccompanied Alien Children, 83 Fed. Reg. 45,486–45,534 (Sept. 7, 2018) [hereinafter "Proposed Regulations"].  The notice and comment period on the proposed regulations closed on November 6, 2018.  *Id.* at 45,486.  On November 2, 2018, Plaintiffs filed a Motion to Enforce the *Flores* Agreement [Doc. # 516], wherein Plaintiffs request that the Court:  (1) declare that the Proposed Regulations amount to an anticipatory breach of the Agreement; (2) permanently enjoin the Department of Homeland Security ("DHS") and the Department of Health and Human Services ("HHS") from implementing the Proposed Regulations or their "material equivalent"; and (3) "if need be," declare that implementation of the regulations would constitute civil contempt.  *See* Pls.' Mot. to Enforce at 14 [Doc. # 516];[1] Proposed Order at 4 [Doc. # 516-1].[2]

On November 21, 2018, the Court deferred ruling on Plaintiffs' Motion to Enforce and vacated the hearing thereon ("Deferral Ruling").  [Doc. # 525.]  The Deferral Ruling ordered Defendants to file a notice upon issuance of the final regulations, required the parties to file simultaneous briefing regarding the final regulations within seven days of their publication, and

---

[1] All page references herein are to page numbers inserted by the CM/ECF system.

[2] To the extent that Plaintiffs appear to have withdrawn their request for a contempt citation [Doc. # 634 at 24] and neither side has squarely addressed it in their briefing, the Court need not reach the issue of contempt.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | September 27, 2019 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 2 of 24 |
|---|---|---|---|

provided that the matter would thereafter be taken under submission unless the Court rescheduled a hearing on the Motion. *See id.* at 2.

On August 21, 2019, Defendants filed a Notice of Publication of Regulations. [Doc. # 627.] On August 23, 2019, Defendants formally published the final regulations in the Federal Register. *See* Apprehension, Processing, Care, and Custody of Alien Minors and Unaccompanied Alien Children, 84 Fed. Reg. 44,392–44,535 (Aug. 23, 2019) [hereinafter "New Regulations"].[3] Thereafter, on August 30, 2019, Defendants filed a Notice of Termination and Motion in the Alternative to Terminate the *Flores* Settlement Agreement ("Motion to Terminate"), and Plaintiffs filed a supplemental brief addressing their Motion to Enforce. [Doc. ## 639, 634.][4] Both motions are now fully briefed. [Doc. ## 668, 682.] The Court held a hearing on both motions on September 27, 2019.

Plaintiffs' Motion to Enforce presents two separate but related issues: (1) whether the New Regulations effectively terminate the *Flores* Agreement, and (2) if not, to what extent the Court should enjoin Defendants from implementing the New Regulations. Defendants' Motion to Terminate asserts that publication of the New Regulations terminates the Agreement or, in the alternative, presents grounds for termination.

---

[3] The New Regulations are scheduled to become effective on October 22, 2019. *See* 84 Fed. Reg. at 44,392.

[4] On November 13, 2018, the City of Chicago, the City of Los Angeles, City of New York, the City & County of San Francisco, Los Angeles County, Santa Clara County, and the Cities of Austin, Boston, Cambridge, Columbus, Houston, New Haven, Oakland, Philadelphia, Providence, San Jose, Seattle, and Somerville filed a brief as *amici curiae* in support of Plaintiff's Motion to Enforce. [Doc. # 522.]

In addition, the following entities filed briefs as *amici curiae* in support of Plaintiffs' Motion to Enforce, following the publication of the New Regulations: American Academy of Child and Adolescent Psychiatry; American Academy of Pediatrics; American Academy of Pediatrics, California; American Federation of Teachers; American Medical Association; American Professional Society on the Abuse of Children; American Psychiatric Association; American Psychoanalytic Association; Amnesty International, USA; California American Professional Society on the Abuse of Children; Capital Area Immigrants' Rights Coalition; Center for Children & Youth Justice; Center for Law and Social Policy; Center for the Study of Social Policy; Center on Children and Families; Children's Advocacy Institute; Children's Defense Fund; Children's Law Center, Inc.; Children's Rights; First Focus on Children; First Star, Inc.; Florence Immigrant and Refugee Rights Project; Human Rights Watch; Immigrant Children Advocates Relief Efforts Coalition; Juvenile Law Center; Kids in Need of Defense; Lutheran Immigration and Refugee Service; National Association for Counsel for Children; National Association of Social Workers; National Education Association; National Immigrant Justice Center; Northwest Immigrant Rights Project; Save the Children Action Network, Inc.; Save the Children Federation, Inc.; Texas Pediatric Society; United States Fund for UNICEF; Women's Refugee Commission; Young Center for Immigrant Children's Rights; ZERO TO THREE. [Doc. ## 655, 659, 662, 665.]

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544-DMG (AGRx) | | Date | September 27, 2019 |
|---|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | | Page | 3 of 24 |
|---|---|---|---|---|

Having duly considered the parties' written submissions, oral argument, as well as the *amici* briefs, the Court concludes that the New Regulations do not have the effect of terminating the *Flores* Agreement, Defendants have not met their burden to demonstrate an alternative reason to terminate the Agreement, and Defendants must be enjoined from implementing the New Regulations. Accordingly, Plaintiffs' Motion to Enforce is **GRANTED** insofar as it seeks such relief, and Defendants' Motion to Terminate is **DENIED**.

## II.
## BACKGROUND

On January 28, 1997, this Court approved the *Flores* Agreement. *See Flores v. Sessions*, 862 F.3d 863, 866 (9th Cir. 2017). Paragraph 9 of the *Flores* Agreement provides in pertinent part that, "[w]ithin 120 days of the final district court approval of this Agreement, the INS shall initiate action to publish the relevant and substantive terms of this Agreement as a Service regulation. The final regulations *shall not be inconsistent with the terms of this Agreement*."[5] *See Flores* Agreement at ¶ 9 (emphasis added) [Doc. # 101].

Paragraph 40 of the Agreement initially provided: "All terms of this Agreement shall terminate the earlier of five years after the date of final court approval of this Agreement or three years after the court determines that the INS is in substantial compliance with this Agreement, except that the INS shall continue to house the general population of minors in INS custody in facilities that are licensed for the care of dependent minors." *Id.* at ¶ 40. On December 7, 2001, the parties stipulated to modify Paragraph 40 such that it now reads: "All terms of this Agreement shall terminate 45 days following defendants' publication of final regulations implementing this Agreement[.] Notwithstanding the foregoing, the INS shall continue to house the general population of minors in INS custody in facilities that are state-licensed for the care of dependent minors."[6] *See* Pl.'s Ex. 2 at 70–73 (Dec. 7, 2001 Stipulation) (alterations omitted) [Doc. # 101].

---

[5] The *Flores* Agreement binds the named Defendants and their "agents, employees, contractors and/or successors in office." *See Flores* Agreement at ¶ 1 [Doc. # 101].

[6] Defendants concede that the December 7, 2001 Stipulation had the effect of properly amending Paragraph 40 of the *Flores* Agreement. *See* 84 Fed. Reg. at 44,392 ("The [*Flores* Agreement], as modified in 2001, provides that it will terminate forty-five days after publication of final regulations implementing the agreement."); *see also Flores v. Sessions*, 862 F.3d at 869 ("[P]ursuant to the 2001 agreement, the Settlement continues to govern those agencies that now carry out the functions of the former INS.").

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | September 27, 2019 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 4 of 24 |
|---|---|---|---|

**III.**
**DISCUSSION**

The Court considers first Plaintiffs' Motion to Enforce and Defendants' response that the New Regulations terminate the *Flores* Agreement by its own terms, then turns to Defendants' alternative Motion to Terminate.

**A.    Plaintiffs' Motion to Enforce**

In the preamble to the New Regulations, DHS and HHS identify what they consider to be the "key" elements of the new regulatory scheme:  (1) the elimination of the *Flores* Agreement's requirement that a class member (even one in removal proceedings) be released if a custodian is available and detention is not required to secure timely appearance or to ensure any person's safety; (2) the adoption of a new definition of "licensed facility" that allows U.S. Immigration and Customs Enforcement ("ICE") to detain families in facilities not licensed by a state; and (3) ensuring that "[m]inors who are in expedited removal proceedings are not entitled to bond hearings." *See* 84 Fed. Reg. at 44,393–95.

Plaintiffs assert that each of these three "key" regulatory changes, in addition to changes to the definition of a "secure facility" and the omission of mandatory  language binding Defendants' actions, is invalid as inconsistent with the *Flores* Agreement.

"[A] motion to enforce [a] settlement agreement essentially is an action to specifically enforce a contract." *Adams v. Johns-Manville Corp.*, 876 F.2d 702, 709 (9th Cir. 1989).  As described numerous times in this litigation, the *Flores* Settlement is a consent decree.  *See, e.g.*, *Flores v. Sessions*, 862 F.3d 863, 874 (9th Cir. 2017); Order re Pls.' Mot. to Enforce at 3 [Doc. # 177]; Order re Pls.' Mot. to Enforce & Appoint a Special Monitor at 2–4 [Doc. # 363]. Because consent decrees have 'many of the attributes of ordinary contracts [and] . . . should be construed basically as contracts,' the doctrine of substantial compliance, or substantial performance, may be employed." *Jeff D. v. Otter*, 643 F.3d 278, 283–84 (9th Cir. 2011) (internal citation omitted).  Substantial compliance "does imply something less than a strict and literal compliance with the contract provisions but fundamentally it means that the deviation is unintentional and so minor or trivial as not 'substantially to defeat the object which the parties intend to accomplish.'" *Wells Benz, Inc. v. United States*, 333 F.2d 89, 92 (9th Cir. 1964) (citation omitted).  The Court will therefore apply the preponderance of the evidence standard to the issue of whether Plaintiffs have demonstrated that Defendants have failed to substantially comply with certain provisions of the Agreement.  *See* Order re Pls.' Mot. to Enforce & Appoint a Special Monitor at 4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544-DMG (AGRx) | | Date | September 27, 2019 |
|---|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | | Page | 5 of 24 |
|---|---|---|---|---|

Plaintiffs contend that the New Regulations violate Paragraphs 9 and 40 (as modified by the parties' stipulation) and are inconsistent with the *Flores* Agreement because: (1) the DHS's New Regulations abrogate minors' protections against unnecessary prolonged detention and substandard placement, (2) the HHS's New Regulations expand the grounds for unlicensed placement and eliminate neutral and detached review of grounds to detain children on account of dangerousness and flight risk, and (3) the New Regulations replace the *Flores* Agreement's mandatory protections with aspirational statements of "dubious" enforceability.  *See* Pls.' Mot. to Enforce at 14 [Doc. # 516]; Pls.' Supplemental Mem. at 8–10 [Doc. # 634].[7]  Defendants argue that the New Regulations were promulgated according to the Administrative Procedure Act ("APA") and implement the "basic purpose" of the Agreement.  Defs.' Mot. to Terminate at 13–14 [Doc. # 639].    According to Defendants, the New Regulations therefore terminate the Agreement, and their validity must be assessed under APA standards.  *Id.*

For the reasons discussed below, Plaintiffs are correct as a matter of law.

1.    **DHS's New Regulations Regarding Length of Detention and Placement**

Paragraphs 14 and 18 of the *Flores* Agreement mandate the expeditious release of class members from Defendants' custody.  Paragraph 14 provides:

Where the INS determines that the detention of the minor is not required either to secure his or her timely appearance before the INS or the immigration court, or to ensure the minor's safety or that of others, *the INS shall release a minor from its custody without unnecessary delay in the following order of preference*, to:

A.    a parent;
B.    a legal guardian;
C.    an adult relative (brother, sister, aunt, uncle, or grandparent);
D.    an adult individual or entity designated by the parent or legal guardian as capable and willing to care for the minor's well-being in (i) a declaration signed under penalty of perjury before an immigration or consular officer or (ii) such other document(s) that establish(es) to the satisfaction of the INS, in its discretion, the affiant's paternity or guardianship;

---

[7]  Additionally, although Plaintiffs argue that "all monitoring and transparency authorized by the [Agreement] would terminate" once the regulations go into effect, neither their Motion to Enforce nor Supplemental Memorandum further expounds on that point.  Pls.' Mot. to Enforce at 14.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | September 27, 2019 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 6 of 24 |
|---|---|---|---|

    E.    a licensed program willing to accept legal custody; or

    F.    an adult individual or entity seeking custody, in the discretion of the INS, when it appears that there is no other likely alternative to long term detention and family reunification does not appear to be a reasonable possibility.

*Flores* Agreement at ¶ 14 (emphasis added) [Doc. # 101].

Likewise, Paragraph 18 provides:

Upon taking a minor into custody, the INS, or the licensed program in which the minor is placed, *shall make and record the prompt and continuous efforts on its part toward family reunification and the release of the minor* pursuant to Paragraph 14 above. *Such efforts at family reunification shall continue so long as the minor is in INS custody.*

*Id.* at ¶ 18 (emphasis added).

Yet, DHS's New Regulations would allow the agency to detain class members indefinitely,[8] regardless of whether such detention is necessary to secure their timely appearance before the agency or the immigration court, or to ensure the minors' safety. Revised 8 C.F.R. section 212.5(b)(3)(i)–(ii)[9] would permit DHS officials to release class members who "present

---

[8] Defendants argue that class members will be detained only until their immigration processing has terminated, not "indefinitely." Defs.' Mot. to Terminate at 42. Though the class members may not be detained *permanently*, class members in DHS custody who do not satisfy the narrow release provision in revised 8 C.F.R. section 212.5(b)(3)(i)–(ii) will be held without a scheduled or otherwise guaranteed release date. *See* Indefinitely, Black's Law Dictionary (11th ed. 2019) ("[Defined as:] For a length of time with no definite end . . . . Without giving clear or exact details"). Perforce, class members would be subject to indefinite detention under the New Regulations. While reasonable minds may differ as to whether a constitutional violation occurs when minors are subject to indefinite detention (*see Reno v. Flores*, 507 U.S. 292, 315 (1993)), that is not the issue here. Any debate as to whether indefinite detention of minors is a wise or permissible policy has been foreclosed in this case because the clear and unambiguous terms of the *Flores* Agreement eschew indefinite detention except in limited circumstances.

[9] References to the "revised" C.F.R.s are to the New Regulations that displace preexisting regulations codified in the Code of Federal Regulations (C.F.R.). References to "newly published" C.F.R.s are to New Regulations that do not displace any specific preexisting regulations. Because the New Regulations are not scheduled to become effective until October 22, 2019, the Court also cites to the Federal Register for its discussion of the New Regulations. Citations to the C.F.R. without a qualifier are to the regulations in place before the publication of the Final Regulations on August 23, 2019.

---

        **CIVIL MINUTES—GENERAL**        Initials of Deputy Clerk <u>KT</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | September 27, 2019 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 7 of 24 |
|---|---|---|---|

neither a security risk nor a risk of absconding" only to "a parent, legal guardian, or adult relative (brother, sister, aunt, uncle, or grandparent) not in detention" or "with an accompanying parent or legal guardian who is in detention." *See* 84 Fed. Reg. at 44,525. Under this regulation, DHS disregards several categories of potential custodians as it need not consider releasing class members to a non-relative designee of the class member's parent or legal guardian, a licensed program willing to accept legal custody, or "an individual or entity seeking custody, in the discretion of [Defendants], when it appears that there is no other likely alternative to longer term detention and family reunification does not appear to be a reasonable possibility." *Flores* Agreement at ¶¶ 14.D–F. These omissions from the regulation are unsurprising, as DHS candidly admits that its New Regulations are intended to allow the agency to "detain the family unit together as a family by placing them at an appropriate [Family Residential Center ('FRC')] during their immigration proceedings." 84 Fed. Reg. at 44,403; *see also id.* ("It is important that family detention be a viable option . . . due to the significant and ongoing surge of adults who have made the choice to enter the United States illegally with juveniles or make the dangerous overland journey to the border with juveniles . . . ."). DHS achieves that objective so long as it ensures that none of the potential custodians under section 212.5(b)(3)(i)–(ii) are released.

In addition, revised 8 C.F.R. section 236.3(j)(2) applies the same stringent standard for parole for immigrants in expedited removal proceedings both to adults and to class members. *See* 84 Fed. Reg. at 44,393. The revised section 236.(j)(2) provides that "if a minor who is not a[n unaccompanied minor ('UAC')] is in expedited removal proceedings . . . , custody is governed by § 235.3(b)(2)(iii) or (b)(4)(ii) of this chapter, as applicable." *Id.* at 44,529. Under the current sections 235.3(b)(2)(iii) and (b)(4)(ii), which remain unaltered under the Final Regulations, parole for those in expedited removal proceedings or pending a credible fear determination is solely at the discretion of the Attorney General when "required to meet a medical emergency or . . . necessary for a legitimate law enforcement objective." 8 C.F.R. §§ 235.3(b)(2)(ii), (b)(4)(ii). Defendants, however, admit that Paragraph 14 of the Agreement "has been interpreted to require application of the juvenile parole regulation to release during expedited removal proceedings." 84 Fed. Reg. 44,405 n.13 (citing Order re Pls.' Mot. to Enforce and Appoint a Special Monitor at 23–27 [Doc. # 363]). Yet, the New Regulations—contrary to the *Flores* Agreement—double down on their intention "*to permit detention in FRCs in lieu of release* (except where parole is appropriate under 8 CFR [§§] 235.3(b)(2)(iii) or (b)(4)(ii)) in order to avoid the need to separate or release families in these circumstances." In other words, under the New Regulations, Defendants can detain minors indefinitely in FRCs unless there is a medical emergency or law enforcement necessity. *Id.* (emphasis added). DHS "agrees that this rule may result in longer detention of some minors," *id.* at 44,499, and cannot even "reliably predict the increased average length of stay for affected minors," *id.* at 44,517. Thus, this regulation is inconsistent with one of the primary goals of the *Flores* Agreement, which is to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | September 27, 2019 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 8 of 24 |
|---|---|---|---|

instate a general policy favoring release and expeditiously place minors "in the least restrictive setting appropriate to the minor's age and special needs." *Flores* Agreement at ¶¶ 11, 12, 14.

Furthermore, as a general rule, Paragraph 19 of the *Flores* Agreement provides that when Defendants retain custody of a class member, "such minor shall be placed temporarily in a licensed program until such time as release can be effected in accordance with Paragraph 14 above or until the minor's immigration proceedings are concluded, whichever occurs earlier." *Flores* Agreement at ¶ 19. Paragraph 6 in turn provides a definition for "licensed program":

> The term "licensed program" shall refer to any program, agency or organization that is licensed by an appropriate State agency to provide residential, group, or foster care services for dependent children, including a program operating group homes, foster homes, or facilities for special needs minors. A licensed program must also meet those standards for licensed programs set forth in Exhibit 1 [to the Agreement]. All homes and facilities operated by licensed programs, including facilities for special needs minors, shall be non-secure as required under state law; provided, however, that a facility for special needs minors may maintain that level of security permitted under state law which is necessary for the protection of a minor or others in appropriate circumstances, *e.g.*, in cases in which a minor has drug or alcohol problems or is mentally ill. The INS shall make reasonable efforts to provide licensed placements in those geographical areas where the majority of minors are apprehended, such as southern California, southeast Texas, southern Florida and the northeast corridor.

*Id.* at ¶ 6.

Conversely, revised 8 C.F.R. section 236.3(b)(9) provides:

> Licensed facility means an [Immigration and Customs Enforcement ("ICE")] detention facility licensed by the state, county, or municipality in which it is located, if such a licensing process exists. Licensed facilities shall comply with all applicable state child welfare laws and regulations and all state and local building, fire, health, and safety codes. If a licensing process for the detention of minors accompanied by a parent or legal guardian is not available in the state, county, or municipality in which an ICE detention facility is located, DHS shall employ an entity outside of DHS that has relevant audit experience to ensure compliance with the family residential standards established by ICE. Such audits

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | September 27, 2019 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 9 of 24 |
|---|---|---|---|

will take place at the opening of a facility and on a regular, ongoing basis thereafter.  DHS will make the results of these audits publicly available.

84 Fed. Reg. at 44,526.[10]

Though Texas and Pennsylvania currently provide state licensing for family residential centers, DHS concedes that "most States do not offer a licensing program for family unit detention . . . ."  *See* 84 Fed. Reg. at 44394; *see also* Order Denying Defs.' *Ex Parte* Appl. for Limited Relief at 6 ("Defendants have known for *years* that there is 'no state licensing readily available for facilities that house both adults and children.'" (quoting Defs.' Mot. to Amend at 32 [Doc. # 120])) [Doc. # 455].  Therefore, this new regulatory definition of "licensed facility" would effectively authorize DHS to place class members in ICE detention facilities that are not monitored by state authorities, but are instead audited by entities handpicked by DHS to "ensure compliance with the family residential standards *established by ICE*."  *See* 84 Fed. Reg. at 44,526 (emphasis added).  This is more than a minor or formalistic deviation from the provisions of the *Flores* Agreement, as "[t]he purpose of the licensing provision is to provide class members the essential protection of regular and comprehensive oversight by an *independent* child welfare agency."  *See* Order re Pls.' Mot to Enforce at 14 (emphasis added) [Doc. # 177].  Thus, revised 8 C.F.R. section 236.3(b)(9) is patently inconsistent with a substantive term of the Agreement.

In fact, DHS would be prohibited from implementing revised Section 236.3(b)(9) even if Defendants had otherwise complied with their obligation to issue final regulations not inconsistent with the *Flores* Agreement.  The Agreement provides that even after its termination, Defendants are obligated to house class members in state-licensed facilities.  *See Flores* Agreement at ¶ 9 [Doc. # 101]; *id.* at ¶ 40 ("All terms of this Agreement shall terminate the earlier of five years after the date of final court approval of this Agreement or three years after the court determines that the INS is in substantial compliance with this Agreement, except that the INS shall continue to house the general population of minors in INS custody in facilities that are licensed for the care of dependent minors."); Dec. 7, 2001 Stipulation at 71 ("All terms of this Agreement shall terminate 45 days following defendants' publication of final regulations implementing this Agreement[.]  Notwithstanding the foregoing, the INS shall continue to house the general population of minors in INS custody in facilities that are state-licensed for the care of dependent minors." (emphasis omitted)) [Doc. # 516].

---

[10] Revised 8 C.F.R. section 236.3(e) provides that, as a general rule, class members held in DHS custody will be transferred "to a licensed facility as defined in paragraph (b)(9) of this section, which is non-secure . . . ."  *See* 84 Fed. Reg. at 44,526.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | September 27, 2019 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 10 of 24 |
|---|---|---|---|

DHS's new definition of "non-secure facility" is also inconsistent with the *Flores* Agreement. Although the *Flores* Agreement does not explicitly define that term, the Court previously explained that "'[s]ecure' in this context refers to a detention facility where individuals are held in custody and are not free to leave[,]" whereas "'non-secure' facilities are those where individuals are not held in custody." *See* Order re Pls.' Mot. to Enforce at 2 n.3 [Doc. # 177]. The Court has also found that the Karnes FRC is a secure facility principally because it is a large block building that has only one means of ingress and egress, which includes a sally port in which all persons exiting and entering the building are subject to security screening by ICE officials. *See id.* at 15.

Revised 8 C.F.R. section 236.3(b)(11) defines "non-secure facility" as:

[A] facility that meets the definition of non-secure under state law in the state in which the facility is located. If no such definition of non-secure exists under state law, a DHS facility shall be deemed non-secure if egress from a portion of the facility's building is not prohibited through internal locks within the building or exterior locks and egress from the facility's premises is not prohibited through secure fencing around the perimeter of the building.

*See* 84 Fed. Reg. at 44,526.

This new regulatory definition's supposed carve-out for state law definitions of "non-secure" is vacuous, as DHS admits that this provision is intended to allow ICE to place class members in its various FRCs, including Karnes, notwithstanding the fact that the Court has already held that Karnes is a secure facility. In Kafkaesque fashion, the New Regulations declare that FRCs are non-secure (and always have been), regardless of whether they are or ever have been, in fact, non-secure. *See* 84 Fed. Reg. at 44,443 ("DHS maintains that its FRCs have been and continue to be nonsecure . . . ."). The remainder of the new definition of a so-called "non-secure facility" is contrary to the interpretation that this Court has already given it— facilities in which "individuals are not held in custody." *See* Order re Pls.' Mot. to Enforce at 2 n.3 [Doc. # 177]. Specifically, revised 8 C.F.R. section 236.3(b)(11) allows an ICE facility to fall within the scope of the term "non-secure" so long as a building's locking mechanism and the premises' fencing are not responsible for holding class members in ICE custody against their will. *See* 84 Fed. Reg. at 44,526. No part of this regulatory provision bars ICE officials from arresting class members who attempt to leave ICE facilities. *See, e.g.*, Report of ICE Coordinator Deane Dougherty at 9–10 ("Insofar as class members remain in ICE's legal custody, there will be consequences, for example re-arrest, against those residents who leave the residential center without permission.") [Doc. # 402-2]. Another interpretation of this definition

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | September 27, 2019 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 11 of 24 |
|---|---|---|---|

of "non-secure" is that Defendants could entirely prohibit egress from a facility's detention area through internal locks so long as one part—a reception area, for example—is unlocked.  Brief for the American Academy of Child and Adolescent Psychiatry, *et al.*, as *Amici Curiae* Supporting Plaintiffs at 5 (citing 84 Fed. Reg. at 44,526) [Doc. # 665].

In sum, DHS's New Regulations on the parole of class members, the definition of licensed facilities, and the definition of non-secure are irreconcilable with Paragraphs 6, 14, 18, and 19 of the *Flores* Agreement, and cannot be reasonably characterized as regulations "implementing this Agreement."  Dec. 7, 2001 Stipulation at 71 [Doc. # 516].

### 2. HHS's New Regulations on Placement and Review of Grounds for Detention

HHS's New Regulations concerning placement of minors are not consistent with the *Flores* Agreement.  Paragraph 11 of the *Flores* Agreement states in pertinent part:  "The INS shall place each detained minor in the least restrictive setting appropriate to the minor's age and special needs, provided that such setting is consistent with its interests to ensure the minor's timely appearance before the INS and the immigration courts and to protect the minor's age and special needs."  *Flores* Agreement at ¶ 11 [Doc. # 101].  Furthermore, Paragraph 19 provides in relevant part:  "Except as provided in Paragraphs 12[11] or 21, such minor [who is not released pursuant to Paragraph 14] shall be placed temporarily in a licensed program until such time as release can be effected in accordance with Paragraph 14 above or until the minor's immigration proceedings are concluded, whichever occurs earlier."  *See id.* at ¶ 19.

In turn, Paragraph 21 of the Agreement provides that a class member may be placed in a "secure" facility if any one of the following five criteria are met:

A.     [The class member] has been charged with, is chargeable, or has been convicted of a crime, or is the subject of delinquency proceedings, has been adjudicated delinquent, or is chargeable with a delinquent act; provided, however that this provision shall not apply to any minor whose offense(s) fall(s) within either of the following categories:

---

[11] Subject to certain exceptions (*e.g.*, "an emergency or influx of minors into the United States"), Paragraph 12.A generally requires a minor to be placed in a licensed program within three days if the minor was apprehended in an INS district in which a licensed program is located and has space available or within five days "in all other cases."  *See Flores* Agreement at ¶ 12.A [Doc. # 101].

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544-DMG (AGRx) | Date | September 27, 2019 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 12 of 24 |
|---|---|---|---|

      i.      Isolated offenses that (1) were not within a pattern or practice of criminal activity and (2) did not involve violence against a person or the use or carrying of a weapon (Examples:  breaking and entering, vandalism, DUI, etc.  This list is not exhaustive.);

      ii.     Petty offenses, which are not considered grounds for stricter means of detention in any case (Examples: shoplifting, joy riding, disturbing the peace, etc.  This list is not exhaustive.);

    As used in this paragraph, "chargeable" means that the INS has probable cause to believe that the individual has committed a specified offense;

B.    [The class member] has committed, or has made credible threats to commit, a violent or malicious act (whether directed at himself or others) while in INS legal custody or while in the presence of an INS officer;

C.    [The class member] has engaged, while in a licensed program, in conduct that has proven to be unacceptably disruptive of the normal functioning of the licensed program in which he or she has been placed and removal is necessary to ensure the welfare of the minor or others, as determined by the staff of the licensed program (Examples:  drug or alcohol abuse, stealing, fighting, intimidation of others, etc.  This list is not exhaustive.);

D.    [The class member] is an escape-risk; or

E.    [The class member] must be held in a secure facility for his or her own safety, such as when the INS has reason to believe that a smuggler would abduct or coerce a particular minor to secure payment of smuggling fees.

*See id.* at ¶ 21.

    Notwithstanding Paragraph 21's placement criteria, newly published 45 C.F.R. section 410.203(a)(5) permits the Office of Refugee Resettlement ("ORR") to detain a class member in a secure facility solely on the ground that the agency has determined that he or she is "a danger to self or others."[12]  *See* 84 Fed. Reg. at 44,531–32.  Although section 410.203(d) insists that

---

[12] The regulatory definition of "secure" facility is nearly identical to the type of facility governed by Paragraph 21.  *Compare* 84 Fed. Reg. at 44,531 ("Secure facility means a State or county juvenile detention facility or a secure ORR detention facility, or a facility with an ORR contract or cooperative agreement having separate accommodations for minors.  A secure facility . . . is not defined as a 'licensed program' or 'shelter' under this part."), *with Flores* Agreement at ¶ 21 ("A minor may be held in or transferred to a suitable State or county juvenile detention facility or a secure INS detention facility, or INS-contracted facility, having separate accommodations for minors whenever the District Director or Chief Patrol Agent determines that the minor [meets one of the five criteria].") [Doc. # 101].

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544-DMG (AGRx) | | Date | September 27, 2019 |
|---|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | | Page | 13 of 24 |
|---|---|---|---|---|

section 410.203(a)(5) "does not abrogate any requirements [of the William Wilberforce Trafficking Victims Protection Reauthorization Act ("TVPRA")] to place [class members] in the least restrictive setting appropriate to their age and special needs[,]" *see* 84 Fed. Reg. at 44,532, the New Regulations' embrace of the TVPRA standard does not indicate *per se* substantial compliance with the Agreement.[13]   As the Court has previously held, the TVPRA establishes what circumstances are "*necessary* for placement of a UAC in a secure facility, whereas Paragraph 21 delineates conditions that *permit* such detention." Order re Pls.' Mot. to Enforce at 7 [Doc. # 470].   Defendants agreed to include five additional criteria in Paragraph 21 of the *Flores* Agreement, and excluding these criteria in the New Regulations marks a significant deviation from the Agreement's substantive standards for placing class members in secure facilities.

Additionally, Paragraph 24.A requires that "[a] minor in deportation proceedings . . . be afforded a bond redetermination hearing before an immigration judge in every case, unless the minor indicates on the Notice of Custody Determination form that he or she refuses such a hearing." *See Flores* Agreement at ¶ 24.A [Doc. # 101].   The Ninth Circuit has observed that "*[r]eview by a division of the DOJ of detention decisions* made by other government agencies [(*e.g.*, ORR)] is . . . a well-established feature of the [immigration] statutory framework[,]" and that the right to such review is guaranteed by Paragraph 24.A.  *See Flores v. Sessions*, 862 F.3d at 877 & n.15 (emphasis added); *see also id.* at 867 ("The bond hearing under Paragraph 24A is a fundamental protection guaranteed to unaccompanied minors under the *Flores* Settlement."). Nonetheless, newly published 45 C.F.R. section 410.810(a) would effectively abrogate this protection by requiring a class member to "*request* that an independent hearing officer *employed by HHS* determine, through a written decision, whether the [class member] would present a risk of danger to the community or risk of flight if released." *See* 84 Fed. Reg. at 44,535 (emphasis added).   Not only do the New Regulations transform the bond redetermination hearing into an opt-in rather than opt-out right, they also shift such determinations away from independent immigration judges.   This section strips class members of a "fundamental protection." *Flores v. Sessions*, 862 F.3d at 868; *see id.* at 879 (describing the "meaningful benefit" that bond hearings,

---

[13] In addition to Paragraph 21's criteria, Paragraph 23 provides that the agency "will not place a minor in a secure facility pursuant to Paragraph 21 if there are less restrictive alternatives that are available and appropriate in the circumstances, such as transfer to . . . a medium security facility . . . ." *Flores* Agreement at ¶ 21 [Doc. # 101]. A "medium security facility" has "stricter security measures . . . than a facility operated by a licensed program in order to control problem behavior and to prevent escape." *Id.* at ¶ 8.   These facilities are less restrictive than the secure facilities identified in Paragraph 21.  *See id.* ("[A medium security] facility may have a secure perimeter but shall not be equipped internally with major restraining construction or procedures typically associated with correctional facilities.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | September 27, 2019 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 14 of 24 |
|---|---|---|---|

as required under the Agreement, provide to unaccompanied minors"). Section 410.810(a) is thus inconsistent with a material substantive provision of the *Flores* Agreement.[14]

**3.    The New Regulations' Elimination of Certain Mandatory Protections in the *Flores* Agreement**

Plaintiffs correctly point out that "many of the [*Flores* Agreement's] core provisions use the verb 'shall' to posit a mandatory, non-discretionary obligation." *See* Pls.' Mot. to Enforce at 25 [Doc. # 516]; *see also Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1977 (2016) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement."); *Shall*, Black's Law Dictionary (11th ed. 2019) ("[Defined as:]  [h]as a duty to; more broadly, is required to . . .  This is the mandatory sense that drafters typically intend and that courts typically uphold. Only [this] sense . . . is acceptable under strict standards of drafting.").  The New Regulations replaced many of these protections with statements that merely describe the manner in which Defendants purportedly treat class members in their custody.

For instance, the Agreement generally requires each class member who is not released to "be placed temporarily in a licensed program[,]" which "*shall* be non-secure as required under state law . . . ." *See Flores* Agreement at ¶¶ 6, 19 (emphasis added) [Doc. # 101].  Conversely, newly published 45 C.F.R. section 410.201(a) provides:  "ORR *places* each [class member] in the least restrictive setting that is in the best interest of the child and appropriate to the [class member's] age and special needs, provided that such setting is consistent with its interests to ensure the [class member's] timely appearance before DHS and the immigration courts and to protect the [class member's] well-being and that of others." *See* 84 Fed. Reg. at 44,531. Further, whereas Paragraph 14 of the Agreement states that "the INS *shall* release a minor from its

---

[14] DHS intends to diminish other class members' rights to bond hearings as well. Revised 8 C.F.R. section 236.3(m) provides:

> Bond determinations made by DHS for minors who are in removal proceedings pursuant to section 240 of the Act and who are also in DHS custody may be reviewed by an immigration judge pursuant to 8 CFR part 1236 to the extent permitted by 8 CFR 1003.19.  *Minors in DHS custody who are not in section 240 proceedings are ineligible to seek review by an immigration judge of their DHS custody determinations.*

84 Fed. Reg. at 44,529 (emphasis added).  DHS makes no effort to hide the fact that this revision is intended to prevent "[m]inors who are in expedited removal proceedings" from obtaining bond hearings. *See* 84 Fed. Reg. at 44,394–95. Thus, this regulation is patently irreconcilable with Paragraph 24.A's requirement that "[a] minor in deportation proceedings shall be afforded a bond redetermination hearing before an immigration judge *in every case* . . . ." *See Flores* Agreement at ¶ 24.A (emphasis added) [Doc. # 101].

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | September 27, 2019 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 15 of 24 |
|---|---|---|---|

custody without unnecessary delay," the New Regulations fail to use mandatory, non-discretionary language regarding release. *Flores* Agreement at ¶ 14 (emphasis added); *see* 84 Fed. Reg. at 44,525 (providing that "[m]inors *may be released*" under certain circumstances under 8 C.F.R. section 212.5(b)) (emphasis added); 84 Fed. Reg. at 44,532 (providing that "ORR *releases* a[n unaccompanied alien child] to an approved sponsor without unnecessary delay" under 45 C.F.R. section 410.301) (emphasis added).

Modifications of this sort are hardly inconsequential. The deletion of "shall" and the insertion of such descriptive language as in the aforementioned regulatory provisions strongly suggest that Defendants do not intend to be bound by the *Flores* Agreement's substantive terms. *Cf. Tin Cup, LLC v. U.S. Army Corps of Eng'rs*, 904 F.3d 1068, 1074 (9th Cir. 2018) ("The Supreme Court has distinguished descriptive 'will' statements from mandatory 'shall' statements. . . . '[S]hall' connotes a mandatory obligation and 'will' connotes a description of what Congress expected to happen . . . ." (citation omitted) (citing *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 69 (2004))). Given that the history of this case is replete with findings of Defendants' non-compliance with the Agreement, precision in the regulatory language purporting to terminate the Agreement is that much more important. *See Rouser v. White*, 825 F.3d 1076, 1081 (9th Cir. 2016) (before terminating a consent decree, a court must consider the "general goals" of the decree as well as the defendants' "record of compliance").

Accordingly, these aspects of the New Regulations fail to implement the *Flores* Agreement, and are not consistent with its terms.

### 4.      Promulgation under the APA

Lastly, though the *Flores* Agreement provided that a rule promulgated according to the APA *could* terminate the Agreement, the New Regulations—which presumably satisfy APA procedural requirements—do not *automatically* terminate the Agreement. Defendants' argument to the contrary reads out portions of Paragraph 9 ("the final regulations shall not be inconsistent with the terms of this Agreement") and Paragraph 40 of the Agreement (providing a termination date of "45 days following defendants' publication of final regulations *implementing this Agreement*"). Dec. 7, 2001 Stipulation at 71 (emphasis added) (alterations omitted) [Doc. # 516]; *see* Defs.' Mot. to Terminate at 48 [Doc. # 639].

As the Court stated in a prior order enforcing the terms of the Agreement, "[c]ourts must interpret contractual language in a manner that gives force and effect to every provision, and not in a way that renders some clauses nugatory, inoperative or meaningless." Order re Pls.' Mot. to Enforce (citation omitted) [Doc. # 177]. Therefore, as agreed upon by the parties in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | September 27, 2019 |

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 16 of 24 |

Agreement and the 2001 Stipulation, it is necessary, but not sufficient, for the New Regulations to follow APA rulemaking procedures. The New Regulations must also satisfy Paragraphs 9 and 40, and as discussed *supra*, they do not.

Furthermore, because Plaintiffs do not bring a challenge to the New Regulations under the APA, the Court need not consider specific arguments regarding whether the New Regulations were promulgated according to APA procedure or are "arbitrary [or] capricious," "contrary to constitutional right," "in excess of statutory . . . authority," or "unsupported by substantial evidence." 5 U.S.C. §§ 706(A), (E); *see, e.g., Henderson v. Morrone*, 214 F. App'x 209, 213 (3d Cir. 2007) (finding, without applying APA analysis, that where promulgated regulations did not fulfill two enumerated conditions of a consent decree, the consent decree still governs); *Ferrell v. Pierce*, 560 F. Supp. 1344, 1348, 1371–72 (N.D. Ill. 1983), *aff'd*, 743 F.2d 454 (enjoining, without assessing the proposed regulation under the APA, a federal agency from implementing proposed regulations that violated a consent decree because they "would eliminate all restrictions on the level of assistance that [the agency] was required to provide.").

Nor is enforcing the *Flores* Agreement an impermissible infringement on DHS and HHS discretion. Defendants argue that applying a non-APA standard to review the New Regulations would "create additional procedures for rulemaking in violation of *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519 (1978)." Defs.' Mot. to Terminate at 27. But the Court has not created "additional procedures" by enforcing an agreement into which Defendants willingly entered and agreed to be bound. "Since the solution arrived at [in the *Flores* Agreement] was to a considerable extent the work of the Agency itself, and since the district court's role was confined to approving the fairness of the consent decree which incorporates it . . . , *Vermont Yankee*'*s* concern for 'judicially-conceived notions of administrative fair play' is inapposite here." *Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1128 (D.C. Cir. 1983). Moreover, any dissatisfaction with the *Flores* Agreement's approach to the detention and treatment of minors can be overridden by the legislative branch. This Court cannot abrogate the consent decree, however, by judicial fiat.

\* \* \*

The *Flores* Agreement contemplates the promulgation of regulations codifying "*the relevant and substantive terms* of th[e] Agreement as a Service regulation" and specifically prohibits Defendants from issuing regulations that are "*inconsistent* with the terms of th[e] Agreement." *See Flores* Agreement at ¶ 9 (emphasis added) [Doc. # 101]. As modified by the parties' stipulation, the *Flores* Agreement terminates only upon "defendants' publication of final regulations *implementing* this Agreement[.]" *See* Dec. 7, 2001 Stipulation at 71 (emphasis

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | September 27, 2019 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 17 of 24 |
|---|---|---|---|

added) (alterations omitted) [Doc. # 516]. When these provisions are read together, it becomes apparent that only final regulations that "implement[]" the *Flores* Agreement, incorporate "the relevant and substantive terms," and are consistent with the terms thereof may formally terminate this consent decree. *See Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1032 (9th Cir. 1989) ("A written contract must be read as a whole and every part interpreted with reference to the whole." (quoting *Shakey's Inc. v. Covalt*, 704 F.2d 426, 434 (9th Cir. 1983))). The New Regulations are a condition subsequent that not only do not implement the *Flores* Agreement, they intentionally subvert it. Since "[c]onditions subsequent are not favored by the law, and are construed strictly," and the New Regulations do not codify numerous relevant and substantive terms of the *Flores* Agreement, the *Flores* Agreement remains fully intact. *See* 17A C.J.S. Contracts § 451 (2019) ("A condition subsequent is a condition that, if performed or violated, as the case may be, defeats the contract . . . .") (footnotes omitted); Part III.A.1–3 (detailing numerous material inconsistencies between the New Regulations and the *Flores* Agreement).

Before ruling on Plaintiffs' Motion to Enforce, however, the Court assesses Defendants' alternative arguments for terminating the Agreement.

**B.      Defendants' Motion to Terminate**

Defendants move to terminate the Agreement under Federal Rules of Civil Procedure 60(b)(5) and 60(b)(6), which permit a party to be relieved from "a final judgment, order, or proceeding [if] applying it prospectively is no longer equitable," or for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(5), (6). Specifically, Defendants assert that: (1) the Homeland Security Act ("HSA") gives Defendants the authority to terminate the agreement; and (2) the public interest demands termination based on the promulgation of final regulations, changes of fact and law, and defects in the *Flores* class. Defendants bear the burden of proving that they have met any Rule 60(b) requirement. *See Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 (1992).

**1.      Authority to Terminate under the HSA**

Defendants selectively quote the savings provision of the HSA to argue that "Congress expressly authorized [the Agreement] to be 'amended, modified, terminated . . . or revoked . . . by an officer of the United States." Defs.' Mot. to Terminate at 54 (quoting 6 U.S.C. § 552(a)). Section 552(a) in fact provides that the Agreement may be "amended, modified, terminated, . . . or revoked *in accordance with law* by an officer of the United States." 6 U.S.C. § 552(a) (emphasis added). "The government recognizes that the HSA savings clause . . . maintained the Agreement in effect as a consent decree." *Flores v. Sessions*, 862 F.3d at 871 n.7. A consent

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | September 27, 2019 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 18 of 24 |
|---|---|---|---|

decree imposes legal obligations upon a party to that decree. *See Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 523 (1986). Because termination of the Agreement must be "in accordance with law"—in other words, in accordance with the contractual terms of the Agreement itself—the "government remains bound by its bargain in the *Flores* Settlement" and cannot unilaterally terminate the settlement. *Flores v. Sessions*, 862 F.3d at 879.

### 2.      Termination in the Public Interest

Defendants also fail to carry their burden to show that continued application of the Agreement is neither equitable nor in the public interest due to "a significant change in circumstances." *Flores v. Lynch*, 828 F.3d 898, 909 (9th Cir. 2016) (quoting *Rufo*, 502 U.S. at 383).

As the Ninth Circuit articulated, "[w]hen the basis for modification is a change in law, the moving party must establish that the provision it seeks to modify has become '*impermissible*.'" *Id.* at 909–10 (quoting *Rufo*, 502 U.S. at 383) (emphasis added). In order to prevail, Defendants must show that, due to a change in law, their compliance with the law "would directly conflict with the *Flores* Agreement and convert it into an "*instrument of wrong*." *Flores v. Sessions*, 862 F.3d at 874 (quoting *Sys. Fed. No. 91 Ry. Emps. Dep't v. Wright*, 364 U.S. 642, 647 (1961) (emphasis added); *cf. City of Duluth v. Fond du Lac Band of Lake Superior Chippewa*, 702 F.3d 1147, 1153–54 (8th Cir. 2013) (modifying a consent decree when a change in relevant law made "illegal what the earlier consent decree was designed to enforce").

Defendants assert that the promulgation of the New Regulations renders termination of the *Flores* Agreement in the public interest. *See* Defs.' Mot. at 66. Defendants exhort the Court to focus on "whether, as a result of the important changes during the intervening years, [Defendant] was fulfilling its obligations under the [Agreement] by other means." Defs.' Mot. at 56 (quoting *Horne v. Flores*, 577 U.S. 433, 439 (2009)) (alterations added). A "critical question in this Rule 60(b)(5) inquiry is whether the objective of the [Agreement] has been achieved. If a durable remedy has been implemented, continued enforcement of the order is not only unnecessary, but improper." *Horne*, 577 U.S. at 450 (internal citation omitted).

For the reasons discussed *supra*, the Court cannot find that Defendants have fulfilled their obligations under the Agreement via the New Regulations or that the objective of the Agreement has been achieved. Given the myriad relevant and substantive differences between the Agreement and the New Regulations' requirements, Defendants have "substantially

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | | Date | September 27, 2019 |
|---|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | | Page | 19 of 24 |
|---|---|---|---|---|

. . . defeat[ed] the object which the parties intend to accomplish," not substantially complied. *Jeff D.*, 643 F.3d at 283–84 (quoting *Wells Benz*, 333 F.2d at 92). The New Regulations' deficiencies and other ongoing litigation in this case, more than 20 years after the Agreement was executed, evidence Defendants' lack of substantial compliance.

Defendants' remaining arguments regarding changes in law and fact constitute yet another in a long line of not so thinly-veiled motions for reconsideration of prior Orders rejecting similar arguments. *See also* Order re Response to Order to Show Cause at 2 [Doc. # 189]; Order Denying Defs.' *Ex Parte* Application at 1–2 [Doc. # 455].

The argument that the TVPRA and HSA grant HHS an exclusive custodial role over unaccompanied minors is no more availing now than in its prior iterations. *See Flores v. Sessions*, 862 F.3d at 876 ("The HSA and TVPRA contain no indication that they are intended to encompass the entire immigration framework for unaccompanied minors, or to shift all related responsibilities to ORR."). The Ninth Circuit and this Court have repeatedly made it clear that the HSA and the TVPRA do not supersede the *Flores* Agreement. *See, e.g.*, *Flores v. Sessions*, 862 F.3d at 881 ("[W]e hold that the statutes have not terminated the *Flores* Settlement's bond-hearing requirement for unaccompanied minors."); *Flores v. Lynch*, 828 F.3d at 910 ("[T]here is no reason why that bureaucratic reorganization should prohibit the government from adhering to the Settlement.); Order re Mot. to Enforce at 9 ("[T]he Court concludes that the TVPRA did not supersede the placement and suitability provisions of the *Flores* Agreement because the two can be easily reconciled and Congress did not explicitly abrogate Class Members' rights under the Agreement.") [Doc. # 470].

Regarding changed factual circumstances, as the Court has previously noted, "[i]n the absence of a showing of changed circumstances that the parties could not have foreseen at the time of their Agreement, it is unnecessary to replow the same familiar territory." Order Denying Defs.' *Ex Parte* Application at 2 (citing *Rufo*, 502 U.S. at 383 ("Ordinarily, . . . modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree. . . . [A] party seeking modification of a consent decree [under Rule 60(b)(5)] bears the burden of establishing that a significant change in circumstances warrants revision of the decree."); *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993) ("[Rule 60(b)(6)] is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment.")) [Doc. # 455]; *see Reno v. Flores*, 507 U.S. at 295 ( "The parties to the present suit agree that the [INS] must assure itself that someone will care for those minors pending resolution of their deportation proceedings. *That is easily done when the juvenile's parents have also been detained and the family can be released together*.") (emphasis added); *Flores v. Lynch*, 828 F.3d

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | | Date | September 27, 2019 |
|---|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | | Page | 20 of 24 |
|---|---|---|---|---|

at 910 ("The Settlement expressly anticipated an influx, and provided that, if one occurred, the government would be given more time to release minors or place them in licensed programs.") (citing Settlement at ¶ 12); *id.* at 906–07 ("[T]here is no reason why [the Agreement's] requirements should be any less applicable in a family detention context than in the context of unaccompanied minors.").

Furthermore, Defendants continue to rely on "dubious" and "unconvincing" logic and statistics to support their changed-circumstances argument. Order Denying Defs.' *Ex Parte* Application at 2–3 [Doc. # 455]; Order re Pls.' Mot. to Enforce at 11 [Doc. # 177]; *see* Defs.' Mot. to Terminate at 67. The Court declines to reiterate yet again why an increase in numbers of families detained at the southern border does not justify, much less require, dissolution of the parties' bargained-for agreement to "treat[] all minors in [Defendants'] custody with dignity, respect, and special concern for their particular vulnerability as minors." *Flores* Agreement ¶ 11.

Finally, Defendants argue that the *Flores* class no longer satisfies Rule 23(a), thereby requiring termination of the Agreement in the public interest. Defs.' Mot. at 68. But "the government waived its ability to challenge the class certification when it settled the case and did not timely appeal the final judgment." *Flores v. Lynch*, 828 F.3d at 908. Plaintiffs convincingly respond that at least one "single common issue of law or fact," the question of     whether the New Regulations terminate the *Flores* Agreement, satisfies Rule 23(a)(2) for the purposes of the motions at issue. *See* Pls.' Opp. at 31–32 [Doc. # 668]. Defendants have not met their burden to show changed circumstances sufficient to merit reconsideration of class certification or for this argument to weigh towards terminating the Agreement in the public interest.

Courts take a "flexible approach" to modifying consent decrees to "ensure that responsibility for discharging the State's obligations is returned promptly to the State and its officials *when the circumstances warrant*." *Horne*, 577 U.S. at 448 (emphasis added) (internal quotations and citations omitted). But here, the Agreement is "largely the work of [the Government] and the other parties to these suits, not the district court; manifestly, the requirements imposed by the Decree do not represent judicial intrusion into the Agency's affairs to the same extent they would if the Decree were 'a creature of judicial cloth.'" *Citizens for a Better Env't*, 718 F.2d at 1127–28. Given the parties' bargained-for positions in the Agreement, the New Regulations' failure to implement the Agreement, and Defendants' repeatedly unavailing arguments about changes in law and fact, the termination of the Agreement and removal of critical protections promised to minors in DHS and HHS custody are not in the public interest.

* * *

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544-DMG (AGRx) | | Date | September 27, 2019 |
|---|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | | Page | 21 of 24 |
|---|---|---|---|---|

The Court agrees with Defendants that a district court should not be "doomed to some Sisyphean fate, bound forever to enforce and interpret a preexisting decree without occasionally pausing to question whether changing circumstances have rendered the decree unnecessary, outmoded, or even harmful to the public interest." Defs.' Mot. to Terminate at 56–57 (quoting *In re Pearson*, 990 F.2d 653, 658 (1st Cir. 1993)). And the Court is not unsympathetic to the challenges that DHS and HHS employees face in executing our country's immigration policies.

But the evidentiary record before this Court overwhelmingly shows that throughout several presidential administrations, the Agreement has been necessary, relevant, and critical to the public interest in maintaining standards for the detention and release of minors arriving at the United States' borders. Defendants willingly negotiated and bound themselves to these standards for all minors in its custody, and no final regulations or changed circumstances yet merit termination of the *Flores* Agreement. Defendants' Motion to Terminate is therefore **DENIED**.

**C.    Appropriate Relief[15]**

Although Defendants failed to terminate the *Flores* Agreement, the Court must still determine whether—and, if so, to what extent—the Court may enjoin them from implementing the New Regulations.

As a consent decree, the *Flores* Agreement itself is an injunction. *See Gates v. Shinn*, 98 F.3d 463, 468 (9th Cir. 1996) ("The consent decree is an injunction."); *see also Healey v. Spencer*, 765 F.3d 65, 75 (1st Cir. 2014) ("A consent decree is both a settlement and an injunction."). Because the Agreement remains in effect, the Court retains authority to enforce its terms. *See Flores* Agreement ¶ 37 ("This paragraph provides for the enforcement, in this District Court, of the provisions of this Agreement . . . ."). Paragraph 9 of the Agreement requires Defendants to "publish the relevant and substantive terms of this Agreement as a[n INS] regulation" and states—in mandatory language—that "[t]he final regulations shall not be

---

[15] Defendants make a passing argument that Plaintiffs do not ask for the same relief in their Motion to Enforce regarding Defendants' Proposed Regulations [Doc. # 516] as that requested in their Supplemental Memorandum regarding Defendants' New Regulations [Doc. # 634]. *See* Defs.' Reply at 8 [Doc. # 682]. The Court finds that Plaintiffs have consistently sought a declaration that Defendants' Proposed and New Regulations are inconsistent with the Agreement and requested enforcement of the Agreement. *See* Pls.' Proposed Order at 4 [Doc. # 516-1]; Pls.' Proposed Order at 4 [Doc. # 634-2]. In their opening brief, Plaintiffs sought an injunction under the All Writs Act, 28 U.S.C. section 1651, against the Proposed Regulations or their "material equivalent." [Doc. # 516-1.] Defendants are therefore on notice as to the nature of the requested relief.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | | Date | September 27, 2019 |
|---|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | | Page | 22 of 24 |
|---|---|---|---|---|

inconsistent with the terms of this Agreement." *Id.* at ¶ 9. The Agreement, by its own terms, therefore enjoins implementation of the inconsistent New Regulations.

Moreover, the All Writs Act, 28 U.S.C. section 1651, authorizes the Court "to issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977). "Powers under [the Act] should be broadly construed," *Hamilton v. Nakai*, 453 F.2d 152, 157 (9th Cir. 1971), and a "consent judgment [is] a sufficient basis for invoking the All Writs Act," *United States v. City of Detroit*, 329 F.3d 515, 523 (6th Cir. 2003).[16] Here, the Court finds that to effectuate its orders enforcing the *Flores* Agreement and "to protect the settlement agreement," an injunction against the Final Regulations as a whole is warranted. *Sandpiper Vill. Condo. Ass'n., Inc. v. Louisiana-Pac. Corp.*, 428 F.3d 831, 841 (9th Cir. 2005).

Defendants' attempt to sever the Final Regulations into valid and invalid portions is unavailing. Aware of the substantial probability that the New Regulations would be declared invalid by this Court, Defendants elected to include the following *pro forma* severability clause in the preamble to the final rule:

> To the extent that any portion of this final rule is declared invalid by a court, the Departments [of Homeland Security and Health and Human Services] intend for all other parts of the final rule that are capable of operating in the absence of the specific portion that has been invalidated to remain in effect. Thus, even if a court decision invalidating a portion of this final rule results in a partial reversion to the current regulations or to the statutory language itself, the Departments intend that the result of the final rule continue to operate, if at all possible in tandem with the reverted provisions.

*See* 84 Fed. Reg. at 44,408. But this "severability clause is an aid merely; not an inexorable command." *See Whole Women's Health v. Hellerstedt*, 136 S. Ct. 2292, 2319 (2016) (internal

---

[16] The Ninth Circuit does not appear to require courts to examine the traditional requirements for obtaining injunctive relief in order to issue such relief under the All Writs Act. *See, e.g.*, *California v. M&P Investments*, 46 F. App'x 876, 878 (9th Cir. 2002) (upholding stay entered under All Writs Act that enjoined enforcement of a municipal regulation that contravened the court's jurisdiction); *see also Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004) ("[W]hile a party must 'state a claim' to obtain a 'traditional' injunction, there is no such requirement to obtain an All Writs Act injunction—it must simply point to some ongoing proceeding, or some past order or judgment, the integrity of which is being threatened by someone else's action or behavior."). *But see In re Jimmy John's Overtime Litig.*, 877 F.3d 756, 770 n.11 (7th Cir. 2017) (applying traditional equitable factors to an injunction entered under the All Writs Act and describing the circuit split on the issue).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | September 27, 2019 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 23 of 24 |
|---|---|---|---|

quotation marks omitted) (quoting *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 884–85 n.49 (1997)).  "Whether the offending portion of a regulation is severable depends upon the intent of the agency *and* upon whether the remainder of the regulation could function sensibly without the stricken provision."  *MD/DC/DE Broadcasters Ass'n v. FCC*, 236 F.3d 13, 22 (D.C. Cir. 2001) (citing *K-Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 294 (1988)).

Based on Defendants' stated intent in implementing the New Regulations, the "offending portion[s]" of the New Regulations cannot be severed from the whole.  *Id.*  For one, the New Regulations have utterly failed to achieve their "principal purpose of . . .  terminating the [*Flores* Agreement]."  84 Fed. Reg. at 44,407; *see supra*, Part II.B.2.  Moreover, in addition to the discrepancies already discussed herein, Plaintiffs provide a non-exhaustive list of 26 areas in which the New Regulations materially differ from the provisions of the Agreement, including their respective protections for special needs minors, criteria for suitability assessments for potential custodians, and data collection for monitoring Defendants' supposed compliance with the protections at issue.  *See* Pls.' Supplemental Mem., Ex. A at 28–46 [Doc. # 634].  Finally, despite the Ninth Circuit's conclusion that "the Settlement unambiguously applies both to accompanied and unaccompanied minors," *Flores v. Lynch*, 828 F.3d at 901, the New Regulations insist that the Agreement does not govern the treatment of accompanied minors.  *See* 84 Fed. Reg. at 44,393.

A court may not sever part of a final rule if doing so would "undercut the whole structure of the rule"—*e.g.*, by "severely distort[ing] the . . . program" at issue and "produc[ing] a rule strikingly different from any the [agency] has ever considered or promulgated."  *See MD/DC/DE*, 236 F.3d at 22–23; *cf. Hellerstedt*, 136 S. Ct. at 2319 ("A severability clause is not grounds for a court to 'devise a judicial remedy that . . . entail[s] quintessentially legislative work.'" (quoting *Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 329 (2006))).  DHS's and HHS's inability to achieve a principal objective of the New Regulations (*i.e.*, termination of the *Flores* Agreement), their failure to validly effect "key" regulatory changes, and their publication of rules that are inconsistent with material clauses of the *Flores* Agreement collectively demonstrate that if any aspect of the New Regulations survives Plaintiffs' challenges, those provisions would be "strikingly different from any" the Departments had considered or promulgated.  *See MD/DC/DE*, 236 F.3d at 23.  It would be untenable to require DHS and HHS employees to parse through pieces of regulations disembodied from their animating purpose.  Therefore, pursuant to the *Flores* Agreement's terms and the Court's authority under the All Writs Act to achieve "the rational ends of law," this Court enjoins Defendants from implementing any and all provisions of the New Regulations.  *See New York Tel.*, 434 U.S. at 172 (citations and internal quotation marks omitted).  Plaintiffs' Motion to

**CIVIL MINUTES—GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | September 27, 2019 |
|---|---|---|---|

| Title | ***Jenny L. Flores, et al. v. William P. Barr, et al.*** | Page | 24 of 24 |
|---|---|---|---|

Enforce the *Flores* Agreement and request to enjoin enforcement of the New Regulations is therefore **GRANTED.**

**V.**
**CONCLUSION**

The blessing or the curse – depending on one's vantage point – of a binding contract is its certitude.  The *Flores* Agreement is a binding contract and a consent decree.  It is a final, binding judgment that was never appealed.  It is a creature of the parties' own contractual agreements and is analyzed as a contract for purposes of enforcement.  Defendants cannot simply ignore the dictates of the consent decree merely because they no longer agree with its approach as a matter of policy.  The proper procedure for seeking relief from a consent decree is a Rule 60(b) motion by which a party must demonstrate that a change in law or facts renders compliance either illegal, impossible, or inequitable.  Relief may also come from a change in law through Congressional action.  Having failed to obtain such relief, Defendants cannot simply impose their will by promulgating regulations that abrogate the consent decree's most basic tenets.  That violates the rule of law.  And that this Court cannot permit.

Based on the foregoing, the Court **DENIES** Defendants' Motion to Terminate and **GRANTS** Plaintiffs' Motion to Enforce insofar as it seeks an Order declaring that Defendants have failed to terminate the *Flores* Agreement and enjoining Defendants from implementing the New Regulations.[17]  The Court therefore will issue a Permanent Injunction consistent with this Order.

**IT IS SO ORDERED**.

---

[17] At the hearing, Defendants suggested that there are aspects of the New Regulations that are not covered by the *Flores* Agreement at all.  If that is true, that was not made apparent to the Court by the parties' briefing.   To the extent Defendants wish to identify those portions of the New Regulations that they want to preserve that are not covered by the Court's Orders or the *Flores* Agreement, they must meet and confer with Plaintiffs and notify the Court by no later than **October 4, 2019**, if the parties agree to carve out any such provisions from the scope of this Order and the Permanent Injunction.  Thereafter, the Court will consider appropriate amendments to the Order and Permanent Injunction.