# EXHIBIT M2

sponsors and others. ORR may require additional checks, verifications, or procedures for sponsors and others in any category if there are any unresolved issues or questions related to the well-being of the child.

| Type of Background Check | Purpose | Persons Checked | When Performed |
| --- | --- | --- | --- |
| Public Records Check | Identifies arrests or convictions of sponsors, adult household members, or others. If a check reveals a criminal record or safety issue, it is used to evaluate the sponsor's ability to provide for a child's physical and mental well-being. | Potential Sponsors in Categories 1-3. Non-sponsor adult household members and adult caregivers identified in a sponsor care plan. | In all cases |
| Sex Offender Registry Check, conducted through the U.S. Department of Justice National Sex Offender Public Website | Identifies sponsors and others that have been adjudicated as sex offenders through a national search and, if available, a local public registry search. | Potential Sponsors in Categories 1-3. Non-sponsor adult household members and adult caregivers identified in a sponsor care plan. | In all cases |
| FBI National Criminal History Check, based on digital fingerprints or digitized paper prints | Determines whether a sponsor or adult household member (as applicable) has a criminal history, has a profile in DHS IDENT, has been convicted of a sex crime, or has been convicted of other crimes that compromise the sponsor's ability to care for a child. | Potential Sponsors in Category 1 and Category 2A. | Where a public records check reveals possible disqualifying factors under 2.7.4; or where there is a documented risk to the safety of the unaccompanied alien child, the child is especially vulnerable, and/or the case is being referred for a home study |
| | | Potential Sponsors in Categories 2B and 3. | In all cases. |
| | | Non-sponsor adult household members and adult caregivers identified in a sponsor care plan. | Where a public records check reveals possible disqualifying factors under 2.7.4; or where there is a documented risk to the safety of the unaccompanied alien child, the child is especially vulnerable, and/or the case is being referred for a home study |
| Child Abuse and Neglect (CA/N) Check, obtained on a state by state basis as no national CA/N check repository exists | Checks all localities in which the sponsor or household member has resided in the past 5 years. | Potential Sponsors in Categories 1-3 | In cases that require a home study, and cases where a special concern is identified. |
| | | Non-sponsor adult household members and adult caregivers identified in a sponsor care plan. | In any case where a sponsor is required to undergo a CA/N check. |
| State Criminal History Repository Check and/or Local Police Check | Assists in locating police or arrest records, or other criminal offense details, as needed. | Potential Sponsors in Categories 1-3. Non-sponsor adult household members and adult caregivers identified in a sponsor care plan. | Used on a case-by-case basis when there is an unresolved criminal arrest or issue that is still in process. |

*Revised 6/18/19*

## 2.5.2 Results of Background Checks on Release Decisions

ORR uses the results from background checks to determine whether release to a potential sponsor is safe. A potential sponsor may be denied based on the results of a background check, and a release decision may remain undecided until ORR obtains the results of a potential sponsor's criminal history or child abuse and neglect reports.

The biometric and biographical information, including fingerprints, are shared with FBI to investigate criminal history through the National Criminal Information Center and may be used consistent with their authorities. Biometric and biographical information may be shared with federal, state or local law enforcement or state child welfare agencies, as necessary, to conduct criminal history searches or search for adverse child welfare findings.

**Criminal History and Adverse Child Welfare Finding Results**

In the event that a background check of a potential sponsor or, if applicable, adult household member, reveals criminal history or a safety risk, the care provider and ORR evaluate this information and request the potential sponsor to provide any additional information that may demonstrate the potential sponsor's ability to provide for the child's physical and mental well-being.

If release is not barred by **Section 2.7.4**, the decision to release a child or youth to a sponsor in these circumstances is based on all the following considerations:

- The severity of the criminal and/or child abuse/neglect history;
- The length of time that has passed since the criminal act or child abuse/neglect allegation occurred;
- The relationship of the potential sponsor and other adult household members to the child or youth; and
- The evidence, if any, of rehabilitation since the criminal act or child abuse/neglect allegation occurred.

In cases where the proposed sponsor or an adult household member has been charged with, but not convicted of, a crime, ORR may postpone a final release decision until the legal issue is resolved.

In cases where ORR has released a child and later obtains derogatory information on a sponsor or sponsor household member, ORR determines whether the information if known prior to release would have led to a denial of sponsorship or presents some other high risk child welfare concern. In these instances ORR contacts state CPS and/or local law enforcement (as necessary) with jurisdiction over the sponsor's home and provides them with ORR's findings. ORR may contact the sponsor in certain situations to inform them of child welfare concerns post release in these instances, especially where it concerns an individual in the sponsor's home.

**Summary Table of Results of Background Checks and Next Steps**

The following table shows procedures following the results of background checks.

| BACKGROUND CHECK RESULTS | NEXT STEPS |
| --- | --- |
| No arrest record; check completed | Proceed with release decision-making process. See Section **2.7 Recommendations and Decisions on Release**. |
| Criminal arrest record and/or substantiated adverse child welfare findings; check completed | Determine whether release is barred. See Section 2.7.4 Deny Release Request. If release is not barred, elevate safety issues for third party review. For any findings that could affect safe release, care provider and/or ORR will obtain additional documents to determine current situation (e.g., sponsor is on probation, criminal charges are resolved, etc.). Final release decision shall take into account the criminal records and all other relevant information that is available. |
| Criminal history pending results; check not complete | ORR/FFS will provide instructions to care provider |
| CA/N pending results | ORR may choose to release a child pending CA/N results if there are no significant child welfare concerns associated with the sponsor or an adult in the sponsor's home, with the UAC or other children. |

*Revised  6/18/19*

### 2.5.3 Commonly Asked Questions on the ORR Background Check Process

Q1: Where can a sponsor get his or her fingerprints taken?
A1: ORR funds a network of digital fingerprint providers at locations that are not affiliated with law enforcement entities. Sponsors may also go to any local police department for paper fingerprinting services in the event a digital fingerprint provider is not conveniently located near a sponsor's location. Fingerprinting services are not available at ORR headquarters or at HHS/PSC offices.

Q2: Are potential sponsors required to disclose to the care provider that they have a record of a criminal charge or child abuse?
A2: Yes. The sponsor must immediately advise the care provider of this situation and gather detailed documentation of the charges, dispositions, police reports, and evidence of rehabilitation.

Q3: What happens if a public records or sex offender registry check returns disqualifying findings for a sponsor, adult household member, or adult caregiver identified in the sponsor care plan?
A3: The Case Manager informs the sponsor, and provides the sponsor with a copy of the results. The sponsor and household member/adult caregiver may dispute the results, and provide further evidence or information that a check was not performed correctly (e.g., the wrong date of birth was used, the individual's name was spelled incorrectly, etc.). The Case Manager reruns the check using the corrected information. If further information is required, such as additional background checks, the Case Manager contacts the sponsor and household member/adult caregiver to obtain the information, or make other arrangements so that the safety risk to the unaccompanied alien child is mitigated (e.g., taking steps so that the household member no longer resides in the sponsor's home, identifying a new adult caregiver, etc.).

Q4: What happens if an adult household member refuses to cooperate with a background check?
A4: ORR may deny release when an adult household member refuses to cooperate with a background check. In such cases, ORR considers the totality of the circumstances, including the adult household member's refusal and all other relevant and available information to determine whether the release

process may continue. ORR determines the best interests of a child and does not release any child to a sponsor until ORR has determined that it is safe to do so.

Q5: Do background checks expire?
A5: Yes. The FBI National Criminal History Check, Child Abuse and Neglect (CA/N) Check, and State Criminal History Repository Check and/or Local Police Check all expire 270 days from the day results are received. The Public Records Check and Sex Offender Registry Check expire 90 days from the day ORR receives results. ORR requires new background checks if the previous results have expired prior to ORR approving the child's release; this includes obtaining a new set of fingerprints (re-fingerprinting) when applicable.

Q6: Does ORR share the results of the FBI fingerprint checks with other parties?
A6: ORR does not release the results of the FBI fingerprints to outside organizations or individuals, or to ORR care providers. The FBI searches DHS databases that may contain overlapping records. The FBI system automatically initiates a notification to the DHS system if a particular record has been searched.

Q7: Can DHS use information gathered from the ORR background check process to enforce immigration policies against potential sponsors or others?
A7: Until September 30, 2019, DHS is restricted from using a background check subject's information for immigration enforcement actions such as placing a subject in detention, removal, referring the individual for a decision on removal, or starting removal proceedings. Generally stated, they include: certain felonies; an association with a business that employs minors and does not pay a legal wage or prevents the minor from going to school; or an association with prostitution.  The felonies include: (A) an aggravated felony as defined in 8 U.S.C. 1101(a)(43)); (B) child abuse; (C) sexual violence or abuse; or (D) child pornography. An aggravated felony, is defined at 8 U.S.C. § 1101(a)(43), and includes a listing of 21 different kinds of crimes.

If the subject of a background check is concerned about having been charged or convicted of a crime, Case Managers make a request that the subject talk to an attorney about whether their criminal history would fit the definition.

*Revised 6/18/19*

## 2.6 Sponsor Immigration Status and Release of Unaccompanied Alien Children

ORR uses immigration status information to determine whether a sponsor care plan is necessary in the event the sponsor is required to leave the United States. ORR does not disqualify potential sponsors based solely on their immigration status or for law enforcement purposes.

If the sponsor has an outstanding order of removal, or a pending order of removal that is related to an underlying criminal act, the decision to release a child or youth to a sponsor in these circumstances is based on the considerations described in Section 2.5.2.  ORR bars release to any unrelated individual who has an outstanding order of removal.

How does ORR obtain information about immigration status?
During the sponsor assessment process, case managers ask sponsors about their immigration status and ask them to provide documentation sufficient to prove their immigration status (see Section 2.2.4 Required Documents for Submission with the Application for Release).

What is in a sponsor care plan?
A sponsor care plan identifies the individual that will assume care of an unaccompanied alien child if the sponsor becomes unable to care for the child (see Section 2.7.6 Issues Related to Recommendations and Decisions).

*Revised 6/18/19*

## 2.7 Recommendations and Decisions on Release

ORR care providers must make a recommendation to release a child to a potential sponsor after the care provider has evaluated the sponsor, completed the background checks, and collected necessary documentation to prove the sponsor's identity and relationship to the child or youth. The recommendation must take into consideration all relevant information, including the report and recommendations from a home study, if conducted; laws governing the process; and other factors in the case. The ORR care provider makes a recommendation for release if the care provider concludes that the release is safe and the sponsor can care for the physical and mental well-being of the child.

- The care provider **Case Manager (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Case Manager)** and the **Case Coordinator  (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Case Coordinators)** must make a recommendation to the **ORR/FFS (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#ORR/Federal Field Specialist)** on the release of the unaccompanied alien child to a particular sponsor. If the Case Manager and Case Coordinator cannot agree on a particular recommendation, or if the case is particularly complicated, they may refer the case directly to an ORR/FFS for guidance on how to proceed.
- After receiving the recommendation, the **ORR/FFS  (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#ORR/Federal Field Specialist)** or other **ORR/Headquarters staff**

(https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#ORR/Headquarters
Staff) reviews the recommendation.
- The ORR/FFS makes a release decision in consideration of the recommendations from the care provider, the Case Coordinator, and other stakeholders, including the home study provider and the Child Advocate, where applicable.

Only ORR (or ACF) has the authority to make the final decision on a release. The Case Manager, Case Coordinator, and other stakeholders have an important role in making recommendations. In some cases, the ORR/FFS may send a case back to the Case Coordinator and Case Manager to obtain additional information before he/she makes a release decision.

The ORR/FFS makes one of the following release decisions:

- Approve release to sponsor
- Approve release with post-release services
- Conduct a home study before a final release decision
- Deny release
- Remand for further information

*Revised 06/29/18*

## 2.7.1 Approve Release Decisions

A recommendation for a release without a home study or post-release services is made after a thorough assessment of the sponsor, the sponsor's family unit, and the needs of the child or youth are taken into consideration. The ORR/FFS makes this release decision when he/she determines that the release is a safe release, the sponsor can care for the health and well-being of the child, and the sponsor understands that the child is to appear for all immigration proceedings.

*Posted 1/27/15*

## 2.7.2 Approve Release with Post-Release Services

The ORR/FFS may approve a release with post-release services when the release is determined to be safe and appropriate, but the unaccompanied alien child and sponsor need additional assistance to connect them to appropriate resources in the community or to address other concerns, such as mental health or other needs that could benefit from ongoing assistance from a social welfare agency. The sponsor must consent before services may be provided and may withdraw his or her consent at any time after services have begun, since post-release services are a voluntary service. See **Section 6.2 Post Release Services (https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-6#6.2)**.

*Revised 4/15/19*

## 2.7.3 Conduct a Home Study Before a Final Release Decision Can Be Made

The Case Manager and Case Coordinator will recommend to the ORR/FFS that a home study be conducted prior to making a release recommendation. If the ORR/FFS agrees, he/she will approve that a home study be conducted before a final release decision can be made. The home study provider uses a standardized template to complete the review; however, the provider may include any additional supporting documentation regarding the sponsor or the child or youth, as applicable.

Once the Case Manager and Case Coordinator receive the home study results, they will review the case in light of the home study and make a release recommendation to the ORR/FFS. (**See Section 2.4.2 Home Study Requirements. (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-section-2#2.4.2)**)

*Posted 1/27/15*

## 2.7.4 Deny Release Request

ORR *will* deny release to a potential sponsor if any one of the following conditions exists:

- The potential sponsor is not willing or able to provide for the child's physical or mental well-being;
- The physical environment of the home presents risks to the child's safety and well-being;
- Release of the unaccompanied alien child would present a risk to him or herself, the sponsor, household, or the community; or,

ORR may deny release to a Category 1 potential sponsor, and will deny release to a Category 2A/2B or Category 3 potential sponsor, if any one of the following conditions exists:[9]

- The potential sponsor or a member of the potential sponsor's household:

- Has been convicted of (including plea of no contest) a felony involving child abuse or neglect, spousal abuse, a crime against a child or children (including child pornography); or a crime involving violence, including rape, sexual assault or homicide;
- Has been convicted within the last five years of a felony involving physical assault, battery, or drug-related offenses;
- Has been convicted of a misdemeanor for a sex crime, an offense involving a child victim, or a drug offense that compromises the sponsor's ability to ensure the safety and well-being of the child;
- Has been convicted of alien smuggling or a crime related to trafficking in persons; or
- Has other criminal history or pending criminal charges or child welfare adverse findings from which one could reasonably infer that the sponsor's ability to ensure the safety and well-being of the child is compromised;

or

- A potential sponsor or a member of the potential sponsor's household has one of the following substantiated adverse child welfare findings:[11]
    - Severe or chronic abuse or neglect;
    - Sexual Abuse or other sexual offenses;
    - Abuse or neglect of other children in the household;
    - Long-term mental illness or deficiency;
    - Long-term alcohol or drug induced incapacity; or
    - Involuntary termination of the parental rights to another child.

*Revised 6/18/19*

## 2.7.5 Remand Release Request – Decision Pending

The ORR/FFS may remand the release request, which means that the ORR/FFS is sending the recommendation back to the Case Manager for additional information or additional actions before a final release decision can be made. ORR records the date of the remand and the decision will be pending further review until the documentation is provided or actions are taken.

*Posted 1/27/15*

## 2.7.6 Issues Related to Recommendations and Decisions

**Safety Plan**
Case managers, in consultation with Case Coordinators, prepare a safety plan, as needed, to address any outstanding needs the child may have after he/she is released and to ensure the child's safe and successful integration into the sponsor family unit and community. The goal of the safety plan is to ensure the child's safety. The safety plan also has guidance for sponsors on participating in post-release services and on other areas of care critical to the child's adjustment in the family and the community, such as maintaining mental health services for the unaccompanied alien child, accessing any needed special education, helping the child avoid drugs and alcohol, and using appropriate parenting techniques.

**Sponsor Care Plan**
A sponsor care plan identifies an adult caregiver who will assume care of an unaccompanied alien child if the sponsor becomes unable to care for the child. ORR requires a sponsor care plan for sponsors who may leave the United States, including all sponsors who are not U.S. citizens or lawful permanent residents (green card holders). The goal is to ensure an unaccompanied alien child has a caregiver, despite any complications resulting from the sponsor's immigration situation.
The plan:

- Identifies an adult caregiver, and their relationship to the UAC and sponsor, if any;
- Includes copies of the adult caregiver's vetting information (background check results, identifying documentation, etc.);
- Includes the adult caregiver's contact information;
- Discusses how the adult caregiver is notified that a transfer of care is required, if required;
- Provides that the adult caregiver will abide by the terms of the *Sponsor Care Agreement*;
- Includes the date the UAC's Case Manager discusses the plan with the child's sponsor and the adult caregiver identified in the plan; and,
- Includes additional information and materials (e.g., a Safety Plan), as appropriate or when required by ORR.

A copy of the sponsor care plan is maintained in the UAC's case file, provided to the sponsor, and to the adult caregiver identified in the plan.

*Revised 6/7/18*

## 2.7.7 Notification of Denial

If the ORR Director denies the reunification application of an unaccompanied alien child's parent or legal guardian, the ORR Director notifies the parent/legal guardian by sending a denial letter to the parent/legal guardian within 30 business days of receiving all the required information and documentation in a specific case. If the sole reason for denial of release is concern that the unaccompanied alien child is a danger to himself/herself or the community, the ORR Director sends a copy of the denial letter to the child.

3/25/2020 Case 2:85-cv-04544-DMG-AGR Document 733-16 Filed 03/26/20 Page 7 of 13 Page ID
Children Entering the United States Unaccompanied: Section 2 | Office of Refugee Resettlement | ACF
#:34259
Page 170 of 187

The denial letter includes:

- An explanation of the reason(s) for the denial;
- Instructions on how to obtain the child's case file;
- The supporting materials and information that formed the basis for ORR's decision; and
- An explanation of the process for requesting an appeal of the denial (see Section **2.7.8 (https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-2#2.7.8)**). The explanation also informs the prospective sponsor that he or she may submit additional information to support an appeal request.

If ORR denies sponsorship to a potential sponsor who is not the parent or legal guardian of the child, the care provider notifies the potential sponsor, providing the reasons for the denial verbally. If the sole reason for denial of release is concern that the unaccompanied alien child is a danger to himself/herself or the community, the Director notifies the child in writing of the reason for denial as described above.

*Revised 5/2/17*

### 2.7.8 Appeal of Release Denial

The parent/legal guardian may seek an appeal of the ORR Director's denial decision by submitting a written request to the Assistant Secretary for Children and Families within 30 business days of receipt of the final decision from the ORR Director. The appeal request must state the basis for seeking the appeal, and may include any additional information that the requester believes is relevant to consideration of the request. The request may seek an appeal without a hearing or may seek a hearing.

Without a Hearing: If the requester seeks an appeal without a hearing, the Assistant Secretary will consider only the denial letter and the information referenced therein, as well as the appeal request and any additional supporting materials or information submitted by the requester. The Assistant Secretary will notify the requester of a decision within 30 business days of receiving the request. If more information is needed to make a decision, or for good cause, the Assistant Secretary may stay the request until he or she has the information needed. In these cases, the Assistant Secretary will send a written explanation to the parent/legal guardian, communicating a reasonable process and timeframe for addressing the situation and making a determination.

With a Hearing: If the requester seeks a hearing, the Assistant Secretary will schedule a teleconference or video conference, per the requester's preference, at which time the requester (or the requester's representative) may explain the reasons why he or she believes the denial was erroneous. The Assistant Secretary will consider the testimony and evidence presented at the hearing, in addition to the original denial letter and information referenced therein, to make a determination. The Assistant Secretary will notify the requester of the decision in writing within 30 business days following the hearing.

The Assistant Secretary makes a determination based on the relevant law, regulations, and policies concerning release decisions (see Section **2.7.4 (https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-2#2.7.4)** for the basis of a release denial). Any evidence submitted to the Assistant Secretary by ORR is shared with the requester in compliance with privacy protections. The Assistant Secretary conducts a de novo review and may affirm or overturn the ORR Director's decision, or send the case back to ORR for further action. Appeals are recorded, and the requester may request a copy of the recording. The Assistant Secretary's decision to affirm or overrule the ORR Director's decision to deny release to a parent/legal guardian is the final administrative decision of the agency on the application that had been under consideration. However, if there is new information or a change in circumstances regarding the reunification application of a parent/legal guardian, or regarding the unaccompanied alien child's circumstances, a new reunification application may be submitted that highlights the change(s) and explains why such changes should alter the initial decision. Similarly, if ORR discovers new information or becomes aware of a change in the circumstances of the parent/legal guardian and/or the unaccompanied alien child, ORR may assess the case anew.

**Denial for sole reason that the unaccompanied alien child is a danger to himself/herself or the community**

If the sole reason for denial of release is concern that the unaccompanied alien child is a danger to himself/herself or the community, the unaccompanied alien child may seek an appeal of the denial as described above, provided the parent/legal guardian is not seeking an appeal. If the child expresses a desire to seek an appeal, ORR appoints a child advocate to assist the unaccompanied alien child in seeking the appeal. The unaccompanied alien child may seek such appeal at any time after denial of release while the child is in ORR custody.

*Revised 5/2/17*

### 2.8 Release from Office of Refugee Resettlement (ORR) Custody

Release from the ORR custody is a three-step process:

- After care planning, which occurs during the entire safe and timely release process.
- Transfer of physical custody of the child, which occurs as soon as possible once an unaccompanied alien child is approved for release.
- Closing the case file, which occurs within 24 hours of the unaccompanied alien child's discharge.

*Posted 1/27/15*

3/25/2020 Children Entering the United States Unaccompanied: Section 2 | Office of Refugee Resettlement | ACF
Case 2:85-cv-04544-DMG-AGR   Document 733-16   Filed 03/26/20   Page 8 of 13   Page ID
#:34260
Page 171 of 187

**2.8.1 After Care Planning**

Throughout the release process, care providers work with the child and sponsor so that they can plan for the child's after care needs. This involves working with the sponsor and the unaccompanied alien child to:

- Prepare them for post-ORR custody
- Assess the sponsor's ability to access community resources
- Provide guidance regarding safety planning, sponsor care plans, and accessing services for the child

Once the sponsor assessment is complete and a sponsor has been approved, the sponsor enters into an agreement with the Federal government in which he or she agrees to comply with the following provisions (see *Sponsor Care Agreement*) **(https://www.acf.hhs.gov/programs/orr/resource/unaccompanied-childrens-services#Family Reunification Packet for Sponsors)**:

- Provide for the physical and mental well-being of the child, including but not limited to, food, shelter, clothing, education, medical care and other services as needed.
- For those who are not the child's parent or legal guardian, make best efforts to establish legal guardianship with the local court within a reasonable time.
- Attend a legal orientation program provided under the Department of Justice/Executive Office for Immigration Review's (EOIR) Legal Orientation Program for Custodians (Sponsors), if available where he or she resides.
- Depending on where the unaccompanied alien child's immigration case is pending, notify the local Immigration Court or the Board of Immigration Appeals within 5 days of any change of address or phone number of the child (Form EOIR-33). (If applicable, file a Change of Venue motion on the child's behalf.[10] A "change of venue" is a legal term for moving an immigration hearing to a new location.)
- Notify the DHS/U.S. Citizenship and Immigration Services within 10 days of any change of address by filing an Alien's Change of Address Card (AR-11) or electronically at **http://www.uscis.gov/ (http://www.uscis.gov/ar-11)ar-11 (http://www.uscis.gov/ar-11)Visit (https://www.acf.hhs.gov/disclaimers) disclaimer page (https://www.acf.hhs.gov/disclaimers)**.
- Ensure the unaccompanied alien child's presence at all future proceedings before the DHS/Immigration and Customs Enforcement (ICE) and the DOJ/EOIR.
- Ensure the unaccompanied alien child reports to ICE for removal from the United States if an immigration judge issues a removal order or voluntary departure order.
- Notify local law enforcement or state or local Child Protective Services if the child has been or is at risk of being subjected to abuse, abandonment, neglect or maltreatment or if the sponsor learns that the child has been threatened, has been sexually or physically abused or assaulted, or has disappeared. (Notice should be given as soon as it is practicable or no later than 24 hours after the event or after becoming aware of the risk or threat.)
- Notify the National Center for Missing and Exploited Children at 1-800-843-5678 if the unaccompanied alien child disappears, has been kidnapped, or runs away. (Notice should be given as soon as it becomes practicable or no later than 24 hours after learning of the child's disappearance.)
- Notify ICE at 1-866-347-2423 if the unaccompanied alien child is contacted in any way by an individual(s) believed to represent an alien smuggling syndicate, organized crime, or a human trafficking organization. (Notice should be provided as soon as possible or no later than 24 hours after becoming aware of the information.)
- In case of an emergency, such as serious illness, destruction of home, etc., temporarily transfer physical custody of the child to another person who will comply with the terms of the *Sponsor Care Agreement*.
- In the event that a sponsor who is not the child's parent or legal guardian is no longer able and willing to care for the unaccompanied alien child and is unable to temporarily transfer physical custody, notify ORR using the ORR National Call Center, at 1-800-203-7001.

The agreement includes the notice that the release of the unaccompanied alien child to the sponsor's care does not grant the child any legal immigration status and that the child must present himself or herself for immigration court proceedings.

The care provider also provides the sponsor with a Sponsor Handbook that outlines the responsibilities in caring for the unaccompanied alien child's needs for education, health, obtaining legal guardianship, finding support to address traumatic stress, keeping children safe from child abuse and neglect and from trafficking and exploitation. The handbook reiterates the importance of continuing with immigration proceedings and includes links to EOIR's website and forms. The handbook discusses laws related to employment, such as the Federal law prohibiting minors under the age of 18 from working in hazardous occupations.

After care planning includes the care provider explaining the following to the unaccompanied alien child and the sponsor:

- The U.S. child abuse and neglect standards and child protective services that are explained on the Administration for Children and Families **Child Welfare Information Gateway (https://www.childwelfare.gov/)** website.
- Human trafficking indicators and resources
- Basic safety and how to use the 9-1-1 number in emergency situations.

The care provider notifies all stakeholders of the child's discharge date and change of address and venue, as applicable. Where applicable, ORR also provides Child Advocates with access to their clients' documents and forms, and helps child advocates to remain informed about their clients' after-care plans and legal proceedings. The care provider coordinates with the legal service provider or attorney of record to help complete the necessary legal

forms. Stakeholders notified of the change of address and, if applicable, request for change of venue for the immigration case include the U.S. Immigration and Customs Enforcement (ICE) Office of Chief Counsel and the U.S. Executive Office for Immigration Review (EOIR) Immigration Court Administrator.

*Revised 6/7/18*

**2.8.2 Transfer of Physical Custody**

Once ORR approves an unaccompanied alien child for release, the care provider collaborates with the sponsor to ensure physical discharge happens as quickly as possible (within 3 calendar days after ORR approves the release). The care provider notifies DHS prior to the physical release to allow DHS an opportunity to comment on the imminent release as well as time to prepare any DHS paperwork for the ICE Chief Counsel's office.

The care provider ensures that all the child's belongings—including those he or she had at the time they entered ORR custody and any they acquired during their stay—are given to the child and sponsor at time of release. The care provider also makes sure that the child and sponsor have copies of files or papers needed for the child to obtain medical, educational, legal or other services following release.

Whenever possible, sponsors are expected to come to the care provider or to an offsite location designated by the care provider for the transfer of physical custody of the child.

**Escorting Children to a Sponsor**

Under extenuating circumstances (e.g., a sponsor cannot travel due to a medical condition), ORR may approve an unaccompanied alien child to be escorted to a sponsor. Similarly, if a sponsor pick-up would result in delay of a timely release of the child, ORR may approve an escort for an unaccompanied alien child.

If an unaccompanied alien child's final destination involves air travel and the sponsor will not be traveling with the child, the care provider must follow the procedures in the table below concerning care provider escorts and airline escorts.

Unaccompanied alien children who are under the age of 14 years old traveling via air may only be escorted by care provider staff, unless an ORR/FFS Supervisor has approved the use of an airline escort in advance.

The sponsor is responsible for the unaccompanied alien child's transportation costs and, if the care provider is escorting the child, for the care provider's transportation or airfare. If an airline escort is used, the sponsor is responsible for paying the airline's unaccompanied alien minor service fee.

Under no circumstances will ORR pay for the sponsor's airfare. Sponsors are not required to use a travel agent proposed or used by a care provider if they are able to find lower airfare using another agent or airline, provided escort conditions are met.

The following table summarizes procedures for each method of transfer.

| Method of Transfer | Pre-transfer Steps | At point of Transfer |
|---|---|---|
| Sponsor pick-up at care provider facility | <ul><li>Case manager collaborates with the sponsor on selecting a date and time for the sponsor to pick-up the child</li><li>Case manager notifies the sponsor that he/she is required to bring the same valid government issued photo identification previously submitted by the sponsor in the FRP (see Section **2.2.4**)</li></ul> | <ul><li>Care provider checks the sponsor's identification upon arrival by comparing it to the identification previously submitted by the sponsor in the FRP (see Section **2.2.4**)</li><li>If the sponsor's identification matches the identification previously submitted, care provider gives the sponsor the unaccompanied alien child's release documents and personal possessions</li><li>Care provider advises the sponsor, if traveling by airplane, to check in the child at the ticket counter with a copy of the child's DHS form I-862, Notice to Appear</li><li>Care provider may not release the child unless the sponsor presents the same valid government issued photo identification he or she submitted in the FRP.</li></ul> |
| Care provider escort to offsite transfer location | <ul><li>Case manager collaborates with the sponsor in selecting a time and location for transfer, and flights for the child and care provider escort</li><li>Case manager notifies the sponsor that he/she is required to bring the same valid government issued photo identification previously submitted by the sponsor in the FRP to the transfer location</li></ul> | <ul><li>If traveling by air, at the departure airport, care provider escort checks in the child at the ticket counter with a copy of the child's DHS form I-862, Notice to Appear</li><li>At the transfer location, care provider escort compares the sponsor's identification with the copy previously submitted by the sponsor in the FRP. If the identification documents correspond, care provider escort releases the child to the sponsor and provides the sponsor with the release documents and the child's personal effects and papers</li><li>Care provider escort may not release the child unless the sponsor presents the same valid government issued photo identification he or she submitted in</li></ul> |

| | | |
|---|---|---|
| | • Case manager arranges for the sponsor to pay for the child and care provider escort's transportation costs, including airline tickets where applicable<br>• Case manager prepares a copy of the sponsor's identification that was submitted in the FRP, for the care provider escort to take to the transfer location | the FRP. If the sponsor does not produce valid identification, if the care provider escort has concerns regarding the sponsor's identity, or if the care provider escort has concerns regarding the safety of the situation upon meeting the sponsor, the care provider escort will return with the child to the care provider facility |
| Travel via airline's unaccompanied alien minor escort policy (only for youth 14 years of age and older) | • Case manager contacts the airline to obtain information on airline escort requirements, in order to ensure that they are adequate to protect the safety of the child, and to ensure that both the sponsor and the care provider can meet the requirements<br>• Case manager arranges for the sponsor to pay for the child's airplane ticket and for the airline unaccompanied alien minor escort fee<br>• Case manager ensures that the government issued photo identification submitted by the sponsor in the FRP will be acceptable to the airline to complete custody transfer<br>• The care provider instructs the sponsor to meet the unaccompanied alien child and escort at the airport with the identification they submitted in the FRP, and to follow the requirements of the airline's unaccompanied alien minors escort policy | • At the departure airport, care provider checks in the unaccompanied alien child at the ticket counter with a copy of the DHS form I-862, Notice to Appear, and a copy of the approved identification of the sponsor picking up the child<br>• At the departure airport, care provider gives the child their personal possessions and documents and a copy of the sponsor's approved identification, and mails an additional copy of the release documents to the sponsor<br>• At the destination airport, the sponsor arrives two hours before the child's arrival time, and contacts the care provider immediately to check in.<br>• The airline follows its standard procedures for escorting a child traveling alone to the designated parent or guardian<br>• The care provider contacts the sponsor shortly after the child's scheduled arrival time to confirm the child's transfer from the airline representative to the sponsor<br>• If the sponsor fails to arrive at the airport or fails to contact the care provider upon arrival at the airport, the care provider will notify the ORR/FFS and the Project Officer, and the child will either be returned to the care provider or taken to another nearby care provider facility. |

When arranging for children to travel with airline escorts, care providers should also refer to the U.S. Department of Transportation recommendations for unaccompanied alien minors traveling by air ("When Kids Fly Alone").

*Revised 6/18/19*

## 2.8.3 Closing the Case File

The care provider completes a Discharge Notification form within 24 hours of the physical discharge of a youth, and then emails the form to DHS and other stakeholders. Once a child is released to a sponsor, ORR's custodial relationship with the child terminates.

Although the custodial relationship ends, the care provider keeps the case file open for 30 days after the release date in order to conduct the Safety and Well Being Follow Up Call (see Section **2.8.4**) and document the results of the call in the case file. The care provider closes the case file record after completing the Safety and Well Being Follow Up Call.

*Revised 3/14/16*

## Section 2.8.4 Safety and Well Being Follow Up Call

Care providers must conduct a Safety and Well Being Follow Up Call with an unaccompanied alien child and his or her sponsor 30 days after the release date. The purpose of the follow up call is to determine whether the child is still residing with the sponsor, is enrolled in or attending school, is aware of upcoming court dates, and is safe. The care provider must document the outcome of the follow up call in the child's case file, including if the care provider is unable to contact the sponsor or child after reasonable efforts have been exhausted. If the follow up call indicates that the sponsor and/or child would benefit from additional support or services, the care provider must refer the sponsor or child to the ORR National Call Center and provide the sponsor or child the Call Center contact information. If the care provider believes that the child is unsafe, the care provider must comply with mandatory reporting laws, State licensing requirements, and Federal laws and regulations for reporting to local child protective agencies and/or law enforcement.

*Revised 3/14/16*

## 2.8.5 Post-Release Services for UAC with Zika Virus Disease or Infection

**Testing**

ORR follows CDC guidance and recommendations for Zika virus laboratory testing. CDC recommends testing for all pregnant UAC without symptoms, but who are from or traveled through areas with ongoing Zika virus transmission and are within 2–12 weeks of arrival in the United States. Other UAC who develop two or more symptoms consistent with Zika may be tested for Zika virus upon consultation with a healthcare provider.

**Post-Release Referrals**

Pregnant UAC who are diagnosed with Zika virus disease, have laboratory results compatible with Zika virus infection, or have laboratory results that cannot rule out Zika virus infection will be referred for post-release services. Similarly, UAC who delivered while in ORR care will be referred for post-release services if they were diagnosed with Zika virus disease, had laboratory results compatible with Zika virus infection, or had laboratory results that cannot rule out Zika virus infection while pregnant.

In some cases, asymptomatic pregnant UAC are released pending lab results. In those cases, ORR will communicate their test results to them and their new healthcare provider. If their results are compatible with Zika virus infection or if Zika virus infection cannot be ruled out, ORR will refer them for post-release services.

**Post-Release Services**

Post-release services for eligible UAC described above include the full range of post-release services with a focus on connecting the UAC to prenatal care and maternal-child resources.

For more information about the Zika virus, please go to the CDC website at: **www.cdc.gov/zika/index.html (http://www.cdc.gov/zika/index.html)**

*Posted 5/2/16*

## 2.8.6 Release for Children with Legal Immigration Status

Some unaccompanied alien children may obtain legal immigration status while in ORR care. ORR may also discover during the process of placing and providing services to a child that he or she already has legal immigration status or is a U.S. citizen. By law, ORR is not authorized to have custody of children with legal immigration status or U.S. citizenship. Therefore, these children cannot remain in ORR's care, and ORR must promptly release them from ORR-funded care provider facilities.

As soon as ORR determines that an unaccompanied alien child may be eligible for legal status, ORR begins development of a Post Legal Status Plan. The case manager develops the plan, and ORR approves it, tailoring it to the needs and pending immigration status of the child.

As is the case for all UAC, ORR continually makes efforts to reunify children who have promising immigration cases with family members. However, if no parent, legal guardian, relative, or other suitable adult is available, ORR and the care provider, as part of the development of the Post Legal Status Plan, identify alternative placements for the child, including specialized programs, state or county entities or licensed nonprofit organizations that will take custody of the child. In limited circumstances, children with certain types of immigration status may be eligible for release into ORR's Unaccompanied Refugee Minors (URM) Program. Placement in the URM Program is limited by type of immigration status and the availability of appropriate placement options. ORR will not release children on their own recognizance under any circumstances.

*Posted 5/8/17*

## 2.9 Bond Hearings for Unaccompanied Alien Children

Consistent with the Ninth Circuit Court of Appeals decision in Flores v. Sessions, unaccompanied alien children have the opportunity to seek a bond hearing with an immigration judge.

In a bond hearing, an immigration judge decides whether the child poses a danger to the community.[12] For the majority of children in ORR custody, ORR has determined they are not a danger and therefore has placed them in shelters, group homes, and in some cases, staff secure facilities. For these children, a bond hearing is not beneficial.

The burden is on the requestor to demonstrate that the child can be released because he or she is not a danger to the community. An immigration judge's decision that the unaccompanied alien child is not a danger to the community supersedes an ORR determination on that question, unless the immigration judge's decision is overturned by the Board of Immigration Appeals (BIA). However, even if an immigration judge decides the child is eligible for bond (meaning the child does not pose a danger to the community and need not remain in an ORR facility for that reason), in all cases release from ORR custody cannot occur until ORR has identified, evaluated and approved an appropriate sponsor in accordance with **Section 2 (https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-2)** of this policy guide. An immigration judge does not rule on any of the following:

- release to a sponsor;
- the unaccompanied alien child's placement or conditions of placement while in ORR custody; or,
- releasing the child on his or her own recognizance.

ORR also takes into consideration the immigration judge's decision in the bond hearing about the youth's level of danger when assessing the youth's placement and conditions of placement.[13]

Although these hearings are known as "bond hearings," ORR does not require payment of any money in the event a court grants bond.

**Requesting a Bond Hearing**

A request for a bond hearing may be made by the child in ORR care, by a legal representative of the child, or by parents/legal guardians on their children's behalf. These parties may submit a written request for a bond hearing to the care provider using the ORR form, *Notice of Right to Request a Bond Hearing*, or through a separate written request that provides the information requested in the form. ORR provides the *Notice of Right to Request a Bond Hearing* to UAC in secure and staff secure facilities.

A request for a bond hearing must minimally include:

- The full name and alien registration number ("A number") of the child;
- If a parent or legal guardian, or an appointed legal representative, is making the request, the parent/legal guardian's or legal representative's name;
- The location of the care provider facility;
- The date of the request; and
- The signature(s) of the requesting child, the parent/legal guardian, and/or legal representative.

There is no filing fee to submit a request for a bond hearing to the care provider.

A child (or his or her legal representative) may also request a bond hearing by making an oral request in immigration court.

**Bond Hearings Proceedings**

Bond hearings are usually held at the immigration court where the request for a bond hearing is filed.

If the immigration judge finds an unaccompanied alien child eligible for bond, and ORR does not appeal, then ORR follows its sponsor assessment and release procedures as described in **Section 2 (https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-2)** of this policy guide.

**Appeals**

Either party may appeal the immigration judge's decision to the BIA. Because ORR cannot release a child until it identifies a suitable sponsor, an immigration judge's finding that the unaccompanied alien child is not a danger to the community does not necessarily result in a release of the child while an appeal is pending.

**Age Outs**

If an unaccompanied alien child becomes 18 years old during the pendency of a bond hearing or bond hearing appeal, ORR forwards the request for a bond hearing and any relevant information to the local DHS/ICE Office of Chief Counsel's office.

**Further Requests for Bond Hearing**

If an immigration judge (or BIA, when appealed) determines that an unaccompanied alien child is ineligible for bond, such decision is final unless the child can demonstrate a material change in circumstance to support a second request for a bond hearing.

*Revised 7/19/17*

---

**Footnotes**

1. As per the release order preference outlined in Flores v. Reno Stipulated Settlement Agreement, No. 85-4544-RJK (Px) (C.D. Cal., Jan 17, 1997).

2. These categories were created for program use, to help identify potential sponsors. They are not intended to replace the legal order of preference established in Flores.

3. The care provider may offer assistance to potential sponsors in securing necessary documentation, but it is ultimately the potential sponsor's responsibility to find and submit them.

4. Verification of the potential sponsor's relationship to the child is a minimum step required by the TVPRA to determine a potential sponsor's suitability and capability of providing for the child's physical and mental well-being. See 8 U.S.C. § 1232. As a result, as stated above, ORR may in its discretion require

the submission of multiple forms of evidence.

5. ORR/FFS Supervisors are the final authority for approving discretionary home studies (See Section **2.4.2**)

6. Child advocates must keep the information in the case file, and information about the child's case, confidential from non-ORR grantees, contractors, and Federal staff.

7. As part of the FBI background check process, DHS databases are searched. The FBI also forwards biographic information to ICE's Law Enforcement Support Center (LESC). Neither HHS/PSC or ORR verify any records produced by DHS for background check purposes.

8. An *Authorization for Release of Information* is not required for sponsors, adult household members, or adult care givers identified in a sponsor care plan undergoing a sex offender registry check. An *Authorization for Request of Information* also is not required for sponsors, adult household members and adult caregivers identified in a sponsor care plan undergoing a public records check. However, sponsors will receive notice that public records and sex offender registry checks will be performed, and will have an opportunity to explain the results of these checks to ORR. ORR will also provide a method for disputing the results of checks.(See Section **2.5.3 (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-section-2#2.5.3)**, Q4)

9. ORR will also reject any sponsor care plans that identify an adult care giver who has any of the disqualifying criteria.

10. See U.S. Dept. of Health and Human Services, Children's Bureau. *Grounds for involuntary termination of parental rights*, at 2. Washington, DC: Child Welfare Information Gateway, Jan. 2013.

11. The Change of Venue motion must contain information specified by the Immigration Court. A Change of Venue motion may require the assistance of an attorney. For guidance on the "motion to change venue," see the Immigration Court Practice Manual at **www.justice.gov/eoir/vll/OCIJPracManual/ocij_page1.htm (http://www.justice.gov/eoir/vll/OCIJPracManual/ocij_page1.htm)**. For immigration case information please contact EOIR's immigration case information system at 1-800-898-7180. Visit EOIR's website for additional information at: **www.justice.gov/eoir/formslist.htm (http://www.justice.gov/eoir/formslist.htm)**.

12. Immigration judges also consider risk of flight. However, ORR does not make a determination of flight risk for the purpose of deciding whether a child is released. If an immigration judge offers an opinion about a youth's risk of flight, ORR takes the judge's opinion into consideration when assessing the child's placement and conditions of placement, but the decision does not affect release.

13. Please see footnote above concerning risk of flight.

---

**<Back (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-section-1)** - **Next (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-section-3)>**

---

Last Reviewed: August 23, 2019