CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Peter A. Schey (58232)
Carlos R. Holguín (90754)
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Email: pschey@centerforhumanrights.org

*Attorneys for Plaintiffs*

*Additional counsel listed on following page*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| Jenny Lisette Flores., *et al.*, | Case No. CV 85-4544-DMG-AGRx |
| Plaintiffs, | **Notice of Filing of Supplemental Exhibits** |
| v. | |
| William Barr, Attorney General of the United States, *et al.*, | Hearing:  March 27, 2020 |
| Defendants. | Judge: Hon. Dolly M. Gee |

*Counsel for Plaintiffs, continued*

USF SCHOOL OF LAW IMMIGRATION CLINIC
Bill Ong Hing (Cal. Bar No. 61513)
2130 Fulton Street
San Francisco, CA 94117-1080
Telephone: (415) 422-4475
Email: bhing@usfca.edu

LA RAZA CENTRO LEGAL, INC.
Stephen Rosenbaum (Cal. Bar No. 98634)
474 Valencia Street, #295
San Francisco, CA 94103
Telephone: (415) 575-3500

UNIVERSITY OF CALIFORNIA DAVIS
SCHOOL OF LAW
Immigration Law Clinic
Holly S. Cooper (197626)
One Shields Avenue, TB 30
Davis, CA 95616
Telephone: (530) 754-4833
Email: hscooper@ucdavis.edu

THE LAW FOUNDATION OF SILICON VALLEY
Jennifer Kelleher Cloyd (Cal. Bar No. 197348)
Katherine H. Manning (Cal. Bar No. 229233)
Annette Kirkham (Cal. Bar No. 217958)
4 North Second Street, Suite 1300
San Jose, CA 95113
Telephone: (408) 280-2437
Email: kate.manning@lawfoundation.org

*Of counsel:*

ALDEA - THE PEOPLE'S JUSTICE CENTER
Bridget Cambria
532 Walnut Street
Reading, PA 19601
Phone: (484) 877-8002
Fax: (484) 926-2032
Email: bridget.cambria@cambriaklinelaw.com

ii

Plaintiffs' hereby give notice of the filing of exhibits O through S in support of their pending *Ex Parte* Application for Temporary Restraining Order [DOC #733.]

Exhibit O:  Supplemental Declaration of Peter Schey in Support Of *Ex Parte* Application for Temporary Restraining Order.

Exhibit P:  January 31, 2020 Analysis of Class Members Held at AORR Facilities.

Exhibit Q:  February 11, 2020 Flores Class Counsel correspondence to Defendants' request for compliance data.

Exhibit R:  Declaration of Michael Fassio describing his visit with 40 minor detainees at the Crittenton Family Services as a Flores monitor.

Exhibit S:  Declaration of Alex Mendoza describing his visit to the Southwest Key San Diego ORR Shelter in El Cajon as a Flores monitor.

Dated:   March 27, 2020

CENTER FOR HUMAN RIGHTS AND
CONSTITUTIONAL LAW
Peter A. Schey
Carlos R. Holguin

USF SCHOOL OF LAW IMMIGRATION
CLINIC
Bill Ong Hing

LA RAZA CENTRO LEGAL, INC.
Stephen Rosenbaum

UNIVERSITY OF CALIFORNIA DAVIS
SCHOOL OF LAW
Immigration Law Clinic
Holly S. Cooper

THE LAW FOUNDATION OF SILICON
VALLEY
LEGAL ADVOCATES FOR CHILDREN
AND YOUTH
Jennifer Kelleher Cloyd
Katherine H. Manning
Annette Kirkham

*Of counsel:*

ALDEA - THE PEOPLE'S JUSTICE CENTER
Bridget Cambria


_____ */s/ Peter Schey* _____
Peter A. Schey

*Attorneys for Plaintiffs*

# EXHIBIT O

**SUPPLEMENTAL DECLARATION OF PETER SCHEY IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

I, Peter Schey, hereby declare:

1.  I am an attorney admitted to the bar of the United States District Court for the Central District of California. I am one of the attorneys who serve as class counsel for Plaintiffs in the above-captioned action. My business address is 256 S. Occidental Blvd., Los Angeles, CA 90057. I execute this supplemental declaration in support of Plaintiffs' ex parte application for a temporary restraining order and order to show cause re: preliminary injunction protecting *Flores* class members from irreparable injury during the COVID-19 national public health emergency. I declare that the following statements are true to the best of my knowledge, information, and belief, formed after reasonable inquiry of the circumstances. I have personal knowledge of the facts set forth below and, if called as a witness, I could and would testify competently as follows.

2.  On a monthly basis, Defendants provide Class Counsel with data concerning all class members detained during the previous month. Pursuant to a confidentiality agreement, Class Counsel provide this data to Dr. Nancy Wang employed by the Stanford University Emergency Department and whose declaration is filed as Exhibit P to Plaintiffs' Ex Parte application for a Temporary Restraining Order [Doc. #733]. Dr. Wang supervises the preparation of reports for Class Counsel based on the monthly data provided by Defendants. The Exhibit filed here as Exhibit P was prepared by Dr. Wang and those working with her.

3.  Class Counsel has encountered significant challenges receiving even the minimal monthly data required by the Settlements and prior Court Order.  A true and correct copy of correspondence sent to Defendants' counsel on February 11, 2020,

addressing numerous shortcomings in Defendants' monthly data is filed here as Exhibit Q.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 27th day of March, 2020, at Ojai, California.

Peter A. Schey

# EXHIBIT P

# Report for Flores Class Counsel

Analysis of Class Members Held at **All ORR Facilities**                    January 31, 2020

## Overview

This report summarizes Department of Justice Office of Refugee Resettlement (DOJ ORR) data provided to Flores Class Counsel for Class Members held in the custody of ORR at any point during January 2018 to December 2019. The focus is on detention characteristics of the 121,748 Class Members whose DOJ records clearly indicate their age, date of placement into ORR custody, detention duration, and, when applicable, release from ORR custody.

**Table 1.** Overview of the volume of Class Members held in ORR Custody, by year of placement and release.

|  | Grand Total | Released in 2018 | Released in 2019 | Still in ORR Custody on 12/31/2019 |
|---|---|---|---|---|
| Grand Total | 121,748 (100.0%) | 45,956 (37.7%) | 71,359 (58.6%) | 4,433 (3.6%) |
| In ORR Custody on 1/1/2018 | 7,560 (6.2%) | 7,183 (5.9%) | 292 (0.2%) | 85 (0.1%) |
| Placed in ORR Custody in 2018 | 51,115 (42.0%) | 38,773 (31.8%) | 12,044 (9.9%) | 298 (0.2%) |
| Placed in ORR Custody in 2019, to date | 63,073 (51.8%) |  | 59,023 (48.5%) | 4,050 (3.3%) |

## Demographics

**Figure 1.** Basic demographics of Class Members held in ORR Custody.



**Sex**

Female 38.6K (31.7%)
Male 83.2K (68.3%)

**Age**

6 to 10 yrs 9.0K (7.4%)
0 to 5 yrs 3.7K (3.1%)
11 to 13 yrs 11.7K (9.6%)
14 to 17 yrs 97.4K (80.0%)

**Country of Origin**

Other 6.1K (5.0%)
Mexico 3.3K (2.7%)
El Salvador 18.5K (15.2%)
Guatemala 59.1K (48.5%)
Honduras 34.8K (28.6%)

## All Facilities: Monthly Volume Trends of Class Members in Detention

Figure 2. Class Members in ORR Custody by month. Top number above bar indicates total class members in custody that month; grey number above bar indicates average days in custody that months. Shading indicates length of custody to date; 121,747 Class Members in view.



# All Facilities: Length of Detention

**Table 2**. Overall detention characteristics grouped by age at time of placement into ORR Custody.

| | Grand Total | 0 to 5 yrs | 6 to 10 yrs | 11 to 13 yrs | 14 to 17 yrs |
|---|---|---|---|---|---|
| Number of Class Members | 121,748 (100.0%) | 3,724 (3.1%) | 8,969 (7.4%) | 11,671 (9.6%) | 97,384 (80.0%) |
| Released from ORR | 117,186 (96.3%) | 3,493 (93.8%) | 8,654 (96.5%) | 11,215 (96.1%) | 93,824 (96.3%) |
| Still in ORR Custody | 4,562 (3.7%) | 231 (6.2%) | 315 (3.5%) | 456 (3.9%) | 3,560 (3.7%) |
| Length of Detention >20 days | 99,254 (81.5%) | 3,097 (83.2%) | 6,738 (75.1%) | 8,778 (75.2%) | 80,641 (82.8%) |
| Length of Detention <=20 days | 22,494 (18.5%) | 627 (16.8%) | 2,231 (24.9%) | 2,893 (24.8%) | 16,743 (17.2%) |
| Detention in days, median (IQR) | 42 (24-74) | 46 (25-84) | 36 (21-67) | 36 (21-66) | 43 (25-75) |
| Detention in days, average (std) | 63.6 (79.1) | 70.0 (96.5) | 55.9 (71.5) | 58.4 (92.4) | 64.7 (77.2) |
| 1-20 days | 22,494 (18.5%) | 627 (16.8%) | 2,231 (24.9%) | 2,893 (24.8%) | 16,743 (17.2%) |
| 21-30 days | 19,896 (16.3%) | 584 (15.7%) | 1,569 (17.5%) | 2,151 (18.4%) | 15,592 (16.0%) |
| 31-60 days | 38,864 (31.9%) | 1,109 (29.8%) | 2,523 (28.1%) | 3,383 (29.0%) | 31,849 (32.7%) |
| 61-90 days | 18,362 (15.1%) | 572 (15.4%) | 1,255 (14.0%) | 1,525 (13.1%) | 15,010 (15.4%) |
| 91-120 days | 8,679 (7.1%) | 285 (7.7%) | 537 (6.0%) | 674 (5.8%) | 7,183 (7.4%) |
| 121-150 days | 4,733 (3.9%) | 203 (5.5%) | 335 (3.7%) | 358 (3.1%) | 3,837 (3.9%) |
| 151-180 days | 2,740 (2.3%) | 119 (3.2%) | 201 (2.2%) | 214 (1.8%) | 2,206 (2.3%) |
| 181-365 days | 4,665 (3.8%) | 188 (5.0%) | 278 (3.1%) | 367 (3.1%) | 3,832 (3.9%) |
| 12-<18 months | 733 (0.6%) | 20 (0.5%) | 19 (0.2%) | 35 (0.3%) | 659 (0.7%) |
| 18-<24 months | 317 (0.3%) | 9 (0.2%) | 6 (0.1%) | 17 (0.1%) | 285 (0.3%) |
| 24+ months | 265 (0.2%) | 8 (0.2%) | 15 (0.2%) | 54 (0.5%) | 188 (0.2%) |

**Figure 3.** Distribution of length of detention grouped by age; a different visualization of Table 2 information.



# All Facilities: Transfer & Release Characteristics

**Table 3.** Top 10 facilities where Class Members are <u>first</u> held in ORR Custody

| | |
|---|---|
| Grand Total | 121,748 (100.0%) |
| Homestead | 14,173 (11.6%) |
| Southwest Key Casa Padre | 11,283 (9.3%) |
| Cayuga Centers | 7,716 (6.3%) |
| BCFS Harlingen | 6,299 (5.2%) |
| Southwest Key Antigua | 3,456 (2.8%) |
| Southwest Key Nueva Esperanza | 3,042 (2.5%) |
| Southwest Key El Presidente | 3,026 (2.5%) |
| Southwest Key Rio Grande | 2,681 (2.2%) |
| Southwest Key Estrella | 2,635 (2.2%) |
| CHSI Casa Norma Linda | 2,452 (2.0%) |

**Table 4.** Top 10 facilities where Class Members are <u>last</u> held in ORR Custody

| | |
|---|---|
| Grand Total | 121,748 (100.0%) |
| Homestead | 12,134 (10.0%) |
| Southwest Key Casa Padre | 10,993 (9.0%) |
| Cayuga Centers | 7,673 (6.3%) |
| BCFS Tornillo | 5,529 (4.5%) |
| BCFS Harlingen | 5,289 (4.3%) |
| Southwest Key Antigua | 3,201 (2.6%) |
| Southwest Key El Presidente | 2,816 (2.3%) |
| Southwest Key Nueva Esperanza | 2,700 (2.2%) |
| Southwest Key Estrella | 2,597 (2.1%) |
| Southwest Key Rio Grande | 2,596 (2.1%) |

**Figure 4.** Release classification of Class Members



**Figure 5.** Top 10 states of sponsors of Reunified Class Members



**Table 5.** Lengths of detention in ORR Custody by release classification

| Length of Detention | Grand Total | Reunified | Still in Custody | Other | Age Out | Voluntary Departu.. |
|---|---|---|---|---|---|---|
| | 121,748 (100.0%) | 105,560 (86.7%) | 4,562 (3.7%) | 6,450 (5.3%) | 3,426 (2.8%) | 1,750 (1.4%) |
| 1-20 days | 22,494 (18.5%) | 18,767 (17.8%) | 2,218 (48.6%) | 604 (9.4%) | 901 (26.3%) | 4 (0.2%) |
| 12-<18 months | 733 (0.6%) | 338 (0.3%) | 136 (3.0%) | 91 (1.4%) | 125 (3.6%) | 43 (2.5%) |
| 18-<24 months | 317 (0.3%) | 113 (0.1%) | 91 (2.0%) | 59 (0.9%) | 49 (1.4%) | 5 (0.3%) |
| 21-30 days | 19,896 (16.3%) | 18,786 (17.8%) | 427 (9.4%) | 360 (5.6%) | 309 (9.0%) | 14 (0.8%) |
| 24+ months | 265 (0.2%) | 80 (0.1%) | 85 (1.9%) | 72 (1.1%) | 28 (0.8%) | |
| 31-60 days | 38,864 (31.9%) | 35,010 (33.2%) | 530 (11.6%) | 2,633 (40.8%) | 639 (18.7%) | 52 (3.0%) |
| 61-90 days | 18,362 (15.1%) | 16,167 (15.3%) | 215 (4.7%) | 1,422 (22.0%) | 413 (12.1%) | 145 (8.3%) |
| 91-120 days | 8,679 (7.1%) | 7,598 (7.2%) | 102 (2.2%) | 459 (7.1%) | 253 (7.4%) | 267 (15.3%) |
| 121-150 days | 4,733 (3.9%) | 3,841 (3.6%) | 100 (2.2%) | 244 (3.8%) | 203 (5.9%) | 345 (19.7%) |
| 151-180 days | 2,740 (2.3%) | 2,022 (1.9%) | 122 (2.7%) | 162 (2.5%) | 126 (3.7%) | 308 (17.6%) |
| 181-365 days | 4,665 (3.8%) | 2,838 (2.7%) | 536 (11.7%) | 344 (5.3%) | 380 (11.1%) | 567 (32.4%) |

## All Facilities: Turning 18 While in ORR Custody

**Table 6.** Length of detention for 17-year-old Class Members released from ORR Custody

| Length of Detention | Grand Total | Age Out | Other Status |
|---|---|---|---|
| | 47,263 (100.0%) | 3,128 (6.6%) | 44,135 (93.4%) |
| 1-20 days | 7,201 (15.2%) | 873 (27.9%) | 6,328 (14.3%) |
| 21-30 days | 7,224 (15.3%) | 293 (9.4%) | 6,931 (15.7%) |
| 31-60 days | 15,435 (32.7%) | 622 (19.9%) | 14,813 (33.6%) |
| 61-90 days | 7,604 (16.1%) | 402 (12.9%) | 7,202 (16.3%) |
| 91-120 days | 3,884 (8.2%) | 247 (7.9%) | 3,637 (8.2%) |
| 121-150 days | 2,078 (4.4%) | 199 (6.4%) | 1,879 (4.3%) |
| 151-180 days | 1,192 (2.5%) | 119 (3.8%) | 1,073 (2.4%) |
| 181-365 days | 2,123 (4.5%) | 370 (11.8%) | 1,753 (4.0%) |
| 12-<18 months | 290 (0.6%) | 2 (0.1%) | 288 (0.7%) |
| 18-<24 months | 131 (0.3%) | | 131 (0.3%) |
| 24+ months | 101 (0.2%) | 1 (0.0%) | 100 (0.2%) |
| >6 mos | 2,645 (5.6%) | 373 (11.9%) | 2,272 (5.1%) |

**Figure 6.** Monthly trends of release of 17-years-old Class Members held in custody by ORR, grouped by type of release. Vertical axis indicates percent of Class Members calculated within release type. Shading indicates length of detention.





## All Facilities: Monthly Demographic Trends

**Country of Origin**
Guatemala | Honduras | El Salvador | Other | Mexico

### Country of Birth by Month
Line color indicates age at admit. Number of Unaccompanied Children in view =121,747





**Sex**
Female | Male

### Sex by Month
Line color indicates age at admit. Number of Unaccompanied Children in view =121,747



# **All Facilities:** Monthly Age Trends of Class Members in Detention

Age At Admittance into ORR Dettention
- 0 to 5 years
- 6 to 10 years
- 11 to 13 years
- 14 to 17 years

**Age at Admit by Month: ALL Ages**

Line color indicates age at admit. Number of Unaccompanied Children in view =121,747

**DETAIL: Ages <=13**

Unaccompanied Children in ORR Detention by month and age at admit. Line color indicates age at admit.
Number of Unaccompanied Children in view =24,364





# All Facilities: Influx & Efflux Trends of Class Members in Detention

ORR Status this month

■ Admitted into ORR   ■ Admitted & Discharged same m..   ■ In ORR Detention entire month   ■ Released from ORR

## ORR Detention Status by Month
Line color indicates detention status; <u>children that are both admitted and released in the same month are counted in all 3 trend lines</u>. Number of Unaccompanied Children in view =121,747



## ORR Detention Unique Status by Month
Line color indicates detention status; children appear in only one trend line. Number of Unaccompanied Children in view =121,747





# All Facilities: Discharge Type Trends of Class Members in Detention

Discharge Type of Released Children

■ Reunified   ■ Age Out   ■ Voluntary Departure   ■ Other

## ORR Discharge Type by Month: Released Children Only
Line color indicates discharge type; ~90% of released children are reunified. Number of Unaccompanied Children in view =117,181



## DETAIL: Children Released but Not Reunified
Line color indicates discharge type. Number of Unaccompanied Children in view =11,625



Note: Discharge Type not provided in July 2018 report

# All Facilities: Program Type Trends of Class Members in Detention



ORR Program Type

🟩 Foster Care   🟦 Shelter   🟧 Influx   🟥 Therapeutic   ⬛ Secure

## ORR Program Type by Month
Line color indicates program type. Number of Unaccompanied Children in view =121,665



## DETAIL: ORR Program Type other than Shelter
Line color indicates program type. Number of Unaccompanied Children in view =34,223



## All Facilities: Average LOS Trends of Class Members in Detention

**Average Length of ORR Detention by Month**
Number of Unaccompanied Children in view =121,665



ORR Progr..  🟩 Foster Care   🟧 Influx   ⬛ Secure   🟦 Shelter   🟥 Therapeutic

**Average Length of ORR Detention by Program Type**
Line color indicates program type. Number of Unaccompanied Children in view =121,665



NOTE: The Average Length of ORR Detention is calculated for this report using ALL UACs, not just those that were released. This differs than the Average Length of ORR Detention in the IG report and the NCYL Congressional Briefing Book (12/2019), which only examined AVG LOS of released UACs.

## All Facilities: Data Processing

1. Data shown are from DOJ files provided for months January 2018 through December 2019.

2. There are approximately 1400 more Class Members (~1% of all records) excluded from this analysis because their DOJ records were ambiguous due to duplicated, inconsistent, or missing data.

3. There are 461 individuals recorded in the DOJ files who were older than 18 at time of admittance into ORR Custody. They are not included in this analysis of Flores Class Members.

4. Length of detention is calculated as the elapsed days from date of placement into the custody of ORR to date of release. If there is no release information, the Class Member is assumed still in the custody of ORR at the end of <Parameters.End Report Date Month>, and the length of detention is calculated as the elapsed days from date of placement until <Parameters.End Report Date>, the date of the census for the latest file provided by the DOJ. The date of placement and last day in detention are included as days in detention.

5. Monthly trends of detained Class Members are the sums of all distinct Class Members held in the custody of ORR each month. These will differ from average daily census numbers provided by DOJ. Instead our numbers indicate how many Class Members the ORR system detains and is responsible for each month.

# EXHIBIT Q



**CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW**
256 SOUTH OCCIDENTAL BOULEVARD
LOS ANGELES, CA 90057
Telephone:  (213) 388-8693
Facsimile:  (213) 386-9484
www.centerforhumanrights.org

February 11, 2020

*Via email*
William C. Silvis
Assistant Director
United States Department of Justice
Office of Immigration Litigation – District Court Section
Post Office Box 868
Ben Franklin Station
Washington, D.C.  20044-0868

> Re:     *Flores v. Barr,* Case No. CV 85-4544-DMG-AGRx
>          *Plaintiffs' request for compliance data*

Dear William,

As we have previously discussed, ¶ 28 of the *Flores* settlement requires DHS to "maintain an up-to-date record of all minors who are placed in proceedings and remain in [its] custody for longer than 72 hours. Statistical information on such minors shall be collected weekly from all . . . Border Patrol stations" and forwarded periodically to Plaintiffs' counsel. Pursuant to Paragraph 28A and the Court's Orders, Defendants' data provided to Class Counsel on a monthly basis must include: (1) biographical information such as each minor's name, date of birth, and country of birth, (2) date placed in [Defendants'] custody [which usually commences with CBP custody and sometimes with ICE custody], (3) each date placed, removed or released [by ORR, CBP, or ICE], (4) to whom and where placed, transferred, removed or released [by CBP, ORR, or ICE], (5) immigration status, and (6) hearing dates [if any]. See Paragraph 28A.

The Juvenile Coordinator is also required for each detained class member to "collect information regarding the reasons for every placement of a minor in a detention facility …" Paragraph 29 states that Defendants "shall" provide to Class Counsel "the information collected pursuant to Paragraph 28 … and each … policy or instruction issued to [Defendants'] employees regarding the implementation of this Agreement."

All DHS and HHS components detaining class members are bound by the settlement. Inasmuch as CBP knows that the vast majority of class members it detains will be detained for more than 72 hours whether in CBP, ICE, or ORR custody (and about 100% of UAMs), it cannot isolate itself from the settlements terms by claiming class members were in *its* custody for less than 72 hours and thereby circumvent the reporting required for

William C. Silvis                                                                          Page 2
*Flores v. Barr*
February 11, 2020

all minors detained for more than 72 hours, regardless whether custody switched between
the defendant agencies during that time.

Defendants have not complied with the Settlement's reporting provisions. Please
respond to the issues raised below.

1. Please forward to class counsel all current policies and instructions issued to
Defendants' employees regarding implementation of the Agreement.

2. Please provide CBP data for all months from January 2019 to the present.

3. The CBP data we currently receive each month does not account for all *Flores*
class members. Data has only been provided for class members who are ultimately
transferred from CBP to ORR and who experienced an "action" during the month (the class
member was referred, discharged or transferred).

(a) Please include data for all class members in ORR for the entire month (currently
reflected in the ORR census tab).
(b) Except for minors released by CBP, ICE, or ORR within 72 hours *of
apprehension*, please include data for *all* class members in CBP, whether or not in CBP's
custody for longer than 72 hours, and regardless of whether or not they are subsequently
transferred to ORR or iCE custody or removed to a third country.

4. The CBP data we receive has only 3 columns: Alien File Number,
Apprehension/Inadmissible Date, and Component.

(a) Please provide a 'read me' or data dictionary to clearly define the data and the
columns ("Alien File Number," "Apprehension/Inadmissible Date," and "Component").
Please list total Unique Alien File Numbers contained in the report, definition of repeated
instances of Alien File Numbers, and multiple Apprehension/Inadmissible Dates for unique
Alien File Numbers.
(b) Please provide the data required by Paragraphs 28-29 quoted from above:
minor's name, date of birth, and country of birth to provide secondary data quality
verification of Alien File Numbers. Pursuant to ¶ 28, the data must include date placed in
CBP custody, date(s) moved or released, to whom and where placed, transferred, removed
or released, reasons for every placement of the minor, immigration status, and any hearing
dates.
(c) Please explain why some class members have Apprehension/Inadmissible Dates
that have no relationship to ICE or ORR entry into custody.
(d) Please explain how MPP class members in CBP custody are being recorded.
(e) Are class members released to any placement or location other than ORR or ICE
custody? Please provide time and date of entry into and released from CBP custody
for instances where a class member is not transferred to ICE or ORR custody.

5. The ICE data files contain Apprehension/Inadmissible Dates, however further
information is needed for clarification.

William C. Silvis                                                                    Page 3
*Flores v. Barr*
February 11, 2020


(a) The data dictionary states that 'Initial Book-in date was substituted for apprehension dates with data quality issues.' Please clearly indicate which unique Alien File Numbers have 'apprehension dates with data quality issues.'

6. The ORR data files do not contain CBP dates. We match the CBP data files to the ORR data files. However, we have encountered data quality issues and therefore cannot identify ALL class members in CBP, ORR or ICE custody (ex: December 2019 report, Referrals Tab, first listed A-number). For accuracy in reporting we request a process for communication of data quality issues and for data reconciliation.

We also request a monthly report with data on all CBP, ORR and ICE facilities holding class members to include the following: days in operation, total bed capacity, average daily census, maximum daily census, minimum daily census, and number of staff on duty at any one time. If beds are restricted by age, gender, country of birth, language spoken, or special needs, please provide the above measures for each subgroup.

We request that you respond to this correspondence within ten days and provide the Special Master a copy of your response, and that the Special Master schedule a conference call to review the parties' positions and perform such tasks as she deems appropriate under the terms of her appointment. As class counsel, we believe Defendants' compliance with the reporting obligations under the Settlement is critically important and following a meet and confer as required by the local rules and the Settlement, hopefully joined by the Special Master, plaintiffs may petition the Court to involve itself in this aspect of compliance unless agreements are reached regarding Defendants' reporting.

Please feel free to contact us by telephone or email if you have any questions or need clarification. We hope these issues can be resolved without litigation and to the satisfaction of all parties.

Sincerely.

Peter A. Schey
Carlos R. Holguin
Center for Human Rights and
Constitutional Law


Peter Schey


ccs:    Andrea Sheridan Ordin, Flores Special Master
        Sarah Fabian, Esq. Defendants' Counsel
        Nicole N. Murley, Esq. Defendants' Counsel

# EXHIBIT R

Declaration of Michael Fassio

I, Michael Fassio, declare as follows:

1.  I am an attorney licensed to practice law in the State of Washington. I have volunteered with
the Center for Human Rights and Constitutional Law since 2018, during which time I have
interviewed and prepared declarations for minors in detention and visited multiple Customs and
Border Patrol and ORR facilities.  This declaration is based on my personal knowledge of the
following information.

2.  On March 9, 2020, I visited the Crittenton Family Services ORR facility in Fullerton,
California, as a Flores monitor on behalf of the Center for Human Rights and Constitutional
Law.  I was one of a group of monitors and interpreters.  During this visit, we interviewed
detained minors and were also given a tour of the facility.  We spent approximately 8 hours
there.

3.  There were approximately 40 minor detainees in residence at the facility.

4.  No COVID-19 protocols were given to us to follow during our interviews with individual
children or on our tour.  I was not asked to engage in social distancing.

5.  No face masks or gloves were provided to us to use.

6.  No face masks or gloves were in use by staff or minor detainees.

7.  I did not observe social distancing between staff and minor detainees.

8.  I did not observe social distancing between fellow minor detainees.

9.  I saw no evidence of information available to detained minors to educate them about COVID-
19 and specific safety measures they should take to reduce the spread of the virus (such as hand-
washing and social distancing).

10. I observed that sinks were accessible to detained minors and staff and were well-stocked with
soap and paper towels.  We were not informed of the availability of hand sanitizer, so I do not
know of its presence.

11. A maximum of three children sleep in the same room.  Single rooms are reserved for children
that are on a one-on-one watch, and those that are pregnant.

12. The only medical personnel at the Crittenton facility at the time of our visit was one nurse.
We were told that the nurse is on duty full time and that a pediatrician visits the facility twice a
week.

13. Communal spaces and surfaces appeared to be clean. I did not observe any communal rooms, furniture, and restrooms being cleaned or sanitized during our visit. No information was provided by staff concerning enhanced sanitation to minimize the transmission of COVID-19.

14. All detained minors, approximately 40 at the time of our visit, eat meals together.

15. Detained minors travel together in a van to and from classes at a school approximately 1 mile away. These trips put the children in close contact with each other and staff. We were not made aware of any measures during these trips to reduce the likelihood of COVID-19 transmission.

16. During our visit, we observed the children playing soccer in a small field adjacent to the buildings. This put them in close proximity to one another in numbers greater than ten.

I declare under penalty of perjury that the above is correct and true. Executed on the 26th of March 2020, in Kent, Washington.

Michael Fassio

# EXHIBIT S

Declaration of Alex Mendoza

1. I am an attorney licensed to practice in the State of California.  This declaration is based on personal knowledge of the following information.

2. On March 10, 2020, I visited the Southwest Key San Diego ORR Shelter in El Cajon, California as a Flores monitor on behalf of the Center for Human Rights and Constitutional Law.  I was one of a group of monitors and interpreters.  The visit lasted from 9 a.m. to 5 p.m.

3. I did not observe social distancing among children and staff.

4. I did not observe social distancing among the children.

5. I was not asked to practice social distancing.

6. No face masks or gloves were provided to staff or children.

7. There was no hand sanitizer nor were there accessible hand-washing stations for children or staff.

8. There was no soap out on children's bathroom sinks.

9. Up to three children slept in each room.

10. Children's beds were about three feet apart.

11. We observed one nurse on duty.

12. I observed a staff bathroom being cleaned once during our visit.

13. We observed bedrooms being cleaned once during our visit.

14. We observed a communal office being cleaned once during our visit.

15. We did not observe communal outdoor tables being cleaned or sanitized during our visit.

16. Children ate meals and had class together—with approximately 30 people in the same room.

17. There were 2 other groups of more than 10 people visiting the facility during our visit, and neither group practiced social distancing or used face masks and gloves.

18. Children were not provided with verbal or written education on practices to protect their health and reduce the spread of COVID-19—including washing their hands, not touching their faces, and practicing social distancing.  There was one exception, explained below:

19. Two members of our group interviewed Victor Manuel Valdovnios Adame (from Mexico, born October 19, 2002, A# 203-606-569), a detained minor who wore a face mask because he had a cough.

20. Although Victor wore a mask, it was just an ordinary surgical mask rather than an N95. It was unclear how often he was able to change it. He coughed several times during his interview and repeatedly pulled the mask away from his nose for a few seconds at a time. The mask seemed to be bothering him.

21. Victor reported that he was held in a room by himself for 24 hours at a Customs and Border Protection facility when he was first apprehended. There, he was given a medical exam but no medication. He arrived at SWK El Cajon on March 6th, but because of his cough, he was kept from meeting many other children. On March 9th, he was finally given a vaccine and allowed to socialize. As of March 10th, he had two roommates.

I declare under penalty of perjury that the above is correct and true. Executed on March 26, 2020 in San Diego, California.


Name: <u>Alex Mendoza</u>

Signature:

# CERTIFICATE OF SERVICE

I, Peter Schey, declare and say as follows:

I am over the age of eighteen years of age and am not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 256 S. Occidental Blvd., Los Angeles, CA 90057, in said county and state.

On March 27, 2020, I electronically filed the following document(s):

Notice of Filing Supplemental Exhibits [O-S].

with the United States District Court, Central District of California by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/Peter Schey
*Attorney for Plaintiffs*

NOTICE OF FILING SUPPLEMENTAL EXHIBITS
CV 85-4544-DMG-AGRx