UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 85-4544-DMG (AGRx)** | Date | March 28, 2020 |
| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 1 of 15 |

Present: The Honorable    DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE PLAINTIFFS'** *EX PARTE* **APPLICATION FOR RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION [733]**

On March 26, 2020, in light of the COVID-19 public health crisis, Plaintiffs filed an *Ex Parte* Application for a Temporary Restraining Order (TRO) and an Order to Show Cause (OSC) why a preliminary injunction should not issue, arguing that Defendants the Office of Refugee Resettlement ("ORR") and Immigration and Customs Enforcement ("ICE") must promptly release or provide justification for retaining custody over eligible Class Members, and that ORR and ICE should implement the practices recommended by the United States Centers for Disease Control and Prevention ("CDC") to avoid the spread of infection.[1]  [Doc. # 733.]  On March 27, 2020, Defendants filed their response, and the Court held a hearing.  [Doc. # 73.]

Having duly considered the parties' written submissions and oral arguments, the Court **GRANTS in part** and **DENIES in part** the *Ex Parte* Application for the reasons set forth below.

**I.
BACKGROUND[2]**

The Coronavirus Disease 2019 ("COVID-19") has reached pandemic status and, without effective intervention, the CDC projects it will infect up to 200 million people and cause as many as 1.5 million deaths in the United States alone.  TRO App., Ex. A (Peeler Decl.) ¶¶ 5–6 [Doc. # 733-3].  Governments and public agencies have taken extraordinary measures to attempt to curtail exponential rates of infection of this highly contagious disease, including school closures and "shelter in place" orders covering over 160 million Americans.  *See* TRO App. at 10; TRO

---

[1] Currently, Plaintiffs do not seek a TRO against Defendant Customs and Border Patrol ("CBP"), as those parties are close to an agreement on the relevant issues in CBP facilities.  Schey Decl. ¶ 7.

[2] The Court incorporates by reference the factual background of the *Flores* Agreement set out in *Flores v. Lynch*, 828 F.3d 898, 901–04 (9th Cir. 2016), and this Court's own prior orders.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | March 28, 2020 |
|---|---|---|---|
| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 2 of 15 |

App., Ex. B (Haney Decl.) ¶ 5 [Doc. # 733-4].³  With no vaccine or cure at present, and hospitals in some parts of the country already becoming overwhelmed with COVID-19 cases, medical experts urge the practice of social distancing—maintaining more than six feet between all individuals, even asymptomatic individuals—and frequent hand washing and use of hand sanitizer. Peeler Decl. ¶¶ 12–14; TRO App., Ex. C (Graves Decl.) ¶ 8 [Doc. # 733-5]; TRO App., Ex. E (Wang Decl.) ¶ 12 [Doc. # 733-7].  Officials recommend limiting gatherings of more than ten people.  Wang Decl. ¶ 18.

The CDC has issued "Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities" advising such facilities on preparation, prevention, and management measures to help reduce the risk of transmission and severity of disease from COVID-19.  Defs.' Response, Ex. L ("CDC Guidance") [Doc. # 736-12].⁴

On March 19, 2020, ORR distributed the "COVID-19 Interim Guidance for ORR Programs" ("ORR Guidance") to its contracted care facilities.  TRO App., Ex. L ("ORR Guidance") [Doc. # 773-14].  The ORR Guidance requires (1) planning and coordination with local hospitals and health departments, (2) enhanced staff and visitor screening for symptoms or COVID-19 risk, (3) identifying children with risk of COVID-19 exposure risk, (4) isolating children with symptoms or high risk if possible, and (5) releasing children from custody only once they have been medically cleared by a physician or ORR has been consulted.  *Id.*  ORR has since updated its practices regarding COVID-19, as described in more detail below.  *See generally* Defs' Response, Ex. A (Sualog Decl.) [Doc. # 736-1].  A CDC COVID-19 specialist has advised that "ORR's current COVID-19 procedures are consistent with CDC guidances for congregate settings; they direct grantee care-provider facilities to implement both containment and mitigation measures.  In some respects, ORR's current COVID-19 procedures actually exceed those set forth in the CDC guidances to congregate care facilities."  Defs.' Response, Ex. K (Cohn Decl.) ¶ 20 [Doc. # 736-11].⁵

---

³ All page references herein are to page numbers inserted by the CM/ECF system.

⁴ The CDC Guidance specifically refers to ICE as a covered agency but does not specifically cover the higher-security ORR facilities or juvenile facilities.  The Guidance does suggest, however, that administrators of juvenile facilities adapt the CDC Guidance to suit their needs.  *Id.* at 4.

⁵ This statement compares ORR's procedures to CDC's guidances for long-term care facilities such as nursing homes, not to the CDC guidance for detention facilities.  *See* CDC, *Preparing for COVID-19: Long-term Care Facilities, Nursing Homes*, https://www.cdc.gov/coronavirus/2019-ncov/healthcare-facilities/prevent-spread-in-long-term-care-facilities.html (last accessed March 28, 2020).  The CDC guidance for long-term care facilities is less detailed than that for detention facilities but makes similar general recommendations.  "Congregate" care refers to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | March 28, 2020 |
|---|---|---|---|
| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 3 of 15 |

    ICE's Guidance on COVID-19 was last updated and reviewed on March 26, 2020, U.S. Immigration and Customs Enforcement, ICE Guidance on COVID-19, https://www.ice.gov/covid19 (last visited March 27, 2020) ("ICE Guidance").[6] The ICE Guidance claims in general terms that it incorporates the CDC's recommendations. ICE has suspended social visitation to its three Family Residential Centers ("FRCs") where Class Members and their family members are held, and offered virtual legal visitation. Peeler Decl. ¶ 16; TRO App., Ex. J (Meza Decl.) ¶ 14 [Doc. # 733-12]; Defs.' Ex. M, (Johnson Decl.) ¶¶ 21, 24 [Doc. # 736-13]. An attorney observed that as of March 23, 2020, Karnes County Residential Center ("Karnes") appeared to be implementing some social distancing measures. Meza Decl. ¶ 38. ICE is screening visitors, testing detainees with symptoms for COVID-19, and transporting detainees who require higher levels of monitoring and care to appropriate hospitals. Johnson Decl. ¶¶ 10, 22–23. ICE is also following Pennsylvania and Texas state guidance in managing FRCs located in those states, including shutting down schools and volunteer programs that would expose residents to in-person contact. *Id.* ¶¶ 19, 24, 30.

    As of March 26, 2020, eight program personnel or foster parents at five ORR care-provider programs located in New York, Washington, and Texas have self-reported testing positive for COVID-19. Sualog Decl. ¶ 38. There were four confirmed cases among minors in ORR care provider facilities, all in one facility in New York, and 18 minors have been tested. *Id.* ¶¶ 35–37. At least one child in ICE care is under quarantine, has received a COVID-19 test, and is awaiting results. TRO App., Ex. H (Cambria Decl.) ¶ 36 [Doc. # 733-10]. According to ICE, as of March 26, 2020, there are two confirmed cases of COVID-19 among ICE detainees, three confirmed cases among ICE personnel working in detention facilities, and 19 confirmed cases among ICE employees not assigned to detention facilities. *See* ICE Guidance.

    Plaintiffs now argue that ORR's and ICE's response to the coronavirus pandemic violates their contractual obligations under the *Flores* Settlement Agreement ("FSA" or "Agreement") and seek a TRO requiring ORR and ICE to promptly release eligible Class Members, record the agencies' reasons for not promptly releasing Class Members, and implement the CDC's recommendations for managing COVID-19 in detention facilities.

---

settings where numerous people sleep, eat, bathe, and participate in daily activities in close quarters, and by definition, is incompatible with social distancing. Wang Decl. ¶ 17; Graves Decl. ¶ 10.

    [6] The Court *sua sponte* takes judicial notice of the ICE Guidance as facts not subject to reasonable dispute and "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Campbell v. PricewaterhouseCoopers, LLP*, 642 F.3d 820, 824, n. 3 (9th Cir. 2011) (citing Fed. R. Evid. 201(b)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | March 28, 2020 |
|---|---|---|---|
| Title | ***Jenny L. Flores, et al. v. William P. Barr, et al.*** | Page | 4 of 15 |

## II.
## LEGAL STANDARD

TROs are governed by the same standard applicable to preliminary injunctions. *Niu v. United States*, 821 F. Supp.2d 1164, 1167 (C.D. Cal. 2011) (internal quotation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff seeking preliminary injunctive relief must show that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 982 (9th Cir. 2010) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). An injunction is also appropriate when a plaintiff raises "serious questions going to the merits," demonstrates that "the balance of hardships tips sharply in [their] favor," and "shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (quoting *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008)). In the Ninth Circuit, the four "elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.* at 1131.

## III.
## DISCUSSION

**A.     Likelihood of success on the merits**

Plaintiffs argue that they have shown likelihood of success on the merits of their claims that ORR and ICE have failed to comply with their obligations under the FSA to "release a minor from its custody without unnecessary delay" and "make and record the prompt and continuous efforts on its part toward family reunification and the release of the minor," as well as their obligation to keep Class Members "in facilities that are safe and sanitary and that are consistent with [their] concern for the particular vulnerability of minors." *Flores* Agreement ¶¶ 12, 14, 18 [Doc. # 101]. To protect Class Members' rights under the Agreement, Plaintiffs seek (1) the prompt release of minors who are neither a flight risk nor a danger and minors who have a suitable custodian, as well as placement of minors in non-congregate settings if possible and up-to-date reporting on the justifications for keeping minors in custody, and (2) ORR and ICE's prompt implementation of public health strategies recommended by the CDC to protect people that remain in congregate settings in detention. Plaintiffs also seek enforcement of the *Flores* Agreement's provision requiring that Defendants make and record their continuous efforts toward releasing individual Class Members.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | March 28, 2020 |
|---|---|---|---|
| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 5 of 15 |

It is beyond dispute at this point in this litigation that the FSA is a consent decree that is construed as a contract. *See, e.g.*, *Flores v. Sessions*, 862 F.3d 863, 874 (9th Cir. 2017); Order re Pls.' Mot. to Enforce at 3 [Doc. # 177]; Order re Pls.' Mot. to Enforce & Appoint a Special Monitor at 2–4 [Doc. # 363]. The Court incorporates the legal standards that it articulated in its July 24, 2015 Order and June 27, 2017 Order and need not repeat them here. [Doc. ## 177, 363.]

For the reasons stated below, the Court finds that Plaintiffs have shown serious questions as to the merits of their claim that ICE has breached the FSA with regard to the provision of safe and sanitary conditions and appropriate medical care and living accommodations in the context of the COVID-19 outbreak. The Court further finds that Plaintiffs have a strong likelihood of succeeding on their claim that both ICE and ORR have breached the FSA in their failure to release minors to suitable custodians in a prompt manner and to record their continuous efforts towards minors' release.

### 1. Safe and sanitary conditions and appropriate medical care

The Court has previously held, with regard to CBP temporary facilities, that the Agreement's requirement for safe and sanitary conditions covers an array of basic hygiene and health needs such as soap, toothbrushes, regulated temperatures, and conditions in which Class Members can sleep. *See Flores v. Sessions*, 394 F. Supp. 3d 1041, 1057, 1059, 1061 (C.D. Cal. 2017); *see also Flores v. Barr*, 934 F.3d 910, 916 (9th Cir. 2019) ("We note that, as the district court properly understood, assuring 'safe and sanitary' conditions includes protecting children from developing short- or long-term illnesses as well as protecting them from accidental or intentional injury."). In addition to requiring safe and sanitary conditions with the particular vulnerabilities of minors in mind, Exhibit 1 to the FSA also specifies that minors detained in licensed programs shall receive, *inter alia*, "suitable living accommodations, . . . [a]ppropriate routine medical . . . care, . . . emergency health care services, . . . screening for infectious [disease] within 48 hours of admission . . . [and] immunizations in accordance with the U.S. Public Health Service (PHS), Center for Disease Control." Settlement Exhibit 1, ¶ A.1. There is no dispute that ORR care facilities and ICE FRCs are covered by Exhibit 1.[7]

---

[7] Defendants argue that Paragraph 12 of the FSA, which provides for the requirement that "[f]ollowing arrest, the INS shall hold minors in facilities that are safe and sanitary," does not apply to ORR's care facilities, which are licensed facilities designed for longer-term custody of Class Members, or to the one ICE FRC that is state-licensed. Defs.' Response at 25. The Court need not decide at this time whether Paragraph 12 also applies to ORR facilities and one of the three ICE FRCs because those issues have not been fully addressed in a prior motion, and the Court need not address it in order to resolve the TRO. Moreover, there can be no dispute that other provisions of the FSA speak to the need to protect detained minors' safety and well-being. *See, e.g., Flores* Agreement ¶¶ 11, 14.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | March 28, 2020 |
|---|---|---|---|
| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 6 of 15 |

Medical experts fear the exceptionally rapid transmission of COVID-19 in detention facilities, where medical resources such as physicians, testing kits, and protective equipment are constrained; people are unable to practice social distancing; shared facilities are not frequently or properly sanitized; soap and hand sanitizer are not provided or easily accessible to detainees; quarantine or isolation units are scarce; and there are frequent opportunities for an infected person to enter or leave the facility. *See, e.g.*, Peeler Decl. ¶¶ 19–25; Haney Decl. ¶¶ 7–11; TRO App., Ex. D (Meyer Decl.) ¶¶ 8–15. For migrant children in detention, who are already more likely to have mental health concerns or may be separated from their family members, the trauma of undergoing solitary quarantine for the virus or simply not receiving adequate information about the potential for infection is likely to exacerbate existing mental health concerns. Peeler Decl. ¶¶ 26-27; Haney Decl. ¶¶ 12–13; TRO App., Ex. F (Zein Decl.) at 2–3 [Doc. # 733-8]. Furthermore, a high concentration of sick children, family members, and/or staff members in one community may overwhelm already strained local health care resources, particularly in the rural communities where many ICE and ORR facilities are located. Peeler Decl. ¶ 28. Examples from prior epidemics and recent prison outbreaks of COVID-19 confirm these medical experts' fears. Peeler Decl. ¶¶ 30–31, 33. And, although children thus far appear less susceptible to COVID-19 than adults, they may still carry and transmit the coronavirus, and common health concerns affecting many Class Members, such as asthma, malnutrition, and immunosuppression, may make them more susceptible to serious forms of the disease. Peeler Decl. ¶ 8; Graves Decl. ¶ 11. Accordingly, experts recommend reducing the size of the population within detention facilities to permit children to be in the custody of family sponsors or to be released with their families and thereby lessen the resource constraints and likelihood of overwhelming contagion in the less-crowded facilities. Peeler Decl. ¶¶ 35–41; Graves Decl. ¶¶ 27–32; TRO App. Ex. G (Letter to Congress) [Doc. # 733-9]. [8]

ORR has submitted evidence that the Chief Medical Officer of the CDC's National Center for Immunizations and Respiratory Diseases, who is also Deputy Incident Manager for the CDC COVID-19 response, approves of ORR's current COVID-19 procedures as consistent with CDC guidances for congregate settings, and stated that "[i]n some respects, ORR's current COVID-19 procedures actually exceed those set forth in the CDC guidances to congregate care facilities." Cohn Decl. ¶¶ 20–21. ORR also responds that it now: (1) has stopped placements in New York, California, and Washington (states with significant coronavirus outbreaks); (2) has limited air travel to local placements; (3) requires all care providers to conduct temperature checks for every Class Member in its care twice each day; (4) elevates all medical cases with flu-like symptoms;

---

[8] Defendants' objections to these physicians' opinions are OVERRULED, to the extent that the Court finds the opinions reliable and based on expertise and personal knowledge. The Court gives only some weight to these opinions insofar as they are not based upon personal knowledge of ORR and ICE detention facilities. *See* Defs.' Response at 41–43.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | March 28, 2020 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 7 of 15 |
|---|---|---|---|

(5) maintains medically appropriate isolate capabilities at all of its shelters; (6) restricts access to all visitors who display either an elevated temperature or flu-like symptoms; (7) provides testing if recommended by medical personnel, (8) has full-time medical staff on site, and (9) isolates anyone who either tests positive or is suspected of exposure to the COVID-19 virus. *See* Sualog Decl. ¶¶ 17–34.

Though ORR apparently still fails to address recommendations related to social distancing, personal hygiene, or personal protective equipment, among others, these updates in policy in response to a rapidly developing situation indicate that ORR is working to provide safe accommodations and medical care to Class Members in its custody. Furthermore, overcrowding at ORR facilities does not appear to be an issue, as ORR's care-provider facilities are operating significantly below their maximum capacity and historical highs. *See* Sualog Decl. ¶ 13. According to declarations submitted by plaintiffs in support of a request for a TRO in a related case, *Lucas R. v. Azar*, CV 18-05741 DMG (PLAx) (C.D. Cal.) [Doc. # 227],[9] attorneys working in ORR facilities for unaccompanied minors assert that each of the facilities in which they work is at half or three-quarters capacity, although children and staff continue to spend their time in close physical proximity. *Lucas R.* TRO App., Ex. F (Enriquez Decl.) ¶ 6 [Doc. # 227-8]; *id.*, Ex. G (Flamm Decl.) ¶ 5 [Doc # 227-9]; *id.*, Ex. H (Rutter Decl.) ¶ 3 [Doc. # 227-10]. Recent CDC orders prohibiting the entrance of unaccompanied children into the United States will also likely decrease ORR's custodial population. Cohn Decl. ¶ 23.

Though the Court recognizes that the limited facts before it do not describe the conditions at all of ORR's 107 diverse facilities nationwide, the parties have presented sufficient information for the Court to conclude at this time that ORR appears to be in substantial compliance with its FSA obligations to implement CDC-compliant guidelines and to provide adequate routine medical care and adequate living accommodations.

Accordingly, Plaintiffs have not shown a likelihood of success on the merits as to this part of their claim against ORR.

By contrast, the ICE Guidance appears deficient. The ICE Guidance asserts that it was updated on March 26, 2020 and that ICE implements CDC recommendations, but the section on its website about how it is specifically addressing conditions in detention has not been updated since March 15, 2020, and does not mention social distancing, increased personal hygiene, or increased testing and medical care. *See* ICE Guidance. Nor does the ICE Guidance recognize the

---

[9] At the hearing, the parties stipulated to the Court's use of declarations submitted in support of and in opposition to the *Lucas R.* TRO application in the disposition of this related TRO application, subject to evidentiary objections.

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk KT |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | March 28, 2020 |
|---|---|---|---|
| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 8 of 15 |

potential psychological harm of quarantining or isolating children for the duration of this pandemic.

Recent observations of ICE family residential centers ("FRCs") show uneven implementation of the recommended public health measures. An attorney at Karnes noted that as of March 23, 2020, the facility was attempting to implement social distancing measures such as limiting groups to 10 or fewer people, school closure, and meal delivery. Meza Decl. ¶ 38. But attorneys working in Berks County Residential Facility ("Berks") and South Texas FRC in Dilley, Texas ("Dilley"), personally observed that children, family members, and staff continue to spend the vast majority of their time in close physical proximity, and reports from detained minors and their family members indicate that large proportions of them have conditions that render them vulnerable to COVID-19 and/or already show symptoms associated with COVID-19 and that they lack information about COVID-19, access to hand sanitizer, cleaning supplies, personal protective equipment, and medical care. *See, e.g.*, App., Ex. I (Fluharty Decl.) ¶¶ 12-14, 16-17, 19, 23–33 [Doc. # 733-11]; Cambria Decl. ¶¶ 10, 29–35.[10]

ICE responds that, with the pandemic response evolving rapidly in all sectors, it has also updated its response. Now, it asserts that Berks, Dilley, and Karnes are implementing the public health measures that Plaintiffs requested in their TRO application. In summary, as of March 27, 2020, the FRCs are increasing the availability of hand sanitizers and soap and adding new sanitizing stations throughout the FRCs; conducting more frequent cleaning and deep cleaning in areas where residents congregate; suspended school and educational programs per statewide orders in Pennsylvania and Texas; employing extra screening measures; employing staggered or "satellite" meals to ensure greater social distancing at mealtime; limiting gatherings to small groups in common areas; encouraging families to stay in their own residential areas; and coordinating telephonic legal representation. Johnson Decl. ¶¶ 16, 18–22, 24, 27–29.

Though laggardly in its early response, as of two days ago ICE appears to have announced its implementation of CDC guidance during the COVID-19 outbreak. Given the current state of the evidence and ICE's only recent promulgation of some CDC recommendations in its FRCs, the Court finds that Plaintiffs have raised serious questions as to the merits of their claim that ICE is not compliant with its FSA obligations in the context of the COVID-19 outbreak.

---

[10] Defendants' objections to Fluharty's, Meza's, and Cambria's declarations are OVERRULED, to the extent that the Court relies on the attorneys' personal observations. Considering the difficulty of obtaining non-hearsay testimony from detainees even without the physical constraints of this pandemic and lack of any other evidence regarding on-the-ground conditions in the FRCs, the Court accords appropriate weight to hearsay observations by Class Members and their families. *See* Defs.' Response at 39–41.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | March 28, 2020 |
|---|---|---|---|
| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 9 of 15 |

Considering the Court's past orders, the exigencies of the circumstances, COVID-19's highly contagious nature, and the imminence of the threat, the Court invokes its authority, as described in the October 5, 2018 Order Appointing Special Master/Independent Monitor [Doc. # 494], to require heightened inspections of ICE facilities and, to a more limited extent, ORR facilities to ensure the existence of safe and sanitary conditions. *See* October 5, 2018 Order at ¶¶ A, B.

**2. Release without unnecessary delay and recording efforts toward release**

In 2019, children in ORR custody remained in that agency's care for an average of 66 days.[11] Office of Refugee Resettlement, Facts and Data: Length of Care, https://www.acf.hhs.gov/orr/about/ucs/facts-and-data (last visited March 27, 2020). In addition to its obligations under the *Flores* Agreement, ORR is tasked by the William Wilberforce Trafficking Victims Protection Reauthorization Act ("TVPRA") to ensure that any sponsor is "capable of providing for the child's physical and mental well-being." 8 U.S.C. § 1232(c)(3)(A). This Court has previously found that some of ORR's policies, even if they result in delays in releasing minors to adult custodians, "appear to be reasonably calculated to protect Class Members from 'harm or neglect' and to ensure that they have an adequate 'standard of care.'" *Flores v. Sessions*, No. CV 85-4544-DMG (AGRx), 2018 WL 10162328, at *18 (C.D. Cal. July 30, 2018) (quoting Agreement at ¶¶ 11, 17). But the change in factual circumstances now requires a reexamination of whether ORR's continued custody of children in congregate settings meets the Agreement's requirement that Class Members be released without unnecessary delay.

As of March 13, 2020, ORR had 3,622 minors in custody, 1,193 of whom were in congregate settings after having been detained for 30 days or more. TRO App., Schey Decl. ¶ 3 [Doc # 733-2]. According to fairly recent data provided by Defendants to Plaintiffs and subsequently analyzed the Dr. Nancy Wang, Professor of Emergency Medicine at Stanford University Medical Center, as of December 31, 2019, of the 4,562 minors still in custody at that time, nearly half of them had been in custody for less than 20 days, but 11.6 percent had been in custody for 31-60 days and—incredibly—11.7 percent had been in custody for six months to one year. TRO App., Ex. P (ORR Data) at 9, 21 [Doc. # 738]. ORR's data do not indicate why the agency failed to release these minors or how many of them have sponsors.[12] According to the

---

[11] The Court takes judicial notice of the cited ORR website.

[12] Although Dr. Wang's analysis and data from 2018 indicates that the vast majority of children in ORR's care had close family members available as custodians, neither party has provided more updated information about the availability of custodians for ORR's current care population. *See* Schey Decl. ¶ 9; Defs.' Response at 21; ORR Data at 12.

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk KT |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | March 28, 2020 |
|---|---|---|---|
| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 10 of 15 |

Dilley Pro Bono Project's records of Dilley residents, as of March 25, 2020, at least 22 minors have been detained more than 160 days, 10 have been detained for over 200 days, seven have been detained for more than 220 days, and one has been detained for 229 days. Fluharty Decl. ¶ 50. ORR's apparent failure to "make and record the prompt and continuous efforts on its part toward . . . the release of the minor" makes it more difficult to ascertain how many of the minors' releases to suitable custodians have been delayed without good reason. Agreement at ¶ 18; *see also Flores v. Sessions*, 2018 WL 10162328, at *21 (finding that the Agreement requires individualized assessments of whether a sponsor is a fit custodian and that requiring the ORR director's approval of certain Class Members' release violated the Agreement). Accordingly, though ORR may have justifications under the TVPRA for delaying release, Plaintiffs have raised serious questions going to the merits of their claim that ORR is in violation of the FSA's recording requirement.

As for ICE, the agency explains that its decisions to release class members depend on various factors, including the applicable detention authority, the status of any removal, credible fear, or reasonable fear proceedings, judicial or administrative stays, and humanitarian factors. Defs.' Response at 23–24. Those decisions may be complicated by the fact that the FSA does not contain any affirmative right of release for adults in immigration detention with their children. *Flores v. Lynch*, 828 F.3d 898, 909 (9th Cir. 2016). But the Court reminds Defendants—yet again—that "hold[ing] minors in indefinite detention in unlicensed facilities, . . . constitute[s] a fundamental and material breach of the parties' Agreement." *Flores v. Sessions*, No. CV 85-4544-DMG (AGRx), 2018 WL 4945000, at *2 (C.D. Cal. July 9, 2018). ICE therefore must still comply with the Agreement's requirement to release minors without unnecessary delay and "make and record the prompt and continuous efforts on its part toward family reunification and the release of the minor." Agreement ¶¶ 12, 14. And,

> [t]o be clear, the Court will not dictate how Defendants must exercise their discretion to parole or release minors in every single case—instead, the Court will order Defendants to comply with the unambiguous charge of the *Flores* Agreement to make *individualized* determinations regarding a minor's flight risk rather than blanket determinations.

*Flores v. Sessions*, 394 F. Supp. 3d 1041, 1067 (C.D. Cal. 2017).

Plaintiffs have provided evidence to indicate that ICE does not undertake or record any efforts aimed at the release of minors as required by Paragraphs 14 and 18 of the Agreement. Schey Decl. ¶ 7; Cambria Decl. ¶ 39; Fluharty Decl. ¶ 38–40; Meza Decl. ¶¶ 10, 43. According to a preliminary review of the most recent data provided by ICE to Plaintiffs, in February 2020, about 3,359 class members were detained in ICE family detention facilities. Schey Decl. ¶¶ 2,4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | March 28, 2020 |
|---|---|---|---|
| Title | ***Jenny L. Flores, et al. v. William P. Barr, et al.*** | Page | 11 of 15 |

More than half of those class members—1,861—have been detained for three months or longer. Of those class members, two were apprehended in 2014, four were apprehended in 2018, dozens have been detained for between ten to twelve months, and hundreds have been in custody for four months or more. *Id.* at ¶ 4. Though Defendants argue that these numbers are inaccurate, they are unable to provide any evidence of more accurate numbers within the time frame necessary to resolve this TRO application. Defs' Response at 23. Without any contrary data, the Court finds that Plaintiffs have shown a strong likelihood of success on their claim that ICE has not undertaken or recorded efforts to promptly release the Class Members in its custody.

Defendants argue that the data Plaintiffs request from ICE is already covered by the Court's October 5, 2018 Order Appointing Special Master/Independent Monitor, [Doc. # 494]. The Monitor is, *inter alia*, tasked with monitoring ICE's compliance with the Court's June 27, 2017 Order [Doc. # 363], which found that ICE violated Paragraphs 14 and 18 of the FSA by failing to make and record continuous efforts to release Class Members and place them in non-secure, licensed facilities. *See* Order Appointing Special Master/Independent Monitor at 4–5 [Doc. # 494]. In fact, the Monitor is also tasked with monitoring ORR's compliance with the Court's July 30, 2018 Order [Doc. # 470], in which the Court found ORR unnecessarily delayed the release of Class Members to custodians in violation of Paragraph 14 and 18 of the FSA. *Id.* at 5. The Monitor thus already has the authority to request "database" information for *all* Class Members, including the "dates, locations, and reasons for all transfers of Class Members" and, if the Class Member was not transferred to a licensed facility or released within 20 days, the reason why. *Id.* at ¶ B.1.c.i. On top of the information already within the Monitor's purview, however, Plaintiffs also request some information about what efforts ICE and ORR are making to ensure Class Members' prompt release and why each Class Member is remaining in custody. This global pandemic appears to be the type of emergency in which the Court may waive the time periods for the dispute resolution procedure set forth in the Order Appointing the Special Master/Independent Monitor. *Id.* at 24.

Because COVID-19 poses unprecedented threats to the safety of Class Members and all who come in contact with them, including ORR and ICE staff, healthcare providers, and local populations, the Court finds that any *unexplained delay* in releasing a child in ORR and ICE custody violates of Paragraphs 14 and 18 of the FSA, which require the agencies to release Class Members in their custody without unnecessary delay and make and record efforts to release the Class Members. This finding is bolstered by the Court's longstanding orders construing and mandating compliance with paragraphs 14 and 18 due to past violations. *See* July 24, 2015 Order [Doc. # 177]; June 27, 2017 Order [Doc. # 363]; July 30, 2018 Order [Doc. # 470]. Accordingly, Plaintiffs have established a strong likelihood of success as to the merits of this part of their claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | March 28, 2020 |
|---|---|---|---|
| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 12 of 15 |

**B.    Irreparable harm, public interest, and balance of the equities**

Based on the foregoing discussion of the near-certainty of the rapid spread of COVID-19 in ICE and ORR facilities, even if ORR and ICE take more urgent preventative measures, Plaintiffs have demonstrated that "they themselves are likely to suffer irreparable harm absent an injunction" that may aid in securing their release. *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 822 (9th Cir. 2018); *see also Unknown Parties v. Johnson*, No. CV-15-00250-TUC (DCBx), 2016 WL 8188563, at *15 (D. Ariz. No. 18, 2016), *aff'd sub nom Doe v. Kelly*, 878 F.3d 710 (9th Cir. 2017) (finding irreparable harm where the evidence demonstrated "medical risks associated with . . . being exposed to communicable diseases"). As Plaintiffs' counsel noted at the hearing, having information about delays in Class Members' release from ORR and ICE custody can help expedite their release from congregate settings that medical experts agree are hotbeds for contagion.

The severity of the harm to which Plaintiffs are exposed and the public's interest in preventing outbreaks of COVID-19 among families and children in ICE or ORR custody that will infect ICE and ORR staff, spread to others in geographic proximity, and likely overwhelm local healthcare systems tips the balance of equities sharply in Plaintiffs' favor. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009). Any countervailing financial and administrative concerns do not outweigh public health and safety in the midst of pandemic, particularly given the limited scope of the temporary relief that the Court will grant. *See Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) ("Faced with such a conflict between financial concerns and preventable human suffering, we have little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor." (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

The Court agrees with Defendants, however, that the interests of all parties and the public are not well served at this time by rushing to release minors *en masse* in the midst of the current travel restrictions or to release them to potentially unfit custodians based on limited information, particularly given the possibility of contagion via public transportation, or introducing healthy children to homes where they could be at a higher risk of infection. *See* Cohn Decl. ¶ 22; Sualog Decl. ¶¶ 42–44.[13] Furthermore, given the individualized circumstances of each family and each unaccompanied minor's potential sponsor, the Court does not find that ordering ORR and ICE to immediately release hundreds or even thousands of minors is appropriate on a class-wide basis.

---

[13] The Court is aware that some experts believe that release is safer for children than congregate care. *See, e.g.*, *Lucas R.* TRO App., Supplemental Declaration of Julie DeAun Graves [Doc. # 231-3]. While that may be true as a general matter and therefore supports the FSA's general policy favoring release, the Court is also aware that in the real world not all "homes" are equal. Defendants must promptly fulfill their duty under both the FSA and the TVPRA to make determinations of suitable placement.

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk KT |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | March 28, 2020 |
|---|---|---|---|
| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 13 of 15 |

Based on the comments of Plaintiffs' counsel at the hearing, it appears that Plaintiffs also agree that an orderly, yet prompt, disposition of minors' claims of suitable placement is a responsible way to proceed.

Pursuant to the clear terms of the FSA and the Court's prior Orders, ORR and ICE are already obligated to release Class Members without unnecessary delay. Accordingly, the balance of equities still weighs in favor of granting Plaintiffs interim relief. While the Court will not order immediate release of minors on a class-wide basis, the Court will order ORR and ICE to show cause why they should not be held to answer for unexplained delays in releasing eligible Class Members.[14]

Thus, paying "particular regard [to] the public consequences in employing the extraordinary remedy of injunction," the Court finds that Plaintiffs have met their burden to show entitlement to temporary injunctive relief, as delineated below, due to the exigencies of the COVID-19 pandemic. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

**C.    Bond**

Rule 65(c) permits a court to grant preliminary injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Notwithstanding its seemingly mandatory language, "Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotation marks omitted).

Based on the record before it and the composition of the class, the Court waives the bond requirement.

**IV.
CONCLUSION**

In light of the foregoing, Plaintiffs' TRO Application is **GRANTED in part** as follows:

1. Defendants are hereby **ORDERED to SHOW CAUSE** by **April 10, 2020 at 10:00 a.m.** why a preliminary injunction should not issue (1) requiring Defendants to make and record

---

[14] ORR has already submitted some information that may explain delays in the release of some Class Members, such as the coronavirus-related closure of fingerprinting sites that are key to completing TVPRA-required background checks. *See, e.g.*, Sualog Decl. ¶ 48.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 85-4544-DMG (AGRx)** | Date | March 28, 2020 |
| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 14 of 15 |

continuous efforts to release class members; (2) enjoining Defendants from keeping minors who have suitable custodians in congregate custody due to ORR's unexplained failure to promptly release these minors to suitable sponsors under the TVPRA; and (3) enjoining Defendants from keeping minors who have suitable custodians in congregate custody due to ICE's unexplained failure to release these minors within 20 days, especially given the emergent circumstances and the Court's prior orders requiring the same (*see, e.g.*, July 24, 2015 Order [Doc. # 177], June 27, 2017 Order [Doc. # 363], July 9, 2018 Order [Doc. # 455], July 30, 2018 Order [Doc. # 470]).

2. Pending the OSC hearing, **IT IS HEREBY FURTHER ORDERED** as follows:

    a. ORR and ICE facilities shall make themselves available to the Juvenile Coordinators for inspection.[15]  By no later than **April 9, 2020**, the Juvenile Coordinators overseeing ICE and ORR facilities shall provide the Court and the Special Monitor with a report regarding whether their facilities are at, above, or below capacity levels (with specific numbers) and the status of implementation of CDC-compliant guidances.  The Juvenile Coordinators shall also videotape living conditions at any facility chosen by the Special Monitor and/or her expert consultant for review, as well as provide any requested information on what guidance protocols are being followed there.

    b. For the purposes of litigating Plaintiffs' request for injunctive relief, by **April 6, 2020**, ORR and ICE shall provide to the Monitor, Class Counsel, and the Court the information listed in the Order Appointing Special Master/Independent Monitor, at B.1.c.i(i)-(x), as well as a brief summary of efforts toward family reunification or release of the detained Class Member. [Doc. # 494.] To the extent this information implicates privacy concerns, it may be filed under seal.

        i. For the purposes of this evidentiary snapshot, the Court requires the requested data only for Class Members being held in ICE custody in any FRC, and ORR facilities located in States that have 3000 or more confirmed cases of COVID-19 as of the date of this Order: California, Illinois, Louisiana, Massachusetts, Michigan, New Jersey, New York, and Washington.  To the extent possible, ORR should endeavor to provide the requested information for all Class Members in their custody.

---

[15] While physical inspection is preferred, given current guidelines regarding COVID-19 prevention, an inspection via videoconferencing technology is also acceptable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | March 28, 2020 |
|---|---|---|---|
| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 15 of 15 |

    c. ORR and ICE shall make every effort to promptly and safely release Class Members in accordance with Paragraphs 14 and 18 of the FSA and the Court's prior orders (*see, e.g.*, July 24, 2015 Order [Doc. # 177], June 27, 2017 Order [Doc. # 363], July 9, 2018 Order [Doc. # 455], July 30, 2018 Order [Doc. # 470]).

3. Plaintiffs must serve this Order on Defendants no later than **March 30, 2020** (or file Defendants' Voluntary Notice of Acknowledgment of Service), and Plaintiffs shall file a proof of service immediately after effecting service. Defendants shall file their supplemental Opposition, if any, to Plaintiffs' request for a preliminary injunction by noon on **April 6, 2020**, and Plaintiffs shall file and serve a Reply, if any, by noon on **April 8, 2020**. The videoconference hearing on the OSC re preliminary injunction shall be on **April 10, 2020 at 10:00 a.m.** By no earlier than April 6, 2020, counsel shall contact the courtroom deputy clerk at dmg_chambers@cacd.uscourts.gov to receive the videoconference link.

4. **If, at any time before the Court's ruling, the parties stipulate to any form of interim relief, they shall immediately inform the Court of that development.**

**IT IS SO ORDERED**.