

**ADMINISTRATION FOR**

# CHILDREN & FAMILIES

**Office of Refugee Resettlement** | 330 C Street, S.W., Washington, DC 20201
www.acf.hhs.gov/programs/orr

# The UAC Manual of Procedures (UAC MAP)

## *For ORR Staff, Contractors, and Grantees*

# Section 2: Safe and Timely Release from ORR Care

**Office of Refugee Resettlement**
**Office of the Director**
**Division of Policy and Procedures**
**July 2019 – Version 4.1**

# Section 2: Safe and Timely Release from ORR Care

## Table of Contents

2.1 Summary of the Safe and Timely Release Process ................................................................... 5

2.2 Sponsor Application Process ................................................................................................... 6

    2.2.1 Identification of Qualified Sponsors ................................................................................. 8

        Quick Glance: Determining Sponsor Category ......................................................... 8

    2.2.2 Contacting Potential Sponsors ....................................................................................... 10

        Quick Glance: DHS Restrictions on Use of Information Obtained from ORR ..................... 12

        Quick Glance: Protecting Sponsors from Fraud Schemes .................................................. 13

        Quick Glance: How to Check for Previous Sponsorship ........................................ 14

        Quick Glance: Requesting Records from Other Care Provider Programs ........................... 19

    2.2.3 The Family Reunification Application ............................................................................. 19

        Quick Glance: When to Flag a Sponsor, Other Adult, or Address ......................... 20

    2.2.4 Required Documents for Submission with the Application for Release ......................... 21

        Quick Glance: List of Acceptable Proof of Identity Documents ........................... 22

        Quick Glance: List of Acceptable Proof of Immigration or U.S. Citizenship Documents ....... 25

        Quick Glance: Acceptable Proof of Address Documents ...................................... 25

        Quick Glance: Acceptable Proof of Relationship Documents .............................. 27

    2.2.5 Legal Orientation Program for Custodians ..................................................................... 32

    2.2.6 Additional Questions and Answers about This Topic ..................................................... 33

2.3 Key Participants in the Release Process ............................................................................... 33

    2.3.1 ORR Federal Field Specialists (FFS) ................................................................................ 33

    2.3.2 Case Managers ............................................................................................................... 33

    2.3.3 Case Coordinators .......................................................................................................... 33

    2.3.4 Child Advocates .............................................................................................................. 33

2.4 Sponsor Assessment Criteria and Home Studies ................................................................. 34

    2.4.1 Assessment Criteria ....................................................................................................... 35

        Quick Glance: Tips for Interviewing Sponsors ...................................................... 36

2.4.2 Home Study Requirement ................................................................................. 38

    Quick Glance: FFS Approval for Discretionary Home Studies ............................... 41

2.4.3 Additional Questions and Answers on This Topic .......................................... 43

2.5 Sponsorship Assessment Background Check Investigations ................................. 43

    2.5.1 Background Check Requirements .................................................................... 44

        Quick Glance: Overview of Background Check Requirements ............................. 45

        Quick Glance: How to Document Background Checks in UAC Portal .................... 49

        Quick Glance: Expediting Fingerprint Check Results ........................................... 50

        ✉ Email Template: Fingerprint Check Requests .................................................... 52

        Quick Glance: Release of UAC Prior to Receiving Fingerprint Check Results ....... 52

        Quick Glance: Requesting Status Updates for Background Check Results ........... 55

        Quick Glance: CA/N Check State Forms ................................................................ 57

        Quick Glance: Release of UAC Prior to Receiving CA/N Check Results ................ 60

    2.5.2 Results of Background Checks on Release Decisions ....................................... 63

    2.5.3 Commonly Asked Questions on the ORR Background Check Process ............. 64

2.6 Sponsor Immigration Status and Release of UAC .................................................. 64

2.7 Recommendations and Decisions on Release ........................................................ 64

    2.7.1 Approve Release Decisions .............................................................................. 70

    2.7.2 Approve Release with Post-Release Services .................................................. 72

    2.7.3 Conduct a Home Study before a Final Decision Can be Made ....................... 73

    2.7.4 Deny Release Request ..................................................................................... 73

    2.7.5 Remand Release Request—Decision Pending ................................................. 74

    2.7.6 Issues Related to Recommendations and Decisions ....................................... 74

    2.7.7 Notification of Denial ...................................................................................... 75

    2.7.8 Appeal of Release Denial ................................................................................ 77

2.8 Release from ORR Custody ..................................................................................... 78

    Quick Glance: Items That Accompany UAC at Release ......................................... 79

    2.8.1 After Care Planning .......................................................................................... 81

    2.8.2 Transfer of Physical Custody ........................................................................... 81

2.8.3 Closing the Case File ................................................................................................ 82

2.8.4 Safety and Well-being Follow Up Call ...................................................................... 82

    Quick Glance: How to Check EOIR Hotline for UAC Immigration Hearing Information ........ 82

    Quick Glance: Roles and Deadlines for Safety and Well-Being Follow Up Call Tracking Report ........................................................................................................................ 86

2.8.5 Post-Release Services for UAC with Zika Disease or Infection .................................. 86

2.8.6 Release for Children with Legal Immigration Status ................................................. 87

    Quick Glance: Milestones for Planning and Releasing Children with Legal Status .............. 87

2.9 Bond Hearings for Unaccompanied Alien Children ...................................................... 89

    Quick Glance: Bond Hearing Notifications ...................................................................... 91

    Quick Glance: Possible Evidentiary Sources to Finding Danger to the Community .............. 93

Appendix 2.1 How to Protect PII and Create Password Protected Files ...................................... 94

Appendix 2.2 How to Report Potential Fraud Schemes ........................................................... 98

Appendix 2.3 Reporting Agencies for Suspected Document Fraud for Most Common ID Documents in Key States ........................................................................................................ 103

Appendix 2.4 Child Advocate Recommendation and Appointment Form ................................... 104

Appendix 2.5 Sponsor Assessment Interviewing Guidance ...................................................... 106

Appendix 2.6 Sponsor Assessment .......................................................................................... 113

Appendix 2.7 Sponsor Check Coversheet ................................................................................. 124

Appendix 2.8 CA/N Check Coversheet ...................................................................................... 125

Appendix 2.9 Background Check Submission Requirements ...................................................... 126

Appendix 2.10 Release Request Completion Guidance ............................................................. 128

Appendix 2.11 ORR HQ Bond Hearing Procedures ................................................................... 132

    Quick Glance: Processing Bond Hearing Requests ............................................................ 133

    Quick Glance: Possible Evidentiary Sources to Finding Danger to the Community ........... 134

    Quick Glance: Preparing for Bond Hearings .................................................................... 135

Appendix 2.12 Legal Status Definitions .................................................................................... 137

Appendix 2.13 Fingerprint Card ............................................................................................... 139

Appendix 2.14 Fingerprinting Guidance ................................................................................... 140

    Quick Glance: Assistance Completing the *FRP* at ORR Digital Fingerprint Sites ................ 141

Appendix 2.15 Prior Sponsorship Information Request ............................................................. 143

> Look for these **icons** for quick cues on what is required for a specific procedure or a reference to a particular policy in the UAC Policy Guide.
>
> 📖 **UAC Policy Guide (ORR Guide to Children Entering the United Stated Unaccompanied)**
> ✉ Email
> 📪 Mail
> 🕐 Tasks associated with a deadline
> 📑 Form or other template
> ☎ UAC Portal
> ☎ Phone Call

## 2.1 Summary of the Safe and Timely Release Process

📖 **See Section 2.1 of UAC Policy Guide**

### OVERVIEW

This section includes procedures for sponsor applications, assessments and background checks of potential sponsors, the roles and responsibilities of key participants in the release process, home study requirements, recommendations and decisions on release, including notifications of denial and procedures for appealing denial by a parent/guardian or UAC, procedures for release from ORR, including release to a sponsor, release for children with legal immigration status, procedures for post-release services and a safety and well-being follow up call, and closing the case file.

ORR expects care providers and ORR staff and contractors to protect Personally Identifiable Information (PII) when communicating information about sponsors and UAC. These procedures are described in **Appendix 2.1 How to Protect PII and Create Password Protected Files Documents** that are uploaded in the UAC Portal do **not** need password protection.

## 2.2 Sponsor Application Process

📖 **See Section 2.2 of UAC Policy Guide**

### OVERVIEW

ORR and its care providers work to ensure safe and timely release of each UAC from care whenever possible. This requires care providers to identify and contact potential sponsors as quickly as possible while maintaining the safety and well-being of the child. Potential sponsors complete a *Family Reunification Application (FRA)* and other forms and submit documents that are part of the larger Family Reunification Packet (FRP) (available in English and Spanish).  ORR expects potential sponsors to complete the Family Reunification Packet **within 7 calendar days of receipt of the packet**.

The Family Reunification Packet includes the following and is available on the home page of the **UAC Portal** and on the **ORR Website** under **Key Documents for the UAC Program**:

- *Family Reunification Packet Cover Letter*
- *Authorization for Release of Information*
- *Family Reunification Application*
- *Sponsor Care Agreement*
- *Legal Orientation Program for Custodians Overview*
- *UAC Sexual Abuse Hotline Flyer*
- *Fingerprinting Instructions*
- *Sponsor Handbook*
- *Letter of Designation for Care of a Minor* (used when a parent or legal guardian wishes to specify another person to sponsor his or her child)
- *Sponsor Declaration*
- *Privacy Notice for Sponsors*
- *Privacy Notice for Parents and Legal Guardians*
- *Fraud Warning*

The *Sponsor Handbook* includes other information and is available on the UAC Portal as well as the ORR Website.

| Key Players | Responsibilities |
|---|---|
| Case Manager | Interviews UAC and parent or legal guardian (if possible) to identify a potential sponsor and contacts caregivers in country of origin to corroborate information and rule out trafficking issues, identifies any safety concerns regarding contact with potential sponsor, contacts sponsor and explains process for safe and timely release, and assists sponsor with other steps in completing the family reunification process. |

| Case Coordinator | Makes recommendations on family reunification cases; serves as a main contact for the care provider program when concerns arise during the assessment, and assists in concurrent planning to find a suitable sponsor. |
|---|---|
| FFS | Serves as the official ORR representative in the field tasked with oversight of UAC cases; provides critical policy and procedural guidance to stakeholders involved in the care, custody, and release of UACs; serves as final decision maker on family reunification cases and elevates complex cases for further ORR input as needed. |
| Contract Field Specialist (CFS) | ORR contract staff who serve as liaisons to provide technical assistance as needed. Assist care provider in obtaining documents from prior UAC care provider and assist care provider in contacting consulate to verify UAC birth certificate, and other duties. |

| Related Forms/Instruments | Used By |
|---|---|
| Family Reunification Packet (FRP) | Case Manager, Sponsor |
| *Sponsor Handbook* | Sponsor |

The UAC Portal has a Case Status page that appears on the Case Management tab when a user clicks on an individual UAC's A number (see **Fig. 2.1**). Along with capturing a snapshot of a UAC's case at any given time, the function allows ORR to monitor cases to make sure assessments and communications occur within expected timeframes. Some fields on the page are auto-populated. Other fields require manual input.

## Fig. 2.1 Case Status Page

| UAC Case Status | | | | |
|---|---|---|---|---|
| **Child Assessments** | | | | |
| Initial Intakes Assessment | Last Updated: | | | |
| Assessment For Risk | Last Updated: | | | |
| UAC Assessment | Last Updated: | | | |
| **Medical** | | | | |
| Initial Medical Exam | Date Evaluated: | 11/01/2017 | | |
| TB Screening | Outcome: | | | |
| Immunizations (IME Only) | Last Updated: | | | |
| **Home Study and Post-Release Service Cases** | | | | |
| Home Study | Type of Home Study: | | Date Referred: | Date Accepted: |
| Post Release Services | Type of PRS: | PRS ONLY | Date Referred: 11/01/2017 | Date Accepted: 11/01/2017 |
| **Family Reunification** | | | | |
| Sponsor Assessment | Date Completed: | | | |
| Family Reunification Application Sent to Sponsor | Date Sent: | | Date Received: | |
| Proof of Sponsor Identity | Date Completed: | | | |
| Proof of Sponsor Address | Date Completed: | | | |
| Proof of Relationship Between UAC and Sponsor | Date Completed: | | | |

>|Save    >|Reset

| Background Checks | | | | |
|---|---|---|---|---|
| **Internet Criminal** | | | | |
| Sponsor: Maria Moreno | Date Requested: | N/A | Date Result Received: | N/A |
| **Sex Abuse Registry** | | | | |
| Sponsor: Maria Moreno | Date Requested: | N/A | Date Result Received: | N/A |
| **Immigration** | | | | |
| Sponsor: Maria Moreno | Date Requested: | N/A | Date Result Received: | N/A |
| **FBI Criminal History (fingerprint)** | | | | |
| Sponsor: Maria Moreno | Date Requested: | N/A | Date Result Received: | N/A |
| **CA/N** | | | | |
| Sponsor: Maria Moreno | Date Requested: | N/A | Date Result Received: | N/A |
| **Legal** | | | | |
| Know Your Rights and Legal Screening: | Date Completed: | | | |
| **Release Recommendations** | | | | |
| Case Manager Release Request: | Last Updated: | | | |
| Case Coordination Release Request: | Last Updated | | | |
| ORR Release Request Decision: | Last Updated: | 11/01/2017 | Release Approved: | |

# 2.2.1 Identification of Qualified Sponsors

📖 **See Section 2.2.1 of the UAC Policy Guide**

## Quick Glance: Determining Sponsor Category

Potential sponsors fall into three categories, of which one has two-subgroups. Best practice in child welfare is for children to be placed with family whenever possible. The sponsor category has implications for showing proof of relationship, whether the sponsor must have a home study prior to release, and other considerations. Some close relationships that may have a strong family association in a cultural context, for example, "godparent," falls outside the definition of a "family" relationship, and are considered as a category 3 sponsor. The following table is the typical order of preference for release, but may differ depending on the results of all assessments, background checks, and/or the needs of the UAC.

In the event the sponsor is unable to complete the application process in a timely manner, the case manager may conduct concurrent case planning. Concurrent case planning means the case manager continues to work with the original applicant, but looks at other sponsor options or release options for UAC. Concurrent case planning must be reviewed with the case coordinator who would elevate the case to the FFS.

| Relationship Type | Category |
|---|---|
| Father, Mother | Category 1 |
| Step-Parent (who adopted UAC) | Category 1 |
| Legal Guardian with proof of court-ordered guardianship | Category 1 |

| Grandfather, Grandmother | Category 2A |
| Aunt, Uncle | Category 2A or 2B |
| Sister, Brother | Category 2A |
| Half-sibling | Category 2A |
| Step-Parent (who did not adopt UAC) | Category 2A or 2B |
| Brother-in-law, Sister-in-law | Category 2A or 2B |
| First Cousin | Category 2A or 2B |
| Adult Nephew or Niece | Category 2A or 2B |
| Other Distant Relatives | Category 3 |
| Godparent (unrelated) | Category 3 |
| Unrelated Sponsor | Category 3 |
| Institutional/Organizational Sponsor | Category 3 |

**NOTES:**

- In cases involving a UAC who enters the country with her child, ORR assigns the UAC mother's sponsor category to her child.  This is true even if the potential sponsor would be assigned a different category (based on their relationship status) if he or she were to sponsor the infant alone.

- Category 2A sponsors are grandparents, adult siblings (including half-siblings and step-siblings through a legal marriage); and other close adult relatives who were a primary caregiver to the child. Category 2B sponsors are close adult relatives (non-grandparents and non-adult siblings) who were not a primary caregiver to the child.

- Case managers note whether a Category 2 sponsor is a 2A or 2B in the *Release Request* and in the *Sponsor Assessment*.

Please contact the UAC Policy Inbox (**UACPolicy@acf.hhs.gov**) if you need clarification regarding sponsor categories related to a particular case (i.e., distant relative cases).

## PROCEDURES

1. **Within 24 hours of placement of the UAC in ORR custody**, the case manager:

   - Reviews the Intakes tab in the UAC Portal for any notes or contact information that was entered into the DHS referral to ORR, or to determine if the UAC was separated from a parent or other relative at time of apprehension.

   - Interviews the UAC to identify who he or she was expecting to live with in the United States and anyone else the UAC knows in the United States in order to help identify a potential sponsor.

- Identifies any safety concerns for the UAC if he/she were to have contact with the family in country of origin or the potential sponsor.

- Contacts the UAC's parent or legal guardian (following safety protocols in regard to trafficking, smuggling, abuse or neglect concerns, criminal history information, or any other safety concerns) to notify them of the UAC's placement, identify family members or close friends who reside in the United States and who may have been expecting the UAC, and requests that they send the UAC's birth certificate immediately.

- Advises the UAC's parent or legal guardian that ORR may release the UAC to a qualified sponsor in the United States who completes the application process and provides documentation to show proof of the sponsor's identify and the sponsor's relationship to the UAC. ☺☎📖

## 2.2.2 Contacting Potential Sponsors

📖 **See Section 2.2.2 of the UAC Policy Guide**

### PROCEDURES

1. **Within 24 hours of identification of a potential sponsor**, the case manager explains to the potential sponsor the requirements of the sponsorship process by:

   - Providing an overview of ORR's function, principal tasks and participants, and the ORR connection to U.S. immigration proceedings by:

     o Stressing the fact that ORR is a federal agency within the U.S. Department of Health and Human Services and is dedicated to the welfare of unaccompanied alien children and that ORR is not an enforcement nor an immigration agency;

     o Advising that the UAC has been placed in immigration proceedings while in ORR care;

     o Explaining the role of the care provider's organization and that all services are free of charge to the UAC and to the sponsor;

     o Explaining the  role of the case manager in assisting the potential sponsor with the family reunification process (include the case manager's contact information);

     o Emphasizing that the sponsor should be aware of potential fraud schemes (See **Quick Glance: Protecting Sponsors from Fraud Schemes**)

- <u>Informing the sponsor of the ORR family reunification process and the potential sponsor's responsibilities by</u>:

  o Reviewing the Family Reunification Packet (FRP) and all forms that are included in the packet;

  o Explaining  other documentation requirements that are part of the packet, such as proof of address, proof of relationship, etc.;

  o Explaining the importance of listing all household members on the application;

  o Explaining the process for fingerprinting, if applicable. This includes notifying the sponsor that ORR will submit fingerprint information to the FBI for criminal history checks and explaining the restrictions on DHS' ability to target the subject of a fingerprint check for immigration enforcement purposes using information obtained from ORR (see **Quick Glance: DHS Restrictions on Use of Information Obtained from ORR**).

  o Explaining other background checks, including that internet criminal public records checks and sex offender registry checks **will** be performed for all sponsors, adult household members, and adult caregivers identified in a sponsor care plan;

  o Explaining that assistance from an attorney or any other paid representative is not required for completion of the packet;

  o Advising the sponsor to be wary of fraudulent phone calls asking for money to get the UAC released to him or her and directing their attention to the *Fraud Warning* flyer in the FRP (See **Quick Glance: Protecting Sponsors from Fraud Schemes**).

  o Explaining the importance of obtaining a *Letter of Designation for Care of Minor* from the UAC's parent or guardian if the potential sponsor is not a parent or legal guardian (and documenting efforts to obtain the letter if unsuccessful).

- <u>Emphasizing the timeframes for returning the packet by</u>:

  o Immediately submitting the *Authorization for Release of Information*;

  o Immediately submitting the sponsor's government issued photo ID;

  o Submitting the complete FRP **within 7 calendar days** (noting that the case manager can assist if the sponsor is unable to read or write in English or Spanish).

  o Scheduling fingerprinting **within 3 business days**

- <u>Explaining ORR expectations for the potential sponsor if the UAC is released to the sponsor by</u>:

- o Explaining that the sponsor must attend a Legal Orientation Program for Custodians (see **2.2.5 Legal Orientation Program for Custodians**).

- o Noting that the UAC may receive post-release services while in the care of the sponsor, should such services be warranted, and that participation in the service provision is voluntary. ☺☎

### Quick Glance: DHS Restrictions on Use of Information Obtained from ORR

Case managers must convey the following information in correspondence and conversations with any potential sponsor required to undergo a fingerprint check and instruct the potential sponsor to share this information with any adult household members or adult caregivers who are also required to undergo a fingerprint check.

*"Your fingerprints and other information, such as your name and date of birth, are shared DHS as part of the ORR background check process. DHS is restricted from using your information for immigration enforcement actions, including placing you in detention, removing you from the United States, referring you for a decision on removal, or starting removal proceedings. However, there are some exceptions. DHS may be able to use your information for immigration enforcement actions if you were convicted of, charge with, or are pending charges for a serious felony; if you have ever associated with a business that employs minors and does not pay a legal wage or prevents the minor from going to school; or if you have ever had an association with prostitution. Serious felonies include child abuse; sexual violence or abuse; child pornography; and aggravated felonies as defined in the U.S. Code of Laws.*

*Congress wrote this restriction into the Consolidate Appropriations Act of 2019, which is in effect until September 30, 2019. ORR does not know if the restrictions will continue beyond that date. Congress may impose these same restrictions, different restrictions, or not restrict DHS in the future.*

*ORR recommends that anyone who is concerned that DHS may be able to use their information for immigration enforcement actions speak with an attorney about whether their criminal history falls under these exceptions."*

The case manager must offer to send the below links to the potential sponsor.

- U.S. Code section that contains the definition of an aggravated felony – 8 U.S.C. 1101(a)(43)
  **http://uscode.house.gov/view.xhtml?path=&req=1101&f=treesort&fq=true&num=371&hl=true&edition=prelim**

- Consolidated Appropriations Act, 2019. Pub. L. 116-6, Division A, Title II, §224.
  **https://www.congress.gov/bill/116th-congress/house-joint-resolution/31/text**

| Quick Glance: Protecting Sponsors from Fraud Schemes |
| --- |

Case managers and clinicians who contact potential sponsors must convey the following information in correspondence and conversations with potential sponsors to protect them from fraud schemes.

*"There are no fees associated with the processing or reunification of an unaccompanied alien child. You do not need to pay money. No one should contact you and ask you for money, your bank account number, your credit card number, or ask you to send payment or a money order to another person or account.*

*However, you are responsible for the cost of your child's transportation and, if the care provider is escorting the child, for the care provider's transportation costs. If an airline escort is used, you are responsible for paying the airline's unaccompanied minor service fee. Travel costs should only be paid directly to a company, usually the airline or the care provider facility. You are not required to use a travel agent used by the care provider. No one should ask you to pay travel costs to an individual or to a personal account.*

*If you are contacted and asked to pay or wire money for any cost other than transportation and escort fees, or if you are asked to pay or wire money to an individual or personal account, please immediately call [insert phone number of your care provider program's licensed administrator] or the ORR National Call Center Help Line at (800) 203-7001."*

See **Appendix 2.2 How to Report Potential Fraud Schemes**

2. **Within 24 hours of identification of a potential sponsor**, the case manager sends the Family Reunification Packet (FRP) to the potential sponsor by email or by sending the UAC Portal home page link (**https://ucportal.acf.hhs.gov**) which features the FRP. The case manager updates the UAC Portal Case Status page with the date the FRP was sent to sponsor. **NOTE:** Emailing the FRP or sending the UAC Portal link is preferred whenever possible, but case managers may send the FRP by expedited mail or fax if necessary. ⏱📋☎✉/👆/🗄

3. **Within 1 business day of emailing or providing the UAC Portal link** to the FRP for the potential sponsor (**within 5 business days** if the FRP is mailed), the case manager contacts the potential sponsor to:

   - Confirm receipt of the FRP.

   - Provide the potential sponsor with help in filling out the packet, if needed.

- Remind the potential sponsor and adult household members to immediately return the *Authorization for Release of Information* and a copy of the sponsor's and adult household members' government issued ID, as applicable.

- Assist the potential sponsor in scheduling an appointment for the Legal Orientation Program for Custodians (see **2.2.5 Legal Orientation Program for Custodians**). **NOTE:** The case manager should capture the information about the appointment in either the *UAC Assessment* or *UAC Case Review*, depending on when the information was obtained. 📄 ✉️🗳️📭

4. **Within the same 1 business day timeframe**, the case manager creates a new sponsor record or updates an existing record in the UAC Portal. Prior to creating a new record, the case manager searches for the potential sponsor's name and address in the UAC Portal to check if the sponsor has previously applied for sponsorship or if the address was previously used for sponsorship (see **Quick Glance: How to Check for Previous Sponsorship**). A UAC may have multiple potential sponsors, but the case manager must designate one sponsor as the "primary sponsor" in the Sponsor Information section of the UAC Portal.

   **NOTES:**
   - Creating the sponsor record initiates the sponsor assessment process used to evaluate a sponsor. Unless there are unexpected delays (such as a wait list for fingerprint checks or a case that requires the completion of a home study), ORR expects the care provider to complete the evaluation process within these timeframes:

     o **Cat 1 and Cat 2A:** 10 calendar days
     o **Cat 2B:** 14 calendar days
     o **Cat 3:** 21 calendar days 🕐🗳️

   - At this time the UAC Portal does not distinguish between Cat 2A or Cat 2B. Case managers should continue to designate these sponsors as Cat 2 for the dropdown designations but specify in the *Release Request* and other narrative documents whether the Cat 2 sponsor is designated a 2A or 2B.

## Quick Glance: How to Check for Previous Sponsorship

To check if a sponsor or adult household member had previously sponsored another UAC, go to the Case Management section of the UAC Portal, select the UAC by clicking on the A # of the UAC.  On the UAC Basic Information page click on "Go to Assessments" and the subsection "Sponsor Information" which includes a "Sponsor" button.

Clicking on the sponsor button takes you to a screen where you can search for a sponsor prior to adding a new sponsor to the system.

Fill in the name of the potential sponsor or the potential sponsor's adult household members and then click "Search Sponsor" at the bottom. You can also do partial name searches, such as "Mig" for Miguel under First Name.  (You should try various combinations of the name, including upper and lower case versions).

When you click on "search sponsor," a table will populate that shows all matches. Look at all the records and see if the sponsor already exists in the UAC Portal.

In the table, the "P" counter (P = Potential) tracks the number of UAC that the sponsor has attempted to sponsor as a "potential sponsor." The "A" counter (A = Actual) tracks the number of UAC who were "actually sponsored" by that sponsor. Clicking on the number below P or A will show you the UAC associated with the sponsor. (Note: In the sponsor information section, the number is to the right of the P and A counter. Screen shot below.)



If you need to flag a sponsor, select the sponsor and in the sponsor information section, check "flag" and in the note specify the reason. (See the Quick Glance: When to Flag a Sponsor, Other Adult, or Address.)



Conduct a separate search of the address provided.

The address flag is located directly under the section on the sponsor name under the "Sponsor Information" section described above:

This search may also reveal matches with previous sponsorship. (Try various combinations of streets (i.e., "St., St, street, and Street"), city, and state.) Flag an address by clicking on the "address flag" and adding a corresponding note.

**NOTE:** This search should be repeated as new information is obtained from the potential sponsor, including addresses, names of other adults in the household or adult identified in the sponsor care plan (i.e., the individual who is identified to take over the care of the UAC if the sponsor is deported, leaves the United States, or is unable to care for the UAC for another reason).

This search should also include searches of different combinations of the last names/surnames with the first names, and should include all versions of the name that the potential sponsor uses in the FRA and on their identification documents. Search all versions of the addresses that the potential sponsor uses in the FRA, identification documents, and in the proof of address documents. See **Section 2.2.3** for more information about additional checks.

5. If the potential sponsor already exists in the UAC Portal, the case manager clicks "assign sponsor" on the screen that appears following "search sponsor" and continues to search the record as new information is collected regarding sponsor's address, household members, criminal background check, etc. If the sponsor has a new address, the case manager should update the address but should not create a new sponsor entry. See **Fig. 2.2**. 🖱

## Fig. 2.2 Assign Sponsor



6. If the sponsor is not in the system, the case manager creates a new sponsor record in the UAC Portal for each potential sponsor to whom an FRP is sent and enters the required sponsor information. See **Figure 2.3.** The case manager continues to update the record as new information is received. If the case manager identities fraud or other identified safety concerns at this time, he/she should elevate this to the FFS to determine if the person should be added to the UAC Portal in the event that the person attempts to sponsor a UAC in the future. ✉🖱

**Figure 2.3 Add New Sponsor**



7. If a check for previous sponsorship indicates that a potential sponsor has
   previously sponsored or previously attempted to sponsor a UAC in ORR care, the
   case manager assesses the sponsor's compliance:

   - For successful sponsorships, by obtaining proof that the previously
     sponsored UAC continues to reside with the sponsor (if still a minor), was
     registered in school as a minor or in accordance with state laws, attended
     his/her immigration court hearings (if scheduled), and the resources that the
     sponsor used to meet the UAC's needs.

   - In all cases, by obtaining the following records from the care provider where
     the previously sponsored UAC was in care: the sponsor's *FRA* and supporting
     documentation; the *Sponsor Assessment*; background checks; Home Study
     report, if applicable; *Release Request;* and safety and well-being follow-up
     call notes (or related information) and whether the case was referred for
     post release services (PRS) and the name of the PRS provider. See the **Quick
     Glance: Requesting Records from Other Care Provider Programs**.

   The case manager reviews the information provided and compares the
   information to the current case noting any discrepancies or red flags and then
   documents the findings in the *UAC Case Review*. ☢📑✋🖂

| Quick Glance: Requesting Records from Other Care Provider Programs |
|---|

**REQUESTING CARE PROVIDER**

**For Operational Care Provider Programs**

If a care provider program needs to obtain documents from another care provider program in order to review records related to a previous sponsorship or attempted sponsorship, the case manager emails a separate password protected document to the care provider from which the records are being requested that include the UAC name and A#, the name of the care provider program from which the records are being requested, the reason for the request, and the documents that are requested. Care providers may use the template located in **Appendix 2.15 Prior Sponsorship Information Request** – contact your assigned CFS for a Word version.

The subject line should read: [Name of Care Provider storing the file] File Request: [UAC's last 4 A#] for [Name of Care Provider requesting the file].

Care providers may also contact other programs directly with questions regarding a UAC's case.

**For Closed Care Provider Programs**
The case manager follows the directions above for requesting documents from another care provider, but instead of emailing the request to the program the case manager emails the request to the CFS, who forwards the request to the designated point of contact listed in the most recent version of the *Closed Program Case Files* list.

**RESPONDING CARE PROVIDER**
Within 24 hours of receiving the request, the care provider from which the documents were requested replies to all parties on the email with the requested records attached.

# 2.2.3 The Family Reunification Application

📖 **See Section 2.2.6 of the UAC Policy Guide**

## PROCEDURES

1. The sponsor returns the *FRA*, preferably **within 7 calendar days of receipt**. The case manager updates the Case Status page with the date the *FRA* was received and uploads the *FRA* into the UAC Portal under the UAC Documents tab. See **Fig. 2.1**. 🕐📋✉️👆

2. The case manager updates the sponsor record in the UAC Portal and conducts a new search for the name and addresses of adult household members and the adult caregiver identified in the sponsor care plan to determine if they have previously applied for sponsorship or if the address has been used previously by other sponsors (see **Quick Glance: How to Check for Previous Sponsorship**). ☝

3. If the search for previous sponsorship and previous use of the address reveals additional information, the case manager documents the information in the Comments section of the Sponsor Information section of the UAC Portal. If the additional information is of concern and requires elevation to the case coordinator and FFS, the case manager "flags" the applicable sponsor name or address and notes the reason in the "notes" box. See the **Quick Glance: When to Flag a Sponsor, Other Adult, or Address**. The case manager elevates any findings from any of the searches to the case coordinator for relevance to the current case. ☝✉

---

## Quick Glance: When to Flag a Sponsor, Other Adult, or Address

ORR staff and care providers use the "flag" button to elevate issues of concern that arise during the sponsor assessment process.  These include (but may not be limited to):

- When a review of previous sponsorship indicates lack of compliance with the terms of release (such as failure to follow up with immigration proceedings, failure to follow through with PRS, UAC school registration, etc.).

- Finding that UAC in previous sponsorship is still a minor but no longer resides with the sponsor.

- Finding that the sponsor or other adults have used the same address in sponsorship applications numerous times.

- Finding that the sponsor, household members, or adult caregiver identified in the sponsor care plan meet the criteria for "may deny" release decisions.

- Child Abuse, child sexual abuse or neglect, trafficking, or domestic violence reported to have been perpetrated by the sponsor after the release of a UAC.

The presence of a "flag" indicates that further input from the case coordinator and FFS is needed. If a "flag" already exists in the record, the case manager or case coordinator or FFS documents the new information in the "comments" box near the bottom of the screen:



**NOTE:** The UAC Portal does not allow flagging of adult household members or adult caregivers. In those cases, flag the sponsor and include the reason in the comments box.

4. **Upon receipt of a copy of the potential sponsor's, adult household members', and /or adult caregiver's photo ID(s)**, the case manager:

- Performs a criminal public records check and sex offender registry check for the potential sponsor, adult household members, and adult caregiver identified in a sponsor care plan. The case manager saves a copy and/or screenshot of these checks in the UAC Documents tab of the UAC's Assessment file in the UAC Portal. Any findings from the checks are elevated to the case coordinator and FFS. See **2.5 Sponsorship Assessment Background Check Investigations** for more information.

- Initiates the fingerprinting process and assists the sponsor and household members with scheduling a fingerprint appointment, if applicable (see **Appendix 2.14 Fingerprinting Requirements**)

- Assists the potential sponsor in scheduling an appointment for the Legal Orientation Program for Custodians. (see **2.2.5 Legal Orientation Program for Custodians**) .🕐📄✉☎

## 2.2.4 Required Documents for Submission with the Application for Release

📖 **See Section 2.2.4 of the UAC Policy Guide**

**PROCEDURES**

**Proof of Sponsor Identity**

1. Potential sponsor submits original versions or legible copies of government issued ID as evidence verifying his/her identify (see **Quick Glance: List of Acceptable Proof of Identity Documents**). 📑✉/📖

2. The case manager offers guidance to potential sponsor on how to obtain the documentation, emphasizing to the sponsor that the proof of identity document will be required prior to release of the child. However, it is ultimately the potential sponsor's responsibility to find and submit documentation. ✉/☎

3. The case manager reviews the proof of identity provided and uploads the documents to the UAC Documents tab in the UAC Portal copying all pages of the document, front and back sides. **NOTE:** The sponsor must be able to provide this ID at the time of the UAC's release; staff conducting the transfer of custody will verify the ID. 📑🖐

## Quick Glance: List of Acceptable Proof of Identity Documents

All potential sponsors may present either one selection from List A or two or more documents from List B. If a potential sponsor presents selections from List A or B, at least one selection must contain a legible photograph. (Expired documents (for up to two years) are acceptable for the purpose of establishing identity.) Sponsors must submit a least one document that contains a photograph for adult household members and adults identified in a sponsor care plan.

| List A | List B |
|---|---|
| U.S. Passport or U.S. Passport Card | U.S. Certificate of Naturalization |
| Permanent Resident Card or Alien Registration  Receipt Card (Form I-551) | U.S. Military Identification Card |
| Foreign Passport that contains a photograph | Birth Certificate |
| Employment Authorization Document that contains a photograph (Form I-766) | Marriage Certificate |
| U.S. Driver's License or Identification Card | Court order for name change |
| | Foreign national identification card |
| | Consular passport renewal receipt that contains a photograph |
| | Mexican consular identification card |
| | Foreign driver's license that contains a photograph |
| | Foreign voter registration card that contains a photograph |
| | Canadian border crossing card that contains a photograph |



| | Mexican border crossing card that contains a photograph with valid Form I-94 |
| --- | --- |
| | Refugee travel document that contains a photograph |
| | Other similar documents |

4. The case manager confirms the identity of all potential sponsors and documents the accurate name and date of birth in the Proof of Identity section of the *Sponsor Assessment*. See **2.4.1 Assessment Criteria** for more information about the *Sponsor Assessment*. The case manager updates the Case Status page with the date the Proof of Identity was completed. See **Fig. 2.1**. 

5. The case manager or the CFS verifies the UAC's and/or potential sponsor's birth certificates or other foreign government issued documents with the Consulate under the following circumstances:

   - The authenticity of the original birth certificate or other foreign government issued document is questionable or the document appears to be fraudulent or altered.

   - The birth certificate provided is for another individual.

   **NOTE:** The FFS supervisor determines the point of contact for each program. If the case manager is responsible, he/she will copy the FFS on the email to the Consulate. If the CFS is responsible, then the case manager will ask the CFS, copying the FFS, to contact the Consulate. 

**Proof of Identity of Other Adults**

All potential sponsors must submit documentation verifying the identity of other adults in the sponsor's household or adult identified in a sponsor care plan.

1. The potential sponsor submits at least one identification document that contains a photograph for each adult household member and adult identified in a sponsor care plan. See the **Quick Glance: List of Acceptable Proof of Identity Documents**. The document may be an original or a legible copy. 

   **NOTE:** If a member of the potential sponsor's household or an adult caregiver is a former UAC who was in ORR care, the potential sponsor may submit an original version or legible copy of the ORR *Verification of Release* form issued to the UAC at time of release. The document may only be used to verify the identity of adults under the age of 21, and only if the form contains a photograph. ORR will not accept a *Verification of*

*Release* as proof of identity if it does not contain a photograph, and/or is for anyone 21 and older. 📖📖

2. The case manager reviews proof of identity for the adult household members and adult identified in the sponsor care plan and uploads the documents to the UAC Portal (front and back of the ID). The case manager confirms that the document is acceptable in the Proof of Identity section of the *Sponsor Assessment*. The case manager updates the Case Status page with the date the Proof of Identity review was completed. See **Fig. 2.1**. 📖✓🖰

**Proof of Immigration Status or U.S. Citizenship**

1. The potential sponsor submits documentation to prove their immigration status or U.S. citizenship, if applicable (see **Quick Glance: List of Acceptable Proof of Immigration or U.S. Citizenship Documents**). ✉/🖰

2. The case manager reviews the document(s) provided to ensure that the document(s) are sufficient to prove immigration status or U.S. citizenship and that the name, date of birth, and other identifying information in the document(s) match the identifying information contained in other documents provided by the potential sponsor and adult caregiver (e.g., birth certificate, proof of identity, address, or relationship documents, etc.).

3. If the potential sponsor provided their alien number, the case manager also calls the Executive Office for Immigration Review (EOIR) immigration court information hotline at **800-898-7180** to obtain information regarding the potential sponsor's and/or adult caregiver's immigration status. An alien number is required in order to access immigration information from the EOIR hotline.

4. The case manager uploads the document(s) to the UAC Documents section of the UAC Portal and enters the potential sponsor's immigration status in the "Legal Status" field found in the Sponsor Information section of the UAC Portal. 🖰

5. The case manager documents the potential sponsor's immigration status, what documents the potential sponsor submitted, and any information obtained from the EOIR hotline in the "Proof of Immigration Status or U.S. Citizenship" section of the *Sponsor Assessment* and the *Release Request*. 📖

6. The case manager determines if a sponsor care plan is required (see **2.7.6 Issues Related to Recommendations and Decisions**).
   **NOTE:** If the potential sponsor is unable to provide documentation to prove immigration status or U.S. citizenship or is only able to provide expired documents, the potential sponsor is consider to be without status and a sponsor care plan is required.

## Quick Glance: List of Acceptable Proof of Immigration or U.S. Citizenship Documents

Potential sponsors and adult caregivers must provide as many forms of evidence needed to verify their immigration status or U.S. citizenship. Acceptable documents include original versions or legible copies of the documents listed below.

| Proof of Immigration Status | Proof of U.S. Citizenship |
|---|---|
| • Valid visa<br>• Legal permanent resident card (green card)<br>• Notice to Appear<br>• Other Federal government issued documentation providing immigration status information | • U.S. passport<br>• U.S. birth certificate<br>• Naturalization papers<br>• Court order<br>• Other government issued document sufficient to prove U.S. citizenship |

### Proof of Address

1. The case manager ensures the proof of address submitted matches the address on the sponsor's application as well as the address that was previously searched in the UAC Portal. The case manager uploads the proof of address document provided by the potential sponsor to the UAC Portal, enters the type of document and the address on the document into the Proof of Address section of the *Sponsor Assessment,* and enters the address in the sponsor information section of the UAC Portal. See the **Quick Glance: Acceptable Proof of Address Documents**.

## Quick Glance: Acceptable Proof of Address Documents

**All potential sponsors must submit at least one form of documentation verifying their current address. Acceptable forms of documentation include original versions or legible copies of:**

- A current lease or mortgage statement dated within the last two months before submission of the *Family Reunification Application* (*FRA*);

- A utility bill, addressed in the sponsor's name and dated within the last two months before submission of the *FRA*;

- A bank statement dated within the last two months before submission of the *FRA*;

- A payroll check stub issued by an employer, dated within the last two months before submission of the *FRA*;

- A piece of mail from a county, state, or federal agency (with the exception of ORR) with the sponsor's name and residential address and dated within the last two months before submission of the *FRA*;

- A notarized letter from a landlord on the business stationary of the real property owner confirming the sponsor's address; and

- Other similar documents reliably indicating that the sponsor resides at the claimed address, dated within the last two months before submission of the *FRA*.

**If the potential sponsor is unable to submit any of the above documents, the case manager may send a letter to the potential sponsor's address following these instructions.**

Address a plain white envelope to the sponsor's address and include as the return address the case manager's name and care provider's address (do not include the care provider facility name).

Create a unique code word that is used only once and refer to the code word in the letter to the sponsor with instructions for the potential sponsor to call the case manager upon receipt of the letter and refer to the code word as evidence that the letter was delivered to the individual and address (include a copy of the letter in UAC's case file and upload a copy to the UAC Portal).

**NOTE**: The case manager may not accept a photograph or video submitted by the sponsor as proof of address.

2. The case manager verifies that the address provided by the sponsor is a residential address by:

   - Entering the address into **SmartyStreets.com** to verify that the address is classified as residential under the RDI (Residential Delivery Indicator) category and that the address is not classified as P (post office box) under the Record Type category.

   - Entering the address into Google to verify that it is a valid address in Google Maps and in Google Earth (check the camera view to ensure it is pointing at the address and not across the street or adjacent).

3. The case manager documents in the Proof of Address section of the *Sponsor Assessment* that verification of residential address has been completed through SmartyStreets, Google Maps, Google Earth, and UAC Portal search and updates the UAC Portal as needed with the results. The case manager saves the results of the search in a file that is uploaded in the UAC Documents tab. The case manager updates the Case Status page with the date the Proof of Address was completed. See **Fig. 2.1.** 📄✍️

4. If the sponsor does not submit an acceptable proof of address document or if the case manager cannot confirm that the address provided is a residential address or that the

sponsor lives at that address, the case manager documents this in the Proof of Address section of the *Sponsor Assessment* and elevates the issue to the case coordinator and the FFS. 🗎 ✉

**Proof of Sponsor-Child Relationship**

1. The case manager gathers proof of relationship between the UAC and a potential sponsor to determine the sponsor category and to determine the existence of a prior relationship between the UAC and the potential sponsor and/or the UAC's family with the potential sponsor (If a UAC does not have a birth certificate, the case manager elevates the case to the FFS). 🗎

2. The case manager uploads the documents provided by the sponsor to the UAC Portal. The case manager documents all information in the Proof of Relationship section of the *Sponsor Assessment* along with confirmation that the case manager was able to verify the sponsor-UAC relationship. See **Quick Glance: Acceptable Proof of Relationship Documents**. The case manager updates the Case Status page with the date the Proof of Relationship was completed. See **Fig. 2.1**. 🗎 ✍

| **Quick Glance: Acceptable Proof of Relationship Documents** |
|---|

Potential sponsors must provide as many forms of evidence needed to verify the relationship claimed. Acceptable documents include original versions or legible copies of the list below (not an exhaustive list).

| Relationship Type | Acceptable Document |
|---|---|
| *Parent (Cat 1)* | • Birth certificates<br>• Court records<br>• Parent's valid/non-expired or expired (up to two years) government issued photo ID<br><br>**NOTE:** The FFS may approve a DNA test for a potential sponsor who says he/she is a biological parent (Cat 1). |
| *Step-parent (who has legally adopted UAC) (Cat 1)* | • Birth certificates<br>• Parent's valid/non-expired or expired government issued photo ID<br>• Step-parent's valid/non-expired or expired government issued photo ID<br>• Marriage certificate<br>• Court order documents confirming adoption or legal guardianship has been established |
| *Legal guardian (Cat 1)* | • Court order documents confirming adoption or legal guardianship<br>• Birth certificates |

| | |
|---|---|
| | • Legal guardian's valid/ non-expired or expired government issued photo ID<br>• Guardianship records<br>• Death certificates<br>• Hospital records |
| *Other related sponsors (Cat 2A/2B or 3)* | • Birth certificates<br>• Trail of familial birth and/or death certificates showing that the UAC and the sponsor are related (this includes the UAC's birth certificate)<br>• Marriage certificates<br>• Hospital records<br>• Court records<br>• Guardianship records<br>• Baptismal certificate<br>• Primary Caregiver Affidavit (certain 2As only) |
| *Unrelated sponsors (Cat 3)*<br><br>Cat 3 unrelated potential sponsors who are unable to provide verifiable documentation of a family relationship with the UAC must submit evidence that reliably and sufficiently demonstrates a bona fide social relationship with the child and/or the child's family that existed before the UAC migrated to the United States.<br><br>The care provider should gather as many documents as needed to prove prior relationship. This table includes acceptable documents for corroboration purposes (not an exhaustive list). | • Birth certificates<br>• Birth certificate or Record Not Found (government issued document)<br>• Government issued photo ID (verify in person or via video conference that you are speaking to the correct individual)<br>• Marriage certificate<br>• UAC parent's death certificate or death certificates of other family members<br>• Baptismal certificate<br>• Hospital records<br>• School records/diploma<br>• Remittance receipts evidencing financial support of UAC<br>• For proof of recent travel or living in the UAC's family in country of origin: passport including passport stamps, land deeds of sponsor and minor's family, government issued ration cards<br>• Photographs or social media posts (labeled)<br>• Family session(s) case notes (clinician and case manager observations of interactions/conversations between UAC and potential sponsor)<br>• Consulate verification of birth certificate<br>• Assessment based on interviews with UAC, UAC's family, UAC's caregiver in home country, and sponsor's neighbors (make all efforts to conduct in-person or via video conference); explanation of potential sponsor's |

| | relationship with the UAC in the *Family Reunification Application*, confirmed by UAC's family. |
|---|---|

## Unrelated Category 3 Sponsors Who Have No Preexisting Relationship with the UAC or the UAC's Family

In cases where it has been established that there is no available relative sponsor, or sponsor with a bona fide social relationship to the unaccompanied alien child (UAC) that existed before the child migrated to the United States, an individual with no bona fide social relationship may be considered as a sponsor for release after the case manager:

1. Notifies and staffs the case with the case coordinator and the Federal Field Specialist (FFS) at or before, but no later than, the next weekly staffing meeting.

2. Completes the *Sponsor Assessment* in its entirety, obtains the potential sponsor's ID, and completes the public records check and sex offender registry check prior to step 3.

3. Facilitates regular contact between the potential sponsor, the UAC, and the UAC's family while the UAC is in ORR care, if appropriate.

4. Regularly monitors the contact between the potential sponsor, the UAC, and the UAC's family.

5. Coordinates with the FFS, case coordinator, and the child's clinician (in cases where clinical concerns are identified with the child) to determine if it is in the child's best interest to pursue release to the potential sponsor, while taking the lack of preexisting relationship and the UAC's and/or UAC's family's wishes into account when making a recommendation for release. In addition, the sponsor's motivation for sponsorship should be determined to be in good faith, absent of any potential trafficking concerns, and sponsor demonstrates the ability to provide adequate care for the UAC.

6. Documents this information in the Proof of Relationship section of the *Sponsor Assessment*, the *UAC Case Review*, and the *Release Request*. ✐

## Evidence of being a Primary Caregiver (Category 2A sponsors who are non-grandparents/non-adult siblings only)

If the potential sponsor has any guardianship documents or other documents from a state or foreign government they must submit this with the Family Reunification Application. ORR also accepts sworn affidavits from potential sponsors in addition to corroborating interviews the Case Manager has with the child, potential sponsor, and other family members to establish whether the potential sponsor was a primary giver to the child.

1. The case manager contacts the potential Category 2A close adult relative sponsor (who is not a grandparent or adult sibling) and requests:

   a. Temporary guardianship documents (please note full legal guardianship or adoption would mean the sponsor is a Category 1) from a state or foreign government.

      **or**

   b. The case manager requests that the sponsor submit a sworn affidavit attesting that they were the child's primary caregiver. The affidavit includes the following information:

      • That the child lived in the same home with the sponsor.

      • The amount of time the child lived with the sponsor.

      • The amount of time the child lived with the sponsor, for which the sponsor claims they were the child's primary caregiver.

      • Where the child's biological parents lived at the time.

      • Why the child's biological parents were unable to provide primary care for the child.

      • Whether the child's biological parents asked/consented to the sponsor being the primary caregiver.

      • Who took the following responsibilities for the child, while the child lived with the sponsor:
        o Bathed the child
        o Fed the child
        o Made health care arrangements
        o Disciplined the child
        o Financially supported the child
        o Supervised the child
        o Consoled/Comforted the child

      • Attestation that the sponsor did not sexually or physically abuse the child, or through their negligence allow others to sexually or physically abuse the child

      • Attestation that the sponsor did not abandon or mistreat the child.

2. For purposes of 2(b) above the case manager conducts interviews with the child, the sponsor, and other family members to corroborate the information in the affidavit.

3. The case manager identifies Category 2A sponsors in the *Release Request* and in the *Sponsor Assessment*.

**Missing Documentation or Incomplete FRA**

1. If the potential sponsor does not complete the FRA or submit the required proof of identity, immigration status/U.S. citizenship, address, relationship, etc., the case manager consults with the case coordinator and the FFS. **NOTE:** In these cases, the case manager does **NOT** submit a *Release Request*. ☎/✉

2. The case manager enters the sponsor's name and information in the sponsor information section of the UAC Portal for the UAC and in the sponsor information section of the *UAC Case Review*, documenting the reason why the sponsor was pursued or attempted to sponsor a UAC and decided to withdraw or ORR decided to cancel pursuit of the sponsor.

3. The case manager flags potential sponsors who disclose information that demonstrate a safety concern or potential risk to the child in the UAC Portal (See **Quick Glance: How to Check for Previous Sponsorship** and **Quick Glance: When to Flag a Sponsor, Other Adult, or Address**).

**Reporting Fraudulent Information and/or Documents**

If a sponsor, household member, or adult caregiver  provides fraudulent information during the sponsor assessment process for the purpose of obtaining sponsorship of a UAC, the care provider must report the incident to the U.S. Department of Health and Human Services Office of the Inspector General (**UAC@oig.hhs.gov** ) and U.S. Immigration and Customs Enforcement Homeland Security Investigations tip line: USICE HSI Tip Line (**HSITipLine.Collaboration@ice.dhs.gov**). ✉

**State Issued Identity Documents**

If the case manager has evidence that a potential sponsor has submitted altered or fraudulent state-issued Identity documents (such as an ID card or driver's license), the case manager should send an email to the reporting agency for the state and copy the FFS (email addresses for the state agencies are included in **Appendix 2.3 Reporting Agencies for Suspected Document Fraud for Most Common ID Documents in Key States**). All reports should include any information about the potential sponsor or the circumstances surrounding the fraud.

The U.S. Department of Health and Human Services Office of the Inspector General must be copied in the correspondence with the state agency (**UAC@oig.hhs.gov**). If the suspected fraud is in a state not identified as a key state in Appendix 2.3, the case manager should contact the assigned FFS and case coordinator. ☎/✉

## 2.2.5 Legal Orientation Program for Custodians

📖 **See Section 2.2.5 of the UAC Policy Guide**

### PROCEDURES

1.  The case manager schedules the sponsor for an LOPC presentation using the LOPC's online scheduling system:

    Website: **https://catholiccharitiesny.org/log-in**
    In the email account section insert: **LOPC@archny.org**
    Password: **Orientation1** (case sensitive)

    **NOTE**: If the online scheduling system is unavailable, the case manager calls the LOPC Call Center for UAC at **(888) 996-3848** and arranges for the Call Center to set up an appointment for the sponsor. ☎

2.  The case manager enters the sponsor's postal code or city and state in the online scheduling system to find the LOPC provider closest to the sponsor's home address. If a sponsor lives more than 60 miles from an LOPC provider or cannot travel to a provider, the case manager contacts the LOPC Call Center.

    **NOTE:** Special instructions for case managers in the Harlingen/Brownsville area: If a sponsor lives more than 60 miles from a LOPC provider in the Harlingen/Brownsville area and is unable to travel to the provider, the case manager may schedule the sponsor for an online LOPC appointment. ☎

3.  The case manager provides the sponsor confirmation of the appointment time, date and location by:

    - Printing out a copy of the online confirmation and mailing the confirmation to the sponsor; or

    - Entering a valid email address for the sponsor into the appropriate field of the online scheduling system, and the system will automatically generate and send an email confirmation to the sponsor;

    - If the LOPC appointment is scheduled to take place **within 48 hours of scheduling**, calling the sponsor and documenting the phone call in the UAC case file. 🕐📋 📑📧☎

## 2.2.6 Additional Questions and Answers about This Topic

📖 **See Section 2.2.6 of the UAC Policy Guide**

## 2.3 Key Participants in the Release Process

📖 **See Section 2.3 of the UAC Policy Guide**

## 2.3.1 ORR Federal Field Specialists (FFS)

📖 **See Section 2.3.1 of the UAC Policy Guide**

## 2.3.2 Case Managers

📖 **See Section 2.3.2 of the UAC Policy Guide**

## 2.3.3 Case Coordinators

📖 **See Section 2.3.3 of the UAC Policy Guide**

## 2.3.4 Child Advocates

📖 **See Section 2.3.4 of the UAC Policy Guide**

### PROCEDURES

1.  The care provider or other referring party completes Section 1 of the *Child Advocate Recommendation & Appointment Form* and sends it as an attachment to the local child advocate program by email. 📄 ✉

2.  The child advocate program makes a recommendation for an individual Child Advocate based upon availability and the individual needs of the UAC. The child advocate program completes Section 2 of the *Child Advocate Recommendation & Appointment Form*. The child advocate program emails the form as an attachment to ORR/DUCO HQ at

DucsConsent@acf.hhs.gov and includes the appropriate points of contact (program staff, FFS, referring party). 📋 ✉️

3. The designated ORR staff makes an appointment determination. The ORR staff documents the appointment determination by completing Section 3 of the *Child Advocate Recommendation & Appointment Form* and emails the form as a password protected attachment to the child advocate program, the care provider, and the designated ORR/FFS. The case manager uploads this appointment form to the UAC Portal as documentation. 📋 ✉️📤

4. The child advocate program notifies the UAC's legal service provider or attorney of record by sending the *Child Advocate Recommendation & Appointment Form.* 📋 ✉️

**Appendix 2.4** is a screenshot of the *Child Advocate Recommendation & Appointment Form*. The fillable template can be found in the UAC Portal under Forms, Checklists and Other Tools – Administration.

## 2.4 Sponsor Assessment Criteria and Home Studies

📖 **See Section 2.4 of the UAC Policy Guide**

### OVERVIEW

The care provider evaluates each potential sponsor's ability to provide for the physical and mental well-being of the UAC. ORR determines if additional screening procedures or services, such as a home study, are necessary to ensure the welfare of the child.

ORR may in its discretion require potential sponsors to submit additional documentation before making a release decision.

| Key Players | Responsibilities |
|---|---|
| Case manager or clinician | Responsible for interviewing potential sponsor, completing the *Sponsor Assessment*, and collecting other information to evaluate the sponsor. |
| Case coordinator | Consulted by case manager to determine if a home study is required. |
| FFS | Responsible for approving all home studies. Responsible for initiating home studies based on the results of an FBI background check. Steps in to determine if home study is needed when there is disagreement between case manager and case coordinator. |
| ORR Home Study Project Officers | Provide program oversight for referrals and work with providers who conduct home studies. |

| Home Study/Post Release Services Provider | Conducts home study. |
|---|---|

| Related Forms/Instruments | Used By |
|---|---|
| *Sponsor Assessment Interviewing Guidance* | Case manager or clinician |
| *The Sponsor Assessment* form | Case manager or clinician |
| *The Home Study Assessment Report* | Home study provider |
| *Release Request* | Case manager, case coordinator, FFS |

## 2.4.1 Assessment Criteria

📖 **See Section 2.4.1 of the UAC Policy Guide**

### PROCEDURES

1. **Within five calendar days of identifying a potential sponsor,** the case manager or the clinician interviews the potential sponsor based on the *Sponsor Assessment Interviewing Guidance* (see **Quick Glance: Tips for Interviewing Sponsors**), completes the fillable *Sponsor Assessment* form and uploads the form to the UAC Portal. The file should be saved as **[Sponsor name]_Sponsor_Assessment_[date]**. Once the *Sponsor Assessment* form is uploaded, the case manager cannot make any changes or additions to the form.

   The case manager or the clinician who conducted the interview and completed the *Sponsor Assessment* must certify that the potential sponsor was interviewed based on the *Interviewing Guidance* and must (electronically) sign and enter his/her name, title, and the date as certification in the *Sponsor Assessment* form. The case manager updates the Case Status page with the date the *Sponsor Assessme*nt was completed.

   If the form is incomplete **within the 5 days due to missing information or documentation**, the case manager may save a copy for updating and upload the form later (see Step 3 below). But the case manager must complete the following sections in the initial *Sponsor Assessment* form within the **5 day timeframe** and upload it in the UAC Portal:
   - Sponsor Basic Information (**NOTE:** ORR no longer collects Social Security Numbers (SSN) of sponsors.)
   - Sponsor Cultural Information
   - Family Relationships (including family tree, if applicable)
   - Household Composition
   - Previous Sponsorship
   - Proof of Identity

- Criminal History
- UAC Journey and Apprehension
- Human Trafficking
- Fraud ☺☏☎▤☝

▤ **Appendix 2.5** is the *Sponsor Assessment Interviewing Guidance.*

▤ **Appendix 2.6** is the *Sponsor Assessment* form*.*

## Quick Glance: Tips for Interviewing Sponsors

- Ask all questions as stated in the guidance. But if the sponsor answers more than one question in a single response, don't ask the pre-answered question again.

- Phrase all questions in a culturally appropriate manner to engage the potential sponsor.

- Be conversational and don't just read word for word.

- Ask follow up questions if needed.

- Don't feel the need to ask interview questions in order. Allow the interview to flow naturally.

- Follow up with more research and interviews with the UAC and others to address any discrepancies or inconsistencies identified in the interview.

The following is required for UAC with distant relative Cat 3 sponsor and optional for all other sponsor categories:

Ask the potential sponsor to create a family tree (genogram) when answering questions related to proof of relationship and family relationships. Upload the family tree to the UAC's case file. (Go to http://www.genopro.com/genogram/template for a template and help in creating a family tree.)

2. If the sponsor self-discloses criminal history in the interview (or if background checks reveal criminal history or a safety risk for the potential sponsor, adult household members, and adult identified in the sponsor care plan), the case manager elevates to the case coordinator and the FFS to determine if ORR should obtain court records, police reports, proof of rehabilitation, and letters of explanation of the incident.

   If these records are no longer available because they have been expunged, the case manager should elevate to the FFS for next steps.  ▤✉

   **Figure 2.4** indicates where to upload the *Sponsor Assessment* in the UAC Portal. ▤☝

**Figure 2.4 Where to Upload the Sponsor Assessment in the UAC Portal**



3. If the case manager needs to update the *Sponsor Assessment* after **the 5 day timeframe**, he/she should create a new word document of the form using the following naming convention: **[Sponsor name]_Updated_Sponsor_Assessment_[date]**. The form may be updated as necessary but must be completed and uploaded to the UAC Portal **before the case manager submits the release recommendation to the case coordinator**. The number of *Sponsor Assessments* submitted per sponsor **may not** exceed two copies. Each copy must clearly indicate whether it is the initial assessment or the final version. ⏰🗐🖰

4. If the case manager determines during the sponsor assessment process that a sponsor or address should be flagged, the case manager should click on the editing icon highlighted in **Fig. 2.5** which opens the "Sponsor Information" tab under UAC Assessments to enter demographic, background check information, or other reason a sponsor, other adult, or address is flagged. ⏰🗐🖰

**Fig. 2.5 Updating or Adding a Flag to the UAC Portal**

Click on the edit icon highlighted below.



5. If a case manager is conducting concurrent planning, he/she should include this information in the *UAC Assessment* and *UAC Case Review* and indicate which sponsor is designated as the "Current Sponsor" since only one individual may hold this designation

at any time in the *UAC Case Review* (simply click the "yes" or "no" button in the sponsor information page for each sponsor). ✓🖱

6. The case manager must complete the sponsor assessment process before:

   • The case manager submits a home study referral.

   • The case manager submits a release recommendation.

## 2.4.2 Home Study Requirement

📖 **See Section 2.4.2 of the UAC Policy Guide**

## PROCEDURES

1. The case manager continuously consults with the case coordinator using information collected during the UAC's initial assessment and throughout his/her stay in conjunction with the sponsor assessment process to determine if a home study of the potential sponsor is required. Home studies are **only** requested for potentially viable sponsors. ✉🌐

2. **Within 2 business days** of the completion of the FRA and after consultation with the case coordinator, the case manager submits the *Release Request* with a recommendation to perform a home study and summarizes the following in the comments section (**Fig. 2.6** shows a partial snapshot of the *Release Request*):

   • *Initial Intakes Assessment*

   • *UAC Assessment*

   • FRA

   • Safety Plan, if applicable

   • Background check results

   • Relevant SIRs

   • *UAC Case Review*

   • *ISP*

   • For category 2A/B and 3 cases, information about the biological parents' or legal guardians' consent for release and/or provision of *Letter of Designation* for Care of a Minor

   • Any additional assessments, including psychological assessments, and additional documentation on the UAC related to the release assessment (e.g., juvenile delinquency records)

   • For discretionary home studies:

- o What additional information will a discretionary home study be able to provide, other than what has already been gathered via the sponsor assessment process, to mitigate concerns and create a safer release scenario for the UAC
- o What questions need to be answered by the discretionary home study 

## Fig. 2.6 Case Manager Section of the Release Request



3. If there is nonconcurrence between the case manager's recommendation and the case coordinator's recommendation on regarding the performance of a home study, the case coordinator **immediately** elevates the case to the FFS who will make a determination on whether or not to conduct a home study in the *Release Request* in the UAC Portal **within 1 business day** (see **2.7 Recommendations and Decisions on Release** below for more information about the *Release Request*).

4. The case manager goes to the referral tab in the UAC Portal (See **Fig. 2.6 Case Manager Section of the Release Request** and **Fig. 2.7 Home Study Case Referral Section**) to complete the home study referral.

## Fig. 2.7 Home Study Case Referral Section

**(A)**



**(B)**

ORR prioritizes Home Study and PRS TVPRA cases. Discretionary home study referrals may not be posted in the UAC Portal until the FFS approves the home study. See **Quick Glance: FFS Approval for Discretionary Home Studies**. 📖✉🖱

If a case is no longer in need of a home study or PRS, the case manager goes to the Home Study Case Referral tab in the Discharge Section and chooses the option to "Cancel Case Referral" for the specific case. The case manager also needs to update the *Release Request*.

The case manager ensures that all documentation is saved in the UAC Portal. The information includes:
- *Initial Intakes Assessment*
- *UAC Assessment*
- Sponsor Assessment
- FRP

- Safety Plan, if applicable
- Background check results
- Relevant SIRs (**NOTE**: Because HS/PRS providers cannot access SIRs, the case manager must send email copies to the provider.)
- *UAC Case Review*
- *ISP*
- For category 2A/B and 3 cases, information about the biological parents' or legal guardians' consent for release and/or provision of *Letter of Designation for Care of a Minor*
- Any additional assessments, including psychological assessments, medical records, and additional documentation on the UAC related to the release assessment (e.g., juvenile delinquency records)⌖🗒✓⌖✉

## Quick Glance: FFS Approval for Discretionary Home Studies

In order to recommend a discretionary homes study, the case manager and case coordinator must have a reasonable expectation that results of the home study process (i.e., home visit, face-to-face interviews with the potential sponsor and household members) will provide additional information, other than what has already been gathered via the sponsor assessment process, which will mitigate concerns. Care providers should only request home studies for potentially viable sponsors. Concerns related to moving violations and DUI/DWIs (unless there are multiple charges in a relatively short period) unconnected to a well-founded child welfare concern are not to be used as the underlying basis for a discretionary home study.

The home study must focus on potential sponsor's ability to appropriately care for the UAC and the sponsor's ability to ensure the safety and well-being of the UAC.

The case coordinator elevates the recommendation to perform a discretionary home study to the FFS after justification for the home study recommendation has been documented in the Release Request as "Conduct Home Study—Discretionary."

If the FFS or case coordinator requests additional information, the case manager and/or case coordinator must respond within **1 business day**. If needed, the FFS may staff the case with the FFS supervisor.

The FFS sends their determination in writing within **1 business day** to the case coordinator and case manager.

5. When a case has a home study referral, the navigation tab on the UAC Portal includes a HS and PRS tab which is used by the HS/PRS provider to manage cases. See **Figure 2.8 HS and PRS Tab**.

The home study provider selects cases from the National HS/PRS Referral List by clicking the accept button in the UAC Portal's Referral Tab. (This moves the referral from the "waiting" list to the accepting provider's  "active" list until the home study is completed.) 🖰

**Figure 2.8 HS and PRS Tab**



**NOTE**: Each Friday, the home study provider must submit their active HS/PRS case list to **DCS_HSPRS@acf.hhs.gov**. The home study provider reviews all cases for duplication of services on the National Network Call on Tuesdays at 2:00 p.m. EST. If duplication is found, the providers reach a consensus to determine which provider will continue with the case. 🖰⏱✉☎

6. The home study provider contacts the care provider to confirm acceptance and request missing (if any) referral documents (including SIRs). 🖰✉

7. The portal automatically removes UAC who turn 18 years of age while on the referral wait list because the UAC are no longer eligible for services. 📖🖰

8. **Within 2 business days of the home study provider's referral acceptance**, the home study provider reviews the *Release Request* and staffs the case with the case manager, as needed. ⏱📄

9. **Within 10 business days of acceptance**, the HS/PRS provider uses the *Home Study Assessment Report* template to report findings of the home study and upload the template into the UAC Portal including a recommendation to the case manager. ⏱📄🖰

10. The HS/PRS provider must submit any requests to extend the home study due date **beyond 10 business days** or to cancel a home study to the FFS for approval via email. Possible criteria for extension can include:
    - Additional household members moved in after the referral.
    - Concerns about additional household members who were not present at the home visit.
    - Inability for the provider to schedule a home visit due to the sponsor's schedule. ⏱✉

11. If the case manager learns new information after the home study provider has submitted their final report, the FFS has the authority to request a home study addendum to the original home study provider to gather more information for an informed release decision. Care providers must go through their FFS to request a home study addendum. The FFS may request an addendum any time after the final home study report has been submitted, but in some circumstances, it may be necessary to request a new home study if the sponsor's circumstances have significantly changed or if the home study was completed over a year prior to the current date.

Upon request by the FFS, the home study provider has **10 business days** to submit the addendum to the UAC Portal. The provider may only request one addendum per home study without FFS supervisor approval. ☺✉☝

**NOTE:** Home studies are only **valid for one year**. ☺

## 2.4.3 Additional Questions and Answers on This Topic

📖 **See Section 2.4.3 of the UAC Policy Guide**

## 2.5 Sponsorship Assessment Background Check Investigations

📖 **See Section 2.5 of the UAC Policy Guide**

### OVERVIEW

ORR requires background checks for all potential sponsors, adult members of the household, and adult caregivers identified in sponsor care plans (adult caregivers). This section describes the required background checks based on sponsor category and other factors, the responsible parties for completing and reporting the results, and notifications and other follow up steps to ensure safety. All potential sponsors, adult household members, and adult caregivers must undergo a public records background check of criminal history and sex offender registry databases. Sponsors in Categories 2B and 3, as well as some Category 1 and 2A sponsors, adult household members, and adult caregivers require fingerprint background checks that are processed through Federal partners.

| Key Players | Responsibilities |
|---|---|
| FFS | Reviews all fingerprint checks and provides guidance as to whether to continue assessment of a particular sponsor in light of check results. |

| Case coordinator | Makes recommendations regarding safety planning and child welfare recommendations. |
|---|---|
| Case manager | Conducts Public Records Checks (an Internet Criminal Public Records Check and Sex Offender Registry Check) for all potential sponsors, adult household members, and adult caregivers (individuals identified by undocumented sponsors who will take over the care of the UAC if the sponsor is deported or leaves the United States). Conducts State Criminal History Repository Checks and/or Local Police Checks, as needed. |
| HHS Program Support Center, Division of Children's Services (PSC/DCS) | Conducts all Non-Public Records Checks – FBI National Criminal History Check (Fingerprint Check), FBI Biometric Services Unit (FBI/BSU) Civil Name Check, and Child Abuse and Neglect (CA/N) Check – on behalf of ORR. |

| Related Forms/Instruments | Used By |
|---|---|
| *Authorization for Release of Information* | Case manager, lead case manager, PSC/DCS |
| *Sponsor Check Coversheet* | Case manager, lead case manager, PSC/DCS |
| *CA/N Check Coversheet* | Case manager, lead case manager, PSC/DCS |
| *CA/N Check State Instructions* | Case manager, lead case manager, PSC/DCS |
| CA/N Check State Forms | Case manager, lead case manager, PSC/DCS |

## 2.5.1 Background Check Requirements

 **See Section 2.5.1 of the UAC Policy Guide**

### PROCEDURES

1. The case manager notifies all potential sponsors that an Internet Criminal Public Records Check and Sex Offender Registry Check will be performed for all sponsors, adult household members, and adult caregivers. The case manager also notifies the potential sponsor of any additional background checks that are required by ORR (see **Quick Glance: Overview of Background Checks Requirements**). The case manager advises adults to be truthful about criminal backgrounds before results are obtained as a lack of

information or explanation from the potential sponsor may affect the release decision. ☎/✉ 📖

**NOTE:** Adult caregivers must be entered in the Sponsor Information section of the UAC Portal. The adult caregiver should be entered under Household Information because the UAC Portal does not have a separate area to enter adult caregivers. The case manager goes to the Sponsor Information section and 1) adds a note in the Comments box indicating the category and noting whether the individual is also a household member and 2) records the name under the Household Information section. See **Fig. 2.9 Creating a Record for the Adult Identified in the Sponsor Care Plan**.

### Fig. 2.9 Creating a Record for the Adult Identified in the Sponsor Care Plan



| Quick Glance: Overview of Background Check Requirements | | | |
|---|---|---|---|
| **Type of Background Check** | **Purpose** | **Persons Checked** | **When Performed** |
| Public Records Check | Identifies arrests or convictions of sponsors, adult household members, or others. If a check reveals a criminal record or safety issue, it will be used to evaluate the sponsor's ability to provide for a child's physical and mental well-being. | Potential Sponsors in Categories 1-3.<br><br>Non-sponsor adult household members and adult caregivers identified in a sponsor care plan. | In all cases. |
| Sex Offender Registry Check, conducted through the U.S. | Identifies sponsors and others that have been adjudicated as sex | Potential Sponsors in Categories 1-3. | In all cases. |

| | | | |
|---|---|---|---|
| Department of Justice National Sex Offender Public Website | offenders through a national search and, if available, a local public registry search. | Non-sponsor adult household members and adult caregivers identified in a sponsor care plan. | |
| FBI National Criminal History Check, based on digital fingerprints or digitized paper prints | Determines whether a sponsor or adult household member (as applicable) has a criminal history, has a profile in DHS IDENT, has been convicted of a sex crime, or has been convicted of other crimes that compromise the sponsor's ability to care for a child. | Potential Sponsors in Category 1 and 2A. | Where a public records check reveals possible disqualifying factors under 2.7.4; or where there is a documented risk to the safety of the unaccompanied alien child, the child is especially vulnerable, and/or the case is being referred for a home study. |
| | | Potential Sponsors in Categories 2B and 3. | In all cases. |
| | | Non-sponsor adult household members and adult caregivers identified in a sponsor care plan. | Where a public records check reveals possible disqualifying factors under 2.7.4; or where there is a documented risk to the safety of the unaccompanied alien child, the child is especially vulnerable, and/or the case is being referred for a home study. |

| | | | |
|---|---|---|---|
| Child Abuse and Neglect (CA/N) Check, obtained on a state by state basis as no national CA/N check repository exists | Checks all localities in which the sponsor or household member has resided in the past 5 years. | Potential Sponsors in Categories 1-3. | In cases that require a home study, and cases where a special concern is identified. |
| | | | |
| | | Non-sponsor adult household members and adult caregivers identified in a sponsor care plan. | In any case where a sponsor is required to undergo a CA/N check. |
| State Criminal History Repository Check and/or Local Police Check | Assists in locating police or arrest records, or other criminal offense details, as needed. | Potential Sponsors in Categories 1-3. Non-sponsor adult household members and adult caregivers identified in a sponsor care plan. | Used on a case-by-case basis when there is an unresolved criminal arrest or issue that is still in process. |

2. The potential sponsor should advise the case manager immediately if he or she has any record of criminal charges, sexual offenses, or child abuse/neglect charges and if they are aware of any record of criminal charges, sexual offenses, or child abuse/neglect charges for their adult household members and/or adult caregiver. ☎/⌧

3. Based on the information provided, the case manager determines what types of background checks are required for the potential sponsor, adult household members, and adult caregiver (See **Quick Glance: Overview of Background Checks Requirements**). The case manager should include the case coordinator and FFS in cases that involve criminal history self-disclosures. 📖⌧

   **NOTE:** If a potential sponsor, adult household member, or adult caregiver refuses to complete a required background check, the case manager elevates the case to the FFS who will staff the case with the FFS supervisor to determine whether to deny the release based on current ORR policy and any other relevant factors. FFS notifies the case manager of the final decision. ⌧

## Public Records Checks (Internet Criminal Public Records Check and Sex Offender Registry Check)

1. The case manager conducts an **Internet Criminal Public Records Check** for all potential sponsors, adult household members, and adult caregivers.

2. The case manager conducts a **national and local/state Sex Offender Registry Check** through the U.S. Department of Justice NSOPW and local/state Public Registry Sites for all potential sponsors, adult household members, and adult caregiver.

   The check must include the following:

   - Name checks (potential sponsor, adult household members, adult caregiver)

   - Address searches (using the current address that has been verified) within a one mile radius for all names – potential sponsor, household members and adult caregiver). This address search is completed to determine if there are sex offenders at the address or in close proximity to the address (**NOTE:** Some state Sex Offender Registries do not include an address check.  In these cases, document that the attempt was made and what check was accomplished.) The case manager should take the results into consideration in assessing the safety plan and safety of the release.

     Local/state Sex Offender Registry Checks for all states in which the potential sponsor, adult household members, and adult caregiver resided over their entire adult lifetime. 🖑🖑

3. The case manager uploads the results of the public records checks (screenshots, descriptions, dates, etc.) in the UAC Documents section in the UAC Portal and completes the case manager section of the Background Check Table. The case manager staffs the case with the case coordinator in the event there is a "hit" in the search.  (See **Quick Glance: How to Document Background Checks in UAC Portal**). 🖑✉

   **NOTE:** Public records check results are valid for 90 days from the date results are received, as documented in the Date Results Received column of the Background Check Table in the UAC Portal. If the UAC has not been approved for release before the public records check results expire, the case manager must reprocess the checks, update the Background Check Table in the UAC Portal, and upload the results into the UAC Documents section of the UAC Portal.

   **NOTE:** ORR does not require a signed *Authorization for Release of Information* from an individual unless they are submitting fingerprints. However, many public records vendors have terms of use agreements that do require an authorization. In those

instances, an *Authorization for Release of Information* should be obtained from the adult household member or adult caregiver.

| Quick Glance: How to Document Background Checks in UAC Portal |
| --- |

Go to the Background Check table in the Sponsor Information section of the UAC Portal; for both the sponsor and the household member(s) check off which background checks were requested.

For non-public records checks, do not enter data into the Date Requested, Results Received, and Results columns – PSC/DCS enters this information.

NOTE: If you do not check off which background checks were requested under the Check Requested column for non-public records checks, PSC/DCS will be unable to record the results of those checks.



# Non-Public Records Checks (Performed by PSC/DCS)

**NOTE:** PSC/DCS conducts regular in depth trainings related to non-public records checks and fingerprinting instructions. ORR headquarters staff work with CFS, FFS, and POs to notify

programs about upcoming trainings. To request training from PSC/DCS, contact the operations specialist listed on the PSC/DCS Contact List.

**FBI NATIONAL CRIMINAL HISTORY CHECK (FINGERPRINT CHECK)**

1. The case manager obtains an *Authorization for Release of Information (ARI)* and a copy of a government issued photo ID (front and back) for all relevant parties (see **Quick Glance: List of Acceptable Proof of Identity Documents**).

   **NOTE:** If needed, some ORR digital fingerprint sites offer in-person assistance completing the *FRP* and/or *ARI* (see **Appendix 2.14 Fingerprinting Requirements**). 🗐

2. The case manager assists the potential sponsor, adult household member, and/or adult caregiver in scheduling a fingerprint appointment at an ORR digital fingerprint site to occur **within 3 business days of receiving the signed *ARI* and government issued photo ID** (see **Appendix 2.14 Fingerprinting Requirements**).

3. The case manager completes the Check Requested field in the Background Check table in the Sponsor Information section of the UAC Portal (see **Quick Glance: How to Document Background Checks in UAC Portal**). 🖑

4. The case manager fully completes the *Sponsor Check Coversheet*. If any of the following conditions apply the case manager documents the condition in the comments section of the *Sponsor Check Coversheet*:

   - If the case manager is requesting the fingerprint check be expedited, the reason must be noted (see **Quick Glance: Expediting Fingerprint Check Results** for full requirements).

   - If the case manager believes the individual previously completed a fingerprint check, that must be noted and the approximate date should be included.

   - If the individual is the sponsor or household member for more than one UAC, the name and A# of those UAC must be included. 🗐

   🗐 **Appendix 2.7** is the *Sponsor Check Coversheet.*

---

**Quick Glance: Expediting Fingerprint Check Results**

Case managers may request expedited processing for Fingerprint Checks under the following circumstances:

- Imminent age out (UAC aging out in 60 days or less)
- Legal issue

---

- UAC medical issue
- Cat 1 or 2A cases that require fingerprint check results before the UAC may be released (see **Quick Glance: Release of UAC Prior to Receiving Fingerprint Check Results**)

To request expedited processing and allow PSC/DCS to appropriately prioritize expedited cases, the case manager must include "AGE OUT [age out date]:" on the subject line of the email for any age out cases and "RESULTS REQUIRED:" for any cases that require results before the UAC can be released. For all other cases, the case manager must include "REQUEST TO EXPEDITE:" on the subject line of the email (see **Email Template: Fingerprint Check Requests**). The case manager must notate the following in the Comments section of the *Sponsor Check Coversheet*:

- Basis for the request
- Date by which results are needed
- If there are other items pending (e.g., home study) that would not allow for immediate release of the UAC once fingerprint check results have been received

PSC/DCS will prioritize all cases for which expedited processing is requested that fall under the circumstances listed above, but cannot guarantee results will be available by the requested date.

If the case manager requests expedited processing for any circumstance not listed above, PSC/DCS will elevate the request to ORR HQ for approval.

5. The case manager reviews the *Sponsor Check Coversheet*, *ARI*, government issued photo ID, and paper fingerprint cards (if applicable) for accuracy, completeness, and legibility (see **Appendix 2.9 Background Check Submission Requirements**).

6. If paper fingerprint cards are used, the case manager uses an express mail service (e.g., UPS, FedEx) to send the following to PSC/DCS for **next morning** delivery:

- Two original fingerprint cards (ORR does not collect Social Security Numbers and this field should be blacked out – see **Appendix 2.13 Fingerprint Card**)
- Copy of the *Sponsor Check Coversheet*
- Copy of the *Authorization for Release of Information* (pages 1-5)
- Copy of the subject's government issued photo ID

7. The case manager formally requests the Fingerprint Check using the email template below.

✉ **Email Template: Fingerprint Check Requests**

| | |
|---|---|
| **From:** | Case Manager |
| **To:** | SponsorCheck.os@hhs.gov |
| **Subject:** | Fingerprint Check Request for [sponsor's initials] |

- If requesting expedited results for an age out, add "AGE OUT [age out date]:"
- If the case requires results before the UAC may be released, add "RESULTS REQUIRED:"
- If requesting expedited results for any other reason, add "REQUEST TO EXPEDITE:"

**Attachments:**
- *Sponsor Check Coversheet*
- *Authorization for Release of Information* (pages 1-5)
- Copy of government issued photo ID (If individual is claiming U.S. citizenship, a U.S. Birth Certificate, Certificate of Naturalization or Certificate of Citizenship, or U.S. Passport is preferable)

**NOTE:** All of the documents listed above as attachments must be submitted to PSC/DCS together. The documents must be merged into one PDF.

Case managers must password protect any Personally Identifiable Information (PII) that is sent to PSC/DCS. The *Sponsor Check Cover Sheet, ARI*, and photo ID must be password protected. The body of the email includes the message that the password for the attached documents will be sent separately.  A second email should include the universal UAC Password which should be used by all care providers and ORR staff and contractors. Do not include PII in follow up emails.

8. The case manager determines if the UAC is eligible for release prior to receipt of background check results (see **Quick Glance: Release of UAC Prior to Receiving Fingerprint Check Results**).

    **NOTE:** The Case Manager should staff eligible cases with the FFS, or notify the FFS of an eligible case via email, as soon as possible. The Case Manager and FFS document in the *Release Request* that the case is being processed without waiting for fingerprint results because the case falls under the "December 2018 Operational Directive."

**Quick Glance: Release of UAC Prior to Receiving Fingerprint Check Results**

A UAC may be recommended and approved for release without obtaining the Fingerprint Check results if:

- The sponsor is 2B

- A public records check <u>did not</u> reveal possible disqualifying factors under Section 2.7.4;
- There is <u>no</u> documented risk to the safety of the unaccompanied alien child and the child is <u>not</u> considered especially vulnerable;
- The case is <u>not</u> being referred for a home study;
- All family reunification application, assessments, documentation, and other required background check results (with the exception of CA/N Check results – see **Quick Glance: Release of UAC Prior to Receiving CA/N Check Results**) needed to approve a safe release have been received and reviewed by the case manager;
- The Fingerprint Check was requested from PSC/DCS following ORR procedures, including submission of the *Sponsor Check Coversheet*, *Authorization for Release of Information*, photo ID, and fingerprints (digital or paper); and
- Receipt of the Fingerprint Check results is the only step preventing a release recommendation.

**Derogatory Information Received After Release**
In any instance where a UAC is released and possible derogatory information is later discovered after Fingerprint Check results are received, the FFS makes a case-by-case determination on what follow up is required, if any. State CPS or law enforcement may be notified if there is determined to be any immediate danger to a child's welfare. The FFS may also attempt to refer the case for post-release services.

**Unclassifiable Fingerprints**
In any case where a UAC is released and the fingerprints results are unclassifiable, the case manager must make every attempt to have the individual submit a new set of fingerprints, either at an ORR digital fingerprint site or via paper fingerprint cards. The case manager must inform PSC/DCS **within two weeks of receiving the fingerprint results** whether the individual will submit new fingerprints. If the case manager informs PSC/DCS that an individual refuses to submit new fingerprints or for any case in which PSC/DCS has not received new fingerprints **within 30 days of sending fingerprint results**, PSC/DCS will rerun the original set of fingerprints. If the original set of fingerprints remain unclassifiable (this is the most probable outcome), PSC/DCS will run an FBI/BSU Civil Name Check. ☺

**Incomplete Fingerprint Cards**
In any case where a UAC is released and an incomplete set of paper fingerprint cards was sent to PSC/DCS, the case manager must provide the missing information **within one week of receiving the request** from PSC/DCS. Fingerprint Checks cannot be run using incomplete fingerprint cards. If PSC/DCS does not receive the missing information **within 30 days of their initial request**, PSC/DCS will cancel the entire Fingerprint Check request and inform the case manage and assigned FFS via email. ☺

9. PSC/DCS reviews incoming Fingerprint Check requests for accuracy, completeness, and legibility. If any required documents are missing or the request does not comply with the requirements noted in **Appendix 2.9 Background Check Submission Requirements**, PSC/DCS rejects the submission and informs the case manager that the request must be resubmitted. PSC/DCS processes background checks in the order in which they are received and any requests that need to be resubmitted fall to the bottom of the queue.

10. PSC/DCS completes the Date Requested, Date Results Received, and Results fields in the Background Check table in the Sponsor Information section of the UAC Portal when the Fingerprint Check is complete and, if applicable, uploads criminal history reports to ORR Connect (SharePoint website).

11. PSC/DCS emails a spreadsheet containing Fingerprint Check results to the designated ORR staff once a day. The spreadsheet includes the following:

    - FBI National Criminal Check result (i.e., whether the individual **appears clear,** the case was **referred to the assigned FFS**, or the individual had **unclassifiable fingerprints**)

    - Confirmation results were entered into the UAC Portal

    - Whether  criminal history record was uploaded into ORR Connect

    **NOTE:** For expedited cases, PSC/DCS emails results directly to the case manager and copies the FFS instead of including the results in the spreadsheet (See **Quick Glance: Expediting Fingerprint Check Results**). ✉

12. The designated ORR staff emails the Fingerprint Check results received from PSC/DCS individually to each care provider facility and copies the assigned FFS. ✉

13. The care provider distributes Fingerprint Check results received from the designed ORR staff to the assigned case managers. ✉

    **NOTES**:
    - If the prints are unclassifiable, the case manager assists the individual in scheduling a fingerprint appointment at an ORR digital fingerprint site so that a second set of prints may be obtained, even if the UAC has already been released. If the individual is unable to travel to an ORR digital fingerprint site, then paper fingerprint cards may be used (see **Appendix 2.14 Fingerprinting Requirements**).

    - ORR federal staff and PSC/DCS do not release criminal history records produced by FBI National Criminal History Checks to ORR grantees, ORR contractors, third party reviewers, outside organizations, or individuals. ORR does not confirm or deny the existence of the records and does not share the content of a record verbally or in writing**.**

- Fingerprint Check results are valid for 270 days from the date results are received, which is documented in the Date Results Received column of the Background Check Table in the UAC Portal. If the UAC is not approved for release before fingerprint check results expire, the sponsor, adult household member, and/or adult caregiver must be re-fingerprinted and a new fingerprint check must be requested from PSC/DCS. Please see **Appendix 2.9 Background Check Submission Requirements** for additional information on requesting background checks for individuals who have previously completed a background check.

## Quick Glance: Requesting Status Updates for Background Check Results

**FINGERPRINT CHECKS**

Case managers may email PSC/DCS at **SponsorCheck.os@hhs.gov** to request a status update on their Fingerprint Check request. However, unless the case has been expedited, the case manager must wait at least seven business days from the time they emailed a complete Fingerprint Check request to PSC/DCS (or from the time when PSC/DCS received paper fingerprint cards if digital fingerprints were not taken) before asking for a status update.

During periods of influx or other circumstances where there is a delay in processing Fingerprint Checks, PSC/DCS may direct case managers to wait for a longer period of time before requesting a status update. In order to avoid exacerbating situations in which there are processing delays, case managers must follow any such guidance provided by PSC/DCS.

To request a status update, case manager must enter "Status Update Request for [sponsor/household member's initials]" in the subject line of the email and include the following information in a separate password-protected document:

- For All Requests: sponsor/household member name and date of birth, UAC name and A#
- For Digital Fingerprints: ORR digital fingerprint site name, date fingerprinted
- For Paper Fingerprints: courier name and tracking number, shipping date

**CA/N CHECKS**

<u>Lead</u> case managers (or designated care provider staff member) may email PSC/DCS at **CANchecks.os@hhs.gov** to request a status update on CA/N Check results after they receive notification the CA/N check request was accepted by PSC/DCS. However, the lead case manager must wait until after the state's processing time before asking for a status update (e.g., if the state's processing time is 45 days, the lead case manager must wait 45 days before requesting a status update). State processing times are found in the *CA/N Check State Form Instructions*.

To request a status update, the <u>lead</u> case manager (or designated care provider staff member) must enter "Status Update Request for [sponsor/household member's initials]" in

the subject line of the email and include the following information in a separate password-protected document:

- Sponsor/household member name and date of birth
- UAC name and A#
- State name(s) for which the update is being requested

## FBI/BSU CIVIL NAME CHECK

PSC/DCS automatically runs an FBI/BSU Civil Name Check if fingerprints remain unclassifiable after a second attempt.

1. PSC/DCS completes the Date Requested, Date Results Received, and Results fields in the Background Check table in the Sponsor Information section of the UAC Portal when the Fingerprint Check is complete and, if applicable, uploads criminal history reports to ORR Connect (SharePoint website).

2. PSC/DCS enters FBI/BSU Civil Name Check results in the Fingerprint Check results spreadsheet that is emailed to the designated ORR staff once a day. PSC/DCS indicates in the notes column of the spreadsheet that an FBI/BSU Civil Name Check was run because fingerprints were unclassifiable after a second attempt.

   **NOTE:** For expedited cases, PSC/DCS sends results directly to the case manager and copies the FFS instead of including the results in the spreadsheet (See **Quick Glance: Expediting Fingerprint Check Results**). PSC/DCS indicates in the body of the email that an FBI/BSU Civil Name Check was run because fingerprints were unclassifiable after a second attempt.

3. The designated ORR staff emails the FBI/BSU Civil Name Check results received from PSC/DCS individually to each care provider facility and copies the assigned FFS.

4. The care provider distributes FBI/BSU Civil Name Check results received from the designed ORR staff to the relevant case managers.

5. For cases in which the individual appears clear, the assigned FFS elevates the case to the FFS supervisor for approval to use FBI/BSU Civil Name Check results in lieu of fingerprint check results.

6. If criminal history records are uploaded to ORR Connect, the assigned FFS follows procedures in the section below **Case Referrals to FFS: Case Manager and FFS Roles and Responsibilities**.

   **NOTE:** FBI/BSU Civil Name Check results are valid for 270 days from the date results are received, which is documented in the Date Results Received column of the Background

Check Table in the UAC Portal. If the UAC is not been approved for release before fingerprint check results expire, the sponsor, adult household member, and/or adult caregiver must be re-fingerprinted and a new fingerprint check must be requested from PSC/DCS. Please see **Appendix 2.9 Background Check Submission Requirements** for additional information on requesting background checks for individuals who have previously completed a background check.

## CHILD ABUSE AND NEGLECT (CA/N) CHECK

PSC/DCS conducts CA/N checks in coordination with individual state and/or local child abuse and neglect central registries. The length of time it takes to receive results varies by state.

Whenever possible, the CA/N check request must be submitted to PSC/DCS concurrently with the request for the FBI National Criminal History Check.

1. Immediately upon knowing that a CA/N check is required, the case manager completes the Check Requested field in the Background Check table in the Sponsor Information section of the UAC Portal (see **Quick Glance: How to Document Background Checks in UAC Portal**).

2. The case manager completes the *CA/N Check Coversheet*. The following must be noted in the comments section:
   - If the case manager believes the individual previously completed a CA/N Check, that must be noted and the approximate date should be included.
   - If the individual is the sponsor or household member for more than one UAC, the name and A# of those UAC must be included.

   **Appendix 2.8** is the *CA/N Check Coversheet*.

3. The case manager assists the sponsor, adult household members, and adult caregiver (if applicable) in completing the CA/N Check state form(s) for each state in which the individual has resided in the past five years (see **Quick Glance: CA/N Check State Forms**).

### Quick Glance: CA/N Check State Forms

**DO NOT SUBMIT ANY STATE FORMS DIRECTLY TO A STATE OR LOCAL ENTITY. All CA/N checks must be requested through PSC/DCS.**

The case manager must ensure that they use the current version(s) of the relevant state form(s) and adhere to the instructions provided in the current version of the *CA/N Check State Instructions* document (found on the UAC Portal homepage). Note that some states:

- Only provide results directly to the subject of the check. In this case, the case manager, assists the potential sponsor, household member, and/or adult caregiver in requesting the CA/N check and obtains results directly from the subject of the request and emails them to PSC/DCS.

- Do not provide results at all. In these cases, the CA/N check must be requested from PSC/DCS.

- Require the state form to be completed online. When PSC/DCS observes these states listed in the five year address history section of the *ARI*, they will automatically start the process and contact the case manager with further instructions.

Do not change any fields in the form(s) that PSC has already completed.

Photographs of state forms are not acceptable. Any forms emailed to PSC must be scanned (mobile scanning apps that upload forms into pdf are acceptable). If the sponsor and/or household member does not have access to a scanner they may mail the form to their case manager.

4. The case manager reviews the *CA/N Check Coversheet*, *ARI*, government issued photo ID, and state form(s) for accuracy, completeness, and legibility (see **Appendix 2.9 Background Check Submission Requirements** and **Quick Glance: CA/N Check State Forms**).

5. The case manager submits the *CA/N Check Coversheet*, *ARI*, government issued photo ID, and state form(s) to the lead case manager (or designated care provider staff member) for a secondary quality control check.

6. The lead case manager (or designated care provider staff member) reviews each CA/N check request to ensure that the request:

   - Contains all of the following documents:

     o *CA/N Check Coversheet*

     o *Authorization for Release of Information*

     o Copy of government issued photo ID

     o State form(s) for each state in which the individual resided in the past five years

   - Complies with the requirements in **Appendix 2.9 Background Check Submission Requirements** and **Quick Glance: CA/N Check State Forms**.

7. No more than once a day, the lead case manager (or designated care provider staff member) formally requests CA/N checks for all cases they have reviewed using the email template below. ✉ 📋

---

## ✉ Email Template: CA/N Check Requests

| | |
|---|---|
| **From:** | Lead Case Manager (or designated care provider staff member) |
| **To:** | **CANchecks.os@hhs.gov** |
| **Cc:** | Case Manager(s) |
| **Subject:** | CA/N Check Requests for [date] from [care provider name] |

**Body:**
- Additional information required by the state(s), if applicable
- If original document(s) were mailed to PSC, include:
  - Date mailed
  - Courier name (e.g., UPS, FedEx)
  - Tracking number

**Attachments:** For each request:
- *CA/N Check Coversheet*
- *Authorization for Release of Information*
- Copy of government issued photo ID
- State form(s) for each state in which the individual resided in the past five years (includes copies any forms for which the original mailed to PSC)
- Additional documents required by the state(s), if applicable

**NOTE:** All of the documents listed as attachments above must be submitted to PSC/DCS together. The documents must be merged into a single PDF by individual subject. Documents may be further consolidated if desired (i.e., one PDF may contain documents for more than one individual).

Lead case managers (or designated care provider staff members) must password protect any Personally Identifiable Information (PII) that is sent to PSC/DCS. The *CA/N Check Cover Sheet, ARI*, photo ID, and CA/N check state form(s) must be password protected. The body of the email includes the message that the password for the attached documents will be sent separately.  A second email should include the universal UAC Password which should be used by all care providers and ORR staff and contractors. Do not include PII in follow up emails.

---

8. Once the CA/N check request is submitted to PSC/DCS by the lead case manager (or designated care provider staff member), the CA/N check is considered initiated and the case manager may proceed with the release request process (see **Quick Glance: Release of UAC Prior to Receiving CA/N Check Results**).

9. PSC/DCS reviews incoming CA/N check requests for accuracy, completeness, and legibility and notifies the lead case manager (or designated care provider staff

members) whether their request has been accepted or rejected. Rejected requests must be resubmitted following PSC/DCS instructions.

10. PSC/DCS submits the CA/N check requests to the applicable states.

   **NOTE:** If any required documents are missing or the request does not comply with the requirements noted in **Appendix 2.9 Background Check Submission Requirements** and **Quick Glance: CA/N Check State Forms**, PSC/DCS will reject the submission and inform the lead case manager that the request must be resubmitted. PSC/DCS processes background checks in the order in which they are received and any requests that need to be resubmitted will fall to the bottom of the queue.

11. PSC/DCS notifies the lead case manager (or designated care provider staff member) when the CA/N check is complete and enters the notification date and results in the Background Check table in the Sponsor Information section of the UAC Portal. The email notification to the lead case manager (or designated care provider staff member) includes one of the following statements:

   - No record — The individual does not have a history of child abuse and neglect

   - Unsubstantiated allegations — The individual has been involved with CPS, but the allegations were not necessarily confirmed (the investigation history is not always saved in States Central Registries)

   - Record/substantiated allegations — The sponsor has a history of child abuse or neglect (if a record is available to PSC/DCS, it will be provided)

12. The lead case manager (or designated care provider staff member) forwards the CA/N Check results to the case manager.

---

### Quick Glance: Release of UAC Prior to Receiving CA/N Check Results

Release of a UAC may be recommended and approved without obtaining the CA/N Check results if:

   - All family reunification application, assessments, documentation, other required background check results, and home study results (if applicable) needed to approve a safe release have been received and reviewed by the case manager;

   - Receipt of the CA/N Check results is the only item delaying release; and

   - The CA/N Check was <u>NOT</u> requested because a special concern was identified.

**If the CA/N Check was requested due to a special concern, the UAC must not be released until the CA/N Check results are received.**

---

> Note that even if the case manager anticipates that CA/N check results will not be received until after the UAC is released, they must still request the CA/N check from PSC/DCS prior to submission of the *Release Request*. This includes submission of all required paperwork (*CA/N Check Coversheet, Authorization for Release of Information,* Photo ID, and state form(s). Sending an email without paperwork is not sufficient.

**PROCESSING SUBSTANTIATED CA/N CHECK RESULTS AFTER A UAC HAS BEEN RELEASED**

If a UAC is released prior to receipt of the CA/N check results and substantiated allegations are found, the case manager **immediately** emails the FFS who approved the *Release Request* based on the email template below. ☺ ✉

| ✉ **Email Template: Substantiated CA/N Check Results After UAC Release** |
|---|
| **From:**　　　Case Manager |
| **To:**　　　　FFS who approved *Release Request* for UAC |
| **Cc:**　　　　PRS Provider, if applicable |
| **Subject:**　　Released UAC with CA/N Findings [last four digits of the A#] |
| |
| **Attachments:**　In a separate password protected document(s): |
|     • UAC name and A# |
|     • UAC discharge date |
|     • City/state where UAC resides |
|     • Care provider name UAC released from |
|     • Sponsor category |
|     • Word document of the original PSC/DCS CA/N check result email |

The FFS who approved the *Release Request* for the UAC reviews the finding and consults with his/her FFS supervisor to determine next steps and notifications, including those to law enforcement or to CPS. 📖☎

## Cases that Appear Clear (Not Referred to the FFS)

1. If a subject of a background check by PSC/DCS has disclosed a criminal history that is a safety concern for the UAC, but PSC/DCS did not refer the case to the FFS, the case manager elevates the case to the FFS for further guidance and review.✉

2. The case manager uploads the email and/or Fingerprint Check results spreadsheet from PSC/DCS into the portal as documentation. ✉⌖

## Case Referrals to FFS: Case Manager and FFS Roles and Responsibilities

1. If the FBI Check column of the Fingerprint Check results spreadsheet indicates that the case was referred to the assigned FFS, **within 72 hours**, the case manager emails the FFS and copies the case coordinator using the below template:

| ✉ Email Template: Case Referrals to FFS | |
|---|---|
| **From:** | Case Manager |
| **To:** | FFS |
| **Cc:** | Case Coordinator |
| **Subject:** | Case Referred to FFS [sponsor's initials and last four digits of UAC A#] |
| | |
| **Attachments:** | <u>In a separate password protected document(s):</u> |
| | • Sponsor and UAC name |
| | • Sponsor category and the relationship between the sponsor and the UAC |
| | • Any criminal history self-disclosed by the sponsor and the supporting documents, if obtained |
| | • Any criminal history found through the Internet Criminal Public Records Check or the Sex Offender Registry Check |
| | • Word document of the original Fingerprint Check results email and/or the Fingerprint Check results Excel spreadsheet |

**NOTE:** When emailing in situations where an FFS is providing temporary coverage, the case manager forwards the email to the covering FFS and copies the assigned FFS and case coordinator. ⏱✉

2. The FFS evaluates the Fingerprint Check results in conjunction with any other criminal history records, self-disclosed criminal history, and supporting documents provided by the case manager to determine how the sponsor's criminal history impacts the sponsor's ability to care for the UAC's mental and physical well-being, the overall potential risk to the UAC, and if any of the Criteria for Release Denial apply to the case (see **Section 2.7.4 UAC Policy Guide**).📖

3. Based on his/her evaluation, the FFS responds to the case manager's email as follows:

   - Instructs the case manager to proceed with the safe and timely release process with any clarifying conditions, such as additional information from the sponsor.

   - If the case meets requirements for a TVPRA mandatory home study category (See **Section 2.4.2 UAC Policy Guide**), the FFS instructs the case manager to submit the *Release Request* with a recommendation to perform a home study. **NOTE:** The FFS must not provide any information about the existence or contents of any FBI background check result to the case manager.

- If any of the "will deny" criteria match the Criteria for Release Denial (see **Section 2.7.4 UAC Policy Guide**) or the FFS determines that a release must be denied based on the "may deny" criteria, the FFS instructs the case manager to submit the *Release Request* with a recommendation to deny release, citing the specific criteria, and to cancel any other ongoing background checks.

- If there is insufficient information to make a recommendation to deny or to move forward with the release process, the FFS requests additional information and advises the case manager to conduct concurrent planning.

    o The FFS may not contact the potential sponsor directly for additional information.

    o The FFS may not state that the request is based on an FBI background check or mention specific charges/convictions or type of charge/conviction.

    o The FFS may cite a specific location (city, state) and date (e.g., ask the sponsor if he/she failed to mention something that happened in Houston, Texas in June 2014.)

- If the FFS, after consultation with the FFS supervisor, decides to postpone a decision as to whether to continue the process with a particular sponsor when the sponsor or adult household member has been charged with, but not convicted, of a crime until disposition has been reached on the criminal charges, then the FFS instructs the case manager to conduct concurrent planning. 📖✉

4. If the case involved an FBI/BSU Civil Name Check, the FFS determines if:

- The sponsor has submitted their fingerprints;

- The sponsor assessment process is complete;

- There are no concerns about the sponsor and the potential sponsor does not require a home study; and

- Results remain unclassifiable after a second submission/attempt.

The FFS then informs the case manager whether they have FFS approval to use the results of the FBI/BSU Civil Name Check in lieu of the FBI National Criminal History Check results. ✉

## 2.5.2 Results of Background Checks on Release Decisions

📖 **See Section 2.5.2 of the UAC Policy Guide**

## 2.5.3 Commonly Asked Questions on the ORR Background Check Process

📖 **See Section 2.5.3 of the UAC Policy Guide**

## 2.6 Sponsor Immigration Status and Release of UAC

📖 **See Section 2.6 of the UAC Policy Guide**

## 2.7 Recommendations and Decisions on Release

📖 **See Section 2.7 of the UAC Policy Guide**

### OVERVIEW

This section covers procedures for all release options for a UAC. These include 1) approve release to a sponsor 2) approve release with post-release services 3) conduct a home study before a final decision can be made 4) deny release request or 5) remand release request (decision pending).

This section also includes procedures for notifying a potential sponsor of a denial and procedures for a Category 1 sponsor to appeal the denial of release.

**NOTE:** A UAC who prevails in a *Flores* bond hearing cannot be denied release based upon the basis that the UAC is danger to the self or others. The fact that the UAC prevailed in the hearing must be included in the *Release Request*.

| Key Players | Responsibilities |
|---|---|
| Case Manager | Works with the Case Coordinator to make release recommendations, including recommendations for home study/post release services, as applicable. |
| Case Coordinator | Works with Case Manager to make release recommendations, including recommendations for home study/post release services as applicable. |
| FFS | Provides guidance on release recommendations for complex cases and reviews Case Manager and Case Coordinator recommendations and makes a final release decision. |

| Related Forms/Instruments | Used By |
|---|---|
| *Release Request* | Case Manager, Case Coordinator, FFS |
| *Release Review Completion Guidance* | Case Manager, Case Coordinator, FFS |
| *Discharge Notification* Form | Case Manager, FFS, DHS |

## PROCEDURES

1. **Within 1 calendar day** of the completion of the FRP documentation, the Case Manager uses the *Release Request Completion Guidance* to complete the requester information, sponsor information, and Case Manager recommendation in the *Release Request*. The Case Manager creates a Word version of the *Release Review Completion Guidance* and copies and pastes it into a *Release Request*. The *Release Request* is generated in the Discharge tab of the UAC Portal. See **Fig. 2.10 Partial Snapshot of *Release Request***. The Case Manager emails the Case Coordinator that the *Release Request* is ready for review.

   **NOTE:** Case Coordinators do not complete the *Release Request* for cases in which the Case Manager is recommending release to the Unaccompanied Refugee Minor (URM) Program. If the Case Manager is recommending release to the URM Program, the Case Manager bypasses the Case Coordinator and emails the FFS directly.

## Fig. 2.10 Partial Snapshot of *Release Request*



📄 **Appendix 2.10** is the Release Request Completion Guidance.

The UAC Case Status page includes a section on the "Release Request" which automatically posts a date when the *Release Request* is updated. See **Fig. 2.11**. 🕐 📄🖱

**Fig. 2.11 UAC Case Status Page: Release Recommendation**

| Release Recommendations | | | |
|---|---|---|---|
| Case Manager Release Request: | Last Updated: | | |
| Case Coordination Release Request: | Last Updated | | |
| ORR Release Request Decision: | Last Updated: | 11/01/2017 | Release Approved: |

If applicable, the Case Manager updates the *UAC Case Review* with any safety planning recommendations and any additional information obtained from a home study. **Fig. 2.12** shows the Case Manager options for release recommendations.

**Fig. 2.12 Case Manager Release Recommendations Options in the *Release Request***



**NOTE:** If the Case Manager needs to cancel a *Release Request* because an individual wants to withdraw his/her application or under other circumstances that occurred after the *Release Request* has been submitted, the Case Manager should click on the cancellation button on the *Release Request*. **Fig. 2.13** indicates the options for the Case Manager under the cancellation reason button. (In order for a case to move to another sponsor once the *Release Request* is withdrawn, the FFS must select the "denial" option and enter 'sponsor withdrawal' in the comments section. FFS should **NOT** "dis-assign" a sponsor because ORR wants to keep a historical record of individuals who have attempted to sponsor UAC. The "dis-assign" option (located on the Sponsor Information tab) is only for instances when an error occurred -- a sponsor was incorrectly assigned to a UAC—and is **only** used by ORR headquarters staff.) 📄🖱

## Fig. 2.13 Case Manager Options for Cancelling a Release Request



2. The Case Coordinator reviews the recommendation **within 1 business day** and updates the *Release Request* with his/her recommendation. The Case Coordinator emails the Case Manager and the FFS that the *Release Request* has been completed and uploads it into the UAC Portal. **Fig. 2.14** shows the Case Coordinator section of the *Release Request* which contains the same options as the Case Manager (including the option to cancel the *Release Request*). ⏲🗐 ⊠✔☝

## Fig. 2.14 Case Coordinator Release Recommendations in the Release Request



3. **Within 1 business day** of receipt of the Case Coordinator's release recommendation (**2 business days for home study cases**), the FFS reviews and makes a final release decision in the UAC Portal.  **Fig. 2.15** is the Release Options for the FFS in the *Release Request*.

   **NOTE:** The ORR Director must review any release decision denying sponsorship to a Category 1 sponsor. The FFS must first submit a recommendation through the Case Consultation process before completing the *Release Request*. **The process is contained in the ORR internal SharePoint page (ORR Connect). Care provider staff and Case Coordinators do not have access to ORR Connect and are not directly involved in the Case Consultation process. See 2.7.4 Deny Release Request.**

For all other cases, the FFS emails notification of the final release decision based on the template email below. **NOTE:** When the FFS approves the release decision, the UAC Portal generates a "trigger report," *ORR Notification to ICE Chief Counsel Release of Unaccompanied Alien Child to Sponsor and Request to Change Address.* See **2.8 Release from ORR Custody** for procedures on this form. ✇↰ ✉

| ✉ Email Template: FFS Notification of Final Release Decision |
| --- |

| | |
| --- | --- |
| **From:** | FFS |
| **To:** | CFS, Case Manager |
| **Cc:** | Case Coordinator |
| **Subject:** | ORR Release Decision [include last four digits of UAC A#] |
| | |
| **Body:** | Password will be sent shortly. |
| | |
| **Attachments:** | Clearly written release decision |

**NOTE:** Case managers must password protect Personally Identifiable Information (PII). Attached documents must be password protected. The body of the email includes the message that the password for the attached documents will be sent separately. A second email should include the universal UAC Password which should be used by all care providers and ORR staff and contractors. Do not include PII in follow up emails.

4. For cases involving review by the ORR Director, the FFS completes the FFS section of the *Release Request* <span style="color:red">**after ORR Headquarters notifies the FFS of the final decision.**</span> The FFS then completes the email template above: FFS Notification of Final Release Decision. ✇↰ ✉

## Fig. 2.15 FFS Options for Release in the Release Request



**Release of UAC Who Age Out**

Some UAC in ORR reach the age of 18 before release. ORR does not release UAC from its care on their own recognizance (ROR). Case Managers send a memo to DHS **24 hours before the youth turns 18**. The Case Manager should include a copy of the UAC's birth certificate, if available, and copy the FFS on the email.

The Case Manager should follow the process for cancelling a *Release Request* and choose the "UAC Discharge—Adult Status" option.  📖⏱✉🗐

**Release to URM Program**

The release request process for UAC recommended for release to the URM Program may not begin until ORR issues a URM Approval Letter. The case manager must ensure that the URM program receives any significant updates regarding the UAC, including *SIR*s, following receipt of the URM Approval Letter and prior to release.

The case manager must provide the URM program with a comprehensive copy of the UAC's case file before or at the time of the UAC's release. The following documents, which are critical to the UAC's continuity of care, must be provided to the URM program as soon as possible:

- UAC birth certificate
- Medical and immunization records
- Immigration documents
- Psychological assessments
- Education records
- Family member contact information
- Original trafficking eligibility letter, if applicable

All parties must follow the procedures for a "straight release," with the exception that the Case Coordinator does not complete the *Release Request* for cases referred to the URM Program. The Case Manager selects "Reunified (Program/Facility)" in the Type of Discharge field of the *Discharge Notification* in the UAC Portal. The care provider is responsible for escorting the UAC to the URM program.

If gaps in the minor's case file are discovered after the UAC is released to the URM program, the URM program works with the sending care provider records liaison to obtain the missing information (see **Quick Glance: Requesting Records from Other Care Provider Programs** in Section 2.2.2).

## 2.7.1 Approve Release Decisions

📖 **See Section 2.7.1 of the UAC Policy Guide**

### PROCEDURES

All parties follow the procedures described in **2.7 Recommendations and Decisions on Release** on the Release Recommendation process and the procedures described below.

1. **At the same time that the Case Manager submits the *Release Request* to the Case Coordinator for review, the Case Manager:**

   - Emails separate notices of pending release to 1) ICE Field Office Juvenile Coordinator (FOJC) and 2) the legal services provider or attorney of record based on the email template below.

   - Generates the *Discharge Notification Form* in the UAC Portal by clicking on "add new" on the Discharge Notification section which is located under the "Discharge Tab." (**Fig. 2.17** shows the discharge section under the Discharge Tab and the *Discharge Notification Form*). The *Discharge Notification Form* is continually updated throughout the release process. 🕉⚕️🗐

| ✉ **Email Template: Notice of Pending Release** | |
|---|---|
| **ICE FOJC Email** | |
| **From:** | Case Manager |
| **To:** | DHS/FOJC |
| **Cc:** | Case Coordinator, PRS Provider, if applicable |
| **Subject:** | [WARNING: MESSAGE ENCRYPTED] Pending Release Decision [include last four digits of UAC A#] |
| **Body:** | [Name of facility] is pending release decision for the minor mentioned above. See encrypted attachment with minor's information.<br><br>Password will be sent shortly. |
| **Attachments:** | Word document that includes:<br>• UAC Full Name<br>• A#<br>• DOB<br>• COO<br>• Facility |

- Release Request submitted date

**Legal Service Provider or Attorney of Record Email**

| | |
|---|---|
| **From:** | Case Manager |
| **To:** | Legal Service Provider or Attorney of Record, Child Advocate, if applicable |
| **Subject:** | [WARNING: MESSAGE ENCRYPTED] Pending Release Decision [include last four digits of UAC A#] |
| **Body:** | [Name of facility] is pending release decision for the minor mentioned above. See encrypted attachment with minor's information. |
| | Password will be sent shortly. |
| | Word document that includes: |
| **Attachments:** | • UAC Full Name |
| | • A# |
| | • DOB |
| | • COO |
| | • Facility |
| | • Release Request submitted date |

**NOTE:** Case managers must password protect Personally Identifiable Information (PII). Attached documents must be password protected. The body of the email includes the message that the password for the attached documents will be sent separately. A second email should include the universal UAC Password which should be used by all care providers and ORR staff and contractors. Do not include PII in follow up emails.

**Fig. 2.17 Discharge Section and Form**

**(a) Discharge Notification Section**



**(b)** *Discharge Notification Form*



2. The care provider collaborates with the sponsor to ensure the UAC is released as quickly as possible (preferably **within 3 calendar days** after ORR approves the release). ✆☎

3. The Case Manager ensures that documents and items that will accompany the UAC at time of release are secure.  (See **2.8 Release from ORR Custody** for how the Case Manager "exits" the UAC from the program.) 📄

## 2.7.2 Approve Release with Post-Release Services

📖 **See Section 2.7.2 of the UAC Policy Guide**

### PROCEDURES

1. **Within 1 business day** of the FFS approval of the *Release Request* in the UAC Portal, the Case Manager makes a referral for PRS using the same referral process as described under home studies and ensures that all documents in the UAC Portal are updated. ✆👆
   **NOTE:** The UAC may be released from ORR custody before the PRS referral is accepted by a PRS Provider.

2. Once a PRS Provider accepts a referral in the UAC Portal and reviews the case information, the provider makes contact with the sponsor/UAC within **2 business days**. ✆✉

3. The Case Manager ensures that documents and items that will accompany the UAC at time of release are secure. 📑

## 2.7.3 Conduct a Home Study before a Final Decision Can be Made

📖 **See Section 2.7.3 of the UAC Policy Guide**

### PROCEDURES

All parties follow procedures for requesting a home study that are described **2.4.2 Home Study Requirement**. If the FFS approves the release following the home study report, all parties complete the release process described above for a Release with Post Release Services (see **2.7.2 Approve Release with Post-Release Services**). 📖👆✉

## 2.7.4 Deny Release Request

📖 **See Section 2.7.4 of the UAC Policy Guide**

### PROCEDURES

The process for denying release to a sponsor varies on the sponsor category.

See **2.7.7 Notification of Denial** for additional procedures. 🕐☎

**Denial to Category 1 Sponsors**

1. The FFS follows the procedures outlined in the "Case Consultation" tab in ORR Connect and completes the form *Recommendation to Deny Release* which includes a section summarizing the findings, such as home study results, police report results, if applicable, and other information.  The FFS includes supporting documentation, such as the home study summary, police reports, court orders, if applicable, and other information. The FFS also drafts a denial letter from the ORR Director to the Category 1 sponsor outlining the reason for the denial based on the template in ORR Connect Case Consultation tab. 📖📑

2. Once the FFS enters *the Recommendation to Deny Release* form into the ORR Connect, the request is reviewed in sequence by the FFS supervisor, the Senior Advisor for Child Well-being and Safety, the DUCO Division Director, the Deputy Director for Children's

Programs, and the ORR Director. During the review step by the Senior Advisor for Child Well-being and Safety, the Senior Advisor staffs a Case Review Committee, comprised of ORR staff in headquarters, to provide additional input to the decision 📖

3. Upon notification by ORR Headquarters that the review was complete, the FFS completes the *Release Request* and sends the email based on the Email Template: Notification of Final Release Decision. 📖📑🖱✉

4. Assigned ORR headquarters staff complete the procedures in **2.7.7 Notification of Denial** to notify the Category 1 sponsor. 📖

**Denial for Category 2A/B or 3 Sponsors**

1. The FFS determines that the case should be denied and updates the *Release Request* (documenting the justification for the denial) and notifies the Case Manager and the Case Coordinator based on the email template: Notification of Final Release Decision. 🖱✉

2. The Case Manager then notifies via email the other parties, including the legal service provider or attorney of record, and if applicable, the child advocate and home study provider. 🕐✉🖱

## 2.7.5 Remand Release Request—Decision Pending

📖 **See Section 2.7.5 of the UAC Policy Guide**

### PROCEDURES

If the FFS determines that outstanding issues require a remand release decision, the FFS documents the date of the remand in the *Release Request* with an explanation and which party is responsible for addressing the outstanding issue. 📖📑🖱

## 2.7.6 Issues Related to Recommendations and Decisions

📖 **See Section 2.7.6 of the UAC Policy Guide**

## 2.7.7 Notification of Denial

📖 **See Section 2.7.7 of the UAC Policy Guide**

### PROCEDURES

When ORR denies release to a potential sponsor, the procedures for notification vary depending on the sponsor category.

**Notification of Denial to a Potential Category 1 Sponsor**

1. **Within 30 business days** of the potential sponsor's submission of a completed application and supporting documents, the sponsor receives a formal denial decision letter from the ORR Director.  The denial letter includes the following:
   - Reason for the denial
   - Instructions on how to obtain the UAC's case file
   - Supporting materials/information that formed the basis for the decision
   - Explanation of how to appeal the decision.

   The process for notifying the sponsor is described in the steps below. 🕐

2. **As soon as the ORR Director signs the formal denial decision letter**, the designated staff in the ORR Director's office sends the formal letter with any supporting materials to the sponsor (either through an email or through expedited mail). The designated staff also notifies the FFS who submitted the case for review through the Case Consultation process based on the email template below. 🕐 ✉/🗐

| ✉ Email Template: ORR Headquarters Category 1 Denial Notification to FFS |
|---|
| **From:**          Designated staff in the ORR Director's Office |
| **To:**            FFS |
| **Subject:**       Category 1 Denial [include sponsor's initials] |
| |
| **Body:**          The ORR Director has denied sponsorship for the category 1 sponsor applicant identified in the attached password protected file. The sponsor applicant will receive the formal decision letter, any supporting documentation and an explanation of how to appeal the decision from the ORR Director. |
| |
|                    Please notify the care provider of this decision. |
|                    Password will be sent shortly. |
| |
| **Attachments:**   Word document that includes: |

- Sponsor Full Name
- UAC Full Name
- A#

**NOTE:** Case managers must password protect Personally Identifiable Information (PII). Attached documents must be password protected. The body of the email includes the message that the password for the attached documents will be sent separately. A second email should include the universal UAC Password which should be used by all care providers and ORR staff and contractors. Do not include PII in follow up emails.

3. **Within 5 days of receiving notification of the formal denial decision,** the Case Manager notifies the UAC of a denial decision and schedules additional counseling sessions as necessary. ☺

4. If the reason for denial is based on concerns related to the UAC (i.e., the UAC was determined to be a danger to self or others), the Case Manager provides the UAC with a copy of the ORR Director's denial letter. The Case Manager schedules an appointment with the Clinician to discuss the letter with the UAC.

**Notification of Denial to a Potential Category 2A/B or 3 Sponsor**

1. **Within two business days of the FFS denial decision**, the Case Manager notifies the potential Category 2A/B or 3 sponsor verbally that they have been denied sponsorship.

2. The Case Manager notifies the UAC of the denial after notifying the potential sponsor by phone (documenting the conversations in case management notes in the UAC case file). The Case Manager may also notify the UAC's parents.

3. If the reason for denial is because the UAC was determined to be a danger to self or others), the Case Manager provides the UAC with a letter from the ORR Director. See **2.7.4 Deny Release Request**, which includes information about the UAC's ability to appeal and access to a *Flores* bond hearing. The Case Manager schedules an appointment for the clinician to discuss the letter with the UAC.

**Additional Q&As on Denial Notification**

*Q1: UAC Policy Guide Section 2.4.2 requires the potential sponsor to receive a copy of the home study report if the release request is denied. Does the care provider or ORR send the home study report?*
A1: ORR will send the home study report.

*Q2: Is the home study report sent to all denied sponsors, or only Category 1 denied sponsors?*

A2: ORR sends the report only to potential Category 1 sponsors.

*Q3: The home study report may include third party information and assessments not generated by ORR. Will this information be included when sending the home study report to the denied sponsor?*

A3: The home study report is ORR property. ORR will redact PII and other private information, as applicable. ORR may include third party information or assessments in the home study report.

*Q4: Is ORR required to secure Authorizations for of Release of Information or consent from the UAC if the home study report contains information concerning adult household members or UAC 14 years old or older?*

A4: Adult household members will have already signed an *Authorization for Release of Information* as part of the background check process. ORR may release information related to their case as necessary, in accordance with applicable law. ORR will protect PII and other private information, as applicable.

## 2.7.8 Appeal of Release Denial

📖 **See Section 2.7.8 of the UAC Policy Guide**

### PROCEDURES

1. A parent, attorney, or child who wants to file an appeal of a release denial must request an appeal **within 30 business days of receipt of the ORR Director's denial letter** using the Appeals Request Form that is included in the Director's letter or by writing their own appeal, which must include the information requested on the form. The Appeals Request includes: the basis for the request; additional evidence, if any; and the choice of a hearing by phone, videoconferencing, or no hearing.  🕐📄✉

2. The Assistant Secretary sends an acknowledgement letter to the requester **within 5 business days of receipt of the appeal request**. The letter includes: date stamped appeal request, confirmation of a hearing or no hearing, an explanation of the appeals process, and a notice that the requester will be contacted by the Assistant Secretary's office to schedule and arrange a hearing (if requested). Whenever possible, the Assistant Secretary completes the appeals process **within 30 days**. 🕐📄✉

3. The Assistant Secretary requests information from ORR, which it must provide **in 5 business days**, determines if ORR submitted new information that the requester doesn't have and shares that with the requester to allow for a response. The Assistant Secretary then shares the file which includes what information will be considered and protocol for

presentation of arguments, testimony and evidence with all parties concerned, and sets a hearing date, if requested. ⏰📄✉

4. If no hearing is requested, the Assistant Secretary reviews the case (using *de novo* review standard) and provides a final decision to either uphold or reverse the Director's decision. The Assistant Secretary sends the written decision to the requester and to ORR **within 30 business days of the appeal request whenever possible**. ⏰📄✉

5. If a hearing is requested, the Assistant Secretary reviews the case (using a *de novo* review standard) as well as the arguments, testimony, and evidence presented at the hearing and any follow up questions asked by the Assistant Secretary after the hearing and provides a final decision to either uphold or reverse the Director's decision. The Assistant Secretary sends the decision to the requester and to **ORR within 30 business days of the appeal request whenever possible**. ⏰📄✉

   **NOTE:**  The Assistant Secretary's decision is the final administrative decision of the agency.

**Additional Q&A on Appeal of Release Denial**

*Q1: According to UAC Policy Guide section 2.7.7, UACs who have been denied release solely because they are determined to be a danger to themselves or the community may appeal their release denial. Does this apply to all UAC release denials, or only to Category 1 denials?*

A1: This policy applies to all UAC regardless of category.

# 2.8 Release from ORR Custody

 **See Section 2.8 of the UAC Policy Guide**

## OVERVIEW

Prior to physical release, the care provider explains to the UAC and the sponsor the responsibilities, rights, and resources associated with release from care. The care provider prepares for the physical release and for exiting the UAC from the program.

| Key Players | Responsibilities |
|---|---|
| Case manager | Explains to the UAC and the sponsor their rights and responsibilities. Ensures that UAC's belongings are given to the UAC and sponsor at time of release along with documents, and informs stakeholders of the discharge date. |

| Sponsor | Agrees to provisions outlined in the Sponsor Care Agreement |

| Related Forms/Instruments | Used By |
|---|---|
| *Discharge Notification Form* | Case manager |
| *ORR Notification to ICE Chief Counsel Release of Unaccompanied Alien Child to Sponsor and Request to Change Address* | Case manager |
| *Verification of Release* | Case manager, UAC and sponsor |
| *Sponsor Care Agreement* | Sponsor |
| *EOIR Change of Venue Motion* and *EOIR Alien's Change of Address Form/Immigration Court (EOIR - 33/IC)* | Case manager, attorney of record, and sponsor |
| *SWB Call Follow Up Report* | Care provider, CFS |

## PROCEDURES

1. The case manager ensures that all the UAC's belongings and documents are collected and ready to provide to the UAC and sponsor at time of release (see **Quick Glance: Items That Accompany UAC at Release**). 🗐

### Quick Glance: Items That Accompany UAC at Release

- UAC  personal belongings, including clothing, money, valuables, and items obtained during the UAC's stay at the referring care provider

- Immigration case related documents: Form I-862 Notice to Appear, other notifications, and, if applicable, original trafficking eligibility letter, I-360 approval notice, asylum letter

- Verification of Release  (original copy is given to the UAC and sponsor)

- 30-day medication supply

- All health (medical, mental, and dental) records, including lab test results. immunization records, medication lists, office/ER visit notes, and Sponsor Letters (if applicable)

- Name and contact information of medical, mental health, and dental care providers so sponsor and UAC may request additional records, if needed

- Notice of any follow up medical appointments, as needed

- Original documents (birth certificates)

- Original notarized Letter of Designation for Care of a Minor, if applicable

- Educational assessments and records

- Post release safety plan as needed

- Any change of venue and change of address documents

2.  **Immediately before the UAC physically leaves the program,** the case manager:

    - "Exits" the UAC from the program in the UAC Portal which generates a "trigger report," the *Verification of Release*. The case manager prints out a copy for the UAC and sponsor upon release.

    - The care provider updates the discharge date and time on the *Discharge Notification Form*. ⏱🖨️✋🖐️

    **NOTE:** To exit the program, the case manager goes to the Discharge section of the UAC Portal and clicks on "add new" to the Program Exit form. The date of discharge will be auto-populated on the current date and the type of discharge will be populated based on the selections made in the *Discharge Notification* Form. Click "save" to discharge the UAC from the program. 🖐️🖐️⏱️

3.  The Case Manager coordinates with the legal service provider or attorney of record to ensure completion of the *EOIR Change of Venue Motion* and *EOIR Alien's Change of Address Form/Immigration Court (EOIR - 33/IC)*, and to provide the sponsor and UAC with instructions for filing Change of Venue Motions and Change of Address forms if the sponsor subsequently moves.

    Blank copies of each immigration court's Change of Address Form may be accessed here:

    **https://www.justice.gov/eoir/form-eoir-33-eoir-immigration-court-listing**

4.  **Within 24 hours after the UAC's physical release from the care provider**, the case manager sends the *Discharge Notification Form* to DHS and other stakeholders based on the template below. ⏱🖨️✉️

5.  The case manager notifies the ICE Office of Chief Counsel and EOIR Immigration Court Administrator using the trigger report, *ORR Notification to ICE Chief Counsel Release of Unaccompanied Alien Child to Sponsor and Request to Change Address*, which is stored in the UAC's file in the Portal. **Fig. 2.18** is a partial snapshot of the form. There are regional variations regarding how this notice is sent, some programs send via email and mail. Other programs mail the notice. Case manager should work with their FFS if there are any questions regarding this procedure. 🖨️✋✉️/🖐️

| ✉️ Email Template: To Stakeholders Following Release | |
|---|---|
| **From:** | Case Manager |
| **To:** | ICE/FOJC |
| | ICE Office of Chief Counsel (OCC) |
| | EOIR Immigration Court Administrator |
| | UAC's Legal Service Provider or Attorney of Record |

| | VOLAG, if applicable<br>Child Advocate, if applicable |
|---|---|
| **Subject:** | [WARNING: MESSAGE ENCRYPTED] Discharge Notification for [include last four digits of UAC A#] |
| **Body:** | Password will be sent shortly. |
| **Attachments:** | *Discharge Notification Form* |

**NOTE:** Case managers must password protect Personally Identifiable Information (PII). Attached documents must be password protected. The body of the email includes the message that the password for the attached documents will be sent separately. A second email should include the universal UAC Password which should be used by all care providers and ORR staff and contractors. Do not include PII in follow up emails.

**Fig. 2.18 Partial Snapshot of the *ORR Notification to ICE Chief Counsel Release of Unaccompanied Alien Child to Sponsor and Request to Change Address***

ORR Release Notification

ORR NOTIFICATION TO ICE CHIEF COUNSEL RELEASE OF UNACCOMPANIED
ALIEN CHILD TO SPONSOR AND REQUEST TO CHANGE ADDRESS

ORR has determined that the below Juvenile Respondent should be released to a sponsor. The Director of the Office of Refugee Resettlement, Department of Health and Human Services requests that the Chief Counsel, Immigration and Customs Enforcement, Department of Homeland Security notify the Executive Office of Immigration Review of the change of address.

| Date of Request: | Name of Requestor | Title | Telephone Number |
|---|---|---|---|
| 08/03/2017 | | | |

Juvenile Respondent's Allien Number, complete name and aliases, date of birth and claimed country of origin:

# 2.8.1 After Care Planning

📖 **See Section 2.8.1 of the UAC Policy Guide**

# 2.8.2 Transfer of Physical Custody

📖 **See Section 2.8.2 of the UAC Policy Guide**

## PROCEDURES

In the event that a sponsor is not able to pay fees associated with commercial airfare, and a child's physical release would be otherwise delayed by 72 hours or more, care providers are authorized to use program funds to purchase airline tickets.  This includes the cost of an escort when required by the airline or ORR policy.

Please note that care providers cannot require a sponsor to use their own travel agent if the sponsor is able to make alternative arrangements that would promptly discharge the child within a substantially similar time period.

Care provides must consult with their assigned Project Officer if they have any questions or concerns about using program funds to purchase air travel.

## 2.8.3 Closing the Case File

📖 **See Section 2.8.3 of the UAC Policy Guide**

### PROCEDURES

After the care provider exits the UAC from its program, the UAC's electronic record in the UAC Portal remains open. **After 45 days,** the UAC's electronic record in the Portal is closed.

## 2.8.4 Safety and Well-being Follow Up Call

📖 **See Section 2.8.4 of the UAC Policy Guide**

### PROCEDURES

Safety and Well-Being Follow Up Calls must be made for all UAC released to an individual sponsor. The purpose of the Safety and Well-Being Follow Up Call is to determine whether the child is still residing with the sponsor, is enrolled in or attending school (unless the child is 18 years old at the time of the call), is aware of upcoming court dates, and is safe (see **Quick Glance: How to Check EOIR Hotline for UAC Immigration Hearing Information**).

| Quick Glance: How to Check EOIR Hotline for UAC Immigration Hearing Information |
| --- |
| The EOIR Hotline—**1-800-898-7180**—can help case managers, sponsors, and UAC check the date for an upcoming hearing and provide other details related to an immigration case. The service is available in English and Spanish. |

Callers enter the UAC's A number and are given the option to 1) find out the next court date (press "1"), 2) case processing information (press "2"), or 3) find out whether a decision has been reached in a case (press "3").

1. **30 calendar days after release of a UAC**, the care provider's designated staff person calls the sponsor and the UAC to conduct the call. The care provider must make a minimum of 3 attempts to speak with both the sponsor and the UAC unless the phone is disconnected. The care provider must make all call attempts within the 7 days following the 30 day mark of the UAC's release. The care provider must not begin marking calls prior to that 30 day mark and must make the call even if the sponsor or the UAC reaches out to them independently. ☺☎📖

2. During the call, the designated staff confirms that the sponsor still resides at the address on the *Verification of Release* form. If the sponsor has moved, the staff person documents if an updated address is provided in the UAC case file and reminds the sponsor to file a change of address with DHS. The designated staff also notifies the PRS provider about the new address if the case was designated for PRS. ☎✋📧

3. The designated staff makes every effort to speak to the sponsor and UAC separately on the following topics:

   Sponsor Topics
   - Is the child still residing with the sponsor?
   - Is the child demonstrating any behavioral issues?
   - Do you have any concerns regarding the UAC?
   - Is the sponsor aware of upcoming court dates?
   - Did the sponsor attend an LOPC presentation?
   - Has the sponsor been contacted and asked to pay fees or wire money related to the release of the child? (See **Appendix 2.1 How to Protect PII and Create Password Protected Files**)
   - (If the case was release with PRS) Did PRS provider contact the sponsor?

   UAC Topics
   - Is the child still residing with the sponsor?
   - Does the child feel safe?
   - Is the child enrolled in and/or attending school? (Unless the child has aged out) What school does he/she go to? What grade is he/she in?
   - Is the child aware of upcoming court dates?
   - Has the child been contacted and asked to pay fees or wire money related to their release?
   - (If the case was release with PRS) Did PRS provider contact the child?

- Is the child being forced to work without pay or being forced to work to pay his/her share for rent and utilities or repay a debt? ☎

**<u>Child May be in Immediate Danger</u>**

1. If the follow up call indicates that the child may be in immediate danger (i.e., in immediate danger of serious harm), the designated staff does the following:
   - Calls 9-1-1 **immediately**.
   - Stays on the phone with the child until authorities arrive.
   - Reports any emergency involving 9-1-1 to the ORR National Call Center Help Line at 1 (800) 203-7001.
   - Complies with mandatory reporting laws, state licensing requirements, and federal laws and regulations for reporting to local child protective agencies and/or law enforcement.
   - If the sponsor is the perpetrator of the allegation, flags the sponsor and provides explanation as to why the sponsor is being flagged in the UAC Portal.
   - Emails notification to the FFS who approved the release (and the PRS provider, if applicable) and includes UAC name and A number; UAC date of release; sponsor/child contact phone number; sponsor address; previous ORR placement; summary of call; actions taken (including information on reporting the incident and any associated case numbers). ☺☎✓📋✉

2. The FFS who is notified that the child may be in immediate danger **immediately** elevates the incident to the FFS supervisor, reviews the allegation, and ensures that the incident was reported to the appropriate authority to investigate. (The FFS also elevates any identified safety trends or issues to the FFS supervisor, such as an indication that the sponsor is involved in trafficking UAC.) If the care provider's designated staff did not report the allegation correctly, the FFS provides technical assistance. ☺✉

3. If the care provider notifies the Intakes Hotline that the follow up call indicates that the child may be in immediate danger and was reported to 9-1-1, ORR intakes **immediately** notifies the FFS supervisor (or on-call FSS supervisor if after hours). The FFS supervisor **immediately** informs the senior FFS supervisor. ☺☎

**<u>Child May Be Unsafe</u>**

1. If the follow up call indicates that the child may be unsafe (but not in immediate danger) the designated staff completes the steps in #1 above under Child May Be in Immediate Danger with the exception of dialing 9-1-1 and contacting the ORR Intakes Hotline. ☎✓📋✉

2.  The FFS who is notified that the child may be unsafe, reviews the allegation and
    ensures that it was properly reported and, if it wasn't, provides technical assistance.
    ⊠

**Child May Have Been Sexually Abused or Harassed While in ORR Care**

1.  If the follow up call by the care provider indicates that the child may have been
    sexually abused or harassed while in ORR care, the staff must:
    - Report the incident to the appropriate entities in accordance with
      mandatory reporting laws, state licensing requirements, and ORR policies
      and procedures. (See **Section 4.10: Sexual Abuse Reporting and Follow-
      Up of the UAC Policy Guide.)**
    - Complete a Sexual Abuse Significant Incident Report (SA/SIR) and report
      it to ORR in accordance with **Section 4.10: Sexual Abuse Reporting and
      Follow-Up.**
    - If the sponsor is the perpetrator of the allegation, flag the sponsor and
      provide explanation in the UAC Portal.
    - Email notification to the PO overseeing the shelter and to the FFS who
      approved the release and includes UAC name and A number; UAC date of
      release; sponsor/child contact phone number; sponsor address; previous
      ORR placement; summary of call; actions taken (including information on
      reporting the incident and any associated case numbers). 📖☎🖰⊠

2.  The FFS who received the notification that the child may have been sexually abused
    or harassed while in ORR care reviews the allegation and ensures that the incident was
    reported to the appropriate authority to investigate and follows up with the care
    provider where the alleged incident occurred to determine if the incident was
    previously reported and/or investigated while the UAC was in ORR care. If the
    allegation was **not** reported, the FFS provides technical assistance to help the care
    provider report the allegation, forwards the email notification to the ORR SA/SIR
    mailbox (**psac@acf.hhs.gov**) and ensures that it is appropriately investigated. 🖰⊠

**Additional Support Services or LOPC Appointment**

If the follow up call indicates that the sponsor and/or child would benefit from
additional support or services or the sponsor has not attended an LOPC presentation,
the care provider's designated staff refers the sponsor to the ORR National Call Center
(800-203-7001) and emails the Call Center (**information@orrncc.com**) with the UAC
name and A number; sponsor's name; sponsor/child contact phone number; sponsor
address; date of referral; and reason for referral. ☎⊠

**Documenting the Call Outcome**

The care provider's designated staff documents the results of the call in the case management notes of the UAC's case file and in the *SWB Call Follow Up Report*. See **Quick Glance: Roles and Deadlines for Safety and Well-Being Follow Up Call Tracking Report**. ✍📖

---

**Quick Glance: Roles and Deadlines for Safety and Well-Being Follow Up Call Tracking Report**

**CARE PROVIDER:** In addition to documenting the safety and well-being follow-up in case management notes, the care provider is also responsible for documenting data points for all calls in this report.

The care provider submits the completed SWB Follow-Up Call Report to its assigned FFS, CFS, and the designated CFS Report Compiler for its region **no later than 2:00pm EST on the 8th of every month for UAC released two months earlier** (e.g., if the report is due October 8th, it would include entries for all UAC who were released in August). If the 8th falls on a weekend or holiday, the report will be due the next business day.

**ASSIGNED CFS:** The assigned CFS uses the SWB Call CFS Quality Control Checklist and the UAC Portal discharge report provided by the Data Team to perform a quality control check and work with the care provider to reconcile any data discrepancies. The assigned CFS submits final SWB Follow-Up Call Reports for their assigned programs to the CFS Report Compiler **no later than 5:00pm EST on the 9th of every month**. If the 9th falls on a weekend or holiday, the report will be due the next business day.

**CFS REPORT COMPILER:** The designated CFS Report Compiler 1) cuts and pastes data (using paste value function) from the program reports for their region into the master report, located in ORR Connect, 2) completes the CFS Notes tab, and 3) performs a final quality control check. The designated CFS Report Compiler performs these steps **no later than 5:00pm EST on the 10th of every month**. If the 10th falls on a weekend or holiday, the report will be due the next business day.

---

# 2.8.5 Post-Release Services for UAC with Zika Disease or Infection

📖 **See Section 2.8.5 of the UAC Policy Guide**

---

## 2.8.6 Release for Children with Legal Immigration Status

📖 **See Section 2.8.6 of the UAC Policy Guide**

### PROCEDURES

1. **If a care provider determines that a UAC has legal status, the case manager notifies the FFS immediately for consultation**. If a legal service provider, attorney of record, or a child advocate notifies the case manager that the UAC is on track to be granted legal status, the case manager notifies the FFS of the need for a Post Legal Status Plan. The legal service provider, attorney or record, or child advocate works with the case manager and the FFS to develop the Post Legal Status Plan. See **Quick Glance: Milestones for Planning and Releasing Children with Legal Status**. ⏲️✉️

### Quick Glance: Milestones for Planning and Releasing Children with Legal Status

While abiding by attorney-client confidentiality standards, LSP or attorney of record for the child works with ORR to communicate information that may affect the child's legal status, including grant of SIJ status or notification of eligibility for benefits. The following milestones trigger the need for a Post Legal Status Plan for release.

- Child is eligible for Special Immigrant Juvenile (SIJ) status. This means a U.S. state juvenile court: makes the child dependent on the court (or places the child under the legal custody of a state agency or other individual appointed by the state); declares that the child cannot be reunited with one or both of his or her parents due to abuse, abandonment or neglect; and declares that it is not in the best interests of the child to be returned to his country of citizenship.
- UAC LSP files Form I-589, Application for Asylum and Withholding of Removal, with the local USCIS Asylum Office and has received notification of the interview date and time.
- UAC LSP files Form I-589, Application for Asylum and Withholding of Removal, in the immigration court at a master calendar hearing. This means the Immigration Judge has already set the merits hearing date (final court date).
- The UAC has filed a T visa with USCIS and attended the biometrics appointment (fingerprints) at a local USCIS office.
- The UAC has filed a U visa with USCIS and attended the biometrics appointment (fingerprints) at a local USCIS office.
- The child has been assigned a pro bono attorney.
- The child's attorney sends notice that the child has achieved a milestone.

2. The legal service provider, attorney of record, or child advocate works with the case manager and the FFS to develop the Post Legal Status Plan based on the template below. See **Fig. 2.19 Post Legal Status Plan Template**. The case manager emails the plan to the FFS supervisor for approval. The plan is tailored to the needs and pending legal status of the child. ⏲️✉️📄

## Fig. 2.19 Post Legal Status Plan Template

| Post Legal Status Plan | | |
|---|---|---|
| UAC name and A #: | FFS name: | Date: |
| **Name of legal service provider (LSP) or attorney of record:** | | |
| **Name of child advocate, if applicable:** | | |
| **Describe the UAC's current immigration status (include reference to specific milestones or notices):** | | |
| **What is the expected release date for this UAC and what is his/her expected immigration status upon release? [insert date and information]** | | |
| **Describe the release plan based on the UAC's available options for release (i.e., release to a sponsor, licensed nonprofit, transfer to state care until age 18, URM, etc.):** | | |
| **Date of FFS supervisor approval:**<br>**Date of UAC release:**<br>**Insert entity/program/ that took custody of minor:** | | |

3. The FFS supervisor approves the plan and notifies the FFS. The FFS notifies the case manager. ⊠

4. The case manager works with the FFS and with all relevant parties on the logistics for release of the minor from care as soon as the minor achieves legal status. ⊠/☎📠🖱

5. The case manager emails the parties included in the sample email below on notifications regarding minors who achieve legal status **24 hours prior to release of a minor from ORR care** and includes a copy of the *Discharge Notification Form*. The care provider follows standard operating procedures on items and documents that

accompany UAC upon release, such as personal belongings, health records, original documents (birth certificates), medication supply. ☺✉🗎

| ✉ **Email Template: Notifications Regarding Minors with Legal Status** | |
|---|---|
| **From:** | Case Manager |
| **To:** | LSP or Attorney of Record, Child Advocate, if applicable |
| **Cc:** | FFS, CFS, PO |
| **Subject:** | [WARNING: MESSAGE ENCRYPTED] Discharge Notification for [include last four digits of UAC A#] |
| **Body:** | See encrypted attachment with minor's information. Password will be sent shortly. |
| | On [insert date of release] [Insert UAC last name, last four digits of A number] will be released to [insert entity with responsibility for minor]. This release was due to the following change in legal status for the minor: [describe]. |
| **Attachments:** | *Discharge Notification Form* |
| **NOTE:** Case managers must password protect Personally Identifiable Information (PII). Attached documents must be password protected. The body of the email includes the message that the password for the attached documents will be sent separately. A second email should include the universal UAC Password which should be used by all care providers and ORR staff and contractors. Do not include PII in follow up emails. | |

6. The case manager follows standard operating procedures for release and for closing out the case files. ☺✉🗎👆

## 2.9 Bond Hearings for Unaccompanied Alien Children

📖 **See Section 2.9 of UAC Policy Guide**

### OVERVIEW

Consistent with the United States Court of Appeals for the Ninth Circuit decision in *Flores v. Sessions*, unaccompanied alien children have the opportunity to seek a bond hearing before an immigration judge.

### PROCEDURES

Care providers must notify UAC of the opportunity for a bond hearing based on the procedures below. This section also covers procedures for processing requests and

preparing for *Flores* Bond Hearings and includes Quick Glance guides summarizing those procedures.

See **Appendix 2.11 ORR HQ Bond Hearing Procedures**

**Providing Notice at Admission and Orientation**

1. The care provider staff provides the UAC with the *Legal Resource Guide* **within 24 hours of the UAC's admission into the care provider's care and conducts an orientation for the UAC within 48 hours of UAC's admission**.

   The *Legal Resource Guide* includes the *Request for a Flores Bond Hearing* for **secure, staff secure, and Residential Treatment Center facilities only**. 🕐 📋

   **NOTE:** A child in any other placement type (e.g., shelters, foster care) is only provided the *Request for a Flores Bond Hearing* if the UAC requests the form.

2. The care provider staff person providing the forms reads the contents of the form to the UAC in a language the child understands. The care provider staff person explains that the UAC should consult with an attorney (such as the ORR-funded Legal Service Provider) for any legal advice or questions regarding *Flores* bond hearings.  The care provider staff person informs the UAC that they may request a *Flores* bond hearing immediately, or that they can request one at a later time (including after consulting with an attorney). 📋

3. The UAC reviews the *Request for a Flores Bond Hearing* and checks off the appropriate boxes, and signs/dates the form. The care provider maintains the *Request* in the UAC's case file, unless the UAC declines to sign or fill out the document in which case the care provider notes in the UAC's case file that the child declined to sign or fill out the form. If the child later requests the *Request for a Flores Bond Hearing* the care provider must provide the form. 📋

**Providing Subsequent Notice**

1. In addition to providing notice at admission/orientation, the case manager provides the notice for:
   - Any child in any placement type if a UAC asks for a *Request for a Flores Bond Hearing* **any time after** the Admission and Orientation process. 🕐 📋
   - Any child in any placement type, if a child is **denied** release based on a finding that the child is a danger to the community. 📋

   In these cases, the case manager provides the *Request for a Flores Bond Hearing* when informing the UAC that his or her sponsorship has been denied. 🕐

2. The case manager informs the UAC that they may request a *Flores* bond hearing immediately, or that they can request one at a later time (including, after consulting with an attorney). The case manager explains that the UAC should consult with their attorney (if applicable) for any legal advice or questions regarding bond hearings.  ⊗📖

3. The UAC reviews the *Request for a Flores Bond Hearing* and checks off the appropriate boxes, and signs/dates the form. The care provider maintains the *Request* in the UAC's case file, unless the UAC declines to sign or fill out the document in which case the care provider notes in the UAC's case file that the child declined to sign or fill out the form. If the child later requests the *Request for a Flores Bond Hearing* the care provider must provide the form. 📑

**NOTE:**  It is important for ORR's record keeping that the UAC provides the date he or she signs the *Notice* document.

### Quick Glance: Bond Hearing Notifications

| When Required | Timeframe | Methods |
|---|---|---|
| UAC placed in secure, staff secure, and RTC. | **Admissions and Orientation: Within 24-48 hours of the UAC's admission into the care provider's care**. | Oral notification with signed acknowledgment of *Request for a Flores Bond Hearing* by UAC. |
| UAC placed in other shelter types who request the notice. | At time of request. | *Request for a Flores Bond Hearing* with signed acknowledgment by UAC. |
| For any UAC in any placement type, if ORR denies release based upon danger to the community. | When informing UAC of denial of sponsorship. | *Request for a Flores Bond Hearing* with signed acknowledgment by UAC; includes notification that UAC may contact an attorney with questions. |

### Processing Bond Hearing Requests

1. After a child has completed a *Request for a Flores Bond Hearing* and requested a *Flores* Bond Hearing, the case manager completes the *ORR Motion Requesting Flores Bond Hearing for Unaccompanied Alien Child –Secure or Staff-Secure Custody* or *ORR Motion Requesting Flores Bond Hearing for Unaccompanied Alien Child (Non-Secure) Shelter Care*, depending on the child's placement type. 📑

2. The case manager notifies ORR of the request at **ORRBondHearings@acf.hhs.gov** **within 1 business day** (absent exigent circumstances) of the child making the request, using the email template below, and attaches both the *Request for a Flores Bond Hearing* and the *ORR Motion Requesting Bond Hearing for Unaccompanied Alien Child Secure or Staff-Secure Custody/(Non-Secure) Shelter Care.* ⏱✉

| ✉ **Email Template: Bond Hearing Request** | |
|---|---|
| **From:** | Care Provider |
| **To:** | **ORRBondHearings@acf.hhs.gov** |
| **Cc:** | FFS, local Legal Service Provider or Attorney of Record |
| **Subject:** | [WARNING: MESSAGE ENCRYPTED] [last four digits of UAC A#] Bond Hearing Request |
| **Body:** | The above named UAC A# (XXX-XX1-234) has requested a bond hearing. The UAC is placed at [name of care provider facility]. |
| | The UAC is/is not represented by an attorney [if represented include attorney's name and contact information]. |
| | Password will be sent shortly. |
| **Attachments:** | *Request for a Flores Bond Hearing; ORR Motion Requesting Bond Hearing for Unaccompanied Alien Child Secure or Staff-Secure Custody/(Non-Secure) Shelter Care* |
| **NOTE:** Case managers must password protect Personally Identifiable Information (PII). Attached documents must be password protected. The body of the email includes the message that the password for the attached documents will be sent separately. A second email should include the universal UAC Password which should be used by all care providers and ORR staff and contractors. Do not include PII in follow up emails. | |

**Preparing for *Flores* Bond Hearing Requests**

1. Within **1 business day** of receiving notice that the hearing has been scheduled, ORR HQ notifies the minor's attorney (if applicable) and care provider of the date and time and location of the court. ⏱✉

2. The care provider and FFS respond to ORR HQ requests for information and evidence in a timely manner. See **Quick Glance: Possible Evidentiary Sources to Finding Danger to the Community**. ⏱✉📄

| Quick Glance: Possible Evidentiary Sources to Finding Danger to the Community |
|---|
| • Juvenile court or criminal records |
| • Police records |
| • Intakes referral and placement records in the UAC Portal |
| • Placement Tool |
| • Initial Intakes Assessment |
| • UAC Assessment/UAC Case Review |
| • Relevant clinical notes |
| • Psychological records/reports |
| • Significant Incident Reports, as applicable |
| • 30 day Case Review(s) |
| • Other documents, if relevant |

### *Flores* Bond Hearing Proceedings

1. The care provider follows standard immigration court transport procedures for transporting the UAC to their scheduled *Flores* bond hearing *if* there is a hearing scheduled. See **Section 3.3.14 Transportation Services**. 📖

2. The *Flores* bond hearing proceedings commence. After conclusion the immigration judge issues an order and delivers it to the ORR Representative.  The ORR Representative keeps the original order for filing at HQ, and provides a copy to the care provider point of contact. 📋

3. The care provider saves a copy of the order in the UAC's case file (the deadline to appeal is 30 days). If the UAC was not present at the hearing, the care provider verbally informs the UAC of the decision. 🕑

# Appendix 2.1 How to Protect PII and Create Password Protected Files

ORR expects all care providers, staff and contractors to protect personally identifiable information (PII) that is transmitted via email. Files that are uploaded to the secure UAC Portal do **not** need to be password protected.

PII should be included in the subject line or body of an unencrypted email to the extent necessary for users to access the information for authorized purposes. PII should be redacted as much as possible in unprotected emails. For example, only use initials or the last four digits of an alien registration number.  Neither the subject line nor the body of an unencrypted email should contain more than one type of sensitive PII.  For example, a name and an alien registration number should not both be used.

Any document that contains PII must be password protected. The password for the document must be emailed separately. When encrypting files for attachments, all care providers, staff and contractors should use a standard password that is universally used by all parties involved in the process. Care providers should contact their PO or their FFS for questions about this password. (Do not password protect any emails.)

Emails containing PII must never be sent to personal email accounts.

## What is PII?

**Personally Identifiable Information (PII)** – Information within an IT system or online collection: (1) that directly identifies an individual (e.g., name, address, social security number or other identifying number or code, telephone number, email address, etc.), or (2) by which an agency intends to identify specific individuals in conjunction with other data elements (i.e., indirect identification). (These data elements may include a combination of gender, race, birth date, geographic indicator, and other descriptors.)

Please note that Alien Numbers are PII.

## How to Protect PII

Password protect all **attachments** and send the ORR UAC universal acceptance password by separate email. Do not include PII in the name of the attached document (i.e., no full names or Alien Numbers in the name of the document).

Use the following format to limit any identifying information regarding sponsors and UAC in the subject line of emails: sponsors, use initials in subject line; UAC, last four digits of A number.

When sending follow-up emails do not include PII.

## **How to Password Protect Word Files**

In the 2007 Microsoft Office system: Set a password in a Word document (To encrypt your file and set a password to open it):

1. Click the Microsoft Office Button , point to Prepare, and then click Encrypt Document.

2. In the Encrypt Document dialog box, in the Password box, type the standard UAC password and then click OK.
   > (By default, this feature uses AES 128-bit advanced encryption. Encryption is a standard method used to help make your file more secure.)

3. In the Confirm Password dialog box, in the Reenter password box, type the password again and then click OK.

4. To save the password, save the file.

Remove password protection from a Word document

1. Use the password to open the document.

2. Click the **Microsoft Office Button**, point to **Prepare**, and then click **Encrypt Document**.

3.  In the **Encrypt Document** dialog box, in the **Password** box, delete the encrypted password, and then click **OK**.

4.  Save the file.

**Password Protection for MS Word and Excel Files 2007:**
**https://support.office.com/en-us/article/Password-protect-documents-workbooks-and-presentations-ef163677-3195-40ba-885a-d50fa2bb6b68**

**Password Protection WinZip:**
**http://kb.winzip.com/help/help_actions_encrypt.htm**

## How to Password Protect Adobe Files

**Step 1:** Navigate to the main **Adobe website** and click the yellow **Free 30-day trial** button in the upper-left corner. Then, select a save location for the resulting file and follow the on-screen installation wizard to install the program as you would any other piece of software.

**Step 2:** Launch Adobe Acrobat, click the **File** menu in the upper-left corner, and select *Open*. Afterward, choose the PDF file you want to password protect from its respective save location and click the **Open** button.

**Step 3:** Click the **File** menu again when viewing the open document, followed by **Properties** and **Security.**



**Step 4:** Click the drop-down menu to the right of **Security Method,** then select **Password Security** from the resulting list of options.



**Step 5:** A window should appear prompting you for a password. Check the box beside **Require a password to open the document** and enter the UAC standard password into the corresponding text field.

## Appendix 2.2 How to Report Potential Fraud Schemes

*This information is also included in Section 5.7 of the UAC MAP.*

### OVERVIEW

### Types of Fraud Incidents

There are criminals who target relatives of unaccompanied children entering the United States by demanding money from sponsors and/or family members, claiming the money will cover processing, reunification, and travel expenses needed to allow the children to be reunited with their families. They may also assert that these funds will enable the UAC to be released quicker to the prospective sponsor. **ORR DOES NOT CHARGE ANY FEE TO PROSPECTIVE OR APPROVED SPONSORS AS A CONDITION OF RELEASE OF AN UNACCOMPANIED CHILD. ANY DEMAND FOR PAYMENT OF FEES IS NOT AUTHORIZED BY ORR AND SHOULD NOT BE PAID.**

For example, an individual claiming to represent a charitable/non-profit organization may contact a potential sponsor and say that s/he can assist in processing and reuniting an unaccompanied child with his or her family. In this scenario, the individual falsely tells the potential sponsor that s/he needs to pay a fee to obtain the release of the child from ORR custody. Similarly, this individual may ask the potential sponsor to wire money to unknown persons in different cities.

This type of fraud is a serious crime and ORR fully cooperates with local and federal law enforcement for the investigation and prosecution of any individual(s) participating in the fraud scheme. If the fraud scheme involves care provider staff, ORR instructs the care provider to contact local law enforcement and to follow its local licensing guidelines regarding reports of inappropriate employee behavior. The care provider should also inform its local licensing agency that the case was referred to HHS/OIG and local law enforcement for investigation. Care providers should have internal protocols in place to address fraud schemes. A care provider facility must take disciplinary action including termination of any staff for criminal behavior, including fraud.

Care providers must take steps to:

1) Prevent these or other fraudulent practices by notifying all potential sponsors that ORR, its care providers, volunteer agencies, and grantees/contractors do not collect or require fees for any services related to the release of unaccompanied children from HHS custody.

2) Care providers should have written confirmation from staff members acknowledging the "Fraud Scheme" policy to be placed in employee files.

3) Immediately ensure the safety of children and sponsors by reporting any attempts to extort money or otherwise take advantage of unaccompanied children and sponsors to ORR, HHS/OIG, local law enforcement, state licensing, if Care Provider staff are involved.

## PROCEDURES

### Checking for Potential Fraud Schemes

1. The case manager includes the script that is noted in **2.2.2 Contacting Potential Sponsors** and informs all potential sponsors:

   - To report any suspicious calls or other contact received (e.g., emails, letters, instant messages) to the care provider facility and ORR directly.

   - Call the ORR National Call Center Help Line at **1 (800) 203-7001**. Sponsors may call the help line to inform ORR if a person defrauds or attempts to defraud them of money.

   Case managers should document any information they provide to a sponsor regarding the reporting of suspicious contacts, to include the sponsor's identity, date, time and the information provided.

2. Prior to every release, the case manager asks the sponsor if they have been contacted and asked to pay fees/money related to the release of the UC. If the answer is yes, gathers the following information, and documents the information that the potential sponsor provides on the *Sponsor Information* section:

   - UC full name, alien number, and date of birth

   - Time and date of the report

   - Name of the ORR care provider facility and care provider address (include city/state)

   - Name, telephone number and location of the sponsor;

   - Name, phone number, and other contact information given by the person/program who filed the report

   - Description of the event
     - Date and time of the alleged incident
     - If money was asked for from the sponsor
     - Whether money was actually paid by the sponsor
     - Amount and method of any payment made (e.g., wire transfer, money order)

- o If sponsor retained receipt/proof of payment application such as PayPal, Apple Pay, Google Wallet, etc., a copy should be provided.
- o Identifying information for receiving account of any payment made to include account name, account number, routing number, or other account identifiers.
- o Name and description of any individuals or organizations involved in the incident
  - ▪ If the sponsor was contacted by someone, name, phone number, and other contact information of the person/program who contacted the sponsor
  - ▪ Location where the alleged incident occurred (include location name, address, city, state)
  - ▪ Provide any additional identifying details such as places of birth, countries of citizenship, and alien numbers
  - ▪ Detail how the individual or organization is involved in the incident
  - o Name and alien number (if applicable) of any potential witnesses

- Any other details for which the caller has information. For example, if the sponsor was requested to wire funds, have the sponsor provide detailed information about the wire (name and address of recipient and whether it was money gram, western union, etc…). Many times the name and location of the caller is different than the name and address on the wire.

- Actions taken (including reports made to other individuals or entities and any associated case numbers)

## Reporting Potential Fraud Schemes

1. **Within 4 hours of the significant incident (or within 4 hours of the care provider becoming aware of the incident,** the case manager completes a Significant Incident Report (SIR) in the UAC Portal with all of the information gathered. 🕐 📑

2. The case manager notifies ORR based on the email template below and includes a copy of the SIR and notification email in the UAC's case file. ✉

| ✉ Email Template: Care Provider Notification to ORR of Potential Fraud Scheme | |
|---|---|
| **From:** | Case Manager |
| **To:** | SIRHotline@acf.hhs.gov |
| | Project Officer |
| | FFS Supervisor |
| | FFS |

| | |
|---|---|
| | CFS<br>Case Coordinator |
| **Subject:** | Report of Significant Incident [include the event number (e.g., "Event 12345")] |
| **Body:** | Use Synopsis of Event from the UAC Portal and do not include UAC's full name or alien number |
| **Attachments:** | • *SIR*<br>• Relevant supporting documentation |

**NOTE:** Case managers must password protect Personally Identifiable Information (PII). Attached documents must be password protected. The body of the email includes the message that the password for the attached documents will be sent separately. A second email should include the universal UAC Password which should be used by all care providers and ORR staff and contractors. Do not include PII in follow up emails.

3. The case manager reports the fraud allegation to local law enforcement and obtains and saves an incident report number or copy of the incident report from local law enforcement.

4. If care provider staff is involved, the case manager reports to state licensing and obtains and saves an incident report number or copy of the incident report.

5. The FFS reviews the fraud allegation in the SIR and ensures that the SIR is clearly written with all required information. (If SIR is missing information, the missing information will be submitted in an SIR Addendum.)

6. **Within 1 business day of receiving the SIR,** the FFS reports all types of fraud schemes, whether attempted or successfully perpetrated to HHS Office of the Inspector General (OIG) at **UAC@oig.hhs.gov** based on the email template below and instructs the case manager to save a copy of the reporting email to the UAC case file. ⏰✉

| ✉ **Email Template: ORR Notification to HHS OIG of Potential Fraud Scheme** | |
|---|---|
| **From:** | FFS |
| **To:** | **UAC@oig.hhs.gov** |
| **Subject:** | Report of Fraud [include the event number (e.g., "Event 12345")] |
| **Body:** | Use Synopsis of Event from the UAC Portal and do not include UAC's full name or alien number |
| **Attachments:** | • *SIR* |

- Relevant supporting documentation

**NOTE:** Case managers must password protect Personally Identifiable Information (PII). Attached documents must be password protected. The body of the email includes the message that the password for the attached documents will be sent separately. A second email should include the universal UAC Password which should be used by all care providers and ORR staff and contractors. Do not include PII in follow up emails.

7. If HHS OIG opens an investigation for the reported allegation, the FFS notifies the FFS supervisor, PO and CFS and these parties fully cooperate with the investigation. ⊠

8. If the fraud scheme involves care provider staff, the FFS:

- Follows up with HHS OIG **within 10 business days** to determine if the reported fraud allegation will be investigated further.

- Instructs the care provider to follow their local licensing guidelines regarding reports of inappropriate employee behavior and to inform their local licensing agency that the case was referred to HHS OIG.

- Provide the care provider with technical assistance.

- If applicable, issues corrective action findings and requires the care provider to take appropriate action.

- Ensure that program submit/have internal disciplinary protocols to address Fraud Scheme involving care provider staff.

## Appendix 2.3 Reporting Agencies for Suspected Document Fraud for Most Common ID Documents in Key States

The chart below indicates the procedures and contact information for reporting suspected cases of document fraud by state. All reports should include any information about the suspect or the circumstances surrounding the fraud. The U.S. Department of Health and Human Services Office of the Inspector General should be copied in the correspondence with the state agency (**UAC@oig.hhs.gov**).

| State | Reporting Agency if Suspected Fraud |
|---|---|
| California | California Department of Motor Vehicles: Email **dlfraud@dmv.ca.gov**. |
| Maryland | Maryland Department of Transportation:  Email Eric Danz, the Director of Investigations and Security within the Office of Investigations and Internal Affairs, Maryland Motor Vehicle Administration, at **edanz@mdot.state.md.us;** CC: Paul Adams at **padams@mdot.state.md.us**. |
| Georgia | Georgia Department of Driver Services: Email **reportfraud@dds.ga.gov**, or call (678) 413-8766. |
| Florida | Florida Highway Safety and Motor Vehicles: Complete the "Fraud Investigation Request" form **by clicking here**, and email **Fraud@flhsmv.gov** or mail to Driver License Fraud Section, Room A327, Neil Kirkman Building, Tallahassee, Florida 32399-0570. |
| Virginia | Virginia Department of Motor Vehicles: Complete form LE 22 (use the search button to find), available at **https://www.dmv.virginia.gov/forms/default.aspx**, and email to **zerofraud@dmv.virginia.gov.** |
| New Jersey | New Jersey Motor Vehicle Commission Security & Investigations Office:  Email **TOCFRLAB@mvc.nj.gov** or call 609-777-3903. |
| New York | New York State Department of Motor Vehicles: Complete FI-17 Report of Unauthorized Use of License/Registration (must be notarized), available at **https://dmv.ny.gov/forms/fi17andfi17i.pdf,** and mail to New York State Department of Motor Vehicles, Division of Field Investigations, 6 Empire State Plaza, Albany NY 12228. Call the NYS DMV Division of Field Investigation with any questions, Tuesday, Wednesday, or Thursday from 9:00 a.m. to 4:00 p.m. at (518) 473-6464. |
| Texas | Texas Department of Public Safety, Intelligence & Counterterrorism: Email Erika Fisher, Texas Joint Crime Information Center, at **Erika.Fisher@dps.texas.gov**, or call (512) 462-6108. Include a brief synopsis of the event. |

# Appendix 2.4 Child Advocate Recommendation and Appointment Form

OMB Control No: 0970-0498
Expiration date: 7/31/2020



**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES (HHS)**
**OFFICE OF REFUGEE RESETTLEMENT (ORR)**
*DIVISION OF UNACCOMPANIED CHILDREN OPERATIONS (DUCO)*
**CHILD ADVOCATE RECOMMENDATION AND APPOINTMENT**

The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 section 235(c)(6) authorizes the Secretary of Health and Human Services to appoint "independent child advocates for child trafficking victims and other vulnerable unaccompanied children." This appointment authority has been delegated to the Office of Refugee Resettlement (ORR). ORR will use this form to determine whether a Child Advocate shall be appointed and to document the Child Advocate's appointment for UAC in ORR/DUCO care and custody.

**SECTION 1** *(To be completed by the initial referrer)*
**A. UAC INFORMATION:**

| | |
|---|---|
| Name of UAC | A#: |
| Date of Birth | Nationality: |
| Language(s) spoken by UAC: | Current location: |
| Name of referrer: | Date of UAC's arrival at care provider |
| Relationship of referrer to the UAC | Date of referral: |

**B. CHECKLIST (PLEASE CHECK ALL THAT APPLY)**

☐ Is between the ages of 0-12

☐ Is placed in a residential treatment center or therapeutic facility

☐ Is pregnant or parenting

☐ Has a physical or mental disability

☐ Is a national from a country known to traffic children

☐ Has been identified as a possible child trafficking victim (Interim Assistance Letter, Eligibility Letter, etc.)

☐ Has a criminal or delinquency history and/or is placed in a staff secure care provider or secure care provider, and there are outstanding issues impacting the UAC's release or discharge plan

☐ Has been a victim of a crime

☐ Is not proficient in a language spoken by staff at the UAC's care provider, and for whom there is no accessible interpreter routinely available

☐ Will turn 18 in less than six (6) months of placement and for whom family reunification is unlikely

☐ Is identified as being eligible for legal relief

☐ Has a credible fear of returning to their country of origin and/or are seeking voluntary departure despite concerns about their safety in their home country

☐ Lacks appropriate legal representation, or for whom there is a good faith belief that the child's legal representative has ties to child trafficking or criminal activity

THE PAPERWORK REDUCTION ACT OF 1995 (Pub. L. 104.13) Public reporting burden for this collection of information is estimated to average .50/ hour per response, including the time for reviewing instructions, gathering and maintaining the data needed, and reviewing the collection of information. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.

☐ Is expected to have a protracted stay of over 120 days in ORR/DUCO custody

☐ Whose potential sponsor is undergoing a home study

☐ Is unable to make an independent decision

☐ Any other case where the UAC is considered to be exceptionally vulnerable.  Explain here:

---

**SECTION 2** *(To be completed by the child advocate program)*

**A.  Does your program recommend that ORR appoint a Child Advocate, and confirm that an individual Child Advocate is available for this UAC based on the criteria selected?**

☐ Yes         ☐ No

If No, explain here:

If more information needed, explain here:

**B.  Name of child advocate program official making the recommendation**

Date

**C.  Name of the individual Child Advocate identified for assignment**

---

**SECTION 3** *(To be completed by ORR/DUCO)*

A.  Is the recommendation for the appointment of a Child Advocate approved for the above named UAC?

☐ Yes         ☐ No

If No, explain here:

*Signature of ORR/DUCO Division Director*

Oct 3, 2017

Date

THE PAPERWORK REDUCTION ACT OF 1995 (Pub. L. 104.13) Public reporting burden for this collection of information is estimated to average .50/ hour per response, including the time for reviewing instructions, gathering and maintaining the data needed, and reviewing the collection of information. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.

## Appendix 2.5 Sponsor Assessment Interviewing Guidance

### SPONSOR ASSESSMENT INTERVIEWING GUIDANCE

Case Managers and Clinicians must use the interview questions below when interviewing Sponsors in their assessment of a potential sponsor's suitability. Avoid reading the questions verbatim. Instead ask questions in a conversational manner and engage the sponsor. **During the interview, the interviewer must ask follow-up questions based on initial responses and obtain as much detail as possible.** Answers and information provided by sponsor must be documented in the *Sponsor Assessment*.

#### INTERVIEW QUESTIONS

#### SPONSOR CULTURAL INFORMATION

*Use these questions to determine the Sponsor's linguistic and cultural background, including cultural, social, and communal norms and practices for the care of children.  All responses must be documented in the Sponsor Cultural Information section of the Sponsor Assessment.*

- What languages and dialects do you speak?
- Are you spiritual or religious?  *If yes-* What are your beliefs?
- What faith do you practice, if any?  How do you practice your faith?
- Are there traditions you have practiced, through your family or in your home country, which are important to you?  *If yes-* What are they?

- Are there religious or family traditions or practices that you expect the UAC to adhere to or participate in?
- Is there anything else you would like to share about your culture or background?

#### FAMILY RELATIONSHIPS

*Use these questions to determine the sponsor's familial and other significant relationships in country of origin and in the U.S. All responses must be documented in the Family and Significant Relationships section of the Sponsor Assessment. If the Case Manager has already gathered information regarding the sponsor's family, it may not be necessary to ask some of these questions. A genogram (family tree) may be used as a tool to answer these questions and is required for distant relative Cat 3 potential sponsors.*

**Family in Country of Origin**
- Do you have family in your home country?
  - Who are they and how often do you have contact with them?
  - How do you contact them (phone, social media, instant messaging)?

**Family in the U.S.**
- Do you have family in the U.S.?
  - Who are they and how often do you have contact with them?
  - Where does he/she live?
  - What is his/her name and age?
  - Do you have any relatives who are or were in ORR care? Do you know where they are?

**Spouse/Partner**
- Do you currently have a partner?
  - What is your partner/spouse's name and age?
  - Where is your partner/spouse living?
  - How long have you been together?
  - What is your relationship like with your partner/spouse?
  - Is your spouse/partner supportive of the ORR family reunification process?
  - Is the spouse/partner in agreement with taking in the UAC into the home?
  - Has the spouse/partner had any contact with the UAC?
  - Would the spouse/partner contribute with support of the UAC (e.g., supervision, babysitting, financial)?

**Children**
- Are you a parent to a child?
  - What is your child's name and age?
  - Where is your child?
  - Did your child come to the U.S. with you?
  - Who is the mother/father?
  - Who is currently caring for your child?
- How do you discipline your children?
- Have you or your spouse/partner ever had Child Protective Services involvement?
- Have you ever had any child or children removed from your custody?  If so, why?
- Has any household member ever had a child or children removed from their custody?  If so, why?

#### HOUSEHOLD COMPOSITION

*Use these questions to determine the sponsor's household composition, including the sponsor's knowledge of any household members who may have a serious, contagious disease; or criminal convictions or charges. All responses must be documented in the Household Composition section of the Sponsor Assessment.*

- Who lives in the home?

- What will the sleeping arrangements be for the minor?

**Sponsor Assessment Interviewing Guidance, Rev. 06/24/2019**                                                      Page 1 of 7
**ORR UAC/S-1**

- What is his/her name and age?
- What is the household member's relationship to the minor?
- What is the household member's relationship to you?
- What has your relationship been like with him/her?
- How long have you known him/her?
- Will the household member be helping to care for the UAC or babysit?
- Does the household member work and/or contribute financially to the household?
- Does any person in your household have a serious contagious disease (e.g., TB, AIDS, hepatitis)? If so explain.
- Describe your home (e.g., Apartment, duplex, trailer, townhouse, running water, working electricity, swimming pool, pets, how many rooms, bathrooms).

- Do you currently share your bedroom?
  - Will the minor be sharing the room with anyone or will the minor have his/her own room?
- How do you expect the UAC to contribute to your household?
  - Financially, through wages
  - Child care
- Does anyone in the household have a serious, contagious disease? If yes, explain.
- Do any of the occupants have criminal convictions or charges, other than minor traffic violations? If yes, explain.

## PREVIOUS SPONSORSHIP ATTEMPTS

*Use these questions to determine if the sponsor and/or the sponsor's household members have ever sponsored or attempted to sponsor another child. If the sponsor and/or the sponsor's household members did sponsor or attempt to sponsor a child, use these questions to assess the safety and well-being of previously released minor to confirm the provision of physical/mental well-being, appropriate home accommodations, adequate supervision, attendance to school, accompaniment to immigration court hearings, and provision of a caring and secure/protective environment. All responses must be documented in the Previous Sponsorship section of the Sponsor Assessment.*

**Sponsor's Previous Sponsorship Attempts**
- Have you ever attempted to sponsor a child from ORR, but decided to withdraw your application?
  - If yes, then why did you withdraw?
- Have you ever been denied sponsorship by ORR?
  - If yes, then why did ORR deny your sponsorship application?
- How many children did you sponsor and where are they now?
- Are the children related to you? If not, how do you know them?
- Where are they from and how old are they now? If they no longer reside with you, where do they live?
- Do you have his/her current contact information?

**Household Members Previous Sponsorship Attempts**
- Has anyone who live in your home ever attempted to sponsor a child from ORR, but decided to withdraw their application?
  - If yes, then why did they withdraw?
- Were they ever denied sponsorship by ORR?
  - If yes, then why did ORR deny your sponsorship application?
- How many children did you sponsor and where are they now?
- Are the children related to you? If not, how do you know them?
- Where are they from and how old are they now? If they no longer reside with you, where do they live?
- Do you have his/her current contact information?

**Former UAC's Safety and Well-Being**
- Did the sponsor undergo a home study? If so why?
- Is or has the child received Post Release Services?
- Is the child enrolled in or attending school?
- When is the child's upcoming court date?
- Do you have school enrollment records?
- Do you have physical proof that the minor is/has attended school and court?
- Did the sponsor attend an LOPC presentation?
- Have you been contacted and asked to pay fees or wire money related to the release of the child?

## PROOF OF IDENTITY

*Use these questions in conjunction with documentation provided by the sponsor to assess the Sponsor's identity. The interviewer must be cognizant of the Sponsor's familiarity with and connections with the reported country of origin; attitude; behavior; speech; affect; mood; thought process and thought content; perception; memory and concentration; and insight and judgment during the entirety of the interview. The interviewer's assessment of these elements must be documented in the Proof of Identity section of the Sponsor Assessment.*

**Life in Home Country**
- Where did you live before you arrived in the U.S.? (If U.S. Citizen modify question to: Where did you grow up in the U.S.?)
  - How long did you live there?
  - With whom did you live?
- What was your experience like there?

**The Journey (If not born in the U.S.)**
- When did you first come to the U.S.?
  - How old were you when you first traveled to the U.S.?
- What brought you to the U.S.?
  - What were you planning on doing in the U.S.?
  - Where did you live?

- Have you lived anywhere else?  With whom?  When and for how long?
  - With whom did you live? Did you know them?
- When did you first leave home country?
  - How long did the trip take?

## PROOF OF IMMIGRATION STATUS OR U.S. CITIZENSHIP

*Use these questions in conjunction with documentation provided by the sponsor to determine the Sponsor's immigration status or U.S. citizenship. The interviewer's assessment of these elements must be documented in the Proof of Immigration Status or U.S. Citizenship section of the Sponsor Assessment.*

- Are you a U.S. citizen?
- Have you ever applied for immigration relief?
  - What type of relief did you apply for?
  - What is the status of your application?
  - Were you given any forms or documents?
- Have you ever been apprehended a U.S. immigration official?
  - What happened?
  - Were you given any forms or documents?
- Have you had any other type of interaction with a U.S. immigration official?
  - What happened?
  - Were you given any forms or documents?

## PROOF OF RELATIONSHIP

*Use these questions in conjunction with documentation provided by the sponsor to probe the sponsor's familial and interpersonal relationship with the UAC in order to verify the type of relationship. All responses must be documented in the Proof of Relationship section of the Sponsor Assessment.*

- What is the sponsor's relationship with the child?
- Has the sponsor ever met the child?
- When did the sponsor first meet the child?
- When was the last time the sponsor saw the child?
- When was the last time the sponsor's partner saw the child?
- How frequently does the sponsor visit the child?
- Has the sponsor ever visited the child while he/she was living in his/her country of origin?
- When did the sponsor last visit the child's country of origin?
- How frequently does the sponsor visit the child's country of origin?
- How did the child and sponsor keep in contact? How often?
- Did the sponsor financially provide for the child? If so, amount and how often?
- Has the sponsor ever met a family member of the UAC? Can the family member be verified as related to the UAC?)
- Has the child ever lived in the same home as the sponsor?
  - How long did the child live with the sponsor?
  - Did the sponsor ever act as a primary caregiver while living with the child?
  - How long did the sponsor act as the child's primary caregiver?
  - Where were the child's biological parents at the time?
  - Why were the child's biological parents unable to provide primary care for the child?
  - Did the child's biological parents ask/consent to the sponsor being the primary caregiver?
  - Who took responsibility for the following while the child lived with the sponsor: bathing and feeding the child, health care arrangements, supervising and disciplining the child, financial support for the child, and consoling/comforting the child?
  - Did the sponsor ever sexually or physically abuse the child, or through negligence allow others to sexually or physically abuse the child?
  - Did the sponsor ever abandon or mistreat the child?
- Why does the sponsor want to sponsor the UAC?
- Does the sponsor expect the UAC to work?

## PROOF OF ADDRESS

*Use these questions to establish that the sponsor lives at the address he/she reported to ORR and that the reported address is a residence. . The interviewer must be cognizant of the sponsor's familiarity with and connections with the reported residence. The interviewer's assessment of these elements must be documented in the Proof of Address section of the Sponsor Assessment.*

- Where do you currently live in the U.S.?
  - How long have you lived there?
  - With whom do you live?
  - Do you live in a house or apartment complex?
  - How many bedrooms does the residence have?
  - Do you own where you live or rent?
  - What is the current sleeping arrangement?
  - Do you receive your mail at a different address?
- How many schools are in the area?
- What is the crime level in the area?
- How far away is the nearest hospital?
- What is and how far away is the nearest grocery store?
- Have you lived anywhere else in the U.S?
  - Where did you live in the U.S?
  - When and how long did you live there?
  - With whom did you live?

## PROOF OF STABILITY

*Use these questions to assess the sponsor's ability to support and financially provide for the minor while in their care. The interviewer's assessment of these elements must be documented in the Proof of Stability section of the Sponsor Assessment.*

- Does the sponsor have a job?
- Does the sponsor have financial needs?
- Does the sponsor have adequate housing?

## SPONSOR CARE PLAN

*Use these questions to ensure that the sponsor's plan to care for the minor adequately addresses the care, supervision, safety, education, and resources required to meet the UAC's needs. Discusses with the sponsor the UAC's criminal offenses, behaviors and concern(s) related to the victims, the community and to the UAC as well as the obligations of the UAC and sponsor to address causes of behavior and prevent recidivism by participating in post release services. Assists sponsor in identifying community service providers and programs, and encourages sponsor to become aware of and participate in applicable services such as parenting classes/services, gang prevention services, substance abuse services, other forms of psycho-education in preparation for UAC's release. All responses must be documented in the Sponsor Care Plan section of the Sponsor Assessment.*

**Care Plan**
- Tell me about your plans to address the UAC's educational needs.
  - What school will the minor be attending?
  - What do you know about the school enrollment process?
  - Who will transport the UAC to and from school?
  - Who will supervise the UAC before and after school?
- Are you aware of any special needs the UAC may have that may require special attention?
  - Does the minor have any medical or mental health issues currently?
  - Does the minor have any prior medical or mental health issues?
  - How were these needs addressed in home country or previous residence?
  - Tell me about your plans to address the UAC's medical and mental health care needs and counseling services.
  - What are the medical services in your area?
  - What are the counseling services in your area?
- Tell me about the types of community resources and services that you plan to access to address the UAC's needs.
  - What types of community resources and services to you live near?
  - What community resources do you currently utilize?
  - What types of community resources have you identified for the UAC? (e.g., school, medical clinic, mental health services agency)
  - If you needed medical assistance, where would you go? How close is that medical service to your home?
- Tell me about the minor's personality, behavior, strengths, and overall functioning.
  - How would you describe the minor's personality?
  - How does the minor get along with adults and with other children?
  - What kind of feedback or discipline does the minor best respond to?

- How do you plan to manage the minor's behaviors?
- Describe the minor's special interests, talents, hobbies, including likes and dislikes.
- Does the minor have any criminal history or behavior issues that you are aware of?
- Did you read the Sponsor Handbook and watch the Sponsor Video?
- Will you accept assistance from Post-Release Service providers, if needed?

**Safety Plan**
- Explain how you plan to ensure the safety of the minor.
  - Are you aware of any abuse or any significant traumatic events?
  - Are you aware of any safety concerns for the UAC? Has anyone threatened the minor or their family? If so, what is the safety plan?
  - Are you aware of any history of gang involvement, violence, or juvenile justice history?

**Supervision Plan**
- Do you have family or friends nearby that will be helping to care for the minor?  If yes, list name, SSN/A#, age, DOB, home address, phone number, gender, relationship to sponsor, type of identity document received, results of background check, as applicable.
- Explain how you plan to supervise the minor.

**Alternative Caregiver Plan (only for sponsors who are not U.S. citizens or Lawful Permanent Residents)**
- Who will care for the minor in the event that you need to leave the country? List name, SSN/A#, age, DOB, home address, phone number, gender, relationship to sponsor, type of identity document received, results of background check, as applicable.

## CRIMINAL HISTORY

*Use these questions to sponsor's self-disclosures of any criminal charges, sexual offenses or child abuse/neglect charges or arrests. Ask specific questions that may reveal possible disqualifying factors under Criteria for Release Denial. → ORR Policy Guide, Section 2.7.4 Deny Release Request*

- Have you had any type of encounter with law enforcement (uniformed or not)?
- Have you ever been fingerprinted?

Sponsor Assessment Interviewing Guidance, Rev. 06/24/2019      Page 4 of 7
ORR UAC/S-1

- o Have the police ever visited your home? If so, please provide details.
- o Do you have any criminal history in your country of origin?
- o Do you have any criminal history in the United States?
- o Have you ever been arrested/hand cuffed?
- o Have you ever been stopped by the police while driving a vehicle or as a passenger?
- o Were you ever in a public place/park or car drinking or in possession of an open alcoholic container which resulted in the police being called or law enforcement approaching you for your information, incarceration or citation?
- Have you ever been arrested or charged with a crime? *If yes, for each charge ask:*
  - o What happened?
  - o When did this happen? How old were you?
  - o Where did this happen (country, state, city, local town/province/neighborhood)?
  - o Who were the victims (relation to UAC, names)?
  - o What was the outcome in court?
  - o Have you ever been assigned to a probation/parole officer?
- Are you on probation or parole? *If yes, ask:*
  - o When did probation/parole start?
  - o How long will it last and in what state or country?
  - o What are the conditions of your probation/parole (special classes, community service)?
  - o Do you know the name and number of your probation/parole officer?
- Have you ever been detained for drinking, driving under the influence of alcohol/drugs?
- Have you ever been held in juvenile detention or adult jail? *If yes, ask:*
  - o How many times?
  - o Where were you held?
  - o How long were you incarcerated?
  - o What were the dates of incarceration, as you can best remember?

- Have you experienced any violence or threats while in government custody (local, state, DHS custody, and DCS custody)? *If yes, ask:*
  - o What happened?
  - o Where did this happen?
  - o When did this happen?
- Have you ever had an argument with a paramour/partner/spouse that resulted in the police being called? If so, please provide details.
- Have you ever been involved in a gang? *If yes, ask:*
  - o What gang(s) and for how long?
  - o When and how did you become involved?
  - o What was your involvement in the gang?  Did you have specific roles or responsibilities?  What were these roles and responsibilities?
  - o Did the gang encourage or require criminal behavior?
  - o Do you have any gang tattoos?
  - o Were you trained to build and use weapons (guns, bombs, machetes)?
- Are any of your relatives involved in gang activities? *If yes, ask:*
  - o Which relative(s)?
  - o What gang(s) and for how long?
  - o What is their involvement in the gang?
- Have you ever committed a crime for which you were not caught? *If yes, ask:*
  - o What happened?
  - o When did this happen? How old were you?
  - o Where did this happen (country, state, city, local town/province/neighborhood)?
  - o Who were the victims (relation to UAC, names)?
- Have you ever caused bodily harm to another person(s) or animal(s)? *If yes, ask:*
  - o What happened?
  - o When did this happen? How old where you?
  - o Where did this happen (country, state, city, local town/province/neighborhood)?
  - o Who were the victims (relation to UAC, names)?
- Have you ever used a different name or date of birth?

### UAC JOURNEY AND APPREHENSION

*Use these questions to determine if the UAC journeyed to the U.S. to live with this sponsor and to assess if the potential sponsor had a role in coordinating or financing the journey. Also, this section will help assess how much the potential sponsor knows about the UAC's journey, which should be compared against the UAC Assessment responses. All responses must be documented in the UAC Journey and Apprehension section of the Sponsor Assessment.*

**Life in Home Country**
- Where did the minor live before arriving in the U.S.?
  - o How long did the minor live there?
  - o With whom did the minor live with?
- Whose decision was for the UAC to live with the said certain individuals?
- Did the UAC attend school, work, or both?
- Did the UAC have any hobbies in home country? What were they?
- Has the UAC lived anywhere else?  With whom?  When and for how long?
- Who was the UAC living with when he/she decided to leave his/her home country?

**The Journey**
- Do you know why the UAC decided to travel to the U.S. at this time?
  - o What is the UAC planning on doing in the U.S.?

- How did the UAC get to the U.S.?
  - o Did anyone arrange travel for the UAC? If yes – Who? Did you arrange the UAC's travel?
  - o Did the UAC travel with anyone (such as siblings, parents, family members, and children)? If so, do you know where they are now?
  - o Did you provide the UAC guidance about what steps to take when planning to enter the U.S.?
  - o Was a Coyote/foot guide/smuggler involved?
  - o What type of transportation was used?
  - o Were multiple people involved in the transportation during various legs of the journey?
  - o Did the UAC have to work or exchange favors to finance the trip?
  - o Were you in communication with the UAC during their journey?
  - o Did the UAC share with you any hardships during the journey?
- Where was the UAC planning on living in the U.S. and with whom?

- When did the UAC leave home country?
- Who paid for the UAC's trip to the U.S.?
  - How much did the UAC's journey cost?
  - Did you pay for the UAC's travel?
  - Does the UAC or UAC's family to owe money to cover the cost of the UAC's travel?
  - Do you know how the UAC or the UAC's family paid for the UAC's travel expenses?

- Did the UAC plan to come live with you? If, not, then who? If so, then why?
- What arrangements have you made for the UAC?
- Did anyone arrange for the UAC to work after arriving to the US?
- Who arranged the work?
- What type of work is the UAC expected to be doing?
- Will the UAC be paid?
- Did the UAC's parents plan for the UAC to come live with you? If, not, then who? If not, then why not? If so, then why?

**Additional Questions**
- Had the UAC been to the U.S. before this journey?
  - When did the UAC come to the U.S.?
  - Who did the UAC travel with then?
  - For how long was the UAC in the U.S.?
  - What brought the UAC here then?
  - Why did the UAC leave the U.S.?

## HUMAN TRAFFICKING

*Use these questions to assess for trafficking concerns in the sponsors country of origin and in the U.S. and to determine if additional services or referrals are needed. It should be explained to the sponsor that this information is not for immigration purposes, but to have a better understanding of his/her journey and any challenges they may have faced during this time. All responses must be documented in the Human Trafficking section of the Sponsor Assessment.*

**Sponsor's Journey to the U.S.** *(if applicable)*
- When and why did you decide to travel to the U.S.?
- Who planned your journey?
- Did the arrangements change during the journey? If yes, how?
- Did anyone pay for your travel to the U.S.?
  - Does that person need to be paid back?
  - Is there a plan for that person to be paid back?
  - What do you believe will happen if that person is not paid back?
- Does your family or a family friend owe money to anyone for the journey? If yes, how much?
- Did you ever have to depend upon non family members to provide basic needs such as clothes, food, and housing?
- Where did you first live in the U.S. and with whom?
- Have you traveled back to your country of origin since your arrival to the U.S.?

**Coercion Indicators**
- Did anyone threaten you or your family?  Who made the threats? What happened?
- Were you ever physically harmed? Who harmed you? What happened?
- Was anyone around you ever physically harmed? Who was harmed? What happened?
- Were you ever held against your will?  Who held you? Where? What happened?
- Did anything bad happen to anyone else in this situation or anyone else who tried to leave?  What happened exactly? How many other people were in this situation?
- Did anyone ever keep/destroy your documents?  Who did this and what documents?

**Debt Bondage/Labor Trafficking Indicators**
- Did you perform any work or provide any services?
- Who arranged the work?
- What type of work did you perform and where?
- How often did you have to work (Hours per day, days per week, what times of day/night)?
- Did work conditions change over time?
- Is there a debt? Do you owe money? *If yes, ask:*
  - What is the amount of the debt?
  - Has any debt amount increased?
  - By how much?
  - When did it increase?
  - Why did it increase?
- Have you or your family ever been threatened over payment or work for the journey?  Who threatened you and how?
- What did you expect would happen if you left the job or stopped working?
- Were you ever made to work or do anything you did not want to do?
- Did you receive pay or did someone else keep the pay?
- Were you paid what was promised when you started working?
- Were expenses taken out of the pay?  What were the expenses for?
- How did you get to the work site?
- Where did you live while working? Describe your living arrangements.
- Was your freedom of movement ever restricted or closely monitored (e.g., with security cameras)?
- Were you ever restricted from communicating or socializing with others, not allowed to speak for yourself, told what to say, or isolated from others?
- Did anyone arrange for you to work after arriving in the U.S.? Who arranged the work? What type of work do you expect to be doing? Will you be paid?

- Did anyone ever threaten to report you to the police/immigration? Who did this and what did they say exactly?
- Are you worried anyone might be trying to find you? Who?

## FRAUD

*Use these questions to determine if any individual or entity has attempted to defraud the sponsor in relation to the ORR reunification process. All responses must be documented in the Fraud section of the Sponsor Assessment.*

- Have you ever been contacted and asked to pay fees/money related to the release of the minor? *If yes and if applicable, ask:*
  - When did this happen (date and time)?
  - Where did this happen?
  - What name and contact information did the individual give you?
  - What specifically did they ask you to do?
  - Did you give any money to the individual? What amount?
  - How did you pay (e.g., wire transfer, money order)? Do you have proof of payment?
- Do you have any identifying information for the receiving account (e.g., account number, account name, routing number)?
- Please name and describe any individual or organizations involved in the incident.
- Are there any potential witnesses? Do you have contact and identifying information on them (e.g., name, phone number, address, SSN/A#)?
- Are there any other details you can provide?

**Sponsor Assessment Interviewing Guidance, Rev. 06/24/2019**
**ORR UAC/S-1**

Page 7 of 7