# DEFENDANTS' EXHIBIT 2

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY LISETTE FLORES, *et. al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> WILLIAM BARR, Attorney General of the ) <br> United States, *et al.*, ) <br> ) <br> Defendants. ) <br> _____) | Case No.: CV 85-4544-DMG |

## DECLARATION OF MELLISSA B. HARPER

I, Mellissa B. Harper, hereby make the following declaration with respect to the above-captioned matter:

1. I am the Chief of the Juvenile and Family Residential Management Unit (JFRMU), Enforcement and Removal Operations (ERO), U.S. Immigration and Customs Enforcement (ICE), Department of Homeland Security (DHS). JFRMU addresses issues confronting unaccompanied alien children (UAC) and alien family groups who come into ERO custody, including those detained at a Family Residential Center (FRC). JFRMU develops policies sensitive to the various vulnerabilities and needs of these populations. JFRMU trains, monitors, and advises Field Office Juvenile Coordinators (FOJCs). These officers serve as subject matter experts on juvenile and family matters in their respective field offices. As JFRMU advises FOJCs, they in turn, advise their fellow FOJCs who encounter minors during enforcement activities. JFRMU oversees and monitors the implementation of nationwide court orders that impact this population, including those in the present case.

2. Currently, ICE oversees three FRCs: 1) the Karnes Family Residential Center (Karnes) in Karnes City, Texas; 2) the South Texas Family Residential Center at Dilley (Dilley), in Dilley, Texas; 3) the Berks County Residential Center (Berks), in Berks County, Pennsylvania. Each FRC strictly adheres to the Family Residential Standards (FRS). The FRS promote a unique, non-secure, open-movement environment which permits parents and children to live in a dorm-like setting with access to education, recreational opportunities and health care on site. The FRS were developed with input from medical, psychological, and educational subject matter experts and various organizations such as the DHS Office of Civil Rights and Civil Liberties and many non-governmental organizations.

3. I submit this declaration to provide a snapshot of the FRCs, and in response to this Court's March 28, 2020, order. The information in this declaration is based upon my personal knowledge and experience as a law enforcement officer, and on information provided to me in my official capacity as JFRMU Chief. Due to the constantly evolving nature of the COVID-19 crisis, and the frequency of custody and discharge determinations, the information in this declaration is current and accurate as of the time of signature, or for the reported data, as of the date or time noted in conjunction with the information provided.

**FRC Capacities and Current Census**

1. Housing capacity at the three FRC are as follows: Karnes can house up to 830 total individuals; Dilley can house up to 2,400 total individuals; Berks can house up to 96 total individuals. While these numbers represent the total number of beds at each facility, given the open nature of the facility, and the living spaces within the facility, factors

including family unit composition, gender of parent, and ages and gender of children, will dictate which families can be housed together in the living spaces. Therefore, the total number of individuals that may be housed at an FRC at any given time varies based on current population configurations and may ultimately be significantly less than the actual capacity of the facility.

2. As of April 5, 2020, the number of individuals housed at the FRCs are as follows:

    a. At Karnes, there were a total of 426 individuals, comprised of 246 adults and 180 juveniles.

    2. At Dilley, there were a total of 557 individuals, comprised of 247 adults and 310 juveniles.

    3. At Berks, there were a total of 21 individuals, comprised of 13 adults and 8 juveniles.

3. From March 1, 2020, through March 31, 2020, ICE released[1] 942 total individuals from its FRCs. The breakdown of these releases are as follows:

    a. At Karnes, there were a total of 274 individuals released from custody during this time period, comprised of 153 adults and 121 juveniles.

    b. At Dilley, there were a total of 579 individuals released from custody during this time period, comprised of 248 adults and 331 juveniles.

    c. At Berks, there were a total of 89 individuals released from custody during this time period, comprised of 46 adults and 43 juveniles.

---

[1] Released into the U.S. interior. Data from ICE Integrated Decision Support (IIDS), queried on 4/3/2020 with data from Enforcement Integrated Database that is current through 4/1/2020.

4. From March 29, 2020, through April 4, 2020, ICE released[2] 250 total individuals from its FRCs. The breakdown of these releases are as follows:

   a. At Karnes, there were a total of 100 individuals released from custody during this time period, comprised of 56 adults and 44 juveniles.

   b. At Dilley, there were a total of 132 individuals released from custody during this time period, comprised of 54 adults and 78 juveniles.

   c. At Berks, there were a total of 18 individuals released from custody during this time period, comprised of 11 adults and 7 juveniles.

**Implementation of U.S. Centers for Disease Control and Prevention (CDC) Guidelines**

5. As ICE continues to adapt and incorporate COVID-19 guidance issued by the U.S. Centers for Disease Control and Prevention (CDC) into its existing protocols, the field offices, including the FRCs, are provided with updated guidance and instructions.

6. In light of the rapidly changing nature of this guidance, the current difficulties in air travel, and the implementation of stay-at-home orders, I have not visited these facilities since the COVID-19 outbreak. I have, however, worked closely and frequently with the staff physically located at the FRCs to monitor the implementation of, and compliance with, applicable guidance issued by the CDC and ICE. Nevertheless, the staff on the ground have more familiarity with the specific operations of each facility. Therefore, additional declarations from individuals charged with this oversight at each of the FRCs are being submitted concurrently with my declaration, and I will remain in

---

[2] Released into the U.S. interior. The sources for this data are 1) ICE Integrated Decision Support (IIDS), queried on 4/3/2020 with data from Enforcement Integrated Database that is current through 4/1/2020; and 2) information that is manually reported from Family Residential Centers on 4/2/2020, 4/3/2020, and 4/4/2020. This is because IIDS does not have information to cover the currently manually reported data points, until the next IIDS system refresh on Monday, 4/6/2020.

communication with those individuals to ensure that this oversight remains ongoing throughout this crisis.

7. On-site personnel also completed the court-ordered videotaping of the living conditions of the FRCs, at my direction.

**Information Listed in the Order Appointing Special Master/Independent Monitor**

8. The specific identifying information and detention history for juveniles in ICE custody in any FRC as of March 28, 2020, as outlined in the Order Appointing Special Master/Independent Monitor, at B.1.c.i(i)-(x) is being filed concurrently herewith.

9. Juveniles, and their accompanying parent(s) or legal guardian(s), may be processed for removal proceedings under Section 240 of the Immigration and Nationality Act (INA) or processed for expedited removal pursuant to Section 235 of the INA. Family units processed under *both* provisions are asked to provide possible sponsor contact information and other parole-related information (such as medical and mental health conditions) during intake at an FRC.

10. Family units residing at an FRC that are placed into removal proceedings under Section 240 of the INA are typically detained while a sponsor is identified, release paperwork is processed, and transportation is arranged, which typically takes less than 10 days. Detention times for family units at an FRC that are in expedited removal proceedings pursuant to Section 235 of the INA, typically depend on the speed and results of credible and reasonable fear interviews conducted by the U.S. Citizenship and Immigration Services), as well as, immigration court proceedings conducted by the Executive Office for Immigration Review. Delays due to scheduling and/or rescheduling these adjudications may occur.

11. Family units residing at FRCs who are subject to final orders of removal are increasingly subject to judicial and administrative stays of removal issued by various courts in various cases, which may impact the length of stay at an FRC. The cases involving family units with final orders of removal at FRCs that are subject to judicial stays are individually evaluated for risk of flight to determine whether continued detention is necessary or whether release is a viable option.

12. In addition to the FRC intake questions designed to identify possible sponsors, and other factors that are considered in evaluating continued detention or release, the FRCs proactively screened their populations for individuals that are potentially at a higher risk for serious illness from COVID-19, including pregnant detainees and detainees over the age of 50 years, if any, to determine whether continued detention was appropriate. The FRCs will continue to implement additional COVID-19 guidance as it is received.

This declaration is based upon my personal and professional knowledge, information obtained from other individuals employed by ICE, and information obtained from various records and systems maintained by DHS. I provide this declaration based on the best of my knowledge, information, belief, and reasonable inquiry for the above-captioned case.

Signed on this 6th day of April 2020.

_____
Mellissa B. Harper
Unit Chief, Juvenile and Family Residential Management Unit
ICE Enforcement and Removal Operations