# EXHIBIT B

## **DECLARATION**

I, Amy J. Cohen, M.D., make this declaration based on my personal knowledge and
declare the the following is true and correct to the best of my knowledge:

1.     My name is Dr. Amy J. Cohen.  I am a physician licensed to practice medicine in the
state of California.  I have been in active practice for over 30 years.  I graduated from the
Perelman University of Pennsylvania School of Medicine with honors and completed a
medical/pediatric internship, psychiatry residency and child psychiatry fellowship at
Harvard Medical School programs.  I am considered a national expert on the trauma of
vulnerable populations of children, especially those seeking asylum, separated from
families and with experience in government detention facilities, including ORR shelters.
In this role, I have been called upon to speak before the United States Senate as well as
those the United States House of Representatives.  I have published on this subject and
lecture, teach and supervise others who serve this population.

2.   I have served for nearly 2 years as a mental health and child welfare consultant to
senior Flores Settlement counsel.  In that role I have been asked to write this declaration
in response to the "ORR Field Guidance #4, COVID-19 Discharge Guidance" document
released today, April 6, 2020.

3.   Regarding the release of children overall from Office of Refugee Resettlement
("ORR") facilities, recent data reveals that, despite the reduction in the absolute
population of children in ORR custody, protracted lengths of stay continue to be
problematic for many children.  On a granular level, I have had an opportunity to work
with over 50 families where release has been capriciously delayed, often for months.  In
these cases, arbitrary factors were sited and an escalating series of demands made which
did not in any way bear on the safety and security of the children involved.  Examples of
such demands have included:  parents required to have a separate individual room for
the detained child (forbidding them to share a room with same-gendered siblings),

parents required to obtain the summer school transcripts of a sibling, parents required to show that they have not only enrolled in but are attending English classes, parents required to show that they have over $4000 in the bank.

4.     Delays in the release of children are demonstrably traumatic for them not only because of ongoing separation from family but also because institutionalization in locked facilities itself is experienced as traumatic and counter to the emotional and developmental needs of children of all ages.

5.     The current coronavirus crisis exacerbates this trauma for all children in detention.  This is a frightening time with a worldwide crisis with escalating numbers of deaths from a deadly disease.  Children in ORR custody are aware of this crisis.  Those of us who care for children are seeing a marked increase in anxiety and regression even in children in loving family homes.  There is no doubt that children kept away from the protection and nurturance of loving family are experiencing significantly greater symptoms of anxiety and distress than are their home-bound counterparts.

6. For children in government detention facilities the distress and psychological deterioration which is well documented over separation from family and community is likely to be profoundly compounded by the current crisis, while the physiological manifestations of their distress may place them at greater risk of  contracting a more severe form of the COVID illness.  These children naturally long for a loving, nurturing home in which to shelter through such a crisis.  To deprive them of such a home at a time such as this is to significantly increase the stress and trauma to which they are already exposed.  Further, the measures to isolate them from each other - restriction of their activity, imposition of social distancing, removal from the social activities that are their only offset to institutional life - create a sense of aloneness which only increases their fear and despair.  Should these children become ill or their friends become ill their need for a nurturing familial presence escalates and becomes a necessary element in their recovery.

7.  Many of the proposed instructions issued by ORR make no sense medically and threaten to psychologically further damage those children under government custody.

8.  For example, the government proposes  to "postpone release of UAC to sponsor if an ORR care provider, facility...or individual in a foster home...experience[s] one or more confirmed cases of active COVID-19 infection in either children or staff;".  This is both illogical and dangerous.  If a facility with a large number of children has had the potential exposure of some of those children to a single individual with COVID-19, by what logic would one continue to group those children together?  Indeed, this would increase the exposure of all.  To illustrate the point, if only one or two of those children have been closely exposed to the infected individual, when grouped with other children these one or two are likely to communicate the virus to all.  A far better plan would be to hastily discharge these children to individual homes where they may be quarantined for 14 days.

9. It is similarly illogical to refuse to release a child to a household in which an active COVID-19 infection is present.  ORR is not suggesting that an active COVID-19 infection within an ORR facility would mandate the removal of all children from that facility (which make more sense from a public and psychological health perspective).  Within families and homes the capacity for true quarantine of infected family members is far more likely than it is in institutional facilities.  Further, the supervision of children to insure isolation from infected members - as well as the necessity for the other sanitizing measures such as regular hand washing - is far more likely to be carried out by family than it is by the limited and rotating staff at shelters.

10. In the section labeled "Post Release Reporting", ORR suggests, reasonably , that Case Managers follow up to receive updates on the conditions of released children. However, there is no corresponding directive regarding the necessity to inform sponsors of released children when either ORR staff, foster family members, or other children have demonstrated active infection.  Such a directive must be part of any ORR protocol.

11.  Children under threat experience an increase in neurochemicals which impact their capacity to ward off all manner of illness, including infection.  To protect all children - as well as the communities in which these group facilities reside - every child should be released as soon as possible to the loving home of sponsors who can supervise, protect, nurture and care for them.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, based on my personal knowledge. Executed in Los Angeles this 6th day of April 2020.


_____

Amy J. Cohen MD