# EXHIBIT D

# DECLARATION OF ANTHONY ENRIQUEZ, ESQ.

I, Anthony Enriquez, declare as follows:

1. This declaration is based on my personal knowledge. If called to testify in this case, I would testify competently about the following facts.

2. My name is Anthony Enriquez, Esq. and I am an attorney licensed to practice in the State of New York. This declaration describes my experiences and observations working with unaccompanied migrant youth detained in facilities in New York State. These facilities include MercyFirst (including its Residential Treatment Center program), Lutheran Social Services, Rising Ground, Catholic Guardian Services, Children's Home of Kingston, Children's Home of Poughkeepsie, and Lincoln Hall.

<u>Experience Serving Youth in ORR Custody</u>

3. Since January of 2018, I have been the Director of the Unaccompanied Minors Program of Catholic Charities Community Services of the Archdiocese of New York, (CCCS-NY), a legal service provider that serves youth at MercyFirst, Lutheran Social Services, Rising Ground, Catholic Guardian Services, Children's Home of Kingston and Children's Home of Poughkeepsie, and Lincoln Hall. I supervise the work of a team of 40 attorneys, paralegals, and other staff who represent unaccompanied migrant youth seeking relief before immigration courts and agencies. Over the last 10 years, Catholic Charities has represented hundreds of youth in ORR custody. Although the majority of these youth come from Honduras, Guatemala and El Salvador, youth placed in ORR custody in New York may come from all over the world.

4. As the legal service provider for MercyFirst, Lutheran Social Services, Rising Ground, Catholic Guardian Services, Children's Home of Kingston and Children's Home of Poughkeepsie, and Lincoln Hall, our legal staff maintain regular contact with the youth

at the facilities. We provide ongoing consultations and presentations concerning the legal rights of detained minors, as well as direct legal representation to youth who request it.

Lack of ORR Guidance Regarding COVID-19 Policy Changes on Release

5. In order to be effective advocates, legal service providers need up-to-date guidance from ORR regarding any changes in policies impacting the safety, welfare, and release of our clients to their sponsors. During the COVID-19 pandemic, with so much misinformation out there, having access to such policy changes is all the more important so that we can effectively advise our clients of their legal rights during this high stress situation. Moreover, knowledge of such guidance is essential for youth in ORR custody to be able to make informed decisions regarding their legal representation and to provide direction to their attorneys.

6. Unfortunately, despite repeated requests to the ORR Federal Field Specialists (FFS) assigned to the facilities where our clients reside, we did not receive formal guidance from ORR regarding COVID-related changes in release policies until temporary restraining orders were filed in the *Lucas R.* and *Flores* cases.

7. The only formal guidance we have seen has come from ORR's court filings in response to the *Lucas R.* and *Flores* temporary restraining order motions, including the "ORR Field Guidance #4, COVID-19 Discharge Guidance" that ORR filed with the Court on April 6, 2020. This guidance had not been shared with legal service providers prior to the court filing. The lack of guidance has resulted in unnecessary confusion among our attorneys and anxiety among our clients because they do not know if they must remain in ORR custody for days, weeks, or months.

8. The lack of guidance has also resulted in our attorneys being given conflicting information from different FFS at different times. Over the past couple weeks, at one point we were advised that there was a complete freeze on releases of our clients. At another point, were told there was a two-week quarantine before releases could occur.

And, yet, despite these directives, some children are being released, without explanation as to what made their cases different than others with materially similar circumstances.

9. The lack of release guidance is especially problematic for our advocacy for clients aging out of ORR custody. We currently have clients who will age out of ORR custody before the end of April and face the specter of ICE custody unless they are released to individual or institutional sponsors. We have been told that youth aging out will be transferred to ICE custody, notwithstanding any freezes on other release from ORR custody that may be in place.

10. Given ORR's April 6, 2020 guidance to the field requiring an individualized determination about release and ORR's release of some of our clients, it seems clear to me that the TRO issued in *Flores* is having an effect. I question whether ORR would have issued any guidance at all were it not for the pressure from this litigation.

Lack of Access to Client-Specific COVID-19 Health Information

11. Our attorneys have also been concerned about ORR's refusal to inform us in a timely manner if our clients have tested positive for COVID-19 or been exposed to someone who has tested positive. Instead, we have learned this information from court filings and press reports. This information is crucial to our ability to advise our clients – especially regarding release. Without having information about our clients' exposure to COVID-19, we cannot advise them about the pros and cons of remaining at their current placement a little longer. This lack of information impedes our ability as advocates to ensure our clients can make an informed decision.

Delays in Release of Unaccompanied Children

12. As of April 6, 2020, we have eleven clients who have been approved for release by the assigned FFS, but who have not yet been released. Of those eleven children, three are waiting to be reunified with a parent. We also have nineteen clients who have a complete family reunification packet submitted and are only awaiting FFS final approval. Of those nineteen children, two are waiting to be reunified with a parent.

13. ORR is not providing information to us about the reason for the delay in release of these children so we have no way of knowing if it is related to a blanket policy or the individualized circumstances of a child. We also are not being provided with any information regarding when we might expect FFS final approval for our clients or whether such approval is being deferred under a blanket policy, because of specific issues at certain facilities, or based on the individualized circumstances of particular children. Again, the lack of information impedes our ability to advocate for and advise our clients.

Barriers to Release of Unaccompanied Children

14. While in some situations home studies are required by the TVPRA, in no circumstances are fingerprints required by the TVPRA or other federal law. Given the uncertainties of how long shelter in place orders will remain in effect, it is my opinion that ORR could reasonably consider making modifications to release policies concerning discretionary fingerprinting and home studies and at the same time fulfill its duties to ensure the safe release of youth in its custody. I base this opinion on ORR's previous decisions in the recent past to waive discretionary fingerprinting policies for certain sponsors or their household members when releasing large groups of young people in ORR care.

15. In or around June 2018, for example, ORR reversed its longstanding policy of not requiring fingerprinting for all sponsors and adults in a sponsor's household. Within months that policy contributed to a massive backlog in releases and record numbers of youth in ORR custody for extended periods of time. So ORR changed its policy once

again, noting that additional discretionary fingerprinting was not necessary to ensure children's safety. Under the new policy, parents were not required to be fingerprinted prior to a child's release; other fingerprinting requirements were also discarded. In these unique circumstances, where congregate care poses enhanced risks of viral transmission, ORR might reasonably decide to once more waive non-mandatory fingerprinting or non-mandatory home studies. There was a time that ORR did not require fingerprinting at all prior to releasing children to sponsors. I am not aware of any widespread safety concerns arising during that time attributable to lack of fingerprinting.

16. No one knows exactly when face-to-face home studies will be able to resume or when access to fingerprinting will return to normal. Children needn't remain in ORR custody indefinitely due to delays with these discretionary requirements if there are other reasonable means to ensure their safe release, including enhanced post-release services.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 7th day of April, 2020, at New York, New York.

_____
ANTHONY ENRIQUEZ

Declaration of Anthony Enriquez