# EXHIBIT F



**U.S. Department of Justice**
Civil Division
Office of Immigration Litigation
District Court Section

_____

P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-4824
Fax: (202) 616-8962
Email: Sarah.B.Fabian@usdoj.gov


September 12, 2017

Carlos Holguin
Center for Human Rights and Constitutional Law
256 S. Occidental Blvd
Los Angeles, CA 90057

**Via Email**

Re:    <u>Flores, et al., v. Sessions, et al.</u>, No. CV 85-4544 DMG (AGRx<u>)</u>

Dear Carlos:

On July 24, 2017, you sent *Flores* Defendants a letter regarding Plaintiffs' positions regarding implementation of the district court's order of January 20, 2017 and the Ninth Circuit's order of July 5, 2017. On July 31, 2017, you and I spoke regarding Defendants' responses to your letter, and at the conclusion of that call you requested that Defendants put those responses into writing. Accordingly, please see below a non-exhaustive description of the policies and procedures Defendants are putting into place in order to implement the District Court's January 20, 2017 order and the Ninth Circuit's July 5, 2017 decision affirming that order, requiring the application of Paragraph 24.A of the *Flores* Settlement Agreement ("Agreement") to unaccompanied alien children ("UAC") in the custody of the U.S. Department of Health and Human Services ("HHS"), Office of Refugee Resettlement ("ORR"). Following that description are Defendants' responses to the positions raised in your July 24, 2017 letter.

### A. <u>Defendants' Policies and Procedures to Implement the Courts' Orders.</u>

Paragraph 24.A of the Agreement requires that "[a] minor in deportation proceedings shall be afforded a bond redetermination hearing before an immigration judge in every case, unless the minor indicates on the Notice of Custody Determination form that he or she refuses such a hearing." Agreement ¶ 24.A. The District Court made clear that the purpose of the bond hearing is to "answer[] the threshold question of whether the child should be detained in the first place[,]" but that "HHS can still exercise its coordination and placement duties under the TVPRA." Order

- 2 -

at 6. Likewise, the Ninth Circuit found that "[i]mmigration judges may assess whether a minor should remain detained or otherwise in the government's custody, but there must still be a separate decision [by HHS] with respect to the implementation of the child's appropriate care and custody." *Flores v. Sessions*, 862 F.3d 863, 878 (9th Cir. 2017).

In accordance with Paragraph 24.A and the decisions of the District Court and the Ninth Circuit, Defendants are serving notice of "bond hearings" on some UAC, and generally are providing such hearings to UAC who request them. As discussed previously, and agreed to by you, ORR affirmatively provides notice of the availability of bond hearing only to those in secure and staff-secure care; UAC in non-secure shelter care are unlikely to benefit from a hearing as ORR likely would concede to an immigration judge that such UAC are not a danger and may be released upon the determination of a suitable sponsor. However, if a minor in non-secure care requests a bond hearing that request will be forwarded to the immigration court.

Minors placed in secure or staff secure care currently sign a placement notification document when placed into one of those two types of facilities. Because UAC in secure or staff-secure facilities may have been placed in such facilities based on some finding of danger, ORR intends to modify the notice of placement in a secure/staff secure/residential treatment center to include language about the possibility of continued custody occurring on the basis of a finding of danger. For UAC placed in non-secure care providers, the "Know Your Rights" presentations already instruct minors regarding their placement in the least restrictive setting. This notification will be modified so that children are alerted that they are not considered a danger by ORR, and will not be held in ORR custody on that basis.

Where a minor is referred to an immigration judge for a bond hearing, the immigration judge conducts the bond hearing consistent with the regulations and caselaw governing bond hearings conducted under 8 U.S.C. § 1226(a). *See* 8 C.F.R §§ 1003.19; 1236.1(d). Notably, the District Court and the Ninth Circuit both recognized that bond hearings under Paragraph 24.A of the Agreement should be conducted consistent with these standards and procedures. *See* Order at 2 (discussing 8 C.F.R. §§ 1003.19, 1236.1 and *Matter of Guerra*, *supra*, and explaining that the Flores Agreement appears to be consistent with these authorities including the "requirement [that] an alien in a custody determination must establish that he or she does not present a danger to persons or property and is not a flight risk."). Consistent with these authorities, a minor who seeks a change in custody status must establish to the satisfaction of the immigration judge that he or she does not pose a danger to the community or is not otherwise a flight-risk. *Matter of Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006). In making this determination, the immigration judge is guided by the factors set forth in BIA caselaw and may consider any evidence in the record that is probative and specific. *See* 8 C.F.R. § 1003.19(d) ("determination of the Immigration Judge as to custody or bond may be based on any information that is available to the immigration judge"); *see also Matter of Guerra*, 24 I. & N. Dec. at 40 (providing non-exhaustive list of bond factors).

At the conclusion of the bond hearing, the immigration judge will make his or her findings as to whether or not the minor presents a danger to community. If the immigration judge finds that the minor is not dangerous, that decision is binding on ORR. ORR will then release the UAC as soon as it determines that a potential sponsor is a suitable custodian in accordance with the TVPRA.[1] Because ORR does not make findings of "flight risk," (that is, that the UAC is likely to not appear for his or her removal proceeding), and does not retain custody of UAC on such basis, there is no need for an immigration judge to issue findings on "risk of flight," as this factor does not figure in to ORR determinations on release. Both the District Court and the Ninth Circuit recognized that ORR retains full authority regarding "implementation of the child's appropriate care and custody." ORR nonetheless will take into account the immigration judge's findings – including any findings regarding flight risk – when making placement decisions for the minor for so long as the minor must remain in ORR custody.

## B. Defendants' Responses to Plaintiffs' Positions

### 1.  Prompt hearings upon request

ORR promptly files with EOIR the bond hearing requests made by children in secure and staff-secure facilities, and a bond hearing will be scheduled in accordance with the immigration court's standard operating procedures and the interim guidance issued by the Office of the Chief Immigration Judge.[2] If a UAC declines a bond hearing, but later requests one, the request will be promptly forwarded as soon as it is made. A minor also may make an oral request for a bond hearing to an immigration judge. If a minor is found to be a danger by the immigration judge he or she may request a new bond hearing at any time based on a showing of a material change in circumstances.

Defendants do not agree with Plaintiffs' assertion that Paragraph 24.A requires that bond hearings are the mechanism by which ORR must conduct its monthly reviews of any secure placement under 8 U.S.C. § 1232(c)(2). There is no basis on which to find that the *Flores* Agreement was intended to dictate the procedures to be followed by ORR in complying with the TVPRA, which was implemented more than a decade after the Agreement was signed. Moreover, Paragraph 24.B. and Exhibit 6 of the *Flores* Agreement recognize that the issue of level of

---

[1] If there is a material change in circumstances – for example, the UAC engages in violent, aggressive acts after receiving the immigration judge determination – ORR reserves the right to make a new determination.

[2] EOIR's Chief Immigration Judge disseminated the interim guidance regarding implementation of *Flores v. Sessions*, 862 F.3d 863 (9th Cir. 2017) to the Immigration Courts on July 21, 2017. Undersigned counsel shared a copy of that guidance with you on August 9, 2017.

placement is not the subject of a bond hearing. Finally, the TVPRA specifically delegates the Secretary of HHS as the entity that prescribes procedures for such reviews. 8 U.S.C. § 1232(c)(2).

2. Notice to class members re detention based on a determination of dangerousness

As discussed above, ORR will modify the placement notification for secure/staff-secure placement to note the possibility that the UAC may not be released on the ground that the minor is dangerous.

3. Notice to class members regarding availability of bond hearings

ORR is in receipt of Plaintiffs' proposed revisions to the notice form, which is currently available in English and Spanish. ORR intends to modify the form to include information about consulting with an attorney, but does not intend to adopt the modifications proposed by you.

ORR agrees that neither ORR nor care provider staff should provide legal or other advice on requesting a bond hearing. However, staff may provide assistance to the minor in reading the form if such assistance is needed. Also, please note that legal service providers explain the form and the availability of bond hearings to minors in secure or staff-secure custody during the "Know Your Rights" presentation.[3]

4. Legal representation during bond hearings

Plaintiffs, in this section, appear to be raising issues regarding the requirements of the TVPRA which are outside the scope of Paragraph 24.A of the Agreement. ORR disputes Plaintiffs' reading of the TVPRA, and further contends that any alleged compliance or non-compliance with the TVPRA, enacted in 2009, is not relevant to Defendants' implementation of the District Court and Ninth Circuit decisions regarding Paragraph 24.A of the 1997 *Flores* Agreement.

5. Burden of proof during bond hearings

As discussed above, bond hearings are conducted consistent with regulations and applicable Board of Immigration Appeals case law, all of which squarely place the burden on a detainee in government custody to establish that he or she is not a danger. Plaintiffs have provided no basis to find that the bond hearings anticipated by Paragraph 24.A of the Agreement should not be conducted consistent with the applicable regulations and governing case law. Instead, the

---

[3] For UAC placed in non-secure care providers, the "Know Your Rights" presentations already instruct minors regarding their placement in the least restrictive setting. This notification will be modified so that children are alerted that they are not considered a danger by ORR, and will not be held in ORR custody on that basis.

- 5 -

District Court and Ninth Circuit recognized that immigration judges can conduct bond hearings under Paragraph 24.A of the Agreement consistent with standards and procedures that apply to bond hearings conducted under 8 U.S.C. 1226(a), its implementing regulations, and case law. *See* Order at 2 (discussing 8 C.F.R. §§ 1003.19, 1236.1 and *Matter of Guerra*, *supra*, and explaining that the Flores Agreement appears to be consistent with these authorities including the "requirement [that] an alien in a custody determination must establish that he or she does not present a danger to persons or property and is not a flight risk.").

6. <u>Effect of a finding by an immigration judge regarding dangerousness or flight risk.</u>

As discussed above, an immigration judge's decision that a UAC is not a danger to the community is binding on ORR, and if ORR determines a potential sponsor is a suitable custodian, it will then release the UAC to the custodian (assuming no material change in circumstances).

With respect to placement in a secure facility, ORR policy already indicates that the immigration judge finding on dangerousness or flight risk may be a consideration in placement if ORR is continuing in its efforts on reunification. However, Defendants reject Plaintiffs' request to impose additional procedures beyond the confines of the *Flores* Agreement. The *Flores* Agreement at paragraph 24.B. and Exhibit 6 already recognize that the level of placement is not an issue for the bond hearing. Moreover, the TVPRA explicitly delegates to the Secretary of HHS the authority to "prescribe" procedures by which a secure placement is reviewed monthly. 8 U.S.C. § 1232(c)(2). Such direct Congressional delegations of authority indicate that broad deference is owed to the government agency's interpretations. *See e.g., United States v. Mead Corp.,* 533 U.S. 218, 229 ("Congress manifested its intent that the Secretary's determinations, based on interpretation of the relevant statutory provisions, have the force of law."). Finally, the District Court and the Ninth Circuit also recognized that decisions regarding the care and placement of UAC remain squarely within the authority of ORR.

7.   <u>Prompt completion of custodian or (sponsor) evaluations</u>

This request is outside the scope of Paragraph 24.A, as well as the District Court and Ninth Circuit decisions. Immigration judges lack expertise for adjudging the suitability of a potential sponsor, and both the District Court and Ninth Circuit recognized that such determination must remain with ORR.

Sincerely,

*s/ Sarah B. Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
U.S. Department of Justice