# EXHIBIT H

# DECLARATION OF HANNAH P. FLAMM, ESQ.

I, Hannah P. Flamm, declare as follows:

1. This declaration is based on my personal knowledge. If called to testify in this case, I would testify competently about the following facts.

2. My name is Hannah Flamm, and I am an attorney licensed to practice law in the State of New York. This declaration describes my experiences and observations working with unaccompanied migrant youth detained at The Children's Village and Abbott House in New York.

<u>Experience Serving Youth in ORR Custody</u>

3. Since October of 2017, I have been an attorney at The Door, a legal service provider that works primarily with immigrant youth. Since December 2019, I have been the Managing Attorney of The Door's Detained Minors Project. Since December 2019, The Door has served unaccompanied children in the legal custody of the Office of Refugee Resettlement ("ORR") who have been placed by ORR at The Children's Village and Abbott House in New York, two care programs within the ORR network of care providers. Over the last four months, The Door has served over 400 youth in ORR custody. Although the majority of these youth come from Mexico, Honduras, Guatemala and El Salvador, youth placed at these facilities may come from all over the world.

4. As the legal service provider for The Children's Village and Abbott House, our attorneys and staff maintain regular contact with the youth at the facilities. We provide ongoing consultations and presentations concerning the legal rights of detained minors, as well as direct legal representation to youth who request it.

<u>The Children's Village</u>

*Background*

5. The Children's Village serves unaccompanied migrant youth between the ages of 12 and 17. It is my understanding that The Children's Village is licensed to provide shelter-level care for up to 157 youth. The Children's Village also operates a staff-secure setting with capacity to detain up to 28 youth. The current population of the shelter setting is approximately 85 youth. The current population of the staff-secure setting is approximately 10 youth.

*Delays in Reunification*

6. Between March 25, 2020, and April 2, 2020, no minors were discharged from The Children's Village, with the exception of one age redetermination case on April 1, 2020. On April 3, 2020, The Door observed that discharges had commenced again.

7. It is my impression that during the nine days when no minors were discharged from The Children's Village, this pause on releases (aside from the age redetermination) was *not* a reflection of the shelter failing to prepare minors' cases for submission to ORR or failing to submit cases to ORR. Instead, it is my impression that The Children's Village staff worked expeditiously to prepare minors' cases for submission to ORR and that in some instances, ORR in fact approved minors' cases for release. However, it appears that ORR was declining to authorize The Children's Village to physically discharge minors from their custody. It is my understanding that some minors with ORR-approved sponsors nonetheless remained at The Children's Village between March 25, 2020, and April 2, 2020, because ORR did not authorize their physical discharge.

8. Between the evening of Friday, April 3, 2020, and Monday, April 6, 2020, 15 minors were discharged from The Children's Village. At least three more were discharged on Tuesday, April 7, 2020. Collectively, these minors were discharged to Alabama, California, Florida, Georgia, Indiana, Kansas, Maryland, New Jersey, and North Carolina. It is my understanding that these discharges occurred as a result of a change in ORR's reunification policies or practices.

Declaration of Hannah P. Flamm

2

*Age-outs*

9. Further, as recently as March 24, 2020, minors who have aged out of ORR custody at The Children's Village have been transferred to ICE detention, including to a detention center where at least four detainees have tested positive for COVID-19.

10. Age-out cases average one or more per week. If ORR again categorically declines to approve physical discharges for any period, as apparently occurred between March 25, 2020, and April 2, 2020, minors whose 18th birthdays fall in that interval are at heightened risk of being transferred to ICE custody, even in cases where they have viable or even ORR-approved sponsors.

11. If one of the minors released on the evening of Friday, April 3, 2020, had not been released before aging out of ORR custody this past weekend, he would have faced transfer to ICE custody despite having a parent approved as an ORR sponsor.

Abbott House

*Background*

12. Abbott House detains unaccompanied migrant youth between the ages of zero (US citizens born to minors in ORR custody while at Abbott House) and 17. It is my understanding that this facility is licensed to provide shelter care for up to 51 youth. The current population of this facility is approximately 30.

*Delays in Reunification*

13. During the month of March, minors have continued to be discharged in low numbers: approximately eight between March 12, 2020, and March 19, 2020; and approximately three between March 19, 2020, and March 31, 2020. One minor for whom The Door is the legal service provider was released from Abbott House between April 1, 2020, and April 8, 2020.

14. At this time, of the 30 minors in Abbott House's shelter program, it is my understanding that approximately a quarter are pending ORR approval for discharge only.

It is my understanding that approximately another third of the cases have advanced to the stage of pending fingerprints.

15. Therefore, any future categorical moratorium on physical discharges would mean a significant number of minors in custody with cases submitted to ORR, pending approval, or, by then, perhaps approved—including to biological parents—may be forced to remain in a congregate care setting for no individualized, child welfare-related reason.

*Conclusion*

16. The Door has not received any formal COVID-related guidance directly from ORR regarding any changes in policies affecting the safety, welfare, and release of our clients to their sponsors. The most comprehensive, formal, COVID-related guidance we have seen has come from ORR's court filings in response to the *Lucas R.* and *Flores* temporary restraining order motions, including the "ORR Field Guidance #4, COVID-19 Discharge Guidance" that ORR filed with the Court on April 6, 2020. ORR did not share this guidance with The Door prior to the court filing. ORR's failure to provide The Door guidance has left our attorneys, staff, and clients ill-informed, confused, and anxious because ORR has not told either our staff or, to my knowledge, our clients for how long our clients must remain in ORR custody.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 8th day of April, 2020, at New York City, New York.

_____
Hannah P. Flamm