# EXHIBIT N

**DECLARATION OF BRIDGET CAMBRIA, ESQ.**

I, Bridget Cambria, declare and say as follows:

1. My name is Bridget Cambria, and I am providing this supplemental declaration to depict the situation of detained families in immigration detention in Pennsylvania during the COVID-19 pandemic, and the incorporation of protective measures. This is also a declaration in response to the statements provided by the government in the *O.M.G. v. Wolf* litigation as well as the ongoing litigation concerning the *Flores Settlement*.

2. My statements are based on my review of the evidence provided by the government and my organization's continued representation of detained families in Pennsylvania during the COVID-19 pandemic.

3. As of this writing, persons detained in Immigration and Customs Enforcement ("ICE") x detention centers in Pennsylvania are suffering the devastating impact of the COVID-19 pandemic. Pennsylvania detention centers have the most positive cases of the novel coronavirus among ICE detainees than any other area in the country. The same Enforcement and Removal branch of the Department of Homeland Security ("DHS") that controls ICE detention centers in Pennsylvania, also oversees the family detention center in PA. The outbreak ensuing at Pennsylvania detention centers is occurring despite DHS assurances of precautions.

4. The Berks County Residential Center ("BCRC") is a family detention facility in Leesport, Pennsylvania housing immigrant families. Primarily, the families who are brought to the detention center are seeking asylum in the United States. Each family currently detained has a close family member living in the United States who is willing to receive each family member, today.

5. Additionally, ICE contracts with the County of Berks, PA to provide housing, care and guard services pursuant to an Intergovernmental Service Agreement. The ICE contract requires that no family brought to the BCRC have an adverse or criminal history. In turn, no family currently detained at the BCRC has a criminal history.

6. In return for the services performed by the County, ICE provides compensation to the County of Berks for every person that is detained, as well as supplemental compensation for the costs and additional services rendered. Medical services, however, are not provided by the County of Berks, but rather all medical care and decisions are made by an ICE contracted medial service provider called "ICE Health Service Corps."

7. Our organization, Aldea – the People's Justice Center ("Aldea"), continues to provide universal *pro bono* representation to families at the BCRC. As of this writing, Aldea represents every family who remains in the BCRC, consisting of six asylum seeking immigrant families.

8. Currently in the BCRC are a family from Ecuador with a five-year-old daughter, a Mexican family with a one-year-old daughter, a Haitian family with a one-year-old

...

daughter, a Haitian family with an 11-year-old daughter and a three-year-old daughter, a Haitian family with a two-year-old daughter, and a Haitian family with a seven-year-old son.

9. Each family is in the process of seeking asylum in the United States.

10. Legal visitation has ceased in the BCRC since March 20, 2020. Since then, Aldea staff has only been permitted phone visitation. The phone visitation provided is not offered at the historically normal legal visitation times, from 8AM to 8PM. Rather, we are only permitted phone visitation when it can be scheduled by a caseworker, if and when the caseworker is present for a shift. When a caseworker is on shift, with the exception of one occasion, they have facilitated phone visitation. From experience, my staff and I can report that the phones in the Berks facility have a very low-quality connection and often drop calls. Calls from the facility are very difficult to hear. Unlike the other family detention facilities, ICE has not arranged for video visitation in the Berks facility, despite our request.

11. Even though legal visitation has ended, efforts to deport families who are participating in a legal process to seek asylum have not. Court hearings and asylum interviews continue with minimized legal access. The lack of proper legal access is detrimental to not only their case, but the lives of each and every parent and child. The outcome of a family's case at the BCRC is a life and death determination.

12. Importantly, every part of the legal asylum process can, and is, conducted both inside and outside detention. Continued detention is not necessary to facilitate the asylum process. By and large families seeking asylum are not detained, but rather are placed in a removal proceeding outside of detention to pursue protection.

13. As of this writing, every family at the BCRC has expressed a fear of contracting COVID-19 and dying.

14. As mentioned in Assistant Field Office Director Christopher George ("AFOD George")'s declaration, one child currently in the BCRC was tested for COVID-19. Her parents were not tested, despite displaying cold symptoms themselves and the fact that even asymptomatic people can carry the novel coronavirus. AFOD George offers that child's symptoms of "coughing and wheezing" were considered cold symptoms and not COVID-19 symptoms, despite coughing and difficulty breathing being primary conditions of COVID-19. He testifies that the child was tested "in an abundance of caution," however, it was determined by a hospital provider that she be tested for COVID-19 and that she be quarantined to await the test results. She and her mother were quarantined, but her father – with whom she had traveled to the United States with and was detained with – was not. If, in fact the results were different, and she had been positive, their negligent handling of this child's medical condition would have resulted in every person in the facility being exposed to COVID-19.

15. During the incident with this child, Aldea requested medical confirmation of the child's test result and corresponding records on behalf of our client, the child's father. We requested such records and/or confirmation of the negative results of the COVID-19 test

on March 25, 2020. We provided a notice of representation, a HIPPA authorization, along with the request. Thereafter, and at the AFOD's request, we provided a Berks medical authorization, and a duly executed DHS privacy waiver form. DHS refused to release any results or records to us. However, DHS did release the results of the test to a reporter from Mother Jones and to this court.

16. AFOD George only provided a response to the child's counsel today, April 7, 2020, confirming that the child's test was negative.

17. Following the orders of Judge Gee and Judge Boasberg, ICE has attempted to engage in precautionary measures to prevent the spread of COVID-19 in the BCRC, a congregate care facility. I have observed the video and declaration provided by AFOD Christopher George. Attempts to create social distancing in the BCRC, a single building and congregate care facility for children, with no ability to leave the facility, is not sufficient to ensure that no family contracts COVID-19.

18. Since the filing of the lawsuit, ICE has reduced the number of family's currently detained at the BCRC.

19. However, the families who remain detained are still at risk of contracting COVID-19 given not only there being six whole families, but also the fact that the facility continues to house staff from the County of Berks, Immigration and Customs Enforcement and medical staff. It is unknown the total number of employees who come and go from the Berks facility, however the families, themselves, constitute more than 10 individuals, unrelated who are present within this facility.

20. The last family to arrive at the BCRC arrived on March 18, 2020. Fifteen families have been brought to the BCRC since March 1, 2020. Notably the first confirmed test in the United States was on January 21, 2020. From March 8, 2020 through April 7, 2020 the number of confirmed cases has reached at or about 400,000 cases.

21. Families reported that the only time their temperature was affirmatively taken was at intake, and that at intake no family was questioned regarding the coronavirus. In fact, the word coronavirus was not mentioned to the detained families until the week of March 23, 2020. In fact, many of the last detained families to enter the facility, came to the facility sick and each family had entered the BCRC after placement in a hielera ("icebox") which is a notoriously unsanitary environment. Despite this, they were not tested for COVID-19 or per AFOD George screened for COVID-19. In fact, the precaution listed is that a detainee will be "screened for the symptoms with 24 hours of known exposure." At this point, it's too late.

22. Prior to legal visitation being suspended, a sign posted on the outside of the visitation door described the pandemic as a "flu outbreak."

23. Detained families were not spoken to about COVID-19 until the week of March 23, 2020. They reported a meeting where they were advised to wash their hands. Other questions like how the facility can help them prevent an outbreak or what would happen if they became sick, went unanswered. Besides this one meeting during the week of March 23,

2020, no continued education about COVID-19 has taken place.

24. The BCRC is a detention center that consists of a single building. The video provided by government counsel demonstrates that every area, including the rooms where families sleep, do not permit isolated environments. Every common area is a commingling area, every bathroom is a commingling area, the cafeteria is a commingling area, and in fact every area depicted in the video is a commingling area – with the exception of the medical isolation room.

25. The detained families reported that prior to the video being taken, the facility staff cleaned and organized the facility in anticipation of the video. After all the last minute cleaning and organizing, the conditions captured in the video were not representative of how the facility was operating prior to April 2, 2020.

26. It is not true that families since March 12, 2020 have been provided PPE upon request. In fact, no family was advised otherwise, or that they could request PPE. AFOD George also fails to state what PPE was available to detainees and when.

27. Detained families routinely reported being denied their own sanitizer and were not provided masks or gloves, except when cleaning the facility. Only today, April 7, 2020, in conjunction with an order issued by the County of Berks, were masks provided to detained families. The masks that were provided are adult size masks, and were provided to everyone, even the children as young as one year old. Families reported that the masks were so big as to cover the entire face of a child, making it difficult for the children to breathe. Many of the children have already broken the masks. Detained families were provided one mask only and have not been provided replacements.

28. Residents still report that they are required to not only clean their rooms, but also the communal bathrooms and child's playroom. AFOD George represents that additional cleaning measures have been implemented, and the residents did notice the staff clean prior to the filming of the facility, however, he does not provide a schedule of cleaning, who conducts the cleaning, or describe what is cleaned. In any event, rooms are not cleaned after every use by a child, bathrooms are not cleaned after every use, and neither are showers.

29. Since my last declaration, and during the week of March 23, 2020, the detained families report that two sanitizer stations were placed inside the facility.

30. Since the order of this Court, additional posters have been placed within the facility to describe what COVID-19 is. However, families still report that they have not been instructed, in a language they understand, what policies are being implemented to protect them and what the nature of the COVID-19 situation is in the United States. Importantly, the main language currently spoken in the BCRC is Creole. There are no news services available in Creole and no on-site interpreters in Creole. Additionally, few Berks staff members are even bilingual in Spanish. As a result, families are completely isolated and trapped in an institutional setting during a pandemic, and are helpless.

31. The families were present when AFOD George filmed the video of the BCRC. The families

called Aldea to report that they were afraid of someone videoing them. They expressed that, as asylum seekers, they did not want their face on a video, and generally, that it was unnecessary to demonstrate the conditions of the facility. The detained families inherently mistrust authorities given they are fleeing governmental persecution and are in a detention setting. We sent an email to AFOD George and requested that he not film the detainees given their privacy concerns. Despite this request, and his acknowledgement, the detained families appeared on the footage. However, their fears are apparent on camera, as they clearly pull hoods over their faces and flee the areas as AFOD George films.

32. Meals are still provided at one time in the cafeteria. Although the families are to sit one at each table, they still eat together. They are served food one at a time from the buffet by BCRC staff.

33. Finally, since my last declaration ICE has made no efforts to provide suitable medical care to the detained families, has failed to provide a safe facility for the remaining families, and most notably have failed to comply with the Flores orders which require continuous efforts at the release of detained families in accordance with the Settlement.

34. Judge Gee specifically ordered compliance with the conditions of the settlement without regard to the parents' immigration status. She required children to be processed and released within 20 days. She also specifically ordered that ICE provide specific, tangible, and individual reasons to continue the detention of a child beyond that point.

35. AFOD George fails to demonstrate "*continuous efforts at release*" of the children in his care. He states that the parole factors are gathered "shortly after intake" and not that they have worked continuously at securing release of the children in the BCRC. In fact, if at all, it appears only one determination has ever been made, and that is the one made upon arrival at the BCRC. He has not provided the parole worksheets that he alleges have been maintained and has not provided evidence that said parole determinations are continuously maintained.

36. He states that "most families are released within 20 days." This is not true. A family being released from the BCRC within 20 days is the exception and not the rule. Additionally, when a family enters the BCRC most of the time they arrive from a CBP holding facility called a *hielera* ("icebox") where they have been held from anywhere from 1-14 days or more, which factor into the calculation. Even calculating the 20-day number for the time spent at the BCRC, by and large most families remain detained vastly longer. For example, the last two families to be released subsequent to this Courts' order had been detained for 277 days and 39 days, not counting their time in the *hieleras*.

37. As of this date, every family in the BCRC has been detained in excess of 20 days.

38. AFOD George also considers all of the remaining families to be flight risks but offers no indication why they are flight risks. Each family has a suitable sponsor and fixed home to which they could be released and monitored electronically given the pandemic. Each day matters. We will offer information concerning each family in the following paragraphs:

a. M.E.-L., E.O.-E. and five-year-old daughter J. O.-E., are currently the beneficiaries of a stay of removal from the San Antonio Immigration Court and a pending motion to reopen a removal order issued in their case. Importantly, they are victims of human trafficking who have, and will, cooperate with law enforcement. They also have asylum applications pending with the San Antonio Immigration Court. The family's sponsor to receive them is M.E.-L.'s sister and her uncle who reside in Chicago, IL, who have a fixed address and phone which can easily be provided to the government.

This family was hospitalized in Texas prior to coming to the BCRC on March 14, 2020. They were not immediately isolated in the BCRC or provided PPE or precautions upon entering the BCRC despite hospitalization before entering the BCRC. Rather their child, and each parent, had extreme symptoms of illness including coughing, throat soreness and trouble breathing and were in the general population. Their child was taken to the hospital two times while at the BCRC since March 14, 2020. Following a hospital visit, the child and mother were isolated for three days. The father was not isolated. The five-year-old was tested for COVID-19 and was determined negative, neither parent was tested for COVID-19.

b. J. A.-R., E. G.-M., and one-year-old J.G.-G. are seeking asylum and are in the credible fear process. Should they receive a positive determination, they will be released, should they receive a negative decision, they will seek a reconsideration and/or evaluation concerning the procedural sufficiency of their fear screening for review. The family's sponsor is E.G.-M.'s sister-in-law who resides in North Carolina and has a fixed address and phone which can easily be provided the government.

As of March 23, 2020 each parent has cold symptoms and expressed that they could barely speak due to sore throats. Their one year old has had an ear infection for many days. Daughter was provided medicine however the parents were advised to drink a lot of water. The one-year-old's formula was confiscated by the BCRC and is now required to drink regular milk.

c. C. N., L. B., and 19-month-old B.K. L.-N. are seeking asylum and are in the credible fear process. Should they receive a positive determination, they will be released, should they receive a negative decision, they will seek a reconsideration and/or evaluation concerning the procedural sufficiency of their fear screening for review. The family's sponsor is L.B.'s cousin who resides in Florida and has a fixed address and phone which can easily be provided the government.

d. G. SC., M.C., 11-year-old N.B.T, and three-year-old G.R. S.-C. are seeking asylum and are in the credible fear process. Should they receive a positive determination, they will be released, should they receive a negative decision, they will seek a reconsideration and/or evaluation concerning the procedural sufficiency of their fear screening for review. The family's sponsor is M.C.'s cousin who resides in Connecticut and has a fixed address and phone which can easily be provided the

government.

e. P.M., M.N. and two-year-old H. M.-N. are seeking asylum and are in the credible fear process. Should they receive a positive determination, they will be released, should they receive a negative decision, they will seek a reconsideration and/or evaluation concerning the procedural sufficiency of their fear screening for review. The family's sponsors are P.M.'s aunts in Brooklyn and have a fixed address and phone which can easily be provided the government.

H.M.-N. suffered for a fever for four days since their arrival in the BCRC on March 18, 2020. She also developed sores inside and outside of her mouth that resulted in bleeding from her throat and mouth.

f. J.J. S.-J., G.C., and seven-year-old M.S.-J. are seeking asylum and are in the credible fear process. Should they receive a positive determination, they will be released, should they receive a negative decision, they will seek a reconsideration and/or evaluation concerning the procedural sufficiency of their fear screening for review. The family's sponsor is G.C.'s brother who resides in Florida and has a fixed address and phone which can easily be provided the government.

G.C. has an allergy or infection in her mouth, migraines and has been hospitalized since entering the BCRC mid-March.

39. Insomuch as removal has not occurred, their continued detention becomes more dangerous every single day. COVID-19 cases nationwide have approached 400,000, and in the state of Pennsylvania alone there are 14,956 cases as of the writing of this statement. Deaths are skyrocketing in Pennsylvania and COVID-19 is prevalent in ICE detention centers in Pennsylvania. Two incarcerated persons in the Pike County Correctional facility in Pennsylvania have died. Failure to adhere to very clear and simple obligations under the Flores Settlement and pursuant to the Judge's order places each of the families described in this declaration at risk. ICE can easily place each family outside detention, today, and have available sponsors to provide care and quarantine, and addition may comport with the requirement imposed by ICE to secure their appearance at court or subsequent supervision appointments.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct pursuant to 28 U.S.C. ¶ 1746.

Executed this 7th of April, 2020 in Reading, Pennsylvania.

_____
Bridget Cambria, Esq.