# EXHIBIT C

# DECLARATION OF CLAUDIA R. CUBAS

I, Claudia R. Cubas, declare as follows:

1. This declaration is based on my personal knowledge. If called to testify in this case, I would testify competently about the following facts.

2. My name is Claudia R. Cubas. I am an attorney licensed to practice in the State of Maryland and the U.S. District Court of Maryland. This declaration describes my experiences and observations working with unaccompanied migrant youth detained at the Shenandoah Valley Juvenile Center, Youth for Tomorrow, which are both located in Virginia, and the Bethany Christian's Services Center, which is located in Maryland.

<u>Experience Serving Youth in ORR Custody</u>

3. Since 2011, I have been an attorney at Capital Area Immigrants' Rights ("CAIR") Coalition, a legal service organization that provides legal services to adults detained in the custody of Immigration and Customs Enforcement ("ICE") and children detained in the custody of the Office of Refugee Resettlement ("ORR"). While originally our services mainly focused on providing services to immigrants in adult detention, for the last several years, we have seen an increase in the provision of services to immigrant youth detained in ORR.

4. Since 2010, CAIR Coalition has served unaccompanied children in the legal custody of the ORR, and who have been placed by ORR at various facilities in the states of Maryland. In Virginia, we serve immigrant youth detained at the Northern Virginia Juvenile Detention Center, which has since stopped housing immigrant youth, the Shenandoah Valley Juvenile Detention Center ("SVJC") the only secure facility housing immigrant youth in the nation, and Youth For Tomorrow ("YFT"). In Maryland, we serve immigrant youth detained at the Bethany Christian Service's Center ("BCC"). Both YFT and BCC operate shelter care and foster care programs within the ORR network of care

Declaration of Claudia R. Cubas

1

providers. In 2019, CAIR Coalition conducted intakes with over 1,000 immigrant youth in ORR custody. Although the majority of these youth come from Mexico, Honduras, Guatemala and El Salvador, youth placed at these facilities may come from all over the world.

5. As the legal service provider for ORR facilities in Virginia and Maryland, our attorneys maintain regular contact with the youth at the facilities and represent both children who stay in detention because they have no identifiable sponsor and children who reunify in the local communities in Maryland and Virginia. We provide ongoing consultations and presentations concerning the legal rights of detained minors, as well as provide direct legal representation to youth.

Delays in Reunification Due to Removal Orders

6. It is our understanding that each of our local facilities has a no-release policy for children who are deemed to have final orders of removal *in absentia* or removal orders obtained because of their participation in the Migrant Protection Protocol program ("MPP").

7. For example, I currently represent three minor siblings who entered in January of 2020, after they were ordered removed with their mother through the MPP program. The children have entered the U.S. twice, once in 2019 with their mother when they were returned to Mexico under MPP and again in January after they had been ordered removed by an immigration judge, but this time they entered as unaccompanied minors. Customs Border Protection ("CBP") detained the children and then turned them over to ORR custody. These children were detained for over two months at a shelter program in Maryland less than 50 miles from where their father/step-father was living. Their father/step-father completed all the requirements and requests made by the shelter staff for the purposes of reunification within two weeks of the children being detained and held in ORR custody, but ORR paused their reunification on the basis that it believed the children had an outstanding final order of removal. Indeed, a week or so later, ICE

informed us they would remove the children within a week's time. In order to stop their imminent removal and push for reunification we filed a complaint and a motion for a temporary restraining order ("TRO") with the Federal District Court in Washington D.C. Our TRO sought to stop these children's removal on the basis that the Department of Homeland Security ("DHS") had yet to issue and file a Notice to Appear, and require reunification of the minors with their father. Following a hearing on March 20, 2020 on the TRO, the children were reunified with their father within less than a weeks' time. We believe the only reason the children were reunified with their father was because we filed a federal suit to push for their reunification.

8. I also recently have been consulting with two other organizations and pro bono partners for two other children in ORR custody detained in El Paso, Texas and in Harlingen, Texas. These children, who like my clients, also had previously been in MPP proceedings and then reentered following a removal order by a judge under the MPP program. In one of those cases, I mentored a pro bono attorney in filing a federal complaint to stop the child's removal on the basis that the government had not issued them a new NTA following their most recent entry. The child also has a known sponsor living in North Carolina, but this reunification has been paused because ORR believed they had a final order. The child remains in detention despite having a close-family member who is willing to sponsor them out of ORR detention.

9. Our organization also represents a 17-year-old minor at a local shelter whose reunification with a grandparent was stopped after completion of all required paperwork, background checks, and a home study because the minor has an *in absentia* removal order. The minor has been detained for approximately three months. We filed a motion to reopen with the immigration court to reopen his case. When we filed this motion this triggered an automatic stay of the minor's removal while the court adjudicates the motion to reopen. The minor will turn 18 in April of this year and he is at risk of aging-out of ORR custody into ICE detention due to ORR's failure to release him to an otherwise suitable sponsor. We just learned ORR had paused reunification of this child to his

sponsor despite this Court's order issued several days ago on March 28, 2020, requiring ORR to reunify children without delay given the COVID-19 virus. This case represents a clear failure to comply with the Court's order to reunify children without delay.

<u>Delays in Reunification Due to COVID-19</u>

10. ORR has not provided clear guidance regarding the release of unaccompanied immigrant children during this pandemic. I am not clear in what circumstances release will be delayed due to COVID-19 related issues, or in what circumstances we can expect the release process to proceed as per usual.

11. Despite a lack of clear guidance from ORR, we understand directly from sponsors that they have experienced difficulties completing fingerprints, particularly in areas that are heavily affected by COVID-19 such as California. Home studies have similarly been postponed until further notice unless they can be completed virtually.

12. In the situations described above, the failure of ORR to provide accommodations for requirements which cannot reasonably be completed due to COVID-19, such as fingerprint cards, has delayed children's release for reasons that do not meaningfully protect children's safety.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 7th day of April, 2020, in Washington D.C.

_____
Claudia R. Cubas