# EXHIBIT E

# DECLARATION OF ELISA GAHNG

I, Elisa Gahng, declare as follows:

1. This declaration is based on my personal knowledge. If called to testify in this case, I would testify competently about the following facts.

2. My name is Elisa Gahng and I am an attorney licensed to practice in the State of New York. This declaration describes my experiences and observations working with unaccompanied migrant youth detained at Cayuga Centers in New York City.

<u>Experience Serving Youth in ORR Custody</u>

3. Founded in 2008, KIND is the leading national organization that works to ensure that no refugee or immigrant child faces immigration court alone. KIND provides children with legal representation at no cost, and works for positive systemic change in law and policy to improve the protection of unaccompanied immigrant and refugee children. KIND also engages in programming in Central America and Mexico to promote the best interests and protection of migrant children throughout the region. Since 2009, KIND has received referrals for more than 20,000 children from 70 countries. KIND has field offices in ten cities: Atlanta, Baltimore, Boston, Houston, Los Angeles, Newark, New York City, San Francisco, Seattle, and Washington, DC. Legal services professionals who serve children through KIND provide defense in removal proceedings and pursue immigration benefits and relief for which their clients may be eligible. KIND also employs social services coordinators throughout the country, providing unaccompanied children with the support they need outside of the courtroom. Many of KIND's clients have fled severe violence and threats to their lives in their countries of origin and may be eligible for asylum, special immigrant juvenile status, or other forms of humanitarian protection. Most of these children arrived in the U.S. unaccompanied by a parent or legal guardian, but some are members of families separated at the border.

4. I am the managing attorney overseeing the New York office of Kids in Need of Defense (KIND). I have worked at KIND since 2017.

5. KIND's offices in Seattle, Houston, San Francisco, New York, and Boston serve unaccompanied children in the legal custody of the Office of Refugee Resettlement ("ORR"). Since December 2019, KIND's New York office has served unaccompanied children in the legal custody of the Office of Refugee Resettlement ("ORR") who have been placed by ORR at Cayuga Centers ("Cayuga"), a care program within the ORR network of care providers. Since December 2019, KIND has served over 465 youth at Cayuga. Although the majority of these youth come from Mexico, Honduras, Guatemala, and El Salvador, youth placed at Cayuga may come from all over the world.

6. As the legal services provider for children at Cayuga, our attorneys provide ongoing presentations concerning the legal rights of detained minors and conduct legal screenings to assess their eligibility for immigration relief. We provide ongoing legal consultations to the children to whom we are providing direct legal representation, and we assist other youth at Cayuga with guidance and by attending court hearings in a capacity that the immigration courts term "friend of the court."

Cayuga Centers

7. I understand that Cayuga is licensed to provide transitional foster care and has capacity for up to 900 youths, from infants through age seventeen. Children in this program live with foster families in the New York City area and go to the shelter during the day, where they receive educational services. The program primarily serves "tender-aged" children, meaning that the majority of the children are under 12 years of age or are especially vulnerable. As of April 7, 2020, the population at Cayuga was about seventy-three children. Of those seventy-three children, forty-seven children are twelve years old or younger with twenty-one of them seven years old or younger. Six children are in custody at Cayuga with their mothers who are also minors.

Delays in Reunification

8. ORR has not provided KIND with clear and updated guidance regarding the release of unaccompanied immigrant children during the COVID-19 pandemic. ORR has not explained which circumstances may delay a child's release for reasons related to COVID-19.

9. On Friday, March 20, 2020, KIND received notification that ORR had instituted a "stop placement" order earlier that day, ceasing the placement of any unaccompanied children at ORR facilities in New York state. KIND was informed that the order was due, in part, to community spread of COVID-19 outside the facilities and concern that the facilities had thereby been compromised. Along with this notice, KIND was also informed that reunifications of children at Cayuga would be delayed due to staff who process sponsor fingerprints working at home.

10. In our capacity as legal services provider, KIND regularly receives from staff at Cayuga a census reporting the total number of children in the program, including any new arrivals or departures. KIND also regularly receives information on the children's expected or actual dates of reunification with a sponsor. On Monday, March 23, 2020, I received the census from Cayuga which reflected that twenty-three children had been reunified with their sponsors over the weekend.

11. On April 2, 2020, I received an update on the custody status of the 73 children at Cayuga in a spreadsheet provided to me by an assistant director of case management. That document indicates that:

    a. Fourteen children are designated as "pending release date," indicating that in each case, ORR's requirements for reunification had been completed;

    b. The cases of five additional children had been submitted to the ORR Federal Field Specialist on either March 25 or March 31, 2020 and were "pending FFS concurrence" or "pending FFS approval"; and

      c. One child had been accepted into a long-term foster care program and was "pending travel arrangements."

12. Among the fourteen children who were identified by Cayuga as having a "pending release date," eight have sponsors who are a biological parent and three have sponsors who are immediate relatives. The sponsors for these 14 children live in Alabama, Indiana, Louisiana, North Carolina, and Texas.

13. The April 2 update document provided by Cayuga expressly refers to "COVID-19" or the "pandemic" as delaying steps in the reunification process, such as fingerprinting of proposed sponsors or home study services, in the cases of at least nine children.

14. The April 2 document further indicates that the release of six children, who received removal orders in processes under the so-called "Migrant Protection Protocols," will be delayed until those children receive decisions on their appeals now pending with the Board of Immigration Appeals ("BIA"). I first emailed the Federal Field Specialists ("FFS") who review reunification applications on February 27, 2020 to inquire about ORR's policy of reunifying children with removal orders. I was informed by the FFSs on a phone call that they follow a protocol of consulting with Immigration and Customs Enforcement ("ICE") prior to reviewing the release of any children at Cayuga who have removal orders, in addition to reviewing evidence of any BIA appeal filings. On March 11, 2020 KIND staff attorney Gabriela Mendez emailed the ICE Field Office Juvenile Coordinator ("FOJC") for New York to confirm that ICE was providing input on the reunification of children who have removal orders. On March 13, 2020, the ICE FOJC responded by stating that ICE does not get involved with the reunification process. Following this email, on March 13, I emailed the FFSs, copying their supervisor, to request further clarity on whether children with removal orders in ORR custody undergo a different family reunification process from children without removal orders. On April 2, 2020, I elevated the issue further by emailing ORR Senior Federal Field Specialist Supervisor to again request clarity on ORR's policy. On April 6, 2020, one of the FFSs acknowledged by email that I was pending a response on my question.

Declaration of Elisa Gahng

4

15. Between March 24 and April 7, 2020, no children have been released from Cayuga for reunification or transferred to another facility.

16. On April 7, 2020, I received a list of nineteen children from an assistant director of case management at Cayuga who "will be discharged in the coming days." These children include the fourteen children designated as "pending release date" and five children whose cases were either "pending FFS concurrence" or "pending FFS approval." The list does not include the child who has been accepted into a long-term foster care program and does not include the six children who received removal orders in processes under the so-called "Migrant Protection Protocols."

17. I have made repeated requests for clarity and information about ORR's policy of reunifying children with removal orders over the course of five weeks and have not been provided any information.

18. In the situations described above, ORR has needlessly delayed children's release for reasons that do not meaningfully protect children's safety.

ORR COVID-19 Protocols

19. KIND has requested that ORR provide guidance on the steps it is taking to prevent the spread of COVID-19 among children in ORR care and among staff and service providers. On March 10, 2020, KIND, along with many other organizations that serve unaccompanied children in ORR custody, submitted a letter requesting that ORR provide a briefing to address the steps that ORR is taking to ensure the safety of all children in its care, as well as the safety of contractors such as legal service providers like KIND.

20. To date, ORR's published guidance includes information on steps to take if an ORR care provider finds that a child has contracted COVID-19, but does not provide further information about any precautionary measures that ORR facilities must take to protect children, staff, or visitors from COVID-19.

21. I was not informed by Cayuga or ORR regarding any temperature screenings or other risk screenings being conducted for children, staff or visitors. KIND staff last visited Cayuga on March 12, 2020 to meet with seven children. I understand that KIND staff did not experience any screening or other measures to prevent the spread of COVID-19 upon their arrival at Cayuga; their temperatures were not taken and they entered the facility without additional protocols. Following that visit, KIND commenced providing legal services to children at Cayuga by video conference in an effort to institute our own safeguards for staff and children.

22. On March 20, 2020, I received a phone call from Cayuga's vice president who informed me that moving forward, Cayuga would be required to keep a maximum of eight children in a room at any given time. For every four children, one Cayuga staff member would be required to be present in the room. Therefore, there would be a maximum of ten individuals in any given room.

23. On March 31, 2020, Cayuga's vice president called me to share that beginning on April 1, Cayuga would cease providing on-site services to the children in their custody. She informed me that foster families were instructed to keep the children at home and not to bring children to Cayuga for educational and other services.

24. I have been informed by Cayuga staff that the following individuals have tested positive for COVID-19:
   a. Two staff members, including one case manager;
   b. One foster parent, who subsequently died due to COVID-19 while two unaccompanied children were in their care; and
   c. One foster parent's partner who had exposure to two unaccompanied children.

In the case of the foster parent who died due to COVID-19, the two unaccompanied children in his or her care were not removed from the home until after the foster parent's death. In the case of the foster parent's partner who had exposure to two children, I was informed that the children would remain in that foster parent's care. When I inquired

about whether the children would be isolated from the individual who tested positive, Cayuga staff stated that the children would be quarantined from the adult in question. Cayuga has declined to share the identities of the above children, so KIND has not been able to talk to the children to hear whether they have been appropriately quarantined according to local and state officials' guidance.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 7th day of April, 2020, at Brooklyn, New York.

*[signature]*

Elisa Gahng