# EXHIBIT G

I, Dr. Julie DeAun Graves, declare as follows:

1. This declaration is based on my personal knowledge, except as to those matters based on information and belief, which I believe to be true. If called to testify in this case, I would testify competently about these facts.

2. My name is Julie DeAun Graves. I am a physician licensed to practice medicine in the states of Florida, Maryland, New Jersey, South Carolina, Texas, Virginia, Wisconsin, and in the District of Columbia. I am currently working in family medicine and public health private practice as the Associate Director of Clinical Services at Nurx. I have been certified by the American Board of Family Medicine since 1989. I obtained my medical degree at the University of Texas Southwestern Medical School in Dallas, Texas, and earned a Master's degree in Public Health and a Doctor of Philosophy in Management, Policy, and Statistics at the University of Texas School of Public Health. I previously served as Regional Medical Director for the Texas Department of State Health Services for the Houston region (during the health crises caused by the Ebola virus, highly pathogenic avian influenza, and Zika virus), as Medical Services Coordinator for the Texas Department of Aging and Disability Services, and as a medical consultant to the Texas Medical Board. The rest of my qualifications were set forth in paragraphs 3-5 of my prior declaration submitted on March 24, 2020 (Exhibit C).

3. I have reviewed the Defendants' Supplemental Response to Plaintiffs' Request for a Temporary Restraining Order and Preliminary Injunction (Dkt. 746) and Exhibit I (ORR Field Guidance #4, COVID-19 Discharge Guidance April 6, 2020) (Dkt. 746-11).

4. Page 1 of the ORR Field Guidance states that "If an ORR care provider facility (or in the case of transitional foster care, for individual foster homes) experience one or more confirmed cases of active COVID-19 infection in either children or staff, releases are temporarily postponed for all children at the care

provider facility or in the foster care home until ORR's Division of Health for Unaccompanied Children (DHUC) lifts the hold on release or allows the release of specific children on a case by case basis following CDC recommendations." Unless DHUC can provide this review almost instantly, the policy of automatically postponing release for any child in a facility with a confirmed COVID-19 case does not align with public health practice and only further serves to increase these children's risk of exposure.

5. People who are believed to have had contact with a person who is infected with COVID-19 should maintain quarantine for 14 days. These individuals should not be quarantined with other potentially exposed individuals, as this renders it nearly inevitable that many more people in the potentially-exposed group will eventually contract COVID-19.

6. Further, there is no way to quarantine a congregate care facility that has rotating staff members. Quarantine is the physical separation of a person reasonably believed to have been exposed to a communicable disease, but not yet symptomatic, in order to prevent the spread of disease. ORR-contracted congregate care facilities are not capable of maintaining adequate quarantine. Instead, staff members come in and out of the facility every day, presenting a revolving door of exposure risk. Each time a staff member enters the facility or a child or staff member contracts COVID-19, the "quarantine" is broken and the exposure time clock resets.

7. Both children known to be exposed to COVID-19 as well as children not known to be exposed to COVID-19 can be safely released to sponsors. Children who have been exposed can wear appropriate personal protective equipment (PPE) during transit and then quarantine at their sponsor's home for 14 days. The ORR Field Guidance already requires all children who are released to quarantine at their sponsor's home for 14 days. ORR Field Guidance at 2.

8. In their Supplemental Response, Defendants discuss children's release and state that "many sponsors are located in states that are currently under 'shelter in

place' in which residents' freedom of movement has been significantly curtailed in an effort to control the spread of COVID-19, such as California, Washington, and New York." Supp. Response at 30-31. As of April 7, 2020, the vast majority of states had implemented either shelter in place or stay at home orders. These orders should not be construed as reasons not to release children to sponsors in these states. In fact, states with shelter in place and stay at home orders are safer for children and their families than states that have not implemented these appropriate public health orders. Those states have greater exposure risk due to a higher proportion of people continuing to expose each other.

9. As noted on page 4 of the ORR Field Guidance, there are precautions that can be taken to ensure the safety of the child and the staff escort when traveling for the purpose of release. These include adhering to current recommendations for prevention measures such as handwashing, as well as using alternative transport locations where escorts would not be required to self-quarantine. There is no question that requiring children to remain detained in congregate care facilities is more dangerous than the travel required to release children to their sponsors. While there is level of risk in traveling at this time, the risk of exposure in congregate care environments—especially environments that already have confirmed COVID-19 cases—is much higher.

10. I declare under penalty of perjury that the foregoing is true and correct. Executed on April 7, 2020 in North Bay Village, Florida.

Julie DeAun Graves

---

Declaration of Dr. Julie DeAun Graves

3