# EXHIBIT I

# DECLARATION OF ERIN MAXWELL, LCSW

I, Erin Maxwell, declare as follows:

1.	This declaration is based on my personal knowledge. If called to testify in this case, I would testify competently about the following facts.

2.	My name is Erin Maxwell. I am a Licensed Clinical Social Worker (LCSW). This declaration describes the experience of the unaccompanied child, C█████ C████ G████, as she has related this experience to me during weekly meetings, as well as information gathered from speaking with her case manager and common law father-in-law.

<u>Experience Serving Youth in ORR Custody</u>

3.	I am a Licensed Clinical Social Worker (LCSW) and have worked as a social worker with children, youth and families since 2005. I graduated from the University of California, Berkeley with a BA in 2003 and obtained my Masters of Social Welfare in 2006. I have been at Legal Services for Children since May 2010 except for a brief period from January 2019 to April 2019 during which time I worked at another organization that represents unaccompanied minors. Prior to working at Legal Services for Children, I worked at Luther Immigration and Refugee Services (LIRS) making best interest recommendations about the safe placement of immigrant children in ORR custody and with detained children in ORR custody at the Florence Immigrant and Refugee Rights Project. I have worked internationally with immigrants and refugees at the United Nations High Commissioner for Refugee Office in Panama.

4.	At Legal Services for Children I work on an attorney/social worker team providing KYR presentations and legal screenings to unaccompanied immigrant children detained in the custody of the Office of Refugee Resettlement.

<u>Experience of C█████ C████ G████</u>

---

Declaration of Erin Maxwell

1

5. C▓▓▓ C▓▓▓ G▓▓▓ "C▓▓▓" is a 17 year old indigenous youth from Mexico. She speaks both Mixteco and Spanish. C▓▓▓ arrived to the United States with her 18 month old child and common law husband. C▓▓▓ is almost eight months pregnant. C▓▓▓'s husband, just a few years older than her, is over 18 and was subsequently transferred to ICE custody. C▓▓▓ and her son were transferred to ORR custody and placed at the Bethany Christian Services shelter in Modesto, California. It is my understanding that this is a shelter that is licensed to care for up to 12 pregnant and parenting youth and their children.

6. I was last able to meet with C▓▓▓ in person on March 10, 2020 prior to the implementation of California's shelter in place order. Starting the week of March 16, 2020, I have had weekly video meetings with C▓▓▓.

Delays in Reunification Due to COVID-19

7. C▓▓▓ is almost eight months pregnant. She is due on May 20th, 2020 and has been told by her current physician that due to complications from her first pregnancy she will require a cesarean section with her second child. While she has had regular prenatal visits since her arrival to the detention facility, it was only at her last visit on April 1, 2020 that she was provided with proper face covering. She has reported that staff at the facility have since started wearing face coverings as well.

8. C▓▓▓ and her son have two potential sponsors: a maternal aunt in California and her partner's father, who she refers to as her father-in-law, in Mississippi. C▓▓▓ has never met her aunt and would prefer to live with her father-in-law. C▓▓▓ considers her father-in-law to be like a father to her and she and her son have lived with him in the past. Both C▓▓▓'s father-in-law and aunt have submitted the completed ORR family reunification packet. C▓▓▓ would like to be released prior to the birth of her second child. She has expressed a desire to be with family and receive support from family, rather than with strangers at a detention facility after her child's birth. Were C▓▓▓ to give birth in detention, her 18 month old son would be left at the detention center without

---

Declaration of Erin Maxwell

2

1. his mother or his father, who remains in ICE detention. Because C▮ will have a cesarean section, her son might go several days without one of his primary caregivers in the hands of strangers. Were they to be reunified with C▮'s father-in-law, her son would be with his grandfather while awaiting his mother's return from the hospital.

9. I was informed by C▮'s case manager at Bethany Christian Services that neither C▮'s father-in-law, nor her aunt have been able to have their fingerprints done as required by ORR because the digital fingerprinting sites closest to their homes are closed and police stations are not providing this service because it is not deemed essential. C▮'s father-in-law also confirmed to me that he has not been able to have his fingerprints done for these reasons.

10. In the situation described above, ORR has needlessly delayed C▮ and her son's release for reasons that do not meaningfully protect their safety. Moreover, it is best for both C▮ and her son's emotional well-being to be reunified with their sponsor in Mississippi as soon as possible. This will allow C▮ to receive the much needed familiar support that she will require post partum and will ensure that her son does not experience another family separation when his mother gives birth.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 7th day of April, 2020, at Kensington, California

Erin Maxwell