# EXHIBIT V

# SUPPLEMENTAL DECLARATION OF ANDREA MEZA

I, Andrea Meza, swearing under penalties of perjury, make the following declaration:

1. I previously submitted a declaration to the Court in this matter. I now submit this supplemental sworn declaration. The facts set forth below are known personally to me and, if called as a witness, I could and would testify competently thereto under oath.

2. My name is Andrea Meza and I am an attorney and the Director of the Family Detention Services Program at the Refugee and Immigrant Center for Education and Legal Services ("RAICES"). I have been the program Director since March 2019. Prior to my position as Director I served as the Associate Director from October 2018-March 2019. From September 2015 to July 2017 I was an Equal Justice Work Fellow and provided direct legal services to families at Karnes. I have been licensed in the state of Texas since November 6, 2015.

3. I have read the Declarations of Michael Sheridan and Melissa B. Harper, both dated April 6, 2020, and reviewed the video of the Karnes family detention center submitted to this Court. Based on my experience, both declarations contain numerous false statements.

## ICE and GEO Adherence to the Family Residential Standards

4. In his declaration, Michael Sheridan states that it is his role to "ensure that the Family Residential Standards (FRS) are upheld." In my experience, Immigration and Customs Enforcement (ICE) Enforcement and Removal Operations (ERO) is often unaware of deficiencies in the observation and implementation of the Family Residential Standards at Karnes. For example, I have raised concerns about actual availability of 24 hour medical care as required by FRS §4.3 to ICE since at least 2016, most recently to Assistant Field Office Director Anthony Hofbauer (AFOD Hofbauer) on March 20, 2020. Each time I have brought up this concern, ICE insists that there is "walk-in" access to medical care, despite hundreds of client accounts that families wait for hours in medical, often to be turned away.

5. I have also brought up numerous and repeated deficiencies in adherence to the Family Residential Standards regarding legal visitation, including GEO's failure to adhere to set visitation hours, GEO's failure to accommodate legal visitation through mealtime, GEO's failure to maintain confidential visitation spaces, and GEO's failure to make good faith efforts to locate detained persons identified for legal visitation as required by FRS §5.8. Each time I have raised concerns about legal visitation, ICE has not been aware of the issue prior to my complaint. It has not been my experience that ICE effectively ensures adherence to the Family Residential Standards at Karnes.

**Remote Visitation**

6. In his declaration, Michael Sheridan states that Karnes "has 5 tablets available with video visitation and audio capabilities, which residents can use to communicate with attorneys." However, since my last declaration, no more than three iPads remain sporadically available for legal visitation. On March 25, 26, 27, and April 8 and 9, 2020, I had to specifically request that the iPads be made available. I have repeatedly requested an update, most recently on April 8, 2020, as to when additional iPads will be provided for legal visitation. Currently, only three reliably functional phones are available in the legal visitation area. I have repeatedly asked whether more phones may be made available for legal visitation as suggested by AFOD Hofbauer. My most recent communication regarding additional phones was on April 8, 2020. AFOD Hofbauer has not stated whether additional iPads or phones will be provided for legal visitation.

7. In his declaration, Michael Sheridan states that "attorneys may elect to wear self-provided PPE depending upon their client's health." However, on March 20, 2020, AFOD Hofbauer told me that beginning the following week, attorneys would be required to provide their own PPE in order to conduct an in-person legal visitation. This was not communicated to be an elective choice. It is my current understanding based on my last communication with AFOD Hofbauer on the topic, that attorneys are now required to provide their own gloves, protective eyewear, and face masks in order to conduct an in-person legal visit.

**Efforts to Comply with CDC Guidelines**

8. The mandates of the Family Residential Standards and those of the CDC guidelines for congregate settings are incompatible and cannot be applied simultaneously at Karnes. The Family Residential Standards purport to create a "family friendly" prison environment that allows more freedom of movement than adult ICE detention centers, yet the CDC guidelines for congregate settings require restraints on such freedom of movement. The two cannot be effectively reconciled.

9. For example, my experience managing our team in their provision of legal services at Karnes illustrates that ICE's efforts to abide by the CDC Covid-19 guidelines in a family detention center severely curtails due process. Prior to the Covid-19 pandemic, on average, 4-7 RAICES employees met with approximately 50 or more clients per day at Karnes. Now, we have begun our remote visitation services an hour earlier than usual, yet we are able to see no more than 20-30 clients per day. Because of a rule that limits the number of people in visitation to no more than 10, when 2-3 families are present, visitation is often at capacity. However, this rule does not achieve the social distancing goals outlined in CDC guidance. Rather than keeping 10 people together in a cohort without contact outside of the group of 10, the rule allows for a "rotating door" of people to enter and exit the 10 person group. These individuals could have recently congregated with any number of people at Karnes or have touched any number of high-touch surfaces infrequently cleaned at the detention center. There is not PPE nor are there cleaning products made available for families using shared space in visitation.

10. Meaningful access to counsel and due process cannot be ensured while futile attempts are made to apply social distancing guidelines at Karnes. The AFOD's efforts to find additional visitation space over the last two weeks have been unsuccessful. Asylum Office spaces and Immigration Court rooms at times remain empty at Karnes, but the AFOD has not been able to coordinate scheduling to expand the limited visitation space at Karnes. To coordinate sending urgent client documents to RAICES, on April 7, 2020, the AFOD arranged for a fax machine to be placed in visitation.

However, now, more than 10 individuals must be permitted entry into visitation in order for families to access the fax machine while legal visits occur. It is unclear how the 10 person rule continues to be applied while people who are not in attorney meetings access the fax machine. Meanwhile, families in quarantine for medical observation at Karnes do not have access to confidential phone lines or iPads to speak to counsel.

11. In addition, though the video of Karnes at approximately minute marker 13:36 indicates that children from no more than one family unit are permitted in the day care center at once, this is false. In fact, today, three client families meeting with our staff left their children in daycare at the same time.

12. From March 31, 2020 to April 8, 2020, RAICES administered a questionnaire regarding ICE and GEO compliance with the CDC guidelines for congregate settings. Fifty one individuals detained at Karnes participated in the questionnaire, and responded to as many questions as they could. The results illustrate ICE and GEO's failure to meet the standards laid out by the CDC. Specifically:

   a. The overwhelming majority, 39 out of 44 participants, say that everyone or over 100 people are allowed outside at the same time

   b. 21 out of 38 participants say they see GEO clean regularly touched surfaces 0 or 1 time per day.

   c. 5 out of 22 of participants said that they received disinfecting cleaning liquid when assigned to clean by GEO.

   d. More than half of the participants, 26 out of 51, said that they were experiencing at least one symptom related to COVID-19.

   e. Only 3 out of 37 participants said that they have received updates from GEO about COVID-19, and almost three quarters said that they have never received updates from GEO about COVID-19.

  f. All 41 participants who responded to a question about news access said that they do not have access to the news.

  g. Almost three quarters of the participants, 37 out of 51, said that there are no signs explaining the symptoms of COVID-19, and even more that say that there are no signs explaining what to do if they or a family member are experiencing symptoms of COVID-19.

  h. 25 out of 36 participants who said that there are signs said that they are not in their preferred language.

  i. 32 out of 51 participants said that there is no medical professional available to answer questions about COVID-19.

  j. Almost three quarters, or 36 out of 50 participants, said that it is not possible to be at least 2 meters away from others in their room.

  k. The vast majority of participants with school aged children, 26 out of 33, said that their children are not in school; more than three quarters of them, 21 out of 33 said there are no lessons for their children while they stay in their rooms.

**Efforts to Release Minors and Their Parents**

13. Since January 1, 2020, RAICES has filed 36 requests for release for families detained at Karnes. To date, ICE has not responded to 11 outstanding requests for release. The number of outstanding requests and date of filing are as follows: one request filed March 19, four requests filed March 24, one request filed March 26, one request filed March 27, and four requests filed after March 30th. In my previous declaration submitted to this Court, I noted that ICE often coordinates release within a day or two of notification to a sponsor. Requests pending more than a week indicate that ICE has not applied this Court's order to make and record efforts for prompt release of parents with children based on obligations under the *Flores* Settlement Agreement.

14. The continued detention of families at Karnes is completely discretionary. As Melissa Harper noted in her declaration, DHS has the discretion to place families into

removal proceedings under Section 240 of the INA, or into expedited removal proceedings under Section 235 of the INA.[1] This discretionary decision impacts families' release from Karnes. Ms. Harper noted that processing times for release of families placed into Section 240 of the INA are significantly shorter than for those placed into expedited removal, thus asserting that release of families in proceedings under Section 240 can be executed much faster than for families in other types of proceedings. Ninety-one percent of the families RAICES has represented at Karnes since January 2020 recently entered the United States and were placed into expedited or reinstatement of removal proceedings, rather than proceedings under Section 240. DHS, through CBP and ICE, has the discretion to place families into removal proceedings under Section 240 of the INA, rather than proceedings under Section 235 of the INA, and thereby arrange their prompt release to pursue relief in immigration court with their sponsors, but DHS has failed to execute its discretion in this manner. Therefore, any delays in prompt release of families from Karnes are caused by DHS' own discretionary decisions.

15. In their declarations, both Michael Sheridan and Melissa Harper indicated that ICE's prolonged detention of families is based on stays of removal. This is false. None of the 90 RAICES client families at Karnes have a "judicial stay." Their cases are currently pending final adjudication. ICE has released dozens of families pending review before an immigration judge or reconsideration of a negative interview, or without interview. These individuals complete the fear screening process outside of detention. For example, when the asylum office is unable to locate an interpreter for a Reasonable Fear Interview, DHS routinely releases the family with instruction that the Reasonable Fear Interview will occur outside of detention with an interpreter to be provided by the applicant.

---

[1] DHS may place those with prior removal orders who enter the United States without inspection, into reinstatement of removal proceedings under Section 241(a)(5) of the INA. Reinstatement of removal proceedings are often colloquially referred to as expedited removal proceedings due to 1) the expedited nature of removal in the reinstatement process and 2) the fear screening interview similar to that which may occur in Section 235 expedited removal proceedings.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: April 9, 2020

San Antonio, Texas

Andrea Meza