# Defendants' Exhibit 11

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM BARR, ATTORNEY GENERAL OF THE UNITED STATES, *et al.*, <br><br> Defendants. | Case No.: 2:85-CV-4544 DMG (AGRx) <br><br> District Judge Dolly M. Gee |

## DECLARATION OF JALLYN SUALOG, DEPUTY DIRECTOR, OFFICE OF REFUGEE RESETTLEMENT

I, Jallyn Sualog, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that my testimony below is true and correct:

1. My position and experience are detailed in my declaration of April 3, 2020.

2. I am submitting this declaration to provide additional information in response to the Court's recent Order Extending Temporary Restraining Order and Permitting Supplemental Briefing (ECF No. 768). A number of the Court's questions were already answered in my declaration of April 9, 2020, and I do not repeat those answers here.

3. ORR does not have a blanket ban on releasing children to or from states where there are "shelter in place" or "stay at home" orders, thus, the fact that a number of states (42 according to ECF No. 768) have "stay at home" orders would not affect children being released to or from those states.

4. The discharge numbers from my April 9 declaration and continuing discharge numbers demonstrate that during the period from March 15 to April 15, when many states were imposing shelter in place, ORR released an average of 64 (actually 63.6) UAC per day. In addition, as census declines, daily discharge also could decline, as the percentage of children without an identified sponsor, or for whom a sponsor is not viable as percentage of the total increases.



5.  My April 9, 2020 declaration explains the April 6 ORR Guidance. ORR may determine that postponing release of a UAC to a sponsor who lives in a confirmed shelter in place location is in the child's best interest, but each unification decision is made on a case-by-case basis, in compliance with the April 6, 2020 Guidance. Please refer to that guidance regarding an active COVID-19 infection in either the care provider or the home of the sponsor. That guidance explained how ORR performs an individualized assessment, on a case-by-case basis, based on recommendations of medical professionals. In cases where there is an active COVID-19 infection at the care provider, staff will assess which children were potentially exposed to COVID-19 and require quarantine to prevent further spread of the virus and consult with the local public health jurisdiction. Even if there is a temporary hold on releases due to an active COVID-19 infection, as well, the Division of Health of Unaccompanied Children can allow release of specific children on a case-by-case basis following CDC recommendations on the public health management of persons with potential exposure to COVID-19. Continuing releases when there is an active COVID-19 infection at the care provider, without taking the time to evaluate potential exposures, could result in further transmission of the virus both within the facility and to external communities. Factors that are taken into consideration when determining if an exposed minor can complete the required 14 day quarantine at the sponsor's home include: whether commercial air travel is required to travel to the sponsor's home, presence of health conditions that place the child or sponsor household at higher risk, and the ability of the sponsor to maintain the child's quarantine and active symptom monitoring for 14 days.

6.    I also discussed fingerprints in my April 9, 2020 declaration. At the time of this declaration, ORR does not have a policy to eliminate its fingerprinting requirements. A number of the cases where potential sponsors thought they were not able to obtain fingerprints have been resolved, with the care provider able to locate a facility and assist the applicant in the process, thus making fingerprints available. Some of ORR's digital fingerprint locations remain open, without reduced hours. Others reduced hours but did not close. Others closed, but the closure is temporary, and the digital fingerprint provider has indicated that such locations will be back online as soon as personal protective equipment ("PPE") becomes readily available. ORR provides frequent updates to its provider network regarding any adjustments in schedules. At this time, only nine digital fingerprint locations are offline entirely, and ORR expects the locations to be online when there are sufficient supplies of PPE. As noted above, as well, the discharge rate has remained steady, and ORR closely monitors its discharge rate to identify potential inefficiencies in processes.

7.    As noted in my April 9, 2020 declaration, most parents and legal guardians (as well as immediate relatives, such as grandparents and adult siblings) and aunts/uncles or even first cousins who are or were the minor's primary caregiver do not need to submit fingerprints. Nor does ORR have a blanket policy of requiring fingerprints for all household members. The below chart contains ORR fingerprint requirements.

| | | | |
|---|---|---|---|
| FBI National Criminal History Check, based on digital fingerprints or digitized paper prints | Determines whether a sponsor or adult household member (as applicable) has a criminal history, has a profile in DHS IDENT, has been convicted of a sex crime, or has been convicted of other crimes that compromise the sponsor's ability to care for a child. | Potential Sponsors in Category 1 and Category 2A. | Where a public records check reveals possible disqualifying factors under 2.7.4; or where there is a documented risk to the safety of the unaccompanied alien child, the child is especially vulnerable, and/or the case is being referred for a home study |
| | | Potential Sponsors in Categories 2B and 3. | In all cases. |
| | | Non-sponsor adult household members and adult caregivers identified in a sponsor care plan. | Where a public records check reveals possible disqualifying factors under 2.7.4; or where there is a documented risk to the safety of the unaccompanied alien child, the child is especially vulnerable, and/or the case is being referred for a home study |

8.    ORR also differs from state child welfare agencies, because children are not being removed from abuse, abandonment, or neglect in the parent or legal guardian's home. Thus, for example, a California policy on emergency placements and fingerprinting would not necessarily be instructive for ORR, as the minors in congregate care are not being removed from a home, but rather, are already housed

in a state-licensed facility. In addition, as noted above, ORR continues to have digital fingerprint locations, and expects closed locations to come back online.

9. For the reasons stated above, and in my April 6, 2020 declaration, ORR has made the judgment that the situation does not warrant jettisoning important safeguards that ensure children are not released to custodians with dangerous criminal records. Such applicant custodians are not considered eligible or vetted, until clearing the criminal fingerprint check.

10. Migrant Protection Protocols do not per se affect a minor's eligibility to be released, and ORR is not an immigration enforcement agency. However, if Immigration and Customs Enforcement ("ICE") informs ORR that the minor has an executable final order of removal, and the minor is scheduled to be deported to his or her home country pursuant to that final order of removal in short order, then ORR will work with ICE to ensure the minor appears to be removed. In these cases, ICE has informed ORR that the minor is not awaiting removal proceedings, but in fact, is subject to a final order of removal that is to be imminently executed. If it becomes apparent that deportation is not imminent, then ORR follows ordinary release protocols.

11. Finally, ORR disagrees that the consensus of all experts is that any form of congregate care will put a child in custody at higher risk of infection *relative* to the expedited release to unvetted sponsors. A CDC expert opined to the contrary. *Lucas R. v. Azar,* Case No. 2:18-CV-5741 DMG, ECF 230-11, ¶¶ 22-26.

I, Jallyn N. Sualog, declare under penalty of perjury that the foregoing and true and correct. Executed on April _16_, 2020.

_____
Jallyn Sualog