# EXHIBIT A

I, Dr. Julie DeAun Graves, declare as follows:

1. This declaration is based on my personal knowledge, except as to those matters based on information and belief, which I believe to be true. If called to testify in this case, I would testify competently about these facts.

2. My name is Julie DeAun Graves. I am a physician licensed to practice medicine in the states of Florida, Alabama, Maryland, New Jersey, South Carolina, Texas, Virginia, Wisconsin, and in the District of Columbia. I am currently working in family medicine and public health private practice as the Associate Director of Clinical Services at Nurx. I have been certified by the American Board of Family Medicine since 1989. I obtained my medical degree at the University of Texas Southwestern Medical School in Dallas, Texas, and earned a Master's degree in Public Health and a Doctor of Philosophy in Management, Policy, and Statistics at the University of Texas School of Public Health. I previously served as Regional Medical Director for the Texas Department of State Health Services for the Houston region (during the health crises caused by the Ebola virus, highly pathogenic avian influenza, and Zika virus), as Medical Services Coordinator for the Texas Department of Aging and Disability Services, and as a medical consultant to the Texas Medical Board. The rest of my qualifications were set forth in paragraphs 3-5 of my prior declaration submitted on March 25, 2020 (*Lucas R.* Dkt. 227-4).

3. I have reviewed the Defendants' Second Supplemental Response to Plaintiffs' Request for a Temporary Restraining Order and Preliminary Injunction ("Defendant's Second Supp. Response") (Dkt. 772), Exhibit 11 (Declaration of Jallyn Sualog) (Dkt. 772-6). I previously reviewed Exhibit I (ORR Field Guidance #4, COVID-19 Discharge Guidance April 6, 2020) ("ORR Field Guidance") (Dkt. 746-11) and Exhibit K (Declaration of Amanda Cohn) (Dkt. 736-11).

4. As COVID-19 continues to spread throughout the United States, it has had a particularly devastating impact on congregate care environments, such as prisons and

nursing homes. Clusters of COVID-19 cases at prisons are some of the largest known sources of COVID-19 infections in the entire country. Unfortunately, ORR's Heartland Alliance Shelter in Chicago is an example of how quickly the virus can spread once it has entered a congregate care facility. On April 13, nineteen children and two staff were reported as having positive COVID-19 tests, with 10 of the 19 children having no symptoms. On April 14, thirty-seven children were reported as having positive COVID-19 tests. This number of cases and the rapid progression of the spread of infection in the Heartland facility shows that children are very likely to be infected in these congregate facilities.

5. Emerging research indicates that a significant number of individuals infected with COVID-19 are asymptomatic. However, individuals who are positive for COVID-19 and asymptomatic may still transmit the disease to others. The $R_0$ is the number of people that a contagious individual is likely to infect by exposure. For COVID-19, the $R_0$ is estimated to be between 2 and 5, so for every infected individual, two to five people will become infected by exposure. The $R_0$ will increase in a congregate setting due to the staff entering the building from the community and going back out into the community daily, and the impossibility of maintaining adequate distance apart for the detained children.

6. Unfortunately, Dr. Cohn's declaration (Dkt. 736-11) did not take this into account. In paragraph 22, Dr. Cohn states that the children in ORR facilities are "currently held in well-controlled environments." This is false. The spread of COVID-19 within ORR facilities is evidence that ORR guidelines are not adequate to protect children from infection. In paragraph 24, Dr. Cohn states that children would be exposed more during travel and in the community than in ORR facilities. Because we now have evidence that spread within an ORR facility is rapid and wide, this statement does not stand. It is possible to safely release children to sponsors even if air travel is required – children may wear appropriate personal protective equipment and travel by plane with seating spaced apart from other passengers. With the

Declaration of Dr. Julie DeAun Graves

2

understanding that children's sponsors will have different capabilities in terms of maintaining quarantine, it is my professional opinion that it is still likely safer to release children to sponsor's homes than to keep them in congregate facilities which cannot provide adequate social distancing and in which infection is spreading rapidly.

7. Page 1 of the ORR Field Guidance states that "If an ORR care provider facility (or in the case of transitional foster care, for individual foster homes) experience one or more confirmed cases of active COVID-19 infection in either children or staff, releases are temporarily postponed for all children at the care provider facility or in the foster care home until ORR's Division of Health for Unaccompanied Children (DHUC) lifts the hold on release or allows the release of specific children on a case by case basis following CDC recommendations." The problem with this approach is that automatically postponing release for a child in a facility with a confirmed COVID-19 case only further serves to increase the child's risk of exposure to the virus. Postponing the release of children in facilities with known COVID-19 exposure is like leaving them in a burning house rather than going in to rescue them and take them to safety. It is especially concerning that the ORR Field Guidance does not provide a suggested or required timeline for the completion of the DHUC case reviews.

8. On page 21, Defendants state that "[t]he guidance places responsibility with the health professionals in the DHUC, and allows case-by-case releases, *which permits time to discern which children were potentially exposed to COVID-19 and therefore require quarantine to prevent further spread of the virus (the primary purpose of the pause in releases), and to evaluate whether children are at higher risk of severe disease and require more intensive medical monitoring*." Defendant's Second Supp. Response (emphasis added). If the two primary purposes of the DHUC case reviews are to 1) determine children's potential exposure, and 2) evaluate children's risk of severe disease, then these case reviews should be able to be completed within 1-2 hours of the confirmed COVID-19 case.

9. First, ORR care providers should have a very clear idea of the daily physical interactions of children and staff members in their facilities. Once a care provider is aware that a child has tested positive for COVID-19, they should be able to immediately identify the other children and staff members with whom that child has recently interacted. Similarly, if a staff member tests positive for COVID-19, care providers should be able to immediately identify the other children and staff members with whom that staff member has recently interacted. Because the staff members are supposed to be undergoing screening each time they enter the facility, these records should be up to date and available to decision-makers. Additionally, staff should be making contemporaneous records of each child's activities and locations if they are indeed implementing appropriate distancing.

10. Second, ORR care providers should already know whether a child in their custody has a pre-existing medical condition such that contracting COVID-19 would present a risk of severe disease and implicate a need for more extensive medical monitoring. Each child should have had a thorough intake and have records in place of their health status and health challenges and vulnerabilities. Children with underlying chronic chest conditions (such as asthma or cystic fibrosis) and children with compromised immune systems are at increased risk of serious illness from COVID-19. As the entities responsible for these children's care, I would expect care providers to already be aware if a child in their custody had one of these chronic conditions. Therefore, if a child or staff member tests positive for COVID-19, a care provider should be able to immediately provide a list of children in their custody at risk of severe disease to DHUC.

11. It is worth noting that the ORR Field Guidance does not require ORR care providers to make any efforts to identify or provide special protections for children at risk of severe disease, yet DHUC is required to evaluate this information when deciding whether to release children who have already been exposed to the virus.

Declaration of Dr. Julie DeAun Graves

4

12. On page 21, Defendants state that "[f]actors that are taken into consideration when determining if an exposed minor can complete the required 14 day quarantine at the sponsor's home include: whether commercial air travel is required to travel to the sponsor's home, presence of health conditions that place the child or sponsor household at higher risk, and the ability of the sponsor to maintain the child's quarantine and active symptom monitoring for 14 days." As an initial matter, it is not clear to me why a health professional's opinion is required or helpful in considering air travel arrangements or understanding a sponsor's ability to maintain quarantine.

13. If a child has been exposed to COVID-19, they are more likely to expose more people to the virus by staying in the congregate care facility than they would if released to quarantine for two weeks at their sponsor's home. The necessity of utilizing safe commercial air travel to effectuate release to a sponsor should not prevent the release of a child to their sponsor. As noted above, children taken on a relatively empty planes with seating distant from other passengers, as airlines are currently doing, is safer than being in the ORR facilities which cannot provide adequate distance and in which infection is spreading rapidly. By remaining in a congregate care facility, children stay in close contact with other children as well as a group of staff members that rotate between the facility and the community.

14. While the ORR Field Guidance states that DHUC will rely on "CDC recommendations" to allow the release of children on a case-by-case basis (page 1), it does not indicate the specific CDC recommendations to which they are referring. Any criteria used to determine the continued detention (and prolonged exposure) of a child should be evidence-based and clearly indicated.

15. I declare under penalty of perjury that the foregoing is true and correct. Executed on April 22, 2020 in North Bay Village, Florida.

*Julie DeAun Graves*

Julie DeAun Graves

---

Declaration of Dr. Julie DeAun Graves

5