# EXHIBIT C

# DECLARATION OF ANTHONY ENRIQUEZ, ESQ.

I, Anthony Enriquez, declare as follows:

1. This declaration is based on my personal knowledge. If called to testify in this case, I would testify competently about the following facts.

2. I am the Director of the Unaccompanied Minors Program of Catholic Charities Community Services of the Archdiocese of New York, (CCCS-NY) and an attorney licensed to practice in the State of New York. This declaration supplements my April 7, 2020 declaration and addresses events that have occurred since that time.

ORR's Lack of Transparency Regarding COVID-19 Issues

3. As noted in my April 7 declaration, to be effective advocates, legal service providers need up-to-date guidance from ORR regarding changes in policies and practices impacting the safety, welfare, and release of our clients to their sponsors. During the COVID-19 pandemic, the lack of information and transparency from ORR regarding release policies has been an ongoing challenge to our advocacy for our clients' expressed wishes.

4. We continue to receive new information on these policies from ORR's legal papers in response to the *Flores* plaintiffs' TRO motion rather than from ORR itself. I have reviewed the April 16, 2020 Declaration of Ms. Sualog, and again, it includes information about ORR's release practices regarding COVID-19 that have not otherwise been shared with legal service providers, including information on relevant factors ORR will assess when determining whether to release a child who may have been exposed to COVID-19 while in ORR care. Our program currently works with five different FFSs, each of whom must exercise their own discretion to make release decisions. Without knowing the policies or standards that exist to guide their discretion, it is difficult to

advocate for clients who direct us to pursue their release. Knowing these release factors will now allow us to provide concrete evidence to help the FFSs exercise their discretion according to policy.

5.      In our experience working with the shelters where we provide legal services, there is no discernable policy on sharing information with attorneys regarding whether our clients have tested positive for COVID-19 or been exposed to someone who has tested positive. Despite affirmative requests for such information, we continue to learn it from court filings, press reports, and direct client contact. Each of these sources carries limitations. Court filings are responsive only to points raised in litigation; press reports reflect incomplete, leaked information that lags behind real-time accounts; and clients are unaware of whether other shelter residents or staff have tested positive for COVID-19. We are aware of at least one shelter, Heartland, where 42 children have tested positive. We hope that our advocacy can help prevent that outcome at the shelters where we provide legal services.

6.      Beyond generalized reference to HIPAA and privacy concerns, ORR has not provided us a basis for denying us generalized information about our client's exposure to COVID-19. When we must rely on incomplete accounts of COVID exposure, we are hamstrung in our efforts to provide clients with relevant knowledge they need to make informed decisions about their legal rights.

<u>On-going Barriers to Release of Unaccompanied Children</u>

7.      Since submitting my earlier declaration, I am heartened that ORR appears to have relaxed blanket policies impeding or freezing release of our clients in New York. Previously, several of our clients' releases had been on hold despite having FFS approval or pending FFS approval after submission of all relevant documents. Now, all but three children in these groups have have been reunified. Recently, a client whom we had previously been told would not be released because of a final order of removal related to

the Migration Protection Protocols was, in fact, reunified with a sponsor. These releases occurred shortly after the TRO rulings issued in response to plaintiffs' motion and the spotlight being shined on release issues.

8. Unfortunately, some of our clients' releases continue to be delayed because of the difficulty of completing fingerprinting and home studies during the COVID-19 closures. At the time of this writing, we have at least seven clients whose release approval is on hold due to the lack of fingerprinting and five clients whose release is on hold pending a home study. Though two of the home studies are mandatory, the others appear to be discretionary. These clients have already been detained for an average of about 51 days.

9. One of the children detained pending a home study is seeking reunification with his mother in New York City, but because of the hold on home studies, remains in congregate detention. Two other clients are also seeking reunification in New York City with a relative and their reunifications are also delayed for home studies.

10. In addition, we have another client seeking reunification with his father. But the case is now considered a CAT-4 case because his father lost his job, was forced to move, and has not been able to provide the demanded documentation of an address change. In these unique circumstances, we would hope ORR could accept alternative, other reasonable means to show proof of address. Instead, our client has been told he would need to explore LTFC as an option instead of living with his father.

11. During this time of extreme uncertainty, stress, and risk of COVID exposure, clients have told us that their prolonged detention is causing them anxiety, sadness, and fear. They continue to direct us to advocate for their prompt release, including by requesting waiver of fingerprinting or a discretionary home study completed prior to release.

12. Given reasonable child welfare concerns, I do not advocate for a blanket waiver of discretionary release requirements related to fingerprinting or home studies. However, in light of the uncertainty concerning the duration of shelter-in-place orders, in situations that do not raise red flags for a child's safety, I believe that ORR could reasonably

consider modifying release policies concerning discretionary fingerprinting and home studies. As I noted in my previous declaration, ORR itself has frequently modified its fingerprinting policies, including not requiring them at all. I am concerned that ORR may instead return to the more onerous fingerprinting requirements in light of reports by Politico of changes in ORR leadership and plans to fingerprint all adults in all sponsors' households. This policy, previously in place during 2018 and since rescinded, resulted in significant delays in release without meaningfully enhancing children's safety.

13. Regarding home study requirements, at a minimum, ORR could adopt reasonable modifications to discretionary home studies that take into account both child welfare and minimization of unnecessary community exposure to COVID. For example, some home studies could be initiated over the phone or via video to determine whether a home visit is warranted. If no safety concerns arise through a phone or video call, ORR might consider a discretionary waiver of the in-home portion of the study.

14. If such changes to policy were to be made, even on a case-by-case basis, ORR should proactively share such official guidance with legal service providers and care providers. In the past, as when fingerprinting requirements have suddenly changed, children have expressed confusion as to the reasons why their reunification is delayed. Without knowledge of the current policies being applied to releases, we are impeded from informing children about their legal rights. Similarly, the absence of official guidance concerning discretion to relax home study requirements could foreseeably create confusion and inconsistent practices, leading to unnecessarily prolonged detention of children.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 22nd day of April, 2020, at New York, New York.

_____
ANTHONY ENRIQUEZ

Declaration of Anthony Enriquez