# EXHIBIT D

# DECLARATION OF ANA DEVEREAUX

I, Ana Raquel Devereaux, declare as follows:

1. This declaration is based on my personal knowledge. If called to testify in this case, I would testify competently about the following facts.

2. My name is Ana Devereaux. and I am an attorney licensed to practice in the State of Michigan. This declaration describes my experiences and observations working with unaccompanied migrant youth in ORR custody.

<u>Experience Serving Youth in ORR Custody</u>

3. Since 2014, I have been an attorney at Michigan Immigrant Rights Center, a legal service provider that represents children in federal immigration custody.

4. Since May 2017, Michigan Immigrant Rights Center ("MIRC") has served unaccompanied children in the legal custody of the Office of Refugee Resettlement ("ORR") who have been placed by ORR at Bethany Christian Services ("Bethany") and Samaritas.

5. As the legal service provider for Bethany and Samaritas, our attorneys maintain regular contact with the youth at the facilities. We provide ongoing consultations and presentations concerning the legal rights of detained minors, as well as provide direct legal representation to youth.

<u>Delays in Reunification</u>

*Blanket ban on release of kids with removal orders based on MPP*

6. In her declaration filed on April 17th, Jallyn Sualog states that "if Immigration and Customs Enforcement ("ICE") informs ORR that the minor has an executable final order

---

Declaration of Ana Deveraux

1

of removal, and the minor is scheduled to be deported to his or her home country pursuant to that final order of removal in short order, then ORR will work with ICE to ensure the minor appears to be removed.  In these cases, ICE has informed ORR that the minor is not awaiting removal proceedings, but in fact, is subject to a final order of removal that is to be imminently executed.  If it becomes apparent that deportation is not imminent, then ORR follows ordinary release protocols."

7.     This statement is not consistent with my experience.  Currently, we have a client with an MPP removal order.  We filed a Motion to Reopen, which was denied, and now we've filed an appeal at the BIA.  She and her brother who was not in MPP have both been denied release to an approved sponsor due to the removal order.  Even if she had a removal order, it could be months and months before the order was even executed.

8.     Since she has an approved sponsor, there is no legitimate reason for ORR to continue keeping her in custody.

9.     Additionally, ORR has failed to communicate with us as the child's representative around release. We learned from the Young Center advocate that release was planned, but when we checked on this, we were told the plans had just changed and were not given any information as to why the release was no longer being considered.

*Unexplained delays*

10.    MIRC has a client whose sponsor approval has been delayed unreasonably by ORR. First, as a result of ORR delays, the sponsor's paperwork "expired" and the sponsor was required to recomplete the paperwork. Second, they have added on fingerprints required for a secondary household member, after having told the sponsor that only the potential sponsor was required to have fingerprinting and background, even though this is not required by the TVPRA. The potential sponsor even moved homes at the request of ORR. The youth feels that every time the potential sponsor takes significant steps to become a sponsor, then ORR adds more requirements. This youth is

Declaration of Ana Deveraux

2

turning 18 soon and will be transferred to ICE if not released in time. Additionally, the youth is feeling very personally burdened by the burden this is causing his family and he does not trust that the next step would be the last one. This frustration is causing him to begin to consider taking voluntary departure. Despite the delay in approving and releasing to sponsor, ORR has refused to move forward in seeking the necessary state court documents in Michigan to avoid age-out even though the youth is in long-term foster care, citing the fact that ORR is pursuing a sponsor.

Inconsistent Positions around air travel

11. It is unclear to me in what circumstances ORR deems air travel to be safe and in what circumstances it deems air travel to be unsafe. Jallyn Sualog's April 17th declaration indicate that "whether air travel is required to travel to the sponsor's home" is one of the factors taken into release considerations; this seems reasonable. However, in the meantime, we have had several clients who were stepped up to more restrictive facilities due to runaway attempts. These transfers to more restrictive facilities have required air travel. Even if these step-ups were not occurring during a pandemic, we would oppose them, however in the current context, these transfers seem to unreasonably undermine the safety of our clients.

Lack of Transparency from ORR

12. I have tried to obtain basic information from ORR related to COVID-19, such as who has been tested, who has tested positive, and the names of children in Michigan whose custodial status was effected due to COVID-19 related policies. However, I have been repeatedly denied access to this information. ORR has indicated that they are unable to share this information due to ongoing litigation.

13. In order for MIRC to effectively represent our clients, we must have an ongoing information exchange with ORR around these critical issues.

*New Information Revealing ORR Intentional Practice of Keeping Legal Service Providers in the Dark regarding COVID-19 Cases and Practices.*

14. Today, a legal service provider from another state reached out to us with questions about a youth that had just been transferred from Michigan into their state and was under quarantine, as that youth tested positive for COVID-19 and was experiencing symptoms. This was the first that I or other MIRC staff had heard of any youth in ORR care in Michigan testing positive for COVID-19 (or being tested at all).

15. We reached out to the facility (Bethany's group home for girls) to ask for more information about the situation around COVID-19 testing, exposures in the group home, and in general for the COVID-19 procedures for all children in ORR custody. The Bethany facility staff stated the following: "Yes, and as you know, we are unable to share much information. If this were the case, we would go into a 14 day quarantine from the date of exposure, and follow the directives of ORR and the local health department. ORR and the health department will determine if further testing needs to be done, dependent on the symptoms or concern of those who have been in contact with the youth. Should you need further information, I would encourage you to connect to ORR who might be able to share this information with you directly." That was the extent of the communication.

16. I then followed-up to ask why the Bethany staff believed they could not share much information with us, because I did not believe this was how ORR facilities were supposed to be handling these matters. I have not received a response, but I believe the facility staff is referencing an earlier occasion where the ORR Federal Field Specialist told me they could not provide information and directed me to their policy division.

17. Since this communication, we have learned through other sources that all of the girls in the Bethany group home are under quarantine. The girls are not allowed to leave

Declaration of Ana Deveraux

4

their rooms and food is being delivered to their doors. Our clients in Bethany group home regularly reach out to our attorneys and they have not been able to do so recently, so we've resorted to getting the information through third parties. We have not been able to communicate with our clients about their quarantine status. ORR has not communicated to us that our clients at Bethany group home are under quarantine.

18. We have also learned that one other child who was recently transferred from ORR custody in Michigan to an ORR facility in a different state is in quarantine at her new placement.

19. This raises such significant concerns for us about access to our clients and creates a complete barrier for us to be able to advocate for our clients needs and rights when we are not being provided information about what is going on. Finally, it seems clear that the transfers referenced in paragraph 11 are happening without any prior screening or regard for the transfer of COVID-19 across state lines and into new facilities.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 22nd day of April, 2020, in Grand Rapids, Michigan.

_____
Ana Devereaux

Declaration of Ana Deveraux

5