# EXHIBIT F

# DECLARATION OF Ashley Huebner ESQ.

I, Ashley Huebner, declare as follows:

1.      This declaration is based on my personal knowledge.  If called to testify in this case, I would testify competently about the following facts.

2.      My name is Ashley Huebner.  I am an attorney licensed to practice in the State of Illinois.  This declaration describes my experiences and observations working with unaccompanied migrant youth detained in the ORR shelters in the Chicagoland area.

Experience Serving Youth in ORR Custody

3.      Since 2008, I have been an attorney at the National Immigrant Justice Center (NIJC), a non-profit legal service organization that provides immigration legal services to low-income immigrants, primarily in Illinois, Indiana, and Wisconsin, including children and adults in federal immigration custody.

4.      For more than a decade, NIJC has served unaccompanied children in the legal custody of the Office of Refugee Resettlement ("ORR") who have been placed by ORR at various care programs within the ORR network of care providers in Illinois and Indiana.  At present, this includes shelter care programs run by Heartland Human Care Services (HHCS), Maryville Academy, and transitional foster care programs run by Bethany Christian Services.  During the last current fiscal year, NIJC has served more than 900 children in ORR custody.

5.      As the legal service provider for these ORR facilities, our attorneys and paralegals maintain regular contact with the youth at the facilities.  We provide ongoing consultations and presentations concerning the legal rights of detained unaccompanied children, as well as provide direct legal representation.

Heartland Human Care Services Facilities

6.      It is my understanding, as documented in public records, that the HHCS facilities
are currently providing shelter care for approximately 69 children.  The HHCS facilities
generally provide shelter care for children ages 0 through 17.

7.      It is my understanding, as documented in public records, that 42 children have
tested positive for COVID-19 at the HHCS facilities.

8.      My understanding is that in some instances, children approved for release can still
be released from these facilities, however ORR has not provided us with consistent or
detailed information regarding which children can be released, and which children cannot
be released and why.

Maryville Academy Facilities

9.      It is my understanding, as documented in public records, that the Maryville
Academy facilities are currently providing shelter care for approximately 30 children.
The Maryville Academy facilities generally provide shelter care for children who are in
their teens.

ORR's Lack of Transparency Regarding COVID-19 Issues

10.      During the COVID-19 pandemic, the lack of information and transparency from
ORR regarding release policies has been an on-going challenge to our advocacy.  As this
is a rapidly changing situation, we need clear, consistent guidance from ORR about their
policies regarding release. Currently we are receiving mixed and incomplete information
from ORR, which makes it difficult to evaluate how to best advocate for our clients.

11.      In particular, it has been difficult to determine ORR's specific release policies for a
child who has tested positive for COVID-19 and for a child in a shelter where someone
else has tested positive for COVID-19.

On-going Barriers to Release of Unaccompanied Children - Fingerprinting

12.     We are currently aware of children in the ORR facilities mentioned above whose release continues to be delayed because of the lack of availability of fingerprinting.

13.     It is my understanding that there are at least 10 children in these facilities whose releases are delayed because their sponsors are unable to get fingerprints taken at this time due to COVID-19, although it is likely that there are more children whose sponsors are experiencing this issue.

14.     For example, I understand one sponsor in Virginia has been unsuccessfully attempting to locate a fingerprint location, but all are closed due to COVID-19.  I understand another sponsor had made repeated attempts to obtain a fingerprint appointment in a different state, but was repeatedly turned away due to COVID-19, and that the inability to get a fingerprint appointment was the primary reason for the child's delayed release to this sponsor.

15.     In many of these cases, fingerprinting is discretionary.

On-going Barriers to Release of Unaccompanied Children – Home Studies

16.     We are also aware of children in these facilities whose release continues to be delayed because of the lack of availability of home studies.

17.     It is my understanding that there are currently at least 12 children in these facilities whose release is on hold pending a home study.

18.     In many cases, the home study is discretionary and is not mandated by the TVPRA.  In at least one case, the COVID-19-related delays in the discretionary home study may place the child at risk of turning 18 and aging out of ORR custody before the child's release to the sponsor.  This, in turn, places the child at risk of being transferred to Immigration and Customs Enforcement (ICE) custody upon the child's 18th birthday.

19.     In some cases, it appears that a virtual home study is being pursued, but it is not clear whether that option is being investigated in all cases.  I am not aware of any guidelines from ORR regarding the availability of virtual home studies or the mechanism for requesting one.

20.     I believe that ORR could reasonably consider modifying release policies concerning discretionary fingerprinting and home studies. If such changes to policy were to be made, even on a case-by-case basis, ORR should release official guidelines to care and legal service providers.

Other Barriers to Release for Release-Eligible Children

21.     Due to the existence of COVID-19 in some of the HHCS facilities, I understand some children who would otherwise be released from custody have now had their releases placed on hold due to COVID-19.  For example, one child, who does not have a sponsor, will be turning 18 within the week and previously had planned to be released to another licensed childcare provider prior to his 18th birthday.  However, after testing positive for COVID-19, his release has been put on hold.  This places the child at risk of transfer to ICE custody upon his 18th birthday.

22.     I understand there are several other children who were approved for release prior to testing positive for COVID-19 and as a result, their releases have now been placed on hold.  It is unclear how and when ORR will be determining whether to lift the hold and allow them to be released.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 21st day of April, 2020, at Glenview, Illinois.

Ashley Huebner