# EXHIBIT G

# DECLARATION OF CLAUDIA R. CUBAS

I, Claudia R. Cubas, declare as follows:

1. This declaration is based on my personal knowledge. If called to testify in this case, I would testify competently about the following facts.

2. My name is Claudia R. Cubas. I am an attorney licensed to practice in the State of Maryland and the U.S. District Court of Maryland. I serve as the Litigation Director for Capital Area Immigrants' Rights Coalition ("CAIR Coalition"), a nonprofit based in Washington D.C. that provides legal services to detained adults and children, which includes giving "Know Your Rights" presentations, conducting intakes, connecting people with pro bono attorneys and or representing people directly before the Immigration Courts in the states of Maryland and Virginia.

3. I previously submitted a declaration in this matter in support of Plaintiffs' [CORRECTED] Reply to Defendants' Opposition to Ex Parte Application for Temporary Restraining Order and Order to Show Cause regarding Preliminary Injunction, dated April 8, 2020, ECF 759-3. The statements set forth in my initial declaration are incorporated herein by reference and remain accurate and relevant to Plaintiffs' reply. Through this declaration I seek to clarify and provide more information about my experiences providing services to detained children in ORR custody, specifically children who have final orders stemming from either their time in removal proceedings under the Migration Protection Protocols ("MPP") or because they were removed *in absentia* while in the United States for other reasons.

How do the Migrant Protection Protocols affect a minor's eligibility to be released?

4. I have reviewed the response by the government provided to Plaintiffs in this matter about the effect of a minor's prior involvement in MPP on their release and reunification. The crux of the government's response is that they do not believe the MPP

program affects a minor's release because they are focusing on whether the minor has an "executable" removal order to determine whether to reunify a minor or not to their sponsor.

5. Part of the government's justification is currently at issue in the case, *A.C.H.C. et al v. Barr*, No. 20-cv-00770-RDM (D.D.C. filed Mar. 17, 2020), where I am counsel of record. In that case, our minor clients are three siblings who were previously in MPP proceedings with their mother and were ordered removed when they lost their asylum claim in the first week of January 2020 at a tent-court in Brownsville, Texas. Our clients and their mother returned to Mexico following this removal order that same day. A week after this removal order, our clients subsequently re-entered the U.S. in the middle of January of 2020; but this time they were alone.

6. As part of this case, we are requesting a preliminary injunction that the government issue and file a new Notice to Appear ("NTA") to initiate removal proceedings under Section 240 of the Immigration and Nationality Act ("INA") for our clients who are unaccompanied minors.

7. In our clients' case, despite identifying their father/stepfather who lived in Maryland as a suitable sponsor and completing all required security and placement criteria, the government stopped reunification and instead took action to remove our clients on March 16, 2020. The government is arguing that because the removal order under the MPP program is executable this allows them to remove our clients notwithstanding the expressed command under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA") that any unaccompanied immigrant child whom the government seeks to remove has the right to "*be placed* in removal proceedings under Section 240" of the INA. *See* 8 U.S.C. § 1232(a)(5)(D)(i) (emphasis added).

8. We filed the suit in the *A.C.H.C.* case on March 17, 2020, and the case is ongoing. Thankfully, however, our minor clients have since been reunified with their loving and doting father/stepfather, who was a category 1-2A sponsor. Reunification only occurred,

Declaration of Claudia R. Cubas

2

however, after we filed our case following the government's decision to pause all reunification efforts and instead seek to "execute" a removal order against the children.

9.     In my previous declaration, I also mentioned a case involving a minor detained in the custody of the Office of Refugee Resettlement ("ORR") in Texas who had an identified sponsor -- I believe the sponsor category is either 2A or 2B, but I am not sure. That minor also had to retain pro bono counsel to file a suit against the government and that case is pending in district court. See *A.M.P.V. v. Barr*, No. 20-cv-009130-RDM (D.D.C. filed April 6, 2020). That case has been related with our *A.C.H.C.* case. In that case, the minor is still in ORR custody in Texas. Pro bono counsel had to file a Temporary Restraining Order ("TRO") today because the government is seeking to remove the minor because they were ordered removed under the MPP program with their parent at tent-court in Texas, and crossed back into the U.S. as an unaccompanied child a couple days after. The minor has yet to be reunified with their sponsor and remains in ORR custody. My understanding is that the government has stopped reunification because they are seeking to remove the minor, and their removal is imminent unless the judge issues a decision on the TRO.

How does an *in absentia* removal order affect a minor's eligibility to be released?

10.    In my previous declaration, I also mentioned the case of a minor detained in the custody of ORR at a shelter in Maryland. This minor is set to turn 18-years-old in less than a week. The minor has been detained since January of 2020 for 103 days. The minor was previously ordered removed *in absentia* by an Immigration Judge in Charlotte, North Carolina. Immigration attorneys at our organization filed a motion to reopen in his case. While the motion to reopen was pending, ORR identified the minor's grandfather, located in South Carolina, as a suitable category 2B sponsor. The minor's grandfather has since completed all reunification requirements including a security check and a home study. We initially believed the minor would be reunited but this was paused last week.

Declaration of Claudia R. Cubas

3

11. When we inquired about reunification, we were told it was because the minor is under quarantine due to being exposed to another minor who is suspected of having COVID-19. We have since contacted the local county Public Health Official who has provided medical clearance and guidance for the minor to travel to reunify with his grandfather. The minor, however remains in ORR custody and has yet to be reunified. We have since also learned his motion to reopen was denied on April 17, 2020, and so today on April 21, we filed an appeal with the Board of Immigration Appeals ("BIA"). We have also filed a habeas petition and a motion for a temporary restraining order and preliminary injunction seeking to have the government release and reunify our client to his grandfather before his 18th birthday. This case is ongoing. *See G. v. Stirrup*, 20-cv-01026-SAG (D.MD. filed April 21, 2020).

<u>Are you seeing other cases involving minors who have not been reunited?</u>

12. Our organization's Detained Children's Program has also referred over 20 (twenty) minors to the Legal Aid Justice Center in their capacity as class counsel in the case *J.E.C.M. v. Lloyd,* 18-cv-00903-LMB-MSN (E.D.Va). All of these minors have been detained for over 60 days and have a viable sponsor but their reunification is delayed or stalled for unspecified reasons. CAIR Coalition staff were informed by case managers that many of these minors' sponsors have pending results on their fingerprints, home studies, or checks related to child abuse or negligence.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 21st day of April 2020, in Washington D.C.



Claudia R. Cubas

Declaration of Claudia R. Cubas

4