# EXHIBIT H

# DECLARATION OF ELISA GAHNG ESQ.

I, Elisa Gahng, declare as follows:

1. This declaration is based on my personal knowledge. If called to testify in this case, I would testify competently about the following facts.

2. My name is Elisa Gahng and I am an attorney licensed to practice in the State of New York. This declaration describes my experiences and observations working with unaccompanied migrant youth detained at Cayuga Centers in New York City.

<u>Experience Serving Youth in ORR Custody</u>

3. Founded in 2008, KIND is the leading national organization that works to ensure that no refugee or immigrant child faces immigration court alone. KIND provides children with legal representation at no cost, and works for positive systemic change in law and policy to improve the protection of unaccompanied immigrant and refugee children. KIND also engages in programming in Central America and Mexico to promote the best interests and protection of migrant children throughout the region. Since 2009, KIND has received referrals for more than 20,000 children from 70 countries. KIND has field offices in ten cities: Atlanta, Baltimore, Boston, Houston, Los Angeles, Newark, New York City, San Francisco, Seattle, and Washington, DC. Legal services professionals who serve children through KIND provide defense in removal proceedings and pursue immigration benefits and relief for which their clients may be eligible. KIND also employs social services coordinators throughout the country, providing unaccompanied children with the support they need outside of the courtroom. Many of KIND's clients have fled severe violence and threats to their lives in their countries of origin and may be eligible for asylum, special immigrant juvenile status, or other forms of humanitarian protection. Most of these children arrived in the U.S. unaccompanied by a parent or legal guardian, but some are members of families separated at the border.

4. I have worked at KIND since July 2017, and I have been the managing attorney overseeing KIND's New York office since August 2018.

5. Since December 2019, KIND's New York office has served unaccompanied children in the legal custody of the Office of Refugee Resettlement ("ORR") who have been placed by ORR at Cayuga Centers ("Cayuga"), a care program within the ORR network of care providers. Since December 2019, KIND has served over 465 youth in ORR custody. Although the majority of these youth come from Mexico, Honduras, Guatemala, and El Salvador, youth placed at Cayuga may come from all over the world.

6. As the legal services provider for children at Cayuga, our attorneys provide ongoing presentations concerning the legal rights of detained minors and conduct legal screenings to assess their eligibility for immigration relief. We provide ongoing legal consultations to the children to whom we are providing direct legal representation, and we assist other youth at Cayuga with guidance and by attending court hearings in a capacity that the immigration courts term "friend of the court."

Cayuga Centers

7. I understand that Cayuga is licensed to provide transitional foster care and has capacity for up to 900 youths, from infants through age seventeen. Children in this program live with foster families in the New York City area and go to the shelter during the day, where they receive educational services. The program primarily serves "tender-aged" children, meaning that the majority of the children are under 12 years of age or are especially vulnerable.

8. As of April 21, 2020, the population at Cayuga was about fifty-one children.

ORR's Lack of Transparency Regarding COVID-19 Issues

9. During the COVID-19 pandemic, the lack of information and transparency from ORR regarding release policies and the health status of our clients has been an on-going challenge to our advocacy for our clients.

10.     As stated in my prior declaration, Cayuga staff have informed me of instances where individuals tested positive, including one foster parent who subsequently died due to COVID-19 while two unaccompanied children were in their care and one foster parent's partner who had exposure to two unaccompanied children.  In both cases, ORR did not provide me or KIND with any policies pertaining to the disclosure of information where a foster parent or household member tested positive.  Despite my requests, I was not given the identities of the children who were in the care of either the foster parent or the foster parent's partner who tested positive.  ORR did not provide any information as to whether these children would be tested for COVID-19.  Such information would have been important for KIND staff to know for two reasons.  First, whether a specific child has been exposed to COVID-19 is important information to share with the immigration court, including for use in support of a recommendation that the child's presence be waived at court hearings.  It would be to the benefit of the children, judges, attorneys, and other personnel to know whether a specific respondent has been in close quarters with an individual who has tested positive for COVID-19.  Second, knowing whether a specific child has been exposed to COVID-19 is pertinent background information for the purpose of a legal screening, where KIND staff ask children questions about their current conditions while detained in ORR custody and any trauma they may have suffered.  Such information would enhance KIND's understanding of the context for a child's legal screening in that exposure to a potentially fatal illness and the illness or loss of a caregiver are potentially traumatizing events.  KIND staff would have been able to additionally understand and support any modifications being made to the services that the child receives.

MPP Cases

11.     As stated in my prior declaration (Dkt. 759-5), case managers informed KIND on April 2, 2020 that six children who had received removal orders under the "Migrant Protection Protocols" ("MPP")  would not be released until the Board of Immigration

1  Appeals decides their pending appeals. As described in my prior declaration, I have
2  continued to elevate the question of these children's reunification with the relevant ORR
3  Federal Field Specialists, their supervisor, and the ORR Senior Federal Specialist
4  Supervisor at ORR headquarters.

5  12.  On April 8, 2020, I received a document titled "ORR Field Guidance #4, COVID-
6  19 Discharge Guidance." This document states that for children with removal orders, care
7  providers are to work with their Federal Field Specialist (FFS) to determine whether DHS
8  or ICE plans to execute the removal order. If removal appears unlikely, ORR is
9  instructed to evaluate the children for release following general ORR policies and
10 procedures. Upon receipt of this document, I emailed it to the FFSs, their supervisor and
11 the ORR Senior Federal Specialist Supervisor, noting that as all six children in question
12 have BIA appeals filed, their removal is not merely unlikely, but impossible, because an
13 order of removal is automatically stayed during the BIA's adjudication of the appeal. I
14 then requested confirmation that ORR would be following its own policies and
15 procedures for the reunification of children with removal orders. The ORR Senior
16 Federal Specialist Supervisor responded to me by stating that he and "the North East
17 Team have been working together to receive policy guidance regarding this subject." I
18 have not received any further communication from ORR on their policy in this matter
19 since then. All six children remain in ORR custody; two of the children have been in
20 custody for eighty days and four have been in custody for sixty-eight days. All six
21 children, whose ages range from six years old to seventeen years old, have identified
22 ORR sponsors who have completed all necessary paperwork and background checks.

### On-going Barriers to Release of Unaccompanied Children

25 13.  It is my understanding that problems with the fingerprinting process are causing
26 delays with reunifications. As noted in my prior declaration, a report dated April 2
27 expressly refers to "COVID-19" or the "pandemic" as delaying steps in the reunification
28 process. The document notes that:

14. Two children's proposed sponsor, a "category 1" sponsor, is unable to complete fingerprints because the closest ORR fingerprint site is closed due to COVID-19;

15. Two additional children's proposed sponsor, a "category 2B" sponsor, has experienced difficulty getting fingerprinted due to COVID-19; and

16. One child who has been accepted into Long-Term Foster Care (LTFC) in Washington state is pending travel arrangements. KIND was informed in mid-March 2020 that this child was accepted into the LTFC program and I understand that he is still awaiting release pending travel arrangements. He is currently still in ORR custody in New York.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 21st day of April, 2020, at Brooklyn, New York.

_____
ELISA GAHNG