# EXHIBIT L

# DECLARATION OF CARLOS HOLGUIN

I, Carlos Holguín, declare and say as follows:

1. I am one of the attorneys who serve as class counsel for Plaintiffs in the within action.

2. Attached hereto is a letter Plaintiffs sent to Independent Monitor Andrea Sheridan Ordin on April 14, 2020. The annexed copy is true and correct except for redaction of the name of a class member Plaintiffs brought to the Independent Monitor's attention as an example of unnecessary delay in ORR's releasing class members from congregate detention during the COVID-19 pandemic. To the best of my knowledge, as of 9:05 a.m. PDT today, the matters raised in Plaintiffs' April 14 letter remain under submission before the Independent Monitor.

3. Attached hereto is a true and correct copy of an email I sent on April 16, 2020, to Sarah Fabian, one of the attorneys for Defendants, requesting to meet and confer in accordance with this Court's order of April 10, 2020.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 22nd day of April, 2020, at Santa Clarita, California.

Carlos Holguín

# CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW

256 S. OCCIDENTAL BOULEVARD
LOS ANGELES, CA 90057
Telephone: (213) 388-8693 Facsimile: (213) 386-9484
www.centerforhumanrights.org

April 14, 2020

Special Master Andrea Sheridan Ordin
Strumwasser & Woocher
10940 Wilshire Boulevard, Suite 2000
Los Angeles, California 90024

*Via email.*

Re: *Flores*, et al., *v. Barr,* et al., No. CV 85-4544 DMG (C.D. Cal.).

Dear Ms. Ordin:

By order dated April 10, 2020, the Court ordered, *inter alia*, as follows:

> The Independent Monitor, Andrea Ordin, may in the exercise of her monitoring duties request such further information regarding Defendants' continuous efforts at release as she deems appropriate pursuant to her authority under Paragraph B(1)(c)(iii) of the October 5, 2018 Order appointing her. [Doc. # 494.]

As you are aware, the above order issued in response to Plaintiffs' application for a temporary restraining order and order to show cause re: preliminary injunction.

The gravamen of that application is that however reasonable ORR's and ICE's delaying the release of class members to waiting family members and other custodians may have been before the COVID-19 pandemic, confining children in congregate facilities during a worsening public health emergency is presumptively unreasonable because such detention endangers class members' health and welfare far more than any contribution to child safety ORR's conducting business as usual makes.

On April 13, 2020, Pro Publica reported that at least 19 children detained at the ORR's Heartland Alliance facility in Chicago, along with at least two staff members, tested positive for COVID-19. M. Sanchez, *At Least 19 Children at a Chicago Shelter for Immigrant Detainees Have Tested Positive for COVID-19*, PRO PUBLICA (April 13, 2020), *available at* www.propublica.org/article/at-least-19-children-at-a-chicago-shelter-for-immigrant-detainees-have-tested-positive-for-covid-19 (last visited April 13, 2020). The article further reported that as of last Wednesday, six COVID-19 cases had been confirmed among children in other ORR facilities, and that 39 staff members at ORR facilities in six states had self-reported having contracted COVID-19 as well.

On April 14, 2020, CBS News reported that the number of children infected at the Heartland Alliance facility in Chicago had grown to 37 and now account for more than half of the 69 children detained there. C. Montoya-Galvez, *Chicago coronavirus outbreak infects dozens of migrant*

*children in U.S. Custody*, CBS NEWS (April 14, 2020), *available at* www.cbsnews.com/news/chicago-coronavirus-outbreak-infects-dozens-of-migrant-children-in-us-custody/?ftag=CNM-00-10aab7e&linkId=86526161 (last visited April 14 2020). The article further reported that two children in ORR facilities in Texas tested positive for COVID-19. *Id.* This brings the total number of children reported to have contracted COVID-19 in ORR custody to 45.

As the Court has now twice found, "[T]he medical consensus is that any form of congregate care puts a child in custody at higher risk of infection. *See* TRO at 6, 12. Any unnecessary delay in releasing a minor is, under normal circumstances, a violation of the FSA, but the current pandemic makes the Agreement's promise to protect and expeditiously release minors even more critical to their safety." Order, April 10, 2020 (Doc. #768) at 4, *citing* Order, March 28, 2020) (Doc. #740).

The evidence now supports an inference that children are contracting COVID-19 in ORR congregate facilities at rates *far* higher than they would were they released to parents and other custodians. This could soon also become the case for class members detained by ICE, which seemingly is making *no* efforts aimed at the prompt release of class members under the terms of the Settlement.

As of this morning, there were 592,743 reported COVID-19 cases among a U.S. population of approximately 329 million. *See* Johns-Hopkins University Center for Systems Science and Engineering, *COVID-19 Dashboard*, *available at* www.arcgis.com/apps/opsdashboard/index.html#/bda7594740fd40299423467b48e9ecf6 (*last visited* April 14, 2020, 11:47 a.m. PDT); U.S. Census Bureau, *U.S. and World Population Clock*, *available at* www.census.gov/popclock/. This translates to a general infection rate of approximately .017 percent.

As of March 29, 2020, ORR had 2,281 children in congregate detention. Declaration of Jallyn Sualog, April 3, 2020, ¶ 6 (Doc. #746-1). Unless that number has decreased substantially, a class member's contracting COVID-19 in ORR congregate custody now stands at more than 1.9 percent, or roughly *111 times higher than the rate of reported infection in the general population*.[1] The speed with which children have contracted COVID-19 at the Chicago facility only underscores the vast odds against a child's avoiding infection once contagion gets underway in a congregate facility.

In view of the escalating rates of infection and the now-manifest impossibility of protecting children in congregate facilities from infection, Plaintiffs urgently request that you order ORR and ICE to promptly disclose the following information to the Special Master and Plaintiffs for the duration of the COVID-19 public health emergency:

---

[1] The number of infected individuals in the general population is almost certainly higher than the reported rate, given the widespread lack of COVID-19 testing as well as individuals who are infected but asymptomatic. On the other hand, Plaintiffs are aware of no evidence that ORR is testing detained children at rates higher than the general public. It is impossible to assess the relative risk of infection that class members face by remaining in congregate detention unless ORR is ordered to disclose the testing data described in the text.

Special Master Andrea Sheridan Ordin
April 14, 2020
Page 3 of 5

1) Policies and practices aimed at preventing the spread of COVID-19 to children in congregate placement, to be disclosed no later than 24 hours after adoption.

2) Measures taken to expedite the release of class members to parents and other available custodians during the COVID-19 health emergency, including any changes to fingerprinting and home study policies or practices, to be disclosed no later than 24 hours after they have been taken.

3) The capacity of ORR and ICE congregate facilities as established by state or local licensing authorities and the current population of class members placed at each such facility, with facility population updates provided weekly.

4) The number of non-congregate beds ORR and ICE has available, the number of class members in non-congregate placement, and a description of ORR's and ICE's efforts to increase the number of non-congregate beds during the COVID-19 public health emergency, with such numbers being updated weekly.

5) ORR and ICE policies and practices for testing children in congregate facilities and congregate facility staff for COVID-19, to be disclosed no later than 24 hours after adoption.

6) The number of children and staff tested for COVID-19, the facilities at which they are placed or work, the date of testing, and whether tests have come back positive, negative, or results remain pending, with such numbers updated weekly.

7) A summary of what action ORR and ICE have taken in response to positive test results for COVID-19 among children or staff at congregate facilities: *i.e.*, whether and how many class members have been (a) transferred to other facilities, including hospitals and clinics and identifying the facility to which they have been transferred; (b) released to sponsors; (c) isolated or quarantined in in lieu of release or transfer; and (d) whether and how many staff members have been suspended from having further contact with class members after having tested positive and how such suspensions have impacted child:staff ratios, to be disclosed no later than 24 hours after such actions are taken.

8) With respect to each child placed at a congregate facility in which children or staff have tested positive for COVID-19, the specific reason the child has not been released or transferred to a non-congregate setting, with such information being updated weekly.

9) Policies and practices aimed at identifying and protecting children, such as those with diabetes or cancer, at heightened risk of serious illness or death should they contract COVID-19, to be disclosed no later than 24 hours after adoption.

10) Any reports and recommendations of state or local health or licensing agencies issued in response to the outbreak of COVID-19 infection among children or staff at congregate ORR facilities, to be disclosed no later than 24 hours after ORR or ICE receives them.

Special Master Andrea Sheridan Ordin
April 14, 2020
Page 4 of 5

The Special Master's ordering Defendants to produce the foregoing is well within her authority. *See* Order Appointing Special Master/Independent, Oct. 5, 2018 (Doc. #494) at ¶ A2(f) (granting Special Master authority to "[d]irect the Parties to produce such information or documents as the Special Master deems relevant to achieve the goals of monitoring or to prepare Reports and Recommendations."); *id*. ¶ B (Special Master granted "authority to gather information and documentation in furtherance of the monitoring function," and listing of "non-exhaustive methods of obtaining information regarding Class Members …"); *id*. ¶ B1(b) ("the Special Master may serve requests for any non-privileged information or documents, or class of documents, created, received or maintained by Defendants or their employees, agents, contractors, or subcontractors that is directly relevant to a determination of compliance with the Court's Orders.").

In Plaintiffs' view, the Court's and the Special Master's ability to assess whether ORR and ICE are unreasonably delaying class members' release depends on their having the information described herein. Only with transparency would the Court, the Special Master, and class counsel be able to discharge their fiduciary duty to protect class members against irreparable injury. *See generally Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) ("district court has a fiduciary duty to look after the interests of those absent class members."). Plaintiffs accordingly request that you promptly rule on the instant request and advise the Parties accordingly.

In addition to the above requested disclosures, Plaintiffs urge the Special Master to investigate specific cases in which Defendants have seemingly failed to release class members without unnecessary delay. Although anecdotal, such examples support an inference that Defendants are generally in violation of their Settlement obligations.

One such example is that of C          C       G          (DOB:          , A              ) and her two-year-old son,                    (DOB:          , A#         ), who are reportedly detained at ORR's Bethany Christian Services congregate facility in Modesto, California. Plaintiffs are advised that Ms.       G       is eight months pregnant and scheduled to give birth by Cesarean section on May 20, 2020.

Her common law father-in-law (I       's paternal grandfather), L     V     H          has long sought to serve as Cristina's custodian. Mr. H       has submitted a complete family reunification packet, but has not been able to complete fingerprinting because of COVID-19 closures. Other than the want of fingerprinting Plaintiffs know of no reason ORR has for refusing to release Ms.            to Mr.        . After all, Ms.            will turn 18 in three months, at which point she will almost certainly be transferred to adult congregate detention, where she and her children will run continued risk of contracting COVID-19.

Special Master Andrea Sheridan Ordin
April 14, 2020
Page 5 of 5

Plaintiffs are advised that Ms. C    G     wishes to be released without further delay, does not think receiving medical care at ORR's expense worth the risks associated with remaining in congregate detention; she would rather arrange for her own medical care following release. Plaintiffs accordingly request the Special Master look into ORR's grounds for refusing to release Ms. C    G    .

Thank you,

Carlos Holguín
*One of the attorneys for Plaintiffs*

ccs:    Peter A. Schey, Esq.
        Leecia Welch, Esq.
        Holly S. Cooper, Esq.
        Sarah B. Fabian, Esq.
        Nicole Murley, Esq.

**From:** **Carlos Holguín** crho gu n@centerforhumanr ghts.org
**Subject:** Request to meet and confer pursuant to ¶ 2e of the Court s Order of Apr 10, 2020
**Date:** Apr 16, 2020 at 3:27 PM
**To:** Fab an, Sarah B (CIV)  Sarah.B.Fab an@usdoj.gov
**Cc:** Mur ey, N co e (CIV)  N co e.Mur ey@usdoj.gov, Andrea Sher dan Ord n  aord n@strumwooch.com, Peter Schey pschey@centerforhumanr ghts.org, Leec a We ch  we ch@youth aw.org, Ho y S Cooper  hscooper@ucdav s.edu

Dear Sarah,

As you know, the Court has ordered the Parties "to meet and confer regarding (1) certain disclosures, including information regarding existence of COVID-19 infection among Class Members, that should be provided to minors' immigration counsel; and (2) the quality of the data that Defendants provide to Class Counsel pursuant to Paragraph 28A of the FSA." The Parties are required to file a joint status report by no later than April 23, 2020 at noon regarding the outcome of their efforts to meet and confer.

You have previously indicated that Defendants are unavailable to meet before Tuesday of next week, which is one day before the Parties' status report is due. In Plaintiffs' view, that will allow insufficient time to confer meaningfully before the Parties must advise the Court of the outcome of their efforts. Plaintiffs accordingly encourage Defendants to reconsider and agree to meet this week.

If Defendants are unable to meet this week, we propose that ORR agree on an interim basis to promptly inform class members' legal representatives of the following:

>   (1) when their clients develop symptoms of, or are suspected of having contracted, COVID-19;
>
>   (2) when their clients have been tested for COVID-19 and the results of such tests;
>
>   (3) when the facility in which clients are placed experiences an outbreak of COVID-19;
>
>   (4) when a facility determines that clients are at heightened risk of serious illness or death should they contract COVID-19, such as children with diabetes or cancer; and
>
>   (5) when ORR adopts or changes its policies or practices for responding to the COVID-19 pandemic.

ORR's agreeing to the foregoing on an interim basis would ameliorate a good part of the concern children's legal representatives are now reporting, allow the Parties to report at least some progress to the Court, and permit the Parties to meaningfully discharge their obligation to meet and confer, particularly with respect to item (2) of the Court's order, later on. Please advise.

Thank you.

Carlos Holguín
General Counsel
Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, California 90057
213.388-8693 x.309 (v)
(213) 290-1642 (direct)
213.386.9484 (fax)
http://www.centerforhumanrights.org