# EXHIBIT EE

# DECLARATION OF C.C.G.

Pursuant to 28 U.S.C. § 1746 and subject to penalty of perjury, I declare that the following is true and correct:

1. My name is C.C.G. I am the mother of E.C.G., who is two years old. My son and I entered the United States on September 8, 2019 to seek asylum. We are currently detained at the South Texas Family Residential Center in Dilley, Texas. As of April 20, 2020, we have been detained for 226 days.

*My son is suffering in detention.*

2. When we first got here, my son was one year old. He turned two in detention. It was a difficult day for me. I thought of ways that I could still celebrate him while in detention, and I realized that there was nothing I could change to make his day feel more special. For him, it was like any other day. It was devastating to not be able to celebrate another year of my son's life, and I cried in my room when I realized he spent half of his second year of life in detention.

3. We are desperate to get out of detention. Ever since we got here, my son has been sick with a cough and a cold.

4. We have been waiting for good news for 226 days. I am afraid to return to El Salvador. I fled because I received death threats and physical and verbal abuse. I cannot go back, and I cannot leave my child without his mother.

5. Being locked in here makes me feel depressed and sick. I am begging for my release, and for liberty for my child.

6. When we walk by the buses that move detained families, my son cries and points to them and lets me know he wants to go there. When we are in our room, he gets so restless he opens the door. He misses his family and wants to speak to his grandma every day. I calm him down by telling him stories about past memories with our family. When I am in my room, I think of my family. I remember how it felt to be held by them, and I keep myself strong by imagining seeing them again.

*Immigration officials have made no efforts to release me or my child since we were detained 226 days ago.*

7. Other than my apprehension by immigration authorities, I have never been arrested or charged with a crime anywhere in the world. My son has also never been arrested or charged with crime.

8. I arrived to STFRC on September 11, 2019. I had my initial credible fear interview on September 16, 2019. I was issued a negative credible fear finding on September 25, 2019.

1

    No one who works for ICE or Core Civic spoke with me about my release from detention, or the release of my child, between September 11, 2019 and September 25, 2019.

9. I appeared before an immigration judge on October 17, 2019. The judge affirmed my negative credible fear finding. No one who works for ICE or Core Civic spoke with me about my release from detention, or the release of my child, between September 25, 2019 and October 17, 2019.

10. I haven't heard of anyone being released prior to their credible fear interviews or their immigration court review hearing. An exception might be very sick families, where someone is taken to the hospital before their interview or court hearing.

11. On October 17, 2019, I joined a lawsuit in the District of Columbia challenging the procedures used during my credible fear interview. I believe the procedures used during my interview were unfair and in conflict with the law.

12. Approximately three months after I entered immigration custody, I was told my deportation officer would review my case to consider my release. Shortly thereafter, I was told I would not be released because I am a plaintiff in a federal lawsuit.

13. Since March 28, 2020, I know a there are a few other families who are also plaintiffs in federal lawsuits who were released from this detention center because they had a medical condition. I have a medical condition. Specifically, I have high blood pressure. I do not know why I have not been released.

14. Between September 11, 2019 and today, April 20, 2020, no one has ever spoken with me about my child's release from detention.

15. I have provided immigration officials with contact information for my receiving person. My receiving person is my friend who lives in Virginia. I provided my friend's phone number when I was detained at the border prior to my transfer to the South Texas Family Residential Center. When I arrived at Dilley, I provided my friend's name and phone number again during the intake process. During my credible fear interview I provided the Asylum Officer with my friend's name and phone number.

16. My friend is ready to purchase a bus or plane ticket for me and my son at any time. If ICE calls my friend today, he can book our tickets for tomorrow.

17. To my knowledge, ICE has not made any efforts to release me from this detention center since I was placed in detention with my son on September 8, 2019.

*I do not believe my family is safe from COVID-19 in detention.*

18. I have been hearing about the thousands of deaths in the news. I am hearing about more people in detention centers testing positive from the virus. My son and I are still in close contact with different people every day. I am afraid that my son and I will get the virus. From my experience in the medical facility, I fear that no one there would listen to me and my son and I would die for not receive adequate healthcare.

19. It is not possible for my family to maintain a distance of six feet from other families while detained. To my knowledge, there are no social distance measures in the park other than being separated by neighborhood color and hall number. However, I see families from opposite schedules in the park every day.

20. Even though our daily activities are arranged by our neighborhood color and hall number by CoreCivic staff, I often eat next to detained families from other neighborhoods during breakfast. I eat and share condiments next to three or four other families in a table.

21. A case manager has never had a one-on-one conversation with me about coronavirus, given me the opportunity to ask questions, or discussed my concerns with me.

22. I am allowed to be to the library from 8:30am to 9:45am every day. When I am there, I can use the computer for a total of 30 minutes, but there aren't a lot of websites that I can access. That makes it hard to look up things online about the coronavirus.

23. I have never seen a video playing in Dilley that explains how to wash my hands or any other information about the coronavirus.

24. During the last fourteen days, I have attempted to access hand sanitizer and found the hand sanitizer dispenser empty on one occasion. During the last 14 days, I have attempted to wash my hands and found the soap dispenser empty about five times.

25. During the last 14 days, I have not been offered a mask or gloves for myself of my child. We also have not been given a mask or gloves.

26. In general, the guards I have seen working in the facility over the last 14 days have not worn masks or gloves.

**Declaration of C.C.G.**

I, Brian Elizalde, hereby declare under penalty of perjury as prescribed in 28 U.S.C. § 1746:

1. I am a legal assistant with the Dilley Pro Bono Project.

2. I am fluent in the Spanish and English languages.

3. On April 20, 2020, I spoke with C.C.G. by telephone. I was unable to enter the South Texas Family Residential Center to meet with C.C.G. in-person because of the COVID-19 pandemic.

4. During my telephone call with C.C.G., I read the entirety of the "Declaration of C.C.G." in Spanish. C.C.G. confirmed that the information contained in the declaration I read and interpreted is true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed April 20, 2020 in San Antonio, Texas.

_____
Brian Elizalde