# EXHIBIT GG

## Declaration of D.P.R.

Pursuant to 28 U.S.C. § 1746 and subject to penalty of perjury, I declare that the following is true and correct:

1. My name is D.P.R. I am the mother S.B.P., who is 15 years old. My daughter and I entered the United States on September 9, 20219 to seek asylum. We are currently detained at the South Texas Family Residential Center in Dilley, Texas. As of April 20, 2020, we have been detained for 225 days.

2. I pray that God bless the court, and it is with the utmost respect that I submit this declaration.

### *My daughter is suffering in detention.*

3. My daughter and I are God-fearing people, with clean hearts to worship and serve Him. We have not come here to harm anyone. We came here seeking protection.

4. My daughter is desperate and filled with anguish. I have tried to help her control her emotions, but we have now been here 225 days. I am worried for my daughter because I have seen her develop this anxiety and fear. She has become pale and weak.

5. In the name of God, I ask that you reconsider our detention.

6. My daughter says that she feels such desperation and aguish being trapped here. She tells me that she has never felt like this. My daughter says that she has tried to be a good person, that she doesn't have a bad heart, and that we aren't bad people, just people looking for safety. She tells me that as a child, the things she wants most is physical and mental safety.  She also begs the court for help out of this terrible situation.

### *Immigration officials have made no efforts to release me or my child since we were detained 225 days ago.*

7. Other than my apprehension by immigration authorities, I have never been arrested or charged with a crime anywhere in the world. My daughter has also never been arrested or charged with crime.

8. I arrived at STFRC on September 11, 2019. I had my initial credible fear interview on September 13, 2019. I was issued a negative credible fear finding on September 25, 2019.

9. I appeared before an immigration judge on October 3, 2019. The judge affirmed my negative credible fear finding.

10. ICE officials did not speak to me about my release until December 2019. In December 2019, ICE officials told me that they were asking their supervisor whether my child and I had to remain detained, or if we could be released. Two weeks later, I was told the ICE supervisor in San Antonio had decided we had to continue under ICE custody.

11. To my knowledge, ICE has not released any family from detention while they were waiting to go to their credible fear interview or immigration court review hearing. The one exception may be for individuals who were pregnant or who had medical issues like asthma before their interview or court hearing.

12. On October 17, 2019, I joined a lawsuit in the District of Columbia challenging the procedures used during my credible fear interview. I believe the procedures used during my interview were unfair and in conflict with the law.

13. Since March 28, 2020 I know of a few families who are also plaintiffs in federal lawsuits who were released from this detention center because they had a medical condition. My daughter gets dizzy often and gets severe headaches. She is also very anxious. I do not know why we have not been released.

14. I have provided immigration officials with contact information for my receiving person. My receiving person is now my sister who lives in North Carolina. Before, my receiving person was going to be my niece. I provided my niece's phone number when I was detained at the border prior to my transfer to the South Texas Family Residential Center because she was going to receive me at first. When I arrived at Dilley, I provided my niece's name and phone number again during the intake process. During my credible fear interview I provided the Asylum Officer with my niece's name and phone number. My attorney has provided ICE the updated information for my new sponsor, my sister, numerous times.

15. To my knowledge, ICE has not called my sister a single time since my attorney provided her information to them in December 2019.

16. My sister is ready to purchase a bus or plane ticket for me and my daughter at any time. If ICE calls my sister today, she can book our tickets for tomorrow.

17. To my knowledge, ICE has not made any efforts to release me from this detention center since I was placed in detention with my daughter on September 9, 2020.

***I do not believe my family is safe from COVID-19 in detention.***

18. I do not believe my daughter and I are safe in detention from COVID-19 because the measures taken at the detention center are not sufficient. Even though there is only one family per room now, this only began recently. Moreover, even though only two neighborhoods are allowed to eat in the dining hall at a time, we sit right next to each other, eight to a table.

19. I rarely see guards wearing masks or gloves. And since the gyms are still open, children are still playing with each other and touching the same objects. They are also touching each other. People from different neighborhoods can still spend time with each other.

20. It is not possible for my family to maintain a distance of six feet from other families while detained. In the dining hall, there are eight people to a table, and sometimes more than eight are allowed. Furthermore, in the restroom areas, social distancing is not maintained.

21. A case manager has never had a one-on-one conversation with me about coronavirus, given me the opportunity to ask questions, or discussed my concerns with me.

22. One time I asked a guard who works for CoreCivic why they do not wear masks, and why we still sit very close to each other in the dining hall. They told me they did not know what to tell me.

23. My assigned time to use the library is from 12:30 pm to 1:30 pm every day this week. The rules change depending on the week. The library is where we can use the computers, and we are allowed to use the computer for a total of 30 minutes during our assigned time. There is only one computer distance between families, and I think this is still very close. When I get to use the computer, there are limited things I can access on the internet. We are not allowed to use any form of social media, such as Facebook. You are also not allowed to get on YouTube and Google searches are limited.

24. I have never seen a video playing in Dilley that explains how to wash my hands or any other information about the coronavirus.

25. On Saturday April 18, 2020, I was offered a mask by a CoreCivic guard for me and my child. We were told they were optional and did not tell me how long the masks could be used for. We were not provided with gloves.

26. In general, the guards I have seen working in the facility over the last 14 days have not worn masks or gloves.

27. I currently share a room with no other families. This only began on April 16, 2020.

28. All of the families in my corridor and one other corridor share a meal schedule. Anyone can eat breakfast any time before 7:45am. My family is assigned to eat lunch and dinner for 30 minutes at different times, depending on the week. Families eat between 11:00am and 1:00pm for lunch, and 4:30pm and 6:30pm for dinner. Eating assignments were first announced on or around the end of March 2020. One day in the beginning of April, I attempted to eat breakfast at 7:20am, and was told I was not allowed to and was yelled at. Despite the new strict schedule, I continue to share a dining table and condiments with different families every day.

29. There is a telephone in the trailer where I sleep. I have only seen the telephone cleaned 2 times a day.

**My daughter does not have access to education.**

30. Since the schools have closed, my daughter does not have access to education. She has been given a packet two times in the past two weeks from an instructor, but the packet is for material that she has already covered. I believe the material is busy-work, and not a real education. Nobody is available to answer questions that my daughter has about her schoolwork.

## Declaration of Melissa Peña

I, Melissa Peña, hereby declare under penalty of perjury as prescribed in 28 U.S.C. § 1746:

1. I am a law graduate with the Dilley Pro Bono Project.

2. I am fluent in the Spanish and English language.

3. On April 20, 2020, I spoke D.P.R. by telephone. I was unable to enter the South Texas Family Residential Center to meet with D.P.R. in-person because of the COVID-19 pandemic.

4. During my telephone call with D.P.R., I read the entirety of the "Declaration of D.P.R." in Spanish. D.P.R. confirmed that the information contained in the declaration I read and interpreted is true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed April 20, 2020 in San Antonio, Texas.

_____
Melissa Pena