# EXHIBIT JJ

DECLARATION OF J.F.S.M.

Pursuant to 28 U.S.C. § 1746 and subject to penalty of perjury, I declare that the following is true and correct:

1. My name is J.F.S.M. I am the mother of D.S.M.S., who is four years old. My son and I entered the United States on August 22, 2019 to seek asylum. We are currently detained at the South Texas Family Residential Center in Dilley, Texas. As of April 20, 2020, we have been detained for 242 days.

*My son is suffering in detention.*

2. I write this declaration to let the court know that my son has been detained for eight months. I understand he is not allowed to be here in this jail for so long.

3. I am worried about my son. He is only four years old. My son's behavior and health have changed while we have been detained. Here he has suffered from fever, body aches, nasal congestion, and a lack of appetite. He doesn't sleep like he used to and cries a lot.

4. My son has become hyperactive. This is new. He does not obey me like he used to. He does not seem to respect me as his mother. This does not surprise me, as here, the guards are in control, not me.

5. I believe all of these changes are a result of my son's detention. Before, my son was not like this. My son is easily distressed now and doesn't like me to leave him. After a few months of being detained he started to cry every time I tried to take him to school and told me he was afraid. Now when I try to drop him off at the daycare he tells me he doesn't want to be apart from me.

6. I beg for the court's help. I have been told children should not be detained here for more than 20 days. Does that mean the government is breaking the law by detaining us here?

7. Living in this jail is difficult for many reasons. I could share many examples. They have not given us a change of clothes since we arrived here. The clothes they gave us when we entered is damaged and the shoes we were provided have fallen apart. And the food is the same, always the same.

8. Being in this position with my son is hard. It is especially hard to watch other people leave and wonder why we are here. I also worry a lot because when my son gets sick we barely get medical treatment and I feel powerless to help him. The hardest thing for me is when my son asks me why we are still here. One day he asked me why he was in jail and I started to cry because I didn't know how to respond. Even though it's true, I don't want him to feel like he was in jail. I could only tell him that we have to be patient and that we will leave soon.

9. I have hope knowing the court is reviewing our case. After almost a year here we feel like giving up and I really feel like I can't endure any more time here.

***Immigration officials have made no efforts to release me or my child since we were detained 242 days ago.***

10. Other than my apprehension by immigration authorities, I have never been arrested or charged with a crime anywhere in the world. My son has also never been arrested or charged with crime.

11. I arrived to STFRC on August 27, 2019. I had my initial credible fear interview on August 29, 2019. I was issued a negative credible fear finding on August 30, 2019. No one who works for ICE or Core Civic spoke with me about my release from detention, or the release of my child, between August 27, 2019 and August 30, 2019.

12. I appeared before an immigration judge on September 23, 2019. The judge affirmed my negative credible fear finding. No one who works for ICE or Core Civic spoke with me about my release from detention, or the release of my child, between August 30, 2019 and September 23, 2019.

13. To my knowledge, ICE has not released any family from detention while they were pending their credible fear interview or immigration court review hearing, other than in urgent medical situations.

14. On September 16, 2019 I filed a complaint in the District of Columbia challenging the procedures used during my credible fear interview. I believe the procedures used during my interview were unfair and in conflict with the law. I know a small number of families who have been released recently because they have a medical condition that makes them vulnerable to the coronavirus. My son has asthma and I do not know why we have not been released.

15. Between August 27, 2019 and today - April 20, 2020 - no one has ever spoken with me about my child's release from detention.

16. I have provided immigration officials with contact information for my receiving person. My receiving person is my father who lives in Houston, Texas. I provided my father's phone number when I was detained at the border prior to my transfer to the South Texas Family Residential Center. When I arrived to Dilley, I provided my father's name and phone number again during the intake process. During my credible fear interview, I also provided the Asylum Officer with my father's name and phone number. My attorney has also provided my father's phone number to ICE numerous times.

17. To my knowledge, ICE has not called my father a single time since I was taken into custody with my son on August 22, 2019 to facilitate our release.

18. My father is ready to purchase a bus or plane ticket for me and my son at any time. If ICE calls my father today, he can book our tickets for tomorrow.

19. To my knowledge, ICE has not made any efforts to release me from this detention center since I was placed in detention with my son on August 27, 2019.

***I do not believe my family is safe from COVID-19 in detention.***

20. I am very afraid to be detained during the coronavirus pandemic. The officers come and go into the facility and could easily bring it in here and infect us. There are many children that are sick with colds and coughs, and since my child has asthma, I am scared of what COVID-19 could do to him. I am so scared that we hardly leave our room anymore. When we go out to eat, I keep my son very close to me and try to keep him from touching anything.

21. It is not possible for my family to maintain a distance of six feet from other families while detained. We are always siting together with other families at the table while we eat and always wait in line with other people.

22. A case manager has never had a one-on-one conversation with me about coronavirus, given me the opportunity to ask questions, or discussed my concerns with me.

23. I have never seen a video playing in Dilley that explains how to wash my hands or any other information about the coronavirus.

24. In general, the guards I have seen working in the facility over the last 14 days have not worn masks or gloves.

25. There is a telephone in the trailer where I sleep. In order to keep my child safe, we usually spend the whole day within our room, with the exception of leaving to eat. Each day, I usually see the telephone cleaned twice.

**Declaration of Rosalie Miller**

I, Rosalie Miller, hereby declare under penalty of perjury as prescribed in 28 U.S.C. § 1746:

1. I am a legal assistant with the Dilley Pro Bono Project.

2. I am fluent in the Spanish and English language.

3. On April 20, 2020, I spoke with J.F.S.M. by telephone. I was unable to enter the South Texas Family Residential Center to meet with J.F.S.M. in-person because of the COVID-19 pandemic.

4. During my telephone call with J.F.S.M., I read the entirety of the "Declaration of J.F.S.M." in Spanish. J.F.S.M. confirmed that the information contained in the declaration I read and interpreted is true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed April 21, 2020 in San Antonio, Texas.

_____
Rosalie Miller