# EXHIBIT QQ

### DECLARATION OF R.P.F.

Pursuant to 28 U.S.C. § 1746 and subject to penalty of perjury, I declare that the following is true
and correct:

1. My name is R.P.F. I am the mother of J.F.P., who is two years old. My son and I entered
   the United States on August 26, 2019 to seek asylum. We are currently detained at the
   South Texas Family Residential Center in Dilley, Texas. As of April 21, 2020, we have
   been detained for 240 days.

*My son is suffering in detention.*

2. My son doesn't want to eat anymore. The tortillas, bread, fruits, and other bland foods
   have been taken out of the dining hall, along with the toasters. My son is very small and
   likes to eat these foods, and now he eats even less with these restrictions.

3. My son's lungs are damaged from having pneumonia when he was a baby, so he gets sick
   very easily. The cold air in the detention center has been very harmful for him.

4. My son has often been sick in detention. He regularly has a cough and fever, but the
   doctors rarely give him anything. They tell me to leave, that there is no medicine, that he
   should just drink water. They tell us that we are dirty and do not wash our hands enough
   and that is why he gets sick. However, my son has trouble eating the food here and the
   food is often in poor shape, so I feel that is part of what is making him sick.

5. I have also not been feeling well during all of my months here. I can hardly sleep, and my
   head hurts all the time. I also have bad eyesight, but when I was apprehended by border
   patrol, they threw away my glasses. I need to ask the help of other mothers here to help
   me read everything. I can barely even read a telephone number.

6. 240 days is far too long for a child to be in detention. What my son needs is to be out of
   detention with my husband and me so that he can grow and be healthy.

*Immigration officials have made no efforts to release me or my child since we were detained
240 days ago.*

7. Other than my apprehension by immigration authorities, I have never been arrested or
   charged with a crime anywhere in the world. My son has also never been arrested or
   charged with a crime.

8. I arrived to STFRC on August 29, 2019. I had my initial credible fear interview on
   September 2, 2019. I was issued a negative credible fear finding on September 3, 2019.

No one who works for ICE or Core Civic spoke with me about my release from detention, or the release of my child between August 29, 2019 and September 3, 2019.

9.  I appeared before an immigration judge on September 18, 2019. The judge affirmed my negative credible fear finding. No one who works for ICE or Core Civic spoke with me about my release from detention, or the release of my child between September 3, 2019 and September 18, 2019.

10. I have not seen ICE release any families before their credible fear interview or immigration court review hearing. I know some families have had medical emergencies, and I never saw them again in Dilley, so maybe they are the exception.

11. On September 16, 2019 I filed a complaint in the District of Columbia challenging the procedures used during my credible fear interview. I believe the procedures used during my interview were unfair and in conflict with the law.

12. Approximately three months after I entered immigration custody, I was told my deportation officer would review my case to consider my release. They told me I would not be released because I was in a lawsuit. On February 14, 2020, I was supposed to have another appointment to review my case. I went to the appointment but the official never came and I was never given another appointment, nor was I told why I was still being kept in detention.

13. Since March 28, 2020 I know a small number of families who are also plaintiffs in federal lawsuits who were released from this detention center because they had a medical condition. I have a medical condition and so does my son. Specifically, I have debilitating migraines which are worsened by stress. Prior to my detention, I was taking medication for this condition, but have not received medication while in detention. In addition, my son has damaged lungs from having pneumonia as a baby and is susceptible to respiratory illnesses. I do not know why we have not been released.

14. Between August 29, 2019 and today, April 21, 2020, no one has ever spoken with me about my son's release from detention.

15. I have provided immigration officials with contact information for my receiving person. My receiving person is my husband, who lives in Texas. I provided my husband's phone number when I was detained at the border prior to my transfer to the South Texas Family Residential Center. When I arrived at Dilley, I provided my husband's name and phone number again during the intake process. During my credible fear interview I provided the

2

Asylum Officer with my husband's name and phone number. My attorney has provided my husband's phone number to ICE numerous times.

16. To my knowledge, ICE has not called my husband a single time since I was taken into custody with my son on August 26, 2019 to facilitate our release.

17. My husband is ready to purchase a bus ticket for me and my son at any time. If ICE calls my husband today, he can book our tickets for tomorrow.

18. To my knowledge, ICE has not made any efforts to release me from this detention center since I was placed in detention here with my son on August 29, 2019.

***I do not believe my family is safe from COVID-19 in detention.***

19. I am afraid to be here because if anyone gets sick here, I am worried we will not be allowed to leave. There are people in quarantine here and I do not know if they are sick, if they are living or if they are dead. My son had chicken pox a few months ago while we were here, and we were put in isolation. No one came to see us for a long time. My son got sicker and sicker and when an official did come to check on him, they told me that if my son was not given medication, he would die. However, they left without treating him and I had to wait many hours to receive medical attention for my son again. I am very worried that the same thing would happen if he were to get COVID-19. With his weakened lungs, I am very concerned that he could die.

20. It is not possible for my family to maintain a distance of six feet from other families while detained. When we wait in line for the dining hall and when we are eating, we are always much closer than six feet from other families.

21. A case manager has never had a one-on-one conversation with me about coronavirus, given me the opportunity to ask questions, or discussed my concerns with me.

22. I have never seen a video playing in Dilley that explains how to wash my hands or any other information about the coronavirus.

23. During the last 14 days, I have not been offered gloves for myself or my child. We also have not been given gloves.

24. In general, the guards I have seen working in the facility over the last 14 days have not worn masks. They only wear gloves to take out the trash or when they are cleaning, but otherwise they do not wear gloves either.

25. I am afraid because the officials come and go, and they can easily have contact with people who have the virus. It worries me that the officials do not wear masks. One official told me that, "For us, this is a joke. We are not going to wear masks." This makes me very scared.

26. All of the families in my corridor share a meal schedule. My family is assigned to eat lunch from 11:30 to 12:00 and dinner from 5:30 to 6:00. Eating assignments were first announced on or around March 30. I have tried to go eat outside of my given schedule various times because my son was hungry and have been turned away each time. The guards have gotten very angry when I have gone to try to get more food for my son. And despite the new strict schedule, I continue to share a dining table and condiments with different families every day.

27. There is a telephone in the trailer where I sleep. In order to keep my child safe, we usually spend almost the entire day within our room. I have only seen the telephone cleaned once per day, and there have been multiple days where I have not seen it be cleaned at all.

## Declaration of Natalie Lerner

I, Natalie Lerner, hereby declare under penalty of perjury as prescribed in 28 U.S.C. § 1746:

1.    I am a legal assistant with the Dilley Pro Bono Project.

2.    I am fluent in the Spanish and English language.

3.    On April 21, 2020, I spoke with R.P.F. by telephone. I was unable to enter the South Texas Family Residential Center to meet with R.P.F. in-person because of the COVID-19 pandemic.

4.    During my telephone call with R.P.F., I read the entirety of the "Declaration of R.P.F." in Spanish. R.P.F. confirmed that the information contained in the declaration I read and interpreted is true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed April 21, 2020 in San Antonio, Texas.

Natalie Lerner

5