# EXHIBIT RR

## DECLARATION OF S.L.R.

Pursuant to 28 U.S.C. § 1746 and subject to penalty of perjury, I declare that the following is true and correct:

1. My name is S.L.R. I am the mother of A.V.L., who is two years old. My son and I entered the United States on September 13, 2019 to seek asylum. We are currently detained at the South Texas Family Residential Center in Dilley, Texas. As of April 20, 2020, we have been detained for 221 days.

*My son is suffering in detention.*

2. I write this declaration to tell the court that I have been detained for 221 days with my son. It makes me feel sad to see how my son has suffered in detention. He does not want to eat. He has become very stubborn; he does not listen to me or pay attention to me. He was not like this before. Now, he's constantly stressed out and cries about anything. Although he's only two years old, last week he started telling me that he does not want this place anymore, asks to leave.

3. My son has been sick so often while we have been in detention. He had a cough and a cold that would not go away for weeks. He also had a bump on his neck, and I took him to the doctors seven times to have them examine him. Although the doctors say it is nothing severe or urgent, sometimes my son complains because it hurts. The doctors just told me that it would go away. They did a blood test on or around March 8th, 2020. They did not say anything else.

4. I am asking the court to please give us our freedom so I can keep fighting my case from outside the detention center.

5. In detention, my head hurts all the time and I have stopped laughing. I feel very stressed, I feel alone and trapped. I thought this was a free country where the authorities would follow the laws and treat me as a human being. I am disappointed by everything. My son asks me every day when we will be able to leave. I am begging you for help.

*Immigration officials have made no efforts to release me or my son since we were detained 221 days ago.*

6. Other than my apprehension by immigration authorities, I have never been arrested or charged with a crime anywhere in the world. My son has also never been arrested or charged with crime.

7. I arrived to STFRC on September 14, 2019. I had my initial credible fear interview on September 17, 2019. I was issued a negative credible fear finding on September 19, 2019. No one who works for ICE or Core Civic spoke with me about my release from

1

detention, or the release of my son, between September 14, 2019 and September 19, 2019.

8. I appeared before an immigration judge on September 30, 2019. The judge affirmed my negative credible fear finding. No one who works for ICE or Core Civic spoke with me about my release from detention, or the release of my child, between September 19, 2019 and September 30, 2019.

9. On October 17, 2019, I joined a lawsuit in the District of Columbia challenging the procedures used during my credible fear interview. I believe the procedures used during my interview were unfair and in conflict with the law.

10. Since March 28, 2020 I know a small number of families who are also plaintiffs in federal lawsuits who were released from this detention center because they had a medical condition.

11. Between September 14, 2019 and today, April 20, 2020, no one has ever spoken with me about my child's release from detention.

12. I have provided immigration officials with contact information for my receiving person. My receiving person is my cousin who lives in Kentucky. I provided my cousin's phone number when I was detained at the border prior to my transfer to the South Texas Family Residential Center. When I arrived at Dilley, I provided my cousin's name and phone number again during the intake process. During my credible fear interview I provided the Asylum Officer with my cousin's name and phone number.

13. ICE called my cousin when I arrived to STFRC to confirm his name, phone number and address. ICE called my cousin again around the first week of March 2020. They asked him to confirm his name, phone number and address, again. He asked if he should buy tickets and the ICE officer told him that not yet.

14. My cousin is ready to purchase a bus or plane ticket for me and my son at any time. If ICE calls my cousin today, he can book our tickets for tomorrow.

15. To my knowledge, ICE has not made any efforts to release me from this detention center since I was placed in detention with my son on September 14, 2019.

### I do not believe my family is safe from COVID-19 in detention.

16. I am very scared to get infected with COVID-19. I've heard in the news that it's spreading, and that people are dying. I feel like every moment, more people are getting

infected. I'm scared because the guards are entering and leaving the facility, and we don't really know if they are taking care of themselves and if they are going to infect us. I'm very afraid to be infected with COVID-19 while in detention. If it is difficult to get treatment for a regular cold, I'm sure I would die if I get infected with COVID-19 while in detention.

17. It is not possible for my family to maintain a distance of six feet from other families while detained. For example, the guards keep talking to other residents like they used to do before, and they don't even wear masks or gloves. It's very rare to see one of the guards with a mask. Also, during meals, we share the table. Sometimes there's ten people in one table, all sitting next to each other.

18. A case manager has never had a one-on-one conversation with me about coronavirus, given me the opportunity to ask questions, or discussed my concerns with me.

19. I can use the library from 1:45 pm to 2:15 pm every day. There are computers at the library, and you are allowed to use the computer for a total of 30 minutes during your scheduled time. I am not allowed to get on You Tube or Google to do internet searches.

20. I have never seen a video playing in Dilley that explains how to wash my hands or any other information about the coronavirus.

21. In general, the guards I have seen working in the facility over the last 14 days have not worn masks or gloves.

22. All of the families in my corridor share a meal schedule. My family is assigned to eat lunch from 11:30 am to 12:00 pm, and dinner from 5:00 pm to 5:30 pm. Eating assignments were first announced on or around March 30, 2020. Once, they changed the schedule but did not let us know. I attempted to eat, and I was told I was not allowed to. I The guard snapped her finger at us. They treat us worse than animals. Despite the new strict schedule, I continue to share a dining table and condiments with different families every day.

**Declaration of Nora Picasso**

I, Nora Picasso, hereby declare under penalty of perjury as prescribed in 28 U.S.C. § 1746:

1. I am a law graduate with the Dilley Pro Bono Project.

2. I am fluent in the Spanish and English language.

3. On April 20, 2020, I spoke with S.L.R. by telephone. I was unable to enter the South Texas Family Residential Center to meet with S.L.R. in-person because of the COVID-19 pandemic.

4. During my telephone call with S.L.R., I read the entirety of the "Declaration of S.L.R." in Spanish. S.L.R. confirmed that the information contained in the declaration I read and interpreted is true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed April 20, 2020 in San Antonio, Texas.

_____
Nora Picasso

4