# EXHIBIT WW

# DECLARATION OF C.G.C.N.

Pursuant to 28 U.S.C. § 1746 and subject to penalty of perjury, I declare that the following is true and correct:

1. My name is **C.G.C.N.** I am the mother of B.E.S.C., who is 6 years old. My son and I entered the United States on August 26, 2019 to seek asylum. We are currently detained at the South Texas Family Residential Center in Dilley, Texas. As of April 21, 2020, we have been detained for 240 days.

*My son is suffering in detention.*

2. I seek freedom from detention for my son. We came to the United States fleeing violence in El Salvador, where we escaped beatings and death threats. Despite all that we have survived, my son continues to suffer because he is imprisoned.

3. My son has become desperate. He says that he no longer wants to be here. He asks me when we can leave this place.

4. My son is depressed. He never wants to go outside or play. He wants to spend all of his time in the room.

5. My son's appetite has gone away. He will not eat for me. He doesn't enjoy food and eating. Most days, he will only eat bread with mayonnaise.

6. Children should be surrounded by loved ones. My son longs for his father and brother, who are in Missouri waiting for us. When we speak to them by phone my son cries and cries. The truth is that my son is so depressed. As a mother, I am very worried about him.

7. Children should be able to be free, roam wherever they want to. My son used to love running and being outside. He nothing has energy for these things. My son tells me he feels trapped here.

*Immigration officials have made no efforts to release me or my child since we were detained 240 days ago.*

8. Other than my apprehension by immigration authorities, I have never been arrested or charged with a crime anywhere in the world. My son has also never been arrested or charged with crime.

9. I arrived to STFRC on August 31, 2019. I had my initial credible fear interview on September 4, 2019. I was issued a negative credible fear finding on September 6, 2019. No one who works for ICE or Core Civic spoke with me about my release from detention, or the release of my child between August 31, 2019 and September 6, 2019.

10. I appeared before an immigration judge on December 12, 2019. The judge affirmed my negative credible fear finding. No one who works for ICE or Core Civic spoke with me about my release from detention, or the release of my child, between September 6, 2019 and December 12, 2019.

11. On September 16, 2019 I filed a complaint in the District of Columbia challenging the procedures used during my credible fear interview. I believe the procedures used during my interview were unfair and in conflict with the law.

12. Between August 31, 2019 and today - April 21, 2020 - no one has ever spoken with me about my child's release from detention.

13. I have provided immigration officials with contact information for my receiving person. My receiving person is my partner who lives in Missouri. I provided my partner's phone number when I was detained at the border prior to my transfer to the South Texas Family Residential Center. When I arrived to Dilley, I provided his name and phone number again during the intake process, and again during my credible fear interview. My attorney has also provided his phone number to ICE numerous times.

14. To my knowledge, ICE has not called my partner a single time since I was taken into custody with my son on August 26, 2019 to facilitate our release. He is ready to purchase a bus or plane ticket for me and my son at any time. If ICE calls him today, he can book our tickets for tomorrow.

15. To my knowledge, ICE has not made any efforts to release me from this detention center since I was placed in detention with my son on August 26, 2019.

***I do not believe my family is safe from COVID-19 in detention.***

16. I have seen in the news how the number of people testing positive for the virus increases every day. I heard of a men's immigrant detention center where many have caught the virus. I am afraid that if anyone catches the virus here, we will not receive the medical care we need. I have seen in the news that people need respiratory machines, and I don't believe we have them here. I am also very afraid for my son's life. I don't see my son eating enough, and I am afraid he may not be strong enough to fight this virus if he catches it.

17. It is not possible for my family to maintain a distance of six feet from other families while detained. Even though I try to keep a distance of six feet apart from others, we are gathered by CoreCivic staff into groups and escorted into the dining room. Some

CoreCivic guards ask us to keep a distance but most of them do not. In the cafeteria, I share three meals every day with other families. We are sitting in the same table next to each other, and we share condiments and napkins.

18. Although our activities are organized by hall number and color of neighborhood, the nature of communal spaces has us interacting with families from other halls and neighborhoods. When we are walking around outside, I frequently see families with opposite schedules from me. I also notice families gathered in front of the library from different halls and neighborhoods.

19. A case manager has never had a one-on-one conversation with me about coronavirus, given me the opportunity to ask questions, or discussed my concerns with me.

20. I am permitted to use the library from 8:30 a.m. to 9:30 a.m. every day. There are computers at the library, and you are allowed to use the computer for a total of 30 minutes during your scheduled time. Internet access is significantly blocked in the library, which makes it difficult to do research online about coronavirus. For example, we cannot watch videos online.

21. I have never seen a video playing in Dilley that explains how to wash my hands or any other information about the coronavirus.

22. In general, the guards I have seen working in the facility over the last 14 days have not worn masks or gloves.

23. There is a telephone in the trailer where I sleep. In order to keep my child safe, we usually spend 21 hours a day within our room. I have only seen the telephone cleaned two times a day.

## Declaration of Brian Elizalde

I, Brian Elizalde, hereby declare under penalty of perjury as prescribed in 28 U.S.C. § 1746:

1. I am a legal assistant with the Dilley Pro Bono Project.

2. I am fluent in the Spanish and English language.

3. On April 21, 2020, I spoke with **C.G.C.N.** by telephone. I was unable to enter the South Texas Family Residential Center to meet with **C.G.C.N.** in-person because of the COVID-19 pandemic.

4. During my telephone call with **C.G.C.N.**, I read the entirety of the "Declaration of **C.G.C.N.**" in Spanish. **C.G.C.N.** confirmed that the information contained in the declaration I read and interpreted is true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed April 21, 2020 in San Antonio, Texas.

_____
Brian Elizalde