# EXHIBIT CCC

**Declaration of M.R.C.D.**

Pursuant to 28 U.S.C. § 1746 and subject to penalty of perjury, I declare that the following is true and correct:

1. My name is M.R.C.D. I am the mother M.E.C. who is thirteen years old. My son and I entered the United States on August 13, 2019 to seek asylum. We are currently detained at the South Texas Family Residential Center in Dilley, Texas. As of April 21, 2020, we have been detained for 255 days.

*My son is suffering in detention.*

2. I write this declaration to tell the court how much my son and I are suffering in this detention center.

3. My son, who turned thirteen while in detention, is hardly eating because he is so sad. I see him wasting away in front of me. I am so worried about him because if he isn't eating, he will get sick. He had surgery on the back of his tongue when he was five years old. For that reason, it is even harder for him to eat. I see that he is losing weight because the little food he does eat gives him a stomachache, and then he throws most of it up.

4. For that reason I am desperate to leave this detention center with my son.

5. I am asking the court to please take note of my situation. I am terribly sad and desperate.

*Immigration officials have made no efforts to release me or my child since we were detained 225 days ago.*

6. Other than my apprehension by immigration authorities, I have never been arrested or charged with a crime anywhere in the world. My son has also never been arrested or charged with crime.

7. I arrived to STFRC on August 15, 2019. I had my initial credible fear interview on August 30, 2019. I was issued a negative credible fear finding on September 4, 2019. No one who works for ICE or Core Civic spoke with me about my release from detention, or the release of my child, between August 15, 2019 and September 4, 2019.

8. I appeared before an immigration judge on September 18, 2019. The judge affirmed my negative credible fear finding. No one who works for ICE or Core Civic spoke with me about my release from detention, or the release of my child between September 4, 2019 and September 18, 2019.

9. On September 16, 2019 I filed a complaint in the District of Columbia challenging the procedures used during my credible fear interview. I believe the procedures used during my interview were unfair and in conflict with the law.

10. Approximately 5 months after I entered immigration custody I was told my deportation officer would review my case to consider my release. Shortly thereafter, I was told I would not be released because I am a plaintiff in a federal lawsuit.

11. Between August 15, 2019 and today - April 21, 2020 - no one has ever spoken with me about my child's release from detention.

12. I have provided immigration officials with contact information for my receiving person multiple times. My attorney also provided contact information for my receiving person to ICE on my behalf.

13. To my knowledge, ICE has not called my receiving person a single time since I was taken into custody to facilitate our release. She is ready to purchase a bus or plane for me to go to Massachusetts immediately.

14. To my knowledge, ICE has not made any efforts to release me from this detention center since I was placed in detention.

### *I do not believe my family is safe from COVID-19 in detention.*

15. Friday of last week, on April 18, 2020, there was an overflow in one of the restrooms. The water smelled putrid, and remained for two days. Children were playing in the water. This made me worried that diseases were easily being spread, which could make people more susceptible to coronavirus. I also do not feel safe in detention because I am 49 years old, and I have heard that people who are older are more at risk for getting coronavirus. Every day I see people coming into the detention facility without masks or gloves.

16. It is not possible for my family to maintain a distance of six feet from other families while detained. In the dining hall, there are eight to ten people to a table, and people sit very close to each other. And children are always coming into close contact with each other.

17. A case manager has never had a one-on-one conversation with me about coronavirus, given me the opportunity to ask questions, or discussed my concerns with me.

18. I am permitted to use the library from 2:30 until 3:30 every day this week. The schedule changes weekly. There are computers at the library, and you are allowed to use the computer for a total of 30 minutes during your scheduled time. Internet access is significantly blocked in the library. There are lots of links that you cannot access. I also barely use the computer because I do not know how. These realities have made it difficult for me to do my own research about COVID-19.

19. I have never seen a video playing in Dilley that explains how to wash my hands or any other information about the coronavirus.

20. Recently I was provided with a mask. Even so, nobody uses the masks they are given. We have not been provided with gloves.

21. In general, the guards I have seen working in the facility over the last 14 days have not worn masks or gloves.

22. All of the families in my corridor share a meal schedule. Our breakfast, lunch, and dinner shifts change weekly. We are only allowed to eat for 30 minutes at a time.

23. There is a telephone in the trailer where I sleep. In order to keep my child safe, we usually spend about 20 hours a day within our room a day. I have only seen the telephone cleaned once per day.

**My son does not have access to education.**

24. Because of the coronavirus, school has closed at the detention center. My son has received two educational packets since the school has been closed. I do not believe the packets are sufficient education. My son says they are very easy, and finishes the work very quickly.

**Declaration of Melissa Pena**

I, Melissa Pena, hereby declare under penalty of perjury as prescribed in 28 U.S.C. § 1746:

1. I am a law graduate with the Dilley Pro Bono Project.

2. I am fluent in the Spanish and English language.

3. On April 21, 2020, I spoke with M.R.C.D. by telephone. I was unable to enter the South Texas Family Residential Center to meet M.R.C.D. in-person because of the COVID-19 pandemic.

4. During my telephone call with M.R.C.D., I read the entirety of the "Declaration of M.R.C.D." in Spanish. M.R.C.D. confirmed that the information contained in the declaration I read and interpreted is true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed April 21, 2020 in San Antonio, Texas.

_____
Melissa Pena