JOSEPH H. HUNT
Assistant Attorney General
Civil Division
AUGUST E. FLENTJE
Special Counsel
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director, District Court Section
Office of Immigration Litigation
SARAH B. FABIAN
NICOLE N. MURLEY
Senior Litigation Counsel
    Tel:  (202) 532-4824
    Fax:  (202) 305-7000
    Email:  Sarah.B.Fabian@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY LISETTE FLORES; *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM P. BARR, Attorney General of the United States; *et al.*, <br><br> Defendants. | Case No. CV 85-4544-DMG <br><br> **JOINT STATUS REPORT** |

On April 10, 2020, the Court ordered the parties to meet and confer regarding "(1) certain disclosures, including information regarding existence of COVID-19 infection among Class Members, that should be provided to minors' immigration counsel; and (2) the quality of the data that Defendants provide to Class Counsel pursuant to Paragraph 28A of the FSA." ECF No. 768 at 4. The Court further ordered the parties to provide a joint status report regarding their efforts to meet and confer no later than April 23, 2020. In accordance with the Court's order, the Parties provide the following joint status report.

(1) Certain disclosures, including information regarding existence of COVID-19 infection among Class Members, that should be provided to minors' immigration counsel

**Plaintiffs' Position**:

On April 16, 2020, Plaintiffs requested ORR meet and confer regarding providing class members' individual legal counsel the following:

1) When clients develop symptoms of, or are suspected of having contracted, COVID-19;
2) When clients have been tested for COVID-19 and the results of such tests;
3) When the facility in which clients are placed experiences an outbreak of COVID-19;
4) When a facility determines that clients are at heightened risk of serious illness or death should they contract COVID-19, such as children with diabetes or cancer; and
5) When ORR adopts or changes its policies or practices for responding to the COVID-19 pandemic.

On April 21, 2020, the Parties met and conferred. Defendants stated that ORR had yet to decide whether it would voluntarily disclose any of the requested

information.

But as they argue below, Defendants (1) argue that ORR is not in fact withholding information from class members' counsel; and (2) that even if it were, the Court has no authority to enjoin such withholding because the Settlement does not provide for such disclosure.

As regards Defendants' first point, a plethora of legal services providers have declared that ORR is in fact becoming less and less forthcoming with respect to policies and information regarding the threat and impacts of COVID-19 on their clients. *See, e.g.,* Declaration of Hannah Flamm (Doc. #759-8) ¶ 16 ("The Door has not received any formal COVID-related guidance directly from ORR regarding any changes in policies affecting the safety, welfare, and release of our clients to their sponsors. The most comprehensive, formal, COVID-related guidance we have seen has come from ORR's court filings in response to the Lucas R. and Flores temporary restraining order motions, . . ."); Declaration of Claudia Cubas (Doc. #759-3) ¶ 10 ("ORR has not provided clear guidance regarding the release of unaccompanied immigrant children during this pandemic. I am not clear in what circumstances release will be delayed due to COVID-19 related issues, or in what circumstances we can expect the release process to proceed as per usual."); Declaration of Anthony Enriquez (Doc. #759-4) ¶ 13 ("ORR is not providing information to us about the reason for the delay in release of these children so we have no way of knowing if it is related to a blanket policy or the individualized circumstances of a child."); Declaration of Elisa Gahng (Doc. 759-5) ¶ 24 (Cayuga facility refuses to indentify children in quarantine "so KIND has not been able to talk to the children to hear whether they have been appropriately quarantined according to local and state officials' guidance."); Declaration of Maria Bocanegra (Doc. 759-11) ¶ 8 ("Up until April 7, 2020, ORR had not shared official guidance regarding the release of unaccompanied

immigrant children during this pandemic."), and ¶ 10 ("On April 2, 2020, we became aware that more than one staff from Baytown had tested positive for COVID-19, which seemed to explain the stop placement directive. To be clear, we were not contacted by anyone from ORR and/or the facility to inform us of this development about the staff who tested positive. To the contrary, we only learned of the situation as a result of a report on the nightly news.").

Even assuming, *arguendo*, all these reports are wrong, the Court's ordering ORR to provide basic information to children's lawyers could do no harm. *de Jesus Ortega Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("The Defendants cannot be harmed by an order enjoining an action they will not take."); *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986) (same).

As for Defendants' second point, this Court has repeatedly required Defendants to produce information and data beyond what the Settlement itself requires in order to ensure that Defendants comply with the agreement. *See, e.g.*, Order, March 28, 2020 (Doc. #740) at 14. Indeed, the Court has expressly authorized the Indepenent Monitor to require such disclosures as she may think necessary to verify ORR's compliance with the Settlement and this Court's order enforcing it.

On April 14, 2020, Plaintiffs asked the Independent Monitor to direct Defendants to produce information that would illuminate the adequacy of their efforts to reduce congregate detention of class members during the COVID-19 pandemic, whether by releasing them without unnecessary delay or transferring them to "safe and sanitary," non-congregate placements. Plaintiffs sought the following:

1) Policies and practices aimed at preventing the spread of COVID-19 to children in congregate placement.

2)     Measures taken to expedite the release of class members to parents and other available custodians during the COVID-19 health emergency, including any changes to fingerprinting and home study policies or practices.

3)     The capacity of ORR and ICE congregate facilities as established by state or local licensing authorities and the current population of class members placed at each such facility.

4)     The number of non-congregate beds ORR and ICE has available, the number of class members in non-congregate placement, and a description of ORR's and ICE's efforts to increase the number of non-congregate beds during the COVID-19 public health emergency.

5)     ORR and ICE policies and practices for testing children in congregate facilities and congregate facility staff for COVID-19.

6)     The number of children and staff tested for COVID-19, the facilities at which they are placed or work, the date of testing, and whether tests have come back positive, negative, or results remain pending.

7)     A summary of what action ORR and ICE have taken in response to positive test results for COVID-19 among children or staff at congregate facilities: *i.e.*, whether and how many class members have been (a) transferred to other facilities; (b) released to sponsors; (c) isolated or quarantined in in lieu of release or transfer; and (d) whether and how many staff members have been suspended from having further contact with class members after having tested positive and how such suspensions have impacted child:staff ratios.

8)     With respect to children placed at congregate facilities in which detainees or staff have tested positive for COVID-19, the specific reason they have not been released or transferred to a non-congregate setting.

9) Policies and practices aimed at identifying and protecting children, such as those with diabetes or cancer, at heightened risk of serious illness or death should they contract COVID-19.

10) Any reports and recommendations of state or local health or licensing agencies issued in response to the outbreak of COVID-19 infection among children or staff at congregate ORR facilities.

As of this writing, Plaintiffs' request remains under submission.

**Defendants' Position**: Plaintiffs have provided multiple (sometimes conflicting) lists containing numerous demands for information that they contend should be provided to individual counsel for class members who have a Form G-28 on file (a Form G-28 reflects that counsel's representation of the minor in immigration proceedings). Despite multiple requests from Defendants, Plaintiffs' counsel have declined to explain how they believe these requests are related to any requirements under the *Flores* Settlement Agreement ("Agreement"). Given that the Agreement does not address the provision of information to individual immigration counsel for class members, it is Defendants' position that Plaintiffs' assertions that such information should nonetheless be provided are not properly addressed in the context of this case, nor the pending litigation.

Nonetheless, for the Court's awareness, Defendants provide the following explanation regarding how information may be provided to individual counsel for class members with a valid G-28 on file. Defendants note that they have asked Plaintiffs' counsel for examples of situations where the processes described below have not worked or have not been followed, and counsel for Plaintiffs declined to provide any such examples.

*Information regarding class members in an ICE FRC*:

*General Information*:  There are multiple, well-established means by which an attorney or representative, either providing a Form G-28 or having previously

filed a Form G-28, can obtain the information to which they are entitled. Attorneys have access to information about their client via the central telephone number posted publicly on ICE's website, as well as, through the assigned docket officers. By contacting the publicly posted telephone number for the facilities, attorneys and representatives can also obtain additional telephone contact information, group email-box contact information, fax number contact information, and written correspondence contact information.[1]

*Medical Information*: The publicly available Family Residential Standards,[2] which have been in place since 2009, provide the process for a resident, or any person designated by the resident, to obtain medical records and information, as follows:

> 21.b. Confidentiality and Release of Medical Records. All medical providers shall protect the privacy of resident's medical information to the extent possible, while permitting the exchange of health information required to fulfill program responsibilities and to provide for the well-being of residents. These protections apply not only to records maintained on paper, but also to electronic records. In general, information about resident's health status is confidential, and the active medical record shall be maintained separately from other residential records and be accessible in accordance with sound medical practice and applicable laws . . . . When information is covered by the Health Information Privacy Act (HIPA), specific legal restrictions govern the release of medical information or records. Copies of health records may be released by the facility health care provider directly to a resident or any person designated by the resident, upon receipt by the facility health care provider of a written authorization from the resident. Form 1-813 may be used for this purpose.

---

[1] https://www.ice.gov/detention-facility/south-texas-family-residential-center
https://www.ice.gov/detention-facility/karnes-county-residential-center
https://www.ice.gov/detention-facility/berks-family-residential-center
[2] https://www.ice.gov/detention-standards/family-residential

*Information regarding class members in ORR custody:*

ORR is not aware of any situations an attorneys of record has requested COVID-19 information, the unaccompanied minor agrees that such information should be shared, and programs are failing to provide the information.

ORR policy protects the confidentiality of medical information. Under section 3.4.7 of the ORR Policy Guide, a care provider must have written policies, procedures, and practices that protect the confidentiality of medical information. To safeguard children's privacy, care providers must use discretion when communicating with an unaccompanied alien child about medical appointments in the presence of others. Care provider staff also must dispense medication in a private location. Similarly, medical disclosure to staff about a child's health condition should be determined by the Program Director on a need-to-know basis. https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-3#3.4.

In addition, ORR maintains a contract with the Vera Institute of Justice. Vera Institute of Justice, in turn, subcontracts with non-profit legal service providers, who offer "Know Your Rights" presentations and legal screenings for all children in care, to determine if the children are eligible for immigration relief. The legal service provider may also coordinate a referral to a pro bono attorney to provide legal representation, and in some cases ORR funds direct representation. *See e.g.*, https://www.acf.hhs.gov/sites/default/files/orr/english_legal_service_providers_guide_with_form_508.pdf. When conducting legal screenings or Know Your Rights presentations, legal service providers are not acting as the attorney of record to the minor.

ORR's contracting representative has periodic teleconferences with the Vera Institute of Justice, as well as near-daily contact. During the teleconferences, Vera

staff are provided updates and have the opportunity to ask questions or offer comments. Vera also has access to the UAC Portal page containing a full list of COVID-19 field guidance provided to care providers. If legal service providers have information about attorneys of record not receiving medical information, they may contact Vera, which can relay such concerns in the regular teleconferences, or if needed, through the day-to-day contacts with the Contracting Officer.

(2) The quality of the data that Defendants provide to Class Counsel pursuant to Paragraph 28A of the FSA

**Plaintiffs' Position**:

Time has not permitted the Parties to meet and confer regarding this subject. Plaintiffs remain willing to do so in the near future.

**Defendants' Position**: Defendants dispute that this issue is raised in Plaintiffs' pending TRO, and it is Defendants' position that it is necessary and preferable to resolve the issues that Plaintiffs have raised regarding the Paragraph 28A data outside the context of the pending TRO. Defendants discussed this issue multiple times prior to the filing of Plaintiffs' TRO with counsel for Plaintiffs and with the Monitor, Andrea Ordin, as well as with Dr. Paul Wise. Defendants had previously expressed their willingness to continue these discussions. Defendants disagree with the majority of Plaintiffs' assertions regarding the data that is being provided, but continue to agree that the best resolution of this issue would be for the parties to meet and confer. As Defendants explained to counsel for Plaintiffs, Defendants believe that an in person meeting which includes Defendants' data operators from each of the three applicable agencies and agency components would be the most effective way to move forward, and Defendants were working to schedule that meeting before the COVID-19 pandemic interrupted that planning. In light of the fact that travel limitations due to the COVID-19 pandemic have made an

in-person meeting impractical, Defendants have proposed that the parties meet by phone on May 1, 2020.

      In the interim, Defendants continue to provide updated data to Plaintiffs on a monthly basis. As highlighted in the Juvenile Coordinator Report provided to the Special Monitor, some of Plaintiffs' allegations about the data are based on erroneous interpretations of the contents of the report which the parties can clarify at a meeting with operators.

///

///

///

DATED: April 23, 2020

*/s/Carlos Holguin* (with permission)
*Class Counsel for Plaintiffs*
CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Peter A. Schey
Carlos Holguín

DATED: April 23, 2020

JOSEPH H. HUNT
Acting Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation

WILLIAM C. SILVIS
Assistant Director, District Court Section
Office of Immigration Litigation

*/s/ Sarah B. Fabian*
SARAH B. FABIAN
NICOLE N. MURLEY
Senior Litigation Counsel
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-4824
Fax: (202) 305-7000
Email: sarah.b.fabian@usdoj.gov

*Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2020, I served the foregoing pleading on all counsel of record by means of the District Clerk's CM/ECF electronic filing system.

/s/ *Sarah B. Fabian*
SARAH B. FABIAN
U.S. Department of Justice
District Court Section
Office of Immigration Litigation

Attorney for Defendants