UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | April 24, 2020 |
| --- | --- | --- | --- |

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 1 of 21 |
| --- | --- | --- | --- |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
| --- | --- |
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
| --- | --- |
| None Present | None Present |

**Proceedings:  IN CHAMBERS—ORDER RE PLAINTIFFS' MOTION TO ENFORCE**

**I.
INTRODUCTION AND BACKGROUND**

Before the Court is Plaintiffs' request for a preliminary injunction to enforce the *Flores* Settlement Agreement ("FSA" or "Agreement") during the COVID-19 pandemic.  Four weeks of litigation culminate in this Order.[1]  In light of the emergent COVID-19 crisis, the Court issued the March 28, 2020 TRO and ordered Defendants Office of Refugee Resettlement ("ORR") and Immigration and Customs Enforcement ("ICE") to (1) make every effort to promptly and safely release Class Members in accordance with Paragraphs 14 and 18 of the Agreement and the Court's prior orders; (2) submit to inspections by the Juvenile Coordinators; (3) provide evidentiary snapshots to the Court, the Independent Monitor, and Class Counsel; and (4) show cause by April 10, 2020, why the Court should not grant Plaintiffs' motion for preliminary injunction.  March 28, 2020 TRO at 13–15 [Doc. # 740].

On April 6, 2020, Defendants filed their First Supplemental Response in opposition to a preliminary injunction and provided the requested data regarding individual Class Members. [Doc. # 746.]  Defendants also provided access to video tours of the three ICE Family Residential Centers ("FRCs") and five selected ORR facilities, and the ICE and ORR Juvenile Coordinators submitted their reports.  Based on this new information, Plaintiffs submitted their First Reply with additional declarations and exhibits on April 8, 2020, raising new concerns about Defendants' compliance with the FSA.  [Doc. ## 759, 761.]  On April 9, 2020, Defendants filed Objections and a Response to Plaintiffs' First Reply and requested the opportunity to submit supplemental briefing responding to Plaintiffs' arguments.  [Doc. # 762.]

---

[1] The Court incorporates by reference the factual backgrounds in the March 28, 2020 Temporary Restraining Order ("TRO") and the April 10, 2020 Order.  *See* March 28, 2020 Order at 1–3 [Doc. # 740]; April 10, 2020 Order at 1–3 [Doc. # 768].

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | April 24, 2020 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 2 of 21 |
|---|---|---|---|

On April 10, 2020, the Court granted Defendants' request and ordered supplemental briefing on the following issues:  (1) ICE's individualized parole determinations and continuous efforts to secure minors' release; (2) ORR's policy banning release of minors to States where COVID-19 has prompted stay-at-home orders; (3) ORR's policies postponing release of all minors in a facility with a confirmed case of COVID-19 or to a sponsor whose household has a confirmed case of COVID-19; (4) ORR's fingerprinting requirement for certain sponsors; and (5) the effect of the Migrant Protection Protocols ("MPP"), also known as the "Remain in Mexico" policy, on a minor's eligibility for release.  April 10, 2020 Order at 3–4 [Doc. # 768].  The Court also extended for two weeks the March 28 TRO requiring ORR and ICE to make every effort to promptly and safely release Class Members in accordance with Paragraphs 14 and 18 of the FSA and the Court's prior orders, and requesting continued monitoring by the Independent Monitor and the Juvenile Coordinators.  *Id.* at 5–6.[2]

Defendants have filed their Second Supplemental Response, and Plaintiffs have filed their Second Reply in accordance with the April 10, 2020 Order.  [Doc. ## 772, 774.]  The Court held a videoconference hearing on April 24, 2020.

Plaintiffs continue to argue that ICE has failed to keep Class Members "in facilities that are safe and sanitary and that are consistent with [its] concern for the particular vulnerability of minors."  Agreement at ¶ 12 [Doc. # 101]; *see* Pls.' Second Reply at 10.[3]  They also contend that ORR and ICE have failed to comply with their obligations under the FSA to "release a minor from its custody without unnecessary delay" and "make and record the prompt and continuous efforts on its part toward family reunification and the release of the minor."  Agreement at ¶¶ 14, 18; *see* Pls.' Second Reply at 15, 20.  In addition, Plaintiffs raise a new argument that ORR and ICE have violated their obligation to detain minors in the least restrictive setting, as set forth in the FSA.  Pls.' Second Reply at 8, n.5 (citing Agreement at ¶¶ 11, 23).  Plaintiffs now seek an Order (1) enforcing compliance with the FSA and with CDC COVID-19 guidelines for detention facilities; (2) requiring ICE to release minors with their detained parent unless that parent is determined to be a flight risk or danger; (3) requiring ORR to cease its blanket policy requiring

---

[2] The Court also ordered the parties' counsel to meet and confer regarding (1) certain disclosures, including information regarding existence of COVID-19 infection among Class Members, that should be provided to minors' immigration counsel; and (2) the quality of the data that Defendants provide to Class Counsel pursuant to Paragraph 28A of the FSA.  April 10 Order at 6.

[3] The Court previously found that ORR was in substantial compliance with its obligation to implement CDC-compliant guidelines and to provide adequate routine medical care and adequate living accommodations.  March 28, 2020 Order at 6–7.  Despite referring to a severe outbreak of COVID-19 at one ORR facility in Chicago, Plaintiffs have not renewed their calls for enforcement action against ORR for issues with medical care or living accommodations or submitted evidence that changes the Court's ruling in that regard.  *See* Pls.' Second Reply at 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | | Date | April 24, 2020 |
|---|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | | Page | 3 of 21 |
|---|---|---|---|---|

fingerprints from certain sponsors; (4) requiring both ICE and ORR to inform a Class Member's immigration counsel if they are infected or exposed to COVID-19 when appropriate consent to release medical information has been given; and (5) permitting the parties to propound written discovery and conduct depositions, with disputes to be addressed by the Independent monitor, for 30 days. Defendants argue that the core relief Plaintiffs seek is enforcement of the FSA, not a preliminary injunction, and that Plaintiffs have failed to show any breach of the FSA.

For the reasons stated below, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' request for enforcement of the FSA.

## II.
## LEGAL STANDARD

The parties dispute what legal standard to apply to Plaintiffs' request. Defendants argue that the injunction Plaintiffs seek is "akin to an order to enforce certain terms of the Agreement," and therefore the standards applicable to a motion to enforce should apply. Defs.' Second Supp. Response at 6. Plaintiffs continue to characterize their request as one for a preliminary injunction.

The parties and this Court have long acknowledged that the FSA is a consent decree, and "a consent decree is 'no more than a settlement that contains an injunction[.]'" *Fed. Trade Comm'n v. Enforma Nat. Prod., Inc*., 362 F.3d 1204, 1218 (9th Cir. 2004) (quoting *In re Masters Mates & Pilots Pension Plan & IRAP Litig.*, 957 F.2d 1020, 1025 (2d Cir. 1992); *see also Gates v. Shinn*, 98 F.3d 463, 468 (9th Cir. 1996) ("[W]hen a decree commands or prohibits conduct, it is called an injunction."). Thus, Plaintiffs already have obtained a judicially enforceable permanent injunction in the form of the FSA itself.

While the TRO served to address Plaintiffs' pressing concerns regarding Defendants' alleged non-compliance with the FSA on an emergency, *ex parte* basis, a preliminary injunction in this matter does not "serve the very purpose of a preliminary injunction, which is to preserve the status quo and the rights of the parties *until a final judgment issues* in the cause." *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010) (emphasis added). Rather, Plaintiffs seek an order reiterating that Defendants must adhere to the FSA's terms and requiring additional reporting under the FSA and the Court's prior Orders. The Court therefore need not issue *interim* injunctive relief, but may instead rely on the unambiguous terms of the Agreement itself and the Court's authority to enforce its own Orders. *See Jeff D. v. Kempthorne*, 365 F.3d 844, 853 (9th Cir. 2004) ("Once the decree was entered, the district court retained jurisdiction to enforce it[.]");Agreement at ¶ 37; October 5, 2018 Order Appointing Special Master/Independent Monitor at ¶ E.4 [Doc. # 494].

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | April 24, 2020 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 4 of 21 |
|---|---|---|---|

Accordingly, the Court construes Plaintiffs' request for relief as a motion to enforce. Plaintiffs must show by a preponderance of the evidence that ORR and ICE are currently in breach of the FSA. *See Flores v. Sessions*, 394 F. Supp. 3d 1041, 1049 (C.D. Cal. 2017). Because consent decrees are construed basically as contracts, the doctrine of substantial compliance applies. *See Flores v. Barr*, 407 F. Supp. 3d 909, 915 (C.D. Cal. 2019).

**III.**
**DISCUSSION**

As an initial matter, the Court addresses Defendants' argument that the Court cannot consider arguments raised and evidence submitted for the first time in Plaintiffs' Second Reply. *See* Defs.' Second Objections at 2–3 [Doc. # 779]. To the extent Plaintiffs raise issues pertaining to ICE juvenile detention facilities in their Second Reply that were not raised in their earlier briefs and to which Defendants have not had an opportunity to respond, the Court will not address them, but will refer them to the ICE Juvenile Coordinator for further investigation and report. *See* Pls.' Second Reply at 14 (discussing conditions at two ICE juvenile jails); *see also State of Nev. v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990) ("[Parties] cannot raise a new issue for the first time in their reply briefs.") (citation omitted).

The Court will consider Plaintiffs' new declarations, subject to the Federal Rules of Evidence, to the extent that they address issues raised in the parties' earlier briefs and shed light on the latest conditions on the ground at the FRCs and ORR facilities.[4]

The Court first takes up Plaintiffs' arguments regarding conditions in ICE FRCs, then their arguments that neither ORR nor ICE are releasing minors without unnecessary delay or making and recording prompt and continuous efforts toward release of minors in their custody.

**A.     Safe and sanitary conditions and appropriate medical care**

Paragraph 12A of the FSA provides that, following arrest, Class Members will be held in "facilities that are safe and sanitary and that are consistent with [Defendants'] concern for the

---

[4] In addition, although Plaintiffs have cited to many news articles, the Court bases its decision only on admissible evidence submitted by the parties. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice of publications introduced to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.") (internal quotation marks and citations omitted); *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1029 (C.D. Cal. 2015) (plaintiff "seeks to have the court take judicial notice of the truth of the facts stated in the various press releases and news articles. This the court cannot do.") (*citing, inter alia, Von Saher*, 592 F.3d at 960).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | April 24, 2020 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 5 of 21 |
|---|---|---|---|

particular vulnerability of minors." Agreement at ¶ 12. The Ninth Circuit confirmed that "assuring 'safe and sanitary' conditions includes protecting children from developing short- or long-term illnesses as well as protecting them from accidental or intentional injury." *Flores v. Barr*, 934 F.3d 910, 916 (9th Cir. 2019). In addition, Exhibit 1 to the FSA also specifies that minors detained in licensed programs shall receive, *inter alia*, "suitable living accommodations, . . . [a]ppropriate routine medical . . . care, . . . emergency health care services, . . . screening for infectious [disease] within 48 hours of admission  . . .  [and] immunizations in accordance with the U.S. Public Health Service (PHS), Center for Disease Control." Agreement, Exhibit 1 at ¶ A.1.

Defendants have submitted videotaped tours and detailed declarations regarding COVID-19 preparedness and policies at each of the three ICE FRCS:  South Texas FRC in Dilley, Texas ("Dilley"), Karnes FRC ("Karnes"), and Berks County Residential Facility ("Berks"). Based on the declarations of  Michael Sheridan, the ICE Contractor Officer Representative for Dilley and Karnes; Christopher George, the ICE Assistant Field Office Director who oversees Berks; and medical professionals involved or familiar with healthcare at each of the three FRCs, as of April 22, 2020, each FRC's policies regarding sanitation, social distancing, PPE, and medical services appear to comply with the CDC's COVID-19 Guidance for correctional facilities. *See generally* Defs.' Not. of Related Filing, Ex.  2 (Sheridan Supp. Decl.), Ex. 3 (George Supp. Decl.), Ex. 4 (Montalvo Decl.), Ex. 5 (Cantu Decl.), Ex. 6 (Green Decl.) [Doc. # 773].  It is also encouraging that FRCs are significantly under their maximum capacity.  As of April 21, 2020, Dilley houses 376 people, which is 16% of capacity, down from 557 people as of April 6, 2020.  Of these, 208 are minors.  There are 306 individuals, including 128 minors, at Karnes, which is 36% of capacity, down from 426 people as of April 6, 2020.  Berks currently houses five families, for a total of 16 people, which is 17% of capacity.  Among these, only six are minors.  *Id.*, Ex. 1 (Harper Supp. Decl.) at ¶ 4 [Doc. # 773].

Defendants' declarations thus paint a picture of sanitary, social-distance-compliant, and medically appropriate facilities—a picture tarnished by declarations of detainees and their legal services providers showing that ICE's directives are not being properly implemented.  As of April 21, 2020, detainees at all three FRCs report inaccessible or ineffective medical treatment, deteriorating health while in custody, insufficient soap and sanitation supplies, lack of thorough cleaning by staff, and insufficient use of PPE by staff or detainees.  *See, e.g.*, Pls.' Second Reply, Ex. KK (L.O.R. Decl.) at ¶¶ 9, 19–20, 23 [Doc. # 774-33]; *id.*, Ex. LLL (A.M.P. Decl.) at ¶¶ 7–8 [Doc. # 774-66]; Ex. NNN (N.V.G. Decl.) at ¶¶ 3–5 [Doc. # 774-68]; *id.*, Ex. W (B.L. Decl.) at ¶¶ 5, 9, 16–18, 20–22 [Doc. # 774-25].  Detainees at Dilley also report difficulty maintaining social distance.  *See, e.g.*, *id.*, Ex. XX (I.P.F.L. Decl.) at ¶ 23 [Doc. # 774-52].  One detainee at Dilley reported mixing with the general population while exhibiting symptoms of COVID-19—symptoms severe enough that she was eventually tested, though test results are not yet available.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | April 24, 2020 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 6 of 21 |
|---|---|---|---|

*See id.*, Ex. OO (N.G.B.F. Decl.) at ¶¶ 5–8 [Doc. # 774-43]. Another at Berks describes that the only available hand soap leaves rashes and bumps and reports begging the staff to change the soap. *Id.*, Ex. W (B.L. Decl.) at ¶ 20 [Doc. # 774-25]. Surveys conducted by legal service providers at Dilley and Karnes on April 20 and 21, 2020 corroborate individual detainees' accounts of uneven or failed implementation of COVID-19 policies. *See id.*, Ex. BB (Fluharty Third Decl.) at ¶¶ 37–46 [Doc. # 774-30]; *id.*, Ex. HHH (Meza Decl.) at ¶ 9 [Doc. # 774-62].

The Court need not repeat every assertion of ICE's implementation failure from Plaintiffs' deluge of declarations to conclude that Plaintiffs have raised significant concerns by a preponderance of the evidence about each FRC's ability to provide safe and sanitary conditions. The design of the ICE FRCs' COVID-19 prevention measures may substantially comply with the FSA's safe and sanitary and medical care requirements. And despite its laggardly initial response, ICE deserves some credit for its rapidly-evolving response to the pandemic in the aftermath of Plaintiffs' TRO application. But proper policy design, without proper implementation, does not offer Class Members the baseline of care bargained for in the FSA. Plaintiffs have offered sufficient evidence to undercut Defendants' optimistic portrait of the implementation of their Guidelines.

Accordingly, ICE's uneven compliance with Paragraph 12 and Exhibit 1 of the FSA warrants continued heightened monitoring.

**B.     Release without unnecessary delay and recording efforts toward release**

The FSA obligates ORR and ICE to "release a minor from [their] custody without unnecessary delay" and "make and record the prompt and continuous efforts on [their] part toward family reunification and the release of the minor." Agreement ¶¶ 14, 18.

**1.     ORR**

Plaintiffs argue that the risk of contracting COVID-19 in congregate care is urgent enough that any delay may present an unnecessary delay to release, in violation of Paragraph 14 of the Agreement.[5] As discussed in the March 28, 2020 TRO, medical experts agree that minors in any form of congregate care face heightened danger and potential trauma during the COVID-19

---

[5] Plaintiffs no longer argue that ORR fails to make and record continuous efforts toward release. ORR case managers keep detailed notes on each minor's potential sponsors, efforts to reach out to those sponsors, and the sponsors' progress—or lack thereof—toward submitting a family reunification packet. The Court commends ORR on doing a yeoman's job of making a record of its efforts to release minors and reunify families in this challenging environment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | April 24, 2020 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 7 of 21 |
|---|---|---|---|

outbreak. *See, e.g.*, March 28, 2020 TRO at 6; *see also* Pls.' First Reply, Ex. B (Cohen Decl.)
[Doc. # 759-2]. But according to Amanda Cohn, the Chief Medical Officer of the National Center
for Immunizations and Respiratory Diseases (NCIRD) at the CDC and a Deputy Incident Manager
for the CDC COVID-19 response, releasing Class Members and placing them in homes in some
locations in the United States may put them at equal or greater risk of COVID-19 exposure and
with diminished access to adequate medical care. Defs.' First Response, Ex. K (Cohn Decl.)
¶¶ 23–26 [Doc. # 736-11]. For this reason, the Court has already found that "rushing to release
minors *en masse* in the midst of the current travel restrictions or to release them to potentially unfit
custodians based on limited information" is unwise, "particularly given the possibility of contagion
via public transportation, or introducing healthy children to homes where they could be at a higher
risk of infection." March 28, 2020 TRO at 12.

Furthermore, the William Wilberforce Trafficking Victims Protection Reauthorization Act
("TVPRA") tasks ORR to ensure that any sponsor is "capable of providing for the child's physical
and mental well-being," and Paragraph 17 of the FSA provides that Defendants "may" conduct
suitability determinations before releasing a Class Member pursuant to Paragraph 14. 8 U.S.C.
§ 1232(c)(3)(A); Agreement at ¶ 17. Some ORR decisions that result in delays to release may
therefore be acceptable. *See Flores v. Sessions*, No. CV 85-4544-DMG (AGRx), 2018 WL
10162328, at *18 (C.D. Cal. July 30, 2018) (finding that some ORR policies "appear to be
reasonably calculated to protect Class Members" even if they result in delays in release).

Thus, the issue is whether Plaintiffs have shown by a preponderance of the evidence that
under any of the challenged policies, ORR has failed to release minors without *unnecessary* delay.
Previously, the Court found that ORR policies caused unnecessary delay and violated Paragraphs
14 and 18 of the FSA where the policies (1) were not required by the FSA or TVPRA, (2) were
not deemed necessary in analogous state child welfare contexts, and/or (3) were blanket bans or
blocks to release that failed to take Class Members' individualized circumstances into account.
*See Flores v. Sessions*, 2018 WL 10162328, at *21.

Using this framework, the Court turns to Plaintiffs' arguments and evidence that the
following ORR policies have resulted in unnecessary delay in releasing Class Members: (1) the
late March blanket ban on releasing all minors to sponsors in New York, California, and
Washington; (2) ORR's policies delaying the release of minors who have been exposed to a
confirmed case of COVID-19 or whose sponsor's household has a confirmed case of COVID-19;
(3) fingerprinting and home study requirements that are difficult or impossible to satisfy during
the pandemic; and (4) ORR's collaboration with ICE to bar release or reunification progress for
minors with orders of removal under the MPP.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | | Date | April 24, 2020 |
|---|---|---|---|---|
| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | | Page | 8 of 21 |

### i.      Ban on releasing Class Members to or from certain States

Defendants explain that the April 6, 2020 ORR Field Guidance # 4, COVID-1 Discharge Guide ("April 6 ORR Guidance") does not contain a blanket ban on releasing Class Members in New York or any other States.  Though ORR did institute a temporary hold on releases in New York on March 25, 2020, ORR consulted with local health officials and the CDC, developed a set of criteria for discharges from New York, and lifted the hold on April 3, 2020.  Defs.' Objections and Response, Ex. 7 (Sualog Second Decl.) at ¶ 12 [Doc. # 762-10]; Defs.' Second Supp. Response, Ex. 11 (Sualog Third Decl.) at ¶ 4 [Doc. # 772-6]; *see also* Pls.' First Reply, Ex. H (Flamm Decl.) at ¶¶ 7–8 (describing one legal service provider's belief that no minors were released between March 25, 2020 and April 2, 2020 from an ORR facility in New York due to an ORR policy declining to discharge any minors from the facility) [Doc. # 759-8]; Pls.' First Reply, Ex. E (Gahng Decl.) at ¶ 9 (describing one legal service provider's receipt of a notice that ORR had instituted a "stop placement" order ceasing the placement of any Class Members in New York) [Doc. # 759-5].  Presumably, the "stop placement" orders relating to California and Washington have also been lifted.  Minors, including minors in facilities in New York, have been released since the policy was changed.  *See* Pls.' Second Reply, Ex. C (Enriquez Decl.) at ¶ 9 [Doc. # 774-5]; Sualog Third Decl. at ¶ 4 (citing an average release of 64 minors a day between March 15 to April 15).

The Court does not fault ORR for exercising caution during the initial days of the pandemic.  Plaintiffs have provided no current evidence that a blanket ban exists on releasing Class Members to or from certain States that would violate the FSA.  Because ORR appears to have rectified any non-compliant blanket ban on releasing minors from facilities in States hardest-hit by COVID-19, Plaintiffs' requested relief relating to such a ban is now moot.

### ii.      Ban on releasing Class Members with exposure to COVID-19 or to sponsor households with confirmed cases of COVID-19

Defendants explain that the April 6 ORR Guidance does not contain a blanket ban on release of any minor exposed to COVID-19.  Sualog Third Decl. at ¶ 5.  Instead, the April 6 ORR Guidance temporarily postpones release of a Class Member in a facility experiencing one or more confirmed cases of active COVID-19 "until ORR's Division of Health for Unaccompanied Children (DHUC) lifts the hold on release or allows the release of specific children on a case by case basis following CDC recommendations."  Sualog Second Decl. at ¶ 7.  ORR's Deputy Director, Jallyn Sualog, states that this language "places responsibility with the health professionals in the DHUC, and allows case-by-case releases" if a minor can complete the required 14-day quarantine at a sponsor's home rather than in ORR care.  *Id.* at ¶ 8; Sualog Third Decl. at

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | April 24, 2020 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 9 of 21 |
|---|---|---|---|

¶ 5.  Factors taken into consideration when determining if an exposed minor can be released include:  whether commercial air travel is required to go to the sponsor's home, presence of health conditions that place the child or sponsor household at higher risk, and the ability of the sponsor to maintain the child's quarantine and active symptom monitoring for 14 days.  Sualog Third Decl. at ¶ 5.

Plaintiffs argue that the language of the April 6 ORR Guidance lacks the following: mandatory language requiring a medical professional to examine each case for possible release, a time frame for DHUC assessments, and an explanation of how a Class Member, sponsor, or attorney may apply for a minor's release.  Pls.' Second Reply at 20–22.  Plaintiffs' medical experts suggest that due to the relative ease of determining the DHUC factors, lack of accurate testing, and impossibility of quarantining every asymptomatic and symptomatic minor in a congregate care facility, a minor exposed to COVID-19 is far safer in a sponsor's home than in a congregate care setting where a COVID-19 infection is more likely.  *See* Pls.' Second Reply, Ex. A (Graves Decl.) at ¶¶ 7–13 [Doc. # 774-3]; *id.*, Ex. B (Cohen Decl.) at ¶¶ 4–13 [Doc. # 774-4].  As Plaintiffs' medical expert Dr. Julie DeAun Graves opines, "Postponing the release of children in facilities with known COVID-19 exposure is like leaving them in a burning house rather than going in to rescue them and take them to safety."  Graves Decl. at ¶ 7.

Plaintiffs also submit evidence of this policy's effect on Class Members.  At least one minor purportedly had his release delayed due to testing positive for COVID-19, though the Court has concerns about the foundation of this declarant's knowledge.  *See id.*, Ex. F (Huebner Decl.) at ¶ 21 [Doc. # 774-8].  Another had his release delayed due to exposure to another minor suspected of having COVID-19.  *See id.*, Ex. G (Cubas Decl.) at ¶ 11 [Doc. # 774-9].  According to an attorney serving clients at ORR care provider BCFS Baytown, the entire facility was placed under a 14-day quarantine order on April 7, 2020 after a news outlet reported that numerous BCFS Baytown staff members had tested positive for COVID-19.  *Id.*, Ex. I (Bocanegra Decl.) at ¶¶ 6, 8 [Doc. # 774-11].  One minor about to turn 18 was able to be released to his parental sponsor only after the quarantine was lifted; another turned 18 during the quarantine and was released to ICE custody, rather than to the long-term non-congregate placement already secured for him.  *Id.* at ¶¶ 9–10.

Besides Sualog's non-specific declarations, there is no evidence in the record indicating that medical professionals actually make case-by-case determinations of a minor's eligibility for release, and Plaintiffs have submitted at least some evidence to the contrary.  The Court does not find fault with the April 6 ORR Guidance in theory, but its implementation must be monitored as part of the Independent Monitor's and Juvenile Coordinator's regular monitoring duties to ensure

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | April 24, 2020 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 10 of 21 |
|---|---|---|---|

that this policy timely facilitates, rather than obstructs, ORR's ability to meet the FSA requirement of release without unnecessary delay.

As for releasing minors to homes in which there is a confirmed case of COVID-19, the April 6 ORR Guidance provides: "If a sponsor or a member of the sponsor's household has an active COVID-19 infection, postpone release until a medical or public health professional determines it is safe to release the UAC to the sponsor household." Sualog Second Decl. at ¶ 10. This language clearly provides for a medical professional's individualized assessment of a Class Member's eligibility for release and is reasonable under the circumstances. For similar reasons as stated above, however, continued monitoring of this policy's implementation remains necessary to ensure expeditious but safe release of minors to sponsor households.

### iii.   Fingerprint and home study requirements for certain potential sponsors

Plaintiffs argue that some of ORR's current fingerprinting and home study requirements are unreasonable and, in light of the pandemic's effects, unnecessarily delay the release of numerous Class Members. Noting that ORR already has some policies in place to waive the fingerprinting requirement and that some state child welfare agencies have relaxed fingerprinting requirements in light of the pandemic, Plaintiffs argue that ORR can similarly waive or delay the fingerprinting requirement and follow up with sponsors after release. *See* Pls.' First Reply at 21 & n.49. The summary spreadsheet submitted by ORR indicates that as of early April, approximately 51 minors in ORR custody in the 32 facilities listed have otherwise eligible sponsors who could not get fingerprinted due to COVID-19-related shutdowns, and 21 could not get a home study due to COVID-19. Attorneys for individual Class Members also describe numerous clients for whom the ORR facility specifically cited pandemic-related barriers to obtaining fingerprints or a home study as the reason for delaying release. *See, e.g.*, Gahng Decl. at ¶¶ 13–15; Enriquez Decl. at ¶ 8; Huebner Decl. at ¶¶ 12–14; Pls.' Second Reply, Ex. E, (Shaw Decl.) at ¶¶ 8–9 [Doc. # 774-5].

The TVPRA does not specifically require fingerprinting. It requires ORR to, at a minimum, "verif[y] the custodian's identity and relationship to the child, if any, as well as an independent finding that the individual has not engaged in any activity that would indicate a potential risk to the child." 8 U.S.C. § 1232(c)(3)(A). As of 2019, ORR requires fingerprints only of sponsors that fall into certain categories. Sponsors who are in Category 1 and Category 2A— parents or legal guardians, grandparents, adult siblings, or other close family members who were the primary caregiver of the minor—as well as any non-sponsor adult household member and identified adult caregiver must submit fingerprints only where a public records check reveals

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | April 24, 2020 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 11 of 21 |
|---|---|---|---|

possible disqualifying factors, or there is a documented risk to the safety of the minor, the minor is especially vulnerable, and/or the case is being referred for a home study. Fingerprints are required for all sponsors in Categories 2B and 3—close family members (*i.e.*, aunts, uncles, cousins) who were not the primary caregiver of the minor, or any other sponsor, such as a distant relative or unrelated adult. *See* Sualog Third Decl. at ¶ 7. The TVPRA requires a home study for a minor who is a trafficking victim, has special needs, is a victim of physical or sexual abuse, or has a sponsor who clearly presents a risk of abuse, maltreatment, exploitation, or trafficking to the child based on all available objective evidence. 8 U.S.C. § 1232(c)(3)(B). ORR policy also "requires a home study before releasing any child to a nonrelative sponsor who is seeking to sponsor multiple children, or who has previously sponsored or sought to sponsor a child and is seeking to sponsor additional children" or "for children who are 12 years and under before releasing to a nonrelative sponsor." ORR Policy Guide at § 2.4.2, https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied (last accessed April 23, 2020).

As of April 16, 2020, ORR has adjusted fingerprinting procedures by mailing fingerprint cards and working with potential sponsors to locate available fingerprint locations and with closed fingerprint locations to obtain PPE so that they can reopen. Sualog Second Decl. at ¶ 13; Sualog Third Decl. at ¶ 6. ORR Deputy Director Jallyn Sualog states that "only nine digital fingerprint locations are offline entirely," though it is not clear how many digital fingerprint locations remain "online." Sualog Third Decl. at ¶ 6. Sualog acknowledges that in some cases, the fingerprinting requirement may be waived, but that "eliminating fingerprint checks on a blanket basis, due to the COVID-19 threat, would inappropriately endanger children" and "undermine ORR's ability to fulfill Congress' directive that it protect children from 'traffickers and other persons seeking to victimize or otherwise engage such children in criminal, harmful, or exploitative activity.'" Sualog Second Decl. at ¶ 15 (quoting 8 U.S.C. § 1232(c)(1)). As for home studies, Sualog earlier declared that ORR has already allowed for virtual home studies where possible. *See* Sualog Second Decl. at ¶ 16.

Due to the dangers that Class Members may face if released to an improperly vetted sponsor, the Court ordinarily defers to ORR's expertise regarding the importance it ascribes to fingerprinting potential sponsors whose name-only background checks yield red flags, who have a more attenuated or no familial relationship to the minor, or who seek to sponsor particularly vulnerable minors. But under the current extraordinary circumstances in the midst of a pandemic, ORR's obligation to release minors without unnecessary delay requires moving with greater speed to remove minors from congregate environments where a suitable custodian exists.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | April 24, 2020 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 12 of 21 |
|---|---|---|---|

ORR's efforts to make digital fingerprinting available to potential sponsors fail to mitigate the Court's concerns about delay, given the number and prevalence of minors whose release hinges on their fully vetted sponsor going to a public place—potentially endangering themselves—to obtain fingerprints. Furthermore, since the Court's April 10, 2020 Order, more States have temporarily suspended fingerprint requirements for otherwise vetted foster parents. *See* Pls.' Second Reply at 25, n.37 (collecting states); Pls.' First Reply at 21, n.49 (same). While conceding that potential sponsors whose name-only background checks trigger red flags should still be fingerprinted, Plaintiffs have shown that additional fingerprint-based checks for Category 2B and 3 sponsors with clear records cause unnecessary delay under current circumstances. *See* Pls.' Second Reply at 23, n.32.

Accordingly, during the course of this pandemic in the United States, ORR's policy of withholding a minor's release to otherwise eligible Category 2B and 3 sponsors due to the unavailability of a facility to perform fingerprinting violates the FSA's prohibition on unnecessary delay. Like numerous other child welfare agencies, ORR shall institute provisional release of Class Members to Category 2B and 3 sponsors who have otherwise satisfied ORR's criteria, contingent upon later submission of fingerprints when fingerprinting is available.

Because the ORR has indicated its willingness to use virtual home studies on a case by case basis, the Court declines to grant Plaintiffs' motion to enforce on that issue at this time, though it will be the subject of further reporting. In any event, one of Plaintiffs' declarants admitted that "[i]n some cases, it appears that a virtual home study is being pursued[.]" Huebner Decl. at ¶ 19. If more minors' releases remain pending due to lack of completion of home studies, and it is not clear why virtual home studies have not been done, Class Counsel may submit an inquiry to the ORR Juvenile Coordinator and, in the absence of a satisfactory response, may utilize the dispute resolution procedures outlined in the October 5, 2018 Order Appointing Special Master/Independent Monitor at ¶ D.3. [Doc. # 494.]

### iv.    Migrant Protection Protocols

Neither side has provided a lucid explanation of what the MPP is, much less its effect on a Class Member's eligibility to be released. The Court thus relies on the Ninth Circuit's description of the policy in an unrelated case:

> The MPP now directs the "return" of asylum applicants who arrive from Mexico as a substitute to the traditional options of detention and parole. Under the MPP, these applicants are processed for standard removal proceedings, instead of expedited removal. They are then made to wait in Mexico until an immigration judge resolves

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | April 24, 2020 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 13 of 21 |
|---|---|---|---|

their asylum claims. Immigration officers exercise discretion in returning the applicants they inspect, but the MPP is categorically inapplicable to unaccompanied minors, Mexican nationals, applicants who are processed for expedited removal, and any applicant "who is more likely than not to face persecution or torture in Mexico."

*Innovation Law Lab v. McAleenan*, 924 F.3d 503, 506 (9th Cir. 2019). Of note, MPP is "categorically inapplicable to unaccompanied minors." *Id.* Defendants obliquely note that a minor may be in ORR custody but have "a final order of removal because he or she previously was in removal proceedings with a parent under the MPP." Defs.' Second Supp. Response at 28. Plaintiffs argue that any unaccompanied minor, even if previously accompanied, should regain TVPRA protection and be ineligible for removal under the MPP. Pls.' Second Reply at 26. It is unclear to the Court that the applicability of the MPP to minors who are currently unaccompanied and in ORR custody is an issue properly within its purview.

Regardless, the Court can determine whether ORR's policy of withholding from release those minors with a pending MPP case or removal order has caused unnecessary delay within the meaning of the FSA. ORR Deputy Director Sualog explains that under the April 6 ORR Guidance, when a child has a pending removal order, "care providers work with their [ORR Federal Field Specialist] to determine whether [the Department of Homeland Security]/ICE plans to execute the order and initiate removal." Sualog Second Decl. at ¶ 20. If ORR determines that removal "appears unlikely," because the removal order will be "reopened, appealed, or otherwise delayed," or for any other reason, the minor is evaluated for release following general ORR policies; but if removal is "imminent," then "ORR will work with ICE to ensure the minor appears for his or her scheduled removal." *Id.*; *see also* Sualog Third Decl. at ¶ 10.

Plaintiffs point out that this policy does not specify when deportation is considered imminent versus unlikely. The definition of "imminent" is "ready to take place" or "happening soon." *Imminent*, Merriam-Webster Online (last accessed on April 23, 2020). Based on ORR's April 8, 2020 summaries of efforts toward release, at least four unaccompanied minors in the 32 ORR facilities surveyed have not been released due to a pending MPP case or removal order, but no note was made of the imminence of removal. Pls.' Reply at 24. Declarations by legal service providers indicate that numerous other minors with a pending MPP case or removal order remain in ORR care. *See* Cubas Decl. at ¶¶ 4–9. Some minors have remained in ORR care for months despite pending appeals of their initial removal orders under the MPP. Such appeals are precisely the type of protracted proceeding that ORR claims will render a minor eligible to be evaluated for release, yet these minors' attorneys see no sign of ORR's willingness to evaluate them for release. *See* Gahng Decl. ¶¶ 11–12 (describing six minors with MPP-based removal orders who have filed

**CIVIL MINUTES—GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | April 24, 2020 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 14 of 21 |
|---|---|---|---|

Board of Immigration Appeals ("BIA") appeals and have been in ORR custody for 68 or 80 days);
Pls.' Second Reply, Ex. D (Devereaux Decl.) at ¶¶ 6–7 [Doc. # 774-6]; *id.*, Ex. J., (D.V.V.C. Decl.)
at ¶¶ 4–8, 13–14 [Doc. # 774-12]; *see also* Pls.' First Reply, Ex. A (Vernon Decl.) at ¶¶ 5–6 (Doc.
# 759-1) (noting that the BIA can take as long as 14 to 23 months to decide an appeal).

The Court sees no reason why, if removal is not "ready to take place," ORR should not
release minors whose removal orders under the MPP are under appeal. Thus, ORR's opaque
policies surrounding removal orders under the MPP violate Paragraphs 14 and 18 of the FSA.

**2.      ICE**

Plaintiffs argue that ICE unnecessarily delays Class Members' release by failing to make
individualized release decisions, in violation of Paragraph 14, and also fails to record efforts
undertaken, in violation of Paragraph 18.

As of April 21, 2020, the total population at the three FRCs is 698 individuals, 342 of them
minors). Of these individuals, 413 are subject to final orders of removal and pending removal,
256 are in expedited removal proceedings pursuant to Section 235 of the INA—*i.e.*, undergoing
credible or reasonable fear adjudications by U.S. Citizenship and Immigration Services ("USCIS")
or immigration court proceedings before an Immigration Judge ("IJ")—and the remaining 29 are
pending removal proceedings under Section 240 of the INA. Harper Supp. Decl. ¶ 5; *see* Defs.'
First Supp. Response, Ex. 2 (Harper Decl.) at ¶¶ 10–11 [Doc. #746-12]. The Court notes that these
numbers represent significant declines in population—even as recently as April 5, 2020, the total
FRC population was 1,004, which was itself a significant decrease from earlier population levels.
Harper Decl. at ¶ 2. But the Court cannot infer from the recent release of many minors and their
families that the Class Members remaining in custody are not suffering unnecessary delay in their
release.

Due to the relatively small number of minors pending removal proceedings under Section
240, the Court focuses on the minors in expedited removal proceedings, including those who are
subject to final orders of removal.

**i.      Class Members awaiting decisions in expedited removal proceedings**

Defendants assert that ICE makes an individualized parole inquiry for every minor with a
final order of removal, but do make that same assertion for families awaiting IJ or USCIS
responses. Defs.' Second Supp. Response at 19–20; *see* Harper Decl. ¶ 11. At the hearing,
Defendants' counsel Sarah Fabian stated that families are either put in Section 240 removal

---

**CIVIL MINUTES—GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | April 24, 2020 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 15 of 21 |

proceedings and released together, or ordered removed and removed together. This explanation completely omits discussion of the 256 families in expedited removal proceedings under Section 235, among whom are minors still awaiting decisions, for whom the Court has specifically ordered individualized parole determinations. *See Flores v. Sessions*, 394 F. Supp. 3d at 1067 ("The Court will order Defendants to comply with the unambiguous charge of the *Flores* Agreement to make *individualized* determinations regarding a minor's flight risk rather than blanket determinations . . . . even if the minor or her parent is in expedited removal (*i.e.*, awaiting a credible fear determination").

Instead, Defendants argue that for minors in expedited removal proceedings listed in ICE's records as "pending IJ hearing/decision" or "pending USCIS response," ICE may maintain custody of those minors "as long as their release or transfer from ICE custody occurs 'as expeditiously as possible,' or 'as fast as Defendants, in good faith and in the exercise of due diligence, can possibly go in screening family members for reasonable or credible fear . . . .'" Defs.' Second Supp. Response at 20 (quoting August 21, 2015 Order at 10 [Doc. # 189]). In 2015, Defendants suggested that 20 days was the amount of time Defendants could expeditiously screen Class Members and their families for reasonable or credible fear. August 21, 2015 Order at 9. Now, Defendants assert that the speed at which USCIS has been able to process credible/reasonable fear claims has decreased while, at the same time, denial rates have increased, though Defendants offer no specific timelines and merely point to USCIS's website for the recent numbers of cases received and completed. *See* USCIS, *Semi-Monthly Credible Fear and Reasonable Fear Receipts and Decisions*, https://www.uscis.gov/tools/reports-studies/immigration-forms-data/semi-monthly-credible-fear-and-reasonable-fear-receipts-and-decisions (last accessed April 24, 2020). It is unclear to the Court why, given the significantly reduced numbers in custody, 20 days is insufficient time for screening Class Members when it was sufficient in prior influxes involving far more people. Defendants have not stated any particular timeline in which Defendants can screen asylum-seeking minors and their families, even though many families awaiting IJ or USCIS responses have been in custody for far longer than 20 days, according to the ICE spreadsheet submitted on April 8, 2020.

Given the length of detention of these minors, Defendants have also failed to demonstrate actual individualized evaluations of flight risk, or refusals of parents to waive their right to remain detained with their children, or other explanations for prolonged detention of Class Members awaiting IJ or USCIS determinations.[6] The only direct evidence before the Court of the existence

---

[6] Parents may waive their children's *Flores* rights. *See* July 9, 2018 Order at 6 [Doc. # 455]. Defendants have been enjoined in separate class action litigation from separating class member parents from their children, absent an affirmative, knowing, and voluntary waiver of the parent's right to be detained with their children at an ICE FRC. *See Ms. L. v. ICE*, 310 F. Supp. 3d 1133, 1149 (S.D. Cal., June 26, 2018).

**CIVIL MINUTES—GENERAL**                    Initials of Deputy Clerk KT

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | April 24, 2020 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 16 of 21 |
|---|---|---|---|

of these individualized inquiries are the declarations of ICE officials. Harper Decl. at ¶¶ 11; Defs.'
First Supp. Response, Ex. (Sheridan First Decl.) at ¶ 28 [Doc. # 746-14]; Defs.' Second Supp.
Response, Ex. 10 (George Second Decl.) at ¶ 34 [Doc. # 772-5]. ICE's April 8, 2020 spreadsheet
does not contain information about flight risk or other factors leading to a denial of release, besides
noting that none of these minors pose a risk of harm to self or others. Furthermore, even if the
initial parole determination is appropriately made, the Court sees no evidence that ICE reevaluates
Class Members for *Flores* release rights at any point after the initial parole determination. *Cf.*
Defs.' First Supp. Response at 33 [Doc. # 746] ("'Class [M]embers will be reevaluated for parole
when new, pertinent information is received concerning continued custody[.]'") (quoting Sept. 8,
2017 Deane Dougherty Decl. at ¶ 8.a [Doc. # 374-2]).

By contrast, Javier Hidalgo, an attorney who supervises pro bono legal services at Karnes,
attests to notifying ICE whenever a Class Member has been detained for longer than 20 days and
receiving either no response or a response indicating no effort to release the Class Member or
individualized release determination. Pls.' Second Reply, Ex. III (Hidalgo Decl.) at ¶¶ 8–17 [Doc.
#774-63]. For example, in response to a parole request submitted on April 10, 2020, for a family
detained for at least 40 days, ICE responded that it would reconsider the request only once the IJ
had rendered a decision on the family's pending appeal. *Id.* at ¶ 17. Dilley Pro Bono Project
("DPBP") Director Shalyn Fluharty reports that as of April 8, 2020, one of DPBP's clients did not
receive a credible fear decision until 24 days after his initial credible fear interview, another waited
122 days for a hearing with an IJ to be scheduled, and another remained detained despite an IJ
vacating the minor's negative credible fear finding on February 21, 2020. Pls.' Supp Ex., Ex. O
(Fluharty Second Decl.) at ¶ 46 [Doc. # 761-1]. DPBP's record of families detained more than
120 days—which it provided to ICE and filed under seal with the Court—indicates that every one
of those families has a sponsor available. *Id.* at ¶ 4; *see also* Sept. 8, 2017, Deane Dougherty Decl.
at ¶ 8.a ("[W]hen an FSA class member is admitted into an FRC, ICE asks the parent of the class
member the opportunity to list potential sponsors.") [Doc. # 374-2]. To Fluharty's knowledge, no
minors or their parents have criminal history or have been deemed to be a danger by ICE. *Id.* at
¶¶ 28–30.

Because ICE has not submitted evidence of individualized release assessments for Class
Members awaiting asylum decisions, much less evidence that ICE makes and records individual
assessments in a prompt and continuous manner, the Court finds ICE in violation of the FSA's
Paragraph 18 (as well as the Court's prior June 27, 2017 Order) with regard to Class Members in
expedited removal proceedings who are "pending IJ hearing/decision" or "pending USCIS
response." Because unnecessary delay has resulted from this apparent failure to make
individualized parole assessments, ICE is also in violation of Paragraph 14.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | April 24, 2020 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 17 of 21 |

ii.    **Class Members under final orders of removal**

As for Class Members who are subject to final orders of removal, they are "increasingly subject to judicial and administrative stays of removal issued by various courts in various cases, which may impact the length of stay at an FRC." Harper Decl. at ¶ 11.  Melissa Harper, the Chief of ICE's Juvenile and Family Residential Management Unit, explains that such cases "are individually evaluated for risk of flight to determine whether continued detention is necessary or whether release is a viable option."  *Id.*  Again, ICE has not submitted any actual evidence of individualized evaluation of flight risk, despite the number of families currently in detention who have had their orders of removal stayed.

Plaintiffs' evidence suggests the lack of individualized evaluations.  Of the five families still detained in Berks, four have had final removal orders stayed by the district court in the case *M.M.V. v. Barr*, No. 19-2773 (D.D.C.), and the fifth has a motion to reopen pending before an immigration court and has a stay of removal. Pls.' Second Reply, Ex. V (Cambria Decl.) at ¶¶ 54–55 (noting that the fifth family is unlikely to be removed because its members, including a minor, have been kidnapped and trafficked) [Doc. # 774-24].  Each family has a close family member ready to receive them. *Id.* at ¶ 56.  At least ten parents at Dilley submitted declarations stating that they and their children have been detained for approximately 240 days and were told they would not be released because they were plaintiffs in a federal lawsuit, despite having family or friends ready to sponsor them. *See, e.g.*, Pls.' Second Reply, Ex. EE (C.C.G. Decl.) at ¶ 12 [Doc. # 774-33]; *id.*, Ex. LL, (L.G.G. Decl.) at ¶ 10 [Doc. # 774-40]; *id.*, Ex. NN (M.A.A. Decl.) at ¶ 13 [Doc. # 774-42]; *id.*, Ex. PP (R.L.A. Decl.) at ¶ 10 [Doc. # 774-44]; *id.*, Ex. QQ (R.P.F. Decl.) at ¶ 12 [Doc. # 775-45].  According to Fluharty, 164 family units with 204 children were in custody at Dilley as of April 21, 2020, with an average length of detention of 109 days, and at least 189 of those minors have, or will soon have, stays of removal due to litigation.  Fluharty Third Decl. at ¶¶ 22, 25.  And, even for final removal orders that have not been stayed and may be considered "imminent," as of April 8, 2020, Fluharty reported that one child at Dilley had been waiting for 63 days for removal to his home country, subsequent to the issuance of a final order of expedited removal.  Fluharty Second Decl. at ¶ 46.

While the Court appreciates that ICE has released many Class Members in its custody in recent months, the lack of individualized records regarding the Class Members remaining in its custody serves as circumstantial evidence of unnecessary delay and failure to make and record prompt and continuous efforts at release as to those Class Members in custody more than 20 days.[7]

---

[7] Defendants argue that "the vast majority of family units" are never placed in immigration custody, never transferred to ICE custody, or "quickly released from ICE custody either as a matter of discretion under 8 U.S.C. § 1226(a), or through the parole process" but do not provide numbers of minors or family members who fall into the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | April 24, 2020 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 18 of 21 |
|---|---|---|---|

ICE's efforts to comply with Paragraph 18 of the FSA suffer by comparison with those of ORR. Moreover, ICE has previously argued that it lacks the institutional capacity to perform individualized parole assessments. *See Flores v. Sessions*, 394 F. Supp. 3d at 1067. Its cursory evidentiary showings of those assessments raise concerns that ICE is not adequately assessing minors' flight risk, according to the FSA's general policy favoring release, or communicating with parents about the option of waiver of rights. The Court reiterates that ICE may consider a minor's flight risk, under Paragraph 14 of the FSA and federal regulations, but a final order of deportation cannot be the dispositive consideration if removal is not "imminent," as discussed above in relation to final orders of removal under the MPP, and there are no other indicia of a minor's flight risk. *See* Agreement at ¶ 14 (requiring release of a minor without unnecessary delay "[w]here INS determines that the detention of the minor is not required either to secure his or her timely appearance before the INS or the immigration court, or to ensure the minor's safety or that of others."); 8 C.F.R. § 212.5.

Accordingly, Plaintiffs have shown by a preponderance of the evidence that ICE is in breach of its Paragraph 14 and 18 duties and past Court Orders with regard to minors subject to final orders of removal, including those issued under the MPP and/or stayed by participation in federal litigation.

**IV.**
**CONCLUSION**

In light of the foregoing, Plaintiffs' request, construed as a motion to enforce the FSA, is **DENIED in part** and **GRANTED in part**. The Court hereby **ORDERS** as follows:

1. ORR and ICE shall continue to make every effort to promptly and safely release Class Members who have suitable custodians in accordance with Paragraphs 14 and 18 of the FSA and the Court's prior orders, including those categorized as "MPP," participants in class litigation, "pending IJ hearing/decision" or "pending USCIS response," absent a specific and individualized determination that they are a flight risk or a danger to themselves or others, or a proper waiver of *Flores* rights (*see, e.g.*, July 24, 2015 Order [Doc. # 177], June 27, 2017 Order [Doc. # 363], July 9, 2018 Order [Doc. # 455], July 30, 2018 Order [Doc. # 470]).

2. For the duration of shelter-in-place orders and fingerprinting location closures due to the COVID-19 pandemic, ORR shall institute provisional release of Class Members

---

latter category. Defs.' Second Supp. Response at 19. Nonetheless, in this motion, the Court is concerned only with the minors who remain in ICE custody for prolonged periods.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | April 24, 2020 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 19 of 21 |
|---|---|---|---|

with Category 2B and Category 3 sponsors whose name-only background checks yield
no red flags and for whom fingerprinting is unavailable, provided that these sponsors
agree to submit fingerprints as soon as practicable after the release of the minor and
within a reasonable time frame specified by ORR.  ORR may continue to require
fingerprints prior to release of a minor during the pandemic if fingerprinting is readily
available in the relevant locale or it conducts an individualized assessment and
determines that fingerprinting is necessary to address a documented risk of safety to
the minor.

3.  The Independent Monitor, Andrea Ordin, may in the exercise of her monitoring duties
    request such further information regarding safe and sanitary conditions and/or
    Defendants' continuous efforts at release as she deems appropriate pursuant to her
    authority under Paragraph B(1)(c)(iii) of the October 5, 2018 Order appointing her, and
    in consideration of the concerns outlined in this Order and the Court's June 27, 2017
    Order regarding minors in prolonged detention at any stage of expedited removal
    proceedings.  [Doc. ## 363, 494.]  If the Monitor believes that sharing that information
    with Plaintiffs' counsel on a case by case basis, subject to the protective order, would
    assist her in resolving individualized questions of prolonged detention, she may do so
    in the exercise of her discretion.

4.  The Juvenile Coordinators shall continue to perform their duties under Paragraphs 28A
    and 28B of the FSA.  Pursuant to the Court's July 27, 2018 Order [Doc. # 469], the
    Juvenile Coordinators shall file their next annual compliance report by July 1, 2020,
    including an assessment of ICE and ORR compliance with CDC guidelines for
    detention facilities.  Given the exigencies of the current pandemic, however, the Court
    hereby orders interim written reports to be filed by the 15th of each month starting in
    May 2020, and continuing for each month thereafter for the duration of the pandemic.

    a.  The additional monitoring and interim reports by Aurora Miranda-Maese,
        the ORR Juvenile Coordinator, shall cover the following topics, among
        others chosen by her:

        i.  Measures taken to expedite the release of Class Members to
            suitable custodians during the COVID-19 health emergency,
            including the status of fingerprinting and home study policies
            and practices, in compliance with this Order, and provide census
            data as to any minors who remain in custody due to lack of
            fingerprinting or home studies;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | | Date | April 24, 2020 |
|---|---|---|---|---|
| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | | Page | 20 of 21 |

ii. Identify the location of any ORR facility that has had any individual, whether detainee or staff member, test positive for COVID-19, and provide a status report and census of those infected at that facility during the reporting period;

iii. With respect to minors placed at congregate facilities in which either a detainee or staff member has tested positive for COVID-19, identify the specific reason the minors located there have not been released or transferred to a non-congregate setting;

iv. Describe any policies and/or practices aimed at identifying and protecting minors who are at heightened risk of serious illness or death should they contract COVID-19;

v. Explain whether medical professionals at ORR are making expeditious individual assessments about a Class Member's eligibility for release when the Class Member has been exposed to COVID-19 or has a sponsor whose household has a confirmed case of COVID-19, and provide the average time in which such individual assessments take place during the reporting period; and

vi. Explain whether ORR is making individualized assessments regarding its ability to release minors subject to removal orders under the MPP, including census data and reasons for non-release.

b. The additional monitoring and interim reports by Deane Dougherty, the ICE Juvenile Coordinator, shall cover the following topics, among others chosen by her:

i. Measures taken to expedite the release of Class Members to suitable custodians during the COVID-19 health emergency, including whether ICE is making individualized release determinations and redeterminations for each Class Member held in the FRCs and making records of the same, and provide a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544 DMG (AGRx) | Date | April 24, 2020 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 21 of 21 |
|---|---|---|---|

census of minors remaining in custody at FRCs longer than 20 days and the specific reason therefor;

ii. Monitor the status of ICE's implementation of its COVID-19 guidances;

iii. Identify the location of any ICE facility that has had any individual, whether detainee or staff member, test positive for COVID-19, and provide a status report and census of those infected at that facility during the reporting period;

iv. With respect to minors in an ICE facility in which either a detainee or staff member has tested positive for COVID-19, identify the specific reason the minors located there have not been released or transferred to a non-congregate setting; and

v. Describe any policies and/or practices aimed at identifying and protecting minors who are at heightened risk of serious illness or death should they contract COVID-19.

5. The parties' counsel shall continue to meet and confer regarding the quality of the data that Defendants provide to Class Counsel pursuant to Paragraph 28A of the FSA. The parties shall file a Joint Status Report regarding the outcome of their efforts to meet and confer by **June 15, 2020**.

6. The Court shall hold a further video status conference on **May 22, 2020 at 11:00 a.m.** to discuss compliance with this Order.

7. As to issues not covered by this Order, Class Counsel shall meet and confer with opposing counsel, or judiciously utilize the dispute resolution procedures outlined in Paragraph 28B of the FSA and, if there is no satisfactory response, the October 5, 2018 Order Appointing Special Master/Independent Monitor at ¶ D.3 [Doc. # 494].

**IT IS SO ORDERED**.