# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jenny Lisette Flores., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>William Barr, Attorney General of the United States, *et al.*,<br><br>Defendants. | Case No. CV 85-4544-DMG-AGRx<br><br>District Judge Dolly M. Gee |

## DECLARATION OF STEPHEN ANTKOWIAK, OFFICE OF REFUGEE RESETTLEMENT

I, Stephen Antkowiak declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that my testimony below is true and correct:

   1.   I am the Director of the Division of Unaccompanied Children Operations ("DUCO") within the Office of Refugee Resettlement ("ORR"), Administration for Children and Families ("ACF"), U.S. Department of Health and Human Services ("HHS").

   2.   As DUCO Director, I have responsibility for overseeing the operational aspects of intake and placement decisions for all unaccompanied alien children, sponsor reunifications, background checks, home studies, and post-release services. I became DUCO Director in March, 2019. Prior to joining HHS, I was employed with U.S. Immigration and Customs Enforcement for ten years where I served as Chief of both the Office of Detention Oversight under the Office of Professional Responsibility and the Juvenile and Family Residential Management Unit under Enforcement and Removal Operations. In these roles, I provided policy guidance and trained agency staff in cases involving the processing and care of unaccompanied alien children, developed and oversaw the implementation of national standards of care for families housed in ICE residential programs; and oversaw staff who conducted compliance inspections of ICE

detention facilities to assess conditions of confinement and adherence to ICE standards. Prior to joining ICE, I spent nearly ten years at the U.S. Department of Justice, Office of Justice Programs and in the private sector supporting a variety of programs targeting at-risk populations. This included court-based diversion programs for adults, juveniles, and family dependency court participants designed to curb substance abuse and crime and improve offender reentry into the community. I received a B.A. from the University of Maryland in Criminology/Criminal Justice, where I also completed Master's level coursework.

3. I am submitting this declaration to explain the current situation for the minor, J.M.A., identified in Ashley Huebner's May 21, 2020 declaration [Doc.# 797-1]. On May 22, 2020, the Court ordered that J.M.A. "shall be provisionally released forthwith pursuant to the Court's April 24, 2020 Order, unless the Court receives an explanation by **May 25, 2020** why, as a matter of law, he cannot be released." [Doc. # 799].

4. My testimony in this declaration is based upon my personal knowledge of J.M.A.'s case, as well as information shared with me by the Federal Field Specialist ("FFS") with responsibility for J.M.A.'s care provider. It also is based on records I have reviewed in the course of performing my job duties and preparing this declaration. I am testifying to the best of my knowledge at the time of submitting this declaration.

5. J.M.A. will be released today, May 25, 2020, to his third applicant sponsor (J.M.A.'s first applicant sponsor refused to be fingerprinted; and his second applicant sponsor was not viable due to fingerprint-based background check results.) While J.M.A. required a home study, ORR was able to ensure a virtual home study occurred Sunday, May 24, 2020, and the results from that home study are positive. Thus, ORR has made the arrangements for J.M.A. to be released to his sponsor, today, Monday May 25, 2020.

6. J.M.A. required a home study under the applicable law, the Trafficking Victims Protection Reauthorization Act ("TVPRA"). In April 2020, J.M.A. reported ▇
▇
▇

7.  J.M.A. suffers from ████████████████████████████
████████████████████████████████████. He suffers from ████████
████████████████████████████████████████████████████. He suffers
from ████████████████████████████████████████

8.  It is not clear why care provider staff did not request a home study in April of 2020 when learning of J.M.A.'s prior trauma. However, both the care provider case manager and the case coordinator, who serves an independent check on case manager recommendations, have now recommended such a home study and identified it as mandatory under the law. ORR is providing refresher training to the care provider regarding these issues. Under the TVPRA, a home study "shall be conducted for a child . . . . who has been a victim of physical or sexual abuse under circumstances that indicate that the child's health or welfare has been significantly harmed or threatened."

9.  I understand that NIJC has submitted a declaration noting that a home study may not be required where the physical or sexual abuse may not have been sufficient to significantly harm or threaten J.M.A.'s health or welfare. I believe the abuse discussed above significantly harmed J.M.A.'s health or welfare, and as noted, the case manager and case coordinator both concurred in the recommendation for a home study. In addition, it is not clear to me whether NIJC attorneys independently learned about J.M.A.'s abuse or the effects of such abuse on his welfare in interviewing him for potential legal relief. In my experience, attorneys will typically explore such subjects in determining the availability of immigration legal relief.

10. It also is important to note that even if J.M.A. were not released today, May 25, 2020, he would *not* have been transferred to Immigration and Customs Enforcement ("ICE") adult detention when he turns 18 on May 26, 2020.

11. On May 22, 2020, ICE confirmed with ORR that it would allow J.M.A. to be released on recognizance ("ROR"). I have reviewed emails that show that ICE also informed J.M.A.'s attorneys at the National Immigrant Justice Center ("NIJC") that J.M.A. would not be transferred to adult detention on his 18th birthday. A May 22, 10:20 a.m. email from an NIJC supervising attorney to the care provider lead case manager states: "Great news, thank you for the update!  We also heard from ICE today that ROR to sponsor has been approved for [J.M.A]. In case he is not released to his sponsor before his 18th birthday."

12. I have reviewed emails that show that ORR's grantee care provider requested ROR on or about May 14, 2020. On Friday May 15, 2020, at 10:47 a.m., the care provider emailed J.M.A.'s attorneys at NIJC informing them of the request for ROR.

13. NIJC responded May 15, 2020 as follows: "NIJC had said on a previous email chain that we would take care of the communication with FOJC [field office juvenile coordinator] regarding ROR. Because we are his attorneys, we should be the ones communicating with ICE about his case. For future reference, please keep this in mind. We will send a formal ROR request to the FOJCs next week if necessary." I understand the care provider informed NIJC it acted in accordance with ORR procedures.

14. In addition, J.M.A.'s care provider has experienced no COVID-19 cases in either staff or the minors housed in the licensed group home. J.M.A. is currently one of three minors in a cottage capable of housing 25 minors.

15. In conclusion, J.M.A.'s case history clearly mandated a home study under the TVPRA, and ORR acted expeditiously when it identified the need. However, even if J.M.A. had "aged out" of ORR legal custody, ICE had already informed ORR (and it seems NIJC) that it would *not* transfer J.M.A. to adult detention. ORR began taking steps regarding this issue starting May 14, 2020, and NIJC reprimanded the care provider for doing so.

Executed on May 25, 2020

                                      Stephen M. Antkowiak
                                      DUCO Director

*Digitally signed by Stephen M. Antkowiak -S*
*Date: 2020.05.25 12:35:45 -04'00'*