**ORR JUVENILE COORDINATOR INTERIM REPORT**

**June 8, 2020**

**Aurora Miranda-Maese, ORR Juvenile Coordinator**

## Introduction

On April 24, 2020, The Honorable Dolly M. Gee of The United States District Court for the Central District of California held a third hearing on the Motion for Temporary Restraining Order on Jenny L. Flores, et al. v. William P. Barr, et al., directing the undersigned designated as the Office of Refugee Resettlement (ORR), Juvenile Coordinator, Aurora Miranda-Maese, to file an Interim Report monthly during the pendency of the national health emergency related to the COVID-19 pandemic.

Subsequent to the Court Order, the undersigned established a workgroup to assist in obtaining the data from all congregate care shelters and transitional foster care nationwide, on issues as they pertain to the six Court-ordered topics.  Under the Juvenile Coordinator, this workgroup developed questionnaires to gain further insight from the ORR network on a case-by-case basis where clarity was needed.  This workgroup continues in the same manner with additional questions for specific information as they pertain to the new Court Order dated May 22, 2020.

At the Court hearing on May 22, 2020, the Court ordered the following for the ORR Juvenile Coordinator:

- The Juvenile Coordinator shall file an updated report by June 8, 2020, covering the topics listed in the April 24, 2020 Order.

- In her report, the ORR Juvenile Coordinator shall also provide an update on each minor whose sponsor's fingerprinting or home study is delayed and a *specific* explanation for each delay.

The Court ordered a video status conference on June 19, 2020 to discuss compliance with the Court's Orders.

During this reporting period, which began on May 22, 2020 – June 1, 2020 approximately 1,159 cases were reviewed individually. The census of minors in ORR custody has continued to decrease, with approximately 679 minors residing in congregate care facilities as of June 1, 2020.  The workgroup continued to collaborate with ORR grantee staff, Federal Field Specialists (FFS), and other ORR staff members to obtain the information needed from ORR network. Figure 1 below provides minors' census information and discharges since the onset of when the Juvenile Coordinator began tracking this information.  Also listed below is Figure 2, which details ORR's total bed capacity by residence type as of June 7, 2020.



Figure 1: ORR Census & Discharges from March 15 to June 6, 2020[1]

Figure 2: ORR Bed Capacity by Residence Type as of June 7, 2020[2]

| ORR Program Type | Total Beds | # of Beds Occupied (% of total beds) | # of Beds Not Occupied (% of total beds) |
|---|---|---|---|
| Shelter | 10,489 | 507 / 5% | 9,982 / 95% |
| Staff Secure | 134 | 21 / 16% | 113 / 84% |
| Secure | 34 | 2 / 6% | 32 / 94% |
| RTC | 50 | 10 / 20% | 40 / 80% |
| TFC | 2,028 | 105 / 5% | 1,923 / 95% |
| LTFC | 634 | 432 / 68% | 205 / 32% |
| TOTAL | 13,369 | 1,077 / 8% | 12,295 / 92% |

---

[1] The census reflected in Figure 1 is a snapshot of the minors in care from March 15 - June 7, 2020, in addition to the daily discharges.

[2] Census for minors in ORR custody constantly fluctuate as children are admitted, transferred, and discharged at all times of each day. Therefore, the census reflected in Figure 1 is a snapshot of the capacity at the exact time that the review was conducted.

Although not Court ordered, the Special Master requested the Juvenile Coordinator provide a brief summary to describe ORR's Long Term Foster Care (LTFC). As noted above, ORR has 634 LTFC beds, with 432 occupied as of June 7, 2020.  ORR LTFC is for minors who have been in ORR care for a prolonged period of four months or more without eligible sponsors and with pending applications for legal protection in the U.S.   A minor is transferred from shelter or transitional foster care (TFC) to LTFC if they do not have an eligible sponsor and/or also if they have a possible legal case to get SIJS, U-Visa, T-Visa, Asylum, etc. to then enter into an unaccompanied refugee minor (URM) program. With regard to COVID-19, ORR has released the same precautions to LTFC as with the general UAC program. Each program must adhere to the Center for Disease Control (CDC), their state government as well as state child welfare guidelines concerning COVID-19 precautions.

This report provides updates to the six topics ordered to be covered by the Juvenile Coordinator, which follows below:

I. Measures taken to expedite the release of Class Members to suitable custodians during the COVID-19 health emergency, including the status of fingerprinting and home study policies and practices, in compliance with this Order, and provide census data as to any minors who remain in custody due to lack of fingerprinting or home studies.

### Fingerprinting Policies and Practices

This workgroup reviewed the entire census where fingerprinting was unavailable. As of May 21, 2020 there was only one fingerprinting site that remained closed (SWK San Diego). The workgroup actively audited each case individually to determine if the lack of fingerprinting services within a reasonable distance from the person's location was the sole reason for a delay in a minor's release, and if provisional release was appropriate under the Order.

During this audit, the workgroup reviewed the status of fingerprinting requirements for sponsors, their household members if necessary and additional adults designated by the sponsor as an alternate care giver. In most cases, the persons successfully scheduled an appointment or completed the fingerprinting as most fingerprinting locations are fully or partially operational.

Fingerprinting services are among the initial criteria commenced in the family reunification process. In cases where fingerprinting is not immediately available, case managers continue to search for alternative locations within a reasonable distance and continue to communicate with the persons regarding their options. Where no reasonable alternative fingerprinting options are available and fingerprinting is the only requirement delaying release, ORR determines whether provisional release is appropriate.

### Status of Fingerprinting Delays Where Minors Remain in ORR Custody

The following are details for specific cases where release of the minors from ORR custody was delayed because of the suspension of fingerprinting services due to COVID-19 related closures. As of June 1, 2020, there was only one minor in ORR care whose release was delayed under this category. The details of the case is discussed below.

*Figure 3: Fingerprinting Delays and Explanation*[3]

| UAC No. | Release Status |
|---|---|
| 1. | Not eligible for waiver due to criminal arrest history. Also awaiting completion of Child Abuse and Neglect (CA/N) checks. |

On May 19, 2020, ORR issued field guidance providing instructions for requesting a waiver of the fingerprinting requirement for cases where the sponsor and affiliated persons cannot locate nearby fingerprinting services. This was previously provided to the Special Master and Flores Counsel, Mr. Carlos Holguin.

As of June 5, 2020 there were five (5) fingerprinting waivers submitted. The results of those waiver requests were as follows:

- Three (3) waiver requests approved with minors provisionally released; and
- Two (2) waiver requests withdrawn due to fingerprinting completion before decision made – both minors released.

## Home Study Policies and Practices

ORR issued Home Study Practice Guidance due to COVID-19 on May 6, 2020 (see attached ORR field guidance) and ORR is in alignment with the many states who have imposed restrictions on movement or shelter-in-place orders for residents due to the COVID-19 pandemic. It remains paramount that minors are released to a safe and healthy environment with a sponsor who is able to meet their needs. It is also important to protect the staff who conduct home studies and assure they feel safe and supported during this time as well.

ORR's home study providers are to follow their respective state's official guidance on conducting home visits/home studies for domestic minors. ORR honors the state's guidance until further notice is provided to the shelter network from ORR. If no official state guidance has been issued on conducting home studies during the COVID-19 pandemic or if states require that the home visit be conducted in person, ORR home study providers can seek a waiver on the in-person home visit via the Federal Field Specialist (FFS) for that region. ORR continues to assess on an individual basis if a virtual home visit can take place in lieu of the in-person contact.

Home study reports must still be submitted within 10 business days of the receipt of the home study referral and documentation is made in the minor's file as to which method the home study was conducted.

---

[3] Figure 3 reflects information regarding the minor with fingerprinting delayed due to, or related to COVID-19 along with the additional explanation for each minor.

Status of Home Study Delays Where Minors Remain in ORR Custody

The following are details for specific cases where the home study is delayed because of precautions related to COVID-19. As of June 1, 2020, there were four minors in ORR custody under this category. The details of their cases are discussed in Figure 4 below.

*Figure 4: Home Study Delays and Explanation[4]*

| Minors | Status of Home Study |
|---|---|
| 1. | In person home study required because of criminal history of person residing in the sponsor's home. Home study is not the only delay. The case is also pending receipt of background check requirements. |
| 2. | In person home study needed due to minor's medical needs and sponsor having another medically fragile child in the home. |
| 3. | In person home study needed due to minor's complex mental health and behavioral history. |
| 4. | Virtual home study interview raised concerns about the sponsor's home. Therefore, home study worker recommended in-person home study. Home study report scheduled for June 8, 2020. |

II. Identify the location of any ORR facility that has had any individual, whether minor or staff member, test positive for COVID-19, and provide a status report and census of those infected at that facility during the reporting period.

Under the Juvenile Coordinator, the workgroup sent questionnaires to the ORR network with specific questions regarding the census of minors who tested positive for COVID-19. Additionally, follow up questions were sent to address the status of those infected to determine whether any minors or staff remained in isolation, quarantine or had been medically cleared.

Figure 5 below provides the census data for positive COVID-19 cases of minors throughout the shelter network.

*Figure 5: Positive COVID-19 Minors Census Data[5]*

| Location and Facility Type | Bed Capacity as of June 7, 2020 | Census as of June 7, 2020 | Positive COVID-19 Minors | Medically Cleared Minors |
|---|---|---|---|---|
| Illinois (Shelter) | 250 | 13 | 11 | 11 |
| Pennsylvania (Shelter) | 112 | 8 | 1 | 1 |
| New York (Shelter) | 24 | 3 | 2 | 2 |
| New York (Staff Secure) | 157 | 31 | 1 | 1 |
| New York (RTC) | 18 | 5 | 1 | 1 |
| New York (Shelter) | 56 | 1 | 1 | 1 |

---

[4] Figure 4 is the number of minors with home study delays due to, or related to COVID-19 along with the additional explanation for each minor.
[5] Figure 5 is a result of the data gathered by the workgroup as it pertains to positive COVID-19 cases of minors throughout the shelter network. This information reflects the status as of June 7, 2020.

Although ORR cannot require that staff disclose their private medical information as it relates to COVID-19, some staff voluntarily report this information. ORR was notified of 162 staff with positive COVID-19 test results as of June 1, 2020. Staff with suspected exposure to or positive COVID-19 test results are required to quarantine for at least 14 days. They are also not allowed to have any contact with minors or other staff at the shelters until their quarantine has ended.

### Status of Minors Infected

█████████████████████████████████████, IL)

- **Minors Infected**: There were 11 minors who tested positive for COVID-19, and all minors were cleared from quarantine. This is not currently delaying their release.

█████████████, PA)

- **Minors Infected**: There was one minor who previously tested positive for COVID-19, and this minor was cleared from quarantine. This is not currently delaying the minor's release.

█████████████████████, NY)

- **Minors Infected:** There was one minor who tested positive for COVID-19, and this minor was cleared from quarantine. This is not currently delaying the minor's release.

█████████████████████████, NY)

- **Minors Infected:** There was one minor who tested positive for COVID-19, and this minor was cleared from quarantine. This is not currently delaying the minor's release.

█████████████████████████, NY)

- **Minors Infected:** There were two minors who tested positive for COVID-19, and both minors were cleared from quarantine. This is not currently delaying their release.

████████████████, NY)

- **Minors Infected:** There was one minor who tested positive for COVID-19, and this minor was cleared from quarantine. This is not currently delaying the minor's release.



III. With respect to minors placed at congregate facilities in which either a minor or staff member has tested positive for COVID-19, identify the specific reason the minors located there have not been released or transferred to a non-congregate setting.

For all the ORR network, transfers out of congregate care were not pursued due to the risk of potentially spreading or catching COVID-19 during the transfer process.  The current low occupancy at all congregate shelters (540 occupied beds out of 10,707 congregate beds) allows for social distancing and provides a pool of staff available to care for the minors.  ORR issued field guidance dated April 6, 2020 with regard to COVID-19 discharge guidance (attached in previous Juvenile Coordinator Report).  ORR's policies require the release of minors to sponsors in a manner that promotes public safety, which includes concerns related to public health. The field guidance and ORR Policy Guide Section 3.4.8 Medical Clearance Prior to Release and Transfer, states:

*"Unaccompanied alien children who have serious physical or mental health issues or have had exposure to a communicable disease may not be transferred or moved until they have been medically cleared by a physician or ORR is consulted….*

*Children who are infectious with communicable diseases of public health concern, which have potential to cause outbreaks, will not be released from ORR care until they are non-infectious."*

IV. Describe any policies and/or practices aimed at identifying and protecting minors who are at heightened risk of serious illness or death should they contract COVID-19.

Each facility has a unique process for staffing medical care for the individualized needs of the minors in care.  Some directly hire licensed independent practitioners (e.g., pediatricians, family medicine physicians, pediatric nurse practitioners, registered nurses) who operate in clinics physically located at the facility, and some contract with community healthcare providers who either visit the facility or evaluate the minors in their clinics.  Each care provider has an established network of healthcare providers, including specialists, emergency care services, mental health practitioners, and dental providers. Care providers are required to maintain state licensing and adhere to licensing requirements, including staffing requirements.

Each child in ORR care has an initial intake assessment within 24 hours of the minor's admission to a care provider facility, to obtain information about the minor, including whether there are any immediate medical and mental health concerns.  Minors who are ill on arrival will receive prompt attention and medical care.

Each minor also receives an initial medical examination (IME) by a licensed primary care provider (e.g., physician, physician assistant, or nurse practitioner) within two business days of arrival.  The IME is based on a well-child examination, adapted for the unaccompanied children population with consideration of screening recommendations from the American Academy of Pediatrics, the Centers for Disease Control and Prevention (CDC), and the U.S. Preventive Services Task Force (USPSTF).

The purposes of the IME are to assess general health, administer vaccinations in keeping with U.S. standards, identify health conditions that require further attention, and detect contagious diseases, such as influenza or tuberculosis. If a vaccination record is not located or a minor is not up-to-date, the minor receives all vaccinations recommended by the Advisory Committee on Immunization Practices (ACIP) catch-up schedule and approved by CDC, including seasonal influenza vaccine.

There were no minors who tested positive for COVID-19 at any shelter who were at heightened risk of serious illness or death. Division of Health for Unaccompanied Children (DHUC) and ORR care providers routinely track and discuss children with existing medical conditions, including children with conditions that put them at increased risk of infection or could result in possible medical complications if infected. As part of these discussions, facilities caring for children with complex medical needs have been directed to do the following:

- Maintain close contact with general and specialty medical providers of children with complex medical needs, and identify plans for continued care (e.g. utilization of telehealth services) in the event of office closures and other barriers to care during the pandemic.

- Create a safety plan for when a child might require in-person medical evaluation, such as in an outpatient clinic or at an emergency room.

- Ensure children have an adequate and ongoing supply of prescription medications.

- Continue to follow recommendations about infection prevention, including for respiratory diseases such as influenza and COVID-19, from medical providers overseeing the care of children with complex health needs.

V. **Explain whether the medical professionals at ORR are making expeditious individual assessments about a Class Member's eligibility for release when a Class Member has been exposed to COVID-19 or has a sponsor whose household has a confirmed case of COVID-19, and provide the average time in which such individual assessments take place during the reporting period.**

Figure 6 below provides information on minors quarantined due to possible exposure to COVID-19, and the number of days they have been quarantined. Additionally, quarantine recommendations for minors who have been exposed to a confirmed COVID-19 case are made in collaboration with the local public health authority. Currently, there no children in medical isolation and there have been no hospitalizations of minors due to COVID-19.

*Figure 6: DHUC Quarantine Data as of June 1, 2020[6]*

| Program Name | # of Minors Quarantined | # of Days Quarantined |
|---|---|---|
| ▮▮▮▮▮ (Shelter) | 11 | 4 |
| ▮▮▮▮▮ (Shelter) | 6 | 3 |

One of the minors quarantined at ▮▮▮▮▮ was approved for release just before the exposure to COVID-19 was discovered. The minor entered quarantine in accordance with CDC guidance and is expected to be released if medically cleared on June 12, 2020.

DHUC provides consultation on delays of reunification and works with the FFS and the program to make decisions about delaying releases when a member of the sponsor's household has been diagnosed with COVID-19. Per the ORR field guidance, responsibility for documentation of these delays rests with the program, and DHUC does not independently track each case where consultation was provided. However, delaying release for this reason is uncommon, and DHUC has identified the following (2) occurrences between the last report and June 1, 2020:

1. DHUC was notified on May 19, 2020 that a sponsor arrived to pick up the minor and reported a headache, cough, and sore throat that had started on May 18, 2020. The sponsor did not pass the building entrance COVID-19 screening process because of these symptoms. The program consulted with DHUC, and it was determined that discharge should be delayed until the sponsor was confirmed to be clear of COVID-19.

   The sponsor was tested on May 22, 2020, but as of June 1, 2020 had not yet received results. The sponsor also reported that the household had two other members. As of June 1, 2020, the sponsor had met criteria for discontinuation of medical isolation for COVID-19 (defined as: at least 3 days (72 hours) have passed since recovery defined as resolution of fever without the use of fever-reducing medications and improvement in respiratory symptoms (e.g., cough, shortness of breath); and, at least 10 days have passed since symptoms first appeared). After discussion between the program, the sponsor, and DHUC, DHUC recommended that reunification should proceed despite the outstanding COVID-19 test result. The sponsor agreed to ensure that the child would be socially distanced from the other household members until the household was confirmed to be clear of COVID-19.

2. On May 27, 2020, DHUC was notified that the sponsor for this minor tested positive for COVID-19. Discharge was delayed until the sponsor's household was determined to be free of COVID-19 (once everyone in the household cleared 14 days of quarantine from the most recent exposure to COVID-19). Discharge is expected to occur on June 9, 2020.

---

[6] The data in this table was provided by the Division of Health for Unaccompanied Children (DHUC). This information reflects the status of minors remaining in isolation or quarantine as of June 1, 2020.

VI. Explain whether ORR is making individualized assessments regarding its ability to release minors subject to removal orders under the MPP, including census data and reasons for non-release.

From May 15, 2020 to June 1, 2020, ORR discharged a total of 17 minors with MPP cases. As of June 1, 2020, there remained 36 MPP minors in ORR custody who are still going through the reunification process.

## Summary

The undersigned respectfully submits this report to the Court pursuant to the Court Orders dated April 24, 2020 and May 22, 2020.  The undersigned will continue to work independently and with the Special Master, and file interim written reports per the Court's directive to monitor facilities to assure adherence to CDC-compliant and ORR guidelines are maintained.

ATTACHMENT A

**Home Study /Post-Release Services COVID-19 Practice Guidance**

Many states have imposed restrictions on movement or shelter-in-place orders for residents due to the COVID-19 pandemic.  In response, some state child welfare agencies have issued new guidance on home studies and post-placement visits in the domestic context. It is the Office of Refugee Resettlement's (ORR) responsibility to make sure unaccompanied alien children (UAC) are released to a safe and healthy environment with a sponsor who can meet their needs.  It is also important that home study and post-release services (PRS) staff feel safe and supported at this time. Therefore, ORR is providing the following guidance:

Home Studies

ORR home study providers are to follow their respective state's official guidance on conducting domestic home studies, until further notice from ORR. For example, if a state has ordered that foster care social workers must conduct the home visit portion of the home study virtually through the use of videoconferencing technology, then ORR Home Study (HS) providers in that state will follow the same official guidelines.

If no official state guidance has been issued on conducting home studies during the COVID-19 pandemic or if states require that the home visit portion of the home study be conducted in-person, ORR HS providers can seek a waiver on in-person home visits for home studies through their designated Federal Field Specialist (FFS). The FFS will decide, on a case-by-case basis, if a virtual home study may be conducted in lieu of an in-person one.

The FFS will weigh the reason for the home study (e.g., the child has been a victim of sexual abuse versus the child has a disability as defined by the Americans with Disabilities Act) with the potential health risks of conducting an in-person visit.  The FFS may decide that an in-person home study is required, depending on the circumstances of the child and potential sponsor (e.g., to corroborate information gathered during the sponsor assessment process). The FFS must make a determination on the format of the home visit within one business day.

Home study reports must still be submitted within 10 business days of the receipt of the home study referral and should document the format in which the home study was conducted.

Post Release Services (PRS)

ORR post-release providers may offer PRS virtually during the COVID-19 pandemic until further guidance from ORR. This includes conducting assessments, assessing for safety, and referring and connecting children to services in the community. Providers should continue to check in on the released child and sponsor individually at every contact, as possible, following best practices.

COVID-19 presents a unique set of economic and health-related issues for sponsor families, many of whom may not be eligible for any government assistance due to their legal status. PRS providers may request extensions for 30 days at a time from their ORR PRS Project Officers for continuation of services,

based on the circumstances and needs of each sponsor family. ORR PRS Project Officers must make a determination for these requests within three business days. The determination is based on the released child and sponsor's access to services that meet their needs, including, but not limited to, medical care, food security, education, and other special circumstances.