# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY LISETTE FLORES, *et. al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> WILLIAM BARR, Attorney General of the ) <br> United States, *et al.*, ) <br> ) <br> Defendants. ) <br> _____ ) | Case No.: CV 85-4544-DMG |

## JUNE 2020 INTERIM REPORT
## OF JUVENILE COORDINATOR DEANE DOUGHERTY
## SUBMITTED BY IMMIGRATION AND CUSTOMS ENFORCEMENT

As required by the Court in its orders issued on April 24 and May 22, 2020, U.S. Immigration and Customs Enforcement (ICE) Juvenile Coordinator Deane Dougherty is submitting the following interim report describing ICE's efforts to make and record expedited, specific, and individualized custody determinations and redeterminations of Class Members at ICE's Family Residential Centers (FRCs) and providing an updated census of those Class Members remaining at the FRCs longer than 20 days. In addition, this report provides an update on the status of implementation of COVID-19 guidances, to include the description of any new or modified policies and/or practices designed to identify and protect minors who are at a heightened risk of serious illness or death should they contract COVID-19.

Due to the constantly evolving nature of the COVID-19 crisis, and the frequency of custody and discharge determinations, the information in this report is current and accurate as of the time of signature, or for the reported data, as of the date or time noted in conjunction with the information provided.

I. **Making and Recording Individualized Custody (Re)determinations and Census of Minors at FRCs**

In section 1(b) of the Court's May 22, 2020 Order, ICE was directed to provide "*specific* explanations for the continued detention of each minor detained at an FRC beyond 20 days" and review each explanation with the Special Monitor, Ms. Ordin. In consultation with Ms. Ordin, ICE first determined the proper course of action in order to comply with the Court's Order and then, in accordance with the agreed-upon course of action, approved by Ms. Ordin, conducted a "paper audit" of the identified cases to determine whether release or continued detention is appropriate. Using the information available in the physical file and/or electronic databases, and without re-interviewing any Class Member or accompanying parent or legal guardian, officers completed a worksheet, the draft of which was previewed by Ms. Ordin, detailing their individualized parole assessment, including biographical and case history information for each minor, as well as, describing in narrative form, how the parole criteria set forth in § 212(d)(5) (urgent humanitarian reasons or significant public benefit) of the Immigration and Nationality Act (INA), 8 C.F.R. § 212.5(b) (also requiring that alien be "neither a security risk nor risk of absconding"), and paragraph 14 of the *Flores* Settlement Agreement (FSA) (assessing whether detention is required to secure the minor's timely appearance before ICE or the immigration court, or to ensure the minor's safety or that of others) was applied in each case. Officers were reminded that the FSA creates a presumption of releasing Class Members and that parole should not be denied to a minor based solely on the existence of a final order of removal.

As of Monday, June 8, 2020, there are a total of 124 Class Members at ICE FRCs. The figures below breakdown these Class Members by age and country of origin.





Pursuant to the reporting requirements of subsection 4(b)(i) of section IV of the Court's April 24, 2020, Order and section 1(b) of the Court's May 22, 2020, Order, the census of minors remaining in custody at FRCs longer than 20 days as of June 8, 2020, and the specific explanations therefore, are attached as Exhibit A and Exhibit B,[1] respectively, and further

---

[1] Please note that the specific explanations for continued detention of Class Members beyond 20 days found in Exhibit B are based on the number of Class Members housed at the FRCs at the time the May 2020 Interim Report was submitted. There were 132 Class Members detained at an FRC over 20 days at the time and are 132 specific, written explanations set forth in Exhibit B.

3

summarized in this report. The narratives containing the specific explanations for continued detention were submitted to Ms. Ordin in advance of this filing, and Ms. Ordin and I reviewed and discussed those explanations over the course of several days and several phone calls.

### A. The Parole Process

It is important to note a couple of things about the *Flores* parole process. First, in accordance with the United States Court of Appeals for the Ninth Circuit's 2016 decision, the FSA only governs parole determinations for Class Members in ICE custody. *Flores v. Lynch*, 828 F.3d. 898, 908-09 (9th Cir. 2016). Under the FSA, Class Members only include the minors in DHS custody, but not the accompanying parent(s) and/or legal guardian(s). Consistent with this Court's June 27, 2017 order, the decision to release a Class Member is governed by: INA § 212(d)(5), which requires, among other things, a finding of urgent humanitarian reasons or significant public benefit; 8 C.F.R. § 212.5(b), which requires that the minor be "neither a security risk nor risk of absconding;" and, paragraph 14 of the FSA, which requires assessing whether detention is required to secure the minor's timely appearance before ICE or the immigration court, or to ensure the minor's safety or that of others. *See* Order, ECF No. 363, at 22-27. However, whether an accompanying parent or legal guardian is eligible for release from custody is governed by other statutes and regulations with different standards and relevant factors depending on the procedural posture of the case. *See, e.g.,* INA §§ 235(b)(1) (custody pending expedited removal and the credible fear process), 236(a) (conditional release pending section 240 removal proceedings), 241(a) (release on an order of supervision).

Second, when ICE officers interview the family to determine a Class Member's eligibility for release on parole, typically the whole family unit is present for the interview.

However, the questions are primarily directed to the accompanying parent or legal guardian who provides answers on behalf of the minor child.

Finally, as stated in prior reports submitted to this Court, ICE has been making continuous efforts to release Class Members under applicable standards throughout the course of this litigation and, where there are no impediments to removal, those that are subject to final orders of removal are repatriated in accordance with the law. The following graph portrays the book-outs by the FRCs from March 15 to June 8, 2020.



### B. The current population of Class Members at the FRCs

The typical population generally housed in the FRCs are: (1) booked in-and-out of custody within approximately 20 days, (2) released into the community to pursue removal proceedings under section 240 of the INA, or (3) removed pursuant to a final order of expedited removal under section 235 of the INA. However, the 124 Class Members currently detained at the FRCs are different from the usual population because of the implementation of the Migrant Protection Protocols, a program that directs aliens awaiting their immigration proceedings to wait in Mexico, the decrease in U.S. Customs and Border Protection new referrals from the

southern border, and ICE ERO's modified enforcement guidelines due to the pandemic, which have all resulted in a small, limited number of new intakes into the FRCs.

A majority of the Class Members currently housed in FRCs have been ordered removed under section 235 of the INA (expedited removal) and were found not to have a credible fear of persecution or torture by U.S. Citizenship and Immigration Services (USCIS). Those findings were subsequently affirmed by immigration judges, thereby exhausting the Class Members' administrative immigration processes.

However, during efforts to remove these Class Members and their families pursuant to their expedited removal orders, on September 16, 2019, a lawsuit was filed by approximately 125 alien plaintiffs, comprised of parents and children detained at the South Texas Family Residential Center (STFRC), challenging numerous aspects of the credible fear process as implemented by USCIS. *M.M.V. v. Barr*, Case No. 19-2773 (D.D.C. filed September 16, 2019), *appeal docketed*, No. 20-5129 (D.C. Cir. filed May 11, 2020). On September 25, 2019, Plaintiffs filed a request for a Temporary Restraining Order (TRO), seeking a stay of removal, and a magistrate ordered a temporary stay of removal of the named Plaintiffs while the matter was reassigned to another judge. On October 17, 2019, Plaintiffs filed an amended complaint adding 33 additional plaintiffs, and the Court granted an administrative stay of removal to those 33 new Plaintiffs.

On December 5, 2019, Plaintiffs filed a motion for leave to file a Second Amended Complaint and added an additional 114 alien plaintiffs. The Court extended the imposed administrative stay to include these newly added Plaintiffs. During the ensuing proceedings, the administrative stay of removal remained in effect, and on March 25, 2020, Plaintiffs filed a motion adding an additional alien family to the lawsuit and, without a hearing, the Court granted

an administrative stay of removal for these Plaintiffs, as well. On April 6, 2020, Plaintiffs added 10 more new alien plaintiffs to the lawsuit; and, on April 14, 2020, Plaintiffs added another 25 alien plaintiffs who were scheduled for removal; all additional Plaintiffs were included in the administrative stay.

On April 27, 2020, the district court dismissed all but one of the challenged actions from the complaint for lack of jurisdiction, and dismissed 252 Plaintiffs from the complaint, leaving only 18 subject to the administrative stay. ICE removed two alien plaintiffs after the stay was lifted and removal flights were scheduled for the remaining former plaintiffs; however, Plaintiffs immediately filed a Notice of Appeal. On April 28, 2020, the district court granted Plaintiffs' motion to extend the administrative stay which stayed the removal of all former and remaining Plaintiffs, totaling 268. While the district court later denied Plaintiffs' request for another stay on May 1, 2020, the U.S. Court of Appeals for the District of Columbia issued another administrative stay for all Plaintiffs pending further order by the Court. This stay was dissolved by the Court on May 15, 2020, at which time the former Plaintiffs in *M.M.V.* immediately filed a separate suit seeking another TRO preventing removal. *D.A.M. v. Barr*, Case No. 20-01321 (D.D.C. filed May 18, 2020). In *D.A.M.*, the Plaintiffs are challenging ICE's removal practices during the COVID-19 pandemic. The stay in *D.A.M.* remains in effect, and oral argument is tentatively scheduled for September 2020.



Therefore, as a result of litigation actions taken by counsel representing these families, some of whom remain in ICE FRCs pending their removal, an administrative stay has been in effect for a significant portion of the current FRC population, 58% according to the graph above, and applicable to some Class Members since September 25, 2019. While the administrative stays in *M.M.V.* and *D.A.M.* were, and are, in effect, ICE released from FRCs many named plaintiffs in those cases who met the *Flores* or adult parole requirements, or other criteria set forth in separate legal actions. The affected Class Members who remain at the FRCs have not met those standards for release and are subject to an administrative stay issued by a federal court, so they cannot be removed. While this particular situation is unique, making the current population in the FRCs unusual, the procedural posture and circumstances for these individual cases and the bases for their continued detention are very similar.

The following chart, a snapshot of the 124 Class Members at an FRC as of June 8, 2020, grouped by case status, depicts the homogeneity of the current population.



As illustrated, 110 Class Members are subject to an expedited removal order and were found not to have a credible fear of persecution or torture following an interview by an asylum officer and, if requested, a hearing before an immigration judge. At this time, these individuals were found ineligible for relief from removal and have exhausted their administrative immigration process. A significant portion of these Class Members are subject to administrative stays as mentioned above or issued by other judicial bodies. Others are being scheduled for removal on the next available flight to their country of origin. They were, however, determined to be flight risks and/or the parent or legal guardian has not designated a caregiver for the Class Member.

Seven Class Members are subject to expedited removal orders but remain in the credible fear process, whether pending an interview or decision by USCIS or pending a credible fear review hearing by an immigration judge. They have not yet exhausted their administrative review process but, at this time, have been found to be flight risks, and it was determined that the minors' presence is required to complete the process. Moreover, the parents have not designated a caregiver to whom ICE could consider releasing the Class Member. Whether these Class

Members should be released from custody will be reassessed once they complete the credible fear process.

Six Class Members are subject to final orders of removal following the completion of section 240 removal proceedings before an immigration judge. Some of the removal orders entered in these cases were based on the Class Member and his or her family's failure to appear at their scheduled immigration hearing. Some Class Members are pending decisions on motions to reopen before the immigration judge, and ICE is closely monitoring the docket for decisions in those cases and will reevaluate whether parole is appropriate based on the orders entered. In cases where motions to reopen are not pending, ICE is in the process of scheduling these removals and expects to do so soon, barring the emergence of subsequent impediments to removals.

One Class Member is currently pending section 240 removal proceedings before an immigration judge. A review of this Class Member's case revealed that the negative credible fear finding by USCIS was vacated by an immigration judge, thereby causing USCIS to issue a Notice to Appear and place the Class Member is section 240 removal proceedings. This Class Member has since been released from the FRC.

**II. Status of ICE's Implementation of COVID-19 Guidances**

I have confirmed that the measures described in the declarations and the Juvenile Coordinator's report, previously submitted to this Court, pertaining to the operational changes the FRCs have implemented to mitigate the introduction into, and spread of COVID-19, are still in effect.

I have also reviewed the declarations submitted by Plaintiffs on the eve of the last hearing, held on May 22, 2020, and directed the Juvenile and Family Residential Management

Unit (JFRMU), a unit under my supervision, to work with the staff at the FRCs to investigate and report to me as to Plaintiffs' allegations of unsafe and crowded conditions, notwithstanding the significant population reduction and multitude of safety measures implemented during the pandemic. In fact, only 9% of the total beds at the FRCs are currently in use, as shown in the chart below.

| Family Residential Center Occupancy 6/8/2020 | | | | | |
|---|---|---|---|---|---|
| Facility | Total # of Beds | # of Beds Occupied | % of Beds Occupied | # of Beds Not Occupied | % of Beds Not Occupied |
| Berks Family Residential Center | 96 | 13 | 14% | 83 | 86% |
| Karnes County Residential Center | 830 | 114 | 14% | 716 | 86% |
| South Texas Family Residential Center | 2,400 | 171 | 7% | 2,229 | 93% |
| Total | 3,326 | 298 | 9% | 3,028 | 91% |

The following is a summary of what has been reported to me, noting that conversations concerning Plaintiffs' allegations of deficient medical care at the FRCs will be addressed with Ms. Ordin and Dr. Wise, as referenced in a separate section below, and reported separately.

    A. **Karnes County Family Residential Center (KCFRC)** (Docket No. 796, Ex. C)

        i. **Allegation(s): Fathers in two-parent family units are separated from the family and must share a room with one or more individual(s) from other families**

Women and children, and men with children, are housed based on ICE's Family Residential Standards. The father of a two-parent family unit does not share a suite with his family at night for sleeping purposes, however, the families comingles during waking hours.

        ii. **Allegation(s): Education about COVID-19 and use of Personal Protective Equipment (PPE) (masks) provided at intake consists only of a written pamphlet and the only other education is posted signage in English and Spanish (not Haitian Creole)**

During orientation, case managers, along with providing the mask (including pediatric masks for children two years of age and older), educate the parents and/or legal guardians on the U.S. Center for Disease Control and Prevention (CDC) guidelines on the proper procedures of

11

wearing masks and provide an informational flier in their language. New masks are available and are provided upon request, which are again accompanied by instructions on how to use the mask.

      iii. **Allegation(s): Cleaning only happens twice per day; residents are charged for bar soap or must use soap provided at handwashing stations to bathe; and hand sanitizer is not available**

Contrary to allegations made in the declaration, hand sanitizer continues to be available to residents at desks, dining halls, and other common areas. Moreover, shampoo and body soap are provided to all residents and meet the required specifications for bathing and handwashing.

      iv. **Allegation(s): Staff does not wear masks or gloves when interacting with residents; RAICES staff have observed GEO guards not wearing masks or gloves while conducting visitation electronically and by phone; cleaning is minimal; cleaning supplies are not readily accessible and must be requested**

The use of masks and gloves by staff is required when interacting with the residents. As it pertains to cleaning supplies, residents must ask the staff for access to certain cleaning supplies. This is because, for the safety of residents, primarily the children housed at the FRCs, cleaning supplies are stored in a secure area when not in use. The KCFRC makes these supplies available daily during regularly scheduled times or upon request. In addition to residents cleaning their own living space, residents who participate in the voluntary work program as cleaners are only assigned to clean the facility twice a day. However, KCFRC staff complete cleaning and sanitizing throughout the day focusing on high touch areas including, but not limited to, railings, door handles, phones, picnic tables, benches, and children's play equipment. A KCFRC cleaning crew is also assigned to complete a thorough sanitation of each room once it becomes vacant.

      v. **Allegation(s): Social distancing is not promoted in general population**

The KCFRC has continued to promote social distancing among residents and staff alike. For instance, although KCFRC did not close any of its parks, social distancing is enforced during

recreational activities by redirecting residents if they are found gathering in groups of ten (10) or more, per CDC guidelines. All recreational areas are sanitized after each use to include equipment, benches, tables, and chairs. Activities that require many participants have been suspended in order to minimize the spread of COVID-19.

### B. South Texas Family Residential Center (STFRC) (Docket No. 796, Exh. B)

**i. Allegation(s): Inadequate and substandard cleaning and infection prevention mechanisms persist; residents are denied disinfectant sprays/wipes; dining hall staff does not wear gloves; residents, rather than a professional cleaning staff, must facilitate all cleaning**

The STFRC confirmed that cleaning supplies, including disinfectant sprays and wipes, are available to residents for use in their dorms. Because these cleaning products contain chemicals that must be stored safely out of the reach of young children, the items are provided to residents upon request. The cleaning of the dorms, dayrooms, showers, bathrooms, and all other common areas, is done by a contract cleaning service and unit managers from STFRC. Servers in the dining facility are required to wear masks, gloves, hairnets, and other required food service PPE.

**ii. Allegation(s): Hand sanitizer has been replaced by hand soap, which requires the use of water which is not easily accessible; hand sanitizer dispensers in the dining hall are unused**

All hand sanitizer pumps throughout the facility, to include the dining facility, are filled with foam hand sanitizer, not soap. The hand sanitizer pumps are checked and serviced before and after every meal service.

**iii. Allegation(s): Conditions remain unsafe and unsanitary**

With respect to PPE, the STFRC advised that its residents are issued two cloth masks and may request additional surgical grade masks at any time. The mask making program referenced in Attorney Fluharty's declaration is part of the voluntary work program, whereby adult residents

13

may volunteer to make masks for themselves and other residents. Masks made by resident volunteers do not serve to replace facility-issued PPE. Rather, these masks provide an opportunity for residents to supplement their facility-issued supply, should they desire to do so. Additionally, gloves are used by ICE officers and facility staff during service of documents which may require the sharing of both paperwork and writing utensils. Gloves are also used by staff when cleaning common areas or working in places with frequent touching of shared surfaces. Servers in the dining facility are required to wear masks, gloves, hairnets, and other required food service PPE.

### iv. Allegation(s): Social distancing is impossible

The STFRC takes social distancing recommendations seriously. In an effort to provide families with their own housing suite, and to decrease the number of residents sharing common areas, some families have been moved to new dorms. In the dining facilities, as mentioned in prior declarations, the tables are staggered more than six feet apart. Tables sit *up to* eight individuals, which is less than the CDC standard of groups of less than 10 people. Nevertheless, residents have the option to decide with whom they dine, if anyone. With the current population, each family is able to dine at its own table. Similarly, the STFRC has three gyms, that are used by residents for recreation, wherein masks are required, and hand sanitizer pumps are available. Two gyms have eleven small four-person tables, which are greater than six feet apart to allow social distancing. The third gym has four small four-person tables set up for arts and crafts. Resident supervisors promote and encourage social distancing and monitor the number of residents in the gym, at any given time.

These, and other social distancing measures and COVID-19 guidances described in previously submitted declarations, are regularly discussed with residents at the STFRC. On a

weekly basis, case managers have individual conversations with residents to discuss the importance of wearing PPE, proper use of PPE, signs and symptoms of COVID-19, and how residents may seek medical care. These individual meetings are in addition to the multi-lingual informational posters placed throughout the facility and the CDC informational video that plays on a constant loop on screens throughout the facility.

### C. Berks Family Residential Center (BFRC) (Docket No. 796, Exh. A)

#### i. Allegation(s): Despite the lower census, families continue to report they cannot socially distance in BFRC due to its nature as a congregate care facility

The BFRC has approximately 58,995 square feet of communal area for its current thirteen (13) residents, thereby allowing ample space for movement around the facility, while also allowing for social distancing. The BFRC also has ten (10) acres of outdoor space available to residents. Each family, comprised of a parent or legal guardian and their accompanying child(ren), are housed in their own rooms, which are, on average, approximately 430 square feet. Social distancing is also promoted during mealtimes, where families are now individually called to the cafeteria at staggered intervals in order to avoid congregation of multiple families and are assigned to tables spaced at least six feet apart.

#### ii. Allegation(s): Residents are provided 1 mask per person every 8 days

While it is true that each resident at the BFRC has been provided one disposable surgical face mask once a week beginning April 8, 2020, new surgical face masks are available and provided at any time, upon request. Residents have also been provided with washable cloth masks, in addition to masks donated by the local community and legal representatives. Current CDC guidelines state that children under age 2 should not utilize face coverings. Nevertheless,

15

masks have been provided, and remain available, to parents and legal guardians for use by their children.

### iii. Allegation(s): Employees do not use gloves unless serving food or cleaning, and families are only provided gloves when they clean

The BFRC confirmed that residents are provided gloves when they clean, and if they leave the facility for outside medical care, inasmuch as the CDC recommends wearing gloves when one is (1) cleaning or (2) caring for someone who is sick. Furthermore, residents may request disposable gloves, at any time. The BFRC staff utilize masks, gloves, and hairnets while serving food, and masks and gloves while cleaning. The distribution of PPE is in addition to the hand sanitizer stations, bottles of hand sanitizer, containers of hand sanitizing wipes, and Clorox spray bottles, dispersed throughout the facility for use by residents and staff alike. Moreover, residents have access to soap in their private and communal bathrooms. Supplies are checked weekly and replenished as needed. The BFRC is currently stocked with reserve hand sanitizer and wipes.

### iv. Allegation(s): Children at the BFRC have been suffering from some type of "virus"

With respect to the allegations that children at the BFRC are suffering from some type of "virus" that resulted in bumps and sores around their mouths and difficulty eating, the BFRC advised that these issues were resolved in April through medical treatment and residents were educated on best practices for cleaning and sharing items. The issue was the result of stomatitis caused by parents sharing sippy cups with their children without proper care/cleaning.

### III.  Report of ICE Facilities Holding Minors and Number of COVID-19 Cases

As of Tuesday, June 9, 2020, no residents or staff members have tested positive for COVID-19 at any of the three ICE FRCs. As of Tuesday, June 9, 2020, no residents or staff

members have tested positive for COVID-19 at the two secure juvenile facilities housing minors under paragraph 21A of the FSA, NORCOR Juvenile Detention Center and Cowlitz County Juvenile Detention Center. One non-ICE detainee at NORCOR Juvenile Detention Center presented with a symptom of COVID-19 was immediately moved to quarantine and tested by the local health department. On June 8, 2020, ICE was advised that the results of that test were negative.

### IV. Additional Policies and Practices Aimed at Identifying and Protecting Minors from COVID-19

Pursuant to section 4 of the Court's May 22, 2020, Order, I can confirm that I facilitated, and participated in, multiple calls with, among others, Dr. Paul Wise; Ms. Ordin; Dr. Ada Rivera, Deputy Assistant Director of Clinical Services, ICE Health Services Corp (IHSC); and, Dr. Stewart Smith, Assistant Director, IHSC, in which Dr. Wise and Ms. Ordin were provided information, relevant to their questions and requests, regarding the baseline of custodial medical care, health care protocols, and COVID-19 prevention practices at the FRCs, as well as, protocols for identifying minors with medical conditions making them more vulnerable to COVID-19, and enhanced testing capabilities. In addition, upon Dr. Wise's request, ICE agreed to provide him access to parents detained at the FRCs.

As Juvenile Coordinator I will continue to monitor any guidance and developments related to the COVID-19 to ensure the latest practices are implemented at facilities.

Signed on this 10th day of June 2020

Deane Dougherty
Juvenile Coordinator

# EXHIBIT A

| DETLOC | Alien File Number | Family Name | Given Name | Citizenship Country Code | Book In Date | Birth Date | Age | Age category | Final Order Date | Case Status | Parole Granted (Y/N) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | CHILE | 3/18/2020 | | 2.8 | 0-5 years old | 4/8/2020 | ER-completed the immigration process | No |
| | | | | CHILE | 3/18/2020 | | 1.6 | 0-5 years old | 4/8/2020 | ER-completed the immigration process | No |
| | | | | MEXIC | 3/18/2020 | | 1.4 | 0-5 years old | 4/8/2020 | ER-completed the immigration process | No |
| | | | | CHILE | 3/11/2020 | | 3.6 | 0-5 years old | 3/24/2020 | ER-completed the immigration process | No |
| | | | | HAITI | 3/11/2020 | | 11.2 | 6-13 years old | 3/24/2020 | ER-completed the immigration process | No |
| | | | | ECUAD | 3/15/2020 | | 5.1 | 0-5 years old | | ER-completed the immigration process | No |
| | | | | INDIA | 2/24/2020 | | 7.0 | 6-13 years old | 4/8/2020 | ER-completed the immigration process | No |
| | | | | CHILE | 2/24/2020 | | 1.9 | 0-5 years old | | ER-completed the immigration process | No |
| | | | | BRAZI | 2/24/2020 | | 3.1 | 0-5 years old | 2/22/2020 | ER-currently going through CF process/IJ review of CF | No |
| | | | | HAITI | 2/21/2020 | | 7.4 | 6-13 years old | | ER-completed the immigration process | No |
| | | | | HAITI | 2/21/2020 | | 3.8 | 0-5 years old | | ER-completed the immigration process | No |
| | | | | HAITI | 2/27/2020 | | 1.6 | 0-5 years old | | ER-completed the immigration process | No |
| | | | | BRAZI | 3/12/2020 | | 2.3 | 0-5 years old | | ER-completed the immigration process | No |
| | | | | NICAR | 3/27/2020 | | 7.0 | 6-13 years old | 9/26/2019 | Final order from 240 proceedings | No |
| | | | | HONDU | 2/12/2020 | | 5.3 | 0-5 years old | 1/22/2020 | Final order from 240 proceedings | No |
| | | | | INDIA | 2/24/2020 | | 7.9 | 6-13 years old | 4/16/2020 | ER-completed the immigration process | No |
| | | | | INDIA | 2/24/2020 | | 3.9 | 0-5 years old | 4/16/2020 | ER-completed the immigration process | No |
| | | | | INDIA | 3/5/2020 | | 2.9 | 0-5 years old | | ER-currently going through CF process/IJ review of CF | No |
| | | | | INDIA | 3/10/2020 | | 1.7 | 0-5 years old | 4/15/2020 | ER-completed the immigration process | No |
| | | | | INDIA | 3/10/2020 | | 5.2 | 0-5 years old | 4/15/2020 | ER-completed the immigration process | No |
| | | | | MEXIC | 3/9/2020 | | 1.9 | 0-5 years old | | ER-currently going through CF process/IJ review of CF | No |
| | | | | INDIA | 3/26/2020 | | 16.1 | 14-17 years old | 4/15/2020 | ER-completed the immigration process | No |
| | | | | INDIA | 3/26/2020 | | 13.1 | 6-13 years old | 4/15/2020 | ER-completed the immigration process | No |
| | | | | INDIA | 3/26/2020 | | 9.7 | 6-13 years old | 4/24/2020 | ER-completed the immigration process | No |
| | | | | INDIA | 3/26/2020 | | 11.5 | 6-13 years old | | ER-currently going through CF process/IJ review of CF | No |
| | | | | INDIA | 3/26/2020 | | 1.9 | 0-5 years old | 4/17/2020 | ER-completed the immigration process | No |
| | | | | INDIA | 3/26/2020 | | 0.4 | 0-5 years old | 4/22/2020 | ER-completed the immigration process | No |
| | | | | MEXIC | 3/15/2020 | | 1.1 | 0-5 years old | | ER-currently going through CF process/IJ review of CF | No |
| | | | | URUGU | 2/28/2020 | | 1.9 | 0-5 years old | | ER-currently going through CF process/IJ review of CF | No |
| | | | | INDIA | 4/11/2020 | | 10.7 | 6-13 years old | | ER-completed the immigration process | No |
| | | | | INDIA | 4/11/2020 | | 7.2 | 6-13 years old | | ER-completed the immigration process | No |
| | | | | HONDU | 3/10/2020 | | 7.9 | 6-13 years old | 8/6/2019 | Final order from 240 proceedings | No |
| | | | | CHINA | 4/13/2020 | | 3.5 | 0-5 years old | 4/30/2020 | ER-completed the immigration process | No |
| | | | | CHILE | 2/26/2020 | | 0.9 | 0-5 years old | | ER-currently going through CF process/IJ review of CF | No |
| | | | | HONDU | 10/19/2019 | | 8.9 | 6-13 years old | 10/17/2019 | ER-completed the immigration process | No |
| | | | | GUATE | 10/6/2019 | | 7.6 | 6-13 years old | 10/17/2019 | ER-completed the immigration process | No |
| | | | | HONDU | 10/8/2019 | | 9.8 | 6-13 years old | 12/3/2019 | ER-completed the immigration process | No |
| | | | | HONDU | 10/8/2019 | | 13.3 | 6-13 years old | 12/11/2019 | ER-completed the immigration process | No |
| | | | | GUATE | 10/5/2019 | | 1.3 | 0-5 years old | 11/14/2019 | ER-completed the immigration process | No |
| | | | | GUATE | 10/6/2019 | | 11.7 | 6-13 years old | 11/21/2019 | ER-completed the immigration process | No |
| | | | | ECUAD | 1/27/2020 | | 1.4 | 0-5 years old | 2/3/2020 | ER-completed the immigration process | No |
| | | | | COSTA | 2/8/2020 | | 1.9 | 0-5 years old | 12/19/2019 | Final order from 240 proceedings | No |
| | | | | MEXIC | 2/18/2020 | | 14.6 | 14-17 years old | 3/6/2020 | ER-completed the immigration process | No |
| | | | | MEXIC | 2/18/2020 | | 11.0 | 6-13 years old | 3/6/2020 | ER-completed the immigration process | No |
| | | | | MEXIC | 2/18/2020 | | 6.6 | 6-13 years old | 3/6/2020 | ER-completed the immigration process | No |
| | | | | MEXIC | 2/18/2020 | | 4.1 | 0-5 years old | 3/6/2020 | ER-completed the immigration process | No |
| | | | | VENEZ | 3/5/2020 | | 10.5 | 6-13 years old | 3/25/2020 | ER-completed the immigration process | No |
| | | | | VENEZ | 3/5/2020 | | 8.3 | 6-13 years old | 3/25/2020 | ER-completed the immigration process | No |
| | | | | GUATE | 9/28/2019 | | 7.6 | 6-13 years old | 11/19/2019 | ER-completed the immigration process | No |
| | | | | GUATE | 9/28/2019 | | 4.2 | 0-5 years old | 11/19/2019 | ER-completed the immigration process | No |
| | | | | BRAZI | 10/5/2019 | | 2.4 | 0-5 years old | 9/30/2019 | ER-completed the immigration process | No |
| | | | | GUATE | 9/26/2019 | | 13.7 | 6-13 years old | 10/08/2019 | ER-completed the immigration process | No |
| | | | | HONDU | 8/22/2019 | | 10.9 | 6-13 years old | 9/30/2019 | ER-completed the immigration process | No |
| | | | | HONDU | 8/22/2019 | | 10.2 | 6-13 years old | 9/12/2019 | ER-completed the immigration process | No |
| | | | | HONDU | 8/22/2019 | | 3.0 | 0-5 years old | 9/18/2019 | ER-completed the immigration process | No |
| | | | | GUATE | 8/22/2019 | | 11.7 | 6-13 years old | 9/26/2019 | ER-completed the immigration process | No |
| | | | | ELSAL | 8/27/2019 | | 7.6 | 6-13 years old | 9/18/2019 | ER-completed the immigration process | No |
| | | | | CUBA | 9/18/2019 | | 15.2 | 14-17 years old | 10/17/2019 | ER-completed the immigration process | No |
| | | | | HONDU | 9/18/2019 | | 16.8 | 14-17 years old | 11/4/2019 | ER-completed the immigration process | No |
| | | | | HONDU | 9/18/2019 | | 12.5 | 6-13 years old | 11/4/2019 | ER-completed the immigration process | No |
| | | | | HONDU | 9/18/2019 | | 8.8 | 6-13 years old | 11/4/2019 | ER-completed the immigration process | No |
| | | | | ECUAD | 2/27/2020 | | 12.1 | 6-13 years old | 2/19/2020 | Final order from 240 proceedings | No |
| | | | | GUATE | 2/6/2020 | | 6.3 | 6-13 years old | 1/30/2020 | Ongoing 240 proceedings | No |
| | | | | MEXIC | 1/18/2020 | | 2.1 | 0-5 years old | 2/7/2020 | ER-completed the immigration process | No |
| | | | | ECUAD | 1/19/2020 | | 8.2 | 6-13 years old | 2/5/2020 | ER-completed the immigration process | No |
| | | | | ECUAD | 1/19/2020 | | 5.6 | 0-5 years old | 2/5/2020 | ER-completed the immigration process | No |
| | | | | ECUAD | 1/19/2020 | | 10.4 | 6-13 years old | 2/5/2020 | ER-completed the immigration process | No |
| | | | | CUBA | 2/16/2020 | | 5.6 | 0-5 years old | 3/3/2020 | ER-completed the immigration process | No |
| | | | | ECUAD | 2/28/2020 | | 1.3 | 0-5 years old | 3/20/2020 | ER-completed the immigration process | No |
| | | | | ELSAL | 9/3/2019 | | 6.6 | 6-13 years old | 9/23/2019 | ER-completed the immigration process | No |
| | | | | HONDU | 9/11/2019 | | 7.1 | 6-13 years old | 10/3/2019 | ER-completed the immigration process | No |
| | | | | ELSAL | 8/27/2019 | | 7.4 | 6-13 years old | 9/30/2019 | ER-completed the immigration process | No |
| | | | | ELSAL | 8/27/2019 | | 8.5 | 6-13 years old | 9/18/2019 | ER-completed the immigration process | No |
| | | | | NICAR | 8/27/2019 | | 13.0 | 6-13 years old | 9/30/2019 | ER-completed the immigration process | No |
| | | | | ELSAL | 8/31/2019 | | 6.1 | 6-13 years old | 12/12/2019 | ER-completed the immigration process | No |
| | | | | ELSAL | 8/31/2019 | | 3.9 | 0-5 years old | 10/3/2019 | ER-completed the immigration process | Parole |
| | | | | ELSAL | 8/31/2019 | | 12.7 | 6-13 years old | 10/3/2019 | ER-completed the immigration process | No |
| | | | | HONDU | 9/1/2019 | | 11.1 | 6-13 years old | 10/17/2019 | ER-completed the immigration process | No |
| | | | | HONDU | 8/16/2019 | | 12.4 | 6-13 years old | 9/18/2019 | ER-completed the immigration process | No |
| | | | | ELSAL | 8/29/2019 | | 2.1 | 0-5 years old | 9/18/2019 | ER-completed the immigration process | No |
| | | | | HONDU | 8/29/2019 | | 15.0 | 14-17 years old | 10/17/2019 | ER-completed the immigration process | No |
| | | | | GUATE | 8/30/2019 | | 17.2 | 14-17 years old | 10/23/2019 | ER-completed the immigration process | No |
| | | | | GUATE | 8/30/2019 | | 13.8 | 6-13 years old | 9/23/2019 | ER-completed the immigration process | No |
| | | | | GUATE | 12/17/2019 | | 4.3 | 0-5 years old | 9/30/2019 | ER-completed the immigration process | No |
| | | | | ECUAD | 8/27/2019 | | 6.9 | 6-13 years old | 10/17/2019 | ER-completed the immigration process | No |
| | | | | ELSAL | 8/29/2019 | | 7.3 | 6-13 years old | 9/19/2019 | ER-completed the immigration process | No |
| | | | | HONDU | 8/27/2019 | | 11.6 | 6-13 years old | 8/26/2019 | ER-completed the immigration process | No |
| | | | | HONDU | 8/30/2019 | | 5.9 | 0-5 years old | 9/19/2019 | ER-completed the immigration process | No |
| | | | | HONDU | 8/30/2019 | | 4.4 | 0-5 years old | 9/19/2019 | ER-completed the immigration process | No |
| | | | | ELSAL | 8/29/2019 | | 2.9 | 0-5 years old | 9/18/2019 | ER-completed the immigration process | No |
| | | | | GUATE | 9/14/2019 | | 2.2 | 0-5 years old | 9/30/2019 | ER-completed the immigration process | No |
| | | | | GUATE | 9/16/2019 | | 5.6 | 0-5 years old | 11/4/2019 | ER-completed the immigration process | No |
| | | | | HONDU | 9/14/2019 | | 2.4 | 0-5 years old | 9/30/2019 | ER-completed the immigration process | No |
| | | | | HONDU | 9/14/2019 | | 5.4 | 0-5 years old | 10/3/2019 | ER-completed the immigration process | No |
| | | | | HONDU | 8/30/2019 | | 5.2 | 0-5 years old | 9/23/2019 | ER-completed the immigration process | No |
| | | | | HONDU | 9/1/2019 | | 3.7 | 0-5 years old | 9/18/2019 | ER-completed the immigration process | No |
| | | | | ELSAL | 8/30/2019 | | 6.8 | 6-13 years old | 10/18/2019 | ER-completed the immigration process | No |
| | | | | GUATE | 4/28/2020 | | 8.7 | 6-13 years old | 11/14/2019 | ER-completed the immigration process | No |
| | | | | HONDU | 10/9/2019 | | 4.3 | 0-5 years old | 12/3/2019 | ER-completed the immigration process | No |
| | | | | BRAZI | 1/25/2020 | | 1.7 | 0-5 years old | 2/14/2020 | ER-completed the immigration process | No |
| | | | | ANGOL | 1/23/2020 | | 16.7 | 14-17 years old | 2/6/2020 | ER-completed the immigration process | No |
| | | | | ANGOL | 1/23/2020 | | 10.7 | 6-13 years old | 2/6/2020 | ER-completed the immigration process | No |
| | | | | ELSAL | 9/11/2019 | | 1.6 | 0-5 years old | 10/17/2019 | ER-completed the immigration process | No |
| | | | | HONDU | 9/10/2019 | | 13.9 | 6-13 years old | 9/30/2019 | ER-completed the immigration process | No |
| | | | | GUATE | 9/10/2019 | | 5.3 | 0-5 years old | 9/30/2019 | ER-completed the immigration process | No |
| | | | | HONDU | 9/11/2019 | | 14.6 | 14-17 years old | 10/3/2019 | ER-completed the immigration process | No |
| | | | | HONDU | 9/11/2019 | | 9.3 | 6-13 years old | 10/17/2019 | ER-completed the immigration process | No |
| | | | | ECUAD | 4/24/2020 | | 2.6 | 0-5 years old | 3/2/2020 | Final order from 240 proceedings | No |
| | | | | ECUAD | 2/24/2020 | | 17.0 | 14-17 years old | 2/23/2020 | ER-completed the immigration process | No |
| | | | | GUATE | 4/2/2020 | | 14.5 | 14-17 years old | 3/11/2020 | ER-completed the immigration process | No |
| | | | | GUATE | 4/2/2020 | | 11.9 | 6-13 years old | 3/11/2020 | ER-completed the immigration process | No |
| | | | | GUATE | 4/2/2020 | | 7.9 | 6-13 years old | 3/11/2020 | ER-completed the immigration process | No |
| | | | | GUATE | 4/2/2020 | | 6.5 | 6-13 years old | 3/11/2020 | ER-completed the immigration process | No |
| | | | | GUATE | 4/4/2020 | | 6.2 | 6-13 years old | 5/23/2020 | ER-completed the immigration process | No |
| | | | | GUATE | 4/4/2020 | | 4.3 | 0-5 years old | 5/23/2020 | ER-completed the immigration process | No |
| | | | | GUATE | 4/4/2020 | | 5.5 | 0-5 years old | 5/20/2020 | ER-completed the immigration process | No |
| | | | | GUATE | 4/4/2020 | | 4.1 | 0-5 years old | 3/25/2020 | ER-completed the immigration process | No |
| | | | | GUATE | 4/4/2020 | | 7.2 | 6-13 years old | 3/25/2020 | ER-completed the immigration process | No |
| | | | | GUATE | 4/9/2020 | | 4.2 | 0-5 years old | 4/6/2020 | ER-completed the immigration process | No |
| | | | | GUATE | 4/9/2020 | | 6.0 | 0-5 years old | 4/6/2020 | ER-completed the immigration process | No |
| | | | | GUATE | 4/9/2020 | | 2.5 | 0-5 years old | 4/2/2020 | ER-completed the immigration process | No |
| | | | | GUATE | 4/9/2020 | | 6.6 | 6-13 years old | 3/26/2020 | ER-completed the immigration process | No |
| | | | | GUATE | 4/9/2020 | | 1.9 | 0-5 years old | 3/26/2020 | ER-completed the immigration process | No |
| | | | | GUATE | 4/9/2020 | | 14.7 | 14-17 years old | 3/30/2020 | ER-completed the immigration process | No |

# EXHIBIT B

# FILED UNDER SEAL