1  CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
2  Carlos R. Holguín (90754)
   Peter A. Schey (58232)
3  256 South Occidental Boulevard
4  Los Angeles, CA 90057
   Telephone: (213) 388-8693
5  Email: pschey@centerforhumanrights.org

6  *Attorneys for Plaintiffs*

7  *Additional counsel listed on following page*

8

9

10

11

12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15                    WESTERN DIVISION

16

17  JENNY LISETTE FLORES, *et al.*,         Case No. CV 85-4544-DMG-AGRx

18          Plaintiffs,                     PLAINTIFFS' STATEMENT RE
                                            ORR JUVENILE COORDINATOR'S SECOND
19  v.                                      REPORT.

20
    WILLIAM BARR, Attorney General of       Hearing: June 26, 2020
21  the United States, *et al.*,            11:00 AM

22
                                            [Hon. Dolly M. Gee]
23          Defendants.

24

25  / / /

26

27

28

UNIVERSITY OF CALIFORNIA DAVIS
SCHOOL OF LAW
Immigration Law Clinic
Holly S. Cooper (197626)
Jonathan P. Mulligan (803383)
Daisy O. Felt (CA 307958)
One Shields Avenue, TB 30
Davis, CA 95616
Telephone: (530) 754-4833
Emails: hscooper@ucdavis.edu
         jpmulligan@ucdavis.edu
         dofelt@ucdavis.edu

NATIONAL CENTER FOR YOUTH LAW
Leecia Welch (Cal. Bar No. 208741)
Neha Desai (CAL. RLSA NO. 803161)
Poonam Juneja (Cal. Bar No. 300848)
Freya Pitts (Cal. Bar No. 295878)
1212 Broadway, Suite 600 Oakland, CA 94612
Telephone: (510) 835-8098
Email:   lwelch@youthlaw.org
         ndesai@youthlaw.org
         pjuneja@youthlaw.org
         fpitts@youthlaw.org

/ / /

ORR continues to delay children's release unnecessarily on account of fingerprinting. The ORR Juvenile Coordinator's second report (Doc. #810-1) ("ORR Report II") fails to show that ORR is (1) releasing class members without unnecessary delay during the worsening COVID-19 pandemic; and (2) responsibly informing the Court and class members' counsel regarding its efforts to prevent children from contagion during this public health emergency.

1)  <u>ORR fingerprint waivers fall short of complying with this Court's order requiring the provisional release of class members without unnecessary delay.</u>

The Court directed ORR to "institute provisional release of Class Members with Category 2B and Category 3 sponsors whose name-only background checks yield no red flags and for whom fingerprinting is unavailable," so long as the sponsors agree to fingerprinting post-release. April 24 Order at 18-19 (Doc. # 784).

Rather than promptly release children who meet these criteria, ORR has prescribed a needlessly burdensome fingerprint waiver process that cannot help but delay children's release unnecessarily. The ORR Juvenile Coordinator omits including the policy with her report (Doc. #808-1), but Plaintiffs attached it hereto for the Court's reference. *See* ORR Waiver Guidance, Exhibit E.

Pursuant to this policy, ORR requires a child's (1) case manager, (2) contract field specialist, (3) federal field specialist, (4) federal field specialist supervisor, (5) the Division of Policy and Procedures, (6) the Office of General Counsel, and (7) the ORR Director of Children's Operations to review a fingerprint waiver before it will release a class member provisionally in accordance with this Court's order. *Id.* at 2-3. There is simply no safety justification for requiring this extended review process prior to the provisional release of children to vetted sponsors, especially given that sponsors are still required to submit fingerprints

1    after the child's release.[1] Conspicuously absent from ORR's policy is a time limit
2    by which the agency must finish obtaining these multiple approvals.

3          This Court has previously disapproved a much less redundant and onerous
4    approval chain as needlessly extending children's detention. Order re Plaintiffs'
5    Motion to Enforce Class Action Settlement, July 30, 2018 (Doc. #470), at 27-29
6    ("an extra layer of review" by the ORR Director before class members' release
7    "would inevitably prolong their detention").

8          Yet this is not the only way in which ORR policy prescribes unnecessary
9    delay on account of fingerprinting.

10         First, it provides that the process for waiving fingerprinting may begin only
11   after a child is otherwise fully approved for release. ORR Waiver Guidance at 1-2.

12         Second, it requires a child's proposed custodian to inform detention facility
13   staff "that he or she is not able to complete submission of his or her fingerprint
14   requirements due to a lack of a fingerprint site resources within a reasonable
15   driving distance. . ." *Id*. at 1.

16         Then, ORR policy demands that multiple parties—the child's proposed
17   custodian, detention facility staff, the contract field specialist, and ORR's Central
18   Branch Case Management Team—all investigate and verify that ORR's
19   fingerprinting sites are in fact unavailable to the proposed custodian. *Id*. 2.

20         This is a process calculated to inject maximum delay in ORR's compliance
21   with this Court's order. ORR knows or should know a proposed custodian's
22   location, and whether its own fingerprinting sites within a prescribed distance of

23
24
25
26   _____

27   [1] ORR's guidance indicates that it intends to flag the sponsor in the UAC Portal,
     notify local child welfare authorities, and possibly engage U.S. Homeland Security
28   Investigations should a sponsor refuse to be fingerprinted after release.

the custodian's location are closed or not.[2] By any assessment, ORR has contrived to continue its pre-COVID fingerprint course while paying lip service to this Court's order. This Court should order ORR to expeditiously approve the provisional release of class members who are pending fingerprinting unless the proposed sponsor has immediate access to fingerprinting and cease imposing additional procedures or approvals beyond those usually required for a child's release. ORR should also be required to submit a revised fingerprint policy for the Court's approval without further delay.

     2)    <u>Withholding the identity of affected class members or and specific reasons for continuing to detain them.</u>

On May 27, 2020, Plaintiffs advised ORR's Juvenile Coordinator, Defendants' counsel, and the Independent Monitor three class members whose release ORR appeared to be delaying unnecessarily. A copy of Plaintiffs' correspondence, with class members' identifying information redacted, is attached hereto as Exhibit A.

One of these class members, J.J.S.D., is a seven-year-old whom ORR has reportedly detained since March 17, 2020, in lieu of releasing him to his cousin. On May 29, 2020, Defendants advised that ORR was continuing to detain this child because —

> [his] sponsor withdrew on May 11, 2020 after the process of requiring household members to obtain fingerprints and C/AN checks was explained to him. The sponsor and household members stated that they were willing to provide IDs, but they did not wish to be fingerprinted. This case also initially was referred for a home study, but once the sponsor withdrew on May 11, 2020, the home study was recalled.

---

[2] ORR's policy even leaves it up to multiple actors to declare that an open fingerprinting site is "within a reasonable driving distance" of the proposed custodian's location, *id*. at 1-2, whether it is or not.

1   Email from Sarah Fabian, May 29, 2020, Exhibit B.

2          According to J.J.S.D.'s counsel, however, Defendants' story is simply

3   untrue:

4          During intake, I learned that *Flores* counsel for the government

5          stated/was told that J.J.S.D.'s sponsor withdrew her sponsorship on

6          May 11, 2020. *This is categorically false*. My client, J.J.S.D.'s

7          sponsor, . . . adamantly denies that she ever withdrew her willingness

8          or agreement to sponsor J.J.S.D., verbally or in any other form, and

9          indicates that anyone stating otherwise is doing so with malicious

10         intent.

11         [J.J.S.D.'s mother] reports experiencing numerous problems with the

12         BCFS case manager assigned to J.J.S.D., including but not limited to

13         being told that her son would be deported without a hearing, refusal of

14         the BCFS case manager to allow any advocates for [J.J.S.D.'s mother]

15         to be on the telephone with her during their conversations (without the

16         child on the line), and, generally, obstruction of J.J.S.D.'s release.

17   Affidavit of Amy Maldonado, June 15, 2020, Exhibit C, ¶¶ 9-10 (emphasis

18   added);[3] *see also*, Declaration of Dr. Amy Cohen, June 16, 2020, Exhibit G

19   (J.J.S.D.'s proposed custodian "affirmed unambiguously that she had never

20   expressed a wish to withdraw her sponsorship application and that she

21   wanted nothing more than to see [J.J.S.D.] released to her care.").

22         Nowhere in her second report does the Juvenile Coordinator even

23   identify J.J.S.D., much less specify ORR's reasons for having detained a

---

25   [3] According to Ms. Maldonado, "As of today, June 15, 2020, J.J.S.D. is still in the

26   custody of BCFS Health and Human Services in San Antonio. J.J.S.D.'s mother, Ms. Diaz Solis, has been told that the home study went very well, but J.J.S.D. will

27   not be released/have to wait at least another 10 days for a final written report. No explanation was given as to why a report would take another two weeks to issue,

28   nor why a verbal approval was insufficient." *Id*. at ¶ 11.

1  seven-year-old for three months during a growing pandemic.

2          Also absent from the Juvenile Coordinator's second report is any

3  explicit explanation as to why ORR has failed to reunify another youth, 17-

4  year-old A.G.L.C., with his biological brother. As A.G.L.C.'s attorney,

5  Lauren Vizar, attests, "the only outstanding component of the reunification

6  process is the in-person home study." She further declares that ORR has

7  refused to explain why an in-person home study "is justified and necessary,

8  as opposed to conducting any further follow-up by phone or virtually."

9  Affidavit of Lauren Vizar, June 17, 2020, Exhibit F, ¶¶ 10-11. As a result,

10 "A.G.L.C. has been detained for over four months to date despite the fact that

11 his biological brother is committed to sponsoring A.G.L.C. and that ORR has

12 previously approved his brother as a sponsor." *Id*. ¶ 12.

13         As regards the four children ORR reports having detained pending

14 home studies, Report II at 5, the report fails to identify (1) the affected child

15 or his or her age; (2) the facility in which the child is detained and whether

16 COVID-19 has entered the facility; (3) how long ORR has detained the child

17 and, *a fortiori*, how long it has now had to accomplish a home study; (4)

18 what ORR has done to complete a home study despite COVID-19 closures;

19 or (5) the date when it expects to complete an in-person home study.[4] From

20 what little appears in ORR Report II, there is simply no way of assessing the

21 gravity of ORR's concerns regarding class members' proposed custodians or

---

23 [4] With respect to Minor #2 and Minor #3, particularly, the Report also fails to state
24 (1) how an in-person home study would allow ORR to better determine if the
   proposed custodian can provide for the youth's medical or mental health needs; and
25 (2) whether a medical professional has determined that an in-person home study is
26 essential.

27 As for Minor #4, the Report similarly fails to identify the specific concerns the
   virtual home study evaluator had with the sponsor's home or how an in-person
28 home study would allay them.

1   whether an in-person home study is reasonably calculated to assuage them.[5]

2        Ensuring that ORR complies with the Settlement and the Court's

3   orders requires signficantly more than what appears in the Juvenile

4   Coordinator's second report. At a minimum, the report should identify each

5   class member ORR continues to detain in whole or in part on account of

6   fingerprinting or home study delay, state the specific reasons why ORR

7   refuses to release each such class member, disclose the class member's

8   placement and state whether staff or detainees at such facility have tested

9   positive for COVID-19. Absent such specificity there is no apparent means

10   of determining whether ORR is or is not unnecessarily delaying class

11   members' release.

12        3)   <u>Failure to disclose the specific measures to protect detained children</u>

13           <u>from COVID-19</u>.

14        In addition to the ten facilities identified in the Juvenile Coordinator's May

15   15, 2020 report (Doc. #790-2) at 4, the Juvenile Coordinator's second report

16   indicates that COVID-19 has now entered another three ORR facilities. ORR

17   Report II at 6. Here again, the Juvenile Coordinator's report is far too vague to

18   supply reasonable assurances that ORR is exercising due diligence to protect

19   children in its custody from contagion.

20        First, despite the continuing spread of COVID-19 across ORR's network,

21   the Report again fails to identify "the specific reason the minors located" in

22   facilities with positive COVID-19 cases "have not been released or transferred to a

23   _____

24   [5] As for the one fingerprinting delay case the Report lists, ORR Report II at 4, ORR

25   fails to identify (1) the child affected; (2) the crime that allegedly resulted in the proposed custodian's arrest; (3) the facility in which the child is detained and

26   whether COVID-19 has entered the facility; (4) how long ORR has detained the

27   child since learning of the proposed custodian's arrest; (5) what ORR has done to accomplish fingerprinting despite COVID-19 closures; or (6) the date when it

28   expects the proposed custodian will manage to accomplish fingerprinting.

1  non-congregate setting." April 24 Order at 20; Report II at 7. Instead of reporting

2  "the specific reasons" minors held in such facilities have not been transferred or

3  released, the Report reiterates banalities about how ORR "release[s] minors to

4  sponsors in a manner that promotes public safety, which includes concerns related

5  to public health." ORR Report II at 7.

6       Second, as regards children at heightened risk should they contract COVID-

7  19, ORR's current report offers little beyond an exceedingly general description of

8  its standard medical intake screening. Nowhere does the report illuminate (1) the

9  specific conditions that in ORR's view place detained children at heightened risk

10  should they contract COVID-19; (2) whether "[e]ach facility['s] . . . unique process

11  for staffing medical care for the individualized needs of the minors in care," *id*. at

12  7, includes uniform medical screening for any set of specific conditions that place

13  them at heightened risk; or (3) what, if anything, ORR does to remove children it

14  determines are at heightened risk from congregate detention.

15       Third, in her second report, the Juvenile Coordinator purports to "[e]xplain

16  whether ORR is making individualized assessments regarding its ability to release

17  minors subject to removal orders under the MPP, including . . . reasons for non-

18  release" by reporting that as "of June 1, 2020, there remained 36 MPP minors in

19  ORR custody who are still going through the reunification process."

20  Conspicuously absent are the names of any of the 36 MPP minors still in ORR

21  custody and any indication of the *specific* reasons ORR refuses to release them.

22       Were this not enough, legal services providers continue to report that

23  ORR keeps them in the dark regarding the specific steps detention facilities

24  take to prevent their clients from contracting COVID-19.

25       Attorney Ana Deveraux regularly represents class members detained at

26  a number of ORR facilities in Michigan, including the Bethany Christian

27  Services facility. Declaration of Ana Deveraux, June 10, 2020, Exhibit D.

28  She reports that in April 2020 ORR began confining her clients for 23 hours

1  daily ostensibly because coronavirus had entered the facility, though none of

2  her clients reported even having been tested for COVID-19. *Id*. at ¶ 12.

3       When Ms. Deveraux's office asked the facility for basic information

4  about what it hoped to accomplish with 23-hour lockdowns, how long the

5  isolation policy would continue, and similar details any lawyer worth her salt

6  would want to know about her clients' well-being, the facility replied, "'[W]e

7  are unable to share much information. . . . Should you need further

8  information, I would encourage you to connect to ORR who might be able to

9  share this information with you directly.'" *Id*. at ¶ 9.

10       When Ms. Devereaux took up the facility's advice, ORR Supervisory

11  Federal Field Specialist Jeff Ahlberg responded, "'*This is an extraordinary*

12  *request*' and concluded that he would not provide us anything other than

13  [what] he [had] already included in the previous email- an assurance that the

14  matter had been looked into by ORR and other agencies. He further indicated

15  that *the only information we would have access to as attorneys would be*

16  *information around reunification*, even though . . . these matters related to

17  the conditions of their detention in ORR custody, which is a central matter of

18  our representation." *Id*. at ¶ 29 (emphasis added).

19  */ / /*

PLAINTIFFS' STATEMENT RE SECOND ORR JUVENILE COORDINATOR REPORT
CV 85-4544-DMG-AGRX

1         In sum, the ORR Juvenile Coordinator's second report—and indeed

2    ORR itself—is doing its utmost to keep to itself what it has or has not done to

3    comply with the Court's orders. The Court should require ORR's Juvenile

4    Coordinator to do better: i.e., to report fully and transparently regarding class

5    members whom ORR refuses to release despite the clear and present danger

6    COVID-19 poses, and to keep class members' counsel reasonably informed

7    regarding the policies, practices, and conditions their clients are experiencing

8    during an ascendant public health emergency.

9    Dated: June 17, 2020.          CENTER FOR HUMAN RIGHTS AND

10                                    CONSTITUTIONAL LAW

11                                    Carlos R. Holguín
                                      Peter A. Schey
12

13                                    UNIVERSITY OF CALIFORNIA DAVIS
                                      SCHOOL OF LAW
14                                    Immigration Law Clinic

15                                    Holly S. Cooper
                                      Jonathan P. Mulligan
16                                    Daisy O. Felt

17                                    NATIONAL CENTER FOR YOUTH LAW
18                                    Leecia Welch

19                                    Neha Desai
                                      Poonam Juneja
20                                    Freya Pitts

21

22                                    */s/ Carlos Holguín*
                                      Carlos Holguín
23                                    *One of the Attorneys for Plaintiffs*

24

25

26

27

28

Exhibit A

# Center for Human Rights and Constitutional Law

256 S. OCCIDENTAL BOULEVARD
LOS ANGELES, CA 90057
Telephone:  (213) 388-8693 Facsimile:  (213) 386-9484
www.centerforhumanrights.org

May 27, 2020

Aurora Miranda-Maese
Juvenile Coordinator
Office of Refugee Resettlement
330 C Street, S.W.
Washington, D.C. 20201

William C. Silvis
Assistant Director
Sarah B. Fabian
Trial Attorney
Office of Immigration Litigation – District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044

*Via email*

Re:     *Flores v. Barr*, No. 2:85-CV-4544-DMG-AGR.

Dear Madams/Sir:

Pursuant to paragraph 5 of the Court's order of May 22, 2020 (Doc. #799) enforcing the settlement in *Flores*, et al., *v. Barr, et al.,* ("Settlement"), Plaintiffs request that the Parties meet and confer regarding the following:

1)      <u>ORR field guidance</u>.

Plaintiffs request ORR provide copies of (i) its May 19, 2020, field guidance on the provisional release of class members whose proposed custodians are unable to complete fingerprinting because of COVID-19 closures; and (ii) its May 6, 2020, field guidance on conducting home studies of class members' proposed custodians during the COVID-19 pandemic, or else meet and confer regarding ORR's reasons for declining to release the foregoing field guidance.

2)      <u>Unnecessary delay in class members' release</u>.

Plaintiffs are informed that ORR appears to be detaining class members W        R
M          C    , A          ; F      I          L        , A          ; J    J
S           , A              , in lieu of releasing them to qualified custodians despite the risk that the COVID-19 pandemic presents to children's health and safety.

A. Miranda-Maese, W. Silvis, S. Fabian
May 27, 2020
Page 2 of 2

Plaintiffs are advised that ORR has detained class member M       C     15 years of age,
since February 4, 2020, presently at the Southwest Key Casita Del Valle facility, in lieu of
release to his aunt solely because she shares an apartment with four additional family members
of class member M       C    and cannot afford an apartment of her own.

With respect to class member        L      , six years of age, Plaintiffs are informed that ORR
has detained him since December 16, 2019, in lieu of releasing him to his godmother because of
delay in completing a home study.

Finally, Plaintiffs are advised that ORR has detained class member S       D    , seven years of
age, since March 17, 2020, presently at a BCFS facility in San Antonio, in lieu of releasing him
to his adult cousin, because of fingerprinting delays.

Plaintiffs request that ORR release the aforementioned class members to available custodians
forthwith, or else meet and confer with Plaintiffs regarding the reasons it refuses to do so.

Plaintiffs propose the Parties meet and confer at 11:00 a.m., p.d.t., on Friday, May 29, 2020,
together with Independent Monitor Ordin.

Sincerely,

Carlos Holguín
One of the attorneys for Plaintiffs

ccs:   Hon. Andrea Sheridan Ordin, *Flores* Special Master/Independent Monitor
       Leecia Welch, National Center for Youth Law
       Holly Cooper, U.C. Davis School of Law Legal Clinic
       Peter A. Schey, Center for Human Rights & Constitutional Law

Exhibit B

**From: Fabian, Sarah B (CIV)** Sarah.B.Fabian@usdoj.gov
**Subject:** RE: Correspondence pursuant to ¶ 5 of Order of May 22, 2020 (Doc. #799)
**Date:** May 29, 2020 at 8:16 AM
**To:** Carlos Holguín crholguin@centerforhumanrights.email, Miranda-Maese, Aurora (ACF) (CTR) Aurora.Miranda-maese@acf.hhs.gov
, Silvis, William (CIV) William.Silvis@usdoj.gov
**Cc:** Andrea Sheridan Ordin aordin@strumwooch.com, Leecia Welch lwelch@youthlaw.org, Holly S Cooper hscooper@ucdavis.edu,
Peter Schey pschey@centerforhumanrights.org

Dear Carlos:

As noted in my previous email, your inquiries are not of the type that fall under Paragraph 5 of the Court's May 22 Order. Nonetheless, ORR has construed your request as a request under Paragraph 28B of the Settlement. Although you did not make a showing of "reasonable cause" in this case as that Paragraph requires, ORR investigated the cases you raised in good faith and provides the information below. Defendants respectfully request that any future requests to ORR regarding individual class members provide an explanation as to why you have "reasonable cause" to believe that the class member about whom you are enquiring should have been released under Paragraph 14 of the Agreement, and should allow a reasonable period for investigation. Defendants also ask that for any future requests you please let us know if you are aware whether the minor is represented by an individual attorney.

- MC:  The sponsor in this case stopped responding to the care provider's communications for a period of months and was not previously cooperative regarding providing documentation of who lives in the home. Counsel's statements in the letter sent on May 27, 2020 that the sponsor is living with four other family members in the apartment belies the sponsor's claims to ORR that other individuals are listed on the lease and utility bills but do not reside with her. Defendants request further information from Counsel regarding your statement that the sponsor resides with four other individuals and the basis for such statement, as this appears to conflict with the sponsor's representations.

- LL: The case has been approved for a virtual home study to be completed May 29, 2020, with the home study report submitted June 2.  If the home study results are positive release should occur shortly thereafter.

- SD: SD's sponsor withdrew on May 11, 2020 after the process of requiring household members to obtain fingerprints and C/AN checks was explained to him. The sponsor and household members stated that they were willing to provide IDs, but they did not wish to be fingerprinted. This case also initially was referred for a home study, but once the sponsor withdrew on May 11, 2020, the home study was recalled.

Best,
Sarah

Sarah B. Fabian
Senior Litigation Counsel
Office of Immigration Litigation – District Court Section
(202) 532-4824

**From:** Carlos Holguín <crholguin@centerforhumanrights.email>
**Sent:** Wednesday, May 27, 2020 8:07 PM
**To:** Miranda-Maese, Aurora (ACF) (CTR) <Aurora.Miranda-maese@acf.hhs.gov>;

Fabian, Sarah B (CIV) <sfabian@CIV.USDOJ.GOV>; Silvis, William (CIV)
<WSilvis@civ.usdoj.gov>
**Cc:** Andrea Sheridan Ordin <aordin@strumwooch.com>; Leecia Welch
<lwelch@youthlaw.org>; Holly S Cooper <hscooper@ucdavis.edu>; Peter Schey
<pschey@centerforhumanrights.org>
**Subject:** Correspondence pursuant to ¶ 5 of Order of May 22, 2020 (Doc. #799)

Please see attached.

Thank you.

Carlos Holguín
General Counsel
Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, California 90057
213.388-8693 x.309 (v)
(213) 290-1642 (direct)
213.386.9484 (fax)
http://www.centerforhumanrights.org

Exhibit C

## AFFIDAVIT OF AMY MALDONADO

1.      I, Amy Maldonado, am an attorney licensed by the state of Illinois (Bar No.

06256961).  My practice, the Law Office of Amy Maldonado, is located at 333 Albert Ave, Ste.

610, East Lansing, Michigan 48823.

2.      I represent J.J.S.D., a seven year old child in ORR custody (BCFS Health and

Human Services in San Antonio). J.J.S.D.'s date of birth is April 9, 2013, and his A number is

                , with regard to his release to his relative and sponsor, L        A        A        .

J.J.S.D. entered U.S. government custody on March 17, 2020.

3.      I also represent J.J.S.D.'s mother, A        L        D        S        , A number

 , who is currently homeless in Matamoros due to her designation for the Migrant

Protection Protocols program ("MPP"), for purposes of securing her son's release from ORR

custody to his family.

4.      Ms. D      retained me on June 3, 2020 to represent her, J.J.S.D. and Ms. A

with regard to facilitating J.J.S.D.'s release from ORR custody to his family. She informed me

that her son's release to his family in the United States had been unaccountably delayed. I

forwarded signed G-28, Notices of Entry of Appearance as Attorney or Representative to

J.J.S.D.'s BCFS case manager, Elizabeth Chavez, on June 4, 2020 via e-mail.

5.      Ms. A        is J.J.S.D.'s grandmother's cousin, who has and submitted to BCFS

proof of relationship in the form of all birth certificates. She is a U.S. citizen who resides in

Miami with her sister and niece, both of whom are also U.S. Citizens.  She has a longstanding

acquaintance with Ms. D      S      , and she briefly met J.J.S.D. in Guatemala about a year or so

ago.  J.J.S.D. is eager to go to live with his "tia" ("aunt") and she is very eager to care for him.

Ms. A        promptly submitted **all** necessary documents were quickly submitted, including some which are rarely, if ever, asked of any potential sponsor.

6.     The BCFS Case Manager, Elizabeth Chavez initially refused to schedule Ms. A        for fingerprinting, telling her that she will not be permitted to be fingerprinted unless the sister and niece also agreed, and that a home study would be necessary but would not be ordered until fingerprints are completed. The niece did not agree, but has moved out of the home.

7.     During intake, I learned that *Flores* counsel for the government stated/was told that J.J.S.D.'s sponsor withdrew her sponsorship on May 11, 2020. This is categorically false. My client, J.J.S.D.'s sponsor, Ms. A        , adamantly denies that she **ever** withdrew her willingness or agreement to sponsor J.J.S.D., verbally or in any other form, and indicates that anyone stating otherwise is doing so with malicious intent.

8.     Ms. D    S        reports experiencing numerous problems with the BCFS case manager assigned to J.J.S.D., including but not limited to being told that her son would be deported without a hearing, refusal of the BCFS case manager to allow any advocates for Ms. D    S        to be on the telephone with her during their conversations (without the child on the line), and, generally, obstruction of J.J.S.D.'s release.

9.     On Friday, June 5, 2020, I received a telephone call from Jose Gonzalez, LMSW, an FFS Supervisor in Washington, D.C. in DHHS's Office of Refugee Resettlement, Administration for Children and Families.  Mr. Gonzalez informed me that the home study was mandatory, but assured me that it would conducted imminently.

10.     On Thursday, June 11, 2020, I spoke to Ms. A        , J.J.S.D.'s sponsor. She informed me that she was contacted on June 9, 2020 regarding a home visit, and that her home was actually visited on June 11, 2020.

11.     As of today, June 15, 2020, J.J.S.D. is still in the custody of BCFS Health and Human Services in San Antonio.  J.J.S.D.'s mother,  Ms. D     S     , has been told that the home study went very well, but J.J.S.D. will not be released/have to wait at least another 10 days for a final written report. No explanation was given as to why a report would take another two weeks to issue, nor why a verbal approval was insufficient.

FURTHER AFFIANT SAYETH NOT,

_____

Amy Maldonado (IL Bar No. 6256961)

Dated: June 15, 2020

Exhibit D

## DECLARATION OF ANA DEVEREAUX

I, Ana Raquel Devereaux, declare as follows:

1.      This declaration is based on my personal knowledge.  If called to testify in this case, I would testify competently about the following facts.

2.      My name is Ana Devereaux. and I am an attorney licensed to practice in the State of Michigan. This declaration describes my experiences and observations working with unaccompanied migrant youth in ORR custody.

Experience Serving Youth in ORR Custody

3.      Since 2014, I have been an attorney at Michigan Immigrant Rights Center, a legal service provider that represents children in federal immigration custody.

4.      Since May 2017, Michigan Immigrant Rights Center ("MIRC") has served unaccompanied children in the legal custody of the Office of Refugee Resettlement ("ORR") who have been placed by ORR at Bethany Christian Services ("Bethany") and Samaritas.

5.      As the legal service provider for Bethany and Samaritas, our attorneys maintain regular contact with the youth at the facilities.  We provide ongoing consultations and presentations concerning the legal rights of detained minors, as well as provide direct legal representation to youth.

Unvetted and Extreme COVID-19 Practices and Refusal to Provide Information to Legal Counsel for Affected Youth

*Initial Requests for Information*

6.      On March 30, 2020, I emailed Bethany Christian Services, ORR, and Samaritas, requesting information about any positive COVID-19 testing among our clients, any children who they believed needed testing but have not received it, as well as any new practices that would be implemented in regards to COVID-19. *See* Attachment A at 1. Bethany and Samaritas informed me that they would be following Michigan's "stay home stay safe" orders and requiring handwashing, shower, and change of clothes for youth who engaged in an unauthorized outing. *Id.* at 20-22.

7.      In response to that request, Amanda Miller, the Federal Field Specialist for Michigan's ORR programs, directed me to ORR's policy division, indicating they could not share information with me at a local level due to litigation. I contacted, but never received any information from the policy division in response to my questions at that time. *Id*. at 8.

*COVID-19 Exposure Concerning Practices and Further Requests for Information*

8.      On April 22, 2020, MIRC staff, attorney Jennifer Gallardo emailed Hannah Mills, Regional Line Supervisor at Bethany to inquire about a potential exposure to COVID-19 at Bellaview, Bethany's therauptic group home located in Grand Rapids Michigan, which houses clients we serve through our Vera contract. *See* Attachment B at 1-2.

9.      We had learned about an exposure through a third party and requested information from Hannah Mills about any new procedures that would be put into place and testing that would occur for youth or staff. Hannah Mills responded "Yes, and as you know, we are unable to share much information. If this were the case, we would go into a 14 day quarantine from the date of exposure, and follow the directives of ORR and the local health department. ORR and the health department will determine if further testing needs to be done, dependent on the symptoms or concern of those who have been in contact with the

---

youth. Should you need further information, I would encourage you to connect to ORR who might be able to share this information with you directly." *See* Attachment B at 1.

10.     In response to Hannah Mill's email, I sought clarification as to why she couldn't provide this information directly to us, given that we were the attorneys for the youth in the home with G28s on file, but I never received a response from Bethany on the topic. *Id.*

11.     Having also learned about a "lockdown" that was possibly occurring at Bellaview through a different third party, but not receiving any information from Bethany about it, we set up video visits with our clients who reside at the facility and were given information about their care that raised serious concerns about our clients' wellbeing. *Id.*

12.     Our clients consistently described the following practices:

   a.   Being confined to their rooms for 23 hours a day (some have roommates, some do not).

   b.   Being allowed one single hour out of their rooms each day; it was staggered so other youth would not be out at the same time.

   c.   Staff bring meals to their rooms.

   d.   Youth needing to "yell" from their rooms for staff if they want food between meals or if they need to use the shared bathroom.

   e.   Youth reported they can "earn" use of a tablet by obeying rules and doing their chores, so it is possible for some not to have tablets.

   f.   When they have tablets, they attend daily house meetings by opening their doors and joining via the tablets and they can call friends on the tablets and do schoolwork.

   g.   None of our clients believed they had been tested for COVID-19. The potential duration of these practices was not clear to our clients, but some believed it would last about ten days and possibly be over around May 2, 2020. *See* Attachment B at 2-3.

13. Despite having directly sought it, we had no meaningful information from BCS or ORR as to what the actual house policy was, where it came from, or the particular risk factors at play with respect to our clients' actual exposure to COVID-19. The information we received from third parties and our clients gave us significant pause because it brought to mind frameworks from carceral settings, specifically solitary confinement models that only allow a person outside of their cell for one hour per day. This did not reflect our understanding of how a group foster home should be operating as a "least restrictive" setting -- a home, rather than as a detention or higher security facility. Even without medical or public health training, we could see little rationale for such highly restrictive practices in a group home, especially when the home only contains six girls. But acknowledging our lack of medical expertise and not having any information from ORR as to where the policy came from or what evidence or standards it might be based upon, we reached out to medical and public health experts to understand what best practices would be for responding to a known COVID-19 exposure in a congregate care setting of this nature. *Id.* at 2-5/

14. We spoke with Dr. Amy Cohen, MD, Dr. Vidya Ramanathan, MD,MPH, and Sydney Fouche, MPH, sharing the details we received about the daily experience of our clients after the known COVID-19 exposure to try to understand what medical or epidemiological basis there might be for these extreme forms of isolation and restriction on movement within our clients' own home. *Id.*

15. Dr. Cohen regularly serves as a medical expert for Counsel for Plaintiff for Flores and provided a declaration most recent filings that related, in part, to COVID-19 responses in congregate care settings. She is a child and family psychiatrist who currently serves as mental health and child welfare consultant for attorneys who monitor detention facilities holding children in accordance with the Flores settlement. Dr. Cohen informed us that the highly restrictive practices our clients

had described to us did not even constitute an actual quarantine since youth would share a room or have a common bathroom and the procedures that were being followed were likely exposing the youth to greater risk of contracting COVID-19 than if they were permitted to live their lives as usual within their home. Dr. Cohen shared our concerns and emphasized the deep trauma that this type of isolation was likely causing youth who were experiencing it. *See* Attachment B at 3-5.

16. Dr. Ramanathan is a board-certified pediatrician working in the Pediatric Emergency Department at St. Joseph Mercy Hospital, Ann Arbor and she is also the Medical Director of the University of Michigan Asylum Collaborative, and a physician expert for Physicians for Human Rights as well as a Medical Consultant for Freedom House Detroit. After reviewing the practices described by our clients above and discussing the matter with our staff and expressing great concern, Dr. Ramanathan presented us with a letter that included some resources and the following conclusions:

a. "My greatest worry is for the mental and physical health of the children. Being in isolation for 23 hours of the day is highly detrimental to a child's long term physical and psychological well-being and can have dire consequences to their health. I am extremely concerned about the intense psychological trauma that these children have already suffered in their lives, and these conditions will have many compounded effects on top that.

1. There is trauma literature showing that traumatized children actually have changes in their brain structure when exposed to repeated trauma, particularly in the hippocampus and corpus callosum. This can be reversed

when children are placed in nurturing environments. Social isolation will only compound this trauma and long term damage.

2. There does not appear to be any health benefit to isolating the children in this manner. When people are in a shelter situation, they are to be treated as a family, and quarantined together. Furthermore, droplets of COVID-19 have been found to remain in the air for several hours, and there is mounting evidence that it may be transmitted by airborne transmission as well, so when they go for bathroom breaks or for their walks during their 1 hour out they are breathing in particles from other housemates.

3. The greatest risk of transmission to the children is actually the staff members, who are presumably coming and going from the homes. I would be most concerned with their hygiene practices. I would want to make sure that they are masking and wearing gloves and social distancing from the children. I would also want to ensure that the food preparation and handling is done in a safe way.

4. This practice of needing to "yell" to alert staff members that the children require food or a trip to the bathroom is cruel and inhumane. Again, these children have already been severely traumatized. This is likely to lead to urinary tract infections, urinary or fecal incontinence, and myriad other physical and psychological consequences.

5. Children require socialization for safe, healthy, and appropriate growth and development.

ii.   This isolation is cruel, inhumane, and extremely harmful to their health,

development, and overall well-being." *See* Attachment B at 2-4.

17. Sydney Fouche, MPH, of the University of Michigan Acute Care Research Unit was part of our

consultation with Dr. Ramanathan and fully shared concerns that the level of enforced isolation

described by our clients can cause extreme mental distress with limited benefits with respect to

disease transmission. *Id.*

18. Based on our clients' experiences, our clients' right pursuant to Flores to live in the least

restrictive setting possible, and the information provided by the medical and public health

experts we consulted, it is our firm belief that the policy as implemented at Bellaview was

harmful to our clients and we requested that it be ceased immediately and that such a practice

should not be implemented for future exposures.  *Id.*

19. We believe that it is critical that decisions about changes in the manner in which our clients are

cared for come from an evidence-based model and that we as the attorneys for the youth are

informed of all matters relating to our clients health and care so that we can inform our clients of

their rights and assist them in enforcing such rights. *Id.*

20. Through the initial communication, we provided Bethany and ORR the opportunity to provide us

with additional information needed to fully evaluate these practices:

a.   What is the intended protocol or policy?

b.   Are our clients' experiences consistent with it?

c.   What individual or entity developed the policies and practices implemented at Bellaview?

d.   What models, guidelines, or evidence are they based on?

e.   How long were/are they being implemented and what will trigger their use in future

scenarios?

Declaration of Ana Deveraux

7

f. Are these policies and practices being implemented in other therapeutic foster care settings? *See* Attachment B at 4-5.

21. In addition, based on our consultation with the aforementioned professionals specializing in child psychology, welfare, and health, we believed that the practices that our clients have reported were potentially inconsistent with Michigan Department of Health and Human Services foster care licensing. Because of this we sent a redacted copy of this letter Office of Children's Ombudsman Acting Director Ryan Spiedel, MDHHS Deputy Director for Children's Affairs Stacie Balden, and State Refugee Coordinator Benjamin Cabanaw, to promote prompt communication and resolution and prevent further harm to our clients and potentially other children in group home settings in Michigan. *Id.*

*Bethany Christian Services' Response*

22. Bethany Christian Services did not provide any written response but did briefly address our communication during a pre-scheduled quarterly meeting between Bethany and MIRC leadership on May 7, 2020. During that meeting, Bethany leadership said they received guidance from ORR regarding how to implement the quarantine response but that Bethany didn't feel they could provide us with any more information than that and we would have to await a response from ORR.

*ORR Response*

23. ORR Supervisory Federal Field Specialist, Jeff Ahlberg, responded with some initial questions about the situation and indicating ORR would be reviewing the situation. *See* Attachment B at 26.

24. We answered his questions and waited for a response. A week later, Mr. Ahlberg responded indicating that " The quarantine that occurred a this program occurred under the direction and supervision of an Office of Refugee Resettlement (ORR) epidemiologist in coordination with the local health Department" and that our clients' description of the confinement was not accurate. *See* Attachment B at 26.

25. Mr. Ahlberg also stated that "[s]hould a quarantine be deemed necessary by the epidemiologist and local health department in the future, I'm sure they will set the parameters of the quarantine according to their understanding of best medical practice at that time." *See* Attachment B at 26.

26. This response did not address any of our questions we responded noting that we still did not have any clarity at MIRC as to what policies were put in place at Bellaview and what would take place in the future at any Michigan ORR facility. Furthermore, Mr. Ahlberg expects us to take his word for it that our clients are not experiencing what they described to us without anything further. *See* Attachment B at 34.

27. Our concern is that either the policies were not implemented in the manner as designed or they were not experienced as desired. Either way, we don't have a way of getting to the issues at hand without more information. *See* Attachment B at 34.

28. I also raised the issue that on the multiple occasions we attempted to address our concerns directly with them, they believed they did not have the freedom to share with us information about our clients' care and the policies and protocols they put into place. Their inability to share emanates from ORR directives and this lack of information is still an issue. I requested that Mr. Ahlberg address this issue around information sharing and provide us with copies of the written directives provide to BCS for the Bellaview COVID-19 exposure and what BCS (and Samaritas as the other MI ORR provider) would be expected to follow in the event of future exposures or

positive COVID-19 tests since these relate directly to our clients' conditions of confinement. *See* Attachment B at 34.

29. Finally, Mr. Ahlberg said that "[t]his is an extraordinary request" and concluded that he would not provide us anything other than he already included in the previous email- an assurance that the matter had been looked into by ORR and other agencies. He further indicated that the only information we would have access to as attorneys would be information around reunification, even though we presented G-28s for these clients, they are in long term foster care with no prospect of reunification, and these matters related to the conditions of their detention in ORR custody, which is a central matter of our representation. *See* Attachment B at 37.

30. Separately, after all of the communication with Mr. Ahlberg, I received a response from the Policy Division at ORR, which had been copied on the email exchange. See Exhibit B at 43. This communication indicated that I should not approach ORR directly with concerns of this nature, but rather that I would need to go through Vera. I forwarded this email to Vera and have requested that they continue to advocate directly with ORR around access to information necessary to represent our clients but we do not believe that we should have to go through Vera in order to advocate directly for clients whom we represent.

*State Response*

31. As we had informed ORR and Bethany in my communication that I would do, I shared a redacted copy of the email about the COVID-19 response at Bellaview. Ben Cabanaw, the State Refugee Coordinator, which oversees Michigan's Unaccompanied Refugee Minor program, respondeded indicating he would look into the situation as Bellaview had one youth in URM who was subject to the policies. He provided them with guidance from the Michigan Department

of Health and Human Services- Child Services Agency and Center for Disease Control Guidance and ensured compliance with those. Mr. Cabanaw provided us with copies of that guidance, none of which bears any resemblance to what our clients experienced. *See* Attachment C at 4.

32. We also reached out to the Kent County Health Department to better understand what guidance they would have provided in this scenario. I spoke with various individuals who confirmed that they were aware of the exposure and would have responded, but directed me to a director who they believed would be able to accurately provide me with the information I sought but they were unable to do so due to a lack of familiarity with the situation.

*Update from Clients*

33. Given that we were receiving no concrete information from ORR or Bethany, we continued to inquire about the issues directly with our clients. After approximately two weeks, it appears the measures were lifted. From what we could gather, only two of the clients received COVID-19 testing, and they still had little understanding of what had occurred and why with regards to the change in policy.

34. In order for MIRC to effectively represent our clients, we must have an ongoing information exchange with ORR around these critical issues. Without such information or accountability, our clients have experienced traumatizing practices and we have no reason to believe this wouldn't be the case in the next instance of a COVID-19 positive exposure for youth in ORR custody in Michigan.

1    I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 10th day of

2    June, 2020, in Grand Rapids, Michigan.

3

4    _____

5

6                              Ana Devereaux

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Attachment A**

**Initial Request for Information**



Ana Devereaux <adevereaux@lsscm.org>

## COVID-19 Information Requests

Ana Devereaux <adevereaux@michiganimmigrant.org>                    Mon, Mar 30, 2020 at 9:22 PM
To: "Miller, Amanda J. (ACF)" <Amanda.Miller@acf.hhs.gov>, Hannah Mills <hmills@bethany.org>, "Bethany A. Caldwell" <bcaldwell@bethany.org>, "Tiffany M. Wobma" <twobma@bethany.org>, Jesse Garrison <jgarr1@samaritas.org>, Jeff Walters <JWalt@samaritas.org>, Amy LaNoue <ALaNo@samaritas.org>, Martha Hess <mhess@samaritas.org>, Stephanie Smith <ssmith@samaritas.org>, Christopher Johnson <CJohn5@samaritas.org>, Jose Parra <jparr@samaritas.org>
Cc: Susan Reed <susanree@michiganimmigrant.org>, Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>

Good evening, everyone,

I hope you all are staying safe. In light of the recent Flores/Lucas R filing decision and the ever-evolving situation with COVID-19, we have a few requests and questions. I'm including BCS and Samaritas staff as well as Amanda Miller in this email, because you may all have answers to some of the questions, so I'd like to ask that you please address any and all question that you are able to make sure we have the necessary information for our work in representing these youth.

First, we would like to be notified of any cases of children that have tested positive for COVID-19 in ORR care in MI, as well as any children who you believe should be tested but have not been tested for any reason and what that reason is.

Second, since the litigation requests that children be moved out of congregate care to smaller facilities and they've stopped placements in NY, CA, and WA, do you expect more children to be routed to MI's facilities?

Third, the restraining order also requires that by April 6 the Government provide the court, the court-appointed Special Master, and the lawyers representing the children data on all minors not released by then including their names, dates of apprehension, places of detention, and why they have not been released in eight states. The states are California, Illinois, Louisiana, Massachusetts, Michigan, New Jersey, New York, and Washington. We would like to request a copy of this document since it will name many of our clients/legal services recipients and have information about their cases and custody status?

Finally, we would like to ask if there are any new practices in the group homes that we should be aware of and could help advise clients on. For example, new (understandable) rules about leaving the group home and/or new practices regarding if or when a client could return after going AWOL? We're asking because the frequency of AWOLing, which we're usually pretty sympathetic to and want kids to be "forgiven" for and welcomed back into care, could now be putting other client residents at risk.

Thank you for any and all information you can share. Also, if I am missing someone from your organization that would have information to answer these questions, please feel free to include them.

Best,



### Ana Raquel Devereaux

Supervising Attorney | Michigan Immigrant Rights Center
Pronouns: she/her/ella
See www.mypronouns.org to learn more

**Immigration Law Intake:** (734) 239-6863
**Employment Law Intake:** (800) 968-4046
**Direct Line:** (616) 827-4080, Ext. 701
**Fax:** (616) 202-7835
**Address:** 1550 E. Beltline SE, Ste. 375
Grand Rapids, MI 49506

michiganimmigrant.org
welcomingmichigan.org

Please note that my work schedule is Monday through
Thursday  from 7:00 AM to 5:00 PM.

*This electronic communication may be subject to the attorney-client privilege and may contain confidential information. If you are not the intended recipient, any distribution, copying or disclosure is strictly prohibited.  If you have received this communication in error, please notify the sender immediately and delete this copy from your system. Thank you for your cooperation.*
*Esta comunicación electrónica puede estar sujeta al privilegio de abogado-cliente y puede contener información confidencial. Si no es el destinatario, cualquier distribución, copia o divulgación está estrictamente prohibida. Si recibió esta comunicación por error, notifique al remitente de inmediato y elimine esta copia de su sistema. Gracias por su cooperación.*



Ana Devereaux <adevereaux@lsscm.org>

## COVID-19 Information Requests

**Miller, Amanda J. (ACF)** <Amanda.Miller@acf.hhs.gov>                    Tue, Mar 31, 2020 at 9:28 AM
To: Ana Devereaux <adevereaux@michiganimmigrant.org>, Hannah Mills <hmills@bethany.org>, "Bethany A. Caldwell"
<bcaldwell@bethany.org>, "Tiffany M. Wobma" <twobma@bethany.org>, Jesse Garrison <jgarr1@samaritas.org>, Jeff
Walters <JWalt@samaritas.org>, Amy LaNoue <ALaNo@samaritas.org>, Martha Hess <mhess@samaritas.org>, Stephanie
Smith <ssmith@samaritas.org>, Christopher Johnson <CJohn5@samaritas.org>, Jose Parra <jparr@samaritas.org>
Cc: Susan Reed <susanree@michiganimmigrant.org>, Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>

Good morning Ana,

Thank you for the email and inquiry – we'll get back to you as soon as we can.

Thanks,

Amanda

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Amanda Miller, MPH, LMSW

Federal Field Specialist

Division of Unaccompanied Children Operations

Office of Refugee Resettlement

U.S. Dept. of Health and Human Services

Phone:  202-823-2353

**From:** Ana Devereaux <adevereaux@michiganimmigrant.org>
**Sent:** Tuesday, March 31, 2020 7:46 AM
**To:** Miller, Amanda J. (ACF) <Amanda.Miller@acf.hhs.gov>; Hannah Mills <hmills@bethany.org>; Bethany A.
Caldwell <bcaldwell@bethany.org>; Tiffany M. Wobma <twobma@bethany.org>; Jesse Garrison
<jgarr1@samaritas.org>; Jeff Walters <JWalt@samaritas.org>; Amy LaNoue <ALaNo@samaritas.org>; Martha
Hess <mhess@samaritas.org>; Stephanie Smith <ssmith@samaritas.org>; Christopher Johnson
<CJohn5@samaritas.org>; Jose Parra <jparr@samaritas.org>
**Cc:** Susan Reed <susanree@michiganimmigrant.org>; Laura Rocio Vargas Quintero
<lrocio@michiganimmigrant.org>
**Subject:** Re: COVID-19 Information Requests

Good morning,

It was brought to my attention that you all may not have seen the litigation.

Here's class counsel's website on the litigation: https://protect2.fireeye.com/url?k=ae3d98ed-f2698191-ae3da9d2-0cc47adc5fa2-6439e6616c277353&u=https://youthlaw.org/case/lucas-r-v-azar/

I've also attached the judge's temporary restraining order.

## Ana Raquel Devereaux

Supervising Attorney | Michigan Immigrant Rights Center

Pronouns: she/her/ella

See https://protect2.fireeye.com/url?k=a1cb9438-fd9f8d44-a1cba507-0cc47adc5fa2-4d5a8cca4489b6a6&u=http://www.mypronouns.org/ to learn more

**Immigration Law Intake:** (734) 239-6863

**Employment Law Intake:** (800) 968-4046

**Direct Line:** (616) 827-4080, Ext. 701

**Fax:** (616) 202-7835

**Address:** 1550 E. Beltline SE, Ste. 375

Grand Rapids, MI 49506

michiganimmigrant.org

welcomingmichigan.org

Please note that my work schedule is Monday through Thursday  from 7:00 AM to 5:00 PM.

*This electronic communication may be subject to the attorney-client privilege and may contain confidential information. If you are not the intended recipient, any distribution, copying or disclosure is strictly prohibited.  If you have received this communication in error, please notify the sender immediately and delete this copy from your system. Thank you for your cooperation.*

*Esta comunicación electrónica puede estar sujeta al privilegio de abogado-cliente y puede contener información confidencial. Si no es el destinatario, cualquier distribución, copia o divulgación está estrictamente prohibida. Si recibió esta comunicación por error, notifique al remitente de inmediato y elimine esta copia de su sistema. Gracias por su cooperación.*

On Mon, Mar 30, 2020 at 9:22 PM Ana Devereaux <adevereaux@michiganimmigrant.org> wrote:

Good evening, everyone,

I hope you all are staying safe. In light of the recent Flores/Lucas R filing decision and the ever-evolving situation with COVID-19, we have a few requests and questions. I'm including BCS and Samaritas staff as well as Amanda Miller in this email, because you may all have answers to some of the questions, so I'd like to ask that you please address any and all question that you are able to make sure we have the necessary information for our work in representing these youth.

First, we would like to be notified of any cases of children that have tested positive for COVID-19 in ORR care in MI, as well as any children who you believe should be tested but have not been tested for any reason and what that reason is.

Second, since the litigation requests that children be moved out of congregate care to smaller facilities and they've stopped placements in NY, CA, and WA, do you expect more children to be routed to MI's facilities?

Third, the restraining order also requires that by April 6 the Government provide the court, the court-appointed Special Master, and the lawyers representing the children data on all minors not released by then including their names, dates of apprehension, places of detention, and why they have not been released in eight states. The states are California, Illinois, Louisiana, Massachusetts, Michigan, New Jersey, New York, and Washington.  We would like to request a copy of this document since it will name many of our clients/legal services recipients and have information about their cases and custody status?

Finally, we would like to ask if there are any new practices in the group homes that we should be aware of and could help advise clients on. For example, new (understandable) rules about leaving the group home and/or new practices regarding if or when a client could return after going AWOL? We're asking because the frequency of AWOLing, which we're usually pretty sympathetic to and want kids to be "forgiven" for and welcomed back into care, could now be putting other client residents at risk.

Thank you for any and all information you can share. Also, if I am missing someone from your organization that would have information to answer these questions, please feel free to include them.

Best,

**Ana Raquel Devereaux**

Supervising Attorney | Michigan Immigrant Rights Center

Pronouns: she/her/ella

See https://protect2.fireeye.com/url?k=d706ba6e-8b52a312-d7068b51-0cc47adc5fa2-3bd06ff7cd71b15d&u=http://www.mypronouns.org/ to learn more

**Immigration Law Intake:**  (734) 239-6863

**Employment Law Intake:**  (800) 968-4046

**Direct Line:**  (616) 827-4080, Ext. 701

6

**Fax:** (616) 202-7835

**Address:** 1550 E. Beltline SE, Ste. 375

Grand Rapids, MI 49506

michiganimmigrant.org

welcomingmichigan.org

Please note that my work schedule is Monday through Thursday from 7:00 AM to 5:00 PM.

[Quoted text hidden]



Ana Devereaux <adevereaux@lsscm.org>

## COVID-19 Information Requests

Ana Devereaux <adevereaux@michiganimmigrant.org>                    Tue, Mar 31, 2020 at 10:52 AM
To: "Miller, Amanda J. (ACF)" <Amanda.Miller@acf.hhs.gov>
Cc: Hannah Mills <hmills@bethany.org>, "Bethany A. Caldwell" <bcaldwell@bethany.org>, "Tiffany M. Wobma" <twobma@bethany.org>, Jesse Garrison <jgarr1@samaritas.org>, Jeff Walters <JWalt@samaritas.org>, Amy LaNoue <ALaNo@samaritas.org>, Martha Hess <mhess@samaritas.org>, Stephanie Smith <ssmith@samaritas.org>, Christopher Johnson <CJohn5@samaritas.org>, Jose Parra <jparr@samaritas.org>, Susan Reed <susanree@michiganimmigrant.org>, Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>

Thanks, Amanda.



### Ana Raquel Devereaux

Supervising Attorney | Michigan Immigrant Rights Center
Pronouns: she/her/ella
See www.mypronouns.org to learn more

**Immigration Law Intake:** (734) 239-6863
**Employment Law Intake:** (800) 968-4046
**Direct Line:** (616) 827-4080, Ext. 701
**Fax:** (616) 202-7835
**Address:** 1550 E. Beltline SE, Ste. 375
Grand Rapids, MI 49506

michiganimmigrant.org
welcomingmichigan.org



Please note that my work schedule is Monday through Thursday  from 7:00 AM to 5:00 PM.

*This electronic communication may be subject to the attorney-client privilege and may contain confidential information. If you are not the intended recipient, any distribution, copying or disclosure is strictly prohibited.  If you have received this communication in error, please notify the sender immediately and delete this copy from your system. Thank you for your cooperation.*
*Esta comunicación electrónica puede estar sujeta al privilegio de abogado-cliente y puede contener información confidencial. Si no es el destinatario, cualquier distribución, copia o divulgación está estrictamente prohibida. Si recibió esta comunicación por error, notifique al remitente de inmediato y elimine esta copia de su sistema. Gracias por su cooperación.*

[Quoted text hidden]



Ana Devereaux <adevereaux@lsscm.org>

## COVID-19 Information Requests

**Miller, Amanda J. (ACF)** <Amanda.Miller@acf.hhs.gov>                     Wed, Apr 1, 2020 at 4:22 PM
To: Ana Devereaux <adevereaux@michiganimmigrant.org>
Cc: Hannah Mills <hmills@bethany.org>, "Bethany A. Caldwell" <bcaldwell@bethany.org>, "Tiffany M. Wobma" <twobma@bethany.org>, Jesse Garrison <jgarr1@samaritas.org>, Jeff Walters <JWalt@samaritas.org>, Amy LaNoue <ALaNo@samaritas.org>, Martha Hess <mhess@samaritas.org>, Stephanie Smith <ssmith@samaritas.org>, Christopher Johnson <CJohn5@samaritas.org>, Jose Parra <jparr@samaritas.org>, Susan Reed <susanree@michiganimmigrant.org>, Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>

Hi Ana,

I've been advised that due to ongoing litigation, we're unable to disclose further information at this time. If you'd like to discuss further, please let me know, and I can provide your contact information to our Policy Division directly.

Thanks,

Amanda

*************************************

Amanda Miller, MPH, LMSW

Federal Field Specialist

Division of Unaccompanied Children Operations

Office of Refugee Resettlement

U.S. Dept. of Health and Human Services

Phone:  202-823-2353

**From:** Ana Devereaux <adevereaux@michiganimmigrant.org>
**Sent:** Tuesday, March 31, 2020 10:53 AM
**To:** Miller, Amanda J. (ACF) <Amanda.Miller@acf.hhs.gov>
**Cc:** Hannah Mills <hmills@bethany.org>; Bethany A. Caldwell <bcaldwell@bethany.org>; Tiffany M. Wobma <twobma@bethany.org>; Jesse Garrison <jgarr1@samaritas.org>; Jeff Walters <JWalt@samaritas.org>; Amy LaNoue <ALaNo@samaritas.org>; Martha Hess <mhess@samaritas.org>; Stephanie Smith <ssmith@samaritas.org>; Christopher Johnson <CJohn5@samaritas.org>; Jose Parra <jparr@samaritas.org>; Susan Reed <susanree@michiganimmigrant.org>; Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>
**Subject:** Re: COVID-19 Information Requests

Thanks, Amanda.

8

**Ana Raquel Devereaux**

Supervising Attorney | Michigan Immigrant Rights
Center

Pronouns: she/her/ella

See https://protect2.fireeye.com/url?k=5156c520-0d03cc33-
5156f41f-0cc47adb5650-eef4f33da50f72a7&u=http://www.
mypronouns.org/ to learn more

**Immigration Law Intake:** (734) 239-6863

**Employment Law Intake:** (800) 968-4046

**Direct Line:** (616) 827-4080, Ext. 701

**Fax:** (616) 202-7835

**Address:** 1550 E. Beltline SE, Ste. 375

Grand Rapids, MI 49506

michiganimmigrant.org

welcomingmichigan.org

Please note that my work schedule is Monday through
Thursday  from 7:00 AM to 5:00 PM.

*This electronic communication may be subject to the attorney-client privilege and may contain confidential information. If you are not the
intended recipient, any distribution, copying or disclosure is strictly prohibited.  If you have received this communication in error, please
notify the sender immediately and delete this copy from your system. Thank you for your cooperation.*

*Esta comunicación electrónica puede estar sujeta al privilegio de abogado-cliente y puede contener información confidencial. Si no es el
destinatario, cualquier distribución, copia o divulgación está estrictamente prohibida. Si recibió esta comunicación por error, notifique al
remitente de inmediato y elimine esta copia de su sistema. Gracias por su cooperación.*

On Tue, Mar 31, 2020 at 9:28 AM Miller, Amanda J. (ACF) <Amanda.Miller@acf.hhs.gov> wrote:

> Good morning Ana,
>
> Thank you for the email and inquiry – we'll get back to you as soon as we can.
>
> Thanks,

10

Amanda

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Amanda Miller, MPH, LMSW

Federal Field Specialist

Division of Unaccompanied Children Operations

Office of Refugee Resettlement

U.S. Dept. of Health and Human Services

Phone:  202-823-2353


**From:** Ana Devereaux <adevereaux@michiganimmigrant.org>
**Sent:** Tuesday, March 31, 2020 7:46 AM
**To:** Miller, Amanda J. (ACF) <Amanda.Miller@acf.hhs.gov>; Hannah Mills <hmills@bethany.org>; Bethany A. Caldwell <bcaldwell@bethany.org>; Tiffany M. Wobma <twobma@bethany.org>; Jesse Garrison <jgarr1@samaritas.org>; Jeff Walters <JWalt@samaritas.org>; Amy LaNoue <ALaNo@samaritas.org>; Martha Hess <mhess@samaritas.org>; Stephanie Smith <ssmith@samaritas.org>; Christopher Johnson <CJohn5@samaritas.org>; Jose Parra <jparr@samaritas.org>
**Cc:** Susan Reed <susanree@michiganimmigrant.org>; Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>
**Subject:** Re: COVID-19 Information Requests


Good morning,


It was brought to my attention that you all may not have seen the litigation.


Here's class counsel's website on the litigation: https://protect2.fireeye.com/url?k=16901963-4ac51070-1690285c-0cc47adb5650-ec226157f8a3011e&u=https://protect2.fireeye.com/url?k=ae3d98ed-f2698191-ae3da9d2-0cc47adc5fa2-6439e6616c277353&u=https://youthlaw.org/case/lucas-r-v-azar/


I've also attached the judge's temporary restraining order.


## Ana Raquel Devereaux

Supervising Attorney | Michigan Immigrant Rights Center

Pronouns: she/her/ella

See https://protect2.fireeye.com/url?k=5dc30008-0196091b-5dc33137-0cc47adb5650-a7e502b4c48e3fcf&u=https://protect2.fireeye.com/url?k=a1cb9438-fd9f8d44-a1cba507-

10

0cc47adc5fa2-4d5a8cca4489b6a6&
u=http://www.mypronouns.org/ to learn more

**Immigration Law Intake:** (734) 239-6863

**Employment Law Intake:** (800) 968-4046

**Direct Line:** (616) 827-4080, Ext. 701

**Fax:** (616) 202-7835

**Address:** 1550 E. Beltline SE, Ste. 375

Grand Rapids, MI 49506

michiganimmigrant.org

welcomingmichigan.org

Please note that my work schedule is Monday through
Thursday from 7:00 AM to 5:00 PM.

[Quoted text hidden]

[Quoted text hidden]

Good evening, everyone,

[Quoted text hidden]

Best,

## Ana Raquel Devereaux

[Quoted text hidden]

See https://protect2.fireeye.com/url?k=8460ea9b-d835e388-
8460dba4-0cc47adb5650-a88c3aa6ef0028df&u=https://
protect2.fireeye.com/url?k=d706ba6e-8b52a312-d7068b51-
0cc47adc5fa2-3bd06ff7cd71b15d&
u=http://www.mypronouns.org/ to learn more

**Immigration Law Intake:** (734) 239-6863

**Employment Law Intake:** (800) 968-4046

Case 2:85-cv-04544-DMG-AGR   Document 823   Filed 06/17/20   Page 47 of 137   Page ID
#:38176

**Direct Line:**  (616) 827-4080, Ext. 701

**Fax:**  (616) 202-7835

**Address:** 1550 E. Beltline SE, Ste. 375

Grand Rapids, MI 49506

michiganimmigrant.org

welcomingmichigan.org

Please note that my work schedule is Monday through
Thursday  from 7:00 AM to 5:00 PM.

[Quoted text hidden]



Ana Devereaux <adevereaux@lsscm.org>

## COVID-19 Information Requests

Ana Devereaux <adevereaux@michiganimmigrant.org>                    Wed, Apr 1, 2020 at 4:34 PM
To: "Miller, Amanda J. (ACF)" <Amanda.Miller@acf.hhs.gov>
Cc: Hannah Mills <hmills@bethany.org>, "Bethany A. Caldwell" <bcaldwell@bethany.org>, "Tiffany M. Wobma"
<twobma@bethany.org>, Jesse Garrison <jgarr1@samaritas.org>, Jeff Walters <JWalt@samaritas.org>, Amy LaNoue
<ALaNo@samaritas.org>, Martha Hess <mhess@samaritas.org>, Stephanie Smith <ssmith@samaritas.org>, Christopher
Johnson <CJohn5@samaritas.org>, Jose Parra <jparr@samaritas.org>, Susan Reed <susanree@michiganimmigrant.org>,
Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>

Hi Amanda,

Yes, please connect me with them, as we are definitely in need of this information.



**Ana Raquel Devereaux**

Supervising Attorney | Michigan Immigrant Rights
Center
Pronouns: she/her/ella
See www.mypronouns.org to learn more

**Immigration Law Intake:** (734) 239-6863
**Employment Law Intake:** (800) 968-4046
**Direct Line:** (616) 827-4080, Ext. 701
**Fax:** (616) 202-7835
**Address:** 1550 E. Beltline SE, Ste. 375
Grand Rapids, MI 49506

michiganimmigrant.org
welcomingmichigan.org



Please note that my work schedule is Monday through
Thursday from 7:00 AM to 5:00 PM.

*This electronic communication may be subject to the attorney-client privilege and may contain confidential information. If you are not the intended recipient, any distribution, copying or disclosure is strictly prohibited.  If you have received this communication in error, please notify the sender immediately and delete this copy from your system. Thank you for your cooperation.*
*Esta comunicación electrónica puede estar sujeta al privilegio de abogado-cliente y puede contener información confidencial. Si no es el destinatario, cualquier distribución, copia o divulgación está estrictamente prohibida. Si recibió esta comunicación por error, notifique al remitente de inmediato y elimine esta copia de su sistema. Gracias por su cooperación.*

[Quoted text hidden]



Ana Devereaux <adevereaux@lsscm.org>

## COVID-19 Information Requests

**Miller, Amanda J. (ACF)** <Amanda.Miller@acf.hhs.gov>                    Wed, Apr 1, 2020 at 4:41 PM
To: Ana Devereaux <adevereaux@michiganimmigrant.org>
Cc: Hannah Mills <hmills@bethany.org>, "Bethany A. Caldwell" <bcaldwell@bethany.org>, "Tiffany M. Wobma"
<twobma@bethany.org>, Jesse Garrison <jgarr1@samaritas.org>, Jeff Walters <JWalt@samaritas.org>, Amy LaNoue
<ALaNo@samaritas.org>, Martha Hess <mhess@samaritas.org>, Stephanie Smith <ssmith@samaritas.org>, Christopher
Johnson <CJohn5@samaritas.org>, Jose Parra <jparr@samaritas.org>, Susan Reed <susanree@michiganimmigrant.org>,
Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>

Hi Ana, no problem. I'd be happy to connect you.


Best,

Amanda


*************************************

Amanda Miller, MPH, LMSW

Federal Field Specialist

Division of Unaccompanied Children Operations

Office of Refugee Resettlement

U.S. Dept. of Health and Human Services

Phone:  202-823-2353


**From:** Ana Devereaux <adevereaux@michiganimmigrant.org>
**Sent:** Wednesday, April 1, 2020 4:34 PM
**To:** Miller, Amanda J. (ACF) <Amanda.Miller@acf.hhs.gov>
**Cc:** Hannah Mills <hmills@bethany.org>; Bethany A. Caldwell <bcaldwell@bethany.org>; Tiffany M. Wobma
<twobma@bethany.org>; Jesse Garrison <jgarr1@samaritas.org>; Jeff Walters <JWalt@samaritas.org>; Amy
LaNoue <ALaNo@samaritas.org>; Martha Hess <mhess@samaritas.org>; Stephanie Smith
<ssmith@samaritas.org>; Christopher Johnson <CJohn5@samaritas.org>; Jose Parra <jparr@samaritas.org>;
Susan Reed <susanree@michiganimmigrant.org>; Laura Rocio Vargas Quintero
<lrocio@michiganimmigrant.org>
**Subject:** Re: COVID-19 Information Requests


Hi Amanda,


Yes, please connect me with them, as we are definitely in need of this information.

## Ana Raquel Devereaux

Supervising Attorney | Michigan Immigrant Rights Center

Pronouns: she/her/ella

See https://protect2.fireeye.com/url?k=d7d24eeb-8b865797-d7d27fd4-0cc47adc5fa2-cb793031601ef134&u=http://www.mypronouns.org/ to learn more

**Immigration Law Intake:**  (734) 239-6863

**Employment Law Intake:**  (800) 968-4046

**Direct Line:**  (616) 827-4080, Ext. 701

**Fax:**  (616) 202-7835

**Address:** 1550 E. Beltline SE, Ste. 375

Grand Rapids, MI 49506

michiganimmigrant.org

welcomingmichigan.org

Please note that my work schedule is Monday through Thursday  from 7:00 AM to 5:00 PM.

*This electronic communication may be subject to the attorney-client privilege and may contain confidential information. If you are not the intended recipient, any distribution, copying or disclosure is strictly prohibited.  If you have received this communication in error, please notify the sender immediately and delete this copy from your system. Thank you for your cooperation.*

*Esta comunicación electrónica puede estar sujeta al privilegio de abogado-cliente y puede contener información confidencial. Si no es el destinatario, cualquier distribución, copia o divulgación está estrictamente prohibida. Si recibió esta comunicación por error, notifique al remitente de inmediato y elimine esta copia de su sistema. Gracias por su cooperación.*

On Wed, Apr 1, 2020 at 4:22 PM Miller, Amanda J. (ACF) <Amanda.Miller@acf.hhs.gov> wrote:

Hi Ana,

I've been advised that due to ongoing litigation, we're unable to disclose further information at this time. If you'd like to discuss further, please let me know, and I can provide your contact information to our Policy Division directly.

Thanks,

Amanda


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Amanda Miller, MPH, LMSW

Federal Field Specialist

Division of Unaccompanied Children Operations

Office of Refugee Resettlement

U.S. Dept. of Health and Human Services

Phone: 202-823-2353


**From:** Ana Devereaux <adevereaux@michiganimmigrant.org>
**Sent:** Tuesday, March 31, 2020 10:53 AM
**To:** Miller, Amanda J. (ACF) <Amanda.Miller@acf.hhs.gov>
**Cc:** Hannah Mills <hmills@bethany.org>; Bethany A. Caldwell <bcaldwell@bethany.org>; Tiffany M. Wobma <twobma@bethany.org>; Jesse Garrison <jgarr1@samaritas.org>; Jeff Walters <JWalt@samaritas.org>; Amy LaNoue <ALaNo@samaritas.org>; Martha Hess <mhess@samaritas.org>; Stephanie Smith <ssmith@samaritas.org>; Christopher Johnson <CJohn5@samaritas.org>; Jose Parra <jparr@samaritas.org>; Susan Reed <susanree@michiganimmigrant.org>; Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>
**Subject:** Re: COVID-19 Information Requests


Thanks, Amanda.

### Ana Raquel Devereaux

Supervising Attorney | Michigan Immigrant Rights Center

Pronouns: she/her/ella

See https://protect2.fireeye.com/url?k=0e439db1-521784cd-0e43ac8e-0cc47adc5fa2-6958319d91ca1633&u=https://protect2.fireeye.com/url?k=5156c520-0d03cc33-5156f41f-0cc47adb5650-eef4f33da50f72a7&u=http://www.mypronouns.org/ to learn more

**Immigration Law Intake:** (734) 239-6863

**Employment Law Intake:** (800) 968-4046

**Direct Line:** (616) 827-4080, Ext. 701

**Fax:** (616) 202-7835

**Address:** 1550 E. Beltline SE, Ste. 375

Grand Rapids, MI 49506

michiganimmigrant.org

welcomingmichigan.org

Please note that my work schedule is Monday through
Thursday  from 7:00 AM to 5:00 PM.

[Quoted text hidden]

[Quoted text hidden]

[Quoted text hidden]
[Quoted text hidden]

Here's class counsel's website on the litigation: https://protect2.fireeye.com/url?k=f33df731-af69ee4d-f33dc60e-
0cc47adc5fa2-b9df760d26db54b6&u=https://protect2.fireeye.com/url?k=16901963-4ac51070-1690285c-
0cc47adb5650-ec226157f8a3011e&u=https://protect2.fireeye.com/url?k=ae3d98ed-f2698191-ae3da9d2-
0cc47adc5fa2-6439e6616c277353&u=https://youthlaw.org/case/lucas-r-v-azar/

I've also attached the judge's temporary restraining order.

## Ana Raquel Devereaux

Supervising Attorney | Michigan Immigrant Rights
Center

Pronouns: she/her/ella

See https://protect2.fireeye.com/url?k=0ca85f17-50fc466b-
0ca86e28-0cc47adc5fa2-38d08f2744ab4c68&u=https://
protect2.fireeye.com/url?k=5dc30008-0196091b-5dc33137-
0cc47adb5650-a7e502b4c48e3fcf&u=https://protect2.fireeye.
com/url?k=a1cb9438-fd9f8d44-a1cba507-0cc47adc5fa2-
4d5a8cca4489b6a6&u=http://www.mypronouns.org/ to learn
more

**Immigration Law Intake:**  (734) 239-6863

**Employment Law Intake:**  (800) 968-4046

**Direct Line:**  (616) 827-4080, Ext. 701

18

**Fax:** (616) 202-7835

**Address:** 1550 E. Beltline SE, Ste. 375
Grand Rapids, MI 49506

michiganimmigrant.org

welcomingmichigan.org

Please note that my work schedule is Monday through
Thursday  from 7:00 AM to 5:00 PM.

[Quoted text hidden]

[Quoted text hidden]

Good evening, everyone,

[Quoted text hidden]

Best,

### Ana Raquel Devereaux

[Quoted text hidden]

See https://protect2.fireeye.com/url?k=0e14c267-5240db1b-
0e14f358-0cc47adc5fa2-84a7f942ccee0f34&u=https://
protect2.fireeye.com/url?k=8460ea9b-d835e388-8460dba4-
0cc47adb5650-a88c3aa6ef0028df&u=https://protect2.fireeye.
com/url?k=d706ba6e-8b52a312-d7068b51-0cc47adc5fa2-
3bd06ff7cd71b15d&u=http://www.mypronouns.org/ to learn
more

**Immigration Law Intake:** (734) 239-6863

**Employment Law Intake:** (800) 968-4046

**Direct Line:** (616) 827-4080, Ext. 701

**Fax:** (616) 202-7835

**Address:** 1550 E. Beltline SE, Ste. 375

19

Grand Rapids, MI 49506

michiganimmigrant.org

welcomingmichigan.org



Please note that my work schedule is Monday through
Thursday  from 7:00 AM to 5:00 PM.

[Quoted text hidden]



Ana Devereaux <adevereaux@lsscm.org>

---

## COVID-19 Information Requests

**Stephanie Smith** <ssmith@samaritas.org>              Wed, Apr 1, 2020 at 7:55 PM
To: Ana Devereaux <adevereaux@michiganimmigrant.org>, "Miller, Amanda J. (ACF)" <Amanda.Miller@acf.hhs.gov>,
Hannah Mills <hmills@bethany.org>, "Bethany A. Caldwell" <bcaldwell@bethany.org>, "Tiffany M. Wobma"
<twobma@bethany.org>, Jesse Garrison <jgarr1@samaritas.org>, Jeff Walters <JWalt@samaritas.org>, Amy LaNoue
<ALaNo@samaritas.org>, Martha Hess <mhess@samaritas.org>, Christopher Johnson <CJohn5@samaritas.org>, Jose
Parra <jparr@samaritas.org>
Cc: Susan Reed <susanree@michiganimmigrant.org>, Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>

Hello Ana,

At this time, our group homes are practicing and will continue to practice self-isolation until the Stay Home, Stay Safe
order is lifted. Our youth are able to go outside for walks or go play soccer or another sport in the park, but are not at
this time doing outings or activities in the community.

Thank you,

Stephanie Smith

Program Manager, Refugee Youth Services

**Samaritas**

Nussdorfer Center, 1545 Keystone Ave. Lansing, MI 48911

Direct Phone: (517) 827-5133

Main Office: (517) 321-7663  Fax: (517) 394-7688

Email: ssmith@samaritas.org

**From:** Ana Devereaux <adevereaux@michiganimmigrant.org>
**Sent:** Monday, March 30, 2020 9:23 PM
**To:** Miller, Amanda J. (ACF) <Amanda.Miller@acf.hhs.gov>; Hannah Mills <hmills@bethany.org>; Bethany A.
Caldwell <bcaldwell@bethany.org>; Tiffany M. Wobma <twobma@bethany.org>; Jesse Garrison
<jgarr1@samaritas.org>; Jeff Walters <JWalt@samaritas.org>; Amy LaNoue <ALaNo@samaritas.org>; Martha
Hess <mhess@samaritas.org>; Stephanie Smith <ssmith@samaritas.org>; Christopher Johnson
<CJohn5@samaritas.org>; Jose Parra <jparr@samaritas.org>
**Cc:** Susan Reed <susanree@michiganimmigrant.org>; Laura Rocio Vargas Quintero
<lrocio@michiganimmigrant.org>
**Subject:** COVID-19 Information Requests

21

[Quoted text hidden]

[Quoted text hidden]



Ana Devereaux <adevereaux@lsscm.org>

---

## COVID-19 Information Requests

**Tiffany Wobma** <twobma@bethany.org>                                      Thu, Apr 2, 2020 at 1:53 PM
To: Stephanie Smith <ssmith@samaritas.org>, Ana Devereaux <adevereaux@michiganimmigrant.org>,
"amanda.miller@acf.hhs.gov" <amanda.miller@acf.hhs.gov>, Hannah Mills <hmills@bethany.org>, Beth Caldwell
<bcaldwell@bethany.org>, Jesse Garrison <jgarr1@samaritas.org>, Jeff Walters <JWalt@samaritas.org>, Amy LaNoue
<ALaNo@samaritas.org>, Martha Hess <mhess@samaritas.org>, Christopher Johnson <CJohn5@samaritas.org>, Jose
Parra <jparr@samaritas.org>
Cc: Susan Reed <susanree@michiganimmigrant.org>, Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>

Bethany is implementing the same adjustments, and for youth who leave without permission for an unauthorized
outing, we are requiring youth to wash hands, change clothes, and shower upon return.



**Tiffany Wobma**
UC Program Manager

Refugee and Immigrant Children Services
**Bethany Christian Services of Michigan**

C: (616) 250-3284 | **Bethany.org**
1050 36th Street SE, Grand Rapids, Michigan (map)

[Quoted text hidden]
NOTICE:

This e-mail is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged,
confidential, and exempt from disclosure under applicable law. If you have received this communication in error, please do not distribute it.
Please notify the sender by e-mail at the address shown and delete the original message. Thank you.

Este e-mail es solamente para el uso del individuo o la entidad a la cual se dirige y puede contener informacion privilegiada, confidencial y
exenta de acceso bajo la ley aplicable. Si usted ha recibido esta comunicacion por error, por favor no lo distribuya. Favor notificar al remitente
del e-mail a la direccion mostrada y elimine el mensaje original. Gracias.

**Attachment B**

**Email Exchange with ORR**

Michigan Advocacy Program Mail - COVID-19 Policies and Practices at Bellaview



Ana Devereaux <adevereaux@lsscm.org>

## COVID-19 Policies and Practices at Bellaview

**Ana Devereaux** <adevereaux@michiganimmigrant.org>                    Wed, May 6, 2020 at 10:56 AM
To: "Miller, Amanda J. (ACF)" <Amanda.Miller@acf.hhs.gov>, Hannah Mills <hmills@bethany.org>, "Lukas G. Ziomkowski" <lziomkowski@bethany.org>, "Bethany A. Caldwell" <bcaldwell@bethany.org>, "Tiffany M. Wobma" <twobma@bethany.org>, "Autumn G. Olson" <aolson@bethany.org>, Nicole Johnson <njohnson@bethany.org>
Cc: Susan Reed <susanree@michiganimmigrant.org>, Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>, Carlos Holguín <crholguin@centerforhumanrights.email>, "UACPolicy (ACF)" <UACPolicy@acf.hhs.gov>, "De LA Cruz, James (ACF)" <James.DeLACruz@acf.hhs.gov>, David.Fink@acf.hhs.gov, Sarah.B.Fabian@usdoj.gov, aordin@strumwooch.com

To all interested parties:

I am writing to inform you and request information about our clients' wellbeing in federal immigration custody. Michigan Immigrant Rights Center attorneys represent all the girls currently residing at the long-term foster care therapeutic group home run by Bethany Christian Services known as Bellaview. I supervise those attorneys. Forms G-28 for our clients are attached.

The Alien Numbers and names of our clients are as follows:

| F     G | L       |
|---------|---------|
| E    J  | V     R |
| E    E  | B    L  |
| A    I  | L    A  |
| V    d  C | A    G |
| N    T    L | H    A |

On March 30, 2020, I emailed Bethany Christian Services, ORR, and Samaritas, requesting information about any positive COVID-19 testing among our clients, any children who they believed needed testing but have not received it, as well as any new practices that would be implanted in regards to COVID-19. Bethany and Samaritas informed me that they would be following Michigan's "stay home stay safe" orders and requiring handwashing, shower, and change of clothes for youth who engaged in an unauthorized outing. Amanda Miller directed me to ORR's policy division, indicating they could not share information with me at a local level due to litigation. I contacted, but never received any information from the policy division in response to my questions.

On April 22, 2020, MIRC staff attorney Jennifer Gallardo emailed Hannah Mills, Regional Line Supervisor at Bethany to inquire about a potential exposure to COVID-19 at Bellaview that we had learned about through a third party, and request information about any new procedures that would be put into place and testing that would occur for youth or staff.  Hannah Mills responded "Yes, and as you know, we are unable to share much information. If this were the case, we would go into a 14 day quarantine from the date of exposure, and follow the directives of ORR and the local health department. ORR and the health department will determine if further testing needs to be done, dependent on the symptoms or concern of those who have been in contact with the youth.  Should you need further information, I would encourage you to connect to ORR who might be able to share this information with you directly." I sought clarification as to why she couldn't provide this information directly to us, but never received a response.

1

Having also learned about a "lockdown" that was possibly occurring at Bellaview through a third party, but not receiving any information from Bethany about it, we set up video visits with our clients who reside at the facility and were given information about their care that raised serious concerns about our clients' wellbeing.

Our clients consistently described the following practices:

- **Being confined to their rooms for 23 hours a day (some have roommates, some do not).**
- **Being allowed one single hour out of their rooms each day; it is staggered so other youth are not out at the same time.**
- **Staff bring meals to their rooms.**
- **Youth needing to "yell" from their rooms for staff if they want food between meals or if they need to use the shared bathroom.**
- **Youth reported they can "earn" use of a tablet by obeying rules and doing their chores, so it is possible for some not to have tablets.**
- **When they have tablets, they attend daily house meetings by opening their doors and joining via the tablets and they can call friends on the tablets and do schoolwork.**

None of our clients believed they had been tested for COVID-19. The potential duration of these practices wasn't clear to our clients, but some believed it would last about ten days and possibly be over around May 2, 2020. We have not had the chance to communicate with our clients since May 2, 2020, to learn whether the practices are still ongoing.  However, it's our reasonable assumption that this same set of practices would resume in the likely event of future known exposure.

Despite having directly sought it, we had no meaningful information from BCS or ORR as to what the actual house policy was, where it came from, or the particular risk factors at play with respect to our clients' actual exposure to COVID-19. The information we received from third parties and our clients gave us significant pause because it brought to mind frameworks from carceral settings, specifically solitary confinement models that only allow a person outside of their cell for one hour per day. This did not reflect our understanding of how a group foster home should be operating as a "least restrictive" setting -- a home, rather than as a detention or higher security facility.  Even without medical or public health training, we could see little rationale for such highly restrictive practices in a group home, especially when the home only contains six girls. But acknowledging our lack of medical expertise and not having any information from ORR as to where the policy came from or what evidence or standards it might be based upon, we reached out to medical and public health experts to understand what best practices would be for responding to a known COVID-19 exposure in a congregate care setting of this nature.

We spoke with Dr. Amy Cohen, MD,  Dr. Vidya Ramanathan, MD,MPH, and Sydney Fouche, MPH, sharing the details we received about the daily experience of our clients after the known COVID-19 exposure to try to understand what medical or epidemiological basis there might be for these extreme forms of isolation and restriction on movement within our clients' own home.

Dr. Cohen regularly serves as a medical expert for Counsel for Plaintiff for *Flores* and provided a declaration most recent filings that related, in part, to COVID-19 responses in congregate care settings. She is a child and family psychiatrist who currently serves as mental health and child welfare consultant for attorneys who monitor detention facilities holding children in accordance with the *Flores* settlement. Dr. Cohen informed us that the highly restrictive practices our clients had described to us did not even constitute an actual quarantine since youth would share a room or have a common bathroom and the procedures that were being followed were likely exposing the youth to greater risk of contracting COVID-19 than if they were permitted to live their lives as usual within their home. Dr. Cohen shared our concerns and emphasized the deep trauma that this type of isolation is likely causing youth who are experiencing it.

2

Dr. Ramanathan is a board-certified pediatrician working in the Pediatric Emergency Department at St. Joseph Mercy Hospital, Ann Arbor and she is also the Medical Director of the University of Michigan Asylum Collaborative, and a physician expert for Physicians for Human Rights as well as a Medical Consultant for Freedom House Detroit.  After reviewing the practices described by our clients above and discussing the matter with our staff and expressing great concern, Dr. Ramanathan presented us with a letter that included some resources and the following conclusions:

> "1.     My greatest worry is for the mental and physical health of the children.  Being in isolation for 23 hours of the day is highly detrimental to a child's long term physical and psychological well-being and can have dire consequences to their health.  I am extremely concerned about the intense psychological trauma that these children have already suffered in their lives, and these conditions will have many compounded effects on top that.
>> a.     There is trauma literature showing that traumatized children actually have changes in their brain structure when exposed to repeated trauma, particularly in the hippocampus and corpus callosum. This can be reversed when children are placed in nurturing environments.  Social isolation will only compound this trauma and long term damage.
> 2.     There does not appear to be any health benefit to isolating the children in this manner. When people are in a shelter situation, they are to be treated as a family, and quarantined together.  Furthermore, droplets of COVID-19 have been found to remain in the air for several hours, and there is mounting evidence that it may be transmitted by airborne transmission as well, so when they go for bathroom breaks or for their walks during their 1 hour out they are breathing in particles from other housemates.
> 3.     The greatest risk of transmission to the children is actually the staff members, who are presumably coming and going from the homes.  I would be most concerned with their hygiene practices.  I would want to make sure that they are masking and wearing gloves and social distancing from the children.  I would also want to ensure that the food preparation and handling is done in a safe way.
> 4.     This practice of needing to "yell" to alert staff members that the children require food or a trip to the bathroom is cruel and inhumane.  Again, these children have already been severely traumatized.  This is likely to lead to urinary tract infections, urinary or fecal incontinence, and myriad other physical and psychological consequences.
> 5.     Children require socialization for safe, healthy, and appropriate growth and development. This isolation is cruel, inhumane, and extremely harmful to their health, development, and overall well-being."

Sydney Fouche, MPH, of the University of Michigan Acute Care Research Unit was part of our consultation with Dr. Ramanathan and fully shared concerns that the level of enforced isolation described by our clients can cause extreme mental distress with limited benefits with respect to disease transmission.

Based on our clients' experiences, our clients' right pursuant to *Flores* to live in the least restrictive setting possible, and the information provided by the medical and public health experts we consulted, it is our firm belief that the policy as implemented at Bellaview is harmful to our clients and should be ceased immediately and such a practice should not be implemented for future exposures. It is critical that decisions about changes in the manner in which our clients are cared for come from an evidence-based model and that we as the attorneys for the youth are informed of all matters relating to our clients health and care so that we can inform our clients of their rights and assist them in enforcing such rights.

Through this communication, we would like to provide Bethany and ORR the opportunity to provide us with additional information needed to fully evaluate these practices:

- What is the intended protocol or policy?

3

- Are our clients' experiences consistent with it?
- What individual or entity developed the policies and practices implemented at Bellaview?
- What models, guidelines, or evidence are they based on?
- How long were/are they being implemented and what will trigger their use in future scenarios?
- Are these policies and practices being implemented in other therapeutic foster care settings?


In addition, based on our consultation with the aforementioned professionals specializing in child psychology, welfare, and health, we presume that the practices that our clients have reported are potentially inconsistent with Michigan Department of Health and Human Services foster care licensing. Regardless, it is urgent that state guidance or lack thereof be addressed with the feedback of additional medical and public health professionals. We want to inform you that we intend to send a redacted copy of this letter Office of Children's Ombudsman Acting Director Ryan Spiedel, MDHHS Deputy Director for Children's Affairs Stacie Balden, and State Refugee Coordinator Benjamin Cabanaw, to promote prompt communication and resolution and prevent further harm to our clients and potentially other children in group home settings in Michigan.

I am attaching the declaration from Dr. Cohen which Counsel for Plaintiff's in *Flores* submitted, which addresses many of the points she discussed with us about this situation. I am also attaching a letter from Dr. Ramanathan, which she provided to us in response to our questions and conversation.

Thank you for your attention to this matter.


Sincerely,


Ana Devereaux
Supervising Attorney
Michigan Immigrant Rights Center

Attachments:
(1) Declaration by Dr. Cohen, dated April 21, 2020
(2) Letter from Dr. Ramanathan to MIRC, dated May 5, 2020


cc:

*Flores* Special Master/Independent Monitor Andrea Sheridan Ordin, aordin@strumwooch.com
Sarah Fabian, counsel for defendants in *Flores*, Sarah.B.Fabian@usdoj.gov
Michigan Federal Field Specialist, Amanda Miller, Amanda.Miller@acf.hhs.gov
Supervisory Federal Field Specialist, David.Fink@acf.hhs.gov
Head Federal Field Specialist Jim De La Cruz, James.DeLACruz@acf.hhs.gov
Policy Division at ORR UACPolicy@acf.hhs.gov
ORR Juvenile Coordinator, Aurora Miranda-Maese. (I am unable to locate her email, but would request that counsel for defendants or the independent monitor forward a copy to her).
Counsel for the *Flores* class, Carlos Holguin, crholguin@centerforhumanrights.email

---

**Ana Raquel Devereaux**



Supervising Attorney | Michigan Immigrant Rights Center
Pronouns: she/her/ella
See www.mypronouns.org to learn more

**Immigration Law Intake:** (734) 239-6863
**Employment Law Intake:** (800) 968-4046
**Direct Line:** (616) 827-4080, Ext. 701
**Fax:** (616) 202-7835
**Address:** 1550 E. Beltline SE, Ste. 375
Grand Rapids, MI 49506

michiganimmigrant.org
welcomingmichigan.org



Please note that my work schedule is Monday through
Thursday  from 7:00 AM to 5:00 PM.

*This electronic communication may be subject to the attorney-client privilege and may contain confidential information. If you are not the intended recipient, any distribution, copying or disclosure is strictly prohibited.  If you have received this communication in error, please notify the sender immediately and delete this copy from your system. Thank you for your cooperation.*
*Esta comunicación electrónica puede estar sujeta al privilegio de abogado-cliente y puede contener información confidencial. Si no es el destinatario, cualquier distribución, copia o divulgación está estrictamente prohibida. Si recibió esta comunicación por error, notifique al remitente de inmediato y elimine esta copia de su sistema. Gracias por su cooperación.*

---

**3 attachments**

 **774-4 Ex. B Dr. Cohen Decl..pdf**
75K

 **MIRC -COVID-19 Bellaview Letter.pdf**
310K

 **Vidya.MIRC.pdf**
994K

5/5/2020

Re: Immigrant Children in Small Group Homes in Michigan

Dear Ms. Reed,

Thank you for the information you sent me regarding the conditions in the small group homes for immigrant children in Michigan. As you know, I am a board certified pediatrician working in the Pediatric Emergency Department at St. Joseph Mercy Hospital, Ann Arbor. I am also the Medical Director of the University of Michigan Asylum Collaborative, and a physician expert for Physicians for Human Rights. I am also a Medical Consultant for Freedom House Detroit.

In reviewing the information you sent, I have several grave concerns about the conditions for the children in these homes.

1. My greatest worry is for the mental and physical health of the children. Being in isolation for 23 hours of the day is highly detrimental to a child's long term physical and psychological well-being and can have dire consequences to their health. I am extremely concerned about the intense psychological trauma that these children have already suffered in their lives, and these conditions will have many compounded effects on top that.
    a. There is trauma literature showing that traumatized children actually have changes in their brain structure when exposed to repeated trauma, particularly in the hippocampus and corpus callosum. This can be reversed when children are placed in nurturing environments. Social isolation will only compound this trauma and long term damage.
2. There does not appear to be any health benefit to isolating the children in this manner. When people are in a shelter situation, they are to be treated as a family, and quarantined together. Furthermore, droplets of COVID-19 have been found to remain in the air for several hours, and there is mounting evidence that it may be transmitted by airborne transmission as well, so when they go for bathroom breaks or for their walks during their 1 hour out they are breathing in particles from other housemates.
3. The greatest risk of transmission to the children is actually the staff members, who are presumably coming and going from the homes. I would be most concerned with their hygiene practices. I would want to make sure that they are masking and wearing gloves and social distancing from the children. I would also want to ensure that the food preparation and handling is done in a safe way.
4. This practice of needing to "yell" to alert staff members that the children require food or a trip to the bathroom is cruel and inhumane. Again, these children have already been severely traumatized. This is likely to lead to urinary tract infections, urinary or fecal incontinence, and myriad other physical and psychological consequences.
5. Children require socialization for safe, healthy, and appropriate growth and development. This isolation is cruel, inhumane, and extremely harmful to their health, development, and overall well-being.

Following is some literature from Physicians for Human Rights to help shed light on the dire health consequences of social isolation.

- https://phr.org/our-work/resources/invisible-in-isolation/
- https://phr.org/our-work/resources/buried-alive-solitary-confinement-in-the-us-detention-system/

Quotes from Dr. Katie Peeler related to child detention:
- Misuse of quarantine in family detention centers re: TB https://rewire.news/article/2019/03/05/its-horrifying-to-think-about-migrants-and-their-young-children-are-held-in-isolation-at-family-detention-centers/
- General risks in ORR custody during COVID19 https://www.wbur.org/cognoscenti/2020/03/20/migrant-kids-coronavirus-covid-19-katherine-peeler

Please feel free to contact me if you have any further questions.

Thank you for your consideration for the best interest of the children in this matter.

With warmest regards,

Vidya Kumar Ramanathan, MD, MPH

vkramanathan@gmail.com

734-904-8902

7

Case 2:85-cv-04544-DMG-AGR   Document 822-1   Filed 06/17/20   Page 66 of 137   Page ID
#:36175
Case 2:85-cv-04544-DMG-AGR   Document 821-4   Filed 06/12/20   Page 2 of 37   Page ID
#:36175

<u>**DECLARATION**</u>

1.  I, Amy J Cohen M.D. make this declaration based on my personal and professional knowledge and training and declare that the following is true and correct to the best of my knowledge.

2.  My name is Dr. Amy J. Cohen.  I am licensed to practice medicine in the state of California.  I received my medical degree with honors from the University of Pennsylvania Perelman School of Medicine.  I have previously outlined the remainder of my credentials to this court.

3.  I have been asked by Flores counsel - for whom I have served as an expert physician - to  give my professional opinion on the Field Guidance Report issued by ORR on April 6th and outlining recommendations for ORR facilities in response to the coronavirus pandemic.

4.  In my professional medical opinion, ORR's plan to delay a child's release to their sponsor if he or she resides in a facility where other children or staff have tested positive for COVID-19 is illogical and ill-advised as a measure to protect either those children or the public at large.  Indeed, in my opinion, such a policy is far more likely to *increase* the spread of Coronavirus than to prevent or slow it, placing the children, ORR staff, and the public in even greater danger.

5.  As has been amply demonstrated, the appropriate course of action for anyone with proven coronavirus infection as well as all contacts of that individual is to *separately* quarantine not only the infected individual but also each of  their contacts for a period of at least 14 days.

6.  Keeping children in a congregate facility after only a few may have been exposed to this virus significantly increases the risk that ALL will be exposed. This endangers not only all of the children, but also the staff who interact with them (and the staff's outside contacts) as well as the local community and public at large.  This was recently illustrated by the spread of the virus in the Heartland Alliance detention facility.

7.  ORR's April 6th Field Guidance Report directs facilities to isolate children *only* if they have symptoms.  This is not nearly an adequate protection, as it has for some time been demonstrated that coronavirus is highly communicable before symptoms appear and that up to 25% of those infected with coronavirus show no symptoms at all.  Choosing only to quarantine those with symptoms places children at high risk of contracting the virus from those either in the prodromal (pre-symptomatic) period or those who remain asymptomatic.

8.  And the option of delaying release in order to test every potentially infected child and adult would be neither possible nor protective.  There is a shortage of testing kits, up to 40 percent of tests show a false negative result, and there is a delay of days in obtaining results for many of the current tests.  During this delay, the virus could spread.  It is also possible that those who have newly acquired the virus - though still contagious - may not yet have converted their tests to positive.

9.  The only way to actually keep children in an infected ORR facility while minimizing the risk of spread would be to mandate the *immediate and separate* quarantine of ALL children and staff.  This would mean keeping each child in a separate room with separate bathroom and separate eating facility.  Staff would

all need to quarantine at home and all replacement staff would need to be tested before entering the facility.

10.  This is not only impractical but logistically impossible.  I have personally visited several ORR facilities, including Shiloh Treatment Center in Manvel, Texas, Homestead Influx Facility in Homestead, Florida, the BCFS Shelter in Raymondville, Texas and St Michael's shelter in Houston, Texas.  I can unequivocally state that none of these has the physical means to provide this type of individual quarantining for all child residents.

11.  Further, as staff are as likely to be infected as the children - if not more so - they too would need to be kept away from the children and each other.  All replacement staff entering the facility would have to be tested.  As explained above, this would not be a practical option, as testing is not widely available, often takes days before results are reported, and results are not completely reliable at this point, with up to a 40% false negative rate.

12.  In summary, as is now the consensus in the medical community, the only practical means for slowing the spread of Coronavirus is through separate quarantining of all who those who are potentially exposed for a period of at least 14 days.  For the ORR population of children, the only way to enable such effective quarantining is to have each child in the home of a sponsor where space capacity and individual supervision are far more likely to protect them and others.  In such an environment there are likely to be far fewer people coming in and out (with fewer opportunities for exposure), the child can be effectively supervised in all appropriate preventative measures, and he or she can be supported in withstanding the isolated and difficult existence of quarantine.

Case 2:85-cv-04544-DMG-AGR Document 824-1 Filed 06/17/20 Page 69 of 137 Page ID
#:36792
Case 2:85-cv-04544-DMG-AGR Document 824-1 Filed 04/22/20 Page 5 of 37 Page ID
#:36792

13. For the sake of the safety of children, staff, and the public, it is my unequivocal opinion that as many children as possible in a facility where there has been a known COVID outbreak should be removed from that facility as quickly as possible and placed in quarantine with sponsors. Others who do not have potential sponsors available should be removed to a child- centered quarantine facility so that the infected ORR environment can be completely sanitized and the children can safely quarantine. While in such a facility, ongoing measures to release children to home environments should be undertaken.

Signed under pain and penalty of perjury this 21st day of April, 2020, in Los Angeles, California.

Amy J Cohen MD



Ana Devereaux <adevereaux@lsscm.org>

## COVID-19 Policies and Practices at Bellaview

**Ana Devereaux** <adevereaux@michiganimmigrant.org>                                 Wed, May 6, 2020 at 1:36 PM
To: "Miller, Amanda J. (ACF)" <Amanda.Miller@acf.hhs.gov>, Hannah Mills <hmills@bethany.org>, "Lukas G. Ziomkowski"
<lziomkowski@bethany.org>, "Bethany A. Caldwell" <bcaldwell@bethany.org>, "Tiffany M. Wobma" <twobma@bethany.org>,
"Autumn G. Olson" <aolson@bethany.org>, Nicole Johnson <njohnson@bethany.org>
Cc: Susan Reed <susanree@michiganimmigrant.org>, Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>,
Carlos Holguín <crholguin@centerforhumanrights.email>, "UACPolicy (ACF)" <UACPolicy@acf.hhs.gov>, "De LA Cruz,
James (ACF)" <James.DeLACruz@acf.hhs.gov>, David.Fink@acf.hhs.gov, Sarah.B.Fabian@usdoj.gov, Andrea Sheridan
Ordin <aordin@strumwooch.com>, "Ahlberg, Jeffrey (ACF)" <Jeffrey.Ahlberg@acf.hhs.gov>, Aurora.Miranda-
maese@acf.hhs.gov

Good afternoon,

I am writing with a correction to the list of our clients currently at the facility and attaching the G-28s.

F          G          L
E     J      V       R
D      M       J
V         d    C         A        G
N        T     L      H        A         (the G28 for this client has been signed and mailed from the group
home to our offices, but we believe it is still in transit due to COVID-19).

I am also correcting the CC's with the ORR Supervisory Federal Field Specialist being Jeff Ahlberg,Jeffrey.Ahlberg@acf.
hhs.gov and adding the email for ORR Juvenile Coordinator, Aurora.Miranda-maese@acf.hhs.gov ,

Thank you,



### Ana Raquel Devereaux

Supervising Attorney | Michigan Immigrant Rights
Center
Pronouns: she/her/ella
See www.mypronouns.org to learn more

**Immigration Law Intake:** (734) 239-6863
**Employment Law Intake:** (800) 968-4046
**Direct Line:** (616) 827-4080, Ext. 701
**Fax:** (616) 202-7835
**Address:** 1550 E. Beltline SE, Ste. 375
Grand Rapids, MI 49506

michiganimmigrant.org
welcomingmichigan.org



Please note that my work schedule is Monday through
Thursday  from 7:00 AM to 5:00 PM.

*This electronic communication may be subject to the attorney-client privilege and may contain confidential information. If you are not the
intended recipient, any distribution, copying or disclosure is strictly prohibited.  If you have received this communication in error, please
notify the sender immediately and delete this copy from your system. Thank you for your cooperation.
Esta comunicación electrónica puede estar sujeta al privilegio de abogado-cliente y puede contener información confidencial. Si no es el
destinatario, cualquier distribución, copia o divulgación está estrictamente prohibida. Si recibió esta comunicación por error, notifique al
remitente de inmediato y elimine esta copia de su sistema. Gracias por su cooperación.*

On Wed, May 6, 2020 at 10:56 AM Ana Devereaux <adevereaux@michiganimmigrant.org> wrote:
[Quoted text hidden]

---

**4 attachments**

 **FGL G28.pdf**
259K

 **DMJ G28.pdf**
1509K

 **VCAG G28.pdf**
7408K

 **EJVR G28.pdf**
7864K



## Notice of Entry of Appearance
## as Attorney or Accredited Representative

Department of Homeland Security

**DHS**
**Form G-28**
OMB No. 1615-0105
Expires 05/31/2021

---

### Part 1. Information About Attorney or Accredited Representative

1. USCIS Online Account Number (if any)

   ▶ [                    ]

#### Name of Attorney or Accredited Representative

2.a. Family Name (Last Name)  `Colon Colon`

2.b. Given Name (First Name)  `Yasmin`

2.c. Middle Name  [            ]

#### Address of Attorney or Accredited Representative

3.a. Street Number and Name  `202 S 1st Street`

3.b. ☐ Apt.  ☒ Ste.  ☐ Flr.  `300`

3.c. City or Town  `Harlingen`

3.d. State  `TX`   3.e. ZIP Code  `78550`

3.f. Province  [            ]

3.g. Postal Code  [            ]

3.h. Country  `USA`

#### Contact Information of Attorney or Accredited Representative

4. Daytime Telephone Number  `9563653775`

5. Mobile Telephone Number (if any)  [            ]

6. Email Address (if any)  `yasmin.colon@abaprobar.org`

7. Fax Number (if any)  `9563653789`

---

### Part 2. Eligibility Information for Attorney or Accredited Representative

Select **all applicable** items.

1.a. ☒ I am an attorney eligible to practice law in, and a member in good standing of, the bar of the highest courts of the following states, possessions, territories, commonwealths, or the District of Columbia. If you need extra space to complete this section, use the space provided in **Part 6. Additional Information**.

Licensing Authority

`Supreme Court of Puerto Rico`

1.b. Bar Number (if applicable)

`18791`

1.c. I (select **only one** box) ☒ am not ☐ am subject to any order suspending, enjoining, restraining, disbarring, or otherwise restricting me in the practice of law. If you are subject to any orders, use the space provided in **Part 6. Additional Information** to provide an explanation.

1.d. Name of Law Firm or Organization (if applicable)

`ProBar`

2.a. ☐ I am an accredited representative of the following qualified nonprofit religious, charitable, social service, or similar organization established in the United States and recognized by the Department of Justice in accordance with 8 CFR part 1292.

2.b. Name of Recognized Organization

[            ]

2.c. Date of Accreditation (mm/dd/yyyy)

[            ]

3. ☐ I am associated with

[            ] ,

the attorney or accredited representative of record who previously filed Form G-28 in this case, and my appearance as an attorney or accredited representative for a limited purpose is at his or her request.

4.a. ☐ I am a law student or law graduate working under the direct supervision of the attorney or accredited representative of record on this form in accordance with the requirements in 8 CFR 292.1(a)(2).

4.b. Name of Law Student or Law Graduate

[            ]

---

## Part 3. Notice of Appearance as Attorney or Accredited Representative

If you need extra space to complete this section, use the space provided in **Part 6. Additional Information**.

This appearance relates to immigration matters before (select **only one** box):

**1.a.** ☒ U.S. Citizenship and Immigration Services (USCIS)

**1.b.** List the form numbers or specific matter in which appearance is entered.

I-589

**2.a.** ☐ U.S. Immigration and Customs Enforcement (ICE)

**2.b.** List the specific matter in which appearance is entered.

**3.a.** ☐ U.S. Customs and Border Protection (CBP)

**3.b.** List the specific matter in which appearance is entered.

**4.** Receipt Number (if any)

▶

**5.** I enter my appearance as an attorney or accredited representative at the request of the (select **only one** box):

☒ Applicant ☐ Petitioner ☐ Requestor
☐ Beneficiary/Derivative ☐ Respondent (ICE, CBP)

## Information About Client (Applicant, Petitioner, Requestor, Beneficiary or Derivative, Respondent, or Authorized Signatory for an Entity)

**6.a.** Family Name (Last Name) — M: :-Jc --

**6.b.** Given Name (First Name) — D: -  :

**6.c.** Middle Name

**7.a.** Name of Entity (if applicable)

**7.b.** Title of Authorized Signatory for Entity (if applicable)

**8.** Client's USCIS Online Account Number (if any)

▶

**9.** Client's Alien Registration Number (A-Number) (if any)

▶ A- :

## Client's Contact Information

**10.** Daytime Telephone Number

9563653775

**11.** Mobile Telephone Number (if any)

**12.** Email Address (if any)

## Mailing Address of Client

**NOTE:** Provide the client's mailing address. **Do not** provide the business mailing address of the attorney or accredited representative **unless** it serves as the safe mailing address on the application or petition being filed with this Form G-28.

**13.a.** Street Number and Name

**13.b.** ☐ Apt. ☒ Ste. ☐ Flr. 300

**13.c.** City or Town   Harlingen

**13.d.** State   TX   **13.e.** ZIP Code   78550

**13.f.** Province

**13.g.** Postal Code

**13.h.** Country

USA

## Part 4. Client's Consent to Representation and Signature

### Consent to Representation and Release of Information

I have requested the representation of and consented to being represented by the attorney or accredited representative named in **Part 1.** of this form. According to the Privacy Act of 1974 and U.S. Department of Homeland Security (DHS) policy, I also consent to the disclosure to the named attorney or accredited representative of any records pertaining to me that appear in any system of records of USCIS, ICE, or CBP.

## Part 4.  Client's Consent to Representation and Signature (continued)

### Options Regarding Receipt of USCIS Notices and Documents

USCIS will send notices to both a represented party (the client) and his, her, or its attorney or accredited representative either through mail or electronic delivery.  USCIS will send all secure identity documents and Travel Documents to the client's U.S. mailing address.

If you want to have notices and/or secure identity documents sent to your attorney or accredited representative of record rather than to you, please select **all applicable** items below.  You may change these elections through written notice to USCIS.

**1.a.** ☒ I request that USCIS send original notices on an application or petition to the business address of my attorney or accredited representative as listed in this form.

**1.b.** ☒ I request that USCIS send any secure identity document (Permanent Resident Card, Employment Authorization Document, or Travel Document) that I receive to the U.S. business address of my attorney or accredited representative (or to a designated military or diplomatic address in a foreign country (if permitted)).

   **NOTE:**  If your notice contains Form I-94, Arrival-Departure Record, USCIS will send the notice to the U.S. business address of your attorney or accredited representative.  If you would rather have your Form I-94 sent directly to you, select **Item Number 1.c.**

**1.c.** ☒ I request that USCIS send my notice containing Form I-94 to me at my U.S. mailing address.

### Signature of Client or Authorized Signatory for an Entity

**2.a.** Signature of Client or Authorized Signatory for an Entity

➡ | A   M.  s  D. |

**2.b.** Date of Signature (mm/dd/yyyy)   12/23/2d9

## Part 5.  Signature of Attorney or Accredited Representative

I have read and understand the regulations and conditions contained in 8 CFR 103.2 and 292 governing appearances and representation before DHS.  I declare under penalty of perjury under the laws of the United States that the information I have provided on this form is true and correct.

**1. a.** Signature of Attorney or Accredited Representative

**1.b.** Date of Signature (mm/dd/yyyy)   12/23/2019

**2.a.** Signature of Law Student or Law Graduate

**2.b.** Date of Signature (mm/dd/yyyy)

## Part 6.  Additional Information

If you need extra space to provide any additional information within this form, use the space below.  If you need more space than what is provided, you may make copies of this page to complete and file with this form or attach a separate sheet of paper.  Type or print your name at the top of each sheet; indicate the **Page Number**, **Part Number**, and **Item Number** to which your answer refers; and sign and date each sheet.

**1.a** Family Name
(Last Name)   M   ᵢ–Jᵢ

**1.b.** Given Name
(First Name)   Dᵢ

**1.c.** Middle Name

**2.a.** Page Number   **2.b.** Part Number   **2.c.** Item Number

**2.d.**

**3.a.** Page Number   **3.b.** Part Number   **3.c.** Item Number

**3.d.**

**4.a.** Page Number   **4.b.** Part Number   **4.c.** Item Number

**4.d.**

**5.a.** Page Number   **5.b.** Part Number   **5.c.** Item Number

**5.d.**

**6.a.** Page Number   **6.b.** Part Number   **6.c.** Item Number

**6.d.**



**Notice of Entry of Appearance
as Attorney or Accredited Representative**

Department of Homeland Security

DHS
Form G-28
OMB No. 1615-0105
Expires 05/31/2021

---

### Part 1. Information About Attorney or Accredited Representative

1. USCIS Online Account Number (if any)
   ▶

*Name of Attorney or Accredited Representative*

2.a. Family Name (Last Name)  Quillen

2.b. Given Name (First Name)  Katrina

2.c. Middle Name  Danielle

*Address of Attorney or Accredited Representative*

3.a. Street Number and Name  1550 E Beltline SE

3.b. ☐ Apt. ☒ Ste. ☐ Flr.  375

3.c. City or Town  Grand Rapids

3.d. State  MI    3.e. ZIP Code  49506

3.f. Province

3.g. Postal Code

3.h. Country  USA

*Contact Information of Attorney or Accredited Representative*

4. Daytime Telephone Number  6168274080

5. Mobile Telephone Number (if any)

6. Email Address (if any)  kquillen@michiganimmigrant.org

7. Fax Number (if any)  6162027835

---

### Part 2. Eligibility Information for Attorney or Accredited Representative

Select all applicable items.

1.a. ☒ I am an attorney eligible to practice law in, and a member in good standing of, the bar of the highest courts of the following states, possessions, territories, commonwealths, or the District of Columbia. If you need extra space to complete this section, use the space provided in **Part 6. Additional Information.**

Licensing Authority
Supreme Court of Michigan

1.b. Bar Number (if applicable)
P80727

1.c. I (select only one box) ☒ am not ☐ am subject to any order suspending, enjoining, restraining, disbarring, or otherwise restricting me in the practice of law. If you are subject to any orders, use the space provided in **Part 6. Additional Information** to provide an explanation.

1.d. Name of Law Firm or Organization (if applicable)
Michigan Immigrant Rights Ctr

2.a. ☐ I am an accredited representative of the following qualified nonprofit religious, charitable, social service, or similar organization established in the United States and recognized by the Department of Justice in accordance with 8 CFR part 1292.

2.b. Name of Recognized Organization

2.c. Date of Accreditation (mm/dd/yyyy)

3. ☐ I am associated with
   ,
   the attorney or accredited representative of record who previously filed Form G-28 in this case, and my appearance as an attorney or accredited representative for a limited purpose is at his or her request.

4.a. ☐ I am a law student or law graduate working under the direct supervision of the attorney or accredited representative of record on this form in accordance with the requirements in 8 CFR 292.1(a)(2).

4.b. Name of Law Student or Law Graduate

---

## Part 3. Notice of Appearance as Attorney or Accredited Representative

If you need extra space to complete this section, use the space provided in **Part 6. Additional Information.**

This appearance relates to immigration matters before (select only one box):

**1.a.** ☒ U.S. Citizenship and Immigration Services (USCIS)

**1.b.** List the form numbers or specific matter in which appearance is entered.

> I-360

**2.a.** ☐ U.S. Immigration and Customs Enforcement (ICE)

**2.b.** List the specific matter in which appearance is entered.

**3.a.** ☐ U.S. Customs and Border Protection (CBP)

**3.b.** List the specific matter in which appearance is entered.

**4.** Receipt Number (if any)

> ▶

**5.** I enter my appearance as an attorney or accredited representative at the request of the (select only one box):

☒ Applicant   ☐ Petitioner   ☐ Requestor
☐ Beneficiary/Derivative   ☐ Respondent (ICE, CBP)

### Information About Client (Applicant, Petitioner, Requestor, Beneficiary or Derivative, Respondent, or Authorized Signatory for an Entity)

**6.a.** Family Name (Last Name)

> Va    : R

**6.b.** Given Name (First Name)

> E

**6.c.** Middle Name

> J

**7.a.** Name of Entity (if applicable)

**7.b.** Title of Authorized Signatory for Entity (if applicable)

**8.** Client's USCIS Online Account Number (if any)

> ▶

**9.** Client's Alien Registration Number (A-Number) (if any)

> ▶ A-

### Client's Contact Information

**10.** Daytime Telephone Number

**11.** Mobile Telephone Number (if any)

**12.** Email Address (if any)

### Mailing Address of Client

**NOTE:** Provide the client's mailing address. **Do not provide** the business mailing address of the attorney or accredited representative unless it serves as the safe mailing address on the application or petition being filed with this Form G-28.

**13.a.** Street Number and Name

**13.b.** ☐ Apt.   ☐ Ste.   ☐ Flr.

**13.c.** City or Town

> Grand Rapids

**13.d.** State MI   **13.e.** ZIP Code 49508

**13.f.** Province

**13.g.** Postal Code

**13.h.** Country

> USA

## Part 4. Client's Consent to Representation and Signature

### Consent to Representation and Release of Information

I have requested the representation of and consented to being represented by the attorney or accredited representative named in **Part 1.** of this form. According to the Privacy Act of 1974 and U.S. Department of Homeland Security (DHS) policy, I also consent to the disclosure to the named attorney or accredited representative of any records pertaining to me that appear in any system of records of USCIS, ICE, or CBP.

## Part 4. Client's Consent to Representation and Signature (continued)

### Options Regarding Receipt of USCIS Notices and Documents

USCIS will send notices to both a represented party (the client) and his, her, or its attorney or accredited representative either through mail or electronic delivery. USCIS will send all secure identity documents and Travel Documents to the client's U.S. mailing address.

If you want to have notices and/or secure identity documents sent to your attorney or accredited representative of record rather than to you, please select all applicable items below. You may change these elections through written notice to USCIS.

1.a. ☒ I request that USCIS send original notices on an application or petition to the business address of my attorney or accredited representative as listed in this form.

1.b. ☒ I request that USCIS send any secure identity document (Permanent Resident Card, Employment Authorization Document, or Travel Document) that I receive to the U.S. business address of my attorney or accredited representative (or to a designated military or diplomatic address in a foreign country (if permitted)).

NOTE: If your notice contains Form I-94 Arrival-Departure Record, USCIS will send the notice to the U.S. business address of your attorney or accredited representative. If you would rather have your Form I-94 sent directly to you, select Item Number 1.c.

1.c. ☐ I request that USCIS send my notice containing Form I-94 to me at my U.S. mailing address.

### Signature of Client or Authorized Signatory for an Entity

2.a. Signature of Client or Authorized Signatory for an Entity

➡ 

2.b. Date of Signature (mm/dd/yyyy) 

## Part 5. Signature of Attorney or Accredited Representative

I have read and understand the regulations and conditions contained in 8 CFR 103.2 and 292 governing appearances and representation before DHS. I declare under penalty of perjury under the laws of the United States that the information I have provided on this form is true and correct.

1.a. Signature of Attorney or Accredited Representative

1.b. Date of Signature (mm/dd/yyyy)   3/30/20

2.a. Signature of Law Student or Law Graduate

2.b. Date of Signature (mm/dd/yyyy)

## Part 6. Additional Information

If you need extra space to provide any additional information within this form, use the space below. If you need more space than what is provided, you may make copies of this page to complete and file with this form or attach a separate sheet of paper. Type or print your name at the top of each sheet; indicate the **Page Number, Part Number, and Item Number** to which your answer refers; and sign and date each sheet.

**1.a** Family Name (Last Name)  Va    ：Re
**1.b** Given Name (First Name)  E
**1.c** Middle Name  J

**2.a** Page Number   **2.b** Part Number   **2.c** Item Number

**2.d** _____

**3.a** Page Number   **3.b** Part Number   **3.c** Item Number

**3.d** _____

**4.a** Page Number   **4.b** Part Number   **4.c** Item Number

**4.d** _____

**5.a** Page Number   **5.b** Part Number   **5.c** Item Number

**5.d** _____

**6.a** Page Number   **6.b** Part Number   **6.c** Item Number

**6.d** _____



# Notice of Entry of Appearance
## as Attorney or Accredited Representative

### Department of Homeland Security

**DHS**
**Form G-28**
OMB No. 1615-0105
Expires 05/31/2021

---

## Part 1.  Information About Attorney or Accredited Representative

1.  USCIS Online Account Number (if any)

    ▶ [                    ]

### Name of Attorney or Accredited Representative

**2.a.** Family Name (Last Name) **Orozco**

**2.b.** Given Name (First Name) **Belinda**

**2.c.** Middle Name **Marcelina**

### Address of Attorney or Accredited Representative

**3.a.** Street Number and Name **1550 E Beltline SE**

**3.b.** ☐ Apt. ☒ Ste. ☐ Flr. **375**

**3.c.** City or Town **Grand Rapids**

**3.d.** State **MI**  **3.e.** ZIP Code **49506**

**3.f.** Province

**3.g.** Postal Code

**3.h.** Country **USA**

### Contact Information of Attorney or Accredited Representative

4.  Daytime Telephone Number
    **6168274080**

5.  Mobile Telephone Number (if any)

6.  Email Address (if any)
    **borozco@michiganimmigrant.org**

7.  Fax Number (if any)
    **6162027835**

## Part 2.  Eligibility Information for Attorney or Accredited Representative

Select **all applicable** items.

**1.a.** ☒ I am an attorney eligible to practice law in, and a member in good standing of, the bar of the highest courts of the following states, possessions, territories, commonwealths, or the District of Columbia.  If you need extra space to complete this section, use the space provided in **Part 6. Additional Information**.

Licensing Authority

**Michigan Supreme Court**

**1.b.** Bar Number (if applicable)

**P83125**

**1.c.** I (select **only one** box) ☒ am not ☐ am subject to any order suspending, enjoining, restraining, disbarring, or otherwise restricting me in the practice of law.  If you are subject to any orders, use the space provided in **Part 6. Additional Information** to provide an explanation.

**1.d.** Name of Law Firm or Organization (if applicable)

**Michigan Immigrant Rights Cent**

**2.a.** ☐ I am an accredited representative of the following qualified nonprofit religious, charitable, social service, or similar organization established in the United States and recognized by the Department of Justice in accordance with 8 CFR part 1292.

**2.b.** Name of Recognized Organization

**2.c.** Date of Accreditation (mm/dd/yyyy)

**3.** ☐ I am associated with

    _____ ,
    the attorney or accredited representative of record who previously filed Form G-28 in this case, and my appearance as an attorney or accredited representative for a limited purpose is at his or her request.

**4.a.** ☐ I am a law student or law graduate working under the direct supervision of the attorney or accredited representative of record on this form in accordance with the requirements in 8 CFR 292.1(a)(2).

**4.b.** Name of Law Student or Law Graduate

---

## Part 3.  Notice of Appearance as Attorney or Accredited Representative

If you need extra space to complete this section, use the space
provided in **Part 6. Additional Information.**

This appearance relates to immigration matters before
(select **only one** box):

**1.a.**  ☒  U.S. Citizenship and Immigration Services (USCIS)

**1.b.**  List the form numbers or specific matter in which
appearance is entered.

[                                    ]

**2.a.**  ☐  U.S. Immigration and Customs Enforcement (ICE)

**2.b.**  List the specific matter in which appearance is entered.

[                                    ]

**3.a.**  ☐  U.S. Customs and Border Protection (CBP)

**3.b.**  List the specific matter in which appearance is entered.

[                                    ]

**4.**  Receipt Number (if any)
►  [                              ]

**5.**  I enter my appearance as an attorney or accredited
representative at the request of the (select **only one** box):

☒  Applicant    ☐  Petitioner    ☐  Requestor
☐  Beneficiary/Derivative    ☐  Respondent (ICE, CBP)

## *Information About Client (Applicant, Petitioner, Requestor, Beneficiary or Derivative, Respondent, or Authorized Signatory for an Entity)*

**6.a.**  Family Name (Last Name)    G.        L.

**6.b.**  Given Name (First Name)    F.

**6.c.**  Middle Name    [                    ]

**7.a.**  Name of Entity (if applicable)

[                                    ]

**7.b.**  Title of Authorized Signatory for Entity (if applicable)

[                                    ]

**8.**  Client's USCIS Online Account Number (if any)
►  [                              ]

**9.**  Client's Alien Registration Number (A-Number) (if any)
►  A- [ ?              ]

### *Client's Contact Information*

**10.**  Daytime Telephone Number
[                                    ]

**11.**  Mobile Telephone Number (if any)
[                                    ]

**12.**  Email Address (if any)
[                                    ]

### *Mailing Address of Client*

**NOTE:**  Provide the client's mailing address.  **Do not** provide
the business mailing address of the attorney or accredited
representative **unless** it serves as the safe mailing address on the
application or petition being filed with this Form G-28.

**13.a.**  Street Number and Name    [                    ]

**13.b.**  ☐ Apt.  ☒ Ste.  ☐ Flr.    400

**13.c.**  City or Town    Grand Rapids

**13.d.**  State    MI    **13.e.**  ZIP Code    49506

**13.f.**  Province    [                    ]

**13.g.**  Postal Code    [                    ]

**13.h.**  Country
USA

## Part 4.  Client's Consent to Representation and Signature

### *Consent to Representation and Release of Information*

I have requested the representation of and consented to being
represented by the attorney or accredited representative named
in **Part 1.** of this form.  According to the Privacy Act of 1974
and U.S. Department of Homeland Security (DHS) policy, I
also consent to the disclosure to the named attorney or
accredited representative of any records pertaining to me that
appear in any system of records of USCIS, ICE, or CBP.

## Part 4.  Client's Consent to Representation and Signature (continued)

### Options Regarding Receipt of USCIS Notices and Documents

USCIS will send notices to both a represented party (the client) and his, her, or its attorney or accredited representative either through mail or electronic delivery.  USCIS will send all secure identity documents and Travel Documents to the client's U.S. mailing address.

If you want to have notices and/or secure identity documents sent to your attorney or accredited representative of record rather than to you, please select **all applicable** items below.  You may change these elections through written notice to USCIS.

**1.a.** [X]  I request that USCIS send original notices on an application or petition to the business address of my attorney or accredited representative as listed in this form.

**1.b.** [X]  I request that USCIS send any secure identity document (Permanent Resident Card, Employment Authorization Document, or Travel Document) that I receive to the U.S. business address of my attorney or accredited representative (or to a designated military or diplomatic address in a foreign country (if permitted)).

   **NOTE:**  If your notice contains Form I-94, Arrival-Departure Record, USCIS will send the notice to the U.S. business address of your attorney or accredited representative.  If you would rather have your Form I-94 sent directly to you, select **Item Number 1.c.**

**1.c.** [ ]  I request that USCIS send my notice containing Form I-94 to me at my U.S. mailing address.

### Signature of Client or Authorized Signatory for an Entity

**2.a.**  Signature of Client or Authorized Signatory for an Entity

➡ 

**2.b.**  Date of Signature (mm/dd/yyyy)    4/22/2020

## Part 5.  Signature of Attorney or Accredited Representative

I have read and understand the regulations and conditions contained in 8 CFR 103.2 and 292 governing appearances and representation before DHS.  I declare under penalty of perjury under the laws of the United States that the information I have provided on this form is true and correct.

**1. a.**  Signature of Attorney or Accredited Representative

**1.b.**  Date of Signature (mm/dd/yyyy)

**2.a.**  Signature of Law Student or Law Graduate

**2.b.**  Date of Signature (mm/dd/yyyy)

## Part 6.  Additional Information

If you need extra space to provide any additional information within this form, use the space below.  If you need more space than what is provided, you may make copies of this page to complete and file with this form or attach a separate sheet of paper.  Type or print your name at the top of each sheet; indicate the **Page Number**, **Part Number**, and **Item Number** to which your answer refers; and sign and date each sheet.

**1.a** Family Name
(Last Name)      Gabriel Lopez

**1.b.** Given Name
(First Name)     Floricelda

**1.c.** Middle Name

**2.a.** Page Number  **2.b.** Part Number  **2.c.** Item Number

**2.d.**

**3.a.** Page Number  **3.b.** Part Number  **3.c.** Item Number

**3.d.**

**4.a.** Page Number  **4.b.** Part Number  **4.c.** Item Number

**4.d.**

**5.a.** Page Number  **5.b.** Part Number  **5.c.** Item Number

**5.d.**

**6.a.** Page Number  **6.b.** Part Number  **6.c.** Item Number

**6.d.**



Ana Devereaux <adevereaux@lsscm.org>

---

## COVID-19 Policies and Practices at Bellaview

---

**Ahlberg, Jeffrey (ACF)** <Jeffrey.Ahlberg@acf.hhs.gov>       Thu, May 7, 2020 at 10:07 AM
To: Ana Devereaux <adevereaux@michiganimmigrant.org>, "Miller, Amanda J. (ACF)" <Amanda.Miller@acf.hhs.gov>,
Hannah Mills <hmills@bethany.org>, "Lukas G. Ziomkowski" <lziomkowski@bethany.org>, "Bethany A. Caldwell"
<bcaldwell@bethany.org>, "Tiffany M. Wobma" <twobma@bethany.org>, "Autumn G. Olson" <aolson@bethany.org>, Nicole
Johnson <njohnson@bethany.org>
Cc: Susan Reed <susanree@michiganimmigrant.org>, Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>,
Carlos Holguín <crholguin@centerforhumanrights.email>, "UAC Policy (ACF)" <UACPolicy@acf.hhs.gov>, "De LA Cruz,
James (ACF)" <James.DeLACruz@acf.hhs.gov>, "Fink, David (ACF)" <David.Fink@acf.hhs.gov>,
"Sarah.B.Fabian@usdoj.gov" <Sarah.B.Fabian@usdoj.gov>, Andrea Sheridan Ordin <aordin@strumwooch.com>, "Miranda-
Maese, Aurora (ACF) (CTR)" <Aurora.Miranda-maese@acf.hhs.gov>

Good morning ma'am,

   Thank you for bringing your concerns to our attention. We are completing a review of this situation and will follow-
up with you as appropriate as soon as possible. In the meantime, if you could please clarify for me whether you have
not had the chance to speak to your clients since May 2 due to a lack of access or something else.

Thank you again,

jeff



Ana Devereaux <adevereaux@lsscm.org>

## COVID-19 Policies and Practices at Bellaview

Ana Devereaux <adevereaux@michiganimmigrant.org>                                    Thu, May 7, 2020 at 10:34 AM
To: "Ahlberg, Jeffrey (ACF)" <Jeffrey.Ahlberg@acf.hhs.gov>
Cc: "Miller, Amanda J. (ACF)" <Amanda.Miller@acf.hhs.gov>, Hannah Mills <hmills@bethany.org>, "Lukas G. Ziomkowski"
<lziomkowski@bethany.org>, "Bethany A. Caldwell" <bcaldwell@bethany.org>, "Tiffany M. Wobma" <twobma@bethany.org>,
"Autumn G. Olson" <aolson@bethany.org>, Nicole Johnson <njohnson@bethany.org>, Susan Reed
<susanree@michiganimmigrant.org>, Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>, Carlos Holguín
<crholguin@centerforhumanrights.email>, "UAC Policy (ACF)" <UACPolicy@acf.hhs.gov>, "De LA Cruz, James (ACF)"
<James.DeLACruz@acf.hhs.gov>, "Fink, David (ACF)" <David.Fink@acf.hhs.gov>, "Sarah.B.Fabian@usdoj.gov"
<Sarah.B.Fabian@usdoj.gov>, Andrea Sheridan Ordin <aordin@strumwooch.com>, "Miranda-Maese, Aurora (ACF) (CTR)"
<Aurora.Miranda-maese@acf.hhs.gov>

Thank you, Jeff. There have been no barriers speaking to clients since May 2, it just takes a lot of coordination and we
hadn't gotten around to it. We have to affirmatively request the meeting and it takes time to schedule on both the facility
and our end.



### Ana Raquel Devereaux

Supervising Attorney | Michigan Immigrant Rights
Center
Pronouns: she/her/ella
See www.mypronouns.org to learn more

**Immigration Law Intake:** (734) 239-6863
**Employment Law Intake:** (800) 968-4046
**Direct Line:** (616) 827-4080, Ext. 701
**Fax:** (616) 202-7835
**Address:** 1550 E. Beltline SE, Ste. 375
Grand Rapids, MI 49506

michiganimmigrant.org
welcomingmichigan.org



Please note that my work schedule is Monday through
Thursday  from 7:00 AM to 5:00 PM.

*This electronic communication may be subject to the attorney-client privilege and may contain confidential information. If you are not the
intended recipient, any distribution, copying or disclosure is strictly prohibited.  If you have received this communication in error, please
notify the sender immediately and delete this copy from your system. Thank you for your cooperation.
Esta comunicación electrónica puede estar sujeta al privilegio de abogado-cliente y puede contener información confidencial. Si no es el
destinatario, cualquier distribución, copia o divulgación está estrictamente prohibida. Si recibió esta comunicación por error, notifique al
remitente de inmediato y elimine esta copia de su sistema. Gracias por su cooperación.*

[Quoted text hidden]



Ana Devereaux <adevereaux@lsscm.org>

## COVID-19 Policies and Practices at Bellaview

**Ahlberg, Jeffrey (ACF)** <Jeffrey.Ahlberg@acf.hhs.gov>      Thu, May 7, 2020 at 11:02 AM
To: Ana Devereaux <adevereaux@michiganimmigrant.org>
Cc: "Miller, Amanda J. (ACF)" <Amanda.Miller@acf.hhs.gov>, Hannah Mills <hmills@bethany.org>, "Lukas G. Ziomkowski" <lziomkowski@bethany.org>, "Bethany A. Caldwell" <bcaldwell@bethany.org>, "Tiffany M. Wobma" <twobma@bethany.org>, "Autumn G. Olson" <aolson@bethany.org>, Nicole Johnson <njohnson@bethany.org>, Susan Reed <susanree@michiganimmigrant.org>, Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>, Carlos Holguín <crholguin@centerforhumanrights.email>, "UAC Policy (ACF)" <UACPolicy@acf.hhs.gov>, "De LA Cruz, James (ACF)" <James.DeLACruz@acf.hhs.gov>, "Fink, David (ACF)" <David.Fink@acf.hhs.gov>, "Sarah.B.Fabian@usdoj.gov" <Sarah.B.Fabian@usdoj.gov>, Andrea Sheridan Ordin <aordin@strumwooch.com>, "Miranda-Maese, Aurora (ACF) (CTR)" <Aurora.Miranda-maese@acf.hhs.gov>

Understood. Thank you, ma'am. We'll be in touch soon.

**From:** Ana Devereaux <adevereaux@michiganimmigrant.org>
**Sent:** Thursday, May 7, 2020 10:35 AM
**To:** Ahlberg, Jeffrey (ACF) <Jeffrey.Ahlberg@acf.hhs.gov>
**Cc:** Miller, Amanda J. (ACF) <Amanda.Miller@acf.hhs.gov>; Hannah Mills <hmills@bethany.org>; Lukas G. Ziomkowski <lziomkowski@bethany.org>; Bethany A. Caldwell <bcaldwell@bethany.org>; Tiffany M. Wobma <twobma@bethany.org>; Autumn G. Olson <aolson@bethany.org>; Nicole Johnson <njohnson@bethany.org>; Susan Reed <susanree@michiganimmigrant.org>; Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>; Carlos Holguín <crholguin@centerforhumanrights.email>; UAC Policy (ACF) <UACPolicy@acf.hhs.gov>; De LA Cruz, James (ACF) <James.DeLACruz@acf.hhs.gov>; Fink, David (ACF) <David.Fink@acf.hhs.gov>; Sarah.B.Fabian@usdoj.gov; Andrea Sheridan Ordin <aordin@strumwooch.com>; Miranda-Maese, Aurora (ACF) (CTR) <Aurora.Miranda-maese@acf.hhs.gov>
**Subject:** Re: COVID-19 Policies and Practices at Bellaview

Thank you, Jeff. There have been no barriers speaking to clients since May 2, it just takes a lot of coordination and we hadn't gotten around to it. We have to affirmatively request the meeting and it takes time to schedule on both the facility and our end.

### Ana Raquel Devereaux

Supervising Attorney | Michigan Immigrant Rights Center

Pronouns: she/her/ella

See https://protect2.fireeye.com/url?k=64811564-38d41c77-6481245b-0cc47adb5650-b90e0fbb97c18567&u=http://www.mypronouns.org/ to learn more

**Immigration Law Intake:** (734) 239-6863

**Employment Law Intake:** (800) 968-4046

**Direct Line:** (616) 827-4080, Ext. 701

28

**Fax:** (616) 202-7835

**Address:** 1550 E. Beltline SE, Ste. 375

Grand Rapids, MI 49506

michiganimmigrant.org

welcomingmichigan.org

Please note that my work schedule is Monday through
Thursday from 7:00 AM to 5:00 PM.

*This electronic communication may be subject to the attorney-client privilege and may contain confidential information. If you are not the intended recipient, any distribution, copying or disclosure is strictly prohibited. If you have received this communication in error, please notify the sender immediately and delete this copy from your system. Thank you for your cooperation.*

*Esta comunicación electrónica puede estar sujeta al privilegio de abogado-cliente y puede contener información confidencial. Si no es el destinatario, cualquier distribución, copia o divulgación está estrictamente prohibida. Si recibió esta comunicación por error, notifique al remitente de inmediato y elimine esta copia de su sistema. Gracias por su cooperación.*

[Quoted text hidden]



Ana Devereaux <adevereaux@lsscm.org>

## COVID-19 Policies and Practices at Bellaview

**Ahlberg, Jeffrey (ACF)** <Jeffrey.Ahlberg@acf.hhs.gov>       Fri, May 15, 2020 at 6:07 PM
To: Ana Devereaux <adevereaux@michiganimmigrant.org>
Cc: "Miller, Amanda J. (ACF)" <Amanda.Miller@acf.hhs.gov>, Hannah Mills <hmills@bethany.org>, "Lukas G. Ziomkowski" <lziomkowski@bethany.org>, "Bethany A. Caldwell" <bcaldwell@bethany.org>, "Tiffany M. Wobma" <twobma@bethany.org>, "Autumn G. Olson" <aolson@bethany.org>, Nicole Johnson <njohnson@bethany.org>, Susan Reed <susanree@michiganimmigrant.org>, Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>, Carlos Holguín <crholguin@centerforhumanrights.email>, "UAC Policy (ACF)" <UACPolicy@acf.hhs.gov>, "De LA Cruz, James (ACF)" <James.DeLACruz@acf.hhs.gov>, "Fink, David (ACF)" <David.Fink@acf.hhs.gov>, "Sarah.B.Fabian@usdoj.gov" <Sarah.B.Fabian@usdoj.gov>, Andrea Sheridan Ordin <aordin@strumwooch.com>, "Miranda-Maese, Aurora (ACF) (CTR)" <Aurora.Miranda-maese@acf.hhs.gov>, "Gonzalez, Jose (ACF)" <Jose.Gonzalez@acf.hhs.gov>

Good afternoon Ana,

My apologies for the delay. The quarantine that occurred at this program occurred under the direction and supervision of an Office of Refugee Resettlement (ORR) epidemiologist in coordination with the local health department. The epidemiologist is part of ORR's Division of Health for Unaccompanied Children (DHUC), which is constituted of both civilian staff and commissioned officers in the United States Public Health Service. DHUC has been working in consultation with the United States Department of Health and Human Services' Centers for Disease Control and Prevention (CDC). Should a quarantine be deemed necessary by the epidemiologist and local health department in the future, I'm sure they will set the parameters of the quarantine according to their understanding of best medical practice at that time.

Based on the information and documentation received from the program, the reality of the situation does not appear to meet the conditions of solitary confinement described in your email and by your experts. The program appears to have maintained their quarantine appropriately while allowing for social interaction with both peers and staff and engagement in a variety of activities to the best of their ability given the circumstances. We understand you have also sent your concerns to the program's state licensing entity, and as always we are happy to work with our state partners to correct any deficiencies they may find.

Please know that I take my responsibility to care for the kids in my region extremely seriously and expect and demand the same from my staff and the programs they oversee. While no person or agency is perfect, it has generally been my experience that Bellaview takes the care of the children entrusted to them very seriously as well. They routinely accept kids into their program that other programs find too challenging, and they try very hard to help those kids become successful all while projecting an air of service and caring. If you have experience working with the domestic child welfare or juvenile justice systems, I'm sure you're aware how rare that is. If you ever identify anything that makes you feel they are not living up to this standard, please do not hesitate to share your concerns with their Federal Field Specialist (FFS).

Finally, you should generally be able to obtain a same day appointment with your clients, but if you find that you are not able to get access to your clients within 24 hours, please do let the FFS know so that she can troubleshoot the issue for you.

Thank you again for raising these issues and your concern for the well-being of the kids at Bellaview, which I and the other ORR staff involved with this program share.

Respectfully,

Jeff Ahlberg, LCSW

Federal Field Specialist Supervisor

Midwest Region

U.S. Dept of Health and Human Services

ACF/ORR/DUCO

202-823-2141

**From:** Ana Devereaux <adevereaux@michiganimmigrant.org>
**Sent:** Friday, May 15, 2020 2:56 PM
**To:** Ahlberg, Jeffrey (ACF) <Jeffrey.Ahlberg@acf.hhs.gov>
**Cc:** Miller, Amanda J. (ACF) <Amanda.Miller@acf.hhs.gov>; Hannah Mills <hmills@bethany.org>; Lukas G. Ziomkowski <lziomkowski@bethany.org>; Bethany A. Caldwell <bcaldwell@bethany.org>; Tiffany M. Wobma <twobma@bethany.org>; Autumn G. Olson <aolson@bethany.org>; Nicole Johnson <njohnson@bethany.org>; Susan Reed <susanree@michiganimmigrant.org>; Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>; Carlos Holguín <crholguin@centerforhumanrights.email>; UAC Policy (ACF) <UACPolicy@acf.hhs.gov>; De LA Cruz, James (ACF) <James.DeLACruz@acf.hhs.gov>; Fink, David (ACF) <David.Fink@acf.hhs.gov>; Sarah.B.Fabian@usdoj.gov>; Andrea Sheridan Ordin <aordin@strumwooch.com>; Miranda-Maese, Aurora (ACF) (CTR) <Aurora.Miranda-maese@acf.hhs.gov>
**Subject:** Re: COVID-19 Policies and Practices at Bellaview

Good afternoon,

I wanted to reach out as our office has yet to receive any clarity as to what policies were mandated by ORR, the local facility, or local health departments and what we could expect in the event of another exposure for children in ORR custody in Michigan. We are very concerned that this pattern will repeat itself, but have received no real information from any of the parties and would like to request an update and that this information be provided to us.

Thank you,



**Ana Raquel Devereaux**

Supervising Attorney | Michigan Immigrant Rights Center

Pronouns: she/her/ella

See https://protect2.fireeye.com/url?k=fe55a7ce-a2018ee5-fe5596f1-0cc47a6d17cc-633bfbe1819dad20&u=http://www.mypronouns.org/ to learn more

**Immigration Law Intake:** (734) 239-6863

**Employment Law Intake:** (800) 968-4046

31

Michigan Advocacy Program MIJC COVID-19 Policies and Practices at Bellaview

**Direct Line:** (616) 827-4080, Ext. 701

**Fax:** (616) 202-7835

**Address:** 1550 E. Beltline SE, Ste. 375

Grand Rapids, MI 49506

michiganimmigrant.org

welcomingmichigan.org



*This electronic communication may be subject to the attorney-client privilege and may contain confidential information. If you are not the intended recipient, any distribution, copying or disclosure is strictly prohibited. If you have received this communication in error, please notify the sender immediately and delete this copy from your system. Thank you for your cooperation.*

*Esta comunicación electrónica puede estar sujeta al privilegio de abogado-cliente y puede contener información confidencial. Si no es el destinatario, cualquier distribución, copia o divulgación está estrictamente prohibida. Si recibió esta comunicación por error, notifique al remitente de inmediato y elimine esta copia de su sistema. Gracias por su cooperación.*

On Thu, May 7, 2020 at 11:02 AM Ahlberg, Jeffrey (ACF) <Jeffrey.Ahlberg@acf.hhs.gov> wrote:

Understood. Thank you, ma'am. We'll be in touch soon.

**From:** Ana Devereaux <adevereaux@michiganimmigrant.org>
**Sent:** Thursday, May 7, 2020 10:35 AM
**To:** Ahlberg, Jeffrey (ACF) <Jeffrey.Ahlberg@acf.hhs.gov>
**Cc:** Miller, Amanda J. (ACF) <Amanda.Miller@acf.hhs.gov>; Hannah Mills <hmills@bethany.org>; Lukas G. Ziomkowski <lziomkowski@bethany.org>; Bethany A. Caldwell <bcaldwell@bethany.org>; Tiffany M. Wobma <twobma@bethany.org>; Autumn G. Olson <aolson@bethany.org>; Nicole Johnson <njohnson@bethany.org>; Susan Reed <susanree@michiganimmigrant.org>; Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>; Carlos Holguín <crholguin@centerforhumanrights.email>; UAC Policy (ACF) <UACPolicy@acf.hhs.gov>; De LA Cruz, James (ACF) <James.DeLACruz@acf.hhs.gov>; Fink, David (ACF) <David.Fink@acf.hhs.gov>; Sarah.B.Fabian@usdoj.gov; Andrea Sheridan Ordin <aordin@strumwooch.com>; Miranda-Maese, Aurora (ACF) (CTR) <Aurora.Miranda-maese@acf.hhs.gov>
**Subject:** Re: COVID-19 Policies and Practices at Bellaview

Thank you, Jeff. There have been no barriers speaking to clients since May 2, it just takes a lot of coordination and we hadn't gotten around to it. We have to affirmatively request the meeting and it takes time to schedule on both the facility and our end.

**Ana Raquel Devereaux**

Supervising Attorney | Michigan Immigrant Rights
Center

Pronouns: she/her/ella

See https://protect2.fireeye.com/url?k=059978b2-
59cd5199-0599498d-0cc47a6d17cc-
76d28d6588a79767&u=https://
protect2.fireeye.com/url?k=64811564-38d41c77-
6481245b-0cc47adb5650-b90e0fbb97c18567&
u=http://www.mypronouns.org/ to learn more

**Immigration Law Intake:**   (734) 239-6863

**Employment Law Intake:**   (800) 968-4046

**Direct Line:**   (616) 827-4080, Ext. 701

**Fax:**   (616) 202-7835

**Address:**   1550 E. Beltline SE, Ste. 375

Grand Rapids, MI 49506

michiganimmigrant.org

welcomingmichigan.org

Please note that my work schedule is Monday through
Thursday   from 7:00 AM to 5:00 PM.

*This electronic communication may be subject to the attorney-client privilege and may contain confidential information. If you are not
the intended recipient, any distribution, copying or disclosure is strictly prohibited. If you have received this communication in error,
please notify the sender immediately and delete this copy from your system. Thank you for your cooperation.*

*Esta comunicación electrónica puede estar sujeta al privilegio de abogado-cliente y puede contener información confidencial. Si no es
el destinatario, cualquier distribución, copia o divulgación está estrictamente prohibida. Si recibió esta comunicación por error,
notifique al remitente de inmediato y elimine esta copia de su sistema. Gracias por su cooperación.*

[Quoted text hidden]



Ana Devereaux <adevereaux@lsscm.org>

## COVID-19 Policies and Practices at Bellaview

**Ana Devereaux** <adevereaux@michiganimmigrant.org>      Fri, May 15, 2020 at 7:45 PM
To: "Ahlberg, Jeffrey (ACF)" <Jeffrey.Ahlberg@acf.hhs.gov>
Cc: "Miller, Amanda J. (ACF)" <Amanda.Miller@acf.hhs.gov>, Hannah Mills <hmills@bethany.org>, "Lukas G. Ziomkowski" <lziomkowski@bethany.org>, "Bethany A. Caldwell" <bcaldwell@bethany.org>, "Tiffany M. Wobma" <twobma@bethany.org>, "Autumn G. Olson" <aolson@bethany.org>, Nicole Johnson <njohnson@bethany.org>, Susan Reed <susanree@michiganimmigrant.org>, Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>, Carlos Holguín <crholguin@centerforhumanrights.email>, "UAC Policy (ACF)" <UACPolicy@acf.hhs.gov>, "De LA Cruz, James (ACF)" <James.DeLACruz@acf.hhs.gov>, "Fink, David (ACF)" <David.Fink@acf.hhs.gov>, "Sarah.B.Fabian@usdoj.gov" <Sarah.B.Fabian@usdoj.gov>, Andrea Sheridan Ordin <aordin@strumwooch.com>, "Miranda-Maese, Aurora (ACF) (CTR)" <Aurora.Miranda-maese@acf.hhs.gov>, "Gonzalez, Jose (ACF)" <Jose.Gonzalez@acf.hhs.gov>

Good Evening, Jeff.

Thank you for your response and for looking into the issues at hand. However, I want to note that we still do not have any clarity at MIRC as to what policies were put in place at Bellaview and what would take place in the future at any Michigan ORR facility. You say that the situation doesn't appear to meet the conditions set forth in my email, but the only source of information we have is our clients, and we simply reiterated their description of their experiences. So either the policies were not implemented in the manner as designed or they were not experienced as desired. Either way, we don't have a way of getting to the issues at hand without more information.

I will note that we do appreciate the ways in which Bethany Christian Services aims to provide a caring environment for youth in their care. On the multiple occasions we attempted to address our concerns directly with them, they believed they did not have the freedom to share with us information about our clients' care and the policies and protocols they put into place. Their inability to share emanates from ORR directives and this lack of information is still an issue that I hope you will address and provide us with copies of the written directives provide to BCS for the Bellaview COVID-19 exposure and what BCS (and Samaritas as the other MI ORR provider) would be expected to follow in the event of future exposures or positive COVID-19 tests.

Thank you very much,



**Ana Raquel Devereaux**

Supervising Attorney | Michigan Immigrant Rights Center
Pronouns: she/her/ella
See www.mypronouns.org to learn more

**Immigration Law Intake:** (734) 239-6863
**Employment Law Intake:** (800) 968-4046
**Direct Line:** (616) 827-4080, Ext. 701
**Fax:** (616) 202-7835
**Address:** 1550 E. Beltline SE, Ste. 375
Grand Rapids, MI 49506

michiganimmigrant.org
welcomingmichigan.org



*This electronic communication may be subject to the attorney-client privilege and may contain confidential information. If you are not the intended recipient, any distribution, copying or disclosure is strictly prohibited. If you have received this communication in error, please notify the sender immediately and delete this copy from your system. Thank you for your cooperation.*
*Esta comunicación electrónica puede estar sujeta al privilegio de abogado-cliente y puede contener información confidencial. Si no es el destinatario, cualquier distribución, copia o divulgación está estrictamente prohibida. Si recibió esta comunicación por error, notifique al*

*remitente de inmediato y elimine esta copia de su sistema. Gracias por su cooperación.*

[Quoted text hidden]



MAP | MICHIGAN ADVOCACY PROGRAM

**Ana Devereaux <adevereaux@lsscm.org>**

---

## COVID-19 Policies and Practices at Bellaview

---

**Ana Devereaux** <adevereaux@michiganimmigrant.org> Mon, Jun 1, 2020 at 1:12 PM
To: "Ahlberg, Jeffrey (ACF)" <Jeffrey.Ahlberg@acf.hhs.gov>
Cc: "Miller, Amanda J. (ACF)" <Amanda.Miller@acf.hhs.gov>, Hannah Mills <hmills@bethany.org>, "Lukas G. Ziomkowski" <lziomkowski@bethany.org>, "Bethany A. Caldwell" <bcaldwell@bethany.org>, "Tiffany M. Wobma" <twobma@bethany.org>, "Autumn G. Olson" <aolson@bethany.org>, Nicole Johnson <njohnson@bethany.org>, Susan Reed <susanree@michiganimmigrant.org>, Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>, Carlos Holguín <crholguin@centerforhumanrights.email>, "UAC Policy (ACF)" <UACPolicy@acf.hhs.gov>, "De LA Cruz, James (ACF)" <James.DeLACruz@acf.hhs.gov>, "Fink, David (ACF)" <David.Fink@acf.hhs.gov>, "Sarah.B.Fabian@usdoj.gov" <Sarah.B.Fabian@usdoj.gov>, Andrea Sheridan Ordin <aordin@strumwooch.com>, "Miranda-Maese, Aurora (ACF) (CTR)" <Aurora.Miranda-maese@acf.hhs.gov>, "Gonzalez, Jose (ACF)" <Jose.Gonzalez@acf.hhs.gov>

Good afternoon, Jeff,

I am writing to follow-up as we still have not received any information about what guidelines ORR is providing to sites in general and what was provided to BCS in this situation. Could you please provide any guidance that was provided on this occasion, written or otherwise, as well as any that sites would be expected to follow in the event of future exposures to COVID-19.

Thank you,

MIRC Michigan Immigrant Rights Center

**Ana Raquel Devereaux**

Supervising Attorney | Michigan Immigrant Rights Center
Pronouns: she/her/ella
See www.mypronouns.org to learn more

**Immigration Law Intake:** (734) 239-6863
**Employment Law Intake:** (800) 968-4046
**Direct Line:** (616) 827-4080, Ext. 701
**Fax:** (616) 202-7835
**Address:** 1550 E. Beltline SE, Ste. 375
Grand Rapids, MI 49506

michiganimmigrant.org
welcomingmichigan.org

*This electronic communication may be subject to the attorney-client privilege and may contain confidential information. If you are not the intended recipient, any distribution, copying or disclosure is strictly prohibited. If you have received this communication in error, please notify the sender immediately and delete this copy from your system. Thank you for your cooperation.*
*Esta comunicación electrónica puede estar sujeta al privilegio de abogado-cliente y puede contener información confidencial. Si no es el destinatario, cualquier distribución, copia o divulgación está estrictamente prohibida. Si recibió esta comunicación por error, notifique al remitente de inmediato y elimine esta copia de su sistema. Gracias por su cooperación.*

[Quoted text hidden]

MAP | MICHIGAN ADVOCACY PROGRAM

Ana Devereaux <adevereaux@lsscm.org>

## COVID-19 Policies and Practices at Bellaview

**Ahlberg, Jeffrey (ACF)** <Jeffrey.Ahlberg@acf.hhs.gov> Tue, Jun 2, 2020 at 2:39 PM
To: Ana Devereaux <adevereaux@michiganimmigrant.org>
Cc: "Miller, Amanda J. (ACF)" <Amanda.Miller@acf.hhs.gov>, Hannah Mills <hmills@bethany.org>, "Lukas G. Ziomkowski" <lziomkowski@bethany.org>, "Bethany A. Caldwell" <bcaldwell@bethany.org>, "Tiffany M. Wobma" <twobma@bethany.org>, "Autumn G. Olson" <aolson@bethany.org>, Nicole Johnson <njohnson@bethany.org>, Susan Reed <susanree@michiganimmigrant.org>, Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>, Carlos Holguín <crholguin@centerforhumanrights.email>, "UAC Policy (ACF)" <UACPolicy@acf.hhs.gov>, "De LA Cruz, James (ACF)" <James.DeLACruz@acf.hhs.gov>, "Fink, David (ACF)" <David.Fink@acf.hhs.gov>, "Sarah.B.Fabian@usdoj.gov" <Sarah.B.Fabian@usdoj.gov>, Andrea Sheridan Ordin <aordin@strumwooch.com>, "Miranda-Maese, Aurora (ACF) (CTR)" <Aurora.Miranda-maese@acf.hhs.gov>, "Gonzalez, Jose (ACF)" <Jose.Gonzalez@acf.hhs.gov>, "Antkowiak, Stephen (ACF)" <Stephen.Antkowiak@acf.hhs.gov>

Good afternoon Ana,

This is an extraordinary request. Information sharing with a child's immigration attorney is—with several exceptions—generally limited to updates on their family reunification case. Realizing that these are extraordinary times and that you are rightfully concerned for your clients' well-being, I have attempted to give you as much information as is necessary for you to know that the professionals and agencies with the relevant training, expertise, and authority were and are involved in monitoring and responding to the COVID-19 situation. The world's understanding of COVID-19 is constantly evolving as new data becomes available, and I am confident that all professionals and agencies involved will continue to issue guidance based on the best medical information available to them at the time.

I'm afraid that I'm not aware of anything in policy, law, or other guiding documents that authorizes me to provide you with the level of detail you are seeking. You have reached out to ORR with your concern, and the field team has conducted inquiries. The thought of kids I am responsible for being locked in a room for 23 hours a day with no opportunities for social interaction or diversion is abhorrent to me and not something I would ever want to be a part of let alone responsible for. As such, I very much appreciate you raising the concern. While I can understand that taking my word for it, is neither satisfying nor acceptable to you, it's my hope that the information I've been able to provide to you along with knowing the proper local and federal agencies are involved, knowing you have elevated your concerns to the program's state licensing entity, which is completely independent and autonomous from ORR, and that you have the ability to monitor your clients' well-being through in-person and telecommunication visits will give you some peace of mind. At this point, I have provided all of the information I think appropriate and am not able to provide anything additional in this forum.

Respectfully,

Jeff Ahlberg, LCSW
Federal Field Specialist Supervisor
Midwest Region
U.S. Dept of Health and Human Services
ACF/ORR/DUCO
202-823-2141

**From:** Ana Devereaux <adevereaux@michiganimmigrant.org>
**Sent:** Monday, June 1, 2020 1:12 PM
**To:** Ahlberg, Jeffrey (ACF) <Jeffrey.Ahlberg@acf.hhs.gov>
**Cc:** Miller, Amanda J. (ACF) <Amanda.Miller@acf.hhs.gov>; Hannah Mills <hmills@bethany.org>; Lukas G. Ziomkowski <lziomkowski@bethany.org>; Bethany A. Caldwell <bcaldwell@bethany.org>; Tiffany M. Wobma

<twobma@bethany.org>; Autumn G. Olson <aolson@bethany.org>; Nicole Johnson <njohnson@bethany.org>; Susan Reed <susanree@michiganimmigrant.org>; Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>; Carlos Holguín <crholguin@centerforhumanrights.email>; UAC Policy (ACF) <UACPolicy@acf.hhs.gov>; De LA Cruz, James (ACF) <James.DeLACruz@acf.hhs.gov>; Fink, David (ACF) <David.Fink@acf.hhs.gov>; Sarah.B.Fabian@usdoj.gov; Andrea Sheridan Ordin <aordin@strumwooch.com>; Miranda-Maese, Aurora (ACF) (CTR) <Aurora.Miranda-maese@acf.hhs.gov>; Gonzalez, Jose (ACF) <Jose.Gonzalez@ACF.hhs.gov>
**Subject:** Re: COVID-19 Policies and Practices at Bellaview

Good afternoon, Jeff,

I am writing to follow-up as we still have not received any information about what guidelines ORR is providing to sites in general and what was provided to BCS in this situation. Could you please provide any guidance that was provided on this occasion, written or otherwise, as well as any that sites would be expected to follow in the event of future exposures to COVID-19.

Thank you,

**Ana Raquel Devereaux**

Supervising Attorney | Michigan Immigrant Rights Center

Pronouns: she/her/ella

See https://protect2.fireeye.com/url?k=01926af9-5dc643d2-01925bc6-0cc47a6d17cc-bd99ee11692b36a6&u=http://www.mypronouns.org/ to learn more

**Immigration Law Intake:** (734) 239-6863

**Employment Law Intake:** (800) 968-4046

**Direct Line:** (616) 827-4080, Ext. 701

**Fax:** (616) 202-7835

**Address:** 1550 E. Beltline SE, Ste. 375

Grand Rapids, MI 49506

michiganimmigrant.org

welcomingmichigan.org



6/5/2020    Case 2:85-cv-04544-DMG-AGR   Document 823   Filed 06/17/20   Page 97 of 137   Page ID
Michigan Advocacy Program Mail - COVID Policies and Practices at Bellaview
#:38226

*This electronic communication may be subject to the attorney-client privilege and may contain confidential information. If you are not the intended recipient, any distribution, copying or disclosure is strictly prohibited.  If you have received this communication in error, please notify the sender immediately and delete this copy from your system. Thank you for your cooperation.*

*Esta comunicación electrónica puede estar sujeta al privilegio de abogado-cliente y puede contener información confidencial. Si no es el destinatario, cualquier distribución, copia o divulgación está estrictamente prohibida. Si recibió esta comunicación por error, notifique al remitente de inmediato y elimine esta copia de su sistema. Gracias por su cooperación.*

On Fri, May 15, 2020 at 7:45 PM Ana Devereaux <adevereaux@michiganimmigrant.org> wrote:

Good Evening, Jeff.

Thank you for your response and for looking into the issues at hand. However, I want to note that we still do not have any clarity at MIRC as to what policies were put in place at Bellaview and what would take place in the future at any Michigan ORR facility. You say that the situation doesn't appear to meet the conditions set forth in my email, but the only source of information we have is our clients, and we simply reiterated their description of their experiences. So either the policies were not implemented in the manner as designed or they were not experienced as desired. Either way, we don't have a way of getting to the issues at hand without more information.

I will note that we do appreciate the ways in which Bethany Christian Services aims to provide a caring environment for youth in their care. On the multiple occasions we attempted to address our concerns directly with them, they believed they did not have the freedom to share with us information about our clients' care and the policies and protocols they put into place. Their inability to share emanates from ORR directives and this lack of information is still an issue that I hope you will address and provide us with copies of the written directives provide to BCS for the Bellaview COVID-19 exposure and what BCS (and Samaritas as the other MI ORR provider) would be expected to follow in the event of future exposures or positive COVID-19 tests.

Thank you very much,



**Ana Raquel Devereaux**

Supervising Attorney | Michigan Immigrant Rights Center

Pronouns: she/her/ella

See https://protect2.fireeye.com/url?k=b201c6ee-ee55efc5-b201f7d1-0cc47a6d17cc-155eb12d22778a49&u=http://www.mypronouns.org/ to learn more

**Immigration Law Intake:** (734) 239-6863

**Employment Law Intake:** (800) 968-4046

**Direct Line:** (616) 827-4080, Ext. 701

**Fax:** (616) 202-7835

**Address:** 1550 E. Beltline SE, Ste. 375

Grand Rapids, MI 49506

michiganimmigrant.org

welcomingmichigan.org



[Quoted text hidden]

[Quoted text hidden]

[Quoted text hidden]
[Quoted text hidden]

Thank you,



## Ana Raquel Devereaux

[Quoted text hidden]

See https://protect2.fireeye.com/url?k=b0d11554-ec853c7f-b0d1246b-0cc47a6d17cc-b439f42e658cacd0&u=https://protect2.fireeye.com/url?k=fe55a7ce-a2018ee5-fe5596f1-0cc47a6d17cc-633bfbe1819dad20&u=http://www.mypronouns.org/ to learn more

**Immigration Law Intake:** (734) 239-6863

**Employment Law Intake:** (800) 968-4046

**Direct Line:** (616) 827-4080, Ext. 701

**Fax:** (616) 202-7835

**Address:** 1550 E. Beltline SE, Ste. 375

Grand Rapids, MI 49506

michiganimmigrant.org

welcomingmichigan.org



*This electronic communication may be subject to the attorney-client privilege and may contain confidential information. If you are*

40

Michigan Advocacy Program et al...COVID Policies and Practices at Bellaview

*not the intended recipient, any distribution, copying or disclosure is strictly prohibited. If you have received this communication in error, please notify the sender immediately and delete this copy from your system. Thank you for your cooperation.*

*Esta comunicación electrónica puede estar sujeta al privilegio de abogado-cliente y puede contener información confidencial. Si no es el destinatario, cualquier distribución, copia o divulgación está estrictamente prohibida. Si recibió esta comunicación por error, notifique al remitente de inmediato y elimine esta copia de su sistema. Gracias por su cooperación.*

On Thu, May 7, 2020 at 11:02 AM Ahlberg, Jeffrey (ACF) <Jeffrey.Ahlberg@acf.hhs.gov> wrote:

> Understood. Thank you, ma'am. We'll be in touch soon.
>
> **From:** Ana Devereaux <adevereaux@michiganimmigrant.org>
> **Sent:** Thursday, May 7, 2020 10:35 AM
> **To:** Ahlberg, Jeffrey (ACF) <Jeffrey.Ahlberg@acf.hhs.gov>
> **Cc:** Miller, Amanda J. (ACF) <Amanda.Miller@acf.hhs.gov>; Hannah Mills <hmills@bethany.org>; Lukas G. Ziomkowski <lziomkowski@bethany.org>; Bethany A. Caldwell <bcaldwell@bethany.org>; Tiffany M. Wobma <twobma@bethany.org>; Autumn G. Olson <aolson@bethany.org>; Nicole Johnson <njohnson@bethany.org>; Susan Reed <susanree@michiganimmigrant.org>; Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>; Carlos Holguín <crholguin@centerforhumanrights.email>; UAC Policy (ACF) <UACPolicy@acf.hhs.gov>; De LA Cruz, James (ACF) <James.DeLACruz@acf.hhs.gov>; Fink, David (ACF) <David.Fink@acf.hhs.gov>; Sarah.B.Fabian@usdoj.gov; Andrea Sheridan Ordin <aordin@strumwooch.com>; Miranda-Maese, Aurora (ACF) (CTR) <Aurora.Miranda-maese@acf.hhs.gov>
> **Subject:** Re: COVID-19 Policies and Practices at Bellaview
>
> Thank you, Jeff. There have been no barriers speaking to clients since May 2, it just takes a lot of coordination and we hadn't gotten around to it. We have to affirmatively request the meeting and it takes time to schedule on both the facility and our end.
>
> ## Ana Raquel Devereaux
>
> Supervising Attorney | Michigan Immigrant Rights Center
>
> Pronouns: she/her/ella
>
> See https://protect2.fireeye.com/url?k=d394c248-8fc0eb63-d394f377-0cc47a6d17cc-ba10c079a97d9582&u=https://protect2.fireeye.com/url?k=059978b2-59cd5199-0599498d-0cc47a6d17cc-76d28d6588a79767&u=https://protect2.fireeye.com/url?k=64811564-38d41c77-6481245b-0cc47adb5650-b90e0fbb97c18567&u=http://www.mypronouns.org/ to learn more
>
> **Immigration Law Intake:** (734) 239-6863
>
> **Employment Law Intake:** (800) 968-4046
>
> **Direct Line:** (616) 827-4080, Ext. 701
>
> **Fax:** (616) 202-7835

41

**Address:** 1550 E. Beltline SE, Ste. 375

Grand Rapids, MI 49506

michiganimmigrant.org

welcomingmichigan.org

Please note that my work schedule is Monday through
Thursday  from 7:00 AM to 5:00 PM.

*This electronic communication may be subject to the attorney-client privilege and may contain confidential information. If you
are not the intended recipient, any distribution, copying or disclosure is strictly prohibited.  If you have received this
communication in error, please notify the sender immediately and delete this copy from your system. Thank you for your
cooperation.*

*Esta comunicación electrónica puede estar sujeta al privilegio de abogado-cliente y puede contener información confidencial. Si
no es el destinatario, cualquier distribución, copia o divulgación está estrictamente prohibida. Si recibió esta comunicación por
error, notifique al remitente de inmediato y elimine esta copia de su sistema. Gracias por su cooperación.*

[Quoted text hidden]



Ana Devereaux <adevereaux@lsscm.org>

## COVID-19 Policies and Practices at Bellaview

**UAC Policy (ACF)** <UACPolicy@acf.hhs.gov>                                      Tue, Jun 2, 2020 at 4:26 PM
To: Ana Devereaux <adevereaux@michiganimmigrant.org>
Cc: "Miller, Amanda J. (ACF)" <Amanda.Miller@acf.hhs.gov>, Hannah Mills <hmills@bethany.org>, "Lukas G. Ziomkowski" <lziomkowski@bethany.org>, "Bethany A. Caldwell" <bcaldwell@bethany.org>, "Tiffany M. Wobma" <twobma@bethany.org>, "Autumn G. Olson" <aolson@bethany.org>, Nicole Johnson <njohnson@bethany.org>, Susan Reed <susanree@michiganimmigrant.org>, Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>, "UAC Policy (ACF)" <UACPolicy@acf.hhs.gov>, "De LA Cruz, James (ACF)" <James.DeLACruz@acf.hhs.gov>, "Fink, David (ACF)" <David.Fink@acf.hhs.gov>, "Sarah.B.Fabian@usdoj.gov" <Sarah.B.Fabian@usdoj.gov>, Andrea Sheridan Ordin <aordin@strumwooch.com>, "Miranda-Maese, Aurora (ACF) (CTR)" <Aurora.Miranda-maese@acf.hhs.gov>, "Gonzalez, Jose (ACF)" <Jose.Gonzalez@acf.hhs.gov>, "Antkowiak, Stephen (ACF)" <Stephen.Antkowiak@acf.hhs.gov>, "Haron, Judith (HHS/OGC)" <Judith.Haron@hhs.gov>, "Biswas, Toby R M (ACF)" <Toby.Biswas@acf.hhs.gov>, "Ahlberg, Jeffrey (ACF)" <Jeffrey.Ahlberg@acf.hhs.gov>

Dear Ms. Devereaux:

Thank you for your inquiry. ORR provided guidance to the contractor for the legal services contract (Vera) on COVID-19 related matters.

It is my understanding that some immigration related legal services for some UAC in ORR custody are provided by MIRC through a sub-contract with Vera.  In cases such as this, the standard operating procedure is for the legal services subcontractor to communicate their concerns directly with Vera.  Vera will communicate with their subcontracted provider directly on matters of concern and/or communicate with ORR directly.

Please direct these concerns to Vera so that communication flows through appropriate channels.

Sincerely,

**Michelle D. Ekanemesang**

Policy Analyst (UAC Program)

Division of Policy & Procedures| Office of the Director

**Office of Refugee Resettlement**

Administration for Children & Families

U.S. Deptartment of Health & Human Services

[Quoted text hidden]



## Notice of Entry of Appearance
## as Attorney or Accredited Representative

**Department of Homeland Security**

**DHS**
**Form G-28**
OMB No. 1615-0105
Expires 05/31/2021

---

**Part 1.  Information About Attorney or Accredited Representative**

1. USCIS Online Account Number (if any)

   ▶ [ ]

### Name of Attorney or Accredited Representative

2.a. Family Name (Last Name)  **Mualla**

2.b. Given Name (First Name)  **Nasr**

2.c. Middle Name  [ ]

### Address of Attorney or Accredited Representative

3.a. Street Number and Name  **1550 E Beltline SE**

3.b. ☐ Apt.  ☒ Ste.  ☐ Flr.  **375**

3.c. City or Town  **Grand Rapids**

3.d. State  **MI**   3.e. ZIP Code  **49506**

3.f. Province  [ ]

3.g. Postal Code  [ ]

3.h. Country  **USA**

### Contact Information of Attorney or Accredited Representative

4. Daytime Telephone Number
   **6168274080**

5. Mobile Telephone Number (if any)
   [ ]

6. Email Address (if any)
   **nmualla@michiganimmigrant.org**

7. Fax Number (if any)
   [ ]

---

**Part 2.  Eligibility Information for Attorney or Accredited Representative**

Select **all** applicable items.

1.a. ☒ I am an attorney eligible to practice law in, and a member in good standing of, the bar of the highest courts of the following states, possessions, territories, commonwealths, or the District of Columbia.  If you need extra space to complete this section, use the space provided in **Part 6. Additional Information**.

   Licensing Authority

   **Michigan Supreme Court**

1.b. Bar Number (if applicable)

   **P83924**

1.c. I (select **only one** box) ☒ am not  ☐ am subject to any order suspending, enjoining, restraining, disbarring, or otherwise restricting me in the practice of law.  If you are subject to any orders, use the space provided in **Part 6. Additional Information** to provide an explanation.

1.d. Name of Law Firm or Organization (if applicable)

   **Michigan Immigrant Rights Cent**

2.a. ☐ I am an accredited representative of the following qualified nonprofit religious, charitable, social service, or similar organization established in the United States and recognized by the Department of Justice in accordance with 8 CFR part 1292.

2.b. Name of Recognized Organization

   [ ]

2.c. Date of Accreditation (mm/dd/yyyy)

   [ ]

3. ☐ I am associated with

   [ ],

   the attorney or accredited representative of record who previously filed Form G-28 in this case, and my appearance as an attorney or accredited representative for a limited purpose is at his or her request.

4.a. ☐ I am a law student or law graduate working under the direct supervision of the attorney or accredited representative of record on this form in accordance with the requirements in 8 CFR 292.1(a)(2).

4.b. Name of Law Student or Law Graduate

   [ ]

---

Form G-28   09/17/18

Page 1 of 4

## Part 3. Notice of Appearance as Attorney or Accredited Representative

If you need extra space to complete this section, use the space provided in **Part 6. Additional Information**.

This appearance relates to immigration matters before (select **only one** box):

**1.a.** ☐ U.S. Citizenship and Immigration Services (USCIS)

**1.b.** List the form numbers or specific matter in which appearance is entered.

**2.a.** ☐ U.S. Immigration and Customs Enforcement (ICE)

**2.b.** List the specific matter in which appearance is entered.

**3.a.** ☐ U.S. Customs and Border Protection (CBP)

**3.b.** List the specific matter in which appearance is entered.

**4.** Receipt Number (if any)

▶

**5.** I enter my appearance as an attorney or accredited representative at the request of the (select **only one** box):

☐ Applicant ☐ Petitioner ☐ Requestor
☐ Beneficiary/Derivative ☐ Respondent (ICE, CBP)

### Information About Client (Applicant, Petitioner, Requestor, Beneficiary or Derivative, Respondent, or Authorized Signatory for an Entity)

**6.a.** Family Name (Last Name)  Al_   G:

**6.b.** Given Name (First Name)  V:

**6.c.** Middle Name  de . Ca

**7.a.** Name of Entity (if applicable)

**7.b.** Title of Authorized Signatory for Entity (if applicable)

**8.** Client's USCIS Online Account Number (if any)

▶

**9.** Client's Alien Registration Number (A-Number) (if any)

▶ A-

### Client's Contact Information

**10.** Daytime Telephone Number

**11.** Mobile Telephone Number (if any)

**12.** Email Address (if any)

### Mailing Address of Client

**NOTE:** Provide the client's mailing address. **Do not** provide the business mailing address of the attorney or accredited representative **unless** it serves as the safe mailing address on the application or petition being filed with this Form G-28.

**13.a.** Street Number and Name

**13.b.** ☐ Apt. ☒ Ste. ☐ Flr. | 400

**13.c.** City or Town | Grand Rapids

**13.d.** State | MI   **13.e.** ZIP Code | 49508

**13.f.** Province

**13.g.** Postal Code

**13.h.** Country | USA

## Part 4. Client's Consent to Representation and Signature

### Consent to Representation and Release of Information

I have requested the representation of and consented to being represented by the attorney or accredited representative named in **Part 1.** of this form. According to the Privacy Act of 1974 and U.S. Department of Homeland Security (DHS) policy, I also consent to the disclosure to the named attorney or accredited representative of any records pertaining to me that appear in any system of records of USCIS, ICE, or CBP.

### Part 4.  Client's Consent to Representation and Signature (continued)

#### Options Regarding Receipt of USCIS Notices and Documents

USCIS will send notices to both a represented party (the client) and his, her, or its attorney or accredited representative either through mail or electronic delivery.  USCIS will send all secure identity documents and Travel Documents to the client's U.S. mailing address.

If you want to have notices and/or secure identity documents sent to your attorney or accredited representative of record rather than to you, please select **all applicable** items below.  You may change these elections through written notice to USCIS.

**1.a.** ☐ I request that USCIS send original notices on an application or petition to the business address of my attorney or accredited representative as listed in this form.

**1.b.** ☐ I request that USCIS send any secure identity document (Permanent Resident Card, Employment Authorization Document, or Travel Document) that I receive to the U.S. business address of my attorney or accredited representative (or to a designated military or diplomatic address in a foreign country (if permitted)).

> **NOTE:**  If your notice contains Form I-94, Arrival-Departure Record, USCIS will send the notice to the U.S. business address of your attorney or accredited representative.  If you would rather have your Form I-94 sent directly to you, select **Item Number 1.c.**

**1.c.** ☐ I request that USCIS send my notice containing Form I-94 to me at my U.S. mailing address.

#### Signature of Client or Authorized Signatory for an Entity

**2.a.** Signature of Client or Authorized Signatory for an Entity

➡️ Vc            Al

**2.b.** Date of Signature (mm/dd/yyyy)    3/9/2020

### Part 5.  Signature of Attorney or Accredited Representative

I have read and understand the regulations and conditions contained in 8 CFR 103.2 and 292 governing appearances and representation before DHS.  I declare under penalty of perjury under the laws of the United States that the information I have provided on this form is true and correct.

**1. a.**  Signature of Attorney or Accredited Representative

**1.b.** Date of Signature (mm/dd/yyyy)    3-23-2020

**2.a.**  Signature of Law Student or Law Graduate

**2.b.** Date of Signature (mm/dd/yyyy)

## Part 6.  Additional Information

If you need extra space to provide any additional information within this form, use the space below.  If you need more space than what is provided, you may make copies of this page to complete and file with this form or attach a separate sheet of paper.  Type or print your name at the top of each sheet; indicate the **Page Number**, **Part Number**, and **Item Number** to which your answer refers; and sign and date each sheet.

**1.a** Family Name (Last Name)    A.      . Go

**1.b.** Given Name (First Name)    Va

**1.c.** Middle Name    de  . Ca

**2.a.** Page Number    **2.b.** Part Number    **2.c.** Item Number

**2.d.**

**3.a.** Page Number    **3.b.** Part Number    **3.c.** Item Number

**3.d.**

**4.a.** Page Number    **4.b.** Part Number    **4.c.** Item Number

**4.d.**

**5.a.** Page Number    **5.b.** Part Number    **5.c.** Item Number

**5.d.**

**6.a.** Page Number    **6.b.** Part Number    **6.c.** Item Number

**6.d.**

1

**Attachment C**

2

**Emails with Ben Cabanaw**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Ana Devereaux <adevereaux@lsscm.org>

---

## COVID-19 Concerns

---

Ana Devereaux <adevereaux@michiganimmigrant.org>                    Wed, May 6, 2020 at 1:19 PM
Cc: Susan Reed <susanree@michiganimmigrant.org>, Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>
Bcc: "CabanawB@michigan.gov" <cabanawb@michigan.gov>, Stephanie Smith <ssmith@samaritas.org>, Jose Parra
<jparr@samaritas.org>, Martha Hess <mhess@samaritas.org>, Jesse Garrison <jgarr1@samaritas.org>, Jeff Walters
<JWalt@samaritas.org>, Amy LaNoue <ALaNo@samaritas.org>, Andrea Sheridan Ordin <aordin@strumwooch.com>, "Kalis,
Jennifer (LEO)" <KalisJ@michigan.gov>

Good afternoon,

I am sending you a redacted copy of a letter we just sent to BCS and ORR to ensure you are aware of the ongoing issues
and ask that if you have any information to provide us on the matter of COVID-19 practices affecting any of our clients
(whether at Belleview or in any other facility or in URM), please do let us know.



### Ana Raquel Devereaux

Supervising Attorney | Michigan Immigrant Rights
Center
Pronouns: she/her/ella
See www.mypronouns.org to learn more

**Immigration Law Intake:** (734) 239-6863
**Employment Law Intake:** (800) 968-4046
**Direct Line:** (616) 827-4080, Ext. 701
**Fax:** (616) 202-7835
**Address:** 1550 E. Beltline SE, Ste. 375
Grand Rapids, MI 49506

michiganimmigrant.org
welcomingmichigan.org



Please note that my work schedule is Monday through
Thursday  from 7:00 AM to 5:00 PM.

---

*This electronic communication may be subject to the attorney-client privilege and may contain confidential information. If you are not the
intended recipient, any distribution, copying or disclosure is strictly prohibited.  If you have received this communication in error, please
notify the sender immediately and delete this copy from your system. Thank you for your cooperation.*
*Esta comunicación electrónica puede estar sujeta al privilegio de abogado-cliente y puede contener información confidencial. Si no es el
destinatario, cualquier distribución, copia o divulgación está estrictamente prohibida. Si recibió esta comunicación por error, notifique al
remitente de inmediato y elimine esta copia de su sistema. Gracias por su cooperación.*

---

 **REDACTED-MIRC- COVID-19 Bellaview Letter with attachments.pdf**
1341K



Ana Devereaux <adevereaux@lsscm.org>

## COVID-19 Concerns

**Cabanaw, Benjamin (LEO)** <CabanawB@michigan.gov>            Wed, May 6, 2020 at 5:43 PM
To: Ana Devereaux <adevereaux@michiganimmigrant.org>
Cc: Susan Reed <susanree@michiganimmigrant.org>, Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>,
"Phillippi, Karen (LEO)" <PhillippiK@michigan.gov>

Thank you for looping us in, Ana.  We currently have one youth with URM status at Bellaview.  We had not heard from
staff or youth about these concerns.  BCS had (as recently as this week) spoken with my staff about protocols for COVID,
and our team has ensured they had MDHHS-CSA and CDC guidance on congregate care.  That said, I have touched
base today with BCS to follow up on these concerns, and have also connected with MDHHS and OCO this afternoon.

Thanks again,

Ben


*Ben Cabanaw*

*State Refugee Coordinator*

*State Administrative Manager*

*Office of Global Michigan*

*517.512.5668*

*cabanawb@michigan.gov*




---

**From:** Ana Devereaux <adevereaux@michiganimmigrant.org>
**Sent:** Wednesday, May 06, 2020 1:19 PM
**Cc:** Susan Reed <susanree@michiganimmigrant.org>; Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>
**Subject:** COVID-19 Concerns

---

| |
|---|
| **CAUTION: This is an External email. Please send suspicious emails to** abuse@michigan.gov |

[Quoted text hidden]



Ana Devereaux <adevereaux@lsscm.org>

## COVID-19 Concerns

Ana Devereaux <adevereaux@michiganimmigrant.org>                    Wed, May 6, 2020 at 7:33 PM
To: "Cabanaw, Benjamin (LEO)" <CabanawB@michigan.gov>
Cc: Susan Reed <susanree@michiganimmigrant.org>, Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>, "Phillippi, Karen (LEO)" <PhillippiK@michigan.gov>

Thank you, Ben. Are you able to share any response you received from Bethany about changes they might implement in response to our communication or your follow-up today?



### Ana Raquel Devereaux

Supervising Attorney | Michigan Immigrant Rights Center
Pronouns: she/her/ella
See www.mypronouns.org to learn more

**Immigration Law Intake:** (734) 239-6863
**Employment Law Intake:** (800) 968-4046
**Direct Line:** (616) 827-4080, Ext. 701
**Fax:** (616) 202-7835
**Address:** 1550 E. Beltline SE, Ste. 375
Grand Rapids, MI 49506

michiganimmigrant.org
welcomingmichigan.org



Please note that my work schedule is Monday through Thursday  from 7:00 AM to 5:00 PM.

*This electronic communication may be subject to the attorney-client privilege and may contain confidential information. If you are not the intended recipient, any distribution, copying or disclosure is strictly prohibited.  If you have received this communication in error, please notify the sender immediately and delete this copy from your system. Thank you for your cooperation.*
*Esta comunicación electrónica puede estar sujeta al privilegio de abogado-cliente y puede contener información confidencial. Si no es el destinatario, cualquier distribución, copia o divulgación está estrictamente prohibida. Si recibió esta comunicación por error, notifique al remitente de inmediato y elimine esta copia de su sistema. Gracias por su cooperación.*

[Quoted text hidden]



Ana Devereaux <adevereaux@lsscm.org>

## COVID-19 Concerns

**Cabanaw, Benjamin (LEO)** <CabanawB@michigan.gov>                    Thu, May 7, 2020 at 4:49 PM
To: Ana Devereaux <adevereaux@michiganimmigrant.org>
Cc: Susan Reed <susanree@michiganimmigrant.org>, Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>,
"Phillippi, Karen (LEO)" <PhillippiK@michigan.gov>

Hi Ana-

We got confirmation that they are following CDC and CSA congregate care guidance, and we have scheduled a call with
them for Monday to go over implementation and concerns in detail.  We will ensure to stay in touch with them on the
matter, and that they provide a response for you all.

Thank you-

[Quoted text hidden]



**Ana Devereaux <adevereaux@lsscm.org>**

---

## COVID-19 Concerns

**Ana Devereaux** <adevereaux@michiganimmigrant.org>                  Thu, May 7, 2020 at 4:57 PM
To: "Cabanaw, Benjamin (LEO)" <CabanawB@michigan.gov>
Cc: Susan Reed <susanree@michiganimmigrant.org>, Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>,
"Phillippi, Karen (LEO)" <PhillippiK@michigan.gov>

Thank you, Ben. We had a call today with BCS leadership and they indicated that they based their practices of off some ORR guidelines but didn't think they could share with us what those guidelines were. Would you have access to those guidelines and be able to share them with us?



### Ana Raquel Devereaux

Supervising Attorney | Michigan Immigrant Rights Center
Pronouns: she/her/ella
See www.mypronouns.org to learn more

**Immigration Law Intake:** (734) 239-6863
**Employment Law Intake:** (800) 968-4046
**Direct Line:** (616) 827-4080, Ext. 701
**Fax:** (616) 202-7835
**Address:** 1550 E. Beltline SE, Ste. 375
Grand Rapids, MI 49506

michiganimmigrant.org
welcomingmichigan.org



Please note that my work schedule is Monday through Thursday  from 7:00 AM to 5:00 PM.

*This electronic communication may be subject to the attorney-client privilege and may contain confidential information. If you are not the intended recipient, any distribution, copying or disclosure is strictly prohibited.  If you have received this communication in error, please notify the sender immediately and delete this copy from your system. Thank you for your cooperation.*
*Esta comunicación electrónica puede estar sujeta al privilegio de abogado-cliente y puede contener información confidencial. Si no es el destinatario, cualquier distribución, copia o divulgación está estrictamente prohibida. Si recibió esta comunicación por error, notifique al remitente de inmediato y elimine esta copia de su sistema. Gracias por su cooperación.*

[Quoted text hidden]



Ana Devereaux <adevereaux@lsscm.org>

---

## COVID-19 Concerns

---

**Cabanaw, Benjamin (LEO)** <CabanawB@michigan.gov>                    Fri, May 8, 2020 at 1:27 PM
To: Ana Devereaux <adevereaux@michiganimmigrant.org>
Cc: Susan Reed <susanree@michiganimmigrant.org>, Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>,
"Phillippi, Karen (LEO)" <PhillippiK@michigan.gov>

Hi Ana-

That sounds to me like reference to UAC guidelines and not URM related.  I will check with Jennifer but for URM my recollection is that ORR only shared CDC guidelines.  I will ask them some more questions on Mon.

[Quoted text hidden]



Ana Devereaux <adevereaux@lsscm.org>

---

## COVID-19 Concerns

**Ana Devereaux** <adevereaux@michiganimmigrant.org>                    Mon, Jun 1, 2020 at 1:19 PM
To: "Cabanaw, Benjamin (LEO)" <CabanawB@michigan.gov>
Cc: Susan Reed <susanree@michiganimmigrant.org>, Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>,
"Phillippi, Karen (LEO)" <PhillippiK@michigan.gov>

Hey Ben,

Thanks for the follow-up you did on this issue. We're still looking to get copies of any guidance BCS was following or
implementing (whether from the health department or ORR) that lead to this situation. Is that something you have access
to and can share with us?

Also, would you be able to connect us directly with the current person serving as the state's children's ombudsman? We
had been connected with Lisa Mcormick but my understanding is that she is no longer in the role, and we haven't had the
chance to connect with the new ombudsman.

Thanks!



### Ana Raquel Devereaux

Supervising Attorney | Michigan Immigrant Rights
Center
Pronouns: she/her/ella
See www.mypronouns.org to learn more

**Immigration Law Intake:**  (734) 239-6863
**Employment Law Intake:**  (800) 968-4046
**Direct Line:**  (616) 827-4080, Ext. 701
**Fax:**  (616) 202-7835
**Address:** 1550 E. Beltline SE, Ste. 375
Grand Rapids, MI 49506

michiganimmigrant.org
welcomingmichigan.org



*This electronic communication may be subject to the attorney-client privilege and may contain confidential information. If you are not the
intended recipient, any distribution, copying or disclosure is strictly prohibited.  If you have received this communication in error, please
notify the sender immediately and delete this copy from your system. Thank you for your cooperation.*
*Esta comunicación electrónica puede estar sujeta al privilegio de abogado-cliente y puede contener información confidencial. Si no es el
destinatario, cualquier distribución, copia o divulgación está estrictamente prohibida. Si recibió esta comunicación por error, notifique al
remitente de inmediato y elimine esta copia de su sistema. Gracias por su cooperación.*

[Quoted text hidden]



**Ana Devereaux <adevereaux@lsscm.org>**

---

## COVID-19 Concerns

---

**Cabanaw, Benjamin (LEO)** <CabanawB@michigan.gov>                                    Wed, Jun 3, 2020 at 8:35 AM
To: Ana Devereaux <adevereaux@michiganimmigrant.org>
Cc: Susan Reed <susanree@michiganimmigrant.org>, Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>,
"Phillippi, Karen (LEO)" <PhillippiK@michigan.gov>


Good morning, Ana-


Below are the two links that ORR shared with the **URM provider network**.  I do not know if there was any additional or
specific instruction or guidance for the UAC programs.  These are from the CDC and are consistent with guidance also
shared by MDHHS' Children's Services Administration.  From my conversations with BCS it did sound like there was
available free-time outside of their room for youth (including walks), and group activities at a safe distance, including
access to games and TV.


- COVID-19 Guidance for Shared or Congregate Housing
- Resources for Shared or Congregate Housing Facilities


Sure.  I can send a follow-up email with an e-intro to the current Children's Ombudsman, Ryan Speidel.


Thanks-

[Quoted text hidden]



Ana Devereaux <adevereaux@lsscm.org>

---

## COVID-19 Concerns

**Ana Devereaux** <adevereaux@michiganimmigrant.org>                                    Wed, Jun 3, 2020 at 10:12 AM
To: "Cabanaw, Benjamin (LEO)" <CabanawB@michigan.gov>
Cc: Susan Reed <susanree@michiganimmigrant.org>, Laura Rocio Vargas Quintero <lrocio@michiganimmigrant.org>, "Phillippi, Karen (LEO)" <PhillippiK@michigan.gov>

Thanks, Ben. I appreciate these resources and insight.



### Ana Raquel Devereaux

Supervising Attorney | Michigan Immigrant Rights Center
Pronouns: she/her/ella
See www.mypronouns.org to learn more

**Immigration Law Intake:** (734) 239-6863
**Employment Law Intake:** (800) 968-4046
**Direct Line:** (616) 827-4080, Ext. 701
**Fax:** (616) 202-7835
**Address:** 1550 E. Beltline SE, Ste. 375
Grand Rapids, MI 49506

michiganimmigrant.org
welcomingmichigan.org



*This electronic communication may be subject to the attorney-client privilege and may contain confidential information. If you are not the intended recipient, any distribution, copying or disclosure is strictly prohibited. If you have received this communication in error, please notify the sender immediately and delete this copy from your system. Thank you for your cooperation.*
*Esta comunicación electrónica puede estar sujeta al privilegio de abogado-cliente y puede contener información confidencial. Si no es el destinatario, cualquier distribución, copia o divulgación está estrictamente prohibida. Si recibió esta comunicación por error, notifique al remitente de inmediato y elimine esta copia de su sistema. Gracias por su cooperación.*

[Quoted text hidden]



## Coronavirus Disease 2019 (COVID-19)

# COVID-19 Guidance for Shared or Congregate Housing

The following guidance was created to help owners, administrators, or operators of shared (also called "congregate") housing facilities – working together with residents, staff, and public health officials – prevent the spread of COVID-19.

For this guidance, shared housing includes a broad range of settings, such as apartments, condominiums, student or faculty housing, national and state park staff housing, transitional housing, and domestic violence and abuse shelters. Special considerations exist for the prevention of COVID-19 in shared housing situations, and some of the following guidance might not apply to your specific shared housing situation.

People living and working in this type of housing may have challenges with social distancing to prevent the spread of COVID-19. Shared housing residents often gather together closely for social, leisure, and recreational activities, shared dining, and/or use of shared equipment, such as kitchen appliances, laundry facilities, stairwells, and elevators.

Be sure to consider the unique needs of your residents, such as people with disabilities, cognitive decline, or no access to technology. This guidance does not address infection prevention and control in healthcare settings. If your facility offers healthcare services, please consult CDC Interim Infection Prevention and Control Recommendations for Patients with Suspected or Confirmed Coronavirus Disease 2019 (COVID-19) in Healthcare Settings

There may also be specific guidance for certain types of shared housing, such as homeless shelters, that may apply to your facility.

State, territorial, local, and tribal public health departments can give you specific information on COVID-19 transmission and policies in your community, which can help you decide when and if you need to scale up or loosen prevention measures.

## To maintain safe operations

- Review the CDC guidance for businesses and employers to identify strategies to maintain operations and a healthy working and living environment.
- Develop flexible sick leave policies. Require staff to stay home when sick, even without documentation from doctors. Use flexibility, when possible, to allow staff to stay home to care for sick family or household members or to care for children in the event of school or childcare dismissals. Make sure that employees are aware of and understand these policies.
- Create plans to protect the staff and residents from spread of COVID-19 and help them put in place personal preventive measures.
- Clean and disinfect shared areas (such as exercise room, laundry facilities, shared bathrooms, and elevators) and frequently touched surfaces using EPA-registered disinfectants ⧉ more than once a day if possible.
- Identify services and activities (such as meal programs, religious services, and exercise rooms and programs) that might need to be limited or temporarily discontinued. Consider alternative solutions (e.g., virtual services) that will help programs continue while being safe for residents.
- Identify a list of healthcare facilities and alternative care sites where residents with COVID-19 can receive appropriate care, if needed.

## Encourage staff and residents to prepare and take action to protect themselves and others

- Follow the guidance and directives on community gatherings from your state and local ⧉
- Encourage social distancing by asking staff and residents to stay at least 6 feet (2 meters) apart from others and wear cloth face coverings in any shared spaces, including spaces restricted to staff only.
- Consider any special needs or accommodations for those who need to take extra precautions, such as older adults,

10

people with disabilities, and people of any age who have serious underlying medical conditions.

- Limit staff entering residents' rooms or living quarters unless it is necessary. Use virtual communications and check ins (phone or video chat), as appropriate.

- Limit the presence of non-essential volunteers and visitors in shared areas, when possible.

- Use physical barriers, such as sneeze guards, or extra tables or chairs, to protect front desk/check-in staff who will have interactions with residents, visitors, and the public.

- Provide COVID-19 prevention supplies for staff and residents in common areas at your facility, such as soap, alcohol-based hand sanitizers that contain at least 60% alcohol, tissues, trash baskets, and, if possible, cloth face coverings that are washed or discarded after each use.

- Consider any special communications and assistance needs of your staff and residents, including persons with disabilities.

- Suggest that residents keep up-to-date lists of medical conditions and medications, and periodically check to ensure they have a sufficient supply of their prescription and over-the-counter medications.

- If possible, help residents understand they can contact their healthcare provider to ask about getting extra necessary medications to have on hand for a longer period of time, or to consider using a mail-order option for medications.

- Make sure that residents are aware of serious symptoms of their underlying conditions and of COVID-19 symptoms that require emergency care, and that they know who to ask for help and call 911.

- Encourage residents who live alone to seek out a "buddy" in the facility who will check on and help care for them and safely make sure they are getting basic necessities, including food and household essentials.

*Note: Surgical masks and N-95 respirators are critical supplies that must continue to be reserved for healthcare workers and other medical first responders, as recommended by current CDC guidance. All staff and residents should wear a cloth face covering when in shared areas of the facility and maintain social distancing to slow the spread of the virus.*

## Communicate to staff and residents

Identify platforms such as email, websites, hotlines, automated text messaging, newsletters, and flyers to help communicate information on:

- Guidance and directives from state and local officials and state and local ⧉ health departments.

- How your facility is helping to prevent the spread of COVID-19.

- How additional information will be shared, and where to direct questions.

- How to stay healthy, including videos, fact sheets, and posters with information on COVID-19 symptoms and how to stop the spread of germs, how to wash your hands, and what to do if you are sick.

- How staff and residents can cope and manage stress and protect others from stigma and discrimination.

- Identify and address potential language, cultural, and disability barriers associated with communicating COVID-19 information. Communications may need to be framed or adapted so they are culturally appropriate for your audience and easy to understand. For example, there are resources on the CDC website that are in many languages.

## Considerations for common spaces in your facility, to prevent the spread of COVID–19

- Consider how you can use multiple strategies to maintain social (physical) distance between everyone in common spaces of the facility.

- Consider cancelling all public or non-essential group activities and events.

- Offer alternative methods for activities and social interaction such as participation by phone, online, or through recorded sessions.

- Arrange seating of chairs and tables to be least 6 feet (2 meters) apart during shared meals or other events.

- Alter schedules to reduce mixing and close contact, such as staggering meal and activity times and forming small groups that regularly participate at the same times and do not mix.

- Minimize traffic in enclosed spaces, such as elevators and stairwells. Consider limiting the number of individuals in an elevator at one time and designating one directional stairwells, if possible.

- Ensure that social distancing can be maintained in shared rooms, such as television, game, or exercise rooms.

11

- Make sure that shared rooms in the facility have good air flow from an air conditioner or an opened window.
- Consider working with building maintenance staff to determine if the building ventilation system can be modified to increase ventilation rates or the percentage of outdoor air that circulates into the system.
- Clean and disinfect shared areas (laundry facilities, elevators, shared kitchens, exercise rooms, dining rooms) and frequently touched surfaces using EPA-registered disinfectants ☐ more than once a day if possible.

# Considerations for specific communal rooms in your facility

## Shared kitchens and dining rooms

- Restrict the number of people allowed in the kitchen and dining room at one time so that everyone can stay at least 6 feet (2 meters) apart from one another.
  - People who are sick, their roommates, and those who have higher risk of severe illness from COVID-19 should eat or be fed in their room, if possible.
- Do not share dishes, drinking glasses, cups, or eating utensils. Non-disposable food service items used should be handled with gloves and washed with dish soap and hot water or in a dishwasher. Wash hands after handling used food service items.
- Use gloves when removing garbage bags and handling and disposing of trash. Wash hands

## Laundry rooms

- Maintain access and adequate supplies to laundry facilities to help prevent spread of COVID-19.
- Restrict the number of people allowed in laundry rooms at one time to ensure everyone can stay at least 6 feet (2 meters) apart.
- Provide disposable gloves, soap for washing hands, and household cleaners and EPA-registered disinfectants ☐ for residents and staff to clean and disinfect buttons, knobs, and handles of laundry machines, laundry baskets, and shared laundry items.
- Post guidelines for doing laundry such as washing instructions and handling of dirty laundry.

## Recreational areas such as activity rooms and exercise rooms

- Consider closing activity rooms or restricting the number of people allowed in at one time to ensure everyone can stay at least 6 feet (2 meters) apart.
- Consider closing exercise rooms.
- Activities and sports (e.g., ping pong, basketball, chess) that require close contact are not recommended.

## Pools and hot tubs

- Consider closing pools and hot tubs or limiting access to pools for essential activities only, such as water therapy.
  - While proper operation, maintenance, and disinfection (with chlorine or bromine) should kill COVID-19 in pools and hot tubs, they may become crowded and could easily exceed recommended guidance for gatherings. It can also be challenging to keep surfaces clean and disinfected.
  - Considerations for shared spaces (maintaining physical distance and cleaning and disinfecting surfaces) should be addressed for the pool and hot tub area and in locker rooms if they remain open.

## Shared bathrooms

- Shared bathrooms should be cleaned regularly using EPA-registered disinfectants ☐ , at least twice per day (e.g., in the morning and evening or after times of heavy use).
- Make sure bathrooms are continuously stocked with soap and paper towels or automated hand dryers. Hand sanitizer could also be made available.
- Make sure trash cans are emptied regularly.
- Provide information on how to wash hands properly. Hang signs 🅰 in bathrooms.

- Residents should be instructed that sinks could be an infection source and should avoid placing toothbrushes directly on counter surfaces. Totes could also be used for personal items to limit their contact with other surfaces in the bathroom.

## If a resident in your facility has COVID-19 (suspected or confirmed)

- Have the resident seek advice by telephone from a healthcare provider to determine whether medical evaluation is needed.
- Residents are not required to notify administrators if they think they may or have a confirmed case of COVID-19. If you do receive information that someone in your facility has COVID-19, you should work with the local health department to notify anyone in the building who may have been exposed (had close contact with the sick person) while maintaining the confidentiality of the sick person as required by the Americans with Disabilities Act (ADA) and, if applicable, the Health Insurance Portability and Accountability Act (HIPAA).
- Provide the ill person with information on how to care for themselves and when to seek medical attention.
- Encourage residents with COVID-19 symptoms and their roommates and close contacts to self-isolate – limit their use of shared spaces as much as possible.
  - If possible, designate a separate bathroom for residents with COVID-19 symptoms.
  - Consider reducing cleaning frequency in bedrooms and bathrooms dedicated to persons with COVID-19 symptoms to as-needed cleaning (e.g., soiled items and surfaces) to avoid unnecessary contact with the ill persons.
  - Follow guidance on when to stop isolation.
- Minimize the number of staff members who have face-to-face interactions with residents who have suspected or confirmed COVID-19.
- Encourage staff, other residents, caregivers such as outreach workers, and others who visit persons with COVID-19 symptoms to follow recommended precautions to prevent the spread.
- Staff at higher risk of severe illness from COVID-19 should not have close contact with residents who have suspected or confirmed COVID-19, if possible.
- Those who have been in close contact (i.e., less than 6 feet (2 meters) with a resident who has confirmed or suspected COVID-19 should monitor their health and call their healthcare provider if they develop symptoms suggestive of COVID-19.
- Be prepared for the potential need to transport persons with suspected or confirmed COVID-19 for testing or non-urgent medical care. Avoid using public transportation, ride-sharing, or taxis. Follow guidelines for cleaning and disinfecting any transport vehicles.

## Accepting new residents at facilities that offer support services

First, review and follow the guidance and directives from your state and local officials.

If your situation is not restricted by their guidance and directives, then consider the following guidance:

  - At check-in, provide any new or potential resident with a clean cloth face covering and keep them isolated from others. Shelters can use this tool to screen for symptoms at entry.
  - Medical evaluation may be necessary depending on the symptoms.

- If your facility is full, your facility space is inadequate to maintain physical distancing (such as is recommended in the guidance for homeless shelters), or you do not have the resources (staff, prevention supplies) to accept additional residents, reach out to community- or faith-based organizations to help meet individuals' needs, including:
  - A safe place to stay
  - Ability to obtain basic necessities, such as food, personal hygiene products, and medicine
  - Access to any needed medical or behavioral health services
  - Access to a phone or a device with internet access to seek out resources and virtual services and support

6/10/2020
Case 2:85-cv-04544-DMG-AGR   Document 823   Filed 06/17/20   Page 120 of 137   Page ID
#:38249
COVID-19 in Shared or Congregate Housing

# Additional CDC resources to help prevent spread of COVID–19 in shared or congregate housing settings

More detailed guidance is available for specific types of facilities. Some of the information in these guidance documents is applicable to that specific type of facility only, and some of the information would be applicable to other congregate housing facilities.

- Assisted living facilities
- Retirement communities and independent living
- Homeless shelters
- Community- and faith-based organizations
- Colleges and universities
- Households with suspected or confirmed COVID

Page last reviewed: April 25, 2020

Centers for Disease Control and Prevention

# Coronavirus Disease 2019 (COVID-19)

# Shared and Congregate Housing

Plan, Prepare, and Respond

## Ongoing Mitigation Guidance

Guidance to plan, prepare, and respond to COVID-19

- Administrators of shared or congregate housing
- Residents of shared or congregate housing

## Prevention and Support

CDC/EPA cleaning and disinfection guidance

Page last reviewed: May 7, 2020

Exhibit E



**ADMINISTRATION FOR**
**CHILDREN & FAMILIES**
Office of Refugee Resettlement | 330 C Street, S.W., Washington, DC 20201
www.acf.hhs.gov/programs/orr

<div align="center">

**Waiver Guidance – Flores Update**

</div>

**Summary**

The Division of Unaccompanied Children's Operations (DUCO) has established a waiver process to assist with reunification cases where an approved release is delayed due to COVID-19 pandemic-related fingerprinting challenges.  This waiver process specifically relates to cases where Family Reunification Applications have been fully completed for Category 2B and Category 3 cases; however, sponsors, other household members, or Alternate Care Givers,[1] are unable to comply with ORR's fingerprinting mandates (digital and/or paper-based cards). Note: This process is dependent on there being <u>no other documented child welfare safety concerns</u>. Fingerprint checks and results are still required prior to release of a UAC in *ALL* instances where a Home Study was ordered due to past abuse/neglect ***on the part*** of the parent and/or legal guardian/home country caretaker.

- Prior to submitting a waiver, programs will provide proof of a sponsor's attempts to schedule a finger print appointment at all available finger print sites that are not temporarily closed due to COVID-19.
- To be eligible for a waiver, the sponsor cannot be within a reasonable driving distance from an open ORR fingerprint location or alternative site where hard copy prints can be taken.
- Where digital fingerprint sites are not available, programs will provide proof documenting a sponsor's good faith effort in attempting to obtain paper prints from two or more local law enforcement agencies including the local city/county police station, sheriff, state police, or equivalent agency. The assigned Federal Field Specialist (FFS) retains the authority to delay release pending completion of any background checks should they have any concerns about the child's safety or well-being.

**Procedures**

At the date of approval of this waiver process, ORR will inform ORR funded Care Providers and General Dynamics Information Technology (GDIT) Case Coordinators about the implementation of this temporary waiver process.  This process will be approved for 30 days and reviewed for re-approval each 30 days thereafter.

The roles of the Care Provider and Case Manager remain the same in their obligation to complete all release requirements per **Section 2: Safe and Timely Release from ORR Care** in ORR's Policy. If a UAC sponsor informs the care provider that he or she is not able to complete submission of his or her fingerprint requirements due to a lack of a fingerprint site resources within a reasonable driving distance, then the care provider will complete the following steps:

---

[1] In this memo, reference to a sponsor in relations to a finger print check should also be interpreted to include a House Hold Member or Alternate Care Giver.

The care provider must appropriately document all steps the sponsor took to find a fingerprint location closest to him or her residence. Proper documentation must include:

1. Name of the agency that the sponsor attempted to schedule an appointment for a fingerprint submission but was unable to get an appointment;
2. A contact number for each location that was attempted;
3. The address of the agency;
4. The date of the attempt; and
5. The location of the agency in proximity to sponsor to confirm distance challenges.

The care provider will provide this information to the Contract Field Specialist (CFS) assigned to the program. The CFS will:

1. Check the sponsor's completion of the Family Reunification\Release Packet. If the packet is complete and pending just fingerprint results then the CFS should proceed to step 2 within 24 business hours.
2. Check ORR's list of fingerprint providers to find out if the site closest to the sponsor is open or closed.
3. If the site is open and able to print the sponsor within 2 business days, then the waiver will not be submitted.
4. If there is no open funded fingerprint site within a reasonable drive from the sponsor's address, the CFS will check to see if the locations attempted by the sponsor are now in fact open for business.
5. If the CFS finds that there are no sites open, or there are no appointments available within 48 hours, then the CFS will contact the ORR Central Branch Case Management Team to determine if there is another option available.  The CBCM may contact the fingerprint provider to identify any barriers to collecting prints in a reasonable timeframe.
6. The sponsor must also explore opportunities for having hard copy prints taken by a local law enforcement agency. If paper prints must be used then the sponsor should follow the guidance for submitting paper prints in the UAC MAP, Section 2, FBI National Criminal History Check, #6.
7. If any step, 1 through 7 of this section indicates that a fingerprint site is open and the agency taking the print is appropriate for a fingerprint submission to PSC, the waiver should not be submitted.
8. The CFS will communicate their findings of the fingerprint location sites to the shelter case manager assigned to the case, the GDIT Case Coordinator, and the ORR FFS.
9. The CFS will turn into their supervisor the name, A number, and outcome of the print submission search, who will track all cases, for which a waiver was:
   a. Considered
   b. Approved
   c. Denied.
10. If the CFS determines that there is no fingerprint location within reasonable drive from the sponsor's address, the Shelter Care Provider Case Manager will submit a waiver request to the FFS assigned to the shelter where the UAC is placed.
11. The FFS will review the waiver request and submit to the FFS Supervisor.

**Waiver Submission and Approvals**

The waiver request must be approved by the FFS Supervisor with concurrence of the Director of Children Operations.  The waiver will also be reviewed by Division of Policy and Procedures as well as the Office of General Counsel. The waiver request must include all of the following information:

1. Thorough justification/reason for the waiver.
2. A summary of the information which was reviewed during the reunification process.
   a. Category of Sponsorship
   b. Completed FRA
   c. Completed Sponsor Assessment
   d. List SIRs
   e. Medical clearance
   f. Clear internet and Sex offender checks for Sponsor and all Household members
   g. No Child welfare concerns
   h. No Home study required
   i. Details of Sponsor's attempts to obtain fingerprints
3. If identified, a detailed summary of any mitigated child welfare safety concerns.
4. A detailed description of any recommended post-release services.
5. Waivers should be submitted by the FFS to their Supervisor for concurrence. If there is concurrence for the waiver submission then the FFS supervisor will elevate the waiver directly to the ORR Director for Children's Operations.
6. Once the waiver is approved then the FFS assigned to the case will send a copy to the Care Provider who will then send to the GDIT Case Coordinator a recommendation for release and a copy of the fingerprint waiver that was approved.

**Waiver Routing Process**

If it is determined that a case is eligible for a finger print waiver the CFS will draft the initial Waiver Memo using a template specifically developed for this process. The wavier will be routed through the following process:

1. The CFS will draft the initial memo and submit through the FFS, Supervisory FFS, and Senior Supervisory FFS to the DUCS Director, Division for Children's Operations (DUCO).
2. Submit the waiver request in Word format into Microsoft Teams DUCO ONLY.
3. The assigned FFS will read the review within 24 business hours. Once he or she reviews and edits the memo then the FFS will notify the DUCO Director's Special Assistant the document is ready for review.
4. Once the Special Assistant makes necessary changes then he will route the waiver to the DUCO Director that the document is ready for review.
5. Once the DUCO Director signs the form, they will coordinate with the Division of Policy and Procedures and the Office of General Counsel for concurrence.
6. Upon this concurrence, the DUCO Director will notify the original CFS to retrieve the document from Teams. The CFS will provide a signed copy of the waiver to the UAC case manager and FFS.

7. The FFS will approve the release in the UAC Portal and notify the care provider to proceed with release.

**Post Release Services Mandatory**

If the waiver is approved, the program must obtain an agreement in writing from the sponsor that he or she will submit his or her fingerprints within the next thirty days. The FFS will then change the Release Request to reflect release with Post Release Services.  The shelter case manager will put a referral in the portal to request PRS be assigned. The shelter case manager should check the PRS waitlist daily to make sure the PRS referral gets accepted promptly after UAC release. Assigned FFS can reach out to HS/PRS PO to request the referral acceptance get expedited if necessary. The signed waiver must also be uploaded into the Portal under the "UAC Docs" tab. PRS providers will provide support to the sponsor to assist in arranging and ensuring fingerprints are obtained. The assigned PRS provider will follow up with the sponsor every 7 days until fingerprints have been submitted to the CM.  If the sponsor does not follow through with this commitment, the PRS provider will:

- Submit a Notice of Concern (NOC),
- Based on the NOC, HS/PRS PO will flag the sponsor in the UAC Portal, and
- Notify local child welfare authorities.

ORR may also engage U.S. Homeland Security Investigations for further assistance should the sponsor prove uncooperative.  The releasing Care Providers will also be directed to include a note to remind sponsors of their obligation to be printed during their 30-day Safety Well Being Check.  Should a Care Provider Case Manager have any questions about this waiver process, please ask your assigned Supervisory Federal Field Specialist.

Exhibit F

# DECLARATION OF LAUREN A. VIZAR, ESQ.

I, Lauren A. Vizar, declare as follows:

1.      This declaration is based on my personal knowledge.  If called to testify in this case, I would testify competently about the following facts.

2.      My name is Lauren Vizar, and I am an attorney licensed to practice law in the State of New York.  This declaration describes my experiences and observations working with unaccompanied migrant youth detained at The Children's Village shelter in New York.

Experience Serving Youth in ORR Custody

3.      Since April 2020, I have been a supervising attorney at The Door, a legal service provider that works primarily with immigrant youth.  Since December 2019, The Door has served unaccompanied children in the legal custody of the Office of Refugee Resettlement ("ORR") who have been placed by ORR at The Children's Village in New York, one of the care programs within the ORR network of care providers.  Over the last six and a half months, The Door has served over 400 youth in ORR custody.  Although the majority of these youth come from Mexico, Honduras, Guatemala and El Salvador, youth placed at these facilities may come from all over the world.

4.      As the legal service provider for The Children's Village, our attorneys and staff maintain regular contact with the youth at the facilities.  We provide ongoing consultations and presentations concerning the legal rights of detained minors, as well as direct legal representation to youth where necessary.

Delays in Reunification

5.      The Door represents a 17-year-old child, A.G.L.C., detained at The Children's Village shelter in New York.

6.      A.G.L.C. has been in ORR custody since February 2020.  He is eager to reunify with his Category 2A sponsor, his biological brother.  A.G.L.C. maintains frequent communication with his brother.  He traveled to the United States expecting to be able to live with his brother.  A.G.L.C.'s mother and father remain in his country of origin.  His parents are aware of A.G.L.C.'s intention to reside with his brother.

7.      It is my understanding that A.G.L.C.'s brother submitted family reunification paperwork in March 2020, about a month after A.G.L.C.'s arrival at The Children's Village.  It is also my understanding that A.G.L.C.'s brother has sponsored other minors of their nuclear family and is thus familiar with the sponsorship process.

8.      It is my understanding that approximately one month after A.G.L.C.'s brother submitted the family reunification paperwork to The Children's Village, he was asked to resubmit the same paperwork and told a different staff member would handle the process going forward.  It is my understanding that between March and May 2020, various staff at The Children's Village requested personal and identity documents for A.G.L.C.'s brother and others living in his home, all of which were previously included in A.G.L.C.'s brother's two completed applications for family reunification with A.G.L.C.  According to A.G.L.C.'s brother, staff from The Children's Village requested repeatedly the same documentation solely because there were multiple changes in the case managers assigned to A.G.L.C.'s case.

9.      It is my understanding that a virtual home study was not scheduled until May 2020, approximately three months after A.G.L.C.'s arrival at The Children's Village and two months after the family reunification paperwork was originally submitted.  It is my understanding that A.G.L.C.'s brother is unaware of any justification for this two-month delay.  ORR has not informed me of the justification for this two-month delay.  An in-person home study has been requested following the virtual home study on account of unspecified concerns about the home and the number of minors—family members— previously sponsored.  I am unaware of any opportunity A.G.L.C.'s brother has been afforded to clarify any concerns that may have arisen following his submission of the

family reunification paperwork, as well as the virtual home study.  Instead, A.G.L.C.'s brother understood that the virtual home study had been positive.

10.     It is my understanding that a fingerprints waiver memorandum was submitted in June 2020 and that fingerprints are not an obstacle to A.G.L.C.'s release.  I understand that the only outstanding component of the reunification process is the in-person home study.

11.     I am unaware of the reason for the month-long delay between the virtual home study and the scheduling of the in-person home study.  ORR has not informed me of the reason why ORR believes an in-person home study is justified and necessary, as opposed to conducting any further follow-up by phone or virtually.

12.     As a result of the sequence of events described above, A.G.L.C. has been detained for over four months to date despite the fact that his biological brother is committed to sponsoring A.G.L.C. and that ORR has previously approved his brother as a sponsor.  I am unaware of an anticipated release date at this time.

13.     A.G.L.C.'s brother has made extraordinary sacrifices in hopes of being able to sponsor his brother and end his brother's detention.

14.     I have no safety concerns regarding A.G.L.C.'s brother and strongly advocate that A.G.L.C. be released to his sponsor as soon as possible.


I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 17th day of June 2020 at Brooklyn, New York.



/s/ Lauren A. Vizar
_____

Lauren A. Vizar

Declaration of Lauren A. Vizar

3

Exhibit G

**Amy J Cohen MD**

**815 N Harper Avenue**

**Los Angeles, Ca 90046**

**339 223-0695**

acohen8919@mac.com

## **DECLARATION**

1.  I, Amy J Cohen M.D. make this declaration based on my personal and professional knowledge and training and declare that the following is true and correct to the best of my knowledge.

2.  My name is Dr. Amy J. Cohen.  I am licensed to practice medicine in the state of California.  I received my medical degree with honors from the University of Pennsylvania Perelman School of Medicine.  I am a Child Psychiatrist with expertise in the trauma of children, including those facing separation from families through protracted detention in government facilities. I have written, taught, and given talks on this subject, including before the United States Senate. I have previously outlined the remainder of my credentials to this court.

3. I am also the executive director of the nonprofit organization, Every Last One, which serves the asylum seeking population of children and families, including assistance with releases from immigration custody.  In that role, I and my colleagues work with family members and potential sponsors to help them to understand and navigate the sponsorship system, so that they might see their children released to appropriate sponsors in a timely fashion.  We assist them in

filling out paperwork and obtaining all documents necessary to meet ORR vetting requirements.

4. I have been asked to write this declaration by Amy Maldonado, who serves as the attorney for the 7 year old child, J       J     S       D     (date of birth          2013, A#                 ).  J       has been in ORR custody at Baptist Child and Family Services (BCFS) in San Antonio, Texas since on or about March 17th, 2020.  Ms. Maldonado also serves as attorney for Javier's mother, A         D     , in her efforts to see her son released to a relative in Florida, L       A A       .  Ms. A         is this child's grandmother's cousin (although he refers to her as "tia" - his aunt).  The two have a pre-existing relationship.  It has been the persistent wish of the child to be released to his "aunt".

5. Ms. Maldonado has asked for a declaration from our organization which outlines our documented encounters with this family.  We have been asked to help clarify discrepancies in reports of what has transpired to delay this release. As we were and remain involved and in regular contact with both mother and sponsor - including during  the period in question - we have been asked to give our account.

6.  Every Last One was first contacted with a referral for this family on April 27th, 2020.  We have been in contact multiple times per week since then with both Ms. D     and Ms A        .  According to our records, while Ms. D     initially considered another relative as sponsor, she decided that Ms. A        had greater maturity and stability and so could provide a more appropriate home for her small son.

7. Ms. A        submitted all of her paperwork for sponsorship on May 4th.  She
was contacted the following day by the case manager, Ms. Elizabeth Chavez and
told that one document was missing.  This was supplied to Ms. Chavez on May
6th.

8.  Ms A        was cooperative with and quickly responsive to all of our contacts
with her as, indeed, she had appeared to be with the case manager.  During the
first week of May, she told us that she was eager to be fingerprinted so that the
report could be received quickly by ORR and J        's release arranged.
However, she told us that the Case Manager was refusing to authorize any
fingerprinting session for her until ALL members of the household had also
agreed.  At the time, she was living with a niece in her 20s (an American citizen)
who was refusing to be fingerprinted.   The only other member of the household
was Ms. A        's sister (also an American citizen) who from the beginning
offered no objection or resistance to herself being fingerprinted.  Ms. A        's
niece has since moved out.  It should be noted that nowhere in ORR's handbook
is it designated that all household members are required to be fingerprinted.

9. When Ms. A        reported to us the case manager's refusal to set up her
fingerprinting appointment, we wondered if there was a misunderstanding.  We
offered to join her and/or Ms. D     on a call to the case manager to clarify the
issue so that things might move forward for Javier.  But the case manager, Ms.
Chavez, refused to conduct such a phone call.  Further, Ms. A        reported to
us that - although she'd submitted all documents (such as birth certificates)
required to demonstrate her biologic relationship to the child and other
documents showing that she'd visited and been in touch with the family - Ms.

Chavez was now demanding an escalating series of new documents (such as personal emails between Ms. A          and J        's grandmother).

10. On May 21st we received a very distressed call from J        's mother.  She stated that Ms. Chavez (the case manager) had called her and told her that Ms. A          was no longer being considered as a sponsor because she'd withdrawn her wish to do so.  Further, Ms. Chavez had told her that, lacking a viable sponsor, 7 year old J        was likely to be deported on his own.  Ms. D     was understandably highly distressed and worried and phoned her cousin immediately.  According to J        's mother, Ms. A          vociferously denied the case manager's claims.  She assured Ms. Diaz that she remained committed to caring for her son as his sponsor.  Wondering if there was some misunderstanding or unwillingness to admit to a change of heart, we independently called Ms. A          .  She affirmed unambiguously that she had never expressed a wish to withdraw her sponsorship application and that she wanted nothing more than to see J        released to her care.

11. When things did not move forward, this case was submitted to Flores counsel as an instance in which unnecessary prohibitions to and delays in release were being imposed on a small child.  We were shocked to learn that Ms. Chavez had apparently claimed to government attorneys that J        's "aunt" had withdrawn as sponsor on May 11th (well before she'd reported this to Ms. D     ) and that, further, Ms. A          had herself refused to be fingerprinted.  We had documented what had in fact been repeated efforts to set up such an appointment. Our contemporaneous contacts with both J        's mother and his potential sponsor were very much at odds with Ms. Chavez's account.

12.  As a physician and recognized expert in the impact of family separation and asylum detention on children, it is my professional opinion that the delay in the release of this child is of grave concern.  Much has been researched and documented demonstrating the significant harm to children who remain separated from family and in asylum detention.  Small children, whose sense of the passage of time is very different from that of the mature adult, will experience the separation of day as a week, of a week as a month.  A separation of 3 months is an extraordinarily long time for any child, but particularly one of tender years, such a J      , barely 7 years old.

13.  The degree of trauma that children endure in detention is experienced in direct relation to the duration of that detention.  That trauma is not only experienced in psychological symptoms (increased anxiety and depression) but also in sleep and eating disorders, cognitive/learning/developmental disorders, problems later in life with social relationships,  increased incidence of major mental illness, including substance abuse and suicide.  Children are also affected physiologically, in impairment of their immune and cardiovascular systems. Those who have been traumatized in this way have a statistically foreshortened lifespan.  When compared to age and situationally matched children, those in detention, separated from community and family, display a profile most closely resembling non-immigrant children hospitalized for major psychiatric disorders. In contrast, those of the matched asylum-seeking group who are placed in family homes and community settings demonstrate a profile comparable to normal age-matched peers.

Submitted under penalty of perjury this 16th day of June, 2020 in Los Angeles, California.

Amy J Cohen MD