ANDREA SHERIDAN ORDIN (SBN 38235)
STRUMWASSER & WOOCHER LLP
10940 Wilshire Boulevard, Suite 2000
Los Angeles, California 90024
Telephone: (310) 576-1233
Facsimile: (310) 319-0156
E-mail: aordin@strumwooch.com

*Special Master/ Independent Monitor*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM P. BARR, Attorney General of the United States, *et al.*,<br><br>Defendants. | CASE NO. CV 85-4544-DMG (AGRx)<br><br>**NOTICE OF FILING OF INTERIM REPORT ON COVID-19 BY INDEPENDENT MONITOR** |

On October 5, 2018, the Court ordered the appointment of Andrea Sheridan Ordin as Special Master/Independent Monitor ("Monitor") and ordered the Monitor to file formal Reports and Recommendations to the Court. [Doc #494.] On May 22, 2020, the Court ordered, among other things:

> "Dr. Paul Wise and the Independent Monitor Andrea Ordin shall provide enhanced monitoring of the FRCs' care of minors, and shall have the ability to (a) request and obtain copies of medical care data and policies; (b) have telephone or videoconference access to persons most knowledgeable at the FRCs with whom they can discuss the baseline of custodial medical care, health care protocols, and COVID-19 prevention practices; (c) consider protocols for identifying minors who have serious medical conditions that may make them more vulnerable to COVID-19; (d) interview minors with serious medical conditions or, as appropriate, their guardians; and (e) make such recommendations for remedial action that they deem appropriate."

In accordance with the Court's Orders, the Monitor submits the attached Interim Report on Covid-19 by Independent Monitor.

DATED:  June 25, 2020        Respectfully submitted,

                             Andrea Sheridan Ordin
                             STRUMWASSER & WOOCHER LLP


                             By   /s/ Andrea Sheridan Ordin
                                   Andrea Sheridan Ordin

                             *Special Master / Independent Monitor*

# CERTIFICATE OF SERVICE

Case No. CV 85-4544-DMG (AGRx)

I am a citizen of the United States. My business address is 10940 Wilshire Boulevard, Suite 2000, Los Angeles, California 90024. I am over the age of 18 years, and not a party to the within action.

I hereby certify that on June 25, 2020, I electronically filed the following documents with the Clerk of the Court for the United States District Court, Central District of California by using the CM/ECF system:

**NOTICE OF FILING OF INTERIM REPORT ON COVID-19 BY INDEPENDENT MONITOR**

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the United States the foregoing is true and correct. Executed on June 25, 2020, at Los Angeles, California.

                                           */s/ Jeff Thomson*
                                           Jeff Thomson

In the United States District Court

Central District of California – Western Division

JENNY LISETTE FLORES, *et al.*, Plaintiffs,

v.

WILLIAM P. BARR, *et al.*, Defendants.

Case No. CV 85-4544-DMG (AGRx)

Hon. Dolly M. Gee, United States District Judge

**Interim Report on Covid-19**

**by Independent Monitor**

Andrea Sheridan Ordin
Special Master/Independent Monitor
Strumwasser & Woocher LLP
1094 Wilshire Boulevard, Suite 2000
Los Angeles, California 90024
(310) 576-1233

## INTRODUCTION

On May 22, 2020, this Court ordered (Doc. 799), among other things, that:

> Dr. Paul Wise and the Independent Monitor Andrea Ordin shall provide enhanced monitoring of the FRCs' care of minors, and shall have the ability to (a) request and obtain copies of medical care data and policies; (b) have telephone or videoconference access to persons most knowledgeable at the FRCs with whom they can discuss the baseline of custodial medical care, health care protocols, and COVID-19 prevention practices; (c) consider protocols for identifying minors who have serious medical conditions that may make them more vulnerable to COVID-19; (d) interview minors with serious medical conditions or, as appropriate, their guardians; and (e) make such recommendations for remedial action that they deem appropriate.

## REVIEW OF MONITORING

After review of the Court's Order and questions raised, the Independent Monitor, working with Dr. Wise, proceeded to determine the baseline of custodial medical care, health care protocols, and COVID-19 prevention practices. Dr. Wise had prepared a note on May 21, 2020 reviewing the challenge ICE faces in protecting detained minors and their families from Covid-19. The CDC's "Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities" begins with an articulation of why these kinds of facilities are at higher risk. In summary:

(1) ICE facilities convey an inherently greater risk of COVID-19 than most settings after general release;

(2) Even good compliance with CDC guidance will not likely be sufficient to fully protect minors and their families from Covid-19 while in ICE detention;

    (3)    The risk of COVID-19 in ICE facilities will likely reflect the prevalence of COVID-19 in surrounding communities, as facility staff will likely be a primary mechanism of virus introduction. Of special concern is the spread of COVID-19 from one ICE facility to another via the interchange of ICE staff, contracted workers, or leadership between facilities;

    (4)    The implementation of protective measures, including screening, the use of masks, social distancing, and isolation and/or cohorting of detainees should be assessed;

    (5)    The criteria and procedures utilized to assess elevated medical risk for Covid-19 among minors require urgent review.

The Monitor then examined the Report filed by ICE Juvenile Coordinator Deane Dougherty on June 10, 2020 (Doc. 813), which, pursuant to this Court's April 24, 2020 Order (Doc. 784), focused on ICE's response to the Covid-19 pandemic.

Subsequently, the Independent Monitor received a request for enhanced monitoring and investigation into medical care at ICE Family Residential Centers (FRCs). This request, made by Counsel from Proyecto Dilley, RAICES, and ALDEA, included declarations from Class Members and medical professionals alleging failures in ICE's health care system. Declarants asserted that ICE had not implemented adequate measures to protect detainees from Covid-19, especially with regard to minors at elevated risk due to pre-existing medical conditions.

On June 17, 2020, Plaintiffs filed a Response to the ICE Juvenile Coordinator Report (Doc. 824). A hearing was scheduled for June 19, 2020 and later postponed to June 26, 2020 at 11:00 a.m. Plaintiffs' response raised further concerns over conditions at FRCs in light of the Covid-19 crisis.

The Independent Monitor and Dr. Wise's continued monitoring efforts are set forth below in a note on June 25, 2020, reviewing the central medical considerations regarding the risk of infection by the SARS-CoV-2, the virus that causes the disease, Covid-19, among minors being held in ICE facilities:

## Current Assessment

The assessment of the preventive and medical provisions addressing the threat of Covid-19 in two ICE facilities was conducted during the period May 29, 2020 through June 24, 2020. No site visits were possible due to Covid-19 travel restrictions and facility precautions. Elements of the assessment that was conducted included:

(1) Discussions with senior officials of the ICE Health Services Corps;

(2) Discussions with ICE supervisory officials for the South Texas Family Residential Center (Dilley) and the Karnes County Residential Center (Karnes);

(3) Discussions with Health Service Corps officials and pediatricians responsible for medical care in the Dilley and Karnes facilities;

(4) Discussions with 9 detained women with children, including interviews with 4 of the children;

(5) Review of video tapes and still photographs of the common living areas, including play areas and cafeterias, and temperature screening of staff upon entry into the facilities.

These discussions and the review of the provided materials lead to several findings:

(1) **Medical system for children**. While there are isolated complaints that merit further investigation, the descriptions of the medical system for children in these two facilities seems adequate. Medical personnel are present in the facility at all

4

times and advanced practice clinicians (physician assistants or nurse practitioners) during daytime hours. Pediatricians hold clinical sessions several days each week and are available on call. Acute or complicated patient needs are addressed through referral to the children's hospital in San Antonio or a local health facility. The quality of these services, however, could not be addressed given the time and procedural constraints of this assessment, and will be addressed in a future report.

(2) **Covid-19 Provisions**. There are several components of the CDC Covid-19 recommendations that are of special concern.

   (a) **Screening of staff upon entry to the facilities**. Screening was reported to include a review of symptoms and a temperature check. Still photographs of these screenings were provided and appeared appropriate.

   (b) **Assessment of elevated medical risk.** Discussions with the medical staff and pediatricians serving the facilities suggested that significant medical risk would be identified if such conditions existed in detained children. The assessment of elevated risk is based on the interpretation of CDC guidance and the clinical judgment of pediatric staff. Provided data suggested that when significant chronic illness was identified, minors and family were released. The medical staff reported that any condition that would imply elevated risk are reported to ICE officials.

   (c) **Cohorting of new entrants**. Symptom and temperature screening was also reportedly conducted on all new detainees upon entry to the facility. In addition, all newly entered families are held in a separate area of the facility for 14 days and monitored for the appearance of any worrisome symptoms.

   (d) **Masking**. The stated policy is for all staff and detainees to wear a mask at all times (except while eating). However, the provided video for Dilley revealed only partial compliance with masking requirements among

5

staff. Interviews with the detained women confirmed that masking among staff is only intermittently enforced.

(e) **Distancing**. The provided videos showed appropriate distancing among staff and detainees. However, all the detained women reported that distancing was not practiced in the common dining room. Six to 8 persons of different families were seated at each table without distancing during meals.

(f) **Covid-19 cases in surrounding communities.** As noted in the prior note, the risk to these facilities is largely dependent upon the prevalence of Covid-19 in surrounding communities, as facility staff will likely be a primary mechanism of virus introduction. Indeed, the Independent Monitor has learned of four confirmed cases of Covid-19 at the FRC at Dilley: two STFRC contract staff, who had contact with residents, and two deportation officers, who had limited contact with staff. The recent trends in this regard are worrisome (data from Johns Hopkins Coronavirus Resource Center, available at URL: https://coronavirus.jhu.edu/us-map)

**Frio County (Dilley) Confirmed Covid-19 Cases (as of 6/23)**



6

**Karnes County Confirmed Covid-19 Cases (as of 6/23)**



In sum, while the general medical system at the facilities appears to be appropriate for the care of children in custody, the risk of Covid-19 to minors and their families in ICE custody continues to grow. The lack of consistent compliance with recommended masking among some staff and distancing requirements in common eating areas elevate the risk that the virus once introduced into the facility may not be well contained. This finding is of particular concern given the recent increase in Covid-19 cases in the surrounding communities.

**SUBSEQUENT DEVELOPMENTS**

At 9 a.m. on Thursday, June 25, 2020, the Independent Monitor learned of multiple Covid-19 infections at the Karnes facility from Juvenile Coordinator Deane Dougherty. "Saturation" testing of all Karnes residents commenced on June 22, and medical staff notified ERO San Antonio that 11 residents tested positive for Covid-19. All detainees are currently stable, asymptomatic, and remain housed in medical isolation rooms, where GEO Medical staff continues to monitor for any symptoms.

Also on Thursday, June 25, the Independent Monitor received confirmation of the four non-resident Covid-19 cases at Dilley. (See Letter to

7

Deane Dougherty from Richard Hunt, dated June 25, 2020, attached as Exhibit A.) However, because testing at Dilley did not start until June 23, results will not be available until Friday, June 26 or Saturday, June 27.

**CONCLUSION**

Because of the news received today regarding the multiple cases of Covid-19, this Interim Report focuses on the reports, conditions, and procedures related to preventing Covid-19 infections in the FRCs. The Independent Monitor proposes to file a supplemental Interim Report on additional topics of enhanced monitoring, including quality of medical care, and issues of hygiene and nutrition.

# EXHIBIT A

Letter to Deane Dougherty from Richard Hunt, dated June 25, 2020

*Enforcement and Removal Operations*
**U.S. Department of Homeland Security**
South Texas Family Residential Center
300 El Rancho Way
Dilley, Texas 78017



**U.S. Immigration and Customs Enforcement**

June 25, 2020

MEMORDANDUM FOR:   Deane Dougherty
                  Deputy Assistant Director
                  Alternatives to Detention Division

FROM:   Richard M. Hunt
        Assistant Field Office Director
        South Texas Family Residential Center

SUBJECT:   Summary of Positive COVID employees

At the request of the court appointed Special Monitor over the Flores Settlement Agreement, the below summary of employees who have tested positive for COVID 19 at the South Texas Family Residential Center in Dilley, Texas. To date, zero residents have tested positive or displayed symptoms related to the COVID 19 virus.

Core Civic employee One
On June 15, 2020, Core Civic Resident Supervisor (RS) at the South Texas Family Residential Center (STFRC), reported receiving a positive result for COVID19 testing. The COVID19 test was conducted on June 12, 2020, after the employee was made aware that they had been in contact with a COVID positive individual outside of work on June 11, 2020. Upon notification of the positive result, Core Civic conducted in depth contract tracing through employee interviews and extensive review of closed-circuit video footage of the employee's movement throughout the residential center. Contact tracing revealed; The employee's last day at the facility was June 9, 2020. The employee's last contact with residents at the facility was June 8, 2020. The five residents identified as having contact with the RS were identified and housed in the Blue Butterfly neighborhood for medical observation due to the possibility of exposure. The residents were not tested at that time, at the discretion of IHSC, due to the CDC suggested 48-hour timeline for contract tracing of an asymptomatic individual. Any staff members identified through contact tracing, were notified and placed on self-quarantine for 14 days or have a test conducted, with negative results. This test must be completed after a minimum of 5 days in quarantine. No residents or employees have tested positive as a result of exposure in this case. The RS role is to attend to the needs of the residents at the STFRC. The RS assists residents in their dorms, dayrooms and recreation areas, as well as ensures safety and supervision throughout the residential center.

www.ice.gov

SUBJECT: Summary of Positive COVID employees
Page 2

Core Civic employee Two
On June 20, 2020, Core Civic Resident Supervisor (RS) at STFRC, reported receiving a positive result for COVID19 testing. The COVID19 test was conducted on June 19, 2020, after the employee began to feel ill. Upon notification of the positive result, Core Civic conducted in depth contract tracing through employee interviews and extensive review of closed-circuit video footage of the employee's movement throughout the residential center. Contact tracing revealed; The employee's last day at the facility was June 19, 2020. The employee did not have close contact with any residents during the five days prior to the testing. The reason for no contact is due to the neighborhood in which the RS is assigned is currently under renovation and there are zero residents housed there. Any staff members identified through contact tracing, were notified and placed on self-quarantine for 14 days or have a test conducted, with negative results. This test must be completed after a minimum of 5 days in quarantine. No residents or employees have tested positive as a result of exposure in this case. The RS role is to attend to the needs of the residents at the STFRC. The RS assists residents in their dorms, dayrooms and recreation areas, as well as ensures safety and supervision throughout the residential center.

ICE employee One
On June 20, 2020, an Immigration and Customs Enforcement (ICE) officer at STFRC reported receiving a positive result for COVID19 testing. The COVID19 test was conducted on June 13, 2020, after the employee began to feel ill. Upon notification of the positive result, ICE conducted in depth contract tracing through employee interviews and extensive review of closed-circuit video footage of the employee's movement throughout the residential center. Contact tracing revealed; The employee's last day at the facility was June 10, 2020. The employee did not have close contact with any residents during the five days prior to the testing. It is common for this officer to not have contact with residents, as he works in the front office area of STFRC and does not frequently engage with residents. Any staff members identified through contact tracing, were notified and placed on self-quarantine for 14 days or have a test conducted, with negative results. This test must be completed after a minimum of 5 days in quarantine. No residents or employees have tested positive as a result of exposure in this case. The officers role at STFRC, is to communicate via telephone with residents sponsors to establish a travel plan for release and to prepare the release manifest.

ICE employee Two
On June 23, 2020, an Immigration and Customs Enforcement (ICE) officer at STFRC reported receiving a positive result for COVID19 testing. The COVID19 test was conducted on June 22, 2020, after the employee began to feel ill. Upon notification of the positive result, ICE conducted in depth contract tracing through employee interviews and extensive review of closed-circuit video footage of the employee's movement throughout the residential center. Contact tracing revealed; The employee's last day at the facility was June 19, 2020. The employee did not have close contact with any residents during the five days prior to the testing. It is common for this officer to not have contact with residents, as he works in the compliance / standards area of STFRC and does not frequently engage with residents. Any staff members identified through contact tracing, were notified and placed on self-quarantine for 14 days or have a test conducted, with negative results. This test must be completed after a minimum of 5 days in quarantine. No residents or employees have tested positive as a result of exposure in this case. The officer's role at STFRC, is to communicate via telephone with residents' sponsors to establish a travel plan for release and to prepare the release manifest.

SUBJECT: Summary of Positive COVID employees
Page 2