1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Peter A. Schey (Cal. Bar No. 58232)
Carlos Holguín (Cal. Bar No. 90754)
256 South Occidental Boulevard
Los Angeles, CA  90057
Telephone: (213) 388-8693
Facsimile: (213) 386-9484
Email:pschey@centerforhumanrights.org
        crholguin@centerforhumanrights.org
*Listing continues on next page*
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM BARR, Attorney General of the United States, *et al.*,<br><br>Defendants. | Case No. CV 85-4544-DMG-AGRx<br><br>**PLAINTIFFS' DECLARATION RE RELEASE OF CLASS MEMBER AFPP**<br><br>Hearing:  June 26, 2020<br>Time: 11:00 a.m.<br>[HON. DOLLY M. GEE] |

USF SCHOOL OF LAW IMMIGRATION CLINIC
Bill Ong Hing (Cal. Bar No. 61513)
2130 Fulton Street
San Francisco, CA 94117-1080
Telephone: (415) 422-4475
Email: bhing@usfca.edu

LA RAZA CENTRO LEGAL, INC.
Stephen Rosenbaum (Cal. Bar No. 98634)
474 Valencia Street, #295
San Francisco, CA 94103
Telephone: (415) 575-3500

THE LAW FOUNDATION OF SILICON VALLEY
Jennifer Kelleher Cloyd (Cal. Bar No. 197348)
Katherine H. Manning (Cal. Bar No. 229233)
Annette Kirkham (Cal. Bar No. 217958)
4 North Second Street, Suite 1300
San Jose, CA 95113
Telephone: (408) 280-2437
Email: kate.manning@lawfoundation.org

UNIVERSITY OF CALIFORNIA DAVIS
SCHOOL OF LAW
Immigration Law Clinic
Holly S. Cooper (197626)
One Shields Avenue, TB 30
Davis, CA 95616
Telephone: (530) 754-4833
Email: hscooper@ucdavis.edu

**Declaration of Peter Schey**

I, Peter Schey, declare as follows:

1.      For the reasons set forth below, Plaintiffs request that the Court Order that class member AFPP sometimes also referred to as APP ("Allan") identified in the Ice Juvenile Coordinator's Report filed June 10, 2020 [Doc. # 813-1] be released to the care of his mother prior to his 18th birthday on July 7, 2020, unless ICE files and serves a mental health professional's report credibly stating that s/he has interviewed and assessed Allan and determined that he is a danger to himself or others and must therefore remain incarcerated.

2.      Allan's detention has previously been addressed in declarations filed by Samantha Ratcliffe [Doc.#824-1 ¶¶ 6, 16-20], Allan's mother Alba. [Doc. # 744-19, Ex. Q], and Allan. [Doc. # 774-18, Ex. P.]

3.      Allan is a class member detained by ICE at Cowlitz County Juvenile Detention Center in Longview, Washington. He turns 18 on July 7, 2020, and unless ordered otherwise by this Court, will be immediately transferred to an ICE adult facility and likely lose his *Flores* right to be released and face relatively prompt deportation. In addition to being eligible for asylum, because he was abandoned by his father, he also appears to be eligible for Special Immigrant Juvenile status. If on his 18th birthday he is moved to an adult detention center, he will most likely lose his eligibility for SIJ status. In addition, if he is moved to an adult detention center outside of California, he will almost certainly lose SIJ eligibility as California is one of a few states that permit the filing of the necessary state court predicate orders when a juvenile is eighteen years old.

4.      I have reviewed ICE documents relating to Allan's immigration case and spoken by telephone with his biological mother, Alba.

5.      Alba has tried to have Allan released to her since he was arrested by ICE agents in September 2019. She informs me that she works and has her own apartment with space for Allan.

6.      Alba informed me she has continuously resided in the U,S. since 2004.

7.      In addition to Allan, Alba has four children: Katherine (DOB April 16, 2007); Noemi (DOB April 16, 2007); Allison (DOB July 31, 2008); and Rosemary (DOB March 16, 2015). All four children were born in Washington, D.C. and are U.S. citizens. Alba informed me that all four children attend public schools and none have had encounters with law enforcement for any reason.

8.      Allan was born on July 7, 2002 in Honduras. Alda has informed me that when she came to the United States, Allan started living with his Alda's mother, Allan's maternal grandmother, in the city of Colon, Honduras.

9.      Alda's mother died in January 2014 and, then twelve years old, Allan went to live with Alda's sister in San Pedro Sula, Honduras.

10.     San Pedro Sula is notoriously one of the most dangerous and violent cities on earth. Gangs are unrelenting in their viciousness as they vie for neighborhood domination. Families in

PLAINTIFFS' DECLARATION RE RELEASE OF CLASS
MEMBER
CV 85-4544-DMG-AGRx

San Pedro Sula live paralyzed by fear of frequent kidnappings, rape, extortion, and murder. There are no repercussions for those who kill and often no way out for the residents of this lived horror. It was far too dangerous for Allan, who was by then 14 years old, to stay living with my sister in San Pedro Sula. In He left to come live with me in the United States.

11.     According to ICE documents, Allan has no criminal history in Honduras, was never arrested or charged with any crime, and has never had any interactions with law enforcement in Honduras.

12.     Allan arrived in the United States to live with his mother and seek asylum here and was apprehended by CBP on or about December 17, 2016. According to ICE documents, he was transferred to the custody of the Office of Refugee Resettlement and placed at BCFS San Antonio.

13.     I am informed that Alda worked swiftly with ORR to reunify with her son. She responded to all of the necessary documents, questions, and background checks required to be vetted as his sponsor. Allan was not considered dangerous or a flight risk nor was there any reason that ORR found he should not be released or that Alda could not ensure his safety and appearance at court hearings. ICE records show that at the end of that process, on December 29, 2016, ORR released Allan to his mother's care.

14.     ICE records show that Allan has no criminal history in the United States. He has never been arrested for, charged, or convicted of any crime.

15.     Alda has informed me that while Allan lived with her, he never exhibited aggression, violence, or threats towards her or anyone in the family. He had a loving relationship with his mother and with his four younger siblings.

16.     Allan had three United States immigration court appearances. He attended all three of them. His mother hired an attorney, who was present for the third hearing. Allan has never failed to appear for a court hearing and there is no reason to believe he is a flight risk.

17.     In August of 2019, the family needed to temporarily reside with one of Alda's friends because an apartment that they were moving to was not yet ready for them.

18.     Because there was little room for the family in Alda's friend's home, during that time Alda decided that Allan, who was 17 years old, could temporarily stay with friends until the apartment where she planned to reside was ready for occupancy.

19.     On September 21, 2019, Allan was apprehended by ICE.  An ICE report states that at the time of Allan's arrest, five (5) ICE agents had entered the home where he was temporarily residing. The agents were looking for someone else. The ICE report states that Allan had two tattoos, one with lips (Alda has informed me this one was for his girlfriend), and a second with a crown and the date of his grandmother's death.

20.     The ICE report states that the ICE officers were given consent to enter the residence. No one present resisted their entry or search of the premises. Four house occupants were present and answered the officers questions. Officer Hamer asked Allan if he had identification. He said he had a passport in his room. Alda has informed me that Allan normally kept his passport

2

in his backpack.

21.     Officer Hamer accompanied Allan to his room where Allan started rummaging through a closet looking for his passport while Officer Hamer stood several feet behind him. The report states that Officer Hamar then heard a hard object fall from one of the shelves to the floor of the closet "as if something hard had been picked up and then dropped." The report states that Officer Hamar immediately grabbed Allan from behind and Allan then "lunged" the officer assumed to retrieve whatever had dropped. Officer Hamar threw Allan to the ground and placed him in handcuffs. Allan informed officer Hamar that the object that fell was a knife, which was then recovered from the closet. Officer Hamer then searched the closet but did not locate Allan's passport there.

22.     As a result of this incident Allan was not charged with any crimes. He had never displayed the knife, nor had he threatened agent Hamar or anyone else with the knife in any way, However, he has been detained by ICE since September 2019 as a flight risk and a danger.

23.     Efforts by Alda to have Allan released back to her custody have been ignored by ICE. No home study has been conducted. I am unaware of any basis for the determination that Allan is a flight risk. As mentioned above, prior to his September 2019 arrest by ICE he appeared as required at all of his removal hearings. He has never attempted to escape from custody. He has no criminal history or history of failing to appear. Also, on August 13, 2019, Allan filed an application for asylum, making it unlikely he will fail to appear if released.

24.     I am unaware of any professional mental health specialist who has assessed Allan and determined that he is a danger to himself or anyone else.  It is unclear from any ICE records how it was determined that Allan remains a danger to himself or anyone else.

25.     Alda informs me that since Allan's arrest, he has only been permitted minimal telephone contact with his mother, an occasional ten-minute phone call. She is unable to call him. She informs me that his lengthy detention without an end day in sight has caused him to feel depressed and hopeless.  He is very afraid of being deported back to Honduras and separated from his mother and family.

26.     Alda informs me that nobody from ICE has ever contacted her to ask if she is available to care for her son. Nobody has ever discussed with her the reason Allan continues to be detained or what he or she need to do to have him released to the custody of his mother.

27.     Alda has informed me that if Allan is released to her, she will make sure he attends all of his hearings with the Immigration Court. She will also make sure he attends any check-ins with ICE and updates his address with the Immigration Court and ICE if they were to move. She has also informed me that she will find an attorney for Allan's Immigration Court proceedings.

27.     As stated above, Plaintiffs request that the Court Order that Allan be released to the care of his mother prior to his 18th birthday unless ICE files and serves a mental health expert's report credibly stating that s/he has interviewed and assessed Allan and determined that he is a danger to himself or others and must therefore remain incarcerated.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 25th day of June, 2020, in Oak View, California.

1

2

3          Peter Schey

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

1

## CERTIFICATE OF SERVICE

2

3

I hereby certify that on June 17, 2020, I served the foregoing pleading on all

4

counsel of record by means of the District Clerk's CM/ECF electronic filing system.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/ *Peter Schey*
PETER SCHEY
Center for Human Rights and
Constitutional Law

Attorney for Plaintiffs

5