# ATTACHMENT A

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY LISETTE FLORES; *et al.*, | ) Case No. CV 85-4544-DMG |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| ERIC H. HOLDER, JR., Attorney | ) |
| General of the United States; *et al.,* | ) |
| | ) |
| Defendants. | ) |
| | ) |
| _____ | ) |

## ANNUAL REPORT OF JUVENILE COORDINATOR DEANE DOUGHTERY SUBMITTED BY IMMIGRATION AND CUSTOMS ENFORCEMENT

The Flores Settlement Agreement (FSA), requires a yearly report be made to the Court regarding compliance with the terms of the FSA. FSA ¶ 30. This year's report is due July 1, 2020. Currently, U.S. Immigration and Customs Enforcement (ICE) is aware of five areas in which the Court had previously requested reporting regarding ICE's compliance, based on the Court's June 27, 2017 Order,  relating to: (1) provision of the Notice of Advisals and the free legal service providers list; (2) prompt and continuous efforts to release/parole FSA Class Members; (3) releasing Class Members as expeditiously as possible;  (4) housing minors in secure facilities; and (5) housing minors in unlicensed facilities. In order to monitor compliance with the provision of the Notice of Advisals, and the requirement to make continuous efforts to release Class Members as expeditiously as possible, ICE has continued to monitor a web-based repository used for the collection and review of the compliance data and forms. This report

covers ICE's compliance, as to the identified aforementioned areas of concern, at its three Family Residential Centers (FRCs) between June 1, 2019 and May 31, 2020.

In orders issued on April 24 and May 22, 2020, the Court ordered additional monitoring and that ICE submit monthly interim reports for the duration of the COVID-19 pandemic. These interim reports, which ICE has previously filed on May 15 and June 10, 2020, describe ICE's efforts to make and record expedited, specific, and individualized custody determinations and redeterminations of Class Members at FRCs; provides an updated census of those Class Members remaining at the FRCs longer than 20 days; and includes an update on the status of implementation of COVID-19 guidances and COVID-19 cases at the FRCs. New developments relating to COVID-19 guidances, processes, and testing at the FRCs since the June 10, 2020 report was submitted, as well as the additional topics outlined in the Court's June 26, 2020 Order, will be addressed in the next interim report due July 24, 2020.

## I.   Notable Changes and Trends

During the reporting period, June 1, 2019 through May 31, 2020, the FRCs experienced both significant increases and significant decreases in family unit book-ins and book-outs, which generally coincided with migration trends and the overall number of encounters by U.S. Customs and Border Protection (CBP). Whereas, during fiscal year 2019, the statistics for CBP Southwest border encounters, the chief source for FRC referrals, demonstrate some of the highest levels of encounters in recent history, current fiscal year-to-date 2020 data shows a steep decline in encounters.[1]  Given the timing of the dramatic drop in the number of encounters by CBP, the

---

[1] *Compare* U.S. Customs and Border Protection, Southwest Border Migration FY 2019, https://www.cbp.gov/newsroom/stats/sw-border-migration (last accessed June 29, 2020 at 3:30 p.m.), *with* U.S. Customs and Border Protection, Southwest Border Migration FY 2020, https://www.cbp.gov/newsroom/stats/sw-border-migration (last accessed June 29, 2020 at 3:40 p.m.).

COVID-19 pandemic, and the resulting travel restrictions implemented by countries around the world, is likely the cause.

Additionally, the U.S. Department of Homeland Security (DHS) and U.S. Department of Justice published a joint interim final rule titled, *Asylum Eligibility and Procedural Modifications* ("the IFR"). 84 Fed. Reg. 33829 (July 16, 2019). The IFR amended 8 C.F.R. §§ 208.13(c) and 1208.13(c) to provide that, with limited exceptions, aliens who enter or attempt to enter the United States across the southern land border, after failing to apply for protection in a country through which they transited en route to the United States, are ineligible for asylum. The IFR also amended 8 C.F.R. §§ 208.30, 1003.42, and 1208.30 to require asylum officers and immigration judges to apply this new bar when administering the credible fear screening process applicable to aliens who are subject to expedited removal under section 235(b)(1) of the Immigration and Nationality Act (INA). Since the IFR took effect in July 2019, U.S. Citizenship and Immigration Services (USCIS) has reported a decrease in the number of individuals, including family units, who establish a positive credible or reasonable fear.[2] While the numbers reported by USCIS do not indicate whether or to what extent the IFR was applied, there has been a general increase in negative credible and reasonable fear findings by USCIS during this reporting time period.

Individuals who do not establish a credible or reasonable fear of persecution or torture before USCIS may seek *de novo* review by an immigration judge. Credible and reasonable fear review by the Executive Office for Immigration Review (EOIR) necessarily extends the credible and reasonable fear processing time as it requires coordination between EOIR and the individual's attorney of record (when applicable). EOIR also published statistics relating to credible and

---

[2] *See* U.S. Citizenship and Immigration Services, Semi-Monthly Credible Fear and Reasonable Fear Receipts and Decisions, https://www.uscis.gov/tools/reports-studies/immigration-forms-data/semi-monthly-credible-fear-and-reasonable-fear-receipts-and-decisions (last accessed June 29, 2020 at 4:15 p.m.).

reasonable fear referrals, including outcomes for cases falling within this reporting time period, which shows that EOIR affirms the DHS's negative credible or reasonable fear findings in more than 73% of cases.[3] As the regulations do not permit an appeal of an immigration judge's decision affirming a negative credible or reasonable fear finding, the expedited removal order in upwards of 70% of these cases becomes final, and the case is remanded to DHS to execute the removal order.

In accordance with Section 235(b)(2)(C) of the INA, which authorizes the DHS to return certain applicants for admission to the contiguous country from which they arrive on land (whether or not at a designated port of entry), pending their removal proceedings under Section 240 of the INA, DHS began implementing the Migrant Protection Protocols (MPP) in January 2019. There were 3 ports of entry implementing MPP prior to June 1, 2019, and the implementation of MPP was subsequently rolled out to 4 additional ports of entry between July 2019 and January 2020. During the first nine months MPP was in effect, DHS returned more than 55,000 aliens to Mexico under MPP to await their hearings before EOIR.[4] In late March 2020, hearings for those enrolled in MPP at all locations were temporarily postponed due to COVID-19.[5] Family units comprise a majority of those aliens amenable to treatment under MPP, which has resulted in a decrease in the volume of family units referred to the FRCs.

---

[3] Executive Office for Immigration Review Adjudication Statistics, Credible Fear Review and Reasonable Fear Review Decisions, https://www.justice.gov/eoir/page/file/1104856/download (last accessed June 29, 2020, at 5:50 p.m.); Executive Office for Immigration Review Adjudication Statistics, Credible Fear and Asylum Process: Fiscal Year (FY) 2019, https://www.justice.gov/eoir/file/1217001/download (last accessed June 29, 2020 at 5:45 p.m.)

[4] Assessment of the Migrant Protection Protocols (MPP) dated October 28, 2019, p. 2, *available at* https://www.dhs.gov/sites/default/files/publications/assessment_of_the_migrant_protection_protocols_mpp.pdf.

[5] Joint DHS/EOIR Statement on MPP Rescheduling dates March 23, 2020, https://www.dhs.gov/news/2020/03/23/joint-statement-mpp-rescheduling

II.     **South Texas Family Residential Center (STFRC)**

During the annual reporting period, STFRC booked-in approximately 5,972 Class

Members, and ICE audited 299 cases to verify its compliance with the requirements to provide

the pertinent notices and to make and record prompt and continuous efforts to release Class

Members.  Of the 299 files that ICE reviewed, 299 were subject to the parole process because

they were subject to expedited removal under Section 235 of the INA instead of 240

proceedings.

a)  **Notice of Advisals**

Of the 299 files reviewed where the parole process applied, 299 files showed that the

Notice of Advisals was provided to the Class Member.  Of these, 299 files contained a copy of

the Notice, which is Exhibit 6 to the FSA, which was signed by a parent, legal guardian, or Class

Member, if 14 years of age or older.  There were no instances of a refusal to sign by a parent or

Class Member. Accordingly, ICE appears to have fully complied with the requirement to provide

the Notice of Advisals.

b)  **Make and Record Prompt and Continuous Efforts Toward Release**

Of the 299 files reviewed where the parole process applied, 299 files showed that a parole

determination was made. All 299 files contained a Parole Determination Worksheet with

information pertaining to the reasons for the individual parole determinations made in each Class

Member's case.

c)  **Releasing Class Members As Expeditiously as Possible**

Starting November 1, 2017, every Monday, STFRC submitted to the Juvenile

Coordinator a list of Class Members who had been at the facility for more than 20 days, which

included an explanation for the continued detention. The Juvenile Coordinator reviewed these weekly reports and concurred with the continued detention in each case. According to these reports, the reason(s) these individuals were detained over 20 days include: lack of caregiver for the Class Member; delay in transportation arrangements by the resident or caregiver; a parent not delegating a caregiver for ICE to evaluate for release of the minor; delays in the review of cases and motions by immigration judges and the Board of Immigration Appeals; and flight risk factors including, but not limited to, a final order of removal and limited equities in the United States. The average length of stay for minors booked-into STFRC during this time was 30 days.

## III.   Karnes Family Residential Center (KCFRC) [6]

During the reporting period, KCFRC booked-in approximately 921 Class Members. ICE committed to reviewing files to verify its compliance with the requirements to provide pertinent notices and to make and record prompt and continuous efforts to release Class Members. ICE audited 47 cases, in which, the parole process applied to 47 individuals.

### a)   Notice of Advisals

Of the 47 files reviewed, 47 files showed that the Notice of Advisals was provided to the Class Member. Of these files, 47 contained a copy of the Notice, which is Exhibit 6 to the FSA, which was signed by a parent or legal guardian, or Class Member who was 14 years old or older. There was 1 instance of a refusal to sign by a parent or legal guardian.  Accordingly, ICE appears to have fully complied with the requirement to provide the Notice of Advisals at KCFRC.

### b)  Make and Record Prompt and Continuous Efforts Toward Release

---

[6] From the beginning of the reporting time period (June 1, 2019) until September 30, 2019, KCFRC was housing single adult females and not family units. Therefore, data pulled for these statistics represents juveniles that were part of a family unit and that were booked into KCFRC from October 1, 2019 through May 31, 2020.

Of the 47 files reviewed where the parole process applied, 47 files showed that a parole determination was made in the Class Member's case. Of these files, 47 contained a Parole Determination Worksheet with information pertaining to the reasons for the individual parole determinations made in each Class Member's case. In addition, 47 files contained a facility-specific family sponsor contact form.

a)   **Releasing Class Members As Expeditiously as Possible**

Starting November 1, 2017, every Monday, KCFRC submitted to the Juvenile Coordinator a list of Class Members who had been at the facility for longer than 20 days, which included an explanation for the continued detention. The Juvenile Coordinator reviewed these weekly reports and concurred with the continued detention in each case. According to these reports, the reason(s) these individuals were detained over 20 days include: lack of caregiver for the Class Member; delayed fear claim by the parent or legal guardian; data error/not being correctly booked-out in the system, insofar as it appears the detention exceeded 20 days but such was not actually the case; delay in transportation arrangements by the resident or sponsor; a parent not delegating a caregiver for ICE to evaluate for release of the minor; and flight risk factors including, but not limited to, a final order of removal and limited equities in the United States. The average length of stay for minors booked-into KCFRC during this time was 32 days.

**IV.    Berks Family Residential Center (BFRC)**

During the reporting period, BFRC booked-in 278 Class Members. ICE committed to reviewing files to verify its compliance with the requirements to provide pertinent notices and to make and record prompt and continuous efforts toward release. ICE audited 14 cases, in which, the parole process applied to 14 individuals.

a) **Notice of Advisals**

Of the 14 files reviewed, 14 showed that the Notice of Advisals was provided to the Class Member.  All 14 files contained a copy of the Notice, which is Exhibit 6 to the FSA, which was signed by the parent, legal guardian, or Class Member who was 14 years of age or older.  There were 2 instances of a refusal to sign by a parent or legal guardian. Accordingly, ICE appears to have fully complied with the requirement to provide the Notice of Advisals.

b) **Make and Record Prompt and Continuous Efforts Toward Release**

Of the 14 files reviewed, 14 showed that a parole determination was made in the Class Member's case.  All 14 files contained a Parole Determination Worksheet with information pertaining to the reasons for the individual parole determinations made in each Class Member's case. In addition, 14 files contained a facility-specific family sponsor contact form.

c) **Releasing Class Members As Expeditiously as Possible**

Starting on November 1, 2017, every Monday, BFRC submitted to the Juvenile Coordinator a list of Class Members who had been at the facility for more than 20 days, which included an explanation for the continued detention. The Juvenile Coordinator reviewed these weekly reports and concurred with the continued detention in each case.  According to these reports, the reason(s) these individuals were detained over 20 days include: lack of caregiver for the Class Member; delayed fear claim by the parent or legal guardian; data error/not being correctly booked-out in the system, insofar as it appears the detention exceeded 20 days but such was not actually the case; delay in transportation arrangements by the resident or  sponsor; a parent not delegating a caregiver for ICE to evaluate for release of the minor; participation in other court-mandated processes that govern the handling of a resident's case; failure by the caregiver to assume custody of the resident; and flight risk factors including, but not limited to, a

final order of removal and limited equities in the United States. The average length of stay for

minors booked-into BFRC during this time was 25 days.

## V.    Provision of Legal Aid List

Residents at all three FRCs are provided the list of free legal services providers during

the ICE orientation process, which occurs promptly after intake to the facility. This is in addition

to the list of free legal services providers served upon the individual by the arresting DHS

component prior to transfer to an FRC. Legal services presentations, conducted by non-

governmental organizations, are also given to residents, where residents may receive another

copy of the list of free legal services providers. Finally, residents undergoing the credible fear or

reasonable fear review process, receive a copy of the list of free legal services providers from

USCIS.

## VI.    Holding Minors in Secure Facilities

To further ICE's compliance with the FSA, ICE planned to construct additional points of egress

to KCFRC and STFRC that were scheduled to be completed in the fall of 2019. However, almost

immediately after the final regulations implementing the FSA were issued, they were enjoined.

The on-going litigation regarding the FSA has made it operationally impossible to determine the

long-term needs of the FRCs for purposes of operations.

## VII.    Holding Minors in Unlicensed Facilities

### a)  BFRC is a licensed facility

As this Court it aware, BFRC has been licensed as a Child Residential and Day

Treatment Facility under 55 Pa. Code § 3800 since December 1, 1999. On October 22, 2015, the

Pennsylvania Department of Human Services sent a letter stating that it would not renew the

license, and the licensing matter has been in active state court litigation since that time. However,

a state court temporarily reinstated the license for this facility pending the resolution of litigation. *In the Appeal of Berks County Residential Center*, Docket No. 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 (Commonwealth of Pennsylvania Department of Human Services, Bureau of Hearings and Appeals filed November 23, 2015). BFRC continues to be regularly inspected by the Pennsylvania Department of Human Services while litigation remains pending. ICE will continue to cooperate with state inspectors.

### b)  KCFRC and STFRC will continue efforts to obtain licensing

In Texas, an appeals court reinstated the regulation that codifies licensing for FRCs. *Texas Department of Family and Protective Services v. Grassroots Leadership, Inc.*, (Tex. App., Nov. 28, 2018, No. 03-18-00261-CV) 2018 WL 6187433. Texas authorities have inspected the facilities at STFRC and KCFRC regularly during the pendency of the litigation, which is still currently ongoing, and the facilities will continue seeking licensure when that becomes available.

## VIII.    Conclusion

ICE completed its yearly file audit to ensure the necessary forms are contained within the files. The results of the audit reveal that Class Members are receiving the Notice of Advisals and the free legal service providers list, and that parole determinations worksheets are made, recorded and placed in the files. More specific information relating to the specific and individual reasons for not releasing a minor on parole and COVID-19 related topics is being submitted in frequent, separate and ongoing interim reports as ordered by this Court.

Respectfully submitted,

Deane Dougherty
Juvenile Coordinator