# *O.M.G. v. Wolf*

# FILINGS

ANDREA SHERIDAN ORDIN (SBN 38235)
STRUMWASSER & WOOCHER LLP
10940 Wilshire Boulevard, Suite 2000
Los Angeles, California 90024
Telephone: (310) 576-1233
Facsimile: (310) 319-0156
E-mail: aordin@strumwooch.com

*Special Master/ Independent Monitor*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM P. BARR, Attorney General of the United States, *et al.*,<br><br>Defendants. | CASE NO. CV 85-4544-DMG (AGRx)<br><br>**NOTICE OF FILING OF INTERIM REPORT ON COVID-19 BY INDEPENDENT MONITOR** |

On October 5, 2018, the Court ordered the appointment of Andrea Sheridan Ordin as Special Master/Independent Monitor ("Monitor") and ordered the Monitor to file formal Reports and Recommendations to the Court. [Doc #494.] On May 22, 2020, the Court ordered, among other things:

> "Dr. Paul Wise and the Independent Monitor Andrea Ordin shall provide enhanced monitoring of the FRCs' care of minors, and shall have the ability to (a) request and obtain copies of medical care data and policies; (b) have telephone or videoconference access to persons most knowledgeable at the FRCs with whom they can discuss the baseline of custodial medical care, health care protocols, and COVID-19 prevention practices; (c) consider protocols for identifying minors who have serious medical conditions that may make them more vulnerable to COVID-19; (d) interview minors with serious medical conditions or, as appropriate, their guardians; and (e) make such recommendations for remedial action that they deem appropriate."

In accordance with the Court's Orders, the Monitor submits the attached Interim Report on Covid-19 by Independent Monitor.


DATED:      June 25, 2020              Respectfully submitted,

                                      Andrea Sheridan Ordin
                                      STRUMWASSER & WOOCHER LLP


                                      By ___/s/ Andrea Sheridan Ordin___
                                           Andrea Sheridan Ordin

                                      *Special Master / Independent Monitor*

**CERTIFICATE OF SERVICE**

Case No. CV 85-4544-DMG (AGRx)

I am a citizen of the United States. My business address is 10940 Wilshire Boulevard, Suite 2000, Los Angeles, California 90024. I am over the age of 18 years, and not a party to the within action.

I hereby certify that on June 25, 2020, I electronically filed the following documents with the Clerk of the Court for the United States District Court, Central District of California by using the CM/ECF system:

**NOTICE OF FILING OF INTERIM REPORT ON COVID-19 BY INDEPENDENT MONITOR**

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the United States the foregoing is true and correct. Executed on June 25, 2020, at Los Angeles, California.

_____*/s/ Jeff Thomson*_____

Jeff Thomson

3

In the United States District Court

Central District of California – Western Division

JENNY LISETTE FLORES, *et al.*, Plaintiffs,

v.

WILLIAM P. BARR, *et al.*, Defendants.

Case No. CV 85-4544-DMG (AGRx)

Hon. Dolly M. Gee, United States District Judge

**Interim Report on Covid-19**

**by Independent Monitor**

Andrea Sheridan Ordin
Special Master/Independent Monitor
Strumwasser & Woocher LLP
1094 Wilshire Boulevard, Suite 2000
Los Angeles, California 90024
(310) 576-1233

# INTRODUCTION

On May 22, 2020, this Court ordered (Doc. 799), among other things, that:

> Dr. Paul Wise and the Independent Monitor Andrea Ordin shall provide enhanced monitoring of the FRCs' care of minors, and shall have the ability to (a) request and obtain copies of medical care data and policies; (b) have telephone or videoconference access to persons most knowledgeable at the FRCs with whom they can discuss the baseline of custodial medical care, health care protocols, and COVID-19 prevention practices; (c) consider protocols for identifying minors who have serious medical conditions that may make them more vulnerable to COVID-19; (d) interview minors with serious medical conditions or, as appropriate, their guardians; and (e) make such recommendations for remedial action that they deem appropriate.

# REVIEW OF MONITORING

After review of the Court's Order and questions raised, the Independent Monitor, working with Dr. Wise, proceeded to determine the baseline of custodial medical care, health care protocols, and COVID-19 prevention practices. Dr. Wise had prepared a note on May 21, 2020 reviewing the challenge ICE faces in protecting detained minors and their families from Covid-19. The CDC's "Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities" begins with an articulation of why these kinds of facilities are at higher risk.  In summary:

(1)    ICE facilities convey an inherently greater risk of COVID-19 than most settings after general release;

(2)    Even good compliance with CDC guidance will not likely be sufficient to fully protect minors and their families from Covid-19 while in ICE detention;

(3)     The risk of COVID-19 in ICE facilities will likely reflect the
        prevalence of COVID-19 in surrounding communities, as facility
        staff will likely be a primary mechanism of virus introduction.  Of
        special concern is the spread of COVID-19 from one ICE facility
        to another via the interchange of ICE staff, contracted workers,
        or leadership between facilities;

(4)     The implementation of protective measures, including screening,
        the use of masks, social distancing, and isolation and/or cohorting
        of detainees should be assessed;

(5)     The criteria and procedures utilized to assess elevated medical
        risk for Covid-19 among minors require urgent review.

The Monitor then examined the Report filed by  ICE Juvenile

Coordinator Deane Dougherty on June 10, 2020 (Doc. 813), which, pursuant

to this Court's April 24, 2020 Order (Doc. 784), focused on ICE's response to

the Covid-19 pandemic.

        Subsequently, the Independent Monitor received a request for

enhanced monitoring and investigation into medical care at ICE Family

Residential Centers (FRCs). This request, made by Counsel from Proyecto

Dilley, RAICES, and ALDEA, included declarations from Class Members and

medical professionals alleging failures in ICE's health care system.

Declarants asserted that ICE had not implemented adequate measures to

protect detainees from Covid-19, especially with regard to minors at elevated

risk due to pre-existing medical conditions.

        On June 17, 2020, Plaintiffs filed a Response to the ICE Juvenile

Coordinator Report (Doc. 824). A hearing was scheduled for June 19, 2020

and later postponed to June 26, 2020 at 11:00 a.m. Plaintiffs' response raised

further concerns over conditions at FRCs in light of the Covid-19 crisis.

The Independent Monitor and Dr. Wise's continued monitoring efforts are set forth below in a note on June 25, 2020, reviewing the central medical considerations regarding the risk of infection by the SARS-CoV-2, the virus that causes the disease, Covid-19, among minors being held in ICE facilities:

## Current Assessment

The assessment of the preventive and medical provisions addressing the threat of Covid-19 in two ICE facilities was conducted during the period May 29, 2020 through June 24, 2020. No site visits were possible due to Covid-19 travel restrictions and facility precautions. Elements of the assessment that was conducted included:

(1)    Discussions with senior officials of the ICE Health Services Corps;

(2)    Discussions with ICE supervisory officials for the South Texas Family Residential Center (Dilley) and the Karnes County Residential Center (Karnes);

(3)    Discussions with Health Service Corps officials and pediatricians responsible for medical care in the Dilley and Karnes facilities;

(4)    Discussions with 9 detained women with children, including interviews with 4 of the children;

(5)    Review of video tapes and still photographs of the common living areas, including play areas and cafeterias, and temperature screening of staff upon entry into the facilities.

These discussions and the review of the provided materials lead to several findings:

(1)    **Medical system for children**. While there are isolated complaints that merit further investigation, the descriptions of the medical system for children in these two facilities seems adequate. Medical personnel are present in the facility at all

4

times and advanced practice clinicians (physician assistants or nurse practitioners) during daytime hours. Pediatricians hold clinical sessions several days each week and are available on call. Acute or complicated patient needs are addressed through referral to the children's hospital in San Antonio or a local health facility. The quality of these services, however, could not be addressed given the time and procedural constraints of this assessment, and will be addressed in a future report.

(2) **Covid-19 Provisions**. There are several components of the CDC Covid-19 recommendations that are of special concern.

    (a) **Screening of staff upon entry to the facilities**. Screening was reported to include a review of symptoms and a temperature check. Still photographs of these screenings were provided and appeared appropriate.

    (b) **Assessment of elevated medical risk.** Discussions with the medical staff and pediatricians serving the facilities suggested that significant medical risk would be identified if such conditions existed in detained children. The assessment of elevated risk is based on the interpretation of CDC guidance and the clinical judgment of pediatric staff. Provided data suggested that when significant chronic illness was identified, minors and family were released. The medical staff reported that any condition that would imply elevated risk are reported to ICE officials.

    (c) **Cohorting of new entrants**. Symptom and temperature screening was also reportedly conducted on all new detainees upon entry to the facility. In addition, all newly entered families are held in a separate area of the facility for 14 days and monitored for the appearance of any worrisome symptoms.

    (d) **Masking**. The stated policy is for all staff and detainees to wear a mask at all times (except while eating). However, the provided video for Dilley revealed only partial compliance with masking requirements among

5

staff.  Interviews with the detained women confirmed that
masking among staff is only intermittently enforced.

(e)     **Distancing**.  The provided videos showed appropriate
distancing among staff and detainees.  However, all the
detained women reported that distancing was not practiced
in the common dining room.  Six to 8 persons of different
families were seated at each table without distancing
during meals.

(f)     **Covid-19 cases in surrounding communities.**  As noted
in the prior note, the risk to these facilities is largely
dependent upon the prevalence of Covid-19 in surrounding
communities, as facility staff will likely be a primary
mechanism of virus introduction. Indeed, the Independent
Monitor has learned of four confirmed cases of Covid-19 at
the FRC at Dilley: two STFRC contract staff, who had
contact with residents, and two deportation officers, who
had  limited contact with staff. The recent trends in this
regard are worrisome (data from Johns Hopkins
Coronavirus Resource Center, available at URL:
https://coronavirus.jhu.edu/us-map)

**Frio County (Dilley) Confirmed Covid-19 Cases (as of 6/23)**



**Karnes County Confirmed Covid-19 Cases (as of 6/23)**



In sum, while the general medical system at the facilities appears to be appropriate for the care of children in custody, the risk of Covid-19 to minors and their families in ICE custody continues to grow. The lack of consistent compliance with recommended masking among some staff and distancing requirements in common eating areas elevate the risk that the virus once introduced into the facility may not be well contained.  This finding is of particular concern given the recent increase in Covid-19 cases in the surrounding communities.

**SUBSEQUENT DEVELOPMENTS**

At 9 a.m. on Thursday, June 25, 2020, the Independent Monitor learned of multiple Covid-19 infections at the Karnes facility from Juvenile Coordinator Deane Dougherty. "Saturation" testing of all Karnes residents commenced on June 22, and medical staff notified ERO San Antonio that 11 residents tested positive for Covid-19. All detainees are currently stable, asymptomatic, and remain housed in medical isolation rooms, where GEO Medical staff continues to monitor for any symptoms.

Also on Thursday, June 25, the Independent Monitor received confirmation of the four non-resident Covid-19 cases at Dilley. (See Letter to

7

Deane Dougherty from Richard Hunt, dated June 25, 2020, attached as Exhibit A.) However, because testing at Dilley did not start until June 23, results will not be available until Friday, June 26 or Saturday, June 27.

**CONCLUSION**

Because of the news received today regarding the multiple cases of Covid-19, this Interim Report focuses on the reports, conditions, and procedures related to preventing Covid-19 infections in the FRCs. The Independent Monitor proposes to file a supplemental Interim Report on additional topics of enhanced monitoring, including quality of medical care, and issues of hygiene and nutrition.

# EXHIBIT A

## Letter to Deane Dougherty from Richard Hunt, dated June 25, 2020



Enforcement and Removal Operations
**U.S. Department of Homeland Security**
South Texas Family Residential Center
300 El Rancho Way
Dilley, Texas 78017

**U.S. Immigration
and Customs
Enforcement**

June 25, 2020

MEMORDANDUM FOR:    Deane Dougherty
Deputy Assistant Director
Alternatives to Detention Division

FROM:    Richard M. Hunt
Assistant Field Office Director
South Texas Family Residential Center

SUBJECT:    Summary of Positive COVID employees

At the request of the court appointed Special Monitor over the Flores Settlement Agreement, the below summary of employees who have tested positive for COVID 19 at the South Texas Family Residential Center in Dilley, Texas. To date, zero residents have tested positive or displayed symptoms related to the COVID 19 virus.

Core Civic employee One
On June 15, 2020, Core Civic Resident Supervisor (RS) at the South Texas Family Residential Center (STFRC), reported receiving a positive result for COVID19 testing. The COVID19 test was conducted on June 12, 2020, after the employee was made aware that they had been in contact with a COVID positive individual outside of work on June 11, 2020. Upon notification of the positive result, Core Civic conducted in depth contract tracing through employee interviews and extensive review of closed-circuit video footage of the employee's movement throughout the residential center. Contact tracing revealed; The employee's last day at the facility was June 9, 2020. The employee's last contact with residents at the facility was June 8, 2020. The five residents identified as having contact with the RS were identified and housed in the Blue Butterfly neighborhood for medical observation due to the possibility of exposure. The residents were not tested at that time, at the discretion of IHSC, due to the CDC suggested 48-hour timeline for contract tracing of an asymptomatic individual. Any staff members identified through contact tracing, were notified and placed on self-quarantine for 14 days or have a test conducted, with negative results. This test must be completed after a minimum of 5 days in quarantine. No residents or employees have tested positive as a result of exposure in this case. The RS role is to attend to the needs of the residents at the STFRC. The RS assists residents in their dorms, dayrooms and recreation areas, as well as ensures safety and supervision throughout the residential center.

Case 2:85-cv-04544-DMG-AGR   Document 869-1   Filed 06/26/20   Page 15 of 34   Page ID #:38683

Core Civic employee Two

On June 20, 2020, Core Civic Resident Supervisor (RS) at STFRC, reported receiving a positive result for COVID19 testing. The COVID19 test was conducted on June 19, 2020, after the employee began to feel ill. Upon notification of the positive result, Core Civic conducted in depth contract tracing through employee interviews and extensive review of closed-circuit video footage of the employee's movement throughout the residential center. Contact tracing revealed; The employee's last day at the facility was June 19, 2020. The employee did not have close contact with any residents during the five days prior to the testing. The reason for no contact is due to the neighborhood in which the RS is assigned is currently under renovation and there are zero residents housed there. Any staff members identified through contact tracing, were notified and placed on self-quarantine for 14 days or have a test conducted, with negative results. This test must be completed after a minimum of 5 days in quarantine. No residents or employees have tested positive as a result of exposure in this case. The RS role is to attend to the needs of the residents at the STFRC. The RS assists residents in their dorms, dayrooms and recreation areas, as well as ensures safety and supervision throughout the residential center.

ICE employee One

On June 20, 2020, an Immigration and Customs Enforcement (ICE) officer at STFRC reported receiving a positive result for COVID19 testing. The COVID19 test was conducted on June 13, 2020, after the employee began to feel ill. Upon notification of the positive result, ICE conducted in depth contract tracing through employee interviews and extensive review of closed-circuit video footage of the employee's movement throughout the residential center. Contact tracing revealed; The employee's last day at the facility was June 10, 2020. The employee did not have close contact with any residents during the five days prior to the testing. It is common for this officer to not have contact with residents, as he works in the front office area of STFRC and does not frequently engage with residents. Any staff members identified through contact tracing, were notified and placed on self-quarantine for 14 days or have a test conducted, with negative results. This test must be completed after a minimum of 5 days in quarantine. No residents or employees have tested positive as a result of exposure in this case. The officers role at STFRC, is to communicate via telephone with residents sponsors to establish a travel plan for release and to prepare the release manifest.

ICE employee Two

On June 23, 2020, an Immigration and Customs Enforcement (ICE) officer at STFRC reported receiving a positive result for COVID19 testing. The COVID19 test was conducted on June 22, 2020, after the employee began to feel ill. Upon notification of the positive result, ICE conducted in depth contract tracing through employee interviews and extensive review of closed-circuit video footage of the employee's movement throughout the residential center. Contact tracing revealed; The employee's last day at the facility was June 19, 2020. The employee did not have close contact with any residents during the five days prior to the testing. It is common for this officer to not have contact with residents, as he works in the compliance / standards area of STFRC and does not frequently engage with residents. Any staff members identified through contact tracing, were notified and placed on self-quarantine for 14 days or have a test conducted, with negative results. This test must be completed after a minimum of 5 days in quarantine. No residents or employees have tested positive as a result of exposure in this case. The officer's role at STFRC, is to communicate via telephone with residents' sponsors to establish a travel plan for release and to prepare the release manifest.

SUBJECT:  Summary of Positive COVID employees
Page 2

# IN THE UNITED STATES DISTRICT COURT
# FOR DISTRICT OF COLUMBIA

| | |
|---|---|
| O.M.G., *et al.*; | Case No. 1:20-cv 00786-JEB |
| *Petitioners*, | |
| v. | **NOTICE OF COVID-19 POSITIVE CASES** |
| Chad WOLF, Acting Secretary of the U.S. Department of Homeland Security, *et al.*, | |
| *Respondents*. | The Honorable James E. Boasberg |

Pursuant to the June 25, 2020 minute order, Respondents hereby notify the Court that several additional employees in the Family Residential Centers have tested positive for COVID-19.  On June 19, 2020, Immigration and Customs Enforcement (ICE) informed the Department of Justice (DOJ) of these new positive cases. The declaration of Mellissa B. Harper, with details about these new cases, testing, and risk mitigation steps in process, is attached hereto as Exhibit 1.

### I. Karnes County Family Residential Center ("Karnes FRC")

In addition to the transportation officer who tested positive at Karnes FRC, ECF No. 70, three additional employees, a nurse, an intake officer, and a compliance standard officer, have also tested positive. These individuals are in quarantine.  *See* Ex. 1 at ¶¶ 5-6.

### II. South Texas Family Residential Center ("Dilley FRC")

There are two more confirmed cases among employees, a compliance officer and a nurse. Ex. 1 at ¶¶ 7-8. Both employees are symptomatic and in quarantine. *Id.*

### III. Berks County Family Residential Center ("Berks FRC")

Currently, there are no reported cases of staff or residents at the Berks FRC. Ex. 1 ¶ 9.

Respondents will appraise the Court of any further developments as it receives them from ICE.

RESPECTFULLY SUBMITTED this 29th day of June 2020.

> MICHAEL R. SHERWIN
> Acting United States Attorney
> District of Columbia
> DANIEL VAN HORN
> Assistant U.S. Attorney
> 555 4th St. NW
> Washington, DC 20530
> Telephone: (202) 252-2506
> Email: Daniel.VanHorn@usdoj.gov
>
> JOSEPH H. HUNT
> Assistant Attorney General
> Civil Division
> WILLIAM C. PEACHEY
> Director
> Office of Immigration Litigation
> District Court Section
> ELIANIS PEREZ
> Associate Director
>
>
> s/ *Vanessa Molina*
> VANESSA MOLINA
> Trial Attorney
> P.O. Box 868, Ben Franklin Station
> Washington, DC 20044
> Telephone: (202) 532-4413
> Facsimile (202) 305-7000
> Email: Vanessa.Molina@usdoj.gov
>          Matthew.Seamon2@usdoj.gov
>
> *Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| O.M.G., *et. al.*, | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Case No.: 1:20-cv-00786-JEB |
| | ) | |
| CHAD WOLF, Acting Secretary of the U.S. | ) | |
| Department of Homeland Security, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

## SUPPLEMENTAL DECLARATION OF MELLISSA B. HARPER

I, Mellissa B. Harper, hereby make the following declaration with respect to the above-caststioned matter:

1. I am the Chief of the Juvenile and Family Residential Management Unit (JFRMU),
   Enforcement and Removal Operations (ERO), U.S. Immigration and Customs
   Enforcement (ICE), Department of Homeland Security (DHS).  JFRMU addresses issues
   confronting unaccompanied alien children (UAC) and alien family groups who come into
   ERO custody, including those detained at a Family Residential Center (FRC). JFRMU
   develops policies sensitive to the various vulnerabilities and needs of these populations.
   JFRMU trains, monitors, and advises Field Office Juvenile Coordinators (FOJCs). These
   officers serve as subject matter experts on juvenile and family matters in their respective
   field offices. As JFRMU advises FOJCs, they in turn, advise their fellow officers who
   encounter minors during enforcement activities.  JFRMU oversees and monitors the
   implementation of nationwide court orders that impact this population, including those in
   the present case.

2. This declaration is to supplement my prior declarations, dated April 6, April 13, April 22, April 27, May 15, May 20, June 19, and June 26 submitted in the instant case.

3. The statements contained in this declaration are based on my personal knowledge and information provided to me in my official capacity.

4. As previously reported as of June 25, 2020, all three FRCs have instituted saturation testing. ICE has received further results as detailed below. In addition, other cases have emerged amongst the staff at two of the three facilities, the Karnes Family Residential Center (Karnes) and the South Texas Family Residential Center at Dilley (Dilley).

5. With respect to the staff testing conducted at Karnes, 342 staff have been tested thus far. Three GEO employees have tested positive, although there are still test results outstanding. As previously reported to the Court, one GEO transportation officer was tested on June 25, 2020 and positive results were received on June 26, 2020. She is asymptomatic and was sent home on a 14-day self-quarantine on June 26. The transportation officer had been in contact with 15 GEO employees who tested negative, and all are asymptomatic. All are self-observing for any symptoms for the next 14 days and are required to wear a mask and have their temperature taken twice daily while working. The transportation employee had no contact with any residents. The other two GEO employees who tested positive were a nurse and an intake officer who were tested on June 23, 2020. Their results were received on June 29, 2020. They were last present at work on June 28, 2020. Contact tracing and video review of their activities is currently being compiled.

6. Separate from the saturation testing, a JFRMU Compliance Standards Officer (CSO) at Karnes was exposed to another person with COVID-19.  Although asymptomatic, he was

tested on June 24, 2020, with positive results. He has not been present at an ICE facility

since June 22, 2020. He is currently in a 14-day self-quarantine. The CSO's

responsibility at an FRC is to ensure ICE's detention standards are met; therefore, while

he was on site at the facility, he wore a mask and maintained social distancing at all

times.

7. A CSO at Dilley, tested positive for COVID-19 on June 22, 2020. On June 18, 2020, he

begin experiencing symptoms of COVID-19. He was tested on June 22, 2020 and

received his positive test results on June 23, 2020. He has been in self-quarantine since

that time. The last day that the CSO was at the facility was June 17, 2020. Video review

of his activities was conducted and confirmed he wore a mask at all times while inside

the facility.

8. A Registered Nurse at Dilley excused herself from work after a family member was

placed in quarantine for COVID-19. The nurse became symptomatic on June 23, 2020

and was tested on June 24, 2020. She received a positive test result on June 24, 2020, and

she notified the facility. Her last day onsite was June 19, 2020 on a 4:00 p.m. to 2:30 a.m.

shift.

9. Currently, there are no reported positive COVID-19 cases of staff or residents at Berks

County Family Residential Center.

10. This declaration is based upon my personal and professional knowledge, information

obtained from other individuals employed by ICE, and information obtained from various

records and systems maintained by DHS. I provide this declaration based on the best of

my knowledge, information, belief, and reasonable inquiry for the above-captioned case.

Signed on this 29th day of June 2020.

Mellissa B. Harper
Unit Chief, Juvenile and Family Residential Management Unit
ICE Enforcement and Removal Operations

# IN THE UNITED STATES DISTRICT COURT
## FOR DISTRICT OF COLUMBIA

O.M.G., *et al.*;

         *Petitioners*,

v.

Chad WOLF, Acting Secretary of the U.S.
Department of Homeland Security, *et al.*,

         *Respondents*.

Case No. 1:20-cv 00786-
JEB

**NOTICE OF COVID-19 POSITIVE
CASES**

The Honorable James E. Boasberg

Pursuant to the June 25, 2020 minute order, Respondents hereby notify the Court that

several additional employees in the Family Residential Centers ("FRCs") have tested positive

for COVID-19.  On June 30, 2020, Immigration and Customs Enforcement ("ICE") informed

the Department of Justice ("DOJ") of these new positive cases, provided further details about

the circumstances described in June 29, 2020 notice, ECF No.73, and an updated census to

include releases and intakes. The declaration of Mellissa B. Harper, with details about these

new cases, testing, the risk mitigation steps in process, and the census, is attached hereto as

Exhibit 1.

## I. Karnes County Family Residential Center ("Karnes FRC")

In addition to the four employees who have previously tested positive, two additional

employee, an intake officer and a nurse, tested positive on June 29, 2020.  *See* Ex. 1 at ¶ 8(b)-

(c). Both individuals were tested as part of the saturation testing at Karnes. *Id.*

Between June 25, 2020 and June 30, 2020, four individuals, two adults and two minors,

were released from Karnes. *Id.* ¶ 6(a). During the same period there were 38 new intakes, 22

adults and 16 minors. *Id.* ¶ 5(a). All 38 new intakes were tested for COVID-19, and are pending

results. Each family unit was assigned to their own room in a cohort section of the facility, and will continue to reside in their individual room. *Id*. ¶ 5(a)(i).

As of June 30, 2020, there were 107 individuals, comprised of 60 adults and 47 minors. *Id.* at ¶ 4(a).

## II. South Texas Family Residential Center ("Dilley FRC")

There are two more confirmed cases among employees, a resident counselor and resident supervisor. Ex. 1 at ¶¶ 10-11.

Between June 25, 2020 and June 30, 2020, there were a total of three new intakes, two adults and one minor, at Dilley. *Id.* at ¶ 5(b). They are housed in separate dorms without contact with other families. The family unit is pending results for COVID-19, and there is plan to treat should results return positive. *Id.* at ¶ 5(b)(i).

As of June 30, 2020, there were 157 individuals, comprised of 70 adults and 87 minors. *Id.* at ¶ 4(b).

## III. Berks County Family Residential Center ("Berks FRC")

Currently, there are no reported cases of staff or residents at the Berks FRC.  Ex. 1 ¶ 12.  As of June 30, 2020, there were 13 individuals, comprised of 8 adults and 5 minors. *Id.* at ¶ 4(c). Between June 25, 2020 and June 30, 2020, there were no new intakes at the Berks. *Id.* at ¶ 5(c).

//

Respondents will appraise the Court of any further developments as it receives them

from ICE.

RESPECTFULLY SUBMITTED this 1st day of July 2020.

MICHAEL R. SHERWIN
Acting United States Attorney
District of Columbia
DANIEL VAN HORN
Assistant U.S. Attorney
555 4th St. NW
Washington, DC 20530
Telephone:  (202) 252-2506
Email: Daniel.VanHorn@usdoj.gov

JOSEPH H. HUNT
Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section
ELIANIS PEREZ
Assistant Director


s/  *Vanessa Molina*
VANESSA MOLINA
Trial Attorney
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 532-4413
Facsimile (202) 305-7000
Email: Vanessa.Molina@usdoj.gov


*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| O.M.G., *et. al.*, | ) |
| | ) |
|      Petitioners, | ) |
| | ) |
| v. | )   Case No.: 1:20-cv-00786-JEB |
| | ) |
| CHAD WOLF, Acting Secretary of the U.S. | ) |
| Department of Homeland Security, *et al.*, | ) |
| | ) |
|      Respondents. | ) |
| | ) |

## SUPPLEMENTAL DECLARATION OF MELLISSA B. HARPER

I, Mellissa B. Harper, hereby make the following declaration with respect to the above-captioned matter:

1.  I am the Chief of the Juvenile and Family Residential Management Unit (JFRMU), Enforcement and Removal Operations (ERO), U.S. Immigration and Customs Enforcement (ICE), Department of Homeland Security (DHS). JFRMU addresses issues confronting unaccompanied alien children (UAC) and alien family groups who come into ERO custody, including those detained at a Family Residential Center (FRC). JFRMU develops policies sensitive to the various vulnerabilities and needs of these populations. JFRMU trains, monitors, and advises Field Office Juvenile Coordinators (FOJCs). These officers serve as subject matter experts on juvenile and family matters in their respective field offices. As JFRMU advises FOJCs, they in turn, advise their fellow officers who encounter minors during enforcement activities. JFRMU oversees and monitors the implementation of nationwide court orders that impact this population, including those in the present case.

2. This declaration is to supplement my prior declarations, dated April 6, April 13, April 22, April 27, May 15, May 20, June 19, June 26, and June 29 submitted in the instant case.

3. The statements contained in this declaration are based on my personal knowledge and information provided to me in my official capacity.

4. As of June 30, 2020, the number of individuals housed at the FRCs are as follows:

   a. At Karnes, there were a total of 107 individuals, comprised of 60 adults and 47 juveniles.

   b. At Dilley, there were a total of 157 individuals, comprised of 70 adults and 87 juveniles.

   c. At Berks, there were a total of 13 individuals, comprised of 8 adults and 5 juveniles.

5. From June 25, 2020, through June 30, 2020, there were 41 total new intakes into ICE FRCs. The breakdown of these new intakes are as follows:

   a. At Karnes, there were a total of 38 intakes during this time period, comprised of 22 adults and 16 juveniles.

      i. All 38 new intakes were tested for COVID-19 and are pending results. Each of these family units are cohorted in their own room in one of two cohort sections of the facility, pending results. Each family unit will continue to remain in their own room as the current population at the facility remains well below capacity.

   b. At Dilley, there were a total of 3 intakes during this time period, comprised of 2 adults and 1 juvenile.

2

Case 2:85-cv-04544-DMG-AGR   Document 836-2   Filed 07/02/20   Page 28 of 34   Page ID
Case 1:20-cv-00786-JEB   Document 75-1   Filed 07/01/20   Page 3 of 9
#:38651

    i.  All 3 new intakes have been tested for COVID-19 and are pending

results. They are housed in separate dorms for the 14-day observation

period and do not have contact with other families to prevent potential

cross-contamination. Should the test results return positive, the family

unit will be moved to the medical housing unit and will be housed in a

negative pressure room and treated accordingly. Should the results

return negative, the family will complete the 14-day observation

period prior to being transferred to general population.

   c.  At Berks, there were no intakes during this time period.

6.  From June 25, 2020, through June 30, 2020, ICE released[1] 6 total individuals from its

FRCs. The breakdown of these releases are as follows:

   a.  At Karnes, there were a total of 4 individuals released from custody during

this time period, comprised of 2 adults and 2 juveniles.

   b.  At Dilley, there were a total of 2 individuals released from custody during this

time period, comprised of 1 adult and 1 juvenile.

   c.  At Berks, there were no individuals released from custody during this time

period.

7.  As previously reported as of June 25, 2020, all three FRCs have instituted saturation

testing of the residents housed there at the time of testing. In addition, other positive

COVID-19 cases have emerged amongst the staff at two of the facilities, the Karnes

Family Residential Center (Karnes) and the South Texas Family Residential Center at

Dilley (STFRC).

---

[1] Released into the U.S. interior. The source for this is data pulled from ENFORCE on 6/30/2020.

8. The last update notified the court that three GEO employees—at transportation

   officer, a nurse and an intake officer—tested positive for COVID-19. Additional

   details with respect to those individuals are now available.

   a. On June 26, 2020, GEO Transportation Officer (TO) at the Karnes County

      Family Residential Center (KCFRC), reported receiving a positive result for

      COVID19 testing. The COVID19 test was conducted on June 25, 2020, as

      part of saturation testing at KCFRC. Upon notification of the positive result,

      GEO conducted in depth contract tracing through employee interviews and

      extensive review of closed-circuit video footage of the employee's movement

      throughout the residential center. Contact tracing revealed; The employee's

      last day at the facility was June 26, 2020. The employee had no contact with

      residents at the facility. Any staff members identified through contact tracing,

      were notified and are self-observing for any symptoms for the next 14 days

      and are required to wear a mask and have their temperature taken twice daily

      while working. No residents have tested positive as a result of exposure in this

      case. The TO role is to attend to the needs of the residents at the

      KCFRC. The TO is responsible for securely transporting residents between

      destinations and ensuring that the vehicles used for transportation activities

      are safe and properly maintained. Through contact investigations, it was

      determined that on June 20, 2020, the four positive GEO employees were all

      together outside the facility on personal time. They admitted to congregating

      outside the facility without PPE. It was also determined that the nurses

      carpool together and two employees cohabitate.

Case 2:85-cv-04544-DMG-AGR   Document 3872-1   Filed 07/02/20   Page 30 of 34   Page ID
#:38653
Case 2:20-cv-00786-JEB   Document 5-1   Filed 07/01/20   Page 5 of 9

b. On June 29, 2020, GEO Intake Officer (IO) at KCFRC, reported receiving a positive result for COVID19 testing.  The COVID19 test was conducted on June 23, 2020, as part of saturation testing at KCFRC.   Upon notification of the positive result, GEO conducted in depth contract tracing through employee interviews and extensive review of closed-circuit video footage of the employee's movement throughout the residential center.  Contact tracing revealed; The employee's last day at the facility was June 28, 2020.  The employee had no contact with residents at the facility.  Any staff members identified through contact tracing, were notified and are self-observing for any symptoms for the next 14 days and are required to wear a mask and have their temperature taken twice daily while working. No residents have tested positive as a result of exposure in this case.  The IO role is to attend to the needs of the residents entering and leaving KCFRC.  The IO assists residents with their property, documents, monies, health, safety, and well-being, as well as ensures safety and supervision throughout the residential center. Through contact investigations, it was determined that on June 20, 2020, the four positive GEO employees were all together outside the facility on personal time.  They admitted to congregating outside the facility without PPE.  It was also determined that the nurses carpool together and two employees cohabitate.

c. On June 29, 2020, GEO Nurse (Nurse One) at KCFRC, reported receiving a positive result for COVID19 testing.  The COVID19 test was conducted on June 23, 2020, as part of saturation testing at KCFRC.   Upon notification of

the positive result, GEO conducted in depth contract tracing through
employee interviews and extensive review of closed-circuit video footage of
the employee's movement throughout the residential center.  Contact tracing
revealed; The employee's last day at the facility was June 29, 2020.  The
employee's last contact with residents at the facility was June 29, 2020.  The
thirty-seven residents identified as having contact with Nurse One were
identified and notified of the exposure. Eleven of these residents were those
that were in isolation for positive results. No residents have tested positive as
a result of exposure in this case.  The Nurse's role under the direction of an
RN is to develop nursing care plans for residents, performs physical
assessments and medical history, assists physicians with patients screenings,
ensures prescribed medications are administered, makes observation rounds
on patients, and records progress notes, attend to the needs of the residents at
the KCFRC.  The Nurse assists residents in their medical rooms when housed
in isolation and treats those residents who seek medical assessment at the
medical clinic, as well as, ensures safety and supervision throughout the
medical facility. Through contact investigations, it was determined that on
June 20, 2020, the four positive GEO employees were all together outside the
facility on personal time.  They admitted to congregating outside the facility
without PPE.  It was also determined that the nurses carpool together and two
employees cohabitate.

9.  There is one additional employee at KCFRC who has tested positive. On June 29,
2020, GEO Nurse (Nurse Two) at KCFRC, reported receiving a positive result for

COVID19 testing. The COVID19 test was conducted on June 29, 2020, at her PCP office in preparation for a medical procedure. Nurse Two received a COVID19 test on June 23, 2020, as part of saturation testing at KCFRC, but that test result was negative. Upon notification of the positive result, GEO conducted in depth contract tracing through employee interviews and extensive review of closed-circuit video footage of the employee's movement throughout the residential center. Contact tracing revealed; The employee's last day at the facility was June 29, 2020. The employee's last contact with residents at the facility was June 29, 2020. The thirty-seven residents identified as having contact with Nurse Two were identified and notified of the possible exposure. Eleven of these residents were those that were in isolation for positive results. No residents have tested positive as a result of exposure in this case. The Nurse's role under the direction of an RN is to develop nursing care plans for residents, performs physical assessments and medical history, assists physicians with patients screenings, ensures prescribed medications are administered, makes observation rounds on patients, and records progress notes, attend to the needs of the residents at the KCFRC. The Nurse assists residents in their medical rooms when housed in isolation and treats those residents who seek medical assessment at the medical clinic, as well as, ensures safety and supervision throughout the medical facility. Through contact investigations, it was determined that on June 20, 2020, the four positive GEO employees were all together outside the facility on personal time. They admitted to congregating outside the facility without PPE. It was also determined that the nurses carpool together and two employees cohabitate.

10.  On June 28, 2020, Core Civic Resident Counselor (RC) at the STFRC, reported

receiving a positive result for COVID-19 testing.  The COVID-19 test was conducted

on June 27, 2020, after the employee began experiencing symptoms of COVID-

19.  Upon notification of the positive result, Core Civic conducted in depth contract

tracing through employee interviews and extensive review of closed-circuit video

footage of the employee's movement throughout the residential center.  Contact

tracing revealed that the employee's last day at the facility was June 25, 2020, in

which the employee left after three hours of work.  The employee did not have

contact with residents at the facility within five days prior to experiencing

symptoms. Additionally, video review revealed the employee was wearing their mask

and did not have close contact with other staff.  No residents or employees have

tested positive as a result of exposure in this case.  The RC role as trained member of

the Unit Management Team, who is responsible for resolving daily resident issues

before they become significant matters, incidents or grievances.

11.  On June 29, 2020, Core Civic Resident Supervisor (RS) at the STFRC, reported

receiving a positive result for COVID-19 testing.  The COVID-19 test was conducted

on June 28, 2020, after the employee began experiencing symptoms of COVID-

19.   Upon notification of the positive result, Core Civic conducted in depth contract

tracing through employee interviews and extensive review of closed-circuit video

footage of the employee's movement throughout the residential center.  Contact

tracing revealed that the employee's last day at the facility was June 16, 2020, and the

employee had taken Personal Time Off (PTO) in conjunction with his/her assigned

days off duty.  The employee did not have contact with residents or staff at the

facility within five days prior to testing. No residents or employees have tested positive as a result of exposure in this case. The RS role is to attend to the needs of the residents at the STFRC. The RS assists residents in their dorms, dayrooms and recreation areas, as well as ensures safety and supervision throughout the residential center.

12. Currently, there are no reported positive COVID-19 cases of staff or residents at Berks County Family Residential Center.

13. This declaration is based upon my personal and professional knowledge, information obtained from other individuals employed by ICE, and information obtained from various records and systems maintained by DHS. I provide this declaration based on the best of my knowledge, information, belief, and reasonable inquiry for the above-captioned case.

Signed on this 30th day of June 2020.

Mellissa B. Harper
Unit Chief, Juvenile and Family Residential Management Unit
ICE Enforcement and Removal Operations