1               **UNITED STATES DISTRICT COURT**

2             **CENTRAL DISTRICT OF CALIFORNIA**

3        **HONORABLE DOLLY M. GEE, JUDGE PRESIDING**

4   **JENNY L. FLORES,**              )
                                )

5                              )
                                )

6                **Plaintiffs,**   )
                                )

7                              )
                                )

8        **Vs.**                )  **No. CV85-4544-DMG**
                                )

9                              )
                                )

10  **WILLIAM BARR, ET AL.,**        )
                                )

11                             )
                                )

12                **Defendants.**   )
                                )

13  _____  )

14

15

16    **REPORTER'S TRANSCRIPT OF VIDEO TELECONFERENCE PROCEEDINGS**

17                *STATUS CONFERENCE*

18             **FRIDAY, JUNE 26, 2020**

19

20

21

22

23         **MIRIAM V. BAIRD, CSR 11893, CCRA**
        **OFFICIAL U.S. DISTRICT COURT REPORTER**

24       **411 WEST FOURTH STREET, SUITE 1-053**
         **SANTA ANA, CALIFORNIA 92701**

25            **MVB11893@aol.com**

1                     **A P P E A R A N C E S**

2

3    **IN BEHALF OF THE PLAINTIFFS,**     PETER A. SCHEY
     **JENNY L. FLORES:**                 (TELEPHONICALLY)
4                                         CENTER FOR HUMAN RIGHTS AND
                                          CONSTITUTIONAL LAW
5                                         256 SOUTH OCCIDENTAL
                                          BOULEVARD
6                                         LOS ANGELES, CA 90057
                                          - AND -
7

8

9

10   **IN BEHALF OF THE DEFENDANT,**      SARAH B. FABIAN
     **WILLIAM BARR, ET AL.,:**           (VIDEO APPEARANCE)
11                                        US DEPARTMENT OF JUSTICE
                                          OFFICE OF IMMIGRATION
12                                        LITIGATION
                                          PO BOX 868 BEN FRANKLIN
13                                        STATION
                                          WASHINGTON, DC 20044
14

15

16   **ALSO PRESENT:**
     **SPECIAL MASTER ANDREA ORDIN**
17   **DR. PAUL WISE**
     **CARLOS HOLGUIN**
18   **BRIGETT CAMBRIA**
     **JUVENILE COORDINATORS:**
19   **DEANE DOUGHERTY**
     **AURORA MIRANDA-MAESE**
20

21

22

23

24

25

1          LOS ANGELES, CALIFORNIA; FRIDAY, JUNE 26, 2020; 10:00 A.M.

2                                 ---

3

4          THE CLERK:  Item two, CV85-4544-DMG Jenny L. Flores

5    versus William Barr, et al.

6          By video we have Peter Schey and Carolos Holguin.

7    We also have Gabriel Barenfeld.  Also on video and in court

8    we have Andrea Ordin and Dr. Paul Wise.

9          For the government, we have Sarah Fabian.  For the

10   juvenile coordinators, we have Aurora Miranda-Maese and

11   Deanne Doherty.

12         THE COURT:  Good morning, everyone.  Before we

13   begin, I just want to deal with a couple housekeeping issues.

14   Due to the Covid-19 public health emergency, I've been having

15   these hearings by video and telephone conference.  Whenever

16   my clerk has provided the call-in information to counsel, he

17   has included the direction that the information should not be

18   shared with anyone.  This includes co-counsel, associates,

19   media, and the public, and that counsel must request

20   information from the clerk themselves.  That instruction is

21   to be strictly enforced.  It should not be disregarded.  We

22   have done that because it is important for the clerk to be

23   able to keep track on who is planning to call in, and to make

24   sure that we don't have the types of interruptions that we've

25   had in the past where people come in and out of the calls at

```
 1    various times during the hearing, and, therefore, cause the
 2    court reporter not to be able to hear what is being said by
 3    the person who is speaking.
 4            So I urge those are on the call today, again, that
 5    if you're planning to listen to this hearing, that you stay
 6    for the entire hearing rather than coming in and out of the
 7    call during the course of the hearing.
 8            I assume that counsel have had a chance to review
 9    the Court's tentative?
10            MR. SCHEY:  This is Peter Schey, yes, Your Honor.
11            MS. FABIAN:  This is Sarah Fabian.  Yes, Your
12    Honor.
13            MR. BARENFELD:  This Gabe Barenfeld for the amici.
14    I apologize, but I haven't -- I didn't receive it.
15            THE COURT:  All right.  I will ask my clerk to
16    e-mail a copy to you then.  Gabriel Barenfeld, amicus
17    counsel.
18            I have limited time for today's hearing.  So I'm
19    going to go straight to a discussion of the tentative ruling.
20    Who would like to address the tentative?
21            MS. FABIAN:  Your Honor, this is Sarah Fabian for
22    the defendants.  I'll address a few points unless Mr. Schey
23    wants to speak first as the plaintiff?
24            MR. SCHEY:  This is Mr. Schey.  I'm fine with Sarah
25    going first.
```

1              MS. FABIAN:  Thank you, Mr. Schey.

2              So the points -- I know Your Honor has limited

3      time.  I'll get straight to a couple concerns that I would

4      ask the Court to clarify for defendants as part of the order.

5      The -- the order for releasing children with the consent of

6      their adult guardians, I would ask the Court for some

7      clarification as to how -- if there is guidance from the

8      Court on how defendants should obtain that consent?  I

9      suspect that if -- if ICE does go that route, that there

10     would need to be involved -- at least Judge Sabraw and the

11     Ms. L Court as far -- for Ms. L class members, but/for

12     non-Ms. L class members, is there a presumption that ICE

13     should apply in terms of how to obtain consent?  On the other

14     hand, is there -- is it possible for the parents to waive

15     consistent with this provision of the Court or of the order?

16             THE COURT:  I think this is a subject that had been

17     discussed in our previous hearings, and also has been

18     discussed by counsel.  They should have been discussing this

19     during the interim between our last status conference and

20     this one.  I don't know how far along you are.  The status

21     report that you filed on June 15th did not indicate what the

22     status of your discussions were, but my understanding of what

23     you were going to do was to be able to draft written advisals

24     about what the parents' rights are so that those can be

25     provided in writing to guardians or parents in their language

1    or their -- their primary language, and that there be some

2    sort of protocol to allow them to have counsel to give them

3    advice if they wish to do so.

4              MS. FABIAN:  That's correct, Your Honor, and we --

5    I do have -- we have exchanged some draft documents, and I

6    expect to send more back today.  We will be meeting and

7    conferring.  I guess the question is if those -- if that is

8    not -- if the agreement is not reached in advance of this

9    date, is -- is there guidance from the Court on how ICE

10   should proceed to obtain those waivers in the absence of

11   that, I expect we -- I mean, of course, we would do our best

12   to reach agreement with plaintiffs and seek guidance from the

13   monitor as far as how to do that.  I just -- I expect that if

14   there is guidance that the Court can provide on how that

15   should proceed, or if there are expectations on how that

16   should proceed, anything that could be included would be

17   helpful, otherwise I --

18             THE COURT:  Under the circumstances, I think you

19   need to act with greater speed than has been done in terms of

20   trying to reach agreement on what the advisal should say.

21             If you need to have assistance from the independent

22   monitor, you may seek her assistance.  I think I've indicated

23   that before.  The only thing that is different is that you

24   need to do it faster.  If there are significant issues of

25   dispute that need to be involved, then you should contact my

1    clerk and ask for a time for me to convene either a

2    telephonic or video conference hearing with you so that I can

3    deal with the issues.  That can be done informally without

4    the need for a court reporter if both sides agree so that we

5    can try to get this done as quickly as possible.

6             MS. FABIAN:  Understood, Your Honor.  Thank you.

7             Keeping to the ICE -- to the -- the one other ICE

8    issue I had that I wanted to raise on the tentative, it would

9    be paragraph 4 Section E.  The Court's order that none of the

10   minors who age out should be sent to an adult detention

11   facility, I understand that one of the minors is -- would age

12   out in advance of the juvenile coordinator's report date.

13            Given that the minor would then be an adult and

14   outside the scope of Flores, the -- the -- I guess -- I mean,

15   I guess the question is -- is this an order from the Court

16   that the minor be released, because the minor has been

17   adjudicated to be a danger and has a pending bond hearing

18   request before an immigration judge is my understanding.  So

19   if the bond -- if the immigration judge denies release,

20   ICE -- ICE would have to release as an exercise of

21   discretion.  So they would require I think --

22            THE COURT:  Well --

23            MS. FABIAN:  -- an order from the Court --

24            THE COURT:  At this point -- Ms. Fabian, at this

25   point, I don't know a lot of information about this

1   particular individual.  I do know that he is aging out, I

2   think, on July 7th.  And so if he -- if there is some

3   information that leads ICE to think that he is a danger to

4   the community, then you should bring that information to me

5   expeditiously so that I can consider that and determine

6   whether or not this caveat should apply.

7            MS. FABIAN:  Thank you, Your Honor.  I would note

8   that -- that the minor is -- it's my understanding -- I will

9   certainly clarify this to make sure that I'm correct, but

10  it's my understanding that he has requested a bond hearing

11  before the immigration judge.  So the immigration judge will

12  also be making that determination consistent with the

13  immigration detention statutes.

14           THE COURT:  All right.  Well, I don't intend to be

15  an appeal or appellate body over the immigration judge, so if

16  there is a ruling from the immigration judge about danger,

17  then you should tell me about that as well.

18           MS. FABIAN:  Thank you, Your Honor.  We'll do that.

19           THE COURT:  Are we talking about -- are we talking

20  about -- is it AFPP or --

21           MS. FABIAN:  Yes, Your Honor.  That is -- from

22  Mr. Schey's declaration from last night, that's -- that's the

23  minor I'm referring to.

24           THE COURT:  All right.

25           Mr. Schey.

1          MR. SCHEY:  Yes, Your Honor.  Thank you.  I guess

2     there's two or three items.  With regards to the --

3          THE COURT:  Before you go to the two or three

4     items, can you address the point Ms. Fabian was raising about

5     AFPP?

6          MR. SCHEY:  Yes -- well, three items, two of them

7     were -- are in response to what Ms. Fabian addressed.

8          So I -- I think with regards to that particular

9     minor that Ms. Fabian and I should meet and confer very

10    promptly like tomorrow, if possible, or I guess tomorrow is

11    Saturday, Monday.

12         THE COURT:  Or later this afternoon.

13         MR. SCHEY:  Yeah.  Or later this afternoon.  In

14    fact, that would be even better.  What we could do have for

15    him is a very brief, perhaps, two or three sentences.  It's a

16    note from his ICE deportation officer.  It basically just

17    says he's not going -- yeah, the only thing that we have seen

18    on this issue of his release -- I've seen quite a few

19    documents about his apprehension by border patrol, transfer

20    to ORR, transferred to ICE in September 2019, or apprehension

21    by ICE, but I haven't seen anything that would indicate he's

22    a flight risk.  In fact, he had three hearings before his was

23    apprehended in September of 2019.  Best I can tell, he

24    appeared at all of those hearings.  Why he might be a flight

25    risk is --

1          THE COURT:  Mr. Schey, I'm going to interrupt you.

2    I am not going to make the determination of whether he is a

3    danger to the community or not.  Apparently, an immigration

4    judge is going to be doing that in due course.  So I think

5    that you and Ms. Fabian should meet and confer about this

6    particular individual and discuss his circumstances and

7    factual issues, and see if you can come to some sort of

8    resolution.  I am not going to overrule a determination if it

9    be made by an immigration judge.

10          MR. SCHEY:  Your Honor, we will check into that.

11   It is not clear to me that hearing is scheduled prior to his

12   18th birthday.  It is also not clear to me that that

13   immigration judge would consider his right to be released

14   under the Flores terms as opposed to just under the normal

15   statutory terms.

16          We will meet and confer.  If either one of us, I

17   guess, feel the need to inform you or to request your

18   involvement, then we will reach out to the Court and explain

19   why we are requesting your involvement.

20          THE COURT:  All right.  Let me just clarify

21   something.  The only reason why I have a caveat that he

22   should not be sent to an adult detention facility due to his

23   having aged out is because this was an issue that was raised

24   while he was covered under the Flores agreement, and I don't

25   think it is sensible to have issues here about concern

regarding class members' detention in congregate settings

that expose them to the Covid-19 threat, and then have them

sent to an adult detention facility where they will

potentially confront that threat as well.

MR. SCHEY:  That is understood, Your Honor.  With

regards to the Court's request for the protocol and about the

parents' decisions, the -- we will certainly meet and confer

with the government promptly.  The only suggestion that I

would have is that -- very quickly, the tentative that says

that the parties should then submit per the joint status

report on July 8th.  I just wonder if the Court could

slightly modify that language just to indicate that parties

have not reached an agreement that -- I'm just trying to

think about how we can then proceed to get this resolved

quickly.

My suggestion would be -- and it's possible that

this -- part of this would be filed under seal or not filed

under seal, but my suggestion is that by July 8th or sooner,

that if the parties have not been able to reach agreement,

that we would be committed to submit to the Court the

parties' respective positions so -- including what they think

this protocol should look like so that the Court would then

be in a position to take some action if it believes that some

action is warranted.

So that was just one point that just perhaps the

1    order should say more than submit a joint status report, but

2    that it -- to the extent the parties have reached agreement,

3    they should explain to the Court what those agreements are.

4    To the extent the parties have not reached agreement, they

5    should submit to the Court their proposals for how they

6    should proceed, or how they should be worked out so that

7    hopefully that matter can be resolved pretty promptly by the

8    Court.

9              I do have a second point on this.

10             THE COURT:  All right.  I will do that, Mr. Schey.

11   It's not precluded by the concept of a joint status report,

12   but I will make it more explicit that you may do that.

13             MR. SCHEY:  Okay.  That would be helpful.

14             Just the second point, and we had a bit of a

15   disagreement with the government about this.  The way that

16   that order was written, I think it was April 24th order.  The

17   way that -- that order was written, it said that the parties

18   shall meet and confer regarding the development of the

19   protocol to determine the parents' wishes, and then it said

20   the collection of information about the sponsors.  It just

21   seems to me that in order for us to get this done, that it

22   would be very helpful to -- to expand that slightly and

23   possibly to make this clearer in your -- in this current

24   order to expand that slightly to include not just the

25   gathering of information about the -- who the sponsor is,

1    but -- but to also -- that I think anyway that the protocol

2    should also address well, then what should ICE do with that

3    information?

4           So even if we come up with a protocol that is

5    consistent with the exact language of that April 24th order,

6    it would end with the collection of -- of that information

7    about the sponsors, but then it would say nothing about well,

8    what -- what should ICE do next and theoretically ICE could

9    say three months to then say okay, well, we'll get the

10   sponsors when we have time to do that.

11          So it just seems to me -- when we met and

12   conferred, this was a point of contention because plaintiffs

13   were proposing a protocol that started with -- with the --

14   that included the issue of -- of determining what the parent

15   wants to do.  It included gathering the information about the

16   sponsors, but it also then included what would ICE do with

17   that information, and how it would then execute on that

18   information so that if the parent did want the child

19   released, and the parent had provided the sponsor

20   information, then what are the two or three or four or five

21   steps that ICE would do to actually -- to actually implement

22   the paragraph --

23          THE COURT:  Let me ask Ms. Fabian something.

24          Ms. Fabian, when ICE exercises its discretion to

25   release a minor or -- and/or his guardian or parent, how do

1    you do that?  Do you just release them anywhere or do you

2    ascertain whether they have a sponsor and then make some

3    reasonable efforts to get them to that sponsor?

4            MS. FABIAN:  Your Honor, speaking for -- if the

5    family is released together, I think that's the current

6    situation that does occur.  It's my understanding that, you

7    know, there is information obtained about whether the --

8    there is a sponsor for the family and where the family will

9    live, and that will go to a determination of flight risk.

10   The family can be released to -- to go then -- then live with

11   that sponsor.

12           As to the issue that Mr. Schey addressing, we --

13   there's not currently a protocol for the release of a child

14   separately from the parents because that is the subject of

15   these discussions.  That said, I am not sure I agree with

16   Mr. Schey's characterization, and, perhaps, this was just a

17   misunderstanding, but the government does not intend to have

18   a process if I -- to -- to be fair, I have several documents

19   back that I plan to send to Mr. Schey this afternoon that I

20   have to look at more closely, but my understanding of what we

21   had shared previously in our conversations, there is -- that

22   we -- there is discussion of how we would complete that

23   process, and that is vetting the sponsor and then completing

24   the release to that sponsor where appropriate.

25           I know that is part of the overall process plan

1    that we laid out and it -- there may have been some dispute

2    as to the vetting itself and the exact details of that, but I

3    don't believe that we dispute that we -- if -- if we are

4    doing -- if ICE is doing that, that they need to complete

5    that process.

6            So I don't think that there's a -- there's --

7    there's a gap there that we don't -- that we don't -- we

8    don't agree to complete that process, but I'm happy to

9    discuss that with Mr. Schey further.  I'm hopeful that what

10   we have to send to him this afternoon is quite a bit of

11   material.  I think that may provide more clarity on that.

12           THE COURT:  All right.  Thank you.

13           Mr. Schey, did you already get to your third point

14   or did you address that already?

15           MR. SCHEY:  No.  My third point -- I'm satisfied,

16   you know, since it's on the record here, and I'm just going

17   to assume that in terms of us attempting to work out this

18   protocol, that the parties are in agreement; that the Court

19   intends that that protocol go from beginning to end and not

20   end with just the gathering of information of the sponsors.

21   So I'm satisfied with that, I hope.

22           THE COURT:  Well, it would have to be in place in

23   order for them to comply with the directive to release them

24   to a suitable sponsor.

25           MR. SCHEY:  That's what we will -- I -- I believe

1    that based upon Ms. Fabian's comments, that hopefully the

2    parties are on the same page; that the protocol we are going

3    to try to develop and try to present to the Court will cover

4    the whole process in terms of beginning to end in terms of

5    release of minors.

6         The only other point, I think, Your Honor, is you

7    had previously ordered that we meet and confer, and I forget

8    when it was.  I think it was before the April order.  I think

9    it was the order before the April 24th order.  It ordered

10   that we meet and confer about the data collection.  We did

11   have one meet-and-confer about that.  We haven't really heard

12   back from the government since then or at least three weeks

13   ago.

14        So it seems to me that like this one, you can

15   possibly include in this order that we also regroup, continue

16   to meet and confer on the data collection, and then maybe

17   also by July 8th, which is when we would report to the Court

18   on the protocol situation, that we would also report to the

19   Court on the data collection situation.  But, again, maybe

20   just make clear that to the extent there are agreements, then

21   we would advise the Court as to those agreements.  To the

22   extent there are outstanding issues, that we would advise the

23   Court as to the respective positions of the parties at that

24   stage, so that we can suggest what we think the Court should

25   do next in light of the remaining disagreements that the

```
 1    Court would also then be aware of what -- what the

 2    disagreements are.

 3              THE COURT:  Yes, Mr. Schey, thank you for that

 4    reminder.  That was an oversight that I didn't include that

 5    to carry over from the previous directive.  I think that the

 6    data collection discussion between the parties is very

 7    important, because, as we have seen, some of the data that

 8    has been relied upon by ICE in various contexts leaves much

 9    to be desired.  I would hope that there be some sort of data

10    collection protocol and structure that, perhaps, is a little

11    bit more like ORRs in terms of the detail and -- and

12    informativeness of the information.

13              So I do encourage the parties to continue their

14    discussions regarding the issue of data collection.

15              MS. FABIAN:  Your Honor --

16              THE COURT:  Although that is probably going to be a

17    longer term issue than what I'm talking about right now.

18              MS. FABIAN:  The -- Your Honor, this is --

19              MR. SCHEY:  I'm sorry.  Thank you, Your Honor.  I

20    do think -- I do think I appreciate you saying that.  I just

21    do think it would be helpful if there's one sentence or

22    whatever in the final order of today just to make clear --

23              THE COURT:  Yes, there will be.  Thank you.

24              Ms. Fabian, you had something else?

25              MR. SCHEY:  I think that's it --
```

1          MS. FABIAN:  To clarify on that point, I think --

2    as I understand, there are -- the question about data

3    collection and -- with regard to paragraph 18 is the issue I

4    believe Your Honor was just referencing.  And, you know, to

5    the extent that is something I do understand that ICE and

6    that Ms. Ordin continues to work with ICE on.

7          I -- as I understood Mr. Schey's point, there's the

8    separate issue of the parties meeting and conferring on the

9    monthly data reporting, and I'm a little confused because

10   there was the -- as we reported in the joint report,

11   defendants have revamped their reporting and had provided

12   it -- the last month's report to plaintiffs.  My recollection

13   is that Mr. Schey had committed to providing a response with

14   any remaining concerns with the data production, I believe,

15   this week, which we did not receive.  That we would meet and

16   confer from there.

17         So I understood that the next step was the

18   plaintiffs were going to explain to us what concerns they

19   have remaining based on our updated reporting that we

20   provided just over ten days ago.

21         THE COURT:  All right.  Well, Ms. Fabian, as you

22   can see from the plaintiffs' and amici's response to the

23   juvenile coordinators' reports, there appear to be some

24   fairly large omissions and errors in the information that is

25   kept by ICE regarding some of its detainees.  So I think it's

```
1    important to try to make sure that the information that is
2    kept in those databases is as accurate as possible because
3    obviously, it's garbage in, garbage out.  To the extent that
4    is the data that the juvenile coordinators are relying on to
5    provide me with reports, I have no time or patience for
6    reading things that are inaccurate or incorrect.
7              MS. FABIAN:  Your Honor, if I may respond briefly
8    to that point.  There are is some confusion -- again, on the
9    part of the government, I understand -- amici are the same
10   counsel who were previously participating as part of this
11   case or at least as witnesses for the plaintiffs.  Now they
12   appear to be participating as separate participants.  Whether
13   that reflects a lack of faith in how plaintiffs' counsel are
14   proceeding or a difference of opinion, those -- those -- that
15   reporting is not part of the regular reporting.  It was filed
16   under seal.  It's unclear how amici obtained it if they're
17   not participating as plaintiffs' counsel since it was filed
18   under seal.
19              But notwithstanding that, there is -- I mean, the
20   question of how -- of that reporting of the -- of ICE's
21   collection of data is certainly something that I do
22   understand ICE continues to work with the monitor on.  I -- I
23   raise this point because the Court order -- the proposed
24   order suggests that the parties should jointly file a
25   response by July 31st.  There --
```

1          To the extent that that joint discussion is

2    intended to include plaintiffs and defendants, I would ask

3    that there be some resolution of the issue of whether amici

4    are participating as part of plaintiffs -- along with

5    plaintiffs or as a separate party who are ordered to

6    participate in those conversations, it is -- to have a second

7    response filed -- what is in effect a second response filed

8    nine days after the deadline raising different issues and

9    appearing to try to participate as separate plaintiffs'

10   counsel, it makes it very difficult for the government to

11   reach resolution when we don't know who we're resolving

12   issues with.

13          THE COURT:  I think that's a fair point,

14   Ms. Fabian.  To the extent that we have Mr. -- is it

15   Barenfeld on the line?

16          MR. BARENFELD:  Yes, Your Honor.

17          THE COURT:  Perhaps you should clarify.  Because up

18   to this point, the folks that you represent have been working

19   in tandem with plaintiffs' counsel to provide information and

20   factual support for the plaintiffs' positions.  And the

21   access that plaintiffs' counsel have to things that are under

22   seal and other aspects of the docket are accorded to them

23   because they're parties to a protective order.  I'm not sure

24   at this juncture what your posture is with regard to the

25   amici and whether they continue to be working with

1    plaintiffs' counsel or wish to have some separate posture.

2    Because if that is the case, then you will need to file a

3    motion and have that formalized.

4          MR. BARENFELD:  Your Honor, if I may, I have -- I

5    believe Andrea Meza is also on the line.  She is counsel for

6    one of the amici -- the Refugee And Immigration Center for

7    Education and Legal Services, which is known as RAICES, where

8    she's preparing a pro hac vice application so that she can

9    appear in this case on behalf of her foundation as an amicus.

10         In the interim, I was -- I would like to request

11   that she be able to address Your Honor's question, because I

12   think she'll be able to do it better than I can at this

13   point.

14         THE COURT:  All right.  I -- I am asking this

15   because there is a difference between being amici and being

16   part of the plaintiff team.  I notice, for example, in the

17   amicus brief that you're requesting specific affirmative

18   relief that is not part of what has been requested by

19   plaintiffs.  Traditionally, amici are friends of the Court,

20   which means that they comment on law and perhaps provide some

21   factual augmentation to the record, but they do not have

22   standing to request specific relief.

23         MR. BARENFELD:  Understood.  I'll defer to Ms. Meza

24   if she's on.  Well, apparently, she's not on.  So I can -- I

25   can speak to the difference in the position between the

1   plaintiffs and the amici.  I believe the reason that they --

2   that the amici have filed a separate brief is because they

3   take the position that parents cannot waive the Flores

4   rights, whereas plaintiffs have taken the -- a different

5   position.  We wanted to clarify that delineation.

6           MS. CAMBRIA:  Your Honor, if I may speak?

7           THE COURT:  This is -- who is this?

8           MS. CAMBRIA:  My name is Bridgett Cambria.  I am an

9   attorney and the executive director at Aldea.  I provided a

10  declaration.  I'm entering my appearance pro hac, which will

11  be on file as soon as I obtain my certificate of good

12  standing in Pennsylvania.

13          Gabe is correct.  The reason that we were required

14  to file as amici in this instance as opposed to with the

15  plaintiffs' counsel, as we had done routinely, is that we are

16  entering a period of this litigation where we represent

17  families.  We would still like to provide the factual

18  backgrounds to this Court, which we believe are extremely

19  helpful, in the fact that we represents the hundreds and

20  thousands of families who are detained in the FRCs and have

21  unique perspective on their situation and their case, which I

22  believe is helpful to this Court.

23          So for that reason, we provided an amici so that we

24  could enter the evidence that we would typically provide this

25  Court to provide relevant facts.  I do understand that we

1    cannot request specific relief, but we still believe and feel

2    that the circumstances of each class member, each child that

3    is detained in the FRCs is inherently relevant to this case.

4    I believe there is great importance, especially in light of

5    Covid-19.  Especially in light of the fact that Covid-19 is

6    now in two of the FRCs, that this Court be made aware of the

7    factual circumstances of the class members.  And at the same

8    time, we honor our commitments to our clients, who are whole

9    families.

10            So for that reason, we have filed amici in this

11   case.

12            THE COURT:  All right.  Well, I have no problem

13   with amici and do appreciate the efforts you have undertaken

14   to provide the Court with information to the extent that it

15   has been provided.  As I said, amici are not in a position to

16   be able to argue about rulings that this Court has already

17   made.

18            MS. CAMBRIA:  I do understand that, Your Honor.  I

19   will definitely take that under advisement.  As we move

20   forward, we'll take that into consideration as we prepare any

21   future filings or any other strategies before this Court.

22            So thank you very much.

23            THE COURT:  All right.  Thank you.

24            Are there any other issues that counsel would like

25   to raise?

1          MS. FABIAN:  Your Honor, I'd like to clarify --

2          MR. SCHEY:  This is --

3          THE COURT:  Wait.  One at a time.  We'll hear from

4     Ms. Fabian first.

5          MS. FABIAN:  Sorry.  This is Sarah Fabian for the

6     defendants.  Can you clarify then whether amici are allowed

7     to be provided with under-seal filings through this

8     litigation?  And likewise, if there's any other -- so, for

9     example, that the position of amici would seem to affect the

10    discussions that we're trying to have on an expedited basis

11    with regard to the waiver provision.  I would expect that if

12    the participation as amici -- if a resolution is reached,

13    that they may, it sounds like, have objections to -- to the

14    manner in which it's reached.  So I understand that some of

15    that may be speculative at this point for the Court.

16              To the extent that the parties are going to try to

17    proceed quickly and to resolve this to the extent there is

18    guidance from the Court as to -- as to the effect of any

19    objections and the participation of those counsel, it would

20    be helpful and -- or if the Court would prefer that we just

21    come back and resolve those.

22         THE COURT:  All right.  Let me just say that there

23    should be a protective order already on the docket.  That

24    should be followed and complied with.  If these individuals

25    who are calling themselves amici now are still in a position

1    where they are assisting plaintiffs, I would assume that

2    plaintiffs would instruct them about the terms of the

3    protective order and assure that they are in compliance with

4    it.

5         If the amici are not working with plaintiffs'

6    counsel and want to have their own position, then they're not

7    really amici.  They may be something else, but I am not going

8    to give any legal advice in that regard.  The law is pretty

9    clear on what the various parameters are of those who appear

10   before the Court.  If there are disagreements between amici

11   and plaintiffs' counsel, amici are not in a position to

12   either ask for relief or file objections or anything of the

13   sort.  Amici means friend of the Court.  So they need to be

14   able to provide information that augments the record or that

15   provides edification regarding the law, but they do not stand

16   in the shoes of plaintiffs' counsel who are the class

17   representatives.

18        MS. CAMBRIA:  Your Honor, this is Bridget Cambria,

19   I appreciate that guidance.  We will absolutely certainly

20   follow that instruction.  We just offer that to either

21   plaintiffs or defendants, as friends of the Court, if they do

22   want our input or information or advice, we are always

23   available to assist either of them.

24        THE COURT:  Well, it seems to me that you are full

25   of information that may be useful to the parties.  It is just

1   that if you are going to be given access to information that

2   is filed under seal, then you need to comply with the

3   requirements of the Court that apply to under-seal documents

4   or documents that are covered under protective orders.

5            MS. CAMBRIA:  Of course, Your Honor, yes.

6            MR. SCHEY:  This is Peter Schey.

7            THE COURT:  Anything further?

8            MR. SCHEY:  Just one other issue, Your Honor, I

9   just -- I had suggested in a previous proposed order -- it

10  was a suggestion not adopted and may not be adopted now, but

11  just to circle back to it, it just seems to plaintiffs that

12  it would be extraordinarily helpful if the government could

13  be required to share with class counsel under the protective

14  order.

15           The parole worksheets for the -- I think it's about

16  74 or 75 remaining class members in family detention

17  facilities, and the documents that were relied upon to make

18  decisions that are reflected in those parole worksheets.  So

19  they make a decision to not release a kid because a kid is

20  this issue or that issue, and they might rely upon some

21  document to make their decision that is recorded in the

22  parole worksheets.

23           It just seems to me that that kind of transparency

24  would go a long way towards helping us understand what

25  exactly the basis for INS -- INS, excuse me -- ICE's

1    decisions and any evidence that they relied upon to make

2    those decisions.  It's not a very large number of people.

3    It's not hundreds or thousands of people.  It's really just

4    74, 75, 76 people.

5         I really think that that would assist us and would

6    facilitate our discussions and open discussions with the

7    government if we had access to that kind -- to those

8    documents.  And we are -- I mentioned just as a courtesy to

9    the Court, if the Court declines to do that which I -- which

10   is fine.  I mean, the Court can do whatever it thinks is the

11   best course of action, but we are preparing a -- a Freedom of

12   Information Act request with the same documents.  And I don't

13   think they're exempt from disclosure that would include the

14   Information Act request.  It could be names would be deleted

15   or A-numbers would be deleted, which is not that important,

16   because what is important to really understand what is being

17   put into these parole worksheets, and what documents were

18   relied upon to make decisions that are reflected in those

19   worksheets.

20        The problem is we can certainly do -- do what we're

21   in the process of preparing it, but it -- I feel fairly

22   certain it would then require that we file a FOIA lawsuit

23   too, because I -- I doubt that they'll timely respond.  I

24   would be surprised if they respond.  It would be a longer

25   road to get to the same result.  It would take nine days or

1    120 days, as opposed to something that could be accomplished

2    in a couple of weeks.  That is something I --

3         THE COURT:  Mr. Schey, you are nothing if not

4    persistent.  I think I've had this discussion with you

5    before.  As both sides know, I have hued very closely to the

6    Flores agreement in enforcing it.  If the Flores agreement

7    doesn't provide for that information or have some language

8    that encompasses that information, I don't think it's

9    appropriate for me to force the government to give you that

10   information.

11        However, if the government in its discretion wishes

12   to share that information with you, it certainly can do that.

13   It certainly can in light of the order to expeditiously

14   transfer or release the class members as quickly as possible.

15   Maybe it might be efficient for them to share some of that

16   information with you so that you can assist them in that

17   process, but it is not for me to mandate things that are not

18   specifically provided in the Flores agreement or encompassed

19   within it.

20        MR. SCHEY:  I would just remind -- I -- I respect

21   that, Your Honor.  I would just remind the Court that in, I

22   think it was in 2000 -- the spring of 2017, that the Court

23   did order that discovery could be conducted, and that even

24   included depositions, and then the results of that discovery

25   that was conducted both by defendants and by plaintiffs,

1    defendants conducted extensive discovery.  Plaintiffs

2    conducted discovery, but it was short.  It was short and

3    quick.  That information was very helpful then to the Court

4    and was considered by the Court and was quoted by the Court

5    in its, I believe, it was June 2017 order that dealt with the

6    conditions at ICE --

7              THE COURT:  Yes.  That is true, Mr. Schey, but that

8    was in a different context.  It was in the context of

9    allowing both sides to engage in discovery in support of

10   their various positions on the motions that were pending at

11   that time.  Similarly, here there are exhibits that include

12   some of these things that are perhaps slightly modified

13   aspects of the parole worksheets that have been included as

14   exhibits, but that is a completely different proposition than

15   ordering that they provide that to you on a regular basis.

16             MR. SCHEY:  Well, Your Honor, I wasn't suggesting

17   on a regular basis.  I was suggesting a one-time basis so

18   that we can more efficiently and intelligently resolve the

19   pending motions.  I was just thinking it about a one-time --

20             THE COURT:  You have access to the things that are

21   sealed, do you not?

22             MR. SCHEY:  I don't have access to the parole

23   worksheets, Your Honor.

24             THE COURT:  You don't have access to the exhibits

25   that are attached to the juvenile coordinator's report?

1         MR. SCHEY:  Well, the exhibits, as I recall, do not

2    include the actual parole worksheets.  There's a summary of

3    why decisions were made, but I don't believe that I have

4    access to the actual parole worksheets or to the documents

5    that were relied upon to make the decisions.

6         THE COURT:  Okay.  Well, they may not necessarily

7    be the parole worksheet, but I presume that the exhibits

8    obtained a lot of information from those worksheets.

9         MS. FABIAN:  Your Honor, this is Sarah Fabian.  If

10   I could make a suggestion.  I believe Ms. Ordin does have the

11   parole worksheets, at least some if not all of them.  Her

12   mandate order does allow her to share information if she

13   believes it would assist in her monitoring.  So I would be

14   open to discussing with Ms. Ordin if she sees information in

15   the parole worksheets that is not in what we've been filing,

16   and that she believes that would be helpful to these

17   discussions, we could talk about sharing that information for

18   purposes of moving the discussions forward.

19        THE COURT:  All right.  That's a good suggestion.

20   Currently, apparently, there are about 124 minors who are

21   still in FRC custody, so we're not talking about a terribly

22   huge number of people.  And if the parole worksheets might be

23   helpful in assisting in how to resolve their placement, then

24   I will encourage Ms. Ordin to share that information where it

25   is going to be helpful.

1          MR. SCHEY:  Thank you, Your Honor.

2          THE COURT:  If there's nothing further from

3     counsel, let me just give you one final comment about why I

4     have requested you to file a joint status report, and that if

5     you include any new factual assertions in your future filings

6     that were not shared with opposing counsel first, and where

7     you did not attempt to resolve it before you brought it to

8     me, I am not going to consider it.  The reason I'm doing that

9     is I'm trying to wean you away from considering the Court as

10    your help desk.  I am not your help desk.  I will certainly

11    preside over and rule over overarching issues relating to

12    this case, but if there are individual issues that pertain to

13    individual class members that have unique facts, those should

14    be brought to each other's attention so that you can resolve

15    it.  There's a process for that.  You can bring it to the

16    attention of the juvenile coordinator.

17          There was a dispute about, for example, whether one

18    of the people in FRC custody had a sponsor who had withdrawn.

19    So you exchanged a request with each other.  Ms. Fabian

20    responds to the request, and then instead of going back to

21    Ms. Fabian to say oh, that explanation is incorrect,

22    Ms. Fabian, could you look into the fact that this person

23    says that she did not withdraw as a sponsor.  Instead you

24    file a brief that tells me that they are telling you

25    untruths.  That is not how we're going to proceed in this

1    case.  They're going to be hundreds if not thousands of

2    disputes between the parties about individuals as we proceed

3    over the years.  I am not going to get in the middle of them,

4    if I can avoid it.

5              These are issues that can and should be resolved by

6    the parties through the process that they have established

7    under the Flores agreement.  It does not all require briefing

8    and court appearances.  So I'm trying to encourage you to

9    follow this process.  Did I make that clear?

10             MR. SCHEY:  This is Mr. Schey.  We agree with that,

11   Your Honor.  Appreciate your direction on that.

12             MR. HOLGUIN:  Your Honor, this is Carlos Holguin

13   for plaintiffs.  The -- there's a couple of juveniles that we

14   included in our -- one of which you're referencing who was in

15   ORR custody.  I -- I do need to report to the Court that both

16   JJSD was -- my reports are that he was released yesterday.

17   This was a 7-year-old detained since March.  That AGLC, a

18   17-year-old who has been detained for four months is to be

19   released within the next 72 hours.

20             With respect to JJSD, yes, we did advise Ms. Fabian

21   about the apparent unnecessary delay in his release.  We

22   received the response from her that Your Honor referred to.

23   JJSD's own lawyer then reported to Ms. Fabian and the

24   juvenile coordinator and the independent monitor that this

25   was not the case; that his sponsor had not -- that JJSD, the

```
 1   class member's individual lawyer reported to Ms. Fabian, the

 2   juvenile coordinator, and the independent monitor regarding

 3   this dispute about whether his sponsor had withdrawn.  So

 4   that was brought up prior to our bringing that case to the

 5   attention of the Court.

 6           However, all is well that ends well.  JJSD has been

 7   released.  So we're -- I feel incumbent to advise the Court

 8   of that.

 9           THE COURT:  I appreciate that update, Mr. Holguin.

10   That proves my point, which is that these cases that you

11   bring to my attention can and should be resolved without my

12   intervention.  All right.

13           If there is nothing further, we are adjourned.

14   This matter is concluded.

15           (Proceedings concluded at 11:05 a.m.)

16

17

18

19

20

21

22

23

24

25
```

```
1                          CERTIFICATE

2   I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

3   TRANSCRIPT OF THE STENOGRAPHICALLY RECORDED PROCEEDINGS IN

4   THE ABOVE MATTER.

5   FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE

6   REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE

7   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

8

9   /s/ Miriam V. Baird            07/03/2020

10  MIRIAM V. BAIRD                        DATE
    OFFICIAL REPORTER
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```