## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

JENNY LISETTE FLORES, *et. al.*,     )    Case No.: CV 85-4544-DMG
                                )
        Plaintiffs,         )
                                )
v.                                  )
                                )
WILLIAM BARR, Attorney General of the   )
United States, *et al.*,         )
                                )
        Defendants.        )
_____)

## DECLARATION OF DAWNISHA HELLAND

I, Dawnisha Helland, hereby make the following declaration with respect to the above-captioned matter:

1. I am a Supervisory Deportation and Detention Officer (SDDO) acting as a National Juvenile Coordinator in the Juvenile and Family Residential Management Unit (JFRMU), at the Office of Enforcement and Removal Operations (ERO) of U.S. Immigration and Customs Enforcement (ICE) located in Washington, DC. I began my tenure with the DHS in 2008, with the United States Border Patrol (USBP) as a Border Patrol Agent within the El Centro sector. Currently, I am the Section Chief for JFRMU. As part of my responsibilities, I advise National Juvenile Coordinators and Field Office Juvenile Coordinators (FOJC) who are subject matter experts on the field for juvenile and family detention issues. In addition, I review all detention requests for minors who are not unaccompanied alien children to determine if detention is appropriate.

2. I am familiar with A.F.P.P.'s case as I have reviewed information available on electronic databases, available documents and have discussed this case with the local FOJC.

3.  A.F.P.P. was originally encountered at the border on December 17, 2016, as an
    unaccompanied alien child and taken into the custody of the Department of Health and
    Human Services (HHS), Office of Refugee Resettlement (ORR). He was released to his
    mother on December 29, 2016. See Ex. 1, DHS Evidence For Bond Redetermination,
    pages 57-61, and 56.

4.  On September 21, 2019, A.F.P.P. was arrested by ERO at a home in Maryland. He was
    not the target of the ERO operation, but he was a minor present without a parent or legal
    guardian. He was living in a house with two other unrelated adult males. ERO officers
    observed he had what appeared to be a gang related tattoo on his neck. Ex. 2, page 4.
    When ERO officers accompanied him to get his identity documents, he attempted to grab
    a nine-inch knife from a closet. Officers were able to get him away from the knife before
    he grabbed it.  Ex. 1. at 9-16.

5.  Upon arrest, he was served with a Form I-286 which indicates he can ask for a bond
    hearing. He signed the Form I-213 and list of free legal services. Ex. 2, pages 2-3, 5.

6.  Because he was a member of the *Saravia* class, he received a custody hearing on
    September 26, 2019. Prior to that hearing, ICE served his counsel with a packet of
    evidence which included the Form I-213.). The immigration judge found that detention
    was appropriate because A.F.P.P. was a danger to the public and himself. Ex. 1, page 1.

7.  As part of docket management, the FOJC reviews any new developments to determine,
    among other things, if detention is still appropriate. As part of this determination, the
    FOJC considers developments in the immigration case, any disciplinary reports and
    information received from the minor or counsel.

8. In this case, there have been no developments that demonstrate A.F.P.P. has ceased to be a danger or possible flight risk. On October 17, 2019, he was disciplined for tagging a wall at the detention facility with an "MS-13" gang sign. Ex. 1, pages 21-23. On January 4, 2020, he received another disciplinary infraction for attacking an individual at Cowlitz. Ex. 1, pages 17-20. On January 29, 2020, the United States Citizenship and Immigration Service denied his request for relief. Ex. 1, pages 31-33.

9. On April 14, 2020, A.F.P.P.'s counsel of record submitted a written request for release to the FOJC.  This request was promptly evaluated by the local office, who determined that A.F.P.P. remained a danger to the community and flight risk based on the information noted above.  JFRMU concurred with this assessment.

10. A.F.P.P. requested a bond redetermination hearing and was scheduled to receive one on June 29, 2020. He requested a continuance of this hearing and it's currently scheduled for July 9, 2020.

11. Upon turning 18 years old, A.F.P.P. can no longer be held at Cowlitz County Juvenile Detention Center, as that facility only houses minors.

This declaration is based upon my personal and professional knowledge, information obtained from other individuals employed by ICE, and information obtained from various records and systems maintained by DHS. I provide this declaration based on the best of my knowledge, information, belief, and reasonable inquiry for the above-captioned case.

Signed on this   2  nd day of July 2020.

Dawnisha Helland
National Juvenile Coordinator
ICE Enforcement and Removal Operations

# EXHIBIT 1

**ERIN CLIFFORD**
Chief Counsel

███████████

Deputy Chief Counsel

███████████

Assistant Chief Counsel
U.S. Immigration and Customs Enforcement
Department of Homeland Security
1220 SW Third Avenue, Suite 300
Portland, OR 97204
(503) 326-2059

**DETAINED**



UNITED STATES DEPARTMENT OF JUSTICE
Executive Office for Immigration Review
Office of the Immigration Judge
Portland, Oregon

| | | |
|---|---|---|
| In the Matter of: | ) | IN BOND PROCEEDINGS |
| | ) | |
| P███████-P████████ A██ █F██████ | ) | File No.:  A███████████ |
| | ) | |
| Respondent | ) | Immigration Judge:  Richard Zanfardino |
| | ) | Bond Hearing:  June 29, 2020 |

**DEPARTMENT OF HOMELAND SECURITY**
**EVIDENCE SUBMISSION FOR BOND REDETERMINATION**

The Department of Homeland Security (DHS) respectfully submits the following evidence in the above-captioned case:

A. DHS Certification.................................................................................2

B. Form I-200, Warrant for Arrest of Alien, dated December 18, 2016....................3

C. Form I-286, Notice of Custody Determination, dated December 18, 2016...............4

D. Order of the Immigration Judge denying respondent's request for a change in custody status, undated [DHS database shows that a bond hearing was held in Arlington, VA on September 26, 2019].........................................................................5

E. Form I-862, Notice to Appear, issued December 18, 2016............................6-8

F. Form I-213, Record of Deportable/Inadmissible Alien, dated September 21, 2019...9-15

G. Photograph of Knife with a 9-inch Blade Recovered from Respondent's Closet on September 21, 2019...............................................................................16

H. Cowlitz County Juvenile Court Services Detention Incident Report Forms, dated January 4, 2020 detailing Respondent's assault of another detained resident.........17-20

I. Cowlitz County Re-entry Plan for Respondent after his assault of another detained resident on January 4, 2020...................................................................21-23

J. Cowlitz County Juvenile Court Services Detention Incident Report Form, dated October 17, 2019, detailing Respondent's violation of gang policy by writing "MS 13" on the wall of his cell..................................................................................24-25

K. NJ Office of the Attorney General, Juvenile Justice Commission. Gang Awareness Guide: Recognize the Signs, showing picture of MS 13 gang signs...................26-30

L. U.S. Citizenship and Immigration Services (USCIS) UAC Decision Notice for Non-Eligibility, dated January 29, 2020.......................................................31-33

M. ⬛⬛⬛⬛⬛⬛⬛⬛ dated January 14, 2020.......................................34-55

   • See page 54 for Respondent's explanation as to why he wrote "MS 13" on the wall of his cell at Cowlitz County Jail

N. Office of Refugee Resettlement Verification of Release, showing Respondent released to his mother on December 29, 2016..........................................................56

O. Form I-213, Record of Deportable/Inadmissible Alien, dated December 18, 2016...57-61

P.  Respondent's Honduran Birth Certificate, showing his date of birth as ███ 2002....62

Dated:  June 25, 2020

Respectfully submitted,

Assistant Chief Counsel
Immigration and Customs Enforcement



## DEPARTMENT OF HOMELAND SECURITY
## CERTIFICATION

I HEREBY CERTIFY AND ATTEST in my official capacity that the annexed documents are true and correct copies of the original records of the Department of Homeland Security, or its predecessor the Immigration and Naturalization Service, of which the Secretary of the Department of Homeland Security is the legal custodian under Sections 103 and 290 of the Immigration and Nationality Act, kept or recorded in the regular course of business or activity, relating to the person whose name appears as the subject of the documents and whose A-number appears therein, and that, in executing my official duties under Section 252(c) of Title 6 of the United States Code, and Sections 1240.2 and 1240.32(c) of Title 8 of the Code of Federal Regulations, I have lawful physical custody of the original records of which the annexed documents are true and correct copies produced in the regular course of business or activity by an accurate process of reproduction.

Assistant Chief Counsel
Immigration and Customs Enforcement
Portland, OR

U.S. Department of Homeland Security

# Warrant for Arrest of Alien

File No. █████████████

Event No: ██████████████

FINS # ████████████

Date: **December 18, 2016**

To any officer delegated authority pursuant to Section 287 of the Immigration and Nationality Act:

From evidence submitted to me, it appears that:

A████ F█████ P██████ F█████
_____
(Full name of alien)

an alien who entered the United States at or near _____**DEL RIO, TEXAS**_____ on
(Port)

**December 17, 2016** _____ is within the country in violation of the immigration laws and is
(Date)

therefore liable to being taken into custody as authorized by section 236 of the Immigration and Nationality Act.

By virtue of the authority vested in me by the immigration laws of the United States and the regulations issued pursuant thereto, I command you to take the above-named alien into custody for proceedings in accordance with the applicable provisions of the immigration laws and regulations.

_____
(Signature of Designated Immigration Officer)

_____
(Print name of Designated Immigration Officer)

**SUPV BORDER PATROL AGENT  (PAIC)**
(Title)

---

## Certificate of Service

Served by me at _____**UVALDE, TEXAS**_____ on **December 18, 2016** at **02:00 AM** .

I certify that following such service, the alien was advised concerning his or her right to counsel and was furnished a copy of this warrant.

_____
(Signature of officer serving warrant)

**BORDER PATROL AGENT**
(Title of officer serving warrant)

Form I-200 (Rev. 03/01/07) N

3

## DEPARTMENT OF HOMELAND SECURITY
## NOTICE OF CUSTODY DETERMINATION

Alien's Name: ██████████████████████

A-File Number: ████████████

Date: **12/18/2016**

Event ID: ██████████████

Subject ID: ████████████

FIN: ██████████

---

Pursuant to the authority contained in section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations, I have determined that, pending a final administrative determination in your case, you will be:

☒ Detained by the Department of Homeland Security.

☐ Released (check all that apply):

    ☐ Under bond in the amount of $ _____

    ☐ On your own recognizance.

    ☐ Under other conditions. [Additional document(s) will be provided.]

████████████████████      **12/18/2016 0147**

Name and Signature of Authorized Officer     Date and Time of Custody Determination

SUPV BORDER PATROL AGENT (PAIC)     **UVALDE, TEXAS**

Title     Office Location/Address

---

You may request a review of this custody determination by an immigration judge.

☒ I acknowledge receipt of this notification, and

    ☒ I do request an immigration judge review of this custody determination.

    ☐ I do not request an immigration judge review of this custody determination.

████████████████      **Dec 17, 2016**

Signature of Alien     Date

---

The contents of this notice were read to  ██████████████  in the **SPANISH**  language.

(Name of Alien)     (Name of Language)

████████████████      ██████████████████

Name and Signature of Officer     Name or Number of Interpreter (if applicable)

BORDER PATROL AGENT

Title

---

4

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
ARLINGTON, VA

FILE:  ████████████

IN THE MATTER OF:

████-█████████, A███ F████████

RESPONDENT

IN REMOVAL PROCEEDINGS

### ORDER OF THE IMMIGRATION JUDGE
### WITH RESPECT TO SARAVIA CUSTODY

Request having been made for a change in the custody status of
respondent pursuant to 8 CFR 236.1(c), and full consideration
having been given to the representations of the Department of
Homeland Security and the respondent, it is hereby

___✓___    ORDERED that the request for a change in custody status be
           denied.

_____    ORDERED that the request be granted and that respondent be:

_____    released from custody on his own recognizance

_____    released from custody under bond of $_____

_____    OTHER _____

Copy of this decision has been served on the respondent and the
Department of Homeland Security.

APPEAL:  waived -- reserved

ARLINGTON -- ARLINGTON JUVENILE DETAINEES

Date:

29OCT '9

_____
JOHN MILO BRYANT
Immigration Judge

XS

U.S. Department of Homeland Security

**Notice to Appear**

## In removal proceedings under section 240 of the Immigration and Nationality Act:

Subject ID: ▓▓▓▓     FINS #: ▓▓▓▓     File No: ▓▓▓▓

DOB: ▓▓▓▓/2002     Event No: ▓▓▓▓

In the Matter of:

Respondent: ▓▓▓▓▓▓▓▓▓▓     currently residing at:

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓   "SEE DNF"

(Number, street, city and ZIP code)     (Area code and phone number)

☐ 1. You are an arriving alien.

☒ 2. You are an alien present in the United States who has not been admitted or paroled.

☐ 3. You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:
1.  You are not a citizen or national of the United States;
2.  You are a native of HONDURAS and a citizen of HONDURAS ;
3.  You arrived in the United States at or near DEL RIO, TEXAS, on or about December 17, 2016;
4.  You were not then admitted or paroled after inspection by an Immigration Officer.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:
212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

☐  This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

☐  Section 235(b)(1) order was vacated pursuant to:  ☐ 8CFR 208.30(f)(2)  ☐ 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:
~~800 DOLOROSA STREET SUITE 300 San Antonio TX US 78207~~   *1901 S. Bell St. Ste. 200 Arlington, Va 22202*

(Complete Address of Immigration Court, including Room Number, if any)

on _a date to be set_ . at _a time to be set_ to show why you should not be removed from the United States based on the
    (Date)            (Time)

charge(s) set forth above.                           UPV BORDER PATROL AGENT (PAIC)

Date: December 18, 2016          UVALDE, TEXAS          (Signature and Title of Issuing Officer)

                                                (City and State)

See reverse for important information

Form I-862 (Rev. 08/01/07) N

### Notice to Respondent

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 3.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents, which you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear and that you are inadmissible or removable on the charges contained in the Notice to Appear. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge.

You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of departure voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:** You are required to provide the DHS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to one of the offices listed in 8 CFR 241.16(a). Specific addresses on locations for surrender can be obtained from your local DHS office or over the internet at http://www.ice.gov/about/dro/contact.htm. You must surrender within 30 days from the date the order becomes administratively final, unless you obtain an order from a Federal court, immigration court, or the Board of Immigration Appeals staying execution of the removal order. Immigration regulations at 8 CFR 241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United States and for ten years after departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Act.

### Request for Prompt Hearing

To expedite a determination in my case, I request an immediate hearing. I waive my right to a 10-day period prior to appearing before an immigration judge.

Before:

_(Signature of Respondent)_

Date: 12/18/2016

_(Signature and Title of Immigration Officer)_

### Certificate of Service

This Notice To Appear was served on the respondent by me on <u>December 18, 2016</u>, in the following manner and in compliance with section 239(a)(1)(F) of the Act.

[X] in person      [ ] by certified mail, returned receipt requested      [ ] by regular mail

[ ] Attached is a credible fear worksheet.

[X] Attached is a list of organizations and attorneys which provide free legal services.

The alien was provided oral notice in the <u>Spanish</u> language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_(Signature of Respondent if Personally Served)_     BORDER PATROL AGENT

_(Signature and Title of officer)_



**UAC Basic Information**

First Name:
Allan Fernando

Last Name:
Perdomo Portillo

AKA:
Status: DISCHARGED
Date of Birth: 2002                          Gender: M
A No.:                                        LOS: 11
Age: 14                                       Current Program:
Country of Birth: Honduras                    Admitted Date: 12/18/2016

**Discharge Notification**

| | | |
|---|---|---|
| Date of Discharge: | 12/29/2016 | Time Of Discharge: 03:35 AM |
| Type Of Discharge: | Reunified (Individual Sponsor) | Sponsor Name: |
| Sponsor DOB: | 8/26/1985 | Relationship to UAC: Mother |
| Prove of Relationship: | Sponsor provided Honduras passport for self as verification of identity and Honduras birth certificate for self and minor as verification she is the biological mother to minor. | |

ORR Decision:
  ○ Pending
  ● Approve                          Date of Decision: 12/28/2016
  ○ Disapprove
  ○ Remanded, please provide info as detailed in comments

Program Minor was Transferred to:           DHS Family Shelter
Local Law Enforcement:
Specify, if Other is Selected:
Address:
City:
State:                                       Zip Code:
Phone:
Legal Status of Minor: NTA (in removal proceedings)





U.S. Department of Homeland Security          Subject ID :          **Record of Deportable/Inadmissible Alien**

| Family Name (CAPS) | First | Middle | | Sex | Hair | Eyes | Complxn |
|---|---|---|---|---|---|---|---|
| | | | | H | BLK | BRO | MED |

| Country of Citizenship | Passport Number and Country of Issue | | Nile Number | Height | Weight | Occupation |
|---|---|---|---|---|---|---|
| HONDURAS | | 209 828 225 | | 67 | 140 | JUVENILE |

| U.S. Address | | Scars and Marks |
|---|---|---|
| MARYLAND, | | See Narrative |

| Date, Place, Time, and Manner of Last Entry | Passenger Boarded at | F.B.I. Number | ☒ Single |
|---|---|---|---|
| Unknown Date, LAR | | | ☐ Divorced ☐ Married / ☐ Widower ☐ Separated |

| Number, Street, City, Province (State) and Country of Permanent Residence | Method of Location/Apprehension |
|---|---|
| HONDURAS | NCA NA |

| Date of Birth | Date of Action | Location Code | At/Near | Date/Hour |
|---|---|---|---|---|
| 2002 Age: 17 | 09/21/2019 | BAL/BAL | See I-831 | 09/21/2019 09:40 |

| City, Province (State) and Country of Birth | AR ☒   Form: (Type and No.) Lifted ☐ Not Lifted ☐ | By |
|---|---|---|
| SONAGUERA, COLON (HONDURAS), HONDURAS | | See Narrative |

| NIV Issuing Post and NIV Number | Social Security Account Name | Status at Entry | Status When Found |
|---|---|---|---|
| | | | |

| Date Visa Issued | Social Security Number | Length of Time Illegally in U.S. |
|---|---|---|
| | | |

| Immigration Record | Criminal Record |
|---|---|
| POSITIVE - See Narrative | None Known |

| Name, Address, and Nationality of Spouse (Maiden Name, if Appropriate) | Number and Nationality of Minor Children |
|---|---|
| | None |

| Father's Name, Nationality, and Address, if Known | Mother's Present and Maiden Names, Nationality, and Address, if Known |
|---|---|
| UNKNOWN  NATIONALITY: HONDURAS ADDRESS:             SAN PEDRO SULA, CORTES, HONDURAS | SEE INFO IN NARRATIVE |

| Monies Due/Property in U.S. Not in Immediate Possession | Fingerprinted? ☒ Yes ☐ No | Systems Checks | Charge Code Word(s) | |
|---|---|---|---|---|
| None Claimed | | See Narrative | See Narrative | |

| Name and Address of (Last)(Current) U.S. Employer | Type of Employment | Salary | Employed from/to |
|---|---|---|---|
| | | Hr | |

Narrative (Outline particulars under which alien was located/apprehended. Include details not shown above regarding time, place and manner of last entry, attempted entry, or any other entry, and elements which establish administrative and/or criminal violation. Indicate means and route of travel to interior.)

FIN:                        Left Index fingerprint                    Right Index fingerprint

```
SCARS MARKS AND TATTOOS
------------------------
SCAR HAND, RIGHT - SCAR HAND, RIGHT BY THUMB
SCAR CALF, RIGHT - SCAR CALF, RIGHT INNER
SCAR HAND, NONSPECIFIC - RIGHT HAND "K y A"
TATTOO NECK - Red Lips
TATTOO NECK - "Crown X.XII.MMXVII" GRANDMA'S DATE OF DEATH

Subject Health Status
-----------------

...(CONTINUED ON I-831)
```

DEPORTATION OFFICER
(Signature and Title of Immigration Officer)

| Alien has been advised of communication privileges | (Date/Initials) | Received: (Subject and Documents) (Report of Interview) |
|---|---|---|
| Distribution: | | Officer: |
| STATS | | on: September 21, 2019              (time) |
| LIT | | Disposition: Other |
| A-FILE | | Examining Officer: |

Form I-213 (Rev. 08/01/07)

9

U.S. Department of Homeland Security        Continuation Page for Form I-213

| Alien's Name | File Number | Date |
|---|---|---|
| P███████-F██████, A█ F████████ | | 09/21/2019 |
| | Event No:███████ | |

The subject does not claim good health. Please contact your local IHSC health care staff member for additional information.

Current Criminal Charges
------------------------
09/21/2019 - 8 USC 1182 - ALIEN INADMISSIBILITY UNDER SECTION 212

Current Administrative Charges
------------------------------
09/21/2019 - 212a6Ai - ALIEN PRESENT WITHOUT ADMISSION OR PAROLE - (PWAs)

Previous Criminal History
-------------------------
Subject has no criminal history

Records Checked
---------------
CIS Neg
ATS-P Neg
EARM Pos
TECS Neg

ARRESTING AGENTS
-----------------
███████████████████████

At/Near
-----------------------------------
Takoma Park, MD

MOTHER INFORMATION
--------------------
NATIONALITY: HONDURAS
ADDRESS: ████████████████████████

Record of Deportable/Excludable Alien:
**** ADDENDUM****

ENCOUNTER:

On September 21, 2019, at approximately 09:45AM Officers arrived at ████████████ Park to locate Individual 01 ████████████ an alien with an outstanding order of removal Upon arriving at the residence Officer █████ observed a male Hispanic exiting the residence

| Signature | Title |
|---|---|
| s. ███████████████ | DEPORTATION OFFICER |

Form I-831 Continuation Page (Rev. 08/01/07)

10

U.S. Department of Homeland Security                    Continuation Page for Form _I-213_

| Alien's Name<br>PERDOMO-PORTILLO, ALLAN FERNANDO | File Number ███████<br>Event No: | Date<br>·.09/21/2019 |
|---|---|---|

(later Identified as Individual 02                        ), and walk towards a parked car near the
residence. Deportation officer ████ and Deputy Field Office Director (DFOD) ████
encountered the male who had exited and asked him where he lived. He pointed towards ███
███ Tacoma Park, MD and walked back towards the residence. Once in front of the
residence Deportation Officer ██████ walked up and spoke to Individual 02 .
and asked him if Officers could enter his residence to speak to him and
Individual 02        , consented. He opened the door to the residence and·Officer ███ DFOD
Officer██████, and Officer █████ also entered the residence. Once inside the
residence Officer██████ asked Individual 02          ,· how many people lived at the
residence and what were their names.  Individual 02        told Officer █████ that
there were three males in the house. Individual 02          then called out to the
Occupants in the house to come down to the first floor. Three Hispanic males walked down to
the living room area of the residence. Officer Hamer noticed one of the males (later
identified as A   P        , P    -P        had tattoos on his neck indicative of street
gang affiliation. Officer ██████ then asked P    -P          if he lived at the residence and
where he was from. P    P        avoided eye contact and leaned his head to conceal the
tattoos on his neck. Officer ██████ asked P    -P        where he was from and P
P        answered he was from Honduras. Officer █████ then asked P    -P        if he had
any immigration documents to which P    -P        stated that his passport was upstairs.
P    -P        asked Officer █████ if he could get his passport. Officer █████ said yes
and escorted P    -P        to the second floor. P    -P        walked to the rear
bedroom on the second floor and walked towards a closet behind the bedroom door. Officer
█████ stood behind P    -P        while he looked for his passport in the closet.
P    -P█        kept looking back at Officer █████ while moving clothes around in the
shelves of the closet.

Officer █████ then heard a hard object fall from on one of the shelves as if something hard
had been picked up and dropped. Officer█████ grabbed P    -P        from the waistband
and then P    -P        lunged to retrieve what he had dropped.·To prevent P
P        from retrieving what he was reaching for, Officer █████ pulled P    -P█
from his waistband towards the outside of the closet and took P    -P        to the ground
and placed him in handcuffs. While on the floor, Officer █████ asked P    -P█ if he
was reaching for a gun. P    -P        replied it was a knife. DFOD █████ came into the
bedroom and Officer █████ then asked DFOD █████ to look in the closet. A 13.75-inch knife
with a 9 inch blade was recovered and seized by DFOD █████. The knife was seized using
DHS form 6051S and P    -P        was arrested. It is important to note, Officer █████
returned to the closet where the knife was found and·emptied the entire contents of the
closet looking for the passport belonging to P    P█. No passport was recovered. At
10:49 DO █████ read P    -P        his Miranda Rights. P    -P        understood his
rights and stated he would not make any statements without a lawyer present. At
approximately 10:50, P    -P        was transported to the Baltimore Field Office for
processing.


IMMIGRATION HISTORY:

On December 17, 2016, juvenile was encountered by Border Patrol Agents in the area of Del
Rio, Texas. The subject was Served an NTA and ultimately released to the DRT/UVA Juvenile
facility on 12/18/2016.

On December 29, 2016, juvenile was released from ORR and SNA █████ custody and reunified with
his Mother██████ at █████████████
and tel: ██████ NTA was not submitted to SNA OCC or EOIR. .

| Signature | Title |
|---|---|
| ███████████ | DEPORTATION OFFICER |

Form I-831 Continuation Page (Rev. 08/01/07)

**U.S. Department of Homeland Security**                    **Continuation Page for Form** I-213

| Alien's Name | | File Number | Date |
|---|---|---|---|
| ▓▓-P▓▓▓▓, A▓ F▓▓▓ | | A▓ F▓▓▓▓ | 09/21/2019 |
| | | **Event No:** ▓▓▓▓▓ | |

On August 13, 2019, juvenile filled a I-589 Application for Asylum. As of 09/21/2019, "No Final Decision or Stoppage - Still In USCIS Asylum" has been made.

**CRIMINAL HISTORY:**

No criminal history found.

**OTHER:**

As a result of the incident at▓▓▓▓▓▓▓, P▓▓▓▓-P▓▓▓▓▓ was placed in holding Cell 2. P▓▓▓▓-Po▓▓▓ was under close watch of Deportation Officers on the processing floor and was given food and water upon arrival.
At 1417, DO ▓▓▓▓ was able to contact P▓▓▓-P▓▓▓'s mother at ▓▓▓▓▓▓▓ at ▓▓▓▓▓▓. The situation was explained to ▓▓▓▓▓ and she stated she understood. ▓▓▓▓▓▓▓▓▓ also stated that if her son was to be released, she could pick him up from the Baltimore Field Office as soon as possible. Call ended at approximately 1420.

**PHONE CALL:**

P▓▓▓▓-P▓▓▓▓ was given a free phone call. P▓▓▓-P▓▓▓▓ called his mother at approximately 1500 from the Baltimore Field Office. The phone call lasted approximately 10 minutes.

**CONCLUSION:**

▓▓▓▓▓ will remain in service custody pending his removal proceedings.

**\*\*\*\* ADDENDUM\*\*\*\***
**Encounter:**

On December 17, 2016, at approximately 1545 hours, Border Patrol Agent ▓▓▓▓▓▓ while assigned to the local area in the Del Rio area of responsibility, received information about a group of 3 subjects walking down Brodbent in San Filipe area. After reaching the area agent ▓▓▓▓ encountered the three subjects. He identified himself as a Border Patrol Agent and questioned the subjects as to their citizenship. All the subjects admitted to being citizens of Honduras and did not possess any immigration documents that would allow them to legally enter or remain in the United States of America. Subjects were placed under arrest and transported to the Del Rio Border Patrol Station for processing.

At the Border Patrol Station, one of the subjects was later identified as P▓▓▓▓-P▓▓▓, P▓▓▓▓▓.

**ADVISEMENT OF RIGHTS:**

At the Del Rio Border Patrol Station, P▓▓▓▓-P▓▓▓▓, A▓ F▓▓▓▓▓ , was advised of his rights in the Spanish language via Service Form I-770 by Border Patrol Agent D. ▓▓▓▓▓▓

**INADMISSIBILITY:**

Subject freely admitted that he illegally entered the United States by wading across the Rio Grande River near Del Rio, Texas, on December 17, 2016. The subject is inadmissible as

| Signature | Title |
|---|---|
| ▓▓▓▓▓▓▓▓ | DEPORTATION OFFICER |

                                               4  of  7  Pages

Form I-831 Continuation Page (Rev. 08/01/07)

**U.S. Department of Homeland Security**

**Continuation Page for Form** I-213

| Alien's Name | File Number | Date |
|---|---|---|
| ███-█████   A████ █ | ████████ | 09/21/2019 |
| | **Event No:** ████████ | |

per INA Section 212(a)(6)(A)(i) in that he was not inspected, admitted, or paroled by an Immigration Officer and entered at a place not designated as a Port of Entry by the Attorney General of the United States or the Commissioner of the Department of Homeland Security.

**PLACE/TIME OF ENTRY:**

█████-P█████  A█████-█████  illegally entered the United States approximately 2 miles Southeast of the Del Rio, Texas, Port of Entry on 12/17/2016 at approximately 0000 hrs.

**ALIENAGE/TRAVEL DATA:**

The subject stated that he departed his home in Honduras on December 06, 2016. He stated that he traveled by walking and via bus for three day across Guatemala and illegally crossed into Mexico on December 09, 2016. He traveled on numerous buses and walked until arriving in Ciudad Acuna, Coahuila, Mexico, on December 15, 2016. Subject then illegally crossed into the United States on December 17, 2016, by wading across the Rio Grande River.

**CREDIBLE FEAR STATEMENT/HEALTH:**

At the station, the juvenile was shown the "Know What to Expect" video, as per Del Rio Sector guidelines. The subject showed no reaction to the video

Minor was questioned using form ████████████████████████████████████

Juvenile was questioned and looked over as per Medical Form I-779. The minor appears to be in good health and when questioned about any sickness or injury, the subject stated he had none.

**CRIMINAL/IMMIGRATION HISTORY (RECORDS CHECKS):**

Juvenile has no criminal or immigration history as per the FPQ System.

Negative wants and warrants.

Juvenile is an unaccompanied juvenile, from Honduras. Forms I-779 and ORR/DUCS were executed.

Juvenile was questioned as to the ORRDUCS-Placement Request Form:

1. Location of immediate family? ████████████████

2. Other than your parents/legal guardian, do you have any other family in the United States?
Yes. Four sisters who are here illegally, and one uncle, no sure if legal.
3. Location & phone numbers of any friends or relatives in the United States or contiguous territory?
My mother. ███████████

| Signature | Title |
|---|---|
| ████████████ | DEPORTATION OFFICER |

5 of 7 Pages

13

**U.S. Department of Homeland Security**　　　　　　　**Continuation Page for Form** ___I-213___

| Alien's Name | File Number | Date |
|---|---|---|
| ▮ ▮ , A▮ ▮ | | 09/21/2019 |
| | Event No: ▮ | |

4. Type of location in country where juvenile was raised (suburban, rural, urban, etc.)?
Rural.
5. Whom the juvenile lived with before leaving home?
With my grandmother and my aunt.
6. Length of time in transit, from home to the United States?
Eleven days.
7. Route of travel (e.g., countries, length of time spent in each, status in each, date of arrival, etc.)?
Guatemala three days, Mexico eight days.
8. Destination in United States?
My mother, ▮

9. Person whom juvenile was to contact in the United States & phone number?
My mother, ▮

10. Present funds & anticipated method of support?
Subject had no money in his possession.
11. If smuggled, the arrangements made?
Unknown, but child stated that his aunt in Honduras made the arrangements.
12. The health of the juvenile: Are there any health problems admitted?
He appears to be in good health.
13. Juvenile's language skills?
Native Spanish speaker.

Juvenile does not appear to have any gang or terrorist ties.

Juvenile had no money in his possession at the time of apprehension, and his only personal property was what he was wearing.

DISPOSITION:

Juvenile was held at the Del Rio Border Patrol Station during processing, was never placed in an adult holding cell, and will be transferred to the Uvalde Juvenile Coordinator's Office for further processing and final disposition.

The above narrative was written by BPA Duane ▮ approved by SBPA ▮ hard of the Eagle Pass, Texas Border Patrol Station.

The following addendum was written by BPA ▮ of the Uvalde Border Patrol Station.

ADDENDUM:

Juvenile was transported to the DRT/UVA Juvenile facility on 12/18/2016 at 0118 hours. Information was sent to SNA/Juvenile Coordinator on 12/17/2016 via email for detention placement. SNA/Juvenile Coordinator stated on 12/17/2016 at 2055 hours that said juvenile would be detained at ▮ Shelter in San Antonio, Texas. Juvenile will be transported to that facility on 12/18/2016 at 0800 hours.

The juvenile was questioned and looked over as per Medical Form I-779. The minor appears to be in good health and when questioned about any other sickness or injury, the subject stated he had none.

| Signature | Title |
|---|---|
| ▮ | DEPORTATION OFFICER |

**6** of **7** Pages

Form I-831 Continuation Page (Rev. 08/01/07)

14

U.S. Department of Homeland Security

Continuation Page for Form ___I-213___

| Alien's Name | File Number | Date |
|---|---|---|
| ▓▓▓ ▓ , ▓ ▓ | ▓▓▓▓▓▓▓▓ | 09/21/2019 |
| | Event No: ▓▓▓▓▓▓ | |

Other Identifying Numbers

-------                -----------------
ALIEN-▓▓▓▓▓▓▓

| Signature | Title |
|---|---|
| ▓▓▓▓▓▓▓▓▓▓ | DEPORTATION OFFICER |

___7___ of ___7___ Pages

Form I-831 Continuation Page (Rev. 08/01/07)

15

# Cowlitz County Juvenile Court Services
## Detention Incident Report Form

Date: 01-04-2020        Time: 1155      Report 20-002.BB        1      of   1      Report(s)

Name of Resident:   A███P█████P███                                    PO:      ICE

Name of Staff/Non-Resident:   ████████

### Parent/Guardian Notification

Yes:      Date:                    Time:                    Staff Initial:

No:       Date:

### Witnesses

| | Name | Address | Phone |
|---|---|---|---|
| 1. | ████████ | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |

### Signatures/Other Information

Name:   _____      _____
                    (Printed)                              (Signature)

Incident (Check all that apply)

| | | |
|---|---|---|
| ☐ Suicide / Attempted Suicide | ☐ Report of Physical Abuse | ☒ Resident Injury |
| ☒ Resident / Resident Assault | ☐ General Disruptive Behavior | ☒ Code Called |
| ☐ Resident / Staff Assault | ☐ Verbal Threats | ☒ Restraints Used |
| ☐ Contraband | ☐ Escape / Attempted Escape | ☐ Cell Removal |
| ☐ Destruction of County Property | ☐ UA Refusal | ☐ EMH Contacted: In-house |
| ☐ Medical Transport | ☐ Medical: In house (seen by nurse) | ☐ Facing off with resident |
| ☐ PREA | ☐ Camera Cell Watch (mark frequency) | ☐ Other: |
| | ___ WIR | |
| | ___ 5 min | |
| | ___ 15 min | |

Was use of force used?   Yes ☒   No ☐      Medical evaluation / sick slip completed?   Yes ☒   No ☐

### Details of Event or Incident

WHAT HAPPENED AND WHY: Explain what the resident was doing and how the incident occurred. Get all the facts and describe exactly what was involved in the injury or incident. REMEMBER: who, what, when, where and how. You may attach additional pages for description or statements of witnesses.

On January 4, 2020 at 1155 hours I was supervising the residents in Alpha Pod along with Rover ███ At 1155 hours I was locking the residents down for lunchtime. At this time Resident ████████ along with A███ P█████ P███ attacked Resident ███ who was attempting to go to his cell. Resident P███ and ███ both punched Resident ███ striking him in the facial area. Staff ███ was able to restrain Resident P███ and I was able to Restrain Resident ███ after they assaulted Resident ███ A Code 2 was called by myself and the other resident were instructed to stand by their doors. Resident P████ and ███ both were resisting staff attempting to go after Resident ██████ after being restrained. After further investigations a few Residents along

17

Case 2:85-cv-04544-DMG-AGR   Document 841-1   Filed 07/06/20   Page 25 of 76   Page ID
#:38725
P a g e | 2

with Duffy were demeaning the MS 13 Gang the night before ▮ and P▮ admitted to planning the assault on Resident ▮ along with other Residents in the Pod that are currently on L1 status and in their cells. Resident ▮ and P▮ were yelling at the other residents that they would be assaulted next when they got the chance. Resident ▮ and P▮ were both placed in handcuffs due to safety reasons. Resident ▮ was placed in Delta 2 and P▮ was placed in Charlie 2. A sick slip was filled out for Resident ▮ due to facial lacerations and bruising.

18

# Cowlitz County Juvenile Court Services
## Detention Incident Report Form

Date: 01/04/20     Time: 1400     Report 20-003.AP(2)     2     of     2     Report(s)

Name of Resident: ████████ █ ████     PO:     ICE

Name of Staff/Non-Resident: █████████

### Parent/Guardian Notification

Yes: ____   Date: ____     Time: ____     Staff Initial: ____

No: X   Date: ____

### Witnesses

| Name | Address | Phone |
|------|---------|-------|
| I. ██████ | | |
| 2. | | |
| 3. | | |
| 4. | | |

### Signatures/Other Information

Name: ███████     _____
(Printed)          (Signature)

Incident (Check all that apply)

| | | |
|---|---|---|
| ☐ Suicide / Attempted Suicide | ☐ Report of Physical Abuse | ☒ Resident Injury |
| ☒ Resident / Resident Assault | ☒ General Disruptive Behavior | ☒ Code Called |
| ☐ Resident / Staff Assault | ☐ Verbal Threats | ☒ Restraints Used |
| ☐ Contraband | ☐ Escape / Attempted Escape | ☐ Cell Removal |
| ☒ Destruction of County Property | ☐ UA Refusal | ☐ EMH Contacted: In-house |
| ☐ Medical Transport | ☐ Medical: In house (seen by nurse) | ☐ Facing off with resident |
| ☐ PREA | ☐ Camera Cell Watch (mark frequency) | ☐ Other: |
| | ___ WIR | |
| | ___ 5 min | |
| | ___ 15 min | |

Was use of force used?  Yes ☒  No ☐     Medical evaluation / sick slip completed?  Yes ☒  No ☐

### Details of Event or Incident

WHAT HAPPENED AND WHY: Explain what the resident was doing and how the incident occurred. Get all the facts and describe exactly what was involved in the injury or incident. REMEMBER: who, what, when, where and how. You may attach additional pages for description or statements of witnesses.

On 01/04/2020 at approximately 1155 Resident P███-P███, further referred as P██ along with resident ████████, further referred as ██ attempted to assault resident ███. I was working as the Rover and was on the pod floor with the Alpha pod officer ██. ██ directed the residents to lock down for lunch at 1155. While locking down for lunch, P███ and ██ attacked ███ from behind. I attempted to separate the three residents while ██ instructed the other residents to return to their rooms. At this time P████ continued to initiate contact with ██ by throwing a pod chair in his direction. Resident P███ obtained a piece of plastic approximately 12" long from the nearby bookshelf at this time. I was able to restrain P██ and bring him to the pod floor while ██ nd ██ were restraining ██. Restraints were placed on

19

P██████ at this time and he was moved to Charlie 02. Medical slips were completed for ████, P██████, and

20

P███-P███, A███

*Re-entry plan as of <u>January 4, 2020</u> is as follows:*

**_History_**: Along with another resident, he participated in an assault in apparent retaliation for the resident "victim's" antagonistic trash talking on previous shifts/days. The resident has been at CCJDC since 9/22/19. Other than a few minor disciplinary infractions, the resident's behavior has been overall satisfactory during his stay in this facility.

**_Goal_**: Outline a plan to safely and securely re-enter the resident back into the general population and normal pod programming while keeping all staff, detention residents, and others safe from threatening behavior.

**_Present Status:_** The resident is currently in a lock-down status. All conditions specified on his lock-down points sheets will be adhered to throughout the weekend, with the exception of materials allowed in his cell. He may have his both his blankets, a recreational reading book, deck of cards, and a religious book in his cell. If he abuses those privileges, the on-duty lead/OIC will make any adjustments as necessary to ensure the safety and security of all concerned, document the adjustments, and pass them on his/her relief. His behavior will be evaluated during Monday dayshift by the dayshift lead (or the Detention Manager in the dayshift lead's absence) for any changes to his status based on his behaviors throughout the weekend.

**_Re-entry Rules_:**

- o  Current Transition Program:
    - o  Resident will be allowed 30 (thirty) minutes of large muscle exercise daily <u>based on behaviors</u> (via pod officer recommendation to the on-duty shift supervisor).
    - o  No other residents are allowed on the floor when the resident is out of his cell.
    - o  Visitation will be <u>based on behavior</u> at lead/OIC discretion with prescribed staff escort per the lockdown points sheet.
    - o  Everything will be <u>taken to the resident and picked up from the resident</u> while the resident is in his cell.
    - o  Any safety violations and/or misuse of county property will result in the removal of items from his possession at the discretion of the on-duty shift lead, OIC, and/or pod officer (with lead/OIC notification) until a plan can be created for their return. Resident may be charged with destruction of county property if/as appropriate.
    - o  If subsequently placed on water restriction, he may request water & it will be made available to him either by cup or the water fountain.

**_Educational Services_:**

- o  A call will be made as to whether he may attend school on Monday AM by the day shift lead or the Detention Manager, and under what circumstances.

21



- o  If allowed to attend school, he will be escorted Into the classroom only after the other residents enter the classroom.
- o  If allowed to attend school, he will be escorted out of the classroom prior to other residents being released from each session.
- o  A detention staff member will be In the classroom when he Is in the classroom.

## *Mental Health (Counseling) Services*:

- o  Juvenile Detention Care Coordinator will meet with resident at least once a week to discuss his needs.
- o  The Care Coordinator will notify the day shift supervisor (or Detention Manager in his absence) if he feels that the resident Is declining In any way or feels that further accommodations or changes are needed for his re-entry program.
- o  If the Care Coordinator is unavailable, EMH will be contacted as a counseling resource if an emergency arises.

## *Medical Services*:

- o  Sick slips will be completed by resident for any physical ailment they feel they need to be seen for by medical staff.
- o  The medical staff will notify the shift supervisor (or the Detention Manager If/as appropriate) if they feel the resident's medical condition Is declining In any way, or they feel further accommodations or changes are needed for his program.

## *Evaluation / Assessment*:

Each shift lead/OIC will evaluate resident during each shift and submit any requests for program alteration with reasons for accommodation/change to the Detention Manager (or on-call manager after-hours).

- o  At a minimum, the Dayshift Supervisor will evaluate (each business day) and review the resident's program, and submit recommendations to the Detention Manager on possible changes to the resident's program If/as appropriate.
- o  All staff members will need to document progress or regress of behaviors on the points sheet, blue or yellow chronological sheet, IRs, and/or logbook as appropriate.  Shift supervisors will ensure the lock down point sheets have been properly completed at the end of every shift.

## *NO TOLERANCE* (for any inappropriate actions resident may display, including, but not limited to):

- o  Activities that any staff member deems gang-related (talking, whispering, hand signs, whistle, yelps, etc.)
- o  Any threatening / intimidating actions, speech, gestures, etc.
- o  Disrespecting staff members and partners (e.g., detention, school, volunteers)





- o Foul language
- o Talking back to an authority figure
- o Flooding of cell or encouraging other residents to flood their cells
- o Failure to comply with all facility rules and expectations
- o Any destruction of county property

The resident may be charged with continued and/or additional egregious offenses.

Any significant infraction, as deemed by the on-duty shift lead or OIC, will be documented accordingly, and the resident will remain locked down until a new plan can be put in place to (re-) evaluate the incident(s) and re-enter the resident into a new or adjusted program. Lockdown status is as defined and described in the OIC Manual and Pod Handbook, and can include, but not be limited to, enhancing security procedures, restricting movements, restricting items in cells, possible finger food (if misused food or spoon), and water restriction (turn water off/on as needed, create a vacuum trap, allow resident flushing/drinking water at specified intervals, etc).

The dayshift supervisor, care coordinator, and school staff will use open communication to discuss the needs of this resident, and will consult each other and notify the Detention Manager if any recommendations of program accommodations are needed.

23

# Cowlitz County Juvenile Court Services
## Detention Incident Report Form

Date: 10/17/19        Time: 07035   Report 119-290.APP        1    of    1      Report(s)

Name of Resident:    F███████-████-█/███        PO:

Name of Staff/Non-Resident:    ████████

### Parent/Guardian Notification

Yes:        Date:                    Time:                    Staff Initial:

No:      X      Date:

### Witnesses

| Name | Address | Phone |
|---|---|---|
| I.    Kris | | |
| 2. | | |
| 3. | | |
| 4. | | |

### Signatures/Other Information

Name:    ████████

_____          _____
(Printed)                                                                   (Signature)

Incident (Check all that apply)

| | | |
|---|---|---|
| ☐ Suicide / Attempted Suicide | ☐ Report of Physical Abuse | ☐ Resident injury |
| ☐ Resident / Resident Assault | ☐ General Disruptive Behavior | ☐ Code Called |
| ☐ Resident / Staff Assault | ☐ Verbal Threats | ☐ Restraints Used |
| ☐ Contraband | ☐ Escape / Attempted Escape | ☐ Cell Removal |
| ☐ Destruction of County Property | ☐ UA Refusal | ☐ EMH Contacted: In-house |
| ☐ Medical Transport | ☐ Medical: In house (seen by nurse) | ☐ Facing off with resident |
| ☐ PREA | ☐ Camera Cell Watch (mark frequency) | ☒ Other: Violated gang policy |
| | ___ WIR | |
| | ___ 5 min | |
| | X_ 15 min | |

Was use of force used?   Yes ☐   No ☒     Medical evaluation / sick slip completed?   Yes ☐   No ☒

### Details of Event or Incident

WHAT HAPPENED AND WHY. Explain what the resident was doing and how the incident occurred. Get all the facts and describe exactly what was involved in the injury or incident. REMEMBER who, what, when, where and how. You may attach additional pages for description or statements of witnesses.

At approximately 0710 on 10/17/19 I was working as the officer in Alpha pod and I observed resident
P██████-█████████ violate Cowlitz County's zero tolerance on gang activity. At 0710 I was conducting a welfare
check on the residents of Alpha pod. I observed in A08 " MS 13" written on the wall with what appeared to be
a symbol representing the Mara Salvatrucha gang. I informed my officer in charge ████ what I had observed ██████
came to Alpha pod and took a picture of the writing on the wall. P█████ has been dropped to level one for violating the
zero tolerance gang policy.

END OF REPORT

2Y



25

## Gang Awareness Guide

# Recognize the Signs



EVALUATE • EDUCATE • ELIMINATE

26

# the Signs

**Introduction**

The New Jersey Juvenile Justice Commission (JJC) understands that gangs and gang related activities impact every community in our State. The JJC works with schools, community organizations and other law enforcement agencies to combat juvenile street gangs and help young people succeed.

The JJC has responded with a comprehensive program that addresses youth gangs at all levels. With funding from the NJ Department of Education, the JJC has developed a cutting-edge education curriculum, entitled Phoenix, that corresponds with the NJ Core Curriculum Standards.

This course can be tailored for youth in secure and residential programs, as well as county-operated detention centers and community-based programs. The workbook-based lessons provide structure and support, and clearly identify the progress of participants. The most important goal of the curriculum is developing self-efficacy skills, thereby allowing juveniles to understand how to react to risky situations, and to think through their actions and responses to avoid future gang involvement.

To expand its reach, the JJC is forming partnerships with communities to train others in the Phoenix curriculum. The JJC is also coordinating with the county offices of probation, as well as the police departments, to build a "safety net" of resources for youth in the community.

Experienced JJC staff are available to conduct workshops. One-day training sessions can be adapted to meet an audience's specific needs and information level. It can also be expanded to provide more in depth training.

*For more information, please contact a member of the*
**JJC's Gang Management Unit:**
1001 Spruce Street, Suite 202 • P.O. Box 107 • Trenton, NJ 08625-0107
Telephone: **(609) 341-3468** • Fax: (609) 943-4611

27

*Gang Awareness Guide*

Gang members communicate in many different ways. Speech is the most obvious; however, gang members also make use of nonverbal methods of exchanging thoughts. Graffiti, hand signs, colors, and tattoos are indicators of gang affiliation.

Gang members have their own language, which contains phrases, hand signs, tattoos, markings and graffiti. These often overlap. As a parent, you may not recognize them right away. The items listed as Identifiers in this booklet include types of clothing young people might wear, tattoos and other markings. The items listed as Phrases are expressions young people might say to each other or write on their school notebooks. As a parent, you should familiarize yourself with them, so that you will be alert to them.

Street gangs are targeting young people at an earlier and earlier age. It is critical that you be able to recognize the signs of gang involvement. This booklet is designed to help parents, teachers, and community members spot gang activity in their families, schools and communities. The pages that follow provide you with vivid descriptions that you can use to identify gang activity. If you spot any of these signs, there are professionals available to help you.

> *There are approximately 2,300 gang members under the age of 15 in New Jersey. Children as young as second and third grade have known gang affiliations. In fact, 46 percent of gang-related incidents occur on school property.*

## Why do kids join gangs?

Each case is individual, but some reasons include:

- Security, protection and a sense of belonging
- Lack of family, community, or youth support system (too much unsupervised time)
- Sense of status or respect
- Living in a gang infested community or having family members in a gang
- Low self-esteem
- Financial opportunities (i.e. profits from drug distribution and other illegal activities)
- Peer pressure
- Thrill seeking
- Media glorifying violence



28



# Recognize the Signs

## ms 13

Originating in Los Angeles, MS 13 is one of the most violent street gangs in the United States. Members smuggle and distribute illicit drugs and are extremely violent.

La Mara Salvatrucha
**MS X3 • MS 13**

## ms 13 identifiers

- Heavily tattooed
- Typical latin gang tattoos
- "Heavy Metal" tattoos
- Blue and black bandanas

## ms 13 phrases

- "La Mara" stands for Gangs
- "Salva" stands for Salvadorian
- "Trucha" stands for "look out"
- EME ESE stands for MS
- Locotes
- Cliques



29

*Gang Awareness Guide*





RECEIVED
U.S DHS. ICE
OFFICE OF ASYLUM
SAN FRANCISCO, CA

2020 JAN 31 P 1: 49

**U.S. Department of Homeland Security**
San Francisco Asylum Office
75 Hawthorne Street, 7th Floor, San Francisco, CA 94105


**U.S. Citizenship and Immigration Services**

Date: **JAN 2 9 2020**

A███ F██████ ████ F█████
COWLITZ COUNTY JUVENILE DETENTION CENTER
1725 1ST AVE
LONGVIEW, WA 98632

RE: F████████, A██ F████ A2███████



### UAC Decision Notice for Non-Eligibility

Dear A████████ █████:

This letter refers to your ████████████████████████ with U.S. Citizenship and Immigration Services (USCIS).

On December 18, 2016, you were served with a Form I-862, *Notice to Appear,* and placed in immigration proceedings in front of an immigration judge. The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA) amends the Immigration and Nationality Act t███████████████████████████

3T

**Need to Appear in Immigration Court:**
Based on the above reasons, your case has been returned to the immigration judge to continue immigration proceedings.

**Change of Address:**
Because you have been placed in removal proceedings, you must notify the Immigration Court within five days of any change of address by completing Form EOIR-33, *Alien's Change of Address Form/Immigration Court*, and submitting the Form EOIR-33 to the Immigration Court where your proceedings have been referred.  Form EOIR 33 is available on the Department of Justice website at www.justice.gov/eoir/eoirforms/eoir33/ICadr33.htm.





Sincerely,

Director

CC:    ASSISTANT CHIEF COUNSEL
       SEATTLE OFFICE OF THE CHIEF COUNSEL / OPLA, PORTLAND SUB-OFFICE
       IMMIGRATION AND CUSTOMS ENFORCEMENT
       U.S. DEPARTMENT OF HOMELAND SECURITY
       1220 SW 3RD AVENUE, SUITE 500
       PORTLAND, OREGON 97204

OMB Control No: 0970-0498
Expiration date: 07/31/2020



## U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES (HHS)
### OFFICE OF REFUGEE RESETTLEMENT (ORR)
### DIVISION OF UNACCOMPANIED CHILDREN OPERATIONS (DUCO)
### VERIFICATION OF RELEASE

### VERIFICATION OF RELEASE

| Name of Minor: | ████ | Aliases (if any): | |
| Minor's Date of Birth: | 2002 | Minor's A#: | |

The Office of Refugee Resettlement (ORR) has released the above named minor from Federal custody pursuant to section 462 of the Homeland Security Act of 2002 and section 235 of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 to the care of:

Name of Sponsor: ████

ses (if any):

dress: ████

te: DC          Zip Code: ████

ephone#: ████

ationship to Child: Mother

### ACKNOWLEDGEMENT OF THE SPONSOR CARE AGREEMENT

The above named sponsor has agreed to the provisions set forth in the *Sponsor Care Agreement,* pertaining to the minor's care, safety, and well-being, and the sponsor's responsibility for ensuring the minor's presence at all future proceedings before the Department of Homeland Security and the Department of Justice/Executive Office for Immigration Review (EOIR).

### FOR INTERNAL USE ONLY

| Name ORR care provider Facility | ████ |
| Date | 12/29/2016 |

THE PAPERWORK REDUCTION ACT OF 1995 (Pub. L. 104.13) Public reporting burden for this collection of information is estimated to average .10/hour per response, including the time for reviewing instructions, gathering and maintaining the data needed, and reviewing the collection of information. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.

56

U.S. Department of Homeland Security   Subject ID:357674141   **Record of Deportable/Inadmissible Alien**

| Family Name (CAPS) | | First | | Middle | | Sex M | Hair BLK | Eyes BRO | Cmplxn MED |
|---|---|---|---|---|---|---|---|---|---|

| Country of Citizenship HONDURAS | Passport Number and Country of Issue | File Number CASE No A | 2 | Height 67 | Weight 123 | Occupation JUVENILE |
|---|---|---|---|---|---|---|

| U.S. Address See Narrative | | Scars and Marks See Narrative |
|---|---|---|

| Date, Place, Time, and Manner of Last Entry 12/17/2016, 0000, 2 mile(s) SE of DLR, PWA/AFOOT | Passenger Boarded at | F.B.I. Number | ☒ Single ☐ Divorced ☐ Married ☐ Widower ☐ Separated |
|---|---|---|---|

| Number, Street, City, Province (State) and Country of Permanent Residence See Narrative | | | Method of Location/Apprehension PB |
|---|---|---|---|

| 2002          Age:14 | Date of Action 12/18/2016 | Location Code DRT/DRS | At/Near DEL RIO, TX | Date/Hour 12/17/2016 1605 |
|---|---|---|---|---|

| City, Province (State) and Country of Birth SONAGUERA, COLON (HONDURAS), HONDURAS | AR ☒ | Form: (Type and No.) Lifted ☐ Not Lifted ☐ | By |
|---|---|---|---|

| NIV Issuing Post and NIV Number | Social Security Account Name | Status at Entry PWA Mexico | Status When Found IN TRAVEL |
|---|---|---|---|

| Date Visa Issued | Social Security Number | Length of Time Illegally in U.S. AT ENTRY |
|---|---|---|

| Immigration Record NEGATIVE | Criminal Record None Known |
|---|---|

| Name, Address, and Nationality of Spouse (Maiden Name, if Appropriate) | Number and Nationality of Minor Children NONE. |
|---|---|

| Father's Name, Nationality, and Address, if Known See Narrative | Mother's Present and Maiden Names, Nationality, and Address, if Known See Narrative |
|---|---|

| Monies Due/Property in U.S. Not in Immediate Possession None Claimed | Fingerprinted? ☒ Yes ☐ No | Systems Checks | Charge Code Word(s) I6A |
|---|---|---|---|

| Name and Address of (Last)(Current) U.S. Employer | Type of Employment | Salary Hr | Employed from/to |
|---|---|---|---|

Narrative (Outline particulars under which alien was located/apprehended. Include details not shown above regarding time, place and manner of last entry, attempted entry, or any other entry, and elements which establish administrative and/or criminal violation. Indicate means and route of travel to interior.)

FINS #:                                  I77 #:NONE

ARREST COORDINATES:
--------------------
Latitude:   29.35276
Longitude: -100.88065

CONSEQUENCE DELIVERY SYSTEM:
----------------------------
Classification: PIRA

Left Index Print          Right Index Print

BORDER PATROL AGENT

| Alien has been advised of communication privileges | 12/18/2016 | /Initials) | (Signature and Title of Immigration Officer) |
|---|---|---|---|

| Distribution:              STATION | Received: (Subject and Documents)  (Report of Interview) Officer: on: December 18, 2016 at 0150                    (time) Disposition: Warrant of Arrest/Notice to Appear Examining Officer: |
|---|---|

Form I-213 (Rev. 08/01/07) Y

57

**U.S. Department of Homeland Security**

**Continuation Page for Form** _____ **I213**

| Alien's Name | File Number | Date |
|---|---|---|
| P█████, P█ A█ F█ | A█████ | 12/18/2016 |
| | Event No: █████ | |

**ENFORCEMENT PRIORITY:**
------------------------------
EP_1b


**US ADDRESS:**
------------
▁▁▁▁▁▁▁▁▁▁▁▁▁▁▁▁

SAN ANTONIO, TEXAS, ████████


**SCARS, MARKS, AND TATTOOS:**
----------------------------
SCAR CALF, RIGHT INNER
SCAR HAND, RIGHT BY THUMB

**FOREIGN ADDRESS:**
----------------
█████████████ SAN PEDRO SULA, CORTES, HONDURAS
█████████████ SAN PEDRO SULA, CORTES, HONDURAS

**FATHER NAME AND ADDRESS:**
-------------------------
Nationality:HONDURAS  UNKNOWN
███████

SAN PEDRO SULA, CORTES, HONDURAS

**MOTHER NAME AND ADDRESS:**
-------------------------
Nationality:HONDURA█████████████████


**ASSISTING ASSETS:**
-----------------
None

**UNACCOMPANIED JUVENILE:**
------------------------
P█████-P█████, A█████ F█████

**FUNDS IN POSSESSION:** A,0
----------------------
Honduran Lempira .00

| Signature | Title |
|---|---|
| ████████████ | BORDER PATROL AGENT |

Form I-831 Continuation Page (Rev. 08/01/07)



U.S. Department of Homeland Security

**Continuation Page for Form** _____ **I213** _____

| Alien's Name<br>P█████ P█████, A███ F███████ | File Number<br>A███ ███ ████<br>Event No:█████████ | Date<br>12/18/2016 |
|---|---|---|

**NARRATIVE:**
----------
**Encounter:**

On December 17, 2016, at approximately 1545 hours, Border Patrol Agent █████████ while assigned to the local area in the Del Rio area of responsibility, received information about a group of 3 subjects walking down Brodbent in San Filipe area. After reaching the area agent █████ encountered the three subjects. He identified himself as a Border Patrol Agent and questioned the subjects as to their citizenship. All the subjects admitted to being citizens of Honduras and did not possess any immigration documents that would allow them to legally enter or remain in the United States of America. Subjects were placed under arrest and transported to the Del Rio Border Patrol Station for processing.

At the Border Patrol Station, one of the subjects was later identified as P███ █P████, A███ F██████.

**ADVISEMENT OF RIGHTS:**

At the Del Rio Border Patrol Station, P█████ P███████, A███ ████████, was advised of his rights in the Spanish language via Service Form I-770 by Border Patrol Agent ████████.

**INADMISSIABILITY:**

Subject freely admitted that he illegally entered the United States by wading across the Rio Grande River near Del Rio, Texas, on December 17, 2016. The subject is inadmissible as per INA Section 212(a)(6)(A)(i) in that he was not inspected, admitted, or paroled by an Immigration Officer and entered at a place not designated as a Port of Entry by the Attorney General of the United States or the Commissioner of the Department of Homeland Security.

**PLACE/TIME OF ENTRY:**

P█████ P██████, A███ F███████ illegally entered the United States approximately 2 miles Southeast of the Del Rio, Texas, Port of Entry on 12/17/2016 at approximately 0000 hrs.

**ALIENAGE/TRAVEL DATA:**

The subject stated that he departed his home in Honduras on December 06, 2016. He stated that he traveled by walking and via bus for three day across Guatemala and illegally crossed into Mexico on December 09, 2016. He traveled on numerous buses and walked until arriving in Ciudad Acuna, Coahuila, Mexico, on December 15, 2016. Subject then illegally crossed into the United States on December 17, 2016, by wading across the Rio Grande River.

| Signature<br>████████████ | Title<br>BORDER PATROL AGENT |
|---|---|

Form I-831 Continuation Page (Rev. 08/01/07)



**U.S. Department of Homeland Security**

**Continuation Page for Form** _____ **I213**

| Alien's Name | | File Number | Date |
|---|---|---|---|
| ▓▓▓ A▓ F▓▓▓▓▓ | | A▓▓▓▓ Event No:▓▓▓▓ | 12/18/2016 |

▓▓▓▓▓▓▓▓/HEALTH:

At the station, the juvenile was shown the "Know What to Expect" video, as per Del Rio Sector guidelines. The subject showed no reaction to the video

Minor was questioned using ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Juvenile was questioned and looked over as per Medical Form I-779. The minor appears to be in good health and when questioned about any sickness or injury, the subject stated he had none.


CRIMINAL/IMMIGRATION HISTORY (RECORDS CHECKS):

Juvenile has no criminal or immigration history as per the FPQ System.

Negative wants and warrants.

Juvenile is an unaccompanied juvenile, from Honduras.  Forms I-779 and ORR/DUCS were executed.

Juvenile was questioned as to the ORRDUCS-Placement Request Form:

1.  Location of immediate family?
▓▓▓▓▓▓▓▓▓▓▓▓
2.  Other than your parents/legal guardian, do you have any other family in the United States?
Yes.  Four sisters who are here illegally, and one uncle, no sure if legal.
3.  Location & phone numbers of any friends or relatives in the United States or contiguous territory?
My mother, ▓▓▓▓ ▓▓▓▓▓▓ ▓▓▓▓▓▓, ▓▓▓▓ ▓▓ ▓▓▓ ▓▓▓▓▓▓▓ ▓▓▓ ▓▓
4.  Type of location in country where juvenile was raised (suburban, rural, urban, etc.)?
Rural.
5.  Whom the juvenile lived with before leaving home?
With my grandmother and my aunt.
6.  Length of time in transit, from home to the United States?
Eleven days.
7.  Route of travel (e.g.; countries, length of time spent in each, status in each, date of arrival, etc.)?
Guatemala three days, Mexico eight days.
8.  Destination in United States?
My mother, ▓▓▓▓▓▓▓▓▓▓, lives at ▓▓▓▓▓▓▓▓▓▓▓▓
9.  Person whom juvenile was to contact in the United States & phone number?
My mother, ▓▓▓▓▓▓▓▓, lives at ▓▓▓▓▓▓▓▓▓▓▓

| Signature | Title |
|---|---|
| ▓▓▓▓▓▓▓▓ | BORDER PATROL AGENT |

4 of 5 Pages

Form I-831 Continuation Page (Rev. 08/01/07)

**U.S. Department of Homeland Security**                    **Continuation Page for Form**      I213

| Alien's Name | File Number | Date |
|---|---|---|
| P[ ]-P[ ], A[ ]F[ ] | A[ ]  Event No:[ ] | 12/18/2016 |

(202) 520-5157.
10.   Present funds & anticipated method of support?
Subject had no money in his possession.
11.   If smuggled, the arrangements made?
Unknown, but child stated that his aunt in Honduras made the arrangements.
12.   The health of the juvenile:   Are there any health problems admitted?
He appears to be in good health.
13.   Juvenile's language skills?
Native Spanish speaker.

Juvenile does not appear to have any gang or terrorist ties.

Juvenile had no money in his possession at the time of apprehension, and his only personal
property was what he was wearing.

DISPOSITION:

Juvenile was held at the Del Rio Border Patrol Station during processing, was never placed
in an adult holding cell, and will be transferred to the Uvalde Juvenile Coordinator's
Office for further processing and final disposition.

The above narrative was written by BPA[ ]      approved by SBPA[ ]      of
the Eagle Pass, Texas Border Patrol Station.

The following addendum was written by BP[ ]      of the Uvalde Border Patrol Station.

ADDENDUM:
Juvenile was transported to the DRT/UVA Juvenile facility on 12/18/2016 at 0118 hours.
Information was sent to SNA/Juvenile Coordinator on 12/17/2016 via email for detention
placement. SNA/Juvenile Coordinator stated on 12/17/2016 at 2055 hours that said juvenile
would be detained at [ ] in San Antonio, Texas. Juvenile will be
transported to that facility on 12/18/2016 at 0800 hours.

The juvenile was questioned and looked over as per Medical Form I-779. The minor appears to
be in good health and when questioned about any other sickness or injury, the subject
stated he had none. ~~Minor questioned again using form~~ [ ]

| Signature | Title |
|---|---|
| | BORDER PATROL AGENT |

Form I-831 Continuation Page (Rev. 08/01/07)



REPÚBLICA DE HONDURAS
 STRO NACIONAL DE LAS PERSON..
REGISTRO CIVIL MUNICIPAL

Nº █████

## CACIÓN DE ACTA DE NACIMIENTO



REGISTRO NACIONAL DE LAS PERSONAS, con fundamento en el Decreto No. 150 Capítulo IV, Artículo 45, literal O, y Capítulo VIII, Artículo 90 del Congreso Nacional de fecha 17 de Noviembre de 1982. CERTIFICA que en los archivos de esta institución se encuentra el acta de nacimiento número: ████████ ubicada en el folio █████ tomo █████

*Número de Identidad*

del Año __2003__ y que pertenece a:

a) ____P███████____    b) ____P███████____
                                          *Segundo Apellido*

c) ____A███ F███████____    SEXO F ☐ M ☒
          *Nombre*

y cuya información es la siguiente:

1.) Lugar, fecha y orden de nacimiento

a) ____██████████____   b) ____COLÓN____   c) ____HONDURAS____
     *Municipio*                  *Departamento*            *País*

d) ____██████████____   e) ____██████████____   f) ____2002____
                                                                  *Año*

2.) Número de identidad, apellidos, nombre y nacionalidad del padre:

a) ____- - - - -____    b) ____- - - - -____
     *Primer Apellido*                           *Segundo Apellido*

c) ____- - - - -____    d) ____- - - - -____
     *Nombre*                                *Nacionalidad*

3.) Número de identidad, apellidos, nombre y nacionalidad de la madre:   N. Identidad: ████████

a) ____██████████____    b) ____██████████____
     *Primer Apellido*                           *Segundo Apellido*

c) ____██████████____    d) ____HONDUREÑA____
     *Nombre*                              *Nacionalidad*

4.) Notas marginales autorizadas

____NINGUNA____

Extendida en ____SAN PEDRO SULA____      ____CORTÉS____
                   *Municipio*                                  *Departamento*

a los: ____VEINTISIETE____ días del mes de ____SEPTIEMBRE____

del DOS MIL ____DIECISEIS____

FIRMA Y SELLO DEL DIRECTOR

62

## CERTIFICATE OF SERVICE

The undersigned hereby declares as follows:

I am a citizen of the United States over the age of 18 years and not a party to the within-entitled action. I am an employee of the U.S. Department of Homeland Security and my business address is 1220 SW Third Avenue, Suite 300, Portland, Oregon 97204.

☐    I caused to be served a true and correct copy of the foregoing document in person on the date indicated below.

X    I served a true and correct copy of the foregoing document by sending a true copy to him/her by regular mail, postage prepaid, to the following address:

☐    I served a true and correct copy of the foregoing document by sending a true copy to him/her by certified mail, postage prepaid, to the following address:

D. Paloma Norris-York
Metropolitan Public Defender
630 SW Fifth Avenue, Suite 500
Portland, OR  97204

Dated: June 25, 2020

Assistant Chief Counsel
Immigration and Customs Enforcement

# EXHIBIT 2

**U.S. DEPARTMENT OF HOMELAND SECURITY**       **Warrant for Arrest of Alien**

File No. ███████████████

Date:   **09/21/2019**

To:   **Any immigration officer authorized pursuant to sections 236 and 287 of the
Immigration and Nationality Act and part 287 of title 8, Code of Federal
Regulations, to serve warrants of arrest for immigration violations**

I have determined that there is probable cause to believe that  ███████-█████████,  A████████
is removable from the United States.  This determination is based upon:

☐ the execution of a charging document to initiate removal proceedings against the subject;

☑ the pendency of ongoing removal proceedings against the subject;

☐ the failure to establish admissibility subsequent to deferred inspection;

☑ biometric confirmation of the subject's identity and a records check of federal
databases that affirmatively indicate, by themselves or in addition to other reliable
information, that the subject either lacks immigration status or notwithstanding such status
is removable under U.S. immigration law; and/or

☑ statements made voluntarily by the subject to an immigration officer and/or other
reliable evidence that affirmatively indicate the subject either lacks immigration status or
notwithstanding such status is removable under U.S. immigration law.

**YOU ARE COMMANDED** to arrest and take into custody for removal proceedings under the
Immigration and Nationality Act, the above-named alien.

_____████████████████_____
(Signature of Authorized Immigration Officer)

_____████████████████_- SDDO_____
(Printed Name and Title of Authorized Immigration Officer)

| Certificate of Service |
| --- |

I hereby certify that the Warrant for Arrest of Alien was served by me at   **Baltimore, MD**
(Location)

on  ████████-█████, A███████  on   **September 21, 2019**  , and the contents of this
(Name of Alien)              (Date of Service)

notice were read to him or her in the _____**SPANISH**_____ language.
(Language)

███████████████████

**DEPORTATION OFFICER**                          **NA**
Name and Signature of Officer              Name or Number of Interpreter (if applicable)

DEPARTMENT OF HOMELAND SECURITY
## NOTICE OF CUSTODY DETERMINATION

Alien's Name: P▇▇-P▇▇  A▇  ▇▇

A-File Number: ▇▇▇▇

Date: 09/21/2019

Event ID ▇▇▇▇

Subject ID ▇▇▇▇

---

Pursuant to the authority contained in section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations, I have determined that, pending a final administrative determination in your case, you will be:

[x] Detained by the Department of Homeland Security.

[ ] Released (check all that apply):

    [ ] Under bond in the amount of $ _____

    [ ] On your own recognizance.

    [ ] Under other conditions. [Additional document(s) will be provided.]

▇▇▇▇

Name and Signature of Authorized Officer

09/21/2019 02:25 PM

Date and Time of Custody Determination

SDDO

Title

ICE ERO Baltimore  Field Office 31 Hopkins Plaza, Suite 630
BALTIMORE, MD US 21201

Office Location/Address

---

You may request a review of this custody determination by an immigration judge.

[X] I acknowledge receipt of this notification, and

    [X] I **do** request an immigration judge review of this custody determination.

    [ ] I **do not** request an immigration judge review of this custody determination.

▇▇▇▇

Signature of Alien

9-21

Date

---

The contents of this notice were read to  See I-831  in the SPANISH language.

(Name of Alien)   (Name of Language)

▇▇▇▇

Name and Signature of Officer

DEPORTATION OFFICER

Title

▇▇▇▇

Name or Number of Interpreter (if applicable)

---

DHS Form I-286 (1/14)

U.S. Department of Homeland Security                    Continuation Page for Form  I-286

| Alien's Name | File Number | Date |
|---|---|---|
| P███████-P█████  , A█████ F██████ | ████████████   Event No: ██████████ | 09/21/2019 |

THE CONTENTS OF THIS NOTICE WERE READ TO
-----------------------------------------
P█████-P██████  , A█████ F█████████

| Signature | Title |
|---|---|
| ███████████████ | DEPORTATION OFFICER |

Form I-831 Continuation Page (Rev. 08/01/07)

000003





000004

\* Non Profit Organization
\*\* Referral Service
\*\*\* Private Attorney

## List of Pro Bono Legal Service Providers

Updated January 2019

http://www.justice.gov/eoir/list-pro-bono-legal-service-providers

### Baltimore, Maryland (page 2 of 2)

**Immigration Legal Services Associated Catholic Charities\***

430 S Broadway
Baltimore, MD 21231
Tel: (667) 600-2941
Fax: (667) 600-4026
ilsinfo@cc-md.org
www.cc-md.org/esperanza

- Pro bono services for victims of crime and most unaccompanied minors
- Family and humanitarian based immigration legal services for nominal fee, with fee waiver available
- Pro bono case placement and mentorship
- Limited detained representation

**HIAS (Silver Spring)\***

1300 Spring St, Suite 500
Silver Spring, MD 20190
Tel: (301) 844-7248
legalhelp@hias.org
www.hias.org

- Children and families from Central America seeking humanitarian relief
- Asylum seekers who are scientists, sholars, artists, or professionals
- Languages: Spanish and Portuguese

**Capital Area Immigrants' Rights (CAIR) Coalition\***

1612 K Street, NW, Ste. 204
Washington, DC 20006
Tel: (202) 331-3320 (Main Line)
Tel: (202) 331-3329 (Detention Line)
Fax: (202) 331-3341
adults@caircoalition.org
children@caircoalition.org
www.caircoalition.org

- Legal services for detained adults & children
- Languages: Spanish, French, and interpretation for other languages as needed
- Detention facility speed dial code 1686

**Catholic Charities Immigration Legal Services of Washington D.C.\***

924 G Street, N.W.
Washington, DC 20001
Tel: (202) 772-4352
www.catholiccharitiesdc.org/ILS
Walk-in Intake: Tuesdays at 9:30am

1618 Monroe Street, N.W.
Washington, DC 20010
Tel: (202) 939-2420
Walk-in Intake: Wednesdays at 8:30am

5859 Allentown Way
Temple Hills, MD 20748
Tel: (202) 772-4352
Consultations by appointment only

12247 Georgia Avenue
Silver Spring, MD 20902
Tel: (301) 942-1790
Walk-In Intake: Thursdays at 8:00am
(Intake closed the last Thursday of the month)

201 E. Diamond Avenue, 3rd Floor
Gaithersburg, MD 20877
Tel: (301) 740-2523
Group Talk and Consultations: Wednesdays at 12:00pm

- First come, first served
- Please bring all your documents
- If you have been arrested, bring related documents

A█████P████████P██████████
A██████████████████

09/21/2019

**Disclaimer:** As required by 8 C.F.R. § 1003.61, the Executive Office for Immigration Review (EOIR), Office of the Director, Office of Legal Access Programs maintains a list of organizations and attorneys qualified under the regulations who provide pro bono or free legal services. The information posted on this list is provided to EOIR by the Providers. EOIR does not endorse any of these organizations or attorneys. Additionally, EOIR does not participate in, nor is it responsible for, the representation decisions or performance of these organizations or attorneys.