# *O.M.G. v. Wolf*

# FILINGS

Case 1:20-cv-00786-JEB Document 69 Filed 06/26/20 Page 1 of 2

# IN THE UNITED STATES DISTRICT COURT
## FOR DISTRICT OF COLUMBIA

| | |
|---|---|
| O.M.G., *et al.*; | Case No. 1:20-cv 00786- JEB |
| *Petitioners*, | |
| v. | **NOTICE OF SUPPLEMENT TO RECORD** |
| Chad WOLF, Acting Secretary of the U.S. Department of Homeland Security, *et al.*, | |
| *Respondents*. | The Honorable James E. Boasberg |

During the June 25, 2020 status conference, the Court requested that Respondents file a copy of the "Interim Report on COVID-19 by Independent Monitor" submitted to Judge Gee on June 25, 2020, in response to her May 22, 2020, order requiring enhanced monitoring of the Family Residential Centers. The report, attached as Exhibit 1, includes a letter to Deane Dougherty from Richard M. Hunt, Assistant Field Office Director, South Texas Family Residential Center ("Dilley"), describing the circumstances relating to the four Dilley employees who have tested positive for COVID – 19.

In addition, attached as Exhibit B, is the declaration of Mellissa B. Harper, Chief of ICE's Juvenile and Family Residential Management Unit, describing the circumstances relating to the 11 residents who have tested positive for COVID-19 at the Karnes County Family Residential Facility ("Karnes"). Lastly, attached as Exhibit 3, is U.S. Public Service Nasal Specimen Collection Fact Sheet, also found at

https://www.cdc.gov/coronavirus/2019-ncov/downloads/OASH-nasal-specimen-collection-fact-sheet.pdf.

RESPECTFULLY SUBMITTED this 26th day of June, 2020.

MICHAEL R. SHERWIN
Acting United States Attorney
District of Columbia
DANIEL VAN HORN
Assistant U.S. Attorney
555 4th St. NW
Washington, DC 20530
Telephone:  (202) 252-2506
Email: Daniel.VanHorn@usdoj.gov

JOSEPH H. HUNT
Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section
ELIANIS PEREZ
Associate Director

s/  *Vanessa Molina*
VANESSA MOLINA
MATTHEW SEAMON
Trial Attorneys
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 532-4413
Facsimile (202) 305-7000
Email: Vanessa.Molina@usdoj.gov
         Matthew.Seamon2@usdoj.gov

*Attorneys for Defendants*

ANDREA SHERIDAN ORDIN (SBN 38235)
STRUMWASSER & WOOCHER LLP
10940 Wilshire Boulevard, Suite 2000
Los Angeles, California 90024
Telephone: (310) 576-1233
Facsimile: (310) 319-0156
E-mail: aordin@strumwooch.com

*Special Master/ Independent Monitor*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY LISETTE FLORES, *et al*., | CASE NO. CV 85-4544-DMG (AGRx) |
| Plaintiffs, | **NOTICE OF FILING OF INTERIM REPORT ON COVID-19 BY INDEPENDENT MONITOR** |
| v. | |
| WILLIAM P. BARR, Attorney General of the United States, *et al*., | |
| Defendants. | |

1

On October 5, 2018, the Court ordered the appointment of Andrea Sheridan Ordin as Special Master/Independent Monitor ("Monitor") and ordered the Monitor to file formal Reports and Recommendations to the Court. [Doc #494.] On May 22, 2020, the Court ordered, among other things:

> "Dr. Paul Wise and the Independent Monitor Andrea Ordin shall provide enhanced monitoring of the FRCs' care of minors, and shall have the ability to (a) request and obtain copies of medical care data and policies; (b) have telephone or videoconference access to persons most knowledgeable at the FRCs with whom they can discuss the baseline of custodial medical care, health care protocols, and COVID-19 prevention practices; (c) consider protocols for identifying minors who have serious medical conditions that may make them more vulnerable to COVID-19; (d) interview minors with serious medical conditions or, as appropriate, their guardians; and (e) make such recommendations for remedial action that they deem appropriate."

In accordance with the Court's Orders, the Monitor submits the attached Interim Report on Covid-19 by Independent Monitor.

DATED:      June 25, 2020               Respectfully submitted,

Andrea Sheridan Ordin
STRUMWASSER & WOOCHER LLP

By ___/s/ Andrea Sheridan Ordin___
       Andrea Sheridan Ordin

*Special Master / Independent Monitor*

2

**CERTIFICATE OF SERVICE**

Case No. CV 85-4544-DMG (AGRx)

I am a citizen of the United States. My business address is 10940 Wilshire Boulevard, Suite 2000, Los Angeles, California 90024. I am over the age of 18 years, and not a party to the within action.

I hereby certify that on June 25, 2020, I electronically filed the following documents with the Clerk of the Court for the United States District Court, Central District of California by using the CM/ECF system:

**NOTICE OF FILING OF INTERIM REPORT ON COVID-19 BY INDEPENDENT MONITOR**

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the United States the foregoing is true and correct. Executed on June 25, 2020, at Los Angeles, California.

_____*/s/ Jeff Thomson*_____

Jeff Thomson

In the United States District Court

Central District of California – Western Division


JENNY LISETTE FLORES, *et al.*, Plaintiffs,

v.

WILLIAM P. BARR, *et al.*, Defendants.


Case No. CV 85-4544-DMG (AGRx)

Hon. Dolly M. Gee, United States District Judge


**Interim Report on Covid-19**

**by Independent Monitor**


Andrea Sheridan Ordin
Special Master/Independent Monitor
Strumwasser & Woocher LLP
1094 Wilshire Boulevard, Suite 2000
Los Angeles, California 90024
(310) 576-1233

## INTRODUCTION

On May 22, 2020, this Court ordered (Doc. 799), among other things, that:

> Dr. Paul Wise and the Independent Monitor Andrea Ordin shall provide enhanced monitoring of the FRCs' care of minors, and shall have the ability to (a) request and obtain copies of medical care data and policies; (b) have telephone or videoconference access to persons most knowledgeable at the FRCs with whom they can discuss the baseline of custodial medical care, health care protocols, and COVID-19 prevention practices; (c) consider protocols for identifying minors who have serious medical conditions that may make them more vulnerable to COVID-19; (d) interview minors with serious medical conditions or, as appropriate, their guardians; and (e) make such recommendations for remedial action that they deem appropriate.

## REVIEW OF MONITORING

After review of the Court's Order and questions raised, the Independent Monitor, working with Dr. Wise, proceeded to determine the baseline of custodial medical care, health care protocols, and COVID-19 prevention practices. Dr. Wise had prepared a note on May 21, 2020 reviewing the challenge ICE faces in protecting detained minors and their families from Covid-19. The CDC's "Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities" begins with an articulation of why these kinds of facilities are at higher risk.  In summary:

(1)    ICE facilities convey an inherently greater risk of COVID-19 than most settings after general release;

(2)    Even good compliance with CDC guidance will not likely be sufficient to fully protect minors and their families from Covid-19 while in ICE detention;

    (3)    The risk of COVID-19 in ICE facilities will likely reflect the prevalence of COVID-19 in surrounding communities, as facility staff will likely be a primary mechanism of virus introduction. Of special concern is the spread of COVID-19 from one ICE facility to another via the interchange of ICE staff, contracted workers, or leadership between facilities;

    (4)    The implementation of protective measures, including screening, the use of masks, social distancing, and isolation and/or cohorting of detainees should be assessed;

    (5)    The criteria and procedures utilized to assess elevated medical risk for Covid-19 among minors require urgent review.

The Monitor then examined the Report filed by ICE Juvenile Coordinator Deane Dougherty on June 10, 2020 (Doc. 813), which, pursuant to this Court's April 24, 2020 Order (Doc. 784), focused on ICE's response to the Covid-19 pandemic.

Subsequently, the Independent Monitor received a request for enhanced monitoring and investigation into medical care at ICE Family Residential Centers (FRCs). This request, made by Counsel from Proyecto Dilley, RAICES, and ALDEA, included declarations from Class Members and medical professionals alleging failures in ICE's health care system. Declarants asserted that ICE had not implemented adequate measures to protect detainees from Covid-19, especially with regard to minors at elevated risk due to pre-existing medical conditions.

On June 17, 2020, Plaintiffs filed a Response to the ICE Juvenile Coordinator Report (Doc. 824). A hearing was scheduled for June 19, 2020 and later postponed to June 26, 2020 at 11:00 a.m. Plaintiffs' response raised further concerns over conditions at FRCs in light of the Covid-19 crisis.

The Independent Monitor and Dr. Wise's continued monitoring efforts are set forth below in a note on June 25, 2020, reviewing the central medical considerations regarding the risk of infection by the SARS-CoV-2, the virus that causes the disease, Covid-19, among minors being held in ICE facilities:

### Current Assessment

The assessment of the preventive and medical provisions addressing the threat of Covid-19 in two ICE facilities was conducted during the period May 29, 2020 through June 24, 2020. No site visits were possible due to Covid-19 travel restrictions and facility precautions. Elements of the assessment that was conducted included:

(1) Discussions with senior officials of the ICE Health Services Corps;

(2) Discussions with ICE supervisory officials for the South Texas Family Residential Center (Dilley) and the Karnes County Residential Center (Karnes);

(3) Discussions with Health Service Corps officials and pediatricians responsible for medical care in the Dilley and Karnes facilities;

(4) Discussions with 9 detained women with children, including interviews with 4 of the children;

(5) Review of video tapes and still photographs of the common living areas, including play areas and cafeterias, and temperature screening of staff upon entry into the facilities.

These discussions and the review of the provided materials lead to several findings:

(1) **Medical system for children**. While there are isolated complaints that merit further investigation, the descriptions of the medical system for children in these two facilities seems adequate. Medical personnel are present in the facility at all

4

times and advanced practice clinicians (physician assistants or nurse practitioners) during daytime hours. Pediatricians hold clinical sessions several days each week and are available on call. Acute or complicated patient needs are addressed through referral to the children's hospital in San Antonio or a local health facility. The quality of these services, however, could not be addressed given the time and procedural constraints of this assessment, and will be addressed in a future report.

(2)   **Covid-19 Provisions**. There are several components of the CDC Covid-19 recommendations that are of special concern.

   (a)   **Screening of staff upon entry to the facilities**. Screening was reported to include a review of symptoms and a temperature check. Still photographs of these screenings were provided and appeared appropriate.

   (b)   **Assessment of elevated medical risk.** Discussions with the medical staff and pediatricians serving the facilities suggested that significant medical risk would be identified if such conditions existed in detained children. The assessment of elevated risk is based on the interpretation of CDC guidance and the clinical judgment of pediatric staff. Provided data suggested that when significant chronic illness was identified, minors and family were released. The medical staff reported that any condition that would imply elevated risk are reported to ICE officials.

   (c)   **Cohorting of new entrants**. Symptom and temperature screening was also reportedly conducted on all new detainees upon entry to the facility. In addition, all newly entered families are held in a separate area of the facility for 14 days and monitored for the appearance of any worrisome symptoms.

   (d)   **Masking**. The stated policy is for all staff and detainees to wear a mask at all times (except while eating). However, the provided video for Dilley revealed only partial compliance with masking requirements among

5

staff. Interviews with the detained women confirmed that masking among staff is only intermittently enforced.

(e) **Distancing**. The provided videos showed appropriate distancing among staff and detainees. However, all the detained women reported that distancing was not practiced in the common dining room. Six to 8 persons of different families were seated at each table without distancing during meals.

(f) **Covid-19 cases in surrounding communities.** As noted in the prior note, the risk to these facilities is largely dependent upon the prevalence of Covid-19 in surrounding communities, as facility staff will likely be a primary mechanism of virus introduction. Indeed, the Independent Monitor has learned of four confirmed cases of Covid-19 at the FRC at Dilley: two STFRC contract staff, who had contact with residents, and two deportation officers, who had limited contact with staff. The recent trends in this regard are worrisome (data from Johns Hopkins Coronavirus Resource Center, available at URL: https://coronavirus.jhu.edu/us-map)

**Frio County (Dilley) Confirmed Covid-19 Cases (as of 6/23)**



6

**Karnes County Confirmed Covid-19 Cases (as of 6/23)**



In sum, while the general medical system at the facilities appears to be appropriate for the care of children in custody, the risk of Covid-19 to minors and their families in ICE custody continues to grow. The lack of consistent compliance with recommended masking among some staff and distancing requirements in common eating areas elevate the risk that the virus once introduced into the facility may not be well contained. This finding is of particular concern given the recent increase in Covid-19 cases in the surrounding communities.

**SUBSEQUENT DEVELOPMENTS**

At 9 a.m. on Thursday, June 25, 2020, the Independent Monitor learned of multiple Covid-19 infections at the Karnes facility from Juvenile Coordinator Deane Dougherty. "Saturation" testing of all Karnes residents commenced on June 22, and medical staff notified ERO San Antonio that 11 residents tested positive for Covid-19. All detainees are currently stable, asymptomatic, and remain housed in medical isolation rooms, where GEO Medical staff continues to monitor for any symptoms.

Also on Thursday, June 25, the Independent Monitor received confirmation of the four non-resident Covid-19 cases at Dilley. (See Letter to

7

Deane Dougherty from Richard Hunt, dated June 25, 2020, attached as Exhibit A.) However, because testing at Dilley did not start until June 23, results will not be available until Friday, June 26 or Saturday, June 27.

**CONCLUSION**

Because of the news received today regarding the multiple cases of Covid-19, this Interim Report focuses on the reports, conditions, and procedures related to preventing Covid-19 infections in the FRCs. The Independent Monitor proposes to file a supplemental Interim Report on additional topics of enhanced monitoring, including quality of medical care, and issues of hygiene and nutrition.

Case 2:18-cv-04944-DMC-AGR Document 32-1 Filed 06/26/20 Page 15 of 52 PageID #: 3885

# **EXHIBIT A**

# Letter to Deane Dougherty from Richard Hunt, dated June 25, 2020



Enforcement and Removal Operations
**U.S. Department of Homeland Security**
South Texas Family Residential Center
300 El Rancho Way
Dilley, Texas 78017

## U.S. Immigration and Customs Enforcement

June 25, 2020

MEMORANDUM FOR:    Deane Dougherty
                              Deputy Assistant Director
                              Alternatives to Detention Division

FROM:                    Richard M. Hunt
                                Assistant Field Office Director
                                South Texas Family Residential Center

SUBJECT:             Summary of Positive COVID employees

At the request of the court appointed Special Monitor over the Flores Settlement Agreement, the below summary of employees who have tested positive for COVID 19 at the South Texas Family Residential Center in Dilley, Texas. To date, zero residents have tested positive or displayed symptoms related to the COVID 19 virus.

Core Civic employee One
On June 15, 2020, Core Civic Resident Supervisor (RS) at the South Texas Family Residential Center (STFRC), reported receiving a positive result for COVID19 testing. The COVID19 test was conducted on June 12, 2020, after the employee was made aware that they had been in contact with a COVID positive individual outside of work on June 11, 2020. Upon notification of the positive result, Core Civic conducted in depth contract tracing through employee interviews and extensive review of closed-circuit video footage of the employee's movement throughout the residential center. Contact tracing revealed; The employee's last day at the facility was June 9, 2020. The employee's last contact with residents at the facility was June 8, 2020. The five residents identified as having contact with the RS were identified and housed in the Blue Butterfly neighborhood for medical observation due to the possibility of exposure. The residents were not tested at that time, at the discretion of IHSC, due to the CDC suggested 48-hour timeline for contract tracing of an asymptomatic individual. Any staff members identified through contact tracing, were notified and placed on self-quarantine for 14 days or have a test conducted, with negative results. This test must be completed after a minimum of 5 days in quarantine. No residents or employees have tested positive as a result of exposure in this case. The RS role is to attend to the needs of the residents at the STFRC. The RS assists residents in their dorms, dayrooms and recreation areas, as well as ensures safety and supervision throughout the residential center.

Case 2:85-cv-04544-DMG-AGR Document 891-1 Filed 06/26/20 Page 17 of 52 Page ID #:38863

Core Civic employee Two

On June 20, 2020, Core Civic Resident Supervisor (RS) at STFRC, reported receiving a positive result for COVID19 testing. The COVID19 test was conducted on June 19, 2020, after the employee began to feel ill. Upon notification of the positive result, Core Civic conducted in depth contract tracing through employee interviews and extensive review of closed-circuit video footage of the employee's movement throughout the residential center. Contact tracing revealed; The employee's last day at the facility was June 19, 2020. The employee did not have close contact with any residents during the five days prior to the testing. The reason for no contact is due to the neighborhood in which the RS is assigned is currently under renovation and there are zero residents housed there. Any staff members identified through contact tracing, were notified and placed on self-quarantine for 14 days or have a test conducted, with negative results. This test must be completed after a minimum of 5 days in quarantine. No residents or employees have tested positive as a result of exposure in this case. The RS role is to attend to the needs of the residents at the STFRC. The RS assists residents in their dorms, dayrooms and recreation areas, as well as ensures safety and supervision throughout the residential center.

ICE employee One

On June 20, 2020, an Immigration and Customs Enforcement (ICE) officer at STFRC reported receiving a positive result for COVID19 testing. The COVID19 test was conducted on June 13, 2020, after the employee began to feel ill. Upon notification of the positive result, ICE conducted in depth contract tracing through employee interviews and extensive review of closed-circuit video footage of the employee's movement throughout the residential center. Contact tracing revealed; The employee's last day at the facility was June 10, 2020. The employee did not have close contact with any residents during the five days prior to the testing. It is common for this officer to not have contact with residents, as he works in the front office area of STFRC and does not frequently engage with residents. Any staff members identified through contact tracing, were notified and placed on self-quarantine for 14 days or have a test conducted, with negative results. This test must be completed after a minimum of 5 days in quarantine. No residents or employees have tested positive as a result of exposure in this case. The officers role at STFRC, is to communicate via telephone with residents sponsors to establish a travel plan for release and to prepare the release manifest.

ICE employee Two

On June 23, 2020, an Immigration and Customs Enforcement (ICE) officer at STFRC reported receiving a positive result for COVID19 testing. The COVID19 test was conducted on June 22, 2020, after the employee began to feel ill. Upon notification of the positive result, ICE conducted in depth contract tracing through employee interviews and extensive review of closed-circuit video footage of the employee's movement throughout the residential center. Contact tracing revealed; The employee's last day at the facility was June 19, 2020. The employee did not have close contact with any residents during the five days prior to the testing. It is common for this officer to not have contact with residents, as he works in the compliance / standards area of STFRC and does not frequently engage with residents. Any staff members identified through contact tracing, were notified and placed on self-quarantine for 14 days or have a test conducted, with negative results. This test must be completed after a minimum of 5 days in quarantine. No residents or employees have tested positive as a result of exposure in this case. The officer's role at STFRC, is to communicate via telephone with residents' sponsors to establish a travel plan for release and to prepare the release manifest.

SUBJECT:  Summary of Positive COVID employees
Page 2

Case 1:20-cv-00786-JEB Document 69-2 Filed 06/26/20 Page 1 of 4

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| O.M.G., *et. al.*, | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Case No.: 1:20-cv-00786-JEB |
| | ) | |
| CHAD WOLF, Acting Secretary of the U.S. | ) | |
| Department of Homeland Security, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

## SUPPLEMENTAL DECLARATION OF MELLISSA B. HARPER

I, Mellissa B. Harper, hereby make the following declaration with respect to the above-captioned matter:

1. I am the Chief of the Juvenile and Family Residential Management Unit (JFRMU),

    Enforcement and Removal Operations (ERO), U.S. Immigration and Customs

    Enforcement (ICE), Department of Homeland Security (DHS). JFRMU addresses issues

    confronting unaccompanied alien children (UAC) and alien family groups who come into

    ERO custody, including those detained at a Family Residential Center (FRC). JFRMU

    develops policies sensitive to the various vulnerabilities and needs of these populations.

    JFRMU trains, monitors, and advises Field Office Juvenile Coordinators (FOJCs). These

    officers serve as subject matter experts on juvenile and family matters in their respective

    field offices. As JFRMU advises FOJCs, they in turn, advise their fellow officers who

    encounter minors during enforcement activities. JFRMU oversees and monitors the

    implementation of nationwide court orders that impact this population, including those in

    the present case.

2.  This declaration is to supplement my prior declarations, dated April 6, April 13, April 22, April 27, May 15, May 20, and June 19, submitted in the instant case.

3.  The statements contained in this declaration are based on my personal knowledge and information provided to me in my official capacity.

4.  As of June 25, 2020, all three FRCs have instituted saturation testing, which means that the entire population has been tested. The Berks Family Residential Center (Berks) conducted testing on June 22, 2020, Karnes Family Residential Center (Karnes) conducted testing on June 22, 2020 and the South Texas Family Residential Center at Dilley (Dilley) conducted testing on June 23, 2020. Testing revealed none of the residents that have been through the quarantine period and released into the general population are positive.

5.  There are no positive cases at Berks.

6.  On June 24, 2020, the GEO Group Medical staff at Karnes notified ERO San Antonio that 11 residents tested positive for COVID-19. All residents are currently stable and asymptomatic. GEO Medical staff continues to monitor all residents for any COVID-19 symptoms. GEO Group Medical staff places all new intakes on a 14-day cohort in one-half of the facility which is self-sufficient for isolation and quarantine. All 11 individuals are currently in isolation.

    a.  One family unit was apprehended on June 9, 2020, after crossing the border illegally near Del Rio, Texas. They were processed as expedited removal cases and transferred to Karnes on June 11, 2020. They were placed in quarantine, as is current practice. They were tested on June 22, 2020, as part of the saturation testing. This family unit consists of an adult female, an adult male, and three

minors. Only the adult female tested positive for the virus. The rest of the family was negative. The adult female is being housed with a minor daughter and a minor son, and the negative adult male and one minor son are housed together. They are all in quarantine and being monitored.

b.   The second family unit applied for admission on June 8, 2020, at a port of entry in Nogales, Arizona, and was placed in expedited removal proceedings and transferred to Karnes on June 15, 2020.  The family unit was placed in quarantine, as is current practice. They were tested on June 22, 2020, as part of the saturation testing. This family unit consists of an adult male, an adult female, and four minor children. All of them tested positive for the virus and remain together in medial isolation rooms.

c.   The third family unit applied for admission on June 8, 2020, at a port of entry in Nogales, Arizona and was placed in expedited removal proceedings and transferred to Karnes on June 15, 2020. The family unit was placed in quarantine as is current practice. They were tested on June 22, 2020, as part of the saturation testing. This family unit consists of an adult female, an adult male, and two minor children. The adult female and minor children tested positive for the virus and were placed in medical isolation rooms. The adult male was negative and remains in quarantine.

d.   The fourth family unit entered the U.S. illegally in June 16, 2020, near San Luis, Arizona, and was placed in expedited removal proceedings. The family unit was transferred to Karnes on June 19, 2020, and placed in quarantine, as is current practice. On June 22, 2020, they were tested as part of the saturation testing. This

family unit consists of an adult male, an adult female, and a minor child. Only the adult female tested positive for the virus. She was placed in medical isolation while the adult male and son remain in quarantine.

7. In addition to testing residents, Karnes is also testing its staff. Thus far 111 staff at Karnes have been tested. All were negative, although there are still test results outstanding.

8. This declaration is based upon my personal and professional knowledge, information obtained from other individuals employed by ICE, and information obtained from various records and systems maintained by DHS. I provide this declaration based on the best of my knowledge, information, belief, and reasonable inquiry for the above-captioned case.

Signed on this 26th day of June 2020.

Mellissa B. Harper
Unit Chief, Juvenile and Family Residential Management Unit
ICE Enforcement and Removal Operations


**OFFICE OF THE ASSISTANT SECRETARY FOR HEALTH**

**SARS-CoV-2 (COVID-19) Fact Sheet**

## Nasal (Anterior Nasal) Specimen Collection for SARS-CoV-2 Diagnostic Testing

Nasal (Anterior Nasal) Specimen
- Nasal sampling is less invasive and results in less patient discomfort than sampling from other upper respiratory anatomical sites.
- A self-administered nasal swab is similar to a nasopharyngeal swab in detecting coronavirus.
- Collection of nasal swab specimens is less technically complex, so can reduce the risk of the spread of infection to healthcare providers, by (1) reducing the duration of the procedure, and (2) allowing the patient to perform self-collection while under supervision.
- It also lessens PPE utilization, given that the patient can perform self-collection under supervision (versus the health care provider performing the collection).
- The procedure for nasal (anterior nasal) sampling is as follows:
  - Using a flocked or spun polyester swab, insert the swab at least 1 cm (0.5 inch) inside the nostril (naris) and firmly sample the nasal membrane by rotating the swab and leaving in place for 10 to 15 seconds.
  - Sample both nostrils with same swab.

Protective Practices for Healthcare Providers Performing Nasal (Anterior Nares) Specimen Collection
- For healthcare providers collecting nasal (anterior nares) specimens, or within 6 feet of patients suspected to be infected with SARS-CoV-2:
  - Maintain proper infection control and use recommended personal protective equipment (PPE), which includes an N95 or higher-level respirator (or facemask if a respirator is not available), eye protection, gloves, and a gown, when collecting specimens.
- For healthcare providers who are observing patient self-collection of nasal (anterior nares) samples, so are therefore handling specimens, but are not directly involved in collection and not working within 6 feet of the patient:
  - Follow Standard Precautions
  - Gloves are recommended. Note that healthcare personnel are recommended to wear a form of source control (facemask or cloth face covering) at all times while in the healthcare facility.
  - PPE use can be minimized through patient self-collection *while the healthcare provider maintains at least 6 feet of separation.*

For Additional Information

FDA FAQs on Diagnostic Testing for SARS-CoV-2 - https://www.fda.gov/medical-devices/emergency-situations-medical-devices/faqs-diagnostic-testing-sars-cov-2

CDC Interim Guidelines for Collecting, Handling, and Testing Clinical Specimens from Persons for Coronavirus Disease 2019 (COVID-19), updated as of April 29, 2020 - https://www.cdc.gov/coronavirus/2019-ncov/lab/guidelines-clinical-specimens.html

CDC Laboratory Biosafety and COVID-19: Questions and Answers - https://www.cdc.gov/coronavirus/2019-ncov/lab/biosafety-faqs.html

# IN THE UNITED STATES DISTRICT COURT
## FOR DISTRICT OF COLUMBIA

| | |
|---|---|
| O.M.G., *et al.*; | Case No. 1:20-cv 00786-JEB |
| *Petitioners*, | |
| v. | **NOTICE OF COVID-19 POSITIVE CASE** |
| Chad WOLF, Acting Secretary of the U.S. Department of Homeland Security, *et al.*, | |
| *Respondents*. | The Honorable James E. Boasberg |

Pursuant to the June 25, 2020 minute order, Respondents hereby notify the Court that on June 26, 2020, the Karnes County Family Residential Center ("Karnes FRC") received notification that a GEO employee (contractor) assigned to the transportation unit tested positive for COVID-19. The employee is asymptomatic and under self-quarantine. Staff at Karnes FRC is conducting a deep cleaning in compliance with the Centers for Disease Control ("CDC") requirements. Respondents will appraise the Court of any further developments.

//

//

//

RESPECTFULLY SUBMITTED this 28th day of June 2020.

MICHAEL R. SHERWIN
Acting United States Attorney
District of Columbia
DANIEL VAN HORN
Assistant U.S. Attorney
555 4th St. NW
Washington, DC 20530
Telephone:  (202) 252-2506
Email: Daniel.VanHorn@usdoj.gov

JOSEPH H. HUNT
Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section
ELIANIS PEREZ
Associate Director


s/ *Vanessa Molina*
VANESSA MOLINA
MATTHEW SEAMON
Trial Attorneys
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 532-4413
Facsimile (202) 305-7000
Email: Vanessa.Molina@usdoj.gov
        Matthew.Seamon2@usdoj.gov

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
## FOR DISTRICT OF COLUMBIA

| | |
|---|---|
| O.M.G., *et al.*; | Case No. 1:20-cv 00786-JEB |
| *Petitioners*, | |
| v. | **NOTICE OF COVID-19 POSITIVE CASES** |
| Chad WOLF, Acting Secretary of the U.S. Department of Homeland Security, *et al.*, | |
| *Respondents*. | The Honorable James E. Boasberg |

Pursuant to the June 25, 2020 minute order, Respondents hereby notify the Court that several additional employees in the Family Residential Centers have tested positive for COVID-19. On June 19, 2020, Immigration and Customs Enforcement (ICE) informed the Department of Justice (DOJ) of these new positive cases. The declaration of Mellissa B. Harper, with details about these new cases, testing, and risk mitigation steps in process, is attached hereto as Exhibit 1.

## I. Karnes County Family Residential Center ("Karnes FRC")

In addition to the transportation officer who tested positive at Karnes FRC, ECF No. 70, three additional employees, a nurse, an intake officer, and a compliance standard officer, have also tested positive. These individuals are in quarantine. *See* Ex. 1 at ¶¶ 5-6.

## II. South Texas Family Residential Center ("Dilley FRC")

There are two more confirmed cases among employees, a compliance officer and a nurse. Ex. 1 at ¶¶ 7-8. Both employees are symptomatic and in quarantine. *Id.*

### III. Berks County Family Residential Center ("Berks FRC")

Currently, there are no reported cases of staff or residents at the Berks FRC.  Ex. 1 ¶ 9.

Respondents will appraise the Court of any further developments as it receives them from ICE.

RESPECTFULLY SUBMITTED this 29th day of June 2020.

> MICHAEL R. SHERWIN
> Acting United States Attorney
> District of Columbia
> DANIEL VAN HORN
> Assistant U.S. Attorney
> 555 4th St. NW
> Washington, DC 20530
> Telephone:  (202) 252-2506
> Email: Daniel.VanHorn@usdoj.gov
>
> JOSEPH H. HUNT
> Assistant Attorney General
> Civil Division
> WILLIAM C. PEACHEY
> Director
> Office of Immigration Litigation
> District Court Section
> ELIANIS PEREZ
> Associate Director
>
>
> s/ *Vanessa Molina*
> VANESSA MOLINA
> Trial Attorney
> P.O. Box 868, Ben Franklin Station
> Washington, DC 20044
> Telephone: (202) 532-4413
> Facsimile (202) 305-7000
> Email: Vanessa.Molina@usdoj.gov
>          Matthew.Seamon2@usdoj.gov
>
> *Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

O.M.G., *et. al*.,                    )
                                      )
        Petitioners,            )
                                        )
v.                                     )    Case No.: 1:20-cv-00786-JEB
                                        )
CHAD WOLF, Acting Secretary of the U.S. )
Department of Homeland Security, *et al*., )
                                        )
        Respondents.         )
                                        )

## SUPPLEMENTAL DECLARATION OF MELLISSA B. HARPER

I, Mellissa B. Harper, hereby make the following declaration with respect to the above-captioned matter:

1. I am the Chief of the Juvenile and Family Residential Management Unit (JFRMU), Enforcement and Removal Operations (ERO), U.S. Immigration and Customs Enforcement (ICE), Department of Homeland Security (DHS). JFRMU addresses issues confronting unaccompanied alien children (UAC) and alien family groups who come into ERO custody, including those detained at a Family Residential Center (FRC). JFRMU develops policies sensitive to the various vulnerabilities and needs of these populations. JFRMU trains, monitors, and advises Field Office Juvenile Coordinators (FOJCs). These officers serve as subject matter experts on juvenile and family matters in their respective field offices. As JFRMU advises FOJCs, they in turn, advise their fellow officers who encounter minors during enforcement activities. JFRMU oversees and monitors the implementation of nationwide court orders that impact this population, including those in the present case.

2. This declaration is to supplement my prior declarations, dated April 6, April 13, April 22, April 27, May 15, May 20, June 19, and June 26 submitted in the instant case.

3. The statements contained in this declaration are based on my personal knowledge and information provided to me in my official capacity.

4. As previously reported as of June 25, 2020, all three FRCs have instituted saturation testing. ICE has received further results as detailed below. In addition, other cases have emerged amongst the staff at two of the three facilities, the Karnes Family Residential Center (Karnes) and the South Texas Family Residential Center at Dilley (Dilley).

5. With respect to the staff testing conducted at Karnes, 342 staff have been tested thus far. Three GEO employees have tested positive, although there are still test results outstanding. As previously reported to the Court, one GEO transportation officer was tested on June 25, 2020 and positive results were received on June 26, 2020. She is asymptomatic and was sent home on a 14-day self-quarantine on June 26. The transportation officer had been in contact with 15 GEO employees who tested negative, and all are asymptomatic. All are self-observing for any symptoms for the next 14 days and are required to wear a mask and have their temperature taken twice daily while working. The transportation employee had no contact with any residents. The other two GEO employees who tested positive were a nurse and an intake officer who were tested on June 23, 2020. Their results were received on June 29, 2020. They were last present at work on June 28, 2020. Contact tracing and video review of their activities is currently being compiled.

6. Separate from the saturation testing, a JFRMU Compliance Standards Officer (CSO) at Karnes was exposed to another person with COVID-19.  Although asymptomatic, he was

tested on June 24, 2020, with positive results.  He has not been present at an ICE facility

since June 22, 2020.  He is currently in a 14-day self-quarantine.  The CSO's

responsibility at an FRC is to ensure ICE's detention standards are met; therefore, while

he was on site at the facility, he wore a mask and maintained social distancing at all

times.

7.  A CSO at Dilley, tested positive for COVID-19 on June 22, 2020.  On June 18, 2020, he

began experiencing symptoms of COVID-19.  He was tested on June 22, 2020 and

received his positive test results on June 23, 2020.  He has been in self-quarantine since

that time.  The last day that the CSO was at the facility was June 17, 2020.  Video review

of his activities was conducted and confirmed he wore a mask at all times while inside

the facility.

8.  A Registered Nurse at Dilley excused herself from work after a family member was

placed in quarantine for COVID-19. The nurse became symptomatic on June 23, 2020

and was tested on June 24, 2020. She received a positive test result on June 24, 2020, and

she notified the facility. Her last day onsite was June 19, 2020 on a 4:00 p.m. to 2:30 a.m.

shift.

9.  Currently, there are no reported positive COVID-19 cases of staff or residents at Berks

County Family Residential Center.

10. This declaration is based upon my personal and professional knowledge, information

obtained from other individuals employed by ICE, and information obtained from various

records and systems maintained by DHS. I provide this declaration based on the best of

my knowledge, information, belief, and reasonable inquiry for the above-captioned case.

Signed on this 29th day of June 2020.

_____

Mellissa B. Harper
Unit Chief, Juvenile and Family Residential Management Unit
ICE Enforcement and Removal Operations

4

Case 1:20-cv-00786-JEB   Document 75   Filed 07/01/20   Page 1 of 8

# IN THE UNITED STATES DISTRICT COURT
## FOR DISTRICT OF COLUMBIA

| | |
|---|---|
| O.M.G., *et al.*; | Case No. 1:20-cv-00786-JEB |
| *Petitioners*, | |
| v. | **NOTICE OF COVID-19 POSITIVE CASES** |
| Chad WOLF, Acting Secretary of the U.S. Department of Homeland Security, *et al.*, | |
| *Respondents*. | The Honorable James E. Boasberg |

Pursuant to the June 25, 2020 minute order, Respondents hereby notify the Court that several additional employees in the Family Residential Centers ("FRCs") have tested positive for COVID-19. On June 30, 2020, Immigration and Customs Enforcement ("ICE") informed the Department of Justice ("DOJ") of these new positive cases, provided further details about the circumstances described in June 29, 2020 notice, ECF No.73, and an updated census to include releases and intakes. The declaration of Mellissa B. Harper, with details about these new cases, testing, the risk mitigation steps in process, and the census, is attached hereto as Exhibit 1.

## I. Karnes County Family Residential Center ("Karnes FRC")

In addition to the four employees who have previously tested positive, two additional employee, an intake officer and a nurse, tested positive on June 29, 2020. *See* Ex. 1 at ¶ 8(b)-(c). Both individuals were tested as part of the saturation testing at Karnes. *Id.*

Between June 25, 2020 and June 30, 2020, four individuals, two adults and two minors, were released from Karnes. *Id.* ¶ 6(a). During the same period there were 38 new intakes, 22 adults and 16 minors. *Id.* ¶ 5(a). All 38 new intakes were tested for COVID-19, and are pending

results. Each family unit was assigned to their own room in a cohort section of the facility, and
will continue to reside in their individual room. *Id*. ¶ 5(a)(i).

As of June 30, 2020, there were 107 individuals, comprised of 60 adults and 47 minors.
*Id.* at ¶ 4(a).

## II. South Texas Family Residential Center ("Dilley FRC")

There are two more confirmed cases among employees, a resident counselor and
resident supervisor. Ex. 1 at ¶¶ 10-11.

Between June 25, 2020 and June 30, 2020, there were a total of three new intakes, two
adults and one minor, at Dilley. *Id*. at ¶ 5(b). They are housed in separate dorms without contact
with other families. The family unit is pending results for COVID-19, and there is plan to treat
should results return positive. *Id.* at ¶ 5(b)(i).

As of June 30, 2020, there were 157 individuals, comprised of 70 adults and 87 minors.
*Id.* at ¶ 4(b).

## III. Berks County Family Residential Center ("Berks FRC")

Currently, there are no reported cases of staff or residents at the Berks FRC.  Ex. 1 ¶
12.  As of June 30, 2020, there were 13 individuals, comprised of 8 adults and 5 minors. *Id.* at
¶ 4(c). Between June 25, 2020 and June 30, 2020, there were no new intakes at the Berks. *Id.*
at ¶ 5(c).

//

Respondents will appraise the Court of any further developments as it receives them from ICE.

RESPECTFULLY SUBMITTED this 1st day of July 2020.

MICHAEL R. SHERWIN
Acting United States Attorney
District of Columbia
DANIEL VAN HORN
Assistant U.S. Attorney
555 4th St. NW
Washington, DC 20530
Telephone:  (202) 252-2506
Email: Daniel.VanHorn@usdoj.gov

JOSEPH H. HUNT
Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section
ELIANIS PEREZ
Assistant Director


s/  *Vanessa Molina*
VANESSA MOLINA
Trial Attorney
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 532-4413
Facsimile (202) 305-7000
Email: Vanessa.Molina@usdoj.gov


*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| O.M.G., *et. al.*, | ) |
| | ) |
|      Petitioners, | ) |
| | ) |
| v. | )   Case No.: 1:20-cv-00786-JEB |
| | ) |
| CHAD WOLF, Acting Secretary of the U.S. | ) |
| Department of Homeland Security, *et al.*, | ) |
| | ) |
|      Respondents. | ) |
| | ) |

## SUPPLEMENTAL DECLARATION OF MELLISSA B. HARPER

I, Mellissa B. Harper, hereby make the following declaration with respect to the above-captioned matter:

1. I am the Chief of the Juvenile and Family Residential Management Unit (JFRMU), Enforcement and Removal Operations (ERO), U.S. Immigration and Customs Enforcement (ICE), Department of Homeland Security (DHS).  JFRMU addresses issues confronting unaccompanied alien children (UAC) and alien family groups who come into ERO custody, including those detained at a Family Residential Center (FRC). JFRMU develops policies sensitive to the various vulnerabilities and needs of these populations. JFRMU trains, monitors, and advises Field Office Juvenile Coordinators (FOJCs). These officers serve as subject matter experts on juvenile and family matters in their respective field offices. As JFRMU advises FOJCs, they in turn, advise their fellow officers who encounter minors during enforcement activities. JFRMU oversees and monitors the implementation of nationwide court orders that impact this population, including those in the present case.

2. This declaration is to supplement my prior declarations, dated April 6, April 13, April 22, April 27, May 15, May 20, June 19, June 26, and June 29 submitted in the instant case.

3. The statements contained in this declaration are based on my personal knowledge and information provided to me in my official capacity.

4. As of June 30, 2020, the number of individuals housed at the FRCs are as follows:

    a. At Karnes, there were a total of 107 individuals, comprised of 60 adults and 47 juveniles.

    b. At Dilley, there were a total of 157 individuals, comprised of 70 adults and 87 juveniles.

    c. At Berks, there were a total of 13 individuals, comprised of 8 adults and 5 juveniles.

5. From June 25, 2020, through June 30, 2020, there were 41 total new intakes into ICE FRCs. The breakdown of these new intakes are as follows:

    a. At Karnes, there were a total of 38 intakes during this time period, comprised of 22 adults and 16 juveniles.

        i. All 38 new intakes were tested for COVID-19 and are pending results. Each of these family units are cohorted in their own room in one of two cohort sections of the facility, pending results. Each family unit will continue to remain in their own room as the current population at the facility remains well below capacity.

    b. At Dilley, there were a total of 3 intakes during this time period, comprised of 2 adults and 1 juvenile.

i. All 3 new intakes have been tested for COVID-19 and are pending results. They are housed in separate dorms for the 14-day observation period and do not have contact with other families to prevent potential cross-contamination. Should the test results return positive, the family unit will be moved to the medical housing unit and will be housed in a negative pressure room and treated accordingly. Should the results return negative, the family will complete the 14-day observation period prior to being transferred to general population.

    c. At Berks, there were no intakes during this time period.

6. From June 25, 2020, through June 30, 2020, ICE released[1] 6 total individuals from its FRCs. The breakdown of these releases are as follows:

    a. At Karnes, there were a total of 4 individuals released from custody during this time period, comprised of 2 adults and 2 juveniles.

    b. At Dilley, there were a total of 2 individuals released from custody during this time period, comprised of 1 adult and 1 juvenile.

    c. At Berks, there were no individuals released from custody during this time period.

7. As previously reported as of June 25, 2020, all three FRCs have instituted saturation testing of the residents housed there at the time of testing. In addition, other positive COVID-19 cases have emerged amongst the staff at two of the facilities, the Karnes Family Residential Center (Karnes) and the South Texas Family Residential Center at Dilley (STFRC).

---

[1] Released into the U.S. interior. The source for this is data pulled from ENFORCE on 6/30/2020.

3

8.  The last update notified the court that three GEO employees—at transportation

    officer, a nurse and an intake officer—tested positive for COVID-19. Additional

    details with respect to those individuals are now available.

    a.  On June 26, 2020, GEO Transportation Officer (TO) at the Karnes County

        Family Residential Center (KCFRC), reported receiving a positive result for

        COVID19 testing.  The COVID19 test was conducted on June 25, 2020, as

        part of saturation testing at KCFRC.   Upon notification of the positive result,

        GEO conducted in depth contract tracing through employee interviews and

        extensive review of closed-circuit video footage of the employee's movement

        throughout the residential center.  Contact tracing revealed; The employee's

        last day at the facility was June 26, 2020.  The employee had no contact with

        residents at the facility.  Any staff members identified through contact tracing,

        were notified and are self-observing for any symptoms for the next 14 days

        and are required to wear a mask and have their temperature taken twice daily

        while working. No residents have tested positive as a result of exposure in this

        case.  The TO role is to attend to the needs of the residents at the

        KCFRC.  The TO is responsible for securely transporting residents between

        destinations and ensuring that the vehicles used for transportation activities

        are safe and properly maintained. Through contact investigations, it was

        determined that on June 20, 2020, the four positive GEO employees were all

        together outside the facility on personal time.  They admitted to congregating

        outside the facility without PPE.  It was also determined that the nurses

        carpool together and two employees cohabitate.

b. On June 29, 2020, GEO Intake Officer (IO) at KCFRC, reported receiving a

positive result for COVID19 testing. The COVID19 test was conducted on

June 23, 2020, as part of saturation testing at KCFRC. Upon notification of

the positive result, GEO conducted in depth contract tracing through

employee interviews and extensive review of closed-circuit video footage of

the employee's movement throughout the residential center. Contact tracing

revealed; The employee's last day at the facility was June 28, 2020. The

employee had no contact with residents at the facility. Any staff members

identified through contact tracing, were notified and are self-observing for any

symptoms for the next 14 days and are required to wear a mask and have their

temperature taken twice daily while working. No residents have tested

positive as a result of exposure in this case. The IO role is to attend to the

needs of the residents entering and leaving KCFRC. The IO assists residents

with their property, documents, monies, health, safety, and well-being, as well

as ensures safety and supervision throughout the residential center. Through

contact investigations, it was determined that on June 20, 2020, the four

positive GEO employees were all together outside the facility on personal

time. They admitted to congregating outside the facility without PPE. It was

also determined that the nurses carpool together and two employees

cohabitate.

c. On June 29, 2020, GEO Nurse (Nurse One) at KCFRC, reported receiving a

positive result for COVID19 testing. The COVID19 test was conducted on

June 23, 2020, as part of saturation testing at KCFRC. Upon notification of

the positive result, GEO conducted in depth contract tracing through
employee interviews and extensive review of closed-circuit video footage of
the employee's movement throughout the residential center.  Contact tracing
revealed; The employee's last day at the facility was June 29, 2020.  The
employee's last contact with residents at the facility was June 29, 2020.  The
thirty-seven residents identified as having contact with Nurse One were
identified and notified of the exposure. Eleven of these residents were those
that were in isolation for positive results. No residents have tested positive as
a result of exposure in this case.  The Nurse's role under the direction of an
RN is to develop nursing care plans for residents, performs physical
assessments and medical history, assists physicians with patients screenings,
ensures prescribed medications are administered, makes observation rounds
on patients, and records progress notes, attend to the needs of the residents at
the KCFRC.  The Nurse assists residents in their medical rooms when housed
in isolation and treats those residents who seek medical assessment at the
medical clinic, as well as, ensures safety and supervision throughout the
medical facility. Through contact investigations, it was determined that on
June 20, 2020, the four positive GEO employees were all together outside the
facility on personal time.  They admitted to congregating outside the facility
without PPE.  It was also determined that the nurses carpool together and two
employees cohabitate.

9.  There is one additional employee at KCFRC who has tested positive. On June 29,
2020, GEO Nurse (Nurse Two) at KCFRC, reported receiving a positive result for

COVID19 testing. The COVID19 test was conducted on June 29, 2020, at her PCP office in preparation for a medical procedure. Nurse Two received a COVID19 test on June 23, 2020, as part of saturation testing at KCFRC, but that test result was negative. Upon notification of the positive result, GEO conducted in depth contract tracing through employee interviews and extensive review of closed-circuit video footage of the employee's movement throughout the residential center. Contact tracing revealed; The employee's last day at the facility was June 29, 2020. The employee's last contact with residents at the facility was June 29, 2020. The thirty-seven residents identified as having contact with Nurse Two were identified and notified of the possible exposure. Eleven of these residents were those that were in isolation for positive results. No residents have tested positive as a result of exposure in this case. The Nurse's role under the direction of an RN is to develop nursing care plans for residents, performs physical assessments and medical history, assists physicians with patients screenings, ensures prescribed medications are administered, makes observation rounds on patients, and records progress notes, attend to the needs of the residents at the KCFRC. The Nurse assists residents in their medical rooms when housed in isolation and treats those residents who seek medical assessment at the medical clinic, as well as, ensures safety and supervision throughout the medical facility. Through contact investigations, it was determined that on June 20, 2020, the four positive GEO employees were all together outside the facility on personal time. They admitted to congregating outside the facility without PPE. It was also determined that the nurses carpool together and two employees cohabitate.

Case 2:85-cv-04544-DMG-AGR Document 844-1 Filed 07/08/20 Page 42 of 52 Page ID
#:38832
Case 4:20-cv-00786-JEB Document 75-1 Filed 07/01/20 Page 8 of 9

10. On June 28, 2020, Core Civic Resident Counselor (RC) at the STFRC, reported

receiving a positive result for COVID-19 testing. The COVID-19 test was conducted

on June 27, 2020, after the employee began experiencing symptoms of COVID-

19. Upon notification of the positive result, Core Civic conducted in depth contract

tracing through employee interviews and extensive review of closed-circuit video

footage of the employee's movement throughout the residential center. Contact

tracing revealed that the employee's last day at the facility was June 25, 2020, in

which the employee left after three hours of work. The employee did not have

contact with residents at the facility within five days prior to experiencing

symptoms. Additionally, video review revealed the employee was wearing their mask

and did not have close contact with other staff. No residents or employees have

tested positive as a result of exposure in this case. The RC role as trained member of

the Unit Management Team, who is responsible for resolving daily resident issues

before they become significant matters, incidents or grievances.

11. On June 29, 2020, Core Civic Resident Supervisor (RS) at the STFRC, reported

receiving a positive result for COVID-19 testing. The COVID-19 test was conducted

on June 28, 2020, after the employee began experiencing symptoms of COVID-

19. Upon notification of the positive result, Core Civic conducted in depth contract

tracing through employee interviews and extensive review of closed-circuit video

footage of the employee's movement throughout the residential center. Contact

tracing revealed that the employee's last day at the facility was June 16, 2020, and the

employee had taken Personal Time Off (PTO) in conjunction with his/her assigned

days off duty. The employee did not have contact with residents or staff at the

facility within five days prior to testing. No residents or employees have tested positive as a result of exposure in this case. The RS role is to attend to the needs of the residents at the STFRC. The RS assists residents in their dorms, dayrooms and recreation areas, as well as ensures safety and supervision throughout the residential center.

12. Currently, there are no reported positive COVID-19 cases of staff or residents at Berks County Family Residential Center.

13. This declaration is based upon my personal and professional knowledge, information obtained from other individuals employed by ICE, and information obtained from various records and systems maintained by DHS. I provide this declaration based on the best of my knowledge, information, belief, and reasonable inquiry for the above-captioned case.


Signed on this 30th day of June 2020.

Mellissa B. Harper
Unit Chief, Juvenile and Family Residential Management Unit
ICE Enforcement and Removal Operations

# IN THE UNITED STATES DISTRICT COURT
# FOR DISTRICT OF COLUMBIA

| | |
|---|---|
| O.M.G., *et al.*; | Case No. 1:20-cv 00786-JEB |
| *Petitioners*, | |
| v. | **NOTICE OF COVID-19 POSITIVE CASES** |
| Chad WOLF, Acting Secretary of the U.S. Department of Homeland Security, *et al.*, | |
| *Respondents*. | The Honorable James E. Boasberg |

Pursuant to the Court's June 25, 2020 minute order, Respondents hereby notify the Court that one additional employee and three new intakes as new residents in the Karnes Family Residential Center ("FRC") in (add city and state location for Karnes) have tested positive for COVID-19, since the last notice. ECF No. 75.

New Resident 1: ICE tested New Resident 1 on June 28, 2020, due to the resident being a new arrival. On July 1, 2020, the test result came back positive for COVID-19. New Resident 1 is asymptomatic and will remain in quarantine until July 16, 2020. At this time, New Resident 1 has not required treatment at an outside medical facility and is being monitored and assessed twice per day.

New Resident 2: ICE tested New Resident 2 on June 28, 2020, due to the resident being a new arrival. On July 1, 2020, the test result came back positive for COVID-19. New Resident 2 is asymptomatic and will remain in quarantine until July 16, 2020. At this time, New Resident 2 has not required treatment at an outside medical facility and is being monitored and assessed twice per day.

New Resident 3: ICE tested New Resident 3 on June 28, 2020, due to the resident being a new arrival. On July 1, 2020, the test result came back positive for COVID-19. New Resident 3 is asymptomatic and will remain in quarantine until July 16, 2020. At this time, New Resident 3 has not required treatment at an outside medical facility and is being monitored and assessed twice per day.

Employee: Employee is a transportation officer (contractor) who was tested on June 29, 2020, due to testing being offered to all employees from GEO Group Inc. On July 2, 2020, the test result came back positive for COVID-19. Employee is asymptomatic and currently in quarantine at home. The employee was directed to contact human resources after the 14-day quarantine period for further guidance before reporting to work.

Respondents will appraise the Court of any further developments as it receives them from ICE.

//

//

//

RESPECTFULLY SUBMITTED this 2nd day of July 2020.

MICHAEL R. SHERWIN
Acting United States Attorney
District of Columbia
DANIEL VAN HORN
Assistant U.S. Attorney
555 4th St. NW
Washington, DC 20530
Telephone:  (202) 252-2506
Email: Daniel.VanHorn@usdoj.gov

JOSEPH H. HUNT
Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section
ELIANIS PEREZ
Assistant Director

s/  *Vanessa Molina*
VANESSA MOLINA
Trial Attorney
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 532-4413
Facsimile (202) 305-7000
Email: Vanessa.Molina@usdoj.gov

*Attorneys for Defendants*

Case 1:20-cv-00786-JEB   Document 79   Filed 07/05/20   Page 1 of 6

# IN THE UNITED STATES DISTRICT COURT
# FOR DISTRICT OF COLUMBIA

O.M.G., *et al.*;

          *Petitioners*,

v.

Chad WOLF, Acting Secretary of the U.S.
Department of Homeland Security, *et al.*,

          *Respondents*.

Case No. 1:20-cv00786- JEB

**NOTICE OF COVID-19 POSITIVE
CASES**

The Honorable James E. Boasberg

Pursuant to the June 25, 2020 minute order, Respondents hereby notify the Court that additional employees and new intakes in the Family Residential Center ("FRCs") have tested positive for COVID-19, since the last notice. ECF No. 77.

### I. Karnes County Family Residential Center ("Karnes FRC")

Employee 1: Licensed vocational nurse tested at an off-site on June 27, 2020, due to experiencing symptoms. On July 2, 2020, the test result came back positive. Employee 1 is and will remain in quarantine at home for 14 days. At this time, Employee 1 has not required treatment at an outside medical facility. Employee 1 has contact with a cohort of 66 residents – Employee 1 wore PPE at all times during encounters with residents.

June 30 new intakes: On June 30, 2020, two groups of intakes arrived at Karnes, and were all tested on the same day due to being new arrivals. 14 individuals from these groups tested positive on July 3, 2020.

All of the 14 individuals reported here, from the June 30, 2020 new intake groups, are asymptomatic, except for one individual with a low-grade temperature of 99.3. All 14 individuals were placed in a separate cohort, where they are assessed for symptoms twice per

day. They will remain in quarantine for 14 days. All staff members in contact with the new arrivals and the infected cohort have been wearing PPE.

July 2 new intakes: On July 2, 2020, a group of 17 new intakes arrived at Karnes, and they were tested on the same day due to being new arrivals. Two individuals from this group tested positive on July 4, 2020.

Both of the two new intakes reported here are asymptomatic, and were placed in a separate cohort, where they are assessed for symptoms twice per day. They will remain in quarantine for 14 days. All staff members in contact with the new arrivals and the infected cohort have been wearing PPE.

**II. South Texas Family Residential Center ("Dilley FRC")**

Employee 1: Employee tested on July 1, 2020, due to experiencing symptoms. Employee 1 did no report to work in July 2, pending test results. On July 3, 2020, the test result came back positive. Employee 1 us and will remain in quarantine for 14 days.

Employee 2: Employee is an intake records clerk tested on June 30, 2020, due to becoming aware of exposure outside the FRC. On July 3, 2020, the results came back positive. Employee 2 is and will remain in quarantine for at least 14 days and then will be cleared by a medical doctor. Employee 2's last day at the FRC was on June 18, 2020. Contract tracing conducted through video surveillance revealed that Employee 2 was not in contact with residents and wore PPE when in contact with employees.

Employee 3: Employee is a fire and safety manager tested at an off-site facility on June 27, 2020, due to experiencing symptoms. On July 4, 2020, the results came back positive. Employee 3 was last at the FRC on June 26, 2020. Employee 3 is and will remain in quarantine for at least 14 days and then will be cleared by a medical doctor. Contract tracing conducted through video surveillance revealed that Employee 2 was not in contact with residents and wore PPE when in contact with employees.

Employee 4: Employee is an intake resident supervisor tested at an off-site facility on July 1, 2020, due to experiencing symptoms. On July 3, 2020, the results came back positive. Employee 4 was last at the FRC on July 1, 2020.  On June 24, 2020, Employee 4 was tested by their medical doctor, and the test came back negative on June 26, 2020. Human Resources cleared Employee 4 to return to work on July 1, 2020, after receiving a clearance note from Employee 4's medical doctor. Contract tracing revealed that no other staff was exposed.

Respondents will appraise the Court of any further developments as it receives them from ICE.

RESPECTFULLY SUBMITTED this 5th day of July 2020.

MICHAEL R. SHERWIN
Acting United States Attorney
District of Columbia
DANIEL VAN HORN
Assistant U.S. Attorney
555 4th St. NW
Washington, DC 20530
Telephone:  (202) 252-2506
Email: Daniel.VanHorn@usdoj.gov

JOSEPH H. HUNT
Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section
ELIANIS PEREZ
Assistant Director

s/ *Vanessa Molina*
VANESSA MOLINA
Trial Attorney
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 532-4413
Email: Vanessa.Molina@usdoj.gov

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
## FOR DISTRICT OF COLUMBIA

| | |
|---|---|
| O.M.G., *et al.*; | Case No. 1:20-cv00786-JEB |
| *Petitioners*, | |
| v. | **NOTICE OF COVID-19 POSITIVE CASES** |
| Chad WOLF, Acting Secretary of the U.S. Department of Homeland Security, *et al.*, | The Honorable James E. Boasberg |
| *Respondents*. | |

Pursuant to the June 25, 2020 minute order, Respondents hereby notify the Court that additional employees and new intakes in the Family Residential Center ("FRCs") have tested positive for COVID-19, since the last notice. ECF No. 79.

### I. Karnes County Family Residential Center ("Karnes FRC")

Employee 1: Registered nurse tested, due to experiencing symptoms. On July 5, 2020, the test result came back positive. Employee 1 is and will remain in quarantine at home for 14 days. Employee 1's last day at work was July 1, 2020. Employee 1 has provided a list for contact tracing and human resources is in the process of notifying individuals with whom Employee 1 had contact. Exposed individuals will have their temperature checked twice per day for 14 days.

Employee 2: Licensed practical nurse tested on her own, currently asymptomatic. On July 6, 2020, the test results came back positive. Employee 2's last day of work was July 5, 2020. Employee 2 has provided a list for contact tracing and human resources is in the process of notifying individuals with whom Employee 2 had contact. Exposed individuals will have their temperature checked twice per day for 14 days.

Employee 3: Resident supervisor tested off-site, currently asymptomatic. On July 3, 2020, the test results came back positive. Employee 2's last day of work was June 25, 2020. Contact tracing is not being conducted due to Employee 2's last date on site falling outside the 48-hour threshold.

Employee 4: Resident advisor tested off-site, due to experiencing symptoms. On July 6, 2020, the test results came back positive. Employee 4's last day of work was July 2, 2020. Employee 4 has provided a list for contact tracing and human resources is in the process of notifying individuals with whom Employee 4 had contact. Exposed individuals will have their temperature checked twice per day for 14 days.

June 28 new intake: On June 28, 2020, a group of new intakes arrived and was cohorted.  On July 6, 2020, one resident tested positive, and is currently asymptomatic. The resident has not been around any other residents or staff without wearing PPE since arriving on June 28, 2020.

**II. South Texas Family Residential Center ("Dilley FRC")**

Employee 1: Employee 1 is a resident medical supervisor who tested at an off-site facility on July 4, 2020, due to experiencing symptoms. Employee 1 received positive results on the same day. Contract tracing through video surveillance showed that employee was last at Dilley on July 3, 2020, and had contact with residents and employees while observing social distancing measures and wearing a mask. Employee 1 is and will remain in quarantine for 14 days.

Respondents will appraise the Court of any further developments as it receives them from ICE.

//

RESPECTFULLY SUBMITTED this 7th day of July 2020.

MICHAEL R. SHERWIN
Acting United States Attorney
District of Columbia
DANIEL VAN HORN
Assistant U.S. Attorney
555 4th St. NW
Washington, DC 20530
Telephone:  (202) 252-2506
Email: Daniel.VanHorn@usdoj.gov

ETHAN P. DAVIS
Acting Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section
ELIANIS PEREZ
Assistant Director

s/  *Vanessa Molina*
VANESSA MOLINA
Trial Attorney
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 532-4413
Email: Vanessa.Molina@usdoj.gov

*Attorneys for Defendants*