ETHAN P. DAVIS
Acting Assistant Attorney General
Civil Division
AUGUST E. FLENTJE
Special Counsel
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director, District Court Section
Office of Immigration Litigation
SARAH B. FABIAN
NICOLE N. MURLEY
Senior Litigation Counsel
        Tel:  (202) 532-4824
        Fax:  (202) 305-7000
        Email:  Sarah.B.Fabian@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY LISETTE FLORES; *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM P. BARR, Attorney General of the United States; *et al.,*<br><br>Defendants. | Case No. CV 85-4544-DMG<br><br><br>__JOINT STATUS REPORT__ |

On June 26, 2020, the Court ordered the parties to continue to meet and confer regarding "the adoption and implementation of proper written advisals and other protocols to inform detained guardians/parents about minors' rights under the FSA and obtain information regarding, and procedures for placement with, available and suitable sponsors, as well as discuss conditions at the Cowlitz and NORCOR detention facilities[,]" and to provide a joint status report regarding these efforts to meet and confer no later than July 8, 2020. Order, ECF No. 833, ¶ 6. In accordance with the Court's orders, the parties provide the below updates, which supplement the information provided in the parties' June 15, 2020 joint status report, ECF No. 820.

(1) The adoption and implementation of proper written advisals and other protocols to inform detained guardians/parents about minors' rights under the FSA and obtain information regarding, and procedures for placement with, available and suitable sponsors

On June 26, 2020, Defendants provided five proposed documents to Plaintiffs that expanded upon and incorporated the materials that had previously been exchanged by the parties. Those draft documents included: (1) protocols; (2) a notice of rights; (3) a release agreement; (4) a parole worksheet; and (5) a questionnaire for parents. On July 2, 2020, Plaintiffs returned those documents with proposed edits and comments. The parties met and conferred by phone regarding Plaintiffs' proposed edits on July 2, 2020. On July 7, 2020, the parties again met and conferred by telephone regarding some questions and issues Defendants wished to address concerning Plaintiffs' documents. Defendants intend to provide responsive drafts incorporating these discussions to Plaintiffs on July 8, 2020. Once Plaintiffs receive those drafts, Plaintiffs will notify Defendants whether they will respond in writing, or whether they believe that the parties should meet and confer telephonically on or before July 10, 2020.

(2) discuss conditions at the Cowlitz and NORCOR detention facilities

During the July 2, 2020, call the parties discussed juvenile detention at Cowlitz, but focused primarily on the issue of A.F.P.P.'s custody.

**Defendants' Position:** It is Defendants' position that there is no pending motion regarding conditions at Cowlitz or NORCOR, *see* Order, ECF No. 784, at 4, and Defendants defer to Plaintiffs' counsel to raise any such issues about which they seek to explore resolution in advance of bringing any such issues to the Court. In light of the fact that there is nothing pending on this issue, and Plaintiffs are not timely pursuing resolution of any such issues, Defendants object to the Court's prohibition on the transfer of minors in ICE juvenile detention to adult facilities when they age out of juvenile detention, and intend to bring a motion asking the Court to lift this prohibition in the near future.

**Plaintiffs' Position:** Plaintiffs will oppose any motion Defendants may bring to vacate the Court's temporary prohibition on the transfer of the remaining two minors in ICE juvenile detention (A.A.A. and K.J.A.B.) to adult facilities when they age out of juvenile detention.

On Monday this week, July 5, 2020, having waiting for almost two weeks without moving to modify this Court's June 26, 2020, Order re Updated Juvenile Coordinator Reports ("Order") [Doc # 833], on the eve of Class Member A.F.P.P.'s 18th birthday, applied ex parte for an Order "lifting the restrictions in Paragraph 4.e of the Court's June 26, 2020 order" prohibiting the transfer of A.F.P.P., A.A.A. and K.J.A.B. to an adult detention facility when they aged out of juvenile detention. A.F.P.P was aging out on July 7, 2020. Defendants' Ex Parte Application to Lift Restrictions in Para. 4.E of the June 26, 2020 Order ("Ex Parte Application"). [Doc. # 841].

A.F.P.P. Class Counsel worked closely with Class Member A.F.P.P.'s counsel of record over the past two weeks to pursue remedies to review ICE's determination

that he was not eligible for release under Paragraph 14 of the FSA to his resident mother because he was a "danger."[1]

ICE had seemingly rarely assessed A.F.P.P.'s alleged dangerousness, and only a deportation officer rather than a mental health professional had decided he was dangerous. However, prior to an IJ bond hearing A.F.P.P.'s counsel requested and scheduled for July 9, 2020, on July 6, 2020, A.F.P.P. submitted a request for reconsideration to ICE while Class Counsel worked on an opposition to Defendant's Ex Parte Application. By the early evening, A.F.P.P.'s counsel and Class Counsel were informed that ICE had stood down. A.F.P.P. would be released that evening. After spending about nine months in detention, someone at ICE it appears had finally complied with the release provisions of the FSA.

The evidence submitted by ICE also showed the agency's total failure to routinely assess A.F.P.P's current dangerousness. Prior to being arrested by ICE in September 2019, A.F.P.P. had never been arrested, charged with any crimes, or engaged in any acts of violence against anyone.

Nevertheless, to the best of Class Counsel's knowledge, Class Members A.A.A. and K.J.A.B. remain in custody and Defendants state they plan to file a motion or application to permit these minors to be transferred to ICE detention facilities.

ICE wants to move these class members to adult detention facilities at a time when "medical professionals, correctional health experts, elected leaders, and advocates have urged federal immigration officials to substantially *reduce* the

---

[1] These remedies include a bond hearing before an Immigration Judge (IJ), appeals which either party may take to the Board of Immigration Appeals (BIA) of the IJ's decision, and federal court review allowed by ¶ 24.B of the FSA of ICE's refusal to release under ¶ 14 of the FSA.

number of people in detention facilities,"[2] and due to ICE's failure to fully heed these calls, "the total number of individuals who have tested positive in detention continues to rise on a steep trajectory," and not a single state comes close to having as high of an overall positive test rate as that of ICE detention centers. *Id*. To prevent a humanitarian disaster, "even the officials who run these [ICE] facilities expressed concern."[3]

The health situation at the Northwest ICE Processing Center where the remaining two minors would likely be transferred, is described as a "tinderbox" where COVID will spread rapidly to detainees. *Id*. The Center is located in Pierce County, Washington, where on July 3, 2020, the county saw the greatest spike in COVID cases since April.[4] While many of the short-term consequences of this disease are coming to light, the long-term consequences for lung and heart damage, and even neurocognitive issues, are just beginning to fully reveal themselves.[5]

To the extent ICE is detaining these minors pursuant to FSA Paragraph 21, it states in relevant part:

---

2 Center for American Progress, *Data on the Coronavirus Outbreak in Immigration Detention Offer More Questions than Answers*, June 16, 2020, available at: HTTPS://WWW.AMERICANPROGRESS.ORG/ISSUES/IMMIGRATION/NEWS/2020/06/16/486338/DATA-CORONAVIRUS-OUTBREAK-IMMIGRATION-DETENTION-OFFER-QUESTIONS-ANSWERS/

[3] NPR *'You Can Either Be A Survivor or Die': COVID-19 Cases Surge in ICE Detention*, July 1, 2020, available at: https://www.npr.org/2020/07/01/871625210/you-can-either-be-a-survivor-or-die-covid-19-cases-surge-in-ice-detention

4 Pierce County sees highest daily count in COVID-19 cases since April (July 3, 2020), available at: https://www.thenewstribune.com/news/coronavirus/article243985762.html

[5] Advisory Board, *What we know (so far) about the long-term health effects of COVID-19*, June 2, 2020, available at: https://www.advisory.com/daily-briefing/2020/06/02/covid-health-effects

A minor may be held in or transferred to a suitable State or county juvenile detention facility or a secure [ICE] detention facility, or [ICE]-contracted facility, having separate accommodations for minors whenever the [ICE] District Director … determines that the minor: … B. has committed, or has made credible threats to commit, a violent or malicious act (whether directed at himself or others) while in [ICE] legal custody …

*Id.*

At least in A.F.P.P.'s case, and we assume also in the cases of A.A.A. and K.J.A.B., it appears only a Deportation Officer determined non-eligibility for release under Paragraph 14, not a District Director as required by the FSA.[6]

In the almost ten months of A.F.P.P.'s incarceration, as best Plaintiffs know, ICE made *no* efforts to have a mental health professional assess his current level of dangerousness. Nor did ICE communicate with A.F.P.P.'s mother about his history, current behavior, or her willingness to care for him if he was released. Ratcliffe Decl. at 16-18. [Doc. # 824-1].

Defendants state above that "Defendants defer to Plaintiffs' counsel to raise any such issues about which they seek to explore resolution in advance of bringing any such issues to the Court …"

Plaintiffs have raised and are raising the issues discussed above. In summary:

1. What should ICE be doing to reasonably accurately assess whether detained class members are or are not eligible for release under the FSA Paragraph 14 because they are a flight risk or a danger as those terms are used

---

[6] We know nothing about the qualifications the Deportation Officer possesses, if any, to assess a class members' current threat of dangerousness, or whether the Deportation Officer is even aware of the FSA's requirements relating to escape risks.

in the FSA?

2. What protocols should ICE follow to make and record these determinations, and to effect the release of minors who are not flight risks or a danger?

3. What advisals should these detained minors receive?

Pursuant to this Court's Minutes in Chambers Order re Defendants' Ex Parte Application, the parties will meet and confer to resolve any disputes informally or through the procedure set forth in the Order Appointing Special Master [Doc. # 494]. The goal is to arrive at an agreement or Order approving a protocol that will be followed to ensure FSA compliance at juvenile detention centers.

///

///

///

DATED: July 8, 2020                  */s/Peter Schey* (with permission)
                                     *Class Counsel for Plaintiffs*
                                     CENTER FOR HUMAN RIGHTS &
                                     CONSTITUTIONAL LAW
                                     Peter A. Schey
                                     Carlos Holguín

DATED: July 8, 2020                  ETHAN P. DAVIS
                                     Acting Assistant Attorney General
                                     Civil Division

                                     WILLIAM C. PEACHEY
                                     Director, District Court Section
                                     Office of Immigration Litigation

                                     WILLIAM C. SILVIS
                                     Assistant Director, District Court Section
                                     Office of Immigration Litigation

                                     */s/ Sarah B. Fabian*
                                     SARAH B. FABIAN
                                     NICOLE N. MURLEY
                                     Senior Litigation Counsel
                                     Office of Immigration Litigation
                                     District Court Section
                                     P.O. Box 868, Ben Franklin Station
                                     Washington, D.C. 20044
                                     Tel: (202) 532-4824
                                     Fax: (202) 305-7000
                                     Email: sarah.b.fabian@usdoj.gov

                                     *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2020, I served the foregoing pleading on all counsel of record by means of the District Clerk's CM/ECF electronic filing system.

/s/ *Sarah B. Fabian*
SARAH B. FABIAN
U.S. Department of Justice
District Court Section
Office of Immigration Litigation

Attorney for Defendants