MICHAEL J. STORTZ (SBN 139836)
mstortz@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
580 California Street, Suite 1500
San Francisco, CA 94104
Telephone:    415-765-9500
Facsimile:    415-765-9501

BRETT M. MANISCO (SBN 318351)
bmanisco@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067-6022
Telephone:    310.229.1000
Facsimile:    310.229.1001

**REFUGEE AND IMMIGRANT CENTER FOR
EDUCATION AND LEGAL SERVICES**
MANOJ GOVINDAIAH (*Pro Hac Vice Forthcoming*)
manoj.govindaiah@raicestexas.org

**ALDEA – THE PEOPLE'S JUSTICE CENTER**
BRIDGET CAMBRIA (*Pro Hac Vice Forthcoming*)
bridget@aldeapjc.org

Attorneys for Plaintiff-Intervenors
B.L.N., D.F.L.G., and W.B.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY L. FLORES, et al.,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>EDWIN MEESE, et al.,<br><br>                    Defendants. | Case No. 2:85-cv-04544-DMG-AGRx<br><br>[Judge:  Hon. Dolly M. Gee]<br><br>**PROPOSED INTERVENORS' *EX PARTE* APLICATION FOR LEAVE TO INTERVENE**<br><br><br>Date Action Filed:  July 11, 1985 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** Proposed Plaintiff-Intervenors B.L.N., D.F.L.G., and W.B. ("Proposed Plaintiff-Intervenors") by and through their counsel, Aldea – The People's Justice Center and Refugee and Immigrant Center for Education and Legal Services ("RAICES"), two of the three non-profit organizations that provide direct representation to accompanied *Flores* Class Members[1] detained at the Family Residential Centers ("FRCs") will, and hereby do, move *Ex Parte* for an order granting Proposed Plaintiff-Intervenors leave to intervene in this action for purpose of enforcement of the *Flores* Settlement Agreement (the "Agreement") as it pertains to accompanied Class Members who are detained at FRCs, and appointment of co-counsel to represent their interests going forward.

**GROUNDS FOR *EX PARTE* MOTION:** Proposed Plaintiff-Intervenors are accompanied *Flores* Class Members who are detained by Immigration and Customs Enforcement ("ICE") together with their parents at the three FRCs, the Berks Family Residential Center ("Berks"), Karnes County Residential Center ("Karnes"), and South Texas Family Residential Center ("Dilley"), respectively. Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, Proposed Plaintiff-Intervenors are entitled to intervene in this action as a matter of right for the purposes of protecting their rights in the enforcement of the Agreement. Alternatively, permissive intervention is warranted under F.R.C.P. Rule 24(b).

**BASIS FOR MOTION:** This Motion is based upon this Notice, the following Memorandum of Points and Authorities, and upon the accompanying Declarations of Manoj Govindaiah ("Govindaiah Decl."), Andrea Meza ("Meza Decl.") and Shalyn Fluharty ("Fluharty Decl.").

---

[1] ALDEA – The People's Justice Center and RAICES also represent the parents of the accompanied Class Members being asked by the Government to sign any purported consent to separate or waiver of *Flores* rights.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EX PARTE PROCEDURAL COMPLIANCE:** Pursuant to Local Rule 7-10.1, counsel for Proposed Plaintiff-Intervenors notified class counsel Peter Schey and Department of Justice Office of Immigration Litigation attorney Sarah Fabian via attempted telephone conferences and email on Monday, July 20, 2020 at 9:00 and 9:30 a.m., to notify them of Proposed Plaintiff-Intervenors' intent to submit an *ex parte* application request to intervene.  Govindaiah Decl., ¶¶  7-8; Ex. F, G. Counsel also communicated via email with Mr. Schey and Ms. Fabian regarding the proposed intervention on Thursday, July 16, 2020 and Friday July 17, 2020.  *Id.* at ¶¶5-6, 8; Exs. D, E, G.

*Ex parte* relief is merited because "immediate and irreparable harm will occur if there is any delay in obtaining relief."  *Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F.Supp. 488, 490 (C.D.Cal. 1995). In the absence of an *ex parte* order on this Motion, Proposed Plaintiff-Intervenors' and other class members will be irreparably harmed for the reasons as set forth in the Memorandum of Points and Authorities and the Declarations of Manoj Govindaiah, Andrea Meza, Shalyn Fluharty, and Catherine Trois filed herewith.

Respectfully submitted,

Dated:  July 20, 2020

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Michael J. Stortz
Brett M. Manisco

**THE REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES**
Manoj Govindaiah (*Pro Hac Pending*)

**ALDEA – THE PEOPLE'S JUSTICE CENTER**
Bridget Cambria (*Pro Hac Pending*)

By_____*/s/ Michael J. Stortz*_____
            Michael J. Stortz
            Attorneys for Plaintiff-Intervenors
            B.L.N., D.F.L.G., and W.B.

# TABLE OF CONTENTS

I.    INTRODUCTION/SUMMARY OF ARGUMENT ........................................1

II.   FACTUAL BACKGROUND ...................................................................2
      A.   STATEMENT OF FACTS .....................................................2
      B.   CURRENT STATUS ............................................................8

III.  ARGUMENT............................................................................................13
      A.   LEGAL STANDARD............................................................13
      B.   INTERVENTION SHOULD BE GRANTED UNDER RULE 24(A).16
            1.   The Motion to Intervene is timely.............................................16
            2.   The Proposed Intervenors have an interest relating to the
                 subject of the litigation.............................................................17
            3.   The interests of the Proposed Intervenors will be practically
                 impaired if intervention is not granted......................................17
            4.   Current representation of the Plaintiff-Intervenors' interests is
                 inadequate. ..............................................................................18
      C.   INTERVENTION SHOULD BE GRANTED UNDER RULE 24(B).22

IV.   CONCLUSION........................................................................................22

PROPOSED INTERVENORS' *EX PARTE* APPLICATION FOR LEAVE TO INTERVENE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beckman Indus., Inc., v. International Ins. Co.*,
    966 F.2d 470 (9th Cir. 1992) ....................................................................... 14

*County of Fresno v. Andrus*,
    622 F.2d 436 (9th Cir. 1980) ....................................................................... 15

*Donnelly v. Glickman*,
    159 F.3d 405 (9th Cir. 1998) ....................................................................... 14

*Flores v. Barr*,
    Order Granting TRO (March 28, 2020).................................................... 8, 9

*Flores v. Barr*,
    Order (June 26, 2020) ............................................................................. 8, 13

*Flores v. Johnson*,
    212 F. Supp. 3d at 877 ................................................................................ 20

*Flores v. Lynch*,
    828 F.3d 898 (9th Cir. 2016) .................................... 2, 3, 4, 6, 7, 18, 19, 21

*Flores v. Sessions*,
    394 F. Supp. 3d at 1070 .............................................................................. 20

*Forest Conservation Council v. U.S. Forest Service*,
    66 F.3d 1489 (9th Cir. 1995) ...................................................................... 16

*Kootenai Tribe of Idaho v. Veneman*,
    313 F.3d 1094 (9th Cir. 2002) .................................................................... 22

*League of United Latin Am. Citizens v. Wilson*,
    131 F.3d 1297 (9th Cir. 1997) .............................................................. 14, 15

*United States ex rel. McGough v. Covington Techs. Co.*,
    967 F.2d 1391 (9th Cir.1992) ..................................................................... 15

*NAACP v. New York*,
    413 U.S. 345, 93 S. Ct. 2591, 37 L. Ed. 2d 648 (1973) ...................... 14, 15

*Nw. Forest Res. Counsel v. Glickman*,
    82 F.3d 825 (9th Cir. 1996) ................................................................. 14, 16

*O.M.G. v. Wolf*,
    No. 1:20-cv-786-JEB (D.D.C. March 2020) ........................................ 8

*Pellegrino v. Nesbit*,
    203 F.2d 463 (9th Cir. 1953) ............................................................. 15

*Smith v. L.A. Unified Sch. Dist.*,
    830 F.3d 843 (9th Cir. 2016) ........................................................ 16, 17

*Standard Fire Ins. Co. v. Knowles*,
    133 S. Ct. 1345 (2013) ...................................................................... 14

*United Airlines, Inc. v. McDonald*,
    432 U.S. 385 (1977) ......................................................................... 15

*United States v. Alisal Water Corp.*,
    370 F.3d 915 (9th Cir. 2004) ............................................................. 16

*United States v. City of Los Angeles*,
    288 F.3d 391 (9th Cir. 2002) ............................................................. 16

*United States v. Oregon*,
    745 F.2d 550 (9th Cir. 1984) ........................................................ 15, 16

*United States v. Washington*,
    86 F.3d 1499 (9th Cir. 1996) ........................................................ 14, 15

*Westcherster Fire Ins. Co. v. Mendez*,
    585 F (9th Cir. 2009) ........................................................................ 14

**Statutes**

8 U.S.C. § 1182 ...................................................................................... 11

**Other Authorities**

8 C.F.R. § 1236.3 ............................................................................... 9, 11

Federal Rule of Civil Procedure 23 ...................................................... 14

Federal Rule of Civil Procedure 24 ............................................ 14, 16, 22

PROPOSED INTERVENORS' *EX PARTE* APPLICATION FOR LEAVE TO INTERVENE

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.   INTRODUCTION/SUMMARY OF ARGUMENT

Proposed Plaintiff-Intervenors are: B.L.N., a child who will turn two years of age next month, who is detained at the Berks Family Residential Center with both of his parents; D.F.L.G., a one-year old child, who is detained at the Karnes County Residential Center with his parents; and W.B., an 8-year old child who is on her ninth week of treatment for Tuberculosis and experiencing side effects as a result of medication prescribed while detained at the South Texas Family Residential Center with her mother.  Their interests, which are shared by other accompanied Class Members, are not adequately represented and irretrievably at odds with the inexplicable objective of class counsel to develop a protocol that waives their right to release under the Agreement and delays their release from a house "'on fire[].'" June 26, 2020 Order [Doc. # 834].

While any waiver protocol would likely violate due process rights of Proposed Plaintiffs-Intervenors and other accompanied Class Members, the current conditions at the FRCs present an intolerable risk of irreparable injury.  *Id.* The Court has recognized that the FRCs are "'on fire'" as a result of the current COVID-19 pandemic, and that "there no more time for half measures." *Id.*  Proposed Plaintiffs-Intervenors therefore seek an order immediately granting them leave to intervene to protect their interests in full compliance with the Court's orders and release from the FRCs, where those interests are not adequately presented – and indeed, have been repeatedly dismissed and ignored – by current class counsel.

Specifically, Proposed Plaintiff-Intervenors request that this Court grant them leave to intervene so that they may: (i) protect their interests in the enforcement of the Agreement; (ii) address the adequacy of class counsel and seek appointment of co-counsel to represent the interests of accompanied Class Members detained by the Government at the FRCs; (iii) address Proposed Plaintiffs-Intervenors' request for

reconsideration of the extension of the July 17, 2020 release deadline, and to address any requests for subsequent extension; and (iv) address any proposed waiver protocol.

## II.    FACTUAL BACKGROUND

### A.    STATEMENT OF FACTS

The *Flores* litigation is in an unusual procedural posture. The case was settled 23 years ago by consent decree (the "Agreement") which now governs the treatment of detained immigrant children by the United States government; however, the Defendants have rarely, if ever, been in full compliance with all of its terms. As this Court is well aware, class counsel has been litigating various motions to enforce different provisions of the Agreement and the Defendants' non-compliance for many years. The Defendants, Acting Secretary of Homeland Security Chad Wolf, the U.S. Department of Homeland Security and its subordinate entities, U.S. Immigration and Customs Enforcement and U.S. Customs and Border Protection, as well as the U.S. Department of Health and Human Services' Office of Refugee Resettlement (collectively, the "Government") continue to be bound by the terms of the Agreement.

In 2014, the Government increased the practice of detaining children with their parents, and further litigation ensued with regard to enforcement of the Agreement and the scope of the Class. On July 24, 2015, the Court found that the Agreement encompasses both accompanied and unaccompanied minors. July 24, 2015 Order [Doc. # 177]. As a result, the Court ordered the Government to release Class Members subject to specific provisions of the Agreement while they await the results of their immigration proceedings. This finding that accompanied children in immigration detention are unambiguously Class Members was upheld by the United States Court of Appeals for the Ninth Circuit. *Flores v. Lynch*, 828 F.3d 898 (9th Cir. 2016).  In its opinion, the Ninth Circuit stated:

> We agree with the district court that "[t]he plain language of the Agreement clearly encompasses accompanied minors." First, the Settlement defines

minor as "any person under the age of eighteen (18) years who is detained in the legal custody of the INS"; describes its scope as setting "nationwide policy for the detention, release, and treatment of minors in the custody of the INS"; and defines the class as "[a]ll minors who are detained in the legal custody of the INS." Settlement ¶¶ 4, 9, 10. Second, as the district court explained, "the Agreement provides special guidelines with respect to unaccompanied minors in some situations" and "[i]t would make little sense to write rules making special reference to unaccompanied minors if the parties intended the Agreement as a whole to be applicable only to unaccompanied minors." *See id.* ¶ 12(A) ("The INS will segregate unaccompanied minors from unrelated adults."); *id.* ¶ 25 ("Unaccompanied minors arrested or taken into custody by the INS should not be transported by the INS in vehicles with detained adults except . . . ."). Third, as the district court reasoned, "the Agreement expressly identifies those minors to whom the class definition would not apply"—emancipated minors and those who have been incarcerated for a criminal offense as an adult; "[h]ad the parties to the Agreement intended to exclude accompanied minors from the Agreement, they could have done so explicitly when they  set forth the definition of minors who are excluded from the Agreement." *See id.* ¶ 4.

*Id.* at 905-06. Proposed Plaintiff-Intervenors here seek only to have their own interests in the rights that arise from the four corners of the Agreement represented before the Court.

On June 27, 2017, the Court held that the Government was failing to comply with its obligations under the Agreement due to the excessive length of detention of accompanied Class Members with their parents in FRCs in undisputedly secure, unlicensed facilities for up to eight months—well beyond the five-day time limit or the exception of 20 days previously authorized in times of emergency or influx. June 27,

2017 Order [Doc. # 363]. The Court ordered the Government to appoint a Juvenile Coordinator to oversee compliance with the Agreement, but the Court warned that if conditions did not improve to reach substantial compliance with the Agreement within one year of the Juvenile Coordinator's appointment, the Court would reconsider the Plaintiffs' request to appoint an Independent Monitor. *Id.* In its Order, the Court reiterated and quoted its previous July 24, 2015 order, which stated, "'[t]he fact that the family residential centers cannot be licensed by an appropriate state agency simply means that, under the Agreement, Class Members cannot be housed in these facilities except as permitted by the Agreement.' July 24, 2015 Order, 212 F. Supp. 3d at 877." *Id.* The Court further stated that, "[f]or the reasons already discussed in previous orders and since Plaintiffs have satisfied their burden, the Court once again finds that because the family residential centers are secure, unlicensed facilities, Defendants cannot be deemed in substantial compliance with the Agreement." *Id.* The FRCs remain secure, unlicensed facilities through the present day.

On July 9, 2018, the Court denied the Government's request to exempt family detention centers from the requirement that facilities detaining children be licensed by an appropriate state agency so that it could continue to detain accompanied children together with their parents in violation of the Agreement and previous court rulings. July 9, 2018 Order [Doc. # 455]. Noting "persistent problems" with the Government's compliance with the Agreement, on July 27, 2018 the Court issued the Minutes of a Status Conference and Plaintiffs' Motion to Enforce, and called for the appointment of a Special Master/Independent Monitor. July 27, 2018 Minutes [Doc. # 469]. On October 5, 2018, the Court appointed Andrea Sheridan Ordin as the Independent Monitor tasked with ensuring the Government's compliance with the Court's orders and other oversight. October 5, 2018 Order [Doc. # 494].

On March 26, 2020, Plaintiffs filed a request for a temporary restraining order and preliminary injunction to enforce the Agreement on behalf of both unaccompanied

Class Members in the custody of the Office of Refugee Resettlement ("ORR") and accompanied Class Members detained by ICE at the FRCs in light of the COVID-19 pandemic. Emergency Ex Parte Application for a Temporary Restraining Order [Doc. # 733]. Recognizing the risk of the emergent COVID-19 crisis to detained accompanied Class Members, the Court issued a TRO on March 28, 2020 ordering the Government to: (1) make every effort to promptly and safely release Class Members in accordance with Paragraphs 14 and 18 of the Agreement and the Court's prior orders; (2) submit to inspections by the ICE Juvenile Coordinators; (3) provide evidentiary snapshots to the Court, the Independent Monitor, and class counsel; and (4) show cause by April 10, 2020, why the Court should not grant Plaintiffs' motion for preliminary injunction. March 28, 2020 Order [Doc. # 740].

On April 10, 2020, the Court extended the TRO for an additional 14 days, and ordered the Government to Show Cause by April 24, 2020 why a preliminary injunction should not issue requiring the Government to make and record continuous efforts to release Class Members and enjoining the Government from keeping minors who have suitable custodians in congregate custody "due to ICE's unexplained failure to release these minors within 20 days, especially given the emergent circumstances and the Court's prior orders requiring the same (*see, e.g.*, July 24, 2015 Order [Doc. # 177], June 27, 2017 Order [Doc. # 363], July 9, 2018 Order [Doc. # 455], July 30, 2018 Order [Doc. # 470])." April 10, 2020 Order [Doc. #768]. The Court further ordered that the Government "shall make every effort to promptly and safely release Class Members in accordance with Paragraphs 14 and 18 of the FSA and the Court's prior orders (*see, e.g.*, July 24, 2015 Order [Doc. # 177], June 27, 2017 Order [Doc. # 363], July 9, 2018 Order [Doc. # 455], July 30, 2018 Order [Doc. # 470])."

On April 24, 2020, the Court found *inter alia* that "Plaintiffs have raised significant concerns by a preponderance of the evidence about each FRC's ability to provide safe and sanitary conditions." April 24, 2020 Order [Doc. #784] at 6. Moreover,

the Court found "that ICE did not seek or obtain formal waivers from detained parents of their children's *Flores* rights" during ICE's "binary choice" interviews in mid-May 2020. May 22, 2020 Order [Doc. # 799]. However, the Court specifically noted "those conversations caused confusion and unnecessary emotional upheaval and did not appear to serve the agency's legitimate purpose of making continuous individualized inquiries regarding efforts to release minors." *Id.*  The Court ordered continued heightened monitoring of the FRCs based on ICE's lack of compliance with Paragraph 12 and Exhibit 1 of the Agreement, and ordered ICE to "continue to make every effort to promptly and safely release Class Members who have suitable custodians in accordance with Paragraphs 14 and 18 of the FSA and the Court's prior orders, including those categorized as "MPP," participants in class litigation, "pending IJ hearing/decision" or "pending USCIS response," absent a specific and individualized determination that they are a flight risk or a danger to themselves or others, or a proper waiver of *Flores* rights (*see, e.g.*, July 24, 2015 Order [Doc. # 177], June 27, 2017 Order [Doc. # 363], July 9, 2018 Order [Doc. # 455], July 30, 2018 Order [Doc. # 470])."

On May 22, 2020, the Court noted that ICE in particular "continues to show lack of compliance with Paragraph 18 of the FSA, which requires Defendants to "make and record the prompt and continuous efforts on its part toward family reunification and the release of the minor.' *Flores* Agreement at ¶ 18 [Doc. # 101]," and further that ICE's report "fails to show how ICE has cured the deficiencies already identified by the Court in its April 24, 2020 Order." May 22, 2020 Minutes [Doc. # 799] The Court expressed its concern with the implementation of public health guidances at the Family Residential Centers (FRCs), given the declarations submitted by Plaintiffs showing that there are minors in custody with pre-existing medical conditions and that conditions remain unsafe and crowded—despite reduced populations—at each FRC. *Id.* The Court ordered, *inter alia*, that the "ICE Juvenile Coordinator shall provide *specific* explanations for the continued detention of each minor detained at an FRC beyond 20

days and review each explanation with the Independent Monitor, Andrea Ordin, before submitting the updated report to the Court," and ordered the parties to "meet and confer regarding the adoption and implementation of proper written advisals and other protocols to inform detained guardians about minors' rights under the Agreement and obtain information regarding available sponsors." *Id.* The Court further ordered enhanced monitoring of the FRCs by Dr. Paul Wise and Independent Monitor Andrea Ordin. *Id.*

On June 26, 2020, after receiving interim reports from the Special Monitor and court-appointed medical expert, Dr. Paul Wise, Juvenile Monitors, and an *amicus curiae* brief filed by Aldea – The People's Justice Center, Proyecto Dilley, and RAICES,[2] the Court entered an order stating that "[a]lthough progress has been made, the Court is not surprised that COVID-19 has arrived at both the FRCs and ORR facilities, as health professionals have warned all along that individuals living in congregate settings are more vulnerable to the virus" concluding that "[t]he FRCs are 'on fire' and there is no more time for half measures." June 26, 2020 Order [Doc. # 833.]

The Court ordered that:

given the severity of the outbreak in the counties in which FRCs are located and the Independent Monitor's and Dr. Wise's observations of non-compliance or spotty compliance with masking and social distancing rules, renewed and more vigorous efforts must be undertaken to transfer Class Members residing at the FRCs to non-congregate settings through one of two means: (1) releasing minors to available suitable sponsors or other

---

[2] The non-profit organizations directly representing accompanied Class Members and their parents filed a joint amicus curiae brief with evidence that counsel for amici believed was vital for the Court's consideration, after determining that they could no longer work directly with *Flores* class counsel given Mr. Schey's advocacy for and insistence on implementing a coercive family separation process. *See* Declaration of Andrea Meza, ¶¶ 25-26.

non-congregate settings with the consent of their adult guardians/parents; or (2) releasing the minors with their guardians/parents if ICE exercises its discretion to release the adults or another Court finds that the conditions at these facilities warrant the transfer of the adults to non-congregate settings. *Id*. The Court emphasized that "the foregoing efforts shall be undertaken **with all deliberate speed**[.]" *Id.* (emphasis in original). The Court further ordered that "ICE must also urgently *implement* the protocols recommended by the CDC, rather than hiding behind unevenly implemented written protocols, in order to comply with its obligation to provide safe and sanitary conditions for Class Members." *Id.* (emphasis in original).

## B.   CURRENT STATUS

The Court's most recent order instructed the Government to do three things: 1) Release all Class Members by July 17, 2020; 2) "**with all deliberate speed**"; and 3) implement increased protections, as recommended by the CDC, the Independent Monitor, and Dr. Wise. *Flores v. Barr*, June 26, 2020 Order [Doc. # 833]. Since the filing of Plaintiffs' initial Motion to for Preliminary Injunction in March 2020 due to the COVID-19 pandemic, this Court has ordered the Government on three separate occasions to release Class Members "without unnecessary delay," and has made clear that the Government violates the Agreement through the unnecessary delay in their release without reason. *Flores v. Barr*, Order Granting TRO, (March 28, 2020) [Doc. # 740]. Despite the increasing urgency of COVID-19's spread, including the at least 79 positive COVID-19 cases of detainees and staff at the FRCs as of July 15, 2020[3], and the clear demonstration of the Government's inability to prevent the spread of infectious

---

[3] The government has been required to file notices of positive COVID-19 cases for all 3 FRCs in *O.M.G. v. Wolf*, No. 1:20-cv-786-JEB (D.D.C. March 2020). The count of at least 79 detainees and staff testing positive is a cumulative total based on the following notices filed in O.M.G.: Doc. 93, Doc. 90, Doc. 86, Doc. 82, Doc. 81, Doc. 80, Doc. 79, Doc. 77, Doc. 75, Doc. 73, Doc. 70, and Doc. 69.

PROPOSED INTERVENORS' *EX PARTE* APPLICATION FOR LEAVE TO INTERVENE

diseases in the FRCs in general, the Government has neither complied with the Court's order to release Class Members nor has it complied with its regulatory requirement to evaluate release of family units together. *See* 8 C.F.R. § 1236.3(b)(2). Further, there is no evidence that the Government has even attempted to comply with the Court's order to "urgently enforce its existing COVID-19 protocols." June 26, 2020 Order at 4. To the contrary, the evidence that the Government is failing to comply with the Court's order has only grown. The South Texas Family residential Center violated its own COVID-19 protocols regarding social distancing and the use of PPE during an all-facility Fourth of July Party. *See* Declaration of Shalyn Fluharty, ¶ 43. As COVID-19 spreads unchecked through the FRCs, the Government continues to refuse to explain its failures to comply with the Court's repeated orders either to release the Class Members or to implement adequate safety procedures.

The Court has made clear in each of its orders that its primary concern is for the children confined to the FRCs who are in imminent danger of infection with COVID-19. The purpose of the Court's previous orders since the pandemic outbreak has been to prevent "irreparable harm" to the lives and safety of children in the Government's care as well as to the communities surrounding the FRCs, finding that mere "financial and administrative concerns" are not sufficient justification for the Government's failures to promptly release or otherwise take action to protect Class Members when "public health and safety in the midst of pandemic" are at stake. *Flores v. Barr,* Order Granting TRO, (March 28, 2020) [Doc. # 740].[4] In defiance of this finding, the Government, rather than working to release Class Members in an orderly manner or addressing ongoing failures to implement basic safety measures to prevent the spread of COVID-19, has instead

---

[4] Proposed Plaintiffs-Intervenors submit herewith the Declaration of Catherine Troisi, Ph.D., Assocate Professor in the Department of Management, Policy and Community Helath and Department of Epidemiology, Human Genetics, and Environmental Sciences and Center for Infectious Diseases at the University of Texas Health Science Center. As set forth in full therein, any additional time in FRCs will increase the probability that a child will be exposed to the SARS-Cov-2 virus and become infected.

engaged class counsel to focus their time and energy on drafting administrative protocols for the waiver of Class Members' rights, a process which: (1) is certain to further unnecessary delay of the release of Class Members beyond this Court's July 17, 2020 deadline, as no agreed-upon waiver protocol has yet been presented to Class Members, their parents, or legal counsel; (2) has not been shown to comply with the existing Agreement and applicable portions of the INA; and (3) has not been shown to afford Class Members and their parents due process of law.

There has been no explanation from the Government for its decision to disregard the Court's mandate of prompt and orderly release with immediate implementation of existing safety protocols at the FRCs, in favor of advocating for the first-time implementation of a completely untested and unvetted waiver protocol during a pandemic. Any reason the Government could put forward would not outweigh the urgent requirements of public health and safety. Moreover, this waiver protocol, the terms of which are secret as of Saturday, July 18, 2020, with no input from child welfare advocates, or experts on the profound harm of separation, and over the objections of the the Plaintiff-Intervenors to the coercive and involuntary nature of any consent to separate or waiver of rights under the Agreement.

On July 17, 2020, 94 child welfare, health, and safety experts including the American Academy of Child and Adolescent Psychiatry, the Buffett Early Childhood Institute at the University of Nebraska, the Child Welfare League of America, the Children's Defense Fund,  the National Association for Children's Behavioral Health, National Association of Pediatric Nurse Practitioners, and many more organnizations signed on to a letter to ICE Acting Director Matthew Albence to call upon the Government to safely and immediately release all children together with their families from the FRCs.[5] Also, on July 17, 2020, 120 non-governmental organizations, including

---

[5] https://www.childrensdefense.org/wp-content/uploads/2020/07/Free-the-Families-and-Promote-Family-Unity-Letter.pdf

PROPOSED INTERVENORS' *EX PARTE* APPLICATION FOR LEAVE TO INTERVENE

Amnesty International, the Women's Refugee Commission, Physicians for Human Rights, National Youth Law Center and many others signed a letter signed a letter to Acting DHS Secretary Chad Wolf and Acting ICE Director Matthew Albence calling for accompanied Class Members detained at FRCs to be released with their parents, citing the dangers of COVID-19 and the harm of family separation.[6]

Separate and apart from the Agreement itself, the Government has an affirmative obligation pursuant to applicable federal regulations to evaluate the simultaneous release of the Plaintiff-Intervenors (accompanied Class Members) and their parent(s) in its discretion. *See* 8 U.S.C. § 1182(d)(5)(A) (providing for parole "for urgent humanitarian reasons or significant public benefit"); 8 C.F.R. § 1236.3(b)(2). It is clear that the Government has already decided, with no reasoned explanation, that it has no intention of exercising its discretion to release Proposed Plaintiff-Intervenors together with their parents. The Court specifically included in its June 26, 2020 Order its concern that Class Members remain detained "for arbitrary and inconsistent reasons" due to "incomplete, infrequent, and at times, inaccurate, parole determinations." June 26, 2020 Minute Order at 2. Despite the expressed concerns of the Court, independent legal and medical monitors, and Class Members themselves, the Government and class counsel remain engaged in an administrative exercise to develop a waiver protocol.

Proposed Plaintiff-Intervenors are currently awaiting the decision of United States District Court Judge James E. Boasberg sometime this week as to whether that court will order the release of the detained families together based on the Constitutional rights of the parents and their children.

Plaintiff-Intervenors have made their positions clear to both the Government and class counsel throughout the duration of this crisis. Plaintiff-Intervenors' concern tracks exactly with that of the Court's—maintaining public health and safety and ensuring that

---

[6] https://www.amnestyusa.org/press-releases/leading-ngos-call-on-ice-to-stop-family-separation/

childrens' lives are not endangered. Class Members' concerns regarding the Government's and class counsel's blind focus on developing a waiver protocol, while failing to simultaneously implement strict and stringent safety procedures at the FRCs or prompt release, have remained consistently unaddressed. It is unclear why class counsel is advocating for consent to separate the Plaintiffs-Intervenors from their accompanying parents or a waiver of their rights under the Agreement that would inevitably lead to indefinite detention in unsafe, unsanitary, and unlicensed conditions during a pandemic as the sole alternative. It is the Government's obligation to comply with the Agreement. At no time, to the Plaintiff-Intervenors knowledge or that of their counsel, has the Government considered any other avenues for it to be in compliance with the Agreement other than forcing a binary choice between family separation or exposure to COVID-19 upon them. For example, the Government could come up with a plan to transfer the Plaintiff-Intervenors and their accompanying parents to non-congregate facilities that are licensed and non-secure. The Government has had 23 years to create and develop such facilities and numerous recommendations from this Court to do so.

For the longest detained accompanied Class Members at the FRCs, the Government has had up to eleven months to come up with a solution, and even since the beginning of the pandemic, they have had five months – far in excess of the 20 days which they are permitted to detain children. They have not even tried to do so, and the Plaintiff-Intervenors should not pay the price for the Government's failure with their lives or their health.[7]

Most recently, in a filing submitted after hours on Wednesday, July 15, 2020, without consultation with or the consent of any of the accompanied Class Members

---

[7] *See Flores v. Barr,* June 26, 2020 Order [Doc. #363]("This purported lack of institutional resources to screen is no excuse for non-performance. Defendants entered into the Flores Agreement and now they do not want to perform—but want this Court to bless the breach. That is not how contracts work.")

PROPOSED INTERVENORS' *EX PARTE* APPLICATION FOR LEAVE TO INTERVENE

detained with their parents at the three FRCs, class counsel stipulated with the Government to extend the July 17, 2020 deadline for release ordered by the Court. Thus, **class counsel has sought, jointly with the Government, the extension of his own clients' detention at facilities with active COVID-19 outbreaks**. Proposed Plaintiff-Intervenors therefore request intervention for the limited purpose of ensuring that that their interests are protected, that their rights are advocated for, that orders given to preserve their lives and well-being are enforced, and that their concerns are not ignored to the detriment of their own health and safety and that of the public. The emergent nature of these warnings cannot be understated as with each update by government counsel more children, more parents, and more detention staff become infected with COVID-19.

## III.   ARGUMENT

Plaintiff-Intervenors, three accompanied Class Members detained with their parents at the three FRCs, respectfully request that the Court grant them leave to intervene so that they may: (i) protect their interests in the enforcement of the Agreement; (ii) address the adequacy of class counsel and seek appointment of co-counsel to represent the interests of accompanied Class Members detained by the Government at the FRCs; (iii) address Proposed Plaintiffs-Intervenors' request for reconsideration of the extension of the July 17, 2020 release deadline, and to address any requests for subsequent extension; and (iv) address any proposed waiver protocol.

### A.   LEGAL STANDARD

In order "to protect class members and fairly conduct the action[,]" Rule 23(d)(1)(B)(iii) expressly authorizes the Court to issue orders providing class members "the opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses or to otherwise come into the action. Rule 24 provides one such procedural vehicle for class members to address their concerns. "[M]embers of a class have a right to intervene if their interests are not adequately

represented by existing parties[.]" *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1349 (2013) (quoting Newberg on Class Actions).

Rule 24 provides that intervention may be allowed as of right or permissively; here, proposed Plaintiff-Intervenors request intervention on both grounds. The Ninth Circuit has held that a district court must grant a motion to intervene as of right pursuant to Rule 24(a)(2), "if four criteria are met: timeliness, an interest relating to the subject of the litigation, practical impairment of an interest of the party seeking intervention if intervention is not granted, and inadequate representation by the parties to the action." *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996). These factors are construed broadly in favor of intervention. *See id.*; *see also Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998); *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997); *Nw. Forest Res. Counsel v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996).[8]

Timeliness is a threshold requirement for application to intervene as a matter of right. *League of United Latin Am. Citizens*, 131 F.3d at 1302; *see also NAACP v. New York*, 413 U.S. 345, 369, 93 S. Ct. 2591, 37 L. Ed. 2d 648 (1973). If a motion to intervene is not timely, the court need not consider the other factors in denying intervention. *Washington*, 86 F.3d at 1503. The United States Supreme Court has stated that "[t]imeliness is to be determined from all the circumstances. And it is to be determined by the court in the exercise of its sound discretion; unless that discretion is abused, the court's ruling will not be disturbed on review." *NAACP v. New York*, 413 U.S. at 366.

---

[8] Moreover, Courts in this circuit approve intervention motions without a pleading where they are otherwise apprised of the grounds for the motion. *Beckman Indus., Inc., v. International Ins. Co.,* 966 F.2d 470, 474 (9th Cir. 1992); *Westcherster Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1188 (9th Cir. 2009)("the failure to comply with the Rule 24(c) requirement for a pleading is a 'purely technical' defect which does not result in the 'disregard of any substantial right.'")

In determining whether a motion to intervene is timely, the Ninth Circuit considers three factors: (1) the stage of the proceedings at the time the applicant seeks to intervene; (2) the prejudice to the other parties if the motion is granted; and (3) the reason for and length of the delay. *League of United Latin Am. Citizens*, 131 F.3d at 1302; *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984). Post-judgment motions to intervene are not necessarily untimely, and have been allowed under certain circumstances. *See United States ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1394-95 (9th Cir.1992); *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395-96, (1977). In general, post-judgment interventions are tolerated when a party with interests similar to the applicant's fails to take further action. *United States ex rel. McGough*, 967 F.2d at 1393. In *Pellegrino v. Nesbit*, the Ninth Circuit stated that "[i]ntervention should be allowed even after a final judgment where it is necessary to preserve some right which cannot otherwise be protected." *Pellegrino v. Nesbit*, 203 F.2d 463, 465 (9th Cir. 1953).

A party's interests are "practically impaired" absent a grant of intervention if they "would be substantially affected in a practical sense by the determination made in an action." Fed. R. Civ. P. 24 advisory comm. nn. (Am. 1966). This requirement "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *County of Fresno v. Andrus*, 622 F.2d 436 (9th Cir. 1980) (quoting *Nuesse v. Camp*, 385 F.2d 694 (D.C. Cir. 1967)). Intervention as of right is appropriate in order to afford affected parties the "opportunity to argue the propriety of, or limit the scope of, the injunctive relief sought by plaintiffs." *Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489, 1498 (9th Cir. 1995).

The prospective intervenor's burden to show that existing representation is inadequate is "minimal: it is sufficient to show that representation *may* be inadequate." *Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489, 1498 (9th Cir. 1995).

Even if the Court finds that the Proposed Plaintiff-Intervenors who are accompanied Class Members are not entitled to intervene as of right, they should nonetheless be permitted to intervene pursuant to Federal Rule of Civil Procedure 24(b). The Court may allow "'permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common.'" *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002) (quoting *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996)). In considering whether to grant permissive intervention, the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

## B.   INTERVENTION SHOULD BE GRANTED UNDER RULE 24(A).

### 1.   The Motion to Intervene is timely.

Timeliness with respect to motions to intervene "is a flexible concept," *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004).  The circumstances surrounding this litigation are unusual. *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843 (9th Cir. 2016). When evaluating the timeliness of a motion, the "[m]ere lapse of time alone is not determinative." *Id.* at 854 (citing *United States v. State of Oregon*, 745 F.2d 550, 552 (9th Cir. 1984)). Where a change of circumstances occurs, and that change is the "major reason" for the motion to intervene, the stage of proceedings factor should be analyzed by reference to the change in circumstances, and not the commencement of the litigation. *See id.*  In this case, the Government and class counsel have stipulated to delay implementation of the Court's orders in order to develop a protocol for accompanied Class Members to be given the "option" of forced separation from their parents, or else face imminent exposure to a deadly virus, over the objections of accompanied Class Members and in disregard of their interests. This action by the Government and counsel seeking to extend the detention of accompanied Class

Members at facilities with COVID-19 outbreaks (79 positive cases as of July 19, 2020) occurred only recently and constitutes changed circumstances. Further, the terms of any waiver protocol developed jointly by the Government and class counsel have not even been disclosed to accompanied Class Members. The proposed intervention by the accompanied Class Members detained at the FRCs is thus timely.

## 2. The Proposed Intervenors have an interest relating to the subject of the litigation.

The Plaintiff-Intervenors, accompanied children detained with their parents at the FRCs, are already Class Members and Plaintiffs. Therefore, it is clear that the Proposed Intervenors have an interest relating to the subject of the litigation and the enforcement of the Agreement (the minimal standards for the treatment of detained immigrant children by the United States government). The Proposed-Intervenors seek to intervene in the enforcement of the Agreement to ensure that their legal positions and arguments are known and articulated to the Court, to ensure that the Court has all necessary factual information, and to seek reconsideration of the Government's and class counsel's stipulation to an extension of their already impermissibly lengthy detention in congregate settings during a pandemic.

## 3. The interests of the Proposed Intervenors will be practically impaired if intervention is not granted.

Plaintiff-Intervenors' interests in enforcing the previously-issued orders from this Court and ensuring their prompt and orderly release from detention, as well as their detention in safe and sanitary conditions pending their release, will be practically impaired absent a grant of intervention. Plaintiff-Intervenors' specific arguments regarding the propriety and scope of proposed injunctive relief, actions to enforce orders of the Court, and the safeguarding of their existing rights against undue infringement, will go unheard before this Court absent a grant of intervention. This Court has found ICE to be in violation of the Agreement's requirements that Class Members may not be

detained in secure, unlicensed facilities at all three of the FRCs, even before the onset of the current crisis brought on by the pandemic. The Government's failure to comply with their responsibilities to promptly release the Plaintiff-Intervenors and to provide safe and sanitary conditions in licensed, non-secure facilities even outside of the threat brought on by COVID-19 has not been properly enforced or addressed by class counsel, who instead has unilaterally pursued an uncertain process of developing a protocol to waive their right to release under the Agreement, which Plaintiff-Intervenors aver may violate the due process and other legal rights of both parents and their Class Member children.

Current *Flores* class counsel Peter Schey, Center for Human Rights & Constitutional Law, has refused multiple requests by attorneys with the non-profits directly representing accompanied Class Members and their parents that he present their arguments to the Court that neither a consent to separate nor a waiver of accompanied Class Members' *Flores* rights not to be indefinitely detained could be *voluntary* under the coercive circumstances of the COVID-19 pandemic. Attorneys and non-profits directly representing accompanied Class Members and their parents have also repeatedly informed class counsel that consent to separation cannot be *knowing* when there is no information about the terms of the consent or waiver, much less the legal consequences of such a choice available to the decision-makers – the parents of accompanied children who are detained at the FRCs. Without the Court's order granting accompanied Class Members detained at the FRCs leave to intervene, their interests will be impaired as a practical matter as none of these positions will even be mentioned, much less argued, before the Court.

### 4. Current representation of the Plaintiff-Intervenors' interests is inadequate.

The position and interests of the Plaintiff-Intervenors, as those of all accompanied Class Members detained at the FRCs, are not currently adequately represented before

this Court with regard to the immediate and urgent issue of their unlawfully lengthy detention amid the COVID-19 pandemic. Specifically, the positions of the accompanied Class Members detained by ICE in the FRCs that are not being adequately pleaded and articulated to the Court are:

a) Plaintiff-Intervenors will seek reconsideration of the July 17, 2020 deadline, given the already excessive length of their detention and the rapidly escalating numbers of the positive COVID-19 cases at the FRCs.

The Plaintiff-Intervenors strongly object to the agreed Stipulation for a 10-day extension of the Friday, July 17, 2020 release deadline (filed after hours on Wednesday, July 15, 2020), and will seek reconsideration of that extension. *Flores* class counsel did not consult with Plaintiff-Intervenors or any other accompanied Class Members detained at the FRCs, their parents, or their counsel in agreeing to this stipulation. Further, it is abundantly clear, that during this time of extension, and indeed the period which has run subsequent to each order from this Court following the commencement of the pandemic, no party is heeding the warnings of this Court and the independent monitors by advocating and ensuring continuing and strict implementation of the *basic* health and safety policies necessary to protect accompanied children who remain languishing in the FRCs.

b) The detention of accompanied Class Members at secure, non-licensed facilities continues to violate the Flores Settlement Agreement such that no accompanied class member may be held at any of the three FRCs for any length of time, but Flores class counsel has declined multiple requests to make this argument.

As detailed above, this Court has repeatedly ordered the Government to comply with the Agreement, and has held more than once that the three FRCs do not comply with the Agreement's requirements that Class Members may be detained only in non-secure, licensed facilities. Plaintiff-Intervenors' prolonged detention in unlicensed,

PROPOSED INTERVENORS' *EX PARTE* APPLICATION FOR LEAVE TO INTERVENE

secure facilities violates Paragraphs 11 and 19 of the Agreement and its requirement that children be detained in the "least restrictive setting."

Pursuant to the Agreement, children who are determined to be a flight risk or a danger to themselves or others under Paragraph 14 may be "placed temporarily in a licensed program until such a time as release can be effected in accordance with Paragraph 14 above or until the minor's immigration proceedings are concluded, whichever occurs earlier." FSA, ¶ 19. Even under those circumstances, ICE "shall place each detained minor in the least restrictive setting appropriate to the minor's age and special needs, provided that each setting is consistent with its interests to ensure the minor's timely appearance before the [Department] and the immigration courts and to protect the minor's well-being and that of others." FSA, ¶ 11.

As noted above, in 2015, the Court determined that "according to the language of the Agreement, [ICE] must house children who are not released in a non-secure facility that is licensed by the appropriate state agency to care for dependent children." *Flores v. Johnson*, 212 F. Supp. 3d at 877. "The fact that the family residential centers cannot be licensed by an appropriate state agency simply means that, under the Agreement, Class Members cannot be housed in these facilities except as permitted by the Agreement." *Id.* In 2017, Judge Gee "once again [found] that because the family residential centers are secure, unlicensed facilities, [ICE] cannot be deemed in substantial compliance with the Agreement." *Flores v. Sessions*, 394 F. Supp. 3d at 1070.

It is undisputed that the three Family Detention Centers in Berks, Dilley, and Karnes continue to be secure and unlicensed and therefore do not comply with the Agreement. *See id.* at 1068–69 ("Defendants do not dispute that the family residential centers continue to be unlicensed"; "Defendants do not dispute that the facilities are secure"). For Plaintiff-Intervenors and all accompanied children detained at the FRCs that have never been determined to be a flight risk or a danger to themselves or others,

detention in a secure, unlicensed facility is not the "least restrictive setting appropriate to the minor's age and special needs."  FSA, ¶ 11. As a result, the Government's choice to detain Plaintiff-Intervenors at the FRCs has been and continues to be unlawful. Yet, for unknown reasons, class counsel has failed to adequately represent the interests of Plaintiff-Intervenors by seeking an injunction to prevent the Government from detaining Class Members at the FRCs and has not zealously advocated for their release based on the Government's continuing non-compliance with the orders of this Court.

      c)  Plaintiff-Intervenors doubt the validity of any waiver because there can be no voluntary consent to separate from parents under the coercive circumstances of the pandemic with active COVID-19 outbreaks at two out of the three FRCs.[9]

The attorneys at the non-profit organizations directly representing accompanied *Flores* Class Members detained at the FRCs have voiced their strong objections repeatedly and directly to *Flores* class counsel on multiple occasions to class counsel's focus on developing a waiver protocol, rather than on enforcing the existing orders, and have expressed their doubt that a "voluntary" waiver of Class Members' *Flores* rights or parental consent to separate is possible under the current, dire conditions of pandemic. Plaintiff-Intervenors are being offered the "option" of either separating from their parents, which is well-documented as causing life-long trauma or extended detention, which is also well-documented as causing life-long-trauma, in addition to exposure to a deadly virus. *See* Govindaiah Decl., ¶¶ 3-4; Exs. B, C.

      d)  Plaintiff-Intervenors object to any protocol whereby the terms and legal consequences of a waiver are completely unknown, and where counsel for accompanied Class Members will be informed after the "choice" between separation and indefinite detention is made.

---

[9] Accompanied Class Members do not concede that there can be any voluntary waiver of *Flores* rights against indefinite detention under threat of family separation or vice versa as a general, but the instant motion is focused on the extreme and urgent circumstances that exist specific to the coronavirus pandemic.

PROPOSED INTERVENORS' *EX PARTE* APPLICATION FOR LEAVE TO INTERVENE

No "knowing" consent to separate or to waive their rights under the Agreement can be given when neither counsel nor decision-makers for accompanied Class Members have been provided with any information whatsoever as to the legal consequences of that choice. The non-profits providing direct representation to accompanied Class Members and their parents are not in any position to advise them properly. Counsel for the Plaintiff-Intervenors have received no information from either the Government or class counsel regarding the terms and/or the legal consequences of any purported waiver. Moreover, class counsel, in a telephone call update, stated that it was unclear whether parents would be able to consult with counsel, would meet with ICE alone/unrepresented, and that ICE would advise counsel for the accompanied Class Members of the parents' "choice" after the parents make their decision.

## C.    INTERVENTION SHOULD BE GRANTED UNDER RULE 24(B).

The standard for permissive intervention is easily satisfied here, as all that is required is "a common question of law or fact."   *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002).  Proposed Plaintiff-Intervenors do not raise any novel or additional questions of law and fact.  Rather, they seek to protect the substantive rights of all Class Members under the Agreement and ensure that the Government comply with the Court's order to release all Class Members with all deliberate speed and implement increased protections from COVID-19. Where, as here, current class counsel has ignored the objections of the Proposed Plaintiff-Intervenors and failed to adequately advocate on their behalf, permissive intervention is appropriate. *Newberg on Class Actions* § 9:36 (5th ed., 2020) (observing that courts are more amenable to permissive intervention "when intervention would strengthen the adequacy of the representation.").

## IV.    CONCLUSION

For all the foregoing reasons, Proposed Plaintiff-Intervenors, B.L.N, D.F.L.G. and W.B., accompanied Class Members detained with their parents at the three Family

Residential Centers respectfully request that this Court enter the Proposed Order submitted herewith, which will grant them leave to intervene so as to: (i) protect their interests in the enforcement of the Agreement; (ii) address the adequacy of class counsel and appointment of co-counsel to represent the interests of accompanied Class Members detained by the Government at the FRCs; (iii) address Proposed Plaintiffs-Intervenors' request for reconsideration of the extension of the July 17, 2020 release deadline, and to address any request for any extension; and (iv) address any proposed waiver protocol; and that the Court grant such other and further relief as it may deem just and proper.

Respectfully submitted,

Dated:  July 20, 2020

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Michael J. Stortz
Brett M. Manisco

**REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES**
Manoj Govindaiah (*Pro Hac Pending*)

**ALDEA – THE PEOPLE'S JUSTICE CENTER**
Bridget Cambria (*Pro Hac Pending*)

By_____*/s/ Michael J. Stortz*_____
        Michael J. Stortz
        Attorneys for Plaintiff-Intervenors
        B.L.N., D.F.L.G., and W.B.

PROPOSED INTERVENORS' *EX PARTE* APPLICATION FOR LEAVE TO INTERVENE