CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Peter A. Schey (Cal. Bar No. 58232)
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Facsimile: (213) 386-9484
Email:pschey@centerforhumanrights.org
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM BARR, Attorney General of the United States, *et al.*,<br><br>Defendants. | Case No. CV 85-4544-DMG-AGRx<br><br>**PLAINTIFFS' RESPONSE TO EX PARTE APPLICATION RE INTERVENTION**<br><br>Hearing: None<br>[HON. DOLLY M. GEE] |

/ / /

*Plaintiffs' counsel continued*:

UNIVERSITY OF SAN FRANCISCO
SCHOOL OF LAW
IMMIGRATION CLINIC
Bill Ong Hing (Cal. Bar No. 61513)
2130 Fulton Street
San Francisco, CA 94117-1080
Telephone: (415) 422-4475
Email: bhing@usfca.edu

LA RAZA CENTRO LEGAL, INC.
Stephen Rosenbaum (Cal. Bar No. 98634)
474 Valencia Street, #295
San Francisco, CA 94103
Telephone: (415) 575-3500
Email: srosenbaum@law.berkeley.edu

/ / /

## TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. BACKGROUND REGARDING INTERVENORS OPPORTUNITY FOR INPUT REGARDING AN ICE PROTOCOL. ........ 6

III. THE PROPOSED INTERVENORS' POSITION ........ 8

IV. CONCLUSION ........ 11

/ / /

# I. INTRODUCTION

Plaintiffs do not believe intervention is justified on the ground that Class Members are not adequately represented by Plaintiffs' counsel. The history of the litigation makes this clear. Plaintiffs have won numerous decisions enforcing the terms of the Settlement and successfully opposed several efforts by Defendants to terminate the Settlement.[1] If intervention is granted, it may not be based upon the adequacy of representation of the class.

Plaintiffs believe that the positions of the proposed Intervenors should be fully considered by the parties, the Special Master/Independent Monitor, and the Court. To that end, they have no objection to the Court briefly deferring issuing an Order adopting a protocol for parents to exercise their children's release rights so

---

[1] *See, e.g.,* Order, July 24, 2015, ECF No. 177 (finding Defendants in breach of the Flores Settlement for their blanket no release policy for accompanied minors); Order, Aug. 21, 2015, ECF No. 189 (ordering Defendants to correct several outstanding noncompliance issues related to processing Class Members in their custody for release); Order, Jan. 20, 2017, ECF No. 318 (finding Defendants in breach of the *Flores* Settlement by not providing Class Members in their custody with bond hearings); Order, June 27, 2017, ECF No. 363 (finding Defendants in breach of the Flores Settlement by failing to provide safe and sanitary conditions for Class Members in CBP and ICE custody); Order, July 9, 2018, ECF No. 455 (denying Defendants' motion to modify the Settlement); Order, July 30, 2018, ECF No. 470 (finding Defendants breached the Settlement by improperly medicating and transferring Class Members in ORR custody to secure facilities); Order, Oct. 5, 2018, ECF No. 494 (appointing a Special Monitor to monitor Defendants' compliance with the Settlement); Order, Sep. 27, 2019, ECF No. 688 (blocking Defendants' from implementing regulations that are inconsistent with the Settlement); Order, Mar. 28, 2020, ECF No. 740; Order, Apr. 24, 2020, ECF No. 784; Order, May 22, 2020, ECF No. 799; Order, June 26, 2020, ECF No. 833. *See also Flores v. Lynch*, 828 F.3d 898 (9th Cir. 2016) (finding the Settlement applies to accompanied minors but not their parents); *Flores v. Sessions*, 862 F.3d 863 (9th Cir. 2017) (affirming the right of Class Members to bond hearings under the Settlement); *Flores v. Barr*, 934 F.3d 910 (9th Cir. 2019) (affirming this Court's order that Defendant's provide specific hygiene supplies and improved sleeping conditions and finding these requirements did not modify the terms of the Settlement)

the *amici*/proposed Intervenors can have full input into the meet and confer process and share their views with the parties, the Special Master, and if necessary the Court.

As discussed *infra*, the proposed Intervenors have *frequently* met and conferred with Plaintiffs' counsel and the Special Master whenever they wished to do so and are free to continue doing so. They have also repeatedly expressed their views in their declarations filed by Plaintiffs and in their capacity as *amici* parties, and may continue to do so.

If the three proposed Intervenors possess *Flores* rights not being honored by ICE, or adequately litigated by Plaintiffs, or satisfactorily addressed by this Court, they may also seek individual judicial review in a federal district court under Paragraph 24B and Exhibit 6 of the FSA.[2]

The proposed Intervenors' Application reviews in some detail several but not all of the Orders the Court has issued since 2015 in response to successful enforcement motions brought by Plaintiffs' counsel. Application at 2-8. [Doc. # 854]. This partial recitation of the multiple Orders Plaintiffs' counsel have obtained and appeals they have won hardly indicates that Plaintiffs' counsel are inadequately representing the class. *See* footnote 1, *supra*.

Most recently, in light of the COVID-19 pandemic, Plaintiffs filed an emergency application for class relief on March 24, 2020, and since that date, at Plaintiffs' request, the Court has issued several remedial Orders on March 28, 2020 [Doc. # 740], April 24, 2020 [Doc.# 784], May 22,2020 [Doc.# 799], and June 26,

---

[2] Paragraph 24B provides: "Any minor who disagrees with the INS's determination to place that minor in a particular type of facility, or who asserts that the licensed program in which he or she has been placed does not comply with the standards set forth in Exhibit l attached hereto, may seek judicial review in any United States District Court with jurisdiction and venue over the matter to challenge that placement determination or to allege noncompliance with the standards set forth in Exhibit 1. In such an action, the United States District Court shall be limited to entering an order solely affecting the individual claims of the minor bringing the action."

2020. [Doc.# 833].

The proposed Intervenors' Application argues in favor of a policy or court Orders that would result in the release of parents with their class member children. Application at 10-11. Plaintiffs have unsuccessfully sought release of parents with their children. This Court and the Court of Appeals have made clear that the *Flores* Settlement confers no release rights on parents.

Since at least 2015, this Court and the Court of Appeals have also made clear that the *Flores* Settlement extends conditions and release rights to both unaccompanied and accompanied children. Also since at least 2015, this Court has made clear, with the parties' agreement, that the *Flores* Settlement does not require or permit the release of accompanied children *over the objection of their accompanying parents*. In short, under Paragraph 14 of the Settlement, accompanying children, unless they are a flight risk or a danger, have the right to be released to relatives or a licensed group home *if that is what their accompanying parent believes is in their child's best interest*.

By way of context, until relatively recently, Defendants achieved substantial compliance with the terms of the Settlement by promptly conducting credible fear interviews, finding that about 90% of parents possessed a credible fear of persecution in their home countries, and then relatively promptly releasing parents with their Class Member children.

Under the present Administration, that has changed and Plaintiffs understand now only about 10% of parents are found to possess a credible fear of persecution in their home countries, leaving the vast majority of parents and Class Members detained for long periods of time while seeking review of the denial of their credible fear claims.

At the same time, unlike the Office of Refugee Resettlement (ORR) which has developed and adopted procedures to comply with the release provisions of the Settlement and the TVPRA, ICE, having previously accomplished substantial compliance by relatively promptly releasing about 90% of families together,

developed no procedures to inform parents about their children's *Flores* rights, or to assess family members identified by parents to whom they may want their children released. Nor did it develop written procedures to promptly release children to approved sponsors.

When ICE recently confronted parents and demanded that they make immediate decisions about the release of children with no time to consult with their families or their attorneys, counsel for the *amici*/proposed Intervenors filed declarations with the Court strongly criticizing the procedures followed by ICE. In response to those declarations, on June 26, 2020, the Court ordered as follows:

> The parties shall file another joint status report by July 8, 2020, regarding the adoption and implementation of proper written advisals and other protocols to inform detained guardians/parents about minors' rights under the FSA and obtain information regarding, and procedures for placement with, available and suitable sponsors....

Order Re Updated Juvenile Coordinator Reports at 6 [Doc. # 333].[3]

The Court's interest in having a fair notice of rights and a protocol to obtain information regarding, and procedures for placement with, available and suitable sponsors, was unquestionably driven by the proposed Intervenors' lawyers' detailed declarations leading the Court to conclude that "ICE did not seek or obtain formal waivers from detained parents of their children's Flores rights during ICE officers' conversations with detained parents on or about May 15, 2020, [and] those conversations caused confusion and unnecessary emotional upheaval and did not appear to serve the agency's legitimate purpose of making continuous

---

[3] To provide further guidance to the parties, the Court clarified that any waiver should be only as narrow as the issue being waived. For example, a parent/guardian may waive a Class Member's *Flores* right to release "without unnecessary delay" to an available suitable custodian in the order of preference listed in Paragraph 14, without waiving any of the Class Member's other *Flores* rights. *Id*. *Citing* FSA at ¶ 14. [Doc. # 101].

individualized inquiries regarding efforts to release minors." Order of May 22, 2020, at 2.[Doc. # 799].

Now, in a *volte face*, the *amici*/proposed Intervenors' counsel appear to not want the Court to order any changes in how ICE informs parents of their children's rights or in the steps ICE takes to implement a parent's decision that they wish to have their child released.

Plaintiffs' counsel have consistently sought and obtained input from a wide range of stakeholders involved with the detention of immigrant children and have filed with the Court *numerous* declarations by advocates representing families at the FRCs and child welfare and pandemic experts regarding the harms faced by Class Members subject to congregate settings.[4]

This Court has repeatedly considered, cited, and relied upon the declarations executed by counsel for the *amici*/proposed Intervenors, whether filed by Plaintiffs' counsel, or, more recently, filed directly by the proposed Intervenors' counsel in their capacity as *amici* parties. *See, e.g*. Order at 3 [Doc. # 833]; Order of May 22, 2020, at 2 [Doc. # 799]; Order of April 24, 2020, at 6-7. [Doc. # 784].

As the Court knows, since March 2020, Plaintiffs have also vigorously and successfully challenged a variety of reasons ICE provided for determining that Class Members were allegedly *not* eligible for release because they were deemed flight risks. *See, e.g*., Order of April 24, 2020, at 15-18 [Doc. # 784]; Order May 22, 2020 at 2 [Doc. # 799].

The Court's orders issued at Plaintiffs' request commencing in March 2020 have had a positive impact on Class Members detained by ORR and ICE. There were 648 Class Members detained by ICE in FRCs as of March 28, 2020, about half that number, 342 Class Members, detained as of April 21, 2020, and 185 Class Members detained as of May 15, 2020. Order at n. 1. [Doc. # 833].

---

[4] At various stages of the litigation Plaintiffs have also consented to the participation of numerous *amici* parties who are all free to file briefs expressing their positions to the Court.

Neither Plaintiffs' advocacy nor the Court's remedial orders have been as meaningless as the proposed Intervenor's believe.[5]

## II. BACKGROUND REGARDING INTERVENORS' OPPORTUNITY FOR INPUT REGARDING AN ICE PROTOCOL.

In the period March to May, 2020, Plaintiffs' counsel and proposed Intervenors' counsel had numerous telephonic meetings and exchanged frequent written correspondence discussing the pending motions, the Juvenile Coordinator reports, Defendants' briefs, and the Court's various Orders. As noted above, Plaintiffs routinely filed declarations and numerous exhibits provided by the *amici*/proposed Intervenor's counsel of record with ICE.

On June 12, 2020, a conference call was held with the proposed Intervenors' counsel of record at which time they expressed their opposition to the development of any protocol for ICE to follow relating to compliance with Paragraph 14. Their position, expressed again in their *amici* brief, was that parents should not be required to make a binary choice between keeping their children with them or having their children released to relatives. Instead, parents should be released with their children.

*Plaintiffs obviously support the release of families together* and have attempted to achieve that result in this litigation as well as through administrative and legislative advocacy. The one time this Court *mildly* ordered the parents' release under existing laws and regulations, even that little was reversed by the Court of Appeals.

Following the June 12, 2020, conference call with the proposed Intervenors' counsel, they sent correspondence advising Plaintiffs' counsel that "[t]o the extent

---

[5] The Government's Response in Opposition to Proposed Intervenors' Ex Parte Application [Doc. # 872] cynically seizes upon the proposed intervention to argue that the Settlement's benefits conferred on accompanied children should be entirely terminated. If the Government is serious, it is free to file its third motion to terminate accompanied class members' rights. Its previous efforts have been unsuccessful and there are no new circumstances likely to lead to a different result.

Judge Gee believes a waiver paradigm is the only path forward, we nonetheless believe you should … fight against this momentum. Your participation in developing a waiver process … directly conflicts with the interests of Class Members." Exhibit 1 at 1. They further communicated that they wished to have no input into the discussions regarding development of an ICE protocol. *Id.* They wrote that Plaintiffs' counsel should "[p]lace the burden of developing a 'waiver' process on the government (preserving future litigation angles and avenues for strategic objection)." *Id.*[6]

Plaintiffs responded:

> The Court has made clear since 2016 that it won't Order the release of a child who a parent does not wish to have released. The proposed Order you shared *would require that ICE release all children within 72 hours regardless of what a parent wants.* That's not what the settlement contemplates and no court has ever interpreted the settlement to force ICE to release children when an accompanying parent does not want their child separated from the parent. We support the immediate release of all detained children as you propose, but only if the child's parent wants their child released.

Exhibit 2 at 3. [Emphasis in original].

On the following day, June 17, 2020, counsel for the proposed Intervenors informed Plaintiffs'counsel that Plaintiffs did *not* have consent to file their declarations responding to the most recent Juvenile Coordinator's report unless Plaintiffs agreed (i) to the proposed Intervenors' counsels' proposed Order requiring the release of all children within 72 hours without requiring parental

[6] The proposed Intervenors' counsel stated that if Plaintiffs wished to file their May 2020 declarations responding to the Juvenile Coordinator's report, Plaintiffs had to agree not to meet and confer with the Government regarding a protocol as ordered by the Court, and to propose that the Court immediately Order the release of all children within 72 hours without mention of any informed consent by their parents. *Id* at 2.

consent, (ii) agreed not to make any argument that mentions waiver (or assertion) of *Flores* rights, and (iii) that Plaintiffs had to advise the Court using their quoted language that "[a]ny question as to how the government complies with [the] Court's order[s] is for the government, not Plaintiff's counsel or this Court, to decide …" Ex. 3 at 1.

Recognizing that their proposed Order could result in the separation of children from their parents without the parents' consent, on June 17, 2020, counsel for the proposed Intervenors informed Plaintiffs that "[t]he [Intervenor's] proposed order requires release of the child … The government can decide if it wishes to separate. If it does, there is other litigation beyond Judge Gee's scope (new and old) that the government will need to deal with. This order makes it clear - if the government separates, it's because it chooses to … Should the government attempt separation - we'll be ready." Exhibit 4.

Plaintiffs declined to submit a proposed Order that could be read by ICE to require the immediate release of Class Members without first determining whether their parents believed release was in the best interest of their children. Plaintiffs also declined not to engage in a meet and confer with the Government as ordered by the Court to explore development of a protocol to assess what parents believe is in the best interest of their children with regards release.

## III. THE PROPOSED INTERVENORS' POSITION

The proposed Intervenors explain that on July 17, 2020, 94 child welfare, health, and safety experts signed a letter to ICE to call upon the Government to safely and immediately release all children together with their families from the FRCs. Application at 11. Plaintiffs fully support that effort and, like the proposed Intervenors, strongly believe ICE *should* promptly release families together.

Plaintiffs also agree with the proposed Intervenors that the Government has an "affirmative obligation pursuant to applicable federal regulations to evaluate the simultaneous release of the Plaintiff-Intervenors (accompanied Class Members) and their parent(s) in its discretion." *Id*. at 12. However, since parents are not parties in

this action, if ICE somehow violates its obligations under applicable federal regulations to evaluate the release of parents, that is something the proposed Intervenors' counsel should litigate in a separate action.

At the time they filed their Application to intervene, the proposed Intervenors were awaiting a decision from United States District Court Judge James E. Boasberg which they expected "sometime this week" regarding release of the detained families "together based on the Constitutional rights of the parents and their children." Application at 12. Yesterday, Judge Boasberg issued a 26-page decision denying the proposed Intervenors' counsel's motion for a preliminary injunction requiring the release of parents with their children. *OMG v. Wolf*, Memorandum Opinion (July 22, 2020). [Doc. # 98].[7]

The three proposed Intervenors also argue that they wish to intervene so that they may "seek reconsideration of the Government's and class counsel's stipulation to an extension" of time to complete their meet and confer and submit a joint report, and for ICE to release Class Members whose parents want their children released, a request the Court approved on July 16, 2020. [Doc. ## 850 and 851]. Application at 14 and 17. *This simply delays by several days the Court's possible adoption of a protocol the proposed Intervenors say they are opposed to being issued in the first place.*

At no time since the issuance of the Court's first Order on March 28, 2020,

[7] Unlike the proposed Intervenors who appear to believe that this Court has ordered the release of children regardless of what their parents want, Judge Boasberg accurately describes this Court's Order: "The [*Flores* June 26, 2020] order recognizes that a child's parent(s) may choose not to have the child released from detention — *e.g.*, if a suitable guardian is not available — in effect waiving the child's rights under the FSA … Absent a further order requiring the release of adult detainees from the FRCs, then, parents face a difficult choice: release their children to sponsors for an unknown amount of time, or keep their children with them in conditions that Petitioners fear are dangerous." *Id*. at 6. Regarding conditions at the FRCs, Judge Boasberg discusses at length the evidence in this case and the declarations of the proposed Intervenor's counsel. *Id*. at 9-12.

requiring the release of accompanied children, have counsel for the proposed three Intervenors informed ICE, the Plaintiffs, or the Court that their parents (or any other parents) wish to have their child released to a family member under Paragraph 14 of the FSA. Had they done so, and had ICE failed to promptly take steps aimed at the release of the proposed Intervenors, Plaintiffs and most likely this Court would have immediately intervened to ensure that the child was promptly released to a caregiver willing and capable to safely care for the child.[8]

In short, the proposed Intervenors at any time before or after the entry of this Court's Orders commencing March 28, 2020, could have but seemingly have not sought release from ICE custody, other than as a family unit. *Their detention is caused by the confluence of Defendants' decision not to release their parents, and their parents' decision, made in consultation with their counsel, not to request the release of the proposed Intervenors*. Their detention has *nothing* to do with a brief extension to file a joint status report with the parties' positions on a protocol the three Intervenors don't believe should be adopted.

The proposed Intervenors also argue in favor of intervention "to ensure that the Court has all necessary factual information" needed to enforce the Settlement. Application at 17. The three proposed Intervenors are represented by counsel who have routinely filed lengthy declarations with this Court, including most recently with their *amici* brief. The proposed Intervenors do not explain why they need to intervene in order to share their counsel's declarations or other exhibits with the Court. Plaintiffs have routinely filed their declarations with the Court.

Finally the proposed Intervenors argue they must be granted intervenor status "to ensure that their legal positions and arguments are known and articulated to the Court, …" *Id*.

In the past, the proposed Intervenors' counsel have repeatedly made their

[8] As the proposed Intervenors' counsel know, with or without a protocol, ICE was and remains obligated to release the proposed Intervenors without unnecessary delay if they are not flight risks or a danger, and if their parents designated an appropriate family member to whom they want their child released.

positions known to Plaintiffs, Defendants, the Special Master, the media, and the Court in detailed correspondence and in declarations filed with the Court addressing all aspects of the Settlement and the Court's prior Orders they believe ICE has violated. They did so again in great detail in their recently filed *amici* brief. [Doc. # 831].

Their main point appears to be this: "In this case, the Government and class counsel have stipulated to delay implementation of the Court's orders in order to develop a protocol for accompanied Class Members to be given the 'option' of forced separation from their parents, or else face imminent exposure to a deadly virus …." Application at 16.

However, as noted above, it is inaccurate to state that "the Government and class counsel have stipulated to delay implementation of the Court's orders …" The brief stipulation approved by the Court extends by a few days the submission of a joint report about what a protocol may include and extends the deadline for ICE to release any child whose parent has requested the child's release. The proposed Intervenors' parents have not sought the proposed Intervenors' release.

The proposed Intervenors or their counsel also appear to misapprehend the purpose of the protocol the Court ordered the parties to meet and confer about. Nowhere has the Court ever stated or implied that it wanted the parties to develop a proposed protocol to create an "'option' of forced separation [of Class Members] from their parents … " Application at 16. Neither the Court nor the parties have ever contemplated a protocol or procedures that would "force[ ]" the separation of Class Members from their parents.

## IV. CONCLUSION

As stated above, Plaintiffs do not believe intervention is justified on the ground that Class Members are not adequately represented by Plaintiffs' counsel. The history of the litigation makes this clear.

Nevertheless, Plaintiffs have always supported and continue to support the goal of the proposed Intervenors to have their positions considered by the parties,

the Special Master, and this Court. While the proposed Intervenors complain that they have had no input into the discussions concerning the protocol, *even though they were invited to do so and rejected the invitation in writing*, Plaintiffs see no harm in the Court briefly deferring issuing any Order adopting a protocol so that the proposed Intervenors can join further meet and confers with the parties and/or the Special Master regarding the necessity for or content of any protocol.

Alternatively, the Court could order the Special Master to again meet and confer with the proposed Intervenor's counsel to obtain their positions on the protocol or any other concerns they may have and then report to the Court.

Alternatively, the proposed Intervenors may respond to the protocol issue or any other issue of concern in their capacity as *amici* parties.

Alternatively, as many other class members have done, if the proposed Intervenors believe they possess claims not being adequately addressed by Plaintiffs or by this Court, they are free to bring individual actions to review their custody status under the terms of Paragraph 24B of the FSA.

Alternatively, the proposed Intervenors are free to appeal Judge Boasberg's decision denying the immediate release of the families the proposed Intervenors' counsel represent, or to file individual habeas corpus actions seeking parents' release.

Plaintiffs leave it to the Court to determine whether and if so how it wishes to extend to the proposed Intervenors the opportunity to have their positions expressed and considered.

However, to the extent the proposed Intervenors rely on the alleged inadequacy of representation of the class to achieve intervention, that much is unsupported by the record in this case, and should not be relied upon as the basis for granting intervention.[9]

/ / /

[9] *See* footnote 1, *supra.*

Dated: July 23, 2020.

CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW
Peter A. Schey

*/s/ Peter Schey*
Peter A. Schey
*Attorneys for Plaintiffs*

/ / /

CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2020, I served the foregoing

**PLAINTIFFS' RESPONSE TO EX PARTE APPLICATION RE INTERVENTION**

on all counsel of record by means of the District Clerk's CM/ECF electronic filing system.

/s/ *Peter Schey*
PETER SCHEY
Center for Human Rights and Constitutional Law

Attorney for Plaintiffs