# Exhibit 1



Peter Schey <pschey@centerforhumanrights.org>

---

## Proposed Order and Request for Confirmation Regarding Litigation Strategy
3 messages

---

**Shalyn Fluharty** <shay@caraprobono.org>　　　　　　　　　　　　　　　　　　　　　Mon, Jun 15, 2020 at 8:50 PM
To: Peter Schey <pschey@centerforhumanrights.org>, Javier Hidalgo <javier.hidalgo@raicestexas.org>, Stephanie Alvarez-Jones <stephanie@caraprobono.org>, Andrea Meza <andrea.meza@raicestexas.org>, Bridget Cambria <bridget.cambria@cambriaklinelaw.com>, Holly S Cooper <hscooper@ucdavis.edu>, Neha Desai <ndesai@youthlaw.org>

Hello Peter -

Thank you for speaking with us last Friday. As we mentioned during our call, the Class Members and parents we represent have unequivocally informed us that family separation is contrary to their interests. A waiver process equates to the elimination of Flores rights for accompanied children; Class Members and their parents will never choose separation, and as a result, will categorically face indefinite detention.

As class counsel, you have a duty to zealously protect the rights of Class Members. To the extent Judge Gee believes a waiver paradigm is the only path forward, we nonetheless believe you should thoughtfully and creatively fight against this momentum. Your participation in developing a waiver process - for example, by drafting proposed waiver language and submitting it to the court - directly conflicts with the interests of Class Members. For this very reason, we do not believe we can ethically assist you in any efforts to perfect or implement the use of waivers.

We instead urge you to:

(1) Request the immediate release of all children currently detained at an FRC;

(2) Argue that *at this time* a waiver process - regardless of the process or language used - is coercive because: (a) facilities remain secure and unlicensed, (b) all children have been detained for well over 20 days, (c) facilities remain unsafe and unsanitary (in large part, due to negligent medical care), and (d) there is pandemic (with recent outbreaks in Pearsall, sharp increases in contagion in the regions in which families are detained, and a recent confirmed COVID-19 case for a family upon release from Dilley);

(3) Place the burden of developing a "waiver" process on the government (preserving future litigation angles and avenues for strategic objection); and

(4) Abstain from submitting a proposed order or any other document to expedite and solidify a "waiver" process, **especially before the next hearing.**

We have attached a proposed order calling for the release of Class Members and hope it will be a useful starting place. Please let us know what you think. Please also let us know whether you are able to commit to each of the requests enumerated above.

If you can commit to all four of the above requests, we would like to support you in your advocacy efforts however we can. Our review of the government's unredacted filing reveals the government's information is factually inaccurate and misrepresentative. We are happy to provide you with declarations that detail the government's mistruths tomorrow morning if you are able to confirm your agreement to proceed as detailed above.

We also want to document our perspective on the use of waivers, which we have shared with you over many months by phone and email. We believe a waiver process cannot be knowing or voluntary, and that family separation in this context is unconstitutional. This firm conviction aside, we believe an attempted waiver process must be highly nuanced. Key questions must be answered before a waiver can be knowing. Many critical questions remain unanswered, including:

- Will children go to ORR custody;
- Will children be placed in 240 proceedings;

Exhibit 1
Page 1

- Will parental rights be terminated;
- Will receiving guardians receive the rights of guardianship;
- Will parents and/or children be appointed counsel;
- Who will speak on behalf of an asylum-seeking child in 240 proceedings;
- Will receiving persons be subjected to interviews, finger-prints and home studies;
- how long will the reunification process take;
- Who will fly children to sponsors and who will pay for it;
- Will parents be deported with their children;
- Who gets to decide if separation should occur - parents, children, or both?;
- In what circumstances will Child Advocates be appointed;
- Will children receive the benefits of UC protections (for example, jurisdiction with USCIS in their asylum application while in removal proceedings); and
- Will separated children receive additional social services, such as social worker prior to release.

These are a few of the many lingering questions that must be answered before a waiver can be knowing and voluntary. If the undertow is dragging us towards waiver, the process should not be rushed and the government must establish the infrastructure necessary to utilize a waiver mechanism *before* the waiver process is implemented.

We disagree with you that a streamlined release process is in the best interests of accompanied children. Unlike unaccompanied children, accompanied children do not arrive to the US with viable sponsor options. In most circumstances, there is no sponsor available and willing to care for the child if the child arrives without their parent. In many circumstances, a families' designated receiving person has agreed to a temporary arrangement, not to serve as the sole and permanent custodian for a child. Many times a parent does not know all - and sometimes any - of the adults in the receiving person's home. In these circumstances, parents *want* a sponsor to have a home study, fingerprints, and interviews with social workers *before the* release occurs. Without this additional information, a parent is unable to make an informed decision to transfer the care and custody of their child to another adult.

In addition to our belief that a thorough vetting process is necessary to ensure the safety of separated accompanied children, we believe advocating for the establishment of an infrastructure that mirrors the child welfare system is a meaningful litigation strategy. When the government takes children from their parents in the child welfare system, the child and parent are appointed counsel, the family receives social support services, and an independent state court judge oversees the proceedings. Guardian ad litems are also appointed. These procedural protections are equally necessary here. Should the government wish to go down this path, we believe this expensive infrastructure is needed and legally required.

The government was ordered to put this infrastructure in place in 2017. It has failed to do so. The government's delay cannot justify the ongoing detention of children during a pandemic. Rather, the court should release all children currently detained in FRCs until the government has designed and fully implemented a process laced with critical procedural protections in a world in which it complies with the other baseline requirements of the FSA: licensed unsecure facilities, individualized assessments regarding flight risk and danger, and safe and sanitary conditions.

Lastly, in response to your other invitations to collaborate on a FOIA request and on additional motions to enforce to spotlight licensing and/or medical care, we would be happy to think through these longer-term strategies once we pass the next filing deadline.

All my best,

Shay

---

**June 16 2020 Proposed Order.docx**
52K

Exhibit 1
Page 2