# Exhibit 2

**Peter Schey** <pschey@centerforhumanrights.org>                    Tue, Jun 16, 2020 at 2:15 AM
To: Shalyn Fluharty <shay@caraprobono.org>
Cc: Javier Hidalgo <javier.hidalgo@raicestexas.org>, Stephanie Alvarez-Jones <stephanie@caraprobono.org>, Andrea Meza <andrea.meza@raicestexas.org>, Bridget Cambria <bridget.cambria@cambriaklinelaw.com>, Holly S Cooper <hscooper@ucdavis.edu>, Neha Desai <ndesai@youthlaw.org>

Hi Shay et al.

Exhibit 2
Page 3

Thanks for the email and draft proposed Order.

1. "(1) Request the immediate release of all children currently detained at an FRC"
The Court has made clear since 2016 that it won't Order the release of a child who a parent does not wish to have released. The proposed Order you shared _would require that ICE release all children within 72 hours regardless of what a parent wants._ That's not what the settlement contemplates and no court has ever interpreted the settlement to force ICE to release children when an accompanying parent does not want their child separated from the parent. We support the immediate release of all detained children as you propose, but only if the child's parent wants their child released.

2. "Argue that at this time a waiver process - regardless of the process or language used - is coercive."
Any decision is taking place in a coercive environment. Do I stay detained and appeal a negative CFI? Do I join a stay request to a court and remain in detention with my child for many more months? Do I leave my home country and embark on a dangerous journey? Parents are not being coerced to make any particular decision under Flores. _They can make no decision_. No one is going to coerce them to say they want their child released. ICE would probably prefer the parent makes no decision since no decision means ICE doesn't have to release the child, or its second choice would be that the parent decides to keep their child in detention so ICE doesn't have to vet any proposed sponsors.

3. "Place the burden of developing a "waiver" process on the government (preserving future litigation angles and avenues for strategic objection)". In response to your declaration about how coercive ICE was when it suddenly a few weeks ago asked all parents to suddenly decide what they wanted to do without access to counsel, the Court ordered the parties to meet and confer and the report to the Court about a protocol to address a child's right to release and a "proper" waiver procedure. ICE already has a proposed protocol/waiver which it will argue should become the Court's Order. If we don't propose how we think the process should work, the Court will most likely simply adopt ICE's proposal. The Court has ordered the parties to meet and confer. That means to share their respective positions and narrow the issues the court has to address. Obviously we cannot just disagree with the details of what the Government has proposed without saying what we think the process should look like. There is no way this will be worked out before the next hearing but nor can it be delayed indefinitely.

Regarding your questions. Some of your questions deal with issues the Court likely wants the parties to discuss and exchange their ideas on before it formulates its Orders. Other questions you listed don't relate to the Flores settlement and so probably are not issues the Court will address.

1. Will children go to ORR custody?
Do you think they should go to ORR? We do not believe they should but open to discussing this.

2. Will children be placed in 240 proceedings?
Do you think it would benefit children if instead of being in expedited removal they were placed in 240 proceedings? We think an argument can be made that if a child is released to a close relative, other than to a parent not in custody, the child could be placed in 240 proceedings rather than remain in expedited removal.This argument would be based on the TVPRA, not the Flores settlement. So this is likely an issue Judge Gee will not decide.

3. Will parental rights be terminated?
Do you think parental rights should be terminated?
We do not believe they should be or would be terminated. Nothing in Flores would support termination of parental rights.

4. Will receiving guardians receive the rights of guardianship?
If a parent wants a guardian appointed for their child, and a state court grants a relative guardian status, then that relative would receive the rights of guardianship. This is not something likely controlled by the Flores settlement.

5. Will parents and/or children be appointed counsel?
Nothing in Flores requires appointment of counsel and we wouldn't want ICE to have that power anyway. Every parent has the right to consult with counsel before deciding what they want to do _about any aspect of their detention_ (e.g. do they want to join a stay and stay in custody for several more months, do they want to apply for withholding andor CAT, do they want to have an IJ review a denial of CF, do they want to seek bond, do they want to seek release on parole, etc.). For all these decisions there is no appointed counsel but parents clearly have the right to consult with counsel. However, an Order can require full access to counsel and full opportunity to consult with counsel before any Flores decision is made by a parent.

Exhibit 2
Page 4

6. Who will speak on behalf of an asylum-seeking child in 240 proceedings?

240 proceedings would may be far preferable to expedited removal proceedings but whether a child is even placed in 240 proceedings or remains in expedited removal is not something the Flores settlement controls. You have pointed out that no or very few parents will want their children released. Those who are released may be represented by a program funded to provide representation for minors or an attorney retained by the family, same as children in ICE custody. Attorneys representing children in family detention and attorneys representing children released from family detention will likely consult with parents to see what claims or defenses they wish to raise or not raise.

7. Will receiving persons be subjected to interviews, finger-prints and home studies?

What are your ideas on this? We think when a parent selects a relative who they want their child released to there is less need to engage in same range of vetting than when the child or ORR is making the choice because the child is unaccompanied. A balance must be struck between a parent's choice and avoiding release to a relative a parent has selected but who is unable to provide the child a safe home. This should include interviews, affidavits of support, background checks, etc. If there is a legitimate question about a relative's ability to care for a child then a home study may be required. .

8. how long will the reunification process take?

It depends on how much vetting of a relative selected by a parent is undertaken. The ORR process for example can be done in a week or in two months. Depends on the steps adopted to vet the relatives and the extent to which the relative can promptly respond to requests for information. On average I think couple of weeks should be sufficient time to vet a relative.

9. Who will fly children to sponsors and who will pay for it?

Who do you think should transport minors?

We think parents should decide who will transport their children. An argument can be made that. ICE should pay for transportation and accompany the child to the sponsor's residence if that's what a parent wants, though they will likely oppose this.

10., Will parents be deported with their children?

We think this is up to the parent. Children not released are almost always deported with their parents. Released children will have separate removal hearings much delayed because of backlogs. But if. a parent wanted the child deported or simply returned to their home country, this should be the parent's decision. This is probably not something the Flores settlement controls. Its a parent's choice.

11. Who gets to decide if separation should occur - parents, children, or both?;

How do you think this should be approached?

We believe its a parent who decides if they want their child released, although the views of older children (14 or older) must be considered.

12. In what circumstances will Child Advocates be appointed;

See response to #5 above. If a child disagreed with a parent's decision then a child advocate likely should be appointed.  Attorneys representing the families in detention would be the first to learn of such disputes or any situation in which a child needed an advocate separate from whoever is representing the parent and should take appropriate steps to withdraw from representing either the parent or child and help locate separate counsel for whoever is left without counsel.

12. Will children receive the benefits of UC protections (for example, jurisdiction with USCIS in their asylum application while in removal proceedings);

What do you think or propose? This is question to be answered under the iNA rather than under the Flores settlement. We think the answer is yes. Unlike children detained and subject to expedited removal, released minors may receive the benefits of UC protections.

13.  Will separated children receive additional social services, such as social worker prior to release?

What do you think or propose? Under the settlement such services should be available to minors whether or not they are being released.

These are all good questions. Hope the responses are helpful.
Happy to continue exploring these issues by email or further telephone calls.

Exhibit 2
Page 5

Best regards,
peter

Peter A. Schey
President
Center for Human Rights and Constitutional Law
256 S. Occidental Blvd.
Los Angeles, California 90057
(213) 388-8693 x.304 (v)
(323) 251-3223 (direct)
(213) 386.9484 (fax)
http://www.centerforhumanrights.org
--
CONFIDENTIALITY NOTICE: This communication, including any attachments, is for the sole use of the
intended recipient(s) and may contain confidential and legally privileged information. Any
unauthorized interception, review, use, distribution, or disclosure not authorized by the intended recipient(s) is
prohibited and may violate applicable laws, including the Electronic Communications Privacy Act of 1986,
Pub. L. 99-508, 100 Stat. 1848, codified at 18 U.S.C. §§ 2510 et seq. If you are not the intended recipient,
please contact the sender and destroy all copies of the original communication.

[Quoted text hidden]

Exhibit 2
Page 6