**ORR JUVENILE COORDINATOR INTERIM REPORT**

**July 24, 2020**

**Aurora Miranda-Maese, ORR Juvenile Coordinator**

## Introduction

On April 24, 2020, The Honorable Dolly M. Gee of The United States District Court for the Central District of California held a third hearing on the Motion for Temporary Restraining Order on Jenny L. Flores, et al. v. William P. Barr, et al., directing the undersigned designated as the Office of Refugee Resettlement (ORR), Juvenile Coordinator, Aurora Miranda-Maese, to file an Interim Report monthly during the pendency of the national health emergency related to the COVID-19 pandemic. An ORR updated report was submitted by the undersigned on June 7, 2020.

Subsequent to the Court Order, the undersigned continued in collaboration with the workgroup to assist in obtaining the data from all congregate care shelters and transitional foster care nationwide, on issues as they pertain to the six Court-ordered topics.  Under the Juvenile Coordinator, this workgroup continued in the same manner with questionnaires requesting specific information as they pertain to the prior Court Orders as well as the new Court Order dated June 26, 2020.

At the Status Conference Hearing on June 26, 2020, the Court ordered the following for the ORR Juvenile Coordinator:

- The Juvenile Coordinators shall file their annual report by July 1, 2020, as previously scheduled. They shall file their next interim reports by July 24, 2020 covering the topics listed in the April 24, 2020 and May 22, 2020 Orders, to the extent there is anything new.  In addition,

    a. The ORR Juvenile Coordinator shall provide greater specificity to explain delays in release caused by fingerprinting requirements and home studies, addressing the concerns raised in Plaintiff's response;

    b. ORR shall review and amend its fingerprinting policy to provide for a less onerous chain of approvals or show cause to the Court why the policy, as written, is imperative.

During this reporting period, which covers June 2, 2020 through July 13, 2020, approximately 439 cases were reviewed individually. The census of minors in ORR custody has continued to decrease, with approximately 291 minors residing in congregate care facilities as of July 9, 2020.  The workgroup continued to collaborate with ORR grantee staff, Federal Field Specialists (FFS), and other ORR staff members to obtain the information needed from the ORR network.

Figure 1 below provides minors' census information and discharges since the onset of when the Juvenile Coordinator began tracking this information.  Also listed below is Figure 2, which details ORR's total bed capacity by residence type as of July 22, 2020.

1

Figure 1: ORR Census & Discharges from March 15 to July 22, 2020[1]



Figure 2: ORR Bed Capacity by Residence Type as of July 22, 2020[2]

| ORR Program Type | Total Beds | # of Beds Occupied (% of total beds) | # of Beds Not Occupied (% of total beds) |
|---|---|---|---|
| Shelter | 10,741 | 250 2% | 10,491 98% |
| Staff Secure | 162 | 23 14% | 139 86% |
| Secure | 34 | 10 29% | 24 71% |
| RTC | 50 | 8 16% | 42 84% |
| TFC | 2,028 | 89 4% | 1,939 96% |
| LTFC | 634 | 443 70% | 191 30% |
| TOTAL | 13,649 | 823 6% | 12,826 942% |

---

[1] The census reflected in Figure 1 is a snapshot of the minors in care from March 15 - July 22, 2020, in addition to the daily discharges.
[2] Census for minors in ORR custody constantly fluctuate as children are admitted, transferred, and discharged at all times of each day. Therefore, the census reflected in Figure 1 is a snapshot of the capacity at the exact time that the review was conducted.

This report provides updates to the six topics ordered to be covered by the Juvenile Coordinator, which follows below:

I. **Measures taken to expedite the release of Class Members to suitable custodians during the COVID-19 health emergency, including the status of fingerprinting and home study policies and practices, in compliance with this Order, and provide census data as to any minors who remain in custody due to lack of fingerprinting or home studies.**

### Fingerprinting Policies and Practices

Per the Court Order, ORR shall review and amend its fingerprinting policy to provide for a less onerous change of approvals or show cause to the Court why the policy, as written, is imperative. ORR issued revised Fingerprint Guidance due to COVID-19 on July 21, 2020 (see attached ORR Fingerprint Waiver Instruction – Rev. July 21, 2020).

This workgroup reviewed the entire census where fingerprinting was unavailable. As of June 24, 2020, there was one fingerprinting site that was closed (Morrison Child & Family Services in Portland, OR). The workgroup reviewed the status of fingerprinting requirements for sponsors, their household members if necessary, and additional adults designated by the sponsor as an alternate care giver. In most cases, the persons successfully scheduled an appointment or completed the fingerprinting as most fingerprinting locations are fully or partially operational.

Fingerprinting services are among the initial criteria initiated in the family reunification process. In cases where fingerprinting is not immediately available but other reunification requirements are still pending, case managers continue to search for alternative locations within a reasonable distance and continue to communicate with the persons regarding their options. Where no reasonable alternative fingerprinting options are available and fingerprinting is the only requirement delaying release, ORR determines whether provisional release is appropriate.

### Status of Fingerprinting Delays Where Minors Remain in ORR Custody

The Juvenile Coordinator was ordered to provide greater specificity for instances where a minor's release from ORR custody because COVID-19 closures caused fingerprinting services to be unavailable for sponsors.

As of July 13, 2020, there were no minors in ORR care whose release was delayed because COVID-19 closures made fingerprinting services unavailable to sponsors.

### Sponsor Non-compliance with Provisional Release Terms

Subsequent to the provisional release of a minor in accordance with the April 24, 2020 Order, the minor and his sponsor have not responded to ORR's follow up communication attempts. The minor is identified as AGLC, who was released from a New York shelter on June 27, 2020. AGLC was mentioned in Plaintiff Counsel's June 17, 2020 response to the Juvenile Coordinator's June 8, 2020 interim report.

### Home Study Policies and Practices

ORR issued Home Study Practice Guidance due to COVID-19 on May 6, 2020 (attached in previous Juvenile Coordinator Report dated June 8, 2020).  ORR is in alignment with the many states who have imposed restrictions on movement or shelter-in-place orders for residents due to the COVID-19 pandemic.  It remains paramount that minors are released to a safe and healthy environment with a sponsor who is able to meet their needs.  It is also important to protect the staff who conduct home studies and assure they feel safe and supported during this time as well.

ORR's home study providers are to follow their respective state's official guidance on conducting home visits/home studies for domestic minors.  ORR honors the state's guidance until further notice is provided to the shelter network from ORR.  If no official state guidance has been issued on conducting home studies during the COVID-19 pandemic or if states require that the home visit be conducted in person, ORR home study providers can seek a waiver on the in-person home visit via the Federal Field Specialist (FFS) for that region.  ORR continues to assess on an individual basis if a virtual home visit can take place in lieu of the in-person contact.

Home study reports must still be submitted within 10 business days of the receipt of the home study referral, and documentation is made in the minor's file as to which method was used to conduct the home study. As of July 13, 2020, there were no minors in ORR custody with home study delays due to COVID-19.

II. Identify the location of any ORR facility that has had any individual, whether minor or staff member, test positive for COVID-19, and provide a status report and census of those infected at that facility during the reporting period.

Under the Juvenile Coordinator, the workgroup resent questionnaires to the ORR network with specific questions regarding the census of minors who tested positive for COVID-19.  Additionally, follow up was conducted with the ORR field staff assigned to the programs to address the status of those infected to determine whether any minors remained in isolation, quarantine or had been medically cleared.

Figure 3 below provides the census data for positive COVID-19 cases of minors throughout the shelter network.

Figure 3: Positive COVID-19 Minors Census Data[3]

| Program Name and Type | Bed Capacity as of July 13, 2020 | Census as of July 13, 2020 | Positive COVID-19 Minors | Medically Cleared Minors |
|---|---|---|---|---|
| (Shelter) | 51 | 4 | 1 | 0 |
| (Shelter) | 1,200 | 10 | 1 | 1 |
| (TGH) | 12 | 5 | 1 | 1 |
| (Shelter) | 75 | 11 | 1 | 0 |

Although ORR cannot require that staff disclose their private medical information as it relates to COVID-19, some staff voluntarily reported this information. ORR was notified of 598 staff with positive COVID-19 test results as of July 23, 2020. Staff with suspected exposure to or positive COVID-19 test results are required to quarantine for at least 14 days. Furthermore, the staff are not permitted to have any contact with minors or other staff at the shelters until their quarantine has ended.

### Status of Minors Infected

_ , TX)

- **Minors Infected**: There was one minor who tested positive for COVID-19, and this minor is currently in quarantine. The minor has no reported medical vulnerabilities that could complicate their COVID-19 diagnosis. This is not currently delaying the minor's release.

( , TX)

- **Minors Infected**: There was one minor who tested positive for COVID-19, and the minor was released from quarantine on July 17, 2020. The minor has no reported medical vulnerabilities that could complicate their COVID-19 diagnosis. This is not currently delaying the minor's release.

, NY)

- **Minors Infected**: There was one minor who tested positive for COVID-19, and this minor was released from quarantine on July 20, 2020. The minor has no reported medical vulnerabilities that could complicate their COVID-19 diagnosis. The minor will be transferred to long term foster care (LTFC) once his quarantine ends.

---

[3]Figure 3 is a result of the data gathered by the workgroup as it pertains to positive COVID-19 cases of minors throughout the shelter network. This information reflects the status as of July 13, 2020.

( TX)

- **Minors Infected:** There was one minor who tested positive for COVID-19, and this minor is currently in quarantine. The minor has no reported medical vulnerabilities that could complicate their COVID-19 diagnosis. This is not currently delaying the minor's release.

III. With respect to minors placed at congregate facilities in which either a minor or staff member has tested positive for COVID-19, identify the specific reason the minors located there have not been released or transferred to a non-congregate setting.

For all the ORR network, transfers out of congregate care were not pursued due to the risk of potentially spreading or catching COVID-19 during the transfer process. The current low occupancy at all congregate shelters (291 occupied beds out of 10,987 congregate beds) allows for social distancing and provides a pool of staff available to care for the minors. ORR issued revised field guidance dated July 16, 2020 with regard to COVID-19 (see attached ORR Field Guidance #4, COVID-19 Discharge Guidance – Rev. July 16, 2020).

ORR's policies require the release of minors to sponsors in a manner that promotes public safety, which includes concerns related to public health. The field guidance and ORR Policy Guide Section 3.4.8 Medical Clearance Prior to Release and Transfer, states:

*"Unaccompanied alien children who have serious physical or mental health issues or have had exposure to a communicable disease may not be transferred or moved until they have been medically cleared by a physician or ORR is consulted….*

*Children who are infectious with communicable diseases of public health concern, which have potential to cause outbreaks, will not be released from ORR care until they are non-infectious."*

IV. Describe any policies and/or practices aimed at identifying and protecting minors who are at heightened risk of serious illness or death should they contract COVID-19.

Each facility has a unique process for staffing medical care for the individualized needs of the minors in care. Some directly hire licensed independent practitioners (e.g., pediatricians, family medicine physicians, pediatric nurse practitioners, registered nurses) who operate in clinics physically located at the facility, and some contract with community healthcare providers who either visit the facility or evaluate the minors in their clinics. Each care provider has an established network of healthcare providers, including specialists, emergency care services, mental health practitioners, and dental providers. Care providers are required to maintain state licensing and adhere to licensing requirements, including staffing requirements.

Each child in ORR care has an initial intake assessment within 24 hours of the minor's admission to a care provider facility, to obtain information about the minor, including whether there are any immediate

medical and mental health concerns. Minors who are ill on arrival will receive prompt attention and medical care.

Each minor also receives an initial medical examination (IME) by a licensed primary care provider (e.g., physician, physician assistant, or nurse practitioner) within two business days of arrival. The IME is based on a well-child examination, adapted for the unaccompanied children population with consideration of screening recommendations from the American Academy of Pediatrics, the Centers for Disease Control and Prevention (CDC), and the U.S. Preventive Services Task Force (USPSTF).

The purposes of the IME are to assess general health, administer vaccinations in keeping with U.S. standards, identify health conditions that require further attention, and detect contagious diseases, such as influenza or tuberculosis. If a vaccination record is not located or a minor is not up-to-date, the minor receives all vaccinations recommended by the Advisory Committee on Immunization Practices (ACIP) catch-up schedule and approved by CDC, including seasonal influenza vaccine.

None of the minors who tested positive for COVID-19, as indicated above, were at heightened risk of serious illness or death. Division of Health for Unaccompanied Children (DHUC) and ORR care providers routinely track and discuss children with existing medical conditions, including children with conditions that put them at increased risk of infection or could result in possible medical complications if infected. As part of these discussions, facilities caring for children with complex medical needs have been directed to do the following:

- Maintain close contact with general and specialty medical providers of children with complex medical needs, and identify plans for continued care (e.g. utilization of telehealth services) in the event of office closures and other barriers to care during the pandemic.

- Create a safety plan for when a child might require in-person medical evaluation, such as in an outpatient clinic or at an emergency room.

- Ensure children have an adequate and ongoing supply of prescription medications.

- Continue to follow recommendations about infection prevention, including for respiratory diseases such as influenza and COVID-19, from medical providers overseeing the care of children with complex health needs.

V. **Explain whether the medical professionals at ORR are making expeditious individual assessments about a Class Member's eligibility for release when a Class Member has been exposed to COVID-19 or has a sponsor whose household has a confirmed case of COVID-19, and provide the average time in which such individual assessments take place during the reporting period.**

Figure 4 below provides information on minors quarantined due to possible exposure to COVID-19, and the number of days they have been quarantined. Additionally, quarantine recommendations for minors who have been exposed to a confirmed COVID-19 case are made in collaboration with the local public health authority.

Figure 4: DHUC Quarantine Data as of July 23, 2020[4]

| Program Name and Type | # of Minors Quarantined | # of Days Quarantined |
|---|---|---|
| (Shelter) | 3 | 15 (1 minor) 13 (2 minors) |
| (Shelter) | 1 | 14 |
| (Shelter) | 2 | 6 |
| (Shelter) | 4 | 10 |
| (Shelter) | 1 | 10 |
| (Shelter) | 1 | 14 |
| (TFC) | 1 | 5 |

(Shelter)

Three minors were exposed to COVD-19 and is in quarantine as reflected in Figure 4. The exposure to COVID-19 is not delaying release for any of the minors.

(Shelter)

One minor was exposed to COVD-19 and is in quarantine as reflected in Figure 4. The exposure to COVID-19 is not delaying release of the minor.

(Shelter)

Two minors were exposed to COVD-19 and is in quarantine as reflected in Figure 4. The exposure to COVID-19 is not delaying release of the minors.

( , TX)

There were three minors who were exposed to COVID-19 and one minor who tested positive. All minors are currently in quarantine and asymptomatic. The positive minor is the parent of one of the exposed minors. Release is not delayed for the positive minor and her exposed baby. The remaining two exposed minors are another parenting teen and her baby. The exposed mother is scheduled to be re-tested for COVID-19 by July 27, 2020. ORR will continue with the steps to release the minor upon the completion of her quarantine.

(Shelter)

One minor was exposed to COVD-19 and is in quarantine as reflected in Figure 4. The exposure to COVID-19 is not delaying release of the minor.

---

[4] The data in this table was provided by the Division of Health for Unaccompanied Children (DHUC). This information reflects the status of minors remaining in quarantine as of July 23, 2020.

### (Shelter)

There is one minor who tested positive for COVID-19 prior to her placement in ORR custody. The minor is in quarantine and is currently awaiting results of a follow-up test. ORR will continue with the steps to release the minor upon the completion of her quarantine.

### (TFC)

One minor was exposed to COVD-19 and is in quarantine as reflected in Figure 4. The exposure to COVID-19 is not delaying release of the minor.

Per the revised ORR field guidance, if a sponsor or a member of the sponsor's household has a suspected or confirmed COVID- 19 infection, ORR postpones release until a medical or public health professional determines it is safe to release the minor to the sponsor household.

## VI. Explain whether ORR is making individualized assessments regarding its ability to release minors subject to removal orders under the MPP, including census data and reasons for non-release.

From June 2, 2020 to July 23, 2020, ORR discharged a total of 16 minors with MPP cases. As of July 23, 2020, there remained 30 minors with MPP cases in ORR custody who are still going through the reunification process.

## Summary

The undersigned respectfully submits this report to the Court pursuant to the Court Order dated June 26, 2020.  The undersigned will continue to work independently and with the Special Master, and will continue to file interim reports per the Court's directive to monitor facilities to assure adherence to CDC-compliant and ORR guidelines are maintained.

# ATTACHMENT A

**FIELD GUIDANCE – Rev. July 16, 2020 (First Posted April 6, 2020)**

**RE:     ORR Field Guidance # 4, COVID-19 Discharge Guidance**

**<u>GUIDANCE</u>**

This document replaces the ORR Field Guidance # 4 COVID-19 Discharge Guidance issued by ORR dated April 6, 2020.

ORR's policies require the release of unaccompanied alien children (UAC) to sponsors in a manner that promotes public safety, which includes concerns related to public health. These instructions fall under authority of ORR Policy Guide, section **3.4.8 Medical Clearance Prior to Release and Transfer**:

> *"Unaccompanied alien children who have serious physical or mental health issues or have had exposure to a communicable disease may not be transferred or moved until they have been medically cleared by a physician or ORR is consulted….*
>
> *Children who are infectious with communicable diseases of public health concern, which have potential to cause outbreaks, will not be released from ORR care until they are non-infectious."*

ORR is issuing the following guidance to care providers and to ORR staff as it relates to UAC discharges during the COVID-19 pandemic.

**<u>INSTRUCTIONS</u>**

(1) **Postponing release related to COVID-19.** To ensure the health and safety of the sponsor, UAC, and the general public, ORR may postpone release of a UAC to a sponsor:

(a) If an ORR care provider facility (or in the case of transitional foster care, an individual foster home) experiences one or more confirmed cases of active COVID-19 infection in either children or staff, ORR may temporarily postpone releases for **all** children at the care provider facility or in the foster care home until ORR's Division of Health for Unaccompanied Children (DHUC) lifts the hold on releases or allows the release of specific children on a case-by-case basis, following general CDC guidance.

(b) If a sponsor or a member of the sponsor's household has a suspected or confirmed COVID-19 infection, ORR postpones release until a medical or public health professional determines it is safe to release the UAC to the sponsor household.[1]

(c) If a State licensing agency or a state or local public health agency with jurisdiction over a care provider requires or recommends that a care provider isolate or quarantine children in their care, ORR may postpone UAC cases that have completed the release process until:

- DHUC and the state licensing or state or local public health agency clears the UAC cases, or

- DHUC determines that a specific child's case must be postponed due to COVID-19-related concerns in order to ensure the health and safety of the sponsor, sponsor's household, UAC, and/or the general public.[2]

(2) **Post Release Reporting.**

(a) Case managers must follow up with sponsors once daily for 14 days following UAC's release from custody for updates on the minor's health and to check on symptoms of COVID-19.[3]

(b) As a condition of release, until further notice, sponsors must immediately quarantine any released UAC for 14 days following their physical discharge from ORR custody. Further, the sponsors will report any signs of COVID-19 or fevers to their local medical provider.

(3) **Documentation.** ORR must document any postponement of release in the *UAC Assessment* or *UAC Case Review*, as appropriate, citing the public health reason for the delay under (1)(a), (b), or (c). Any postponement of release must be sufficiently explained to the UAC and to their sponsor.

---

[1] For COVID-19 patients who are not hospitalized, isolation may be discontinued if the CDC discontinuation of isolation criteria are met. https://www.cdc.gov/coronavirus/2019-ncov/hcp/disposition-in-home-patients.html . However, if other members of the household are quarantined and then go on to develop illness, the timeframe could be longer than 14 days.

[2] ORR considers any increased risk posed to the child, sponsor, or sponsor household members when making the decision to discharge, such as conditions in the sponsor or family member that increase the risk of severe disease, such as the potential exposure to a sponsor or family member with close contact to a confirmed case in prior 14 days.

[3] The list of symptoms may change as we learn more about COVID-19. Please refer to the CDC website for the most up-to-date list of COVID-19 symptoms in children: https://www.cdc.gov/coronavirus/2019-ncov/hcp/pediatric-hcp.html

(4) **Post-18 Plans.** All children approaching age out must have a post-18 plan in place, which includes a recommendation for a non-secure placement, if appropriate. In the event a child is within 30 days of aging out and postponing release may result in their transfer to DHS/ICE custody, case managers will notify their ORR/FFS and Case Coordinator for further instruction.

(5) **Voluntary Departure/Order of Removal.** In the event a child has a pending voluntary departure or removal order, care providers must work with their ORR/FFS to determine whether DHS/ICE plans to execute the order and initiate removal. If removal appears unlikely, care providers must evaluate the child for release following general ORR policies and procedures.

(6) **Monitoring for Potential Symptoms:** After a release is approved in accordance with ORR policies (see ORR Policy Guide, section 2.7 Recommendations and Decisions on Release), ORR care providers must continually evaluate the child's health on a daily basis (until the child is physically discharged) for signs and symptoms of COVID-19.

   (a) Children with symptoms of COVID-19 **must not** be transferred or released until they have been medically cleared.[4]

   (b) Care providers must follow technical instructions provided in the "COVID-19 Symptom and Temperature Check at the Time of Discharge or Transfer" tool available on the UAC Portal home page under the "COVID-19 Guidance and Materials" folder in the "Documents to Download" section.

   (c) For children with symptoms, care providers must follow medical isolation instructions in ORR's March 13th Guidance (or the most recent version of the guidance, if updates have been issued), available on the UAC Portal home page under the "COVID-19 Guidance and Materials" folder in the "Documents to Download" section.

(7) **Transportation.** Travel for the purpose of discharging a UAC is considered an essential activity. The safety of children and staff during the physical transfer of children to sponsors is a priority for ORR. To that end, ORR complies with any state or local governmental restrictions on travel. Additionally:

   (a) ORR directs care providers to follow provisions of ORR Policy Guide, section 2.8.2 and utilize air carrier escorts, to the greatest extent feasible, for children aged 14 years and older. For children aged less than 14 years, care providers and ORR/FFS will work with ORR/FFS Supervisors to use airline escorts following air carrier policies, in compliance with ORR's policy.

---

[4] See Footnote 1.

(b) Where care provider escorts are still required, and travel is to a state or city which would require the escort to self-quarantine, case managers must look into potential alternative transport locations where escorts would not be required to self-quarantine.

(c) Care providers should consider using ground transportation following ORR's generally applicable transport policies (see ORR Policy Guide §3.3.14) as opposed to air transport, where travel is expected to be less than 10 hours.

(d) Travelers (including UAC and staff) must adhere to current recommendations for prevention measures (such as to wear cloth face coverings, wash hands frequently, limit touching face, avoid close contact with others) while conducting essential activities. CDC travel guidance is available at: https://www.cdc.gov/coronavirus/2019-ncov/travelers/index.html.

# ATTACHMENT B

**ADMINISTRATION FOR CHILDREN & FAMILIES**
Office of Refugee Resettlement | 330 C Street, S.W., Washington, DC 20201
www.acf.hhs.gov/programs/orr

# Fingerprint Waiver Instruction – Rev. July 21, 2020

**Instruction**

The Division of Unaccompanied Children's Operations (DUCO) established a fingerprint waiver instruction to assist with the release process where an unaccompanied alien child's (UAC) release is delayed solely due to COVID-19 pandemic-related fingerprinting challenges.

The waiver instruction specifically relates to cases where *Family Reunification Applications* are completed for Category 2B and Category 3 cases; however, sponsors, other household members, or alternate caregivers[1], are unable to comply with ORR's standard fingerprinting policies (see, ORR Policy Guide, section 2.5.1-2.5.2).

ORR continues to review this waiver instruction at least every 30 days, from initial implementation.

Eligibility

Cases eligible for fingerprint waivers under this instruction must meet the following criteria:

- The sponsor assessment is otherwise complete following ORR's generally applicable policies and procedures;

- There are no ORR Digital Fingerprint Sites or alternative fingerprinting locations (e.g. local law enforcement agency paper prints) available[2] within a reasonable distance taking into account the individual circumstances of the subject of the request. The subject of the fingerprint request must make attempts to obtain paper prints from two or more state or local law enforcement agencies.

- The case has no special concerns (either with regard to the subject's identity or the individual circumstances of the case) in which fingerprint background checks mitigate in part or in whole the specific concern(s) with the case;

    o A public records background check has been completed without red flags;

    o The case does not require a home study due to allegations of past abuse or neglect by the proposed sponsor (or a member of the sponsor's household);

---

[1] "Subjects" is used in this instruction to refer to subjects of fingerprint requirements, including sponsors, their adult household members and adult care givers identified in a sponsor care plan.

[2] A fingerprint site is considered available if it is anticipated to be open within two business days of request of a *Release Request*.

- The potential sponsor agrees, as a condition of release:

    o To complete a fingerprint background check as soon as it is reasonable to do so or within 30 days of release, whichever is sooner; and,

    o To receive post-release services.

- Release of the UAC would otherwise be delayed due to the fingerprint submission and process.

**Procedures**

In the event a subject meets the criteria described in the instruction above, ORR makes a fingerprint waiver decision, following adequate documentation on efforts undertaken to obtain fingerprints and after consultation with stakeholders involved in the release process.

Documentation Efforts

(1) The care provider case manager documents steps taken by the subject to find a fingerprint location closest to his or her residence, and that the sponsor understands they are required to receive post release services and submits the documentation to their assigned CFS for consideration and verification. Proper documentation must include (in the *Release Request*):

- Name of the agency that the sponsor attempted to schedule an appointment for a fingerprint submission but was unable to get an appointment;

- A contact number for each location that was attempted;

- The address of the agency;

- The date of the attempt;

- The location of the agency in proximity to sponsor to confirm distance challenges;

- Confirmation that the sponsor will obtain fingerprints within 30 days (or as soon as reasonably possible); and,

- Confirmation from the sponsor that they will receive post release services.

(2) The CFS documents in an email the following information for cases eligible for a waiver under this instruction. The CFS contacts the case manager with any new information regarding the availability of a fingerprinting location, or lack of adequate supporting documentation requiring further action by the case manager.

- Verifies that the *Family Reunification Application* and supporting documentation (including generally applicable requirements required by the ORR Policy Guide, section 2.2.4 and documentation under 1 above).

- Determine whether the ORR Digital Fingerprint Site closest to the subject is able or will be able to print the sponsor within two business days (if available, then a waiver is unnecessary).
- Verifies whether alternative fingerprinting sites documented by the case manager continue to be unavailable.
- The CFS consults with the FFS, ORR's Central Branch Case Management Team, and the Case Coordinator on verification of challenges to the standard fingerprint policy.

(3) The CFS emails the case manager regarding case eligibility.

Submission of Waiver Requests

(1) After the CFS provides notice to the case manager that there are no available fingerprint site locations the case manager makes a waiver request to their FFS.

- The CFS subsequently track cases submitted for a waiver under the following categories: pending, approved, or denied.

(2) Within two calendar days the FFS submits a formal waiver request via email to the Director for Unaccompanied Children's Operations for concurrence (and CC's their FFS Supervisor, the Senior Supervisory FFS, and the CFS), using information from the case manager's *Release Request* recommendation and documentation requirements under these instructions, and includes the following information in a Fingerprint Waiver Memo Request[3]:

- Summary of the information which was reviewed during the reunification process. Category of Sponsorship
    - Completed *FRA* and Sponsor Assessment
    - List SIRs related to dangerousness or child welfare concerns
    - Medical clearance
    - Results of all public records checks
    - Documentation related to sponsor's attempts to obtain fingerprints (as required by the documentation procedure above)
- A detailed summary of any mitigated child welfare safety concerns, if any.
- Confirmation that the sponsor has agreed to participate in post-release services.

(3) Within one business day the Director for Unaccompanied Children's Operations in consultation with the Division of Policy and Procedure (DPP), considers the FFS waiver recommendation and may remand the case for more information, deny the waiver if the case does not meet eligibility criteria, or elevate the case with a concurrence and recommendation

---

[3] The FFS and CFS collaboratively fill-in a template Fingerprint Waiver Request Memo.

    for a waiver decision to the ORR Director. The ORR Director notifies the Director for Unaccompanied Children's Operations and DPP of their decision.

(4) The Director for Unaccompanied Children's Operations notifies the FFS of the waiver decision.

(5) The FFS staffs the case with the case manager and case coordinator to process the release recommendations and decision to release with post release services.

Post Approval Documentation

(1) After waiver approval, the case manager contacts the sponsor to prepare for release and remind the sponsor of their obligations regarding fingerprinting following release and commitment to receive post-release service provider. This reminder is also provided in writing to the sponsor in the UAC's release paperwork. The case manager also checks in with the sponsor on their obligations during their 30 day Safety and Well-being check after release.

(2) The FFS updates their decision to "release with Post-Release services" in the *Release Request*

(3) The case manager makes a PRS referral in the UAC Portal. The case manager checks the PRS waitlist daily to verify the PRS provider's acceptance of the case. The FFS may reach out to HS/PRS Project Officer to staff issues regarding referral acceptance.

(4) The approved waiver paperwork is uploaded by the FFS or CFS into the UAC Portal under the "UAC Docs" tab.

(5) PRS providers provide assistance to the sponsor (or other subjects) with arranging fingerprint appointments (either at an ORR Digital Fingerprint Site or using a fingerprint card). The assigned PRS provider contacts the sponsor weekly, until fingerprints are submitted to the case manager. If the sponsor (or other subject of the request) does not follow through with this commitment, the PRS provider:

- Submits a Notice of Concern
- Flags the sponsor and their address in the UAC Portal, and
- Notifies local child welfare authorities.

(6) ORR may also engage U.S. Department of Homeland Security/Homeland Security Investigations for further assistance should the subject prove uncooperative with these instructions following release.