CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Carlos R. Holguín (90754)
Peter A. Schey (58232)
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Email: crholguin@centerforhumanrights.email

NATIONAL CENTER FOR YOUTH LAW
Leecia Welch (Cal. Bar No. 208741)
Neha Desai (Cal. RLSA No. 803161)
Poonam Juneja (Cal. Bar No. 300848)
Freya Pitts (Cal. Bar No. 295878)
1212 Broadway, Suite 600 Oakland, CA 94612
Telephone: (510) 835-8098
Email: lwelch@youthlaw.org

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*,<br><br>          Plaintiffs,<br><br>v.<br><br>WILLIAM BARR, Attorney General of the United States, *et al.*,<br><br>          Defendants. | Case No. CV 85-4544-DMG-AGRx<br><br>PLAINTIFFS' RESPONSE TO OBJECTIONS TO INDEPENDENT MONITOR'S INTERIM REPORT RE TEMPORARY HOUSING FOR MINORS AND FAMILIES UNDER TITLE 42.<br><br>Hearing: None scheduled. |

1   Defendants object to the Independent Monitor's report ("Interim Report")
2   [Doc. # 873] informing the Court that Defendants are systematically detaining
3   children in unlicensed hotels situated in areas where COVID-19 is spreading like
4   wildfire. *See* Defendants' Objection to the Interim Report of the Independent
5   Monitor ("Defs' Objection") [Doc. # 746].

6   Absent from Defendants' objections is any attempt to deny the gravamen of
7   the Interim Report: "Begun as a relatively small, stop-gap measure to assist in the
8   transfer of children to ICE flights, the temporary housing program has been
9   transformed by the Title 42 expulsion policies into *an integral component of the*
10  *immigration detention system for UACs in U.S. custody*." Interim Report at 14
11  (emphasis added).

12  Defendants instead cavil that the Independent Monitor has jumped the
13  traces in disclosing policies and practices that flaunt the licensed placement
14  requirement of Settlement ¶¶ 12A and 19 and place children at elevated risk of
15  contracting COVID-19. The Court should overrule Defendants' objections.

16  I.   THE INDEPENDENT MONITOR ACTED WITHIN HER AUTHORITY IN BRINGING
17       DEFENDANTS' BREACH TO THE COURT'S ATTENTION

18  Defendants first take the Independent Monitor to task for "contend[ing] that
19  the Interim Report was within the scope of the monitoring ordered by the Court in
20  its most recent June 26, 2020 Order, ECF No. 873 at 2-3 . . .." Defs' Objection at
21  2. According to Defendants, the June 26 Order "did not in any way address
22  processes and procedures related to the implementation of Title 42." *Id.*

23  As Defendants know, the Settlement—and this Court's orders enforcing
24  it—protects "[a]ll minors who are detained in the[ir] legal custody," Settlement ¶
25  10, and thus plainly covers children whom Defendants opt to classify "Title 42."
26  Defendants nevertheless argue that "issues related to Title 42 . . . are not even
27  within the scope of the *Flores* Settlement Agreement itself . . .." Defs' Objection
28  at 2. That contention, however, merely recycles their oft-failed argument that

1   "accompanied" children are beyond from the Settlement's coverage. *Flores v.*

2   *Lynch*, 828 F.3d 898, (9th Cir. 2016) ("We agree with the district court that '[t]he

3   plain language of the Agreement clearly encompasses accompanied minors.'").

4       Defendants next complain that the Independent Monitor did "not provide[]

5   any opportunity to be heard on the issues raised in the Interim Report, nor were

6   Defendants provided the opportunity to cure any violations." Defs' Objection at 3.

7   Defendants' complaint is meritless.

8       First, nearly all the information contained in the Interim Report came from

9   Defendants themselves. The Independent Monitor clearly "heard" what

10   Defendants were reporting. Rather than objecting to the Interim Report,

11   Defendants could have provided a substantive response or, better yet, an

12   explanation of how they intend to cure an insidious practice they have followed

13   covertly for months.

14       Second, as the Court's orders protecting class members during the COVID-

15   19 pandemic make abundantly clear, under current conditions Defendants are

16   simply not at leisure to comply with the Settlement. *E.g.,* Order re Updated

17   Juvenile Coordinator Reports, June 26, 2020 [Doc. # 833] at 2 ("The FRCs are 'on

18   fire' and there is no more time for half measures.").

19       Third, the Court authorized the Independent Monitor and Dr. Wise to

20   conduct "enhanced" monitoring of the care of minors at family "residential"

21   centers—Defendants' euphemism for facilities in which they detain accompanied

22   class members—and to "make such recommendations for remedial action that

23   they deem appropriate." *Id*. at 6.

24       As the Interim Report discovers, Defendants are now detaining *families* in

25   hotels as "an integral component" of their detention system. *Id*. at 14. Defendants'

26   suggesting that such unlicensed placements are legally or functionally distinct

27

28

from unlicensed "family residential centers" is Orwellian doublespeak.[1]

Fourth, the Independent Monitor's report does not order Defendants to do anything; just how they have been injured by her bringing undenied—and in all likelihood, undeniable—truths to this Court's attention is unclear. If Defendants believe anything in the Interim Report inaccurate, they could have and should have brought forth contrary evidence.

Fifth, Defendants' remonstrance that the Interim Report blindsided them is frivolous. On July 14, 2020, Plaintiffs informed Defendants and the Independent Monitor that DHS's April 2020 report furnished pursuant to Settlement ¶ 29 "lists 29 unaccompanied children as "Title 42 Return" and that "all 29 children designated 'Title 42 Return' were detained for three or more days in unlicensed placements such as hotels, hold rooms, and MVM transport facilities." Exhibit A, Letter to W. Silvis and S. Fabian, July 14, 2020, at 2.

Plaintiffs further advised that unlike its April report, "DHS's May 2020 ¶ 29 report (1) omits information regarding unaccompanied juveniles, and (2) fails to report any class members subject to Title 42 return regardless of the time spent in immigration-related custody, all which are in apparent violation of Settlement ¶ 29." *Id.*

Plaintiffs requested that Defendants meet and confer pursuant to ¶ 7 of the Court's order of June 26, 2020 [Doc. # 833] and Settlement ¶ 37 in an effort to resolve these and other issues such that they would not have to resort to this Court yet again. *Id.* at 1, 3.

Hearing nothing from Defendants over the next three days, on July 17, 2020, Plaintiffs requested the courtesy of a response. Later that day, Defendants' counsel replied: "With regard to the issues concerning DHS I am talking to my

---

[1] Defendants alone choose whether they will detain a family in a hotel or an FRC. *See, e.g.*, Interim Report at 13 (accompanied class member held in hotel for at least eight days before testing positive for COVID-19 and being transferred to FRC).

clients on Tuesday 7/21 and will suggest a time to discuss those issues after that." Exhibit B, Email thread, July 17-23, 2020.

Defendants continued to resist fixing a date to confer, and on July 23, 2020 instead advised Plaintiffs that an unidentified government official—whom Defendants implied is the only official in a position to confer over detaining children in irregular facilities—was "out of the office having surgery this week [such that] a call on that issue for Monday or Tuesday of next week" would be the earliest they could confer.[2] Defendants were duly notified of the violations the Interim Report describes and afforded an opportunity to resolve them short of litigation.

Finally, nothing in the Interim Report or its filing stops Defendants from curing their violations of the Settlement. Plaintiffs would applaud such cure, and presumably the Independent Monitor and the Court would as well.

In sum, the Independent Monitor acted well within her authority in bringing Defendants' breach to the Court's attention. Indeed, doing otherwise would have turned a blind eye to policies and practices inimical to children's welfare during a pandemic.

II.    NEWLY AVAILABLE EVIDENCE SHOWS THAT DEFENDANTS ARE DETAINING CHILDREN IN IRREGULAR FACILITIES EVEN MORE OFTEN AND FOR FAR LONGER THAN THE INTERIM REPORT INDICATES.

On July 24, 2020, Defendants produced a revised ¶ 29 report for May, which revealed that they are detaining children in unlicensed placements even more frequently and for longer periods than the Independent Monitor's report indicates. Defendants' reports reveal that they have detained over two hundred unaccompanied children in unlicensed hotels throughout April, May, and June of

---

[2] Plaintiffs have insisted on having a call on Monday, but it is not yet clear if Defendants are willing to do that.

2020. Exhibit C, Declaration of Melissa Adamson, *Flores* Data Summary: April, May, and June 2020 ("Data Summary"). Additionally, Defendants' ¶ 29 reports indicate they have detained multiple unaccompanied children in unlicensed hotels, ICE hold rooms, and MVM transport for extended periods after having removed them from ORR custody and licensed placement.

### A.   Defendants are detaining increasing numbers of children in hotels for extended periods.

Defendants' ¶ 29 reports show that the number of children they are detaining in unlicensed hotels has increased rapidly each month. Many of these children are very young, and as the Interim Report notes, "inherently vulnerable in an extended expulsion process." Interim Report at 16.

In April, Defendants detained 29 unaccompanied "Title 42" children in hotels. Data Summary at 1-2. In May, that number more than doubled to 71. *Id*. at 2-3. Defendants detained some of these children in unlicensed placement for weeks, including a nine-year-old for 15 days, a seven-year-old and 1-year-old held for 16 days, and a 13-year-old for 21 days. *Id*.

In June, the number of children detained in violation of Settlement ¶¶ 12A and 19 doubled again: Defendants detained 120 "Title 42" children in hotels before expelling them, and at the close of the month's report, they were still detaining another 20 children in unlicensed facilities. *Id*. at 5-7. The trend of detaining very young children in irregular facilities also continued: Defendants detained an 8-month-old for 12 days, a 6-year-old for 13 days, a 4-year-old for 14 days, and a 5-year-old for 19 days. *Id*.

### B.   Defendants are removing children from licensed placement and detaining them in irregular facilities for extended periods.

This Court has previously disapproved ORR's refusing to release children with removal orders where removal is not "imminent." Order re Plaintiffs' Motion to Enforce, April 24, 2020 [Doc. #784], at 13, 17-18. The same is clearly apposite

to ORR's removing children from licensed placement only to have ICE detain them in irregular facilities for several days, or even weeks, on end. *Id.* at 13 ("The definition of 'imminent' is 'ready to take place' or 'happening soon.'").

Here again, Defendants' own data are a virtual smoking gun. In May, ICE detained eight unaccompanied children in hotels after ORR had removed them from licensed placements. Of these children, two were held for eight days, one for 10 days, another for 11 days, and three for 12 days. Data Summary at 4.

This pattern continued into June, during which Defendants removed 10 children from licensed ORR placements and dispatched them to hotels, MVM transport, or ICE field offices. *Id.* at 7. This included a three-year-old whom Defendants removed from ORR Transitional Foster Care and detained in "MVM Transportation" for seven days, and a nine-year-old removed from an ORR shelter and detained in a "Field Office Hold Room" for five days. *Id.*

Transferring children from licensed placement to hotels, hold rooms, field offices, and like irregular facilities for such extended periods cannot be excused as preparatory to "imminent" removal. It is rather a prima facie violation of Settlement ¶¶ 12A and 19.

III.   DEFENDANTS' OBJECTIONS APPEAR AIMED AT CONCEALING THEIR TREATMENT OF CLASS MEMBERS FROM MEANINGFUL SCRUTINY.

There is yet more reason the Court should welcome the Independent Monitor's shedding light on Defendants' mistreatment of class members.

As has been seen, in their April ¶ 29 report, Defendants reported holding 29 "Title 42" children in irregular facilities, but omitted data on such children from their May report, only to disclose them following Plaintiffs' request that they remedy the breach of ¶ 29's reporting requirements or confer in an effort to obviate resort to this Court. Perhaps that omission was an oversight, but it is becoming increasingly difficult to extend Defendants the benefit of any such doubt.

On July 24, 2020, Newsweek reported that ICE operatives blocked the Texas Civil Rights Project from offering assistance to class members detained at the Hampton Inn in McAllen, Texas. Chantal Da Silva, *Texas Attorney "Violently" Forced Out of Hotel While Trying to Help Detained Kids*, NEWSWEEK, July 24, 2020, *available at* www.newsweek.com/texas-attorney-violently-forced-out-hotel-while-trying-help-detained-kids-1520244 (last visited July 24, 2020).

According to a report in the Arizona Republic, legal aid providers dedicated to assisting class members detained in Arizona "say they are in the dark about what is happening with children reportedly being detained at a local Hampton Inn & Suites." Mary Jo Pizel, *Legal advocates say they are shut out on whether immigrant kids are held at Hampton Inn*, Arizona Republic, July _, 2020, *available at* www.azcentral.com/story/news/local/arizona-child-welfare/2020/07/24/arizona-legal-advocates-do-not-know-if-migrant-children-held-phoenix-hampton-inn/5498851002/ (last visited July 25, 2020). "'This is news to us, and not welcome news,' Laura Belous, an attorney with the Florence Immigration and Refugee Rights Project, said Thursday." *Id*.

The Court, Plaintiffs, and the American people should feel indebted to the Independent Monitor and Dr. Wise for illuminating violations of the Settlement and for bringing unlawful government practices out of the shadows. This Court should reject Defendants' demand to unblow the whistle.

IV.   CONCLUSION

If Defendants believe the Interim Report inaccurate, they are free to submit

corrective evidence. That they have not yet done so supports an inference that

there is no such evidence and that by raising spurious objections to the Interim

Report Defendants hope to buy time to continue their unlawful treatment of

vulnerable children.

The Court should overrule their objections to the Interim Report.

Dated: July 25, 2020.             CENTER FOR HUMAN RIGHTS AND
                                  CONSTITUTIONAL LAW
                                  Carlos R. Holguín
                                  Peter A. Schey

                                  NATIONAL CENTER FOR YOUTH LAW
                                  Leecia Welch
                                  Neha Desai
                                  Poonam Juneja
                                  Freya Pitts


                                  */s/ Carlos Holguín*
                                  Carlos Holguín
                                  *One of the Attorneys for Plaintiffs*

Exhibit A

# CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW

256 S. OCCIDENTAL BOULEVARD
LOS ANGELES, CA 90057
Telephone:  (213) 388-8693 Facsimile:  (213) 386-9484
www.centerforhumanrights.org

July 14, 2020

William C. Silvis
Assistant Director
Sarah B. Fabian
Trial Attorney
Office of Immigration Litigation – District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
*Via email*

      Re:    *Flores v. Barr*, No. 2:85-CV-4544-DMG. (AGRx).

Dear Counsel:

Pursuant to paragraph 7 of the Court's order of June 26, 2020 (Doc. #833) enforcing the settlement in *Flores*, et al., *v. Barr, et al.,* ("Settlement") and Settlement ¶ 37, Plaintiffs request the Parties meet and confer regarding the following:

1)    <u>Disclosing information regarding the existence of COVID-19 infection to minors' immigration counsel</u>.

Plaintiffs are advised that ORR's policy and practice on informing class members' individual legal counsel about the entry of COVID-19 infection into facilities and measures to mitigate the risk of infection to class members detained in such facilities remain substantially as described in Plaintiffs' Statement re ORR Juvenile Coordinator's Second Report, June 17, 2020 (Doc. #823) and Exhibit D thereto.

2)    <u>Removing children from licensed placement when removal not imminent</u>.

According to ICE's May 2020 ¶ 29 report, ORR removed at least eight unaccompanied children from licensed placement and transferred them to ICE, which proceeded to detain them in hotels or hold rooms for inordinate periods before removing them: Two children for eight days, one child for ten days, one child for eleven days, and four children for twelve days.

The Court has previously disapproved ORR's refusing to release children with removal orders where removal is not "imminent." Order re Plaintiffs' Motion to Enforce, April 24, 2020 (Doc. #784), at 13, 17-18. The same applies to removing class members prematurely from licensed placement. *See id*. at 13 ("The definition of 'imminent' is 'ready to take place' or 'happening soon.'"). Holding class members in hotels and like irregular facilities for between eight and twelve days cannot be excused as proximate to "imminent" removal and is a prima facie

violation of Settlement ¶¶ 12 and 19. Plaintiffs request the Parties confer in a good faith effort to resolve this breach without litigation.

3)      Failure to report class members held longer than 72 hours pending Title 42 expulsion.

DHS's April 2020 ¶ 29 report "Notes" state: "This summary includes the entire detention history for juveniles who were booked into an FRC, *Hold room, MVM transport* or Authorized Juvenile IGSA Facility through April 2020 who have a length of stay of 3 days or more" and "includes individuals booked into an FRC, *Hold room, MVM transport* or Authorized Juvenile IGSA Facility who have a book-out between 4/1/2020 and 4/30/2020 or were in custody as of 4/30/2020" (emphasis added).

Additionally, the April report purports to provide information for unaccompanied juveniles "defined as an individual who was a juvenile at the time of initial book-in to an ICE facility and was not accompanied with a parent or legal guardian at apprehension."

The April report lists 29 unaccompanied children as "Title 42 Return" in the "Release Reason" column.

In contrast, DHS's May 2020 ¶ 29 report "Notes" state: "This summary includes the entire detention history for juveniles who were booked into an FRC or an Authorized Juvenile IGSA Facility through May 2020 who have a length of stay of 3 days or more" and "includes individuals booked into a FRC or Authorized Juvenile IGSA Facility who have a book-out between 5/1/2020 and 5/31/2020 or were in custody as of 5/31/2020."

Although this language omits hold rooms and MVM transport, the report does include some records for hold rooms and MVM transport. It is therefore unclear whether all records for hold rooms and MVM transport are included in this report.

In any event, DHS's May 2020 ¶ 29 report (1) omits information regarding unaccompanied juveniles, and (2) fails to report any class members subject to Title 42 return regardless of the time spent in immigration-related custody, all which are in apparent violation of Settlement ¶ 29.

Plaintiffs accordingly request the Parties confer in a good faith effort to avoid litigation over the completeness of Defendants' ¶ 29 reports.

4)      Failure to transfer class members designated for "Title 42 Return" to licensed placements as expeditiously as possible.

According to DHS's May 2020 ¶ 29 report, all 29 children designated "Title 42 Return" were detained for three or more days in unlicensed placements such as hotels, hold rooms, and MVM transport facilities. Of these, eleven children were detained for three days, six children for four days, nine children for six days, two children for seven days, and one child for ten days.

Settlement ¶ 12A requires Defendants to transfer class members to licensed placements pursuant to ¶ 19 "as expeditiously as possible." DHS's May 2020 ¶ 29 report is prima facie evidence that

W. Silvis, S. Fabian
July 14, 2020
Page 3 of 3

Defendants are in breach of Settlement ¶ 12A, and Plaintiffs accordingly request the Parties
confer in a good faith effort to avoid litigation to enjoin such breaches.

Plaintiffs propose the Parties meet and confer at 11:00 a.m., P.S.T., on Monday, July 20, 2020,
together with Independent Monitor Ordin, or as soon thereafter as the schedules of Ms. Ordin
and counsel permit.

Thank you,

Carlos Holguín
One of the attorneys for Plaintiffs

ccs:    Hon. Andrea Sheridan Ordin, *Flores* Special Master/Independent Monitor
        ORR Juvenile Coordinator Aurora Miranda
        ICE Juvenile Coordinator Deane Dougherty
        Leecia Welch, National Center for Youth Law
        Holly Cooper, U.C. Davis School of Law Legal Clinic
        Peter A. Schey, Center for Human Rights & Constitutional Law

Exhibit B

**From:** **Fabian, Sarah B (CIV)** Sarah.B.Fabian@usdoj.gov
**Subject:** RE: Letter requesting conference re detention facility COVID disclosures, etc.
**Date:** July 23, 2020 at 5:40 PM
**To:** Carlos Holguín crholguin@centerforhumanrights.email
**Cc:** Silvis, William (CIV) William.Silvis@usdoj.gov, Andrea Sheridan Ordin aordin@strumwooch.com, Leecia Welch lwelch@youthlaw.org, Neha Desai ndesai@youthlaw.org, Melissa Adamson madamson@youthlaw.org, Peter Schey pschey@centerforhumanrights.org, Murley, Nicole (CIV) Nicole.Murley@usdoj.gov

Carlos – if you send a letter demanding information regarding four separate issues then I need time to gather the information before I can discuss the issues, and as the information comes from many different sources that can take some time. Moreover, as you may be aware there are several other pressing Flores issues going on at this time and I have been focused primarily on working with your co-counsel on the most immediate deadlines. While it may feel leisurely to you, I assure you that I and my team have been working quite a bit on several *Flores*-related issues at one time.

I can talk at 9am PT on Monday about Issues 2 and 4. I cannot confirm that time until Monday morning though because as I mentioned, my client who I need to participate in the call is having surgery and is out the rest of this week. I will try to touch base with her and will confirm a time as soon as I can.

If you would like to meet and confer regarding the HHS juvenile coordinator report first thing on Monday as well then I will check with HHS regarding their availability. Please confirm that you will send us notification of what issues you would like to discuss related to the report—which is being filed tomorrow—no later than 9am ET Monday morning, so that we can be prepared to discuss any issues you may have.

Best,
Sarah

Sarah B. Fabian
Senior Litigation Counsel
Office of Immigration Litigation – District Court Section
(202) 532-4824

**From:** Carlos Holguín <crholguin@centerforhumanrights.email>
**Sent:** Thursday, July 23, 2020 8:21 PM
**To:** Fabian, Sarah B (CIV) <sfabian@CIV.USDOJ.GOV>
**Cc:** Silvis, William (CIV) <WSilvis@civ.usdoj.gov>; Andrea Sheridan Ordin <aordin@strumwooch.com>; Leecia Welch <lwelch@youthlaw.org>; Neha Desai <ndesai@youthlaw.org>; Melissa Adamson <madamson@youthlaw.org>; Peter Schey <pschey@centerforhumanrights.org>; Murley, Nicole (CIV) <NMurley@civ.usdoj.gov>
**Subject:** Re: Letter requesting conference re detention facility COVID disclosures, etc.

Sarah,

Plaintiffs continue to believe your proposed schedule unacceptably leisurely, especially in light of the Independent Monitor's findings regarding Defendants' routine use of unlicensed hotels to detain very young children during the COVID-19 pandemic. I urge Defendants to meet and confer tomorrow, especially with respect to Issues 2 and 4.

If Monday of next week is the soonest Defendants are willing to meet, Plaintiffs will meet

If Monday of next week is the soonest Defendants are willing to meet, Plaintiffs will meet then. I suggest 9:00 am pacific, or as soon thereafter as Defendants are willing. I suggest we convene a second call with the "separate group" to discuss Issue 1 and the HHS Juvenile Coordinator's report immediately following the 9:00 am call.

Thank you,

Carlos Holguín
General Counsel
Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, California 90057
213.388-8693 x.309 (v)
(213) 290-1642 (direct)
213.386.9484 (fax)
http://www.centerforhumanrights.org

> On Jul 23, 2020, at 8:08 AM, Fabian, Sarah B (CIV)
> <Sarah.B.Fabian@usdoj.gov> wrote:
>
> Please see the attached updated May ICE report. This responds to, and
> hopefully resolves, the concerns raised in Issue Number 3 of your letter.
>
> I expect to have more information regarding issues 2 and 4 tomorrow.
> However, the individual I need to participate on a call regarding issue 4 is out
> of the office having surgery this week. Therefore I propose that we set a call
> on that issue for Monday or Tuesday of next week. Please let me know your
> availability on those days. If I get the information I need from my clients, we
> can hopefully talk about issue 2 at that time as well.
>
> With regard to Issue 1, as noted, I propose we set a time next week to
> discuss at the same time that we talk about any issues related to the HHS
> Juvenile Coordinator report that will be filed tomorrow. Since that will be a
> separate group that call should be separate from the one above. Please let
> me know your availability for that call as well and I will figure out a time with
> my clients.
>
> Best,
> Sarah
>
> Sarah B. Fabian
> Senior Litigation Counsel
> Office of Immigration Litigation – District Court Section
> (202) 532-4824

**From:** Carlos Holguín <crholguin@centerforhumanrights.email>
**Sent:** Friday, July 17, 2020 5:04 PM
**To:** Fabian, Sarah B (CIV) <sfabian@CIV.USDOJ.GOV>
**Cc:** Silvis, William (CIV) <WSilvis@civ.usdoj.gov>; Andrea Sheridan Ordin

<aordin@strumwooch.com>; Deane.Dougherty@ice.dhs.gov; Miranda-Maese, Aurora (ACF) (CTR) <Aurora.Miranda-maese@acf.hhs.gov>; Leecia Welch <lwelch@youthlaw.org>; Neha Desai <ndesai@youthlaw.org>; Melissa Adamson <madamson@youthlaw.org>; Holly S Cooper <hscooper@ucdavis.edu>; Peter Schey <pschey@centerforhumanrights.org>; Murley, Nicole (CIV) <NMurley@civ.usdoj.gov>

**Subject:** Re: Letter requesting conference re detention facility COVID disclosures, etc.

In Plaintiffs' view, your proposal would needlessly delay any potential resolution of growing concerns over both ORR's and DHS's treatment of class members during an expanding pandemic. We urge Defendants to reconsider and agree to meet at their earliest convenience the first part of next week.

Thank you,

Carlos Holguín
General Counsel
Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, California 90057
213.388-8693 x.309 (v)
(213) 290-1642 (direct)
213.386.9484 (fax)
http://www.centerforhumanrights.org

> On Jul 17, 2020, at 12:58 PM, Fabian, Sarah B (CIV) <Sarah.B.Fabian@usdoj.gov> wrote:
>
> Carlos – with regard to the issues concerning ORR, Defendants propose that we combine this meet and confer with the required meet and confer to take place following the submission of the Juvenile Coordinator's report on July 24 in advance of filing a joint response to that report on July 31. Therefore, please let me know your availability to talk that week regarding these issues.
>
> With regard to the issues concerning DHS I am talking to my clients on Tuesday 7/21 and will suggest a time to discuss those issues after that.
>
> Best,
> Sarah
>
> Sarah B. Fabian
> Senior Litigation Counsel
> Office of Immigration Litigation – District Court Section

(202) 532-4824

**From:** Carlos Holguín <crholguin@centerforhumanrights.email>
**Sent:** Friday, July 17, 2020 1:24 PM
**To:** Silvis, William (CIV) <WSilvis@civ.usdoj.gov>; Fabian, Sarah
B (CIV) <sfabian@CIV.USDOJ.GOV>
**Cc:** Andrea Sheridan Ordin
<aordin@strumwooch.com>; Deane.Dougherty@ice.dhs.gov;
Miranda-Maese, Aurora (ACF) (CTR) <Aurora.Miranda-
maese@acf.hhs.gov>; Leecia Welch <lwelch@youthlaw.org>;
Neha Desai <ndesai@youthlaw.org>; Melissa Adamson
<madamson@youthlaw.org>; Holly S Cooper
<hscooper@ucdavis.edu>; Peter Schey
<pschey@centerforhumanrights.org>
**Subject:** Letter requesting conference re detention facility
COVID disclosures, etc.

Plaintiffs request the courtesy of a response indicating whether
Defendants intend to meet and confer Monday, July 20, at 11:00
am, as proposed in the annexed correspondence.

Thank you,

Carlos Holguín
General Counsel
Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, California 90057
213.388-8693 x.309 (v)
(213) 290-1642 (direct)
213.386.9484 (fax)
http://www.centerforhumanrights.org

<ICE_May 2020 Flores Report Redo_7_23_2020.xlsx>

Exhibit C

DECLARATION OF MELISSA ADAMSON

I, Melissa Adamson, declare and say as follows:

1.   I am an attorney at the National Center for Youth Law, which serves as class counsel for Plaintiffs in *Flores v. Sessions*. I execute this declaration in support of Plaintiffs' Response to Objections to Independent Monitor's Interim Report re Temporary Housing for Minors and Families under Title 42.

2.   Pursuant to ¶¶ 28 and 29 of the *Flores* Settlement Agreement, the Department of Homeland Security ("DHS") and the Department of Health and Human Services ("HHS") provide class counsel with monthly statistical reports on class members in its custody.

3.   The DHS reports provide each class member's "Alien File Number," "Subject ID," "Given Name," "Family Name," "Country of Citizenship," "Birth Date," and "Initial ICE Book-In Date." The DHS reports also provide the "Book-in Date" and "Book-out Date" for each placement in which the child has been detained, as well as each placement's "Facility Name" and "Facility Type." The DHS reports also include information regarding "Release Reason" and "Detention Criteria."

4.   I used the following methodology to calculate the information presented in the attached data report analysis ("*Flores* Data Summary: April, May, and June 2020"). The information that appears in this analysis is true and correct to the best of my knowledge and belief.

5.   To identify the number of class members expelled or awaiting expulsion under Title 42, I reviewed the monthly DHS reports and calculated the number of children listed as "Title 42 Return," "T42 Expulsion," or "T42 Awaiting Expulsion" in the "Release Reason" or "Detention Criteria" columns.

6.   To identify class members that were held in ICE custody after leaving an ORR placement, I reviewed the detention history for class members who had an entry for "ORR" in the "Facility Type" column of the monthly DHS reports.

7.   To determine each class member's "Total Days in ICE Custody," I calculated the number of days between each class member's "Book-in Date" and "Book-out Date," which included time spent in MVM transport, hotels, ICE hold rooms, and field offices. For example, a class member with a book-in date of 4/21/2020 and a book-out date of 4/24/20 was calculated as having spent three days in ICE custody. This method was chosen to avoid overcounting days spent in custody, as the monthly statistical reports do not list the exact time that class members arrive at each placement.

8.   The data presented in the attached data report analysis does not include the time that each class member spent in CBP custody prior to entering ICE custody.

9.   To determine each class member's age, I calculated the difference between each class member's listed date of birth and the last day of the month in which they were detained.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 25, 2020, at San Mateo, California.

                                              /s/ Melissa Adamson
                                        Melissa Adamson

*Flores* **Data Summary: April, May, and June 2020**

This summary includes information regarding the following categories of children for the months of April, May, and June 2020.

1. Unaccompanied Children Detained in Hotels and Expelled Under Title 42
2. Unaccompanied Children Detained in Hotels and Awaiting Expulsion Under Title 42
3. Unaccompanied Children Detained in Hotels After Leaving ORR Custody
4. Unaccompanied Children Detained in Hotels Prior to Entering ORR Custody

**A. April 2020 Data**[1]

**1. Unaccompanied Children Detained in Hotels and Expelled Under Title 42**

In April, 29 unaccompanied children were detained in hotels and expelled under Title 42. All 29 children were listed as "Title 42 return" in the data report's "Release Reason" column."

| Total Days in ICE Custody[2] | Number of Children Detained | Ages of Children Detained[3] |
|---|---|---|
| 3 days | 11 | 1 year old (1) <br> 13 years old (1) <br> 14 years old (1) <br> 15 years old (1) <br> 16 years old (3) <br> 17 years old (4) |
| 4 days | 6 | 4 years old (1) <br> 10 years old (1) <br> 15 years old (1) <br> 16 years old (1) <br> 17 years old (2) |
| 6 days | 9 | 13 years old (1) <br> 16 years old (3) <br> 17 years old (5) |
| 7 days | 2 | 16 years old (1) <br> 17 years old (1) |
| 10 days | 1 | 17 years old (1) |

[1] "April 2020 Juvenile Flores Report," including "individuals booked into an FRC, Hold room, MVM transport or Authorized Juvenile IGSA Facility who have a book-out between 4/1/2020 and 4/30/2020 or were in custody as of 4/30/2020."

[2] For this table and the following tables, the "Total Days in ICE Custody" column reflects the length of time between a child's ICE "book-in" and "book-out" date, including time spent in MVM transport, hotels, and ICE hold rooms. For example, a child with a book-in date of 4/21/2020 and book-out date of 4/24/2020 is listed as spending three days in ICE custody.

[3] For this table and the following tables, children's ages were determined based on the child's date of birth and the last day of the month in which they were detained.

**B.  May 2020 Data**[4]

**1.  Unaccompanied Children Detained in Hotels and Expelled Under Title 42**

In May, 71 unaccompanied children were detained in hotels and expelled under Title 42. 70 children were listed as "Title 42 Return" in the data report's "Release Reason" column. One child was listed as "T42 awaiting expulsion" in the "Detention Criteria" column but had a listed book-out date, and therefore is included in the total number of children expelled under Title 42 for this month.

| Total Days in ICE Custody | Number of Children Detained | Ages of Children Detained |
|---|---|---|
| 1 day | 6 | 9 years old (1)<br>13 years old (1)<br>15 years old (1)<br>16 years old (2)<br>17 years old (1) |
| 2 days | 17 | 9 years old (1)<br>11 years old (2)<br>13 years old (1)<br>14 years old (2)<br>15 years old (3)<br>16 years old (2)<br>17 years old (6) |
| 3 days | 7 | 10 years old (1)<br>12 years old (1)<br>15 years old (2)<br>17 years old (3) |
| 4 days | 3 | 14 years old (1)<br>17 years old (2) |
| 5 days | 4 | 15 years old (1)<br>16 years old (2)<br>17 years old (1) |
| 6 days | 8 | 16 years old (2)<br>17 years old (6) |
| 7 days | 4 | 10 years old (1)<br>16 years old (2)<br>17 years old (1) |
| 8 days | 10 | 11 years old (1)<br>14 years old (2)<br>15 years old (2)<br>17 years old (5) |

---

[4] "ICE_May 2020 Flores Report Redo_7_23_2020," including "the entire detention history for juveniles who were booked into an FRC, Hold Room, MVM Transportation or an Authorized Juvenile IGSA Facility who have a book-out between 5/1/2020 and 5/31/2020 or were in custody as of 5/31/2020."

| | | |
|---|---|---|
| 9 days | 2 | 15 years old (1)<br>17 years old (1) |
| 11 days | 1 | 17 years old (1) |
| 13 days | 2 | 17 years old (2) |
| 15 days | 3 | 9 years old (1)<br>11 years old (1)<br>17 years old (1) |
| 16 days | 2 | 1 year old (1)<br>7 years old (1) |
| 19 days | 1 | 17 years old (1) |
| 21 days | 1 | 13 years old (1) |

For example:
- 10-year-old E.M.L. was held at one Hampton hotel for three days and then transferred by MVM Transport to another Hampton hotel for four days before he was expelled.
- 7-year-old J.E.L. and 1-year-old M.E.L. were held at a Hampton hotel for 15 days and then held by MVM Transport for one day before they were expelled.
- 13-year-old M.Y.M. was held at a Hampton Inn for 20 days and then held by MVM Transport for one day before he was expelled.

## 2. Unaccompanied Children Detained in Hotels, Awaiting Expulsion Under Title 42

In May, 9 unaccompanied children were detained in hotels and awaiting expulsion under Title 42. These children were listed as "T42 Awaiting Expulsion in the "Detention Criteria" column and were still in custody as of May 31, 2020.

| Total Days in ICE Custody | Number of Children Detained | Ages of Children Detained |
|---|---|---|
| 1 day | 1 | 17 years old (1) |
| 2 days | 6 | 14 years old (1)<br>16 years old (1)<br>17 years old (4) |
| 8 days | 1 | 15 years old (1) |
| 10 days | 1 | 4 years old (1) |

### 3.   Unaccompanied Children Detained in Hotels After Leaving ORR Custody

In May, 8 unaccompanied children were held in hotels for after leaving ORR custody and before they were removed or voluntarily departed the country.

| Total Days in ICE Custody | Number of Children Detained | Ages of Children Detained |
|---|---|---|
| 2 days | 1 | 14 years old (1) |
| 8 days | 2 | 16 years old (1) 17 years old (1) |
| 10 days | 1 | 17 years old (1) |
| 11 days | 1 | 17 years old (1) |
| 12 days | 3 | 14 years old (1) 16 years old (2) |

For example:
- 14-year-old L.O.R. was transferred from his ORR placement by MVM Transport to a Hampton hotel for one day, then transferred by MVM Transport to a different Hampton hotel for 8 days, then held by MVN Transportation for three days before he was removed.

### 4.   Unaccompanied Children Detained in Hotels Prior to Entering ORR Custody

In May, two unaccompanied children were held in hotels before being transferred to an ORR facility.

| Total Days in ICE Custody | Number of Children Detained | Ages of Children Detained |
|---|---|---|
| 4 days | 1 | 10 years old (1) |
| 9 days | 1 | 12 years old (1) |

**C.  June 2020 Data**[5]

**1.  Unaccompanied Children Detained in Hotels and Expelled Under Title 42**

In June, 120 unaccompanied children were detained in hotels and expelled under Title 42. 116 children were listed as "Title 42 Return" in the "Release Reason" column. Four children were listed as "T42 awaiting expulsion" in the "Detention Criteria" column but had a listed book-out date, and therefore are included in the total number of children expelled under Title 42 for this month.

| Total Days in ICE Custody | Number of Children Detained | Ages of Children Detained |
|---|---|---|
| 2 days | 12 | 12 years old (1)<br>13 years old (1)<br>15 years old (2)<br>16 years old (3)<br>17 years old  (5) |
| 3 days | 13 | 1 year old (1)<br>6 years old (1)<br>12 years old (1)<br>15 years old (1)<br>16 years old (4)<br>17 years old (5) |
| 4 days | 21 | 8 years old (1)<br>13 years old (3)<br>14 years old (2)<br>15 years old  (1)<br>16 years old (8)<br>17 years old (6) |
| 5 days | 24 | 8 years old (1)<br>11 years old (2)<br>14 years old (3)<br>15 years old (4)<br>16 years old (5)<br>17 years old (9) |
| 6 days | 21 | 13 years old (3)<br>14 years old (2)<br>15 years old  (2)<br>16 years old (5)<br>17 years old (9) |
| 7 days | 13 | 3 years old (1)<br>5 years old (1)<br>13 years old (1) |

---

[5] "June 2020 Flores ICE Report," including "the entire detention history for juveniles who were booked into an FRC, Hold Room, MVM transportation or an Authorized Juvenile IGSA Facility . . . who have a book out between 06/01/2020 and 6/30/2020 or who were in custody as of 06/30/2020."

| | | 15 years old (2) |
|---|---|---|
| | | 16 years old (4) |
| | | 17 years old (4) |
| 8 days | 5 | 9 years old (1) |
| | | 12 years old (1) |
| | | 15 years old (1) |
| | | 16 years old (1) |
| | | 17 years old (1) |
| 9 days | 2 | 3 years old (1) |
| | | 9 years old (1) |
| 10 days | 2 | 16 years old (1) |
| | | 17 years old (1) |
| 11 days | 1 | 17 years old (1) |
| 12 days | 2 | 8 months old (1) |
| | | 9 years old (1) |
| 14 days | 2 | 6 years old (1) |
| | | 4 years old (1) |
| 17 days | 1 | 15 years old (1) |
| 19 days | 1 | 5 years old (1) |

For example:
- 5-year-old D.J.S. was held in a Hampton hotel for 19 days before she was expelled.
- 9-year-old N.P.J. and 8 month old H.P.J. (368496739), were held in a Hampton hotel for 12 days before they were expelled.
- 4-year-old B.P.B. was held at a Hampton hotel for 14 days he was expelled.
- 6-year-old S.V. was held at a Hampton hotel for 13 days before he was expelled.
- 15-year-old L.I.A. was held at a Hampton hotel for 14 days and then transferred by MVM Transport to a different Hampton hotel for 3 days before she was expelled.

## 2. Unaccompanied Children Detained in Hotels, Awaiting Expulsion Under Title 42

In the month of June, 20 unaccompanied children were detained in hotels and awaiting expulsion under Title 42. These children were listed as "T42 Awaiting Expulsion" in the "Detention Criteria" column and were still in custody as of June 30, 2020.[6]

| Total Days in ICE Custody | Number of Children Detained | Ages of Children Detained |
|---|---|---|
| 1 day | 3 | 15 years old (2) |
| | | 16 years old (1) |
| 3 days | 2 | 16 years old (1) |
| | | 17 years old (1) |
| 4 days | 7 | 2 months old (1) |

---

[6] "ICE_May 2020 Flores Report Redo_7_23_2020," reflecting "the entire detention history for juveniles who were booked into an FRC, Hold Room, MVM Transportation or an Authorized Juvenile IGSA Facility who have a book-out between 5/1/2020 and 5/31/2020 or were in custody as of 5/31/2020."

| | | 1 year old (1) |
|---|---|---|
| | | 5 years old (1) |
| | | 8 years old (1) |
| | | 16 years old (1) |
| | | 17 years old (2) |
| 5 days | 3 | 14 years old (1) |
| | | 16 years old (1) |
| | | 17 years old (1) |
| 6 days | 1 | 13 years old (1) |
| 8 days | 3 | 16 years old (2) |
| | | 17 years old (1) |
| 9 days | 1 | 17 years old (1) |

### 3. Unaccompanied Children Detained in Hotels After Leaving ORR Custody

In June, 10 unaccompanied children were held in hotels, MVM transport, or field office hold rooms after leaving ORR custody and before they were removed or voluntarily departed the country.

| Total Days in ICE Custody | Number of Children Detained | Ages of Children Detained |
|---|---|---|
| 3 days | 1 | 17 years old (1) |
| 4 days | 1 | 5 years old (1) |
| 6 days | 5 | 4 years old (1) |
| | | 8 years old (1) |
| | | 9 years old (1) |
| | | 11 years old (1) |
| | | 17 years old (1) |
| 7 days | 2 | 3 years old (1) |
| | | 9 years old (1) |
| 8 days | 1 | 8 years old (1) |

For example:
- 3-year-old K.J.P. was transferred from an ORR Transitional Foster Care placement to "MVM Transportation," where he was held for 7 days before being removed from the country.
- 9-year-old A.C.F. was transferred from an ORR shelter to MVM Transport for 1 day, then to a Field Office Hold Room for 5 days before departing the country.
- 4-year-old J.R.H. was transferred from an ORR shelter to MVM Transport for 6 days before being removed from the country.
- 8-year-old R.M.L. was transferred from an ORR shelter to a Hampton hotel for 2 days, then to a Hold Room for 4 days before departing the country.

**4.   Unaccompanied Children Detained in Hotels Prior to Entering ORR Custody**

In the month of June, there were four unaccompanied children that were held in hotels before being transferred to ORR custody.

| Total Days in ICE Custody | Number of Children Detained | Ages of Children Detained |
|---|---|---|
| 10 days | 3 | 11 years old (1)<br>15 years old (1)<br>17 years old (1) |
| 24 days | 1 | 16 years old (1) |

For example:
- 16-year-old B.B.C. was held at a Hampton hotel for 4 days, transferred to a different Hampton hotel for one day, and then transferred back to the original Hampton hotel for 19 days before he was transferred to ORR custody.