UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | July 29, 2020 |
|---|---|---|---|

| Title | ***Jenny L. Flores, et al. v. William P. Barr, et al.*** | Page | 1 of 8 |
|---|---|---|---|

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE *EX PARTE* APPLICATION TO INTERVENE [854]**

On July 20, 2020, Plaintiff Class Members B.L.N., D.F.L.G., and W.B. filed an *Ex Parte* Application to Intervene. [Doc. # 854.] Each of the Proposed Plaintiff-Intervenors is a Class Member detained at an Immigrations and Customs Enforcement ("ICE") Family Residential Center ("FRC") with one or both of their parents. They allege that their interests are not adequately represented by current Class Counsel and are at odds with the Court's June 26, 2020 Order for Class Counsel and ICE to meet and confer regarding "the adoption and implementation of proper written advisals and other protocols to inform detained guardians/parents about minors' rights under the [Flores Settlement Agreement ('FSA')] and obtain information regarding, and procedures for placement with, available and suitable sponsors." June 26, 2020 Order [Doc. # 834]. Proposed Plaintiff-Intervenors request that this Court grant them leave to intervene so that they may: (1) protect their interests in the enforcement of the FSA; (2) address the adequacy of Class Counsel and seek appointment of co-counsel to represent the interests of accompanied Class Members detained at the FRCs; (3) address Proposed Plaintiff-Intervenors' request for reconsideration of the extension of the July 17, 2020 release deadline imposed by the June 26, 2020 Order, as well as reconsideration of the parties' stipulation to move that release deadline to July 27, 2020; and (4) address any proposed waiver protocol.[1]  *Ex Parte* App. at 7.

On July 22, 2020, Defendants filed a Response in opposition. [Doc. # 872.] On July 23, 2020, Plaintiffs filed a Response in opposition, and a separate group of Class Co-Counsel filed a Notice of Non-Opposition to the *Ex Parte* Application. [Doc. ## 876, 877.] In addition, Defendants filed an *Ex Parte* Application to Stay the Court's June 26, 2020 Order while the *Ex Parte* Application to Intervene is pending, which the Court denied. [Doc. ## 879, 887.]

---

[1] Although the parties and Proposed Plaintiff-Intervenors refer in shorthand to the Court's suggestion that the parties negotiate a set of proper written advisals as a "waiver protocol," the Court considers the advisals to be more aptly referred to as a "know-your-rights protocol" because their primary purpose is to inform Class Members and their guardians/parents of their rights under the FSA in an orderly fashion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | July 29, 2020 |
|---|---|---|---|
| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 2 of 8 |

For the reasons stated below, the Court **DENIES** the *Ex Parte* Application to Intervene.

# I.
# DISCUSSION

### A.  *Ex Parte* Relief

To justify *ex parte* relief, an applicant must make two separate showings. "First, the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures. Second, it must be established that the moving party is without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492-93 (C.D. Cal. 1995); *see* Fed. R. Civ. P. 6(c).

Proposed Plaintiff-Intervenors seek to sound the alarm of the danger of keeping any Class Members detained in FRCs where new COVID-19 cases are being reported. But Class Counsel already has rung that bell, and the Court already ordered enhanced monitoring, urgent implementation of safety protocols, and that Class Members held for more than 20 days must be transferred to non-congregate settings or released upon either (1) the consent of their guardians/parents to release them to an available suitable sponsor, (2) the exercise of ICE's discretion to release minors with their guardians/parents, or (3) a Court order requiring the transfer of the adults to non-congregate settings due to conditions at the FRCs. June 26, 2020 Order at 3–4. Proposed Plaintiff-Intervenors also seek to address any proposed know-your-rights protocol before the Court's July 27, 2020 deadline. Even if the parties had reached an agreement on a know-your-rights protocol, however, they would have had to present it to the Court for approval, at which time there would have been an opportunity for class notice, objections, and Court approval of any new settlement terms. In addition, counsel for Proposed Plaintiff-Intervenors also could file briefs as *amici curiae* with objections or comments.

In short, Proposed Plaintiff-Intervenors have not demonstrated irreparable prejudice if required to present their request as a duly noticed motion consistent with the Local Rules. The Court therefore finds that the request for intervention is not properly sought on an *ex parte* basis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 85-4544-DMG (AGRx) | Date | July 29, 2020 |
|---|---|---|---|
| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 3 of 8 |

**B.     Intervention as of Right under Federal Rule of Civil Procedure 24(a)**

Even if the Proposed Plaintiff-Intervenors had properly moved *ex parte*, an alternate ground on which to deny the instant application is their failure to show that their interests are not adequately represented by Class Counsel such that emergency relief is warranted.

Rule 24(a)(2) grants intervention as of right when: (1) the applicant's motion is timely; (2) the applicant has asserted an interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that without intervention the disposition may, as a practical matter, impair or impede its ability to protect that interest; and (4) the applicant's interest is not adequately represented by the existing parties. *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). The crux of the Proposed Plaintiff-Intervenors' argument is that Class Counsel have failed to represent their interests under the FSA. Before engaging their specific allegations, however, the Court must clarify the backdrop of this conflict.

First, the FSA does not cover adults. Nonetheless, from the first motion in this action before this judge, Class Counsel has advocated for the release of parents with their minor children where possible. Mot. to Enforce at 18 [Doc. # 100-1]. In 2015, the Court ordered accompanying parents' release not under the FSA, but "in accordance with applicable laws and regulations unless the parent is subject to mandatory detention under applicable law or after individualized custody determination." *Flores v. Lynch*, 212 F. Supp. 3d 907, 916 (C.D. Cal. 2015), *aff'd in part, rev'd in part and remanded*, 828 F.3d 898 (9th Cir. 2016). As all parties are well aware, the Ninth Circuit reversed even that nuanced exhortation to release parents with their children where otherwise legally permissible, finding that the FSA does not provide "affirmative release rights for parents." *Flores v. Lynch*, 828 F.3d 898, 909 (9th Cir. 2016).

Second, the Government has declined to exercise its discretion to release certain adults accompanying minors and, therefore, those adults remain in ICE custody with their minor children. ICE apparently would rather not provide Class Members with a know-your-rights protocol at all if any Class Members disagree with the procedure and would prefer to keep families in detention indefinitely in the FRCs pending the conclusion of their immigration proceedings. *See* Defs.' *Ex Parte* App. to Stay at 8 [Doc # 879] ("[I]f a consent and separation process cannot properly be implemented to the satisfaction of class members, it is appropriate to keep the family together at the family residential center."). By declining to exercise its discretion to release certain adult detainees, even for a humanitarian reason such as the rising rates of COVID-19 cases in the FRCs and their surrounding communities, the Government has placed Class Members in a conundrum of its own making, completely unassisted by Class Counsel. Due to its ill-considered and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 85-4544-DMG (AGRx)** | Date | July 29, 2020 |
| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 4 of 8 |

catastrophic prior efforts to involuntarily separate parents from their minor children, another court has enjoined the Government from doing so again. *See Ms. L. v. U.S Immigration & Customs Enf't*, 310 F. Supp. 3d 1133, 1149 (S.D. Cal. 2018). It therefore cannot implement any policy resulting in family separation absent parental consent or a finding that an accompanying parent is unfit or a danger to the Class Member. *Id.* Thus, any Class Members' prolonged detention in the midst of the pandemic is due to ICE's failure to exercise its discretion to release these particular parents with their children, and *despite* multiple motions by Plaintiffs' Class Counsel and the same number of Court Orders. Similarly, any specter of family separation arises due to the Government's declination to parole accompanying adults along with minors, not due to specific failures of Class Counsel.

Class Counsel appeared to understand this context when seeking a TRO and order enforcing the FSA at the outset of the COVID-19 pandemic and requesting that the Court "strongly *encourage*[ ICE] to release accompanying parents or guardians when class members are released under the criteria set forth in 8 C.F.R. § 1236.3(b)(2)." *Ex Parte* App. for TRO, Proposed Order at 4 (emphasis added) [Doc. # 733-18]. In compliance with the Court's June 26, 2020 Order, Class Counsel also has met and conferred with the Government on appropriate written advisals of rights and a know-your-rights procedure that will meet Court approval and ensure greatest compliance with the FSA. *See* Defs.' Response at 6.

"Under well-settled precedent in this circuit, '[w]here an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises.'" *League of United Latin Am. Citizens v. Wilson* ("*LULAC*"), 131 F.3d 1297, 1305 (9th Cir. 1997) (quoting *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996), *as amended on denial of reh'g* (May 30, 1996)) (internal quotation marks omitted). There is no question that Class Counsel and Proposed Plaintiff-Intervenors share the same ultimate objective: to assure and enforce Defendants' compliance with the FSA, including the expeditious release of accompanied Class Members who are not flight risks or risks to their own safety or the safety of others. Class Counsel have also repeatedly demonstrated their general commitment to urge the release of accompanying adults from FRCs, not just Class Members, despite the fact that this Court does not have the authority under the FSA to grant such relief. Accordingly, Class Counsel are accorded a presumption of adequacy of representation.

"Generally, "[t]he applicant-intervenor's burden in showing inadequate representation is minimal: it is sufficient to show that representation *may* be inadequate." *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1498-99 (9th Cir. 1995), *abrogated on other grounds* by *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011). Proposed Plaintiff-Intervenors assert that (1) the July 17, 2020 deadline to release Class Members the Court set in its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 85-4544-DMG (AGRx)** | Date | July 29, 2020 |
| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 5 of 8 |

June 26, 2020 Order was not expeditious enough, and Class Counsel should not have stipulated to extend that deadline by another 10 days to July 27; (2) detaining accompanied Class Members in secure, non-licensed FRCs violates Paragraphs 11 and 19 of the FSA; (3) any waiver of any *Flores* rights or consent from a parent to separate from their child cannot be valid due to the coercive circumstances of the pandemic; and (4) they "object to any protocol whereby the terms and legal consequences of a waiver are completely unknown, and where counsel for accompanied Class Members will be informed after the 'choice' between separation and indefinite detention is made." *Ex Parte* App. at 25–28. None of these arguments meet Proposed Plaintiff-Intervenors' minimal burden.

The Proposed Plaintiff-Intervenors' goal of enforcing FSA provisions for expeditious release did not suffer in the least from the parties' stipulation to extend the July 17, 2020 deadline by 10 days. None of the three possible prerequisites that could have allowed the Court's release order to proceed appeared likely to materialize as of the July 17, 2020 deadline—if anything, the extension to July 27 merely served to confirm the unlikelihood that any of the prerequisites *could* be met. Even now, the Court is not aware of any change in circumstance that has made that release order possible as to the 100 affected Class Members.

The Proposed Plaintiff-Intervenors' claim that "no party is heeding the warnings of this Court and the independent monitor," is also demonstrably false, given the significant decrease in FRC populations since Plaintiffs brought their March 25, 2020 TRO Application.[2] *Id.* at 25. Indeed, the very reason for the Court's decision to hold monthly status conferences with the parties and to require the Juvenile Coordinators to provide monthly interim reports was to ensure that progress was continuing to be made to implement safety protocols and to reduce the population in congregate facilities during the pandemic.

In addition, as Proposed Plaintiff-Intervenors themselves point out, the Court has already held that the FRCs are secure, unlicensed facilities on at least two occasions pursuant to arguments successfully advanced by Class Counsel. *See Flores v. Sessions*, 394 F. Supp. 3d 1041, 1070 (C.D. Cal. 2017); *Flores v. Johnson*, 212 F. Supp. 3d 864, 879 (C.D. Cal. 2015), *aff'd in part, rev'd in*

---

[2] There were 648 Class Members detained by ICE in FRCs as of March 28, 2020; 342 Class Members detained as of April 21, 2020; 185 Class Members detained as of May 15, 2020; and 124 Class Members detained as of June 8, 2020. June 26, 2020 Order at 2 n.1; ICE Juvenile Coordinator Report at 2 [Doc. # 813-1]. As of July 21, 2020, that number has increased to 182 Class Members in FRCs, but of those, 100 have been detained for more than 20 days. ICE Juvenile Coordinator Report at 2–3 [Doc. # 882-1]. The number of Class Members released by the Office of Refugee Resettlement ("ORR") following the Court's various pandemic-related orders is even more dramatic. As of July 22, 2020, 250 unaccompanied minors remained in congregate shelters, down from 3,622 minors as of March 13, 2020. ORR Juvenile Coordinator Report at 2 [Doc. # 882-2]; TRO App., Schey Decl. ¶ 3 [Doc # 733-2].

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | July 29, 2020 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 6 of 8 |
|---|---|---|---|

*part and remanded*, 828 F.3d 898 (9th Cir. 2016). Yet, ICE's records—as inconsistent and incomplete as those records may be—purport to show that most, if not all, of the Class Members remaining in ICE custody for more than 20 days are subject to a final order of removal and therefore have been deemed a flight risk (along with their parents), or are in expedited removal proceedings wherein their parents are subject to mandatory detention. Therefore, there is a dispute between the parties as to whether they may fall under the FSA's provisions permitting such Class Members to be held in secure facilities. *See, e.g.*, FSA at ¶¶ 21–23 [Doc. # 101]; June 26, 2020 Order at 2 ("*Amici* identify potential errors in the ICE Juvenile Coordinator's report . . . that may have resulted in certain Class Members being kept in custody for arbitrary or inconsistent reasons."); May 22, 2020 Order re Updated Juvenile Coordinator Reports at 2 [Doc. # 799] ("ICE continues to show cursory explanations for denying minors release under the FSA[.]"). The Court is still in the process of evaluating these claims to ensure that individualized determinations are being made and that ICE is making and recording prompt and continuous efforts toward release of the minor. FSA at ¶¶ 14, 18. At a minimum, the affected Class Members are subject to *Ms. L*'s injunction preventing them from being separated from their parents absent consent. In any event, neither of these arguments show that Class Counsel have been "inadequate" in their efforts to advocate for the expeditious release of Class Members under the terms of the FSA, to the extent it is legally possible.

Because they believe any "waiver" protocol is inherently coercive when families fear contracting COVID-19 within the FRCs, Proposed Plaintiff-Intervenors urged Class Counsel to advocate for the immediate release of all Class Members and leave it up to the Government to determine whether and how to release adults as well. Pls.' Response, Ex. 1 and Ex. 4 [Doc. ## 876-1, 876-4]. As discussed above, however, this Court's ability to order the "immediate" release of accompanied Class Members, where the Government declines to release the adults, is constrained by binding Ninth Circuit precedent, the FSA itself, and other court cases—as well as the obvious fact that minors cannot simply be "released" without suitable supervision. The Court's June 26, 2020 Order outlined the only three conditions for immediate release of the remaining accompanied minors that, as of this time, appear to be legally viable: (1) with the Class Member guardian/parent's informed consent to an available suitable sponsor or other available COVID-free non-congregate setting; (2) in the exercise of the Government's discretion to parole accompanying adults who are subject to a final order of removal or mandatory detention; or (3) a court order in another case that effectuates the release of accompanying adults. June 26, 2020 Order at 3. To date, none of these contingencies has occurred with regard to the remaining 100 Class Members detained at FRCs for more than 20 days. Thus, Proposed Plaintiff-Intervenors have tied themselves into a legal Gordian's Knot, where the relief they seek cannot be obtained in this Court and they oppose the only avenue that might offer some limited relief. Class Counsel are highly skilled and knowledgeable federal court practitioners who understand that they cannot

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | July 29, 2020 |
|---|---|---|---|
| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 7 of 8 |

keep plying the Court with arguments that already have been tried and failed—and that they must represent all Class Members under the law with an unvarnished view of the realities on the ground.

Based on Class Counsel Peter Schey's July 18, 2020 e-mail to the attorneys now representing Proposed Plaintiff-Intervenors, Schey is well aware of how accurate and detailed an acceptable know-your-rights protocol must be. Govindaiah Decl., Ex. F [Doc. # 856-6]. Proposed Plaintiff-Intervenors therefore engage in rank speculation that the proposed advisals, which require Court approval to be implemented, would contain "no information about the terms of the consent or waiver," fail to involve the advice of families' attorneys, and violate due process of law. *See Ex Parte* App. at 16. Any worst-case scenarios are mere conjecture at this time.[3] If anything, the preparation of an adequate know-your-rights protocol to advise Class Members of the existence of their FSA rights is long overdue.[4]

Proposed Plaintiff-Intervenors' critiques of Class Counsel thus boil down to a disagreement on litigation strategy. Courts hesitate to grant intervention "[w]hen a proposed intervenor has not alleged any substantive disagreement between it and the existing parties to the suit, and instead has vested its claim for intervention entirely upon a disagreement over litigation strategy or legal tactics." *LULAC*, 131 F.3d at 1306. The Court finds no inadequacy of representation here and sees no reason to permit intervention on an *ex parte* basis for the purpose of advocating for a position—namely, release of 100 affected Class Members *and* their adult

---

[3] Shalyn Fluharty, another attorney representing Proposed Plaintiff-Intervenors, argues that any "waiver" procedure implemented at the FRCs during the COVID-19 pandemic will raise concerns similar to those raised in *Ms. L v. Immigration and Customs Enforcement*, No. CV 18-428-DMS, (S.D. Cal.). Fluharty Decl. at ¶¶ 36, 40–41, Ex. A [Doc. ## 858, 858-1]. There is no evidence that Class Counsel is unaware of the various pitfalls of a negotiated know-your-rights protocol and is not making zealous efforts to avoid them. The Court welcomes constructive input, however, and invites Fluharty to continue to provide it when and if the parties agree upon a protocol and present it to the Court for approval.

[4] An anecdote shared by Andrea Meza, one of the attorneys representing Proposed Plaintiff-Intervenors, submitted in support of their *Ex Parte* Application, illustrates the need for careful and thoughtful know-your-rights protocols. Meza states that she has, on rare occasions, inquired of ICE whether a child at Karnes FRC may be released without their detained parent. She notes that "the absence of a mechanism by which a father could allow for his child to be released to the child's step-mother was a contributing factor to the suicide of one of [her] clients, the father of a Class Member, at Karnes." Meza Decl. at ¶ 14 [Doc. # 855]. This heart-wrenching anecdote illustrates the need for Class Members and their accompanying guardians/adults to be properly advised of their rights. The Proposed Plaintiff-Intervenors are understandably upset that certain families may be presented with a "Hobson's choice"—though the current predicament has arisen through no fault of Class Counsel. The harshness of the choice, however, does not mean that families should not be *informed* of its existence. A family's considerations regarding whether a 16- or 17-year old minor should be released to a suitable sponsor under Paragraph 14 of the FSA may not be the same as that of a family with a two-year old minor.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | July 29, 2020 |
|---|---|---|---|
| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 8 of 8 |

guardians—that has already been rejected by the Ninth Circuit, and for other redundant Court orders.

Still, as Class Counsel acknowledge, Proposed Plaintiff-Intervenors' unparalleled insight into the daily realities and needs of Class Members and adults in FRCs is invaluable to the Class Members, the parties, the Court, and the Independent Monitor. The legal service providers may continue to file *amici curiae* and present much-needed facts and legal arguments before the Court, including in response to the proposed advisals and the know-your-rights protocol should the parties ultimately agree upon them. Class Counsel remain open to counsel for Proposed Plaintiff-Intervenors joining further meet-and-confers with the parties and the Independent Monitor regarding the know-your-rights advisals and protocol. Proposed Plaintiff-Intervenors may also request bond hearings or file individual suits to review their custody status under Paragraph 24 of the FSA. *See* Pls.' Response at 15.

Given the history of this litigation and the remarkable results of Class Counsel's advocacy from the inception of this action 35 years ago through the onset of the pandemic, the Court finds that Class Counsel have provided more than adequate representation and that Proposed Plaintiff-Intervenors' interests will not be impaired by denying their application to intervene as of right at this time. *See, e.g.*, *id.* at 4 n.1 (listing many of the motions Class Counsel have filed and won).

**C.      Permissive Intervention Under Fed. R. Civ. P. 24(b)**

Proposed Plaintiff-Intervenors also urge the Court to permit them to intervene on a permissive basis. A court has discretion to grant permissive intervention when (1) the intervenor's case "shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). For the reasons stated above, the Court also declines to grant permissive intervention on the basis of the *ex parte* application.

**III.
CONCLUSION**

In light of the foregoing reasons, the Court **DENIES** Proposed Plaintiff-Intervenors' *Ex Parte* Application to Intervene.

**IT IS SO ORDERED**.