CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Carlos R. Holguín (90754)
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Email: crholguin@centerforhumanrights.email

NATIONAL CENTER FOR YOUTH LAW
Leecia Welch (Cal. Bar No. 208741)
Neha Desai (Cal. RLSA No. 803161)
Poonam Juneja (Cal. Bar No. 300848)
Freya Pitts (Cal. Bar No. 295878)
1212 Broadway, Suite 600 Oakland, CA 94612
Telephone: (510) 835-8098
Email: lwelch@youthlaw.org

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM BARR, Attorney General of the United States, *et al.*, <br><br> Defendants. | Case No. CV 85-4544-DMG-AGRx <br><br> PLAINTIFFS' REPORT ON PARTIES' CONFERENCE RE "TITLE 42" CLASS MEMBERS. <br><br> Status conference: Aug. 7, 2020 <br> Time: 11:00 a.m. <br> Hon. Dolly M. Gee |

I. INTRODUCTION

By order dated July 25, 2020, the Court directed the Parties to "meet and confer regarding the issues with 'hoteling' raised in the Monitor's Interim Report on the Use of Temporary Housing for Minors and Families Under Title 42 [Doc. # 873] and provide a status update on their efforts to resolve those issues at the August 7, 2020 hearing in this matter." Order re Defendants' *Ex Parte* Application to Stay, July 25, 2020 [Doc. # 887] at 3.

On July 27, 2020, the Parties and the Independent Monitor met and conferred in attempt to resolve their differences over Defendants' failure to transfer class members designated for "Title 42 Return" to licensed placements "as expeditiously as possible," as required by Settlement ¶¶ 12A and 19. The Parties were unable to bridge their differences, and in light of the gravity of the issue and the Court's prior orders, Plaintiffs believe it salutary to apprise the Court of the results of their conference in advance of August 7.

Defendants have not denied that they are detaining unaccompanied children in unlicensed hotels and other irregular placements for extended periods. *See* Plaintiffs' Response to Objections to Independent Monitor's Interim Report re Temporary Housing for Minors and Families Under Title 42, July 25, 2020 ("Plaintiffs' Response") [Doc. # 889] at 5 and Exhibit C.

Rather, as they suggested in their objections to the Independent Monitor's report, *see* Defendants' Objection to the Interim Report of the Independent Monitor ("Defs' Objection") [Doc. # 746] at 2, Defendants stated that they (1) do not consider children designated for expulsion pursuant to 42 U.S.C. §§ 265 or 268 ("Title 42") and orders issued in furtherance thereof in "immigration" custody; (2) may therefore detain such children without regard to the Settlement's provisions; (3) will not allow Plaintiffs' counsel access to interview such children as required by Settlement ¶¶ 32 and 33; (4) are not obliged to allow the Independent Monitor to monitor their treatment of such children; and (5) as far as

- 1 -

Defendants' counsel could say, no one apart from Defendants themselves and their designees are entitled to monitor their treatment of "Title 42" children.

Regrettably, it must fall to this Court once again to resolve the issues raised in the Independent Monitor's Interim Report. Plaintiffs urge the Court to do so by ordering Defendants to treat "Title 42" children as *Flores* class members unless Defendants prevail on a motion to modify the Settlement to exclude "Title 42" children from its scope.[1] As Plaintiffs demonstrate below, there is no legal basis to draw a distinction between "Title 42" children and other children in Defendants' custody. They are entitled to all the protections of the Settlement, including its licensing, attorney-client visits, monitoring, and release provisions.

II. BY ITS PLAIN TERMS, THE SETTLEMENT CLEARLY COVERS CHILDREN IN DEFENDANTS' LEGAL CUSTODY IRRESPECTIVE OF "TITLE 42" DESIGNATION.

"The Settlement is a consent decree, which, 'like a contract, must be discerned within its four corners, extrinsic evidence being relevant only to resolve ambiguity in the decree.'" *Flores v. Lynch*, 828 F.3d 898, 905 (9th Cir. 2016) (quoting *United States v. Asarco Inc.*, 430 F.3d 972, 980 (9th Cir. 2005)). "Where the contract is clear, the plain language of the contract governs." *Flores v. Johnson*, 212 F. Supp. 3d 864, 870 (C.D. Cal. 2015), *aff'd in relevant part*, *Flores v. Lynch*, 828 F.3d 898.

Applying the foregoing to the Settlement, it is abundantly clear that all children in Defendants' custody are covered by the Settlement's terms, regardless of Defendants having designated them for expulsion pursuant to Title 42.

The Settlement protects "[a]ll minors who are detained in the[ir] legal

---

[1] There is ongoing litigation about the legality of Title 42, and the District Court in *J.B.B.C. v. Wolf* issued a preliminary holding rejecting the government's claims that the program has a legal basis. No. 20-cv-01509-CJN, ECF. No. 39 (D.D.C. June 24, 2020) [attached as Exhibit A]. That issue is not before this Court.

custody." Settlement ¶ 10. Children whom the government designates for Title 42 expulsion are clearly in Defendants' "custody" because Defendants—and no one else—are detaining them.[2] Nor could Defendants plausibly argue that such children are not in their "legal" custody, which would, after all, amount to a confession that such custody is instead illegal.

Nothing in the Settlement grants protection only to children whom Defendants purport to detain pursuant to a particular statute or authority. Nor is there any serious question that Defendants take "Title 42" children into custody precisely because of their immigration status— or alleged lack thereof.

First, Defendants are clearly *not* detaining U.S. citizens in hotels or like irregular facilities pursuant to Title 42. Such detention is reserved for children and families whom Defendants believe are not citizens or otherwise lawfully entitled to remain in the United States.

Second, Defendants exert complete control over the physical custody and transfers of "Title 42" children. As the Independent Monitor's Interim Report indicates, Defendants exercise unfettered discretion to transfer children detained as members of "Title 42" families from hotels to family residential centers ("FRCs"). *See* Interim Report at 13 (accompanied class member held in hotel for at least eight days before testing positive for COVID-19 and being transferred to a FRC). Defendants' own data reports demonstrate that they transfer "Title 42" children from CBP to ICE custody. *See* Plaintiffs' Response at 5 and Exhibit C.

Third, Defendants control and determine any change in children's legal status. Defendants wield the unfettered prerogative to "reclassify" children — often upon having been sued—such that "Title 42" children, as if by conjuration, are transformed into "Title 8" children, whom Defendants then transfer to ORR

---

[2] The definition of "custody" is "immediate charge and control (as over a ward or a suspect) exercised by a person or an authority." *See* Merriam-Webster Online Dictionary, www.merriam-webster.com/dictionary/custody.

shelters and grant full opportunity to seek asylum and otherwise contest removal. *See* Declaration of Daniel A. Galindo, July 24, 2020, Exhibit B at ¶¶ 5-6:

> Indeed, since a stay of removal was entered for one of our clients on June 24, in *J.B.B.C. v. Wolf*, every time we have contacted the government about a specific child who had not yet been removed, the government has removed that child from the Title 42 Process. As of July 24, 2020, the U.S. government has transferred at least 18 unaccompanied children out of the Title 42 process and into ORR care as a direct result of our efforts.

Defendants' "reclassification" of children from Title 42 to Title 8 only further serves to highlight their fiction of a fixed "Title 42" category that exempts children from the Settlement's protections.

Finally, the Ninth Circuit has made clear that the *Flores* Settlement "defines the class as '[a]ll minors who are detained in the legal custody of the [Defendants].'" *Flores v. Lynch*, 828 F. 3d at 905 (citing Settlement ¶¶ 4, 9, 10). Defendants' attempt to flout the Settlement by means of "Title 42" incantation is indistinguishable from their oft-failed argument that "accompanied" children are beyond the Settlement's scope. *Id*. ("We agree with the district court that '[t]he plain language of the Agreement clearly encompasses accompanied minors.'").

III.   IF DEFENDANTS WISH TO EXCLUDE CHILDREN DESIGNATED FOR EXPULSION PURSUANT TO TITLE 42 FROM THE SETTLEMENT'S PROTECTIONS, THEY MUST BRING AND PREVAIL ON A MOTION TO MODIFY THE SETTLEMENT.

The sole rationale Defendants have articulated for denying "Title 42" children the Settlement's protections is that 42 U.S.C. §§ 265 and 268 and orders issued in furtherance thereof trump their obligations to place children in licensed care facilities "as expeditiously as possible" and to permit Plaintiffs' counsel and the Independent Monitor to monitor the treatment and conditions such children experience during confinement.

But if Defendants believe Title 42 supersedes the Settlement, they are

obliged to ask the Court to reform the Settlement, not arrogate unto themselves the prerogative to defy it. *See Hook v. State of Ariz.*, 972 F.2d 1012, 1016 (9th Cir. 1992) ("[T]he Department cannot simply ignore the consent decree because it believes the decree is overly broad. . . . [T]he proper procedure for seeking relief from a consent decree is a Rule 60(b) motion.").

As this Court has repeatedly held, all children falling within the class definition are entitled to the Settlement's protections unless and until Defendants carry —

> [T]he burden of establishing that a significant change in circumstances warrants revision of the decree. A party seeking modification of a consent decree may meet its initial burden by showing either a significant change either in factual conditions or in law. *The change in the law must be so significant that complying with both statute and a prior agreement would be "impermissible."*

*Flores v. Johnson*, 212 F. Supp. 3d 864, 883 (C.D. Cal. 2015), *aff'd in relevant part*, *Flores v. Lynch*, 828 F.3d 898 (internal citations omitted) (emphasis added).

Defendants' ever making such a showing is so improbable as to border on the impossible and may explain why they have instead opted to ignore the Settlement of their own accord.

IV. CONCLUSION

Defendants' penchant for unilaterally disregarding the plain text of the Settlement whenever it suits them has repeatedly shifted the burdens of bringing them into compliance on the Plaintiffs and the Court. It is time they be required to carry their burden of establishing grounds for modification before taking it upon themselves to ignore a binding consent decree. Until such time that Defendants prevail on a motion to modify the Settlement's terms, Defendants must afford "Title 42" children the same Settlement protections afforded to other children in Defendants' custody.

Plaintiffs respectfully request that the Court order Defendants to treat "Title

42" class members in accordance with the Settlement, including its licensing, attorney-client visits, monitoring, and release provisions.

Dated: July 29, 2020

CENTER FOR HUMAN RIGHTS AND
CONSTITUTIONAL LAW
Carlos R. Holguín

NATIONAL CENTER FOR YOUTH LAW
Leecia Welch
Neha Desai
Poonam Juneja
Freya Pitts

<u>/s/ Carlos Holguín</u>
Carlos Holguín
*One of the Attorneys for Plaintiffs*