CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Peter A. Schey (Cal. Bar No. 58232)
Carlos Holguín (Cal. Bar No. 90754)
256 South Occidental Boulevard
Los Angeles, CA  90057
Telephone: (213) 388-8693
Facsimile: (213) 386-9484
Email:pschey@centerforhumanrights.org
        crholguin@centerforhumanrights.org
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY LISETTE FLORES; *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM P. BARR, Attorney General of the United States; *et al.*,<br><br>Defendants. | Case No. CV 85-4544-DMG<br><br>**Joint Report in Response to Court Orders of June 26, 2020 and July 25, 2020 [Docs. ## 833, 887]**<br><br>Hearing:  August 7, 2020<br><br>[HON. DOLLY M. GEE] |

/ / /

*Plaintiffs' counsel continued*:

USF SCHOOL OF LAW IMMIGRATION CLINIC
Bill Ong Hing (Cal. Bar No. 61513)
2130 Fulton Street
San Francisco, CA 94117-1080
Telephone: (415) 422-4475
Email: bhing@usfca.edu

LA RAZA CENTRO LEGAL, INC.
Stephen Rosenbaum (Cal. Bar No. 98634)
474 Valencia Street, #295
San Francisco, CA 94103
Telephone: (415) 575-3500
Email: srosenbaum@law.berkeley.edu

NATIONAL CENTER FOR YOUTH LAW
Leecia Welch (Cal. Bar No. 208741)
Neha Desai (CAL. RLSA NO. 803161)
Poonam Juneja (Cal. Bar No. 300848)
Freya Pitts (Cal. Bar No. 295878)
1212 Broadway, Suite 600 Oakland, CA 94612
Telephone: (510) 835-8098
Email:   lwelch@youthlaw.org
         ndesai@youthlaw.org
         pjuneja@youthlaw.org
         fpitts@youthlaw.org

/ / /

ii

# TABLE OF CONTENTS

I.     ICE Juvenile Coordinator's Report ......................................................... 1

1.   Joint Introductory Statement ................................................... 1

2.   ICE Juvenile Coordinators Report ........................................... 2

Plaintiffs' Position: ...................................................... 3

Defendants' Position: .................................................. 6

3.   Cowlitz County Juvenile Detention Center and Northern Oregon
Regional Corrections ................................................................. 7

Plaintiffs' Position: ...................................................... 7

Defendants' Position: .................................................. 8

4.   Information regarding existence of COVID-19 infection among Class
Members .......................................................................................... 9

Plaintiffs' Position: ...................................................... 9

Defendants' Position: .................................................. 10

5.   Quality of the data that Defendants maintain and provide to Class
Counsel ............................................................................................ 11

Plaintiffs' Position: ...................................................... 11

Defendants' Position: .................................................. 14

II    ORR Juvenile Coordinator's Report ....................................................... 15

1.   Part 4.a.iii. ................................................................................... 16

Plaintiffs' position .......................................................... 17

Defendants' position. ..................................................... 17

2.   **Part 4.a.iii.** ............................................................... **17**

   Plaintiffs' position. ....................................................... 18

   Defendants' position. ...................................................... 18

3.   **Part 4.a.iv.** ................................................................ **19**

   Plaintiffs' position. ....................................................... 19

   Defendants' position. ...................................................... 20

4.   **Part 4.a.iv** ................................................................. **20**

   Plaintiffs' position. ....................................................... 20

   Defendants' position. ...................................................... 21

5.   **Part 4.a.v** .................................................................. **21**

   Plaintiffs' position. ....................................................... 22

   Defendants' position. ...................................................... 22

6.   **Part 4.a.vi.** ................................................................ **23**

   Plaintiffs' position. ....................................................... 23

   Defendants' position. ...................................................... 23

7.   **Fingerprint waiver policy.** ............................................ **24**

   Plaintiffs' position. ....................................................... 24

   Defendants' position. ...................................................... 25

8.   **Disclosures to class members' immigration counsel.** ............ **26**

   Plaintiffs' position. ....................................................... 26

   Defendants' position: ...................................................... 27

## I.   ICE Juvenile Coordinator's Report

1.   Joint Introductory Statement

This Court's Order of June 26, 2020 ("June Order") [Doc. # 833] provided in part that the ICE Juvenile Coordinator shall report on compliance with the Order to expeditiously release or transfer affected minors from the FRCs on or before July 24, 2020. *Id*. at 5, ¶ 4.c.  For each minor detained at an FRC for more than 20 days deemed a "flight risk," and not released or transferred, the ICE Juvenile Coordinator was required to give "a detailed individualized explanation of why that minor is a flight risk (cursory explanations such as "in custody—pending IJ hearing/decision,' 'pending USCIS response,' 'plaintiff in a pending lawsuit,' or any other justification that the Court has already rejected as being insufficient indicia of imminent removal shall not be acceptable explanations)." *Id*.

The June Order also provided that for each minor who remained detained at an FRC for more than 20 days, the absence of a suitable sponsor, a parent/guardian's declination of waiver of Flores rights, or a prior unexplained failure to appear at a scheduled hearing would be a satisfactory explanation for continued detention "if that explanation is verified in a declaration by an ICE representative under penalty of perjury." *Id*. at 5, ¶ 4.d.

The June Order also required that the ICE Juvenile Coordinator report on the status of conditions at the Cowlitz County Juvenile Detention Center ("Cowlitz") and Northern Oregon Regional Corrections ("NORCOR") detention facilities, including specific reasons why B.B.B., A.F.P.P., and K.J.A.B. remain in detention." *Id*. at 5, ¶ 4.e.

The June Order provided that after meeting and conferring, Plaintiffs and Defendants may file a joint response to the Juvenile Coordinator Reports by July 31, 2020, regarding areas of dispute. June Order at 5, ¶5.

1

The Court also ordered that the parties file another joint status report by July 8, 2020, regarding the adoption and implementation of "proper written advisals and other protocols to inform detained guardians/parents about minors' rights under the FSA and obtain information regarding, and procedures for placement with, available and suitable sponsors …" *Id*. at 6 ¶ 6. The parties did so. *See* ECF No. 846. On July 25, 2020, the Court ordered the parties to file another status report on this issue by August 5, 2020. ECF. No. 887.

The Court's June Order also required the parties' counsel to continue to meet and confer regarding (1) certain disclosures, including information regarding existence of COVID-19 infection among Class Members, that should be provided to minors' immigration counsel; and (2) the quality of the data that Defendants maintain and provide to Class Counsel pursuant to Paragraph 28A of the FSA. *Id*. at 6 ¶ 7. By July 31, 2020, the parties were ordered to file a joint status report regarding the outcome of their efforts to meet and confer in this regard. *Id*.

Finally, the Court ordered that to the extent disagreements remain between the parties after meaningful efforts to meet and confer on any of the topics on which they are to submit joint status reports, "the parties may describe those disagreements in the reports submitted to the Court and request adjudication, mediation, or any other form of relief the Court may provide." *Id*. at 6 ¶ 8.

2.     ICE Juvenile Coordinators Report

As required by the Court in its orders issued on April 24, May 22, and June 26, 2020, ICE Juvenile Coordinator Deane Dougherty submitted her interim report on July 24, 2020. July 2020 Interim Report of Juvenile Coordinator Deane Dougherty ("July 2020 Report"). [Doc. # 882-1]. The report provides an update on the Class Members in the FRCs over 20 days, status of implementation of COVID-

19 guidances, a census of positive COVID-19 cases at the FRCs, and a description of the conditions at two detention facilities holding ICE juvenile detainees. *Id*. On July 30, 2020, Plaintiffs sent a draft of this proposed joint report containing tentative positions from Plaintiffs regarding Plaintiffs' issues with the ICE Report, and informing Defendants that they were still assessing the issues in the report and might make additional modifications to their positions. Given the short time provided for Defendants to respond, Defendants have endeavored to respond to Plaintiffs' positions as stated in the draft document, but the parties did not meet and confer about the issues raised by Plaintiffs.

Plaintiffs' Position:

The ICE Juvenile Coordinator's Report states that "[a]s of July 21, 2020, there are: 73 Class Members who remain in custody beyond 20 days due to a final order of removal and are subject to a stay;[1] 16 Class Members who remain in custody beyond 20 days are subject to an expedited removal order and are pending a credible fear interview; and 11 Class Members who remain in custody beyond 20 days, have a final order of removal, are not subject to a stay, and have been manifested for removal within the next couple of weeks, which is the next scheduled repatriation flight to their respective countries of origin." July 2020 Report at 4.[1]

However, this Court's prior Orders including its June 26, 2020, Order have made clear that "the ICE Juvenile Coordinator shall give a detailed individualized

---

[1] Counsel in this case have been unsuccessful in winning the release of parents of detained Class Members. Counsel for the *amici* have so far unsuccessfully sought the release of Class Members' parents in *OMG v. Wolff*, Case No. 1:20-cv-00786-JEB (DDC) [Doc #722], and in *C.N. v. Pennsylvania Department of Human Services*, No. 268 M.D. 2020 (Commonwealth Court of Pennsylvania), Memorandum Opinion (July 7, 2020). [*Flores* Doc. # 882-1]. This case cannot address the parents' release because its scope is limited to the four corners of the FSA and the class only includes "minors who are detained in the legal custody of the INS." FSA ¶ 10.

3

explanation of why [a] minor is a flight risk (cursory explanations such as 'In custody—pending IJ hearing/decision,' 'pending USCIS response,' 'plaintiff in a pending lawsuit,' or any other justification that the Court has already rejected as being insufficient indicia of imminent removal shall not be acceptable explanations)." June Order at 5,¶4.d; *see also Flores v. Sessions*, 394 F. Supp. 3d at 1067 ("The Court will order Defendants to comply with the unambiguous charge of the Flores Agreement to make individualized determinations regarding a minor's flight risk rather than blanket determinations . . . even if the minor or her parent is in expedited removal (i.e., awaiting a credible fear determination"); Order of April 24, 2020, at 17 ("ICE has not submitted any actual evidence of individualized evaluation of flight risk, despite the number of families currently in detention who have had their orders of removal stayed."). [Doc. # 784].[2]

On July 23, 2020, the Court in *D.A.M. v. Barr*, No. 20-1321 (D.D.C.) lifted the administrative stay of removal relevant to *Flores* Class Members. *D.A.M. v. Barr*, (July 23, 2020). [D.A.M. Doc. ## 33-34]. However, petitioners filed an emergency motion for the entry of an administrative stay pending adjudication of their second application for a temporary restraining order relating to a separate claim for relief, and the Court entered a stay of removal. *D.A.M. v. Barr*, No. 20-1321 (D.D.C.) filed July 23, 2020). It is highly unlikely that by issuing a temporary stay of removals Judge Christopher R. Cooper intended ICE to interpret the stay as meaning those granted a stay were therefore flight risks.

ICE has a valid reason not to release Class Members whose parents have not identified relatives to whom they wish to have their children released under Paragraph 14. However, not releasing Class Members merely because they have

---

[2] "Furthermore, even if the initial parole determination is appropriately made, the Court sees no evidence that ICE reevaluates Class Members for Flores release rights at any point after the initial parole determination." Order of April 24, 2020 at 16. [Doc. # 784].

final orders of removal subject to a stay, or who are pending a credible fear interview, or have final orders of removal, or are subject to the MPP program, is not in compliance with the FSA. *See, e.g.*, June Order at 5,¶4.d; April 24, 2020, Order at 13-14 ("The Court sees no reason why, if removal is not 'ready to take place,' ORR should not release minors whose removal orders under the MPP are under appeal") [Doc. # 784]; Order of May 22, 2020 at 2 ("The information submitted by ICE continues to show cursory explanations for denying minors release under the FSA, including vague categories such as 'USCIS/IJ Review,' which the Court previously criticized.") [Doc. # 799]. If deportation is indeed imminent then the FSA does not require release of a Class Member. However, "[t]he definition of 'imminent' is 'ready to take place' or 'happening soon.'" Order of April 24, 2020, at 13, *quoting* Merriam-Webster Online. [Doc. # 784].

The Court's Orders have been clear that "the ICE Juvenile Coordinator shall provide specific explanations for the continued detention of each minor detained at an FRC beyond 20 days." Order of May 22, 2020 at 3. [Doc. # 799]; *see also* Order of June 26, 2020, at 5 ("For each minor detained at an FRC for more than 20 days who is deemed a 'flight risk,' and not released or transferred pursuant to the above directive requiring expeditious release, *the ICE Juvenile Coordinator shall give a detailed individualized explanation of why that minor is a flight risk.*" [Emphasis supplied]). [Doc.# 833]. The June Order also provides that for each minor who remained detained at an FRC for more than 20 days, the absence of a suitable sponsor, a parent/guardian's declination of waiver of Flores rights, or a prior unexplained failure to appear at a scheduled hearing would be a satisfactory explanation for continued detention "if that explanation is verified in a declaration by an ICE representative under penalty of perjury." *Id*. at 5, ¶ 4.d. Defendants have not provided any declarations by any ICE representatives made under penalty of perjury "*detail[ing] [an] individualized explanation of why that minor is a flight risk.*" June Order at 5, ¶ 4.d.

Indeed, the fact that ICE has determined that every minor detained is ineligible for release under Paragraph 14 of the FSA because they will not appear for future proceedings, may well discourage parents from identifying sponsors to whom they believe their children should be released. There is no reason for a parent to make the difficult decision to release a child and identify potential sponsors ICE will then vet if in any event ICE will refuse to release their children because it has found they are deemed ineligible for release because they supposedly will not appear for future proceedings, all because they are in one or another type of proceeding, a standard that covers virtually every Class Member in custody.

Defendants' Position:

As Ms. Dougherty explained in her Report, ICE acknowledges that "100 Class Members have been detained at an FRC 20 days or more[, and t]hese individuals, and their accompanying parent(s) or legal guardian(s), may be subject to the Flores waiver process about which this Court ordered the parties to meet and confer in its June 26, 2020, Order." Report, ECF No. 882-1 at 3. Because negotiations on the waiver process remain ongoing, Ms. Dougherty could not provide reporting in the specific manner ordered by the Court, and so she addressed this issue with Ms. Ordin "who agreed that, for purposes of this report, the agency may provide a general statement indicating the agency did not, and could not, conduct parole reviews while awaiting the outcome of the meet and confer process, and subsequent to implementation of any *Flores* waiver process. Once the process has been completed and implemented, ICE will provide the information required by sections 1, 4(c), and 4(d) of the Court's June 26, 2020 Order, including the number of those class members whose parent/legal guardian waived their child's *Flores* rights under paragraph 14 of the FSA, or continue to be detained under the FSA, in its next interim report. This report does include other information pertaining to those Class Members who have remained in custody longer than 20 days." *Id.*

6

Given that Ms. Dougherty's ability to provide some of the reporting ordered
by the Court was precluded by the ongoing nature of the parties' negotiations, and
that Ms. Dougherty therefore consulted with Ms. Ordin to ensure her reporting was
nonetheless sufficient in light of these concerns, Defendants request that the Court
find Plaintiffs' concerns in this regard are unfounded, and allow Ms. Dougherty to
provide the requested reporting in a future report as appropriate.

**3.      Cowlitz County Juvenile Detention Center and Northern Oregon
          Regional Corrections**

The June Order also required that the ICE Juvenile Coordinator report on the
status of conditions at the Cowlitz County Juvenile Detention Center ("Cowlitz")
and Northern Oregon Regional Corrections ("NORCOR") detention facilities,
including specific reasons why B.B.B., A.F.P.P., and K.J.A.B. remain in
detention." June 2020 Order at 5, ¶ 4.e.

Plaintiffs' Position:

The Juvenile Coordinator's Report explains why Class Member B.B.B.,
J.E.R.M., N.Y.C.C., and K.A.B. are not considered eligible for release under
Paragraph 14 of the FSA. July 2020 Report at 11-14. None face imminent age-out
dates.

Class Member A.F.P.P. was released on the eve of this 18th birthday. The
Juvenile Coordinator's Report does not appear to address the situation of Class
Member K.J.A.B.

More importantly, it does not appear that ICE deportation officers who make
decisions regarding Class Members' release from juvenile detention facilities have
been provided any instructions or protocols to follow to implement or record their
actions regarding FSA compliance.

Plaintiffs addressed their concerns with the detention of Class Members at
juvenile detention facilities *inter alia* in Plaintiffs' Response to Defendants' Notice
of Filing of ICE Juvenile Coordinator Report (June 17, 2020) at 13-17. [Doc. #

824]. Among other things Plaintiffs requested "notification through whatever
means this Court deems proper immediately upon placement of any [Class
Mmeber] at Cowlitz or NORCOR juvenile detention facilities," *id*. at 17; that the
Court order ICE "to make and record efforts to promptly release all youth detained
in juvenile jails or, in the alternative, to transfer them to the least restrictive
placement, prioritizing close proximity to family," *id*. at 17; noted that "youth at
Cowlitz do not have access to the outdoors, nor do they have any access to family,
clergy, or mental health support," *id*.; and raised the failure of ICE to provide
"ongoing individualized assessments" of detained Class Members' flight risk status
or dangerousness. *Id*. at 16.

Plaintiffs urge the Court for now not to vacate the restriction contained in its
June 26, 2020 Order prohibiting the transfer of minors in ICE juvenile detention to
adult facilities when they age out of juvenile detention.

Plaintiffs propose that upon submission of the parties August 5, 2020, joint
report regarding release protocols and procedures to record actions taken at ICE
family detention facilities to comply with ¶ 14 of the FSA, the parties meet and
confer to address a protocol for ICE deportation officers to follow when assessing
Class Members held in juvenile detention facilities. Whatever protocols are
adopted for ICE family detention centers with regards making determinations of
dangerousness or flight risk, or procedures to follow if a Class Member is no
longer considered a danger or flight risk, may (or may not) provide a model for
protocols to be followed at juvenile detention facilities.

Defendants' Position:

Plaintiffs' proposal that procedures that might be appropriate for ICE FRCs
would also be appropriate for juvenile detention facilities is raised to Defendants for
the first time in this draft document, and is unfounded. While this Court has found
that minors in ICE FRCs are subject to Paragraph 14 of the Agreement, minors in
ICE juvenile detention facilities are not subject to release under that Paragraph, and

so the same procedures would not apply to both categories of class members. Rather, Paragraph 14 excludes minors who ICE has determined are a flight risk or danger, and Paragraph 21 then allows for detention of such minors in a juvenile detention facility. *See* Agreement ¶ 14 ("Where the INS determines that the detention of the minor is not required either to secure his or her timely appearance before the INS or the immigration court, or to ensure the minor's safety or that of others, the INS shall release a minor from its custody without unnecessary delay . . . ."; ¶ 21 (governing the detention of minors in juvenile detention facilities). As Ms. Dougherty's Report explains, each of the four minors currently being held in an ICE juvenile detention facility has been detained after ICE made a determination that he is a danger to the community and/or a flight risk. Report. ECF No. 882-1 at 11-14. Thus, their detention is lawful and in accordance with the Agreement.

Defendants note again that there is no pending motion regarding conditions at Cowlitz or NORCOR, Plaintiffs have not identified any specific alleged violation of the Agreement at these facilities, and Plaintiffs have not pursued resolution of any issues with regard to these facilities with either urgency or consistency. Defendants ask that the Court discontinue the restriction contained in its June 26, 2020 Order prohibiting the transfer of minors in ICE juvenile detention to adult facilities when they age out of juvenile detention and cease to be class members, and that the Court further require that, if Plaintiffs wish to pursue any allegations that these facilities violate the FSA, they identify specific alleged violations to Defendants, and pursue resolution of those allegations through the procedures available in the Court's Monitoring Order, the Federal Rules of Civil Procedure, and the Local Rules.

**4.    Information regarding existence of COVID-19 infection among Class Members**

The Court's June Order required the parties' counsel to continue to meet and confer regarding disclosures, including information regarding existence of COVID-19 infection among Class Members, that should be provided to

9

minors' immigration counsel …" Order of June 2020 at 6, ¶ 7.

Plaintiffs' Position:

Plaintiffs' position is that Defendants should promptly advise any Class Members' counsel of record, Class Counsel, and the Independent Monitor (who in turn may advise Dr. Wise) when any Class Member in ICE custody is placed in quarantine because they are symptomatic or tests positive for COVID-19. The parties have not made progress on this issue as Defendants have adopted the position that information-sharing with class members' legal service providers is not required by the Settlement.

Defendants' Position:

As discussed below, the parties have discussed this issue with regard to minors in ORR custody; however, Plaintiffs' counsel has not raised any issues regarding the sharing of this information for minors in ICE custody at any time prior to including it in this joint report. In any event, Defendants' position remains the same as reported in the April 23, 2020 joint report. ECF No. 778. Given that the Agreement does not address the provision of information to individual immigration counsel for class members, it remains Defendants' position that Plaintiffs' assertions that such information should nonetheless be provided are not properly addressed in the context of this case, nor the pending litigation.

Nonetheless, Defendants also note that they have filed with this Court the regular reporting that is being filed in *O.M.G. v. Wolf*, 1:20-cv-00786-JEB (D.D.C) regarding COVID-19 cases in ICE FRCs. Defendants also are not aware of any situation where the Independent Monitor or Dr. Wise have requested such information that is has not been provided to them. Therefore, Plaintiffs' complaints

on this issue are unfounded and this Court should disregard Plaintiffs' requests for
more information.

**5.      Quality of the data that Defendants maintain and provide to Class
          Counsel**

The Court ordered that the parties continue to meet and confer and report
by July 31, 2020, regarding the quality of the data that Defendants maintain and
provide to Class Counsel pursuant to Paragraph 28A of the FSA. *Id*. at 6 ¶ 7.

<u>Plaintiffs' Position</u>:

Progress has been made and improved data is being provided to Class
Counsel. Plaintiffs still do not believe the data being provided complies with the
FSA and instructions issued to Defendants' employees regarding FSA compliance
also have not been provided to Class Counsel as required by the FSA ¶ 28.

Paragraph 28 of the *FSA* requires DHS to "maintain an up-to-date record
of all minors who are placed in proceedings and remain in [its] custody for
longer than 72 hours. Statistical information on such minors shall be collected
weekly from all [facilities]" where Class Members are detained. Pursuant to
Paragraph 28A and the Court's Orders, Defendants' data provided to Class
Counsel on a monthly basis must include: (1) biographical information such as
each minor's name, date of birth, and country of birth, (2) date placed in
[Defendants'] custody [which usually commences with CBP custody and
sometimes with ICE custody], (3) each date placed, removed or released [by
ORR, CBP, or ICE], (4) to whom and where placed, transferred, removed or
released [by CBP, ORR, or ICE], (5) immigration status, and (6) hearing dates
[if any]. See Paragraph 28A. Plaintiffs do not believe full and accurate data has
been provided for Class Members including those held in irregular locations
such as ICE unlicensed "hold rooms" and "hotels."

11

On July 14, 2020, class counsel Carlos Holguin wrote to Defendants' counsel *inter alia* addressing data collection as follows:

> DHS's April 2020 ¶ 29 report "Notes" state: "This summary includes the entire detention history for juveniles who were booked into an FRC, Hold room, MVM transport or Authorized Juvenile IGSA Facility through April 2020 who have a length of stay of 3 days or more" and "includes individuals booked into an FRC, Hold room, MVM transport or Authorized Juvenile IGSA Facility who have a book-out between 4/1/2020 and 4/30/2020 or were in custody as of 4/30/2020" (emphasis added).

> Additionally, the April report purports to provide information for unaccompanied juveniles "defined as an individual who was a juvenile at the time of initial book-in to an ICE facility and was not accompanied with a parent or legal guardian at apprehension."

> The April report lists 29 unaccompanied children as "Title 42 Return" in the "Release Reason" column.

> In contrast, DHS's May 2020 ¶ 29 report "Notes" state: "This summary includes the entire detention history for juveniles who were booked into an FRC or an Authorized Juvenile IGSA Facility who have a book-out between 5/1/2020 and 5/31/2020 or were in custody as of 5/31/2020."

> Although this language omits hold rooms and MVM transport, the report does include some records for hold rooms and MVM transport. It is therefore unclear whether all records for hold rooms and MVM transport are included in this report.

> In any event, DHS's May 2020 ¶ 29 report (1) omits information regarding unaccompanied juveniles, and (2) fails to report any class members subject to Title 42 return regardless of the time spent in immigration-related custody, all which are in apparent violation of Settlement ¶ 29.

Plaintiffs accordingly request the Parties confer in a good faith effort to avoid litigation over the completeness of Defendants' ¶ 29 reports.

The parties have met and conferred regarding class counsel's July 14, 2020, correspondence. Plaintiffs have received Defendants' updated May 2020 ¶ 29 ICE report listing class members subject to Title 42 return.

Under Paragraph 28 the Juvenile Coordinator is also required *for each detained Class Member* to "collect information regarding the reasons for every placement of a minor in a detention facility …"

Paragraph 29 states that Defendants "shall" provide to Class Counsel "the information collected pursuant to Paragraph 28 … *and* each … policy or instruction issued to [Defendants'] employees regarding the implementation of this Agreement." (emphasis added). Defendants have not provided Class Counsel with the information regarding the reasons for every placement of a minor in a detention facility nor have they provided class counsel with each policy or instruction issued to Defendants' employees regarding the implementation of the FSA.

Plaintiffs explained all of the above concerns to Defendants in detailed correspondence dated February. 11, 2020 [Doc. # 738, Exhibit Q], and in numerous subsequent communications. The parties have met and conferred on these issues on a conference call in which Defendants' counsel included Defendants' "data collection" experts. Not all issues were resolved during that meet and confer. While Plaintiffs hoped to share their further concerns with Defendants by June 24, 2020, the flurry of *ex parte* applications and other fast-moving parts of this case prevented Plaintiffs from communicating further concerns other than class counsel's correspondence of July 14, 2020. However, as Defendants obviously know, they have *not* yet agreed to provide the data required under Paragraphs 28 and 29 discussed above.

In short, progress has been made and Plaintiffs propose that the parties continue to confer on these reporting issues and submit a further joint report on or before August 21, 2020, two weeks after the scheduled August 7, 2020, status conference.

Defendants' Position:

Defendants provided updated reporting in response to the issues raised in Mr. Holguin's July 14, 2020 letter on July 23, 2020. Mr. Holguin sent follow up questions regarding that data on July 26, 2020. Defendants are working on responding to those follow up questions and expect to provide those responses within the next seven business days.

With regard to any other issues raised above, despite repeated requests from Defendants Plaintiffs failed to notify Defendants that any issues other than the ones noted in Mr. Holguin's letter remain with regard to the updated data reports, and Defendants are learning of Plaintiffs' continued concerns for the first time in this draft report and need time to consider them before they can respond. As a general matter, however, Defendants object to the manner in which Plaintiffs' counsel are pursuing this issue without adhering to agreed-upon deadlines or providing any clarity as to how this issue can finally be resolved. On June 15, 2020, the parties jointly explained to this Court that they had met and conferred, and that Defendants had updated their reporting based on the concerns raised by Plaintiffs. ECF No. 820. The parties agreed that Plaintiffs would notify Defendants of any additional concerns they had with the updated reporting on or before June 24, 2020 and that they would then meet and confer regarding those concerns. *Id.* Plaintiffs raised no concerns to Defendants on or before that date.

Nonetheless, on Friday June 26, 2020, Plaintiffs' counsel sent an email asking to meet and confer on the data issue the following week. On Monday June 29, 2020, Defendants noted that Plaintiffs had missed the agreed upon deadline but agreed they would meet and confer if Plaintiffs would send any issues that required

discussion by COB on June 30, 2020. At the end of the day on June 30, counsel responded that he would "try to give [Defendants] feedback by end of the week." No such feedback was provided.

Other than the July 14, 2020 letter from Mr. Holguin, Defendants have not received anything further from Plaintiffs on this issue. Defendants believe that they have addressed the issues initially raised by Plaintiffs with their updated reporting, and they are working to resolve the issues raised in Mr. Holguin's letter even though those issues were not raised until July 14, 2020, well after the deadline the parties had previously agreed upon. With the exception of those limited issues, Defendants ask that the Court determine this issue has been resolved, and that Plaintiffs should not be permitted to continue to raise ad hoc challenges to the substance of Defendants' reporting unless they are contending that the reporting contains errors or is otherwise inaccurate.

## II    ORR Juvenile Coordinator's Report.

On July 29, 2020, the Parties met and conferred in an effort to resolve Plaintiffs' counsel's responses to the ORR Juvenile Coordinator's Interim Report ("July 2020 ORR Report") of July 24, 2020 [Doc. # 882-2]. Regarding the following portions of the Court's April 24, 2020 order [Doc #784], Plaintiffs sent comments stating the following:

1) Part 4.a.iii of the Order and "Failure to identify minors who have tested positive for COVID-19."

2) Part 4.a.iii of the Order and "Failure to state specific reasons minors in COVID-impacted facilities have not been released."

3) Part 4.a.iv of the Order and "Failure to state what ORR considers "medical vulnerabilities" and define "children with complex medical needs.""

4) Part 4.a.iv of the Order and" Failure to describe each facility's "unique" policies and/or practices aimed at identifying and protecting minors who are

at heightened risk of serious illness or death should they contract COVID-19."

5) Part 4.a.v of the Order and "Failure to "[e]xplain whether the medical professionals at ORR are making expeditious individual assessments about a Class Member's eligibility for release when a Class Member has been exposed to COVID-19 or has a sponsor whose household has a confirmed case of COVID-19, and provide the average time in which such individual assessments take place during the reporting period." April 24 Order at 20 [Doc. # 784]."

6) Part 4.a.vi of the Order and "Failure to explain the reasons why each of the 30 MPP detainees have not been released."

7) ORR's revised fingerprinting waiver policy which Plaintiffs' counsel contends "does not appear to comply with the Court's order requiring ORR "to provide for a less onerous chain of approvals or show cause to the Court why the policy, as written, is imperative." June Order at 5 [Doc. # 833]. The revised policy included as Attachment B to the ORR Report now requires approval of a waiver by both the Director for Unaccompanied Children's Operations and the ORR Director and accordingly appears even more onerous than its prior policy."

8) Plaintiffs' counsel's comments on "Failure to disclose information to class members' immigration counsel."

The results of the Parties efforts are as follows:

**1.     Part 4.a.iii.**

The Court ordered ORR as follows: "With respect to minors placed at congregate facilities in which either a detainee or staff member has tested positive for COVID-19, identify the specific reason the minors located there have not been

released or transferred to a non-congregate setting. . ." April 24 Order at 20.

<u>Plaintiffs' position</u>.

The ORR Report lists 13 class members in COVID-19 quarantine as of July 23, 2020. July 2020 ORR Report at 8. The ORR Report does not identify the infected class members, and Plaintiffs accordingly have no way to verify the information the report provides regarding these minors.

Plaintiffs contend that ORR should disclose such minors' identities either to Plaintiffs or to the Independent Monitor and Dr. Wise so that they may monitor the treatment of class members with COVID-19.

<u>Defendants' position</u>.

Although Plaintiffs' counsel point to the Juvenile Coordinator's report of 13 minors quarantined, the Juvenile Coordinator Report also notes that during the reporting period 4 minors tested positive and of those, two were medically cleared. Report at 5-6. Nothing in the Court's Order or the Agreement obligates ORR to inform Plaintiffs' counsel about the individualized details of the health conditions of each minor in ORR custody. Nor was Ms. Miranda-Maese directed to identify these minors in her Report. Defendants have no objection to providing requested information to Ms. Ordin and/or Dr. Wise that they find necessary in the course of conducting their court-ordered monitoring of ORR facilities. Defendants are not aware of any occasion where Ms. Ordin or Dr. Wise have requested information on this topic and been refused by Defendants. Accordingly, Defendants believe that Plaintiffs' concerns are unfounded.

**2.    Part 4.a.iii**.

The Court ordered ORR as follows: "With respect to minors placed at congregate facilities in which either a detainee or staff member has tested positive for COVID-19, identify the specific reason the minors located there have not been

17

released or transferred to a non-congregate setting; . . ." April 24 Order at 20.

Plaintiffs' position.

With respect to transfer, the ORR Report states, "For all the ORR network, transfers out of congregate care were not pursued due to the risk of potentially spreading or catching COVID-19 during the transfer process." July 2020 ORR Report at 6. This apparently blanket policy against transfers out of congregate care does not satisfy the Court's order to provide specific reasons that minors have not been transferred out of congregate care. Further, the ORR Report fails to specify the reasons the minors located in such impacted facilities have not been released. The report accordingly fails to comply with the Court's April 24 order.

Defendants' position.

Plaintiffs did not ask about the transfer language when the parties met and conferred, but appear to misunderstand its meaning. The sentence Plaintiffs identify above is not a "blanket policy against transfers out of congregate care" as Plaintiffs suggest, but rather it explains why ORR did not pursue a blanket policy of transferring all minors out of congregate care facilities to non-congregate care providers. This language does not mean that ORR never transfers minors out of congregate care facilities. In fact, as the Report notes elsewhere, as of July 22, 2020 more than 500 minors are in long term or transitional foster care, while the minority (only 291) remain in congregate care facilities. The Report further explains that "the current low occupancy at all congregate shelters (291 occupied beds out of 10,987 congregate beds) allows for social distancing and provides a pool of staff available to care for the minors." Report at 6.

With regard to release, the ORR Report explains that for the 4 minors who tested positive, the positive test did not delay release (one of the minors would be transferred to long-term foster care – meaning that the minor did not have a viable sponsor). Report at 5-6. Defendants explained to Plaintiffs' counsel at the meet and

18

confer that the Report shows that those minors who remained in custody were still
undergoing the reunification process. None of them remained in care due to
specific delays related to COVID-19, and there is no reason that a COVID-19
positive test would delay release once reunification processes completed.
Defendants note that the affirmative, blanket reporting Plaintiffs' counsel
continuously seeks is not within the four corners of the Agreement. Defendants
also note that Paragraph 28.B of the Agreement provides a more individualized
process in those cases where Plaintiffs have information showing that they have
"reasonable cause to believe that a minor in INS legal custody should have been
released pursuant to Paragraph 14."[3] Plaintiffs should be required to adhere to the
terms of the Agreement and not continue to ask this Court to order Defendants to
provide reporting that the Agreement does not require.

**3.      Part 4.a.iv.**

The Court ordered ORR to "[d]escribe any policies and/or practices aimed
at identifying and protecting minors who are at heightened risk of serious illness
or death should they contract COVID-19; . . ." April 24 Order at 20.

<u>Plaintiffs' position</u>.

The ORR Report states, "None of the minors who tested positive for
COVID-19, as indicated above, were at heightened risk of serious illness or

---

[3]Defendants also note that after initially ordering ORR to produce detailed
information on specific reunification efforts, ECF No. 740 at 14, the Court later
concluded: "Plaintiffs no longer argue that ORR fails to make and record
continuous efforts toward release. ORR case managers keep detailed notes on each
minor's potential sponsors, efforts to reach out to those sponsors, and the sponsors'
progress—or lack thereof—toward submitting a family reunification packet. The
Court commends ORR on doing a yeoman's job of making a record of its efforts to
release minors and reunify families in this challenging environment." ECF No.
784, n.5.

death." July 2020 ORR Report at 7. The ORR Report does not disclose what criteria ORR uses to determine whether class members are at heightened risk of serious illness or death.

Plaintiffs contend that ORR should disclose such criteria to the Court or to the Independent Monitor and Dr. Wise so that they many evaluate whether ORR's criteria comport with CDC guidelines.

Defendants' position.

As Defendants already informed Plaintiffs at the meet and confer, Defendants have no objection to providing any information to Ms. Ordin and/or Dr. Wise should they concur that they need that information to conduct their court-ordered monitoring of ORR facilities. In that discussion, Ms. Ordin agreed that she would reach out to Dr. Wise so that he could consult with Plaintiffs' counsel regarding their concerns and then follow up with ORR as appropriate. As noted above, Defendants are not aware of any occasion where Ms. Ordin or Dr. Wise have requested information on this topic and been refused by Defendants. Accordingly, Defendants believe that Plaintiffs' concerns are unfounded.

**4.     Part 4.a.iv.**

The Court ordered ORR to "[d]escribe any policies and/or practices aimed at identifying and protecting minors who are at heightened risk of serious illness or death should they contract COVID-19. . ." April 24 Order at 20.

Plaintiffs' position.

The Juvenile Coordinator's report provides no more than a generalized statement of ORR's medical intake procedure and provides no information about what it does specifically to identify or protect minors who are at heightened risk of serious illness or death. As stated above, the report also fails to specify the criteria ORR uses to determine whether a child is at heightened risk of serious illness or death.

Plaintiffs contend that ORR should disclose such criteria to the Court or to the Independent Monitor and Dr. Wise so that they many evaluate whether ORR's criteria and policies comport with CDC guidelines.

Defendants' position.

Defendants would refer the Court to the ORR Report, which explains: how ORR designed the initial medical examination; the involvement of the Division of Health of Unaccompanied Children (DHUC); the process for ORR care providers tracking and discussing children with existing medical conditions including those that put them at medical complications for any contagious diseases; and the measures care providers take to address children with complex health needs. Report at 6-7. Also, during the meet and confer, Ms. Miranda-Maese explained that she speaks with each care provider with a positive COVID-19 test to determine medical vulnerability, and receives specific answers from such care providers. *See also* ORR Report at 1.

As Defendants already informed Plaintiffs' counsel at the meet and confer, Defendants have no objection to providing information to Ms. Ordin and/or Dr. Wise if they agree that they need it to conduct their court-ordered monitoring of ORR facilities, and Defendants are not aware of any occasion where Ms. Ordin or Dr. Wise have requested information on this topic and been refused by Defendants. Accordingly, Defendants believe that Plaintiffs' concerns are unfounded.

**5.     Part 4.a.v.**

The Court ordered ORR to "[e]xplain whether medical professionals at ORR are making expeditious individual assessments about a Class Member's eligibility for release when the Class Member has been exposed to COVID-19 or has a sponsor whose household has a confirmed case of COVID-19, and provide the average time in which such individual assessments take place during the

reporting period;. . ." April 24 Order at 20.

Plaintiffs' position.

The ORR Report provides no information regarding whether medical professionals are making expeditious individual assessments about class member's eligibility for release, and instead provides only general information about children in COVID-19 quarantine and their possibilities for release. July 2020 ORR Report at 7-9. The ORR Report accordingly fails to comply with the Court's April 24 order.

Defendants' position.

The Report explains that "quarantine recommendations for minors who have been exposed to a confirmed COVID-19 case are made in collaboration with the local public health authority." The report further explains that for the majority of minors, exposures to COVID-19 are not delaying release, and explains the specific steps being taken for others. In one case, the report explains the exact date that a parent and child will be retested, Report at 8, and that release would continue upon completion of quarantine. For another minor, the report explained that the minor had already quarantined for 14 days, the minor was awaiting results of a follow-up test, and ORR would continue with the steps to release the minor upon the completion of her quarantine. Report at 9. Defendants therefore disagree that the Report fails to comply with the Court's order.

At the meet and confer, Defendants explained that if the reunification process has not yet been completed, then a quarantine or exposure to COVID-19 would not require an individualized assessment as the case is not yet ready for release. Plaintiffs have not explained what additional information they believe is needed, but in any event Defendants contend that the Report is specific and complies with the April 24, 2020 Order.

**6.     Part 4.a.vi.**

The Court ordered ORR to "[e]xplain whether ORR is making individualized assessments regarding its ability to release minors subject to removal orders under the MPP, including census data and reasons for non-release." April 24 Order at 20.

Plaintiffs' position.

The ORR Report advises that ORR released 16 class members with MPP cases but continues to detain 30 such minors. The ORR Report states only that these 30 children "are still going through the reunification process," July 2020 ORR Report at 9, but fails to identify these children, disclose how long their reunification process has been going on, the reasons the process has not been completed, or when ORR expects it will complete the reunification process.

In Plaintiffs' view, ORR's disclosing the foregoing should be required in order to permit verification that "reunification" delays are not pretextual.

Defendants' position.

Defendants explained to Plaintiffs' counsel at the meet and confer that only 3 of these 30 minors subject to an MPP removal is actually in a congregate care facility so as to be implicated by the Court's recent orders related to COVID-19, and since the Report was compiled 4 have been released, with 3 more approved for release. Defendants also explained that half of the minors with MPP removal orders are in long-term foster care (meaning a viable sponsor was not identified). Defendants noted that the Court's order regarding MPP addresses "Class Members who have suitable custodians . . . ." ECF No. 784 at 18. As such, if the reunification process has not yet been completed and no viable sponsor if available then the Court's order would not be implicated. The ORR Report explains that the minors subject to MPP removal orders are "still going through the reunification process." Report at 9.

Plaintiffs have provided no evidence to show that Defendants have ever used delays in the reunification process as a pretext to avoid releasing a minor subject to removal under MPP. Plaintiffs' accusations in that regard are unfounded and without merit. This Court has previously rejected Plaintiffs' requests for ongoing blanket reporting beyond the four corners of the Agreement, and the Court should decline to order additional reporting based on counsel's speculation. Defendants refer, as well, to the above discussion of Paragraph 28.B should Plaintiffs' counsel have information showing that they have "reasonable cause to believe that a minor in INS legal custody should have been released pursuant to Paragraph 14."**7.**7.777.

**7.    Fingerprint waiver policy.**

The Court directed ORR to "institute provisional release of Class Members with Category 2B and Category 3 sponsors whose name-only background checks yield no red flags and for whom fingerprinting is unavailable," so long as the sponsors agree to fingerprinting post-release. April 24 Order at 18-19.

Thereafter, ORR issued a fingerprinting waiver policy. Exhibit E to Plaintiffs' Statement re ORR Juvenile Coordinator's Second Report, June 17, 2020, at 122-126 [Doc. # 823].

Following Plaintiffs' complaint that the fingerprint policy was needlessly onerous, the Court ordered ORR to "review and amend its fingerprinting policy to provide for a less onerous chain of approvals or show cause to the Court why the policy, as written, is imperative. . ." June Order at 5.

The ORR Juvenile Coordinator attached a revised fingerprint waiver policy to her report. July 2020 ORR Report at 16-19.

Plaintiffs' position.

ORR's revised fingerprint waiver process remains needlessly burdensome and cannot help but delay children's release unnecessarily. Rather than amending its policy to provide for a less onerous chain of approvals, ORR has added a new

24

requirement that a fingerprint waiver be approved by the ORR Director. *See* July 2020 ORR Report at 18-19.

Pursuant to its revised policy, ORR requires support for a fingerprinting waiver from a class member's case manager, Contract Field Specialist ("CFS"), Federal Field Specialist ("FFS"), and the Director for Unaccompanied Children's Operations (in consultation with the Division of Policy and Procedure), and additionally requires approval from the ORR Director. July 2020 ORR Report at 17-19. ORR's prior, overly restrictive policy, did not require ORR Director approval. *See* Exhibit E to Plaintiffs' Statement re ORR Juvenile Coordinator's Second Report [Doc. # 823 at 125]. The revised policy fixes no time limit by which the ORR Director must grant or withhold approval of a waiver, and whether to waive fingerprinting appears wholly discretionary. The new policy does not appear to require a finding "that fingerprinting is necessary to address a documented risk of safety to the minor." April 24 Order at 19.

This Court has previously disapproved a much less redundant and onerous approval chain as needlessly extending children's detention. Order re Plaintiffs' Motion to Enforce Class Action Settlement, July 30, 2018 [Doc. # 470], at 27-29 ("an extra layer of review" by the ORR Director before class members' release "would inevitably prolong their detention"). Defendants have not shared with Plaintiffs what specific safety concerns are mitigated by ORR Director approval.

Plaintiffs continue to believe that ORR has failed to meaningfully comply with the Court's April 24 Order. ORR should be required to submit a revised, and less onerous, fingerprint waiver policy for the Court's approval without further delay.

Defendants' position.

ORR amended the review procedures in accordance with the Court's order. Plaintiffs provide no evidence that the revised procedures are not in compliance

25

beyond speculation that the inclusion of Director review will delay release
decisions. In fact, ORR has reviewed these cases and confirms that Director review
and approval has not resulted in delays in the release process. As Plaintiffs'
counsel have acknowledged in oral argument, unlike a foster care agency, ORR is
unable to resume custody after a minor is released to a sponsor; as such, ORR has
maintained that the provisional release of minors without fingerprinting raises
concerns about the safety of the minors being released. The ORR Report identified
the case of A.G.L.C. where the sponsor has not responded to ORR's follow up
communication attempts. There is no basis to find that the inclusion of Director
sign-off is, in and of itself, a violation of the Agreement. Director sign-off is not
delaying release, ORR is waiving an otherwise important child welfare safety
protection, ORR cannot resume custody following release, and ORR has otherwise
reduced the chain of approvals in its fingerprinting procedures. For all of these
reasons, Director sign off is important, and comports with the Agreement.
Plaintiffs provide no basis to find otherwise.

**8.      Disclosures to class members' immigration counsel.**

The Court ordered that the parties continue to meet and confer and report
by July 31, 2020, regarding "certain disclosures, including information
regarding existence of COVID-19 infection among Class Members, that should
be provided to minors' immigration counsel." June Order at 6 ¶ 7.
Plaintiffs' position.

To Plaintiffs' knowledge and belief, ORR and its care providers continue to
keep class members' legal service providers in the dark regarding COVID-19
protocols and whether their clients have been exposed to COVID-19. *See*
Declaration of Claire Doutre, July 29, 2020 (Exhibit A); *see also* Plaintiffs'
Statement re ORR Juvenile Coordinator's Second Report at 6-8 [Doc. # 823];
Declaration of Ana Devereaux, Exhibit D to Plaintiffs' Statement [Doc. # 823 at

23-34]. The parties have not made progress on this issue as Defendants have adopted the position that information-sharing with class members' legal service providers is not required by the Settlement.

Defendants' position:

Defendants position remains the same as reported in the April 23, 2020 joint report. ECF No. 778 (explaining: that ORR is not aware of any situations where an attorney of record has requested COVID-19 information, the unaccompanied minor agrees that such information should be shared, and programs are failing to provide the information; the contract with the Vera Institute of Justice and ORR contact with Vera; Vera access to the UAC Portal page containing a full list of COVID-19 field guidance provided to care providers; and legal service providers' ability to work with Vera for information). *See also* 837-3 (Annual ORR Juvenile Coordinator Report explaining that most legal service provides do not act as individual representatives, that attorneys of record have unlimited telephone access to their clients, and the child advocate program). At a meet and confer on July 29, 2020 the parties discussed this issue as it pertains to ORR, and Plaintiffs' counsel once again provided no explanation that would show how the information Plaintiffs are seeking is related to any requirement under the *Flores* Agreement. Given that the Agreement does not address the provision of information to individual immigration counsel for class members, it remains Defendants' position that Plaintiffs' assertions that such information should nonetheless be provided are not properly addressed in the context of this case, nor the pending litigation.

In the June 26, 2020, Order, the Court stated: "[I]f the Court determines that relevant facts are being presented to the Court for the first time without having been shared in advance with the opposing side in an effort to achieve resolution,

the Court will not address the issues to which those facts pertain." Order Paragraph 5. The attached declaration was emailed to Defendants' counsel at 6:38 pm Eastern Time on the day the joint report was due. Given this timing, Defendants do not agree that this information has been shared in advance in any good faith effort to achieve resolution of the issues contained therein, and object to the Court's considering the issues to which these facts pertain.

                          Respectfully submitted,

 Dated: July 31, 2020          */s/ Peter Schey*
                          Peter A. Schey
                          Carlos R. Holguin
                          CENTER FOR HUMAN RIGHTS &
                          CONSTITUTIONAL LAW
                          *Class Counsel for Plaintiffs*

                          */s/ Sarah Fabian (*with permission)
                          Sarah B. Fabian
                          Senior Litigation Counsel
                          U.S. DEPARTMENT OF JUSTICE
                          Office of Immigration Litigation
                          District Court Section

                          *Counsel for Defendants*

28

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2020, I served the foregoing pleading on all counsel of record by means of the District Clerk's CM/ECF electronic filing system.

/s/ *Peter Schey*
Peter A. Schey
CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
*Class Counsel for Plaintiffs*