ETHAN P. DAVIS
Acting Assistant Attorney General
Civil Division
AUGUST E. FLENTJE
Special Counsel to the Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director, District Court Section
Office of Immigration Litigation
SARAH B. FABIAN
NICOLE N. MURLEY
Senior Litigation Counsel
 Tel: (202) 532-4824
 Fax: (202) 305-7000
 Email: Sarah.B.Fabian@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY LISETTE FLORES; *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM P. BARR, Attorney General of the United States; *et al.*, <br><br> Defendants. | Case No. CV 85-4544-DMG <br><br> **DEFENDANTS' RESPONSE TO PLAINTIFFS' REPORT ON PARTIES' CONFERENCE RE "TITLE 42" CLASS MEMBERS** |

On July 25, 2020, the Court issued an order that directed the parties to "meet and confer regarding the issues with 'hoteling' raised in the Monitor's Interim Report on the Use of Temporary Housing for Minors and Families Under Title 42 [Doc. # 873] and provide a status update on their efforts to resolve those issues at the August 7, 2020 hearing in this matter." Order re Defendants' Ex Parte Application to Stay at 3, ECF No. 887, July 25, 2020. The parties met and conferred on this topic on July 27, 2020. Despite the Court's directive for the parties to provide a status report at this week's hearing, on July 29, 2020, Plaintiffs unilaterally filed what purports to be a "Report" regarding the parties' meet-and-confer efforts, in which Plaintiffs asked the Court to find Defendants in breach of the *Flores* Settlement Agreement ("Agreement") and issue an order enforcing the Agreement against Defendants. Report, ECF No. 897 at 5-6. Plaintiffs' "Report" is procedurally improper and inaccurate. Defendants file this response to clarify their position on the procedural status of this issue and to correct Plaintiffs' misstatement of Defendants' legal position regarding the Agreement and the government's Title 42 processes.

I. Plaintiffs' "Report" Is Procedurally Improper.

Plaintiffs' "Report" not only disregards the Court's directive that the parties report on their meet and confer efforts at the August 7, 2020, status conference, it also appears to be a procedurally improper request for an order enforcing the Agreement against Defendants. *See* Report, ECF No. 897 at 5-6. If Plaintiffs wish to ask the Court to issue any order or to enforce the Agreement against Defendants, Plaintiffs should be required to file a properly noticed motion in accordance with Federal Rule of Civil Procedure 7 and the applicable Local Rules. Plaintiffs' counsel disclaimed any intention to file a motion when the parties met and conferred, and Plaintiffs complied with none of the notice requirements that would

1

apply to a motion seeking relief from the Court when they unilaterally filed their "Report." Accordingly, to the extent that the "Report" alleges that Defendants are in violation of the Agreement and seeks relief in the form of an order from this Court, the Court should disregard Plaintiffs' "Report" and require that Plaintiffs file any such requests for relief in accordance with the applicable federal and local rules.

Defendants recognize that, over Defendants' objections, the Court's July 25, 2020 Order, ECF No. 887, stated that "[m]onitoring of the possible hoteling issue arises under [the Court's April 24, 2020 Order], as well as the language of the June 26, 2020 Order authorizing the Independent Monitor and Dr. Wise to 'make such recommendations for remedial action that they deem appropriate.'" ECF No. 887 at 3. Thus, Defendants are cooperating with Ms. Ordin and Dr. Wise to the extent they are continuing to monitor this issue. Moreover, as requested by the Court, to the extent that Defendants have further objections to the Monitor's Interim Report or to this portion of the Court's order, Defendants will identify those objections at the August 7, 2020 status conference. *Id.*; *see also* Monitoring Order, ECF No. 494, at 20 (adopting the procedures and time limits set forth in Federal Rule of Civil Procedure 53(f) for seeking review of any finding or recommendation of the Monitor).

That said, even if the Monitor may properly continue to conduct monitoring activities at this time based on the Court's July 27, 2020 Order, no action can be taken by the Court unless and until—at a minimum—Defendants are given notice of what portions of the Agreement they are alleged to have breached, and an opportunity to be heard on the legal and factual issues related to any such allegations. *See* Monitoring Order, ECF No. 494 at 20; Fed. R. Civ. Proc. 7 and 53(f); *Flores* Agreement ¶ 37. Until Defendants are given notice of what issues the

Court intends to address, and a full and fair opportunity to brief the legal and factual issues raised by the Monitor and by Plaintiffs, further action by the Court on this issue would be improper. Such an opportunity would need to include, at a minimum, the opportunity to more fully brief two issues, namely: (1) whether the Agreement applies to the custody at issue here which is under the legal authority of the Centers for Disease Control and Prevention ("CDC"), and (2) even if the Agreement does apply, whether a brief period of custody in a non-congregate hotel setting following arrest and while exclusion under Title 42 order is being carried out complies with the Agreement.

II.   Plaintiffs Misstate Defendants' Legal Position

Because Plaintiffs took it upon themselves to unilaterally report on the parties' discussions, they have inadequately presented Defendants' legal position to the Court. As noted above, Defendants believe that no further action should be taken until they receive notice and a full and fair opportunity to be heard on the legal and factual issues surrounding this matter, but out of an abundance of caution, Defendants wish to correct Plaintiffs' incorrect explanation of their legal position for the record.

Specifically, the Agreement does not apply to the government's implementation of the CDC's Title 42 orders.[1] *See* Order Suspending Introduction of Certain Persons from Countries Where a Communicable Disease Exists, 85 Fed. Reg. 17060 (Mar. 26, 2020); Extension of Order Suspending Introduction of

---

[1] Even if the Agreement does apply, a brief period of custody in a non-congregate hotel setting following arrest with access to beds, showers, medical screening, food and water, and sanitary conditions, while expulsion under the CDC's Title 42 order is being carried out as expeditiously as possible, does not violate the terms of the Agreement.

3

Certain Persons from Countries Where a Communicable Disease Exists, 85 Fed. Reg. 22424 (April 22, 2020); Amendment and Extension of Order Suspending Introduction of Certain Persons from Countries Where a Communicable Disease Exists, 85 Fed. Reg. 31503 (May 26, 2020). These public health orders are based on the CDC's continued determination that "there remains a serious risk to the public health that COVID-19 will continue to spread to unaffected communities within the United States, or further burden already affected areas. At this critical juncture, it would be counterproductive to undermine ongoing public health efforts by relaxing restrictions on the introduction of covered aliens who pose a risk of further introducing COVID-19 into the United States." 85 Fed. Reg. at 31505. Likewise, the CDC has determined that the processes instituted under these orders have "significantly mitigated the specific public health risk identified in the initial Order . . . ." *Id.* The Agreement does not apply to the processes implemented under these orders because the Agreement applies to minors in the "legal custody of the INS," Agreement ¶ 10, and that term did not encompass or anticipate custody incident to these present-day orders detailing processes to be carried out pursuant to Title 42. Moreover, minors who are expelled under the existing Title 42 processes are not in the "legal custody" of any legal successor to any party to the Agreement.

As the Court has recognized, "[t]he Flores Agreement is a binding contract and a consent decree. . . . It is a creature of the parties' own contractual agreements and is analyzed as a contract for purposes of enforcement." *Flores v. Barr*, 407 F. Supp. 3d 909, 931 (C.D. Cal. 2019); *see also City of Las Vegas v. Clark County*, 755 F.2d 697, 702 (9th Cir. 1985) ("A consent decree, which has attributes of a contract and a judicial act, is construed with reference to ordinary contract principles."). Like a contract, a consent decree "must be discerned within its four

4

corners, extrinsic evidence being relevant only to resolve ambiguity in the decree." *United States v. Asarco, Inc.*, 430 F.3d 972, 980 (9th Cir. 2005); *see also United States v. Armour & Co.*, 402 U.S. 673, 681 (1971) ("[T]he scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it."). The Agreement "should be read to give effect to all of its provisions and to render them consistent with each other." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995).

By its plain terms, the Agreement applies only to those minors in "the legal custody of the INS." Agreement ¶¶ 4, 10. The Agreement does not explicitly define "legal custody," but the Agreement does recognize a critical distinction between *legal custody* and *physical custody*. The Agreement provides for the INS in some instances to place a minor in the *physical custody* of a licensed program, but the Agreement specifies that the minor remains in the *legal custody* of the INS. Agreement ¶ 19; *see also Gao v. Jenifer*, 185 F.3d 548, 551 (6th Cir. 1999) (explaining that the INS's contracts with these third-party programs explicitly state that the INS retains legal custody while the programs have physical custody). While a minor is in the physical custody of a licensed program, the INS retains the sole authority to transfer and release the minor (except that the licensed program can transfer *physical* custody in emergencies). Agreement ¶ 19. Thus, Paragraph 19 makes clear the parties' agreement that the "legal custody of the INS" means custody at the direction of the INS, where the INS retains the authority to authorize continued detention or release of the minor. *Id.*[2]

---

[2] When the Agreement was signed in 1997, the existence of a distinction between legal custody and physical custody was clearly understood in California. *See, e.g.*,

The original class certified in the *Flores* litigation included only individuals under the age of eighteen who "are, or will be arrested and detained pursuant to 8 U.S.C. § 1252." ECF No. 142-1. In 1986, when the class was certified, 8 U.S.C. § 1252 governed discretionary detention during removal proceedings. At the time the Agreement was signed in 1997, the INS's legal authority to detain minors remained within Title 8. *See* 8 U.S.C. §§ 1225, 1252 (1997); *see also Reno v. Flores*, 507 U.S. 292, 294-95 n.1 (1993). Such detention was incident to immigration deportation and exclusion proceedings, the authority for which was also detailed in Title 8. *See* 8 U.S.C. §§ 1225, 1226, 1231, 1252(b) (1997). The authority for immigration proceedings, as well as the authority to hold minors in immigration custody, is still found in Title 8 today. *See* 8 U.S.C. §§ 1225, 1226, 1231, 1232. The successors of the INS who carry out these immigration functions today are U.S. Customs and Border Protection ("CBP"), U.S. Immigration and Customs Enforcement ("ICE"), and U.S. Citizenship and Immigration Services, all of which are part of the Department of Homeland Security ("DHS"), as well as the Office of Refugee Resettlement ("ORR") in the Department of Health and Human Services ("HHS") with respect to unaccompanied alien children. *See* Homeland Security Act of 2002 §§ 402, 462, 1512, Pub. L. No. 107-296, 116 Stat. 2135 (codified at 6 U.S.C. §§ 202, 279, 552); TVPRA, 8 U.S.C. § 1232.

---

*In re Jennifer R.*, 17 Cal. Rptr. 2d 759, 763 (Ct. App. 1993) (noting in family law that legal custody of a child was distinct from physical custody because legal custody was the power to make major decisions affecting the life of the child); *People v. Romo*, 64 Cal. Rptr. 151, 155 (Ct. App. 1967) (discussing how one facility had physical custody of persons who were in the legal custody of another agency).

6

The CDC, though part of HHS, is not a successor to the INS with respect to the detention addressed in the Agreement or the detention under Title 8 authorities that was the subject of this case. Instead, the custody at issue here is incident to the government's implementation of public health orders issued by the CDC under its authority in 42 U.S.C. § 265, and is in no way related to Title 8 or to immigration enforcement authorities. Enacted in 1944, Section 265 provides the Surgeon General with "the power to prohibit, in whole or in part, the introduction of persons and property from such countries or places as he shall designate in order to avert such danger, and for such period of time as he may deem necessary for such purpose." 42 U.S.C. § 265. Title 42 provides the legal authority to the CDC, and not DHS, for these processes, as well as for any custody of individuals incident to these processes. It should also be noted that the INS would not have had the authority to implement the CDC's Title 42 orders, because the role of DHS in the Title 42 process is pursuant to 42 U.S.C. § 268, which provides that "[i]t shall be the duty of the customs officers and of Coast Guard officers to aid in the enforcement of quarantine rules and regulations . . . ." Neither the Coast Guard, nor any customs officers, were part of the former INS. The customs officer authorities now within DHS were transferred from the Department of the Treasury to DHS with the Homeland Security Act. 6 U.S.C. § 203. And DHS's role in these processes and custody incident to these processes arises from authorities provided by this public health statute, and not under any immigration statute.

In enacting the emergency order in response to the unprecedented global COVID-19 pandemic, the CDC asked DHS to implement the necessary processes under the order because the CDC lacks the resources to do so:

> I consulted with DHS before I issued this order, and requested that DHS implement this order because CDC does not have the capability, resources, or personnel needed to do so. As part of the

7

> consultation, CBP developed an operational plan for implementing the order. Accordingly, DHS will, where necessary, use repatriation flights to move covered aliens on a space-available basis, as authorized by law. The plan is generally consistent with the language of this order directing that covered aliens spend as little time in congregate settings as practicable under the circumstances. In my view, it is also the only viable alternative for implementing the order; CDC's other public health tools are not viable mechanisms given CDC resource and personnel constraints, the large numbers of covered aliens involved, and the likelihood that covered aliens do not have homes in the United States.

85 Fed. Reg. at 17067. The order makes clear that in directing DHS to implement the order, the CDC specifically required DHS to limit the amount of time individuals would spend in congregate settings, which supports DHS's use of hotels for that purpose.[3] Thus, the order makes clear that the individuals subject to these processes are in the legal custody of HHS, and are not held pursuant to any authority vested in DHS. Under the plain terms of the Agreement, it does not apply to the custody at issue here because these minors are not in the "legal custody" of CBP and/or ICE (or any successor to INS). Rather, DHS's only role in the process is to implement procedures that are only allowed pursuant to the CDC's authority.

---

[3] In fact, DHS's use of hotels to house minors pending their expulsion pursuant to the Title 42 process comports with CDC's general guidance to detention facilities, which state that the ideal quarantine conditions are individual rooms with solid walls and a closed door. *See* CDC, Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities (updated July 22, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html ("In order of preference, multiple quarantined individuals should be housed: IDEAL: Separately, in single cells with solid walls (i.e., not bars) and solid doors that close fully.").

8

The "basic goal of contract interpretation" is to give effect to the parties' mutual intent "at the time of contracting." *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.,* 109 Cal. App. 4th 944, 955 (Cal. Ct. App. 2003) (citing Cal. Civ. Code § 1636). Importantly, Title 42 is not an immigration provision and does not provide any authority for custody by DHS, and its purview is not limited to aliens. Further, the Agreement makes clear that the parties were addressing and settling specific issues related to custody by the INS incident to immigration proceedings, under the applicable law governing that custody. *See, e.g.*, Agreement ¶¶ 9 ("This Agreement sets out nationwide policy for the detention, release, and treatment of minors in the custody of the INS"); 11 ("The INS shall place each detained minor in the least restrictive setting appropriate to the minor's age and special needs, provided that such setting is consistent with its interests to ensure the minor's timely appearance before the INS and the immigration courts and to protect the minor's well-being and that of others."); 12.A ("Whenever the INS takes a minor into custody, it shall expeditiously process the minor . . ."); 14 ("Where the INS determines that the detention of the minor is not required either to secure his or her timely appearance before the INS or the immigration court . . ."); 24.A (providing for bond hearings before an immigration judge). Nothing in the Agreement suggests that the parties intended it to govern—or anticipated that it would govern—any emergency procedures implemented by the CDC under 42 U.S.C. § 265, or any incidental custody necessary to implement these procedures.

There is no reasonable argument that, at the time the Agreement was signed, the parties anticipated that 23 years later there would be a global pandemic, and that some of the legal-successor agencies to the INS would be charged with implementing emergency procedures on behalf of the Surgeon General under 42

9

U.S.C. § 265 so that the Agreement would be expected to govern custody incident to those procedures. Therefore, it cannot be presumed that, in formulating the terms of the Agreement, the parties in any way considered that DHS's resources would ever be required for implementation of CDC authority. Likewise, nothing in the Agreement can be read to anticipate the unique needs or situations that might arise as part of any need to implement procedures under 42 U.S.C. § 265, including any custody that might occur incident thereto—such as a quarantine and exclusion process designed to prevent the transmission of a global pandemic. "[T]he courts do not make contracts for the parties." *Headlands Reserve, LLC v. Ctr. For Nat. Lands Mgmt.*, 523 F. Supp. 2d 1113, 1123 (C.D. Cal. 2007) (citation and internal quotations omitted). The Court should not reinterpret the Agreement to govern processes, procedures, or custody which the parties never considered, and to which the parties never anticipated it would apply. At any rate, the issues raised herein are sufficiently complex that they should be briefed in full before the Court makes any ruling on these issues.

DATED: August 4, 2020        Respectfully submitted,

ETHAN P. DAVIS
Acting Assistant Attorney General

AUGUST E. FLENTJE
Special Counsel to the Assistant Attorney General

WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation

WILLIAM C. SILVIS
Assistant Director, District Court Section
Office of Immigration Litigation

*/s/ Sarah B. Fabian*
SARAH B. FABIAN
NICOLE N. MURLEY
Senior Litigation Counsel
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-4824
Fax: (202) 305-7000
Email: sarah.b.fabian@usdoj.gov

*Attorneys for Defendants*

11

CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2020, I served the foregoing pleading and attachments on all counsel of record by means of the District Clerk's CM/ECF electronic filing system.

/s/ *Sarah B. Fabian*
SARAH B. FABIAN
U.S. Department of Justice
District Court Section
Office of Immigration Litigation

Attorney for Defendants