ETHAN P. DAVIS
Acting Assistant Attorney General
Civil Division
AUGUST E. FLENTJE
Special Counsel
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director, District Court Section
Office of Immigration Litigation
SARAH B. FABIAN
NICOLE N. MURLEY
Senior Litigation Counsel
    Tel:  (202) 532-4824
    Fax:  (202) 305-7000
    Email:  Sarah.B.Fabian@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JENNY LISETTE FLORES; *et al.*, | Case No. CV 85-4544-DMG |
| Plaintiffs, | |
| v. | **JOINT STATUS REPORT** |
| WILLIAM P. BARR, Attorney General of the United States; *et al.,* | |
| Defendants. | |

On June 26, 2020, the Court ordered the parties to continue to meet and confer regarding "the adoption and implementation of proper written advisals and other protocols to inform detained guardians/parents about minors' rights under the FSA and obtain information regarding, and procedures for placement with, available and suitable sponsors, as well as discuss conditions at the Cowlitz and NORCOR detention facilities[,]" and to provide a joint status report regarding these efforts to meet and confer no later than July 8, 2020. Order, ECF No. 833, ¶ 6. The parties did so. *See* ECF No. 846. On July 25, 2020, the Court denied an application filed by Defendants seeking to stay the proceedings, and in denying that application ordered as follows with regard to the meet and confer process:

> If the parties solicit the Court's suggestions, it will endeavor to provide constructive guidance. But the Court cannot and will not dictate the results of the parties' negotiations or force an agreement where there is none. Nor should the parties seek the Court's approval of a protocol that they have not yet agreed upon. Until the parties evidence some agreement regarding a know-your-rights protocol, there is none. As of today, the Court is not aware of any agreement that has been reached between the parties. The proper avenue for the parties to inform the Court of their agreement—or lack thereof—and of the progress of their discussions on the know-your-rights protocol is through the filing of a joint status report, as required under Paragraph 6 of the June 6, 2020 Order. In light of the flurry of ex parte briefing within the last 48 hours, the Court requests that the parties file a further joint status report consistent with Paragraph 6 by August 5, 2020.

Order, ECF No. 887, at 2. In accordance with the Court's order, the parties file the following joint report.

**Plaintiffs' Position:**

Defendants state below that they "will not voluntarily agree to any protocol that would potentially provide for the separation of a parent and child who are currently housed together in an ICE FRC." What Defendants mean is that they have in the past opposed and continue to oppose the release of *any* accompanied minor, regardless of what a Class Member's parent may think is in the best interest of his or her child.[1]

What Defendants also mean is they oppose parents of detained Class Members *being advised of their child's rights* under the *Flores* Settlement Agreement ("FSA"), and definitely oppose establishing any procedures to follow should a parent decide it's in her child's best interest to be released to close relatives living in the U.S.

The FSA "creates a presumption in favor of releasing minors." *Flores v. Barr*, 934 F.3d 910, 916 (9th Cir. 2019); *accord Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016); *Flores v. Sessions*, 862 F.3d 863, 866 (9th Cir. 2017).

The following holding of the Court of Appeals is instructive on the current issue now before the Court:

> Construing the Agreement as requiring only the particular conditions specifically enumerated renders both the "safe and sanitary" and the

---

[1] Defendants have twice unsuccessfully moved the Court to terminate the rights of accompanied minors, they have also unsuccessfully argued before this Court and the Court of Appeals that the FSA was not intended to provide any protections to accompanied minors, and they have promulgated final regulations-the implementation of which was blocked by this Court-aimed principally at terminating the FSA's protections for accompanied minors. So Defendants now seek to accomplish through the back door what they failed to achieve through the front door by never advising parents of their children's FSA rights and not having *any* procedures in place to implement those rights should a parent believe it's in their child's best interest to be released.

> "particular vulnerability of minors" phrases wholly superfluous. We cannot accept that the parties to the Agreement included gratuitous standards that have no practical impact. "Courts interpreting the language of contracts 'should give effect to every provision,' and 'an interpretation which renders part of the instrument to be surplusage should be avoided.'" *United States v. 1.377 Acres of Land*, 352 F.3d 1259, 1265 (9th Cir. 2003) (quoting *Appalachian Ins. Co. v. McDonnell Douglas Corp.*, 214 Cal. App. 3d 1, 12, 262 Cal. Rptr. 716 (Ct. App. 1989)); *see also* Restatement (Second) of Contracts § 203 (Am. Law Inst. 1981). We conclude that paragraph 12A's provisions that facilities be "safe and sanitary and . . . consistent with the INS's concern for the particular vulnerability of minors" do have independent force and can be interpreted and enforced without thereby modifying the Agreement.

*Flores v. Lynch*, *supra*, 828 F.3d at 915.

Similarly, the FSA's provisions addressing the release rights of accompanied children have independent force and can be interpreted and enforced by requiring that parents be advised of their children's rights and that ICE adopts procedures to simply comply with Class Members' release rights without thereby modifying the Agreement.

As they previously reported to the Court, the parties did meet and confer regarding adoption of an advisal to be provided parents and procedures for ICE to follow in the event a parent decided it was in their child's best interest to be released and reached agreement on virtually every aspect of a protocol with the exception of only three areas: (1) the extent to which counsel of record for parents should be advised of ICE's decisions, (2) how to release a child if an approved sponsor is unable to appear at an ICE detention facility to take custody of a child, and (3) the extent to which ICE may initiate enforcement action against a sponsor simply

because they cooperate with the sponsor application process. Because Defendants have withdrawn their agreement to these document and do not agree to jointly file them with this status report, Plaintiffs will separately lodge these documents with the Court.

Consistent with their long-held position that accompanied children should have *no* rights under the FSA, from the beginning of this process Defendants made clear to Plaintiffs and the Court that they object to parents being informed of their children's rights or to adopting *any* procedures to give effect to those rights.

Plaintiffs leave it to the Court to provide further guidance on this issue but are firm in their belief that the important rights the FSA extends to accompanied children cannot be largely eviscerated simply because Defendants do not want parents of accompanying Class Members to be informed of their children's rights under the FSA, and also do not wish to adopt any procedures to implement those rights should a parent believe it's in their child's best interest to be released to close family members. This state of affairs effectively means that Defendants have caused the FSA's presumption of release for accompanied Class Members to become relatively meaningless.[2]

**Defendants' Position**:

Defendants understand the Court's July 25, 2020, Order to make clear that in order to implement Paragraph 1 of the Court's June 26, 2020, Order with regard to the requirement that Defendants obtain "consent of [a class member's] guardians/parents to release them to an available suitable sponsor," the parties must

---

[2] As Plaintiffs have previously pointed out, the previous administration achieved substantial compliance with the FSA by having a ninety to ninety-five percent (90-95%) credible fear approval rate, and promptly released Class Members with their parents found to possess a credible fear of persecution if returned to their home countries. That approach to compliance no longer exists as the credible fear approval rate has now dropped to about ten percent (10%) when the current Administration substantially restricted its asylum policies.

reach full *voluntary* agreement regarding a protocol for such implementation. ECF No. 887 at 2. If such voluntary agreement is not reached, then "Paragraph 1 of the June 26, 2020 Order is unenforceable by its own terms." *Id.* Defendants have objected, and continue to object, to the implementation of any protocol that would potentially provide for the separation of a parent and child who are currently housed together in an ICE family residential center (FRC). Defendants' participation in the ongoing discussions regarding these protocols was based on their understanding that they were being required by the Court to negotiate and implement such protocols in order to meet the Court's deadline of July 17, 2020 (later extended to July 27, 2020), or risk a Court order to submit to Plaintiff-proposed protocols that might be unworkable as an operational matter. Given this understanding, the government has made clear throughout these discussions that its participation in the development of these protocols was not voluntary. Rather, the government's participation has been based solely on the government's understanding that such participation was required for compliance with the Court's order.

In light of the Court's recent statement that Defendants' voluntary agreement to these protocols is required for their implementation, Defendants state that they do not believe that any voluntary agreement can be reached. Specifically, Defendants will not voluntarily agree to any protocol that would potentially provide for the separation of a parent and child who are currently housed together in an ICE FRC. Defendants disagree with Plaintiffs' characterization of the Parties' disagreement, particularly the assertion that Defendants "oppose parents of detained Class Members being advised of their child's rights under the *Flores* Settlement Agreement," as well as Plaintiffs' suppositions as to Defendants' intentions and motivations. Defendants believe at this time that further meet-and-confer discussions on this issue would not be fruitful.

| | |
|---|---|
| DATED: August 5, 2020 | */s/Peter Schey* (with permission)<br>*Class Counsel for Plaintiffs*<br>CENTER FOR HUMAN RIGHTS &<br>CONSTITUTIONAL LAW<br>Peter A. Schey<br>Carlos Holguín |
| DATED: August 5, 2020 | ETHAN P. DAVIS<br>Acting Assistant Attorney General<br>Civil Division<br><br>WILLIAM C. PEACHEY<br>Director, District Court Section<br>Office of Immigration Litigation<br><br>WILLIAM C. SILVIS<br>Assistant Director, District Court Section<br>Office of Immigration Litigation<br><br>*/s/ Sarah B. Fabian*<br>SARAH B. FABIAN<br>NICOLE N. MURLEY<br>Senior Litigation Counsel<br>Office of Immigration Litigation<br>District Court Section<br>P.O. Box 868, Ben Franklin Station<br>Washington, D.C. 20044<br>Tel: (202) 532-4824<br>Fax: (202) 305-7000<br>Email: sarah.b.fabian@usdoj.gov<br><br>*Attorneys for Defendants* |

# CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2020, I served the foregoing pleading on all counsel of record by means of the District Clerk's CM/ECF electronic filing system.

/s/ *Sarah B. Fabian*
SARAH B. FABIAN
U.S. Department of Justice
District Court Section
Office of Immigration Litigation

Attorney for Defendants