1               UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3       HONORABLE DOLLY M. GEE, JUDGE PRESIDING

4   JENNY L. FLORES,          )
                           )
5                           )
                           )
6               Plaintiffs,  )
                           )
7                           )
                           )
8       Vs.             )  No. CV85-4544-DMG
                           )
9                           )
                           )
10  WILLIAM BARR, ET AL.,      )
                           )
11                          )
                           )
12             Defendants.  )
                           )
13  _____  )

14

15

16     REPORTER'S TRANSCRIPT OF TELECONFERENCE PROCEEDINGS

17              *STATUS CONFERENCE*

18          FRIDAY, AUGUST 7, 2020

19

20

21

22

23       MIRIAM V. BAIRD, CSR 11893, CCRA
        OFFICIAL U.S. DISTRICT COURT REPORTER
24      411 WEST FOURTH STREET, SUITE 1-053
         SANTA ANA, CALIFORNIA 92701
25         MVB11893@aol.com

```
 1                       A P P E A R A N C E S

 2

 3   IN BEHALF OF THE PLAINTIFFS,    PETER A. SCHEY
     JENNY L. FLORES:                (TELEPHONICALLY)
 4                                   CENTER FOR HUMAN RIGHTS AND
                                     CONSTITUTIONAL LAW
 5                                   256 SOUTH OCCIDENTAL
                                     BOULEVARD
 6                                   LOS ANGELES, CA 90057

 7

 8

 9
     IN BEHALF OF THE DEFENDANT,     SARAH B. FABIAN
10   WILLIAM BARR, ET AL.,:          NICOLE MURLEY
                                     US DEPARTMENT OF JUSTICE
11                                   OFFICE OF IMMIGRATION
                                     LITIGATION
12                                   PO BOX 868 BEN FRANKLIN
                                     STATION
13                                   WASHINGTON, DC 20044

14

15
     ALSO PRESENT:
16   SPECIAL MASTER ANDREA ORDIN
     DR. PAUL WISE
17   NEHA DESAI
     CARLOS HOLGUIN
18   GABE BARENFELD
     BRIDGET CAMBRIA
19   JUVENILE COORDINATORS:
     DEANE DOUGHERTY
20   AURORA MIRANDA-MAESE

21

22

23

24

25
```

```
 1        LOS ANGELES, CALIFORNIA; FRIDAY, AUGUST 7, 2020; 11:00 A.M.

 2                                  --

 3            THE CLERK:  Calling CV85-4544-DMG Jenny L. Flores,

 4     et al., v. William Barr, et al.

 5            For the plaintiffs, we have Peter Schey, Carlos

 6     Holguin, Neha Desai.  For amici, Gabe Barenfeld and Bridget

 7     Cambria.  Special monitor is Andrea Ordin along with Dr. Paul

 8     Wise.  For the government, we have Ms. Nicole Murley and

 9     Sarah Fabian.  The two coordinators are Aurora Miranda-Maese

10     and Deane Dougherty.

11            THE COURT:  Good morning everyone.  We have a lot

12     to discuss today, so I'm going to cut to the chase.  First of

13     all, let me remind everyone that we are here for a status

14     conference that relates to the original motion to enforce

15     that was filed by the plaintiffs regarding safety conditions

16     during the pandemic.  So any issues that are new and do not

17     arise from that motion, I'm going to deal with separately.

18            I'm going to start first with the hoteling issue.

19     I am going to ask Ms. Fabian to give me an update as to

20     whether or not that practice still exists and whether or not

21     defendants intend to end it at any point in time, because if

22     not, then I'm going to set it up for an expedited briefing

23     schedule.  I found the information that was shared with me to

24     be very disturbing.  So I think it needs to be addressed

25     sooner rather than later.
```

1          Ms. Fabian.

2          MS. FABIAN:  Your Honor, on that practice, I would

3     note -- I just want to clarify that I don't think that we

4     would agree that this is an issue that is related to the

5     original issues.  The hoteling and -- I just want to clarify

6     in case it wasn't clear from what has been submitted so far.

7     The use of hotels is not related to the ICE residential

8     centers at all.  It was the issue that was -- as part of the

9     original motion.  The issue of using the hotels is part of

10    the Title 42 processes is entirely independent from the

11    family residential centers.  It's, you know, a separate

12    process.  It's under separate authorities.

13          So I think I --

14          THE COURT:  I agree with you.

15          MS. FABIAN:  I will start by saying it is our

16    position -- okay.

17          On that front, it -- it -- that is still a practice

18    that is part of Title 42 to the best of my understanding.

19    It's not an issue that I work directly with, because it is an

20    issue covered by other litigation.  There are other attorneys

21    in my department who focus more closely and are more familiar

22    with the day-to-day.  It is my understanding that the

23    Title 42 process -- the order has been reissued.  So those

24    Title 42 processes are still underway.

25          THE COURT:  All right.  Well, I guess --

1          MS. FABIAN:  Sorry.

2          THE COURT:  The only aspect of this that I'm

3    interested in is whether or not this falls within the purview

4    of the Flores settlement agreement to the extent that all

5    minors who are detained in the legal custody of defendants

6    are impacted by this process.

7          MS. FABIAN:  Understood, Your Honor.  I think -- I

8    mean, if I understand your question, it remains our position

9    that the Title 42 processes are CDC authority -- processes

10   that are currently under CDC's authority.  Their processes

11   are ongoing.  They are -- you know, I don't think -- I think

12   we do dispute and would want the opportunity to dispute some

13   of the factual findings in the monitor's interim report, but

14   as a general matter, those processes are ongoing.  They are

15   being carried out at times by ICE and CBP under -- as ordered

16   by the CDC.

17          So that process is ongoing, and I think as to your

18   question as to when it would end, I don't have that

19   information.  That will -- that would be up to the CDC.

20          THE COURT:  All right.  Well, I'm going to set an

21   expedited briefing schedule on this practice.  I'm going to

22   ask the plaintiffs to file their motion by August 14th.

23   Defendants can respond by August 21st.  Plaintiffs can reply

24   by August 28th.  The hearing on that will be set for the same

25   date as our next status conference, which will be

1   September 4th at 11:00 o'clock a.m.

2          I want to mention that it would be very helpful in

3   the parties' briefing if they could provide the Court with

4   some underlying data as to how many people are affected in

5   this regard, class members, that is.  And if that data can be

6   distinguished between unaccompanied versus accompanied minors

7   and their respective ages.

8          All right.  If nobody else wants to say anything

9   about this issue for now, I'm going to move onto the next

10   one.

11          MR. HOLGUIN:  Your Honor, this is Carlos Holguin on

12   behalf of plaintiffs.  My understanding from the

13   meet-and-confer that we had on this hoteling issue, the

14   defendants's position is that the independent monitor is not

15   entitled to information about class -- children who are held

16   in the hotels pursuant to Title 42.  It's going to be

17   difficult for, I think, you know, the Court and the parties

18   to come up with the type of information that I think that the

19   Court wants to see if the independent monitor is -- is not

20   permitted to conduct monitoring of the hotels and defendants'

21   treatment of children in them.

22          So I would, you know, encourage the Court to make

23   clear that the independent monitor is authorized to look into

24   this and to supply the Court with such information as -- as

25   she is able to uncover that would illuminate the process in

1     the extent of the use of hotels for detain --

2              THE COURT:  As with most issues in this case, I

3     have said that already.  I will repeat it again if necessary.

4     I think I said it in my recent order when I denied the

5     defendants' -- when I denied defendants' ex parte application

6     to stay the deadline that I had imposed previously.  I

7     included in that order a statement about the fact that this

8     is within the purview of the independent monitor and the --

9     she is authorized to report to me about it, as well as to

10    receive data about it.

11             MS. FABIAN:  Your Honor, this is --

12             THE COURT:  Unless and until the briefing convinces

13    me otherwise.

14             MS. FABIAN:  Sorry, I don't want to interrupt.

15    This is Sarah Fabian.  We did read Your Honor's order to say

16    that.  I think we note that in our filing a couple days ago

17    that -- that is how we read the order.  We are cooperating

18    with Ms. Ordin.  We have -- I spoke to her today.  We are

19    working on getting some data that she had requested.  We are

20    proceeding with that understanding.

21             THE COURT:  Thank you.

22             MS. FABIAN:  I would -- I guess, I would add that

23    to the extent monitoring is not sort of a process by which

24    information is intended to be provided to plaintiffs, I

25    think, that doesn't address Mr. Holguin's concern.  We're

1    not -- we're not necessarily providing the information to

2    plaintiffs, although we can discuss that with Ms. Ordin as

3    well.

4            THE COURT:  Well, in whatever format you present it

5    to the Court, whether it's shared with the plaintiffs or

6    filed under seal and in camera, I want to see that data.

7            MS. FABIAN:  Understood, Your Honor.

8            THE COURT:  All right.  If there's nothing further

9    on this matter, I'm going to move on to the second item which

10   was raised by plaintiffs.  That is, the juvenile detention

11   facilities.  This is another issue that I don't think is part

12   of the original motion, and I think I've stated that before.

13   I did require the parties to meet and confer on it in the

14   hopes that they could informally resolve issues relating to

15   those facilities.  But if the parties cannot resolve those

16   issues through their meet-and-confers, I'm going to require

17   that plaintiffs file a duly noticed motion pursuant to the

18   local rules regarding that issue as it relates to Cowlitz and

19   NORCOR.

20           Any comments from either side in that regard?

21           MS. FABIAN:  Your Honor, this is Sarah Fabian.  I

22   think the defendants, I would just reiterate our request that

23   in the interim until the issue is resolved, and it's

24   determined that the hold placed in your last order is

25   required based on your briefing, that you would lift that

```
 1    hold regarding transfer of minors who may age out of those
 2    facilities.
 3            THE COURT:  Well, I don't think I think I need to
 4    do that right now.  As far as I'm being told, the ageing out
 5    won't occur until November and December.  If there is a duly
 6    noticed motion, I would expect that it would be heard before
 7    that.  The only reason -- the only reason why I had that
 8    language in there to begin with was because there was someone
 9    who was ageing out, I think, the week or a few days after the
10    issue was raised, and I wanted to be able to have time to
11    address the issue before any sort of irreparable harm could
12    occur to that person.
13            So right now, I don't think there's any emergency
14    that needs to be addressed in that regard.  So I don't think
15    we need to address it unless it becomes an issue.
16            MS. FABIAN:  And, Your Honor, I think I largely
17    agree with that.  I think the concern of the client is that,
18    you know, if someone did come into custody and was going to
19    age out sooner, that -- that it would necessitate an ex parte
20    and -- it's just -- if that was the purpose of the original
21    statement in the order.  It's no longer necessary, I think,
22    we could use some clarification on whether if someone came
23    into custody, we would need to come to you with ex parte or
24    if that restriction is lifted for now because it's
25    unnecessary?
```

1          THE COURT:  Well if, it becomes an issue again, you

2     should file an ex parte because like I said, the whole

3     purpose of it is to maintain the status quo until I have a

4     chance to actually rule on something.

5          MS. FABIAN:  Understood, Your Honor.

6          THE COURT:  Anything further?

7          MR. SCHEY:  Your Honor, this is Peter Schey.

8     Your Honor, good morning.

9          The only thing I would say is that I think the

10    problem with these juvenile detention facilities is somewhat

11    the same with the problem with the family detention

12    facilities.  That just appears to be an absence of any

13    procedures or protocols actually implemented in terms of the

14    settlement.

15          So we're happy, as the Court has suggested, to file

16    a motion.  That is probably what the motion will focus on in,

17    and then the Court can do with it as it sees fit.

18          THE COURT:  All right.  Then let's move on to the

19    subject of the juvenile coordinator's reports.  I've reviewed

20    those reports.  Thank you to the juvenile coordinators for

21    filing them.

22          With regard to ORR, by and large, I think it is

23    doing a good job.  So keep up the good work.  I know

24    plaintiffs have criticized the revised fingerprinting policy,

25    but I have no quarrel with it if no one has been adversely

```
 1    affected by it.  Because there is no one who has been delayed

 2    by that policy, I'm not going to address it at this time.

 3         I know that Mr. Holguin, I think, had raised some

 4    issues relating to ORR data that they would like to have

 5    provided to plaintiffs' counsel regarding positive tests and

 6    identity of individuals who have had positive tests who are

 7    class members.  I believe, if I'm not mistaken, that

 8    defendants have agreed to give that information to the

 9    independent monitor, and if that is the case, then I'm going

10    to approve that.

11         MS. FABIAN:  That's correct, Your Honor.  We'll

12    give the monitor and Dr. Wise whatever information they need

13    on that process.

14         THE COURT:  All right.  As much as they request,

15    the idea is if there are positive tests, you should

16    affirmatively give that to the monitor and Dr. Wise.

17         MS. FABIAN:  Sure.  I -- I don't think that's --

18    yes.  We can discuss with them a reporting methodology for

19    that.  That's fine.

20         THE COURT:  All right.  Anything further in that

21    regard?

22         All right.  Then let's move on to the ICE report.

23    I continued to be displeased and alarmed that class members

24    remain at Dilley and Karnes amidst a Covid-19 surge in those

25    surrounding communities.  I do keep tabs with the Texas
```

```
 1    Health and Human Services Website data that shows some fairly
 2    alarming statistics regarding Covid-19 positive cases in
 3    those locals.
 4         I am somewhat comforted by the reports that I've
 5    received from the independent monitor and Dr. Wise that ICE
 6    has stepped up its compliance with safety protocols, and that
 7    no minors have tested positive other than those who have been
 8    diagnosed at intake.  So I think to quote Judge Boasberg from
 9    the O.M.G. case, I think that ICE's efforts at preventing
10    outbreaks at the FRC seems to have yielded a moderate though
11    undeniably fragile success.
12         Having said that, though, it seems to me that
13    defendants really have done nothing to address the release of
14    those minors who were the subject of my previous deadline
15    that was for July 17th and then subsequently extended to
16    July 27th.  It seems like a month has been squandered not
17    doing too much of anything.  There does not appear to have
18    been an individualized assessment of any particular minors
19    with vulnerabilities.  I didn't get any individualized
20    statements for minors' categorization as a flight risk.  I
21    didn't get any efforts to allow consent for release to a
22    suitable custodian or sponsor.  I know plaintiffs' counsel
23    have had some internal squabbling and disputes.  I don't
24    think that's an excuse for defendants to sit on their hands.
25         Ms. Fabian, I'm dismayed that defendants have
```

1     stopped meeting and conferring on an advisal of rights

2     because plaintiffs were engaged in internal disputes that

3     seemed to be an opportunistic excuse and betrayed a lack of

4     understanding of the litigation process.  Would you like to

5     respond?

6              MS. FABIAN:  Your Honor, I think that the

7     defendants' position is that we have always participated in

8     this meet-and-confer process with the understanding that it

9     was required that we submit protocols to the Court.  I -- we

10    read your July -- I believe July 27th order to say that in

11    fact it was not ordered by the Court, but that final

12    procedures for this -- for this waiver process would not be

13    ordered by the Court.  The government does not voluntarily

14    institute a process or protocols to release children

15    separately from their parents.

16             So to the extent that is a mandatory process that

17    is ordered by the Court, and it is mandatory that the

18    government finalize and submit for approval of those

19    processes, that was the process that the government was

20    undergoing in the meet-and-confer, but --

21             THE COURT:  Well, let me clarify something in that

22    regard.  When I said that the July 27th deadline was

23    unenforceable by its own terms, I meant that I knew that

24    defendants were not going meet that deadline as I had wanted.

25    That does not mean that defendants do not have a duty to

1    comply with the Flores Settlement Agreement.

2           Ms. Fabian, I really find it difficult to believe

3    that you don't understand this by now?  This is not your

4    first rodeo.  You act like you don't understand how

5    litigation works.  Whenever in this case I have found a

6    violation of the Flores Settlement Agreement, and there have

7    been many such orders, I have indicated that I have to impose

8    a remedy for the breach.

9           So let's get on the same page once and for all,

10   because I suspect we're going to be at this for quite some

11   time.  I have to impose a remedy whenever I find a breach.

12   Sometimes the remedy is self-evident from the language of the

13   agreement itself.  Sometimes I have to devise a remedial

14   order.  In those situations where I have to issue a remedial

15   order, I can take two tracks.  I can either impose a remedy

16   of my own, or I can allow the parties to meet and confer to

17   see if they can come up with a mutually-agreeable remedy that

18   both sides have had input on.

19          For some of the violations in this case, I've

20   chosen to allow the parties to meet and confer because it's

21   my own personal belief that a mutually-agreed upon remedy is

22   usually stronger and better thought out than what I can

23   impose off the top of my head.

24          So when the parties are meeting and conferring in

25   good faith, I will not interfere with that process.  I will

1    not dictate the terms of your agreement.  Instead, I will

2    wait for you to tell me that you've reached an agreement.

3    And then if it's necessary, I'll let the class members have

4    notice of it and the chance to be heard.  I think I said that

5    in my order denying defendants' request for a stay, but I did

6    not think that was going to be misconstrued as some sort of

7    permission for defendants to not comply with my prior orders.

8           If you don't reach an agreement, then I will impose

9    a remedy.  That may be unilateral or I may give both sides a

10   chance to comment on that remedy.  In either situation, that

11   may be a remedy that neither side likes that I've chosen, or

12   maybe one side will like.  I think it behooves both sides to

13   have and an agreed upon remedy.  Over the course of the last

14   five years in different contexts, there have been several

15   times where I have asked you to meet and confer about a

16   remedy.  You may recall that you met with Judge King for

17   months about what is safe and sanitary at CBP border

18   facilities.  You didn't end up with an agreement, but then I

19   imposed a remedy.

20          There was the situation involving the detention and

21   administration of psychotropic medication at Shiloh.  There

22   was the situation of the housing and medical conditions at

23   CBP stations in the RGV Rio Grande Valley sector.  Those are

24   currently all subject to a meet-and-confer.  I've been

25   patiently waiting for some sort of meet-and-confer, perhaps

```
 1    waiting too patiently.  Then I asked to you meet and confer
 2    regarding the release of minors without unnecessary delay in
 3    failing to make and record continuous efforts to release
 4    them, especially during the pandemic.  I gave you a chance to
 5    meet and confer so that you could arrive at some sort of
 6    advisal of rights and a protocol that would allow those who
 7    wish to place their children with suitable custodians to have
 8    some avenue to do that.
 9            So if there's no agreement in these areas, then I
10    will impose a remedy, as I have always done.  So tell me,
11    Ms. Fabian, have you exhausted your efforts to meet and
12    confer in these areas or not?
13            MS. FABIAN:  I think, Your Honor, with regard to
14    the protocols, the government -- there has been perhaps
15    exhaustion because the government does not -- does not find
16    itself able to agree to protocols would result in a child
17    being released separately from their parents.  I think that
18    is a fundamental piece of what the plaintiffs would require
19    as part of those protocols.
20            So based on that, then the government would prefer
21    that Your Honor impose a remedy.
22            THE COURT:  All right.  I think that position is
23    rather disingenuous, though, considering the only reason why
24    we're in this position of having to have these protocols is
25    because the government has chosen, for whatever reason it
```

```
 1    has, to implement a policy that has given rise to the need to

 2    give parents that option.  By that I mean --

 3              MS. FABIAN:  I understand, Your Honor.

 4              THE COURT:  -- to exercise your discretion not to

 5    release them together.  So I'm not saying that that is

 6    something that is within my jurisdiction to effect, because

 7    it is not, but it is disingenuous for you to say you don't

 8    want to participate in protocols that will be implemented

 9    when you're the reason why we have to have the protocols.

10              MS. FABIAN:  Your Honor, I do understand that

11    concern.  I think that is the agency's position at this time.

12              THE COURT:  All right.  Let me address a question

13    to Mr. Schey then.  You submitted a declaration where you set

14    forth the components of a protocol that up to a certain point

15    had received some input from defendants' counsel.

16              Was that protocol shared with the legal services

17    providers?

18              MR. SCHEY:  Yes, Your Honor, it was.  When --

19              THE COURT:  I'm sorry.

20              MR. SCHEY:  Yeah.  It was shared with both the

21    amici, the three groups, as well as with several other

22    organizations -- several other stakeholders.

23              THE COURT:  All right.  As far as you know, has

24    there been any input received from them?

25              MR. SCHEY:  There's been no positive and negative.
```

1    The amici -- it's hard for me to totally understand the

2    amici's position, particularly in light of the brief they

3    filed yesterday.  I don't want to speak for them, but they

4    seem to be saying -- in the brief, they filed yesterday, they

5    also complained that ICE doesn't have protocols, that ICE

6    doesn't have notice of rights, but they seem to think that

7    ICE should unilaterally develop that, and that then

8    plaintiffs should attack it if they disagree with it.  That's

9    what they seem to believe.  They can speak for themselves.

10   Others, I think, and plaintiffs believe that's -- I

11   apologize.

12          I think plaintiff continued to believe that in

13   order to implement the terms of the settlement, you have to

14   have an advisal to the parents explaining what their rights

15   are, and number two, you have to have a procedure if a parent

16   says I think it's in my child's best interest to be released

17   to X -- to relative X.  They have to have procedures in place

18   to implement that.

19          We did reach about -- I think close to 95 percent

20   agreement until the government decided that it -- until the

21   government came up with this reasoning that it does not want

22   to participate in any process that could potentially separate

23   a child from the child's parent.

24          Again, it's our position that that is not the

25   Court's decision.  It's not class counsel's decision.  It's

1    definitely not ICE's decision.  We think under the plain

2    terms of the settlement, that's the parent's decision.  Of

3    course, assuming the child is not properly deemed to be a

4    flight risk or a danger, and also, of course, assuming that

5    when the relatives are vetted that they're determined to be

6    appropriate custodians.  When those three conditions are met,

7    all of these are part of the settlement in -- we have to have

8    a procedure in place to honor a parent's decision that they

9    believe it's in the best interest of the child to be

10   released.  To not have a procedure simply because you don't

11   want to separate a child from a mother even when that mother

12   wants the child released, that seems to us to be a pretty

13   straightforward violation of the settlement.

14           So that is our position, Your Honor.

15           THE COURT:  All right.  Mr. Barenfeld, perhaps, you

16   can clarify for me what amici's position is because I,

17   frankly, am confused by it as well.

18           MR. BARENFELD:  Your Honor, I am going to defer to

19   Bridget Cambria who is a submitted pro hac vice.  She's

20   from -- she's from Aldea.

21           MS. CAMBRIA:  This is Bridget Cambria, Your Honor.

22   I'm here on the line.  I'll be happy to address some of these

23   concerns from the perspective of the amici who are the legal

24   service providers in each of three FRCs.

25           Just to -- just by way of a little background, at

1    this moment there are 121 positive Covid-19 cases in the

2    Texas FRC that includes parents, children, and employees of

3    the facility.  So it is a really perilous time for our

4    clients.

5            With regard to the discussion of the protocols,

6    because we represent whole families, we have at times

7    inquired about this very question with our families.  At this

8    time we have no families who have indicated to us a desire to

9    separate from their child.  That's for a couple of reasons.

10   The most pressing reason, I believe, is Covid-19 and the

11   belief that their child will be released during a pandemic to

12   unsafe conditions without them.  Then the alternative

13   availability to them is detention within a facility that is

14   currently unsafe and unsanitary and also dangerous because of

15   Covid-19.

16           Our other concerns surround the fact that the --

17   any protocol that would be placed on families regarding this

18   specific ask, this specific concern would be done while in

19   detention and while ICE is the custodian.  So we have a lot

20   of questions as to whether any kind of decision that could be

21   made could be knowing or voluntary.

22           We have --

23           THE COURT:  Is your preference then to do nothing?

24           MS. CAMBRIA:  No, Your Honor.  I think we're in a

25   difficult position.  That's why we have filed the way that we

1    have as amici, because we are in a bind just like -- just

2    like plaintiffs.  That's because the government has failed to

3    provide individualized determination for our clients.  Our

4    clients by and large do not know the reasons why ICE

5    continues to detain them.  They're not provided written

6    explanations as to the reasons why they're detained.

7         For example, in the Brooks facility where I

8    represent with my organization a hundred percent of the

9    clients, they have never received a piece of paper that

10   explains why they're detained.  That is even though they have

11   affirmatively in writing requested parole from ICE.  There

12   has never been a determination that has been provided to our

13   clients to explain why they wouldn't in the first instance be

14   released together as a family.  Our concern is that if the

15   Court adopts a protocol the way that it's has been described,

16   that ICE will rely on a parent's choice to remain with their

17   child as the sole reason that they will remain in detention

18   indefinitely.  That's based on years and years of enforcement

19   issues.

20        So we have very little faith that ICE will continue

21   to independently analyze cases because we're not seeing it.

22   Our fears are that the result will be ICE will ask parents to

23   separate.  When they say no, that will be the justification

24   for their continued detention in facilities that are

25   currently not compliant with the FSA.

1       So I do understand Judge Boasberg's decision

2   and I understand that strides have been made in the

3   facilities.  There's still a lot of concerns that our clients

4   have every day that they describe to us.  The fact that

5   children can't wear masks.  Children can't socially distance.

6   I do appreciate that testing is being done on intake.

7   There's no saturation testing being done within the facility.

8   It's been done one time.  Although we're seeing positive come

9   in on intake, that's because no testing is being done for

10  remainder of the population.

11      Given the outbreak in Texas, I find it very, very

12  negligent to not continuously be looking out for the families

13  who remain in the facilities with such a large outbreak going

14  on.  We have 121 positives, we should be continuously looking

15  to make sure that is not reaching the general population.

16  Making sure all of these kids are safe.  It's our opinion

17  that Covid-19 endangers every single person in facilities.

18  That includes children, parents, and the detention staff.

19      We're in a position that is really difficult.  We

20  tried our best to provide the Court with factual information

21  so that you can best figure out a way out of this difficult

22  situation.  Honestly, it's because we're not seeing the --

23  the first choice what is the individualized determination

24  that they -- that ICE is doing to keep a child in detention

25  and not to release them together as a family at first

 1    instance?  Why are we getting to a point where they have to

 2    choose separation?  Then don't know why.  They're not being

 3    told and not being provided in writing.

 4         THE COURT:  Have the adults taken advantage of

 5    opportunity to have a bond hearing?

 6         MS. CAMBRIA:  In the case that the parents are in

 7    expedited removal, Your Honor, or they have a final order of

 8    removal, they don't have the right to have a bond hearing.

 9    It's for that reason that the case is filed in O.M.G. before

10    Judge Boasberg via habeas.  That process takes a very long

11    time.  We have requested from Judge Boasberg individualized

12    determinations for the parents, and that's playing out.  I

13    don't know when we're going to get a result for that.

14         THE COURT:  All right.  Well, I understand the

15    frustration.  I'm frustrated too, but as you probably know,

16    there are certain constraints on my ability to do anything

17    about the release of the adults.  Given that reality, is it

18    your position that all minors should just simply stay with

19    their parents, or that there should be some sort of advisals

20    so that the parent can make that decision themselves?

21         MS. CAMBRIA:  I believe that every child that is

22    detained in an FRC should be advised of their rights under

23    the Flores Settlement, and I actually believe that they

24    should be advised of every single right, not necessarily just

25    a right to be released to a sponsor, for example.  I believe

1    they should be afforded information about all of their rights

2    under the settlement, because the settlement provides very

3    important rights that each parent should know about their

4    child while they are detained.  The right to certain medical

5    services, the right to education and exercise.  These are all

6    things that families don't understand that they have a right

7    to request or seek.

8         Your Honor, I do understand that you do not have

9    jurisdiction over the parents themselves, and we point often

10   in our amici to Section 1236.3 about ICE's discretion to

11   consider release of the family together.  It might be a

12   discretionary case-by-case determination, but they are

13   mandated under that regulation.  They're mandated.  It uses

14   decisive language.  It says, "shall."  They shall consider

15   the release of a child with their detained parent on a

16   case-by-case basis when no suitable custodian exists outside.

17        In the instance of Covid, Your Honor, I would

18   implore that the suitable custodian is the parent that

19   they're with.

20        THE COURT:  You may recall that I previously

21   ordered them to release parents in accordance with existing

22   laws and regulations.  I was reversed in that regard.  So I

23   can't go there anymore.

24        MS. CAMBRIA:  I do understand that, Your Honor.  I

25   guess, what I -- what I'm trying to say is that they should

be explaining to you why they're not choosing to follow that

mandate.  There has to be a reason why they're deciding not

to release the family together and are forcing the court to

approach the subject of separating a parent from a child.

There have to be --

THE COURT:  Well, I have and I continue to ask them

as to their reasons for detaining the child.  I don't know

that I have any authority to ask them to justify why they're

detaining the parents.  I -- as I indicated -- as I indicated

in my previous order, it is a double bind.  That is, that if

they won't release the parents, they can't release the

children either because Ms. L prohibits them from doing so

without the consent of the parent.

MS. CAMBRIA:  I would appreciate -- I think the

Court would appreciate if they actually told you those

reasons.  I think we're all here frustrated because no

reasons have been provided.

THE COURT:  Well, I imagine that if they gave a

reason, it won't be very satisfying either.  Be that as it

may --

MS. CAMBRIA:  Probably not to me, but at least

there would be something.

THE COURT:  Ms. Fabian, let me ask you something.

Paragraph 12 of the Flores Settlement Agreement says that

whenever the INS or defendants in this case takes a minor

1    into custody, it shall expeditiously process the minor and

2    shall provide the minor with a notice of rights, including

3    the right to a bond or determination hearing if applicable.

4    Why doesn't that encompass a notice of rights such as these

5    very important rights right now as to whether the parents

6    should be able to release a child to a sibling or another

7    close family member who might be a suitable sponsor?

8             MS. FABIAN:  Your Honor, the question of notices

9    has been litigated a couple of times in this case.  I think

10   we've -- we've responded.  I don't have it at my fingertips.

11   We have submitted evidence of the various notices that are

12   provided that, you know, we've said -- we submitted were

13   consistent with what Flores required as far as notices of

14   rights.  I believe in the 2017 order.

15            THE COURT:  Yes, I recall that.  I know.  I wrote

16   that order.  So I remember it was paragraph 24D which I said

17   required defendants to provide each minor with the INS form

18   I770 an explanation of the right of judicial review as set

19   forth in Exhibit 6 and a list of free legal services

20   available in the district.  That's a separate provision.

21            I'm asking now that you look at paragraph 12A.  It

22   says a notice of rights.  It doesn't say as defined in

23   paragraph 24D.  My previous order dealt with paragraph 24D.

24   I'm asking now about paragraph 12A.

25            MS. FABIAN:  This is the first time that it's been

1    raised to the government that there is an assertion that

2    there is additional notice of rights that should be provided.

3    You know, if that's an issue that plaintiffs want to meet and

4    confer on about additional notices of rights in advance of

5    potentially filing any enforcement motion, we'd be happy to

6    meet and confer on that issue.

7            THE COURT:  Well, I don't think anyone has told me

8    about paragraph 12A.  I just read it myself.  It seems to me

9    it's broad enough to encompass a notice of rights, as it

10   says.  These seem to be very important rights.  So the reason

11   why I suggested to the parties that they meet and confer

12   regarding a know-your-rights protocol is because it seems to

13   be something that is contemplated in the agreement itself.

14           MS. FABIAN:  Your Honor, I think that maybe --

15   just -- that there remains somewhat of a concern on our part

16   about providing a notice of additional rights that we don't

17   have a protocol for implementing that that brings us back to

18   the concerns we've been discussing.  Again, Ms. Cambria is

19   not counsel for the plaintiffs.  So amici file things at the

20   last minute the day before the hearing.  We don't have the

21   opportunity to review them or discuss them or, you know,

22   engage in them like we do with Mr. Schey on a regular basis.

23           So, you know, if this is something that plaintiffs

24   are requesting or that plaintiffs want to -- to embrace

25   requests that amici are making, we're happy to consider it

1    and meet and confer on it.

2            THE COURT:  All right.  I am going to give you a

3    chance to respond.  You are right.  I will say to the amici

4    counsel that it is not very helpful to have something filed

5    at the last minute the day before the hearing.  It doesn't

6    give the Court or the parties a chance to review what is

7    submitted.  The information you provide is important.  So I

8    think it is good that you are providing the information, but

9    it needs to be provided on a more timely basis so that it can

10   actually be reviewed and digested before the hearing and,

11   perhaps, responded to, if necessary, in writing.

12           So when you file something a day or two before the

13   hearing, that does not give adequate opportunity for the

14   parties to respond.  So I am going to give defendants a

15   chance to file a written response to the amicus brief by

16   August 14th.

17           MR. BARENFELD:  I understand, Your Honor.

18           MS. CAMBRIA:  That was me, Your Honor.  I was also

19   apologizing for the late filing.

20           THE COURT:  The best apology is not to do it again.

21           MS. CAMBRIA:  Understood.

22           THE COURT:  So these are some of the issues that I

23   had on my agenda.  Is there anything else that any of the

24   parties wish to raise before I give you a summation of all of

25   the various deadlines I'm going to impose?

1          MR. SCHEY:  Your Honor, this is Peter Schey for the

2     plaintiffs.

3          I just wonder if you could possibly give us and

4     maybe you're going to do this anyway, but I was just

5     wondering given what amici received on the phone today, that

6     they would actually welcome an advisal, given that paragraphs

7     14, 15, and 16 and 18 combined really contemplates steps that

8     the government would have to take if a -- if a minor wishes

9     to exercise their rights if they are unaccompanied or a

10    parent wishes to exercise their right to release their minor

11    child.  Then assuming you need some steps to follow, cannot

12    just be left wide open.  And so I'm just kind of wondering if

13    the Court can -- it sounded to me at the end there, as if

14    Ms. Fabian was saying, well, if the Court really orders us

15    to, maybe we will resume the meet-and-confer process.

16         It was just so close to completion that it seems

17    like a substantial waste of time and effort that that process

18    was not somehow done or completed.  We're literally down to

19    just three issues over which we there were some -- basically

20    some disagreement.  I'm wondering if the Court can figure out

21    what is the best way to try to get to the finish line on

22    this -- on this issue.

23         THE COURT:  Well, unless Ms. Fabian tells me that

24    her efforts to meet and confer on this issue are done and

25    kaput, which she seemed to have said earlier that it is

```
1    exhausted, I'm willing to give you a couple of weeks to see

2    if you can sort it out.

3              MS. FABIAN:  Your Honor --

4              MR. SCHEY:  Thanks, Your Honor.

5              MS. FABIAN:  -- this is Sarah Fabian.

6              I don't want to waste Mr. Schey's time or the

7    Court's time.  I think -- I apologize if what I said before

8    confused the issue.  The government is not going to move

9    forward voluntarily and agree to joint submit protocols that

10   include the separation of the child from the parent.  You

11   know, I understand there's some question of whether there's a

12   way to provide notice of rights without including that.  If

13   it's worth having those discussions, if what Mr. Schey is

14   saying that we would resume these talks from the baseline of

15   sort of where we had arrived on those discussions, I think

16   that would be a waste of time.  I think the government's

17   position is that the Court should impose that remedy at this

18   time.

19             THE COURT:  Let me ask you something, Mr. Schey.

20   If the government is not willing to voluntarily agree to any

21   notice of rights, what stops you from just giving the notice

22   of rights to the parents through the legal services providers

23   to have it available in writing and simply disseminated?

24             MR. SCHEY:  Your Honor, I -- I -- I think that

25   there are a couple of concerns with that approach.  One
```

```
 1    concern is that not all families are represented by the three
 2    amici parties.  They may be some.  Yes, we can determine.
 3    That's not the case at the other two detention facilities.
 4          Secondly, right now the population in these
 5    facilities is very low because of the administration's
 6    policies of turning people away at the border, but those
 7    could easily change in a month or two, and we could be back
 8    in a situation where there are a larger number of detained
 9    families and a larger number of not represented by the three
10    amici groups.
11          Third, I'm a little reluctant to go down that road
12    given how the amici have vacillated on this issue.  It's not
13    clear to us that parents would be given an advisal in every
14    case.
15          THE COURT:  Well, I guess what I don't understand
16    is I've never in my years of practice, which is unfortunately
17    longer than I'd like to admit at this point, I've never heard
18    of any attorney who was unwilling to let their clients know
19    what the law is and what their options are, even if they
20    don't like them?
21          MR. SCHEY:  Well, that may be true, but it seems to
22    us when we negotiated this settlement in 1996 and was
23    approved by the Court in 1997, we did not contemplate an
24    undetermined number of counsel for detained minors advising
25    those detained minors with parents of the law.  For one
```

1   thing, when you have families being detained, there's a much

2   larger number who are not represented by counsel.

3        The other thing we have is we could have the most

4   enthusiastic individual representation of detained minors

5   enthusiastically telling their clients about the right to

6   release.  If there are absolutely no protocols or procedures

7   to implement that, it just becomes like the Wild West.  You

8   have no --

9        THE COURT:  Well, you file another motion to

10  enforce.

11       MR. SCHEY:  Well, that -- that seems like a very

12  long and arduous way to achieve that when we know --

13       THE COURT:  Every case has been long and arduous,

14  Mr. Schey, as you know.

15       MR. SCHEY:  I know, Your Honor.  This is not a

16  situation where we need factual development to determine does

17  ICE have in place procedures to release children.  They are

18  required under the terms of the settlement to share with us

19  instructions that they issued to their agents to implement

20  the settlement.  They -- they have not provided us with

21  copies of any instructions that they have issued to the ICE

22  agents to implement the settlement.

23       We have also repeatedly argued -- we have also

24  pointed out since March of 2020, that there are no procedures

25  in place to actually implement the release provisions in

```
1    paragraph 14, 15, 18.  There are no procedures in place.  Not
2    once has ICE come forward and said, no, actually there are
3    procedures in place.  Here's a copy of past procedures.  We
4    do have procedures in place.  There are so many -- as the
5    Court has seen with regards to the -- as the Court has seen
6    with the ORR side of this, having procedures in place that
7    are reasonable -- they don't have to be perfect, but having
8    procedures in place that are reasonable that don't unduly
9    interfere with the right to release or place --
10            THE COURT:  Mr. Schey, let me just interrupt you
11   for a second.
12            MR. SCHEY:  Yes, Your Honor.
13            THE COURT:  I do not have any problem with agreeing
14   with you that procedures are good, and that it's best when
15   everybody is on the same page and know what the protocols
16   are.  You have had enough appeals in this case to know that
17   the position of the defendants is going to be it's not in the
18   agreement.  If it's not in the agreement, am I able to impose
19   these procedures?
20            MR. SCHEY:  We think you absolutely definitely
21   unquestionably would have the right to impose procedures,
22   assuming that those procedures are just a reasonable
23   interpretation of what would be required in order to
24   implement the steps in the settlement.
25            The notice, as you pointed out under paragraph 12,
```

1  is required anyway.  The procedures are clearly required if

2  one is to implement the terms of the settlement.  So just as

3  we successfully argued in the Court of Appeals and the Court

4  of Appeals agreed with us in, I think, in August of 2019 when

5  it finally issued its decision on the 2017 order that you --

6  that you entered.  In that decision, the Ninth Circuit made

7  clear that the Court does have the power to issue orders that

8  involve a reasonable interpretation of the settlement without

9  modifying the terms of the settlement.

10         So if the Court has the ability to say safe and

11  sanitary probably includes things like toothbrushes, et

12  cetera, you know, the settlement doesn't mention that, then

13  it seems to us that the Court clearly has the power --

14         THE COURT:  Let me just interrupt you again.  I

15  perfectly understand the need to interpret language in a

16  contract safe and sanitary to me is capable and susceptible

17  to being interpreted to include the things that I said it

18  included.  A notice of rights, I think, is perfectly capable

19  of being interpreted to mean just that, a notice of rights

20  that exist.

21         New procedures seems to me to be a different

22  animal.

23         MR. SCHEY:  Well, Your Honor, if -- if -- if

24  procedures were in place that were unreasonable and that

25  interfered with the implementation of the settlement, which

1    has happened two or three times with regards to the ORR

2    procedures, the Court has stepped in and said these are the

3    procedures that I believe are a reasonable interpretation of

4    the settlement, or need to be adopted in order to reasonably

5    implement the terms of the settlement.  It seems to us that

6    this is the same.  That if you have a settlement, and that

7    settlement says that if a parent wants a child released, then

8    the government is obligated, assuming the child is not a

9    flight risk or a danger and assuming the relatives are --

10   provide a safe home, the government has an obligation --

11   under paragraph 15, clearly has the obligation to vet the

12   relatives, because there's an affidavit they have to sign.

13   They have to sign an affidavit of support, et cetera.

14        It seems to us that under those circumstances, if

15   the government fails to adopt procedures to comply with those

16   terms, then the Court has the power to either set reasonable

17   procedures -- and perhaps, I don't know how the Court wants

18   to proceed, but perhaps, it should proceed along the same

19   lines mentioned earlier around the hoteling issue.  Maybe set

20   a schedule, just let plaintiffs file a -- if it has to be a

21   motion focusing on this on an expedited basis, let defendants

22   file an opposition.  Let plaintiffs file their reply.  Then

23   the Court can determine how it believes the matter should be

24   resolved.

25        THE COURT:  Yes, I think that's going to be the

1    course of conduct.  And, obviously, we have been around this

2    merry-go-round long enough to know that I hue very closely to

3    the language of the settlement agreement.  If there is a

4    proposed remedy that you're going to submit, it should cite

5    to every paragraph of that agreement that you think supports

6    that remedy.

7              MR. SCHEY:  That is understood, Your Honor.

8              THE COURT:  All right.  Is there anything else?

9    Anything new that we haven't discussed?

10             MS. FABIAN:  Your Honor, this is Sarah Fabian.  I

11   had a couple of matters.  One is with regard to the

12   declaration that was included with the joint status report,

13   but was late filed, I wanted to reiterate defendants'

14   objection to being given a declaration, you know, minutes

15   before we're filing a joint report.  Just ask the Court to --

16   I think this relates to the participation of amici as well.

17   If there is an order requiring meet-and-confer and requiring

18   us to discuss information, we need more than a couple of

19   hours to be able to address information that is going to be

20   filed.  Even when it's not considered by the Court, the

21   information is made public and it is reported on, it harms

22   defendants -- it harms defendants when the information is

23   filed late even if it's not considered as part of the

24   litigation.

25             So I think the government is -- is willing and has

1    made efforts to meet and confer if the statements or issues

2    are brought in time.  This Court gave a very reasonable time

3    frame.  We met and conferred on a lot of issues in a very

4    short time period.  We appreciated the Court's order

5    including that provision.  Would just ask that the Court

6    reiterate the importance of that.  I think when it does work,

7    it is successful.

8            The other matter I wanted to note is more of a

9    housekeeping issue.  Ms. Miranda-Maese is on the phone.  She

10   will be out of -- for medical reasons, the week of August 17.

11   So I ask that the Court consider her schedule.  She can speak

12   on that more if you have questions, as far as if you're

13   ordering additional reporting.

14           THE COURT:  I previously indicated there should be

15   interim reports by the 15th of every month.  Is that not

16   going to work for Ms. Maese?

17           MS. MIRANDA-MAESE:  That may not work.  I'm going

18   to be out for a couple of days due to a medical procedure.

19           THE COURT:  What would be a better date for you

20   then?

21           MS. MIRANDA-MAESE:  The following week, Your Honor,

22   would be fine.  I would be able to produce a report the week

23   of the 24th.

24           THE COURT:  Why don't you file it on August 24th

25   then?

1          MS. MIRANDA-MAESE:  Okay.  Very well.  Thank you.

2          THE COURT:  Since you are going to do that, I'll

3    extend the time for Ms. Dougherty to do that for ICE as well.

4          I'm going to summarize some of the deadlines, and I

5    will reiterate what I said before, which is after every

6    status conference, I set forth deadlines for briefing, for

7    objections, for responses, and so please consider those

8    deadlines.  It is not helpful to file last-minute documents

9    right before the hearing, because if you want me to read

10   them, which I assume is the reason why you're filing them,

11   then you should file them earlier because I have 900 cases on

12   my docket.  I'm not just sitting here waiting for you to file

13   things in this case.  So if you want me to read and digest

14   it, you should follow the deadlines that I imposed in my --

15   in my minute order following the status conferences.

16          MR. BARENFELD:  Your Honor, this is Gabe Barenfeld.

17   May I just confirm that for future amici submissions,

18   Ms. Cambria won't need to submit renewed pro hac vice

19   applications?

20          THE COURT:  If she's been admitted pro hac vice and

21   paid the fee, that's a one-time fee.  She does not have to

22   apply again.

23          MR. BARENFELD:  Thank you, Your Honor.

24          THE COURT:  I'm going to have the independent

25   monitor and Dr. Wise continue enhanced monitoring of the

FRCs.  I will ask that if they have any report or

recommendations to make, that they file it by August 24th.

Any response or objections can be filed by August 31st.

I think I already previously mentioned that

defendants will have a chance to respond to the amicus brief

by August 14th.  The next interim report of the juvenile

coordinators will be due on August 24th.  Any objections due

by August 31st.

By objections, I don't necessarily mean objections

to your report, but if you have any responses to it or

factual disputes, that should be filed by August 31st.  That

applies to the amici too, if they wish to file something.

I'm going to ask that class counsel submit its

proposed remedy for the failure to release minors without

unnecessary delay, and failing to make and record continuous

efforts to release class members.  The proposed remedy motion

should be filed on the same schedule as the expedited

briefing schedule for hoteling.

I will be issuing a written order memorializing

this.  So you don't have to try to keep up with me right now.

I'm going to ask the parties to meet and confer on the issues

that I previously told you to meet and confer on which have

not been exhausted and file a joint status report by

August 21st.

Someone who is not talking should probably put

1    yourself on mute because I can hear your background noise.

2           I already told you the need to file a notice motion

3    if you want to raise an issue regarding the juvenile

4    detention centers.  And the next status conference will be on

5    September 4th, 2020 at 11:00 o'clock a.m.  It will be by

6    telephone conference or video conference depending on

7    availability of the video.

8           Anything further?

9           MS. FABIAN:  Nothing from the defendants.

10          THE COURT:  All right.  We are adjourned.

11          (Proceedings concluded at 12:15 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                          CERTIFICATE

 2    I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

 3    TRANSCRIPT OF THE STENOGRAPHICALLY RECORDED PROCEEDINGS IN

 4    THE ABOVE MATTER.

 5    FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE

 6    REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE

 7    REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

 8

 9    /s/ Miriam V. Baird          08/10/2020

10    MIRIAM V. BAIRD                       DATE
      OFFICIAL REPORTER
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

## /

**/s** [1] - 41:9

## 0

**08/10/2020** [1] - 41:9

## 1

**1-053** [1] - 1:24
**11893** [1] - 1:23
**11:00** [3] - 3:1, 6:1, 40:5
**12** [2] - 25:24, 33:25
**121** [2] - 20:1, 22:14
**1236.3** [1] - 24:10
**12:15** [1] - 40:11
**12A** [3] - 26:21, 26:24, 27:8
**14** [2] - 29:7, 33:1
**14th** [3] - 5:22, 28:16, 39:6
**15** [3] - 29:7, 33:1, 35:11
**15th** [1] - 37:15
**16** [1] - 29:7
**17** [1] - 37:10
**17th** [1] - 12:15
**18** [2] - 29:7, 33:1
**1996** [1] - 31:22
**1997** [1] - 31:23

## 2

**20044** [1] - 2:13
**2017** [2] - 26:14, 34:5
**2019** [1] - 34:4
**2020** [4] - 1:18, 3:1, 32:24, 40:5
**21st** [2] - 5:23, 39:24
**24D** [3] - 26:16, 26:23
**24th** [4] - 37:23, 37:24, 39:2, 39:7
**256** [1] - 2:5
**27th** [3] - 12:16, 13:10, 13:22
**28th** [1] - 5:24

## 3

**31st** [3] - 39:3, 39:8, 39:11

## 4

**411** [1] - 1:24
**42** [6] - 4:10, 4:18, 4:23, 4:24, 5:9, 6:16
**4th** [2] - 6:1, 40:5

## 6

**6** [1] - 26:19

## 7

**7** [2] - 1:18, 3:1

## 8

**868** [1] - 2:12

## 9

**900** [1] - 38:11
**90057** [1] - 2:6
**92701** [1] - 1:24
**95** [1] - 18:19

## A

**a.m** [3] - 6:1, 40:5, 40:11
**A.M** [1] - 3:1
**ability** [2] - 23:16, 34:10
**able** [7] - 6:25, 9:10, 16:16, 26:6, 33:18, 36:19, 37:22
**ABOVE** [1] - 41:4
**absence** [1] - 10:12
**absolutely** [2] - 32:6, 33:20
**accompanied** [1] - 6:6
**accordance** [1] - 24:21
**achieve** [1] - 32:12
**act** [1] - 14:4
**add** [1] - 7:22
**additional** [4] - 27:2, 27:4, 27:16, 37:13
**address** [8] - 7:25, 9:11, 9:15, 11:2, 12:13, 17:12, 19:22, 36:19
**addressed** [2] - 3:24, 9:14
**adequate** [1] - 28:13
**adjourned** [1] - 40:10
**administration** [1] - 15:21
**administration's** [1] - 31:5
**admit** [1] - 31:17
**admitted** [1] - 38:20
**adopt** [1] - 35:15
**adopted** [1] - 35:4
**adopts** [1] - 21:15
**adults** [2] - 23:4, 23:17
**advance** [1] - 27:4
**advantage** [1] - 23:4
**adversely** [1] - 10:25
**advisal** [5] - 13:1, 16:6, 18:14, 29:6, 31:13
**advisals** [1] - 23:19
**advised** [2] - 23:22, 23:24
**advising** [1] - 31:24
**affected** [2] - 6:4, 11:1
**affidavit** [2] - 35:12, 35:13
**affirmatively** [2] - 11:16, 21:11
**afforded** [1] - 24:1
**age** [2] - 9:1, 9:19
**ageing** [2] - 9:4, 9:9
**agency's** [1] - 17:11
**agenda** [1] - 28:23
**agents** [2] - 32:19, 32:22
**ages** [1] - 6:7
**ago** [1] - 7:16

**agree** [6] - 4:4, 4:14, 9:17, 16:16, 30:9, 30:20
**agreeable** [1] - 14:17
**agreed** [4] - 11:8, 14:21, 15:13, 34:4
**agreeing** [1] - 33:13
**agreement** [13] - 5:4, 14:13, 15:1, 15:2, 15:8, 15:18, 16:9, 18:20, 27:13, 33:18, 36:3, 36:5
**Agreement** [3] - 14:1, 14:6, 25:24
**al** [2] - 3:4
**AL** [2] - 1:10, 2:10
**alarmed** [1] - 11:23
**alarming** [1] - 12:2
**Aldea** [1] - 19:20
**allow** [4] - 12:21, 14:16, 14:20, 16:6
**ALSO** [1] - 2:15
**alternative** [1] - 20:12
**amici** [16] - 3:6, 17:21, 18:1, 19:23, 21:1, 24:10, 27:19, 27:25, 28:3, 29:5, 31:2, 31:10, 31:12, 36:16, 38:17, 39:12
**amici's** [2] - 18:2, 19:16
**amicus** [2] - 28:15, 39:5
**amidst** [1] - 11:24
**ANA** [1] - 1:24
**analyze** [1] - 21:21
**AND** [2] - 2:4, 41:2
**AND/OR** [1] - 41:6
**Andrea** [1] - 3:7
**ANDREA** [1] - 2:16
**ANGELES** [2] - 2:6, 3:1
**animal** [1] - 34:22
**ANY** [1] - 41:5
**anyway** [2] - 29:4, 34:1
**apologize** [2] - 18:11, 30:7
**apologizing** [1] - 28:19
**apology** [1] - 28:20
**appeals** [1] - 33:16
**Appeals** [2] - 34:3, 34:4
**appear** [1] - 12:17
**applicable** [1] - 26:3
**application** [1] - 7:5
**applications** [1] - 38:19
**applies** [1] - 39:12
**apply** [1] - 38:22
**appreciate** [3] - 22:6, 25:14, 25:15
**appreciated** [1] - 37:4
**approach** [2] - 25:4, 30:25
**appropriate** [1] - 19:6
**approval** [1] - 13:18
**approve** [1] - 11:10
**approved** [1] - 31:23
**arduous** [2] - 32:12, 32:13
**ARE** [1] - 41:6
**areas** [2] - 16:9, 16:12
**argued** [2] - 32:23, 34:3
**arise** [1] - 3:17
**arrive** [1] - 16:5
**arrived** [1] - 30:15
**aspect** [1] - 5:2

**assertion** [1] - 27:1
**assessment** [1] - 12:18
**assume** [1] - 38:10
**assuming** [6] - 19:3, 19:4, 29:11, 33:22, 35:8, 35:9
**attack** [1] - 18:8
**attorney** [1] - 31:18
**attorneys** [1] - 4:20
**AUGUST** [2] - 1:18, 3:1
**August** [14] - 5:22, 5:23, 5:24, 28:16, 34:4, 37:10, 37:24, 39:2, 39:3, 39:6, 39:7, 39:8, 39:11, 39:24
**AURORA** [1] - 2:20
**Aurora** [1] - 3:9
**authorities** [1] - 4:12
**authority** [3] - 5:9, 5:10, 25:8
**authorized** [2] - 6:23, 7:9
**availability** [2] - 20:13, 40:7
**available** [2] - 26:20, 30:23
**avenue** [1] - 16:8

## B

**background** [2] - 19:25, 40:1
**BAIRD** [2] - 1:23, 41:10
**Baird** [1] - 41:9
**Barenfeld** [3] - 3:6, 19:15, 38:16
**BARENFELD** [5] - 2:18, 19:18, 28:17, 38:16, 38:23
**BARR** [2] - 1:10, 2:10
**Barr** [1] - 3:4
**based** [3] - 8:25, 16:20, 21:18
**baseline** [1] - 30:14
**basis** [4] - 24:16, 27:22, 28:9, 35:21
**becomes** [3] - 9:15, 10:1, 32:7
**begin** [1] - 9:8
**BEHALF** [2] - 2:3, 2:9
**behalf** [1] - 6:12
**behooves** [1] - 15:12
**belief** [2] - 14:21, 20:11
**believes** [1] - 35:23
**BEN** [1] - 2:12
**best** [8] - 4:18, 18:16, 19:9, 22:20, 22:21, 28:20, 29:21, 33:14
**betrayed** [1] - 13:3
**better** [2] - 14:22, 37:19
**between** [1] - 6:6
**bind** [2] - 21:1, 25:10
**Boasberg** [3] - 12:8, 23:10, 23:11
**Boasberg's** [1] - 22:1
**bond** [3] - 23:5, 23:8, 26:3
**border** [2] - 15:17, 31:6
**BOULEVARD** [1] - 2:5
**BOX** [1] - 2:12
**breach** [2] - 14:8, 14:11
**Bridget** [3] - 3:6, 19:19, 19:21
**BRIDGET** [1] - 2:18
**brief** [4] - 18:2, 18:4, 28:15, 39:5
**briefing** [7] - 3:22, 5:21, 6:3, 7:12, 8:25,

38:6, 39:18
**brings** [1] - 27:17
**broad** [1] - 27:9
**Brooks** [1] - 21:7
**brought** [1] - 37:2

## C

**CA** [1] - 2:6
**CALIFORNIA** [3] - 1:2, 1:24, 3:1
**CAMBRIA** [10] - 2:18, 19:21, 20:24, 23:6, 23:21, 24:24, 25:14, 25:21, 28:18, 28:21
**Cambria** [5] - 3:7, 19:19, 19:21, 27:18, 38:18
**camera** [1] - 8:6
**cannot** [2] - 8:15, 29:11
**capable** [2] - 34:16, 34:18
**CARLOS** [1] - 2:17
**Carlos** [2] - 3:5, 6:11
**carried** [1] - 5:15
**case** [19] - 4:6, 7:2, 11:9, 12:9, 14:5, 14:19, 23:6, 23:9, 24:12, 24:16, 25:25, 26:9, 31:3, 31:14, 32:13, 33:16, 38:13
**case-by-case** [2] - 24:12, 24:16
**cases** [4] - 12:2, 20:1, 21:21, 38:11
**categorization** [1] - 12:20
**CBP** [3] - 5:15, 15:17, 15:23
**CCRA** [1] - 1:23
**CDC** [3] - 5:9, 5:16, 5:19
**CDC's** [1] - 5:10
**CENTER** [1] - 2:4
**centers** [3] - 4:8, 4:11, 40:4
**CENTRAL** [1] - 1:2
**certain** [3] - 17:14, 23:16, 24:4
**CERTIFICATE** [1] - 41:1
**CERTIFY** [1] - 41:2
**cetera** [2] - 34:12, 35:13
**chance** [6] - 10:4, 15:4, 15:10, 16:4, 28:3, 28:6, 28:15, 39:5
**change** [1] - 31:7
**CHARGED** [1] - 41:5
**chase** [1] - 3:12
**child** [20] - 16:16, 18:23, 19:3, 19:9, 19:11, 19:12, 20:9, 20:11, 21:17, 22:24, 23:21, 24:4, 24:15, 25:4, 25:7, 26:6, 29:11, 30:10, 35:7, 35:8
**child's** [2] - 18:16, 18:23
**children** [10] - 6:15, 6:21, 13:14, 16:7, 20:2, 22:5, 22:18, 25:12, 32:17
**choice** [2] - 21:16, 22:23
**choose** [1] - 23:2
**choosing** [1] - 25:1
**chosen** [3] - 14:20, 15:11, 16:25
**CIRCUIT** [1] - 41:5
**Circuit** [1] - 34:6
**circumstances** [1] - 35:14
**cite** [1] - 36:4
**clarification** [1] - 9:22

**clarify** [4] - 4:3, 4:5, 13:21, 19:16
**class** [8] - 6:5, 6:15, 11:7, 11:23, 15:3, 18:25, 39:13, 39:16
**clear** [4] - 4:6, 6:23, 31:13, 34:7
**clearly** [3] - 34:1, 34:13, 35:11
**CLERK** [1] - 3:3
**client** [1] - 9:17
**clients** [8] - 20:4, 21:3, 21:4, 21:9, 21:13, 22:3, 31:18, 32:5
**close** [3] - 18:19, 26:7, 29:16
**closely** [2] - 4:21, 36:2
**combined** [1] - 29:7
**comforted** [1] - 12:4
**comment** [1] - 15:10
**comments** [1] - 8:20
**communities** [1] - 11:25
**complained** [1] - 18:5
**completed** [1] - 29:18
**completion** [1] - 29:16
**compliance** [1] - 12:6
**compliant** [1] - 21:25
**comply** [3] - 14:1, 15:7, 35:15
**components** [1] - 17:14
**concern** [7] - 7:25, 9:17, 17:11, 20:18, 21:14, 27:15, 31:1
**concerns** [5] - 19:23, 20:16, 22:3, 27:18, 30:25
**concluded** [1] - 40:11
**conditions** [4] - 3:15, 15:22, 19:6, 20:12
**conduct** [2] - 6:20, 36:1
**confer** [22] - 6:13, 8:13, 13:8, 13:20, 14:16, 14:20, 15:15, 15:24, 15:25, 16:1, 16:5, 16:12, 27:4, 27:6, 27:11, 28:1, 29:15, 29:24, 36:17, 37:1, 39:21, 39:22
**conference** [6] - 3:14, 5:25, 38:6, 40:4, 40:6
**CONFERENCE** [2] - 1:17, 41:7
**conferences** [1] - 38:15
**conferred** [1] - 37:3
**conferring** [2] - 13:1, 14:24
**confers** [1] - 8:16
**confirm** [1] - 38:17
**CONFORMANCE** [1] - 41:6
**confused** [2] - 19:17, 30:8
**consent** [2] - 12:21, 25:13
**consider** [5] - 24:11, 24:14, 27:25, 37:11, 38:7
**considered** [2] - 36:20, 36:23
**considering** [1] - 16:23
**consistent** [1] - 26:13
**CONSTITUTIONAL** [1] - 2:4
**constraints** [1] - 23:16
**contemplate** [1] - 31:23
**contemplated** [1] - 27:13
**contemplates** [1] - 29:7
**contexts** [1] - 15:14
**continue** [3] - 21:20, 25:6, 38:25
**continued** [3] - 11:23, 18:12, 21:24

**continues** [1] - 21:5
**continuous** [2] - 16:3, 39:15
**continuously** [2] - 22:12, 22:14
**contract** [1] - 34:16
**convinces** [1] - 7:12
**cooperating** [1] - 7:17
**coordinator's** [1] - 10:19
**coordinators** [3] - 3:9, 10:20, 39:7
**COORDINATORS** [1] - 2:19
**copies** [1] - 32:21
**copy** [1] - 33:3
**CORRECT** [1] - 41:2
**correct** [1] - 11:11
**counsel** [8] - 11:5, 12:22, 17:15, 27:19, 28:4, 31:24, 32:2, 39:13
**counsel's** [1] - 18:25
**couple** [7] - 7:16, 20:9, 26:9, 30:1, 30:25, 36:11, 36:18, 37:18
**course** [4] - 15:13, 19:3, 19:4, 36:1
**Court** [37] - 6:3, 6:17, 6:19, 6:22, 6:24, 8:5, 10:15, 10:17, 13:9, 13:11, 13:13, 13:17, 21:15, 22:20, 25:15, 28:6, 29:13, 29:14, 29:20, 30:17, 31:23, 33:5, 34:3, 34:7, 34:10, 34:13, 35:2, 35:16, 35:17, 35:23, 36:15, 36:20, 37:2, 37:5, 37:11
**court** [1] - 25:3
**COURT** [54] - 1:1, 1:23, 3:11, 4:14, 4:25, 5:2, 5:20, 7:2, 7:12, 7:21, 8:4, 8:8, 9:3, 10:1, 10:6, 10:18, 11:14, 11:20, 13:21, 16:22, 17:4, 17:12, 17:19, 17:23, 19:15, 20:23, 23:4, 23:14, 24:20, 25:6, 25:18, 25:23, 26:15, 27:7, 28:2, 28:20, 28:22, 29:23, 30:19, 31:15, 32:9, 32:13, 33:10, 33:13, 34:14, 35:25, 36:8, 37:14, 37:19, 37:24, 38:2, 38:20, 38:24, 40:10
**Court's** [3] - 18:25, 30:7, 37:4
**covered** [1] - 4:20
**Covid** [1] - 24:17
**Covid-19** [6] - 11:24, 12:2, 20:1, 20:10, 20:15, 22:17
**Cowlitz** [1] - 8:18
**criticized** [1] - 10:24
**CSR** [1] - 1:23
**custodian** [4] - 12:22, 20:19, 24:16, 24:18
**custodians** [2] - 16:7, 19:6
**custody** [4] - 5:5, 9:18, 9:23, 26:1
**cut** [1] - 3:12
**CV85-4544-DMG** [2] - 1:8, 3:3

## D

**danger** [2] - 19:4, 35:9
**dangerous** [2] - 20:14
**data** [7] - 6:4, 6:5, 7:10, 7:19, 8:6, 11:4, 12:1
**DATE** [1] - 41:10
**date** [2] - 5:25, 37:19

**day-to-day** [1] - 4:22
**days** [3] - 7:16, 9:9, 37:18
**DC** [1] - 2:13
**deadline** [4] - 7:6, 12:14, 13:22, 13:24
**deadlines** [5] - 28:25, 38:4, 38:6, 38:8, 38:14
**deal** [1] - 3:17
**dealt** [1] - 26:23
**DEANE** [1] - 2:19
**Deane** [1] - 3:10
**December** [1] - 9:5
**decided** [1] - 18:20
**deciding** [1] - 25:2
**decision** [10] - 18:25, 19:1, 19:2, 19:8, 20:20, 22:1, 23:20, 34:5, 34:6
**decisive** [1] - 24:14
**declaration** [3] - 17:13, 36:12, 36:14
**deemed** [1] - 19:3
**DEFENDANT** [1] - 2:9
**Defendants** [1] - 1:12
**defendants** [20] - 3:21, 5:5, 5:23, 8:22, 11:8, 12:13, 12:24, 12:25, 13:24, 13:25, 15:7, 25:25, 26:17, 28:14, 33:17, 35:21, 36:22, 39:5, 40:9
**defendants'** [7] - 6:20, 7:5, 13:7, 15:5, 17:15, 36:13
**defendants's** [1] - 6:14
**defer** [1] - 19:18
**defined** [1] - 26:22
**definitely** [2] - 19:1, 33:20
**delay** [2] - 16:2, 39:15
**delayed** [1] - 11:1
**denied** [2] - 7:4, 7:5
**denying** [1] - 15:5
**DEPARTMENT** [1] - 2:10
**department** [2] - 3:10, 4:21
**DEPOSIT** [1] - 41:6
**DESAI** [1] - 2:17
**Desai** [1] - 3:6
**describe** [1] - 22:4
**described** [1] - 21:15
**desire** [1] - 20:8
**detain** [2] - 7:1, 21:5
**detained** [11] - 5:5, 21:6, 21:10, 23:22, 24:4, 24:15, 31:8, 31:24, 31:25, 32:1, 32:4
**detaining** [2] - 25:7, 25:9
**detention** [12] - 8:10, 10:10, 10:11, 15:20, 20:13, 20:19, 21:17, 21:24, 22:18, 22:24, 31:3, 40:4
**determination** [5] - 21:3, 21:12, 22:23, 24:12, 26:3
**determinations** [1] - 23:12
**determine** [3] - 31:2, 32:16, 35:23
**determined** [2] - 8:24, 19:5
**develop** [1] - 18:7
**development** [1] - 32:16
**devise** [1] - 14:13
**diagnosed** [1] - 12:8

**dictate** [1] - 15:1
**different** [2] - 15:14, 34:21
**difficult** [5] - 6:17, 14:2, 20:25, 22:19, 22:21
**digest** [1] - 38:13
**digested** [1] - 28:10
**Dilley** [1] - 11:24
**directly** [1] - 4:19
**disagree** [1] - 18:8
**disagreement** [1] - 29:20
**discretion** [2] - 17:4, 24:10
**discretionary** [1] - 24:12
**discuss** [5] - 3:12, 8:2, 11:18, 27:21, 36:18
**discussed** [1] - 36:9
**discussing** [1] - 27:18
**discussion** [1] - 20:5
**discussions** [2] - 30:13, 30:15
**disingenuous** [2] - 16:23, 17:7
**dismayed** [1] - 12:25
**displeased** [1] - 11:23
**dispute** [2] - 5:12
**disputes** [3] - 12:23, 13:2, 39:11
**disseminated** [1] - 30:23
**distance** [1] - 22:5
**distinguished** [1] - 6:6
**DISTRICT** [3] - 1:1, 1:2, 1:23
**district** [1] - 26:20
**disturbing** [1] - 3:24
**docket** [1] - 38:12
**documents** [1] - 38:8
**DOLLY** [1] - 1:3
**done** [9] - 12:13, 16:10, 20:18, 22:6, 22:7, 22:8, 22:9, 29:18, 29:24
**double** [1] - 25:10
**Dougherty** [2] - 3:10, 38:3
**DOUGHERTY** [1] - 2:19
**down** [2] - 29:18, 31:11
**DR** [1] - 2:16
**Dr** [5] - 3:7, 11:12, 11:16, 12:5, 38:25
**due** [3] - 37:18, 39:7
**duly** [2] - 8:17, 9:5
**during** [3] - 3:16, 16:4, 20:11
**duty** [1] - 13:25

## E

**easily** [1] - 31:7
**education** [1] - 24:5
**effect** [1] - 17:6
**effort** [1] - 29:17
**efforts** [7] - 12:9, 12:21, 16:3, 16:11, 29:24, 37:1, 39:16
**either** [6] - 8:20, 14:15, 15:10, 25:12, 25:19, 35:16
**embrace** [1] - 27:24
**emergency** [1] - 9:13
**employees** [1] - 20:2
**encompass** [1] - 26:4, 27:9

**encourage** [1] - 6:22
**end** [4] - 3:21, 5:18, 15:18, 29:13
**endangers** [1] - 22:17
**enforce** [2] - 3:14, 32:10
**enforcement** [2] - 21:18, 27:5
**engage** [1] - 27:22
**engaged** [1] - 13:2
**enhanced** [1] - 38:25
**entered** [1] - 34:6
**enthusiastic** [1] - 32:4
**enthusiastically** [1] - 32:5
**entirely** [1] - 4:10
**entitled** [1] - 6:15
**especially** [1] - 16:4
**ET** [2] - 1:10, 2:10
**et** [4] - 3:4, 34:11, 35:13
**evidence** [1] - 26:11
**evident** [1] - 14:12
**ex** [4] - 7:5, 9:19, 9:23, 10:2
**example** [2] - 21:7, 23:25
**excuse** [2] - 12:24, 13:3
**exercise** [4] - 17:4, 24:5, 29:9, 29:10
**exhausted** [3] - 16:11, 30:1, 39:23
**exhaustion** [1] - 16:15
**Exhibit** [1] - 26:19
**exist** [1] - 34:20
**existing** [1] - 24:21
**exists** [2] - 3:20, 24:16
**expect** [1] - 9:6
**expedited** [5] - 3:22, 5:21, 23:7, 35:21, 39:17
**expeditiously** [1] - 26:1
**explain** [1] - 21:13
**explaining** [2] - 18:14, 25:1
**explains** [1] - 21:10
**explanation** [1] - 26:18
**explanations** [1] - 21:6
**extend** [1] - 38:3
**extended** [1] - 12:15
**extent** [4] - 5:4, 7:1, 7:23, 13:16

## F

**Fabian** [13] - 3:9, 3:19, 4:1, 7:15, 8:21, 12:25, 14:2, 16:11, 25:23, 29:14, 29:23, 30:5, 36:10
**FABIAN** [25] - 2:9, 4:2, 4:15, 5:1, 5:7, 7:11, 7:14, 7:22, 8:7, 8:21, 9:16, 10:5, 11:11, 11:17, 13:6, 16:13, 17:3, 17:10, 26:8, 26:25, 27:14, 30:3, 30:5, 36:10, 40:9
**facilities** [12] - 8:11, 8:15, 9:2, 10:10, 10:12, 15:18, 21:24, 22:3, 22:13, 22:17, 31:3, 31:5
**facility** [4] - 20:3, 20:13, 21:7, 22:7
**fact** [4] - 7:7, 13:11, 20:16, 22:4
**factual** [4] - 5:13, 22:20, 32:16, 39:11
**failed** [1] - 21:2
**failing** [2] - 16:3, 39:15

**fails** [1] - 35:15
**failure** [1] - 39:14
**fairly** [1] - 12:1
**faith** [2] - 14:25, 21:20
**falls** [1] - 5:3
**familiar** [1] - 4:21
**families** [9] - 20:6, 20:7, 20:8, 20:17, 22:12, 24:6, 31:1, 31:9, 32:1
**family** [7] - 4:11, 10:11, 21:14, 22:25, 24:11, 25:3, 26:7
**far** [5] - 4:6, 9:4, 17:23, 26:13, 37:12
**fears** [1] - 21:22
**FEE** [1] - 41:5
**fee** [1] - 38:21
**FEES** [1] - 41:5
**few** [1] - 9:9
**figure** [2] - 22:21, 29:20
**file** [19] - 5:22, 8:17, 10:2, 10:15, 27:19, 28:12, 28:15, 32:9, 35:20, 35:22, 37:24, 38:8, 38:11, 38:12, 39:2, 39:12, 39:23, 40:2
**filed** [13] - 3:15, 8:6, 18:3, 18:4, 20:25, 23:9, 28:4, 36:13, 36:20, 36:23, 39:3, 39:11, 39:17
**filing** [6] - 7:16, 10:21, 27:5, 28:19, 36:15, 38:10
**final** [2] - 13:11, 23:7
**finalize** [1] - 13:18
**finally** [1] - 34:5
**findings** [1] - 5:13
**fine** [2] - 11:19, 37:22
**fingerprinting** [1] - 10:24
**fingertips** [1] - 26:10
**finish** [1] - 29:21
**first** [7] - 3:12, 3:18, 14:4, 21:13, 22:23, 22:25, 26:25
**fit** [1] - 10:17
**five** [1] - 15:14
**flight** [3] - 12:20, 19:4, 35:9
**Flores** [7] - 3:3, 5:4, 14:1, 14:6, 23:23, 25:24, 26:13
**FLORES** [2] - 1:4, 2:3
**focus** [2] - 4:21, 10:16
**focusing** [1] - 35:21
**follow** [3] - 25:1, 29:11, 38:14
**following** [2] - 37:21, 38:15
**FOR** [2] - 2:4, 41:5
**forcing** [1] - 25:3
**FOREGOING** [1] - 41:2
**form** [1] - 26:17
**format** [1] - 8:4
**forth** [3] - 17:14, 26:19, 38:6
**forward** [2] - 30:9, 33:2
**FOURTH** [1] - 1:24
**fragile** [1] - 12:11
**frame** [1] - 37:3
**FRANKLIN** [1] - 2:12
**frankly** [1] - 19:17
**FRC** [3] - 12:10, 20:2, 23:22

**FRCs** [2] - 19:24, 39:1
**free** [1] - 26:19
**FRIDAY** [2] - 1:18, 3:1
**front** [1] - 4:17
**frustrated** [2] - 23:15, 25:16
**frustration** [1] - 23:15
**FSA** [1] - 21:25
**fundamental** [1] - 16:18
**future** [1] - 38:17

## G

**GABE** [1] - 2:18
**Gabe** [2] - 3:6, 38:16
**GEE** [1] - 1:3
**general** [2] - 5:14, 22:15
**given** [8] - 17:1, 22:11, 23:17, 29:5, 29:6, 31:12, 31:13, 36:14
**government** [19] - 3:8, 13:13, 13:18, 13:19, 16:14, 16:15, 16:20, 16:25, 18:20, 18:21, 21:2, 27:1, 29:8, 30:8, 30:20, 35:8, 35:10, 35:15, 36:25
**government's** [1] - 30:16
**Grande** [1] - 15:23
**groups** [2] - 17:21, 31:10
**guess** [4] - 4:25, 7:22, 24:25, 31:15

## H

**habeas** [1] - 23:10
**hac** [3] - 19:19, 38:18, 38:20
**hands** [1] - 12:24
**happy** [4] - 10:15, 19:22, 27:5, 27:25
**hard** [1] - 18:1
**harm** [1] - 9:11
**harms** [2] - 36:21, 36:22
**head** [1] - 14:23
**Health** [1] - 12:1
**hear** [1] - 40:1
**heard** [3] - 9:6, 15:4, 31:17
**hearing** [9] - 5:24, 23:5, 23:8, 26:3, 27:20, 28:5, 28:10, 28:13, 38:9
**held** [1] - 6:15
**helpful** [3] - 6:2, 28:4, 38:8
**HEREBY** [1] - 41:2
**hold** [2] - 8:24, 9:1
**Holguin** [3] - 3:6, 6:11, 11:3
**HOLGUIN** [2] - 2:17, 6:11
**Holguin's** [1] - 7:25
**home** [1] - 35:10
**honestly** [1] - 22:22
**honor** [1] - 19:8
**Honor** [41] - 4:2, 5:7, 6:11, 7:11, 8:7, 8:21, 9:16, 10:5, 10:7, 10:8, 11:11, 13:6, 16:13, 16:21, 17:3, 17:10, 17:18, 19:14, 19:18, 19:21, 20:24, 23:7, 24:8, 24:17, 24:24, 26:8, 27:14, 28:17, 28:18, 29:1, 30:3, 30:4, 30:24, 32:15, 33:12, 34:23, 36:7, 36:10, 37:21, 38:16, 38:23

Honor's [1] - 7:15
HONORABLE [1] - 1:3
hopes [1] - 8:14
hoteling [5] - 3:18, 4:5, 6:13, 35:19, 39:18
hotels [5] - 4:7, 4:9, 6:16, 6:20, 7:1
hours [1] - 36:19
housekeeping [1] - 37:9
housing [1] - 15:22
hue [1] - 36:2
Human [1] - 12:1
HUMAN [1] - 2:4
hundred [1] - 21:8

## I

I770 [1] - 26:18
ICE [18] - 4:7, 5:15, 11:22, 12:5, 18:5, 18:7, 20:19, 21:4, 21:11, 21:16, 21:20, 21:22, 22:24, 32:17, 32:21, 33:2, 38:3
ICE's [3] - 12:9, 19:1, 24:10
idea [1] - 11:15
identity [1] - 11:6
illuminate [1] - 6:25
imagine [1] - 25:18
IMMIGRATION [1] - 2:11
impacted [1] - 5:6
implement [10] - 17:1, 18:13, 18:18, 32:7, 32:19, 32:22, 32:25, 33:24, 34:2, 35:5
implementation [1] - 34:25
implemented [2] - 10:13, 17:8
implementing [1] - 27:17
implore [1] - 24:18
importance [1] - 37:6
important [4] - 24:3, 26:5, 27:10, 28:7
impose [11] - 14:7, 14:11, 14:15, 14:23, 15:8, 16:10, 16:21, 28:25, 30:17, 33:18, 33:21
imposed [3] - 7:6, 15:19, 38:14
IN [4] - 2:3, 2:9, 41:3, 41:6
include [2] - 30:10, 34:17
included [3] - 7:7, 34:18, 36:12
includes [3] - 20:2, 22:18, 34:11
including [3] - 26:2, 30:12, 37:5
indefinitely [1] - 21:18
independent [8] - 4:10, 6:14, 6:19, 6:23, 7:8, 11:9, 12:5, 38:24
independently [1] - 21:21
indicated [5] - 14:7, 20:8, 25:9, 37:14
individual [1] - 32:4
individualized [5] - 12:18, 12:19, 21:3, 22:23, 23:11
individuals [1] - 11:6
informally [1] - 8:14
information [17] - 3:23, 5:19, 6:15, 6:18, 6:24, 7:24, 8:1, 11:8, 11:12, 22:20, 24:1, 28:7, 28:8, 36:18, 36:19, 36:21, 36:22

input [3] - 14:18, 17:15, 17:24
inquired [1] - 20:7
INS [2] - 25:25, 26:17
instance [3] - 21:13, 23:1, 24:17
instead [1] - 15:1
institute [1] - 13:14
instructions [2] - 32:19, 32:21
intake [3] - 12:8, 22:6, 22:9
intend [1] - 3:21
intended [1] - 7:24
interest [2] - 18:16, 19:9
interested [1] - 5:3
interfere [2] - 14:25, 33:9
interfered [1] - 34:25
interim [4] - 5:13, 8:23, 37:15, 39:6
internal [2] - 12:23, 13:2
interpret [1] - 34:15
interpretation [1] - 33:23, 34:8, 35:3
interpreted [2] - 34:17, 34:19
interrupt [1] - 7:14, 33:10, 34:14
involve [1] - 34:8
involving [1] - 15:20
irreparable [1] - 9:11
IS [1] - 41:2
issue [26] - 3:18, 4:4, 4:8, 4:9, 4:19, 4:20, 6:9, 6:13, 8:11, 8:18, 8:23, 9:10, 9:11, 9:15, 10:1, 14:14, 27:3, 27:6, 29:22, 29:24, 30:8, 31:12, 34:7, 35:19, 37:9, 40:3
issued [3] - 32:19, 32:21, 34:5
issues [12] - 3:16, 4:5, 7:2, 8:14, 8:16, 11:4, 21:19, 28:22, 29:19, 37:1, 37:3, 39:21
issuing [1] - 39:19
item [1] - 8:9
itself [3] - 14:13, 16:16, 27:13

## J

JENNY [2] - 1:4, 2:3
Jenny [1] - 3:3
job [1] - 10:23
joint [4] - 30:9, 36:12, 36:15, 39:23
Judge [5] - 12:8, 15:16, 22:1, 23:10, 23:11
JUDGE [1] - 1:3
judicial [1] - 26:18
JUDICIAL [1] - 41:7
July [5] - 12:15, 12:16, 13:10, 13:22
jurisdiction [2] - 17:6, 24:9
JUSTICE [1] - 2:10
justification [1] - 21:23
justify [1] - 25:8
juvenile [6] - 8:10, 10:10, 10:19, 10:20, 39:6, 40:3
JUVENILE [1] - 2:19

## K

kaput [1] - 29:25

Karnes [1] - 11:24
keep [4] - 10:23, 11:25, 22:24, 39:20
kids [1] - 22:16
kind [2] - 20:20, 29:12
King [1] - 15:16
know-your-rights [1] - 27:12
knowing [1] - 20:21

## L

lack [1] - 13:3
language [5] - 9:8, 14:12, 24:14, 34:15, 36:3
large [3] - 10:22, 21:4, 22:13
largely [1] - 9:16
larger [3] - 31:8, 31:9, 32:2
last [5] - 8:24, 15:13, 27:20, 28:5, 38:8
last-minute [1] - 38:8
late [3] - 28:19, 36:13, 36:23
LAW [1] - 2:4
law [2] - 31:19, 31:25
laws [1] - 24:22
least [1] - 25:21
left [1] - 29:12
legal [5] - 5:5, 17:16, 19:23, 26:19, 30:22
LESS [1] - 41:5
lift [1] - 8:25
lifted [1] - 9:24
light [1] - 18:2
line [2] - 19:22, 29:21
lines [1] - 35:19
list [1] - 26:19
literally [1] - 39:18
litigated [1] - 26:9
litigation [4] - 4:20, 13:4, 14:5, 36:24
LITIGATION [1] - 2:11
local [1] - 8:18
locals [1] - 12:3
look [2] - 6:23, 26:21
looking [2] - 22:12, 22:14
LOS [2] - 2:6, 3:1
low [1] - 31:5

## M

Maese [3] - 3:9, 37:9, 37:16
MAESE [4] - 2:20, 37:17, 37:21, 38:1
maintain [1] - 10:3
mandate [1] - 25:2
mandated [2] - 24:13
mandatory [2] - 13:16, 13:17
March [1] - 32:24
masks [1] - 22:5
MASTER [1] - 2:16
MATTER [1] - 41:4
matter [4] - 5:14, 8:9, 35:23, 37:8
matters [1] - 36:11
mean [5] - 5:8, 13:25, 17:2, 34:19, 39:9

**meant** [1] - 13:23
**medical** [4] - 15:22, 24:4, 37:10, 37:18
**medication** [1] - 15:21
**meet** [24] - 6:13, 8:13, 8:16, 13:8, 13:20, 13:24, 14:16, 14:20, 15:15, 15:24, 15:25, 16:1, 16:5, 16:11, 27:3, 27:6, 27:11, 28:1, 29:15, 29:24, 36:17, 37:1, 39:21, 39:22
**meet-and-confer** [7] - 6:13, 13:8, 13:20, 15:24, 15:25, 29:15, 36:17
**meet-and-confers** [1] - 8:16
**meeting** [2] - 13:1, 14:24
**member** [1] - 26:7
**members** [5] - 6:5, 11:7, 11:23, 15:3, 39:16
**memorializing** [1] - 39:19
**mention** [2] - 6:2, 34:12
**mentioned** [2] - 35:19, 39:4
**merry** [1] - 36:2
**merry-go-round** [1] - 36:2
**met** [3] - 15:16, 19:6, 37:3
**methodology** [1] - 11:18
**might** [2] - 24:11, 26:7
**minor** [6] - 25:25, 26:1, 26:2, 26:17, 29:8, 29:10
**minors** [12] - 5:5, 6:6, 9:1, 12:7, 12:14, 12:18, 16:2, 23:18, 31:24, 31:25, 32:4, 39:14
**minors'** [1] - 12:20
**minute** [4] - 27:20, 28:5, 38:8, 38:15
**minutes** [1] - 36:14
**MIRANDA** [4] - 2:20, 37:17, 37:21, 38:1
**Miranda** [2] - 3:9, 37:9
**MIRANDA-MAESE** [4] - 2:20, 37:17, 37:21, 38:1
**Miranda-Maese** [2] - 3:9, 37:9
**Miriam** [1] - 41:9
**MIRIAM** [2] - 1:23, 41:10
**misconstrued** [1] - 15:6
**mistaken** [1] - 11:7
**moderate** [1] - 12:10
**modifying** [1] - 34:9
**moment** [1] - 20:1
**monitor** [10] - 3:7, 6:14, 6:19, 6:23, 7:8, 11:9, 11:12, 11:16, 12:5, 38:25
**monitor's** [1] - 5:13
**monitoring** [3] - 6:20, 7:23, 38:25
**month** [3] - 12:16, 31:7, 37:15
**months** [1] - 15:17
**morning** [2] - 3:11, 10:8
**most** [3] - 7:2, 20:10, 32:3
**mother** [2] - 19:11
**motion** [14] - 3:14, 3:17, 4:9, 5:22, 8:12, 8:17, 9:6, 10:16, 27:5, 32:9, 35:21, 39:16, 40:2
**move** [5] - 6:9, 8:9, 10:18, 11:22, 30:8
**MR** [19] - 6:11, 10:7, 17:18, 17:20, 17:25, 19:18, 28:17, 29:1, 30:4, 30:24, 31:21, 32:11, 32:15, 33:12, 33:20,

34:23, 36:7, 38:16, 38:23
**MS** [36] - 4:2, 4:15, 5:1, 5:7, 7:11, 7:14, 7:22, 8:7, 8:21, 9:16, 10:5, 11:11, 11:17, 13:6, 16:13, 17:3, 17:10, 19:21, 20:24, 23:6, 23:21, 24:24, 25:14, 25:21, 26:8, 26:25, 27:14, 28:18, 28:21, 30:3, 30:5, 36:10, 37:17, 37:21, 38:1, 40:9
**MURLEY** [1] - 2:10
**Murley** [1] - 3:8
**mute** [1] - 40:1
**mutually** [2] - 14:17, 14:21
**mutually-agreeable** [1] - 14:17
**mutually-agreed** [1] - 14:21
**MVB11893@aol.com** [1] - 1:25

## N

**necessarily** [3] - 8:1, 23:24, 39:9
**necessary** [4] - 7:3, 9:21, 15:3, 28:11
**necessitate** [1] - 9:19
**need** [12] - 9:3, 9:15, 9:23, 11:12, 17:1, 29:11, 32:16, 34:15, 35:4, 36:18, 38:18, 40:2
**needs** [3] - 3:24, 9:14, 28:9
**negative** [1] - 17:25
**negligent** [1] - 22:12
**negotiated** [1] - 31:22
**NEHA** [1] - 2:17
**Neha** [1] - 3:6
**never** [4] - 21:9, 21:12, 31:16, 31:17
**new** [3] - 3:16, 34:21, 36:9
**next** [4] - 5:25, 6:9, 39:6, 40:4
**NICOLE** [1] - 2:10
**Nicole** [1] - 3:8
**Ninth** [1] - 34:6
**nobody** [1] - 6:8
**noise** [1] - 40:1
**NORCOR** [1] - 8:19
**note** [3] - 4:3, 7:16, 37:8
**nothing** [4] - 8:8, 12:13, 20:23, 40:9
**notice** [15] - 15:4, 18:6, 26:2, 26:4, 26:22, 27:2, 27:9, 27:16, 30:12, 30:21, 33:25, 34:18, 34:19, 40:2
**noticed** [2] - 8:17, 9:6
**notices** [4] - 26:8, 26:11, 26:13, 27:4
**November** [1] - 9:5
**number** [5] - 18:15, 31:8, 31:9, 31:24, 32:2

## O

**o'clock** [2] - 6:1, 40:5
**O.M.G** [2] - 12:9, 23:9
**objection** [1] - 36:14
**objections** [5] - 38:7, 39:3, 39:7, 39:9
**obligated** [1] - 35:8
**obligation** [2] - 35:10, 35:11
**obviously** [1] - 36:1
**OCCIDENTAL** [1] - 2:5

**occur** [2] - 9:5, 9:12
**OF** [9] - 1:2, 1:16, 2:3, 2:9, 2:10, 2:11, 41:3, 41:7
**OFFICE** [1] - 2:11
**OFFICIAL** [2] - 1:23, 41:10
**often** [1] - 24:9
**once** [2] - 14:9, 33:2
**one** [10] - 6:10, 10:25, 11:1, 15:12, 22:8, 30:25, 31:25, 34:2, 36:11, 38:21
**one-time** [1] - 38:21
**ongoing** [3] - 5:11, 5:14, 5:17
**open** [1] - 29:12
**opinion** [1] - 22:16
**opportunistic** [1] - 13:3
**opportunity** [4] - 5:12, 23:5, 27:21, 28:13
**opposition** [1] - 35:22
**option** [1] - 17:2
**options** [1] - 31:19
**order** [24] - 4:23, 7:4, 7:7, 7:15, 7:17, 8:24, 9:21, 13:10, 14:14, 14:15, 15:5, 18:13, 23:7, 25:10, 26:14, 26:16, 26:23, 33:23, 34:5, 35:4, 36:17, 37:4, 38:15, 39:19
**ordered** [5] - 5:15, 13:11, 13:13, 17:2, 24:21
**ordering** [1] - 37:13
**orders** [4] - 14:7, 15:7, 29:14, 34:7
**Ordin** [3] - 3:7, 7:18, 8:2
**ORDIN** [1] - 2:16
**organization** [1] - 21:8
**organizations** [1] - 17:22
**original** [5] - 3:14, 4:5, 4:9, 8:12, 9:20
**ORR** [4] - 10:22, 11:4, 33:6, 35:1
**otherwise** [1] - 7:13
**outbreak** [2] - 22:11, 22:13
**outbreaks** [1] - 12:10
**outside** [1] - 24:16
**own** [3] - 13:23, 14:16, 14:21

## P

**page** [2] - 14:9, 33:15
**paid** [1] - 38:21
**pandemic** [3] - 3:16, 16:4, 20:11
**paper** [1] - 21:9
**paragraph** [11] - 25:24, 26:16, 26:21, 26:23, 26:24, 27:8, 33:1, 33:25, 35:11, 36:5
**paragraphs** [1] - 29:6
**parent** [11] - 18:15, 18:23, 23:20, 24:3, 24:15, 24:18, 25:4, 25:13, 29:10, 30:10, 35:7
**parent's** [3] - 19:2, 19:8, 21:16
**parents** [18] - 13:15, 16:17, 17:2, 18:14, 20:2, 21:22, 22:18, 23:6, 23:12, 23:19, 24:9, 24:21, 25:9, 25:11, 26:5, 30:22, 31:13, 31:25
**parole** [1] - 21:11
**part** [8] - 4:8, 4:9, 4:18, 8:11, 16:19,

19:7, 27:15, 36:23
**parte** [4] - 7:5, 9:19, 9:23, 10:2
**participate** [2] - 17:8, 18:22
**participated** [1] - 13:7
**participation** [1] - 36:16
**particular** [1] - 12:18
**particularly** [1] - 18:2
**parties** [12] - 6:17, 8:13, 8:15, 14:16, 14:20, 14:24, 27:11, 28:6, 28:14, 28:24, 31:2, 39:21
**parties'** [1] - 6:3
**past** [1] - 33:3
**patiently** [2] - 15:25, 16:1
**PAUL** [1] - 2:16
**Paul** [1] - 3:7
**people** [2] - 6:4, 31:6
**percent** [2] - 18:19, 21:8
**perfect** [1] - 33:7
**perfectly** [2] - 34:15, 34:18
**perhaps** [6] - 15:25, 16:14, 19:15, 28:11, 35:17, 35:18
**perilous** [1] - 20:3
**period** [1] - 37:4
**permission** [1] - 15:7
**permitted** [1] - 6:20
**person** [2] - 9:12, 22:17
**personal** [1] - 14:21
**perspective** [1] - 19:23
**PETER** [1] - 2:3
**Peter** [3] - 3:5, 10:7, 29:1
**phone** [2] - 29:5, 37:9
**piece** [2] - 16:18, 21:9
**place** [12] - 16:7, 18:17, 19:8, 32:17, 32:25, 33:1, 33:3, 33:4, 33:6, 33:8, 33:9, 34:24
**placed** [2] - 8:24, 20:17
**plain** [1] - 19:1
**plaintiff** [1] - 18:12
**plaintiffs** [23] - 3:5, 3:15, 5:22, 5:23, 6:12, 7:24, 8:2, 8:5, 8:10, 8:17, 10:24, 13:2, 16:18, 18:8, 18:10, 21:2, 27:3, 27:19, 27:23, 27:24, 29:2, 35:20, 35:22
**Plaintiffs** [1] - 1:6
**PLAINTIFFS** [1] - 2:3
**plaintiffs'** [2] - 11:5, 12:22
**playing** [1] - 23:12
**PO** [1] - 2:12
**point** [5] - 3:21, 17:14, 23:1, 24:9, 31:17
**pointed** [2] - 32:24, 33:25
**policies** [1] - 31:6
**policy** [1] - 10:24, 11:2, 17:1
**population** [3] - 22:10, 22:15, 31:4
**position** [16] - 4:16, 5:8, 6:14, 13:7, 16:22, 16:24, 17:11, 18:2, 18:24, 19:14, 19:16, 20:25, 22:19, 23:18, 30:17, 33:17
**positive** [8] - 11:5, 11:6, 11:15, 12:2, 12:7, 17:25, 20:1, 22:8

**positives** [1] - 22:14
**possibly** [1] - 29:3
**potentially** [2] - 18:22, 27:5
**power** [3] - 34:7, 34:13, 35:16
**practice** [5] - 3:20, 4:2, 4:17, 5:21, 31:16
**prefer** [1] - 16:20
**preference** [1] - 20:23
**present** [1] - 8:4
**PRESENT** [1] - 2:15
**PRESIDING** [1] - 1:3
**pressing** [1] - 20:10
**pretty** [1] - 19:12
**preventing** [1] - 12:9
**previous** [3] - 12:14, 25:10, 26:23
**previously** [5] - 7:6, 24:20, 37:14, 39:4, 39:22
**pro** [3] - 19:19, 38:18, 38:20
**problem** [3] - 10:10, 10:11, 33:13
**procedure** [4] - 18:15, 19:8, 19:10, 37:18
**procedures** [23] - 10:13, 13:12, 18:17, 32:6, 32:17, 32:24, 33:1, 33:3, 33:4, 33:6, 33:8, 33:14, 33:19, 33:21, 33:22, 34:1, 34:21, 34:24, 35:2, 35:3, 35:15, 35:17
**proceed** [2] - 35:18
**proceeding** [1] - 7:20
**PROCEEDINGS** [2] - 1:16, 41:3
**proceedings** [1] - 40:11
**process** [19] - 4:12, 4:23, 5:6, 5:17, 6:25, 7:23, 11:13, 13:4, 13:8, 13:12, 13:14, 13:16, 13:19, 14:25, 18:22, 23:10, 26:1, 29:15, 29:17
**processes** [7] - 4:10, 4:24, 5:9, 5:10, 5:14, 13:19
**produce** [1] - 37:22
**prohibits** [1] - 25:12
**properly** [1] - 19:3
**proposed** [3] - 36:4, 39:14, 39:16
**protocol** [7] - 16:6, 17:14, 17:16, 20:17, 21:15, 27:12, 27:17
**protocols** [15] - 10:13, 12:6, 13:9, 13:14, 16:14, 16:16, 16:19, 16:24, 17:8, 17:9, 18:5, 20:5, 30:9, 32:6, 33:15
**provide** [8] - 6:3, 21:3, 22:20, 26:2, 26:17, 28:7, 30:12, 35:10
**provided** [10] - 7:24, 11:5, 21:5, 21:12, 23:3, 25:17, 26:12, 27:2, 28:9, 32:20
**providers** [3] - 17:17, 19:24, 30:22
**provides** [1] - 24:2
**providing** [3] - 8:1, 27:16, 28:8
**provision** [2] - 26:20, 37:5
**provisions** [1] - 32:25
**psychotropic** [1] - 15:21
**public** [1] - 36:21
**purpose** [2] - 9:20, 10:3
**pursuant** [2] - 6:16, 8:17

**purview** [2] - 5:3, 7:8
**put** [1] - 39:25

## Q

**quarrel** [1] - 10:25
**questions** [2] - 20:20, 37:12
**quite** [1] - 14:10
**quo** [1] - 10:3
**quote** [1] - 12:8

## R

**raise** [2] - 28:24, 40:3
**raised** [4] - 8:10, 9:10, 11:3, 27:1
**rather** [3] - 3:25, 16:23
**reach** [2] - 15:8, 18:19
**reached** [1] - 15:2
**reaching** [1] - 22:15
**read** [6] - 7:15, 7:17, 13:10, 27:8, 38:9, 38:13
**reality** [1] - 23:17
**really** [6] - 12:13, 14:2, 20:3, 22:19, 29:7, 29:14
**reason** [12] - 9:7, 16:23, 16:25, 17:9, 20:10, 21:17, 23:9, 25:2, 25:19, 27:10, 38:10
**reasonable** [7] - 33:7, 33:8, 33:22, 34:8, 35:3, 35:16, 37:2
**reasonably** [1] - 35:4
**reasoning** [1] - 18:21
**reasons** [7] - 20:9, 21:4, 21:6, 25:7, 25:16, 25:17, 37:10
**receive** [1] - 7:10
**received** [5] - 12:5, 17:15, 17:24, 21:9, 29:5
**recent** [1] - 7:4
**recommendations** [1] - 39:2
**record** [2] - 16:3, 39:15
**RECORDED** [1] - 41:3
**REDUCTION** [1] - 41:6
**regard** [10] - 6:5, 8:20, 9:14, 10:22, 11:21, 13:22, 16:13, 20:5, 24:22, 36:11
**regarding** [9] - 3:15, 8:18, 9:1, 11:5, 12:2, 16:2, 20:17, 27:12, 40:3
**regards** [2] - 33:5, 35:1
**regular** [1] - 27:22
**regulation** [1] - 24:13
**regulations** [1] - 24:22
**REGULATIONS** [1] - 41:7
**reissued** [1] - 4:23
**reiterate** [4] - 8:22, 36:13, 37:6, 38:5
**related** [2] - 4:4, 4:7
**relates** [3] - 3:14, 8:18, 36:16
**relating** [2] - 8:14, 11:4
**relative** [1] - 18:17
**relatives** [3] - 19:5, 35:9, 35:12
**release** [22] - 12:13, 12:21, 13:14, 16:2, 16:3, 17:5, 22:25, 23:17, 24:11, 24:15,

24:21, 25:3, 25:11, 26:6, 29:10, 32:6, 32:17, 32:25, 33:9, 39:14, 39:16
**released** [8] - 16:17, 18:16, 19:10, 19:12, 20:11, 21:14, 23:25, 35:7
**reluctant** [1] - 31:11
**rely** [1] - 21:16
**remain** [4] - 11:24, 21:16, 21:17, 22:13
**remainder** [1] - 22:10
**remains** [2] - 5:8, 27:15
**remedial** [2] - 14:13, 14:14
**remedy** [19] - 14:8, 14:11, 14:12, 14:15, 14:17, 14:21, 15:9, 15:10, 15:11, 15:13, 15:16, 15:19, 16:10, 16:21, 30:17, 36:4, 36:6, 39:14, 39:16
**remember** [1] - 26:16
**remind** [1] - 3:13
**removal** [2] - 23:7, 23:8
**renewed** [1] - 38:18
**repeat** [1] - 7:3
**repeatedly** [1] - 32:23
**reply** [4] - 5:23, 35:22
**report** [10] - 5:13, 7:9, 11:22, 36:12, 36:15, 37:22, 39:1, 39:6, 39:10, 39:23
**reported** [1] - 36:21
**REPORTER** [2] - 1:23, 41:10
**REPORTER'S** [1] - 1:16
**reporting** [2] - 11:18, 37:13
**reports** [4] - 10:19, 10:20, 12:4, 37:15
**represent** [2] - 20:6, 21:8
**representation** [1] - 32:4
**represented** [3] - 31:1, 31:9, 32:2
**request** [4] - 8:22, 11:14, 15:5, 24:7
**requested** [3] - 7:19, 21:11, 23:11
**requesting** [1] - 27:24
**requests** [1] - 27:25
**require** [3] - 8:13, 8:16, 16:18
**required** [8] - 8:25, 13:9, 26:13, 26:17, 32:18, 33:23, 34:1
**requiring** [2] - 36:17
**residential** [2] - 4:7, 4:11
**resolve** [2] - 8:14, 8:15
**resolved** [2] - 8:23, 35:24
**respective** [1] - 6:7
**respond** [5] - 5:23, 13:5, 28:3, 28:14, 39:5
**responded** [2] - 26:10, 28:11
**response** [2] - 28:15, 39:3
**responses** [2] - 38:7, 39:10
**restriction** [1] - 9:24
**result** [3] - 16:16, 21:22, 23:13
**resume** [2] - 29:15, 30:14
**reversed** [1] - 24:22
**review** [3] - 26:18, 27:21, 28:6
**reviewed** [2] - 10:19, 28:10
**revised** [1] - 10:24
**RGV** [1] - 15:23
**RIGHTS** [1] - 2:4
**rights** [24] - 13:1, 16:6, 18:6, 18:14, 23:22, 24:1, 24:3, 26:2, 26:4, 26:5,

26:14, 26:22, 27:2, 27:4, 27:9, 27:10, 27:12, 27:16, 29:9, 30:12, 30:21, 30:22, 34:18, 34:19
**Rio** [1] - 15:23
**rise** [1] - 17:1
**risk** [3] - 12:20, 19:4, 35:9
**road** [1] - 31:11
**rodeo** [1] - 14:4
**round** [1] - 36:2
**rule** [1] - 10:4
**rules** [1] - 8:18

## S

**safe** [5] - 15:17, 22:16, 34:10, 34:16, 35:10
**safety** [2] - 3:15, 12:6
**sanitary** [3] - 15:17, 34:11, 34:16
**SANTA** [1] - 1:24
**SARAH** [1] - 2:9
**Sarah** [5] - 3:9, 7:15, 8:21, 30:5, 36:10
**satisfying** [1] - 25:19
**saturation** [1] - 22:7
**schedule** [6] - 3:23, 5:21, 35:20, 37:11, 39:17, 39:18
**SCHEY** [15] - 2:3, 10:7, 17:18, 17:20, 17:25, 29:1, 30:4, 30:24, 31:21, 32:11, 32:15, 33:12, 33:20, 34:23, 36:7
**Schey** [9] - 3:5, 10:7, 17:13, 27:22, 29:1, 30:13, 30:19, 32:14, 33:10
**Schey's** [1] - 30:6
**seal** [1] - 8:6
**second** [2] - 8:9, 33:11
**secondly** [1] - 31:4
**Section** [1] - 24:10
**sector** [1] - 15:23
**see** [4] - 6:19, 8:6, 14:17, 30:1
**seeing** [3] - 21:21, 22:8, 22:22
**seek** [1] - 24:7
**seem** [4] - 18:4, 18:6, 18:9, 27:10
**sees** [1] - 10:17
**self** [1] - 14:12
**self-evident** [1] - 14:12
**separate** [7] - 4:11, 4:12, 18:22, 19:11, 20:9, 21:23, 26:20
**separately** [3] - 3:17, 13:15, 16:17
**separating** [1] - 25:4
**separation** [2] - 23:2, 30:10
**September** [2] - 6:1, 40:5
**service** [1] - 19:24
**services** [4] - 17:16, 24:5, 26:19, 30:22
**Services** [1] - 12:1
**set** [8] - 3:22, 5:20, 5:24, 17:13, 26:18, 35:16, 35:19, 38:6
**Settlement** [4] - 14:1, 14:6, 23:23, 25:24
**settlement** [23] - 5:4, 10:14, 18:13, 19:2, 19:7, 19:13, 24:2, 31:22, 32:18, 32:20, 32:22, 33:24, 34:2, 34:8, 34:9, 34:12, 34:25, 35:4, 35:5, 35:6, 35:7, 36:3

**several** [3] - 15:14, 17:21, 17:22
**shall** [4] - 24:14, 26:1, 26:2
**share** [1] - 32:18
**shared** [4] - 3:23, 8:5, 17:16, 17:20
**Shiloh** [1] - 15:21
**short** [1] - 37:4
**shows** [1] - 12:1
**sibling** [1] - 26:6
**side** [4] - 8:20, 15:11, 15:12, 33:6
**sides** [3] - 14:18, 15:9, 15:12
**sign** [2] - 35:12, 35:13
**simply** [3] - 19:10, 23:18, 30:23
**single** [2] - 22:17, 23:24
**sit** [1] - 12:24
**sitting** [1] - 38:12
**situation** [6] - 15:10, 15:20, 15:22, 22:22, 31:8, 32:16
**situations** [1] - 14:14
**socially** [1] - 22:5
**sole** [1] - 21:17
**someone** [4] - 9:8, 9:18, 9:22, 39:25
**sometimes** [2] - 14:12, 14:13
**somewhat** [3] - 10:10, 12:4, 27:15
**sooner** [2] - 3:25, 9:19
**sorry** [3] - 5:1, 7:14, 17:19
**sort** [8] - 7:23, 9:11, 15:6, 15:25, 16:5, 23:19, 30:2, 30:15
**sounded** [1] - 29:13
**SOUTH** [1] - 2:5
**special** [1] - 3:7
**SPECIAL** [1] - 2:16
**specific** [2] - 20:18
**sponsor** [3] - 12:22, 23:25, 26:7
**squabbling** [1] - 12:23
**squandered** [1] - 12:16
**staff** [2] - 22:18
**stakeholders** [1] - 17:22
**start** [2] - 3:18, 4:15
**statement** [2] - 7:7, 9:21
**statements** [2] - 12:20, 37:1
**STATES** [2] - 1:1, 41:7
**STATION** [1] - 2:12
**stations** [1] - 15:23
**statistics** [1] - 12:2
**status** [8] - 3:13, 5:25, 10:3, 36:12, 38:6, 38:15, 39:23, 40:4
**STATUS** [1] - 1:17
**stay** [3] - 7:6, 15:5, 23:18
**STENOGRAPHICALLY** [1] - 41:3
**stepped** [2] - 12:6, 35:2
**steps** [3] - 29:7, 29:11, 33:24
**still** [4] - 3:20, 4:17, 4:24, 22:3
**stopped** [1] - 13:1
**stops** [1] - 30:21
**straightforward** [1] - 19:13
**STREET** [1] - 1:24
**strides** [1] - 22:2
**stronger** [1] - 14:22
**subject** [4] - 10:19, 12:14, 15:24, 25:4

submissions [1] - 38:17
submit [6] - 13:9, 13:18, 30:9, 36:4, 38:18, 39:13
submitted [6] - 4:6, 17:13, 19:19, 26:11, 26:12, 28:7
subsequently [1] - 12:15
substantial [1] - 29:17
success [1] - 12:11
successful [1] - 37:7
successfully [1] - 34:3
suggested [2] - 10:15, 27:11
suitable [5] - 12:22, 16:7, 24:16, 24:18, 26:7
SUITE [1] - 1:24
summarize [1] - 38:4
summation [1] - 28:24
supply [1] - 6:24
support [1] - 35:13
supports [1] - 36:5
surge [1] - 11:24
surround [1] - 20:16
surrounding [1] - 11:25
susceptible [1] - 34:16
suspect [1] - 14:10

**T**

tabs [1] - 11:25
talks [1] - 30:14
TELECONFERENCE [1] - 1:16
telephone [1] - 40:6
TELEPHONICALLY [1] - 2:3
terms [10] - 10:13, 13:23, 15:1, 18:13, 19:2, 32:18, 34:2, 34:9, 35:5, 35:16
tested [1] - 12:7
testing [3] - 22:6, 22:7, 22:9
tests [3] - 11:5, 11:6, 11:15
Texas [3] - 11:25, 20:2, 22:11
THAT [1] - 41:2
THE [61] - 2:3, 2:9, 3:3, 3:11, 4:14, 4:25, 5:2, 5:20, 7:2, 7:12, 7:21, 8:4, 8:8, 9:3, 10:1, 10:6, 10:18, 11:14, 11:20, 13:21, 16:22, 17:4, 17:12, 17:19, 17:23, 19:15, 20:23, 23:4, 23:14, 24:20, 25:6, 25:18, 25:23, 26:15, 27:7, 28:2, 28:20, 28:22, 29:23, 30:19, 31:15, 32:9, 32:13, 33:10, 33:13, 34:14, 35:25, 36:8, 37:14, 37:19, 37:24, 38:2, 38:20, 38:24, 40:10, 41:2, 41:3, 41:4, 41:6, 41:7
themselves [3] - 18:9, 23:20, 24:9
third [1] - 31:11
THIS [1] - 41:5
three [7] - 17:21, 19:6, 19:24, 29:19, 31:1, 31:9, 35:1
timely [1] - 28:9
Title [6] - 4:10, 4:18, 4:23, 4:24, 5:9, 6:16
today [3] - 3:12, 7:18, 29:5
together [5] - 17:5, 21:14, 22:25, 24:11,

25:3
toothbrushes [1] - 34:11
top [1] - 14:23
totally [1] - 18:1
tracks [1] - 14:15
TRANSCRIPT [3] - 1:16, 41:3, 41:5
transfer [1] - 9:1
treatment [1] - 6:21
tried [1] - 22:20
true [1] - 31:21
TRUE [1] - 41:2
try [2] - 29:21, 39:20
trying [1] - 24:25
turning [1] - 31:6
two [7] - 3:9, 14:15, 18:15, 28:12, 31:3, 31:7, 35:1
type [1] - 6:18

**U**

U.S [1] - 1:23
unaccompanied [2] - 6:6, 29:9
uncover [1] - 6:25
undeniably [1] - 12:11
under [12] - 4:12, 5:10, 5:15, 8:6, 19:1, 23:22, 24:2, 24:13, 32:18, 33:25, 35:11, 35:14
undergoing [1] - 13:20
underlying [1] - 6:4
understood [5] - 5:7, 8:7, 10:5, 28:21, 36:7
underway [1] - 4:24
undetermined [1] - 31:24
unduly [1] - 33:8
unenforceable [1] - 13:23
unfortunately [1] - 31:16
unilateral [1] - 15:9
unilaterally [1] - 18:7
UNITED [2] - 1:1, 41:7
unless [3] - 7:12, 9:15, 29:23
unnecessary [3] - 9:25, 16:2, 39:15
unquestionably [1] - 33:21
unreasonable [1] - 34:24
unsafe [2] - 20:12, 20:14
unsanitary [1] - 20:14
unwilling [1] - 31:18
up [10] - 3:22, 5:19, 6:18, 10:23, 12:6, 14:17, 15:18, 17:14, 18:21, 39:20
update [1] - 3:19
US [1] - 2:10
uses [1] - 24:13

**V**

vacillated [1] - 31:12
Valley [1] - 15:23
various [2] - 26:11, 28:25
versus [1] - 6:6
vet [1] - 35:11

vetted [1] - 19:5
via [1] - 23:10
vice [3] - 19:19, 38:18, 38:20
video [2] - 40:6, 40:7
violation [2] - 14:6, 19:13
violations [1] - 14:19
voluntarily [3] - 13:13, 30:9, 30:20
voluntary [1] - 20:21
Vs [1] - 1:8
vulnerabilities [1] - 12:19

**W**

wait [1] - 15:2
waiting [3] - 15:25, 16:1, 38:12
waiver [1] - 13:12
wants [5] - 6:8, 6:19, 19:12, 35:7, 35:17
WASHINGTON [1] - 2:13
waste [3] - 29:17, 30:6, 30:16
wear [1] - 22:5
Website [1] - 12:1
week [4] - 9:9, 37:10, 37:21, 37:22
weeks [1] - 30:1
welcome [1] - 29:6
WEST [1] - 1:24
West [1] - 32:7
whole [2] - 10:2, 20:6
wide [1] - 29:12
Wild [1] - 32:7
William [1] - 3:4
WILLIAM [2] - 1:10, 2:10
willing [3] - 30:1, 30:20, 36:25
Wise [2] - 3:8, 38:25
wise [3] - 11:12, 11:16, 12:5
WISE [1] - 2:16
wish [3] - 16:7, 28:24, 39:12
wishes [2] - 29:8, 29:10
WITH [1] - 41:6
wonder [1] - 29:3
wondering [3] - 29:5, 29:12, 29:20
works [1] - 14:5
worth [1] - 30:13
writing [4] - 21:11, 23:3, 28:11, 30:23
written [3] - 21:5, 28:15, 39:19
wrote [1] - 26:15

**Y**

years [4] - 15:14, 21:18, 31:16
yesterday [2] - 18:3, 18:4
yielded [1] - 12:10
yourself [1] - 40:1