# EXHIBIT A

**DECLARATION OF KARLA MARISOL VARGAS, SENIOR STAFF ATTORNEY,
RACIAL AND ECONOMIC JUSTICE PROGRAM, TEXAS CIVIL RIGHTS PROJECT**

I, Karla Marisol Vargas, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that

the following is true and correct.  If called as a witness, I could and would testify as follows.

1.      I am an attorney licensed to practice law in Texas. Since November 2018, I have been

employed at the Texas Civil Rights Project ("TCRP") as a senior staff attorney in its Racial and

Economic Justice Program. As part of my employment, I engage in the direct representation of

noncitizen children and supervise attorneys and other staff at TCRP who represent immigrants,

including children, whose civil rights have been violated.

2.      I have been practicing law since 2011. I focus my practice on civil rights law, with a focus

on immigrants and the violation of the rights of children. Prior to joining TCRP, I worked as an

attorney at various Texas nonprofits, including the Refugee and Immigrant Center for Education

and Legal Services ("RAICES") where I represented individuals, including children, in

affirmative and defensive requests for immigration relief.

**TCRP's Mission and Scope**

3.      TCRP is a nonprofit legal and advocacy civil organization with offices throughout Texas.

TCRP believes that legal advocacy and litigation are critical tools to protect and advance the civil

rights of everyone in Texas, particularly our State's most vulnerable populations, and to effect

positive and lasting change to law and policy. We believe that by serving the rising social justice

movement in Texas with excellent legal representation and bold strategies, we can respond to the

needs of the communities we serve.

4.      For thirty years, TCRP has been dedicated to upholding the human and civil rights of all

persons in Texas. The Racial and Economic Justice Program routinely represents immigrant and

asylum-seeking families and unaccompanied children.

5.      A central part of TCRP's mission is providing free consultations and legal services to immigrant families and unaccompanied children detained in the Rio Grande Valley in South Texas. Until recently, this work has involved assisting families who were separated under the Zero Tolerance Policy, representing immigrant families and unaccompanied children who have been harmed while held in federal immigration detention, and, when necessary, representing separated families throughout the process of obtaining medical care in detention and family reunification.

6.      TCRP also represents immigrant children in other settings, such as in connection with complaints to the Office of Civil Rights and Civil Liberties regarding their treatment in detention and, when necessary, representing them throughout the process of obtaining relief from the federal government for violations of their rights in detention.

7.      In addition to our legal team, TCRP leverages its expertise by working directly with pro bono attorneys on many cases to ensure that unaccompanied children and immigrant families have access to representation. In the last year, TCRP has assisted over one hundred immigrant families by securing pro bono representation in their asylum and related immigration proceedings.

8.      In addition to free legal services, TCRP also advocates for its clients outside of the courts. Through advocacy, education, and outreach, TCRP aims to ensure the safety and fairness of the immigration and asylum system. TCRP often conducts "Know-Your-Rights" presentations for immigrants and their families and engages in research and fact finding related to the systemic rights violations that deny families and children the right to safely apply for asylum in the United States.

9.      In the last two years, more than half of my legal cases have been on behalf of immigrants and their families, including unaccompanied children whose rights have been violated.

10.     Our goal in all our work on behalf of immigrants is to ensure that every person has a fair opportunity to establish their eligibility for protection and ensure no one is wrongfully removed to a place where they may face persecution or torture. Reaching and effectively representing unaccompanied children is essential to our mission of ensuring that they have a chance to fully develop and present their claims.

**Our Work Defending Children Facing Expulsion under Title 42**

11.     On March 26, 2020, the Centers for Disease Control and Prevention ("CDC") issued an order citing the public health provisions of Title 42 of the U.S. Code "to suspend the introduction of all individuals seeking to enter the U.S. without proper travel documentation"[1] across the northern and southern borders. The CDC has since extended the order indefinitely.

12.     Since this order was issued, the Department of Homeland Security ("DHS") and its subcomponents Customs and Border Protection ("CBP") and U.S. Immigration and Customs Enforcement ("ICE") have held unaccompanied children who cross the southern border in hotels.

13.     As part of our work to protect the rights of unaccompanied children, TCRP is currently counsel for G.Y.J.P., an unaccompanied minor who was expelled to El Salvador under this practice, in the lawsuit captioned *G.Y.J.P. v. Wolf, et al.*, 1:20-CV-01511-TNM, in the District of Columbia.

14.     In the few instances where TCRP has learned of a child being held for expulsion under Title 42, it has only been because the child has a family member in the United States who contacts us for help. These family members reach out to us as they desperately attempt to find their children. Having not heard from their children in days or weeks, they fear whether their children are even alive. Although these children are in DHS custody, DHS provides no notice to the

_____

[1] 85 FR at 16,563; *see* 42 C.F.R. § 71.40(a).

children's families that it has their children. In the few cases where DHS did notify the families of their children's apprehension, DHS provided no information about the child's location and did not allow the child to speak with their family. DHS has simply informed the family that their child would be removed, even when the child has directly stated to DHS that they would be killed if returned to their country. DHS has ignored family's pleas to not remove children and has summarily placed the children in Title 42 proceedings.

15.     The families that have reached out to TCRP are desperate and terrified, especially after having been informed their children would be removed. In some instances, the families have noted clear and visible medical concerns that were ignored by DHS, who still removed the children while in need of medical attention. The burden has fallen on the families to find their children and find legal support to ensure their children's rights are protected.

16.     Whenever we have identified a child in the United States who we have reason to believe is being held subject to Title 42, we have advocated with DHS and the Department of Justice ("DOJ") on their behalf in a number of ways, always racing against the clock to try to get to the children before they are expelled.

17.     In some cases, we either contacted counsel for CBP in the Rio Grande Valley Sector, requesting that the child be removed from Title 42 or filed a Temporary Restraining Order on their behalf. In other cases, we have asked the American Civil Liberties Union ("ACLU") to contact DOJ attorneys requesting the same. In all of the cases that we have been involved with, it has been DHS—not CDC—that has made the determinations about whether to classify the children as Title 42 or reclassify children from Title 42 to Title 8. We are not aware of any role that the CDC has played in cases involving Title 42 children.

18.     In one recent case, we advocated on behalf of three Guatemalan children who were about to be expelled. The children's mother contacted TCRP in a desperate attempt to prevent the removal of her children back to harm's way. The mother was in distress and terrified for her children. She despaired over not knowing what the fate of her children would be, where they were, if they were appropriately cared for, and over the trauma that she knew her children were experiencing.

19.     These three children fled their home country and, upon apprehension by DHS, were immediately facing expulsion. The children were shuffled between CBP processing centers and hotels, further confusing and terrifying the children. We contacted officials within DOJ and DHS, who agreed to process these three siblings under Title 8. We were able to prevent this expulsion, we were told, on the day these children were scheduled to be expelled. As in previous cases, we were not aware of any involvement by any CDC personnel in this entire process; it was handled by DHS and DOJ officials.

20.     In another recent case, we worked on behalf of a Honduran teenager who was trafficked and raped for months during her attempt to seek safety in the United States. The months of sexual trafficking resulted in a pregnancy, for which the child requires medical attention.  Despite her ordeal and her eligibility for relief under U.S. law, she was about to be expelled when we became involved in her case. Upon apprehension, the child was placed in a CBP processing center and DHS notified the child's mother that she was in their custody, but did not.  allow the child to speak with her mother. The mother was distraught and wanted to speak with her child, as she had not heard from her daughter throughout the months the child was trafficked. The call from DHS was the first time the mother heard that her child was still alive. Despite the mother's pleas, DHS planned to summarily remove this child. We were able to advocate with DHS and DOJ officials

5

on the child's behalf and prevent her imminent expulsion. However, the trauma the child endured as a trafficking victim was compounded by DHS's treatment of the child and her placement in Title 42 proceedings. The child's mother notes that her child is experiencing severe trauma and has lost her ability to speak.

21.    In the last two weeks, we have received an increasing number of requests for assistance with Title 42 cases from immigration attorneys and service providers in South Texas. Some days, we receive more than one request per day. In every instance, we ask the ACLU to contact the DOJ attorneys, and at the same time we contact DHS officials, usually counsel for CBP and ICE, and request that the child or children not be expelled under Title 42 and instead be processed under Title 8 and sent to ORR.

22.    On July 23, 2020, TCRP attorneys sought to offer free legal services to children who DHS was holding at the Hampton Inn Hotel in McAllen, Texas. Unidentified men, who appeared to be contractors of DHS, refused to permit TCRP attorneys to offer any legal services to these children. In one instance, after a TCRP attorney attempted to offer legal representation to the children, these men shoved and removed a TCRP attorney using force. These men did not wear any identification and refused to identify themselves, ignoring repeated requests and thwarting TCRP's ability to identify those individuals who are responsible for guarding the children in their custody.

23.    Because TCRP was not allowed to directly offer legal services to the children, we were forced to stand on the sidewalk outside of the hotel and hold up a banner with a hotline. Our understanding is that the children are not permitted to make phone calls other than those authorized to relatives by DHS; indeed, no unaccompanied child has contacted us since we began holding up these banners outside the hotel.

24.     There is no way for us to know with certainty whether the Hampton Inn is the only unlicensed, non-official site in the Rio Grande Valley Sector in which DHS is holding children prior to expulsion. Additionally, there is no way to know whether DHS will transfer a child to another site before expelling the child. We have reason to believe that children are being held under Title 42 at other undisclosed sites in McAllen. We do know, however, that there are thousands of empty state-licensed beds available through the ORR network. The result is that, even if TCRP is able to contact a child, it is uncertain whether TCRP will be able to continue to know the location of the child or accurately be able to report that location to a family member.

25.     Our experience suggests that it will be virtually impossible for TCRP to identify most children prior to their removal under Title 42—even children who have family in the United States and face severe risk of harm in their countries of origin.

26.     DHS's decision to hold children in hotels under Title 42 and deny attorneys access to the hotel thwarts the children's ability to raise their asylum and protection claims and denies them the protections that the Flores Settlement Agreement affords. Again, based on TCRP's understanding, this Title 42 decision is entirely within the purview of DHS and CDC plays no rule in this decision-making.

27.     The harm that children experience under this Title 42 process is profound and multi-faceted.  Amongst other things, children are being denied their right to licensed placements under *Flores*, the ability to be located by their family through the immigration detention tracker, access to attorneys, and the ability to apply for asylum.  The far-reaching and potentially life altering implications of this harm cannot be overstated.

Karla Marisol Vargas
Executed this 13th day of August 2020