# EXHIBIT B

## DECLARATION OF MARIA ODOM

1.      I, Maria Odom, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct. If called as a witness, I could and would testify as follows.

2.      I am an attorney licensed to practice law in the State of Georgia. Since 2017, I have been Vice President for Legal Programs (formerly named Legal Services) at Kids in Need of Defense (KIND). I previously served as the U.S. Department of Homeland Security (DHS) Citizenship and Immigration Services Ombudsman (2012-2017), as Executive Director of the national legal services organization Catholic Legal Immigration Network, Inc. (CLINIC) (2009-2012), and as an immigration attorney in private practice.

3.      In my role, I lead KIND's Legal Programs Team, comprising approximately 203 attorneys, social service professionals, and support staff across KIND's Headquarters and ten field offices.

**About KIND**

4.      Kids in Need of Defense (KIND) is a national non-profit organization, founded in 2008 by the Microsoft Corporation and UNHCR Special Envoy Angelina Jolie, to provide free legal services to refugee and immigrant children who arrive in the United States unaccompanied by a parent or legal guardian, and face removal proceedings in Immigration Court.

5.      KIND is headquartered in Washington, D.C., and serves children through its ten field offices, located throughout the country in Atlanta, GA; Baltimore, MD; Boston, MA; Houston, TX; Los Angeles, CA; New York, NY; Newark, NJ; San Francisco and Fresno, CA; Seattle, WA; and Washington, DC and Northern Virginia, and through additional staff in El Paso, TX and San Diego, CA. These field offices serve children through a combination of direct representation and the recruiting, training, and mentoring of pro bono counsel.

6.      Since 2009, KIND has received referrals for more than 20,400 children from 74 countries, and has trained and mentored pro bono attorneys at more than 660 law firms, corporate legal departments, law schools, and bar associations. In 2019, 2,643 children were referred to KIND for legal services.

7.      KIND's services include conducting screenings and know-your-rights presentations to unaccompanied children in government custody; educating parents and sponsors of unaccompanied children on the children's legal rights and obligations with respect to their removal proceedings; providing direct representation of children in their immigration-related proceedings, including in immigration court and before federal and state agencies; and connecting immigrant children with pro bono lawyers for representation in immigration-related matters.

8.      It is central to KIND's mission to ensure children's access to the full measure of substantive and procedural protections that the law affords. KIND also advocates for laws, policies, and practices to enhance protections for unaccompanied immigrant children in the United States, and is working to build a stronger regional protection framework throughout Central America and Mexico. KIND educates policymakers, the media, and the broader public about the violence and persecution that drive children to migrate and seek safety in the United States, and about their needs for legal protection.

9.      Many children served by KIND and its partners have endured serious harms, and many request and receive protection under United States law. When KIND staff identify a child as potentially eligible for lawful immigration status or other relief from removal, the child may be matched with a free attorney on KIND's staff or with pro bono counsel to assist in preparing a request for such status or relief to the appropriate adjudicator(s).

10.    A growing share of KIND's cases involve representation of unaccompanied children held in the custody of the Department of Health and Human Services (HHS) Office of Refugee Resettlement (ORR). As a subcontractor to ORR, KIND provides know-your-rights presentations and legal representation to children in detention, long-term foster care, and other custodial programs through our Seattle, Houston, San Francisco, New York, and Boston offices. For example, since beginning a detained program at the Cayuga Centers in the Bronx, New York in 2019, KIND has served over 465 children there.

11.    In 2019, KIND expanded its legal and advocacy work in Mexico and along the U.S.-Mexico border. We work closely with Mexican child welfare agencies on cases of vulnerable unaccompanied children in their custody. KIND provides training to a number of Mexican stakeholders on U.S. legal protections and custody protocols for unaccompanied children. We have provided legal orientations to children in Mexico who have subsequently presented at a U.S. port of entry seeking asylum. KIND tracks these cases and, after children are released from ORR shelters, we either represent the children in their immigration cases or refer them to legal service providers in the areas where they go to live, if outside our service areas. In exceptional cases—where a child we meet in Mexico has significant medical needs or is particularly vulnerable—we coordinate with the U.S. government to ensure the child receives appropriate services in U.S. custody.

**Title 42 Expulsions Raise Profound Concerns**

12.    In March 2020, the Centers for Disease Control and Prevention (CDC) issued an interim final rule and a related order[1] invoking, for the first time, decades-old public health

---

[1] Centers for Disease Control and Prevention, *Control of Communicable Diseases; Foreign Quarantine, Suspension of Introduction of Persons into the United States from Designated*

authorities and purporting to direct U.S. Customs and Border Protection (CBP) to expel nearly all asylum seekers who reach the U.S.-Mexico border, purportedly to avoid "introduction" of the pandemic infectious disease Covid-19.

13.    KIND has articulated its objections to this Title 42 Process in a number of public statements, including a comment letter on the CDC interim final rule and a statement for the record for a Senate oversight hearing.[2] We have noted that, "by stripping children of vital legal protections and any meaningful opportunity to seek humanitarian relief before being returned," the CDC order, and CBP's implementation of it, expose children to "a heightened risk of human trafficking and persecution," in contravention of the 2008 Trafficking Victims Protection Reauthorization Act (TVPRA).[3]

14.    KIND works with children involved in the Title 42 process in multiple ways. The two most immediate effects of the Title 42 process concern our ORR detention work, and our work along the U.S. southern border and with children who have been deported or expelled to Central America.

---

*Foreign Countries or Places for Public Health Purposes*, 85 Fed. Reg. 16559 (Mar. 24, 2020); Centers for Disease Control and Prevention, *Notice of Order Under Sections 362 and 365 of the Public Health Service Suspending Introduction of Certain persons From Countries Where a Communicable Disease Exists*, 85 Fed. Reg. 17060 (Mar. 26, 2020).

[2] Letter to Kyle McGowan, Re: CDC-2020-033, Control of Communicable Diseases, etc., RIN 0920-AA76 (April 23, 2020), *available at* https://supportkind.org/wp-content/uploads/2020/04/CDCRuleFinal_4.23.20.pdf; Statement for the Record by Kids in Need of Defense (KIND), "CBP Oversight: Examining the Evolving Challenges Facing the Agency," Senate Committee on Homeland Security and Governmental Affairs (June 25, 2020), *available at* https://supportkind.org/wp-content/uploads/2020/06/KINDs-Statement-for-the-Record-June-25-2020.pdf and attached hereto as Attachment A.

[3] Statement for the Record, Attachment A, at 1.

4

15.     KIND's programs at ORR shelter facilities have received very few new clients since the order went into effect, as the shelter facilities have largely ceased receiving new asylum-seeking children from the border. According to ORR data, the average number of UACs referred to ORR in fiscal year 2020 has plummeted from 60-80 per day from October 2019 through March 2020, to just 2 per day in April, 1 per day in May, and 2 per day in June.[4]

16.     Ordinarily, those children would be referred to the custody of ORR, where they would be placed into regular removal proceedings before an immigration judge. KIND, along with other organizations and lawyers, would then represent the children in their immigration-related matters and help them seek humanitarian protection in the United States. Because children in the Title 42 process never reach ORR they can never access these services.

**KIND's Work with Children in the Title 42 Process**

17.     Since the Title 42 Process began, the nature of our work with unaccompanied children in the United States has changed fundamentally. Because the vast majority of children subject to the Title 42 Process never reach ORR custody, we only hear of those rare cases where a parent or relative in the United States learns that a child has been detained and will be returned to the home country and is independently able to seek help in time. Even then, the parent or relative is not always informed about the risk that their child will be rapidly expelled, and, unlike in ORR, neither children nor their parents are provided with information about how to seek help or resources for legal assistance.

18.      Sometimes a parent or relative reaches out to lawyers they know, and those lawyers refer the relatives to us. In other instances, desperate parents have called KIND's main

---

[4] HHS, Latest UAC Data – FY2020, *at* https://www.hhs.gov/programs/social-services/unaccompanied-alien-children/latest-uac-data-fy2020/index.html (last visited July 23, 2020).

phone number. In some other cases, other non-profit organizations become aware of the cases

and have reached out to KIND for support. Due to the speed of the expulsions, and the secrecy

concerning where the children are held, by the time we hear of the child's case, in some

instances the child has already been deported before we can intervene. In one case, a girl who

had fled her country after being attacked and raped was expelled from the United States, where

she was seeking safety, before KIND could locate her.

19.     For the first months the Title 42 Process was in operation, we heard of no children

who were in the course of a Title 42 expulsion while they were still in the United States. But in a

number of recent instances, we have managed to have contact with the child's family while the

child is still in the country. In almost every case, our intervention has succeeded in officials re-

processing the children under Title 8, rather than Title 42, meaning that the child is transferred to

ORR custody instead of being placed on a flight for removal.

20.     In each of these cases, our communication has been with the immigration

agencies CBP and/or U.S. Immigration and Customs Enforcement (ICE). To the best of KIND's

knowledge and belief, these classification and reclassifications decisions are made by DHS. In

fact, we are not aware of CDC's direct involvement in making any custodial decision concerning

a child in the Title 42 process, or any decision to take a specific child out of the Title 42 process

and put them into regular Title 8 removal proceedings. As far as we can tell, the entire process is

administered and operated by DHS, and DHS officers are the ones we interface with when we

advocate for children in the Title 42 process.

21.     When KIND first hears of a child facing expulsion, typically via a family member

who has been able to communicate with the child by phone, our first step is to attempt to gather

basic information about the child and the child's whereabouts. It has been extremely difficult to

6

locate children in government custody in many instances. After gathering preliminary information from a family member or other contact, a KIND attorney then coordinates the signing of a DHS G-28, Notice of Entry of Appearance as Attorney or Accredited Representative form, on behalf of the child via their parent or family member. The KIND attorney then emails the Notice of Appearance to contacts at CBP and ICE, putting DHS on notice that the child is an unaccompanied minor and should be subject to protections afforded under the TVPRA, and contacts DHS to try to verify the child's location.

22.     Children processed under Title 42 are not provided with an "Alien Registration Number," or "A-number," which makes them more difficult to locate and track throughout the system. Instead, they are provided with a "Subject ID" number. On the Notice of Appearance form, and in communications with ICE and CBP, for example, the attorney sends the child's name and date of birth, but locating the child quickly would likely be a more streamlined process in these fast-moving cases if unique A-numbers were assigned.

23.     The KIND attorney will also contact other DHS points of contact, depending on the child's suspected geographic location. For example, in the Harlingen, Texas sector, we work with CBP, which will reprocess our clients under Title 8, while in Arizona, we contact CBP as well as ICE, as the children have often been transferred to ICE for expulsion under Title 42 and are transferred back to CBP to be reprocessed under Title 8. These contacts may involve repeated emails and telephone calls to CBP facilities and our known points of contact in CBP and ICE.

24.     In one such case, on July 23, a KIND attorney emailed a Deportation Officer in charge of juveniles in the ICE Phoenix Field Office. The Deportation Officer replied to the message confirming that the child "will be placed in title 8 proceedings and placed in ORR care as soon as his case is reprocessed." A redacted copy of this email correspondence is attached to

this Declaration as Attachment B. This correspondence demonstrates that it is ICE and CBP, not

CDC, making decisions as to how a child will be processed.

      25.     In addition to contacting DHS officials, KIND may work with other attorneys

litigating issues involving Title 42; those attorneys have, in some cases, flagged our clients'

cases for the government.

      26.     In the approximately nineteen cases in which KIND became aware of a child

facing Title 42 expulsion and intervened by taking the steps outlined above, DHS moved the

children to Title 8 processing and the children were transferred to ORR custody. In one case,

KIND found out about a child too late and the child had already been expelled on a flight earlier

in the day that KIND contacted the government.

      27.     Even though we have achieved limited success in these cases, the operation of the

Title 42 Process prevents us from reaching the vast majority of children subject to it. The secrecy

around the process prevents meaningful access to a lawyer: children have reported to KIND

attorneys that while they were held in hotels or other unlicensed placements subject to Title 42,

they were not told that they had a right to speak to a lawyer. Until recently, there was very little

public information concerning where DHS was holding children, meaning that lawyers did not

even know where to go to offer their services. News stories published only in the past few weeks

and the *Flores* Monitor's report revealed that unaccompanied children were being held in hotels

in different cities along or near the U.S.-Mexico border.[5] In some cases that KIND was involved

with, children were in DHS custody for approximately eight days, but we understand from these

reports that other children are held in motels for weeks.

---

[5] *E.g.*, Nomaan Merchant, Associated Press, "Migrant kids held in US hotels, then expelled"
(July 22, 2020), *available at* https://apnews.com/c9b671b206060f2e9654f0a4eaeb6388 (last
visited July 23, 2020).

28.    If KIND were able to access children currently being detained in motels or DHS processing stations, attorneys from our and other organizations could screen them for relief and conduct the advocacy and representation that I describe above, including advocating for the children to be taken out of the Title 42 process, reclassified as Title 8, and sent to ORR. After the children are sent to ORR custody, provided they were sent to the facilities we staff, we would then either represent the children themselves in their immigration matters, or secure them other pro bono or legal services lawyers who could represent them. But if children are deported or moved to other unknown locations, it is essentially impossible for us to provide them with legal services.

**Prolonged Hotel Detention is Inappropriate**

29.    It is particularly striking that these children we could be serving are being detained in motels, given the current availability of over 10,000 state licensed beds within the ORR network.

30.    As Congress recognized in assigning custody of unaccompanied children to ORR rather than DHS, highly vulnerable children traveling alone should be placed in licensed care facilities, not at motels under the watch of government contractors, who likely have little to no expertise or training in child welfare. This situation carries high risks that a child could be harmed, and there is no apparent oversight to ensure that will not happen. Moreover, remaining in a motel or processing station with contractors could be highly traumatizing to children who have fled dangerous conditions in their countries of origin.

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge and belief.


Dated: August 13, 2020

Maria M. Odom, Esq.

# ATTACHMENT A



**Statement for the Record by Kids in Need of Defense (KIND)**

**"CBP Oversight: Examining the Evolving Challenges Facing the Agency"**

**Senate Committee on Homeland Security and Governmental Affairs**

**June 25, 2020**

Kids in Need of Defense (KIND) is the leading national organization working to ensure that no child faces immigration court alone. KIND was founded by the Microsoft Corporation and the United Nations Refugee Agency (UNHCR) Special Envoy Angelina Jolie. We have served more than 20,000 unaccompanied children in removal proceedings, trained over 50,000 attendees on the pro bono representation of these children, and formed pro bono partnerships with more than 650 corporations, law firms, law schools, and bar associations. KIND also helps children who are returning to their home countries to do so safely and to reintegrate into their home communities. In addition, we seek to change law and policy to improve the protection of unaccompanied children in the United States and to build a stronger regional protection framework throughout Central America and Mexico.

KIND strongly opposes the Department of Homeland Security (DHS)'s illegal expulsions of unaccompanied children and Customs and Border Protection (CBP)'s role in implementing them. Under indefinite Centers for Disease Control and Prevention (CDC) and DHS entry restrictions, DHS has summarily returned to Mexico and Central America over 2,000 unaccompanied children who arrived at the U.S. southern border.[1] These expulsions violate the bipartisan Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA)[2] by stripping children of vital legal protections and any meaningful opportunity to seek humanitarian relief before being returned. As a consequence, expelled children face a heightened risk of human trafficking and persecution— precisely the outcomes that the TVPRA was intended to prevent. Though DHS has used the COVID-19 pandemic as a pretext for its actions, medical experts have made clear that this policy lacks a valid public health rationale and that the U.S. government is fully capable of upholding our laws and humanitarian values while also protecting public health and safety.[3]

By helping carry out these expulsions, CBP bears direct responsibility for contravening the TVPRA. Under the Act, the U.S. government must screen unaccompanied children to determine whether they are at risk of trafficking or fear return to their home countries. The TVPRA further requires that DHS transfer unaccompanied children from noncontiguous countries, as well as unaccompanied children from contiguous countries who are at risk of trafficking, fear return, or are unable to make an independent decision about withdrawing their application for admission, into ORR care and custody and place them into full immigration court proceedings.  Yet CBP is flouting these requirements by summarily returning children to their country of origin or pushing

---

[1] *See, e.g.*, Lauren Villagran, "Despite coronavirus, children are still arriving at the border. They're being turned away" El Paso Times (Jun. 10, 2020); https://www.elpasotimes.com/story/news/2020/06/10/border-patrol-rejects-migrant-children-cdc-authority-covid-19/5274691002/.
[2] P.L. 110-457.
[3] Priscilla Alvarez, "Health experts slam Trump administration's use of public health law to close border" CNN (May 18, 2020); https://www.cnn.com/2020/05/18/politics/border-closure-public-health/index.html.

them back into Mexico without any consideration of their safety. In fact, of the more than 1,000 unaccompanied children encountered by DHS at the U.S. southern border in May, only 39 were referred to ORR.[4]

CBP's disregard for these statutory protections is squarely linked to the enhanced danger—not least of human trafficking—to which arriving unaccompanied are now exposed. By omitting screenings of these children for trafficking concerns, for instance, CBP fails to observe and respond to any evidence that they were trafficked into the United States for commercial sex or forced labor or would be returned into trafficking situations if expelled. Moreover, because CBP has refused to apply the legal definition of "unaccompanied alien child" provided for in the Homeland Security Act—as addressed in more detail below—it has incentivized the rapid return of children to Mexico together with unscreened adults who could pose a danger to them. Additionally, expelled children are not benefitting from the skilled and protective screenings performed by attorneys and social workers specially trained to identify protection needs among this vulnerable population. CBP's website states that it is "uniquely situated to deter and disrupt human trafficking,"[5] but the bureau's contributions to the expulsions of unaccompanied children makes clear that it has abdicated any such 'unique' position. Ultimately, CBP's defiance of Congress's anti-trafficking requirements does not deter or disrupt human traffickers at all—it emboldens them.

No less troubling, CBP has elected not to adopt a readily available measure that would shield unaccompanied children from these harmful expulsions. The CDC and DHS orders underlying expulsions limit entry at the U.S. southern border to "essential travel." Notably, however, the orders allow for exceptions when appropriate. DHS has already designated a host of traveler populations, including students and truck drivers, "essential" and thereby exempt from the entry restrictions, while also expressly authorizing CBP to designate additional populations in this manner.[6] Yet CBP has failed to deem unaccompanied children "essential." CBP's refusal to follow the TVPRA and exercise its authority to exempt unaccompanied children from expulsions is wrong and dangerous for children. The TVPRA, after all, reflects a bipartisan determination that unaccompanied children's often life-and-death pursuit of protection is so imperative as to warrant a unique array of due process safeguards. In the strongest terms, then, KIND rejects CBP's position that the safety of unaccompanied children is "non-essential."

Alarmingly, a leaked CBP memorandum guiding agents and officers' implementation of expulsions reveals that CBP has gone so far as to fashion the term "unaccompanied juvenile"—one that appears nowhere in relevant statute—in order to bypass the existing definition of an "unaccompanied alien child" in the Homeland Security Act of 2002 (HSA)[7] and the corresponding legal obligations in the HSA and the TVPRA. On an immediate level, this invented term facilitates DHS's expulsion of unaccompanied children under the pretext of returning family units. More

---

[4] Camilo Montoya-Galvez, "Just 39 unaccompanied migrant children avoided Trump's border expulsions in May" CBS News (Jul. 18, 2020); https://www.cbsnews.com/news/unaccompanied-migrant-children-trump-expulsion-border-policy/.

[5] Customs and Border Protection, "Human Trafficking" (Jan. 9, 2020); https://www.cbp.gov/border-security/human-trafficking.

[6] DHS Order, "Notification of Temporary Travel Restrictions Applicable to Land Ports of Entry and Ferries Service Between the United States and Mexico" (May 19, 2020); https://www.dhs.gov/sites/default/files/publications/20_0519_as1_frn_us-mexico-border.pdf.

[7] 6 U.S.C. 279(g)(2).

fundamentally, by seeking to administratively limit application of the "unaccompanied alien child" definition codified by the legislative branch, CBP is aiming to effectively extinguish bipartisan statutes core to the protection of unaccompanied children.

In view of these grave concerns, KIND calls upon CBP to: (1) exempt unaccompanied children from the CDC and DHS entry restrictions by declaring them "essential" and cease summary removals of children under the CDC order; and (2) fully conform to all TVPRA and HSA requirements by, among other actions, performing full protection screenings and making referrals to ORR as mandated under the TVPRA, and by adhering to the HSA's definition of "unaccompanied alien child." CBP, and DHS as a whole, can and should process children's protection claims in accordance with the law while still safeguarding the health of these children and of the public at large.

# ATTACHMENT B

| | |
|---|---|
| **From:** | |
| **To:** | Nicholas Stefaniak; ███████████ |
| **Cc:** | █████████████ █ ███████████████; Florence Chamberlin; Lisa Frydman |
| **Subject:** | Re: Imminent removal of an unaccompanied child |
| **Date:** | Thursday, July 23, 2020 3:28:58 PM |
| **Attachments:** | image003.png |

## [External Email]

This individual is no longer in US Border Patrol custody.

███████████████

Supervisory Border Patrol Agent
Tucson Coordination Center (TCA-HQ)
Office: ███████████
████████████@cbp.dhs.gov

---

**From:** Nicholas Stefaniak <nstefaniak@supportkind.org>
**Sent:** Thursday, July 23, 2020 3:21 PM
**To:** ████████ <████████@cbp.dhs.gov>
**Cc:** ██████████████ <████████████@CBP.DHS.gov>; ██████████████████
<███████████████@cbp.dhs.gov>; Florence Chamberlin <fchamberlin@supportkind.org>;
Lisa Frydman <lfrydman@supportkind.org>
**Subject:** Imminent removal of an unaccompanied child

> **CAUTION:** This email originated from outside of DHS. DO NOT click links or open attachments unless you
> recognize and/or trust the sender. Contact the CBP Security Operations Center with questions or concerns.

Hello,

 Attached is a G-28 for W███ M███ A███ , DOB ███/2002, from Guatemala. We believe he
crossed on 7/21/2020 through Tucson and was apprehended by CBP. I am authorized by his brother
to speak on his behalf.

 We are concerned about the imminent removal of this unaccompanied child, and as the attorney of
record, would like to find out how we can talk to the child in custody as soon as possible. We believe
that the child may have a fear of return to Guatemala, and he should be provided with a screening of
his claim under the Convention Against Torture. Please let us know if you need any more
information.

Thank you for your attention to this matter,
Nick Stefaniak

**Nick Stefaniak, Esq.**
Senior Attorney – Special Programs – Tijuana, Mexico *
Kids in Need of Defense (KIND)
1201 L Street NW, Floor 2
Washington, DC 20005
Phone: (202) 459-6142, ext. 1057

***Please note that I am working remotely.***

Skype: Nicholas Stefaniak

Email: nstefaniak@supportkind.org

www.supportkind.org

*Admitted to practice in Maryland only



***Confidentiality Notice:*** *The information contained in this email and any attachments is intended only for the recipient[s] listed above and may be privileged and confidential. Any dissemination, copying, or use of or reliance upon such information by or to anyone other than the recipient[s] listed above is prohibited. If you have received this message in error, please notify the sender immediately at the email address above and destroy any and all copies of this message.*

| | |
|---|---|
| **From:** | ███████ |
| **To:** | Nicholas Stefaniak; ███████ |
| **Cc:** | Florence Chamberlin; Lisa Frydman |
| **Subject:** | RE: Imminent removal of an unaccompanied child |
| **Date:** | Thursday, July 23, 2020 4:32:47 PM |
| **Attachments:** | image003.png |
| | image004.png |

## [External Email]

Good Afternoon, your client will be placed in title 8 proceedings and placed in ORR care as soon as his case is reprocessed.


Thank you,


███████████
Deportation Officer
Phoenix FOJC Unit
Phoenix Field Office
Cell: ███████
Office: ███████

---

**From:** Nicholas Stefaniak <nstefaniak@supportkind.org>
**Sent:** Thursday, July 23, 2020 4:30 PM
**To:** ███████ <███████@ice.dhs.gov>
**Cc:** Florence Chamberlin <fchamberlin@supportkind.org>; Lisa Frydman <lfrydman@supportkind.org>
**Subject:** RE: Imminent removal of an unaccompanied child

**CAUTION:** This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. Contact ICE SOC SPAM with questions or concerns.

Hello,
Regarding W███ M█████ A████, DOB ████/2002, Guatemala, I would also appreciate it if your office could confirm that he is being processed under Title 8, and that he will be sent to ORR custody.
Any information on this case would be appreciated.
Thank you for your attention to this matter,


**Nick Stefaniak, Esq.**
Senior Attorney – Special Programs – Tijuana, Mexico *
Kids in Need of Defense (KIND)
1201 L Street NW, Floor 2
Washington, DC 20005
Phone: (202) 459-6142, ext. 1057
*Please note that I am working remotely.*
Skype: Nicholas Stefaniak

Email: nstefaniak@supportkind.org
www.supportkind.org

*Admitted to practice in Maryland only*



**Confidentiality Notice:** *The information contained in this email and any attachments is intended only for the recipient[s] listed above and may be privileged and confidential. Any dissemination, copying, or use of or reliance upon such information by or to anyone other than the recipient[s] listed above is prohibited. If you have received this message in error, please notify the sender immediately at the email address above and destroy any and all copies of this message.*

---

**From:** Nicholas Stefaniak
**Sent:** Thursday, July 23, 2020 3:54 PM
**To:** ▮▮▮▮▮▮▮▮ @ice.dhs.gov
**Cc:** Florence Chamberlin <fchamberlin@supportkind.org>; Lisa Frydman <lfrydman@supportkind.org>
**Subject:** Imminent removal of an unaccompanied child

Hello,

  Attached is a G-28 for W▮▮ M▮▮ A▮▮, DOB ▮▮/2002, from Guatemala. We believe he crossed on 7/21/2020 through Tucson and was apprehended by CBP. I am authorized by his brother to speak on his behalf.

  I just spoke with a Deportation Officer who confirmed that W▮▮ was initially placed in Title 42 proceedings, but that he has requested W▮▮ be sent back to CBP to be reprocessed under Title 8 and sent to ORR.

  We are concerned about this child and would like to find out how we can talk to the child in custody as soon as possible.

  Please let us know if you need any more information.

Thank you for your attention to this matter,

Nick Stefaniak

**Nick Stefaniak, Esq.**
Senior Attorney – Special Programs – Tijuana, Mexico *
Kids in Need of Defense (KIND)
1201 L Street NW, Floor 2
Washington, DC 20005
Phone: (202) 459-6142, ext. 1057
***Please note that I am working remotely.***
Skype: Nicholas Stefaniak
Email: nstefaniak@supportkind.org
www.supportkind.org

*Admitted to practice in Maryland only*



*Confidentiality Notice:* *The information contained in this email and any attachments is intended only for the recipient[s] listed above and may be privileged and confidential. Any dissemination, copying, or use of or reliance upon such information by or to anyone other than the recipient[s] listed above is prohibited. If you have received this message in error, please notify the sender immediately at the email address above and destroy any and all copies of this message.*

| | |
|---|---|
| **From:** | ███████████ |
| **To:** | Nicholas Stefaniak |
| **Cc:** | ████████; ████████████ (OCC); ████ |
| **Subject:** | RE: Imminent removal of an unaccompanied child |
| **Date:** | Friday, July 24, 2020 10:18:18 AM |
| **Attachments:** | image003.png |
| | image005.png |

# [External Email]

We can confirm that M██████-A████ is being processed under Title 8 and will be referred to ORR.

No A# or shelter information is available at this time, however your client is available by telephone.

████████████

**Special Operations Supervisor**
**Tucson Sector Headquarters**
**Tucson Coordination Center**
████████████ **Desk**
**Cell**

**From:** Nicholas Stefaniak <nstefaniak@supportkind.org>
**Sent:** Friday, July 24, 2020 9:49 AM
**To:** ██████████ <████████████@CBP.DHS.GOV>; ████████ <████████@cbp.dhs.gov>
**Cc:** ██████████ <████████████@CBP.DHS.gov>; ████████████
<████████████@cbp.dhs.gov>; Florence Chamberlin <fchamberlin@supportkind.org>;
Lisa Frydman <lfrydman@supportkind.org>
**Subject:** RE: Imminent removal of an unaccompanied child

> **CAUTION:** This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. Contact the CBP Security Operations Center with questions or concerns.

Hello,

  I very much appreciate your prompt response and attention to this matter. I spoke with a Deportation Officer at ICE, Phoenix who informed me that my client - **W**████ **M██████-A██████**, **DOB** ████ **/2002 Guatemala** - will be returned to CBP for Title 8 processing.

  If your office could confirm that my client will be referred to ORR and processed through Title 8, I would be much appreciative. If he receives an A# and shelter destination, I would appreciate receiving that information in order to track processing more efficiently.

Please let me know if there is any additional information you need regarding this request.

Regards,

**Nick Stefaniak, Esq.**

Senior Attorney – Special Programs – Tijuana, Mexico *
Kids in Need of Defense (KIND)
1201 L Street NW, Floor 2
Washington, DC 20005
Phone: (202) 459-6142, ext. 1057
*Please note that I am working remotely.*
Skype: Nicholas Stefaniak
Email: nstefaniak@supportkind.org
www.supportkind.org

*Admitted to practice in Maryland only



*Confidentiality Notice: The information contained in this email and any attachments is intended only for the recipient[s] listed above and may be privileged and confidential. Any dissemination, copying, or use of or reliance upon such information by or to anyone other than the recipient[s] listed above is prohibited. If you have received this message in error, please notify the sender immediately at the email address above and destroy any and all copies of this message.*

**From:** ▮▮▮ <▮▮▮@CBP.DHS.GOV>
**Sent:** Thursday, July 23, 2020 3:29 PM
**To:** Nicholas Stefaniak <nstefaniak@supportkind.org>; ▮▮▮ <▮▮▮@cbp.dhs.gov>
**Cc:** ▮▮▮ <▮▮▮@CBP.DHS.GOV>; ▮▮▮
<▮▮▮@cbp.dhs.gov>; Florence Chamberlin <fchamberlin@supportkind.org>;
Lisa Frydman <lfrydman@supportkind.org>
**Subject:** Re: Imminent removal of an unaccompanied child

**[External Email]**

This individual is no longer in US Border Patrol custody.

▮▮▮
Supervisory Border Patrol Agent
Tucson Coordination Center (TCA-HQ)
Office: ▮▮▮
▮▮▮@cbp.dhs.gov

**From:** Nicholas Stefaniak <nstefaniak@supportkind.org>
**Sent:** Thursday, July 23, 2020 3:21 PM
**To:** ▮▮▮ <▮▮▮@cbp.dhs.gov>
**Cc:** ▮▮▮ <▮▮▮@CBP.DHS.GOV>; ▮▮▮
<▮▮▮@cbp.dhs.gov>; Florence Chamberlin <fchamberlin@supportkind.org>;
Lisa Frydman <lfrydman@supportkind.org>
**Subject:** Imminent removal of an unaccompanied child

**CAUTION:** This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. Contact the CBP Security Operations Center with questions or concerns.

Hello,

  Attached is a G-28 for W███ M████ A████, DOB ████/2002, from Guatemala. We believe he crossed on 7/21/2020 through Tucson and was apprehended by CBP. I am authorized by his brother to speak on his behalf.

  We are concerned about the imminent removal of this unaccompanied child, and as the attorney of record, would like to find out how we can talk to the child in custody as soon as possible. We believe that the child may have a fear of return to Guatemala, and he should be provided with a screening of his claim under the Convention Against Torture. Please let us know if you need any more information.

Thank you for your attention to this matter,

Nick Stefaniak

**Nick Stefaniak, Esq.**
Senior Attorney – Special Programs – Tijuana, Mexico *
Kids in Need of Defense (KIND)
1201 L Street NW, Floor 2
Washington, DC 20005
Phone: (202) 459-6142, ext. 1057
***Please note that I am working remotely.***
Skype: Nicholas Stefaniak
Email: nstefaniak@supportkind.org
www.supportkind.org

*Admitted to practice in Maryland only



**Confidentiality Notice:** *The information contained in this email and any attachments is intended only for the recipient[s] listed above and may be privileged and confidential. Any dissemination, copying, or use of or reliance upon such information by or to anyone other than the recipient[s] listed above is prohibited. If you have received this message in error, please notify the sender immediately at the email address above and destroy any and all copies of this message.*