ETHAN P. DAVIS
Acting Assistant Attorney General
Civil Division
AUGUST E. FLENTJE
Special Counsel to the Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director, District Court Section
Office of Immigration Litigation
SARAH B. FABIAN
NICOLE N. MURLEY
Senior Litigation Counsel, District Court Section
Office of Immigration Litigation
    Tel:  (202) 532-4824
    Fax:  (202) 305-7000
    Email:  Sarah.B.Fabian@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY LISETTE FLORES; *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM P. BARR, Attorney General of the United States; *et al.*,<br><br>Defendants. | Case No. CV 85-4544-DMG<br><br>**DEFENDANTS' OPPOSITION TO MOTION TO ENFORCE SETTLEMENT OF CLASS ACTION, ECF NO. 919**<br><br>Hearing Date: Sept. 4, 2020<br><br>Hearing Time: 11:00am<br><br>Judge: Hon. Dolly Gee |

# <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ............................................................................1

II.     BACKGROUND ..............................................................................1

III.     ARGUMENT.....................................................................................7

     a.   Defendants Should Not Be Required To Implement the Procedures Requested by Plaintiffs..............................................................7

     b.   Defendants Have Made Good Faith Efforts To Comply With The Court's Orders, And A Procedural Remedy Is Not Appropriate. .........................10

     c.   Defendants Are Not in Breach of Any Notice Requirement...................13

     d.   Plaintiffs' Proposed Documents Contain Legal Errors And Would Cause Further Confusion.................................................................15

IV.     CONCLUSION................................................................................17

i

CASES

*Bailey v. Roob*,
  567 F.3d 930 (7th Cir. 2009)...........................................................................13

*Flores v. Lynch*,
  212 F. Supp. 3d 907 (C.D. Cal. 2015) ........................................................8, 12

*Flores v. Sessions*,
  394 F. Supp. 3d 1041 (C.D. Cal. 2017) ............................................................1

*Flores v. Sessions*,
  No. CV 85-4544-DMG (AGRx), 2018 WL 4945000
  (C.D. Cal. July 9, 2018) ................................................................................2, 5

*Kelly v. Wengler*,
  822 F.3d 1085 (9th Cir. 2016)........................................................................13

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
  514 U.S. 52 (1995) ................................................................................... 14, 17

*United States v. Armour & Co.*,
  402 U.S. 673 (1971)........................................................................................14

*United States v. Asarco, Inc.*,
  430 F.3d 972 (9th Cir. 2005)..........................................................................14

*United States v. N.Y.C. Dist. Council of N.Y.C.*,
  229 F. App'x 14 (2d Cir. 2007) ......................................................................13

**STATUTES**

8 U.S.C. §§ 1101 ...................................................................................................14

**REGULATIONS**

8 C.F.R. § 1236.3 ..................................................................................................15

## I.  **INTRODUCTION**

Plaintiffs continue to contend (Motion, ECF No. 919) that the *Flores* Settlement Agreement ("Agreement") requires the government to implement a process by which U.S. Immigration and Customs Enforcement ("ICE") must offer the choice to parents held with their children at an ICE family residential center ("FRC") whether they wish to remain in custody with their child, or have their child released to a sponsor while the parent remains in ICE custody. The Agreement does not require a parent to make such a choice. ICE evaluates all families for release together in the first instance, but in situations where ICE determines that release of the parent is not appropriate, continued custody of children with their parents is appropriate and consistent with the Agreement. This Court should deny Plaintiffs'' motion and reject Plaintiffs' continued campaign for this Court to impose protocols that would, in effect, result in a family-separation mechanism.

## II.  **BACKGROUND**

In 2017, this Court ordered Defendants "to make individualized determinations regarding a minor's flight risk rather than blanket determinations." *Flores v. Sessions*, 394 F. Supp. 3d 1041, 1067 (C.D. Cal. 2017). The Court made clear, however, that "[u]ltimately, based upon an individualized review of the facts, Defendants may conclude that it is in the best interests of an accompanied minor to remain with a parent who is in detention." *Id.*

Since September 8, 2017, the ICE Juvenile Coordinator, Ms. Deane Dougherty, has regularly reported to the Court regarding the manner by which ICE is complying with the Court's 2017 Order. *See* Defendants' Supplemental Response, ECF No. 746, April 6, 2020, at 31-35. Additionally, the Special Master/Independent Monitor ("Monitor") was appointed in 2018 to monitor, among other things, ICE's compliance with these provisions of the Agreement, and has been responsible for

1

ongoing monitoring of ICE's compliance with these provisions of the Agreement since that time. *See id.* at 35-36. The Monitor submitted two regular reports, neither of which took issue with ICE's manner of compliance with the Court's orders *See* ECF No. 528, March 6, 2019, at 31 (noting some "common reasons that unaccompanied [sic.] children remain in [ICE] custody over 20 days" and stating no concerns or opinions about those reasons); ECF No. 625, August 19, 2019, at 18-21 (stating no concerns about any reasons for continued custody past 20 days and not opining on the reasons for custody or on ICE's release processes in general). Thus, the Court and the Monitor have, at least tacitly, approved of ICE's processes for complying with the 2017 order.

On several occasions, the Court has stated that, as a general matter, a parent may choose, on behalf of the class member child, whether to exercise or waive a class member child's right to be released under the Agreement. But the Court has left it to the parties to develop and implement any procedures by which such release or waiver could occur and has acknowledged the inherent challenges in efforts by ICE to obtain a waiver of the child's rights, in this regard. *See Flores v. Sessions*, No. CV 85-4544-DMG (AGRx), 2018 WL 4945000, at *4 (C.D. Cal. July 9, 2018) ("[D]etained parents may choose to exercise their *Ms. L* right to reunification or to stand on their children's *Flores* Agreement rights. Defendants may not make this choice for them."); Order, ECF No. 784, April 24, 2020, at 15 n.6 ("Parents may waive their children's *Flores* rights."); Order ECF No. 833, June 26, 2020 at 3 (requiring ICE to release class member children separately from their parents "with the consent of their adult guardians/parents"); *id.* at 6 (requiring the parties to meet and confer "regarding the adoption and implementation of proper written advisals and other protocols to inform detained guardians/parents about minors' rights under the FSA and obtain information regarding, and procedures for placement with,

2

available and suitable sponsors"); Order, ECF No. 799, May 22, 2020, at 2
("[A]lthough the Court finds that ICE did not seek or obtain formal waivers from
detained parents of their children's *Flores* rights during ICE officers' conversations
with detained parents on or about May 15, 2020, those conversations caused
confusion and unnecessary emotional upheaval and did not appear to serve the
agency's legitimate purpose of making continuous individualized inquiries
regarding efforts to release minors."); Order, ECF No. 887, July 27, 2020, at 2
("[T]he Court cannot and will not dictate the results of the parties' negotiations or
force an agreement where there is none. Nor should the parties seek the Court's
approval of a protocol that they have not yet agreed upon. Until the parties evidence
some agreement regarding a know-your-rights protocol, there is none."). The parties
have never agreed upon any protocols that would allow for a knowing and voluntary
waiver of a child's *Flores* rights, or any rights that the child's parent might have, and
the Court has never ordered the implementation of any such procedures. Defendants
also are not aware of any parent who has sought the release of his or her child to a
sponsor, but who has been unable to obtain such release because of the lack of
formalized procedures for such release. *See* August 7, 2020 Hearing Tr. at 20:6-9
(Amicus counsel explained that "because we represent whole families, we have at
times inquired about this very question with our families. At this time we have no
families who have indicated to us a desire to separate from their child.").

The instant motion arises out of the Court's June 26, 2020 Order, in which the
Court ordered ICE to:

> transfer Class Members who have resided at the FRCs for more than 20
> days to non-congregate settings through one of two means: (1) releasing
> minors to available suitable sponsors or other available COVID-free
> non-congregate settings with the consent of their adult
> guardians/parents; or (2) releasing the minors with their
> guardians/parents if ICE exercises its discretion to release the adults or

3

another Court finds that the conditions at these facilities warrant the transfer of the adults to non-congregate settings.

Order, ECF No. 833, ¶ 1. The Court also ordered the parties to meet and confer and file a status report "regarding the adoption and implementation of proper written advisals and other protocols to inform detained guardians/parents about minors' rights under the FSA and obtain information regarding, and procedures for placement with, available and suitable sponsors[.]" *Id.* ¶ 6. The parties met and conferred accordingly. *See* Joint Status Report, ECF No. 846.

On July 21, 2020, counsel, purporting to represent several *Flores* class members along with their parents, filed a motion seeking to intervene in this litigation. Application, ECF No. 854. In their Application, these counsel asserted that the meet and confer process for developing protocols:

> (1) is certain to further unnecessary delay of the release of Class Members beyond this Court's July 17, 2020 deadline, as no agreed-upon waiver protocol has yet been presented to Class Members, their parents, or legal counsel; (2) has not been shown to comply with the existing Agreement and applicable portions of the INA; and (3) has not been shown to afford Class Members and their parents due process of law.

*Id.* at 10. In light of the concerns raised by the Proposed Intervenors, Defendants sought to stay the litigation while the Application was resolved. Application for Stay, ECF No. 879. The Court denied the government's request, stating that a stay was unnecessary because:

> The plain language of Paragraph 1 of the June 26, 2020 Order premises transfer or release of Class Members who have resided at the FRCs for more than 20 days upon either (1) the consent of their guardians/parents to release them to an available suitable sponsor, (2) the exercise of ICE's discretion to release minors with their guardians/parents, or (3) a Court order requiring the transfer of the adults to non-congregate settings due to conditions at the FRCs. There are currently 100 affected

4

> Class Members. [Doc. # 882-1 at 3.] If none of these prerequisites has been met by the July 27, 2020 deadline, Paragraph 1 of the June 26, 2020 Order is unenforceable by its own terms. There is therefore no need for a stay.

Order, ECF No. 887, at 2. The Court further stated, regarding the parties' meet and confer discussions:

> If the parties solicit the Court's suggestions, it will endeavor to provide constructive guidance. But the Court cannot and will not dictate the results of the parties' negotiations or force an agreement where there is none. Nor should the parties seek the Court's approval of a protocol that they have not yet agreed upon. Until the parties evidence some agreement regarding a know-your-rights protocol, there is none.

*Id.*

Understanding the Court's order to thus require voluntary agreement on the part of the government before protocols can be finalized and implemented, the government then explained:

> In light of the Court's recent statement that Defendants' voluntary agreement to these protocols is required for their implementation, Defendants state that they do not believe that any voluntary agreement can be reached. Specifically, Defendants will not voluntarily agree to any protocol that would potentially provide for the separation of a parent and child who are currently housed together in an ICE FRC.

Joint Status Report, ECF No. 902, at 6.

At the subsequent status conference on August 7, 2020, the Court asked the government to confirm that there was no voluntary agreement on any protocols and stated that "if there's no agreement in these areas, then I will impose a remedy, as I have always done." August 7, 2020 Hearing Tr. at 16:9-10. Defendants' counsel reiterated:

> with regard to the protocols, the government -- there has been perhaps exhaustion because the government does not -- does not find itself able

to agree to protocols [that] would result in a child being released separately from their parents. I think that is a fundamental piece of what the plaintiffs would require as part of those protocols. So based on that, then the government would prefer that Your Honor impose a remedy.

*Id.* at 16:13-17. The Court therefore ordered Plaintiffs' to "file a motion for implementation of proposed remedy for findings of breach . . . ." Order, ECF. No. 912 at 2. Plaintiffs filed their motion seeking implementation of a proposed remedy on August 14, 2020. Motion, ECF No. 919.

Plaintiffs' motion seeks an order from this Court requiring Defendants to provide "a proper advisal of rights and reasonable steps to implement Class Members' release" separately from their parents, where those class members currently are housed with their parents at an ICE FRC. *Id.* at 1. Plaintiffs argue that the extensive advisals, protocols, and procedures they are asking this Court to order are simply an extension of the plain text of Paragraph 12.A of the Agreement, which requires that, upon taking a minor into custody, Defendants must "provide the minor with a notice of rights . . . ." Motion, ECF No. 919, at 15-22. Alternatively, Plaintiffs assert that, even if the procedures they are asking the Court to order are not found within the plain text of the Agreement, the Court can nonetheless order them by finding Defendants in civil contempt, and ordering "more robust relief in order to ensure FSA compliance." *Id.* at 24-29. Plaintiffs' Proposed Order includes an attached "*Flores* Settlement Agreement Notice of Rights," to be provided to parents in ICE FRCs, a "*Flores C*lass Member Release Protocol" that ICE would be required to follow, and a worksheet for parents or guardians to fill out entitled "*Flores* Settlement Parent/Guardian Release Decision." ECF No. 921-1.

6

### III.   ARGUMENT

#### a.   Defendants Should Not Be Required To Implement the Procedures Requested by Plaintiffs.

This Court should deny Plaintiffs' motion asking this Court to impose procedures that put parents to a binary choice and might ultimately require the separate release of class member children. Defendants have always objected—and continue to object—to any reading of the Agreement that will require ICE to implement a protocol to potentially separate a parent and child who are currently housed together in an ICE FRC, and who both are subject to lawful detention by ICE in accordance with the Immigration and Nationality Act.

Most fundamentally, nothing in the Agreement allows for a binary choice such as the one proposed by Plaintiffs. *Contra* ECF No. 919, at 15-22. As Defendants have explained:

> Paragraph 14 does not require DHS to separate families and release children—either on parole or to a non-relative—when they can remain with their parent in a family residential center. Paragraph 14 states that "INS shall release a minor from its custody without unnecessary delay, in the following order of preference" with the "parent" being the first priority. But Paragraph 14 does not address what to do when the child is already in custody with the parent: it does not specify that separating the child from the parent is required in this circumstance, or that release to an unrelated adult or a foster home is instead required when the family can stay together in a family residential center.

*Flores v. Barr*, No. 19-56324, Defendants-Appellants' Reply Brief, February 4, 2020, at 20. Paragraph 14 of the Agreement does not require the separation of a parent and child who are housed together in an ICE FRC, and there is no sound basis for imposing procedures that would implement such a requirement. Nor does Paragraph 12.A—which Plaintiffs also invoke—require such procedures. As discussed more fully below, the provision of Paragraph 12.A requiring Defendants

7

to provide class members with a notice of their rights upon apprehension is best read to require Defendants to provide the specific notices of rights that are detailed throughout the Agreement to the minor class member, not to broadly require that parents, who are not class members, be offered the choice of remaining in custody with their child or allowing their child to be separately released to a sponsor. Finally, Paragraph 18 does not support Plaintiffs' demand for their requested procedures: that Paragraph simply expands on Paragraph 14 by requiring Defendants to "make and record" its efforts at release under Paragraph 14. It does not create any additional, or more extensive, rights to release than are already contained in Paragraph 14. In fact, this court's prior statements regarding this provision establishes that keeping families together should be the first goal of the Agreement, when the court previously stated that an approximately 20-day period for completing the credible or reasonable fear process and removal for class members would be permissible under the Agreement as long as Defendants were acting in good faith and in the exercise of due diligence and "if the brief extension of time will permit DHS to keep the family unit together." *Flores v. Lynch*, 212 F. Supp. 3d 907, 914 (C.D. Cal. 2015).

Plaintiffs nonetheless ask this Court to read the Agreement to require that parents—who are not class members—be offered the choice to separate from their children. As explained above, this would be an unwarranted departure from the terms of the Agreement. This Court should reject it.

It bears emphasizing that class counsel do not represent the parents of the children at issue in this case and that, while this Court has said a parent may waive the child's rights on behalf of his or her child, this Court has not addressed—and, given that this case involves a class of children only, cannot address—any separate rights the parent may have which are not governed by the Agreement.

Indeed, this Court has, consistent with the Agreement, previously declined to force a separation mechanism on the parties such as the one now proposed by Plaintiffs. Order, ECF No. 887, at 2. Although, prior to June 26, 2020, Order, ECF No. 833, at ¶ 1, this Court has recognized the right of a parent to waive his or her child's *Flores* rights and keep his or her child in custody with the parent, or conversely to consent to the separate release of his or her child, the Court has never required Defendants to develop or implement any protocols for seeking such waiver or consent, nor has the Court ever ordered that the absence of such protocols was a violation of the Agreement. The Court should hold that line and reject Plaintiffs' demand for a process that potentially results in the separation of parents from their children.

Notably, Plaintiffs' ongoing effort to formalize a process for separating children from their parents lacks support from the actual residents of ICE FRCs. Counsel who represent the parents have made clear that the parents object to these processes. *See* Application, ECF No. 854, at 7 (counsel for families argue that "any waiver protocol would likely violate due process rights of Proposed Plaintiffs-Intervenors and other accompanied Class Members"); August 7, 2020 Hearing Tr. at 20:17-21 ("[A]ny protocol that would be placed on families regarding this specific ask, this specific concern would be done while in detention and while ICE is the custodian. So we have a lot of questions as to whether any kind of decision that could be made could be knowing or voluntary."). In light of these objections, it is important to consider that these parents are not class members, and this Court should exercise extreme caution in ordering any relief that would impact their rights.

It is also notable that Plaintiffs have never brought to the attention of Defendants or the Court any class member who wishes to be separated from his or her parent or any parent who wishes to have a child released to a sponsor. In fact, at

the most recent hearing, counsel representing families in the ICE FRCs made clear that no parent in an ICE FRC seeks to have his or her child released separately. August 7, 2020 Hearing Tr. at 20:6-9 ("[B]ecause we represent whole families, we have at times inquired about this very question with our families. At this time we have no families who have indicated to us a desire to separate from their child."). Nothing prevents children in this circumstance from coming to this Court to request relief and release separately from their parents, yet none (other than class counsel) have done so, and other counsel purporting to represent those individuals have instead told this Court that such a remedy is unwanted. There is thus no evidence establishing that the absence of any such protocols has resulted in a violation of any class member's rights under the Agreement; Plaintiffs are therefore seeking an order for a remedy without presenting any evidence of harm. Plaintiffs' suggestion that Defendants' failure to put the parents of class members to this choice has violated any class members' rights under the Agreement (ECF No. 919 at 15-22) is therefore unsubstantiated by any evidence—and their suggestion that it is somehow a sanctionable offense (ECF No. 919 at 24-29) is baseless. This is particularly true because this Court has previously made clear that it was not directing the parties to adopt the separation mechanism that Plaintiffs continue to demand. *See* ECF No. 887 at 2.

      b. **Defendants Have Made Good Faith Efforts To Comply With The Court's Orders, And A Procedural Remedy Is Not Appropriate.**

Defendants' compliance with this Court's orders also decisively cuts against the relief that Plaintiffs seek. Defendants have always made good faith efforts to comply with the Court's 2017 Order regarding the release of class members. Since at least September 8, 2017, Defendants have made clear the manner by which they

10

were complying with the Court's June 27, 2017, directive to make individualized determinations regarding the release of class members. *See* Defendants' Supplemental Response, ECF No. 746, April 6, 2020, at 31-35. As this Court has recognized, almost all family units have been released together from FRCs, and only a small number remain. *See* Order, ECF No. 784, at 14. In every case wherein the family remains in custody, this court has required a detailed parole assessment and with the assistance of the Monitor has conducted ongoing oversight over the parole process.

Prior to the filing of Plaintiffs' TRO Motion on March 26, 2020, and despite the ICE Juvenile Coordinator's filing regular reports and the Court-appointed Monitor conducting ongoing monitoring of ICE's compliance, neither the Court nor the Monitor ever raised any issues or concerns with the manner of Defendants' compliance. At no time during that time period did this Court issue an order directing ICE to obtain the consent of parents to separately release their children to a sponsor. Moreover, no Court order has ever provided any guidance as to how ICE could do so, particularly in light of the strenuous objections of numerous advocates to the implementation of such procedures, and the fact that parental interests are not addressed by the Agreement and no parents are represented before this Court. Plaintiffs suggest that Defendants have somehow failed to heed a clear prior directive from the Court to separate children from their parents by releasing them to sponsors. ECF No. 919 at 24-25. But that ignores the long history of this case regarding the release of class member children who are in custody at ICE FRCs with their parents. *See* ECF No. 746 at 31-36.

Even the Court's June 26, 2020, Order, requiring that the parties meet and confer to develop protocols to release a child separately from his or her parent, requires the release of a child class member only after Defendants obtain "consent

of [a class member's] guardians/parents to release them to an available suitable sponsor." ECF No. 833, at ¶ 1. The Order provides no guidance as to how such consent can be obtained if the parties do not reach voluntary agreement on protocols to do so. *Id.* at ¶¶ 1, 6. Numerous advocates, including the proposed intervenors in this case, have taken the position that "any waiver protocol would likely violate due process rights of Proposed Plaintiffs-Intervenors and other accompanied Class Members." Application, ECF No. 854, at 7. The Court has stated that it "cannot and will not dictate the results of the parties' negotiations or force an agreement where there is none. Nor should the parties seek the Court's approval of a protocol that they have not yet agreed upon. Until the parties evidence some agreement regarding a know-your-rights protocol, there is none." ECF No. 887 at 2. The Court has also acknowledged that in the absence of any procedures by which ICE can obtain the "consent" of a parent to separately release his or her child, "Paragraph 1 of the June 26, 2020 Order is unenforceable by its own terms." *Id.*

As previously stated, ICE cannot and will not voluntarily agree to the procedures proposed by Plaintiffs in their Motion to Enforce, which Defendants contend are not required by the Agreement. As the Court indicated at the August 7, 2020 hearing, because the parties cannot reach any voluntary agreement, the Court must issue a remedy on its own. August 7, 2020 Hearing Tr. at 15:8-9. But the fact that the Court has not yet done so is a clear refutation of Plaintiffs' position that Defendants' failure to already have in place such procedures, even prior to the Court's order, is somehow a violation of prior orders of the Court.

Moreover, to the extent that Plaintiffs' motion now asks this Court to order Defendants to implement Court-approved procedures to obtain "consent" from non-class member parents on the grounds that Defendants should be found in civil contempt, such procedural remedies are not appropriate here, because Plaintiffs have

12

not met the standard for such a remedy. Motion, ECF No. 919, at 24-28. As discussed above, Defendants have not violated—and have in fact made good faith efforts to comply with—the Court's orders. *See Kelly v. Wengler*, 822 F.3d 1085, 1097 (9th Cir. 2016) (discussing how court-ordered remedies designed to ensure compliance with a settlement agreement, and to cure breach, are properly considered under civil contempt standards). And to establish that such remedies are required, Plaintiffs must first show by clear and convincing evidence that a violation of the Agreement has actually occurred. *See Bailey v. Roob*, 567 F.3d 930, 934-35 (7th Cir. 2009) ("The parties agree that this circuit's case law requires the party seeking sanctions to demonstrate that the opposing party is in violation of a court order by clear and convincing evidence."); *see also United States v. N.Y.C. Dist. Council of N.Y.C.*, 229 F. App'x 14, 18 (2d Cir. 2007).

Plaintiffs have provided no evidence of any class member who has sought to be released separately from his or her parent, and separate counsel for the parents and class member children have repeatedly maintained that no child would choose such a release. *See* August 7, 2020 Hearing Tr. at 20:6-9 ("[B]ecause we represent whole families, we have at times inquired about this very question with our families. At this time we have no families who have indicated to us a desire to separate from their child."). Thus, there has been no clear and convincing showing that ICE is breaching the Agreement by not developing procedures to which class members themselves have objected, and that this Court has previously said it will not impose upon the parties.

c.  <u>**Defendants Are Not in Breach of Any Notice Requirement.**</u>

To the extent that Plaintiffs' Motion tries to paint the issue as a violation of the Agreement's notice provisions, Plaintiffs' argument is incorrect and ignores the reality that they are in fact asking the Court to order extensive procedural remedies.

13

Plaintiffs argue that Defendants are violating Paragraph 12.A of the Agreement, which requires Defendants, upon taking a minor into custody, to process the minor and "provide the minor with a notice of rights, including the right to a bond redetermination hearing if applicable." Agreement, ¶ 12.A. Plaintiffs contend that the language of Paragraph 12.A should be interpreted to say "that Defendants are obligated to provide all detained Class Members or, if accompanied, their parents, with an advisal regarding their rights *under the FSA* rather than the totality of their rights under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101, et seq." Motion, ECF No. 919, at 16.

Plaintiffs are wrong. Like a contract, a consent decree "must be discerned within its four corners, extrinsic evidence being relevant only to resolve ambiguity in the decree." *United States v. Asarco, Inc.*, 430 F.3d 972, 980 (9th Cir. 2005); *see also United States v. Armour & Co.*, 402 U.S. 673, 681 (1971) ("[T]he scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it."). As Plaintiffs point out, Motion at 8, the Agreement details specific notices of rights that Defendants are required to provide. *See* Agreement ¶¶ 24.C, 24.D. Plaintiffs' suggestion that this language should be read to require generalized provisions of rights that are not detailed anywhere in the Agreement is inconsistent with the parties' identification of the specific notices that they agreed were required. The Agreement "should be read to give effect to all of its provisions and to render them consistent with each other." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995). Plaintiffs acknowledge that several of their "proposed advisals and protocols" are in fact "not required by the text of the FSA," Motion, ECF No. 919, at 20, which makes it that much clearer that what Plaintiffs are seeking to label as "notices of rights" are

in fact substantive procedural documents designed to obtain a waiver of rights from parents, who are not even parties to the Agreement.

Plaintiffs have previously complained that "Defendants routinely fail to advise class members of their rights under the Agreement[,]" but this Court disagreed, and made clear that "[t]he Agreement does not provide for 'advisals of rights about the *Flores* case' *per se*." ECF No. 363, at 18. Plaintiffs have provided nothing that requires a different result here.

### d. <u>Plaintiffs' Proposed Documents Contain Legal Errors And Would Cause Further Confusion.</u>

Defendants oppose Plaintiffs' proposed documents in full as discussed above, but also more specifically provide the examples below which show that requiring the use of these documents would cause confusion and create further problems because they contain legal errors, would require the government to provide sensitive information about unrepresented parties to lawyers without the consent of those individuals, and would require the government to release minors to un-vetted individuals.

First, in the protocols document, in the section entitled "Custody Determinations" Plaintiffs propose the ICE instruct its personnel that "8 C.F.R. § 1236.3 requires ICE to assess and document whether an adult parent should be released from ICE custody to effectuate the release of a child from custody." ECF No. 921-1, ¶ 3. This statement is confusing and potentially inaccurate because the cited regulation is not a release authority, and therefore does not instruct agents in the authority under which they may consider individuals for release. ICE will apply its usual custody decision making procedures to the parent or legal guardian at the appropriate point in the process (e.g., decide whether to parole under INA § 212(d)(5) after a positive credible fear finding, conditionally release under INA §

15

236(a) pending INA § 240 removal proceedings, or release on an order of supervision under INA § 241(a) because execution of a final removal order will not happen for some time).

Second, Plaintiffs would require that "[a]ny documents provided to a parent or a minor to implement this protocol or comply with the FSA shall be forwarded by email or mailed by first class mail to the parent's and minor's attorney(s) of record." ECF No. 921-1, ¶ 11. This requirement would exceed the authority of this Court to the extent that it provides a right to the parent to have documents served on his or her counsel, and it would likely create delays by adding an unnecessary administrative step to ICE's processes where there is no reason to believe that the parent cannot provide such information to his or her counsel if he or she so chooses. More importantly, though, this provision might at times require ICE to provide confidential or sensitive information about the sponsor, who is unrepresented and providing information voluntarily to the government, to counsel who do not represent the sponsor and to whom the sponsor has not authorized its release. This requirement therefore may violate the privacy rights of sponsors.

Third, Plaintiffs propose that ICE instruct its personnel as follows:

> A parent may designate an adult who will transport their child to any sponsor the parent identified and ICE has approved to care for the child. ICE may run a background check on any such adults designated by a parent and decline to transfer the child to the adult's custody for transportation to the approved sponsor if the adult has a criminal history or an outstanding arrest warrant such that the child may not be safe being transported by the adult. Alternatively, ICE may transport the child to the approved sponsor's home.

ECF No. 921-1, ¶ 6. This provision would require ICE to either undertake transportation of a minor alone, or transfer custody of a minor to an adult who is not fully vetted by ICE based solely on a "background check," but then still appears to

place on ICE the responsibility to decide whether "the child may not be safe being transported by the adult." *Id.* If Plaintiffs wish to require that ICE release a child to an un-vetted individual, then Plaintiffs will bear responsibility if that release is unsafe for the child.

## IV.    <u>CONCLUSION</u>

For all of the above reasons, the Court should deny Plaintiffs' Motion, and should not order the procedures proposed by Plaintiffs that would require Defendants potentially to separate children and parents who are currently housed together at an ICE FRC.

17

DATED: August 21, 2020

ETHAN P. DAVIS
Acting Assistant Attorney General
Civil Division

AUGUST E. FLENTJE
Special Counsel to the Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation

WILLIAM C. SILVIS
Assistant Director, District Court Section
Office of Immigration Litigation

*/s/ Sarah B. Fabian*
SARAH B. FABIAN
NICOLE N. MURLEY
Senior Litigation Counsel
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-4824
Fax: (202) 305-7000
Email: sarah.b.fabian@usdoj.gov

*Attorneys for Defendants*

18

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 21, 2020, I served the foregoing pleading on all counsel of record by means of the District Clerk's CM/ECF electronic filing system.

/s/ *Sarah B. Fabian*
SARAH B. FABIAN
U.S. Department of Justice
District Court Section
Office of Immigration Litigation

Attorney for Defendants

19