# AUGUST 24, 2020 ICE JUVENILE COORDINATOR REPORT

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| JENNY LISETTE FLORES, *et. al.*, | ) | Case No.: CV 85-4544-DMG |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM BARR, Attorney General of the | ) | |
| United States, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**AUGUST 2020 INTERIM REPORT**
**OF JUVENILE COORDINATOR DEANE DOUGHERTY**
**SUBMITTED BY IMMIGRATION AND CUSTOMS ENFORCEMENT**

As required by the Court in its orders issued on April 24, May 22, June 26, and August 7, 2020, U.S. Immigration and Customs Enforcement (ICE) Juvenile Coordinator Deane Dougherty is submitting the following interim report to provide an update on the Class Members in the FRCs over 20 days, status of implementation of COVID-19 guidances, a census of positive COVID-19 cases at the family residential centers (FRCs), and confirmation that ICE continues to comply with requests for information and access to residents made by Ms. Ordin and Dr. Wise.

Due to the constantly evolving nature of the COVID-19 crisis, and the frequency of custody and discharge determinations, the information in this report is current and accurate as of the time of signature, or for the reported data, as of the date or time noted in conjunction with the information provided.

## I.  Making and Recording Individualized Custody Determinations and Census of Minors at FRCs

As of August 17, 2020, there were a total of 118 Class Members at ICE FRCs. The figures below breakdown these Class Members by age and country of origin.





ICE has been making continuous efforts to release Class Members under applicable standards throughout the course of this litigation and, where there are no impediments to removal, those that are subject to final orders of removal are repatriated in accordance with the law. The graph below portrays the book-outs by the FRCs from July 22 to August 17, 2020, which includes

126 Class Members released into the interior of the United States, 21 Class Members removed from the United States, and 3 Class Members returned to their country of origin pursuant to Title 42 authorities.



As of August 17, 2020, 83 Class Members have been detained at an FRC 20 days or more. Exhibit A. These individuals, and their accompanying parent(s) or legal guardian(s), may be subject to the *Flores* waiver process about which this Court ordered the parties to meet and confer in its June 26, 2020, Order. Specifically, this Court ordered the government to proceed with one of two options on or before July 17, 2020: (1) release minors to available suitable sponsors or other available COVID-free non-congregate settings **with the consent of their adult guardians/parents**; or (2) release the minors with their guardians/parents if ICE exercises its discretion to release the adults or another Court orders it to do so. ICE is not compelled to exercise its discretion to release an alien who is otherwise lawfully subject to detention, and no other court has ordered ICE to release the accompanying parents. Thus, by the plain terms of sections 4(c) and (d), read in conjunction with paragraph 1, of the Court's June 26 Order, compliance with the reporting requirements, in this regard, requires that the government develop *and implement* a process by which it can obtain the consent of a parent/legal guardian for the release of his or her child from

custody, or otherwise allow the parent to waive the child's *Flores* release rights.  Negotiations on this process had not yet been completed, thus implementation had not yet occurred, when the Court issued its August 7, 2020, order finding paragraph 1 of the June 26 Order unenforceable by its own terms.  Subsequently, the government indicated to the Court that it will not voluntarily engage in a process that may result in the separation of families and requested the Court provide a remedy. The Court has not provided a remedy. Nevertheless, ICE has provided specific explanations for the detentions beyond 20 days in Exhibit A.  These explanations include that ICE will determine the Class Members' eligibility for release with the consent of a parent or guardian in accordance with any future order or decision by the Court.  I have reviewed the data provided in Exhibit A, and it has been shared with the Special Monitor, as required.  Once the Court has determined a remedy and/or issued a relevant order, ICE will provide the information required by paragraph 1, 4(c), and 4(d) of the Court's June 26 Order, including the number of those Class Members whose parent/legal guardian waived their child's *Flores* rights under paragraph 14 of the FSA, or continue to be detained under the FSA, in its interim report.

## II.  <u>Status of ICE's Implementation of COVID-19 Guidances</u>

I have confirmed that the measures described in the declarations and the Juvenile Coordinator's report, previously submitted to this Court, pertaining to the operational changes the FRCs have implemented to mitigate the introduction into, and spread of, COVID-19 are still in effect. Since the last interim report filed on July 24, 2020, ICE released an update to its Enforcement and Removal Operations Pandemic Response Requirements, which sets forth specific mandatory requirements to be adopted by all detention facilities, include the ICE FRCs. Exhibit B.  Additionally, as has been the case since the beginning of the pandemic, ICE FRCs are operating well below maximum capacity, as demonstrated in the chart below.

| Family Residential Center Occupancy 8/17/2020 | | | | | |
|---|---|---|---|---|---|
| Facility | Total # of Beds | # of Beds Occupied | % of Beds Occupied | # of Beds Not Occupied | % of Beds Not Occupied |
| Berks Family Residential Center | 96 | 19 | 20% | 77 | 80% |
| Karnes County Residential Center | 830 | 71 | 9% | 759 | 91% |
| South Texas Family Residential Center | 2,400 | 142 | 6% | 2,258 | 94% |
| **Total** | **3,326** | **232** | **7%** | **3,094** | **93%** |

## III.  Report of ICE Facilities Holding Minors and Number of COVID-19 Cases

ICE has been promptly reporting positive COVID-19 cases to the United States District Court for the District of Columbia, which is overseeing *O.M.G. v. Wolf*, and the notices of positive results are subsequently submitted to this Court. As of August 21, 2020, the BFRC has no reported COVID-19 cases by either staff or residents. The following charts describe the number of positive COVID-19 cases at the ICE FRCs as of August 21, 2020.

| COVID-19 Positive Cases at Family Residential Centers as of 8/21/2020 | | | | |
|---|---|---|---|---|
| Facilities | Minor | Adult | Staff | Total |
| Berks Family Residential Center | - | - | - | - |
| Karnes County Residential Center | - | 1 | 13 | 14 |
| South Texas Family Residential Center | 2 | 2 | 29 | 33 |
| **Total** | **2** | **3** | **42** | **47** |

| COVID-19 Positive Cases of Residents at Family Residential Centers as of 8/21/2020 | | | |
|---|---|---|---|
| Facilities | At Intake | In General Population | Total |
| Berks Family Residential Center | - | - | - |
| Karnes County Residential Center | 1 | - | 1 |
| South Texas Family Residential Center | 4 | - | 4 |
| **Total** | **5** | **-** | **5** |

| COVID-19 Positive Cases of Residents at Family Residential Centers as of 8/21/2020 | | | | |
|---|---|---|---|---|
| Facilities | Symptomatic | Asymptomatic | Hospitalized | Total |
| Berks Family Residential Center | - | - | - | - |
| Karnes County Residential Center | - | 1 | - | 1 |
| South Texas Family Residential Center | 1 | 3 | - | 4 |
| **Total** | **1** | **4** | **-** | **5** |

Pursuant to section 4(b)(iv) of this Court's April 24, 2020 Order, the minors who remain housed at the STFRC and KCFRC have not been released or transferred to non-congregate settings for two reasons: (1) because they are either in quarantine or cohorting based on CDC guidance as

a result of testing positive for COVID-19[1] or they are a new intake and must undergo a 14-day observation period; and/or (2) because they are housed with their parent or legal guardian whose release is not appropriate and, as discussed previously, ICE will determine the minor's eligibility for release with the consent of a parent or legal guardian in accordance with any future remedy ordered by the Court..

As of August 21, 2020, Cowlitz County Juvenile Detention Center ("Cowlitz") has no reported cases of COVID-19 by residents or staff. As of August 15, 2020, there are no ICE juvenile detainees at Northern Oregon Regional Corrections Juvenile Detention Center ("NORCOR").

III. **Additional Policies and Practices Aimed at Identifying and Protecting Minors from COVID-19**

Pursuant to section 4 of the Court's May 22, 2020, Order and section 9 of the Court's June 26, 2020, Order, I can confirm that I facilitated, and participated in, more calls with, among others, Dr. Paul Wise and Ms. Ordin; Juvenile and Family Residential Management Unit (JFRMU) Chief Mellissa Harper; clinical administrators and operational leadership for both Texas FRCs in which Dr. Wise and Ms. Ordin were provided information, relevant to their questions and requests, regarding the baseline of custodial medical care, health care protocols, and COVID-19 prevention practices at the FRCs, as well as protocols for identifying minors with medical conditions making them more vulnerable to COVID-19, and enhanced testing capabilities. Pursuant to Dr. Wise's request, I facilitated interviews with a number of family members detained at the FRCs, during which Dr. Wise and Ms. Ordin were joined by NGO attorneys. I also facilitated another live, virtual tour of the KCFRC, as well as STFRC, conducted onsite by the contract and ICE leadership, during which Dr. Wise and Ms. Ordin were able to see all congregate areas; the medical

---

[1] There have been no reports of any Class Members in the general population testing positive for COVID-19.

departments; operational areas, such as intake and release; and recreation areas, along with any other areas at their request

Even though Plaintiffs' motion to enforce with respect to the hoteling of Title 42 cases is still pending, I provided Dr. Wise and Ms. Ordin information regarding the minors that have been temporarily housed at hotels pending expulsion and their accompanied status. Additionally, I facilitated a separate call with Dr. Wise, Ms. Ordin, and JFRMU Unit Chief Mellissa Harper to discuss the data provided and answer any outstanding questions that Dr. Wise or Ms. Ordin had relating to the temporary housing program.

As Juvenile Coordinator I will continue to monitor any guidance and developments related to the COVID-19 to ensure the latest practices are implemented at facilities.

Signed on this 24th day of August 2020.

DEANE D
DOUGHERTY

Digitally signed by DEANE D
DOUGHERTY
Date: 2020.08.24 17:23:50 -04'00'

Deane Dougherty
Juvenile Coordinator

# ATTACHMENT A

| Det Location | A-Number | Last Name | First Name | Country of Citizenship Code | Book-in Date | Birth Date | Age | Age Group | Final Order Date ("as of" 8/15/20) | Case Category | Specific explanation for detention 20+ Days |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | CHILE | 3/18/2020 | | 2 | 0 to 5 | 3/15/2020 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | | CHILE | 3/18/2020 | | 3 | 0 to 5 | 3/14/2020 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | | CHILE | 3/11/2020 | | 4 | 0 to 5 | 3/6/2020 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | | VIETNAM | 7/14/2020 | | 8 | 6 to 13 | 7/11/2020 | [BG] Expedited Removal - Credible Fear Referral | The minor is subject to a final order of removal and there are no legal impediments to removal at this time. The family is cooperating with the travel document process and has completed the documents required for issuance of their travel documents. The ICE Assistant Attaché for Removals in Vietnam is working with the Vietnamese government on the travel documents needed to effectuate the removal. Once the documents are issued the family will be scheduled for removal on the next available removal flight. |
| | | | | HAITI | 3/11/2020 | | 11 | 6 to 13 | 3/6/2020 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | | CHILE | 7/14/2020 | | 1 | 0 to 5 | 8/5/2020 | [BG] Expedited Removal - Credible Fear Referral | Removed 08.18.20 |
| | | | | CONGO | 7/23/2020 | | 1 | 0 to 5 | 8/11/2020 | [BG] Expedited Removal - Credible Fear Referral | The minor is subject to a final order of removal and there are no legal impediments to removal at this time. Minor/family is scheduled for removal on [redacted] via ICE charter flight. Due to COVID 19, there are not commercial flights for individual family unit removals and ICE must coordinate charter flights with individual countries. ICE is working with the Consulate of Democratic Republic of Congo for the travel documents and concurrence to receive the family. |
| | | | | CHILE | 7/12/2020 | | 2 | 0 to 5 | 8/5/2020 | [BF] Expedited Removal | Removed 08.18.20 |
| | | | | BRAZIL | 7/26/2020 | | 3 | 0 to 5 | | [BG] Expedited Removal - Credible Fear Referral | The minor(/FAMU) was initially processed as a 742 but were processed under Title 8. [redacted] On 8/21/2020, an IJ affirmed the decision by USCIS. The minor and family unit will be removed the very next Brazil removal flight. Brazil removal flights are scheduled through ICE Air Operations at this time due to COVID 19 restrictions on commercial flights. Brazil removal flights occur approximately every two weeks. |
| | | | | BRAZIL | 7/12/2020 | | 5 | 0 to 5 | 8/5/2020 | [BG] Expedited Removal | Removed 08.18.20 |
| | | | | HAITI | 7/14/2020 | | 6 | 6 to 13 | 8/5/2020 | [BG] Expedited Removal - Credible Fear Referral | Removed 08.18.20 |
| | | | | ANGOLA | 7/18/2020 | | 7 | 6 to 13 | | [BG] Expedited Removal - Credible Fear Referral | RELEASED FROM [redacted] ON PAROLE 8/19/20 |
| | | | | BRAZIL | 10/5/2019 | | 3 | 0 to 5 | 9/30/2019 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | | BRAZIL | 7/19/2020 | | 4 | 0 to 5 | | [BG] Expedited Removal - Credible Fear Referral | RELEASED FROM [redacted] ON PAROLE 8/19/20 |
| | | | | CONGO | 7/18/2020 | | 6 | | | [BK] Expedited Removal Terminated due to Credible | RELEASED FROM [redacted] ON PAROLE 8/19/20 |
| | | | | CONGO | 7/18/2020 | | 10 | 6 to 13 | | [BK] Expedited Removal Terminated due to Credible | RELEASED FROM [redacted] ON PAROLE 8/19/20 |
| | | | | CONGO | 7/18/2020 | | 15 | 14 to 17 | | [BK] Expedited Removal Terminated due to Credible | RELEASED FROM [redacted] ON PAROLE 8/19/20 |
| | | | | ECUADOR | 2/28/2020 | | 1 | 0 to 5 | 3/20/2020 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | | ECUADOR | 1/19/2020 | | 6 | 6 to 13 | 2/5/2020 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | | ECUADOR | 1/19/2020 | | 7 | 6 to 13 | 2/5/2020 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | | ECUADOR | 1/19/2020 | | 10 | 6 to 13 | 2/5/2020 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | | ECUADOR | 2/24/2020 | | 17 | 14 to 17 | 2/23/2020 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | | EL SALVADOR | 9/11/2019 | | 2 | 0 to 5 | 10/17/2019 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | | EL SALVADOR | 8/29/2019 | | 3 | 0 to 5 | 9/18/2019 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | | EL SALVADOR | 8/29/2019 | | 3 | 0 to 5 | 9/18/2019 | [BF] Expedited Removal | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | | EL SALVADOR | 8/31/2019 | | 4 | 0 to 5 | 10/3/2019 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | | EL SALVADOR | 8/30/2019 | | 7 | 6 to 13 | 8/29/2019 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | | EL SALVADOR | 8/31/2019 | | 7 | 6 to 13 | 12/12/2019 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | | EL SALVADOR | 9/3/2019 | | 7 | 6 to 13 | 9/23/2019 | [BF] Expedited Removal | The minor has final order of removal. FAMU WAS ADDED TO THE MMV V. BARR PLAINTIFF LIST. FAMU DROPPED FROM THE 05/19/2020 REMOVAL MISSION DUE TO PENDING LITIGATION. Voluntary dismissal of subject from the DAM litigation ON 08/13/2020. TENTATIVE REMOVAL OF 08/21/2020. |
| | | | | EL SALVADOR | 8/27/2019 | | 8 | 6 to 13 | 9/18/2019 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |

| | | | Country | Date | # | Age | Date | | Status | Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | EL SALVADOR | 8/27/2019 | 8 | 6 to 13 | 9/30/2019 | | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U. S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | EL SALVADOR | 8/29/2019 | 8 | 6 to 13 | 9/19/2019 | | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U. S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | EL SALVADOR | 8/27/2019 | 9 | 6 to 13 | 9/18/2019 | | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U. S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | EL SALVADOR | 8/31/2019 | 13 | 6 to 13 | 10/3/2019 | | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U. S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | GUATEMALA | 10/5/2019 | 2 | 0 to 5 | 11/14/2019 | | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U. S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | GUATEMALA | 4/9/2020 | 2 | 0 to 5 | 4/2/2020 | | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U. S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | GUATEMALA | 4/9/2020 | 2 | 0 to 5 | 3/26/2020 | | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U. S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | GUATEMALA | 9/14/2019 | 3 | 0 to 5 | 9/30/2019 | | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U. S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | GUATEMALA | 12/17/2019 | 4 | 0 to 5 | 9/30/2019 | | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U. S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | GUATEMALA | 4/4/2020 | 4 | 0 to 5 | 3/25/2020 | | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U. S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | GUATEMALA | 4/4/2020 | 4 | 0 to 5 | 3/23/2020 | | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U. S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | GUATEMALA | 4/9/2020 | 4 | 0 to 5 | 4/6/2020 | | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U. S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | GUATEMALA | 9/28/2019 | 5 | 0 to 5 | 11/19/2019 | | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U. S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | GUATEMALA | 4/4/2020 | 5 | 0 to 5 | 3/20/2020 | | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U. S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | GUATEMALA | 9/16/2019 | 6 | 6 to 13 | 11/4/2019 | | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U. S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | GUATEMALA | 4/2/2020 | 6 | 6 to 13 | 3/11/2020 | | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U. S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | GUATEMALA | 4/4/2020 | 6 | 6 to 13 | 3/23/2020 | | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U. S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | GUATEMALA | 4/9/2020 | 6 | 6 to 13 | 4/6/2020 | | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U. S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | GUATEMALA | 4/9/2020 | 6 | 6 to 13 | 3/31/2020 | | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U. S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | GUATEMALA | 4/4/2020 | 7 | 6 to 13 | 3/25/2020 | | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U. S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| | | | GUATEMALA | 9/28/2019 | 8 | 6 to 13 | 11/19/2019 | | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U. S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |

| | | | | Country | | | | | | Description |
|---|---|---|---|---|---|---|---|---|---|---|
| ▮ | ▮ | | ▮ | GUATEMALA | 10/6/2019 | 8 | 6 to 13 | 12/4/2019 | [BF] Expedited Removal | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| ▮ | ▮ | | ▮ | GUATEMALA | 4/2/2020 | 8 | 6 to 13 | 3/11/2020 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| ▮ | ▮ | | ▮ | GUATEMALA | 9/30/2019 | 9 | 6 to 13 | 11/14/2019 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| ▮ | ▮ | | ▮ | GUATEMALA | 10/6/2019 | 12 | 6 to 13 | 11/21/2019 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| ▮ | ▮ | | ▮ | GUATEMALA | 4/2/2020 | 12 | 6 to 13 | 3/11/2020 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| ▮ | ▮ | | ▮ | GUATEMALA | 8/30/2019 | 14 | 14 to 17 | 9/23/2019 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| ▮ | ▮ | | ▮ | GUATEMALA | 9/26/2019 | 14 | 14 to 17 | 10/8/2019 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| ▮ | ▮ | | ▮ | GUATEMALA | 4/2/2020 | 14 | 14 to 17 | 3/11/2020 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| ▮ | ▮ | | ▮ | GUATEMALA | 8/30/2019 | 18 | 14 to 17 | 9/23/2019 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| ▮ | ▮ | | ▮ | HAITI | 7/11/2020 | 15 | 14 to 17 | 7/20/2020 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| ▮ | ▮ | | ▮ | HONDURAS | 9/14/2019 | 3 | 0 to 5 | 9/30/2019 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| ▮ | ▮ | | ▮ | HONDURAS | 8/22/2019 | 4 | 0 to 5 | 9/18/2019 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| ▮ | ▮ | | ▮ | HONDURAS | 9/1/2019 | 4 | 0 to 5 | 8/30/2019 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| ▮ | ▮ | | ▮ | HONDURAS | 8/30/2019 | 5 | 0 to 5 | 9/19/2019 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| ▮ | ▮ | | ▮ | HONDURAS | 10/9/2019 | 5 | 0 to 5 | 12/3/2019 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| ▮ | ▮ | | ▮ | HONDURAS | 8/30/2019 | 6 | 6 to 13 | 9/23/2019 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| ▮ | ▮ | | ▮ | HONDURAS | 8/30/2019 | 6 | 6 to 13 | 9/19/2019 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| ▮ | ▮ | | ▮ | HONDURAS | 9/14/2019 | 6 | 6 to 13 | 10/3/2019 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| ▮ | ▮ | | ▮ | HONDURAS | 9/11/2019 | 8 | 6 to 13 | 10/3/2019 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| ▮ | ▮ | | ▮ | HONDURAS | 9/18/2019 | 9 | 6 to 13 | 11/4/2019 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| ▮ | ▮ | | ▮ | HONDURAS | 10/19/2019 | 9 | 6 to 13 | 10/17/2019 | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |

| | | | | Country | | | | Age Range | | | Referral Type | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ▬ | ▬ | ▬ | ▬ | HONDURAS | 9/11/2019 | ▬ | 10 | 6 to 13 | 10/17/2019 | | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court.  The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| ▬ | ▬ | ▬ | | HONDURAS | 10/8/2019 | ▬ | 10 | 6 to 13 | 12/3/2019 | | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court.  The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| ▬ | ▬ | ▬ | ▬ | HONDURAS | 8/22/2019 | ▬ | 11 | 6 to 13 | 9/12/2019 | | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court.  The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| ▬ | ▬ | ▬ | ▬ | HONDURAS | 8/22/2019 | ▬ | 11 | 6 to 13 | 8/20/2019 | | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court.  The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| ▬ | ▬ | ▬ | ▬ | HONDURAS | 8/27/2019 | ▬ | 11 | 6 to 13 | 8/26/2019 | | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court.  The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| ▬ | ▬ | ▬ | ▬ | HONDURAS | 9/18/2019 | ▬ | 13 | 6 to 13 | 11/4/2019 | | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court.  The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| ▬ | ▬ | ▬ | ▬ | HONDURAS | 9/10/2019 | ▬ | 14 | 14 to 17 | 9/9/2019 | | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court.  The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| ▬ | ▬ | ▬ | | HONDURAS | 10/8/2019 | ▬ | 14 | 14 to 17 | 12/11/2019 | | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court.  The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| ▬ | ▬ | ▬ | ▬ | HONDURAS | 9/11/2019 | ▬ | 15 | 14 to 17 | 10/3/2019 | | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court.  The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| ▬ | ▬ | ▬ | | HONDURAS | 9/18/2019 | ▬ | 17 | 14 to 17 | 11/4/2019 | | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court.  The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |
| ▬ | ▬ | ▬ | | NICARAGUA | 8/27/2019 | ▬ | 14 | 14 to 17 | 9/30/2019 | | [BG] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with any future order or decision issued by the court.  The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. District Court for the District of Columbia on 07/23/20 in D.A.M. v. Barr. |

# ATTACHMENT B



# ERO



## U.S. Immigration and Customs Enforcement Enforcement and Removal Operations

COVID-19 Pandemic Response Requirements



ERO COVID-19 Pandemic Response Requirements (Version 3.0, July 28, 2020)

# Table of Contents

SUMMARY OF CHANGES ................................................................................ 3

PURPOSE AND SCOPE ................................................................................... 5

INTRODUCTION ............................................................................................. 5

OBJECTIVES ................................................................................................... 6

COMPLIANCE MEASURES .............................................................................. 7

CONCEPT OF OPERATIONS .......................................................................... 8

   DEDICATED ICE DETENTION FACILITIES ................................................. 8

   NON-DEDICATED ICE DETENTION FACILITIES ..................................... 10

   ALL FACILITIES HOUSING ICE DETAINEES ............................................ 12

      PREPAREDNESS ................................................................................. 12

      PREVENTION ..................................................................................... 18

      MANAGEMENT .................................................................................. 21

      TESTING ............................................................................................. 25

ATTACHMENTS ............................................................................................ 27

## Summary of Changes

| Explanation of Change | Section | Page |
|---|---|---|
| • <u>Addition</u>: The ERO PRR identifies additional populations potentially at higher risk for serious illness from COVID-19 (e.g., cerebrovascular disease, thalassemia). | Concept of Operations: Dedicated ICE Detention Facilities & Non-Dedicated ICE Detention Facilities | 11-14 |
| • <u>Addition</u>: Providers should follow guidance from the Equal Opportunity Employment Commission (EEOC) when offering testing to staff. | Preparedness | 16 |
| • <u>Addition</u>: Providers must ensure that both detainees and staff are trained in how to don, doff and dispose of personal protective equipment. | Preparedness | 16 |
| • <u>Addition</u>: Cloth facing coverings must be provided at no cost to detainees. | Preparedness | 18 |
| • <u>Addition</u>: The ERO PRR identifies contraindications for wearing cloth face coverings. | Preparedness | 18 |
| • <u>Addition</u>: The ERO PRR establishes that liquid or foam soap is preferred to bar soap. | Preparedness | 18 |
| • <u>Addition</u>: When possible, providers should inform potential visitors before they travel of what they should expect regarding COVID-19 screening. | Preparedness | 19 |
| • <u>Addition</u>: Prior to release from custody, detainees should be provided with COVID-19 prevention information, hand hygiene supplies, and cloth face coverings. | Preparedness | 19 |
| • <u>Addition</u>: Providers should consider establishing an on-site laundry option for staff so that they can change out of their uniform, launder them at the facility, and wear street clothes and shoes home. | Preparedness | 23 |

| | | |
|---|---|---|
| • <u>Addition</u>: Providers should consider testing all newly detained persons before they are placed in general population. | Prevention | 25 |
| • <u>Addition</u>: The ERO PRR now suspends transfers of both ICE and non-ICE detainee populations, with six exceptions. | Prevention | 26 |
| • <u>Addition</u>: When necessary to transport individuals with confirmed or suspected COVID-19, if the vehicle is not equipped with emergency medical service (EMS) features, at a minimum, drive with the windows down and ensure that the fan is set to high, in non-recirculating mode. If the vehicle has a ceiling hatch, keep it open. | Prevention | 26 |
| • <u>Addition</u>: If group activities are discontinued, it is important to identify alternative forms of activity to support the mental health of detainees. | Prevention | 27 |
| • <u>Addition:</u> Direct reference to CDC guidance on individuals in medical isolation in detention facilities. | Management | 22 |
| • <u>Update</u>: The ERO PRR updates criteria for discontinuation of transmission-based precautions for symptom-based strategy, test-based strategy, and time-based strategy. | Management | 24 |
| • <u>Addition:</u> Testing section based on recently released CDC guidance: <u>https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/testing.html</u> | Testing | 25 |

**PURPOSE AND SCOPE**

The U.S. Immigration and Customs Enforcement (ICE) Enforcement and Removal Operations (ERO) Coronavirus Disease 2019 (COVID-19) Pandemic Response Requirements (PRR) sets forth expectations and assists ICE detention facility operators  in sustaining detention operations while mitigating risk to the safety and wellbeing of detainees, staff, contractors, visitors, and stakeholders due to COVID-19. The ERO PRR builds upon previously issued guidance and sets forth specific mandatory requirements to be adopted by all detention facilities, as well as recommended best practices, to ensure that detainees are appropriately housed and that available mitigation measures are implemented during this unprecedented public health crisis[1]. The ERO PRR has been developed in consultation with the Centers for Disease Control and Prevention (CDC) and is a dynamic document that will be updated as additional/revised information and best practices become available.

**INTRODUCTION**

As the CDC has explained:

> COVID-19 is a communicable disease caused by a novel (new) coronavirus, SARS- CoV-2, and was first identified as the cause of an outbreak of respiratory illness that began in Wuhan Hubei Province, People's Republic of China (China).

> COVID-19 appears to spread easily and sustainably within communities. The virus is thought to transfer primarily by person-to-person contact through respiratory droplets produced when an infected person coughs or sneezes; it may transfer through contact with surfaces or objects contaminated with these droplets. There is also evidence of asymptomatic transmission, in which an individual infected with COVID-19 is capable of spreading the virus to others before exhibiting symptoms. The ease of transmission presents a risk of a surge in hospitalizations for COVID- 19, which would reduce available hospital capacity. Such a surge has been identified as a likely contributing factor to the high mortality rate for COVID-19 cases in Italy and China.

> Symptoms include fever, cough, and shortness of breath, and typically appear two to fourteen days after exposure. Manifestations of severe disease include severe pneumonia, acute respiratory distress syndrome (ARDS), septic shock, and multi-

---

[1] On April 20, 2020, the U.S. District Court for the Central District of California issued a preliminary injunction requiring that ICE "issue a performance standard or a supplement to their Pandemic Response Requirements … defining the minimum acceptable detention conditions for detainees with risk factors." Fraihat v. ICE, --- F.Supp.3d ---, 2020 WL 1932570, *29 (C.D. Cal. Apr. 20, 2020). The ERO PRR has accordingly been updated to define the "minimum acceptable detention conditions for detainees with risk factors."

organ failure. According to the World Health Organization, approximately 3.4 percent of reported COVID-19 cases have resulted in death globally. This mortality rate is higher among older adults or those with compromised immune systems. Older adults and people who have severe chronic medical conditions like heart, lung, or kidney disease are also at higher risk for more serious COVID-19 illness. Early data suggest older people are twice as likely to have serious COVID-19 illness.

Notice of Order Under Sections 362 and 365 of the Public Health Service Act Suspending Introduction of Certain Persons From Countries Where a Communicable Disease Exists, 85 Fed. Reg. 17060 (Mar. 26, 2020) (internal citations omitted).

Additionally, other symptoms may include chills, muscle pain, sore throat, and new loss of taste or smell.[2] Given the seriousness and pervasiveness of COVID-19, ICE is taking necessary and prompt measures. ICE is providing guidance on the minimum measures required for facilities housing ICE detainees to implement to ensure consistent practices throughout its detention operations and the provision of medical care across the full spectrum of detention facilities to mitigate the spread of COVID-19. The ICE detention standards applicable to all facilities housing ICE detainees have long required that each such facility have written plans that address the management of infectious and communicable diseases, including, but not limited to, testing, isolation, prevention, treatment, and education. Those requirements include reporting and collaboration with local or state health departments in accordance with state and local laws and recommendations.[3]

The Performance-Based National Detention Standards (PBNDS) 2008 and 2011 both require facilities to "comply with current and future plans implemented by federal, state or local authorities addressing specific public health issues including communicable disease reporting requirements."[4] The 2019 National Detention Standards (NDS) similarly require "collaboration with local or state health departments in accordance with state and local laws and recommendations." [5] The measures set forth in the ERO PRR allow ICE personnel and detention providers to properly discharge their obligations under those standards in light of the unique challenges posed by COVID-19.

**OBJECTIVES**

The ERO PRR is designed to establish requirements, as well as best practices, for all detention facilities housing ICE detainees to follow during the COVID-19 pandemic. Consistent with ICE detention standards, all facilities housing ICE detainees are required to

---

[2] See, e.g., Attachment B, Centers of Disease Control and Prevention, Symptoms of Coronavirus, https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last visited July 19, 2020).

[3] See, e.g., Attachment C, ICE National Detention Standards 2019 (NDS), Standard 4.3, Medical Care, at II.D.2 (p. 114), https://www.ice.gov/doclib/detention-standards/2019/4_3.pdf; Attachment D, 2011 ICE Performance-Based National Detention Standards (PBNDS), Revised 2016, Standard 4.3, Part V.C.1 (p. 261), https://www.ice.gov/doclib/detention- standards/2011/4-3.pdf; Attachment E, 2008 ICE PBNDS, Standard 4-22, Medical Care, V.C.1 (pp. 5-6), https://www.ice.gov/doclib/dro/detention-standards/pdf/medical_care.pdf.

[4] Performance-Based National Detention Standards (PBNDS) 2008 and 2011, Medical Care 4.3, (C.) Communicable Disease and Infection Control, p. 261-262.

[5] The 2019 National Detention Standards (NDS), Medical Care 4.3, (II.)(D.)(2.) Infectious and Communicable Diseases, p.114.

have a COVID-19 mitigation plan that meets the following four objectives:

> To protect employees, contractors, detainees, visitors, and stakeholders from
exposure to the virus;

> To maintain essential functions and services at the facility throughout the
pendency of the pandemic;

> To reduce movement and limit interaction of detainees with others outside their
assigned housing units, as well as staff and others, and to promote social
distancing within housing units; and

> To establish the means to monitor, cohort, quarantine, and isolate the sick
from the well.[6]

## COMPLIANCE MEASURES

To ensure that detention facilities comply with the detention requirements set forth in the
ERO PRR, ICE will conduct bi-weekly spot checks at over 72-hour ICE detention facilities
during the COVID-19 pandemic. Upon identification of a deficiency, ICE will provide
written notice to the facility and allow seven business days for submission of a corrective
action plan to ICE for approval. Life/safety issues identified by ICE will be corrected during
the COVID-19 spot checks, if possible, or the facility will be required to submit a corrective
action plan within three business days.

> For dedicated ICE detention facilities, which operate under Quality Assurance
Surveillance Plans, ICE will issue a Contract Discrepancy Report (CDR), which
may include contract sanctions, for failure to bring the facility into compliance
with the minimum requirements of the ERO PRR within the ICE-approved
timeframe. The CDR may become a part of the supporting documentation for
contract payment deductions, fixed fee deductions, award fee nonpayment, or
other contractual actions deemed necessary by the Contracting Officer. If the
detention facility continues to have deficiencies despite the issuance of CDRs,
ICE may seek to terminate the contract and/or decline to renew the contract.

> For non-dedicated ICE detention facilities that fail to meet the minimum
requirements of the ERO PRR, ICE will issue a Notice of Intent indicating that
the intergovernmental service agreement is in jeopardy due to non-compliance
with the ERO PRR and may take appropriate action, including removing its detention
population from the facility or reducing its detention population at the facility on a
temporary or permanent basis, depending on the nature of the non- compliance.

---

[6] A *cohort* is a group of persons with a similar condition grouped or housed together for observation over a period of time. Isolation
and quarantine are public health practices used to protect the public from exposure to individuals who have or may have a contagious
disease. For purposes of this document, and as defined by the CDC, *quarantine* is the separation of a person or group of people
reasonably believed to have been exposed to a communicable disease but not yet symptomatic, from others who have not been
exposed, to prevent the possible spread of the communicable disease. For purposes of this document, and as defined by the CDC,
*isolation* is the separation of a person or group of people known or reasonably believed to be infected with a communicable disease
and potentially infectious from others to prevent the spread of the communicable disease.

**CONCEPT OF OPERATIONS**

The ERO PRR is intended for use across ICE's entire detention network, applying to all facilities housing ICE detainees, including ICE-owned Service Processing Centers, facilities operated by private vendors, and facilities operated by local government agencies that have mixed populations of which ICE detainees comprise only a small fraction.

DEDICATED ICE DETENTION FACILITIES

All dedicated ICE detention facilities[7] must:

➢ Comply with the provisions of their relevant ICE contract or service agreement.

➢ Comply with the ICE national detention standards applicable to the facility, generally PBNDS 2011.

➢ Comply with the CDC's Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities (Attachment F).

➢ Follow ICE's March 27, 2020 Memorandum to Detention Wardens and Superintendents on COVID-19 Action Plan Revision 1, and subsequent updates (Attachment G).

➢ Report all confirmed and suspected COVID-19 cases to the local ERO Field Office Director (or designee), Field Medical Coordinator, and local health department immediately.

➢ Evaluate all new intakes within five days of entering ICE custody to determine whether the detainees fall within the populations identified by the CDC as potentially being at higher risk for serious illness from COVID-19 and/or the subclasses certified in *Fraihat v. ICE*, --- F. Supp. 3d ---, 2020 WL 1932570 (C.D. Cal. Apr. 20, 2020), and notify both the local ERO Field Office Director (or designee) and the Field Medical Coordinator as soon as practicable, but in no case more than twelve hours of determining whether the detainee meets the criteria. These populations and subclasses include:
   • Older Adults (55 plus);

   • People who are pregnant;

   • People of all ages with chronic health conditions, including:

---

[7] Dedicated ICE detention facilities are facilities that house only ICE detainees. Dedicated ICE detention facilities may be ICE-owned Service Processing Centers, privately owned Contract Detention Facilities, or facilities operated by state or local governments that hold no other detention populations except ICE detainees.

- o  Cancer;

- o  Chronic kidney disease;

- o  COPD (chronic obstructive pulmonary disease);

- o  Immunocompromised state (weakened immune system) from solid organ transplant);

- o  Obesity (body mass index [BMI] of 30 or higher);

- o  Serious heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies;

- o  Sickle cell disease;

- o  Type 2 diabetes mellitus;

- o  Asthma (moderate-to-severe);

- o  Cerebrovascular disease (affects blood vessels and blood supply to the brain);

- o  Cystic fibrosis;

- o  Hypertension or high blood pressure;

- o  Immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines;

- o  Neurologic conditions, such as dementia;

- o  Liver disease;

- o  Pulmonary fibrosis (having damaged or scarred lung tissues);

- o  Smoking (current and former);

- o  Thalassemia (a type of blood disorder);

- o  Type 1 diabetes mellitus.

- • People of all ages who are detained with a physical or mental impairment that substantially limits one or more major life activities or who has a record of physical or mental impairment that substantially limits a major life activity.

- • Severe psychiatric illness (including Psychotic Disorder, Bipolar Disorder,

Schizophrenia or Schizoaffective Disorder, Major Depressive Disorder with Psychotic Features, Dementia and/or a Neurocognitive Disorder, or Intellectual Development Disorder (moderate, severe, or profound));Individuals of all ages who are detained with a physical or mental impairment that substantially limits one or more major life activities or who has a record of physical or mental impairment that substantially limits a major life activity.

➢ Detainees, or anyone on the behalf of the detainee who claims the detainee meets the criteria who claim or are suspected to meet the criteria should be evaluated within five days of making the claim.

➢ Upon evaluation, both the local ERO Field Office Director (or designee) and the Field Medical Coordinator must be notified as soon as practicable, but in no case more than twelve hours after the evaluation has occurred, as to whether the detainee meets the criteria.

➢ Notification shall be made via email from the facility's Health Services Administrator (HSA) (or equivalent) and contain the following subject line for ease of identification: "Notification of COVID-19 High Risk Detainee (A-Number)." At a minimum, the HSA email message will provide the following information:

- Detainee name;

- Detention location;

- Current medical issues and medications currently prescribed;

- Facility medical Point of Contact (POC) and phone number.

NON-DEDICATED ICE DETENTION FACILITIES

All non-dedicated ICE detention facilities and local jails housing ICE detainees must:

➢ Comply with the provisions of their relevant ICE contract or service agreement.

➢ Comply with the ICE national detention standards applicable to the facility, generally PBNDS 2011.

➢ Comply with the CDC *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*.

➢ Report all confirmed and suspected COVID-19 cases to the local ERO Field Office Director (or designee), Field Medical Coordinator, and local health department immediately.

➢ Notify both the ERO Field Office Director (or designee) and Field Medical Coordinator as soon as practicable, but in no case more than twelve hours after identifying any detainee who meets the CDC's identified populations potentially being at higher risk for serious illness from COVID-19 and/or the subclasses certified in *Fraihat v. ICE*, *supra*. These populations and subclasses include:

- People who are pregnant;

- People of all ages with chronic health conditions, including:
    - Cancer;

    - Chronic kidney disease;

    - COPD (chronic obstructive pulmonary disease);

    - Immunocompromised state (weakened immune system) from solid organ transplant;

    - Obesity (body mass index [BMI] of 30 or higher);

    - Serious heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies;

    - Sickle cell disease;

    - Type 2 diabetes mellitus;

    - Asthma (moderate-to-severe);

    - Cerebrovascular disease (affects blood vessels and blood supply to the brain);

    - Cystic fibrosis;

    - Hypertension or high blood pressure;

    - Immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines;

    - Neurologic conditions, such as dementia;

    - Liver disease;

    - Pulmonary fibrosis (having damaged or scarred lung tissues);

    - Smoking;

o   Thalassemia (a type of blood disorder);

o   Type 1 diabetes mellitus.

- People of all ages who are detained with a physical or mental impairment that substantially limits one or more major life activities or who has a record of physical or mental impairment that substantially limits a major life activity.

➢ Notification should be made via email from the facility's HSA (or equivalent) and should contain the following subject line for ease of identification: "Notification of COVID-19 High Risk Detainee (A-Number)." Other standardized means of communicating this information to ICE, as established by agreement between the local ERO Field Office Director (or designee) and the Warden or Superintendent, are acceptable. At a minimum the HSA communication to ICE will provide the following information:

- Detainee name;

- Detention location;

- Current medical issues and medications currently prescribed;

- Facility medical POC and phone number.

---

## ALL FACILITIES HOUSING ICE DETAINEES

---

In addition to the specific measures listed above, all detention facilities housing ICE detainees <u>must also</u> comply with the following:

**PREPAREDNESS**

Administrators should plan and prepare for COVID-19 by ensuring that all persons in the facility know the symptoms of COVID-19 and how to respond if they develop symptoms. Other essential actions include developing contingency plans for reduced workforces due to absences, coordinating with public health and correctional partners, and communicating clearly with staff and detainees about these preparations and how they may temporarily alter daily life.

➢ Develop information-sharing systems with partners.

- Identify points of contact in relevant state, local, tribal, and/or territorial public health department before cases develop.

- Communicate with other correctional and detention facilities in the same geographic area to share information including disease surveillance and

absenteeism patterns among staff.

➢ Review existing pandemic, influenza, all-hazards, and disaster plans, and revise for COVID-19, and ensure that they meet the requirements of ICE's detention standards.

➢ Offer the seasonal influenza vaccine to all detained persons (existing populations and new intakes) and staff throughout the influenza season, where possible.

➢ Staffing:

  • Review sick leave policies to ensure that staff can stay home when sick and determine which officials will have the authority to send symptomatic staff home. Staff who report for work with symptoms of COVID-19 must be sent home and advised to follow CDC-recommended steps for persons exhibiting COVID-19 symptoms.

  • Staff who test positive for COVID-19 must inform their workplace and personal contacts immediately. If a staff member has a confirmed COVID-19 infection, the relevant employers will inform other staff of their possible exposure to COVID-19 in the workplace consistent with any legal limitations on the sharing of such information. Exposed employees must then self-monitor for symptoms (e.g., fever, cough, or shortness of breath).

  • Identify staff whose duties would allow them to work from home in order to promote social distancing and further reduce the risk of COVID-19 transmission.

  • Determine minimum levels of staff in all categories required for the facility to function safely.

  • Follow the Public Health Recommendations for Community-Related Exposure.[8]

  • Follow guidance from the Equal Employment Opportunity Commission, available here, when offering testing to staff. Any time a positive test result is identified, ensure that the individual is rapidly notified, connected with appropriate medical care, and advised how to self-isolate.

➢ Supplies:

  • Ensure that sufficient stocks of hygiene supplies (soap, hand sanitizer, tissues); personal protective equipment (PPE) including facemasks, N95 respirators, eye protection, disposable medical gloves, and disposable gowns/one-piece coveralls; and medical supplies (consistent with the

---

[8] Attachment H, Centers of Disease Control and Prevention, Public Health Guidance for Community-Related Exposure, https://www.cdc.gov/coronavirus/2019-ncov/php/public-health-recommendations.html (last visited July 19, 2020).

healthcare capabilities of the facility) are on hand and there is a plan in place
to restock as needed if COVID-19 transmission occurs within the facility.

- Note that shortages of N95 respirators are anticipated during the COVID-19
response. Based on local and regional situational analysis of PPE supplies,
face masks should be used when the supply chain of N95 respirators cannot
meet the demand.

- Follow COVID-19: Optimizing Supply of PPE and Other Equipment.[9]

- Ensure that staff and detainees are trained to don, doff, and dispose of PPE
they will need to use while performing duties within the scope of their
responsibilities.

- Soiled PPE items should be disposed in leak-proof plastic bags that are tied at
the top and not re-opened. Bags can be disposed of in the regular solid waste
stream.

- Cloth face coverings should be worn by detainees and staff (when PPE
supply is limited) to help slow the spread of COVID-19. Cloth face masks
should:

  o Fit snugly but comfortably against the side of the face be secured with
  ties or ear loops where possible or securely tied;

  o Include multiple layers of fabric;

  o Allow for breathing without restriction;

  o Be able to be laundered and machine dried without damage or change
  to shape;

  o Be provided at no cost to detainees.

- Cloth face coverings are contraindicated for children under two years of
age, anyone who has trouble breathing, is unconscious, incapacitated or
otherwise unable to remove the mask without assistance.

➢ Hygiene:

- Reinforce healthy hygiene practices, and provide and restock hygiene
supplies throughout the facility, including in bathrooms, food preparation and
dining areas, intake areas, visitor entries and exits, visitation rooms, common
areas, medical, and staff-restricted areas (e.g., break rooms).

---

[9] Attachment I, Centers for Disease Control and Prevention, Optimizing Supply of PPE and Other Equipment during Shortages,
https://www.cdc.gov/coronavirus/2019-ncov/hcp/ppe-strategy/ (last visited July 20, 2020).

- Require all persons within the facility to cover their mouths and noses with their elbows (or ideally with a tissue) rather than with their hands when they cough or sneeze, and to throw all tissues in the trash immediately after use.

- Provide detainees and staff no-cost access to tissues and no-touch receptacles for disposal.
- Require all persons within the facility to maintain good hand hygiene by regularly washing their hands with soap and water for at least 20 seconds, especially after coughing, sneezing, or blowing their noses; after using the bathroom; before eating or preparing food; before taking medication; and after touching garbage.

- Provide detainees and staff no-cost, unlimited access to supplies for hand cleansing, including liquid or foam soap, running water, hand drying machines or disposable paper towels, and no-touch trash receptacles. If bar soap is used, ensure that it is does not irritate the skin as this would discourage frequent hand washing and ensure that individuals are not sharing bars of soap.

- Provide alcohol-based hand sanitizer with at least 60 percent alcohol where permissible based on security restrictions.

- Require all persons within the facility to avoid touching their eyes, noses, or mouths without cleaning their hands first.

- If possible, inform potential visitors, including inspectors and auditors, before they travel to the facility that they should expect to be screened for COVID-19 and will be unable to enter the facility if they do not clear the screening process or if they decline screening.

- Post signage throughout the facility reminding detained persons and staff to practice good hand hygiene and cough etiquette (printable materials for community-based settings can be found on the CDC website). Signage must be in English and Spanish, as well as any other common languages for the detainee population at the facility.

- Prohibit sharing of eating utensils, dishes, and cups.

- Prohibit non-essential personal contact such as handshakes, hugs, and high-fives.

➢ Provide individuals about to be released from ICE custody with COVID-19 prevention information, hand hygiene supplies, and cloth face coverings.

➢ Cleaning/Disinfecting Practices:

- Adhere to CDC recommendations for cleaning and disinfection during the

COVID-19 response.[10]

- Several times a day using household cleaners and Environmental Protection Agency-registered disinfectants, clean and disinfect surfaces and objects that are frequently touched, especially in common areas (e.g., doorknobs, light switches, sink handles, countertops, toilets, toilet handles, recreation equipment). The EPA's list of certified cleaning products is located here.

- Staff should clean shared equipment several times per day and on a conclusion-of-use basis (e.g., radios, service weapons, keys, handcuffs).

- Ensure that transport vehicles are thoroughly cleaned after carrying a confirmed or suspected COVID-19 case.

- Facility leadership will ensure that there is adequate oversight and supervision of all individuals responsible for cleaning and disinfecting these areas.

### *CDC Recommended Cleaning Tips*

➢ Hard (Non-porous) Surfaces:

- If surfaces are dirty, they should be cleaned using a detergent or soap and water prior to disinfection.

- For disinfection, most common EPA-registered household disinfectants should be effective.

  o A list of products that are EPA-approved for use against the virus that causes COVID-19 is available here. Follow the manufacturer's instructions for all cleaning and disinfection products for concentration, application, method, contact time, etc.

  o Additionally, diluted household bleach solutions (at least 1000 ppm sodium hypochlorite) can be used if appropriate for the surface. Follow manufacturer's instructions for application, ensuring a contact time of at least one minute and allowing proper ventilation during and after application. Check to ensure the product is not past its expiration date. Never mix household bleach with ammonia or any other cleanser. Unexpired household bleach will be effective against coronaviruses when properly diluted.

    ▪ Prepare a bleach solution by mixing:

      - 5 tablespoons (1/3 cup) bleach per gallon of water; or

---

[10] Attachment J, Centers for Disease Control and Prevention, Cleaning and Disinfection for Community Facilities, https://www.cdc.gov/coronavirus/2019-ncov/community/organizations/cleaning-disinfection.html (last visited June 21 2020).

- 4 teaspoons bleach per quart of water.

➢ Soft (Porous) Surfaces:

- For soft (porous) surfaces, such as carpeted floor, rugs, and drapes, remove visible contamination if present and clean with appropriate cleaners indicated for use on these surfaces. After cleaning:

  o If the items can be laundered, launder items in accordance with the manufacturer's instructions using the warmest appropriate water setting for the items and then dry items completely.

  o Otherwise, use products that are EPA-approved for use against the virus that causes COVID-19 and that are suitable for porous surfaces.[11]

➢ Electronics:

- For electronics such as tablets, touch screens, keyboards, remote controls, and ATM machines, remove visible contamination if present.

  o Follow the manufacturer's instructions for all cleaning and disinfection products.

  o Consider use of wipeable covers for electronics.

  o If no manufacturer guidance is available, consider the use of alcohol-based wipes or sprays containing at least 70 percent alcohol to disinfect touch screens. Dry surfaces thoroughly to avoid pooling of liquids.

➢ Linens, Clothing, and Other Items That Go in the Laundry:

- In order to minimize the possibility of dispersing virus through the air, do not shake dirty laundry.

- Wash items as appropriate in accordance with the manufacturer's instructions. If possible, launder items using the warmest appropriate water setting for the items and dry items completely. Dirty laundry that has been in contact with an ill person can be washed with other people's items.

- Clean and disinfect hampers or other carts for transporting laundry according to guidance above for hard or soft surfaces.

- Consider establishing an on-site laundry option for staff so that they can change out of their uniform, launder them at the facility, and wear street clothes and shoes home. If on-site laundry for staff is not feasible, encourage them to change clothes

---

[11] Attachment K, U.S. Environmental Protection Agency, *List N: Disinfectants for Use Against SARS-CoV-2*, https://www.epa.gov/pesticide-registration/list-n-disinfectants-use-against-sars-cov-2 (last visited July 19, 2020).

before they leave the work site, and provide a location for them to do so.

**PREVENTION**

Detention facilities can prevent the introduction of COVID-19 from the community and reduce transmission if it is already inside by reinforcing good hygiene practices among incarcerated/detained persons, staff, and visitors (including increasing access to soap and paper towels), intensifying cleaning/disinfection practices, and implementing social distancing strategies.
Because many individuals infected with COVID-19 do not display symptoms, the virus could be present in facilities before cases are identified. Both good hygiene practices and social distancing are critical in preventing further transmission:

> ➢ Perform pre-intake screening for all staff and new entrants for COVID-19 symptoms.

> ➢ Screening should take place before staff and new intakes enter the facility or just inside the facility, where practicable. For new admissions, this should occur before beginning the intake process, in order to identify and immediately isolate any detainee with symptoms before the individual comingles with others or is placed in the general population. This should include temperature screening of all staff and new entrants as well as a verbal symptoms check.

>> • Verbal screening for symptoms of COVID-19 and contact with COVID-19 cases should include the following questions based on Interim Guidance: Managing COVID-19 in Correctional/Detention Facilities:

>>> o Today or in the past 24 hours, have you had any of the following symptoms:
>>>> ▪ Fever, felt feverish, or had chills?

>>>> ▪ Cough?

>>>> ▪ Difficulty breathing?

>>>> ▪ Chills?

>>>> ▪ Muscle pain?

>>>> ▪ Sore throat?

>>>> ▪ New loss of taste or smell?

>>> o In the past fourteen days, have you had contact with a person known to be infected with COVID-19 where you were not wearing the recommended proper PPE?

>> • If staff have symptoms of COVID-19 (e.g., fever, cough, shortness of breath),

they must be denied access to the facility.

- If any new intake has symptoms of COVID-19:

  o Require the individual to wear a face mask;

  o Ensure that staff interacting with the symptomatic individual wears recommended PPE;

  o Isolate the individual and refer to healthcare staff for further evaluation;

  o Facilities without onsite healthcare staff should contact their state, local, tribal, and/or territorial health department to coordinate effective isolation and necessary medical care;

- If an individual is a close contact of a known COVID-19 case or has traveled to an affected area, but has no COVID-19 symptoms, quarantine the individual and monitor for symptoms two times per day for fourteen days.

➢ Consider testing all newly detained persons before they join the rest of the population in the detention facility.  For further information, refer to the TESTING section below and CDC Interim Considerations for SARS-CoV-2 Testing in Correctional and Detention Facilities, available here:  https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/testing.html

➢ Visitation:

- During suspended (social) or modified (legal) visitation programs, the facilities should provide access to virtual visitation options where available. When not possible, verbally screen all visitors on entry for symptoms of COVID-19 and perform temperature checks, when possible. ICE continues to explore opportunities to enhance attorney access while legal visits are being impacted. For facilities at which immigration hearings are conducted or where detainees are otherwise held who have cases pending immigration proceedings, this may include:

  o Adding all immigration attorneys of record to the Talton Pro-bono platform;

  o Requiring facilities to establish a process for detainees/attorneys to schedule appointments and facilitate the calls;

  o Leveraging technology (e.g., tablets, smartphones) to facilitate attorney/client communication;

  o Working with the various detention contractors and telephone service providers to ensure that all detainees receive some number of free calls per week.

- Communicate with the public about any changes to facility operations, including visitation programs. Facilities are encouraged to prohibit or, at a minimum, significantly adopt restricted visitation programs. Facilities are required to suspend all volunteer work program (VWP) assignments for detainees assigned to food service and other VWP assignments, where applicable, that require individuals to interact with each other at distances of less than six feet. Any detainee participating in a VWP assignment is required to wear appropriate PPE for the position at all times (e.g., disposable gloves, masks, goggles). Detainees in isolation or quarantine may not be assigned to a VWP detail.

➢ Where possible, limit transfers of detained non-ICE populations to and from other jurisdictions and facilities unless necessary for medical evaluation, medical isolation/quarantine, clinical care, extenuating security concerns, to facilitate release or removal, or to prevent overcrowding. When necessary to transport individuals with confirmed or suspected COVID-19, if the vehicle is not equipped with emergency medical service (EMS) features, at a minimum, drive with the windows down and ensure that the fan is set to high, in non-recirculating mode. If the vehicle has a ceiling hatch, keep it open.

➢ Consider suspending work release programs for inmates at shared facilities to reduce overall risk of introduction and transmission of COVID-19 into the facility.

➢ Require all staff (both medical and correctional) to wear PPE when encountering or interacting with any ICE detainee at a distance of less than six feet.

➢ Required PPE should always be worn by staff, even if separated by a distance of six feet or more, if the individual appears feverish or ill and/or with respiratory symptoms while interviewing, escorting, or interacting in other ways.

➢ Additional Measures to Facilitate Social Distancing:

  o Although strict social distancing may not be possible in congregate settings such as detention facilities, all facilities housing ICE detainees should implement the following measures to the extent practicable. Efforts should be made to reduce the population to approximately 75 percent of capacity.

  o Where detainee populations are such that cells are available, to the extent possible, house detainees in individual rooms.

  o Recommend that detainees sharing sleeping quarters sleep "head-to-foot."

  o Extend recreation, law library, and meal hours and stagger detainee access to the same in order to limit the number of interactions between detainees from other housing units.

  o Staff and detainees should be directed to avoid congregating in groups of

ten or more, employing social distancing strategies at all times.

    o  Whenever possible, all staff and detainees should maintain a distance of six feet from one another.

    o  If practicable, beds in housing units should be rearranged to allow for six feet of distance between the faces of detainees.

- If group activities are discontinued, it is important to identify alternative forms of activity to support the mental health of detainees.

## MANAGEMENT

If there has been a suspected COVID-19 case inside the facility (among incarcerated/detained persons, staff, or visitors who have recently been inside), facilities shall begin implementing management strategies while test results are pending. Essential management strategies include placing cases and individuals with symptoms under medical isolation, quarantining their close contacts, and facilitating necessary medical care while observing relevant infection control and environmental disinfection protocols and wearing recommended PPE.

*ICE Custody Review for Potentially High-Risk Detainees*

Upon being informed of a detainee who may potentially be at higher risk for serious illness from exposure to COVID-19, ERO will review the case to determine whether continued detention is appropriate.[12] ICE will make such custody determinations on a case-by-case basis, pursuant to the applicable legal standards, with due consideration of the public health considerations implicated.

➢ Considerable effort should be made to quarantine all new entrants for fourteen days before they enter the general population.

➢ To do this, facilities should consider cohorting daily intakes; two days of new intakes, or multiple days of new intakes, in designated areas prior to placement into the general population. Given significant variations among facilities, cohorting options and capabilities will differ across ICE's detention network. ICE encourages all facilities to adopt the most effective cohorting methods practicable based on the individual facility characteristics, taking into account the number of new intakes anticipated per day.

➢ For suspected or confirmed COVID-19 cases:
- Isolate the individual immediately in a separate environment from other individuals. Facilities should make every possible effort to isolate persons individually. Each isolated individual should be assigned his or her own housing space and bathroom where possible. Isolating ill detainees as a group should only be practiced if there are no other available options.

---

[12] Attachment L, Assistant Director Peter Berg, Enforcement and Removal Operations, Updated Guidance: COVID-19 Detained Docket Review (Apr. 4, 2020).

- If single isolation rooms are unavailable, individuals with laboratory-confirmed COVID-19 should be isolated together as a cohort separate from other detainees, including those with pending tests. Ill detainees that are pending testing or are waiting for test results should be isolated together as a group separate from laboratory-confirmed COVID-19 cases and other detainees. Confirmed COVID-19 cases should not be cohorted with suspected cases or case contacts.

- Housing should maintain separation of groups by common criteria (e.g., COVID-19 test results positive, febrile or symptomatic pending testing or results, asymptomatic/exposed).

- Ensure that the individual is always wearing a face mask (if it does not restrict breathing) when outside of the isolation space, and whenever another individual enters the isolation room. If wearing masks will negatively impact breathing, facilities should ensure caregivers are aware of that fact and implement restrictions on contact as appropriate during isolation (e.g., increased social distancing, PPE use by people who enter space, moving and handling people separately, increased cleaning, etc.). Masks should be changed at least daily, and when visibly soiled or wet.

- In the event that a facility requires more isolation beds for detainees, ICE must be promptly notified so that transfers to other facilities, transfers to hospitals, or releases can be coordinated immediately. Until such time as the transfer or release is arranged, the facility must be especially mindful of cases that are at higher risk of severe illness from COVID-19. Ideally, symptomatic detainees should not be isolated with other individuals. If isolating of symptomatic COVID-positive detainees as a group is unavoidable, make all possible accommodations until transfer occurs to prevent transmission of other infectious diseases to the higher-risk individual (e.g., allocate more space for a higher-risk individual within a shared isolation room).

- Review the CDC's preferred method of medically isolating COVID-19 cases here, depending on the space available in a particular facility. In order of preference, individuals under medical isolation should be housed:

  o Separately, in single cells with solid walls (i.e., not bars) and solid doors that close fully.

  o Separately, in single cells with solid walls but without solid doors.

  o As a cohort, in a large, well-ventilated cell with solid walls and a solid door that closes fully. Employ social distancing strategies related to housing in the Prevention section above.

  o As a cohort, in a large, well-ventilated cell with solid walls but without a

solid door. Employ social distancing strategies related to housing in the Prevention section above.

o   As a cohort, in single cells without solid walls or solid doors (i.e., cells enclosed entirely with bars), preferably with an empty cell between occupied cells. (Although individuals are in single cells in this scenario, the airflow between cells essentially makes it a cohort arrangement in the context of COVID-19.)

o   As a cohort, in multi-person cells without solid walls or solid doors (i.e., cells enclosed entirely with bars), preferably with an empty cell between occupied cells. Employ social distancing strategies related to housing in the Prevention section above.

•   When detainees must be housed in the spaces used for administrative segregation or solitary confinement, ensure that medical isolation is *operationally* distinct, even if the same housing spaces are used for both. For example:

o   Ensure that individuals under medical isolation receive regular visits from medical staff and have access to mental health services.

o   Make efforts to provide similar access to radio, TV, reading materials, personal property, and commissary as would be available in individuals' regular housing units.

o   Consider allowing increased telephone privileges without a cost barrier to maintain mental health and connection with others while isolated.

o   Communicate regularly with isolated individuals about the duration and purpose of their medical isolation period.

•   Maintain isolation until all the CDC criteria have been met. The decision to discontinue Transmission-Based Precautions should be made using a test-based strategy, a symptom-based strategy, or a time-based strategy.[13] Detainees that meet criteria for discontinuation of transmission-based precautions can be housed in general population. The two groups defined by CDC are detainees who tested positive but did not develop symptoms of COVID-19 and detainees who tested positive and were symptomatic.

•   **Keep the individual's movement outside the medical isolation space to an absolute minimum.**

---

[13] *See* Attachment M, Centers for Disease Control and Prevention, *Discontinuation of Transmission-Based Precautions and Disposition of Patients with COVID-19 in Healthcare Settings (Interim Guidance)*, https://www.cdc.gov/coronavirus/2019-ncov/hcp/disposition-hospitalized-patients.html (last visited July 19, 2020).

- o Provide medical care to isolated individuals inside the medical isolation space, unless they need to be transferred to a healthcare facility. See Infection Control and Clinical Care sections for additional details.

- o Serve meals inside the medical isolation space.

- o Exclude the individual from all group activities.

- o Assign the isolated individual(s) a dedicated bathroom when possible. When a dedicated bathroom is not feasible, do not reduce access to restrooms or showers as a result. Clean and disinfect areas used by infected individuals frequently on an ongoing basis during medical isolation.

- **Ensure that the individual is wearing a cloth face covering if they must leave the medical isolation space for any reason, and whenever another individual enters.** Provide clean masks as needed. Masks should be washed routinely and changed when visibly soiled or wet.

- Detainees with COVID-19 (positive test result) who reported symptoms consistent with COVID-19 may discontinue isolation under the following conditions:

  - o At least 10 days have passed since symptom onset and;

  - o At least 24 hours have passed since resolution of fever without the use of fever-reducing medications and;

  - o Other symptoms have improved.

  - o A limited number of persons with severe illness may produce replication-competent virus beyond 10 days, that may warrant extending duration of isolation for up to 20 days after symptom onset. Consider consultation with infection control experts. See Discontinuation of Transmission-Based Precautions and Disposition of Patients with COVID-19 in Healthcare Settings (Interim CDC Guidance). Such patients are generally considered to have required hospitalization.

- Detainees infected with SARS-CoV-2 (positive test result) who never develop COVID-19 symptoms may discontinue isolation and other precautions 10 days after the date of their first positive RT-PCR test for SARS-CoV-2 RNA.

- RT-PCR testing for detection of SARS-CoV-2 RNA for discontinuing isolation could be considered for detainees who are severely immunocompromised, in consultation with infectious disease experts.

  - o For all others, a test-based strategy is no longer recommended

except to discontinue isolation or other precautions earlier than would occur under the symptom-based strategy outlined above.

o The test-based strategy for severely compromised detainees requires negative results using RT-PCR for detection of SARS-CoV-2 RNA under an FDA Emergency Use Authorization (EUA) for COVID-19 from at least two consecutive respiratory specimens collected ≥24 hours apart (total of two negative specimens) (see CDC Interim Guidelines for Collecting, Handling, and Testing Clinical Specimens from Persons for Coronavirus Disease).

o All test results should be final before isolation is ended

• Meals should be provided to COVID-19 cases in their isolation rooms. Isolated cases should throw disposable food service items in the trash in their isolation room. Non-disposable food service items should be handled with gloves and washed with hot water or in a dishwasher. Individuals handling used food service items must clean their hands after removing gloves.

• Laundry from a COVID-19 case can be washed with another individuals' laundry.

o Individuals handling laundry from COVID-19 cases should wear disposable gloves, discard gloves after each use, and clean their hands after handling.

o Do not shake dirty laundry. This will minimize the possibility of dispersing the virus through the air.

o Launder items as appropriate in accordance with the manufacturer's instructions. If possible, launder items using the warmest appropriate water setting for the items and dry items completely.

o Clean and disinfect clothes hampers according to guidance above for surfaces. If permissible, consider using a bag liner that either is disposable or can be laundered.

**TESTING**

➢ Consistent with CDC recommendations, facilities "considering diagnostic testing of people with possible COVID-19 should continue to work with their local and state health departments to coordinate testing through public health laboratories, or work with commercial or clinical laboratories using diagnostic tests authorized for emergency use by the U.S. Food and Drug Administration."[14] Before testing large numbers of asymptomatic individuals without known or suspected exposure, facility leadership

---

[14] Attachment O, Centers of Disease Control and Prevention, Overview of Testing for SARS-CoV-2, https://www.cdc.gov/coronavirus/2019-nCoV/hcp/clinical-criteria.html (last visited June 21, 2020July 19, 2020).

should have a plan in place for how they will modify operations based on test results.  CDC recommendations on planning for facility wide testing may be found here: https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/testing.html.

- CDC recommends SARS-CoV-2 testing with viral tests (i.e., nucleic acid or antigen tests) for:

  o Individuals with signs or symptoms consistent with COVID-19;

  o Asymptomatic individuals with recent known or suspected exposure to SARS-CoV-2 to control transmission;

  o Asymptomatic individuals without known or suspected exposure to SARS-CoV-2 for early identification in special settings;

  o Individuals being tested to determine resolution of infection (i.e., test-based strategy for Discontinuation of Transmission-based Precautions, HCP Return to Work, and Discontinuation of Home Isolation);

  o Individuals being tested for purposes of public health surveillance for SARS-CoV-2.

- CDC recommends using authorized nucleic acid or antigen detection assays that have received an FDA EUA to test persons **with** symptoms when there is a concern of potential COVID-19.

- Testing is recommended for all close contacts of persons with SARS-CoV-2 infection.  In some settings, broader testing, beyond close contacts, is recommended as a part of a strategy to control transmission of SARS-CoV-2.  Expanded testing might include testing of individuals on the same unit or shift as someone with SARS-CoV-2 infection, or even testing all individuals within a shared setting (e.g., facility-wide testing). In areas where testing resources are limited, CDC has established a testing hierarchy for close contacts, which can be found here: https://www.cdc.gov/coronavirus/2019-ncov/downloads/case-investigation-contact-tracing.pdf.

- CDC does not currently recommend using antibody testing as the sole basis for diagnosis of acute infection, and antibody tests are not authorized by FDA for such diagnostic purposes.  For the most current information on CDC recommendations for antibody testing, please go to: https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/testing.html; https://www.cdc.gov/coronavirus/2019-ncov/lab/resources/antibody-tests.html.

- For the most current CDC recommendations for viral testing and specimen collection, please go to: https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/testing.html; https://www.cdc.gov/coronavirus/2019-nCoV/hcp/clinical-criteria.html.

## ATTACHMENTS

| ATTACHMENT LETTER | DOCUMENT NAME AND CITATION |
|---|---|
| A | U.S. Immigration and Customs Enforcement, *Updated ICE statement on COVID-19* (Mar. 18, 2020), https://www.ice.gov/news/releases/updated- ice-statement-covid-19. |
| B | Centers of Disease Control and Prevention, *Symptoms of Coronavirus*, https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last visited July 19, 2020). |
| C | ICE National Detention Standards 2019, Standard 4.3, Medical Care, https://www.ice.gov/doclib/detention-standards/2019/4_3.pdf. |
| D | 2011 ICE Performance-Based National Detention Standards, Revised 2016, Standard 4.3, https://www.ice.gov/doclib/detention-standards/2011/4-3.pdf. |
| E | 2008 ICE Performance-Based National Detention Standards, Standard 4-22, Medical Care, https://www.ice.gov/doclib/dro/detention-standards/pdf/medical_care.pdf. |
| F | Centers of Disease Control and Prevention, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities* ( July 14, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html  (last visited July 19, 2020). |
| G | Memorandum from Executive Associate Director Enrique Lucero, Enforcement and Removal Operations, *Memorandum on Coronavirus 2019 (COVID-19) Action Plan, Revision 1* (Mar. 27, 2020). |
| H | Centers of Disease Control and Prevention, *Public Health Guidance for Community-Related Exposure*, https://www.cdc.gov/coronavirus/2019-ncov/php/public- health-recommendations.html (last visited July 19, 2020). |
| I | Centers for Disease Control and Prevention, *Optimizing  Supply of PPE and Other Equipment during Shortages*, https://www.cdc.gov/coronavirus/2019-ncov/hcp/ppe-strategy/ (last visited July 20, 2020). |

| ATTACHMENT LETTER | DOCUMENT NAME AND CITATION |
|---|---|
| J | Centers for Disease Control and Prevention, *Cleaning and Disinfection for Community Facilities*, https://www.cdc.gov/coronavirus/2019-ncov/community/organizations/cleaning-disinfection.html (last visited July 19, 2020). |
| K | U.S. Environmental Protection Agency, *List N: Disinfectants for Use Against SARS-CoV-2*, https://www.epa.gov/pesticide-registration/list-n-disinfectants- use-against-sars-cov-2 (last visited July 19, 2020). |
| L | Assistant Director Peter Berg, Enforcement and Removal Operations, *Updated Guidance: COVID-19 Detained Docket Review* (Apr. 4, 2020). |
| M | Centers for Disease Control and Prevention, *Discontinuation of Transmission-Based Precautions and Disposition of Patients with COVID-19 in Healthcare Settings (Interim Guidance)*, https://www.cdc.gov/coronavirus/2019-ncov/hcp/disposition-hospitalized-patients.html (last visited July 19, 2020) |
| N | Centers of Disease Control and Prevention, *Interim Guidelines for Collecting, Handling, and Testing Clinical Specimens for COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/lab/guidelines-clinical-specimens.html (last visited July 19, 2020) |
| O | Centers of Disease Control and Prevention, *Overview of Testing for SARS-CoV-2*, https://www.cdc.gov/coronavirus/2019-nCoV/hcp/clinical-criteria.html (last visited July 19, 2020) |
| P | Centers of Disease Control and Prevention, *Interim Considerations for SARS-CoV-2 Testing in Correctional and Detention Facilities*, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/testing.html (last visited July 22, 2020) |