1
2
3
4

ANDREA SHERIDAN ORDIN (SBN 38235)
STRUMWASSER & WOOCHER LLP
10940 Wilshire Boulevard, Suite 2000
Los Angeles, California 90024
Telephone: (310) 576-1233
Facsimile: (310) 319-0156
E-mail: aordin@strumwooch.com

5

*Independent Monitor*

6

7

**UNITED STATES DISTRICT COURT**

8

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

9

10
11
12
13
14
15
16
17
18

JENNY LISETTE FLORES, *et al.*,

Plaintiffs,

v.

WILLIAM P. BARR, Attorney General of the United States, *et al.*,

Defendants.

CASE NO. CV 85-4544-DMG (AGRx)

**NOTICE OF FILING OF INTERIM REPORT ON THE USE OF TEMPORARY HOUSING FOR MINORS AND FAMILIES UNDER TITLE 42 BY INDEPENDENT MONITOR AND DR. PAUL WISE**

19
20
21
22
23
24
25
26
27
28

On June 26, 2020, Judge Dolly M. Gee ordered (Doc. 833), among other things, that:

> Dr. Paul Wise and the Independent Monitor Andrea Ordin shall continue to provide enhanced monitoring of the care of the minors at the FRCs and shall have ability to . . . make such recommendations for remedial action that they deem appropriate.

On July 25, 2020, this Court issued another Order (Doc. 887) requiring, among other things:

> The Independent Monitor, Andrea Ordin, may in the exercise of her monitoring duties request such further information regarding safe and sanitary conditions and/or Defendants' continuous efforts at release as she deems appropriate pursuant to her authority under Paragraph B(1)(c)(iii) of the October 5, 2018 Order appointing her, and in consideration of the concerns outlined in this Order and the Court's June 27, 2017 Order regarding minors in prolonged detention at any stage of expedited removal proceedings. [Doc. ## 363, 494.]

On August 7, 2020, this Court issued yet another Order (Doc. 914) affirming the Independent Monitor's authority to monitor the hotelling issue:

> Dr. Paul Wise and the Independent Monitor Andrea Ordin shall continue to provide enhanced monitoring of the FRCs' care of minors, and shall have the ability to . . . make such recommendations for remedial action that they deem appropriate. They shall also continue to monitor the hotelling of minors, under the authority discussed in the Court's July 25, 2020 Order. [Doc. # 887.]

In accordance with the Court's Orders, the Monitor submits the attached Interim Report on the Use of Temporary Housing for Minors and Families under Title 42.

1   DATED:      August 26, 2020          Respectfully submitted,

2
                                         Andrea Sheridan Ordin
3                                        STRUMWASSER & WOOCHER LLP

4

5                                        By ___/s/ Andrea Sheridan Ordin___
6                                              Andrea Sheridan Ordin

7                                        *Special Master / Independent Monitor*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

Case No. CV 85-4544- DMG (AGRx)

I am a citizen of the United States. My business address is 10940 Wilshire Boulevard, Suite 2000, Los Angeles, California 90024. I am over the age of 18 years, and not a party to the within action.

I hereby certify that on August 26, 2020, I electronically filed the following documents with the Clerk of the Court for the United States District Court, Eastern District of California by using the CM/ECF system:

**NOTICE OF FILING OF INTERIM REPORT ON THE USE OF TEMPORARY HOUSING FOR MINORS AND FAMILIES UNDER TITLE 42 BY INDEPENDENT MONITOR AND DR. PAUL WISE**

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the United States the foregoing is true and correct. Executed on August 26, 2020, at Los Angeles, California.

Jeff Thomson

In the United States District Court

Central District of California – Western Division


JENNY LISETTE FLORES, *et al.*, Plaintiffs,

v.

WILLIAM P. BARR, *et al*., Defendants.


Case No. CV 85-4544-DMG (AGRx)

Hon. Dolly M. Gee, United States District Judge


**Interim Report on the Use of Temporary Housing**

**for Minors and Families under Title 42**

**by Independent Monitor and Dr. Paul Wise**


Andrea Sheridan Ordin
Special Master/Independent Monitor
Strumwasser & Woocher LLP
1094 Wilshire Boulevard, Suite 2000
Los Angeles, California 90024
(310) 576-1233

## INTRODUCTION

On June 26, 2020, Judge Dolly M. Gee ordered (Doc. 833), among other things, that:

> Dr. Paul Wise and the Independent Monitor Andrea Ordin shall continue to provide enhanced monitoring of the care of the minors at the FRCs and shall have ability to. . . make such recommendations for remedial action that they deem appropriate.

On July 25, 2020, this Court issued an Order (Doc. 887) requiring, among other things:

> The Independent Monitor, Andrea Ordin, may in the exercise of her monitoring duties request such further information regarding safe and sanitary conditions and/or Defendants' continuous efforts at release as she deems appropriate pursuant to her authority under Paragraph B(1)(c)(iii) of the October 5, 2018 Order appointing her, and in consideration of the concerns outlined in this Order and the Court's June 27, 2017 Order regarding minors in prolonged detention at any stage of expedited removal proceedings.

On August 7, 2020, this Court issued yet another Order (Doc. 914), affirming the Independent Monitor's authority to monitor the hotelling issue:

> Dr. Paul Wise and the Independent Monitor Andrea Ordin shall continue to provide enhanced monitoring of the FRCs' care of minors, and shall have the ability to (a) request and obtain copies of medical care data and policies; (b) have telephone or videoconference access to persons most knowledgeable at the FRCs with whom they can discuss the baseline of custodial medical care, health care protocols, and COVID-19 prevention practices; (c) consider protocols for identifying minors who have serious medical conditions that may make them more vulnerable to COVID-19; (d) interview minors with serious medical conditions or, as appropriate, their guardians; and (e) make such recommendations for remedial action that they deem appropriate. They shall also continue to monitor the hotelling of

minors, under the authority discussed in the Court's July 25, 2020 Order.[1]

In the Independent Monitor's Report filed July 22, 2020, the Independent Monitor and Dr. Paul Wise reported on the temporary housing portion of the Title 42 programs and recommended remedial action under the authority of the June 26, 2020 Order of Judge Gee (Doc. 833) and Order of April 24, 2020 (Doc. 784). That Report described the operation of the program in three hotels, one in McAllen Texas, one in El Paso Texas and one in Phoenix Arizona. Statistics provided by ICE demonstrated that 14 families and 23 single minors were residing in the mentioned hotels as of June 16, 2020.

Dr. Paul Wise and the Independent Monitor, after reporting on the structure of the program and the length of stays of the single minors in hotels, recommended excluding all single minors from the current temporary housing program while expressing particular concern for the vulnerability of single minors below the age of 15.

---

[1] On October 5, 2018, the Court, among other things, ordered the appointment of Andrea Sheridan Ordin as Special Master/Independent Monitor ("Monitor") (Doc. 494):

> If the Monitor has a good faith basis to believe that there is a significant violation of the Court's Orders that cannot reasonably be addressed through a Report and Recommendation due to its exigency, the Monitor shall file on the case docket an interim report and recommendation ("Interim Report and Recommendation"), including any recommendations for steps necessary to improve Defendants' compliance and the reason for the urgency. Prior to filing the Interim Report and Recommendation, the Monitor shall afford the Parties a reasonable opportunity to be heard and to expeditiously cure any violation.

After the August 7, 2020 hearing, the Court set a briefing schedule relating to the Title 42 hotelling issue, directing that Plaintiffs file a motion to enforce the FSA and ordering Dr. Paul Wise and the Monitor to monitor the hotelling of minors under the authority of the Court's July 25, 2020 Order. The Court also ordered that any report and recommendation be filed by August 24, 2020, but subsequently extended that date.

This Interim Report provides information on the monitoring pursuant to that Order and provides a more complete picture of the scope of the program.

## ACTIVITIES OF THE MONITOR JULY 23, 2020 - AUGUST 18, 2020

Since the July 22, 2020 Report, the Independent Monitor has been provided comprehensive data on minors in Family Residential Centers (FRCs) and hotels under Title 42. On August 6, 2020, Dr. Paul Wise and the Monitor conferred with ICE Juvenile Coordinator Deane Dougherty and ICE officials and statisticians regarding points in need of clarification in *Flores* data from March through June of 2020. On August 15, 2020, the Monitor received updated data specifically summarizing the number of single minors, family units, and family groups in hotels under Title 42.

Through the reporting period, the Monitor and Dr. Wise corresponded and attended virtual meetings with counsel for minors at the FRCs, and with lawyers for the defendants.  The Monitor participated in meet and confers among the lawyers, and reviewed drafts and pleadings.  The Monitor and Dr. Wise participated in a virtual tour of both facilities at Dilley and Karnes, and interviewed at length parents and their children.  As part of their review of medical care at both facilities, Dr. Wise and the Monitor had access to the medical leadership at each facility, and with the consent of the patients were

4

able to review medical records.  The next Interim Report will focus on the current medical care for the minors in the FRCs.

## TITLE 42 EXPULSIONS OF BOTH UNACCOMPANIED AND ACCOMPANIED MINORS

From March 1, 2020 through July 31, 2020, the CBP website reports a total of 105,331 U.S. Border Patrol (USBP) expulsions and 4,290 Office of Field Operations (OFO) expulsions along the Southwest Border. USBP expelled 35,056 individuals in July, which represents a 24% increase from the previous month. OFO expulsions saw roughly a 10% increase from 1,359 in June to 1,492 in July.

### U.S. Border Patrol Southwest Border Enforcement Encounters (Title 42 Expulsions and Title 8 Apprehensions)[2]

| Enforcement Action | March | April | May | June | July | FY 20 TD |
|---|---|---|---|---|---|---|
| Title 42 Expulsions | 7,075 | 14,987 | 19,985 | 28,228 | 35,056 | 105,331 |
| Title 8 Apprehensions | 23,309 | 1,175 | 1,568 | 2,493 | 3,291 | 192,907 |

---

[2] U.S. Customs and Border Protection, U.S. Border Patrol Monthly Enforcement Encounters 2020: Title 42 Expulsions and Title 8 Apprehensions, available at https://www.cbp.gov/newsroom/stats/cbp-enforcement-statistics/title-8-and-title-42-statistics (last accessed August 26, 2020).

5

**Office of Field Operations Southwest Border Enforcement Encounters
(Title 42 Expulsions and Title 8 Inadmissible Aliens)[3]**

| Enforcement Action | March | April | May | June | July | FY 20 TD |
|---|---|---|---|---|---|---|
| Title 42 Expulsions | 69 | 519 | 851 | 1,359 | 1,492 | 4,290 |
| Title 8 Inadmissible Aliens | 3,987 | 405 | 793 | 855 | 907 | 47,488 |

Of the total USBP enforcement encounters on the Southwest Border from March through July, including Title 42 and Title 8 actions, 8,661 of the individuals encountered were unaccompanied minors and 8,713 of the individuals encountered were members of family units. However, because statistics for the total number of unaccompanied minors and families encountered do not specify whether those encounters involved enforcement actions under Title 42 and Title 8, it is unclear how many of the total number of unaccompanied minors and family units encountered by USBP and OFO were detained under Title 42.  The total number of USBP enforcement actions against unaccompanied minors increased by 52% and the total number of USBP enforcement actions against family units increased by 26% from June to July.

---

[3] U.S. Customs and Border Protection, Office of Field Operations Monthly Enforcement Encounters 2020: Title 42 Expulsions and Title 8 Inadmissible Aliens, available at https://www.cbp.gov/newsroom/stats/cbp-enforcement-statistics/title-8-and-title-42-statistics (last accessed August 26, 2020).

**U.S. Border Patrol Southwest Border Encounters[4]**

| Demographic | March | April | May | June | July | Total March-July |
|---|---|---|---|---|---|---|
| Unaccompanied Child | 2,973 | 712 | 965 | 1,592 | 2,419 | 8,661 |
| Family Units[5] | 3,455 | 716 | 975 | 1,577 | 1,990 | 8,713 |

OFO encounter statistics reported 492 unaccompanied minors and 1,434 family units at the Southwest Border for the same March-July period. OFO data also reported 212 accompanied minor children during this time.[6]

---

[4] U.S. Customs and Border Protection, U.S. Border Patrol Southwest Border Encounters FY 2020, available at https://www.cbp.gov/newsroom/stats/sw-border-migration (last accessed August 26, 2020).

[5] Family Unit represents the number of individuals (either a child under 18 years old, parent, or legal guardian) apprehended with a family member by the U.S. Border Patrol.

[6] "Accompanied Minor Child" represents a child accompanied by a parent or legal guardian and the parent or legal guardian is either a U.S. Citizen, Lawful Permanent Resident, or admissible alien, and the child is determined to be inadmissible.

**Office of Field Operations Southwest Border Encounters[7]**

| Demographic | March | April | May | June | July | Total March-July |
|---|---|---|---|---|---|---|
| Unaccompanied Child | 247 | 29 | 42 | 87 | 87 | 492 |
| Family Units | 1,180 | 22 | 73 | 98 | 61 | 1,434 |
| Accompanied Minor Child | 40 | 18 | 30 | 56 | 68 | 212 |

## CURRENT STATUS OF TEMPORARY HOUSING OF SINGLE MINORS IN HOTELS UNDER TITLE 42

### A.     Program Structure

As described in the Independent Monitor's Report filed July 22, 2020, the Temporary Housing Program (THP) involves the housing of single minors (children less than 18 years of age) and families in hotels while they await deportation under Title 42 expulsion protocols. While the basic structure and procedures of the THP have not changed since the Independent Monitor's July 22, 2020 Interim Report, the program is much larger than reflected in that report. Currently, minors are housed in more than 25 hotels in 3 states, according to a report provided by the Juvenile Coordinator for ICE.

---

[7] U.S. Customs and Border Protection, Office of Field Operations Southwest Border Encounters FY 2020, available at https://www.cbp.gov/newsroom/stats/sw-border-migration (last accessed August 26, 2020).

**B.     The Updated Snapshot of Covid-19**

The hotels housing single minors and families are located in cities and counties continuing to experience high Covid-19 caseloads. Indeed, Maricopa County, where Phoenix is located, is ranked number 2 nationwide by Johns Hopkins on a list of top 50 counties with the most number of confirmed cases.[8] Harris County, where Houston is located, is ranked number 5. Bexar County, where San Antonio is located, ranks number 15.

**Covid-19 Cases in Maricopa County, Arizona (Phoenix)**



---

[8] Data is current as of August 26, 2020, courtesy of The Johns Hopkins Coronavirus Resource Center.

**Covid-19 Cases in Harris County, Texas (Houston)**



**Covid-19 Cases in Bexar County (San Antonio)**



### C.      Number of Minors

Based on the data provided,[9] there were 577 single minors entering the THP for the period March 24, 2020 through July 31, 2020.  The youngest child was 10 years of age.  There were 7 children 10 years of age; another 14 were 11 years of age; 13 were 12 years of age. Of all single minors, 126 (22%) were below 15 years of age.  The full age distribution is presented below:



---

[9] For this analysis and going forward, the Independent Monitor is relying on the data provided by the Juvenile Coordinator for ICE, which listed 660 minors in the program as of July 31, 2020, 577 who were identified as single minors between the ages of 10 and 17. This information was also filed with the Court under seal as Attachment A to the Declaration of Mellissa Harper (Doc. 925-1). However, there are some inconsistencies between those reports and the monthly *Flores* reports provided to the Independent Monitor and Plaintiffs. The inconsistencies have been brought to the attention of ICE, and the Independent Monitor expects to receive any corrections or explanations prior the Court's September 4, 2020 hearing.

**D.      Length of Stay**

Based on the data provided, there was a substantial range in the amount of time single minors were held in the THP.  For all single minors, the shortest length of stay (LOS) was 1 day and the longest was 28 days with an average of approximately 5 days.  For minors less than 15 years of age, the shortest LOS was also 1 day and the longest LOS was 15 days. Among the 10 year old minors, the average LOS was approximately 4 days with a maximum of 7 days.

Significantly, the distribution of LOS was quite broad for all age groups.  The box plots presented below provide a statistical visualization of these distributions.  Box plots (also known as Box and Whisker plots) are helpful in assessing the distribution of values within a dataset.  They reveal more than an average and identifies how the values congregate within a distribution.

The elements of the Box plots are arranged around what is called the Interquartile Range (IQR), which is a measure of variability or spread in the data, by separating the distribution into 4 quartiles.  For all single minors (see figure below), the first quartile is the range from the minimum value (labeled "a" on the graph) of 1 day to the 25th percentile (labeled "b") of 3 days.  The second quartile is from the 25th percentile to the 50th percentile, which is the median of 4 days.  The third quartile is from the median to the 75th percentile (labeled "c") of 6 days.  The fourth quartile is from the 75th percentile to the modified maximum value (labeled "d") of 10 days.  The maximum value here is considered "modified" because it excludes values, or "outliers" that fall far outside the main distribution. By statistical convention, outliers are defined as falling less or more than 1.5 times the IQR.  These outlier values for the LOS distribution for all single minors range from 11 days to 28 days and represent the LOS values for 33 different minors.

12



\* Outliers are considered as being outside the main distribution of values.  Outliers are calculated as
having LOS greater than 1.5 times the Interquartile Range which is c-b and in this plot equals 10
days.

The second Box plot depicts the same analytic approach but confines
the analysis to only those minors less than 15 years of age.  There was a total
of 126 children less than 15 years of age held in custody in the THP from
March 24 to July 31, 2020.  There were 4 children identified as outliers with
LOS of 13 or 15 days.



The age and LOS data suggest that the THP includes children of a variety of ages and developmental stages.  The largest portion of single minors in the THP were adolescents 15-17 years of age.  However, approximately 1 in 5 single minors were less than 15 years old and approximately 1 in 20 were 12 years old or less.  The youngest single minors reported to have been held in the THP were 10 years of age.

The LOS data for single minors had a wide distribution.  The average LOS was approximately 5 days.  The median was 4 days, implying that 50% of single minors had a LOS of less than 4 days and the other 50% greater than 4 days.  Almost one-third of all single minors had a LOS of greater than 6 days with a maximum of almost 1 month in the THP. This skewed upper range of the distribution, with a substantial number of children experiencing extended stays of more than 10 days, suggests that there does not appear to be any formal limit on the LOS in the THP and that even relatively young children can be held in the hotels for extended periods of time.

14

### E.  Amenities

The helpful declaration of Mellissa Harper filed with Defendants' Response in Opposition to Plaintiffs' Motion to Enforce (Doc. 920) listed a number of important amenities provided to minors in the THP. These include supervision by contractor MVM personnel, the provision of beds, temperature control, hygiene materials, hot meals and snacks, bathrooms, and access to ICE medical personnel. The hotels being utilized by the THP are mainstream facilities of hotel chains that provide mid-level accommodations for visitors and business travelers. The quality of the provided amenities has been subject to internal inspections and MVM quality control activities. As detained minors and parents have not yet been made available for interview, an independent assessment of detainee experiences has not been possible to date.

### F.  Overall Assessment

While the legal provisions of the Title 42 expulsion policy will be deliberated elsewhere, it seems clear that the Temporary Housing Program is not fully responsive to the safe and sanitary requirements of young children.

- **Age limits.** The inclusion of young, single minors in the THP remains of concern. Tender age single minors require specialized supervision and services and are inherently vulnerable to the potential psychological harm of an extended expulsion process. The current THP procedures and amenities make no distinction based on the age or developmental capacity of the child in custody. Diapers and other essential items for young children are provided to parents in family units. However, there is no information regarding the systems of care required by children who cannot care for themselves.  Moreover, it is unclear how the THP custodial elements for a 10 year old differ from those provided to a 17 year old.  There is a vast body of pediatric and psychological evidence documenting sharp differences in the requisite custodial needs and developmental vulnerabilities of children over this range of ages.

15

It is important to note that according to the data provided, the youngest single minor housed in the THP was 10 years old. This would appear to reflect some assessment by CBP, ICE, or MVM that referral to the THP of children less than 10 years of age would be inappropriate.

This raises two considerations:

1. **Appropriate lower age limit**. The apparent exclusion of children of 9 years of age and younger suggests that there exists some operational consensus that the THP is not an appropriate mechanism for holding young children in custody. However, it is not clear upon what developmental or custodial grounds this age limit was based nor what technical guidance was utilized to make the decision to exclude children aged 9 but include those aged 10.

2. **No formal age limit policy**. The restriction of the THP to children greater than 9 years of age while clearly helpful, does not appear to have been adopted formally as policy. This in turn implies that this lower age limit is fundamentally discretionary and could be altered to include infants and very young children at any time.

- **Facility census and length of stay.** It remains unclear whether there are any limits on the number of minors permitted to be housed in any given hotel. The concern is that without formal limits the number of minors in a facility could surpass the supervisory and medical capabilities of the program. Although the THP has been constructed to hold individuals for relatively short periods of time, there does not appear to be any formal limit to the length of stay for single minors. This suggests that the length of time single minors could be held in the THP would be structurally vulnerable to increased numbers of entrants and the vicissitudes of flight availability.

- **Covid-19**. Concerns for the protection of minors in the THP from acquiring Covid-19 remain. Since the inception of the THP, three single minors tested positive for Covid-19 while in the custody of ICE at a hotel. Of those three, two were transferred to ORR. The third juvenile was a 16 year old who spent a total of 23 days in ICE custody at the hotel, including a 14-day quarantine period. It is not clear how the decisions regarding these cases were made as there appears to be

16

no formal policy regarding the procedures for single minors who do test positive for Covid-19 while in the THP.  Children who are feeling sick with Covid-19 could remain in the THP hotel as long as their medical condition does not require referral to an outside hospital.  The rates of new cases in the areas surrounding the primary THP hotels appear to have stabilized or fallen, although they remain worrisome.  The most recent information is that testing is confined to individuals with relevant symptoms and that most single minors in the THP are not required by their home countries to receive a Covid-19 test prior to expulsion.

## RECOMMENDATION: EXCLUDE SINGLE MINORS FROM THE TEMPORARY HOUSING PROGRAM.

While the amenities provided by the THP are appreciated, a list of amenities is not a system of care for children of different ages and developmental stages.  There remains no assurance that the THP can provide adequate custodial care for single minors, who by definition are being moved through the immigration system alone and without familial support or protection. Formal systems of custodial care for children have been well defined and require specialized custodial elements, continuous oversight, and specialized training of relevant personnel.  These specialized services and formal protocols seem particularly important for children who test positive for Covid-19.  While the recommendation to exclude single minors from the THP pertains to all single minors, it is particularly directed at single minors below the age of 15 years.  The current informal practice of excluding single minors less than 10 years of age, while welcomed, is not fully responsive to the safety and sanitary vulnerabilities of young children, including children aged 10 through 14 years of age. Simply put, the lower age limit for single minors assigned to the THP should be formalized and raised urgently from 9 to 14 years of age and alternative custodial programs for all single minors should be pursued.