CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Peter A. Schey (Cal. Bar No. 58232)
Carlos Holguín (Cal. Bar No. 90754)
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Facsimile: (213) 386-9484
Email: crholguin@centerforhumanrights.org
        pschey@centerforhumanrights.org

*Attorneys for plaintiffs (listing continues on following page)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*, | ) Case No. CV 85-4544-RJK(Px) |
| Plaintiffs, | ) REPLY TO DEFENDANTS' OPPOSITION TO |
| - vs - | ) MOTION TO ENFORCE SETTLEMENT OF |
| | ) CLASS ACTION RE ADVISALS |
| WILLIAM BARR, Attorney General of | ) |
| the United States, *et al.*, | ) |
| | ) Hearing: September 4, 2020 |
| Defendants. | ) Time: 11:00 A.M. |
| | ) Judge: Hon. Dolly Gee |

/ / /

*Listing of Plaintiffs' counsel continued*

USF SCHOOL OF LAW IMMIGRATION CLINIC
Bill Ong Hing (Cal. Bar No. 61513)
2130 Fulton Street
San Francisco, CA 94117-1080
Telephone: (415) 422-4475
Email: bhing@usfca.edu


LA RAZA CENTRO LEGAL, INC.
Stephen Rosenbaum (Cal. Bar No. 98634)
474 Valencia Street, #295
San Francisco, CA 94103
Telephone: (415) 575-3500


*/ / /*

TABLE OF CONTENTS

I.    INTRODUCTION ...............................................................................................1

II.   BACKGROUND ................................................................................................3

III. ARGUMENT .....................................................................................................6

    A.   DEFENDANTS SHOULD BE REQUIRED TO IMPLEMENT THE PROCEDURES
    REQUESTED BY PLAINTIFFS. .......................................................................6

    B.   DEFENDANTS HAVE NOT MADE GOOD FAITH EFFORTS TO COMPLY WITH THE
    COURT'S ORDERS, AND A PROCEDURAL REMEDY IS THEREFORE APPROPRIATE..........10

    C.   DEFENDANTS ARE IN BREACH OF THE NOTICE REQUIREMENT. ...........................13

    D.   PLAINTIFFS' PROPOSED DOCUMENTS DO NOT CONTAIN LEGAL ERRORS AND
    WOULD NOT CAUSE FURTHER CONFUSION .................................................14

IV.   CONCLUSION................................................................................................17

/ / /

# TABLE OF AUTHORITIES

**Cases**

. *Flores v. Sessions*, No. CV 85-4544-DMG (AGRx), 2018 WL 4945000, at *4 (C.D. Cal. July 9, 2018) ......................................................................................................................4

*Flores v. Lynch*, 212 F. Supp. 3d 907, 914 (C.D. Cal. 2015) ........................................7

*Flores v. Sessions*, 394 F. Supp. 3d 1041, 1067 (C.D. Cal. 2017)................................3

*Jeff D. v. Kempthorne*, 365 F.3d 844, 853 (9th Cir. 2004) .........................................1

*Johnson v Zerbst*, 304 US 458, 464 (1938) .................................................................2

*Kelly v. Wengler*, 822 F.3d 1085, 1097 (9th Cir. 2016)..............................................12

*Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995)...................14

*Ms. L. v. ICE*, 310 F. Supp. 3d 1133, 1149 (S.D. Cal. June 26, 2018) .......................5

*Troxel v. Granville*, 530 U.S. 57, 65 (2000) ...............................................................8

/ / /

1    I.    INTRODUCTION

2         Plaintiffs' motion for a proper advisal of rights and reasonable steps to

3    implement Class Members' release seeks no more than enforcement of the terms of the

4    Agreement itself and the Court's exercise of its authority to enforce its own Orders.

5    *See Jeff D. v. Kempthorne*, 365 F.3d 844, 853 (9th Cir. 2004) ("Once the decree was

6    entered, the district court retained jurisdiction to enforce it[.]"); *Flores* Settlement

7    Agreement ("FSA") at ¶ 37; October 5, 2018 Order Appointing Special

8    Master/Independent Monitor at ¶ E.4 [Doc. # 494].

9         Defendants' position that "ICE evaluates all families for release together in the

10   first instance, but in situations where ICE determines that release of the parent is not

11   appropriate, *continued custody of children with their parents is appropriate and*

12   *consistent with the Agreement*," Defendants' Opposition to Motion to Enforce

13   Settlement of Class Action at 1 ("Opposition") (emphasis added) [Doc.# 923], is mind-

14   boggling.

15        An accurate statement would be in situations where ICE determines that release

16   of the parent is not appropriate, "*continued custody of children with their parents is*

17   *appropriate and consistent with the Agreement if that is what a parent decides is in*

18   *their child's best interest after being fairly advised of their child's Flores release*

19   *rights.*"

20        Equally absurd is Defendants' position that this Court should "reject Plaintiffs'

21   continued campaign for this Court to impose protocols that would, in effect, result in a

22   family-separation mechanism." *Id*. Even if a parent remains in custody because

23   Defendants refuse to release the parent, this "does not excuse Defendants from the

24   commitment they made in the *Flores* Agreement to make and record efforts to release

25   minors in ICE custody, even if the … parent is in expedited removal (i.e., awaiting a

26   credible fear determination)." June 27, 2017 Order Re Plaintiffs' Motion to Enforce

27   and Appoint a Special Monitor at 26 ("June 2017 Order") [Doc. # 363].

28                                      - 1 -

What Defendants fail to face up to is the simple proposition that the difficult decision regarding "family separation" is one that under the *Flores* Settlement Agreement ("FSA") the *parent* of an accompanied Class Member must make, not Class Counsel, Defendants, or the Court.

Rather than seeking a "family-separation mechanism," Plaintiffs seek a mechanism for parents to be fully and fairly advised of their child's *Flores* rights, and a mechanism to implement those rights should a parent decide it's in their child's best interest to be released.

At bottom, Paragraph 12 of the FSA requires that advisals be given, and Paragraphs 14 and 18 require the release of minors who are not flight risks or a danger to themselves or others. Paragraphs 15 and 16 require Defendants to take certain steps to assess whether designated sponsors are suitable and will produce Class Members for future proceedings. If they are suitable and will produce the Class Member for future proceedings, Paragraphs 14 and 18 require the child's release without unnecessary delay. This is what the FSA clearly requires and what this Court has repeatedly ordered.[1]

Defendants do not contest that they provide no advisals to detained parents about their children's FSA rights other possibly than Form I-770, which does not describe Class Member's FSA rights.[2] Simply put, Defendants prefer to keep parents in the dark about their children's rights. Moreover, even if a parent believes it is in their child's best intererst to be released, it appears ICE has no procedures in place to assess potential sponsors identified by a parent or to effect the prompt release of a minor to a

---

[1] *See* Motion to Enforce Settlement of Class Action at 8-14 ("Motion"). [Doc. # 919.]

[2] Advisals are necessary to ensure that Class Members and their caregiving parents are making informed and intelligent decisions regarding release, sponsorship, legal representation, and the potential waiver thereof. A waiver is generally an "intentional relinquishment or abandonment of a known right or privilege." *Johnson v Zerbst,* 304 US 458, 464 (1938) (internal quotation marks omitted).

designated and approved sponsor. The Motion seeks an Order remedying these violations of the FSA. To the extent compliance with the FSA and this Court's prior Orders may provide a binary choice for parents, the choice they may face is brought about by Defendants' heartless and largely irrational unwillingness to release parents with their children, regardless whether the parents are flight risks or a danger.

II.    BACKGROUND

In the "Background" section of the Opposition, Defendants argue that in 2017 this Court "made clear" that "[u]ltimately, based upon an individualized review of the facts, Defendants may conclude that it is in the best interests of an accompanied minor to remain with a parent who is in detention." Opposition at 1, *quoting Flores v. Sessions*, 394 F. Supp. 3d 1041, 1067 (C.D. Cal. 2017). This statement by the Court in no way helps Defendants' position opposing the Motion.

There is no question under Paragraph 17 of the FSA Defendants may in their discretion, after assessing a sponsor designated by a parent, determine that the sponsor likely cannot safely care for the Class Member or produce the minor at future proceedings and therefore "Defendants may conclude that it is in the best interests of an accompanied minor to remain with a parent who is in detention." Similarly, Defendants may decide that it is not in the best interest of a child to be released because they are a danger to themselves or others.

Nevertheless, the FSA and numerous prior Court Orders make clear that Defendants are required to release minors when they are not a danger or a flight risk, and when it appears the designated sponsor will safely care for the Class Member and produce him or her at future proceedings.

Next, Defendants opine that since 2017 the ICE Juvenile Coordinator has regularly reported to the Court regarding the manner by which ICE is complying with the Court's 2017 Order, and in two of the Special Master/Independent Monitor's ("Monitor") 2019 reports, she did not take issue with ICE's manner of compliance with

- 3 -

the Court's orders. Opposition at 1-2. Thus, Defendants argue, "the Court and the Monitor have, at least tacitly, approved of ICE's processes for complying with the 2017 order." *Id*. at 2. The obvious response is that the ICE Juvenile Coordinator and the Monitor have addressed a wide range of compliance issues involving ICE, ORR, and CBP, not every single one that may exist whether or not previously raised by Plaintiffs. Neither the Juvenile Coordinator, nor the Special Monitor, nor the Court has ever "tacitly" or otherwise approved Defendants' failure to provide parents an advisal of their children's FSA rights, or Defendants' failure to adopt procedures to release children whose parents believe should be released.

Indeed, Defendants next concede, as they must, that "[o]n several occasions, the Court has stated that … a parent may choose, on behalf of the class member child, whether to exercise or waive a class member child's right to be released under the Agreement." Opposition at 2.[3] Defendants then incredibly argue that "the Court has left it to the parties to develop and implement any procedures by which such release or waiver could occur …" *Id*.

---

[3] *See, e.g. Flores v. Sessions*, No. CV 85-4544-DMG (AGRx), 2018 WL 4945000, at *4 (C.D. Cal. July 9, 2018) ("[D]etained parents may choose to exercise their Ms. L right to reunification or to stand on their children's *Flores* Agreement rights. Defendants may not make this choice for them."); Order, ECF No. 784, April 24, 2020, at 15 n.6 ("Parents may waive their children's *Flores* rights."); Order ECF No. 833, June 26, 2020 at 3 (requiring ICE to release class member children separately from their parents "with the consent of their adult guardians/parents"); id. at 6 (requiring the parties to meet and confer "regarding the adoption and implementation of proper written advisals and other protocols to inform detained guardians/parents about minors' rights under the FSA and obtain information regarding, and procedures for placement with, available and suitable sponsors"); Order, ECF No. 799, May 22, 2020, at 2 ("[A]lthough the Court finds that ICE did not seek or obtain formal waivers from detained parents of their children's *Flores* rights during ICE officers' conversations with detained parents on or about May 15, 2020, those conversations caused confusion and unnecessary emotional upheaval and did not appear to serve the agency's legitimate purpose of making continuous individualized inquiries regarding efforts to release minors.").

Yet it was Defendants who after several meetings with Plaintiffs and arriving at agreement on almost every aspect of an advisal, *see* Declaration of Class Counsel Peter Schey re Joint Status Report [Doc. 905], engaged in a *volte face*, refused to continue to meet and confer, and objected "to the implementation of *any* protocol that would potentially provide for the separation of a parent and child who are currently housed together in an ICE family residential center (FRC)." Joint Status Report at 6 (emphasis added). [Doc. # 902].[4] Defendants reiterate this position in their Opposition. Opposition at 5. By the time of the hearing conducted on August 7, 2020, Defendants clearly stated "*the government would prefer that Your Honor impose a remedy*." August 7, 2020 Hearing Tr. at 16:13-17 (emphasis added). In another *volte face*, Defendants now object to the Court imposing a remedy.

Next, Defendants argue that *amici* counsel stated during a status conference that she has "at times" inquired whether some parents wish to have their children released and they did not, and that Defendants are not aware of any parent who has sought the release of his or her child. Opposition at 3. This says nothing about the importance of parents being fully informed of their children's release rights and ICE having procedures in place to follow when a parent *does* want their child released.[5] Parents may not exercise or waive their rights if they are uninformed of those rights, may know Defendants have no procedures in place to implement a parent's wishes, and may have

---

[4] Defendants obviously know that they have been enjoined in separate class action litigation from separating class member parents from their children, absent an affirmative, knowing, and voluntary waiver of the parent's right to be detained with their children at an ICE FRC. *See Ms. L. v. ICE*, 310 F. Supp. 3d 1133, 1149 (S.D. Cal. June 26, 2018).

[5] *Amici* counsel's comments during a hearing are obviously not evidence and its entirely unclear if she's addressing her clients, a small number of all detained families, or the clients of the three *amici* parties.

counsel focused primarily on trying to win the release of parents through public advocacy and litigation in another Court.[6]

III. ARGUMENT

    **a.    Defendants Should Be Required To Implement the Procedures Requested by Plaintiffs.**

Defendants first argue that they "have always objected—and continue to object—to any reading of the Agreement that will require ICE to implement a protocol to potentially separate a parent and child who are currently housed together in an ICE FRC, and who *both are subject to lawful detention* by ICE in accordance with the Immigration and Nationality Act." Opposition at 7 (emphasis added). Obviously detaining Class Members in ICE FRC's is controlled *not* just by the Immigration and Nationality Act, but also by the FSA and this Court's prior Orders.

While Defendants may object to "potentially separate[ing] a parent and child," the FSA *only* requires they do so if the child is not a flight risk or a danger, and if a parent designates an appropriate sponsor for their child. As this Court has observed,

    "[t[he blessing or the curse – depending on one's vantage point – of a binding contract is its certitude. The Flores Agreement is a binding contract and a consent decree. It is a final, binding judgment that was never appealed. It is a creature of the parties' own contractual agreements and is analyzed as a contract

---

[6] This Court has made clear Defendants may avoid the hard choice of releasing a minor without his or her parent when it ordered the transfer of Class Members who have resided at the FRCs for more than 20 days to non-congregate settings through one of two means: (1) releasing minors to available suitable sponsors or other available COVID-free non-congregate settings with the consent of their adult guardians/parents; or (2) by releasing the minors with their guardians/parents if ICE exercises its discretion to release the adults or another Court finds that the conditions at these facilities warrant the transfer of the adults to non-congregate settings. June 2020 Order ¶ 1 [Doc. # 833.]

for purposes of enforcement. Defendants cannot simply ignore the dictates of the consent decree merely because they no longer agree with its approach as a matter of policy. The proper procedure for seeking relief from a consent decree is a Rule 60(b) motion by which a party must demonstrate that a change in law or facts renders compliance either illegal, impossible, or inequitable. Relief may also come from a change in law through Congressional action. Having failed to obtain such relief, Defendants cannot simply impose their will by promulgating regulations that abrogate the consent decree's most basic tenets. That violates the rule of law. And that this Court cannot permit.

Order Re Plaintiffs' Motion to Enforce Settlement and Defendants' Notice of Termination and Motion In the Alternative to Terminate the *Flores* Settlement Agreement (September 27, 2010) ("September 2019 Order") at 24. [Doc. # 688.] It is unclear what part of this Court's prior Orders, including its September 2019 Order, Defendants do not understand.

Defendants point out that Paragraph 14 states that "'INS shall release a minor from its custody without unnecessary delay, in the following order of *preference*' with the 'parent' being the first priority. But Paragraph 14 does not address what to do when the child is already in custody with the parent …" Opposition at 7 (emphasis added). This is inaccurate. As the language of the FSA makes clear, Paragraph 14 lists an order of "preference" to whom Class Members may be released. It nowhere states or suggests that if a Class Member is detained with a parent, and ICE refuses to release the parent, the Class Member's right to release to other potential sponsors listed in Paragraph 14 may be disregarded.

The FSA's terms were not changed when this Court opined that Defendants were "acting in good faith and in the exercise of due diligence" if a "brief extension of time will permit DHS to keep the family unit together." Opposition at 8, *quoting Flores v. Lynch*, 212 F. Supp. 3d 907, 914 (C.D. Cal. 2015). As Plaintiffs have

repeatedly pointed out, the previous administration achieved substantial compliance with the FSA by having a ninety to ninety-five percent (90-95%) credible fear approval rate, and promptly releasing Class Members with their parents found to possess a credible fear of persecution if returned to their home countries. Motion at 3; Joint Status Report (August 5, 2020) at n. 2. [Doc. # 902.] That approach to compliance no longer exists, as the credible fear approval rate has now dropped to about ten percent (10%) as a result of the current Administration substantially restricting its asylum policies. *Id*.

Defendants next argue that "[i]t bears emphasizing that class counsel do not represent the parents of the children at issue in this case and that, while this Court has said a parent may waive the child's rights on behalf of his or her child, this Court has not addressed—and, given that this case involves a class of children only, cannot address—any separate rights the parent may have which are not governed by the Agreement." Opposition at 8.

All parties and the Court obviously understand that Class Counsel do not represent the parents. However it is equally obvious, and Defendants nowhere explain otherwise, that when children possess certain rights that may be exercised or waived, parents may stand in their children's shoes to make decisions for their children. *See, e.g. Troxel v. Granville*, 530 U.S. 57, 65 (2000) ("The liberty interest at issue in this case -- the interest of parents in the care, custody, and control of their children -- is perhaps the oldest of the fundamental liberty interests recognized by this Court … It is cardinal with us that the custody, care and nurture of the child reside first in the parents …").

Finally, Defendants argue that Plaintiffs are "seeking an order for a remedy without presenting any evidence of harm." Opposition at 10. As Plaintiffs explained in their Motion and their Response to Defendants' Notice of Filing of Ice Juvenile

Coordinator Report ("May 2020 Plaintiffs' Response to Juv. Coord. Report") [Doc. # 796]:

> … ICE continues to evaluate Class Members for release based on a "Parole Worksheet" that on its face is materially inconsistent with the plain language of the FSA, and the agency's purported securing of parents' waivers of their children's right to release under the FSA was obtained [on or about May 15, 2020] …
>
> • without notice to parents' and Class Members' counsel of record,
>
> • without parents or Class Members having any opportunity to consult with their counsel of record,
>
> • without counsel of record for Class Members and parents being present,
>
> • without providing parents or Class Members with an oral or written notice of Class Members' rights under the FSA,
>
> • without providing parents or Class Members with a notice of Class Members' rights in a language parents or Class Members understood,
>
> • without advising parents or Class Members that any decision they made to have a Class Member released could be reversed prior to the Class Member actually being released,
>
> • without explaining what steps ICE would take, if any, to assess the ability of designated sponsors to safely care for released Class Members, and
>
> • without advising parents that they could apply for parole so they could possibly be released with their child under 8 CFR 212.5(b)(3)(ii).
>
> Thus, any purported "waivers" of Class Members' FSA rights ICE obtained were hardly "proper waiver[s] of Flores rights," nor were they "affirmative, knowing, and voluntary" waivers of the parents' right to be detained with their children. April 24, 2020 Order at 15 n. 6 and 18.

- 9 -

1    Motion at 12; May 2020 Plaintiffs' Response to Juv. Coord. Report at 4.[7]

2         Further evidence of the "harm" is defendants' admission that they do not advise

3    parents about their children's FSA rights and have no procedures in place to implement

4    a parent's decision that their child's best interest would be served by release to a

5    relative. It's highly unlikely a law enforcement agency that refused to advise detained

6    persons of their *Miranda* rights and adopted no procedures to honor those rights if

7    exercised, could defend their position by arguing that no detained person had exercised

8    or waived their *Miranda* rights.

9         Plaintiffs' Motion does not demand that parents exercise or waive their

10   children's FSA rights one way or the other. It seeks to remedy the harm inherent in

11   Defendants not advising parents about their children's FSA rights, or having in place

12   procedures to implement an exercise of those rights.

13        **b.    Defendants Have Not Made Good Faith Efforts to Comply With the
             Court's Orders, and a Procedural Remedy is Therefore Appropriate.**

14

15        Plaintiffs believe the remedies sought involve reasonable interpretations of the

16   FSA and reasonable remedies for Defendants' breaches. In that case, the Court need

17   not find Defendants in contempt, a step that provides the Court with greater ability to

18   Order Defendants to take certain steps with the goal being to obtain substantial

19   compliance with the FSA.

20        Defendants argue they have complied with the FSA and this Court's prior

21   Orders by making "individualized determinations regarding the release of class

22   members." Opposition at 11, *citing* Defendants' Supplemental Response, ECF No.

23

24   _____

     [7] The evidence shows that ICE continues to "cause[ ] confusion and unnecessary

25   emotional upheaval" by approaching newly-placed families and following the same

     methods it used in May 2020. *See* Ex. D (C.M. Decl.) [Doc. # 903 at 54]; Ex. F (T.T.P.

26   Decl.) [Doc. # 903 at 64], at ¶¶ 25–27; Ex. G (A.C. Decl.) [Doc. # 903 at 69]; Exhibit

     H (G.P. Decl.) [Doc. # 903 at 72], at ¶¶ 35–36.

27

28                                      - 10 -

746, April 6, 2020, at 31-35. Plaintiffs and this Court have endlessly pointed out that Defendants' determinations have repeatedly violated the FSA. *See, e.g.* Order Re Plaintiffs' Motion to Enforce (April 24, 2020) at 16 ("April 2020 Order") [Doc. # 784] ("[b]ecause ICE has not submitted evidence of individualized release assessments for Class Members awaiting asylum decisions, much less evidence that ICE makes and records individual assessments in a prompt and continuous manner, the Court finds ICE in violation of the FSA's Paragraph 18 (as well as the Court's prior June 27, 2017 Order) …"); Order Re Updated Juvenile Coordinator Reports (June 26, 2020) at 5, Section 4c ("June 2020 Order") [Doc. # 833] ("the ICE Juvenile Coordinator shall give a detailed individualized explanation of why that minor is a flight risk (cursory explanations such as 'In custody—pending IJ hearing/decision,' 'pending USCIS response,' 'plaintiff in a pending lawsuit,' or any other justification that the Court has already rejected as being insufficient indicia of imminent removal shall not be acceptable explanations"); June 2017 Order at 25 [Doc. # 363]  (this Court again held that "the *Flores* Agreement creates an affirmative obligation on the part of Defendants to individually assess each class members' release …"); *Amici* Brief at 12 [Doc. # 903] *citing* Ex. D (C.M. Decl.), Ex. A (Meza Decl.), at ¶¶ 10–14, Ex. Q (M.E.F. Decl.), at ¶¶ 32-33. ("ICE has not provided [individualized] custody determinations [even] based upon a Class Member's medical conditions.")

The fact that "almost all family units have been released together from FRCs, and only a small number remain," Opposition at 11, is relatively meaningless given that detained Class Members possess FSA rights whether their number is 1, 10, 100, or more. And, more importantly, it hardly helps defend Defendants' history of violating the FSA and this Court's Orders, by conceding that hundreds of Class Members have been detained for long periods of time, in secure facilities not licensed for the care of dependent minors, without the Class Members or their parents being informed about the Class Members' rights under the FSA or Defendants even bothering to establish

- 11 -

procedures to make and record steps—as required by Paragraph 18 of the FSA—to release Class Members if that's what their parents decide.

Defendants also argue that the Court and the Monitor are somehow to blame for Defendants' FSA violations. Opposition at 11-12 ("neither the Court nor the Monitor ever raised any issues or concerns with the manner of Defendants' compliance … The Order [ECF No. 833] provides no guidance as to how such consent can be obtained …") The FSA does not contemplate the Court acting as an ever-present uber roving monitor watching and dispensing orders to Defendants every time it believes they're not in substantial compliance with the FSA. Regardless of whether the Court gives ongoing or future "guidance" to Defendants, they are obligated to comply with the terms of the FSA and the Court's prior Orders. Obviously, when the Court repeatedly orders that Defendants' release determinations are neither timely nor based on proper criteria, it is not issuing vacuous meaningless Orders assuming they'll never have any effect because in any event Defendants won't adopt any procedures to actually release minors.[8]

Defendants reliance on *Kelly v. Wengler*, 822 F.3d 1085, 1097 (9th Cir. 2016) is misplaced. Opposition at 13. Given Defendants' history of non-compliance, under the standards discussed in *Kelly*, this Court unquestionably has the authority to issue the remedial orders in the form proposed by Plaintiffs. The district court in *Kelly* found the Defendants "had materially breached the settlement agreement and, indeed, that there was 'serious doubt' whether [they] had ever substantially complied with it … [They] had not substantially complied with the settlement agreement and had failed to take several reasonable steps to ensure compliance. " *Id*. at 1096-97. As is true of the

---

[8] Defendants again repeat their argument that there is no evidence of harm. Opposition at 13. As Plaintiffs responded *supra*, the best evidence of the "harm" is defendants' admission that they do not advise parents about their children's FSA rights and have no procedures in place to implement a parent's decision that their child's best interest would be served by release to a relative. It's the challenged policies that create the harm Plaintiffs seek to remedy.

remedies Plaintiffs propose in this case, "[r]ather than punishing [Defendants]," the orders issued in the *Kelly* case imposed sanctions that "sought to return Plaintiffs as nearly as possible to the position they would have occupied had [Defendants] not violated the agreement." *Id*. at 1097.

As the parties agree, to establish that such remedies are authorized, Plaintiffs must show by clear and convincing evidence that a violation of the Agreement has actually occurred. Opposition at 13; Motion at 26-27. Based on the record as discussed in the Motion and *supra*, there is no real question that Plaintiffs have not shown by clear and convincing evidence that numerous violations of the Agreement have actually occurred, in fact have repeatedly occurred. *See, e.g.* Motion at 2-3, 6-13.

### c.   Defendants Are in Breach of the Notice Requirement.

Assuming the Court does not find Defendants in contempt and use its remedial power to order the issuance of an advisal of rights, Defendants argue that the Court has no authority to require an advisal because an advisal about the FSA's rights is not required by Paragraph 12.A. Opposition at 14.

However, Defendants misconstrue Plaintiffs position, arguing that Plaintiffs read Paragraph 12.A to suggest that it requires notice of "generalized provisions of rights that are not detailed anywhere in the Agreement." Opposition at 14. The Motion makes clear that Plaintiffs believe the text of Paragraph 12.A obligates Defendants to "provide all detained Class Members or, if accompanied, their parents, with an advisal regarding their rights under the FSA *rather than* the totality of their rights under the Immigration and Nationality Act …" Motion at 16 (emphasis added).

Defendants also rely on the fact that the FSA requires Defendants to provide Class Members with two specific notices. Opposition at 14, *citing* Paragraphs 24.C-D. As Defendants obviously know, Paragraph 24.C deals with a notice providing the "reasons" for housing the minor in a detention or medium security facility, not a notice

- 13 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

of the Class Member's rights under the FSA. Paragraph D is limited to the right to appeal certain custody decisions as described in Exhibit 6, including being provided Form I-770 and a list of legal services. Including these provisions in the FSA in no way negates Defendants' obligations to provide advisals as required by Paragraph 12.A. By Paragraph 12.A *not* specifying that the advisals should only address one or another identified part of FSA, it is reasonable to conclude the advisals may cover the most significant parts of the FSA.

Plaintiffs agree that the Agreement "should be read to give effect to all of its provisions and to render them consistent with each other." Opposition at 14, *quoting Mastrobuono v. Shearson Lehman Hutton, Inc*., 514 U.S. 52, 63 (1995). Since the vast majority of Class Members and their parents are entirely unfamiliar with Class Members' FSA rights, and are detained, and their rights are fairly meaningless if they don't know about them, reading Paragraph 12.A's advisal text to require a reasonable advisal about Class Member's basic FSA rights, especially to release, clearly gives effect to all of the FSA's provisions and renders them consistent with each other.

The Court has authority to order remedies that reasonably interpret what the FSA requires. Requiring Defendants to issue an advisal along the lines proposed by Plaintiffs is within the Court's authority to bring about substantial compliance with the FSA.

      **d.**      **Plaintiffs' Proposed Documents Do Not Contain Legal Errors And Would Not Cause Further Confusion**

Finally, after refusing to complete the meet and confer process and agree to a notice of rights and protocol that do not contain legal errors and do not cause further confusion, Defendant now complain that "requiring the use of [the proposed] documents would cause confusion and create further problems …" Opposition at 15. Defendants only provide a handful of examples of erroneous or confusing provisions, any of which the Court may modify in its discretion.

- 14 -

First, in the protocols document, in the section entitled "Custody Determinations," Plaintiffs propose that ICE instruct its personnel that "8 C.F.R. § 1236.3 requires ICE to assess and document whether an adult parent should be released from ICE custody to effectuate the release of a child from custody." ECF No. 921-1, ¶ 3. Defendants argue this statement is inaccurate because the cited regulation "is not a release authority," and "does not instruct agents in the authority under which they may consider individuals for release." Opposition at 15. The challenged text does not preclude ICE from applying its "usual custody decision making procedures to the parent or legal guardian at the appropriate point in the process …" *Id*. Defendants are also free to propose alternative language.

Second, Defendants complain because Plaintiffs propose that "[a]ny documents provided to a parent or a minor to implement this protocol or comply with the FSA shall be forwarded by email or mailed by first class mail to the parent's and minor's attorney(s) of record." Opposition at 16, *quoting* ECF No. 921-1, ¶ 11. This requirement would not exceed the authority of this Court "to the extent that it provides a right to the parent to have documents served on his or her counsel," *id*., because Defendants regulation requires that copies of documents served on someone by ICE must be served on their counsel of record. 8 C.F.R. § 292.5 ("Whenever a person is required by any of the provisions of this chapter to give or be given notice; to serve or be served with any paper other than a warrant of arrest or a subpoena; … to file or submit an application or other document; or to perform or waive the performance of any act, such notice, service, motion, filing, submission, performance, or waiver shall be given by or to, served by or upon, made by, or requested of the attorney or representative of record, or the person himself if unrepresented.").

"More importantly," Defendants say, this provision "might at times" require ICE to provide confidential or sensitive information about the sponsor … to counsel who do not represent the sponsor and to whom the sponsor has not authorized its release." *Id*.

at 16. Defendants can perhaps withhold this information from counsel or obtain the sponsor's consent to share it with the parent's attorney of record.

Finally, Defendants argue against Plaintiffs' proposed language allowing a parent to designate an adult who will transport their child to any sponsor the parent identified and ICE has approved to care for the child, allowing ICE in its discretion to run a background check on any such adults designated by a parent and decline to transfer the child to the adult's custody if the adult has a criminal history such that the child may not be safe being transported by the adult, or alternatively, allowing ICE to transport the child to the approved sponsor's home. *Id.*

Defendants complain that this provision would require ICE to either undertake transportation of a minor alone, or transfer custody of a minor to an adult "who is not fully vetted by ICE based solely on a 'background check' …" *Id*. Defendants are free to propose alternative language involving something more than a background check. Regarding the option of transporting a minor, Plaintiffs' proposed language is similar to Defendants' regulation which states: "DHS shall assist without undue delay in making transportation arrangements to the DHS office nearest the location of the relative to whom a minor is to be released. DHS may, in its discretion, provide transportation to minors." 8 C.F.R. § 236.3(j)(5)(iii).

/ / /

1

2   IV.   CONCLUSION

3          For the foregoing reasons, Plaintiffs respectfully request that this Court grant the

4   Motion and enter an Order in the form proposed by Plaintiffs.

5   Dated: August 28, 2020.                        Respectfully submitted,

6

7                                                  CENTER FOR HUMAN RIGHTS &
                                                   CONSTITUTIONAL LAW
8                                                  Peter A. Schey
                                                   Carlos Holguín
9

10                                                 USF SCHOOL OF LAW
                                                   IMMIGRATION CLINIC
11                                                 Bill Ong Hing

12
                                                   LA RAZA CENTRO LEGAL, INC.
13                                                 Stephen Rosenbaum

14
                                                   _____*Peter Schey*_____
15                                                 *Attorneys for plaintiffs*

16

17

18

19

20

21

22

23

24

25

26

27

28                                      - 17 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 28, 2020, I served the foregoing pleading on all counsel of record by means of the District Clerk's CM/ECF electronic filing system.

/s/ *Peter Schey*

Peter A. Schey

CENTER FOR HUMAN RIGHTS &

CONSTITUTIONAL LAW

*Class Counsel for Plaintiffs*
