ETHAN P. DAVIS
Acting Assistant Attorney General
Civil Division
AUGUST E. FLENTJE
Special Counsel to the Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director, District Court Section
Office of Immigration Litigation
SARAH B. FABIAN
NICOLE N. MURLEY
Senior Litigation Counsel
 Tel:  (202) 532-4824
 Fax:  (202) 305-7000
 Email:  Sarah.B.Fabian@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY LISETTE FLORES; *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM P. BARR, Attorney General of the United States; *et al.*, <br><br> Defendants. | Case No. CV 85-4544-DMG <br><br><br> **Defendants' Objections to the Independent Monitor's "Interim Report on the Use of Temporary Housing for Minors and Families under Title 42" (ECF No. 938)** |

1

## I.      INTRODUCTION

Defendants object to the August 26, 2020 "Interim Report on the Use of Temporary Housing for Minors and Families under Title 42" (ECF No. 938) ("Interim Report") filed by the Special Master/Independent Monitor ("Monitor"). Specifically, Defendants object to the Interim Report because it recommends that the Court require Defendants to take specific actions to comply with a standard that is not found within the terms of the *Flores* Settlement Agreement ("Agreement"), goes far beyond what the Agreement or any Court order interpreting the Agreement has ever required, and is not based on any identified violation of a substantive term of the Agreement. Defendants also object to the Interim Report because it fails to comply with the procedures laid out in the order appointing the Monitor (ECF No. 494) ("Monitoring Order"). The Court should decline to consider the Interim Report or, if the Court intends to consider or adopt any the factual representations or recommendations in the Interim Report in ruling on Plaintiffs' pending motion (ECF No. 920), the Court should follow the procedures required by the Monitoring Order and Federal Rule of Civil Procedure 53(f) before doing so.

## II.      BACKGROUND

On October 5, 2018, this Court appointed the Monitor and detailed the scope of her monitoring duties and authorities in the Monitoring Order. The Monitor is tasked with monitoring compliance with certain orders of the Court, and performing other related duties, and the Monitoring Order further provides that:

> During the course of her monitoring duties, if the Monitor discovers potential breaches of the Flores Agreement that are beyond the scope of the June 27, 2017, July 27, 2018, or July 30, 2018 Orders, she shall bring them to the Court's and the Parties' attention. The Court, in its discretion, may authorize the Monitor to investigate the potential breaches, request briefing from the Parties thereon, hold hearings or

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> mediation relating thereto, and issue a Report and Recommendation thereon to the Court if the matter cannot be resolved through mediation.

Monitoring Order at 3-4. The Monitoring Order also provides for the filing of regular reports by the Monitor, and for the possibility that the Monitor might file an Interim Report and Recommendation, "if the Monitor has a good faith basis to believe that there is a significant violation of the Court's Orders that cannot reasonably be addressed through a Report and Recommendation due to its exigency." *Id.* at 19-20. The Monitoring Order makes clear, however, that such an Interim Report should include "any recommendations for steps necessary to improve Defendants' compliance and the reason for the urgency," and that "[p]rior to filing the Interim Report and Recommendation, the Monitor shall afford the Parties a reasonable opportunity to be heard and to expeditiously cure any violation." *Id.* at 20. As part of the Monitoring Order, the Court also adopted and incorporated the review provisions and timelines set forth in Federal Rule of Civil Procedure 53(f).

On July 22, 2020, the Monitor filed an Interim Report on the Use of Temporary Housing for Minors and Families Under Title 42. Notice, ECF No. 873 ("First Interim Report"). Defendants filed objections to the First Interim Report on July 23, 2020, objecting that the Monitor had not been granted authority from the Court to monitor the issue of minors held in hotels incident to the Title 42 processes, and that the parties were not provided any opportunity to be heard on the issues raised in the First Interim Report, nor were Defendants provided the opportunity to review the report or cure any violations prior to its being filed. Objections, ECF No. 878, July 23, 2020. On July 25, the Court rejected Defendants' objections to the scope of the Monitor's authority to monitor the use of hotels in conjunction with the Title 42 processes, Order, ECF No. 887, at 3, but

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

did not address Defendants' objections to the First Interim Report itself. On August 7, following a status conference with the parties, the Court reiterated that the Monitor should "continue to monitor the hoteling of minors," Order, ECF No. 912, ¶ 6, but still made no determination on Defendants' objections to the First Interim Report. On August 26, after apparently conducting further monitoring, the Monitor filed the Interim Report, but did not give Defendants a chance to review the report prior to its filing or to cure or respond to any of the findings or recommendations contained therein.

The Interim Report focuses primarily on data regarding the ages of minors who are subject to the Title 42 processes and their lengths of stay in hotels. *See* Interim Report at 5-14. The Interim Report contains a single paragraph noting—by reference to the Declaration of Mellissa Harper, ECF No. 925-1—the amenities available at the hotels where minors are housed. *Id.* at 15. It mentions in passing, but does not address with any specificity, some of the evidence that Defendants have provided regarding the custody and care of minors held briefly in these circumstances. It does not explain why the amenities that Defendants have detailed—including the availability of one-on-one care by specialists, beds, showers, hygiene kits, food and drinks, clothing, medical care, and access to phone calls—are insufficient to meet the Agreement's requirements.

The report opines that "it seems clear that the Temporary Housing Program ["THP"[1]] is not fully responsive to the safe and sanitary requirements of young

---

[1] The Interim Report uses this term without defining it. This is not a term used by Defendants, and so it is unclear whether the Interim Report is referring only to the use of hotels as part of the Title 42 process, or whether it is referring to any temporary custody incidental to the Title 42 process, or even to the Title 42 process itself.

children." Interim Report at 15. In reaching this opinion, the Interim Report makes a brief reference to "a vast body of pediatric and psychological evidence documenting sharp differences in the requisite custodial needs and developmental vulnerabilities of children over [the age range between 10 and 17]," *id.*, but does not specifically identify any of this evidence on which it relies or detail the specific needs that the Monitor believes must be met to comply with the Agreement. It also does not explain upon what evidence the Interim Report is relying for its apparent conclusion that these needs are not being met during the brief period of temporary custody in hotels. The Interim Report relies on some assumptions regarding facts the Monitor has not yet obtained. *See id.* at 16 ("It remains unclear whether there are any limits on the number of minors permitted to be housed in any given hotel."); *id.* ("It is not clear how the decisions regarding these cases were made[.]"). The Interim Report also suggests that the Monitor has not spoken to any minors in hotels.[2] *Id.* at 15.

> The Interim Report concludes that:

> While the amenities provided by the THP are appreciated, a list of amenities is not a system of care for children of different ages and developmental stages. There remains no assurance that the THP can provide adequate custodial care for single minors, who by definition are being moved through the immigration system alone and without familial support or protection. Formal systems of custodial care for children have been well defined and require specialized custodial elements, continuous oversight, and specialized training of relevant personnel.

---

[2] The Interim Report states that minors "have not yet been made available for interview." *Id.* at 15. Defendants are not aware that the Monitor has made any request to interview minors.

*Id.* at 17. Based on this conclusion, the Interim Report recommends that, "the lower age limit for single minors assigned to the THP should be formalized and raised urgently from 9 to 14 years of age and alternative custodial programs for all single minors should be pursued." *Id.*

## III.  **OBJECTIONS**

> a. The Interim Report Applies a Standard That Is Not Contained Within the Four Corners of the Agreement, Nor Within Any of This Court's Orders.

The Monitor is charged with monitoring Defendants' compliance with the Agreement, as interpreted by certain orders of this Court. *See* Monitoring Order, ¶ 2. "The Monitor shall have no authority to intervene in or direct Defendants' activities." *Id.* ¶ 4. The Interim Report is not consistent with the scope of the Monitor's duties because it reviews the use of hotels as part of the Title 42 process—a form of custody that Defendants maintain is not subject to terms of the Agreement, *see* ECF No. 925 at 9-16—under a standard that is not found in the Agreement or in any order of this Court interpreting the Agreement. Accordingly, this Court should disregard the recommendations contained in the Interim Report.

The Interim Report does not address or take into account Defendants' argument that the custody the report is addressing is not covered by the Agreement, nor does it clearly explain whether or how the Monitor would conclude that the Agreement applies to such custody. Further, the Interim Report fails to clearly explain the standard by which it is analyzing Defendants' use of hotels for briefly housing minors pending their expulsion under Title 42, or how that standard relates to the Agreement's terms. The Interim Report makes two indirect references to the term "safe and sanitary," *id.* at 15, 17, but does not explain whether or how it is applying this term. Instead, the Interim Report's ultimate recommendation appears to rest on a presumption that Defendants are required to have a "system of care"

1
2
3
4
5
6
7
8

for minors that may be understood by reference to "a vast body of pediatric and psychological evidence documenting sharp differences in the requisite custodial needs and developmental vulnerabilities of children over [the age range between 10 and 17]." *Id.* at 15. The Interim Report recommends a remedy, which presumably must be based on a finding—not explicitly detailed in the Interim Report—that the absence of such a "system of care" is a violation of the Agreement. *Id.* at 17.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

All of this is problematic for many reasons, not least of which because it leaves Defendants with no way to understand the standard to which they are being held, or the actions or inactions that have led to the Monitor's apparent finding that they have violated the Agreement. Details of the referenced "body of evidence" are not cited or discussed in detail anywhere in the Interim Report, and there is no explanation in the Interim Report regarding why the Monitor believes that this "body of evidence" provides a specific standard for compliance, or what the Monitor believes Defendants must do in order to comply with these uncited, unidentified, and undiscussed standards. Notably, the Interim Report appears to take issue with Defendants' practices on the grounds that "it is not clear upon what developmental or custodial grounds [Defendants'] age limit was based nor what technical guidance was utilized to make the decision to exclude children aged 9 but include those aged 10," *id.* at 16, and finds that Defendants lack any formal age limit policy, *id.*,[3] while at the same time the Interim Report recommends the imposition of an age limit of 14 for single minors without providing any explanation of the "developmental or custodial grounds" on which this

26
27
28

[3] This finding also entirely fails to address the evidence in Defendants' brief regarding the considerations that may result in a minor being exempted from the Title 42 process. *See* ECF No. 925 at 5-6.

recommendation is based. *Id.* at 17. Ultimately, it appears from the limited information in the Interim Report that the referenced "system of care" is not a substantive standard at all, but rather is a shorthand term used to describe a set of substantive standards that the Interim Report does not detail, much less explain how these standards derive from the Agreement's terms.

There is no explanation in the Interim Report tying the presumed requirement for a "system of care" to the "safe and sanitary" requirement of the Agreement, or to any other terms in the Agreement, nor does the Interim Report explain whether or why the Monitor has concluded that "safe and sanitary" was intended by the parties in 1997 to be interpreted as a "system of care" for minors. Nothing in the Interim Report ties the standard applied therein to any prior order of this Court interpreting the Agreement—including, for example, the extensive litigation over the meaning of the term "safe and sanitary" in the context of U.S. Customs and Border Protection ("CBP") facilities. *See* ECF No. 363 at 7-18. As Defendants have shown, *see* ECF No. 925 at 20-25; ECF No. 925-1, brief housing in a hotel, with hotel amenities and trained staff oversight, meets the "safe and sanitary" standard that the parties and this Court have identified with regard to CBP facilities. The Interim Report identifies no facts supporting a conclusion that the care being provided to minors during this brief period is not safe and sanitary as those terms are regularly understood, which is the standard that the parties established in the Agreement.[4]

---

[4] Notably, Plaintiffs' motion to enforce the Agreement also does not urge this interpretation of the Agreement's "safe and sanitary" requirement. Rather, Plaintiffs' motion is premised on the argument that Defendants have an obligation under the Agreement "to provide children a safe, sanitary, and licensed placement

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Essentially, the Interim Report recommends that this Court order significant restrictions on Defendants' operations, presumably by finding Defendants in violation of a new standard for compliance with the Agreement that has never before been proposed, identified, or discussed by any party or the Court. At a minimum, the Court should decline to adopt the Interim Report's recommendations that are based on this unsupported theory of the Agreement's requirements unless and until Defendants are given notice sufficient to allow them to understand the "system of care" standard that is being applied to their conduct and how that standard derives from the Agreement, are provided an opportunity to review and confront the evidence supporting application of this standard, and are provided an opportunity to brief the question of whether the application of this standard is appropriate under the Agreement. Unless and until such procedures are completed, the Court should decline to adopt the recommendation contained in the Interim Report, and should decline to consider its recommendations in ruling on Plaintiffs' pending motion to enforce the Agreement.[5]

_____

for howsoever long they remain in federal custody." ECF No. 920-1 at 6. To the extent that Plaintiffs adopt this interpretation for the first time in their reply briefing, ECF No. 960 at 20, the Court should disregard this argument. *See United States ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) (citing *Lujan v. National Wildlife Federation*, 497 U.S. 871, 894-95 (1990) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers.").

[5] Even if the Court determines that it is permissible to apply this new standard to Defendants, the Court should not adopt the Monitor's recommendation to the extent that it could be read to place a restriction on the ability of the government to expel a minor pursuant to Title 42. Such a reading would exceed the scope of the Agreement's terms. There is still nothing in the Agreement that could be read to

8

1

2

3

   b. <u>The Court Should Not Consider the Facts or Recommendations Contained in the Interim Report Unless It Follows The Procedures Required By The Monitoring Order and Fed. R. Civ. Pro. 53(f).</u>

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

   Defendants incorporate herein their objections to the First Interim Report and reiterate those same objections regarding this Interim Report to the extent the Monitor still has not adhered to the requirements of the Monitoring Order. Specifically, regarding this Interim Report, the Monitor did not comply with the requirement that "[p]rior to filing the Interim Report and Recommendation, the Monitor shall afford the Parties a reasonable opportunity to be heard and to expeditiously cure any violation." Monitoring Order at 20. Notably, the Interim Report proposes a standard for compliance with the "safe and sanitary" provision of the Agreement that is purportedly based on "a vast body of pediatric and psychological evidence" that has never been identified to Defendants, nor have Defendants been provided the opportunity to address or respond to that evidence, provide their own responsive evidence, or brief the question whether that evidence reasonably requires the interpretation of the Agreement that the Interim Report urges the Court to adopt. Both the Monitoring Order and Rule 53(f) (which is

19

20

21

22

23

24

25

26

27

28

preclude the government from processing minors pursuant to Title 42 under any circumstances, because the Agreement itself makes clear that it governs "the detention, release, and treatment of minors" in custody pursuant to the immigration laws. As Defendants explained in their response to Plaintiffs' Motion to Enforce, the Title 42 process is not an immigration process, and individuals in custody pending their expulsion are not held in immigration custody. The Interim Report provides absolutely no basis for reading the Agreement to govern the government's decisions regarding such processing. Thus, to the extent that the recommendation contained in the Interim Report might be read to urge the Court issue an order that would dictate how minors are processed, as opposed to the conditions in which they are held, it is recommending relief that is outside the scope of the Agreement's terms.

incorporated in the Monitoring Order) would require that Defendants be provided the opportunity to do all those things before the Court could consider whether to adopt the factual representations or recommendation contained in the Interim Report. The Court should provide the opportunity for Defendants to view and respond to this evidence, and to provide briefing on the recommendations contained within the Interim Report, before it considers them in conjunction with Plaintiffs' pending motion to enforce the Agreement regarding Title 42.

## IV.   CONCLUSION

For all of the above reasons, Defendants ask the Court to disregard the Interim Report or, if the Court intends to consider or adopt any portion of the Interim Report in ruling on Plaintiffs' pending motion (ECF No. 920), to follow the procedures required by the Monitoring Order and Federal Rule of Civil Procedure 53(f) before doing so.

1      DATED: September 2, 2020      Respectfully submitted,

2

3                                    ETHAN P. DAVIS
                                     Acting Assistant Attorney General
4

5                                    AUGUST E. FLENTJE
                                     Special Counsel to the Assistant Attorney
6                                    General

7
                                     WILLIAM C. PEACHEY
8                                    Director, District Court Section
                                     Office of Immigration Litigation
9

10                                   WILLIAM C. SILVIS
                                     Assistant Director, District Court Section
11                                   Office of Immigration Litigation

12
                                     /s/ Sarah B. Fabian
13                                   SARAH B. FABIAN
                                     NICOLE N. MURLEY
14                                   Senior Litigation Counsel
                                     Office of Immigration Litigation
15                                   District Court Section
                                     P.O. Box 868, Ben Franklin Station
16                                   Washington, D.C. 20044
                                     Tel: (202) 532-4824
17                                   Fax: (202) 305-7000
                                     Email: sarah.b.fabian@usdoj.gov
18

19                                   *Attorneys for Defendants*

20

21

22

23

24

25

26

27

28

11

CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2020, I served the foregoing pleading

and attachments on all counsel of record by means of the District Clerk's

CM/ECF electronic filing system.

/s/ *Sarah B. Fabian*
SARAH B. FABIAN
U.S. Department of Justice
District Court Section
Office of Immigration Litigation

Attorney for Defendants

12