Bridget Cambria, Esq.
Executive Director
ALDEA - The People's Justice Center
532 Walnut St.
Reading, PA 19601
bridget.cambria@cambriaklinelaw.com
(Admitted *Pro Hac Vice*)

Gretchen M. Nelson (SBN 112566)
Gabriel S. Barenfeld (SBN 224146)
NELSON & FRAENKEL, LLP
601 S. Figueroa Street, Suite 2050
Los Angeles, CA 90017
gnelson@nflawfirm.com
gbarenfeld@nflawfirm.com

*Attorneys for Amici*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM P. BARR, Attorney General of the United States, *et al.*, <br><br> Defendants. | Case No. CV-85-4544-DMG <br><br> CLASS ACTION <br><br> **RESPONSE BRIEF OF *AMICI CURIAE* TO THE AUGUST 2020 INTERIM REPORT OF THE INDEPENDENT MONITOR** <br><br> Judge: Hon. Dolly M. Gee |

# TABLE OF CONTENTS

I. INTRODUCTION ..............................................................................................1

II. SUMMARY OF ARGUMENT........................................................................1

III. ARGUMENT....................................................................................................2

A. The Agreement requires the Independent Monitor's findings and recommendations to apply to *all* Class Members, and not a particular subset of Class Members ........................................................................................................2

B. *Amici* recommend additional information-gathering to clarify the significance and reliability of the data provided by ICE to the Independent Monitor ........................................................................................................................4

IV. CONCLUSION ................................................................................................7

# TABLE OF AUTHORITIES

**Cases**

*Flores v. Barr*, No. 2:85-cv-4544 (DMG) (C.D. Cal. Aug. 7, 2020) .......................... 1

*Flores v. Barr*, No. 2:85-cv-4544 (DMG) (C.D. Cal. June 26, 2020) ......................... 3

*Flores v. Johnson*, 212 F. Supp. 3d 864 (C.D. Cal. 2015) ................................. 2, 3, 4

**Statutes**

6 U.S.C. § 279(g) (2012) .................................................................................... 6, 8

**Other Authorities**

CBP Responds to Letter Regarding Concerns Over Truncated Asylum Programs Being Piloted in El Paso, TX, AILA (Fed. 28, 2020), https://www.aila.org/advo-media/whats-happening-in-congress/congressional-updates/cbp-responds-to-letter-regarding-concerns ............................................................................................... 7

# RESPONSE BRIEF OF *AMICI CURIAE* TO THE AUGUST 2020 INTERIM REPORT OF THE INDEPENDENT MONITOR

## I. Introduction

On August 26, 2020, pursuant to this Court's August 7, 2020 and other prior orders, the *Flores* Independent Monitor and Dr. Paul Wise submitted an "Interim Report on the Use of Temporary Housing for Minors and Families under Title 42." [Doc. # 938]. *See Flores v. Barr*, No. 2:85-cv-4544 (DMG) (C.D. Cal. Aug. 7, 2020) [Doc. # 912].

*Amici* are RAICES, Proyecto Dilley, and Aldea – the People's Justice Center— the three legal services providers at the Family Detention Centers in Karnes City, Texas; Dilley, Texas; and Leesport, Pennsylvania. Pursuant to this Court's August 7, 2020 Order [Doc. # 912] and August 26, 2020 In Chambers Order [Doc. # 937], *Amici* respectfully respond to the Independent Monitor and Dr. Wise's report.[1]

## II. Summary of Argument

*Amici* agree with the Independent Monitor's assessment that the Temporary Housing Program (THP) is "not fully responsive to the safe and sanitary requirements of young children," and thus does not comply with the *Flores* Settlement Agreement ("FSA" or "Agreement"). *Amici* contend that this finding applies to *all* Class Members, such that all Class Members held in hotels should be afforded the same rights and protections under the FSA and immediately transferred to non-secure, state-licensed facilities as required by the FSA.

---

[1] *Amici* are grateful to the Independent Monitor and Dr. Wise's investigation of conditions and the adequacy of medical care at the Family Residential Centers (FRCs) and hope to have the opportunity to respond to the Independent Monitor and Dr. Wise's future interim report on that subject as well. *See* Interim Report on the Use of Temporary Housing for Minors and Families under Title 42 ("August 2020 Interim Report") [Doc. # 938].

## III. Argument

### A. The Agreement requires the Independent Monitor's findings and recommendations to apply to *all* Class Members, and not a particular subset of Class Members.

As the Independent Monitor explained in her July 2020 "Interim Report on the Use of Temporary Housing for Minors under Title 42," [Doc. # 873], Title 42 is a program that places individuals entering the United States into "Title 42 expulsion proceedings," rather than the standard immigration proceedings pursuant to Title 8 of the U.S. Code. Children in Title 42 expulsions are therefore in a different legal posture than those traditionally in the Department of Homeland Security's (DHS) custody but are nevertheless similarly under DHS's custody and control.

The FSA applies equally to all children. The Agreement requires Class Members be placed in non-secure, state-licensed facilities regardless of whether the Class Member entered the United States with a family member or parent and regardless of the child's immigration status or posture. FSA ¶ 10 (defining Class Members as "*[a]ll minors* who are detained in the legal custody of the INS") (emphasis added); FSA ¶¶ 12, 19; *Flores v. Johnson*, 212 F. Supp. 3d 864, 871–73 (C.D. Cal. 2015), *affirmed in relevant part, reversed in part, and remanded by* 898 F.3d 898 (9th Cir. 2016). There is no exception to the Government's obligations. Moreover, these obligations are not excused during a global pandemic; rather, the terms of the Agreement and this Court's orders require the Government to process children for release with "all deliberate speed," given Class Members' right to safe and sanitary conditions. FSA ¶ 12; *Flores v. Barr*, No. 2:85-cv-4544 (DMG), at *4 (C.D. Cal. June 26, 2020) [Doc. # 833].

The Court has repeatedly denied the Government's invitation to create exemptions to the Agreement's terms for categories of Class Members, and to apply its terms discriminatorily to differing groups of children. *See Flores*, 212 F. Supp. 3d

at 871–73. Just as this Court has found that unaccompanied and accompanied children have the same rights under the FSA, so too do single minors, children who arrive as a part of a family group, and children who travel with a parent or legal guardian. *Id.*

Defendants now seek to distinguish a Class Member's legal rights under the Agreement based upon the detention scheme utilized by the government. *See* Def's Response in Opp. to Pls.' Mot. to Enforce, ECF No. 920 [Doc. # 925]. Currently, the Government holds Class Members in the custody of the Office of Refugee Resettlement (ORR), Customs and Border Protection (CBP) custody (in CBP facilities and processing centers), Immigration and Customs Enforcement (ICE) custody (at the FRCs), and ICE when children are detained in hotels pursuant to the Title 42 program. Regardless of the detention system in which a child is placed, this Court should rest upon its ongoing and consistent conclusion: Class Members have equal rights under the FSA regardless of where they are detained. *See, e.g. Flores*, 212 F. Supp. 3d at 871–72.

The Independent Monitor's August 2020 Interim Report noted that the Government's hoteling program has been applied to both unaccompanied children and families and noted various deficiencies with the THP as it relates to single minors. August 2020 Interim Report [Doc. #938]. Many of the deficiencies noted in the report as to unaccompanied children (or "single minors") apply equally to accompanied children in the THP as well as to accompanied children in the FRCs. Although accompanied children—both in the THP and the FRCs—have the benefit of being with a parent, the protections these Class Members are entitled to under the *Flores* Settlement Agreement remain the same. *See Flores*, 212 F. Supp. 3d at 871–73.

The Independent Monitor's report crystalizes the importance of assessing whether conditions are safe and sanitary in consideration of a child's age and stage

of development. *See* FSA ¶ 12. While age is a useful distinction when assessing whether conditions of confinement are appropriate and comply with the Agreement's requirement to provide safe and sanitary conditions, FSA ¶ 12, the Court need not engage in such a detailed analysis to determine whether the Government is compliant with the FSA. The Agreement requires that children be placed in non-secure, state-licensed facilities. FSA ¶¶ 12, 19. Hotels are not state-licensed, and MVM third-party contractors do not have child welfare experience or training. *See* Interim Report on the Use of Temporary Housing for Minors and Families Under Title 42 by Independent Monitor (July 22, 2020) [Doc. # 873].

As the Independent Monitor concluded, the THP is "not fully responsive to the safe and sanitary requirements of young children"—whether or not they are accompanied by a parent. August 2020 Interim Report, at 15 [Doc. # 938]. Thus, while the Agreement may require more for particularly vulnerable children in order to honor its terms, it *does not* permit exemptions to its foundational, contractually obligated protections. Children—whether accompanied or not—are Class Members and entitled to the benefits of the *Flores* Settlement Agreement. For this reason, *Amici* urge the Court to apply the Independent Monitor's recommendations equally to *all* Class Members in the THP: all children placed in hotels, regardless of their immigration status and age, should be transferred to FSA-compliant facilities, as should accompanied children who remain detained in non-FSA compliant FRCs.

### B. *Amici* recommend additional information-gathering to clarify the significance and reliability of the data provided by ICE to the Independent Monitor.

As noted by the Independent Monitor, there are deficiencies in ICE's data regarding the THP. August 2020 Interim Report, at 6, 11 n.9 [Doc. # 938]. *Amici* agree that critical information was not provided to the Independent Monitor that would be beneficial for this Court's review of the THP. Accordingly, *Amici* urge the

4

Court to require additional reporting from ICE to clarify (1) the length of time Class Members subjected to Title 42 program are detained, (2) the numbers of Class Members subjected to Title 42 who are held in hotels, and (3) the number of Class Members currently designated as parts of a "family unit" or "family group" who are in fact, unaccompanied children, as defined by the Trafficking Victims Protection Reauthorization Act ("TVPRA"). 6 U.S.C. § 279(g) (2012).

The data provided by ICE fails to clarify critical information necessary for this Court to fully consider the Motion to Enforce filed by Class Counsel. *See* Mem. in Support of Mot. to Enforce Settlement re "Title 42" Class Members [Doc. # 920-1]. First, it is unclear whether the data provided to the Independent Monitor documents the total amount of time children are held at a hotel, or the total amount of time children have been in Government custody. *Amici's* experience indicates that ICE reports regarding length of stay for children detained at the FRCs include only the amount of time each Class Member was held at the FRC, and does not include the time a child was held in CBP custody at the border or in a hotel under the THP.[2] This time can be significant, and should be counted towards the total "length of detention" for any Class Member. For example, some family units, particularly those who have been subjected to the Humanitarian Asylum Review Process ("HARP") or Prompt Asylum Claim Review ("PACR") programs[3], are held at the border in CBP processing centers for approximately one month prior to their transfer to an FRC. As

---

[2] *Amici* note—as the Independent Monitor reported in July 2020—that families detained at the FRCs have often been held in a hotel prior to their placement at an FRC, particularly in Karnes. *See* Interim Report on the Use of Temporary Housing for Minors under Title 42, at 13 [Doc. # 873].

[3] The HARP and PACR programs are two programs implemented by DHS which require asylum-seekers—including families—to complete all or part of their credible fear process while in CBP custody. *See* CBP Responds to Letter Regarding Concerns Over Truncated Asylum Programs Being Piloted in El Paso, TX, AILA (Feb. 28, 2020), https://www.aila.org/advo-media/whats-happening-in-congress/congressional-updates/cbp-responds-to-letter-regarding-concerns.

this Court evaluates whether a child's custody in non-FSA compliant facilities exceeds the three-to-five day period allowed by the FSA, it must determine whether a child was held in government custody prior to placement at a hotel, and if so, for how long.[4] FSA ¶ 12A.

Second, *Amici* agree with the Independent Monitor's assessment that the total number of Class Members in the THP is unclear. August 2020 Interim Report, at 6 [Doc. # 938]. A "family unit" or "family group" may include multiple children. Additional clarity regarding the total number of Class Members affected by Defendants' placement of children in hotels under the Title 42 program will empower the Court to more meaningfully assess the significance of Defendants' non-compliance.

Third, to the extent the Court is inclined to adopt the Independent Monitor's recommendations for a particular subset of Class Members, based upon the vulnerability of a child who is not accompanied by their parent or legal guardian, *Amici* contend ICE's "single minor" data included in the Independent Monitor's report impedes the Court's ability to take all necessary action to protect this uniquely vulnerable group of children.

Defendants have regularly classified Class Members as "unaccompanied" or "accompanied" as defined by the TVPRA and reported information to the Court and Independent Monitor consistent with these definitions. 6 U.S.C. § 279(g) (2012). Similarly, ICE has previously defined a "family unit" in its reports to the Court as a parent or legal guardian joined by one or more minor children. Defendants now

---

[4] *Amici* note that the Independent Monitor's report indicates that high numbers of Class Members are apprehended along the border, particularly in the Rio Grande Valley, which is five or more hours away from San Antonio and Houston. August 2020 Interim Report, at 5–7 [Doc. # 938]. This suggests that there may be an intervening period between apprehension and placement in the THP where unaccompanied and accompanied Class Members may be held in CBP or other facilities.

apparently present data based upon new definitions, reporting that children are a part of a "family unit" if they are accompanied by any adult relative. August 2020 Interim Report, at 7 n.5 ("Family Unit represents the number of individuals (either a child under 18 years old, parent, or legal guardian) apprehended *with a family member* by the U.S. Border Patrol.") (emphasis added).

The unique vulnerabilities of "single minors" articulated in the Independent Monitor's report extend to minor children who are not in the care of their parents or legal guardians. For example, a two-year-old Class Member accompanied by his or her eighteen-year-old cousin would currently fall under Defendants' new definition of "family unit." This Class Member would likely be just as vulnerable as a "single minor" in the care of MVM security guards. For this reason, the data provided by ICE regarding "family units" lacks sufficient detail to allow the Court to assess how many Class Members, and particularly, children under ten years of age, remain detained without appropriate care to ensure safe conditions. To the extent the "family unit" data reported by ICE does not include statistics for Class Members who have been designated members of a "family group," *Amici* urge the Court to require such data be provided to the Independent Monitor and the Court to facilitate additional monitoring.

**IV.     Conclusion**

The Independent Monitor is correct: the THP is not an appropriate "system of care" for Class Members. August 2020 Interim Report, at 17 [Doc. # 938]. *Amici* urge this Court to apply the Independent Monitor's recommendation *equally* to all Class Members, and afford all children in the THP the rights and protections required under the FSA, beginning with the Agreement's obligation that they be detained—if such a justification is found—in non-secure, state-licensed facilities.

| | | |
|---|---|---|
| 1 | DATED: September 2, 2020 | NELSON & FRAENKEL LLP |
| 2 | | /s/ *Gabriel S. Barenfeld* |
| 3 | | Gabriel S. Barenfeld |
| 4 | | Bridget Cambria, Esq. |
| 5 | | Executive Director |
| | | ALDEA - The People's Justice Center |
| 6 | | (Admitted *Pro Hac Vice*) |
| 7 | | *Attorneys for Amici* |

8