1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3          HONORABLE DOLLY M. GEE, JUDGE PRESIDING

4    JENNY L. FLORES,                    )
                                         )
5                                        )
                                         )
6                      Plaintiffs,       )
                                         )
7                                        )
                                         )
8          Vs.                           )   No. CV85-4544-DMG
                                         )
9                                        )
                                         )
10   WILLIAM BARR, ET AL.,               )
                                         )
11                                       )
                                         )
12                     Defendants.       )
                                         )
13   _____    )

14

15

16     REPORTER'S TRANSCRIPT OF TELECONFERENCE PROCEEDINGS

17                   *STATUS CONFERENCE*

18              FRIDAY, SEPTEMBER 4, 2020

19

20

21

22

23          MIRIAM V. BAIRD, CSR 11893, CCRA
         OFFICIAL U.S. DISTRICT COURT REPORTER
24       411 WEST FOURTH STREET, SUITE 1-053
            SANTA ANA, CALIFORNIA 92701
25              MVB11893@aol.com

1                       **A P P E A R A N C E S**

2


3     **IN BEHALF OF THE PLAINTIFFS,**      PETER A. SCHEY
      **JENNY L. FLORES:**                  CARLOS HOLGUIN
4                                           (TELEPHONICALLY)
                                            CENTER FOR HUMAN RIGHTS AND
5                                           CONSTITUTIONAL LAW
                                            256 SOUTH OCCIDENTAL
6                                           BOULEVARD
                                            LOS ANGELES, CA 90057
7

8

9


10    **IN BEHALF OF THE DEFENDANT,**       SARAH B. FABIAN
      **WILLIAM BARR, ET AL.,:**            NICOLE MURLEY
11                                          SCOTT STEWART
                                            US DEPARTMENT OF JUSTICE
12                                          OFFICE OF IMMIGRATION
                                            LITIGATION
13                                          PO BOX 868 BEN FRANKLIN
                                            STATION
14                                          WASHINGTON, DC 20044

15

16

      **ALSO PRESENT:**
17    **LEECIA WELCH**
      **SPECIAL MASTER ANDREA ORDIN**
18    **DR. PAUL WISE**
      **NEHA DESAI**
19    **DENISE BELL**
      **BRIDGET CAMBRIA**
20    **JUVENILE COORDINATORS:**
      **DEANE DOUGHERTY**
21    **AURORA MIRANDA-MAESE**

22

23

24

25


                    UNITED STATES DISTRICT COURT

```
 1        LOS ANGELES, CALIFORNIA; FRIDAY, SEPTEMBER 4, 2020; 1:05 P.M.

 2                                 ---

 3

 4             THE CLERK:  Calling CV85-4544-DMG, Jenny L. Flores,

 5     et al., v. William Barr, et al.

 6             For plaintiffs, we have Peter Schey, Carlos

 7     Holguin, Leecia Welch Neha Desai.  For amici, Stephanie

 8     Alvarez Jones, Denise Bell, and Bridget Cambria.

 9             We also have the independent monitor Andrea Ordin

10     and Dr. Paul Wise.  For the government, we have Sarah Fabian,

11     Nicole Murray, and Scott Stewart.  For the two juvenile

12     coordinators, we have Aurora Miranda-Maese and Deane

13     Dougherty.

14             We're ready to proceed, Your Honor.

15             THE COURT:  Thank you.  Good afternoon, everyone.

16     I'm sorry we had technical difficulties this morning.  We

17     were not able to start at 11:00 o'clock, as we had

18     anticipated.  We do have a lot of things on our plate.  So

19     let me start first by addressing the juvenile coordinators'

20     interim report.  I've reviewed Ms. Miranda-Maese's report on

21     behalf of ORR.  I am pleased with it.  Congratulations.  Keep

22     up the good work.

23             Ms. Miranda-Maese, if you have other more important

24     things to do and don't want to stay for the rest of this

25     hearing, you are free to be excused.  You're welcome to stay
```

1    as well.

2            MS. MIRANDA-MAESE:  Thank you, Your Honor.  I

3    appreciate that.

4            THE COURT:  With regard to the ICE report from

5    Ms. Dougherty, I just have a couple of questions for you.

6    According to the census, there are two minors at Dilley who

7    have contracted COVID-19.  Were those two minors people who

8    were discovered to have had the virus at intake?

9            MS. DOUGHERTY:  Yes, that is correct, Your Honor.

10           THE COURT:  So currently there are no minors who

11   have been held at the facility to begin with who have

12   contracted the virus.

13           MS. DOUGHERTY:  That is correct.  They were not

14   part of the general population.

15           THE COURT:  Well, that's good.  I'm glad that you

16   are managing to keep it at bay.

17           MS. DOUGHERTY:  We're doing our best.

18           THE COURT:  With regard to some of the individuals

19   who are still held in detention, there's an indication with

20   regard to the DAM v. Barr detainees, that ICE would be

21   willing to release them upon parental consent.  Is the only

22   reason why they're currently being detained is because

23   parents are subject to final removal orders?

24           MS. DOUGHERTY:  That is my understanding, yes,

25   Your Honor.

1          THE COURT:  All right.  And since the last status

2     conference, you have released some of the minors who were

3     part of the original, I think, it was 105 or 102 class

4     members who had been detained for over 20 days?

5          MS. DOUGHERTY:  Yes, ma'am.  I'm sorry, what is

6     your question to that?

7          THE COURT:  Between the last status conference and

8     this status conference, you have released some class members

9     who are in detention?

10          MS. DOUGHERTY:  Yes, ma'am, that is correct.

11          THE COURT:  The current number, which is 118, as of

12     August 17th, that's because there have been new people coming

13     in?

14          MS. DOUGHERTY:  Yes.

15          THE COURT:  Because some people stayed longer and

16     now are in part of the over 20 days' category?

17          MS. DOUGHERTY:  That is correct.  It is a very

18     fluctuating number, as I think everybody understands.  So

19     it -- it literally fluctuates from day to day, but we have

20     been moving forward with releases, but every day, you know,

21     we may have some of the class members who go beyond the

22     20-day limit.

23          THE COURT:  Okay.

24          MS. DOUGHERTY:  It's just nature of the course,

25     right.

1           THE COURT:  So regard to the DAM v. Barr detainees,

2   you are awaiting some sort of direction from the Court

3   regarding the issue of consent?

4           MS. DOUGHERTY:  That is correct, yes.  That is the

5   agency's stance.

6           THE COURT:  All right.  Ms. Miranda-Maese, are you

7   still on the line?

8           MS. MIRANDA-MAESE:  Yes, I am, Your Honor.

9           THE COURT:  I neglected to tell you that the next

10   deadline for the interim report will be October 2nd.

11           MS. DOUGHERTY:  October 2nd, got it.  Thank you so

12   much.

13           THE COURT:  That will apply to the ICE report as

14   well.

15           MS. DOUGHERTY:  Understood.  Thank you, ma'am.

16           THE COURT:  Well, let me turn next to the pending

17   motions.  I'm assuming that counsel now have had more than

18   ample opportunity to review the Court's tentative with regard

19   to the Title 42 hoteling issue.

20           Who would like to address the tentative in that

21   regard?

22           MR. HOLGUIN:  This is Carlos Holguin for

23   plaintiffs, Your Honor.  We will submit on the tentative.

24           MS. FABIAN:  Your Honor, this is Sarah Fabian for

25   defendants.  We have a few points that I'd like to just ask

```
1    the Court for possible clarification.  The first is, I think,

2    it relates most likely to paragraph three of the ordering

3    paragraphs on page 17 of the tentative, but it's -- it's also

4    a general question as to the applicability of the order to

5    accompanied minors.  I guess, as a general clarification

6    would be whether the order does, in fact, apply to

7    accompanied minors?  It seems that it does.  I just wanted to

8    clarify that.

9            As to paragraph three, I think the clarification

10   we'd ask the Court to make is whether a transfer of

11   accompanied minors to the FRCs would be consistent with the

12   requirements in paragraph three?  I know there's some ongoing

13   discussion about whether those constitute licensed

14   facilities.  It's an issue that hasn't necessarily been

15   resolved.

16           So we would ask for the Court's clarification on

17   that point.

18           THE COURT:  Thank you.  I will clarify the language

19   in the final version to indicate that it applies to both

20   accompanied and unaccompanied minors.

21           MS. FABIAN:  Okay.  And as to the FRCs as well?

22           THE COURT:  Yes, that's right.

23           MS. FABIAN:  Okay.  Thank you.

24           And then the second point I wanted to ask the Court

25   is related to paragraph two -- order in paragraph two.
```

```
 1    The -- the order in paragraph two requires immediate
 2    compliance.  I have had a chance to discuss with my clients a
 3    little bit, and there are sort of inherent concerns.  The
 4    Court originally did recognize that ORR's ability to comply
 5    and to follow the CDC guidance is related to the low numbers
 6    and the ability of ORR to utilize space in its facilities.
 7    There's also some inherent concerns with transferring minors,
 8    just the nature of requiring transfer.
 9            ORR particularly, but ICE, as well, will need some
10    time to determine the best way to -- given the necessary
11    increase that will occur as a result of this order, to -- to
12    make sure that any transfers that occur will occur safely.
13    For example, ORR may need to move some minors who are
14    currently near the border away from the border to free up
15    space to facilities closer to the border.  Giving some time
16    for the government to implement the order will allow and
17    ensure that that can be done safely and that the -- the
18    concerns about keeping minors safe within the CDC guidances
19    can be addressed rather than having these transfers occur
20    immediately and without proper planning.
21            So we would ask the Court to amend paragraph two to
22    allow for some time for the government to come into
23    compliance.
24            THE COURT:  My --
25            MS. FABIAN:  Perhaps two weeks.
```

1          THE COURT:  My reason for splitting up paragraphs

2     two and three was two was supposed to be prospective.  So

3     that means that you should no longer be placing minors in

4     hotels going forward.  Paragraph three is to address those

5     who are already in hotels or are currently in the process of

6     being transferred into hotels.  Paragraph three says that you

7     must do it as expeditiously as possible.

8          Is there a reason why you cannot cease

9     prospectively placing minors in hotels?

10          MS. FABIAN:  Your Honor, as I understand it, the

11    goal would be -- I -- obviously, they'll have to be some

12    discussion of -- of how to implement Title 42 processes, and

13    if that can be done using licensed facilities.  I suspect --

14    we're still discussing details -- that there would need to be

15    likely some placements of minors going forward into

16    facilities near the border; however, to the extent that there

17    are already minors in those facilities, we would be concerned

18    with, for example, placing minors into facilities near the

19    border where minors who are there who are held there

20    currently are free from COVID and are able to utilize the

21    space and follow the CDC guidances.

22          For example, there would be need to be a process of

23    transferring those minors to other facilities, and then

24    using -- going forward, using those facilities in a different

25    manner, which would require quarantining, perhaps, cohorting

UNITED STATES DISTRICT COURT

 1    and some of the other processes required by the CDC

 2    guidances.

 3           So it's not a -- I don't believe it's a separate

 4    process.  You know, given that the licensed facilities aren't

 5    currently being used for folks coming in who haven't

 6    necessarily been quarantined or at least on the numbers

 7    that -- that might occur now going forward, that they haven't

 8    been used for these quarantining cohorting processes, and

 9    perhaps, the system of testing and then transferring.

10           So there are just some processes, I think, that ORR

11    would want to carefully consider to make sure that it's able

12    to do this consistent with CDC guidances and to ensure the

13    safe transfer of children.

14           THE COURT:  How much time do you need?

15           MS. FABIAN:  I would suggest two weeks would be

16    enough time.

17           THE COURT:  All right.

18           MR. HOLGUIN:  Your Honor, if I may?

19           THE COURT:  Yes.

20           MR. HOLGUIN:  This is Carlos Holguin on behalf of

21    plaintiffs.  A couple of things, plaintiffs are, I think,

22    understandably concerned about foot dragging and so forth in

23    this circumstance.  At the same time, we have, of course, no

24    objection to reasonable quarantining procedures or whatever

25    else is necessary to ensure the health of the class members,

but simply allowing the government, you know, another two

weeks to remove children or to stop placing children in

hotels seems to be rather extravagant.

For plaintiffs -- on plaintiffs' perspective, I

think that what would make more sense is for -- if the

government needs more time, to bring that up with plaintiffs

as well as with the independent monitor, who would then be

able to determine whether the government's need for more time

is -- is reasonable and consistent in conjunction with

Dr. Wise, reasonable and consistent with sound medical

practice.  So that's the first point.

My second point is that, you know, plaintiffs would

not want to see Court's order being used as a pretext for

involuntary family separation.  Yes, it should apply to

accompanied minors, of course, but again, the -- the

government is -- has -- is under court order not to separate

families involuntarily.  And the Court's order, I believe,

would be clear were it to provide that family separation --

involuntary family separation is not being required by the

order.

THE COURT:  Well, they're enjoined from involuntary

family separation.  So I'm going to assume that they will

follow and comply with the injunction.

Given that this is a three-day holiday coming up,

and the defendants need to communicate my order to their

```
 1    clients, I think it is reasonable to say that they shall

 2    cease placing minors in hotels within one week from the

 3    issuance of this order.

 4          If, Ms. Fabian, something comes up where you have

 5    some real reason why you cannot cease prospectively placing

 6    minors in hotels, then you may raise that issue on an ex

 7    parte basis or you may confer with opposing counsel and the

 8    independent monitor if necessary.

 9          MS. FABIAN:  Thank you, Your Honor.

10          THE COURT:  And I will be issuing the order today.

11    So that essentially means that you will have until

12    September 11th.

13          MS. FABIAN:  Thank you for the clarification,

14    Your Honor.

15          THE COURT:  All right.  Any other issues you wish

16    to raise with regard to the hoteling issue?

17          MR. STEWART:  This is Scott Stewart for the

18    defendants.  We appreciate that additional week on paragraph

19    two, Your Honor.  I did also want to make a broader request

20    that I think is important to make in this context.  That is

21    that the government also respectfully asks to the order as a

22    whole that Your Honor issues that it stay the order for seven

23    days for today.  I think, in part, because of the

24    considerations that Your Honor just mentioned, but also so

25    that the government if need be can seek emergency appellate
```

1    relief in this context.

2         I think some of the Ninth Circuit's recent

3    temporary stay orders in the immigration context are very

4    instructive here, Your Honor.  The Ninth Circuit in the COVID

5    context, COVID release context, which, as Your Honor knows,

6    raises very serious concerns on behalf of -- by petitioners

7    and plaintiffs.  And in other contexts in recent months, the

8    Ninth Circuit has issued administrative stays to allow it to

9    address important rulings on programmatic immigration related

10   issues.  As I said, it's done in the COVID context.

11        It's done in cases, Your Honor, where ultimately,

12   the Ninth Circuit ended up denying a stay on appeal.  So it

13   still gave itself some time even if it ultimately didn't

14   believe a stay showing was made.  Indeed, the Ninth Circuit a

15   few months ago actually briefly administratively stayed one

16   of its own orders, even though the panel ended up reaffirming

17   its view that it believed the government was clearly in

18   violation of the statute in this case.  If it would be

19   helpful, I can get those citations to you, Your Honor.

20        I think the Ninth Circuit has taken a cautious

21   approach in important programmatic immigration cases that

22   deal with matters of breadth.  I think the coverage of this

23   order for both accompanied and unaccompanied minors and just

24   the amount of time this program has been in effect, it's

25   important in all those kind of considerations, Your Honor, I

1    think counsels for similar caution.

2           Therefore, the government would respectfully

3    request, in addition to the seven days Your Honor just

4    described, just a 7-day stay of the order, as a whole, before

5    it would kind of kick off effect.

6           THE COURT:  Do you want to respond?

7           MR. HOLGUIN:  Carlos Holguin for the plaintiffs.

8    Yes, you know, there's a process for seeking a stay of an

9    order.  The government should follow that.  You know, they

10   obviously complained vociferously about the Court's ruling on

11   this issue without plaintiffs' presenting a motion.  I think

12   it is only fair at this point, if the government wants a stay

13   on this, they follow the standard procedures and seek a stay

14   in accordance with the federal rules.

15          I would also add that this matter of hoteling

16   children, as the independent monitor has pointed out, is a

17   matter that goes to the heart of child welfare and child

18   protection.  And that the government, you know, obviously

19   could have advised plaintiffs before -- before beginning this

20   hoteling process.  Really, it's the government's having

21   concealed it and forced the independent monitor and parties

22   to discover the issue to begin with, which has placed them in

23   the position they're in now.

24          So the government has really no one but itself to

25   blame for, you know, for the timing of this order and the

```
 1    need the children have for proper placement without further
 2    delay.
 3              MR. STEWART:  Your Honor, may I make one response?
 4              THE COURT:  Yes.
 5              MR. STEWART:  I would emphasize to my friend on the
 6    other side in response to my friend on the other side, look,
 7    we're asking for a brief stay here.  In these other cases
 8    that I've cited, some of them -- the Ninth Circuit has issued
 9    brief stays in the face of claims about life, death, severe
10    harm, those kind of things where district judges have been
11    very sure that they have it right and the government had it
12    wrong.  Nonetheless, the government has stepped in and
13    granted brief stays to allow for orderly consideration of
14    important issues.  I think Mr. Holguin's recognition of
15    important issues here really just supports the case for a
16    stay.  It would be consistent with Your Honor's expedited
17    albeit but deliberative approach on which this briefing and
18    this consideration has -- has gone through.
19              Thank you, Your Honor.
20              THE COURT:  Well, I will not deprive you of your
21    right to request a stay formally.  You can file an ex parte
22    application for a stay by next Tuesday.  I'm very familiar
23    with the standard for a stay.  I will telegraph to you that I
24    think you'll have a hard time meeting that standard.  I won't
25    begrudge you the opportunity to make the argument.
```

1              The reason why I had expedited briefing for this

2     matter is because I do think it is an important issue.  So I

3     am reluctant to add any more time than is necessary to

4     implement the order.  If you have things that you wish to add

5     in a written ex parte application, you may do so by Tuesday.

6              MR. STEWART:  Can I ask for a clarification on

7     that, Your Honor?

8              THE COURT:  Yes.

9              MR. STEWART:  Is -- is your order to take effect

10    today; meaning, that the government will have to implement

11    aspects of the order tomorrow and throughout the weekend

12    before Tuesday?  My concern is --

13             THE COURT:  I have given a 7-day period to

14    implement paragraph two.  So I think that would allow you

15    some time to communicate the order to your client and to seek

16    whatever stay you wish whether that is before me or the Ninth

17    Circuit.

18             MR. STEWART:  All right.  Your Honor --

19             THE COURT:  Of course, you're certainly welcome to

20    ask the Ninth Circuit for the stay.

21             MR. STEWART:  Understood, Your Honor.

22             THE COURT:  They're always free to disagree with me

23    and have.

24             MR. STEWART:  Fair enough, Your Honor.  I -- I am

25    just flagging for fairness, Your Honor, the government will

```
 1    have to evaluate where it is and what it can feasibly do in a
 2    short period of time, given safety and other concerns, which
 3    is part of the reason for the brief stay request.
 4           So I do appreciate -- we do appreciate the time on
 5    paragraph two, but the implementation here raises real
 6    questions.  So the absence of a 7-day stay could put the
 7    government in a very difficult spot and could call on very
 8    fast court decisionmaking.  If Your Honor is inclined to not
 9    grant the 7-day stay today, then we'll have to evaluate
10    accordingly.
11           THE COURT:  All right.  I'm telling you what I know
12    right now.  I mean, if there are facts that you think cause
13    it to be either dangerous or difficult to be able to
14    implement my order within seven days, then certainly you
15    should put that forward in your ex parte application.  But
16    based on what I know now of this program, I don't see why
17    diverting minors to a licensed facility or to the FRCs, for
18    that matter, causes any more danger than diverting them to a
19    hotel where members of the public can stay.
20           MR. STEWART:  I think, Your Honor, I would suggest
21    that if -- if you're not too concerned about waiting until
22    Tuesday, then a stay of at least until Tuesday would be in
23    order for the government to evaluate the situation.  Again,
24    you know, we just got the tentative a short time ago,
25    Your Honor.  We want to evaluate it carefully.  This is, as
```

1    Your Honor knows, it's a complex system with cascading

2    effects.  We want to be careful to make sure we understand

3    everything that is going on.  If we're rushing any aspect of

4    it over the next few days to operationalize, you know, what

5    could happen.  We want to be careful.  We don't want to have

6    to force needless, you know, needlessly hasty judicial

7    decisionmaking.  We think it could be useful.  If Your Honor

8    were not to grant a 7-day stay, to at least give us a stay

9    partway through Tuesday so that we can present Your Honor

10   with a fuller picture if we don't -- if need be.

11         THE COURT:  All right.  Given that it is a

12   three-day weekend, I will stay the order until the 8th.  The

13   order will be implemented within seven days of the 8th.

14         MR. STEWART:  Thank you, Your Honor.  Again,

15   Your Honor is saying that we would have to start -- we would

16   have a stay through 8th or partway through the 8th?  When on

17   the 8th would we need to start the 7-day period, just so -- I

18   know we'll see the order.  I just want to make sure.

19         THE COURT:  Midnight, September 8th.

20         MR. STEWART:  Thank you, Your Honor.  Understood.

21         THE COURT:  Anything further?

22         MR. STEWART:  None for the government, Your Honor.

23         MR. HOLGUIN:  Nothing from plaintiffs, Your Honor.

24         THE COURT:  Thank you.

25         Let's turn next to the issue of notice, which was

```
 1    also the subject of a motion to enforce.  I don't have a

 2    written tentative ready for you on that issue yet.  I will

 3    tell you my tentative thinking, which is that I am going to

 4    grant the motion.  I'm going to grant the request for a

 5    notice of rights subject to the Court's many edits.  I am

 6    going to refrain at this time from requiring the government

 7    to adopt plaintiffs' protocol or any release form that has

 8    been proposed, because I think that it is incumbent upon the

 9    defendants to come up with a method to comply with my order,

10    as well as with the provisions that are already in place in

11    the Flores agreement.

12            So as I have done in the past, I'm going to give

13    defendants an opportunity to come into compliance by

14    preparing their own internal protocols and procedures.  I

15    will ask them to present that to me and to plaintiffs'

16    counsel by the time of our next conference -- status

17    conference for review.  Essentially, that is my thinking at

18    the moment.  I'm open to having you address my tentative in

19    that regard.

20            MS. FABIAN:  Thank you, Your Honor.  This is Sarah

21    Fabian for the government.

22            I think, you know, our concerns remain and it -- it

23    certainly the concerns that we have with regard to

24    implementing protocols that -- without -- that we understand

25    there are strong objections from individuals who will be
```

1    covered by the protocols.  I think we really have to take a

2    look at the Court's order and evaluate what we're able to

3    come up with.

4            THE COURT:  Let me also address that.  I think

5    there has been a lot of angst about waiver and the need not

6    to allow silence to be tantamount to waiver of rights.  I

7    want to make it very clear.  This is also very clear under

8    the law.  Silence is not tantamount to waiver.

9            So to the extent that I issue a notice of rights,

10   and class members and their parents or guardians want to take

11   advantage of an opportunity to be released for the minor,

12   that is something they should affirmatively indicate their

13   consent to.  Consent to having the minor released to a

14   sponsor or custodian who has been vetted.  That does not

15   mean, however, that they have waived their rights under the

16   Flores agreement.

17           MS. FABIAN:  Your Honor, I think the government

18   understands that position.  The challenge that we find

19   ourselves in is, you know, on -- on this regular basis, we

20   have been reporting our reasons for not releasing certain

21   minors.  And we continue to state that for some of these

22   minors, the reason is that -- that they have not requested

23   release, or there hasn't been release requested separately

24   from their parents.  You know, whether it's -- whether it's

25   splitting hairs to say that in that case they have waived the

```
1    right, and certainly, I can understand the position that it
2    wouldn't be a permanent waiver.  But to the extent that we
3    continue to be -- get filings from amici saying that in
4    effect then we're failing in our obligations to release, it
5    really -- we sort of seem back to square one being between a
6    rock and hard place, because we are not -- we're being found
7    not to meet our requirements to explain why they're not being
8    released.  The reason they're not being released is that they
9    haven't requested to be released separately.
10            So I don't want to --
11           THE COURT:  Well, this is the whole reason why we
12   are having this conversation is because this is a way to move
13   forward.  All right.  I have read the amici briefs.  I
14   appreciate the efforts of amici to bring the issues to the
15   Court's attention.  The problem that the Court is grappling
16   with right now is the fact that unless we can move beyond the
17   issue of consent, the government is enjoined from releasing
18   minors without the parents.
19           I am not able to release the parents because that
20   is not provided for in the Flores agreement.  Moreover, even
21   a hint that I've made -- that they should exercise their
22   discretion in accordance with existing laws and regulations
23   was reversed by the Ninth Circuit.
24           So telling me what my previous orders have said or
25   why it's bad for minors to be held in custody without their
```

1    parents, I don't disagree with any of that, but that doesn't

2    help me.  That doesn't help any of the minors whose parents

3    might want them to be released to close family members or

4    others who might have the wherewithal to care for them

5    instead of having them continue to be in custody.

6         So what I've planned to do is I'm going to issue

7    some proposed edits to the plaintiffs' notice of rights.  I'm

8    going to have all parties and amici look at those edits and

9    give me feedback as to that.  And I'm going to order

10   defendants to prepare their own internal procedures and

11   protocols to comply with their obligations under the

12   agreement.

13        I know you're at a disadvantage because you have

14   not seen my written tentative yet.  It will be very detailed.

15   I'm giving you sort of the essence of what I plan to do.  The

16   reality is that a lot of the briefing does not help me to

17   untie the Gordian knot that I told you exists in this matter.

18        I think that giving notice will be a very important

19   first step, and then I'm going to require defendants to

20   implement.  If implementation is flawed or they're not

21   providing those who seek consent the ability to give consent,

22   then we will take up something about that, I'm sure, in the

23   future either through a complaint to the juvenile coordinator

24   or the independent monitor or through another motion to

25   enforce.

1          Right now I don't want to have theoretical

2     arguments about what is or isn't a good procedure.  I think

3     it will be better to be able to address a real person who

4     complains that they were not able to give consent, if that

5     happens.

6          MR. SCHEY:  Your Honor, this is Peter Schey for the

7     plaintiffs.  In general, I think we understand and agree with

8     your thoughts on this or your comments on this.  The one

9     thing, I guess, I would propose is that in terms of that

10    protocol to the extent that the Court is willing to let the

11    defendants take the first crack at that, I think it would be

12    helpful if rather than coming up with a protocol and

13    immediately implementing it, if defendants could be ordered

14    to file what they think a protocol should look like with the

15    Court.  Have a brief period of time for the parties and amici

16    to comment on.

17         THE COURT:  Yes, of course.  That is what I plan to

18    do.

19         MR. SCHEY:  Thank you, so much.

20         THE COURT:  I should clarify.  I think I may have

21    suggested in one of my many orders in the past -- I don't

22    remember which one.  It might have had to do with the amici's

23    motion to intervene where I indicated that if the parties

24    reached an agreement that that would be subject to notice to

25    the class and opportunity to object, et cetera.  That was

```
1    when I thought that you might actually reach an agreement

2    about something and come up with some procedures or protocols

3    that were more robust than what already exists in the Flores

4    agreement.  But since you did not come to an agreement, I'm

5    going to enforce the agreement and issue a remedy that is

6    within the four walls of that agreement so that there is no

7    need for class notice because it is simply consistent with

8    enforcement of the agreement.

9         MR. SCHEY:  That all sounds fine to the plaintiffs,

10   Your Honor.

11        THE COURT:  Any further comments from either side

12   or from amici?

13        MS. FABIAN:  Not from the government.

14        MS. CAMBRIA:  Your Honor, this is Bridget Cambria,

15   counsel for amici.  I don't have any comments at this time.

16   Thank you, Your Honor, for allowing us to participate.

17        THE COURT:  Thank you.

18        MS. BELL:  This is Denise Bell with Amnesty

19   Internatinal, one of amici.  We wanted to also thank you for

20   allowing us to participate in this process.

21        THE COURT:  All right.  Thank you for all of your

22   suggestions.  I am going to ask that the parties meet and

23   confer about some of your suggestions so that if they wish to

24   voluntarily implement some of them, that they may do so and

25   will inform me of that.
```

1          To the extent that some of them are not necessarily

2    required under the agreement, I am not going to require it at

3    this time.

4          MR. SCHEY:  Your Honor, one other issue that I had

5    suggested, I think, it was in the filing that plaintiffs made

6    just with comments and response to amici briefs was the idea

7    that perhaps the Court should order the parties to meet and

8    confer to begin to address the question that -- the two other

9    questions that are kind of raised in the various filings, but

10   are not really part of the pending motion.  Those are the

11   issues of whether the family residential centers are licensed

12   and the status of that licensing, and whether they are secure

13   or non-secure.

14         I had made two suggestions to the Court.  One would

15   be -- the Court could adopt one or the other or both, but one

16   was that the Court require that the ICE that in its next --

17   in the next juvenile coordinator's report, that the ICE

18   juvenile coordinator report on those two items to the Court.

19         THE COURT:  Yes.  I'm going to require that.

20         MR. SCHEY:  Okay.  Thank you, Your Honor.

21         The second suggestion I made was that the Court

22   could also order the parties to begin to meet and confer

23   about that subject.

24         THE COURT:  I'm not sure what you would be meeting

25   and conferring about since I've already issued an order of

1    enforcement on that issue.

2            MR. SCHEY:  That's true, Your Honor, but it -- it's

3    clear to us that that order is -- is -- has been complied

4    with or is being complied with, and so -- I mean, I guess

5    plaintiffs could always trigger a meet-and-confer anyway

6    without a Court order.

7            THE COURT:  Yes, that's true.

8            MR. SCHEY:  So either way --

9            THE COURT:  You're always free to meet and confer

10   as much as you want and whenever you want.

11           MR. SCHEY:  That's true.  Okay.  Thank you,

12   Your Honor.

13           THE COURT:  Let me also say something about my

14   thinking with regard to the notice of rights.  What I do not

15   want to have occur is a repeat of what happened several weeks

16   ago -- I don't know maybe it was several months ago now --

17   when ICE employees started asking detainees about whether

18   they wanted to be separated from their children.  That is the

19   reason why I don't want ICE employees to be involved in

20   soliciting consent.  I think that class members and their

21   guardians or parents need to be informed of what their rights

22   are.  They need to be provided with the list of free legal

23   service providers that is already required under the

24   agreement.  And if class members and their parents or

25   guardians wish to pursue an option, they may.  They aren't

1    required to.  They will not be pressured into doing it.  It

2    is something that they should know about.

3            It is much like any other legal framework that we

4    have throughout our legal system, which is people are

5    informed of their rights.  I mean, people know that they can

6    file a complaint with HR if they wish to when there's a

7    complaint of discrimination or harassment, but they don't

8    have to.  They don't have to do anything, but if they wish

9    to, then they can.  If they wish to hire counsel to do

10   something on their behalf, they can.

11           In this context, because of the sensitivities and

12   importance of the issues, I think that they should have

13   counsel.  I think it's already contemplated within the

14   agreement that they should have counsel because they are

15   provided with a list of free legal service providers from

16   whom they can obtain advice.

17           Every situation here is going to be unique and

18   different.  I don't know that it's going to be a

19   one-size-fits-all situation where everybody has to march

20   through some sort of protocol or timeline.  There should be

21   no requirement that any parent do anything to separate

22   themselves from their child.  If they wish to do so because

23   of whatever considerations they have, such as that the child

24   is 16 or 17 years old, and there's a willing relative who can

25   take care of them, then they may be able to seek consent for

1   the release of that minor.

2        So that is what animates my approach to this.  I --

3   I think that it is incumbent on the defendants to come up

4   with a protocol or procedure whereby they can receive these

5   requests for consent in an orderly fashion and deal with them

6   in a fair and prompt way.  I do not want to micromanage their

7   affairs by telling them how they should do it or what their

8   procedure is without them having come up with it on their

9   own.

10       MR. SCHEY:  Your Honor, Peter Schey for the

11  plaintiffs.

12       Just one other point with regards to that question

13  about counsel.  In addition to the sentence requiring that

14  they may be provided with the list of legal services, I would

15  also just point out to the Court maybe -- that Exhibit 1 of

16  the settlement it states that the defendants shall provide or

17  arrange for the following services.  If you turn to the

18  subparagraph 14, that includes the right to be represented by

19  counsel at no expense to the government.

20       So that is one other place where the right to

21  counsel clearly appears in the terms of the settlement.

22       THE COURT:  All right.  Thank you.  I would also

23  note that all roads sort of lead to the same problem, which

24  is that, you know, you're going to have some further

25  meet-and-confers or reports from the juvenile coordinator

1    about the issue of licensing of the facilities.  There's

2    nothing that prevents the defendants from holding adults in

3    those facilities.  So because they're enjoined from releasing

4    or separating minors from their parents, if they are holding

5    adults in those facilities and refuse to move them elsewhere,

6    they cannot release the children from those facilities.  So I

7    leave you with that thought.

8            Does anyone have anything further with regard to

9    the status conference?

10           MR. SCHEY:  Mr. Schey for the plaintiffs, nothing

11   further, Your Honor.  Thank you so much.

12           MS. FABIAN:  Nothing from the government,

13   Your Honor.

14           THE COURT:  All right.  Thank you.  I will be

15   issuing an order.  It will have some timelines for the

16   interim report, as well as the parties' joint response to

17   that report and amici response to the report.  And the next

18   status conference will be October 16th at 11:00 o'clock a.m.

19   Hopefully, we will not have any technical difficulties at

20   that time.  If there's nothing further, we are adjourned.

21           (Proceedings concluded at 1:55 p.m.)

22

23

24

25

```
 1                            CERTIFICATE

 2   I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

 3   TRANSCRIPT OF THE STENOGRAPHICALLY RECORDED PROCEEDINGS IN

 4   THE ABOVE MATTER.

 5   FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE

 6   REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE

 7   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

 8

 9   /s/ Miriam V. Baird            09/11/2020

10   MIRIAM V. BAIRD                        DATE
     OFFICIAL REPORTER
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**/**

**/s** [1] - 30:9

**0**

**09/11/2020** [1] - 30:9

**1**

**1** [1] - 28:15
**1-053** [1] - 1:24
**102** [1] - 5:3
**105** [1] - 5:3
**118** [1] - 5:11
**11893** [1] - 1:23
**11:00** [2] - 3:17, 29:18
**11th** [1] - 12:12
**14** [1] - 28:18
**16** [1] - 27:24
**16th** [1] - 29:18
**17** [2] - 7:3, 27:24
**17th** [1] - 5:12
**1:05** [1] - 3:1
**1:55** [1] - 29:21

**2**

**20** [2] - 5:4, 5:16
**20-day** [1] - 5:22
**20044** [1] - 2:13
**2020** [2] - 1:18, 3:1
**256** [1] - 2:5
**2nd** [2] - 6:10, 6:11

**4**

**4** [2] - 1:18, 3:1
**411** [1] - 1:24
**42** [2] - 6:19, 9:12

**7**

**7-day** [6] - 14:4, 16:13, 17:6, 17:9, 18:8, 18:17

**8**

**868** [1] - 2:12
**8th** [6] - 18:12, 18:13, 18:16, 18:17, 18:19

**9**

**90057** [1] - 2:6
**92701** [1] - 1:24

**A**

**a.m** [1] - 29:18

**ability** [3] - 8:4, 8:6, 22:21
**able** [10] - 3:17, 9:20, 10:11, 11:8, 17:13, 20:2, 21:19, 23:3, 23:4, 27:25
**ABOVE** [1] - 30:4
**absence** [1] - 17:6
**accompanied** [6] - 7:5, 7:7, 7:11, 7:20, 11:15, 13:23
**accordance** [2] - 14:14, 21:22
**according** [1] - 4:6
**accordingly** [1] - 17:10
**add** [3] - 14:15, 16:3, 16:4
**addition** [2] - 14:3, 28:13
**additional** [1] - 12:18
**address** [7] - 6:20, 9:4, 13:9, 19:18, 20:4, 23:3, 25:8
**addressed** [1] - 8:19
**addressing** [1] - 3:19
**adjourned** [1] - 29:20
**administrative** [1] - 13:8
**administratively** [1] - 13:15
**adopt** [2] - 19:7, 25:15
**adults** [2] - 29:2, 29:5
**advantage** [1] - 20:11
**advice** [1] - 27:16
**advised** [1] - 14:19
**affairs** [1] - 28:7
**affirmatively** [1] - 20:12
**afternoon** [1] - 3:15
**agency's** [1] - 6:5
**ago** [4] - 13:15, 17:24, 26:16
**agree** [1] - 23:7
**agreement** [14] - 19:11, 20:16, 21:20, 22:12, 23:24, 24:1, 24:4, 24:5, 24:6, 24:8, 25:2, 26:24, 27:14
**AL** [2] - 1:10, 2:10
**al** [2] - 3:5
**albeit** [1] - 15:17
**allow** [6] - 8:16, 8:22, 13:8, 15:13, 16:14, 20:6
**allowing** [3] - 11:1, 24:16, 24:20
**ALSO** [1] - 2:16
**Alvarez** [1] - 3:8
**amend** [1] - 8:21
**amici** [11] - 3:7, 21:3, 21:13, 21:14, 22:8, 23:15, 24:12, 24:15, 24:19, 25:6, 29:17
**amici's** [1] - 23:22
**Amnesty** [1] - 24:18
**amount** [1] - 13:24
**ample** [1] - 6:18
**ANA** [1] - 1:24
**AND** [2] - 2:4, 30:2
**AND/OR** [1] - 30:6
**Andrea** [1] - 3:9
**ANDREA** [1] - 2:16

**ANGELES** [2] - 2:6, 3:1
**angst** [1] - 20:5
**animates** [1] - 28:2
**anticipated** [1] - 3:18
**ANY** [1] - 30:5
**anyway** [1] - 26:5
**appeal** [1] - 13:12
**appellate** [1] - 12:25
**applicability** [1] - 7:4
**application** [3] - 15:22, 16:5, 17:15
**applies** [1] - 7:19
**apply** [3] - 6:13, 7:6, 11:14
**appreciate** [5] - 4:3, 12:18, 17:4, 21:14
**approach** [3] - 13:21, 15:17, 28:2
**ARE** [1] - 30:6
**argument** [1] - 15:25
**arguments** [1] - 23:2
**arrange** [1] - 28:17
**aspect** [1] - 18:3
**aspects** [1] - 16:11
**assume** [1] - 11:22
**assuming** [1] - 6:17
**attention** [1] - 21:15
**August** [1] - 5:12
**Aurora** [1] - 3:12
**AURORA** [1] - 2:20
**awaiting** [1] - 6:2

**B**

**bad** [1] - 21:25
**Baird** [1] - 30:9
**BAIRD** [2] - 1:23, 30:10
**Barr** [3] - 3:5, 4:20, 6:1
**BARR** [1] - 1:10, 2:10
**based** [1] - 17:16
**basis** [2] - 12:7, 20:19
**bay** [1] - 4:16
**begin** [4] - 4:11, 14:22, 25:8, 25:22
**beginning** [1] - 14:19
**begrudge** [1] - 15:25
**BEHALF** [2] - 2:3, 2:9
**behalf** [4] - 3:21, 10:20, 13:6, 27:10
**BELL** [1] - 24:18
**Bell** [2] - 3:8, 24:18
**BEN** [1] - 2:12
**best** [2] - 4:17, 8:10
**better** [1] - 23:3
**between** [2] - 5:7, 21:5
**beyond** [2] - 5:21, 21:16
**bit** [1] - 8:3
**blame** [1] - 14:25
**border** [5] - 8:14, 8:15, 9:16, 9:19

**BOULEVARD** [1] - 2:5
**BOX** [1] - 2:12
**breadth** [1] - 13:22
**Bridget** [2] - 3:8, 24:14
**BRIDGET** [1] - 2:18
**brief** [5] - 15:7, 15:9, 15:13, 17:3, 23:15
**briefing** [3] - 15:17, 16:1, 22:16
**briefly** [1] - 13:15
**briefs** [2] - 21:13, 25:6
**bring** [2] - 11:6, 21:14
**broader** [1] - 12:19

**C**

**CA** [1] - 2:6
**CALIFORNIA** [3] - 1:2, 1:24, 3:1
**CAMBRIA** [2] - 2:18, 24:14
**Cambria** [2] - 3:8, 24:14
**cannot** [3] - 9:8, 12:5, 29:6
**care** [2] - 22:4, 27:25
**careful** [2] - 18:2, 18:5
**carefully** [2] - 10:11, 17:25
**CARLOS** [1] - 2:18
**Carlos** [4] - 3:6, 6:22, 10:20, 14:7
**cascading** [1] - 18:1
**case** [3] - 13:18, 15:15, 20:25
**cases** [3] - 13:11, 13:21, 15:7
**category** [1] - 5:16
**causes** [1] - 17:18
**caution** [1] - 14:1
**cautious** [1] - 13:20
**CCRA** [1] - 1:23
**CDC** [5] - 8:5, 8:18, 9:21, 10:1, 10:12
**cease** [3] - 9:8, 12:2, 12:5
**census** [1] - 4:6
**CENTER** [1] - 2:4
**centers** [1] - 25:11
**CENTRAL** [1] - 1:2
**certain** [1] - 20:20
**certainly** [4] - 16:19, 17:14, 19:23, 21:1
**CERTIFICATE** [1] - 30:1
**CERTIFY** [1] - 30:2
**cetera** [1] - 23:25
**challenge** [1] - 20:18
**chance** [1] - 8:2
**CHARGED** [1] - 30:5
**child** [4] - 14:17, 27:22, 27:23
**children** [7] - 10:13, 11:2, 14:16, 15:1, 26:18, 29:6
**Circuit** [9] - 13:4, 13:8, 13:12, 13:14, 13:20, 15:8, 16:17, 16:20, 21:23

**CIRCUIT** [1] - 30:5
**Circuit's** [1] - 13:2
**circumstance** [1] - 10:23
**citations** [1] - 13:19
**cited** [1] - 15:8
**claims** [1] - 15:9
**clarification** [6] - 7:1, 7:5, 7:9, 7:16, 12:13, 16:6
**clarify** [3] - 7:8, 7:18, 23:20
**class** [9] - 5:3, 5:8, 5:21, 10:25, 20:10, 23:25, 24:7, 26:20, 26:24
**clear** [4] - 11:18, 20:7, 26:3
**clearly** [2] - 13:17, 28:21
**CLERK** [1] - 3:4
**client** [1] - 16:15
**clients** [2] - 8:2, 12:1
**close** [1] - 22:3
**closer** [1] - 8:15
**cohorting** [2] - 9:25, 10:8
**coming** [4] - 1:12, 10:5, 11:24, 23:12
**comment** [1] - 23:16
**comments** [4] - 23:8, 24:11, 24:15, 25:6
**communicate** [2] - 11:25, 16:15
**complained** [1] - 14:10
**complains** [1] - 23:4
**complaint** [3] - 22:23, 27:6, 27:7
**complex** [1] - 18:1
**compliance** [3] - 8:2, 8:23, 19:13
**complied** [2] - 26:3, 26:4
**comply** [4] - 8:4, 11:23, 19:9, 22:11
**concealed** [1] - 14:21
**concern** [1] - 16:12
**concerned** [3] - 9:17, 10:22, 17:21
**concerns** [7] - 8:3, 8:7, 8:18, 13:6, 17:2, 19:22, 19:23
**concluded** [1] - 29:21
**confer** [6] - 12:7, 24:23, 25:8, 25:22, 26:5, 26:9
**conference** [7] - 5:2, 5:7, 5:8, 19:16, 19:17, 29:9, 29:18
**CONFERENCE** [2] - 1:17, 30:7
**conferring** [1] - 25:25
**confers** [1] - 28:25
**CONFORMANCE** [1] - 30:6
**Congratulations** [1] - 3:21
**conjunction** [1] - 11:9
**consent** [11] - 4:21, 6:3, 20:13, 21:17, 22:21, 23:4, 26:20, 27:25, 28:5

**consider** [1] - 10:11
**consideration** [2] - 15:13, 15:18
**considerations** [3] - 12:24, 13:25, 27:23
**consistent** [6] - 7:11, 10:12, 11:9, 11:10, 15:16, 24:7
**constitute** [1] - 7:13
**CONSTITUTIONAL** [1] - 2:4
**contemplated** [1] - 27:13
**context** [7] - 12:20, 13:1, 13:3, 13:5, 13:10, 27:11
**contexts** [1] - 13:7
**continue** [3] - 20:21, 21:3, 22:5
**contracted** [2] - 4:7, 4:12
**conversation** [1] - 21:12
**coordinator** [3] - 22:23, 25:18, 28:25
**coordinator's** [1] - 25:17
**coordinators** [1] - 3:12
**COORDINATORS** [1] - 2:19
**coordinators'** [1] - 3:19
**CORRECT** [1] - 30:2
**correct** [5] - 4:9, 4:13, 5:10, 5:17, 6:4
**counsel** [10] - 6:17, 12:7, 19:16, 24:15, 27:9, 27:13, 27:14, 28:13, 28:19, 28:21
**counsels** [1] - 14:1
**couple** [2] - 4:5, 10:21
**course** [5] - 5:24, 10:23, 11:15, 16:19, 23:17
**court** [2] - 11:16, 17:8
**Court** [17] - 6:2, 7:1, 7:10, 7:24, 8:4, 8:21, 21:15, 23:10, 23:15, 25:7, 25:14, 25:15, 25:16, 25:18, 25:21, 26:6, 28:15
**COURT** [53] - 1:1, 1:23, 3:15, 4:4, 4:10, 4:15, 4:18, 5:1, 5:7, 5:11, 5:15, 5:23, 6:1, 6:6, 6:9, 6:13, 6:16, 7:18, 7:22, 8:24, 9:1, 10:14, 10:17, 10:19, 11:21, 12:10, 12:15, 14:6, 15:4, 15:20, 16:8, 16:13, 16:19, 16:22, 17:11, 18:11, 18:19, 18:21, 18:24, 20:4, 21:11, 23:17, 23:20, 24:11, 24:17, 24:21, 25:19, 25:24, 26:7, 26:9, 26:13, 28:22, 29:14
**Court's** [8] - 6:18, 7:16, 11:13, 11:17, 14:10, 19:5, 20:2, 21:15
**coverage** [1] - 13:22
**covered** [1] - 20:1
**COVID** [4] - 9:20, 13:4, 13:5, 13:10
**COVID-19** [1] - 4:7

**crack** [1] - 23:11
**CSR** [1] - 1:23
**current** [1] - 5:11
**custodian** [1] - 20:14
**custody** [2] - 21:25, 22:5
**CV85-4544-DMG** [2] - 1:8, 3:4

# D

**DAM** [2] - 4:20, 6:1
**danger** [1] - 17:18
**dangerous** [1] - 17:13
**DATE** [1] - 30:10
**days** [6] - 5:4, 12:23, 14:3, 17:14, 18:4, 18:13
**days'** [1] - 5:16
**DC** [1] - 2:13
**deadline** [1] - 6:10
**deal** [2] - 13:22, 28:5
**Deane** [1] - 3:12
**DEANE** [1] - 2:19
**death** [1] - 15:9
**decisionmaking** [2] - 17:8, 18:7
**DEFENDANT** [1] - 2:9
**defendants** [12] - 6:25, 11:25, 12:18, 19:9, 19:13, 22:10, 22:19, 23:11, 23:13, 28:3, 28:16, 29:2
**Defendants** [1] - 1:12
**delay** [1] - 15:2
**deliberative** [1] - 15:17
**Denise** [2] - 3:8, 24:18
**denying** [1] - 13:12
**DEPARTMENT** [1] - 2:11
**DEPOSIT** [1] - 30:6
**deprive** [1] - 15:20
**Desai** [1] - 3:7
**DESAI** [1] - 2:17
**described** [1] - 14:4
**detailed** [1] - 22:14
**details** [1] - 9:14
**detained** [2] - 4:22, 5:4
**detainees** [3] - 4:20, 6:1, 26:17
**detention** [2] - 4:19, 5:9
**determine** [2] - 8:10, 11:8
**different** [2] - 9:24, 27:18
**difficult** [2] - 17:7, 17:13
**difficulties** [2] - 3:16, 29:19
**Dilley** [1] - 4:6
**direction** [1] - 6:2
**disadvantage** [1] - 22:13
**disagree** [2] - 16:22, 22:1
**discover** [1] - 14:22
**discovered** [1] - 4:8
**discretion** [1] - 21:22
**discrimination** [1] - 27:7

**discuss** [1] - 8:2
**discussing** [1] - 9:14
**discussion** [2] - 7:13, 9:12
**DISTRICT** [3] - 1:1, 1:2, 1:23
**district** [1] - 15:10
**diverting** [2] - 17:17, 17:18
**DOLLY** [1] - 1:3
**done** [5] - 8:17, 9:13, 13:10, 13:11, 19:12
**DOUGHERTY** [13] - 2:19, 4:9, 4:13, 4:17, 4:24, 5:5, 5:10, 5:14, 5:17, 5:24, 6:4, 6:11, 6:15
**Dougherty** [2] - 3:13, 4:5
**DR** [1] - 2:17
**Dr** [2] - 3:10, 11:10
**dragging** [1] - 10:22

# E

**edits** [3] - 19:5, 22:7, 22:8
**effect** [4] - 13:24, 14:5, 16:9, 21:4
**effects** [1] - 18:2
**efforts** [1] - 21:14
**either** [4] - 17:13, 22:23, 24:11, 26:8
**elsewhere** [1] - 29:5
**emergency** [1] - 12:25
**emphasize** [1] - 15:5
**employees** [2] - 26:17, 26:19
**ended** [2] - 13:12, 13:16
**enforce** [3] - 19:1, 22:25, 24:5
**enforcement** [2] - 24:8, 26:1
**enjoined** [3] - 11:21, 21:17, 29:3
**ensure** [3] - 8:17, 10:12, 10:25
**essence** [1] - 22:15
**essentially** [2] - 12:11, 19:17
**et** [3] - 3:5, 23:25
**ET** [2] - 1:10, 2:10
**evaluate** [5] - 17:1, 17:9, 17:23, 17:25, 20:2
**ex** [4] - 12:6, 15:21, 16:5, 17:15
**example** [3] - 8:13, 9:18, 9:22
**excused** [1] - 3:25
**exercise** [1] - 21:21
**Exhibit** [1] - 28:15
**existing** [1] - 21:22
**exists** [2] - 22:17, 24:3
**expedited** [2] - 15:16, 16:1
**expeditiously** [1] - 9:7
**expense** [1] - 28:19
**explain** [1] - 21:7
**extent** [5] - 9:16, 20:9, 21:2,

23:10, 25:1
**extravagant** [1] - 11:3

## F

**Fabian** [4] - 3:10, 6:24, 12:4, 19:21
**FABIAN** [13] - 2:9, 6:24, 7:21, 7:23, 8:25, 9:10, 10:15, 12:9, 12:13, 19:20, 20:17, 24:13, 29:12
**face** [1] - 15:9
**facilities** [14] - 7:14, 8:6, 8:15, 9:13, 9:16, 9:17, 9:18, 9:23, 9:24, 10:4, 29:1, 29:3, 29:5, 29:6
**facility** [2] - 4:11, 17:17
**fact** [2] - 7:6, 21:16
**facts** [1] - 17:12
**failing** [1] - 21:4
**fair** [3] - 14:12, 16:24, 28:6
**fairness** [1] - 16:25
**familiar** [1] - 15:22
**families** [1] - 11:17
**family** [6] - 11:14, 11:18, 11:19, 11:22, 22:3, 25:11
**fashion** [1] - 28:5
**fast** [1] - 17:8
**feasibly** [1] - 17:1
**federal** [1] - 14:14
**FEE** [1] - 30:5
**feedback** [1] - 22:9
**FEES** [1] - 30:5
**few** [3] - 6:25, 13:15, 18:4
**file** [3] - 15:21, 23:14, 27:6
**filing** [1] - 25:5
**filings** [2] - 21:3, 25:9
**final** [2] - 4:23, 7:19
**fine** [1] - 24:9
**first** [5] - 3:19, 7:1, 11:11, 22:19, 23:11
**fits** [1] - 27:19
**flagging** [1] - 16:25
**flawed** [1] - 22:20
**Flores** [5] - 3:4, 19:11, 20:16, 21:20, 24:3
**FLORES** [2] - 1:4, 2:3
**fluctuates** [1] - 5:19
**fluctuating** [1] - 5:18
**folks** [1] - 10:5
**follow** [5] - 8:5, 9:21, 11:23, 14:9, 14:13
**following** [1] - 28:17
**foot** [1] - 10:22
**FOR** [2] - 2:4, 30:5
**force** [1] - 18:6
**forced** [1] - 14:21
**FOREGOING** [1] - 30:2
**form** [1] - 19:7

**formally** [1] - 15:21
**forth** [1] - 10:22
**forward** [7] - 5:20, 9:4, 9:15, 9:24, 10:7, 17:15, 21:13
**four** [1] - 24:6
**FOURTH** [1] - 1:24
**framework** [1] - 27:3
**FRANKLIN** [1] - 2:12
**FRCs** [3] - 7:11, 7:21, 17:17
**free** [7] - 3:25, 8:14, 9:20, 16:22, 26:9, 26:22, 27:15
**FRIDAY** [2] - 1:18, 3:1
**friend** [2] - 15:5, 15:6
**fuller** [1] - 18:10
**future** [1] - 22:23

## G

**GEE** [1] - 1:3
**general** [4] - 4:14, 7:4, 7:5, 23:7
**given** [6] - 8:10, 10:4, 11:24, 16:13, 17:2, 18:11
**glad** [1] - 4:15
**goal** [1] - 9:11
**Gordian** [2] - 22:17
**government** [28] - 3:10, 8:16, 8:22, 11:1, 11:6, 11:16, 12:21, 12:25, 13:17, 14:2, 14:9, 14:12, 14:18, 14:24, 15:11, 15:12, 16:10, 16:25, 17:7, 17:23, 18:22, 19:6, 19:21, 20:17, 21:17, 24:13, 28:19, 29:12
**government's** [2] - 11:8, 14:20
**grant** [4] - 17:9, 18:8, 19:4
**granted** [1] - 15:13
**grappling** [1] - 21:15
**guardians** [3] - 20:10, 26:21, 26:25
**guess** [3] - 7:5, 23:9, 26:4
**guidance** [1] - 8:5
**guidances** [4] - 8:18, 9:21, 10:2, 10:12

## H

**hairs** [1] - 20:25
**harassment** [1] - 27:7
**hard** [2] - 15:24, 21:6
**harm** [1] - 15:10
**hasty** [1] - 18:6
**health** [1] - 10:25
**hearing** [1] - 3:25
**heart** [1] - 14:17
**held** [4] - 4:11, 4:19, 9:19, 21:25
**help** [3] - 22:2, 22:16
**helpful** [2] - 13:19, 23:12

**HEREBY** [1] - 30:2
**hint** [1] - 21:21
**hire** [1] - 27:9
**holding** [2] - 29:2, 29:4
**Holguin** [4] - 3:7, 6:22, 10:20, 14:7
**HOLGUIN** [6] - 2:18, 6:22, 10:18, 10:20, 14:7, 18:23
**Holguin's** [1] - 15:14
**holiday** [1] - 11:24
**Honor** [51] - 3:14, 4:2, 4:9, 4:25, 6:8, 6:23, 6:24, 9:10, 10:18, 12:9, 12:14, 12:19, 12:22, 12:24, 13:4, 13:5, 13:11, 13:19, 13:25, 14:3, 15:3, 15:19, 16:7, 16:18, 16:21, 16:24, 16:25, 17:8, 17:20, 17:25, 18:1, 18:7, 18:9, 18:14, 18:15, 18:20, 18:22, 18:23, 19:20, 20:17, 23:6, 24:10, 24:14, 24:16, 25:4, 25:20, 26:2, 26:12, 28:10, 29:11, 29:13
**Honor's** [1] - 15:16
**HONORABLE** [1] - 1:3
**Hopefully** [1] - 29:19
**hotel** [1] - 17:19
**hoteling** [4] - 6:19, 12:16, 14:15, 14:20
**hotels** [7] - 9:4, 9:5, 9:6, 9:9, 11:3, 12:2, 12:6
**HR** [1] - 27:6
**HUMAN** [1] - 2:4

## I

**ICE** [8] - 4:4, 4:20, 6:13, 8:9, 25:16, 25:17, 26:17, 26:19
**idea** [1] - 25:6
**immediate** [1] - 8:1
**immediately** [2] - 8:20, 23:13
**IMMIGRATION** [1] - 2:11
**immigration** [3] - 13:3, 13:9, 13:21
**implement** [8] - 8:16, 9:12, 16:4, 16:10, 16:14, 17:14, 22:20, 24:24
**implementation** [2] - 17:5, 22:20
**implemented** [1] - 18:13
**implementing** [2] - 19:24, 23:13
**importance** [1] - 27:12
**important** [9] - 3:23, 12:20, 13:9, 13:21, 13:25, 15:14, 15:15, 16:2, 22:18
**IN** [4] - 2:3, 2:9, 30:3, 30:6
**inclined** [1] - 17:8
**includes** [1] - 28:18
**increase** [1] - 8:11

**incumbent** [2] - 19:8, 28:3
**indeed** [1] - 13:14
**independent** [6] - 3:9, 11:7, 12:8, 14:16, 14:21, 22:24
**indicate** [2] - 7:19, 20:12
**indicated** [1] - 23:23
**indication** [1] - 4:19
**individuals** [2] - 4:18, 19:25
**inform** [1] - 24:25
**informed** [2] - 26:21, 27:5
**inherent** [2] - 8:3, 8:7
**injunction** [1] - 11:23
**instead** [1] - 22:5
**instructive** [1] - 13:4
**intake** [1] - 4:8
**interim** [3] - 3:20, 6:10, 29:16
**internal** [2] - 19:14, 22:10
**Internatinal** [1] - 24:19
**intervene** [1] - 23:23
**involuntarily** [1] - 11:17
**involuntary** [3] - 11:14, 11:19, 11:21
**involved** [1] - 26:19
**IS** [1] - 30:2
**issuance** [1] - 12:3
**issue** [17] - 6:3, 6:19, 7:14, 12:6, 12:16, 14:11, 14:22, 16:2, 18:25, 19:2, 20:9, 21:17, 22:6, 24:5, 25:4, 26:1, 29:1
**issued** [3] - 13:8, 15:8, 25:25
**issues** [8] - 12:15, 12:22, 13:10, 15:14, 15:15, 21:14, 25:11, 27:12
**issuing** [2] - 12:10, 29:15
**items** [1] - 25:18
**itself** [2] - 13:13, 14:24

## J

**JENNY** [2] - 1:4, 2:3
**Jenny** [1] - 3:4
**joint** [1] - 29:16
**Jones** [1] - 3:8
**JUDGE** [1] - 1:3
**judges** [1] - 15:10
**judicial** [1] - 18:6
**JUDICIAL** [1] - 30:7
**JUSTICE** [1] - 2:11
**juvenile** [6] - 3:11, 3:19, 22:23, 25:17, 25:18, 28:25
**JUVENILE** [1] - 2:19

## K

**keep** [2] - 3:21, 4:16
**keeping** [1] - 8:18
**kick** [1] - 14:5
**kind** [4] - 13:25, 14:5, 15:10, 25:9

knot [1] - 22:17
knows [2] - 13:5, 18:1

## L

language [1] - 7:18
last [2] - 5:1, 5:7
law [1] - 20:8
LAW [1] - 2:4
laws [1] - 21:22
lead [1] - 28:23
least [3] - 10:6, 17:22, 18:8
leave [1] - 29:7
Leecia [1] - 3:7
legal [5] - 26:22, 27:3, 27:4, 27:15, 28:14
LESS [1] - 30:5
licensed [5] - 7:13, 9:13, 10:4, 17:17, 25:11
licensing [2] - 25:12, 29:1
life [1] - 15:9
likely [2] - 7:2, 9:15
limit [1] - 5:22
line [1] - 6:7
list [3] - 26:22, 27:15, 28:14
literally [1] - 5:19
LITIGATION [1] - 2:12
look [4] - 15:6, 20:2, 22:8, 23:14
LOS [2] - 2:6, 3:1
low [1] - 8:5

## M

ma'am [3] - 5:5, 5:10, 6:15
Maese [3] - 3:12, 3:23, 6:6
MAESE [3] - 2:20, 4:2, 6:8
Maese's [1] - 3:20
managing [1] - 4:16
manner [1] - 9:25
march [1] - 27:19
MASTER [1] - 2:16
MATTER [1] - 30:4
matter [5] - 14:15, 14:17, 16:2, 17:18, 22:17
matters [1] - 13:22
mean [4] - 17:12, 20:15, 26:4, 27:5
meaning [1] - 16:10
means [2] - 9:3, 12:11
medical [1] - 11:10
meet [7] - 21:7, 24:22, 25:7, 25:22, 26:5, 26:9, 28:25
meet-and-confer [1] - 26:5
meet-and-confers [1] - 28:25
meeting [2] - 15:24, 25:24
members [9] - 5:4, 5:8, 5:21, 10:25, 17:19, 20:10, 22:3, 26:20, 26:24
mentioned [1] - 12:24

method [1] - 19:9
micromanage [1] - 28:6
midnight [1] - 18:19
might [5] - 10:7, 22:3, 22:4, 23:22, 24:1
minor [3] - 20:11, 20:13, 28:1
minors [29] - 4:6, 4:7, 4:10, 5:2, 7:5, 7:7, 7:11, 7:20, 8:7, 8:13, 8:18, 9:3, 9:9, 9:15, 9:17, 9:18, 9:19, 9:23, 11:15, 12:2, 12:6, 13:23, 17:17, 20:21, 20:22, 21:18, 21:25, 22:2, 29:4
Miranda [4] - 3:12, 3:20, 3:23, 6:6
MIRANDA [3] - 2:20, 4:2, 6:8
Miranda-Maese [3] - 3:12, 3:23, 6:6
MIRANDA-MAESE [3] - 2:20, 4:2, 6:8
Miranda-Maese's [1] - 3:20
Miriam [1] - 30:9
MIRIAM [2] - 1:23, 30:10
moment [1] - 19:18
monitor [6] - 3:9, 11:7, 12:8, 14:16, 14:21, 22:24
months [3] - 13:7, 13:15, 26:16
moreover [1] - 21:20
morning [1] - 3:16
most [1] - 7:2
motion [6] - 14:11, 19:1, 19:4, 22:24, 23:23, 25:10
motions [1] - 6:17
move [4] - 8:13, 21:12, 21:16, 29:5
moving [1] - 5:20
MR [27] - 6:22, 10:18, 10:20, 12:17, 14:7, 15:3, 15:5, 16:6, 16:9, 16:18, 16:21, 16:24, 17:20, 18:14, 18:20, 18:22, 18:23, 23:6, 23:19, 24:9, 25:4, 25:20, 26:2, 26:8, 26:11, 28:10, 29:10
MS [28] - 4:2, 4:9, 4:13, 4:17, 4:24, 5:5, 5:10, 5:14, 5:17, 5:24, 6:4, 6:8, 6:11, 6:15, 6:24, 7:21, 7:23, 8:25, 9:10, 10:15, 12:9, 12:13, 19:20, 20:17, 24:13, 24:14, 24:18, 29:12
Murray [1] - 3:11
MURRAY [1] - 2:10
must [1] - 9:7
MVB11893@aol.com [1] - 1:25

## N

nature [2] - 5:24, 8:8

near [3] - 8:14, 9:16, 9:18
necessarily [3] - 7:14, 10:6, 25:1
necessary [4] - 8:10, 10:25, 12:8, 16:3
need [5] - 8:9, 8:13, 9:14, 9:22, 10:14, 11:8, 11:25, 12:25, 15:1, 18:10, 18:17, 20:5, 24:7, 26:21, 26:22
needless [1] - 18:6
needlessly [1] - 18:6
needs [1] - 11:6
neglected [1] - 6:9
Neha [1] - 3:7
NEHA [1] - 2:17
new [1] - 5:12
next [9] - 6:9, 6:16, 15:22, 18:4, 18:25, 19:16, 25:16, 25:17, 29:17
Nicole [1] - 3:11
NICOLE [1] - 2:10
Ninth [10] - 13:2, 13:4, 13:8, 13:12, 13:14, 13:20, 15:8, 16:16, 16:20, 21:23
non [1] - 25:13
non-secure [1] - 25:13
none [1] - 18:22
nonetheless [1] - 15:12
note [1] - 28:23
nothing [5] - 18:23, 29:2, 29:10, 29:12, 29:20
notice [8] - 18:25, 19:5, 20:9, 22:7, 22:18, 23:24, 24:7, 26:14
number [2] - 5:11, 5:18
numbers [2] - 8:5, 10:6

## O

o'clock [2] - 3:17, 29:18
object [1] - 23:25
objection [1] - 10:24
objections [1] - 19:25
obligations [2] - 21:4, 22:11
obtain [1] - 27:16
obviously [3] - 9:11, 14:10, 14:18
OCCIDENTAL [1] - 2:5
occur [6] - 8:11, 8:12, 8:19, 10:7, 26:15
October [3] - 6:10, 6:11, 29:18
OF [12] - 1:2, 1:16, 2:3, 2:9, 2:11, 2:11, 30:3, 30:7
OFFICE [1] - 2:11
OFFICIAL [2] - 1:23, 30:10
old [1] - 27:24
one [16] - 12:2, 13:15, 14:24, 15:3, 21:5, 23:8, 23:21, 23:22, 24:19, 25:4, 25:14,

25:15, 27:19, 28:12, 28:20
one-size-fits-all [1] - 27:19
ongoing [1] - 7:12
open [1] - 19:18
operationalize [1] - 18:4
opportunity [5] - 6:18, 15:25, 19:13, 20:11, 23:25
opposing [1] - 12:7
option [1] - 26:25
order [37] - 7:4, 7:6, 7:25, 8:1, 8:11, 8:16, 11:13, 11:16, 11:17, 11:20, 11:25, 12:3, 12:10, 12:21, 12:22, 12:23, 14:4, 14:9, 14:25, 16:4, 16:9, 16:11, 16:15, 17:14, 17:23, 18:12, 18:13, 18:18, 19:9, 20:2, 22:9, 25:7, 25:22, 25:25, 26:3, 26:6, 29:15
ordered [1] - 23:13
ordering [1] - 7:2
orderly [2] - 15:13, 28:5
orders [5] - 4:23, 13:3, 13:16, 21:24, 23:21
ORDIN [1] - 2:16
Ordin [1] - 3:9
original [1] - 5:3
originally [1] - 8:4
ORR [5] - 3:21, 8:6, 8:9, 8:13, 10:10
ORR's [1] - 8:4
ourselves [1] - 20:19
own [4] - 13:16, 19:14, 22:10, 28:9

## P

p.m [1] - 29:21
P.M [1] - 3:1
page [1] - 7:3
panel [1] - 13:16
paragraph [12] - 7:2, 7:9, 7:12, 7:25, 8:1, 8:21, 9:4, 9:6, 12:18, 16:14, 17:5
paragraphs [2] - 7:3, 9:1
parent [1] - 27:21
parental [1] - 4:21
parents [10] - 4:23, 20:10, 20:24, 21:18, 21:19, 22:1, 22:2, 26:21, 26:24, 29:4
part [6] - 4:14, 5:3, 5:16, 12:23, 17:3, 25:10
parte [4] - 12:7, 15:21, 16:5, 17:15
participate [2] - 24:16, 24:20
particularly [1] - 8:9
parties [7] - 14:21, 22:8, 23:15, 23:23, 24:22, 25:7, 25:22
parties' [1] - 29:16

**partway** [2] - 18:9, 18:16
**past** [2] - 19:12, 23:21
**Paul** [1] - 3:10
**PAUL** [1] - 2:17
**pending** [2] - 6:16, 25:10
**people** [5] - 4:7, 5:12, 5:15, 27:4, 27:5
**perhaps** [4] - 8:25, 9:25, 10:9, 25:7
**period** [4] - 16:13, 17:2, 18:17, 23:15
**permanent** [1] - 21:2
**person** [1] - 23:3
**perspective** [1] - 11:4
**Peter** [3] - 3:6, 23:6, 28:10
**PETER** [1] - 2:3
**petitioners** [1] - 13:6
**picture** [1] - 18:10
**place** [3] - 19:10, 21:6, 28:20
**placed** [1] - 14:22
**placement** [1] - 15:1
**placements** [1] - 9:15
**placing** [6] - 9:3, 9:9, 9:18, 11:2, 12:2, 12:5
**plaintiffs** [17] - 3:6, 6:23, 10:21, 11:4, 11:6, 11:12, 13:7, 14:7, 14:19, 18:23, 23:7, 24:9, 25:5, 26:5, 28:11, 29:10
**Plaintiffs** [1] - 1:6
**PLAINTIFFS** [1] - 2:3
**plaintiffs'** [5] - 11:4, 14:11, 19:7, 19:15, 22:7
**plan** [2] - 22:15, 23:17
**planned** [1] - 22:6
**planning** [1] - 8:20
**plate** [1] - 3:18
**pleased** [1] - 3:21
**PO** [1] - 2:12
**point** [7] - 7:17, 7:24, 11:11, 11:12, 14:12, 28:12, 28:15
**pointed** [1] - 14:16
**points** [1] - 6:25
**population** [1] - 4:14
**position** [3] - 14:23, 20:18, 21:1
**possible** [2] - 7:1, 9:7
**practice** [1] - 11:11
**prepare** [1] - 22:10
**preparing** [1] - 19:14
**PRESENT** [1] - 2:16
**present** [2] - 18:9, 19:15
**presenting** [1] - 14:11
**PRESIDING** [1] - 1:3
**pressured** [1] - 27:1
**pretext** [1] - 11:13
**prevents** [1] - 29:2
**previous** [1] - 21:24
**problem** [2] - 21:15, 28:23

**procedure** [3] - 23:2, 28:4, 28:8
**procedures** [5] - 10:24, 14:13, 19:14, 22:10, 24:2
**proceed** [1] - 3:14
**PROCEEDINGS** [2] - 1:16, 30:3
**proceedings** [1] - 29:21
**process** [6] - 9:5, 9:22, 10:4, 14:8, 14:20, 24:20
**processes** [4] - 9:12, 10:1, 10:8, 10:10
**program** [2] - 13:24, 17:16
**programmatic** [2] - 13:9, 13:21
**prompt** [1] - 28:6
**proper** [2] - 8:20, 15:1
**propose** [1] - 23:9
**proposed** [2] - 19:8, 22:7
**prospective** [1] - 9:2
**prospectively** [2] - 9:9, 12:5
**protection** [1] - 14:18
**protocol** [6] - 19:7, 23:10, 23:12, 23:14, 27:20, 28:4
**protocols** [5] - 19:14, 19:24, 20:1, 22:11, 24:2
**provide** [2] - 11:18, 28:16
**provided** [4] - 21:20, 26:22, 27:15, 28:14
**providers** [2] - 26:23, 27:15
**providing** [1] - 22:21
**provisions** [1] - 19:10
**public** [1] - 17:19
**pursue** [1] - 26:25
**put** [2] - 17:6, 17:15

## Q

**quarantined** [1] - 10:6
**quarantining** [3] - 9:25, 10:8, 10:24
**questions** [3] - 4:5, 17:6, 25:9

## R

**raise** [2] - 12:6, 12:16
**raised** [1] - 25:9
**raises** [2] - 13:6, 17:5
**rather** [3] - 8:19, 11:3, 23:12
**reach** [1] - 24:1
**reached** [1] - 23:24
**read** [1] - 21:13
**ready** [2] - 3:14, 19:2
**reaffirming** [1] - 13:16
**real** [3] - 12:5, 17:5, 23:3
**reality** [1] - 22:16
**really** [6] - 14:20, 14:24, 15:15, 20:1, 21:5, 25:10
**reason** [10] - 4:22, 9:1, 9:8,

12:5, 16:1, 17:3, 20:22, 21:8, 21:11, 26:19
**reasonable** [4] - 10:24, 11:9, 11:10, 12:1
**reasons** [1] - 20:20
**receive** [1] - 28:4
**recent** [2] - 13:2, 13:7
**recognition** [1] - 15:14
**recognize** [1] - 8:4
**RECORDED** [1] - 30:3
**REDUCTION** [1] - 30:6
**refrain** [1] - 19:6
**refuse** [1] - 29:5
**regard** [11] - 4:4, 4:18, 4:20, 6:1, 6:18, 6:21, 12:16, 19:19, 19:23, 26:14, 29:8
**regarding** [1] - 6:3
**regards** [1] - 28:12
**regular** [1] - 20:19
**regulations** [1] - 21:22
**REGULATIONS** [1] - 30:7
**related** [3] - 7:25, 8:5, 13:9
**relates** [1] - 7:2
**relative** [1] - 27:24
**release** [9] - 4:21, 13:5, 19:7, 20:23, 21:4, 21:19, 28:1, 29:6
**released** [8] - 5:2, 5:8, 20:11, 20:13, 21:8, 21:9, 22:3
**releases** [1] - 5:20
**releasing** [3] - 20:20, 21:17, 29:3
**relief** [1] - 13:1
**reluctant** [1] - 16:3
**remain** [1] - 19:22
**remedy** [1] - 24:5
**remember** [1] - 23:22
**removal** [1] - 4:23
**remove** [1] - 11:2
**repeat** [1] - 26:15
**report** [7] - 3:20, 4:4, 6:10, 6:13, 25:17, 25:18, 29:16, 29:17
**REPORTER** [2] - 1:23, 30:10
**REPORTER'S** [1] - 1:16
**reporting** [1] - 20:20
**reports** [1] - 28:25
**represented** [1] - 28:18
**request** [5] - 12:19, 14:3, 15:21, 17:3, 19:4
**requested** [3] - 20:22, 20:23, 21:9
**requests** [1] - 28:5
**require** [5] - 9:25, 22:19, 25:2, 25:16, 25:19
**required** [5] - 10:1, 11:19, 25:2, 26:23, 27:1
**requirement** [1] - 27:21
**requirements** [2] - 7:12, 21:7

**requires** [1] - 8:1
**requiring** [3] - 8:8, 19:6, 28:13
**residential** [1] - 25:11
**resolved** [1] - 7:15
**respectfully** [2] - 12:21, 14:2
**respond** [1] - 14:6
**response** [5] - 15:3, 15:6, 25:6, 29:16, 29:17
**rest** [1] - 3:24
**result** [1] - 8:11
**reversed** [1] - 21:23
**review** [2] - 6:18, 19:17
**reviewed** [1] - 3:20
**rights** [8] - 19:5, 20:6, 20:9, 20:15, 22:7, 26:14, 26:21, 27:5
**RIGHTS** [1] - 2:4
**roads** [1] - 28:23
**robust** [1] - 24:3
**rock** [1] - 21:6
**rules** [1] - 14:14
**ruling** [1] - 14:10
**rulings** [1] - 13:9
**rushing** [1] - 18:3

## S

**safe** [2] - 8:18, 10:13
**safely** [2] - 8:12, 8:17
**safety** [1] - 17:2
**SANTA** [1] - 1:24
**SARAH** [1] - 2:9
**Sarah** [3] - 3:10, 6:24, 19:20
**SCHEY** [1] - 2:3
**sCHEY** [10] - 23:6, 23:19, 24:9, 25:4, 25:20, 26:2, 26:8, 26:11, 28:10, 29:10
**Schey** [4] - 3:6, 23:6, 28:10, 29:10
**SCOTT** [1] - 2:10
**Scott** [3] - 3:11, 12:17
**second** [3] - 7:24, 11:12, 25:21
**secure** [2] - 25:12, 25:13
**see** [3] - 11:13, 17:16, 18:18
**seek** [5] - 12:25, 14:13, 16:15, 22:21, 27:25
**seeking** [1] - 14:8
**seem** [1] - 21:5
**sense** [1] - 11:5
**sensitivities** [1] - 27:11
**sentence** [1] - 28:13
**separate** [5] - 10:3, 11:16, 27:21
**separated** [1] - 26:18
**separately** [2] - 20:23, 21:9
**separating** [1] - 29:4
**separation** [4] - 11:14,

11:18, 11:19, 11:22
**SEPTEMBER** [2] - 1:18, 3:1
**September** [2] - 12:12, 18:19
**serious** [1] - 13:6
**service** [2] - 26:23, 27:15
**services** [2] - 28:14, 28:17
**settlement** [2] - 28:16, 28:21
**seven** [4] - 12:22, 14:3, 17:14, 18:13
**several** [2] - 26:15, 26:16
**severe** [1] - 15:9
**shall** [2] - 12:1, 28:16
**short** [2] - 17:2, 17:24
**showing** [1] - 13:14
**side** [3] - 15:6, 24:11
**silence** [2] - 20:6, 20:8
**similar** [1] - 14:1
**simply** [2] - 11:1, 24:7
**situation** [3] - 17:23, 27:17, 27:19
**size** [1] - 27:19
**soliciting** [1] - 26:20
**sorry** [2] - 3:16, 5:5
**sort** [6] - 6:2, 8:3, 21:5, 22:15, 27:20, 28:23
**sound** [1] - 11:10
**sounds** [1] - 24:9
**SOUTH** [1] - 2:5
**space** [3] - 8:6, 8:15, 9:21
**SPECIAL** [1] - 2:16
**splitting** [2] - 9:1, 20:25
**sponsor** [1] - 20:14
**spot** [1] - 17:7
**square** [1] - 21:5
**stance** [1] - 6:5
**standard** [3] - 14:13, 15:23, 15:24
**start** [4] - 3:17, 3:19, 18:15, 18:17
**started** [1] - 26:17
**state** [1] - 20:21
**STATES** [2] - 1:1, 30:7
**states** [1] - 28:16
**STATION** [1] - 2:13
**status** [7] - 5:1, 5:7, 5:8, 19:16, 25:12, 29:9, 29:18
**STATUS** [1] - 1:17
**statute** [1] - 13:18
**stay** [26] - 3:24, 3:25, 12:22, 13:3, 13:12, 13:14, 14:4, 14:8, 14:12, 14:13, 15:7, 15:16, 15:21, 15:22, 15:23, 16:16, 16:20, 17:3, 17:6, 17:9, 17:19, 17:22, 18:8, 18:12, 18:16
**stayed** [2] - 5:15, 13:15
**stays** [3] - 13:8, 15:9, 15:13
**STENOGRAPHICALLY** [1] - 30:3

**step** [1] - 22:19
**Stephanie** [1] - 3:7
**stepped** [1] - 15:12
**STEWART** [13] - 2:10, 12:17, 15:3, 15:5, 16:6, 16:9, 16:18, 16:21, 16:24, 17:20, 18:14, 18:20, 18:22
**Stewart** [2] - 3:11, 12:17
**still** [4] - 4:19, 6:7, 9:14, 13:13
**stop** [1] - 11:2
**STREET** [1] - 1:24
**strong** [1] - 19:25
**subject** [5] - 4:23, 19:1, 19:5, 23:24, 25:23
**submit** [1] - 6:23
**subparagraph** [1] - 28:18
**suggest** [2] - 10:15, 17:20
**suggested** [2] - 23:21, 25:5
**suggestion** [1] - 25:21
**suggestions** [3] - 24:22, 24:23, 25:14
**SUITE** [1] - 1:24
**supports** [1] - 15:15
**supposed** [1] - 9:2
**suspect** [1] - 9:13
**system** [3] - 10:9, 18:1, 27:4

## T

**tantamount** [2] - 20:6, 20:8
**technical** [2] - 3:16, 29:19
**TELECONFERENCE** [1] - 1:16
**telegraph** [1] - 15:23
**TELEPHONICALLY** [1] - 2:3
**temporary** [1] - 13:3
**tentative** [9] - 6:18, 6:20, 6:23, 7:3, 17:24, 19:2, 19:3, 19:18, 22:14
**terms** [2] - 23:9, 28:21
**testing** [1] - 10:9
**THAT** [1] - 30:2
**THE** [60] - 2:3, 2:9, 3:4, 3:15, 4:4, 4:10, 4:15, 4:18, 5:1, 5:7, 5:11, 5:15, 5:23, 6:1, 6:6, 6:9, 6:13, 6:16, 7:18, 7:22, 8:24, 9:1, 10:14, 10:17, 10:19, 11:21, 12:10, 12:15, 14:6, 15:4, 15:20, 16:8, 16:13, 16:19, 16:22, 17:11, 18:11, 18:19, 18:21, 18:24, 20:4, 21:11, 23:17, 23:20, 24:11, 24:17, 24:21, 25:19, 25:24, 26:7, 26:9, 26:13, 28:22, 29:14, 30:2, 30:3, 30:4, 30:6, 30:7
**themselves** [1] - 27:22
**theoretical** [1] - 23:1
**therefore** [1] - 14:2

**thinking** [3] - 19:3, 19:17, 26:14
**THIS** [1] - 30:5
**thoughts** [1] - 23:8
**three** [8] - 7:2, 7:9, 7:12, 9:2, 9:4, 9:6, 11:24, 18:12
**three-day** [1] - 11:24, 18:12
**throughout** [2] - 16:11, 27:4
**timeline** [1] - 27:20
**timelines** [1] - 29:15
**timing** [1] - 14:25
**Title** [2] - 6:19, 9:12
**today** [4] - 12:10, 12:23, 16:10, 17:9
**tomorrow** [1] - 16:11
**TRANSCRIPT** [3] - 1:16, 30:3, 30:5
**transfer** [3] - 7:10, 8:8, 10:13
**transferred** [1] - 9:6
**transferring** [3] - 8:7, 9:23, 10:9
**transfers** [2] - 8:12, 8:19
**trigger** [1] - 26:5
**TRUE** [1] - 30:2
**true** [3] - 26:2, 26:7, 26:11
**Tuesday** [6] - 15:22, 16:5, 16:12, 17:22, 18:9
**turn** [3] - 6:16, 18:25, 28:17
**two** [18] - 3:11, 4:6, 4:7, 7:25, 8:1, 8:21, 8:25, 9:2, 10:15, 11:1, 12:19, 16:14, 17:5, 25:8, 25:14, 25:18

## U

**U.S** [1] - 1:23
**ultimately** [2] - 13:11, 13:13
**unaccompanied** [2] - 7:20, 13:23
**under** [6] - 11:16, 20:7, 20:15, 22:11, 25:2, 26:23
**understandably** [1] - 10:22
**understood** [3] - 6:15, 16:21, 18:20
**unique** [1] - 27:17
**UNITED** [2] - 1:1, 30:7
**unless** [1] - 21:16
**untie** [1] - 22:17
**up** [15] - 3:22, 8:14, 9:1, 11:6, 11:24, 12:4, 13:12, 13:16, 19:9, 20:3, 22:22, 23:12, 24:2, 28:3, 28:8
**US** [1] - 2:11
**useful** [1] - 18:7
**utilize** [2] - 8:6, 9:20

## V

**various** [1] - 25:9
**version** [1] - 7:19

**vetted** [1] - 20:14
**view** [1] - 13:17
**violation** [1] - 13:18
**virus** [2] - 4:8, 4:12
**vociferously** [1] - 14:10
**voluntarily** [1] - 24:24
**Vs** [1] - 1:8

## W

**waiting** [1] - 17:21
**waived** [2] - 20:15, 20:25
**waiver** [4] - 20:5, 20:6, 20:8, 21:2
**walls** [1] - 24:6
**wants** [1] - 14:12
**WASHINGTON** [1] - 2:13
**week** [2] - 12:2, 12:18
**weekend** [2] - 16:11, 18:12
**weeks** [4] - 8:25, 10:15, 11:2, 26:15
**Welch** [1] - 3:7
**welcome** [2] - 3:25, 16:19
**welfare** [1] - 14:17
**WEST** [1] - 1:24
**whereby** [1] - 28:4
**wherewithal** [1] - 22:4
**whole** [3] - 12:22, 14:4, 21:11
**WILLIAM** [2] - 1:10, 2:10
**William** [1] - 3:5
**willing** [3] - 4:21, 23:10, 27:24
**Wise** [1] - 3:10
**wise** [1] - 11:10
**WISE** [1] - 2:17
**wish** [9] - 12:15, 16:4, 16:16, 24:23, 26:25, 27:6, 27:8, 27:9, 27:22
**WITH** [1] - 30:6
**written** [3] - 16:5, 19:2, 22:14

## Y

**years** [1] - 27:24