JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
Civil Division
AUGUST E. FLENTJE
Special Counsel to the Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director, District Court Section
Office of Immigration Litigation
SARAH B. FABIAN
NICOLE N. MURLEY
Senior Litigation Counsel
 Tel:  (202) 532-4824
 Fax:  (202) 305-7000
 Email:  Sarah.B.Fabian@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JENNY LISETTE FLORES; *et al.*,<br><br>        Plaintiffs,<br><br>        v.<br><br>WILLIAM P. BARR, Attorney General of the United States; *et al.*,<br><br>        Defendants. | Case No. CV 85-4544-DMG<br><br>**DEFENDANTS' *EX PARTE* APPLICATION TO STAY ORDER, ECF No. 976; MEMORANDUM OF POINTS AND AUTHORITIES; SUPPORTING DECLARATION**<br><br>Hearing Date: Not set<br><br>Hon. Dolly M. Gee<br>[Proposed] Order Filed Concurrently |

### *EX PARTE* APPLICATION

Pursuant to Local Rule 7-19, Defendants apply to this Court *ex parte* to request a stay of the Court's September 4, 2020 Order pending resolution of the government's appeal from that order to the U.S. Court of Appeals for the Ninth Circuit. This request is necessary given the Order's impact on critical public-health measures adopted by the U.S. Centers for Disease Control and Prevention (CDC) in response to the COVID-19 pandemic. Defendants also provide significant evidence showing that the Order presents risks to the public and minors in the custody of the Office of Refugee Resettlement (ORR) and U.S. Immigration and Customs Enforcement (ICE), as well as minors who will now be transferred to ORR and ICE custody. At the same time, Defendants raise serious and important issues on appeal—including challenging this Court's rulings that the *Flores* Settlement Agreement applies to minors in custody under the CDC order, and that such custody does not comply with the Agreement—on which Defendants are likely to prevail.

The Court should stay the Order pending appeal, given the potentially harmful and wide-reaching effects of the Order on critical CDC measures, so that the Ninth Circuit can have the opportunity to resolve, before any such harms occur, whether the Agreement even applies here, the scope of its application in this context, and the government's compliance with the Agreement in this context. Accordingly, the government respectfully asks this Court to grant a stay pending resolution of its pending appeal.

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Urgency:** This order is sought by means of an *ex parte* application because the Ninth Circuit has administratively stayed the Order through September 23, 2020, to allow Defendants to seek this relief from the District Court, and therefore there is insufficient time to seek a stay of proceedings by noticed motion before that administrative stay terminates.

**Notice:** Pursuant to L.R. 7-19.1, on September 17, 2020, Defendants' counsel notified Plaintiffs' counsel of the substance of this application. Declaration of Sarah B. Fabian ¶ 3. Carlos Holguin, counsel for Plaintiffs, indicated that Plaintiffs will oppose Defendants' Application. *Id.* ¶ 4. On September 17, 2020, Defendants' counsel also gave Plaintiffs' counsel notice that opposing papers must be filed no later than 24 hours (or one court day) following service. *Id.* ¶ 3. Plaintiffs' counsel was further advised that if Plaintiffs do not intend to oppose the *ex parte* application, counsel must inform the Courtroom Deputy Clerk as soon as possible. *Id.* Pursuant to L.R. 7-19, Mr. Holguin's address and contact information are as stated in the attached declaration. *Id.* ¶ 5.

///

///

///

ii

1

2   Dated: September 17, 2020          Respectfully submitted,

3                                      JEFFREY BOSSERT CLARK
                                       *Acting Assistant Attorney General*
4                                      SCOTT G. STEWART
                                       *Deputy Assistant Attorney General*
5                                      AUGUST E. FLENTJE
6                                      *Special Counsel to the Assistant Attorney*
                                       *General*
7                                      WILLIAM C. PEACHEY
8                                      *Director, District Court Section*
                                       *Office of Immigration Litigation*
9                                      WILLIAM C. SILVIS
10                                     *Assistant Director, District Court Section*
11                                     *Office of Immigration Litigation*

12                                 By: Sarah B. Fabian
13                                     SARAH B. FABIAN
                                       NICOLE N. MURLEY
14                                     *Senior Litigation Counsel*
15                                     Office of Immigration Litigation
16                                     U.S. Department of Justice
                                       Civil Division
17                                     P.O. Box 868, Ben Franklin Station
18                                     Washington, D.C. 20044
                                       Tel: (202) 532-4824
19                                     Email: sarah.b.fabian@usdoj.gov

20
21                                     *Attorneys for Defendants*

22

23

24

25

26

27

28
                                       iii

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

This Court should stay its September 4 Order pending resolution of the government's appeal from that Order.  The Order risks significant harm to critical public-health measures adopted by the U.S. Centers for Disease Control and Prevention (CDC) in response to the COVID-19 pandemic.  The Order presents risks to the public, to other minors already in the custody of the Office of Refugee Resettlement (ORR) and U.S. Immigration and Customs Enforcement (ICE), and to minors who will now be transferred to congregate-care facilities in direct contravention of the directives of the CDC.  Defendants raise serious and important arguments on appeal that the Ninth Circuit should have the opportunity to resolve before the Order is permitted to affect this critical public-health measure.  Most notably, the government disagrees with this Court's ruling that the *Flores* Settlement Agreement applies to the custody of minors subject to the CDC order.  This is a critical threshold issue that the Ninth Circuit should have the opportunity to resolve before the Order takes effect.  Moreover, the government is challenging this Court's rulings on the manner in which the Court held that the Agreement must be applied to the implementation of the CDC Order and the government's compliance with the Agreement.  The government is likely to prevail on the merits of its appeal and, given the substantial potential impacts of moving forward with implementation of the Order, there is good reason to let the Ninth Circuit review this Court's application of the Agreement's terms to the CDC order while the September 4 Order is stayed.

1

There are, accordingly, compelling grounds to stay the Order pending appeal, given the potentially harmful and wide-reaching impacts of the Order on the CDC Title 42 process and the government's strong merits arguments, so that the Ninth Circuit can have the opportunity to resolve the important questions about the Agreement's application here. Accordingly, the government respectfully asks this Court to grant a stay pending resolution of its pending appeal.

## RELEVANT BACKGROUND

## COVID-19 Pandemic

Nearly a quarter century after the *Flores* Settlement Agreement was executed, the United States was called upon to respond to the COVID-19 pandemic. As part of that response, in March the CDC issued an order under 42 U.S.C. § 265. Order, 85 Fed. Reg. 17060; Extension of Order, 85 Fed. Reg. 22424; Amendment and Extension of Order, 85 Fed. Reg. 31503. Enacted in 1944 as part of the Public Health Service Act, section 265 authorizes the CDC Director, in response to a "serious danger of the introduction of [a communicable disease in a foreign country] into the United States," to "prohibit, in whole or in part, the introduction of persons and property from such countries or places as he shall designate in order to avert such danger, and for such period of time as he may deem necessary for such purpose." 42 U.S.C. § 265. The CDC order "applies to persons traveling from Canada or Mexico (regardless of their country of origin) who would otherwise be introduced into a congregate setting in a land Port of Entry (POE) or Border Patrol station at or near the United States borders with Canada and

2

Mexico." 85 Fed. Reg. at 17061. The order explains that "[t]he introduction into congregate settings in land POEs and Border Patrol stations of persons from Canada or Mexico increases the already serious danger to the public health to the point of requiring a temporary suspension of the introduction of such persons into the United States." *Id.* The CDC Director has extended the order on the ground that "there remains a serious risk to the public health that COVID-19 will continue to spread to unaffected communities within the United States, or further burden already affected areas." 85 Fed. Reg. at 31505. The CDC has determined that the CDC order "significantly mitigated the specific public health risk identified in the initial Order." *Id.*

Title 42 also provides that "[i]t shall be the duty of the customs officers[1] and of Coast Guard officers to aid in the enforcement of quarantine rules and regulations." 42 U.S.C. § 268. In line with that provision, and given the CDC's limited resources, in issuing its order the CDC directed customs officers of the U.S. Department of Homeland Security (DHS) to assist in implementing the order 85 Fed. Reg. at 17067.

The CDC order directs that covered aliens should be moved to their country of last transit or their country of origin "as rapidly as possible, with as little time spent in congregate settings as practicable under the circumstances." 85 Fed. Reg.

---

[1] The term "customs officer" means an "officer of the United States Customs Service of the Treasury Department." 19 U.S.C. § 1401(i). The Homeland Security Act transferred the relevant Treasury Department functions to the Department of Homeland Security. 6 U.S.C. §203(1).

3

at 17067.  On a case-by-case basis, U.S. Customs and Border Protection (CBP) may except a minor from the CDC order and process a minor under Title 8.  85 Fed. Reg. at 17061; Testimony of Mark A. Morgan, CBP, June 25, 2020, at 3,

https://www.hsgac.senate.gov/imo/media/doc/Testimony-Morgan-2020-06-25-REVISED.pdf.

When they cannot be moved immediately to their country of last transit, minors and families under the CDC order may be housed in hotels.  First Harper Decl. ¶ 2, Dkt. 925-1.  These hotels provide amenities and help implement the CDC order's directive "that covered aliens spend as little time in congregate settings as practicable under the circumstances."  85 Fed. Reg. at 17067.  Custody in hotels is accomplished through a contract with MVM Inc., which specializes in the transportation and care of this vulnerable population.  First Harper Decl. ¶¶ 2, 3; Hott Decl. ¶ 12 (Ex. 3 hereto); Second Harper Decl. ¶¶ 3-5 (Ex. 4 hereto).  The contract ICE and MVM details stringent requirements with which MVM must comply in order to care for minors. Second Harper Decl. ¶ 3, Att. A.  MVM hires specialists who interact with and care for minors and family groups/units while they are in the hotel.  First Harper Decl. ¶¶ 2, 3; Second Harper Decl. ¶ 4, Att. B and C.  At the hotels, minors are provided amenities, medical care and daily medical screenings by a medical professional, and protections against COVID-19.  First Harper Decl.  ¶¶ 13-20. An independently contracted inspection team conducts unannounced virtual inspections at the hotels to verify conditions at the

4

hotels are humane and safe.  Second Harper Decl. ¶ 5.  The latest inspections in each of the three cities occurred on July 16, July 30, and August 3.  *Id.*

### **Procedural History of This Matter**

On August 14, Plaintiffs filed a motion to enforce, arguing that the government's use of hotels to house minors under the CDC's order violates the Agreement.  Dkt. 920, 920-1. On September 4, this Court granted the motion. Order, Dkt. 976.  The Court stayed the September 4 Order until September 8, and allowed the government until September 15 to implement portions of the Order. *Id.* ¶ 2.  The government appealed from the Order to the Ninth Circuit on September 10, 9th Cir. No. 20-55951, and filed a motion with that Court to stay the Order on September 11. 9th Cir. Dkt. 2. On September 12, the Ninth Circuit granted an administrative stay of the Order through September 16.  9th Cir. Dkt. 5.  On September 16, the Ninth Circuit denied without prejudice the government's motion for a stay pending appeal, and extended the administrative stay through September 23 to permit this Court to consider a stay request from the government.  9th Cir. Dkt. 8 at 1-2.  The court of appeals stated that the government could renew its stay request in the Ninth Circuit after it was presented to this Court.  *Id.*  The court of appeals expedited briefing in the appeal; briefing is scheduled to finish by November 20, 2020.  *Id*. at 2.

5

**STANDARD OF REVIEW**

A district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706–07 (1997).

**ARGUMENT**

The Court should stay its September 4, 2020 Order pending resolution of the government's appeal from that Order.  A stay is warranted because the Order risks significant damage to the United States' response to the COVID-19 pandemic, and thus presents risks to the public and minors in ORR and ICE custody, as well as minors who will now be transferred to ORR and ICE custody.  A stay is also warranted because Defendants raise serious and important issues on appeal—issues on which they are likely to succeed on appeal—and the Ninth Circuit should have the opportunity to resolve these issues before the Order harms the important CDC public-health measure at issue here.

**I.      A Stay Is Needed To Prevent Immediate Irreparable Harm To The Public and to *Flores* Class Members.**

The Order threatens serious, irreparable harm and undermines the public interest.  To start, the order will obstruct the government's implementation of the CDC order, which was issued to prevent the unchecked introduction of COVID-19 into the United States.  The crux of the CDC's order is that introducing individuals into congregate-care facilities increases the already serious danger to the public health, including further transmission and spread of COVID-19.  85 Fed. Reg. at

6

17061.  The Title 42 process that the government has developed, including the use of hotels to briefly house minors undergoing this process, serves the aims of the CDC's order in this regard.  The public interest is served by allowing the nation's chief public-health expert, the CDC Director, to determine how his emergency health powers will be operationalized during a global pandemic.  *See S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613-14 (2020) (Roberts, C.J., concurring) (the government's actions to protect the public from a global pandemic "should not be subject to second-guessing by an 'unelected federal judiciary,' which lacks the background, competence, and expertise to assess public health and is not accountable to the people").

The September 4 Order also increases the already-serious dangers to minors in ICE and ORR facilities, as well as minors who will now be placed into congregate-care facilities under the September 4 Order.  Notably, Plaintiffs have vehemently argued to this Court that there are inherent dangers to holding minors in congregate settings given COVID-19.  *See, e.g.*, Dkt. 733-1 at 8 (Plaintiffs argued: "The congregate detention conditions at Defendants' ICE and ORR facilities renders it nearly impossible for detained class members to engage in the required infection control policies, such as social distancing and increased hygiene, necessary to mitigate the risk of COVID-19 transmission.").  This Court also concluded that the government has been able to address the pandemic in ORR facilities *because* it has kept its volume significantly below normal capacity.  Order, Dkt. 740 at 7 (concluding that the Agreement's requirements are met

7

because "ORR's care-provider facilities are operating significantly below their maximum capacity and historical highs" and because "[r]ecent CDC orders prohibiting the entrance of unaccompanied children into the United States will also likely decrease ORR's custodial population"). Yet the Court's Order now requires that all minors and families who would have been held in individual rooms in a hotel, and then moved to their home country or another location as practicable, must now instead be placed into congregate settings with ICE or ORR. Order 17.

Government officials have assessed the likely results from the changed processes that will be required to implement the September 4 Order, and have concluded that they will result in increased risks to the public, to minors already in custody at ICE and ORR facilities, and to minors who will now have to be transferred into congregate care at those facilities, in numerous ways. First, implementation of the Court's Order will increase the number of referrals of minors into ICE family residential centers and ORR shelters. Ortiz Decl. ¶ 9 (Ex. 1 hereto); Porvaznik Decl. ¶¶ 4-6 (Ex. 2 hereto); Hott Decl. ¶ 5; Sualog Decl. ¶¶ 13-14, 22, 43-44 (Ex. 5, Att. A hereto). Second, this increased number of referrals into ICE and ORR custody will cause an increased risk of COVID-19 exposure in U.S. Border Patrol facilities, ICE family residential centers, and ORR shelters. Ortiz Decl. ¶¶ 8-13; Hott Decl. ¶¶ 6-8; Sualog Decl. ¶¶ 11, 14-16, 44-46. Third, the increased numbers, as well as the increased need to transfer minors between facilities, will increase the risk that COVID-19 will spread outside those facilities, to local communities. Ortiz Decl. ¶ 8, 11-13; Hott Decl. ¶¶ 10-11; Sualog Decl. ¶¶

8

15, 20-21, 44-46, 47-49.  Finally, all of these factors together will put a significant strain on the operations of all of these agencies.  Ortiz Decl. ¶¶ 14-16; Hott Decl. ¶ 9, 10-11; Sualog Decl. ¶ 16, 22. With regard to ORR specifically, while it may appear that ORR has significant available capacity to absorb these transfers, ORR's current success in preventing COVID-19 outbreaks at its facility is in fact due to these low numbers.  Sualog Decl. ¶¶ 17-19, 27-43; Second Sualog Decl. ¶¶ 6-7 (Ex. 5 hereto).  In reality, there is less space that is actually available to be utilized when the realities of the operations of ORR and the need for protective measures related to COVID-19 are considered.  Sualog Decl. ¶¶ 45-46, 47-49; Second Sualog Decl. ¶¶ 9-11; 13-17.  ORR could quickly become overwhelmed by these increased transfers and the risk of transmission of COVID-19 to minors in ORR custody as well as the local community is extremely high.  Sualog Decl. ¶¶ 17-22; Second Sualog Decl. ¶¶ 10-12.

In light of these numerous risks to class members and the public if the Order goes into effect, Plaintiffs cannot claim that there is a comparable risk of harm to them if this Court issues a stay.  Indeed, based on Plaintiffs' ongoing efforts to halt congregate care of minors in family residential centers and ORR facilities, it would be remarkable for them now to assert that brief custody at a hotel is more harmful than congregate care, particularly given that increased numbers of minors being transferred to those facilities in the absence of a stay will increase the very risks about which Plaintiffs have previously complained.  At the same time, the government has taken extensive measures to address the risks presented by

9

COVID-19 for minors and families temporarily housed at hotels under Title 42. Minors have continual access to the amenities of a typical hotel room, medical care, and oversight by persons who specialize in the care of this vulnerable population. First Harper Decl. ¶¶ 2-21; Second Harper Decl. ¶¶ 3-5, Att. A-C. And Plaintiffs still have put forth no evidence of actual harm to any minor from being held in a hotel during Title 42 processing, but rather have always based their claims on the argument that the Agreement requires licensed placements. Dkt. 920. Thus, for all of these reasons, considerations of harm and the equities support a stay.

A stay is particularly warranted given the extraordinary expedition that the Ninth Circuit has granted in the government's appeal. The Ninth Circuit has ordered that briefing be completed by November 20 and appears prepared to hear argument as early as November 30. Given the government's measures to care for and safeguard minors in custody while being processed under Title 42, and the risks presented by another approach, a stay pending expedited appeal is appropriate in the midst of this global pandemic.

## II.   A Stay Is Warranted Because the Government Has Raised Fundamental and Important Challenges to the District Court's Order on Appeal, and Has a Significant Likelihood of Success on Appeal on Those Issues.

A stay pending appeal also is warranted because the government has raised fundamental and important challenges to the Order on appeal, and there is good reason to allow the Ninth Circuit to decide those issues—on which the government is likely to succeed—before requiring that the Order be implemented.

10

*First*, the government is challenging this Court's holding that the Agreement applies to the custody at issue here.  Order 5-11.  The government contends that this Court erred in this holding because the Agreement applies only to minors who are in the "legal custody of the INS" as that term was used by the parties in 1997. Agreement ¶¶ 4, 10.  Under the Agreement, "legal custody of the INS" means custody at the direction of the INS under the immigration laws in Title 8, which was the law in place in 1997 that granted the INS the authority to detain the minor. *Id*.  That the Agreement governs immigration custody under Title 8 is further evident when it is looked at in context.  The Agreement settled specific issues related to custody by the INS incident to immigration proceedings, under the law governing such custody.  *See, e.g.*, *id.* ¶¶ 11, 14, 24.A.  When the Agreement was signed in 1997, the INS's legal authority to detain minors was found within Title 8.  *See* 8 U.S.C. §§ 1225, 1252 (1995).  Such detention was incident to immigration deportation and exclusion proceedings, the authority for which was also detailed in Title 8.  *See* 8 U.S.C. §§ 1225, 1226, 1231, 1252(b) (1995).  The authority for immigration proceedings, and the authority to hold alien minors in immigration custody pending those proceedings, remains in Title 8 today.  *See* 8 U.S.C. §§ 1225, 1226, 1231, 1232.  Thus, the Agreement by its terms applies to minors in immigration custody under Title 8.  The INS's successors that carry out these immigration functions under Title 8 today—including immigration custody—are CBP, ICE, and USCIS, all in DHS, and ORR for UACs.

11

The Agreement does not encompass custody incident to the implementation of this present-day CDC order issued under 42 U.S.C. § 265.  The sections of Title 42 at issue here are not immigration statutes and are not limited to aliens.  And persons processed under Title 42 are not processed for immigration enforcement actions.  Rather, 42 U.S.C. § 265 provides broad authority to CDC to take action to respond to public-health emergencies, and thus authorize the custody at issue that is a necessary part of the CDC's response.  While components of DHS play a role in today's Title 42 process, that role is not based in any Title 8 immigration authority, but rather is authorized by 42 U.S.C. § 268, which provides that "[i]t shall be the duty of the *customs officers* and of *Coast Guard officers* to aid in the enforcement of quarantine rules and regulations."  (Emphases added.)  Notably, while today DHS assists HHS in implementing the CDC's order in accordance with section 268 because customs officers and the Coast Guard are now a part of DHS, 6 U.S.C. § 203, when the Agreement was executed in 1997, section 268 would not have applied to INS because at that time the Coast Guard and customs officers were part of the Treasury Department.

The Agreement also clearly does not apply here when it is read as a whole. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995) (a contract "should be read to give effect to all of its provisions and to render them consistent with each other").  Section 265 was enacted in 1944, but the Agreement makes no mention of that statute, nor do any of the Agreement's terms refer or directly relate to custody for public-health purposes.  Section 265 authorizes the

12

CDC Director to "prohibit, in whole or in part, the introduction of persons and property from such countries or places as he shall designate in order to avert such danger, and for such period of time as he may deem necessary for such purpose." 42 U.S.C. § 265. That authority is irreconcilable with the Agreement's release obligation (¶ 14). And requiring that the government transfer minors to facilities "licensed by an appropriate State agency" (¶ 6) contradicts the CDC order's aim to prevent the "danger to the public health that results from the introduction of such persons into congregate settings at or near the borders [that] is the touchstone of th[e] order." 85 Fed. Reg. at 17061. Had the parties intended the Agreement to apply to the public-health-related custody here, they would have had to address how the Agreement's terms were meant to apply to the type of public-health processes—focused on averting the danger of transmission of disease—that could be expected to occur under section 265. But they did not. Nothing in the Agreement suggests that the parties intended it to govern—or anticipated that it would govern—procedures under 42 U.S.C. § 265, or brief incidental periods of custody necessary to implement these procedures. The Agreement does not apply here, and the motion to enforce should have been denied.

In holding that the Agreement applies here, this Court relied on the fact that DHS is a legal successor to the INS, and on its reading of "legal custody" as used in the Agreement to mean "the ability to provide care and supervision for the child." Order 6. The Order holds that DHS has "legal custody" of minors during the Title 42 process, and so concludes that "what the parties very much did

13

anticipate is that when the successors to the INS held minors in their legal custody—whether 'by mere coincidence' or not—the Agreement would apply." Order 9. The government disputes this conclusion for all of the reasons discussed above, and contends that they are likely to succeed before the Ninth Circuit in the argument that the Agreement does not apply here. Given the fundamental nature of this challenge, there is good reason to stay the Order to allow the Ninth Circuit to reach this issue before the Order must be implemented.

*Second*, even if the Agreement does apply to this custody, the government maintains that the Court erred in holding that the government's use of hotels violates the Agreement. This is another critical issue that warrants resolution by the Ninth Circuit before the Order is implemented, and thus counsels in favor of granting a stay.

To start, the manner in which the government uses hotels for custody as part of Title 42 process satisfies the Agreement's requirement that the government promptly transfer alien minors out of an unlicensed facility. Agreement ¶ 12; *contra* Order 11-13. In accordance with the Title 42 order, the government is processing minors as expeditiously as possible, and the use of hotels provides a safe and sanitary location for custody while also facilitating this quick process. The Order incorrectly concludes that the Agreement requires that minors be transferred to licensed facilities within three days, ignoring that paragraph 12 of the Agreement allows that in cases of "influx" or "emergency"—including "medical emergencies (e.g., a chicken pox epidemic among a group of minors)"—

14

the requirement for transfer is only that it should occur "as expeditiously as possible." Those exceptions apply here and so any application of a strict three-day transfer rule is incorrect. And, in requiring transfer within three days, the Order further disregards prior rulings in which this Court gave the government at least *20 days* before transfer to a licensed program (to address credible fear claims). Dkt. 189. The brief periods of custody in hotels at issue here, prior to release from custody under Title 42, fall far below this previously permitted time period, and thus are consistent with this Court's prior readings of the Agreement'.

Moreover, in entering into the Agreement, the parties represented "that they know of nothing in this Agreement that exceeds the legal authority of the parties or is in violation of any law." Agreement ¶ 41. Thus, the requirement of transfer "as expeditiously as possible" should not be read in a manner that would render it inconsistent with—and in violation of—42 U.S.C. § 265. Requiring that minors in custody under section 265 be transferred to licensed congregate-care facilities within and throughout the United States within three days conflicts with the CDC's efforts to exercise its authority under section 265 by prohibiting the introduction of individuals into congregate settings based on public-health considerations. The Order therefore is incorrect to interpret the Agreement to require the movement of persons into congregate-care facilities throughout the United States in violation of section 265's plain terms.

The Order also errs in holding that the custody at issue is not "safe and sanitary." Order 13-15. This Court acknowledged that the hotel rooms and other

15

provided amenities "are generally sanitary under normal circumstances," Order 13, but ruled that the conditions are not "safe."  In so ruling, the Order relies on a generalized assertion that to be safe, the hotels must provide a "*system of care* for children of different ages and developmental stages." Order 14 (emphasis added; quoting Dkt. 938 at 21).  The Agreement does not require a "system of care"—it requires "safe and sanitary" conditions, Agreement ¶ 12.A, and the government has provided those.  Dkt. 925-1.  Notably, this novel "system of care" requirement draws from the Monitor's reports, to which the government has objected.  Dkt. 938 at 15.  The Monitor failed to identify the evidence supporting the purported need for a "system of care."  This undefined, amorphous requirement should not be read into the Agreement—particularly in the procedurally incorrect manner that occurred here.  For all of these reasons, the government submits that it is substantially likely to prevail on its appeal to the Ninth Circuit, and given the critical importance of these issues a stay of the Order is warranted while the appeal is pending.

III. **The Court Should Issue An Administrative Stay Pending Resolution of This Application If It Cannot Decide the Government's Application Before September 23, And Should Order Additional Administrative-Stay And Clarifying Orders If It Denies A Stay.**

The Ninth Circuit has administratively stayed the Order through September 23. The government respectfully asks that if this Court does not decide the government's application in advance of that date, the Court issue an administrative stay for the duration of its consideration and resolution of this application.  If the

16

Court denies this application, the government further asks that this Court grant an administrative stay of three business days following its decision to allow the government time to seek emergency relief, if necessary, from the Ninth Circuit. That practice would be consistent with the Ninth Circuit's own repeated use of administrative stays in immigration cases to allow orderly consideration of the government's emergency stay requests. *E.g.*, *Al Otro Lado v. Wolf*, No. 19-56417 (9th Cir. Dec. 20, 2019) (granting an administrative stay of a preliminary injunction "pending a decision on the motion for stay pending appeal"); *Innovation Law Lab v. Wolf*, No. 19-15716 (9th Cir. Feb. 28, 2020) (Ninth Circuit panel immediately staying its *own* published decision pending further order of the Ninth Circuit); *Hernandez Roman v. Wolf*, No. 20-55436 (9th Cir. Apr. 25, 2020) (granting immediate administrative stay); *Hernandez Roman v. Wolf*, No. 20-55662 (9th Cir. July 1, 2020) (granting immediate administrative stay).

The government also respectfully requests that, if the Court does not grant a stay pending appeal, that it clarify for the parties the deadlines and timelines of compliance under the September 4 Order.  Important deadlines in the Order have now passed (while the Order has been stayed).  If the Court does not grant a stay pending appeal then it is important for the government to have clarity on its compliance obligations.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion for a stay of enforcement of the Court's September 4, 2020 Order pending the resolution

17

of the government's appeal from that order to the Ninth Circuit.  If the Court denies a stay pending appeal, it should issue a three-business-day stay to allow the government to seek emergency relief, if necessary, from the Ninth Circuit.

Dated: September 17, 2020        Respectfully submitted,

JEFFREY BOSSERT CLARK
*Acting Assistant Attorney General*
SCOTT G. STEWART
*Deputy Assistant Attorney General*
AUGUST E. FLENTJE
*Special Counsel to the Assistant Attorney General*
WILLIAM C. PEACHEY
*Director, District Court Section*
*Office of Immigration Litigation*
WILLIAM C. SILVIS
*Assistant Director, District Court Section*
*Office of Immigration Litigation*

By: Sarah B. Fabian
SARAH B. FABIAN
NICOLE N. MURLEY
*Senior Litigation Counsel*
Office of Immigration Litigation
U.S. Department of Justice
Civil Division
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-4824
Email: sarah.b.fabian@usdoj.gov

*Attorneys for Defendants*

18

### DECLARATION OF SARAH B. FABIAN

I, Sarah B. Fabian, declare pursuant to 28 U.S.C. § 1746 that:

1.      I am an attorney with the Office of Immigration Litigation, Civil Division, Department of Justice, Washington, D.C., and, in such capacity, have been assigned by the Department of Justice as counsel to the defense of this action. This Declaration is submitted in support of Defendants' *Ex Parte* Application to Stay the District Court's September 4 Order.

2.      The Court entered an Order on September 4, 2020, ECF No. 976.

3.      I e-mailed Plaintiffs' counsel regarding a stay in this matter on September 17, 2020. I advised Plaintiffs' counsel that any opposing papers must be filed no later than 24 hours (or one court day) following service. Plaintiffs' counsel was also advised that if Plaintiffs do not intend to oppose the *ex parte* application, counsel must inform the Courtroom Deputy Clerk as soon as possible.

4.      On September 17, 2020, Carlos Holguin, counsel for Plaintiffs, responded and indicated that Plaintiffs intend to file an opposition.

5.      Mr. Holguin's contact information is:

Carlos Holguin
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Facsimile: (213) 386-9484
Email:pschey@centerforhumanrights.org

19

1

2        I declare under penalty of perjury that the foregoing is true and correct.

3   Executed this 17th day of September, 2020, in the City of Denver, Colorado.

4

5                                  */s/ Sarah B. Fabian*

6                                  SARAH B. FABIAN

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20

1

## CERTIFICATE OF SERVICE

2

3        I hereby certify that on September 17, 2020, I served the foregoing pleading

4  and attachments on all counsel of record by means of the District Clerk's CM/ECF

5
6  electronic filing system.

7

8

9                                        /s/ *Sarah B. Fabian*

10                                       SARAH B. FABIAN
                                         U.S. Department of Justice
11                                       District Court Section
                                         Office of Immigration Litigation
12
13                                       Attorney for Defendants

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21