UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | September 18, 2020 |
|---|---|---|---|
| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 1 of 15 |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE PLAINTIFFS' MOTION TO ENFORCE [919] AND AUGUST 2020 ICE JUVENILE COORDINATOR INTERIM REPORT [943]**

## I.
## INTRODUCTION AND BACKGROUND

On June 26, 2020, due to the spike in the rate of COVID-19 infections in Defendant Immigration and Customs Enforcement's ("ICE") Family Residential Centers ("FRCs") and surrounding communities and its ongoing breaches of the *Flores* Settlement Agreement ("FSA"), the Court ordered ICE to transfer Class Members who have resided at an FRC for more than 20 days to non-congregate settings through one of two means: (1) releasing minors to available suitable sponsors or other available COVID-free non-congregate settings with the consent of their parents; or (2) releasing the minors with their parents if ICE exercises its discretion to release the adults or another Court finds that the conditions at these facilities warrant the transfer of the adults to non-congregate settings. June 26, 2020 Order at 3–4 [Doc. # 833]. The Court also ordered the parties to meet and confer and file a status report regarding the adoption of proper written advisals and other protocols to inform detained parents about minors' rights under the FSA and obtain information regarding, and procedures for placement with, available and suitable sponsors. *Id.* at 6.

After making progress in drafting the know-your-rights advisals and protocols, ICE suddenly withdrew from the meet-and-confer process. On August 5, 2020, ICE stated its unwillingness to "voluntarily agree to any protocol that would potentially provide for the separation of a parent and child who are currently housed together in an ICE FRC." Joint Status Report at 6 [Doc. # 902]. Yet, it is ICE that has chosen a path that places Class Members and their parents in the heart-wrenching position of having to consider which is the lesser of two evils—prolonged detention in the midst of a pandemic or potential family separation. In the absence of authority to compel Defendants to effectuate family release, this Court too must tread a path it does not prefer in order to afford at least some Class Members, whose parents are detained, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | September 18, 2020 |
|---|---|---|---|
| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 2 of 15 |

opportunity to exercise their right to expeditious release to the "least restrictive setting appropriate to their age and special needs." FSA at ¶ 11 [Doc. # 101]. Accordingly, on August 7, 2020, the Court found it necessary to impose a remedy for ICE's failure to release Class Members without unnecessary delay and to make and record continuous efforts to release Class Members, in violation of Paragraphs 14 and 18 of the FSA, as well as for violations of Paragraph 12. August 7, 2020 Order at 3 [Doc. # 914].

As the Court directed, Plaintiffs have filed a Motion to Enforce the FSA as well as drafts for (1) a *Flores* Settlement Agreement Notice of Rights ("Notice of Rights") to be provided to Class Members and their parents in ICE FRCs; (2) a *Flores* Class Member Release Protocol ("Release Protocol") that ICE would be required to follow and issue to its officers; and (3) a worksheet for parents to fill out entitled *Flores* Settlement Parent/Guardian Release Decision ("Release Decision Worksheet"). [Doc. ## 919, 921-1.] ICE opposes the motion. [Doc. # 923.] In addition, two groups of *amici curiae* suggest supplementary or alternative remedies: (1) Aldea - The People's Justice Center, Proyecto Dilley, and the Refugee and Immigrant Center for Education and Legal Services ("RAICES") (together, "Legal Services Provider *Amici*") [Doc. # 951], and (2) Amnesty International USA and Human Rights Watch (together, "Human Rights Organization *Amici*") [Doc. # 961]. Plaintiffs filed a response to *Amici*'s briefs. [Doc. # 965.]

In addition, on August 24, 2020, the ICE Juvenile Coordinator Deane Dougherty and Office of Refugee Resettlement ("ORR") Juvenile Coordinator Aurora Miranda-Maese filed their monthly interim reports. [Doc. # 932.] Plaintiffs and the Legal Services Provider *Amici* each filed responses to the ICE Juvenile Coordinator report, but not the ORR report. [Doc. ## 950, 959.] Also on August 24, 2020, Plaintiffs and Defendants filed a Joint Status Report on continued disagreements regarding disclosures of information to the Legal Services Providers and the quality of data Defendants maintain and provide to Class Counsel. [Doc. # 930.] The Court held a hearing on these matters on September 4, 2020.

For the reasons stated below, the Court **GRANTS in part** Plaintiffs' Motion to Enforce the FSA and **ORDERS** ICE to disseminate to Class Members a Notice of Rights, as revised by the Court, and to issue to its employees an updated policy or instruction regarding the FSA. The Court **DENIES in part** Plaintiffs' motion to the extent it seeks to provide a specific Release Protocol to ICE employees or Release Decision Worksheet to Class Members and their parents.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | September 18, 2020 |
|---|---|---|---|
| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 3 of 15 |

## II.
## DISCUSSION

The Court first discusses ICE's specific breaches of the FSA, then turns to the various remedies proposed by Plaintiffs and *Amici*.

**A.** **Breach of Contract**

The parties need not have devoted so many pages to briefing whether ICE has in fact breached the FSA, because past breaches have already been the subject of prior Court Orders. *See* June 26, 2020 Order at 3 ("ICE's compliance with Paragraphs 12, 14, and 18 of the FSA remains at issue."); May 22, 2020 Order at 2 (finding lack of compliance with Paragraph 18) [Doc. # 799]; April 24, 2020 Order at 6, 16, 18 (finding violations of Paragraphs 12, 14, and 18) [Doc # 784]; June 27, 2017 Order, 394 F. Supp. 3d 1041, 1068, 1070 (C.D. Cal. 2017) (same). But to ensure the remedy is tailored to the breach, and to address Plaintiffs' and the Legal Services Provider *Amici*'s concerns about Ms. Dougherty's August interim report, the Court will revisit the specific FSA provisions breached.

> **1. Release without unnecessary delay and make and record prompt and continuous efforts toward family reunification and the release of the minor (Paragraphs 14 and 18)**

In ICE's opposition to Plaintiffs' motion, it asserts that "where ICE determines that release of the parent is not appropriate, continued custody of children with their parents is appropriate and consistent with the Agreement." Opp. at 4 [Doc. # 923]. This assertion is corroborated by the most recent ICE Juvenile Coordinator report, which states that Class Members remain at FRCs only because of COVID-19 quarantine procedures or because they are detained with a parent "whose release is not appropriate." August 2020 ICE Juvenile Coordinator Report at 5–6 [Doc. # 932-1]. Furthermore, the Report notes that minors subject to an administrative stay of removal issued by the court in *D.A.M. v. Barr*, No. CV 20-1321-CRC (D.D.C. 2020), "may be eligible for individual release if the parent designates a caregiver to whom the minor can be released." *Id.*, Ex. A at 10–13 [Doc. # 932-1]. Thus, as of August 17, 2020, 83 minors have been detained at an FRC for 20 days or more solely because ICE will not release their parents. *See* August 2020 ICE Juvenile Coordinator Report at 4.

Non-release of an accompanying parent is not a factor that prohibits a minor's release under the FSA, unless the parent does not consent to such release. The Government agreed that it "*shall release a minor from its custody without unnecessary delay*" if "detention of the minor is not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | September 18, 2020 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 4 of 15 |
|---|---|---|---|

required either to secure his or her timely appearance" in immigration proceedings or "to ensure the minor's safety or that of others." FSA at ¶ 14 [Doc. # 101] (emphasis added). Overshadowing any attempt to release a minor without a parent, however, is Defendants' prior disastrous policy of involuntarily separating minors from their parents, which resulted in the imposition of an injunction in *Ms. L. v. ICE*, 310 F. Supp. 3d 1133 (S.D. Cal. 2018), prohibiting the practice in its original chaotic form. *Ms. L* enjoined Defendant Department of Homeland Security ("DHS") from detaining parents of minor children "without and apart" from their children, "absent a determination that the parent is unfit or presents a danger to the child, unless the parent affirmatively, knowingly, and voluntarily declines to be reunited with the child in DHS custody." *Id.* at 1159.

The Court has given ICE ample opportunity to devise a know-your-rights protocol that would permit the type of affirmative, knowing consent envisioned in *Ms. L.* Having failed to remedy its breach of Paragraph 14, ICE's stance on indefinitely detaining minors when it chooses not to release their parent continues to breach Paragraph 14 of the Agreement, as well as Paragraph 18, requiring ICE to "make and record the prompt and continuous efforts on its part toward family reunification and the release of the minor." *Id.* at ¶ 18. Unless and until ICE makes individualized determinations regarding Class Members' flight risk and danger to self or others, records those determinations, and also takes the necessary steps that allow it to ascertain whether the sole reason for a Class Member's continued detention is the lack of parental consent to separate release, ICE remains in breach of both Paragraphs 14 and 18.[1] To the extent that *Ms. L* has enjoined ICE from separately releasing minors whose parents are subject to detention, that relieves ICE of any finding of contempt, but not a finding of contract breach if it can release minors consistent with the injunction but has simply chosen not to.

In fact, even before the specter of involuntary family separation arose, the Court ordered ICE to conduct suitability analyses of custodians for minors detained with a parent, even though ICE claimed it did not have the necessary resources. June 27, 2017 Order, 394 F. Supp. 3d at 1067–68. The Court held that "[t]his failure to assess non-parent/guardian custodians flies in the face of the *Flores* Agreement," since Paragraph 14 clearly states, in order of preference, other potential caregivers to whom Class Members may be released. *Id.* at 1067. The Court informed

---

[1] The Court notes that ICE has shown marked improvement in addressing the Court's concerns about the opaqueness of its records pertaining to reasons for Class Members' detention at FRCs. Unlike some of the prior records submitted by Ms. Dougherty, the most recent spreadsheet documenting the reasons Class Members remain in ICE FRCs permits the Court to understand what the basis of detention is and whether removal is "imminent." August 2020 ICE Juvenile Coordinator Report, Ex. A (August 2020 ICE Spreadsheet) [Doc. # 932-1]; *see* April 24, 2020 Order at 18 (holding that a final order of removal cannot be the dispositive consideration if removal is not "imminent," and there are no other indicia of a minor's flight risk) [Doc. # 784]. This allows the parties to focus on the validity of the reasons for detention, rather than the lack of a comprehensible explanation for it.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | September 18, 2020 |
|---|---|---|---|
| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 5 of 15 |

Defendants that "[e]ven if the Court takes Defendants at their word that in the majority of cases, accompanied minors should stay with a parent in detention, that still leaves the rest of the potentially significant numbers of children who could be released to a custodian but for the Defendants' inability to screen." *Id.* Accordingly, in order to comply with the FSA and the Court's prior Order, ICE should already have in place procedures for evaluating the suitability of non-parent custodians for accompanied minors and releasing the minors to those custodians, provided there is parental consent and ICE will not exercise its discretion to release the parent.

The FSA's requirements have not changed since 2018, 2017, or 1997. What has changed is the urgency of release due to the COVID-19 pandemic. Accordingly, Plaintiffs have repeatedly requested, and the Court has ordered, stricter compliance with Paragraphs 14 and 18, and ICE has complied in many respects by reducing populations at the FRCs since March and providing clearer, more detailed reporting. Still, approximately 46 minors have been detained at FRCs for more than *300 days* because ICE has openly refused to provide a procedure by which those Class Members and their parents can consent to their release. *See* Legal Services Provider *Amici* Response to August 2020 ICE Juvenile Coordinator Report at 19 [Doc. # 959]. ICE therefore remains in breach of its obligations under Paragraphs 14 and 18.[2]

### 2. Notice of rights and ICE's internal policy or instruction regarding the FSA (Paragraphs 12 and 29), and other potential breaches

Plaintiffs also argue that by failing to provide Class Members and their parents notice of any rights under the FSA, ICE is in violation of Paragraph 12.A, which requires that whenever the Government "takes a minor into custody, it shall expeditiously process the minor and *shall provide the minor with a notice of rights*, including the right to a bond redetermination hearing if applicable." FSA at ¶ 12.A (emphasis added); *see* Mot. at 17 [Doc. # 919]. ICE points out that the Court has previously observed that the "Agreement does not provide for 'advisals of rights about the *Flores* case' *per se*." Opp. at 18 [Doc. # 923] (quoting June 27, 2017 Order, 394 F. Supp. 3d at 1061). In that Order, the Court discussed the only section of the FSA raised by the parties—*i.e.*, Paragraph 24.D, which provides for three specific advisals. June 27, 2017 Order, 394 F. Supp. 3d at 1061. At that time, Paragraph 12.A was not at issue.

---

[2] It is immaterial that the Independent Monitor Andrea Ordin's 2019 reports did not specifically identify issues with individualized parole inquiries and prompt and continuous efforts at release. *See* Opp. at 4–5 [Doc. # 923]; Defs.' April 6, 2020 Supp. Opp. at 35–57 [Doc. # 746]; *see also* April 24, 2020 Order at 17-18 (finding ICE in breach of Paragraphs 14 and 18) [Doc. # 784]. Given the plethora of issues that have arisen in this case, Defendants should not take solace in the fact that the Court or the Independent Monitor have been silent about some matters raised in the Juvenile Coordinator Reports. The Court and Ms. Ordin have addressed a large constellation of issues as they are raised and framed by the parties. Neither the Court nor the Independent Monitor can be deemed to have "waived" an issue through silence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | September 18, 2020 |
|---|---|---|---|
| Title | ***Jenny L. Flores, et al. v. William P. Barr, et al.*** | Page | 6 of 15 |

Here, examining the plain language of Paragraph 12.A, the Court notes that Paragraph 12.A does not enumerate which rights must be included in a notice. Instead, it uses broad language and "includ[es]" the right to a bond redetermination hearing, as provided under Paragraph 24.A. Accordingly, Paragraph 12.A is more expansive than Paragraphs 24.C and 24.D. *Contra* Opp. at 17 (arguing that Paragraph 12.A should be read only to require the notices in Paragraphs 24.C and 24.D) [Doc. # 923]. Moreover, Paragraph 37 provides that individual Class Members may bring actions to enforce the Agreement, which presupposes that Class Members are aware of their rights under it. FSA at ¶ 37. Because the FSA "should be read to give effect to all of its provisions and to render them consistent with each other," *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995), Paragraph 12.A must be read to provide a broader notice of rights than provided for elsewhere in the FSA, and at minimum should include a notice of rights pertaining to custody and release such that Class Members may act upon them. Because ICE has not provided such a notice to Class Members, ICE is not compliant with Paragraph 12.A.

In addition, ICE does not deny its failure to provide Class Counsel each "policy or instruction issued to [Defendants'] employees regarding the implementation of this agreement" pursuant to Paragraph 29. *See* Mot., Ex. A (Schey Decl.) at ¶ 2 [Doc. # 919-1]. No party has indicated when the last policy or instruction regarding the FSA was issued to ICE employees, or if ICE has any updated policy or instruction beyond that agreed to in the FSA and attached as Exhibit 2. *See* FSA, Ex. 2 [Doc. # 101]. Accordingly, the Court finds ICE also in breach of Paragraph 29.

Finally, the Legal Services Provider *Amici* argue that ICE remains in breach of the FSA's requirement that Class Members be held in licensed, non-secure facilities. Legal Services Provider *Amici* Br. at 13–14 [Doc. # 951]. In 2015 and 2017, the Court found that the FRCs were not state-licensed or non-secure, contravening FSA Paragraphs 14 and 19. *See* June 27, 2017 Order, 394 F. Supp. 3d at 1069–70; July 24, 2015 Order, 212 F. Supp. 3d 864, 880 (C.D. Cal. 2015). The parties have not recently briefed this issue, and the Court declines to make any rulings absent further factual development. The Court will order the ICE Juvenile Coordinator to report on the status of the FRC's state licensing and why ICE has detained remaining Class Members in secure facilities in her next monthly report.[3]

---

[3] The Legal Services Provider *Amici* also argue, in their response to Ms. Dougherty's August 2020 Report, that the FRCs are not "safe and sanitary" in compliance with Paragraph 12 of the FSA due to lack of saturation testing for COVID-19, detailed policies for evaluating and protecting Class Members at heightened risk if they contract COVID-19, and potentially unsafe living arrangements for families, among other issues. Legal Services Provider *Amici* Br. at 7–12, 25 [Doc. # 959]. The Report describes the Independent Monitor Andrea Ordin and Special Expert Dr. Paul Wise's numerous interviews and data collection efforts on the safe and sanitary issue. *See* August 2020 ICE Juvenile Coordinator Report at 7–8 [Doc. # 932-1]. As far as the Court is aware, based upon its communications with Ms. Ordin and Dr. Wise, the FRCs have managed to maintain an uneasy balance in the face of community spread by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | September 18, 2020 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 7 of 15 |
|---|---|---|---|

Because ICE's breaches of the FSA justify the imposition of a remedy, the Court need not consider Plaintiffs' and Legal Services Provider *Amici*'s arguments that ICE should be held in contempt of Court Orders.

**B.     Remedy**

"Federal courts are not reduced to approving consent decrees and hoping for compliance. Once entered, that decree may be enforced." *Frew v. Hawkins*, 540 U.S. 431, 432 (2004); *Nehmer v. U.S. Dept. of Veteran Affairs*, 494 F.3d 846, 860 (9th Cir. 2007). The Court may rely on the unambiguous terms of the FSA and the Court's authority to enforce its own Orders to fashion a remedy for violations. *See Jeff D. v. Kempthorne*, 365 F.3d 844, 853 (9th Cir. 2004) ("Once the decree was entered, the district court retained jurisdiction to enforce it[.]"); *see also Jeff D. v. Otter*, 643 F.3d 278, 283–84 (9th Cir. 2011) (internal citation omitted) ("[C]onsent decrees have 'many of the attributes of ordinary contracts [and] . . . should be construed basically as contracts[.]'"). By imposing a remedy on ICE consistent with the FSA, the Court clarifies ICE's responsibilities going forward and gives the agency a workable path to compliance with Paragraphs 12, 14, and 18.

**1.   Notice of Rights**

In this case, a notice of rights under the FSA is necessary to remediate ICE's breach of Paragraph 12.A. Notice is also an essential precursor to Class Members and their parents making informed, though difficult, decisions regarding whether to consent to Class Members' FSA rights to expeditious release or stand on the *Ms. L* right to not be separated. As a practical matter, as the Court has already warned Defendants, if any Class Members and their parents seek to make such a choice, ICE must have a procedure in place to process that request, vet potential sponsors, and release the Class Member. Thus, in order for ICE to perform its obligations under the FSA, while refusing to release certain parents, ICE must provide Class Members with a clear, non-coercive notice of rights and a procedure by which Class Members and their parents can affirmatively, knowingly, and voluntarily consent to the release of a child to a vetted custodian under Paragraph 14.

As the Court referenced in its July 29, 2020 Order Denying the *Ex Parte* Application to Intervene filed by the Legal Services Provider *Amici*, there is a demonstrated need for careful and thoughtful know-your-rights protocols. Andrea Meza, an attorney for RAICES who represents

---

keeping the census low, stepping up safety compliance, and protecting Class Members from contracting COVID-19 from within the facility. If more specific evidence of violations materializes, the Court will address these concerns after the Independent Monitor files her next interim report on the conditions and COVID-19 protocols in the FRCs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | September 18, 2020 |
|---|---|---|---|
| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 8 of 15 |

families detained at Karnes FRC, previously attested that she has, on rare occasions, inquired of ICE whether a child at Karnes may be released without their detained parent. She noted that "the absence of a mechanism by which a father could allow for his child to be released to the child's step-mother was a contributing factor to the suicide of one of [her] clients, the father of a Class Member, at Karnes." Meza Decl. at ¶ 14 [Doc. # 855]. This tragic example illustrates the need for Class Members and their parents to be properly advised of Class Members' rights. The Legal Services Provider *Amici* are understandably upset that certain families may be presented with a "Hobson's choice." The harshness of the choice, however, does not mean that families should not be *informed* of its existence. A family's considerations regarding whether a 16- or 17-year old minor should be released to a suitable sponsor under Paragraph 14 of the FSA may not be the same as that of a family with a two-year old minor.

Moreover, this type of release was contemplated in the original *Flores* litigation at the time the FSA was signed. As the Ninth Circuit observed, "the Settlement does not contemplate releasing a child to a parent who remains in custody, because that would not be a 'release.' But, it makes perfect sense to require an aunt who takes custody of a child to sign an affidavit of support, whether or not the child was arrested with his mother." *Flores v. Lynch*, 828 F.3d 898, 906 (9th Cir. 2016). The Ninth Circuit further developed that point in holding that the *Flores* Class encompasses accompanied minors, noting the example raised at class certification of "a boy detained with his mother who wanted to be released to his aunt but was refused because his father 'fail[ed] to personally appear to take custody of [him].'" *Id.* at 907 (quoting Order re Class Certification at 2 [Doc. # 142-1]).

Accordingly, it is not determinative that no party has provided evidence that any Class Members and parents currently in custody would consent to the child's separate release to another family member or friend. *Cf.* Opp. at 13 [Doc. # 923]. First, it is not clear how a Class Member or an adult on behalf of a Class Member could have sought to exercise FSA rights when the families have not been informed of the existence of their FSA rights.[4] Second, by the time a parent attempts to consent to separate release of a child, ICE must have properly informed its employees on how to process that consent, fulfill ICE's FSA obligations, and avoid a repeat of the tragedy that Ms. Meza described at Karnes.

---

[4] Incredibly, ICE argues that "[n]othing prevents children in this circumstance from coming to this Court to request relief and release separately from their parents, yet none (other than class counsel) have done so." Opp. at 13 [Doc. # 923]. The barrier to any Class Member coming forward to enforce their rights is the total lack of notice regarding the FSA and its provisions, which is to be remedied by Plaintiffs' instant motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | September 18, 2020 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 9 of 15 |
|---|---|---|---|

Furthermore, all parties operate under too broad an understanding of what a waiver of rights would entail. ICE's opposition is premised on the correct understanding that the FSA does not "require" anyone to waive their rights under it. *See id.* at 4. Notification of one's rights is not tantamount to a waiver of rights. ICE is mistaken when it argues that the "converse[]" of a parent consenting to the release of his or her child is for the family to be detained indefinitely. *Id.* at 12. Rather, the converse of consent to release is merely *absence of consent* to release, in which case the FSA still applies in its entirety to the Class Member. Similarly, the Court must disabuse all parties and *Amici* of their concern that a Class Member or parent's silence somehow could be construed as a total waiver of the child's right to release.[5] If a Class Member or parent does nothing, then Defendants are still bound by the FSA, including Paragraphs 14 and 18 requiring them to "release a minor from [their] custody without unnecessary delay" and "make and record the prompt and continuous efforts on [their] part toward family reunification and the release of the minor." FSA at ¶¶ 14, 18. At most, Defendants will note that they have received no consent to a child's release. There should be no risk of a repeat of ICE's bungled attempt in May 2020 to have hurried, on-the-spot communications with mothers about the release of their children. *See* May 22, 2020 Order at 2 [Doc. # 799].

To be sure, in light of ICE's exercise of discretion or statutory mandates not to release certain adults, the ultimate result of ICE's good faith and well-ordered efforts to make individualized release inquiries for each Class Member and provide notices of rights may be that some Class Members—even some who have not been deemed a flight risk or a danger to self or others—will remain in detention due to lack of parental consent to separate release. If that is the case, the Court may accept that ICE has substantially complied with the FSA as to those Class Members. That outcome is consistent with the Court's previous observations that "'where the mother chooses to stay in the detention facility or has been deemed a flight or safety risk,'" Defendants may be justified "'as a practical matter . . . in detaining both mother and child in that case,'" but it "may be the case that 'in order to effectuate the least restrictive form of detention for the child, Defendants must follow an order of preference for the minor's release to an available adult [not in detention] under Paragraph 14 of the Agreement.'" June 27, 2017 Order, 394 F. Supp. 3d at 1067 (quoting first July 24, 2015 Order, 212 F. Supp. 3d at 875 n.5, then August 21, 2015 Order, 212 F. Supp. 3d at 913 n.5). The Court thus reiterates ICE's continuous duty under the FSA to make and note individualized inquiries into the availability of release for each Class Member.

---

[5] Waiver is defined as "'an intentional relinquishment or abandonment of a known right or privilege.'" *Barker v. Wingo*, 407 U.S. 514, 525 (1972) (citation omitted). Courts should "indulge every reasonable presumption against waiver," and "should not presume acquiescence in the loss of fundamental rights." *Id.* at 525–26 (citation and internal quotation marks omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | September 18, 2020 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 10 of 15 |
|---|---|---|---|

In light of the foregoing, the Court provisionally approves the Plaintiff's proposed Notice of Rights, subject to the Court's revisions and a further opportunity for the parties and *Amici* to meet and confer regarding those revisions and to provide the Court with their objections and comments. The Court's proposed Notice of Rights includes a summary of key FSA rights as well as a description of a parent's ability to consent to the child's release.

### 2. Updated internal policy or instruction

In the absence of an agreement between the parties, the Court does not impose any specific Release Protocol or Release Decision Worksheet, but will require ICE to update its own internal policy or instruction consistent with Paragraph 29 and Exhibit 2 of the FSA, as well as this Order. The Court prefers a more open-ended, less potentially coercive process by which a Class Member and parent can act on the Class Member's rights, provided they are informed of them. If a Class Member and parent want to consent to the child's separate release, they may confer with counsel and affirmatively communicate their consent to ICE in transactions unique to each case. If ICE fails to properly comply with its obligations under the FSA to vet potential sponsors and to effectuate a parent's consent to release a child, that may become the subject of a complaint to the Juvenile Coordinator and/or Independent Monitor, and, if not resolved, yet another motion to enforce. In that situation, the Court would have evidence from a live controversy to assess rather than theoretical combat about whether a protocol is adequate or inadequate.

There will be no "waiver by silence" or any form of time pressure for a parent to make any decision. Even in the absence of parental consent to a child's separate release, ICE must still make and record its prompt and continuous efforts toward family reunification and the release of the Class Member. Though the parties have deadlocked this summer over the families who have remained in custody for months or even over a year, ICE has demonstrated that it has released and is still releasing some detained Class Members and their parents in a timely manner. *See* August 2020 ICE Juvenile Coordinator Report at 4 [Doc. # 932-1]. There is thus no need, and there should never be any need, to give families an ultimatum to consent to a minor's release by a certain date or remain in indefinite detention.

Defendants object to Plaintiffs' suggestion that ICE's release protocol include an option for parents to designate an adult other than the vetted sponsor to travel to FRCs to transport their child to the sponsor, and that the designated adult need only undergo a background check for criminal history or outstanding arrest warrants before being approved to provide transportation. Opp. at 19 [Doc. # 923]. This issue may also be resolved on a case-by-case common sense basis. The Court is confident that the parties, the Class Member requesting release, the Class Member's parent and counsel, and the sponsor unable to travel to the FRC can work collaboratively to make

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | September 18, 2020 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 11 of 15 |
|---|---|---|---|

safe travel plans without the Court's intervention at this juncture and in accordance with Defendants' agreed-upon duty to "assist without undue delay in making transportation arrangements" and "in its discretion, provide transportation to minors" under Paragraph 26 if the FSA.[6]

Finally, due to the sensitivities of the issue, the Court reemphasizes that ICE employees should not be involved in soliciting consent to separate release from Class Members and their parents. Class Members and their parents will be provided a list of legal services providers in the local area, as required under the FSA, and will be provided a Notice of Rights that informs them of their rights and their ability to affirmatively exercise those rights. ICE's responsibility is to formulate a protocol or procedure by which it can receive requests for separate release of a Class Member, vet sponsors, and otherwise deal with the requests in a fair and prompt manner. The Court will also not approve any Release Decision Worksheet for the parties to use, although Plaintiffs and the Legal Services Provider *Amici* are welcome to develop an appropriate worksheet for their clients that does not require Court approval.

### 3. Continued compliance with the FSA

ICE must continue to provide current levels of detail regarding the reasons for Class Members' continued detention, including whether any Class Members' parents have availed themselves of the option to consent to separate release. But because the FSA does not contain parental release rights, the Court will not order ICE to record efforts to release parents under certain immigration regulations, as *Amici* and Plaintiffs request.[7] *See* Human Rights Org. *Amici* Br. at 8, 14 [Doc. # 961]; Legal Services Provider *Amici* Br. at 8, 11 [Doc. # 951]; Plaintiffs' Response to *Amici* at 3 [Doc. # 965].

In addition, as *Amici* note, the Court should not have to micromanage ICE—nor should it have to evaluate each of *Amici*'s proposed additional remedies without the parties tackling them first. *See, e.g.*, Legal Services Provider *Amici* Br. at 8 [Doc. # 951]. The parties and *Amici* may meet and confer regarding the additional remedies sought, keeping in mind that any remedies

---

[6] For example, ICE can look to ORR's protocols on transporting unaccompanied minors.

[7] *Amici* and Plaintiffs point to 8 C.F.R. section 1236.3, which provides, *inter alia*, that "simultaneous release of the juvenile and the parent, legal guardian, or adult relative shall be evaluated on a discretionary case-by-case basis." 8 C.F.R. § 1236.3. The Court previously held that the FSA contemplated the release of a family together in certain circumstances under a similar provision providing that "'[i]f a relative who is not in detention cannot be located to sponsor the minor, the minor may be released with an accompanying relative who is in detention.'" July 24, 2015 Order, 212 F. Supp. 3d at 872, *aff'd in part, rev'd in part and remanded*, 828 F.3d 898 (9th Cir. 2016) (quoting 8 C.F.R. § 212.5(a)(3) (1997)). The Court was reversed on that limited holding and need not revisit it.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | September 18, 2020 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 12 of 15 |
|---|---|---|---|

requested of the Court must fall within the scope of the FSA's terms and the Court's powers. *See* Human Rights Org. *Amici* Br. at 8 [Doc. # 961]; Legal Services Provider *Amici* Br. at 19–20 [Doc. # 951].

### III.
### CONCLUSION

The Court has considered innumerable expert opinions asserting that both detention and separation from family are harmful to the best interests of the child. *See* Human Rights Org. *Amici* Br. at 10–12 [Doc. # 961]. The Court does not disagree. Yet, circumstances have forced this Court, a reluctant broken record, to repeat yet again: ICE must abide by its obligation to release minors from its custody without unnecessary delay, with parental consent, but the Court cannot compel ICE to release parents along with Class Members. *See Flores v. Lynch*, 828 F.3d 898, 909 (9th Cir. 2016).

While certainly not ideal, providing a Notice of Rights in accordance with Paragraph 12.A to give Class Members and their detained parents the ability to consent, if they so choose, to the separate expeditious release of the child to another family member or other vetted sponsor, will help ICE to remedy its violations under Paragraph 14 and 18 and allow parents to decide what is in the best interest of their child, particularly during the ongoing pandemic. As the Court has previously noted, "[Class Members'] best interests should be paramount," and for the children's sake, the Court urges the parties to work together to finalize the language of the Notice of Rights, implement the know-your-rights procedure, and facilitate on a case-by-case basis any Class Members and their parents who seek to consent to the exercise of *Flores* release rights. July 9, 2018 Order at 7 [Doc. # 455].

In light of the foregoing, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' request for a remedy for ICE's breaches of the FSA and **ORDERS** the following:

1. Defendants shall continue to release Class Members from their custody without unnecessary delay in a manner consistent with the FSA and the Court's prior Orders, and consistent with concern for the particular vulnerability of minors, especially during the pandemic. FSA at ¶¶ 11, 14 [Doc. # 101].

2. Defendants shall disseminate a Notice of Rights to Class Members and their parents. *Id.* at ¶ 12.A. The Court will e-mail to the parties and *Amici* the Court's edits to Plaintiffs' proposed Notice of Rights. The parties and *Amici* shall meet and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | September 18, 2020 |
|---|---|---|---|
| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 13 of 15 |

confer regarding the Court's edits and may file a joint response to the proposed Notice of Rights **within 14 days** after receipt of the edits.[8]

    a. The response should include any proposed joint or separate edits to the Notice of Rights, as well as a proposed procedure for immediate dissemination.

    b. ICE shall also include in the response a copy of the updated policy or instruction regarding the FSA that it will provide to its employees, in accordance with Paragraph 29 and Exhibit 2 of the FSA, and explain how it intends to train its employees regarding its implementation.

    c. Plaintiffs and *Amici* may file their comments on ICE's updated policy or instruction **within seven days** after the filing of the joint response.

    d. Thereafter, the Court will issue a finalized version of the Notice of Rights on the docket, with instructions on its immediate dissemination.

3. The parties may meet and confer regarding the additional remedies proposed by the Legal Services Provider and Human Rights Organization *Amici* and submit a joint status report, if any, by **October 9, 2020**.

4. The Juvenile Coordinators shall file their next interim reports by **October 2, 2020**, covering the topics listed in the April 24, 2020 Order [Doc. # 784] and compliance with the Court's order regarding minors held under Title 42 authority [Doc. # 976].

    a. The ICE Juvenile Coordinator shall also provide:

        i. *Specific* explanations for the continued detention of each minor detained at an FRC beyond 20 days, which the Juvenile Coordinator will review with the Independent Monitor, Andrea Ordin, before submitting the updated report to the Court;

---

[8] In its July 29, 2020 Order, the Court suggested that a know-your-rights protocol agreed upon by the parties would be subject to class notice, objections, and Court approval of any new settlement terms. July 29, 2020 Order at 2 [Doc. # 896]. Because the remedy that the Court intends to impose is fully consistent with the FSA and does not modify it in any way, there is no need to engage the class notice procedure.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | September 18, 2020 |
|---|---|---|---|

| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 14 of 15 |
|---|---|---|---|

      ii.  Updates on the status of state licensing of each of the FRCs, in accordance with the FSA and the Court's prior Orders; and

      iii.  Updates on the implementation of the new ICE COVID-19 protocol, particularly in light of the Independent Monitor's forthcoming interim report on "safe and sanitary" conditions at the FRCs.

    b.  Plaintiffs, Defendants, and *Amici* may file responses by **October 9, 2020**, to these interim reports, after first meeting and conferring regarding areas of dispute and attempting to achieve resolution.

5.  The parties will further meet and confer on Plaintiffs' request to conduct video conference interviews with Class Members and parents to enforce Class Counsel's monitoring rights under Paragraphs 32 and 33 of the FSA. *See* Pls.' Response to August 2020 ICE Juvenile Coordinator Report at 5 [Doc. # 950].

6.  Pursuant to the Court's April 10, 2020 Order [Doc. # 768], June 26, 2020 Order [Doc. # 833], Defendants' agreement to disclose updated data to the Independent Monitor, and the August 24, 2020 Joint Status Report [Doc. # 930], the parties shall meet and confer with each other, as well as with the Independent Monitor Andrea Ordin and Special Expert Dr. Wise, **for the final time**, regarding (1) certain disclosures, including information regarding existence of COVID-19 infection among Class Members, that should be provided to minors' immigration counsel during the pandemic; and (2) the quality of the data that Defendants maintain and provide to Class Counsel pursuant to Paragraph 28A of the FSA. By no later **than October 9, 2020**, the parties shall include in their joint status report the outcome of their final efforts to meet and confer in this regard. All parties will devote sufficient attention to this matter to resolve it by stipulation or through a duly noticed motion for a specific remedy.

7.  Dr. Paul Wise and the Independent Monitor Andrea Ordin shall continue to provide enhanced monitoring of the FRCs' care of minors, and shall have the ability to (a) request and obtain copies of medical care data and policies; (b) have telephone or videoconference access to persons most knowledgeable at the FRCs with whom they can discuss the baseline of custodial medical care, health care protocols, and COVID-19 prevention practices; (c) consider protocols for identifying minors who have serious medical conditions that may make them more vulnerable to COVID-19; (d) interview minors with serious medical conditions or, as appropriate, their

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | September 18, 2020 |
|---|---|---|---|
| Title | ***Jenny L. Flores, et al. v. William P. Barr, et al.*** | Page | 15 of 15 |

parents; and (e) make such recommendations for remedial action that they deem appropriate. They shall also continue to monitor the hoteling of minors, under the authority discussed in the Court's July 25, 2020 Order. [Doc. # 887.]

    a.    The parties and *Amici* may file any response or objection within seven days of the filing of the Independent Monitor's next interim report on the conditions at FRCs.

8.    The Court shall hold a further video or telephonic status conference on **October 16, 2020 at 11:00 a.m.** to discuss the Juvenile Coordinator reports and compliance with the Court's Orders.

**IT IS SO ORDERED**.