# EXHIBIT 1

**DECLARATION OF TAYLOR LEVY**

I, Taylor Levy, hereby declare:

1. This declaration is based upon my personal knowledge, except as to those matters based on information and belief, which I believe to be true. If called to testify in this case, I would testify competently about these facts.

2. I am an attorney licensed to practice law in Texas. I became licensed in 2019. I am in good standing with the State Bar of Texas (State Bar No. 24113588). I specialize in immigration law, and I practice in El Paso, Texas. I run a private law firm called Taylor Levy Law through which I provide primarily pro bono legal services to individuals in the El Paso area.

3. Since 2009, I have worked as an attorney and advocate in various capacities for noncitizens at or near the border. Among other roles, I have worked as Legal Coordinator for Annunciation House in El Paso, Texas, where I coordinated volunteers who represent and advocate for immigrants in the El Paso area. Before I became licensed as an attorney, I worked for five years as a Department of Justice Accredited Representative representing individuals in immigration court in the El Paso, Texas area.

4. Since the Title 42 Process went into effect in March, I have been involved with over 30 cases of unaccompanied children designated under Title 42. These children have either been re-processed from Title 42 to Title 8 and transferred to ORR custody or subjected to swift expulsion.

5. I usually hear about these cases because the detained child, or a DHS officer detaining the child, calls a relative in the United States. Sometimes a consular official from the child's country of origin calls the child's relative and can inform the relative that the child is subject to swift deportation. Then the relative either reaches out to me directly or contacts a lawyer who reaches out to me because I am a well-known lawyer in the El Paso area.

6. When I first hear of a child facing expulsion, my first step is to attempt to gather basic information about the child and the child's location. In many cases, it has been extremely difficult to locate children in Department of Homeland Security ("DHS") custody. All of these cases are urgent because children may be expelled in a matter of days or may be detained in a hotel for weeks before expulsion under Title 42.

7. Unaccompanied children and their relatives are typically given very little information about what is happening to the child, including where the child is detained and when they are scheduled for deportation. Children are frequently moved from facility to facility without warning, and without being told their location. Children and their relatives have told me that these frequent transfers, without notice or explanation, cause the children to feel scared and anxious. Children have also reported feeling anxious and worried about seeing other children leaving the facilities and not

1

knowing what happened to them.

8. Children's relatives have told me that even when the child calls them, DHS officers/contractors stay on the line during the phone calls and often prevent the child from disclosing information that would indicate their current location. For example, children have been told that if they tell their relative the name of the hotel where they are staying, they will no longer be allowed to make phone calls. Children's relatives feel that DHS's surveillance of children's phone calls has caused children to feel nervous while on the phone and withhold information regarding their confinement. Families are worried their children have not felt like they could be honest with their family members about how they were feeling because they were being monitored. When I spoke to one of my clients on the phone, she told me that our conversation was not private and the contractor could hear what she was telling me.

9. In one case, an unaccompanied 17-year-old girl spent over 15 nights at a hotel before she was reprocessed and transferred to a licensed ORR placement. During her detention at the hotel, she spent most of her time watching television in her room. She was rarely allowed outside of her room, with only a few short excursions to the hotel patio. She was constantly guarded by unknown adult contractors. They watched her at all times. She told me that she felt isolated and anxious while she was detained in the hotel room. She did not have any schooling or ability to attend religious services. She memorized the name of the hotel where she was being held, but was told by officials that she could not tell her mom the name of the hotel or else she would no longer be allowed to call her. She was only allowed to talk to her mom on the phone a few minutes at a time, and it was very important to her to not say something wrong and lose the ability to speak to her mom.

10. In the majority of the cases where I have been involved, my intervention has succeeded in DHS officials reprocessing the children under Title 8 rather than Title 42, meaning that the child is transferred to ORR custody instead of being expelled or detained in a hotel.

11. In all of the cases that I have been involved with, it has been DHS—not Centers for Disease Control and Prevention ("CDC")—that has made the determinations about whether to designate the children as Title 42 or reprocess children from Title 42 to Title 8. I am not aware of any role that the CDC has played in cases involving children detained pursuant to Title 42.

I declare under the penalty of perjury under the laws of the United States and Texas that the foregoing is true and correct. Executed on September 18, 2020 in El Paso, Texas.

_____
TAYLOR LEVY

2