UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 85-4544 DMG (AGRx)** | Date | September 21, 2020 |
| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 1 of 5 |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE DEFENDANTS'** *EX PARTE* **APPLICATION TO STAY [985]**

On September 4, 2020, the Court granted Plaintiffs' Motion to Enforce the *Flores* Settlement Agreement ("Agreement" or "FSA") as to Class Members detained by the Department of Homeland Security ("DHS") under 42 U.S.C. section 265 ("Title 42"). [Doc. # 976 ("Sept. 4 Order").] The Court found that minors held by DHS pursuant to a public health order under Title 42, designed to prevent the introduction of certain persons into the United States due to the COVID-19 pandemic, are *Flores* Class Members, and holding such Class Members in unlicensed hotels violates the Agreement. *Id.* The effective date of the Sept. 4 Order was originally set for September 8, 2020, and Defendants were to stop placing minors in hotels by September 15. On September 11, Defendants petitioned the Ninth Circuit to stay the Court's Order pending appeal. 9th Cir. No. 20-55951, Doc. # 2. The Ninth Circuit denied the emergency motion without prejudice, directing Defendants to first bring their request for a stay to this Court, and extended an administrative stay of the Sept. 4 Order to September 23, 2020. 9th Cir. Doc. # 8. On September 17, Defendants filed the instant *Ex Parte* Application to Stay the Sept. 4 Order pending appeal. [Doc. # 985.] Plaintiffs oppose the Stay Application. [Doc. # 988.]

For the following reasons, Defendants' Stay Application is **DENIED**.

**I.
LEGAL STANDARD**

When determining whether to issue a stay, courts consider the following four factors: (1) whether the stay applicant has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544 DMG (AGRx)** | Date | September 21, 2020 |
|---|---|---|---|
| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 2 of 5 |

## II.
## DISCUSSION

**A.  Likelihood of Success on the Merits**

Defendants fail to show they are likely to succeed on the merits for the simple reason that their Stay Application merely recycles the same arguments they made in their Opposition to the Motion to Enforce, which the Court thoroughly addressed and refuted in its Order. *See generally* Sept. 4 Order.

In brief, Defendants point no authority to support their position that the *Flores* Agreement—a document fundamentally about the care and welfare of children—defines "legal custody" as the source of legal authority to detain the child, rather than the well-established definition under family law. *See* Sept. 4 Order at 5–6, 8–9. Nor do they provide any support for their bewildering logic that a public health law designed to prevent the introduction of persons and diseases into the United States somehow allows DHS to detain minors in hotels open to the American public but not house them in monitored, regulated, licensed facilities. *See id.* at 10–11. Or for the notion that hoteling is a lawful means of processing minors "as expeditiously as possible" when the program makes *no* good faith effort to actually place minors in licensed facilities. *See id.* at 12–13.

The only new information Defendants provide that at all speaks to the merits is additional facts relating to ICE's contract with MVM (the private contractor that runs the hoteling program) and the training of its "transportation specialists." *See* Harper Decl., Attachments A, B, and C [Doc. # 985-1 at 25–114]. But the fact that MVM personnel receive a mere two days of training, only a fraction of which are dedicated to child development and care, before being placed alone in a room with a tender age child for hours at a time reaffirms the Court's finding that hoteling is not suitable for unaccompanied minors. *See* Sept. 4 Order at 13–14. And Defendants misunderstand the September 4 Order when they assert that the Court's reasoning imposes a "system of care" requirement that is not found in the *Flores* Agreement. The Court did not demand any formal system of care beyond one that is safe and sanitary, appropriate to minors' ages and special needs, and concerned for their particular vulnerability as minors. *See id.* at 14 n.9 (citing FSA at ¶¶ 11–12.A).[1]

---

[1] Defendants do not even bother attempting to argue why they are likely to succeed on a challenge to the Court's holding that hoteling is unsafe with respect to protecting minors from COVID-19, or that it denies them adequate access to counsel. *See* Sept. 4 Order at 15–16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544 DMG (AGRx)** | Date | September 21, 2020 |
|---|---|---|---|
| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 3 of 5 |

**B.     Irreparable Harm Absent a Stay**

Defendants argue that transferring minors in Title 42 custody to ORR licensed facilities and ICE Family Residential Centers (FRCs) risks overwhelming the adjusted, pandemic-appropriate capacities of these congregate facilities. *See* Stay Application at 10–14.

In particular, Defendants maintain that although the facilities have significant capacity, the real problem lies with the intake process. Sept. 17, 2020 Sualog Decl. at ¶¶ 5–8. [Doc. # 985-1]. They claim that "under the current infection control measures, there are limits to the number of [unaccompanied minors] that ORR can safely absorb into the system at any one time," and that "the ORR system would likely come under significant stress if ORR were to begin to receive on a regular basis approximately 75 to 100 referrals of UAC per week, with approximately 30% of the UAC having tested positive or been exposed to COVID-19." *Id.* at ¶¶ 9–10; *see also* Hott Decl. at ¶¶ 6–8 [Doc. # 985-1] (similar rationale for FRCs).

But Defendants provide no basis of support for these underlying factual contentions, which appear to be highly speculative. *First*, according to data Defendants offered for the Motion to Enforce briefing, from March through July, 577 unaccompanied minors were detained in hotels under Title 42. *See* Sept. 4 Order at 3. Now Defendants purport that 75 to 100 minors *per week* would need to be placed in ORR facilities.[2] *Second*, they offer no explanation for the premise that a full *30%* of unaccompanied minors will have been "exposed" to COVID-19, such that they would require quarantine or isolation upon intake. None of Defendants' declarants are public health officials, and they provide no scientific or empirical analysis by which they reach this assumption. These conclusory assertions are insufficient to support a finding of irreparable harm. *See Doe #1 v. Trump*, 957 F.3d 1050, 1059–60 (9th Cir. 2020) ("The government cannot meet this burden by submitting conclusory factual assertions and speculative arguments that are unsupported in the record."); *Nken*, 556 U.S. at 434 ("[S]imply showing some possibility of irreparable injury fails to satisfy the second factor.").

Moreover, even if absorbing Title 42 minors into ORR facilities does in fact create a "bottleneck," *see* Sept. 17, 2020 Sualog Decl. at ¶ 8, the Sept. 4 Order expressly contemplates the possibility of brief hotel stays as "a temporary stopgap in the process of cautiously sending children

---

[2] Defendants apparently now contend that 2,200 unaccompanied minors were referred to ICE by CBP for Title 42 custody. Ortiz Decl. at ¶ 6 [Doc. # 985-1]. They provide no explanation for the discrepancy between the 577 number used just a few weeks ago and the 2,200 number deployed now. This is not the first time Defendants have offered inconsistent data. *See* Sept. 4 Order at 4 n.2. The fact that the government cannot seem to consistently keep track of how many children it has held in its custody is disturbing, to put it mildly. It is emblematic of the problem with such an opaque, unregulated, *ad hoc* program.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544 DMG (AGRx)** | Date | September 21, 2020 |
|---|---|---|---|
| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 4 of 5 |

to licensed facilities with all deliberate speed given the extenuating circumstances of the pandemic." Sept. 4 Order at 12; *see also id.* at 17 ("If other exigent circumstances arise that necessitate future hotel placements, Defendants shall immediately alert Plaintiffs and the Independent Monitor, providing good cause for why such unlicensed placements are necessary."). In short, nothing in the Court's Sept. 4 Order prevents an orderly and safe system of staged transfers that considers public health needs as well as logistical issues. Defendants' alleged harm is not irreparable when it can be avoided while still complying with the Court's Order.

C.  **Injury to Parties Caused by a Stay**

Of course, any harm to minors that may result from increased intake at ORR and FRCs must be balanced against the harm of continuing the hoteling program. It is no contest. The Court discussed in detail the danger that unlicensed, unmonitored detention in hotels poses to unaccompanied minors. *See* Sept. 4 Order at 13–16. Even in terms of the threat of COVID-19, the very reason Defendants do not want to send minors to ORR facilities, "Defendants have failed to demonstrate how hotels, which are otherwise open to the public and have unlicensed staff coming in and out, located in areas with high incidence of COVID-19, are any better for protecting public health than licensed facilities would be." Sept. 4 Order at 10. Not only are the minors and their families potentially endangered by hoteling, but so are MVM personnel, hotel staff, and other guests that stay at the hotels. Even if the infection control protocols at ORR come under some stress, or are forced to make some adjustments, the Court is confident that they would remain far safer than unregulated hotel stays for both detained minors and the general public. Moreover, there are sufficient numbers of currently under-utilized ORR facilities such that transfers can be allocated among facilities to avoid over-concentration or bottlenecking. To the extent that Defendants raise concerns with the safety risks of travel to accommodate transfers, they were already subjecting minors to significant travel under the hoteling program. *See* Levy Decl. at ¶ 7 [Doc. # 988-1] ("Children are frequently moved from facility to facility without warning, and without being told their location.").

In an effort to maintain a static population at ORR facilities and FRCs, Defendants' position amounts to leaving hundreds of minors stranded "in a legal [and public-health] no-man's land, where no enforceable standards apply." Sept. 4 Order at 17. The *Flores* Agreement does not sanction such arbitrary discrimination between its Class Members.

D.  **Public Interest**

The public has an interest in protecting the welfare of children. *Prince v. Massachusetts*, 321 U.S. 158, 165 (1944). Congress affirmed the public's interest in enforcing the *Flores*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 85-4544 DMG (AGRx)** | Date | September 21, 2020 |
| Title | *Jenny L. Flores, et al. v. William P. Barr, et al.* | Page | 5 of 5 |

Agreement when it preserved the Agreement and codified its requirement that detained unaccompanied minors be transferred to the custody of ORR. *See* 8 U.S.C. § 1232; *Flores v. Sessions*, 862 F.3d 863, 870–71, 879 (9th Cir. 2017). The public also has an interest in preventing the spread of COVID-19, and as this Court has now reiterated on multiple occasions (and as Defendants have yet to refute), placing minors in licensed, regulated facilities, with proper safety protocols, would likely do more to mitigate the spread of the virus than housing them in hotels open to the public.

### III.
### CONCLUSION

Defendants' Stay Application is **DENIED**. The Court **ORDERS** that the September 4, 2020 Order shall be effective as of **September 28, 2020**, in full, subject to the following modifications:

1. DHS shall cease placing minors at hotels immediately as of this new effective date.

2. DHS may implement *brief* hotel stays (not more than 72 hours) as necessary and in good faith to alleviate bottlenecks in the intake processes at licensed facilities. When any Class Members are transferred to hotels for this purpose, Defendants shall notify Plaintiffs' counsel and the Independent Monitor, providing the identities and number of minors subject to the hotel placements, and the locations of the hotels. These hotel placements shall be subject to Paragraphs 4–6 of the Conclusion in the Sept. 4 Order.

**IT IS SO ORDERED**.