# OCTOBER 2, 2020 ICE JUVENILE COORDINATOR REPORT

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JENNY LISETTE FLORES, *et. al.*, | ) | Case No.: CV 85-4544-DMG |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM BARR, Attorney General of the United States, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OCTOBER 2020 INTERIM REPORT
## OF JUVENILE COORDINATOR DEANE DOUGHERTY
## <u>SUBMITTED BY IMMIGRATION AND CUSTOMS ENFORCEMENT</u>

As required by the Court in its orders issued on September 4 and 18, 2020, U.S. Immigration and Customs Enforcement (ICE) Juvenile Coordinator Deane Dougherty is submitting the following interim report to provide an update on the Class Members in the FRCs over 20 days, status of implementation of COVID-19 guidances, a census of positive COVID-19 cases at the family residential centers (FRCs), the status of compliance with respect to minors held in Title 42 custody, and confirmation that ICE continues to comply with requests for information and access to residents made by Ms. Ordin and Dr. Wise.

Due to the constantly evolving nature of the COVID-19 crisis, and the frequency of custody and discharge determinations, the information in this report is current and accurate as of the time of signature, or for the reported data, as of the date or time noted in conjunction with the information provided.

I.  **Making and Recording Individualized Custody Determinations and Census of Minors at FRCs**

As of September 25, 2020, there were a total of 126 Class Members at ICE FRCs. The figures below breakdown these Class Members by age and country of origin.





ICE has been making continuous efforts to release Class Members under applicable standards throughout the course of this litigation and, where there are no impediments to removal, those that are subject to final orders of removal are repatriated in accordance with the law.  This includes the expeditious release of minors who received a positive credible fear finding by U.S. Citizenship and Immigration Services (USCIS) pursuant to a request for reconsideration, a process solely committed to and within the discretion of USCIS and with which ICE has no involvement. The graph below portrays the book-outs by the FRCs from August 18 to September 25, 2020, which includes 112 Class Members released into the interior of the United States, 11 Class Members removed from the United States, and 2 Class Members returned to their country of origin pursuant to Title 42 authorities.[1]



As of September 25, 2020, 59 Class Members have been detained at an FRC 20 days or more. Exhibit A. These individuals, and their accompanying parent(s) or legal guardian(s), may

---

[1] In the July 24, 2020, interim ICE Juvenile Coordinator Report, I reported on the status of the administrative stay issued by the Court in *D.A.M. v. Barr*, No. 20-1321 (D.D.C. filed Jul. 23, 2020).  As a further update, on September 30, 2020, the United States Court of Appeals for the District of Columbia Circuit lifted the administrative stay previously issued on September 17, 2020 and denied Plaintiffs' motion for an emergency stay.  A copy of the Court's decision is attached to this report as Exhibit B.  As of the date of signature on this report, there is no longer an administrative stay in effect, and pending any further action by the Court, ICE is re-engaging its normal removal procedures for the Plaintiffs in that case, including those currently detained in the FRCs.

be subject to the *Flores* waiver process contemplated in this Court's September 18, 2020 Order. This process has two parts that are both still in development or pending a decision or order by the Court, as follows: (1) finalizing the Notice of Rights that the government has been ordered to disseminate to Class Members and their parents and (2) finalizing an updated policy or instruction regarding the process that flows from service of the Notice of Rights where a Class Member and parent or legal guardian consent to the Class Member's separate release. I have reviewed the data provided in Exhibit A, and it has been shared with the Special Monitor, as required.  Once the Court issues "a finalized version of the Notice of Rights on the docket, with instructions on its immediate dissemination," ICE will update the specific explanations for continued detention over 20 days as outlined in paragraph 1, 4(c), and 4(d) of the Court's June 26 Order, in its interim reporting.

## II.  Status of ICE's Implementation of COVID-19 Guidances

I have confirmed that the measures described in the declarations and the Juvenile Coordinator's report, previously submitted to this Court, pertaining to the operational changes the FRCs have implemented to mitigate the introduction into, and spread of, COVID-19 are still in effect. Since the last interim report filed on August 24, 2020, ICE released an update to its Enforcement and Removal Operations Pandemic Response Requirements, which sets forth specific mandatory requirements to be adopted by all detention facilities, including the ICE FRCs. Exhibit C.  Additionally, as has been the case since the beginning of the pandemic, ICE FRCs are operating well below maximum capacity, as demonstrated in the chart below.

| Family Residential Center Occupancy 9/25/2020 | | | | | |
|---|---|---|---|---|---|
| Facility | Total # of Beds | # of Beds Occupied | % of Beds Occupied | # of Beds Not Occupied | % of Beds Not Occupied |
| Berks Family Residential Center | 96 | 20 | 21% | 76 | 79% |
| Karnes County Residential Center | 830 | 151 | 18% | 679 | 82% |
| South Texas Family Residential Center | 2,400 | 111 | 5% | 2,289 | 95% |
| **Total** | **3,326** | **282** | **8%** | **3,044** | **92%** |

### III.  Report of ICE Facilities Holding Minors and Number of COVID-19 Cases

ICE has been promptly reporting positive COVID-19 cases to the United States District Court for the District of Columbia, which is overseeing *O.M.G. v. Wolf*, and the notices of positive results are subsequently submitted to this Court. As of September 25, 2020, the BFRC has no reported COVID-19 cases by either staff or residents. The following charts describe the number of positive COVID-19 cases at the ICE FRCs as of September 25, 2020.

| COVID-19 Positive Cases at Family Residential Centers as of 9/25/2020 | | | | |
|---|---|---|---|---|
| Facilities | Minor | Adult | Staff | Total |
| Berks Family Residential Center | - | - | - | - |
| Karnes County Family Residential Center[2] | 36 | 44 | 42 | 122 |
| South Texas Family Residential Center | 1 | 3 | 37 | 41 |
| **Total** | **37** | **47** | **79** | **163** |

---

[2] The COVID-19 charts in the August 2020 interim report did not reflect *cumulative* numbers of positive COVID-19 cases at Karnes County Family Residential Center (KCFRC). That was an inadvertent oversight and the numbers in these three charts now reflect the cumulative numbers as of the date listed.

| COVID-19 Positive Cases of Residents at Family Residential Centers as of 9/25/2020 | | | |
|---|---|---|---|
| Facilities | At Intake | In General Population | Total |
| Berks Family Residential Center | - | - | - |
| Karnes County Family Residential Center | 80 | -[3] | 80 |
| South Texas Family Residential Center | 4 | - | 4 |
| Total | 84 | - | 84 |

| COVID-19 Positive Cases of Residents at Family Residential Centers as of 9/25/2020 | | | | |
|---|---|---|---|---|
| Facilities | Symptomatic | Asymptomatic | Hospitalized | Total |
| Berks Family Residential Center | - | - | - | - |
| Karnes County Family Residential Center | 3[4] | 77 | - | 80 |
| South Texas Family Residential Center | - | 4 | - | 4 |
| Total | 3 | 81 | - | 84 |

Of particular note, the increase in COVID-19 cases at KCFRC is due to new intakes entering the facility testing positive for the virus prior to their residence at KCFRC. These new families are isolated for a 14-day period prior to being released into the general population. These individuals would have normally been housed in hotels under the Title 42 program, but they are now being transferred directly into FRCs, and KCFRC is the only FRC that is currently accepting new T42 admissions. This places the facility in an unenviable situation in that, while they accept these new admissions, many are positive for COVID upon admission.  It should be noted that the

---

[3] As previously reported, there was one individual at KCFRC who tested negative at intake but who tested positive while in general population prior to a removal flight. However, that individual was promptly retested, and the results were negative.
[4] Minor symptoms were observed or reported for these three individuals. All three individuals recovered with no issues.

overall numbers of positive COVID-19 for KCFRC are not an indication of the general population's well-being.

Pursuant to section 4(b)(iv) of this Court's April 24, 2020 Order, the minors who remain housed at the South Texas Family Residential Center (STFRC) and KCFRC have not been released or transferred to non-congregate settings for two reasons: (1) because they are either in quarantine or cohorting based on CDC guidance as a result of testing positive for COVID-19 or they are a new intake and must undergo a 14-day observation period; and/or (2) because they are housed with their parent or legal guardian whose release is not appropriate and, as discussed previously, ICE will determine the minor's eligibility for release with the consent of a parent or legal guardian in accordance with any future remedy ordered by the Court.

As of September 25, 2020, Cowlitz County Juvenile Detention Center ("Cowlitz") has no reported cases of COVID-19 by residents or staff.

**IV. FRC Licensing Updates**

The Court's September 18, 2020 Order also requires "[u]pdates on the status of state licensing of each of the FRCs, in accordance with the FSA and the Court's prior Orders." The last update to state licensing efforts and status was included in my annual Juvenile Coordinator report, filed July 1, 2020.

**A.  STFRC and KCFRC**

As reported in the annual Juvenile Coordinator report filed with the Court on July 1, 2020, on November 28, 2018, the Texas Court of Appeals, Third District, at Austin, dismissed a challenge to the State of Texas's FRC Rule, concerning the licensing rules and statutes applicable to FRCs, and reinstated the regulation that codifies licensing for FRCs. *Texas Department of Family and Protective Services v. Grassroots Leadership, Inc.*, (Tex. App., Nov. 28, 2018, No.

03-18-00261-CV), 2018 WL 6187433).  In addition, on December 12, 2018, Grassroots filed a motion for rehearing, which was denied on December 14, 2018.  On January 11, 2019, Grassroots filed a motion for *en banc* reconsideration.  On December 5, 2019, the motion was denied.  On March 20, 2020, Grassroots filed a Petition for Review with the Texas Supreme Court (Sup. Ct. Tex., No. 19-0092).  On June 19, 2020, Conditional Cross-Petitions for Review were filed on behalf of Defendants.  On September 18, 2020, Grassroots filed its Response to the Cross-Petitions for Review.  The case is now pending adjudication with the Texas Supreme Court.  As reported in the annual Juvenile Coordinator report, Texas authorities have continued to inspect the facilities at STFRC and KCFRC regularly during the pendency of the litigation, which is still currently ongoing, and the facilities will continue seeking licensure when that becomes available.

### B.  BFRC

As reported in the annual Juvenile Coordinator report filed with the Court on July 1, 2020, the BFRC has been licenses as a Child Residential and Day Treatment Facility under 55 Pa. Code § 3800 since December 1, 1999.  As part of the licensing process, the BFRC obtained a Certificate of Compliance (License) permitting it to operate as a residential center.  In November 2015, the BFRC submitted an application for renewal of its License for the 2016-17 period.  Despite initially granting the BFRC's application and issuing a renewal certificate, the Pennsylvania department of Human Services (PA-DHS) issued a letter rescinding the License in November 2015, and in January 2016 more formally informed the BFRC of its decision to revoke the 2016-2017 License. In February 2016, the BFRC filed an administrative appeal of PA-DHS's decision with the Department of Human Services, Bureau of Hearings and Appeals (Bureau).  After a hearing on the appeal, the Administrative Law Judge granted the appeal and reversed the PA-DHS revocation of the License, ruling that PA-DHS' actions were arbitrary and capricious because it had previously

issued the license for 15 years and there had been no change in the operations or services at the BFRC. The PA-DHS filed an application for reconsideration with the Bureau, which was granted, and the litigation has continued. Additionally, for each year since 2016, the BFRC has applied for its annual license. The PA-DHS has not acted on any of the subsequent applications. Therefore, in each year beginning in 2017 through 2020, the BFRC has filed a Complaint in Mandamus requesting that the Commonwealth Court of Pennsylvania order PA-DHS to act on its applications. Upon filing each of the mandamus actions, PA-DHS has entered into Court approved stipulations agreeing to maintain the status quo and to allow the BFRC to continue to operate under the 2016-2017 License, pending the outcome of the underlying litigation. The BFRC's appeal of the revocation of its license and its requests for mandamus and special relief remain pending. In the interim, the BFRC is inspected by the PA-DHS every month. The BFRC and ICE continue to cooperate with the state inspectors.

## V.  Additional Policies and Practices Aimed at Identifying and Protecting Minors from COVID-19

Pursuant to section 7 of the Court's September 18, 2020 Order, I can confirm that I facilitated, and participated in, additional calls with, among others, Dr. Paul Wise and Ms. Ordin. Further, I have presented myself to be available for conference at all times, and to avail the staff of JFMRU and the FRCs as well.

## VI. Title 42 Compliance

Pursuant to section 6 of the Court's September 4, 2020 Order, ordering the government to maintain records and statistical information on minors held in Title 42 custody, to include an update regarding the number of minors held in Title 42 custody, and to monitor compliance with the Agreement with respect to minors held in Title 42 custody, I can report as follows. First, ICE has included in its monthly reporting under Paragraph 28A, shared with Plaintiffs' counsel, data

pertaining to minors who are temporarily housed pursuant to Title 42 authorities pending expulsion for the months of March 2020 through August 2020 and will continue to do so.  Second, a separate report capturing Title 42 minors temporarily housed by ICE in hotels pending expulsion (broken down by, among other things, age groups and whether accompanied by any family members) was generated and shared with the Special Monitor and Plaintiffs' counsel prior to the Court's September 4, 2020 Order. Finally, although the September 4, 2020 Order to cease placing minors in hotels by no later than September 15, 2020, subject to certain exceptions, has been temporarily stayed by this Court and the U.S. Court of Appeals for the Ninth Circuit through October 5, 2020, ICE has not temporarily housed Title 42 minors pending expulsion in hotels since September 11, 2020. As of September 30, 2020, there are three (3) Title 42 minors temporarily housed at ICE FRCs pending expulsion; two (2) at STFRC and one (1) at KCFRC. These minors are housed with their parent or legal guardian.

Signed on this 2nd day of October 2020.

Deane Dougherty
Juvenile Coordinator

# ATTACHMENT A
# TO OCTOBER 2, 2020 ICE JUVENILE COORDINATOR REPORT

| Det Location | A-Number | Last Name | First Name | Country of Citizenship Code | Book-In Date | Birth Date | Age | Age Group | Final Order Date ("as of" 9/23/20) | Case Category | Specific explanation for detention 20+ Days |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | DEM REP OF THE CONGO | 7/23/2020 | | 1 | 0 to 5 | 9/7/2020 | [8G] Expedited Removal - Credible Fear Referral | ICE has determined that the minor is a flight risk. The minor is subject to a final order of removal and there are no impediments to removal at this time. Minor is in the process of being scheduled for removal, which includes working with the consulate to secure travel documents and being tested for COVID-19 as is required by country of origin. The minor/family unit is from the Democratic Republic of Congo and flights are occuring monthly. Travel documents pending/awaiting next available flight for repatriation scheduled on ████. |
| | | | | CHILE | 3/18/2020 | | 2 | 0 to 5 | 3/15/2020 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| | | | | GUATEMALA | 10/5/2019 | | 2 | 0 to 5 | 11/14/2019 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| | | | | GUATEMALA | 4/9/2020 | | 2 | 0 to 5 | 3/26/2020 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| | | | | EL SALVADOR | 9/11/2019 | | 2 | 0 to 5 | 10/17/2019 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| | | | | EL SALVADOR | 8/29/2019 | | 3 | 0 to 5 | 9/18/2019 | [8F] Expedited Removal | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| | | | | GUATEMALA | 9/14/2019 | | 3 | 0 to 5 | 9/30/2019 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| | | | | CHILE | 3/18/2020 | | 3 | 0 to 5 | 3/14/2020 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| | | | | BRAZIL | 10/5/2019 | | 3 | 0 to 5 | 9/30/2019 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| | | | | HONDURAS | 9/14/2019 | | 3 | 0 to 5 | 9/30/2019 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| | | | | EL SALVADOR | 8/29/2019 | | 4 | 0 to 5 | 9/18/2019 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| | | | | HONDURAS | 8/22/2019 | | 4 | 0 to 5 | 9/18/2019 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| | | | | CHILE | 3/11/2020 | | 4 | 0 to 5 | 3/6/2020 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| | | | | GUATEMALA | 4/4/2020 | | 4 | 0 to 5 | 3/25/2020 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. Minor/family unit's attorney requested a second ████ on 9/22/20 ████████ and Notices to Appear on 9/24/20. The minor/family unit was released on 9/26/20. |
| | | | | GUATEMALA | 4/9/2020 | | 4 | 0 to 5 | 4/6/2020 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| | | | | HONDURAS | 9/1/2019 | | 4 | 0 to 5 | 8/30/2019 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| | | | | GUATEMALA | 4/4/2020 | | 4 | 0 to 5 | 3/23/2020 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |

| | | | | Country | | | Age | Date | Category | Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| ███ | ███ | ███ | ███ | EL SALVADOR | 8/31/2019 | 4 | 0 to 5 | 10/3/2019 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ███ | ███ | ███ | ███ | HONDURAS | 10/9/2019 | 5 | 0 to 5 | 12/3/2019 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. Minor/family unit's attorney requested a second ███ on 9/22/20, ███ and Notices to Appear on 9/24/20. The minor/family unit was released on 9/26/20. |
| ███ | ███ | ███ | ███ | HONDURAS | 8/30/2019 | 5 | 0 to 5 | 9/19/2019 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ███ | ███ | ███ | ███ | GUATEMALA | 4/4/2020 | 6 | 6 to 13 | 3/20/2020 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ███ | ███ | ███ | ███ | ECUADOR | 1/19/2020 | 6 | 6 to 13 | 2/5/2020 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ███ | ███ | ███ | ███ | GUATEMALA | 4/9/2020 | 6 | 6 to 13 | 4/6/2020 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ███ | ███ | ███ | ███ | NICARAGUA | 8/26/2020 | 6 | 6 to 13 | 2/10/2020 | [8C] Excludable / Inadmissible - Administrative Final Order Issued | ICE has determined that the minor is a flight risk. The minor is subject to a final order of removal and there are no impediments to removal at this time. Minor is in the process of being scheduled for removal, which includes working with the consulate to secure travel documents and being tested for COVID-19 as is required by country of origin. The minor/family unit is from Nicaragua and the flights are occurring bi- weekly. Minor family unit is scheduled for removal on ███, which is the next available flight. |
| ███ | ███ | ███ | ███ | GUATEMALA | 9/16/2019 | 6 | 6 to 13 | 11/4/2019 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ███ | ███ | ███ | ███ | GUATEMALA | 4/4/2020 | 6 | 6 to 13 | 3/23/2020 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ███ | ███ | ███ | ███ | HONDURAS | 8/30/2019 | 6 | 6 to 13 | 9/19/2019 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ███ | ███ | ███ | ███ | GUATEMALA | 4/9/2020 | 7 | 6 to 13 | 3/31/2020 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ███ | ███ | ███ | ███ | EL SALVADOR | 8/31/2019 | 7 | 6 to 13 | 12/12/2019 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ███ | ███ | ███ | ███ | GUATEMALA | 4/4/2020 | 7 | 6 to 13 | 3/25/2020 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. Minor/family unit's attorney requested a second ███ on 9/22/20, ███ and Notices to Appear on 9/24/20. The minor/family unit was released on 9/26/20. |
| ███ | ███ | ███ | ███ | EL SALVADOR | 8/30/2019 | 7 | 6 to 13 | 8/29/2019 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ███ | ███ | ███ | ███ | ROMANIA | 9/4/2020 | 8 | 6 to 13 | 9/17/2020 | [8G] Expedited Removal - Credible Fear Referral | ICE has determined that the minor is a flight risk. The minor is subject to a final order of removal and there are no impediments to removal at this time. Minor is in the process of being scheduled for removal, which includes working with the consulate to secure travel documents and being tested for COVID-19 as is required by country of origin. The minor/family unit is from Romania and the flights are occurring regularly. Travel documents are pending and the family unit will be scheduled for removal within 3 weeks. |
| ███ | ███ | ███ | ███ | GUATEMALA | 4/2/2020 | 8 | 6 to 13 | 3/11/2020 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ███ | ███ | ███ | ███ | EL SALVADOR | 8/29/2019 | 8 | 6 to 13 | 9/19/2019 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released. As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |

| | | Country | | | Age | | | |
|---|---|---|---|---|---|---|---|---|
| ████ | ████ | EL SALVADOR | 8/27/2019 | 8 | 6 to 13 | 9/30/2019 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him. ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ████ | ████ | GUATEMALA | 10/6/2019 | 8 | 6 to 13 | 12/4/2019 | [8F] Expedited Removal | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ████ | ████ | EL SALVADOR | 8/27/2019 | 8 | 6 to 13 | 9/18/2019 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order.  The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ████ | ████ | ECUADOR | 1/19/2020 | 8 | 6 to 13 | 2/5/2020 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order.  The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ████ | ████ | GUATEMALA | 9/30/2019 | 9 | 6 to 13 | 11/14/2019 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order.  The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ████ | ████ | EL SALVADOR | 8/27/2019 | 9 | 6 to 13 | 9/18/2019 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order.  The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ████ | ████ | NICARAGUA | 8/26/2020 | 9 | 6 to 13 | 2/10/2020 | [8C] Excludable / Inadmissible - Administrative Final Order Issued | ICE has determined that the minor is a flight risk. The minor is subject to a final order of removal and there are no impediments to removal at this time. Minor is in the process of being scheduled for removal, which includes working with the consulate to secure travel documents and being tested for COVID-19 as is required by country of origin. The family unit is from Nicaragua and the flights are occurring bi- weekly. Minor family unit is scheduled for removal on ████, which is the next available flight. |
| ████ | ████ | HONDURAS | 9/11/2019 | 10 | 6 to 13 | 10/17/2019 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order.  The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ████ | ████ | HONDURAS | 10/8/2019 | 10 | 6 to 13 | 12/3/2019 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order.  The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ████ | ████ | ECUADOR | 1/19/2020 | 11 | 6 to 13 | 2/5/2020 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order.  The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ████ | ████ | HONDURAS | 8/22/2019 | 11 | 6 to 13 | 9/12/2019 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order.  The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ████ | ████ | HONDURAS | 8/27/2019 | 11 | 6 to 13 | 8/26/2019 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order.  The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ████ | ████ | HAITI | 3/11/2020 | 11 | 6 to 13 | 3/6/2020 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order.  The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ████ | ████ | HONDURAS | 8/22/2019 | 11 | 6 to 13 | 8/20/2019 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order.  The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ████ | ████ | GUATEMALA | 4/2/2020 | 12 | 6 to 13 | 3/11/2020 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order.  The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ████ | ████ | GUATEMALA | 10/6/2019 | 12 | 6 to 13 | 11/21/2019 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order.  The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ████ | ████ | EL SALVADOR | 8/31/2019 | 13 | 6 to 13 | 10/3/2019 | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her or him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order.  The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |

| | | | | Country | Date | | Age | Age Range | Date | | Category | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ▮ | ▮ | | ▮ | NICARAGUA | 8/27/2019 | ▮ | 14 | 14 to 17 | 9/30/2019 | | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order. The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ▮ | ▮ | | ▮ | HONDURAS | 10/8/2019 | ▮ | 14 | 14 to 17 | 12/11/2019 | | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order.  The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ▮ | ▮ | | ▮ | GUATEMALA | 9/26/2019 | ▮ | 14 | 14 to 17 | 10/8/2019 | | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order.  The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ▮ | ▮ | | ▮ | GUATEMALA | 8/30/2019 | ▮ | 14 | 14 to 17 | 9/23/2019 | | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order.  The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ▮ | ▮ | | ▮ | HONDURAS | 9/10/2019 | ▮ | 14 | 14 to 17 | 9/9/2019 | | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order.  The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ▮ | ▮ | | ▮ | GUATEMALA | 4/2/2020 | ▮ | 14 | 14 to 17 | 3/11/2020 | | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order.  The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ▮ | ▮ | | ▮ | HONDURAS | 9/11/2019 | ▮ | 15 | 14 to 17 | 10/3/2019 | | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order.  The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |
| ▮ | ▮ | | ▮ | ECUADOR | 2/24/2020 | ▮ | 17 | 14 to 17 | 2/23/2020 | | [8G] Expedited Removal - Credible Fear Referral | This minor may be eligible for individual release if the parent designates a caregiver to whom the minor can be released.  As of today, a parent has not designated a caregiver or requested that the minor be released separately from her him.  ICE will determine the minor's eligibility for release with the consent of a parent or guardian in accordance with the process finalized and approved by the court as contemplated in the 09/18/20 order.  The minor has final order of removal but cannot be removed at this time because the minor/family unit is subject to an administrative stay of removal issued by the U.S. Court of Appeals for the District of Columbia Circuit on 09/17/20 in D.A.M. v. Barr. |

# ATTACHMENT B
# TO OCTOBER 2, 2020 ICE JUVENILE COORDINATOR REPORT

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**No. 20-5281**                                   **September Term, 2020**

**1:20-cv-01321-CRC**

**Filed On: September 30, 2020**

D.A.M., et al.,

        Appellants

      v.

William Pelham Barr, Attorney General of the
United States of America and Chad F. Wolf,
Acting Secretary, Department of Homeland
Security,

        Appellees

**BEFORE:**   Henderson, Tatel, and Katsas, Circuit Judges

## O R D E R

Upon consideration of the emergency motion for stay pending appeal, the response thereto, and the reply; and the administrative stay entered on September 17, 2020, it is

**ORDERED** that the administrative stay be dissolved.  It is

**FURTHER ORDERED** that the emergency motion for stay be denied.  Appellants have not satisfied the stringent requirements for a stay pending appeal.  See Nken v. Holder, 556 U.S. 418, 434 (2009); D.C. Circuit Handbook of Practice and Internal Procedures 33 (2019).  It is

**FURTHER ORDERED** that the following briefing schedule will apply in this case:

| | |
|---|---|
| Appellants' Brief | November 2, 2020 |
| Appendix | November 2, 2020 |
| Appellees' Brief | December 2, 2020 |
| Appellants' Reply Brief | December 23, 2020 |

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

**No. 20-5281**                                    **September Term, 2020**

       The Clerk is directed to schedule this case for argument on the first appropriate date following completion of briefing.  The parties will be informed later of the date of oral argument and the composition of the merits panel.

       All issues and arguments must be raised by appellants in the opening brief.  The court ordinarily will not consider issues and arguments raised for the first time in the reply brief.

       To enhance the clarity of their briefs, the parties are urged to limit the use of abbreviations, including acronyms.  While acronyms may be used for entities and statutes with widely recognized initials, briefs should not contain acronyms that are not widely known.  See D.C. Circuit Handbook of Practice and Internal Procedures 43 (2019); Notice Regarding Use of Acronyms (D.C. Cir. Jan. 26, 2010).

       Parties are strongly encouraged to hand deliver the paper copies of their briefs to the Clerk's office on the date due.  Filing by mail may delay the processing of the brief.  Additionally, counsel are reminded that if filing by mail, they must use a class of mail that is at least as expeditious as first-class mail.  See Fed. R. App. P. 25(a).  All briefs and appendices must contain the date that the case is scheduled for oral argument at the top of the cover.  See D.C. Cir. Rule 28(a)(8).

### Per Curiam

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:   /s/
      Manuel J. Castro
      Deputy Clerk

# ATTACHMENT C
# TO OCTOBER 2, 2020 ICE JUVENILE
# COORDINATOR REPORT





# ERO

# U.S. Immigration and Customs Enforcement Enforcement and Removal Operations

COVID-19 Pandemic Response Requirements



ERO COVID-19 Pandemic Response Requirements (Version 4.0, September 4, 2020)

## Table of Contents

SUMMARY OF CHANGES ..................................................................................................... 3

PURPOSE AND SCOPE ...................................................................................................... 5

INTRODUCTION .................................................................................................................. 5

OBJECTIVES........................................................................................................................ 6

COMPLIANCE MEASURES ............................................................................................... 7

CONCEPT OF OPERATIONS ............................................................................................ 8

   DEDICATED ICE DETENTION FACILITIES ................................................................. 8

   NON-DEDICATED ICE DETENTION FACILITIES ....................................................... 10

   ALL FACILITIES HOUSING ICE DETAINEES ............................................................. 12

      PREPAREDNESS ......................................................................................................... 12

      PREVENTION............................................................................................................... 17

      MANAGEMENT ........................................................................................................... 21

      TESTING ...................................................................................................................... 25

ATTACHMENTS ................................................................................................................. 27

## Summary of Changes

| Explanation of Change | Section | Page |
|---|---|---|
| • <u>Addition:</u>  Workers in critical infrastructure sectors (including correctional and detention facilities) may be permitted to work if they remain asymptomatic after a potential exposure to SARS-CoV-2, provided that worker infection prevention recommendations and controls are implemented. | Preparedness | 12 |
| • <u>Addition:</u> The Centers for Disease Control and Prevention (CDC) reports that accumulating evidence supports ending isolation and precautions for persons with COVID-19 using a symptom-based strategy, rather than a test-based strategy, so that persons who are by current evidence no longer infectious are not kept unnecessarily isolated. | Management | 23-24 |
| • <u>Addition:</u> To prevent continued transmission of the virus within a quarantine cohort, retesting those who originally tested negative every 3 to 7 days could be considered, until no new cases are identified for 14 days after the most recent positive result. The specific re-testing interval that a facility chooses could be based on several factors. | Testing | 25 |
| • <u>Addition:</u> While not mandated, the CDC recommends facilities consider a 14-day quarantine before release or transfer of asymptomatic individuals without known or suspected exposure to COVID-19. | Testing | 25-26 |

**PURPOSE AND SCOPE**

The U.S. Immigration and Customs Enforcement (ICE) Enforcement and Removal Operations (ERO) Coronavirus Disease 2019 (COVID-19) Pandemic Response Requirements (PRR) sets forth expectations and assists ICE detention facility operators in sustaining detention operations while mitigating risk to the safety and wellbeing of detainees, staff, contractors, visitors, and stakeholders due to COVID-19. The ERO PRR builds upon previously issued guidance and sets forth specific mandatory requirements to be adopted by all detention facilities, as well as recommended best practices, to ensure that detainees are appropriately housed and that available mitigation measures are implemented during this unprecedented public health crisis[1]. The ERO PRR has been developed in consultation with the Centers for Disease Control and Prevention (CDC) and is a dynamic document that will be updated as additional/revised information and best practices become available.

**INTRODUCTION**

As the CDC has explained:

> COVID-19 is a communicable disease caused by a novel (new) coronavirus, SARS- CoV-2, and was first identified as the cause of an outbreak of respiratory illness that began in Wuhan Hubei Province, People's Republic of China (China).

> COVID-19 appears to spread easily and sustainably within communities. The virus is thought to transfer primarily by person-to-person contact through respiratory droplets produced when an infected person coughs or sneezes; it may transfer through contact with surfaces or objects contaminated with these droplets. There is also evidence of asymptomatic transmission, in which an individual infected with COVID-19 is capable of spreading the virus to others before exhibiting symptoms. The ease of transmission presents a risk of a surge in hospitalizations for COVID- 19, which would reduce available hospital capacity. Such a surge has been identified as a likely contributing factor to the high mortality rate for COVID-19 cases in Italy and China.

> Symptoms include fever, cough, and shortness of breath, and typically appear two to fourteen days after exposure. Manifestations of severe disease include severe pneumonia, acute respiratory distress syndrome (ARDS), septic shock, and multi-organ failure. According to the World Health Organization, approximately 3.4

---

[1] On April 20, 2020, the U.S. District Court for the Central District of California issued a preliminary injunction requiring that ICE "issue a performance standard or a supplement to their Pandemic Response Requirements … defining the minimum acceptable detention conditions for detainees with risk factors." *Fraihat v. ICE*, --- F.Supp.3d ---, 2020 WL 1932570, *29 (C.D. Cal. Apr. 20, 2020). The ERO PRR has accordingly been updated to define the "minimum acceptable detention conditions for detainees with risk factors."

percent of reported COVID-19 cases have resulted in death globally. This
mortality rate is higher among older adults or those with compromised immune
systems. Older adults and people who have severe chronic medical conditions like
heart, lung, or kidney disease are also at higher risk for more serious COVID-19
illness. Early data suggest older people are twice as likely to have serious
COVID-19 illness.

Notice of Order Under Sections 362 and 365 of the Public Health Service Act Suspending
Introduction of Certain Persons from Countries Where a Communicable Disease Exists, 85
Fed. Reg. 17060 (Mar. 26, 2020) (internal citations omitted).

Additionally, other symptoms may include fatigue, headache, chills, muscle pain, sore
throat, new loss of taste or smell, nausea or vomiting, and diarrhea.[2] Given the seriousness
and pervasiveness of COVID-19, ICE is taking necessary and prompt measures. ICE is
providing guidance on the minimum measures required for facilities housing ICE detainees
to implement to ensure consistent practices throughout its detention operations and the
provision of medical care across the full spectrum of detention facilities to mitigate the
spread of COVID-19. The ICE detention standards applicable to all facilities housing ICE
detainees have long required that each such facility have written plans that address the
management of infectious and communicable diseases, including, but not limited to, testing,
isolation, prevention, treatment, and education. Those requirements include reporting and
collaboration with local or state health departments in accordance with state and local laws
and recommendations.[3]

The Performance-Based National Detention Standards (PBNDS) 2008 and 2011 both require
facilities to "comply with current and future plans implemented by federal, state or local
authorities addressing specific public health issues including communicable disease
reporting requirements."[4] The 2019 National Detention Standards (NDS) similarly require
"collaboration with local or state health departments in accordance with state and local laws
and recommendations." [5] The measures set forth in the ERO PRR allow ICE personnel and
detention providers to properly discharge their obligations under those standards in light of
the unique challenges posed by COVID-19.

**OBJECTIVES**

The ERO PRR is designed to establish requirements, as well as best practices, for all
detention facilities housing ICE detainees to follow during the COVID-19 pandemic.
Consistent with ICE detention standards, all facilities housing ICE detainees are required to
have a COVID-19 mitigation plan that meets the following four objectives:

---

[2] *See, e.g.,* Attachment B, Centers of Disease Control and Prevention, Symptoms of Coronavirus,
https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last visited July 19, 2020).
[3] *See, e.g.,* Attachment C, ICE National Detention Standards 2019 (NDS), Standard 4.3, Medical Care, at II.D.2 (p. 114),
https://www.ice.gov/doclib/detention-standards/2019/4_3.pdf; Attachment D, 2011 ICE Performance-Based National Detention
Standards (PBNDS), Revised 2016, Standard 4.3, Part V.C.1 (p. 261), https://www.ice.gov/doclib/detention- standards/2011/4-3.pdf;
Attachment E, 2008 ICE PBNDS, Standard 4-22, Medical Care, V.C.1 (pp. 5-6), https://www.ice.gov/doclib/dro/detention-
standards/pdf/medical_care.pdf.
[4] Performance-Based National Detention Standards (PBNDS) 2008 and 2011, Medical Care 4.3, (C.) Communicable Disease and
Infection Control, p. 261-262.
[5] The 2019 National Detention Standards (NDS), Medical Care 4.3, (II.)(D.)(2.) Infectious and Communicable Diseases, p.114.

➢ To protect employees, contractors, detainees, visitors, and stakeholders from exposure to the virus;

➢ To maintain essential functions and services at the facility throughout the pendency of the pandemic;

➢ To reduce movement and limit interaction of detainees with others outside their assigned housing units, as well as staff and others, and to promote social distancing within housing units; and

➢ To establish the means to monitor, cohort, quarantine, and isolate the sick from the well.[6]

**COMPLIANCE MEASURES**

To ensure that detention facilities comply with the detention requirements set forth in the ERO PRR, ICE will conduct bi-weekly spot checks at over 72-hour ICE detention facilities during the COVID-19 pandemic. Upon identification of a deficiency, ICE will provide written notice to the facility and allow seven business days for submission of a corrective action plan to ICE for approval. Life/safety issues identified by ICE will be corrected during the COVID-19 spot checks, if possible, or the facility will be required to submit a corrective action plan within three business days.

➢ For dedicated ICE detention facilities, which operate under Quality Assurance Surveillance Plans, ICE will issue a Contract Discrepancy Report (CDR), which may include contract sanctions, for failure to bring the facility into compliance with the minimum requirements of the ERO PRR within the ICE-approved timeframe. The CDR may become a part of the supporting documentation for contract payment deductions, fixed fee deductions, award fee nonpayment, or other contractual actions deemed necessary by the Contracting Officer. If the detention facility continues to have deficiencies despite the issuance of CDRs, ICE may seek to terminate the contract and/or decline to renew the contract.

➢ For non-dedicated ICE detention facilities that fail to meet the minimum requirements of the ERO PRR, ICE will issue a Notice of Intent indicating that the intergovernmental service agreement is in jeopardy due to non-compliance with the ERO PRR and may take appropriate action, including removing its detention population from the facility or reducing its detention population at the facility on a temporary or permanent basis, depending on the nature of the non- compliance.

---

[6] A *cohort* is a group of persons with a similar condition grouped or housed together for observation over a period of time. Isolation and quarantine are public health practices used to protect the public from exposure to individuals who have or may have a contagious disease. For purposes of this document, and as defined by the CDC, *quarantine* is the separation of a person or group of people reasonably believed to have been exposed to a communicable disease but not yet symptomatic, from others who have not been exposed, to prevent the possible spread of the communicable disease. For purposes of this document, and as defined by the CDC, *isolation* is the separation of a person or group of people known or reasonably believed to be infected with a communicable disease and potentially infectious from others to prevent the spread of the communicable disease.

**CONCEPT OF OPERATIONS**

The ERO PRR is intended for use across ICE's entire detention network, and applies to all facilities housing ICE detainees, including ICE-owned Service Processing Centers, facilities operated by private vendors, and facilities operated by local government agencies that have mixed populations of which ICE detainees comprise only a small fraction.

DEDICATED ICE DETENTION FACILITIES

All dedicated ICE detention facilities[7] must:

> ➢ Comply with the provisions of their relevant ICE contract or service agreement.

> ➢ Comply with the ICE national detention standards applicable to the facility, generally PBNDS 2011.

> ➢ Comply with the CDC's *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities.*(Attachment F).

> ➢ Follow ICE's March 27, 2020 Memorandum to Detention Wardens and Superintendents on COVID-19 Action Plan Revision 1, and subsequent updates (Attachment G).

> ➢ Report all confirmed and suspected COVID-19 cases to the local ERO Field Office Director (or designee), Field Medical Coordinator, and local health department immediately.

> ➢ Evaluate all new admissions within five days of entering ICE custody to determine whether the detainees fall within the populations identified by the CDC as potentially being at higher risk for serious illness from COVID-19 and/or the subclasses certified in *Fraihat v. ICE*, --- F. Supp. 3d ---, 2020 WL 1932570 (C.D. Cal. Apr. 20, 2020), and notify both the local ERO Field Office Director (or designee) and the Field Medical Coordinator as soon as practicable, but in no case more than twelve hours of determining whether the detainee meets the criteria. These populations and subclasses include:

> - Older Adults (55 plus);

> - People who are pregnant;

> - People of all ages with chronic health conditions, including:

---

[7] Dedicated ICE detention facilities are facilities that house only ICE detainees. Dedicated ICE detention facilities may be ICE-owned Service Processing Centers, privately owned Contract Detention Facilities, or facilities operated by state or local governments that hold no other detention populations except ICE detainees.

- o  Cancer;

- o  Chronic kidney disease;

- o  COPD (chronic obstructive pulmonary disease);

- o  Immunocompromised state (weakened immune system) from solid organ transplant);

- o  Obesity (body mass index [BMI] of 30 or higher);

- o  Serious heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies;

- o  Sickle cell disease;

- o  Type 2 diabetes mellitus;

- o  Asthma (moderate-to-severe);

- o  Cerebrovascular disease (affects blood vessels and blood supply to the brain);

- o  Cystic fibrosis;

- o  Hypertension or high blood pressure;

- o  Immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines;

- o  Neurologic conditions, such as dementia;

- o  Liver disease;

- o  Pulmonary fibrosis (having damaged or scarred lung tissues);

- o  Smoking (current and former);

- o  Thalassemia (a type of blood disorder);

- o  Type 1 diabetes mellitus.

- People of all ages who are detained with a physical or mental impairment that substantially limits one or more major life activities or who has a record of physical or mental impairment that substantially limits a major life activity.

- Severe psychiatric illness (including Psychotic Disorder, Bipolar Disorder, Schizophrenia or Schizoaffective Disorder, Major Depressive Disorder with

Psychotic Features, Dementia and/or a Neurocognitive Disorder, or Intellectual Development Disorder (moderate, severe, or profound));Individuals of all ages who are detained with a physical or mental impairment that substantially limits one or more major life activities or who has a record of physical or mental impairment that substantially limits a major life activity.

➢ Detainees, or anyone who claims on behalf of the detainee that the detainee meets the criteria or is suspected to meet the criteria, should be evaluated within five days of making the claim.

➢ Upon evaluation, both the local ERO Field Office Director (or designee) and the Field Medical Coordinator must be notified as soon as practicable, but in no case more than twelve hours after the evaluation has occurred, as to whether the detainee meets the criteria.

➢ Notification shall be made via email from the facility's Health Services Administrator (HSA) (or equivalent) and contain the following subject line for ease of identification: "Notification of COVID-19 High Risk Detainee (A-Number)." At a minimum, the HSA email message will provide the following information:

- Detainee name;

- Detention location;

- Current medical issues and medications currently prescribed;

- Facility medical Point of Contact (POC) and phone number.

---

NON-DEDICATED ICE DETENTION FACILITIES

---

All non-dedicated ICE detention facilities and local jails housing ICE detainees must:

➢ Comply with the provisions of their relevant ICE contract or service agreement.

➢ Comply with the ICE national detention standards applicable to the facility, generally PBNDS 2011.

➢ Comply with the CDC's *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*.

➢ Report all confirmed and suspected COVID-19 cases to the local ERO Field Office Director (or designee), Field Medical Coordinator, and local health department immediately.

➢ Notify both the ERO Field Office Director (or designee) and Field Medical Coordinator as soon as practicable, but in no case more than twelve hours after identifying any detainee who meets the CDC's identified populations potentially being at higher risk for serious illness from COVID-19 and/or the subclasses certified in *Fraihat v. ICE*, *supra*. These populations and subclasses include:

- People who are pregnant;

- People of all ages with chronic health conditions, including:

  o Cancer;

  o Chronic kidney disease;

  o COPD (chronic obstructive pulmonary disease);

  o Immunocompromised state (weakened immune system) from solid organ transplant;

  o Obesity (body mass index [BMI] of 30 or higher);

  o Serious heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies;

  o Sickle cell disease;

  o Type 2 diabetes mellitus;

  o Asthma (moderate-to-severe);

  o Cerebrovascular disease (affects blood vessels and blood supply to the brain);

  o Cystic fibrosis;

  o Hypertension or high blood pressure;

  o Immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines;

  o Neurologic conditions, such as dementia;

  o Liver disease;

  o Pulmonary fibrosis (having damaged or scarred lung tissues);

  o Smoking;

     o  Thalassemia (a type of blood disorder);

     o  Type 1 diabetes mellitus.

- People of all ages who are detained with a physical or mental impairment that substantially limits one or more major life activities or who has a record of physical or mental impairment that substantially limits a major life activity.

➢ Notification should be made via email from the facility's HSA (or equivalent) and should contain the following subject line for ease of identification: "Notification of COVID-19 High Risk Detainee (A-Number)." Other standardized means of communicating this information to ICE, as established by agreement between the local ERO Field Office Director (or designee) and the Warden or Superintendent, are acceptable. At a minimum the HSA communication to ICE will provide the following information:

- Detainee name;

- Detention location;

- Current medical issues and medications currently prescribed;

- Facility medical POC and phone number.

---

## ALL FACILITIES HOUSING ICE DETAINEES

---

In addition to the specific measures listed above, all detention facilities housing ICE detainees <u>must also</u> comply with the following:

**PREPAREDNESS**

Administrators should plan and prepare for COVID-19 by ensuring that all persons in the facility know the symptoms of COVID-19 and how to respond if they develop symptoms. Other essential actions include developing contingency plans for reduced workforces due to absences, coordinating with public health and correctional partners, and communicating clearly with staff and detainees about these preparations and how they may temporarily alter daily life.

➢ Develop information-sharing systems with partners.

- Identify points of contact in relevant state, local, tribal, and/or territorial public health department before cases develop.

- Communicate with other correctional and detention facilities in the same geographic area to share information including disease surveillance and absenteeism patterns among staff.

➢ Review existing pandemic, influenza, all-hazards, and disaster plans; revise such plans for COVID-19; and ensure that they meet the requirements of ICE's detention standards.

➢ Offer the seasonal influenza vaccine to all detained persons (existing populations and new admissions) and staff throughout the influenza season, where possible.

➢ Staffing:

- Review sick leave policies to ensure that staff can stay home when sick and determine which officials will have the authority to send symptomatic staff home. Staff who report for work with symptoms of COVID-19 must be sent home and advised to follow CDC-recommended steps for persons exhibiting COVID-19 symptoms.

- Management should consider requiring asymptomatic staff who have been identified as close contacts of a confirmed COVID-19 case to home quarantine to the maximum extent possible, while understanding the need to maintain adequate staffing levels of critical workers. Workers in critical infrastructure sectors (including correctional and detention facilities) may be permitted to work if they remain asymptomatic after a potential exposure to SARS-CoV-2, provided that worker infection prevention recommendations and controls are implemented, including requiring the staff member to wear a cloth face covering (unless contraindicated) at all times while in the workplace for 14 days after the last exposure (if not already wearing one due to universal use of cloth face coverings). If the exposed staff members test positive, they should follow local health department and health care provider instructions regarding home isolation.

- Staff who test positive for COVID-19 must inform their workplace and personal contacts immediately. If a staff member has a confirmed COVID-19 infection, the relevant employers will inform other staff of their possible exposure to COVID-19 in the workplace consistent with any legal limitations on the sharing of such information. Exposed employees must then self-monitor for symptoms (e.g., fever, cough, or shortness of breath).

- Identify staff whose duties would allow them to work from home in order to promote social distancing and further reduce the risk of COVID-19 transmission.

- Determine minimum levels of staff in all categories required for the facility to function safely.

- Follow the Public Health Recommendations for Community-Related Exposure.[8]

---

[8] Attachment H, Centers of Disease Control and Prevention, *Public Health Guidance for Community-Related Exposure*, https://www.cdc.gov/coronavirus/2019-ncov/php/public-health-recommendations.html (last visited August 25, 2020).

- Follow guidance from the Equal Employment Opportunity Commission, available here, when offering testing to staff. Any time a positive test result is identified, ensure that the individual is rapidly notified, connected with appropriate medical care, and advised how to self-isolate.

➢ Supplies:

- Ensure that sufficient stocks of hygiene supplies (soap, hand sanitizer, tissues); personal protective equipment (PPE) including facemasks, N95 respirators, eye protection, disposable medical gloves, and disposable gowns/one-piece coveralls; and medical supplies (consistent with the healthcare capabilities of the facility) are on hand and there is a plan in place to restock as needed if COVID-19 transmission occurs within the facility.

- Note that shortages of N95 respirators are anticipated during the COVID-19 response. Based on local and regional situational analysis of PPE supplies, face masks should be used when the supply chain of N95 respirators cannot meet the demand.

- Follow COVID-19: Optimizing Supply of PPE and Other Equipment.[9]

- Ensure that staff and detainees are trained to don, doff, and dispose of PPE they will need to use while performing duties within the scope of their responsibilities.

- Soiled PPE items should be disposed in leak-proof plastic bags that are tied at the top and not re-opened. Bags can be disposed of in the regular solid waste stream.

- Cloth face coverings should be worn by detainees and staff (when PPE supply is limited) to help slow the spread of COVID-19. Cloth face masks should:

  o Fit snugly but comfortably against the side of the face be secured with ties or ear loops where possible or securely tied;

  o Include multiple layers of fabric;

  o Allow for breathing without restriction;

  o Be able to be laundered and machine dried without damage or change to shape;

  o Be provided at no cost to detainees.

- Cloth face coverings are contraindicated for children under two years of

---

[9] Attachment I, Centers for Disease Control and Prevention, *Optimizing Supply of PPE and Other Equipment during Shortages*, https://www.cdc.gov/coronavirus/2019-ncov/hcp/ppe-strategy/   (last visited August 25, 2020).

age, as well as anyone who has trouble breathing, is unconscious, incapacitated or otherwise unable to remove the mask without assistance.

➢ Hygiene:

- Reinforce healthy hygiene practices, and provide and restock hygiene supplies throughout the facility, including in bathrooms, food preparation and dining areas, intake areas, visitor entries and exits, visitation rooms, common areas, medical, and staff-restricted areas (e.g., break rooms).

- Require all persons within the facility to cover their mouths and noses with their elbows (or ideally with a tissue) rather than with their hands when they cough or sneeze, and to throw all tissues in the trash immediately after use.

- Provide detainees and staff no-cost access to tissues and no-touch receptacles for disposal.

- Require all persons within the facility to maintain good hand hygiene by regularly washing their hands with soap and water for at least 20 seconds, especially after coughing, sneezing, or blowing their noses; after using the bathroom; before eating or preparing food; before taking medication; and after touching garbage.

- Provide detainees and staff no-cost, unlimited access to supplies for hand cleansing, including liquid or foam soap, running water, hand drying machines or disposable paper towels, and no-touch trash receptacles. If bar soap is used, ensure that it is does not irritate the skin as this would discourage frequent hand washing and ensure that individuals are not sharing bars of soap.

- Provide alcohol-based hand sanitizer with at least 60 percent alcohol where permissible based on security restrictions.

- Require all persons within the facility to avoid touching their eyes, noses, or mouths without cleaning their hands first.

- If possible, inform potential visitors, including inspectors and auditors, before they travel to the facility that they should expect to be screened for COVID-19 and will be unable to enter the facility if they do not clear the screening process or if they decline screening.

- Post signage throughout the facility reminding detained persons and staff to practice good hand hygiene and cough etiquette (printable materials for community-based settings can be found on the CDC website). Signage must be in English and Spanish, as well as any other common languages for the detainee population at the facility.

- Prohibit sharing of eating utensils, dishes, and cups.

- Prohibit non-essential personal contact such as handshakes, hugs, and high-

fives.

➢ Provide individuals about to be released from ICE custody with COVID-19 prevention information, hand hygiene supplies, and cloth face coverings.

➢ Cleaning/Disinfecting Practices:

- Adhere to CDC recommendations for cleaning and disinfection during the COVID-19 response.[10]

- Several times a day using household cleaners and Environmental Protection Agency-registered disinfectants, clean and disinfect surfaces and objects that are frequently touched, especially in common areas (e.g., doorknobs, light switches, sink handles, countertops, toilets, toilet handles, recreation equipment). The EPA's list of certified cleaning products is located here.

- Staff should clean shared equipment several times per day and on a conclusion-of-use basis (e.g., radios, service weapons, keys, handcuffs).

- Ensure that transport vehicles are thoroughly cleaned after carrying a confirmed or suspected COVID-19 case.

- Facility leadership will ensure that there is adequate oversight and supervision of all individuals responsible for cleaning and disinfecting these areas.

### *CDC Recommended Cleaning Tips*

➢ Hard (Non-porous) Surfaces:

- If surfaces are dirty, they should be cleaned using a detergent or soap and water prior to disinfection.

- For disinfection, most common EPA-registered household disinfectants should be effective.

  o A list of products that are EPA-approved for use against the virus that causes COVID-19 is available here. Follow the manufacturer's instructions for all cleaning and disinfection products for concentration, application, method, contact time, etc.

  o Additionally, diluted household bleach solutions (at least 1000 ppm sodium hypochlorite) can be used if appropriate for the surface. Follow manufacturer's instructions for application, ensuring a contact time of at least one minute and allowing proper ventilation during and after application. Check to ensure the product is not past its expiration date. Never mix household bleach with ammonia or any other cleanser.

---

[10] Attachment J, Centers for Disease Control and Prevention, *Cleaning and Disinfection for Community Facilities*, https://www.cdc.gov/coronavirus/2019-ncov/community/organizations/cleaning-disinfection.html (last visited August 25, 2020).

Unexpired household bleach will be effective against coronaviruses when properly diluted.

- ▪ Prepare a bleach solution by mixing:

  - • 5 tablespoons (1/3 cup) bleach per gallon of water; or

  - • 4 teaspoons bleach per quart of water.

➤ Soft (Porous) Surfaces:

- • For soft (porous) surfaces, such as carpeted floor, rugs, and drapes, remove visible contamination if present and clean with appropriate cleaners indicated for use on these surfaces. After cleaning:

  - o If the items can be laundered, launder items in accordance with the manufacturer's instructions using the warmest appropriate water setting for the items and then dry items completely.

  - o Otherwise, use products that are EPA-approved for use against the virus that causes COVID-19 and that are suitable for porous surfaces.[11]

➤ Electronics:

- • For electronics such as tablets, touch screens, keyboards, remote controls, and ATM machines, remove visible contamination if present.

  - o Follow the manufacturer's instructions for all cleaning and disinfection products.

  - o Consider use of wipeable covers for electronics.

  - o If no manufacturer guidance is available, consider the use of alcohol-based wipes or sprays containing at least 70 percent alcohol to disinfect touch screens. Dry surfaces thoroughly to avoid pooling of liquids.

➤ Linens, Clothing, and Other Items That Go in the Laundry:

- • In order to minimize the possibility of dispersing virus through the air, do not shake dirty laundry.

- • Wash items as appropriate in accordance with the manufacturer's instructions. If possible, launder items using the warmest appropriate water setting for the items and dry items completely. Dirty laundry that has been in contact with an ill person can be washed with other people's items.

---

[11] Attachment K, U.S. Environmental Protection Agency, *List N: Disinfectants for Use Against SARS-CoV-2*, https://www.epa.gov/pesticide-registration/list-n-disinfectants-use-against-sars-cov-2 (last visited August 25, 2020).

- Clean and disinfect hampers or other carts for transporting laundry according to guidance above for hard or soft surfaces.

- Consider establishing an on-site laundry option for staff so that they can change out of their uniform, launder them at the facility, and wear street clothes and shoes home. If on-site laundry for staff is not feasible, encourage them to change clothes before they leave the work site, and provide a location for them to do so.

## PREVENTION

Detention facilities can mitigate the introduction of COVID-19 from the community and reduce transmission if it is already inside by reinforcing good hygiene practices among incarcerated/detained persons, staff, and visitors (including increasing access to soap and paper towels), intensifying cleaning/disinfection practices, and implementing social distancing strategies. Because many individuals infected with COVID-19 do not display symptoms, the virus could be present in facilities before cases are identified. Both good hygiene practices and social distancing are critical in preventing further transmission:

➢ Perform pre-intake screening for all staff and new entrants for COVID-19 symptoms.

➢ Screening should take place before staff and new admissions enter the facility or just inside the facility, where practicable. For new admissions, this should occur before beginning the intake process, in order to identify and immediately isolate any detainee with symptoms before the individual comingles with others or is placed in the general population. This should include temperature screening of all staff and new entrants as well as a verbal symptoms check.

- Verbal screening for symptoms of COVID-19 and contact with COVID-19 cases should include the following questions based on Interim Guidance: Managing COVID-19 in Correctional/Detention Facilities:

  o Today or in the past 24 hours, have you had any of the following symptoms:

    ▪ Fever, felt feverish, or had chills?

    ▪ Cough?

    ▪ Difficulty breathing?

    ▪ Chills?

    ▪ Muscle pain?

    ▪ Sore throat?

    ▪ New loss of taste or smell?

      o   In the past fourteen days, have you had contact with a person known to be infected with COVID-19 where you were not wearing the recommended proper PPE?

- If staff have symptoms of COVID-19 (e.g., fever, cough, shortness of breath), they must be denied access to the facility.

- If any new intake has symptoms of COVID-19:

      o   Require the individual to wear a face mask;

      o   Ensure that staff interacting with the symptomatic individual wears recommended PPE;

      o   Isolate the individual and refer to healthcare staff for further evaluation;

      o   Facilities without onsite healthcare staff should contact their state, local, tribal, and/or territorial health department to coordinate effective isolation and necessary medical care;

- If an individual is a close contact of a known COVID-19 case or has traveled to an affected area, but has no COVID-19 symptoms, quarantine the individual and monitor for symptoms two times per day for fourteen days.

➢ Consider testing all newly detained persons before they join the rest of the population in the detention facility.  For further information, refer to the TESTING section below and CDC Interim Considerations for SARS-CoV-2 Testing in Correctional and Detention Facilities, available here:  https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/testing.html

➢ Visitation:

- During suspended (social) or modified (legal) visitation programs, the facilities should provide access to virtual visitation options where available. When not possible, verbally screen all visitors on entry for symptoms of COVID-19 and perform temperature checks, when possible. ICE continues to explore opportunities to enhance attorney access while legal visits are being impacted. For facilities at which immigration hearings are conducted or where detainees are otherwise held who have cases pending immigration proceedings, this may include:

      o   Requiring facilities to establish a process for detainees/attorneys to schedule appointments and facilitate the calls;

      o   Leveraging available technology (e.g., tablets, smartphones, phones, VTC) to facilitate attorney/client communication;

      o   Working with the various detention contractors and telephone service providers to ensure that all detainees receive some number of free calls

per week.

- Communicate with the public about any changes to facility operations, including visitation programs. Facilities are encouraged to prohibit or, at a minimum, significantly adopt restricted visitation programs. Facilities are required to suspend all volunteer work program (VWP) assignments for detainees assigned to food service and other VWP assignments, where applicable, that require individuals to interact with each other at distances of less than six feet. Any detainee participating in a VWP assignment is required to wear appropriate PPE for the position at all times (e.g., disposable gloves, masks, goggles). Detainees in isolation or quarantine may not be assigned to a VWP detail.

➢ Where possible, limit transfers of ICE detainees and non-ICE detained populations to and from other jurisdictions and facilities unless necessary for medical evaluation, medical isolation/quarantine, clinical care, extenuating security concerns, to facilitate release or removal, or to prevent overcrowding. When necessary to transport individuals with confirmed or suspected COVID-19, if the vehicle is not equipped with emergency medical service (EMS) features, at a minimum, drive with the windows down and ensure that the fan is set to high, in non-recirculating mode. If the vehicle has a ceiling hatch, keep it open.

➢ Consider suspending work release programs for inmates at shared facilities to reduce overall risk of introduction and transmission of COVID-19 into the facility.

➢ Require all staff (both medical and correctional) to wear PPE when encountering or interacting with any ICE detainee at a distance of less than six feet.

➢ Required PPE should always be worn by staff, even if separated by a distance of six feet or more, if the individual appears feverish or ill and/or with respiratory symptoms while interviewing, escorting, or interacting in other ways.

➢ Additional Measures to Facilitate Social Distancing:

　　o Although strict social distancing may not be possible in congregate settings such as detention facilities, all facilities housing ICE detainees should implement the following measures to the extent practicable. Efforts should be made to reduce the population to approximately 75 percent of capacity.

　　o Where detainee populations are such that cells are available, to the extent possible, house detainees in individual rooms.

　　o Recommend that detainees sharing sleeping quarters sleep "head-to-foot."

　　o Extend recreation, law library, and meal hours and stagger detainee access to the same in order to limit the number of interactions between detainees from other housing units.

      o Staff and detainees should be directed to avoid congregating in groups of
ten or more, employing social distancing strategies at all times.

      o Whenever possible, all staff and detainees should maintain a distance of
six feet from one another.

      o If practicable, beds in housing units should be rearranged to allow for six
feet of distance between the faces of detainees.

- If group activities are discontinued, it is important to identify alternative
forms of activity to support the mental health of detainees.

## MANAGEMENT

If there has been a suspected COVID-19 case inside the facility (among incarcerated/detained
persons, staff, or visitors who have recently been inside), facilities shall begin implementing
management strategies while test results are pending. Essential management strategies include
placing cases and individuals with symptoms under medical isolation, quarantining their close
contacts, and facilitating necessary medical care while observing relevant infection control and
environmental disinfection protocols and wearing recommended PPE.

*ICE Custody Review for Potentially High-Risk Detainees*

Upon being informed of a detainee who may potentially be at higher risk for serious illness from
exposure to COVID-19, ERO will review the case to determine whether continued detention is
appropriate.[12] ICE will make such custody determinations on a case-by-case basis, pursuant to the
applicable legal standards, with due consideration of the public health considerations implicated.

➢ Considerable effort should be made to quarantine all new admissions and test all
new intakes upon arrival.

➢ To do this, facilities should consider cohorting daily admissions; two days of new
admissions, or multiple days of new admissions, in designated areas prior to
placement into the general population. Given significant variations among
facilities, cohorting options and capabilities will differ across ICE's detention
network. ICE encourages all facilities to adopt the most effective cohorting
methods practicable based on the individual facility characteristics, taking into
account the number of new admissions anticipated per day.

➢ Based on the results of testing and clinical evaluation, detainees at intake should be
separated into multiple groups: Detains who tested negative and have no
symptoms, detainees who test positive but have no symptoms, and detainees who
either test positive for COVID-19 and have symptoms or are diagnosed with
COVID-19 based on symptoms.

➢ All new arrivals require COVID-19 testing within 12 hours of arrival. Collection

---

[12] Attachment L, Assistant Director Peter Berg, Enforcement and Removal Operations, *Updated Guidance: COVID-19 Detained
Docket Review* (Apr. 4, 2020).

timeframe may extend to 24 hours if facility collection logistics require additional time.

➢ Detainees pending test results who are asymptomatic should be placed in a routine intake quarantine. Detainees pending test results who are symptomatic should be placed in isolation. Detainees who test negative during the intake process will complete the routine 14-day quarantine prior to release to general population

➢ Detainee who test positive during the intake process can be released from isolation when they meet the criteria for discontinuing isolation described below using either a time-based strategy or symptom-based strategy.

➢ For suspected or confirmed COVID-19 cases:

- Isolate the individual immediately in a separate environment from other individuals. Facilities should make every possible effort to isolate persons individually. Each isolated individual should be assigned his or her own housing space and bathroom where possible. Isolating ill detainees as a group should only be practiced if there are no other available options.

- If single isolation rooms are unavailable, individuals with laboratory-confirmed COVID-19 should be isolated together as a cohort separate from other detainees, including those with pending tests. Febrile detainees who are pending testing or are waiting for test results should be isolated together as a group separate from laboratory-confirmed COVID-19 cases and other detainees. Confirmed COVID-19 cases should not be cohorted with suspected cases or case contacts.

- Housing should maintain separation of groups by common criteria (e.g., COVID-19 test results positive, febrile or symptomatic pending testing or results, asymptomatic/exposed).

- Ensure that the individual is always wearing a face mask (if it does not restrict breathing) when outside of the isolation space, and whenever another individual enters the isolation room. If wearing masks will negatively impact breathing, facilities should ensure caregivers are aware of that fact and implement restrictions on contact as appropriate during isolation (e.g., increased social distancing, PPE use by people who enter space, moving and handling people separately, increased cleaning, etc.). Masks should be changed at least daily, and when visibly soiled or wet.

- In the event that a facility requires more isolation beds for detainees, ICE must be promptly notified so that transfers to other facilities, transfers to hospitals, or releases can be coordinated immediately. Until such time as the transfer or release is arranged, the facility must be especially mindful of cases that are at higher risk of severe illness from COVID-19. Ideally, symptomatic detainees should not be isolated with other individuals. If isolating of symptomatic COVID-positive detainees as a group is unavoidable, make all possible accommodations until transfer occurs to prevent transmission of other infectious diseases to the higher-risk

individual (e.g., allocate more space for a higher-risk individual within a shared isolation room).

- Review the CDC's preferred method of medically isolating COVID-19 cases here, depending on the space available in a particular facility. In order of preference, individuals under medical isolation should be housed:

  o Separately, in single cells with solid walls (i.e., not bars) and solid doors that close fully.

  o Separately, in single cells with solid walls but without solid doors.

  o As a cohort, in a large, well-ventilated cell with solid walls and a solid door that closes fully. Employ social distancing strategies related to housing in the Prevention section above.

  o As a cohort, in a large, well-ventilated cell with solid walls but without a solid door. Employ social distancing strategies related to housing in the Prevention section above.

  o As a cohort, in single cells without solid walls or solid doors (i.e., cells enclosed entirely with bars), preferably with an empty cell between occupied cells. (Although individuals are in single cells in this scenario, the airflow between cells essentially makes it a cohort arrangement in the context of COVID-19.)

  o As a cohort, in multi-person cells without solid walls or solid doors (i.e., cells enclosed entirely with bars), preferably with an empty cell between occupied cells. Employ social distancing strategies related to housing in the Prevention section above.

- When detainees must be housed in the spaces used for administrative segregation or solitary confinement, ensure that medical isolation is *operationally* distinct, even if the same housing spaces are used for both. For example:

  o Ensure that individuals under medical isolation receive regular visits from medical staff and have access to mental health services.

  o Make efforts to provide similar access to radio, TV, reading materials, personal property, and commissary as would be available in individuals' regular housing units.

  o Consider allowing increased telephone privileges without a cost barrier to maintain mental health and connection with others while isolated.

  o Communicate regularly with isolated individuals about the duration and purpose of their medical isolation period.
  .

- **Keep the individual's movement outside the medical isolation space to an absolute minimum.**

  - Provide medical care to isolated individuals inside the medical isolation space, unless they need to be transferred to a healthcare facility. See Infection Control and Clinical Care sections for additional details.

  - Serve meals inside the medical isolation space.

  - Exclude the individual from all group activities.

  - Assign the isolated individual(s) a dedicated bathroom when possible. When a dedicated bathroom is not feasible, do not reduce access to restrooms or showers as a result. Clean and disinfect areas used by infected individuals frequently on an ongoing basis during medical isolation.

- Meals should be provided to COVID-19 cases in their isolation rooms. Isolated cases should throw disposable food service items in the trash in their isolation room. Non-disposable food service items should be handled with gloves and washed with hot water or in a dishwasher. Individuals handling used food service items must clean their hands after removing gloves.

- Laundry from a COVID-19 case can be washed with another individuals' laundry.

  - Individuals handling laundry from COVID-19 cases should wear disposable gloves, discard gloves after each use, and clean their hands after handling.

  - Do not shake dirty laundry. This will minimize the possibility of dispersing the virus through the air.

  - Launder items as appropriate in accordance with the manufacturer's instructions. If possible, launder items using the warmest appropriate water setting for the items and dry items completely.

  - Clean and disinfect clothes hampers according to guidance above for surfaces. If permissible, consider using a bag liner that either is disposable or can be laundered.

- **Ensure that the individual is wearing a cloth face covering if they must leave the medical isolation space for any reason, and whenever another individual enters.** Provide clean masks as needed. Masks should be washed routinely and changed when visibly soiled or wet.

- **Maintain isolation until all the CDC criteria have been met.** The decision to discontinue Transmission-Based Precautions should be made using a symptom-based

strategy, or a time-based strategy.[13] Detainees that meet criteria for discontinuation of transmission-based precautions can be housed in general population. The two groups defined by CDC are detainees who tested positive but did not develop symptoms of COVID-19 and detainees who tested positive and were symptomatic.

- o   Accumulating evidence supports ending isolation and precautions for persons with COVID-19 using a symptom-based strategy.  Available data indicate that persons with mild to moderate COVID-19 remain infectious no longer than 10 days after symptom onset. Persons with more severe to critical illness (who are generally considered to require hospitalization) or severe immunocompromise likely remain infectious no longer than 20 days after symptom onset. These findings strengthen the justification for relying on symptom based, rather than test-based strategy for ending isolation, so that persons who are by current evidence no longer infectious are not kept unnecessarily isolated and excluded.

- Detainees with COVID-19 (positive test result) who reported symptoms consistent with COVID-19 may discontinue isolation under the following conditions:

    - o   At least 10 days have passed since symptom onset and;

    - o   At least 24 hours have passed since resolution of fever without the use of fever-reducing medications and;

    - o   Other symptoms have improved.

    - o   A limited number of persons with severe illness may produce replication-competent virus beyond 10 days, that may warrant extending duration of isolation for up to 20 days after symptom onset. Consider consultation with infection control experts. See Discontinuation of Transmission-Based Precautions and Disposition of Patients with COVID-19 in Healthcare Settings (Interim CDC Guidance). Such patients are generally considered to have required hospitalization.

- Detainees infected with COVID-19 (positive test result) who never develop COVID-19 symptoms may discontinue isolation and other precautions 10 days after the date of their first positive RT-PCR test for SARS-CoV-2 RNA.

- Detainees who tested negative at intake and who showed no symptoms of COVID-19 should be put in routine intake quarantine for 14 days and then transferred to general population.

---

[13] *See* Attachment M, Centers for Disease Control and Prevention, *Discontinuation of Transmission-Based Precautions and Disposition of Patients with COVID-19 in Healthcare Settings (Interim Guidance)*, https://www.cdc.gov/coronavirus/2019-ncov/hcp/disposition-hospitalized-patients.html (last visited August 25, 2020).

- RT-PCR testing for detection of SARS-CoV-2 RNA for discontinuing isolation could be considered for detainees who are severely immunocompromised, in consultation with infectious disease experts.

  o For all others, a test-based strategy is no longer recommended except to discontinue isolation or other precautions earlier than would occur under the symptom-based strategy outlined above.

  o The test-based strategy for severely compromised detainees requires negative results using RT-PCR for detection of SARS-CoV-2 RNA under an FDA Emergency Use Authorization (EUA) for COVID-19 from at least two consecutive respiratory specimens collected ≥24 hours apart (total of two negative specimens) (see CDC Interim Guidelines for Collecting, Handling, and Testing Clinical Specimens from Persons for Coronavirus Disease).

  o All test results should be final before isolation is ended.

**TESTING**

➢ Consistent with CDC recommendations, facilities "considering diagnostic testing of people with possible COVID-19 should continue to work with their local and state health departments to coordinate testing through public health laboratories, or work with commercial or clinical laboratories using diagnostic tests authorized for emergency use by the U.S. Food and Drug Administration."[14] Before testing large numbers of asymptomatic individuals without known or suspected exposure, facility leadership should have a plan in place for how they will modify operations based on test results. ICE does recommend testing all new intakes upon arrival (as described above). In addition, COVID-19 testing can be utilized at any time during detention to detect new cases of COVID-19, confirm detainee diagnosis, or in conjunction with other public health actions to control outbreaks of COVID-19. CDC recommendations on planning for facility wide testing may be found here: https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/testing.html.

- CDC recommends SARS-CoV-2 testing with viral tests (i.e., nucleic acid or antigen tests) for:

  o Individuals with signs or symptoms consistent with COVID-19;

  o Asymptomatic individuals with recent known or suspected exposure to SARS-CoV-2 to control transmission;

    ▪ To prevent continued transmission of the virus within a quarantined cohort, retesting those who originally tested negative every 3 to 7 days could be considered, until no new cases are identified for 14 days after the most recent positive result. The specific re-testing

---

[14] Attachment O, Centers of Disease Control and Prevention, *Overview of Testing for SARS-CoV-2*, https://www.cdc.gov/coronavirus/2019-nCoV/hcp/clinical-criteria.html (last visited August 25, 2020).

interval that a facility chooses could be based on the stage of the ongoing outbreak, the availability of testing supplies and capacity of staff to perform repeat testing, financial resources, the capacity of contract laboratories that will be performing the tests, and the expected wait time for test results.

- o Asymptomatic individuals without known or suspected exposure to SARS-CoV-2 for early identification in special settings;

  - While not mandated, the CDC recommends facilities consider quarantine before release or transfer of asymptomatic individuals without known or suspected exposure to COVID-19 when appropriate based on detainee history.
  - Detainees who previously tested positive for COVID-19 and were medically cleared could continue to test positive for a significant period of time.

- o Individuals being tested to determine resolution of infection (i.e., test-based strategy for Discontinuation of Transmission-based Precautions, HCP Return to Work, and Discontinuation of Home Isolation);

- o Individuals being tested for purposes of public health surveillance for SARS-CoV-2.

- CDC recommends using authorized nucleic acid or antigen detection assays that have received an FDA EUA to test persons **with** symptoms when there is a concern of potential COVID-19.

  Testing is recommended for all close contacts of persons with SARS-CoV-2 infection.  In some settings, broader testing, beyond close contacts, is recommended as a part of a strategy to control transmission of SARS-CoV-2.  Expanded testing might include testing of individuals on the same unit or shift as someone with SARS-CoV-2 infection, or even testing all individuals within a shared setting (e.g., facility-wide testing). In areas where testing resources are limited, CDC has established a testing hierarchy for close contacts, which can be found at the following link: https://www.cdc.gov/coronavirus/2019-ncov/php/contact-tracing/contact-tracing-plan/contact-tracing.html

- CDC does not currently recommend using antibody testing as the sole basis for diagnosis of acute infection, and antibody tests are not authorized by FDA for such diagnostic purposes.  For the most current information on CDC recommendations for antibody testing, please go to: https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/testing.html; https://www.cdc.gov/coronavirus/2019-ncov/lab/resources/antibody-tests.html.

- For the most current CDC recommendations for viral testing and specimen collection, please go to: https://www.cdc.gov/coronavirus/2019-

ncov/community/correction-detention/testing.html;
https://www.cdc.gov/coronavirus/2019-nCoV/hcp/clinical-criteria.html.

**ATTACHMENTS**

| ATTACHMENT LETTER | DOCUMENT NAME AND CITATION |
|---|---|
| A | U.S. Immigration and Customs Enforcement, *Updated ICE statement on COVID-19* (Mar. 18, 2020), https://www.ice.gov/news/releases/updated- ice-statement-covid-19. |
| B | Centers of Disease Control and Prevention, *Symptoms of Coronavirus*, https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last visited August 28, 2020). |
| C | ICE National Detention Standards 2019, Standard 4.3, Medical Care, https://www.ice.gov/doclib/detention-standards/2019/4_3.pdf. |
| D | 2011 ICE Performance-Based National Detention Standards, Revised 2016, Standard 4.3, https://www.ice.gov/doclib/detention-standards/2011/4-3.pdf. |
| E | 2008 ICE Performance-Based National Detention Standards, Standard 4-22, Medical Care, https://www.ice.gov/doclib/dro/detention-standards/pdf/medical_care.pdf. |
| F | Centers of Disease Control and Prevention, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities* (July 22, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html  (last visited August 28, 2020). |
| G | Memorandum from Executive Associate Director Enrique Lucero, Enforcement and Removal Operations, *Memorandum on Coronavirus 2019 (COVID-19) Action Plan, Revision 1* (Mar. 27, 2020). |
| H | Centers of Disease Control and Prevention, *Public Health Guidance for Community-Related Exposure*, https://www.cdc.gov/coronavirus/2019-ncov/php/public- health-recommendations.html (last visited July 19, 2020). |
| I | Centers for Disease Control and Prevention, *Optimizing  Supply of PPE and Other Equipment during Shortages*, https://www.cdc.gov/coronavirus/2019-ncov/hcp/ppe-strategy/ (last visited August 28, 2020). |

| ATTACHMENT LETTER | DOCUMENT NAME AND CITATION |
|---|---|
| J | Centers for Disease Control and Prevention, *Cleaning and Disinfection for Community Facilities*, https://www.cdc.gov/coronavirus/2019-ncov/community/organizations/cleaning-disinfection.html (last visited August 28, 2020). |
| K | U.S. Environmental Protection Agency, *List N: Disinfectants for Use Against SARS-CoV-2*, https://www.epa.gov/pesticide-registration/list-n-disinfectants- use-against-sars-cov-2 (last visited August 28, 2020). |
| L | Assistant Director Peter Berg, Enforcement and Removal Operations, *Updated Guidance: COVID-19 Detained Docket Review* (Apr. 4, 2020). |
| M | Centers for Disease Control and Prevention, *Discontinuation of Transmission-Based Precautions and Disposition of Patients with COVID-19 in Healthcare Settings (Interim Guidance)*, https://www.cdc.gov/coronavirus/2019-ncov/hcp/disposition-hospitalized-patients.html (last visited August 28, 2020) |
| N | Centers of Disease Control and Prevention, *Interim Guidelines for Collecting, Handling, and Testing Clinical Specimens for COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/lab/guidelines-clinical-specimens.html (last visited August 28, 2020) |
| O | Centers of Disease Control and Prevention, *Overview of Testing for SARS-CoV-2*, https://www.cdc.gov/coronavirus/2019-nCoV/hcp/clinical-criteria.html (last visited August 28, 2020) |
| P | Centers of Disease Control and Prevention, *Interim Considerations for SARS-CoV-2 Testing in Correctional and Detention Facilities*, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/testing.html (last visited August 28, 2020) |