**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

OCT 4 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JENNY LISETTE FLORES, <br><br> Plaintiff-Appellee, <br><br> v. <br><br> WILLIAM P. BARR, Attorney General; CHAD F. WOLF; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; U.S. CUSTOMS AND BORDER PROTECTION, <br><br> Defendants-Appellants. | No. 20-55951 <br><br> D.C. No. 2:85-cv-04544-DMG-AGR Central District of California, Los Angeles <br><br> ORDER |

Before: W. FLETCHER, BERZON, and M. SMITH, Circuit Judges.

The district court issued two orders precluding the Department of Homeland Security ("DHS") from detaining certain minors in hotels for more than a few days in the process of expelling them from the United States. Addressing the government's emergency motion for a stay, we conclude that the government is unlikely to succeed on the merits of its appeal, as we likely do not have jurisdiction over the appeal. The government also has not established that it would be irreparably harmed if it were obliged to comply with the district court's orders while the appeal is pending. We therefore deny the government's motion for a stay.

1

## I.

In 1997, the United States entered into a settlement agreement ("the *Flores* Agreement" or "the Agreement") with a class of minors subject to detention by U.S. immigration authorities ("Plaintiffs"). *See Flores v. Barr* ("*Flores II*"), 934 F.3d 910, 912 (9th Cir. 2019). The Agreement was entered by the district court as a consent decree and remains in effect today.[1] Among other things, the Agreement provides that after the government apprehends minors, it ordinarily must transfer them to a "licensed program" within three days. Agreement ¶ 12.A. A "licensed program" refers to a "program, agency or organization that is licensed by an appropriate State agency to provide residential, group, or foster care services for dependent children." *Id.* ¶ 6.

In March 2020, the Centers for Disease Control ("CDC") issued an order temporarily suspending the "introduction . . . into the United States . . . [of] persons traveling from Canada or Mexico . . . who would otherwise be introduced into a congregate setting in a land Port of Entry (POE) or Border Patrol station at or near the United States borders with Canada and Mexico," subject to certain exceptions. 85 Fed. Reg. 17,060, 17,061 (Mar. 26, 2020). The order was issued under Title 42

---

[1] In September 2019, the district court denied the government's motion to terminate the Agreement. *Flores v. Barr*, 407 F. Supp. 3d 909 (C.D. Cal. 2019). The government's appeal of that order is pending in this Court. *Flores v. Barr*, No. 19-56326 (9th Cir.).

of the U.S. Code, which authorizes the Surgeon General to "prohibit . . . the introduction of persons and property" to protect against a "serious danger of the introduction of [any communicable] disease into the United States." 42 U.S.C. § 265. The stated purpose of the order was to "protect the public health from an increase in the serious danger of the introduction of Coronavirus Disease 2019 (COVID-19) into the land POEs, and the Border Patrol stations between POEs, at or near the United States borders with Canada and Mexico." 85 Fed. Reg. at 17,061.

The CDC order called for "the movement of all . . . aliens [covered by the order] to the country from which they entered the United States, or their country of origin . . . as rapidly as possible, with as little time spent in congregate settings as practicable under the circumstances." *Id.* at 17,067. The order requested that "DHS implement this order because CDC does not have the capability, resources, or personnel needed to do so." *Id.* The order was extended in April and May 2020 and now applies indefinitely. *See* 85 Fed. Reg. 22,424 (Apr. 22, 2020); 85 Fed. Reg. 31,503 (May 26, 2020).

In July 2020, the independent monitor appointed by the district court to monitor the implementation of the *Flores* Agreement reported to the district court that DHS was using hotels to house unaccompanied minors, as well as minors apprehended with a family member ("accompanied minors"), pending their

3

expulsion under Title 42, "routinely for multiple days." *See Flores v. Barr*, No. CV-85-4544, 2020 WL 5491445, at *2 (C.D. Cal. Sept. 4, 2020) ("Sept. 4 Order"). In August 2020, the independent monitor reported that DHS had used twenty-five hotels across three states, both in border cities (El Paso and McAllen, Texas) and interior cities (Phoenix and Houston), to house 660 minors between the ages of ten and seventeen, 577 of whom were unaccompanied. *Id.* On average, minors were housed in hotels for "just under five days," but 25 percent had been held for more than ten days, with a maximum stay of twenty-eight days. *Id.*

Plaintiffs filed a motion to enforce the *Flores* Agreement, arguing, among other things, that the hoteling program violated the Agreement's requirement that DHS ordinarily transfer minors to a licensed program if it holds them for longer than three days. Plaintiffs also asserted that minors held in hotels were being denied access to counsel in violation of the Agreement.

The district court granted Plaintiffs' motion. As relief, the court declared that the Agreement applied to minors detained under the authority of Title 42 and required the government to "comply with the Agreement with respect to such minors to the same degree as any other minors held in their custody." *Id.* at *10. Implementing that declaration, the court directed DHS to stop placing minors in hotels by September 15, 2020. *Id.* The order provided that "exceptions may be made for one to two-night stays while in transit or prior to flights." *Id.* In the event

4

of "other exigent circumstances . . . necessitat[ing] future hotel placements," the district court directed that the government "shall immediately alert Plaintiffs and the Independent Monitor, providing good cause for why such unlicensed placements are necessary." *Id.* Citing paragraph 12.A of the Agreement, the district court required DHS to transfer all minors currently held in hotels to licensed facilities "as expeditiously as possible." *Id.* The court further directed the government to permit Plaintiffs' counsel to visit any facility where minors were being held under Title 42 and to meet with any minor being so held, under paragraphs 32 and 33 of the Agreement. *Id.* at *11.

The government appealed the district court's order and filed an emergency motion in this Court seeking a stay pending appeal. The government's motion relied on evidence not presented to the district court. We denied the government's motion without prejudice, and granted a temporary administrative stay to allow the government first to seek a stay in the district court. Order, *Flores v. Barr*, No. 20-55951 (9th Cir. Sept. 16, 2020).

The district court denied the government's motion for a stay and modified its original order. The modified order required DHS to stop placing minors at hotels by September 28, 2020, with the exception that "DHS may implement *brief* hotel stays (not more than 72 hours) as necessary and in good faith to alleviate bottlenecks in the intake processes at licensed facilities." *Flores v. Barr*, No. CV-

5

85-4544, 2020 WL 5666550, at *4 (C.D. Cal. Sept. 21, 2020) ("Sept. 21 Order"). Returning to this Court, the government renewed its emergency motion for a stay pending appeal, and we granted a further temporary administrative stay through October 5, 2020.

## II.

"A party requesting a stay pending appeal 'bears the burden of showing that the circumstances justify an exercise of [judicial] discretion.'" *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 433–34 (2009)). In considering whether to exercise our discretion to grant the government's motion for a stay, "we apply the familiar standard set forth by the Supreme Court in *Nken*, namely: (1) whether the Government has made a strong showing of the likelihood of success on the merits; (2) whether the [government] will be irreparably injured absent a stay; (3) whether a stay will substantially injure other parties; and (4) where the public interest lies." *Id.* "'The first two factors . . . are the most critical.'" *Id.* (quoting *Nken*, 556 U.S. at 434). "We consider the last two factors if the first two factors are satisfied." *Id.*; *see All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (explaining, in the analogous context of a preliminary injunction, that relief "is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor" (internal quotation marks

6

omitted)).

### A.

The first *Nken* factor, whether the government has made a strong showing that it is likely to succeed on the merits of its appeal, obliges us to consider whether we are likely to have jurisdiction over the appeal. "This court has appellate jurisdiction over interlocutory district court orders 'granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions.'" *Flores II*, 934 F.3d at 914 (quoting 28 U.S.C. § 1292(a)(1)). We must determine whether, as the government contends, the district court's orders have functionally modified the *Flores* Agreement or whether, on the other hand, they simply enforce the existing consent decree.[2] *See id.* Deciding that question requires us to review the parties' arguments on the merits issues of whether the Agreement applies to minors detained under Title 42 and whether the district court's orders require the government to take actions beyond those required by the Agreement. *Cf. Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (holding that a court may address jurisdictional and substantive issues concurrently

---

[2] We reject the government's argument that we have jurisdiction under 28 U.S.C. § 1291 because the district court's "order enjoins activity taken under independent statutory authority, addressing public health rather than immigration, by the CDC Director who has nothing to do with the government's immigration operations and is not a party to the Agreement." The district court's orders do not state that the CDC Director is covered by the Agreement and do not require the CDC to do anything.

if they are "intertwined").

By its terms, the Agreement applies to "[a]ll minors who are detained in the legal custody of the INS." Agreement ¶ 10. The former "Immigration and Naturalization Service's obligations under the Agreement now apply to [DHS] and the Department of Health and Human Services" ("HHS"). *Flores II*, 934 F.3d at 912 n.2. Additionally, the Agreement applies to both unaccompanied and accompanied minors. *Flores v. Lynch* ("*Flores I*"), 828 F.3d 898, 905 (9th Cir. 2016).

The government maintains that minors held under Title 42 "are in the legal custody of the CDC" because "the source of legal authority for custody" is the CDC order, not the immigration statutes. But there is no evidence that the term "custody," as used in the *Flores* Agreement, refers to the *source* of legal authority for custody, as opposed to the entity actually exercising legal custody. The Agreement does not define "custody," so we look to the common meaning of the term, particularly in the legal context. *See Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009). The term's ordinary meaning in family law is the right to make important decisions affecting the child. *See Custody*, Black's Law Dictionary (11th ed. 2019) (defining "legal custody" in the family law context as "[t]he authority to make significant decisions on a child's behalf"); Cal. Fam. Code § 3003 (defining "legal custody" as "the right and the responsibility to make the decisions relating to

8

the health, education, and welfare of a child"); Agreement ¶¶ 12.A, 14, 15, 16, 19. DHS itself, in its recently promulgated regulations assertedly implementing the *Flores* Agreement, defines "custody" as "within the physical and legal control of an institution or person." 8 C.F.R. § 236.3(b)(4). That definition accords with the usual family law understanding of "legal custody." Like California Family Code § 3003, 8 C.F.R. § 236.3(b)(4) defines "custody" based on an institution or person's ability to physically and legally control the child. DHS's current position, focusing on the source of the legal authority for assigning custody and not on the assigned custody itself, is inconsistent with all of these definitions.

    Here, it is clear that DHS both maintains physical control and exercises decision-making authority over the minors held in hotels under Title 42. DHS apprehends the minors; DHS decides, apparently unilaterally and with no explanation or articulated standards, whether to expel them under Title 42 or to detain them under the immigration statutes; DHS decides where and for how long to hold them (the CDC order says nothing whatever about detention in hotels); and DHS provides for their physical needs, including medical care. *See* Sept. 4 Order, 2020 WL 5491445, at *4–5. Thus, the district court likely did not modify the Agreement in concluding that minors held under Title 42 are in DHS's custody for purposes of the Agreement and by so applying the Agreement to those minors.

9

The government asserted at oral argument that this Court has jurisdiction over the appeal because the district court's orders require the government to take "specific actions," not simply to comply with the Agreement. *Flores II* held that we did not have jurisdiction to review the district court's order enforcing the Agreement at issue in that case. There, we distinguished *Flores I*, in which we exercised appellate jurisdiction over the district court's order requiring the government to take "specific actions," such as releasing a minor's accompanying parent. *Flores II*, 934 F.3d at 914 n.5. In *Flores I*, however, the district court's order required the government to take actions that the Agreement did *not* require (i.e., releasing adults along with their children). *See Flores I*, 828 F.3d at 908. The order thus modified the Agreement, and provided a basis for concluding, as the opinion did without explanation, that there was jurisdiction under 28 U.S.C. § 1292(a). *Id.* at 905.

Here, in contrast, as in *Flores II*, the district court just directed compliance with the Agreement, specifying in its September 4 order the paragraph of the Agreement being implemented by each directive: DHS must ordinarily transfer minors held for longer than three days to a licensed facility, as required by paragraph 12.A of the Agreement, *see* Sept. 4 Order, 2020 WL 5491445, at *10; Sept. 21 Order, 2020 WL 5666550, at *4; DHS must allow plaintiffs' counsel to visit facilities where minors are held and to meet with minors, as required by

10

paragraphs 32 and 33 of the Agreement, *see* Sept. 4 Order, 2020 WL 5491445, at *11; the government's Juvenile Coordinators must maintain records on minors and monitor compliance with the Agreement, as required by paragraphs 28A and 29 of the Agreement, *see id.*; and the independent monitor and special expert may conduct investigations under the authority already granted by the district court's October 5, 2018 order, *see id.* The deadlines in the orders assure compliance with the Agreement by a date certain, but they add no substantive requirement. Each of the actions ordered by the district court likely effectuates, rather than modifies, the Agreement.

The government points out that paragraph 12.A of the Agreement provides an exception from the three-day transfer rule "in the event of an emergency." Agreement ¶ 12.A(3). The Agreement defines an "emergency" as "any act or event that prevents the placement of minors . . . within the time frame provided," including "medical emergencies (e.g., a chicken pox epidemic among a group of minors)." *Id.* ¶ 12.B. In the event of an emergency, DHS is required to place minors in a licensed program "as expeditiously as possible." *Id.* ¶ 12.A(3). The government contends that the emergency exception applies here, making the district court's "application of a strict three-day transfer rule . . . incorrect."

The district court's orders in fact are not strict. The original order provides the government with flexibility to address "exigent circumstances that necessitate

11

future hotel placements." Sept. 4 Order, 2020 WL 5491445, at *10. And the amended order permits three-day hotel stays for the express purpose of allowing the government to "alleviate bottlenecks in the intake processes at licensed facilities." Sept. 21 Order, 2020 WL 5666550, at *4. Nothing in the present record establishes that the COVID-19 pandemic prevents the government from placing minors in licensed programs within three days. As addressed further below, the capacity of the government's shelters for unaccompanied minors—10,000 vacant beds as of August 22, 2020—appears more than adequate to accommodate the number of unaccompanied minors who need licensed placements, taking COVID-19 safety protocols into account. *See* Sept. 4 Order, 2020 WL 5491445, at *8.

The government has not shown that the district court's orders require it to take actions not required by the Agreement. We therefore conclude that we likely do not have jurisdiction over the appeal, and that for that reason, the government has not shown a strong likelihood of success on the merits.

**B.**

Even where there has not been a showing of a strong likelihood of success on the merits, relief may be appropriate if the party seeking it demonstrates that "serious questions going to the merits were raised and the balance of hardships tips sharply in the [party's] favor." *All. for the Wild Rockies*, 632 F.3d at 1134–35. Although we doubt that the government has satisfied even the "serious questions"

standard here, we nonetheless consider whether the government has shown that it will be irreparably injured absent a stay. It has not.

The government asserts that complying with the district court's orders while this appeal is pending would cause irreparable harm by "increas[ing] the risk of COVID-19 exposure in U.S. Border Patrol facilities, [Immigration and Customs Enforcement ('ICE')] family residential centers, and [Office of Refugee Resettlement ('ORR')] shelters." The government submitted a declaration from a Border Patrol official "anticipat[ing] that [the Border Patrol] may need to refer approximately 60-140 additional single minors to [licensed programs under the authority of ORR] per week" as a result of the district court's September 4 order. The declaration does not provide a basis for the 60 to 140 estimate and, like all of the government's declarations, it predates the district court's September 21 order, which modified the original order to allow the government to hold minors in hotels for up to three days.

The independent monitor's August 2020 report indicated that 25 percent of minors housed in hotels from March 24, 2020, to July 31, 2020, were held for three days or less. The independent monitor also reported that a total of 577 unaccompanied minors were held in hotels during that time period. If 75 percent of those minors had been referred to ORR, an average of 24 minors would have been referred each week. Even assuming, as the government's declarations suggest, that

13

apprehensions have increased, the government does not explain how it has determined that 60 to 140 unaccompanied minors are likely to be referred to ORR each week instead of being held in hotels. That estimate is even more inexplicable given the assertion of another government declarant that, as of September 17, 2020, "no minors are being held in hotels as part of the Title 42 program."

The government also submitted a declaration from an ORR official stating that "ORR is already receiving approximately 105 referrals a week," and, in light of the agency's need to implement COVID-19 safety protocols, the ORR system "is already at its functional intake capacity." But the government has not established that the additional referrals would actually overwhelm the ORR system. The same ORR official determined in March 2020, when the system was operating at 30 percent capacity overall, that the population of minors was sufficiently low to allow ORR to implement COVID-19 safety protocols effectively. She now urges us not to rely on that determination and points out that the population was "practically static" at that time, so the system's intake capacity was not burdened. Since March, however, the population of minors in ORR care has dropped tenfold; as of August 24, 2020, the system was operating at 3 percent capacity, with 10,000 vacant beds. *See* Sept. 4 Order, 2020 WL 5491445, at *8. The government has not satisfactorily explained why ORR's largely empty shelters are not capable of absorbing even as many as 140 additional minors a week for

14

short-term stays before those minors are expelled under Title 42.

Nor has the government offered testimony from any public health official explaining why holding minors in hotels, which are open to the public, presents less risk of COVID-19 exposure and spread, both to the minors and to the public, than holding them in licensed facilities. Finally, if any of the problems prophesied by the government show signs of materializing, the district court's orders give the government the option of "alert[ing] Plaintiffs and the Independent Monitor" that "exigent circumstances . . . necessitate . . . hotel placements" and "providing good cause for why such unlicensed placements are necessary." Sept. 4 Order, 2020 WL 5491445, at *10.

The government has not established that irreparable harm will result if the district court's orders take effect while this appeal is pending.

### III.

Having concluded that the government is unlikely to succeed on the merits of its appeal and that it has not established a likelihood of irreparable injury, we deny the motion for a stay pending appeal without reaching the last two *Nken* factors. *Doe #1*, 957 F.3d at 1058.

Because the issues on appeal are well developed in the parties' briefing of the government's emergency motion and the present panel will decide the merits of this appeal, the parties are not required to file further briefs in this case. Any party

wishing to file a nonrepetitive brief addressing points not already discussed in the stay briefing may do so on the schedule previously established.

The emergency motion for a stay pending appeal is DENIED.