CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Peter A. Schey (Cal. Bar No. 58232)
Carlos Holguín (Cal. Bar No. 90754)
256 South Occidental Boulevard
Los Angeles, CA  90057
Telephone: (213) 388-8693
Facsimile: (213) 386-9484
Email:pschey@centerforhumanrights.org
        crholguin@centerforhumanrights.org
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY LISETTE FLORES; *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM P. BARR, Attorney General of the United States; *et al.*, <br><br> Defendants. | Case No. CV 85-4544-DMG <br><br> **PLAINTIFFS' OPPOSITION TO MOTION TO LIFT RESTRICTIONS IN PARAGRAPH 4.E OF THE JUNE 26, 2020 ORDER, ECF NO. 833** <br><br> Requested Hearing: November 13, 2020 9:30 AM <br><br> [HON. DOLLY M. GEE] |

/ / /

*Plaintiffs' counsel continued*:

USF SCHOOL OF LAW IMMIGRATION CLINIC
Bill Ong Hing (Cal. Bar No. 61513)
2130 Fulton Street
San Francisco, CA 94117-1080
Telephone: (415) 422-4475
Email: bhing@usfca.edu

LA RAZA CENTRO LEGAL, INC.
Stephen Rosenbaum (Cal. Bar No. 98634)
474 Valencia Street, #295
San Francisco, CA 94103
Telephone: (415) 575-3500
Email: srosenbaum@law.berkeley.edu

/ / /

## I.  INTRODUCTION

In its Order Re Updated Juvenile Coordinator Reports [Doc # 833] filed June 26, 2020 ("June 26, 2020, Order"), the Court ordered that "None of these minors [B.B.B., A.F.P.P., and K.J.A.B ] who age out shall be sent to an adult detention facility pending resolution of [the] inquiry" regarding ICE's compliance with the FSA at the Cowlitz County Juvenile Detention Center ("Cowlitz") and Northern Oregon Regional Corrections ("NORCOR") detention facilities.

Pursuant to the Court's June 26, 2020, Order, on July 24, 2020, the ICE Juvenile Coordinator filed her Interim Report ("ICE Report") [Doc. # 882-1] providing background information on the three class members detained at Cowlitz and NORCOR.[1]

On October 16, 2020, Defendants filed their Motion seeking to vacate Paragraph 4e of the Court's June 26, 2020, Order.

At the October 23, 2020, Status Conference, the Court pointed out to Defendants that paragraph 4e of its June 26, 2020, Order was only intended to prevent the transfer of Class Members B.B.B., A.F.P.P., and K.J.A.B, not all Class Members who may be detained by Defendants in secure facilities, and asked Defendants to reconsider their motion which appears to interpret the Court's June 26, 2020, Order as applying to all Class Members detained in secure facilities. Defendants' counsel stated that Defendants would consider the Court's clarification of the scope of the June 26, 2020, Order.

---

1 The ICE Report purports to provide accurate background information on B.B.B.. ICE Report at 11-12. B.B.B. has been detained by ICE since October 18, 2018. *Id*. On December 18, 2018, an immigration judge sustained detention with no bond, finding he is a danger to the community. *Id*.  A juvenile delinquency adjudication in Maryland on January 16, 2018 found B.B.B. guilty of assault and wearing/carrying a weapon with intent to injure, though as discussed *infra*, Plaintiffs are informed and believe the weapon was never used to injure the victim. *Id*.

The Court's Order Re October 23, 2020 Status Conference ("October 23, 2020, Order")[Doc. # 1014], filed October 26,2020, states in relevant part: "The parties … shall meet and confer regarding the need for Defendants' Motion to Lift Restriction in Paragraph 4.e of the June 26, 2020 Order [Doc. # 1006] in light of the Court's statements at the status conference. The parties shall provide an update on these discussions in a Joint Status Report to be filed by November 23, 2020." *Id*.

## II.     ARGUMENT

Defendants argue that "[t]here is no pending motion regarding conditions at Cowlitz or NORCOR …" Motion at 2.[2] Defendants argue that "[i]n any event, once a class member ages out, he or she is no longer a class member and his or her custody is no longer governed by the Agreement. Therefore, this Court's continued restrictions on that custody are not appropriate." *Id*. at 3 and 8. At bottom, Defendants argue that Class Member B.B.B. is not eligible for release under the FSA because he is "a flight risk, and/or [is detained] to ensure the safety of others." *Id*. at 8.

Because only Class Member BBB is close to aging out, this opposition focuses on whether the Court's June 26, 2020, Order, should be vacated as it pertains to Class Member BBB.

Defendants point out that "to the extent any minor in a juvenile detention facility wishes to challenge his or her custody, he or she may request a bond hearing before an immigration judge." Motion at 8. Class Member B.B.B. filed a Motion for Bond Redetermination in the Portland Immigration Court on October 2, 2020. *See* Declaration of Paloma Norris-York filed herewith as Exhibit 1 at ¶ 8.

On October 29, 2020, counsel for Class Member B.B.B. received the immigration judge's decision denying a hearing and any assessment of

---

2 Citations to the Motion are to the page numbers of the filed document appearing at the top of each page of the motion.

2

dangerousness or flight risk. *Id*.³ Class Member BBB has thirty days to appeal the Immigration Judge's refusal to conduct a bond hearing to the Board of Immigration Appeals, and intends to do so. *Id*.

Defendants obviously know who BBB's mother is and how they may contact her. She declares that ICE has not contacted her either to explain her son's rights under the FSA or to assess her willingness and ability to care for and supervise BBB and insure his presence at all future proceedings. Norris-York Declaration at ¶ 7; Declaration of BBB's mother Exhibit B to Norris-York Declaration. It also does not appear that ICE has inquired into the suitability of BBB's adult brother or an unrelated Washington resident who has offered to serve as a sponsor for BBB. *Id*.; Declaration of BBB'S brother, Exhibit C to Norris-York Declaration.

Nor do Defendants allege that they provided BBB or his mother with a notice of BBB's FSA rights.

Nor does it appear that Defendants have conducted any reasonably current, objective, and accurate assessment of BBB's fight risk status or dangerousness. *See* Norris-York Declaration at ¶¶ 14-24.

The FSA includes several provisions relevant to Defendants' treatment of Class Member BBB.

---

3 The IJ concluded that BBB was not entitled to a new bond hearing because he had not shown any change of circumstances since his 2018 bond hearing. BBB and his counsel believe the IJ erroneously failed to assess changed circumstances and that both the 2018 bond decision and the IJ's adoption of the 2018 findings were erroneous inasmuch as they vastly exaggerate BBB's conduct as set forth in the record of adjudication in the juvenile court in which he was only adjudicated responsible for an assault and carrying though never using a weapon with intent to use it. In fact, during the altercation between 14 year old boys, the weapon was never used to injure the victim, who shorly before the incident, had beaten BBB in a gang-related disputed with a baseball bat, requiring BBB's hospitalization and his arm being set in a cast. *See* Norris-York Declaration at ¶ 14.

Defendants have not shown that BBB could not be held in a medium security facility described in the FSA ¶ 8. A medium security facility is "designed for minors who require close supervision but do not need placement in juvenile correctional facilities." *Id*. It provides 24-hour awake supervision, custody, care, and treatment. It maintains stricter security measures, such as intensive staff supervision, than a facility operated by a licensed program in order to control problem behavior and to prevent escape. *Id*.

Defendants have neither alleged nor shown that when BBB was taken into custody Defendants "provide[d] [him] with a notice of rights …" FSA ¶ 12.A. As this Court has made clear, while Paragraph 12.A does not enumerate which rights must be included in a notice, "[i]nstead, it uses broad language and 'includ[es]' the right to a bond redetermination hearing, as provided under Paragraph 24.A." Order of September 18, 2020 at 6. [Doc. # 987.] Accordingly, Paragraph 12.A is more expansive than Paragraphs 24.C and 24.D. *Id*. Moreover, Paragraph 37 provides that individual Class Members may bring actions to enforce the Agreement, "which presupposes that Class Members are aware of their rights under it." *Id. citing* FSA at ¶ 37. Because the FSA "should be read to give effect to all of its provisions and to render them consistent with each other," *Mastrobuono v. Shearson Lehman Hutton, Inc*., 514 U.S. 52, 63 (1995), "Paragraph 12.A must be read to provide a broader notice of rights than provided for elsewhere in the FSA, and at minimum should include a notice of rights pertaining to custody and release such that Class Members may act upon them." Order of September 18, 2020 at 6 Because ICE has not even alleged that it provided such a notice to BBB or the other two Class Members detained at Cowlitz, "ICE is not compliant with Paragraph 12.A." *Id*.

Paragraph 14 of the FSA requires that when the Defendants determine that the detention of the minor "is not required either to secure his or her timely appearance before the [Defendants] or the immigration court, or to ensure the

4

minor's safety or that of others," they "shall release a minor from [their] custody without unnecessary delay" to a list of potential sponsors. Paragraph 15 requires a Class Member's sponsor to execute an Affidavit of Support (Form 1-134) and an agreement to take certain steps while caring for a released Class Member. Defendants' Motion offers no evidence that any of BBB's three potential sponsors have been assessed or asked to execute a Form I-134.

Paragraph 17 of the FSA states that Defendants may conduct a suitability assessment potential sponsor, including such components as an investigation of the living conditions in which the minor would be placed and the standard of care he would receive, verification of identity and employment of the individuals offering support, interviews of members of the household, and a home visit. *Id*. Defendants' Motion offers no evidence that Defendants have conducted any assessments under Paragraph 17.

Paragraph 18 of the FSA provides that from a time a minor is taken into custody, Defendants "shall make and record the prompt and continuous efforts on its part toward family reunification and the release of the minor pursuant to Paragraph 14 above. Such efforts at family reunification shall continue so long as the minor is in [Defendants] custody." *Id*. Defendants' Motion nowhere refers to any evidence that Defendants have made and recorded any efforts on their part toward family reunification and the release of BBB pursuant to Paragraph 14.

Paragraph 21 of the FSA provides that a minor may be held in a suitable State or county juvenile detention facility "whenever the [ICE] District Director or [a] Chief Patrol Agent determines that the minor" falls into one of several categories. Defendants have offered no evidence showing that an ICE District Director or equivalent official made the determination not to release BBB under Paragraph 14 of the FSA.

BBB is not subject to the exceptions set forth in the FSA at Paragraph 21(A) through (d). He has not been "convicted of a crime" or been the subject of

5

delinquency proceedings and adjudicated delinquent for acts involving a "pattern or practice of criminal activity …" Defendants have offered no evidence that B.B.B. is an "escape-risk" as defined in Paragraph 22 of the FSA.

It appears B.B.B. has been denied release because Defendants believe he falls within the release exception of Paragraph 14: Defendants are *not* required to release a Class Member when they "determine[ ] that the detention of the minor is … required … to ensure the minor's safety or that of others ..."

The text of this provision clearly shows that the parties had in mind a reasonably current determination of dangerousness, not an assessment conducted months or years earlier. A class member's Paragraphs 14 and 18 right to release is not extinguished forever because sometime in the past the Class Member may have been a flight risk or a danger to herself or others.

In addition, the provision clearly contemplates a reasonably accurate and objective assessment of current dangerousness, not a determination based on rank hearsay, or uncorroborated statements, or unproven ancient allegations of dangerousness.

A recent expert assessment of B.B.B. found that he will not be a danger to himself or others if released from custody. Norris-York Declaration at ¶¶ 10-12, and Exhibit H Report of Dr. Amy Cohen at pp. 14, 19.[4] Workers at Cowlitz have likewise provided positive assessments of BBB's conduct and disposition. Norris-York Declaration at ¶¶ 21-22 and exhibits referred to therein.

---

[4] Dr. Amy Cohen, a child and family psychiatrist, after carefully and extensively reviewing B.B.B.'s history and interviewing him for hours, concluded, that "[t]here is nothing to indicate at this time that Brandon represents a danger to others." Psychological Evaluation, September 21, 2020 at 17. Further, she concludes that "[t]he label of 'gang affiliation' appears to represent 'guilt by association' and is not supported by data, including his comportment over the course of his incarceration." Psychological Evaluation, September 21, 2020 at 2.

Washington state laws permit minors to remain in juvenile custody upon turning 18. Wash Stat 13.40.300. Thus, there is nothing in either federal or Washington laws governing the operation of Cowlitz prohibiting ICE detainees from remaining at Cowlitz when they become eighteen, provided they initially entered when under eighteen.

Finally, as this Court stated in its Order of September 18, 2002, "Federal courts are not reduced to approving consent decrees and hoping for compliance. Once entered, that decree may be enforced." Order of September 18, 2002 at 7 (internal quotation marks omitted), *quoting Frew v. Hawkins*, 540 U.S. 431, 432 (2004); *Nehmer v. U.S. Dept. of Veteran Affairs*, 494 F.3d 846, 860 (9th Cir. 2007).

The Court may rely on the terms of the FSA and the Court's authority to enforce its own Orders to fashion a remedy for violations. *Id. citing Jeff D. v. Kempthorne*, 365 F.3d 844, 853 (9th Cir. 2004) ("Once the decree was entered, the district court retained jurisdiction to enforce it[.]"); *see also Jeff D. v. Otter*, 643 F.3d 278, 283–84 (9th Cir. 2011) (internal citation omitted) ("[C]onsent decrees have 'many of the attributes of ordinary contracts [and] . . . should be construed basically as contracts[.]'").

The FSA would make little sense if Defendants are free to violate the terms of the Agreement causing a detained Class Member to "age out" and face transfer to an adult detention facility, and then object to a remedy because the Class Member turned eighteen years of age.

### III.  CONCLUSION

For all of the above reasons, the Court should deny Defendants' Motion without prejudice to defendants' seeking the same relief upon establishing that ICE has complied with the FSA including to assess BBB's current likelihood to appear at future proceedings or his dangerousness, that BBB or his mother have been informed of BBB's FSA rights by Defendants, that BBB's potential sponsors' suitability has been assessed by Defendants, that the suitability of the sponsors has

7

been considered when assessing BBB's likelihood to appear at future proceedings or dangerousness, and that BBB's current likelihood not to appear in future proceedings or dangerous has been determined using known and reasonable criteria and those criteria have been reasonably and objectively applied to arrive at a determination about BBB's current likelihood to appear for future proceedings and dangerousness.

Respectfully submitted,

Dated: November 4, 2020

*/s/ Peter Schey*
Peter A. Schey
CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
*Counsel for Plaintiffs*

///

CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2020, I served the foregoing pleading on all counsel of record by means of the District Clerk's CM/ECF electronic filing system.

          /s/ *Peter Schey*
Peter A. Schey
CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
*Class Counsel for Plaintiffs*

9