# NOVEMBER 16, 2020 ORR JUVENILE COORDINATOR REPORT

**ORR JUVENILE COORDINATOR INTERIM REPORT**

**November 16, 2020**

**Aurora Miranda-Maese, ORR Juvenile Coordinator**

## Introduction

On April 24, 2020, The Honorable Dolly M. Gee of The United States District Court for the Central District of California held a third hearing on the Motion for Temporary Restraining Order on Jenny L. Flores, et al. v. William P. Barr, et al., directing the undersigned designated as the Office of Refugee Resettlement (ORR), Juvenile Coordinator, Aurora Miranda-Maese, to file an Interim Report monthly during the pendency of the national health emergency related to the COVID-19 pandemic. ORR updated reports have continued to be filed as ordered, with the last report submitted by the undersigned on October 2, 2020. On September 4, 2020, a Status Conference was held at which time implementation of the Order was stayed until September 8, 2020, and hoteling of minors shall cease by no later than September 15, 2020. The Order directs the Department of Homeland Security (DHS) shall transfer all minors, both accompanied and unaccompanied, currently held in hotels to licensed facilities as expeditiously as possible.

The Immigration and Customs Enforcement (ICE) and ORR Juvenile Coordinators were also ordered to maintain records and statistical information on minors held in Title 42 custody pursuant to Paragraph 28A and to monitor compliance with the Agreement with respect to any minors held in Title 42 custody. The Juvenile Coordinators shall file their next interim report by November 16, 2020 and include an update regarding the number of minors held in Title 42 custody and the status of compliance with this Order, along with the other topics specified in the prior Court's Order. Since the Court Order dated August 7, 2020, all minors entering ORR custody have been referred under Title 8 provisions. The Court instructed the Juvenile Coordinator in the next report, to distinguish minors who contracted COVID-19 while in ORR custody from those minors who acquired the virus prior to placement in ORR shelter care. The next status conference hearing is set for December 4, 2020.

Subsequent to the Court Order, the undersigned continued in collaboration with the workgroup to assist in obtaining the data from all congregate care shelters and transitional foster care nationwide, on issues as they pertain to the six Court-ordered topics. Under the Juvenile Coordinator, this workgroup has continued using the same methodology to collect data with questionnaires requesting specific information as they pertain to the prior Court Orders. In addition, the Court Order dated August 7, 2020, directed the ORR Juvenile Coordinator to expand the requirements of the April 24, 2020 Order by detailing the reasons that release is delayed due to unavailable fingerprinting services or an inability to complete the home study for each minor, which has continued up through this report.

During this reporting period, which covers October 1, 2020 through November 12, 2020, approximately 1,719 cases were reviewed individually. In the same reporting period, approximately 2,114 minors were admitted to ORR facilities, resulting in a significant increase in ORR's census. The workgroup continued to collaborate with ORR grantee staff, Federal Field Specialists (FFS), and other ORR staff members to obtain the information needed from the ORR network.

Figure 1 below provides ORR's census information and discharges for the last six months, beginning May 15, 2020 – November 11, 2020. Also listed below is Figure 2, which details ORR's total bed capacity by residence type as of November 12, 2020.



Figure 1: ORR Census & Discharges from May 15 to November 11, 2020[1]

Figure 2: ORR Bed Capacity by Residence Type as of November 12 2020[2]

| ORR Program Type | Total Beds | # of Beds Occupied (% of total beds) | # of Beds Not Occupied (% of total beds) |
|---|---|---|---|
| Shelter | 5,575 | 1,564 28% | 4,011 72% |
| Staff Secure | 133 | 14 11% | 119 89% |
| Secure | 34 | 2 6% | 32 94% |
| RTC | 50 | 9 18% | 41 82% |
| TFC | 1,604 | 130 8% | 1,474 92% |
| LTFC | 575 | 372 65% | 203 35% |
| TOTAL | 7,971 | 2,091 | 5,880 |

---

[1] The census reflected in Figure 1 is a snapshot of the minors in care from May 15 – November 11, 2020, in addition to the daily discharges.

[2] Census for minors in ORR custody constantly fluctuate as children are admitted, transferred, and discharged at all times of each day. Therefore, the census reflected in Figure 1 is a snapshot of the capacity at the exact time that the review was conducted. Furthermore, ORR is constantly reassessing bed capacity as circumstances regarding the COVID-19 pandemic and increasing number of minors requiring quarantine or medical isolation are referred to ORR. This chart reflects ORR's reassessed capacity on the morning of November 12, 2020, which may change as new developments arise.

This report provides updates to the six topics ordered to be covered by the Juvenile Coordinator, which follows below:

I. **Measures taken to expedite the release of Class Members to suitable custodians during the COVID-19 health emergency, including the status of fingerprinting and home study policies and practices, in compliance with this Order, and provide census data as to any minors who remain in custody due to lack of fingerprinting or home studies.**

### Fingerprinting Policies and Practices

Per a prior Court Order, ORR amended its fingerprinting policy July 21, 2020 (attached in previous Juvenile Coordinator Report dated July 24, 2020).

As of November 9, 2020, all ORR digital fingerprinting sites are operational.

Fingerprinting services are among the initial criteria initiated in the family reunification process. In cases where fingerprinting is not immediately available but other reunification requirements are still pending, case managers continue to search for alternative locations within a reasonable distance and continue to communicate with the persons regarding their options. Where no reasonable alternative fingerprinting options are available and fingerprinting is the only requirement delaying release, ORR determines whether provisional release is appropriate. As of November 12, 2020, there were no minors in ORR care whose release was delayed because COVID-19 closures made fingerprinting services unavailable to sponsors.

### Home Study Policies and Practices

ORR issued Home Study Practice Guidance due to COVID-19 on May 6, 2020 (attached in previous Juvenile Coordinator Report dated June 8, 2020). ORR is in alignment with the many states who have imposed restrictions on movement or shelter-in-place orders for residents due to the COVID-19 pandemic. It remains paramount that minors are released to a safe and healthy environment with a sponsor who is able to meet their needs. It is also important to protect the staff who conduct home studies and assure they feel safe and supported during this time as well.

ORR's home study providers are to follow their respective state's official guidance on conducting home visits/home studies for domestic minors. ORR honors the state's guidance until further notice is provided to the shelter network from ORR. If no official state guidance has been issued on conducting home studies during the COVID-19 pandemic or if states require that the home visit be conducted in person, ORR home study providers can seek a waiver on the in-person home visit via the Federal Field Specialist (FFS) for that region. ORR continues to assess on an individual basis if a virtual home visit should take place in lieu of the in-person contact.

Home study reports must still be submitted within 10 business days of the receipt of the home study referral, and documentation is made in the minor's file as to which method was used to conduct the home study. As of November 12, 2020, there were no minors in ORR custody with home study delays due to COVID-19.

II. Identify the location of any ORR facility that has had any individual, whether minor or staff member, test positive for COVID-19, and provide a status report and census of those infected at that facility during the reporting period.

Under the Juvenile Coordinator, the workgroup has continued to survey the ORR network regarding the census of minors who tested positive for COVID-19. Additionally, follow up was conducted with the Division of Health for Unaccompanied Children (DHUC) to address the status of those infected to determine whether any minors remained in isolation, quarantine or had been medically cleared.

As noted above, approximately 2,114 minors were admitted to ORR from October 1, 2020 to November 12, 2020 and approximately 416 of those minors were diagnosed with COVID-19 upon their admission to ORR programs. While most of the minors with a positive diagnosis were medically cleared prior to this report, Figure 3 below provides the census data for the 59 positive COVID-19 cases in medical isolation as of November 12, 2020.

*Figure 3: Positive COVID-19 Minors Census Data as of November 12, 2020[3]*

| Program Name and Location | Bed Capacity | Beds Occupied | Positive COVID-19 Minors | Release Delayed |
|---|---|---|---|---|
| (TX) | 32 | 22 | 1 | 0 |
| (TX) | 93 | 68 | 1 | 0 |
| (TX) | 36 | 24 | 1 | 0 |
| (TX) | 162 | 84 | 6 | 0 |
| (TX) | 42 | 30 | 2 | 1 |
| (NY) | 16 | 8 | 1 | 0 |
| (TX) | 123 | 74 | 2 | 0 |
| (TX) | 141 | 26 | 5 | 0 |
| (TX) | 36 | 5 | 2 | 0 |
| (TX) | 16 | 13 | 2 | 0 |
| (TX) | 48 | 18 | 1 | 0 |
| (TX) | 135 | 30 | 2 | 0 |
| (AZ) | 44 | 27 | 1 | 0 |
| (TX) | 27 | 23 | 3 | 0 |
| (AZ) | 64 | 20 | 1 | 0 |
| (TX) | 7 | 4 | 1 | 0 |
| (AZ) | 82 | 44 | 1 | 1 |
| (TX) | 27 | 21 | 2 | 0 |
| (TX) | 600 | 139 | 11 | 0 |
| (TX) | 137 | 94 | 3 | 0 |
| (AZ) | 120 | 79 | 7 | 0 |
| (AZ) | 73 | 51 | 1 | 0 |
| (TX) | 146 | 27 | 2 | 0 |

---

[3] Figure 3 is a result of the data gathered by the workgroup as it pertains to positive COVID-19 cases of minors throughout the shelter network. This information reflects the status as of November 12, 2020.

As of November 12, 2020, a cumulative total of 781 minors have been diagnosed with COVID-19. Approximately 416 of these 781 minors were admitted to ORR from October 1, 2020 to November 12, 2020. Fifty-nine (59) of these minors are currently in medical isolation. Therefore, the majority of minors in ORR custody acquired COVID-19 prior to placement in ORR facilities. Upon their admission to ORR facilities, the minors were screened for COVID-19 as part of their initial medical examination (IME) and were found to be positive.

In addition, during the reporting period approximately ten minors contracted COVID-19 while in ORR shelter care. Nine of these minors were medically cleared and one minor remains in medical isolation as of November 12, 2020.

Currently, ORR places minors newly referred along the Southwest border into shelters local to the site of referral. In the event shelters beds along the southwest border become unavailable, ORR has identified shelters in the San Antonio and Houston, Texas-areas as overflow sites. As a precaution, ORR now recommends these new referrals be quarantined for 14 days from the day of admission to ORR, referred to as 'routine intake quarantine'. Minors in such quarantine are tested at least twice for COVID-19, once shortly after admission and again prior to release from quarantine.

Although ORR cannot require that staff disclose their private medical information as it relates to COVID-19, some staff voluntarily reported this information. Since collecting information, ORR has been notified of 840 (cumulative) personnel with positive COVID-19 test results as of November 12, 2020. Staff with suspected exposure to or positive COVID-19 test results are required to quarantine for at least 14 days. Furthermore, the exposed or infected staff are not permitted to have any contact with minors or other staff at the shelters until their quarantine has ended.

III. With respect to minors placed at congregate facilities in which either a minor or staff member has tested positive for COVID-19, identify the specific reason the minors located there have not been released or transferred to a non-congregate setting.

For all the ORR network, transfers out of congregate care were not pursued due to the risk of potentially spreading or catching COVID-19 during the transfer process. While the occupancy continues to increase at congregate shelters, their ability to isolate those minors who have tested positive remains paramount. ORR issued revised field guidance dated July 16, 2020 with regard to COVID-19 (attached in previous Juvenile Coordinator Report dated July 24, 2020).

ORR's policies require the release of minors to sponsors in a manner that promotes public safety, which includes concerns related to public health. The field guidance and ORR Policy Guide Section 3.4.8 Medical Clearance Prior to Release and Transfer, states:

*"Unaccompanied alien children who have serious physical or mental health issues or have had exposure to a communicable disease may not be transferred or moved until they have been medically cleared by a physician or ORR is consulted….*

5

*Children who are infectious with communicable diseases of public health concern, which have potential to cause outbreaks, will not be released from ORR care until they are non-infectious."*

IV. Describe any policies and/or practices aimed at identifying and protecting minors who are at heightened risk of serious illness or death should they contract COVID-19.

On September 21, 2020, ORR medical staff met with Dr. Paul Wise, as well as the Juvenile Coordinator and the Special Master, Andrea Ordin, in order to discuss the above issue.

Each ORR facility has a unique process for staffing medical care for the individualized needs of the minors in care.  Some directly hire licensed independent practitioners (e.g., pediatricians, family medicine physicians, pediatric nurse practitioners, registered nurses) who operate in clinics physically located at the facility, while some contract with community healthcare providers who either visit the facility or evaluate the minors in their clinics.  Each care provider has an established network of healthcare providers, including specialists, emergency care services, mental health practitioners, and dental providers. Care providers are required to maintain state licensing and adhere to licensing requirements, including staffing requirements.

Each child in ORR care has an initial intake assessment within 24 hours of the minor's admission to a care provider facility, to obtain information about the minor, including whether there are any immediate medical and mental health concerns.  Minors who are ill on arrival will receive prompt attention and medical care.

Each minor also receives an initial medical examination (IME) by a licensed primary care provider (e.g., physician, physician assistant, or nurse practitioner) within two business days of arrival.  The IME is based on a well-child examination, adapted for the unaccompanied children population with consideration of screening recommendations from the American Academy of Pediatrics, the Centers for Disease Control and Prevention (CDC), and the U.S. Preventive Services Task Force (USPSTF).

The purposes of the IME are to assess general health, administer vaccinations in keeping with U.S. standards, identify health conditions that require further attention, and detect contagious diseases, such as influenza or tuberculosis.  If a vaccination record is not located or a minor is not up to date, the minor receives all vaccinations recommended by the Advisory Committee on Immunization Practices (ACIP) catch-up schedule and approved by CDC, including seasonal influenza vaccine.

ORR's DHUC staff and ORR care providers routinely track and discuss children with existing medical conditions, including children with conditions that put them at increased risk of infection or could result in possible medical complications if infected. As part of these discussions, facilities caring for children with complex medical needs have been directed to:

- Maintain close contact with general and specialty medical providers of children with complex medical needs and identify plans for continued care (e.g. utilization of telehealth services) in the event of office closures and other barriers to care during the pandemic.

- Create a safety plan for when a child might require in-person medical evaluation, such as in an outpatient clinic or at an emergency room.

- Ensure children have an adequate and ongoing supply of prescription medications.

- Continue to follow recommendations about infection prevention, including for respiratory diseases such as influenza and COVID-19, from medical providers overseeing the care of children with complex health needs.

V. **Explain whether the medical professionals at ORR are making expeditious individual assessments about a Class Member's eligibility for release when a Class Member has been exposed to COVID-19 or has a sponsor whose household has a confirmed case of COVID-19, and provide the average time in which such individual assessments take place during the reporting period.**

As of November 10, 2020, there were two minors whose release was delayed due to a positive COVID-19 diagnosis, as they complete their isolation protocols. These are the minors identified in Figure 3 above. Quarantine recommendations for minors who have been exposed to a confirmed COVID-19 case are made in collaboration with the local public health authority.

In accordance with the revised ORR field guidance, if a sponsor or a member of the sponsor's household has a suspected or confirmed COVID-19 infection, ORR postpones release until a medical or public health professional determines it is safe to release the minor to the sponsor household.

VI. **Explain whether ORR is making individualized assessments regarding its ability to release minors subject to removal orders under the MPP, including census data and reasons for non-release.**

As of November 12, 2020, there were 42 minors in ORR custody that were identified as MPP cases. Currently, there are 24 minors who are engaged in the family reunification process, but it is not complete. The remaining minors are Category 4, with 15 of these minors placed in Long Term Foster Care (LTFC). The Juvenile Coordinator did not identify any cases from the reporting period where an MPP removal order was a sole basis for a minor's non-release.

## Summary

The undersigned respectfully submits this report to the Court pursuant to the Court Order dated November 16, 2020. The undersigned will continue to work independently and with the Special Master and will continue to file interim reports per the Court's directive to monitor facilities to assure adherence to CDC-compliant and ORR guidelines are maintained.