CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Carlos R. Holguín (90754)
Peter A. Schey (58232)
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Email: pschey@centerforhumanrights.org

*Attorneys for Plaintiffs*

*Additional counsel listed on following page*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*, | Case No. CV 85-4544-DMG-AGRx |
| Plaintiffs, | PLAINTIFFS' RESPONSE TO JUVENILE COORDINATORS' INTERIM REPORTS |
| v. | Hearing: December 4, 2020 |
| WILLIAM BARR, Attorney General of the United States, *et al.*, | 11:00 AM |
| | [Hon. Dolly M. Gee] |
| Defendants. | |

NATIONAL CENTER FOR YOUTH LAW
Leecia Welch (Cal. Bar No. 208741)
Neha Desai (Cal. RLSA No. 803161)
Poonam Juneja (Cal. Bar No. 300848)
Freya Pitts (Cal. Bar No. 295878)
Mishan Wroe (Cal. Bar No. 299296)
Melissa Adamson (Cal. Bar No. 319201)
1212 Broadway, Suite 600 Oakland, CA 94612
Telephone: (510) 835-8098
Email:   lwelch@youthlaw.org

On September 4, 2020, the Court ordered the ICE and ORR Juvenile Coordinators to "maintain records and statistical information on minors held in Title 42 custody pursuant to Paragraph 28A, and . . . monitor compliance with the Agreement with respect to any minors held in Title 42 custody pursuant to Paragraph 29." Order re Plaintiffs' Motion to Enforce Settlement as to "Title 42" Class Members [Doc. # 976] ("Title 42 Order"), at 18.

By order dated October 26, 2020, the Court directed the ICE and ORR Juvenile Coordinators to report regarding, inter alia, "the topics listed in the April 24, 2020 Order [Doc. # 784] and compliance with the Court's order regarding minors held under Title 42 authority [Doc. # 976]."[1] Order re October 23, 2020 Status Conference [Doc. # 1014] ("Oct. 26 Order"), at 3.

The Juvenile Coordinators' Interim Reports fail to supply information sufficient to show that Defendants are complying with the Settlement during the COVID-19 pandemic. The Court should order the Coordinators' reports to provide the following information going forward.

    1)    <u>The Juvenile Coordinators should report the reasons Defendants detain children in unlicensed CBP facilities for more than 72 hours pursuant to Title 42 or Title 8.</u>

The Reports fail to provide adequate information regarding Defendants' compliance with the Court's order that "[a]ll minors detained in the legal custody of DHS or ORR pursuant to Title 42 are Class Members as defined by Paragraph 10 of the *Flores* Agreement" and that Defendants must therefore "comply with the Agreement with respect to such minors to the same degree as any other minors held in their custody." Title 42 Order at 17.

ICE's Juvenile Coordinator reports "that ICE has included minors

---

[1] The ICE and ORR Juvenile Coordinator Interim Reports ("ICE Report" and "ORR Report") appear in the public record as Documents # 1029-1 and #1029-2, respectively.

- 1 -

temporarily housed by ICE pursuant to Title 42 authorities over 72 hours pending expulsion in its monthly Paragraph 28A reporting shared with Plaintiffs' counsel since March 2020 . . ." [Doc. # 1029-1] ("ICE Report"), at 8. The report adds that ICE detained 19 class members in hotels for over two days "pending an expulsion flight to their home country under Title 42 authorities." *Id.* These children were then transported back to "U.S. Customs and Border Protection for processing" because the flights were delayed by Hurricane Eta. *Id*. According to the ICE Report, "[T]hese 19 minors are currently in ORR custody," *id*., yet the report fails to disclose how long CBP detained these class members or where it detained them before ostensibly transferring them to a licensed placement.[2]

The Title 42 Order applies to DHS, and therefore covers both ICE *and* CBP. *See, e.g.*, Title 42 Order at 17 ¶ 3 ("Under Paragraph 12.A, if a bed in a licensed facility is immediately available, DHS shall generally make a licensed placement of class members within 72 hours of arrest or apprehension."). Yet the ICE Report says nothing about children whom CBP has detained for more than 72 hours, nor does it disclose the reasons for prolonged placement in unlicensed Border Patrol facilities. If Defendants are detaining class members for extended periods in CBP facilities instead of detaining them in hotels, this places children at no less risk than hotel placement. The evidence Plaintiffs have independently collected warrants the Juvenile Coordinators' reporting on whether this is or may be the case.

According to its ¶ 29 data report, CBP detained 35 children for more than 72 hours during October 2020 alone. Ex. A, Declaration of Melissa Adamson, November 23, 2020 ("Adamson Decl."), at ¶ 6.[3] Of these 35, CBP's report

---

[2] The ORR Report adds nothing to the ICE Report insofar as children designated for Title 42 expulsion are concerned, stating only that "all minors entering ORR custody have been referred under Title 8 provisions." ORR Report at 1.

[3] Of these 35 children, ten children were listed as "Y" and 25 children were listed as "N" in the "T42 (Y/N)" column. Adamson Decl. at ¶ 7.

indicates that at least 15 children spent five or more days in unlicensed Border Patrol facilities, including —

- A 17-year-old child for approximately 18.3 days (438.87 hours)
- A 6-year-old child for approximately 11.4 days (272.95 hours)
- A 12-year-old child for approximately 11.4 days (272.95 hours)
- A 2-year-old held for approximately 11 days (264.87 hours)
- A 16-year-old held for approximately 8 days (193.00 hours)
- A 9-month-old held for approximately 7.4 days (177.50 hours)
- An 8-month-old held for approximately 7.2 days (171.90 hours)
- A 13-year-old held for approximately 7.2 days (171.88 hours)
- A 4-year-old held for approximately 7.1 days (170.03 hours)
- A 4-year-old held for approximately 6.5 days (156.08 hours)
- A 12-year-old held for approximately 6.5 days (156.08 hours)
- A 5-year-old held for approximately 6.1 days (145.55 hours)
- A 2-year-old held for approximately 5.7 days (136.40 hours)
- A 5-year-old held for approximately 5.3 days (127.52 hours)
- An 8-year-old held for approximately 5.3 days (127.52 hours)

*Id.* at ¶ 9.

The available evidence further indicates that CBP's detaining class members for such extended periods is exposing children to an unacceptably high risk of contracting COVID-19.

According to class member E.J.L.A., as of November 18, 2020, CBP had detained him at the Weslaco Station for three days. Ex. B, Declaration of E.J.L.A., November 18, 2020, at ¶¶ 2, 4. He describes conditions at the Weslaco Border Patrol Station as follows:

When I got to the Weslaco station, there were many children. I was detained

> in a room with thirty other minors and we were cramped. . . . I had to sleep in a sitting position because there were so many people in the room. I met eight other boys who were detained with me who had been detained four days. They have all left the facility. I met a Guatemalan minor who had been detained at the Weslaco station for five days. . . Currently, I am in a room alone and isolated from others. . . . I have been given one disposable face mask and I have to use the same face mask every day. I have not been provided hand sanitizer since my arrival. I have not been provided gloves. I do not have access to soap for handwashing. Another child asked for soap and he was told no. . . . There is no social distancing here. When we are in line for showers and food, we are not spaced six feet apart. We stand right next to each other.

*Id*. at ¶ 7.

Another Weslaco detainee is 13-year-old K.J.M.B.. Ex. C, Declaration of K.J.M.B., November 18, 2020, at ¶ 2. As of November 18, 2020, Defendants had detained him at Weslaco for four days. *Id*. at ¶ 4. He corroborates key elements of E.J.L.A.'s account: "I sleep on a cushion on the floor. I have a thin nylon blanket that I use to sleep. *I do not have soap to wash my hands. I have not been given hand sanitizer. I do not get my temperature checked regularly. I have not received a face mask.* I am wearing the cloth mask that I arrived to the United States with." *Id*. at ¶ 8 (emphasis added).

Class member M.N.A.G. is eight years old. Ex. D, Declaration of M.N.A.G., November 18, 2020, at ¶ 2. He reports having arrived with his ill mother, whom Defendants transferred separately to an unknown location, leaving they young boy alone at the Weslaco Station. *Id*. at ¶ 3. He declares:

> My mom is somewhere else. I think she is in the hospital because her back hurts. I have not been able to talk to her because she is sick. They told me that I cannot leave until she gets here. . . . I have been detained at this facility for 2 days. I have been told . . . I have to wait here until my mother gets out of the hospital. I have not been told when she will get out. I have not been told how long I will have to wait at the facility. One boy had to wait five days. I do not remember his name. He told me he had been here five days.

*Id*. at ¶¶ 3-5.

M.N.A.G., too, reports experiencing substandard and dangerous conditions at the Weslaco Station:

> I am alone in my room. I do not know why I am alone. It makes me feel abandoned. I feel very alone. I have been completely alone for an entire day. . . . It is very cold. It is always very cold. I get water often. When I want to wash my hands, there is only water. There is no soap. I do not know why there is no soap. I received one disposable mask when I arrived to Weslaco station and I have had the same mask since then. I have not received a new mask. My mask is dirty on the inside. Here, people do not practice social distancing. Social distancing is when people do not get too close so that they are not get sick from COVID. When we are in line, we sit or stand close together. I think many people here will get sick from COVID. That makes me feel scared.

*Id.* at ¶ 7.[4]

Defendants' have steadfastly refused to disclose the reasons they detain children for prolonged periods in unlicensed Border Patrol facilities.[5] On October 13, 2020, Plaintiffs advised Defendants that CBP's "August [2020] dataset reports 23 children held for over 72 hours in CBP facilities, eight of whom it appears were detained for over a week in such facilities." Ex. F, Declaration of Carlos Holguín,

---

[4] On November 18, 2020, Plaintiffs conducted a monitoring visit of the Weslaco Border Patrol Station. Ex. E, Declaration of Denise Rosales, November 21, 2020.

[5] Settlement ¶ 28A provides: "The INS, through the Juvenile Coordinator, shall also collect information regarding the reasons for every placement of a minor in a detention facility or medium security facility." Settlement ¶ 29 provides: "[T]he INS shall provide to Plaintiffs' counsel the information collected pursuant to Paragraph 28, as permitted by law, and each INS policy or instruction issued to INS employees regarding the implementation of this Agreement."

Border Patrol facilities are indisputably "detention facilities," and, even absent a pandemic, Defendants should disclose the reasons they detain children in these facilities. The case for transparency is all the more compelling now. Defendants' keeping children for extended periods of time in Border Patrol facilities instead of hotels is not consistent with the Court's Title 42 Order and protracting children's detention in such facilities is no less dangerous than detaining them in hotels.

November 23, 2020 ("Holguín Decl."), Attachment 1. Plaintiffs requested that Defendants "disclose the reasons for children's extended stays in CBP facilities . . ." *Id*. Plaintiffs explained the requested information would allow them to monitor whether Defendants are detaining class members in CBP facilities whom they would have "hoteled" but for the Title 42 Order. *Id*. On November 19, the Parties met and conferred, but failed to resolve their differences over CBP's reporting obligations.[6]

The Court should order the Juvenile Coordinators to report on class members held for longer than 72 hours in Border Patrol stations. It should also order CBP to report its reasons for failing to transfer class members to a licensed placement within 72 hours of taking them into custody pursuant to Settlement ¶¶ 28A and 29.

    2)    <u>The Reports should disclose instructions and policies ORR has issued to protect children from COVID-19 in ORR facilities</u>.

The Court's order of April 24, 2020, directs the ORR Juvenile Coordinator to "[i]dentify the location of any ORR facility that has had any individual, whether detainee or staff member, test positive for COVID-19, and provide a status report and census of those infected at that facility during the reporting period." Order re Plaintiffs' Motion to Enforce, April 24, 2020 [Doc. # 784], at 20. It further directs the ORR Juvenile Coordinator to "[d]escribe any policies and/or practices aimed at identifying and protecting minors who are at heightened risk of serious illness or death should they contract COVID-19." *Id.*

The Court's order of October 26 directs Defendants to "provide their current internal instructions and policies to Plaintiffs' counsel, pursuant to Paragraph 29 of the FSA." Oct. 26 Order at 3.

---

[6] The Court's order of October 26, 2020, directs the Parties to meet and confer regarding "provision of information of the reasons for placement of Class Members in a particular detention facility." Oct. 26 Order at 3 ¶ 4.

On October 30, 2020, Plaintiffs emailed Defendants requesting, "pursuant to Settlement ¶ 29 and ¶ 5 of the Court's order of October 26, 2020 [Doc. #1014]," that Defendants "produce all policies and instructions not previously supplied which they have issued to prevent, mitigate, or manage COVID-19 infection in ORR facilities." Holguín Decl., Attachment 2. On November 19, 2020, the Parties met and conferred, but failed to resolve their differences over ORR's obligation to disclose such policies and instructions. Holguín Decl. at ¶ 4.

Although the Court's order of April 24 does not squarely require the ORR Juvenile Coordinator to report such policies or instructions, her doing so should now be required to ensure Defendants' compliance with their obligation to ensure that conditions in detention facilities are safe, sanitary, and consistent with a bona fide concern for vulnerable children during the pandemic.[7]

According to the ORR Report, ORR's most recent policies or instructions related to COVID-19 protocols date from approximately four months ago. ORR Report at 6. Given the pandemic's spread, it would be remarkable and disturbing should these now-dated instructions reflect the sum total of ORR's efforts to protect children in its custody from COVID-19, yet Defendants have refused to disclose any more recent guidance, or even to say whether ORR has or has not issued has anything new.

ORR's refusal to disclose its current policies and instructions has predictably sown confusion and hindered legal service providers' ability to advocate for their

---

[7] Settlement ¶ 12 provides: "Following arrest, the INS shall hold minors in facilities that are safe and sanitary and that are consistent with the INS's concern for the particular vulnerability of minors." Settlement Exhibit 1 requires ORR facilities to provide children "[p]roper physical care . . ." and "[a]ppropriate routine medical and dental care, family planning services, and emergency health care services . . ."

Settlement ¶ 29 requires Defendants to disclose "each INS policy or instruction issued to INS employees regarding the implementation of this Agreement."

clients. For example, ORR has refused to inform staff at The Door, a legal service provider that represents class members in New York, "if anyone at The Children's Village has tested positive, has been exposed, has exhibited symptoms, or has been denied entry to the site . . . even when our staff are visiting the site in person for client meetings" Ex. G, Declaration of Hannah P. Flamm ("Flamm Decl."), November 23, 2020, at ¶ 6.

ORR's reticence with respect to the health and safety of class members is both inexcusable and potentially dangerous. *See id*. ("To protect our clients' rights and to further the best interests, health, and safety of our clients and our staff, we need to be informed, with our clients' consent, if any of our clients has tested positive, has been exposed, or has developed symptoms of COVID-19."). The Court should order the ORR Juvenile Coordinator to disclose any policies or instructions the agency has issued since July 2020, to mitigate the risks to class members of COVID-19 infection.

3) <u>Prolonged and unexplained detention of class members in "out-of-network" facilities</u>.

The Court's order of April 24 directs the ORR Juvenile Coordinator to report on "[m]easures taken to expedite the release of Class Members to suitable custodians during the COVID-19 health emergency . . .." April 24 Order at 19.

In addition to the many licensed facilities ORR uses to detain class members, the agency places children at a small number of "out-of-network" or "OON" facilities. Among these facilities is the Nexus Children's Hospital in Houston, Texas ("Nexus"). Ex. H, Declaration of Leecia Welch, November 23, 2020 ("Welch Decl."), at ¶ 2. The ORR Report provides no information regarding children detained in OON facilities, which is especially problematic considering the children ORR dispatches to OON facilities are among the most vulnerable children in its custody. *See id*. at ¶ 5.

On November 13, 2020, Plaintiffs' counsel visited the Nexus facility

pursuant to Settlement ¶ 32. *Id* at ¶¶ 2, 6. Counsel there encountered six children whom ORR had placed at Nexus, including four children who had been detained at Nexus for six months or longer, and one child who had been detained there for over a year. *Id*. at ¶¶ 3, 12, 15-17.[8] Two of the class members currently placed at Nexus described their experiences at the facility in sworn declarations. *See* Exhibits I and J.

      Disturbingly, one day prior to her visit, ORR provided Plaintiffs' counsel with a roster of class members detained at Nexus that indicated the agency had only three children there. Welch Decl. at ¶¶ 3-4. This was inaccurate. *Id.* ¶ 3. On November 16, 2020, Plaintiffs emailed Defendants requesting information regarding Defendants' failure to report all children placed in its out-of-network facilities. Holguín Decl., Attachment 2. Plaintiffs met and conferred with Defendants on November 19, 2020 regarding this issue but have not yet received an explanation for this inaccurate reporting. Welch Decl., at ¶ 5.

/ / /

---

[8] As best as counsel could determine, ORR was providing these children little or no education over the course of such protracted stays and several children appeared to be overmedicated. *Id*. at ¶¶ 9-11, 14.

The ORR Report should disclose the reasons for children's protracted detention at Nexus and explain why half of the children ORR has placed at Nexus fail to appear in the agency's ¶ 29 reports.

Dated: November 23, 2020.        CENTER FOR HUMAN RIGHTS AND
                                 CONSTITUTIONAL LAW
                                 Carlos R. Holguín
                                 Peter A. Schey

                                 NATIONAL CENTER FOR YOUTH LAW
                                 Leecia Welch
                                 Neha Desai
                                 Poonam Juneja
                                 Freya Pitts
                                 Melissa Adamson
                                 Mishan Wroe


                                 */s/ Carlos Holguín*
                                 Carlos Holguín
                                 *One of the Attorneys for Plaintiffs*