# Exhibit G

# DECLARATION OF HANNAH P. FLAMM, ESQ.

I, Hannah P. Flamm, declare as follows:

1. This declaration is based on my personal knowledge. If called to testify in this case, I would testify competently about the following facts.

2. My name is Hannah P. Flamm, and I am an attorney licensed to practice law in the State of New York.

## Experience Serving Youth in ORR Custody

3. Since December 2019, I have been a Managing Attorney at The Door's Legal Services Center, a legal service provider that works primarily with immigrant youth. Since December 2019, The Door has served unaccompanied children in the legal custody of the Office of Refugee Resettlement ("ORR") who have been placed by ORR at several care providers within the ORR network, including The Children's Village in New York. Over the last 11 months, The Door has served over 450 youth in ORR custody. Although the majority of these youth come from Mexico, Honduras, Guatemala, and El Salvador, youth placed at these facilities may come from all over the world.

4. As the legal service provider for The Children's Village, our attorneys and staff maintain regular contact with the youth at the facilities. We provide ongoing consultations and presentations concerning the legal rights of detained minors, as well as direct legal representation to youth.

## ORR COVID-19 Guidance and Policy

5. The last ORR guidance pertaining to COVID-19 that we received was from the summer of 2020 and only pertained to "Verbal Screening and Temperature Check for Staff and Visitors." We have not received any guidance directly from ORR since April 2020 regarding testing or any other COVID-19 protocols. We understand that ORR does

Case 2:85-cv-04544-DMG-AGR   Document 1039-7   Filed 11/23/20   Page 3 of 4   Page ID
#:42124

not have any protocols or policies regarding contact tracing.  We do not believe that ORR is conducting any contact tracing.

6.     ORR has not informed us of any ORR policy requiring ORR or care providers to notify legal service providers, attorneys of record, or other visitors if anyone at the care provider's site has tested positive for COVID-19, has been exposed to COVID-19, or has developed symptoms of COVID-19.  Instead, ORR has declined to inform us if anyone at The Children's Village has tested positive, has been exposed, has exhibited symptoms, or has been denied entry to the site based on ORR's "Verbal Screening and Temperature Check for Staff and Visitors," even when our staff are visiting the site in person for client meetings.  ORR has not informed us whether it is an ORR policy for providers not to provide this information or if it is at individual providers' discretion.  To protect our clients' rights and to further the best interests, health, and safety of our clients and our staff, we need to be informed, with our clients' consent, if any of our clients has tested positive, has been exposed, or has developed symptoms of COVID-19; or if anyone at the care provider's site has not passed the "Verbal Screening and Temperature Check for Staff and Visitors."

7.     Since July 2020, 10 minors have arrived at The Children's Village.  At least three of their ORR records do not reflect their having received a COVID-19 test upon arrival (one who arrived in August 2020 as a transfer from another ORR facility in Texas; one who arrived in September 2020 as a direct transfer from ICE custody; and one who arrived in October 2020 as a transfer from another ORR facility in Texas).  The Door has no formal means to learn if clients receive COVID-19 tests aside from their ORR records.

8.     In July and August 2020, The Door learned inadvertently that two of our clients, both of whom had been detained at The Children's Village for months before the pandemic began, had tested positive for COVID-19.  In neither case did ORR or The Children's Village staff inform The Door that the clients had tested positive, despite our requests that we be informed if a client ever received a positive test result.  Instead, in one case, The Door learned that our client had tested positive only via unofficial sources,

Declaration of Hannah P. Flamm, Esq.

2

including through another client living in the same placement.  In another case, The Door learned that our client had tested positive only after The Door advocated for her prompt repatriation and discovered that her medical clearance was a source of the delay.

9.     During remote, video-conference meetings since August 2020 and in-person meetings at The Children's Village since October 2020, The Door has observed minors apparently not in quarantine or wearing masks despite having arrived at the care provider within the previous two weeks and in some instances within the previous few days.  On multiple occasions between August and November 2020, The Door staff have observed minors not wearing masks or not wearing masks properly, including while being within six feet of staff.  The Door has observed that some minors lack understanding of COVID-19, quarantine, personal protective equipment, and their rights.  The Door staff have observed laptops, pens, and other high-touch surfaces not being wiped prior to use and have not observed routine use of hand sanitizer.  Of course it is unknown to The Door staff what happens off-camera and what may cause a newly arrived minor not to need to be in quarantine.

10.    ORR has informed us that ORR defers to state and local policies governing each ORR network care provider. We are unaware of any ORR written policies or procedures that instruct care providers to comply with state and local policies.  Additionally, we have received no information from ORR as to how care providers should reconcile conflicts across multiple policies from different jurisdictions (e.g. where children are transferred from Texas to New York).

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 23rd day of November 2020 at New York, New York.



_____
                               Hannah P. Flamm

Declaration of Hannah P. Flamm, Esq.

3