# EXHIBIT B

# TO NOVEMBER 23, 2020 RESPONSE BY *AMICI CURIAE* LSPs TO ICE JUVENILE COORDINATOR REPORT

## DECLARATION OF AMY WARR, ESQ.

I, Amy Warr, declare that the following information is true and correct to the best of my knowledge and belief:

1. My name is Amy Warr. I am an attorney at Alexander, Dubose & Jefferson and am based in Austin, Texas. I was first licensed to practice law in 1996 and am admitted to the State of Texas.

2. I represent the plaintiffs in *Grassroots Leadership, et al v. Tx. Dep't of Fam. and Protective Svcs.*, No. 19-0092 (Tex. Sup. Ct., Jan. 25, 2019), in their appeal currently pending at the Supreme Court of Texas. *Grassroots Leadership* challenges final regulations issued by the Texas Department of Family and Protective Services ("Texas DFPS") that would permit the licensing of Texas family detention centers, including the Karnes County Residential Center ("Karnes") and the South Texas Family Residential Center ("Dilley").

3. Over the past few months, I have discussed various changes at Karnes with attorneys at RAICES. Most recently, RAICES attorneys indicated to me that the U.S. Government has made assertions in *Flores v. Barr* that licensing of Karnes and Dilley is currently permitted despite the litigation remaining pending. Attorneys at RAICES provided me a copy of the most recent ICE Juvenile Coordinator's report filed in *Flores v. Barr* (Doc. 1029-1), which I reviewed. I believe the procedural history of the *Grassroots Leadership* litigation as described in that report is accurate, except for the statement that the court of appeals decision "reinstated" the challenged regulation. *Id.* at 7. The court of appeals did not reinstate the regulation. It dismissed the Plaintiffs' challenge to the regulation for lack of jurisdiction, holding that mothers had no standing to challenge their own children's detention. That dismissal has been appealed to the Supreme Court of Texas. For the Court's reference, I have attached the relevant *Grassroots Leadership* judgment and appellate opinions to this declaration as exhibits: Exhibit 1, District Court Amended Final Judgment (Dec. 12, 2016); Exhibit 2, Court of Appeals opinion (Nov. 28, 2018); Exhibit 3, Court of Appeals opinion on motion for en banc reconsideration (Dec. 5, 2019); Exhibit 4, Court of Appeals dissent on motion for en banc reconsideration (Dec. 5, 2019).

4. The regulation cannot be "reinstated" until all appellate proceedings have concluded, and the mandate issues, because the district court declined to permit Texas DFPS to supersede the district court's order invalidating the regulation. *See* Ex. 1 (ordering that Texas DFPS "refrain from issuing licenses under the FRC rule until the Court of Appeals issues a decision on appeal"). Thus, the district court's order stands until all appellate proceedings are concluded, and the appellate court issues the mandate. The mandate has not issued, and will not issue, until the Supreme Court of Texas disposes of the appeal. Any suggestion that the challenged regulations are again in effect, and licenses could be issued at any time, is, therefore, incorrect.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct pursuant to 28 U.S.C. ¶ 1746.

Date: November 23, 2020                    /s/ Amy Warr
                                           Amy Warr, Esq.

# Exhibit 1

Filed in The District Court
of Travis County, Texas

DEC 16 2016

At _____4:15_____ P.M.
Velva L. Price, District Clerk

No. D-1-GN-15-004336

| | | |
|---|---|---|
| **GRASSROOTS LEADERSHIP, INC.,** | § | **IN THE DISTRICT COURT OF** |
| *et al.,* | § | |
|    *Plaintiffs,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **TEXAS DEPARTMENT OF FAMILY** | § | **TRAVIS COUNTY, TEXAS** |
| **AND PROTECTIVE SERVICES (DFPS),** | § | |
| *et al.* | § | |
|    *Defendants,* | § | |
| | § | |
| **and** | § | |
| | § | |
| **CORRECTIONS CORPORATION OF** | § | **353rd JUDICIAL DISTRICT** |
| **AMERICA, INC., and** | § | |
| **THE GEO GROUP,** | § | **(All proceedings assigned to the** |
|    *Intervenors.* | § | **250th Judicial District Court)** |

## AMENDED FINAL JUDGMENT

This case involves a challenge under TEX. GOV'T CODE § 2001.038, also known as the

Administrative Procedure Act (APA), to the regulation adopted by the Texas Department of

Family and Protective Services and published in the Texas Register at Title 40, Part 19, Chapter

748, Subchapter A, Rule § 748.7 (effective March 1, 2016), 41 Tex. Reg. 1493-1502 (Feb 26,

2016) (hereinafter referred to as the "FRC Rule"). On December 2, 2016, the Court signed a

Final Judgment in this cause. On December 5, 2016, the Court considered Plaintiffs' Motion to

Prevent Automatic Suspension of Judgment Pending Appeal (the "Motion to Prevent").

At the hearing on Plaintiffs' Motion to Prevent, Defendants notified the Court of their

intent to: (1) perfect an appeal and automatically supersede the Court's Final Judgment; (2) issue

a license under the FRC Rule to The South Texas Family Residential Center in Dilley, Texas

("Dilley") operated by Intervenor CCA; and (3) give full force and effect to the license



004949237

Amended Final Judgment
*Grassroots Leadership, Inc. et al. v. Texas Department of Family and Protective Services et al.*

4

Page 1 of 8



4210

previously issued under the FRC Rule to the Karnes County Residential Center in Karnes City, Texas ("Karnes") operated by Intervenor GEO Group.

After reviewing Plaintiffs' Motion to Prevent, the arguments and supplemental briefing of the parties, and the applicable law, the Court ORDERS that the Final Judgment of December 2, 2016 is vacated and substituted by this Amended Final Judgment.

I.     Factual Background.

On July 11, 1985, a class of plaintiffs initiated a lawsuit against U.S. Immigration and Customs Enforcement (ICE) and other defendants in the District Court of Central California. *Flores v. Johnson*, CV 85-4544 DMG (C.D. Cal). On January 28, 1997, the parties entered into a court-approved settlement of the lawsuit (the "*Flores* Settlement Agreement"). The *Flores* Settlement Agreement provided that, if a minor is not released, the minor shall be placed temporarily in an unsecure and licensed program. The *Flores* Settlement Agreement defines a "licensed program" as a "program, agency or organization that is licensed by an appropriate State agency to provide residential, group, or foster care services for dependent children . . . ." The *Flores* Settlement Agreement further required that the licensed program:

- treat all minors in its custody with dignity, respect and special concern for their particular vulnerability as minors;

- place each detained minor in the least restrictive setting appropriate to the minor's age and special needs;

- provide safe and sanitary facilities; and

- segregate unaccompanied minors from unrelated adults.

In 2014, ICE began detaining immigrant women and children in the Karnes and Dilley facilities. Both facilities are secure detention facilities. Unlike daycares, foster homes, domestic

Page 2 of 8

Amended Final Judgment
*Grassroots Leadership, Inc. et al. v. Texas Department of Family and Protective Services et al.*

5

4211

violence shelters, residential treatment centers or Office of Refugee Resettlement contracted shelters for unaccompanied minors, Karnes and Dilley are designed to hold women and children in secure custody in order to execute federal immigration law enforcement purposes.  The women and children held at Karnes and Dilley, including several individual Plaintiffs who testified before this Court, arrived at the family detention centers under final deportation orders by the United States Government.

Defendant DFPS did not attempt to regulate family residential centers in Texas until it adopted an emergency rule (the "Emergency Rule") on September 2, 2015.  Before that time, Defendant DFPS had historically and consistently acknowledged that it lacked authority to license family detention centers and declined to do so based upon that lack of authority.

On September 30, 2015, Plaintiff Grassroots Leadership, Inc. initiated this lawsuit to challenge the Emergency Rule.  On November 20, 2015, the Court issued a Temporary Injunction prohibiting Defendant DFPS from implementing the Emergency Rule.  In the Temporary Injunction, this Court cited its concerns with the Emergency Rule, namely that the Emergency Rule removed the FRC's obligations to comply with the following current Minimum Standards for General Residential Operations that pertain to the safety and welfare of children: (i) limitations on room occupants; (ii) children sharing a room with an adult that may be unrelated; and (iii) children sharing a room with children of the opposite gender.  However, the Court expressly permitted DFPS to proceed through the traditional rulemaking procedures outlined in TEX. GOV'T CODE §§ 2001.023 and 2001.029.

DFPS followed the procedures for rulemaking and the FRC Rule was subsequently adopted by the Texas Department of Family and Protective Services and published in the Texas Register on Feb 26, 2016.  DFPS promptly licensed Intervenor The GEO Group's license for

Page 3 of 8

Amended Final Judgment
*Grassroots Leadership, Inc. et al. v. Texas Department of Family and Protective Services et al.*

6

4212

Karnes under the FRC Rule in March of 2016.   Intervenor CCA's application for the Dilley license under the FRC Rule is currently pending.   On May 3, 2016, Plaintiffs filed their Second Amended Petition to challenges the FRC Rule under the APA.

The FRC Rule, like the Emergency Rule, removes the family residential centers' obligation to comply with the legislatively mandated General Residential Operations ("GRO") Minimum Standards regarding the safety and welfare of minors.   Accordingly, on June 3, 2016, the Court issued a Temporary Injunction enjoining Defendants' implementation of the FRC Rule but requiring Defendant DFPS to continue to investigate and report any allegations of abuse or neglect, standards deficiencies, or violation of rule of law at Dilley and Karnes during the pendency of the Temporary Injunction.

II.      Defendants' Third Amended Plea to the Jurisdiction.

After considering Defendants Texas Department of Family and Protective Services ("DFPS"), Texas Health and Human Services Commission ("HHSC"), and their Commissioners' (collectively "Defendants") Third Amended Plea to the Jurisdiction (the "Plea to the Jurisdiction"), the Court is of the opinion that the Plea to the Jurisdiction should be GRANTED in part and DENIED in part as follows:

A. IT IS ORDERED that Defendants' Plea to the Jurisdiction is GRANTED as to Plaintiffs' claims under the Uniform Declaratory Judgment Act and for the recovery of attorney's fees under the Uniform Declaratory Judgment Act and TEX. CIV. PRAC. & REM. CODE § 37.009;

B. IT IS THEREFORE ORDERED Plaintiffs' claims under the Uniform Declaratory Judgment Act and for the recovery of attorney's fees under the Uniform Declaratory

Amended Final Judgment
*Grassroots Leadership, Inc. et al. v. Texas Department of Family and Protective Services et al.*

7

Page 4 of 8

4213

Judgment Act and TEX. CIV. PRAC. & REM. CODE § 37.009 are DISMISSED with

prejudice; and

C.  IT IS ORDERED that Defendant's Plea to the Jurisdiction is DENIED as to all

remaining grounds.

III.   Parties' Cross-Motions for Summary Judgment.

By agreement of the parties, the Court accepted the following Cross-Motions for

Summary Judgment regarding the validity of the FRC Rule by submission:

A.  Plaintiffs' Motion for Summary Judgment;

B.  Defendants' Motion for Summary Judgment;

C.  Intervenor Corrections Corporation of America's ("CCA") Motion for Summary

Judgment; and

D.  Intervenor The GEO Group's ("GEO") Motion for Summary.

After reviewing the parties' Cross-Motions for Summary Judgment and responses

thereto, the evidence presented and objections thereto, the pleadings on file, and the applicable

law, IT IS ORDERED, ADJUDGED, AND DECLARED that:

A.  Plaintiffs' Motion for Summary Judgment on Plaintiffs' claim for declaratory relief

under the APA is GRANTED;

B.  The FRC Rule contravenes TEX. HUM. RES. CODE § 42.002(4) and runs counter to the

general objectives of the Texas Human Resources Code and is, therefore, invalid;

C.  Defendants' Motion for Summary Judgment is DENIED;

D.  Intervenor GEO Group's Motion for Summary Judgment is DENIED; and

E.  Intervenor Correction Corporation of America's Motion for Summary Judgment is

DENIED.

Page **5** of **8**

Amended Final Judgment
*Grassroots Leadership, Inc. et al. v. Texas Department of Family and Protective Services et al.*

8

4214

IV.    Injunctive Relief and Denial of Automatic Supersedeas.

The Court FINDS that allowing Defendants to automatically supersede the Court's ruling that the FRC Rule is invalid would render the relief granted by this Amended Final Judgment ineffective and Plaintiffs would suffer imminent and irreparable harm because money damages are unavailable against the state agency and, unless the *status quo* is maintained during the pendency of the appeal, Plaintiffs will be deprived of their statutory rights to protection that the Legislature has afforded children in the state minimum standards as follows:

A.  Licensure under the FRC Rule would permit variances or exceptions to the legislatively mandated GRO requirements.  The variances or exceptions substantially endanger children by:

1.  Permitting children to share a bedroom with others at a number that exceeds maximum standards;

2.  Permitting children to share bedrooms with an unrelated adult;

3.  Permitting children over the age of three to share a bedroom with an unrelated adult; and

4.  Permitting unrelated children of different genders to share a bedroom;

B.  Licensure under the FRC Rule will facilitate longer periods of detention of the mothers and children detained at Karnes and Dilley, which hurts children by subjecting them to psychological and/or physiological trauma and deprivation of freedom of action.

The FRC Rule provides for exemptions to our State Minimum Standards that run counter to the objectives of the Texas Legislature, as well as the *Flores* Settlement Agreement, and does

Page 6 of 8

Amended Final Judgment                              9
*Grassroots Leadership, Inc. et al. v. Texas Department of Family and Protective Services et al.*

4215

not require the facilities to comply with the State's Minimum Standards for residential operations.

As outlined above, this Court has declared the FRC Rule is invalid.  During the pendency of any appeal of this Court's ruling, the Court FINDS it is in the best interest of the children detained by the federal government and housed at Karnes and Dilley that the State of Texas continue to provide regular and comprehensive oversight consistent with the minimum standards required by the State of Texas through: (i) unannounced state inspections to ensure the facility complies with existing state minimum standards; (ii) mandatory background checks on all employees working at the facility; (iii) public hearings; (iv) staff training; and (v) investigation of claims of abuse and neglect.

Accordingly, Defendants, and all of their officials, agents, servants, employees, and attorneys be and hereby are ORDERED to refrain from issuing licenses under the FRC Rule until the Court of Appeals issues a decision on appeal or further Order of the Court.

Defendants are FURTHER ORDERED to continue to investigate and report any allegations of abuse or neglect, standards deficiencies, or violation(s) of rule of law at Karnes and Dilley during the pendency of any appeal of this Court's ruling.

IT IS ORDERED that Intervenor CCA and Intervenor GEO Group shall cooperate with Defendants and shall not impede Defendants' efforts to conduct its investigative and regulatory functions at Dilley and Karnes through: (i) scheduled and/or unannounced state inspections to ensure that the facilities comply with existing state minimum standards; (ii) background checks on all employees working at the facilities; (iii) staff training; and (iv) investigation of claims of abuse of the children and mothers and/or neglect of children.

Amended Final Judgment
*Grassroots Leadership, Inc. et al. v. Texas Department of Family and Protective Services et al.*

10

Page 7 of 8

4216

The injunction is necessary to preserve the *status quo* and to allow Defendants the ability to continue regulatory and protective functions for the benefit of children detained at Karnes and Dilley until the challenge to the FRC Rule proceeds through appeal.

IT IS FURTHER ORDERED, in accord with Texas Rule of Appellate Procedure 24.2(a)(3), that the Court DECLINES to permit the Amended Final Judgment to be superseded, and that Plaintiffs shall deposit $500.00 into this Court's registry, which shall serve as security for this Court's Order declining to permit the Amended Final Judgment to be superseded.  This bond is sufficient because Defendants will not suffer any loss or damage as a result of the relief granted in this Amended Final Judgment.

IT IS FURTHER ORDERED that the $100.00 bond that Plaintiffs previously deposited as security for this Court's Temporary Orders may be applied to the $500.00 security.

All costs are assessed against each party incurring the same.

This Final Judgment disposes of all parties and claims and is a final and appealable judgment.

SIGNED on this the ___16th___ day of December 2016.

_____
JUDGE PRESIDING
KARIN CRUMP

Amended Final Judgment
*Grassroots Leadership, Inc. et al. v. Texas Department of Family and Protective Services et al.*

11

Page 8 of 8

4217

# Exhibit 2

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00261-CV

**Texas Department of Family and Protective Services; Henry Whitman, in His Official
Capacity as DFPS Commissioner; Texas Health and Human Services Commission;
Charles Smith, in his Official Capacity as HHSC Executive Commissioner;
Corrections Corporation of America; and The GEO Group, Inc., Appellants**

**v.**

**Grassroots Leadership, Inc.; Gloria Valenzuela; E. G. S., for herself and as next friend for
A. E. S. G.; F. D. G., for herself and as next friend for N. R. C. D.; Y. E. M. A., for herself
and as next friend for A. S. A.; Y. R. F., for herself and as next friend for C. R. R.;
S. J. M. G., for herself and as next friend for J. C. M.; K. G. R. M., for herself and as next
friend for A. V. R.; C. R. P., for herself and as next friend for A. N. C. P.; B. E. F. R., for
herself and as next friend for N. S. V.; S. E. G. E., for herself and as next friend for
G. E. A.; Leser Julieta Lopez Herrera, for herself and as next friend for A. B.; and
Rose Guzman de Marquez, for herself and as next friend for D. R., Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. D-1-GN-15-004336, HONORABLE KARIN CRUMP, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This appeal concerns several parties' challenges to the validity of a rule promulgated

by the Texas Department of Family and Protective Services (DFPS). The challenged rule requires

"family residential centers" (FRCs)—which serve as detention centers for immigrants and their

minor children who are subject to federal civil-immigration proceedings—to be licensed as "general

residential operations" (GROs) and, thus, subject to the State's minimum standards for such

facilities.[1]  As they did below in a plea to the jurisdiction, appellants DFPS and its Commissioner and the Texas Health and Human Services Commission (HHSC) and its Executive Commissioner contend that the trial court should not have reached the merits of the rule challenge because each plaintiff below lacked standing to confer jurisdiction on the trial court.  We agree with appellants and, for the following reasons, reverse the trial court's judgment and render judgment granting appellants' plea to the jurisdiction and dismissing appellees' rule-challenge claims with prejudice.

## BACKGROUND[2]

In 1985 a class of plaintiffs initiated a lawsuit against U.S. Immigration and Customs Enforcement (ICE) and other defendants in the District Court of Central California; many years later, the parties entered into a court-approved settlement of the lawsuit (the "*Flores* Settlement Agreement").  *See Flores v. Lynch*, 828 F.3d 898, 901–03 (9th Cir. 2016).  The *Flores* Settlement Agreement "set[] out nationwide policy for the detention, release, and treatment of minors in the custody of [ICE]."  *Id.* at 901.  Under the *Flores* Settlement Agreement, unless detention is necessary

---

[1]  The Providers sued the Texas Department of Family and Protective Services (DFPS) and its Commissioner, Henry Whitman, because DFPS was at the time the agency that handled licensing of child-care facilities.  Effective September 1, 2017, appellant Texas Health and Human Services Commission (HHSC) assumed responsibility for child-care licensing as a result of legislation directing that DFPS become a stand-alone agency that is separate from HHSC and will regulate child-care operations only to the extent of investigating child abuse, neglect, and exploitation.  *See* Act of May 22, 2017, 85th Leg., R.S., ch. 316, §§ 22, 24, 38, 2017 Tex. Gen. Laws 601, 607, 612. In accordance with this transfer of responsibility, the relevant rules have been transferred to Title 26 of the Texas Administrative Code.  *See* 43 Tex. Reg. 909 (2018) (announcing transfer of rules that contain minimum standards for child-care operations from DFPS to HHSC); *see also, e.g.*, 26 Tex. Admin. Code § 748.7 (2018) (Health & Human Servs. Comm'n, How are these regulations applied to family residential centers?).

[2]  The facts in this section are derived from recitations in the trial court's Amended Final Judgment.

2

to secure a minor's appearance in court or to ensure safety, ICE must promptly release the minor

to an adult family member or other suitable individual or entity.  *Id.* at 902–03.  Also, ICE must

temporarily place all unreleased minors in an unsecure and "licensed program"—i.e., a facility that

is "licensed by an appropriate State agency to provide residential, group, or foster care services for

dependent children."  *Id.* at 903.

      In response to increased numbers of Central Americans arriving at the U.S.-Mexico

border during the summer of 2014, and to deter further arrivals, ICE adopted a policy of detaining

all female-headed immigrant families.  *Flores v. Johnson*, 212 F. Supp. 3d 864, 869 (C.D. Cal.

2015), *aff'd in part, rev'd in part and remanded sub nom. Flores v. Lynch*, 828 F.3d 898 (9th

Cir. 2016).  Detention under ICE's new policy would last for the duration of the deportation

proceedings that determine if the mothers and children are entitled to remain in the United States.

*Id.*  Notwithstanding the *Flores* Settlement Agreement, ICE's new policy provided that the immigrants

would be detained in secure, unlicensed facilities.  *Id.*  In federal court, the new ICE policy was held

to violate the *Flores* Settlement Agreement.  *See id.* at 879 ("Defendants cannot be in substantial

compliance with the Agreement because the facilities are secure and non-licensed."), *aff'd in

relevant part*, 828 F.3d at 908–10.

      ICE opened three new family detention facilities, two in south Texas—known as

"Dilley" and "Karnes" due to their locations—and one in New Mexico, which was closed shortly

thereafter.  *Flores*, 828 F.3d at 904.  This lawsuit concerns the Dilley and Karnes facilities, which

are operated by private prison companies under contract with ICE.  Appellant Corrections Corporation

of America (currently known as CoreCivic) operates the Dilley facility; appellant GEO Group, Inc.,

3

operates the Karnes facility.  The Karnes and Dilley facilities began detaining immigrant women

and children in 2014.

DFPS did not attempt to regulate FRCs in Texas until it adopted an emergency rule

on September 2, 2015.  Before that time, DFPS had historically and consistently acknowledged that

it lacked authority to license FRCs and declined to do so based upon that lack of authority.  Shortly

after the emergency rule was adopted, Grassroots Leadership initiated this lawsuit to challenge the

emergency rule.  The trial court issued a temporary injunction prohibiting DFPS from implementing

the emergency rule but expressly permitting it to proceed through the traditional rulemaking

procedures outlined in the Texas Government Code. *See* Tex. Gov't Code §§ 2001.023–.029. DFPS

followed the procedures for rulemaking and subsequently adopted Rule 748.7 (referred to by the

parties and in the trial court's judgment as the "FRC Rule").  *See* 26 Tex. Admin. Code § 748.7

(2018) (Health & Human Servs. Comm'n, How are these regulations applied to family residential

centers?) (formerly codified at 40 Tex. Admin. Code § 748.7).

Grassroots Leadership amended its petition several times while the cause was pending

below, adding additional plaintiffs:  Gloria Valenzuela, who operates a day-care facility in El Paso,

and several detainees, on behalf of themselves and their minor children.  CoreCivic and GEO Group

intervened as defendants.  Appellees' live petition asserts the following causes of action against

appellants: (1) a challenge to the FRC Rule as allegedly exceeding DFPS's statutory authority in

contravention of the Human Resources Code, *see* Tex. Gov't Code § 2001.038; (2) a request for

declaratory relief under the Uniform Declaratory Judgments Act (UDJA), *see* Tex. Civ. Prac. &

Rem. Code §§ 37.001–.011; and (3) and a claim that DFPS's attempts to issue licenses to Karnes and Dilley constitute ultra vires acts.[3]

Appellees' live petition outlines their primary contentions for challenging the validity of the FRC Rule: the rule exceeds DFPS's statutory authority; DFPS did not provide a reasoned justification, *see* Tex. Gov't Code 2001.033(a)(1); the rule's provisions prolong the detention of minors; the rule allows for the detention of minors in violation of Family Code section 54.011(f), *see* Tex. Fam. Code § 54.011(f) ("[A] nonoffender, including a person who has been taken into custody and is being held solely for deportation out of the United States, may not be detained for any period of time in a secure detention facility . . . ."); and the rule "authoriz[es] conditions of detention for mothers and children . . . by permitting exceptions to minimum child safety standards established by DFPS itself . . . that increase their risk of physical harm and fear for their physical safety." Plaintiffs below sought a declaration invalidating the rule and declaring that DFPS has no authority to issue licenses to Dilley and Karnes.

Appellants filed pleas to the jurisdiction claiming that appellees lack standing to assert their claims. In its Final Amended Judgment, the trial court denied the pleas to the jurisdiction as to appellees' rule challenge and declared the FRC Rule invalid because it "contravenes" Human Resources Code section 42.002(4) and "runs counter to the general objectives of the [] Human

---

[3] Only the appellees' rule challenge is before us on appeal, as the trial court dismissed appellees' UDJA claim when granting appellants' plea to the jurisdiction, and the trial court's Amended Final Judgment, while not specifically ruling on the ultra vires claims, "dispose[d] of all parties and claims." *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001) (noting that judgment issued without conventional trial is final if it actually disposes of all claims and parties). Appellees have not cross-appealed the trial court's judgment with respect to their declaratory-judgment and ultra vires claims.

5

Resources Code." The Final Amended Judgment also ordered DFPS and HHSC to "refrain from issuing licenses under the FRC Rule until the Court of Appeals issues a decision on appeal or further Order of the Court" but to "continue to investigate and report any allegations of abuse or neglect, standards deficiencies, or violation(s) of rule of law at Karnes and Dilley during the pendency of any appeal."

## DISCUSSION

Appellants contend that, before we address the merits of appellees' rule challenge, we must determine whether any of the appellees has standing. Because standing is a component of subject-matter jurisdiction, we agree that we must first consider the issue. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex. 1993) (noting that appellate courts consider plaintiff's standing under same standard by which they review subject-matter jurisdiction generally, which requires plaintiff to allege facts that affirmatively demonstrate court's jurisdiction to hear cause). Standing requires "a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court." *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 154 (Tex. 2012); *see Texas Dep't of State Health Servs. v. Balquinta*, 429 S.W.3d 726, 739 (Tex. App.—Austin 2014, pet. dism'd).

To satisfy the supreme court's standing test, a plaintiff "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Heckman*, 369 S.W.3d at 154 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). The standing inquiry "begins with the plaintiff's alleged injury." *Id.* at 155. That is, the plaintiff must plead that she is *personally* injured, demonstrating facts that she, herself (rather than a third

6

party or the public at large) suffered the injury.  *Id.*  As for the injury itself, it "must be concrete and particularized, actual or imminent, not hypothetical." *Id.* (quoting *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304–05 (Tex. 2008)).  Standing is determined at the time suit is filed in the trial court, and subsequent events do not deprive the court of subject-matter jurisdiction.  *Texas Ass'n of Bus.*, 852 S.W.2d at 446 n.9.  We review the denial of a plea to the jurisdiction de novo.  *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

We now consider whether each appellee has standing—that is, whether each has a concrete and particularized injury fairly traceable to the FRC Rule that is likely to be redressed by the requested relief.

**Whether Grassroots Leadership has standing**

Per the testimony of its Executive Director, Grassroots Leadership is a non-profit association focused on "advocating for policies that reduce reliance on incarceration and detention." Grassroots Leadership has alleged that it opposes the FRC Rule because it would allow Karnes and Dilley to detain children for longer periods of time under lower standards of care than are provided to children in all other Texas GROs and that the association has been forced to "divert resources to opposing the FRC Rule's adoption and the licensure of private prisons as childcare facilities."

An associational plaintiff can sue on behalf of its members, in which case it must demonstrate standing based on at least one freestanding claim by a member.  *Texas Ass'n of Bus.*, 852 S.W.2d at 446–47.  However, Grassroots Leadership has not asserted that it has any members and, therefore, cannot meet the requirements of the associational test for standing.  *See id.* (adopting U.S. Supreme Court's associational-standing test requiring, relevantly, that association's members

7

would otherwise have standing to sue in their own right and citing *Hunt v. Washington State Apple
Advert. Comm'n*, 432 U.S. 333, 343 (1977)); *see also Texas Soc'y of Prof'l Eng'rs v. Texas Bd. of
Architectural Exam'rs*, No. 03-08-00288-CV, 2008 WL 4682446, at *3–4 (Tex. App.—Austin
Oct. 24, 2008, no pet.) (mem. op.) (declining to find standing where plaintiff association could not
meet associational-standing test).  Accordingly, Grassroots Leadership is required to establish standing
based on "concrete and particularized" injury to itself, as an entity.  *See Heckman*, 369 S.W.3d at
155; *City of San Antonio v. Headwaters Coal., Inc.*, 381 S.W.3d 543, 549–50 (Tex. App.—San
Antonio 2012, pet. denied) (concluding that nonprofit corporation that owned land immediately
upstream from city's proposed drainage project had standing to bring injunction suit because it
showed it would suffer particularized injury distinct from that suffered by general public).

      Grassroots Leadership alleges that its injury here is that it was required to "divert
volunteer and financial resources from its other work, including . . . starting visitation programs to
detained migrants at immigration detention centers around Texas, an advocacy campaign to end the
immigration detention bed quota, and producing a research report on federal-court prosecution of
migrants at the border."  In other words, Grassroots Leadership asserts that it spent money on its
advocacy activities related to opposing the private detention facilities.  However, these activities
are not sufficient to meet the test for individualized standing, as the injury it claims to have
suffered—the expenditure of advocacy resources—is too attenuated from any legally protected
interest it could possibly have in the FRC Rule, not itself being subject to the rule or directly affected
by its provisions.  *See Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001) ("[b]y particularized, we
mean that the injury must affect the plaintiff in a personal and individual way") (citing *Lujan v.*

8

*Defenders of Wildlife*, 504 U.S. 555, 560 & n.1 (1992)); *M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 707–08 (Tex. 2001) (plaintiff must be "personally aggrieved" to establish standing). Furthermore, Grassroots Leadership's choice to expend advocacy resources to challenge the FRC Rule and the detention centers generally—assuming that such "injury" were sufficiently concrete and particularized—cannot reasonably be considered "fairly traceable" to DFPS's or HHSC's conduct in promulgating or enforcing the rule.

While Grassroots Leadership cites *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982), for its contention that its advocacy expenditure creates standing, we note that the standing test outlined in *Havens* (requiring the plaintiff to have a "personal stake" in the outcome of the controversy, which was met by the organization's allegation that it was required to spend money to counteract governmental policy) applies specifically to claims brought under the federal Fair Housing Act.[4]  *See id.* at 378; *see also Midpeninsula Citizens for Fair Hous. v. Westwood Inv'rs*, 221 Cal. App. 3d 1377, 1385 (Cal. Ct. App. 1990) (declining to expand *Havens* beyond Fair Housing Act damages claims because it did not address constitutional standing).  This is not a Fair Housing

---

[4]  Grassroots Leadership also asserts that it has standing to redress the violation of its "statutory rights" under the Administrative Procedure Act (APA) in that DFPS allegedly did not "seriously consider" Grassroots Leadership's objections and comments or give adequate justification for disregarding them when promulgating the final rule.  *See* Tex. Gov't Code §§ 2001.029, .030; *Planned Parenthood v. Gee*, 862 F.3d 445, 455 (5th Cir. 2017) ("[V]iolation of a statutory right, even standing alone, may be sufficient to satisfy the injury requirement . . . .").  We reject this argument because the supreme court has held that the APA does not extend the scope of constitutional standing. *See Finance Comm'n v. Norwood*, 418 S.W.3d 566, 582 n.83 (Tex. 2013) ("The [APA] does not purport to set a higher standard than that set by the general doctrine of standing, and it cannot be lower, since courts' constitutional jurisdiction cannot be enlarged by statute.").  Morever, the case on which Grassroots Leadership relies speaks to the alleged deprivation of a "statutory right of entitlement" as the basis of standing, *see Gee*, 862 F.3d at 455; here, Grassroots Leadership has no statutory right under the APA that rises to the level of an entitlement.

9

Act case, and we decline to expand *Havens* beyond such claims.  Therefore, plaintiffs must meet the particularized injury test adopted by the Texas Supreme Court and the United States Supreme Court since *Havens.  See Brown*, 53 S.W.3d at 305.  Because Grassroots Leadership has not pleaded a particularized injury, we conclude that it lacks standing to bring this rule challenge.

### Whether Valenzuela has standing

Valenzuela operates a small day-care facility in El Paso and asserts standing based on "license disparagement," contending that the licensing of the FRCs as GROs will affect parents' perceptions of her day-care license, perhaps causing them to choose unlicensed child care based on their negative perceptions of the "jail-like" FRCs.  *See Texas State Bd. of Podiatric Med. Exam'rs v. Texas Orthopaedic Ass'n*, No. 03-04-00253-CV, 2004 WL 2556917, at *1 n.3 (Tex. App.—Austin Nov. 12, 2004, no pet.) (mem. op.) (holding that association of orthopedists met injury prong of standing test to challenge rule granting podiatrists right to perform procedures that otherwise would be considered practice of medicine based on association's allegation that privilege of practicing medicine would be diminished because podiatrists are neither licensed nor trained to practice medicine); *see also Intercontinental Terminals Co. v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 895 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (in case where standing was not at issue, court concluded that where one business competitor alleged loss of reputation and goodwill as injury in dispute with another competitor about use of shared rail line, complaining competitor sufficiently alleged threatened injury to support temporary injunction).

However, the case on which Valenzuela relies does not support standing under her circumstances, as it involved the expansion of an exception to medical licensure, which would put

a previous license holder (orthopedists) in direct economic competition with new license holders
(podiatrists).  *See Texas State Bd. of Podiatric Med. Exam'rs*, 2004 WL 2556917, at *2.  Here,
Valenzuela holds a State license to operate a small day-care facility; Dilley and Karnes, located in
south Texas over 500 miles away, are twenty-four-hour GROs each with hundreds of residents and
subject to a completely different type of licensing.  Dilley and Karnes are not and could not be in
any direct economic competition with Valenzuela's facility.  Valenzuela has not pleaded that she has
ever been personally detained at any FRC or that she operates one.  Her speculative scenario about
parents choosing unlicensed day care due to potentially negative perceptions of day-care licenses
such as hers is far too attenuated and speculative to support standing requirements.  Simply put,
Valenzuela has not pleaded any concrete and particularized injury to herself or her day-care facility
as a result of the FRC Rule.  *See Brown*, 53 S.W.3d at 305.  Accordingly, we conclude that Valenzuela
lacks standing to bring this rule challenge.

***Whether the detainees have standing***

> The detainees, none of whom still reside in the detention centers,[5] assert standing
based on alleged harm to their minor children, whom they claim will be detained for longer periods
of time—which itself causes "grievous harm to children"[6]—and in "dangerous conditions" due to

---

[5]  Appellants also assert that the detainees' claims are moot based on the fact that none of
them reside any longer in the facilities at issue.  Because mootness is a question separate from
standing, *see, e.g.*, *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 162 (Tex. 2012), we address the
issue of the detainees' standing first and then, if necessary, appellants' mootness argument.

[6]  There was evidence adduced at the temporary-injunction hearing from appellees' expert
about the psychological effect of detention on children, specifically about how the negative
effects—including stress, trauma, and hypervigilance—increase the longer the children remain in
detention.

the challenged rule's "bedroom-rule waivers" that allegedly "force children to sleep in the same bedroom as adult strangers, exposing them to invasion of privacy and risk of sexual assault." Essentially, the detainees' alleged injury is the harm that they contend will result from lengthier detention and the danger that the bedroom-rule waivers pose—they assert that these "risks to safety suffice to prove Detainee Plaintiffs' standing."[7] *See Texas Ass'n of Bus.*, 852 S.W.2d at 447 (holding that "[a] substantial risk of injury is sufficient" to confer standing).  They further contend that the fact the FRC Rule and licensing thereunder will also incrementally benefit them and their children in the form of more rigorous background checks and inspections of facilities does not obviate their standing because the standing test does not require a balancing between alleged harm and benefit; it requires only a showing of harm, even simply "an identifiable trifle."  *See United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 689 n.14 (1973) (noting that "injury in fact" element of standing test "serves to distinguish a person with a direct stake in the outcome of a litigation—even though small—from a person with a mere interest in the problem"); *OCA-Greater Hous. v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017) (holding that injury requirement of standing inquiry is "qualitative, not quantitative").

      While the detainees concede that the *fact* of detention is traceable to the federal government and to ICE (and thus not redressable in this lawsuit against appellants), they maintain

---

[7]  The FRC Rule provides that FRCs must comply with the same "minimum standards" applicable to GROs generally, except that FRCs need not comply with the following minimum standards: (1) the maximum of four occupants per bedroom, (2) the prohibition against a child sharing a bedroom with an adult *if the bedroom is being shared in order to allow a child to remain with the child's parent or other family member*, and (3) the prohibition against children of opposite genders sharing a bedroom as long as the children are members of the same family and under the age of six.  *See* 26 Tex. Admin. Code § 748.7(c).

that the *length* and *conditions* of detention—which the detainees explicitly challenge—are traceable to the State, which has the authority to issue the FRC licenses and waive the GRO minimum standards, as alleged here.  As to the conditions of detention—the alleged danger from "forcing children to share bedrooms with adult strangers"—appellees contend in their brief that the FRC Rule's waiver of bedroom minimum requirements "allows any adult—even a stranger—to sleep in the same bedroom with an unrelated child."  Appellees cite to testimony in the record from detainees who claim to have had to share a bedroom with their children in addition to other, unrelated adults at Dilley and Karnes.  They also cite to testimony of a twelve-year-old girl who was allegedly groped by an unrelated female adult detainee with whom she was sharing a bedroom.

However, a review of the text of the challenged rule belies appellees' contention that the rule "allows children to share bedrooms with unrelated adults."  To the contrary, the FRC Rule explicitly forbids adults to share a bedroom with unrelated children:  "A family residential center is not required to comply with all terms of the following Minimum Standards: . . . the limitation on a child sharing a bedroom with an adult in § 748.3361 of this title (relating to May a child in care share a bedroom with an adult?), *if the bedroom is being shared in order to allow a child to remain with the child's parent or other family member*."  26 Tex. Admin. Code § 748.7(c)(2) (emphasis added). That is, the FRC Rule allows for a minor to share a bedroom with the child's parent or adult family member; on its face, it does not allow a minor to share a bedroom with an *unrelated* adult.  Simply put, the FRC Rule does not allow for the alleged harmful conditions about which appellees complain and, therefore, appellees have not asserted an injury that is fairly traceable to the FRC Rule's bedroom-rule waiver that is sufficient to confer standing.

13

We further conclude that the length a child is detained—and the alleged harm resulting from longer detention periods allegedly made possible by licensure of the FRCs—is not fairly traceable to the FRC Rule and appellants.  Rather, the length of detention is traceable to federal immigration policy and the *Flores* Settlement Agreement's requirement that state facilities detaining minors be licensed.  The FRC Rule and DFPS's promulgation thereof are not what permits the allegedly longer detention periods about which appellees complain; rather, the length of detention is determined by ICE policy and is solely within ICE's discretion.  *See Southwest Pharmacy Sols., Inc. v. Texas Health & Human Servs. Comm'n*, 408 S.W.3d 549, 565 (Tex. App.—Austin 2013, pet. denied) (concluding that economic losses alleged by plaintiff resulted from legislative changes to Medicaid program, not from properly implemented rules effecting those changes).  Length of detention is solely the province of ICE; implementation of the FRC Rule cannot determine how long detainees are detained.

Appellees' alleged injury of lengthier detention caused by the FRC Rule is also too speculative to meet the concrete-injury requirement of the standing analysis.[8]  *See DaimlerChrysler Corp.*, 252 S.W.3d at 307 ("[I]f injury is only hypothetical, there is no real controversy.").  It is ICE that determines where detainees will be detained, not the FRC Rule or the State; were Dilley and Karnes not licensed, we cannot predict whether the detainees would be detained in a facility licensed by another state, whether they would be detained in unlicensed facilities, or whether they would be released.  We conclude that the detainees' alleged injury in the form of possible prolonged detention

---

[8]  Moreover, appellees conceded in their motion for summary judgment that the average length of stay at Karnes has actually decreased since the facility became licensed under the FRC Rule.

14

of their minor children is neither concrete and particularized nor fairly traceable to DFPS or HHSC and is, therefore, insufficient to confer standing.

## CONCLUSION

Because none of the appellees has standing to challenge the FRC Rule, the trial court did not have subject-matter jurisdiction over the cause, and the trial court erred in denying appellants' plea to the jurisdiction.  Accordingly, we reverse the trial court's judgment and render judgment granting appellants' plea to the jurisdiction and dismissing appellees' rule-challenge claims with prejudice.

_____

David Puryear, Justice

Before Justices Puryear, Goodwin, and Bourland

Reversed and Rendered

Filed:   November 28, 2018

15

Exhibit 3

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO.  03-18-00261-CV

---

**Texas Department of Family and Protective Services; Henry Whitman, in His Official Capacity as DFPS Commissioner; Texas Health and Human Services Commission; Charles Smith, in his Official Capacity as HHSC Executive Commissioner; Corrections Corporation of America; and The GEO Group, Inc., Appellants**

**v.**

**Grassroots Leadership, Inc.; Gloria Valenzuela; E. G. S., for herself and as next friend for A. E. S. G.; F. D. G., for herself and as next friend for N. R. C. D.; Y. E. M. A., for herself and as next friend for A. S. A.; Y. R. F., for herself and as next friend for C. R. R.; S. J. M. G., for herself and as next friend for J. C. M.; K. G. R. M., for herself and as next friend for A. V. R.; C. R. P., for herself and as next friend for A. N. C. P.; B. E. F. R., for herself and as next friend for N. S. V.; S. E. G. E., for herself and as next friend for G. E. A.; Leser Julieta Lopez Herrera, for herself and as next friend for A. B.; and Rose Guzman de Marquez, for herself and as next friend for D. R., Appellees**

---

**FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-GN-15-004336, THE HONORABLE KARIN CRUMP, JUDGE PRESIDING**

---

# O R D E R

The Court denies appellees' motion for en banc reconsideration.

It is ordered on December 5, 2019.

Before Chief Justice Rose, Justices Goodwin, Baker, Triana, Kelly, and Smith
  Dissenting Opinion by Justice Triana, Joined by Justices Kelly and Smith

# Exhibit 4

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO.  03-18-00261-CV

---

**Texas Department of Family and Protective Services; Henry Whitman, in His Official Capacity as DFPS Commissioner; Texas Health and Human Services Commission; Charles Smith, in his Official Capacity as HHSC Executive Commissioner; Corrections Corporation of America; and The GEO Group, Inc., Appellants**

**v.**

**Grassroots Leadership, Inc.; Gloria Valenzuela; E. G. S., for herself and as next friend for A. E. S. G.; F. D. G., for herself and as next friend for N. R. C. D.; Y. E. M. A., for herself and as next friend for A. S. A.; Y. R. F., for herself and as next friend for C. R. R.; S. J. M. G., for herself and as next friend for J. C. M.; K. G. R. M., for herself and as next friend for A. V. R.; C. R. P., for herself and as next friend for A. N. C. P.; B. E. F. R., for herself and as next friend for N. S. V.; S. E. G. E., for herself and as next friend for G. E. A.; Leser Julieta Lopez Herrera, for herself and as next friend for A. B.; and Rose Guzman de Marquez, for herself and as next friend for D. R., Appellees**

---

### FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-15-004336, THE HONORABLE KARIN CRUMP, JUDGE PRESIDING

---

## DISSENTING OPINION

## TO DENIAL OF EN BANC RECONSIDERATION

This case involves a challenge to a rule adopted by the Texas Department of Family and Protective Services (DFPS) that authorizes the State to issue child-care-center licenses to immigrant detention facilities in Texas known as "family residential centers" (FRCs). The FRCs are operated by private prison companies under contract with the federal government, specifically U.S. Immigration and Customs Enforcement (ICE). Appellees, who were plaintiffs

in the court below (Plaintiffs), challenged the validity of the rule on several grounds, including

that the rule exceeded DFPS's statutory authority, prolonged the amount of time that children

may be detained in the facilities, and allowed children to be detained in conditions that

endangered their safety.  Appellants, who were defendants in the court below (Defendants), filed

pleas to the jurisdiction asserting that Plaintiffs lacked standing to assert their claims.  The

district court denied the pleas to the jurisdiction and declared the rule invalid.  Defendants

appealed the district court's judgment.

On September 5, 2018, the appeal was submitted on oral argument to this Court.

On November 28, 2018, the Court reversed the district court's judgment and rendered judgment

granting Defendants' pleas to the jurisdiction, concluding that all Plaintiffs lacked standing to

assert their claims.  *See Texas Dep't of Family & Protective Servs. v. Grassroots Leadership,*

*Inc.*, No. 03-18-00261-CV, 2018 Tex. App. LEXIS 9643, at *18 (Tex. App.—Austin Nov. 28,

2018, no pet. h.) (mem. op.).  On December 14, 2018, the Court overruled Plaintiffs' motion for

rehearing.

On January 11, 2019, Plaintiffs filed a motion for en banc reconsideration.

Today, three of the six justices on this Court have voted to grant that motion and three have

voted to deny that motion, resulting in the denial of en banc reconsideration.  *See* Tex. R. App. P.

49.7 (requiring approval of majority of court before appeal may be reconsidered en banc).

Because I would grant the motion, I respectfully dissent from that denial.

"En banc consideration of a case is not favored and should not be ordered unless

necessary to secure or maintain uniformity of the court's decisions or unless extraordinary

circumstances require en banc consideration."  Tex. R. App. P. 41.2(c).  The rules do not define

what constitutes "extraordinary circumstances," and courts have discretion to determine whether

such circumstances exist in a given case. *See Chakrabarty v. Ganguly*, 573 S.W.3d 413, 415–16 & n.4 (Tex. App.—Dallas 2019, no pet.) ("The standard set forth in Rule 41 is sufficiently broad to afford the Court the discretion to consider a case en banc 'if the circumstances require and the court votes to do so.'" (quoting *Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 708 n.1 (Tex. 2003)). I agree with former Chief Justice Woodie Jones that "extraordinary circumstances" would include "addressing issues that are highly significant to the public or in which the public has a high level of interest." *Twigland Fashions, Ltd. v. Miller*, 335 S.W.3d 206, 226 (Tex. App.—Austin 2010, no pet.) (Jones, C.J., concurring in denial of en banc reh'g).

Granting en banc reconsideration based on "extraordinary circumstances" is rare but not unprecedented. For example, in *Lawrence v. State*, 41 S.W.3d 349 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd), *rev'd*, 539 U.S. 558, 579 (2003), the Houston Fourteenth Court of Appeals granted en banc reconsideration to determine whether a Texas statute criminalizing certain sexual conduct between consenting adults was facially unconstitutional. In *Rodriguez v. Cuellar*, 143 S.W.3d 251 (Tex. App.—San Antonio 2004, pet. dism'd), the San Antonio Court of Appeals, in an opinion authored by current Texas Supreme Court Justice Paul Green, granted en banc reconsideration to determine whether the trial court had jurisdiction to determine the merits of a contentious federal election contest. Both cases addressed issues of statewide and arguably national importance that were "highly significant to the public or in which the public ha[d] a high level of interest" at the time.

This case addresses state policies that affect the length and conditions of detention faced by immigrant children and their mothers in Texas. The detention of immigrant families in Texas and elsewhere has received extensive news coverage and analysis in both state and national media outlets for several years, dating back to the previous presidential administration

3

and intensifying during the current administration.  There are few, if any, issues in which the public has shown a higher level of sustained interest.  This case also touches on the relationship between state administrative law and federal immigration policy[1] and thus could have far-reaching legal and policy ramifications in future cases, both here in Texas and in other states where immigrant children may be detained.[2]   Given the continued statewide and national significance of these issues, I believe it is imperative that the entire Court hears and decides this appeal.

With regard to the merits of the Court's opinion, I agree with the Court that Plaintiffs Grassroots Leadership, Inc., a non-profit organization focused on "advocating for

---

[1] The detention and treatment of minors in immigration custody is governed by the terms of the *Flores* Settlement Agreement, a court-approved settlement of a federal lawsuit filed by detained minors against the Immigration and Naturalization Service.  *See Flores v. Barr*, 934 F.3d 910, 912–16 (9th Cir. 2019); *Flores v. Lynch*, 828 F.3d 898, 901–03 (9th Cir. 2016).  The agreement sets strict limitations on the length of time that children may be detained in immigration facilities, generally no longer than 20 days.  *See Lynch*, 828 F.3d at 901–03; *Flores v. Sessions*, 394 F. Supp. 3d 1041, 1070 (C.D. Cal. 2017).  However, when ICE detains children in state-licensed facilities, this prolongs indefinitely the length of time that children may be detained.  *See Lynch*, 828 F.3d at 903.  Thus, declaring the DFPS rule valid or invalid could have a significant effect on federal immigration policy moving forward.  As Plaintiffs observe in their brief, "The State is not a mere bystander to the federal government's policies.  A license is required before the federal government can detain children longer—its stated goal.  Only the State can license the facilities as child-care centers.  By issuing a rule to license these facilities, the State enables the federal government to prolong children's detention under unsafe conditions."

[2] In addition to the two Texas facilities at issue in this appeal, ICE opened a third immigrant detention center in New Mexico.  *See id*. at 904.  Although that facility is now closed, there is another detention center located in Pennsylvania that "has been monitored and licensed by state authorities under the state standards applicable to child residential and day treatment facilities" in that state.  *See id*. at 903; *see also Sessions*, 394 F. Supp. 3d at 1066–71 (discussing alleged conditions at Pennsylvania facility).  If future lawsuits were to be filed in other states where immigrant children are detained, courts in those jurisdictions could look to this Court's opinion for guidance.  Moreover, this Court's opinion could either encourage or discourage current and future detainees in Texas and elsewhere from filing similar lawsuits, and it could also encourage or discourage other states to adopt rules similar to the DFPS rule.

4

policies that reduce reliance on incarceration and detention," and Gloria Valenzuela, the owner of a child-care center located in El Paso that has no connection to the immigrant detention centers at issue in this case, lack standing to challenge the DFPS rule. *See Grassroots Leadership, Inc.*, 2018 Tex. App. LEXIS 9643, at *8–13. However, I would conclude that the Detainee Plaintiffs have standing to assert their claims.

Standing, a component of subject-matter jurisdiction, "'requires a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court.'" *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 484 (Tex. 2018) (quoting *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012)). Stated another way, to have standing, "'[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Id.* at 485. "As for the injury itself, it 'must be concrete and particularized, actual or imminent, not hypothetical.'" *Heckman*, 369 S.W.3d at 155.

"Our concern is with a party's right to initiate a lawsuit and the trial court's corresponding power to hear the case *ab initio*." *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 n.9 (Tex. 1993). Thus, "[s]tanding is determined at the time suit is filed in the trial court, and subsequent events do not deprive the court of subject matter jurisdiction." *Id.* In determining whether a plaintiff has standing, "[w]e construe the plaintiff's pleadings liberally, taking all factual assertions as true, and look to the plaintiff's intent." *Heckman*, 369 S.W.3d at 150 (citing *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)).

The Detainee Plaintiffs consist of eleven mothers and their minor children who were detained at the time suit was filed in the two immigrant detention centers in Texas that are

licensed under the DFPS rule.  Detainee Plaintiffs allege that the licensure of the facilities allowed the children to be detained for longer periods of time and to sleep in bedrooms with unrelated adults, which violates the children's privacy rights and exposes them to the risk of sexual assault.[3]  This risk of harm is not speculative or hypothetical.  One mother testified at a preliminary hearing that when she and her 12-year-old daughter were detained at one of the facilities, an adult woman had touched "her [daughter] on her private parts."  Additionally, there was expert testimony admitted at the hearing tending to show that the negative psychological effects of detention on children are severe and that the negative effects increase in severity the longer that children are detained.  I would conclude on this record that the Detainee Plaintiffs sufficiently alleged a concrete and particularized injury to the minor children who were detained at the facilities.  *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 155 (2010) (concluding that "significant risk" of injury from agency action, even if injury did not occur, was "sufficiently concrete to satisfy the injury-in-fact prong of the constitutional standing analysis"); *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 594 (Tex. 2016) ("The law has recognized numerous types of legal injuries, including injuries to a person's . . . right to privacy . . . ."); *see also Billings v. Atkinson*, 489 S.W.2d 858, 861 (Tex. 1973) ("Damages for mental suffering are recoverable without the necessity of showing actual physical injury in a case of

---

[3] The Court concluded that the text of the rule "does not allow a minor to share a bedroom with an *unrelated* adult."  *Texas Dep't of Family & Protective Servs. v. Grassroots Leadership, Inc.*, No. 03-18-00261-CV, 2018 Tex. App. LEXIS 9643, at *15–16 (Tex. App.—Austin Nov. 28, 2018, no pet. h.) (mem. op.) (emphasis in original).  I disagree.  The text of the rule expressly provides that an FRC "is not required to comply" with "the limitation on a child sharing a bedroom with an adult . . . if the bedroom is being shared in order to allow a child to remain with the child's parent or other family member." 26 Tex. Admin. Code § 748.7(c)(2).  In other words, so long as the child's parent "or other family member" shares the bedroom with the child, unrelated adults may also sleep in the same bedroom.

6

willful invasion of the right of privacy because the injury is essentially mental and subjective, not

actual harm done to the plaintiff's body.").

I would also conclude that the injury is "fairly traceable" to the FRC rule and

Defendants.    The Court concludes that it is not, reasoning that "the length of detention is

traceable to federal immigration policy and the *Flores* Settlement Agreement's requirement that

state facilities detaining minors be licensed."   *Grassroots Leadership, Inc.*, 2018 Tex. App.

LEXIS 9643, at *16.   However, the Court's conclusion is contrary to both United States and

Texas Supreme Court precedent recognizing that an injury can have multiple causes and that an

injury is traceable to a party so long as the party "contributed" to the injury in some way.   *See,*

*e.g.*, *Massachusetts v. E.P.A.*, 549 U.S. 497, 523 (2007) (concluding that agency contributed to

state's injury from global warming because of agency's failure to regulate greenhouse gases);

*Bennett v. Spear*, 520 U.S. 154, 168–69 (1997) (concluding that agency's "determinative or

coercive effect upon the action of someone else" contributed to plaintiff's injury); *Heckman*, 369

S.W.3d at 157 (concluding that plaintiff's injury from state law on indigent defendants could be

traceable to Williamson County because county was responsible for implementing state law

"within its borders" and therefore contributed to plaintiff's injury).

In this case, although ICE ultimately decides the length of detention, ICE is

constrained by the *Flores* settlement, which restricts the length of time that immigrant children

may be detained in unlicensed facilities.   However, those restrictions do not apply if ICE detains

children in facilities licensed by DFPS.   Thus, the FRC Rule and DFPS's promulgation of it

"alters the legal regime to which [ICE] is subject," *see Bennett*, 520 U.S. at 168–69, and enables

ICE to detain children for longer periods of time at the DFPS-licensed facilities.   Accordingly,

the Detainee Plaintiffs' injuries are "fairly traceable" to DFPS.

Finally, I would conclude that the injury is likely to be redressed by the requested relief.  The requested relief is the invalidation of the DFPS rule that allows the children to be detained for a prolonged period of time in conditions that violate their privacy rights and endanger their safety.  Accordingly, the invalidation of the rule would restore the legal protections afforded to the minor children that existed before DFPS adopted the rule, including the strict limitations under *Flores* on the amount of time that they may be detained in the Texas facilities and the prohibition on children sleeping in the same bedrooms with unrelated adults in those facilities.[4]  *See Flores v. Sessions*, 394 F. Supp. 3d 1041, 1070–71 (C.D. Cal. 2017); *see also* 26 Tex. Admin Code §§ 748.3357, .3361, .3363.

For these reasons, I would grant Plaintiffs' motion for en banc reconsideration, conclude that the Detainee Plaintiffs have standing to assert their claims, and proceed to consider the merits of their challenge to the validity of the DFPS rule.  Because the Court does not, I respectfully dissent.

---

[4] In their briefs on original submission and in their responses to the motion for en banc reconsideration, Defendants also argued that the case was moot because the Detainee Plaintiffs had been released from confinement at the time the district court entered its judgment.  This Court did not address this issue in its opinion because of its resolution of the standing issue.  *See Grassroots Leadership, Inc.*, 2018 Tex. App. LEXIS 9643, at *13 n.5.  Without going into unnecessary detail here, *see* Tex. R. App. P. 47.1, I would conclude that, as a result of the length of time that the Detainee Plaintiffs were confined and the fact that they could be re-detained at the same facilities in the future, their claims satisfy the "capable of repetition yet evading review" exception to the mootness doctrine.  *See Sosna v. Iowa*, 419 U.S. 393, 401–02 (1975); *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 227–28 (3d Cir. 2011).

_____

Gisela D. Triana, Justice

Before Chief Justice Rose, Justices Goodwin, Baker, Triana, Kelly, and Smith

Dissenting Opinion to Denial of En Banc Reconsideration
  Joined by Justices Kelly and Smith

Filed:   December 5, 2019

9