# EXHIBIT C

# TO NOVEMBER 23, 2020 RESPONSE BY *AMICI CURIAE* LSPs TO ICE JUVENILE COORDINATOR REPORT

**SUPPLEMENTAL DECLARATION OF ANDREA MEZA**

I, Andrea Meza, swearing under penalties of perjury, make the following declaration:

1. I previously submitted a declaration to the Court in this matter. I now submit this supplemental sworn declaration. The facts set forth below are known personally to me and, if called as a witness, I could and would testify competently thereto under oath.

2. My name is Andrea Meza and I am an attorney and the Director of the Family Detention Services Program at the Refugee and Immigrant Center for Education and Legal Services ("RAICES").  I have been the program Director since March 2019.  Prior to my position as Director I served as the Associate Director from October 2018-March 2019. From September 2015 to July 2017 I was an Equal Justice Work Fellow and provided direct legal services to families at Karnes. I have been licensed in the state of Texas since November 6, 2015.

**By Concentrating the Detention of Class Members and Their Parents at Karnes, ICE has Replicated the Isolated Conditions of "Hoteling" Which This Court Condemned.**

3. Beginning on October 22, 2020, and over the remainder of the week, ICE transferred all Class Members and their parents in Title 8 proceedings from the Karnes County Residential Center ("Karnes") to the South Texas Family Residential Center ("Dilley"). These transfers traumatized Class Members and their parents who believed they were being deported despite having pending cases.  Medically vulnerable Class Members and their parents were transferred.  The transfers occurred with no notice to counsel and despite confirmed cases of COVID-19 at both Karnes and Dilley.

4. On the day that transfers began, U.S. Immigration and Customs Enforcement ("ICE") cut off phone access in cells and told parents they could not contact their attorneys.  Since that date, RAICES has received phone calls from only two detained families in Title 42 proceedings at Karnes, despite representations from DHS officials that at least 23 families and 50 individuals have been detained in the past month.

5. In this Court's September 4 Order, Defendants were admonished for hoteling Class Members because, "Legal services providers attest that they face unusual difficulty

1

locating children within Title 42 custody, and DHS officials often are unable to provide accurate information as to where a child is at any given moment." September 4, 2020 Order [Doc. # 976] at 15. Furthermore, "When attorneys were able to locate a child, ICE physically prevented them from entering the hotel. ICE has also limited children's ability to speak to attorneys by phone." *Id*. at 16. Yet, RAICES faced the same issues at Karnes when attempting to speak with the few Class Members and their parents who were able to reach us to request legal assistance. For instance, our staff spent well over two hours calling Karnes at least seven times to reach the first of two families in Title 42 who contacted us from Karnes. One staff member was instructed that she needed multiple levels of approval between GEO Group and ICE in order to be permitted to meet with the family. When our staff member finally spoke to an ICE ERO supervisor, the officer informed her that the family in question was a "T-42 case" which "runs a little different" - indicating that legal access for Class Members and their parents in Title 42 is more restrictive than for Class Members and their parents in Title 8.

6. Additionally, the Court bemoaned the burden placed on Class Members to access counsel:

> As the legal services providers' experiences demonstrate, this process is woefully inadequate and not substantially compliant with Paragraph 32. The Agreement contemplates attorneys having near-unfettered access to minors in custody, provided they meet certain well-established protocols. DHS instead puts the entire onus on the minor to seek out counsel, requiring children to have the wherewithal to put their one phone call a day towards retaining an attorney. This is exactly the scenario the Flores Agreement intended to avoid. *Id.*

However, the second family to reach RAICES in the last month described to us a belabored process to seek counsel. Only after the family expressed fear and received a negative determination from their screening interview under Title 42 proceedings for protection under the Convention Against Torture could the mother obtain information about free legal services. She submitted requests to speak to an attorney multiple times over a few days, then finally obtained a RAICES phone number which she passed to a relative who called on her behalf. It is unclear why she was not able to make a legal call herself and why only after she neared the end of her expulsion proceedings was she provided with the number for *pro bono* counsel.

2

**ICE Has Refused to Comply With Its Own Family Residential Standards for Legal Access for Class Members and Their Parents in Title 42 Proceedings.**

7. As this Court has explained in previous orders, the Flores Settlement Agreement ("FSA") provides for attorney access to Class Members, even though attorneys may not have the names of the Class Members in custody. *Id*. Furthermore, ICE's own Family Residential Standards provide for the following:

   - Section 6.4 mandates, "detainees shall have access to group presentations on United States immigration law and procedures and all other relevant issues related to the immigration court, appeals and removal processes, including a detainee's legal rights" (emphasis added). FRS § 6.4 additionally requires that such group meetings be accommodated to the greatest extent possible.
   - FRS Section 6.4 provides that staff "will display [...] informational posters… prominently in living and activity areas at least 48 hours before the scheduled presentation."

   - Section 5.8 of the FRS requires that each facility "will permit residents to make direct or free calls to the offices and individuals listed.....This information will be posted in the living and activity area and the telephone area(s)." The corresponding list of "offices and individuals" delineated includes "All legal representatives, when the purpose is to obtain legal representation." Furthermore, regarding legal calls, the FRS specifically states that facilities "may not limit a resident's attempt to obtain legal representation."

   - The FRS additionally provide that individuals in family detention centers should not be limited in the number of calls they make to legal service providers, and that in any case a request for a phone call "will be granted within 8 business hours and will not exceed 24 hours of the request. Staff must document and report to ICE/ERO any incident of delay beyond eight waking hours" (FRS § 5.8).

8. In accordance with the FRS, on October 30th, RAICES submitted a request for a Group Legal Presentation with families in Title 42 and requested that a flyer be provided to all Class Members and their parents with RAICES' toll-free hotline number. This flyer was provided to ICE with text in English, Spanish, Haitian Creole, Lingala, Portuguese, and French. After three weeks with no response, despite the rapid nature of Title 42 expulsions, ICE denied all of our requests.

**_Flores_ Class Members at Karnes Subject to Title 42 Expulsion Proceedings Are Held in Conditions That Violate the FSA. Non-existent Access to Counsel Has Limited the Ability of RAICES to Provide Information to This Court.**

9. Because ICE has imposed burdens that prevent Class Members and their parents from access to RAICES' free legal services in the past month, we are not able to provide this court with information about conditions as they relate to currently detained families.

10. Nonetheless, RAICES has previously submitted to this Court extensive information demonstrating the lack of "safe and sanitary" conditions at Karnes, and that the facility remains secure. RAICES has represented approximately 12 families who were in Title 42 expulsion proceedings at Karnes prior to October 22, 2020. While the government represents that Class Members and their parents detained while in Title 42 undergo a 14-day monitoring period, RAICES has observed that families in Title 42 were expelled and transferred to other facilities within the first 14 days of their arrival to Karnes. Parents of Class Members generally report not receiving the results of their family's COVID-19 tests.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: November 23, 2020

San Antonio, Texas

_/s/ Andrea Meza_
_____
Andrea Meza, Esq.
Director, Family Detention Services
RAICES
Andrea.Meza@raicestexas.org

4