JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
Civil Division
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director, District Court Section
Office of Immigration Litigation
SARAH B. FABIAN
NICOLE N. MURLEY
Senior Litigation Counsel
    Tel:  (202) 532-4824
    Fax: (202) 305-7000
    Email: Sarah.B.Fabian@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY LISETTE FLORES; *et al.*, <br><br>Plaintiffs, <br><br>v. <br><br>JEFFREY A. ROSEN, Acting Attorney General of the United States; *et al.*, <br><br>Defendants. | Case No. CV 85-4544-DMG <br><br>**JOINT STATUS REPORT** |

On January 5, 2021, the Court issued an order approving the Notice of Rights form unless the parties provide any objection on or before January 12, 2021, and also ordering "that the parties submit a further joint status report regarding the finalization and implementation of the ICE Directive by January 12, 2021." ECF No. 1056.

In accordance with the Court's order, the parties and Amici submit their positions below.

**PLAINTIFFS' POSITIONS**:

Plaintiffs have proposed edits to the most recent version of the ICE Directive circulated by the Court in the attached document. The following comments explain Plaintiffs' positions on some portions of the text in the Court's draft Plaintiffs either agree should be maintained without change though Defendants may oppose the language, or that Plaintiffs believe should be modified. Plaintiffs' comments are also noted in the attached document.

- Paragraph 1: The text reading "[t]he policies set forth in this Directive apply to class members wherever they are under the care and custody of ICE or its contractors, including Family Residential Centers ("FRCs"), ICE holding cells, and hotels," should remain unchanged. This language in the Court draft should be maintained to make clear this directive applies to all accompanied class members detained by ICE. Plaintiffs propose adding "its contractors ..."

- Paragraphs 2, 2.2: The Settlement Agreement Sponsor Questionnaire and other documents the sponsor should complete should be promptly sent to sponsors by ICE, not provided to parents to somehow later send to the proposed sponsor(s).

- Paragraphs 2, 2.1, 2.2: Nothing in the FSA requires the extraordinary step Defendants have proposed of a motion to a court to get a child released. That's a major new step in the release process Defendants could have but did not ask or bargain for when the FSA was negotiated. It materially modifies the release

terms of the FSA and would thwart and delay the right to release. The idea that a mother would be informed of her child's rights in writing, have access to discuss these rights with counsel, relatives, friends, and a social worker, would complete a form requesting the release of her child, undoubtedly be in at least telephone contact with proposed sponsors, have the sponsors vetted and agree to accept the class member into their home, have the class member released, and then the mother claims she never voluntarily agreed to the release of the child, is entirely speculative and extremely unlikely to ever occur. If anything, Plaintiffs experience is that ICE discourages the release of class members, and has never been known to coerce any one to actually release a child.

- Paragraph 2.1: Language about releasing minors promptly under ¶ 14 should not be deleted from Court's draft. It's an important part of the FSA.

- Paragraph 2.2: Plaintiffs or amici will shortly propose the text of the poster.

- Throughout: The use of the term Sponsor in the Court's draft should be maintained as this is the term almost all detained children and parents use to describe the persons with whom they may go live if released. It's the term ICE and CBP use when they process people and ask parents (and all other apprehended migrants) if they have any "sponsors," meaning where they plan to live if released. The term "custodian" also may imply that the adult may have some form of legal "custody" over the child.

- Paragraph 51. The text reading "[t]he list shall include all non-profit legal services providers that provide legal services to FSA class members in the area where they are detained and that make a request to an ERO FOD to be included on the list," should be maintained. The Court's draft should continue to include this text to ensure that local legal services are included in the pro bono list.

- Paragraph 5.2: "Supervisors and Field Personnel should document on individual class members' parole worksheets the reasons why they decline to release children with their parents." For efficiency and to avoid massive difficulties in monitoring permitted under the FSA, reasons why a minor is

not released should be recorded in the class member's parole worksheet, as set forth in the Court's draft.

- Paragraph 5.3(3): "Class members must also have access to consult with a child welfare expert to discuss issues relating to release versus remaining detained with a parent." Maintaining this text in the Court's draft is important to protect the best interests of the minors. If a class member needs to, they should be permitted to discuss staying with a parent or being released with a child welfare expert. Plaintiffs can identify child welfare experts who class members may be permitted to telephone.

  Plaintiffs propose adding the following text to Paragraph 5.3(3): When a parent or legal guardian and Class Member disagree about the Class Member remaining in custody or being released, they shall be provided a list of qualified Child Advocates by ICE and have telephonic access at no cost to a Child Advocate who shall interview the parent, legal guardian, and Class Member if they wish to be interviewed, and promptly recommend to ICE a resolution in the best interest of the Class Member. Class Counsel shall provide ICE with a list of qualified *pro bono* Child Advocates available to confer with parents, legal guardians and Class Members, and make recommendations to ICE regarding the Class Member's best interest. ICE may also identify qualified Child Advocates.

- Paragraph 5.4(3): "Information gathered during background checks and suitability assessments will not be used to initiate enforcement action against potential sponsors or those living in the sponsor's home unless there is an outstanding warrant of arrest existing for that person." This language should be maintained. The vetting required by the FSA is to assess the suitability of the sponsor, not to enforce separate immigration laws by subjecting sponsors to arrest. Language imposed by Congress has restricted ICE from using ORR sponsor data to initiate enforcement action against sponsors. The same restraints should apply here.

- Paragraph 9: "This document provides only internal ICE policy guidance, which may be modified, rescinded, or superseded at any time without notice [add following:] except as required to class counsel under the FSA." Adding this text clarifies that this sentence does not abrogate any obligation

    defendants may have under the FSA to provide class counsel with copies of instructions or directives involving implementation of the FSA

- The Notice of Rights and Flores Sponsor Assessment Questionnaire should make clear (as they currently do) that if someone is approved as a Sponsor, but is unable to come to the facility where the child is detained to pick up the child, the parent may designate someone else to bring the child to the sponsor, with information about that person provided to ICE so it can, in its discretion, determine whether that person is suitable to transport the child to the sponsor.

- Defendants propose below that the Court should "set a briefing schedule in which Defendants would submit their proposed Directive to the Court, Plaintiffs (and any interested parties from whom the Court wishes to take comments) can submit their responses, and the Court can then issue an order that directs Defendants how to proceed." ICE has had about three months to address the draft Directive. In addition, for several months before that the parties met and conferred and exchanged drafts of an ICE Directive. In short, ICE has had over six months to decide what it believes should be included in the Directive. Nevertheless, Plaintiffs do not oppose the Court granting ICE an additional one week to submit its proposed Directive, and grant Plaintiffs and the concerned *amici* parties five days to respond to ICE's proposed Directive.

**DEFENDANTS' POSITIONS**:

- Defendants raise no further objections to the Court's "Flores Settlement Agreement Notice of Rights Pursuant to September 18, 2020 Court Order," ECF No. 1056-1.

- It is Defendants' position that the ICE Directive is an internal ICE policy document, and Defendants respectfully object to a process by which Plaintiffs or the Court would dictate the language of their policy document or the practices that ICE must implement in order to comply with the Court's orders and the Agreement, except to the extent that Plaintiffs object, or the Court concludes, that Defendants' procedures are inconsistent with the Agreement. Defendants also note that they have an obligation to implement the Court's orders and the Agreement in a manner that preserves the rights of parents in its custody, which are not governed by the Agreement, and whose interests are not represented by any party or counsel in this litigation. Defendants have

endeavored to propose procedures that consider and protect these rights as well as ICE's obligations under the Court's orders and the Agreement.

Defendants have continued to meet and confer with Plaintiffs and Amici regarding the ICE Directive. These conversations have, at times, been productive, but given the diversity of interests represented in these conversations, they have not resulted in any agreed-upon resolution for how to proceed. At this time, Defendants submit that this issue cannot be resolved through the meet and confer process, and that the Court should order procedures through which it can resolve these outstanding issues. Specifically, Defendants propose that the Court should set a briefing schedule in which Defendants would submit their proposed Directive to the Court, Plaintiffs (and any interested parties from whom the Court wishes to take comments) can submit their responses, and the Court can then issue an order that directs Defendants how to proceed.

**AMICI POSITIONS**:

Amici Amnesty International USA, Human Rights Watch, RAICES, Proyecto Dilley, and Aldea – the People's Justice Center, jointly provide the following comments to Defendants' Draft Directive.

1. **Child Advocate (Section 5.3)**

At the request of the Independent Monitor, Andrea Ordin, following an initial meet-and-confer with the parties, amici consulted with the Young Center for Immigrant Children's Rights in late November 2020 regarding the appointment of an independent child advocate to provide a best-interests recommendation for children facing separation from a parent. This consultation was followed by a second meeting in late December 2020 between Class Counsel, Amici, and the Young Center for Immigrant Children's Rights. Independent child advocates provide recommendations on what decisions would be in the child's best interests as defined by international law, UNHCR guidelines, and domestic child welfare laws.

The Directive should incorporate a referral process to facilitate the appointment of independent child advocates in cases in which a child will transition from being an accompanied child, to an unaccompanied child, upon release from detention. Section 235(c)(6) of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA), codified at 8 U.S.C. § 1232, authorizes the Secretary of Health and Human Services (HHS Secretary) to appoint "independent child advocates for child trafficking victims and other vulnerable

unaccompanied alien children." The appointment of a child advocate is appropriate and supported by statute for accompanied children who, subsequent to separation from their mother, father, or both, will become unaccompanied as defined by 6 U.S.C. § 279(g).

Amici believe that a child advocate will only be necessary in a subset of cases, such as when a parent's stated interest (to separate from a child so that the child is released from custody) conflicts with the child's stated interest (to remain with her parent). Amici will be prepared to discuss the role of a child advocate in more detail at the status conference if requested by the Court.

**2.      Use of Information in Subsequent Enforcement Actions (Section 5.4)**

With regard to suitability assessments, amici seek to ensure that any information gathered during the separation and release process is not used for a subsequent enforcement action—either directly or derivatively. While this issue is yet to be discussed in the meet and confers, we respectfully submit this comment now for additional consideration. Specifically, amici request that the language be modified as follows: "*Information gathered during background checks and suitability assessments will not be used to initiate immigration enforcement action against potential sponsors or those living in the sponsor's home. Any such information will be used solely to ensure that sponsors are suitable for class members. The collection and storage of biographic, biometric, and other information from sponsors and household members must be strictly firewalled and received and considered by child welfare professionals who are not involved in law enforcement activities. Sponsors and household members shall be able to seek legal recourse if their information is improperly shared for immigration enforcement purposes.*"

**3.      Notice of Rights: Workshops and Language of Posters (Section 2.2)**

Class Members' rights should be communicated by prominently-displayed posters in multiple languages in all facilities where Class Members are detained, and know-your-rights (KYR) presentations should be conducted by legal services providers, other service providers, or relevant NGOs with expertise in the issues. In addition to the rights advisal, these posters should include contact information for local NGOs that provide free legal services to Class Members in each facility. Because not all Class Members have individual counsel, dissemination of this information should be as robust as possible.

Consistent with this recommendation, the Court has acknowledged that posters should be "placed in areas clearly visible to parents and FSA class members," and that the poster language "is subject to further discussion between the parties." Human Rights Watch has consulted with its internal team to develop language from the Notice in an easy-to-understand manner for parents and Class Members for the Court's consideration. These colleagues have experience and expertise in translating legal language into a form that lay people, including people with limited literacy, people with cognitive disabilities, and children, can understand. Given the continuing discussion between the parties and amici regarding the provisions of the Notice, a draft poster is being finalized. AI/HRW Amici expect to have draft poster language ready for the parties' input by mid to late January.

In addition to the joint comments submitted collectively by all Amici, LSP Amici submit the following suggestions for consideration by the parties.

1. A parent's decision to release a child may not be knowing or voluntary absent advisals regarding whether the child will be re-classified as unaccompanied upon release and how the parent may reunify with the child in the future.

2. The establishment of consistent procedures and protocols to facilitate the prompt and safe release children in government custody, without distinction for whether a Class Member entered the United States accompanied or unaccompanied by a parent or legal guardian, will ensure Class Members receive equal protection under the terms of the Agreement.

3. Affording Class Members the opportunity to participate in decisions regarding their custody and release would honor their status as right-holders under the Agreement.

///

///

///

Respectfully submitted,

DATED: January 12, 2021           */s/Peter Schey* (with permission)
                                  *Class Counsel for Plaintiffs*
                                  CENTER FOR HUMAN RIGHTS &
                                  CONSTITUTIONAL LAW
                                  Peter A. Schey
                                  Carlos Holguín

DATED: January 12, 2021           JEFFREY BOSSERT CLARK
                                  Acting Assistant Attorney General
                                  Civil Division

                                  SCOTT G. STEWART
                                  Deputy Assistant Attorney General

                                  WILLIAM C. PEACHEY
                                  Director, District Court Section
                                  Office of Immigration Litigation

                                  WILLIAM C. SILVIS
                                  Assistant Director, District Court Section
                                  Office of Immigration Litigation

                                  */s/ Sarah B. Fabian*
                                  SARAH B. FABIAN
                                  NICOLE N. MURLEY
                                  Senior Litigation Counsel
                                  Office of Immigration Litigation
                                  District Court Section
                                  P.O. Box 868, Ben Franklin Station
                                  Washington, D.C. 20044
                                  Tel: (202) 532-4824
                                  Fax: (202) 305-7000
                                  Email: sarah.b.fabian@usdoj.gov

                                  *Attorneys for Defendants*

Dated: January 12, 2021

By: /s/ Xiao Wang (with permission)
WILKINSON STEKLOFF LLP
Xiao Wang (SBN 301279)
xwang@wilkinsonstekloff.com
2001 M Street NW, 10th Floor
Washington, D.C. 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005

*Attorney for Amici Amnesty International USA and*
*Human Rights Watch*

By: /s/ Bridget Cambria (with permission)
ALDEA – THE PEOPLE'S JUSTICE CENTER
Bridget Cambria (pro hac vice)
bridget@aldeapjc.org
532 Walnut Street
Reading, PA 19601
Telephone: (484) 877-8002

*Attorney for Amici Legal Service Providers*

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2021, I served the foregoing pleading on all counsel of record by means of the District Clerk's CM/ECF electronic filing system.

/s/ *Sarah B. Fabian*
SARAH B. FABIAN
U.S. Department of Justice
District Court Section
Office of Immigration Litigation

Attorney for Defendants