CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Peter A. Schey (Cal. Bar No. 58232)
Carlos Holguín (Cal. Bar No. 90754)
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Facsimile: (213) 386-9484
Email:pschey@centerforhumanrights.org
crholguin@centerforhumanrights.org

*Listing continues on next page*
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY LISETTE FLORES; *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MONTY WILKINSON, Acting Attorney General of the United States; *et al.*, <br><br> Defendants. | Case No. CV 85-4544-DMG <br><br> **PLAINTIFFS' SUPPLEMENT TO STIPULATION TO EXTEND DEADLINE TO FILE JOINT STATUS REPORT** |

*Counsel for Plaintiffs Continued:*

USF SCHOOL OF LAW IMMIGRATION CLINIC
Bill Ong Hing (Cal. Bar No. 61513)
2130 Fulton Street
San Francisco, CA 94117-1080
Telephone: (415) 422-4475
Email: bhing@usfca.edu

LA RAZA CENTRO LEGAL, INC.
Stephen Rosenbaum (Cal. Bar No. 98634)
474 Valencia Street, #295
San Francisco, CA 94103
Telephone: (415) 575-3500

Counsel for Plaintiffs

/ / /

On February 22, 2021, the parties filed a stipulated request to extend by thirty (30) days, until March 24, 2021, the deadline set in Paragraph 1 of the Court's January 29, 2021 Order, requiring the parties to file the latest version of the ICE Directive along with a joint status report identifying remaining areas of disagreement with regard to the dissemination of the Notice of Rights by February 8, 2021. ECF No. 1077 at 2, ¶ 1; ECF No. 1081 ("Stipulation"). On February 23, 2021, the Court granted the parties an extension of 30 days to March 24, 2021, to file the ICE Directive and joint status report directed in Paragraph 1 of the Court's January 29, 2021 order. ECF No. 1082.

The parties' February 22, 2021, stipulation stated in part "Plaintiffs intend to separately file a Supplement to this Stipulation explaining their additional positions with which Defendants do not agree." ECF No. 1081 at n. 1. This separate filing is required because Defendants declined to include a section on "Plaintiffs' position" set forth below in the body of the Stipulation.

In the Stipulation, Defendants state that DHS is in the process of reviewing the manner in which it uses family residential centers (FRCs), and expects that it will make a transition "such that the need for a policy to facilitate the release of class members to individuals other than their parent(s) or legal guardian(s) may become unnecessary." Stipulation at 1. Defendants also state they expect the transition to be completed in the "near future." *Id*. Defendants state they have discussed these anticipated changes with Plaintiffs, and have agreed to continue these discussions while the transition is ongoing. *Id*. Finally, Defendants state that dissemination of the current version of the Notice of Rights "would be premature during this transition." *Id*.

First, while Defendants state that they have discussed their anticipated changes with Plaintiffs, and have agreed to continue these discussions while the transition is ongoing, all they have so far advised Plaintiffs is that the new administration is considering a policy of releasing parents or most parents with

their children in about 20 days after they come into custody. Defendants appear to be developing this policy unilaterally rather than in discussions with Class Counsel so as to minimize future enforcement motions.

      Second, even if Defendants adopt a policy of releasing many or even most parents in an average of 20 days – essentially the policy adopted by the Obama-Biden administration in response to this Court's July 24, 2015 Order [ECF No. 177][1] – that will not change the terms of the FSA which require Defendants to promptly vet sponsors identified by parents and release Class Members who are not flight risks or a danger. Nor would it make distribution of the approved Notice of Rights "unnecessary," as Defendants now suggest. Regardless of Defendants' future policy regarding the release of parents, unless and until terminated, the FSA extends to all detained minors who are not a danger or flight risk the right to prompt release to an approved sponsor. That right will not change even if Defendants decide to release many or even most parents on "average" in twenty days.

---

[1] Beginning in the summer of 2014, the Obama administration reacted to a temporary "surge" of Central Americans arriving at the U.S.-Mexico border by adopting a policy to detain all female-headed families, including children, in secure, unlicensed facilities for howsoever long as it took to determine whether they were entitled to remain in the U.S. Memorandum in Support of Motion to Enforce. ECF No. 101-1 at 2. Once this Court held Defendants in breach of the FSA, the Obama administration worked to comply with the several court Orders by approving 90% or more of credible fear claims, and then releasing approved parents with their Class Member children on "average" in about twenty days. This Court has observed, and Plaintiffs agree, that depending on the individual facts in any case, release of a Class Member in twenty days *may* be compliant with the terms of the FSA. At the same time, depending on the individual facts in any particular case, release of a Class Member in less or more than twenty days may be required by and reasonable under the FSA. The Class Members are individual children, and the FSA contemplates individualized determinations, not blanket rules.

The Notice of Rights form has been exhaustively edited, discussed and addressed by the parties, various *amici* parties, the Special Master, and the Court.[2] Defendants have had several months to finalize a procedure to follow if a parent wants their child released. Given that ORR has done this for years and has the entire program available for anyone to download at its website, ICE should hardly need more than 30 more days to now finalize its policy (which can always be modified, as can the Notice of Rights, if it's appropriate to do so in the future). There is little reason why ICE should not begin distributing the Notice of Rights so parents start becoming familiar with their children's rights and may discuss these issues with their relatives, friends, and any legal representatives they can communicate with.

In the event a parent states that she wishes for her child to be released and identifies a sponsor, all the preliminary steps ICE may take are already set forth in Defendants' drafts of the ICE Directive, or the basic steps may be copied from ORR's web site.

ICE may avoid the vetting process entirely by releasing the parent with her child, *as Defendants assert the new administration may prefer*. Its ultimately ICE, not the parent, that must make the final binary choice: vet a sponsor and separate a child from her parent, or release the parent with the child.

Plaintiffs believe Defendants should promptly get the Notice of Rights translated and distribution should commence. If later policies for some reason suggest the terms should somehow be modified, the parties will unquestionably discuss possible changes and seek Court approval or Orders as appropriate.

Finally, Plaintiffs wish to advise the Court, *without seeking any assistance at this time*, of two matters on which they are meeting and conferring with Defendants in an effort to avoid the need for the Court's intervention:

---

[2] *See, e.g.*, (a non-exhaustive list) Doc. ## 987, 1002, 1007, 1010, 1011, 1036, 1050, 1053, 1054, 1056, 1057, etc.

First, Class Members and their decision-making parents have been routinely experiencing significant challenges having access to counsel about their *Flores* rights and all other matters relating to their status.[3] Whether held under Title 42, or in quarantine, or in general population, or subject to expedited removal, Class Members and their decision-making parents must have reasonable access to counsel.

Second, while the full causes are as of now unknown to Plaintiffs, it appears because ORR is requiring all unaccompanied minors coming into their custody to be quarantined for two weeks, during which time we do not believe they are tested for COVID-19 nor does ORR commence the vetting of sponsors, the agency claims it is rapidly running out of bed space and hundreds of children have been held by CBP in unsafe conditions for more than 72 hours. *Defendants continue to refuse to provide Class Counsel with the "reasons" <u>why</u> these Class Members remain in unlicensed CBP facilities for more than 72 hours.*

---

[3] On February 11, 2021, via email, and in telephonic meet and confers, Plaintiffs advised Defendants the FSA in several places addresses the right to counsel. *See e.g.* ¶ XI(C) ("C. Agreements for the placement of minors in non-INS facilities *shall* permit attorney-client visits, including by class counsel in this case" [Emphasis added]); Exhibit 1 ¶ 14 ("Legal services information regarding the availability of free legal assistance, the right to be represented by counsel at no expense to the government, the right to a deportation or exclusion hearing before an immigration judge, the right to apply for political asylum or to request voluntary departure in lieu of deportation"); ¶ 32.A. ("Plaintiffs' counsel are entitled to attorney-client visits with class members even though they may not have the names of class members who are housed at a particular location"). *See also Flores* Order, Document 976 Filed 09/04/20 ("As the legal services providers' experiences demonstrate, this process is woefully inadequate and not substantially compliant with Paragraph 32. The Agreement contemplates attorneys having near-unfettered access to minors in custody, provided they meet certain well established protocols.").

It does not appear ORR is testing all arriving minors for COVID-19, even though the test is inexpensive and the results available in about 15 minutes. Instead, it appears ORR simply quarantines all children for two weeks. For its part, CDC recommends that *all* persons arriving in the U.S. get tested within 3-5 days after arrival, and those who test negative quarantine for seven (7) days, not two weeks. For people not tested, CDC recommends self-quarantine for 10 days. https://www.cdc.gov/coronavirus/2019-ncov/travelers/after-travel-precautions.html

Plaintiffs are urging the Medical Monitor Dr. Paul Wise, Special Master Andrea Ordin, and Defendants, to promptly review this situation and that Defendant ORR take immediate steps to process Class Members so their release rights are not delayed, and CBP is not once again faced with the task of detaining hundreds of children for much longer than permitted under the FSA and the 2018 Trafficking Victims Protection Reauthorization Act in conditions made especially unsafe in light of COVID-19.

Dated: February 24, 2020                Respectfully submitted,

*/s/Peter Schey*
*Class Counsel for Plaintiffs*

CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Peter A. Schey
Carlos Holguín

USF SCHOOL OF LAW IMMIGRATION
 CLINIC
Bill Ong Hing

LA RAZA CENTRO LEGAL, INC.
Stephen Rosenbaum
*Counsel for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2021, I served the foregoing pleading on all counsel of record by means of the District Clerk's CM/ECF electronic filing system.

                               */s/Peter Schey*
                               *Counsel for Plaintiffs*
                               CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
                               Peter A. Schey