# MARCH 5, 2021
# ICE JUVENILE
# COORDINATOR REPORT

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JENNY LISETTE FLORES, *et. al.*, | ) | Case No.: CV 85-4544-DMG |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MONTY WILKINSON, | ) | |
| Acting Attorney General of the | ) | |
| United States, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MARCH 2021 INTERIM REPORT
## OF JUVENILE COORDINATOR DEANE DOUGHERTY
## SUBMITTED BY IMMIGRATION AND CUSTOMS ENFORCEMENT

As required by the Court in its order issued on January 29, 2021, U.S. Immigration and Customs Enforcement (ICE) Juvenile Coordinator Deane Dougherty is submitting the following interim report to provide an update on the Class Members in the FRCs over 20 days, status of implementation of COVID-19 guidances, a census of positive COVID-19 cases at the family residential centers (FRCs), the status of compliance with respect to minors held in Title 42 custody, and confirmation that ICE continues to comply with requests for information and access to residents made by Ms. Ordin and Dr. Wise.

Due to the constantly evolving nature of the COVID-19 crisis, and the frequency of custody and discharge determinations, the information in this report is current and accurate as of the time of signature, or for the reported data, as of the date or time noted in conjunction with the information provided.

## I.  <u>Making and Recording Individualized Custody Determinations and Census of Minors at FRCs</u>

ICE would like to note that it is revising its current family detention posture at the FRCs to allow for a broader repurposing of the physical facilities to better meet operational needs. As of February 26, 2021, there were a total of 201 Class Members at ICE FRCs. The figures below breakdown these Class Members by age and country of origin.





ICE has been making continuous efforts to release Class Members under applicable standards throughout the course of this litigation and, where there are no impediments to removal, those that are subject to final orders of removal are repatriated in accordance with the law. This includes the expeditious release of minors who received a positive credible fear finding by U.S. Citizenship and Immigration Services (USCIS) pursuant to a request for reconsideration, a process solely committed to and within the discretion of USCIS and with which ICE is not involved. The graph below portrays the book-outs by the FRCs from January 9, 2021 to February 26, 2021, which includes 488 Class Members released into the interior of the United States, 22 Class Members removed from the United States, and 68 Class Members returned to their country of origin pursuant to Title 42 authorities.



As of February 26, 2021, 63[1] Class Members have been detained at an FRC twenty (20) days or more. Exhibit A. I have reviewed the data provided in Exhibit A, and it has been shared with the Special Monitor, as required by the January 29, 2021, Order.

---

[1] Exhibit A includes data relating to 64 Class Members. Upon further review, one of the cases relates to a minor who was released from the FRC in less than twenty (20) days in 2018.

Because this list must be shared with the Special Monitor in advance of this filing, the information contained  changed significantly since the date it was compiled due to the plans to repurpose the facilities. A chart updated on March 4, 2020 shows only 13 families remained in custody on that date:

| Custody Status (as of 3/4/2021) | Count of Class Members Reported in the March Flores Interim Report |
|---|---|
| ICE Custody | 13 |
| R – PARO | 40 |
| R – OSUP | 9 |
| R – OREC | 1 |
| **Total** | **63** |

Furthermore, of those 13, seven are scheduled to be released today.  The remaining six are slated to be released by March 7 unless they test positive for COVID, in which case a quarantine period will be required prior to release.

As of February 26, 2021, all families were released from the Berks FRC.  The facility is in the process of negotiating with ICE a transition to an adult facility and will no longer house families.  Both the STFRC and Karnes FRC are in the process of transitioning to an under-72 hour family facility.

**II.  <u>Status of ICE's Implementation of COVID-19 Guidances</u>**

The FRCs continue to follow the COVID-19 mitigation practices set forth in the October 27, 2020 version of the Enforcement and Removal Operations COVID-19 Pandemic Response

Requirements.[2] As has been the case since the beginning of the pandemic, ICE FRCs are operating well below maximum capacity, as demonstrated in the chart below.

| Family Residential Center Occupancy 2/26/2021 | | | | | |
|---|---|---|---|---|---|
| Facilities | Total # of Beds | # of Beds Occupied | % of Beds Occupied | # of Beds Not Occupied | % of Beds Not Occupied |
| Berks Family Residential Center | 96 | 16 | 17% | 80 | 83% |
| Karnes County Residential Center | 830 | 66 | 8% | 764 | 92% |
| South Texas Family Residential Center | 2,400 | 347 | 14% | 2,053 | 86% |
| Total | 3,326 | 429 | 13% | 2,897 | 87% |

I am actively monitoring the Department of Homeland Security and ICE guidance with respect to distributing the COVID-19 vaccination. Due to the limited initial vaccine doses, vaccinations have begun for law enforcement officers in prioritized phases and in accordance with U.S. Centers for Disease Control and Prevention (CDC) recommendations and in partnership with the Veterans Health Administration.  One of these prioritized locations is the San Antonio Field Office, in which both the Karnes and South Texas Family Residential Centers are located.  Please note that the vaccination program is voluntary for ICE personnel.  I will update this Court when more information about the vaccination initiative for residents becomes available.

### III.  Report of ICE Facilities Holding Minors and Number of COVID-19 Cases

Pursuant to section 4(b)(iii) of this Court's January 29, 2021 Order, and section 4(b)(iii) of this Court's April 24, 2020 Order, the following charts describe the number of positive COVID-19 cases at the ICE FRCs as of February 26, 2021.

| Current COVID-19 Positive Cases at Family Residential Centers on 2/26/2021 | | | | |
|---|---|---|---|---|
| Facilities | Minor | Adult | Staff | Total |
| Berks Family Residential Center | – | – | – | – |
| Karnes County Residential Center | 1 | 3 | 3 | 7 |
| South Texas Family Residential Cent | 3 | 4 | 6 | 13 |
| Total | 4 | 7 | 9 | 20 |

---

[2] https://www.ice.gov/doclib/coronavirus/eroCOVID19responseReqsCleanFacilities.pdf

| Cummulative COVID-19 Positive Cases at Family Residential Centers as of 2/26/2021 | | | | |
|---|---|---|---|---|
| Facilities | Minor | Adult | Staff | Total |
| Berks Family Residential Center | 2 | 4 | 10 | 16 |
| Karnes County Residential Center | 45 | 67 | 102 | 214 |
| South Texas Family Residential Cent | 25 | 28 | 136 | 189 |
| Total | 72 | 99 | 248 | 419 |

| Cummulative COVID-19 Positive Cases of Residents at Family Residential Centers as of 2/26/2021 | | | |
|---|---|---|---|
| Facilities | At Intake | In General Population | Total |
| Berks Family Residential Center | 6 | – | 6 |
| Karnes County Residential Center | 112 | – | 112 |
| South Texas Family Residential Center | 48 | 5 | 53 |
| Total | 166 | 5 | 171 |

| Cummulative COVID-19 Positive Cases of Residents at Family Residential Centers as of 2/26/2021 | | | | |
|---|---|---|---|---|
| Facilities | Symptomatic | Asymptomatic | Hospitalized | Total |
| Berks Family Residential Center | – | 6 | – | 6 |
| Karnes County Residential Center | 3 | 109 | – | 112 |
| South Texas Family Residential Cent | – | 53 | – | 53 |
| Total | 3 | 168 | – | 171 |

Pursuant to section 4(b)(iv) of this Court's April 24, 2020 Order, the minors who remain housed at the ICE FRCs have not been released or transferred to non-congregate settings for two reasons: (1) because they are either in quarantine or cohorting based on CDC guidance as a result of testing positive for COVID-19 or they are a new intake and must undergo a 14-day observation period; and/or (2) weather-related delays in safely releasing Class Members and their accompanying parent or legal guardian or immigration court closures.

As of February 26, 2021, Cowlitz County Juvenile Detention Center ("Cowlitz") has had no reported cases of COVID-19 by residents or staff.

### IV. Title 42 Compliance

Pursuant to section 6 of the Court's September 4, 2020 Order, ordering that the government maintain records and statistical information on minors held in Title 42 custody, to include an update regarding the number of minors held in Title 42 custody, and to monitor compliance with the Agreement with respect to minors held in Title 42 custody, I can confirm that ICE has included minors temporarily housed by ICE pursuant to Title 42 authorities over 72 hours pending expulsion

in its monthly Paragraph 28A reporting shared with Plaintiffs' counsel since March 2020, and will continue to do so.

Between January 9, 2021, and February 22, 2021, ICE temporarily housed a total of 133 minors pending expulsion under Title 42 processes. All 133 minors were part of a family unit and all 133 minors were temporarily housed at an FRC with an average length of stay of 5.8 days. The chart below demonstrates the age categories of these 133 minors:

| Age Category | # of minors |
|---|---|
| 0 -5 years old | 99 |
| 6 - 13 years old | 31 |
| 14 - 17 years old | 3 |
| **Total** | **133** |

It is important to note that the State of Texas experienced an unprecedented winter storm in February 2021 which effectively shut down much of the State. Specifically, the STFRC suffered a loss of electricity and running water for nearly a week, as was the entire locale. During this time period, the phones in the general area were inoperable though cell phones were intermittently available. As a result, access to legal counsel was largely unavailable during the weather crisis. Since electricity and telephone access has been restored, phones are available in all suites and residents are made aware of the pro bono attorneys' toll free numbers. Staff is available to provide assistance with accessing legal services. ICE Dilley staff also monitors an email box used for legal access services and communication with attorneys. ICE and facility staff at both Karnes and STFRC are working to coordinate townhall video conferences with pro bono attorneys in lieu of in-person group meetings. The first townhall video meeting at Karnes was held on March 4, 2021.

Signed on this [DATE][th] day of March 2021.

DEANE D DOUGHERTY
Digitally signed by
DEANE D DOUGHERTY
Date: 2021.03.05
15:48:47 -05'00'

Deane Dougherty
ICE Juvenile Coordinator

# ATTACHMENT A
# TO MARCH 5, 2021 ICE JUVENILE COORDINATOR REPORT

| Det Location | A-Number | Subject ID | Last Name | First Name | Country of Citizenship Code | Book-In Date | Birth Date | Age | Age Group | Final Order Date ("as of" 2/20/21) | Case Category | Specific explanation for detention 20+ Days |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| [redacted] | [redacted] | | [redacted] | [redacted] | GUATE | 9/11/2018 | [redacted] | 7 | 6 to 13 | | [8G] Expedited Removal - Credible Fear Referral | The minor should not be on report. He was released on Parole from FRC KCRC on 09/21/2018. In custody for 11 days. |
| [redacted] | [redacted] | | [redacted] | [redacted] | ECUAD | 2/3/2021 | [redacted] | 1 | 0 to 5 | | [8G] Expedited Removal - Credible Fear Referral | The minor/family arrived at STFRC on 02/03/2021. Fear claimed. Asylum Officer issued a NEGATIVE finding on 02/11/2021. Delayed release caused by severe winter storm in the State of Texas. While pending a hearing by IJ, the minor/family were processed for Discretionary Release on OREC by ICE on 2/28/2021. Awaiting Travel Coordination by Sponsor. Anticipated date of release is 3/5/2021. |
| [redacted] | [redacted] | | [redacted] | [redacted] | GUATE | 2/2/2021 | [redacted] | 4 | 0 to 5 | | [8G] Expedited Removal - Credible Fear Referral | The minor/family arrived at STFRC on 02/02/2021. Fear claimed. Asylum Officer issued a negative determination on 02/08/2021. Delayed release caused by severe winter storm in Texas. IJ Vacated Asylum Officer's negative determination. Asylum Officer issued NTA. The minor/family was released 3/2/2021 on Parole. |
| [redacted] | [redacted] | | [redacted] | [redacted] | NICAR | 2/4/2021 | [redacted] | 8 | 6 to 13 | | [8K] Expedited Removal Terminated due to Credible Fear Finding / NTA Issued | The minor/family arrived at STFRC on 02/04/2021. Fear claimed. Delayed release caused by severe winter storm in the State of Texas. Asylum Officer issued a POSITIVE finding and issued an NTA on 02/22/2021. The minor/family was released on Parole on 3/1/2021. |
| [redacted] | [redacted] | | [redacted] | [redacted] | HONDU | 2/4/2021 | [redacted] | 10 | 6 to 13 | 2/23/2021 | [8G] Expedited Removal - Credible Fear Referral | The minor/family arrived at STFRC on 02/04/2021. Fear claimed. Asylum Officer issued a NEGATIVE finding on 02/12/2021. Delayed release caused by severe winter storm in the State of Texas. IJ affirmed Asylum Officer's negative decision on 2/23/2021. The minor/family were processed for Discretionary Release on NTA/OREC, and were released on 3/2/2021. |
| [redacted] | [redacted] | | [redacted] | [redacted] | GUATE | 2/2/2021 | [redacted] | 10 | 6 to 13 | | [8G] Expedited Removal - Credible Fear Referral | The minor/family arrived at STFRC on 02/02/2021. Fear claimed. Asylum Officer issued NEGATIVE finding on 02/08/2021. IJ hearing scheduled for 02/24/2021. Delayed release caused by severe winter storm in the State of Texas. While pending a hearing by IJ, the minor/family were processed for Discretionary Release on OREC by ICE on 2/27/2021. Upon receipt of travel arrangements by sponsor, the minor/family was Released on 3/2/2021. |
| [redacted] | [redacted] | | [redacted] | [redacted] | ELSAL | 2/4/2021 | [redacted] | 11 | 6 to 13 | 2/1/2021 | [8G] Expedited Removal - Credible Fear Referral | The minor/family arrived at STFRC on 02/04/2021. Fear claimed and withdrawn prior to interview by Asylum Officer. Fear claimed again on 02/16/2021. Delayed release caused by late claim of fear & severe winter storm in the State of Texas. While pending CF interview by Asylum Officer the minor/family were processed for Discretionary Release on OSUP by ICE on 2/25/2021. Upon receipt of travel arrangements by sponsor, the minor/family was Released on 3/1/2021. |
| [redacted] | [redacted] | | [redacted] | [redacted] | VENEZ | 2/6/2021 | [redacted] | 12 | 6 to 13 | | [8K] Expedited Removal Terminated due to Credible Fear Finding / NTA Issued | The minor/family arrived at STFRC on 02/06/2021. Fear claimed. Asylum Officer issued a POSITIVE finding and issued an NTA on 02/16/2021. Delayed release caused by severe winter storm in the State of Texas. The minor/family was processed for Discretionary Release on Parole by ICE, and Released on 2/28/2021. |
| [redacted] | [redacted] | | [redacted] | [redacted] | BRAZI | 1/24/2021 | [redacted] | 1 | 0 to 5 | | [8G] Expedited Removal - Credible Fear Referral | The minor/family arrived at STFRC on 1/24/2021. The minor/family claimed fear on 1/24/2021. Asylum Officer issued a negative CF determination on 2/01/2021. IJ Hearing was scheduled for 02/17/2021, but due to inclement weather the court was closed. Hearing rescheduled for 02/17/2021 @1:00pm (CST). Delay caused by severe Winter Storm in the State of Texas. On 2/24/2021, IJ Vacated the Asylum Officer's negative determination. NTA issued on 2/26/2021. The minor and family were released on Parole on 03/03/2021. |
| [redacted] | [redacted] | | [redacted] | [redacted] | BRAZI | 1/31/2021 | [redacted] | 1 | 0 to 5 | | [8G] Expedited Removal - Credible Fear Referral | The minor/family arrived at KCRC on 1/28/2021 as a T42 Case. The minor/family claimed fear on 1/29/2021. The Case was reprocessed as an ER/CF and the minor/family was transferred to STFRC on 02/05/2021. Asylum Officer issued a positive CF determination on 02/09/2021. The minor/family unit will be released on parole upon severe winter storm in Texas clears & sponsor providing travel arrangements. Delayed release caused by severe winter storm in Texas. NTA issued on 2/26/2021. The minor/family were released on 3/2/2021 on Parole after sponsor provided travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | HONDU | 2/3/2021 | [redacted] | 1 | 0 to 5 | | [8F] Expedited Removal | The minor/family arrived at STFRC on 2/3/2021. Fear claimed. Delayed release caused by severe winter storm in Texas. Asylum Officer issued a Negative CF on 2/10/2021. IJ Vacated Asylum Officer's negative determination on 2/24/2021, and NTA was issued. The minor/family was released on OREC upon sponsor providing travel arrangements on 3/4/2021. |
| [redacted] | [redacted] | | [redacted] | [redacted] | ROMAN | 12/28/2020 | [redacted] | 1 | 0 to 5 | | [8G] Expedited Removal - Credible Fear Referral | The minor/family arrived at STFRC on 12/28/2020. Fear claimed. Asylum Officer issued a NEGATIVE fear finding and referral to the IJ on 1/6/2021. IJ affirmed Negative decision on 1/14/2021. FAMU currently pending removal [redacted] OREC and was released on 2/27/2021, following receipt of travel arrangements by sponsor. |
| [redacted] | [redacted] | | [redacted] | [redacted] | HONDU | 1/27/2021 | [redacted] | 1 | 0 to 5 | | [8G] Expedited Removal - Credible Fear Referral | The minor/family arrived at STFRC on 1/27/2020. Fear claimed. Asylum Officer issued a NEGATIVE decision on 2/05/2021. IJ Hearing was not timely scheduled. Negative packet re-submitted EOIR. IJ Vacated Asylum Officer's CF negative decision on 2/23/2021. NTA issued. The minor/family will be released on Parole on 03/04/2021 after sponsor provided travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | RUSSI | 1/22/2021 | [redacted] | 2 | 0 to 5 | | [8G] Expedited Removal - Credible Fear Referral | The minor/family arrived at STFRC on 1/22/2021. Fear claimed. Asylum Officer issued a NEGATIVE fear determination on 2/02/2021. Pending IJ hearing 3/1/2021. Delayed release caused by severe winter storm in Texas & COVID-19. Brother [redacted] tested Positive for COVID-19 on 2/26/2021, and family unit was placed under quarantine. [redacted] upon clearance for travel by medical. |
| [redacted] | [redacted] | | [redacted] | [redacted] | ELSAL | 1/27/2021 | [redacted] | 2 | 0 to 5 | | [8K] Expedited Removal Terminated due to Credible Fear Finding / NTA Issued | The minor/family arrived at STFRC on 1/27/2021. The minor/family claimed fear. Asylum Officer issued a negative CF determination on 2/04/2021. Delayed release caused by severe winter storm in Texas. IJ Vacated Asylum Officer's negative CF decision on 2/22/2021. NTA issued and forwarded to ICE on 2/24/2021. The minor/family unit was released on 3/1/2021 on parole upon sponsor providing travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | ROMAN | 2/4/2021 | [redacted] | 2 | 0 to 5 | | [8A] Excludable / Inadmissible - Hearing Not Commenced | The minor/family arrived at STFRC on 2/4/2021 and claimed fear. Asylum Officer issued a positive CF determination with NTA on 2/17/2021. Delayed release caused by severe winter storm in Texas. The minor/family unit was released on parole on 03/03/2021 upon sponsor providing travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | ROMAN | 2/2/2021 | [redacted] | 2 | 0 to 5 | | [8G] Expedited Removal - Credible Fear Referral | The minor/family arrived at STFRC on 2/2/2021. Fear claimed. Asylum Officer issued a positive decision on 2/23/2021. Delayed release caused by severe winter storm in Texas. Asylum Officer issued NTA'S on 2/24/2021. The minor/family was released on Parole on 03/04/2021 upon sponsor providing arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | ELSAL | 2/2/2021 | [redacted] | 3 | 0 to 5 | | [8F] Expedited Removal | The minor/family arrived at STFRC on 2/2/2021 and claimed fear. Delayed elease caused by severe winter storm in Texas. Per directive from ICE HQ, the minor/family was processed for discretionary release on 2/28/2021, on NTA/OREC and was released with family members, on 3/2/2021 after sponsor picked up family from the facility. |
| [redacted] | [redacted] | | [redacted] | [redacted] | ELSAL | 1/27/2021 | [redacted] | 3 | 0 to 5 | | [8G] Expedited Removal - Credible Fear Referral | The minor/family arrived at STFRC on 1/27/2021. The minor/family claimed fear. Asylum Officer issued a negative CF determination on 2/10/2021. Delayed release caused by severe winter storm in Texas. On 2/24/2021, IJ Vacated the Asylum Officer's negative determination. NTA issued on 2/25/2021. The minor family will be released on Parole upon sponsor provides travel arrangements,projected release on 03/07/2021. |
| [redacted] | [redacted] | | [redacted] | [redacted] | ROMAN | 2/4/2021 | [redacted] | 3 | 0 to 5 | | [8A] Excludable / Inadmissible - Hearing Not Commenced | The minor/family arrived at STFRC on 2/4/2021. Fear claimed. Asylum Officer issued a POSITIVE decision with NTA on 2/18/2021. Delayed release caused by severe winter storm in Texas. The minor/family unit will be released on parole upon sponsor providing travel arrangements. Released with family on parole on 03/03/2021. |
| [redacted] | [redacted] | | [redacted] | [redacted] | HONDU | 1/18/2021 | [redacted] | 3 | 0 to 5 | 1/17/2021 | [16] Reinstated Final Order | The minor/family arrived at STFRC on 1/18/2020. Fear claimed. Asylum Officer issued a NEGATIVE decision on 1/28/2021. Delayed release caused by severe winter storm in Texas. Per directive from ICE HQ, on 2/24/2021, the minor/family was processed for discretionary release NTA/OSUP and was released on 2/27/2021, upon sponsor providing travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | RUSSI | 1/31/2021 | [redacted] | 3 | 0 to 5 | | [8G] Expedited Removal - Credible Fear Referral | The minor/family arrived at KCRC on 01/29/2021 as a T42 Case. The minor/family claimed fear. On 01/31/2021, the Case was reprocessed as an ER/CF and transferred to STFRC. Asylum Officer issued a POSITIVE fear determination on 02/12/2021. [redacted] Released on Parole on 03/03/2021. |
| [redacted] | [redacted] | | [redacted] | [redacted] | HONDU | 1/27/2021 | [redacted] | 3 | 0 to 5 | | [8G] Expedited Removal - Credible Fear Referral | [redacted] at STFRC on 1/27/2021. Fear claimed. Asylum Officer issued a NEGATIVE decision on 2/03/2021. Delayed release caused by severe winter storm in Texas. On 2/24/2021, IJ Vacated Asylum Officer's negative decision. Asylum Officer issued NTA on 2/25/2021. The minor/family was released on 3/4/2021 on OREC upon sponsor providinges travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | HONDU | 1/27/2021 | [redacted] | 3 | 0 to 5 | | [8G] Expedited Removal - Credible Fear Referral | The minor/family arrived at STFRC on 1/27/2021. Fear claimed. Asylum Officer issued a NEGATIVE decision on 2/05/2021. IJ Hearing was not timely scheduled. Negative packet re-submitted to EOIR on 2/11/2021. IJ Vacated Asylum Officer's negative CF on 2/23/2021. Asylum Officer issued NTA on 2/26/2021. The minor/family was released on 3/4/2021 on OREC upon sponsor providinges travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | BRAZI | 1/31/2021 | [redacted] | 4 | 0 to 5 | | [8G] Expedited Removal - Credible Fear Referral | The minor/family arrived at KCRC on 01/28/2021 as a T42 Case. The minor/family claimed fear on 01/29/2021. Case was reprocessed as an ER/CF and the minor/family was transferred to STFRC on 1/31/2021. Asylum Officer issued a positive CF determination with NTA on 02/09/2021. Delayed release caused by severe winter storm in Texas & not having a sponsor. Shelter/Sponsor subsequently identified and has accepted family unit. The minor/family will be released on OREC upon travel arrangements provided by sponsor (anticipated date of release is 3/5/2021). |
| [redacted] | [redacted] | | [redacted] | [redacted] | NICAR | 1/29/2021 | [redacted] | 4 | 0 to 5 | 1/23/2021 | [8G] Expedited Removal - Credible Fear Referral | The minor/family arrived at STFRC on 1/29/2021. Fear claimed. Asylum Officer issued a Negative CF on 2/10/2021. Delayed release caused by severe winter storm in Texas. On 2/26/2021, IJ Vacated the Asylum Officer's negative determination, and an NTA was issued. The minor/family will be released on on OREC upon sponsor providing travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | HONDU | 1/26/2021 | [redacted] | 4 | 0 to 5 | | [8G] Expedited Removal - Credible Fear Referral | The minor/family arrived at STFRC on 1/26/2021. Fear claimed. Asylum Officer issued a NEGATIVE decision on 2/10/2021. IJ Hearing was scheduled for 01/17/2021 but due to inclement weather, court was closed and rescheduled hearing for 02/24/2021. Delayed release caused by severe winter storm in Texas. On 2/25/2021, IJ Vacated the Asylum Officer's negative determination. NTA issued on 2/26/2021. The minor family was released on 3/4/2021 on Parole upon sponsor providinges travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | VENEZ | 2/6/2021 | [redacted] | 5 | 0 to 5 | | [8K] Expedited Removal Terminated due to Credible Fear Finding / NTA Issued | The minor/family arrived at STFRC on 2/06/2021. The minor/family claimed fear at point of apprehension. Asylum Officer issued a positive CF determination with NTA on 2/20/2021. Delayed release caused by severe winter storm in the State of Texas. The minor/family unit was released on 2/27/2021 on parole upon sponsor providing travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | HONDU | 2/3/2021 | [redacted] | 5 | 0 to 5 | | [8F] Expedited Removal | The minor/family arrived at STFRC on 2/3/2021. Fear claimed. Asylum Officer issued a positive decision with NTA on 2/23/2021. Delayed release caused by severe winter storm in Texas. The minor/family was processed for release on 3/1/2021 on Parole upon sponsor providinged travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | HONDU | 1/28/2021 | [redacted] | 5 | 0 to 5 | | [8G] Expedited Removal - Credible Fear Referral | The minor/family arrived at STFRC on 1/28/2021. Fear claimed. Asylum Officer issued a NEGATIVE decision on 2/09/2021. Delayed release caused by severe winter storm in Texas. IJ Vacated Asylum Officer's negative CF decision on 2/24/2021. Asylum Officer issued NTA on 2/25/2021.The minor/family was released on 3/2/2021 on OREC upon sponsor providinges travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | HONDU | 1/27/2021 | [redacted] | 5 | 0 to 5 | | [8G] Expedited Removal - Credible Fear Referral | The minor/family arrived at STFRC on 1/27/2020. Fear claimed. Asylum Officer issued a NEGATIVE decision on 2/05/2021. IJ Hearing was not timely scheduled. Negative packet re-submitted to EOIR. IJ Vacated Asylum Officer's CF decision on 2/23/2021. On 3/1/2021 Asylum Officer issued NTA. The minor/family unit was released on 3/4/2021 on OREC upon sponsor providing travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | RUSSI | 1/31/2021 | [redacted] | 6 | 6 to 13 | | [8G] Expedited Removal - Credible Fear Referral | The minor/family arrived at KCRC on 01/29/2021 as a T42 Case. The minor/family claimed fear. On 01/31/2021, the Case was reprocessed as an ER/CF and transferred to STFRC. Asylum Officer issued a POSITIVE fear determination on 02/12/2021. [redacted] |
| [redacted] | [redacted] | | [redacted] | [redacted] | HONDU | 1/26/2021 | [redacted] | 6 | 6 to 13 | | [8G] Expedited Removal - Credible Fear Referral | [redacted] at STFRC on 1/26/2021. Fear claimed. Asylum Officer issued a NEGATIVE decision on 2/08/2021. IJ Vacated Asylum Officer's negative decision on 2/8/2021. NTA issued by Asylum Officer on 2/26/2021. The minor/family was released on 3/4/2021 on Parole, upon sponsor providing travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | ECUAD | 12/28/2020 | [redacted] | 7 | 6 to 13 | | [8G] Expedited Removal - Credible Fear Referral | The minor/family unit claimed fear on 12/27/2020. Asylum Officer issued a negative fear determination on 1/13/2021. IJ granted a continuance for good cause on 1/19/2021. Hearing scheduled for 2/3/2021 was postponed to 2/16/2021. Delayed release caused by severe winter storm in Texas. IJ Vacated the Asylum Officer's negative CF finding on 2/22/21. Asylum Officer issued NTAs on 2/26/2021. The minor/family was released on OREC on 3/2/2021. |
| [redacted] | [redacted] | | [redacted] | [redacted] | ARMEN | 1/22/2021 | [redacted] | 7 | 6 to 13 | 2/23/2021 | [8G] Expedited Removal - Credible Fear Referral | The minor/family arrived at STFRC on 1/22/2021. The minor/family claimed fear on 1/22/2021. Asylum Officer issued a negative CF determination on 02/02/2021. IJ Review was rescheduled for 3/1/2021. Delay caused by severe winter storm in Texas. IJ vacated Asylum Officer's Negative Decision on 3/1/2021. NTA issued on 3/1/2021 by Asylum Officer. On 2/26/2021, Sibling/Brother tested positive for COVID-19 [redacted] The minor/family will be released on OREC upon medical clearance & sponsor providing travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | HONDU | 1/26/2021 | [redacted] | 7 | 6 to 13 | 2/23/2021 | [8G] Expedited Removal - Credible Fear Referral | The minor/family arrived at STFRC on 1/28/2021. Fear claimed. Asylum Officer issued a Positive CF decision w/ NTA on 2/05/2021. Delayed release caused by severe winter storm in Texas. The minor/family was released on 3/4/2021 on OREC upon sponsor providing travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | HAITI | 2/2/2021 | [redacted] | 7 | 6 to 13 | | [8K] Expedited Removal Terminated due to Credible Fear Finding / NTA Issued | The minor/family arrived at STFRC on 1/22/2021. The minor/family claimed fear. Asylum Officer issued a Positive CF determination with NTA on 02/23/2021. The minor/family unit was released on 3/1/2021 on parole upon sponsor providing travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | HONDU | 1/26/2021 | [redacted] | 7 | 6 to 13 | 1/25/2021 | [8G] Expedited Removal - Credible Fear Referral | The minor/family arrived at STFRC on 1/26/2020. Fear claimed. Asylum Officer issued a NEGATIVE decision on 2/10/2021. Delayed release caused by severe winter storm in Texas. IJ vacated the Asylum Officer's negative decision on 2/24/2021. Asylum Officer issued NTA on 3/1/2021. The minor/family will be released on Parole upon sponsor provides with travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | MEXIC | 12/30/2020 | [redacted] | 8 | 6 to 13 | | [8G] Expedited Removal - Credible Fear Referral | The minor/family arrived at STFRC on 12/30/2020. Fear claimed on 12/28/2020. CF interview scheduled for 1/8/2021. Asylum Officer issued a NEGATIVE decision on 1/8/2021. On 1/27/2021, there was a court closure, and the hearing was rescheduled for 2/3/2021. IJ Hearing rescheduled (FAMU quarantined) for 02/16/2021. IJ Vacated Asylum Officer's negative CF decision on 2/22/2021. Asylum Officer issued NTA's and forwarded to ICE on 2/24/2021. Delayed release caused by severe winter storm in Texas. The minor/family was processed for released on 3/2/2021 on Parole upon sponsor providing travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | RUSSI | 1/31/2021 | [redacted] | 8 | 6 to 13 | | [8G] Expedited Removal - Credible Fear Referral | The minor/family arrived at KCRC on 01/29/2021 as a T42 Case. The minor/family claimed fear. On 01/31/2021, the Case was reprocessed as an ER/CF and transferred to STFRC. Asylum Officer issued a POSITIVE fear determination on 02/12/2021. Z-Hold placed by SDDO/INTEL [redacted] 1. Released on Parole with family on 03/04/2021. |
| [redacted] | [redacted] | | [redacted] | [redacted] | ARMEN | 1/22/2021 | [redacted] | 8 | 6 to 13 | | [8G] Expedited Removal - Credible Fear Referral | [redacted] at STFRC on 1/22/2021. The minor/family claimed fear on 1/22/2021. Asylum Officer issued a negative CF determination on 02/02/2021. IJ Vacated Asylum Officer's negative determination on 3/1/2021. Delay caused by severe winter storm in Texas. Asylum Officer to issue NTA's to process for release. Tested positive for COVID-19 before release on 2/26/2021. Quarantined until cleared by medical, at which time the minor/family will be released. |
| [redacted] | [redacted] | | [redacted] | [redacted] | HONDU | 2/3/2021 | [redacted] | 8 | 6 to 13 | | [8G] Expedited Removal - Credible Fear Referral | The minor/family arrived at STFRC on 2/3/2021. Fear claimed. Asylum Officer issued a Positive CF decision with NTA on 2/23/2021. Delayed release caused by severe winter storm in Texas. The minor/family was released on 3/1/2021, on Parole upon sponsor providing travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | ANGOL | 1/31/2021 | [redacted] | 8 | 6 to 13 | | [8G] Expedited Removal - Credible Fear Referral | The minor/family arrived at KCRC on 01/28/2021 as a T42 Case. The minor/family claimed fear on 01/29/2021. Case was reprocessed as an ER/CF and the minor/family was transferred to STFRC on 1/31/2021. Asylum Officer issued a positive CF determination with NTA on 02/09/2021. Delayed release caused by severe winter storm in Texas & not having a sponsor. Shelter/Sponsor subsequently identified and has accepted family unit. The minor/family will be released on OREC upon sponsor providing travel arrangements. Travel arrangements provided and scheduled for release on 03/05/2021. |
| [redacted] | [redacted] | | [redacted] | [redacted] | ROMAN | 2/2/2021 | [redacted] | 9 | 6 to 13 | | [8G] Expedited Removal - Credible Fear Referral | The minor/family arrived at STFRC on 2/2/2021. The minor/family claimed fear. Asylum Officer issued a positive CF determination on 2/23/2021. NTA issued on 2/24/2021. Delayed release caused by severe winter storm in Texas. The minor/family will be released on Parole. Pending travel arrangements by sponsor. Subject and family released on Parole on 03/04/2021. |
| [redacted] | [redacted] | | [redacted] | [redacted] | GUATE | 2/3/2021 | [redacted] | 9 | 6 to 13 | | [8F] Expedited Removal | The minor/family arrived at STFRC on 2/3/2021. Fear claimed. Asylum Officer issued a negative CF determination on 2/09/2021. Delayed release due to severe winter storm in Texas. While pending a hearing by IJ, the minor/family were processed for Discretionary Release on NTA/OREC by ICE on 3/1/2021. Awaiting Travel Coordination by Sponsor. Expected to be Released NLT 3/5/2021. |
| [redacted] | [redacted] | | [redacted] | [redacted] | DECON | 2/6/2021 | [redacted] | 9 | 6 to 13 | | [8K] Expedited Removal Terminated due to Credible Fear Finding / NTA Issued | The minor/family arrived at STFRC on 2/6/2021. Fear claimed. Asylum Officer issued a positive decision with NTA on 2/17/2021. Delayed release caused by severe winter storm in Texas. The minor/family was processed for released on Parole and was released on 2/27/2021 upon sponsor providing travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | HONDU | 1/27/2021 | [redacted] | 9 | 6 to 13 | | [8K] Expedited Removal Terminated due to Credible Fear Finding / NTA Issued | The minor/family arrived at STFRC on 1/27/21 and claimed fear. Asylum Officer issued a NEGATIVE CF decision on 2/9/2021. IJ vacated the negative fear decision on 2/22/2021. ICE received the NTA from Asylum Officer on 02/24/21. Delayed release caused by severe winter storm in Texas. The minor/family was released on Parole on 3/1/2021, upon sponsor providing travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | BRAZI | 2/5/2021 | [redacted] | 9 | 6 to 13 | | [8K] Expedited Removal Terminated due to Credible Fear Finding / NTA Issued | The minor/family arrived at KCRC on 01/22/2021 as a T42 Case. The minor/family claimed fear on 02/03/2021. On 02/05/2021, the Case was reprocessed as an ER/CF and the minor/family was transferred to STFRC. Asylum Officer issued a POSITIVE CF determination on 2/12/2021. Severe winter storm in the State of Texas delayed issuance of NTA & processing for release. NTA received by ICE on 2/21/2021. The minor/family unit was released on Parole on 2/27/2021, upon sponsor providing travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | BRAZI | 2/5/2021 | [redacted] | 10 | 6 to 13 | 2/23/2021 | [16] Reinstated Final Order | The minor/family arrived at KCRC on 1/21/2021 as a T42 Case. The minor/family claimed fear on 2/05/2021. The Case was reprocessed as an ER/CF and the minor/family was transferred to STFRC on 02/05/2021. Delayed release caused by severe winter storm in Texas. Asylum Officer issued a negative CF determination on 02/19/2021. Per ICE Directive, the minor/family unit will be released on OSUP upon sponsor providing travel arrangements . Released with family on Parole on 03/03/2021. |
| [redacted] | [redacted] | | [redacted] | [redacted] | CUBA | 2/2/2021 | [redacted] | 10 | 6 to 13 | | [8G] Expedited Removal - Credible Fear Referral | The minor/family arrived at STFRC on 2/2/2021. Fear claimed. Asylum Officer issued a NEGATIVE decision on 2/22/2021. Delayed release caused by severe winter storm in Texas. Per directive from ICE HQ, the minor/family was processed for discretionary release on NTA/OREC and was released on 2/26/2021 upon sponsor providing travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | ROMAN | 1/28/2021 | [redacted] | 10 | 6 to 13 | | [8K] Expedited Removal Terminated due to Credible Fear Finding / NTA Issued | The minor/family arrived at STFRC on 1/28/2021. Fear claimed. Asylum Officer issued a POSITIVE fear determination with NTA on 2/10/2021. Delayed release caused by severe winter storm in Texas. Case processed for Release on OREC. The minor/family was released on 3/1/2021, upon sponsor providing travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | HONDU | 1/18/2021 | [redacted] | 10 | 6 to 13 | 10/24/2018 | [16] Reinstated Final Order | The minor/family arrived at STFRC on 1/18/2020. Fear claimed. Asylum Officer issued a NEGATIVE decision on 1/28/2021. Delayed release caused by severe winter storm in Texas. Per directive from ICE HQ, on 2/24/2021, the minor/family was processed for discretionary release NTA/OSUP and was released on 2/27/2021 upon sponsor providing travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | HONDU | 1/26/2021 | [redacted] | 10 | 6 to 13 | | [8K] Expedited Removal Terminated due to Credible Fear Finding / NTA Issued | The minor/family arrived at STFRC on 1/26/2021. Fear claimed. Asylum Officer issued a NEGATIVE decision on 2/05/2021. Delayed release caused by severe winter storm in Texas. IJ Vacated Asylum Officer's negative CF determination on 2/24/2021. Asylum Officer issued NTA. The minor/family was released on Parole on 02/28/2021 after sponsor provided travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | HONDU | 1/26/2021 | [redacted] | 11 | 6 to 13 | | [8K] Expedited Removal Terminated due to Credible Fear Finding / NTA Issued | The minor/family arrived at STFRC on 1/26/2020. Fear claimed. Asylum Officer issued a NEGATIVE decision on 2/05/2021. Delayed release caused by severe winter storm in Texas. IJ Vacated Asylum Officer's negative CF determination on 2/24/2021. Asylum Officer issued NTA.The minor/family was released on 2/28/2021 on Parole upon sponsor providing travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | DECON | 2/6/2021 | [redacted] | 13 | 6 to 13 | | [8G] Expedited Removal - Credible Fear Referral | The minor/family arrived at STFRC on 2/6/2021. Fear claimed. Asylum Officer issued a positive decision on 2/17/2021 and forward NTAs to ICE. Delay for release caused by severe winter storm in Texas & no sponsor available. The minor/family was processed for released on 3/4/2021 on Parole upon attorney of record providing sponsor and travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | ECUAD | 1/25/2021 | [redacted] | 15 | 14 to 17 | 2/23/2021 | [8G] Expedited Removal - Credible Fear Referral | The minor/family arrived at STFRC on 1/25/2021. The minor/family claimed fear. Asylum Officer issued a negative CF determination on 2/17/2021. Delayed release caused by severe winter storm in Texas. IJ AFFIRMED negative decision on 2/24/2021. The minor/family will be released on OSUP upon sponsor providing travel arrangements (anticipated date of release is 3/7/2021). |
| [redacted] | [redacted] | | [redacted] | [redacted] | VENEZ | 1/28/2021 | [redacted] | 15 | 14 to 17 | | [8K] Expedited Removal Terminated due to Credible Fear Finding / NTA Issued | The minor/family arrived at STFRC on 1/28/2021. Fear claimed. Asylum Officer issued a Positive CF decision with NTA on 2/09/2021. Delayed release caused by severe winter storm in Texas. The minor/family was released on 2/27/2021, on Parole after sponsor provided travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | ANGOL | 1/31/2021 | [redacted] | 15 | 14 to 17 | | [8K] Expedited Removal Terminated due to Credible Fear Finding / NTA Issued | The minor/family arrived at KCRC on 01/28/2021 as a T42 Case. The minor/family claimed fear on 01/29/2021. Case was reprocessed as an ER/CF and the minor/family was transferred to STFRC on 1/31/2021. Asylum Officer issued a positive CF determination with NTA on 02/09/2021. Delayed release caused by severe winter storm in Texas & not having a sponsor. Shelter/Sponsor subsequently identified and has accepted family unit. The minor/family will be released on OREC upon sponsor providing travel arrangements (anticipated date of release is 3/5/2021). |
| [redacted] | [redacted] | | [redacted] | [redacted] | GUATE | 1/29/2021 | [redacted] | 15 | 14 to 17 | | [8K] Expedited Removal Terminated due to Credible Fear Finding / NTA Issued | The minor/family arrived at STFRC on 1/29/2021 and claimed fear on 2/10/21. Asylum Officer issued a Rare Language NTA (QEQCHI) on 2/23/2021. Delayed release caused by late fear claim by family unit and severe winter storm in Texas. The minor/family unit was released on 2/27/2021, on parole upon sponsor providing travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | BRAZI | 2/5/2021 | [redacted] | 6 | 14 to 17 | | [8K] Expedited Removal Terminated due to Credible Fear Finding / NTA Issued | The minor/family arrived at KCRC on 01/22/2021 as a T42 Case. The minor/family claimed fear on 02/03/2021. On 02/05/2021, the Case was reprocessed as an ER/CF and the minor/family was transferred to STFRC. Delayed release caused by severe winter storm in the State of Texas. Asylum Officer issued a POSITIVE CF with NTA determination on 2/12/2021. NTA received by ICE on 2/21/2021. The minor/family unit was released on Parole on 2/25/2021. |
| [redacted] | [redacted] | | [redacted] | [redacted] | HONDU | 1/27/2021 | [redacted] | 16 | 14 to 17 | | [8G] Expedited Removal - Credible Fear Referral | The minor/family arrived at STFRC on 1/28/2021 and claimed fear. Asylum Officer issued a negative CF determination on 2/09/2021. Delayed IJ hearing due to severe winter storm in Texas. On 2/24/2021, IJ Vacated Asylum Officer's negative determination, and an NTA was issued on 2/25/2021. The minor/family was released on 3/1/2021 on Parole, upon sponsor providing travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | VENEZ | 1/28/2021 | [redacted] | 16 | 14 to 17 | | [8K] Expedited Removal Terminated due to Credible Fear Finding / NTA Issued | The minor/family arrived at STFRC on 1/28/2021 and claimed fear. Asylum Officer issued a positive CF determination with NTA on 2/09/2021. Delayed release caused by severe winter storm in Texas. The minor/family unit was released on 2/27/2021, on parole upon sponsor providing travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | NICAR | 2/4/2021 | [redacted] | 17 | 14 to 17 | | [8K] Expedited Removal Terminated due to Credible Fear Finding / NTA Issued | The minor/family arrived at STFRC on 2/4/2021 and claimed fear. Asylum Officer issued a positive CF determination with NTA on 2/23/2021. Delayed release caused by severe winter storm in Texas. The minor/family unit was released on parole on 2/28/2021, upon sponsor providing travel arrangements. |
| [redacted] | [redacted] | | [redacted] | [redacted] | ANGOL | 1/31/2021 | [redacted] | 17 | 14 to 17 | | [8G] Expedited Removal - Credible Fear Referral | The minor/family arrived at KCRC on 01/28/2021 as a T42 Case. The minor/family claimed fear on 01/29/2021. Case was reprocessed as an ER/CF and the minor/family was transferred to STFRC on 1/31/2021. Asylum Officer issued a positive CF determination with NTA on 02/09/2021. Delayed release caused by severe winter storm in Texas & not having a sponsor. Shelter/Sponsor was subsequently identified and has accepted family unit. The minor/family will be released on OREC upon sponsor providing travel arrangements (anticipated date of release is 3/5/2021). |

# MARCH 5, 2021
# CBP JUVENILE COORDINATOR REPORT

1300 Pennsylvania Avenue, NW
Washington, DC 20229

**U.S. Customs and
Border Protection**

March 5, 2021

MEMORANDUM FOR:     The Honorable Judge Gee
                    District Judge
                    U.S. District Court, Central District of California

FROM:               Henry A. Moak, Jr.
                    Chief Accountability Officer                    3/5/2021
                    U.S. Customs and Border Protection    X _____
                                                          Signed by: HENRY A MOAK JR

SUBJECT:            CBP Juvenile Coordinator March 5, 2021 Report

On January 29, 2021, this Court ordered the U.S. Customs and Border Protection (CBP) Juvenile Coordinator to file an interim report "providing (i) a census of Class Members in CBP custody in the Rio Grande Valley sector, (ii) a description of CBP's policies and capacity for processing minors in light of COVID-19, Title 42, and the recent influx, (iii) an update as to whether the conditions at the Weslaco Border Patrol Station, McAllen Station, or any other facility that serves as a hub for processing minors are safe and sanitary under FSA Paragraph 12, and (iv) a status update on the CPC Ursula renovation project and when it is expected to be completed."

The CBP Juvenile Coordinator submits the following report in response to this Court's January 29, 2021 Order.  This report builds on the information provided regarding COVID-19 guidance and status updates described in the CBP Juvenile Coordinator January 15, 2021 report.  For purposes of this report, I directed my team to inspect the Donna Centralized Processing Center (CPC-DNT), the current hub for processing unaccompanied and accompanied children in the U.S. Border Patrol (USBP) Rio Grande Valley (RGV) Sector.  While Weslaco and McAllen stations hold children dependent upon operational needs, these stations were not serving as hubs at the time of the Court Order.

Census of Class Members in the USBP RGV Sector

There has been a steady increase in migrant encounters across the Southwest Border (SWB) since April 2020 across CBP.[1]  Instead of the seasonal decline in all migrant encounters, there was a 6% increase in encounters between December 2020 and January 2021.[2]  However, as described in my previous report, the overwhelming majority of encounters from October 1, 2020 through January 31, 2021 were with single adults.[3]  Beginning in May 2020, the number of

---

[1]  *See, Southwest Land Border Encounters*, U.S. Department of Homeland Security, Customs and Border Protection, https://www.cbp.gov/newsroom/stats/southwest-land-border-encounters (last visited March 4, 2021).
[2]  *Id.*
[3]  *Id.*

CBP Juvenile Coordinator March 5, 2021 Report
Page 2

unaccompanied children (UAC) encounters began to increase steadily.[4]  From June 2020 until December 2020, CBP encountered more UACs across the SWB than family units.[5]  Then, in January 2021, the number of families encountered began to increase again.[6]  In January 2021, CBP encountered 5,871 UACs across the SWB; the highest number of UAC encounters since July 2019.[7]  Likewise, there were 7,490 family units encountered in January 2021 across the SWB, an increase of 61% from December 2020.[8]

Specifically, in RGV Sector, there have been 7,295 UAC encounters and 6,203 family unit encounters between October 1, 2020 and January 31, 2021.[9]  There was a daily average of 158 individuals in custody in RGV Sector in January 2021.[10]  While this is an increase from the low average in custody number of 33 in April 2020,[11] it is consistent with average numbers since October 2020.[12]  In January 2021, RGV Sector encountered 2,119 UACs, which is an increase of 25% from December 2020.[13]  In addition, RGV Sector encountered 1,927 family units in January 2021, which is an increase of 30% since December 2020.[14]

February marked a period of rapidly increasing numbers of migrants encountered across the SWB.  Current trends indicate the number of family units encountered across the SWB will continue to increase and outpace the number of UACs encountered.  While official CBP encounter statistics from February were not yet published at the time of filing this report, I understand that RGV Sector has experienced elevated levels of migrant encounters and an influx of migrants in custody.  On February 23, for example, RGV Sector encountered a group of more than 100 migrants comprised mainly of family units and UACs.[15]

CBP Status Updates

This section provides relevant updates related to CBP policy and capacity for processing children in light of COVID-19, Title 42, and other significant developments.  This report does not include the CBP and RGV Sector COVID-19 policies previously discussed in my January 15, 2021 report.

---

[4] *See*, *Southwest Land Border Encounters*, *supra* note 1.

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id*.

[9] *Id.*

[10] *See*, *Custody and Transfer Statistics*, U.S. Department of Homeland Security, Customs and Border Protection, https://www.cbp.gov/newsroom/stats/custody-and-transfer-statistics (last visited March 3, 2021).

[11] *Id.*

[12] *Id.*

[13] *See*, *Southwest Land Border Encounters*, *supra* note 1.

[14] *Id*.

[15] *See*, *RGV Agents Continue Apprehending Illegal Aliens in Groups of 100+*, U.S. Department of Homeland Security, Customs and Border Protection, https://www.cbp.gov/newsroom/local-media-release/rgv-agents-continue-apprehending-illegal-aliens-groups-100 (last visited March 4, 2021).

CBP Juvenile Coordinator March 5, 2021 Report
Page 3

*Capacity for Processing Minors*

CBP continues to assist the Centers for Disease Control and Prevention (CDC) in enforcing its
*Order Suspending the Right to Introduce Certain Persons from Countries Where a
Quarantinable Communicable Disease Exists* (October 13, 2020).[16]  As of the filing date of this
report, the government may still expel single adults and family units in the United States
traveling from Canada or Mexico (regardless of their country of origin) who would otherwise be
held in ports of entry or USBP stations for immigration processing.

All UACs are processed as Title 8 and transferred to the custody of U.S. Health and Human
Services (HHS), Office of Refugee Resettlement (ORR) or repatriated to a contiguous country in
accordance with the Trafficking Victims Protection Reauthorization Act.  On or about January
30, 2021, the CDC issued a Notice temporarily excepting from expulsion unaccompanied
noncitizen children encountered in the United States.

Family units amenable to Title 42 are expelled through the nearest port of entry or transferred to
U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations (ICE/ERO)
for an expulsion flight.  Those not amenable to Title 42 are processed under Title 8.  Due to
capacity issues and lack of space available at ICE/ERO, many of these families are being
processed for release.

*COVID-19 Precautions*

CBP, under the guidance of the CBP Chief Medical Officer, continues to enhance and refine its
medical support capabilities and processes for persons in custody, including children.  RGV
Sector leadership and the CBP Chief Medical Officer continue outreach, engagement, and
coordination efforts with public health officials and non-profit organizations.  Additionally, as
described in more detail in the section describing JCO's inspection of CPC-DNT, CBP conducts
health interviews, including questions related to COVID-19 symptoms and temperature checks,
on all children brought into CBP custody, as well as external medical referrals as appropriate.
CBP repeats this process prior to transfer out of CBP custody.  Additionally, as also described in
more detail in the section describing JCO's inspection of CPC-DNT, everyone entering the
facility receives a surgical mask, with additional surgical masks available throughout their time
in custody.  The pods at CPC-DNT have been further subdivided with heavy duty plastic
sheeting in between units to help prevent the spread of COVID-19.  Individuals in custody are
also assigned specific toilets and sinks within each pod, corresponding with their assigned unit to
reduce the interactions and potential for spread.  CBP encourages social distancing for everyone
in custody, when possible.

*Current Challenges and Response*

As previously discussed, CBP currently has implemented a targeted holding capacity of 25% of a
facility's normal operational capacity, to the maximum extent possible.  This target was
originally developed for CBP planning purposes, taking into account COVID-19 considerations

---

[16] *See*, 85 Fed. Reg. 65806 (October 16, 2020).

CBP Juvenile Coordinator March 5, 2021 Report
Page 4

and precautions to minimize exposure risk and to account for additional space requirements for social distancing and isolation/quarantine.  However, as the number of migrant encounters continues to increase across the SWB, it is not always operationally feasible to stay below the 25% targeted capacity, and there are times when class members are held in facilities with an in-custody population above the target capacity.

Specifically, in the past few weeks, there have been facilities in RGV Sector that have been over both the targeted COVID-19 capacity and the facility capacity, including CPC-DNT.  In these circumstances, CBP still makes every effort to maintain a safe and sanitary environment and to minimize the risk of exposure to COVID-19, including having onsite medical contractors screen persons in custody prior to entering the facilities, distributing surgical masks to individuals in custody, providing access to sinks with soap for hand washing or hand sanitizer, and following CDC social distancing recommendations when possible.  Although CPC-DNT has been operating over capacity, I understand from conversations with individuals in RGV Sector that it remains the best location for UACs and families.  CPC-DNT is a large facility with adequate ventilation and, even with high in-custody numbers, it has more space and a more appropriate environment for UACs and families than USBP stations.  Contract caregivers for tender age UACs are currently available at CPC-DNT.

In addition to increasing numbers of migrant encounters, there are other external factors that impact the number of children in custody at any given time, including limitations on the ability to expel certain demographics under Title 42, delays in securing timely expulsion flights, HHS/ORR capacity, and ICE/ERO Family Residential Center capacity.  To mitigate these challenges, CBP participates in U.S. Department of Homeland Security, Federal Emergency Management Agency-led weekly unified command group meetings with its interagency partners to utilize a whole of government approach.  Moreover, USBP established an Immigration Surge Team to collaborate with interagency partners, such as ICE/ERO and HHS, in support of its Sectors' abilities to coordinate transfer and placement.  RGV Sector has recently collaborated with HHS to co-locate an ORR staff member at CPC-DNT to ensure ORR has full visibility of incoming flows of children and maximize ORR's ability to provide sufficient capacity and timely transfer of children from CBP facilities to more child-appropriate settings.

CBP is also responding to the increasing challenges by accelerating the processing of individuals not only via remote processing but also by bringing in additional agents to areas affected by the increasing numbers of encounters.  Recently, 300 agents from other sectors have been temporarily assigned to RGV Sector to meet mission demands.  In addition, RGV Sector has implemented a temporary outdoor processing area.  This outdoor area makes an effort to triage migrants encountered, expedite processing, and reduce time in custody.  UACs do not complete processing in the outdoor processing area.  Once identified as a UAC, the child is transferred to CPC-DNT, or another facility in Sector depending on operational need, to complete processing and await HHS/ORR placement.  CBP continues to monitor conditions on the ground to deploy available resources and adapt to the current operational tempo.

CBP Juvenile Coordinator March 5, 2021 Report
Page 5

<u>Donna Soft-Sided Facility Inspection</u>

On February 9, 2021, CPC-DNT became operational.  At the time of filing this report, CPC-DNT is the primary processing hub for UACs and family units encountered in the RGV Sector.  While McAllen and Weslaco Stations may hold children for short periods of time, they are not considered a "hub for processing minors" as described in the January Court Order; therefore, I directed the Juvenile Coordinator's Office (JCO) to inspect CPC-DNT, where the majority of children were currently held, and to advise me of their findings.

On February 19 and February 22, 2021, JCO conducted a *Flores* Virtual Inspection (FVI) of CPC-DNT.  As described in the 2020 CBP Juvenile Coordinator report, JCO developed the FVI protocol and leverages technology to conduct remote inspections.  JCO focuses on the following areas during an FVI:  physical facility inspection; data review; medical capabilities review; and service contracts review.  At the time of the inspections, JCO recorded CPC-DNT as holding 682 children on February 19 and 854 children on February 21.  I acknowledge that these numbers are over the COVID-19 targeted capacity for CPC-DNT; however, JCO observed that other COVID-19 precautionary measures were in place.

CPC-DNT features several upgrades from the design of previous soft-sided facilities to best accommodate UACs and families, based on lessons learned from those facilities and to provide more space for social distancing than in traditional Border Patrol stations.[17]  The individual pods at CPC-DNT have been updated to accommodate COVID-19 social distancing.  CPC-DNT consists of eight individual pods which are divided into smaller units created with see-through vinyl for clear, unobstructed monitoring by contract security guards.  While each unit may hold more than one family unit or UAC, the units help keep individuals in custody from interacting with the entire pod, limiting the number of potential interactions.  Each unit is identified with a matching color and shape (all eight pods have different colors).[18]  The shapes may be easier for smaller children to remember and visualize than the numbers.  There are benches to sit on as well as mats to sleep on in each unit.  In addition, each unit has a TV to provide entertainment for the children.[19]  As unit doors are not locked, individuals are free to go to the restrooms or wash their hands at the sinks, which are located within the pod.  The toilets are traditional flushing toilets with a door.  As there are eight units in each pod, there are eight toilets and eight sinks located in the back of each pod.  At the time of the inspection, an outdoor turf recreation area was being prepared.[20]  While JCO was onsite, USBP was in the process of having the contractor wrap the metal beams with a thick cushion/foam pad to protect children from injury prior to letting children play in the area.  The contractor has completed this project and the outdoor area is now being used.

---

[17] *See*, *CBP Announces Opening of Temporary Processing Facility in Donna, Texas*, U.S. Department of Homeland Security, Customs and Border Protection,  https://www.cbp.gov/newsroom/national-media-release/cbp-announces-opening-temporary-processing-facility-donna-texas (last visited February 11, 2021).
[18] *See*, *Temporary Processing Facilities*, Flickr, U.S. Department of Homeland Security, Customs and Border Protection, https://www.flickr.com/photos/cbpphotos/50926157666/ (last visited March 5, 2021).
[19] *See*, *Temporary Processing Facilities*, Flickr, U.S. Department of Homeland Security, Customs and Border Protection, https://www.flickr.com/photos/cbpphotos/50926158196/ (last visited March 5, 2021).
[20] *See, B-Roll of Temporary Processing Facility in Donna, Texas* (2:17 to 2:23), Defense Visual Information Distribution Service, https://www.dvidshub.net/video/783093/b-roll-temporary-processing-facility-donna-texas (last visited February 11, 2021).

CBP Juvenile Coordinator March 5, 2021 Report
Page 6

JCO virtually inspected each unit where children were present.  The physical site inspection confirmed that the CPC-DNT provided access to the following:  meals and snacks; drinking water; functioning toilets; functioning sinks with soap; and mats and blankets.  Changing tables with infant supplies were also available in the pods holding parents with infant children.[21]  JCO observed that the units with children were clean.  JCO also observed that the pods were within the required temperature of 66°F to 80°F by having the agent on the video call show the temperature gauge kept in the security tower.  JCO also noted that the storage area was fully stocked with clothing in multiple sizes, and supplies such as bottles, baby formula, baby diapers, diaper cream, baby wipes, hand sanitizer, soap, shampoo, toothbrushes and toothpaste, feminine hygiene products, juice, cups, paper towels, and car seats.  There was a separate designated caregiver area with toys where young UACs under the care of a caregiver could play; young, accompanied children remained with their parents in the pods where TV and books are available.  Older children are also offered access to the outside play area.  Shower facilities and contract medical personnel were onsite.

As part of the FVI, JCO selected and reviewed the custody logs of 15 children to determine whether agents were properly recording custodial actions in e3DM.  The data review identified that the facility was inconsistently reporting welfare checks, resulting in all fifteen custody logs reviewed having recording gaps of four to thirteen hours.  Although there was a gap in recordation, JCO observed agents and contract security guards in the pods and the processing area, providing continuous supervision of the children.  In addition, at least one meal was not recorded in thirteen logs.  JCO confirmed that a food service contractor provided meals three times a day; these meals included two hot meals and one cold meal, usually served at lunch.  JCO was informed that all individuals in custody in the pod stood in line and walked to the table in front of the observation tower where they were served a meal.  This ensured that all individuals in custody received a meal.  In addition, children always had access to fresh fruit and snacks, which JCO observed during the video walk through.  Thus, these missing entries, most likely, indicated errors in data entry and not that children did not receive meals.  Even though the actual custodial actions may have been performed, JCO continues to stress the importance of proper record keeping to accurately reflect CBP's significant efforts to provide appropriate care consistent with the FSA.

Nine of the ten UACs whose logs were reviewed, and all five accompanied children whose logs were reviewed were in custody longer than seventy-two hours.  The week of the review, February 14 through February 20, 2021, was a period of extreme cold weather in Texas with power and water outages across the state.  Road closures due to severe weather conditions created additional transportation challenges and contributed to delays in transferring children out of CBP custody.  In addition, some of RGV Sector's community partners had power and water outages, preventing them from accepting transfers.

Station staff provided a video walk through of one of the two medical rooms at CPC-DNT.  It was located next to an area where USBP agents process new arrivals to CPC-DNT.  Inside the medical room, nurse practitioners were at all three patient care stations.  JCO observed the nurse

---

[21] See, *Temporary Processing Facilities*, Flickr, U.S. Department of Homeland Security, Customs and Border Protection, https://www.flickr.com/photos/cbpphotos/50925471443/in/album-72157718215685868/ (last visited March 5, 2021).

CBP Juvenile Coordinator March 5, 2021 Report
Page 7

practitioners taking the temperatures of individuals in custody and asking questions about their health.  The medical room also had a bed set up behind a privacy screen in case a patient needed privacy or to lie down.

During its inspection of CPC-DNT, JCO confirmed all individuals arrived via the sally port where contract medical staff conducted health interviews, including for lice and contagious diseases, took everyone's temperature, and asked them about COVID-19 symptoms (cough, shortness of breath, etc.).  Medical contractors explained that if a person's temperature was elevated and did not lower after resting from the elements, the person was tested for the flu.  The medical contractors stated that if the flu test came back negative, they would notify USBP that the patient needed to be isolated and transported to a local hospital for further diagnostic testing.  USBP informed JCO that CBP does not perform COVID-19 testing at its facilities because it lacks the capacity to do so.  However, when medical contractors refer a symptomatic person to the local hospital, the hospital may test for COVID-19.  While at CPC-DNT, an individual needing isolation would be placed alone in a room before transfer to the hospital, according to USBP.  If, upon return from the hospital, the individual needed to be medically isolated, they would be transferred to Harlingen Station, the designated isolation station at the time of JCO's visit.

If the medical contractors did not identify any health issues at the sally port, the individual was taken inside CPC-DNT for the medical contractors to conduct an additional medical assessment.  Before any person in custody entered the facility, they were provided with a surgical mask.  In addition, surgical masks were provided to everyone as needed throughout their time in custody.  Interviews with USBP confirmed that surgical masks were provided throughout time in custody and were available in the pods.  Once medical contractors completed a child's medical assessment, they gave the child a blue wrist band indicating the medical assessment was completed.  As mentioned in previous reports, medical assessments consisted of symptom checks, medical history, a COVID-19 questionnaire, and a temperature check.  If a child required additional medical care available onsite, such as a prescription or medical monitoring, the child also received a red wrist band indicating they were under medical supervision.  During these medical assessments, if a child needed to be sent to the hospital for further evaluation or care, the medical contractors notified USBP for a transport; if the case was critical, the medical contractors called 911.  Throughout the facility, social distancing was encouraged to the extent operationally feasible.  CPC-DNT was built to provide more space for individuals in custody than the traditional USBP station.  As mentioned above, individuals in custody assigned to a specific unit in a pod had a designated toilet and sink assigned to their unit to reduce transmission risk.

JCO reviewed the logs of five children receiving medical care at CPC-DNT, which ranged from care for long term health issues to care for a fractured arm.  While four of the five children were on medication, USBP did not consistently record when the children received medication in e3DM.  In addition, JCO was unable to confirm via the provided documents from medical contractors that all children received their required medication when they needed it.  However, through discussions with the medical contractors, and information recorded on the white boards listing children's medical issues, including medication times, JCO was assured that the children did receive the medication they needed.  For example, one child was receiving medication and

CBP Juvenile Coordinator March 5, 2021 Report
Page 8

was supposed to continue receiving it for four days post-release from CBP custody; while e3DM records did not note this medication was given, the manifest showing the transfer from CBP noted the child was transferred with their medication. JCO raised this issue with CBP's Office of the Chief Medical Officer who, in turn, is discussing data integrity issues with the medical contractor. While complete recordation does not always occur, both USBP and the medical contractors coordinate to ensure medications are provided when needed. CBP is working to enhance medical recordation efforts through the ongoing rollout of its Electronic Medical Record.

USBP consistently monitors children for signs of illness. In addition, station personnel stated that a sick child, or others in the same unit as the sick child, would alert an agent when medical care was needed. JCO was informed that during every shift USBP or the medical contractors complete a temperature check on all children. Three of the five children mentioned above had been seen at a hospital for their medical conditions, and the others had notes in their records that they could be treated onsite. All five children were noted on the medical white board where the medical contractors tracked those needing medical care and when medication was scheduled to be given.

Based on the results of the FVI, I believe that CPC-DNT was substantially compliant with the FSA because the facility provided meals and snacks, access to drinking water, functioning toilets, functioning sinks with soap, and the hold rooms measured within the appropriate temperature range. The facility was clean and sanitary. Children were adequately supervised and had access to medical care as needed. Finally, it was evident that CPC-DNT personnel were striving to ensure that COVID-19 precautions were being followed even though social distancing could not be observed at all times given the increasing numbers of individuals in custody. Upon arrival to the facility, individuals in custody were asked a COVID-19 questionnaire and their temperature was taken. Appropriate follow-up care was provided if needed. Agents at Donna provided surgical masks to all in custody in the sally port, throughout the individual's time in custody, and upon release or transfer. Each pod also had surgical masks freely available to all individuals in custody.

Centralized Processing Center-Ursula Renovation

Construction at the Centralized Processing Center-Ursula (CPC-Ursula) is ongoing. The contract was awarded in September of 2020, with an estimated completion date of December 2021. Absent any unforeseen challenges or delays, RGV Sector anticipates operations will resume at CPC-Ursula soon after construction is complete. Expected enhancements include removal of chain link fencing used to create holding pods, construction of improved holding pods, new HVAC throughout the entire facility, permanent plumbing, child-friendlier interiors, upgraded security systems, and a more efficient sally port for transportation.

Conclusion

Since April 2020, the number of encounters at the SWB has been increasing. CBP is currently experiencing the highest level of migrant encounters since fiscal year 2019, which is further complicated by the unique challenges of COVID-19. As the number of individuals in custody

CBP Juvenile Coordinator March 5, 2021 Report
Page 9

increases and our partner agencies contend with their own capacity limitations, there will continue to be times when class members are held in facilities above targeted COVID-19 capacity and/or above actual facility capacity. Although USBP is impacted by its limited ability to control the number of individuals in custody, significant planning and actions have been taken to adapt to on-the-ground conditions and ensure all children are held in safe and sanitary conditions while in CBP custody.

First and foremost, CBP has taken actions to minimize the time children remain in custody by expanding processing capabilities through virtual processing and increasing temporary duty assignments in RGV Sector. CBP continues to rely on its interagency partners to transfer children out of CBP custody and has further enhanced coordination between agencies, most recently by co-locating USBP and ORR staff at the newly stood up CPC-DNT.

CPC-DNT further demonstrates CBP's ability to monitor conditions and anticipate growing demands. As the designated hub for processing UACs and families in RGV Sector, CPC-DNT provides a more appropriate environment for children than USBP stations and has been carefully designed to mitigate COVID-19 risks as best as possible. Additional COVID-19 precautions include providing surgical masks, encouraging social distancing when possible, medical assessments, and access to sinks with soap and/or hand sanitizer. I will continue to monitor capacity and facilities across the SWB to ensure children are held in safe and sanitary conditions consistent with the terms of the FSA.

# MARCH 5, 2010
# ORR JUVENILE
# COORDINATOR REPORT

**ORR JUVENILE COORDINATOR INTERIM REPORT**

**March 5, 2021**

**Aurora Miranda-Maese, ORR Juvenile Coordinator**

## Introduction

On April 24, 2020, The Honorable Dolly M. Gee of The United States District Court for the Central District of California held a third hearing on the Motion for Temporary Restraining Order on Jenny L. Flores, et al. v. William P. Barr, et al., directing the undersigned designated as the Office of Refugee Resettlement (ORR), Juvenile Coordinator, Aurora Miranda-Maese, to file an Interim Report monthly during the pendency of the national health emergency related to the COVID-19 pandemic. ORR updated reports have continued to be filed as ordered, with the last report submitted by the undersigned on January 15, 2021.

Subsequent to the Court Order dated April 24, 2020, the undersigned continued in collaboration with the workgroup to assist in obtaining the data from all congregate care shelters and transitional foster care nationwide, on issues as they pertain to the six Court-ordered topics and the additional requirements. Under the Juvenile Coordinator, this workgroup has continued collaborating with care providers and ORR staff to assess compliance with the Court's Order. As the number of minors referred to ORR has exponentially increased, the time commitment to accomplish the review for this report has also increased to well over 500 staffing hours for each report. This includes time spent by Federal Field Specialists and grantee care provider staff, who would otherwise be providing direct services to unaccompanied children. In addition, the Court Order dated August 7, 2020 directed the ORR Juvenile Coordinator to expand the requirements of the April 24, 2020 Order by detailing the reasons that release is delayed due to unavailable fingerprinting services or an inability to complete the home study for each minor, which has continued up through this report.

At the status conference hearing on January 29, 2021, the Court ordered the Immigration and Customs Enforcement (ICE) and ORR Juvenile Coordinators shall file their next interim reports by March 5, 2021, covering the topics listed in the April 24, 2020 Order and compliance with the Court's Order regarding minors held under Title 42 authority. The Juvenile Coordinator has not been informed of any minors currently being held in ORR custody under Title 42. The ORR Juvenile Coordinator shall also provide the following:

- The names and locations of ORR facilities where any Class Member has contracted COVID-19 while already housed at the facility, rather than being diagnosed with COVID-19 at intake;

- Updates on ORR's plans to expand capacity during the pandemic; particularly if any influx situation arises;

- Descriptions of ORR's COVID-19 plans in light of any recent updates to CDC guidelines and the start of vaccine distribution, including any steps to ensure prompt vaccination of personnel and residents; and

- A census and explanation of the Class Members detained in "out-of-network" facilities such as those detained at Nexus Children's Hospital

During this reporting period, which covers January 13, 2021 to February 28, 2021, approximately 7,330 cases were reviewed. In the same reporting period, approximately 10,747 minors were admitted to ORR facilities, resulting in continued significant increase in the ORR census.  In the same time period, ORR has discharged approximately 5,425 minors.

The workgroup continued to collaborate with ORR grantee staff, Federal Field Specialists (FFS), and other ORR staff members to obtain the information needed from the ORR network.

Figure 1 below provides information regarding the increase in referrals to ORR's census and Figure 2 highlights ORR's census and discharges, both figures covering the last six months, beginning September 1, 2020 to February 28, 2021. Also listed below is Figure 3, which details ORR's total bed capacity by residence type as of February 28, 2021.

*Figure 1: Referrals to ORR Census from September 1, 2020 to February 28, 2021[1]*



---

[1] The information in Figure 1 reflects the number of the minors referred to ORR from September 1 – February 28, 2021.

*Figure 2: ORR Census & Discharges from September 1, 2020 to February 28, 2021[2]*



*Figure 3: ORR Bed Capacity by Residence Type as of February 28, 2021[3]*

| ORR Program Type | Total Beds | # of Beds Occupied (% of total beds) | # of Beds Not Occupied (% of total beds) |
|---|---|---|---|
| Shelter | 6,902 | 6,546 95% | 356 5% |
| Staff Secure | 108 | 7 6% | 101 94% |
| Secure | 24 | 3 12% | 21 88% |
| RTC | 49 | 9 18% | 40 82% |
| TFC | 931 | 765 82% | 166 18% |
| LTFC | 469 | 277 59% | 192 41% |
| *TOTAL* | *8,483* | *7,607* *90%* | *876* *10%* |

---

[2] The census reflected in Figure 2 is a snapshot of the minors in care from September 1, 2020 – February 28, 2021, in addition to the daily discharges.

[3] The census for minors in ORR custody constantly fluctuate as children are admitted, transferred, and discharged at all times of each day. Therefore, the census reflected in Figure 3 is a snapshot of the capacity at the exact time that the review was conducted. Furthermore, ORR is constantly reassessing bed capacity as circumstances regarding the COVID-19 pandemic and increasing number of minors requiring quarantine or medical isolation are referred to ORR. This chart reflects ORR's reassessed capacity on the morning of February 28, 2021.

## Plans to Expand Capacity

ORR has implemented a flexible cohorting strategy, which maximizes the capacity in shelters. ORR continues the policy of commencing reunification efforts within 24 hours of a minor's admittance to an ORR facility. Reunification efforts often result in release upon the conclusion of the minor's quarantine or medical isolation period. For those minors whose reunification has not concluded at the end of quarantine or medical isolation, ORR may transfer them to another facility in the interest of making quarantine or isolation beds available for newly admitted minors.

ORR actively monitors bed capacity and continuously adjusts placement and transfer strategies while prioritizing discharges where possible.  An Incident Action Plan is developed weekly to coordinate efforts to fully utilize existing shelter capacity across the ORR shelter network.

ORR's current permanent licensed capacity is constrained by the increase of minors referred to ORR who are COVID-19 exposed or COVID-19 positive upon admission. Capacity at these licensed facilities are further strained by ORR's efforts to adhere to the physical and social distancing guidelines from federal, state and local health authorities.

Care provider programs are also implementing prudent staffing models in adherence with guidance from the CDC, state and local authorities and their own organization policies in order to limit exposure risk for their employees.  As a result, programs are not able to meet ORR and state-licensing mandated staffing supervision, which further reduces the maximum capacity each program can accommodate.

Some of ORR facilities are struggling with staffing shortages and are having a hard time filling positions.  Programs are reporting difficulties with hiring staff due to a decreased response to job postings and in finding qualified applicants for positions posted. Also, some potential candidates are not continuing with the hiring process, citing fears of contracting COVID-19.

In addition, ORR facilities are experiencing difficulties with staff retention. Programs have reported challenges with an inability to hire and retain employees who are often faced with caretaker responsibilities within their own homes and concerns that potential employees may have working in a congregate setting, which may put them at risk for exposure.  Other reasons cited include: low morale, the inability to telework, working additional hours due to coverage needs, delays with State licensing to complete the clearance process, and concerns regarding travel during the pandemic. ORR has been working with programs to identify strategies to mitigate staffing challenges where possible.

During this reporting period, ORR opened Carrizo Springs Influx Care Facility to alleviate the number of minors referred to ORR. Currently, minors placed at Carrizo Springs are transfers from licensed shelters, where they completed their quarantine and commenced the family reunification process. The transfer enables them to continue their reunification process while making licensed beds available for newly referred minors who need to undergo quarantine or medical isolation.

Additionally, on March 5, 2021, ORR issued additional guidance to the grantee care provider network in response to increasing numbers of referrals of unaccompanied children. ORR informed the grantee care provider network regarding reducing certain COVID-19 social distancing practices in order to increase the number of usable beds in each facility. ORR briefed Ms. Andrea Ordin, and Dr. Paul Wise on the guidance issued March 5, 2021 (the date it was issued).

## Minors Residing Long-term in Non-ORR Facilities

Currently, ORR has two minors placed in an out-of-network (OON) residential treatment center. A third minor, who is placed at a transitional foster care program, is also receiving care at a psychiatric hospital.

Two minors with complex medical needs are residing in a long-term medical facility. Both minors have remained at the hospital since their referral to ORR and have never physically resided at an ORR facility.

All minors residing at non-ORR facilities but in ORR custody have been included in the Juvenile Coordinator's Interim Report since they began in accordance with the April 24, 2020 Court Order. The details of this report include consideration of the five minors mentioned above.

This report provides updates to the six topics ordered to be covered by the Juvenile Coordinator, which follows below:

I.    Measures taken to expedite the release of Class Members to suitable custodians during the COVID-19 health emergency, including the status of fingerprinting and home study policies and practices, in compliance with this Order, and provide census data as to any minors who remain in custody due to lack of fingerprinting or home studies.

### Fingerprinting Policies and Practices

Per a prior Court Order, ORR amended its fingerprinting procedures on July 21, 2020 (attached in previous Juvenile Coordinator Report dated July 24, 2020).

As of January 26, 2021, all ORR digital fingerprinting sites are operational.

Fingerprinting services are among the initial criteria initiated in the family reunification process. In cases where fingerprinting is not immediately available but other reunification requirements are still pending, case managers continue to search for alternative locations within a reasonable distance and continue to communicate with the persons regarding their options. Where no reasonable alternative fingerprinting options are available and fingerprinting is the only requirement delaying release, ORR determines whether provisional release is appropriate.  As of February 28, 2021, there were no minors in ORR care whose release was delayed because COVID-19 closures made fingerprinting services unavailable to sponsors.

### Home Study Policies and Practices

ORR issued Home Study Practice Guidance due to COVID-19 on May 6, 2020 (attached in a previous Juvenile Coordinator Report dated June 8, 2020).  ORR is in alignment with the many states that have imposed restrictions on movement or shelter-in-place orders for residents due to the COVID-19 pandemic. It remains paramount that minors are released to a safe and healthy environment with a sponsor who is able to meet their needs.  It is also important to protect the staff who conduct home studies and assure they feel safe and supported during this time as well.

ORR's home study providers are to follow their respective state's official guidance on conducting home visits/home studies for domestic minors.  ORR honors the state's guidance until further notice is provided to the shelter network from ORR.  If no official state guidance has been issued on conducting home studies during the COVID-19 pandemic or if states require that the home visit be conducted in person, ORR home study providers can seek a waiver of the in-person home visit via the Federal Field Specialist (FFS) for that region.  ORR continues to assess on an individual basis if a virtual home visit should take place in lieu of the in-person contact.

Home study reports must still be submitted within 10 business days of the receipt of the home study referral, and documentation is made in the minor's file as to which method was used to conduct the home study. As of February 28, 2021, there were no minors in ORR custody with home study delays due to COVID-19.

II.   Identify the location of any ORR facility that has had any individual, whether minor or staff member, test positive for COVID-19, and provide a status report and census of those infected at that facility during the reporting period.

Under the Juvenile Coordinator, the workgroup has continued to survey the ORR network regarding the census of minors who tested positive for COVID-19. Additionally, follow up was conducted with the Division of Health for Unaccompanied Children (DHUC) to address the status of those infected to determine whether any minors remained in isolation, quarantine or had been medically cleared. Figure 4 below provides the census data for the minors diagnosed with COVID-19 as of March 3, 2021.

*Figure 4: Positive COVID-19 Minors Census Data as of March 3, 2021[4]*

| Program Name (Location) | Bed Capacity | Beds Occupied | Positive Minors Upon ORR Admission | Positive Minors Acquired in ORR care | Positive Minors Source Under Investigation |
|---|---|---|---|---|---|
| ██████████ (AZ) | 15 | 15 | 4 | | |
| ████ (TX) | 192 | 192 | | | 1 |
| ████ (TX) | 106 | 106 | 5 | | |
| ████ (TX) | 61 | 61 | 3 | | |
| █████ (TX) | 247 | 247 | 6 | | |
| ████ (TX) | 48 | 48 | 9 | | |
| ████ (MD) | 24 | 24 | 2 | | |
| ████ (TX) | 78 | 76 | 1 | | |
| █████ (NY) | 7 | 7 | 1 | | |
| ████ (AZ) | 21 | 19 | 1 | | |

[4]Figure 4 is a result of the data gathered by the workgroup as it pertains to positive COVID-19 cases of minors throughout the shelter network. This information reflects the status as of March 3, 2021. In addition, the bed capacity and census for each shelter is a snapshot in time as this information is constantly changing as developments arise.

| Program Name (Location) | Bed Capacity | Beds Occupied | Positive Minors Upon ORR Admission | Positive Minors Acquired in ORR care | Positive Minors Source Under Investigation |
|---|---|---|---|---|---|
| (TX) | 48 | 48 | 1 | | |
| (NY) | 30 | 27 | 3 | | |
| (NY) | 124 | 121 | 5 | | |
| (TX) | 30 | 30 | 1 | | |
| (TX) | 236 | 236 | 5 | | |
| (TX) | 54 | 54 | 4 | | |
| (TX) | 235 | 235 | 8 | | |
| (TX) | 77 | 77 | 5 | | |
| (CA) | 48 | 33 | 1 | | |
| (TX) | 43 | 41 | 2 | | |
| (FL) | 36 | 24 | 1 | | |
| (IL) | 156 | 154 | 5 | | |
| (FL) | 71 | 59 | 2 | | |
| (PA) | 64 | 63 | 2 | | |
| (NY) | 63 | 51 | 1 | | |
| (IL) | 10 | 10 | 1 | | |
| (IL) | 18 | 18 | 2 | | |
| (NY) | 43 | 42 | 1 | | |
| (AZ) | 39 | 39 | 1 | | |
| (AZ) | 40 | 40 | 1 | | |
| (NY) | 24 | 24 | 3 | | |
| (TX) | 41 | 39 | 5 | | |
| (TX) | 380 | 282 | 6 | | |
| (TX) | 156 | 156 | 4 | | |
| (AZ) | 48 | 47 | 2 | | |
| (TX) | 49 | 43 | 11 | | |
| (AZ) | 95 | 95 | 2 | | |
| (TX) | 16 | 16 | 1 | | |
| (AZ) | 122 | 120 | 5 | | |
| (TX) | 34 | 34 | 3 | | |
| (TX) | 68 | 68 | 3 | | |
| (AZ) | 131 | 127 | 14 | | |
| (AZ) | 69 | 64 | 5 | | |
| (TX) | 600 | 600 | 22 | | |
| (TX) | 70 | 70 | 5 | | |
| (TX) | 181 | 181 | 4 | | |
| (TX) | 187 | 147 | 9 | | |
| (TX) | 37 | 37 | 3 | | |
| (TX) | 209 | 209 | 15 | | |
| (AZ) | 186 | 186 | 4 | | |
| (AZ) | 93 | 91 | 7 | | |
| (TX) | 158 | 157 | 6 | | |

7

| Program Name (Location) | Bed Capacity | Beds Occupied | Positive Minors Upon ORR Admission | Positive Minors Acquired in ORR care | Positive Minors Source Under Investigation |
|---|---|---|---|---|---|
| ███ (TX) | 127 | 127 | 1 | | |
| ███ (TX) | 41 | 41 | 7 | | |
| ███ (TX) | 104 | 103 | 4 | | |
| ███(CA) | 45 | 45 | 3 | | |
| ███ (VA) | 91 | 91 | 2 | | |

As of March 3, 2021, there are a total of 241 minors in ORR custody who have been diagnosed with COVID-19 who are currently in medical isolation. Two hundred forty (240) of these minors were diagnosed with COVID-19 prior to placement in ORR facilities, and no minors acquired COVID-19 while in ORR facilities.

As previously mentioned, ORR places minors newly referred along the Southwest Border into shelters local to the site of referral. As a precaution, ORR now recommends these new referrals be quarantined for 14 days from the day of admission to ORR, referred to as 'routine intake quarantine'. Minors in such quarantine are tested at least twice for COVID-19, once shortly after admission and again prior to release from quarantine. In the last year, approximately 32,000 COVID-19 viral tests have been completed for the unaccompanied children in ORR's program.

ORR does not require that staff disclose their private medical information as it relates to COVID-19; however, some staff voluntarily reported this information. Since collecting information, ORR has been notified of 1,454 (cumulative) personnel with positive COVID-19 test results as of March 3, 2021. Staff with suspected exposure to or positive COVID-19 test results are required to quarantine for at least 14 days. Furthermore, the exposed or infected staff are not permitted to have any contact with minors or other staff at the shelters until their quarantine has ended.

As a reminder, DHUC does not collect information about individual staff member's quarantine or isolation status to avoid obtaining or asking for any protected health information that DHUC does not have the legal authority to collect. Additionally, DHUC does not have public health jurisdiction over adult staff members; this falls to state and local health agencies.

At this time, care provider program staff who are eligible for the COVID-19 vaccine based on the CDC's Advisory Committee on Immunization Practices (ACIP) recommendations and the recommendations of their state and local jurisdictions may opt to receive the vaccine. In addition, ORR is evaluating other mechanisms for procuring vaccines for staff at Carrizo Springs, as well as mechanisms for expanding vaccines to those working in licensed programs.

## COVID-19 Vaccination Planning

ORR follows ACIP vaccine recommendations and guidelines for minors in ORR care, and this includes phased recommendations for the COVID-19 vaccine distribution. While supply is limited, allocation of COVID-19 vaccines is determined by the care provider's state and local jurisdictions.

As of December 20, 2020, ACIP recommends persons aged 16–17 years with high-risk medical conditions be included in Phase 1c of COVID-19 vaccination distribution (after Phases 1a and 1b, which include health

care personnel, long-term care facility residents, frontline essential workers, and persons aged ≥75 years). Persons aged 16–17 years without high-risk medical conditions are recommended to receive the COVID-19 vaccine during Phase 2, along with all persons ≥16 years not previously recommended for vaccination. As of December 18, 2020, only the Pfizer-BioNTech COVID-19 vaccine is authorized for use in persons aged 16–17 years.

ORR works with care provider programs who might have the COVID-19 vaccine available through their jurisdiction, based on local distribution plans, to determine if any child currently in care is eligible to receive the vaccine. This includes a review of age criteria (16–17 years), expected unification timeline to ensure both doses could be provided without delaying a minor's release, and recent receipt of other vaccinations (given the lack of data on the safety and efficacy of COVID-19 vaccines administered simultaneously with other vaccines, CDC currently recommends that the vaccine be administered alone, with a minimum interval of 14 days before or after administration with any other vaccine).

At this time, care provider program staff who are eligible for the COVID-19 vaccine based on ACIP recommendations and the recommendations of their state and local jurisdictions may opt to receive the vaccine.

ORR continues to closely monitor the development of ACIP recommendations and vaccine prioritization for COVID-19 vaccines, and to develop guidance specific to the COVID-19 epidemiology and operational complexities of the UAC Program.

III.    With respect to minors placed at congregate facilities in which either a minor or staff member has tested positive for COVID-19, identify the specific reason the minors located there have not been released or transferred to a non-congregate setting.

For all the ORR network, transfers out of congregate care were not pursued due to the risk of potentially spreading or catching COVID-19 during the transfer process.  While the occupancy rate continues to increase at congregate shelters, their ability to isolate those minors who have tested positive remains paramount. ORR issued revised field guidance dated July 16, 2020 with regard to COVID-19 (attached in previous Juvenile Coordinator Report dated July 24, 2020).

ORR's policies require the release of minors to sponsors in a manner that promotes public safety, which includes concerns related to public health. The field guidance and ORR Policy Guide Section 3.4.8 Medical Clearance Prior to Release or Transfer, states:

 *"Unaccompanied alien children who have serious physical or mental health issues or have had exposure to a communicable disease may not be transferred or moved until they have been medically cleared by a physician or ORR is consulted….*

*Children who are infectious with communicable diseases of public health concern, which have potential to cause outbreaks, will not be released from ORR care until they are non-infectious."*

IV.    Describe any policies and/or practices aimed at identifying and protecting minors who are at heightened risk of serious illness or death should they contract COVID-19.

Each ORR facility has a unique process for staffing medical care for the individualized needs of the minors in care. Some directly hire licensed independent practitioners (e.g., pediatricians, family medicine physicians, pediatric nurse practitioners, registered nurses) who operate in clinics physically located at the facility, while some contract with community healthcare providers who either visit the facility or evaluate the minors in their clinics. Each care provider has an established network of healthcare providers, including specialists, emergency care services, mental health practitioners, and dental providers. Care providers are required to maintain state licensing and adhere to licensing requirements, including staffing requirements.

Each child in ORR care has an initial intake assessment within 24 hours of the minor's admission to a care provider facility, to obtain information about the minor, including whether there are any immediate medical and mental health concerns. Minors who are ill on arrival will receive prompt attention and medical care.

Each minor also receives an initial medical examination (IME) by a licensed primary care provider (e.g., physician, physician assistant, or nurse practitioner) within two business days of admission into ORR custody. The IME is based on a well-child examination, adapted for the unaccompanied children population with consideration of screening recommendations from the American Academy of Pediatrics, the Centers for Disease Control and Prevention (CDC), and the U.S. Preventive Services Task Force (USPSTF).

The purposes of the IME are to assess general health, administer vaccinations in keeping with U.S. standards, identify health conditions that require further attention, and detect contagious diseases, such as influenza or tuberculosis. If a vaccination record is not located or a minor is not up to date, the minor receives all vaccinations recommended by the ACIP catch-up schedule and approved by the CDC, including seasonal influenza vaccine.

ORR's DHUC staff and ORR care providers routinely track and discuss children with existing medical conditions, including children with conditions that put them at increased risk of infection or could result in possible medical complications if infected. As part of these discussions, facilities caring for children with complex medical needs have been directed to:

- Maintain close contact with general and specialty medical providers of children with complex medical needs and identify plans for continued care (e.g. utilization of telehealth services) in the event of office closures and other barriers to care during the pandemic.

- Create a safety plan for when a child might require in-person medical evaluation, such as an outpatient clinic or at an emergency room.

- Ensure children have an adequate and ongoing supply of prescription medications.

- Continue to follow recommendations about infection prevention, including for respiratory diseases such as influenza and COVID-19, from medical providers overseeing the care of children with complex health needs.

On September 21, 2020, ORR medical staff met with Dr. Paul Wise, as well as the Juvenile Coordinator and the Special Master, Andrea Ordin, in order to discuss the issue of protecting minors in this population.

As of February 25, 2021, there have been no minors who tested positive for COVID-19 who have required hospitalization.

V.    Explain whether the medical professionals at ORR are making expeditious individual assessments about a Class Member's eligibility for release when a Class Member has been exposed to COVID-19 or has a sponsor whose household has a confirmed case of COVID-19, and provide the average time in which such individual assessments take place during the reporting period.

As of February 28, 2021, there were thirty-four minors whose release was delayed due to a positive COVID-19 diagnosis, as they complete their isolation protocols. Additionally, there were nineteen minors whose release was delayed due to being in medical quarantine because of exposure to COVID-19. Quarantine recommendations for minors who have been exposed to a confirmed COVID-19 case are made in collaboration with the local public health authority.

In accordance with the revised ORR field guidance, if a sponsor or a member of the sponsor's household has a suspected or confirmed COVID- 19 infection, ORR postpones release until a medical or public health professional determines it is safe to release the minor to the sponsor's household.

VI.   Explain whether ORR is making individualized assessments regarding its ability to release minors subject to removal orders under the MPP, including census data and reasons for non-release.

As of February 22, 2021, there were 23 minors in ORR custody that were identified as MPP cases.  Currently, there are eight (8) minors who are engaged in the family reunification process, but it is not complete.  The remaining minors are Category 4, with 14 of these minors placed in Long Term Foster Care (LTFC) and one minor in a shelter.  The Juvenile Coordinator did not identify any cases from the reporting period where an MPP removal order was a sole basis for a minor's non-release.

## Summary

The undersigned respectfully submits this report to the Court pursuant to the Court Order dated January 29, 2021.  The undersigned will continue to work independently and with the Special Master and will continue to file interim reports per the Court's directive to monitor facilities to assure adherence to CDC-compliant and ORR guidelines are maintained.