CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Peter A. Schey (Cal. Bar No. 58232)
Carlos Holguín (Cal. Bar No. 90754)
256 South Occidental Boulevard
Los Angeles, CA  90057
Telephone: (213) 388-8693
Facsimile: (213) 386-9484
Email:pschey@centerforhumanrights.org
       crholguin@centerforhumanrights.org

*Listing continues on next page*
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY LISETTE FLORES; *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MERRICK B. GARLAND, Attorney General of the United States; *et al.,*<br><br>Defendants. | Case No. CV 85-4544-DMG<br><br>**PLAINTIFFS' RESPONSE TO ICE AND CBP JUVENILE COORDINATORS' REPORTS** [Doc. # 1084-1] |

*Counsel for Plaintiffs Continued:*

USF SCHOOL OF LAW IMMIGRATION CLINIC
Bill Ong Hing (Cal. Bar No. 61513)
2130 Fulton Street
San Francisco, CA 94117-1080
Telephone: (415) 422-4475
Email: bhing@usfca.edu

LA RAZA CENTRO LEGAL, INC.
Stephen Rosenbaum (Cal. Bar No. 98634)
474 Valencia Street, #295
San Francisco, CA 94103
Telephone: (415) 575-3500

Counsel for Plaintiffs

/ / /

Due to rapidly changing circumstances, and a misunderstanding regarding a meet and confer date and time, the parties have not yet engaged in a meet and confer regarding the issues raised below with the CBP and ICE Juvenile Coordinators' Reports. Plaintiffs have alerted Defendants in correspondence to these concerns and believe the parties will promptly meet and confer in an effort to resolve any disputes. Nevertheless, to keep the Court informed to the extent it wishes to be, Plaintiffs below outline their concerns with the CBP and ICE Reports and the underlying policies and practices that are addressed in the Reports.

### 1. ICE JUVENILE COORDINATOR'S REPORT

As required by the Court in its order issued on January 29, 2021, U.S. Immigration and Customs Enforcement (ICE) Juvenile Coordinator Deane Dougherty submitted an interim report to provide an update on the Class Members in the FRCs over 20 days, status of implementation of COVID-19 guidances, a census of positive COVID-19 cases at the family residential centers (FRCs), the status of compliance with respect to minors held in Title 42 custody, and confirmation regarding ICE's compliance with requests for information and access to residents made by Ms. Ordin and Dr. Wise.

a. **Making and Recording Individualized Custody Determinations and Census of Minors at FRCs**

ICE reports that it is revising its current family detention posture at the FRCs to allow for a broader repurposing of the physical facilities to better meet ICE's operational needs. ICE states that it has been making continuous efforts to release Class Members under applicable standards and from January 9, 2021 to February 26, 2021, released 488 Class Members into the interior of the United States, removed 22 Class Members from the United States, and 68 Class Members were returned to their country of origin pursuant to Title 42 authorities. Nevertheless, as of February 26, 2021, As of February 26, 2021, there were a total of 201 Class Members at ICE FRCs, and 63 (almost a third)

had been detained twenty (20) days or more.[1]

ICE also reports that both the STFRC and Karnes FRC are in the process of transitioning to an under-72 hour family facility. Class Counsel have not been informed what standards will apply to release decisions.

The increased and more prompt release of Class Members with their families certainly helps bring ICE into substantial compliance with the *Flores* Settlement's central right of minors to prompt release unless they are a danger or flight risk.

Nevertheless, as of February 26, 2021, almost a third of all Class Members in custody had bene detained for more than 20 days. The Plaintiffs (and perhaps the Defendants) cannot predict if this number will increase or decrease in the near future because this likely depends on the number of families seeking entry, the number permitted to enter, the number deemed to possess a credible fear of persecution if deported, Mexico's willingness to accept families from the U.S., and the status of COVID-19.

The ICE Directive regarding steps to take should a parent opt to have their child released should be completed and distribution of the Court-approved Notice of Rights distributed to all parents detained for longer than 48 hours.

As the Court knows, under the FSA Class Members' right to release and Defendants' obligation to make and record efforts aimed at release start *at the time of apprehension*, not days or weeks later. Given most families are now detained by CBP for up to several days, and ICE then would have an additional 48 hours before parents are advised of their children's *Flores* rights, commencing distribution of the notice of rights would not in any way interfere

---

[1] The Report does not address the number of incoming families and Class Members after the date of the reporting period. Class Counsel is informed by advocates that as of Monday this week, there were 262 people detained at Dilley. The number at Karnes is unknown.

with Defendants' operations. It would simply advise parents and older Class Members not being promptly released that the child has basic rights under the *Flores* Settlement.

Regardless of the new administration's intention to release families together more promptly, the underlying purpose of the Notice of Rights for Class Members who for one reason or another are not promptly released with their parent(s) remains as it was when the notice was developed with input from the previous administration, Plaintiffs' counsel, and various advocacy *amici* parties.

### b. COVID-19 policies and practices

Given that ICE FRCs are operating well below maximum capacity, Plaintiffs have no dispute with the FRCs continuing to follow the COVID-19 mitigation practices set forth in the October 27, 2020 version of the Enforcement and Removal Operations COVID-19 Pandemic Response Requirements.

### c. Access to Legal Counsel

The ICE report notes that because of the winter storm in Texas in February 2021, the phones in the STFRC were inoperable and access to legal counsel was largely unavailable during the weather crisis. Since telephone access has been restored, ICE reports that phones are available, residents are made aware of the pro bono attorneys toll free numbers, ICE Dilley staff monitors an email box used for legal access services and communication with attorneys, and ICE and facility staff at Karnes and STFRC are working to coordinate townhall video conferences with pro bono attorneys in lieu of in-person group meetings. Plaintiffs welcome these developments while major concerns with access to counsel remain to be resolved.

Advocates at Karnes who historically have represented Class Member minors and their families inform Class Counsel that ICE only provides detained

families with a list of free legal services developed by EOIR for respondents appearing in the immigration courts. The distributed lists do not include *pro bono* legal service providers like Refugee and Immigrant Center for Education and Legal Services (RAICES) that actually service detained Class Members and their parents at the facility.[2] These advocates have sent several written requests to ICE with two requests: That a proposed flyer be posted providing RAICES' hotline number in multiple languages, and that a previous practice by which ICE circulated a sign-up sheet for meetings with RAICES be restored. RAICES offers have not been accepted and it appears currently that despite the *Flores* Settlement's requirement of access to counsel, such access is not being allowed at Karnes.

At Dilley, advocates with the Dilley Pro Bono Project/CARA report that their access issues have now magnified. They report that as of Monday March 8, 2021, there were 262 people detained and the project did not have contact with any of the families or Class Members because ICE refuses to circulate their contact information. In the past, ICE would distribute a flyer upon intake to all families so that they could call the legal services providers. It appears that USCIS continues to distribute a flyer and contact information at the time it delivers forms to families confirming that they are scheduled for a credible fear interview. However, ICE has ended referrals for credible fear interviews and it appears no families have access to CARA's contact information. The advocates state that families held for removal have no access to counsel at all.

/ / /

---

[2] The EOIR lists distributed at Dilley and Karnes are prepared by the Immigration Courts, not ICE, and include free legal services providers for people in removal proceedings before the EOIR Courts, not for families detained at Dilley and Karnes. These lists are irrelevant to families detained at Dilley and Karnes. Class Counsel believes there should be but is no accurate and current list of legal services providers for Class Members or their families detained at Dilley and Karnes.

4

### 2. CBP Juvenile Coordinator March 5, 2021 Report

On January 29, 2021, this Court ordered the U.S. Customs and Border Protection (CBP) Juvenile Coordinator to file an interim report "providing (i) a census of Class Members in CBP custody in the Rio Grande Valley sector, (ii) a description of CBP's policies and capacity for processing minors in light of COVID-19, Title 42, and the recent influx, (iii) an update as to whether the conditions at the Weslaco Border Patrol Station, McAllen Station, or any other facility that serves as a hub for processing minors are safe and sanitary under FSA Paragraph 12, and (iv) a status update on the CPC Ursula renovation project and when it is expected to be completed."

    a. <u>Census of Class Members in the USBP RGV Sector and massive overcrowding</u>

In January 2021, CBP encountered 5,871 UACs across the SWB; the highest number of UAC encounters since July 2019. However, this is a number Defendants should have planned for inasmuch as 11,500 unaccompanied children were apprehended at the U.S.-Mexico border in May 2019.

It is widely reported that at least in the RGC sector, at this time CBP is detaining about twice as many minors and families as it has capacity to hold. The Report states that CBP is making every effort to maintain a safe and sanitary environment and to minimize the risk of exposure to COVID-19. Nine of the ten UACs whose logs were reviewed, and all five accompanied children whose logs were reviewed, were in custody longer than seventy-two hours.

The Report states that February marked a period of rapidly increasing numbers of migrants encountered across the SWB. However the CBP Report fails to provide February or current numbers of Class Members detained by CBP. To be helpful, these reports should provide data that is reasonably

5

current, particularly during times when numbers are substantially increasing or decreasing.

The Report states that recently 300 agents from other sectors have been temporarily assigned to the RGV Sector to meet mission demands.

During its inspection of CPC-DNT, JCO confirmed all individuals arrived via the sally port where contract medical staff conducted health interviews, including for lice and contagious diseases, took everyone's temperature, and asked them about COVID-19 symptoms (cough, shortness of breath, etc.). The Report states that USBP consistently monitors children for signs of illness.[3]

Plaintiffs have raised the following concerns with the ICE Report and *Flores* compliance which the parties are scheduled to discuss and attempt to resolve on March 16, 2021.

The overcrowding at CBP facilities makes Class Members' detention there unsafe and likely unsanitary in violation of the FSA Paragraph 12A which states in part: "Whenever the [CBP or any defendant] takes a minor into custody, it shall *expeditiously* process the minor … Following arrest, the [CBP] shall hold minors in facilities that are safe and sanitary and that are consistent with the [CBP's] concern for the particular vulnerability of minors." Plaintiffs are informed that CBP's facilities are currently vastly overcrowded with hundreds or thousands of children detained for more than 72 hours making conditions unsafe and likely

---

[3] Plaintiffs welcome efforts by CBP to comply with the FSA and believe the current large backlog of Class Members detained by CBP for longer than 72 hours is primarily caused by the Office of Refugee Resettlement's failure to take custody of these minors in a timely manner as required by the FSA and the TVPRA.

unsanitary, a situation made all the more dangerous given the COVID-19 pandemic.[4]

The Settlement clearly requires that *from the time of apprehension* Defendants must make and record prompt and continuous efforts aimed at the release of class members to relatives living in the U.S. FSA ¶ 14. If prompt release is not possible, Defendants are required to expeditiously place class members in non-secure facilities licensed for the care of dependent children. FSA ¶ 19.

CBP's failure to commence and record efforts aimed at the release of Class Members from the time of apprehension as required by the FSA clearly contributes to the length of time Class Members are detained in overcrowded CBP facilities (and later in ORR facilities).[5]

Plaintiffs also wish to address Defendants' failure to make good faith efforts to conclude the CBP settlement intended to resolve Plaintiffs' pending motion regarding conditions in CBP facilities and the processing of minors out of the Rio Grande and El Paso sectors. *See* Docket # 572-1. As Defendants know, Plaintiffs' application addressed numerous alleged FSA violations including, for example, allegations that CBP failed to make and record efforts aimed at the prompt release of minors or their transfer to licensed facilities, overcrowding, lack of reasonable sleeping conditions, and CBP improperly separating children from accompanying caregivers.

---

[4] The FSA and Court Orders have also set forth requirements that must be met for conditions to be considered. safe and sanitary. *See, e.g. Flores v.Sessions*, 394 F.Supp. 1041 (CD Cal. 2017).

[5] One possible solution to this alleged violation would be for ORR to remote staff to overcrowded CBP facilities (or whenever ORR is unable to take custody of minors within 72 hours) to gather at least the names and contact information of minors' potential custodians and to promptly commence the reunification process with this information. Alternatively, CBP could gather this information and forward it to ORR before minors are transferred to ORR's custody.

On June 28, 2019, pursuant to Paragraph D.3 of the Appointment Order *"and in accordance with Defendants' request,"* the Court referred Plaintiffs' motion to "expedited mediation" before the Special Monitor. Docket #576. In 2019 and 2020 the Plaintiffs and the prior administration engaged in numerous productive meetings and communications, and, as Defendants recently advised the Court, "the parties have made significant progress in their negotiations, and may be close to finalizing the terms of a settlement." Joint Report [Docket # 1087].

Plaintiffs believe that precisely because events may take place beyond the control of CBP that lead to overcrowding and unsafe and unsanitary conditions for children (including, for example, acts of nature, surges, or ORR policies that delay ORR's release of minors leaving CBP unable to transfer minors to ORR custody), it is critically important that the new administration conclude the CBP agreement that the previous administration started but never completed.

In addition, Paragraph 12C of the *Flores* Settlement states in part that in preparation for an "emergency" or "influx," as described in Subparagraph B, the Defendants shall have a written plan that describes the reasonable efforts that it will take to place all minors as expeditiously as possible. The plan, without identification of the additional beds available, is attached as Exhibit 3 to the FSA. The Defendants shall "update this listing of additional beds on a quarterly basis and provide Plaintiffs' counsel with a copy of this listing." Plaintiffs are requesting a copy of the most recent plan.

Finally, Paragraph 29 of the FSA states in part that Defendants shall provide to Class Counsel each policy or instruction issued to Defendants' employees regarding the implementation of the FSA. To the extent Defendants have in the past six months issued policies or instructions to CBP regarding compliance with the FSA, Plaintiffs are requesting copies of such policies or instructions.

Plaintiffs remain fully committed to meeting with Defendants to resolve as many issues as possible in ways that will reduce the detained population of Class

8

Member children and their families. Such efforts should be aimed at alleviating the current massive overcrowding at CBP facilities by enhancing and streamlining the process available to achieve the safe and prompt release of all detained minors who are not flight risks or a danger.

Dated: March 12, 2021    Respectfully submitted,

<u>/s/Peter Schey</u>
*Class Counsel for Plaintiffs*

CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Peter A. Schey
Carlos Holguín

USF SCHOOL OF LAW IMMIGRATION CLINIC
Bill Ong Hing

LA RAZA CENTRO LEGAL, INC.
Stephen Rosenbaum
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2021, I served the foregoing pleading on all counsel of record by means of the District Clerk's CM/ECF electronic filing system.

/s/Peter Schey
*Counsel for Plaintiffs*
CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Peter A. Schey