BRIAN BOYNTON
Acting Assistant Attorney General
Civil Division
AUGUST E. FLENTJE
Special Counsel
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director, District Court Section
Office of Immigration Litigation
SARAH B. FABIAN
NICOLE N. MURLEY
Senior Litigation Counsels
FIZZA BATOOL
Trial Attorney
    Tel: (202) 616-4863
    Fax: (202) 305-7000
    Email: fizza.batool2@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY LISETTE FLORES; *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MERRICK GARLAND, Attorney General of the United States; *et al.*, <br><br> Defendants. | Case No. CV 85-4544-DMG <br><br> **JOINT STATUS REPORT** |

On March 19, 2021, the Court ordered:

> By March 26, 2021, the parties shall file a Joint Status Report regarding the following topics:
>
> a. The status of Defendants' plans regarding the ICE Directive and the dissemination of the Notice of Rights, which should include and take into account the census data for Class Members held in ICE facilities beyond 20 days.
> b. The status of the draft CBP settlement agreement relating to Plaintiffs' *Ex Parte* Application for a Temporary Restraining Order [Doc. # 572] and Defendants' explanation as to how the Ninth Circuit's December 29, 2020 Order affects that status.
> c. A description of Class Members' access to legal counsel at Karnes County Family Residential Center and the South Texas Family Residential Center ("Dilley");
> d. The status of the parties' discussions regarding proposed changes to the information shared by the Office of Refugee Resettlement ("ORR") Juvenile Coordinator in her interim reports and other contexts.

ECF No. 1098, ¶ 2. In accordance with the Court's order, the parties submit the following.

1. ICE Directive

    PLAINTIFFS' POSITION

    ICE states below that it "commits" to "expeditiously process" Class Members and their parents or legal guardians detained together for release from ICE custody, "generally within 10 days, but no more than 15 days," unless the Class Member or accompanying parent or legal guardian is suspected or confirmed to be COVID-19 positive, in which case release will happen promptly upon their clearance by medical staff.

    First, a generalized "commit[ment]" offers Class Members scant enforceable rights. ICE's commitment may change from week to week or month to month.

Second, even though the FSA requires that Defendants share with Class Counsel copies of policies regarding implementation of or compliance with the FSA, Defendants have not provided Class Counsel or the Court with copies of any written policies or directives showing how this commitment will be implemented or what their agents at the detention facilities have been instructed to do to implement this commitment.

Third, the commitment, at least as expressed below, only states that "generally" parents and Class Members will be released within 10-15 days. Defendants fail to explain what types of cases will fall outside the "general[ ]" 10-15 day goal. This is of special concern given that as of March 19, 2021, advocates/amici report to Class Counsel that over 900 people are being detained at Dilley.

Fourth, Paragraph 18 of the FSA unambiguously and in plain language states: "*Upon taking a minor into custody*, the INS, or the licensed program in which the minor is placed, *shall make and record the prompt and continuous efforts on its part toward family reunification and the release of the minor pursuant to Paragraph 14 above*. Such efforts at family reunification *shall continue so long as the minor is in INS custody*."(Emphasis added).

Paragraph 14 states in clear language "INS shall release a minor from its custody *without unnecessary delay*, in the following order of preference…" (Emphasis added).

If the parties wanted to simply agree that regarding the release of Class Members, Defendants would make a "commitment" to "generally" release accompanied minors with their parents in ten to fifteen days, they would have said say. That's *not* what the parties agreed to, and its *not* what the FSA says.

The FSA's right to release and to having efforts made aimed at release commence at the time of apprehension, and specifically continues from that time forward.

Providing the Court-approved Notice of Rights within 48 hours after an accompanied minor comes into ICE custody simply ensures that older Class Members and all Class Members' parents are informed about Class Members' *Flores* rights and are free to then decide whether they wish to exercise those rights.

Obviously, if a parent decides they want their child released and provides the necessary information about one or more potential custodians, ICE would be free to avoid vetting the proposed custodians by promptly releasing the parent with the child. If for some reason ICE decides not to release the parent or to delay the parent's release for some reason, then it will have to vet the proposed custodians following the procedures Defendants agreed to and included in the FSA. FSA ¶¶ 15-17.

At bottom, ICE continues to keep parents and Class Members in the dark about Class Members' *Flores* rights. With highly limited access to outside legal counsel, and perhaps over 900 people now detained at Dilley, it is entirely unrealistic to assume outside advocates can consistently advise all detained Class Members and their parents regarding Class Members' *Flores* rights.

The ICE Directive should be implemented and the Notice of Rights distributed forthwith.

DEFENDANTS' POSITION

Given ICE's new policies resulting in more rapid processing and release of families, Defendants have informed Plaintiffs they will agree to make certain commitments to provide Plaintiffs with further assurance that there is not any immediate need to finalize the ICE Directive or distribute the Notice of Rights at this time. Specifically, ICE commits to expeditiously process Class Members and their parents or legal guardians detained together for release from ICE custody, generally within 10 days, but no more than 15 days unless the Class Member or accompanying parent or legal guardian is suspected or confirmed to be COVID-19 positive.  In the event of such a suspected or confirmed COVID-19 case, ICE

commits to releasing the class member and accompanying parent(s) or legal guardian(s) together, promptly upon their clearance by medical staff.

As of March 25, 2021, there is 1 Class Member in ICE facilities beyond 20 days: 0 at FRCs, 0 at hotels, and 1 in secure detention pursuant to Paragraph 21A of the Agreement.

2. <u>Draft CBP Settlement Agreement</u>

PLAINTIFFS' POSITION

Plaintiffs' and Defendants' positions remains as stated in the last Joint Status Report on this issue.

Plaintiffs agree with Defendants that after numerous meetings and exchanges of draft settlement proposals, the parties have made significant progress in their negotiations, and may be close to finalizing the terms of a settlement. The new leadership at the U.S. Department of Homeland Security and U.S. Customs and Border Protection have now had ample time to become familiar with the draft settlement, and to consider the effect, if any, of the Ninth Circuit's December 29, 2020 Order on their willingness (rather than "ability" as Defendants state) to enter into the settlement as currently drafted.

Nevertheless, it does not appear that the Ninth Circuit's decision necessarily has any impact on the FSA as it pertains to Class Members in CBP custody. The enjoined regulations do not appear to be consistent with and to iimplement the FSA's terms, as interpreted by this Court and affirmed by the Court of Appeals, regarding Class Members' rights to certain conditions while in CBP custody. The Courrt of Appeals' decision has nothing to do with Defendants' ability to conclude the CBP settlement.

In short, the CBP settlement may be concluded regardless of Defendants' decision regarding the Ninth Circuit's December 29, 2020 Order, which almost

exclusively focuses on ICE's and ORR's obligations under Defendants' new regulations.

On June 17, 2016, this Court ordered the parties, including Defendants' "decision-maker(s)" to mediation before then-Chief Judge George H. King. [Dkt. # 223.] On June 20, 2016, Judge King ordered counsel responsible for the conduct and trial of the pending matter, along with "authorized representative[s] [if ICE and CBP] who ha[ve] FULL authority to settle," to appear for a settlement conference with Judge King. [Dkt. # 224.] Thereafter, on August 23, 2016, Defendants were again ordered to appear for further settlement discussions including the attendance of the Deputy Commissioner because "the ultimate authority for negotiations appear[s] to reside with [him]." [Dkt. #244.][1] While these negotiations did not result in a settlement, they did focus the parties on their remaining differences and narrowed the issues the Court was ultimately required to address.

*Plaintiffs urge the Court to again Order the parties to meet in person or via video conference within the next twenty to thirty days with Special Master Andrea Ordin and Medical Monitor Dr. Paul Wise and <u>require</u> the presence of Troy Miller, the Senior Official currently performing the duties of the Commissioner of CBP, or the Chiefs of the El Paso and McAllen CBP Sectors, or such other CBP official who possess settlement authority.*

This is likely the only path forward that may allow the parties to conclude a settlement after hundreds of hours have been dedicated to this matter arriving at the point where, as Defendants state, they are now "close to finalizing the terms of a settlement …"

---

[1] On August 29, 2016, the Court denied the request of the Chief of the U.S. Border Patrol, Mark Morgan, to appear via video conference or telephone conference at a settlement conference. [Dkt.# 248.]

Encouraging the parties to seriously explore whether a settlement may be reached is made all the more important the emerging crisis because of the growing population of minors in CBP custody for more than seventy-two (72) hours.[2] While Defendants claim that the issue is not an operational concern or particular sticking point that remains to be resolved, but rather a legal question regarding how Defendants wish to proceed in light of the December 29, 2020, Ninth Circuit's Order, the rapidly increasing number of minors being held for extraordinarily long periods of time in vastly overcrowded conditions in CBP custody strongly suggest that speed in moving the issue forward is now essential.[3] The settlement if finalized will provide the CBP El Paso and RGV Sectors with clear guidelines on the treatment and processing of Class Members, and help avoid the very type of crisis now unfolding in those CBP Sectors.

---

[2] *See, e.g.*, CNN Exclusive: Unaccompanied kids being held by Border Patrol for 77 hours on average, internal documents show, https://www.cnn.com/2021/03/03/politics/immigration-us-mexico-border-crisis/index.html; CBS U.S. shelters for migrant children near maximum capacity as border crossings increase, https://www.cbsnews.com/news/u-s-shelters-for-migrant-children-near-maximum-capacity-as-border-crossings-increase/ (lasted checked March 5, 2021). *On March 2, 2021, the Border Patrol had more than 1,300 unaccompanied children in custody waiting for placement by HHS.* https://www.cnn.com/2021/03/02/politics/us-mexico-border-children/index.html (lasted checked March 5, 2021).

[3] While this status report is not the place to begin litigating next steps in light of the Ninth Circuit's Order, it is hardly clear that the Order is intended to sunset all portions of the FSA that deal with CBP custody. For example, while the FSA clearly requires that a Class Member's right to release and efforts aimed at release are required to commence and be recorded "[u]pon taking a minor into custody," (FSA ¶ 18), the regulations addressing apprehension say *nothing* about these rights until well after minors are transferred to ICE or ORR. *See* 84 Fed. Reg. 44,392, at 44527 (Aug. 23, 2019) (addressing DHS custodial care immediately after apprehension).

DEFENDANTS' POSITION

Defendants' position remains as stated in the last Joint Status Report on this issue. That is, Defendants believe that the parties have made significant progress in their negotiations, and may be close to finalizing the terms of a settlement; however, while Defendants remain willing to continue settlement discussions in the future, if appropriate, Defendants are unable to finalize any settlement at this time.

As Defendants previously explained, before Defendants can finalize this settlement, Defendants need to consider the interaction between this settlement effort and the Ninth Circuit's December 29, 2020 ruling. That ruling addresses regulations relating to parts of the Agreement that govern CBP. The time to seek further review of that decision has not passed, and the mandate has not issued. Until the next steps on that appeal are resolved, it is unlikely the government will be able to determine whether to enter into the proposed settlement. Defendants note that CBP remains committed to complying with the Agreement. However, Defendants need to consider whether, and in what ways, entering into this settlement might affect those regulations and Defendants' ability to terminate the Agreement.

3. Access to Legal Counsel

PLAINTIFFS' POSITION

As of March 19, 2021, advocates/amici at Dilley advise Class Counsel that over 800 people are detained at Dilley and "access to counsel has ended … We do not have contact with a single family who is detained …"

As of today, March 26, 2021, advocates/amici report to Class Counsel as follows:

On March 19, 2021 ICE at the Karnes County Family Residential Center confirmed that both the sign-up sheet and flyer for LSP Amici have been posted and distributed to families. However, ICE denied LSP Amici's request for remote group meetings with detained families pursuant to FRS 5.9.J.11. LSP Amici

suggested that a family unit could be considered a "group" for the purpose of a group meeting in order to maintain COVID-19 safety precautions. *ICE denied the request "due to the low population and COVID safety protocols."*

On March 24, 2021, LSP Amici received confirmation from local ICE leadership in Dilley that ICE will at some point engage in new efforts to distribute LSP Amici's legal services hotline number, by posting and distributing Proyecto Dilley's flier and ensuring that Proyecto Dilley's phone number is included on portal electronic devices available to families at the facility. Amici LSP has not been permitted to provide group legal presentations to detained families to date, but remains available to do so.

Group presentations are supposed to be facilitated to the greatest extent possible pursuant to the Family Detention Standards as well as the *Flores* Settlement. This type of legal access comports with the Settlement, facilitates an understanding of legal and detention rights, and should be afforded freely, including to those persons for whom a legal service provider does not have a complete name. *However, ICE has thus far denied, or not facilitated, these requests*.[4]

DEFENDANTS' POSITION

**a. Legal Access to Counsel at STFRC**

At South Texas Family Residential Center (STFRC), ICE meets the requirements set forth by the FSA regarding legal access to counsel.

---

[4] LSP Amici have identified a number of additional concerns regarding conditions in Dilley and have raised those concerns to the Special Monitor and Class Counsel. These concerns include: (1) delays in intake processing that has resulted in families being required to spend the night outside, (2) changes in quarantine procedure that had allowed for free movement within the facility; and (3) information that the facility is considering permanent modifications to the facility to repurpose space previously used for legal visitation, eliminating critical space for know your rights presentations and confidential attorney-client meetings."

ERO expeditiously processes minors through intake upon arrival at the STFRC. At intake, minors are served several forms including Form 1-770 Notice of Rights, explanation of the right to judicial review, and the Executive Office for Immigration Review's (EOIR) list of legal services available in the district and parole forms (FSA ¶¶ 12A, 24D). If the minor is 14 years old or older, the forms are served on the minor and read to the minor via their Head of Household. If a minor is under the age of 14 years old, the documents are served directly and read to the Head of Household. Both are done in the language they understand, utilizing language services as necessary. They are also shown the "Know Your Rights" video at intake.

Once the list of legal services is provided, the minor and their parent or legal guardian may utilize their Talton phone cards, and/or use any of the Talton phones on the facility grounds, to contact any of the legal service providers. Prior to the COVID-19 pandemic, the minors, through their parent or legal guardian, could set up an appointment (attorney/client visit) to meet with Proyecto Dilley pro bono group in person. Since May 2020, Proyecto Dilley has not been physically present on the facility grounds due to COVID-19 restrictions, but attorney/client visits have been facilitated virtually/telephonically. ICE is still allowing onsite attorney/client visits if any one of the legal service providers requests to meet in person with the minors (FSA ¶¶ 32-33). These visits are done in compliance with CDC and ICE COVID-19 guidelines.

A legal service provider must submit a Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative, before any information can be shared about a minor. ERO has set up a legal access mailbox for legal service provides to electronically submit the G-28s (FSA ¶ 32).

Additional steps, beyond the requirements of the FSA, taken by ERO to facilitate access to legal counsel include: 1) sign-up sheets for legal services posted throughout the facility to include sleeping areas, and 2) Talton tablets (iPad-type

devices) available free of charge in each neighborhood to supplement phone lines for residents' use.

**b. Legal Access to Counsel at KCFRC (Less than 72 Operating Procedures)**

At Karnes County Family Residential Center (KCFRC), ICE meets the requirements set forth by the FSA regarding legal access to counsel.

ERO expeditiously processes the minors through intake upon arriving at the KCFRC. At intake, the minors are served all forms to include a Form I-770 Notice of Rights, explanation of the right of judicial review, a list of legal services available in the district and parole forms (FSA ¶¶ 12A, 24D). If a minor is 14 years old or older, these documents are served on the minor and explained via their Head of Household. If a minor is under the age of 14 years old, the documents are served on the Head of Household. Documents are read to residents in the language they understand, utilizing language services as necessary.

Families are then provided information about the Legal Orientation Program (LOP) and shown the "Know Your Rights" video, which was prepared by the LOP. At the conclusion of the video, residents are afforded the opportunity to sign up to speak with the LOP individually and the sign-up sheets are forwarded to the LOP point of contact (FSA ¶¶ 12A, 24D, Exhibit 1 ¶ 14). The "Know Your Rights" video also plays continuously on a dedicated channel in every residential suite (FSA ¶¶ 12A, 24D, Exhibit 1 ¶ 14).

In addition, during the orientation process to the facility, intake case workers orient residents on facility guidelines, COVID-19 precautions, and legal service providers. This is completed without advocating for any specific legal provider. A copy of the EOIR Pro Bono Legal Service Providers and all other LOP and NGO information can be found in the back of the orientation packet (FSA ¶ 24D, Exhibit 1 ¶ 14). The orientation packet includes: EOIR Pro Bono Legal Service Providers; American Gateways information and sign-up sheet; RAICES information (flyer) and sign-in sheet; and other NGO information (flyers).

Every residential suite is also provided an EOIR legal aid list, American Gateway flyer and sign-up sheet, a RAICES flyer and sign-up sheet, and any other provided NGO flyers. All flyers and sign-up sheets are posted on the wall. Defendants note that with limited time prior to release, the NGO/LOP may not be able to meet with the family should they already be in the release area, pending out-processing. This is due to security reasons, COVID-19 precautions, and time constraints to ensure families are released timely to make their flights or bus departures.

Once the list of legal services is provided, the minor and their parent or legal guardian can reach out to any of the legal service providers by utilizing their Talton phone cards and using any of the Talton phones on the facility grounds. Each Talton phone card comes with 520 free minutes. Prior to COVID-19, the minors, through their parent or legal guardian, could set up an appointment (attorney/client visit) to meet with American Gateways pro bono group in person (FSA ¶ 32). Since March 12, 2020, American Gateways has not been physically present on the facility grounds due to COVID-19 mitigation measures, but attorney/client visits have been facilitated virtually/telephonically since that time. ICE is still allowing onsite attorney/client visits if any one of the legal service providers requests to meet in person with the minors (FSA ¶¶ 32-33). These visits are conducted in compliance with CDC and ICE COVID-19 guidelines.

A legal services provider must submit a Form G-28 before any information can be shared about a minor. ERO has set up a legal access mailbox for all legal service providers and NGOs to send and receive correspondence 7 days a week (FSA ¶¶ 32-33).

Additional steps taken by ERO, beyond the requirements of the FSA, to facilitate access to legal counsel include: 1) sign-up sheets for legal services posted throughout the facility to include the sleeping areas; 2) provision of informative legal flyers and sign-up sheets provided by the NGO's to all families and minors during

the orientation process at intake; and 3) cell phone and iPad availability to the residents, in addition to landline phones, in each sleeping area with 520 free minutes provided by Talton.

4. <u>Proposed Changes to ORR's Juvenile Coordinator (JC) Interim Reports</u>

On March 18, 2021, Defendants circulated to Plaintiffs a proposed list of changes to information shared by ORR JC interim reports. On March 25, 2021, Defendants and Plaintiffs further discussed these changes and came to the following agreement:

Defendants will *include* in future ORR JC Interim Reports:

1. Average Length of Care: for new minors placed in ORR custody during each reporting period.
2. Bed Capacity: will include summary efforts to increase capacity during the reporting period and note any specific challenges to increasing capacity (i.e. staffing shortages) during the reporting period.
3. Location and Census of Positive COVID-19 Minors: will report cases where the minor acquired COVID-19 while in ORR congregate care facilities as well as "Positive Minors Upon ORR admission" and "Positive Minors Source Under Investigation."
4. General Summary: will include a narrative section in the report that will provide a summary of updates to any publicly-available relevant policies (policies related to COVID protections in ORR custody) during the reporting period. Defendants shall continue to provide a summary of ORR's COVID-19 plans in light of any recent updates to CDC guidelines as well as developments regarding vaccine distribution in line with the Court's order modifying ORR's reports. ECF No. 1098, ¶ 3(c)(vi).

Defendants will *discontinue* reporting on the following in future ORR JC Reports:

1. Data on minors who remain in custody due to lack of fingerprinting or home studies. There have been no recent release delays for these reasons.
2. Minors in Title 42 Authority: This currently appears in the introduction and does not provide any information because Title 42 is not being used against unaccompanied minors.
3. Out of Network Placements: The information provided in the report regarding minors residing long-term in non-ORR facilities is shared with Plaintiffs in detailed form monthly.
4. Transfers of Minors with Positive COVID-19 Results to Non-congregate Setting: Recent reports have explained that transfers out of congregate care are not pursued due to the risk of potentially spreading or catching COVID during the transfer process. Defendants will provide updated policies on transfer and release to Plaintiffs in the manner described above, and will explain them to the Court through the narrative summary.
5. Release of Exposed Minors: ORR has no blanket bar on releasing COVID-exposed minors. Defendants will provide updated policies on transfer and release to Plaintiffs in the manner described above, and will explain them to the Court through the narrative summary.
6. MPP releases: The Federal Government has terminated the MPP.

To the extent not addressed above, Defendants will also report in accordance with the Court's orders. In addition, ORR agrees to provide copies of certain information directly to class counsel - specifically information shared with the Special Master that is also sent to care providers, as well as to provide one time answers to some of the questions raised by Plaintiffs to the extent not addressed

elsewhere in the agreed-upon reporting. The parties agree to confer to revisit the foregoing modifications or to consider additional changes in light of changed circumstances.

DATED: March 26, 2021        /s/Peter Schey (with permission)
                             *Class Counsel for Plaintiffs*
                             CENTER FOR HUMAN RIGHTS &
                             CONSTITUTIONAL LAW
                             Peter A. Schey
                             Carlos Holguín

DATED: March 26, 2021        BRIAN BOYNTON
                             Acting Assistant Attorney General
                             Civil Division
                             AUGUST E. FLENTJE
                             Special Counsel
                             Civil Division
                             WILLIAM C. PEACHEY
                             Director, District Court Section
                             Office of Immigration Litigation
                             WILLIAM C. SILVIS
                             Assistant Director, District Court Section
                             Office of Immigration Litigation
                             SARAH B. FABIAN
                             NICOLE N. MURLEY
                             Senior Litigation Counsels

                             */s/ Fizza Batool*
                             FIZZA BATOOL
                             Trial Attorney
                             Office of Immigration Litigation
                             District Court Section
                             P.O. Box 868, Ben Franklin Station
                             Washington, D.C. 20044
                             Tel: (202) 616-4863
                             Fax: (202) 305-7000
                             Email: fizza.batool2@usdoj.gov

                             *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2021, I served the foregoing pleading on all counsel of record by means of the District Clerk's CM/ECF electronic filing system.

/s/ *Fizza Batool*
FIZZA BATOOL
U.S. Department of Justice
District Court Section
Office of Immigration Litigation

Attorney for Defendants