CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Carlos R. Holguín (90754)
Peter A. Schey (58232)
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Email: pschey@centerforhumanrights.org

*Attorneys for Plaintiffs*

*Additional counsel listed on following page*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>MERRICK GARLAND, Attorney General the United States, *et al.*,<br><br>    Defendants. | No. CV 85-4544-DMG-AGRx<br><br>PLAINTIFFS' RESPONSE TO INDEPENDENT MONITOR'S INTERIM REPORT<br><br>Status Conference: April 23, 2021<br>11:00 AM<br><br>[Hon. Dolly M. Gee] |

NATIONAL CENTER FOR YOUTH LAW
Leecia Welch (Cal. Bar No. 208741)
Neha Desai (Cal. RLSA No. 803161)
Mishan Wroe (Cal. Bar No. 299296)
Melissa Adamson (Cal. Bar No. 319201)
Diane de Gramont (Cal. Bar No. 324360)
1212 Broadway, Suite 600 Oakland, CA 94612
Telephone: (510) 835-8098
Email:   lwelch@youthlaw.org

Plaintiffs respectfully respond to the Independent Monitor's interim report of April 2, 2021 [Doc. # 1103] ("Monitor's Report") as follows:

On March 11 and 12, 2021, Plaintiffs' counsel interviewed class members detained at DHS's Donna, Texas, Central Processing Center and ORR's Carrizo Springs temporary influx facility. On March 29 and 30, 2021, Plaintiffs' counsel interviewed class members detained at ORR's Dallas and Midland emergency intake sites.

Although class members generally corroborate the facts described in the Monitor's Report, they provided additional details regarding the treatment and conditions they have recently experienced during DHS and ORR custody. The children's accounts, although anecdotal, shed additional light on Defendants' evolving approach to the placement and release of class members during the pandemic and, *a fortiori*, compliance with the Settlement's requirements for prompt licensed placement and release to parents and other reputable custodians.

I.  SUMMARY OF SUPPLEMENTAL INFORMATION REPORTED BY CLASS MEMBERS.

    **A.  Class members corroborate the Independent Monitor's account of overcrowded, unsafe conditions at the Donna CPC.**

Conditions at the DHS Donna Central Processing Center ("Donna CPC"), although by all accounts better than those prevailing in Border Patrol stations during the spring of 2019, are neither safe nor sanitary. In addition to corroborating the Independent Monitor's account of overcrowded, unsafe conditions, most children reported having spent approximately ten days at Donna CPC, during which they often slept on the floor, were allowed neither telephone calls nor recreation, were allowed limited access to showers, and basically just waited in plastic-walled "cells" before being transferred to an ORR "emergency intake site" ("EIS"). Exhibit A, Declaration of Leecia Welch, April 9, 2021, ¶¶ 3-13 ("Welch"); Exhibit B, Declaration of Melissa Adamson, April 9, 2021, ¶¶ 17, 34 ("Adamson").

The speed with which ORR is standing up EISs, however, suggests that Defendants are taking steps to minimize the time children spend at the Donna CPC and, presumably, CPCs in Border Patrol sectors other than the Rio Grande Valley. *See, e.g.*, U.S. Customs & Border Protection, *CBP Announces Opening of Temporary Processing Facility in Eagle Pass, Texas*, Apr. 2, 2021, www.cbp.gov/newsroom/national-media-release/cbp-announces-opening-temporary-processing-facility-eagle-pass-texas.

### B. Children report widely differing conditions at emergency intake sites and influx facilities.

a) <u>Carrizo Springs Influx Facility</u>

Plaintiffs' counsel's observations at the Carrizo Springs Influx ("Carrizo") facility generally corroborate the Independent Monitor's description.

At the time of Plaintiffs' visit, there were approximately 780 children placed at Carrizo. Welch ¶ 14.  Plaintiffs' counsel previously visited and toured Carrizo in 2019. Welch ¶ 14.

Class members interviewed at Carrizo reported that they were generally aware of the status of their sponsor's applications and received updates on their case twice a week. Welch ¶ 19. They reported receiving two 20-minute phone calls each week and were hopeful that they would be released soon. Welch ¶ 19.

Interviewed class members reported comfortable living arrangements, access to daily showers, and adequate food. Welch ¶ 16. Children also reported receiving daily educational services and outdoor recreation. Welch ¶ 18. Counsel observed legal service providers conducting "know your rights" trainings for children at the facility during the site visit. Welch ¶ 20. In general, counsel observed that children interviewed at Carrizo appeared much happier and at ease than the children interviewed at Donna CPC. Welch ¶ 15.

b) <u>Kay Bailey Hutchinson Convention Center, Dallas EIS</u>

Plaintiffs' counsel's observations at the Kay Bailey Hutchinson Convention

Center EIS ("Convention Center") facility also generally corroborate the Independent Monitor's description.

At the time of Plaintiffs' visit, there were approximately 2,270 children placed at the Convention Center. Welch ¶ 22; Adamson ¶ 7. During a tour of the facility, counsel observed that all of the children slept in one large hall, on white cots that counsel were informed were spaced out in accordance with COVID-19 guidelines. Welch ¶ 26; Adamson ¶ 9. Counsel observed that children received their meals in a separate area and showered in mobile shower trailers located in a loading dock area. Welch ¶¶ 27, 29; Adamson ¶¶ 11-12. All of the class members interviewed by Plaintiffs' counsel had been at the Convention Center for between 8 and 13 days. Welch ¶ 30; Adamson ¶ 16.

Interviews with class members confirmed the critical importance of implementing the Independent Monitor's recommendation to provide adequate professional case management services at Emergency Intake Sites. *See* Monitor's Report at 25-26. No class members reported having spoken with a case manager, even though all interviewed class members reported having close adult family members in the United States available to receive them. Welch ¶ 32; Adamson ¶ 18. Children reported that their sponsors were ready to complete paperwork but had not yet been contacted to start the release process. Adamson ¶ 18. Children reported that they did not know when or if they would be released to their sponsors. Welch ¶ 32; Adamson ¶ 18. Plaintiffs' counsel have conducted follow-up calls with several children's sponsors since the site visit, and these family members have reported that they still have not been contacted by case managers about the release process. Welch ¶ 33.

Interviewed class members also reported inconsistent and limited access to phone calls during their time at the Convention Center. The majority of children reported having had one ten-minute phone call shortly before Plaintiffs' counsel's site visit. Welch ¶ 31; Adamson ¶ 19.

Children reported receiving 15-60 minutes of English class from Monday to Friday. Welch ¶ 35; Adamson ¶ 20. In regard to recreation, children reported that they had not been outside (other than to shower) for the duration of their time at the Convention Center. Welch ¶ 38; Adamson ¶ 21. Children reported having inconsistent and limited access to a small play area with soccer balls and two basketball hoops and said that they spent the majority of their time sitting on or next to their cots.  Welch ¶ 36; Adamson ¶ 21.

None of the interviewed class members reported having previously spoken with legal counsel or having received a list of free legal services. Adamson ¶ 22.[1]

### c) Midland, Texas EIS

Plaintiffs' counsel's observations at the Midland, Texas EIS facility ("Midland") also generally corroborate the Independent Monitor's description. By the time of Plaintiffs' visit, however, an ORR representative reported that the agency may be in the process of upgrading[2] Midland from an EIS to a temporary influx facility, and that personnel of Southwest Key Programs had recently assumed responsibility for providing care and services to class members. Adamson ¶ 27. These services were previously provided by volunteers from the American Red Cross and employees of the Federal Emergency Management Agency ("FEMA"). Adamson ¶ 27. Given this change in contractors, Plaintiffs' counsel

---

[1] Plaintiffs are advised that legal services provider Kids In Need of Defense ("KIND") will begin providing know your rights presentations and legal screenings at the Convention Center, but it is unclear when such services will begin.

[2] The Independent Monitor notes that ORR has yet to adopt standards for the treatment and conditions children experience at EISs, whereas at least some standards exist for influx facilities. *See* Monitor's Report at 24-25; *see also* Office of Refugee Resettlement, *Children Entering the United States Unaccompanied: Section 7, Policies for Influx Care Facilities*, Sept. 18, 2019, www.acf.hhs.gov/orr/policy-guidance/children-entering-united-states-unaccompanied-section-7.

understand that the services provided to children at Midland may change in the future.

At the time of Plaintiffs' visit, there were approximately 590 children placed at Midland. Adamson ¶ 28. During a tour of the facility, Plaintiffs' counsel observed that children were housed in individual rooms within larger mobile housing units and had easy access to bathrooms and showers. Adamson ¶ 30.

Like the Convention Center, Midland urgently requires additional professional case management services to enable prompt release. *See* Monitor's Report at 25-26. All of the class members interviewed by Plaintiffs' counsel had been at Midland for over two weeks. Adamson ¶ 33. Although all interviewed class members reported having close adult family members in the United States available to receive them,[3] the majority reported that they had never spoken with a case manager. Adamson ¶ 35. One child reported that he had first talked to a staff member about his potential sponsor the day before counsel arrived.  Adamson ¶ 35. None of the children interviewed had any idea about when or if they might be released. Adamson ¶ 36.

Interviewed class members reported inconsistent and limited access to phone calls during their two weeks at Midland. Some children reported having had two ten-minute phone calls, some children reported having had one ten-minute phone call, and one child reported not having any phone calls at all. Adamson ¶ 37. Further, interviewed class members reported that they had not received any

---

[3] According to ORR's representative, more than half of the children detained at Midland are either "Cat 1": that is, they have parents or guardians in the United States; or "Cat 2": that is, they have a brother, sister, grandparent, aunt, uncle, first cousin available to receive them. Adamson ¶ 28; *see also* Office of Refugee Resettlement, *Children Entering the United States Unaccompanied: Section 2.2.1*, Safe and Timely Release from ORR Care, Jan. 30, 2015, www.acf.hhs.gov/orr/policy-guidance/children-entering-united-states-unaccompanied-section-2#2.7 (dividing class members into four categories depending on the affinity of potential custodians).

educational instruction at Midland apart from being given a few English worksheets in a class the day before counsel's visit. Adamson ¶ 38. As for recreation, class members reported having liberal access to the outdoors, but little structured recreation apart from 30-minute soccer games on some days, and on others, not. Adamson ¶ 39. During a tour of a large tent-like structure that serves as the facility's only common indoor space, counsel observed several dozen children coloring or completing worksheets. Adamson ¶ 31. Interviewed class members reported that they occasionally had access to the large tent to draw and make crafts. Adamson ¶ 39.

None of the interviewed class members reported having previously spoken with legal counsel or having received a list of free legal services. Adamson ¶ 40.[4]

### D. Conclusion

Plaintiffs agree that housing children in unlicensed EISs and influx facilities is far preferable to detaining them in Border Patrol stations and CPCs. In Plaintiffs' view, however, ORR's current strategy will prove unsustainable unless adequate case management begins promptly. If relatively few children are assigned case managers, relatively few will be released. And absent a marked reduction in referrals from DHS, it is difficult to see how a proliferation of overcrowded, irregular facilities can possibly be avoided.

It is, of course, possible that ORR recognizes as much and is working to address these issues. But, for now, it appears that a growing number of class members are being relegated to irregular facilities with no meaningful progress toward release.  The longer these children spend in ORR custody without case management services, the more the population will continue to increase and the greater the risk of irreparable injury. The next several weeks will tell, but without a

---

[4] Plaintiffs are advised that legal services provider Kids In Need of Defense ("KIND") will begin providing know your rights presentations and legal screenings at Midland, but it is unclear when such services will begin.

substantial expansion of the case management workforce and higher standards for emergency intake sites, Defendants' adherence to the Settlement's release and licensed placement requirements will be increasingly called into question. Given the rapidly developing circumstances and the ongoing challenges caused by the pandemic, good cause remains for transparency.

II.     RESPONSE TO THE INDEPENDENT MONITOR'S RECOMMENDATIONS.

Plaintiffs agree with the Independent Monitor's recommendations. In view of the foregoing, however, Plaintiffs respectfully request that the Court direct the Independent Monitor to engage in continued monitoring of the available case management services at the EISs, consistent with Recommendation #2 of the Independent Monitor's report, and provide a detailed update on the status of case management before the next status conference.  Plaintiffs further request that the following information be included in the next Monitor Report:

(1) Class members' mean and median lengths of stay in each DHS CPC.
(2) A current list of ORR EISs and influx facilities indicating (a) the criteria ORR uses to place class members at the facility; (b) ORR's policy on transferring class members from the facility to a licensed placement; (c) the facility's bed capacity and current population[5]; (d) the projected dates ORR expects the facility to remain operational; (e) the mean and median lengths of stay for class members placed at the facility; (f) the number of class members at the facility receiving case management services, as well as the number of case managers, coordinators, and Federal Field Specialists assigned to each facility; and (g) the number of class members released from the facility to parents and other sponsors.

---

[5] Plaintiffs note that the most recent ORR Juvenile Coordinator's Report provides this capacity information. *See* ORR Juvenile Coordinator Interim Report at 5-6, April 9, 2021 [Doc. # 1104-2].

Dated: April 9, 2021.

CENTER FOR HUMAN RIGHTS AND
CONSTITUTIONAL LAW
Carlos R. Holguín
Peter A. Schey

NATIONAL CENTER FOR YOUTH LAW
Leecia Welch
Neha Desai
Melissa Adamson
Mishan Wroe
Diane de Gramont

<u>/s/ Leecia Welch</u>
Leecia Welch
*One of the Attorneys for Plaintiffs*