# JUNE 4, 2021
# ICE JUVENILE COORDINATOR REPORT

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY LISETTE FLORES, *et. al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> MERRICK GARLAND, ) <br> Attorney General of the United States, *et al.*, ) <br> ) <br> ) <br> Defendants. ) <br> ) | Case No.: CV 85-4544-DMG |

**JUNE 2021 INTERIM REPORT
OF JUVENILE COORDINATOR DEANE DOUGHERTY
SUBMITTED BY IMMIGRATION AND CUSTOMS ENFORCEMENT**

As required by the Court in its order issued on May 12, 2021, U.S. Immigration and Customs Enforcement (ICE) Juvenile Coordinator Deane Dougherty is submitting the following interim report. Due to the constantly evolving nature of the COVID-19 crisis, and the frequency of custody and discharge determinations, the information in this report is current and accurate as of the time of signature, or for the reported data, as of the date or time noted in conjunction with the information provided.

**I. Census of Minors at ICE Facilities[1]**

As stated in my last interim report, ICE is revising its current family detention posture to allow for a broader repurposing of the physical facilities to better meet operational needs. As of February 26, 2021, all families had been released from Berks and there have been no families housed there since. Currently, the South Texas Family Staging Center and Karnes County Family

---

[1] There are three types of ICE facilities that house minors: Family Staging Centers, hotels, and secure juvenile detention facilities.

1

Staging Center are being used as short-term residential/staging centers for family units, with the goal of releasing families within 72 hours. Additionally, ICE has secured the use of hotels to temporarily house and process for release Class Members and families within the same 72-hour period as Family Staging Centers (FSC), which are described in more detail below. Release within the 72-hour window, however, is contingent upon securing timely travel arrangements with the family's sponsor. COVID-19 positive cases also impact ICE's ability to process and release a family within 72 hours. Families who test positive for COVID-19 are generally held for the requisite 10-day quarantine period. ICE Enforcement and Removal Operations (ERO) Pandemic Response Requirements (PRR), March 16, 2021, page 20.

On May 28, 2021, there were 500 Class Members at the ICE FSCs, 129 in hotels, and 1 in a secure juvenile detention facility, for a total of 630 Class Members in ICE custody. The figures below breakdown these Class Members by age and country of origin.





ICE is making continuous efforts to release Class Members without unnecessary delay in accordance with paragraphs 14 and 18 of the *Flores* Settlement Agreement (FSA). The speed by which Class Members and their accompanying parent(s) or legal guardian(s) are being processed and released from ICE custody has increased significantly. On May 28, 2021, there were three (3) Class Members who had been detained at an ICE facility twenty (20) days or more. Exhibit A. Two of the Class Members have been in custody twenty (20) days or more due to quarantining following a positive COVID-19 test pertaining to either themselves or an accompanying family member and have been or will be released upon completion of the U.S. Centers for Disease Control & Prevention (CDC) recommended quarantine period. The other Class Member is being held in secure detention pursuant to paragraph 21A of the FSA. The chart below represents the number of Class Members in ICE facilities as of May 28, 2021, as well as the average length of stay (ALOS) for the facilities.

| Minors in ICE Custody on 5/28/2021 | | |
|---|---|---|
| Facilities | Census | Average Length of Stay (Days) |
| Berks Family Staging Center | - | - |
| Karnes County Family Staging Center | 101 | 2 |
| South Texas Family Staging Center | 399 | 4 |
| Hotels | 129 | 3 |
| Secure Juvenile Detention Facilities | 1 | 57 |
| Total | 630 | 3 |

## II. Hotels

### A. Update on the Number, Locations, and Safe and Sanitary Conditions at the Hotels (§ 2(b)(ii) of the Court's May 12 Order)

Due to an unprecedented increase in irregular migrant flows to the southwest border, including greater numbers of family units, existing infrastructure simply cannot hold this number of individuals in a way that fully complies with the FSA and other requirements. It is because of these exigent circumstances that the Government secured the use of hotels to meet the critical mission requirements of housing, feeding, testing, transporting, and providing medical attention to these thousands of families in the most humane, sanitary and comfortable manner possible. These hotel facilities are located along or near the southwest border. In addition to the need for hotel facilities to manage the influx, expanded capacity is necessary to properly implement COVID-19 mitigation measures, including reductions in housing capacity and onsite personnel to process cases, which must be implemented in a way to promote social distancing.

Below is a list of hotels available to temporarily house and process families, including location and operating status:

4



| | Hotel Name | Open / Anticipated Opening Date |
|---|---|---|
| | ▮▮▮▮▮ | OPEN |
| | ▮▮▮▮▮ | OPEN |
| ▮ | ▮▮▮▮▮ | OPEN |
| | ▮▮▮▮▮ | OPEN |
| | ▮▮▮▮▮ | TBD |
| s | ▮▮▮▮▮ | TBD |
| | ▮▮▮▮▮ | OPEN |
| | ▮▮▮▮▮ | OPEN |
| ▮ | ▮▮▮▮▮ | OPEN |
| | ▮▮▮▮▮ | OPEN |
| | ▮▮▮▮▮ | OPEN |
| | ▮▮▮▮▮ | OPEN |
| | ▮▮▮▮▮ | OPEN |
| | ▮▮▮▮▮ | OPEN |
| ▮ | ▮▮▮▮▮ | OPEN |
| | ▮▮▮▮▮ | OPEN |
| | ▮▮▮▮▮ | OPEN |

**B. _____E Policies Regarding the Use of Hotels or FSCs, Including Policies and Procedures to Address COVID-19 (§ 2(b)(iii) of the Court's May 12 Order)**

Hotels used by ICE for the temporary housing of Class Members are obligated to follow ICE's Family Residential Standards (with modifications as appropriate for a short-term operation of this type, such as eliminating current full education and outdoor recreation requirements); ICE's Sexual Abuse and Assault Prevention and Intervention Policy; ERO PRR; Section 504 of the Rehabilitation Act of 1973; state or local licensing requirements, if applicable; and paragraph 12 of the FSA.

In order to satisfy paragraph 12, and other FSA requirements, the facilities provide the following: transportation between U.S. Customs and Border Protection (CBP) stations and ports of entry and hotels, as well as transportation hubs and other locations as directed; language assistance/translation; appropriate family recreational activities in each individual room; meal services; laundry; medical care; security; cultural and legal orientations; confidential attorney-client access; and staff trained in trauma-informed care. All residents temporarily housed at hotels have access to toilets and sinks, adequate temperature control and ventilation, meals, snacks, drinks, clean and weather appropriate clothing, and personal hygiene kits.

Onsite medical staff is available 24/7 to include sick calls for, and monitoring of, those that test positive for COVID-19. The provider developed a plan for addressing COVID-19 that was reviewed and approved by ICE's Health Services Corps (IHSC). The plan addresses personal protective equipment (PPE) supplies and usage, symptom screening, handwashing, cleaning, disinfection, testing, physical distancing/cohorting, and quarantine/isolation. Each hotel has dedicated 24-hour nursing staff onsite. Medical staff will monitor temperatures and symptoms. All COVID-19 positive individuals are monitored at FSCs or hotels in accordance with CDC guidance. Hotels are located in areas close to local hospitals. IHSC, or the assigned contractor, provides medical clearance, COVID-19 test results, medication, and medical prescriptions.

C. **Personnel and Capacity to Provide Detailed Monitoring of New and/or Expanded Facilities (§ 2(iv) of the Court's May 12 Order)**

In order to ensure compliance, the ERO Juvenile and Family Management Unit (JFRMU) oversees the contracts with Endeavors and MVM. JFRMU has assigned dedicated Compliance Standards Officers (similar to those deployed to the FSCs) onsite at each of the new hotels, and JFRMU's independent inspections contractor is inspecting the facilities and providing compliance

6

reviews on a monthly basis. Moreover, IHSC continues to provide oversight for medical standards. I personally conducted a site visit to the two hotels that became operational in El Paso, Texas and am planning an additional site visit to the Phoenix-area hotels in late June 2021.

In addition, on March 4, 2021, ICE ERO announced the new ICE Case Review (ICR) process for individuals who believe their case does not align with ICE's enforcement, detention and removal priorities.[2] The ICR process offers another channel through which noncitizens and their representatives can request that ICE exercise its prosecutorial discretion on a particular noncitizen's behalf, and to resolve questions and concerns, consistent with law, policy and the interests of justice. Individuals requesting a case review can contact their local ERO field office for initial consideration, and upon request, cases are further reviewed by a Senior Reviewing Official. Cases involving detained individuals, or those pending imminent removal, are prioritized.

Similarly, the Office of the Immigration Detention Ombudsman (OIDO) is a new and independent office within DHS. The Ombudsman's Office was established by Congress (Sec. 106 of the Consolidated Appropriations Act, 2020, Public Law 116-93) and is not part of ICE. This OIDO is operational to: (1) assist individuals with complaints about the potential violation of immigration detention standards or misconduct by DHS (or contract) personnel; (2) provide independent oversight of immigration detention facilities, including conducting unannounced inspections and reviewing contract terms for immigration detention facilities and services; and (3) serve as an independent office to review and resolve problems stemming from the same. OIDO conducted site visits to hotel facilities from April 26 to April 30, 2021 and provided feedback regarding conditions of detention and compliance with the contract.

---

[2] https://www.ice.gov/news/releases/ice-announces-case-review-process

In addition, ICE continues to coordinate with the Office for Civil Rights & Civil Liberties (CRCL) for their assistance in providing informed recommendations on hoteling conditions and processes. ICE is also supporting discussions with The United Nations High Commissioner for Refugees (UNHCR) for the monitoring work of the hotels.

### D. Case Management Services at Each Facility (§ 2(v) of the Court's May 12 Order)

Each Field Office on the southwest border has activated Family Unit Processing Teams, consisting of Deportation Officers, ERO Assistants, and Supervisory Detention and Deportation Officers to manage the cases at the Endeavors' sites. The use of detailed staff from the interior offices has been implemented, so as not to put further strain on the current border operations.

### III. Status of ICE's Implementation of COVID-19 Guidances

The FSCs and hotels that house Class Members take all reasonable measures to prevent and slow the spread of COVID-19 within the facilities to protect families, staff, and the public. These ICE facilities continue to follow the COVID-19 mitigation practices set forth in the ERO PRR for social distancing, shift staggering, sick leave policies, vaccination access, and other measures to ensure continuity of operations. The ERO PRR was last updated on March 16, 2021.[3]

I am actively monitoring the Department of Homeland Security and ICE guidance with respect to distributing the COVID-19 vaccination. At this time, the agency expects to begin administering vaccinations to Class Members in the near future. All Class Members are administered a COVID-19 test upon arrival at each ICE facility, and upon release. If an individual tests positive for the virus, CDC protocols are followed.

---

[3] https://www.ice.gov/doclib/coronavirus/eroCOVID19responseReqsCleanFacilities.pdf

8

## IV. Report of ICE Facilities Holding Minors and Number of COVID-19 Cases (§ 2(iii) of the Court's May 12 Order)

Pursuant to section 2(iii) of this Court's May 12, 2021 Order, and section 4(b)(iii) of this Court's April 24, 2020 Order, the following charts describe the number of positive COVID-19 cases at ICE facilities as of May 28, 2021.

| Current COVID-19 Positive Cases of FAMU Individuals in ICE Facilities on 5/28/2021 | | | | |
|---|---|---|---|---|
| Facilities | Minor | Adult | Staff | Total |
| Berks Family Staging Center | - | - | - | - |
| Karnes County Family Staging Center | 7 | 11 | 1 | 19 |
| South Texas Family Staging Center | 11 | 13 | - | 24 |
| Hotels | 2 | 3 | - | 5 |
| Secure Juvenile Detention Facilities | - | - | - | - |
| Total | 20 | 27 | 1 | 48 |

| Cumulative COVID-19 Positive Cases of FAMU Individuals in ICE Facilities as of 5/28/2021 | | | | |
|---|---|---|---|---|
| Facilities | Minor | Adult | Staff | Total |
| Berks Family Staging Center | - | - | - | - |
| Karnes County Family Staging Center | 184 | 289 | 115 | 588 |
| South Texas Family Staging Center | 240 | 384 | 145 | 769 |
| Hotels | 54 | 84 | - | 138 |
| Secure Juvenile Detention Facilities | - | - | - | - |
| Total | 478 | 757 | 260 | 1,495 |

| Cumulative COVID-19 Positive Cases of FAMU Individuals in ICE Facilities as of 5/28/2021 | | | |
|---|---|---|---|
| Facilities | Prior to Intake | After Intake | Total |
| Berks Family Staging Center | - | - | - |
| Karnes County Family Staging Center | 402 | 71 | 473 |
| South Texas Family Staging Center | 514 | 110 | 624 |
| Hotels | 125 | - | 125 |
| Secure Juvenile Detention Facilities | - | - | - |
| Total | 1,041 | 181 | 1,222 |

| Cumulative COVID-19 Positive Cases of FAMU Individuals Hospitalized as of 5/28/2021 ||
|---|---|
| **Facilities** | **Hospitalized** |
| Berks Family Staging Center | - |
| Karnes County Family Staging Center | 1 |
| South Texas Family Staging Center | 1 |
| Hotels | 1 |
| Secure Juvenile Detention Facilities | - |
| **Total** | **3** |

Pursuant to section 4(b)(iv) of this Court's April 24, 2020 Order, the Class Members housed in a facility in which either a detainee or staff member have tested positive for COVID-19 have not been released or transferred to non-congregate settings because they are either in quarantine based on CDC guidance and ERO's PRR as a result of testing positive, or having an accompanying family member who tested positive, for COVID-19; or will be released as a family unit upon testing negative for COVID-19 and coordinating travel arrangements with their sponsor.

### V. Class Members' Access to Counsel at ICE Facilities (§ 2(vi) of the Court's May 12 Order)

ICE previously provided descriptions of Class Members' access to counsel in the Joint Status Report filed on March 26, 2021, and in the April 9, 2021, ICE Juvenile Coordinator Interim Report. In light of the changes made to family detention and to increase Class Members' access to counsel, additional modifications have been made since those reports were submitted.

Class Members and residents temporarily housed at a hotel are provided legal service presentations. In addition, legal access posters are placed throughout each facility. The residents are provided smart phones or tablets to access everything that is listed on the posters. Although the hotels have legal access services in place for residents, JFRMU is coordinating with the Department of Justice to establish a Legal Orientation Program (LOP) with the Executive Office for Immigration Review (EOIR) where feasible. Through the LOP, representatives from EOIR-

10

contracted nonprofit organizations "provide comprehensive explanations about immigration court procedures along with other basic legal information to large groups of detained individuals."[4]

Access to counsel at Dilley FSC is summarized as follows: Residents are served with orientation packets that contain the EOIR Pro Bono Services flyer, a Know Your Rights flyer, and local pro bono organizations' flyers and sign-up sheets. These items are also posted throughout the housing complexes. Residents are also shown a Know Your Rights video during intake and are available to view again on television screens throughout the facility multiple times a day in English, Spanish, and Quiche. Sign-up sheets are also posted in the housing complexes for residents to communicate with legal service providers if so interested. Dilley FSC will soon be able to accommodate two daily video-teleconference group legal services presentations during the week. There is a designated legal access area of the facility available to legal service providers for in-person presentations or meetings.

Access to counsel at Karnes County FSC is summarized as follows. Residents are served with orientation packets that contain the EOIR Pro Bono Services flyer, a Know Your Rights flyer, and local pro bono organizations' flyers and sign-up sheets. These items are also posted throughout the housing complexes. Residents are also shown a Know Your Rights video and a local legal service provider orientation video during intake, and both are available to view again on television screens throughout the facility multiple times a day in English and Spanish. Sign-up sheets are also posted in the housing complexes for residents to communicate with legal service providers if so interested. Due to operational adjustments during the COVID-19 pandemic, the EOIR LOP will be able to provide group legal presentations via video-teleconference pending the receipt and installation of the equipment from EOIR. In the interim, group presentations are conducted daily

---

[4] https://www.justice.gov/eoir/legal-orientation-program

using cell phones and iPads. Other local legal service providers may request individual meetings by telephone or in-person according to ICE's Family Residential Standards.

### VI.  Title 42 Compliance

Pursuant to section 2(b) of the Court's May 12, 2021 Order, and section 6 of the Court's September 4, 2020 Order, ordering that the government maintain records and statistical information on minors held in Title 42 custody, including an update regarding the number of minors held in Title 42 custody, and to monitor compliance with the *Flores* Settlement Agreement (FSA) with respect to minors held in Title 42 custody, I can confirm that ICE includes minors temporarily housed by ICE pursuant to Title 42 authorities over 72 hours pending expulsion in its monthly Paragraph 28A reporting shared with Plaintiffs' counsel.  Between March 30, 2021, and May 24, 2021, ICE did not house any Class Members pending expulsion under Title 42 processes at an ICE facility.

Signed on this 4th day of June 2021.

DEANE D DOUGHERTY
Digitally signed by DEANE D DOUGHERTY
Date: 2021.06.04 16:08:54 -04'00'
_____

Deane Dougherty
ICE Juvenile Coordinator

# ATTACHMENT A
# TO JUNE 4, 2021 ICE JUVENILE COORDINATOR REPORT

| Det Location | A-Number | Subject ID | Last Name | First Name | Country of Citizenship | Book-In Date | Birth Date | Age | Age Group | Specific explanation for detention 20+ Days |
|---|---|---|---|---|---|---|---|---|---|---|
| ▮ | ▮ | ▮ | ▮ | ▮ | EL SALVADOR | 04/01/2021 13:07 | ▮ | 16 | 14 to 17 | Minor was first encountered by CBP as part of a family unit at the Southwest border in January 2017 and was released with his mother. Accompanied minor was then arrested by the Upper Darby Police Department (PA) on 02/22/2018 for the criminal charges of terroristic threats, harassment, possession of an instrument of crime, unlawful possession of a weapon on school property and recklessly endangering another person. Charges were adjudicated delinquent. Minor was arrested by the Upper Darby Police Department (PA) on 10/01/2019 for the criminal charge of possession of a weapon on school property. Charge was adjudicated delinquent. Minor was arrested by the Upper Darby Police Department (PA) on 08/12/2020 pursuant to an active warrant for terroristic threats and harassment. Minor was convicted of the criminal offense of harassment and sentenced to six months' probation. Minor was taken into ICE custody and placed into secure detention on 09/03/2020. After multiple continuances, a bond hearing was held before an IJ on 02/19/2021. IJ denied release on bond on 02/19/2021, finding that the minor failed to meet his burden to demonstrate he does not pose a danger to the community, reasoning that the evidence suggests he has been and continues to be an active gang member (including numerous MS-13 tattoos, including highly visible tattoos on his face, neck, and knuckles); he has engaged in behavior that involves threats of harm or death to different individuals; he possessed weapons at school on two different occasions; pressured other juveniles to sell narcotics; and was arrested after completing juvenile probation following his first juvenile adjudication, suggesting he has not been rehabilitated and continues to pose a danger to the community, which cannot be mitigated by bond, or community/family ties. Minor appealed IJ bond decision to BIA, which is pending. |
| ▮ | ▮ | ▮ | ▮ | ▮ | BRAZIL | 05/08/2021 16:26 | ▮ | 9 | 6 to 13 | Family unit of two parents and two juveniles. Initially the adult female ▮ tested Covid positive and the family underwent a 10 day quarantine. Testing after the initial 10 day quarantine resulted in 13yr old child ▮ testing positive and family had to quarantine a second time for another 10 days. Family tested negative after the second quarantine and subsequently released OREC on day 20. |
| ▮ | ▮ | ▮ | ▮ | ▮ | BRAZIL | 05/08/2021 16:25 | ▮ | 13 | 6 to 13 | Family unit of two parents and two juveniles. Initially the adult female ▮ tested Covid positive and the family underwent a 10 day quarantine. Testing after the initial 10 day quarantine resulted in 13yr old child (▮) testing positive and family had to quarantine a second time for another 10 days. Family tested negative after the second quarantine and subsequently released OREC on day 20. |