1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Carlos R. Holguín (90754)
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Email: crholguin@centerforhumanrights.email

*Attorneys for Plaintiffs*

*Additional counsel listed on following page*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*, | No. CV 85-4544-DMG-AGRx |
| Plaintiffs, | PLAINTIFFS' RESPONSE TO ORR JUVENILE COORDINATOR'S JUNE 4, 2021 INTERIM REPORT |
| v. | |
| MERRICK GARLAND, Attorney General the United States, *et al.*, | Status Conference: June 25, 2021 Time: 11:00 AM Hon. Dolly M. Gee |
| Defendants. | |

NATIONAL CENTER FOR YOUTH LAW
Leecia Welch (Cal. Bar No. 208741)
Neha Desai (Cal. RLSA No. 803161)
Mishan Wroe (Cal. Bar No. 299296)
Melissa Adamson (Cal. Bar No. 319201)
Diane de Gramont (Cal. Bar No. 324360)
1212 Broadway, Suite 600 Oakland, CA 94612
Telephone: (510) 835-8098
Email:   lwelch@youthlaw.org

# TABLE OF CONTENTS

I.     INTRODUCTION................................................................................1

II.    RESPONSE TO JUVENILE COORDINATOR REPORT ...........................4

    A.   Children are detained for months in unlicensed EISs that are incapable of meeting their needs...................................................................................4

    B.   Inadequate case management at EISs unnecessarily delays release and harms children. ...............................................................................5

    C.   Children are not expeditiously transferred to licensed facilities. ...................8

    D.   ORR is not fully utilizing its licensed bed capacity. ......................................9

III.   CONCLUSION .............................................................................11

1

## TABLE OF AUTHORITIES

2

3   **Cases**

4   *Flores v. Lynch*, 212 F. Supp. 3d 907 (C.D. Cal. 2015)..............................................8

5   Order re May 7, 2021 Status Conference, May 12, 2021 [Doc. #1122]……4, 5, 8, 9

6

7   Order re Pls.' Mot. To Enforce Settlement as to "Title 42" Class Members, Sept. 4, 2020 [Doc. # 976] ………………………………………………………………………8

8

9   Order re Defs. Ex Parte Application to Stay, Sept. 21, 2020 [Doc. # 990]………..9

10  **Other Authorities**

11  Operation Artemis Senior Leader Brief, May 13, 2021, cited in Camilo Montoya-Galvez, *Migrant children describe poor conditions at makeshift U.S. shelters in interviews with attorneys*, CBS News, May 19, 2021, https://www.cbsnews.com/news/immigration-border-migrant-children-poor-conditions-shelters/................................................................................................1

12

13

14  Julie Watson, Amy Taxin, and Adriana Gomez Licon, *Panic attacks highlight stress at shelters for migrant kids*, AP NEWS, June 14, 2021, https://apnews.com/article/government-and-politics-politics-stress-immigration-health-0801f0a93bf74a51e405562cb3c1c55c.......................................................5

15

16

17  ORR Policy Guide § 1.2.2....................................................................10, 11

18  ORR Policy Guide § 7........................................................................10

19  *Southwest Land Border Encounters*, www.cbp.gov/newsroom/stats/southwest-land-border-encounters.................................................................................3

20

21  William A. Kandel, *Increasing Numbers of Unaccompanied Alien Children at the Southwest Border*, Congressional Research Service, April 9, 2021, https://crsreports.congress.gov/product/pdf/IN/IN11638/2 ...................................3

22

23

24

25

26

27

28

I.  INTRODUCTION

On June 4, 2021, the ORR Juvenile Coordinator filed an interim report pursuant to the Court's orders. *See* ORR Juvenile Coordinator Interim Report, June 4, 2021 [Doc. # 1124-2] ("June Juvenile Coordinator Report"). On June 8, 2021, Plaintiffs requested that the Parties meet and confer to attempt to resolve Plaintiffs' concerns regarding the ORR Juvenile Coordinator's report. *See* Ex. A, Emails from Carlos Holguín. On June 11, 2021, Plaintiffs also requested that the Parties continue their discussions regarding Plaintiffs' broader concerns about Defendants' use of Emergency Intake Sites (EISs). *Id.* On June 16, 2021, the parties and the Independent Monitor met and conferred but were unable to resolve the concerns and requests raised by Plaintiffs.

Since March 2021, Plaintiffs' counsel have conducted site visits and interviewed children at the majority of ORR's EISs, including the Delphi EIS, Dimmit EIS, Freeman Expo Center EIS, Fort Bliss EIS, Kay Bailey Hutchinson Convention Center EIS, Lackland Air Force Base EIS, Long Beach Convention Center EIS, Midland EIS, Pecos EIS, and Starr Commonwealth EIS, as well as the Carrizo Springs Temporary Influx Shelter. During these visits, Plaintiffs' counsel also interviewed children whom ORR had previously detained at the NACC Houston EIS and the Pennsylvania International Academy EIS, both of which are now closed. In addition, Plaintiffs have evaluated the June Juvenile Coordinator Report in light of class member population reports ORR supplies pursuant to paragraph 29 of the Settlement, as well as nominally internal "Operation Artemis" reports appearing in the public record.[1]

Plaintiffs are increasingly concerned about the prolonged detention of

---

[1] *See* Operation Artemis Senior Leader Brief, May 13, 2021, cited in Camilo Montoya-Galvez, *Migrant children describe poor conditions at makeshift U.S. shelters in interviews with attorneys*, CBS News, May 19, 2021, https://www.cbsnews.com/news/immigration-border-migrant-children-poor-conditions-shelters/.

thousands of children in unlicensed, standardless EIS facilities, which are, at best, suitable for short-term emergency care and are inherently incapable of caring for children as the Settlement requires. According to the Juvenile Coordinator Report, nearly half of all children in ORR custody are now detained in EISs. June Juvenile Coordinator Report at 3. Because ORR has yet to implement binding standards for EISs, the conditions and treatment children experience in such facilities vary greatly.

In the largest EISs—most notably, the Fort Bliss EIS near El Paso, Texas—children are confined in immense, communal tents, in which 300-600 children spend nearly all day in exceedingly close quarters.  Children report —

- being permitted to leave the massive tents for outdoor recreation for as little as one hour daily;
- having virtually no personal privacy for weeks on end;
- receiving no education apart from at most an hour and a half of instruction in English as a second language;
- receiving no consistent mental health services;
- sleeping during the day due to extreme boredom and hopelessness;
- being allowed no visitation with their families;
- being permitted to telephone parents and relatives for only ten minutes twice weekly;
- receiving no legal assistance apart from a generalized "know your rights" presentation.

Compounding the foregoing hardships, many children report being kept in the dark about how long they will detained, what has been done to reunify them with their parents or other sponsors, or why other children have been released promptly while they endure seemingly indefinite detention.

Obviously, these conditions and treatment fall far below the standards of a properly licensed placement, which the Settlement requires ORR to afford children

"as expeditiously as possible." Exs. in Support of Motion to Enforce Settlement, February 3, 2015 [Doc. #101], Ex. 1 ("Settlement"), ¶ 12.A.3.

Of course, the reasons ORR has resorted to EISs are not in dispute. Nonetheless, the increase in unaccompanied children arriving at the U.S.-Mexico border began nearly six months ago, plateaued in March, and has been falling sharply ever since.[2] It may be that the immensely powerful U.S. Government still cannot do better by children than it is, but that assumption is becoming increasingly shop-worn as months go by and the number of children entering ORR custody continues to fall.[3]

_____

[2] *See Southwest Land Border Encounters*, www.cbp.gov/newsroom/stats/southwest-land-border-encounters (last visited June 18, 2021) (May 2021 CBP "encounters" with unaccompanied minors down 25 percent from March 2021 encounters).

[3] Indeed, according to the June Juvenile Coordinator Report, as of May 31, ORR had 17,418 children in custody. June Juvenile Coordinator Report at 3. This amounts to approximately 4,200 more children than ORR had in custody in June 2019 (13,179), the apex of the last UC influx. *Compare* June Juvenile Coordinator Report at 3 *with* Ex. B, Declaration of Carlos Holguín, ¶¶ 3-4, June 21, 2021 ("Holguín June 21 Dec."). Why the agency is still—despite having had nearly six months to open additional licensed beds—housing 8,368 children in EISs and another 571 in the Carrizo Springs influx facility, cannot be explained mathematically or as a rational response to the pandemic. *See* June Juvenile Coordinator Report at 3.

Children at EISs are routinely packed into industrial-scale, congregate settings that cannot possibly offer them any greater protection against contagion than they would receive at licensed facilities operating at their full, pre-pandemic capacity. In any event, the "CDC has recently directed ORR to relax its guidelines and to accommodate children at full capacity." *See* William A. Kandel, *Increasing Numbers of Unaccompanied Alien Children at the Southwest Border*, Congressional Research Service, April 9, 2021, 2, https://crsreports.congress.gov/product/pdf/IN/IN11638/2.

In June 2019, ORR had 2,407 children—or *18.3 percent* of all children in its custody—in unlicensed "influx" placement. Holguín June 21 Dec., ¶ 4. Even assuming, arguendo, ORR were justified in placing all 4,200 children it now has

PLAINTIFFS' RESPONSE TO JUVENILE COORDINATOR REPORT
CV 85-4544-DMG-AGRX

Given the foregoing, the June Juvenile Coordinator Report fails to shed adequate light on whether ORR is discharging its duty under the Settlement to place children in properly licensed facilities "as expeditiously as possible." The report fails to adequately respond to the Court's May 12, 2021 Order and offers scant evidence and inadequate assurance that Defendants are providing adequate case management, making diligent efforts to expeditiously transfer children from EISs to licensed facilities, or even fully utilizing their existing licensed capacity.

II.    RESPONSE TO JUVENILE COORDINATOR REPORT

**A. Children are detained for months in unlicensed EISs that are incapable of meeting their needs.**

The Court ordered the Juvenile Coordinator to provide "a census of minors in an EIS for more than 20 days and those minors' length of stay." Order re May 7, 2021 Status Conference at 3, May 12, 2021 [Doc. #1122] ("May 12, 2021 Order"). The Juvenile Coordinator reports that, as of May 31, 2021, over 2,100 children had spent 41 days or longer in an EIS and over 2,600 children had spent between 21 and 40 days in an EIS. June Juvenile Coordinator Report at 7. Additionally, hundreds of children have spent 60 days or longer in EISs, including at least 122 children at the Fort Bliss EIS and 70 children at the Pecos EIS. *See* Ex. C, Declaration of Melissa Adamson, Ex. 1 Emergency Intake Site and Influx Care Facility Data Summary ("Data Summary") at 2, June 11, 2021; *see also* Ex. D, Declaration of F.P.P. ¶ 8, June 9, 2021 ("F.P.P. Dec."); Ex. E, Declaration of K.L.M. ¶ 8, June 4, 2021 ("K.L.M. Dec.").

EIS facilities are not designed to provide long-term care to unaccompanied children and it is fundamentally inappropriate for children to spend weeks or months in these facilities. *See* June Juvenile Coordinator Report at 4 (noting that

over and above its June 2019 population, that would at most excuse 6,600 of ORR's current emergency placements, but not 8,939, which now accounts for *51.3 percent* of ORR's entire detainee population. *See* June Juvenile Coordinator Report at 3.

EISs "are intended to be short-term/temporary facilities" and "are designed for mass care and offer basic standards of care for minors"). For example, children at the Fort Bliss EIS sleep in rows of bunk cots in giant tents with hundreds of other children, enjoy no privacy, receive almost no structured education, have little to do during the day, and lack adequate mental health care to address children's severe anxiety and distress surrounding their prolonged detention.[4] *See* Ex. G, Declaration of Carlos Holguín ¶¶ 13, 26-30, June 10, 2021 ("Holguín June 10 Dec."); *see also* Ex. F, Declaration of E.A.M.R. ¶¶ 9-11, 15, 17, 19, 24, 30-31, June 4, 2021 ("E.A.M.R. Dec."); Ex. H, Declaration of E.Y.O.G. ¶¶ 29, 31, April 29, 2021 ("E.Y.O.G. Dec."); K.L.M. Dec. ¶¶ 8-14, 16-19, 29, 34; Ex. I, Declaration of D.L.M.E., ¶¶ 7-16, 23, May 3, 2021 ("D.L.M.E. Dec."); Ex. J, Declaration of E.M.E.O., ¶¶ 8-14, 17-19, May 3, 2021 ("E.M.E.O. Dec."); Ex. K, Declaration of K.M.T., ¶¶ 11-16, 22-27, 30-33, April 28, 2021 ("K.M.T. Dec."); Ex. L, Declaration of G.M.Z.S., ¶¶ 9-15, April 20, 2021 ("G.M.Z.S. Dec.").

### B. Inadequate case management at EISs unnecessarily delays release and harms children.

The Court ordered the Juvenile Coordinator to report on "case management services at *each facility*." May 12, 2021 Order at 2 (emphasis added). The Court further ordered the Juvenile Coordinator to provide "updates on ORR's plans to improve case management and expedite release of minors." *Id.* at 3. The Juvenile Coordinator Report fails to adequately respond to either inquiry.

The Juvenile Coordinator Report offers no detail on case management services at individual ORR facilities and provides no information from which it

---

[4] Plaintiffs' mental health expert, Dr. Ryan Matlow, visited Fort Bliss with Plaintiffs' counsel on June 3 and 4, 2021 and he shared his concerns and recommendations with Defendants during the parties' June 16, 2021 meet and confer. *See also* Julie Watson, Amy Taxin, and Adriana Gomez Licon, *Panic attacks highlight stress at shelters for migrant kids*, AP NEWS, June 14, 2021, https://apnews.com/article/government-and-politics-politics-stress-immigration-health-0801f0a93bf74a51e405562cb3c1c55c.

1    may reasonably be concluded that adequate case management is being supplied at

2    any given facility. June Juvenile Coordinator Report at 8-9. Instead, the report

3    states generally that, "Currently, all EIS facilities have case management services in

4    place. Some EIS facilities have developed robust Case Management Services while

5    others continue to ramp up their services." *Id.* at 9. The report offers no definition

6    of "robust Case Management", nor does it mention where "robust Case

7    Management" is available and where it is not. Moreover, the report offers no

8    indication of a timeline by which all EISs will have "robust Case Management." *Id.*

9            That case management services are technically available at a facility does not

10   mean that every child is receiving case management. Children detained at EISs

11   continue to report serious delays and interruptions in case management, including

12   (i) not meeting with a case manager for weeks or even months; (ii) having no ability

13   to request a meeting with their case manager; (iii) hearing nothing from their case

14   manager for extended periods; (iv) having case managers removed or replaced

15   without notice or explanation, interrupting their release process; and (v) remaining

16   in EIS detention much longer than other children because of disparities in case

17   management. *See* Ex. M, Declaration of M.E.L.A. ¶¶ 4, 6-7, June 9, 2021

18   ("M.E.L.A. Dec.") (has never met case manager after approximately 62 days in

19   detention at an EIS and would like to talk to a case manager); Ex. N, Declaration of

20   A.S.B.A. ¶¶ 6-7, June 8, 2021 ("A.S.B.A. Dec.") (waited approximately one month

21   to meet with a case manager about release to her mother); Ex. O, Declaration of

22   E.S.G.V. ¶¶ 12, 15-16, April 20, 2021 ("E.S.G.V. Dec.") (had not yet met with case

23   manager after 22 days in detention at an EIS); E.A.M.R. Dec. ¶¶ 28-29 (interruption

24   in case management); F.P.P. Dec. ¶¶ 6-9 (sponsor sent paperwork 4 weeks ago and

25   heard nothing back; hasn't spoken to case manager after 62 days of detention and

26   other kids have left more quickly); Ex. P, Declaration of W.P.L. ¶¶ 9, 11, May 12,

27   2021 ("W.P.L. Dec.") (had not received any information on sponsorship process

28

despite being detained one month); Ex. Q, Declaration of Y.A.A.V. ¶ 22, March 29, 2021 ("Y.A.A.V. Dec.") ("There is no one here I can talk to about my case.").

As to the Court's inquiry regarding plans to improve case management and expedite release, the report includes information about ORR's plans to expedite the release of children but does not report on any plans to improve case management. *See* June Juvenile Coordinator Report at 7-8. While Plaintiffs welcome ORR's efforts to expedite releases, such policy changes are not a substitute for case management. Without case management, even children eligible for expedited release to their parents have spent weeks at EISs without any progress toward release. *See* E.Y.O.G. Dec. ¶¶ 14-15, 25-26 (child spent 15 days at one EIS and 12 days at another EIS and mother had not yet been contacted to begin release process); Ex. R, Declaration of M.A.L. ¶ 4, 8-10, April 28, 2021 ("M.A.L. Dec.") (had not spoken to a case manager about release to her mother after 23 days at EIS).

The continued shortfalls and seeming chaos in case management at EISs unnecessarily delays children's release and violates Defendants' obligation to "make and record the prompt and continuous efforts on [their] parts toward family reunification and the release of the minor." Settlement ¶¶ 14, 18. Inadequate case management also delays transfers to licensed shelters for children who cannot be quickly released to a sponsor. *See* Settlement ¶ 12.A. Without prompt case management, ORR cannot timely determine whether a child is likely to face a prolonged length of stay because of additional steps in their release process, such as the need for a home study. *See, e.g.,* A.S.B.A. Dec. ¶¶ 4, 7. Finally, the lack of consistent case management and clear communication about the status of their cases causes children severe anxiety and distress. E.S.G.V. Dec. ¶¶ 15, 28; K.L.M. Dec. ¶¶ 8, 17-19, 29, 34; F.P.P. Dec. ¶¶ 8-9, 12, 16; Ex. S, Declaration of E.C.O. ¶¶ 18, 20, April 19, 2021 ("E.C.O. Dec.").

**C. Children are not expeditiously transferred to licensed facilities.**

The Court ordered the Juvenile Coordinator to provide "updates on ORR's plans, if any, with respect to long-term use of EISes and processes to transfer minors from EISes into licensed facilities, if release to a sponsor is not feasible." May 12, 2021 Order at 3. The Settlement requires that a child be placed in "a 'licensed program' within three days of their arrest—or, in the case of an 'emergency or influx,' 'as expeditiously as possible.'" Order re Pls.' Mot. To Enforce Settlement as to "Title 42" Class Members at 12, Sept. 4, 2020 [Doc. # 976] ("Sept. 4, 2020 Order") (citing Settlement at ¶¶ 12, 19).

Although ORR has now been operating EISs for over three months and some children have been detained in EISs for over two months, the Juvenile Coordinator Report offers no details on processes or criteria ORR uses to determine which children are transferred to licensed facilities and when those transfers occur. *See* June Juvenile Coordinator Report at 7-8; *see also* Interim Report and Recommendations by Independent Monitor and Special Expert Dr. Paul H. Wise at 16, April 2, 2021 [Doc. # 1103] (Midland EIS opened on March 14, 2021 and Kay Bailey Hutchinson Convention Center EIS opened on March 17, 2021). The report notes only that ORR is "shifting focus to addressing minors with lengthy LOS at EIS and licensed facilities" and that efforts include "transfer of minors to licensed facilities when release is not imminent." June Juvenile Coordinator Report at 8.

Given the alarming number of children who have spent months in EIS facilities, these vague statements are insufficient to show that ORR is fulfilling its obligations under the Settlement to make good faith and diligent efforts to transfer children to licensed facilities as expeditiously as possible. *See* Sept. 4, 2020 Order at 12; *see also Flores v. Lynch*, 212 F. Supp. 3d 907, 914 (C.D. Cal. 2015) (noting that 20 days "may fall within the parameters of Paragraph 12A" if it "is as fast as Defendants, in good faith and in the exercise of due diligence, can possibly go in screening family members for reasonable or credible fear"). Moreover, the report

offers no indication as to what criteria, if any, ORR uses to determine which children are afforded licensed placement and which children are relegated to prolonged EIS detention. *See* Order re. Defs. Ex Parte Application to Stay at 4, Sept. 21, 2020 [Doc. # 990] ("The *Flores* Agreement does not sanction such arbitrary discrimination between its Class Members.").

While Plaintiffs understand that ORR's efforts must be "flexible and dynamic," June Juvenile Coordinator Report at 8, such flexibility must be accompanied by policies and procedures to ensure that children do not fall through the cracks and are expeditiously transferred to licensed facilities if they cannot be promptly released to sponsors.

**D. ORR is not fully utilizing its licensed bed capacity.**

The Court ordered the Juvenile Coordinator to provide "updates on ORR's plans, if any, to expand capacity, particularly of licensed shelter beds." May 12, 2021 Order at 3. The Juvenile Coordinator's Report offers few details on ORR's plan to increase its licensed capacity and ORR has not significantly increased its licensed bed capacity over the last several months.  ORR has added 279 licensed beds in shelters, 31 licensed temporary foster care beds, and 3 licensed long term foster care beds. *Compare* ORR Juvenile Coordinator Interim Report at 3, April 9, 2021 [Doc. # 1104-2] *with* June Juvenile Coordinator Report at 3.

Of particular concern is that the Juvenile Coordinator's Report indicates that hundreds of ORR's current licensed beds are left unused. *See* June Juvenile Coordinator Report at 3-5. The Juvenile Coordinator reports that 473 of 1,408 transitional foster care beds were unoccupied as of May 31, 2021. June Juvenile Coordinator Report at 3. In addition, ORR had 596 unoccupied shelter beds and 199 empty long-term foster care beds. *Id*.[5] Clearly children are not being transferred

---

[5] The report also states that ORR has over 240 unused beds at Influx Care Facilities, representing 30 percent of total influx capacity. June Juvenile Coordinator Report at 3. Although these beds are not licensed, Influx Care Facilities are preferable to EISs

to licensed placements "as expeditiously as possible" when children remain in unlicensed EIS facilities for prolonged periods of time while licensed beds sit unused. *See* Settlement ¶ 12.A.

The Juvenile Coordinator Report does not adequately explain why ORR is not fully utilizing its existing licensed beds. The report offers no explanation at all for the hundreds of unused shelter beds. *See* June Juvenile Coordinator Report at 3. As for the 34% of transitional foster care beds and 43% of long-term foster care beds sitting empty, the report states that some "families and/or foster care programs have declined to accept minors directly from the border" and that "a foster care home may have specifications for the demographics able to reside with them (i.e. parenting teens, tender aged children, and special needs)." June Juvenile Coordinator Report at 3.[6]

Yet over 250 tender age children have spent 20 days or longer at EIS facilities, including 5- and 6-year-old children held at EISs for over a month and 8- and 9-year old children held in EISs for 40 days. *See* Data Summary at 3-4; *see also* Ex. T, Declaration of Y.F.A.G.G. ¶¶ 3, 5, 8-9, May 12, 2021 ("Y.F.A.G.G. Dec."). ORR, meanwhile, has over 470 empty transitional foster care beds. *See* June Juvenile Coordinator Report at 3. There is no apparent reason why these tender age children could not be quarantined, tested for Covid, and placed in transitional foster homes in well under 20 days. Pregnant teenagers have also been placed at EISs for

---

because they are subject to higher standards and provide children with a greater array of services than EISs. *See* ORR Policy Guide 7: Policies for Influx Care Facilities, https://www.acf.hhs.gov/orr/policy-guidance/children-entering-united-states-unaccompanied-section-7#7.1 (last visited June 18, 2021); *see also* Declaration of Leecia Welch ¶¶ 14-20, April 9, 2021 [Doc. # 1109-1].

[6] *See also* ORR Policy Guide 1.2.2: Children with Special Needs, https://www.acf.hhs.gov/orr/report/children-entering-united-states-unaccompanied-section-1#1.2 (last visited June 18, 2021) (giving priority for transitional foster care placements to children under 13 years of age, sibling groups with one sibling under 13 years of age, teens who are pregnant or are parenting, and children or youth with special needs).

prolonged periods of time, despite also having priority for transitional foster care under ORR Policy. *See* Ex. U, Declaration of K.E.V.V. ¶¶ 6-9, May 26, 2021 ("K.E.V.V. Dec.").[7]

III.   CONCLUSION

Plaintiffs respectfully request that the Court order the Juvenile Coordinator to provide an updated report on:

(1) Findings from the Juvenile Coordinator's site visits to Texas EISs in June 2021, including a summary of conditions at these facilities. *See* June Juvenile Coordinator Report at 2.

(2) A census of minors in an EIS for more than 20 days, more than 40 days, and more than 60 days, and those minors' length of stay.

(3) An update on the status of case management at each facility, including the name of the contractor providing case management at each facility, the ratio of case managers to children at each facility, how frequently children meet with case managers at each facility, and how many children at each facility have not yet met with a case manager and their lengths of stay.

(4) A specific explanation of ORR's processes to expeditiously transfer children to licensed facilities and the policy or procedure, if any, by which ORR decides which children are placed in a licensed facility, which at an Influx Care Facility (ICF), and which at an EIS.

(5) A specific explanation for why existing licensed beds and ICF beds are unoccupied, why tender age children remain at EISs instead of transitional foster care placements, ORR's specific plans to expeditiously transfer children to empty licensed beds, and ORR's efforts to expand capacity at licensed shelters.

---

[7] *See also* ORR Policy Guide 1.2.2, *supra*, fn. 6.

PLAINTIFFS' RESPONSE TO JUVENILE COORDINATOR REPORT
CV 85-4544-DMG-AGRX

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: June 21, 2021

CENTER FOR HUMAN RIGHTS AND
CONSTITUTIONAL LAW
Carlos R. Holguín

NATIONAL CENTER FOR YOUTH LAW
Leecia Welch
Neha Desai
Melissa Adamson
Mishan Wroe
Diane de Gramont

*/s/  Leecia Welch*
Leecia Welch
*One of the Attorneys for Plaintiffs*