**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JENNY LISETTE FLORES, *Plaintiff-Appellee,* | Nos.  20-55951 20-56052 |
| v. | D.C. No. 2:85-cv-04544- DMG-AGR |
| MERRICK B. GARLAND, Attorney General; ALEJANDRO MAYORKAS; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; U.S. CUSTOMS AND BORDER PROTECTION, *Defendants-Appellants.* | OPINION |

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Submitted June 23, 2021[*]
San Francisco, California

Filed June 30, 2021

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Before:  William A. Fletcher, Marsha S. Berzon, and
         Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Berzon

## SUMMARY[**]

### Immigration / Appellate Jurisdiction

In an action involving the 1997 settlement agreement between the United States and a class of minors subject to detention by U.S. immigration authorities ("the Agreement"), the panel affirmed a district court order enjoining the Department of Homeland Security ("DHS") from detaining certain minors in hotels for more than a few days in the process of expelling them from the country.

In March 2020, the Centers for Disease Control ("CDC") issued an order temporarily suspending the introduction into the United States of persons traveling from Canada or Mexico who would otherwise be introduced into a congregate setting. The order's stated purpose was to protect the public health from COVID-19, and it was issued under Title 42, which authorizes the Surgeon General to prohibit introduction of persons to protect against communicable disease. In October 2020, the order was replaced by the now-operative order, which is substantially the same ("Title 42 Order").

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

In July 2020, the Agreement's independent monitor reported that DHS was using hotels to house unaccompanied and accompanied minors pending expulsion under Title 42. Plaintiffs moved to enforce the Agreement, maintaining, among other contentions, that the hoteling program violated the Agreement's requirement that DHS ordinarily transfer minors within three days to a program licensed to provide residential, group, or foster care service. The district court issued an order on September 4, 2020, requiring DHS to stop placing minors at hotels, absent certain exceptions. On appeal, this panel denied the government's motion for a stay pending appeal. The district court then denied the government's stay motion but issued a modified order requiring DHS to stop placing minors at hotels, except for brief hotel stays (not more than 72 hours) as necessary and in good faith to alleviate bottlenecks in intake processes ("September 21 Order"). This panel denied the government's renewed motion for a stay pending appeal.

In February 2021, the CDC temporarily excepted unaccompanied minors from expulsion under Title 42. The government filed a status report with this Court stating that it was not expelling accompanied minors under the Title 42 Order, it had generally stopped using hotels for accompanied minors, and did not anticipate expanding its use of hotels. Nonetheless, the government could not state that it would not use hotels for custody in the future.

The panel concluded that this appeal was not moot, explaining that a defendant claiming that voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur. In light of the government's recent representations, the panel concluded that that burden was not met here.

4                    FLORES V. GARLAND

The panel further concluded that it had appellate jurisdiction under 28 U.S.C. § 1291. In the context of postjudgment proceedings in which a district court has retained jurisdiction to enforce an injunction or a consent decree, this Court has held that some orders are sufficiently final to warrant appellate jurisdiction absent any imposed sanction, and some are not. Here, the panel concluded that the September 4, 2020, order was not final because a subsequent order modified it. However, following *Armstrong v. Schwarzenegger*, 622 F.3d 1058 (9th Cir. 2010), the panel concluded that the district court's September 21 Order was appealable because (1) it had a significant impact by making clear that the Agreement applies to minors expelled under the Title 42 Order and requiring government compliance, and (2) if the government complied, as apparently it had done, it would be unlikely to have any opportunity to appeal it unless the panel exercised jurisdiction under section 1291. Recognizing that it had tentatively reached the opposite conclusion as to jurisdiction under 28 U.S.C. § 1292(a)(1) in denying the stay motion than it did here under section 1291, the panel explained that the two statutes differ in their wording and reach, so arriving at different results did not signal contradiction.

Next, the panel concluded that the district court's orders were consistent with the Agreement. First, the panel rejected the government's argument that minors held under Title 42 are in the custody of the CDC, rather than DHS, and therefore the district court erred in applying the Agreement here. Looking to the ordinary meaning of "legal custody" in family law, the California Family Code, and the DHS's own regulations assertedly implementing the Agreement, the panel concluded that DHS has legal custody over minors held under Title 42 because it maintains physical control and exercises decision-making authority over such minors.

Second, the panel rejected the government's contention that the district court erred in applying a "strict three-day transfer rule." The panel concluded that the district court's orders in fact are not strict, noting flexibility to address exigent circumstances and the exception to alleviate bottlenecks.

Finally, the panel rejected the government's contention that the risk of harm to the United States and the public necessitates reversing the district court's orders. The panel explained that its prior holding, in denying the stay motion, that the government had not demonstrated irreparable harm was strengthened by the CDC's decision to except unaccompanied minors from expulsion under Title 42 and by the government's recent representations. The panel observed that, should the government seek to use hotels for custody related to Title 42 in the future, it may move to modify the consent decree and, if the district court denies the government's motion, this Court will have jurisdiction to review the denial under 28 U.S.C. § 1292(a)(1).

## COUNSEL

Jeffrey Bossert Clark, Acting Assistant Attorney General;
August E. Flentje, Special Counsel to the Assistant Attorney
General; William C. Peachey, Director; Willia C. Silvis,
Assistant Director; Sarah B. Fabian and Nicole N. Murley,
Senior Litigation Counsel; Office of Immigration Litigation,
Civil Division, United States Department of Justice,
Washington, D.C.; for Defendants-Appellants.

Leecia Welch, Neha Desai, Poonam Juneja, Freya Pitts, and
Melissa Adamson, National Center for Youth Law, Oakland,
California; Carols R. Holguín, Center for Human Rights &
Constitutional Law, Los Angeles, California; for Plaintiffs-
Appellees.

Christopher J. Hajec and Matt A. Crapo, Immigration
Reform Law Institute, Washington, D.C., for Amicus Curiae
Immigration Reform Law Institute.

# OPINION

BERZON, Circuit Judge:

In the latest iteration of this decades-long litigation, the district court issued two orders enforcing the consent decree incorporating the *Flores* Agreement. The orders enjoined the Department of Homeland Security ("DHS") from detaining certain minors in hotels for more than a few days in the process of expelling them from the United States. We conclude that the district court's second order was a final decision for purposes of 28 U.S.C. § 1291, and we therefore have jurisdiction to review it. As the district court did not err in requiring DHS to apply the *Flores* Agreement to these minors, we affirm the district court's order.

## I.

In 1997, the United States entered into a settlement agreement ("the *Flores* Agreement" or "the Agreement") with a class of minors subject to detention by U.S. immigration authorities ("Plaintiffs"). *See Flores v. Rosen* ("*Flores II*"), 984 F.3d 720, 727 (9th Cir. 2020). The Agreement was entered by the district court as a consent decree and remains in effect today.[1] Among other things, the Agreement provides that after the government apprehends minors, it ordinarily must transfer them to a "licensed program" within three days.[2] Agreement ¶ 12A. A "licensed

---

[1] In December 2020, we affirmed the district court's order denying the government's motion to terminate the Agreement. *See Flores II*, 984 F.3d at 744.

[2] "'[I]n the event of an emergency or influx of minors into the United States,' the requirement that minors be placed within three days is relaxed, provided that 'the INS shall place all minors pursuant to

program" refers to a "program, agency or organization that
is licensed by an appropriate State agency to provide
residential, group, or foster care services for dependent
children." *Id.* ¶ 6.

In March 2020, the Centers for Disease Control ("CDC")
issued an order temporarily suspending the "introduction . . .
into the United States . . . [of] persons traveling from Canada
or Mexico . . . who would otherwise be introduced into a
congregate setting in a land Port of Entry (POE) or Border
Patrol station at or near the United States borders with
Canada and Mexico," subject to certain exceptions. 85 Fed.
Reg. 17,060, 17,061 (Mar. 26, 2020). The order was issued
under Title 42 of the U.S. Code, which authorizes the
Surgeon General to "prohibit . . . the introduction of persons
and property" to protect against a "serious danger of the
introduction of [any communicable] disease into the United
States." 42 U.S.C. § 265. The stated purpose of the order was
to "protect the public health from an increase in the serious
danger of the introduction of Coronavirus Disease 2019
(COVID-19) into the land POEs, and the Border Patrol
stations between POEs, at or near the United States borders
with Canada and Mexico." 85 Fed. Reg. at 17,061.

The CDC order called for "the movement of all . . . aliens
[covered by the order] to the country from which they
entered the United States, or their country of origin . . . as
rapidly as possible, with as little time spent in congregate
settings as practicable under the circumstances." *Id.*
at 17,067. The order requested that "DHS implement this
order because CDC does not have the capability, resources,
or personnel needed to do so." *Id.* The order was extended in

Paragraph 19 as expeditiously as possible.'" *Flores II*, 984 F.3d at 728
(quoting Agreement ¶ 12A(3)).

April and May 2020 and replaced, in October 2020, by a new but "substantially the same" order. *See* 85 Fed. Reg. 65,806, 65,807 (Oct. 16, 2020); 85 Fed. Reg. 31,503 (May 26, 2020); 85 Fed. Reg. 22,424 (Apr. 22, 2020). We refer to the now-operative October CDC order as the "Title 42 Order."

The district court has appointed an independent monitor to assess the implementation of the *Flores* Agreement. In July 2020, the monitor reported to the district court that DHS was using hotels to house unaccompanied minors, as well as minors apprehended with a family member ("accompanied minors"), pending their expulsion under Title 42, "routinely for multiple days." *See Flores v. Barr*, No. CV-85-4544, 2020 WL 5491445, at *2 (C.D. Cal. Sept. 4, 2020) ("Sept. 4 Order"). The independent monitor reported the next month that DHS had used twenty-five hotels across three states, both in border cities (El Paso and McAllen, Texas) and interior cities (Phoenix and Houston), to house 660 minors between the ages of ten and seventeen, 577 of whom were unaccompanied. *Id.* On average, minors were housed in hotels for "just under five days, though 25% [were] held for more than 10 days, with a maximum stay of 28 days." *Id.*

Plaintiffs filed a motion to enforce the *Flores* Agreement, maintaining, among other contentions, that the hoteling program violated the Agreement's requirement that DHS ordinarily transfer minors to a licensed program if it holds them for longer than three days. Agreement ¶ 12A. Plaintiffs also asserted that minors held in hotels were being denied access to counsel in violation of the Agreement. *Id.* ¶ 32.

The district court granted Plaintiffs' motion. The court declared that the Agreement applied to minors detained under the authority of Title 42 and required the government to "comply with the Agreement with respect to such minors

to the same degree as any other minors held in their custody." Sept. 4 Order, 2020 WL 5491445, at *10. Implementing that declaration, the court directed DHS to stop placing minors in hotels by September 15, 2020. *Id.* The order provided that "exceptions may be made for one to two-night stays while in transit or prior to flights." *Id.* In the event of "other exigent circumstances . . . necessitat[ing] future hotel placements," the district court directed the government to "immediately alert Plaintiffs and the Independent Monitor, providing good cause for why such unlicensed placements are necessary." *Id.* Citing paragraph 12A of the Agreement, the district court required DHS to "transfer all minors" currently held in hotels to licensed facilities "as expeditiously as possible." *Id.* The court further directed the government to permit Plaintiffs' counsel to visit any facility where minors were being held under Title 42 and to meet with any minor being so held, invoking paragraphs 32 and 33 of the Agreement. *Id.* at *11.

The government appealed the district court's order and filed an emergency motion in this Court seeking a stay pending appeal. The government's motion relied on evidence not presented to the district court. We denied the government's motion without prejudice and granted a temporary administrative stay to allow the government to seek a stay in the district court. Order, *Flores v. Barr*, No. 20-55951 (9th Cir. Sept. 16, 2020).

The district court denied the government's motion for a stay but modified its original order. The modified order required DHS to stop placing minors at hotels by September 28, 2020, with the exception that "DHS may implement *brief* hotel stays (not more than 72 hours) as necessary and in good faith to alleviate bottlenecks in the intake processes at licensed facilities." *Flores v. Barr*, No. CV-85-4544, 2020

WL 5666550, at *4 (C.D. Cal. Sept. 21, 2020) ("Sept. 21 Order"). Returning to this Court, the government renewed its emergency motion for a stay pending appeal.

In October 2020, we denied the government's motion for a stay pending appeal. *Flores v. Barr*, 977 F.3d 742 (9th Cir. 2020) ("Order Denying Stay"). We concluded that the government had not shown a strong likelihood of success on the merits because we likely did not have jurisdiction over the appeal. *Id.* at 748. Additionally, we held that the government had not established that irreparable harm would result if the district court's orders took effect while the appeal was pending. *Id.* at 749.

There have been some developments concerning the underlying Title 42 Order while this appeal has been pending. In November 2020, the U.S. District Court for the District of Columbia issued a preliminary injunction barring enforcement of the Title 42 Order as to unaccompanied minors, *P.J.E.S. v. Wolf*, No. 20-2245, 2020 WL 6770508, at *17 (D.D.C. Nov. 18, 2020), but the D.C. Circuit later stayed the preliminary injunction pending appeal, Order, *P.J.E.S. v. Pekoske*, No. 20-5357 (D.C. Cir. Jan. 29, 2021). Then, in February 2021, the CDC issued a notice "temporarily except[ing] . . . unaccompanied noncitizen children" from expulsion under Title 42. CDC, Notice of Temporary Exception from Expulsion of Unaccompanied Noncitizen Children Encountered in the United States Pending Forthcoming Public Health Determination (Feb. 11, 2021). The notice stated that CDC was "in the process of reassessing" the Title 42 Order and that the temporary exception for unaccompanied minors would "remain in effect until CDC has completed its public health assessment and published any notice or modified Order." *Id.*

After the CDC notice, the government filed a status report with this Court stating that "CDC does not currently have a date by which it anticipates [its] reassessment will be complete." The government further reported that it "does expel minors who are accompanied by their parents or legal guardians under the Title 42 Order, along with such parents or legal guardians." The government explained that it had "stopped using hotels for the purpose of housing accompanied minors with their parents or legal guardians prior to their expulsion under the Title 42 Order, except on very rare occasions as permitted for brief periods by the district court's orders, and does not anticipate expanding its use of hotels for this purpose going forward." Nonetheless, the government could not "state that it would not use hotels for custody related to Title 42 in the future, either during the current pandemic or a future public health emergency, if such practice were permitted."

## II.

This appeal is not moot, nor does the government maintain that it is. The government has stated that it may "use hotels for custody related to Title 42 in the future, either during the current pandemic or a future public health emergency, if such practice were permitted." "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). In light of the government's recent representation, that burden is not met here.

Having determined that there is a live controversy, we begin by addressing whether we have appellate jurisdiction. The government contends we have jurisdiction to decide the

appeal under either 28 U.S.C. § 1291[3] or 28 U.S.C. § 1292(a)(1).[4]

After the government moved for a stay pending appeal, we issued an argument order asking the parties to "to discuss the basis for appellate jurisdiction in light of *Flores v. Barr*, 934 F.3d 910 (9th Cir. 2019) [("*Flores I*")]." Order, *Flores v. Barr*, No. 20-55951 (9th Cir. Sept. 25, 2020). *Flores I* held that section 1292(a)(1) did not grant us appellate jurisdiction over a district court order enforcing the *Flores* Agreement. Section 1292(a)(1) authorizes "appellate jurisdiction over interlocutory district court orders 'granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions.'" *Flores I*, 934 F.3d at 914 (quoting 28 U.S.C. § 1292(a)(1)). In *Flores I*, the "parties agree[d] that this court ha[d] jurisdiction over the appeal of [that] post-judgment order only if it modified the Agreement." *Id.* at 912. We concluded that the order did not modify the Agreement but simply enforced it, and therefore that jurisdiction did not lie under section 1292(a)(1). *Id.* at 915–17. The government never identified section 1291 as a basis for appellate jurisdiction, and we did not address that alternative.

In the briefing and argument on the government's motion for a stay pending appeal in this case, the parties again

---

[3] Section 1291 provides in relevant part: "The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ."

[4] Section 1292(a)(1) provides in relevant part: "[T]he courts of appeals shall have jurisdiction of appeals from . . . [i]nterlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions . . . ."

focused primarily on section 1292(a)(1). In their brief
opposing the motion for a stay, Plaintiffs maintained that
jurisdiction was lacking because the district court's orders,
like the order at issue in *Flores I*, did not modify the
Agreement. In reply, the government maintained that the
orders did "functionally modif[y]" the Agreement.
Additionally, the government averred in its reply brief that
jurisdiction lay under 28 U.S.C. § 1291, which grants
jurisdiction over "final decisions" of the district court. But
the government's argument in that respect was limited: it
asserted that the district court's orders were final because
they enjoined "activity taken under independent statutory
authority . . . by the CDC Director who has nothing to do
with the government's immigration operations and is not a
party to the Agreement." *Id.*

Denying the government's motion for a stay, we
concluded we "likely" did not have jurisdiction over the
appeal under § 1292(a)(1) because the "district court just
directed compliance with the Agreement" and did not
modify it. Order Denying Stay, 977 F.3d at 747. We also
rejected the government's argument that jurisdiction lay
under section 1291, reasoning that the "district court's orders
do not state that the CDC Director is covered by the
Agreement and do not require the CDC to do anything." *Id.*
at 746 n.2.

Now, in its opening brief on the merits, the government
argues for the first time that jurisdiction is proper under
section 1291. The district court's orders are "final for all
practical purposes," the government maintains, as "there are
no further proceedings in the district court contemplated by
the orders." For this standard, the government relies on *Stone
v. City & County of San Francisco*, 968 F.2d 850, (9th Cir.
1992). *Stone* held that a postjudgment contempt order

imposing sanctions was final for purposes of section 1291.
*Id.* at 854–55. The government points to *Stone*'s observation
that the "most important concerns in determining § 1291
finality are 'the inconvenience of piecemeal review on the
one hand and the danger of denying justice by delay on the
other.'" *Id.* at 855 (quoting *Dickinson v. Petroleum
Conversion Corp.*, 338 U.S. 507, 511 (1950)).

Plaintiffs respond that appellate jurisdiction in *Stone*
"relied on the fact that the district court had imposed
sanctions on the appellant." Plaintiffs maintain that when
"the district court has not imposed sanctions, a post-
judgment order is not yet final."

Plaintiffs' reading of *Stone* is accurate. We observed in
that case that "[w]hen a contempt order threatens to impose
sanctions to coerce compliance but the sanctions never
actually are imposed because the party appeals before the
sanctions accrue, the order is not final." 968 F.2d at 854 n.4.
But a broader review of our case law, including cases not
cited by the parties, demonstrates that Plaintiffs' proposed
rule is too narrow to encompass all the postjudgment orders
this court has held appealable under section 1291.

In the context of postjudgment proceedings in which the
district court has retained jurisdiction to enforce a permanent
injunction or a consent decree, we have held that some
postjudgment orders are sufficiently final to warrant
appellate jurisdiction absent any imposed sanction, and
some are not. Three cases arising in the context of prison
reform litigation illustrate our court's approach to
determining finality for purposes of section 1291.

First, in *Armstrong v. Schwarzenegger*, 622 F.3d 1058
(9th Cir. 2010), the district court had years earlier required
the state defendants to produce a remedial plan to provide

disability accommodations for prisoners and had issued a permanent injunction directing enforcement of the plan. *Id.* at 1063. Plaintiffs brought a postjudgment motion to require defendants to accommodate the needs of class members housed in county jails. *Id.* The district court determined that defendants were violating their statutory duties and the court's prior orders by failing to provide disability accommodations to class members housed in county jails, and it "ordered defendants to develop and issue to the counties a plan to comply with the [Americans with Disabilities Act] by improving the tracking of state prisoners and parolees they house in county jails," among other things. *Id.* at 1064.

We held that the district court's order was an appealable final decision. First, we observed that "[f]inality is 'to be given a practical rather than a technical construction': the finality requirement is intended to prevent 'piecemeal litigation' rather than to vindicate some purely technical definition of finality." *Id.* (quoting *United States v. One 1986 Ford Pickup*, 56 F.3d 1181, 1184 (9th Cir. 1995)). We explained that we are "less concerned with piecemeal review when considering post-judgment orders, and more concerned with allowing some opportunity for review, because 'unless such [postjudgment] orders are found final, there is often little prospect that further proceedings will occur to make them final.'" *Id.* (quoting *One 1986 Ford Pickup*, 56 F.3d at 1185). Applying that logic to the order on review, we reasoned that the order "required defendants to produce a plan with specific features . . . that would govern future interactions between defendants, the counties, and the disabled prisoners and parolees housed in the county jails." *Id.* at 1064–65. The order "did not contemplate further orders except in the event of disagreement between defendants and plaintiffs over the details of the plan." *Id.*

at 1065. As a result, if we did not exercise jurisdiction "and the defendants in good faith delivered the plan as ordered," it was "unclear that there would be any future opportunity for them to appeal." *Id.* Accordingly, we concluded that jurisdiction lay under section 1291. *Id.*[5]

In contrast, we held that two postjudgment orders, issued five years apart in another prison reform lawsuit, were not final for purposes of section 1291. In the underlying litigation, the district court had appointed a receiver to oversee the implementation of two consent decrees pertaining to the provision of health care in California prisons. *Plata v. Schwarzenegger*, 560 F.3d 976, 978–79 (9th Cir. 2009) ("*Plata I*"); *Plata v. Brown*, 754 F.3d 1070, 1073 (9th Cir. 2014) ("*Plata II*").

In *Plata I*, the receiver had moved for contempt against the State for failure to fund the receiver's capital projects. 560 F.3d at 978. The district court entered an order directing the State to transfer $250 million to the receiver by a date certain and to appear in a contempt hearing shortly after that date if it had not done so. *Id.* at 979. We held that the order was "not final, but [was] rather an interim step toward further proceedings." *Id.* at 980. We reasoned that a "civil contempt order is ordinarily not appealable until the district court has adjudicated the contempt motion and applied sanctions." *Id.* We rejected the State's argument that awaiting sanctions would not allow it to raise the challenges it sought to raise "because ordinarily a litigant defending a

---

[5] For two additional cases holding that injunctions issued in postjudgment proceedings were final for purposes of section 1291, see *Natural Resources Defense Council, Inc. v. Southwest Marine Inc.*, 242 F.3d 1163 (9th Cir. 2001), and *United States v. Washington*, 761 F.2d 1404 (9th Cir. 1985).

contempt charge may not raise objections to the underlying order that it violated." *Id.* (citing *United States v. Ayres*, 166 F.3d 991, 995 (9th Cir. 1999)). We observed that the State's "dilemma may simply be a consequence of [its] failure to follow more appropriate procedures . . . to challenge the receivership and its plans." *Id.* And we were "not entirely convinced that the district court's order so confines the proposed proceedings." *Id.* Accordingly, we held that we lacked appellate jurisdiction under section 1291.

Five years later, the State sought to file a motion to terminate the consent decrees. The district court issued "a scheduling order to coordinate the filing of a termination motion with discovery disclosures." *Plata II*, 754 F.3d at 1072. The State appealed the order, maintaining that it unlawfully delayed the State's statutory right to file a termination motion. *Id.* at 1074. We held that the scheduling order was not appealable under section 1291 but that the issues were sufficiently important to warrant mandamus review. *Id.* at 1072–73.

Addressing section 1291, we acknowledged that we had "held that an order entered after the underlying dispute has been settled is appealable because it does not implicate the concern with avoiding piecemeal appellate review that underlies the final judgment rule." *Id.* at 1074 (citing *Armstrong*, 622 F.3d at 1064; *One 1986 Ford Pickup*, 56 F.3d at 1184–85; *Washington*, 761 F.2d at 1406). We determined that in the circumstances presented, however, review of the order did "raise the problem of piecemeal review" because the litigation had been in the "postjudgment, remedial phase since the entry of the first consent decree in 2002." *Id.* We reasoned that the district court had "entered a number of orders designed to facilitate

the State's compliance with the consent decrees and help draw this case to a close." *Id.* If the order at issue "were immediately appealable as a post-judgment order, then every scheduling order setting the framework for further proceedings in this case might also be immediately appealable." *Id.* at 1074–75. Concluding that "each case management order implementing a consent decree cannot readily be considered a final post judgment order for purposes of appeal," we held that jurisdiction did not lie under section 1291. *Id.* at 1075.

*Armstrong* and the two *Plata* cases offer some guideposts for deciding whether a postjudgment order is final in the injunctive consent decree context. Orders contemplating further proceedings on the same issue, such as case management orders and contempt orders that do not impose sanctions, are unlikely to be final. A final order should not anticipate any further proceedings on the same issue and should have some real-world significance. The order in *Armstrong* requiring defendants to create a plan for providing disability accommodations to class members in county jails was final because (1) it had significant, lasting ramifications (the plan "would govern future interactions between defendants, the counties, and the disabled prisoners and parolees housed in the county jails," 622 F.3d at 1064–65), and (2) no further proceedings on the same issue were contemplated, making it "unclear that there would be any future opportunity for [defendants] to appeal" if they complied with the order, *id.* at 1065.

Here, the district court's September 4 Order was not final because the district court issued a subsequent order modifying it. But the September 21 Order is more like the appealable order in *Armstrong* than the nonappealable orders in the *Plata* cases. The September 21 Order has a significant

impact because it makes clear that the Agreement applies to minors expelled under the Title 42 Order and requires the government to comply with the Agreement as to those minors. If the government complies with the September 21 Order, as apparently it has done, it is unlikely to have any opportunity to appeal it unless we exercise jurisdiction under section 1291. Following *Armstrong*, we conclude that the September 21 Order is a final decision, and jurisdiction therefore lies under section 1291.

We recognize that we tentatively reached the opposite conclusion as to section 1292(a)(1) in our order denying the government's motion for a stay than we do here under section 1291. But the two statutes differ in their wording and reach, so arriving at different results applying each does not signal contradiction. We note as well that there is no practical difference between our current conclusion that we have jurisdiction under section 1291 and our earlier conclusion that we did not have jurisdiction under section 1292(a)(1), as we reached the latter determination after what was essentially a merits analysis. *See* Part III, *infra*. To the extent there is nonetheless some tension in the case law interpreting sections 1291 and 1292(a)(1), we leave the resolution of that tension for another day.[6] For now, we hold that under our precedents, we have jurisdiction under section 1291 and must exercise it.

---

[6] The Seventh Circuit has rejected *Stone*'s "pragmatic finality" approach to analyzing the appealability under section 1291 of "orders in postjudgment proceedings in institutional reform litigation." *Bogard v. Wright*, 159 F.3d 1060, 1063 (7th Cir. 1998). *Bogard*, decided before *Armstrong* and our other injunctive cases applying *Stone*, concluded instead that the "orthodox, and . . . the adequate, routes for obtaining immediate appellate review of orders that cause irreparable harm are mandamus . . . and 28 U.S.C. § 1292(a)(1)." *Id.*

### III.

As to the merits, we have already addressed the parties' primary contentions in the process of determining, in our order denying the government's motion for a stay, whether we were likely to have jurisdiction under section 1292(a)(1). The section 1292(a)(1) inquiry required us to analyze whether the district court's orders were consistent with the Agreement or modified it. We determined that the orders were likely consistent with the Agreement. We now affirm that conclusion.

### A.

First, the government maintains that the district court erred in concluding that the Agreement applies to minors held in custody pending their expulsion under the Title 42 Order. As before, we reject this contention.

By its terms, the Agreement applies to "[a]ll minors who are detained in the legal custody of the INS." Agreement ¶ 10. The former "Immigration and Naturalization Service's obligations under the Agreement now apply to [DHS] and the Department of Health and Human Services." *Flores I*, 934 F.3d at 912 n.2. Additionally, the Agreement applies to both unaccompanied and accompanied minors. *Flores v. Lynch*, 828 F.3d 898, 905 (9th Cir. 2016).

Reprising the arguments made in support of its stay motion, the government maintains that minors held under Title 42 "are in the legal custody of the CDC" because "the source of law that gives rise to the government's custody" is the Title 42 Order, not the immigration statutes. As we observed in denying the stay motion, there is no evidence that the term "custody," as used in the *Flores* Agreement, refers to the *source* of legal authority for custody, as opposed

to the entity actually exercising legal custody. The Agreement does not define "custody," so we look to the common meaning of the term, taking into account its legal context. *See Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009).

The ordinary meaning of the term "custody" in family law is the right to make important decisions affecting the child. For example, Black's Law Dictionary defines "legal custody" in the family law context as "[t]he authority to make significant decisions on a child's behalf." *Legal Custody*, *Black's Law Dictionary* (11th ed. 2019); *see* Principles of the Law of Family Dissolution § 2.09 (2002) (explaining that states use "legal custody" to mean "the right to participate in important decisions affecting the child"). Similarly, the California Family Code § 3003 defines "legal custody" as "the right and the responsibility to make decisions relating to the health, education, and welfare of a child." Cal. Fam. Code §§ 3003, 3006.[7] DHS itself, in a recently promulgated set of regulations asserted[ly] implementing the *Flores* Agreement, defined "custody" as "within the physical and legal control of an institution or person," 84 Fed. Reg. 44,392, 44,526 (Aug. 23, 2019), a definition consistent with the family law understanding of "legal custody."[8] The government's current position,

---

[7] We refer to California law in interpreting the Agreement because we "use contract principles" in "construing consent decrees," and the "contract law of the situs state applies." *Thompson v. Enomoto*, 915 F.2d 1383, 1388 (9th Cir. 1990).

[8] The regulations are not fully in force. *Flores II* largely upheld the district court's order enjoining DHS's new regulations from taking effect. 984 F.3d at 744. Neither our reasoning nor the district court's order reviewed in *Flores II* turned on the definition of "custody." *See id.* at 737–44; *Flores v. Barr*, 407 F. Supp. 3d 909, 916–24 (C.D. Cal. 2019).

focusing on the source of the legal authority for assigning custody and not on the assigned custody itself, is inconsistent with its use of the term in its own regulations, as well as with common legal usage.

The government maintains that we should not look to family law to interpret "legal custody" as used in the Agreement because "a minor's parent often would have 'legal custody' under . . . state family-law principles." The government's suggestion seems to be that DHS and a child's parent could not both have legal custody of the child at the same time. But as Plaintiffs point out, the parents of children in government custody do retain parental rights, and more than one person or entity can have legal custody of a child. *See* Cal. Fam. Code § 3003 (recognizing joint legal custody).

Here, it is clear that DHS both maintains physical control and exercises decision-making authority over the minors held in hotels under Title 42. DHS apprehends the minors; DHS decides, apparently unilaterally and with no explanation or articulated standards, whether to expel them under Title 42 or to detain them for removal proceedings under the immigration statutes; DHS decides where and for how long to hold them (the Title 42 Order says nothing whatsoever about detention in hotels); and DHS provides for their physical needs, including medical care. *See* Sept. 4 Order, 2020 WL 5491445, at *4–5. Thus, the district court did not modify the Agreement in concluding that minors held under Title 42 are in DHS's custody for purposes of the Agreement or, therefore, by applying the Agreement to those minors.

The government raises the concern that the "district court's reading would allow the Agreement to potentially apply to other—currently unanticipated—public-health-related custodial situations, . . . so long as DHS plays a role

in the custody involved in carrying them out." In support of its position, the government poses the hypothetical scenario of a child who had been exposed to Ebola, which has an incubation period of up to 21 days, and suggests that the Agreement "could require release of the minor" before that period had ended. We decline to engage in this speculation. The Agreement provides that, in the event of an "emergency," including "medical emergencies," the government shall place minors in a licensed program "as expeditiously as possible." Agreement ¶ 12A(3), 12B. In light of this language concerning medical emergencies, we have no fear that our conclusion that DHS has custody of the children held under the current Title 42 Order will hamper the government's ability to respond to a future, as-yet-unanticipated health emergency.

**B.**

Second, the government maintains that even if the Agreement applies to the minors being expelled under the Title 42 Order, the government's hoteling program does not violate the Agreement.

The government contends that the district court "incorrectly concluded that the Agreement requires that minors be transferred to licensed facilities generally within 72 hours" and ignored the exception for emergencies. *See* Sept. 21 Order, 2020 WL 5666550, at *4. As noted above, paragraph 12A of the Agreement provides an exception from the three-day transfer rule "in the event of an emergency." Agreement ¶ 12A(3). The Agreement defines an "emergency" as "any act or event that prevents the placement of minors . . . within the time frame provided," including "medical emergencies (e.g., a chicken pox epidemic among a group of minors)." *Id.* ¶ 12B. In the event of an emergency, DHS is required to place minors in a

licensed program "as expeditiously as possible." *Id.*
¶ 12A(3). The government maintains that the emergency
exception applies here, making the district court's
"application of a strict three-day transfer rule . . . incorrect."

The district court's orders in fact are not strict. The
original order provides the government with flexibility to
address "exigent circumstances . . . that necessitate future
hotel placements." Sept. 4 Order, 2020 WL 5491445, at *10.
And the amended order permits three-day hotel stays for the
express purpose of allowing the government to "alleviate
bottlenecks in the intake processes at licensed facilities."
Sept. 21 Order, 2020 WL 5666550, at *4. Nothing in the
record establishes that the COVID-19 pandemic impedes or
prevents the government from placing minors in licensed
programs within three days.

Additionally, the government maintains that the district
court erred in ruling that holding minors in hotel rooms in
the care of "transportation specialists" is not "safe," as
required by the Agreement. *See* Sept. 4 Order, 2020 WL
5491445, at *8–9; Sept. 21 Order, 2020 WL 5666550, at *2;
Agreement ¶ 12A. We need not decide whether the district
court correctly applied the Agreement's "safe and sanitary"
requirement because the September 21 Order eliminates the
practical import of the district court's finding on that issue.
Paragraph 12A of the Agreement requires DHS to hold
minors in facilities that are "safe and sanitary" after their
arrest, before they are transferred to a licensed program.
Agreement ¶ 12A. As mentioned, DHS must transfer minors
to a licensed program within three days barring an
emergency. *Id.* In the September 4 Order, the district court
found that hotel placements were not safe and ordered DHS
to stop using hotels, with limited exceptions. Sept. 4 Order,
2020 WL 5491445, at *8–10. But the September 21 Order

permitted DHS to hold minors in hotels for up to three days,
the same amount of time that would be allowed for a safe
and sanitary placement under the Agreement. Sept. 21
Order, 2020 WL 5666550, at *4. Thus, even if we were to
conclude that the district court erred in finding that hotel
placements were not safe, there would be no reason to alter
the district court's September 21 Order. We therefore
decline to reach the "safe and sanitary" question.

## IV.

Finally, the government maintains that the risk of harm
to the United States and the public necessitates reversing the
district court's orders. We have already held that the
government has not demonstrated that complying with the
district court's orders will cause irreparable harm. Order
Denying Stay, 977 F.3d at 749. That conclusion is
strengthened by the CDC's decision to except
unaccompanied minors from expulsion under Title 42 until
further notice, and by the government's representation that
it has "stopped using hotels for the purpose of housing
accompanied minors with their parents or legal guardians
prior to their expulsion under the Title 42 Order, except on
very rare occasions as permitted for brief periods by the
district court's orders, and does not anticipate expanding its
use of hotels for this purpose going forward." *See supra*
p. 12. Should the government seek to "use hotels for custody
related to Title 42 in the future, either during the current
pandemic or a future public health emergency," it retains the
option of moving to modify the consent decree to permit that
practice. If the district court denies the government's motion,
we will have jurisdiction to review the denial under 28
U.S.C. § 1292(a)(1).

## V.

The district court's September 21, 2020 Order is
**AFFIRMED.**