CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Carlos R. Holguín (90754)
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Email: crholguin@centerforhumanrights.email

*Attorneys for Plaintiffs*

*Additional counsel listed on following page*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MERRICK GARLAND, Attorney General the United States, *et al*., <br><br> Defendants. | No. CV 85-4544-DMG-AGRx <br><br> MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT RE EMERGENCY INTAKE SITES <br><br> Hearing: September 10, 2021 <br> Time: 9:30 a.m. <br> Hon. Dolly M. Gee |

NATIONAL CENTER FOR YOUTH LAW
Leecia Welch (Cal. Bar No. 208741)
Neha Desai (Cal. RLSA No. 803161)
Mishan Wroe (Cal. Bar No. 299296)
Melissa Adamson (Cal. Bar No. 319201)
Diane de Gramont (Cal. Bar No. 324360)
1212 Broadway, Suite 600 Oakland, CA 94612
Telephone: (510) 835-8098
Email:   lwelch@youthlaw.org

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................1

II.   STATEMENT OF FACTS ..................................................................................5

    A.   The Fort Bliss and Pecos EISs Are Inherently Unsafe and Inappropriate
    Placements for Children. ..................................................................................5

        1.   Children at the Fort Bliss and Pecos EISs Receive Wholly Inadequate
        Recreation and Education. ...........................................................................6

        2.   Children at the Fort Bliss and Pecos EISs Live in Unsanitary
        Conditions and Lack Privacy. .....................................................................8

        3.   Children's Health Has Been Jeopardized at the Fort Bliss and Pecos
        EISs Due to Undercooked, Insufficient, and Inedible Food. ........................9

        4.   Staff at Some EISs, Including Fort Bliss and Pecos, Lack Necessary
        Qualifications and Provide Inadequate Care. ...............................................9

        5.   EIS Standards Are Inadequate to Protect Children's Mental Health. ..10

    B.   Especially Vulnerable Children Are Inappropriately Placed at EISs. ......11

    C.   EISs Lack Sufficient Case Management to Promptly Release Children or
    Identify Children for Transfer to Licensed Facilities. .....................................14

    D.   ORR is Detaining Hundreds of Children for Extended Periods in
    Unlicensed and Unregulated EISs Designed for Short-Term Use. ..................17

    E.   ORR is Not Fully Utilizing its Licensed Bed Capacity. ..........................18

III.  PROLONGED DETENTION OF CHILDREN AT EMERGENCY INTAKE
SITES VIOLATES THE SETTLEMENT. .........................................................19

    A.   ORR Fails to Place Children in Non-Secure, Licensed Facilities "as
    Expeditiously as Possible". ..............................................................................20

    B.   ORR Fails to Make "Prompt and Continuous" Efforts Toward the Release
    of Class Members "Without Unnecessary Delay". ..........................................22

    C.   EISs are Inconsistent with the Settlement's Requirement that Children be
    Held in Facilities that are Appropriate to their Age, Special Needs, and
    Particular Vulnerability. ...................................................................................23

    D.   Prolonged Detention at the Fort Bliss and Pecos EISs Causes Irreparable
    Harm to Children. .............................................................................................24

IV.   CONCLUSION .................................................................................................25

i

# TABLE OF AUTHORITIES

## Cases

*Adams v. Johns-Manville Corp.*, 876 F.2d 702 (9th Cir. 1989) ...............................20

*Dacanay v. Mendoza*, 573 F.2d 1075 (9th Cir. 1978) ...............................................20

*Flores v. Johnson*, 212 F. Supp. 3d 864 (C.D. Cal. 2015) ........................................20

*Flores v. Lynch*, 212 F. Supp. 3d 907 (C.D. Cal. 2015) ...........................................20

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ..........................20

Order re Pls.' Mot to Enforce Settlement of Class Action and Defs.' Mot. to Amend Settlement Agreement, July 24, 2015 [Doc. # 177] ...............................22

Order re Pls.' Mot. To Enforce Settlement as to "Title 42" Class Members, Sept. 4, 2020 [Doc. # 976]...............................................................................20, 21, 23, 24

Order re. Defs.' *Ex Parte* Application to Stay, Sept. 21, 2020 [Doc. # 990] .....20, 23

## Other Authorities

Camilo Montoya-Galvez, *Migrant children in U.S. tent camp faced depression and filthy conditions, whistleblowers say*, CBS NEWS (JULY 28, 2021), https://www.cbsnews.com/news/immigration-fort-bliss-migrant-children-whistleblower-complaint/ ...........................................................................................6

Government Accountability Project, *Second Protected Whistleblower Disclosures of Gross Mismanagement by the Department of Health and Human Services at Fort Bliss, Texas Causing Specific Dangers to Public Health and Safety*, July 28, 2021, https://whistleblower.org/wp-content/uploads/2021/07/072821-2nd-Fort-Bliss-Whistleblower-Disclosure-FINAL.pdf .......................................................2, 3

Julia Ainsley, *Whistleblowers allege poor care for migrant kids by contractor specializing in disaster cleanup*, NBC NEWS (July 7, 2021), https://www.nbcnews.com/politics/immigration/whistleblowers-allege-poor-care-migrant-kids-contractor-specializing-disaster-cleanup-n1273124 .........................6

*Long Beach Shelter For Migrant Children Closes After Reuniting 1,500 Children With Family Members, Sponsors*, CBS LOS ANGELES (July 23, 2021), https://losangeles.cbslocal.com/2021/07/23/long-beach-shelter-for-migrant-children-closes-after-reuniting-1500-children-with-family-members-sponsors/ ...5

Members of Congress Letter to HHS Secretary Becerra and Inspector General Grimm, August 4, 2021, https://escobar.house.gov/uploadedfiles/8.4.21_letter_to_hhs_oig_ftbliss_eis.pdf ..................................................................................................................................3

Office of Refugee Resettlement, *ORR Guide: Children Entering the United States Unaccompanied* § 1, https://www.acf.hhs.gov/orr/policy-guidance/children-entering-united-states-unaccompanied-section-1#1.2.2 ...............................19, 24

Office of Refugee Resettlement, *ORR Guide: Children Entering the United States Unaccompanied* § 2, https://www.acf.hhs.gov/orr/policy-guidance/children-entering-united-states-unaccompanied-section-2#2.2.1 ........................................18

Office of Refugee Resettlement, *ORR Guide: Children Entering the United States Unaccompanied* § 7, https://www.acf.hhs.gov/orr/policy-guidance/children-entering-united-states-unaccompanied-section-7 .................................1, 11, 14, 24

Office of Refugee Resettlement, Unaccompanied Children's Program Field Guidance (FG) Documents, https://acf.hhs.gov/orr/policy-guidance/uc-program-field-guidance ...............................................................................................11, 17

ORR Field Guidance #13, Emergency Intake Sites (EIS) Instructions and Standards, April 30, 2021, https://acf.hhs.gov/orr/policy-guidance/uc-program-field-guidance ...................................................................................passim

ORR Field Guidance #16, Clarification That the Individual Service Plan (ISP) and the UC Case Review Are Generally Not Required for Unaccompanied Children (UC) Placed at Emergency Intake Sites (EIS), May 18, 2021, https://acf.hhs.gov/orr/policy-guidance/uc-program-field-guidance.............passim

RAICES, *RAICES demands HHS Secretary Xavier Becerra, Democrats Shut Down Pecos*, August 6, 2021, https://www.raicestexas.org/2021/08/06/shut-down-pecos/ .......................................................................................................4

U.S. Dept. of Health & Human Servs., Admin. for Children & Families, Children's Bureau, *A National Look at the Use of Congregate Care in Child Welfare* (May 13, 2015), https://www.courts.ca.gov/documents/BTB_23_4N_4.pdf ...............24

iii

## I.  INTRODUCTION

Since March 2021, the Department of Health and Human Services' Office of Refugee Resettlement ("ORR") has detained thousands of unaccompanied children in unlicensed detention facilities dubbed "emergency intake sites" ("EIS").

ORR's use of EISs is unprecedented: During past unexpected "influxes," ORR detained children it could not accommodate in licensed facilities in "influx care facilities," which, although not licensed to care for dependent children, were at least nominally required to meet minimum child welfare standards.[1]

Importantly, ORR policy provided—and still provides—that particularly vulnerable children—*i.e.*, children under 13 years of age, pregnant or parenting teens, and children who do not speak English or Spanish as their "preferred language," among others—should not be detained in influx facilities but should rather be placed in licensed dependent care facilities.  *Id*. at § 7.2.1.[2]  ORR's influx facility standards implicitly recognize that the conditions and treatment children experience during federal custody must at least meet *some* binding standards when there is no space for them in a properly licensed, dependent care facility.

EISs, in contrast, need not meet even those minimum standards ORR has determined necessary during prior influxes.[3]  Rather, the agency has issued "guidance" positing EIS standards that are in crucial regards merely aspirational.

---

[1] *See* Office of Refugee Resettlement, *ORR Guide: Children Entering the United States Unaccompanied*, § 7 ("ORR Policy Guide"), https://www.acf.hhs.gov/orr/policy-guidance/children-entering-united-states-unaccompanied-section-7.

[2] When ORR becomes aware that a child detained in an influx facility should not be, its policy provides that it "will transfer the UAC to the least restrictive setting appropriate for the child's needs as expeditiously as possible." *Id*. at § 7.2.1.

[3] *See* ORR Field Guidance #13, Emergency Intake Sites (EIS) Instructions and Standards at 1, April 30, 2021 ("ORR Field Guidance #13"), https://acf.hhs.gov/orr/policy-guidance/uc-program-field-guidance ("EIS are not designed or intended to provide the full range of services available at traditional ORR care provider facilities or even Influx Care Facilities.").

*See, e.g., id*. at 3–4 ("*[T]o the extent practicable*, EIS *should seek to provide* the following services: Case management services for safe and timely release; A reasonable access to privacy, . . . Educational services; and Daily Recreational/Leisure time . . ." (emphasis added)); *id*. at 4 ("EIS facilities provide access to emergency health care.  Additional health services are *site specific* and *may* include a limited initial medical exam . . . ." (emphasis added)).

Predictably, several EISs, most notably the Fort Bliss and Pecos EISs, have become notorious for failing to provide vulnerable children even minimum safety, care, and conditions:

• On July 28, 2021, the Government Accountability Project filed a complaint on behalf of career federal civil servants detailed to the Fort Bliss EIS with first-hand knowledge of the conditions and treatment children experience there.[4]  According to the complaint, "Filth was commonplace.  According to one contractor: 'I've been into one [tent], one time, and I was like, yeah, I'm not going back there.  They're filthy.  They're dirty.  There's food on the floor.  There's wet spots all over the place.  The beds are dirty." *Id*. at 9.  "The Fort Bliss children did not and *could not trust that they were safe*, that their basic needs would be met, or that their sponsorship/placement cases were being timely processed. …  COVID was widespread among children and eventually spread to many employees.  *Hundreds of children contracted COVID in the overcrowded conditions*.  Adequate masks were not consistently provided to children, nor was their use consistently enforced.  Every effort was made to downplay the degree of COVID infection at the site, and the size of the outbreak was *deliberately kept under wraps*. …

---

[4] *See* Government Accountability Project, *Second Protected Whistleblower Disclosures of Gross Mismanagement by the Department of Health and Human Services at Fort Bliss, Texas Causing Specific Dangers to Public Health and Safety*, July 28, 2021, https://whistleblower.org/wp-content/uploads/2021/07/072821-2nd-Fort-Bliss-Whistleblower-Disclosure-FINAL.pdf.

1   Major depression and depressive episodes were commonplace among the
2   children." *Id*. at 7 (emphasis added).

3   •   On August 4, 2021, 33 members of Congress wrote "to express our immense
4       concern and horror at the whistleblower allegations that surfaced over the
5       weekend of sexual misconduct at the Fort Bliss Emergency Intake Site (EIS)
6       in El Paso, Texas.  Audio provided by whistleblowers appears to confirm
7       that adult staff at Ft. Bliss had been caught in sexually inappropriate
8       situations with minors in their care at least as recently as May 2021."[5]
9       "After numerous attempts calling for change over several months, the [Fort
10      Bliss] EIS remains *dangerously mismanaged*." *Id*. (emphasis added).

11  •   On August 6, 2021, the Refugee and Immigrant Center for Education and
12      Legal Services ("RAICES"), the ORR-contracted legal services provider for
13      children detained at the Pecos EIS, reported this about conditions children
14      are now experiencing at Pecos: "The legal teams at RAICES have served
15      tens of thousands of children in ORR care since 2012, but the reports we
16      have received from both attorneys and clients on the conditions at Pecos are
17      the worst we've ever observed. . . . Pecos holds almost 1500 unaccompanied
18      migrant children between the ages of thirteen and seventeen *and the facility*
19      *is expected to receive an influx of children as young as six years old* in the
20      upcoming days. . . . [O]ur legal team has witnessed disturbing conditions
21      that put the health and welfare of these children in harm's way including
22      food-related abdominal pain from *undercooked and spoiled food*, and
23      children being *kept in cage-like rooms* for most of the day.  In addition, we
24      have had clients who *have not received proper medical attention* after
25      breaking bones, and know of children who have *waited weeks in detention*

26
27   [5] Members of Congress Letter to HHS Secretary Becerra and Inspector General
28   Grimm, August 4, 2021,
     https://escobar.house.gov/uploadedfiles/8.4.21_letter_to_hhs_oig_ftbliss_eis.pdf.

*before they were able to speak to their attorney and sponsors*."[6]

Sadly, during interviews with Plaintiffs' counsel, children corroborated the foregoing accounts of deplorable conditions and treatment at the Pecos and Fort Bliss EISs.  Yet ORR has continued to detain children at Fort Bliss and Pecos despite having hundreds of beds available at licensed facilities, the Carrizo Springs influx facility, and even at far better EISs, including the Pomona EIS.

Plaintiffs appreciate that the current number of children in ORR custody may require the use of EISs for some months more given Defendants' myopic focus on building up the EIS system to the detriment of the licensed shelter system. Plaintiffs do not, at this time, ask that the Court order the immediate closure of EISs in light of the absence of adequate alternatives to care for the thousands of children currently placed in them.  But that does not excuse the agency's placing particularly vulnerable children at its worst EISs while licensed beds, influx beds, and even beds at better EISs, remain available.  There are many vulnerable children at Fort Bliss and Pecos the Court can and should protect now, and Defendants must be held accountable for ensuring that EISs do not, by default, supplant the Settlement's fundamental requirement that children be placed as expeditiously as possible in licensed dependent care programs.  *See* Exs. in Support of Motion to Enforce Settlement, February 3, 2015 [Doc. # 101], Ex. 1 ("FSA"), ¶¶ 1, 10.

Defendants have repeatedly sought to excuse their placement of particularly vulnerable children at Fort Bliss and Pecos EIS as resulting from staff shortages, a need for unfettered "flexibility" in placements and transfers, and, paradoxically, a desire to reserve licensed beds for particularly vulnerable children.  Yet as the Court is aware, even under influx conditions, the Settlement obliges ORR to place

---

[6] RAICES, *RAICES demands HHS Secretary Xavier Becerra, Democrats Shut Down Pecos*, August 6, 2021, https://www.raicestexas.org/2021/08/06/shut-down-pecos/ (emphasis added).

class members in state-licensed dependent care facilities "as expeditiously as possible… ."  FSA ¶ 12.A.3.  "Reserving" licensed beds for especially vulnerable children while consigning such children—some as young as six—to notoriously mismanaged EISs is both nonsensical and a clear violation of Settlement ¶ 12.A.3.

Settlement ¶ 12 requires ORR to "hold minors in facilities that are safe and sanitary and that are consistent with [its] concern for the particular vulnerability of minors."  But the Pecos and Fort Bliss EISs have not met even this standard and, given Defendants' refusal to prescribe mandatory standards for EISs, they are unlikely to do so without Court intervention.  The Court should accordingly issue an order requiring Defendants to issue mandatory EIS standards without further delay.

## II.    STATEMENT OF FACTS

### A. The Fort Bliss and Pecos EISs Are Inherently Unsafe and Inappropriate Placements for Children.

Since March 2021, in response to an insufficient number of licensed placements and an increased number of children seeking refuge in the United States, ORR has opened 14 EISs and currently operates four EISs.[7]  As of July 21, 2021, 4,578 children were detained in unlicensed EISs.[8]  Minimal standards and inadequate oversight at EISs has exposed thousands of children to unacceptable conditions that threaten their safety and well-being.  In particular, the Fort Bliss and Pecos EISs have exposed children to shockingly deplorable conditions.  *See, e.g.,* Ex. D, Declaration of Jonathan D. Ryan, ¶¶ 18–19, July 30, 2021 ("Ryan Dec."); Ex. H, Declaration of Hannah P. Flamm, ¶ 11, August 3, 2021 ("Flamm

---

[7] ORR Juvenile Coordinator Report at 3, July 23, 2021 [Doc. # 1148-1] ("July Juvenile Coordinator Report").  Plaintiffs understand that the Long Beach EIS is now closed.  *See Long Beach Shelter For Migrant Children Closes After Reuniting 1,500 Children With Family Members, Sponsors*, CBS LOS ANGELES (July 23, 2021), https://losangeles.cbslocal.com/2021/07/23/long-beach-shelter-for-migrant-children-closes-after-reuniting-1500-children-with-family-members-sponsors/.

[8] July Juvenile Coordinator Report at 3.

1   Dec.").

2         As noted above, ORR's Field Guidance pertaining to EISs contains little

3   more than aspirational standards, which are routinely disregarded at Fort Bliss and

4   Pecos regardless.  The guidance does not include any mechanism for independent

5   oversight of EISs.  This lack of mandatory standards combined with the lack of

6   oversight places children at grave risk.  Multiple volunteers at the Fort Bliss EIS,

7   for example, witnessed alarming and harmful conditions created by lax oversight

8   of inexperienced contractor and volunteer staff.  *See, e.g.,* Ex. E, Declaration of

9   Arthur Pearlstein, ¶¶ 5, 10–16, August 4, 2021 ("Pearlstein Dec."); Ex. F,

10  Declaration of Lauren E. Reinhold, ¶¶ 5, 10–17, August 4, 2021 ("Reinhold

11  Dec."); Ex. G, Declaration of Laurie Elkin, ¶¶ 5, 10, August 4, 2021 ("Elkin

12  Dec.").[9]  One volunteer—who was assigned to provide clinical assessments and

13  counseling to children despite having no relevant experience or training—reports

14  that he "was actively discouraged by management at Fort Bliss from reporting [his]

15  concerns" and that he "reported concerns to management on multiple occasions

16  and was either ignored or admonished each time."  Pearlstein Dec. ¶¶ 4–7; *see also*

17  Reinhold Dec. ¶¶ 6–7; Elkin Dec. ¶¶ 6–7.  Legal services providers also report a

18  lack of oversight and adherence to ORR standards at EIS facilities.  *See* Ryan Dec.

19  ¶ 33 (regarding Pecos EIS); Flamm Dec. ¶¶ 12, 29–33 (regarding Fort Bliss EIS).

20                    1.  <u>Children at the Fort Bliss and Pecos EISs Receive Wholly
21                        Inadequate Recreation and Education.</u>

22         In the absence of mandatory standards to the contrary, children at Fort Bliss

23  _____

24  [9] *See also* Julia Ainsley, *Whistleblowers allege poor care for migrant kids by
    contractor specializing in disaster cleanup*, NBC NEWS (July 7, 2021),
25  https://www.nbcnews.com/politics/immigration/whistleblowers-allege-poor-care-
    migrant-kids-contractor-specializing-disaster-cleanup-n1273124; Camilo Montoya-
26  Galvez, *Migrant children in U.S. tent camp faced depression and filthy conditions,
    whistleblowers say*, CBS NEWS (JULY 28, 2021),
27  https://www.cbsnews.com/news/immigration-fort-bliss-migrant-children-
    whistleblower-complaint/.
28

and Pecos spend most of the day on their cots or beds with little to no structured activity or recreation.  Ex. T, Declaration of J.F.A.A., ¶ 25, July 29, 2021 ("J.F.A.A. Dec.") (I felt anguished and hopeless . . . You spend the day in bed, surrounded by thousands of kids, with thousands of thoughts racing through your head."); Declaration of K.L.M., ¶ 16, June 4, 2021 [Doc. # 1136-5] ("K.L.M. Dec.") ("I spend most of my time here laying down in my bunk, and sometimes crying."); *see also* Ex. I, Declaration of O.V.P.C., ¶¶ 15, 18, July 30, 2021 ("O.V.P.C. Dec."); Ex. J, Declaration of K.M.A., ¶¶ 13–14, July 27, 2021 ("K.M.A. Dec."); Declaration of K.M.T., ¶ 25, April 28, 2021 [Doc. # 1136-11] ("K.M.T. Dec."); Ex. K, Declaration of B.U.A., ¶ 17, July 27, 2021 ("B.U.A. Dec."); Ex. L, Declaration of K.A.C.G., ¶¶ 20, 22, August 3, 2021 ("K.A.C.G. Dec.").

In the Pecos EIS, children have no religious services, few daily activities, and what little outdoor recreation they do have takes place in unshaded areas where temperatures sometimes reach over 110 degrees.  *See* Ryan Dec. ¶¶ 12, 26–30; K.M.A. Dec. ¶ 14.  RAICES, the ORR-contracted legal services provider at Pecos, reports that "the conditions at Pecos [are] among the harshest and most restrictive of any ORR or ICE facility that I have visited in my career."  Ryan Dec. ¶ 35.

Additionally, children at multiple EISs, including the Fort Bliss and Pecos EISs, routinely describe either limited access to education or no education services at all.  Ryan Dec. ¶ 26; K.M.A. Dec. ¶ 13; Ex. M, Declaration of W.V.V., ¶¶ 8, 17, July 28, 2021 ("W.V.V. Dec."); Declaration of F.P.P., ¶ 14, June 9, 2021 [Doc. # 1136-4] ("F.P.P. Dec."); B.U.A. Dec. ¶ 16; *see also* Ex. O, Declaration of M.S.R.L., ¶ 13, July 9, 2021 ("M.S.R.L. Dec.") (child held at the Pomona EIS). Dr. Ryan Matlow, a Stanford University child clinical psychologist who visited Fort Bliss with Plaintiffs, explains that without adequate activities and recreational opportunities, "many children experience extreme boredom, lethargy, low motivation, hopelessness, and helplessness, all of which are symptoms and

contributors to depression and psychological stress."  Ex. C, Declaration of Dr.
Ryan Matlow, at 4, July 12, 2021 ("Matlow Dec.").  "Without developmentally-
appropriate, goal-directed, and values-oriented activities to guide children's
activities and daily functioning, they began to languish in a state of increasing
sadness, inactivity, agitation, anxiety, and adjustment difficulty."  *Id.* at 5.[10]

Under ORR's current EIS standards, children are not even guaranteed
regular access to fresh air.[11]

### 2. Children at the Fort Bliss and Pecos EISs Live in Unsanitary Conditions and Lack Privacy.

The lack of standards and oversight at EISs also results in children living in
unsafe and unsanitary conditions.  Children held at the Fort Bliss EIS describe
sleeping in large areas with hundreds of other children where they have utterly no
privacy.  *See e.g.*, J.F.A.A. Dec. ¶¶ 21, 25; W.V.V. Dec. ¶ 7; Declaration of
E.A.M.R., ¶¶ 9–10, June 4, 2021 [Doc. #1136-6] ("E.A.M.R. Dec."); K.L.M. Dec.
¶¶ 9, 12; O.V.P.C. Dec. ¶ 21.  Children at the Pecos EIS report being required to
clean their own living spaces while not being provided with cleaning supplies.  *See*
Ryan Dec. ¶ 17; W.V.V. Dec. ¶ 21; Ex. N, Declaration of A.H.C., ¶ 10, July 27,

---

[10] Predictably, given ORR's lack of binding EIS standards, children detained in
other, now-shuttered EISs, including the Dallas and Houston EISs, were denied
outdoor recreation no matter how long they were detained at these facilities.  *See*
Declaration of D.L.M.E., ¶¶ 9, 11, 23, May 3, 2021 [Doc. # 1136-9] ("D.L.M.E.
Dec.") ("I was very happy to leave Houston because it had been 16 days since I had
seen outside – 16 days since I had seen the sky or the sun."); Declaration of
Y.A.A.V., ¶ 21, March 29, 2021 [Doc. # 1136-17] ("Y.A.A.V. Dec.").  Hundreds of
children spent 50 days or more confined in the Dallas EIS without access to the
outdoors.  *See* Declaration of Melissa Adamson in Support of Plaintiffs' Response
to ORR Juvenile Coordinator's June 4, 2021 Interim Report, June 11, 2021, Ex. 1 at
1 n.5 [Doc. # 1136-3]; Declaration of Leecia Welch ¶ 38, April 9, 2021 [Doc.
#1109-1].
[11] Under ORR standards, EISs "*should* seek to provide" "to the extent practicable"
"one hour of large muscle activity and one hour of structured leisure time
activities," but this is not a requirement and does not have to include access to the
outdoors.  *See* ORR Field Guidance #13 at 3-4 (emphasis added).

2021 ("A.H.C. Dec."). Children at the Fort Bliss and Pecos EISs also report lacking access to sufficient clean clothes and underwear. Ryan Dec. ¶¶ 19–20; Reinhold Dec. ¶ 15; W.V.V. Dec. ¶ 20; Ex. P, Excerpt of casefile of K.L.M. at NCYL_KL_0019 ("K.L.M. Excerpt") (child at Fort Bliss expresses needing clothes and shoes).[12]

> ### 3. Children's Health Has Been Jeopardized at the Fort Bliss and Pecos EISs Due to Undercooked, Insufficient, and Inedible Food.

Children at the Fort Bliss and Pecos EIS facilities also report experiencing hunger and being served raw chicken and other inedible food. Ryan Dec. ¶¶ 17–18; W.V.V. Dec. ¶ 15; Ex. Q, Declaration of A.F.H., ¶ 12, July 27, 2021 ("A.F.H. Dec."); B.U.A. Dec. ¶ 19; O.V.P.C. Dec. ¶ 20; E.A.M.R. Dec. ¶ 22; K.M.T. Dec. ¶ 16; Declaration of E.Y.O.G., ¶ 17, April 29, 2021, [Doc. # 1136-8] ("E.Y.O.G. Dec."). At the Pecos EIS, children have inadequate access to medical care for food-related illness and other ailments. *See* Ryan Dec. ¶ 17; A.F.H. Dec. ¶ 13; W.V.V. Dec. ¶ 18.

> ### 4. Staff at Some EISs, Including Fort Bliss and Pecos, Lack Necessary Qualifications and Provide Inadequate Care.

Defendants have entrusted the care of vulnerable children to staff at EISs who lack experience caring for children and in some cases cannot even communicate with the children they are supervising. Plaintiffs know of no ORR requirement that direct care staff at EISs have experience in caring for children or speak Spanish. *See* ORR Field Guidance #13; Ryan Dec. ¶¶ 21-22; Declaration of Y.F.A.G.G., ¶ 12, May 12, 2021 [Doc. # 1136-20] ("Y.F.A.G.G. Dec.") (tender age child at Starr Commonwealth EIS describes lack of Spanish-speaking staff). Federal detailees at Fort Bliss report that a contractor charged with direct care of

---

[12] At the Houston EIS, teenage girls were prevented from using the bathroom, unable to shower on a regular basis, and not provided with clean clothes or underwear. *See* D.L.M.E. Dec. ¶¶ 15–16; K.M.T. Dec. ¶¶ 14–15; Declaration of E.M.E.O., ¶¶ 12-14, May 3, 2021 [Doc. # 1136-10].

children in the tents is a fire and water damage repair company with no known experience or training in childcare.  *See e.g.*, Pearlstein Dec. ¶ 10; Reinhold Dec. ¶¶ 10–11; Elkin Dec. ¶ 10.

Unqualified EIS staff have proven unable to protect children from bullying or physical assault.  *See e.g.*, Ex. R, Declaration of A.R.R., ¶¶ 16–18, April 28, 2021 ("A.R.R. Dec."); Exhibit S, Declaration of A.G.L., ¶ 6, May 12, 2021 ("A.G.L. Dec."); Declaration of G.M.Z.S., ¶¶ 17–21, April 20, 2021 [Doc. # 1136-12] ("G.M.Z.S. Dec.");  Flamm Dec. ¶¶ 12, 23–24.  Girls at the Houston EIS felt unsafe because of reports of an attempted kidnapping and suffered other threats to their health and physical safety.  *See* D.L.M.E. Dec. ¶¶ 19–21; K.M.T. Dec. ¶¶ 18–20.

5. <u>EIS Standards Are Inadequate to Protect Children's Mental Health.</u>

Despite detaining children with serious mental health challenges, including suicidal ideation, EISs lack the standards and oversight necessary to meet children's mental health needs and keep them safe.  *See e.g.*, Matlow Dec. at 6–7 (noting that children at Fort Bliss "either have to proactively refer themselves, or else decompensate to the point of severe stress and risk in order to receive supports"); Flamm Dec. ¶¶ 12, 14; Ryan Dec. ¶¶ 16, 23; Reinhold Dec. ¶ 14; A.G.L. Dec. ¶ 8 ("Sometimes I cry at night.  I don't have anyone I can talk to.") (child held at Starr Commonwealth EIS); E.A.M.R. Dec. ¶¶ 13–17.  EISs are not required to provide regular counseling and instead are told they "should" have one mental health clinician per 50 children and are only required to provide "emergency clinical services".[13]  ORR has assigned volunteers without relevant training or professional experience to provide mental health services to children in extreme distress, including children experiencing suicidal thoughts.  *See* Pearlstein Dec. ¶¶ 4, 12–13.

---

[13] ORR Field Guidance #13 at 3, 5.

The prolonged periods of time children spend detained at EISs, particularly at the Fort Bliss and Pecos EISs, with no guidance as to when they will be released, little to no individual attention from adults, and insufficient structured activities and recreation causes many children to suffer significant mental distress. *See* A.F.H. Dec. ¶ 14 ("I have had about 3 or 4 anxiety attacks since I have been here."); *see also* K.L.M. Dec. ¶¶ 8, 14, 16, 27–29; O.V.P.C. Dec. ¶¶ 26–27; J.F.A.A. Dec. ¶ 25; E.A.M.R. Dec. ¶¶ 13–14; Flamm Dec. ¶¶ 11–14, 16–22; Pearlstein Dec. ¶ 13; Reinhold Dec. ¶¶ 14, 19.

### B. Especially Vulnerable Children Are Inappropriately Placed at EISs.

Despite the vast sums of money ORR has been spending on EISs over many months, it has not required any EIS to transition to meet even the basic standards required of unlicensed influx care facilities.[14]  Under ORR policy, influx care facilities must provide children with an individualized needs assessment, educational services in a structured classroom setting Monday through Friday, daily outdoor activity, structured leisure time activities, regular individual and group counseling, and a reasonable right to privacy.[15]  EISs, by contrast, are merely encouraged to "seek to provide" some of these services "to the extent practicable."[16]  Notably, EISs are generally not required to provide children with an Individual Service Plan (ISP) because "many of the individual services generally contemplated under an ISP may be unavailable to UC staying in EIS . . . ."[17]

---

[14] *See* ORR Field Guidance #13; *see also* Office of Refugee Resettlement, Unaccompanied Children's Program Field Guidance (FG) Documents ("Compiled ORR Field Guidance Documents") https://acf.hhs.gov/orr/policy-guidance/uc-program-field-guidance.

[15] *See* ORR Policy Guide § 7.5.1.

[16] ORR Field Guidance #13 at 2-4.

[17] ORR Field Guidance #16, Clarification That the Individual Service Plan (ISP) and the UC Case Review Are Generally Not Required for Unaccompanied Children

ORR regularly consigns tender age children, pregnant teens, children with heightened medical and mental health needs,[18] and children who do not speak English or Spanish as their preferred language to EISs, despite recognizing that even influx care facilities are inappropriate for these children.  *See e.g.*, Declaration of Melissa Adamson, ¶ 16, April 9, 2021, [Doc #1109-2]; Flamm Dec. ¶ 14; Declaration of K.E.V.V., ¶¶ 6–9, May 26, 2021 [Doc # 1136-21] ("K.E.V.V. Dec.") (pregnant teen); M.S.R.L. Dec. ¶¶ 2, 5 (tender age child); Y.F.A.G.G. Dec. ¶¶ 3, 5, 8–9 (tender age child); E.A.M.R. Dec. ¶¶ 13–17 (children at Fort Bliss on suicide watch); Ex. U, Excerpt of casefile of A.P.A. at NCYL_APA_0011 ("A.P.A. Excerpt") (child who primarily speaks Akateko with a length of stay (LOS) at the Fort Bliss EIS of 66 days).  In the month of June 2021, 554 tender age children were placed at EISs from Customs and Border Protection.  Ex. A, Declaration of Melissa Adamson, Ex. 1 Emergency Intake Site Data Summary at 5, August 6, 2021("Data Summary").  As of July 12, 2021, a total of 191 tender age children were held at five EISs.  *Id.* at 4.

EISs housing tender age children are merely encouraged to "[m]ake concerted efforts to ramp up services to meet minimum standards of an influx care

---

(UC) Placed at Emergency Intake Sites (EIS) at 1, May 18, 2021 ("ORR Field Guidance #16"), https://acf.hhs.gov/orr/policy-guidance/uc-program-field-guidance.

[18] While ORR's Field Guidance states that medically fragile children "are not eligible for EIS placement", Plaintiffs' counsel met with medically fragile children, some of whom have been detained at an EIS, hospitalized for medical treatment, and then returned to an EIS rather than to licensed placement.  *See e.g.*, Ex. V, Declaration of S.C.R., ¶¶ 6, 9-11, July 9, 2021 ("S.C.R. Dec.") (child held for nearly 30 days despite having spent 3 days in the hospital related to her diabetes; this child is Category 1 and awaiting release to her father); A.R.R. Dec. ¶¶ 2, 10, 12, 14, 16-19 (13-year old child placed at Fort Bliss despite reporting medical issues in Border Patrol custody, hospitalized with kidney stones, and then returned to Fort Bliss EIS, where he experienced bullying).

facility, *either in part or in whole, whenever practicable*."[19]  Disturbingly, ORR reportedly plans to house hundreds of tender age children as young as 6 years old at the Pecos EIS despite the harsh conditions at that remote facility.  *See* Ryan Dec. ¶¶ 11, 16–18, 26–28, 35; *see also* B.U.A. Dec. ¶ 14 ("I was told they are moving us around because they are making room for younger kids to arrive here.").  Pecos already houses children with special needs—including possible Autism Spectrum Disorder—and children who primarily or exclusively speak indigenous languages and the facility is unable to meet these children's needs.  *See* Ryan Dec. ¶¶ 21–25.

There is nothing to suggest the Pecos EIS could safely hold tender age children.  *Id*. at ¶¶ 12–35; *see also* B.U.A. Dec. ¶ 19; W.V.V. Dec. ¶¶ 18–21.  Particularly concerning is that "the great distance between Pecos and any major Texas city . . . contributes to delays of a week or longer in the release of children after their approval for reunification with family" and has "presented significant barriers to the provision . . . [of] legal services . . . [and] efforts to protect children from potential mistreatment, exploitation and trafficking."  Ryan Dec. ¶¶ 31-34.  "Pecos offers so few local resources to sustain the detention center's operations and is so difficult to reach that its remote location appears to be its most distinguishing characteristic."  *Id*. at ¶ 34.

As Dr. Matlow explains, large congregate care facilities "are entirely inappropriate" for "children with moderate to severe mental health difficulties, children with disabilities, children with significant family stress, tender age children, children who primarily speak indigenous languages, and children who are pregnant or parenting."  Matlow Dec. at 11; *see also id.* at 9 n.3 ("[Y]ounger

---

[19] ORR Field Guidance #13 at 2 (emphasis added).  And although the Pomona and Starr Commonwealth EISs do offer children substantially better living conditions than the Fort Bliss or Pecos EISs, ORR has made no apparent effort to elevate either EIS to influx care standards.  *See, e.g.,* M.S.R.L. Dec. ¶¶ 13, 15 (child at Pomona EIS reports having just one hour of class three times a week and lacking access to regular mental health services).

children are likely to be more profoundly impacted by the lack of developmentally appropriate activities and living environments, and are more susceptible to perceived threats (e.g., from older youth) in the absence of other protective supports."); Y.F.A.G.G. Dec. ¶¶ 3, 5, 8–9 (describing bullying of 5-year old brother at EIS).[20]

### C. EISs Lack Sufficient Case Management to Promptly Release Children or Identify Children for Transfer to Licensed Facilities.

Throughout the past five months and continuing to the present, children at EISs have received inconsistent and often chaotic case management.  This virtually guarantees that children will "fall through the cracks" and be detained for extended periods in makeshift facilities even as other children are promptly released.

Children report having spent weeks in limbo before being assigned a case manager.[21]  *See* Declaration of A.S.B.A., ¶¶ 6–7, June 8, 2021 [Doc. #1136-14] ("A.S.B.A. Dec.") (waited approximately one month to meet with case manager about release to her mother); F.P.P. Dec. ¶ 7–8 ("I have not spoken to a case manager the entire time that I have been here. … I have been here for a long time – it's been 62 days now."); Ex. X, Excerpt of casefile of M.E.B.C. at NCYL_MEBC_0008 ("M.E.B.C. Excerpt") ("[T]here does not appear to have been any contact with sponsor even though she has been here over a month");

---

[20] Notably, these categories of children are generally ineligible for placement in unlicensed influx care facilities despite the higher standards in those facilities. *Compare* ORR Field Guidance #13, *with* ORR Policy Guide § 7.2.1.  ORR states that it "endeavors to follow placement criteria required of Influx Care Facilities" "[t]o the extent feasible," but does not commit to doing so.  *See* ORR Field Guidance #13 at 1-2.

[21] Case management services are not required when an EIS opens, or by any time certain after an EIS has received children.  Instead, ORR advises that case management services "*should*" be provided "as soon as possible and to the extent practicable." ORR Field Guidance #13 at 3.  Should a new EIS open in the future, there is no requirement it provide case management services by any date certain and no guarantee children will actually be assigned a case manager in a timely fashion.

1   A.P.A. Excerpt at NCYL_APA_0011 (child admitted to Fort Bliss EIS on 4/1/21

2   and did not have initial intake interview until over a month later on 5/4/21); Ex. W,

3   Excerpt of casefile of W.P.L. at NCYL_WPL_0021, NCYL_WPL_0027 ("W.P.L.

4   Excerpt") (child admitted to EIS on 4/12/21 and not assigned a case manager to

5   begin reunification process until a month later, on 5/12/21).

6       Children, particularly those held at Fort Bliss and Pecos EISs, continue to

7   report long delays in case management, frequent case manager turnover, and a lack

8   of clear or timely information about when or if they will be reunified with family.

9   *See* Ryan Dec. ¶¶ 13–14, 32; A.H.C. Dec. ¶¶ 3, 5–8 (15-year old child detained at

10  Pecos EIS for 65 days did not meet with a case manager for the first month he was

11  detained and has not met with his case manager in the last month); A.F.H. Dec. ¶¶

12  4, 7 (child detained at Pecos EIS for nearly 50 days still awaiting reunification after

13  switching case managers three times); E.A.M.R. Dec. ¶¶ 8, 28 (four different

14  people in charge of her case management over nearly 60 days of detention); *see*

15  *also* Ex. Y, Declaration of O.A.R.H., ¶¶ 12, 15, June 17, 2021 ("O.A.R.H. Dec.")

16  (child held at Delphi EIS reported having three different case managers during the

17  73 days he was detained).

18      Case management services at the Fort Bliss and Pecos EISs appear

19  especially inconsistent, with children at the same facility reporting vastly different

20  case management experiences.  *See e.g.*, Ryan Dec. ¶ 15; B.U.A. Dec. ¶¶ 4, 12;

21  F.P.P. Dec. ¶¶ 6–9; K.M.A. Dec. ¶¶ 7–9.  A federal detailee at the Fort Bliss EIS

22  reports that "it was routine for children to get lost in the case management system"

23  and children had no means to contact case managers to ensure progress on their

24  cases.  Pearlstein Dec. ¶ 14; *see also* Reinhold Dec. ¶¶ 18–21; Elkin Dec. ¶¶ 11–

25  12.  Some children were even told they were going home only to be pulled off

26  airplanes before being informed that a mistake had been made, they would not be

27  released, and they had to return to the EIS.  Pearlstein Dec. ¶ 16.

28      Children at the Fort Bliss and Pecos EISs often describe feeling desperate

because they do not know why they are at an EIS and are not given information about when they can leave or what the process is to ensure release.  *See* Matlow Dec. at 5–6, 8; *see also* Ryan Dec. ¶ 16; Pearlstein Dec. ¶¶ 13–15; A.H.C. Dec. ¶ 14 ("Every day, I wake up and feel very sad.  I am frustrated because I see other kids leave before me."); F.P.P. Dec. ¶¶ 8–9; K.L.M. Dec. ¶ 8; K.L.M. Excerpt at NCYL_KL_0017–19 (child at Fort Bliss for 71 days, admitted on 4/6/21, did not receive intake interview until 5/5/21, and reported stress, sadness, and panic attacks).  This desperation and sense of hopelessness about their cases has led some children to engage in self-harm or attempt to run away from EISs.  *See e.g.*, Matlow Dec. at 6; Flamm Dec. ¶¶ 11-14, 16–22; O.V.P.C. Dec. ¶¶ 26–27 ("All I could think about was getting to my aunt, when they would give me a worker. They called other people giving them a worker but they never called my name. Then I got more desperate."); J.F.A.A. Dec. ¶¶ 13, 25, 28 ("I felt anguished and hopeless. I was held hostage and I couldn't do anything about it.").

In addition to delaying release, a lack of consistent case management means case managers cannot timely identify whether a child is likely to have an extended length of stay (e.g., require a home study) and should therefore be prioritized for transfer to a licensed facility.  *See e.g.*, W.V.V. Dec. ¶¶ 10–14 (child has been detained at EISs for nearly 3 months and is only now being considered for licensed placement); A.S.B.A. Dec. ¶¶ 4, 7 (child detained at Pecos EIS for two months, did not speak to a case manager for one month, and, only after that meeting, was told a home study would be needed); O.A.R.H. Dec. ¶¶ 12, 16 (children detained at Delphi EIS for over 70 days recently informed of need for home study and unable to talk to anyone about their case); Ex. Z, Declaration of M.E.D.C.L., ¶¶ 5, 7, June 24, 2021 ("M.E.D.C.L. Dec.") (child detained at San Diego EIS for 50 days and may be transferred because "they still need to do a home study of the apartment…"); Ex. AA, Excerpt of casefile of M.E.L.A. at NCYL_MELA_0014, NCYL_MELA_0017–18 ("M.E.L.A. Excerpt") (child detained at Pecos EIS for 84

days, admitted 4/8/21 but Category 3 sponsor did not receive fingerprinting

appointment until 6/4/21 and was then required to undergo additional vetting).

### D. ORR is Detaining Hundreds of Children for Extended Periods in Unlicensed and Unregulated EISs Designed for Short-Term Use.

ORR guidance makes clear that "EIS are short-term, stop-gap facilities, and

not designed for the long-term care of children . . . ."[22]  EIS facilities were

supposed to remain open "for a limited period of time (generally under 6 months),"

and were not "intended to provide the full range of services available at traditional

ORR care provider facilities or even Influx Care Facilities."[23]  ORR's minimal EIS

standards and services assume children will remain in EISs briefly and the

facilities themselves will be temporary.

Yet ORR has now been operating EISs for nearly five months—with no end

in sight—and thousands of children have been subjected to prolonged detention in

these unregulated facilities.[24]  As of July 21, 2021, 717 children were detained in

EIS facilities for over 20 days, including 63 children with a length of stay over 40

days.[25]  At Pecos EIS, as of July 23, 2021, 380 children had been held for 20 days

or more, including 65 children who had been held for 40 or more days and 10

children who had been held 60 days or longer.  Data Summary at 3.

ORR nowhere limits the length of time a child can be detained at an EIS or

provides any specific instructions on when a child must be transferred from an EIS

to a licensed facility.[26]  As a result, some children languish in EISs for weeks or

months on end when they can and should be in a licensed placement.  Despite

---

[22] ORR Field Guidance #16 at 2.

[23] ORR Field Guidance #13 at 1; *see also* ORR Field Guidance #16 at 1.

[24] *See, e.g.,* ORR Juvenile Coordinator Report, at 7, June 4, 2021 [Doc. # 1124-2] ("June Juvenile Coordinator Report").

[25] July Juvenile Coordinator Report at 8.

[26] *See* ORR Field Guidance #13; *see also* Compiled ORR Field Guidance Documents.  ORR's Field Guidance also expressly allows children to be transferred between EISs.  *See* ORR Field Guidance #13 at 1.

months of discussions and multiple requests to Defendants, Plaintiffs are aware of

no additional ORR policies explaining which children are transferred from EISs to

licensed placements or when such transfers occur.[27]  Nor does ORR appear to have

any policy or early screening procedure to prevent EIS placement for children

likely to have extended release processes because of their sponsor category.[28]

### E. ORR is Not Fully Utilizing its Licensed Bed Capacity.

As of July 21, 2021, ORR had over 1,400 unoccupied shelter and transitional

foster care placements, including 933 shelter beds and 488 transitional foster care

beds.[29]  A full 31 percent of transitional foster care beds and 43 percent of long

term foster care beds are empty.[30]  Although ORR states that some of these foster

care beds are reserved for specific demographics such as parenting teens, tender

age children, or children with special needs, *children in these same demographics*

---

[27] *See e.g.,* Ex. B, Meet and Confer correspondence between the parties.  Although
ORR guidance states that it endeavors to follow influx care placement standards
when feasible, ORR Field Guidance #13 at 1, in practice ORR places and maintains
particularly vulnerable children in EISs. *See supra* Section II.B.

[28] ORR's lack of policy in this area is particularly concerning given that children
who have Category 2B or 3 sponsors and children who are Category 4 (meaning no
sponsor has been identified) have much longer average lengths of stay at EISs than
children with Category 1 or 2A sponsors.  *See* ORR Policy Guide § 2.2.1
(describing sponsor categories), https://www.acf.hhs.gov/orr/policy-
guidance/children-entering-united-states-unaccompanied-section-2#2.2.1.  For
example, of the children released from the Pecos EIS to sponsors, Category 1
children were released, on average, in less than 20 days and Category 2A children
were released in an average of 22.9 days, while Category 2B children spent an
average of 33 days at the Pecos EIS, Category 3 children spent an average of 39.4
days at the Pecos EIS, and Category 4 children spent an average of 44 days at the
Pecos EIS.  Data Summary at 3.  These longer lengths of stay are predictable
because Category 2B and 3 sponsors are required to undergo fingerprinting and
Category 4 children have no identified sponsor.  *See* ORR Policy Guide §§ 2.2.1,
2.5.1.  Despite knowing this, ORR still has no policy to avoid EIS placement for
Category 2B, 3 or 4 children.
[29] July Juvenile Coordinator Report at 3.
[30] *Id.*

*are currently languishing in EISs, some for longer than 20 days.*[31]  *See e.g.*, Data Summary at 4; Y.F.A.G.G. Dec. ¶¶ 3, 5, 8–9; M.S.R.L. Dec. ¶¶ 2, 5.  Pregnant teenagers have also been placed at EISs for prolonged periods despite nominally having priority for transitional foster care placements under ORR Policy.[32]  *See* K.E.V.V. Dec. ¶¶ 6–9.  ORR has yet to offer any coherent explanation for under-utilizing licensed beds.[33]

### III.  PROLONGED DETENTION OF CHILDREN AT EMERGENCY INTAKE SITES VIOLATES THE SETTLEMENT.

Defendants' current practices related to EIS facilities violate the Settlement's requirements that children be placed in licensed facilities "as expeditiously as possible," FSA ¶ 12.A, that Defendants "make and record the prompt and continuous efforts" to release class members "without unnecessary delay," FSA ¶¶ 18, 14, and that Defendants "place each detained minor in the least restrictive setting appropriate to the minor's age and special needs . . . in facilities that are safe and sanitary and that are consistent with [Defendants'] concern for the *particular vulnerability of minors*."  FSA ¶¶ 11–12.A (emphasis added).

A "motion to enforce [a] settlement agreement essentially is an action to

---

[31] July Juvenile Coordinator Report at 3-4.

[32] ORR Policy Guide § 1.2.2 (describing placement priority for children with special needs), https://www.acf.hhs.gov/orr/policy-guidance/children-entering-united-states-unaccompanied-section-1#1.2.2.

[33] Remarkably, the Juvenile Coordinator reports that ORR's own policies are contributing to staffing shortages at licensed facilities because "staff are viewing positions at EIS facilities more favorably due to higher wage incentives . . . ."  The obvious answer—increasing wages or offering time-limited bonuses at licensed facilities—would open more licensed beds for vulnerable children, reduce the number of such children at EISs, and, a fortiori, the number of staff required at such facilities, and vastly improve the conditions and treatment such children experience during immigration-related detention.  To the extent that ORR feels it must reserve some licensed beds for priority transfers, it is unclear why over 900 shelter beds must remain open for such occurrences, especially given that EISs are currently housing especially vulnerable children who should be receiving priority for licensed placement.  July Juvenile Coordinator Report at 3.

specifically enforce a contract." *Adams v. Johns-Manville Corp.*, 876 F.2d 702, 709 (9th Cir. 1989). This Court has repeatedly affirmed its jurisdiction to enforce the Settlement and set out the principles for doing so. *See, e.g.*, *Flores v. Johnson*, 212 F. Supp. 3d 864, 869–70 (C.D. Cal. 2015) (citing FSA ¶ 37; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380–81 (1994); *Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978)).

### A. ORR Fails to Place Children in Non-Secure, Licensed Facilities "as Expeditiously as Possible".

The Settlement requires that a child be placed in "a 'licensed program' within three days of their arrest—or, in the case of an 'emergency or influx,' 'as expeditiously as possible.'" Order re Pls.' Mot. To Enforce Settlement as to "Title 42" Class Members at 12, Sept. 4, 2020 [Doc. # 976]) ("Sept. 4, 2020 Order") (citing FSA at ¶¶ 12, 19).[34] The "Court has previously relaxed the three-day transfer requirement when Defendants acted 'in good faith and in the exercise of due diligence' to expeditiously transfer minors to licensed programs." *Id.* (quoting *Flores v. Lynch*, 212 F. Supp. 3d 907, 914 (C.D. Cal. 2015)); *see Flores v. Lynch*, 212 F. Supp. 3d at 914 (noting that 20 days "may fall within the parameters of Paragraph 12A" if it "is as fast as Defendants, in good faith and in the exercise of due diligence, can possibly go in screening family members . . . .").

Here, Defendants are not making diligent and good faith efforts to expeditiously transfer particularly vulnerable children, at the very least, from EISs to licensed programs.[35] Defendants have failed to issue any policy or guidance to

[34] Defendants are also required to "have a written plan that describes the reasonable efforts that [they] will take to place all minors as expeditiously as possible" in the event of an emergency or influx. FSA ¶ 12C.

[35] As for class members generally, it seems almost random which children are afforded licensed placement, and which are placed in EISs. "The *Flores* Agreement does not sanction such arbitrary discrimination between its Class Members." Order re. Defs.' *Ex Parte* Application to Stay at 4, Sept. 21, 2020 [Doc. # 990] ("Sept. 21, 2020 Order"). Moreover, while Defendants have made some

require licensed placement for particularly vulnerable children or for those children who will, because of the category of their sponsor, necessarily have longer lengths of stay in ORR custody.  Additionally, there is no maximum length of stay in an EIS[36] and Defendants appear to lack *any* specific policy to prevent children from languishing in EISs for prolonged periods.

Notably, particularly vulnerable children are spending weeks at EISs even though licensed placements are available within ORR's network.  As of July 21, 2021, ORR had over 1400 available but unused transitional foster care and shelter beds.[37]  The 933 empty shelter beds alone could accommodate the approximately 700 children detained in EISs for over 20 days as well as the 75 tender age children detained in EISs, as of July 21, 2021, even with a small reserve of beds for emergency transfers.[38]  *See* Sept. 4, 2020 Order at 13 (noting that ORR had sufficient licensed bed capacity to accommodate children detained in hotels).  To the extent there are medical obstacles to filling these beds, Plaintiffs are aware of no coherent process to medically clear children in EISs so that they can be expeditiously placed in licensed facilities.

Rather than serving "as a temporary stopgap in the process of cautiously sending children to licensed facilities with all deliberate speed", EISs have "*fully replaced* licensed programs for" thousands of children in Defendants' custody in violation of the Settlement.  *See* Sept. 4, 2020 Order at 12.  "The purpose of the [Settlement's] licensing provision is to provide class members the essential protection of regular and comprehensive oversight by an independent child welfare

---

progress in reducing the average length of stay for children released from EISs, some children continue to have extremely long lengths of stay.

[36] As of July 23, 2021, there was one child who had been held at Pecos EIS for 78 days.  Data Summary at 3. Children have been held for over 80 days. *See id.* at 2 (child held at Pecos EIS for 86 days); M.E.L.A. Excerpt at NCYL_MELA_0014 (length of stay at Pecos EIS of 84 days).

[37] July Juvenile Coordinator Report at 3.

[38] July Juvenile Coordinator Report at 3, 5.

agency."  Order re Pls.' Mot to Enforce Settlement of Class Action and Defs.' Mot. to Amend Settlement Agreement at 14, July 24, 2015 [Doc. # 177] ("July 24, 2015 Order").  The longer children, especially those who are particularly vulnerable, spend in unlicensed, unregulated facilities without independent oversight or guarantees of suitable living conditions and appropriate recreation, education, mental health services, and other basic protections, the greater the risk of harm. *See* Matlow Dec. at 6; Ryan Dec. ¶ 16; Pearlstein Dec. ¶¶ 13–15; Reinhold Dec. ¶¶ 14–20; *see also* FSA Exhibit 1 (listing minimum standards for licensed programs).

### B. ORR Fails to Make "Prompt and Continuous" Efforts Toward the Release of Class Members "Without Unnecessary Delay".

To the extent Defendants are attempting to transfer children to licensed facilities when they cannot be promptly released from an EIS, inadequate case management poses an obstacle to timely identifying which children should be transferred.  As soon as a child enters their custody, Defendants must "make and record the prompt and continuous efforts on [their] part toward family reunification and the release of the minor."  FSA ¶ 18.  Defendants must also release minors "without unnecessary delay."  FSA ¶ 14.  The lack of prompt and continuous efforts toward family reunification in EISs, including some children not being assigned a case manager for weeks after entry into an EIS, and other children experiencing long interruptions in case management and inadequate documentation of reunification efforts, have led to substantial delays in release, in violation of Paragraphs 14 and 18 of the Settlement.  *See supra* Section II.C.  These delays are not justified by a need to ensure the child's safety or that of others, as no sponsor vetting occurred during these gaps in case management.  *See, e.g.*, A.H.C. Dec. ¶¶ 6–8; A.S.B.A. Dec. ¶¶ 6–7; F.P.P. Dec. ¶ 7; W.P.L. Excerpt at NCYL_WPL_0021, 0027; M.E.B.C. Excerpt at NCYL_MEBC_0008.

1

2

**C. EISs are Inconsistent with the Settlement's Requirement that
Children be Held in Facilities that are Appropriate to their Age,
Special Needs, and Particular Vulnerability.**

3

4

5

6

7

8

9

10

11

12

Even when licensed placements are unavailable, the Settlement requires
Defendants to "hold minors in facilities that are safe and sanitary and that are
consistent with [Defendant's] concern for the particular vulnerability of minors."
FSA ¶ 12A; *see also* FSA ¶ 11; Sept. 21, 2020 Order at 2 (facilities must be
"appropriate to minors' ages and special needs, and concerned for their particular
vulnerability as minors."); Sept. 4, 2020 Order at 14 n.9 ("While the words 'system
of care' do not appear in the Flores Agreement, the phrase has similar connotations
to concepts that are in the Agreement, such as 'setting appropriate to the minor's
age and special needs,' 'special concern for their particular vulnerability as
minors,' and 'safe.' FSA at ¶¶ 11–12.A.").

13

14

15

16

17

18

19

20

21

22

23

ORR's own guidance makes clear that EISs are designed for short-term use
only and cannot meet children's individualized needs.[39]  *See supra* Section II.D.
EISs also lack the mandatory standards and oversight required to keep children
safe.  *See supra* Section II; *see also* FSA ¶ 12.A (requiring Defendants provide
"adequate supervision to protect minors from others"); Sept. 4, 2020 Order at 14
(noting concerns with a "lack of qualified, specialized supervision, especially for
younger, unaccompanied children" and explaining that a "list of amenities is not a
system of care for children of different ages and developmental stages.");
Pearlstein Dec. ¶¶ 4–9.  As children's length of stay stretches into weeks,
Defendants cannot "ensure that the safety and well-being of the minors detained in
these facilities are satisfactorily provided for by the staff."  FSA ¶ 12.A.

24

25

26

27

EISs are not suitable facilities for any child but are particularly inappropriate
for children with special vulnerabilities, even for short stays.  *See* Matlow Dec. at
11.  Tender age children, for example, require a higher level of care and

28

---

[39] ORR Field Guidance #13 at 1; ORR Field Guidance #16 at 1.

MTE Re EMERGENCY INTAKE SITES
CV 85-4544-DMG-AGRX

individualized attention.  *See* Matlow Declaration at 9 n.3, 11; *see also* Sept. 4, 2020 Order at 14 (noting "the significant developmental differences and 'particular vulnerability' of younger children.").  The HHS Administration for Children and Families has explained that "[f]or young children, particularly those age 12 and under, it is particularly important for their developmental needs to be met in family-like settings."[40]  Recognizing this reality, ORR policy prioritizes tender age children for transitional foster care placement and generally limits placement in unlicensed influx care facilities to children over 12.[41]  Nonetheless, in violation of the Settlement, ORR continues to place tender age children and other particularly vulnerable children in EIS facilities that are not "appropriate to the minor's age and special needs."  FSA ¶ 11; *see supra* Section II.B; *see also* K.E.V.V. Dec. ¶¶ 6–9; M.S.R.L. Dec. ¶¶ 2, 5; Y.F.A.G.G. Dec. ¶¶ 3, 5, 8–9; E.A.M.R. Dec. ¶¶ 13–17; Ryan Dec. ¶¶ 11, 21–25; Flamm Dec. ¶ 14.  It is especially alarming that hundreds of tender age children may soon be placed at the Pecos EIS, given the remoteness and serious deficiencies plaguing that facility.  *See* Ryan Dec. ¶¶ 11–13, 35.

### D. Prolonged Detention at the Fort Bliss and Pecos EISs Causes Irreparable Harm to Children.

Holding particularly vulnerable children for weeks or months in facilities that ORR itself acknowledges are unsuitable for them, while far better beds remain empty, places such children in danger of serious harm.[42]  After interviewing children at the Fort Bliss EIS, Dr. Matlow concluded that "large-scale congregate care facilities such as Fort Bliss are inappropriate for housing unaccompanied immigrant children for extended periods of time (i.e., beyond a few days or 1-2 weeks), due to the risk of causing clinically significant psychological harm."

---

[40] U.S. Dept. of Health & Human Servs., Admin. for Children & Families, Children's Bureau, *A National Look at the Use of Congregate Care in Child Welfare*, at III (May 13, 2015), https://www.courts.ca.gov/documents/BTB_23_4N_4.pdf.
[41] ORR Policy Guide §§ 1.2.2, 7.2.1.
[42] *See, e.g.,* ORR Field Guidance #13 at 1; ORR Field Guidance #16 at 1.

Matlow Dec. at 11; *see also id.* at 6 ("As children spend more time in the restrictive environment at Fort Bliss (in which they have limited freedom of movement, limited access to resources, and limited opportunities for recreation and agency, among other restrictions), they are likely to become increasingly hopeless, helpless, and despondent."); Ryan Dec. ¶ 16 ("By my direct observation, children who have remained at [the Pecos EIS] for more than a few days, including those whom I represent, demonstrate increasing frustration, confusion and a worsening appearance of wellness that deteriorates over time."); K.L.M. Dec. ¶ 34 ("I used to be able to cope with my anxiety and breathe through it, but now I feel like I've given up.  I feel like I'll never get out of here."); J.F.A.A. Dec. ¶ 25 ("I knew this detention would happen, but I never imagined it would be like this.  It was terrible. I felt anguished and hopeless."); A.H.C. Dec. ¶ 14 ("Every day, I wake up and feel very sad . . . ."); F.P.P. Dec. ¶ 9 ("Every day, I want to cry . . . There are some other kids who have been here for about the same time as me, and there is just a lot of sadness among us.").

## IV.   CONCLUSION

The Settlement requires Defendants, even in times of "influx," to place children in licensed facilities "as expeditiously as possible," to release children without unnecessary delay, and to, at all times, place children in facilities that are safe and sanitary, appropriate for their age and special needs, and concerned with their particular vulnerability.

For the foregoing reasons, Plaintiffs respectfully request the Court grant this motion and issue Plaintiffs' proposed order.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: August 9, 2021

CENTER FOR HUMAN RIGHTS AND
CONSTITUTIONAL LAW
Carlos R. Holguín

NATIONAL CENTER FOR YOUTH LAW
Leecia Welch
Neha Desai
Melissa Adamson
Mishan Wroe
Diane de Gramont


 */s/ Leecia Welch*
Leecia Welch
*One of the Attorneys for Plaintiffs*