# EXHIBIT H

### DECLARATION OF HANNAH P. FLAMM

I, Hannah P. Flamm, declare as follows:

1.      I am a resident of the State of New York and I am over the age of 18. I am an attorney licensed to practice law in the State of New York.

2.      I execute this declaration based on my personal knowledge, except as to those matters based on information and belief, which I believe to be true. If called to testify in this case, I would testify competently about the following facts.

Experience Serving Youth in ORR Custody

3.      Since October of 2017, I have been an attorney at The Door's Legal Services Center ("The Door"), a legal service provider that works primarily with immigrant youth. Since December 2019, I have been the Managing Attorney of The Door's Legal Services Center's Detained Minors Project.

4.      Since December 2019, The Door has served unaccompanied children in the legal custody of the Office of Refugee Resettlement ("ORR") who have been placed by ORR at The Children's Village in New York, a program within the ORR network of care providers, among other programs. Over the last 20 months, The Door has served approximately 2,000 youth in ORR custody. Although the majority of these youth come from Mexico, Honduras, Guatemala, and El Salvador, youth placed at these facilities may come from all over the world.

5.      As the legal service provider for The Children's Village, The Door's attorneys and staff maintain regular contact with the youth at the facilities. We provide ongoing consultations and presentations concerning the legal rights of detained youth. We also provide direct legal representation to youth who request it.

The Children's Village

6.      The Children's Village is responsible for the care and custody of unaccompanied immigrant youth between the ages of 12 and 17. It is my understanding that The

---

Children's Village is licensed to provide shelter-level care for up to 157 youth. The Children's Village also operates a staff secure facility with, upon information and belief, the capacity to detain up to 28 youth. The current population of the shelter program is approximately 112 youth. The current population of the staff secure facility is approximately 5 youth. The current population of the therapeutic group home, with capacity for 12 youth, is 4.

7.     Compared to shelter programs, staff secure facilities have more staff per youth, greater restrictions on youth's privacy and liberty, and harsher disciplinary policies. In my experience, staff at The Children's Village also use excessive force with youth in the staff secure facility more frequently than in the shelter placement.

8.     To be transferred to a staff secure placement, ORR must justify the more restrictive placement by identifying relevant, applicable criteria such as whether the transfer is "necessary to ensure the welfare of the UAC or others" or whether the youth "is an escape risk" or "has reported gang involvement or displays gang affiliation." *See* Section 1.2.4 of the ORR Guide.

9.     Typically, youth are transferred to The Children's Village staff secure facility after weeks or months in other placements within ORR custody or, for internal apprehensions, often after contact with law enforcement. For youth apprehended at the border, it is rare that a youth would not have been in multiple placements or a secure facility prior to being placed at The Children's Village staff secure facility.

10.    The Children's Village consists of a campus that includes approximately 32 residential buildings and 14 administrative buildings, including a school, medical facility, administrative office, chapel, and daycare. This campus serves both youth in ORR custody and "domestic" youth who are in the legal custody of the state of New York.

Step-ups from Fort Bliss Emergency Intake Site

11.    In May and June 2021, The Children's Village's staff secure facility received nine youth who were stepped up directly from the Fort Bliss Emergency Intake Site ("Fort Bliss"). In my interviews and interactions with our clients stepped up directly from Fort

Bliss to staff secure, and consistent with my colleagues' interviews and interactions, many youth described feeling extreme desperation at Fort Bliss because of the lack of information and progress on their cases and because of the inhumane conditions in which they were detained in a tent with about 1,000 other youth. Youth stepped up from Fort Bliss describe a high level of awareness that no case manager was working on their cases to move them any closer to release from custody. They describe a degrading lack of privacy and the failure of staff to intervene to ensure their safety, intolerable heat, no meaningful education, observation of illness and injury among other youth, and inedible food.

12.    I have personally reviewed the complete ORR case files, as produced by ORR, of each of these nine youth and find that the step-ups from Fort Bliss to The Children's Village staff secure facility have most commonly been tied to clients' behavior resulting from either (1) the conditions at Fort Bliss, including the heat, overcrowding, inedible food, and lack of privacy or (2) the evident lack of case management leading some clients to attempt to escape Fort Bliss or to harm themselves out of desperation and hopelessness. A third category of step-ups appears to be linked to the inadequate staffing and safety at Fort Bliss. Specifically, several clients were stepped up from Fort Bliss based on misconstrued or unfounded allegations of violence or gang activity, sometimes resulting from clients' need to act in self-defense after staff failed to ensure a safe environment.

13.    Four of our clients, A.C.C., J.A.A., J.B.H., and O.V.P.C., were stepped up to The Children's Village staff secure facility after attempting to escape from Fort Bliss. However, according to their case files, which I have personally reviewed, none of these youth presented any flight risk or other concerns while at The Children's Village. I believe their behavior at Fort Bliss (i.e., their attempt to run away) was a function of the conditions and desperation they felt there.

14.    Two clients stepped up to The Children's Village staff secure facility, C.A.R.G. and E.M.B., evinced a desire or attempt to harm themselves at Fort Bliss (and one for

purported "defiant" behavior). C.A.R.G. was detained at Fort Bliss for approximately 12 days despite having an extensive trauma and mental health history preceding his detention at Fort Bliss. He was diagnosed at The Children's Village with significant mental health conditions. E.M.B., however, had no history of self-harm prior to his detention at Fort Bliss and evinced no mental health or behavioral concerns at The Children's Village following his transfer out of Fort Bliss. This pattern reinforces my view that E.M.B.'s desire to harm himself at Fort Bliss resulted from the degrading conditions and his sense of hopelessness about being there.

15. Finally, three clients, N.M.M., M.L.M., and K.A.C.G., were stepped up for purported violence or gang activity (and one for purported "unrespectful behavior toward program's clinician"). However, their ORR records corroborate that any act of alleged violence was in fact an act of self-defense in circumstances where Fort Bliss staff apparently failed to ensure youth were safe. The ORR records also corroborate that any alleged gang activity was wholly unfounded, lacking any Significant Incident Reports or even an informal notation by Fort Bliss staff describing any event, statement, or other basis for the allegation.

16. By comparison, even in the restrictive setting at The Children's Village staff secure, to my knowledge and based on my review of their ORR records, the youth in each of these three categories of step-ups (excluding the one with a prior mental health history) did not receive any Significant Incident Reports or evince even insignificant mental health or behavioral concerns while at The Children's Village. Instead, they received notably positive clinical and case management notes, which are not typical of recent step-ups (though they are of step-downs) in my experience. Based on my observations, client interviews, and ORR records review, I believe this pattern is because children possess hope and have no reason to act out when they perceive that adults are paying attention to them, ensuring their most basic wellbeing, and are working on their reunification and prompt release from custody.

<u>Inhumane and Degrading Conditions at Fort Bliss Led to Feelings of Desperation and Behavior that ORR Used to Justify a Step-Up</u>

17.     In interviews that my colleagues and I conducted and upon my review of clients' ORR records, youths' descriptions of atrocious food, overcrowding, the harsh physical environment, and a dehumanizing lack of privacy were pervasive and consistent. For some clients, these unbearable and humiliating conditions led to their attempt to escape Fort Bliss; for others, the conditions led to the desire or attempt to harm themselves.

18.     For example, in The Children's Village staff secure records of J.B.H, it is clear that he allegedly "attempted to leave [Fort Bliss] because it was too crowded, hot, and the food was not good." Exhibit 1, attached hereto as a true and correct copy of an excerpt of J.B.H.'s The Children's Village staff secure ORR Records at DOOR_JBH_0001. At The Children's Village staff secure, J.B.H. "acclimated well" and "did not report any concerns indicative of a mental health condition." *Id*. at DOOR_JBH_0002.

19.     In another instance, E.M.B., found conditions at Fort Bliss "overwhelming," and his detention there caused him to feel desperate and extremely sad. Exhibit 2, attached hereto as a true and correct copy of an excerpt of E.M.B.'s ORR Records at DOOR_EMB_0006. In particular, upon information and belief, E.M.B.'s lack of privacy at Fort Bliss was deeply degrading and difficult for him to tolerate. *Id*. at DOOR_EMB_0008. After being stepped-up to The Children's Village staff secure, E.M.B.'s contact with his family and case manager resulted in marked improvements in his reported mental health and behavior. *Id*. at DOOR_EMB_0006-7.

<u>Lack of Case Management and Fear of Indefinite Detention at Fort Bliss Led to Feelings of Hopelessness and Behavior that ORR Used to Justify Step-Up</u>

20.     For many youth, more devastating than the physical conditions at Fort Bliss was the knowledge that their reunification with family was not moving forward. For some of these clients, this realization and attendant hopelessness led to their attempt to escape Fort Bliss; for others, it led to a desire or attempt to harm themselves.

21.     For example, one client, A.C.C., who was stepped up for his alleged attempt to escape Fort Bliss, reported to his Children's Village clinician that he had never previously experienced suicidal ideation. But he reported that at Fort Bliss, for the first time in his life, he began to experience thoughts of self-harm because of his frustration that his case was not progressing and because he was not receiving information about his case. *See* Exhibit 3, attached hereto as a true and correct copy of an excerpt of A.C.C.'s ORR Records at DOOR_ACC_0001-2. One week after leaving Fort Bliss, his Children's Village clinician reported that he was emotionally and mentally stable and had no mental health concerns. *Id.* at DOOR_ACC_0003. The Children's Village staff reported that A.C.C. exhibited no behavior or safety concerns during his entire placement there. *Id.*

22.     Another youth, O.V.P.C., who was stepped up due to an alleged attempt to escape, reported to his Children's Village clinicians that he was "feeling depressed and desperate to be released" at Fort Bliss. Exhibit 4, attached hereto as a true and correct copy of an excerpt of O.V.P.C.'s ORR Records at DOOR_OVPC_0002. However, there were "no concerns" with O.V.P.C. after his admission to The Children's Village. *Id.*

Inadequate Staffing and Supervision at Fort Bliss Led to Unsafe Conditions and Misconstrued or Unfounded Allegations of Violence or Gang Activity

23.     Several clients were stepped up for purported violence or gang activity. However, each of their ORR records demonstrates either that the alleged violence may instead have been self-defense, apparently necessitated by staff failure to provide a safe environment for all youth; or that there is no documented basis for the allegation of gang activity. In fact, there is no documentation that the act itself perceived to be evidence of gang activity—purportedly "recruiting" youth or exerting influence over others—actually occurred.

24.     In one step-up purportedly on account of a physical altercation, The Children's Village staff secure case record reflects that the youth, N.M.M., acted to defend himself from racist attacks by other youths. *See* Exhibit 5, attached hereto as a true and correct copy of an excerpt of N.M.M.'s ORR Records at DOOR_NMM_0003-4 (describing his

---

sadness at being bullied for his skin color by another youth). As with all other step-ups based on alleged violence or attempts to escape, once he was transferred out of Fort Bliss, N.M.M. evinced no behavioral or safety concerns. To the contrary, N.M.M.'s clinical progress notes include comments such as, "The minor has been able to follow the program's rules with no difficulties." *Id*. at DOOR_NMM_0005-7. These records reinforce my understanding that the conditions at Fort Bliss—endangering and humiliating this client—triggered N.M.M.'s step-up.

25.     The transfer notice for another client, M.L.M., indicates the step-up was on account of allegedly disruptive behavior in the form of a fight while playing cards. *See* Exhibit 6, attached hereto as a true and correct copy of an excerpt of M.L.M.'s ORR Records at DOOR_MLM_0002. However, within six days of being at The Children's Village, M.L.M. was found to have "maintained a cooperative attitude" and "reported feeling emotionally and mentally stable." *Id*. at DOOR_MLM_0003. There were no reported mental or behavioral health concerns and his Children's Village teacher described him as "a pleasure to work with." *Id*. at DOOR_MLM_0004.

26.     Another client, K.A.C.G., was stepped up purportedly on account of "concerns of possible gang activity," yet the ORR Notice of Placement itself notes that "no SIRs (Significant Incident Reports) were recorded [sic] with such allegations." Exhibit 7, attached hereto as a true and correct copy of an excerpt of K.A.C.G.'s ORR Records at DOOR_KACG_0002, 6. K.A.C.G. was informed that he was sent to staff secure because of an attempt to run away, an allegation wholly unsupported by his ORR record. Contrary to the allegation of "gang activity," K.A.C.G. asserts he hardly spoke to anyone besides his brother while at Fort Bliss. This youth's case manager at The Children's Village staff secure recognized that he had no mental or behavioral health concerns, "acclimated well," "was very respectful," and "followed all program rules." *Id*. at DOOR_KACG_0003-5.

Even Though Youth Are Desperate to Escape Fort Bliss and Typically Find Staff Secure Placement Far Preferable in Comparison, the Step-Up Nonetheless Prejudices their Custodial Cases

27.     While most clients report feeling safer and less desperate at The Children's Village staff secure facility compared to Fort Bliss, this perspective is a testament to how devastating the conditions at Fort Bliss are, rather than a reflection of the appropriateness of a staff secure placement. Step-up to a staff secure placement is harmful to youth because it is perceived as punishment, it is a more restrictive setting, and it often negatively impacts youths' legal case. In my opinion, step-ups resulting from the extreme desperation and hopelessness youth feel at Fort Bliss are fundamentally unfair.

28.     Step-ups are particularly concerning for youth who have no sponsor. In my experience, a staff secure placement reduces the likelihood of the youth's acceptance into a long-term foster care (LTFC) placement. Staff secure placement history is often held against youth as evidence they may not be appropriate to place in the least restrictive setting of LTFC. Furthermore, in my experience, any potential acceptance into LTFC is delayed by staff secure placement because youth must be stepped down to shelter level from staff secure, after a 30-day placement review, to have a referral for LTFC circulated. LTFC placement is discretionary, and there is no formal or standardized opportunity in the LTFC referral process to clarify that a step-up to staff secure was unwarranted.

Inadequate and Improper Documentation Prior to Step-Up at Fort Bliss

29.     Many records from Fort Bliss are incomplete or contain errors. For example, many files I reviewed included records for unrelated youth, raising concerns of compliance with ORR's own documentation requirements, protection of confidentiality, adequate legal and factual justifications for step-ups, among other concerns.

30.     In terms of confidentiality concerns, two of nine clients[1] stepped up to The Children's Village staff secure facility from Fort Bliss contained records of other individuals.

31.     Many stepped-up clients' records lack appropriate signatures. Six of nine stepped-up clients' Notice of Placement in Secure or Staff Secure Facility lack a signature from the facility staff or witness and from the youth himself, with no corrected, signed versions in any file. *See, e.g.,* Exhibit 2 at DOOR_EMB_0002; Exhibit 4 at DOOR_OVPC_0003; Exhibit 5 at DOOR_NMM_0001-2, 0008; Exhibit 6 at DOOR_MLM_0001-2, 0005-6; Exhibit 8 attached hereto as a true and correct copy of an excerpt of J.A.A.'s ORR Records at DOOR_JAA_0002; Exhibit 9 attached hereto as a true and correct copy of an excerpt of C.A.R.G's ORR Records at DOOR_CARG_0001.  Similarly, six of nine stepped-up clients' Placement Authorization forms in their Fort Bliss ORR records lack a signature of an authorized representative of care provider, although most also contain a completed version of the form in their Children's Village Staff Secure ORR records. *See e.g.*, Exhibit 2 at DOOR_EMB_0001-5; Exhibit 4 at DOOR_OVPC_0001, 0003-4; Exhibit 5 at DOOR_NMM_0001-2, 0008; Exhibit 6 at DOOR_MLM_0001-2, 0005-6; Exhibit 8 at DOOR_JAA_0001-3.

32.     This list is not exhaustive but is demonstrative of my concerns regarding the legal propriety and undue harm of the step-ups from Fort Bliss to The Children's Village as well as my concerns regarding inadequate notice to youth and inadequate documentation to comply with federal regulations governing immigration custody of youth.

33.     Over the last several months I have learned of a deeply concerning pattern of degrading and harmful conditions and treatment at the Fort Bliss facility. Based on my interviews with my clients, my colleagues' interviews, and my review of clients' case records, I have concluded that the conditions, staffing, and number of youth in custody at Fort Bliss make it an inhumane and dangerous place for youth to be detained.

---

[1] Despite multiple requests, I have not received the Fort Bliss ORR records for one of the nine step-ups and thus I do not know what it may contain.

1

2   I declare under penalty of perjury that the foregoing is true and correct. Executed on this

3   3rd day of _____August_____, 2021, at <u>New York City</u>, <u>New York</u>.

4

5

6                                 HANNAH P. FLAMM

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1



## Division of Immigration Services
## Unidos por un Sueño/ United for one Dream
## Clinical Progress Note

**UAC's Name:** ███████████████
**DOB:** ████████
**UC #:** ████████
**Date of Admission: 5/06/2021**
**Date: 5/07/2021**

Due to the Covid-19 quarantine restrictions, clinician facilitated a telephonic session. The minor reports he is a 14 year old male from Honduras. Clinician welcomed the minor to the program and explained her role as his assigned clinician. Clinician asked the risk assessment questions which the minor answered. The minor did not report any information indicative of a mental or behavioral concern. Clinician assessed a significant incident report submitted by the previous facility which stated the minor attempted to runaway. The minor shared how he and a few other minor attempted to leave the previous facility because it was too crowded, hot, and the food was not good. The minor's feelings were validated. The minor stated that his intentions were not to disobey and do something bad. Clinician assessed how the minor feels in the current facility and he expressed feeling at home and stated not having any desire to run away. Clinician discussed the program's rules and expectations which the minor said he understood and verbally agreed to.   The minor did not report any concerns.

*Catherine M Medina, LMSW*

.

**Signature: _____ Title: Bilingual Clinician**

Electronically signed by Catherine Medina on 5/10/2021 12:05:24 PM



*Division of Immigration Services*
*Unidos por un Sueño/ United for one Dream*
*Clinical Progress Note*

**UAC's Name:** ███████████████
**DOB:** ███████
**UC #:** ██████
**Date of Admission: 5/06/2021**
**Date: 5/11/2021**

This writer met with the minor on the above referenced date. Due to the Covid-19 quarantine restrictions, the initial clinical assessments were completed telephonically. The minor stated that in his home country he was living with his mother, his stepfather, and his younger sister. The minor shared he left Honduras on ███████ to be able to study, be able to one day work and reunifying with his maternal aunt who lives in San Francisco, California. The minor does not recall the last time he saw his aunt because she has been living in the United States for many years. The minor denied traveling with a coyote and said he traveled with a friend who is also in this facility. The minor shared family members chipped in to help him with money for the expenses of his trip. The minor shared he last attended school in 2018 and completed the 6th grade. Based on how the minor answered the questions, there are no sex or labor trafficking concerns. The minor denied any gang or cartel involvement; illicit drug and/or alcohol use; and problems with authorities. The minor denied any abuse or extortion during the journey or in his country. The minor stated he voluntarily surrendered to U.S. Border Patrol where he spent four days. The minor was then transferred to Ft. Bliss where he spent 2 days and was later transferred to the Unidos Por Un Sueno Program at the Children's Village on 05/06/2021. During the initial clinical assessment, the minor was oriented to all spheres and his affect was reactive and mood congruent. The minor denies presently or ever experiencing any suicidal ideations or desire to self-harm. The minor denies ever experiencing any homicidal ideations, auditory or visual hallucinations. Thus far the minor has acclimated well to the program; he is eating and sleeping well. The minor has been able to follow the program's rules with no difficulties and reports that he feels safe here. The minor did not report any concerns indicative of a mental health condition.

*Catherine H Medina, LMSW*

.
**Signature:** _____ **Title: Bilingual Clinician**

Electronically signed by Catherine Medina on 5/11/2021 3:01:31 PM

# EXHIBIT 2

OMB Control No: 0970-0554
Expiration date: 03/31/2022

a.  The care provider may provide information about the minor to the minor's educational program, medical, mental health, dental and other service providers to the extent that the information is needed for the minor's education, recreation, social development, medical, dental, or mental health treatment.

b.  The care provider must give ORR and its designees, as directed by ORR, unrestricted free access to information about the minor at all times.

c.  All case file information maintained under grants or contracts with the Federal government are the property of the Federal government and are fully accessible to ORR, or any of their duly authorized representatives, in accordance with applicable federal law, regulations, OMB circulars, and ORR policies.

**8. CONTACT WITH THE FAMILY**
The care provider must permit the minor and the minor's family (as well as other individuals at ORR's discretion) to maintain contact through direct visitation, telephone calls, mail, and gifts under the terms and conditions specified by applicable law, regulations, and ORR policies.

**9. SCHOOL PROGRAMS AND EXTRACURRICULAR ACTIVITIES**
The care provider may authorize the minor to participate in routine school programs as well as social and extracurricular activities that do not involve an unusual risk of injury to the minor unless otherwise specified by ORR.

**10. REASON FOR PLACEMENT**
An unaccompanied minor who meets the definition of an unaccompanied alien child, 6 U.S.C. 279(g)(2), and is in Federal custody by reason of his or her immigration status.

**11. TIME IN CARE**
The care provider's care giving authority will terminate upon the minor's physical discharge from the care provider's custody. The care provider will still have legal obligations for maintaining the minor's property if it is still in the care provider's custody and case file as directed by ORR.

**12. FINANCIAL**
ORR agrees to provide financially for the care of said minor according to the financial agreement between ORR and care provider or subsequent agreements agreed to by ORR and the care provider.

**13. RESTRAINTS**
The care provider must exhaust preventive, de-escalative and less restrictive techniques before it uses any type of restraint. Should physical restraint be necessary for the safety of the minor or others, the care provider must use behavior intervention techniques approved by ORR.  All use of restraints must be justified and documented.

_____
Signature - Authorized Representative of Care Provider

Date

Telephone Number

_____
Signature - Official Representative
**Office of Refugee Resettlement**
**Administration for Children and Families**
**U.S. Department of Health and Human Services**

06/02/2021

Date

202-401-5709

Telephone Number

THE PAPERWORK REDUCTION ACT OF 1995 (Pub. L. 104.13) Public reporting burden for this collection of information is estimated to average .10/hour per response, including the time for reviewing instructions, gathering and maintaining the data needed, and reviewing the collection of information. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.



**ADMINISTRATION FOR CHILDREN AND FAMILIES**
370 L'Enfant Promenade, S.W.
Washington, D.C. 20447

U.S. Department of Health and Human Services

### Office of Refugee Resettlement
### Division of Children's Services
### NOTICE OF PLACEMENT IN SECURE OR STAFF SECURE FACILITY

| Minor's Name | Alien #: | Date of Birth | Country of Birth | Facility Name | Facility Type |
|---|---|---|---|---|---|
| ███████ | ████ | ███ | Nicaragua | Ft. Bliss - EIS | Emergency Intake Sites |

This is to provide you NOTICE of the reasons for your placement in a secure or staff-secure facility. Your are in the care and custody of the Office of Refugee Resettlement/Division of Children's Services (ORR/DCS). ORR/DCS will not place a minor in a secure or staff-secure facility if there are less restrictive placement options available and appropriate. However, under certain conditions listed below, ORR/DCS may place minors in a secure or staff-secure facility.

1. You are considered to be a flight risk.
2. You have committed or threatened to commit a violent or malicious act toward yourself or other(s).
3. You have been convicted of a crime as an adult.
4. You have been adjudicated as a delinquent.
5. You have engaged in serious, unacceptable disruptive behavior while in a licensed program.
6. You are chargeable with a crime or delinquent offense.
7. You are in criminal or delinquency proceedings.
8. For your own safety.
9. There is an emergency influx of minors into the United States and there are no alternative placement options at this time. ORR will place you in a shelter care facility as expeditiously as possible.

If you have any questions or concerns regarding this placement, please discuss them with the facility case management staff and/or your attorney of record. Any minor who disagrees with the ORR/DCS decision may correspond directly with the ORR/ DCS Division Director. Additionally, the minor may seek judicial review in any United States District Court with jurisdiction and venue over the matter to challange the placement decision.

_signature_                                       06/02/2021
_____        _____
ORR Director Signature                            Date


_____        _____
Facility Staff/Witness: Name/Signature/Position    Date


_____        _____
Minor's Signature/Name                            Date

CC: Minor
    ORR/DCS Facility File
    ORR/DCS Field Coordinator
    ORR/DCS

ORR/DCS Notice of Placement
Last Revised 2/1/05

OMB Control No: 0970-0554
Expiration date: 03/31/2022

a.  The care provider may provide information about the minor to the minor's educational program, medical, mental health, dental and other service providers to the extent that the information is needed for the minor's education, recreation, social development, medical, dental, or mental health treatment.
b.  The care provider must give ORR and its designees, as directed by ORR, unrestricted free access to information about the minor at all times.
c.  All case file information maintained under grants or contracts with the Federal government are the property of the Federal government and are fully accessible to ORR, or any of their duly authorized representatives, in accordance with applicable federal law, regulations, OMB circulars, and ORR policies.

**8. CONTACT WITH THE FAMILY**
The care provider must permit the minor and the minor's family (as well as other individuals at ORR's discretion) to maintain contact through direct visitation, telephone calls, mail, and gifts under the terms and conditions specified by applicable law, regulations, and ORR policies.

**9. SCHOOL PROGRAMS AND EXTRACURRICULAR ACTIVITIES**
The care provider may authorize the minor to participate in routine school programs as well as social and extracurricular activities that do not involve an unusual risk of injury to the minor unless otherwise specified by ORR.

**10. REASON FOR PLACEMENT**
An unaccompanied minor who meets the definition of an unaccompanied alien child, 6 U.S.C. 279(g)(2), and is in Federal custody by reason of his or her immigration status.

**11. TIME IN CARE**
The care provider's care giving authority will terminate upon the minor's physical discharge from the care provider's custody. The care provider will still have legal obligations for maintaining the minor's property if it is still in the care provider's custody and case file as directed by ORR.

**12. FINANCIAL**
ORR agrees to provide financially for the care of said minor according to the financial agreement between ORR and care provider or subsequent agreements agreed to by ORR and the care provider.

**13. RESTRAINTS**
The care provider must exhaust preventive, de-escalative and less restrictive techniques before it uses any type of restraint. Should physical restraint be necessary for the safety of the minor or others, the care provider must use behavior intervention techniques approved by ORR.  All use of restraints must be justified and documented.

| | | |
|---|---|---|
| Signature - Authorized Representative of Care Provider | Date | Telephone Number |
| *Cynthia* (signature) | 06/02/2021 | 202-401-5709 |
| Signature - Official Representative | Date | Telephone Number |
| **Office of Refugee Resettlement** | | |
| **Administration for Children and Families** | | |
| **U.S. Department of Health and Human Services** | | |

THE PAPERWORK REDUCTION ACT OF 1995 (Pub. L. 104.13) Public reporting burden for this collection of information is estimated to average .10/hour per response, including the time for reviewing instructions, gathering and maintaining the data needed, and reviewing the collection of information. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.



**ADMINISTRATION FOR CHILDREN AND FAMILIES**
370 L'Enfant Promenade, S.W.
Washington, D.C. 20447

U.S. Department of Health and Human Services

**Office of Refugee Resettlement**
**Division of Children's Services**
**NOTICE OF PLACEMENT IN SECURE OR STAFF SECURE FACILITY**

| Minor's Name | Alien #: | Date of Birth | Country of Birth | Facility Name | Facility Type |
|---|---|---|---|---|---|
| ███ | ███ | ███ | Nicaragua | Ft. Bliss - EIS | Emergency Intake Sites |

This is to provide you NOTICE of the reasons for your placement in a secure or staff-secure facility. Your are in the care and custody of the Office of Refugee Resettlement/Division of Children's Services (ORR/DCS). ORR/DCS will not place a minor in a secure or staff-secure facility if there are less restrictive placement options available and appropriate. However, under certain conditions listed below, ORR/DCS may place minors in a secure or staff-secure facility.

1. You are considered to be a flight risk.
2. You have committed or threatened to commit a violent or malicious act toward yourself or other(s).
3. You have been convicted of a crime as an adult.
4. You have been adjudicated as a delinquent.
5. You have engaged in serious, unacceptable disruptive behavior while in a licensed program.
6. You are chargeable with a crime or delinquent offense.
7. You are in criminal or delinquency proceedings.
8. For your own safety.
9. There is an emergency influx of minors into the United States and there are no alternative placement options at this time. ORR will place you in a shelter care facility as expeditiously as possible.

If you have any questions or concerns regarding this placement, please discuss them with the facility case management staff and/or your attorney of record. Any minor who disagrees with the ORR/DCS decision may correspond directly with the ORR/ DCS Division Director. Additionally, the minor may seek judicial review in any United States District Court with jurisdiction and venue over the matter to challange the placement decision.

_signature_                                          06/02/2021
_____          _____
ORR Director Signature                              Date

_____          _____
Facility Staff/Witness: Name/Signature/Position     Date

_____          _____
Minor's Signature/Name                              Date

CC: Minor
    ORR/DCS Facility File
    ORR/DCS Field Coordinator
    ORR/DCS

ORR/DCS Notice of Placement
Last Revised 2/1/05

OMB Control No: 0970-0554
Expiration date: 03/31/2022

a.  The care provider may provide information about the minor to the minor's educational program, medical, mental health, dental and other service providers to the extent that the information is needed for the minor's education, recreation, social development, medical, dental, or mental health treatment.

b.  The care provider must give ORR and its designees, as directed by ORR, unrestricted free access to information about the minor at all times.

c.  All case file information maintained under grants or contracts with the Federal government are the property of the Federal government and are fully accessible to ORR, or any of their duly authorized representatives, in accordance with applicable federal law, regulations, OMB circulars, and ORR policies.

**8. CONTACT WITH THE FAMILY**
The care provider must permit the minor and the minor's family (as well as other individuals at ORR's discretion) to maintain contact through direct visitation, telephone calls, mail, and gifts under the terms and conditions specified by applicable law, regulations, and ORR policies.

**9. SCHOOL PROGRAMS AND EXTRACURRICULAR ACTIVITIES**
The care provider may authorize the minor to participate in routine school programs as well as social and extracurricular activities that do not involve an unusual risk of injury to the minor unless otherwise specified by ORR.

**10. REASON FOR PLACEMENT**
An unaccompanied minor who meets the definition of an unaccompanied alien child, 6 U.S.C. 279(g)(2), and is in Federal custody by reason of his or her immigration status.

**11. TIME IN CARE**
The care provider's care giving authority will terminate upon the minor's physical discharge from the care provider's custody. The care provider will still have legal obligations for maintaining the minor's property if it is still in the care provider's custody and case file as directed by ORR.

**12. FINANCIAL**
ORR agrees to provide financially for the care of said minor according to the financial agreement between ORR and care provider or subsequent agreements agreed to by ORR and the care provider.

**13. RESTRAINTS**
The care provider must exhaust preventive, de-escalative and less restrictive techniques before it uses any type of restraint. Should physical restraint be necessary for the safety of the minor or others, the care provider must use behavior intervention techniques approved by ORR.  All use of restraints must be justified and documented.

| | | |
|---|---|---|
| _signature_ | 05/14/2021 | 914-693-0600 |
| Signature - Authorized Representative of Care Provider | Date | Telephone Number |
| _signature_ | 05/14/2021 | 202-401-5709 |
| Signature - Official Representative | Date | Telephone Number |
| **Office of Refugee Resettlement** | | |
| **Administration for Children and Families** | | |
| **U.S. Department of Health and Human Services** | | |

THE PAPERWORK REDUCTION ACT OF 1995 (Pub. L. 104.13) Public reporting burden for this collection of information is estimated to average .10/hour per response, including the time for reviewing instructions, gathering and maintaining the data needed, and reviewing the collection of information. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.

**List and describe any disclosed criminal activity:**
CM is currently assessing and will provide updates in the Case Review

| History of Incarceration: | Crime | Date | Length of Sentence | Location |
|---|---|---|---|---|
| | | | | |

**Are there any parent/child relational issues?**    ○ Yes ◉ No

**If yes, explain:**
CM is currently assessing and will provide updates in the Case Review

**Does the sponsor have an Order of Removal?**    ○ Yes ◉ No

**If yes, date issued:**

**Has the sponsor sponsored any other UAC in DCS care?**    ○ Yes ◉ No

**Additional sponsor information:**
CM is currently assessing and will provide updates in the Case Review

| Sponsor Sponsored UACs: | Name of UAC | A Number | Relationship | Facility sponsored from |
|---|---|---|---|---|
| | | | | |

## Mandatory TVPRA 2008

**Based on the most recent trafficking screening, is the child a victim of a severe form of trafficking in persons? (Indicate 'yes' only if ORR has issued a trafficking eligibility letter for UAC.)**    ○ Yes ◉ No

**Date eligibility letter issued:**

**Based on the most recent screening for disabilities, does the child have a disability as defined in section 3 of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12102(1)?**    ○ Yes ◉ No

**If yes, specify disability:**

**Based on the most recent screening, has the child been a victim of physical or sexual abuse under circumstances that indicate that the child's health or welfare has been significantly harmed or threatened?**    ○ Yes ◉ No

**If yes, provide a short summary:**

**Based on the sponsor risk assessment, does the sponsor clearly present a risk of abuse, maltreatment, exploitation, or trafficking to the UAC?**    ○ Yes ◉ No

**If yes, provide a short summary:**

## Additional Information

**Please input any additional information if needed:**
Minor is a 17-year-old male from Nicaragua who traveled to the US ██████████████████████████████████████████ Note: Minor was transferred to the Children's Village Staff Secure Shelter Program after a 16-day stay in Ft  Bliss EIS  Minor explained that at that site with the enormous amount of UCs to care for and tend to it, was overwhelming for him at times  He would become saddened and desperate however denies ever any thought or intent to self-harm or take his own life  SIR Event ████████ reports suicidal ideation however minor denies this explaining how he was feeling at the time and why he may have been perceived as suicidal ████████████████████████████████████████ Minor is acclimating well to the program  He feels more confident having been in contact with his uncle and CM following up on the status of his FRP process  Minor ages out on ██████ and worries he will be transferred to adult detention if not released on time  There are no significant mental health concerns noted or identified at this time

## Certification

**Signature:**

**Date:** 5/19/2021

**Print Name:** Yira Torres, LMSW

**Title:** Lead Clinician

| | |
|---|---|
| **Legal screening completed?** | ○ Yes  ◉ No |
| **Date:** | |
| **Any possible legal relief identified?** | ○ Yes  ◉ No |
| **Specify:** | Minor will be screened by LSP- The Door and receive KYR  CM will provide updates in the Case Review |

## Mental Health

Provide a short summary of the UAC's current functioning:

Minor has been acclimating well to the program despite his current quarantine status as part of the COVID-19 protocol  Minor is respectful towards staff and compliant with program rules/dynamics  He is looking forward to joining the other residents in the daily programming  He is most focused on his desired reunification with his sponsor and starting a new life in the US before his upcoming 18th birthday on ▮▮▮▮  Lead CL shall focus continued sessions on preparing for release including but not limited to a discussion on the behavioral expectations of the minor once released to the community given the reports of defiant behavior noted by previous placement  There are no significant MH concerns noted at this time

5/24/21 - Lead CL conducted the Child Abuse & Neglect session and throughout the conversation discussed with minor his emotional responses to stress given his desire to succeed in the community  Minor explained that the circumstances that prefaced his arrival to SS contributed to his emotional state and that he feels confident that with the support of his uncle (sponsor) he will be able to handle future upsets in a more appropriate manner  Minor admits when provoked or perceived as disrespected, his emotions can take control however he attributes his positive traits to the education his parents gave him and how important their continued support means to him  He does not wish to disappoint them and therefore will be more mindful of his reaction to upset in the future  No abuse history was identified during the session  Minor was fully understanding of the various forms of abuse and what to do in the event of any suspected maltreatment or abuse once released to his sponsor's care  There are no significant mental health concerns noted or identified at this time

## Psychological Evaluation

| | |
|---|---|
| **Date of Evaluation:** | |
| **Evaluator:** | |
| **Axis I:** | |
| **Axis II:** | |
| **Axis III:** | |
| **Axis IV:** | |
| **Axis V:** | |
| **Summary of Recommendations:** | |

## Trafficking

**Who planned/organized your journey?**

Minor migrated to the US on ▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**What were you told about the arrangements before the journey?**

Minor traveled by bus from Nicaragua to Guatemala then continued his journey to the Mexican/US border

**Did the arrangements change during the journey?**     ○ ◉
                                                         Yes No

**If yes, how?**

**Does your family owe money to anyone for the journey?**     ○ ◉
                                                               Yes No

**If yes, how much?**

**Whom is the money owed?**

**Who is expected to pay?**

**What do you expect to happen if payment is not made?**

### Coercion Indicators

**Did anyone threaten your or your family?**     ◉ ○
                                                 Yes No

**If yes, who made the threats?**

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**Were you ever physically harmed?**     ○ ◉
                                         Yes No

**If yes, how?**

**Was anyone around you ever physically harmed?**     ○ ◉
                                                      Yes No

**If yes, who?**

**Were you ever held against your will?**     ○ ◉
                                              Yes No

**If yes, where?**

**Did anything bad happen to anyone else in this situation or anyone else who tried to leave?**     ○ ◉
                                                                                                    Yes No

DOOR_EMB_0007

| | | | | |
|---|---|---|---|---|
| Did the incident take place at another care provider facility? | ○ Yes ◉ No | Care Provider Name: | -- Select Provider Name -- | |
| | | Care Provider City: | -- Select Provider City -- | Care Provider State: -- Select Provider State -- |

| | | | | | |
|---|---|---|---|---|---|
| Location of Incident: | Housing Area | Date Reported To Care Provider: | 5/6/2021 | Time Reported To Care Provider: | 12:00 AM |
| Other Specify: | Tent 8/17E | Date Reported To ORR: | 5/7/2021 | Time Reported To ORR: | 10:26 PM |

| | |
|---|---|
| Description of Incident: (Full Description of Incident) | MHC was called out to tent because UAC stated he was going to take his life  UAC was visibly upset and crying uncontrollably  He reported not being allowed to use the restroom with the door closed and became very upset because he was unaware of being on supervision, he said no one had told him; therefore when he went to use the restroom he didn't understand why he wasn't allowed to close the door  This upset him to the point that he exclaimed out loud wanting to take his life  After speaking with UAC he expressed not having a plan nor the desire to take his life |
| Was the UAC or Anyone Else Injured?: | ○ Yes ◉ No          Specify: |

### Actions Taken

| | |
|---|---|
| Staff Response and Intervention | Clinician gathered information and educated UAC on being free of suicidal thoughts and attempts |
| Follow-up and/or Resolution: | Clinician and CM are to follow up with UAC |
| Recommendations: | Clinician and CM will follow up with UAC for plan of action |

### Reporting:

| | | | |
|---|---|---|---|
| Reported To State Licensing: | ○ Yes ◉ No | Date of Report: | Time of Report: |
| Was the Incident Investigated? | ○ Yes ◉ No | Date Notified the Incident will be investigated: | Case/Confirmation Number: |
| Explain | | | |
| Results/Findings of Investigation: | | | |
| Attach Reports/Findings: | | | |

| | |
|---|---|
| Is CPS Different From State Licensing: | ○ Yes ◉ No |

| | | | |
|---|---|---|---|
| Reported To CPS: | ○ Yes ◉ No | Date of Report: | Time of Report: |
| Was the Incident Investigated? | ○ Yes ◉ No | Date Notified the Incident will be investigated: | Case/Confirmation Number: |
| Explain | | | |
| Results/Findings of Investigation: | | | |
| Attach Reports/Findings: | | | |

| | | | |
|---|---|---|---|
| Reported To Local Law Enforcement: | ○ Yes ◉ No | Date of Report: | Time of Report: |
| | | Officer Name: | Officer Badge: |
| Was the Incident Investigated? | ○ Yes ◉ No | Date Notified the Incident will be investigated: | Case/Confirmation Number: |
| Explain | | | |
| Results/Findings of Investigation: | | | |
| Attach Reports/Findings: | | | |

### ORR Notifications:

| Name | Agency/Title | Date Notified | Time Notified | Email | Telephone Number |
|---|---|---|---|---|---|
| Daisy Amaral | ORR/FFS | 5/7/2021 | 10:26 PM | Daisy Amaral@acf hhs gov | 2028230276 |
| | ORR/PO | | | | |
| | Medical Coordinator | | | | |
| | Case Coordinator | | | | |
| | CFS | | | | |
| SIR Hotline | SIR Hotline | 5/7/2021 | 10:26 PM | SIRHotline@acf hhs gov | 2024015709 |
| | | | | Maria fields@acf hhs gov | |

### Other Notifications:

| | |
|---|---|
| Is this an SIR for a Runaway? | ○ Yes ○ No |

| Title | Name | Date Notified | Time Notified | Method of Notification | Specify |
|---|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| Did the incident take place at another care provider facility? | ○ Yes ⦿ No | Care Provider Name: | -- Select Provider Name -- | | |
| | | Care Provider City: | -- Select Provider City -- | Care Provider State: | -- Select Provider State -- |

| | | | | | |
|---|---|---|---|---|---|
| Location of Incident: | Housing Area | Date Reported To Care Provider: | 5/4/2021 | Time Reported To Care Provider: | 08:00 AM |
| Other Specify: | Fort Bliss EIS | Date Reported To ORR: | 5/7/2021 | Time Reported To ORR: | 07:42 AM |

**Description of Incident: (Full Description of Incident)** ██████████ UAC was defiant with staff ██████████

**Was the UAC or Anyone Else Injured?:**  ○ Yes ⦿ No   **Specify:**

### Actions Taken

**Staff Response and Intervention** SIR filed
**Follow-up and/or Resolution:**
**Recommendations:**

| Reporting: |
|---|

**Reported To State Licensing:** ○ Yes ⦿ No   **Date of Report:**   **Time of Report:**

**Was the Incident Investigated?** ○ Yes ○ No   **Date Notified the Incident will be investigated:**   **Case/Confirmation Number:**

**Explain**
**Results/Findings of Investigation:**
**Attach Reports/Findings:**

**Is CPS Different From State Licensing:** ○ Yes ⦿ No

**Reported To CPS:** ○ Yes ○ No   **Date of Report:**   **Time of Report:**

**Was the Incident Investigated?** ○ Yes ○ No   **Date Notified the Incident will be investigated:**   **Case/Confirmation Number:**

**Explain**
**Results/Findings of Investigation:**
**Attach Reports/Findings:**

**Reported To Local Law Enforcement:** ○ Yes ⦿ No   **Date of Report:**   **Time of Report:**

**Officer Name:**   **Officer Badge:**

**Was the Incident Investigated?** ○ Yes ○ No   **Date Notified the Incident will be investigated:**   **Case/Confirmation Number:**

**Explain**
**Results/Findings of Investigation:**
**Attach Reports/Findings:**

| ORR Notifications: | | | | | |
|---|---|---|---|---|---|
| **Name** | **Agency/Title** | **Date Notified** | **Time Notified** | **Email** | **Telephone Number** |
| Daisy Amaral | ORR/FFS | 5/7/2021 | 07:52 AM | Daisy.Amaral@acf.hhs.g | 2028230276 |
| ORR Division of Planning and Logistics | ORR/PO | 5/7/2021 | 07:52 AM | UAC_DPL@acf.hhs.gov | 2027542087 |
| | Medical Coordinator | | | | |
| | Case Coordinator | | | | |
| | CFS | | | | |
| SIR Hotline | SIR Hotline | 5/7/2021 | 07:52 AM | SIRHotline@acf.hhs.gov | 2024015709 |
| Ft Bliss SIR Resource Mailbox | Ft Bliss SIR Resource Mailbox | 5/7/2021 | 07:52 AM | FtBlissEIS_SIR@acf.hhs | 0000000000 |

| Other Notifications: |
|---|

**Is this an SIR for a Runaway?** ○ Yes ○ No

| Title | Name | Date Notified | Time Notified | Method of Notification | Specify |
|---|---|---|---|---|---|

DOOR_EMB_0009

# EXHIBIT 3

**List any Felony convictions:**
As per sponsor she has no criminal record.

**List any Misdemeanor convictions:**
As per sponsor she has no criminal record.

**List any Probation/Parole:**
As per sponsor she has no criminal record.

**List and describe any disclosed criminal activity:**
As per sponsor she has no criminal record.

| History of Incarceration: | Crime | Date | Length of Sentence | Location |
|---|---|---|---|---|

**Are there any parent/child relational issues?**        ○ Yes ◉ No

**If yes, explain:**
As per sponsor UC lived with her mother she has been airing him since he was younger, sponsor and UC confirmed his mother passed away.

**Does the sponsor have an Order of Removal?**        ○ Yes ◉ No

**If yes, date issued:**

**Has the sponsor sponsored any other UAC in DCS care?**        ○ Yes ◉ No

**Additional sponsor information:**

| Sponsor Sponsored UACs: | Name of UAC | A Number | Relationship | Facility sponsored from |
|---|---|---|---|---|

### Mandatory TVPRA 2008

**Based on the most recent trafficking screening, is the child a victim of a severe form of trafficking in persons? (Indicate 'yes' only if ORR has issued a trafficking eligibility letter for UAC.)**        ○ Yes ◉ No

**Date eligibility letter issued:**

**Based on the most recent screening for disabilities, does the child have a disability as defined in section 3 of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12102(1)?**        ○ Yes ◉ No

**If yes, specify disability:**

**Based on the most recent screening, has the child been a victim of physical or sexual abuse under circumstances that indicate that the child's health or welfare has been significantly harmed or threatened?**        ○ Yes ◉ No

**If yes, provide a short summary:**

**Based on the sponsor risk assessment, does the sponsor clearly present a risk of abuse, maltreatment, exploitation, or trafficking to the UAC?**        ○ Yes ◉ No

**If yes, provide a short summary:**
CM will complete sponsor asmts.

### Additional Information

**Please input any additional information if needed:**
Date: 5/06/21 Clinician made contact with minor to introduce Clinician's role, establish rapport, and complete initial assessments. Minor is a 16 year- old Latino from Honduras. Minor arrived at program on 5/06/21 and housed at McAlister, an all-male Staff Secure cottage. Minor denied any HX or current SI/HI, AH/VH, or delusions. Minor also denied any HX of substance abuse, or criminal background. Minor reported he last attended school in the 6th grade and was unable to continue due to financial hardships. Minor reported he has worked since the age of 15 in construction jobs, Monday –Saturday 6am-4pm. Minor denied any forced labor or trafficking concerns. (Although, minor denies current or past suicidal ideation, when asked about SIR's in previous facility for SI minor explained that he never had intentions to kill himself however that he did express thoughts of self-harm (hitting walls) due to frustrations over being in previous program, where according to him, he was not receiving updates about his case). Clinician placed minor in special observation in current placement, to be removed within a week if he does not display behavioral or safety concerns. Minor reported he lived with his maternal grandmother, and aunt and two younger siblings in a loving home, and denied any abuse or trauma. Minor sated his mother died a few years ago due to labor complications. Minor reported no communication with his father since infancy. Minor stated he came to reunite with a maternal aunt in Atlanta, whom he communicated with frequently. Minor reported he traveled alone, with no guide and denied being responsible for a debt. Minor also denied harm in transit. Focus will be placed on providing support to cope with separation form family, adjusting to staff secure setting and identifying skills to increase/maintain prosocial behaviors, as well as work toward family reunification and safe release. Minor was psychoeducated on the Child Abuse and Neglect form. ****

### Certification

**Signature:**

| | | |
|---|---|---|
| **Date:** | 5/7/2021 |
| **Print Name:** | Bel Gueron, LMHC |
| **Title:** | CL |

Minor denied any HX or current SI/HI, AH/VH, or delusions. Minor also denied any HX of substance abuse, or criminal background. Minor reported he last attended school in the 6th grade and was unable to continue due to financial hardships. Minor reported he has worked since the age of 15 in construction jobs, Monday –Saturday 6am-4pm.  Minor denied any forced labor or trafficking concerns. (Although, minor denies current or past suicidal ideation, when asked about SIR's in previous facility for SI minor explained that he never had intentions to kill himself however that he did express thoughts of self-harm (hitting walls) due to frustrations over being in previous program, where according to him, he was not receiving updates on his case). Clinician placed minor in special observation in current placement, to be removed within a week if he does not display behavioral or safety concerns. Minor reported he lived with his maternal grandmother, and aunt two younger siblings in a loving home, and denied any abuse or trauma. Minor sated his mother died a few years ago due to labor complications. Minor reported no communication with his father since infancy.

Minor stated he came to reunite with a maternal aunt in Atlanta, whom he communicated with frequently. Minor reported he traveled alone, with no guide and denied being responsible for a debt. Minor also denied harm in transit. Focus will be placed on providing support to cope with separation form family, adjusting to staff secure setting and identifying skills to increase/maintain prosocial behaviors, as well as work toward family reunification and safe release.

Minor was psychoeducated on the Child Abuse and Neglect form. ****

5/20/21 Minor shared that he has been working fervently in maintaining good behavior despite other peers in the cottage disruptive behavior. Minors continues to utilize skills identified in clinical sessions to adhere to program expectations. There have been no behavioral or metal health concerns in current placement despite previous SIRs, which have been processed with minor. Minor has been very honest about the reasons that led him to follow the other boys in the cottage to AWOL.  His other two SIR for self-harm ideation, he also explained as "urge to hit the walls" out of frustration over lack of information on his case. Minor denied ever wanting to kills himself, and does not exhibit safety concerns in current placement. Clinician and minor have identified healthy coping skills to manage frustrations and sudden changes and unmet personal expectations. Clinician has received positive feedback on his behavior from residential team. Clinician held a family session with sponsor on 5/20/21 to process her awareness of SIRs and identify supports, and skills. Sponsor presented aware of minors difficulties at previous program, with the permission of minor, clinician informed sponsor of his AWOL and self-harm SIR. Sponsor presented supportive and committed to his wellbeing and denied any previous history of emotional concerns or of self-harm acts. Clinician emphasized importance of reaching out for mental health services in the events of any actual behavioral or safety concerns do manifest once released. 888

## Psychological Evaluation

**Date of Evaluation:**

| | |
|---|---|
| **Evaluator:** | NA |
| **Axis I:** | NA |
| **Axis II:** | NA |
| **Axis III:** | NA |
| **Axis IV:** | AN |
| **Axis V:** | NA |

**Summary of Recommendations:**

## Trafficking

**Who planned/organized your journey?**

Minor stated he came to reunite with a maternal aunt in Atlanta, whom he communicated with frequently. Minor reported he traveled alone, with no guide and denied being responsible for a debt. Minor also denied harm in transit.

**What were you told about the arrangements before the journey?**

NA

**Did the arrangements change during the journey?**                                              ○ ◉
                                                                                                 Yes No

**If yes, how?**

NA

**Does your family owe money to anyone for the journey?**                                         ○ ◉
                                                                                                 Yes No

**If yes, how much?**

**Whom is the money owed?**

NA

**Who is expected to pay?**

NA

**What do you expect to happen if payment is not made?**

### Coercion Indicators

**Did anyone threaten your or your family?**                                                      ○ ◉
                                                                                                 Yes No

**If yes, who made the threats?**

NA

**Were you ever physically harmed?**                                                              ○ ◉
                                                                                                 Yes No

**If yes, how?**

NA

**Was anyone around you ever physically harmed?**                                                 ○ ◉
                                                                                                 Yes No

**If yes, who?**

NA

**Were you ever held against your will?**                                                         ○ ◉
                                                                                                 Yes No

**If yes, where?**

NA

**Did anything bad happen to anyone else in this situation or anyone else who tried to leave?**    ○ ◉
                                                                                                 Yes No

**What happened and to whom?**

NA

**Did anyone ever keep/destroy your documents?**                                                  ○ ◉
                                                                                                 Yes No

**If yes, who and what?**

NA

**Did anyone ever threaten to report you to the police/immigration?**                             ○ ◉
                                                                                                 Yes No

**If yes, who?**

NA

DOOR_ACC_0002



# Division of Immigration Services
### Unidos por un Sueño/United for a Dream
## US PROGRAM
### Clinical Progress Note

**UC's Name:** ███████████████████
**DOB:** ███████
**UC #:** ███████
**Date of Admission:**  5/06/21

**Date: 5/14/21**

Clinician made contact with minor for a weekly individual session. His mood and affect were congruent. He reported being emotionally and mentally stable and her thought processes and content were coherent and goal directed. Minor denied any current SI/HI, AH/VH, or delusions. Clinician and minor reviewed information he provided during initial session including process clarifications of his SIRs and time in previous facility. Minor reported to be adjusting well to program and expressed motivation to adhere to expiations with the hopes of being reunified with sponsor soon. He expressed to be feeling safe and to get along well with program staff and residents. Clinician followed with residential staff who report minor has exhibited no behavior or safety concerns. Clinician and minor reviewed reunification process/plans. Clinician and minor focused the rest of the session on goals and acculturation process. At this time there are no metal health concerns.

**Signature:** _____   **Title:** _Bilingual Clinician_
Jocabel Gueron LMHC

# EXHIBIT 4

OMB Control No: 0970-0554
Expiration date: 03/31/2022

a.  The care provider may provide information about the minor to the minor's educational program, medical, mental health, dental and other service providers to the extent that the information is needed for the minor's education, recreation, social development, medical, dental, or mental health treatment.

b.  The care provider must give ORR and its designees, as directed by ORR, unrestricted free access to information about the minor at all times.

c.  All case file information maintained under grants or contracts with the Federal government are the property of the Federal government and are fully accessible to ORR, or any of their duly authorized representatives, in accordance with applicable federal law, regulations, OMB circulars, and ORR policies.

**8. CONTACT WITH THE FAMILY**
The care provider must permit the minor and the minor's family (as well as other individuals at ORR's discretion) to maintain contact through direct visitation, telephone calls, mail, and gifts under the terms and conditions specified by applicable law, regulations, and ORR policies.

**9. SCHOOL PROGRAMS AND EXTRACURRICULAR ACTIVITIES**
The care provider may authorize the minor to participate in routine school programs as well as social and extracurricular activities that do not involve an unusual risk of injury to the minor unless otherwise specified by ORR.

**10. REASON FOR PLACEMENT**
An unaccompanied minor who meets the definition of an unaccompanied alien child, 6 U.S.C. 279(g)(2), and is in Federal custody by reason of his or her immigration status.

**11. TIME IN CARE**
The care provider's care giving authority will terminate upon the minor's physical discharge from the care provider's custody. The care provider will still have legal obligations for maintaining the minor's property if it is still in the care provider's custody and case file as directed by ORR.

**12. FINANCIAL**
ORR agrees to provide financially for the care of said minor according to the financial agreement between ORR and care provider or subsequent agreements agreed to by ORR and the care provider.

**13. RESTRAINTS**
The care provider must exhaust preventive, de-escalative and less restrictive techniques before it uses any type of restraint. Should physical restraint be necessary for the safety of the minor or others, the care provider must use behavior intervention techniques approved by ORR.  All use of restraints must be justified and documented.

_Signature - Authorized Representative of Care Provider_

05/06/2021
Date

914-693-0600
Telephone Number

_Signature - Official Representative_
**Office of Refugee Resettlement**
**Administration for Children and Families**
**U.S. Department of Health and Human Services**

05/06/2021
Date

202-401-5709
Telephone Number

THE PAPERWORK REDUCTION ACT OF 1995 (Pub. L. 104.13) Public reporting burden for this collection of information is estimated to average .10/hour per response, including the time for reviewing instructions, gathering and maintaining the data needed, and reviewing the collection of information. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.

**List any Misdemeanor convictions:**
CM still assessing, update will be provided in the Case Review.

**List any Probation/Parole:**
CM still assessing, update will be provided in the Case Review.

**List and describe any disclosed criminal activity:**
CM still assessing, update will be provided in the Case Review.

| History of Incarceration: | Crime | Date | Length of Sentence | Location |
|---|---|---|---|---|

**Are there any parent/child relational issues?**   ○ Yes ● No

**If yes, explain:**
CM still assessing, update will be provided in the Case Review.

**Does the sponsor have an Order of Removal?**   ○ Yes ● No

**If yes, date issued:**

**Has the sponsor sponsored any other UAC in DCS care?**   ○ Yes ● No

**Additional sponsor information:**
CM still assessing, update will be provided in the Case Review.

| Sponsor Sponsored UACs: | Name of UAC | A Number | Relationship | Facility sponsored from |
|---|---|---|---|---|

### Mandatory TVPRA 2008

**Based on the most recent trafficking screening, is the child a victim of a severe form of trafficking in persons? (Indicate 'yes' only if ORR has issued a trafficking eligibility letter for UAC.)**   ○ Yes ● No

**Date eligibility letter issued:**

**Based on the most recent screening for disabilities, does the child have a disability as defined in section 3 of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12102(1)?**   ○ Yes ● No

**If yes, specify disability:**
Based on the most recent screening for disabilities, minor does NOT have a disability as defined in section 3 of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12102(1).

**Based on the most recent screening, has the child been a victim of physical or sexual abuse under circumstances that indicate that the child's health or welfare has been significantly harmed or threatened?**   ○ Yes ● No

**If yes, provide a short summary:**
Minor denied ever being a victim of sexual or physical abuse and neglect in home country or throughout his journey to the United States.

**Based on the sponsor risk assessment, does the sponsor clearly present a risk of abuse, maltreatment, exploitation, or trafficking to the UAC?**   ○ Yes ● No

**If yes, provide a short summary:**
Assigned case manager and clinician will continue to assess as minor was recently admitted to The Children's Village. However, no concerns have been noted at this time

### Additional Information

**Please input any additional information if needed:**
Minor was recently admitted to the Children's Village on 5/6/21. As a safety precaution and per the most recent ORR guidelines, minor is currently in a mandatory 7-day quarantine while the program team awaits his COVID results. Assigned clinician, Stephanie Rosado, LMSW, attempted to facilitate the assessment via video conference. However, due to technical difficulties the UAC and Risk Assessment were conducted via phone. The assessment was conducted in Spanish as this is minor's primary language. Minor's tone of voice appeared stable and calm. Minor was oriented to person, time, place and situation. His tone of voice was appropriate and congruent. He appeared forthcoming and cooperative in answering all questions. He denied having a history of physical, sexual or verbal abuse in home country and throughout his journey to the United States. Minor denied having SI/HI, hallucinations and/or delusions. Minor denied history of drug abuse or involvement and/or affiliations with gangs or cartels. He denied having past or criminal history. Minor does not appear to be a danger to self or others. Minor was remorseful when speaking of the AWOL incident in the previous facility. Minor reported understanding that what he did was wrong. He stated feeling depressed and desperate to be released while in the previous program. Minor does not appear to be a victim of trafficking or exploitation. No concerns were reported by minor or observed by the assigned clinician or case manager at this time. Minor is adjusting well to his new environment and getting along with his peers and program staff. Minor is currently in a more restrictive setting due to his attempt to AWOL from previous ORR program. However, there have been no concerns since minor's admission to The Children's Village. Clinician will continue to meet with minor for weekly clinical sessions and ensure minor's safety and wellbeing in the milieu and after discharge.

### Certification

**Signature:** Fernando Ramirez, B.A.

**Date:** 5/11/2021

**Print Name:** Fernando Ramirez, B.A. / Stephanie Rosado, LMSW

**Title:** Case Manager / Bilingual Clinician



**U.S. Department of Health and Human Services**

**ADMINISTRATION FOR CHILDREN AND FAMILIES**
**370 L'Enfant Promenade, S.W.**
**Washington, D.C. 20447**

**Office of Refugee Resettlement**
**Division of Children's Services**
**NOTICE OF PLACEMENT IN SECURE OR STAFF SECURE FACILITY**

| Minor's Name | Alien #: | Date of Birth | Country of Birth | Facility Name | Facility Type |
|---|---|---|---|---|---|
| ■■■■ | ■■■■ | ■■■■ | Guatemala | Ft. Bliss - EIS | Emergency Intake Sites |

This is to provide you NOTICE of the reasons for your placement in a secure or staff-secure facility. Your are in the care and custody of the Office of Refugee Resettlement/Division of Children's Services (ORR/DCS). ORR/DCS will not place a minor in a secure or staff-secure facility if there are less restrictive placement options available and appropriate. However, under certain conditions listed below, ORR/DCS may place minors in a secure or staff-secure facility.

1. You are considered to be a flight risk.
2. You have committed or threatened to commit a violent or malicious act toward yourself or other(s).
3. You have been convicted of a crime as an adult.
4. You have been adjudicated as a delinquent.
5. You have engaged in serious, unacceptable disruptive behavior while in a licensed program.
6. You are chargeable with a crime or delinquent offense.
7. You are in criminal or delinquency proceedings.
8. For your own safety.
9. There is an emergency influx of minors into the United States and there are no alternative placement options at this time. ORR will place you in a shelter care facility as expeditiously as possible.

If you have any questions or concerns regarding this placement, please discuss them with the facility case management staff and/or your attorney of record. Any minor who disagrees with the ORR/DCS decision may correspond directly with the ORR/ DCS Division Director. Additionally, the minor may seek judicial review in any United States District Court with jurisdiction and venue over the matter to challange the placement decision.

_____          05/20/2021
ORR Director Signature                                                     Date

_____          _____
Facility Staff/Witness: Name/Signature/Position                Date

_____          _____
Minor's Signature/Name                                                    Date

CC: Minor
    ORR/DCS Facility File
    ORR/DCS Field Coordinator
    ORR/DCS

OMB Control No: 0970-0554
Expiration date: 03/31/2022

a.  The care provider may provide information about the minor to the minor's educational program, medical, mental health, dental and other service providers to the extent that the information is needed for the minor's education, recreation, social development, medical, dental, or mental health treatment.

b.  The care provider must give ORR and its designees, as directed by ORR, unrestricted free access to information about the minor at all times.

c.  All case file information maintained under grants or contracts with the Federal government are the property of the Federal government and are fully accessible to ORR, or any of their duly authorized representatives, in accordance with applicable federal law, regulations, OMB circulars, and ORR policies.

**8. CONTACT WITH THE FAMILY**
The care provider must permit the minor and the minor's family (as well as other individuals at ORR's discretion) to maintain contact through direct visitation, telephone calls, mail, and gifts under the terms and conditions specified by applicable law, regulations, and ORR policies.

**9. SCHOOL PROGRAMS AND EXTRACURRICULAR ACTIVITIES**
The care provider may authorize the minor to participate in routine school programs as well as social and extracurricular activities that do not involve an unusual risk of injury to the minor unless otherwise specified by ORR.

**10. REASON FOR PLACEMENT**
An unaccompanied minor who meets the definition of an unaccompanied alien child, 6 U.S.C. 279(g)(2), and is in Federal custody by reason of his or her immigration status.

**11. TIME IN CARE**
The care provider's care giving authority will terminate upon the minor's physical discharge from the care provider's custody. The care provider will still have legal obligations for maintaining the minor's property if it is still in the care provider's custody and case file as directed by ORR.

**12. FINANCIAL**
ORR agrees to provide financially for the care of said minor according to the financial agreement between ORR and care provider or subsequent agreements agreed to by ORR and the care provider.

**13. RESTRAINTS**
The care provider must exhaust preventive, de-escalative and less restrictive techniques before it uses any type of restraint. Should physical restraint be necessary for the safety of the minor or others, the care provider must use behavior intervention techniques approved by ORR.  All use of restraints must be justified and documented.

_____

Signature - Authorized Representative of Care Provider

Date

Telephone Number

_____

Signature - Official Representative
**Office of Refugee Resettlement**
**Administration for Children and Families**
**U.S. Department of Health and Human Services**

Date: 05/20/2021

Telephone Number: 202-401-5709

THE PAPERWORK REDUCTION ACT OF 1995 (Pub. L. 104.13) Public reporting burden for this collection of information is estimated to average .10/ hour per response, including the time for reviewing instructions, gathering and maintaining the data needed, and reviewing the collection of information. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.

DOOR_OVPC_ 0004

# EXHIBIT 5

OMB Control No: 0970-0554
Expiration date: 03/31/2022

a. The care provider may provide information about the minor to the minor's educational program, medical, mental health, dental and other service providers to the extent that the information is needed for the minor's education, recreation, social development, medical, dental, or mental health treatment.

b. The care provider must give ORR and its designees, as directed by ORR, unrestricted free access to information about the minor at all times.

c. All case file information maintained under grants or contracts with the Federal government are the property of the Federal government and are fully accessible to ORR, or any of their duly authorized representatives, in accordance with applicable federal law, regulations, OMB circulars, and ORR policies.

**8. CONTACT WITH THE FAMILY**
The care provider must permit the minor and the minor's family (as well as other individuals at ORR's discretion) to maintain contact through direct visitation, telephone calls, mail, and gifts under the terms and conditions specified by applicable law, regulations, and ORR policies.

**9. SCHOOL PROGRAMS AND EXTRACURRICULAR ACTIVITIES**
The care provider may authorize the minor to participate in routine school programs as well as social and extracurricular activities that do not involve an unusual risk of injury to the minor unless otherwise specified by ORR.

**10. REASON FOR PLACEMENT**
An unaccompanied minor who meets the definition of an unaccompanied alien child, 6 U.S.C. 279(g)(2), and is in Federal custody by reason of his or her immigration status.

**11. TIME IN CARE**
The care provider's care giving authority will terminate upon the minor's physical discharge from the care provider's custody. The care provider will still have legal obligations for maintaining the minor's property if it is still in the care provider's custody and case file as directed by ORR.

**12. FINANCIAL**
ORR agrees to provide financially for the care of said minor according to the financial agreement between ORR and care provider or subsequent agreements agreed to by ORR and the care provider.

**13. RESTRAINTS**
The care provider must exhaust preventive, de-escalative and less restrictive techniques before it uses any type of restraint. Should physical restraint be necessary for the safety of the minor or others, the care provider must use behavior intervention techniques approved by ORR. All use of restraints must be justified and documented.

| | | |
|---|---|---|
| _Signature - Authorized Representative of Care Provider_ | 06/09/2021 | 914-693-0600 |
| | Date | Telephone Number |
| _Signature - Official Representative_ | 06/09/2021 | 202-401-5709 |
| **Office of Refugee Resettlement** | Date | Telephone Number |
| **Administration for Children and Families** | | |
| **U.S. Department of Health and Human Services** | | |

THE PAPERWORK REDUCTION ACT OF 1995 (Pub. L. 104.13) Public reporting burden for this collection of information is estimated to average .10/hour per response, including the time for reviewing instructions, gathering and maintaining the data needed, and reviewing the collection of information. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.

DOOR_NMM_0091

Notice of Placement in a Restrictive Setting

Summary of placement decision or case review (additional pages may be added):

Today you are being notified for the reason of your placement to the Children ' s Village Staff Secure. You arrived yesterday 06/09/2021 to our facility.  Transfer to our Staff Secure was requested due to the following:

You arrived at USA on ▮▮▮▮▮▮▮ and were placed under ORR care at Fort Bliss-EIS. After 42 days you were transferred to our program due being involved in physical altercations with other minors and unrespectful behavior toward program ' s clinician.

You will be under a 30 day review period where the team consisting of your assigned CM, CL, Leads, Director of Case Management, Program Director, VP of Immigration Services, GDIT Coordinator and FFS will reassess your case for placement redetermination at that time. (The above has been translated in minor ' s native language for his understanding).

ORR will review your placement, at a minimum, every 30 days to determine whether your placement in a restrictive level of care is still necessary. If you remain in a secure facility or RTC after 30 days, you may request that the ORR Director reconsider your placement.  For more information on this process, please ask your case manager.

If you believe you have not been properly placed or that you have been treated improperly you may also ask a Federal District Court to review your case. You may call a lawyer to assist you.

UAC's acknowledgement of receipt:

| ▮▮▮▮▮▮▮▮▮▮▮ | 06/10/2021 |
|---|---|
| UAC's Signature | Date |

Care provider-issuing official:

| _Tanisu Goreta_ | 06/10/2021 |
|---|---|
| Signature | Date |

Notice of Placement in a Restrictive Setting, rev. 10/26/2018
ORR UAC/P-4



# Fort Bliss EIS
## CLINICAL PROGRESS NOTE



UAC: ███████████████        A#: ███████████

Length of Service: _40 min_   Type of Service: Individual session_ Date: 05/13/2021_____

| Mental Status |
|---|

*Appearance:*
☒ well-groomed  ☐ poor hygiene  ☐ disheveled  ☐ inappropriate attire

*Sensorium:*
☒ person  ☒ place  ☒ time  ☒ situation

*Functioning:*
☒ alert/oriented  ☐ disoriented/incoherent  ☐ confused  ☐ impaired judgement  ☐ impaired
☐ insight  ☐ memory impairment  ☐ abnormal movements  ☐ tremors  ☐ tangential
☐ psychomotor retardation  ☐ weight loss/gain  ☐ tearfulness

*Speech:*
☒ normal  ☐ rapid  ☐ slow  ☐ monotone  ☐ pressured

*Behavior:*
☒ cooperative  ☐ uncooperative  ☐ threatening  ☐ agitated  ☐ aggressive

*Mood/Affect:*
☐ congruent  ☐ blunted/flat  ☐ labile  ☒ depressed/sad  ☐ anxious  ☐ irritable  ☐ angry
☐ hostile  ☒ hopeless/helpless  ☐ worthless  ☐ anhedonia  ☐ euthymic  ☐ euphoria

*Thought Content:*
☐ loosening of association  ☐ flight of ideas
hallucinations:  ☐ auditory  ☐ visual  ☐ olfactory  ☐ tactile
delusions:  ☐ paranoid  ☐ grandiose  ☐ bizarre  ☐ erotic
☒ no suicidal ideation  ☐ suicidal ideation (check all applicable):      ☐ intent
                                                                          ☐ plan/means
                                                                          ☐ history

| Notes |
|---|

An individual session was conducted with the UAC. The UAC expressed feelings of sadness due to wanting to see mother in UAC country of birth. The UAC voiced feelings and emotions related to sadness. Lastly, the UAC reported some UAC's from the same tent are bulling him due to UAC skin color. The UAC was able to vent during the session.

| Did the incident take place at another care provider facility? | ○ Yes ⦿ No | Care Provider Name: | -- Select Provider Name -- | | |
|---|---|---|---|---|---|
| | | Care Provider City: | -- Select Provider City -- | Care Provider State: | -- Select Provider State -- |

| Location of Incident: | Housing Area | Date Reported To Care Provider: | 6/7/2021 | Time Reported To Care Provider: | 11:00 PM |
|---|---|---|---|---|---|
| Other Specify: | Tent #8 | Date Reported To ORR: | 6/8/2021 | Time Reported To ORR: | 01:59 AM |

**Description of Incident (History)**

| Prior Text | Date Updated | Submitted By |
|---|---|---|
| Minor was brought in by Tent Senior Lead after minor punched his tent peer. Senior Lead Zeus Chavira reports that "minor has a history of physical altercations". Minor denied the allegation that he punched another minor and states that "it was an accident". Assaulted minor taken to medical for treatment. A separate SIR will be completed for injured minor ▮▮▮▮▮. | 6/8/2021 1:37:45 PM | yolanda.ochoa |

| Description of Incident: (Full Description of Incident) | Minor was brought in by Tent Senior Lead after minor punched his tent peer. Senior Lead Zeus Chavira reports that "minor has a history of physical altercations". Minor denied the allegation that he punched another minor and states that "it was an accident". Assaulted minor taken to medical for treatment. A separate SIR will be completed for injured minor ▮▮▮▮▮.// ADDENDUM 6/8/2021 Clinician met with minor because he asked clinician if he could change back to Tent 8 as he was moved last night to Tent 3. Clinician asked minor the reason why he was changed tents and minor told clinician that he accidentally hit another minor first because he was pushed from behind. Minor described that he was walking by the other minor and the other minor told him "uno a uno" (one to one) in which minor reports that the other minor was looking to fight him. Minor then explains that someone from behind pushed him towards the other minor and he accidentally hit the minor on the neck when he was pushed. Then minor reports that this is when one of the tent leads arrived to find out what was happening, and he was changed tents. -YO |
|---|---|

| Was the UAC or Anyone Else Injured?: | ⦿ Yes ○ No | Specify: | ▮▮▮▮▮▮▮▮ |
|---|---|---|---|

**Actions Taken**

**Staff Response and Intervention (History)**

| Prior Text | Date Updated | Submitted By |
|---|---|---|
| Clinician spoke with minor about incident and elevated to Lead Clinician Guadalupe Madrid. LMHC contacted APD Leticia Morales and the following recommendations were in place: Minor was recommended to change tents. Senior Lead, Mr. Chavira assisted with process and contacted Project Manager-Servepro, Orlando to inform of tent transfer. | 6/8/2021 1:37:45 PM | yolanda.ochoa |

| Staff Response and Intervention | Clinician spoke with minor about incident and elevated to Lead Clinician Guadalupe Madrid. LMHC contacted APD Leticia Morales and the following recommendations were in place: Minor was recommended to change tents. Senior Lead, Mr. Chavira assisted with process and contacted Project Manager-Servepro, Orlando to inform of tent transfer.// ADDENDUM 6/8/2021 Clinician informed minor that she was unable to change him back tents by as he was moved tents by other staff for a reason. Discussed with minor coping skills to calm himself down as well as ways to avoid future physical altercations with other minors. Reminded minor the rules of the shelter. -YO |
|---|---|

**Follow-up and/or Resolution (History)**

| Prior Text | Date Updated | Submitted By |
|---|---|---|
| Minor was transferred from tent #8 to tent #3 to prevent further altercation and minor was in agreement with move after speaking with clinician and LMHC. Risk Assessment conducted. This minor is calm, no anger towards the other minor. No trigger identified as minor denied the event. Will report to morning Lead Clinician for follow up. | 6/8/2021 1:37:45 PM | yolanda.ochoa |

| Follow-up and/or Resolution: | Minor was transferred from tent #8 to tent #3 to prevent further altercation and minor was in agreement with move after speaking with clinician and LMHC. Risk Assessment conducted. This minor is calm, no anger towards the other minor. No trigger identified as minor denied the event. Will report to morning Lead Clinician for follow up.// ADDENDUM 6/8/2021 Minor will return to mental health services as needed. -YO |
|---|---|

**Recommendations (History)**

| Prior Text | Date Updated | Submitted By |
|---|---|---|
| Transfer of tents completed. APD notified. Senior Leads notified and in agreement. Minor in agreement. Minors no longer together in same tent. | 6/8/2021 1:37:45 PM | yolanda.ochoa |

| Recommendations: | Transfer of tents completed. APD notified. Senior Leads notified and in agreement. Minor in agreement. Minors no longer together in same tent.// ADDENDUM 6/8/2021 Minor will proceed with clinician and case management services while in ORR care. -YO |
|---|---|

**Reporting:**

| Reported To State Licensing: | ○ Yes ⦿ No | Date of Report: | | Time of Report: | |
|---|---|---|---|---|---|
| Was the Incident Investigated? | ○ Yes ⦿ No | Date Notified the Incident will be investigated: | | Case/Confirmation Number: | |

**Explain**

**Progress of Investigation (History)**

**Results/Findings of Investigation (History):**

| Results/Findings of Investigation: | |
|---|---|
| Attach Reports/Findings: | |



*Division of Immigration Services*
*Unidos por un Sueño/ United for one Dream*
*Clinical Progress Note*

**UAC's Name:** ███████████████████
**DOB:** ████████
**UC #:** ████████
**Date of Admission: 6/09/2021**
**Date: 6/11/2021**

This writer met with the minor on the above referenced date. Due to the Covid-19 quarantine restrictions, the initial clinical assessments were completed telephonically. The minor stated that in his home country he was living with his mother, his stepfather, his two sisters, and his great grandmother. The minor shared he left Honduras around ████████████ for a better future to be able to study, and be able to one day work. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ ████ The minor shared he last attended school in 2019 when he graduated the ninth grade. The minor then began to work as a fisherman with his stepfather. Based on how the minor answered the questions, there are no sex or labor trafficking concerns. The minor denied any gang or cartel involvement; illicit drug and/or alcohol use; and problems with authorities. The minor denied any abuse or extortion during the journey or in his country. The minor stated he voluntarily surrendered to U.S. Border Patrol where he spent three days. The minor was then transferred to Ft. Bliss where he spent 42 days and was later transferred to the Unidos Por Un Sueno Program at the Children's Village on 06/09/2021. During the initial clinical assessment, the minor was oriented to all spheres and his affect was reactive and mood congruent. The minor denies presently or ever experiencing any suicidal ideations or desire to self-harm. The minor denies ever experiencing any homicidal ideations, auditory or visual hallucinations. Thus far the minor has acclimated well to the program; he is eating and sleeping well. The minor has been able to follow the program's rules with no difficulties and reports that he feels safe here. The minor did not report any concerns indicative of a mental health condition.

*Catherine H Medina, LMSW*

.
**Signature:** _____  **Title: Bilingual Clinician**

Electronically signed by Catherine Medina on 6/11/2021 4:22:18 PM



*Division of Immigration Services*
*Unidos por un Sueño/ United for one Dream*
*Clinical Progress Note*

**UAC's Name:** ██████████████
**DOB:** ████████
**UC #:** ████████
**Date of Admission: 6/09/2021**
**Date: 6/17/2021**

      This writer met with the minor on the above-referenced date.  The minor presented with pleasant affect and clinically stable. Clinician assessed the minor's emotional well-being and the minor reports eating and sleeping well. The minor continues to report feeling safe and comfortable in our facility. Clinician engaged the minor in an activity during which the minor had to answer questions about himself as a way to get to know him and establish rapport. The minor engaged and enjoyed the activity. Clinician also assessed the minor's understanding of the program's rules and expectations and discussed the significance of them with him. The minor expressed understanding the importance of following the rules and routines of the program. Clinician also assessed the minor's understanding of his reunification case and the minor understands he now has a new sponsor. Clinician assessed the relationship with his new sponsor and the minor reported she is his paternal aunt. A family phone session will be facilitated the week of June 28th.  Thus far the minor has acclimated well to the program. There are no indications of mental health or behavioral concerns at the moment.

*Catherine H Medina, LMSW*

.
**Signature: _____ Title: Bilingual Clinician**

Electronically signed by Catherine Medina on 6/17/2021 2:36:51 PM



*Division of Immigration Services*
*Unidos por un Sueño/ United for one Dream*
*Clinical Progress Note*

**UAC's Name:** ███████████████████
**DOB:** ████████
**A#:** ██████████
**Date of Admission:** 6/9/2021

**Date:** 6/23/2021

Clinician, Stephanie Rosado, provided clinical coverage for assigned clinician, Catherine Medina. Minor was cooperative, calm and engaged during session. He appeared alert and oriented x4 with normal affect and euthymic mood. His speech had normal rate/tone/volume. Minor denied experiencing any mental health concerns and appears to have acclimated well to the milieu. Minor is also engaging in age-appropriate behaviors with his peers and has been incident free since his admission to the program. Minor reported feeling safe in the cottage and supported by the milieu staff.

Clinician conducted a temperature check and encouraged minor to share his name, country of origin and personal interests. A set of questions were typed in folded pieces of paper inside a basket. Minor was encouraged to pick one paper at a time and respond to the selected question. Minor appeared engaged with willingness to participate. The questions were geared towards minor's goals, life purpose, role models, strengths, etc. Minor provided thoughtful answers and was engaged in the activity. Clinician supported minor in exploring his short-term and long-term goals. Minor expressed feeling hopeful to reunify with his aunt who resides in ████. Minor expressed wanting to pursue his goals of becoming a professional soccer player. He stated that his mother and great grandmother have been his role models growing up and have taught him important life lessons. Clinician thanked minor for his participation and honesty in sharing about his life and personal goals. Minor expressed enjoying the activity. Clinician reminded minor of the ongoing supports in the milieu and encouraged him to ask for help, when needed. No concerns were noted throughout the session.

Signature: _____ Title: <u>Bilingual Clinician</u>
Stephanie Rosado, LMSW

Electronically signed by Stephanie Rosado, LMSW

6/23/2021 12:07:03 PM

OMB Control No: 0970-0554
Expiration date: 03/31/2022

a.  The care provider may provide information about the minor to the minor's educational program, medical, mental health, dental and other service providers to the extent that the information is needed for the minor's education, recreation, social development, medical, dental, or mental health treatment.
b.  The care provider must give ORR and its designees, as directed by ORR, unrestricted free access to information about the minor at all times.
c.  All case file information maintained under grants or contracts with the Federal government are the property of the Federal government and are fully accessible to ORR, or any of their duly authorized representatives, in accordance with applicable federal law, regulations, OMB circulars, and ORR policies.

**8. CONTACT WITH THE FAMILY**
The care provider must permit the minor and the minor's family (as well as other individuals at ORR's discretion) to maintain contact through direct visitation, telephone calls, mail, and gifts under the terms and conditions specified by applicable law, regulations, and ORR policies.

**9. SCHOOL PROGRAMS AND EXTRACURRICULAR ACTIVITIES**
The care provider may authorize the minor to participate in routine school programs as well as social and extracurricular activities that do not involve an unusual risk of injury to the minor unless otherwise specified by ORR.

**10. REASON FOR PLACEMENT**
An unaccompanied minor who meets the definition of an unaccompanied alien child, 6 U.S.C. 279(g)(2), and is in Federal custody by reason of his or her immigration status.

**11. TIME IN CARE**
The care provider's care giving authority will terminate upon the minor's physical discharge from the care provider's custody. The care provider will still have legal obligations for maintaining the minor's property if it is still in the care provider's custody and case file as directed by ORR.

**12. FINANCIAL**
ORR agrees to provide financially for the care of said minor according to the financial agreement between ORR and care provider or subsequent agreements agreed to by ORR and the care provider.

**13. RESTRAINTS**
The care provider must exhaust preventive, de-escalative and less restrictive techniques before it uses any type of restraint. Should physical restraint be necessary for the safety of the minor or others, the care provider must use behavior intervention techniques approved by ORR.  All use of restraints must be justified and documented.

_____
Signature - Authorized Representative of Care Provider

_____
Signature - Official Representative
**Office of Refugee Resettlement
Administration for Children and Families
U.S. Department of Health and Human Services**

06/09/2021
Date

914-693-0600
Telephone Number

06/09/2021
Date

202-401-5709
Telephone Number

THE PAPERWORK REDUCTION ACT OF 1995 (Pub. L. 104.13) Public reporting burden for this collection of information is estimated to average .10/hour per response, including the time for reviewing instructions, gathering and maintaining the data needed, and reviewing the collection of information. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.

DOOR_NMM_0008

# EXHIBIT 6

OMB Control No: 0970-0554
Expiration date: 03/31/2022

a.  The care provider may provide information about the minor to the minor's educational program, medical, mental health, dental and other service providers to the extent that the information is needed for the minor's education, recreation, social development, medical, dental, or mental health treatment.

b.  The care provider must give ORR and its designees, as directed by ORR, unrestricted free access to information about the minor at all times.

c.  All case file information maintained under grants or contracts with the Federal government are the property of the Federal government and are fully accessible to ORR, or any of their duly authorized representatives, in accordance with applicable federal law, regulations, OMB circulars, and ORR policies.

## 8. CONTACT WITH THE FAMILY
The care provider must permit the minor and the minor's family (as well as other individuals at ORR's discretion) to maintain contact through direct visitation, telephone calls, mail, and gifts under the terms and conditions specified by applicable law, regulations, and ORR policies.

## 9. SCHOOL PROGRAMS AND EXTRACURRICULAR ACTIVITIES
The care provider may authorize the minor to participate in routine school programs as well as social and extracurricular activities that do not involve an unusual risk of injury to the minor unless otherwise specified by ORR.

## 10. REASON FOR PLACEMENT
An unaccompanied minor who meets the definition of an unaccompanied alien child, 6 U.S.C. 279(g)(2), and is in Federal custody by reason of his or her immigration status.

## 11. TIME IN CARE
The care provider's care giving authority will terminate upon the minor's physical discharge from the care provider's custody. The care provider will still have legal obligations for maintaining the minor's property if it is still in the care provider's custody and case file as directed by ORR.

## 12. FINANCIAL
ORR agrees to provide financially for the care of said minor according to the financial agreement between ORR and care provider or subsequent agreements agreed to by ORR and the care provider.

## 13. RESTRAINTS
The care provider must exhaust preventive, de-escalative and less restrictive techniques before it uses any type of restraint. Should physical restraint be necessary for the safety of the minor or others, the care provider must use behavior intervention techniques approved by ORR.  All use of restraints must be justified and documented.

_____
Signature - Authorized Representative of Care Provider

_____
Signature - Official Representative
**Office of Refugee Resettlement**
**Administration for Children and Families**
**U.S. Department of Health and Human Services**

| 05/04/2021 | 914-693-0600 |
|---|---|
| Date | Telephone Number |

| 05/04/2021 | 202-401-5709 |
|---|---|
| Date | Telephone Number |

THE PAPERWORK REDUCTION ACT OF 1995 (Pub. L. 104.13) Public reporting burden for this collection of information is estimated to average .10/hour per response, including the time for reviewing instructions, gathering and maintaining the data needed, and reviewing the collection of information. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.

DOOR_MLM_0091

Notice of Placement in a Restrictive Setting

Summary of placement decision or case review (additional pages may be added):

Today you are being notified for the reason of your placement to the Children ' s Village Staff Secure. You arrived yesterday 05/04/2021 to our facility.  Transfer to our Staff Secure was requested due to the following:

You arrived to USA on ███████ and was placed under ORR care at Fort Bliss -EIS were you spent a total of 33 days. It was reported that you got into a fistfight while playing card games with another minor. Per the report, you punched the other minor on the right eye side.

You will be under a 30 day review period where the team consisting of your assigned CM, CL, Leads, Director of Case Management, Program Director, VP of Immigration Services, GDIT Coordinator and FFS will reassess your case for placement redetermination at that time. (The above has been translated in minor ' s native language for his understanding).

ORR will review your placement, at a minimum, every 30 days to determine whether your placement in a restrictive level of care is still necessary. If you remain in a secure facility or RTC after 30 days, you may request that the ORR Director reconsider your placement.  For more information on this process, please ask your case manager.

If you believe you have not been properly placed or that you have been treated improperly you may also ask a Federal District Court to review your case. You may call a lawyer to assist you.

UAC's acknowledgement of receipt:

████████████████      05/05/2021
_____      _____
UAC's Signature          Date

Care provider-issuing official:

_Zaniria Xxxxta_____      05/05/2021
_____      _____
Signature                Date

Notice of Placement in a Restrictive Setting, rev. 10/26/2018
ORR UAC/P-4

| | |
|---|---|
| **Legal screening completed?** | ⦿ Yes ○ No |
| **Date:** | 05/10/2021 |
| **Any possible legal relief identified?** | ○ Yes ⦿ No |
| **Specify:** | |

## Mental Health

Provide a short summary of the UAC's current functioning:

Date of Discharge 5/19/21

5/13/21-The clinician conducted a telephonic individual therapy session. During the clinical session, the clinician revisited the Child Abuse and Neglect form, CAN and provided psychoeducation on the various forms of abuse that exist. The minor reported, she understood.

5/10/21-6 Day Case Review

The clinician conducted a telephonic individual therapy session. The minor maintained a cooperative attitude during the session. His mood and affect were congruent. The minor reported feeling emotionally and mentally stable. There are no mental and behavioral health concerns at this time. He reported normal sleeping and eating patterns. The minor continues to acclimate well to the program. The minor is receiving individual therapy sessions once a week. The modality used during the session was psychotherapy. In addressing SIR Event ██████ dated 4/24/21 (UAC got into fistfight because of card games), it was clarified by the minor that he acted in self defense.

## Psychological Evaluation

**Date of Evaluation:**

**Evaluator:**

**Axis I:**

**Axis II:**

**Axis III:**

**Axis IV:**

**Axis V:**

**Summary of Recommendations:**

## Trafficking

**Who planned/organized your journey?**

The minor reported he is here to reunify with his brother, ██████ who resides in the state of Arizona.

**What were you told about the arrangements before the journey?**

The minor reported he was told to take care of himself.

**Did the arrangements change during the journey?**                                ○ ⦿
                                                                                     Yes No

**If yes, how?**

The minor denied any changes during journey.

**Does your family owe money to anyone for the journey?**                          ○ ⦿
                                                                                     Yes No

**If yes, how much?**

**Whom is the money owed?**

The minor denied a debt for the journey.

**Who is expected to pay?**

N/A

**What do you expect to happen if payment is not made?**

N/A

### Coercion Indicators

**Did anyone threaten your or your family?**                                       ○ ⦿
                                                                                     Yes No

**If yes, who made the threats?**

The minor denied any coercion on and before the journey.

**Were you ever physically harmed?**                                              ○ ⦿
                                                                                     Yes No

**If yes, how?**

N/A

**Was anyone around you ever physically harmed?**                                 ○ ⦿
                                                                                     Yes No

**If yes, who?**

N/A

**Were you ever held against your will?**                                         ○ ⦿
                                                                                     Yes No

**If yes, where?**

N/A

**Did anything bad happen to anyone else in this situation or anyone else who tried to leave?**   ○ ⦿
                                                                                     Yes No

| | | |
|---|---|---|
| ███ began using correct grammar and spelling in his native language. | | |

| Mathematics | Initial | Final |
|---|---|---|
| Demonstrates an understanding of mathematical concepts | 1 | 2 |
| Solves problems with precision and accuracy | 1 | 2 |
| Solves problems in multiple ways and explains solutions | 1 | 2 |
| Comments: informal assessment indicates that the student is able to do basic math operations at grade level. <br> ███ improved in understanding basic mathematical concepts such as division and multiplication. | | |

| English as a New Language | Initial | Final |
|---|---|---|
| Understands key words and phrases | 1 | 2 |
| Responds to simple questions in context | 1 | 2 |
| Approximates correct pronunciation in English | 1 | 2 |
| Comments: ███ indicated that he does not know any English. <br> ███ developed limited vocabulary in his new language such as pronouns and the alphabet. | | |

| Academic and Personal Behaviors | Initial | Final |
|---|---|---|
| Manages time and consistently demonstrates effort independently to achieve goals | S | G |
| Works in an organized manner | S | G |
| Persists through challenges to complete a task by trying different strategies | S | G |
| Asks for help when needed | S | G |
| Respects school rules and works well in the school community | S | G |
| Comments: ███ is shown to work in an organized manner. <br> ███ was very good at asking for help when needed. | | |

| Personal and Social Development | Initial | Final |
|---|---|---|
| Gets along with others | S | G |
| Shows respect | S | G |
| Carries out responsibility | S | G |
| Comments: ███ shows a lot respect towards others. <br> ███ is a young man who got along with his peers. | | |

**Comments and Recommendations:**

███ is a student from Guatemala whose native language is Spanish. Per the information provided by ███ at the time of admission, he stated that he completed the 3rd grade in his native land. ███ will benefit from receiving academic instruction at grade level to help him become more proficient in all subject areas. ███ will participate in daily classes that includes history, science, ENL and math.

**███ was able to learn basic English and shows motivation to learn more of the second language. ███ was a pleasure to work with and is a motivated young man.**

Andres R. Susu

**Senior Transitional Educator**

**NOTE: FINAL COMMENTS ARE IN BOLD.**

OMB Control No: 0970-0554
Expiration date: 03/31/2022

a.  The care provider may provide information about the minor to the minor's educational program, medical, mental health, dental and other service providers to the extent that the information is needed for the minor's education, recreation, social development, medical, dental, or mental health treatment.

b.  The care provider must give ORR and its designees, as directed by ORR, unrestricted free access to information about the minor at all times.

c.  All case file information maintained under grants or contracts with the Federal government are the property of the Federal government and are fully accessible to ORR, or any of their duly authorized representatives, in accordance with applicable federal law, regulations, OMB circulars, and ORR policies.

**8. CONTACT WITH THE FAMILY**
The care provider must permit the minor and the minor's family (as well as other individuals at ORR's discretion) to maintain contact through direct visitation, telephone calls, mail, and gifts under the terms and conditions specified by applicable law, regulations, and ORR policies.

**9. SCHOOL PROGRAMS AND EXTRACURRICULAR ACTIVITIES**
The care provider may authorize the minor to participate in routine school programs as well as social and extracurricular activities that do not involve an unusual risk of injury to the minor unless otherwise specified by ORR.

**10. REASON FOR PLACEMENT**
An unaccompanied minor who meets the definition of an unaccompanied alien child, 6 U.S.C. 279(g)(2), and is in Federal custody by reason of his or her immigration status.

**11. TIME IN CARE**
The care provider's care giving authority will terminate upon the minor's physical discharge from the care provider's custody. The care provider will still have legal obligations for maintaining the minor's property if it is still in the care provider's custody and case file as directed by ORR.

**12. FINANCIAL**
ORR agrees to provide financially for the care of said minor according to the financial agreement between ORR and care provider or subsequent agreements agreed to by ORR and the care provider.

**13. RESTRAINTS**
The care provider must exhaust preventive, de-escalative and less restrictive techniques before it uses any type of restraint. Should physical restraint be necessary for the safety of the minor or others, the care provider must use behavior intervention techniques approved by ORR.  All use of restraints must be justified and documented.

_____

Signature - Authorized Representative of Care Provider

_Cynthia_

_____

Signature - Official Representative
**Office of Refugee Resettlement
Administration for Children and Families
U.S. Department of Health and Human Services**

Date

Telephone Number

Date    05/28/2021

Telephone Number    202-401-5709

THE PAPERWORK REDUCTION ACT OF 1995 (Pub. L. 104.13) Public reporting burden for this collection of information is estimated to average .10/ hour per response, including the time for reviewing instructions, gathering and maintaining the data needed, and reviewing the collection of information. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.

DOOR_MLM_0005



**U.S. Department of Health and Human Services**

**ADMINISTRATION FOR CHILDREN AND FAMILIES**
370 L'Enfant Promenade, S.W.
Washington, D.C. 20447

**Office of Refugee Resettlement**
**Division of Children's Services**
**NOTICE OF PLACEMENT IN SECURE OR STAFF SECURE FACILITY**

| Minor's Name | Alien #: | Date of Birth | Country of Birth | Facility Name | Facility Type |
|---|---|---|---|---|---|
| ▊▊▊ | ▊▊▊ | ▊▊▊ | Guatemala | Ft. Bliss - EIS | Emergency Intake Sites |

This is to provide you NOTICE of the reasons for your placement in a secure or staff-secure facility. Your are in the care and custody of the Office of Refugee Resettlement/Division of Children's Services (ORR/DCS). ORR/DCS will not place a minor in a secure or staff-secure facility if there are less restrictive placement options available and appropriate. However, under certain conditions listed below, ORR/DCS may place minors in a secure or staff-secure facility.

1. You are considered to be a flight risk.
2. You have committed or threatened to commit a violent or malicious act toward yourself or other(s).
3. You have been convicted of a crime as an adult.
4. You have been adjudicated as a delinquent.
5. You have engaged in serious, unacceptable disruptive behavior while in a licensed program.
6. You are chargeable with a crime or delinquent offense.
7. You are in criminal or delinquency proceedings.
8. For your own safety.
9. There is an emergency influx of minors into the United States and there are no alternative placement options at this time. ORR will place you in a shelter care facility as expeditiously as possible.

If you have any questions or concerns regarding this placement, please discuss them with the facility case management staff and/or your attorney of record. Any minor who disagrees with the ORR/DCS decision may correspond directly with the ORR/ DCS Division Director. Additionally, the minor may seek judicial review in any United States District Court with jurisdiction and venue over the matter to challange the placement decision.

_____     05/28/2021
ORR Director Signature                                            Date

_____     _____
Facility Staff/Witness: Name/Signature/Position          Date

_____     _____
Minor's Signature/Name                                        Date

CC: Minor
    ORR/DCS Facility File
    ORR/DCS Field Coordinator
    ORR/DCS

ORR/DCS Notice of Placement
Last Revised 2/1/05

# EXHIBIT 7

OMB Control No: 0970-0554
Expiration date: 03/31/2022

a.  The care provider may provide information about the minor to the minor's educational program, medical, mental health, dental and other service providers to the extent that the information is needed for the minor's education, recreation, social development, medical, dental, or mental health treatment.

b.  The care provider must give ORR and its designees, as directed by ORR, unrestricted free access to information about the minor at all times.

c.  All case file information maintained under grants or contracts with the Federal government are the property of the Federal government and are fully accessible to ORR, or any of their duly authorized representatives, in accordance with applicable federal law, regulations, OMB circulars, and ORR policies.

**8. CONTACT WITH THE FAMILY**
The care provider must permit the minor and the minor's family (as well as other individuals at ORR's discretion) to maintain contact through direct visitation, telephone calls, mail, and gifts under the terms and conditions specified by applicable law, regulations, and ORR policies.

**9. SCHOOL PROGRAMS AND EXTRACURRICULAR ACTIVITIES**
The care provider may authorize the minor to participate in routine school programs as well as social and extracurricular activities that do not involve an unusual risk of injury to the minor unless otherwise specified by ORR.

**10. REASON FOR PLACEMENT**
An unaccompanied minor who meets the definition of an unaccompanied alien child, 6 U.S.C. 279(g)(2), and is in Federal custody by reason of his or her immigration status.

**11. TIME IN CARE**
The care provider's care giving authority will terminate upon the minor's physical discharge from the care provider's custody. The care provider will still have legal obligations for maintaining the minor's property if it is still in the care provider's custody and case file as directed by ORR.

**12. FINANCIAL**
ORR agrees to provide financially for the care of said minor according to the financial agreement between ORR and care provider or subsequent agreements agreed to by ORR and the care provider.

**13. RESTRAINTS**
The care provider must exhaust preventive, de-escalative and less restrictive techniques before it uses any type of restraint. Should physical restraint be necessary for the safety of the minor or others, the care provider must use behavior intervention techniques approved by ORR.  All use of restraints must be justified and documented.

_____
Signature - Authorized Representative of Care Provider

_____
Signature - Official Representative
**Office of Refugee Resettlement**
**Administration for Children and Families**
**U.S. Department of Health and Human Services**

| 05/06/2021 | 914-693-0600 |
| --- | --- |
| Date | Telephone Number |

| 05/06/2021 | 202-401-5709 |
| --- | --- |
| Date | Telephone Number |

THE PAPERWORK REDUCTION ACT OF 1995 (Pub. L. 104.13) Public reporting burden for this collection of information is estimated to average .10/ hour per response, including the time for reviewing instructions, gathering and maintaining the data needed, and reviewing the collection of information. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.

Notice of Placement in a Restrictive Setting

Summary of placement decision or case review (additional pages may be added):

Today you are being notified for the reason of your placement to the Children ' s Village Staff Secure. You arrived today 05/06/2021 to our facility.  Transfer to our Staff Secure was requested due to the following:

You arrived to USA during the month of ▮▮▮▮▮▮, and was placed under ORR care at Fort Bliss − EIS were you spent a total of 16 days. Per the information provided by Fort Bliss − EIS, you were recruiting other minors in the tent, and those minors had to ask you for " permission " to leave the tent. However, no SIRs (Significant Incident Reports) were recorder with such allegations.

You will be under a 30 day review period where the team consisting of your assigned CM, CL, Leads, Director of Case Management, Program Director, VP of Immigration Services, GDIT Coordinator and FFS will reassess your case for placement redetermination at that time. (The above has been translated in minor ' s native language for his understanding).

ORR will review your placement, at a minimum, every 30 days to determine whether your placement in a restrictive level of care is still necessary. If you remain in a secure facility or RTC after 30 days, you may request that the ORR Director reconsider your placement.  For more information on this process, please ask your case manager.

If you believe you have not been properly placed or that you have been treated improperly you may also ask a Federal District Court to review your case. You may call a lawyer to assist you.

UAC's acknowledgement of receipt:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮                                    05/06/2021

UAC's Signature                                          Date

Care provider-issuing official:

_Tania Lz/Oñeta_                                          05/06/2021

Signature                                                   Date

Notice of Placement in a Restrictive Setting, rev. 10/26/2018
ORR UAC/P-4

| | |
|---|---|
| **Legal screening completed?** | ○ Yes ◉ No |
| **Date:** | |
| **Any possible legal relief identified?** | ○ Yes ◉ No |
| **Specify:** | Minor reported that he did not meet with any attorney in prior facility. LSP the Door will conduct KYR meeting with the minor. Pending date. |

## Mental Health

Provide a short summary of the UAC's current functioning:

6 day update- the minor is a transfer from Ft Bliss EIS, minor denies any mental or behavioral health concerns, the minor denies any substance and reports to be of faith. The minor is acclimating well to the program and there are no concerns at the moment regarding him.

5/17/2021- Minor remain stable, there are no mental health concerns, there are no concerns regarding minors behavior as he continues to be appropriate within the milieu, no inhouse reports nor any SIRS were merited or previously documented.

## Psychological Evaluation

**Date of Evaluation:**

**Evaluator:**

**Axis I:**

**Axis II:**

**Axis III:**

**Axis IV:**

**Axis V:**

**Summary of Recommendations:**

## Trafficking

**Who planned/organized your journey?**

The minor traveled to the US in search of a new life, minor shared that in COO he was living with both parents ████████████████████████████. As per minor he is seeking reunification with his uncle who lives in ███████. As per minor he did not travel with a foot guide or a coyote, the minor was actually in fact traveling on his own with a group of other migrants. The minor denies any harm or adverse experiences while in transit.

**What were you told about the arrangements before the journey?**

minor denies

**Did the arrangements change during the journey?** ○ Yes ◉ No

**If yes, how?**

minor denies

**Does your family owe money to anyone for the journey?** ○ Yes ◉ No

**If yes, how much?**

0

**Whom is the money owed?**

no debt

**Who is expected to pay?**

no debt

**What do you expect to happen if payment is not made?**

no debt

### Coercion Indicators

**Did anyone threaten your or your family?** ○ Yes ◉ No

**If yes, who made the threats?**

There are no Coercive Indicators

**Were you ever physically harmed?** ○ Yes ◉ No

**If yes, how?**

There are no Coercive Indicators

**Was anyone around you ever physically harmed?** ○ Yes ◉ No

**If yes, who?**

There are no Coercive Indicators

**Were you ever held against your will?** ○ Yes ◉ No

**If yes, where?**

There are no Coercive Indicators

**Did anything bad happen to anyone else in this situation or anyone else who tried to leave?** ○ Yes ◉ No

Additional sponsor information:

████████████████████████████

| Sponsor Sponsored UACs: | Name of UAC | A Number | Relationship | Facility sponsored from |
|---|---|---|---|---|
| | | | | |

**Mandatory TVPRA 2008**

Based on the most recent trafficking screening, is the child a victim of a severe form of trafficking in persons? (Indicate 'yes' only if ORR has issued a trafficking eligibility letter for UAC.)    ○ Yes ⦿ No

Date eligibility letter issued:

Based on the most recent screening for disabilities, does the child have a disability as defined in section 3 of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12102(1)?    ○ Yes ⦿ No

If yes, specify disability:

Based on the most recent screening, has the child been a victim of physical or sexual abuse under circumstances that indicate that the child's health or welfare has been significantly harmed or threatened?    ○ Yes ⦿ No

If yes, provide a short summary:

Based on the sponsor risk assessment, does the sponsor clearly present a risk of abuse, maltreatment, exploitation, or trafficking to the UAC?    ○ Yes ⦿ No

If yes, provide a short summary:
CM will update

**Recommendations**

Discharge:    ○ Yes ⦿ No

Sponsor:

Discharge w/ Post Release:    ○ Yes ⦿ No

Date of PR referral:

Refer to Home Study    ○ Yes ⦿ No

Reason for HS referral:

**Care Plan**

Reunification:   CM; Denia Rodriguez completed CR with sponsor on 5/14/2021. Sponsor check with Sponsor Photo Id - ARI sent to PSC on 5-14-2021. Minor is doing well in program and reported being happy that his brother has been reunified with his paternal uncle yesterday 5/14/2021. 5-12-2021 CAT 2 -Sponsor / Paternal Uncle; ████████████ ████ residing in ██████████ . On 5-12-2021 CM,, Denia Rodriguez completed case file and reviewed documents. Completing necessary documents and preparing case to submit .

Legal:   CM contacted Immigration Hotline on 5-12-2021. Case has not been filed with Immigration Court.

Mental Health:   Minor is stable mentally and behaviorally. NO concerns.

**Certification**

Signature:

Date:
5/17/2021

Print Name:
Fanny Glassberg,
MS,MSW

Title:
Bilingual Clinician



**Division of Immigration Services**
**Unidos Por Un Sueño/ United For A Dream US Program**

Case Manager Progress Notes
05/19/2021

# Discharge Summary

**Name:** ████████████████
**A#** ████████
**DOB:** ██████████
**DOA:** 05/06/2021
**Country of Origin:** Guatemala

UC ████████████ spent --- days in Staff Secure. During his stay ████████ was very respectful, followed all program rules and engaged well with his peers and staff. Paternal Uncle was very supportive, maintained communication during minor's stay in program and provided all documentations on a timely manner. ████████ was discharged on Wednesday May 19, 2021 to his paternal uncle; ████████████████ ████████ residing in ████████████████████████████

**Case Manager**
**Denia Rodriguez**

July 31, 2020

**Comments:** temporary waiver of background check requirements for Category 2 adult household members (HHM) and adult caregivers to expedite the release process of Category 2 eligible cases". • Proof of ability to provide housing, food, education: The sponsor adequately demonstrated that he is able to support the minor financially. • Proof of address (Wells Fargo Bank Statement), Sponsor address was verified by with Smarty Street, Google Maps and Google Earth. • A completed FRA packet. Criminal For the Sponsor, (███████████████ / Paternal Uncle): • An Internet Background Check was conducted on 05/13/2021; results came back with no record. • National Sex Offender check conducted on 05/14/2021. • State Sex Offender check conducted on 05/14/2021. • Sponsor was FP on 05/06/2021. Pending FP results. • CA/N checks are not required for this case as this is a CAT 2B that does not require a home study and no additional concerns were identified. For the HHM and adult caregiver: Background checks, fingerprints and CA/N checks are not required as per ORR field guidance #11, "Guidance provides a temporary waiver of background check requirements for Category 2 adult household members (HHM) and adult caregivers to expedite the release process of Category 2 eligible cases". Birth Certificates: All birth certificates needed to prove the sponsor-UC relationship were received on 05/10/2021. Sponsor is confirmed to be the UC's paternal uncle. Birth certificates received are: UC's BC, ███████████████████ternal grandparents BC. Prior Sponsorship: ███████████████████ sponsored UC's brother ███████████████████████ who was discharged from Fort Bliss EIS on 05/11/2021 and reunited with sponsor on 05/13/2021. Sponsor was flagged in the UC portal on 05/17/2021. No prior address found. Sponsor address was flagged in the UC portal on 05/13/2021. Contact with primary caregiver in COO: Spoke with UC's Father; ██████████████ on Monday 05/17/2021. CM was able to verify information provided by the UC and the sponsor. Sponsor resources: The following emergency contact information was provided to the sponsor: 911, ORR parent and sponsor hotline, information regarding health care and vaccinations, department of family and protective services in the state of Florida, and National Human Trafficking resource center. CM assisted the sponsor in identifying the following resources for the minor: ████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████ ████████████████████████████████████████████████████████████ Care Plan: In the case that the sponsor is no longer able to care for the minor, he will be left in the care of the sponsor's nephew; ██████████████████████ who is also minor's 1 cousin; who also resides in ████████████████, as per sponsor closed to his house. Housing: Sponsor owns her own house with 2 bedrooms, 1 bathroom, 1 dining room, 1 living room and a huge backyard. According to the sponsor his house is very spacious. Minor will be provided with ORRNCC wallet card, flyer, and fraud warning upon being released. Medical: Initial Medical Exam was completed by prior facility. On 5/8/2021 minor was implanted with a PPD; results were read negative on 5/9/2021. COVID 19 Pamphlet will be provided to sponsor with recommendations. UC has received temperature checks on a daily basis, and it has never been reported that she has had a fever. No additional medical concerns have been noted in the Medical tab of the UC portal for UC ██████████████ male of 16y/o. Facility is recommending Straight Release for this minor.
_____ Identification along with all supporting documentation and assessments have been completed and uploaded onto ucportal. Sponsor's parents BC • Minor's father BC Facility is recommending a Straight Release for this case.

| | | | |
|---|---|---|---|
| **Is Attorney Contacted?:** | ○ Yes ◉ No | | |
| **Case Manager Recommendation after Home Study:** | | **Case Manager Recommendation:** | Approve Straight Release |
| | | **If Applicable, Cancellation Reason:** | |
| **Updated Date/Time:** | 5/17/2021 1:22 PM | **Updated User:** | Denia Rodriguez |

| Case Coordinator Recommendation | | | |
|---|---|---|---|
| **Case Coordinator Name:** | Jennifer Gonzalez | | |
| **Comments:** | CC recommends that the minor is release with PRS along with a Safety Discharge Plan to his paternal uncle in ██████████. PRS are being requested as the minor was step up to Staff Secure due to concerns of possible gang activity. As per the program the minor denied the allegations and is currently stable. PRS can help provide the sponsor support should the minor begin to should concerns in the community. A search was conducted in the UAC portal and the sponsor or his address has not been used in a previous sponsorship however the sponsor did recently sponsored the minor's brother who minor travelled with. Prior to release, CC recommends that the minor's sponsor is made aware of the reason why the minor was step up to CV SS to support the minor should any issues arise once he is release into the community. CC encourages that a family session is held with both the sponsor and minor to discuss the importance of the minor attending school and his future court dates. That they are also reminded about the EOIR and ORR hotlines, and are encouraged to call if they have any questions or concerns after UC is released, or if they want to request assistance. | | |
| **Recommendation:** | Approve with Post-Release Only Services | **Recommendation after Home Study:** | |
| **Sponsorship Cancellation Recommendation Reason:** | | | |
| **Updated Date/Time:** | 5/17/2021 4:00 PM | **Updated User:** | Jennifer Gonzalez |

| ORR Decision | | | |
|---|---|---|---|
| **Comments:** | case meets ORR requirements | | |
| **ORR Decision:** | Approve with Post-Release Only Services | **Home Study Status:** | |
| **ORR Decision after Home Study:** | | | |
| **Updated Date/Time:** | 5/17/2021 6:32 PM | **Updated User:** | Kristopher Cantu |

| Program Release Dates | | | |
|---|---|---|---|
| **Release Approved Date:** | 5/17/2021 | **Release Scheduled Date:** | 5/19/2021 |
| **Release Approved by:** | Kristopher Cantu | | |
| **The Next Scheduled Court Appearance for This Juvenile is:** | | | |
| **Date Sponsor was Notified that They Must Inform the Immigration Court Directly of any Further Change of Address:** | 4/12/2021 | | |
| **Reason for Less Than 24 Hours Notice to ICE, if Applicable:** | | | |

OMB Control No: 0970-0554
Expiration date: 03/31/2022

a.  The care provider may provide information about the minor to the minor's educational program, medical, mental health, dental and other service providers to the extent that the information is needed for the minor's education, recreation, social development, medical, dental, or mental health treatment.
b.  The care provider must give ORR and its designees, as directed by ORR, unrestricted free access to information about the minor at all times.
c.  All case file information maintained under grants or contracts with the Federal government are the property of the Federal government and are fully accessible to ORR, or any of their duly authorized representatives, in accordance with applicable federal law, regulations, OMB circulars, and ORR policies.

**8. CONTACT WITH THE FAMILY**
The care provider must permit the minor and the minor's family (as well as other individuals at ORR's discretion) to maintain contact through direct visitation, telephone calls, mail, and gifts under the terms and conditions specified by applicable law, regulations, and ORR policies.

**9. SCHOOL PROGRAMS AND EXTRACURRICULAR ACTIVITIES**
The care provider may authorize the minor to participate in routine school programs as well as social and extracurricular activities that do not involve an unusual risk of injury to the minor unless otherwise specified by ORR.

**10. REASON FOR PLACEMENT**
An unaccompanied minor who meets the definition of an unaccompanied alien child, 6 U.S.C. 279(g)(2), and is in Federal custody by reason of his or her immigration status.

**11. TIME IN CARE**
The care provider's care giving authority will terminate upon the minor's physical discharge from the care provider's custody. The care provider will still have legal obligations for maintaining the minor's property if it is still in the care provider's custody and case file as directed by ORR.

**12. FINANCIAL**
ORR agrees to provide financially for the care of said minor according to the financial agreement between ORR and care provider or subsequent agreements agreed to by ORR and the care provider.

**13. RESTRAINTS**
The care provider must exhaust preventive, de-escalative and less restrictive techniques before it uses any type of restraint. Should physical restraint be necessary for the safety of the minor or others, the care provider must use behavior intervention techniques approved by ORR.  All use of restraints must be justified and documented.

_____

Signature - Authorized Representative of Care Provider     Date          Telephone Number

_____

Signature - Official Representative     Date          Telephone Number

05/25/2021          202-401-5709

**Office of Refugee Resettlement**
**Administration for Children and Families**
**U.S. Department of Health and Human Services**

THE PAPERWORK REDUCTION ACT OF 1995 (Pub. L. 104.13) Public reporting burden for this collection of information is estimated to average .10/hour per response, including the time for reviewing instructions, gathering and maintaining the data needed, and reviewing the collection of information. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.



**ADMINISTRATION FOR CHILDREN AND FAMILIES**
**370 L'Enfant Promenade, S.W.**
**Washington, D.C. 20447**

U.S. Department of Health and Human Services

**Office of Refugee Resettlement**
**Division of Children's Services**
**NOTICE OF PLACEMENT IN SECURE OR STAFF SECURE FACILITY**

| Minor's Name | Alien #: | Date of Birth | Country of Birth | Facility Name | Facility Type |
|---|---|---|---|---|---|
| ▮ | ▮ | ▮ | Guatemala | Ft. Bliss - EIS | Emergency Intake Sites |

This is to provide you NOTICE of the reasons for your placement in a secure or staff-secure facility. Your are in the care and custody of the Office of Refugee Resettlement/Division of Children's Services (ORR/DCS). ORR/DCS will not place a minor in a secure or staff-secure facility if there are less restrictive placement options available and appropriate. However, under certain conditions listed below, ORR/DCS may place minors in a secure or staff-secure facility.

1. You are considered to be a flight risk.
2. You have committed or threatened to commit a violent or malicious act toward yourself or other(s).
3. You have been convicted of a crime as an adult.
4. You have been adjudicated as a delinquent.
5. You have engaged in serious, unacceptable disruptive behavior while in a licensed program.
6. You are chargeable with a crime or delinquent offense.
7. You are in criminal or delinquency proceedings.
8. For your own safety.
9. There is an emergency influx of minors into the United States and there are no alternative placement options at this time. ORR will place you in a shelter care facility as expeditiously as possible.

If you have any questions or concerns regarding this placement, please discuss them with the facility case management staff and/or your attorney of record. Any minor who disagrees with the ORR/DCS decision may correspond directly with the ORR/ DCS Division Director. Additionally, the minor may seek judicial review in any United States District Court with jurisdiction and venue over the matter to challange the placement decision.

_Signature_                                          05/25/2021

_____          _____
ORR Director Signature                              Date

_____          _____
Facility Staff/Witness: Name/Signature/Position    Date

_____          _____
Minor's Signature/Name                              Date

CC: Minor
    ORR/DCS Facility File
    ORR/DCS Field Coordinator
    ORR/DCS

ORR/DCS Notice of Placement
Last Revised 2/1/05

# EXHIBIT  8

OMB Control No: 0970-0554
Expiration date: 03/31/2022

a.  The care provider may provide information about the minor to the minor's educational program, medical, mental health, dental and other service providers to the extent that the information is needed for the minor's education, recreation, social development, medical, dental, or mental health treatment.
b.  The care provider must give ORR and its designees, as directed by ORR, unrestricted free access to information about the minor at all times.
c.  All case file information maintained under grants or contracts with the Federal government are the property of the Federal government and are fully accessible to ORR, or any of their duly authorized representatives, in accordance with applicable federal law, regulations, OMB circulars, and ORR policies.

**8. CONTACT WITH THE FAMILY**
The care provider must permit the minor and the minor's family (as well as other individuals at ORR's discretion) to maintain contact through direct visitation, telephone calls, mail, and gifts under the terms and conditions specified by applicable law, regulations, and ORR policies.

**9. SCHOOL PROGRAMS AND EXTRACURRICULAR ACTIVITIES**
The care provider may authorize the minor to participate in routine school programs as well as social and extracurricular activities that do not involve an unusual risk of injury to the minor unless otherwise specified by ORR.

**10. REASON FOR PLACEMENT**
An unaccompanied minor who meets the definition of an unaccompanied alien child, 6 U.S.C. 279(g)(2), and is in Federal custody by reason of his or her immigration status.

**11. TIME IN CARE**
The care provider's care giving authority will terminate upon the minor's physical discharge from the care provider's custody. The care provider will still have legal obligations for maintaining the minor's property if it is still in the care provider's custody and case file as directed by ORR.

**12. FINANCIAL**
ORR agrees to provide financially for the care of said minor according to the financial agreement between ORR and care provider or subsequent agreements agreed to by ORR and the care provider.

**13. RESTRAINTS**
The care provider must exhaust preventive, de-escalative and less restrictive techniques before it uses any type of restraint. Should physical restraint be necessary for the safety of the minor or others, the care provider must use behavior intervention techniques approved by ORR.  All use of restraints must be justified and documented.

Signature - Authorized Representative of Care Provider                     Date                     Telephone Number

Signature - Official Representative                     Date: 05/25/2021                     Telephone Number: 202-401-5709
**Office of Refugee Resettlement**
**Administration for Children and Families**
**U.S. Department of Health and Human Services**

THE PAPERWORK REDUCTION ACT OF 1995 (Pub. L. 104.13) Public reporting burden for this collection of information is estimated to average .10/hour per response, including the time for reviewing instructions, gathering and maintaining the data needed, and reviewing the collection of information. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.



**U.S. Department of Health and Human Services**

**ADMINISTRATION FOR CHILDREN AND FAMILIES**
**370 L'Enfant Promenade, S.W.**
**Washington, D.C. 20447**

**Office of Refugee Resettlement**
**Division of Children's Services**
**NOTICE OF PLACEMENT IN SECURE OR STAFF SECURE FACILITY**

| Minor's Name | Alien #: | Date of Birth | Country of Birth | Facility Name | Facility Type |
|---|---|---|---|---|---|
| ▉ | ▉ | ▉ | Honduras | Ft. Bliss - EIS | Emergency Intake Sites |

This is to provide you NOTICE of the reasons for your placement in a secure or staff-secure facility. Your are in the care and custody of the Office of Refugee Resettlement/Division of Children's Services (ORR/DCS). ORR/DCS will not place a minor in a secure or staff-secure facility if there are less restrictive placement options available and appropriate. However, under certain conditions listed below, ORR/DCS may place minors in a secure or staff-secure facility.

1. You are considered to be a flight risk.
2. You have committed or threatened to commit a violent or malicious act toward yourself or other(s).
3. You have been convicted of a crime as an adult.
4. You have been adjudicated as a delinquent.
5. You have engaged in serious, unacceptable disruptive behavior while in a licensed program.
6. You are chargeable with a crime or delinquent offense.
7. You are in criminal or delinquency proceedings.
8. For your own safety.
9. There is an emergency influx of minors into the United States and there are no alternative placement options at this time. ORR will place you in a shelter care facility as expeditiously as possible.

If you have any questions or concerns regarding this placement, please discuss them with the facility case management staff and/or your attorney of record. Any minor who disagrees with the ORR/DCS decision may correspond directly with the ORR/ DCS Division Director. Additionally, the minor may seek judicial review in any United States District Court with jurisdiction and venue over the matter to challange the placement decision.

_____
ORR Director Signature

05/25/2021
_____
Date

_____
Facility Staff/Witness: Name/Signature/Position

_____
Date

_____
Minor's Signature/Name

_____
Date

CC: Minor
    ORR/DCS Facility File
    ORR/DCS Field Coordinator
    ORR/DCS

OMB Control No: 0970-0554
Expiration date: 03/31/2022

a.  The care provider may provide information about the minor to the minor's educational program, medical, mental health, dental and other service providers to the extent that the information is needed for the minor's education, recreation, social development, medical, dental, or mental health treatment.
b.  The care provider must give ORR and its designees, as directed by ORR, unrestricted free access to information about the minor at all times.
c.  All case file information maintained under grants or contracts with the Federal government are the property of the Federal government and are fully accessible to ORR, or any of their duly authorized representatives, in accordance with applicable federal law, regulations, OMB circulars, and ORR policies.

**8. CONTACT WITH THE FAMILY**
The care provider must permit the minor and the minor's family (as well as other individuals at ORR's discretion) to maintain contact through direct visitation, telephone calls, mail, and gifts under the terms and conditions specified by applicable law, regulations, and ORR policies.

**9. SCHOOL PROGRAMS AND EXTRACURRICULAR ACTIVITIES**
The care provider may authorize the minor to participate in routine school programs as well as social and extracurricular activities that do not involve an unusual risk of injury to the minor unless otherwise specified by ORR.

**10. REASON FOR PLACEMENT**
An unaccompanied minor who meets the definition of an unaccompanied alien child, 6 U.S.C. 279(g)(2), and is in Federal custody by reason of his or her immigration status.

**11. TIME IN CARE**
The care provider's care giving authority will terminate upon the minor's physical discharge from the care provider's custody. The care provider will still have legal obligations for maintaining the minor's property if it is still in the care provider's custody and case file as directed by ORR.

**12. FINANCIAL**
ORR agrees to provide financially for the care of said minor according to the financial agreement between ORR and care provider or subsequent agreements agreed to by ORR and the care provider.

**13. RESTRAINTS**
The care provider must exhaust preventive, de-escalative and less restrictive techniques before it uses any type of restraint. Should physical restraint be necessary for the safety of the minor or others, the care provider must use behavior intervention techniques approved by ORR.  All use of restraints must be justified and documented.

_Pd— LCSW-R_

Signature - Authorized Representative of Care Provider

| 05/06/2021 | | 914-693-0600 |

Date                              Telephone Number

_Clfthary_

Signature - Official Representative
**Office of Refugee Resettlement**
**Administration for Children and Families**
**U.S. Department of Health and Human Services**

| 05/06/2021 | | 202-401-5709 |

Date                              Telephone Number

THE PAPERWORK REDUCTION ACT OF 1995 (Pub. L. 104.13) Public reporting burden for this collection of information is estimated to average .10/hour per response, including the time for reviewing instructions, gathering and maintaining the data needed, and reviewing the collection of information. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.

DOOR_JAA_0003

# EXHIBIT 9



**U.S. Department of Health and Human Services**

**ADMINISTRATION FOR CHILDREN AND FAMILIES**
**370 L'Enfant Promenade, S.W.**
**Washington, D.C. 20447**

**Office of Refugee Resettlement**
**Division of Children's Services**
**NOTICE OF PLACEMENT IN SECURE OR STAFF SECURE FACILITY**

| Minor's Name | Alien #: | Date of Birth | Country of Birth | Facility Name | Facility Type |
|---|---|---|---|---|---|
| ███ | ███ | ███ | El Salvador | Ft. Bliss - EIS | Emergency Intake Sites |

This is to provide you NOTICE of the reasons for your placement in a secure or staff-secure facility. Your are in the care and custody of the Office of Refugee Resettlement/Division of Children's Services (ORR/DCS). ORR/DCS will not place a minor in a secure or staff-secure facility if there are less restrictive placement options available and appropriate. However, under certain conditions listed below, ORR/DCS may place minors in a secure or staff-secure facility.

1. You are considered to be a flight risk.
2. You have committed or threatened to commit a violent or malicious act toward yourself or other(s).
3. You have been convicted of a crime as an adult.
4. You have been adjudicated as a delinquent.
5. You have engaged in serious, unacceptable disruptive behavior while in a licensed program.
6. You are chargeable with a crime or delinquent offense.
7. You are in criminal or delinquency proceedings.
8. For your own safety.
9. There is an emergency influx of minors into the United States and there are no alternative placement options at this time. ORR will place you in a shelter care facility as expeditiously as possible.

If you have any questions or concerns regarding this placement, please discuss them with the facility case management staff and/or your attorney of record. Any minor who disagrees with the ORR/DCS decision may correspond directly with the ORR/ DCS Division Director. Additionally, the minor may seek judicial review in any United States District Court with jurisdiction and venue over the matter to challange the placement decision.

_____     05/25/2021
ORR Director Signature                        Date

_____     _____
Facility Staff/Witness: Name/Signature/Position      Date

_____     _____
Minor's Signature/Name                      Date

CC: Minor
      ORR/DCS Facility File
      ORR/DCS Field Coordinator
      ORR/DCS

ORR/DCS Notice of Placement
Last Revised 2/1/05

**DOOR_CARG_0001**