PETER A. SCHEY (Cal. Bar No. 58232)
CARLOS R. HOLGUÍN (Cal. Bar No. 90754)
Center for Human Rights & Constitutional Law
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Emails: pschey@centerforhumanrights.org
crholguin@centerforhumanrights.org

*Class Counsel for Plaintiffs*
*Additional Plaintiffs' counsel on next page*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*,<br><br>                Plaintiffs,<br><br>        v.<br><br>MERRICK GARLAND, Attorney General, *et al.*,<br><br>                Defendants. | Case No. CV 85-4544-DMG (AGRx)<br><br>NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES; MEMORANDUM IN SUPPORT OF MOTION<br><br>Hearing:  December 10, 2021<br>Time:      9:30 AM<br>Judge:     Hon. Dolly Gee |

i

*Attorneys for Plaintiffs continued*

USF SCHOOL OF LAW IMMIGRATION CLINIC
Bill Ong Hing (Cal. Bar No. 61513)
2130 Fulton Street
San Francisco, CA 94117-1080
Telephone: (415) 422-4475
Email: bhing@usfca.edu


LA RAZA CENTRO LEGAL, INC.
Stephen Rosenbaum (Cal. Bar No. 98634)
474 Valencia Street, #295
San Francisco, CA 94103
Telephone: (415) 575-3500

NATIONAL CENTER FOR YOUTH LAW
Neha Desai (Cal. RLSA No. 803161)
Mishan Wroe (Cal. Bar No. 299296)
Melissa Adamson (Cal. Bar No. 319201)
Diane de Gramont (Cal. Bar No. 324360)
1212 Broadway, Suite 600 Oakland,  CA 94612
Telephone: (510) 835-8098
Email: ndesai@youthlaw.org

CHILDREN'S RIGHTS
Leecia Welch (Cal. Bar No. 208741)
88 Pine Street, Suite 800, New York, NY 10005
Telephone: (212) 683-2210
Email: lwelch@childrensrights.org

/ / /

ii

1       PLEASE TAKE NOTICE that on December 10, 2021, at 9:30 a.m., or as soon

2   thereafter as counsel may be heard, Plaintiffs will and do hereby move the Court for

3   an order awarding them attorneys' fees pursuant to the Equal Access to Justice Act,

4   28 U.S.C. § 2412(d), for fees incurred in securing three Court Orders (Doc. ## 784,

5   799, and 833) which Defendants' appealed (Doc.  ## 825, 861, and 931). The appeals

6   were docketed in the Ninth Circuit as case numbers 20-55658 , 20-55753, and 20-

7   55888. The appeals were consolidated on December 3, 2020. *See* Case No. 20-55658

8   (ECF 11). Defendants thereafter moved to dismiss the appeals. The Ninth Circuit

9   Court of Appeals dismissed the appeals on August 31, 2021. (Doc. # 1169).

10       Plaintiffs aver that (1) they are prevailing parties; (2) Defendants' position in

11   this litigation was not substantially justified; and (3) no special circumstances make

12   an award of fees unjust. This motion is based upon the annexed memorandum of

13   points and authorities, Plaintiffs' itemized statements and other supporting exhibits

14   filed concurrently herewith, and upon all other matters of record.

15

16       / / /

17

18

19

20

21

22

23

24

25

26

27

28

1

1      This motion is made following the conference of counsel pursuant to Local

2   Rule 7-3 which took place on September 28, 2021.

3

4   Dated: September 29, 2021.             Respectfully submitted,

5                                          CENTER FOR HUMAN RIGHTS
                                           AND CONSTITUTIONAL LAW
6                                          Peter A. Schey
7                                          Carlos R. Holguín

8                                          USF SCHOOL OF LAW IMMIGRATION CLINIC
9                                          Bill Ong Hing

10                                         LA RAZA CENTRO LEGAL, INC.
11                                         Stephen Rosenbaum

12                                         NATIONAL CENTER FOR YOUTH LAW
13                                         Neha Desai
                                           Mishan Wroe
14                                         Melissa Adamson
15                                         Diane de Gramont

16                                         CHILDREN'S RIGHTS
17                                         Leecia Welch

18

19                                         /s/ Peter Schey

20

21

22

23

24

25

26

27
                                           2
28                                              PLAINTIFFS' MOTION FOR ATTORNEYS' FEES
                                                CV 85-4544-DMG(AGRx)

# TABLE OF CONTENTS

I.      Introduction ....................................................................................................1

II.     Timeliness of Fee Request ............................................................................3

III.    Argument ........................................................................................................3

A.      Plaintiffs qualify for an award of EAJA Fees ...............................................3

    1.      Plaintiffs are prevailing parties...................................................................4
    2.      Plaintiffs' net worth is far less than $2,000,000. .......................................5
    3.      EAJA fees may be awarded for work to enforce a consent decree. ............5
    4       Defendants' position lacked substantial justification.................................6

B .     Lodestar calculation. ...................................................................................10

C.      Special factors warrant a fee award at market rates for Plaintiffs' Senior Counsel.......................................................................................................12

    1.      Plaintiffs' Class and Senior Co-Counsel possess distinctive knowledge and specialized skill that was needful to the litigation.................................13
    2       Other qualified attorneys unavailable. ......................................................16

IV      Conclusion ...................................................................................................19

/ / /

1
2                          TABLE OF AUTHORITIES
3
**CASES**
4

*United States v. 22249 Dolorosa St.*, 190 F.3d 977 (9th Cir. 1999) .........................7
*Al-Harbi v. I.N.S.*, 284 F.3d 1080 (9th Cir. 2002) .......................................3
*Animal Lovers Vol. Assn. v. Carlucci*, 867 F.2d 1224 (9th Cir. 1989) ...................10
*Ardestani v. I.N.S.*, 502 U.S. 129 (1991).................................................3
*Balla v. Idaho*, 677 F.3d 910(9th Cir. 2012)..............................................4
*Buchannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001) ...........................4
*Cobell v. Norton*, 407 F. Supp. 2d 140 (D. D.C. 2005) ..................................5
*Fang v. Gonzales*, No. 03-71352, 2006 WL 5669901, *3 (9th Cir. Oct. 30, 2006) (Unpub. Disp.)..........................................................................12
*Flores v. Sessions*, 862 F.3d 863 (9th Cir. 2017) .......................................1
*Hensley v. Eckerhart*, 461 U.S. 424, 433 S. Ct. 1933, 76 L.Ed.2d 40 (1983)..........10
*Ibrahim*, 912 F.3d at 1169................................................................7
*In re Mgndichian*, 312 F. Supp. 2d 1250 (C.D. Cal. 2003)..............................7
*Jeff D. v. Andrus,* 899 F.2d 753 (9th Cir. 1989)........................................6
*Keith v. Volpe*, 833 F.2d 850 (9th Cir. 1987)...........................................4
*Love v. Reilly*, 924 F.2d 1492 (9th Cir. 1991).........................................6
*Nadarajah v. Holder*, 569 F.3d 906 (9th Cir. 2009) ...................................12
*Orantes-Hernandez v. Holder*, 713 F. Supp. 2d 929 (C.D. Cal. 2010)...................12
*Oregon Environmental Council v. Kunzman*, 817 F.2d 484 (9th Cir. 1987) ............6
Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546 (1986) ...............................................................................5
*Perez-Arellano v. Smith*, 279 F.3d 791 (9th. Cir. 2002) ..............................4
*Pierce v. Underwood*, 487 U.S. 552 (1988)..........................................3, 12
*Prison Legal News v. Schwarzenegger*, 608 F.3d 446 (9th Cir. 2010) ..................4
*Sampson v. Chater*, 103 F.3d 918 (9th Cir. 1996) ....................................8
*Scarborough v. Principi*, 541 U.S. 401, 124 S. Ct. 1856, 158 L. Ed. 2d 674 (2004)4, 7
*Thangaraja v. Gonzales*, 428 F.3d 870, 876 (9th Cir. 2005) ..........................12

**STATUTES**

28 U.S.C. § 2412(d) ...................................................................2, 3
28 U.S.C. § 2412(d)(1)(A) ..............................................................2

ii

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

28 U.S.C. § 2412(d)(1)(B) ...................................................................................3

**OTHER AUTHORITIES**

Pub. L. No. 96-481, §§ 201-08, 94 Stat. 2321, 2325-30 (1980) ...............................3
Pub. L. No. 96-481, 94 Stat. 2325...........................................................................2
William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008,
    110 Pub. L. 457, 122 Stat. 5044 .......................................................................13
Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135.........................13

/ / /

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES
CV 85-4544-DMG(AGRx)

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

I.    INTRODUCTION

Plaintiffs apply for an award of attorneys' fees incurred in this Court to prosecute Plaintiffs' Ex Parte Application for a Temporary Restraining Order and Order to Show Cause re Preliminary Injunction (Doc. # 733) ("Ex Parte Application") in light of the COVID-19 pandemic and the measures Defendants would have to take to address the health and safety of detained Class Members, including the prompt release of Class Members who were not a danger or flight risk, in order to remain in substantial compliance with the terms of the January 28, 1997, Court approved Flores Settlement Agreement ("Agreement"). *See Flores v. Sessions*, 862 F.3d 863, 866 (9th Cir. 2017); *Ex Parte* Application (Doc. ## 733 and 733-1).

On March 28, 2020, the Court granted Plaintiffs' emergency application in substantial part and on April 24, 2020, the Court construed Plaintiffs' request as a motion to enforce and granted the request in substantial part (Doc. ## 740, 768, 784). In all, the Court entered a series of orders (Doc. ## 784, 799, 833, 912, 914, 1014, 1050, 1077, 1098, 1122, 1143, 1158, and 1180) requiring that Defendants Department of Homeland Security ("DHS") and Office of Refugee Resettlement of the U.S. Department of Health and Human Services ("ORR"), *inter alia*, "make every effort to promptly and safely release Class Members who have suitable custodians in accordance with Paragraphs 14 and 18 of the Agreement and the Court's prior orders," Order re Plaintiffs' Motion to Enforce, April 24, 2020 (Doc. # 784) at 18, and to report periodically regarding the conditions and treatment class members experience while in immigration-related detention during the COVID-19 pandemic. *Id*. at 19-21.

Defendants appealed three of these Orders. *See* Notices of Appeal (Doc. ## 825, 861, and 931 (appealing from Doc. ## 784, 799 and 833, respectively).

In the Court of Appeals the three appeals were assigned case numbers  20-55658, 20-55658, and 20-55888. The appeals were consolidated on December 3, 2020. *See* Case No. 20-55658 (ECF 11). On August 27, 2021, Defendants requested that the Court of Appeals dismiss its appeals. Case No. 20-55658 (ECF 24). Plaintiffs agreed to the request while reserving their right to seek fees for work performed before the District Court. *Id*. On August 31, 2021, the Ninth Circuit Court of Appeals granted Defendants' unopposed motion to dismiss all three appeals. *See* Order, Aug. 31, 2021 (Doc. # 1169); (Ninth Cir. Doc. # 25).

Plaintiffs now apply pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) ("EAJA"), for an award of attorneys' fees incurred in securing the District Court Orders described above.

The EAJA allows litigants to recover fees in certain actions against the United States, thus encouraging the vindication of rights by persons who would otherwise be deterred from challenging governmental action because of the expense of litigation. Pub. L. No. 96-481, 94 Stat. 2325. In pertinent part, the EAJA provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

"The clearly stated objective of the EAJA is to eliminate financial disincentives for those who would defend against unjustified governmental action and thereby to deter the unreasonable exercise of Government authority." *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1166 (9th Cir. 2019) (en banc)

2

(quoting *Ardestani v. I.N.S.*, 502 U.S. 129, 138 (1991)). "Congress specifically intended the EAJA to deter unreasonable agency conduct." *Id.* at 1166-67 (citing *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163 n.11 (1990) and Pub. L. No. 96-481, §§ 201-08, 94 Stat. 2321, 2325-30 (1980)).

As will be seen, Plaintiffs satisfy all requirements for an award of EAJA fees.[1] The Court should accordingly grant the instant motion and award fees as herein requested.

## II.   TIMELINESS OF FEE REQUEST

The EAJA requires that the successful litigant file the fee application "within 30 days of final judgment." 28 U.S.C. § 2412(d)(1)(B).[2]

A "final judgment" is one that is not subject to further review. 28 U.S.C. § 2412(d)(2)(G).

The Court of Appeals dismissed Defendants appeals on August 31, 2021. Plaintiffs motion is therefore timely.

## III.   ARGUMENT

### A.   PLAINTIFFS QUALIFY FOR AN AWARD OF EAJA FEES

Pursuant to 28 U.S.C. § 2412(d) "eligibility for a fee award in any civil action requires: (1) that the claimant be 'a prevailing party'; (2) that the Government's position was not 'substantially justified', (3) that no 'special circumstances make an award unjust'; and (4) pursuant to 28 U.S.C. § 2412(d), that any fee application be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement." *Ibrahim,* 912 F.3d at 1167 (*quoting* Jean, 496 U.S. at 158).[3]

---

[1] Plaintiffs incurred but are not seeking recovery of costs.

[2] The EAJA's filing deadline controls over Circuit Rule 39-1.6(a). *Al-Harbi v. I.N.S.*, 284 F.3d 1080, 1082 (9th Cir. 2002).

[3] The Court also has discretion to determine whether the amount of the requested fees are reasonable. *Pierce v. Underwood*, 487 U.S. 552, 571 (1988).

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES
CV 85-4544-DMG(AGRx)

1   Once this showing is made, the burden shifts to the Government to prove that

2   its position, *both before and during the litigation*, was substantially justified or that

3   special circumstances make an award of attorney's fees unjust. *See Scarborough v.*

4   *Principi*, 541 U.S. 401, 416-17 (2004); *Love v. Reilly*, 924 F.2d 1492, 1495 (9th Cir.

5   1991).

6   1.      Plaintiffs are prevailing parties.

7   Under the EAJA, a party prevails when it has been granted "some relief by a

8   court." *Buchannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health and*

9   *Human Res.*, 532 U.S. 598, 603, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001).[4] To

10  prove prevailing party status, an EAJA petitioner must establish: (1) a "material

11  alteration of the legal relationship of the parties," and (2) a "judicial *imprimatur* on

12  the change." *Id*. at 604-05 (emphasis in original).

13  A party prevails and thereafter remains prevailing when it has won judicial

14  relief or obtained an enforceable settlement or consent decree. *Prison Legal News v.*

15  *Schwarzenegger*, 608 F.3d 446, 451-52 (9th Cir. 2010); *Keith v. Volpe*, 833 F.2d 850,

16  857 (9th Cir. 1987); *see also Balla v. Idaho*, 677 F.3d 910, 918-20 (9th Cir. 2012)

17  (work for "compliance monitoring" of settlement is compensable even in the absence

18  of new judicial relief). Plaintiffs accordingly prevailed in this action in concluding

19  the Settlement entered herein in 1997.

20  Additionally, the district court's three Orders granted a substantial part of the

21  relief Plaintiffs sought in their ex parte application. Among other things, this Court's

22  several Orders required the Government to promptly release children who have

23  suitable custodians as Paragraphs 14 and 18 of the Agreement require and to file

24  _____

25  [4] Although *Buckhannon* involved other fee-shifting statutes and not the EAJA, the

26  Ninth Circuit has held that the requirements of a prevailing party announced in that

27  decision are applicable to EAJA awards as well. *Perez-Arellano v. Smith*, 279 F.3d
791, 793-94 (9th Cir. 2002).

28  4

enhanced reports regarding the conditions and treatment detained children experience during the COVID-19 pandemic. At Defendants' request, the Court of Appeals dismissed Defendants' appeals.

The Court clearly ordered Defendants to adjust their policies and practices, Plaintiffs therefore prevailed on their motion, and they accordingly satisfy the first requirement for an EAJA fees and costs award.

2.   <u>Plaintiffs' net worth is far less than $2,000,000.</u>

Pursuant to 28 U.S.C. § 2412(d)(2)(B)(i), a party's "net worth [must] not exceed $2,000,000 at the time the civil action was filed . . . ."

The original plaintiffs in this action were indigent at the time this action commenced. Declaration of Peter Schey, Exhibit 2 ("Schey") ¶ 9. Further, it is virtually self-evident that plaintiff class members are indigent as well. By definition, they are immigrant or refugee minors in federal custody. Agreement ¶¶ 10-11; *see also* Schey ¶ 9 (affirming that *Flores* plaintiff class members are on the whole indigent).

Plaintiffs accordingly meet the second requirement for an EAJA fee award. *See Cobell v. Norton*, 407 F. Supp. 2d 140, 148-49 (D. D.C. 2005) ("[A]ffidavits signed by the class representatives, attesting to the fact that their net worth fell within EAJA statutory guidelines at the time the litigation was initiated . . . amply satisfy the requirements of the statute for the entire class.").

3.   <u>EAJA fees may be awarded for work to enforce a consent decree.</u>

Plaintiffs may recover attorneys' fees related to "compliance monitoring" of a settlement or order "where there has been judicial relief, though the monitoring work is subsequent to the judicial order and produces no new order." *Balla*, 677 F.3d at 918; *see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 558-59, 106 S. Ct. 3088, 92 L.Ed.2d 439 (1986) ("[P]ost-judgment

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES
CV 85-4544-DMG(AGRx)

monitoring of a consent decree is a compensable activity for which counsel is entitled to a reasonable fee.").

In *Delaware Valley*, the plaintiff obtained a consent decree and thereafter conducted additional litigation and administrative advocacy to protect that decree. The Court held the plaintiff entitled to recover attorney's fees and costs for this post-settlement work. 478 U.S. at 559-60.

Following *Delaware Valley,* numerous courts have affirmed litigants' right to recover attorney's fees and costs for work to enforce court-approved settlements. *E.g.*, *Keith*, 833 F.2d at 857 ("[T]he district court here 'was entitled to believe that relief [for the plaintiffs under the consent decree] would occur more speedily and reliably' if the [plaintiffs' counsel] engaged in these monitoring activities, and this post-judgment monitoring by the [plaintiffs' counsel] was, therefore, 'a necessary aspect of plaintiffs' "prevailing"' in the case.'"); *Jeff D. v. Andrus,* 899 F.2d 753, 765 (9th Cir. 1989) (plaintiffs entitled to attorney's fees for work subsequent to the settlement despite waiving pre-settlement fees; "issues in these appeals are separate from the settlement of the underlying litigation and the waiver of attorney's fees in the settlement does not affect our disposition here.").[5]

4    Defendants' position lacked substantial justification.

Because Plaintiffs both prevailed and meet the EAJA's net worth standard, "an award of fees is mandatory under the EAJA unless the government's position is substantially justified or special circumstances exist that make an award of fees unjust." *Love*, 924 F.2d at 1495. Defendants must carry the burden of proof with respect to both factors. *Id.; see also Ibrahim,* 912 F.3d at 1167; *Oregon Environmental Council v. Kunzman*, 817 F.2d 484, 498 (9th Cir. 1987); *United States*

---

[5] In both *Keith* and *Jeff D.*, the court reviewed fees awarded under 42 U.S.C. § 1988. However, identical principles apply to an award of post-judgment attorney's fees under the EAJA. *Perez-Arellano*, 279 F.3d at 794.

6

*v. 22249 Dolorosa St.*, 190 F.3d 977, 983 (9th Cir. 1999). Defendants must show that the government's position has "a 'reasonable basis both in law *and* fact.'" *Meier v. Colvin*, 727 F.3d 867, 870 (9th Cir. 2013) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)) (emphasis added).

When analyzing the reasonableness of the Government's position, a court considers the totality of the circumstances, which incorporates both the challenged underlying governmental action and the Government's trial court position. *See Gutierrez v. Barnhart¸* 274 F.3d 1255, 1259 (9th Cir. 2001) ("Thus we 'must focus on two questions: first, whether the government was substantially justified in taking its original action; and, second, whether the government was substantially justified in defending the validity of the action in court'") (quoting *Kali v. Bowen,* 854 F.2d 329, 332 (9th Cir. 1988)); *see also Rawlings v. Heckler*, 725 F.2d 1192, 1196 (9th Cir. 1984). Moreover, "the EAJA – like other fee-shifting statutes – favors treating a case as an inclusive whole, rather than as atomized line-items." *Ibrahim*, 912 F.3d at 1169 (quoting *Jean*, 496 U.S. at 161-62). The Ninth Circuit has "consistently held that regardless of the government's conduct in the federal court proceedings, unreasonable agency action at any level entitles the litigant to EAJA fees." *Id.* at 1167 (quoting *Li v. Keisler*, 505 F.3d 913, 919 (9th Cir. 2007)).

Plaintiffs have alleged that Defendants' position was without substantial justification and that no special circumstances make a fee award unjust. This allegation suffices to shift the burden to Defendants to show that their position was substantially justified or that special circumstances would make a fee award unjust. *Scarborough*, 541 U.S. at 416-17; *see also In re Mgndichian*, 312 F. Supp. 2d 1250, 1255 (C.D. Cal. 2003) (prevailing party need only "by alleg[e] that the government's position was not substantially justified and that no special circumstances exist that make an award unjust."); 28 U.S.C. § 2412(d) ("A party seeking an award of fees ...

7

1  shall also allege that the position of the United States was not substantially

2  justified.").

3       Defendants will not likely succeed in making either showing. There was no

4  substantial justification for Defendants to hold Class Members in unsafe conditions,

5  refuse to make and record prompt and continuous efforts at the release of Class

6  Members, and hold minors in lengthy detention in violation of the Settlement.[6]

7  Defendants' position was *prima facie* without justification. *Cf. Sampson v. Chater*,

8  103 F.3d 918, 921 (9th Cir. 1996) (no substantial justification "when the agency's

9  position was based on violations of the Constitution, federal statute, or the agency's

10  own regulations" (quoting *Mendenhall v. Nat'l Transp. Safety Bd.*, 92 F.3d 871, 874

11  (9th Cir. 1996)).[7]

12       It is clear in this case that the Government's pre-litigation and litigation

13  positions lacked substantial justification.

14

_____

15  [6] Among other things, Defendants' —

16
      (a) failure to have "medical professionals actually make case-by-case
17      determinations of a minor's eligibility for release," April 24, 2020 Order
       at 9;
18      (b) categorically refusing to release "minors with a pending MPP case
19      or removal order," *id*. at 13-14;
       (c) failing to make "individualized parole decisions" for accompanied
20      children awaiting decisions in expedited removal proceedings, *id*. at 14-
21      16;
       (d) refusing to make individualized evaluations of flight risk of
22      accompanied class members whose orders of removal are stayed, *id*. at
23      17-18;

24  are self-evidently without substantial justification.
25

26  [7] It might also be noted that "a string of losses can be indicative" of whether the
    government's position is substantially justified. *Gonzalez*, 408 F.3d at 618 (quoting
27  *Pierce*, 487 U.S. at 569).

8

28                                        PLAINTIFFS' MOTION FOR ATTORNEYS' FEES
                                          CV 85-4544-DMG(AGRx)

First, Defendants refused to grant relief after being sent a detailed meet and confer letter by counsel outlining steps Defendants could take for the safety of Class Members in light of the COVID-19 pandemic. *See* Schey Declaration ¶ 10 and Exhibit C attached thereto.

Second, in light of Defendants' opposition and the emergent COVID-19 crisis, the Court was required to issued the March 28, 2020 TRO and ordered Defendants Office of Refugee Resettlement ("ORR") and Immigration and Customs Enforcement ("ICE") to (1) promptly and safely release Class Members in accordance with Paragraphs 14 and 18 of the Agreement and the Court's prior orders; (2) submit to inspections by the Juvenile Coordinators; (3) provide evidentiary snapshots to the Court, the Independent Monitor, and Class Counsel; and (4) show cause by April 10, 2020, why the Court should not grant Plaintiffs' motion for preliminary injunction. *See* March 28, 2020 TRO at 13–15 [Doc. # 740]. Thereafter, on April 24, 2020, this Court was required to issue an order enforcing the settlement and two subsequent remedial Orders. [Doc. ## 784, 799, and 833].

Defendants' repeated noncompliance with the Court's orders was also patently unreasonable. *See, e.g.,* May 22, 2020 at 1-2 ("Contrary to the April 24, 2020 Order, ORR has not provisionally released any minors whose vetted sponsors are unable to obtain fingerprints due to pandemic-related closures" and failed to timely issue field guidance regarding provisional release procedures or home studies); *id.* at 2 ("The ICE report continues to show lack of compliance with Paragraph 18 of the FSA"); June 26, 2020, Order at 2 (addressing "issues raised by Plaintiffs, *amici curiae*, the Independent Monitor, and Dr. Wise regarding ICE's incomplete, infrequent, and at times, inaccurate, parole determinations and failure to implement best public health practices."); *id.* at 5 (ordering ORR to "review and amend its fingerprinting policy to provide for a less onerous chain of approvals or show cause to the Court why the policy, as written, is imperative").

9

Lastly, Defendants never defended their three appeals taken in this case but instead, after much delay and several extensions, finally voluntarily dismissed their appeals. Had Defendants' positions been substantially justified, they likely would not have voluntarily dismissed their appeals.

The Government cannot advance "'in good faith' any 'novel but credible extensions and interpretations of the law,' and therefore no equitable considerations weigh against granting Plaintiffs' fee request." Order re Plaintiffs' Motion for Attorneys' Fees at 4, Nov. 12, 2019 (Doc. # 702) (November 12, 2019 Fees Order) (quoting H.R. Rep. No. 96-1418, at 11 (1980)).

B .   LODESTAR CALCULATION.

A "lodestar" figure for the amount of fees Plaintiffs should recover is calculated by multiplying the number of hours counsel reasonably dedicated by the inflation-adjusted EAJA hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L.Ed.2d 40 (1983); *Costa v. Comm'n of Social Security Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012).[8] Furthermore:

> In certain cases, courts in the Ninth Circuit may authorize enhanced EAJA rates—above inflation-adjusted rates—where there was a "limited availability of qualified attorneys for the proceedings involved" and the attorneys had "distinctive knowledge" and "specialized skill" that was "needful to the litigation in question" and "not available elsewhere at the statutory rate." *Nadarajah v. Holder*, 569 F.3d 906, 912 (9th Cir. 2009) (citations omitted).

Order Re Plaintiffs' Motion for Attorneys' Fees and Costs at 6, Nov. 14, 2017 (Doc. # 383) ("November 14, 2017 Fees Order")

The inflation-adjusted EAJA base rate for the periods counsel worked on the instant matter is $207.78. *See* https://www.ca9.uscourts.gov/attorneys/statutory-

---

[8] An increase over the base rate to account for inflation is granted in all but unusual circumstances. *Animal Lovers Vol. Assn. v. Carlucci*, 867 F.2d 1224, 1227 (9th Cir. 1989).

10

maximum-rates/ (last visited September 27, 2021).[9] Plaintiffs also request fees for a paralegal's work at $100 per hour. *See Richlin Sec. Service Co. v. Chertoff*, 553 U.S. 571, 590 (2008) ("[A] prevailing party that satisfies EAJA's other requirements may recover its paralegal fees from the Government at prevailing market rates."); *Lara v. Berryhill*, No. 2:16-CV-0034 DB, 2017 WL 4679989, at *3 (E.D. Cal. Oct. 18, 2017) (awarding fees for paralegal time at $100 per hour).

The hours counsel devoted to prosecuting this action, adjusted for time that was poorly documented or excessive, appear in the itemized time records annexed to the declarations of Plaintiffs' counsel Peter Schey, Exhibit 2 ¶ 12; Carlos Holguín, Exhibit 3 ("Holguín") ¶ 10; Leecia Welch, Exhibit 4 ("Welch ") ¶¶ 19-20; Holly Cooper Exhibit 7 ("Cooper") ¶¶ 19-20.[10]

Plaintiffs' lodestar fee request at the inflation adjusted statutory rate is $290,440.[11] Plaintiffs' lodestar fee request including enhanced fees for Plaintiffs' two Class Counsel, two Senior Co-Counsel, and one paralegal is $659,614.[12]

As will be seen, the Court should award Plaintiffs fees for Class Counsel's and two Senior Co-Counsel's time at "enhanced," or market, hourly rates.

---

[9] Prior to 1996 the EAJA set a base rate of $75 per hour. 28 U.S.C. § 2412(d)(2)(A) (1994). In 1996 Congress increased the base rate to $125 per hour for cases commenced on or after March 29, 1996. *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001). The Ninth Circuit's calculations adjust the 1996 rate for inflation.

[10] Time spent preparing the instant EAJA motion is also compensable. *See Jean*, 496 U.S. at 163-64. Nevertheless, to encourage a resolution of this motion, Plaintiffs are not seeking compensation for time preparing this motion.

[11] This fee request reflects that, after exercising billing judgment, NCYL further reduced its attorneys' fee request by 10% to account for any duplication or inefficiencies across its team. That 10% reduction is reflected in the attorneys' fee dollar amount referenced here.

[12] *See supra*, fn. 14.

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES
CV 85-4544-DMG(AGRx)

C.    SPECIAL FACTORS WARRANT A FEE AWARD AT MARKET RATES FOR PLAINTIFFS'
       SENIOR COUNSEL.

The EAJA authorizes the Court to award attorney's fees at market rates where there is a "limited availability of qualified attorneys for the proceedings involved." 28 U.S.C. § 2412(d)(2)(A). Enhanced hourly rates may be awarded where plaintiffs' counsel possess "distinctive knowledge" and "specialized skill" that was "needful to the litigation in question" and "not available elsewhere at the statutory rate." *Nadarajah*, 569 F.3d at 912 (quoting *Thangaraja v. Gonzales*, 428 F.3d 870, 876 (9th Cir. 2005) and *Love*, 924 F.2d at 1498); *see also Pierce*, *supra*, 487 at 572 ("Examples . . . would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language.").

In *Nadarajah*, the Ninth Circuit held this test satisfied where counsel had "distinctive knowledge and specialized skill in immigration law and, in particular, constitutional immigration law and litigation involving the rights of detained immigrants" and this skill was "needful to the litigation in question." 569 F.3d at 912-14 (quoting *Thangaraja*, 428 F.3d at 876); *see also Fang v. Gonzales*, No. 03-71352, 2006 WL 5669901, *3 (9th Cir. Oct. 30, 2006) (Unpub. Disp.) ("Counsel Smith's specialized skills and distinctive 'knowledge of . . . particular, esoteric nooks and crannies of immigration law,' ... enabled her to ... to succeed in obtaining relief from removal for Fang." (quoting *Thangaraja*,  428 F.3d at 876)).  In *Nadarajah*, the Ninth Circuit accordingly awarded the prevailing party's senior counsel fees at market rate. 569 F.3d at 916-18.

Similarly, in *Orantes-Hernandez v. Holder*, 713 F. Supp. 2d 929 (C.D. Cal. 2010), the Government moved to dissolve an injunction requiring immigration authorities to follow specific procedures when detaining, processing and removing Salvadoran nationals. *Id.* at 936. The court largely denied the motion, and the plaintiffs sought EAJA fees at market rates because defending against the

12

Government's motion required specialized knowledge of, *inter alia*, the history of the litigation that had resulted in the injunction. *Id*. at 959-63.

The district court awarded fees at market rates for senior counsel. *Id*. at 964. In addition to special knowledge of immigration law and procedure and complex civil litigation, the court found that the prevailing parties' counsel "by virtue of their long involvement in this litigation, possess[ed] distinctive knowledge crucial to litigation of this complicated case," *id*. at 961, and had specialized skills—including proficiency in Spanish—that were necessary to defend the injunction. *Id*. at 960-63.

1.   <u>Plaintiffs' Class and Senior Co-Counsel possess distinctive knowledge and specialized skill that was needful to the litigation.</u>

As in *Orantes-Hernandez* and *Nadarajah,* Plaintiffs' counsel here have extensive experience, knowledge and specialized skill in immigration law, youth law, and more particularly, the rights of detained immigrant and refugee juveniles as they exist at the intersection of the Settlement, the Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135 ("HSA"), the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, 110 Pub. L. 457, 122 Stat. 5044 ("TVPRA"), and the United States Constitution.

First, Plaintiffs' Class Counsel are highly skilled litigators with vast expertise in representing immigrants, refugees and youth in nationwide class action cases. Plaintiffs' Class Counsel are among the leading lawyers litigating class actions on behalf of immigrant and refugee children. They have successfully litigated multiple statewide and nationwide class actions cases involving the rights of immigrant youth for over 40 years. This work was highlighted in the article entitled *Meet the father of the landmark lawsuit that secured basic rights for immigrant minors* published by the American Bar Association Journal. Lorelei Laird, *Meet the father of the landmark lawsuit that secured basic rights for immigrant minors,* February 1, 2016, at

13

http://www.abajournal.com/magazine/article/meet_the_father_of_the_landmark_lawsuit_that_secured_basic_rights_for_immig.

Here, prosecuting Plaintiffs' action by Class Counsel and Senior Co-Counsel required specialized expertise in immigration law, the *Flores* Agreement and its history, and interpretation of federal consent decrees as these distinct areas of the law affect a discrete and otherwise defenseless subclass: immigrant and refugee youth in federal detention facilities. Distinctive knowledge of the *Flores* Agreement, the meaning of its terms under federal immigration laws, and the Government's policies and practices in implementing the Agreement, as well as the ability to converse in Spanish were necessary to the successful resolution of this litigation. *See* Declarations of Schey, Exhibit 2  at ¶ 6 ("I am able to converse with class members and their mothers in Spanish. The majority of class members in the litigation the CHRCL conducts, including *Flores*, are monolingual Spanish-speakers, and the ability to communicate with these class members in their native language is invaluable."); Holguin, Exhibit 3, ¶ 6 ("I am also fluent in English and Spanish. The majority of class members in the litigation the CHRCL conducts, including Flores, are monolingual Spanish-speakers. In my opinion, the ability to communicate with these class members in their native language is essential to afford them a fair chance of prevailing.")

This Court has previously held that attorneys Schey and Holguín possesses "intimate knowledge of the Agreement"; that "[i]n addition to litigating the matter that led to the Agreement, both Schey and Holguin have been involved with monitoring the government's compliance with the Agreement since its inception"; and that they "are therefore uniquely positioned to efficiently litigate the enforcement action in question." November 14, 2017 Fees Order at 6-7. The Court accordingly awarded both Schey and Holguín fees at market rates. *Id*. at 8.

Leecia Welch is a national expert in the area of child welfare and has spent the majority of her career representing children and youth in cases focused on enforcing their statutory and constitutional rights. Declaration of John F. O'Toole, April 16, 2019, Exhibit 5 ("O'Toole") ¶¶ 9, 13; Declaration of Richard M. Pearl, April 18, 2019, Exhibit 6 ("Pearl") ¶ 13. Ms. Welch's specialized expertise at the intersection of child welfare and complex federal class action litigation, her extensive personal involvement in litigating on behalf of detained immigrant children in this case and related litigation, and the National Center for Youth Law's institutional knowledge of this litigation, uniquely positioned her to litigate Plaintiffs' enforcement motion. O'Toole ¶¶ 6-8, 14-15; Pearl ¶ 13; Declaration of Leecia Welch, Exhibit 4 ("Welch") ¶¶ 4, 8, 10, 22.

Co-counsel Holly Cooper is similarly accomplished in representing detained immigrant and refugee children, has received multiple national awards for her expertise defending detained immigrant children, has successfully litigated several cases published as precedent, and many more not designated as precedent, in federal court pertaining to detained immigrants, and trains lawyers nationally on complex federal litigation. Declaration of Stacy Tolchin, September 22, 2021, Exhibit 8 ("Tolchin") ¶¶ 12-16; Declaration of Holly Cooper, Exhibit 7 ("Cooper") ¶¶ 7, 9-11. Ms. Cooper's specialized expertise at the intersection of immigration law, immigrant children's rights, and complex federal class action litigation, and her extensive personal involvement in litigating on behalf of detained immigrant children in this case and related litigation, uniquely positioned her to litigate Plaintiffs' enforcement motion. Tolchin ¶¶ 8-11, 19-20; Pearl ¶ 14; Cooper ¶¶ 6-7, 14-17.

Finally, vindicating the rights of class members in the underlying motion required far more than skill in enforcing contracts: it required specialized expertise in the intersection of multiple sources of law as it affects a discrete and vulnerable subclass: immigrant and refugee youth in federal custody. *See* November 14, 2017

15

1   Fees Order at 6-7; *see also* November 12, 2019 Fees Order at 5 ("As discussed at

2   length in the November 14, 2017 Order, Holguin is uniquely positioned to efficiently

3   litigate enforcement actions in this case . . .").

4          2     <u>Other qualified attorneys unavailable.</u>

5         Further, few, if any, other lawyers in the country could or would have

6   prosecuted a complex emergency application on behalf of a class of indigent, non-

7   English-speaking detained minors, many detained in remote locations, at the

8   inflation-adjusted EAJA rate. Holguin, ¶¶ 8-9.

9         When private practitioners do pursue federal litigation, they typically charge

10   much more than the inflation-adjusted EAJA statutory rate."); Pearl ¶ 13 ("[Ms.

11   Welch's] specialized skills are certainly not available elsewhere at the statutory rate

12   (plus COLA)"); Tolchin ¶19 ("There are only a handful of litigators in the Ninth

13   Circuit with the expertise necessary to tackle the litigation required in this case,

14   even if compensated at the market rate."); *Id*. ¶ 20 ("Ms. Cooper is among the very

15   few litigators in the Ninth Circuit with the requisite very high degree of knowledge

16   and skill necessary to litigate this complex case at the intersection of statutory

17   immigration law, immigrant children's rights, constitutional rights, habeas corpus

18   and class actions."); *Id*. ¶ 21 ("I do not believe that this work could have been done

19   by any attorney at the EAJA market rate, adjusted for inflation."); *Id*. n.2 (noting

20   that the enhanced EAJA rate sought by Ms. Cooper is "actually well below the

21   market rate").

22         These factors warrant the Court's awarding attorney's fees at rates "in line

23   with those [rates] prevailing in the community for similar services by lawyers of

24   reasonably comparable skill, experience and reputation.'" *Nadarajah*, 569 F.3d at

25   916 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 & n.11 (1984)).

26

27       / / /

28                   16

3.    Enhanced Rates

Hourly market rates in 2020 for lawyers with skills and experience comparable to plaintiffs' Class Counsel are in the range of $905 (Holguin) and $1,050 (Schey). *See* Declaration of Carol Sobel, Exhibit 1 ("Sobel"), ¶¶ 20-23.[13] Plaintiffs seek fees for Class Counsel Holguin at the reduced rate of $775/hour. Class Counsel Schey excluded from his hours filed herewith and does not seeking reimbursement for multiple tasks including, for example, routine brief discussions about the litigation with co-class counsel, consultants, and advocates representing class members in their individual cases, brief email traffic with co-counsel, consultants and counsel representing class members, review of media reports and studies regarding the challenged policies or practices, most monitoring activities, and other tasks taking less than ten minutes. Schey at ¶ 12.

Market rates for Ms. Welch ($690 per hour) and Ms. Cooper ($700 per hour) are supported in the declarations of Richard Pearl and Stacy Tolchin, California attorneys specializing in issues related to court-awarded attorney's fees. Pearl ¶¶ 12-14, 20; Tolchin ¶¶ 7, 21. Courts have frequently relied on Mr. Pearl's opinions and writings on court-award attorney's fees. Pearl ¶¶ 4, 7-10.

Plaintiffs accordingly request an Order granting Plaintiffs their reasonable fees as follows:

/ / /

---

[13] Ms. Sobel is a Los Angeles attorney whose expertise in market rates courts have repeatedly recognized. *See, e.g.*, *Nadarajah*, 569 F.3d at 912-13; *Orantes-Hernandez*, 713 F. Supp. 2d at 963-64. As the Court recently held, "[t]he increased rate [of $950 per hour for Schey] is 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" November 12, 2019 Fees Order at 5 (quoting *Nadarajah*, 569 F.3d at 916).

17

| Center for Human Rights & Constitutional Law | Hours | Statutory | Senior Counsel Enhanced |
|---|---|---|---|
| Schey | 264 | 54,854 | 277,200 |
| Holguin | 77.86 | 16,178 | 60,342 |
| Total | 341.86 | 71,032 | 337,542 |
| | | | |
| UC Davis | | | |
| Cooper | 117.57 | 24,429 | 82,299 |
| Felt | 205.87 | 42,776 | 42,776 |
| Mulligan | 140.99 | 29,295 | 29,295 |
| Julian | 116.59 | 24,225 | 24,225 |
| Total | 581.02 | 120,724 | 178,595 |
| | | | |
| Welch[14] | 108.4 | 22,523 | 67,316 |
| Desai | 64.9 | 12,136 | 12,136 |
| Juneja | 44.3 | 8,284 | 8,284 |
| Pitts | 73.3 | 13,707 | 13,707 |
| Adamson | 143 | 26,741 | 26,741 |
| de Gramont | 67.5 | 12,623 | 12,623 |
| Setren | 26.7 | 2,670 | 2,670 |
| Total | 528.1 | 98,684 | 143,477 |

---

[14] After exercising billing judgment, NCYL further reduced its attorneys' fee request by 10% to account for any duplication or inefficiencies across its team. That 10% reduction is reflected in the attorneys' fee dollar amount requested in this chart.

18

1

2   IV    CONCLUSION

3         For the foregoing reasons, this Court should award Plaintiffs attorney's fees

4   pursuant to 28 U.S.C. § 2412(d) as herein requested.

5

6   Dated: September 29, 2021 .         Respectfully submitted,

7
                                 CENTER FOR HUMAN RIGHTS
8                                    AND CONSTITUTIONAL LAW

9                                    Peter A. Schey
                                 Carlos R. Holguín
10

11                                   USF SCHOOL OF LAW IMMIGRATION CLINIC
                                 Bill Ong Hing
12

13                                   LA RAZA CENTRO LEGAL, INC.
                                 Stephen Rosenbaum
14

15                                   NATIONAL CENTER FOR YOUTH LAW
                                 Neha Desai
16                                   Mishan Wroe

17                                   Melissa Adamson
                                 Diane de Gramont
18

19                                   CHILDREN'S RIGHTS
                                 Leecia Welch
20

21
                                 /s/ Peter Schey
22                                  _____

23

24

25

26

27
                           19
28                                  PLAINTIFFS' MOTION FOR ATTORNEYS' FEES
                                 CV 85-4544-DMG(AGRx)

# CERTIFICATE OF SERVICE

I, Peter Schey, declare and say as follows:

I am over the age of eighteen years of age and am not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 256 S. Occidental Blvd., Los Angeles, CA 90057, in said county and state.

On September 29, 2021 I electronically filed the following document(s):

NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS; MEMORANDUM IN SUPPORT OF MOTION

with the United States District Court, Central District of California by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/Peter Schey
Attorney for Plaintiffs

20