PETER A. SCHEY (Cal. Bar No. 58232)
CARLOS R. HOLGUÍN (Cal. Bar No. 90754)
Center for Human Rights & Constitutional Law
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Email:      crholguin@centerforhumanrights.org
            pschey@centerforhumanrights.org

*Class Counsel for Plaintiffs*
*Additional Plaintiffs' counsel on next page*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MERRICK GARLAND, Attorney General, *et al.*,<br><br>Defendants. | Case No. CV 85-4544-DMG (AGRx)<br><br>EXHIBIT 2: PETER SCHEY DECLARATION IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES<br><br>Hearing: December 10, 2021<br>Time:    9:30 AM<br>Judge:   Hon. Dolly Gee |

/ / /

1 │ *Attorneys for Plaintiffs continued*

2 │

3 │ USF SCHOOL OF LAW IMMIGRATION CLINIC
Bill Ong Hing (Cal. Bar No. 61513)

4 │ 2130 Fulton Street
San Francisco, CA 94117-1080

5 │ Telephone: (415) 422-4475
Email: bhing@usfca.edu

6 │

7 │

8 │ LA RAZA CENTRO LEGAL, INC.
Stephen Rosenbaum (Cal. Bar No. 98634)

9 │ 474 Valencia Street, #295
San Francisco, CA 94103

10 │ Telephone: (415) 575-3500

11 │

12 │ NATIONAL CENTER FOR YOUTH LAW
Neha Desai (Cal. RLSA No. 803161)

13 │ Mishan Wroe (Cal. Bar No. 299296)
Melissa Adamson (Cal. Bar No. 319201)

14 │ Diane de Gramont (Cal. Bar No. 324360)

15 │ 1212 Broadway, Suite 600 Oakland, CA 94612
Telephone: (510) 835-8098

16 │ Email: ndesai@youthlaw.org

17 │

18 │ CHILDREN'S RIGHTS
Leecia Welch (Cal. Bar No. 208741)

19 │ 88 Pine Street, Suite 800, New York, NY 10005

20 │ Telephone: (212) 683-2210
Email: lwelch@childrensrights.org

21 │

22 │

23 │

24 │

25 │ / / /

26 │

27 │

28 │

Declaration of Peter A. Schey

I, Peter Schey, declare and say as follows:

1. I make this declaration in support of Plaintiffs' motion for Equal Access to Justice Act fees in relation to work performed by Plaintiffs' counsel on Plaintiffs' Ex Parte Application for a Temporary Restraining Order and Order to Show Cause re Preliminary Injunction (Doc. # 733) ("Ex Parte Application"). I am employed by, and serve as President of the Center for Human Rights and Constitutional Law (CHRCL), a non-profit, public interest law firm that provides free legal representation to indigent immigrants and refugees. I execute this declaration in support of plaintiffs' motion for an award of attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d).

2. I was admitted to practice before the Supreme Court of the State of California in December 1973. I have since then been admitted to practice in the United States District Court for the Central District of California, the United States District Court for the Eastern District of California, the United States District Court for the Southern District of California, the United States District Court for the Northern District of California, the United States Circuit Court of Appeals for the Ninth Circuit and the United States Supreme Court.

3. Since 1974 my practice has focused on complex litigation, advocacy and technical support in furtherance of the rights of vulnerable communities, in particular immigrants and refugees. As regards legal support services, the California Legal Services Trust Fund has funded CHRCL since 1982 to provide technical support and training to qualified legal services programs and attorneys serving pro bono publico in the areas of immigration law, constitutional law, and impact litigation. In my capacity as CHRCL's President, I have often provided technical support, advocacy support and training to legal aid and pro bono lawyers on immigration law, constitutional law, and complex litigation.

4. In the area of litigation, I have served as lead or co-lead counsel in

numerous major class actions on behalf of immigrants and refugees, including *Plyler v. Doe*, 457 U.S. 202 (1982), a state-wide class action that established the right of children to a public elementary education regardless of their immigration status; *Perez-Olano v. Gonzalez*, 248 F.R.D. 248 (C.D. Cal. 2008), which resulted in a nationwide settlement expanding eligibility for special immigrant status, an immigration benefit for abused, abandoned and neglected children; *We Are America v. Maricopa County*, 297 F.R.D. 373 (D. Ariz. 2013), a state-wide class injunction against prosecuting migrants for conspiring to transport themselves; *Orantes-Hernandez v. Smith*, 541 F.Supp. 351 (C.D. Cal. 1982), a national class action on behalf of Salvadoran nationals blocked from applying for political asylum; *League of United Latin American Citizens v. Wilson*, 908 F. Supp. 755 (C.D. Cal. 1995), a state-wide class action that overturned a state proposition that would have denied health care, social services and education to suspected undocumented immigrants; *Catholic Social Services v. Immigration and Naturalization Service*, 232 F.3d 1139 (9th Cir. 2000) (en banc), a national class action that restored the right of some 500,000 class members to apply for legalization under the Immigration Reform and Control Act of 1986; *Lopez v. INS*, Cv. No. 78-1912-WB(xJ), nation-wide settlement impacting requiring persons arrested by the INS to be provided written advisal of their legal rights, including the right to apply for political asylum and a period of time to consult with attorneys before post-arrest interrogation and deportation; *Munoz v. Bell*, Cv. No. 77-3765-WG (C.D. Cal. 1978), federal case resulting in court-approved nation-wide settlement requiring Immigration Judges to advise all persons in deportation proceedings of free legal services available to indigent immigrants.

5. My resume is attached as Exhibit A.

6. I am able to converse with class members and their mothers in Spanish about immigration matters. The majority of class members in the litigation the CHRCL conducts, including *Flores*, are monolingual Spanish-speakers, and the

ability to communicate with these class members in their native language is invaluable.

7. The successful prosecution of the Ex Parte Application required an unusual combination of skills, knowledge and experience. Since 1985 I and other staff of the Center for Huan Rights and Constitutional Law have devoted a substantial part of our practice to working with immigrant and refugee minors; I believe that the insight I and other staff have developed with this population through, for example, our work in litigating, negotiating, and coordinating the monitoring of the Flores settlement, was invaluable to the issuance of the Orders based on the ex parte application and its follow-up work .

8. My activities sometimes comprise of several related tasks. For example, when shepardizing a case I normally review cases identified and then often further shepardize those cases and review other significant sources relied upon by decisions including statutes, regulations, legislative history, etc. I exchange updates and information with advocates working directly with detained Class Members. I have trained lawyers, interpreters, and doctors to participate in and have organized many Flores monitoring visits to Defendants' detention facilities.  I routinely follow all media stories and published studies, analysis, and reports regarding the detention and release of Class Members. I also routinely monitor and engage in advocacy regarding policies being considered, modified, or issued by the Executive Branch or Congress impacting Flores Class Members.

9. The original plaintiffs in this action were indigent at the time this action commenced. Further, it is virtually self-evident that plaintiff class members are indigent as well. By definition, they are immigrant or refugee minors in federal custody. *See Flores* Settlement Agreement ¶¶ 10-11.

10. Prior to filing the Ex Parte Application, Defendants refused to grant relief after being sent a detailed meet and confer letter by counsel outlining steps Defendants could take for the safety of Class Members in light of the COVID-19

pandemic. See Exhibit C attached hereto.

11. Based on my experience, the work performed by all co-counsel relating to the Ex Parte Application as reflected in their time records was reasonable, necessary, and justified for the successful litigation of the application.

12. The total time compensable for my work on plaintiffs' application to enforce the *Flores* settlement, is reflected in the attached itemization in Exhibit B. My total time for which Plaintiffs seek fees for my working on the Ex Parte Application until the time of Defendant's final appeal was 264 hours. I routinely exercised billing judgment by often not seeking reimbursement for multiple tasks including for example routine brief discussions about the litigation with co-class counsel Carlos Holguin, other co-counsel, consultants, and advocates representing class members in their individual cases, brief email traffic with co-counsel, consultants and counsel representing class members, review of media reports and studies regarding the challenged policies or practices, some monitoring activities, and other tasks taking less than ten minutes.

13. I believe my market rate based on my years in practice and experience is $1,050/hour.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 29th day of September, 2021, at Oak View, California.


Peter Schey

/ / /

EXHIBIT A

*PETER A. SCHEY RESUME (2021)*

-----------------------------------------------------------------------

PERSONAL:

Place of Birth: Durban, South Africa

Telephone:     (323) 251-3223
Facsimile:     (310) 526-6537
E-mail: pschey@centerforhumanrights.org
The State Bar of California: Active # 58232

Websites:              www.centerforhumanrights.org
                       www.casalibrela.org
                       www.tents4homeless.org

Facebook:      www.facebook.com/center4humanrights
-----------------------------------------------------------------------

EDUCATION:

Lowell High School, San Francisco, CA
Graduated (honors) - June, 1964;

University of California, Berkeley, CA
Graduated (honors) - June, 1969
Bachelor of Arts in Psychology

California Western School of Law,
San Diego, CA
Juris Doctor (honors), June, 1973;
Outstanding Service Award, March 2, 1972;
California Western Law Review, 1971-72.

-----------------------------------------------------------------------

EMPLOYMENT HISTORY:

CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW, INC.

Peter Schey Resume
Page 2

1997-present: Founder and President of the Center for Human Rights and Constitutional Law, Inc. (CHRCL Inc.), a program that provides transitional living services, including shelter, food, counseling, health, legal, and educational services to unaccompanied formerly detained and homeless immigrant and refugee youth. See www.casalibrela.org

CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW FOUNDATION

1980 – present: Founder and Executive Director of the Center for Human Rights and Constitutional Law Foundation (CHRCL Foundation). The Center is dedicated to the protection and promotion of fundamental civil liberties and human rights through major class action litigation, policy analysis and advocacy, community education, legal training and the presentation of petitions before international fora. The Center serves as a resource to social, legal, religious and community-based groups throughout the United States involved in civil and human rights advocacy.

UNIVERSITY OF CALIFORNIA AT LOS ANGELES (UCLA)

April-June 2017: Lecturer on political economy of migration patterns, the root causes of current migration patterns, and the rise of ethno-centric nationalist groups and policies in response to migration patterns in the United States and Western Europe today.

UNIVERSITY OF SOUTHERN CALIFORNIA, LAW CENTER

Adjunct Professor, University of Southern California Law Center, teaching courses on international human rights and immigration law (1987-1991).

UNIVERSITY OF CALIFORNIA LOS ANGELES SCHOOL OF LAW

Lecturer of Law, University of California School of Law teaching immigration and refugee law (Spring, 1989).

SOUTHWESTERN UNIVERSITY SCHOOL OF LAW (LOS ANGELES)

Adjunct Professor, University of Southern California Law Center, teaching courses on international human rights and administrative law

LEGAL AID SOCIETY OF SAN DIEGO

1973-1978: Established the first legal aid unit to provide representation for low-income immigrants in the Southern California area and initiated first class action cases on behalf of immigrants.

NATIONAL CENTER FOR IMMIGRANTS RIGHTS

Peter Schey Resume
Page 3


1978-1980: Founded and served as Executive Director of the first national support center dedicated to the protection and promotion of the legal rights of immigrants. The program continues to function today as the National Immigration Law Center (NILC).


------------------------------------------------------------------------

HOMELESS AND AT RISK YOUTH

First initiated and supervised an enrichment program for at risk youth at the Hunters Point/Bayview Community Center in 1968-69 funded by the San Francisco Foundation. The program identified at-risk youth mostly living in projects in the Hunters Point/Bayview neighborhoods in South San Francisco where family incomes were largely below federal poverty guidelines and crime and homelessness were widespread, and provided participants with a range of assessments, tutoring, field trips, and social services.

1970 served as a youth counselor at Balboa High School in San Francisco in the first state-sponsored trial affirmative action program for the University of California at Berkeley identifying at-risk minority youth for admission to UC Berkeley and providing guidance and assistance as they completed the affirmative action application process.

1992 to 1999 served as director of Safe Haven shelter in Los Angeles, a program funded by HHS, HUD, and private donations to provide transitional housing and a continuum of care for homeless and at risk minors in Los Angeles, with a focus on homeless immigrant youth and detained unaccompanied minors whose release was secured by the program.

2003-present served as President of CHRCL, Inc. which operates Freedom House/Casa Libre, a larger home than the Safe Haven shelter. Raised funds for purchase and supervised renovation of the home, supervised acquisition of a license as a group home in 2003, continue to provide programmatic direction for the program, and provide legal services for its residents.


------------------------------------------------------------------------


LITIGATION EXPERIENCE:

Served as lead counsel or co-counsel in over 100 major civil rights and class action cases in federal courts throughout the United States involving access to education, health and welfare benefits, administrative law, the rights of immigrants, refugees and indigenous people, and complex individual cases involving constitutional, criminal, transnational, and corporate issues. Represented or supervised the representation of over 2,000 cases in a nation-wide project involving women who have suffered sexual harassment, abuse, or

Peter Schey Resume
Page 4

discrimination. Litigation against the federal government has resulted in the largest attorney fee awards in the country.

(1) In re Alien Children Education Litigation, Doe v. Plyler, 457 U.S. 202, 102 S.Ct. 2382, 95 L.Ed.2d 786 (1982) (U.S. Supreme Court) (lead counsel in State-wide class action case finding unconstitutional as a violation of Fourteenth Amendment equal protection a Texas statute which denied public education to undocumented children; over 100,000 children admitted to Texas public schools annually as a result of United States District Court injunction affirmed by United States Supreme Court decision);

(2) Enrique Fuenes v. City of Riverside (U.S. District Court, Central District of California) (lead counsel in lawsuit for damages following video-taped beating of Mexican national Mr. Fuenes by Riverside Sheriffs; Mr, Fuenes, a Mexican national migrant, was being smuggled in a high-speed chase; case settled and Mr. Fuenes received an award of $700,000)

(4) American-Arab Anti-Discrimination Committee, et al., v. Anti-Defamation League of the B'Nai B'rith, et al., No. Cv. 93-6358-RP (C.D. Cal.) (lead counsel in civil rights federal court case against the City and County of San Francisco and other defendants challenging illegal invasions of privacy and surveillance of approximately 5,000 individual class members and 1,000 organizations based solely on lawful First Amendment activities; final settlements required identification of thousands of pages of documents containing unlawful law enforcement information, redaction of documents from defendants' files, and injunctions regarding future policies and conduct; attorneys' fees awarded).

(5) American Apparel LLC: Legal counsel for American Apparel and CEO Dov Charney on range of cases including EEOC conciliation to achieve model sexual harassment policy, EEOC conciliation to achieve model ADA policy, litigation of individual cases, Immigration and Customs Enforcement (ICE) I-9 audit, public relations, and corporate social responsibility issues.

(6) Directing attorney of Voces Unidas Project, a nationwide project involving representation of over 2,000 women victims of sexual harassment, abuse, or discrimination.

(7) Native American Heritage Commission v. Cal State Long Beach, No. BC 097212 (Los Angeles Superior Court) (lead counsel in State court lawsuit seeking to halt effort by California State University at Long Beach to build a shopping center over a historic Native American burial ground; preliminary injunction halted development plan);

(8) League of United Latin American Citizens, et al. v. Pete Wilson, et al., No. Cv. 94-7569-MRP (C.D. Cal.), LULAC v. Wilson, 908 F.Supp. 755 (C.D. Cal. 1995) (lead counsel in California-wide class action case representing numerous elected officials and approximately one million families challenging the constitutionality of Proposition 187, a

Peter Schey Resume
Page 5

State-wide initiative denying health care, social services and education to wide classes of
California immigrant residents; law declared unconstitutional in federal court decisions in
1995 and 1997);

(9) Haitian Refugee Center v. Smith, 676 F.2d 1023 (1982) (U.S. Court of Appeals) (lead
counsel in first major Florida class action case involving constitutional rights of Haitian
refugees seeking political asylum in the United States; won permanent injunction
reversing INS' denial of political asylum to over 5,000 Haitian refugees and prohibited
their deportation from the United States to Haiti; federal legislation later granted class
members permanent resident status);

(10) Lopez v. INS, Cv. No. 78-1912-WB(xJ) (lead counsel in certified nation-wide class
action case involving the right to legal counsel of persons arrested by INS; nation-wide
settlement impacting over 1 million class members per year reached requiring immigrants
arrested by federal authorities to be provided written advisal of their legal rights and a
period of time to consult with attorneys before post-arrest interrogation);

(11) Flores v. Garlan, Cv. D.C. No. 2:85-cv-04544-DMG-AGR (co-lead counsel in
nationwide class action case challenging federal policies for apprehended children,
including the conditions of detention; national settlement reached with the U.S.
Government addressing the conditions of detention, requiring the federal government
to (i) end commingling of detained children with unrelated adults, (ii) provide
education and reading materials and visitation with friends and relatives; (iii) requiring
release of detained minors in certain circumstances to unrelated responsible adults);

(12) Immigrant Assistance Project of the Los Angeles County Federation Of Labor
(AFL-CIO) v. Immigration and Naturalization Service, 306 F.3d 842 (9th Cir. 2002) (co-
lead counsel in lawsuit challenging INS's denial of legalization to persons considered
ineligible based on "known to government" statute; summary judgment won in favor of
class of approximately 50,000 immigrants; INS appeal pending before the U.S. Court of
Appeals);

(13) Orantes-Hernandez v. Smith, 541 F.Supp. 351 (C.D. Cal. 1982) (co-lead counsel in
nationwide class action case; won preliminary injunction covering about 30,000
Salvadorans fleeing the U.S.-sponsored war in their country regarding their right to seek
and obtain political asylum in the United States, and their right to consult with lawyers);

(14) Munoz v. Bell, Cv. No. 77-3765-WG (C.D. Cal. 1978) (lead counsel in major
federal case resulting in court-ordered nation-wide settlement requiring the federal
government to advise all persons in deportation proceedings of free legal services
available to indigent immigrants);

(14) Jane Doe v. State of Hawaii, Cv. No. 97-00169 (U.S. District Court for the District
of Hawaii) (lead counsel in personal injury and injunction lawsuit involving Hawaii state
hospital rules for physician-patient relations and sexual assault by psychiatrist;

Peter Schey Resume
Page 6

confidential settlement reached for monetary damages for plaintiff and State of Hawaii
changes in policies and practices involving psychiatrist-patient relations);

(15) Development Disabilities Area Board 10 v. Smith, Cv. No. 500440 (Los Angeles
Superior Court) (lead counsel in state-wide class action leading to class-wide settlement
allowing indigent children access to health care services);

(16) People of the State of California v. Tariacuri Ramirez, Superior Court, Riverside
County (counsel in obtaining full dismissal of first degree murder charge unjustly brought
against the 17-year old defendant).

 (17) Thompson v. United States, Cv. No. 83-0903 (D. Hawaii) (lead counsel civil action
on behalf of prominent Hawaii lawyer resulting in broad injunction limiting manner in
which Department of Justice criminal investigation could proceed against attorney target
of criminal investigation);

(18) Charo v. United States, U.S. Ninth Circuit Court of Appeals, No. 95-70574 (decided
Feb, 20, 1997) (lead counsel for entertainer Charo in successful litigation for attorneys'
fees following dismissal of employer sanctions charges brought by the United States
Government against Charo's corporation in Hawaii).

(19) California Medical Board v. Robbins (California Court of Appeals) (lead counsel in
successful appeal and reversal of revocation of medical license of prominent surgeon in
case involving turf battle with plastic surgeons resulting in unjustified charges; all
charges dismissed and decision to revoke surgeon's license reversed by the California
Court of Appeals)

 (20) Baliza v. INS, 709 F.2d 1231 (9th Cir. 1982) (lead counsel in federal Court of
Appeals precedent case reversing federal agency's use of unauthenticated documents in
contested administrative proceedings when maker of document is not made available by
agency for cross-examination);

(21) Moreno v. United States, Cv. No. 87-01431-TJH (C.D. Cal.), (lead counsel in
settlement of Federal Tort Claim Act and Bivens action for wrongful arrest and
deportation of a minor lawful resident by INS; child illegally deported by the INS
awarded over $100,000 in damages);

(22) Catholic Social Services v. Meese, 113 S.Ct. 2485 (1993) (U.S. Supreme Court)
(lead counsel in nation-wide class action case seeking legalization opportunity for
200,000 immigrants who briefly traveled abroad during one-time 1987-88 "amnesty"
program and were deemed ineligible to apply by Government; nation-wide injunction
won permitted the filing of over 100,000 "late" amnesty applications after the statutory
period expired; case settled by Department of Homeland Security following fifteen years
of litigation);

Peter Schey Resume
Page 7

(23) Mendez v. INS, 563 F.2d 956 (1977) (lead counsel in federal Court of Appeals precedent case holding that when an immigrant's deportation was accomplished in violation of agency regulations or the due process guarantee of the U.S. Constitution, the immigrant must be allowed to return to the United States for further hearings);

(24) Whetstone v. INS, 561 F.2d 1303 (1977) (lead counsel in federal Court of Appeals precedent case striking Government's requirement that marriages must be consummated in the traditional way in order for the marriage to serve as a basis for an immigrant visa);

(25) Congressman R. Dellums v. Smith, Cv. No. 82-0040-G (S.D. Cal. 1982) (lead counsel in class action resulting in injunction and settlement requiring the federal government to allow public access to administrative hearings at detention facilities);

(26) Aviles-Torres v. INS, 790 F.2d 1433 (1986) (lead counsel in federal Court of Appeals case reversing Immigration Judge's denial of political asylum; interpretation of federal asylum and withholding statute)

(27) United States v. Phra Winai (lead counsel in federal criminal and political asylum case involving high-profile Buddhist monk from Thailand; federal criminal case favorably resolved through settlement and political asylum granted avoiding extradition to Thailand where monk faced religious persecution).

INTERNATIONAL WORK (PARTIAL LISTING):

(1)  South Africa Constitution Watch Commission (1990-1994) Founder and coordinator of an international commission to report on the constitutional positions of major parties in South Africa as evaluated under international human rights law. Commission included over 40 prominent jurists and political leaders, including former Costa Rican President Oscar Arias and former U.S. President Jimmy Carter.

(2)  Haitian Interdiction Petition (Sept. 1990-98) Lead counsel in successful human rights petition before the Inter-American Commission on Human Rights of the Organization of American States (OAS) challenging the U.S. Government's program of interdicting and returning Haitian refugee boatpeople without regard to their right to life, due process, to depart their country, and to seek asylum. Petition resulted in lengthy decision finding United States Government in violation of several binding international instruments; Commission's final decision was adopted by the General Assembly of the Organization of American States.

(3)  Stecel 11 Case,. Represented 11 leading trade unionists, longest held political prisoners in El Salvador during U.S.-backed war; petition filed with the Inter-American Commission on Human Rights of the OAS; release of prisoners negotiated and safe passage to Amsterdam obtained.

Peter Schey Resume
Page 8

(4) Dennis Quintanillia--Kidnapped Child. Negotiated release of U.S. citizen child
kidnapped by Salvadoran National Guard after assassination of mother in El Salvador
(New York Times, Feb. 20, 1983, p. 1).

(5) Provision of legal counsel to President Bertrand Aristide of Haiti following his exile
by military coup;  successful entry into the United States following exile by coup;
assisted in negotiations with U.S. Government for President Aristide's return to Haiti;
accompanied President Aristide when returned to Haiti.


OTHER ACTIVITIES:

(1)  *Founder and director of Voces Unidas*, a nation-wide project undertaken in 2005
with the goal of identifying and representing low-income women and children victims of
sexual harassment, abuse and discrimination and provide no cost legal representation.

(2)  *Founder and director of "Safe Haven" and "Freedom House" ("Casa Libre")* group
homes for unaccompanied immigrant and refugee children; acquired $2 million funding
to purchase and operate shelter facilities to provide youth with temporary housing, family
reunification services, legal services, medical care, mental health counseling, etc.
(www.casa-libre.org)

(3)  *Co-founder and current Acting Chair of the Board of El Rescate*, a NGO based in
Los Angeles, Ca., providing free legal services to Central American refugees.


EDITORIAL SERVICE (for dates of service contact Peter Schey):

Migration Today
Board of Editors of the Immigration Law and Procedure Reporter
(Matthew Bender),
Editorial Board, Immigration and Nationality Law Review (Clark Boardman),
Advisory Board, Migration World Magazine (Center for Migration Studies).


BAR ASSOCIATION AND COMMUNITY SERVICE:

President of the Board, El Rescate (2004-2006), Board member 2006-present.
Board member, People's College of Law (2006-2009).
President of Community Media Project (1993-1998).
Vice-Chairperson of the Individual Rights Section of the Los Angeles County Bar
Association (1986, 1990, 1992, 1994).
General Counsel to the United California Mexican-American Association (1981-present).
Board member Hermandad Mexicana Nacional (1988-1994).

Peter Schey Resume
Page 9

National Advisory Board Member, the National Asylum Appeals Project of the Lawyers Committee for Civil Rights (1986-1992).

Board member The Resource Center (New Mexico) (1984-1986, 1990-1998);

Board member CRISPAZ (Texas) (1986-87);

Advisory Board, Bhopal Justice Campaign (1989-1993).

Advisory Board, Guatemala Information Center (1989-1990).

National Advisory Board, Guatemala Support Network (1992-present).

Board member National Coalition for the Rights of Immigrants and Refugees (1990-1999).

Executive Committee of the Immigration Section of the Los Angeles County Bar Association (1986).

General Counsel to the Coalition for Humane Immigration Reform of Los Angeles (CHIRLA) (1987-88).

Executive Committee, National Lawyers Guild Los Angeles Chapter (1988-1998).

Chair, International Action Committee of the National Lawyers Guild (1995-2000).

TREATISE:

(1) Immigration Law and Procedure, chapter on political asylum (8-volume treatise on immigration and refugee law published by Mathew Bender)

(2) Immigration Law & Crimes,, major contributor (published by Clark Boardman publishing company, 1984)

AWARDS:

2019 Justice Cruz Reynoso Community Service Award, Mexican American Bar Association

2015 Border Angels, Lifetime Achievement Award  for service to protection of migrants domestic and international human rights

2010 Loyola Marymount University recipient *Intercultural Dialogue Person of the Year Award*

1996 County of Los Angeles and League of United Latin-American Citizens commendation for dedicated service to the affairs of the Latino community in the U.S.

1988 Carol King Award for efforts "to secure justice for Salvadoran asylum seekers"

1986 Commendation for Pro Bono Services by State Bar of California

Peter Schey Resume
Page 10


1985 Jack Wasserman Memorial Award by American Immigration Lawyers Association
for "excellence in litigation" on behalf of immigrants

1980 Clarence Darrow Foundation Award for civil rights litigation

1980 Award for Outstanding Service to Hispanic Community by United California
Mexican American Association


PARTIAL LISTING OF CLIENTS REPRESENTED IN U.S. COURTS AND/OR
INTERNATIONAL LAW PETITIONS:

U.S. Representative Ron Dellums
California Senate Majority Leader Richard Polanco
Chinese American Citizens Alliance (Washington, DC);
United Farm Workers of America (AFL-CIO) (California);
California Attorney General Xavier Becerra;
National Council of Churches (New York);
United Methodist Church (Washington, DC);
League of United Latin American Citizens (LULAC);
American G.I. Forum (Dallas, Texas);
American Apparel, Inc.
Dov Charney, Founder and CEO of American Apparel
Micro Solutions Enterprises (MSE)
International Commission for the Defense of Salvadoran Refugees (San Salvador);
Gerardo Hernandez (Cuba Five)
Clergy and Laity Concerned (Washington, DC);
Lutheran Council in the U.S.A. (Washington, DC);
International Tribal Council (San Franscisco, Ca.);
Guatemala Support Network (Washington, DC);
Global Exchange (San Francisco, Ca.);
California Catholic Conference (Sacramento, Ca.);
Southern California Ecumenical Council (Los Angeles, Ca.),
Arizona Farm Workers Union (Ariozna);
California Native American Heritage Commission (Sacramento, Ca.);
International Commission for the Defense of Salvadoran Refugees (San Salvador);
Comisión Mexicana de Defensa y Promoción de Los Derechos Humanos, A.C. (Mexico);
Central American Refugee Center (Washington, D.C.);
ACLU Foundation of S. California (Los Angeles, Ca.);
Center for Constitutional Rights (New York);
American Friends Service Committee (AFSC) (Philadelphia, Pa.);
National Farm Worker Ministries Washington, DC;
Washington Office on Haiti (Washington, DC);
Haitian Center for Human Rights (Port-au-Prince, Haiti);
Palestine Aid Society (New York);

Peter Schey Resume
Page 11


National Coalition for Haitian Refugees (New York);
Haitian Refugee Center (Miami, Fla.);
United California Mexican American Association (San Diego, Ca.);
Arab-American Anti-Discrimination Committee (Washington, DC);
Committee in Solidarity with the People of El Salvador (Washington, DC);
National Association of Arab Americans (Washington, DC);
Association of Arab-American University Graduates, Inc.;
Bay Area Anti-Apartheid Network (San Francisco, Ca.);
International Jewish Peace Union;
National Conference of Black Lawyers (New York);
American Indian Movement (Colorado);
National Lawyers Guild (New York);
Coalition Against Police Abuse (Los Angeles, Ca.);
Palestine Solidarity Committee (New York);
Association for Residency and Citizenship of America
Academia Mexicana de Derechos Humanos, A.C. (Mexico);


*"The test of our progress is not whether we add more to the abundance of those who have much; it is whether we provide enough for those who have too little."*

**-** *Franklin D. Roosevelt*


*"The arc of the moral universe is long, but it bends towards justice."*

*- Martin Luther King, Jr.*

* * * *

EXHIBIT B

Peter Schey        97

| Date | Hours | Mins | Task |
|------|-------|------|------|
| 2/29/20 | 4 | 50 | Draft orientation materials for ORR volunteer monitors'review applications and select monitors; draft email with attachments and schedule to monitors |
| 3/1/20 | 3 | 20 | Review/edit materials for monitors; research re status of COVID cases in US; research re COVID in minors |
| 3/6/20 | 4 | 10 | Research re spread of COVID-19; CDC positions; policies by federal agencies; impact on minors; possible TRO claims |
| 3/14/20 | 5 | 0 | Research and drafting ex parte applic for TRO and PI |
| 3/15/20 | 4 | 0 | Review COVID-19 INTERIM GUIDANCE FOR ORR PROGRAMS and  attachments, sentby the Office of Refugee Resettlement; review cases for TRO application; review ORR UAC Manual of Procedures re existing safety policies |
| 3/16/20 | 9 | 0 | Research and draft TRO application; cure t CDC policies and data, current ICE and ORR rpeorts/guidance & data |
| 3/17/20 | 6 | 20 | Research re current federalagency policie sre COVID-19 for detained and non-detained |
| 3/18/20 | 8 | 20 | Research and draft TRO Memo |
| 3/19/20 | 6 | 20 | Review decs and draft decs obtained by co-counsel |
| 3/20/20 | 9 | 10 | Review ORR materials produced during a meeting at Shiloh RTC with class counsel; review correspondence of Drs. Scott A. Allen and Josiah Rich |
| 3/21/20 | 5 | 0 | Research & drafting TRO and draft and send detailed meet and. confer correspondence to Defendants |
| 3/22/20 | 9 | 20 | Research & drafting TRO and draft and send detailed meet and. confer correspondence to Defendants |
| 3/23/20 | 9 | 50 | Review and coument findings ofMarch monitoring for TRO statemenn tof facts; review Defenddnats' monthly data re number of class members in custody for TRO application; prepare for and meet and confer with Defendants'counsel;revikew drfat dec of Dr. Katherin Peeler & Dr. Craig Haney, |
| 3/24/20 | 9 | 10 | Draft Schey Declaration in support of TRO application; review and email re Nancy Wang declaration; prepare for and further rmeet and confer with Defendant's counsel |
| 3/25/20 | 10 | 20 | Review and organize exhibits; cite check TRO draft application; shep cases |
| 3/26/20 | 7 | 30 | Continue Review and organize exhibits; cite check TRO draft application; shep cases;reviewand edit Schey declaration inn supporyt of TRO application;'finalize proposed TRO |

| | | | |
|---|---|---|---|
| 3/27/20 | 9 | 20 | Review & comment monitor attorney Michael Fassio draft dec re COVID 19 practices in ORR facilities; review 3/26 memo by Agg re BOP detention policies iinnlkight of COVID pandemic; research other fed and state court orders;e.g. downnlaod & review Memo and Order in Basank v.Decker (SDNY); 3/18/20 Memo and Order in US v.Stephens (SDNY); compplaint & deniallof TRO in Dawson. v.Asher (WDW) |
| 3/28/20 | 1 | 10 | Review Court's TRO and emails telecons with advocates re same |
| 4/2/20 | 1 | 0 | Review data and draft. Schey suppdeclarationn re TRO |
| 4/4/20 | 2 | 0 | Draft Schey 2nd supp declaration re TRO |
| 4/6/20 | 2 | 30 | Callwith co-counsel re TRO application; review 4/5/20 Complaint to Offic eof Ciuvil Rights DHS by Proyetco Dilley, ALDEA, RAICES (lergal services providers) reprolonge ddetention ofclass members |
| 4/7/20 | 9 | 20 | Review,  and review record cites re Defendants' Supp Response to Request for TRO |
| 4/8/20 | 0 | 40 | Draft Schey declaration re data released in OMG and Flores by Defendants |
| 4/10/20 | 5 | 0 | Review allocs; prepare for hearing; hearing |
| 4/12/20 | 2 | 0 | Download and Review all key filings in MMV case (Docktet ## 16, 26, 27, 39, 40, 54, 55, 72,etc.) |
| 4/17/20 | 7 | 10 | Review & research re Defs Second Supp Opp to application for TRO and exhibits |
| 4/18/20 | 7 | 30 | Review/comment decs in support of TRO application; continue review & research re Defs Second Supp Opp to application for TRO and exhibikts |
| 4/19/20 | 7 | 20 | Research re Plaintiffs' TRO.  Reply brief re ICE; review federalagencies and Defendant'scurrent COVID 19 Reports/data |
| 4/20/20 | 9 | 10 | Review/comment/organize plaintiffs'supp declarations/exhibits |
| 4/21/20 | 8 | 50 | Draft/edit/review Plaintiffs Reply re TRO application |
| 4/22/20 | 1 | 20 | Review Andrea Ordin's report and Defs 4/22 filingn re. ORR case data; draft Schey suppec. |
| 4/23/20 | 2 | 30 | Review advocates decs and parenst decs |
| 4/24/20 | 3 | 30 | ReviewCourt Order #784,summary re same.emails to advocates re same |
| 4/25/20 | 0 | 45 | Review SpecialMaster Report #780 |
| 5/7/20 | 0 | 45 | Flores COVID19 Telecon Andrea, Manoj (texas advocates) |
| 5/15/20 | | 50 | Review Jub Coord Report # |
| 5/20/20 | 7 | 50 | Draft Plaintiff's Reply to ICE Ju Coord Report |
| 5/21/20 | 6 | 20 | Continue to draft Plaintiff's Reply to ICE Ju Coord Report |
| 6/11/20 | 1 | 40 | Review Juv Cooprd report # 813-1 and review data compared to monthly data provided class counsel |

| Date | Hrs | Mins | Description |
|---|---|---|---|
| 6/14/20 | 8 | 0 | Research and drafting Plaintiff sresponse to Juv Coord Report 813-1 |
| 6/15/20 | 9 | 0 | Draft Plaintiffs 24 page Response to IVCE Juv Coord Report |
| 6/16/20 | 9 | 10 | Draft Plaintiffs Respons e to Def's requets tolift restrictions re class members in jv detention center ;review/comment/telecon re attorney Samantha Ratcliffe declaration |
| 6/17/20 | 8 | 10 | Review facts and draft Schey declaration re release of class member APP; review/edit Plaintiffs Response to Def's requets tolift restrictions re class members in jv detention center;review/edit proposed Order;review/edit Pltfs response to ICE Juv Coord report |
| 6/18/20 | 2 | 20 | Continnue research re federal policies re social distancing, testing, etc re COVID-19; review Defendant's detention data |
| 6/23/20 | 1 | 0 | Review notice of appeal; review re appealabiity and deadlines |
| 6/25/20 | 3 | 20 | Draft Schey dec re status of class member APP; reviuew applic tofileamcius brief andbrief re Juv Coordd report #826 |
| 6/26/20 | 3 | 0 | Prepare for status conference; status conference; Review Court Order # 833 |
| 7/6/20 | 7 | 40 | Download and review/annotate findings of fact and conclusions of law in Garcia-Ramirez v. ICE re minors in detention;review & research re Defs' applic to lift Restrictions in Paragraph 4.e of the June 26, 2020 Order; draft Plaintiffs' filing in resp to Fed's reequest re B.B.B., A.F.P.P. and K.J.A.B |
| 7/22/20 | 0 | 30 | Review JuvenileMonitor report |
| 7/25/20 | 0 | 10 | Draft Plaintiffs non-oppto Defs' filing Juv Coord  reports under seal |
| 7/29/20 | 0 | 20 | Review OMG 7-22-20 Opinion |
| 7/30/20 | 0 | 15 | Review Defs' position and emails with advocates and draft Plaintiffs' position re status COVID19 and related policies |
| 7/31/20 | 0 | 10 | Review  dec of  Claire Doutre; finalize joint statement |
| 8/24/20 | 1 | 10 | Review Defendants notice of appeal; review appealability ofOrder Plaintiffs' next steps |
| Total hrs/mins | 247 | 1045 | |
| Totall hrs | 264.42 | | |

EXHIBIT C

# CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW

256 S. OCCIDENTAL BOULEVARD
LOS ANGELES, CA 90057
Telephone:  (213) 388-8693 Facsimile:  (213) 386-9484
www.centerforhumanrights.org

March 22, 2020

*Via email*
Sarah Fabian
Senior Litigation Counsel
Office of Immigration Litigation
United States Department of Justice
P.O. Box 878
Ben Franklin Station
Washington, DC 20044


Re: *Flores v. Barr*, CV 85-4544-DMG-AGRx.

Dear Sarah:

Plaintiffs request that the *Flores* parties meet and confer telephonically tomorrow, March 23, 2020, to discuss ways in which the parties may jointly address the risk that detained *Flores* class members are now facing, or will shortly face, as a result of the COVID-19 public health emergency.

Plaintiffs are informed that group detention is incongruent with the recommendations of the Centers for Disease Control and Prevention (CDC), as well as state and local health, all of whom recommend precautions that are difficult or impossible to observe in facilities housing large groups of class members.

We accordingly wish to explore whether Defendants may be amenable to taking certain prompt steps to reduce the danger of class member infections, including providing *Flores* class counsel copies of instructions issued to those detaining class members, clearly advising accompanying parents of their children's rights under the Settlement (including a parent's right to waive her or his child's *Flores* rights), expediting the release of class members to available custodians identified in Paragraph 14 of the Settlement, and advising class counsel of the reasons why class members are not released within seven days.

Plaintiffs understand the need to protect children against abuse or neglect following release, but the seriousness of such risks should be balanced against the health and safety dangers children face in the event COVID-19 spreads through Defendants' facilities. News reports indicate that class members have already been exposed to COVID-19 at the MercyFirst and Abbott House ORR contract facilities in New York. The CDC advises that COVID-19 is thought to spread mainly from person-to-person, between people who are in close contact with one another (within about 6 feet) and through respiratory droplets caused when someone coughs or sneezes.

Sarah Fabian
March 22, 2020
Page 2 of 4

Pursuant to Paragraph 37 of the Settlement, Plaintiffs are requesting an urgent meet and confer with Defendants on Monday, March 23, 2020, to discuss enforcement of the Settlement in light of the COVID-19 pandemic and the prolonged detention of accompanied children including in family residential centers. Please advise what time Defendants are available to meet and confer.

As used in this correspondence, the term Defendants includes ORR, CBP, and ICE. Plaintiffs are hoping that the parties may reach agreement along the following lines to remain in effect during the COVID-19 pandemic:

1. Following arrest, the Defendants will hold minors in facilities that are safe and sanitary and that are consistent with the Defendants' concern for the particular vulnerability of minors. Settlement ¶ 12.A. Every effort will be taken to ensure that the safety and well-being of the minors detained in these facilities are satisfactorily provided for by the staff. *Id.* To that end, Defendants shall take all reasonable steps to reduce the population of class members in congregate facilities such that class members may adhere to the practices recommended by the Center for Disease Control to avoid the spread of COVID-19 and protect themselves, those with whom they are detained, and staff overseeing class members from infection.

2. All Defendants will make and record prompt and continuous efforts aimed at the release of minors without unnecessary delay from the time of apprehension. Settlement ¶¶ 14 and 18. *See also* Order Appointing Special Master [Doc. # 494] at 10-12 (detailing expected data collection re efforts at release). Such efforts at family reunification shall continue so long as the minor is in Defendants' custody. Settlement ¶ 18.

3. Subject to Paragraphs 4 and 5 below, and absent good cause based on articulable facts to believe that available custodian(s) would harm or neglect a class member, all detained class members who are not flight risks or a danger as determined using the criteria set forth the Settlement at Paragraphs 21-22, should be released by Defendants to available sponsors without unnecessary delay and in no more than seven (7) days following apprehension, in the following order of preference, to: A. a parent; B. a legal guardian; C. an adult relative (brother, sister, aunt, uncle, or grandparent); D. an adult individual or entity designated by the parent or legal guardian as capable and willing to care for the minor's well-being in a declaration signed under penalty of perjury before an officer employed by Defendants; E. a licensed program willing to accept legal custody; or F. an adult individual or entity seeking custody, in the discretion of the Defendants, when it appears that there is no other likely alternative to long term detention and family reunification does not appear to be a reasonable possibility. Settlement Paragraph 14. Before a minor is released to a sponsor identified in Paragraph 14 of the Settlement, Defendants shall require that the sponsor execute an Affidavit of Support (Form 1-134) and an agreement as set forth in Paragraph 15 of the Settlement.

4. For class members detained with parents or legal guardians, Defendants shall (i) provide a written notice in Spanish or in the parent's or legal guardian's native language if other than Spanish in the form to be attached as Exhibit 1 regarding the class members' release and transfer rights

Sarah Fabian
March 22, 2020
Page 3 of 4

under Paragraphs 14 and 19 of the Settlement, and record the date, time, and location where the notice was provided, (ii) provide the parent or guardian with a list of free legal services and prompt access to consultation and follow-up consultations with available legal counsel in person or by telephone without charge to the parent or guardian so they may discuss with counsel their options under the Settlement, (iii) without charge, provide the parent or guardian with access to telephonic communications with potential sponsors listed in Paragraph 14 of the Settlement so they may discuss with the sponsors their availability and ability to care for the minor if released to that sponsor, (iv) provide the parent or guardian with the option to opt his or her class member minor out of the release and transfer rights of the Settlement, and have them execute a document in the form to be attached as Exhibit 2 in Spanish or their native language stating that they are knowingly and intelligently waiving their child's right to release under the Settlement after having had the opportunity to consult with counsel. In the event a form cannot promptly be made available in the native language of a non-Spanish speaking parent, Defendants shall have the form(s) read to the parent in their native language and shall record that this was done, including the language used, date, location, and person who translated the form(s) to the parent. This may be recorded in the parent's A file. If the parent or guardian elects to have the child reunified with a sponsor listed in Paragraph 14, the child shall be reunified within 7 days to the sponsor. However, due to the extraordinary nature of this pandemic, we would request that simultaneous release of the child and parent or guardian be considered under 8 C.F.R. 1236.3(b)(2) to best protect the well-being of the child.

5. If an accompanying parent or guardian of a class member not released pursuant to Paragraph 14 of the Settlement opts to have the class member transferred to a facility licensed by a state for the care of dependent children, Defendants shall make and record continuous efforts to transfer the minor as expeditiously as possible, and in any event in no more than seventy-two (72) hours to a facility licensed by a state for the care of dependent children and insure that the facility's policies and practices comply with the terms of the Settlement ¶ 19 and Exhibit 1. In accordance with Paragraph 19 of the Settlement, such minor shall be placed temporarily in a licensed program only until such time as release can be accomplished in accordance with the minor's parent's or guardian's wishes pursuant to Paragraph 14 of the Settlement.

6. In the event Defendants determine that the detention of a class member is required either to secure his or her timely appearance before ICE or the immigration court, or to ensure the minor's safety or that of others, the class member may be transferred to a suitable facility under Paragraphs 21-22 of the Settlement. In making this decision Defendants should take into account the potential health dangers faced by class members detained in congregate facilities. However, Defendants will not place a minor in a secure facility pursuant to Paragraph 21 if there are less restrictive alternatives that are available and appropriate in the circumstances, such as transfer to (a) a medium security facility which would provide intensive staff supervision and counseling services or (b) another licensed program. Settlement Paragraph 23. All determinations to place a minor in a secure facility shall be in writing and will be reviewed and approved by the juvenile coordinator. *Id.*

Sarah Fabian
March 22, 2020
Page 4 of 4

7. Copies of all non-privileged instructions, protocols, and directives to Defendants detaining class members relating to COVID-19 should be shared with class counsel, including those already issued and those that may be issued for an agreed period of time or while an Order remains in effect.

8. Defendants should provide to Class Counsel and the Special Master the information listed in the Order Appointing Special Master at B.1.c.i(i)-(x), ii(i)-(vi), and iii for all class members detained for more than seven (7) days from the time of apprehension.

Plaintiffs hope the parties can work jointly to protect the health and welfare of class members under increasingly difficult conditions, but we are obliged to seek the Court's protection for class members should such cooperation prove unsuccessful.

Should mutually agreeable measures not be promptly settled, Plaintiffs intend to apply for a temporary restraining order and order to show cause re: preliminary injunction by the close of business on March 23, 2020, or as soon thereafter as the necessary application can be completed. The requested TRO and the OSC will seek substantially the relief as stated in paragraphs 1-8 above.

Should Defendants decline this invitation to confer, pursuant to Local Rule 7-19, Plaintiffs ask that Defendants advise whether they oppose the application for a temporary restraining order.

Thank you,

Peter Schey
One of the attorneys for Plaintiffs

ccs:   Carlos Holguin, Esq.
       Andrea S. Ordin, Esq.

/ / /

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2021, I served the foregoing exhibit on all counsel of record by means of the District Clerk's CM/ECF electronic filing system.

/s/Peter Schey
*Counsel for Plaintiffs*
CENTER FOR HUMAN RIGHTS
AND CONSTITUTIONAL LAW
Peter A. Schey