CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Carlos R. Holguín (Cal. Bar No. 90754)
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Email: crholguin@centerforhumanrights.email

*Listing continues on next page*

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MERRICK GARLAND, Attorney General the United States, *et al.*, <br><br> Defendants. | No. CV 85-4544-DMG-AGRx <br><br> MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES <br><br> Hearing: January 28, 2022 <br> Time: 9:30 a.m. <br> Hon. Dolly M. Gee |

NATIONAL CENTER FOR YOUTH LAW
Neha Desai (Cal. RLSA No. 803161)
Mishan Wroe (Cal. Bar No. 299296)
Melissa Adamson (Cal. Bar No. 319201)
Diane de Gramont (Cal. Bar No. 324360)
1212 Broadway, Suite 600 Oakland, CA 94612
Telephone: (510) 835-8098
Email: ndesai@youthlaw.org

CHILDREN'S RIGHTS
Leecia Welch (Cal. Bar No. 208741)
88 Pine Street, Suite 800, New York, NY 10005
Telephone: (212) 683-2210
Email: lwelch@childrensrights.org

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................1
II.  TIMELINESS OF FEE REQUEST .................................................................2
III. ARGUMENT .....................................................................................................2
    A.  Plaintiffs Satisfy All Requirements for an Award of EAJA Fees .............2
        1.  Plaintiffs are prevailing parties ............................................................3
        2.  Plaintiffs' net worth is far less than $2,000,000. ....................................5
        3.  Defendants' position lacked substantial justification. ..........................5
    B.  Lodestar Calculation .....................................................................................8
    C.  Special Factors Warrant a Fee Award at Market Rates for Plaintiffs' Senior Counsel ...............................................................................................9
        1.  Plaintiffs' counsel possess distinctive knowledge and specialized skill that was necessary to the litigation. ...........................................................10
        2.  Other qualified counsel is unavailable at the statutory rate .................12
        3.  Market rates for Plaintiffs' senior counsel. ..........................................13
IV. CONCLUSION ................................................................................................14

# TABLE OF AUTHORITIES

**CASES**

*Animal Lovers Volunteer Ass'n v. Carlucci*, 867 F.2d 1224 (9th Cir. 1989)..............8
*Ardestani v. I.N.S.*, 502 U.S. 129 (1991)...................................................................3
*Balla v. Idaho*, 677 F.3d 910 (9th Cir. 2012) .............................................................4
*Blum v. Stenson*, 465 U.S. 886 (1984) .....................................................................13
*Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.*, 532 U.S. 598 (2001) .....................................................................................3
*Cobell v. Norton*, 407 F. Supp. 2d 140 (D.D.C. 2005).............................................5
*Comm'r, I.N.S. v. Jean*, 496 U.S. 154 (1990) .......................................................3, 6
*Costa v. Comm'n of Social Security Admin.*, 690 F.3d 1132 (9th Cir. 2012) ............8
*Fang v. Gonzales*, No. 03-71352, 2006 WL 5669901 (9th Cir. Oct. 30, 2006).........9
*Flores v. Barr*, 977 F.3d 742 (9th Cir. 2020) .......................................................1, 7
*Flores v. Garland*, 3 F.4th 1145 (9th Cir. 2021).............................................2, 4, 7
*Flores v. Johnson*, 212 F. Supp. 3d 864 (C.D. Cal. 2015) ......................................11
*Flores v. Meese*, 681 F. Supp. 665 (C.D. Cal. 1988) ..............................................11
*Flores v. Meese*, 934 F.2d 991 (9th Cir. 1990) .......................................................11
*Flores v. Meese*, 942 F.2d 1352 (9th Cir. 1992) .....................................................11
*Flores v. Sessions*, 862 F.3d 863 (9th Cir. 2017) ....................................................11
*Flores v. Sessions*, No. CV 85-4544, 2017 WL 8943169 (C.D. Cal. Nov. 14, 2017) ...............................................................................................................................11
*Gonzales v. Free Speech Coal.*, 408 F.3d 613 (9th Cir. 2005).................................6
*Hensley v. Eckerhart*, 461 U.S. 424 (1987)..............................................................8
*Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147 (9th Cir. 2019)......3, 5, 6, 7
*In re Mgndichian*, 312 F. Supp. 2d 1250 (C.D. Cal. 2003).....................................5
*Kali v. Bowen*, 854 F.2d 329 (9th Cir. 1988) ...........................................................6
*Keith v. Volpe*, 833 F.2d 850 (9th Cir. 1987) ...........................................................4
*Lara v. Berryhill*, No. 2:16-CV-0034 DB, 2017 WL 4679989 (E.D. Cal. Oct. 18, 2017)..................................................................................................................8
*League of United Latin Am. Citizens v. Wilson*, 908 F. Supp. 755 (C.D. Cal. 1995) ...............................................................................................................................11
*Li v. Keisler*, 505 F.3d 913 (9th Cir. 2007) ..........................................................2, 6
*Love v. Reilly*, 924 F.2d 1492 (9th Cir. 1991).................................................3, 5, 9
*Meier v. Colvin*, 727 F.3d 867 (9th Cir. 2013) .........................................................6

*Nadarajah v. Holder*, 569 F.3d 906 (9th Cir. 2009) ...................................9, 10, 13

*Orantes-Hernandez v. Holder*, 713 F. Supp. 2d 929 (C.D. Cal. 2010) ..........9, 10, 14

*Perez-Arellano v. Smith*, 279 F.3d 791 (9th Cir. 2002) ...............................................3

*Perez-Olano v. Gonzalez*, 248 F.R.D. 248 (C.D. Cal. 2008) ...................................11

*Pierce v. Underwood*, 487 U.S. 552 (1988) ............................................................6, 9

*Prison Legal News v. Schwarzenegger*, 608 F.3d 446 (9th Cir. 2010) ......................4

*Rawlings v. Heckler*, 725 F.2d 1192 (9th Cir. 1984) .................................................6

*Reno v. Flores*, 507 U.S. 292 (1993) ........................................................................11

*Richlin Sec. Service Co. v. Chertoff*, 553 U.S. 571 (2008) ........................................8

*Rosemary G. V. v. Saul*, No. 3:19-cv-00715-RBM, 2020 WL 6703123 (S.D. Cal. Nov. 12, 2020) ........................................................................................................8

*Scarborough v. Principi*, 541 U.S. 401 (2004) .....................................................3, 5

*Thangaraja v. Gonzales*, 428 F.3d 870 (9th Cir. 2005) .............................................9

## STATUTES & REGULATIONS

28 U.S.C. § 2412 .................................................................................................passim

85 Fed. Reg. 17,060 ......................................................................................................1

Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 ....................10

Pub. L. No. 96-481, 94 Stat. 2321 (1980) ...................................................................3

William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, 122 Stat. 5044 ..............................................................10, 12

## RULES

Fed. R. App. P. 8 ..........................................................................................................7

## OTHER AUTHORITIES

United States Court of Appeals for the Ninth Circuit, *Statutory Maximum Rates Under the Equal Access to Justice,*
https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates/ (last visited October 4, 2021) ......................................................................................................8

## I. INTRODUCTION

Plaintiffs move the Court to award them attorneys' fees incurred in enforcing the *Flores* Settlement Agreement ("Settlement") on behalf of class members detained pursuant to Title 42 of the U.S. Code.

In March 2020, the Centers for Disease Control and Prevention ("CDC") issued an order, implemented by the Department of Homeland Security ("DHS"), which allowed for the summary expulsion of children seeking refuge in the United States. *See* Order Suspending Introduction of Certain Persons from Countries where a Communicable Disease Exists, 85 Fed. Reg. 17,060 (Mar. 26, 2020) ("Closure Order"). This order was issued pursuant to the CDC's purported authority under Title 42 of the U.S. Code. *Id.*

In violation of the Settlement, DHS detained children designated for expulsion under Title 42 in unlicensed hotel rooms, held them virtually incommunicado, and refused to transfer them to state-licensed placements. *See* Order re Plaintiffs' Motion to Enforce Settlement as to "Title 42" Class Members [920] at 12-13, September 4, 2020, Doc. # 976 ("Sept. 4 Order"). In response, Plaintiffs filed a Motion to Enforce the Settlement to ensure these children were treated as *Flores* class members and were afforded the protections and services guaranteed by the Settlement. *Id.* at 1.

On September 4, 2020, the Court granted Plaintiffs' Motion to Enforce Settlement re "Title 42" Class Members. *Id.* The Court confirmed that all minors detained in the legal custody of DHS or the Office of Refugee Resettlement ("ORR") pursuant to Title 42 are class members under the Settlement and ordered DHS to transfer these children from hotels to licensed facilities as expeditiously as possible as the Settlement requires. *Id.* at 17-18. Both this Court and the Ninth Circuit denied Defendants' requests for a stay pending appeal. *See Flores v. Barr*, 977 F.3d 742, 744 (9th Cir. 2020); Order re Defendants' *Ex Parte* Application to

Stay [985], September 21, 2020, Doc. # 990 ("Sept. 21 Order").[1]  On June 30, 2021, the Ninth Circuit affirmed the Court's orders.  *See Flores v. Garland*, 3 F.4th 1145, 1147 (9th Cir. 2021).

Plaintiffs now apply pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) ("EAJA"), for an award of attorneys' fees incurred in securing this Court's enforcement order and defending it on appeal, in the total amount of $232,773.26.

## II.   TIMELINESS OF FEE REQUEST

The EAJA requires that the successful litigant file a fee application "within thirty days of final judgment in the action."  28 U.S.C. § 2412(d)(1)(B).  "The thirty-day deadline to file an application for attorney's fees under EAJA does not begin to run until after the ninety-day period during which a party may seek a writ of certiorari from the United States Supreme Court."  *Li v. Keisler*, 505 F.3d 913, 916-17 (9th Cir. 2007).  The Ninth Circuit affirmed this Court's orders on June 30, 2021. *See Flores v. Garland*, 3 F.4th at 1147. The instant fee motion is therefore timely.

## III.   ARGUMENT

### A. Plaintiffs Satisfy All Requirements for an Award of EAJA Fees

The EAJA provides:

> … a court shall award to a prevailing party other than the United States fees and other expenses … incurred by that party in a civil action (other than cases sounding in tort), … brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

---

[1] The Court's order denying Defendants' stay application ordered the September 4 Order effective as of September 28, 2020, with a modification that allows DHS to "implement *brief* hotel stays (not more than 72 hours) as necessary and in good faith to alleviate bottlenecks in the intake processes at licensed facilities." Sept. 21 Order at 5 (emphasis in original).

28 U.S.C. § 2412(d)(1)(A). Eligibility for a fee award under EAJA "requires: (1) that the claimant be 'a prevailing party'; (2) that the Government's position was not 'substantially justified'; (3) that no 'special circumstances make an award unjust'; and, (4) pursuant to 28 U.S.C. § 2412(d)(1)(B), that any fee application be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement." *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1167 (9th Cir. 2019) (en banc) (quoting *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 158 (1990)).

"The clearly stated objective of the EAJA is to eliminate financial disincentives for those who would defend against unjustified governmental action and thereby to deter the unreasonable exercise of Government authority." *Id.* at 1166 (quoting *Ardestani v. I.N.S.*, 502 U.S. 129, 138 (1991)). "Congress specifically intended the EAJA to deter unreasonable agency conduct." *Id.* at 1166-67 (citing *Jean*, 496 U.S. at 163 n.11 and Pub. L. No. 96-481, §§ 201-08, 94 Stat. 2321, 2325-30 (1980)). Therefore, when a party has prevailed against it, the burden shifts to the Government to prove that its position, both before and during the litigation, was substantially justified or that special circumstances make an award of attorneys' fees and costs unjust. *Scarborough v. Principi*, 541 U.S. 401, 416-17 (2004); *Love v. Reilly*, 924 F.2d 1492, 1495 (9th Cir. 1991).

          1. <u>Plaintiffs are prevailing parties.</u>

Under the EAJA, a party prevails when it has been granted "some relief by a court." *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001).[2] To prove prevailing party status, an EAJA

---

[2] Although *Buckhannon* involved non-EAJA fee-shifting statutes, the Ninth Circuit has held that the requirements for a prevailing party announced in that decision are applicable to EAJA awards as well. *Perez-Arellano v. Smith*, 279 F.3d 791, 793-94 (9th Cir. 2002).

petitioner must establish: (1) a "material alteration of the legal relationship of the parties," and (2) a "judicial *imprimatur* on the change." *Id*. at 604-05.

A party prevails, and thereafter remains a prevailing party, when it has obtained an enforceable settlement or consent decree. *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 451 (9th Cir. 2010). Plaintiffs accordingly prevailed in this action by obtaining the Settlement in 1997.[3]

Plaintiffs further prevailed on the specific motion at issue by obtaining an order enforcing the Settlement with respect to class members designated for expulsion pursuant to Title 42. The Court's Sept. 4 Order, as modified by the Sept. 21 Order, enjoined several violations of the Settlement and requires Defendants to (1) treat unaccompanied and accompanied children detained pursuant to Title 42 as class members under the Settlement; (2) cease placing class members in hotels except for brief stays of no more than 72 hours; (3) afford class members, including those held pursuant to Title 42, licensed placements as expeditiously as possible; (4) allow class members detained pursuant to Title 42 access to counsel; and (5) report to the Court information regarding minors held pursuant to Title 42. *See* Sept. 4 Order at 17-18; Sept. 21 Order at 5. The Court's orders were affirmed on appeal. *See Flores v. Garland*, 3 F.4th at 1147.

Because this Court ordered Defendants to adjust their policies and practices in an order affirmed by the Ninth Circuit, Plaintiffs clearly prevailed on their motion and accordingly satisfy the first requirement for an EAJA award.

---

[3] Plaintiffs are entitled to recover reasonable fees related to "compliance monitoring" of a settlement or injunction, even in the absence of new judicial relief. *Balla v. Idaho*, 677 F.3d 910, 918-20 (9th Cir. 2012); *see also Prison Legal News*, 608 F.3d at 451 (reaffirming prior holding "that a party that prevails by obtaining a consent decree may recover attorneys' fees under § 1988 for monitoring compliance with the decree, even when such monitoring does not result in any judicially sanctioned relief" (citing *Keith v. Volpe*, 833 F.2d 850, 855-57 (9th Cir. 1987)).

### 2. Plaintiffs' net worth is far less than $2,000,000.

Pursuant to 28 U.S.C. § 2412(d)(2)(B)(i), a party's "net worth [must] not exceed $2,000,000 at the time the civil action was filed …." The original named plaintiffs in this action were indigent at the time this action commenced. *See* Declaration of Carlos Holguín, Exhibit A, ("Holguín") at ¶ 5. Plaintiff class members are generally indigent as well. By definition, they are immigrant or refugee children in federal custody because of their lack of immigration status. Settlement ¶¶ 10-11; Holguín at ¶ 5 (affirming that *Flores* plaintiff class members are on the whole indigent).

Plaintiffs accordingly meet the second requirement for an EAJA fee award. *See Cobell v. Norton*, 407 F. Supp. 2d 140, 148 (D.D.C. 2005) ("[A]ffidavits signed by the class representatives, attesting to the fact that their net worth fell within EAJA statutory guidelines at the time the litigation was initiated … amply satisfy the requirements of the statute for the entire class.").

### 3. Defendants' position lacked substantial justification.

Because Plaintiffs prevailed and meet the EAJA's net worth standard, "an award of fees is mandatory under the EAJA unless the Government's position is substantially justified or special circumstances exist that make an award of fees unjust." *Love*, 924 F.2d at 1495. Defendants must carry the burden of proof with respect to both factors. *Id.*; *see also Ibrahim*, 912 F.3d at 1167.

Plaintiffs have alleged that Defendants' position was without substantial justification and that no special circumstances make a fee award unjust. The burden therefore shifts to Defendants to show their position was substantially justified or that special circumstances would make a fee award unjust. *See Scarborough*, 541 U.S. at 416-17; *see also In re Mgndichian*, 312 F. Supp. 2d 1250, 1255 (C.D. Cal. 2003) (prevailing party need only "alleg[e] that the government's position was not substantially justified and that no special circumstances exist that make an award unjust"); 28 U.S.C. § 2412 (d)(1)(B) ("A party seeking an award of

fees and other expenses … shall [] allege that the position of the United States was not substantially justified.").

"The test for whether the government is substantially justified is one of 'reasonableness.'" *Gonzales v. Free Speech Coal.*, 408 F.3d 613, 618 (9th Cir. 2005). Defendants must show that the government's position has "a 'reasonable basis both in law and fact.'" *Meier v. Colvin*, 727 F.3d 867, 870 (9th Cir. 2013) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

In analyzing the reasonableness of the Governments position, a court considers the totality of the circumstances, which incorporates both the underlying governmental action and the Government's litigation position. *See Ibrahim*, 912 F.3d at 1168 ("[T]he substantial justification test is comprised of two inquiries, one directed toward the government agency's conduct, and the other toward the government's attorneys' conduct during litigation."); *Kali v. Bowen*, 854 F.2d 329, 332 (9th Cir. 1988) (inquiry includes whether both the original action and the defense of the action was substantially justified); *see also Rawlings v. Heckler*, 725 F.2d 1192, 1196 (9th Cir. 1984). Moreover, "the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items." *Ibrahim*, 912 F.3d at 1169 (quoting *Jean*, 496 U.S. at 161-62). The Ninth Circuit has "consistently held that regardless of the government's conduct in the federal court proceedings, unreasonable agency action at any level entitles the litigant to EAJA fees." *Id.* at 1167 (quoting *Li*, 505 F.3d at 919).

Defendants will not succeed in making either showing. First, the underlying agency action was not substantially justified. Despite the Settlement's unambiguous requirement that children be expeditiously placed in state-licensed facilities, Defendants refused to transfer children from unlicensed hotels to licensed care providers. *See* Sept. 4 Order at 12-13. Defendants' conduct was particularly unreasonable because vulnerable children were placed at risk in hotel detention while ORR shelters were almost empty and had more than enough capacity to

accept children pending expulsion pursuant to Title 42. *Id.* at 13-15. This unreasonable conduct alone justifies a fee award. *See Ibrahim*, 912 F.3d at 1167.

Additionally, Defendants' litigation position was not substantially justified. Defendants' primary defense was that children detained in hotels were not *Flores* class members because they were in the legal custody of the CDC rather than DHS. *See Flores v. Garland*, 3 F.4th at 1154. Defendants advanced this argument despite undisputed facts that DHS had full decision-making authority over the detained children. *Id.* at 1155; Sept. 4 Order at 6-8. As the Ninth Circuit explained, "[t]he government's current position, focusing on the source of the legal authority for assigning custody and not on the assigned custody itself, is inconsistent with its use of the term in its own regulations, as well as with common legal usage." *Flores v. Garland*, 3 F.4th at 1155; *see also Flores v. Barr*, 977 F.3d at 748 (noting doubt that Defendants had raised even "serious questions" on the merits); Sept. 4 Order at 6-11 (addressing Defendants' arguments and explaining that "[t]here is no question that the immigration authorities of the United States are detaining the minors in their legal custody" and "[a] contrary result would be to endorse a shell game").

In addition to adopting an unreasonable position on the merits, Defendants' seeking a stay was not substantially justified. *See Ibrahim*, 912 F.3d at 1171 n.20 ("[W]hen considering the government's litigation position, we also consider the government's positions on discovery and other non-merits issues, i.e., the government's conduct as a whole."). In violation of Federal Rule of Appellate Procedure 8(a), Defendants bypassed this Court and requested a stay from the Ninth Circuit in the first instance without demonstrating that "it would have been impracticable to present the stay motion and [Defendants'] newly introduced evidence to the district court in the first instance." Ninth Circuit Order at 1, September 16, 2020, Doc. # 984. The Ninth Circuit accordingly denied Defendants' initial motion and directed them to seek a stay in the first instance in

this Court. *Id.* at 1-2. Defendants' failure to comply with the federal rules wasted judicial resources and caused Plaintiffs to incur additional attorneys' fees.

### B. Lodestar Calculation

A "lodestar" figure for the amount of fees Plaintiffs should recover is calculated by multiplying the number of hours counsel reasonably dedicated by the inflation-adjusted EAJA hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1987); *Costa v. Comm'n of Social Security Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012).[4]

The Ninth Circuit's inflation-adjusted EAJA base rate during 2020 and 2021, the years counsel worked to secure and defend the September 4 Order, is published by the Ninth Circuit at https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates/ (last visited October 4, 2021). Plaintiffs also request fees for a paralegal's work at $100 per hour. *See Richlin Sec. Service Co. v. Chertoff*, 553 U.S. 571, 590 (2008) ("[A] prevailing party that satisfies EAJA's other requirements may recover its paralegal fees from the Government at prevailing market rates."); *Rosemary G. V. v. Saul*, No. 3:19-cv-00715-RBM, 2020 WL 6703123, at *5 (S.D. Cal. Nov. 12, 2020) (approving $130 hourly paralegal rate); *Lara v. Berryhill*, No. 2:16-CV-0034 DB, 2017 WL 4679989, at *3 (E.D. Cal. Oct. 18, 2017) (awarding fees for paralegal time at $100 per hour).

The hours counsel devoted to prosecuting this action, adjusted for time that was poorly documented or excessive, appear in the itemized time records annexed to the declarations of Plaintiffs' counsel. Holguín at ¶ 10; *see also* Ex. B to Holguín; Declaration of Leecia Welch, Exhibit B, ("Welch") at ¶ 19; *see also* Ex. B to Welch. These hours multiplied by the Ninth Circuit's inflation-adjusted base

---

[4] An increase over the base rate to account for inflation is granted in all but unusual circumstances. *Animal Lovers Volunteer Ass'n v. Carlucci*, 867 F.2d 1224, 1227 (9th Cir. 1989).

rates yield a lodestar fee request of $149,041.87.  Welch ¶ 24.  Plaintiffs further request an additional $2,110.00 in paralegal fees.  *Id*.

As will be seen next however, the Court should award Plaintiffs fees for senior counsel's work at "enhanced," or market, hourly rates.

### C. Special Factors Warrant a Fee Award at Market Rates for Plaintiffs' Senior Counsel

The EAJA authorizes the Court to award attorneys' fees at market rates where there is a "limited availability of qualified attorneys for the proceedings involved."  28 U.S.C. § 2412(d)(2)(A).  Enhanced hourly rates may be awarded where plaintiffs' counsel "possess 'distinctive knowledge' and 'specialized skill' that was 'needful to the litigation in question' and 'not available elsewhere at the statutory rate.'"  *Nadarajah v. Holder*, 569 F.3d 906, 912 (9th Cir. 2009) (quoting *Thangaraja v. Gonzales*, 428 F.3d 870, 876 (9th Cir. 2005) and *Love,* 924 F.2d at 1498); *see also Pierce*, 487 U.S. at 572 ("Examples … would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language.").

In *Nadarajah*, the Ninth Circuit found this test was satisfied where counsel had "distinctive knowledge and specialized skill in immigration law and, in particular, constitutional immigration law and litigation involving the rights of detained immigrants" and this skill was "needful to the litigation in question."  569 F.3d at 912-15 (quoting *Thangaraja*, 428 F.3d at 876); *see also Fang v. Gonzales*, No. 03-71352, 2006 WL 5669901, at *3 (9th Cir. Oct. 30, 2006) ("Counsel Smith's specialized skills and distinctive 'knowledge of … particular esoteric nooks and crannies of immigration law,'" allowed her "to succeed in obtaining relief from removal for Fang." (quoting *Thangaraja*, 428 F.3d at 876)).  In *Nadarajah*, the Ninth Circuit accordingly awarded the prevailing party's most experienced attorney fees at the market rate.  569 F.3d at 916-18.

In *Orantes-Hernandez v. Holder*, 713 F. Supp. 2d 929 (C.D. Cal. 2010), the Government moved to dissolve an injunction requiring immigration authorities to

follow specific procedures when detaining, processing and removing Salvadoran nationals. *Id*. at 936. The court largely denied the motion, and the plaintiffs sought EAJA fees at market rates because defending against the Government's motion required specialized knowledge of, *inter alia*, the history of the litigation that had resulted in the injunction. *Id*. at 959-63. In addition to special knowledge of immigration law and procedure and complex civil litigation, the court found that the prevailing parties' counsel "by virtue of their long involvement in this litigation, possess[ed] distinctive knowledge crucial to litigation of this complicated case," *id*. at 961, and had specialized skills—including proficiency in Spanish—that were necessary to defend the injunction. *Id*. at 960-63.

1. <u>Plaintiffs' counsel possess distinctive knowledge and specialized skill that was necessary to the litigation.</u>

As in *Orantes-Hernandez* and *Nadarajah*, Plaintiffs' senior counsel here have extensive experience, knowledge and specialized skill in immigration law, youth law, and more particularly, the rights of detained immigrant and asylum-seeking children as they exist at the intersection of the Settlement, the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 ("HSA"), the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, 122 Stat. 5044 ("TVPRA"), and the United States Constitution.

First, Plaintiffs' senior counsel are highly skilled litigators with vast expertise in representing immigrants, refugees, and youth.

In 2017, this Court awarded Plaintiffs fees under EAJA for the work of class counsel, Carlos Holguín, at a market rate, upon finding that he possesses "intimate knowledge of the Agreement"; that "[i]n addition to litigating the matter that led to the Agreement, … Holguin [has] been involved with monitoring the government's compliance with the Agreement since its inception"; and that he is "therefore uniquely positioned to efficiently litigate the enforcement action in question."

*Flores v. Sessions*, No. CV 85-4544, 2017 WL 8943169, at *4 (C.D. Cal. Nov. 14, 2017).[5]

Co-counsel Leecia Welch is a national expert in the area of child welfare and has spent the majority of her career representing children and youth in cases focused on enforcing their statutory and constitutional rights. Declaration of John F. O'Toole, October 5, 2021, Exhibit C ("O'Toole") ¶¶ 9, 13; Declaration of Richard M. Pearl, October 19, 2021, Exhibit D ("Pearl") ¶ 12. Ms. Welch's specialized expertise at the intersection of child welfare, complex federal class action litigation, and the rights of detained immigrant children, her extensive personal involvement in litigating on behalf of detained immigrant children in this case and related litigation, and the National Center for Youth Law's institutional knowledge of this litigation, uniquely positioned her to litigate Plaintiffs' enforcement motion. O'Toole ¶¶ 14-15; Pearl ¶ 12; Welch Dec. ¶¶ 4, 22.

Second, pursuant to Paragraphs 28 and 29 of the Settlement, Plaintiffs' counsel are unique in having access to detailed statistical reports regarding class

---

[5] Class counsel Holguín is among the leading lawyers litigating class actions on behalf of immigrant and refugee children. *See Perez-Olano v. Gonzalez*, 248 F.R.D. 248 (C.D. Cal. 2008); *League of United Latin Am. Citizens v. Wilson*, 908 F. Supp. 755 (C.D. Cal. 1995). In the instant matter, he has argued for the Plaintiff class numerous times before this Court, the Ninth Circuit, and the U.S. Supreme Court, and numerous reported decisions have resulted therefrom. *Flores v. Meese*, 681 F. Supp. 665 (C.D. Cal. 1988); *Flores v. Meese*, 934 F.2d 991 (9th Cir. 1990); *Flores v. Meese*, 942 F.2d 1352 (9th Cir. 1992) (en banc); *Reno v. Flores*, 507 U.S. 292 (1993); *Flores v. Johnson*, 212 F. Supp. 3d 864 (C.D. Cal. 2015); *Flores v. Sessions*, 862 F.3d 863 (9th Cir. 2017).

He "is among a very few advocates for immigrant children's rights in the country with the knowledge and experience needed to give the *Flores* class a fair chance of prevailing against ORR." Declaration of Justin Mixon, October 23, 2017, Exhibit E ("Mixon") ¶ 6. He is able to communicate with detained class members in Spanish, the language the vast majority speaks, has deep knowledge of the Settlement and the litigation and negotiations that preceded the Settlement, and has for years monitored Defendants' treatment of and policies and practices toward detained immigrant and refugee children. Holguín at ¶¶ 6-7.

member's locations and length of detention. Plaintiffs' lawyers relied heavily on this data in investigating and documenting class members' detention in unlicensed hotels and correcting inconsistencies in Defendants' reported data. *See* Declaration of Melissa Adamson, August 28, 2020 [Doc. # 960-1 at 3-28]; Declaration of Melissa Adamson, August 14, 2020 [Doc. # 920-8].

Third, vindicating the rights of class members required specialized expertise at the intersection of multiple sources of law as they affect a discrete and vulnerable subclass: immigrant and asylum-seeking youth in ORR custody. Specifically, successfully litigating the motion to enforce at issue required expertise regarding immigrant children's rights under the Settlement as well as federal laws such as the Trafficking Victims Protection Reauthorization Act (TVPRA), deep familiarity with the government's system for detaining immigrant children, including the capacity of ORR shelters, and relationships with knowledgeable witnesses. Mixon ¶ 7; O'Toole ¶ 15 ("I believe that the issues surrounding the detention of 'Title 42' Class Members in unlicensed and unregulated hotels could not have been successfully litigated without Ms. Welch's specialized expertise, including her expertise regarding the custodial status of children in government care, her expertise on the welfare of children held in irregular, unlicensed placements, and her understanding of the immigration detention system and children's rights under the *Flores* Settlement and the TVPRA."); *see also* Sept. 4 Order at 10-11 (construing Title 42 consistently with the TVPRA and the *Flores* Settlement).

### 2. Other qualified counsel is unavailable at the statutory rate.

Few, if any, other lawyers in the country could have or would have prosecuted a class-wide action on behalf of indigent, non-English-speaking children, whom DHS detained in hotels with little to no access to counsel and subsequently expelled from the United States. *See* Sept. 4 Order at 15-16 (describing severe obstacles to children in hotel detention accessing counsel).

Because of their role as class counsel in this case, Plaintiffs' counsel were uniquely positioned to learn about these children and pursue relief on their behalf.

Even if private attorneys had access to children detained in hotels, other attorneys would have been highly unlikely to take this case as the statutory rate:

> [F]ew members of the immigration bar regularly engage in federal court litigation; those who do, typically pursue cases on behalf of individual clients; and only a very small number are willing and able to prosecute class actions, or indeed, any federal litigation in which a favorable outcome is not reasonably assured with a minimal investment of time and money.

Mixon ¶ 11; *accord* Declaration of Kristen Jackson, October 16, 2017, Exhibit F ¶ 5 ("[I]n my experience few legal aid lawyers or members of the private bar are willing to dedicate the time and resources to undertake federal litigation on behalf of detained immigrant and refugee minors. When private practitioners do pursue federal litigation, they typically charge much more than the inflation-adjusted EAJA statutory rate."); O'Toole ¶ 16 ("[D]ue to the specialized nature of Ms. Welch's expertise, I believe that it would have been impossible to find appropriately qualified attorneys to undertake this representation at the inflation-adjusted EAJA rate."); Pearl ¶ 13 ("[Ms. Welch's] practice specialties were patently useful in this case and in the instant motion to enforce … I am certain that her distinctive expertise and skills are not available at the EAJA statutory maximums (plus COLA's) or anything close to those rates.").

These factors warrant the Court's awarding attorneys' fees at rates "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Nadarajah*, 569 F.3d at 916 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 & n.11 (1984)).

        3. <u>Market rates for Plaintiffs' senior counsel.</u>

As appears in the Declaration of Carol Sobel, Sept. 27, 2021, Exhibit G ("Sobel") ¶ 20, Mr. Holguín's hourly market rate in 2020 was $905 and in 2021 is $935. Ms. Sobel is a Los Angeles attorney whose expertise in market rates courts have repeatedly recognized. *See, e.g., Nadarajah*, 569 F.3d at 912-13; *Orantes-*

*Hernandez*, 713 F. Supp. 2d at 959 n.44.  Plaintiffs request the Court award fees for Mr. Holguín's work in 2020 and 2021 at $775 per hour, well below his actual market rate.

Market rates for Leecia Welch are supported in the declaration of Richard Pearl, a California attorney specializing in issues related to court-awarded attorneys' fees.  Pearl ¶¶ 12-14.  Courts have frequently relied on Mr. Pearl's opinions and writings on court-awarded attorneys' fees.  Pearl ¶¶ 4, 6-8.  Plaintiffs request the Court award fees for Ms. Welch's work in 2020 and 2021 at $690 per hour.

Plaintiffs' total fees request, with senior counsel's time billed at enhanced rates, additional counsel's at inflation-adjusted base rates, and paralegal fees at market rates, is $232,773.26.  Welch Dec. ¶ 24.

### IV.  CONCLUSION

For the foregoing reasons, this Court should award Plaintiffs attorneys' fees and costs pursuant to 28 U.S.C. § 2412(d) as herein requested.

Dated: October 22, 2021

CENTER FOR HUMAN RIGHTS AND
CONSTITUTIONAL LAW
Carlos R. Holguín

NATIONAL CENTER FOR YOUTH LAW
Neha Desai
Melissa Adamson
Mishan Wroe
Diane de Gramont

CHILDREN'S RIGHTS
Leecia Welch

   /s/    *Mishan Wroe*
Mishan Wroe
*One of the Attorneys for Plaintiffs*