1  CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
2  Carlos R. Holguín (Cal. Bar No. 90754)
   256 South Occidental Boulevard
3  Los Angeles, CA 90057
4  Telephone: (213) 388-8693
   Email: crholguin@centerforhumanrights.email
5
6  *Listing continues on next page*
7  *Attorneys for Plaintiffs*
8
                    UNITED STATES DISTRICT COURT
9                   CENTRAL DISTRICT OF CALIFORNIA
10                        WESTERN DIVISION
11

12 JENNY LISETTE FLORES, *et al.*,            No. CV 85-4544-DMG-AGRx

13        Plaintiffs,                         MEMORANDUM OF POINTS AND
                                              AUTHORITIES IN SUPPORT OF MOTION FOR
14 v.                                         AWARD OF ATTORNEYS' FEES AND COSTS

15 MERRICK GARLAND, Attorney General
16 the United States, *et al*.,               Hearing: March 25, 2022
                                              Time: 9:30 a.m.
17                                            Hon. Dolly M. Gee
18        Defendants.
19
20
21
22
23
24
25
26
27
28

NATIONAL CENTER FOR YOUTH LAW
Neha Desai (Cal. RLSA No. 803161)
Mishan Wroe (Cal. Bar No. 299296)
Melissa Adamson (Cal. Bar No. 319201)
Diane de Gramont (Cal. Bar No. 324360)
1212 Broadway, Suite 600 Oakland, CA 94612
Telephone: (510) 835-8098
Email: ndesai@youthlaw.org

CHILDREN'S RIGHTS
Leecia Welch (Cal. Bar No. 208741)
88 Pine Street, Suite 800, New York, NY 10005
Telephone: (212) 683-2210
Email: lwelch@childrensrights.org

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................... 1

II.   TIMELINESS OF FEE REQUEST.................................................... 2

III.  ARGUMENT ..................................................................................... 3

   A.   Plaintiffs Satisfy All Requirements for an Award of EAJA Fees and Costs ................................................................................................. 3

      1.   Plaintiffs are prevailing parties. ....................................... 4

      2.   Plaintiffs' net worth is far less than $2,000,000. .............. 5

      3.   Defendants' position lacked substantial justification. ....... 5

   B.   Lodestar Calculation ................................................................ 7

   C.   Special Factors Warrant a Fee Award at Market Rates for Plaintiffs' Senior Counsel................................................................................... 9

      1.   Plaintiffs' counsel possess distinctive knowledge and specialized skill that was necessary to the litigation .................................................... 10

      2.   Other qualified counsel is unavailable at the statutory rate ............ 12

      3.   Market rates for Plaintiffs' senior counsel...................................... 14

   D.   Plaintiffs Should Be Awarded Their Reasonable Costs ..................... 15

IV.  CONCLUSION ................................................................................. 15

1

# TABLE OF AUTHORITIES

2

## CASES

3   *Animal Lovers Volunteer Ass'n v. Carlucci*, 867 F.2d 1224 (9th Cir. 1989)............8

4   *Ardestani v. I.N.S.*, 502 U.S. 129 (1991)................................................................3

5   *Balla v. Idaho*, 677 F.3d 910 (9th Cir. 2012) ..........................................................4

6   *Blum v. Stenson*, 465 U.S. 886 (1984) ...................................................................14

7   *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598 (2001) ..............................................................................................4

8   *Cobell v. Norton*, 407 F. Supp. 2d 140 (D.D.C. 2005).............................................5

9   *Comm'r, I.N.S. v. Jean*, 496 U.S. 154 (1990) ......................................................3, 6

10   *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132 (9th Cir. 2012) .....................8

11   *Fang v. Gonzales*, No. 03-71352, 2006 WL 5669901 (9th Cir. Oct. 30, 2006).........9

12   *Flores v. Garland*, No. 19-56326 (9th Cir. July 16, 2021) .......................................2

13   *Flores v. Johnson*, 212 F. Supp. 3d 864 (C.D. Cal. 2015) .....................................11

14   *Flores v. Lynch*, 828 F.3d 898 (9th Cir. 2016) .......................................................7

15   *Flores v. Meese*, 681 F. Supp. 665 (C.D. Cal. 1988) .............................................11

16   *Flores v. Meese*, 934 F.2d 991 (9th Cir. 1990) .....................................................11

17   *Flores v. Meese*, 942 F.2d 1352 (9th Cir. 1991) ...................................................11

18   *Flores v. Rosen*, 984 F.3d 720 (9th Cir. 2020)................................................passim

19   *Flores v. Sessions*, 862 F.3d 863 (9th Cir. 2017) ..................................................11

20   *Flores v. Sessions*, No. CV 85-4544, 2017 WL 8943169 (C.D. Cal. Nov. 14, 2017) ........................................................................................................................10

21   *Gonzales v. Free Speech Coal.*, 408 F.3d 613 (9th Cir. 2005)................................6

22   *Hensley v. Eckerhart*, 461 U.S. 424 (1983)...........................................................8

23   *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147 (9th Cir. 2019)..........3, 5, 6

24   *In re Mgndichian*, 312 F. Supp. 2d 1250 (C.D. Cal. 2003)...................................5, 6

25   *Kali v. Bowen*, 854 F.2d 329 (9th Cir. 1988) ..........................................................6

26   *Keith v. Volpe*, 833 F.2d 850 (9th Cir. 1987) .........................................................4

27   *Lara v. Berryhill*, No. 2:16-CV-0034 DB, 2017 WL 4679989 (E.D. Cal. Oct. 18, 2017).......................................................................................................................8

28

*League of United Latin Am. Citizens v. Wilson*, 908 F. Supp. 755 (C.D. Cal. 1995) ..................................................................................................11

*Li v. Keisler*, 505 F.3d 913 (9th Cir. 2007) ................................................6

*Lizardi v. Wilkinson*, 986 F.3d 1294 (9th Cir. 2021) .................................2

*Love v. Reilly*, 924 F.2d 1492 (9th Cir. 1991)...................................3, 5, 9

*Meier v. Colvin*, 727 F.3d 867 (9th Cir. 2013)...........................................6

*Nadarajah v. Holder*, 569 F.3d 906 (9th Cir. 2009) .....................9, 10, 14

*Nehmer v. U.S. Dep't of Veterans Aff.*, 494 F.3d 846 (9th Cir. 2007) ......7

*Orantes-Hernandez v. Holder*, 713 F. Supp. 2d 929 (C.D. Cal. 2010)............passim

*Perez-Arellano v. Smith*, 279 F.3d 791 (9th Cir. 2002) ............................4

*Perez-Olano v. Gonzalez*, 248 F.R.D. 248 (C.D. Cal. 2008) ..............10, 11

*Pierce v. Underwood*, 487 U.S. 552 (1988) ...........................................6, 9

*Prison Legal News v. Schwarzenegger*, 608 F.3d 446 (9th Cir. 2010) ....................4

*Rawlings v. Heckler*, 725 F.2d 1192 (9th Cir. 1984) .................................6

*Reno v. Flores*, 507 U.S. 292 (1993)......................................................11

*Richlin Sec. Service Co. v. Chertoff*, 553 U.S. 571 (2008)........................8

*Rosemary G. V. v. Saul*, No. 3:19-cv-00715-RBM, 2020 WL 6703123 (S.D. Cal. Nov. 12, 2020)...........................................................................8

*Scarborough v. Principi*, 541 U.S. 401 (2004) .....................................3, 6

*Thangaraja v. Gonzales*, 428 F.3d 870 (9th Cir. 2005) ............................9


**STATUTES**

28 U.S.C. § 1920 ......................................................................................15

28 U.S.C. § 2412 ..............................................................................passim

H.R. Rep. No. 96-1418................................................................................15

Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135..................10

Pub. L. No. 96-481, 94 Stat. 2321 (1980) ..................................................3

William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, 122 Stat. 5044 ..................................................10

**REGULATIONS**

83 Fed. Reg. 45,486 ................................................................................................1

84 Fed. Reg. 44,392 ................................................................................................1

**OTHER AUTHORITIES**

1980 U.S.C.C.A.N. ...............................................................................................15

U.S. Supreme Court Miscellaneous Order, July 19, 2021,
    https://www.supremecourt.gov/orders/courtorders/071921zr_4g15.pdf ...............2

U.S. Supreme Court Miscellaneous Order, March 19, 2020,
    https://www.supremecourt.gov/orders/courtorders/031920zr_d1o3.pdf ...............2

United States Court of Appeals for the Ninth Circuit, *Statutory Maximum Rates
    Under the Equal Access to Justice*,
    https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates/ (last visited
    December 1, 2021) ...............................................................................................8

## I.   INTRODUCTION

Plaintiffs move the Court to award them attorneys' fees and costs incurred in enforcing the *Flores* Settlement Agreement ("Settlement") and opposing Defendants' motion to terminate the Settlement.

In September 2018, the Department of Homeland Security ("DHS") and the Department of Health and Human Services ("HHS") (collectively, the "Government" or "Defendants") published a proposed rule, *Apprehension, Processing, Care and Custody of Alien Minors and Unaccompanied Alien Children*, 83 Fed. Reg. 45,486 (Sept. 7, 2018) ("Proposed Rule").  On November 2, 2018, Plaintiffs filed a Motion to Enforce Settlement based on the Proposed Rule's inconsistency with the Settlement.  *See* Doc. # 516.  The Court deferred ruling on this motion until Defendants published final regulations.  *See* Doc. # 525.

On August 23, 2019, Defendants issued a final rule "relating to the apprehension, processing, care, custody, and release" of class members, 84 Fed. Reg. 44,392 (Aug. 23, 2019) (the "Final Rule").  On August 30, 2019, Defendants filed a Notice of Termination and Motion in the Alternative to Terminate the *Flores* Settlement Agreement ("Motion to Terminate") [Doc. #639] and Plaintiffs filed a Supplemental Memorandum in Support of Motion to Enforce Settlement [Doc. # 634].  Plaintiffs' extensive briefing in response to Defendants' proposed and final regulations sought to ensure that *Flores* class members were afforded the protections and services guaranteed by the Settlement and did not lose those protections based on regulations that were inconsistent with the terms of the Settlement and failed to implement the Settlement.  *See* Doc Nos. 516, 634, 668.

On September 27, 2019, the Court granted Plaintiffs' Motion to Enforce the Settlement and denied Defendants' Motion to Terminate.  *See* Order re Plaintiffs' Motion to Enforce Settlement and Defendants' Notice of Termination and Motion in the Alternative to Terminate the Flores Settlement Agreement, September 27, 2019, Doc. # 688 ("Sept. 27 Order").  On December 29, 2020, the Ninth Circuit

1  affirmed in part and reversed in part, upholding the Court's injunction as to many

2  of the regulations at issue and holding that the Court "did not abuse its discretion in

3  denying the government's motion to terminate the Agreement." *Flores v. Rosen*,

4  984 F.3d 720, 744 (9th Cir. 2020).

5      Plaintiffs now apply pursuant to the Equal Access to Justice Act, 28 U.S.C.

6  § 2412(d) ("EAJA"), for an award of attorneys' fees and costs incurred in securing

7  this Court's enforcement order and defending it on appeal, in the total amount of

8  $480,749.46.

9  **II.   TIMELINESS OF FEE REQUEST**

10     The EAJA requires that the successful litigant file a fee application "within

11 thirty days of final judgment in the action", 28 U.S.C. § 2412(d)(1)(B), which

12 means "30 days after the date when a petition for a writ of certiorari would be

13 untimely." *Lizardi v. Wilkinson*, 986 F.3d 1294, 1295 (9th Cir. 2021).  Under the

14 Supreme Court's COVID-19 orders, the deadline to seek a writ of certiorari in this

15 matter was December 13, 2021, 150 days from the Ninth Circuit's July 16, 2021,

16 denial of panel rehearing.  *See* U.S. Supreme Court Miscellaneous Order, July 19,

17 2021, https://www.supremecourt.gov/orders/courtorders/071921zr_4g15.pdf;

18 *Flores v. Garland*, No. 19-56326, Doc. # 92 (9th Cir. July 16, 2021) (order denying

19 panel rehearing).[1]  The instant fee motion is therefore timely.

20

21

22 [1] In response to the COVID-19 pandemic, the Supreme Court extended the time to seek certiorari from 90 days to 150 days.  *See* U.S. Supreme Court Miscellaneous Order, March 19, 2020,

23

24 https://www.supremecourt.gov/orders/courtorders/031920zr_d1o3.pdf.  The Court rescinded this order on July 19, 2021, subject to the clarification that "in any case in

25 which the relevant lower court judgment, order denying discretionary review, or order denying a timely petition for rehearing was issued prior to July 19, 2021, the

26 deadline to file a petition for a writ of certiorari remains extended to 150 days from the date of that judgment or order."  *See* U.S. Supreme Court Miscellaneous Order,

27 July 19, 2021,

28 https://www.supremecourt.gov/orders/courtorders/071921zr_4g15.pdf

## III.   ARGUMENT

### A. Plaintiffs Satisfy All Requirements for an Award of EAJA Fees and Costs

The EAJA provides:

… a court shall award to a prevailing party other than the United States fees and other expenses … incurred by that party in a civil action (other than cases sounding in tort), … brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).  Eligibility for a fee award under EAJA "requires: (1) that the claimant be 'a prevailing party'; (2) that the Government's position was not 'substantially justified'; (3) that no 'special circumstances make an award unjust'; and, (4) pursuant to 28 U.S.C. § 2412(d)(1)(B), that any fee application be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement."  *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1167 (9th Cir. 2019) (en banc) (quoting *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 158 (1990)).

"The clearly stated objective of the EAJA is to eliminate financial disincentives for those who would defend against unjustified governmental action and thereby to deter the unreasonable exercise of Government authority."  *Id*. at 1166 (quoting *Ardestani v. I.N.S.*, 502 U.S. 129, 138 (1991)).  "Congress specifically intended the EAJA to deter unreasonable agency conduct." *Id.* at 1166-67 (citing *Jean*, 496 U.S. at 163 n.11 and Pub. L. No. 96-481, §§ 201-08, 94 Stat. 2321, 2325-30 (1980)).  Therefore, when a party has prevailed against it, the burden shifts to the Government to prove that its position, both before and during the litigation, was substantially justified or that special circumstances make an award of attorneys' fees and costs unjust.  *Scarborough v. Principi*, 541 U.S. 401, 416-17 (2004); *Love v. Reilly*, 924 F.2d 1492, 1495 (9th Cir. 1991).

1

2          1.  <u>Plaintiffs are prevailing parties.</u>

3          Under the EAJA, a party prevails when it has been granted "some relief by a

4     court."  *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health &*

5     *Hum. Res.*, 532 U.S. 598, 603 (2001).[2]  To prove prevailing party status, an EAJA

6     petitioner must establish: (1) a "material alteration of the legal relationship of the

7     parties," and (2) a "judicial *imprimatur* on the change."  *Id*. at 604-05.

8          A party prevails, and thereafter remains a prevailing party, when it has

9     obtained an enforceable settlement or consent decree.  *Prison Legal News v.*

10    *Schwarzenegger*, 608 F.3d 446, 451 (9th Cir. 2010).  Plaintiffs accordingly

11    prevailed in this action by obtaining the Settlement in 1997.[3]

12         Plaintiffs further prevailed on the specific motions at issue by obtaining an

13    order enforcing the Settlement and denying the Government's motion to terminate

14    the Settlement.  *See* Sept. 27 Order.  The Ninth Circuit affirmed the Court's

15    decision not to terminate the Settlement and affirmed an injunction against parts of

16    the Final Rule.  *Flores v. Rosen*, 984 F.3d at 744.[4]

17

18    _____

19    [2] Although *Buckhannon* involved non-EAJA fee-shifting statutes, the Ninth Circuit
      has held that the requirements for a prevailing party announced in that decision are
20    applicable to EAJA awards as well.  *Perez-Arellano v. Smith*, 279 F.3d 791, 793-94
      (9th Cir. 2002).

21    [3] Plaintiffs are entitled to recover reasonable fees related to "compliance
22    monitoring" of a settlement or injunction, even in the absence of new judicial relief.
      *Balla v. Idaho*, 677 F.3d 910, 918-20 (9th Cir. 2012); *see also Prison Legal News*,
23    608 F.3d at 451 (reaffirming prior holding "that a party that prevails by obtaining a
      consent decree may recover attorneys' fees under § 1988 for monitoring
24    compliance with the decree, even when such monitoring does not result in any
25    judicially sanctioned relief" (citing *Keith v. Volpe*, 833 F.2d 850, 855-57 (9th Cir.
      1987)).
26    [4] Although the Ninth Circuit allowed parts of the Final Rule to take effect,
27    Defendants' Motion to Terminate was unambiguously denied and Plaintiffs
28    obtained the core relief requested in this litigation—continued enforcement of the

2.  <u>Plaintiffs' net worth is far less than $2,000,000.</u>

Pursuant to 28 U.S.C. § 2412(d)(2)(B)(i), a party's "net worth [must] not exceed $2,000,000 at the time the civil action was filed …."  The original named plaintiffs in this action were indigent at the time this action commenced.  *See* Declaration of Carlos Holguín, Exhibit A, ("Holguín") at ¶ 5.  Plaintiff class members are generally indigent as well.  By definition, they are immigrant or refugee children in federal custody because of their lack of immigration status. Settlement ¶¶ 10-11; Holguín at ¶ 5 (affirming that *Flores* plaintiff class members are on the whole indigent).

Plaintiffs accordingly meet the second requirement for an EAJA fee award. *See Cobell v. Norton*, 407 F. Supp. 2d 140, 148 (D.D.C. 2005) ("[A]ffidavits signed by the class representatives, attesting to the fact that their net worth fell within EAJA statutory guidelines at the time the litigation was initiated … amply satisfy the requirements of the statute for the entire class.").

3.  <u>Defendants' position lacked substantial justification.</u>

Because Plaintiffs prevailed and meet the EAJA's net worth standard, "an award of fees is mandatory under the EAJA unless the government's position is substantially justified or special circumstances exist that make an award of fees unjust." *Love*, 924 F.2d at 1495.  Defendants must carry the burden of proof with respect to both factors.  *Id.*; *see also Ibrahim*, 912 F.3d at 1167.

Plaintiffs have alleged that Defendants' position was without substantial justification and that no special circumstances make a fee award unjust.  The burden therefore shifts to Defendants to show their position was substantially

_____

Settlement.  *See* Supplemental Memorandum in Support of Motion to Enforce Settlement at 24-25, Aug. 30, 2019, Doc. # 634 (requesting that "the Court order Defendants to adhere to the Settlement notwithstanding the Final Rule" and stating that "[s]uch an order should suffice to preserve the Settlement's protections for class members"); *see also* Proposed Order Enforcing Settlement Notwithstanding Publication of Final Rule, Aug. 30, 2019, Doc. # 634-2.

justified or that special circumstances would make a fee award unjust. *See Scarborough*, 541 U.S. at 416-17; *see also In re Mgndichian*, 312 F. Supp. 2d 1250, 1255 (C.D. Cal. 2003) (prevailing party need only "alleg[e] that the government's position was not substantially justified and that no special circumstances exist that make an award unjust"); 28 U.S.C. § 2412 (d)(1)(B) ("A party seeking an award of fees and other expenses … shall [] allege that the position of the United States was not substantially justified.").

"The test for whether the government is substantially justified is one of 'reasonableness.'" *Gonzales v. Free Speech Coal.*, 408 F.3d 613, 618 (9th Cir. 2005). Defendants must show that the government's position has "a 'reasonable basis both in law and fact.'" *Meier v. Colvin*, 727 F.3d 867, 870 (9th Cir. 2013) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

In analyzing the reasonableness of the Government's position, a court considers the totality of the circumstances, which incorporates both the underlying governmental action and the Government's litigation position. *See Ibrahim*, 912 F.3d at 1168 ("[T]he substantial justification test is comprised of two inquiries, one directed toward the government agency's conduct, and the other toward the government's attorneys' conduct during litigation."); *Kali v. Bowen*, 854 F.2d 329, 332 (9th Cir. 1988) (inquiry includes whether both the original action and the defense of the action was substantially justified); *see also Rawlings v. Heckler*, 725 F.2d 1192, 1196 (9th Cir. 1984). Moreover, "the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items." *Ibrahim*, 912 F.3d at 1169 (quoting *Jean*, 496 U.S. at 161-62). The Ninth Circuit has "consistently held that regardless of the government's conduct in the federal court proceedings, unreasonable agency action at any level entitles the litigant to EAJA fees." *Id.* at 1167 (quoting *Li v. Keisler*, 505 F.3d 913, 919 (9th Cir. 2007)).

Defendants will not succeed in making either showing. First, the underlying agency action was not substantially justified. The DHS regulations in particular were plainly designed to undercut rather than implement the central protections of the Settlement. *See Flores v. Rosen*, 984 F.3d at 737, 743 (explaining that the DHS regulations "undermine the Agreement's core 'presumption in favor of releasing minors,' and its requirement that those not released be placed in 'licensed, non-secure facilities that meet certain standards'" and "[t]he Final Rule takes precisely the approach *Flores I* rejected" (quoting *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016)); Sept. 27 Order at 17 ("The New Regulations are a condition subsequent that not only do not implement the *Flores* Agreement, they intentionally subvert it."); *see also* Sept. 27 Order at 5-11 (analyzing "irreconcilable" inconsistencies between the DHS regulations and the Settlement).

Defendants' litigation position also lacked substantial justification. Defendants moved to terminate the Settlement in full despite obvious and intentional inconsistencies between the Final Rule and the Settlement. *See Flores v. Rosen*, 984 F.3d at 737, 740, 744. Moreover, Defendants' primary arguments in favor of termination under Federal Rule of Civil Procedure 60(b) were foreclosed by binding precedent in this case. *See id.* at 740-44; *see also* Sept. 27 Order at 19-20 ("Defendants' remaining arguments regarding changes in law and fact constitute yet another in a long line of not so thinly-veiled motions for reconsideration of prior Orders rejecting similar arguments."). Defendants' new argument that the Final Rule itself constituted a change in law warranting termination of the Settlement was similarly contrary to Ninth Circuit precedent. *See Flores v. Rosen*, 984 F.3d at 741 (citing *Nehmer v. U.S. Dep't of Veterans Aff.*, 494 F.3d 846 (9th Cir. 2007)).

## B. Lodestar Calculation

A "lodestar" figure for the amount of fees Plaintiffs should recover is calculated by multiplying the number of hours counsel reasonably dedicated by the

inflation-adjusted EAJA hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012).[5]

The Ninth Circuit's inflation-adjusted EAJA base rate during 2018, 2019, 2020, and 2021, the years counsel worked to secure and defend the Sept. 27 Order, is published by the Ninth Circuit at https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates/ (last visited December 1, 2021). Plaintiffs also request fees for a paralegal's work at $100 per hour. *See Richlin Sec. Service Co. v. Chertoff*, 553 U.S. 571, 590 (2008) ("[A] prevailing party that satisfies EAJA's other requirements may recover its paralegal fees from the Government at prevailing market rates."); *Rosemary G. V. v. Saul*, No. 3:19-cv-00715-RBM, 2020 WL 6703123, at *5 (S.D. Cal. Nov. 12, 2020) (approving $130 hourly paralegal rate); *Lara v. Berryhill*, No. 2:16-CV-0034 DB, 2017 WL 4679989, at *3 (E.D. Cal. Oct. 18, 2017) (awarding fees for paralegal time at $100 per hour).

The hours counsel devoted to prosecuting this action, adjusted for time that was poorly documented or excessive, appear in the itemized time records annexed to the declarations of Plaintiffs' counsel. Holguín at ¶ 10; *see also* Ex. B to Holguín; Declaration of Leecia Welch, Exhibit B, ("Welch") at ¶ 21; *see also* Ex. C to Welch; Declaration of Holly Cooper, Exhibit C ("Cooper") at ¶¶ 18-19; *see also* Exs. A-C to Cooper; Declaration of Rene Kathawala, Exhibit D ("Kathawala") at ¶ 4; *see also* Ex. 1 to Kathawala. These hours multiplied by the Ninth Circuit's inflation-adjusted base rates yield a lodestar fee request of $281,401.12. Welch ¶ 27. Plaintiffs further request an additional $2,196.00 in paralegal fees. *Id*.

As will be seen next however, the Court should award Plaintiffs fees for senior counsel's work at "enhanced," or market, hourly rates.

---

[5] An increase over the base rate to account for inflation is granted in all but unusual circumstances. *Animal Lovers Volunteer Ass'n v. Carlucci*, 867 F.2d 1224, 1227 (9th Cir. 1989).

### C. Special Factors Warrant a Fee Award at Market Rates for Plaintiffs' Senior Counsel

The EAJA authorizes the Court to award attorneys' fees at market rates where there is a "limited availability of qualified attorneys for the proceedings involved."  28 U.S.C. § 2412(d)(2)(A).  Enhanced hourly rates may be awarded where plaintiffs' counsel "possess 'distinctive knowledge' and 'specialized skill' that was 'needful to the litigation in question' and 'not available elsewhere at the statutory rate.'"  *Nadarajah v. Holder*, 569 F.3d 906, 912 (9th Cir. 2009) (quoting *Thangaraja v. Gonzales*, 428 F.3d 870, 876 (9th Cir. 2005) and *Love,* 924 F.2d at 1498); *see also Pierce*, 487 U.S. at 572 ("Examples … would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language.").

In *Nadarajah*, the Ninth Circuit found this test was satisfied where counsel had "distinctive knowledge and specialized skill in immigration law and, in particular, constitutional immigration law and litigation involving the rights of detained immigrants" and this skill was "needful to the litigation in question."  569 F.3d at 912-15 (quoting *Thangaraja*, 428 F.3d at 876; *see also Fang v. Gonzales*, No. 03-71352, 2006 WL 5669901, at *3 (9th Cir. Oct. 30, 2006) ("Counsel Smith's specialized skills and distinctive 'knowledge of … particular esoteric nooks and crannies of immigration law,'" allowed her "to succeed in obtaining relief from removal for Fang." (quoting *Thangaraja*, 428 F.3d at 876)).  In *Nadarajah*, the Ninth Circuit accordingly awarded the prevailing party's most experienced attorneys fees at enhanced rates.  569 F.3d at 916-18.

In *Orantes-Hernandez v. Holder*, 713 F. Supp. 2d 929 (C.D. Cal. 2010), the Government moved to dissolve an injunction requiring immigration authorities to follow specific procedures when detaining, processing and removing Salvadoran nationals.  *Id.* at 936.  The court largely denied the motion, and the plaintiffs sought EAJA fees at market rates because defending against the Government's motion required specialized knowledge of, *inter alia*, the history of the litigation that had

resulted in the injunction. *Id.* at 959-63.  In addition to special knowledge of immigration law and procedure and complex civil litigation, the court found that the prevailing parties' counsel "by virtue of their long involvement in this litigation, possess[ed] distinctive knowledge crucial to litigation of this complicated case," *id.* at 961, and had specialized skills—including proficiency in Spanish—that were necessary to defend the injunction.  *Id.* at 960-63.

    1.  <u>Plaintiffs' counsel possess distinctive knowledge and specialized skill that was necessary to the litigation</u>

Similar to *Orantes-Hernandez* and *Nadarajah*, Plaintiffs' senior counsel here have extensive experience, knowledge and specialized skill in immigration law, youth law, and more particularly, the rights of detained immigrant and asylum-seeking children as they exist at the intersection of the Settlement, the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 ("HSA"), the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, 122 Stat. 5044 ("TVPRA"), and the United States Constitution.

First, Plaintiffs' senior counsel are highly skilled litigators with vast expertise in representing immigrants, refugees, and youth.

In 2017, this Court awarded Plaintiffs fees under EAJA for the work of class counsel, Carlos Holguín, at a market rate, upon finding that he possesses "intimate knowledge of the Agreement"; that "[i]n addition to litigating the matter that led to the Agreement, … Holguin [has] been involved with monitoring the government's compliance with the Agreement since its inception"; and that he is "therefore uniquely positioned to efficiently litigate the enforcement action in question." *Flores v. Sessions*, No. CV 85-4544, 2017 WL 8943169, at *4 (C.D. Cal. Nov. 14, 2017) ("Family Detention Fees Order").[6]

---

[6] Class counsel Holguín is among the leading lawyers litigating class actions on behalf of immigrant and refugee children.  *See Perez-Olano v. Gonzalez*, 248

1   Co-counsel Holly Cooper is similarly accomplished in representing detained

2   immigrant and refugee children, has received multiple national awards for her

3   expertise defending detained immigrant children, and trains lawyers nationally on

4   complex federal litigation.  Declaration of Stacy Tolchin, January 7, 2022, Exhibit

5   F ("Tolchin") ¶¶ 12-18.  Ms. Cooper's specialized expertise at the intersection of

6   immigration law, immigrant children's rights, and complex federal class action

7   litigation, and her extensive personal involvement in litigating on behalf of detained

8   immigrant children in this case and related litigation, uniquely positioned her to

9   litigate Plaintiffs' enforcement motion.  Tolchin ¶¶ 8-11.

10   Co-counsel Leecia Welch is a national expert in the area of child welfare and

11   has spent the majority of her career representing children and youth in cases

12   focused on enforcing their statutory and constitutional rights.  Declaration of John

13   F. O'Toole, December 2, 2021, Exhibit G ("O'Toole") ¶¶ 9, 13; Declaration of

14   Richard M. Pearl, January 6, 2022, Exhibit H ("Pearl") ¶ 14.  Ms. Welch's

15   specialized expertise at the intersection of child welfare law, complex federal class

16   action litigation and consent decree enforcement, and the rights of detained

17

18   ─────────────────

19   F.R.D. 248 (C.D. Cal. 2008); *League of United Latin Am. Citizens v. Wilson*, 908 F.
     Supp. 755 (C.D. Cal. 1995).  In the instant matter, he has argued for the Plaintiff

20   class numerous times before this Court, the Ninth Circuit, and the U.S. Supreme
     Court, and numerous reported decisions have resulted therefrom.  *Flores v. Meese*,

21   681 F. Supp. 665 (C.D. Cal. 1988); *Flores v. Meese*, 934 F.2d 991 (9th Cir. 1990);
     *Flores v. Meese*, 942 F.2d 1352 (9th Cir. 1991) (en banc); *Reno v. Flores*, 507 U.S.

22   292 (1993); *Flores v. Johnson*, 212 F. Supp. 3d 864 (C.D. Cal. 2015); *Flores v.
     Sessions*, 862 F.3d 863 (9th Cir. 2017).

23   He "is among a very few advocates for immigrant children's rights in the country

24   with the knowledge and experience needed to give the *Flores* class a fair chance of
     prevailing against ORR."  Declaration of Justin Mixon, October 23, 2017, Exhibit E

25   ("Mixon") ¶ 6.  He is able to communicate with detained class members in Spanish,
     the language the vast majority speak, has deep knowledge of the Settlement and the

26   litigation and negotiations that preceded the Settlement, and has for years

27   monitored Defendants' treatment of and policies and practices toward detained
     immigrant and refugee children.  Holguín at ¶¶ 6-7.

28

immigrant children, her extensive personal involvement in litigating on behalf of detained immigrant children in this case and related litigation, and the National Center for Youth Law's institutional knowledge of this litigation, uniquely positioned her to litigate Plaintiffs' enforcement motion and oppose Defendants' motion to terminate.  O'Toole ¶¶ 14-16; Pearl ¶¶ 14-15; Welch ¶¶ 4, 24-25.

Second, successfully litigating the motion to enforce and defending against the motion to terminate required specialized expertise regarding immigrant children's rights under the Settlement—including prior judicial interpretations of the Settlement and the requirements for terminating the Settlement—as well as an understanding of how the Government's immigration detention system operates in practice and how the Final Rule would affect children's substantive rights.  O'Toole ¶ 15 ("I believe that the issues surrounding the termination of the Settlement and the proposed regulations' inconsistencies with the Settlement could not have been successfully litigated without Ms. Welch's specialized expertise, including her expertise regarding children's rights under the *Flores* Settlement, the legal requirements for terminating complex consent decrees involving government agencies, and federal and state regulatory and licensing frameworks governing government care of children."); Tolchin ¶ 10 ("I do not believe this case could have been successfully litigated without the particular skill that Holly Cooper brought to this litigation.").  Plaintiffs' counsel's deep familiarity with the history of this litigation was especially critical to protecting class members' rights given that many of Defendants' arguments for terminating the Settlement involved previously litigated issues.  *See Flores v. Rosen*, 984 F.3d at 736, 740-44; Sept. 27 Order at 7, 13, 17-21; *see also Orantes-Hernandez*, 713 F. Supp. 2d at 961.

2. Other qualified counsel is unavailable at the statutory rate

The motions at issue in this litigation involved the Government's efforts to terminate the Settlement and thus necessarily had to be litigated by Plaintiffs'

counsel.  As class counsel in this case, Plaintiffs' counsel were also uniquely positioned to understand the risk to these children and pursue relief on their behalf.

Moreover, few, if any, other lawyers in the country could have or would have prosecuted a class-wide action on behalf of indigent, non-English-speaking children, whom Defendants sought to strip of the protections of the *Flores* Settlement Agreement.  Even if alternative private attorneys were able to pursue this litigation, other qualified attorneys would have been highly unlikely to take this case at the statutory rate:

> [F]ew members of the immigration bar regularly engage in federal court litigation; those who do, typically pursue cases on behalf of individual clients; and only a very small number are willing and able to prosecute class actions, or indeed, any federal litigation in which a favorable outcome is not reasonably assured with a minimal investment of time and money.

Mixon ¶ 11; *accord* Declaration of Kristen Jackson, October 16, 2017, Exhibit I ¶ 5 ("[I]n my experience few legal aid lawyers or members of the private bar are willing to dedicate the time and resources to undertake federal litigation on behalf of detained immigrant and refugee minors.  When private practitioners do pursue federal litigation, they typically charge much more than the inflation-adjusted EAJA statutory rate."); O'Toole ¶ 16 ("[D]ue to the specialized nature of Ms. Welch's expertise, I believe that it would have been impossible to find appropriately qualified attorneys with the requisite knowledge of the *Flores* Settlement and complex child welfare litigation to undertake this representation at the inflation-adjusted EAJA rate."); Pearl ¶ 15 ("[Ms. Welch's] practice specialties were patently useful in this case and in the instant motion to enforce … I am certain that her distinctive expertise and skills are not available at the EAJA statutory maximums (plus COLA's) or anything close to those rates."); Tolchin ¶ 21 ("I do not believe that this work could have been done by any attorney at the EAJA market rate, adjusted for inflation.").

These factors warrant the Court's awarding attorneys' fees at rates "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Nadarajah*, 569 F.3d at 916 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 & n.11 (1984)).

### 3. Market rates for Plaintiffs' senior counsel

As appears in the Declaration of Carol Sobel, Sept. 27, 2021, Exhibit J ("Sobel") ¶ 20, Mr. Holguín's hourly market rate in 2018 was $825, in 2019 was $855, in 2020 was $905 and in 2021 is $935. Ms. Sobel is a Los Angeles attorney whose expertise in market rates courts have repeatedly recognized. *See, e.g., Nadarajah*, 569 F.3d at 912-13; *Orantes-Hernandez*, 713 F. Supp. 2d at 959 n.44. Plaintiffs request the Court award fees for Mr. Holguín's work in 2018-2021 at $775 per hour, well below his actual market rate.

Market rates for Leecia Welch are supported in the declaration of Richard Pearl, a California attorney specializing in issues related to court-awarded attorneys' fees. Pearl ¶¶ 12-16. Courts have frequently relied on Mr. Pearl's opinions and writings on court-awarded attorneys' fees. Pearl ¶¶ 4, 6-10. Plaintiffs request the Court award fees for Ms. Welch's work in 2018 at $665 per hour and in 2019, 2020, and 2021 at $690 per hour.

Market rates for Holly Cooper are supported in the declaration of Stacy Tolchin. Tolchin ¶ 21. Ms. Tolchin is a Los Angeles attorney who specializes in immigration and attorneys' fees litigation under the Equal Access to Justice Act (EAJA). Tolchin ¶¶ 6-7, 19. Plaintiffs request the Court award fees for Ms. Cooper's work in 2018 at $650 per hour, in 2019 at $680 per hour, and in 2020 at $700 per hour.

Plaintiffs' total fees request, with senior counsel's time billed at enhanced rates, additional counsel's at inflation-adjusted base rates, paralegal fees at market rates, and costs incurred is $480,749.46. Welch Dec. ¶ 27.

**D. Plaintiffs Should Be Awarded Their Reasonable Costs**

Congress crafted the EAJA to "reduce the deterrents and disparity by entitling certain prevailing parties to recover an award of attorney fees, expert witness fees, and other expenses against the United States."  H.R. Rep. No. 96-1418 at 6, 1980 U.S.C.C.A.N. at 4984.  The EAJA therefore provides for the award of costs as enumerated in 28 U.S.C. § 1920, and for "fees and other expenses."  28 U.S.C. § 2412(a), (d)(1)(A). Plaintiffs request the Court award them costs totaling $1,103.16. Welch ¶ 27; Ex. B to Welch.

IV.  CONCLUSION

For the foregoing reasons, this Court should award Plaintiffs attorneys' fees and costs pursuant to 28 U.S.C. § 2412(d) as herein requested.


Dated: January 12, 2022        CENTER FOR HUMAN RIGHTS AND
                               CONSTITUTIONAL LAW
                               Carlos R. Holguín

                               NATIONAL CENTER FOR YOUTH LAW
                               Neha Desai
                               Melissa Adamson
                               Mishan Wroe
                               Diane de Gramont

                               CHILDREN'S RIGHTS
                               Leecia Welch


                               /s/    Mishan Wroe
                               Mishan Wroe
                               *One of the Attorneys for Plaintiffs*