# Exhibit G

## DECLARATION OF JOHN F. O'TOOLE

1. I, John F. O'Toole submit this declaration in support of Plaintiffs' motion for an award of attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) ("EAJA"). This declaration is based upon my personal knowledge and experience. If called as a witness in this proceeding, I could and would testify competently with respect to the facts set forth herein.

2. I served as the Director of the National Center for Youth Law ("NCYL") from 1981 until my retirement in 2015.

3. Founded in 1970, NCYL is a privately-funded nonprofit organization that advocates on behalf of low-income children and adolescents. NCYL regularly represents plaintiffs in complex class action lawsuits intended to benefit large numbers of children and adolescents. NCYL attorneys are experts in the various areas of law that affect low-income children and have significant experience in cases involving child welfare, immigrant children, and children's mental health needs. In addition to NCYL's work with children in federal immigration custody, NCYL attorneys have worked to reform child-serving systems through litigation across the country, including in California, Texas, Washington, Arkansas, Nevada, Utah, and Missouri.

4. Throughout my time at NCYL, I was involved in a wide range of cases vindicating the rights of vulnerable children and youth. These cases included *L.J. v. Massinga*, No. 84-cv-4409-JFM (D. Md.) (seeking to protect foster children in Baltimore from mistreatment and ensure that they had adequate mental health services); *Angela R. v. Huckabee*, No. 91-cv-415-GH (E.D. Ark.) (challenging systemic failures in Arkansas's child welfare services and foster care system, including with respect to investigations, placement, health care, and case planning); *David C. v. Leavitt*, No. 93-cv-206-TC (D. Utah) (challenging systemic failures in Utah's child welfare services and foster care system, including with respect to investigations, placement, health care, and case planning); and *Henry A. v. Willden*, No. 10-cv-528-RCJ-PAL (D. Nev.) (challenging Nevada and Clark County's failure to protect the health and safety of children in foster care).

5. My work in the field of child advocacy has been recognized by the *Daily Journal*,

1

DECLARATION OF JOHN F. O'TOOLE

which named me on of California's 100 most influential attorneys.  I was appointed by the Chief Justice of the California Supreme Court to be a member of California's Blue Ribbon Commission on Children in Foster Care.  For the last twenty years, I have also served on the Board of Legal Services for Children, a San Francisco-based nonprofit organization that provides direct legal representation to children and adolescents in need, including those in the child welfare system.

6. I am familiar with the work, expertise, and reputation of Leecia Welch, a Lead Counsel at Children's Rights and the former Senior Director of Legal Advocacy and Child Welfare at NCYL.  Leecia Welch is class counsel for Plaintiffs in *Flores v. Garland*, No. 85-cv-4544-DMG-AGR.  In my capacity as Director, I supervised Ms. Welch for more than ten years, and I continue to stay abreast of her work.

7. I am also familiar with the *Flores* litigation, which was filed and settled during my time as NCYL's Director and in which I personally participated.  From the inception of the case, NCYL's attorneys have contributed specialized expertise in child welfare to the Plaintiffs' legal team. As a result, NCYL has developed unique expertise on the application of child welfare law and principles in the distinctive context of federal immigration custody. To my knowledge, other legal organizations engaged in class action litigation do not have this expertise.

8. In my opinion, Ms. Welch possesses distinctive, specialized knowledge and skill that is not generally available, and that has been essential to the successful litigation of Plaintiffs' motions to enforce the *Flores* Settlement Agreement.

9. Ms. Welch has spent the majority of her career representing children and youth, and, in particular, children and youth in government custody, in cases focused on enforcing their statutory and constitutional rights.  She has been lead or co-counsel in multiple federal court class action lawsuits and individual cases on behalf of children in need and has extensive experience negotiating and implementing complex settlement agreements with government entities.  Her work has been recognized by the American Bar Association, the California State Bar, and the Impact Fund.

10. For example, from 2004 through 2008, Ms. Welch was lead counsel on *David C. v.*

*Leavitt*, No. 93-cv-206-TC (D. Utah), representing a statewide class of children in foster care in Utah.  During that period, she led efforts to implement the parties' settlement agreement, ultimately resulting in successful exit from court oversight.  Over the course of settlement implementation, Utah's child welfare system improved dramatically and was widely recognized as leading the nation in many key respects.  From 2010 to 2015, she also co-led *Henry A. v. Willden*, No. 10-cv-528-RCJ-PAL, a damages lawsuit on behalf of a group of foster children in the Las Vegas foster care system that resulted in a two million dollar settlement.  During her work on that case she developed specialized knowledge in the improper administration of psychotropic medication to children in government custody.  Ms. Welch was also lead class counsel in *T.R. v. Quigley*, No. 2:09-cv-01677 (W.D. Wash.), a federal class action case on behalf of low-income children with significant mental health needs that resulted in landmark reforms funding and developing community-based intensive mental health services for Medicaid-eligible children in Washington state.

11. Further, Ms. Welch is lead class counsel in *M.B. and S.E. v. Kelly*, 18-cv-2617-JWL-GEB (D. Kan.), a putative class action lawsuit challenging Kansas's child welfare system, which resulted in a settlement ensuring access to vital mental health care services and ending placement practices that render children essentially homeless.

12. In addition to her work in *Flores*, while at the National Center for Youth Law Ms. Welch was class counsel for five classes of detained immigrant children in the federal custody of the Office of Refugee Resettlement in *Lucas R. v. Azar*, No. 18-cv-5741-DMG-PLA (C.D. Cal.). Additionally, Ms. Welch was class counsel for a putative class of immigrant children whose release from government custody had been delayed due to unlawful fingerprinting policies and practices in *Duchitanga v. Hayes*, No. 18-cv-10332-PAC (S.D.N.Y.).  These cases address the rights of children in federal immigration custody under the U.S. Constitution, the Trafficking Victims Protection Reauthorization Act (TVPRA) and other federal statutes, and the *Flores* Settlement.

13. In my opinion, Ms. Welch is one of the foremost litigators in the area of child

welfare and a national expert in the field.  Few if any currently practicing litigators share her combination of expertise in child welfare law, complex class action litigation, and the rights of children in federal immigration custody.

14. Ms. Welch's work litigating child welfare cases for 17 years, as well as her deep experience litigating class actions on behalf of immigrant children in federal custody, uniquely positioned her to successfully litigate Plaintiffs' motion to enforce the *Flores* Settlement Agreement and defend against the Government's motion to terminate the Settlement.  In addition, Ms. Welch and NCYL bring valuable institutional knowledge of the *Flores* Settlement and the rights of class members because NCYL has represented Plaintiffs since the inception of the *Flores* case and because Ms. Welch has been actively involved in the case for the past four years.

15. I believe that Ms. Welch's expertise was integral in achieving Plaintiffs' success in the litigation opposing Defendants' effort to terminate the Settlement.  This work resulted in the district court's September 27, 2019 order granting Plaintiffs' motion to enforce and denying the Government's motion to terminate and the Ninth Circuit's December 29, 2020 order affirming the district court's decision not to terminate the Settlement.  In particular, I believe that the issues surrounding the termination of the Settlement and the proposed regulations' inconsistencies with the Settlement could not have been successfully litigated without Ms. Welch's specialized expertise, including her expertise regarding children's rights under the *Flores* Settlement, the legal requirements for terminating complex consent decrees involving government agencies, and federal and state regulatory and licensing frameworks governing government care of children.  I further believe that Ms. Welch's deep familiarity with the experiences of children in federal immigration custody and with the Government's prior violations of the Settlement was necessary to demonstrate that terminating the Settlement was not in the public interest.

16. Because the Government attempted to terminate the *Flores* Settlement, these motions had to be litigated by *Flores* class counsel and alternative counsel was necessarily unavailable to protect children's rights under the Settlement.  In addition, to my knowledge, attorneys who represent children in federal immigration custody generally represent children in

their individual immigration cases and very rarely initiate federal class action litigation. Child welfare attorneys who regularly engage in federal litigation generally lack access to children in federal immigration custody.  It is therefore my belief that *Flores* class members would have had great difficulty finding qualified counsel to pursue the relief achieved in the September 27, 2019 order absent Ms. Welch's representation.  Further, due to the specialized nature of Ms. Welch's expertise, I believe that it would have been impossible to find appropriately qualified attorneys with the requisite knowledge of the *Flores* Settlement and complex child welfare litigation to undertake this representation at the inflation-adjusted EAJA rate.

I declare under penalty of perjury under the laws of the United States that the foregoing facts are true and correct.

Executed on December 2, 2021 at Oakland, California.

/s/ *John F. O'Toole*
John F. O'Toole