CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Peter A. Schey (Cal. Bar No. 58232)
Carlos Holguín (Cal. Bar No. 90754)
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Facsimile: (213) 386-9484
Email:pschey@centerforhumanrights.org
       crholguin@centerforhumanrights.org

*Listing continues on next page*

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES., *et al.*, | Case No. CV 85-4544-DMG-AGRx |
| Plaintiffs, | **PLAINTIFFS' RESPONSE TO NOTICE OF REQUEST FOR EXTENSION OF SPECIAL MASTER/INDEPENDENT MONITOR TERM (ECF NO. 1237)** |
| v. | |
| MERRICK B. GARLAND, Attorney General of the United States, *et al.*, | |
| Defendants. | |
| | [HON. DOLLY M. GEE] |

*Attorneys for Plaintiffs continued*:

USF SCHOOL OF LAW IMMIGRATION CLINIC
Bill Ong Hing (Cal. Bar No. 61513)
2130 Fulton Street
San Francisco, CA 94117-1080
Telephone: (415) 422-4475
Email: bhing@usfca.edu

LA RAZA CENTRO LEGAL, INC.
Stephen Rosenbaum (Cal. Bar No. 98634)
474 Valencia Street, #295
San Francisco, CA 94103
Telephone: (415) 575-3500

/ / /

# TABLE OF CONTENTS

A.   CLASS MEMBERS IN CBP CUSTODY ........................................................................1

    (I)   Lengthy detention without complying with Paragraphs 12A and 18 of the *Flores* Agreement ......................................................................................2

    (II)   Current reports of CBP mistreatment of detained Class Members in violation of the *Flores* Agreement .................................................................3

    (III)   The CBP Settlement ........................................................................................5

    (IV)   An Anticipated Influx .....................................................................................6

B.   CLASS MEMBERS IN ICE CUSTODY ........................................................................6

C.   CONCLUSION ...............................................................................................................7

/ / /

This response to the April 1, 2022, Special Master/Independent Monitor's ("Monitor") Request for Extension of at least a three (3) month term from April 15, 2022, to July 14, 2022 ("Extension Request") [Doc. # 1237] addresses the request as it relates to ICE and CBP compliance with the *Flores* Agreement.

According to the terms of the October 5, 2018 Order Appointing the Monitor ("Appointment Order"), the Monitor has requested, and the Court has granted, eight extensions of her term [Docs. ## 698, 769, 1005, 1071, 1096, 1120, 1147, 1219] and, pursuant to the January Order [Doc. # 1219], extended the date to April 15, 2022.

As the Extension Request notes, on January 14, 2022, when this Court approved the Extension of the Monitor's term to April 15, 2022, it further ordered, in part:

> The 'Terms and Extensions' provisions in Paragraph A.3 of the Appointment Order are modified such that the Parties and/or the Monitor may file…a Notice describing serious, specific, and ongoing concerns and requesting a further extension of the Monitor's term.

**A.    Class Members in CBP Custody**

The CBP Juvenile Coordinator's Report ("CBP Report") filed April 8, 2022 [Doc. # 1240-1], states in part that there was a 37% increase in the number of unaccompanied children (UCs), leading to an average of 520 UCs in CBP custody per day in February compared to 295 per day in January. *Id*. at 2. In February, family unit individual (FMUs) encounters decreased by 17% from January, a 69% decrease from the peak in August 2021. *Id*. In February 7,773 individuals in FMUs, likely including thousands of Class Members, were summarily expelled under Title 42, while 18,809, again including Class Members, were processed under Title 8. *Id*.

In short, all Parties acknowledge that thousands of Class Members continue to be detained by CBP every month.

/ / /

(i)     <u>Lengthy detention without complying with Paragraphs 12A and 18 of the *Flores* Agreement</u>

According to the CBP Report of April 8, 2022, in February 2022 Class Members were in CBP custody along the Southwest Border ("SWB") for an average of 52.42 hours, and 53.55 hours in the RGV Sector.

During this time Class Members in family units were detained an average of 66.01 hours in the SWB, and 70.7 hours in the RGV Sector.

Data for the first ten days of March was only lightly improved with Class Members in CBP SWB custody for an average of 41.67 hours, and 39.15 hours in the RGV Sector. During this time Class Members in family units were detained an average of 51 hours in the SWB, and 48.09 hours in the RGV Sector.

These unacceptably long detentions in CBP custody appear to take place with no efforts undertaken to comply with the parties' *Flores* Agreement which in plain language requires, *inter alia*, that *"[w]henever* the INS takes a minor into custody, it shall expeditiously process the minor," Agreement ¶ 12.A (emphasis supplied), and *"[u]pon taking a minor into custody, the [Defendants] ... <u>shall</u> make and record the prompt and continuous efforts on its part toward family reunification and the release of the minor pursuant to Paragraph 14 ..."* Agreement ¶ 18 (emphasis supplied). Indeed, "[s]uch efforts at family reunification *shall continue so long as the minor is in [Defendants'] custody*." *Id*. (Emphasis supplied).

This compliance issue was raised in Plaintiffs' June 26, 2019, Ex Parte Application for a Temporary Restraining Order and an Order to Show Cause Why a Preliminary Injunction and Contempt Order Should Not Issue ("TRO/OSC Application"). [Doc. # 572.] However, barring an unexpected turn of events, it will remain unresolved even if the parties' CBP settlement in principle is finally approved by Defendants and the Court.

Extending the Special Master's term may allow her to address this significant outstanding compliance issue unlikely to be resolved in the parties' otherwise fairly

comprehensive CBP settlement. This outstanding compliance issue strongly supports a three- to six-month extension of the Special Master's term.

(ii) <u>Current reports of CBP mistreatment of detained Class Members in violation of the *Flores* Agreement</u>

Of further concern to Plaintiffs are recent formal administrative complaints involving credible reports of CBP's mistreatment of detained minors that also warrant a three- to six-month extension of the Monitor's term.

On April 6, 2022, Immigrant Defenders Law Center ("ImmDef"), on behalf of its unaccompanied minor clients, submitted a complaint to the Department of Homeland Security ("DHS") Office of Civil Rights and Civil Liberties ("CRCL"), documenting systemic abuses unaccompanied children faced in 2021 while in CBP custody ("ImmDef. Complaint"). *See* Exhibit A filed herewith. This complaint was filed jointly with other complaints filed by Kids in Need of Defense ("KIND"), Florence Immigrant and Refugee Rights Project ("FIRRP"), and Americans for Immigrant Justice ("AIJ"). See Exhibit B ("KIND Complaint"); Exhibit C ("FIRRP Complaint"); Exhibit D ("AIJ Complaint").

These complaints, based on interviews with thousands of Class Members, outline the systemic abuse of children detained by CBP and propose numerous measures to prevent the continued violations of both the *Flores* Agreement and the Trafficking Victims Protection Reauthorization Act ("TVPRA").

These complaints, based on interviews with several thousand Class Members after CBP transferred their custody to ORR, cite numerous specific examples in which it appears CBP violated the following rights and protections guaranteed to Class Members by the *Flores* Agreement or the TVPRA, which both codified certain protections established in the *Flores* Agreement and set out certain new rights for unaccompanied children who Congress described as a "particularly vulnerable population" to whom the country "owes a special obligation" to treat "humanely and fairly"[1]:

---

[1] 154 Cong. Rec. S10866 (daily ed. Dec. 10, 2008) (statement of Sen. Feinstein).

(1) Treatment "with dignity, respect, and special concern for their particular vulnerability as minors," i.e. an environment free from verbal, physical, and sexual abuse;[2]

(2) "Access to… drinking water and food as appropriate;"[3]

(3) "Access to… medical assistance if the minor is in need of emergency services;"[4]

(4) Right to "[a]dequate temperature control and ventilation;"[5]

(5) "Access to toilets and sinks;"[6]

(6) "Transfer… to the Secretary of Health and Human Services not later than 72 hours after determining that such child is an unaccompanied alien child;"[7] and

(7) Right to remain "segregate[d] from unrelated adults."[8]

Of the children that ImmDef interviewed, eighty-five reported verbal harassment or abuse, twenty-four reported physical abuse, and two reported sexual abuse. ImmDef. Complaint at 3.

In 2021, 70% of the Class Members Americans for Immigrant Justice interviewed reported conditions and/or abuse while in CBP custody in violation of the *Flores* settlement agreement. AIJ Complaint at 4. Fifty percent (50%) of Class Members reported cold temperatures causing their lips to become chapped, bodies to tremble, or becoming sick with a fever or cold. *Id*. Thirteen percent (13%) of children reported that the food provided was insufficient, malnourishing, and at times, inedible due to it being spoiled or raw. *Id*. at 5.

The KIND Complaint reports that its staff received widespread reports of officers who woke up sleeping children, often in the early morning or middle of the

---

[2] *Flores* Agreement at ¶ 11
[3] *Id*. at ¶ 12.
[4] *Ibid*.
[5] *Ibid*.
[6] *Ibid*.
[7] 8 U.S.C. 1252(b)(3)
[8] *Flores* Agreement ¶12.

night, by screaming at them, kicking them, hitting them, kicking the mats they were sleeping on, or pulling the mats out from under them. KIND Complaint at 4. It also received reports of officers "shoving children, grabbing and pulling them by the ear, arm, or clothing, and using intimidating body language." *Id*. Children described officers who "yelled aggressively, used foul language, called them names, told them they were undeserving of help or respect, accused them of being criminals or lying, and threatened to deport them. Children report being called 'cabron' (asshole), 'puta' (bitch or slut), 'pendejo' (stupid), 'mierda' (shit), 'burro' (donkey, ass, or idiot) . [and] 'cerdo' (pig) ..." *Id*. Class members reported having been so terrified by the violent and aggressive behavior of officers that they cried or were unable to sleep or eat. *Id*.

These reports by reputable organizations that interviewed thousands of class members as part of their delivery of services to minors held by ORR after passing through CBP custody are reminiscent of the complaints included in Plaintiffs' June 26, 2019, TRO/OSC Application.

The four complaints filed herewith also show the urgency of the Court considering whatever powers it believes appropriate to encourage Defendants to finally approve the CBP settlement that the parties negotiated over a two-year period, as well as the need to extend the Special Master's term for three to six months.

(iii)   The CBP Settlement

The long-anticipated CBP settlement which, among many other things, puts in place an independent Juvenile Care Monitor with detailed specific monitoring requirements, has been awaiting final approval by the Defendants for several months.

Even if Defendants promptly approve the settlement, the parties must move the Court for preliminary approval, if granted there will likely be a period of 30 days to post a summary of the agreement and for Class Members to object, any objections would then have to be shared with the Court and commented on by the.

parties, and a final hearing scheduled to consider final approval of the settlement. These steps alone would likely consume at least three months. It would be prudent to provide the Special Master with several additional months to assist monitoring the steps taken to begin implementation of the CBP settlement. In short, extending the Special Master's term for six months would likely be the most efficient way to proceed.

    (iv)    <u>An Anticipated Influx</u>

Finally, as the Monitor notes, the influx of unaccompanied minors at the Southwest Border continues to increase, and the number of family units encountered at the border remains significant. Figure B of the Extension Request shows the number of unaccompanied minor ("UAC") and family unit ("FMUA") encounters by CBP along the Southwest Border in January and February 2022.

All the developments discussed above suggest that the Special Master's term should be extended by at least three but more realistically six months.

**B.    Class Members in ICE Custody**

As the Special Master notes, as of April 1, 2022, it is unclear whether the CDC will terminate the Title 42 pandemic restrictions presently applicable to family units. If the CDC order terminates, processing the expected high number of family units will strain the already strained facilities.

Defendants state that they have "no objection in principle to the requested extension of the Monitor's term." Defendants' Response to Notice of Request For Extension Of Special Master/Independent Monitor Term ("Defendants' Response") [Doc. #1239.] Nevertheless, Defendants object to the Special Master's concern that a likely future influx is "an appropriate basis to continue or expand the existing monitoring order." *Id*. at 2. More specifically, with regard to ICE, Defendants submit that because ICE, at least for the moment, "is no longer using [its] facilities" to detain Class Members, "there is, therefore, good reason to terminate monitoring entirely with regard to ICE." *Id*. at 3.

The concern about adequate facilities for any increased number of family units is highlighted by the ICE Juvenile Coordinator's January 2022 report that the remaining two Family Staging Facilities ("FSC") (Karnes and Dilley) have been transitioned to detention centers for single adults. In addition, the contract with Endeavors to serve the FMUAs at the remaining hotel utilized as a Family Staging Facility ("FSC") has ended and will not be renewed.

The ICE Juvenile Coordinator Report filed April 8, 2022 ("ICE Report") [Doc. # 1240-2], states in part that ICE "no longer maintains facilities that house Class Members," and "there are no plans to re-implement any of these facilities in the future." ICE Report at 2.

However, ICE also states it is continuing to "monitor and consider its options," and to address the "dynamic needs of the southwest border." *Id*. Its future plans cannot be "precisely predicted," and in "limited circumstances" ICE may still detain Class Members in facilities under Paragraph 21 of the *Flores* Agreement. ICE Report at 1-2.

The short answer to Defendants' response is that if the Special Master's term is in any event extended over CBP and ORR issues, retaining her jurisdiction to promptly address future family detention issues that may arise will be far more efficient than forcing her or the Plaintiffs to file a new motion to reinstate her jurisdiction over ICE, a matter that could take weeks to resolve and would most likely again require that the Court adjudicate and resolve competing claims about ICE's compliance with the terms of the *Flores* Agreement.

### C.   Conclusion

For the reasons stated above, Plaintiffs support an extension of the Special Master's term of service.

/ / /

Dated: April 11, 2022

Respectfully submitted,

*/s/Peter Schey*
*Class Counsel for Plaintiffs*

CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Peter A. Schey
Carlos Holguín

USF SCHOOL OF LAW IMMIGRATION CLINIC
Bill Ong Hing

LA RAZA CENTRO LEGAL, INC.
Stephen Rosenbaum
*Counsel for Plaintiffs*

///

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2022, I served the foregoing pleading on all counsel of record by means of the District Clerk's CM/ECF electronic filing system.

*/s/Peter Schey*
*Counsel for Plaintiffs*
CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Peter A. Schey