CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Peter A. Schey (Cal. Bar No. 58232)
Carlos Holguín (Cal. Bar No. 90754)
256 South Occidental Boulevard
Los Angeles, CA  90057
Telephone: (213) 388-8693
Facsimile: (213) 386-9484
Email:pschey@centerforhumanrights.org
       crholguin@centerforhumanrights.org

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MERRICK B. GARLAND, Attorney General of the United States, *et al.*, <br><br> Defendants. | Case No. CV 85-4544-DMG-AGRx <br><br> **EXHIBIT C TO PLAINTIFFS' RESPONSE TO NOTICE OF REQUEST FOR EXTENSION OF SPECIAL MASTER/INDEPENDENT MONITOR TERM (ECF NO. 1237)** <br><br><br> [HON. DOLLY M. GEE] |



April 6, 2022

U.S. Department of Homeland Security
Office of Civil Rights and Civil Liberties
Compliance Branch, Mail Stop #0190
2707 Martin Luther King Jr. Ave., SE
Washington, DC 20528-0190

Sent via Email: CRCLCompliance@hq.dhs.gov

Re: Abuse of Unaccompanied Non-Citizen Children in Customs and Border Protection Custody Between January and August 2021

1. **Introduction**

The Florence Immigrant and Refugee Rights Project is a 501(c)(3) non-profit organization that provides free legal and social services to adults and unaccompanied children facing immigration removal proceedings in Arizona. The Florence Project provides an array of legal services to unaccompanied children placed in federally funded shelters in Arizona, including age-appropriate legal orientations, a legal intake with every child to screen for legal relief, and direct representation of children in immigration court or before the U.S. Citizenship and Immigration Services ("USCIS"). The Florence Project also refers children to attorneys after release from the custody of the Office of Refugee Resettlement (ORR). In addition, the Florence Project has a dedicated team of social workers who provide services to certain vulnerable detained unaccompanied children.

The children we serve have arrived at ORR shelters after spending time in the custody of Customs and Border Protection ("CBP"). As part of our legal intake, we ask children about their treatment in CBP custody. We have long been alarmed by our clients' reports of verbal and physical abuse while in CBP custody. In 2009, we documented many of these complaints in a report, "Seeking Protection, Enduring Prosecution."[1] We are disheartened that many of the same abuses continue more than a decade later. We submit this complaint to document the systemic abuse of unaccompanied immigrant children in the custody of CBP and

---

[1] Available at https://www.firrp.org/media/BPAbuseReport.pdf

urge the Office of Civil Rights and Civil Liberties to take broader investigative action.

This complaint is filed concurrently with other complaints from Immigrant Defenders Law Center (ImmDef), Kids in Need of Defense (KIND), the Young Center for Immigrant Children's Rights, and Americans for Immigrant Justice (AIJustice) regarding similar abuses reported by the unaccompanied non-citizen children (UNC) they serve. The case examples contained in the concurrently filed complaints substantiate the complaints made herein, and vice versa.

## 2. Our Data Set

The Florence Project tracked abuse reports for a span of nine months between January 1 and August 13, 2021. During that time, our staff completed intakes with approximately 6,000 unaccompanied children. **Out of those six thousand intakes, the Florence Project documented over 900 reports of abuse and legal violations by CBP. Thus, approximately 15 percent of children we interviewed who passed through CBP custody were victims of abuse at the hands of CBP. That number is unacceptably high and likely undercounts the instances of abuse because many children remained afraid to report it**. We then filed more than 130 CRCL complaints at the request of the children who suffered:

- Excessive detention,
- Illegal and inhumane confinement, including holding children in cells/rooms with adults,
- Verbal abuse,
- Physical abuse and mistreatment,
- Deprivation of medical care,
- Failure to provide sufficient food/hydration, and in some cases not providing any,
- Family separation,
- Physical abuse and mistreatment, and
- Human rights violations.

## 3. Observations of Human Rights Violations of Unaccompanied Children in CBP Custody

While in United States CBP custody, immigrant children have been subjected to conditions that threatened their health and safety:

Case 2:85-cv-04544-DMG-AGR   Document 1243-3   Filed 04/11/22   Page 4 of 12   Page ID #:46696

A. **CBP regularly detains children in excess of the 72-hour limit, which facilitates abuse:** 792 children we spoke to reported being held in CBP holding centers for longer than 72 hours. This is a direct violation of the Flores Settlement Agreement and the Trafficking Victims Protection Reauthorization Act which mandates that unaccompanied children cannot be held in CBP custody for longer than 72 hours. CBP holding centers are not designated to accommodate children for these excessive periods of time.

The excessive time spent in inappropriate custodial settings facilitates abuse. Children reported government officials insulting them and threatening them with deportation. CBP officers at the holding centers also shoved children, kicked children awake, and hit children on their heads and hands according to reports by our clients. During these excessive stays at the holding centers, children reported not receiving enough food. They also reported being unable to shower regularly and substandard medical assistance. Our clients reported the following:

- One child reported being held for five days in the holding center. CBP did not allow the child to make any phone calls and told the child that "no one loves" the child. CBP officer mocked child as the officer said it. The child was held with a large number of other children and was only given a couch to sleep on. The child only had one opportunity to shower. The child observed cameras inside the showering area and felt very uncomfortable.
- One child reported being detained for nine days and not receiving enough food. The child reported only eating twice a day and often going hungry.
- One child reported being held for ten days and not being allowed to make a phone call during that time.
- One child reported being held for ten days and receiving little water even though the child kept asking for more. CBP officers swore at the child and called the child a "criminal."
- One child reported being held for six days and going hungry because the child did not receive sufficient food.
- One child spent nine days at the holding center and reported having to share a bed with two other children. The child reported being so cold that the child became sick.
- One child reported being detained for seven days in a room with about 70 people in it. There was no room to sit or sleep in this area because it was so full.

- Two children reported being held for 18 days in the holding center.
- One child reported being in the holding center for 13 days and was not given enough food during this time. The child was not allowed outside during this time.
- A 16-year-old child was detained for six days in poor conditions and lacked adequate food. The child reported stomach pains from the food the child received and was not given medical attention when it was requested. The child was very cold in the holding center. The child reports that the child's cousin with whom the child travelled was held until the cousin's 18th birthday, at which point the cousin was transferred directly to an adult detention center, separating the child from the only family member with the child. A 16-year-old child reported being held for eight days and observed other young children having to sleep on the floor because of a lack of beds.
- A child was detained for ten days and was hungry the entire time. During that time, the child was never let out of the room where the child was held.
- A child reported being held for seven days and receiving insufficient food.
- Two children reported being held for six days and being served cold and bad-tasting food.
- One child reported being detained for 17 days in the holding center.
- One child reported being held for eight days in a cramped cell with 32 other children. The child was not given a mattress to sleep on.
- A child reported being held for 16 days and experienced verbal abuse by CBP officers during this time.
- One child was held at the holding center for 13 days and was only given one water bottle a day. The child was threatened with deportation and was only allowed three showers during the stay.
- One child was in the holding center for 14 days and only allowed to shower once the entire time. The child was also not given enough food during this time.

**B. CBP Regularly houses children in rooms with adults who are strangers to them:** More than 25 children reported being held in holding centers in rooms/areas with unrelated adults. These adults were not family or known to the children. Many of the children reported feeling afraid. This is a violation of the basic civil and human rights of children as well as a direct violation of

4

the Flores Settlement Agreement, which requires that children be held in separate accommodations from unrelated adults.

C. **CBP officers verbally abuse children in detention:** 85 children reported verbal abuse by the officers in charge of taking care of them. Children reported being insulted and yelled at several times.
- One child was called a criminal and cussed at by an officer.
- A child reported to us that an officer called her a "bitch".
- One child report being called a "*pendejo*" (asshole) by an officer.
- A child reported being screamed at by an officer asking the child why the child came to the United States.
- One child reported that CBP officers yelled at the child until the child cried.
- A child was yelled at and threatened with deportation by the CBP officers.
- A child reported being called a "*cabrón*" (asshole/dumbass) by an officer.
- A child reported being called "a piece of shit" by an officer.

D. **CBP officers physically abuse detained children**: 28 children reported CBP physical abuse to the Florence Project.
- A 17-year-old minor witnessed CBP agents use a Taser gun on other children as a punishment. The child was in constant fear after seeing other children being tased on the hand and neck. Although the child looked away each time this happened, the child was able to hear the cries of the impacted children.
- One child reported that an officer yelled at the child and threw the child to the ground. The officer held the child on the floor by putting a knee on the child's back.
- One child reported that a person cleaning the holding center stepped on the child's fingers and insulted the child when the child complained. The child witnessed CBP officers kick another child three times for sleeping in the wrong place.
- A child reported witnessing an officer kick another child in the head.
- A child reported being woken up by officers kicking the children and their mattresses.
- Children reported being woken by officers slapping their bed sheets.
- A 17-year-old child reported that a CBP officer shoved the child.

5

E. **CBP denied necessary medical care and ignored children's requests for medical care:** Approximately 14 children reported being sick or getting sick while in CBP holding centers and not receiving adequate care.
- One child reported that the food provided made the child sick with a headache. When the child examined the wrapped of the burritos served by CBP, they were expired.
- One child reported having COVID symptoms. CBP officers ignored the child until the child insisted on a COVID test. Upon testing positive, CBP officers refused to assist the child when the child requested toilet paper and water.
- A child who spent nine days at the holding center reported being so cold that the child became sick with a cold.
- One child reported getting stomach pains after eating frozen food. The child asked for medical attention but never received it.
- A child held for five days was very cold and became sick but was not given medical attention despite a request to see a medical provider.
- A child reported that the quality of food was bad. The child stated that food was spoiled and other children would not eat it because it made the child sick. The child stated that the water tasted strongly of chemicals.
- One child stated that the child's sister became sick with a respiratory illness and the nurse told her to just drink water and didn't provide medicine or a COVID test.
- A child reported being sick for five days while detained. Although the child was vomiting and had diarrhea, the officers did not provide medical attention. One officer told the child that "if you want medication, you have to stay five more days in detention." In those five days, the child only ate fruit because the other foods offered made the child feel sick.
- A child reported that the child felt sick while in CBP custody. A CBP officer examined the child and said that the child was fine, but the illness worsened. After the child arrived in ORR custody and was seen by medical processional, the child was immediately instructed to begin taking medication. The child believed that CBP's failure to provide medical assistance allowed the condition to worsen.

F. **CBP failed to provide children with privacy, especially in intimate settings.** Seven different children reported feeling unsafe due to cameras being placed in rooms where they were showering.

- A 17-year-old child who was at the holding center for nine days was only allowed to shower twice while detained. The child reported feeling unsafe because there were cameras in the showers.
- A 17-year-old child reported that cameras in the shower stalls made the child feel uncomfortable.
- A 12-year-old child reported seeing cameras in the showers while at the holding center.
- A 16-year-old child reported seeing cameras in the showers while at the holding center.
- A 16-year-old child reported seeing cameras in the showers and in the bathrooms while at the holding center.
- A 15-year-old child reported cameras in the bathroom while at the holding center.
- A 17-year-old child reported being uncomfortable because the security cameras faced the shower stalls.

4. **Recommendations**

The examples included in the concurrently filed complaints demonstrate that CBP's abuse of children is widespread. It is not limited to one child at one instance. It is not limited to the conduct of a "bad apple" employee within the agency. It is not limited to even a rogue remote CBP outpost that lacks training and resources. The abuse of children in CBP custody is common. The sheer number of children who have reported abuse, many of whom told us that they fear retaliation and were afraid to speak up, thus suggesting that these numbers are a fraction of the actual problem, shows that CBP engages in a pattern and practice of treatment characterized by overcrowded facilities, a lack of adequate food, water, medical care, and privacy, and the verbal and physical abuse of the most vulnerable immigrants.

This is unacceptable. Our organizations offer suggestions to improve the treatment of unaccompanied children in the paragraphs below. We believe that these will offer immediate solutions to ameliorate some of the problem.

While these recommendations will help in the short term, we call on the federal government to reimagine and reinvent the system for caring for unaccompanied immigrant children. CBP is an agency that, through these complaints, has shown itself to be incapable of providing adequate care. Worse still, the agency's treatment of unaccompanied children is marked by horrific conditions, outdated

facilities, and abuse. This agency cannot and should not hold children. We demand that the government create a child-friendly, trauma-informed reception system that relies on trained child welfare professionals working in the best interest of the children in their custody.

The following changes must also be implemented immediately:

1) **Strict adherence to the TVPRA and the Flores settlement agreement**: CBP should adhere to the requirements laid out in the *Flores* settlement agreement and the TVPRA. Specifically:
   - Children should not be held in CBP custody for more than 72 hours, as these facilities have never been designed to house children for any extended period and their prolonged detention leads to their continued exposure to abhorrent conditions.
   - Children in CBP custody must be provided with an environment that is safe and sanitary. This should include adequate access to bathroom facilities, toothbrushes, showers, clean clothes, medical care, as well as adequate and edible food and water. Age-appropriate food should be provided for infants and toddlers. Children should not be made to sleep on concrete floors in frigid rooms with bright lights on all hours of the day and night. CBP must provide adequate medical services to children in their custody, including mental health services.

2) **Protect children's right to privacy**: CBP officials should implement policies and standards that protect and respect children's right to privacy. Specifically, CBP should ensure that children are afforded individual privacy in shower and bathroom facilities. CBP must immediately remove cameras from sensitive locations such as bathrooms.

3) **Adherence to and enforcement of the CBP National Standards on Transport, Escort, Detention and Search (TEDS)**: All CBP officials should consider the best interests of the child in all decisions, as required by 2015 TEDS Standard 1.6. Moreover, CBP should promptly promulgate guidelines, like those proposed in the 2016 *Interagency Framework on Considering the Best Interests of Unaccompanied Children* to ensure that all CBP officials consider children's best interests in every decision from the first encounter through processing, detention, and release or transfer. CBP should also make the TEDS standards enforceable to ensure that all children are receiving appropriate care in CBP facilities. CBP should regularly conduct reviews and encourage external reviews and inspections by non-

governmental organizations and legal services providers and at all facilities holding children to ensure compliance with the TEDS standards and order corrective action and additional training when violations are found. Results or summaries of these reviews should be publicly available. CBP should also regularly review the TEDS standards for additional improvements to further promote the safety and wellbeing of children in CBP custody.

4) *Standards of care centered on the best interests of children:* CBP's standards of care should be centered on advancing the best interests of children. Accordingly, CBP should meet or exceed standards of care recommended by pediatric health and child wellbeing experts, including access to clean bathroom and shower facilities that allow for individual privacy; clean, age-appropriate clothing; adequate bedding, food, water, and personal hygiene time and products; adequate medical care; telephone access to contact family; and the ability to remain with trusted family caregivers but separated from unknown adults. Facilities should be temperature-controlled, have adequate lighting, and lighting should be adjusted to facilitate nighttime sleep.

5) *Mandatory Training of CBP officers and staff*: CBP officers and staff should be trained regularly on topics such as cultural competency, basic human rights, trauma-informed approaches, child development, de-escalation techniques, harm reduction, and the basics of trafficking and asylum.

6) *Access to a phone with a complaint hotline and telephonic access to legal services providers:* CBP must provide all minors in its custody with regular access to a confidential telephone that is equipped to make free calls to family and legal services providers and to access a free private hotline available for children to report abuse. Any child that asks to make a phone call must be allowed to do so at any time.

7) *Access to interpreters*: CBP should ensure access to interpreters for children in CBP custody. This includes hiring bilingual officers trained to recognize language access needs, training officers in language assessment, and providing full-time access to an interpretation service that includes Indigenous language interpreters.

8) *Hire Child Welfare Professionals:* Consistent with Congress's directive as part of the Consolidated Appropriations Act, 2022, DHS should hire state-

licensed child welfare professionals at all southern land border facilities.[2] These professionals should conduct protection screenings of arriving children, ensure appropriate care, and maintain children's family unity. Unlike unlicensed CBP agents, officers, and other personnel, child welfare professionals possess the expertise necessary to ensure the safety and well-being of unaccompanied children in CBP custody. Children should be able to be in reasonable telephonic contact with confirmed family members, just as they are in ORR custody.

9) *Access to Legal Counsel:* CBP should prioritize access for legal services providers in CBP detention centers. LSPs should have the ability to meet with children in confidential spaces (both in person and telephonically), have access to rosters of children in CBP custody, and access to areas in the CBP facility where children are held to monitor conditions.

## 5. Conclusion

The data herein and that included with the other concurrently filed complaints demonstrates that CBP regularly violates federal law. The abuses documented herein are a pattern and practice at multiple CBP locations throughout the border. The Florence Project urges the Office of Civil Rights and Civil Liberty to investigate immediately and to bring necessary reforms to a system that permits the regular abuse of children. Please do not hesitate to contact me with questions or concerns.

*Laura Belous*
_____
**Laura Belous, Esq.**
Advocacy Attorney
Florence Immigrant and Refugee Rights Project
lbelous@firrp.org
Tel. 520-269-7153

*Yesenia Ramales*
_____
**Yesenia Ramales**
Senior Legal Assistant ~Advocacy
Florence Immigrant & Refugee Rights Project
yramales@firrp.org
Phone: 602-237-6072
Fax: 602-340-0596
P.O. Box 32670
Phoenix, AZ 85064

---

[2] *See* Consolidated Appropriations Act, 2022, Explanatory Statement, Division F—Department of Homeland Security; https://docs.house.gov/billsthisweek/20220307/BILLS-117RCP35-JES-DIVISION-F.pdf.

10

# CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2022, I served the foregoing EXHIBIT C on all counsel of record by means of the District Clerk's CM/ECF electronic filing system.

*/s/Peter Schey*
*Counsel for Plaintiffs*
CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Peter A. Schey