CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Peter A. Schey (Cal. Bar No. 58232)
Carlos Holguín (Cal. Bar No. 90754)
256 South Occidental Boulevard
Los Angeles, CA  90057
Telephone: (213) 388-8693
Facsimile: (213) 386-9484
Email:pschey@centerforhumanrights.org
       crholguin@centerforhumanrights.org

*Listing continues on next page*

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES., *et al.*, | Case No. CV 85-4544-DMG-AGRx |
| Plaintiffs, | PLAINTIFFS' RESPONSE TO ICE AND CBP JUVENILE COORDINATORS' REPORTS |
| v. | [Doc. ## 1240-1, 1240-2] |
| MERRICK B. GARLAND, Attorney General of the United States, *et al.*, | |
| Defendants. | [HON. DOLLY M. GEE] |

/ / /

*Attorneys for Plaintiffs continued*:

USF SCHOOL OF LAW IMMIGRATION CLINIC
Bill Ong Hing (Cal. Bar No. 61513)
2130 Fulton Street
San Francisco, CA 94117-1080
Telephone: (415) 422-4475
Email: bhing@usfca.edu

LA RAZA CENTRO LEGAL, INC.
Stephen Rosenbaum (Cal. Bar No. 98634)
474 Valencia Street, #295
San Francisco, CA 94103
Telephone: (415) 575-3500

/ / /

The Court's Order of February 7, 2022 ("Order") [Doc. # 1229] requires in part that each Juvenile Coordinator will report on: (i) the census of minors in each of the agency's facilities; (ii) the average length of stay for minors currently in the agency's facilities and for minors who have been released, with more details to assist the Court and the parties in tracking these metrics; (iii) the number of minors currently testing positive for COVID-19; and (iv) whether the Juvenile Coordinator has adequate personnel or other capacity to provide detailed monitoring of new or expanded facilities. *Id*. at 1.

### 1. ICE JUVENILE COORDINATOR'S REPORT

The Order also requires that the ICE interim report shall cover the topics listed in the November 15, 2021 Order [Doc. # 1203] and compliance with the Court's Order regarding any minors held under Title 42 authority [Doc. # 976] with respect to any facilities in which ICE receives Class Members, and (i) specific explanations for the continued detention of minors beyond 20 days; (ii) updates on the number, locations, and safe and sanitary conditions of the hotels used to process families, and the length of stay therein; and (iii) updates on ICE policies regarding the use of the hotels or of the Family Staging Centers ("FSC"), including policies and procedures to address COVID-19. Order at 2.

The ICE Juvenile Coordinator April 8, 2022 Report (Doc. #1240-2) ("ICE Report") states in part that ICE "no longer maintains facilities that house [accompanied] Class Members," and "there are no plans to re-implement any of these facilities in the future." ICE Report at 2.

However, ICE also states it is continuing to "monitor and consider its options," and to address the "dynamic needs of the southwest border." *Id*. Its future plans cannot be "precisely predicted," and in "limited circumstances" ICE may still detain Class Members in facilities under Paragraph 21 of the *Flores* Agreement. ICE Report at 1-2.

The ICE Report further states that while the Endeavors and MVM hoteling programs "have ceased," ICE Report at 2, "ICE may need to utilize other hotels

on an *ad hoc* basis, consistent with the court's September 4 and September 21, 2020 orders." *Id*.

While Plaintiffs welcome recent developments regarding the detention of accompanied Class Members, changes that should significantly reduce or possibly for now even eliminate *Flores* compliance issues, they remain concerned that on an "*ad hoc*" basis ICE may resort to detaining Class Members in hotels that are almost certainly not licensed as required by the *Flores* Agreement and also likely will not provide the conditions and programs required by the Agreement. Plaintiffs respectfully suggest that the Court should inquire:

• What does ICE mean when it says that on an "*ad hoc*" basis it may detain Class Members in hotels?

• What hotels is it referring to?

• Will these hotels provide conditions and services that comply with the *Flores* Agreement?

Also troubling is the ICE Report's statement that "[g]iven the very limited nature of operations at this time, ICE will not assign additional personnel and resources to monitor conditions of its facilities housing Class Members." *Id*. at 2. The Court should inquire:

• What exactly does this statement mean?

• Does this statement impact the role of the ICE Juvenile Monitor, and if so, how?

The ICE Report also states that as on April 1, 2022, there were no Class Members in the FSCs or EFSC ..." *Id*. at 3. The Court should inquire:

• Is CBP releasing families with Class Members or turning them over to ICE for processing and release?

• If CBP is transferring families to ICE, how and where is ICE processing the families for release such that as of April 1, 2022, there were no accompanied Class Members in ICE. custody?

## 2. CBP JUVENILE COORDINATOR'S REPORT

The Order also requires that the CBP interim report shall cover : (i) a census of Class Members in CBP custody in the Rio Grande Valley sector; (ii) an update on CBP's policies and capacity for processing minors in light of COVID-19, Title 42, and the ongoing influx; (iii) an update as to whether the conditions at the Donna Centralized Processing Center (CPC-DNT), the temporary outdoor processing site, and any other facility that serves as a hub for processing minors are safe and sanitary under FSA Paragraph 12; and (iv) a status update, if any, on CBP construction or renovation projects related to processing Class Members. Order at 2.

The CBP Juvenile Coordinator's April 8, 2022 Report ("CBP Report") (Doc. # 1240-1) indicates that along the SW border family unit (FMU) encounters, including both adults and children, decreased by 17%, from January to February, 2022, while unaccompanied children (UCs) encounters increased by 37%. *Id.* at 2.

On average, in February 2022, there were 520 UCs in CBP custody per day in the SW Border. *Id.* at 4. On March 10, 2022, there were 565 UC Class Members and 1,252 accompanied Class Members detained in the SW Border, and 207 UC Class Members and 489 accompanied Class Members detained in the RGV Sector. *Id.*

The CBP Report states that in February 2022 UC Class Members spent an average of 22 hours and accompanied Class Members an average of 66 hours in CBP custody along the SW Border. *Id.* at 5. On March. 10, 2022, these numbers changed slightly such that UC Class Members spent an average of 20.01 hours and accompanied Class Members an average of 51.04 hours in CBP custody along the SW Border.

In the RGV Sector, in February 2022 UC Class Members spent an average of 20.75 hours and accompanied Class Members an average of 70.7 hours in CBP

CV 85-4544-DMG-AGRX

custody. *Id.*[1]

The CBP Report states that "[a]ll UCs encountered in the United States are processed under Title 8 authorities and transferred to the custody of HHS, Office of Refugee Resettlement (ORR) or repatriated to a contiguous country in accordance with the Trafficking Victims Protection Reauthorization Act of 2008 ["TVPRA"]." *Id* at 6.

The Report does <u>not</u> explain what "processing" involves or how long it usually takes for accompanied or unaccompanied Class Members. Historically, processing involves questioning the detained migrant and completing an I-213 form, Record of Deportable/Inadmissible Alien. This form includes prior entries into or removals from the U.S., biographical information, and contact information for any relatives living in the U.S. Processing may also include fingerprinting and checking DHS databases to determine any prior removals or criminal history. CBP is also required by the *Flores* Agreement to provide Class Members with certain forms. Agreement at ¶ 24D. While Defendants have not stated how long it takes CBP to "process" a Class Member or an accompanying parent, it is unlikely the procedure takes more than an hour.

Plaintiffs remain concerned with the length of time Class Members, especially accompanied Class Members, are detained by CBP. This concern is heightened by the following:

(i) Defendants' failure to approve the settlement the parties dedicated over two years to negotiate in response to most of the issues raised in Plaintiffs' June 26, 2019, *Ex Parte* Application for a Temporary Restraining Order and an Order to Show Cause Why a Preliminary Injunction and Contempt Order Should Not Issue ("TRO/OSC Application") [Doc. # 572]. This agreement in principle was for the most part negotiated during the Trump administration and Defendants have

---

[1] On March 10, 2022, these numbers changed slightly such that UC Class Members spent an average of 18.04 hours and accompanied Class Members an average of 48.09 hours in CBP custody.

4

offered no reason why *two years later* it has not been finalized and approved by the Biden administration.

(ii) The long detention in CBP custody that thousands of Class Members experience appears to take place with no efforts undertaken to comply with the parties' *Flores* Agreement which requires, *inter alia*, that *"[w]henever the [Defendants] takes a minor into custody, [they] shall* expeditiously process the minor," Agreement ¶ 12.A (emphasis supplied), and *"[u]pon taking a minor into custody, the [Defendants] ... shall* make and record the prompt and continuous efforts on its part toward family reunification and the release of the minor pursuant to Paragraph 14 ..." Agreement ¶ 18 (emphasis supplied). "Such efforts at family reunification *shall continue so long as the minor is in [Defendants']  custody*." *Id*. (Emphasis supplied).

This compliance issue was raised in Plaintiffs' June 26, 2019, TRO/OSC Application. However, barring an unexpected turn of events, it will remain unresolved even if the parties' CBP settlement in principle is finally approved by Defendants and the Court.

(iii) As Plaintiffs discussed in their Response to Notice of Request for Extension of Special Master/Independent Monitor Term ("Plaintiffs' Response") [Doc. # 1243], four April 2022 detailed formal administrative complaints submitted to DHS involve credible reports of CBP's widespread mistreatment of detained minors in violation of the *Flores* Agreement. *Id*. at 3-5. The complaints were prepared by four organizations that provide legal service to unaccompanied minors in ORR custody or recently released from ORR custody and are based on interviews with several thousand Class Members. *Id. See also* Exhibits A-D filed with Plaintiffs' Response. [Doc. ## 1243-1 to 1242-4.]

In light of the above issues discussed above, Plaintiffs suggest the following:

• Why are accompanied minors routinely detained by CBP far longer than unaccompanied minors?

• Are accompanied minors released with their parents by CBP or are they turned over to ICE for further processing and release?

• What, if any, steps can the Court take to encourage Defendants to complete the settlement of Plaintiffs' 2-19 TRO/OSC Application?

• Does CBP comply with Paragraphs 12A and 18 of the *Flores* Agreement when it detains Class Members (requiring commencement of immediate steps aimed at release after apprehension), and if not, why not?

• How much of the time unaccompanied Class Members spend in CBP custody is a result of CBP's "processing" versus ORR's failure to promptly accept custody of unaccompanied minors?

Dated: April 15, 2022             Respectfully submitted,

                                            */s/Peter Schey*
                                            *Class Counsel for Plaintiffs*

                                            CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
                                            Peter A. Schey
                                            Carlos Holguín

                                            USF SCHOOL OF LAW IMMIGRATION CLINIC
                                            Bill Ong Hing

                                            LA RAZA CENTRO LEGAL, INC.
                                            Stephen Rosenbaum
                                            *Counsel for Plaintiffs*

///

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2022, I served the foregoing pleading on all counsel of record by means of the District Clerk's CM/ECF electronic filing system.

*/s/Peter Schey*
*Counsel for Plaintiffs*
CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Peter A. Schey