# CBP Settlement Agreement

# *Flores v. Garland*, Case No. 2:85-cv-4544 (C.D. Cal.)

## TABLE OF CONTENTS

I.    DEFINITIONS ...................................................................................................... 2

II.   SCOPE OF SETTLEMENT, EFFECTIVE DATE, AND DISTRIBUTION; RELEASE OF CLAIMS .... 3

III.  NO ADMISSION OF WRONGDOING ................................................................ 4

IV.   FORCE MAJEURE CONDITIONS EXCUSING COMPLIANCE WITH THE AGREEMENT ............. 5

V.    MIGRATION SURGES ....................................................................................... 5

VI. PARTIAL COMPLIANCE OR DELAYS IN COMPLIANCE ................................. 6

VII. CONDITIONS AT CBP FACILITIES ................................................................ 6

    1.   FACILITY DESIGNATION ........................................................................... 6
    2.   QUALITY ASSURANCE ................................................................................ 7
    3.   CBP ENHANCED MEDICAL SUPPORT FOR CLASS MEMBERS IN CUSTODY ...... 7
        A.   Medical Support Goals ........................................................................ 7
        B.   Medical Support Approach .................................................................. 8
        C.   Enhanced Medical Support Approach: .............................................. 9
        D.   Enhanced Medical Support Process: .................................................. 9
    4.   NUTRITION STANDARDS FOR CBP FACILITIES IN RGV AND EL PASO SECTORS ........... 10
        A.   In General ........................................................................................... 10
    5.   TEMPERATURE AND WARMTH .................................................................. 12
        A.   Temperature ....................................................................................... 12
        B.   Garments ............................................................................................ 12
    6.   SLEEP ...................................................................................................... 13
    7.   HYGIENE AND SANITATION ...................................................................... 13
    8.   CHILD-APPROPRIATE ENVIRONMENT ...................................................... 14
        B.   Family Unity ....................................................................................... 14
        C.   Special Considerations ...................................................................... 15
    9.   CAREGIVERS ............................................................................................ 15
        B.   Orientation ......................................................................................... 16
        C.   Responsibilities .................................................................................. 16
        D.   Additional Caregiver Support ........................................................... 16

VIII.   EXTENDED TIME IN CUSTODY ................................................................... 17

IX.   JUVENILE CARE MONITOR ......................................................................... 17

XI.   NOTICE TO CLASS MEMBERS .................................................................... 20

XII.   ORIENTATION FOR CBP EMPLOYEES AND CONTRACTORS ...................... 20

XIII.   DISPUTE RESOLUTION ............................................................................... 21

    SPECIAL CONSIDERATIONS: ANNEX I ............................................................ 22
    IA. CARE FOR CLASS MEMBERS: ................................................................... 22
    IB.  BEHAVIORAL HEALTH: ............................................................................ 22
    IC. MEDICAL NOTIFICATION ......................................................................... 23
    ID. ENHANCED MEDICAL MONITORING: ...................................................... 24
    IE. MEDICATION REVIEW: ............................................................................. 24
    IF. MEDICAL QUALITY MANAGEMENT (MQM): ........................................... 24
    IG.  PUBLIC HEALTH/INFECTIOUS DISEASE MANAGEMENT ........................... 25
    IJ. SURGE AND CRISIS-LEVEL MEDICAL SUPPORT ...................................... 26
    IK.  MEDICAL MONITORING AND COMPLIANCE ............................................. 26

WHEREAS the original complaint in this action was filed on July 11, 1985, and on January 28, 1997, the Court approved a class-wide settlement of this action pursuant to Fed. R. Civ. P. 23 ("Settlement"); and

WHEREAS Plaintiffs have filed a request for a temporary restraining order and preliminary injunction (TRO) (ECF No. 572) seeking to enforce compliance with the Settlement addressing conditions and processing of class members at U.S. Customs and Border Protection ("CBP") facilities in the Rio Grande Valley (RGV) and El Paso Border Patrol Sectors; and

WHEREAS on June 28, 2019 this Court ordered the parties to engage in mediation discussions before Special Master/Independent Monitor Andrea Sheridan Ordin to attempt to resolve Plaintiffs' TRO; and

WHEREAS contested litigation regarding conditions for class members at CBP facilities would be complex, lengthy and costly to all parties concerned; and

WHEREAS, with the assistance of Special Master/Independent Monitor Ordin and court-appointed medical/public health expert Dr. Paul Wise, the Parties have conducted discussions and arm's length negotiations with respect to a compromise and settlement of the TRO with a view to settling the issues in dispute, preventing future litigation over safe and sanitary conditions for class members in CBP custody in the RGV and El Paso Border Patrol Sectors, and achieving the most effective relief possible consistent with the interests of the Parties; and

WHEREAS the parties have concluded that the terms and conditions of this compromise are fair and reasonable, and

WHEREAS Plaintiffs agree that, should Defendant CBP remain in compliance with the terms of this Agreement in the El Paso and RGV Border Patrol Sectors, Plaintiffs will refrain from filing any action to enforce the provisions of Paragraphs 11 and 12A of the Settlement as set forth below against CBP in the RGV and El Paso Border Patrol Sectors; and

WHEREAS, the Parties enter into this Agreement for the purpose of clarifying the Parties' understanding of the meaning of certain provisions of the *Flores* Settlement Agreement ("Settlement"), as they apply to conditions of CBP detention in the RGV and El Paso Sectors of the U.S. Border Patrol; the provisions at issue are:

Paragraph 11: The INS treats, and shall continue to treat, all minors in its custody with dignity, respect and special consideration for their particular vulnerability as minors. The INS shall place each detained minor in the least restrictive setting appropriate.

and

Paragraph 12A: Following arrest, the INS shall hold minors in facilities that are safe and sanitary and that are consistent with the INS's concern for the particular vulnerability of minors. Facilities will provide access to toilets and sinks, drinking water and food as

1

appropriate, medical assistance if the minor is in need of emergency services, adequate temperature control and ventilation, adequate supervision to protect minors from others, and contact with family members who were arrested with the minor.[1]

WHEREAS with the exception of claims identified in the paragraph below, Plaintiffs agree to withdraw their pending TRO claims under the portions of Paragraphs 11 and 12A of the Settlement set forth above with prejudice; and

WHEREAS, Plaintiffs agree to withdraw their pending TRO filing, and withdraw without prejudice any pending TRO allegations regarding (i) time in custody (ii) Defendants' making and recording of efforts aimed at the prompt release of minors, or (iii) Defendants' notice to class members or accompanying adult relatives of class members' right to release or transfer to a facility licensed for the care of dependent children; the parties agree that these issues are not addressed in this Agreement;

NOW, THEREFORE, the Parties stipulate that this Agreement constitutes a full and complete resolution of the issues raised in the TRO that relate to the portions of paragraphs 11 and 12A that are set forth above.

## I.   DEFINITIONS

Wherever used in this Agreement, the following terms have the meanings set forth below:

1. **"Party" or "Parties"** shall apply to Defendant CBP and to Plaintiffs. As the terms apply to CBP, it shall include CBP's agents, employees, contractors and/or successors in office establishing, directing, overseeing, or performing functions for CBP in the RGV and El Paso Sectors of the U.S. Border Patrol. As the term applies to Plaintiffs, it shall include all class members.

2. **"Class Member"** or **"Class Members"** shall apply to the persons defined in Paragraph 10 of the 1997 *Flores* Settlement ("Settlement").

3. **"Defendant" and "CBP"** for purposes of this Agreement are CBP's agents, employees, contractors and/or successors in office establishing, directing, overseeing, or performing functions for CBP in the RGV and El Paso Sectors of the U.S. Border Patrol. This Agreement is not intended to bind any CBP entities outside of the RGV and El Paso Sectors of the U.S. Border Patrol. This Agreement also does not bind other agencies, such as ICE and HHS.

4. **"Unaccompanied Child(ren)" ("UC")** shall mean the definition provided in 6 U.S.C. § 279(g)(2).

5. **"Juvenile Priority Facility"** shall mean a facility, designated by CBP, as being the first option to hold class members until appropriate placement with ICE or HHS can be secured or release from CBP custody can be accomplished. Within 30 days of the Court's approval of this Agreement, CBP shall identify at least one Juvenile Priority Facility in

---

[1] The successors of the INS that carry out immigration functions today are CBP, U.S. Immigration and Customs Enforcement ("ICE"), and U.S. Citizenship and Immigration Services, all of which are part of the U.S. Department of Homeland Security ("DHS"), as well as the U.S. Department of Health and Human Services ("HHS"), Office of Refugee Resettlement ("ORR"). *See* Homeland Security Act of 2002 §§ 402, 462, 1512, Pub. L. No. 107-296, 116 Stat. 2135 (codified at 6 U.S.C. §§ 202, 279, 552); TVPRA, 8 U.S.C. § 1232.

RGV Sector and one in El Paso Sector, notify Class Counsel of this designation, and begin utilizing those facilities. Thereafter, CBP shall notify Class Counsel within thirty days of changing its juvenile priority facilities or commencing operation of a new juvenile priority facility in either the RGV or El Paso Sectors. The designation of a juvenile priority facility will be dependent upon traffic patterns and the number of class members in custody at any given time.  Juvenile priority facilities may include Centralized Processing Centers (CPCs), soft-sided structures, or other facilities for which additional steps have been taken to accommodate class members.  Juvenile priority facilities may vary in the specific steps taken to accommodate juveniles, and not all juvenile priority facilities will necessarily provide the same degree of accommodations.

     6. **"Medical Priority Locations"** shall mean those locations staffed with contracted medical personnel. All juvenile priority facilities shall be designated as medical priority facilities.

     7. **"Juvenile Coordinator's Office"** shall mean the CBP *Flores* Juvenile Coordinator, his or her employees, assistants, and aides.

     8. "**Juvenile Care Monitor**" shall mean the Monitor described in section IX of this Agreement.

     9. "**Effective Date**" is the date upon which the Agreement is approved by the Court.

     10. **"Class Counsel"** are Peter Schey and Carlos Holguin.

## II.    SCOPE OF SETTLEMENT, EFFECTIVE DATE, AND DISTRIBUTION; RELEASE OF CLAIMS

     1.    This Agreement represents a commitment by CBP—specifically by the RGV and El Paso Border Patrol Sectors within CBP that were the subject of Plaintiffs' TRO—to comply with the requirements of paragraphs 11 and 12A of the Settlement, mandating that class members be housed in safe and sanitary conditions with particular regard for the vulnerability of minors.

     2.    By entering into this Agreement, Defendant CBP agrees to be bound by the terms of this Agreement in U.S. Border Patrol facilities in the RGV and El Paso Border Patrol Sectors.

     3.    **Preservation of Defenses**. By agreeing to this Agreement and the releases contained herein, Defendant CBP does not waive any defenses available to it or to the United States in any other pending or future action to claims that were or could have been made in the Action that arise from the same common nucleus of operative facts alleged by Plaintiffs in their pleadings and the arguments made in the Action.

     4.    By entering into this Agreement, Plaintiffs and all class members agree to release, relinquish, and discharge Defendant CBP from all claims in their pending TRO except that, as set forth above, the withdrawal of Plaintiffs' TRO is without prejudice to their ability to bring future action regarding certain issues not covered by this Agreement. This Release shall not apply to individual class member actions brought pursuant to paragraph 24B of the Settlement.

     5.    The Parties agree to submit this Agreement to the Court for preliminary approval without a hearing unless the Court in its discretion decides to schedule a hearing regarding preliminary approval of this Agreement. The Parties agree to seek a hearing on final approval of this Agreement within 60 days of preliminary approval of the Agreement. If the Agreement is preliminarily approved by the Court, the Parties agree that within three weeks of such preliminary approval, CBP will post a summary of the Agreement jointly

developed by Plaintiffs and Defendants along with a notice of the hearing date for final
approval in CBP's facilities where class members may be held in the RGV and El Paso
Sectors.  CBP agrees not to seek to withdraw from this Agreement at any time prior to the
hearing date for final approval.

6. This Agreement shall become effective upon final court approval (the
"Effective Date").  Within thirty (30) days of the Effective Date, Defendants shall ensure
that CBP has issued new guidance regarding the content of this Agreement and distributed it
to all employees in the RGV and El Paso Sectors. Defendants shall provide this guidance to
the Juvenile Coordinator, Class Counsel, the Special Master/Independent Monitor and to the
Juvenile Care Monitor.

7. Defendant CBP agrees to post the poster attached as Exhibit 1 in all CBP
facilities in the RGV and El Paso Sectors where class members are held.

8. This Agreement shall terminate two and one half years from its Effective
Date, or upon the termination of the *Flores* Settlement Agreement, whichever is sooner.[2]

## III.     NO ADMISSION OF WRONGDOING

This Agreement, whether or not executed, and any proceedings taken pursuant to it:

1. Shall not be construed to waive, reduce, or otherwise diminish the authority of
Defendant to enforce the laws of the United States against class members, consistent with the
Constitution and laws of the United States, and applicable regulations;

2. Shall not be offered or received against Defendant as evidence of, or construed as
or deemed to be evidence of, any presumption, concession, or admission by Defendant of the
truth of any fact alleged by the Plaintiffs or the validity of any claim that has been or could have
been asserted in the TRO or this litigation, or the deficiency of any defense that has been or
could have been asserted in this litigation, or of any liability, negligence, fault, or wrongdoing of
the Defendants; or any admission by the Defendants of any violations of the Settlement; and

3. Shall not be offered or received against Defendant as evidence of a presumption,
concession, or admission of any liability, negligence, fault, or wrongdoing, nor shall it create any
substantive rights or causes of action against any of the Parties to this Agreement, in any other
civil, criminal, or administrative action or proceeding, other than such proceedings as may be
necessary to effectuate the provisions of this Agreement; provided, however, that if this
Agreement is approved by the Court, Defendant may refer to it and rely upon it to effectuate the
liability protection granted it hereunder.

---

[2] Paragraph 40 of the Flores Settlement Agreement provides that the Settlement "shall terminate
45 days following defendants' publication of final regulations implementing this Agreement." The
Settlement may also be terminated, in whole or in part, by a court order or an Act of Congress.  If
provisions of Paragraphs 11 and 12 A of the Flores Settlement Agreement terminate with respect
to CBP, this Agreement necessarily terminates as well.

## IV.    FORCE MAJEURE CONDITIONS EXCUSING COMPLIANCE WITH THE AGREEMENT

1.      Defendant CBP enters into this Agreement in good faith and with all intention of complying with this Agreement, but recognizes that situations outside of its control may make it impossible to comply with certain provisions of this Agreement.  Additionally, Defendant CBP recognizes that full compliance with the terms of this Agreement is dependent on receiving adequate appropriated funding from Congress.  In the event of lack of adequate appropriated funding, full compliance will not be possible.

2.      In the event that Defendant CBP believes compliance with any of the provisions of this Agreement must be excused due to the existence of a Force Majeure event, CBP shall notify in writing the Special Master/Independent Monitor (for the duration of her term), the Juvenile Care Monitor (for the duration of his or her term), and Class Counsel as soon as possible (but in all events no later than three (3) days) after the occurrence or commencement of the Force Majeure event.  That notification shall specify the nature and extent of the Force Majeure event, the date that the Force Majeure event commenced, the anticipated duration of CBP's inability to fully comply with this Agreement as a result of such Force Majeure event, the details of the circumstances of the non-compliance with the Agreement, and the efforts CBP is undertaking to mitigate the impact of the Force Majeure event and return to compliance with the Agreement.  During the duration of the Force Majeure event, CBP shall undertake diligent efforts to minimize the impact of the Force Majeure event and comply with the terms of this Agreement to the extent possible. No later than three (3) days after CBP has returned to full compliance following a Force Majeure event, CBP shall notify in writing the Special Master/Independent Monitor (for the duration of  her term), the Juvenile Care Monitor (for the duration of his or her term), and Class Counsel that the Force Majeure event has ended and CBP has returned to full compliance with this Agreement.

3.      A Force Majeure event shall be defined as any circumstance outside of CBP's control that precludes full compliance with the terms of this Agreement, including, for instance, natural disasters; other emergencies (fires, terrorism, etc.); full or partial government shutdown; public health concerns; or lack of appropriated funds to carry out certain provisions of this Agreement despite Defendants' best efforts to secure and allocate necessary funding. A Force Majeure event includes the period of time necessary following the event to recover from that event.  Non-compliance proximately caused by a bona fide Force Majeure event shall not be considered a violation of this Agreement, so long as diligent best efforts are made to cure the non-compliance as promptly as reasonably practicable.

4.      If Class Counsel disagrees with Defendant's assertion of a Force Majeure event, the dispute shall be resolved in accordance with the Dispute Resolution procedures set forth below.  Defendant's failure to provide Class Counsel with timely notice of a Force Majeure event that causes non-compliance shall constitute a violation of this Agreement, and shall preclude the related non-compliance from exemption as a violation of this Agreement.

## V.    MIGRATION SURGES

1.      The Parties are aware that there are situations that do not constitute a Force Majeure Event, but which may nevertheless impact CBP's ability to maintain full compliance with this Agreement. Where such surge situations occur and impact CBP's ability to fully comply with this agreement, CBP agrees that heightened oversight by the Juvenile Care Monitor and Special Master/Independent Monitor is warranted.

2.      A surge situation will not necessarily mean that compliance with this Agreement is not possible, and during any surge situation, CBP shall make all efforts to continue to comply with all provisions of this Agreement. If full compliance is not possible, CBP shall take all necessary steps to mitigate any non-compliance and comply with this Agreement to the extent possible, including, but not limited to, seeking assistance from all appropriate federal and other partners and activating any appropriate internal contingency plans.  As soon as practicable, Defendant shall notify the Special Master/Independent Monitor (for the duration of her term), the Juvenile Care Monitor (for the duration of his term), and Class Counsel of the extent of the non-compliance, the expected duration of such non-compliance, and the steps taken to mitigate such non-compliance. CBP will work with the Juvenile Care Monitor and Special Master/Independent Monitor to ensure that non-compliance is mitigated to the greatest extent possible during the surge situation. As soon as possible, Defendant shall notify Class Counsel the Juvenile Care Monitor and the Special Master/Independent Monitor when any non-compliance has ended. The fact that Defendant provides notice of non-compliance under this section shall not, on its own, constitute evidence of breach.

## VI. PARTIAL COMPLIANCE OR DELAYS IN COMPLIANCE

1.      There are additional situations, also outside of Defendant CBP's control, where CBP may be able to only partially comply with certain provisions of the Agreement, or limited situations that cause minor "non-compliance" or delays in compliance by CBP. Such situations may include, for instance, one malfunctioning toilet or sink in a particular facility, an air conditioning outage in a particular facility that is rectified within several hours, or a computer system outage that is rectified within several hours.

2.      Defendant need not provide notice of these limited, minor instances of partial non-compliance to Class Counsel, the Special Master/Independent Monitor, or the Juvenile Care Monitor, but will undertake all efforts to mitigate the situation and return into full compliance as soon as operationally possible.

## VII. CONDITIONS AT CBP FACILITIES

### 1.      Facility Designation

1.      CBP shall transfer all class members who are not immediately returned voluntarily to their country of origin to juvenile priority facilities as expeditiously as possible. Such transfer shall occur within 48 hours of arrival at a non-priority facility and, in general, within 24 hours of arrival at a non-priority facility.  CBP shall make all reasonable efforts to hold class members in juvenile priority facilities for the duration of their time in CBP custody.

2.      Juvenile priority facilities such as CPCs or soft-sided facilities may be made up of "pods," or open holding areas within the larger facility.  Individuals held in each pod will generally be able to move freely about that pod.

3.      Juvenile priority facilities shall work to reduce the use of fencing and enclosures that are not needed for security reasons.

4.      Juvenile priority facilities shall, to the extent possible, have areas that provide the least restrictive setting for class members appropriate to their age and special

needs.  This setting must be consistent with the need to ensure safety and security of all persons within the facility.

5.      The planning and construction of new CBP facilities in the RGV and El Paso Sectors have and will take into consideration that the facilities will be permanently or temporarily used as juvenile priority facilities, as outlined in this Agreement.

6.      Non-juvenile priority facilities shall maintain an adequate supply of items to accommodate the temporary holding of class members.  These supplies shall include the following items:

     a.  Mats and blankets;
     b.  External garments, such as sweatshirts, and jackets;
     c.  Undergarments and clothing, such as sweatpants, t-shirts, and underwear;
     d.  Diapers of varying sizes and baby wipes;
     e.  Potable water, cups as appropriate, meals, and snacks;
     f.  Hygiene products to include soap and/or hand sanitizer, a mechanism for drying hands, toothbrushes, and toothpaste; and
     g.  Disposable bottles, baby formula, and baby/toddler food, cloth swaddling blankets and beanies.

**2.      Quality Assurance**

1.      CBP shall have a Contracting Officer Representative (COR) assigned to oversee the contracts of each juvenile priority facility.

2.      Contract terms shall not be inconsistent with the terms of this Agreement.

3.      The COR shall monitor the contracts and recommend corrective action if deficiencies are noted.

4.      The COR shall recommend increases in the services provided in the contracts, as needed, to ensure services are adequate even in instances of a surge.

5.      Each contract shall have quality assurance (QA) measures taken on the part of the contractor in place, to ensure that all of the standards outlined in the contract statement of work are met.  The COR shall oversee the QA process and collect logs documenting the existing process.

6.      CBP shall work toward training a limited number of employees as COR level three representatives, to provide a second level of observation and compliance for the contracts. COR level three representatives are able to provide an additional level of oversight into contractors' compliance measures and QA processes, such that CBP will have the ability to more closely inspect, validate, and monitor compliance.

**3.      CBP Enhanced Medical Support for Class Members in Custody**

    **A.      Medical Support Goals**

1.      CBP medical support in the RGV and El Paso Sectors shall align with and support CBP's operational law enforcement mission.

2.      CBP medical support shall function as a front-line element of a broader network of medical care – including local health systems, ICE, and HHS.

3.      CBP medical support seeks to  ensure appropriate access to medical care for persons in custody, with an emphasis on populations who may be vulnerable, such as class members.

4.      CBP medical support shall also promote CBP workforce health.

7

**B.    Medical Support Approach**

1.    CBP recognizes its critical role in providing medical support, consistent with its law enforcement mission, as a front-line element of a broader network of medical support.

2.    CBP shall rely heavily on referrals to local health systems (and local standards of care), as well as on transfers to its partners at ICE and HHS Office of Refugee Resettlement (ORR), who have more robust medical capabilities.

3.    CBP shall utilize a layered approach to medical support, endeavoring to ensure no single point of failure.

- o   Agents in the field shall be trained to recognize and respond to signs/symptoms of injury or illness.
- o   CBP shall promptly activate the 911 system or refer class members to the local health system whenever appropriate for evaluation and treatment.
- o   CBP shall have contracted medical support personnel at medical priority facilities in the RGV and El Paso Sectors who shall provide initial assessment, treatment, and referral.
- o   CBP shall refer class members with urgent or emergent medical issues to the local health system.  CBP shall use its best efforts to prioritize referral to facilities with pediatric specialists and capabilities, to the extent such facilities are available and to the extent that referral to such facilities would not delay emergency treatment.  CBP shall use its best efforts to enter into referral agreements with local health care facilities in each Sector.
- o   CBP shall coordinate and collaborate with a broad network of medical support stakeholders.
- o   The CBP Chief Medical Officer shall engage in all aspects of CBP medical support efforts on an ongoing basis.
- o   CBP shall coordinate with and request assistance from other relevant stakeholders, such as the U.S. Department of Homeland Security (DHS), ICE, HHS ORR, the Centers for Disease Control and Prevention (CDC), and state/local health officials, as appropriate, for additional medical support.
- o   In particular, CBP shall coordinate closely with ICE and HHS ORR regarding transfer of persons in custody with identified medical issues, to include infectious diseases, mental health issues, and acute or chronic medical conditions.
- o   CBP's Medical Support shall be subject to independent monitoring as set forth in Section IX below.

4.    CBP shall engage with its federal partners, public health experts, and the Juvenile Care Monitor on appropriate protocols for addressing issues of public health concern.

5.    While CBP recognizes that certain vaccines may be a component of medical care in certain settings, they may be more effectively administered by other government agencies with existing capabilities and custodial responsibilities for class members. CBP will continue to review the appropriateness of vaccine administration for class members in CBP custody in collaboration with other relevant government agencies and the Juvenile Care Monitor.

6.    As part of its medical support approach, CBP (working with its broader network of medical support) shall abide by relevant medical and public health standards of care that the Juvenile Care Monitor agrees are consistent with CBP's obligations under this Agreement in its

treatment of class members.  Those relevant standards of care shall take into account the  unique operational circumstances of CBP's custody of class members, its front-line role in a broader network of medical support, and CBP's law enforcement mission.

**C.    Enhanced Medical Support Approach:**

1.    CBP shall utilize operational risk management principles to identify CBP medical priority facilities for enhanced medical support.  All juvenile priority facilities shall be identified as medical priority facilities.

- o   Operational risk management considerations include volume (number of persons apprehended/in custody); demographics (priority emphasis on UCs and family units); duration of time in custody; remoteness; availability of local medical care.

2.    CBP shall utilize contracted medical personnel to provide enhanced medical support at medical priority facilities.  This enhanced medical support shall include:

- o   Contracted medical support teams
- o   Medical providers – Licensed and credentialed to provide assessment, treatment, and referral for the population in custody, including class members
- o   Medical support personnel
- o   Medical Direction and Supervision

**D.    Enhanced Medical Support Process:**

1.    *Health Intake Interviews*

- o   CBP shall conduct a health interview with all class members in custody upon initial arrival at a U.S. Border Patrol facility in the RGV and El Paso Sectors.
- o   CBP shall use a standardized form attached as Exhibit 2 for this health interview, in addition to any forms utilized by CBP medical contractors.
- o   The health interview shall be conducted by contracted medical personnel or by Border Patrol agents, as appropriate.
- o   During the health interview, CBP shall identify class members who are tender age (12 and under); pregnant; or with an illness, injury, disease, or other medical issue.  For such class members, CBP will make the appropriate disposition, based on the circumstances.  For instance, CBP may activate 911/EMS; refer/transport to local health system; or refer to the onsite medical provider for further evaluation/medical assessment, if an onsite medical provider is available.

2.    **Medical Assessments**

- o   Medical assessments will be conducted by CBP contracted credentialed medical providers, when available. Medical assessments shall be conducted on class members who are tender age; pregnant; or with an injury, illness, disease, acute needs associated with a disability or chronic illness, or other medical issue.  Where contracted medical providers are not available, individuals in custody may be referred to the local health system or to other available health care providers for a medical assessment, as appropriate.
- o   Medical assessments shall include a detailed assessment for potential medical issues requiring further evaluation, including:
  - ▪   Targeted history, physical, vital signs, review of systems, assessment, disposition
  - ▪   Consideration of nutritional issues and mental health issues

- o For class members identified as requiring additional medical evaluation or treatment, CBP will make the appropriate disposition, based on the circumstances.  For instance, CBP may activate 911/EMS; refer/transport to local health system; or conduct medical encounter/treatment onsite.

3. **24/7 onsite medical treatment** –
   - o At identified juvenile priority locations, CBP contracted medical personnel shall be onsite at all times and able to provide evaluation and treatment for basic medical issues identified upon initial intake assessment or throughout time in custody.
   - o Complex or emergency issues shall be referred to the local health system.

4. **Follow-up care** – CBP contracted medical personnel shall provide follow-up care after referral to a local health system or hospitalization.

5. **Public Health/Infectious Disease support** – CBP contracted medical personnel shall provide support to early identification, treatment, isolation, appropriate referrals, infection control, and public health support for infectious diseases in CBP facilities.

6. **Exit Health Interview** – CBP contracted medical personnel shall conduct exit health interviews for class members who receive medical treatment in CBP custody, as appropriate, to ensure persons in custody are fit for travel or transfer.

7. **Trauma-Informed Care-** At juvenile priority facilities, CBP shall take a trauma-informed approach to class members in custody.  Recognizing the potential for trauma in their home communities and on their journey and that time in custody can be destabilizing and disorienting, CBP will make efforts to foster reassurance, resilience, orientation, recreation, and distraction.

## 4.    Nutrition Standards for CBP Facilities in RGV and El Paso Sectors

### A.    In General

1. In all facilities, CBP shall ensure that class members have access to age-appropriate meals and snacks that meet class members' daily caloric needs. The main emphasis shall be on safety of food sources and meeting basic, age-appropriate caloric intake and hydration needs.

2. Food and water shall never be used as a reward, or withheld as punishment. Food provided shall be in edible condition (not frozen, expired, or spoiled).

3. CBP shall provide ready access to clean drinking water and cups, as appropriate, at all times. Clean drinking water shall be provided through the use of functioning clean and hygienic water fountains, bottled water, or portable water coolers. In juvenile priority facilities, at least one of those options shall be made available to all class members outside of the common toilet area.  Sufficient cups shall be provided in hold rooms or other areas where class members are held so that class members are not required to share drinking cups with other detainees. Water and cups shall routinely be checked and replenished as necessary.  Where portable water coolers are used, they shall be washed or rinsed with warm water once during every shift period.  Containers that have visible dirt or mold shall not be reused until thoroughly cleaned. Portable water coolers shall be thoroughly cleaned at least weekly. Any visible dirt or mold shall be removed when the container is washed.  All portable coolers shall be covered or enclosed and shall be replaced if the spout is not operational or if the container cannot be completely cleaned due to age or deteriorating condition.

10

4.      Class members shall be offered a snack upon arrival to a CBP facility and meals at regularly scheduled intervals. At least two of those meals shall be hot.  Class members shall have regular access to snacks, milk, and juice.

5.      CBP shall ensure that all class members have access to age-appropriate food that is prepared in a safe and sanitary manner, taking into account all appropriate food safety requirements.  Food must be appropriate for class members' age and capabilities.

- o  Agents shall comply with food handling instructions included in any packaged food, and shall wear gloves when preparing food.
- o  CBP shall work with the Juvenile Care Monitor to develop and implement appropriate guidelines for food provided to class members in non-priority facilities.

6.      CBP shall provide safe and hygienic access to age-appropriate food for children under 2 years old, including baby formula and baby foods.

- o  Disposable bottles, potable water, and formula mixing instructions shall be available and readily accessible in all CBP facilities.  Instructions shall be available in English and Spanish and shall include diagrams that demonstrate how to mix formula.

7.      CBP shall record the availability of snacks and drinking water for class members in custody.  CBP shall record the provision of meals for class members in custody.

8.      Initial intake assessments, such as health interviews or medical assessments, shall include consideration of potential acute malnutrition or dehydration and other nutrition-related concerns.

9.      Class members in custody identified with a potential nutrition-related concern shall receive appropriate evaluation by onsite medical support personnel or referral to the local health system.

10.     CBP shall support breast-feeding as desired by mothers in custody with young children.

11.     CBP shall take note of and be prepared to accommodate food allergies with simple, basic, readily available hypoallergenic alternatives.

12.     In facilities that utilize contracts for meals and snacks, the contractor shall provide appropriate quality assurance, subject to CBP COR oversight.

13.     The CBP Juvenile Coordinator's Office (JCO), in coordination with the CBP Chief Medical Officer, shall monitor adherence to CBP nutrition standards.

- a.  Monitoring efforts shall include ongoing review of utilization of meals by tender-age children.

**B.      Priority Facilities**

Additionally, in juvenile priority facilities, CBP shall provide the following:

1.      Tender-Age Children (age 12 and under): CBP shall ensure all food service contracts provide meals appropriate for tender-age children that meet USDA nutritional guidelines and all other USDA-consistent nutritional standards adopted by CBP.

2.      Older Children/Adults (age 13 and over): CBP shall ensure all food service contracts provide meals for older children and adults that meet USDA nutritional guidelines and all other USDA-consistent nutritional standards adopted by CBP.

3.      Special considerations: CBP recognizes individuals in its custody are from various countries with diverse food preferences, dietary restrictions, and nutrition habits. While it is not feasible or medically necessary to tailor food sources to individual preferences, CBP shall use its best efforts to accommodate class members' dietary

restrictions and preferences, as appropriate.

**5.     Temperature and Warmth**

   **A.     Temperature**

   1.     CBP shall maintain a temperature range inside facilities in RGV and El Paso Sector of no less than 69° Fahrenheit and no more than 83° Fahrenheit.  Although this is an acceptable range, the target temperature shall not be at either the high or the low end of the accepted range but instead a temperature that is considered generally comfortable.

   2.     All facilities shall closely monitor and record the ambient temperature by use of digital displays (where installed) or by the use of a temperature reading device.  All facilities shall have a functional device available to ensure close monitoring of the temperature in all pods/cells where class members are held.  Agents shall be responsible for monitoring and maintaining the ambient temperature of the facility within the appropriate temperature range and recording the temperature in the appropriate electronic systems of record at appropriate intervals no less than twice a day.

   3.     When conducting site visits, the JCO shall confirm that the temperature of all hold rooms where class members are present is within the appropriate temperature range.  The JCO shall also confirm that agents record whether the temperature is within range in the appropriate systems of record.  This will serve as an additional level of oversight to ensure temperature is maintained within the appropriate range and properly recorded.

   **B.     Garments**

   1.     Facilities shall maintain a stock of clothing in a variety of sizes that can be distributed to class members.  Basic clothing includes sweatpants, t-shirts, underwear, and socks.  External clothing for additional warmth may include garments such as sweatshirts, beanies, sweatshirts, jackets, or other types of garments that provide an extra layer of warmth that is age-appropriate.  Each facility will make a determination of which type of garment(s) would be the most cost effective and operationally feasible to maintain in stock.  CBP shall ensure blankets are available for class members in custody.  CBP shall provide cloth swaddling blankets for infants and children under age 2.

   2.     Class members shall be provided clean, dry clothing if their clothing is wet or soiled.

   3.     Class members in possession of warm clothing at the time of apprehension shall generally retain possession of such items while in custody unless such items pose a health or safety threat.

   4.     When warm clothing in a class member's possession at the time of apprehension is required to be laundered or discarded for purposes of health or sanitation concerns, replacement garments shall be made available to the class member.

   5.     Beanies shall be available in a variety of sizes for class members less than five years of age.

   6.     Additional blankets shall be available upon the request of the class member, his/her parent, or other accompanying family member.

   7.     The JCO shall verify that facilities have a stock of garments during site visits.

6.      **Sleep**

1.      CBP shall make all reasonable efforts to provide class members with sufficient space, as well as a mat and blanket, during sleep hours.  Sleep hours can vary, but will typically be defined as the hours from 2200 to 0600.

2.      Class members shall be provided blankets or extra clothing for adequate warmth upon request or upon expressing general discomfort from cold, or when observed shivering or huddling for warmth.  See section VII.5, on Temperature and Warmth for a list of external clothing and details about supplies.

3.      If there are no safety concerns and it is not physically impracticable to do so, CBP shall make reasonable efforts to dim the lights between 2200 and 0600.  CBP shall only dim the lights if the dimming of the lights can be accomplished in a manner that will not compromise safety of any persons being housed or working in the facility and it is not physically impracticable in existing structures.  "Dimming" can include turning off sections of lighting in the cells or pods.  The facilities will maintain sufficient light at all times to enable agents, security officers, and caregivers to properly monitor all individuals in custody.

4.      CBP shall make reasonable efforts to minimize noise and disruptions between 2200 and 0600.

5.      In juvenile priority facilities, clocks shall be placed in locations visible from each pod/cell, unless there is no available space to place a clock.

7.      **Hygiene and Sanitation**

1.      Hygiene kits shall be available to class members upon request, and will be provided to each class member when showers are offered.  The hygiene items offered shall include appropriate soap for hair and body, toothbrushes/toothpaste, and towels for showering.

2.      CBP shall provide a shower to each class member as soon as possible following the class member's arrival to a juvenile priority facility, and shall offer additional showers at 48-hour intervals thereafter.

3.      Toothbrushes and toothpaste shall be provided to class members daily, and also available upon request.  Parents and other accompanying adult family members shall be responsible for the dental hygiene of their child when the child is part of a family group or unit.

4.      In juvenile priority facilities where caregivers are available, caregivers shall assist unaccompanied class members in their hygiene routines, as needed.

5.      In juvenile priority facilities where caregivers are available, caregivers shall assist family groups or units as needed in their hygiene routines, to include caring for minor children while parents or other adult family members shower.

6.      In CBP facilities where laundry facilities are available or laundry services are contracted, soiled clothing shall be laundered to the extent operationally practicable.  If laundry facilities/services are not available, clean clothing shall be available to replace soiled clothing, to include cloth swaddling blankets, sweatpants, t-shirts, socks, and underwear.

7.      In juvenile priority locations where space is available, infant changing stations shall be maintained.  In all locations, diapers in a variety of sizes and baby wipes shall be accessible.

8.      All class members shall have access to functioning toilets and sinks, toilet paper, soap and/or hand sanitizer, and feminine hygiene products at all times.  Janitorial and portable toilet contractors shall maintain toilets and hand washing stations to ensure adequate supplies of toilet paper and soap are provided. Class members shall have a mechanism or means to dry their hands.

9.      Adequate space shall be made available for the storage of hygiene supplies identified within this section.  These items should be adequately stored for either immediate use or long-term storage in the event of a surge.  Temperature, humidity, and accessibility of the storage area should also be taken into account to determine an adequate storage location.

10.     During site visits, the JCO shall confirm availability of hygiene supplies in conformance with TEDS and guidelines established in this Agreement.

## 8.      Child-Appropriate Environment

### A.      In General

CBP shall treat all class members in custody with dignity, respect and special concern for their particular vulnerability as minors and place each class member in the least restrictive setting appropriate to the class member's age and special needs.

### B.      Family Unity

1. Absent an articulable operational reason, class members apprehended with adult family members (including non-parents or legal guardians) shall remain with that family member during their time in CBP custody, in accordance with TEDS, as well as the requirements of the TVPRA.

2.      Non-parent or legal guardian family members may include adult siblings, grandparents, cousins, aunts, uncles, great-aunts, or great-uncles.

3.      When there is an operational need to house family members separately, CBP shall make and record the reasons for holding them apart and all reasonable efforts to ensure that the family members have the opportunity to interact.  Agents shall inform class members of all ages that, if they are housed separately from a family member, they can ask agents, guards, or caregivers to interact with that family member.  "Family member" includes both parents/legal guardians and non-parents/legal guardians that were traveling with a class member of any age. This information will be provided orally and via the poster attached as Exhibit 1.

4.      CBP shall take into account a class member's age and special needs in determining whether it is appropriate to house a class member separately from his or her family member.

5.      Each facility may hold family members in a different manner based on different demographics and the capabilities of the facilities. For instance, in some facilities, it may be necessary to house all teenage boys together, regardless of whether they entered with a family member.  In other facilities, it may be possible to hold a teenage boy with his accompanying family member.  In all cases, efforts shall be made at each facility to ensure interaction between family members.  These efforts can include having a common area with benches for visiting throughout the day, sharing meals together in a common area or participating in recreational time together.

6.      Orientation training for security guards and caregivers shall inform the caregivers and security  guards that class members are able to ask for and shall, barring

exceptional circumstances, have contact and interaction with family members housed in the same facility.

7.      CBP shall notify HHS/ORR when there are unaccompanied class members who are related and in need of placement, in an attempt to ensure that class members are jointly placed in an ORR facility or in facilities that are in close proximity, to allow for family interaction.

8.      CBP shall make all reasonable efforts to provide unaccompanied class members daily access to a phone in order to permit contact with family members.

## C.      Special Considerations

1.      In juvenile priority facilities where facility capabilities and operational and safety needs allow, such as CPCs and soft-sided facilities, CBP shall make reasonable efforts to have televisions made available in pods where class members are routinely housed.  Televisions will only be made available if the facility can accommodate the televisions while also ensuring that they can be secured in a location that minimizes damage to the televisions or possible injury to the persons in the facility.

2.      Juvenile priority facilities shall make an effort to have available age-appropriate toys/activities.  Such toys and activities shall not pose a health risk or security risk to any persons in the facility.

3.      In juvenile priority facilities where space and custody levels allow, such as CPCs and soft-sided facilities, CBP shall make efforts to provide child appropriate "furniture" in areas that are holding tender age children.  This can include items such as plastic tables or benches that cannot be easily disassembled or cause a health/safety risk. The child appropriate furniture shall not be required at Border Patrol stations where these types of accommodations are not operationally feasible.

4.      In juvenile priority facilities, CBP shall provide unaccompanied class members with at least one daily message (in person or video) providing reassurance of their safety and orienting them to date, time, location, and general process/disposition/ expectations.

## 9.      Caregivers

### A.  General Provisions

1.      Caregivers are a critical component of CBP's efforts to meet the unique needs and vulnerabilities of class members in custody, and to provide a safe and secure environment for class members.

2.      All juvenile priority facilities shall utilize caregivers.   Caregivers shall meet all required background checks and have sufficient experience and training to provide general support to class members in custody.

3.      Caregiver services shall be available on a 24/7 basis, to include weekends and federal holidays, at juvenile priority facilities.

4.      Caregivers shall provide a mixed gender staff to include at least one male and one female staff member at all times.  A supervisor shall be available at all times.

5.      Nothing in this section precludes CBP from implementing additional qualifications or training or from setting additional responsibilities or hiring individuals with additional expertise.

### B. Orientation

In addition to the general requirements outlined above, CBP shall provide caregivers with an orientation that includes information on monitoring in CBP holding facilities, as well as the caregiver's role in observing and reporting inappropriate behavior, detainee health conditions, and the recognition and referral of those detainees displaying emotional and mental distress.  Training will include but not be limited to Prison Rape Elimination Act (PREA) compliance, *Flores* compliance, and compliance with TEDS.[3]

### C.    Responsibilities

1.    Caregivers shall support general care to infants and children up to age 5 in custody.

2.    Caregivers shall coordinate the collection and bagging of dirty laundry.

3.    Caregivers shall issue and collect shower/hygiene supplies.

4.    Caregivers shall monitor (i.e., maintain visual contact) at all times all class members going into and out of showers, from start to finish, taking care to adhere to DHS regulations implementing the PREA.

5.    Caregivers shall assist in bathing class members, as appropriate.

6.    Caregivers shall be responsible for storing clothing and issuing it to class members while the class members' clothing is being washed.

7.    Caregivers shall maintain a safe working environment, observing and encouraging adherence to safety rules and health guidelines.

8.    Caregivers shall maintain inventory of the clothing, towels for showering, and hygiene kits available for use and notify CBP staff of any low inventories, in order to initiate procurement actions.

9.    Caregivers shall refer any suspected or reported medical or mental health issues to USBP personnel or medical personnel onsite.

### D.    Additional Caregiver Support

1.    CBP is committed to continuing to enhance and expand caregiver services to continue to meet the unique needs and vulnerabilities of class members

2.    CBP will make best efforts to hire, contract for, or provide additional caregivers or other individuals sufficient to provide additional support for class members in custody, including:

   a.   Assisting class members in communicating and interacting with family members that may be held in a separate cell or pod.
   b.   Assisting with the general care of class members, to include monitoring, changing diapers, assisting with toilet use and hand-washing, feeding when a child is not able to feed him or herself, and identifying and tending to other similar basic needs of class members as they arise.
   c.   Providing supervision and support to class members during recreational and exercise activities.  These types of activities may include age appropriate activities such as reading, art, or general play.
   d.   Assisting with distribution of meals delivered to the facility, as needed.

3.    As part of the of hiring or contracting efforts described in paragraph 1, CBP shall make best efforts to provide caregiver staffing sufficient to:

---

[3] https://www.cbp.gov/document/directives/cbp-national-standards-transport-escort-detention-and-search

a. Provide at least one caregiver for each holding pod or cell in which class members are being held in CPC or soft-sided juvenile priority facilities. For pods holding family units, the caregivers can be re-assigned if needed to supplement an emergent need to provide for special needs and tender age children.
Provide enough additional caregivers in place to assist with showers, meals, recreation time and other responsibilities without depleting the pod staffing. The additional caregivers do not need to be available during hours in which these activities are not typically provided. c. Provide additional staff during times of surges of class members, as requested by CBP.

## VIII. EXTENDED TIME IN CUSTODY

If a situation occurs in which a class member remains in CBP custody for longer than 72 hours, CBP shall take prompt additional steps to ensure that conditions remain safe and sanitary, as appropriate based on the length of time a class member remains in custody.

Additionally, CBP shall:
1. Provide a supplemental health interview to all class members every 5 days;
2. Conduct enhanced medical monitoring on class members, as appropriate, as outlined in Section I.D. of the attached Medical Annex;
3. Continue to offer showers to class members every 48 hours;
4. Continue to provide toothbrushes and toothpaste to class members daily and upon request, as well as hygiene kits at the time showers are provided;
5. Continue to provide class members access to clean and dry clothes;
6. Continue to provide class members with adequate food and clean drinking water. CBP shall make reasonable efforts to provide additional variety in the meals available to class members who remain in custody for more than 72 hours;
7. In juvenile priority facilities, provide opportunities for recreation and other child-appropriate activities daily. CBP shall make all reasonable efforts to provide class members with outdoor recreation.
8. Continue to provide mats and blankets during hours of sleep, as well as continue to make reasonable efforts to dim the lights in CBP facilities during hours of sleep.

## IX. JUVENILE CARE MONITOR

1. The Parties agree to request that a Juvenile Care Monitor who is agreed to by the parties shall be given authority by the Court to monitor compliance in the RGV and El Paso Sectors with the Settlement as detailed in this Agreement. The Juvenile Care Monitor shall be entitled to reimbursement of reasonable fees and expenses. These fees and expenses will be subject to a cap of $280,000 annually. On a monthly basis, the Juvenile Care Monitor shall provide CBP with a detailed record of hours billed and expenses incurred in the preceding month. If CBP disputes a bill from the Juvenile Care Monitor it shall have 15 days to review and submit objections to the Juvenile Care Monitor or to request additional documentation from the Juvenile Care Monitor. If any dispute over the Juvenile Care Monitor's bill is not resolved within 30 days then CBP will submit the dispute to the Court for resolution.
2. The Juvenile Care Monitor will, subject to an appropriate confidentiality agreement, have access to CBP documents and records, may conduct announced and

17

unannounced visits to U.S. Border Patrol facilities in the RGV and El Paso Sectors, may conduct interviews with class members and accompanying adult family members, and may conduct interviews with CBP employees and the employees of its contractors. The Juvenile Care Monitor will prepare and provide the Special Master/Independent Monitor (for the duration of her term) and the Parties with quarterly reports.  The Juvenile Care Monitor will file these reports with the Court. If these reports are deemed confidential by the Special Master/Independent Monitor, the Juvenile Care Monitor, or either Party, they shall be filed under seal with the Court.  Each report shall be accompanied by a summary that will be filed on the public docket. Either Party may file objections to or comments to the reports. Any objections or comments regarding confidential matters shall be filed under seal. The Juvenile Care Monitor will prepare a monitoring protocol which will be adhered to by the Juvenile Care Monitor and all Parties.

       3.      The Juvenile Care Monitor may designate qualified medical professionals to assist in his or her monitoring functions. The Juvenile Care Monitor may also identify proposed aides unaffiliated with CBP or with Plaintiffs and, through the Special Master/Independent Monitor, seek Court approval (or, after the expiration of the Special Master/Independent Monitor's term, directly from the Court) for the hiring of such aides and medical professionals to assist the Juvenile Care Monitor in all aspects of his or her monitoring work. Both Parties must agree to any proposed aides or medical professionals. Such aides or medical professionals, acting under the supervision of the Juvenile Care Monitor, may inspect CBP facilities and records, and interview CBP employees, regarding compliance with this Agreement. These aids and/or medical professionals will be paid for their services, and these payments will be subject to the annual cap designated above in Paragraph 1 of this Section.

       4.      The Juvenile Care Monitor will promptly notify CBP and Defendants' Counsel of any observed failure to substantially comply with this Agreement or the Settlement within the RGV or El Paso Sectors and, if the situation is not timely remedied, promptly notify the Special Master/Independent Monitor (for the duration of her term), the CBP Juvenile Coordinator, and Class and Defendants' Counsel of any observed failure to substantially comply with this Agreement. The Juvenile Care Monitor may inform the Independent Monitor/Special Master and Class Counsel of any site visits or other steps taken to monitor compliance with this Agreement.

       5.      The Juvenile Care Monitor shall be responsible for monitoring overcrowding, in addition to monitoring compliance with all terms of this Agreement.  Overcrowding is defined as a level of occupancy that exceeds the physical space required to maintain a safe and sanitary environment for each individual in custody.

      (i) CBP shall provide the Juvenile Care Monitor with the information he or she determines, in consultation with CBP, is necessary to assess the potential for or actual overcrowding in juvenile priority facilities.  This information shall include occupancy data for all pods and cells in CBP facilities in the RGV and El Paso Sectors; demographic data regarding class members in CBP custody; data regarding the time that class members spend in CBP custody; and data regarding the size of available holding areas.

      (ii) The Juvenile Care Monitor may notify Class Counsel if capacity in CBP facilities holding class members in the RGV or El Paso sectors reaches 90% or more for a period of more than 72 hours.

      (iii) During any periods of overcrowding, CBP shall make all efforts to continue to comply with all provisions of this Agreement.  To the extent that full compliance is

not possible, CBP shall take all necessary steps to mitigate any non-compliance and comply with this Agreement to the extent possible, including, but not limited to, seeking assistance from all appropriate federal and other partners and activating any appropriate internal emergency plans.

7.      The Juvenile Care Monitor may inspect CBP facilities in the RGV and El Paso Sectors manner discussed above, and may also request data from CBP, in order to determine whether CBP is in compliance with the terms of this Agreement, including whether there is overcrowding at CBP juvenile priority facilities, as defined in paragraph 4. When conducting inspections of non-priority facilities, such visits shall be solely for the purpose of determining whether the facility is prepared to hold class members in compliance with this Agreement.

8.      The Juvenile Care Monitor may, in his or her discretion, provide Class Counsel with documents or information provided by Defendants, to the extent that he or she determines that such sharing would facilitate the performance of his or her duties in monitoring compliance with the terms of this Agreement, including monitoring whether there is overcrowding at CBP juvenile priority facilities in RGV and El Paso Sectors, as defined in paragraph 4.

9.      If, in the course of his or her monitoring duties under this Agreement, the Juvenile Care Monitor identifies any concerns or issues related to a suspected failure to substantially comply with the Settlement in any Sector outside of RGV or El Paso, the Juvenile Care Monitor may notify the CBP Juvenile Coordinator and the CBP Chief Medical Officer in writing. The Juvenile Coordinator's Office and/or the CBP Chief Medical Officer, as appropriate, will review the concerns with the Juvenile Care Monitor. The Juvenile Care Monitor also may request to be permitted to conduct further review of the concerns, and CBP may, at its discretion, approve such a request. CBP may also request that the Juvenile Care Monitor provide a recommendation following any such review.

10.     The Juvenile Care Monitor shall be appointed to a single term of sixteen months from the date of appointment by the Court. The Juvenile Care Monitor's fifth and final quarterly report shall be submitted fourteen months after appointment by the Court. Within 30 days of receiving this final report, the Parties shall meet and confer regarding whether the Juvenile Care Monitor's term shall be extended.  If no agreement is reached, Plaintiffs may petition the Court for a single extension of the Monitor's term.  Such an extension request must be accompanied by the specific instances of non-compliance that Plaintiffs believe justify the extension.  Plaintiffs bear the burden of proving non-compliance.

11.     In the event that the Juvenile Care Monitor is unable to perform his or her duties, the Parties shall meet and confer regarding the appointment of an appropriate individual to replace the Juvenile Care Monitor.  During the meet and confer, the Parties will each recommend two individuals to replace the Juvenile Care Monitor.  Following the meet and confer, the Parties will, through the Special Master/Independent Monitor, seek Court approval of such individual (or, after the expiration of the Special Master/Independent Monitor's term, directly from the Court).  The Parties may seek the assistance of the Special Master/Independent Monitor for the duration of her term.

12.     CBP shall provide the Juvenile Care Monitor with all monitoring protocols, including medical monitoring protocols and protocols developed by the JCO.  The Juvenile Care Monitor may review those protocols and advise Defendant on any enhancements or further refinement.  Prior to the effective transition of monitoring functions, the Juvenile Care Monitor shall approve Defendant's final monitoring protocols.  The JCO and the CBP

Chief Medical Office shall rely on such approved monitoring protocols, but retain discretion to update and amend such monitoring protocols, as appropriate.

13.      At the completion of the Juvenile Care Monitor's term, CBP shall assume responsibility for monitoring compliance with the terms of this Agreement, including monitoring whether there is overcrowding, as defined in paragraph 4, above.  For a period of thirty days after the Juvenile Care Monitor's term ends, the Juvenile Care Monitor will work with the CBP Juvenile Coordinator to ensure an effective transition of monitoring functions, and will be compensated for this work.

## X.      PLAINTIFFS' ATTOREY-CLIENT VISITS

In accordance with Paragraph 32A of the Settlement, Plaintiffs may continue to conduct attorney-client visits at CBP facilities in the RGV and El Paso Sectors.  Plaintiffs shall provide at least fourteen (14) days' notice of any intended attorney-client visits under Paragraph 32A, and such notice shall include the names of all attorneys who will be conducting such visits, as well as any identifying information requested by CBP for purposes of conducting background checks and vetting.  Plaintiffs shall not add additional names of attorneys following this initial submission.  If, following any such visits, Plaintiffs identify any allegations of a breach of this Agreement or of the Settlement in CBP facilities in the RGV or El Paso Sectors, Plaintiffs shall submit those allegations to Defendant in accordance with section XII.

## XI.      NOTICE TO CLASS MEMBERS

Class members shall be made aware of the availability of items included in this Agreement by a poster in English and Spanish attached as Exhibit 1, which will be posted in all CBP facilities where class members are detained in the RGV and El Paso Sectors in locations within proximity to class members so they can see and read the poster. Class members age 14 or over and all accompanying adult family members of class members under the age of 14 shall also be informed of their rights under this Agreement orally and by video, as set forth in Exhibit 3 attached, and provided an I-770 in English and Spanish.  If the minor or accompanying adult family member do not read or speak in the Spanish language, the I-770 shall be read to them in their native language. CBP shall provide a copy of a list of free legal services to all class members. CBP shall provide Class Counsel any amended or updated list of free legal services within thirty (30) days after any amendment to the list. Class counsel may provide CBP, through Defendants' counsel, with additional available free legal service programs to be included in the list of free legal services.

## XII.      ORIENTATION FOR CBP EMPLOYEES AND CONTRACTORS

All CBP employees and contractors who are required to perform their duties consistent with this Agreement shall be provided a copy of the summary of this Agreement attached as Exhibit 4, and shall receive an orientation regarding the requirements of this Agreement. The distribution of the summaries and provision of orientation shall be recorded in a manner that permits the Juvenile Care Monitor to monitor compliance with this Section.

## XIII.   DISPUTE RESOLUTION

1.       If Class Counsel believes that Defendant has breached this Agreement, Class Counsel shall, within thirty (30) days of learning of the event giving rise to the belief, provide CBP (through Defendant's counsel) with written notice of the specific facts that they believe constitute a breach of the Agreement.  Class Counsel shall also provide a copy of the notice of breach to the Juvenile Care Monitor and the Special Master/Independent Monitor during the pendency of their terms.  Plaintiffs may not submit any notice of breach more than one-year after the event that forms the basis for the allegation of breach.

2.       When presenting an allegation of breach to Defendant, Class Counsel shall make their best efforts to indicate the time, date, location, and the specific factual circumstances forming the basis for the alleged breach, , as well as the names and A-numbers (or other equivalent identifying information) of all class members whose claims serve as a basis for the allegations.  Mere citations to the Agreement or generalized statements of harm will not be sufficient.

3.       During the pendency of the terms of the Juvenile Care Monitor and the Special Master/Independent Monitor, Defendant will have fifteen (15) days to respond to the allegations, and shall provide their written response to Class Counsel, the Juvenile Care Monitor, and the Special Master/Independent Monitor.  After Defendant provides a response, the Parties will meet and confer in an effort to resolve the allegations, with the participation of the Juvenile Care Monitor and the Special Master/Independent Monitor.  If the Parties cannot resolve the allegations, Class Counsel may, in accordance with the Local Rules for the Central District of California and the Federal Rules of Civil Procedure, submit their allegation(s) of breach to the Court for resolution.

4.       Following the expiration of the terms of the Juvenile Care Monitor and the Special Master/Independent Monitor, the CBP Juvenile Coordinator shall review and respond to allegations of breach through monitoring as described in section IX and/or directing allegations to the appropriate oversight entity within CBP.  This review shall commence within seven (7) days of receiving the allegation of breach.  Within thirty (30) days of receiving the allegations of a breach, Defendant shall provide a response to Plaintiffs. The parties shall meet and confer in an attempt to resolve the allegations.  The parties may, upon mutual consent, request that a mediator be appointed by the Court to oversee these discussions.  If the Parties cannot resolve the allegations, Class Counsel may submit the allegation of breach to the Court for resolution.  Class Counsel must provide the Court with the specific reasons that they believe Defendant is in breach of the Agreement.

4.       If Plaintiffs have a good faith belief that one or more class members may suffer immediate irreparable harm if the alleged violation of this Agreement is addressed in the time frame set forth above, the Parties agree that Class Counsel may seek immediate relief from the Court, following a meet and confer as required by the Local Rules of the Central District of California.

**Special Considerations: Annex I**

**IA. Care for Class Members**
**IB. Behavioral Health**
**IC. Medical Notification**
**ID. Enhanced Medical Monitoring**
**IE. Medication Review**
**IF. Medical Quality Management**
**IG. Public Health/Infectious Disease Management**
**IH. Medical Documentation, Communication, and Continuity of Care**
**III. Surge and Crisis-Level Medical Support**
**IJ. Medical Monitoring and Compliance**

## CBP Medical Support

**IA. Care for Class Members:**
- CBP recognizes the unique challenges of providing medical support to juveniles in custody.
- Medical support for juveniles is an integral element of CBP medical support efforts and is integral to the overarching CBP medical support construct.
- CBP will continue to consult broadly with a number of internal and external pediatric subject matter experts, including U.S.-government pediatric experts.
- CBP contracted medical support personnel shall be trained, licensed, and credentialed to provide assessment and treatment for the population in custody, to include class members.
- CBP has engaged board-certified Pediatricians to serve as contracted Pediatric Advisors to enhance CBP medical support for juveniles in custody. Pediatric Advisors will be assigned regionally based on operational risk management considerations described in the Agreement.  Pediatric Advisors' roles/responsibilities include:
  - Advise on ongoing medical protocol development and refinement for class members in CBP custody.
  - Provide consultation support to medical staff for complex juvenile medical cases.
  - Develop and conduct juvenile focused in-service training and ongoing professional development for medical staff.
  - Contribute to Medical Quality Management (MQM) efforts through juvenile chart review and Ongoing Professional Practice Evaluation.
  - Monitor juvenile referral practices and patterns and coordinate with medical providers and local health system to optimize juvenile referral practices.
    - Work with CBP, contract medical teams, and local health system to establish primary referral sites with pediatric expertise.

**IB.  Behavioral Health:**
- CBP recognizes the potential for behavioral health issues for persons in custody, particularly for potentially vulnerable populations such as class members. CBP also recognizes that class members may have experienced trauma in their home country and on their journey, and that time in custody can be destabilizing and disorienting.

- Recognizing and addressing behavioral health issues and providing trauma-informed care is integral to the overarching CBP medical support construct.
- Health intake interviews and medical assessments include recognition of potential behavioral health issues.
- CBP's approach emphasizes psychological triage and psychological first aid with reliance on referral to local health system for behavioral health issues.
- CBP will make all reasonable efforts to expedite transfer of class members with behavioral health issues to ICE or HHS ORR, as appropriate, for enhanced behavioral health support, and will document those efforts.
- CBP has engaged credential Behavioral Health clinicians to serve as Behavioral Health Advisors to support CBP behavioral health efforts. These Behavioral Health Advisors will be assigned regionally based on operational risk management considerations described in the Agreement.  Behavioral Health Advisors' roles/responsibilities include:
  - Advise on ongoing behavioral health protocol development and refinement.
  - Provide consultation support to medical staff for complex behavioral health cases.
  - Develop and conduct behavioral health focused in-service training and ongoing professional development for medical staff.
  - Contribute to MQM efforts through behavioral health chart review and Ongoing Professional Practice Evaluation.
  - Monitor behavioral health referral practices and patterns and coordinate with contract medical providers and local health system to optimize behavioral health referral practices.
  - Work with CBP, contract medical teams, and local health system to establish primary referral sites with appropriate behavioral health expertise.
- CBP shall make efforts to foster reassurance, resilience, orientation, recreation, and distraction for class members in custody.

## IC. Medical Notification
- CBP's approach to identification and notification of medical issues is based on a multi-pronged, layered approach, with no single point of failure:
  - Agents shall inform individuals in custody that they have a right to medical treatment, and shall inform and encourage individuals in custody to self-refer or to refer family members or companions for medical care.  This information shall be provided orally and via the poster attached as Exhibit 1.
  - Agents in the field will recognize and respond to urgent medical issues requiring activation of 911/EMS or transport to local health system.
  - CBP juvenile priority facilities will have 24/7 access to contracted onsite medical support.
  - Contracted caretakers shall receive an orientation informing them that they should refer class members with medical concerns.
  - Contracted security guards shall receive an orientation informing them that they should refer class members with medical concerns.
  - Agents shall refer class members with medical concerns to contracted medical personnel or the local health system, as appropriate, and shall conduct regular 'welfare checks' to include observation for medical concerns.

23

o   Medical personnel shall maintain visibility on medical issues within the class
member population and be prepared to engage those in custody with medical
issues, as appropriate.
o   CBP shall conduct Enhanced Medical Monitoring (detailed below) on
persons identified as having medical issues of concern.

**ID. Enhanced Medical Monitoring:**

- At medical priority CBP facilities with contracted medical support, CBP shall conduct enhanced medical monitoring of persons in custody identified with significant medical issues or concerns, with an emphasis on potentially vulnerable populations such as class members.
- The timing and scope of the enhanced medical monitoring shall be tailored to the individual clinical situation or circumstance.
- Enhanced medical monitoring shall consist of, at a minimum, symptom check and temperature check (plus additional vital signs as appropriate) by medical personnel.
- Enhanced medical monitoring shall occur, at a minimum, every 4 hours.
- Enhanced medical monitoring shall include a determination of the appropriate disposition after referral or discharge from local health system.
- Enhanced medical monitoring shall include a process to track persons subject to enhanced medical monitoring and turnover between shifts or rotation of providers.
- Enhanced medical monitoring shall be documented appropriately.
- Enhanced medical monitoring shall identify class members whose condition is deteriorating or who are not making expected progress, and prompt notification will be made to pediatric advisors or to the local health system, as appropriate.

**IE. Medication Review:**

- CBP places a priority on ensuring availability of safe access to appropriate medication for persons in custody.
- Upon initial processing or upon health intake interview, class members will be assessed for current or unmet medication needs.
- If a class member has medication with him or her, it will be assessed to determine validity, currency, and appropriateness. If the medication is deemed to be appropriate, it may be dispensed in a controlled manner. If there is any question about the appropriateness of the medication, the class member will be evaluated by medical personnel onsite or referred to the local health system as expeditiously as possible to evaluate medication requirements.
- If medication is required, a prescription will be obtained from onsite medical personnel or from the local health system and filled.
- Medications shall be held by CBP (for safety and security reasons) while a class member is in custody and dispensed in a controlled manner consistent with prescription instructions.
- Class members shall be provided a supply of medication or a prescription upon transfer or release, as appropriate, and instructions regarding use of the medication.

**IF. Medical Quality Management (MQM):**

- CBP shall utilize a robust and responsive MQM program, which shall include:

- o Internal controls/review – Contractor personnel conduct and review MQM efforts.
- o External controls/review
  - CBP Chief Medical Officer provides CBP medical direction and oversight of MQM efforts.
  - CBP Chief Medical Officer coordinates with DHS Office of the Chief Human Capital Officer for support to MQM efforts.
  - CBP Juvenile Coordinator works with the CBP Chief Medical Officer to include medical support efforts in ongoing review activities.
  - Court-approved Juvenile Care Monitor.
- o MQM elements:
  - Licensing and Credentials Review
  - Focused Professional Practice Evaluation (FPPE)
  - Ongoing Professional Practice Evaluation (OPPE)
  - Chart reviews
  - Inservice reviews
  - Sentinel Event reviews
- o Physician Supervisors – CBP Physician Supervisors will play an integral role in the CBP MQM program through ongoing chart review, FPPE, OPPE, sentinel event review, and inservice programs.
- o Pediatric Advisors – CBP Pediatric Advisors will play an integral role in the CBP MQM program, with a focus on care for juveniles, through ongoing chart review, FPPE, OPPE, sentinel event review, and inservice programs.
- o Behavioral Health Advisors – CBP Behavioral Health Advisors will play an integral role in the CBP MQM program, with a focus on behavioral health, through ongoing chart review, FPPE, OPPE, sentinel event review, and inservice programs.
- o Patient Safety/Quality Managers – CBP will engage contracted professional Patient Safety/Quality Managers to administer the MQM program and provide coordination and documentation of MQM program efforts.
- • CBP shall continue to expand and enhance the MQM program in concert with the expansion and enhancement of CBP medical support efforts.

## IG.  Public Health/Infectious Disease Management

- • CBP shall consult with partners and stakeholders, including DHS, HHS, CDC, and state and local health officials, as appropriate, to address public health/infectious disease issues in CBP facilities.
- • CBP shall develop and maintain protocols regarding public health/infectious disease events in CBP facilities, to include consideration of isolation/cohorting/quarantine considerations, with an emphasis on class members.
- • CBP will emphasize early identification and evaluation for public health/infectious disease issues in persons in custody, with an emphasis on class members.
- • Infectious disease cases will be assessed and treated onsite (where contracted medical support personnel are available) or referred to the local health system as appropriate.
- • CBP has limited isolation/quarantine capacity, but will address isolation/cohorting/quarantine requirements for class members, as appropriate, in consultation with health officials, with an emphasis on especially vulnerable class members.

25

Class members in isolation/quarantine shall be provided a means to communicate with accompanying family members who are not isolated/quarantined with them at least twice a day, so long as such communication will not jeopardize the health or safety of the class member or their accompanying family member. While a class member and his/her accompanying relative are in CBP custody, CBP will make best efforts to allow an accompanying adult relative to remain with a class members who requires quarantine, if medically appropriate and operationally feasible.

## IH. Medical Documentation, Communication, and Continuity of Care

- CBP shall ensure appropriate documentation of medical information.
- CBP shall ensure documentation provided by the emergency room or hospital is shared with or transferred to appropriate parties as persons are transferred or released from custody.
- Where CBP has contracted medical support, as part of an Exit Health Interview, CBP will provide appropriate summary documentation of medical events which occurred within CBP custody to the patient or parent/legal guardian.
- CBP has recognized the potential operational and medical benefit of establishing an Electronic Health Record (EHR) and will establish EHR functionality as part of its expanded medical support efforts.
- CBP will work with established systems and contractors to develop initial EHR functionality.
- CBP shall adopt policies requiring that class members who receive medical treatment in CBP custody leave CBP custody with appropriate information regarding their medical condition and treatment while in CBP custody.

## IJ. Surge and Crisis-level Medical Support

- CBP will maintain contracted medical support capabilities at medical priority locations.
- For surge operations, CBP will utilize contracted surge medical support at critical locations.
- For crisis-level operations, CBP will:
  - o Utilize contracted surge medical support to the greatest extent possible.
  - o Utilize interagency surge medical teams at critical locations.
  - o Develop additional Requests for Assistance from DHS, HHS, and other U.S. government partners as appropriate.

## IK.  Medical Monitoring and Compliance

- The CBP Chief Medical Officer shall conduct medical direction and oversight of CBP medical support efforts
- The CBP Juvenile Coordinator shall work with the CBP Chief Medical Officer to incorporate medical monitoring and compliance into ongoing Juvenile Coordinator review efforts. The CBP Juvenile Coordinator will utilize site visits, checklists, interviews of CBP personnel, class member interviews, and relevant document review to monitor medical efforts.
- Representative examples of medical monitoring and compliance assessment may include:
  - o Data points: (including age and diagnosis/disposition as appropriate)

- ▪ Number of class members apprehended and in custody
- ▪ Number of class members with Health Intake Interview
- ▪ Number of class members with Medical Encounter
- ▪ Number of class members referred to local health system
- ▪ Number of class members admitted to hospital
- ▪ Number of class member deaths in custody
- o Observation and Document Review:
  - ▪ Presence of medical support on site
  - ▪ Health intake interviews, Medical Assessments, Medical Encounters being conducted
  - ▪ Medication reviews being conducted; medications provided
  - ▪ Enhanced medical monitoring being conducted
  - ▪ Medical documentation being conducted
- o Juvenile Coordinator Interview:
  - ▪ Perception of access to medical support
  - ▪ Perception of quality of medical support
  - ▪ Personal experience with medical support

# EXHIBIT 1



# EXHIBIT 2



DEPARTMENT OF HOMELAND SECURITY
U.S. Customs and Border Protection

## ALIEN INITIAL HEALTH INTERVIEW QUESTIONNAIRE

| ALIEN INFORMATION | |
|---|---|
| Alien's Name *(Last, First, MI)* | A-Number (if any) |

| Age | Date of Birth | Gender | Country of Citizenship |
|---|---|---|---|
| | | | |

| Agent/Officer Name *(Last, First, MI)* | Event Number |
|---|---|
| | |

| Agent/Officer: Are you able to communicate with the Alien?  ☐ Yes   ☐ No | Date Completed |
|---|---|

| ALIEN HEALTH BACKGROUND | | | |
|---|---|---|---|
| | **ALIEN RESPONSE** | | **AGENT/OFFICER OBSERVATION** |
| | Yes | No | Additional detail as appropriate |
| 1. Do you have a history of or current medical or mental health issues? | ☐ | ☐ | |
| 2. Are you taking any prescription medications? If yes, do you have it with you? | ☐ | ☐ | |
| 3. Do you have any allergies? (e.g. food, medicine) | ☐ | ☐ | |
| 4. Are you a drug user? | ☐ | ☐ | |
| **FEMALES ONLY** | | | |
| 5. Are you pregnant?  If yes, how many months? | ☐ | ☐ | |
| 6. Are you nursing? | ☐ | ☐ | |

| ALIEN HEALTH INTERVIEW | | | |
|---|---|---|---|
| If answered or observed "Yes" to any of the health interview questions below, then refer for a medical assessment. | **ALIEN RESPONSE** | | **AGENT/OFFICER OBSERVATION** |
| | Yes | No | Additional detail as appropriate |
| 7.  Are you currently ill or injured or do you have significant pain? | ☐ | ☐ | |
| 8.  Do you have a skin rash? | ☐ | ☐ | |
| 9.  Do you have a contagious disease? | ☐ | ☐ | |
| 10. Are you thinking about hurting yourself or others? | ☐ | ☐ | |
| 11. Do you feel feverish or do you feel that you have a fever? | ☐ | ☐ | |
| 12. Do you have a cough or difficulty breathing? | ☐ | ☐ | |
| 13. Do you have nausea, vomiting, or diarrhea? | ☐ | ☐ | |

| ADDITIONAL AGENT/OFFICER OBSERVATIONS |
|---|
| Are there any other observations or concerns? Examples are: disorientation, bruising/bleeding, yellow eyes/skin, environment-related illness (heat stroke, hypothermia, severe dehydration) |

| MEDICAL ASSESSMENT REFERRAL |
|---|
| Was the alien referred for a Medical Assessment?  ☐ Yes   ☐ No |

# EXHIBIT 3

EXHIBIT 3
FLORES V. GARLAND CBP NOTICE OF RIGHTS RE AGREEMENT OF _____ [DATE]

Instruction to USBP personnel: The notice below shall be read and conveyed by video to all class members (or, if under the age of 14 or otherwise unable to understand the notice, their accompanying adult family member) in Spanish. If the class member or accompanying adult family member speak a language other than Spanish, this notice shall be read to them in their native language. Personnel shall record that this notice was provided orally.

> You are in the custody of U.S. Border Patrol in the El Paso or Rio Grande Valley Sector. While in this facility, you may ask the Agents, security guards or the caregivers for extra clothing, a blanket, a mat, snacks, juice, milk, drinking water, feminine hygiene products, soap, towels for showering, and a toothbrush and toothpaste, at any time.
>
> If you are traveling with a baby or toddler, you may ask for diapers, baby bottles and formula, baby food, a swaddling blanket, or a beanie/wool hat. Baby bottles should be used only one time. Every time you need to feed your child, you should use a new baby bottle.
>
> If you feel sick or need medical care, or if a member of your family needs medical care, please ask the Agents, the security guards, or a caregiver for help. If you want to see a family member who is in this facility but not in the same room as you, you may ask the Agents, a security guard or the caregivers in this facility to contact that family member.
>
> An Agent will be providing you with a list of legal organizations that may represent you for free or for a small fee. You may use the telephone to call a lawyer or other legal representative at any time prior to your departure from the facility at no cost.

/ / /

# EXHIBIT 4(a)

# Juvenile Priority Facilities – Supervisor/Team Lead Responsibilities

The following requirements apply to **_all minors_** in custody (both accompanied and unaccompanied).

The following items should be **PROVIDED**:
Personal Hygiene – Toothbrushes daily or when requested, Hygiene kits when showering
Showers as soon as possible following arrival, and at 48-hour intervals
Laundry services
Age-appropriate Meals
Mats and Blankets
Cloth swaddling blankets for infants and children under age 2
 Warm clothing, if clothes are being laundered or are soiled
Medical care, as appropriate
Dimmed lights and adequate space for sleep during the hours of 2200-0600, if safe to do so
Access to a daily phone call for unaccompanied children

The following items should be readily **AVAILABLE**:
Snacks, juice, clean drinking water, and cups
Functioning toilets and sinks/handwashing stations
Sanitary items (toilet paper, soap and/or hand sanitizer, feminine hygiene products)
Baby care items including diapers, wipes, bottles, formula, and food
Clean and dry clothing, such as sweatpants, t-shirts, underwear, socks
Additional clothing for warmth, such as sweatshirts, beanies, sweatshirts, jackets
Additional blankets, provided upon request
Infant changing tables, where space is available

Be sure the **ENVIRONMENT** is:
Clean and safe
Amenities including toilets, sinks, and water fountains are in working order
Child friendly with age-appropriate toys/activities/child appropriate furniture in place
An appropriate temperature, 69 – 83 degrees (monitor temperature with digital displays or temperature reading devices)
Reasonable efforts to minimize noise and disruptions between 2200 and 0600
Maintain family unity, in accordance with TEDS and the TVPRA
Caregivers available on a 24/7 basis

**LISTEN** to requests for:
Medical care
Food/snacks/water
Additional Clothing
Communication with family, consulate, or legal counsel (if one is retained)

**REPORT** to your supervisor:
Unsafe conditions

## Juvenile Priority Facilities – Supervisor/Team Lead Responsibilities

Inappropriate conduct
The need for more supplies
Medical issues or concerns

**DOCUMENT** in the detention module:
All medical care
All meals provided
Communication with family, consulate or legal support
Visits with family members also in the facility
Any items supplied to the minor ex: hygiene, clothing, baby supplies, etc.
Facility temperature (at least twice/day)

**If a child remains in custody for longer than 72 hours,** take the following additional steps:
Supplemental health interview every 5 days
Make reasonable efforts to provide additional variety in meals
Provide opportunities for recreation, including reasonable efforts to provide outdoor recreation

EXHIBIT 4(b)

# Juvenile Priority Facilities – POD/Holding Area Responsibilities

The following requirements apply to ***all minors*** in custody (both accompanied and unaccompanied).

The following items should be **PROVIDED**:
Personal Hygiene – Toothbrushes daily or when requested, Hygiene kits when showering
Meals
Mats and Blankets
Clean and Dry Clothing
Additional clothing for warmth

The following items should be readily **AVAILABLE**:
Snacks, juice, clean drinking water
Sanitary items
Baby care items such as diapers, wipes, bottles, formula, and food

Be sure the **ENVIRONMENT** is:
Clean and Safe
Amenities including toilets, sinks, and water fountains are in working order
Child friendly with age-appropriate toys/activities in place
An appropriate temperature, 69 – 83 degrees

**LISTEN** to requests for:
Medical care
Food/snacks/water
Additional Clothing
Communication with family, consulate or legal support

**REPORT** to your supervisor:
Unsafe conditions
Inappropriate conduct
The need for more supplies
Medical Issues or concerns

**DOCUMENT** in the detention module:
All medical care
All meals provided
Communication with family, consulate or legal support
Visits with family members also in the facility
Any items supplied to the minor ex: hygiene, clothing, baby supplies, etc.

# EXHIBIT 4(c)

# Non-Priority Facilities – POD/Holding Area Responsibilities

The following requirements apply to ***all minors*** in custody (both accompanied and unaccompanied).

Non-priority facilities must have an **ADEQUATE** supply of the following:

Mats and blankets;
External garments, such as sweatshirts and jackets;
Undergarments and clothing, such as sweatpants, t-shirts, and underwear;
Diapers of varying sizes and baby wipes;
Potable water, cups as appropriate, meals, and snacks;
Hygiene products, to include soap and/or hand sanitizer, a mechanism for drying hands, toothbrushes, and toothpaste; and
Disposable bottles, baby formula, and baby/toddler food, cloth swaddling blankets and beanies.

**TRANSPORT** class members to a Priority Facility within **24 hours** or in exigent circumstances no more than **48 hours** of arrival to a non-priority facility.

Be sure the **ENVIRONMENT** is:
Clean and Safe
Amenities including toilets, sinks, and water fountains are in working order
An appropriate temperature, 69 – 83 degrees

**LISTEN** to requests for:
Medical care
Food/snacks/water
Additional Clothing
Communication with family, consulate or legal support

**REPORT** to your supervisor:
Unsafe conditions
Inappropriate conduct
The need for more supplies
Medical Issues or concerns

**DOCUMENT** in the detention module:
All medical care
All meals provided
Communication with family, consulate or legal support
Visits with family members also in the facility
Any items supplied to the minor ex: hygiene, clothing, baby supplies, etc.

# EXHIBIT 4(d)

## Summary of CBP *Flores* Agreement: RGV and El Paso Sectors

The Parties entered into this Agreement for the purpose of clarifying the Parties' understanding of the meaning of certain provisions of the *Flores* Settlement Agreement ("Settlement"), as they apply to conditions of CBP detention in the Rio Grande Valley (RGV) and El Paso Sectors of the U.S. Border Patrol. The provisions in question are Paragraphs 11 and 12A. "Juveniles" include all minors under the age of 18 in CBP custody, both accompanied and unaccompanied.

The information below has been summarized from the actual Agreement for training/orientation purposes. Exhibit 4 mainly addresses sections VII. Conditions at CBP Facilities, VIII. Extended Time in Custody, and Annex I. Since the Agreement applies to both CBP employees and contractors, the summarized information was organized into the following areas of responsibility: USBP Headquarters and El Paso and RGV Sector Management; U.S. Border Patrol Agents; CBP Procurement Directorate, and RGV and El Paso Contractors; the Juvenile Coordinator's Office; and the Office of the Chief Medical Officer. If additional information is needed, please refer to the Agreement.

### Definitions

- A Juvenile Priority Facility is a facility, designated by CBP, as being the first option to hold juveniles until appropriate placement with ICE or HHS can be secured or release from CBP custody can be accomplished.
- Medical Priority Locations are any CBP facility with contracted medical personnel. All Juvenile Priority Facilities will be medical priority locations.

### USBP Headquarters and RGV/El Paso Sector Management

Facilities

- CBP shall display Exhibit 1 (poster) in all CBP facilities in the RGV and El Paso Sectors where juveniles are held. The poster will be placed in close proximity to juveniles.
- Juvenile Priority Facilities
    - CBP shall identify at least one Juvenile Priority Facility in RGV Sector and one in El Paso Sector, notify Class Counsel of this designation, and begin utilizing those facilities. If CBP changes its juvenile priority facilities or commences operation of a new Juvenile Priority Facility in either the RGV or El Paso Sectors, CBP shall notify Class Counsel within thirty days.
    - All Juvenile Priority Facilities shall be designated as medical priority facilities.
    - CBP Juvenile Priority Facilities will have 24/7 access to contracted onsite medical support.
    - All juveniles not immediately returned voluntarily to their country of origin shall be transferred to juvenile priority facilities within 24 hours of arrival at a non-priority facility, or, in exigent circumstances, 48 hours.
    - All reasonable efforts shall be made to keep juveniles in Juvenile Priority Facilities while in CBP custody.

1

- o Juvenile Priority Facilities shall work to reduce the use of fencing and enclosures that are not needed for security reasons.
  - o Juvenile Priority Facilities, to the extent possible, shall have areas that provide the least restrictive setting for juveniles appropriate to their age and special needs. These settings will be consistent with the need to ensure safety and security of everyone within the facility.
  - o The planning and construction of new CBP facilities in the RGV and El Paso Sectors will take into consideration that the facilities will be permanently or temporarily used as Juvenile Priority Facilities.
  - o Juvenile Priority Facilities shall work to reduce the use of fencing and enclosures not needed for security purposes.
- Non-Priority Facilities
  - o Non-priority facilities shall maintain an adequate supply of items to accommodate the temporary holding of juveniles including:
    - Mats and blankets;
    - External garments, such as sweatshirts, and jackets;
    - Undergarments and clothing, such as sweatpants, t-shirts, and underwear;
    - Diapers of varying sizes and baby wipes;
    - Potable water, cups as appropriate, meals, and snacks;
    - Hygiene products to include soap and/or hand sanitizer, a mechanism for drying hands, toothbrushes, and toothpaste; and
    - Disposable baby bottles, baby formula, and baby/toddler food, cloth swaddling blankets, and beanies.

<u>Nutrition Standards</u>

- All facilities
  - o Juveniles shall have access to age-appropriate meals and snacks that meet age-appropriate daily caloric needs and hydration needs. Food shall be in edible condition and not frozen, expired, or spoiled.
  - o Food and water shall never be used as a reward or withheld as punishment.
  - o Juveniles shall have ready access to clean drinking water and cups, as appropriate. There shall be a sufficient number of cups so that juveniles do not have to share cups. Portable water coolers shall be covered or enclosed and shall be washed or rinsed with warm water once during each shift and be thoroughly cleaned at least weekly. Portable water coolers shall be replaced when not working properly or unable to be cleaned due to age or deterioration.
  - o Juveniles shall be offered snacks upon arrival to a CBP facility and meals at regularly scheduled intervals. Two of the meals shall be hot. Juveniles shall have regular access to snacks, milk, and juice.
  - o Safe and hygienic age-appropriate food shall be provided to children under the age of two, including baby formula and baby foods.

- o Disposable baby bottles, potable water, and formula mixing instructions shall be readily accessible along with instructions in English and Spanish and diagrams on how to mix formula.
  - o CBP shall record the availability of snacks and drinking water and the provision of meals in the appropriate electronic system of record.
  - o CBP shall support breast feeding as desired by mothers in custody with young children.
  - o CBP shall accommodate food allergies with simple, basic, readily available hypoallergenic alternatives.
- o Juvenile Priority Facilities
  - o At least one of the following shall be available to all juveniles outside of the common toilet area:  functioning clean and hygienic water fountains, bottled water, or portable water coolers with cups available.
  - o CBP shall ensure all food service contracts provide meals that meet USDA nutritional guidelines and all other USDA-consistent nutritional standards adopted by CBP, for both tender-age children (age 12 and under) and older children (age 13 and over).
  - o CBP shall use best efforts to accommodate juveniles' dietary restrictions and preferences.
- Non-Priority Facilities
  - o CBP shall work with the Juvenile Care Monitor to develop and implement appropriate guidelines for food provided to juveniles in non-priority facilities.

<u>Temperatures and Warmth – All Facilities</u>

- Temperature
  - o CBP shall maintain a temperature range between 69°F and 83°F, with the target temperature being one that is considered generally comfortable.
  - o Facilities shall closely monitor and record ambient temperatures via digital displays or a temperature reading device.
- Garments
  - o All facilities will maintain a stock of age-appropriate clothing for juveniles in a variety of sizes, including t-shirts, underwear, socks, sweatshirts, sweatpants, jackets, etc.
  - o Juveniles shall be provided clean, dry clothing if their clothing is wet or soiled or when their personal clothing is discarded or laundered.
  - o Juveniles shall be allowed to retain possession of their warm clothing unless they pose a health or safety hazard.
  - o Beanies in various sizes shall be available for children under the age of five.
  - o Blankets shall be available for juveniles, including cloth swaddling blankets for infants and children under the age of two.

<u>Sleep</u>

- All Facilities
  - o CBP shall make all reasonable efforts to provide juveniles with sufficient space and a mat and blanket during sleep hours, typically from 2200-0600 hours.
  - o Juveniles shall be provided blankets or extra clothing for adequate warmth upon request or upon expressing general discomfort from cold or when observed shivering or huddling for warmth.
  - o If there are no safety concerns and not physically impracticable to do so, facilities shall make reasonable efforts to dim the lights between 2200 hours and 0600 hours. Dimming can include turning off sections of lighting in cells or pods.  The facilities shall always maintain sufficient light to enable agents, security officers, and caregivers to properly monitor all individuals in custody.
  - o CBP shall make reasonable efforts to minimize noise and disruptions between 2200 hours and 0600 hours.
- Juvenile Priority Facilities
  - o Clocks shall be placed in locations visible from each pod/cell unless there is no available space.

<u>Hygiene and Sanitation</u>

- All Facilities
  - o Hygiene kits shall be available to all juveniles upon request and when showers are offered.  Such kits shall include appropriate soap for hair and body, toothbrushes/toothpaste, and towels for showering.
  - o Toothbrushes/toothpaste shall be provided daily or upon request.  When juveniles are part of a family unit or family group, parents and other accompanying adult family members are responsible for the dental hygiene of the juveniles.
  - o If laundry facilities are available or laundry services are contracted, soiled clothing shall be laundered if operationally practicable.  Otherwise, clean clothing shall be available to replace soiled clothing, including swaddling blankets, sweatpants, etc.
  - o Diapers in a variety of sizes and baby wipes shall be accessible.
  - o All juveniles shall always have access to functioning toilets and sinks, toilet paper, soap and/or hand sanitizer, and feminine hygiene products.  Juveniles shall have a way to dry their hands.
  - o Janitorial and portable toilet contractors shall maintain toilets and had washing stations.
  - o Adequate storage space for storing hygiene supplies shall be available.
- Juvenile Priority Facilities
  - o CBP shall provide a shower to each juvenile shortly after their arrival at the facility, and additional showers at 48-hour intervals thereafter.
  - o If space is available, infant changing stations shall be maintained.
  - o In juvenile priority facilities where caregivers are available, caregivers shall assist unaccompanied class members in their hygiene routines, as needed.

- o   In juvenile priority facilities where caregivers are available, caregivers shall assist family groups or units as needed in their hygiene routines, to include caring for minor children while parents or other adult family members shower.

Child Appropriate Environment

- All Facilities
  - o   CBP shall treat all juveniles in custody with dignity, respect, and special concern for their particular vulnerability as minors and place each juvenile in the least restrictive setting appropriate to the juvenile's age and special needs.
  - o   Absent an articulable operational reason, juveniles apprehended with adult family members (including non-parents or legal guardians) shall remain with that family member during their time in CBP custody, in accordance with TEDS, as well as the requirements of TVPRA.
  - o   When there is an operational reason to house family members separately, CBP shall record the reasons for holding them apart and make all reasonable efforts to ensure that the family members are able to interact.
  - o   When family members are held separately, efforts shall be made to ensure interaction between family members, such as providing a common area for visiting during the day, allowing them to share meals together in a common area, or allowing them to participate in recreation.
  - o   CBP shall notify HHS/ORR of UCs who are related and in need of placement to try to have them placed together or in facilities that are close to each other to allow for family interaction.
  - o   CBP shall make all reasonable efforts to provide UCs daily access to a phone to permit contact with family members.
- Juvenile Priority Facilities
  - o   CBP shall make reasonable efforts to have televisions available in pods that routinely hold juveniles when the televisions can be secured in a location that minimizes damage to the televisions or possible injury to the persons in the facility.
  - o   Facilities shall try to have available age-appropriate toys/activities that do not pose a health or security risk to any person in the facility.
  - o   Facilities shall provide child appropriate furniture that does not pose a health/safety risk in areas holding tender age children when operationally feasible.
  - o   Facilities shall provide UCs with at least one daily message (in person or video) providing reassurance of their safety and orienting them to date, time, location, and general process/disposition/expectations.

Medical – All Facilities

- CBP shall promptly activate the 911 system or refer juveniles to the local health system whenever appropriate for evaluation and treatment.  Further, CBP shall refer juveniles with urgent or emergent medical issues to the local health system.

- Agents in the field shall be trained to recognize and respond to signs/symptoms of injury or illness.
- CBP will coordinate with ICE and HHS ORR regarding the transfer of persons in custody with identified medical issues.
- CBP shall conduct a health intake interview on all juveniles in custody upon arrival at a U.S. Border Patrol facility.  This interview shall identify juveniles who are tender age (12 and under); pregnant; or with an illness, injury, disease, or other medical issue.
- Medical assessments shall be conducted on all juveniles who are tender age; pregnant; or with an injury, illness, disease, acute needs associated with a disability or chronic illness, or other medical issue.  If contract medical personnel are unavailable, individuals in custody may be referred to the local health system or other available health care providers for a medical assessment, as appropriate.
- Juveniles in isolation/quarantine shall be provided a means to communicate with accompanying family member who are not isolated/quarantined with them at least twice a day, so long as such communication will not jeopardize the health or safety of the juvenile or their accompanying family member.  While a juvenile and their accompanying relative are in CBP custody, CBP will make best efforts to allow an accompanying adult relative to remain with a class member who requires quarantine, if medically appropriate and operationally feasible.
- Any juvenile who received medical care in CBP custody shall have an exit health interview conducted by CBP contracted medical personnel.  CBP will provide appropriate summary documentation of medical events which occurred within CBP custody to the patient or parent/legal guardian upon leaving CBP custody.
- CBP shall ensure documentation provided by the emergency room or hospital is shared with or transferred to appropriate parties as people are transferred or released from custody.

Extended Time in Custody – Over 72 Hours

- All Facilities
  - Provide a supplemental health interview to all juveniles every 5 days.
  - Conduct enhanced medical monitoring on juveniles, as appropriate, as needed.
  - Continue to offer showers to juveniles every 48 hours.
  - Continue to provide toothbrushes/toothpaste to juveniles daily and upon request, as well as hygiene kits at the time showers are provided.
  - Continue to provide juveniles access to clean and dry clothes.
  - Continue to provide adequate food and clean drinking water.  Make all reasonable efforts to provide additional variety in meals.
  - Continue to provide mats and blankets during hours of sleep, as well as making reasonable efforts to dim the lights in CBP facilities during hours of sleep.
- Juvenile Priority Facilities
  - Provide recreation and other child-appropriate activities daily.  CBP shall make all reasonable efforts to provide outdoor recreation.

**U.S. Border Patrol Agents**

- CBP shall transfer all juveniles who are not immediately returned to their country of origin to a Juvenile Priority Facility as expeditiously as possible, in general, within 24 hours of arrival at a non-priority facility, but no longer than 48 hours after arrival at a non-priority facility.
- Juveniles held in each pod in a CPC or soft-sided facility will generally be able to move freely around that pod.
- Juveniles aged 14 and older and all accompanying adult family members of juveniles under 14 years old shall be informed of their rights under this agreement orally and by video. They shall be provided an I-770 in English and Spanish.  If the juvenile or accompanying adult family member do not read or speak Spanish, the I-770 shall be read to them in their native language.
- CBP shall provide a list of free legal services to all juveniles.
- Facilities shall provide UCs with at least one daily message (in person or video) providing reassurance of their safety and orienting them to date, time, location, and general process/disposition/expectations.

<u>Medical</u>

- CBP shall promptly activate the 911 system or refer juveniles to the local health system whenever appropriate for evaluation and treatment.  Further, CBP shall refer juveniles with urgent or emergent medical issues to the local health system.  Agents in the field will recognize and respond to urgent medical issues requiring activation of 911/EMS or transport to local health system.
- CBP will coordinate with ICE and HHS ORR regarding the transfer of persons in custody with identified medical issues.
- CBP shall conduct a health intake interview on all juveniles in custody upon arrival at a U.S. Border Patrol facility.  This interview shall identify juveniles who are tender age (12 and under); pregnant; or with an illness, injury, disease, or other medical issue.
- Medical assessments shall be conducted on all juveniles who are tender age; pregnant; or with an injury, illness, disease, acute needs associated with a disability or chronic illness, or other medical issue.  If contract medical personnel are unavailable, individuals in custody may be referred to the local health system or other available health care providers for a medical assessment, as appropriate.
- Agents shall refer juveniles with medical concerns to contracted medical personnel or to the local health system, as appropriate, and shall conduct regular 'welfare checks' to include observation for medical concerns.
- Agents shall inform individuals in custody that they have a right to medical treatment and shall inform and encourage individuals in custody to self-refer or to refer family members or companions for medical care.
- Any juvenile who received medical care in CBP custody shall have an exit health interview conducted by CBP contracted medical personnel.  CBP will provide appropriate summary

documentation of medical events which occurred within CBP custody to the patient or parent/legal guardian upon leaving CBP custody.

- CBP shall ensure documentation provided by the emergency room or hospital is shared with or transferred to appropriate parties as people are transferred or released from custody.

Nutrition Standards

- Juveniles shall have accesses to age-appropriate meals and snacks.  Food shall be in edible condition (not frozen, expired, or spoiled).
- Food and water shall never be used as a reward or withheld as punishment.
- CBP shall always provide ready access to clean drinking water and, as appropriate, cups. Drinking water may be provided via mechanisms such as functioning clean and hygienic water fountains, bottled water, or covered portable water coolers.
  - Sufficient cups shall be provided in all areas juveniles are held so that they are not required to share drinking cups with others.
  - Where portable water coolers are used, they shall be washed or rinsed with warm water once during every shift and thoroughly cleaned at least weekly.
- Juveniles shall be offered a snack upon arrival at a CBP facility. Juveniles shall have regular access to snacks, milk, and juice.  Safe and hygienic age-appropriate food shall be provided to children under the age of two, including baby formula and baby foods.
- Juveniles shall be offered meals at regularly scheduled intervals.  At least two of the meals shall be hot.
- Agents shall comply with food handling instructions included in any packaged food and shall wear gloves when preparing food.
- CBP shall record the availability of snacks and drinking water and the provision of meals for juveniles.
- CBP shall support breast-feeding as desired by mothers in custody with young children.

Temperature and Warmth

- The temperature range inside facilities shall be no less than 69°F and no more than 83°F.
- Agents shall record the temperature in the appropriate electronic system of record at appropriate intervals, no less than twice per day.
- If juveniles' clothing is wet or soiled, they shall be provided clean, dry clothing.
- If juveniles have their own warm clothing at the time of apprehension, they shall generally retain possession of it unless it poses a health or safety risk.
- Additional blankets shall be available upon request for the juvenile, their parents, or other accompanying family member.
- Juveniles shall be provided blankets or extra clothing for adequate warmth upon request or upon expressing general discomfort from cold or when observed shivering or huddling for warmth.

8

Sleep

- CBP shall make all reasonable efforts to provide juveniles with sufficient space, as well as a mat and blanket, during sleep hours (typically defined as from 2200 hours to 0600 hours).
- If there are no safety concerns and it is not physically impracticable to do so, CBP shall make reasonable efforts to dim the lights during sleep hours.  Dimming can include turning off sections or lighting in the cells or pods.
- CBP shall make reasonable efforts to minimize noise and disruptions during sleep hours.

Hygiene and Sanitation

- Hygiene kits shall be available to juveniles upon request and will be provided to each juvenile when showers are offered.
- At Juvenile Priority Facilities, all juveniles shall be provided a shower as soon as possible upon arrival and additional showers at 48-hour intervals after that.
- Toothbrushes/toothpaste shall be provided daily and available upon request.
- All juveniles shall have access to functioning toilets and sinks, toilet paper, soap and/or hand sanitizer, and feminine hygiene products.  Juveniles shall have a way to dry their hands.
- At juvenile priority facilities at which caregivers are present, caregivers can help unaccompanied juveniles with their hygiene routines if needed.  Caregivers can also help family units with their hygiene routines if needed, such as watching minor children while the parent showers.

Child-Appropriate Environment

- CBP shall treat all juveniles in custody with dignity, respect, and special concern for their particular vulnerability as minors and place each juvenile in the least restrictive setting appropriate to the juvenile's age and special needs.
- Absent an articulable operational reason, juvenile apprehended with adult family members shall remain with that family member during their time in CBP custody, in accordance with TEDS, as well as the requirements of TVPRA.
  - Family members include parents, legal guardians or adult siblings, grandparents, cousins, aunts, uncles, great-aunts, or great-uncles.
- When there is an operational reason to house family members separately, CBP shall make and record the reasons for holding them apart.  All reasonable efforts shall be made to ensure that family members have the opportunity to interact, such as providing a common area for visiting during the day, allowing them to share meals together in a common area, or allowing them to participate in recreation
- Agents shall inform juveniles that if they are housed separately from a family member, they can ask agents, guards, or caregivers to interact with that family member.  This information must be provided orally.
- CBP shall notify HHS/ORR when there are UCs who are related and in need of placement.
- CBP shall make reasonable efforts to provide UCs daily access to a phone call to permit contact with family members.

9

<u>Extended Time in Custody</u>

When a juvenile remains in CBP custody for more than 72 hours, CBP shall:

- Provide a supplemental health interview to all juveniles every 5 days;
- Conduct enhanced medical monitoring on juveniles, as appropriate, as needed;
- Continue to offer showers to juveniles every 48 hours;
- Continue to provide toothbrushes and toothpaste to juveniles daily and upon request, as well as hygiene kits at the time showers are provided;
- Continue to provide juveniles access to clean and dry clothes;
- Continue to provide juveniles with adequate food and clean drinking water;
- Continue to provide mats and blankets during hours of sleep, as well as continue to make reasonable efforts to dim the lights in CBP facilities during hours of sleep; and
- In Juvenile Priority Facilities, provide opportunities for recreation and other child-appropriate activities daily.  CBP shall make all reasonable efforts to provide juveniles with outdoor recreation.

**CBP Procurement Directorate and RGV/El Paso Sector Contractors**

Quality Assurance

- CBP shall assign a Contracting Officer Representative (COR) to oversee the contracts of each Juvenile Priority Facility.
- Contract terms shall not be inconsistent with the terms of this Agreement.
- The COR shall monitor the contracts and recommend corrective actions if deficiencies are noted.
- The COR shall also recommend increases in the services provided to ensure services are adequate even during a surge.
- Each contract shall have quality assurance measures to ensure all the standards in the contract statement of work are met.  The COR will oversee the quality assurance process and collects logs documenting the existing process.
- CBP shall work toward training a limited number of COR level three representatives to provide a second level of observation and compliance for the contracts.

Caregivers

- General Provisions
  - All Juvenile Priority Facilities shall utilize caregivers.
  - Caregiver services shall be available on a 24/7 basis, to include weekends and federal holidays.
  - The contractor shall provide a mixed gender staff to include at least one male and one female staff member at all times.  A supervisor shall be available at all times.
  - CBP shall provide an orientation to caregivers regarding the general requirements included in this Agreement as well as information on monitoring in CBP facilities, caregiver's role in observing and reporting inappropriate behavior, juvenile health conditions, and the recognition and referral of those juveniles displaying emotional and mental distress.  Their training will also include Prison Rape Elimination Act (PREA) compliance, *Flores* compliance, and compliance with the CBP National Standards on Transport, Escort, Detention, and Search (TEDS).
- Additional Provisions
  - CBP will make best efforts to hire, contract for, or provide additional caregivers or other individuals sufficient to provide additional support for juveniles in custody.
  - Such additional Caregiver Support will include:
    - Assist juveniles in communicating with family members held in a separate cell or pod.
    - Monitor, change diapers, assist with toilet use and hand-washing, feed juveniles who cannot feed themselves, and tend to similar basic needs as they arise.
    - Provide supervision and support to juveniles during recreation and exercise activities.
    - Assist with distribution of meals.

- o CBP shall make best efforts to provide caregiver staffing sufficient to:
  - Provide at least one caregiver for each holding pod or cell holding juveniles. For pods holding family units, the caregivers can be re-assigned if needed to supplement an emergent need to provide for special needs and tender age children.
  - Provide enough additional caregivers in place to assist with showers, meals, recreation time, and other responsibilities without depleting the pod staffing. The additional caregivers do not need to be available during hours in which these activities are not typically provided.
  - Provide additional staff during surges.
- Caregiver Responsibilities
  - o Support general care to juveniles up to age 5.
    - Caregivers shall assist unaccompanied minors in their hygiene routines, as needed.
    - Caregivers shall assist family groups or units as needed in their hygiene routines, to include caring for minor children while parents or other adult family members shower.
  - o Coordinate the collection and bagging of dirty laundry.
  - o Issue and collect shower/hygiene supplies.
  - o Monitor (i.e., maintain visual contact at all times) all juveniles going into and out of showers, from start to finish, taking care to adhere to DHS regulations implementing the PREA.
  - o Assist in bathing juveniles.
  - o Store clothing and issue it to juveniles to use while their clothing is washed.
  - o Maintain inventory of the clothing, towels for showering, and hygiene kits available for use and notify CBP staff of any low inventories.
  - o Refer any suspected or reported medical or mental health issues to USBP personnel or medical personnel onsite.
  - o Maintain a safe working environment, observing and encouraging adherence to safety rules and health guidelines.
- Juveniles may ask caregivers for extra clothing, a blanket, a mat, snacks, juice, milk, drinking water, feminine hygiene products, soap, towels for showering, and a toothbrush and toothpaste, at any time.
- Juveniles may ask caregivers for help if they feel sick or need medical care, or if a family member needs medical care.
- If juveniles want to see a family member not held in the same room, they may ask a caregiver to contact that family member.
- Caregivers shall meet all required background checks and have sufficient experience and training to provide general support to juveniles in custody.

Food Service

- Food service contractors shall provide appropriate quality assurance, subject to CBP COR oversight.
- All meals shall be prepared in a safe and sanitary manner, considering all appropriate food safety requirements.
- Meals provided at priority facilities that are appropriate for tender-age children (age 12 and under) shall meet USDA nutritional guidelines and all other USDA-consistent nutritional standards adopted by CBP.
- Meals provided at priority facilities that are appropriate for older children/adults (age 13 and over) shall meet USDA nutritional guidelines and all other USDA-consistent nutritional standards adopted by CBP.

Medical

- Contracted medical personnel shall provide initial assessment, treatment, and referral to detained individuals.
- CBP shall conduct a health intake interview with all juveniles upon initial arrival at a U.S. Border Patrol facility in RGV and El Paso Sectors.  This interview shall be conducted by contracted medical personnel or by Border Patrol agents, as appropriate.
  - CBP shall use a standardized form (CBP Form 2500) for this health interview, in addition to any forms utilized by CBP medical contractors.
  - During the health interview, CBP shall identify juveniles who are tender age (12 and under); pregnant; or with an illness, injury, disease, or other medical issue.  For such juveniles, CBP will make the appropriate disposition, based on circumstances.
  - Juveniles will be assessed for current or unmet medication needs.
  - If a juvenile has medication with them, it will be assessed to determine validity, currency, and appropriateness.  If the medication is deemed to be appropriate, it may be dispensed in a controlled manner.  If there is any question about the appropriateness of the medication, the juvenile will be evaluated by medical personnel onsite or referred to the local health system as expeditiously as possible to evaluate medication requirements.  If medication is required, a prescription will be obtained from onsite medical personnel or from the local health system and filled.  Medication shall be held by CBP while a juvenile is in custody and dispensed in a controlled manner consistent with prescription instructions.
- Medical assessments shall be conducted on all juveniles who are tender age; pregnant; or with an injury, illness, disease, acute needs associated with a disability or chronic illness, or other medical issue.  The assessment will be conducted by CBP contracted credentialed medical providers, when available.  If providers are not available, individuals in custody may be referred to the local health system or to other available health care providers for a medical assessment, as appropriate.  Complex or emergency issues shall be referred to the local health system.
  - Medical assessments shall include a detailed assessment for potential medical issues requiring further evaluation, including:

13

- ▪ Targeted history, physical, vital signs, review of systems, assessment, disposition
- ▪ Consideration of nutritional issues (such as potential acute malnutrition or dehydration) and mental or behavioral health issues.  Juveniles in custody identified with a potential nutrition-related concern shall receive appropriate evaluation by onsite medical support personnel or referral to the local health system.
  - o For juveniles identified as requiring additional medical evaluation or treatment, CBP will make the appropriate disposition based on circumstances.
- At Juvenile Priority Facilities, CBP contracted medical personnel shall always be onsite and able to provide evaluation and treatment for basic medical issues identified upon initial intake assessment or throughout time in custody.
- CBP contracted medical personnel shall provide follow-up care after referral to a local health system or hospitalization.
- CBP contracted medical personnel shall provide support to early identification, treatment, isolation, appropriate referrals, infection control, and public health support for infectious diseases in CBP facilities.
- CBP contracted medical personnel shall conduct exit health interviews for juveniles who receive medical treatment in CBP custody, as appropriate, to ensure persons in custody are fit for travel or transfer.  CBP will provide appropriate summary documentation of medical events which occurred within CBP custody to the patient or parent/legal guardian.
- If a juvenile is in CBP custody for longer than 72 hours, CBP shall provide a supplemental health interview every 5 days.  CBP shall also conduct enhanced medical monitoring on juveniles, as appropriate as outlined in Section I.D. of the attached Medical Annex.
- Medical personnel shall maintain visibility on medical issues within the juvenile population and be prepared to engage those in custody with medical issues.
- At medical priority CBP facilities with contracted medical support, CBP shall conduct enhanced medical monitoring of persons in custody identified with significant medical issues or concerns, with an emphasis on potentially vulnerable populations such as juveniles.
  - o The timing and scope of the enhanced medical monitoring shall be tailored to the individual clinical situation or circumstance.
  - o Enhanced medical monitoring shall consist of, at a minimum, symptom check and temperature check (plus additional vital signs as appropriate) by medical personnel.
  - o Enhanced medical monitoring shall occur, at a minimum, every 4 hours.
  - o Enhanced medical monitoring shall include a determination of the appropriate disposition after referral or discharge from local health system.
  - o Enhanced medical monitoring shall include a process to track people subject to enhanced medical monitoring and turnover between shifts or rotation of providers.
  - o Enhanced medical monitoring shall be documented appropriately.
  - o Enhanced medical monitoring shall identify juveniles whose condition is deteriorating or who are not making expected progress, and prompt notification will be made to pediatric advisors or to the local health system, as appropriate.

14

- Juveniles shall be provided with a supply of medication or a prescription upon transfer or release, as appropriate, and instructions regarding use of the medication.
- CBP shall ensure appropriate documentation of medical information.
- CBP shall ensure documentation provided by the emergency room or hospital is shared with or transferred to appropriate parties as people are transferred or released from custody.
- CBP shall maintain a safe working environment, observing and encouraging adherence to safety rules and health guidelines.

Security Guards

- Security guards shall receive an orientation informing them, among other things, that they should refer juveniles with medical concerns to medical personnel.
- Juveniles may ask security guards for help if they feel sick or need medical care, or if a family member needs medical care.
- Juveniles may ask security guards for extra clothing, a blanket, a mat, snacks, juice, milk, drinking water, feminine hygiene products, soap, towels for showering, and a toothbrush and toothpaste, at any time.
- If juveniles want to see a family member not held in the same room, they may ask a security guard to contact that family member.

15

**CBP Juvenile Coordinator's Office**

- The CBP Juvenile Coordinator's Office (JCO) in coordination with the Office of the Chief Medical Officer, shall monitor adherence to CBP nutrition standards. Monitoring efforts shall include ongoing review of utilization of meals by tender-age children.
- When conducting site visits, JCO shall confirm that the temperature of all hold rooms where juveniles are present is within the appropriate temperature range. JCO shall also confirm that agents record whether the temperature is within range in the appropriate systems of record.
- JCO shall verify that facilities have a stock of garments during site visits.
- During site visits, JCO shall confirm availability of hygiene supplies in conformance with TEDS and guidelines established in this Agreement.
- JCO and the Office of the Chief Medical Officer shall rely on monitoring protocols approved by the Juvenile Care Monitor but retain discretion to update and amend such monitoring protocols as appropriate.
- JCO and the Office of the Chief Medical Officer shall engage with and address concerns raised by the Juvenile Care Monitor, as appropriate.

16

## Office of the Chief Medical Officer

- The CBP Chief Medical Officer shall engage in all aspects of CBP medical support efforts on an ongoing basis.
- JCO and the Office of the Chief Medical Officer shall engage with and address concerns raised by the Juvenile Care Monitor, as appropriate.
- CBP will continue to review the appropriateness of vaccine administration for class members in CBP custody in collaboration with other relevant government agencies and the Juvenile Care Monitor.
- CBP shall coordinate with and request assistance from other relevant stakeholders, such as the U.S. Department of Homeland Security (DHS), ICE, HHS ORR, the Centers for Disease Control and Prevention (CDC), and state/local health officials, as appropriate, for additional medical support.
- In particular, CBP shall coordinate closely with ICE and HHS ORR regarding transfer of persons in custody with identified medical issues, to include infectious diseases, mental health issues, and acute or chronic medical conditions.
- CBP shall engage with its federal partners, public health experts, and the Juvenile Care Monitor on appropriate protocols for addressing issues of public health concern.
- As part of its medical support approach, CBP (working with its broader network of medical support) shall abide by relevant medical and public health standards of care that the Juvenile Care Monitor agrees are consistent with CBP's obligations under this Agreement in its treatment of class members.
- **Trauma-Informed Care-** At Juvenile Priority Facilities, CBP shall take a trauma-informed approach to class members in custody.  Recognizing the potential for trauma in their home communities and on their journey and that time in custody can be destabilizing and disorienting, CBP will make efforts to foster reassurance, resilience, orientation, recreation, and distraction.
- CBP has engaged board-certified Pediatricians to serve as contracted Pediatric Advisors to enhance CBP medical support for juveniles in custody.  Pediatric Advisors will be assigned regionally based on operational risk management considerations described in the Agreement.  Pediatric Advisors' roles/responsibilities include:
  - o Advise on ongoing medical protocol development and refinement for juveniles in CBP custody.
  - o Provide consultation support to medical staff for complex juvenile medical cases.
  - o Develop and conduct juvenile focused in-service training and ongoing professional development for medical staff.
  - o Contribute to Medical Quality Management (MQM) efforts through juvenile chart review and Ongoing Professional Practice Evaluation.
  - o Monitor juvenile referral practices and patterns and coordinate with medical providers and local health system to optimize juvenile referral practices.
  - o Work with CBP, contract medical teams, and local health system to establish primary referral sites with pediatric expertise.
- CBP has engaged credential Behavioral Health clinicians to serve as Behavioral Health Advisors to support CBP behavioral health efforts.  These Behavioral Health Advisors will be assigned regionally based on operational risk management

considerations described in the Agreement.  Behavioral Health Advisors' roles/responsibilities include:
- o Advise on ongoing behavioral health protocol development and refinement.
- o Provide consultation support to medical staff for complex behavioral health cases.
- o Develop and conduct behavioral health focused in-service training and ongoing professional development for medical staff.
- o Contribute to MQM efforts through behavioral health chart review and Ongoing Professional Practice Evaluation.
- o Monitor behavioral health referral practices and patterns and coordinate with contract medical providers and local health system to optimize behavioral health referral practices.
- o Work with CBP, contract medical teams, and local health system to establish primary referral sites with appropriate behavioral health expertise.
- CBP shall adopt policies requiring that juveniles who receive medical treatment in CBP custody leave CBP with appropriate information regarding their medical condition and treatment while in CBP custody.

Medical Quality Management
- CBP Chief Medical Officer provides CBP medical direction and oversight of MQM efforts.
- CBP Chief Medical Officer coordinates with DHS Office of the Chief Human Capital Officer for support to MQM efforts.
- CBP Chief Medical Officer shall work with the CBP Juvenile Coordinator to include medical support efforts in ongoing review activities.
- MQM elements:
  - o Licensing and Credentials Review
  - o Focused Professional Practice Evaluation (FPPE)
  - o Ongoing Professional Practice Evaluation (OPPE)
  - o Chart reviews
  - o Inservice reviews
  - o Sentinel Event reviews
- Physician Supervisors – CBP Physician Supervisors will play an integral role in the CBP MQM program through ongoing chart review, FPPE, OPPE, sentinel event review, and in-service programs.
- Pediatric Advisors – CBP Pediatric Advisors will play an integral role in the CBP MQM program, with a focus on care for juveniles, through ongoing chart review, FPPE, OPPE, sentinel event review, and in-service programs.
- Behavioral Health Advisors – CBP Behavioral Health Advisors will play an integral role in the CBP MQM program, with a focus on behavioral health, through ongoing chart review, FPPE, OPPE, sentinel event review, and in-service programs.
- Patient Safety/Quality Managers – CBP will engage contracted professional Patient Safety/Quality Managers to administer the MQM program and provide coordination and documentation of MQM program efforts.

<u>Public Health/Infectious Disease Management</u>
- CBP shall consult with partners and stakeholders, including DHS, HHS, CDC, and state and local health officials, as appropriate, to address public health/infectious disease issues in CBP facilities.
- CBP shall develop and maintain protocols regarding public health/infectious disease events in CBP facilities, to include consideration of isolation/cohorting/quarantine considerations, with an emphasis on class members.
- CBP will emphasize early identification and evaluation for public health/infectious disease issues in persons in custody, with an emphasis on class members.
- Infectious disease cases will be assessed and treated onsite (where contracted medical support personnel are available) or referred to the local health system as appropriate.

<u>Medical Monitoring and Compliance</u>
- The CBP Chief Medical Officer shall conduct medical direction and oversight of CBP medical support efforts.
- The CBP Chief Medical Officer shall work with the CBP Juvenile Coordinator to incorporate medical monitoring and compliance into ongoing Juvenile Coordinator review efforts.
- Representative examples of medical monitoring and compliance assessment may include:
  - Data points: (including age and diagnosis/disposition as appropriate)
    - Number of class members apprehended and in custody
    - Number of class members with Health Intake Interview
    - Number of class members with Medical Encounter
    - Number of class members referred to local health system
    - Number of class members admitted to hospital
    - Number of class member deaths in custody
  - Observation and Document Review:
    - Presence of medical support on site
    - Health intake interviews, Medical Assessments, Medical Encounters being conducted
    - Medication reviews being conducted; medications provided
    - Enhanced medical monitoring being conducted
    - Medical documentation being conducted

## CERTIFICATE OF SERVICE
## CASE NO. CV 85-4544-DMG (AGRx)

I certify that on May 21, 2022, I served a copy of the foregoing Exhibit on all counsel of record by means of the District Court's CM/ECF electronic filing system.

　　　　　　　　　 /s/ Peter Schey
PETER SCHEY