# EXHIBIT 1

CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Carlos R. Holguín (Cal. Bar No. 90754)
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Email: crholguin@centerforhumanrights.email

*Attorneys for Plaintiffs*
*(Additional counsel listed on next page)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*, | No. CV 85-4544-DMG-AGRx |
| Plaintiffs, | [PROPOSED] STIPULATED SETTLEMENT OF PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT RE EMERGENCY INTAKE SITES |
| v. | |
| MERRICK GARLAND, Attorney General the United States, *et al.*, | |
| Defendants. | |

NATIONAL CENTER FOR YOUTH LAW
Neha Desai (Cal. RLSA No. 803161)
Mishan Wroe (Cal. Bar No. 299296)
Melissa Adamson (Cal. Bar No. 319201)
Diane de Gramont (Cal. Bar No. 324360)
1212 Broadway, Suite 600, Oakland, CA 94612
Telephone: (510) 835-8098
Email: ndesai@youthlaw.org

CHILDREN'S RIGHTS
Leecia Welch (Cal. Bar No. 208741)
88 Pine Street, Suite 800, New York, NY 10005
Telephone: (212) 683-2210
Email: lwelch@childrensrights.org

*Attorneys for Plaintiffs*

BRIAN BOYNTON
Acting Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation

WILLIAM C. SILVIS
Assistant Director, District Court Section
Office of Immigration Litigation

SARAH B. FABIAN
Senior Litigation Counsel
FIZZA BATOOL
Trial Attorney
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-4824
Fax: (202) 305-7000
Email: sarah.b.fabian@usdoj.gov

*Attorneys for Defendants*

**PREAMBLE**

WHEREAS the original complaint in this action was filed on July 11, 1985, and on January 28, 1997, the Court approved a class-wide settlement of this action pursuant to Fed. R. Civ. P. 23 ("Settlement");

WHEREAS the Settlement requires Defendants to place class members "in the least restrictive setting appropriate to the minor's age and special needs, provided that such setting is consistent with [Defendants'] interests to ensure the minor's timely appearance before the INS and the immigration courts and to protect the minor's well-being and that of others." Settlement ¶ 11;

WHEREAS the Settlement requires that, following arrest, Defendants must hold class members "in facilities that are safe and sanitary and that are consistent with [Defendants'] concern for the particular vulnerability of minors." Settlement ¶ 12.A.;

WHEREAS the Settlement requires that class members generally be transferred to a state-licensed program within three days of apprehension or, in the case of an emergency or influx, "as expeditiously as possible." Settlement ¶ 12.A.;

WHEREAS the Settlement requires that Defendants release class members from their custody "without unnecessary delay" and "make and record the prompt and continuous efforts on [Defendants'] part toward family reunification and the release of the minor." Settlement ¶¶ 14, 18;

WHEREAS on August 9, 2021, Plaintiffs filed a Motion to Enforce the Settlement regarding Emergency Intake Sites (EIS) [Doc. # 1161] alleging violations of Paragraphs 11, 12, 14, and 18 of the Settlement;

WHEREAS the Parties agreed to engage in mediation discussions before Independent Monitor Andrea Sheridan Ordin to attempt to resolve the Plaintiffs' motion;

WHEREAS the Parties have conducted extensive discussions and negotiations in good faith over the last eight months with respect to a compromise and

resolution of Plaintiffs' motion, with a view to settling the alleged violations and achieving the most effective relief possible consistent with the interests of the Parties;

WHEREAS the Parties further recognize that during the course of their discussions and negotiations, certain states, such as Texas and Florida, have taken action to abruptly de-license ORR's grantee childcare providers, such that ORR's childcare facilities in those states no longer have access to state-issued licenses;[1]

WHEREAS the Parties agree that, consistent with the Settlement, children in Defendants' custody should be placed in state-licensed childcare facilities, as expeditiously as possible;

WHEREAS the Parties agree that children should not be placed in large-scale, unlicensed congregate care settings unless there is no viable alternative and that Emergency Intake Sites (EISs) should therefore be used only as a last resort to prevent children from spending prolonged periods of time in the custody of U.S. Customs and Border Protection (CBP);

WHEREAS the Parties agree that particularly vulnerable children, including children 12 years old and younger and children with special needs, should receive priority for licensed placement and should not be placed in an EIS unless no licensed beds are available, and the only alternative is for the child to remain in CBP custody for an indeterminate period of time;

---

[1] For the purposes of this Agreement, the descriptor "licensed" used throughout this document (e.g., licensed placements, licensed facility, licensed beds, licensed program, licensed bed capacity) refers to both ORR's state-licensed childcare facilities, facilities that have been de-licensed solely by reason of a state action discontinuing licensing of ORR care providers in that state (e.g., Florida and Texas), as well as any new facilities that are recruited into the ORR network through any current or future Notices of Funding Opportunity and do not have licenses solely by reason of a state action disallowing licensing of ORR care providers in that state. The parties reserve all claims and defenses with respect to whether such facilities are permissible under the Settlement.

2

WHEREAS the Office of Refugee Resettlement (ORR) is committed to using its existing licensed placements to the greatest extent possible and to expanding the number of licensed beds available in its network;

WHEREAS ORR issued a Notice of Funding Opportunity for new licensed bed providers on December 9, 2021, in order to increase its total capacity of licensed placements;

WHEREAS contested litigation regarding EISs would be complex, lengthy and costly to all parties concerned, with the final outcome uncertain;

WHEREAS the Parties have concluded that the terms and conditions of this Agreement are fair, reasonable, and in the best interests of the Plaintiff class members;

WHEREAS this Agreement, while it is in force, lays out the entirety of ORR's obligations under the Settlement with respect to (1) case management at EISs, (2) placement of children in EISs, (3) particularly vulnerable children placed at EISs, and (4) EIS standards;

WHEREAS Plaintiffs agree to withdraw with prejudice their pending Motion to Enforce [Doc. # 1161];

WHEREAS Plaintiffs reserve their right to seek fees and costs associated with their Motion to Enforce [Doc. # 1161], and the Parties agree to meet and confer in a good faith effort to settle such fees and costs;

NOW, THEREFORE, the Parties stipulate that this Agreement constitutes a full and complete resolution of the issues raised in the Motion to Enforce regarding Emergency Intake Sites [Doc. # 1161] and the Parties agree that, while this Agreement is in force, any future alleged violations of the *Flores* Settlement arising out of (1) case management at EISs, (2) placement of children in EISs, (3) particularly vulnerable children placed at EISs, and (4) EIS standards will be resolved in accordance with this Agreement and its enforcement provisions.

## I.   CASE MANAGEMENT

A. Within 30 days of this settlement, ORR shall develop a contingency plan to establish fully operational case management services as quickly as possible after opening an EIS and issue written guidance requiring that:

      i. Within 30 days of operation or expansion[2], each EIS must have a case manager to child ratio of at least 1:8.

      ii. Within 30 days of operation or expansion, each EIS must establish procedures such that an initial assessment by a case manager is completed within 24 hours of the child's admission to the facility, to include commencing identification of potential sponsors. Modification of this 24-hour deadline may be necessary to accommodate a child's emergency needs (i.e., hospitalization). All other assessments will follow the ORR Policy Guide and Field Guidance designed to expedite release as issued (i.e., Field Guidance #10 Expedited Release for Eligible Category 1 Cases and Field Guidance #16 Clarification that Individual Service Plan and UC Case Review Are Not Generally Required for Unaccompanied Children Placed at Emergency Intake Sites (EIS)).

---

[2] It is Defendants' position that EISs may need to be expanded to prevent prolonged stays in CBP facilities. Nothing in this Agreement shall preclude ORR from expanding the capacity of an existing EIS in order to accommodate a substantial increase in UC referrals, in which case ORR shall be permitted the grace periods herein accorded to new EISs to come into compliance with the standards for the care and treatment of UCs provided in this Agreement. As used herein, an "expansion" of an existing EIS shall occur upon the addition of 150 beds or more to an EIS's existing capacity as specified in the facility's most recent contract or other operating agreement. An EIS's expansion shall not result in the reduction of already existing services at the EIS, but rather may result in a delay of expanding those services to meet the needs of the increased population of UCs at the EIS.

iii. Within 30 days of operation or expansion, each EIS must establish a schedule that enables each child to meet with their assigned case manager at least once a week (i.e., every 7 calendar days) to discuss the status of their case and offer the child an opportunity to provide information relevant to their case or ask questions.

iv. Within a week of placement at an EIS, children will be educated on the process for reporting concerns about their case status through the EIS's pre-existing grievance process. Grievances on case status will be reviewed by the Lead Case Manager or supervisor of the assigned case manager. In accordance with ORR Policy 4.10.1, the child must receive a written response to their grievance regarding their case status within 5 days of receipt. During the initial communication with a sponsor, the sponsor will be educated on the process for reporting concerns about the child's case status and provided the contact information for the child's Lead Case Manager or supervisor. The sponsor will be directed to file the grievance with the Lead Case Manager or supervisor. Sponsors who use this process to raise concerns about the child's release status will receive a response within 5 days of receipt.

v. Legal service providers can notify ORR of concerns regarding a child's release by emailing UCLegalServicesSupport@acf.hhs.gov or contacting the Federal Field Specialist and/or site lead. ORR will provide a response within 5 business days to legal service providers who submit notification to ORR that they represent a named child on reunification/release.

B. Within 30 days of settlement, ORR shall modify its continuous monitoring of compliance to include the standards in this Agreement and to promptly cure any non-compliance with these standards.

C. Within 30 days of settlement, ORR shall endeavor to reduce stays in EISs by:

    i. Issuing guidance requiring that Category 4 and Category 3 children be transferred to a licensed placement as soon as there is capacity, and contingent on any need to prioritize the placement of particularly vulnerable children in licensed facilities (*see* Section III), unless the child's release is imminent or the transfer would require separation of sibling groups.

    ii. Issuing guidance requiring that at least once per week, ORR will review the census of each EIS facility to identify children with a length of stay longer than 20 days, ascertain why the child remains at the EIS and follow up with the child's case manager to ensure the child is promptly released or transferred to a licensed facility as expeditiously as possible.

## II.   LICENSED PLACEMENT

A. Within 30 days of settlement, ORR shall issue written guidance specifying what categories of children referred from CBP should be prioritized for initial licensed placement and what categories of children at EIS facilities should be prioritized for transfer to a licensed facility, to include particularly vulnerable children and children likely to have extended lengths of stay.

B. For as long as EIS and unlicensed ICF facilities (excluding Carrizo Springs) are in operation, ORR will regularly update Plaintiffs, the Special Master, and her Public Health Expert of the reasons that licensed beds to accommodate all class members remain unavailable, as well as ongoing efforts to address these issues. These updates may be provided through the

ORR Juvenile Coordinator's Interim Report or through email
communication.

C. For as long as EIS and unlicensed ICF facilities (excluding Carrizo Springs)
are in operation, ORR will regularly update Plaintiffs, the Special Master,
and her Public Health Expert on changes in ORR's licensed bed capacity.
These updates may be provided through the ORR Juvenile Coordinator's
Interim Report or through email communication.

## III.    PARTICULARLY VULNERABLE CHILDREN

A. ORR shall consider the following groups of children to be particularly
vulnerable:

    i.   Children 12 years of age or younger ("tender age children");

    ii.  Children who are not proficient in English or Spanish as
determined, in the first instance, by an assessment administered
by the child's case manager.  If an EIS primarily serves non-
Spanish speaking children, they will not be deemed particularly
vulnerable based on a lack of English or Spanish language
proficiency as long as the EIS provides services in the child's
proficient language[3];

    iii. Children who have a known disability or other mental health or
medical issue requiring additional evaluation, treatment, or
monitoring by a healthcare provider[4];

---

[3] Language proficiency is defined as a child's ability to speak the language
adequately to understand the developments of their case, communicate fully with
medical and counseling staff, engage with other children, and fully participate in all
educational, recreational, and social activities.

[4] Whether or not a child has a disability or other mental health or medical issue
requiring additional evaluation, treatment, or monitoring by a healthcare provider
will be determined, in the first instance, by medical or mental health staff, including
behavioral health professionals.

iv.  Pregnant or parenting teens;

v.  Children who are at a documented enhanced risk due to their identification as lesbian, gay, bisexual, transgender, questioning, or intersex (LGBTQI).[5]

B.  Within 30 days of settlement, ORR shall issue written guidance providing:

i.  Tender age children shall not be placed at the ORR EIS at Fort Bliss.

ii.  Tender age children are generally ineligible for placement at the Pecos EIS. However, tender age children may only be placed at the Pecos EIS under the following limited circumstances:

a.  No bed specified for that aged child is available in a licensed program and the only alternative option is to allow the child to remain in a CBP or ICE facility for an indeterminate period of time; or

b.  Placement in a licensed program would require separating siblings or a parent-child pair.

C.  Within 30 days of settlement, ORR shall issue written guidance providing:

i.  Particularly vulnerable children (except as provided for in Section III.B. above) shall not be placed at the Fort Bliss EIS or the Pecos EIS unless:

_____

[5] Enhanced risk is defined as a documented increased threat of discrimination, harassment, or physical violence with the potential to endanger the safety, health, or well-being of the child. The assessment of enhanced risk will be based on self-report of perceived risk upon intake or any other time in ORR custody, a formal risk assessment survey within 72 hours of intake, the observations of ORR or contractor staff, or the judgment of medical or behavioral professionals engaged in the evaluation or care of the child. While a UC identifying as LGBTQI is not immediately categorized as a particularly vulnerable child as defined in Section III.A, the documented enhanced risk will place them in the particularly vulnerable child category and prioritize their transfer to a licensed facility.

a. No bed is available for that child in a licensed program and the only alternative option is to allow the child to remain in a CBP or ICE facility for an indeterminate period of time; or

b. Placement in a licensed program would require separating siblings or a parent-child pair.

ii. The Parties recognize that, unless relevant information is included in a child's CBP referral, ORR may not be aware that a child is a particularly vulnerable child prior to admission to ORR care. ORR will screen children for the particular vulnerabilities described in Section III.A within 5 days of EIS placement[6] and shall continue to monitor children for particular vulnerabilities thereafter.

iii. If a particularly vulnerable child is placed at the Fort Bliss EIS or the Pecos EIS, the child shall be transferred to a licensed program within 14 days of a determination that the child is a particularly vulnerable child, unless the child's release is imminent, the transfer would require separation of sibling groups, or no bed is available in a licensed program.

a. If no bed is available in a licensed program or a formerly licensed program that is no longer state licensed solely by reason of a state action discontinuing licensing of ORR care providers in that state, ORR will transfer the child to an ICF within 14 days of determining that the child is a

---

[6] If an EIS has been operating for less than 14 days, ORR will screen children for particular vulnerabilities as soon as possible and no later than 19 days after opening.

particularly vulnerable child, unless the child's release is imminent, the transfer would require separation of sibling groups, or no bed is available in a licensed/formerly licensed program, an ICF, or any other EIS.

D. In placing class members at licensed programs, ORR may prioritize other categories of particularly vulnerable children over children who are not proficient in English or Spanish, provided that such children who remain in EIS placement have access to consistent in-person translation services in their preferred language at the EIS that enables them to fully participate in services and activities.

E. Reporting

    i. If ORR must place tender age children at the Pecos EIS, ORR will notify Plaintiffs' counsel and the Independent Monitor at least 72 hours prior to making such a placement.

    ii. If ORR must place particularly vulnerable children at the Fort Bliss EIS or the Pecos EIS, it will provide monthly reports regarding those placements to Plaintiffs' Counsel and the Independent Monitor, including sufficient information to calculate these children's lengths of stay.

F. If ORR opens a new EIS facility, ORR shall issue written guidance within 15 days of opening a new facility, specifying whether specific categories of particularly vulnerable children are eligible for placement in that facility. ORR will inform Plaintiffs' Counsel and the Independent Monitor of the placement policies of any new EIS and is open to future discussions regarding these placement policies. It is the Parties' expectation that particularly vulnerable children will not be placed at any new EIS facility unless there is no other viable alternative to prolonged CBP custody and the

new facility develops specific safeguards and services to meet the needs of particularly vulnerable children.

## IV.    EIS STANDARDS

A. In addition to meeting the requirements of ORR Field Guidance #13, every EIS shall:

    i.  Upon opening or expansion:

        a.    Provide proper physical care and maintenance, including suitable living accommodations.

        b.    Initiate preparations such that children may have daily access to the outdoors as soon as possible.

        c.    Provide access to emergency mental health services, e.g., crisis intervention services, crisis stabilization services, and emergency therapeutic interventions.

    ii.  Within 14 days of beginning operations or expansion, provide:

        a.    Daily outdoor activity, with a preference for occurring immediately upon opening but no later than 14 days of beginning operations, weather permitting.

        b.    Access to translation services in each child's preferred language, if the EIS accepts children who are not proficient in English or Spanish.

        c.    Access to private phone calls at least twice a week for at least ten minutes in length.

        d.    An intake assessment designed to identify particularly vulnerable children as defined in Section III.A.

    iii.  Within 30 days of beginning operations or expansion, provide:

        a.    Family reunification services designed to identify relatives in the United States as well as in foreign countries and assistance in obtaining legal guardianship

1             when necessary for the release of the unaccompanied

2             child.

3      b.   Activities according to a recreation and leisure time plan

4             that include daily outdoor activity, weather permitting,

5             with at least one hour per day of large muscle activity and

6             one hour per day of structured leisure time activities (that

7             should not include time spent watching television). On

8             days when there are no educational services, there should

9             be at least four hours of structured activities per day.

10     c.   A comprehensive orientation regarding program intent,

11            services, rules (written and verbal), expectations, and the

12            availability of legal assistance.

13     d.   Appropriate mental health interventions when necessary

14            or to address mental health crisis.

15    iv.   Within 60 days of beginning operations or expansion, provide:

16     a.   Appropriate medical and emergency dental care, family

17            planning services, a modified individual health

18            assessment, administration of prescribed medication and

19            special diets, and appropriate mental health interventions

20            when necessary.

21     b.   Educational services.

22     c.   Legal services information, including the availability of

23            free legal assistance, the right to be represented by

24            counsel at no expense to the government, the right to a

25            removal hearing before an immigration judge, the right to

26            apply for asylum or to request voluntary departure in lieu

27            of deportation.

28    v.   Within 90 days of beginning operations or expansion, provide:

a.    An individualized needs assessment.

b.    At least five hours of structured activities per day, to include educational services and recreational activities.

c.    At least one individual counseling session per week conducted by trained staff.

d.    Group counseling sessions at least twice a week.

B. Within 30 days of beginning operations or expansion, each EIS shall have a plan and timeline for providing the following services:

i. A complete medical examination (including screening for infectious disease) within 48 hours of admission, excluding weekends and holidays, unless the minor was recently examined at another ORR facility; and appropriate immunizations in accordance with the HHS' Centers for Disease Control and Prevention.

ii. Acculturation and adaptation services, which include information regarding the development of social and interpersonal skills which contribute to those abilities necessary to live independently and responsibly.

iii. Educational services appropriate to the child's level of development and communication skills in a structured classroom setting, which concentrates primarily on the development of basic academic competencies, and secondarily on English Language Training.

iv. Access to religious services of the child's choice.

v. Facilitate visitation and contact with family members (regardless of their immigration status). The staff shall respect the child's privacy while reasonably preventing the unauthorized release of the UC.

13

vi. A reasonable right to privacy, which includes the right to wear his or her own clothes when available, retain a private space for the storage of personal belongings, visit privately with guests, as permitted by the rules and regulations, receive and send uncensored mail unless there is a reasonable belief that the mail contains contraband.

C. No later than 60 days of the Effective Date of this Settlement, all currently operating EISs must meet the requirements of Field Guidance #13 and Sections IV.A and IV.B of this Settlement Agreement.

**V.     MONITORING**

A. Each month, for as long as any EIS remains in operation, ORR will provide Plaintiffs and the Independent Monitor a data report for each EIS that includes:

 i. Census: Snapshot of each child detained in the EIS, including the child's full name, A#, DOB, category of the current primary sponsor, date of ORR placement, and date admitted at the EIS;

 ii. Transfers: List of each child transferred from the EIS to another ORR placement, including the child's full name, A#, DOB, category of the current primary sponsor, date of ORR placement, date admitted at the EIS, transfer program name and program type;

 iii. Discharges: List of each child discharged from the EIS, including the child's full name, A#, DOB, date of ORR placement, date admitted at the EIS, discharge type, and category of sponsor.

iv.   The EIS's capacity as defined by its current operating
contract.

## VI.   TERMINATION AND ENFORCEMENT

A. This Agreement shall terminate two years from its Effective Date, or
upon the termination of the *Flores* Settlement Agreement, whichever
is sooner.

B. If Plaintiffs' Counsel believe that ORR has breached this Agreement,
Plaintiffs' Counsel shall, within thirty (30) days of learning of the
event giving rise to the belief, provide ORR (through Defendants'
counsel) with written notice of the specific facts that they believe
constitute a breach of the Agreement. Plaintiffs may not submit any
notice of breach more than one-year after the event that forms the basis
for the allegation of breach.

C. When presenting an allegation of breach to ORR, Plaintiffs' Counsel
shall make their best efforts to indicate the time, date, location, and the
specific factual circumstances forming the basis for the alleged breach
and to identify the names and A numbers (or other equivalent
identifying information) of any class members whose declarations or
statements would be used as evidence of breach if these claims are
brought to the Court for resolution.

D. ORR shall have twenty-one (21) days to respond to the allegations,
and shall provide their written response to Plaintiffs' Counsel. After
ORR provides a response, the Parties will meet and confer within
seven (7) days in an effort to resolve the allegations. The Parties may,
upon mutual consent, request that a mediator be appointed by the
Court to oversee these discussions. If the Parties cannot resolve the
allegations, Plaintiffs' Counsel may, in accordance with the Local
Rules for the Central District of California and the Federal Rules of

Civil Procedure, submit their allegation(s) of breach to the Court for resolution. Class Counsel must provide the Court with the specific reasons that they believe Defendant is in breach of the Agreement.

E. If Plaintiffs believe that class members are suffering or will suffer immediate and substantial irreparable harm as a result of a breach of the Agreement then Plaintiffs may file an application for a Temporary Restraining Order under the applicable law, standards, and Local Rules of the Central District of California. Defendants may raise any available defenses to such filing, including that expedited treatment is not warranted, and that Plaintiffs should be required to bring their allegations to ORR for resolution in accordance with Paragraph VI.D. above.

Dated:  June 21, 2020                    CENTER FOR HUMAN RIGHTS AND
                                         CONSTITUTIONAL LAW
                                         Carlos R. Holguín

                                         NATIONAL CENTER FOR YOUTH LAW
                                         Neha Desai
                                         Mishan Wroe
                                         Melissa Adamson
                                         Diane de Gramont

                                         CHILDREN'S RIGHTS
                                         Leecia Welch

                                         /s/
                                         Carlos R. Holguín
                                         *One of the Attorneys for Plaintiffs*

16

1

Dated:                                BRIAN BOYNTON
                                      Acting Assistant Attorney General

2                                     Civil Division

3
                                      WILLIAM C. PEACHEY
4                                     Director, District Court Section
                                      Office of Immigration Litigation
5

6                                     WILLIAM C. SILVIS
                                      Assistant Director, District Court Section
7                                     Office of Immigration Litigation

8
                                      SARAH          Digitally signed by
                                                     SARAH FABIAN
9                                /s/   FABIAN        Date: 2022.06.15
                                                    15:55:53 -04'00'
10                                    SARAH B. FABIAN
                                      Senior Litigation Counsel
11                                    FIZZA BATOOL
12                                    Trial Attorney
                                      Office of Immigration Litigation
13                                    District Court Section
                                      P.O. Box 868, Ben Franklin Station
14                                    Washington, D.C. 20044
15                                    Tel: (202) 532-4824
                                      Fax: (202) 305-7000
16                                    Email: sarah.b.fabian@usdoj.gov
17

18                                    *Attorneys for Defendants*

19

20

21

22

23

24

25

26

27

28