CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Peter A. Schey (Cal. Bar No. 58232)
Carlos Holguín (Cal. Bar No. 90754)
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Facsimile: (213) 386-9484
Email:pschey@centerforhumanrights.org
      crholguin@centerforhumanrights.org

*Listing continues on next page*

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MERRICK B. GARLAND, Attorney General of the United States, *et al.*, <br><br> Defendants. | Case No. CV 85-4544-DMG-AGRx <br><br> PLAINTIFFS' RESPONSE TO ICE AND CBP JUVENILE COORDINATORS' REPORTS <br><br> [Doc. ## 1259-1, 1259-2] <br><br><br> [HON. DOLLY M. GEE] |

///

*Attorneys for Plaintiffs continued*:

USF SCHOOL OF LAW IMMIGRATION CLINIC
Bill Ong Hing (Cal. Bar No. 61513)
2130 Fulton Street
San Francisco, CA 94117-1080
Telephone: (415) 422-4475
Email: bhing@usfca.edu

LA RAZA CENTRO LEGAL, INC.
Stephen Rosenbaum (Cal. Bar No. 98634)
474 Valencia Street, #295
San Francisco, CA 94103
Telephone: (415) 575-3500

/ / /

On May 2, 2022, this Court ordered the U.S. Customs and Border Protection (CBP) Juvenile Coordinator, as well as the Juvenile Coordinators for U.S. Immigration and Customs Enforcement (ICE) and the U.S. Department of Health and Human Services (HHS), to file their annual reports regarding each agency's compliance with the Flores Settlement Agreement (FSA) by July 1, 2022. The Court ordered these reports to include: (i) the overall census of minors in the agency's facilities; (ii) the average length of stay for minors currently in the agency's facilities and for minors who have been released; and (iii) the number of minors currently testing positive for COVID-19. More specifically, this Court directed the CBP Juvenile Coordinator to include: (i) a census of Class Members in CBP custody in the Rio Grande Valley (RGV) U.S. Border Patrol (USBP) Sector; and (ii) any update on CBP's policies and capacity for processing minors considering COVID-19, changes to Title 42, and the ongoing influx.

This. response addresses the reports filed by the CBP Juvenile Coordinators. [Doc. ## 12**59**-1, 12**59**-2.]

### 1. ICE JUVENILE COORDINATOR'S REPORT

The ICE Juvenile Coordinator Annual Report (Doc. #1259-2) ("ICE Report") states in part that ICE "no longer maintains facilities that house [accompanied] Class Members … " ICE Report at 1. As Plaintiffs have previously noted, this is a positive development that will by and large avoid ICE being in violation of the Flores Settlement Agreement ("FSA").

ICE states "the hoteling programs have ceased," while the agency "may have occasion to rely on brief, ad hoc hotel stays for Class Members and their accompanying parents and legal guardians, subject to the terms set forth in this Court's September 4 and September 21, 2020 orders." *Id*. at 2.

Plaintiffs are concerned with reports received that some Class Members discharged from ORR custody have been detained by ICE in hotels for well over three days and were never reported on ICE census reports. In a meet and confer letter dated July 8,2022, Plaintiffs have advised Defendants that Class Member

G.M.G. was allegedly subjected to approximately 20 days of ICE hotel detention in March and April 2022, and Class Member E.A.M.F. was detained by ICE in hotels from April 12, 2022, through April 18, 2022. Class Member E.A.M.F. was allegedly placed in restraints and reported verbal and physical abuse by the ICE security contractors guarding him. Despite being represented by counsel, both G.M.G. and E.A.M.F. reportedly experienced severe limitations on their access to counsel.

Plaintiffs believe there is no legal basis to discharge Class Members from ORR's legal custody to local law enforcement upon a class member's arrest. Paragraph 19 of the Settlement provides that "[i]n any case in which the INS does not release a minor pursuant to Paragraph 14, the minor shall remain in INS legal custody." Accordingly, Class Members who are temporarily taken into the physical custody of local law enforcement should remain in ORR's legal custody and be returned to an ORR care provider once they are released by local law enforcement.

On September 21, 2020, the district court ordered that "DHS shall cease placing minors at hotels", with exceptions for "brief hotel stays (not more than 72 hours) as necessary and in good faith to alleviate bottlenecks in the intake processes at licensed facilities." Order re Defendants' Ex Parte Application to Stay at 5, Sept. 21, 2020 [Doc. # 990] ("Sept. 21 Order"). The court further ordered that "[w]hen any Class Members are transferred to hotels for this purpose, Defendants shall notify Plaintiffs' counsel and the Independent Monitor, providing the identities and number of minors subject to the hotel placements, and the locations of the hotels." *Id*.

Plaintiffs have previously explained that they "remain concerned that on an '*ad hoc*' basis ICE may resort to detaining Class Members in hotels that are almost certainly not licensed as required by the *Flores* Agreement and also likely will not provide the conditions and programs required by the Agreement." Plaintiffs' Response to Ice and CBP Juvenile Coordinators' Reports at 2. [Doc. #

1246.]

Plaintiffs anticipate that the parties will promptly meet and confer regarding these alleged FSA violations. Plaintiffs respectfully suggest that the Court may wish to inquire:

• What does ICE mean when it says that on an "*ad hoc*" basis it may detain Class Members in hotels?

• What hotels is it referring to?

• Will these hotels provide conditions and services that comply with the *Flores* Agreement?

## 2. CBP JUVENILE COORDINATOR'S REPORT

The July 1, 2022, CBP Juvenile Coordinator Annual Report [Doc. #1259-1] ("CBP Report") states in part that encounters of family units (FMUs) increased by 8% from April to May 2022, but this is a 32% decrease from the peak in August 2021.

CBP Report at 2. In June 8, 2022, the number of unaccompanied Class Members in CBP custody southwest border wide (SWB) was 766, while the number in the RGV Sector was 406. The number of accompanied Class Members in CBP SWB was 1,879, while in the RGV Sector it was 1,036. *Id*. at 5.

It is unclear why the Report fails to provide data for the El Paso Sector where historically large numbers of Class Members have been detained..

A comparison of CBP encounters from October to May FY 21 to FY 22 shows a 26% increase for unaccompanied Class Members and an 85% increase for accompanied Class Members.

These numbers show the importance of the Court and the parties finalizing and CBP beginning to implement the CBP settlement agreement now scheduled for hearing on final July 29, 2022.

Also of concern is the CBP Report's data on the length of detention of Class Members in CBP custody. As of June 8, 2022, unaccompanied Class Members

average CBP time in custody for SWB was 23.66 hours, but for of accompanied Class Members was 65.80 hours. And worse, for AMs was 105.40 hours. *Id* at 6.

As of June 8, 2022, unaccompanied Class Members average CBP time in custody in the RGV Sector was 23 hours, but for accompanied Class Members the average CBP time in custody was 75.43 hours, and for AMs the average hours in custody was not reported. *Id* at 6.

The CBP report states that "[m]any factors can contribute to UCs remaining in custody more than 72 hours, such as an injury requiring medical treatment/hospitalization, UCs initially claiming to be adults and then proven to be of minor age, injury/hospitalization of family member, or HHS ORR resource and capacity limitations." *Id*. at 6. *However, the Report does not provide any analysis addressing the significant disparities in time in custody experienced by UCs, FMUs and AMs*.

The recently filed Unopposed Motion for Final Approval of Settlement [Doc. # 1266] makes clear that "Plaintiffs will dismiss their TRO in full and with prejudice, except that their withdrawal will be without prejudice as to "any pending TRO allegations regarding (i) time in custody (ii) Defendants' making and recording of efforts aimed at the prompt release of minors, or (iii) Defendants' notice to class members or accompanying adult relatives of class members' right to release or transfer to a facility licensed for the care of dependent children[.]" *Id*. at 5.

The Court may wish to inquire at the next hearing and/or require that the CBP Monitor's future reports address in more detail –

• why certain groups of Class Members are detained for extended periods of time in CBP custody,

• whether CBP is or could make and record efforts aimed at the prompt release of minors, and

     • why CBP does not and whether it could provide notice to Class Members or accompanying adult relatives of Class Members' right to release or transfer to a facility licensed for the care of dependent children.[1]

     Finally, Plaintiffs are concerned with precisely how CBP is applying Title 42 exclusions to Class Members.

     The CBP Monitor's Report states that "[a]ll UCs encountered in the United States are processed under Title 8 authorities and transferred to the custody of HHS/ORR or repatriated to a contiguous country in accordance with the Trafficking Victims Protection Reauthorization Act of 2008." *Id.* at 7. And as of the filing date of the report, Defendants "may still expel … FMUs in the United States traveling from Canada or Mexico (regardless of their country of origin) who would otherwise be held in OFO ports of entry (POEs) or USBP facilities for immigration processing." *Id*.

     The Court may inquire at the next hearing or require that future CBP Juvenile Monitor's reports include an explanation of—

     • what criteria is used to determine whether unaccompanied Class Members will be repatriated to a contiguous country in accordance with the Trafficking Victims Protection Reauthorization Act of 2008?

     • what criteria is used to determine whether accompanied Class Members will be repatriated to a contiguous country in accordance with the Trafficking Victims Protection Reauthorization Act of 2008? and

---

[1] The *Flores* Agreement requires, *inter alia*, that *"[w]henever the [Defendants] takes a minor into custody*, [they] shall expeditiously process the minor," Agreement ¶ 12.A (emphasis supplied), and *"[u]pon taking a minor into custody, the [Defendants] ... shall* make and record the prompt and continuous efforts on its part toward family reunification and the release of the minor pursuant to Paragraph 14 ..." Agreement ¶ 18 (emphasis supplied). "Such efforts at family reunification *shall continue so long as the minor is in [Defendants']* custody." *Id*. (Emphasis supplied).

• how many accompanied Class Members are being repatriated to a contiguous country in accordance with the Trafficking Victims Protection Reauthorization Act of 2008 in any given time period?

Dated: July 15, 2022          Respectfully submitted,

/s/*Peter Schey*
*Class Counsel for Plaintiffs*

CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Peter A. Schey
Carlos Holguín

USF SCHOOL OF LAW IMMIGRATION CLINIC
Bill Ong Hing

LA RAZA CENTRO LEGAL, INC.
Stephen Rosenbaum
*Counsel for Plaintiffs*

///

# CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2022, I served the foregoing pleading on all counsel of record by means of the District Clerk's CM/ECF electronic filing system.

>   /s/Peter Schey
>   *Counsel for Plaintiffs*
>   CENTER FOR HUMAN RIGHTS &
>   CONSTITUTIONAL LAW
>   Peter A. Schey