1

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**

10

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11

JENNY LISETTE FLORES., *et al.*,

Case No. CV 85-4544-DMG (AGRx)

12

             Plaintiffs,

**ORDER APPOINTING JUVENILE
CARE MONITOR [1279]**

13

    v.

14

MERRICK B. GARLAND, Attorney
General of the United States, *et al.*,

15

16

             Defendants.

17

18

      On July 29, 2022, the Court granted final approval of the parties' Customs and

19

Border Protection ("CBP") Settlement Agreement ("Agreement") [Doc. # 1254-1].

20

[Doc. # 1278].  The Agreement provides that the Court will appoint a Juvenile Care

21

Monitor to oversee compliance with the Agreement.  The Court agrees that such

22

appointment is necessary under the Agreement and will assist the efforts of the parties

23

and the Court to ensure compliance with the Agreement.

24

      Accordingly, UPON CONSIDERATION of the parties' Joint Motion for

25

Approval of Juvenile Care Monitor ("Joint Motion") [Doc. # 1279], the Court hereby

26

**GRANTS** the parties' Joint Motion and **APPOINTS** Dr. Paul H. Wise as the Juvenile

27

Care Monitor with all of the authorities detailed in the parties' Agreement.  Dr. Wise

28

shall also retain his role as the Court's Special Expert until otherwise ordered by the Court.

**Fees and Expenses:** The Juvenile Care Monitor shall be entitled to reimbursement of reasonable fees and expenses. These fees and expenses will be subject to a cap of $310,000 annually. On a monthly basis, the Juvenile Care Monitor shall provide CBP with a detailed record of hours billed and expenses incurred in the preceding month.

If CBP disputes a bill from the Juvenile Care Monitor, it shall have 15 days to review and submit objections to the Juvenile Care Monitor or to request additional documentation from the Juvenile Care Monitor. If any dispute over the Juvenile Care Monitor's bill is not resolved within 30 days, CBP will submit the dispute to the Court for resolution.

**Monitoring Assistance:** The Juvenile Care Monitor may identify proposed aides and/or medical professionals unaffiliated with CBP or with Plaintiffs and, through the Special Master/Independent Monitor, seek Court approval (or, after the expiration of the Special Master/Independent Monitor's term, directly from the Court) for the hiring of such aides and/or medical professionals to assist the Juvenile Care Monitor in all aspects of his or her monitoring work. Both Parties must agree to any proposed aides or medical professionals. Such aides or medical professionals, acting under the supervision of the Juvenile Care Monitor, may inspect CBP facilities and records, and interview CBP employees, regarding compliance with the Agreement. These aides and/or medical professionals will be paid for their services, and these payments will be subject to the annual cap designated above.

**Monitoring Protocol:** The Juvenile Care Monitor will prepare a monitoring protocol which will be adhered to by the Juvenile Care Monitor and all Parties.

**Access to Information Necessary for Monitoring:** The Juvenile Care Monitor will be subject to the Protective Order Governing the Handling of Confidential Material Related to Oversight by Special Master/Independent Monitor ("Protective Order") [Doc. # 513]. Subject to that Protective Order, the Juvenile Care Monitor will have

access to CBP documents and records, may conduct announced and unannounced visits to U.S. Border Patrol facilities in the RGV and El Paso Sectors, may conduct interviews with class members and accompanying adult family members, and may conduct interviews with CBP employees and the employees of its contractors.

The Juvenile Care Monitor may inspect CBP facilities in the RGV and El Paso Sectors, and may also request data from CBP in order to determine whether CBP is in compliance with the terms of the Agreement, including whether there is overcrowding, as defined below, at CBP juvenile priority facilities, as defined in the Agreement. When conducting inspections of non-priority facilities, as defined in the Agreement, such visits shall be solely for the purpose of determining whether the facility is prepared to hold class members in compliance with the Agreement.

The Juvenile Care Monitor may, in his or her discretion, provide Class Counsel with documents or information provided by CBP, to the extent that he or she determines that such sharing would facilitate the performance of his or her duties in monitoring compliance with the terms of the Agreement, including monitoring whether there is overcrowding at CBP juvenile priority facilities in RGV and El Paso Sectors, as defined below.

**Reporting:**  The Juvenile Care Monitor will prepare quarterly reports for the Court and provide them to the Special Master/Independent Monitor (for the duration of her term) and the Parties.  The Juvenile Care Monitor will file these reports with the Court.  If these reports are deemed confidential by the Special Master/Independent Monitor, the Juvenile Care Monitor, or either Party, the parties will stipulate to file them under seal with the Court.  Each report shall be accompanied by a summary that will be filed on the public docket.  Either Party may file objections to or comments to the reports.  Any objections or comments regarding confidential matters shall be filed under seal.

**Notification of Noncompliance:** The Juvenile Care Monitor will promptly notify CBP and Defendants' Counsel of any observed failure to substantially comply with the Agreement or the *Flores* Settlement Agreement within the RGV or El Paso

Sectors and, if the situation is not timely remedied, promptly notify the Special Master/Independent Monitor (for the duration of her term), the CBP Juvenile Coordinator, and Class and Defendants' Counsel of any observed failure to substantially comply with the Agreement. The Juvenile Care Monitor may inform the Independent Monitor/Special Master and Class Counsel of any site visits or other steps taken to monitor compliance with the Agreement.

**Monitoring Overcrowding:** The Juvenile Care Monitor shall be responsible for monitoring overcrowding, in addition to monitoring compliance with all terms of the Agreement. Overcrowding is defined as a level of occupancy that exceeds the physical space required to maintain a safe and sanitary environment for each individual in custody.

(i) CBP shall provide the Juvenile Care Monitor with the information he or she determines, in consultation with CBP, is necessary to assess the potential for or actual overcrowding in juvenile priority facilities. This information shall include occupancy data for all pods and cells in CBP facilities in the RGV and El Paso Sectors; demographic data regarding class members in CBP custody; data regarding the time that class members spend in CBP custody; and data regarding the size of available holding areas.

(ii) The Juvenile Care Monitor may notify Class Counsel if capacity in CBP facilities holding class members in the RGV or El Paso Sectors reaches 90% or more for a period of more than 72 hours.

(iii) During any periods of overcrowding, CBP shall make all efforts to continue to comply with all provisions of the Agreement. To the extent that full compliance is not possible, CBP shall take all necessary steps to mitigate any non-compliance and comply with the Agreement to the extent possible, including, but not limited to, seeking assistance from all appropriate federal and other partners and activating any appropriate internal emergency plans.

**Monitoring Sectors Not Covered by the Agreement:** If, in the course of his or her monitoring duties under the Agreement, the Juvenile Care Monitor identifies any

concerns or issues related to a suspected failure to substantially comply with the Settlement in any Sector outside of RGV or El Paso, the Juvenile Care Monitor may notify the CBP Juvenile Coordinator and the CBP Chief Medical Officer in writing. The Juvenile Coordinator's Office and/or the CBP Chief Medical Officer, as appropriate, will review the concerns with the Juvenile Care Monitor.  The Juvenile Care Monitor may also request to be permitted to conduct further review of the concerns, and CBP may, at its discretion, approve such a request.  CBP may also request that the Juvenile Care Monitor provide a recommendation following any such review.

**Term of Monitoring:**  The Juvenile Care Monitor shall be appointed to a single term of sixteen months from the date of appointment by the Court.  The Juvenile Care Monitor's fifth and final quarterly report shall be submitted fourteen months after appointment by the Court.  Within 30 days of receiving this final report, the Parties shall meet and confer regarding whether the Juvenile Care Monitor's term shall be extended. If no agreement is reached, Plaintiffs may petition the Court for a single extension of the Monitor's term.  Such an extension request must be accompanied by the specific instances of non-compliance that Plaintiffs believe justify the extension.  Plaintiffs bear the burden of proving non-compliance.

**Transfer of Monitoring to CBP:**  At the completion of the Juvenile Care Monitor's term, CBP shall assume responsibility for monitoring compliance with the terms of the Agreement, including monitoring whether there is overcrowding, as defined above.  For a period of thirty days after the Juvenile Care Monitor's term ends, the Juvenile Care Monitor will work with the CBP Juvenile Coordinator to ensure an effective transition of monitoring functions, and will be compensated for this work.

During the Juvenile Care Monitor's term, CBP shall provide the Juvenile Care Monitor with all monitoring protocols, including medical monitoring protocols and protocols developed by the Juvenile Coordinator's Office ("JCO").  The Juvenile Care Monitor may review those protocols and advise CBP on any enhancements or further refinement.  Prior to the effective transition of monitoring functions, the Juvenile Care Monitor shall approve CBP's final monitoring protocols. The JCO and the CBP Chief

Medical Office shall rely on such approved monitoring protocols, but retain discretion
to update and amend such monitoring protocols, as appropriate.

**IT IS SO ORDERED.**

DATED:  August 3, 2022

DOLLY M. GEE
UNITED STATES DISTRICT JUDGE