1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Peter A. Schey (Cal. Bar No. 58232)
Carlos Holguín (Cal. Bar No. 90754)
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Facsimile: (213) 386-9484
Email:pschey@centerforhumanrights.org
      crholguin@centerforhumanrights.org

*Listing continues on next page*

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| Jenny Lisette Flores., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> William Barr, Attorney General of the United States, *et al.*, <br><br> Defendants. | Case No. CV 85-4544-DMG-AGRx <br><br> NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES; MEMORANDUM IN SUPPORT OF MOTION <br><br> Hearing: December 2, 2022 <br> Time: 10:00 AM <br> Judge: Hon. Dolly Gee |

USF SCHOOL OF LAW IMMIGRATION CLINIC
Bill Ong Hing (Cal. Bar No. 61513)
2130 Fulton Street
San Francisco, CA 94117-1080
Telephone: (415) 422-4475
Email: bhing@usfca.edu

LA RAZA CENTRO LEGAL, INC.
Stephen Rosenbaum (Cal. Bar No. 98634)
474 Valencia Street, #295
San Francisco, CA 94103
Telephone: (415) 575-3500

ORRICK, HERRINGTON & SUTCLIFFE LLP
Rene Kathawala (admitted *pro hac vice*)
51 West 52nd Street
New York, NY  10019-6142
Telephone:  212/506-3753
Email: eechtman@orrick.com, sdiwan@orrick.com

## TABLE OF CONTENTS

I.      Introduction ..................................................................................................1

II.     Timeliness of Fee Request ...........................................................................3

III.    Argument......................................................................................................3

A.     Plaintiffs qualify for an award of EAJA Fees ............................................3

   1.    Plaintiffs are prevailing parties. ..........................................................4

   2.    Plaintiffs' net worth is far less than $2,000,000..................................5

   3.    EAJA fees may be awarded for work to enforce a consent decree. ...............5

   4     Defendants' position lacked substantial justification.........................6

B .    Lodestar calculation. ..................................................................................11

C.     Special factors warrant a fee award at market rates for Plaintiffs' Senior Counsel..............................................................................................................13

   1.    Plaintiffs' Class Counsel possesses distinctive knowledge and specialized skill that were needful to the litigation.................................................15

   2     Other qualified attorneys unavailable. ...............................................16

   3.    Enhanced Rates ...................................................................................16

IV     Conclusion ..................................................................................................17

/ / /

TABLE OF AUTHORITIES

**CASES**

*Animal Lovers Vol. Assn. v. Carlucci*, 867 F.2d 1224 (9th Cir. 1989) ...................11

*Ardestani v. I.N.S.*, 502 U.S. 129 (1991)..............................................................2

*Balla v. Idaho*, 677 F.3d 910 (9th Cir. 2012) ........................................................4

*Blum v. Stenson*, 465 U.S. 886 (1984) .................................................................16

*Buchannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001) ..........................4

*Cobell v. Norton*, 407 F. Supp. 2d 140 (D. D.C. 2005) ........................................5

*Fang v. Gonzales*, No. 03-71352, 2006 WL 5669901, *3 (9th Cir. Oct. 30, 2006) (Unpub. Disp.)...................................................................................................14

*Flores v. Sessions*, 862 F.3d 863 (9th Cir. 2017) ..................................................1

*Gutierrez v. Barnhart¸* 274 F.3d 1255, 1259 (9th Cir. 2001)..................................6

*Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933, 76 L.Ed.2d 40 (1983)..........11

*Ibrahim*, 912 F.3d at 1169.....................................................................................7

*In re Mgndichian*, 312 F. Supp. 2d 1250 (C.D. Cal. 2003)....................................7

*Jeff D. v. Andrus,* 899 F.2d 753 (9th Cir. 1989).....................................................6

*Keith v. Volpe*, 833 F.2d 850, (9th Cir. 1987) ......................................................4

*Li v. Keisler*, 505 F.3d 913 (9th Cir. 2007) ..........................................................7

*Love v. Reilly*, 924 F.2d 1492 (9th Cir. 1991) ......................................................6

*Mendenhall v. Nat'l Transp. Safety Bd.*, 92 F.3d 871 (9th Cir. 1996) .....................9

*Nadarajah v. Holder*, 569 F.3d 906 (9th Cir. 2009) ......................................11, 14

*Orantes-Hernandez v. Holder*, 713 F. Supp. 2d 929 (C.D. Cal. 2010)...................14

*Oregon Environmental Council v. Kunzman*, 817 F.2d 484 (9th Cir. 1987) .............6

Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546 (1986) ...............................................................................................................5

*Perez-Arellano v. Smith*, 279 F.3d 791, 793 (9th Cir. 2002) ..................................4

*Pierce v. Underwood*, 487 U.S. 552 (1988). .....................................................3, 14

*Prison Legal News v. Schwarzenegger*, 608 F.3d 446 (9th Cir. 2010) .....................4

*Rawlings v. Heckler*, 725 F.2d 1192 (9th Cir. 1984). .............................................7

*Sampson v. Chater*, 103 F.3d 918 (9th Cir. 1996) .................................................9

*Scarborough v. Principi*, 541 U.S. 401, 124 S. Ct. 1856, 158 L. Ed. 2d 674 (2004) ...........................................................................................................................4,7

*Sorenson v. Mink*, 239 F.3d 1140 (9th Cir. 2001)................................................12

*Thangaraja v. Gonzales*, 428 F.3d 870 (9th Cir. 2005) ........................................14

*United States v. 22249 Dolorosa St.*, 190 F.3d 977 (9th Cir. 1999) ........................6

/ / /

## STATUTES

28 U.S.C. § 2412(d) ................................................................................. 2, 3
28 U.S.C. § 2412(d)(1)(A) ........................................................................ 2
28 U.S.C. § 2412(d)(1)(B) ........................................................................ 3
28 U.S.C. § 2412(d)(2)(B)(i) ..................................................................... 5
28 U.S.C. § 2412(d)(2)(G) ........................................................................ 3

## OTHER AUTHORITIES

Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135 ......................... 15
Ninth Circuit Rule 39-1.6 .................................................................... 11
Pub. L. No. 96-481, §§ 201-08, 94 Stat. 2321, 2325-30 (1980) ............................ 2,3
William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008,
    110 Pub. L. 457, 122 Stat. 5044 ........................................................ 15

/ / /

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

## I.    Introduction

Plaintiffs apply for an award of attorneys' fees incurred in this Court to prosecute Plaintiffs' *Ex Parte* Application for a Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction and Contempt Order Should Not Issue ("Plaintiffs' TRO Application") [Doc. # 572] regarding the manner in which the Government will comply with the requirements of paragraphs 11 and 12A of the *Flores* Settlement Agreement ("FSA"), mandating that detained accompanied and unaccompanied class members be housed in safe and sanitary conditions with particular regard for the vulnerability of minors, within the Rio Grande Valley and El Paso Sectors of the U.S. Customs and Border Protection ("CBP"). *See Flores v. Sessions*, 862 F.3d 863, 866 (9th Cir. 2017); Plaintiffs' TRO Application (Doc. # 572).

On June 28, 2019, this Court ordered the parties to engage in mediation discussions before Special Master/Independent Monitor Andrea Sheridan Ordin. [Doc. # 579]. Thereafter, the parties engaged in numerous meetings supervised by the Special Master/Independent Monitor and attended by Dr. Paul Wise, counsel representing Plaintiffs and Defendants, Defendants' operational personnel, and medical experts from both sides.

After lengthy arms-length negotiations, the parties reached a comprehensive settlement agreement ("Agreement") to resolve Plaintiffs' TRO. *See* Joint Motion for Preliminary Approval of Settlement Agreement and Approval of Class Notice of Settlement ("Preliminary Joint Motion") [Doc. # 1254]. In support of their Motion for Preliminary Approval, the parties submitted the proposed Agreement and a proposed class notice to inform *Flores* class members of the proposed Agreement.

Upon consideration of the parties' Preliminary Joint Motion, the Court preliminarily approved the parties' Agreement and with some modifications approved the notice of the proposed Agreement to *Flores* class members ("Notice") in accordance with Federal Rule of Civil Procedure 23(e). [Doc. # 1255].

On July 15, 2022, the parties filed a Joint Motion for Final Approval of Settlement Agreement ("Final Joint Motion") [Doc. #1266], which the Court subsequently approved on July 29, 2022 [Doc. # 1278]. The Court's July 29 Order granted the parties' request that the deadline for Plaintiffs to file any motion for attorneys' fees be extended to August 28, 2022. [Doc. # 1278].

Plaintiffs now apply pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) ("EAJA"), for an award of attorneys' fees incurred.

The EAJA allows litigants to recover fees in certain actions against the United States, thus encouraging the vindication of rights by persons who would otherwise be deterred from challenging governmental action because of the expense of litigation. Pub. L. No. 96-481, 94 Stat. 2325. In pertinent part, the EAJA provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

"The clearly stated objective of the EAJA is to eliminate financial disincentives for those who would defend against unjustified governmental action and thereby to deter the unreasonable exercise of Government authority." *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1166 (9th Cir. 2019) (en banc) (quoting *Ardestani v. I.N.S.*, 502 U.S. 129, 138 (1991)). "Congress specifically intended the EAJA to deter unreasonable agency conduct." *Id.* at 1166-67 (citing *Comm'r, I.N.S. v. Jean*, 496 U.S.

154, 163 n.11 (1990) and Pub. L. No. 96-481, §§ 201-08, 94 Stat. 2321, 2325-30 (1980)).

As will be seen, Plaintiffs satisfy all requirements for an award of EAJA fees.[1] The Court should accordingly grant the instant motion and award fees as herein requested.

## II. Timeliness of Fee Request

The EAJA requires that the successful litigant file the fee application "within 30 days of final judgment." 28 U.S.C. § 2412(d)(1)(B).

A "final judgment" is one that is not subject to further review. 28 U.S.C. § 2412(d)(2)(G).

The Court granted final approval of the parties' settlement agreement [Doc. # 1254-1] on July 29, 2022, and granted the parties' request that the deadline for Plaintiffs to file any motion for attorney's fees be extended to August 28, 2022. Plaintiffs motion is timely.

## III. Argument

## A. Plaintiffs qualify for an award of EAJA Fees

Pursuant to 28 U.S.C. § 2412(d) "eligibility for a fee award in any civil action requires: (1) that the claimant be 'a prevailing party'; (2) that the Government's position was not 'substantially justified', (3) that no 'special circumstances make an award unjust'; and (4) pursuant to 28 U.S.C. § 2412(d), that any fee application be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement." *Ibrahim,* 912 F.3d at 1167 (*quoting* Jean, 496 U.S. at 158).[2]

Once this showing is made, the burden shifts to the Government to prove that its position, *both before and during the litigation*, was substantially justified or that special circumstances make an award of attorney's fees unjust. *See Scarborough v.*

---

[1] Plaintiffs incurred but are not seeking recovery of costs.

[2] The Court has discretion to determine whether the amount of the requested fees are reasonable. *Pierce v. Underwood*, 487 U.S. 552, 571 (1988).

*Principi*, 541 U.S. 401, 416-17 (2004); *Love v. Reilly*, 924 F.2d 1492, 1495 (9th Cir. 1991).

      1.     Plaintiffs are prevailing parties.

      Under the EAJA, a party prevails when it has been granted "some relief by a court." *Buchannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598, 603, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001).[3] To prove prevailing party status, an EAJA petitioner must establish: (1) a "material alteration of the legal relationship of the parties," and (2) a "judicial *imprimatur* on the change." *Id*. at 604-05 (emphasis in original).

      A party prevails and thereafter remains prevailing when it has won judicial relief or obtained an enforceable settlement or consent decree. *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 451-52 (9th Cir. 2010); *Keith v. Volpe*, 833 F.2d 850, 857 (9th Cir. 1987); *see also Balla v. Idaho*, 677 F.3d 910, 918-20 (9th Cir. 2012) (work for "compliance monitoring" of settlement is compensable even in the absence of new judicial relief). Plaintiffs accordingly prevailed in this action in concluding the Settlement entered herein in 1997.

      The parties reached the Agreement which resolves the vast majority of thee issues raised in Plaintiffs' TRO. On July 15, 2022, the parties filed the Final Joint Motion [Doc. #1266], which the Court subsequently approved on July 29, 2022. [Doc. # 1278].

      The Agreement and the Court's approval of the Agreement clearly require that Defendants adjust their policies and practices. Plaintiffs therefore prevailed on their motion and accordingly satisfy the first requirement for an EAJA fees award.

---

[3] Although *Buckhannon* involved other fee-shifting statutes and not the EAJA, the Ninth Circuit has held that the requirements of a prevailing party announced in that decision are applicable to EAJA awards as well. *Perez-Arellano v. Smith*, 279 F.3d 791, 793-94 (9th Cir. 2002).

4

2.      Plaintiffs' net worth is far less than $2,000,000.

Pursuant to 28 U.S.C. § 2412(d)(2)(B)(i), a party's "net worth [must] not exceed $2,000,000 at the time the civil action was filed . . . ."

The original plaintiffs in this action were indigent at the time this action commenced. Declaration of Peter Schey, Exhibit 1 ("Schey") ¶ 9. It is virtually self-evident that plaintiff class members are indigent. By definition, they are immigrant or refugee minors in federal custody. Agreement ¶¶ 10-11; *see also* Schey ¶ 9 (affirming that *Flores* plaintiff class members are on the whole indigent).

Plaintiffs accordingly meet the second requirement for an EAJA fee award. *See Cobell v. Norton*, 407 F. Supp. 2d 140, 148-49 (D. D.C. 2005) ("[A]ffidavits signed by the class representatives, attesting to the fact that their net worth fell within EAJA statutory guidelines at the time the litigation was initiated . . . amply satisfy the requirements of the statute for the entire class.").

3.      EAJA fees may be awarded for work to enforce a consent decree.

Plaintiffs may recover attorneys' fees related to "compliance monitoring" of a settlement or order "where there has been judicial relief, though the monitoring work is subsequent to the judicial order and produces no new order." *Balla*, 677 F.3d at 918; *see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 558-59, 106 S. Ct. 3088, 92 L.Ed.2d 439 (1986) ("[P]ost-judgment monitoring of a consent decree is a compensable activity for which counsel is entitled to a reasonable fee.").

In *Delaware Valley*, the plaintiff obtained a consent decree and thereafter conducted additional litigation and administrative advocacy to protect that decree. The Court held the plaintiff entitled to recover attorney's fees and costs for this post-settlement work. 478 U.S. at 559-60.

Following *Delaware Valley,* numerous courts have affirmed litigants' right to recover attorney's fees and costs for work to enforce court-approved settlements. *E.g.*, *Keith*, 833 F.2d at 857 ("[T]he district court here 'was entitled to believe that relief [for the plaintiffs under the consent decree] would occur more speedily and

5

reliably' if the [plaintiffs' counsel] engaged in these monitoring activities, and this post-judgment monitoring by the [plaintiffs' counsel] was, therefore, 'a necessary aspect of plaintiffs' "prevailing"' in the case.'"); *Jeff D. v. Andrus,* 899 F.2d 753, 765 (9th Cir. 1989) (plaintiffs entitled to attorney's fees for work subsequent to the settlement despite waiving pre-settlement fees; "issues in these appeals are separate from the settlement of the underlying litigation and the waiver of attorney's fees in the settlement does not affect our disposition here.").[4]

　　　　4　　Defendants' position lacked substantial justification.

　　Because Plaintiffs both prevailed and meet the EAJA's net worth standard, "an award of fees is mandatory under the EAJA unless the government's position is substantially justified or special circumstances exist that make an award of fees unjust." *Love*, 924 F.2d at 1495. Defendants must carry the burden of proof with respect to both factors. *Id.; see also Ibrahim,* 912 F.3d at 1167; *Oregon Environmental Council v. Kunzman*, 817 F.2d 484, 498 (9th Cir. 1987); *United States v. 22249 Dolorosa St.*, 190 F.3d 977, 983 (9th Cir. 1999). Defendants must show that the government's pre-litigation and litigation positions had "a 'reasonable basis both in law *and* fact.'" *Meier v. Colvin*, 727 F.3d 867, 870 (9th Cir. 2013) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)) (emphasis added).

　　When analyzing the reasonableness of the Government's position, a court considers the totality of the circumstances, which incorporates both the challenged underlying governmental action and the Government's trial court position. *See Gutierrez v. Barnhart¸* 274 F.3d 1255, 1259 (9th Cir. 2001) ("Thus we 'must focus on two questions: first, whether the government was substantially justified in taking its original action; and, second, whether the government was substantially justified in defending the validity of the action in court'") (quoting *Kali v. Bowen,* 854 F.2d 329, 332 (9th Cir. 1988)); *see also Rawlings v. Heckler*, 725 F.2d 1192, 1196 (9th Cir.

---

[4] In both *Keith* and *Jeff D*., the court reviewed fees awarded under 42 U.S.C. § 1988. However, identical principles apply to an award of post-judgment attorney's fees under the EAJA. *Perez-Arellano*, 279 F.3d at 794.

1984). Moreover, "the EAJA – like other fee-shifting statutes – favors treating a case
as an inclusive whole, rather than as atomized line-items." *Ibrahim*, 912 F.3d at 1169
(quoting *Jean*, 496 U.S. at 161-62). The Ninth Circuit has "consistently held that
regardless of the government's conduct in the federal court proceedings,
unreasonable agency action at any level entitles the litigant to EAJA fees." *Id.* at
1167 (quoting *Li v. Keisler*, 505 F.3d 913, 919 (9th Cir. 2007)).

Plaintiffs have alleged that Defendants' position was without substantial
justification and that no special circumstances make a fee award unjust. This
allegation suffices to shift the burden to Defendants to show that their challenged
policies and pratices were substantially justified—*i.e.* were in substantial compliance
with the FSA and Court orders implenting the FSA—or that special circumstances
would make a fee award unjust. *Scarborough*, 541 U.S. at 416-17; *see also In re
Mgndichian*, 312 F. Supp. 2d 1250, 1255 (C.D. Cal. 2003) (prevailing party need
only "alleg[e] that the government's position was not substantially justified and that
no special circumstances exist that make an award unjust."); 28 U.S.C. § 2412(d) ("A
party seeking an award of fees ... shall also allege that the position of the United
States was not substantially justified.").

Defendants will not likely succeed in making either showing. There was no
substantial justification for Defendants to hold hundreds or thousands of Class
Members in unsafe and unsanitary conditions in violation of the terms of the FSA and
this Court's prior Orders.

Prior to the TRO being filed, on June 19, 2019, Class Counsel emailed Special
Master Ordin and Defendants' counsel a Notice of Non-Compliance describing
Defendants' violations of the FSA and this Court's June 27, 2017 Order. Counsel
made it clear that "these violations present a serious public health emergency that
require immediate remediation. Unless these unsafe and unsanitary conditions are
cured right away, more detainees will get sick, and there will be further spread of a
very dangerous and contagious flu virus. The conditions are particularly dangerous
for the most vulnerable ones in custody – infants and young mothers. Five infants

from CPC-Ursula recently were admitted to the NICU."  In any event, Defendants obviously knew that violations of the FSA and this Court's prior Orders were occurring at their facilities.

As Plaintiffs alleged in the TRO Application, "class member children [were] held for weeks in deplorable conditions, without access to soap, clean water, showers, clean clothing, toilets, toothbrushes, adequate nutrition or adequate sleep. The children, including infants and expectant mothers, [were] dirty, cold, hungry and sleep-deprived." TRO Application at 1 [Doc. # 572].

The TRO Application alleged that in "violation of the obligation to provide 'safe' facilities, the CBP has young children taking care of toddlers and other very young children, in conditions that constitute child endangerment. See Exhibit 41, A.M.O.R. Decl. ¶¶ 3-5 ('A Border Patrol Agent came in our room with a two-year-old boy and asked us, 'Who wants to take care of this little boy?' Another girl said she would take care of him, but she lost interest after a few hours and so I started taking care of him yesterday. His bracelet says he is two years old. I feed the 2-year-old boy, change his diaper, and play with him. . . . . The little boy that I am taking care of never speaks. He likes for me to hold him as much as possible.')." TRO Application at 5-6 [Doc. # 572].

In fact, as a deterrent for future violations, Plaintiffs requested that Defendants be held in contempt for their flagrant and persistent violations of the Agreement and the June 27, 2017 Order. [Doc. # 572].

On June 28, 2019, the Court addressed Plaintiffs' TRO Application. The Court observed that "the emergent nature of Plaintiffs' allegations demands immediate action." In Chambers – Order re Plaintiffs' *Ex Parte* Application for a Temporary Restraining Order and an Order to Show Cause Why a Preliminary Injunction and Contempt Order Should Not Issue ("TRO Order") at 2. [Doc. # 576]. The Court posited: "If 22 years has not been sufficient time for Defendants to refine [a] plan in a manner consistent with their 'concern for the particular vulnerability of minors' and their obligation to maintain facilities that are consistently 'safe and sanitary,' it is

imperative that they develop such a comprehensive plan *forthwith*. *Id*. at Paragraph 12.A." TRO Order at 2 (emphasis in original). [Doc. # 576].

Defendants' pre-litigation position was *prima facie* without justification. *Cf. Sampson v. Chater*, 103 F.3d 918, 921 (9th Cir. 1996) (no substantial justification "when the agency's position was based on violations of the Constitution, federal statute, or the agency's own regulations" (*quoting Mendenhall v. Nat'l Transp. Safety Bd.*, 92 F.3d 871, 874 (9th Cir. 1996)).[5]

It is also clear in this case that the Government's initial litigation position lacked substantial justification.

On June 27, 2019, the day after Plaintiffs' TRO Application was filed, Defendants filed their opposition, arguing, in part, that Plainitffs' TRO request "seeks relief beyond what is aviailable under the Agreement," which would "impose extensive obligations…on the government." Opposition to Ex Parte Application for Temporary Restraining Order as to Why a Preliminary Injunction and Contempt Order Should not Issue ("Opposition") [Doc. # 574]. Defendants accused Plaintiffs of "ask[ing] the Court to order coercive remedies." *Id*. at 4. [Doc. # 574].

At no time throughout the course of the litigation – whether in any pleading or joint status report – did Defendants deny the allegations that were made in Plaintiffs' TRO Application.

Ultimately, on May 21, 2022, the parties reached a 63-page settlement agreement, concluding that "the terms and conditions of this compromise are fair and reasonable." Proposed Settlement Re CBP Conditions re Ex Parte Application for Temporary Restraining Order as to Why a Preliminary Injunction and Contempt Order Should not Issue ("Proposed Settlement") [Doc. # 1254]. The Proposed Settlement includes, but is not limited to, the following provisions:

---

[5] It might also be noted that "a string of losses can be indicative" of whether the government's position is substantially justified. *Gonzalez*, 408 F.3d at 618 (*quoting Pierce*, 487 U.S. at 569).

(1) "CBP medical support seeks to ensure appropriate access to medical care for persons in custody, with an emphasis on populations who may be vulnerable, such as class members." Proposed Settlement at 7 [Doc. # 1254].

(2) "In all facilities, CBP shall ensure that class members have access to age-appropriate meals and snacks that meet class members' daily caloric needs. The main emphasis shall be on safety of food sources and meeting basic, age-appropriate caloric intake and hydration needs." *Id.* at 10.

(3) "CBP shall provide ready access to clean drinking water and cups, as appropriate, at all times." *Id.*

(4) "CBP shall maintain a temperature range inside facilities in RGV and El Paso Sector of no less than 69° Fahrenheit and no more than 83° Fahrenheit." *Id.* at 12.

(5) "Facilities shall maintain a stock of clothing in a variety of sizes that can be distributed to class members." *Id.*

(6) "CBP shall make all reasonable efforts to provide class members with sufficient space, as well as a mat and blanket, during sleep hours." *Id.* at 13.

(7) "Hygiene kits shall be available to class members upon request, and will be provided to each class member when showers are offered. The hygiene items offered shall include appropriate soap for hair and body, toothbrushes/toothpaste, and towels for showering." *Id.*

(8) "CBP shall treat all class members in custody with dignity, respect and special concern for their particular vulnerability as minors and place each class member in the least restrictive setting appropriate to the class member's age and special needs." *Id.* at 14.

(9) "Absent an articulable operational reason, class members apprehended with adult family members (including non-parents or legal guardians) shall remain with that family member during their time in CBP custody, in accordance with TEDS, as well as the requirements of the TVPRA." *Id.*

10

The Government cannot advance "'in good faith' any 'novel but credible extensions and interpretations of the law,' and therefore no equitable considerations weigh against granting Plaintiffs' fee request." Order re Plaintiffs' Motion for Attorneys' Fees at 4, Nov. 12, 2019 (November 12, 2019 Fees Order) (quoting H.R. Rep. No. 96-1418, at 11 (1980)). [Doc. # 702.]

**B.   Lodestar calculation.**

A "lodestar" figure for the amount of fees Plaintiffs should recover is calculated by multiplying the number of hours counsel reasonably dedicated by the inflation-adjusted EAJA hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L.Ed.2d 40 (1983); *Costa v. Comm'n of Social Security Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012).[6] Furthermore:

> In certain cases, courts in the Ninth Circuit may authorize enhanced EAJA rates—above inflation-adjusted rates—where there was a "limited availability of qualified attorneys for the proceedings involved" and the attorneys had "distinctive knowledge" and "specialized skill" that was "needful to the litigation in question" and "not available elsewhere at the statutory rate." *Nadarajah v. Holder*, 569 F.3d 906, 912 (9th Cir. 2009) (citations omitted).

Order Re Plaintiffs' Motion for Attorneys' Fees and Costs at 6, Nov. 14, 2017 ("November 14, 2017 Fees Order"). [Doc. # 383.]

Pursuant to EAJA, *Thangaraja v. Gonzales*, 428 F.3d 870, 876-77 (9th Cir. 2005), and Ninth Circuit Rule 39-1.6, the inflation-adjusted EAJA base rate for the periods counsel worked on the instant matter is $205.25 per hour for the hours worked in 2019, $207.78 per hour for the hours worked in 2020, $217.54 per hour for the hours worked in 2021 and $231.49 per hour for the hours worked in 2022. *See* https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates/ (last visited

---

[6] An increase over the base rate to account for inflation is granted in all but unusual circumstances. *Animal Lovers Vol. Assn. v. Carlucci*, 867 F.2d 1224, 1227 (9th Cir. 1989).

August 18, 2022).[7]

The hours counsel devoted to prosecuting this action, adjusted for time that was poorly documented or excessive, appear in the itemized time records annexed to the declarations of Plaintiffs' Class Counsel Peter Schey, Exhibit 1(B),  and co-counsel Rene Kathawala, Exhibit 2.[8]

Counsel Kathawala, admitted *pro hac vice* to represent the Plaintiffs in this matter on behalf of Orrick, Herrington & Sutcliffe LLP, has worked on this case since October 2014. Mr. Kathawala and his colleagues have maintained contemporaneous records of time they spent working on this case. In exercising billing judgment, they have eliminated 43.6 hours of duplicative time, and also more than 100 hours of time spent by Marc Shapiro (partner), Shaila Rahman Diwan (former partner), Logan Dwyer (former associate) and Michael Peters (legal assistant). The contemporaneous time records of Orrick's attorneys are attached as Exhibit 1 to Mr. Kathawala's Declaration.

Based on Mr. Kathawala's judgment and experience, the work performed by Orrick attorneys in this case was reasonable, necessary, and justified based on the number and complexity of the issues presented in this matter, and was coordinated with lead counsel, Mr. Schey. Any fees awarded for Orrick's time in this matter will pay off expenses that the firm incurred in this matter, and any remaining fees will be deposited into the account of their firm's charitable foundation, from which they make grants to legal services organizations. By taking on the work this case entailed, Orrick's attorneys were precluded from taking on other legal services matters as part

---

[7] Prior to 1996 the EAJA set a base rate of $75 per hour. 28 U.S.C. § 2412(d)(2)(A) (1994). In 1996 Congress increased the base rate to $125 per hour for cases commenced on or after March 29, 1996. *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001). The Ninth Circuit's calculations adjust the 1996 rate for inflation.

[8] Time spent preparing the instant EAJA motion is also compensable. *See Jean*, 496 U.S. at 163-64. To encourage a resolution of this motion, Plaintiffs are not seeking compensation for the vast majority of time dedicated to preparing this motion.

of their firm's pro bono program that would have furthered the interests of vulnerable clients without access to counsel.

Between June 11, 2019 and August 1, 2022, the total amount of time that Mr. Kathawala and his colleagues worked on Plaintiffs' TRO Application and settlement discussions was 650.9 hours and 3.5 hours preparing Mr. Kathawala's declaration.

Pursuant to Ninth Circuit Rule 39-1.6,[9] the applicable inflation adjusted rate for EAJA fees and Orrick's annual hours and requested fees are as follows:

| 2019 | $205.25 | 428.25 | $87,898.31 |
| 2020 | $207.78 | 197.15 | $40,963.83 |
| 2021 | $217.54 | 25.3 | $5,503.76 |
| 2022 | $231.49 | 3.7 | $856.51 |
| | | Total | $135,222.41 |

Lead counsel Schey's statutory rates would be as follows:

| 2019 | $205.25 | 305.83 | $62771.61 |
| 2020 | $207.78 | 193.08 | $40118.16 |
| 2021 | $217.54 | 48.85 | $10626.83 |
| 2022 | $231.49 | 43.00 | $9954.07 |
| | | Total | $123,470.67 |

As will be seen, the Court should award Plaintiffs fees for lead Class Counsel's time at "enhanced," or market, hourly rates.

**C.     Special factors warrant a fee award at market rates for Plaintiffs' Senior Counsel.**

The EAJA authorizes the Court to award attorney's fees at market rates where there is a "limited availability of qualified attorneys for the proceedings involved." 28 U.S.C. § 2412(d)(2)(A). Enhanced hourly rates may be awarded where plaintiffs'

---

[9] *See also Thangaraja v. Gonzales,* 428 F.3d 870, 876-77 (9th Cir. 2005).

counsel possess "distinctive knowledge" and "specialized skill" that was "needful to the litigation in question" and "not available elsewhere at the statutory rate." *Nadarajah*, 569 F.3d at 912 (quoting *Thangaraja v. Gonzales*, 428 F.3d 870, 876 (9th Cir. 2005) and *Love*, 924 F.2d at 1498); *see also Pierce*, *supra*, 487 at 572 ("Examples . . . would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language.").

In *Nadarajah*, the Ninth Circuit held this test satisfied where counsel had "distinctive knowledge and specialized[] skill in immigration law and, in particular, constitutional immigration law and litigation involving the rights of detained immigrants" and this skill was "needful to the litigation in question." 569 F.3d at 912-14 (quoting *Thangaraja*, 428 F.3d at 876); *see also Fang v. Gonzales*, No. 03-71352, 2006 WL 5669901, *3 (9th Cir. Oct. 30, 2006) (Unpub. Disp.) ("Counsel Smith's specialized skills and distinctive 'knowledge of . . . particular, esoteric nooks and crannies of immigration law,' ... enabled her to ... to succeed in obtaining relief from removal for Fang." (quoting *Thangaraja*, 428 F.3d at 876)). In *Nadarajah*, the Ninth Circuit accordingly awarded the prevailing party's senior counsel fees at market rate. 569 F.3d at 916-18.

Similarly, in *Orantes-Hernandez v. Holder*, 713 F. Supp. 2d 929 (C.D. Cal. 2010), the Government moved to dissolve an injunction requiring immigration authorities to follow specific procedures when detaining, processing and removing Salvadoran nationals. *Id.* at 936. The court largely denied the motion, and the plaintiffs sought EAJA fees at market rates because defending against the Government's motion required specialized knowledge of, *inter alia*, the history of the litigation that had resulted in the injunction. *Id.* at 959-63.

The district court awarded fees at market rates for senior counsel. *Id.* at 964. In addition to special knowledge of immigration law and procedure and complex civil litigation, the court found that the prevailing parties' counsel "by virtue of their long involvement in this litigation, possess[ed] distinctive knowledge crucial to litigation of this complicated case," *id.* at 961, and had specialized skills—including

14

proficiency in Spanish—that were necessary to defend the injunction. *Id*. at 960-63.

1.     Plaintiffs' Class Counsel possesses distinctive knowledge and specialized skill that were needful to the litigation.

As in *Orantes-Hernandez* and *Nadarajah,* Plaintiffs' counsel here have extensive experience, knowledge and specialized skill in immigration law, youth law, and more particularly, the rights of detained immigrant and refugee juveniles as they exist at the intersection of the Settlement, the Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135 ("HSA"), the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, 110 Pub. L. 457, 122 Stat. 5044 ("TVPRA"), and the United States Constitution.

First, Plaintiffs' Class Counsel is a highly skilled litigator with vast expertise in representing immigrants, youth, and other vulnerable groups in nationwide class action cases. See Exhibit A attached to Schey Declaration. Plaintiffs' Class Counsel is among the leading lawyers litigating class actions on behalf of immigrant and refugee children. He has successfully litigated multiple statewide and nationwide class actions cases involving the rights of immigrant youth for over 40 years. *Id*.

Here, prosecuting Plaintiffs' action by Class Counsel required specialized expertise in immigration law, the *Flores* Agreement and its history, and interpretation of federal consent decrees as these distinct areas of the law affect a discrete and otherwise defenseless subclass: immigrant and refugee youth in federal detention facilities. Distinctive knowledge of the *Flores* Agreement, the meaning of its terms under federal immigration laws, and the Government's policies and practices in implementing the Agreement, as well as the ability to converse in Spanish were necessary to the successful resolution of this litigation. *See* Declaration of Schey, Exhibit 1  at ¶ 6 ("I am able to converse with class members and their mothers in Spanish. The majority of class members in the litigation the CHRCL conducts, including *Flores*, are monolingual Spanish-speakers, and the ability to communicate with these class members in their native language is invaluable.").

This Court has previously held that the undersigned Class Counsel possesses

15

"intimate knowledge of the Agreement"; that "[i]n addition to litigating the matter that led to the Agreement, [] Schey [has] been involved with monitoring the government's compliance with the Agreement since its inception"; and that he is "therefore uniquely positioned to efficiently litigate the enforcement action in question." November 14, 2017 Fees Order at 6-7. In 2017 and again in 2019 the Court accordingly awarded Plaintiffs fees at market rates for work performed by the undersigned Class Counsel.

2       Other qualified attorneys unavailable.

Further, few, if any, other lawyers in the country could or would have prosecuted a complex emergency application on behalf of a class of indigent, non-English-speaking detained minors, many detained in remote locations, at the inflation-adjusted EAJA rate.

These factors warrant the Court's awarding attorney's fees at rates "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Nadarajah*, 569 F.3d at 916 (*quoting Blum v. Stenson*, 465 U.S. 886, 895 and n.11 (1984)).

3.      Enhanced Rates

Hourly market rates for lawyers with less experience than plaintiffs' Class Counsel are in the range of $950 in 2019, $1,050 in 2020, $1,150 in 2021, and $1,250 in 2022. *See* Declaration of Carol Sobel, Exhibit 3 ("Sobel"), ¶¶ 21-34.[10] Class Counsel Schey excluded from his hours filed herewith and does not seek reimbursement for multiple tasks including, for example, routine brief discussions

---

[10] Ms. Sobel is a Los Angeles attorney whose expertise in market rates courts have repeatedly recognized. *See, e.g.*, *Nadarajah*, 569 F.3d at 912-13; *Orantes-Hernandez*, 713 F. Supp. 2d at 963-64. As this Court held in 2019, "[t]he increased rate [of $950 per hour for Schey] is 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" November 12, 2019 Fees Order at 5 (*quoting Nadarajah*, 569 F.3d at 916).

16

about the litigation with co-class counsel, experts, and advocates representing class members in their individual cases, brief email traffic with co-counsel, consultants and counsel representing class members, review of media reports and studies regarding the challenged policies or practices, and other tasks taking less than ten minutes. Schey at ¶ 11.

Plaintiffs accordingly request an Order granting Plaintiffs reasonable fees as follows for time of lead counsel Mr. Schey::

| 2019 | $950 | 305.83 | $ 290,538.50 |
| 2020 | $1.050 | 193.08 | $ 202,734.00 |
| 2021 | $1,150 | 48.85 | $ 56,177.50 |
| 2022 | $1,250 | 43.00 | $ 53,750.00 |
| | | Total | $ 603,200.00 |

Fees awarded for Class Counsel's work will be paid to the Center for Human Righs and Constitutional Law and used to provide free legal services to indigent immigrants and other low-income vulnerable groups unable to afford retained counsel.

**IV   CONCLUSION**

For the foregoing reasons, this Court should award Plaintiffs attorney's fees pursuant to 28 U.S.C. § 2412(d) as herein requested.

/ / /

17

Dated: August 27, 2022.                Respectfully submitted,

                                       CENTER FOR HUMAN RIGHTS
                                       AND CONSTITUTIONAL LAW
                                       Peter A. Schey

                                       USF SCHOOL OF LAW IMMIGRATION CLINIC
                                       Bill Ong Hing

                                       LA RAZA CENTRO LEGAL, INC.
                                       Stephen Rosenbaum

                                       ORRICK, HERRINGTON & SUTCLIFFE, LLC
                                        Rene Kathawala


                                       /s/ Peter Schey

18

# CERTIFICATE OF SERVICE

I, Peter Schey, declare and say as follows:

I am over the age of eighteen years of age and am not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 256 S. Occidental Blvd., Los Angeles, CA 90057, in said county and state.

On August 27, 2022 I electronically filed the following document(s): NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS; MEMORANDUM IN SUPPORT OF MOTION with the United States District Court, Central District of California by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/Peter Schey
Attorney for Plaintiffs

19