CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Carlos R. Holguín (Cal. Bar No. 90754)
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Email: crholguin@centerforhumanrights.email

*Listing continues on next page*

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*, | No. CV 85-4544-DMG-AGRx |
| Plaintiffs, | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS |
| v. | |
| MERRICK GARLAND, Attorney General the United States, *et al.*, | Hearing: November 11, 2022 |
| Defendants. | Time: 9:30 a.m. |
| | Hon. Dolly M. Gee |

NATIONAL CENTER FOR YOUTH LAW
Neha Desai (Cal. RLSA No. 803161)
Mishan Wroe (Cal. Bar No. 299296)
Melissa Adamson (Cal. Bar No. 319201)
Diane de Gramont (Cal. Bar No. 324360)
1212 Broadway, Suite 600 Oakland, CA 94612
Telephone: (510) 835-8098
Email: ndesai@youthlaw.org

CHILDREN'S RIGHTS
Leecia Welch (Cal. Bar No. 208741)
88 Pine Street, Suite 800, New York, NY 10005
Telephone: (212) 683-2210
Email: lwelch@childrensrights.org

*Attorneys for Plaintiffs*

1

## TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................... 1

II.  TIMELINESS OF FEE REQUEST ........................................................ 2

III.  ARGUMENT ............................................................................................ 2

   A.  Plaintiffs Satisfy All Requirements for an Award of EAJA Fees and Costs  2

     1.  Plaintiffs are prevailing parties. ............................................... 3
     2.  Plaintiffs' net worth is far less than $2,000,000. ..................... 4
     3.  Defendants' position lacked substantial justification................. 5

   B.  Lodestar Calculation ..................................................................... 8

   C.  Special Factors Warrant a Fee Award at Market Rates for Plaintiffs' Senior
Counsel............................................................................................................ 9

     1.  Plaintiffs' counsel possess distinctive knowledge and specialized skill
that was necessary to the litigation. ................................................. 10
     2.  Other qualified counsel is unavailable at the statutory rate. ................... 12
     3.  Market rates for Plaintiffs' senior counsel. ............................... 13

   D.  Plaintiffs Should Be Awarded Their Reasonable Costs.............................. 14

IV.  CONCLUSION........................................................................................ 14

1

# TABLE OF AUTHORITIES

2

3

## CASES

*Animal Lovers Volunteer Ass'n v. Carlucci*, 867 F.2d 1224 (9th Cir. 1989)............ 8

*Ardestani v. I.N.S.*, 502 U.S. 129 (1991).................................................................. 3

*Balla v. Idaho*, 677 F.3d 910 (9th Cir. 2012).......................................................... 4

*Blum v. Stenson*, 465 U.S. 886 (1984) .................................................................. 13

*Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Hum. Res.*,
    532 U.S. 598 (2001) .......................................................................................... 3, 4

*Cobell v. Norton*, 407 F. Supp. 2d 140 (D.D.C. 2005) ........................................... 5

*Comm'r, I.N.S. v. Jean*, 496 U.S. 154 (1990) ...................................................... 3, 6

*Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132 (9th Cir. 2012) ..................... 8

*Fang v. Gonzales*, No. 03-71352, 2006 WL 5669901 (9th Cir. Oct. 30, 2006) ........ 9

*Flores v. Johnson*, 212 F. Supp. 3d 864 (C.D. Cal. 2015) ..................................... 11

*Flores v. Meese*, 681 F. Supp. 665 (C.D. Cal. 1988) .............................................. 11

*Flores v. Meese*, 934 F.2d 991 (9th Cir. 1990) ...................................................... 11

*Flores v. Meese*, 942 F.2d 1352 (9th Cir. 1991) .................................................... 11

*Flores v. Sessions*, 862 F.3d 863 (9th Cir. 2017).................................................... 11

*Flores v. Sessions*, No. CV 85-4544, 2017 WL 8943169 (C.D. Cal. Nov. 14, 2017)
    .............................................................................................................................. 11

*Gonzales v. Free Speech Coal.*, 408 F.3d 613 (9th Cir. 2005) ................................ 5

*Greenpeace, Inc. v. Stewart*, No. 17-35945, 2020 WL 2465321 (9th Cir. May 12,
    2020) .................................................................................................................... 8

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ............................................................ 8

*Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147 (9th Cir. 2019).......... 3, 5, 6

*In re Mgndichian*, 312 F. Supp. 2d 1250 (C.D. Cal. 2003) ..................................... 5

*Kali v. Bowen*, 854 F.2d 329 (9th Cir. 1988) .......................................................... 6

*Keith v. Volpe*, 833 F.2d 850 (9th Cir. 1987)........................................................... 4

*Lara v. Berryhill*, No. 2:16-CV-0034 DB, 2017 WL 4679989 (E.D. Cal. Oct. 18,
    2017) .................................................................................................................... 8

*League of United Latin Am. Citizens v. Wilson*, 908 F. Supp. 755 (C.D. Cal. 1995)
    .............................................................................................................................. 11

*Li v. Keisler*, 505 F.3d 913 (9th Cir. 2007).............................................................6

*Lizardi v. Wilkinson*, 986 F.3d 1294 (9th Cir. 2021) ....................................................2

*Love v. Reilly*, 924 F.2d 1492 (9th Cir. 1991)....................................................3, 5, 9

*Meier v. Colvin*, 727 F.3d 867 (9th Cir. 2013)..........................................................5

*Nadarajah v. Holder*, 569 F.3d 906 (9th Cir. 2009) ................................8, 9, 10, 13

*Orantes-Hernandez v. Holder*, 713 F. Supp. 2d 929 (C.D. Cal. 2010).............. 10, 13

*Perez-Arellano v. Smith*, 279 F.3d 791 (9th Cir. 2002) .............................................4

*Perez-Olano v. Gonzalez*, 248 F.R.D. 248 (C.D. Cal. 2008) ...................................11

*Pierce v. Underwood*, 487 U.S. 552 (1988)...........................................................5, 9

*Prison Legal News v. Schwarzenegger*, 608 F.3d 446 (9th Cir. 2010).......................4

*Rawlings v. Heckler*, 725 F.2d 1192 (9th Cir. 1984) .................................................6

*Reno v. Flores*, 507 U.S. 292 (1993) .....................................................................11

*Richlin Sec. Service Co. v. Chertoff*, 553 U.S. 571 (2008) .......................................8

*Rosemary G. V. v. Saul*, No. 3:19-cv-00715-RBM, 2020 WL 6703123 (S.D. Cal. Nov. 12, 2020) ...................................................................................................8

*Scarborough v. Principi*, 541 U.S. 401 (2004) .....................................................3, 5

*Thangaraja v. Gonzales*, 428 F.3d 870 (9th Cir. 2005).............................................9

**STATUTES**

28 U.S.C. § 1920..................................................................................................14

28 U.S.C. § 2412.........................................................................................passim

H.R. Rep. No. 96-1418 .......................................................................................14

Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 ..................10

Pub. L. No. 96-481, 94 Stat. 2321 (1980).................................................................3

William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, 122 Stat. 5044.................................................................10

**OTHER AUTHORITIES**

Office of Refugee Resettlement, *ORR Guide: Children Entering the United States Unaccompanied* § 7..............................................................................................7

ORR Field Guidance #13, Emergency Intake Sites (EIS) Instructions and Standards, April 30, 2021.....................................................................................7

United States Court of Appeals for the Ninth Circuit, Statutory Maximum Rates
    Under the Equal Access to Justice,
    https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates/ (last visited
    August 17, 2022).................................................................................................8

## I.    INTRODUCTION

Plaintiffs move the Court to award them attorneys' fees and costs incurred in enforcing the *Flores* Settlement Agreement ("Settlement") and establishing enforceable standards for the detention of children in Emergency Intake Sites.

In March 2021, the Department of Health and Human Services' Office of Refugee Resettlement ("ORR") began detaining thousands of unaccompanied children in unlicensed detention facilities, dubbed "Emergency Intake Sites" ("EISs"), which were opened in convention centers, military bases, oil worker "man camps", and other makeshift sites.  ORR's use of EISs was unprecedented.  While ORR had detained children in "influx care facilities" previously, those facilities were at least nominally required to meet minimum child welfare standards whereas the EISs operated without any enforceable standards in place to protect the welfare of children. Additionally, despite the fact that ORR policy provides that particularly vulnerable children—*i.e.*, children under 13 years of age, pregnant or parenting teens, and children who do not speak English or Spanish as their "preferred language," among others—should not be detained in influx care facilities, ORR detained these particularly vulnerable children in EISs.  Several EISs, most notably Fort Bliss and Pecos EIS, became notorious for failing to provide vulnerable children even minimum safety, care, and child welfare conditions and children interviewed at EISs frequently corroborated reports of deplorable conditions and treatment.

On August 9, 2021, Plaintiffs filed a Motion to Enforce Settlement re Emergency Intake Sites ("EIS MTE") to require standards be put in place to ensure the safety of children and guarantee necessary services for children detained in EISs.  *See* Doc. # 1161; Doc. # 1161-1.  The Parties began settlement discussions on August 16, 2021, and thereafter engaged in frequent settlement negotiations until a Settlement Agreement was signed in June 2022.  *See* Doc. # 1256-1.  The Settlement Agreement agreed to by the Parties will ensure that ORR EISs meet

certain standards and provide, for example, suitable living accommodations, access to daily outdoor activity, private phone calls at least twice a week for at least ten minutes in length, family reunification services, appropriate mental health interventions, educational services, legal services information, and structured leisure time activities.  The Settlement Agreement also generally prohibits the placement of particularly vulnerable children in EISs, absent extraordinary circumstances.  The Court preliminarily approved the Parties' Settlement Agreement on June 30, 2022.  *See* Doc. # 1258.

Plaintiffs now apply pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) ("EAJA"), for an award of attorneys' fees and costs incurred in securing the Settlement Agreement, in the total amount of $694,369.42.

## II. TIMELINESS OF FEE REQUEST

The EAJA requires that the successful litigant file a fee application "within thirty days of final judgment in the action." 28 U.S.C. § 2412(d)(1)(B).  "[A] party need not wait until the judgment is final to move for attorney's fees." *Lizardi v. Wilkinson*, 986 F.3d 1294, 1295 (9th Cir. 2021).  In the Court's order preliminarily approving the Parties' Settlement Agreement, the Court ordered that any motion for attorneys' fees be filed by September 2, 2022.  *See* Doc. # 1258.  The instant fee motion is therefore timely.

## III. ARGUMENT

### A. Plaintiffs Satisfy All Requirements for an Award of EAJA Fees and Costs

The EAJA provides:

> … a court shall award to a prevailing party other than the United States fees and other expenses … incurred by that party in a civil action (other than cases sounding in tort), … brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).  Eligibility for a fee award under EAJA "requires: (1) that the claimant be 'a prevailing party'; (2) that the Government's position was not 'substantially justified'; (3) that no 'special circumstances make an award unjust'; and, (4) pursuant to 28 U.S.C. § 2412(d)(1)(B), that any fee application be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement."  *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1167 (9th Cir. 2019) (en banc) (quoting *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 158 (1990)).  As discussed below, plaintiffs clearly satisfy these requirements.

"The clearly stated objective of the EAJA is to eliminate financial disincentives for those who would defend against unjustified governmental action and thereby to deter the unreasonable exercise of Government authority."  *Id*. at 1166 (quoting *Ardestani v. I.N.S.*, 502 U.S. 129, 138 (1991)).  "Congress specifically intended the EAJA to deter unreasonable agency conduct." *Id.* at 1166-67 (citing *Jean*, 496 U.S. at 163 n.11 and Pub. L. No. 96-481, §§ 201-08, 94 Stat. 2321, 2325-30 (1980)).  Therefore, when a party has prevailed against it, the burden shifts to the Government to prove that its position—both before and during the litigation—was substantially justified or that special circumstances make an award of attorneys' fees and costs unjust.  *Scarborough v. Principi*, 541 U.S. 401, 416-17 (2004); *Ibrahim*, 912 F.3d at 1168; *Love v. Reilly*, 924 F.2d 1492, 1495 (9th Cir. 1991).

1.  Plaintiffs are prevailing parties.

Under the EAJA, a party prevails when it has been granted "some relief by a court."  *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 603 (2001).[1]  To prove prevailing party status, an EAJA

---

[1] Although *Buckhannon* involved non-EAJA fee-shifting statutes, the Ninth Circuit has held that the requirements for a prevailing party announced in that decision are

1  petitioner must establish: (1) a "material alteration of the legal relationship of the
2  parties," and (2) a "judicial *imprimatur* on the change." *Id*. at 604-05.

3      A party prevails, and thereafter remains a prevailing party, when it has
4  obtained an enforceable settlement or consent decree. *Prison Legal News v.*
5  *Schwarzenegger*, 608 F.3d 446, 451 (9th Cir. 2010).  Plaintiffs accordingly
6  prevailed in this action by obtaining the Settlement in 1997.[2]

7      Further, Plaintiffs will have prevailed on the specific motion at issue if the
8  Court grants final approval to the parties' enforceable Settlement Agreement
9  establishing minimum standards and services for children detained at EISs.  *See*
10  Doc. # 1256-1.

11      2.  Plaintiffs' net worth is far less than $2,000,000.

12      Pursuant to 28 U.S.C. § 2412(d)(2)(B)(i), a party's "net worth [must] not
13  exceed $2,000,000 at the time the civil action was filed …."  The original named
14  plaintiffs in this action were indigent at the time this action commenced.  *See*
15  Declaration of Carlos Holguín, Exhibit A, ("Holguín") at ¶ 5.  Plaintiff class
16  members are generally indigent as well.  By definition, they are immigrant or
17  refugee children in federal custody because of their lack of immigration status.
18  Settlement ¶¶ 10-11; Holguín at ¶ 5 (affirming that *Flores* plaintiff class members
19  are on the whole indigent).

20

21

22
_____

23  applicable to EAJA awards as well.  *Perez-Arellano v. Smith*, 279 F.3d 791, 793-94
    (9th Cir. 2002).

24  [2] Plaintiffs are entitled to recover reasonable fees related to "compliance
    monitoring" of a settlement or injunction, even in the absence of new judicial relief.
25  *Balla v. Idaho*, 677 F.3d 910, 918-20 (9th Cir. 2012); *see also Prison Legal News*,
26  608 F.3d at 451 (reaffirming prior holding "that a party that prevails by obtaining a
    consent decree may recover attorneys' fees under § 1988 for monitoring
27  compliance with the decree, even when such monitoring does not result in any
    judicially sanctioned relief" (citing *Keith v. Volpe*, 833 F.2d 850, 855-57 (9th Cir.
28  1987))).

1    Plaintiffs accordingly meet the second requirement for an EAJA fee award.

2    *See Cobell v. Norton*, 407 F. Supp. 2d 140, 148 (D.D.C. 2005) ("[A]ffidavits signed

3    by the class representatives, attesting to the fact that their net worth fell within

4    EAJA statutory guidelines at the time the litigation was initiated … amply satisfy

5    the requirements of the statute for the entire class.").

6        3.  Defendants' position lacked substantial justification.

7        Because Plaintiffs are prevailing parties and meet the EAJA's net worth

8    standard, "an award of fees is mandatory under the EAJA unless the government's

9    position is substantially justified or special circumstances exist that make an award

10   of fees unjust." *Love*, 924 F.2d at 1495.  Defendants must carry the burden of proof

11   with respect to both factors. *Id.*; *see also Ibrahim*, 912 F.3d at 1167.

12       Plaintiffs have alleged that Defendants' position was without substantial

13   justification and that no special circumstances make a fee award unjust.  The

14   burden therefore shifts to Defendants to show their position was substantially

15   justified or that special circumstances would make a fee award unjust. *See*

16   *Scarborough*, 541 U.S. at 416-17; *see also In re Mgndichian*, 312 F. Supp. 2d 1250,

17   1255 (C.D. Cal. 2003) (prevailing party need only "alleg[e] that the government's

18   position was not substantially justified and that no special circumstances exist that

19   make an award unjust"); 28 U.S.C. § 2412 (d)(1)(B) ("A party seeking an award of

20   fees and other expenses … shall [] allege that the position of the United States was

21   not substantially justified.").

22       "The test for whether the government is substantially justified is one of

23   'reasonableness.'" *Gonzales v. Free Speech Coal.*, 408 F.3d 613, 618 (9th Cir.

24   2005).  Defendants must show that the government's position has "a 'reasonable

25   basis both in law and fact.'" *Meier v. Colvin*, 727 F.3d 867, 870 (9th Cir. 2013)

26   (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

27       In analyzing the reasonableness of the Government's position, a court

28   considers the totality of the circumstances, which incorporates both the underlying

governmental action and the Government's litigation position.  *See Ibrahim*, 912 F.3d at 1168 ("[T]he substantial justification test is comprised of two inquiries, one directed toward the government agency's conduct, and the other toward the government's attorneys' conduct during litigation."); *Kali v. Bowen*, 854 F.2d 329, 332 (9th Cir. 1988) (inquiry includes whether both the original action and the defense of the action was substantially justified); *see also Rawlings v. Heckler*, 725 F.2d 1192, 1196 (9th Cir. 1984).  Moreover, "the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items." *Ibrahim*, 912 F.3d at 1169 (quoting *Jean*, 496 U.S. at 161-62).  The Ninth Circuit has "consistently held that regardless of the government's conduct in the federal court proceedings, unreasonable agency action at any level entitles the litigant to EAJA fees." *Id.* at 1167 (quoting *Li v. Keisler*, 505 F.3d 913, 919 (9th Cir. 2007)).

Defendants will not succeed in demonstrating that the government's conduct was substantially justified.  In the five months before Plaintiffs filed their Motion to Enforce, thousands of children were subjected to unsafe and egregious conditions in EISs, in violation of paragraphs 11 and 12 of the Settlement.  Children reported wholly inadequate recreation and education, spending most of the day on their cots or beds with little to no structured activity or recreation.  *See* EIS MTE at 6-8.  At the Fort Bliss and Pecos EISs, children also reported unsanitary conditions and experiencing hunger after being served raw chicken and other inedible food.  *Id.* at 8-9.  Moreover, despite detaining children with serious mental health challenges, young children, and other particularly vulnerable children, EISs utilized unqualified personnel and lacked the standards and oversight necessary to meet children's mental health needs and keep them safe.  *Id.* at 10-14.

Children expressed feeling desperate and hopeless after spending weeks in EISs without meeting with a case manager or making progress toward release, in clear violation of the Settlement's requirements that Defendants "make and record

1    the prompt and continuous efforts on [their] part toward family reunification and

2    the release of the minor" and release minors "without unnecessary delay." *See*

3    Settlement ¶¶ 14, 18; EIS MTE at 11, 14-17, 22.  Defendants also failed to issue

4    any specific policy or guidance to ensure children were transferred to state-licensed

5    placements "as expeditiously as possible" and failed to fully utilize their existing

6    licensed bed capacity. Settlement ¶ 12; EIS MTE at 14-22.

7          During past unexpected increases in the number of children in ORR custody,

8    ORR detained children it could not accommodate in licensed facilities in "influx

9    care facilities" and developed minimal standards for such facilities to ensure basic

10    safety needs were met.  *See* Office of Refugee Resettlement, *ORR Guide: Children*

11    *Entering the United States Unaccompanied*, § 7 ("ORR Policy Guide"),

12    https://www.acf.hhs.gov/orr/policy-guidance/unaccompanied-children-program-

13    policy-guide-section-7.  However, EISs were not required to, and in practice did not

14    meet even the minimum standards ORR had determined necessary for influx care

15    facilities.  *See* ORR Field Guidance #13, Emergency Intake Sites (EIS) Instructions

16    and Standards at 1, April 30, 2021, https://acf.hhs.gov/orr/policy-guidance/uc-

17    program-field-guidance ("EIS are not designed or intended to provide the full range

18    of services available at traditional ORR care provider facilities or even Influx Care

19    Facilities.").

20          As soon as EISs began to operate, Plaintiffs' counsel began conducting

21    monitoring visits of the EISs and interviewing class members in custody at EISs.

22    Declaration of Mishan Wroe, Exhibit C ("Wroe") at ¶ 19.  Plaintiffs were deeply

23    concerned by the conditions in the EISs and reports from class members about

24    mistreatment and a lack of progress toward release.  *Id.*  The Parties began meeting

25    and conferring about Plaintiffs' concerns in April 2021.  Over the course of four

26    months, the Parties met and conferred multiple times, but unfortunately, litigation

27    was necessary to ensure basic standards at EISs were established and to guarantee

28    essential services are provided to children detained at EISs.  *Id.* at ¶ 18.

## B. Lodestar Calculation

Plaintiffs are entitled to an award of attorneys' fees for their work on the EIS MTE using the "lodestar" method. A "lodestar" figure for the amount of fees Plaintiffs should recover is calculated by multiplying the number of hours counsel reasonably dedicated by the inflation-adjusted EAJA hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Costa v. Comm'r of Soc. Sec. Admin*., 690 F.3d 1132, 1135 (9th Cir. 2012).[3]

The Ninth Circuit's inflation-adjusted EAJA base rate during 2021 and the first half of 2022, the years counsel worked to secure the Settlement Agreement, is published by the Ninth Circuit at https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates/ (last visited August 17, 2022). Plaintiffs also request fees for a paralegal's work and law clerk work at $120 per hour. *See Richlin Sec. Service Co. v. Chertoff*, 553 U.S. 571, 590 (2008) ("[A] prevailing party that satisfies EAJA's other requirements may recover its paralegal fees from the Government at prevailing market rates."); *Greenpeace, Inc. v. Stewart*, No. 17-35945, 2020 WL 2465321, at *7-8 (9th Cir. May 12, 2020) (approving EAJA statutory rate of $125 per hour for law student work performed between 2014 and 2017 based on prevailing market rates); *Nadarajah v. Holder*, 569 F.3d 906, 918 (9th Cir. 2009) (approving EAJA award including paralegal and law student fees at prevailing market rates); *Rosemary G. V. v. Saul*, No. 3:19-cv-00715-RBM, 2020 WL 6703123, at *5 (S.D. Cal. Nov. 12, 2020) (approving $130 hourly paralegal rate); *Lara v. Berryhill*, No. 2:16-CV-0034 DB, 2017 WL 4679989, at *3 (E.D. Cal. Oct. 18, 2017) (awarding fees for paralegal time at $100 per hour).

The hours counsel devoted to prosecuting this action, adjusted for time that was poorly documented or excessive, appear in the itemized time records annexed

---

[3] An increase over the base rate to account for inflation is granted in all but unusual circumstances. *Animal Lovers Volunteer Ass'n v. Carlucci*, 867 F.2d 1224, 1227 (9th Cir. 1989).

to the declarations of Plaintiffs' counsel.  Holguín at ¶ 10; *see also* Ex. B to Holguín; Declaration of Leecia Welch, Exhibit B, ("Welch") at ¶ 15; *see also* Ex. C to Welch; Wroe at ¶ 19; *see also* Ex. C to Wroe.  These hours multiplied by the Ninth Circuit's inflation-adjusted base rates yield a lodestar fee request of $394,385.67.  Wroe ¶ 24.  Plaintiffs request an additional $35,184.00 in paralegal and law clerk fees.  *Id*.

As will be seen next however, the Court should award Plaintiffs fees for senior counsel's work at "enhanced," or market, hourly rates.

### C. Special Factors Warrant a Fee Award at Market Rates for Plaintiffs' Senior Counsel

The EAJA authorizes the Court to award attorneys' fees at market rates where there is a "limited availability of qualified attorneys for the proceedings involved."  28 U.S.C. § 2412(d)(2)(A).  Enhanced hourly rates may be awarded where plaintiffs' counsel "possess 'distinctive knowledge' and 'specialized skill' that was 'needful to the litigation in question' and 'not available elsewhere at the statutory rate.'"  *Nadarajah*, 569 F.3d at 912 (quoting *Thangaraja v. Gonzales*, 428 F.3d 870, 876 (9th Cir. 2005) and *Love*, 924 F.2d at 1498); *see also Pierce*, 487 U.S. at 572 ("Examples … would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language.").

In *Nadarajah*, the Ninth Circuit found this test was satisfied where counsel had "distinctive knowledge and specialized skill in immigration law and, in particular, constitutional immigration law and litigation involving the rights of detained immigrants" and this skill was "needful to the litigation in question."  569 F.3d at 912-15 (quoting *Thangaraja*, 428 F.3d at 876); *see also Fang v. Gonzales*, No. 03-71352, 2006 WL 5669901, at *3 (9th Cir. Oct. 30, 2006) ("Counsel Smith's specialized skills and distinctive 'knowledge of … particular esoteric nooks and crannies of immigration law,'" allowed her "to succeed in obtaining relief from removal for Fang." (quoting *Thangaraja*, 428 F.3d at 876)).  In *Nadarajah*, the

1    Ninth Circuit accordingly awarded the prevailing party's most experienced

2    attorneys fees at enhanced rates.  569 F.3d at 916-18.

3         In *Orantes-Hernandez v. Holder*, 713 F. Supp. 2d 929 (C.D. Cal. 2010), the

4    Government moved to dissolve an injunction requiring immigration authorities to

5    follow specific procedures when detaining, processing and removing Salvadoran

6    nationals.  *Id.* at 936.  The court largely denied the motion, and the plaintiffs sought

7    EAJA fees at market rates because defending against the Government's motion

8    required specialized knowledge of, *inter alia*, the history of the litigation that had

9    resulted in the injunction.  *Id*. at 959-63.  In addition to special knowledge of

10   immigration law and procedure and complex civil litigation, the court found that the

11   prevailing parties' counsel "by virtue of their long involvement in this litigation,

12   possess[ed] distinctive knowledge crucial to litigation of this complicated case," *id.*

13   at 961, and had specialized skills—including proficiency in Spanish—that were

14   necessary to defend the injunction.  *Id*. at 960-63.

15        1.  <u>Plaintiffs' counsel possess distinctive knowledge and specialized skill that</u>

16        <u>was necessary to the litigation.</u>

17        Similar to *Orantes-Hernandez* and *Nadarajah*, Plaintiffs' senior counsel here

18   have extensive experience, knowledge and specialized skill in immigration law,

19   youth law, and more particularly, the rights of detained immigrant and asylum-

20   seeking children as they exist at the intersection of the Settlement, the Homeland

21   Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 ("HSA"), the William

22   Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L.

23   No. 110-457, 122 Stat. 5044 ("TVPRA"), and the United States Constitution.

24        First, Plaintiffs' senior counsel are highly skilled litigators with vast expertise

25   in representing immigrants, refugees, and youth.

26        In 2017, this Court awarded Plaintiffs fees under EAJA for the work of class

27   counsel, Carlos Holguín, at a market rate, upon finding that he possesses "intimate

28   knowledge of the Agreement"; that "[i]n addition to litigating the matter that led to

the Agreement, … Holguin [has] been involved with monitoring the government's compliance with the Agreement since its inception"; and that he is "therefore uniquely positioned to efficiently litigate the enforcement action in question." *Flores v. Sessions*, No. CV 85-4544, 2017 WL 8943169, at *4 (C.D. Cal. Nov. 14, 2017) ("Family Detention Fees Order").[4]

Co-counsel Leecia Welch is a national expert in the area of child welfare and has spent the majority of her career representing children and youth in cases focused on enforcing their statutory and constitutional rights.  Declaration of John F. O'Toole, August 15, 2022, Exhibit E ("O'Toole") ¶¶ 9-13; Declaration of Richard M. Pearl, August 19, 2022, Exhibit F ("Pearl") ¶ 12.  Ms. Welch's specialized expertise at the intersection of child welfare law, complex federal class action litigation and consent decree enforcement, and the rights of detained immigrant children, her extensive personal involvement in litigating on behalf of detained immigrant children in this case and related litigation, and the National

---

[4] Class counsel Holguín is among the leading lawyers litigating class actions on behalf of immigrant and refugee children.  *See Perez-Olano v. Gonzalez*, 248 F.R.D. 248 (C.D. Cal. 2008); *League of United Latin Am. Citizens v. Wilson*, 908 F. Supp. 755 (C.D. Cal. 1995).  In the instant matter, he has argued for the Plaintiff class numerous times before this Court, the Ninth Circuit, and the U.S. Supreme Court, and numerous reported decisions have resulted therefrom.  *Flores v. Meese*, 681 F. Supp. 665 (C.D. Cal. 1988); *Flores v. Meese*, 934 F.2d 991 (9th Cir. 1990); *Flores v. Meese*, 942 F.2d 1352 (9th Cir. 1991) (en banc); *Reno v. Flores*, 507 U.S. 292 (1993); *Flores v. Johnson*, 212 F. Supp. 3d 864 (C.D. Cal. 2015); *Flores v. Sessions*, 862 F.3d 863 (9th Cir. 2017). He "is among a very few advocates for immigrant children's rights in the country with the knowledge and experience needed to give the *Flores* class a fair chance of prevailing against ORR." Declaration of Justin Mixon, October 23, 2017, Exhibit D ("Mixon") ¶ 6.  He is able to communicate with detained class members in Spanish, the language the vast majority speak, has deep knowledge of the Settlement and the litigation and negotiations that preceded the Settlement, and has for years monitored Defendants' treatment of and policies and practices toward detained immigrant and refugee children.  Holguín at ¶¶ 6-7.

Center for Youth Law's institutional knowledge of this litigation, uniquely positioned her to litigate Plaintiffs' enforcement motion. O'Toole ¶¶ 14-16; Pearl ¶¶ 12-13; Welch ¶¶ 5, 10-11, 17-18.

Second, successfully litigating the motion to enforce required Mr. Holguín and Ms. Welch's specialized expertise regarding immigrant children's rights under the Settlement, the minimum child welfare standards necessary to ensure safety of children in custody, and an understanding of how the Government's immigration detention system operates in practice. O'Toole ¶ 15 ("I believe that the issues surrounding the existence of unlicensed Emergency Intake Sties and their lack of enforceable standards could not have been successfully litigated without Ms. Welch's specialized expertise, including her expertise on the welfare of children held in irregular, unlicensed placements, and her understanding of the immigration detention system and children's rights under the *Flores* Settlement and the TVPRA.").

2.  Other qualified counsel is unavailable at the statutory rate.

The motion at issue in this litigation involved the Government's unprecedented decision to detain unaccompanied children in unsafe emergency intake sites without enforceable standards or sufficient services. As class counsel in this case, Plaintiffs' counsel were uniquely positioned to investigate conditions at EISs, meet with detained children, and pursue relief on their behalf.

Moreover, few, if any, other lawyers in the country could have or would have prosecuted a class-wide action on behalf of indigent, non-English-speaking children, whom Defendants sought to deprive of the protections of the *Flores* Settlement Agreement. Even if alternative private attorneys were able to pursue this litigation, other qualified attorneys would have been highly unlikely to take this case at the statutory rate:

> [F]ew members of the immigration bar regularly engage in federal court litigation; those who do, typically pursue cases on behalf of individual clients; and only a very small number are willing and able to prosecute class actions,

or indeed, any federal litigation in which a favorable outcome is not reasonably
assured with a minimal investment of time and money.

Mixon ¶ 11; *accord* Declaration of Kristen Jackson, October 16, 2017, Exhibit G
¶ 5 ("[I]n my experience few legal aid lawyers or members of the private bar are
willing to dedicate the time and resources to undertake federal litigation on behalf
of detained immigrant and refugee minors.  When private practitioners do pursue
federal litigation, they typically charge much more than the inflation-adjusted
EAJA statutory rate."); O'Toole ¶ 16 ("[D]ue to the specialized nature of Ms.
Welch's expertise, I believe that it would have been impossible to find
appropriately qualified attorneys with the requisite knowledge of the *Flores*
Settlement and complex child welfare litigation to undertake this representation at
the inflation-adjusted EAJA rate."); Pearl ¶ 13 ("[Ms. Welch's] practice specialties
were patently useful in this case and in the instant motion to enforce … I am certain
that her distinctive expertise and skills are not available at the EAJA statutory
maximums (plus COLA's) or anything close to those rates.").

These factors warrant the Court's awarding attorneys' fees at rates "in line
with those [rates] prevailing in the community for similar services by lawyers of
reasonably comparable skill, experience and reputation." *Nadarajah*, 569 F.3d at
916 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 & n.11 (1984)).

3.  Market rates for Plaintiffs' senior counsel.

As appears in the Declaration of Carol Sobel, Sept. 27, 2021, Exhibit H
("Sobel") ¶ 20, Mr. Holguín's hourly market rate in 2020 was $905 and in 2021 is
$935.  Ms. Sobel is a Los Angeles attorney whose expertise in market rates courts
have repeatedly recognized.  *See, e.g., Nadarajah*, 569 F.3d at 912-13; *Orantes-
Hernandez*, 713 F. Supp. 2d at 959 n.44.  Plaintiffs request the Court award fees for
Mr. Holguín's work in 2021-2022 at $800 per hour, well below his actual market
rate.

Market rates for Leecia Welch are supported in the declaration of Richard
Pearl, a California attorney specializing in issues related to court-awarded

attorneys' fees.  Pearl ¶¶ 3-8.  Courts have frequently relied on Mr. Pearl's opinions and writings on court-awarded attorneys' fees.  Pearl ¶¶ 4-8.  Plaintiffs request the Court award fees for Ms. Welch's work in 2021 at $690 per hour and in 2022 at $720 per hour.  Pearl ¶ 14.

### D. Plaintiffs Should Be Awarded Their Reasonable Costs

Congress crafted the EAJA to "reduce the deterrents and disparity by entitling certain prevailing parties to recover an award of attorney fees, expert witness fees, and other expenses against the United States."  H.R. Rep. No. 96-1418 at 6, 1980 U.S.C.C.A.N. at 4984.  The EAJA therefore provides for the award of costs as enumerated in 28 U.S.C. § 1920, and for "fees and other expenses."  28 U.S.C. § 2412(a), (d)(1)(A). Plaintiffs request the Court award them costs totaling $43,906.48.  Wroe ¶ 18; Ex. B to Wroe; Welch ¶ 12; Ex. B to Welch.  Nearly all of the costs requested by Plaintiffs arise out of site visits by Plaintiffs' counsel to EISs.  These visits were essential for Plaintiffs' counsel to investigate conditions at EISs, interview children detained at these facilities, and develop the factual basis for Plaintiffs' Motion to Enforce.  Wroe ¶¶ 17-18.

Plaintiffs' total fees request, with senior counsel's time billed at enhanced rates, additional counsel's time billed at inflation-adjusted EAJA base rates, paralegal and law clerk fees billed at market rates, and reasonable costs incurred is $694,369.42.  Wroe ¶ 24.

### IV.   CONCLUSION

For the foregoing reasons, this Court should award Plaintiffs attorneys' fees and costs pursuant to 28 U.S.C. § 2412(d) as herein requested.

Dated: August 29, 2022       CENTER FOR HUMAN RIGHTS AND
                             CONSTITUTIONAL LAW
                             Carlos R. Holguín

                             NATIONAL CENTER FOR YOUTH LAW
                             Neha Desai

Melissa Adamson
Mishan Wroe
Diane de Gramont

CHILDREN'S RIGHTS
Leecia Welch


*/s/     Mishan Wroe*
Mishan Wroe
*One of the Attorneys for Plaintiffs*