# Exhibit H

DECLARATION OF CAROL A. SOBEL

I, CAROL A. SOBEL, declare:

1. I am an attorney admitted to practice before the Supreme Court of the State of California, United States District Courts for the Central District of California and the Eastern District of California, the Ninth Circuit Court of Appeals and the Supreme Court of the United States.  This declaration is submitted in support of the fees requested by counsel at CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW in this matter. The declaration is based on personal knowledge and, if called to testify to the facts set forth below, I could and would do so competently.

2. I graduated from law school and was admitted to practice in 1978.  Following 20 years with the ACLU Foundation of Southern California, I entered private practice in April of 1997. My practice primarily involves complex civil rights litigation, focusing on the rights of homeless persons, First Amendment rights and police practices. Exhibit "1" is my resumé.

3. I received many awards for my legal work over the years. In 2008, I was named a California Lawyer of the Year (CLAY) for civil rights by California Lawyer Magazine. That same year, I was also named a Top 75 Women Litigators in California by the Daily Journal Corporation. In 2007, I received an Angel Award from California Lawyer Magazine for pro bono work and was also named by the Daily Journal as one of the Top 100 Most Influential Lawyers in California. In 2013, 2014, and 2017, I was named one of the top women lawyers in Los Angeles or Southern California. In the past, I received several awards from the ACLU Foundation of Southern California, including the First Amendment Award. In June 2017, I received a lifetime award from the ACLU Foundation of Southern California. I have been named as a SuperLawyer in the area of First Amendment or civil rights litigation consistently for more than a decade. Additional recognition of my legal work is set forth in my attached resumé.

4. For the six years prior to 1997, I held the position of Senior Staff Counsel in the legal department of the ACLU Foundation of Southern California. During that time period, I was responsible for preparing many of the fee motions in cases where the

1

ACLU represented the prevailing party. Because the ACLU does not bill clients on an hourly basis for its services, I was required to obtain information to establish reasonable market rates for the ACLU lawyers.

5.  It was my practice to obtain current billing rates for lawyers of comparable skill and experience at several firms throughout the City. I did this on an annual basis, contacting partners who were familiar with the ACLU lawyers in question so that they could make an informed judgment about the comparable skill levels of the attorneys at their firms whose rates were then used to establish ACLU billing rates. At the time that I consulted these individuals, I was aware that the partners had been personally involved as pro bono counsel with the ACLU and worked with the ACLU lawyers for whom I sought to establish market billing rates, so they were able to assess the skill and experience of the ACLU lawyers based on personal knowledge.

6.  Since entering private practice, I have continued to survey fee motions submitted by private firms each year to obtain relevant comparisons for billing rates. I generally begin this process the first time in each year I prepare a fee motion, or enter into settlement discussions regarding fees. As part of my survey, I make it a point to obtain information concerning rates for attorneys in both larger law firms engaged in complex litigation, as well as smaller boutique civil rights law firms.

7. To obtain information concerning rates charged by attorneys in the Southern California legal market, I also review attorney fee applications and awards in cases other than my own.  Specifically, I regularly review fee applications submitted by, and awards to, private attorneys practicing the range of civil rights law, As well as court awards made to the ACLU, Disability Rights Legal Center ("DLC"), Disability Rights Advocates, Asian Americans Advancing Justice, Public Counsel, the Western Center on Law and Poverty ("WCLP"), MALDEF and other public interest groups in Los Angeles. I also review fee motions filed by private civil rights and public interest firms and attorneys, including McLane Bednarski & Litt; Schonbrun Seplow Harris Hoffman & Zeldes; Hadsell Stormer & Renick; The Cochran Firm; Rosen Bien Galvan & Grunfeld; and Altschuler Berzon, among other firms.

8. Because many of the cases brought by public interest groups are co-counseled by attorneys at private commercial firms, I have access to those billing rates as well. In addition to these two methods, when I become aware of a case where statutory fees are sought, I regularly obtain fee applications and any resulting awards from on-line public records for the courts, as well as from legal research databases such as LEXIS and Westlaw. Included in my review of fee applications and awards are those by, and awards to, large firms engaged in complex litigation to assess customary billing rates for these firms, many of which also serve as pro bono counsel in public interest cases. I estimate that I review around 100 or more fee motions and fee awards annually.

9. My declarations in support of fee applications for civil rights and public interest attorneys have been cited repeatedly by courts as evidence of reasonable market rates. For example, in *Nadarajah v. Holder,* 569 F.3d 906, 912-914 (9th Cir. 2009), the Ninth Circuit referenced my declaration with approval in support of the application of attorneys from the ACLU for fees under the Equal Access to Justice Act ("EAJA"). Two recent decisions in which the Court noted with approval my declaration as admissible evidence of market rates include *S.G. v. City of Los Angeles*, Case No. 17-cv-9003 JAK - MRWx (C.D. Cal. Apr. 12, 2021) [Dkt. 266 at p. 6]; and, *Ubaldo Arroyo, et al. v. United States Department of Homeland Security, et al., Case No.* SACV 19-815 JGB (SHKx) (C.D. Cal. Jan 2, 2020) [Dkt. 53 at p. 7].

10. Other cases in which courts cited to my declaration as evidence to award reasonable market rates include *Torrance Unified School District v. Magee*, 2008 U.S. Dist. LEXIS 95074 (CD CA 2008), granting fees pursuant to the federal IDEA statute, 20 U.S.C. §1415(i)(3)(c), the Court cited to my declaration as persuasive evidence of market rates. In *Atkins v. Miller*, CV 01-01574 DDP (CD CA 2007), the Court awarded fees to a 1975 graduate at $675 an hour, citing to my declaration and that of Barry Litt to support the rates. Id. at pp. 8-9 and n.4. Other cases in which my declaration was cited favorably include this Court's order in *Charleroi v. Angels Baseball LP*, SAC 10-0853 DOC(May 30, 2012);*Orantes-Hernandez v.Holder*, 713 F.Supp.2d 963-964(C.D.Cal.2010); *Hiken v. DOD*, 2013 U.S. Dist. LEXIS 118165 (N.D. Cal. Jan. 14,

2013), *Vasquez v. Rackauckas*, 2011 U.S. Dist. LEXIS 83696 (C.D. Cal. 2011); *Rauda v. City of Los Angeles*, 2010 U.S. Dist. LEXIS 138837 (C.D. Cal. 2010); *Jochimsen v. County of Los Angeles, supra*; *Dugan v. County of Los Angeles*, Case No. cv-11-08145 CAS (C.D.Cal. March 3,2014); *Carrillo v. Schneider Logistics*, Case: 12-55042 (9th Cir. 2014); *Flores v. City of Westminster*, SA-CV-11-0278 DOC (C.D. Cal. Oct. 23, 2014); *Webb v. Officer J. Ackerman*, 13-CV-01992 PLA (C.D. Cal. January 4, 2018), Doc. 180, p.5;  *Garza v. City of Los Angeles*, 2:16-cv-03579-SVW-AFM, 2018 U.S. Dist. LEXIS 227294, (C.D. CA  2018); and *Wagafe v. Trump*, Case No. 2:17-CV-00094-RAJ (W.D. WA 2019).  Recently, the Circuit cited my declaration in approving EAJA rates to the ACLU in *Gomez-Sanchez v. Barr, sub nom Gomez-Sanchez v. Sessions,* 892 F.3d 985 (9th Cir. 2018).  *Jochimsen* held that I was qualified to opine on reasonable market rates.

11.    In addition, I have litigated statutory fee issues at the appellate level in several of my cases. Most notably, I was lead counsel before the California Supreme Court in *Tipton-Whittingham v. City of Los Angeles*, 34 Cal.4th 604 (2004), the companion case to *Graham v. Daimler-Chrysler*, 34 Cal.4th 533 (2004), establishing the continued vitality of the "catalyst" fee doctrine in California courts. I was also lead counsel in *Jones v. City of Los Angeles*, 555 Fed.Appx. 659 (2014), establishing entitlement to fees as a "prevailing party" based on the Ninth Circuit's necessary approval of a settlement that was conditioned on vacatur of the panel decision.

12.    My present billing rate is $1100 an hour.  As my resumé indicates, my primary areas of practice involve complex constitutional cases, focusing on homelessness litigation, First Amendment issues, and Fourth and Fourteenth Amendment claims.  In the past, I also litigated employment discrimination cases.  The *Tipton-Whittingham* case discussed in paragraph 11 was a class-action employment discrimination case against the Los Angeles Police Department on behalf of female employees.  It was one of several class-action challenges on behalf of women in then non-traditional employment (police officers, firefighters, correctional officers) in which I was counsel.

13.   Although I litigate some less expansive individual cases, my primary focus is impact litigation, including multi-plaintiff cases and class actions. While some of my cases may be more simple than others, I use the same rate in all cases on the premise that my skill generally allows me to handle a simpler case in fewer hours than it would take a less experienced attorney.  I understand this approach to rates to be consistent with Ninth Circuit authority.  *See Van Skike v Director, Office of Workers' Compensation Programs*, 557 F3d 1041, 1046 (9th Cir. 2009) (relative "simplicity" or "complexity" of a case is reflected in the efficiency of hours, not the lodestar rate.

14.   I have not filed a fee motion at my current 2021 rate; however, my rates were approved in several recent class actions where the Court was required to conduct an independent lodestar analysis of the attorney fees.   In *Charmaine Chua v. City of Los Angeles*, *et al.*, Case 2:16-cv-00237-JAK-GJS (C.D. Cal. 2020) [Dkt. 158], the Court approved the fees to class counsel, including $1000 an hour for me based on 2019 rates. [Dkt. 147].   In May 2019, I applied the rate of $1,000 an hour to calculate my fees in *Mitchell v. City of Los Angeles*, Case No. 2:16-cv-01750-SJO-JPR (C.D. Cal.). In addition, I settled several cases in 2018 applying $975 an hour for the lodestar.  The most recent fee awards I received in a contested fee motion were in 2014. I applied a rate of $875 in *Desertrain v. City of Los Angeles*, 754 F.3d 1147 (9th Cir. 2014).   The parties settled the trial court and appellate fees together with a five percent reduction of the appellate lodestar. The Ninth Circuit then approved the full requested fee award at the 2014 rate of $875 an hour.  *See CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1098 (9th Cir. 2015).

14.   My opinion on the reasonableness of the rates sought by counsel in this matter is based on comparisons to rates approved for attorneys of comparable skill, experience and reputation in the Los Angeles legal market, where the attorneys are based. In all of the fee declarations that I prepare, I apply my understanding of *Blum v. Stenson*, 465 U.S. 886 (1984), that "rates charged in private representations may afford relevant comparisons." *Id.* at 895 fn. 11.  I understand this to mean that fees for

civil rights lawyers should approximate rates charged by attorneys of comparable skill, experience and reputation in the relevant legal market and engaged in similarly complex litigation, regardless of whether the attorneys work for a non-profit, represent individuals on contingency, serve as in-house counsel, or charge a minimal rate for paying clients with the possibility of receiving a market rate award if successful. *See, Nadarajah v Holder,* 569 F3d at 910 (awarding market rates to attorneys at the ACLU).

15. I apply several additional principles to analyze reasonable market rates. First, when available, I look to rates awarded to the attorney in previous cases based on my understanding that such awards are strong evidence of reasonable market rates. *See Chaudhry v. City of Los Angeles*, 751 F3d 1096, 1111 (9th Cir. 2014); *U.S. v. $28,000 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015); *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 976 (9th Cir. 2008).

16. Next, I look to evidence of billing rates by attorneys engaged in similarly complex business litigation as an approved method of establishing reasonable market rates for civil rights attorneys who do not regularly bill clients on an hourly basis. This approach recognizes that most civil rights attorneys are not paid hourly for their services at market rates. *See e.g.,* Pearl, *California Attorney Fee Awards*, CEB 2012, §9.109 (2012). Evidence of billing rates for other attorneys that I rely on is drawn from fee awards as well as declarations regarding rates filed in pending cases. Such evidence is one of the most common ways to establish market rates. *See e.g., Beauchamp v Anaheim Union High Sch. Dist,* 816 F.3d 1216, 1224 (9th Cir 2016); *U.S. v $28,000 in U.S. Currency*, 802 F3d at 1106 (district court erred by ignoring plaintiff's supporting rate declarations); and *Chaudhry*, 751 F3d at 1111.

17. As noted above, I review a combination of approximately 100 fee motions, fee awards, and supporting declarations in the course of a year. I obtain this information from court orders awarding statutory fees or awarding fees as a discovery sanction. I subscribe to several websites that report legal news. If I learn of a case where there is likely to have been a fee motion, I review the docket and obtain a copy

of any fee motion, supporting declarations and fee award from public sources, including on-line documents for the courts and PACER. In addition, if I provide a fee declaration and the opposition then files an expert challenging the proposed rates, I search PACER and the various Superior Court dockets to find cases where the defense expert provided fee declarations, as well as cases where the same expert filed a declaration supporting high market rates in fee-shifting cases.

18. I do not rely on surveys if other more specific comparative information is available. General rate surveys do not provide specific rates by years of experience but, instead, rely on an average or "range" of fees, often covering attorneys with unequal experience in a single category and capping rates after approximately 25 years. *See Jordan v. Multnomah County*, 815 F.2d 1258, 1263-64 (9th Cir. 1987). In addition to the absence of information about how long the various partners and associates are practicing, there is often no indication of whether they do transactional law, anti-trust, or other similarly complex litigation.

19. If I rely on decisions that are more than two years old, I extrapolate a comparable current rate by applying a modest increase of 3.1 percent. This is the average amount of the increase in the legal services component of the Consumer Price Index. The data is available at http://www.bis.gov/news.release/cpi.102.htm (Table 2. Consumer Price Index for All Urban Consumers (CPI-U): U.S. city average, by detailed expenditure category). *Hiken v. DOD* underscored that "market rates in effect more than two years *before* the work was performed" are not current rates under the lodestar analysis. 802 F.3d at 1107 (9th Cir. 2016) (emphasis in original).

20. I am informed that counsel seek EAJA enhanced rates for 2019 through 2021. In my opinion, the rates sought by these attorneys have been historically lower than other civil rights attorneys in the Los Angeles legal market. In my opinion, market rates in the lower to middle range of hourly rates recently approved for comparably skilled attorneys in the Los Angeles legal market engaged for work on similarly complex federal litigation are as follows:

| Attorney | Admitted | 2018 | 2019 | 2020 | 2021 |
|---|---|---|---|---|---|
| Peter Schey | 1973 | $925 | $950 | $1050 | $1100 |
| Carlos Holguin | 1979 | $825 | $855 | $905 | $935 |

21.   I am very familiar with both of the attorneys for whom fees are sought in this motion. Mr. Hoguin was in the class behind me in law school.  Mr. Schey was co-counsel on cases with the ACLU shortly after I first began working there in 1977, including the *Flores* case.  Based on my involvement in the Los Angeles legal market as a civil rights attorney for 40 years, I am aware that each is a highly skilled and respected immigration attorney.  While I have not worked with them on litigation, several of my former colleagues at the ACLU did and have expressed their views that each is highly skilled, has considerable expertise in immigration law and enjoys an excellent reputation.

22.     Based on my experience reviewing fee awards and fee applications, I believe that the rates they seek by this motion are well within the range of reasonable rates in the Los Angeles legal market for attorneys of comparable skill, experience and reputation.  I am aware that this Court previously approved rates for each in an order awarding fees in *Flores v. Sessions*, Case No. 2:85-cv-04544-DMG-AGR (C.D. CA 2017) [Dkt 383].  In that decision, the approved EAJA enhanced rates were $875 for Peter Schey and $725 an hour for Carlos Holguin.  The 2017 rate approved for Mr. Schey was the same rate approved for me by the Ninth Circuit in 2014.  At the time, Mr. Schey had eight more years of experience than I did in 2014.  Dkt. 383, p.6.

23.     I am also aware that the Court approved the EAJA enhanced rate for 2019 of $950 an hour for Mr. Schey. *Flores v. Barr*, Case 2:85-cv-04544-DMG-AGR (C.D. CA 2019) Document 702, p. 5.

24.     To support my opinion on the reasonableness of the rates sought by this motion, I attach fee awards and supporting declarations in several recent civil rights cases in the Los Angeles legal market.  Each document is a true and correct copy of the document as it appears in the Court's files.  It is my opinion that the attorneys identified in these decisions have skills and experience similar to, and in some instances less than,

the attorneys for whom fees are sought in this motion.

25.    While I rely primarily in my declaration on orders approving enhanced EAJA fees, I also looked to approved rates in other civil rights litigation.  The Ninth Circuit has repeatedly recognized that comparable rates are not limited to the specific area of litigation.  "[T]he proper scope of comparison is not so limited, but rather extends to all attorneys in the relevant community engaged in 'equally complex Federal litigation,' no matter the subject matter."  *See Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (quoting *Blum*, 465 U.S. at 893)). *See also*, *Van Skike, supra,*, 557 F.3d at 1046-47.

26.    Attached at Exhibit 2 is the Order approving attorney fees in *Franco-Gonzalez v. Holder*, Case No. 2:10-cv-0221 DMG - DTB (CD Cal. 2015).  The Court's Order approved the fees at the requested rates as part of a lodestar review in a class action.  Because the Court's Order did not identify the specific attorneys and EAJA enhanced rates approved, I attach the declaration I provided in support of the requested attorney fees.  A true and correct copy of my declaration is attached at Exhibit 3.

27. In *Franco-Gonzalez,* the 2014 and 2015 rates for James Preis were $850 and $875 an hour.  I knew Mr. Preis for several decades and am aware that he was at Mental Health Advocates Services ("MHAS") in Los Angeles for most of his career.  Mr. Preis was a 1978 law graduate, five years behind Peter Schey's and one year ahead of Carlos Holguin's graduation and admission to the Bar.   Mr. Preis' 2014 rate was $850 and his approved 2015 rate was  $875 an hour. Ex. 3, p. 3.

28.    Attached at Exhibit 4 is the July 2019 Order of the Ninth Circuit approving EAJA fees to attorneys at the ACLU of Southern California in *Gomez-Sanchez v. Barr*, Case No. 14-72506. The fees were awarded to Ahilan Arulanantham, along with two other attorneys at the ACLU of Southern California. The top rate for Mr. Arulanantham for the year 2018 was $785 an hour. Ex. 4, p. 3.  I am familiar with both of these attorneys from my work with the ACLU.   I am aware based on my personal involvement with Mr. Arulnantham that he is a 1999 law graduate. With 20 years more experience in 2018, Carlos Holguin seeks a 2018 rate that is only $40 above the 2018

rate approved for Ahilan Arulanantham in *Gomez-Sanchez.*

29.    Attached at Exhibit 5 is the Order approving fees in *Wagafe v. Trump,* Case No. 2:17-CV-00094-RAJ (W.D. WA 2019). The Court approved an award of fees as a discovery sanction. The attorneys included a number of attorneys from Los Angeles, including Jennifer Pasquarella of the ACLU of Southern California.  I provided a declaration regarding 2018 market rates.  I co-counseled cases with Ms. Pasquarella and am personally familiar with her skills and experience.

30.    As my starting point, I calculated that the comparable Los Angeles market rate for 2018 would be $682 an hour for a 2006 graduate.   The rate approved for Ms. Pasquarella, reflecting a small downward adjustment for the local legal market, was $646,64.  Ex. 5, p. 12.  Based on my personal interactions, I am aware that Ms. Pasquarella is a 2006 law graduate.  The difference in the Los Angeles legal market rate I applied for Ms. Pasqueralla in *Wagafe* and the 2018 rate sought by Carlos Holguin is $143.  With 27 years additional experience, this amounts to an annual increase of little more than five dollars a year, with no adjustment even for a rise in base salary to adjust for cost-of-living increases.

31.    Attached at Exhibit 6 is the Order approving EAJA fees in *Arroyo v. United States Dept. of Homeland Security, et. al.*, SA CV 19-815 JGB (C.D. Cal. Jan. 1, 2020). The motion was applied 2019 rates. [Dkt. 50] The Court awarded the rates and noted, in part, that the Court reviewed my declaration to support the reasonableness of the rates.  *Id.* at p. 7. [Dkt. 53]  The Order does list the approved rates and the motion and attachments are under seal.  I reviewed the my declaration and, on that basis, confirmed that the enhanced 2018 and 2019 EAJA rates for attorneys at the ACLU.

32.    The three attorneys in *Arroyo* included Ahilan Arulanantham, discussed above. Mr. Arulanantham's 2018 rate in *Arroyo* was $785 an hour, $40 an hour below the 2018 rate requested by Mr. Holguin in this motion.  Mr. Arulanantham's 2019 2019 rate was $810 an hour, just $40 an hour below the 2019 rate sought by Carlos Holguin, with two decades more experience than Mr. Arulanantham had in 2019

33.    Attached at Exhibit 7 is the Order approving attorney fees in *Rodriguez*

*Castillo v. Nielsen*, Case 5:18-cv-01317-ODW-KES (C.D. CA May 6, 2020) [Dkt. 63]. The District Court approved the requested enhanced EAJA rates of $785 for 2018 and $810 for 2019 for Ahilan Arulanantham, *Id.* at p. 10.

34.     Attached at Exhibit 8 is a true and correct copy of the order awarding attorneys fees in *Pinter-Brown v. University of California-Los Angeles*, LASC Case No. 624838.  The Court approved the rate of $1,100 an hour for Carney Shegerian. Based on my review of the information based on the firm's website and the State Bar, I believe that Carney Shegerian is a 1990 admittee.  In 2018, he had 28 years of experience, 17 and 11 years less than Mssrs. Schey and Carlos Holguin, respectively. Mr. Shegerian's 2018 rate is $50 above the 2021 rate now sought by Mr. Schey.

35.     Attached at Exhibit 9 is the order approving final settlement of a class action and fees for plaintiffs' counsel in *McKibben v. McMahon, et al.*, Case 5:14-cv-02171-JGB-SP (C.D. CA 2019) [Dkt. 103].   The Court approved the requested fee application, based on 2018 rates, including $1,150 an hour for attorney Barrett S. Litt and $875 an hour for attorney David McLane.

36.     In addition to the attached fee awards, I reviewed the docket in *Duncan Roy v. County of Los Angeles*,  12-cv-09012 AB (C.D. CA).  I filed a supporting declaration on the reasonableness of requested rates in a motion for fees currently pending before the district court.  Based on my review of the motion filed by Plaintiffs and the supporting declaration I provided, I am aware that class counsel seek a 2021 rate of $1,275 an hour for Barrett S. Litt, a 1970 law graduate (p.52) (Dkt. 615-2, p.52) and $975 an hour for 2021 for Peter Eliasberg, a 1994 law graduate. (Dkt. 615-2, p. 58).  The motion also seeks fees for Ahilan Arulanantham at the 2021 rate of $875.

37.  The chart below summarizes rates by year referenced in my declaration.

| Attorney | Grad Yr. | 2018 | 2019 | 2020 | 2021 |
|----------|----------|------|------|------|------|
| Litt | 1970 | --- | $1150 | --- | $1275 |
| Hoffman | 1976 | --- | $1050 | --- | |
| Preis | 1978 | $850 | --- | | --- |
| Sobel | 1978 | --- | $1050 | --- | $1100 |

| McLane | 1986 | --- | $875 | --- | --- |
| Shegerian | 1990 | $1,100 | --- | --- | --- |
| Eliasberg | 1994 | --- | --- | --- | $950 |
| Arulanantham | 1999 | $785 | $810 | --- | $875 |

38.   Based on the foregoing, it is my opinion that the rates sought herein are reasonable for attorneys of comparable skill, experience and reputation in the Los Angeles legal market.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 27th day of September, 2021 at Santa Monica, California.

*Carol Anne Sobel*

CAROL A. SOBEL

Exhibit 1 to Sobel Declaration

# CAROL A. SOBEL

725 Arizona Avenue• Suite 300 • Santa Monica, CA 90401 •
Tel. 310 393-3055 • Email carolsobellaw@gmail.com

## Employment:

| | |
|---|---|
| LAW OFFICE OF CAROL A. SOBEL<br>Solo civil rights law firm. | APRIL, 1997 TO PRESENT |

SENIOR STAFF COUNSEL                                                                1990 TO APRIL, 1997
*ACLU Foundation of Southern California*

Responsible for conducting civil rights and civil liberties litigation in state and federal courts in California;
supervise litigation by ACLU volunteer counsel and other ACLU legal staff.

STAFF ATTORNEY                                                                           1985 TO 1990
*ACLU Foundation of Southern California*

Civil liberties litigation, primarily in the areas of Establishment Clause and Free Exercise violations, as well as other
First Amendment rights.

ASSOCIATE DIRECTOR                                                                    1979 TO 1985
*ACLU Foundation of Southern California*
*American Civil Liberties Union of Southern California*

Under the direction of the Executive Director, responsible for administration of two non-profit organizations,
including working with Boards of Directors on development of policy on civil liberties issues.  Engaged in litigation
and assisted Legal Director in coordination and supervision of pro bono attorneys.

DEVELOPMENT DIRECTOR                                                              1977 TO 1979
*ACLU Foundation of Southern California*
*American Civil Liberties Union of Southern California*

Responsible for conducting a variety of fundraising efforts to meet a million-dollar plus annual budget for a
501(c)(3) and a 501(c)(4).

## Admitted to Practice:

| | |
|---|---|
| California Supreme Court | November, 1978 |
| United States Supreme Court | September, 1991 |
| Ninth Circuit Court of Appeals | August, 1986 |
| U.S.D.C. Central District of California | February, 1986 |
| U.S.D.C.  Eastern District of California | June, 1990 |

## Litigation Experience:

### Federal courts:   (Partial listing of published opinions and significant cases)

*CPR for SKID ROW,*
779 F.3d 1098 (9th Cir. 2015)
Partial reversal of summary judgment in favor of the Defendant and holding that California Penal Code §403
could not lawfully be applied to criminalize the expressive activity of the Plaintiffs for protesting on Skid
Row.
(Lead counsel and argued on appeal)

*Desertrain v. City of Los Angeles*
754 F.3d 1114 (9th Cir. 2014)
Reversal of summary judgment in favor of the Defendants and holding that Los Angeles Municipal Code §85.02, prohibiting parking a vehicle on public streets or parking lots any time of day or night if a person "lives" in the vehicle, is unconstitutionally vague.
(Lead counsel and argued on appeal)

*Lavan v. City of Los Angeles*
693 F.3d 1022 (9th Cir. 2012), *affirming* grant of preliminary injunction 797 F.Supp.2d 1005 (C.D. Cal. 2011)
Preliminary injunction barring City from confiscating and immediately destroying the property of homeless individuals on Los Angeles' Skid Row.
(Lead Counsel)

*Long Beach Area Peace Network v. City of Long Beach*
522 F.3d 1010 (9th Cir. 2008), as amended July 24, 2009
Upholding and reversing in part on appeal a decision of the district court granting Plaintiffs' request for a preliminary injunction to enjoin a municipal parade ordinance that included vague permit standards setting, *inter alia*, advance-notice requirements police charges based on the past unlawful conduct of third parties without adequate standards to limit the discretion of public officials charged with implementing the parade ordinance.
(Lead counsel)

*Fitzgerald v. City of Los Angeles*
485 F.Supp.2d 1137 (CD CA 2008)
Extending injunction against police sweeps of homeless persons on Los Angeles' Skid Row on the grounds of searching for parole and probation violations.  See below for discussion of permanent injunction in 2003.
(Co-Counsel)

*Multi-Ethnic Immigrant Worker Organizing Network (MIWON) v. City of Los Angeles*
246 F.R.D. 621 (C.D. Cal. 2007)
Order granting class certification in challenge to police assault on a lawful assembly of immigrant rights supporters by the Los Angeles Police Department on May Day, 2007.
(Class Co-Counsel)

*Edward Jones, et al., v. City of Los Angeles*,
444 F.3d 1118 (9th Cir. 2006), vacated pursuant to settlement 505 F.3d 1006 (2007)
Challenge to City of Los Angeles Municipal Code §41.18(d), prohibiting sitting, lying or sleeping on any street or sidewalk anywhere in the City at any time of day or night.  Plaintiffs, all of whom are homeless persons, brought an 8th Amendment as-applied challenge to their arrests and citations for violating the ordinance when their was no available adequate shelter.
(Co-counsel)

*Terry Tipton-Whittingham, et al. v. City of Los Angeles*
316 F.3d 1059 (9thCir. 2003)
Challenge by City of Los Angeles to interim fee award granting plaintiffs' fees as "catalysts" under state civil rights fee shifting statutes.  Following oral argument, the Ninth Circuit certified issue of continued availability of "catalyst" fees under California law after adverse decision by the United States Supreme Court rejecting catalyst fee doctrine under federal law absent express legislative authorization.  Certified for hearing before the California Supreme Court and ultimately upheld the catalyst fee doctrine under California law.
(Co-counsel; argued in Ninth Circuit)

*Fitzgerald v. City of Los Angeles*
2003 U.S. Dist. LEXIS 27382 (CD CA 2003)
Permanent injunction enjoining Fourth Amendment violations by the Los Angeles Police Department (LAPD).  The injunction prevents the LAPD  from engaging in stops of homeless persons for parole and probation sweeps on Skid Row without reasonable suspicion to believe that specific individuals are on parole or probation and subject to a search condition, or that the individual has engaged in, or is about to commit a crime.
(Lead counsel)

*Khademi v. South Orange County Community College District*
194 F.Supp.2d 1011 (C.D. CA 2002)
First Amendment facial challenge invalidating college policy  regulating time, place and manner of student speech on campus.
(Lead counsel)

*Mardi Gras of San Luis Obispo v. City of San Luis Obispo*
189 F. Supp.2d 1018 (C.D. Cal. 2002)
Preliminary injunction to enjoin a municipal parade ordinance that required lengthy advance-notice requirement and permitted high insurance and police charges based on the past unlawful conduct of third parties without adequate standards to limit the discretion of public officials charged with implementing the parade ordinance.

*Bauer v. Sampson*
261 F.3d 775 (9th Cir. 2001)
First Amendment challenge to disciplinary action against college professor for publication of an alternative
newsletter criticizing elected and appointed public officials and disclosing wrongdoing by college officials and
personnel. The college sought to discipline the professor for violating the district's policies on discrimination
and work-place violence. The polices were declared unconstitutional as applied to the professor's speech.

*H.C. v. Koppel*
203 F.3d 610 (9th Cir. 2000)
Dismissal of federal civil rights action filed in federal court against state court judge and appointed counsel for
minor in family law matter. Circuit held that Younger Abstention applied and non-custodial parent had adequate
state court remedy.

*Justin v. City of Los Angeles*
2000 U.S. Dist. LEXIS (CD Cal. 2000)
Class action to enjoin police sweeps of homeless population on Los Angeles' Skid Row. Permanent injunction
stipulated to in settlement following certification of the injunctive relief class.
(Lead counsel)

*Los Angeles Alliance for Survival, et al. v. City of Los Angeles*
987 F. Supp. 819 (1997); 157 F.3d 1162 (9th Cir. 1998); on certification to the California Supreme Court, 22
Cal.4th 352 (2000); 224 F.3d 1076 (9th Cir. 2000)
Injunction issued in challenge to municipal ordinance barring so-called "aggressive solicitation" in broad areas
of traditional public fora. Preliminary injunction entered by district court based on California Constitution. On
appeal, the Ninth Circuit certified the California Constitution question to the California Supreme Court.
Following decision by the California Supreme Court, the Ninth Circuit upheld the original injunction.
(Co-counsel)

*Service Employees International Union 660 v. City of Los Angeles*
114 F. Supp.2d 966 (C.D. Cal. 2000)
Challenge to the "no-protest zone" at the Democratic National Convention in Los Angeles in 2000, as well as
a preliminary injunction to enjoin the City of Los Angeles parade ordinance.
(Co-counsel)

*United States v. Wunsch*
54 F.3d 579 (9th Cir. 1995);84 F.3d 1110 (9th Cir. 1996) (reargument)
First Amendment challenge to discipline of male attorney for "gender bias" in sending note to female Asst. U.S.
Attorney after she successfully moved to disqualify him as defense counsel in a criminal case. Ninth Circuit
invalidated the penalty and declared unconstitutional California's "offensive personality" regulation on attorneys'
professional conduct. (Argued and briefed on appeal).

*American Jewish Congress v. City of Beverly Hills*
65 F.3d 1539 (9th Cir. 1995);90 F.3d 379 (9th Cir. 1996) (en banc)
First Amendment challenge to display of a religious symbol on public property and to permit scheme for
expressive activities in public fora in the City of Beverly Hills. The en banc panel held the permit scheme
unconstitutional and found that a preference had occurred for the display of a particular religious symbol. The
en banc decision was unanimous. (Argued and briefed on appeal)

*Baca v. Moreno Valley Unified School District*
936 F. Supp. 719 (C.D. Cal. 1996)
First Amendment challenge to school board regulations preventing speakers from making disparaging remarks
about public employees during public board meetings.

*Wallin v. City of Los Angeles*,
1194 U.S. App. LEXIS 2343 (9th Cir. 2004)

Circuit dismissed appeal of defendant City and law enforcement officers from denial of qualified immunity.
Appellee, a female officer with the Los Angeles Police Department, alleged that appellants violated her right
to equal protection, due process and right to petition the government because they violated LAPD
confidentiality regulations and delayed the investigation into her allegations of co-worker rape.

(Lead counsel)

*National Abortion Federation v. Operation Rescue*
8 F.3d 680 (9th Cir. 1993)
Class-action state-wide injunction against blockades of women's health care clinics by anti-abortion activists.
First case decided under the "frustrate and hinder" clause of 42 U.S.C. § 1985(3), the 1871 Ku Klux Klan
Act. Appeals court held cause of action under "frustrate and hinder" clause was properly plead and reversed
12(b)(6) ruling on that claim.

(Co-lead counsel throughout; argued on appeal)

*Hewitt v. Joyner*

940 F.2d 1561 (9th Cir. 1991)

Establishment Clause challenge to Christian theme park, Desert Christ Park, owned and operated by San Bernardino County. Ninth Circuit held County ownership and operation of the park violated the Establishment Clause.

(Lead counsel throughout litigation; argued on appeal).

*Standing Deer v. Carlson*

831 F.2d 1525 (9th Cir. 1986)

First Amendment challenge for Native Americans at Lompoc Federal Penitentiary to regulation barring religious headbands in the dining facilities for purported health reasons.

(Argued and briefed on appeal)

*Burbridge v. Sampson*

74 F.Supp.2d 940 (C.D. Ca. 1999)

First Amendment challenge to community college policy regulating student speech in public fora on campus. Court issued a preliminary injunction, declaring the college's speech regulations unconstitutional.

*Rubin v. City of Santa Monica*

823 F.Supp. 709 (C.D. Ca. 1993)

First Amendment challenge to city permit scheme limiting access to public parks for protected expressive activities. Court issued a preliminary injunction and declared the permit scheme unconstitutionally on vagueness grounds and procedural due process grounds. (Lead counsel)

# State Court

*Terry Tipton-Whittingham, et al. v. City of Los Angeles*

34 Cal.4th 604 (2002)

California continues to recognize "catalyst" fee awards to prevailing parties under the private attorney-general statute (Cal. Code of Civ. Proc. §1021.5) and Fair Employment and Housing Act (FEHA) despite change in federal civil rights fee-shifting law. Under California law, there is no requirement of a judicial determination establishing a change in the legal obligations of the parties.

(Co-counsel and argued at California Supreme Court)

*Los Angeles Alliance for Survival v. City of Los Angeles*

22 Cal.4th 352 (2000)

Ordinance restricting certain activity as "aggressive solicitation" was not content-based under California Constitution

(co-counsel)

*Williams v. Garcetti*

5 Cal.4th 561 (1993), *sub nom Williams v. Reiner*, 13 Cal.App.4th 392 (1991)

Challenge on due process grounds to portion of STEPP law which imposed a criminal penalty on parents of minor children engaged in or at risk of delinquent conduct.

(Argued and brief on appeal to California Supreme Court)

*Sands v. Morongo Unified School District*

53 Cal.3d 863 , *cert denied*, 112 U.S. 3026 (1991)

225 Cal.App.3d 1385 (1989)

Establishment Clause challenge invalidating prayers at public high-school graduations.

(Argued and briefed as lead counsel throughout litigation)

*Walker v. Superior Court of Sacramento*

47 Cal.3d 112 (1988)

Establishment Clause/Free Exercise/Due Process challenge to criminal prosecution of Christian Science parents for death resulting from use of prayer instead of traditional medicine in treatment of ill child.  (Wrote amicus brief on due process issues).

*Irvine Valley College Academic Senate, et al. v. South Orange County Community College District*

129 Cal.App.4th 1482 (2005)

Statutory construction of plain language of Education Code §87360, bolstered by legislative intent, requires actual joint agreement and mutual development of revisions to faculty hiring policies.

(co-counsel, drafted final briefs on appeal)

*Fashion 21, et al. v. Coalition for Humane Immigrant Rights (CHIRLA), et al.*

111 Cal.App.4th 1128 (2004)

Special motion to strike defamation complaint by retailer against garment worker advocates must be granted as the plaintiff retailer could not establish a probability of prevailing on the merits of their claims.  Garment worker advocates properly relied on draft labor commission regulations suggesting retailer could be liable for sweatshop conditions of manufacturing of its retail goods.

(lead counsel at all stages)

*Gonzalez v. Superior Court*

33 Cal.App.4th 1539 (1995)

Challenge to discovery order in sexual harassment case requiring plaintiff to disclose name of confidential informant who provided her with photographic evidence of harassment.  "After-acquired evidence" rule applied to require disclosure.

(Lead counsel in trial court and appeal)

*Lantz. v. Superior Court of Kern County*

28 Cal.App.4th 1839 (1994)

Privacy rights challenge to interpretation of Consumer Personnel Records Statute (CCP § 1985(3), requiring strict adherence to statutory procedures and limiting exemption of local government agencies from adhering to statutory requirements.

(Lead counsel throughout litigation)

*Rudnick v. McMillan*

25 Cal.App.4th 1183 (1994)

Defamation verdict involving public figure plaintiff and local environmentalist author of letter to editor overturned on basis that letter was protected opinion and public figure subject to constitutional malice proof burden.  Wrote amicus brief which formed basis of appellate ruling.

*Westside Sane/Freeze v. Hahn*

224 Cal.App.3d 546 (1990)

Challenge to restrictions on First Amendment petition activities in shopping center.

(Co-counsel, co-wrote appeal)

*City of Glendale v. Robert George*

208 Cal.App.3d 1394 (1989)

Reversal of trial court order imposing prior restraints on speech of "Presidential Santa" on the basis that he constituted a public nuisance to his neighbors in a residential area.

(Argued and briefed on appeal)

*McCarthy v. Fletcher*

207 Cal.App.3d 130 (1989)

Challenge to removal of textbooks from school reading list based on community-based religious objections.  Court of Appeal reversed summary judgment decision, holding that there was sufficient evidence of constitutionally impermissible factors in evaluation of appropriateness of class-room reading materials.

(Argued and brief on appeal)

*Fiske v. Gillespie*

200 Cal.App.3d 130 (1988)

Challenge to sex-based actuarial presumptions in insurance industry rate for particular types of life insurance and annuity benefits.

(Co-Counsel, Argued on appeal)


# Publications:
# (Partial listing)s


*Catalyst Fees After Buckhannon*

Civil Rights Litigation and Attorney Fees Annual Handbook

(January 2006)


*Free Speech and Harassment: An Overview*
*in the Public Employee Sector*

CPER: CALIFORNIA PUBLIC EMPLOYEE RELATIONS

Institute of Industrial Relations - UC Berkeley

June 1999  No. 136


*Defeating Employer Defenses to Supervisor Liability*
*After* Ellerth *and* Faragher

ADVOCATE, October 1998


*Student Expression Under California Law*

UCLA Journal of Education

Volume 3, pp. 127-137 (1989)


*Should Attorneys Be Disciplined For Gender Bias*

Point/Counterpoint ABA Journal   August, 1995


*Fight Illegal Police Practices in State Court*

Los Angeles Daily Journal

March 6, 1992


*Judicial Oversight Limited by Supreme Court*

Los Angeles Daily Journal

May 6, 1991


*Jury Nullification is Conscience of Community*

Los Angeles Daily Journal

August 31, 1990


*A Basic Right Merits Shield From The Mob*

Los Angeles Times

August 11, 1991 p.M5

*Prop 115 revisited: Police charged with crimes
deserve fair trials too*
Los Angeles Daily News
May 7, 1991

*Prayer Doesn't Belong at Graduation*
USA Today
May 15, 1991 p. A10

*Killea Tactic Can Only Hurt the Church in the Long Run*
Los Angeles Times (San Diego)
November 20, 1989 p.B7

*The Fifth is a Shield for All*
Los Angeles Times
August 6, 1988    II8
(authored for Exec. Dir. ACLU)

*Which Way Will Rehnquist Court Turn?*
Los Angeles Daily News
June 18, 1986 p.21

*Constitution Exacts Cost for Religious Freedom*
Los Angeles Daily News
June 8, 1986 FOCUS   p.3

## Education:

| | |
|---|---|
| Peoples College of Law | J.D.  May, 1978 |
| Douglass College.For Women, Rutgers University | B.A . June, 1968 |

## Professional and
## Community Activities:

| | |
|---|---|
| Adjunct Professor - Loyola Law School<br>Civil Rights Advocacy Practicum | 2007-present |
| Blue Ribbon Panel on LAPD Rampart Inquiry, Member | 2004-2006 |
| Ninth Circuit Gender Bias Task Force<br>Convenor, Advisory Committee on Employment Law | 1992-1993 |
| Ninth Circuit Conference on "Ethnicity, Race, and Religion in the Ninth Circuit"<br>Member, Working Subcommittee | 1993 |
| Los Angeles Public Interest Law Journal<br>Advisory Board | 2007-present |

| | |
|---|---|
| Los Angeles Center for Law and Community Action<br>Member, Board of Directors | 2015-present |
| National Police Accountability Project<br>Member, Advisory Board and Board of Directors | 2006-present |
| National Lawyers Guild, Los Angeles - President | 2001-2008 |
| National Lawyers Guild - National Executive Vice President | 2009-2011 |
| National Lawyers Guild Far West Regional Vice-President | 2003-2005 |
| National Lawyers Guild, National Executive Committee | 2003-2012 |
| NLG National Mass Defense Committee, Co-chair | 2003-2012 |
| Women Lawyers Association of Los Angeles<br>Member, ProChoice Committee | 1985-2002 |
| The California Anti-SLAPP Project<br>Member, Board of Directors | 1995-2010 |

## Awards:
## (Partial listing)

| | |
|---|---|
| PEN Freedom to Write Award | 1991 |
| American Jewish Congress Tzedek Award | 1992 |
| Planned Parenthood Los Angeles, Distinguished Service Award | 1990 |
| Freethought Heroine Award | 1992 |
| National Lawyers Guild - Los Angeles | 1999 |
| ACLU of Southern California Pro Bono Attorney Award | 2001 |
| Asian Pacific American Legal Center Pro Bono Award | 2003 |
| California Lawyer: Super Lawyer -Civil Rights/Constitutional Law | 2004-2019 |
| ACLU of Southern California Freedom of Expression Award | 2007 |
| Daily Journal Top 100 Most Influential Lawyers in California | 2007 |

| | |
|---|---|
| National Lawyers Guild - Ernie Goodman Award | 2007 |
| Angel Award - California Lawyer Magazine Award for pro bono work | 2007 |
| CLAY Award (California Lawyer of the Year - civil rights) - California Lawyer Magazine | 2008 |
| Top 75 Women Litigators in California - Daily Journal | 2008, 2013 |
| California Super Lawyers - Top 50 Women Lawyers in Southern California | 2014 |
| National Lawyers Guild, Los Angeles Law for the People Award | 2014 |
| ACLU Lifetime Achievement Award | 2017 |

Exhibit 2 to Sobel Declaration

Case 2:85-cv-04544-DMG-AGR   Document 1282-10   Filed 08/29/22   Page 25 of 199   Page ID
#:47749
Case 2:10-cv-02211-DMG-DTB   Document 966   Filed 10/08/15   Page 2 of 25   Page ID #:22664

1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   JOSE ANTONIO FRANCO-            )   Case No.: CV 10-2211 DMG (DTBx)
     GONZALEZ, et al.,               )
12                                   )   **ORDER APPROVING PARTIES'**
           *Plaintiffs-Petitioners,* )   **SETTLEMENT AGREEMENT**
13                                   )   **RESOLVING PLAINTIFFS'**
                 v.                  )   **MOTION FOR ATTORNEYS'**
14                                   )   **FEES AND COSTS [827, 864]**
     ERIC H. HOLDER, Jr., Attorney   )
15   General, et al.,                )
                                     )
16         *Defendants-Respondents.* )
                                     )
17                                   )
                                     )
18

19

20

21

22

23

24

25

26

27

28

Case 2:85-cv-04544-DMG-AGR   Document 1082-10   Filed 08/29/22   Page 26 of 109   Page ID
#:47750
Case 2:85-cv-02511-DMG-DFB   Document 966   Filed 10/08/15   Page 2 of 8   Page ID #:32663

1      WHEREAS, the Parties provided proper notice to the Class [Doc. # 860];

2      WHEREAS, the Court has already approved the notice provided to the Class

3  as satisfying the requirements of Federal Rule of Civil Procedure 23(e)(1) and due

4  process [Doc. ## 856, 860];

5      WHEREAS, the notice provided to the Class stated that Plaintiffs would

6  seek attorneys' fees and costs up to $15,000,000, and no Class Member has

7  objected;

8      WHEREAS, Plaintiffs did not seek the full $15,000,000 in fees and costs of

9  which they gave notice to the Class, and instead filed a Motion for Attorneys' Fees

10  and Costs ("Fee Motion") seeking $11,632,425.73 in attorneys' fees and

11  $81,701.73 in costs (as corrected) [Doc. ## 827, 843];

12      WHEREAS, Defendants were granted, by order of this Court, over two

13  months to analyze and respond to Plaintiffs' Fee Motion and indicated that they

14  would engage an expert to assist them in analyzing and responding to Plaintiffs'

15  Fee Motion [Doc. ## 822 at 14-16, 825];

16      WHEREAS, the Parties engaged in non-collusive, arms'-length negotiations

17  to resolve Plaintiffs' Fee Motion, and have now reached a settlement ("Fee

18  Settlement Agreement");

19      WHEREAS, the Fee Settlement Agreement, attached hereto as Exhibit A, is

20  the entire agreement between the Government and Plaintiffs regarding attorneys'

21  fees and costs;

22      WHEREAS, the Fee Settlement Agreement requires Defendants to pay

23  Plaintiffs $9,500,000.00 in full satisfaction of all attorneys' fees and costs that

24  Plaintiffs have sought or could seek in this matter as of September 29, 2015;

25      WHEREAS, Plaintiffs' Fee Motion provides ample support for an award of

26  at least $9,500,000;

27      WHEREAS, there is no evidence of collusion between the Parties regarding

28  fees, or of Plaintiffs putting their interests in obtaining fees ahead of the interests of

1

1  the Class [Doc. # 854 at 15-16];

2  The Court hereby awards Plaintiffs $9,500,000 in attorneys' fees and costs,

3  subject to the terms set forth in the Fee Settlement Agreement.  The Fee Settlement

4  Agreement is a compromise reached by the Parties as a result of arms'-length

5  negotiations, including negotiations after Defendants had the opportunity to review

6  Plaintiffs' entire Fee Motion, which contained voluminous time records and

7  supporting materials.  The Fee Settlement Agreement does not prejudice the Class

8  and was not the result of collusion between the Parties.  The Class has received

9  notice of Plaintiffs' Fee Motion that complied with the requirements of Federal

10  Rule of Civil Procedure 23(e)(1), and no Class Member has objected to the Fee

11  Motion.  The Court therefore finds the award to be fair, adequate, and reasonable.

12  The Parties are hereby ordered to implement the terms of the Fee Settlement

13  Agreement.  The Court retains jurisdiction for the purpose of enforcing compliance

14  with the terms of the Fee Settlement Agreement.

15  IT IS SO ORDERED.

16

17  DATED:  October 8, 2015                    _____

18                                             DOLLY M. GEE
                                               UNITED STATES DISTRICT JUDGE
19

20

21

22

23

24

25

26

27

28

Case 2:20-cv-02211-DMG-DFB   Document 966   Filed 10/03/15   Page 4 of 8   Page ID #:22567

# Exhibit A

## SETTLEMENT AGREEMENT

*Franco-Gonzalez, et al. v. Lynch, et.al.*

Case No. CV 10-2211-DMG (DTBx)

This Settlement Agreement is entered into by all Plaintiffs and all Defendants in this class action lawsuit (collectively, "the Parties"). Plaintiffs are individuals who are, or were during the relevant period, in the custody of U.S. Immigration and Customs Enforcement ("ICE") in Arizona, California, or Washington, who have serious mental disorders, and who lack or lacked counsel in their immigration proceedings. Defendants are Loretta Lynch, United States Attorney General, Juan Osuna, Director of the Executive Office for Immigration Review ("EOIR"), Jeh Johnson, Secretary of Homeland Security, Sarah Saldaña, Director of U.S. Immigration and Customs Enforcement ("ICE"), and David Jennings, Field Office Director for the Los Angeles District of ICE.

## RECITALS

Intention of the Parties. The Parties desire to settle and resolve 1) Plaintiffs' claim for $81,701.73 in costs; 2) Plaintiffs' claim for $11,632,425.73 in attorneys' fees, *see* Dkt. 843-2; 843-4; and 3) any attorneys' fees accrued between July 1, 2015 and September 29, 2015. Plaintiffs' claims for costs and fees accrued prior to July 1, 2015 are contained in Plaintiffs' Motion for Attorneys' Fees and Costs, Dkt. 827, as corrected in Dkt. 843. Plaintiffs have not yet sought fees for work done between July 1, 2015 and September 29, 2015, but they would do so but for this Agreement. The parties enter into this Settlement Agreement to avoid the time and expense of further litigation as to costs and fees. The Parties acknowledge that this Settlement Agreement (1) disposes of all claims and issues regarding the claims for costs and Fees that the Plaintiffs raise or could raise against Defendants in Plaintiffs' Motion for Attorneys' Fees and Costs as of September 29, 2015, and

(ii) fully binds the Parties and their successors.

No Admission of Wrongdoing. By executing this Settlement Agreement, Defendants do not admit that Plaintiffs' claim for fees was meritorious, nor do Defendants admit that Defendants were not substantially justified, in law or fact, in the litigation position advanced in the Action.

Complete Agreement. The Parties agree that this document constitutes the complete integration of the Settlement Agreement between the Parties regarding Plaintiffs' claim for costs and fees for work done prior to September 29, 2015, and supersedes any and all prior oral or written representations, understandings, or agreements by or between the Parties regarding Plaintiffs' claim for that work. The Parties further agree that this Settlement Agreement may not be altered, amended, changed, modified, or revised except by a writing duly executed by or on behalf of Plaintiffs and Defendants.

Agreement Does Not Affect Tax Treatment of Payments. This Settlement Agreement is in no way related to income or other taxes for which Plaintiffs or their attorneys are now liable or may become liable in the future as a result of the execution of this Settlement Agreement.

Award Subject to Court Approval Pursuant to Rule 23(e). The Parties agree that this fee award is subject to Court Approval pursuant to Federal Rule of Civil Procedure 23(e). The Parties agree that no further notice is required to the class, given that the fee settlement is substantially less than the fee award noticed by the parties.

## TERMS AND CONDITIONS OF AGREEMENT

1.     Defendants agree to remit payment of $9,500,000.00 for attorneys' fees and costs in full settlement of Plaintiffs' claim for costs and fees incurred up to and including September 29, 2015. Payment will be remitted within sixty days

after the Effective Date of this Settlement Agreement. The Effective Date is the date the Settlement Agreement is approved by the Court pursuant to Federal Rule of Civil Procedure 23(e). In the event payment is not made by Defendants within sixty days after the Effective Date, Defendants agree that Plaintiffs may seek enforcement by the Court and agree to bear any fees and costs incurred by Plaintiffs in enforcing the Settlement Agreement.

2.      Plaintiffs and Defendants further agree to move to dismiss with prejudice Plaintiffs' Motion for Attorneys' Fees and Costs, Dkt. 827, upon approval by the Court of the fee award set forth in this Agreement.

3.      Plaintiffs agree not to seek further fees or costs arising from the routine monitoring of Defendants' compliance with the Court's Permanent Injunction or Implementation Plan Order; however, Plaintiffs may seek further fees and costs regarding future litigation by Plaintiffs to enforce compliance with the Court's Permanent Injunction, Implementation Plan Order; Monitoring Order, and Settlement Agreement regarding procedures for Removal Order Class Members.

4.      Plaintiffs agree to file a Notice with the Court acknowledging payment within five calendar days of Plaintiffs' receipt of full payment pursuant to this Settlement Agreement.

5.      The Parties agree that no later than five calendar days after the Effective Date of this Agreement, Plaintiffs will provide counsel for Defendants with accurate bank account and transfer information to allow Defendants to make payment to Plaintiffs. The Parties further agree that payment shall be transmitted by electronic monetary transfer. The American Civil Liberties Union of Southern California warrants on behalf of Plaintiffs that it is authorized to accept payment for or on behalf of Plaintiffs and will distribute fees among Plaintiffs to the extent agreed by and between them.

6.      Defendants acknowledge that Plaintiffs are receiving partial payment of the amount described herein in order to facilitate the orderly execution of this agreement. In the event that any advance payment by Defendants to Plaintiffs exceeds the amount of fees ordered by the Court, Plaintiffs agree to remit the difference in amount back to Defendants.

7.      Plaintiffs represent and warrant that, to the best of their knowledge, the named Plaintiffs do not have any outstanding debts, whether tax debts or otherwise, with the United States of America.

Dated:      September 30, 2015          By:   _____
                                              MICHAEL H. STEINBERG
                                              steinbergm@sullcrom.com
                                              Counsel for Plaintiffs

Dated:      September 30, 2015          By:   _____
                                              LEON FRESCO
                                              Leon.fresco@usdoj.gov
                                              Counsel for Defendants

Exhibit 3 to Sobel Declaration

Case 2:85-cv-04544-DMG-AGR Document 1282-10 Filed 08/29/22 Page 34 of 199 Page ID
Case 2:10-cv-02211-DMG-DTB Document 338 Filed 07/31/15 Page 1 of 25 Page ID
#:21659
#:7559

1   AHILAN T. ARULANANTHAM (State Bar No. 237841)
    aarulanantham@aclusocal.org
2   CARMEN IGUINA (State Bar No. 277369)
    ciguina@aclusocal.org
3   ACLU FOUNDATION OF SOUTHERN CALIFORNIA
    1313 West 8th Street
4   Los Angeles, California 90017
    Telephone: (213) 977-5211
5   Facsimile: (213) 417-2211

6   MICHAEL H. STEINBERG (State Bar No. 134179)
    steinbergm@sullcrom.com
7   SULLIVAN & CROMWELL LLP
    1888 Century Park East, Suite 2100
8   Los Angeles, California 90067-1725
    Telephone: (310) 712-6600
9   Facsimile: (310) 712-8800

10
11  *Attorneys for Plaintiffs-Petitioners*
    (Additional Counsel for Plaintiffs on Following Page)

12                  **UNITED STATES DISTRICT COURT**

13                  **CENTRAL DISTRICT OF CALIFORNIA**

14

15  JOSE ANTONIO FRANCO-            )   Case No. 10-CV-02211 DMG (DTBx)
16  GONZALEZ, et al.,               )
                                    )   **DECLARATION OF CAROL**
17      *Plaintiffs-Petitioners,*   )   **SOBEL IN SUPPORT OF**
                                    )   **PLAINTIFFS' MOTION FOR**
18             v.                   )   **ATTORNEYS' FEES**
                                    )
19  ERIC H. HOLDER, Jr., Attorney   )   Honorable Dolly M. Gee
    General, et al.,                )
20                                  )
        *Defendants-Respondents.*   )
21                                  )
                                    )
22  _____ )

23

24

25

26

27

28

Case 2:85-cv-04544-DMG-AGR Document 1292-10 Filed 09/29/22 Page 35 of 199 Page ID
#:41870
Case 2:10-cv-02211-DMG-DTB Document 333-0 Filed 07/31/13 Page 2 of 25 Page ID
#:7670

JUDY LONDON (State Bar No. 149431)
jlondon@publiccounsel.org
TALIA INLENDER (State Bar No. 253796)
tinlender@publiccounsel.org
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, California 90005
Telephone: (213) 385 2977
Facsimile: (213) 385-9089

JUDY RABINOVITZ (State Bar No. JR-1214)
JRabinovitz@aclu.org
ACLU IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, New York 10004-2400
Telephone: (212) 549-2618
Facsimile: (212) 549-2654

BARDIS VAKILI (State Bar No. 247783)
bvakili@aclusandiego.org
DAVID LOY (SBN 229235)
davidloy@aclusandiego.org
ACLU OF SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, California 92138
Telephone: (619) 232-2121
Facsimile: (619) 232-0036

JAMES PREIS (State Bar No. 82690)
jpreis@mhas-la.org
MENTAL HEALTH ADVOCACY SERVICES
3255 Wilshire Boulevard, Suite 902
Los Angeles, California 90010
Telephone: (213) 389-2077
Facsimile: (213) 389-2595

MATT ADAMS (State Bar No. 28287)
matt@nwirp.org
NORTHWEST IMMIGRANT RIGHTS PROJECT
615 2nd Avenue, Suite 400
Seattle, Washington 98104-2244
Telephone: (206) 957-8611
Facsimile: (206) 587-4025

JAMES LYALL (State Bar No. 330045)
jlyall@acluaz.org
ACLU FOUNDATION OF ARIZONA
3707 N. 7th Street, Suite 235
Phoenix, Arizona 85014
Telephone: (602) 773-6001
Facsimile: (602) 650-1376

*Attorneys for Plaintiffs-Petitioner*

# DECLARATION OF CAROL A. SOBEL

I, CAROL A. SOBEL, declare:

1.    I am an attorney admitted to practice before the Supreme Court of the State of California and the Central District of California.  Because few, if any, of the public interest lawyers involved in this litigation are paid by clients to establish a market rate, I am submitting this declaration to provide the court with information concerning reasonable market rates in support of the attorney fees requested by Plaintiffs' counsel in the above-captioned matter. I have personal knowledge of the facts set forth below and, if I were called to testify to those facts, I could and would do so competently.

2.    I graduated from law school in 1978 and was admitted to practice in December of that same year.  Until April of 1997, I was employed by the ACLU Foundation of Southern California (ACLU).  For the six years prior to leaving, I was a Senior Staff Counsel.  Throughout the time that I was an attorney at the ACLU, my primary areas of litigation were First Amendment rights and police litigation.  A true and correct copy of my résumé is attached at Exhibit 1.  I have received numerous awards for my work in the area of First Amendment litigation and, more recently, on behalf of homeless persons. I have been qualified as an expert in ethics and practices of public-interest legal groups, including once before the State Bar and once in the Los Angeles Superior Court.

3.    For many years, I have regularly gathered and submitted declarations containing information about reasonable market rates in support of fee motions filed by civil rights lawyers in private practice and public interest attorneys in Los Angeles.  My declarations have been approved by numerous courts as evidence of reasonable market rates throughout California.  The decisions that have noted my declarations favorably include, among others, *Nadarajah* v. *Holder,* 569 F.3d 906, 916-917 (9th Cir. 2009); *Orantes-Hernandez* v. *Holder,* 713 F.Supp.2d 29, 963-964 (C.D.Cal.2010); *Torrance*

1

1    *Unified Sch. Dist.* v. *Magee,* CV 07-2164 CAS (Rzx) (C.D.Cal. 2008), [2008

2    U.S.Dist. Lexis 11 95074, 21]; *Atkins* v. *Miller,* CV-01-01574 DDP (C.D.Cal

3    2007); *Jochimsen v. County of Los Angeles,* B223518 (2d Dist. June 23, 2011)

4    (unpublished); *Dugan v. County of Los Angeles*, cv 11-08145 CAS (C.D. Cal.

5    Mar. 3, 2014); and *Flores v. City of Westminster*, SA-CV-11-0278 (C.D. Cal.

6    2014). In *Jochimsen*, the appellate court found me qualified as an expert on

7    rates.

8        4.     My current billing rate is $875 an hour for complex civil rights

9    litigation. Although I have settled several cases calculating the lodestar on my

10    annual rate, I have limited my discussion in this paragraph to the contested fee

11    awards over the last six years in which judges of this Court found my rate to be

12    reasonable. I was awarded fees in 2008 at $695 an hour by the Hon. Manuel

13    Real in *Jones v. City of Los Angeles*, 444 F.3d 1118 (2006), *vacated per*

14    *settlement* 505 F.3d 1006 (9th Cir. 2007. In 2009, I was awarded fees at $710 an

15    hour by the Hon. Dean Pregerson in *Fitzgerald v. City of Los Angeles*, 2009 U.S.

16    Dist. LEXIS 34803 (C.D. Cal. 2009). Later in 2009, I was awarded fees at the

17    same rate by the Hon. A. Howard Matz in *Multi-Ethnic Immigrant Worker*

18    *Organizing Network v. City of Los Angeles,* cv 07-3072 AHM (C.D. Cal.)*,* a

19    hybrid class-action. Exhibit 2. In 2010, I was awarded fees at $725 an hour by

20    the Hon. S. James Otero in *Long Beach Area Peace Network v. City of Long*

21    *Beach*, 574 F.3d 1011 (9th Cir. 2009). Although I rarely have paying clients, I

22    was paid at $795 an hour in 2012 in a case in which I defended an outside

23    director of a small bank taken over and sued by the Federal Deposit Insurance

24    Corporation ("FDIC") in an attempt to recover investment losses. *Federal*

25    *Deposit Insurance Company v. Faigin, et al.*, cv-12-03448 DDP (CWx) (C.D.

26    Cal.). Most recently, the Ninth Circuit awarded me full fees in *CPR for Skid*

27    *Row v. City of Los Angeles*, 779 F.3d 1098 (9th Cir. 2015). The 2015 rate of

28    $875 an hour is shown in the motion filed with the Court, a copy of which is

Case 2:85-cv-04544-DMG-AGR Document 1282-10 Filed 08/29/22 Page 38 of 199 Page ID
#:41673
Case 2:10-cv-02211-DMG-DTB Document 338 Filed 07/31/13 Page 5 of 25 Page ID
#:7872

attached at Exhibit 7.

5. As Senior Staff Counsel at the ACLU, I was responsible for preparing many fee motions in cases where the ACLU represented the prevailing party. Since the ACLU does not bill clients on an hourly basis, I had to obtain information to establish market rates for the ACLU lawyers. I did this annually by telephoning partners at firms who knew the ACLU lawyers in question so that they could make an informed judgment about the comparable skill levels of attorneys at their firms whose rates were then used to set ACLU billing rates.

6. Since entering private practice, I have continued to survey firms each year to obtain relevant comparisons for billing rates as I do not charge my clients for representation and continue to do the same type of cases as I did at the ACLU. My cases are brought on behalf of low-income persons, who are unable to afford legal representation. I generally survey annual billing rates at firms the first time each year I prepare a fee motion or enter into settlement discussions regarding fees. I apply this methodology based on my understanding of the U.S. Supreme Court in *Blum v. Stenson*, 465 U.S. 886 (1984), holding that representation by a non-profit legal group is not a factor in arriving at billing rates for attorneys of comparable skill, experience and reputation. I also research information on rates approved for lawyers at boutique civil rights firms and public-interest organizations whose skills and experience are comparable to those of attorneys who do other types of complex litigation.

7. I understand that Plaintiffs are seeking market rate fees under both the Rehabilitation Act and enhanced EAJA fees for the following attorneys:

| Attorney | Entity | Grad. | 2015 | 2014 | 2013 | 2012 | 2011 | 2010 |
|---|---|---|---|---|---|---|---|---|
| James Preis | MHAS | 1978 | $875 | $850 | $825 | $775 | $725 | $685 |
| Judy Rabinovitz | ACLU IRP | 1985 | $825 | $790 | $760 | $720 | $680 | $630 |
| Michael Steinberg | Sullivan | 1986 | $1040 | $1020 | $1010 | $1000 | $950 | $890 |
| Judy London | Pub.Counsel | 1990 | $775 | $750 | $725 | $680 | $630 | $600 |

| Matt Adams | NW IRP | 1998 | $710 | $680 | $650 | $620 | $580 | $550 |
| A.Arulanantham | ACLUSoCal | 1999 | $690 | $670 | $640 | $600 | $550 | $525 |

I am informed that the rates for Michael Steinberg are discounted from his customary billing rate.

8.     In addition to the attorneys listed above, I am informed that Plaintiffs are seeking market-rate fees under the Rehabilitation Act for the attorneys listed in the table below, but not enhanced EAJA rates.

| Attorney | Entity | Grad. | 2015 |
| --- | --- | --- | --- |
| Victoria Lopez | ACLU AZ | 2001 | $640 |
| Bardis Vakili | ACLU SDIC | 2006 | $535 |
| Talia Inlender | Pub. Counsel | 2007 | $535 |
| Sean Riordan | ACLU SDIC | 2007 | $535 |
| James Lyall | ACLU AZ | 2007 | $535 |
| Shawn Lichaa | Sullivan | 2007 | $865 |
| Damion D.D. Robinson | Sullivan | 2007 | $865 |
| Marisol Orihuela | ACLU SoCal | 2008 | $510 |
| Asel Aliyasova | Sullivan | 2008 | $850 |
| Theresa Buckley | Sullivan | 2008 | $850 |
| Alexa Lawson-Remer | Sullivan | 2009 | $800 |
| Sarah Mehta | ACLU IRP | 2009 | $490 |
| Victor Leung | ACLU SoCal | 2009 | $490 |
| Jennifer Stark | ACLU SoCal | 2009 | $490 |
| Riddhi Mukhopadyay | NW IRP | 2009 | $490 |
| Antonia Stamenova-Dancheva | Sullivan | 2009 | $800 |
| Michael Murtagh | Sullivan | 2010 | $750 |
| Carmen Iguina | ACLU SoCal | 2010 | $475 |
| Esha Bhandari | ACLU IRP | 2010 | $475 |
| Thea Bernas | Pub. Counsel | 2011 | $450 |
| Stephen Kang | ACLU IRP | 2011 | $450 |

4

| Sofia Corona | ACLU SDIC | 2014 | $340 |
| Lauren Cruz | Sullivan | 2014 | $370 |

9.     Of the attorneys who seek enhanced EAJA rates by this motion, I am most familiar with James Preis, Judy Rabinovitz, Judy London  and Ahilan Arulanantham.  Most of these attorneys I know primarily by reputation.  I have known James Preis for more than 30 years.  Although I never worked with him on a case, he co-counseled several cases with other staff attorneys at the ACLU when I was there.  In my experience, he is widely regarded as <u>the</u> expert on mental health litigation.  Similarly, I am of the opinion that Judy Rabinovitz and Judy London  are  both  widely  respected  and  highly  skilled  immigration attorneys.  I have been at award presentations for each of them recently where there experience and accomplishments have been detailed.

10.     Ahilan Arulanantham and I worked together on several cases, including *Barakat v. Arrellano*, CV 05-08635 SVW, a de novo hearing on the denial of a naturalization application involving a one-week trial in the District Court in June, 2006.  We have also worked together on other immigration-related matters that, ultimately, were resolved without litigation. Based on my discussions  with  other  attorneys  on  *Barakat*,  including  Georgetown  law professor David Cole, and other immigration attorneys who have worked with Mr. Arulanantham, I am of the opinion that he enjoys an exceptional reputation as an attorney and displays skills and experience far beyond those of most attorneys practicing for 16 years.

11.     Finally, although they are only seeking market rates for 2015, I know three of the ACLU attorneys.  I know Sean Riordan and Bardis Vakili.  I have spoken with them about their litigation at various times and reviewed briefs written by them.  In addition, before he transferred to the ACLU of San Diego, Mr. Vakili and I participated in a coalition working on homelessness issues in Orange County.  I also have known Marisol Orihuela since she was a summer

1  student at the ACLU after her first year of law school.  She assisted on the
2  *Barakat* case.  I continued to have contact with her and an opportunity to
3  observe her work during the years she was at the ACLU as a fellow and then a
4  staff attorney.  For those attorneys I do not know personally, I reviewed
5  materials on line regarding each attorney's experience, successful litigation they
6  have brought, and recognition they have received for their work.  With these
7  factors in mind, I believe that all are highly skilled and enjoy exceptional
8  reputations as such.

9      12.    Based on my knowledge of billing rates for lawyers of similar skill,
10  reputation a nd experience in the greater Los Angeles area, I am of the opinion
11  that the hourly compensation sought for these attorneys is well within the range
12  of reasonable market rates in Los Angeles.  I base this opinion on the court
13  orders and declarations of counsel identified below and attached as exhibits to
14  my declaration.  Each exhibit is a true and correct copy of the document as it
15  appears in the Court's records, bearing the ECF filing header for documents
16  from the federal courts and the filing stamp for state court documents.

17  **JAMES PREIS - 1978**

18      13.    Mr. Preis and I have been practicing the same length of time.  As
19  stated above, in my experience in the civil rights community in Los Angeles
20  over the past 37 years, James Preis is widely recognized as the expert on mental
21  health issues.  I was informed by Mr. Preis that he was awarded fees at the rate
22  of $685 an hour in 2010 by former Judge Matz.  This is below the rate I was
23  awarded by Judge Real two years earlier in *Jones v. City of Los Angeles*, and
24  below the rate of $710 an hour I was awarded in 2009 by Judges Pregerson and
25  Matz, as well as the 2010 rate of $725 an hour I was awarded by Judge Otero.
26  Attached at Exhibit 3 is a copy of the fee award issued in *Jones. See ¶3, supra*.
27  Because the 2008 award in *Jones* did not set out the individual rates approved, I
28  have also attached a copy of the Court's order on remand, explaining the basis

for the 2008 decision and setting out the approved rates. *See* Exhibit 4. Attached at Exhibit 5 is a copy of the 2010 fee award identified in paragraph 3 in *Long Beach Area Peace Network v. City of Long Beach*, approving the rate of $725 an hour for me when I was practicing 32 years.

14. Attached at Exhibit 6 is an excerpt from the order awarding fees to attorneys at Litt, Estuar and Hadsell & Stormer at 2011 rates in *Pierce v. County of Orange*, cv-01-00981 ABC. The case involved both PRLA and non-PRLA fees. In *Pierce*, Barbara Hadsell was awarded market rate fees at $775 an hour for 2011. Exhibit 6, p.3. I know Ms. Hadsell personally and, on that basis, am aware that we both graduated law school in 1978, the same year as Mr. Preis. Ms. Hadsell's approved rate for 2011 is $50 an hour higher than the historic rate sought for James Preis. In 2012, I was paid an hourly rate of $795 an hour to represent John Lannan in an action brought by the Federal Deposit Insurance Corporation ("FDIC") to recover assets from a small regional bank that failed during the recent economic downturn. *See* para. 3, *supra*. My role in the case was to file a motion to dismiss based on procedural due process, as I would do in a civil rights case.

15. I filed no fee motions in 2013. However, I note that Mr. Preis' requested rate of $825 an hour is only $30, or 3.75 percent, above the rate I was paid on a non-contingent basis in 2012, as described in the preceding paragraph. In 2014, I filed a motion seeking fees at the rate of $875 an hour in the Ninth Circuit in *Desertrain v. City of Los Angeles*, 754 F.3d 1147 (9th Cir. 2014). The Circuit approved the entitlement to fees and transferred the matter to the Appellate Commissioner to determine the amount of fees. While that was pending, the fee award in the district court in *Desertrain* was decided by Judge Klausner, who reduced my rate to $750 an hour, a rate just three percent above the rate I was awarded in 2010 and about an equal percentage below the hourly rate I was paid on a non-contingent basis in 2012. Because of the fee order in

*Desertrain*, I did not raise my rate for 2015: however, just a few weeks after the settlement of fees at the reduced rate in *Desertrain*, the Ninth Circuit approved full fees in *CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1098 (9th Cir. 2015). Exhibit 7. My rate for the motion was $875 an hour. Exhibit 8, pp. 7,11.

### JUDY RABINOVITZ - 1985

16. Judy Rabinovitz seeks enhanced EAJA rates of $630 an hour for 2010, $680 for 2011, $720 for 2012, $760 for 2013, $790 for 2014 and $825 for 2015. Ms. Rabinovitz has been practicing the same length of time as V. James DeSimone, a named partner in the Schonbrun, DeSimone, Seplow, Harris & Hoffman firm, and Laurence Paradis, an attorney with Disability Rights Advocates ("DRA"). She has been practicing two years longer than Ron Elsberry, an attorney formerly at DRA and then at Disability Rights Legal Center ("DRLC"), and one year less than civil rights attorney Theresa Traber. I am familiar with each of these attorneys. In my opinion, they have litigation.

17. In 2010, Laurence Paradis was awarded fees at $740 an hour in *Californians for Disability Rights v. California Dept. of Transportation*, 2010 U.S. Dist. LEXIS 141030, C 06-05125 SBA (N.D. Cal. 2010), *15. Exhibit 9, p. 11. In the same decision, Ron Elsberry was awarded fees at the rate of $640 an hour. *Id.* Although this decision issued in the Northern District, attorneys at DRA apply the same rates statewide. *See* Exhibit 11, ¶ 17 (Decl. of Laurence Paradis of Disability Rights Advocates ("DRA") filed in the Ninth Circuit in support of the motion for attorney fees by Disability Rights Legal Center in *Los Angeles Unified School District v. Michael Garcia*, Ninth Circuit Case No. 10-55879) (attesting that DRA applies the same rates statewide). The interchangeability of rates in Los Angeles and San Francisco was also noted in *Minor v. Christie*, 2011 U.S. Dist. LEXIS 9219 (N.D. Cal. 2011) (rates are essentially the same in Los Angeles, San Francisco and New York). Also in 2010, Jim DeSimone was awarded fees at $650 an hour in *Taylor-Ewing v. City*

8

*of Los Angeles*, cv-07-5556 GHK (C.D. Cal. 2010), an excessive force case. Exhibit 12, p. 7.

18.  In 2012, in *Hickman Mechanical v. FTR International*, LASC Case No. BC 398074, the Court awarded fees to Theresa Traber in an anti-SLAPP case at her 2011 rate of $675 an hour.  Exhibit 13, ¶ 12.  Also in 2012, the Hon. David Carter approved the rate of $695 an hour for Mr. DeSimone in *Charlebois v. Angels Baseball, LP.*, 2012 U.S. Dist. LEXIS 91069 (C.D. Cal. 2012), SACV 10-0853 DOC.  Exhibit 14, pp. 4,10.

19.  In 2013, based on fees set at 2012 rates, the Court approved fees for Laurence Paradis at the rate of $800 an hour in *Communities Actively Living Free and Independent v. City of Los Angeles*, cv-09-0287 CBM (C.D. Cal. June 10, 2013) based on a 2012 rate of $800 an hour.  Exhibit 10, pp. 6-7.   Final approval of the settlement was entered in 2013; however, the parties reached agreement on the terms of the settlement in 2012.  Exhibit 10, ¶ 3, p. 3, l.15-18.

20.  In *Hernandez v. Goliath, Inc.*, LASC BC 462953, the Los Angeles Superior Court approved the 2013 rate of $795 an hour for Theresa Traber in a lodestar crosscheck used in the settlement of a class action. Exhibit 15, p. 5, ¶ 9. Laurence Paradis of DRA attested that his 2013 rate was $825 an hour. Exhibit 11 ¶ 12, Ex. A.  Finally, in 2014, in *Rodriguez v. County of Los Angeles*, cv-10-6432 CBM (C.D. Cal. Dec. 16, 2014), fees were awarded to attorneys Ron Kaye (1988), and Dave McLane and Marilyn Bednarski (1986),at $775 an hour in a police misconduct case.  Exhibit 16, p. 14.

21.  Ms. Rabinovitz's requested 2014 rate of $790 an hour is two percent above the rate approved for attorneys with one to three years less experience.  Her 2015 rate of $825 an hour is the same as the 2013 rate for Mr. Paradis and less than four percent above the 2013 rate approved for Ms. Traber. Thus, the rates sought for Ms. Rabinovitz are fully consistent with  rates approved in the Central District.  In fact, in most instances, they are slightly

lower that the rates approved for comparable civil rights attorneys.

**MICHAEL STEINBERG - 1986**

22. I am informed that Michael Steinberg is requesting rates below the customary billing rates he applies to his commercial clients, and below Sullivan & Cromwell LLP rates approved by other courts. He seeks a rate of $890 for 2010. At that time, he was practicing 24 years. I have reviewed the Declaration of Michael Steinberg submitted in support of this fee application, as well as the various court filings and decisions referenced in his declaration regarding rates approved for Sullivan & Cromwell. These rates are the customary billing rates for attorneys at the firm and have been repeatedly approved as reasonable market rates by courts across the country.

23. In addition to the evidence submitted by Mr. Steinberg, I am providing additional fee awards in the Los Angeles legal market. These decisions support the reasonableness of the rates sought. In 2009, partners at Gibson Dunn & Crutcher were awarded fees at the rate of $785 to $905 an hour in *Rogel v. City of Lynwood*, 194 Cal.App.4th 1319 (2011), where the firm co-counseled with several public interest organizations, including Public Counsel. The trial judge accepted the requested rates but, because the defendant was a government entity, applied a significant negative multiplier, which was reversed by the Court of Appeal. *Id.* A true and correct copy of the declaration of Wayne Barsky, setting out the 2009 billing rates at Gibson Dunn, is attached at Exhibit 17. Mr. Barsky, who attested in his declaration that he was a 1983 law graduate, was the highest biller at $905 an hour. Exhibit 17, p. 14. Fees were also approved at $785 an hour for Marcellus McRae, then practicing 21 years. *Id.* The 2009 rate for Wayne Barsky is above the rate sought by Mr. Steinberg for 2010. Although Mr. Steinberg had two years less experience in 2010, Mr. Barsky's rate would be expected to increase significantly for 2010. With three additional years of experience, Mr. Steinberg's 2010 rate is approximately $100

higher than the 2009 rate for Mr. McRae. It would be reasonable to anticipate that Mr. McRae's rate would also increase significantly for 2010, reducing the differential between his rate and Mr. Steinberg's.

24. In 2011, Skadden, Arps, Slate, Meagher & Flom LLP, was awarded attorney fees in the *Mattel v. MGA Entertainment*, 2011 U.S. Dist. LEXIS 85998 (C.D. Cal. 2011), cv-04-9049 DOC (C.D. Cal.). The motion sought fees at the rate of $1,030 an hour for Jason Russell, a 1993 law. I obtained the year of graduation for Mr. Russell by reviewing his profile on the firm's website. Attached at Exhibit 19 is a "Time Summary" identified as Exhibit 50 to Document 10684, setting out the rates for the Skadden counsel. With seven years more experience, Mr. Steinberg's requested 2011 rate is well below the rate for the 1993 Skadden partner. In the same case, Orrick requested fees for a number of attorneys. Attached at Exhibit 20 is a list of the attorneys seeking fees at Orrick. Orrick partner Joshua Rosenkranz is listed with a 2011 rate of $985 an hour. Exhibit 20, p. 4. According to what I observed on the firm's website, he is a 1986 law graduate, the same year as Mr. Steinberg. Mr. Rosenkranz's 2011 customary billing rate is comparable to Mr. Steinberg's rate.

25. As further support for the rates sought by Mr. Steinberg, I have attached at Exhibit 21 an order from the United States Bankruptcy Court for Nevada, approving 2012 compensation rates for attorneys at Milbank Tweed. *Circus and Eldorado Joint Venture*, BK-12-51156 (D.Nev. BK 2012). The 2012 standard billing rates for Milbank Tweed set out in the order were $825 to $1,140 for partners. Mr. Steinberg's 2012 requested rate of $1,000 an hour is well within the partner range of compensation approved for Milbank Tweed attorneys.

26. Attached at Exhibit 23 is the Declaration of Hannah Cannom of Milbank, Tweed, Hadley & McCloy LLP filed in *Los Angeles Unified School District v. Garcia*, Ninth Circuit Case No. 10-55879, cv09-9289 VBF (C.D.

11

Cal.). Milbank was pro bono counsel with the Disability Rights Legal Center ("DRLC"). Ms. Cannom attested that she was a 2006 law graduate with a 2014 billing rate of $800 an hour. Exhibit 23, ¶ 6. She also attested that the 2014 customary rate for the partner at Milbank Tweed who worked on the case, Daniel Perry, a 1999 law graduate, was $1,135 an hour. With 14 years less experience, Mr. Perry's 2014 rate was higher than Mr. Steinberg's rate for 2010 through 2015.

**JUDY LONDON - 1990**

27. Ms. London seeks rates ranging from $600 an hour in 2010 to $775 an hour in 2015. She graduated from law school 25 years ago. In 2010, Melissa Kasnitz, an attorney at DRA identified as a 1992 law graduate, was awarded fees at the rate of $650 an hour. Exhibit 9, p. 11. This rate is almost 10 percent above the 2010 rate sought by Ms. London. In the same decision, the Court approved fees to Julie Nepveu, an attorney with the AARP Foundation Litigation office, at $660 an hour for 2010. I*d.* Ms. Nepveu is identified in the order as a 1991 law graduate. *Id.* Ms. London seeks a rate of $630 an hour for 2011, well below the 2010 approved rates for Melissa Kasnitz and Julie Nepveu. It is only slightly above the rate of $600 an hour approved for ACLU attorney Hector Villagra, a 1994 law graduate, in 2011 in *Vasquez.* Exhibit 18, p. 3. Ms. London's requested rate is more than 25 percent below the 2011 rate of $820 an hour for Orrick partner Annette Hurst, who is listed on the firm's website as a 1990 law graduate. Ms. Hurst's rate was applied in the *Mattel* litigation. Exhibit 20.

28. Ms. London seeks a rate of $680 an hour for 2012. In 2013, Judge Marshall approved the 2012 rate of $700 an hour for Michelle Uzeta, identified in the decision as a 1992 law graduate. Exhibit 10, pp. 6-7. In 2012, Judge Wright approved fees for Glen Jonas and Christopher Driscoll, 1993 law graduates, at $650 an hour in a police misconduct case. *See* Exhibit 24, p. 5.

While Ms. London's requested rate is $30 higher than the rate approved by Judge Wright, she has three more years of experience than either Mr. Jonas or Mr. Driscoll according to the information available on their firm website and the State Bar. I reviewed both sources and also downloaded the supporting fee declarations in *Dirks* to form the opinion that Mssrs. Jonas and Driscoll are 1993 law graduates.

29. The 2013 rate of $700 an hour, the 2014 rate of $730 an hour and the 2015 rate of $750 an hour requested for Ms. London are all below the rates approved for civil rights attorneys with less experience than Ms. London. For example, in *Hernandez v. Goliath, Inc.*, LASC Case No. BC 462953, the Court approved fees at the 2013 rate of $695 an hour for Emily Rich of Weinberg, Roger & Rosenfeld, just $5 more than is requested as the 2013 rate for Ms. London. Exhibit 15, p. 5. Based on reviewing her profile on the firm's website, I have formed the opinion that Ms. Rich is a 1993 law graduate.

30. Additional evidence of the reasonableness of the rates sought for Ms. London is provided in the order by Judge Otero in *Avila v. Los Angeles Police Department*, 11-cv-01326 SJO (C.D. Cal. Aug. 5, 2012), awarding fees at the 2012 hourly rate of $700 an hour to Matthew McNicholas, a 1997 law graduate. *See* Exhibit 25, p. 5. The next year, in a declaration filed in *Simplis v. Culver City Police Dept.*, cv 10-09497 MWF (C.D. Cal. 2013) [Dkt.# 257-1], Mr. McNicholas attested that his 2013 rate was $750 an hour. Exhibit 26, ¶ 16. Based on my review of the PACER docket, I understand that the *Simplis* case settled. Ms. London has seven years more experience than Mr. McNicholas. Her requested rates are also reasonable when measured against the rates previously approved for Peter Eliasberg, a 1994 law graduate at the ACLU, was awarded fees in post-appeal proceedings in *Vasquez* in 2014 at the rate of $730 an hour, the same rate Ms. London seeks for 2014. Exhibit 27; Exhibit 28, p. 7.

31. As a point of comparison with commercial rates in similarly

complex litigation in the Central District, attached at Exhibit 23 is the 2014 fee declaration filed by Hannah Cannom, then an associate at Milbank Tweed & Hadley and pro bono co-counsel in the *Garcia* case with attorneys from the Disability Rights Legal Center. Ms. Cannom attested to the fact that she was then an eighth-year associate and that her 2014 rate was $800 an hour. Exhibit 23, ¶¶ 2,6. The senior Milbank attorney on the case, a 1997 law graduate, was billed at $1,135 an hour, more than 50 percent above the rate now sought for Ms. London with nearly a decade more experience. *Id.* at ¶ 7. Other Milbank attorneys for whom fees were sought in the case included a 2002 graduate with 12 years' experience billed at $900 an hour in 2014 and a 2008 graduate billed at the 2014 rate of $760 an hour. *Id.* at ¶¶ 8,10.

### MATT ADAMS 1998 and AHILAN ARULANANTHAM 1999

32. I have discussed Matt Adams and Ahilan Arulanantham in the same section because there is only one year difference in their experience. In addition, there are very few civil rights attorneys in Los Angeles who are 1998 law graduates. Matt Adams seeks a market rate of $710 for 2015, $680 for 2014, $650 for 2013, $620 for 2012, $580 for 2011 and $550 for 2010. Ahilan Arulanantham seeks a market rate of $690 for 2015, $670 for 2014, $640 for 2013, $600 for 2012, $550 for 2011 and $525 for 2010. Mr. Arulanantham was awarded fees at the rate of $550 an*, hour in 2011 in *Islamic Shura Council of Southern Counsel v. Federal Bureau of Investigation,* 2011 U.S. Dist. LEXIS 143832, SACV 07-1088 CJC (C.D. Cal. Dec. 14, 2011), *rev'd on other grounds*, 725 F.3d 1012 (9th Cir. 2013). I understand that the sanctions upon which the fee award was based were later overturned for reasons unrelated to the nature or amount of the fee award.

33. In 2012, Judge Otero approved $700 an hour for Matthew McNicholas, a 1997 law graduate, in *Avila v. Los Angeles Police Department,* 11-cv-01326 SJO (C.D. Cal. Aug. 2, 2012), an employment/First Amendment

1   retaliation case against the Los Angeles Police Department.  Exhibit 25, p. 4.  I

2   am familiar with the McNicholas law firm.  In the past, Patrick McNicholas and

3   I had similar cases on behalf of female officers with the Los Angeles Police

4   Department subjected to sex discrimination.  McNicholas and McNicholas is a

5   small civil rights firm, primarily engaged in employment and civil rights

6   litigation.   Based on reviewing the docket and speaking to Mr. Galipo's

7   associate, it is my understanding that the fees and damages were resolved by a

8   settlement.  This rate of $700 an hour is considerably above the 2012 rates of

9   $620 and $600 an hour requested for Mssrs. Adams and Arulanantham,

10  respectively.  In *Communities Actively Living*, the Court approved the 2012 rate

11  of $665 an hour for Shawna Parks, identified in the order as a 1999 law

12  graduate. Exhibit 10, pp. 6,7.

13      34.    In *Simplis v. Culver City Police Department*, 10-cv-09497 MWF, a

14  wrongful death case. I filed a fee declaration for attorney Dale Galipo, who

15  represented a co-plaintiff in *Simplis*. *Simplis* The *Simplis* attorneys sought $750

16  an hour for Matthew McNicholas, a 1997 graduate and the same attorney who

17  was awarded fees in 2012 in *Avila.* Mr. McNicholas' declaration in *Simplis* is

18  attached at Exhibit 26.  In *Avila*, Judge Otero rejected the defense assertion that

19  McNicholas should only receive $650 an hour and approved the 2012 rate of

20  $700 an hour based on the Court's conclusion that rates increase as attorneys

21  gain more skills. *See* Exhibit 25, pp. 3-4.  Mr. Adams is practicing two years

22  longer than Mr. McNicholas was when he was awarded fees in *Avila*. His

23  requested 2015 rate is only $10 above the rate approved for Mr. McNicholas in

24  2012.  Mr. Arulanantham has now been practicing for 15 years, the same length

25  of time that Matthew McNicholas was when he was awarded fees in 2012 at

26  $700 an hour in *Avila.* Mr. Arulanantham's requested 2015 rate is $10 below the

27  rate approved for Matthew McNicholas in 2012 in *Avila*.

28      35.    In his declaration filed in the *Garcia* case, Laurence Paradis attested

Case 2:85-cv-04544-DMG-AGR Document 1283-10 Filed 08/29/22 Page 51 of 199 Page ID
#:51685
Case 2:20-cv-05022-DMG-GTB Document 833-1 Filed 07/31/15 Page 15 of 23 Page ID
#:21886

that the 2013 rate for a 1998 law graduate at DRA was $655 an hour. *See* Exhibit 11, Ex. A. For 2012, the rate for the same attorney was $645 an hour. Exhibit 11, Ex. B. Mr. Paradis also attested that the 2013 rate for Shawna Parks, a 1999 law graduate like Mr. Arulanantham, was $675 an hour. Exhibit 11, Ex. A. The requested 2012 rates of $600 and $620, as well as the 2013 rates of $640 and $650 for Mr. Arulanantham and Mr. Adams, respectively, are below the comparable year rates for attorneys practicing the same length of time at DRA. Exhibit 11. In 2014, the Court awarded fees at the rate of $640 an hour to Mr. Arulanantham's colleague at the ACLU, Peter Bibring, a 2002 law graduate with 12 years of experience in 2014. *See* Exhibit 27; Exhibit, 28 at ¶ 16. With three additional years of experience, Mr. Arulanantham requests a 2014 rate only $30 an hour higher than the rate approved for Peter Bibring. This rate is also only $10 above the $600 an hour approved by Judge Marshall for Kevin LaHue, a 2004 law graduate, in *Rodriguez*. Exhibit 16, p. 14.

36. As a point of comparison to comparable attorneys in large firms, I have submitted a declaration filed in the Eastern Division in *Jones v. Upland Housing Authority*, EDCV 12-2074 VAP (C.D. Cal. Feb. 24, 2014), by Amy Lally, a partner at Sidley Austin in Los Angeles serving as co-counsel with public interest lawyers. Exhibit 22. Ms. Lally attested that she is a 1998 law graduate and that her 2012 customary billing rate was $700 an hour and her 2014 rate was $825 an hour, an increase of almost 20 percent in just two years. Ms. Lally's 2014 rate is more than 20 percent higher than Mr. Adams' requested rate of $680 and Mr. Arulanantham's rate of $670.

**2015 RATES FOR SULLIVAN & CROMWELL ASSOCIATES**

37. Sullivan & Cromwell is seeking compensation for 2007, 2008 and 2009 law graduates at the 2015 rate of $865 an hour. These rates are supported by the declaration of Michael Steinberg and the various orders and awards identified in, and submitted with, his declaration. In addition to the evidence

16

submitted by Mr. Steinberg, additional support for these market rates is found in the rates for Milbank Tweed. Milbank attorney Hannah Cannom attested that her billing rate for 2014 was $800 an hour with eight years of experience. Exhibit 23, ¶¶ 2,6. This rate is comparable to the $865 requested for the Sullivan 2007 associates. It represents approximately a 7.5 percent increase for an additional year of experience and an increase in base rates.

38.     Similarly, the rates for sixth-year associates are comparable. Milbank Tweed's 2014 billing rate for an associate with six years of experience was $760 an hour. Sullivan now requests $800 an hour, which is little more than a five percent increase from 2014. The rate requested for the 2010 law graduate is also reasonable when compared to the Milbank 2014 rates. Last year, Milbank billed an associate with six years of experience at $760 an hour. With one year less experience, but allowing for a rise in base rates for all associates, the Sullivan rate is $10 below the 2014 Milbank rate for an associate with one year less experience. Sullivan also seeks fees at a 2015 market rate of $370 an hour for a 2014 law graduate. In 2009, Gibson Dunn billed an attorney with the same experience at $345 an hour. Exhibit 17, p. 15. The $25 differential in these rates over six years is little more than a $4 a year increase. As demonstrated by the various fee awards submitted with my declaration, this is far below the actual increases in rates over the past six years.

**2015 RATE FOR 2001 GRADUATE**

39.     The requested 2015 rate for Victoria Lopez, a 2001 law graduate, of $640 an hour is also consistent with the rates approved for civil rights attorneys. For example, in 2014, Peter Bibring, a 2002 law graduate and a staff attorney at the ACLU of Southern California, was awarded fees at $640 an hour by the Hon. Valerie Baker Fairbank in *Vasquez*. Exhibits 27 and 28. With two additional years of experience, Ms. Lopez seeks the same rate for 2015 that was approved for Mr. Bibring last year. Ms. Lopez's requested rate is comparable to the 2013

rate of $585 an hour approved for Laboni Hoq. *See* Exhibit 15, p. 5. Both are 2001 law graduates; however, Ms. Lopez has two additional years of experience at this point. The $55 difference in their rates represents an increase of approximately 4.55 annually, including both an adjustment of base rates an step increases.

**2015 RATE FOR 2007 GRADUATES**

40. Three attorneys graduated in 2007. They seek fees at the 2015 rate of $535 an hour. They are now practicing eight years. In *Rodriguez*, Judge Marshall approved the 2014 rate of $600 an hour for Kevin LaHue, identified as a 2006 law graduate. Exhibit 16, p. 14. In *Communities Actively Living,* Judge Marshall approved the 2012 rate of $555 an hour for Mary-Lee Smith, a seventh-year attorney. Exhibit 10, p. 6. In the same decision, the Court approved $525 an hour as the 2012 rate for Matthew Strugar, then an eighth-year attorney. I am very familiar with Sean Riordan, who was an attorney with the ACLU of San Diego and Inland Counties until recently. I am also very familiar with Matthew Strugar, as previously stated, as he was my law clerk and is now my co-counsel. Their skills are comparable as attorneys practicing eight years. The $10 difference in their rates is insignificant in view of the three year time difference since the rates approved for *Communities Actively Living*.

**2015 RATE FOR 2008 GRADUATE**

41. The 2008 graduate, Marisol Orihuela, is now practicing seven years. She seeks a rate of $510 an hour. In 2012, Judge Marshall approved the rate of $555 an hour for Mary-Lee Smith of Disability Rights Advocates, then practicing the same length of time. Exhibit 10, p. 6. That same year, Judge Carter approved the rate of $460 an hour for David Sarnoff, then an associate at Schonbrun DeSimone. Exhibit 14, p. 8. Ms. Orihuela's proposed rate is at the mid-point of what district court's awarded to civil rights lawyers with seven years experience three years ago.

Case 2:85-cv-04544-DMG-AGR Document 1283-10 Filed 08/29/22 Page 54 of 199 Page ID
#:51889
Case 2:20-cv-04522-DMG-GTB Document 833 Filed 07/31/15 Page 25 of 23 Page ID
#:21009

**2015 RATE FOR 2009 GRADUATES**

42.    The 2009 graduates are now practicing six years. They seek a 2015 rate of $490 an hour. In *Communities Actively Living*, the Court approved the 2012 rates of $430-450 an hour for attorneys then practicing five years.  Exhibit 10, pp. 6-7.  In *Rodriguez*, Judge Marshall approved the 2014 rate of $500 an hour for Caitlin Weisberg, identified as a 2008 law graduate.  Exhibit 16, p. 14. Laurence Paradis attested that the rate for a sixth-year attorney at DRA in 2013 was $455.  Exhibit 11.  The increase of $35 over two years represents an annual increase of approximately 3.5 percent.

**2015 RATE FOR 2010 GRADUATES**

43.    The 2010 graduates are now practicing five years. They seek a 2015 rate of $475 an hour.    As noted in the preceding section, in *Communities Actively Living*, Judge Marshall approved rates of $430 to $450 an hour for civil rights attorneys practicing five years at the time.  Exhibit 10, pp. 6,7.  The increase of the base rate over three years is a modest 1.5 to 3.3 percent annual increase.  In 2010, DRA attorney Mary Lee Kimber was awarded fees at the same rate of $475 an hour when she was practicing five years.  Exhibit 9, p. 11.

**2015 RATE FOR 2011 GRADUATES**

44.    The 2011 graduates are now practicing four years. They seek a 2015 market rate of $450 an hour.  In *Charlebois*, Judge Carter awarded fees to Schonbrun DeSimone associate Amanda Canning, a 2006 graduate, at the 2010 rate of $450 an hour.  Exhibit 14, p. 10.  The rate of $450 an hour is the same as the 2012 rate approved for a fifth-year attorney in *Communities Actively Living*. Exhibit 10, pp. 6,7.  This rate is the same rate approved by Judge Otero in *Avila* for Alyssa Shabloski, a 2008 law graduate with the McNicholas law firm in *Avila*.  Exhibit 25, p. 4.  At the time of this award in 2012, Ms. Shabloski had only four years of experience.

**2015 RATE FOR 2014 GRADUATE**

45.    Plaintiffs are seeking fees at $340 an hour for the 2014 graduate. The 2013 rate for a second-year attorney at DRA was $295 an hour. Exhibit 11, Ex. A. The Court approved the 2012 rate of $330 an hour for Kara Janssen, identified as a 2010 graduate.  Exhibit 10, p. 7.  Also in 2012, the Court approved the rate of $325 an hour for Menaka Fernando, listed as a 2010 graduate.  Exhibit 14, p. 8.

**PARALEGALS AND LAW STUDENTS:**

46.    Plaintiffs also seek compensation for paralegals with varying degrees of experience.  As the exhibits attached to my declaration demonstrate, it is the practice in Los Angeles to bill the time of paralegals.  The rates recently approved for paralegals in civil rights cases range from $150 an hour for a certificated, but relatively new paralegal, to $260 an hour for a highly experienced paralegal.  In *Hickman,* the Court approved the 2011 paralegal billling rate of $200 an hour at the firm of Traber & Voorhees.  Exhibit 13, ¶ 12. In 2011 in *Vasquez*, Judge Baker approved compensation for paralegals at the ACLU at rates ranging from $165 an hour to $200 an hour.  Exibit 18, p. 3.  In *Charlebois*, Judge Carter approved compensation for paralegals at Schonbrun DeSimone at a 2012 rate of $150 an hour.  Exhibit 14, p. 8.  The 2012 rates approved for paralegals in *Communities Actively Living* ranged from $230 to $240 an hour.  Exhibit 10, p. 7.  In *Hernandez*, the Court approved fees to Traber & Voorhees at $200 to $250 an hour for time incurred by paralegals. Exhibit 15, p. 5.  In 2014 in *Rodriguez*, the Court approved paralegal rates of $175 to $295 an hour at the Kaye, McLane, Bednarski & Litt firm.  Exhibit 16, p. 14.[1]

47.    In *Charlebois*, the Court approved $200 an hour for law students at

---

[1] Michael Steinberg's Declaration and Exhibits provide support for the rates of Sullivan &  Cromwell LLP support staff.

Schonbrun DeSimone. Exhibit 14, p. 8. In *Jones v. City of Los Angeles*, Judge Real approved fees for law clerks at $200 an hour for 2008. Exhibit 4, p. 4. The rate approved for DRA summer law clerks in *Communities Actively Living* was $250 an hour. Exhibit 10, p.7. In *Hernandez*, the Court approved fees for law clerks at Traber & Voorhees at $225 an hour for 2013. Exhibit 15, p. 5, ¶ 9.

48.     Based on all of the decisions and declarations identified above, I am of the opinion that the rates sought by this motion are well within the range of reasonable market rates for attorneys of comparable skill, experience and reputation engaged in similarly complex litigation in the Central District.


I declare under penalty of perjury that the foregoing is true and correct. Executed this 31st day of July, 2015, at Los Angeles, California.


*Carol A. Sobel*

CAROL A. SOBEL

21

Exhibit 4 to Sobel Declaration

FILED

UNITED STATES COURT OF APPEALS

JUL 17 2019

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| GUILLERMO GOMEZ-SANCHEZ, | No.   14-72506 |
| Petitioner, | Agency No. A092-924-179 |
| v. | |
| WILLIAM P. BARR, Attorney General, | ORDER |
| Respondent. | |

Before:  Peter L. Shaw, Appellate Commissioner.

I
Background

Guillermo Gomez-Sanchez, a Mexican citizen, was charged with

removability and applied for withholding of removal and relief under the

Convention Against Torture ("CAT").  *See Gomez-Sanchez v. Sessions*, 892 F.3d

985, 988 (9th Cir. 2018).  Gomez-Sanchez, who has schizophrenia and speaks poor

English, was detained for two-and-one-half years while his case was

administratively closed to obtain a competency evaluation.  After a pro bono

attorney learned about Gomez-Sanchez's case and began representing him, an

Immigration Judge ("IJ") determined that Gomez-Sanchez was statutorily

ineligible for withholding of removal because he had been convicted of a

MH/Appellate Commissioner

particularly serious crime, and that an applicant's mental health as a factor in a criminal act falls within the criminal court's province and is not a factor to be considered in the particularly serious crime analysis. *Id*. The IJ also determined that Gomez-Sanchez was entitled to deferral of removal under the CAT. *Id*. at 989 n.2.

Gomez-Sanchez appealed the IJ's denial of withholding of removal. *Id*. at 988, 989. The Board of Immigration Appeals ("BIA") issued a published decision dismissing the appeal, and remanded for background checks needed for CAT relief. *Id*. at 988.

Gomez-Sanchez filed a petition for review of the denial of withholding of removal. *Id*. at 989. This court granted the petition, vacated the BIA's decision, and remanded to the BIA for further proceedings consistent with its amended opinion. *Id*. at 988, 989, 996-97. The court held that the agency must take all relevant information into consideration when making the particularly serious crime determination, including the individual's mental condition at the time of the crime, whether it was considered during the criminal proceedings or not, and that the BIA's interpretation of the Immigration and Nationality Act was not entitled to deference. *Id*. at 996-97. Gomez-Sanchez filed a petition for panel rehearing

requesting to change part of the court's opinion that cited a BIA decision then under review. The court amended the opinion and denied rehearing. *Id*. at 987.

Gomez-Sanchez filed a motion for attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. The government filed an opposition, and Gomez-Sanchez filed a reply. The court granted the motion and referred the fee amount determination to the Appellate Commissioner. *See* 9th Cir. R. 39-1.9.

II
Discussion

A. Attorneys' Fees

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Gomez-Sanchez requests $109,960.42 in attorneys' fees for 232.93 hours of work by five attorneys and one paralegal from the ACLU Foundation of Southern California and the ACLU Foundation of San Diego and Imperial Counties.[1] Gomez-Sanchez requests enhanced, prevailing market hourly rates of $710 to $785 for attorney Ahilan T. Arulanantham, $510 to $620 for attorney Bardis Vakili, and $450 to $475 for attorney Carmen Iguina. Gomez-Sanchez requests cost-of-living-

---

[1] The result of the requested hours multiplied by the requested hourly rates is $109,960.42. An unexplained $0.02 "time slip adjustment" is disallowed.

adjusted EAJA statutory maximum hourly rates of $190.06 for 2014, $190.28 for

2015, $192.68 for 2016, and $200.78 for 2018 for attorney Lorie Alexander,

attorney Jonathan Markovitz, and paralegal Geneva Tien.

1. Enhanced Hourly Rates

The government objects to awarding enhanced hourly rates for

Arulanantham, Vakili, and Iguina.  EAJA provides that fees may be awarded based

upon prevailing market rates for the kind and quality of the services furnished,

except that attorneys' fees shall not be awarded in excess of $125 per hour unless

the court determines that an increase in the cost of living or a special factor, such

as the limited availability of qualified attorneys for the proceedings involved,

justifies a higher fee.  *See* 28 U.S.C. § 2412(d)(2)(A).

a. Special Factor Enhancement

Gomez-Sanchez requests enhanced hourly rates based on the special factor

of the limited availability of qualified attorneys for the proceedings involved.  *Id.*

In support of the request, Gomez-Sanchez provides declarations by Arulanantham,

Iguina, and experienced Los Angeles immigration attorney Stacy Tolchin and Los

Angeles civil rights attorney Carol Sobel.

Enhanced hourly rates based on the special factor of the limited availability

of qualified attorneys for the proceedings involved may be awarded where the

attorneys "hav[e] some distinctive knowledge or specialized skill needful to the litigation in question [that] can be obtained only at rates in excess of the [statutory] cap." *Pierce v. Underwood*, 487 U.S. 552, 572 (1988).

### i. Distinctive Knowledge Or Specialized Skill

Gomez-Sanchez shows, and the government does not dispute, that Arulanantham has distinctive knowledge and specialized skill "in constitutional immigration law and litigation involving the rights of detained immigrants," as this court determined in awarding enhanced hourly rates in *Nadarajah v. Holder*, 569 F.3d 906, 912 (9th Cir. 2009), as well as at the intersection of criminal, immigration, mental health, and disability law, and that Vakili and Iguina have distinctive knowledge and specialized skill at the intersection of immigration and mental health law.

Arulanantham has 15 years of experience as an ACLU attorney litigating numerous cases involving the intersection of criminal and immigration law, as well as the statutory and constitutional rights of non-citizens. Vakili has 11 years of experience as an ACLU attorney representing individuals with mental disabilities and individuals subject to removal for criminal convictions in immigration proceedings. Iguina spent five years as an ACLU attorney working on many cases at the intersection of mental health and immigration issues.

Arulanantham was lead counsel in *Nadarajah*, where the court concluded that Nadarajah's indefinite detention was unreasonable, unjustified, and illegal; reversed the district court's denial of Nadarajah's habeas corpus petition; and ordered Nadarajah's immediate release. *See Nadarajah v. Gonzales*, 443 F.3d 1069, 1084 (9th Cir. 2006). Arulanantham was co-lead counsel, and Vakili and Iguina were co-counsel, in *Franco-Gonzales v. Holder*, 2013 WL 3674492, at *20 (C.D. Cal. 2013), where the court held as a matter of first impression under Section 504 of the Rehabilitation Act that detained mentally ill immigrants have a right to counsel. *Franco* resulted in an injunction requiring the government to identify and provide counsel to mentally ill immigrants in detention. *See Franco-Gonzalez v. Holder*, 2018 WL 8115423, at *1-2 (C.D. Cal. 2013). Later, the government voluntarily chose to apply the *Franco* injunction nationwide.

Arulanantham, Vakili, and Iguina were awarded the American Immigration Lawyers' Association Jack Wasserman Memorial Award for Excellence in the Field of Immigration Law for their *Franco-Gonzales* work. Arulanantham has received many other awards for his immigration work, including a MacArthur Fellowship, and he serves as a resource for immigration attorneys nationwide. Tolchin states that Arulanantham is "unquestionably one of the most skilled [immigration] litigators in the country," and that Arulanantham, Vakili, and Iguina

all have particular knowledge and specialized skill in immigration cases involving people with serious mental disorders.

### ii. Needful To The Litigation In Question

The government argues that Gomez-Sanchez has not shown that Arulanantham's, Vakili's, and Iguina's distinctive knowledge or specialized skill was needful to the litigation in question, or that "knowledge of foreign cultures or of particular, esoteric nooks and crannies of immigration law . . . [was] needed to give the alien a fair shot at prevailing." *Thangaraja v. Gonzales*, 428 F.3d 870, 876 (9th Cir. 2005). The government argues that Gomez-Sanchez's case was dictated by existing Ninth Circuit precedent and was not as novel or complex as *Nadarajah*, where Arulanantham's prevailing market hourly rates were awarded, and that Gomez-Sanchez's case did not involve Arulanantham's distinctive knowledge or specialized skill in constitutional immigration law and litigation involving detained immigrants' rights, as *Nadarajah* did. *See Nadarajah*, 569 F.3d at 913-15. The government argues that the court did not address Gomez-Sanchez's argument that the BIA's categorical bar against considering mental health in the particularly serious crime analysis discriminates against the mentally disabled in violation of the Rehabilitation Act, *see Gomez-Sanchez*, 892 F.3d at 997 n.11, and that only the Rehabilitation Act argument required the attorneys' distinctive

knowledge or specialized skill at the intersection of criminal, immigration, mental
health, and disability law.  The government's arguments lack merit.

Like *Nadarajah*, Gomez-Sanchez's case involved more than established
principles of law with which the majority of attorneys are familiar, and more than a
straightforward application of the rules of immigration law and appellate practice.
*See Nadarajah*, 569 F.3d at 914; *Ramon-Sepulveda v. INS*, 863 F.2d 1458, 1462-63
(9th Cir. 1988).  Gomez-Sanchez's case was novel and complex, as evidenced by
the court's lengthy amended opinion holding that the BIA's published decision
interpreting the Immigration and Nationality Act to establish the categorical bar
was contrary to congressional intent, unreasonable, based on a flawed assumption,
inconsistent with earlier BIA decisions, and not entitled to deference.  *See Gomez-
Sanchez*, 892 F.3d at 990-97.  Indeed, the government argues elsewhere in its
opposition that its position was substantially justified because the BIA decision
was "a novel but credible extension or interpretation of the law."

Arulanantham's distinctive knowledge or specialized skill in constitutional
immigration law and litigation involving detained immigrants' rights was
necessary to this litigation, as it was in *Nadarajah*.  Moreover, Arulanantham's
distinctive knowledge or specialized skill at the intersection of criminal,
immigration, mental health, and disability law, and Vakili's and Iguina's

distinctive knowledge or specialized skill at the intersection of immigration and mental health law were needed to give Gomez-Sanchez a fair shot at prevailing here. Although the court determined in light of its disposition not to address the Rehabilitation Act argument, *see Gomez-Sanchez*, 892 F.3d at 997 n.11, Gomez-Sanchez's attorneys' distinctive knowledge or specialized skill was necessary to every argument presented, not only the Rehabilitation Act argument.

As Tolchin states, even though the court decided Gomez-Sanchez's case under existing law, the preparation and presentation of Gomez-Sanchez's briefs and oral argument, which effectively demonstrated to the court that the BIA's decision was not entitled to deference, required the attorneys' distinctive knowledge or specialized skill regarding particular, esoteric nooks and crannies of federal immigration and state criminal law. *See Thangaraja*, 428 F.3d at 876. Specifically, Gomez-Sanchez's case involved an interplay of the laws governing the consideration in removal proceedings of whether an individual has been convicted of a particularly serious crime and is a danger to the community, the question whether reliable, relevant evidence of mental health at the time of a crime must be considered in removal proceedings, the mens rea element of criminal offenses, and the insanity defense in criminal cases. *See Gomez-Sanchez*, 892 F.3d at 990-97.

### iii.  Not Available Elsewhere At Statutory Rate

The government argues that Gomez-Sanchez has not shown, and Tolchin's declaration does not state, that Arulanantham's, Vakili's, and Iguina's distinctive knowledge or specialized skill was not available elsewhere at cost-of-living-adjusted EAJA statutory maximum hourly rates, citing *United States v. Real Prop. Known As 22249 Dolorosa St.*, 190 F.3d 977, 985 (9th Cir. 1999) and *Ramon-Sepulveda*, 863 F.2d at 1463.  In the government's cases, however, courts had determined that distinctive knowledge or specialized skills were not needed for the litigation.  *Id.*

Also, Gomez-Sanchez submits in reply a second declaration by Tolchin, stating that "I know of no one with expertise in the specialized subject matter needed to litigate this case who would have been available to do so at the statutory EAJA rate of $200.78 an hour.  I am confident that no such person exists."  Tolchin's second declaration satisfies Gomez-Sanchez's burden to show that qualified counsel is not available elsewhere at the cost-of-living-adjusted EAJA statutory maximum hourly rates.  *See Nadarajah*, 569 F.3d at 915 (citing *Atl. Fish Spotters Ass'n v. Daley*, 205 F.3d 488, 493 (1st Cir. 2000)); *Pirus v. Bowen*, 869 F.2d 536, 542 (9th Cir. 1989).

iv. Prevailing Market Hourly Rates

The government argues that Gomez-Sanchez has not shown that the requested enhanced hourly rates of $710 to $785 for Arulanantham, a 1999 law school graduate; $510 to $620 for Vakili, a 2006 law school graduate; and $450 to $475 for Iguina, a 2010 law school graduate, are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The government argues that Sobel's declaration is not probative of prevailing market hourly rates for immigration litigation, because her expertise is in complex civil rights and class action litigation and her opinion relies on hourly rates for large commercial law firms engaged in complex business litigation. The government argues that Tolchin's declaration does not state the prevailing market hourly rate for immigration practitioners in the relevant community, or her own hourly rate. The government's arguments lack merit.

The market for Gomez-Sanchez's attorneys' services is defined more broadly than immigration cases. *See Blum*, 465 U.S. at 893; *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010); *Van Skike v. Dir., OWCP*, 557 F.3d 1041, 1046-47 (9th Cir. 2009). "[T]he proper scope of comparison is not so limited, but rather extends to all attorneys in the relevant community engaged in

'equally complex Federal litigation,' no matter the subject matter." *See Prison Legal News*, 608 F.3d at 455 (quoting *Blum*, 465 U.S. at 893)).

Gomez-Sanchez has satisfied his burden to show that the requested hourly rates are in line with prevailing market hourly rates in the community for similar services by comparable attorneys. *See Blum*, 465 U.S. at 895 n.11. Arulanantham states that the ACLU polls Los Angeles attorneys and then sets its attorneys' hourly rates "at or near the low end of the spectrum." Sobel states that she has analyzed the fees charged by and awarded to Southern California attorneys in a variety of civil rights and other contexts. In Sobel's opinion, Gomez-Sanchez's requested enhanced hourly rates are reasonable. In Tolchin's opinion, the requested enhanced hourly rates are "well within the range of reasonable rates for attorneys of their skill, experience, and reputation in Southern California."

Sobel, a 1978 law school graduate, states that her 2018 hourly rate is $990. Tolchin, a 2001 graduate, replies in her second declaration that her 2018 hourly rate is between $500 and $630. The requested hourly rates for Gomez-Sanchez's attorneys are in line with Sobel's and Tolchin's hourly rates. In addition, Sobel provides many specific examples showing that Gomez-Sanchez's requested enhanced hourly rates are in line with hourly rates requested and awarded for similar services by comparable attorneys in Southern California, and she supports

these examples with the fee requests and awards accompanying her declaration. This court relied in part on a declaration by Sobel to award $300 to $335 enhanced hourly rates for Arulanantham's 2004 to 2006 work in *Nadarajah*, 569 F.3d at 916-918.

The government submits nothing to refute Arulanantham's, Sobel's, and Tolchin's declarations, and fails to meet its own "burden of rebuttal that requires submission of evidence . . . challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992). Gomez-Sanchez's requested enhanced hourly rates are reasonable, and they are awarded. *See Blum*, 465 U.S. at 895 n.11; *see also Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (court also may rely on its own knowledge of prevailing market hourly rates).

> b. Cost-Of-Living-Adjusted EAJA Statutory Maximum Hourly Rates

The government does not object to the requested cost-of-living-adjusted EAJA statutory maximum hourly rates for attorneys Alexander and Markovitz, and they are awarded. But the government objects to the requested cost-of-living-adjusted EAJA statutory maximum hourly rates for paralegal Tien, arguing that Gomez-Sanchez has not provided evidence of prevailing market hourly rates for

paralegals and that a paralegal should not be compensated at the same hourly rates as attorneys.  This objection lacks merit.

The requested cost-of-living-adjusted EAJA statutory maximum hourly rates for paralegal Tien are in line with prevailing market rates for comparable paralegals, and they are awarded.  *See Blum*, 465 U.S. at 895 & n.11.  According to their website, after serving as a legal assistant at the Federal Public Defender's office, Tien joined the ACLU of Southern California as a paralegal in 2007, and she is now the director of advocacy support.

Arulanantham states that the requested cost-of-living-adjusted EAJA statutory maximum hourly rates for paralegal Tien are comparable to hourly rates awarded for paralegals in other EAJA litigation.  The court may also rely on its own knowledge of prevailing market hourly rates for paralegals.  *See Ingram*, 647 F.3d at 928.  Moreover, EAJA caps paralegal and attorney fees at the same rate; Congress was not troubled that paralegals' fees could be recovered at a greater percentage of their full market value than attorneys fees' could be recovered under EAJA.  *See Richlin Sec. Serv. v. Chertoff*, 553 U.S. 571, 587-88 (2008).

2.  Reasonably Expended Hours

Gomez-Sanchez requests 232.93 hours for the attorneys' and paralegal's preparation of a petition for review, a motion to proceed in forma pauperis, a

motion to stay proceedings pending completion of the remand, two status reports, four notices regarding counsel, six motions for extensions of time or supplements to such motions, a 10,367-word opening brief, a 6,952-word reply brief, a hearing acknowledgment notice, a supplemental authorities citation, a letter to the court, a petition for panel rehearing, a fee motion, and a fee reply, as well as for Vakili's appearance at oral argument in San Francisco.

Arulanantham states that he analyzed the time records and eliminated duplicative or unnecessary hours, including some of Alexander's time for researching issues not critical to the fee motion.  The government objects to the requested 232.93 hours, arguing that they are excessive and should be substantially reduced.  (Gomez Sanchez originally requested more hours but, in reply to certain objections by the government, Gomez-Sanchez submitted corrected time records and reduced the requested hours.)

a.  Level Of Success

The government argues that Gomez-Sanchez's requested hours should be reduced, because the court did not address Gomez-Sanchez's argument that the agency's determination that mental health can never be considered as a factor in the particularly serious crime determination violates the Rehabilitation Act, 29 U.S.C. § 794.  *See Gomez-Sanchez*, 892 F.3d at 997 n.11.  The government argues

that Gomez-Sanchez's fee award "should be reduced to represent the portion of his counsels' efforts that led to his success." This argument lacks merit.[2]

"Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not sufficient reason for reducing a fee. The result is what matters." *Hensley*, 461 U.S. at 435; *see Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1173 (2019). Thus, when a party prevails on only some claims, the court must consider whether: (1) the party failed to prevail on claims that were unrelated to the claims on which the party succeeded, and (2) the party achieved a level of success that makes the hours reasonably expended a satisfactory basis for the fee award. *See Hensley*, 461 U.S. at 434; *Ibrahim*, 912 F.3d at 1172.

Gomez-Sanchez's prevailing arguments and the unaddressed Rehabilitation Act argument were related because they involved a common core of facts or were based on related legal theories. *See Hensley*, 461 U.S. at 435; *Ibrahim*, 912 F.3d at

---

[2]  Contrary to the government's argument, *Hardisty v. Astrue*, 592 F.3d 1072, 1077 (2010), is not relevant to the reasonably expended hours determination. In *Hardisty*, the district court denied EAJA fees because the government's position was substantially justified regarding the prevailing issue. *Id*. at 1075. This court held that the district court was not required to evaluate whether the government's position was substantially justified as to unaddressed issues. *Id*. at 1076-78. Here, in contrast, the court has held that the government's position was not substantially justified, and the question whether fees may be recovered for related issues is subject to a different, well-developed analysis.

16                          14-72506

1172.  The focus is on whether the claims arose out of a common course of conduct.  *Id*.  The relief sought on Gomez-Sanchez's unaddressed Rehabilitation Act argument was not intended to remedy a course of conduct "entirely distinct and separate" from the course of conduct that gave rise to the injury upon which the relief granted was premised -- the denial of withholding of removal based on a determination that Gomez-Sanchez was convicted of a particularly serious crime that did not consider his mental health as a factor.  *See Ibrahim*, 912 F.3d at 1174 & n.23; *O'Neal v. City of Seattle*, 66 F.3d 1064, 1069 (9th Cir. 1995).  As Tolchin states, Gomez-Sanchez's attorneys might have violated their ethical duties if they failed to raise the Rehabilitation Act as an alternative ground for relief, as that statute was the source of the most significant change in the law governing people with serious mental disorders in the immigration context.  *See Ibrahim*, 912 F.3d at 1177.

Gomez-Sanchez achieved full relief based on his prevailing arguments -- the court granted Gomez-Sanchez's petition for review, vacated the BIA's decision, and remanded for further proceedings consistent with the amended opinion.  *See Gomez-Sanchez*, 892 F.3d at 996-97.  The precedential BIA decision affected every person with a mental disorder who seeks withholding of removal and is subject to a particularly serious crime determination, underscoring Gomez-Sanchez's

achievement.  *See Ibrahim*, 912 F.3d at 1178.  Courts have uniformly declined to apportion fees where full relief was granted on some claims, rendering it unnecessary to reach related claims.  *See Ibrahim*, 912 F.3d at 1173.  Also, the Rehabilitation Act argument was not lost or unsuccessful; the court decided it was unnecessary to address it.  *Id*.  Because Gomez-Sanchez obtained excellent results on review, his attorneys should recover a fully compensable fee.  *See Hensley*, 461 U.S. at 435.  Gomez-Sanchez's level of success makes his attorneys' hours reasonably expended on the litigation as a whole a satisfactory basis for the fee award.  *See Hensley*, 461 U.S. at 434; *Ibrahim*, 912 F.3d at 1178.

> b.  Correspondence Regarding Gathering Fee Records

The government objects to a portion of 1.33 hours block billed by Arulanantham in part for correspondence regarding gathering fee records, arguing that the government should not have to pay for time spent seeking to reconstruct Iguina's lost records and that the work was clerical in nature.  *See Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989).  Gomez-Sanchez replies that most of the record-gathering time was billed by an administrative assistant and not included in the fee request.  Gomez-Sanchez contends that it was most efficient for Arulanantham to perform this particular work, because of his unique awareness of who worked on the case and when they did so.

Nevertheless, the record-gathering work was not legal in nature, and it may not be billed at an attorney's hourly rate, regardless of who performed it. *Id.* Arulanantham block billed the work with other tasks, so the court cannot determine what portion of time he spent on it. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007). The entire 1.33 hours ($1,044.05 in fees) are disallowed.

### c. Moot And Oral Argument Travel

Gomez-Sanchez objects to 11.5 hours billed by Vakili for moot and oral argument travel, arguing that the time should be disallowed or awarded at half of the EAJA statutory maximum hourly rate. Gomez-Sanchez argues that it is not clear whether Vakili worked on this matter or worked at all during the travel, citing *Furtado v. Bishop*, 635 F.2d 915, 922 (1st Cir. 1980). In reply, Gomez-Sanchez submits Vakili's declaration stating that he worked on this case during 4.83 hours of train travel to and from San Diego to Los Angeles for the moot, preparing for the moot and following up on matters arising from the moot. Vakili also states that he worked on the case during 3.67 hours of plane travel from San Diego to San Francisco for the oral argument, finalizing his preparations for oral argument.

Vakili's 8.5 hours of travel while working on this matter were reasonably expended, and these hours are awarded at Vakili's enhanced hourly rate. *See Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1992); *Henry v.*

*Webermeier*, 738 F.2d 188, 194 (7th Cir. 1984). Because Vakili does not state if he worked on another case during his 3 hours of return travel from the oral argument, these hours ($1,770 in fees) are disallowed. *See Henry*, 738 F.2d at 194.

### d. Other Objections

The government's objection to Iguina's billing of 3.17 hours and 3.83 hours for the same work on the same date lacks merit. Iguina reasonably expended 7 hours in one day reviewing the administrative record and relevant case law and drafting a litigation memorandum for approval of the litigation. *See Hensley*, 461 U.S. at 433-34; *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). The government's objection to discrepancies in the hours that Arulanantham and Vikili billed for the same activities also lacks merit. In reply, Vakili states that Arulanantham left moots or co-counsel calls earlier than he did.

The government argues that Iguina's reconstruction of 40 hours based on the other attorneys' time records, after her post-August 2015 time records were lost, makes it difficult to determine the hours' accuracy or reasonableness. The government also questions the reliability of the recordkeeping, and requests reduction of the fee award on this ground. These arguments lack merit.

Although the court prefers contemporaneous records, they are not absolutely necessary. *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000).

"Fee requests can be based on 'reconstructed records developed by reference to litigation files.'" *Id.* (quoting *Davis*, 976 F.2d at 1473). Iguina states she conservatively estimated that she spent 40 hours reviewing the agency record, researching the relevant case law, and drafting the opening and reply briefs. Because the time claimed is corroborated by the other attorneys' time records, the court's docket, and Gomez-Sanchez's pleadings, the reliability of the recordkeeping is not reasonably in question, and no reduction is warranted on this ground.

### e. Reasonably Expended Hours Summary

A review of the time records, the docket, the briefs and other pleadings, and the oral argument reveals no excessive, redundant, or otherwise unnecessary hours. *See Hensley*, 461 U.S. at 434. No other clerical work was billed at attorney or paralegal hourly rates. *See Jenkins*, 491 U.S. at 288 n.10. Gomez-Sanchez's attorneys and paralegal reasonably expended the remaining 228.6 hours, and these hours are awarded. *See Hensley*, 461 U.S. at 433-34; *Moreno*, 534 F.3d at 1112.

### 3. Attorneys' Fees Summary

Gomez-Sanchez is awarded $107,146.37 in attorneys' fees.

B. Costs

Gomez-Sanchez requests $57.52 in costs for a FedEx delivery to the court and for Pacer research. The government argues that these costs should be denied because Gomez-Sanchez did not file a timely bill of costs, citing Federal Rule of Appellate Procedure 39(d)(1) and *Haselwander v. McHugh*, 797 F.3d 1, 2 (D.C. 2015). This argument lacks merit. Only certain limited costs for copying the briefs and excerpts of record are taxable in a cost bill. *See* Fed. R. App. P. 39(c); 9th Cir. R. 39-1.1 - 1.3. Gomez-Sanchez's requested costs are non-taxable, and they may be included in an EAJA fee award. *See Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 579-82 (9th Cir. 2010); *Trs. of Constr. Indus. & Laborers Health & Welfare Trust*, 460 F.3d 1253, 1257-59 (9th Cir. 2006). Gomez-Sanchez's requested non-taxable costs are reasonable, and they are awarded.

III
Conclusion

Pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, attorneys' fees and non-taxable costs in the amount of $107,203.89 are awarded in favor of Guillermo Gomez-Sanchez and against William P. Barr, Attorney General.

This order amends the court's mandate.

Exhibit 5 to Sobel Declaration

Case 2:85-cv-04544-DMG-AGR Document 1282-13 Filed 08/29/22 Page 81 of 199 Page ID
Case 2:17-cv-00094-RAJ Document 228 Filed 02/27/19 Page 1 of 13
#:47805

HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ABDIQAFAR WAGAFE, *et al.*, on behalf of themselves and others similarly situated, | CASE NO. C17-94 RAJ |
| Plaintiffs, | ORDER |
| v. | |
| DONALD TRUMP, President of the United States, *et al.*, | |
| Defendants. | |

This matter comes before the Court on Plaintiffs' Motion for Sanctions. Dkt. #
137. Defendants oppose the Motion. Dkt. # 146. For the following reasons, the
Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion for
Sanctions.    **I. BACKGROUND**

The procedural and factual history of this case is exhaustive, and the Court will
not endeavor to recount every fact in this saga. However, a discussion of the events
serving as the basis for Plaintiffs' present Motion for Sanctions is necessary to
understand the full context of Plaintiffs' request.

On June 21, 2017, the Court granted Plaintiffs' motion to certify two classes: a Naturalization Class and an Adjustment Class.  Dkt. # 69.  Sometime in 2017, Plaintiffs propounded discovery on Defendants.  As part of their Requests for Production, Plaintiffs sought information regarding why Named Plaintiffs' applications were subjected to CARRP.  Dkt. # 140 at 138-45.  Defendants responded to these Requests by objecting "insofar as [they] assume[] that" the Named Plaintiffs' applications were subjected to CARRP.  *Id.*  Defendants neither confirmed nor denied that Named Plaintiffs' applications were subjected to CARRP and stated that "USCIS intends to withhold such Documents, as disclosure of the fact that such documents exist would negate the privilege, and any such documents are, themselves, likely to be privileged."  *See, e.g.*, *id.* at 138.

Plaintiffs were not satisfied with Defendants' response and moved to compel, among other items, the production of documents indicating whether the Named Plaintiffs were subjected to CARRP, and if so, the reasons why.  Dkt. # 91 at 8.  Defendants did not address this issue in their Response to Plaintiffs' Motion to Compel, and Plaintiffs argued in reply that this lack of opposition was a concession.  Dkt. ## 94, 95.  The Court found merit in Plaintiffs' Motion to Compel and granted it in part, requiring Defendants to disclose information explaining why the Named Plaintiffs' applications were subjected to CARRP.  Dkt. # 98.  Defendants sought reconsideration of this Order with regard to the section addressing the class list, but did not raise any issue with the Court's order to produce information regarding why the Named Plaintiffs' applications were subjected to CARRP.  Dkt. # 99.  The Court denied Defendants' motion for reconsideration.  Dkt. # 102.

In December 2017, Defendants represented that they would produce documents "referring or relating to the reasons why each named Plaintiffs' immigration benefit application was subjected to the CARRP."  Dkt. # 140 at 246.  No party addressed what kinds of documents contained this information.  At some point, Defendants apparently

indicated to Plaintiffs that the "why" information was contained in the Named Plaintiffs' A Files. Dkt. # 137 at 15 ("According to Defendants, the relevant information regarding why Named Plaintiffs were subjected to CARRP is in their Alien Files."); *see also* Dkt. # 146 at 9 (explaining that "the Court acknowledged that Defendants intended to claim privilege over documents in the A Files, including 'why' documents"). To be sure, the Court has no independent record that Defendants have confirmed that the "why" documents are synonymous with the A Files. *See, e.g.*, Dkt. # 140 at 246 (delineating between "why" documents and A Files).

In February 2018, Defendants agreed to produce non-privileged documents contained in the A Files, stating that they would produce these documents by February 28, 2018. Dkt. # 114. Defendants subsequently produced redacted A Files, though Plaintiffs allege that none of them contained information related to why the Named Plaintiffs' applications were subjected to CARRP. Dkt. # 132 at 6. At this point, Defendants apparently did not produce documents—whether in the form of unredacted A Files or otherwise—related to why Named Plaintiffs' applications were subjected to CARRP.

In the instant motion, Defendants assert that "[a]t the time of Plaintiffs' September 2017 motion to compel, the issue in dispute was whether Defendants had to acknowledge that named Plaintiffs were subjected to CARRP, not whether any particular piece of information in their A files was privileged." Dkt. # 169 at 2 n.1. It is true that the Motion to Compel did not directly address whether certain documents within the A Files were privileged, or even whether these A Files contained the "why" information that Plaintiffs sought. However, the Motion to Compel directly sought both the "whether" and the "why" information, and Defendants raised no objection; Defendants did not argue that either the "whether" or "why" information was privileged, nor did Defendants argue that merely addressing the "whether" issue was privileged. Defendants remained silent on the matter even though they raised these threshold objections in response to the initial

1  Requests for Production.  Dkt. # 140 at 138, 140, 142, 143, 144, 145.  Therefore, the

2  issue before the Court at the time of the Motion to Compel was whether Defendants

3  needed to produce documents regarding why the Named Plaintiffs' applications were

4  subjected to CARRP, and the Court found affirmatively.

5      On March 29, 2018, Plaintiffs filed the present Motion for Sanctions against

6  Defendants based on their discovery conduct and refusal to abide by the Court's orders.

7  Plaintiffs argued, in part, that Defendants are violating the Court's order compelling

8  production of information about why Named Plaintiffs' applications were subjected to

9  CARRP.  Plaintiffs' argument is based on Defendants' refusal to produce unredacted A

10  Files, and requested relief in the form of these unredacted A Files and attorneys' fees

11  incurred in litigating these discovery abuses.  Dkt. # 137 at 17-20.  In response to the

12  Motion for Sanctions, Defendants requested leave to submit two documents *ex parte* and

13  *in camera* that would contain "sensitive nonpublic explanations of the harms and risks

14  that can be expected to result if information Defendants have withheld from production

15  were disclosed outside the U.S. government."  Dkt. # 147 at 2.  Defendants' motion

16  argued that the parties have not had the opportunity to brief the privilege issues

17  associated with unredacting the A Files.  *Id.*  As such, Defendants proposed submitting

18  documents *ex parte* and *in camera* to explain to the Court why Defendants were unable to

19  produce unredacted A Files.  *Id.*  On May 4, 2018, in light of the national security claims

20  and new privilege issues raised, this Court granted Defendants' request to file two such

21  documents *ex parte* and *in camera*.  Dkt. # 181.  The Court then reviewed the documents

22  Defendants submitted.

23      On December 18, 2018, this Court held a telephonic conference with the parties to

24  discuss, among other issues, the status of Plaintiff's Motion for Sanctions.  Dkt. # 211.

25  In this conference, Plaintiffs explained that they no longer sought sanctions relief for

26  Defendants' failure to produce the class list or identify custodians on the President-

27  Elect's transition team.  Plaintiffs stated, however, that they still sought sanctions for

1   Defendants' refusal to comply with previous Court orders concerning the production

2   schedule and compelling information for why the named Plaintiffs were subject to

3   CARRP in the form of unredacted A Files.  Defendants responded that the Court's May

4   4, 2018 Order essentially acted as a reconsideration of its directive ordering Defendants

5   to produce the "why" information, and that this information would be addressed in the

6   parties' upcoming discovery briefing.

7          This case was stayed due to a lapse of appropriations from January 14, 2019 to

8   January 29, 2019.  Now that the stay is lifted, the Court considers Plaintiff's Motion for

9   Sanctions.  Dkt. # 137.

10  **II.      LEGAL STANDARD**

11         The Court has broad discretion to control discovery.  *Hallett v. Morgan*, 296 F.3d

12  732, 751 (9th Cir. 2002); *see also Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828,

13  833 (9th Cir. 2011), *In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988).  That

14  discretion is guided by several principles.  Most importantly, the scope of discovery is

15  broad.  "Parties may obtain discovery regarding any nonprivileged matter that is relevant

16  to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P.

17  26(b)(1).

18         Under the Federal Rules of Civil procedure, if requested discovery is withheld

19  inappropriately or not answered, the requesting party may move for an order compelling

20  such discovery.  Fed. R. Civ. P. 37(a)(1).  "The party who resists discovery has the

21  burden to show that discovery should not be allowed, and has the burden of clarifying,

22  explaining, and supporting its objections."  *Cable & Computer Tech., Inc. v. Lockheed*

23  *Saunders, Inc*., 175 F.R.D. 646, 650 (C.D. Cal. 1997).  If a party fails to comply with a

24  discovery order, the Court may also sanction that party accordingly.  Fed. R. Civ. P.

25  37(b)(2).  The Court has broad discretion to decide whether to compel disclosure of

26  discovery and whether to award sanctions.  Fed. R. Civ. P. 37(a)(5); *Phillips ex rel.*

27  *Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002).  Sanctions

under Rule 37(b) are likewise left to the Court's discretion. *David v. Hooker, Ltd.*, 560
F.2d 412, 418 (9th Cir. 1977). Rule 37 sanctions also apply to government actors and
agencies. *United States v. Nat'l Med. Enterprises, Inc.*, 792 F.2d 906, 911 (9th Cir.
1986); *Chilcutt v. United States*, 4 F.3d 1313, 1326 (5th Cir. 1993); *see also Hernandez v.
Sessions*, EDCV16620JGBKKX, 2018 WL 276687, at *3 (C.D. Cal. Jan. 3, 2018)
(ordering governmental defendants to pay $22,820.00 as reasonable attorney's fees and
costs pursuant to Fed. R. Civ. P. 37(a)(5)(A)).

Moreover, Courts are vested with inherent powers that are "governed not by rule
or statute but by the control necessarily vested in courts to manage their own affairs so as
to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*,
501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-631
(1962)). The Ninth Circuit "has recognized as part of a district court's inherent powers
the broad discretion to make discovery and evidentiary rulings conducive to the conduct
of a fair and orderly trial." *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982
F.2d 363, 368 (9th Cir. 1992). Additionally, a district court "has the inherent authority to
impose sanctions for bad faith, which includes a broad range of willful improper
conduct." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001).

Sanctions issued under a court's inherent power "are available if the court
specifically finds bad faith or conduct tantamount to bad faith." *B.K.B. v. Maui Police
Dep't*, 276 F.3d 1091, 1107-08 (9th Cir. 2002) (quoting *Fink*, 239 F.3d at 994). The
court may therefore issue sanctions "for a variety of types of willful actions, including
recklessness when combined with an additional factor such as frivolousness, harassment,
or an improper purpose." *Id.* (quoting *Fink*, 239 F.3d at 994). For example, a finding of
bad faith is warranted where an attorney "knowingly or recklessly raises a frivolous
argument, or argues a meritorious claim for the purpose of harassing an opponent."
*Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997). A party also
demonstrates bad faith by "delaying or disrupting the litigation or hampering

1  enforcement of a court order." *Id.* (quoting *Hutto v. Finney,* 437 U.S. 678, 689 n.14

2  (1978)).

3  **III.  DISCUSSION**

4      Defendants are correct in that the world now is very different than the one that

5  existed when Plaintiff's Motion for Sanctions was first filed.  Both parties acknowledge

6  that the communication between the parties had improved dramatically as compared to

7  the early stages of this case.  The Court appreciates the parties' transition to a more civil

8  mode of discourse.  However, with Plaintiff's Motion for Sanctions still outstanding, the

9  Court must look back in time to determine if sanctions would be appropriate in light of

10  Defendants' previous conduct.

11      Following the December 18, 2018 conference between the parties, the Court

12  understands that Plaintiffs' Motion for Sanctions now only seeks relief on two of the

13  original grounds they identified: (1) production of unredacted A Files; and (2) attorneys'

14  fees incurred with Plaintiffs' discovery efforts.  Dkt. ## 137, 211.  As for the other

15  grounds of relief identified in Plaintiffs' Motion for Sanctions, Plaintiffs' Motion is

16  **DENIED**.  The Court will consider Plaintiffs' remaining grounds in turn.

17      A.  <u>Production of Unredacted A-Files</u>

18      As stated above, Plaintiffs' Motion for Sanctions seeks disclosure of the Named

19  Plaintiffs' unredacted A Files, which Plaintiffs argue were subject to disclosure via this

20  Court 's October 19, 2017 Order.  Dkt. # 137 at 20.  Defendants had produced the A Files

21  for the Named Plaintiffs, but in redacted form.  In their Response to Plaintiff's Motion for

22  Sanctions, Defendants filed another motion arguing that the parties had not previously

23  had the opportunity to brief the privilege issues associated with producing unredacted A

24  Files.  After supplemental briefing from the parties, the Court permitted Defendants to

25  file two classified documents attesting to the national security risks of disclosure *ex parte*

26  and *in camera*, though it also expressed skepticism that Defendants could not have

27  brought these issues to light sooner.  Dkt. # 181.

1    The Court has reviewed the documents Defendants' furnished and finds that

2   Defendants' motion (Dkt. # 141) raised facially credible national security arguments.

3   Although the Court believes Defendants could have, and should have, asserted its

4   privilege claims much sooner, after reviewing the documents submitted to the Court, the

5   Court does not believe that Defendants' ultimate position in not producing the unredacted

6   A Files was "substantially unjustified" to the point of deserving sanctions from this Court

7   for noncompliance.  While the Court does not rule on the ultimate viability of these

8   privilege claims in this Order, it will not compel the production of the unredacted A Files

9   as a sanction for noncompliance under Fed. R. Civ. P. 37(b)(2)(C).

10   Accordingly, on this point, the Court will **DENY** Plaintiffs' Motion for Sanctions.

11   At this time, the Court will not direct Defendants to produce unredacted A Files.

12   B.  Attorneys' Fees

13   Plaintiffs' other remaining request for sanctions relief centers on Defendants'

14   resistance to Plaintiffs' discovery request and Plaintiffs' need to file motions to compel

15   Defendants' compliance.  Dkt. # 137 at 17-19.  Pursuant to Federal Rule of Civil

16   Procedure 37, if a court grants in part and denies in part a motion for an order compelling

17   disclosure or discovery, as was the case with Plaintiffs' Motion to Compel (Dkt. # 91),

18   the court may "apportion reasonable expenses" after giving the parties "an opportunity to

19   be heard." *See* Fed. R. Civ. P. 37(a)(5)(C).  Moreover, as stated above, if a party fails to

20   comply with a discovery order, as Plaintiffs allege in the present Motion for Sanctions,

21   the Court may also sanction that party accordingly.  Fed. R. Civ. P. 37(b)(2).  The Court

22   also has inherent authority to impose sanctions for discovery conduct undertaken in bad

23   faith. *Primus*, 115 F.3d at 649.

24   As stated above, the ultimate justification for withholding unredacted A Files

25   based on did not rise to the level of being "substantially unjustified."  Defendants

26   eventually put forth credible arguments for why certain information in these A Files

27   should not be disclosed without additional protections for national security reasons.

Case 2:85-cv-04544-DMG-AGR   Document 1282-13   Filed 08/29/22   Page 89 of 199   Page ID
#:47813
Case 2:1-cv-00094-RAJ   Document 228   Filed 02/27/19   Page 9 of 13

1  Defendants' delays in bringing these privilege assertions before the Court are of a more
2  dubious nature.  As indicated above and in a previous order (Dkt. # 181), the Court finds
3  that these explanations and justifications should have been asserted much sooner in the
4  case.  It took multiple motions, including Plaintiff's Motion to Compel (Dkt. # 91) and
5  this Motion for Sanctions, to yield a response from Defendants that passed muster,
6  despite the presence of orders from this Court directing disclosure of this information.

7       For nearly a year, Defendants' positions in refusing to allow any discovery, or
8  greatly limited discovery, delayed this case schedule and increased the cost of this
9  litigation significantly.  Defendants resisted, without providing adequate support, most of
10  Plaintiffs' attempts to obtain relevant documentation in any form.  The Court issued
11  multiple orders against Defendants directing them to produce the discovery sought by
12  Plaintiffs, which Defendants met with pushback and delayed production schedules.  It
13  was not until Defendants' Response to this Motion for Sanctions that a credible basis for
14  their privilege assertions as to the unredacted A Files was first articulated.

15       The Court finds that Defendants' conduct early in this case in resisting Plaintiff's
16  discovery efforts was undertaken in bad faith.  Defendants' conduct delayed resolution in
17  this case and greatly hampered enforcement of this Court's early discovery-related
18  orders.  In the months that followed the briefing of this Motion for Sanctions,
19  Defendants' behavior improved, and there are plenty of indications that the parties
20  eventually reached a higher level of courtesy and cooperation regarding outstanding
21  discovery issues.  *See, e.g.,* Dkt. # 205.  The Court applauds this improvement in
22  decorum and civility.  However, the Court expects this to be the starting point for
23  discovery negotiations, not the end result of nearly a year of discovery battles.  Plaintiffs
24  expended a large amount of time and resources in litigating against Defendants'
25  discovery abuses early in this litigation, and there is no question Defendants' behavior
26  greatly delayed resolution of this case.

27

ORDER- 9

1    Accordingly, the Court will **GRANT IN PART** Plaintiffs' Motion for Sanctions

2 on this point.  In doing so, the Court will **ORDER** Defendants to pay Plaintiffs'

3 reasonable attorney fees incurred in bringing the September 2017 Motion to Compel

4 (Dkt. # 91) and this Motion for Sanctions (Dkt. # 137).  The question then turns as to the

5 proper amount of the fee award.  District courts have broad discretion to determine the

6 reasonableness of fees.  *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992).  To

7 make this determination, courts determine the "lodestar amount," which is calculated by

8 multiplying the number of hours reasonably expended by a reasonable hourly rate.

9 *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).  The lodestar figure

10 is presumptively a reasonable fee award.  *Id*. at 977.  The moving party has the burden to

11 produce evidence that the rates and hours worked are reasonable.  *See Intel Corp. v.*

12 *Terabyte Int'l*, 6 F.3d 614, 623 (9th Cir. 1983).

13    To assist the Court in calculating the lodestar, the fee applicant must submit

14 "satisfactory evidence . . . that the requested rates are in line with those prevailing in the

15 community for similar services by lawyers of reasonably comparable skill, experience,

16 and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895–96 n.11 (1984).  The relevant

17 community is that in which the district court sits.  *See Schwarz v. Sec'y of Health &*

18 *Human Serv.*, 73 F.3d 895, 906 (9th Cir. 1995).  As for the fees incurred in in bringing

19 the September 2017 Motion to Compel (Dkt. # 91), Plaintiffs have submitted a number of

20 declarations attached to this Motion for Sanctions that detail the experience, hourly rate,

21 hours, and work performed by Plaintiffs' attorneys.  Dkt. ## 138-45.  Defendants do not

22 address the reasonableness of Plaintiffs' attorneys' rates in their Response, with the

23 exception of a footnote where Defendants "request the opportunity to provide the Court

24 both a line-item analysis and an evaluation of the hourly rates claimed by Plaintiffs'

25 counsel."  Dkt. # 146 at p. 17, n.8.  The Court rejects this request.  Defendants had such

26 an opportunity to contest the rates and hours worked by Plaintiffs' attorneys' in their

27 Response, but chose instead to include only a footnote and a short argument that the

ORDER- 10

1 award should be limited to the hours spent after February 28, 2018. *Id.* at 17. This

2 approach ignores the fact that the Court has the power to award attorneys' fees under

3 either Rule 37(a), Rule 37(b), or this Court's inherent authority to award sanctions for

4 bad faith discovery abuses, all of which permit the Court to award fees before February

5 2018.

6      The Court has reviewed the rates claimed for Plaintiffs' attorneys and finds them

7 reasonable. In reaching that determination, the Court relies on declarations that the rates

8 identified are the normal hourly rates, the experience of Plaintiffs' attorneys, the

9 Declaration of Carol Sobel (Dkt. # 138) to the extent it addresses the rates of attorneys

10 outside of this District, Defendant' lack of stated opposition to the reasonableness of the

11 rates, and on its familiarity with legal fees in the Western District of Washington at the

12 relevant time period.

13      As for the number of hours worked, in determining the reasonableness of hours

14 spent preparing a motion, the Court may exclude any hours that are excessive, redundant,

15 or otherwise unnecessary. *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983). The

16 Court believes that the award should be limited to the time incurred litigating the Motion

17 to Compel, not the resulting discovery communications or time spent litigating

18 Defendants' Motion for Reconsideration. Fed. R. Civ. P. 37(a)(5). Fortunately, the

19 declarations of Matt Adams, Sameer Ahmed, Nicholas P. Gellert, Hugh Handeyside,

20 Trina Realmuto, and Stacy Tolchin submitted by Plaintiffs delineate the hours and fees

21 incurred in bringing that Motion to Compel.

22      Here, the Court finds the amount of time Plaintiffs' counsel spent litigating the

23 Motion to Compel, i.e. 125.76 hours, to be reasonable in light of the complicated and

24 difficult nature of the case, the number of attorney timekeepers, the lack of opposition

25 from Defendants, and Defendants' resistance and delayed responses to Plaintiff's

26 discovery efforts. The Court also believes that because Plaintiffs were not fully

27 successful on their Motion to Compel (Dkt. ## 91, 98), a 75% reduction of the total fees

ORDER- 11

claimed is warranted.  This apportionment is approximately in line with the percentage of arguments Plaintiffs prevailed on in their Motion to Compel.  Dkt. # 98.  The Court calculates the total amount of attorneys' fees to be awarded in connection with the Motion to Compel as $50,507.92.  This amount represents 75% of the sum of the hours and fees claimed in the declarations as follows:

| Timekeeper | Hourly Rate | Hours Worked | Total |
|---|---|---|---|
| Hugh Handeyside | $646.64 | 1.6 | $1,034.62 |
| Matt Adams | $779.74 | 6.3 | $4,912.36 |
| Harry H. Schneider, Jr. | $895 | 5.1 | $4,564.50 |
| Nicholas P. Gellert | $600 | 5.7 | $3,420.00 |
| David Perez | $510 | 9.5 | $4,845.00 |
| Laura Hennessey | $440 | 56.8 | $24,992.00 |
| Sameer Ahmed | $573.95 | 9.05 | $5,194.25 |
| Jennifer Pasquarella | $646.64 | 7.51 | $4,856.27 |
| Stacy Tolchin | $646.64 | 5.4 | $3,491.86 |
| Trina Realmuto | $779.74 | 6.7 | $5,224.26 |
| Kristin Macleod-Ball | $397.42 | 12.1 | $4,808.78 |

As for the Motion for Sanctions, the Court agrees that fees incurred in bringing this additional motion seeking to compel compliance with this Court's Orders and the Civil Rules may be recoverable.  However, Plaintiffs did not submit any declarations setting forth the time incurred in drafting the Motion for Sanctions, but requested leave to do so.  Dkt. # 137 at 18-19.  Defendants do not appear to respond to this request, other than to "reserve the right to challenge any fees the records for which were not appended to the motion for sanctions" in the aforementioned footnote.  Dkt. # 146 at p. 17, n.8.

Case 2:85-cv-04544-DMG-AGR Document 1282-10 Filed 08/29/23 Page 93 of 199 Page ID
#:47817
Case 2:17-cv-00094-RAJ Document 223 Filed 02/27/19 Page 13 of 13

Accordingly, the Court will require supplemental briefing from the parties on this issue. **Within fourteen (14) days of this Order, Plaintiffs are directed to file supplemental briefing detailing the reasonable attorneys' fees incurred in preparing and filing its Motion for Sanctions, in a filing not to exceed ten (10) pages. Within fourteen (14) days of Plaintiffs' filing, Defendants may file an opposition not to exceed ten (10) pages**.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Plaintiffs' Motion for Sanctions.  Dkt. # 137.  Defendants are hereby **ORDERED** to pay Plaintiff's attorneys' fees incurred in litigating Plaintiffs' Motion to Compel (Dkt. # 91) in the amount of $50,507.92.  Within fourteen (14) days of this Order, Plaintiffs are directed to file supplemental briefing detailing the reasonable attorneys' fees incurred in preparing and filing its Motion for Sanctions (Dkt. # 137), in a filing not to exceed ten (10) pages.  Within fourteen (14) days of Plaintiffs' filing, Defendants may file an opposition not to exceed ten (10) pages.

Dated this 27th day of February, 2019.

The Honorable Richard A. Jones
United States District Judge

ORDER- 13

Exhibit 6 to Sobel Declaration

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **SACV 19-815 JGB (SHKx)** | Date | January 2, 2020 |
|---|---|---|---|

| Title | ***Ubaldo Arroyo, et al. v. United States Department of Homeland Security, et al.*** |
|---|---|

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

Proceedings:    **Order (1) GRANTING Plaintiffs' Motion for Attorneys' Fees (Dkt. No. 50); and (2) VACATING the January 6, 2020 Hearing (IN CHAMBERS)**

     Before the Court is a Motion for Attorneys' Fees filed by Plaintiffs Ubaldo Arroyo, Jorge Poroj Sac, Atemnkeng Becky Njualem, Sergio Jonathan Moreno, Elieser David Blea, Santiago Guevara-Melgar, Bashir Abdi Wabare, Tanyi Ferick Awungdeu, Nguanyi Atabong Queenida, Asmerom Zemede Enabi, Public Law Center, and Public Counsel (collectively, "Plaintiffs").[1] ("Motion," Dkt. No. 50.) The Court finds the Motion appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court GRANTS the Motion. The Court vacates the hearing set for January 6, 2020.

## I. BACKGROUND

     On March 27, 2019, the Orange County Sherriff's Department ("OCSD") notified Defendant United States Immigration and Customs Enforcement ("ICE") that it would terminate its contract to house immigrant detainees. (Motion at 2.) Both ICE and OCSD subsequently announced that the affected detainees, including those represented by local counsel, would be moved out of the ICE Los Angeles Field Office's Area of Responsibility ("AOR") to detention facilities in San Francisco, Florida, and other states. (Id. at 2–3.)

---

     [1] Plaintiffs Arroyo, Sac, Njualem, Moreno, Blea, Guevara-Melgar, Wabare, Awungdeu, Queenida, and Enabi will be referred to collectively as "Immigrant Plaintiffs." Public Law Center and Public Counsel will be referred to as "Organization Plaintiffs."

---

Case 2:85-cv-04544-DMG-AGR   Document 1282-10   Filed 08/09/22   Page 96 of 199   Page ID
Case 8:19-cv-00013-MGB-AGR   Document 582-1   Filed 01/02/26   Page 2 of 96   Page ID #:857
#:47820

On May 2, 2019, Plaintiffs filed a complaint against the following Defendants: United States Department of Homeland Security ("DHS"), Kevin K. McAleenan, ICE, Ronald D. Vitello, Thomas Giles, Jennifer Herrera, Luke South, and Lisa Von Nordheim (collectively, "Defendants"). ("Complaint," Dkt. No. 1.) Plaintiffs' Complaint is a verified petition for writ of habeas corpus and a complaint for injunctive and declaratory relief. (Id.) The Complaint alleges that Defendants' conduct violates the Immigration and Nationality Act ("INA"), the Due Process Clause of the Fifth Amendment, the First Amendment (on behalf of Immigrant Plaintiffs), the First Amendment (on behalf of Organization Plaintiffs), and the Administrative Procedure Act ("APA").

On May 13, 2019, Plaintiffs moved to certify a class and for a preliminary injunction. (Dkt. Nos. 14, 17.) On June 20, 2019, the Court granted-in-part and denied-in-part those motions and provisionally certified a class of "[a]ll immigrants imprisoned at the James A. Musick Facility and the Theo Lacy Facility and who have attorneys within the ICE Los Angeles Field Office's Area of Responsibility." ("Order," Dkt. No. 46 at 33.) The Court further enjoined Defendants from "transferring immigration detainees currently held at the Theo Lacy and James A. Musick Facilities to facilities outside the ICE Los Angeles Field Office's Area of Responsibility if those detainees have attorneys within the ICE Los Angeles Field Office's Area of Responsibility." (Id.) On July 18, 2019, Federal Defendants filed a declaration stating that there were no immigration detainees housed in either facility maintained by the OCSD. (Dkt. No. 41.) Plaintiffs voluntarily dismissed their complaint on August 5, 2019. (Dkt. No. 44.)

On October 21, 2019, Plaintiffs filed this Motion. (Motion.) In support of the Motion, Plaintiffs filed the Declaration of Ahilan Arulanantham, the Declaration of Carol Sobel, and the Declaration of Jayashri Srikantiah. ("Arulanantham Declaration," Dkt. No. 50-2, "Sobel Declaration," Dkt. No. 50-4, "Srikantiah Declaration," Dkt. No. 50-6.) Defendants Thomas Giles, Jennifer Herrera, Kevin K. McAleenan, United States Department of Homeland Security, United States Immigration and Customs Enforcement, and Ronald D. Vitiello (collectively, "Federal Defendants") opposed the Motion on November 25, 2019. ("Opposition," Dkt. No. 51.) Plaintiffs replied on December 16, 2019. ("Reply," Dkt. No. 52.) In support of the Reply, Plaintiffs filed a Supplemental Declaration of Ahilan Arulanantham. ("Arulanantham Supplemental Declaration," Dkt. No. 52-1.)

## II.   LEGAL STANDARD

The Equal Access to Justice Act ("EAJA") provides that "a court shall award to a prevailing party . . . fees and other expenses . . . incurred by that party in any civil action . . . including proceedings for judicial review of agency action, brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The burden of proving the substantial justification exception to the mandatory award of fees under the EAJA lies with the government. Love v. Reilly, 924 F.2d 1492, 1495 (9th Cir. 1991). The Supreme Court has defined "substantial justification" as:

justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person. [This standard] is no different from the "reasonable basis in both law and fact" formulation adopted by the Ninth Circuit and the vast majority of other Courts of Appeals that have addressed this issue.

Pierce v. Underwood, 487 U.S. 552, 565 (1988).  A position does not have to be correct to be substantially justified; rather, the standard is satisfied if there is a "genuine dispute." Id. at 565 and 566 n.2; see also Lewis v. Barnhart, 281 F.3d 1081, 1083 (9th Cir. 2002).  In determining the reasonableness of the government's position under the 'totality of the circumstances' test, the district court reviews both the underlying governmental action being defended in the litigation and the positions taken by the government in the litigation itself. 28 U.S.C.  § 2412(d)(1)(B); Gutierrez v. Barnhart, 274 F.3d 1255, 1259 (9th Cir. 2001).

"The amount of attorneys' fees awarded under EAJA must be reasonable." Nadarajah v. Holder, 569 F.3d 906, 910 (9th Cir. 2009).  Attorney's fees for hours that are not "reasonably expended" or that are "excessive, redundant, or otherwise unnecessary" are not compensable. See Hensley v. Eckerhart, 461 U.S. 424, 434 (1983); see also I.N.S. v. Jean, 496 U.S. 154, 161 (1990) (holding Hensley applies to EAJA cases).  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley, 461 U.S. at 433–34.  However, in determining what constitutes a reasonable fee award under the EAJA, "courts should generally defer to the 'winning lawyer's professional judgment as to how much time he was required to spend on the case.'" See Costa v. Commissioner of Social Security Administration, 690 F.3d 1132, 1136 (9th Cir. 2012) (quoting Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th Cir. 2008)).

## III.  DISCUSSION

Plaintiffs argue that they are entitled to $144,876.04 in attorneys' fees and costs because (1) they are the prevailing party[2], (2) Defendants' position was not substantially justified, and (3) the hours they expended and the enhanced rates they seek are reasonable considering the complexity of the issues involved. (See Motion; Reply.)  Federal Defendants disagree on all three points and argue that an award of attorneys' fees is inappropriate. (See Opposition.)

## A.  Prevailing Party

A party is a "prevails" for the purposes of EAJA recovery when it achieves a "material alteration of the legal relationship between the parties" that is "judicially sanctioned."

---

[2] Plaintiffs also argue that because Organization Plaintiffs are nonprofit organizations as described by section 501(c)(3) of the Internal Revenue Code and Individual Plaintiffs are individuals, all are eligible to recover attorneys' fees under EAJA. (Motion at 5.)  Defendants do not dispute this point.

**CIVIL MINUTES—GENERAL**

<u>Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.</u>, 532 U.S. 598, 605 (2001). Therefore, when "the plaintiff wins a preliminary injunction and the case is subsequently rendered moot by the defendant's own actions" the plaintiff may be the prevailing party. <u>See</u> <u>Higher Taste, Inc. v. City of Tacoma</u>, 717 F.3d 712, 717 (9th Cir. 2013).

Federal Defendants argue that Plaintiffs did not prevail because Defendants never intended to do what Court ultimately enjoined them from doing. (Opposition at 1–3.) They assert that "[e]ven before Plaintiffs filed their Complaint, a pre-existing ICE policy directive prohibited Defendants from transferring any detainee with immediate family or attorney of recorded within the AOR" and "Defendants never intended to deviate from that policy." (<u>Id.</u> at 1.) But what Defendants intended to do is irrelevant to whether the preliminary injunction altered the legal relationship between the parties. Before the preliminary injunction issued, Defendants were theoretically free to choose their position with respect to the represented detainees—they could (as they claim they were planning to do) choose to keep represented immigrants within the AOR. Alternatively, they could opt to move the represented detainees to detention facilities elsewhere. After the preliminary injunction issued, they no longer had a choice to move the represented detainees out of the AOR. The injunction thereby altered the parties' legal relationship—even if the outcome was no different than what Defendants intended to do.

Moreover, based upon the arguments Federal Defendants asserted in the preliminary injunction briefing, the Court is skeptical that Defendants never intended to transfer the represented detainees. (<u>See, e.g.</u>, "Preliminary Injunction Opposition," Dkt. No. 24 at 1 ("should any transfers out of the AOR be dictated by the twin realities of Congress's mandate that certain aliens be detained and the emergent need of loss of facility space in the AOR, those transfers would fully comport with ICE policy, the Immigration and Nationality Act ("INA"), and the Constitution")). As Plaintiffs point out, "if Defendants had agreed in advance to wind down operations at the Orange County facilities without transferring represented immigrants outside the Los Angeles AOR, then Plaintiffs would not have filed this suit." (Reply at 3.) Accordingly, the Court concludes that Plaintiffs prevailed for the purposes of EAJA.

## B. Substantially Justified Position

Defendants bear the burden to establish their position was substantially justified under the "totality of the circumstances." <u>See</u> <u>Gutierrez</u>, 274 F.3d at 1259; <u>Meinhold v. U.S. Dep't of Defense</u>, 123 F.3d 1275, 1277 (9th Cir. 1997). Federal Defendants' position includes both the underlying action being defended and the arguments advanced during the litigation. <u>See</u> <u>Gutierrez</u>, 274 F.3d at 1259. The underlying act here is Defendant's decision to move detainees out of the AOR. Throughout the preliminary injunction briefing, Federal Defendants argued they were entitled to move detainees, even when those detainees had attorneys or family members within the AOR. (<u>See, e.g.</u>, Preliminary Injunction Opposition at 1.)

Federal Defendants first argue that their position was substantially justified because the Court accepted Defendants' argument that it lacked jurisdiction to hear the claims of

Case 2:85-cv-04544-DMG-AGR Document 1282-10 Filed 08/09/22 Page 99 of 199 Page ID
Case 8:19-cv-00015-MGB-AGRK Document 881-2 Filed 01/02/20 Page 5 of 99 Page ID #:300
#:47823

unrepresented detainees. (Opposition at 4.) While this argument does show that some of the litigation positions taken by Defendants were substantially justified, it does not show that the underlying acts, namely the decision to move the detainees, was substantially justified. By de

Next, Federal Defendants argue that because the Court determined Plaintiffs were not likely to succeed on the merits of their APA and First Amendment claims, their position was substantially justified. (Opposition at 4.) Again, this argument fails to show that the "totality of the circumstances" justify Federal Defendants' position. While the Court did not find a likelihood of success on the APA and First Amendment claims—it did find a likelihood of success for the Due Process and INA claims. (Preliminary Injunction Order at 25.) The APA, First Amendment, INA, and Due Process claims arose from the same underlying act: Defendants' decision to move detainees out of the AOR. The Court therefore found that the underlying act was likely unlawful. That the underlying act as alleged likely violated only two rights rather than the claimed four does not make it substantially justified.

Finally, Federal Defendants argue that their position that the Court lacked jurisdiction over the claims of represented detainees was substantially justified because it was the result reached in Alvarez. (Opposition at 5–6.) Federal Defendants are correct—their reliance on Alvarez was substantially justified. However, the Alvarez court found only that it lacked over jurisdiction to hear any claims regarding the right to representation in removal proceedings. Alvarez v. Sessions, 338 F. Supp 3d 1042, 1048 (N.D. Cal.). It made no finding about whether the government's decision to move detained immigrants away from their attorneys violated that right. In fact, the Alvarez Court explicitly noted:

> This order should not [be] interpreted as a judicial approval of ICE's decision to transfer Petitioners. While the court's application of the law compels it to dismiss this case, the law does not compel it to countenance an agency's action that is contrary to the norms of this country's justice system.

Id. at 1050–51. Alvarez, therefore, fails to provide any support for Federal Defendants' claim that their underlying acts were substantially justified. Quite the contrary—it is further evidence that Defendants' position contravened clearly established law and norms.

Notably, while the Opposition points to small litigation points on which Federal Defendants prevailed, it fails to explain how Federal Defendants' underlying acts—most critically, deciding to move represented detainees out of the AOR—were substantially justified. Ninth Circuit precedent is clear: the Due Process Clause guarantees that immigrants have the right to be represented by counsel of their choosing. See Baltazar-Alcazar v. I.N.S., 386 F.3d 940, 944 (9th Cir. 2004) (citing Tawadrus v. Ashcroft, 364 F.3d 1099, 1103 (9th Cir. 2004); Colindres-Aguilar v. INS, 819 F.2d 259, 261 n.1 (9th Cir. 1987) (noting an immigrant's right to counsel is a statutory right under 8 U.S.C. § 1362 as well as a right protected by the Due Process Clause)). And that right is "fundamental"—immigration officials must respect it "in substance as well as in name." Orantes-Hernandez v. Thornburgh, 919 F.2d 549, 554 (9th Cir. 1990) (quoting Baires v. INS, 856 F.2d 89, 91 n.2 (9th Cir. 1988)).

Moving detainees far from their retained counsel violates immigrant detainees' right to counsel. <u>See</u> <u>Orantes</u>, 919 F.3d at 564 (affirming injunction restricting transfers because they "interfere[d] with established attorney-client relationships"). As the Court found in the Preliminary Injunction Order, the Immigrant Plaintiffs' counsel lacked the resources to represent them if they were moved out of the AOR and Immigrant Plaintiffs lacked the resources to find new counsel. (Preliminary Injunction Order at 23.) Moreover, frequent confidential in-person visits are necessary to maintain a robust attorney-client relationship in the immigration context. (<u>Id.</u>) Accordingly, the Court concludes that because moving detainees far from their counsel so clearly violates their Due Process right to counsel, Defendants' underlying acts were not substantially justified.

## C. Reasonable Attorneys' Fees

Plaintiffs seek $144,876.04 in attorneys' fees and costs.[3] (Reply at 12.) Federal Defendants argue that these numbers should be reduced (1) to reflect Plaintiffs' partial success, (2) to eliminate redundancies, and (3) to match the statutory rate rather than the enhanced rate Plaintiffs seek. (Opposition at 7–12.) None of these arguments warrant a reduction in attorneys' fees and costs.

First, Plaintiffs' counsel obtained a successful result for both represented and non-represented detainees. While the Court only enjoined the transfer of the represented detainees, Plaintiffs' counsel negotiated with Defendants to reach an agreement that Defendants would not transfer any immigrant detainees outside of the AOR. (Motion at 4.) Had Defendants declined this agreement, Plaintiffs' counsel was prepared to amend their complaint and file a discovery motion. (Reply at 8.) Federal Defendants assert that they were not planning to transfer any detainees out of the AOR, so Plaintiffs' counsel's negotiations did nothing to change the status quo. (Opposition at 2–3.) Plaintiffs however, have submitted evidence showing that Defense counsel urged Plaintiffs' counsel to delay filing the discovery motion to give Defense counsel time to obtain approval from the "East Coast" for the proposed agreement. (Reply at 9; Arulanantham Supplemental Declaration ¶ 5, Exhibit A.) This email demonstrates that it was the negotiations with Plaintiffs' counsel and the threat of continued litigation that prompted the agreement—not Defendants' alleged previous intent.

Second, Plaintiffs' hours calculation does not include any redundancies. Defendants point to one hearing and five calls where two attorneys were present and argue that "these redundant hours should be deducted." (Opposition at 9–10.) This argument is frivolous, insincere, and a waste of the Court's time. Per Ninth Circuit precedent that Federal Defendants

---

[3] The Motion requests $137,031.87. (Motion at 16.) In response to Federal Defendants' argument that the fees calculation includes less than four hours of clerical work billed by a paralegal, Plaintiffs removed those hours and reduced the remainder of that paralegal's hours by 10%. (Reply at 10.) Plaintiffs also added the time spent drafting the Reply. (<u>Id.</u> at 12.)

(continued . . . )

themselves cite, two attorneys present for an important call or hearing is not redundant.  <u>Probe v. State Teachers' Ret. Sys.</u>, 780 F.2d 776, 785 (9th Cir. 1986) ("In an important class action litigation [], the participation of more than one attorney does not constitute an unnecessary duplication of effort.").[4]  Moreover, Defendants had <u>three</u> attorneys present at the hearing and on almost every call.  (Supplemental Arulanantham Decl. ¶ 7.)  Unless Defense counsel agrees it wasted taxpayer resources at the hearings and on the calls, it should not level accusations of redundancies at Plaintiffs' counsel.

Third, Plaintiffs' counsel's competent representation warrants the enhanced rate they seek.  Plaintiffs have submitted the declarations of two non-parties, Professor Jayashri Srikantiah and Attorney Carol Sobel, which state that the rates Plaintiffs seek are reasonable for the work that was done no attorney would be available to do the work at the EAJA statutory rate.  (<u>See</u> Srikantiah Declaration; Sobel Declaration.)  Plaintiffs' counsel each have experience litigating complex cases involving the constitutional rights of immigrant detainees.  (Arulanantham Declaration ¶¶ 7-27.)  All three, therefore, have distinctive knowledge and specialized skill in this complex area of the law.  The Ninth Circuit has specifically recognized that Mr. Arulanantham's knowledge and skill warrant enhanced rates under the EAJA for his work litigating the constitutional rights of detained immigrants.  <u>See e.g.</u>, <u>Nadarajah v. Holder</u>, 569 F.3d 906, 914 (9th Cir. 2009).

This case required Plaintiff's counsel's specialized knowledge and expertise.  It involved unique issues of statutory jurisdiction.  When Plaintiffs' counsel received notification about the pending transfers, they immediately identified the threat to their clients' constitutional rights and quickly moved to obtain emergency relief.  (Motion at 2–3.)  It is not likely that lawyers without Plaintiffs' counsel's specialized knowledge would have been able to obtain similar results.  (<u>See also</u> Srikantiah Declaration ¶¶ 10–12.)  Accordingly, the Court finds the number of hours worked on this case by Plaintiff's counsel was reasonable and the rates Plaintiffs seek are warranted.

## IV.    CONCLUSION

For the reasons above, the Court GRANTS Plaintiffs' Motion.  Plaintiffs' counsel are awarded $144,876.04 in attorneys' fees and costs.   The January 6, 2019 hearing is VACATED.

**IT IS SO ORDERED.**

---

[4] Defense counsel cites <u>Probe</u> to support their argument that the Court should reduce Plaintiffs' fee award because two attorneys attended a hearing and five calls.  <u>Probe</u> holds the opposite—that multiple attorneys are not redundant in important cases.  <u>See</u> <u>Probe</u>, 780 F.2d 776, 785 (9th Cir. 1986).

Exhibit 7 to Sobel Declaration

Case 2:85-cv-04544-DMG-AGR   Document 1282-10   Filed 08/29/22   Page 103 of 199   Page
ID #:47827
Case 5:18-cv-01317-ODW-KES   Document 63   Filed 05/26/20   Page 1 of 13   Page ID #:897

**O**

<div style="font-style:italic"></div>

# United States District Court
# Central District of California

| | |
|---|---|
| GUSTAVO RODRIGUEZ CASTILLO, | Case No. 5:18-cv-01317-ODW (KESx) |
| Plaintiffs-Petitioners, | |
| v. | **ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES [49]** |
| KIRSTJEN NIELSEN, Secretary, Department of Homeland Security, et al, | |
| Defendants-Respondents. | |

## I.   INTRODUCTION

Before the Court is a Motion for Attorneys' Fees ("Motion") filed by Plaintiffs Gustavo Rodriguez Castillo ("Castillo"), Gabriela M. Lopez ("Lopez"), and Immigrant Defenders Law Center ("IDLC") (collectively "Plaintiffs") seeking $190,718.89 in fees and costs from Defendants pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.  (*See* Mot., ECF No. 49.)  For the reasons discussed below, the Court **GRANTS** Plaintiffs' Motion.

## II.   BACKGROUND

The Court recited this case's facts in its Temporary Restraining Order and Order to Show Cause ("TRO") and incorporates that discussion here.  (*See* TRO, ECF No. 10.)  Plaintiffs brought this action on June 19, 2018, to challenge practices concerning civil immigration detainees held at FCI Victorville Medium Security

Case 2:85-cv-04544-DMG-AGR   Document 1382-10   Filed 08/29/22   Page 104 of 199   Page
ID #:47828
Case 5:18-cv-01317-ODW-KES   Document 63-2   Filed 05/26/20   Page 2 of 13   Page ID #:890

Prison ("FCI Victorville"), a federal correctional facility used to house convicted criminals. (*See generally* Compl., ECF No. 1.) On or about June 4, 2018, the Bureau of Prisons ("BOP") received hundreds of immigration detainees for temporary housing in FCI Victorville. (Compl. ¶ 17; *see also* Decl. of Jess Pino ("Pino Decl.") ¶ 3, ECF No. 7-1.) The federal government began transferring detainees to FCI Victorville on or about June 8, 2018. (Compl. ¶ 19.)

Detainees were incarcerated pending a screening known as a "credible fear" interview and, if found to have a "credible fear," pending immigration court proceedings. (Compl. ¶ 20.) Due to the volume of detainees, medical screenings, and other administrative tasks, Defendants did not finalize attorney visitation procedures until June 19, 2019. (Pino Decl. ¶ 5.) Consequently, detainees at FCI Victorville could not consult an attorney before June 19, 2019. (Compl. ¶ 22.)

Here, Castillo was held as a detainee, Lopez served as Castillo's attorney, and IDLC is a nonprofit organization that provided legal services to detained immigrants. (Compl. ¶¶ 5–7.) On June 19, 2018, Plaintiffs filed their Complaint and sought a TRO. Plaintiffs' Complaint alleged that Defendants' denial of attorney access violated their due process rights and First Amendment rights, and Defendants' policies regarding access to attorneys violated the Administrative Policy Act and the Immigration and Nationality Act. (Compl. ¶¶ 52–69.) Plaintiffs' TRO sought to: (1) permit Lopez to meet with Castillo; (2) permit other detainees at FCI Victorville to communicate with attorneys; (3) permit the IDLC to conduct "know your rights" training for the detainees at FCI Victorville; and (4) stop immigration proceedings at FCI Victorville, or deportation of any such detainees, until they could consult an attorney and attend an IDLC training. (*See* Pls.' Ex. Parte Appl. ("Ex Parte"), ECF No. 4.)

Defendants opposed on June 20, 2018. (Opp'n to Ex Parte, ECF No. 7.) Defendants affirmed that they were "acutely aware of the need to allow" attorney visitation and that it had "now implemented procedures" for attorneys to visit with

Case 2:35-cv-04544-DMG-AGR   Document 1282-10   Filed 08/29/22   Page 105 of 199   Page
ID #:47829
Case 5:35-cv-01317-ODW-KES   Document 682-10   Filed 05/26/20   Page 3 of 13   Page ID #:899

detainees.   (Pino Decl. ¶ 7.)   Defendants also provided details concerning the implemented procedures for attorney visitation.   (Pino Decl., Ex. A ("Mem. for FCI").)  Namely, Defendants' new policies permitted attorney visitations to occur in a single visitation room, Tuesday through Friday from 8:30 a.m. to 3:00 p.m., and only if the visiting attorney and individuals accompanying the attorney successfully completed the necessary paperwork.  (Mem. for FCI.)  In their reply, Plaintiffs argued these policies did not ensure sufficient visitation, provide adequate "know your rights" training, or guarantee that Defendants would not proceed with detainees' cases until they had access to counsel.  (Reply to Opp'n to Ex Parte, ECF No. 8.)

On June 21, 2018, the Court issued the TRO and an order to show cause why a preliminary injunction should not issue.  (TRO 7.)  The TRO decided that in-person communications may proceed according to the protocols Defendants provided and required Defendants to:

**(1)** Permit Lopez to conduct an attorney-client conversation with Castillo;

**(2)** Permit other FCI Victorville detainees to communicate with attorneys;

**(3)** Permit IDLC to conduct "know your rights" trainings at FCI Victorville; and

**(4)** Refrain from immigration proceedings or deportations until detainees could consult an attorney or attend "know your rights" training.

(TRO 6–7.)

In their Response and Request to Dissolve the TRO, Defendants argued "there is a perfectly valid and reasonable explanation for" initially denying attorney access and then allowing restricted visitation: "[n]amely, the facility only just began housing immigrants immediately prior to the outset of the litigation."  (Defs.' Resp. and Req. Dissolve TRO ("Resp.") 18, ECF No. 20.)  Yet, Defendants did not address Plaintiffs' allegations concerning their due process or First Amendment claims.  (Resp. 18.)

Thereafter, the Court held a hearing on the order to show cause on July 30, 2018.  (Min. of TRO Hr'g, ECF No. 22.)  After being updated on Defendants' lack of progress, the Court told the parties "we're going to make meaningful progress or I am

going to draft a preliminary injunction." (*See* Decl. of Michael Kaufman ("Kaufman Decl."), Ex. F ("Hr'g Tr.") 39, 48, ECF No. 54-1.) Defendants assured the Court that they would make progress in satisfying the conditions of the TRO and not "simply move people to Adelanto [to] fast track removal proceeding[s]," and thus would not require a court issued preliminary injunction. (*See* Hr'g Tr. 40.)

The parties then stipulated to extend the TRO for two weeks to pursue settlement, and later stipulated to extend the TRO two more times. (ECF Nos. 23, 28, 34.) The parties then came to an impasse and stipulated on August 27, 2018 to extend the TRO pending the Court's consideration of whether a preliminary injunction should issue. (ECF No. 37.) The Court approved the parties' stipulation and ordered them to file a joint status report concerning whether a preliminary injunction should issue. (ECF No. 38.) The parties filed their joint status report on August 29, 2018. (Status Report, ECF No. 39.) In the report, Defendants: (1) noted that FCI Victorville had decreased its detainee population to 202 and taken no new detainees since July 24, 2018; (2) described new visitation policies and implementation of Court-ordered "know your rights" training; and (3) concluded that if "the Court is inclined to grant Plaintiff a preliminary injunction based on this status report, Defendants request instead that the Court set this matter for hearing in 30 days…" (*See generally* Status Report.) After reviewing the parties' submissions, the Court set a preliminary injunction hearing for October 19, 2018. (ECF No. 40.)

On September 28, 2018, Defendants filed their Opposition to Plaintiffs' Motion for Preliminary Injunction, affirming that they had transferred all immigration detainees out of FCI Victorville effective September 14, 2018 and would no longer hold immigration detainees at the facility. (*See* Defs.' Opp'n to Mot. for Prelim. Inj. 4, ECF No. 41.) Afterwards, on October 10, 2018, Plaintiffs filed a Notice of Withdrawal of their Motion for a Preliminary Injunction. (ECF No. 42.) The Court granted that request and vacated the hearing. (ECF No. 43.)

4

On October 30, 2019, the parties filed a Joint Stipulation to Voluntarily Dismiss the Case Without Prejudice under Federal Rule of Civil Procedure 41(a)(1)(A)(ii). (ECF No. 48.)  The Court dismissed all claims without prejudice and closed the case. (ECF No. 58.)  Plaintiffs now seek fees incurred from June 18, 2018 through December 9, 2019.  (*See* Pls.' Reply, ECF No. 62.)

### III.   LEGAL STANDARD

**A.   Attorneys' Fees Under the EAJA.**

Pursuant to the EAJA, federal courts are authorized to award attorneys' fees, court costs, and other expenses.  *See* 28 U.S.C. § 2412(a)(1); 28 U.S.C. § 2412(d); *Hardisty v. Astrue*, 592 F.3d 1072, 1076 (9th Cir. 2010).  For the district court to award attorney's fees and costs pursuant to the EAJA, it must be shown that (1) the plaintiff is the prevailing party, (2) the government has not met its burden of showing that its positions were substantially justified or that special circumstances make an award unjust, and (3) the requested attorney's fees and costs are reasonable.  *Murgolo v. Astrue*, 257 F. App'x 53, 54 (9th Cir. 2007).

A litigant must meet two criteria to qualify as a "prevailing party" under the EAJA.  *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.,* 532 U.S. 598, 604 (2001).  First, the litigant must achieve a "material alteration of the legal relationship of the parties." *Carbonell v. I.N.S.*, 429 F.3d 894, 898 (9th Cir. 2005).  Second, that alteration must be "judicially sanctioned."  *Id.* (citations omitted).  The Ninth Circuit has "previously held that when a plaintiff wins a preliminary injunction and the case is rendered moot before final judgment, either by the passage of time or other circumstances beyond the parties' control, the plaintiff is a prevailing party eligible for a fee award."  *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 717 (9th Cir. 2013) (citations omitted).

The burden of proving the substantial justification exception to the mandatory award of fees under the EAJA lies with the government. *Love v. Reilly*, 924 F.2d 1492, 1495 (9th Cir. 1991). "Substantial justification" is defined as:

justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person. [This standard] is no different from the "reasonable basis in both law and fact" formulation adopted by the Ninth Circuit and the vast majority of other Courts of Appeals that have addressed this issue.

*Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

In determining the reasonableness of the government's position under the "totality of the circumstances" test, the court reviews the underlying governmental action being defended and the positions taken by the government in the litigation itself. *Gutierrez v. Barnhart*, 274 F.3d 1255, 1259 (9th Cir. 2001).

"The amount of attorneys' fees awarded under EAJA must be reasonable." *Nadarajah v. Holder*, 569 F.3d 906, 910 (9th Cir. 2009). Attorney's fees for hours that are not "reasonably expended" or that are "excessive, redundant, or otherwise unnecessary" are not compensable. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). "[C]ourts should generally defer to the 'winning lawyer's professional judgment as to how much time he was required to spend on the case.'" *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132, 1136 (9th Cir. 2012) (citations omitted).

## IV. DISCUSSION

Plaintiffs assert that they are entitled to $190,718.89 in fees and costs under the EAJA. (*See* Mot.; Reply.) Defendants respond that the Court should deny Plaintiffs' Motion as: (1) Plaintiffs were not prevailing parties; (2) Defendants position was substantially justified; and (3) Plaintiffs' fees are unreasonable and should be reduced. (*See* Opp'n to Mot. ("Opp'n"), ECF No. 57.)

## A. Prevailing Party

Plaintiffs argue that they are prevailing parties because the TRO and its extensions, created a "material alteration in the legal relationships between the parties," which was "judicially sanctioned." (Mot. 8–9.) Defendants oppose by asserting that the remedial actions it took, after the Complaint was filed, made it "not necessary for Plaintiffs to continue to seek a TRO." (Opp'n 3.) Defendants further

1   argue that fees are improper due to the abbreviated schedule for opposing the TRO
2   and as the Court never expressly ruled that Plaintiffs were likely to succeed on the
3   merits.   (Opp'n 3.)   Finally, Defendants argue that without court intervention, the
4   procedures implemented at FCI Victorville and the transfer of detainees from FCI
5   Victorville would have occurred.  (Opp'n 3.)

6        The Court rejects Defendants' arguments.   Foremost, the actions cited by
7   Defendants—know your rights training and communication between Lopez and
8   Castillo—occurred only after the TRO issued.   (Opp'n 2–5.)   In fact, they were
9   mandated by the TRO.  (*See* TRO 6–7.)  Defendants assertion that they immediately
10  complied with the TRO does not disprove that Plaintiffs are prevailing parties.
11  Rather, it is evidence that Plaintiffs prevailed.  *Shapiro v. Paradise Valley Unified*
12  *Sch. Dist. No. 69*, 374 F.3d 857, 865 (9th Cir. 2004) ("[E]ssentially, in order to be
13  considered a 'prevailing party' after *Buckhannon,* a plaintiff must not only achieve
14  some material alteration of the legal relationship of the parties, but that change must
15  also be judicially sanctioned.") (internal quotations and citations omitted).   Here,
16  despite Defendants moving to dissolve it, the Court's three orders extending the TRO,
17  further demonstrates that Defendants' remedial actions were "judicially sanctioned."
18  Accordingly, Plaintiffs are prevailing parties with regards to the TRO and any ensuing
19  litigation to enforce it.  *See Carbonell*, 429 F.3d at 901 ("[W]hen a court incorporates
20  the terms of a voluntary agreement into an order, that order is stamped with sufficient
21  'judicial imprimatur' for the litigant to qualify as a prevailing party for the purpose of
22  awarding attorney's fees.").

23       Defendants' argument that the Court never expressly found that Plaintiffs were
24  likely to succeed on the merits—also fails, clearly, by granting the TRO, the Court
25  determined that Plaintiffs were likely to succeed on the merits.   (*See* TRO 5.)
26  Likewise, the proceedings' expedited nature is irrelevant to whether Plaintiffs were
27  prevailing parties, Plaintiffs achieving a TRO on a necessarily abbreviated timeline is
28  sufficient to create a "judicially sanctioned," "material alteration in the legal

7

relationships between the parties." *Int'l Refugee Assistance Project v. Kelly*, 2017 WL 3263870, at *4 (C.D. Cal. July 27, 2017) (determining plaintiffs as the prevailing party even though TRO was issued on the same day that the TRO motion was made).

Finally, Defendants' attempt to attribute adoption of Plaintiffs' requested changes to their uncoerced decision-making—is contrary to the record. Plainly, the TRO, the Court-ordered extensions, and litigation necessitating Plaintiffs' fees, while the TRO was in effect, make clear that Court involvement, not Defendants' discretion, produced the changes that resulted in voluntary dismissal. *Higher Taste, Inc.*, 717 F.3d at 717 ("The defendant's action in rendering the case moot ensures that the [preliminary] injunction's alteration of the parties' legal relationship will not be undone by subsequent rulings in the litigation."); *see also Int'l Refugee Assistance Project*, 2017 WL 3263870, at *4 ("[T]hat [the government] retained discretion" to implement immigration policies following temporary restraining order "does not mean that Petitioners cannot be the prevailing party.").

Hence, Plaintiffs were prevailing parties under the EAJA.

**B.    Substantially Justified Position**

Defendants bear the burden to establish that their position, which includes both their underlying conduct and arguments during litigation, was substantially justified under the "totality of the circumstances." *Gutierrez*, 274 F.3d at 1259. The underlying conduct here is primarily Defendants' decision to hold hundreds of civil immigration detainees for approximately two weeks without access to counsel. (TRO 6 ("[T]he parties do not dispute that many of the detainees were without access to legal communication for as many as 9 to 13 days, possibly longer in Castillo's case. Defendants have made no representations regarding the status of removal proceedings for those detainees who have not had access to counsel.").)

Defendants do not and cannot dispute that holding civil immigration detainees incommunicado for such prolonged periods implicates due process concerns. *Halvorsen v. Baird*, 146 F.3d 680, 688 (9th Cir. 1998) ("There is a well established

Case 2:85-cv-04544-DMG-AGR   Document 1282-10   Filed 08/29/22   Page 111 of 199   Page
ID #:47835
Case 5:15-cv-01517-ODW-KES   Document 682-10   Filed 05/26/20   Page 9 of 11   Page ID #:995

tradition against holding prisoners incommunicado in the United States.") Instead, Defendants argue that circumstances at FCI Victorville delayed their ability to ensure due process, pointing to previously discussed measures taken in response to the Complaint and TRO. (Opp'n 5–7.) However, Defendants' pre-litigation conduct necessitated this lawsuit, and their lack of progress, post-TRO, required protracted extension of the TRO until Defendants transferred all detainees, an action finally taken on the eve of potential injunctive relief. (*See* Hr'g Tr. 39.) ("I am going to be convinced that we're going to make meaningful progress or I am going to draft and enter a preliminary injunction that, well, somebody's not going to like.")); *see also* (Status Report 14 ("In the event that the Court is inclined to grant Plaintiff a preliminary injunction based on this status report, Defendants request instead that the Court set this matter for hearing in 30 days…").)

Defendants' assertion that confining detainees at a facility for convicted criminals complicated access to counsel does not justify Defendants' position. Instead, it is an indictment of their decision to house them there in the first place. *Colindres-Aguilar v. INS,* 819 F.2d 259, 261 n.1 (9th Cir. 1987) (noting an immigrant's right to counsel is a statutory right under 8 U.S.C. § 1362, as well as a right protected by the due process clause). This underlying action, alone, warrants a finding that Defendants' position was not substantially justified, regardless of arguments made during litigation. *United States v. Marolf*, 277 F.3d 1156, 1163–64 (9th Cir. 2002) ("A reasonable litigation position does not establish substantial justification in the face of a clearly unjustified underlying action.") (citing *Wilderness Soc'y v. Babbitt,* 5 F.3d 383, 388–89 (9th Cir. 1993) (holding government was not substantially justified despite reasonable defense in litigation); *Andrew v. Bowen,* 837 F.2d 875, 877–80 (9th Cir. 1988) (same)).

The Court therefore concludes that Defendants have not established their position was substantially justified.

9

**C.  Reasonable Attorneys' Fees and Costs**

Plaintiffs seek $190,718.89 in fees and costs incurred from June 18, 2018 through December 9, 2019, when Plaintiffs filed the Reply.[1] (*See* Reply 8–12.) Plaintiffs seek enhanced rates for attorneys Arulanantham ($785 for 2018 and $810 for 2019); Kaufman ($620 for 2018 and $645 for 2019); and Bitran ($450 for 2018 and $480 for 2019) and statutory rates for the remaining attorneys.  (Mot. 16 (citing 28 U.S.C. § 2412(d)(2)(A)(ii)).)  Defendants argue the underlying dispute was not complex and thus did not require the specialized skill necessary to justify enhanced rates.  (Opp'n 8–9.)

"The Ninth Circuit has specifically recognized that Mr. Arulanantham's knowledge and skill warrant enhanced rates under the EAJA for his work litigating the constitutional rights of detained immigrants."  *Arroyo v. United States Dep't of Homeland Sec.*, No. SACV 19-815 JGB (SHKx), 2020 WL 1228665, at *6 (C.D. Cal. Jan. 2, 2020) (citing *Nadarajah v. Holder*, 569 F.3d 906, 914 (9th Cir. 2009)).  Here, as other instances recognized by the Ninth Circuit, counsels' undisputed expertise on issues of statutory construction, detainee rights, and effective advocacy in this challenging context was needed to effectively pursue the emergency relief their clients obtained.  *Nadarajah*, 569 F.3d at 915 ("Nadarajah has established and the record shows that… Arulanantham… possessed 'distinctive knowledge' and 'specialized skill' that was 'needful to the litigation in question.'") (citation omitted).

Plaintiffs cite extensive evidence establishing the specialized expertise of Arulanantham, Kaufman, and Bitran, moreover, Defendants fail to rebut this evidence. *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 980 (9th Cir. 2008) ("The party opposing the fee application has a burden of rebuttal that requires submission of evidence ... challenging the accuracy and reasonableness of the ... facts asserted by the prevailing party in its submitted affidavits.") (citations omitted).   For example,

---

[1] Defendants do not dispute Plaintiffs' costs of $999.38, thus, the Court finds that these costs are well-documented, reasonable, and therefore shall be recovered.  28 U.S.C. § 2412(d)(1)(A).

1   Defendants do not dispute Stanford Law Professor Jayashri Srikantiah's evidence-

2   based opinion that "this case would [not] have been successful without the particular

3   knowledge and specialized skill that Mr. Arulanantham, Mr. Kaufman, and Ms. Bitran

4   brought to this litigation." (Decl. of Jayashri Srikantiah, ECF No. 52 ¶ 8.) They

5   similarly do not dispute well-grounded evidence that the rates Plaintiffs seek are equal

6   to market-based rates for comparable services. (*See, e.g.*, Kaufman Decl. ¶¶ 32–34.)

7   As such, the Court finds that Plaintiffs' requested enhanced rates are reasonable and

8   justified considering the expertise needed to effectively litigate Plaintiffs' case.

9           Defendants also object to Plaintiffs' specific bills, claiming they are wasteful

10  and redundant. (Opp'n 7–9.) Defendants argue that Ms. Bitran's discussion of case

11  issues with a Congressman is not recoverable, but Plaintiffs attest to the need for this

12  discussion, which the Ninth Circuit has held that such expenses are recoverable.

13  *Gilbrook v. City of Westminster*, 177 F.3d 839, 877 (9th Cir. 1999) ("Prevailing civil

14  rights counsel are entitled to fees for 'press conferences and performance of other

15  lobbying and public relations work' when those efforts are 'directly and intimately

16  related to the successful representation of a client.'"). The Court also finds that hours

17  for "mass representation" and presentations that educated local immigration attorneys,

18  about post-TRO practices for visiting FCI Victorville, are likewise "directly and

19  intimately related to successful representation of" detainees. *Id.* These efforts were

20  necessary to facilitate access to counsel. *Id.*

21          Defendants further object to Ms. Bitran's presence at the July 30, 2018 hearing,

22  arguing that the presence of two attorneys was unnecessary given the hearing's

23  agenda. (Opp'n 9.) However, the Ninth Circuit has held that two attorneys attending

24  an important hearing, such as the July 30, 2018 hearing, is not redundant. *Probe v.

25  State Teachers' Ret. Sys.*, 780 F.2d 776, 785 (9th Cir. 1986) ("In an important class

26  action litigation [], the participation of more than one attorney does not constitute an

27  unnecessary duplication of effort."). Defendants' unfounded argument is further

28

11

Case 2:85-cv-04544-DMG-AGR   Document 1282-10   Filed 06/29/22   Page 114 of 199   Page
ID #:47838
Case 3:15-cv-01517-DDW-KES   Document 634   Filed 05/26/20   Page 12 of 13   PageID #:898

undermined by the presence of its own two attorneys at the same proceeding.  (Reply 10.)

Defendants object to other various bills which Defendants perceive to be excessive given the purported lack of complexity involved in the tasks.  (Opp'n 8–10.)  For example, Defendants point to ten hours billed for the TRO, over thirty hours for a twelve-page brief, and five hours for Plaintiffs' reply in further support of the motion that resulted in the TRO.  (Opp'n 8–10.)  There is insufficient evidence before the Court to find these hours excessive or redundant.  *Rutti v. Lojack Corp.*, No. SACV 06-350 DOC (JCx), 2012 WL 3151077, at *2 (C.D. Cal. July 31, 2012) ("To reduce the number of hours worked, "it must appear that the time claimed is obviously and convincingly excessive under the circumstances.") (citations omitted).   This is particularly true where, as here, the hours expended, and the proceedings' hectic nature were necessitated by Defendants.  *Int'l Refugee Assistance Project*, 2017 WL 3263870, at *7 ("Petitioners' 'all hands on deck' strategy was not only understandable, it was likely a necessity… The Court declines to penalize Petitioners for operating as they did within the rushed timetable Respondents created.")

Finally, Defendants object to the hours billed by Mr. Arulanantham, claiming the billing entries are ambiguous and the work unnecessary.  (Opp'n 8 (citing bills for "warehousing," habeas cases, "reinstatement," conversations with Federal Public Defender and other attorneys).)  In response, Mr. Arulanantham submitted a declaration establishing the background of each disputed bill, and why the work was necessary to prosecute Plaintiffs' case.  (*See* Decl. of Ahilan Arulanantham ¶¶ 5–9, ECF No. 61.)   Because the Ninth Circuit instructs district courts to "defer to the 'winning lawyer's professional judgment as to how much time he was required to spend on the case,'" the Court finds that this declaration is sufficient to overrule Defendants' objection.  *Costa*, 690 F.3d at 1136 (citations omitted).  Such deference is further supported by the excellent outcome that resulted from counsels' zealous and

competent advocacy. *Hensley,* 461 U.S. at 435 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.")

Accordingly, the Court finds the request for $190,718.89 in fees and costs to be well-documented and reasonable.

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiffs' Motion for Attorneys' Fees. (ECF No. 49.)  Plaintiffs' counsels are awarded $190,718.89.

**IT IS SO ORDERED.**

May 26, 2020

_____

**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

Exhibit 8 to Sobel Declaration

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/03/18 | | DEPT. 34

HONORABLE MICHAEL P. LINFIELD    JUDGE | R. NAVARRO    DEPUTY CLERK

HONORABLE #7 | JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR

V. GALINDO    Deputy Sheriff | Rosie Samples, CSR# 12383    Reporter

| 8:30 am | BC624838 | | |
|---|---|---|---|
| | | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

MOTION OF DEFENDANTS, THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, TO STRIKE PLAINTIFF'S MOTION TO STRIKE PLAINTIFF'S MEMORANDUM OF COSTS, OR IN THE ALTERNATIVE TAX COSTS;

MOTION OF PLAINTIFF, DR. LAUREN PINTER-BROWN, FOR AN AWARD OF ATTORNEYS' FEES OF $1,814,152.81;

The Court's tentative ruling is provided to all sides via the Court's website.

The matters are called for hearing.

The Order Appointing Court Approved Reporter as Official Reporter Pro Tempore is signed and filed this date.

After oral argument, the Court's tentative ruling is adopted as the Order of the Court as follows:

Case Number: BC624838    Hearing Date: August 03, 2018    Dept: 34

SUBJECT: Motion for attorney's fees; Motion to tax costs

MOTION FOR ATTORNEY FEES

Page    1 of 57    DEPT. 34

MINUTES ENTERED
08/03/18
COUNTY CLERK

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 08/03/18 | DEPT. 34 |

| | | | |
|---|---|---|---|
| HONORABLE MICHAEL P. LINFIELD | JUDGE | R. NAVARRO | DEPUTY CLERK |
| HONORABLE #7 | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| V. GALINDO | Deputy Sheriff | Rosie Samples, CSR# 12383 | Reporter |

| | | | |
|---|---|---|---|
| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

Moving Party:  Plaintiff Dr. Lauren Pinter-Brown

Resp. Party:    Defendant The Regents of the University of California

        The motion is GRANTED. Plaintiff is awarded attorney fees in the amount of $1,814,152.81, as indicated in the spreadsheet below:

BACKGROUND:

        Plaintiff commenced this action on 06/22/16 against defendant for: (1) gender discrimination; (2) gender harassment; (3) retaliation for complaints of discrimination and harassment based on gender; (4) age discrimination; (5) age harassment; (6) violation of Labor Code § 1102.5; (7) violation of the Equal Pay Act; (8) intentional infliction of emotional distress; and (9) defamation.

Page    2 of 57    DEPT. 34

MINUTES ENTERED
08/03/18
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/03/18                                                                                  **DEPT.** 34

HONORABLE MICHAEL P. LINFIELD          JUDGE    R. NAVARRO          DEPUTY CLERK

HONORABLE                              JUDGE PRO TEM              ELECTRONIC RECORDING MONITOR
#7

    V. GALINDO          Deputy Sheriff    Rosie Samples, CSR# 12383    Reporter

| | | | |
|---|---|---|---|
| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**


    On 02/15/18, the jury returned a verdict in plaintiff's favor on her gender discrimination and retaliation claims. The jury awarded plaintiff $13,011,671.00.


ANALYSIS:


    As the prevailing party on her FEHA claims, plaintiff moves for an award of attorney fees in the amount of $1,814,152.81. (See Notice of Motion, p. 2:2-7.) This sum includes a lodestar figure of $1,036,658.75 and a 1.75 multiplier. (Ibid.)


A.Relevant Law


    "[A]s a general rule, attorney fees are not recoverable as costs unless they are authorized by statute or agreement." (People ex rel. Dept. of Corporations v. Speedee Oil Change Systems, Inc. (2007) 147 Cal.App.4th 424, 429.)


    Attorney's fees may be recovered by a prevailing plaintiff in a FEHA action. (See Gov. Code, § 12965(b); Chavez v. City of Los Angeles

Page   3 of 57   DEPT. 34

MINUTES ENTERED
08/03/18
COUNTY CLERK

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 08/03/18 | DEPT. 34 |
| HONORABLE MICHAEL P. LINFIELD   JUDGE | R. NAVARRO   DEPUTY CLERK |
| HONORABLE #7   JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| V. GALINDO   Deputy Sheriff | Rosie Samples, CSR# 12383   Reporter |

| | | | |
|---|---|---|---|
| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

(2010) 47 Cal.4th 970, 984.)  Under the FEHA, a prevailing defendant may only recover fees upon a showing that the plaintiff's action was frivolous, unreasonable, or without foundation. (See Williams v. Chino Valley Independent Fire Dist. (2015) 61 Cal.4th 97, 103; Chavez v. City of Los Angeles (2010) 47 Cal.4th 970, 985; Cummings v. Benco Building Services (1992) 11 Cal.App.4th 1383, 1387-1388; Christiansburg Garment Co. v. EEOC (1978) 434 U.S. 412, 421.)

The trial court has broad authority to determine the amount of a reasonable fee. (PLCM Group, Inc. v. Drexler (2000) 22 Cal.4th 1084, 1095; Ghanooni v. Super Shuttle of Los Angeles (1993) 20 Cal.App.4th 256, 262.) In determining the reasonable value of the attorney services, "the court does not need separate evidence to establish the reasonable value of whatever should be justly awarded, the theory being that the trial judge is competent from his own knowledge of legal practice to fix the amount of the fees. [Citations.]" (Spencer v. Harmon Enterprises (1965) 234 Cal.App.2d 614, 621 [internal citations omitted].)

The attorney bears the burden of proof as to "reasonableness" of any fee claim. (Code Civ. Proc., § 1033.5(c)(5).) This burden requires competent

Page    4 of 57    DEPT. 34

| |
|---|
| MINUTES ENTERED 08/03/18 COUNTY CLERK |

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/03/18                                                    **DEPT.** 34

HONORABLE MICHAEL P. LINFIELD          JUDGE | R. NAVARRO          DEPUTY CLERK

HONORABLE                        JUDGE PRO TEM |          ELECTRONIC RECORDING MONITOR
#7
       V. GALINDO          Deputy Sheriff | Rosie Samples, CSR# 12383   Reporter

| | | | |
|---|---|---|---|
| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

evidence as to the nature and value of the services rendered. (Martino v. Denevi (1986) 182 Cal.App.3d 553, 559.) "Testimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records." (Id. at p. 559.)

     In determining whether the requested attorney's fees are "reasonable," the Court's

"first step involves the lodestar figure - a calculation based on the number of hours reasonably expended multiplied by the lawyer's hourly rate. The lodestar figure may then be adjusted, based on consideration of facts specific to the case, in order to fix the fee at the fair market value for the legal services provided." (Gorman v. Tassajara Development Corp. (2008) 162 Cal.App.4th 770, 774 [internal citations omitted].)

In determining whether to adjust the lodestar figure, the Court may consider the nature and difficulty of the litigation, the amount of money involved, the skill required and employed to handle the case, the attention given, the success or

                    Page    5 of 57    DEPT.  34

| MINUTES ENTERED |
|---|
| 08/03/18 |
| COUNTY CLERK |

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 08/03/18 | **DEPT. 34** |
| HONORABLE MICHAEL P. LINFIELD  JUDGE | R. NAVARRO  DEPUTY CLERK |
| HONORABLE  JUDGE PRO TEM  #7 | ELECTRONIC RECORDING MONITOR |
| V. GALINDO  Deputy Sheriff | Rosie Samples, CSR# 12383  Reporter |

| | | | |
|---|---|---|---|
| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X)  Mark Lim (X) |
| | DR LAUREN PINTER-BROWN  VS  UNIVERSITY OF CALIFORNIA AT LOS  ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X)  Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

failure, and other circumstances in the case.
(EnPalm LLC v. Teitler (2008) 162 Cal.App.4th 770,
774; PLCM Group, Inc. v. Drexler (2000) 22 Cal.4th
1084, 1095.)


"'The reasonable market value of the attorney's
services is the measure of a reasonable hourly rate.
[Citations.] This standard applies regardless of
whether the attorneys claiming fees charge nothing
for their services, charge at below-market or
discounted rates, represent the client on a straight
contingent fee basis, or are in-house counsel.
[Citations.]' "  (Center For Biological Diversity v.
County of San Bernardino (2010) 188 Cal.App.4th 603,
619.)


      "The trial courts, of course, should be
allowed the discretion to exclude from a fee award
the fees incurred by a prevailing party in making
frivolous procedural maneuvers, the primary concern
in setting rules for attorney fee awards must be the
encouragement of efficient litigation." (Presley of
Southern California v. Whelan (1983) 146 Cal.App.3d
959, 963.)



A.Discussion

Page   6 of 57    DEPT. 34

MINUTES ENTERED
08/03/18
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/03/18

**DEPT. 34**

HONORABLE MICHAEL P. LINFIELD     JUDGE

R. NAVARRO     DEPUTY CLERK

HONORABLE     JUDGE PRO TEM
#7

ELECTRONIC RECORDING MONITOR

V. GALINDO     Deputy Sheriff

Rosie Samples, CSR# 12383   Reporter

8:30 am | BC624838

DR LAUREN PINTER-BROWN
VS
UNIVERSITY OF CALIFORNIA AT LOS
ANGELES ET AL

Plaintiff
Counsel

Anthony Nguyen (X)
Mark Lim (X)

Defendant
Counsel

Kathryn T. McGuigan (X)
Barbara A. Fitzgerald (X)

**NATURE OF PROCEEDINGS:**

        Plaintiff seeks an award of attorney fees in
the total amount of $1,814,152.81. This sum includes
a lodestar figure of $1,036,658.75 representing
1,571.2 hours spent by her counsel in litigating
this matter over the past two years. (See Notice of
Motion, p. 2:2-7.) Plaintiff also seeks a 1.75
lodestar multiplier on the ground that such an
enhancement "is necessary to fully compensate
Pinter-Brown's counsel in accordance with the market
value of their work." (Motion, p. 1:24-25.)
Plaintiff has submitted detailed time records for
each of the nine attorneys who worked on this
matter. (See Appx. of Evid., Exhs. 1-9; See also,
Motion, p. 12:8-19.)

        Plaintiff argues that the relatively high
amount of attorney fees is due, in large part, to
defendant's aggressive tactics throughout the
litigation and refusal to engage in any meaningful
settlement negotiation:

". . .this was an exceptionally difficult case,
which necessitated extensive discovery, opposing an
exhaustive but futile motion for summary judgment,
and a multi-week hard-fought trial. Not once has
defendant made a reasonable settlement offer, even

Page   7 of 57   DEPT. 34

MINUTES ENTERED
08/03/18
COUNTY CLERK

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 08/03/18 | DEPT. 34 |
| HONORABLE MICHAEL P. LINFIELD          JUDGE | R. NAVARRO                    DEPUTY CLERK |
| HONORABLE                          JUDGE PRO TEM #7 | ELECTRONIC RECORDING MONITOR |
| V. GALINDO          Deputy Sheriff | Rosie Samples, CSR# 12383   Reporter |

| | | | |
|---|---|---|---|
| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

after the jury delivered a $13 million verdict."
(Motion, p. 1:4-6.)

By way of example, plaintiff explains that:

        "this case involved voluminous discovery and
extensive law and motion practice, evidenced by: 25
total depositions, over 7,600 pages of documents
produced in discovery, approximately twenty sets of
written discovery involving multiple defendants,
defendant's futile but complex summary judgment
motion, and a procedurally fatal and factually
meritless motion for judgment notwithstanding the
verdict (which Pinter-Brown was forced to oppose
before the Court disposed of it)."  (Id. at p.
2:17-21.)


Additionally, plaintiff argues that the case was
particularly hard because counsel:

"faced an arduous task of proving that Dr.
Pinter-Brown was subject to working conditions that
were so intolerable that she had no reasonable
alternative except to resign. . . . a 'constructive
discharge' claim is difficult to prove because it

Page    8 of 57    DEPT. 34

MINUTES ENTERED
08/03/18
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/03/18                                                        **DEPT. 34**

HONORABLE MICHAEL P. LINFIELD          JUDGE | R. NAVARRO          DEPUTY CLERK

HONORABLE                        JUDGE PRO TEM |                ELECTRONIC RECORDING MONITOR
#7
      V. GALINDO          Deputy Sheriff | Rosie Samples, CSR# 12383   Reporter

| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

requires a level of showing that deal with both subjective and objective standards which are subject to great contention. (Id. at p. 3:5-8.)

      In Opposition, defendant argues that the Court should exercise its discretion to deny fees entirely because the requested fees are excessive and "designed to test the limits of what the Court will approve by seeking compensation for excessive hours and proposing excessive hourly rates." (Opposition, p. 1:2-6.) In the event that the Court decides to award fees to plaintiff, defendant asserts that, after all mandatory deductions, plaintiff is entitled to only $39,311.25 for the two years of work that resulted in a $13 million jury verdict. (See Id. at p. 10:14-15.)

i.The hours expended were reasonable

      As outlined above, plaintiff argues that her attorneys reasonably spent 1,571.2 hours working on this case over the last two years. According to plaintiff, this amount of work was necessitated by the complexity of the issues, the vast quantity of discovery and motion practice, and defendant's aggressive tactics. (See generally, Motion, p. 1-3.)

                Page    9 of 57    DEPT. 34

MINUTES ENTERED
08/03/18
COUNTY CLERK

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/03/18

HONORABLE MICHAEL P. LINFIELD    JUDGE

HONORABLE
#7
    V. GALINDO    Deputy Sheriff

JUDGE PRO TEM

DEPT. 34

R. NAVARRO    DEPUTY CLERK

ELECTRONIC RECORDING MONITOR

Rosie Samples, CSR# 12383   Reporter

| 8:30 am | BC624838 | | |
|---|---|---|---|
| | DR LAUREN PINTER-BROWN | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
| | VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**


        Defendant argues that plaintiff has completely failed to show the reasonableness of the time expended by her counsel. (See Opposition, p. 2:23-6:11.) It argues that "the declarations and time records submitted by Plaintiffs' counsel in support of the Motion are neither trustworthy nor credible and fail to support or justify the hours listed and fees sought." (Id. at p. 3:8-10.) The Opposition cites to a number of specific time entries that defendant deems objectionable, and defendant has submitted a separate exhibit containing objections to more than half of the time entries submitted by plaintiff. (See McGuigan Decl. Exh. A.)


        First, defendant argues that there are several time entries that are "demonstrably inaccurate." (Opposition, p. 3:18.) These entries include:


1.5 hours billed by Mark Lim on August 19, 2019 (i.e., one year from now), for 'preparation of motion in limine 6 and internal discussion regarding facts regarding same."

Page  10 of 57    DEPT. 34

MINUTES ENTERED
08/03/18
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 08/03/18 | | | | DEPT. 34 |
|---|---|---|---|---|
| HONORABLE MICHAEL P. LINFIELD | JUDGE | R. NAVARRO | | DEPUTY CLERK |
| HONORABLE #7 | JUDGE PRO TEM | | | ELECTRONIC RECORDING MONITOR |
| V. GALINDO | Deputy Sheriff | Rosie Samples, CSR# 12383 | Reporter | |

| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
|---|---|---|---|
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

2.75 hours billed by Taylor French on January 2, 2018, to review 'nt Deposition; review of Hunt's r.'

0.25 hours billed by Taylor Prainito on June 1, 2027 (i.e., nine years from now) for a discussion with Plaintiff regarding deposition transcripts and Defendant's motion for summary judgment.

3.8 hours billed by Ms. Prainito on February 15, 2018, for purportedly reviewing (unspecified) discovery responses on the last day of trial.

0.1 hours billed by Ms. Prainito on April 17, 2018, for review of an unidentified deposition notice (2 months after trial ended.)

Defendant argues that these time entries must be excluded and that their existence "call[s] into question the evidentiary value of Plaintiff's counsel's time records as a whole." (Opposition, p. 4:4-5.)

Defendant has done little more than identify typos in plaintiff's billing records. Defendant apparently has the good sense not to explicitly

Page  11 of 57    DEPT.  34

| MINUTES ENTERED |
|---|
| 08/03/18 |
| COUNTY CLERK |

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 08/03/18 | | DEPT. 34 |
|---|---|---|
| HONORABLE MICHAEL P. LINFIELD   JUDGE | R. NAVARRO | DEPUTY CLERK |
| HONORABLE #7   JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| V. GALINDO   Deputy Sheriff | Rosie Samples, CSR# 12383   Reporter | |

| 8:30 am | BC624838 <br><br> DR LAUREN PINTER-BROWN <br> VS <br> UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Plaintiff Counsel <br><br> Defendant Counsel | Anthony Nguyen (X) <br> Mark Lim (X) <br><br> Kathryn T. McGuigan (X) <br> Barbara A. Fitzgerald (X) |
|---|---|---|---|

**NATURE OF PROCEEDINGS:**

claim that plaintiff is improperly billing for fictional services provided nearly a decade in the future and merely implies it instead. In reply, plaintiff argues that "even when a trial court is faced with a 'plethora of flawed attorney time entries,' it is still impermissible 'to engage in an across-the-board reduction of hours." (Reply, p. 2:12-14 [quoting Mountjoy v. Bank of Am., N.A. (2016) 245 Cal.App.4th 266, 280].) With respect to the disputed entry on 01/02/18, plaintiff explains that it should read "Discussion regarding Hunt Deposition; Review of Hunt's report in preparation for deposition." (Reply, p. 2:20-21.) Furthermore, defendant provides no explanation or authority which would support the implicit claim that it would be improper for plaintiff's counsel to continue reviewing discovery at the trial or even to perform such work after the trial. It is curious that defendant objects to the 0.1 hours billed by Ms. Prainito on 04/17/18 as this was only one day before defendant filed its untimely motion for a new trial. Plaintiff accurately summarizes defendant's objections: "The typos identified by defendant are negligible, and defendant provides no authority that suggests it should receive a windfall due to five clerical errors in the time records." (Reply, p. 2:22-23.)

Next, defendant argues that hundreds of

Page   12 of 57   DEPT. 34

MINUTES ENTERED
08/03/18
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 08/03/18 | **DEPT.** 34 |
| HONORABLE MICHAEL P. LINFIELD          JUDGE | R. NAVARRO          DEPUTY CLERK |
| HONORABLE #7                    JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
|          V. GALINDO          Deputy Sheriff | Rosie Samples, CSR# 12383   Reporter |

| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
|---|---|---|---|
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

plaintiff's time entries contain improper block billing and must be stricken. (See Opposition, p. 4:8-5:15; McGuigan Decl., Exh. A [containing "at least 272 time entries with improper block-billing and/or vague descriptions"].) Defendant cites three specific examples in its opposition:

13.1 hours billed by Anthony Nguyen on 2/7/2018 for 'Preparation for Trial and Trial Attendance; further edits to De Vos Outline; review of deposition transcript; review of Pinter-Brown trial testimony.'

4.9 hours billed by Ms. Prainito on 7/19/17 for "Review of deposition summaries; drafting of separate statement."

6.5 and 6.8 hours billed by Mr. Nguyen and Mr. Lim, respectively, on 2/15/18 for "Travel to Court and Trial Attendance; discussion with jurors; internal discussion regarding verdict and post-trial concerns."

(Opposition, p. 4:25-5:4.) Defendant finds each of these entries objectionable because they "combine[] multiple tasks without providing a break-down of the time spent on each task, which is particularly

Page   13 of 57     DEPT.  34

MINUTES ENTERED
08/03/18
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 08/03/18 | | **DEPT. 34** |
| HONORABLE MICHAEL P. LINFIELD   JUDGE | R. NAVARRO | DEPUTY CLERK |
| HONORABLE   JUDGE PRO TEM #7 | | ELECTRONIC RECORDING MONITOR |
| V. GALINDO   Deputy Sheriff | Rosie Samples, CSR# 12383   Reporter | |

| | | | |
|---|---|---|---|
| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

problematic because they correspond (individually and in the aggregate) substantial amounts of attorney time and list tasks that are only vaguely described." (Id. at p. 5:5-8.)

Defendant's argument is not well taken. Block billing is only problematic "when the practice prevents them from discerning which tasks are compensable and which are not." (Heritage Pac. Fin. LLC v. Monroy (2013) 215 Cal.App.4th 972, 1010.) Defendant does not allege that any of the three entries cited above contain any non-compensable work. Furthermore, defendant has not cited any authority that suggests that plaintiff is required to provide any more detail than has already been provided. The billing entries identified by defendant are sufficiently descriptive and do not contain any problematic block billing.

"[C]onsistent precedent in California cases . . . provide[s] trial courts with the discretion about whether [or not] to penalize block billing." (Heritage Pacific Financial v. Monroy (2013) 215 Cal.App.4th 972, 1010, fn. 6. [italics in original; brackets added].)

Finally, defendant argues that the time

Page 14 of 57   DEPT. 34

MINUTES ENTERED
08/03/18
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 08/03/18 | **DEPT.** 34 |
| HONORABLE MICHAEL P. LINFIELD         JUDGE | R. NAVARRO                    DEPUTY CLERK |
| HONORABLE #7                    JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| V. GALINDO           Deputy Sheriff | Rosie Samples, CSR# 12383   Reporter |

| | | | |
|---|---|---|---|
| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

spent by plaintiff's counsel was excessive, inefficient, or duplicative and that hundreds of hours should be stricken as a result. (See Opposition, p. 5: 18-6:11.) Here, defendant cites to the following examples:

Up to 129.05 hours were billed by four different attorneys to prepare closing arguments . . . between February 6, 2018 and February 14, 2018.

Between January 29, 2018 and February 14, 2108, Messrs. Nguyen, Shegerian, and Lim billed a total of 321.65 hours for trial preparation (up to 15.9 hours in a single day). Some entries give only the description of 'preparation for trial and trial attendance' for several hours of work . . . while the remainder are block-billed entries that do not permit scrutiny into the work performed or the amount of time spend on each (listed and unlisted) task.

172 hours billed for various 'internal discussions' with multiple attorneys billing for discussions about simple issues such as "internal discussion regarding stipulation."

Page  15 of 57     DEPT. 34

```
MINUTES ENTERED
08/03/18
COUNTY CLERK
```

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/03/18      **DEPT. 34**

HONORABLE MICHAEL P. LINFIELD    JUDGE    R. NAVARRO      DEPUTY CLERK

HONORABLE #7      JUDGE PRO TEM      ELECTRONIC RECORDING MONITOR

   V. GALINDO    Deputy Sheriff    Rosie Samples, CSR# 12383   Reporter

| | | |
|---|---|---|
| 8:30 am | BC624838 | Plaintiff Counsel   Anthony Nguyen (X)<br>Mark Lim (X) |
| | DR LAUREN PINTER-BROWN<br>VS<br>UNIVERSITY OF CALIFORNIA AT LOS<br>ANGELES ET AL | Defendant Counsel   Kathryn T. McGuigan (X)<br>Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

(Opposition, 5:18-6:7)

      Defendant is correct that the Ketchum court noted that "padding in the form of inefficient or duplicative efforts is not subject to compensation." (See Opposition, p. 6:9-11 [quoting Ketchum v. Moses (2001) 24 Cal.4th 1122, 1139.) Here, however, defendant has done nothing more than identify the fact that plaintiff's counsel spent substantial time on various tasks. Defendant does not even claim that it would be unreasonable to spend 321 hours on trial preparation or 129.05 hours preparing closing arguments. The Court agrees that this is a large amount of time to spend preparing for closing; nonetheless, the Court remembers plaintiff's closing as concise, well-planned and to-the-point. And it was clearly effective; the jury returned the next day with a $13 million verdict. With little planning, any attorney can present a rambling closing; it takes a lot of planning to be concise. As the 17th-century French philosopher and mathematician said, "Forgive me for writing such a long letter; I did not have the time to make it shorter." (Blase Pascal, Lettres Provinciales, 1657.)

Defendant fails to cite any authority to suggest that it is improper for two or more attorneys to

Page 16 of 57     DEPT. 34

MINUTES ENTERED<br>08/03/18<br>COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 08/03/18 | **DEPT.** 34 |
| HONORABLE MICHAEL P. LINFIELD   JUDGE | R. NAVARRO   DEPUTY CLERK |
| HONORABLE #7   JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| V. GALINDO   Deputy Sheriff | Rosie Samples, CSR# 12383   Reporter |

| | | | |
|---|---|---|---|
| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

bill for a discussion about issues related to the case. In short, defendant has failed to identify any "padding in the form of inefficient or duplicative efforts." In reply, plaintiff presents further persuasive explanation that shows that defendant has misrepresented the nature of the work performed by plaintiff's counsel. (See Reply, p. 5:3-6:3.)

As detailed above, defendant has failed to cite any meaningful example of a billing entry that was improper, impermissible vague, suggested problematic block billing, or evidenced any form of padding.

"A party cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." (Serrano v. Unruh (1982) 32 Cal.3d 621, 638.)

Or, as stated by the Court of Appeal eight years later,  "[p]arties who litigate with no holds barred in cases such as this, in which the prevailing party is entitled to a fee award, assume the risk they will have to reimburse the excessive expenses they force upon their adversaries." (Stokus v. Marsh (1990) 217 Cal.App.3d 647, 653-654.)

Page  17 of 57   DEPT. 34

MINUTES ENTERED
08/03/18
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 08/03/18 | | DEPT. 34 |
|---|---|---|
| HONORABLE MICHAEL P. LINFIELD      JUDGE | R. NAVARRO | DEPUTY CLERK |
| HONORABLE #7                    JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| V. GALINDO          Deputy Sheriff | Rosie Samples, CSR# 12383   Reporter | |

| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
|---|---|---|---|
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

The Court finds that plaintiff's counsel reasonably expended 1,571.2 hours litigating this case.

i. Hourly rates

Defendant also objects to the hourly rates requested by plaintiff's counsel. (See Opposition, p. 6:14-7:11.) Most significantly, defendant objects to Mr. Shegerian's request for an hourly rate of $1,100. Defendant claims that this represents a 40% raise from the $700 that he is usually awarded and that "[t]he apparent genesis for this appears to be an off-handed compliment paid by the court three years ago in an unrelated matter." (Id. at p. 6:15-17.) As recently as December 2017, defendant claims that courts have routinely declined to increase his hourly rate from $700 per hour. (Id. at p. 6:20-22; McGuigan Decl., ¶ 3, Exs. B-E.)

Plaintiff declares that Mr. Shegerian's hourly rate of $1,100 has been court approved by Judge Chavez in Moland v. McWane, Inc. as recently as December 2017. (See Shegerian Decl., ¶ 7; McGuigan Decl. Exh. E [the Court's order does not specify the hourly rate awarded to Mr. Shegerian,

Page  18 of 57    DEPT. 34

MINUTES ENTERED
08/03/18
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/03/18                                                         **DEPT.** 34

HONORABLE MICHAEL P. LINFIELD        JUDGE | R. NAVARRO          DEPUTY CLERK

HONORABLE                          JUDGE PRO TEM |              ELECTRONIC RECORDING MONITOR
#7
        V. GALINDO            Deputy Sheriff | Rosie Samples, CSR# 12383   Reporter

---

8:30 am | BC624838

DR LAUREN PINTER-BROWN
VS
UNIVERSITY OF CALIFORNIA AT LOS
ANGELES ET AL

Plaintiff   Anthony Nguyen (X)
Counsel     Mark Lim (X)

Defendant   Kathryn T. McGuigan (X)
Counsel     Barbara A. Fitzgerald (X)

---

**NATURE OF PROCEEDINGS:**

but the "court hereby awards Plaintiff only his
baseline attorney fees of $1,551,605" without any
apparent deduction].) Plaintiff also declares that
Mr. Nguyen and Mr. Lim's hourly rates "have been
court-approved at $600 and $375 per hour,
respectively." (Reply, p. 6:8-9; Nguyen Decl., ¶ 8,
Lim Decl., ¶ 3.)

In early 2013, this Court approved an hourly rate
for defense counsel of $920/hour on a successful
anti-SLAPP motion. At that time, this Court stated
in its decision, "There are many who would argue
that an hourly billing rate approaching $1000 per
hour is per se outrageous; this court would be
hard-pressed to logically argue against that
proposition. On the other hand, reality sometimes
has a way of trumping common-sense. Whether
outrageous or not, in the Los Angeles legal
community, attorney billing rates of $1000 per hour
and above are no longer unheard of."  What was true
about an extremely high - albeit "reasonable" -
attorney's fees rate of $920/hour in 2013 holds true
today.

Just one year later, in Chodos v. Borman (2014) 227
Cal.App.4th 76 the Court of Appeal upheld a jury's
finding that $1,000/hour was, in the circumstances
of that case, a reasonable hourly rate.

Page  19 of 57    DEPT. 34

**MINUTES ENTERED**
08/03/18
**COUNTY CLERK**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/03/18                                 **DEPT. 34**

HONORABLE MICHAEL P. LINFIELD      JUDGE | R. NAVARRO         DEPUTY CLERK

HONORABLE               JUDGE PRO TEM         ELECTRONIC RECORDING MONITOR
#7

     V. GALINDO      Deputy Sheriff | Rosie Samples, CSR# 12383   Reporter

| 8:30 am | BC624838 | | |
|---|---|---|---|
| | | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

       The Court has seen Mr. Shegerian's ability throughout this trial. He is considered by his peers to be one of the finest plaintiff-side trial attorneys in the State, and this Court agrees with that conclusion. The Court finds that the hourly rates requested for plaintiff's counsel are reasonable.

i. Deductions based on limited success

       Based on all of the alleged defects in plaintiff's billing records cited above, defendant asserts that plaintiff's recovery should be limited only to "judicially noticed" hours spent litigating this matter. (See Opposition, p. 7:13-8:13.) This would include only "the time Plaintiff's counsel spent in hearings or at trial before this Court" and would amount to a total of 102 hours or $119,125 in fees. (See Ibid.) Defendant has failed to identify any meaningful defect in the billing records or show that there is any improper pattern of padding, block billing, or duplicative work. The Court rejects this argument as frivolous.

Page   20 of 57     DEPT. 34

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/03/18                                                      DEPT. 34

HONORABLE MICHAEL P. LINFIELD    JUDGE | R. NAVARRO          DEPUTY CLERK

HONORABLE                     JUDGE PRO TEM |          ELECTRONIC RECORDING MONITOR
#7
        V. GALINDO        Deputy Sheriff | Rosie Samples, CSR# 12383   Reporter

| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

          Separately, defendant argues that the
lodestar figure must be reduced by an additional 67%
to account for the fact that plaintiff was only
partially successful in this action because she
prevailed on only 2 or her original 9 causes of
action. (See Opposition, p. 8:15-10:15.) Defendant
notes that "prior to trial Plaintiff voluntarily
dismissed her claims for intentional infliction of
emotional distress, violation of the equal pay act,
and her request for punitive damages." (Id. at p.
9:9-11.) Additionally, "[f]ollowing the hearing on
Defendant's Motion for Summary Judgment, the court
dismissed Plaintiff's claims for gender harassment,
gender retaliation, age harassment, violation of
Labor Code § 1102.5." (Id. at p. 9:12-14.) Because
plaintiff was unsuccessful on a majority of her
causes of action, the fees must be reduced to
"reflect the overall level of success achieved."
(See Id. at p. 9: 26-28.)

          In reply, plaintiff argues that reducing the
lodestar due to "limited success" is discouraged in
FEHA actions. (See Reply, p. 7:11-18.) Courts have
held that "[i]t is only when a plaintiff has
achieved a limited success, or has failed with
respect to distinct and unrelated claims, that a
reduction from the lodestar is appropriate." (Hogar
v. Cmty. Dev. Comm'n of the City of Escondido (2007)
157 Cal.App.4th 1358, 1369.) Plaintiff argues that

                Page   21 of 57     DEPT. 34

MINUTES ENTERED
08/03/18
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 08/03/18 | DEPT. 34 |
| HONORABLE MICHAEL P. LINFIELD JUDGE | R. NAVARRO DEPUTY CLERK |
| HONORABLE #7 JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| V. GALINDO Deputy Sheriff | Rosie Samples, CSR# 12383 Reporter |

| | | | |
|---|---|---|---|
| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

her successful and unsuccessful claims were inextricably intertwined with her constructive discharge theory such that apportionment is not necessary. Notably, "[e]mployment discrimination cases, by their very nature, involve several causes of action arising from the same set of facts." (Reply, p. 8:27-28 [Wysinger v. Automobile Club of Southern California (2007) 157 Cal.App.4th 413, 431.].) The Court finds that it would be nearly impossible to separate out the time spent on plaintiff's gender and age claims. Both arose out of the same working conditions that the jury found to be intolerable and it was reasonable to proceed on the belief that defendants' behavior towards plaintiff could have been based on either or both her age and her gender. Plaintiff further explains that "the intertwined nature of employment cases is heightened because Pinter-Brown was constructively discharged. Stated otherwise, all the facts and claims pled in the Complaint are ultimately intertwined with the constructive discharge, and at least from Pinter-Brown's perspective, gave rise to her intolerable work conditions." (Reply, p. 8:5-8.)

While plaintiff may have prevailed on only two of her original causes of action, given that plaintiff received an award of over $13,000,000, the Court finds it hard to believe that defendant is seriously claiming that plaintiff achieved only a

Page  22 of 57    DEPT. 34

MINUTES ENTERED
08/03/18
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 08/03/18 | **DEPT.** 34 |
| HONORABLE MICHAEL P. LINFIELD        JUDGE | R. NAVARRO        DEPUTY CLERK |
| HONORABLE                    JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| #7        V. GALINDO        Deputy Sheriff | Rosie Samples, CSR# 12383   Reporter |

| | | | |
|---|---|---|---|
| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X)<br>Mark Lim (X) |
| | DR LAUREN PINTER-BROWN<br>VS<br>UNIVERSITY OF CALIFORNIA AT LOS<br>ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X)<br>Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

limited success. In fact, as indicated below, plaintiff's degree of success warrants a multiplier.

Defendant accuses plaintiff's counsel of asking for unconscionably inflated fees, yet defense counsel falls victim to the opposite vice - of suggesting a lodestar that is unconscionably deflated. Defense counsel concludes that, even if they were to "concede that Plaintiff's counsel's proposed hourly rates are proper," (which defendant contests) "the total lodestar available is $119,125." (Opposition, p. 8:13, 28.)  Defense later argues that this lodestar should be reduced by 67% (for plaintiff's supposed limited success), so that the Court would award a final lodestar of $39,311.25. (Opposition, p. 10:14-15.)

The Court notes that defense counsel - although suggesting a lodestar of under $40,000, nowhere indicates the amount that defendant paid its attorneys on this matter. Defense counsel does not provide the court with any evidence of their hourly rates, or of the number of hours defense counsel incurred in defending this action.

It is not uncommon for courts to compare opposing counsel's fees to help determine whether

Page  23 of 57    DEPT. 34

| MINUTES ENTERED |
|---|
| 08/03/18 |
| COUNTY CLERK |

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 08/03/18 | **DEPT.** 34 |
| HONORABLE MICHAEL P. LINFIELD     JUDGE | R. NAVARRO     DEPUTY CLERK |
| HONORABLE     JUDGE PRO TEM #7 | ELECTRONIC RECORDING MONITOR |
| V. GALINDO     Deputy Sheriff | Rosie Samples, CSR# 12383   Reporter |

| | | | |
|---|---|---|---|
| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

the moving party's fees are reasonable. That is because a "comparative analysis of each side's respective litigation costs may be a useful check on the reasonableness of any fee request."  (Mountjoy v. Bank of America, N.A. (2016) 245 Cal.App.4th 266, 273, 281, quoting Donahue v. Donahue (2010) 182 Cal.App.4th 259, 272. See, also, Donahue v. Donahue (2010) 182 Cal.App.4th 259, 272; Deane Gardenhome Ass'n v. Denktas (1993) 13 Cal.App.4th 1394, 1399 (comparing losing party's total incurred fees with prevailing party's claim for fees); West Coast Dev. v. Reed (1992) 2 Cal.App.4th 693, 707; In re Tobacco Cases I (2013) 216 Cal.App.4th 570, 584 (court expressly recognized that an opponent's time and amounts charged were probative to the determination of whether the fee claimant's time is reasonable); Mountjoy v Bank of America, NA (2016) 245 Cal.App.4th 266, 273 (comparison of the parties' respective fees at the end of the case was probative to the ultimate question of reasonableness); accord, Democratic Party of Washington v. Reed (9th Cir. 2004) 388 F.3d 1281, 1287 (prevailing parties' hours were not excessive because number of hours claimed of the same "magnitude" as their opponent's hours); Cairns v Franklin Mint Co. (9th Cir. 2002) 292 F.3d 1139 (declining to reduce defendant's lodestar fee calculations, in part, because opponent had incurred even greater fees). Had defense counsel felt that this comparison would have been useful to buttress their argument, the Court would have expected

Page  24 of 57   DEPT. 34

MINUTES ENTERED
08/03/18
COUNTY CLERK

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/03/18 | | **DEPT. 34**

HONORABLE MICHAEL P. LINFIELD  JUDGE | R. NAVARRO  DEPUTY CLERK

HONORABLE #7 | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR

V. GALINDO  Deputy Sheriff | Rosie Samples, CSR# 12383  Reporter

8:30 am | BC624838

DR LAUREN PINTER-BROWN
VS
UNIVERSITY OF CALIFORNIA AT LOS
ANGELES ET AL

Plaintiff Counsel: Anthony Nguyen (X)  Mark Lim (X)

Defendant Counsel: Kathryn T. McGuigan (X)  Barbara A. Fitzgerald (X)

**NATURE OF PROCEEDINGS:**

counsel to have provided such evidence.

　　　Taking into consideration the above analysis, the Court awards a lodestar of $1,036,658.75, as indicated in the spreadsheet below:

***SEE CHART NO. 1***

Multiplier

　　　"The award of a multiplier is in the end a discretionary matter largely left to the trial court." (Hogar v. Community Development Com'n of City of Escondido (2007) 157 Cal.App.4th 1358, 1371. See also Rey v. Madera Unif. Sch. Dist. (2012) 203 Cal.App.4th 1223, 1242.) A court may enhance the lodestar figure in appropriate cases. (Ketchum v. Moses (2001) 24 Cal.4th 1122, 1138.) The court in Ketchum provided an explanation of the rationale behind contingent fee enhancements: "'A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional

Page  25 of 57    DEPT. 34

MINUTES ENTERED
08/03/18
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 08/03/18 | DEPT. 34 |
| HONORABLE MICHAEL P. LINFIELD            JUDGE | R. NAVARRO                DEPUTY CLERK |
| HONORABLE                        JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| #7        V. GALINDO         Deputy Sheriff | Rosie Samples, CSR# 12383   Reporter |

| | | | |
|---|---|---|---|
| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

loans.'" (Id. at pp. 1132-1133 [quoting Posner, Economic Analysis of Law (4th ed. 1992) pp. 534, 567].) "A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases." (Id. at p. 1133 [internal citations and quotations omitted].)  The following factors may be considered in deciding whether to apply a multiplier: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." (Id. at p. 1032.)


"[D]espite th[e Supreme Court's] emphasis on the need to apply the lodestar method in order to reach a rational and objective determination of a reasonable attorney fee, the court has never required that trial courts engage in any explicit analysis on the record. [Citation.] Indeed, in Ketchum v. Moses, supra, 24 Cal.4th 1122, the court held that the trial court was 'not required to issue a statement of decision with regard to the fee award.' (Id. at p. 1140.)" (SOURCE v. County of San Bernardino (2015) 235 Cal.App.4th 1179, 1189.)

<div align="center">Page  26 of 57    DEPT. 34</div>

MINUTES ENTERED
08/03/18
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 08/03/18 | **DEPT.** 34 |
| HONORABLE MICHAEL P. LINFIELD          JUDGE | R. NAVARRO          DEPUTY CLERK |
| HONORABLE                    JUDGE PRO TEM #7 | ELECTRONIC RECORDING MONITOR |
| V. GALINDO          Deputy Sheriff | Rosie Samples, CSR# 12383   Reporter |

| | | | |
|---|---|---|---|
| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

Nonetheless, the Court will outline below its reasons for awarding a multiplier.

Plaintiff requests a 1.75 lodestar multiplier as compensation for the contingent risk of this case and on the grounds that this case presented difficult questions, precluded her counsel from taking on other work, and that her counsel displayed extraordinary skill in obtaining the verdict. (See Motion, p. 12:20-15:3.) She explains that her counsel took this case on an entirely contingent basis and that "[h]ere, the contingent-risk factor is catastrophic in terms of both time and money. Pinter-Brown's attorneys spent more than 1,550 hours and advanced hard cots in presenting a case that faced substantial (and potentially insurmountable) obstacles." (Id. at p. 13: 19-21.) Even after the verdict, "there remains no resolution in sight after more than two years of litigation, and zero dollars recovered to date." (Id.at p. 13: 27-28.)

Plaintiff also argues that a multiplier is warranted based on the "quality factor" because "[s]ecuring such a sizable jury verdict is impressive to say the least and is even more

Page   27 of 57    DEPT. 34

MINUTES ENTERED
08/03/18
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/03/18                                                           **DEPT. 34**

HONORABLE MICHAEL P. LINFIELD         JUDGE | R. NAVARRO         DEPUTY CLERK

HONORABLE #7                    JUDGE PRO TEM |              ELECTRONIC RECORDING MONITOR

V. GALINDO         Deputy Sheriff | Rosie Samples, CSR# 12383   Reporter

| | | | |
|---|---|---|---|
| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

extraordinary when considering the social context underlying the case." (See Id. at p. 9:9-24.) Not only did plaintiff's counsel secure an excellent result for this individual plaintiff, it appears that their efforts have resulted in meaningful change at UCLA. Plaintiff argues that:

"UCLA has made substantial changes in the wake of the jury's February verdict, such as clearly identifying UCLA's Title IX Officer, the reporting process, and the rights of employees and students under Title IX. Further, as noted by this Court, 'less than a month after the Pinter-Brown verdict, a UCLA student who had alleged sexual harassment stated how she felt vindicated when a Title IX investigation determined that she indeed had been harassed as a graduate student at UCLA 10 years earlier,' and the harasser was subsequently dismissed from UCLA." (Motion at p. 2:4-11.)

The Court finds that plaintiff's counsel displayed remarkable skill in obtaining a substantial recovery for plaintiff and in effecting meaningful change. This, of course, is the purpose of FEHA. (See, e.g., Govt. Code § 12920 [The Legislature's intent in enacting FEHA is to "provide effective remedies that will eliminate . . . discriminatory practices."]; Lopez v. Routt (2017) 17 Cal.App.5th 1006, 1010 [

Page  28 of 57    DEPT. 34

MINUTES ENTERED
08/03/18
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/03/18                                                                    **DEPT. 34**

HONORABLE MICHAEL P. LINFIELD          JUDGE | R. NAVARRO          DEPUTY CLERK

HONORABLE                        JUDGE PRO TEM |                    ELECTRONIC RECORDING MONITOR
#7
         V. GALINDO          Deputy Sheriff | Rosie Samples, CSR# 12383   Reporter

| | | | |
|---|---|---|---|
| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

"The [U.S. Supreme Court] recognized that Congress
had chosen Title VII plaintiffs as instruments to
vindicate federal policy against job discrimination,
and further recognized that when a trial court
awards attorney fees to a prevailing plaintiff, 'it
is awarding them against a violator of federal law.'
 (Christiansburg [Garment Co. v. E. E. O. C. (1978)]
434 U.S. [412], 418.)" )

        Plaintiff's counsel also declares that this
case has required the firm to turn away other work,
"resulting in the preclusion of work in at least
three other cases." (Reply, p. 14:3-7; Shegerian
Decl., ¶ 21.)

        Defendant argues that the hourly rates
sought by plaintiff's counsel "already incorporate
compensation" to account for the risk associated
with the contingency agreement and notes that
"plaintiff's counsel does not claim or offer proof
that the proposed hourly rates have ever been
charged to clients in hourly-fee cases."
(Opposition, p. 13:1-3.)  This Court disagrees.

"[A] contingent fee in a case with a 50 percent
chance of success should be twice the amount of a

                    Page  29 of 57     DEPT. 34

| MINUTES ENTERED |
|---|
| 08/03/18 |
| COUNTY CLERK |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/03/18                                                    **DEPT. 34**

HONORABLE MICHAEL P. LINFIELD      JUDGE | R. NAVARRO      DEPUTY CLERK

HONORABLE                    JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR
#7
        V. GALINDO       Deputy Sheriff | Rosie Samples, CSR# 12383   Reporter

| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

non-contingent fee for the same case . . ." (Cezares
v. Saenz (1989) 208 Cal.App.3d 279, 288.)


        It is this Court's experience that, in FEHA
cases, plaintiffs prevail approximately half the
time. Although there is no California case on-point,
other courts have similarly concluded that, at least
in labor and employment cases, it is reasonable to
assume that plaintiffs' counsel will win
approximately half the time. (See, e.g., Fujiwara v.
Sushi Yasuda, Ltd. (S.D.N.Y. 2014) 58 F. Supp. 3d
424, 329.)   If the Court were to accept Defendant's
argument that plaintiff's lead counsel should be
awarded a lodestar based upon an hourly rate of
$750/hour, this would mean that Mr. Shegerian's
non-contingent rate would be $375/hour. This is
barely above the rate charge for a first-year
association at a major law firm. Clearly, Mr.
Shegerian's experience and expertise command a
substantially higher hourly rate.


Further, Defendant fails to present any evidence of
its implicit assertion that plaintiff's counsel's
contingent-fee rates are higher than what they
charge in hourly-fee cases. Further, the Court notes
that if a plaintiff's attorney exclusively takes
contingent-fee cases, there would be no way for that

                Page  30 of 57   DEPT. 34

                            ┌─────────────────────┐
                            │ **MINUTES ENTERED**  │
                            │ 08/03/18             │
                            │ **COUNTY CLERK**     │
                            └─────────────────────┘

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/03/18 | | DEPT. 34
---|---|---

HONORABLE MICHAEL P. LINFIELD     JUDGE | R. NAVARRO | DEPUTY CLERK

HONORABLE #7        JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR

V. GALINDO     Deputy Sheriff | Rosie Samples, CSR# 12383   Reporter

---

8:30 am | BC624838

DR LAUREN PINTER-BROWN
VS
UNIVERSITY OF CALIFORNIA AT LOS
ANGELES ET AL

Plaintiff Counsel    Anthony Nguyen (X)
Mark Lim (X)

Defendant Counsel    Kathryn T. McGuigan (X)
Barbara A. Fitzgerald (X)

---

**NATURE OF PROCEEDINGS:**

attorney to show rates "charged to clients in hourly-fee cases." Clearly, that would not preclude a successful plaintiff's attorney in a FEHA case from being awarded attorney's fees.

Defendant asserts that plaintiff's counsel was not precluded from taking on other work because it "has filed 212 cases while this case was pending." (Opposition, p. 12: 15-17; McGuigan Decl., ¶ 4, Exh. F.)

The Court agrees with defendant that this third Ketchum factor - "the extent to which the nature of the litigation precluded other employment by the attorneys" - is not present here. The Court will not consider this factor in determining a multiplier.

However, Defendant cites no authority - and it is not the law -that a multiplier is warranted only when a case precludes counsel from doing any other work. The Court finds that the other three Ketchum factors - "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, . . . [and] (4) the contingent nature of the fee award" - all warrant a multiplier in this case. (See Ketchum, supra, at p. 1032.)

Page   31 of 57     DEPT. 34

MINUTES ENTERED
08/03/18
COUNTY CLERK

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 08/03/18 | DEPT. 34 |
| HONORABLE MICHAEL P. LINFIELD JUDGE | R. NAVARRO DEPUTY CLERK |
| HONORABLE #7 JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| V. GALINDO Deputy Sheriff | Rosie Samples, CSR# 12383 Reporter |

| | | | |
|---|---|---|---|
| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

The Court is also aware that this case was filed two years ago, and that while defense counsel's invoices have (presumably) been paid by its client on a monthly basis, plaintiff's counsel has not only fronted all costs to-date, but has not yet received any remuneration whatsoever on this case. Had plaintiff's counsel been paid monthly, those payments could have been invested. In June 2016 - when this case was filed - the Dow Jones Industrial average was approximately 17,800. As of the writing of this tentative decision, the Dow Jones Average is about 25,500. (See, e.g., https://www.macrotrends.net/1358/dow-jones-industrial-average-last-10-years.) This is an increase of approximately 43%. This in itself might warrant a 1.1 multiplier. (The reason it would not warrant a 1.43 multiplier is that all of the attorney's fees would not have accrued at the beginning of the case, but would rather have been spread out over the past two years. In fact, a majority of the attorney's fees were incurred in the last year and when preparing for trial. Hence a multiplier of approximately 1.1 would be appropriate simply to account for delay in payment.)

However, this Court need not - and perhaps should not - be so mathematical in its application of a

Page 32 of 57 DEPT. 34

MINUTES ENTERED
08/03/18
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/03/18

DEPT. 34

HONORABLE MICHAEL P. LINFIELD    JUDGE

HONORABLE                        JUDGE PRO TEM
#7
          V. GALINDO            Deputy Sheriff

R. NAVARRO                       DEPUTY CLERK

                                 ELECTRONIC RECORDING MONITOR

Rosie Samples, CSR# 12383    Reporter

| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

multiplier. Having considered all of the Ketchum
factors, the Court agrees with plaintiff that a
multiplier of 1.75 is the minimum that would be
appropriate in this case.


          Conclusion


     The motion is GRANTED. Plaintiff is awarded
attorney fees in the amount of 1,814,152.81, as
indicated in the spreadsheet below:
***SEE CHART NO. 2***
MOTION TO TAX COSTS


Moving Party:  Defendant The Regents of the
University of California


Resp. Party:    Plaintiff Dr. Lauren Pinter-Brown


     The motion is GRANTED in part. The Court
taxes a total of $23,339.56 from plaintiff's
Memorandum of Costs. The Court awards  plaintiff her
costs in the amount of $58,399.78.

                Page  33 of 57    DEPT. 34

MINUTES ENTERED
08/03/18
COUNTY CLERK

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 08/03/18 | | | | DEPT. 34 |
|---|---|---|---|---|
| HONORABLE MICHAEL P. LINFIELD | JUDGE | R. NAVARRO | | DEPUTY CLERK |
| HONORABLE #7 | JUDGE PRO TEM | | | ELECTRONIC RECORDING MONITOR |
| V. GALINDO | Deputy Sheriff | Rosie Samples, CSR# 12383 | Reporter | |

| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
|---|---|---|---|
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

PRELIMINARY COMMENTS:

The Court has noted various arithmetical errors in Plaintiff's Memorandum of Costs and pleadings. Plaintiff lists the total costs as $81,736.34. (See Memorandum of Costs, p. 1.) However, the costs listed actually total $81,739.34, a difference of $3.00. This was not pointed out by defendant; since defense counsel have always conducted themselves in a professional manner as officers of the Court (see, e.g., Rules Prof. Conduct, rules 5-220, 5-200 (A), (B)) the Court will simply assume that neither party caught this error.

Since it is not worth arguing over the $3.00 that plaintiff is shorting herself; the Court will use the lower figure supplied by plaintiff.

The Court also notes that plaintiff's Memorandum of Costs requests $31,353.55 for witness fees. (Memorandum of Costs, ¶ 8.) However, the Worksheet accompanying the Memorandum of Costs lists the total witness fees as $30,678.55. This discrepancy is not mentioned by either party in either their opposition or reply. The Court will use

Page 34 of 57    DEPT. 34

MINUTES ENTERED
08/03/18
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/03/18                                                                                    **DEPT.** 34

HONORABLE MICHAEL P. LINFIELD        JUDGE   R. NAVARRO              DEPUTY CLERK

HONORABLE                             JUDGE PRO TEM              ELECTRONIC RECORDING MONITOR
#7
         V. GALINDO          Deputy Sheriff   Rosie Samples, CSR# 12383   Reporter

| | | | |
|---|---|---|---|
| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

the lower, documented amount, as indicated in the
discussion of witness fees, below.

        Lastly, the Court notes that plaintiff has
miscalculated the amounts requested under "other"
expenses. Her Memorandum of Costs requests
$10,848.23 in "other" expenses; yet in her
opposition, she states that she is withdrawing
$321.89 of this amount, and therefore "should
recover such costs in the amount of $10,848.23."
(Memorandum of Costs, ¶ 13; Opposition, p. 10:16.)
Further, the amounts listed in her MPA under "other"
- $8,776.00 for Trial Equipment and $1,785.47 for
Parking and Travel - total $10,561.47, not the
$10,848.23 listed. Once again, neither party has
brought this discrepancy to the Court's attention.

ANALYSIS:

        On 04/17/18, plaintiff filed a verified
memorandum of costs seeking to recover a total of
$81,736.34 in expenses incurred in connection with
this action. (See "Preliminary Comments," above.) On
04/23/18, defendant timely filed its motion to tax

                    Page  35 of 57    DEPT. 34

| MINUTES ENTERED |
|---|
| 08/03/18 |
| COUNTY CLERK |

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/03/18                                     **DEPT.** 34

HONORABLE MICHAEL P. LINFIELD     JUDGE | R. NAVARRO          DEPUTY CLERK

HONORABLE                    JUDGE PRO TEM              ELECTRONIC RECORDING MONITOR
#7

    V. GALINDO     Deputy Sheriff | Rosie Samples, CSR# 12383  Reporter

8:30 am | BC624838                    Plaintiff   Anthony Nguyen (X)
                                      Counsel   Mark Lim (X)
DR LAUREN PINTER-BROWN
VS                               Defendant  Kathryn T. McGuigan (X)
UNIVERSITY OF CALIFORNIA AT LOS  Counsel   Barbara A. Fitzgerald (X)
ANGELES ET AL

**NATURE OF PROCEEDINGS:**

costs.

A. Relevant Law

    "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (Code Civ. Proc., § 1032(b).)

    After judgment is entered, the prevailing party "who claims costs must serve and file a memorandum of costs within 15 days after the date of service of the notice of entry of judgment or dismissal, or within 180 days after entry of judgment, whichever is first." (Cal. Rules of Court, rule 3.1700(a).) "The memorandum of costs must be verified by a statement of the party, attorney, or agent that to the best of his or her knowledge the items of cost are correct and were necessarily incurred in this case." (Ibid.)

    In turn, the losing party may file a motion to strike or tax costs. (Cal. Rules of Court, rule 3.1700(b).) Procedurally, "[a]ny notice of motion to strike or to tax costs must be served and filed 15 days after service of the cost memorandum." (Ibid.)

Page 36 of 57    DEPT. 34

MINUTES ENTERED
08/03/18
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 08/03/18 | DEPT. 34 |
| HONORABLE MICHAEL P. LINFIELD  JUDGE | R. NAVARRO   DEPUTY CLERK |
| HONORABLE #7   JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| V. GALINDO   Deputy Sheriff | Rosie Samples, CSR# 12383   Reporter |

| | | | |
|---|---|---|---|
| 8:30 am | BC624838 <br><br> DR LAUREN PINTER-BROWN <br> VS <br> UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Plaintiff Counsel | Anthony Nguyen (X) <br> Mark Lim (X) |
| | | Defendant Counsel | Kathryn T. McGuigan (X) <br> Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

Even where parties are unsuccessful as to certain matters, prevailing parties as defined by statute (Code of Civil Procedure §1032) are entitled to recover all costs reasonably incurred, and proof that parties were unsuccessful on particular items is not tantamount to a demonstration that such costs were unreasonably incurred. (Michell v. Olick (1996) 49 Cal.App.4th 1194, 1200.)

During the hearing, "the verified memorandum of costs is prima facie evidence of their propriety, and the burden is on the party seeking to tax costs to show they were not reasonable or necessary." (Nelson v. Anderson (1999) 72 Cal.App.4th 111, 131.) "This procedure provides an orderly and efficient way of placing disputed costs at issue on a line item basis." (612 South LLC v. Laconic Ltd. Partnership (2010) 184 Cal.App.4th 1270, 1285.)

"[T]he mere filing of a motion to tax costs may be a "proper objection" to an item, the necessity of which appears doubtful, or which does not appear to be proper on its face. [Citation.] However, "[i]f the items appear to be proper charges the verified memorandum is prima facie evidence that the costs, expenses and services therein listed were

Page  37 of 57   DEPT. 34

| |
|---|
| MINUTES ENTERED <br> 08/03/18 <br> COUNTY CLERK |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 08/03/18 | DEPT. 34 |
| HONORABLE MICHAEL P. LINFIELD            JUDGE | R. NAVARRO              DEPUTY CLERK |
| HONORABLE #7                      JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| V. GALINDO              Deputy Sheriff | Rosie Samples, CSR# 12383   Reporter |

| | | | |
|---|---|---|---|
| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X)<br>Mark Lim (X) |
| | DR LAUREN PINTER-BROWN<br>VS<br>UNIVERSITY OF CALIFORNIA AT LOS<br>ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X)<br>Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

necessarily incurred by the defendant [citations],
and the burden of showing that an item is not
properly chargeable or is unreasonable is upon the
[objecting party]." [Citations.]

"The court's first determination, therefore, is
whether the statute expressly allows the particular
item, and whether it appears proper on its face.
[Citation.] If so, the burden is on the objecting
party to show them to be unnecessary or
unreasonable. [Citation.]"   (Nelson, 72 Cal.App.4th
at p. 131.)

A.Discussion

     Defendant argues that the Memorandum should
be stricken in its entirety because "[p]laintiff did
not provide any documentation, invoices or
otherwise, to justify these costs, preventing the
Court or The Regents from determining the
reasonableness of any costs Plaintiff claims."
(Motion, p. 1:5-9.) The Court rejects this claim:
"the verified memorandum of costs is prima facie
evidence of their propriety, and the burden is on
the party seeking to tax costs to show they were not
reasonable or necessary." (Nelson v. Anderson (1999)

Page  38 of 57    DEPT. 34

| MINUTES ENTERED |
|---|
| 08/03/18 |
| COUNTY CLERK |

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 08/03/18 | **DEPT.** 34 |
| HONORABLE MICHAEL P. LINFIELD    JUDGE | R. NAVARRO          DEPUTY CLERK |
| HONORABLE                    JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| #7 |  |
| V. GALINDO    Deputy Sheriff | Rosie Samples, CSR# 12383   Reporter |

| | | | |
|---|---|---|---|
| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

72 Cal.App.4th 111, 131.) No additional
documentation is necessary; it is defendant's burden
to present evidence that the costs were unnecessary
or unreasonable.

        Separately, defendant moves to strike the
following items from the Memorandum:

". . . the total amount of $68,575.55 which includes
$380.00 in filing and motion fees, $4,304.05 in
unnecessary deposition costs; $1,124.45 in service
of process fees for witnesses not called or relied
upon at trial, $31,678.55 in witness fees,
$15,497.27 for unsubstantiated models, blowups, and
photocopies of exhibits, $4,743.00 in unrecoverable
court reporter fees, and $10,848.23 in vague 'other'
expenses." (Motion, p. 1: 11-16.)

        In Opposition, plaintiff withdraws her
request for a total of $353.27, including "(1)
witness fees - $21.05, (2) models, blowups, and
photocopies of exhibits - $10.33, [and] (3) other -
$321.89." (Opposition, p. 1:3-7.) She argues that
all of the other requested costs are recoverable and
requests that the Court award her costs in the
amount of $80,711.57. (See Id. at p. 1:8-13.)

                    Page  39 of 57    DEPT. 34

| MINUTES ENTERED |
|---|
| 08/03/18 |
| COUNTY CLERK |

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/03/18        **DEPT. 34**

HONORABLE MICHAEL P. LINFIELD   JUDGE    R. NAVARRO      DEPUTY CLERK

HONORABLE          JUDGE PRO TEM        ELECTRONIC RECORDING MONITOR
#7
      V. GALINDO     Deputy Sheriff    Rosie Samples, CSR# 12383   Reporter

| | | | |
|---|---|---|---|
| 8:30 am | BC624838 | Plaintiff<br>Counsel | Anthony Nguyen (X)<br>Mark Lim (X) |
| | DR LAUREN PINTER-BROWN<br>VS<br>UNIVERSITY OF CALIFORNIA AT LOS<br>ANGELES ET AL | Defendant<br>Counsel | Kathryn T. McGuigan (X)<br>Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

i.Filing and Motion Fees

     Plaintiff seeks $755.00 in "filing and motion fees." (Memorandum, ¶ 1.) Defendant argues that "the only cognizable fees is the filing fee for $435.00." (Motion, p. 3:12-13.) The "vague descriptions" include "three non-descript [sic] ex parte applications but provides the date for only one entry." (Id. at p. 3: 16-18.)

     In opposition, plaintiff argues that all of the filing and motion fees were necessary, reasonable, and recoverable:

"Plaintiff reserved three motion hearing dates in this litigation - two motions to compel further discovery responses and one motion for attorney fees. While the motions to compel further discovery responses ultimately were not heard by this Court and Plaintiff eventually obtained the requested relief via further meet and confer efforts Plaintiff nonetheless needed to pay the filing fees and reserve these motion dates to ensure compliance with her discovery requests." (Opposition, p. 4:10-15; Nguyen Decl., ¶¶ 2-3, Exh. 1 [containing payment

Page 40 of 57     DEPT. 34

MINUTES ENTERED
08/03/18
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 08/03/18 | | DEPT. 34 |
| HONORABLE MICHAEL P. LINFIELD JUDGE | R. NAVARRO | DEPUTY CLERK |
| HONORABLE #7 JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| V. GALINDO Deputy Sheriff | Rosie Samples, CSR# 12383 Reporter | |

| | | | |
|---|---|---|---|
| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

receipts and CRS receipts].)


Additionally, "plaintiff's two ex parte applications are similarly recoverable as Plaintiff's counsel applied to extend the page length of her opposition to Defendant's motion for summary judgment . . . [and the] second ex parte application . . . was likewise reasonably necessary as Plaintiff Pinter-Brown was hospitalized for a medical condition approximately one week before the scheduled trial date" necessitating a short continuance. (Opposition, p. 4:20-28; Nguyen Decl., ¶ 4.)


    In reply, defendant argues that the fees connected with the three motion hearings and the two ex parte applications should be stricken. (See Reply, p. 2:3-17.)


    According to defendant, the two motions to compel further discovery responses were unnecessary because "counsel admits that further meet and confer efforts were appropriate and necessary to resolve the motions." (Reply, p. 2:7-9.) The Court disagrees. Defendant was under an obligation to timely produce discovery responses. Plaintiff believed that the discovery responses were

Page  41 of 57    DEPT. 34

MINUTES ENTERED
08/03/18
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/03/18                                                              **DEPT.** 34

HONORABLE MICHAEL P. LINFIELD        JUDGE | R. NAVARRO        DEPUTY CLERK

HONORABLE                          JUDGE PRO TEM |              ELECTRONIC RECORDING MONITOR
#7
          V. GALINDO        Deputy Sheriff | Rosie Samples, CSR# 12383    Reporter

| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

inadequate and eventually persuaded defendant that
she was correct. Filing a motion to compel is often
the impetus that is required to get an opposing
party to engage in the meet and confer process in
good faith. Plaintiff may recover the filing fees
for both motions to compel.

Defendant presents no argument why the
filing fees for plaintiff's attorney fees motion is
not recoverable.

Defendant argues that the ex parte
applications are not recoverable because
"[p]laintiff tacitly concedes that a page-length
extension was ultimately not required or
appropriate" and because the ex parte to continue
the trial was "due to Plaintiff's own health issue
was not reasonably required, but rather, an expense
to accommodate Plaintiff's personal needs." (Reply,
p. 2: 12-16.) Defendant cites no authority for
either claim. Any indication that the request for a
page-length extension was unnecessary is only
visible in hindsight. Plaintiff's counsel has
declared that they believed the extension was
necessary at the time. The standard is what a
reasonable attorney would do at the time, not what
ultimately turns out to be necessary. Similarly,
defendant fails to explain how it is not reasonably

Page  42 of 57    DEPT.  34

MINUTES ENTERED
08/03/18
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 08/03/18 | | DEPT. 34 |
|---|---|---|
| HONORABLE MICHAEL P. LINFIELD   JUDGE | R. NAVARRO | DEPUTY CLERK |
| HONORABLE #7   JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| V. GALINDO   Deputy Sheriff | Rosie Samples, CSR# 12383   Reporter | |

| 8:30 am | BC624838 DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
|---|---|---|---|
| | | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

necessary to make sure that plaintiff could attend the trial. It was not unreasonable to seek a continuance to ensure that she could attend.

Plaintiff may recover $755.00 in filing and motion fees.

i.Deposition Costs

Defendant moves to strike $4,304.05 in costs for the depositions of Robert DuWors, Patricia Ganz, Allister-Benjamin Chase, Alan Marcus Fogelman, Terra Hughes, Robert Elshoff, and Judith Currier on the ground that their testimony was not used at trial. (See Motion, p. 4: 9-17.) The fact that they were deposed but did not testify "suggests that their testimony was merely relevant but not necessary to the proceedings." (Id. at p. 4: 13-14.)

In opposition, plaintiff acknowledges that these witnesses' deposition testimony was not used at trial but explains that their testimony was "reasonably necessary to the conduct of the litigation" because their testimony was "heavily relied upon by Plaintiff in her opposition to

Page   43 of 57   DEPT. 34

| MINUTES ENTERED |
|---|
| 08/03/18 |
| COUNTY CLERK |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/03/18           **DEPT.** 34

HONORABLE MICHAEL P. LINFIELD    JUDGE    R. NAVARRO       DEPUTY CLERK

HONORABLE          JUDGE PRO TEM       ELECTRONIC RECORDING MONITOR
#7

      V. GALINDO    Deputy Sheriff    Rosie Samples, CSR# 12383   Reporter

| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
|---|---|---|---|
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

Defendant's voluminous and difficult motion for summary judgment. A significant portion of emails and other exhibits relied upon at trial included reference to Drs. Fogelman, Ganz, and Currier, and it was necessary for Plaintiff's successful litigation of this case to depose these individuals." (Opposition, p 5:17-22.)

     Plaintiff has submitted invoices documenting the expenses incurred in connection with deposing witnesses in this case. (See Nguyen Decl., Exh. 3.) She notes that these expenses include fees for preparation of deposition transcripts, which are recoverable in the Court's discretion because they are not specifically enumerated. (Opposition, p. 5: 23-25 [citing Hsu v. Semiconductor Systems, Inc. (2005) 126 Cal.App.4th 1330, 1342].) Additionally, she seeks to recover costs for expedited deposition transcripts of several witnesses and argues that she "had no choice but to expedite the transcripts, because her opposition to Defendant's motion for summary judgment was due on August 3, 2017." (Id. at p. 6: 12-16.)

     In reply, defendant argues that the Court should disallow $8,331.91 in deposition costs because plaintiff's documentary evidence shows that many of the charges are not recoverable. (See Reply,

Page  44 of 57    DEPT. 34

MINUTES ENTERED
08/03/18
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/03/18                                                          **DEPT.** 34

HONORABLE MICHAEL P. LINFIELD        JUDGE | R. NAVARRO        DEPUTY CLERK

HONORABLE                                    JUDGE PRO TEM |        ELECTRONIC RECORDING MONITOR
#7
            V. GALINDO        Deputy Sheriff | Rosie Samples, CSR# 12383   Reporter

| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

p. 3: 1-17.) Defendant argues that "[t]he remaining sums for expedited fees ($1,475.82), optional electronic copies ($376), delivery fees ($250), and other improper expenses such as parking ($194.50) are not recoverable." (Reply, p. 3: 19-21.) Additionally, "[d]efendant should not bear the costs for Plaintiff's failure to plan or take depositions late" by being compelled to pay for the expedited fees. (Id. at p. 3: 23-24.)

        Defendant fails to cite any authority to support its conclusions that electronic copies, delivery fees, and parking are not encompassed within the allowable expenses for "taking, video recording, and transcribing necessary depositions including an original and one copy of those taken by the claimant . . . and travel expenses to attend depositions." Defendant also fails to show that plaintiff is at fault for conducting depositions so close to the deadline for opposing the motion for summary judgment.

        Further, the Court gave each side 16 hours for their presentation of evidence. Plaintiff used 16.0 hours; defendant used 15.9 hours. These limitations were reasonable, and were consistent with the Court's order at the Case Management Conference that this would be a 7-10 day jury trial.

                Page  45 of 57    DEPT. 34

| MINUTES ENTERED |
| 08/03/18 |
| **COUNTY CLERK** |

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/03/18                                                          **DEPT. 34**

HONORABLE MICHAEL P. LINFIELD    JUDGE | R. NAVARRO              DEPUTY CLERK

HONORABLE                  JUDGE PRO TEM                    ELECTRONIC RECORDING MONITOR
#7
       V. GALINDO        Deputy Sheriff | Rosie Samples, CSR# 12383   Reporter

| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
|---|---|---|---|
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

However, given these limitations, neither party could call all of the witnesses that they might have originally anticipated calling.

    Plaintiff may recover $14,888.09 in deposition costs.

i.Service of Process

    Defendant moves to strike $1,124.25 in service of process costs from the Memorandum on the ground that these costs related to service on witnesses who were not "deposed in the course of litigation or appeared at trial" and for serving witnesses who "were deposed but did not testify at trial and were, therefore, not necessary to the litigation." (Motion, p. 4: 22-28.)

    In opposition, plaintiff acknowledges that it served several individuals who were not deposed and who did not testify at trial. "Plaintiff made a strategic call at trial to not call these witnesses at trial. Still, Plaintiff had a duty to ensure that it served subpoenas on all of the witnesses who would offer probative evidence at trial. Plaintiff

                Page  46 of 57    DEPT. 34

| MINUTES ENTERED |
| 08/03/18 |
| COUNTY CLERK |

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/03/18                          **DEPT. 34**

HONORABLE MICHAEL P. LINFIELD      JUDGE | R. NAVARRO        DEPUTY CLERK

HONORABLE              JUDGE PRO TEM            ELECTRONIC RECORDING MONITOR
#7

     V. GALINDO      Deputy Sheriff | Rosie Samples, CSR# 12383   Reporter

---

8:30 am | BC624838              Plaintiff    Anthony Nguyen (X)
                              Counsel     Mark Lim (X)
      DR LAUREN PINTER-BROWN
      VS                      Defendant    Kathryn T. McGuigan (X)
      UNIVERSITY OF CALIFORNIA AT LOS   Counsel     Barbara A. Fitzgerald (X)
      ANGELES ET AL

---

**NATURE OF PROCEEDINGS:**

should not have to bear costs that were reasonably necessary to conduct of the litigation."
(Opposition, p. 6:27-7:3.) Additionally, plaintiff incurred actual expenses to serve some individuals twice because the first attempt was unsuccessful.

     Once again, defendant's argument is based entirely on hindsight. Plaintiff chose not to call certain witnesses and so it appears that those witnesses must have been unnecessary. That is not the standard. Plaintiff persuasively argues that, at the time these individuals were served, her counsel reasonably believed that their testimony would be necessary. Counsel made a strategic decision not to call these witnesses. Given the resulting verdict, it appears that counsel's strategy worked.

     As the Court indicated above, the Court gave each side 16 hours for their presentation of evidence. Given these restrictions, it is not surprising that subpoenas might have been served on potential witnesses who were never called to testify at trial. This is no different than most trials; for instance, today's newspapers report that the prosecution in the Paul Manafort trial has "said they might call three dozen witnesses." (See New York Times, 7/31/18, "Manafort Trial Gets Off to Quick Start, available at

<div align="center">

Page 47 of 57      DEPT. 34

</div>

<div align="right">

**MINUTES ENTERED**
08/03/18
**COUNTY CLERK**

</div>

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/03/18 | | DEPT. 34
---|---|---

HONORABLE MICHAEL P. LINFIELD  JUDGE | R. NAVARRO  DEPUTY CLERK

HONORABLE #7 | JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR

V. GALINDO  Deputy Sheriff | Rosie Samples, CSR# 12383  Reporter

| | |
|---|---|
| 8:30 am | BC624838 |
| | DR LAUREN PINTER-BROWN |
| | VS |
| | UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL |

Plaintiff Counsel  Anthony Nguyen (X)
Mark Lim (X)

Defendant Counsel  Kathryn T. McGuigan (X)
Barbara A. Fitzgerald (X)

**NATURE OF PROCEEDINGS:**

https://www.nytimes.com/2018/07/31/
us/politics/paul-manafort-trial.html?
hp&action=click&pgtype=Homepage
&clickSource=story-heading&module
=first-column-region&region=top-news
&WT.nav=top-news.)  It is unlikely that all of these
witnesses will be called by the prosecution in the
estimated three-week trial.

       The Court declines to strike any amount
incurred for service.


i.Witness Fees

       Defendant moves to strike $61.05 in ordinary
witness fees paid to Ben Chase on the ground that he
never testified at trial. (Motion, p. 5: 10-12.)

       Plaintiff withdraws $21.05 in expenses
related to Mr. Chase's deposition "which includes
$10.00 for parking expense reimbursement and
$0.535/mile rather than the statutorily allowable
$0.20/mile" in travel expenses. (See Opposition, p.
7: 14-17.) Nevertheless, he actually appeared at

Page  48 of 57    DEPT. 34

MINUTES ENTERED
08/03/18
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 08/03/18 | **DEPT.** 34 |
| HONORABLE MICHAEL P. LINFIELD    JUDGE | R. NAVARRO    DEPUTY CLERK |
| HONORABLE #7    JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| V. GALINDO    Deputy Sheriff | Rosie Samples, CSR# 12383    Reporter |

| | | | |
|---|---|---|---|
| 8:30 am | BC624838 <br><br> DR LAUREN PINTER-BROWN <br> VS <br> UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Plaintiff Counsel <br><br> Defendant Counsel | Anthony Nguyen (X) <br> Mark Lim (X) <br><br> Kathryn T. McGuigan (X) <br> Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

trial and would have been called but Plaintiff had a limited amount of time to present her case and made a strategic call to expend more trial time examining other witnesses." (Id. at p. 7: 21-23.) As defendant's motion concedes, witness fees are available for "each day's actual attendance at trial," not just for testifying at trial. (Motion, p. 5:8-9.)

Defendant also moves to strike expert witness fees on the ground that the Court has not ordered that the fees would be recoverable and plaintiff has not presented any evidence to show that the costs were reasonable or necessary. (Motion, p. 5: 13-22.)

Although the Court did not explicitly order that expert witness fees would be recoverable, they are provided for by statute. Government Code section 12965 provides that "[i]n actions brought under this section, the court, in its discretion, may award to the prevailing party reasonable attorney's fees and costs, including expert witness fees." (Gov. Code § 12965(b).) Additionally, Courts "have relied upon federal cases interpreting Title VII in determining the standards governing FEHA fee recoveries. . . . Under Title VII a prevailing plaintiff is entitled to expert witness fees." (Opposition, p. 8: 9-14.)

Page  49 of 57    DEPT. 34

| |
|---|
| **MINUTES ENTERED** <br> 08/03/18 <br> COUNTY CLERK |

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 08/03/18 | | | DEPT. 34 |
|---|---|---|---|
| HONORABLE MICHAEL P. LINFIELD JUDGE | R. NAVARRO | | DEPUTY CLERK |
| HONORABLE #7 | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| V. GALINDO Deputy Sheriff | Rosie Samples, CSR# 12383 Reporter | | |

| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
|---|---|---|---|
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

Here, plaintiff argues that she incurred expert witness fees in the amount of $30,678.55 for the retention of experts "who were necessary to assess plaintiff's emotional distress" and damages and to depose defendant's expert witness. (See Opposition, p. 8:15-20.)

In reply, defendant challenges plaintiff's documentation on the ground that the invoices do not reflect the fact that plaintiff actually paid all of the expenses. (See Reply, p. 6:10-28.) Defendant cites no authority for the claim that a cost must have been actually paid in order to be recoverable. The documentary evidence establishes that plaintiff has actually incurred an obligation to pay the requested amounts to each expert witness. That is sufficient.

As indicated above in its "Preliminary Comments," Plaintiff's Summary to its Memorandum of Costs lists witness fees as $31,353.55, while the worksheet only itemizes $30,678.55 in costs. The Court will use the lower amount.

The Court awards expert witness fees to

Page 50 of 57     DEPT. 34

MINUTES ENTERED
08/03/18
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 08/03/18 | DEPT. 34 |
| HONORABLE MICHAEL P. LINFIELD          JUDGE | R. NAVARRO          DEPUTY CLERK |
| HONORABLE #7                           JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| V. GALINDO          Deputy Sheriff | Rosie Samples, CSR# 12383   Reporter |

| | | | |
|---|---|---|---|
| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

plaintiff in the amount of $30,678.55, plus ordinary witness fees in the amount of $40.00 for a total of $30,718.55.

i.Models, Blowups and Photocopies of Exhibits

    Section 1033.5(a)(13) provides that "[m]odels and blowups of exhibits and photocopies of exhibits may be allowed if they were reasonably helpful to aid the trier of fact." Because this section only allows costs that were helpful to aid the trier of fact, "[i]t follows that fees are not authorized for exhibits not used at trial." (Ladas v. California State Auto Assoc. (1993) 19 Cal.App.4th 761, 775 [such costs not allowable because the case was dismissed before trial].)

    Defendant moves to strike $15,497.27 in fees allegedly incurred for models, blowups, and photocopies of exhibits on the ground that "plaintiff provides no further description of 'copies' that would in any way justify the claimed exorbitant cost." (Motion, p. 6: 4-7.)

Page  51 of 57     DEPT. 34

MINUTES ENTERED
08/03/18
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 08/03/18 | **DEPT.** 34 |
| HONORABLE MICHAEL P. LINFIELD   JUDGE | R. NAVARRO   DEPUTY CLERK |
| HONORABLE   JUDGE PRO TEM<br>#7 | ELECTRONIC RECORDING MONITOR |
| V. GALINDO   Deputy Sheriff | Rosie Samples, CSR# 12383   Reporter |

| | | | |
|---|---|---|---|
| 8:30 am | BC624838 | Plaintiff<br>Counsel | Anthony Nguyen (X)<br>Mark Lim (X) |
| | DR LAUREN PINTER-BROWN<br>VS<br>UNIVERSITY OF CALIFORNIA AT LOS<br>ANGELES ET AL | Defendant<br>Counsel | Kathryn T. McGuigan (X)<br>Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

The Court finds that the copying charge per page that plaintiff is requesting - 1.5¢/page - is eminently reasonable.

Plaintiff withdraws $10.33 from her claimed costs but maintains that the vast majority of the costs are recoverable. (See Opposition, p. 9: 9-10.) Plaintiff cites the following expenses:

"Shegerian & Associates incurred $12,836.25 in: (1) printing/copying five sets of Plaintiff's trial exhibits . . . (2) printing/copying three sets of Defendant's trial exhibits . . . (3) printing/copying six sets of deposition transcripts . . . (40 binders . . . and (5) exhibit tabs."

(Opposition, p. 9:24-10:3.) At the Final Status Conference, the Court required counsel to prepare five full sets of their trial exhibits - the original for the Judicial Assistant, plus one copy each for the Court, for the witness, for counsel and for opposing counsel. These are reimbursable. Plaintiff lists $6,849.90 for copying six sets of these exhibits, at $0.015/page. The Court will award 5/6 of this amount, or $5,708.25, and taxes the remaining amount.

Page  52 of 57     DEPT.  34

MINUTES ENTERED
08/03/18
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/03/18            **DEPT.** 34

HONORABLE MICHAEL P. LINFIELD    JUDGE | R. NAVARRO    DEPUTY CLERK

HONORABLE #7    JUDGE PRO TEM    ELECTRONIC RECORDING MONITOR

V. GALINDO    Deputy Sheriff | Rosie Samples, CSR# 12383   Reporter

---

8:30 am | BC624838

DR LAUREN PINTER-BROWN
VS
UNIVERSITY OF CALIFORNIA AT LOS
ANGELES ET AL

Plaintiff Counsel   Anthony Nguyen (X)
   Mark Lim (X)

Defendant Counsel   Kathryn T. McGuigan (X)
   Barbara A. Fitzgerald (X)

---

**NATURE OF PROCEEDINGS:**

The remaining expenses appear to have been for counsel's benefit and use during the trial. There is no evidence that these costs relate to exhibits that were "reasonably helpful to aid the trier of fact." (Code of Civil Procedure § 1033.5(a)(13).)

Accordingly, the Court taxes $7,128.00 from plaintiff's Memorandum of Costs, plus the $10.33 withdrawn by plaintiff.

i. Court Reporter Fees

A prevailing party may recover "court reporter fees as established by statute." (Code Civ. Proc., § 1033.5(a)(11).)

Defendant moves to strike $4,743.00 in Court Reporter fees on the ground that they are not ordered by the Court and are not allowable under section 1033.5(b). (See Motion, p. 6:20-28.) In opposition, plaintiff maintains that "Court reporter fees are expressly allowed by section 1033.5." (Opposition, p. 10:10.) Plaintiff is incorrect.

Page 53 of 57    DEPT. 34

MINUTES ENTERED
08/03/18
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 08/03/18 | **DEPT.** 34 |
| HONORABLE MICHAEL P. LINFIELD **JUDGE** | R. NAVARRO **DEPUTY CLERK** |
| HONORABLE #7 **JUDGE PRO TEM** | **ELECTRONIC RECORDING MONITOR** |
| V. GALINDO **Deputy Sheriff** | Rosie Samples, CSR# 12383 **Reporter** |

| | | | |
|---|---|---|---|
| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
| | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

Section 1033.5(a)(11) allows for recovery of court reporter fees if they are "established by statute." (Code Civ. Proc. § 1033.5(a)(11).) Plaintiff fails to cite any statute that allows for the recovery of court reporter fees.

  Accordingly, the Court strikes $4,743.00 from plaintiff's Memorandum of Costs.

i. Other

  Plaintiff seeks to recover $10,848.23 for "other" expenses including "trial equipment, medical records, attorney reimb." (Memorandum, ¶ 13, p. 3.) Defendant moves to strike these costs on the ground that "plaintiff fails to itemize each category of alleged costs." (See Motion, p. 7: 2-12.)

  Plaintiff withdraws $321.89 from her request and argues that she should receive $10,848.23 in "other" costs. (See Opposition, p. 10: 15-16.)

  First, plaintiff explains that she incurred $8,776.00 in expenses for trial equipment.

Page 54 of 57   DEPT. 34

MINUTES ENTERED
08/03/18
COUNTY CLERK

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/03/18

DEPT. 34

HONORABLE MICHAEL P. LINFIELD    JUDGE

R. NAVARRO      DEPUTY CLERK

HONORABLE #7      JUDGE PRO TEM

ELECTRONIC RECORDING MONITOR

V. GALINDO    Deputy Sheriff

Rosie Samples, CSR# 12383   Reporter

| | | | |
|---|---|---|---|
| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X)<br>Mark Lim (X) |
| | DR LAUREN PINTER-BROWN<br>VS<br>UNIVERSITY OF CALIFORNIA AT LOS<br>ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X)<br>Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

(Opposition, p. 10: 18-25.) She submits invoices totaling $8,776.00 which reflects "equipment rental fees to assist in the electronic presentation of evidence at trial." (Nguyen Decl., ¶ 18, Exh. 9.)

Defendant objects to these expenses on the ground that the trial support services were provided by Trial Electronics Direct, "a fictitious business name which uses the same Post Office box number as Plaintiff's counsel's firm and registered as a fictitious business name by Plaintiff's counsel as the registrant. By way of these costs, Mr. Shegerian is charging his firm to rent equipment that, in all likelihood, his firm already owns. This cost is disingenuous and expressly disallowed by case law."

The Fictitious Business Name Statement is signed by Mr. Shegerian on behalf of the owner, Secretariat Enterprises, LLC. (See McGuigan Decl, Exh. B.) Even if Mr. Shegerian is the sole owner of Secretariat Enterprises LLC, that LLC is a separate business entity from the law firm, which is a registered corporation under the name Shegerian & Associates, Inc. (See Id. at Exh. A.)

Although these corporations may be distinct legal entities, the issue raised by defense is

Page 55 of 57    DEPT. 34

MINUTES ENTERED
08/03/18
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/03/18                                                    **DEPT.** 34

HONORABLE MICHAEL P. LINFIELD          JUDGE | R. NAVARRO          DEPUTY CLERK

HONORABLE                          JUDGE PRO TEM                    ELECTRONIC RECORDING MONITOR
#7
         V. GALINDO          Deputy Sheriff | Rosie Samples, CSR# 12383   Reporter

| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X)<br>Mark Lim (X) |
| | DR LAUREN PINTER-BROWN<br>VS<br>UNIVERSITY OF CALIFORNIA AT LOS<br>ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X)<br>Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

troubling to this Court. Anytime there are
closely-held interlocking corporations, the
possibility of self-dealing is always present. There
is no way for this Court to know whether the amounts
billed represent fair-market value for the services
rendered. Having no evidence of the reasonableness
of these costs, the Court exercises its discretion
to tax the $8,776.00 in rentals for trial equipment.

     Next, plaintiff claims that she incurred
$1,785.47 in parking and travel expenses related to
depositions, which are specifically allowable under
section 1033.5(a)(3). (Opposition, p. 10:27-28.)
Plaintiff acknowledges that attorney parking at
trial and hearings are discretionary but requests
that the Court award these expenses. (See Id. at p.
11.) Plaintiff has submitted invoices documenting
these expenses. (See Nguyen Decl., Exh. 10.)

     While the Court would normally allow for
travel expenses related to depositions, the Court
normally does not allow for reimbursement for
parking at trial and court hearings. Plaintiff's
Exhibit 10 does not readily allow the Court to
determine how much money was incurred for parking
and/or travel related to trial and court hearings.

              Page  56 of 57    DEPT. 34

| MINUTES ENTERED |
| 08/03/18 |
| COUNTY CLERK |

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/03/18                          **DEPT.** 34

HONORABLE MICHAEL P. LINFIELD      JUDGE | R. NAVARRO         DEPUTY CLERK

HONORABLE                JUDGE PRO TEM           ELECTRONIC RECORDING MONITOR
#7

     V. GALINDO         Deputy Sheriff | Rosie Samples, CSR# 12383   Reporter

| 8:30 am | BC624838 | Plaintiff Counsel | Anthony Nguyen (X) Mark Lim (X) |
|---------|----------|-------------------|--------------------------------|
|  | DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES ET AL | Defendant Counsel | Kathryn T. McGuigan (X) Barbara A. Fitzgerald (X) |

**NATURE OF PROCEEDINGS:**

       Defendant objects to all but $25 of the parking expenses. (Reply, p. 10:12.)  The Court will therefore tax all but $25.00 of these expenses.

       (As indicated above in the "Preliminary Comments," Plaintiff has miscalculated the amounts under her "other" expenses. (See Memorandum of Costs, Summary and Worksheet, ¶¶ 13.)  Using the figure listed on the summary, the Court taxes $10,823.23, and awards $25.00.

i.Conclusion

       The motion is GRANTED in part as indicated in the spreadsheet below. The Court taxes a total of $23,339.56 from plaintiff's Memorandum of Costs. The Court awards  plaintiff her costs in the amount of $58,399.78.

****SEE CHART NO. 3***

Defendant is to give notice.

               Page  57 of 57   DEPT. 34

CHART NO. 1- BC624838- DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES

**ATTORNEYS FEES**

| Attorney's Name | Rate Requested | Hours Requested | Total Requested | Rate Granted | Hours Granted | Total Granted |
|---|---|---|---|---|---|---|
| Carney Shegerian | $1,100.00 | 381.70 | $419,870.00 | $1,100.00 | 381.70 | $419,870.00 |
| Anthony Nguyen | $675.00 | 395.60 | $267,030.00 | $675.00 | 395.60 | $267,030.00 |
| Taylor Prainito | $500.00 | 398.90 | $199,450.00 | $500.00 | 398.90 | $199,450.00 |
| Mark Lim | $400.00 | 327.30 | $130,920.00 | $400.00 | 327.30 | $130,920.00 |
| Gloria Tumanyan | $350.00 | 4.25 | $1,487.50 | $350.00 | 4.25 | $1,487.50 |
| Kristina Unanyan | $350.00 | 7.30 | $2,555.00 | $350.00 | 7.30 | $2,555.00 |
| Monique Eginli | $325.00 | 17.25 | $5,606.25 | $325.00 | 17.25 | $5,606.25 |
| Cecilia Son | $325.00 | 20.00 | $6,500.00 | $325.00 | 20.00 | $6,500.00 |
| Taylor French | $300.00 | 10.80 | $3,240.00 | $300.00 | 10.80 | $3,240.00 |
| | | Total Requested | $1,036,658.75 | | Total Fees Granted | $1,036,658.75 |

CHART NO. 2- BC624838- DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES

**ATTORNEYS FEES**

| Attorney's Name | Rate Requested | Hours Requested | Total Requested | Rate Granted | Hours Granted | Total Granted |
|---|---|---|---|---|---|---|
| Carney Shegerian | $1,100.00 | 381.70 | $419,870.00 | $1,100.00 | 381.70 | $419,870.00 |
| Anthony Nguyen | $675.00 | 395.60 | $267,030.00 | $675.00 | 395.60 | $267,030.00 |
| Taylor Prainito | $500.00 | 398.90 | $199,450.00 | $500.00 | 398.90 | $199,450.00 |
| Mark Lim | $400.00 | 327.30 | $130,920.00 | $400.00 | 327.30 | $130,920.00 |
| Gloria Tumanyan | $350.00 | 4.25 | $1,487.50 | $350.00 | 4.25 | $1,487.50 |
| Kristina  Unanyan | $350.00 | 7.30 | $2,555.00 | $350.00 | 7.30 | $2,555.00 |
| Monique Eginli | $325.00 | 17.25 | $5,606.25 | $325.00 | 17.25 | $5,606.25 |
| Cecilia Son | $325.00 | 20.00 | $6,500.00 | $325.00 | 20.00 | $6,500.00 |
| Taylor French | $300.00 | 10.80 | $3,240.00 | $300.00 | 10.80 | $3,240.00 |
| | | Total Requested | $1,036,658.75 | | Total Fees Granted | $1,036,658.75 |
| | | | | | Multiplier 1.75 | $1,814,152.81 |

CHART NO. 3- BC624838- DR LAUREN PINTER-BROWN VS UNIVERSITY OF CALIFORNIA AT LOS ANGELES

**Motion to Tax Costs**

| Item No. | Item | Amount Requested | Amount Taxed | Amount Granted |
|----------|------|------------------|--------------|----------------|
| 1 | Filing and motion fees | $755.00 | $0.00 | $755.00 |
| 2 | Jury fees | $1,748.20 | $0.00 | $1,748.20 |
| 3 | Jury food and lodging | $0.00 | $0.00 | $0.00 |
| 4 | Deposition costs | $14,888.09 | $0.00 | $14,888.09 |
| 5 | Service of process | $1,906.00 | $0.00 | $1,906.00 |
| 6 | Attachment expenses | $0.00 | $0.00 | $0.00 |
| 7 | Surety bond premiums | $0.00 | $0.00 | $0.00 |
| 8 | Witness fees | $31,353.55 | $635.00 | $30,718.55 |
| 9 | Court-ordered transcripts | $0.00 | $0.00 | $0.00 |
| 10 | Attorneys fees | $0.00 | $0.00 | $0.00 |
| 11 | Models, blowups, photocopies | $15,497.27 | $7,138.33 | $8,358.94 |
| 12 | Court reporter fees | $4,743.00 | $4,743.00 | $0.00 |
| 13 | Other | $10,848.23 | $10,823.23 | $25.00 |
| | | | | |
| | TOTAL | $81,739.34 | $23,339.56 | $58,399.78 |

Exhibit 9 to Sobel Declaration

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 14-2171 JGB (SPx)** | Date | February 28, 2019 |
|---|---|---|---|
| Title | ***Dan McKibben, et al. v. John McMahon et al.*** | | |

Present: The Honorable      JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

Attorney(s) Present for Plaintiff(s):          Attorney(s) Present for Defendant(s):

None Present                    None Present

**Proceedings:**      **Order (1) GRANTING Plaintiffs' Motion for Attorneys' Fees (Dkt. No. 86); and (2) GRANTING Plaintiffs' Motion for Final Approval of Class Settlement (Dkt. No. 90)  (IN CHAMBERS)**

On January 18, 2019, Plaintiffs[1] Pedro Guzman, Nick Ou, Sean Lint, Anthony Oliver, Timothy Walker, Ilich Vargas, William Kennedy, Jonathan Robertson, Steve Aka Lynn Price, Bryan Bagwell, Christopher Crawford[2], Frederick Crockan, Taheash White, Michael Aka Madison Hatfield, and Kevin Aka Veronica Pratt (collectively, "Plaintiffs" or "Named Plaintiffs") filed a Motion for Final Approval of Class Settlement.  ("MFACS," Dkt. No. 90.) On November 7, 2018, Plaintiffs moved for attorneys' fees and costs. ("MAF," Dkt. No 86.) These matters are unopposed.  The Court held a hearing on these matters on February 11, 2019. Upon consideration of the papers filed in support of these motions, as well as oral arguments presented by the parties, the Court GRANTS Plaintiff's MFACS and GRANTS Plaintiffs' MAF.

## I.  BACKGROUND

On May 20, 2015 Plaintiffs filed a Second Amended Complaint against Defendants Sheriff John McMahon, Greg Garland, Jeff Rose, Sergeant James Mahan, Corporal Armando

---

[1] Plaintiff Dan McKibben passed away while this lawsuit was pending, and is not listed as a Plaintiff.  His name is still used as the Case Name.

[2] At the February 11, 2019 hearing, Plaintiffs' Counsel reported that Christopher Crawford passed away while this motion was pending.

Castillo, the County of San Bernardino ("the County"), and San Bernardino Sheriff's Department ("SBCSD") (collectively "Defendants"). ("SAC," Dkt. 37.) Plaintiffs sue each individual defendant in both his individual and official capacity. (Id.) Plaintiffs allege three causes of action: (1) violation of 42 U.S.C. § 1983 for depriving Plaintiffs of equal protection afforded by the 14th Amendment based on sexual orientation, gender identity, and gender; (2) violation of Cal. Civ. Code § 52.1 for interfering with Plaintiffs' rights to equal protection under the California Constitution; and (3) injunctive relief under Article 1, § 7 of the California Constitution and violation of Cal. Govt. Code §1135(A) by the County, SBCSD, and McMahon. (Id.)

On August 15, 2018, Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement. On September 10, 2018, the Court granted the preliminary approval of this class action settlement and granted conditional certification of the proposed settlement classes. ("Preliminary Approval Order," Dkt. No 84.) In the Preliminary Approval Order, the Court ordered:

1. The Settlement Agreement is preliminarily approved as fair, reasonable, and adequate for members of the settlement class.

2. The following settlement classes are certified for settlement purpose only:

   a. Damages Class: Individuals who, between October 22, 2012 (two years prior to the filing of the original complaint, which is the statute of limitations period under 42 U.S.C. § 1983) and March 31, 2018 (the end of the month in which the settlement was reached in principle) were gay, bisexual, and/or transgender inmates housed in the Alternative Lifestyle Tank of the San Bernardino County Jail facility known as West Valley Detention Center.

   b. Injunctive Relief Class: Individuals who currently are, or in the future will be, gay, bisexual, and/or transgender inmates housed in the San Bernardino County jails, including but not limited to those housed in the Alternative Lifestyle Tank.

3. Barrett S. Litt, David McLane, and Lindsay Battles of Kaye, McLane, Bednarski & Litt, and Melissa Goodman, Amanda Goad, Brendan Hamme, and Aditi Fruitwala of the ACLU Foundation of Southern California are appointed as class counsel for purposes of settlement only.

4. Named Plaintiffs Pedro Guzman, Nick Ou, Sean Lint, Anthony Oliver, Timothy Walker, Ilich Vargas, William Kennedy, Jonathan Robertson, Steve Aka Lynn Price, Bryan Bagwell, Christopher Crawford, Frederick Crockan, Taheash White, Michael Aka Madison Hatfield, and Kevin Aka Veronica Pratt are qualified to act as representatives of the settlement classes and are preliminarily appointed as class representatives.

5. JND Legal Administration is appointed as the settlement administrator.

6. The settlement notice, as set forth in Exhibit B to the Settlement Motion, is approved in form and substance for use in the administration of the Settlement Agreement. The Court grants the parties the authority to finalize the contact information, website address, response dates, and fairness hearing dates in accordance with this Order.

7. JND Legal Administration is directed to mail the notice and claim form to all individuals entitled to receive notice within two weeks of this Order.

8. Settlement class members will have until January 7, 2019 to file a claim, opt-out, or file an objection to the Settlement Agreement.

9. The final approval hearing will be scheduled for February 11, 2019 at 9:00 a.m. in Courtroom 1 of the United States District Court for the Central District of California, Eastern Division located at 3470 12th Street, Riverside, California 92501.

(Id. at 19-20).

## II.    THE SETTLEMENT AGREEMENT

Plaintiffs filed a Settlement Agreement on August 15, 2018. ("Settlement Agreement," Dkt. No. 78.) The Court preliminarily approved the Settlement Agreement on September 10, 2018. (Preliminary Approval Order.) The terms of the Settlement Agreement are discussed below.

### A. Settlement Classes

The settlement classes for the purposes of the settlement of this case include both a Damages Class and an Injunctive Relief Class.

The Damages Class includes "individuals who, between October 22, 2012 (two years prior to the filing of the original complaint, which is the statute of limitations period under 42 U.S.C. § 1983) and March 31, 2018 (the end of the month in which the settlement was reached in principle) self-identified as gay, bisexual and/or transgender inmates ("GBT inmates") housed in the Alternative Lifestyle Tank ("ALT") of the San Bernardino County Jail facility known as West Valley Detention Center ('WVDC')." (Settlement Agreement §1, ¶ 10.)

The Injunctive Relief Class includes "individuals who currently are, or in the future will be, GBT inmates housed in the San Bernardino County jails, including but not limited to those housed in the ALT." (Id. § 1, ¶ 18.) The finalized class list consisted of 660 individuals. ("Keough Declaration," Dkt. No. 92 ¶ 4.)

## B. Release

All settlement class members agree to release their claims as follows:

The Settlement Agreement, as of the Effective Date, resolves in full all claims against the Released Persons[3] by all of the SCMs,[4] including the Named Plaintiffs, involving violations of law or constitutional rights, including, without limitation, their equal protection rights under federal and California law, their rights under California Civil Code § 52.1, any other rights under any other federal, state or local law, regulation, duty, or obligation, or any other legal theory, action or cause of action, which arise from the class-wide factual allegations alleged in the complaint , as well as any claim regarding the bus transportation of transgender inmates (hereafter "Covered Claims").

When the Settlement Agreement is final, as of the Effective Date, all SCMs, including the Named Plaintiffs, waive all rights to any and all claims relating to damages or reimbursement of any kind for the Covered Claims. This waiver and release shall include a full release and waiver of unknown rights regarding the Covered Claims that may exist as of the Effective Date.

As of the Effective Date, the SCMs, including the Named Plaintiffs, hereby waive any and all rights to pursue, initiate, prosecute, or commence any action or proceeding before any court, administrative agency or other tribunal, or to file any complaint regarding acts or omissions by the Released Persons with respect to the Covered Claims during the Class Period that fit within the definition of the Damages Class; and further, as it relates to this waiver or Release, expressly waive the provisions of California Civil Code § 1542, which provides that "a general

---

[3] Released Persons refers to:

> Defendants and their affiliates, subsidiaries, predecessors, successors, and/or assigns, together with past, present and future officials, employees, representatives, attorneys, and/or agents of San Bernardino County, including John McMahon, or any of them. "Released Persons" also includes any and all insurance carriers, and/or their representatives and attorneys, for the Released Persons.

(Settlement Agreement § II, ¶ 26)

[4] SCMs stands for "Settlement Class Member," which refers to:

> [A]ny member of the Damages class as defied above (whether or not s/he files a Timely Claim form), including representatives, successors and assigns, who does not file a valid and timely Request for Exclusion as provided for in this Settlement Agreement.

(Settlement Agreement § II, ¶ 28.)

---

**CIVIL MINUTES—GENERAL**          Initials of Deputy Clerk MG

release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

. . .

Any Class Member who does not Opt-Out as set forth in this Settlement Agreement, shall be deemed conclusively to have become an SCM and to be bound by the Settlement Agreement and all subsequent proceedings, orders and judgments herein, regardless of whether s/he files a claim form.

(Settlement Agreement § VI, ¶¶ 21-23, 45.)

## C. Financial Terms

Below is an overview of the financial terms of the Settlement Agreement:

- Gross settlement amount ("Class Fund"): $950,000.00
- Expert, consulting, mediation costs: $36,304.49
- Settlement administration costs: $37,500.00[5]
- Service award to class representatives: $55,500.00[6]
- Net settlement amount: $818,195.51
- Attorneys' fees and costs: $1,100,000.00[7]

(MFACS at 3.)

The Class Fund is non-reversionary. (Settlement Agreement §IV, ¶ 11.) However, if 11 to 24 Damages Class members opt-out of the class, Defendants will receive a credit against the Class Fund based on the amount each individual opt-out was due under the initial formula. (Settlement Agreement § XI, ¶ 48.) The credit is not available if 10 or fewer Damages Class Members opt-out. (Id.) If 25 or more Damages Class members or any Named Plaintiffs opt-out, Defendants have the option to use the same credit formula or rescind the Settlement Agreement. (Id. § XI, ¶ 49.) No damages class members opted out of the settlement. (Keough Decl. ¶17.)

---

[5] The Settlement administration cost here differs from the cost listed in the Preliminary Approval because the County has already paid a $2,500 deposit to the Claims Administrator.

[6] This amount differs from the amount listed in the Settlement Agreement because Plaintiff Christopher Crawford passed away and will no longer receive a Service Award. The net settlement amount is also adjusted to reflect this change.

[7] Attorneys' fees and litigation costs (excluding mediation and expert costs) are included in a request for attorneys' fees separate from the settlement amount. (Settlement Agreement ¶ 30.)

## 1. Damages Class Members

Each Damages Class member is eligible to receive payment. Individual settlement amounts to class participants are paid from the net settlement amount. The portion of the net settlement amount payable to each Damages Class participant will be calculated through a points-based formula. (Settlement Agreement § IV, ¶¶ 8-9.) The total points for each participant will be added together, and each participant's recovery will be a percentage of the net settlement amount based on that class member's percentage of the total points for participants making timely claims. (Id. § IV, ¶ 9.) In addition to this formula, there is a recovery floor of $40 per participant and a recovery ceiling of $10,000 per participant. (Id. § IV, ¶ 10.) This recovery ceiling "is to ensure that outliers who have outsized claims do not distort the meaningfulness of the recovery to the remaining class members. (Such outliers would be entitled to opt out and pursue their own claims if they so chose.)" (Id.)

The formula to calculate the points each Damages Class member receives is designed to account for the fact that the severity of the challenged conditions varied over time and depended on an inmate's sentencing status, security classification, and work eligibility. (MFACS at 5-6.) Those Damages Class members who were low security risks were more adversely affected by the challenged conditions because they would have received more out-of-cell time than inmates deemed a higher security risk. (Id.) Additionally, all Damages Class members were denied access to certain programs whose availability varied based on sentencing status and work eligibility. (Id.) Finally, the challenged conditions before October 14, 2014 were more restrictive and receive higher point values than conditions after October 14, 2014. (Id.) Based on these considerations and others addressed in the Settlement Motion, Plaintiffs divide these confinement conditions into nine categories and assign point values depending on their relative severity. (Settlement Agreement § IV, ¶ 8.) Points are assigned for each day a Damages Class member was incarcerated in a given category and aggregated. (Id.) Below are the nine per diem categories and corresponding point values:

- Category 1: Sentenced, work-eligible (Pre-October 2014)          100
- Category 2: Sentenced, not work-eligible (Pre-October 2014)      60
- Category 3: Pre-sentenced, lower security risk (Pre-October 2014)   55
- Category 4: Pre-sentenced, higher security risk (Pre-October 2014)  45
- Category 5: Pre-sentenced, unknown security risk (Pre-October 2014) 45
- Category 6: Sentenced, work-eligible, no job (Post-October 2014)   65
- Category 7: Sentenced, work-eligible, inferior job (Post-October 2014) 50
- Category 8: Sentenced, not work-eligible (Post-October 2014)     35
- Category 9: Pre-sentenced (Post-October 2014)                20

(Id. § IV, ¶ 8.)

As of the time of the MFACS, Claim Forms from 165 class members have been approved. (MFACS at 3.) This represents approximately 25% of the total 655 class members. (Id. at 11) Based on this number, the mean recovery is $4,000-$5,000. (Id.) On February 7, 2019 Plaintiffs

filed a notice of additional late claims. ("Late Claims Notice," Dkt. No. 94.) Counsel has been made aware that two claims were filed after the January 7, 2019 cut-off date and that additional class members were incarcerated and did not receive the Class Notice. (Id.) As of February 4, 2019, the Claim Administrator has received ten additional claims. (Id.) Plaintiffs request this Court approve the payment of these ten late claims and any claims postmarked as of February 11, 2019. (Id.) Additionally, class representative Frederick Crockan has attempted to file his claim on multiple occasions, but his claim forms have not been received by the Class Administrator. (Id.) Plaintiffs request the Court deem Crockan to have filed a timely claim. (Id.) Further, Mr. Joe Raymond Fierro, a verified class member, never received a claim form. ("Additional Late Claim Notice," Dkt. No. 95.) Plaintiffs request the court deem Mr. Fierro to have timely filed a claim. (Id.) At the February 11, 2019 hearing Defendants represented they do not oppose this request. Finally, on February 22, 2019, Counsel filed an ex parte application regarding the late filing of Andrew Afoa, who, due to no fault of his own, never received a claim form prior to the cut-off date. (Dkt. No. 98.) Counsel notes Defendant's counsel has no objection to the ex parte application. (Id.) The Court APPROVES these requests.

### 2. Class Representatives

The Settlement Agreement provides a total of $55,500 of the gross settlement amount to the Named Plaintiffs. (Settlement Agreement §IV, ¶ 3.) There are 14 Named Plaintiffs, and each would receive between $2,000 to $5,500 depending on counsel's assessment of their contributions to the litigation. (Id.) The Settlement Agreement proposes exact amounts for each of the Named Plaintiffs in paragraph 3.

### 3. Settlement Administration Costs

The settlement administrator, JND Legal Administration ("JND" or "Administrator"), will be paid from the gross settlement amount. (Id. § IV, ¶ 2.) Class counsel requested bids and selected the most reasonable bid based on price, scope of services, and capabilities of the administrator. (Id. § IX, ¶ 31.) In its bid JND estimated the administration to have a maximum of $40,000. (Id. § IV, ¶ 2.) The cost of administration totaled the $40,000 indicated in the Settlement Agreement. (MFACS at 3; Keough Decl. ¶ 22.) At the February 11, 2019, Defendants counsel informed the Court that  the County has already paid $2,500 of the total Claims Administration cost as a deposit, making the outstanding total $37,500.

### 4. Attorneys' Fees and Costs

Class counsel seeks an award of attorneys' fees separate from the gross settlement amount. (Settlement Agreement § IV, ¶ 12.) Class counsel seeks $1,100,000 in attorneys' fees and costs in a separate motion under 42 U.S.C. § 1988 and Cal. Civ. Code § 52.1(h), which provide attorneys' fees for prevailing plaintiffs. (See MAF at 2.) This amount was independently negotiated with the assistance of a professional mediator and, in order to effectuate the settlement, substantially discounted below the amounts Plaintiffs would have sought in an attorneys' fees motion. (Id. at 12; Settlement Agreement § IV ¶ 13.)

## D. Injunctive Relief

The Settlement Agreement also provides for injunctive relief over a three-year period. (MFACS at 16, "Injunctive Relief Agreement," Dkt. No 90-2 at 15.)  The terms of the injunctive relief are detailed in Exhibit 2 and include the development of policies not yet drafted.  (Id. at 16.)  Defendants estimate the resources associated with these Injunctive Terms will be approximately $500,000 per year.  (Id.)

There are nine parts to the proposed Injunctive Terms: (1) create the PREA-GBTI Committee ("the Committee")[8]; (2) establish policies for Housing and Classification Issues; (3) establish inmate worker options for GBTI inmates; (4) require access to programming; (5) require equal tier time for GBTI inmates; (6) require training on GBTI, PREA, and sexual harassment issues for staff, contractors, volunteers, and other inmates; (7) require specific policies for transgender inmates; (8) establish a zero-tolerance policy for harassment and ensuring PREA compliance; and (9) establish procedures to enforce the Settlement Agreement. (See generally "Injunctive Terms," Dkt. No 78-3.)

Importantly, these terms include provisions to ensure that GBTI inmates have comparable access as their peers in general population to programming, education, religious services, tier time, and work.  Additionally, the terms provide for housing that considers an inmate's sexual orientation and gender identity when making assignments, and considers a GBTI inmate's preferences.  Finally, the terms provide specific policies needed to address the needs of transgender inmates, including housing assignment, choice as to the gender of deputies performing searches, and access to hormonal medication to treat gender dysphoria.  (See generally Injunctive Terms; see also MFACS at 14.)

The complete text of the Injunctive Terms is available at Dkt. No. 78-3.

## E. Notice

The Settlement Agreement proposed the following procedure to notify the settlement class members of the Settlement Agreement.  The Administrator will be responsible for mailing class notice and the claim form to class members at their last known address.  (Settlement Agreement § IX, ¶ 32.)  The Administrator will use customary means to search for the last known address and do "whatever else is reasonably appropriate in order to reasonably notify Class Members . . . ." (Id.)  Additionally, Defendants will post a summary notice in the ALT for the duration of the class notice period with a statement that the full notice will be provided on request.  (Id.)

---

[8] "PREA" refers to the Prison Rape Elimination Act, and "GBTI" refers to individuals who are gay, bisexual, transgender, or intersex.

The class notice describes the particulars of this case, provides the class definition, provides information for claimants to contact the Administrator, notifies the Damages Class members of the case website, and contains a series of questions and answers to help explain the Settlement Agreement. (Id. ¶ 34; see also "Class Notice," Dkt. No. 81-2.) The Administrator will mail the class notice as soon as practicable after preliminary approval. (Settlement Agreement § IX, ¶ 35.) The Administrator will include in the physical mailing a claim form. (Id. § X, ¶ 37.) In addition to physical mail, the Administrator will also gather, to the extent reasonably possible and cost effective, email addresses of class members. (Id. § IX, ¶ 36.) A claim form will be timely submitted if it is received before the cutoff date, which Plaintiffs propose should be January 7, 2019. (Proposed Order at 3.) If a class member submits a deficient claim form the Administrator will provide mail notice of the deficiency and give the class member 30 days to provide a proper form. (Settlement Agreement § X, ¶ 39.) If the original form is received before the cutoff date, the corrected claim will still be considered timely. (Id.)

A class member who wishes to opt-out of the Damages Class must submit a request to be excluded to the Administrator before the cutoff date. (Id. § XI, ¶ 43.) Class members who do not timely opt-out of the Damages Class are deemed to have participated in the settlement and will be bound by the Settlement Agreement and all subsequent proceedings, even if s/he did not file a claim form. (Id. ¶ 45.)

## F.  Performance of the Settlement Agreement

JND Legal Administration is serving as the settlement administrator. (Settlement Agreement IX, ¶ 31.) The Administrator received 165 approved Claim Forms from individuals identified as Settlement Class Members. (Keough Decl. ¶ 21.) Four Claim Forms have been denied as duplicative. (Id.) 382 Claim Forms were submitted by individuals who do not appear on the Class List. (Id.) Two Claim Forms were missing signatures or other required information and were deemed deficient. (Id.) An additional two Claim Forms were received as of January 14, 2019 with postmarks dated after the January 7, 2019 deadline. (Id.) The claims administrator has received a total of 555 claims to date. (Id.) On February 7, 2019, Plaintiffs filed a Late Claim Notice informing the Court that 10 late claims were filed. (Late Claims Notice.) The Court granted Plaintiffs' request to approve the payment of these late claims. See supra Part II.C.1.

## III.  Legal Standard

## A.  Class Action Settlement

Class action settlements must be approved by the Court. See Fed. R. Civ. P. 23(e). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge." Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). A strong judicial policy favors settlement of class actions. See id.

Nevertheless, the Court must examine the settlement as a whole for overall fairness. See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). Neither district courts nor

appellate courts have the power to delete, modify, or substitute provisions in the negotiated settlement agreement.  See id.  "The settlement must stand or fall in its entirety."  Id.

In order to approve the class action settlement herein, the Court must conduct a three-step inquiry.  See Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012).  First, it assesses whether the parties have met notice requirements under the Class Action Fairness Act.  Id.  Next, it determines whether the notice requirements of Federal Rule of Civil Procedure 23(c)(2)(B) have been satisfied.  Id.  Finally, the Court must find that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(3).  Id.

## B. Attorneys' Fees

Class Counsel also requests approval of its request for attorneys' fees.  In the Ninth Circuit, the court has discretion to use either a percentage of the fund or a lodestar approach in compensating class counsel.  See, e.g., Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989); In re Washington Pub. Power Supply Sys. Sec. Lit., 19 F.3d 1291, 1295 (9th Cir. 1994).  When a statutory fee is available, such a statutory fee award is appropriate independent of the class damages fund.  See Staton v. Boeing Co., 327 F.3d 938, 972 (9th Cir. 2003) ("in a class action involving both a statutory fee-shifting provision and an actual or putative common fund, the parties may negotiate and settle the amount of statutory fees along with the merits of the case, ...[and] the amount of such attorneys' fees can be approved if they meet the reasonableness standard when measured against statutory fee principles").  Here, a statutory fee is available under both 42 U.S.C. § 1988 and Cal. Civ. Code § 52.1(h).  "The 'lodestar method' is appropriate in class actions brought under fee-shifting statutes (such as federal civil rights, securities, antitrust, copyright, and patent acts), where the relief sought—and obtained—is often primarily injunctive in nature and thus not easily monetized. . ." In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer.  Staton 325 F.3d at 965.  Statutory attorneys' fees are not correlated to the size of recovery but instead look to the attorneys' reasonable hours and rates, as well as the public benefit conferred by the litigation.  See City of Riverside v. Rivera, 477 U.S. 561, 575 (1986).

## IV.    Rule 23 Requirements

## A. Rule 23(a) and (b)

In its Preliminary Approval Order, the Court certified the Settlement Classes in this matter under Rules 23(a) and 23(b)(2) and (3).  (Preliminary Approval Order at 3–8.)  Accordingly, the Court "need not find anew that the settlement class[es] meet[] the certification requirements of Rule 23(a) and (b)."  Adoma, 913 F. Supp. 2d at 974; see also Harris v. Vector Marketing, No. C-08-5198, 2012 WL 381202 at *3 (N.D. Cal. Feb. 6, 2012) ("As a preliminary matter, the Court notes that it previously certified . . . a Rule 23(b)(3) class . . . [and thus] need

not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate, and reasonable."); In re Apollo Group Inc. Securities Litigation, Nos. CV 04–2147–PHX–JAT, CV 04–2204–PHX–JAT, CV 04–2334–PHX–JAT, 2012 WL 1378677 at *4 (D. Ariz. Apr. 20, 2012).  Here, the Settlement Classes have not changed since they were conditionally certified.  All the criteria for class certification remain satisfied, and the Court hereby confirms its order certifying the Settlement Classes.

## B.  Rule 23(c)(2) Notice Requirements

Rule 23(c)(2)(B) requires the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  Similarly, Rule 23(e)(1) requires a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the agreement.  Fed. R. Civ. P. 23(e)(1).  In its Preliminary Approval Order, the Court approved the notice sent to Settlement Class members.  The claims administrator timely mailed the Notice Packet, provided e-mail notice, established a toll-free number to provide information on the settlement, created a settlement website, and advertised the settlement on the internet through Facebook.  (Keough Declaration ¶¶ 7–15.) The Court therefore finds that notice to the Settlement Class was adequate.

## C.  Rule 23(e)

Under Rule 23(e), "the claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "The primary concern of [Rule 23(e)] is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties."  Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982).  The Court's inquiry is procedural in nature.  Id.  Pursuant to Rule 23(e)(2), "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  The Court held a final approval hearing on February 11, 2019.  In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court may consider some or all of the following factors:

(1) the strength of the plaintiff's case;

(2) the risk, expense, complexity, and likely duration of further litigation;

(3) the risk of maintaining class action status throughout the trial;

(4) the amount offered in settlement;

(5) the extent of discovery completed, and the stage of the proceedings;

(6) the experience and views of counsel;

(7) the presence of a governmental participant; and

Case 2:85-cv-04544-DMG-AGR Document 282-10 Filed 08/29/22 Page 189 of 199 Page
Case 3:15-cv-02571-JCS-SP Document 103 Filed 02/28/19 Page 12 of 22 Page ID #:1996
ID #:47913

(8) any opposition by class members.

Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998). This list of factors is not exclusive and a court may balance and weigh different factors depending on the circumstances of each case. See Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).

### 1. Strength of Plaintiffs' Case

The initial fairness factor addresses Plaintiffs' likelihood of success on the merits. See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 964–65 (9th Cir. 2009). In determining the probability of Plaintiffs' success on the merits, there is no "particular formula by which that outcome must be tested." Id. at 965.

Plaintiffs considered their liability case to be strong, especially since California expressly applies strict scrutiny to claims of sexual orientation discrimination. (MFACS at 9.) However, Defendants similarly believe they have a strong defense in asserting that Plaintiffs made voluntary and informed decisions to be housed in the ALT. (Id.) Additionally, Defendants contest that a proper comparison for GBT inmates are general population inmates, and instead assert that protective custody inmates are the proper comparison group. (Id.)

Given the challenges Plaintiffs would face in continued litigation over such issues, the Court finds this factor weighs in favor of approval.

### 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

Plaintiffs' counsel acknowledges the risk, expense, and likely duration of litigation. (MFACS at 10-11.) Plaintiffs anticipate that even with what they perceive to be strong claims, litigation would take several years. (Id.) This would also greatly increase the costs of litigation. At this stage, Plaintiffs' counsel already seek $1,100,000 in attorneys' fees and costs, and at a substantially discounted rate. (Id. at 7.) Stretched over years of potential litigation, this sum would be substantially larger.

The risk, expense, complexity, and likely duration of further litigation weigh in favor of final approval. Without the Settlement Agreement, the parties would be required to litigate class certification, as well as the ultimate merits of the case—a process which the Court acknowledges is long, complex, and expensive. Settlement of this matter will conserve the resources of this Court and the parties, thus weighing heavily in favor of final approval.

### 3. Risk of Maintaining Class Action Status Throughout the Trial

Because the Court is not aware of any risks to maintaining class-action status throughout trial, this factor is neutral. Barbosa v. Cargill Meat Sols. Corp., 297 F.R.D. 431, 445 (E.D. Cal. 2013); see also In re Veritas Software Corp. Sec. Litig., No. 03–0283, 2005 WL 3096079, at *5 (N.D. Cal. Nov. 15, 2005) (vacated in part on other grounds, 496 F.3d 962 (9th Cir. 2007)) (favoring neither approval nor disapproval of settlement where the court was "unaware of any

risk involved in maintaining class action status"); Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 489 (E.D. Cal. 2010) (finding that there were no facts that would defeat class treatment, the factor was considered "neutral" for purposes of final approval of class settlement).

### 4. Amount Offered in Settlement

In determining whether the amount offered in settlement is fair, a court compares the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000), as amended (June 19, 2000).

In valuing this litigation, Plaintiffs' Counsel estimated each class members would recover a few thousand dollars. (MFACS at 9.) Under this Settlement, the average recovery for claiming class members is $4,000-5,000. (Id.) Additionally, Plaintiffs' Counsel considers the monetary recovery highly favorable when compare to other class actions for damages in the jail context involving over-detentions and strip searches. (Id. at 10.)

Plaintiffs also believe that the Injunctive Terms contribute significant additional value. (Id.) Plaintiffs' counsel, who are experienced in class action litigation regarding civil rights issues, believe the Injunctive Terms are "groundbreaking" and a "model in many respects." (Id. at 10-11.) Plaintiffs' counsel determined that the benefit to the class of this injunctive relief was of such value that they agreed to a significantly reduced fee in return. (Id.)

The Court finds this factor weighs in favor of final approval.

### 5. Extent of Discovery Completed and Stage of the Proceedings

This factor requires the Court evaluate whether "the parties have sufficient information to make an informed decision about settlement." Linney, 151 F.3d at 1239.

Plaintiffs assert they negotiated with Defendants at arms' length and without collusion, which is evidenced by the extensive discovery and mediation process. (MFACS at 14.) Plaintiffs conducted extensive document discovery. (Id. at 12.) Although Plaintiffs did not conduct depositions, there were several meetings with Defendants' counsel to address issues regarding jail operations. (Id.) SBCSD provided both formal and informal discovery concerning the operation and conditions of general population inmates as well as ALT inmates. (Id.) Additionally, Plaintiffs' counsel inspected with an expert consultant WVDC premises where GBT and non-GBT inmates are housed, as well as the Glen Helen Rehabilitation Center. (Id.) The parties further held several in-person settlement conferences through private mediation before the Hon. Carla Woehrle (Ret.). (Id. at 2.)

///

---

**CIVIL MINUTES—GENERAL**    Initials of Deputy Clerk MG

The Court finds the parties have engaged in substantial investigation of the facts and the applicable law.  This factor weighs in favor of granting final approval of the Settlement Agreement.

### 6.   Experience and Views of Counsel

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."  Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal citation and quotation marks omitted).  Plaintiffs' counsel has extensive experience serving as counsel in civil rights class actions.  (MFACS at 13.)  Litt is a well-known civil rights lawyer with decades of experience.  (MAF at 10).   McClane has worked on civil rights and criminal defense cases for the last fifteen years.  (Id.)  Battles has been practicing civil rights cases for ten years.  (Id.)  Goodman, Goad, Hamme, Hill, and Fruitwala of ACLU SoCal have 15, 13, 6, 4 and 4 years of experience respectively. (Id.) Counsel further submits that the proposal is fair.  (MFACS at 11.)  This weighs in favor of final approval.

### 7.   Presence of a Governmental Participant

"The participation of a government agency serves to protect the interests of the class members, particularly absentees, and approval by the agency is an important factor for the court's consideration."  Marshall v. Holiday Magic, Inc., 550 F.2d 1173, 1178 (9th Cir. 1977).  Here, the County and SBCSD are government agencies, and as such, their participation and consent to the terms of injunctive relief weigh in favor of approving the settlement.

### 8.   Opposition of Class Members

The existence of overwhelming support for a settlement agreement by the class lends weight to a finding that the settlement agreement is fair, adequate, and reasonable.  DIRECTV, Inc., 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

Here, the record supports that class members have a positive reaction to the proposed settlement.  JND has approved and received 165 Claim Forms.  (Keough Decl. ¶ 21.)  As of the date of the declaration, the settlement administrator had not received any opt-out requests nor any objections to the settlement. (Id. ¶¶ 17-19.)  Assuming this trend continues, this indicates that the classes approve of the settlement.  Accordingly, this factor weighs in favor of final approval.

///
///
///
///

Case 2:85-cv-04544-DMG-AGR Document 1282-10 Filed 08/29/22 Page 192 of 199 Page
ID #:47916
Case 3:15-cv-02571-JGB-SP Document 103 Filed 02/28/19 Page 15 of 22 Page ID #:1550

## D. Settlement Administration Costs

Plaintiffs seek $40,000 in settlement administration costs, the same amount that this Court preliminarily approved as part of the Settlement Agreement. (MFA at 4; Preliminary Approval Order at 6.) The Court approves $40,000 in administration costs.

## E. Incentive Awards

The trial court has discretion to award incentives to the class representatives. See In re Mego, 213 F.3d at 463 (9th Cir. 2000); Pelletz, 592 F. Supp. 2d at 1329. The criteria courts have used in considering the propriety and amount of an incentive award include: (1) the risk to the class representative in commencing a class action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort invested by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative. Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995).

The settlement provides a slight benefit to the 15 Named Plaintiffs (ranging from $2000 to $5,500 in addition to their class member formula award, depending on the role and contribution of the class representative). (MFACS at 17.) Although there is a larger than normal number of class representatives, it is because Class Counsel determined there were several categories of class representatives necessary to represent class members in custody with standing to seek injunctive relief and class members not in custody who were not subject to PLRA restrictions. (Id.) Class Counsel also determined that they needed a larger than usual number of class representatives due to the variety of deprivations at which the Complaint was aimed (e.g., drug treatment, mental health treatment, education, work opportunities), for each of which it was important to have a class representative who personally experienced the deprivation. (Id.)

Here, the class representatives were (either at the time of the filing of the complaint or previously) in SBCSD custody. (Id. at 19.) Those who were in custody exposed themselves to risk of retaliation, and those not in custody were still at risk of re- arrest and retaliation. (Id.) All Named Plaintiffs put their names in the public arena. (Id.) Plaintiffs' counsel spent dozens of hours interviewing class representatives while they were in custody, increasing their potential risk and demonstrating their personal participation in the litigation. (Id.)

Class Counsel asserts the requested amounts are well within the range of court approved incentive payments in recognition of work done on behalf of the class and in consideration of the risk undertaken in bringing the action. (Id.) "An incentive award of $5,000 per class representative is in line with other awards approved in this circuit." Weeks v. Kellogg Co., No. CV 09-08102 MMM RZX, 2013 WL 6531177, at *37 (C.D. Cal. Nov. 23, 2013). See also In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 943 (9th Cir. 2015) (affirming $5,000 incentive award even though the average class member received only $12); In re Mego, 213 F.3d at 463 (approving a $5,000 incentive award for each class representative).

Case 2:85-cv-04544-DMG-AGR Document 1282-10 Filed 08/29/22 Page 193 of 199 Page
Case 3:14-cv-02541-JCS-SK Document 103 Filed 02/28/19 Page 16 of 22 Page ID #:1560
ID #:47917

Given these Named Plaintiffs' involvement in the case and their assumption of significant risk, the Court AWARDS the following incentive awards:

| NAME | INCENTIVE AWARD[9] |
|------|-------------------|
| Bryan Bagwell | $5,000 |
| Frederick Crockan | $5,000 |
| Pedro Guzman | $3,000 |
| Michael Aka Madison Hatfield | $5,000 |
| William Kennedy | $3,000 |
| Sean Lint | $2,000 |
| Anthony Oliver | $5,500 |
| Nick Ou | $3,000 |
| Kevin Aka Veronica Pratt | $5,500 |
| Steven Aka Lynn Price | $3,000 |
| Jonathan Robertson | $3,000 |
| Illich Vargas | $5,500 |
| Tim Walker | $5,000 |
| Taheash White | $2,000 |
| **TOTAL** | **$55,500.00** |

## V.     ATTORNEYS' FEES AND COSTS

Class counsel seeks $1,100,000 in attorneys' fees and costs in a separate motion under 42 U.S.C. § 1988 and Cal. Civ. Code § 52.1(h), which provide reasonable attorneys' fees for prevailing plaintiffs. (MFACS at 7.) This amount was independently negotiated with the assistance of a professional mediator and, in order to effectuate the settlement, substantially discounted below the amounts Plaintiffs would have sought in an attorneys' fees motion. (Id.)

### A.  The Lodestar Approach is Appropriate

The lodestar approach is appropriate because this is a class action brought under fee-shifting statutes where the primary relief sought is injunctive relief. See In re Bluetooth Headset Prod. Liab. Litig., at 941. The Ninth Circuit noted it has "repeatedly made it clear that the level of success achieved by a civil rights plaintiff should be measured by more than the amount of damages awarded." Morales v. City of San Rafael, 96 F.3d 359, 365 (9th Cir. 1996), opinion amended on denial of reh'g, 108 F.3d 981 (9th Cir. 1997). In Morales, the damages verdict was itself "significant. . . [and] established a deterrent to the City, its law enforcement officials and others who establish and implement official policies."

---

[9] Christopher Crawford passed away and will no longer receive an incentive award. See supra Part II.C.

Here, Plaintiffs request $1,100,000 in attorneys' fees, which exceeds the class damages fund. In a case without an available statutory fee, this disparity would be inappropriate. However, in a case like this, it is common for statutory fees to exceed recovered damages, particularly where Plaintiffs obtained significant injunctive relief. Plaintiffs secured injunctive relief on a groundbreaking issue. The parties agree these statutory fees are appropriate. Like in Morales, the relief obtained through this settlement creates a deterrent for state agents has an effect on official policies. The value of this relief is difficult to measure but should not be underestimated given the critical implications for the injunctive class members and the potential for use as a model for other correctional facilities.

Given the nature of this case and the relief granted, this Court finds the lodestar method appropriate in this case.

## B. The Requested Fees are Reasonable

Class counsel seeks $1,100,000 in attorneys' fees. (MFACS at 7.) This number was negotiated by the parties with the assistance of a professional mediator and represents a significantly discounted lodestar. (Id.)

District courts using the lodestar method to determine reasonable fees under § 1988 engage in a two-step process. First, courts "apply ... the 'lodestar' method to determine what constitutes a reasonable attorney's fee." Costa v. Comm'r of Soc. Sec. Admin., 690 F.3d 1132, 1135 (9th Cir. 2012); Morales 96 F.3d at 363; Ballen v. City of Redmond, 466 F.3d 736, 746 (9th Cir. 2006). Second, "[t]he district court may then adjust [the lodestar] upward or downward based on a variety of factors." Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008). Statutory attorneys' fees are not correlated to the size of recovery but instead look to the attorney's reasonable hours and rates, as well as the public benefit conferred by the litigation. See City of Riverside v. Rivera, 477 U.S. 561, 575 (1986).

### 1. Computation of the Lodestar

Under the lodestar method, the district court "multiplies the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." Ballen, 466 F.3d at 746 (internal quotation marks omitted); Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The product of this computation—the "lodestar figure"—is a "presumptively reasonable" fee under 42 U.S.C. § 1988. See Ballen, 466 F.3d at 746.

#### a. Reasonable Number of Hours

To calculate attorneys' fees using the lodestar method, a court must determine the reasonable number of hours for which the prevailing party should be compensated. See, e.g., Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1119 (9th Cir. 2000). Ultimately, a "reasonable" number of hours equals "[t]he number of hours ... [which] could reasonably have been billed to a private client." Moreno, 534 F.3d at 1111. The prevailing party has the burden of submitting

billing records to establish that the number of hours it has requested is reasonable. See In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1305 (9th Cir. 1994). Thus, to determine whether attorneys for the prevailing party could have reasonably billed the hours they claim to their private clients, a district court should begin with the billing records the prevailing party has submitted. Gonzalez v. City of Maywood, 729 F.3d 1196, 1202 (9th Cir. 2013)

Here, Class Counsel provides billing records that were contemporaneously maintained which detail the time spent working on this case. ("Ex. C," Dkt. No 87-3; "Ex. E," Dkt. No. 88-1.) In their MFACS, Plaintiffs provide tables that include each timekeeper who worked on the case and the number of hours they worked. (MFACS at 13.) Billed hours were spent on activities such as extensive document review and analysis, interviewing class representatives and class members, and settlement negotiations. (Id. at 12.) Plaintiffs note that negotiating the terms of injunctive relief was particularly time consuming and took several meetings with both the mediator and counsel. (Id.)

The Court has no reason to doubt the number of hours provided by Class Counsel. This is especially true given the substantial discount from Class Counsel's lodestar total, as negotiated in the settlement. Further, the hours provided by Class Counsel do not account for work done for the MFACS and MAF, ongoing work with the Class Administrator and class members, and an appearance at the final approval hearing. (Id. at 14.) Given these reasons and the time-intensive nature of a settlement involving injunctive relief, this Court finds that Class Counsel billed a reasonable number of hours.

### b. Reasonable Hourly Rate

Class Counsel asserts their requested hourly rates are reasonable for attorneys of their skill, experience, and reputation. California law entitles plaintiff attorneys to their requested rates if those rates are "within the range of reasonable rates charged by and judicially awarded comparable attorneys for comparable work." Children's Hosp. & Med. Ctr. V. Bonta, 97 Cal. App. 4th, 740, 783 (Cal. Ct. App. 2002). Federal law similarly instructs that "requested rates [should be] in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." Jordan v. Multnomah Cty., 815 F.2d 1258, 1263 (9th Cir. 1987). In making this showing, "affidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases are satisfactory evidence of the prevailing market rate." Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 980 (9th Cir. 2008)(internal citations and marks omitted).

In calculating the lodestar, Plaintiffs may adjust for delay in payment. See, e.g., Missouri v. Jenkins, 491 U.S. 274, 282 (1989) ("an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of the statute [42 U.S.C. §1988]"); Barjon v. Dalton, 132 F.3d 496, 502–03 (9th Cir. 1997) ("the district court may choose to apply either the attorney's current rates to all hours billed or the attorney's historic rates plus interest"). Generally, for a "fee award to be reasonable, it must be based on current, rather than historic, hourly rates." Charlebois v. Angels

<u>Baseball LP</u>, 993 F. Supp. 2d 1109, 1119 (C.D. Cal.2012) (citing <u>Jenkins</u>, 491 U.S. at 282) (lodestar award in settled class action).

To demonstrate the reasonableness of Class Counsel's rates, Plaintiffs' attorneys Barrett S. Litt ("Litt") of Kaye, McClane, Bednarski and Litt ("KMBL") and Amanda Goad of the ACLU Foundation of Southern California ("ACLU SoCal") have submitted declarations attesting to their experience litigating federal civil rights class actions and detailing their work on this case. ("Litt Declaration," Dkt. No. 87; "Goad Declaration," Dkt. No. 88.) Litt is licensed to practice law in the State of California, the U.S. District Courts in the Central, Eastern, and Northern Districts of California, in the Ninth, Fourth, Fifth, Eleventh, and D.C. Courts of Appeal, and in the United States Supreme Court. ("Ex. B," Dkt. No. 87-2.) Litt has been practicing for 45 years and has litigated an extensive list of complex civil rights cases, many of which have involved fee-shifting provisions. (Litt Decl. at 30) Litt asserts he bills an hourly rate of $1,150.00. (<u>Id.</u>)

In addition, Litt's declaration provides information as to the experience and billing rates of Plaintiffs' counsel David S. McLane ("McLane"), Lindsay Battles ("Battles"), and Ron Kaye ("Kaye") of KMBL and Melissa Goodman ("Goodman"), Brendan M. Hamme ("Hamme"), Goad, Tasha Hill ("Hill") and Aditi Fruitwala ("Fruitwala") of ACLU SoCal. (Litt Decl. at 30-45.) Litt further provides information regarding the rates of senior paralegal Julia White and junior paralegals Esteban Gil and Rene Arriaza of KMBL, as well as senior paralegal Duaba Gonzalez of ACLU SoCal. (<u>Id.</u>) Litt provides tables supporting the proposition that each member of Plaintiffs' counsel's rates fall within the range of rates for attorneys and paralegals of comparable experience by comparing Plaintiffs' counsels' rates with others working at prominent civil rights firms and organizations in the Central District of California within a close range of experience. (<u>Id.</u>)

The Court finds the range of rates provided by these tables adequately establishes billing rates for civil rights attorneys in the forum. The relevant portions of this table state that: attorneys practicing civil rights litigation with 26-49 years of experience bill adjusted lodestar rates of $887-$1230 per hour; attorneys practicing civil rights litigation with 23-33 years of experienced bill adjusted lodestar rates of $738-$1220 per hour; attorneys practicing civil rights litigation with 9-15 years of experience bill adjusted lodestar rates of $603-$855 per hour; and attorneys practicing civil rights litigation with 1-6 years of experience billed adjusted lodestar rates of $336-$671 per hour (<u>Id.</u> at 31-43). Litt further notes that fee-paying litigants bringing similars action would pay much higher commercial rates for attorneys of similar or less experience practicing civil rights litigation. (<u>Id.</u>)

Plaintiffs request the hourly rates for attorneys: $875 for McLane, who has 32 years of experience; $600 for Battle, who has 10 years of experience; $875 for Kaye, who has 30 years of experience; $715 for Goodman, who has 15 years of experience; $640 for Goad, who has 13 years of experience; $480 for Hamme, who has six years of experience; $390 for Hill, who has four years of experience; and $390 for Fruitwala, who has four years of experience. (Litt Decl. at 29.) Plaintiffs request the following rates for non-attorney timekeepers: $335 for Julia White, a senior

paralegal; $195 for Diana Gonzalez, a senior paralegal; $175 for Rene Arriaza, a junior paralegal; $225 for Sujata Awasthi, a law clerk; $225 for Evan Ettinghoff, a law clerk. (Id.)

The provided tables reflect that the hourly rates of Plaintiffs' attorneys fall within the reasonable range for attorneys of their experience in this district. Further, the fact that counsel seeks a significantly discounted lodestar weighs in favor of finding that the provided rates are reasonable. Plaintiffs' calculated lodestar total is $2,647,267.35. (Id.) They seek only the discounted amount of $1,100,000. (MFACS at 7.) Accordingly, this Court finds the rates, as reflected in Plaintiffs' motion for attorney's fees and costs are reasonable.

### 2. Adjustments to the Lodestar

After computing the lodestar figure, district courts may adjust that figure pursuant to a "variety of factors." See Moreno, 534 F.3d at 1111. "[T]he district court accounts for the following factors in the lodestar computation: '(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, (4) the results obtained, and (5) the contingent nature of the fee agreement.'" Gonzalez v. City of Maywood, 729 F.3d 1196, 1209 (9th Cir. 2013)(citing Kerr v. Screen Guild Extras, Inc., 526 F.2d 67, 70 (9th Cir. 1975)).

The Court has already provided an analysis for many of these factors above, including: (1) the novelty and complexity of the issues; (2) counsel's skill and experience; (4) the results obtained; and (5) the contingent nature of the fee arrangement. In those analyses, the Court found that all these factors weighed in favor of approving the settlement. The Court need not repeat this analysis and finds that these factors weigh in favor of approving Plaintiffs' motion for award of attorney's fees and costs. The Court turns to the remaining factor.

Management of this case involved working with a large number of class representatives, working with two different subclasses, and managing both federal and state law claims. Counsel also compiled and analyzed data over four years. Plaintiffs conducted extensive document discovery. (MAF at 12.) Although Plaintiffs did not conduct depositions, there were several meetings with Defendants' counsel to address issues regarding jail operations. (Id.) Additionally, Plaintiffs' counsel inspected with an expert consultant WVDC premises where GBT and non-GBT inmates are housed, as well as the Glen Helen Rehabilitation Center. (Id.) The parties further held several in-person settlement conferences through private mediation before the Hon. Carla Woehrle (Ret.). (Id. at 2.) The Court finds this factor weighs in favor of approval.

The aforementioned factors weigh in favor of approval. Notably, counsel achieved positive results and already stipulated to a substantially discounted lodestar during settlement. For the reasons stated above, the Court APPROVES Plaintiff's request for $1,100,000 in attorneys' fees.

///

## C. Costs

Federal and state fee shifting statutes allow for reimbursement of litigation expenses that "are normally charged to a fee-paying client, in the course of providing legal services. Reasonable photocopying, paralegal expenses, and travel and telephone costs are thus recoverable pursuant to § 1988." Thornberry v. Delta Air Lines, Inc., 676 F.2d 1240, 1244 (9th Cir. 1982), cert. granted, judgment vacated on other grounds, 461 U.S. 952 (1983).

Here, Plaintiffs request costs for travel, investigators, consultants, filing fees, photocopies, printing, scans, messenger services, telephone calls, postage, computerized legal research, and similar costs normally reimbursed by the client. See, e.g., In re Immune Responses Sec Litig., 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007). Opinions of federal courts are applicable to determining allowable costs under California law. See, e.g., Bussey v. Affleck, 225 Cal. App. 3d, 1162, 1165 (Cal. Ct. App. 1990), abrogated on other grounds by Robert L. Cloud and Associates, Inc. v. Mikesell, 69 Cal. App.4th 1141 (1999).

The Settlement Agreement provides for payments of costs up to $37,000, payable from the Class Fund. (Settlement Agreement ¶ 30.) Counsel now requests $36,304.49 in costs. (MAF at 21.) This Court has reviewed the provided itemized list of costs and finds they are appropriate. The Court therefore APPROVES the requested amount for costs.

## VI.   CONCLUSION

For the reasons stated above, the Court:

1. GRANTS final approval of the Settlement Agreement and Injunctive Terms;

2. APPROVES payment of the ten late claims and any claims postmarked on or before February 11, 2019;

3. APPROVES Plaintiffs' requests to deem Frederick Crockan, Joe Raymond Fierro, and Andrew Afoa to have filed a timely claim;

4. AWARDS Class Counsel attorneys' fees in the amount of $1,100,000.00;

5. AWARDS Class Counsel costs in the amounts of $36,304.49 as provided in the Settlement Agreement;

6. AWARDS the following amounts to the Named Plaintiffs:

///
///
///

**CIVIL MINUTES—GENERAL**  Initials of Deputy Clerk MG

| NAME | INCENTIVE AWARD |
|------|-----------------|
| Bryan Bagwell | $5,000 |
| Frederick Crockan | $5,000 |
| Pedro Guzman | $3,000 |
| Michael Aka Madison Hatfield | $5,000 |
| William Kennedy | $3,000 |
| Sean Lint | $2,000 |
| Anthony Oliver | $5,500 |
| Nick Ou | $3,000 |
| Kevin Aka Veronica Pratt | $5,500 |
| Steven Aka Lynn Price | $3,000 |
| Jonathan Robertson | $3,000 |
| Illich Vargas | $5,500 |
| Tim Walker | $5,000 |
| Taheash White | $2,000 |
| **TOTAL** | **$55,500.00** |

7. ORDERS the payment of $37,500 to the claims administrator; and

8. DISMISSES the Complaint WITH PREJUDICE.


**The Court ORDERS such judgment be entered.**