1  ANDREA SHERIDAN ORDIN (SBN 38235)
   STRUMWASSER & WOOCHER LLP
2  10940 Wilshire Boulevard, Suite 2000
   Los Angeles, California 90024
3  Telephone: (310) 576-1233
   Facsimile: (310) 319-0156
4  E-mail: aordin@strumwooch.com

5  *Independent Monitor*

7  **UNITED STATES DISTRICT COURT**

8  **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JENNY LISETTE FLORES, *et al*.,<br><br>Plaintiffs,<br><br>v.<br><br>MERRICK B. GARLAND,<br>Attorney General of the United States, *et al*.,<br><br>Defendants. | CASE NO. CV 85-4544-DMG (AGRx)<br><br>**NOTICE OF FILING OF CLOSING REPORT BY SPECIAL MASTER/ INDEPENDENT MONITOR AND SPECIAL EXPERT DR. PAUL H. WISE** |

1  On November 14, 2022, Judge Dolly M. Gee approved the request of Special Master/Independent Monitor Andrea Sheridan Ordin ("Monitor") for an approximately three-week extension of her term to December 9, 2022, for the purpose of preparing a Closing Report. [Doc. # 1301.] Pursuant to the Court's order, the Monitor delivered a draft of the Closing Report to the Parties and has revised the Report after receiving their comments and questions.

On December 6, 2022, the Court continued the Monitor's deadline for filing her Closing Report to December 7, 2022. [Doc. # 1305.] In accordance with the Court's Orders, the Monitor and Special Expert Dr. Paul H. Wise submit the attached Closing Report.

DATED:   December 7, 2022       Respectfully submitted,

                                Andrea Sheridan Ordin
                                STRUMWASSER & WOOCHER LLP


                                By   /s/ Andrea Sheridan Ordin
                                         Andrea Sheridan Ordin

                                *Special Master / Independent Monitor*

In the United States District Court
Central District of California – Western Division

JENNY LISETTE FLORES, *et al.*, Plaintiffs,
v.
MERRICK B. GARLAND, *et al.*, Defendants.

Case No. CV 85-4544-DMG (AGRx)ss
Hon. Dolly M. Gee, United States District Judge

**CLOSING REPORT BY SPECIAL MASTER/INDEPENDENT MONITOR AND SPECIAL EXPERT DR. PAUL H. WISE**

Andrea Sheridan Ordin
Special Master/Independent Monitor
Strumwasser & Woocher LLP
1094 Wilshire Boulevard, Suite 2000
Los Angeles, California 90024
(310) 576-1233

## I. INTRODUCTION AND BRIEF SUMMARY OF TERM

On October 5, 2018, this Court appointed Andrea Sheridan Ordin as the Special Master/Independent Monitor ("Monitor") to provide enhanced monitoring of U.S. Customs and Border Protection ("CBP"), Office of Refugee Resettlement ("ORR"), and U.S. Immigration and Customs Enforcement ("ICE") (together, the "agencies") facilities for a term of 12 months, with provisions for extensions, with the presumptive end of the term 36 months after the effective date. [Doc. 494.] The Monitor has now served the 36 months and the Court has extended her term twice, including the most recent extension to permit the filing of this Closing Report.

During the Monitor's term, Paul W. Wise M.D. was appointed to serve as Special Expert. [Doc. 591.] Consistent with the authority in the Order of Appointment [Doc. 494], the Monitor and Dr. Wise monitored the agencies' compliance with the *Flores Settlement Agreement* ("FSA"). During that time, the Monitor and Dr. Wise conducted mediations, monitored CBP facilities in CBP's El Paso and RGV sectors, and participated in the monitoring of the agencies' policies and procedures with the agencies' Juvenile Coordinators appointed by the Court, with particular emphasis on the length of stay of minors, and the safe and sanitary protections afforded the minors.

In addition to regular informal conferences between and among leadership of the agencies and Plaintiffs' lawyers, advocates, and non-governmental organizations, the Monitor, with Dr. Wise, filed five interim reports during the term.

- June 25, 2020 Interim Report on COVID-19 [Doc. 827]
- July 22, 2020 Interim Report on the Use of Temporary Housing for Minors and Families under Title 42 (Hoteling) [Doc. 873]
- August 26, 2020 Interim Report on the Use of Temporary Housing for Minors and Families Under Title 42 (Hoteling) [Doc. 938]

2

- April 2, 2021 Interim Report re: Defendants' Response to January-March Influx 2021 [Doc. 1103]
- June 22, 2021 Interim Report and Recommendations re: ORR Emergency Intake Sites [Doc. 1137]

In 2022, the Monitor and Dr. Wise continued enhanced monitoring and facilitated two significant settlements—the CBP Settlement entered on July 29, 2022 [Doc. 1278] and the EIS Settlement entered on September 23, 2022 [Doc. 1288]. Together the Settlements and attachments exceed 100 pages. For the purpose of this Closing Report, the Monitor includes the following summaries.

## II. SUMMARY OF SETTLEMENTS

### A. CBP Settlement

On July 29, 2022, the Court granted the Parties' Joint Motion for Final Approval of a Settlement Agreement resolving Plaintiffs' motion to enforce compliance with the FSA regarding conditions and standards at CBP facilities in the RGV and El Paso Sectors along the Southwest Border ("CBP Settlement"). [Doc. #1255.] The CBP Settlement is the result of nearly three years of mediation between the Parties and overseen by the Monitor.

Through the Settlement, the Parties seek to clarify their understanding of the requirements for the treatment of class members set forth in Paragraphs 11 and 12a of the FSA, as they apply to conditions of CBP detention in the RGV and El Paso Sectors. Under Section II.6, Defendants will ensure that CBP issues and distributes new guidance to the Juvenile Coordinator, Class Counsel, the Special Master/Independent Monitor ("Monitor"), the Juvenile Care Monitor, and all employees in the RGV and El Paso Sectors within 30 days of the Settlement's Effective Date.

Paragraphs 11 and 12A of the FSA contain the broad mandate that class members be housed in safe and sanitary conditions with particular regard for the vulnerability of minors. The CBP Settlement reflects the Parties' more specific understanding of this mandate in facilities in RGV and

3

El Paso Sectors by providing, for instance, detailed nutrition standards and creating a robust system for enhanced medical support for minors across all CBP facilities in the RGV and El Paso Sectors. It also requires CBP to take additional specific steps to ensure that conditions remain safe and sanitary if a class member remains in CBP custody for more than 72 hours.

In addition to enumerating certain baseline standards for facilities, nutrition, and medical care across *all* facilities within the RGV and El Paso Sectors, the CBP Settlement creates additional standards for "Juvenile Priority Facilities," to which minors must be transferred within 48 hours of arrival at a non-priority facility. "Safe and sanitary conditions" in Juvenile Priority Facilities will include, among other things, age-appropriate food, a comfortable temperature between 69° and 83° Fahrenheit, maintaining a stock of clean, dry, and warm clothing in various sizes, laundry services, and additional blankets upon request. The CBP Settlement also sets forth specific standards for sleep, hygiene and sanitation, including a requirement that minors in Juvenile Priority Facilities be offered a shower upon arrival and every 48 hours thereafter. Additionally, Juvenile Priority Facilities are instructed to make efforts to provide televisions, toys, plastic furniture, space to play, and to provide at least one daily message of reassurance to orient minors of their safety and the general immigration process.

Critical to ensuring compliance with the Settlement is its requirement that Juvenile Priority Facilities utilize professional "Caregivers" on a 24/7 basis. The Settlement states that Caregivers' responsibilities shall include supporting CBP staff with care for infants and young children, looking out for medical or mental health issues among minors, providing supervision, assisting in facilitating family communication, and helping with tasks around a facility such as assistance with laundry, issuance and collection of supplies, distribution of meals, and inventory. The Settlement provides that CBP will make best efforts to hire or provide Caregivers or other individuals sufficient to provide additional supervision and support for class members during

4

exercise and age-appropriate recreational activities such as reading, art, or general play, and to provide at least one Caregiver for each holding pod or cell in which class members are being held in any CPC or soft-sided Juvenile Priority Facilities.

The CBP Settlement addresses the importance of family unity, requiring minors to be housed with their family members whenever possible, and that reasonable efforts to facilitate contact between family members will be made if there is an operational need to house family members separately. Under the Settlement, CBP will notify HHS/ORR when unaccompanied minors who are related are in need of placement, and will also make all reasonable efforts to provide unaccompanied class members with daily access to a phone in order to contact family members.

A signal accomplishment of the CBP Settlement is the establishment of a court-appointed Juvenile Care Monitor, who will be given authority to monitor CBP's compliance and overcrowding in the RGV and El Paso Sectors. On August 3, 2022, Dr. Wise was appointed the Juvenile Care Monitor for a 16-month term. [Doc. 1280.] In addition, the Settlement provides for a Contracting Officer Representative ("COR") to oversee contracts and quality assurance measures.

The CBP Settlement recognizes that CBP may be temporarily prevented from fully complying with the terms of the Settlement—certain Force Majeure events include natural disasters, government shutdowns, public health concerns, lack of appropriated funding from Congress, and other emergencies such as fires or terrorism that would temporarily prevent CBP from fully complying with the terms of the Settlement for reasons beyond its control. While the Settlement does not define Force Majeure events to include migration surges, it recognizes that they too may impact CBP's ability to maintain full compliance with the Agreement. CBP is required to report any non-compliance to the Juvenile Care Monitor, Monitor, and Class Counsel. The Settlement contains provisions for the notification of

5

Class Counsel by the Juvenile Care Monitor if capacity in CBP facilities holding class members in RGV or El Paso Sectors reaches 90 percent or more for a period of more than 72 hours. The Settlement provides procedures for notification by the Juvenile Care Monitor to the CBP Juvenile Coordinator and his greatly increased staff of any observed failure to substantially comply with the FSA or Settlement.

The Settlement contains an Annex that provides significant detail related to enhanced medical monitoring, medication review, medical quality management, and compliance with the Settlement.

### B. EIS Settlement

On September 23, 2022, the Court granted Plaintiffs' Unopposed Motion for Final Approval of a Settlement regarding Emergency Intake Sites ("EIS" and "EIS Settlement, respectively).

As of October 24, 2022, the Department of Health and Human Services ("HHS") has published updated Field Guidance acknowledging ORR's obligations under the EIS Settlement. (Admin. for Child. & Families, Dep't of Health & Hum. Serv., *Field Guidance # 13 – Emergency Intake Sites (EIS) Instructions and Standards* (rev'd Oct. 24, 2022).) During the period of negotiation of the EIS Settlement, ORR successfully upgraded its EIS facilities in El Paso and Pecos to Influx Care Facilities ("ICFs") that will be governed by the reporting provisions in the EIS Settlement as well as the heightened standards for ICFs. (ORR, *ORR Unaccompanied Children Program Policy Guide: Section 7 – Policies for Influx Care Facilities* (current as of Oct. 24, 2022).) A brief summary of the EIS Settlement follows below.

Recognizing the Texas and Florida actions to de-license ORR's grantee childcare providers, the EIS Settlement certifies the Parties' agreement on the following central issues: 1) minors should be placed in state-licensed facilities as expeditiously as possible; 2) children should not be placed in large-scale, unlicensed congregate care settings unless there is no alternative, and EISs should be used only as a last resort to prevent children from

6

spending prolonged periods of time in CBP custody; and 3) particularly vulnerable children (as defined by the EIS Settlement) should receive priority for licensed placement and not be placed in an EIS unless no licensed beds are available and denial of EIS placement would result in prolonged time in CBP custody.

The EIS Settlement requires Emergency Intake Sites to meet certain standards and provide, for example, suitable living accommodations, access to daily outdoor activity, private phone calls at least twice a week for at least ten minutes in length, family reunification services, appropriate mental health interventions, educational services, legal services information, and structured leisure time activities. Additionally, the Settlement requires specific case management services such as an initial assessment by a case manager within 24 hours of a minor's admission to the facility and weekly meetings with case managers.

Within 30 days of the EIS Settlement's approval, ORR must issue written guidance specifying what categories of children should be prioritized for initial licensed placement and what categories of children should be prioritized for transfer from an EIS to a licensed facility, including particularly vulnerable children[1] and children likely to have extended lengths of stay.

The EIS Settlement also imposes certain reporting requirements, including a mandate that ORR provide Plaintiffs and the Monitor, while appointed, with monthly data reports including census, transfers, discharges, and capacity data for each EIS as long as any such facility remains in

---

[1] The EIS Settlement defines particularly vulnerable children as children age 12 or younger, children who are not proficient in English or Spanish, children with a known disability, mental health, or medical issue requiring additional care, pregnant or parenting teenagers, and children who are at documented enhanced risk due to their identification as LGBTQ+. Because ORR may not be aware that a child is particularly vulnerable before placing them at an EIS, ORR must screen children for vulnerabilities within five days of placement. Any child found to have a particular vulnerability while at an EIS must be transferred to a licensed program (or Influx Care Facility if no licensed beds are available) within 14 days.

operation. The EIS Settlement provides an avenue for Plaintiffs to bring forth alleged breaches of contract and will terminate two (2) years from its Effective Date or upon the termination of the FSA, whichever occurs sooner.

### III.     CURRENT STATUS, CENSUS, AND LENGTH OF STAY DATA

Reported below are the most recent data from the October 2022 monthly *Flores* Report for both CBP and ORR. The data reflects the continuing great challenges faced by the agencies during a time of increased encounters on the Southwest Border. The data also reflects and is consistent with the monthly fluctuations in the number of families and unaccompanied minors who, after their encounters at the Border, are in custody of the CBP and ORR.

#### A. CBP Data Summary

The data described herein comes from CBP's official website and the October 2022 monthly *Flores* Report on minors in CBP custody longer than 72 hours.

##### 1. *CBP Southwest Border Encounters*

In October 2022, CBP reported a total of **59,800** family unit ("FMUA")[2] encounters and **11,991** unaccompanied minor ("UC") encounters. *Figure A* shows the number of FMUAs and UCs encountered by USBP in two major sectors in the Southwest Border, RGV and El Paso, in October and the percent change in encounters from August.[3]

---

[2] CBP reports statistics on family units as the total number of individuals in the family, including both adults and minors. Therefore, the number of FMUA minors encountered by CBP in any given month is unknown. USBP Source: https://www.cbp.gov/newsroom/stats/southwest-land-border-encounters-by-component; OFO Source: https://www.cbp.gov/newsroom/stats/southwest-land-border-encounters-by-component

[3] . USBP Source: https://www.cbp.gov/newsroom/stats/southwest-land-border-encounters-by-component

8

| OCTOBER 2022 USBP SOUTHWEST BORDER FMUA/UC ENCOUNTERS BY SECTOR | | | | | | |
|---|---|---|---|---|---|---|
| **Sector** | **August 2022 FMUA Encounters** | **October 2022 FMUA Encounters** | **% Change in FMUA Encounters August to October** | **August 2022 UC Encounters** | **October 2022 UC Encounters** | **% Change in UC Encounters August to October** |
| El Paso | 7,817 | 15,804 | + 102.2 % | 2,026 | 2,577 | + 27.2 % |
| Rio Grande Valley | 5,671 | 5,460 | - 3.72 % | 5,360 | 4,925 | - 8.12 % |
| **TOTAL** | **13,488** | **21,264** | **+ 57.7 %** | **7,386** | **7,502** | **+ 1.57 %** |

*Figure A*

The increases in family encounters in the El Paso Sector have put extreme pressure upon CBP to avoid overcrowding and to provide services to the minors in families under the requirements of the FSA and the Settlement.

### 2. *Minors in CBP Custody > 72 Hours*

*Figure B* describes the length of stay for the 972 tender-age and teenage minors in family units in CBP custody for 72 hours or longer in October 2022. Of these 972 minors in family units, the vast majority were in custody from three to eight days. In contrast, CBP was successful in ensuring that none of the 7,553 unaccompanied minors encountered in the RGV and El Paso Sectors were held more than 72 hours. in October, none were held more than three days. In the prior month, only four unaccompanied minors, all of whom were over 12 years, had been held in CBP custody for more than 72 hours.



*Figure B*

B. ORR Data Summary

1. *Census*

The census tab of the October 2022 monthly *Flores* Report contains a snapshot of all UCs in HHS custody at 8:00 am on November 8, 2022. On this day, 9918 UCs were in HHS care. This represents a 3.77 % increase from **9,575** UCs in HHS care on October 6, 2022. *Figure C* shows the capacity and number of UCs in each facility type on November 8, 2022, along with the percent change in census from the previous month.[4]

| Facility Type | ORR Capacities from ORR Juvenile Coordinator July 1, 2022 Report | Number of UCs on Oct. 6, 2022 | Number of UCs on Nov. 8, 2022 | Percent Change from October to November |
|---|---|---|---|---|
| Influx Care Facilities | 3,742 | 1,783 | 1,842 | + 3.31 % |
| Long Term Foster Care | 539 | 417 | 413 | - .96 % |
| Residential Treatment Centers | 49 | 12 | 9 | - 25.0 % |
| Secure | 24 | 9 | 7 | - 22.2 % |
| Shelters | 10,120 | 6,643 | 6,824 | + 2.73 % |
| Staff Secure | 82 | 19 | 23 | + 21.05 % |
| Therapeutic Group Homes | -- | 19 | 16 | - 15.8 % |
| Therapeutic Staff Secure | -- | 4 | 3 | - 25 % |
| Transitional Foster Care | 1002 | 669 | 778 | + 16.3 % |
| Virtual | -- | -- | 3 | -- |
| **TOTAL** | **13,823** | **9,575** | **9,918** | **+ 3.58 %** |

*Figure C*

---

[4] Statistics on capacity in *Figures C-D* come from the July 1, 2022 ORR Juvenile Coordinator Annual Report. Capacities for Therapeutic Group Homes, Therapeutic Staff Secure, and Virtual facilities were not included in the Juvenile Coordinator Report. The Report notes that Transitional Foster Care capacity is temporarily reduced due to compliance issues.

### *Influx Care Facilities*

As of July, all Emergency Intake Sites have been converted to Influx Care Facilities. The October 6, 2022 snapshot lists the Fort Bliss and Pecos Children's Center facilities as Influx Care Facilities ("ICF"). As of November 8, 2022, **1,842** UCs were detained at Fort Bliss - ICF and Pecos Children's Center ICF, none of whom were tender-age.

### 2. Referrals

In October 2022, **10,260** UCs were referred to HHS care. This represents an 5.1% increase from **9,791** UCs referred to HHS care in September 2022.

### 3. Discharges

The discharges tab contains all UCs discharged from HHS custody in October 2022. That month, **10,155** UCs were discharged from HHS care. This represents a 8.44% increase from **9,365** UCs discharged from HHS care in September 2022.

*Figure D* shows the number of UCs discharged from each facility type during the month of October and the percent change in discharges by facility type from September. Because some UCs in this spreadsheet were discharged from their facility before other UCs discharged later that same month arrived, the total number of discharges is *not* indicative of the number of UCs at a particular facility on any given day. Furthermore, the spreadsheet only lists the facility from which UCs were discharged, so *Figure D* does not reflect the full history of UCs who were transferred from one facility to another and discharged in October.

| Facility Type | Number of UCs Discharged by Facility Type in September 2022 | Number of UCs Discharged by Facility Type in October 2022 | Percent Change from September to October |
|---|---|---|---|
| Influx Care Facilities | 1,962 | 1,786 | - 8.97 % |
| Long Term Foster Care | 61 | 46 | - 24.6 % |
| Residential Treatment Centers | 1 | -- | -- |
| Secure | -- | 2 | -- |
| Shelters | 6,378 | 7,318 | + 14.74 % |
| Staff Secure | 5 | 7 | + 40.0 % |
| Therapeutic Group Homes | 2 | 3 | + 50 % |
| Therapeutic Staff Secure | -- | 1 | -- |
| Transitional Foster Care | 955 | 990 | + 3.66 % |
| Virtual | 1 | 2 | + 100 % |
| **TOTAL** | **9,365** | **10,155** | **+ 8.44 %** |

*Figure D*

### *Emergency Intake Sites (Now Influx Care Facilities)*

As of July 2022, all Emergency Intake Sites have been converted to Influx Care Facilities. A total of 1,786 UCs were discharged from Influx Care Facilities in October 2022, none of whom were tender-age. This represents a 8.97 % decrease from 1,962 UCs discharged from EISs the previous month. *Figure E* shows the number of UCs discharged from each in October.

| Influx Care Facilities | Number of UCs on Oct. 6, 2022 | Number of UCs on Nov. 8, 2022 |
|---|---|---|
| Fort Bliss ICF | 819 | 1,227 |
| Pecos Children's Center ICF | 1,143 | 559 |
| **TOTAL** | **1,962** | **1,786** |

*Figure E*

13

*Figure F* describes length of stay for all UCs discharged from Fort Bliss ICF in October 2022.



*Figure F*

*Figure G* describes length of stay for all UCs discharged from Pecos Children's Center ICF in October 2022.



*Figure G*

### IV. CHALLENGES FOR CBP AND ORR IN IMPLEMENTATION OF THE SETTLEMENTS AND COMPLIANCE WITH FSA

#### A. CBP

Dr. Wise, after sharing a draft of his Juvenile Care Monitor Report with the Parties, will file his Report in the week of December 12, 2022.

14

Pursuant to the Order of Appointment [Doc. 1280], his Report will identify the challenges facing CBP and provide recommendations. Dr. Wise will describe observations from his monitoring visits to the Centralized Processing Center ("CPC") in the RGV Sector as well as his visit to the CPC in the El Paso Sector and will include an evaluation of the length of stay and conditions of custody for unaccompanied children and children in family units. His report will also detail the capacity of the pods holding family units and unaccompanied children and describe overcrowding conditions. The Report will analyze the effectiveness and availability of Caregivers available to the families and children in the sectors.

The initial Juvenile Care Monitor Report will also focus on the medical care currently being provided by the medical teams stationed in both the RGV Sector and the El Paso Sector. The Report will highlight the necessity for coordination with ORR, critically in the area of documentation and communication of the health condition and vulnerability of unaccompanied children transferred to ORR. Finally, the Report will also describe the quality of recreational activity opportunities available in the RGV and El Paso Sectors.

### B. ORR

In June 2021, the Monitor and Dr. Wise prepared an Interim Report on the existing ORR Emergency Intake Sites. [Doc. 1137.] At that time, the Interim Report, as well as ORR Juvenile Coordinator Reports, documented excessive lengths of stay and inadequate development of custodial, medical, processing, recreational, and educational standards at the EISs. Those Reports made recommendations for significant improvements throughout the system.

As noted above, former EIS facilities Fort Bliss and Pecos have been transformed into ICFs and are monitored currently by the heightened standards for ICFs. During the enhanced monitoring by Dr. Wise and the Monitor from August 2022 through November 2022, they saw significant

15

improvements at Fort Bliss and Pecos in all categories. Fort Bliss, for example, utilizes a case management system designed to ensure safe release of the children coupled with regular communication with children and families and accountability supervision of case managers. Fort Bliss has also developed a medical support system including mental counseling. Trained legal advisors are currently working to improve confidential advice to children and to adequately represent children whose primary languages are neither English or Spanish. Ft. Bliss has added a spacious soft-sided schoolhouse for daily education classes as well a soccer field for recreation.

If, as many expect, the number of migrant children will continue to increase in 2023, particularly if Title 42 is declared unconstitutional, ORR ICF facilities will face challenges in order to continue its marked improvement of services to minors in ICFs.

In addition to the issues facing the EISs and ICFs, *Figure C* illustrates an issue which still remains, related to the FSA's core precept that licensed shelters for minors in custody shall be provided. ORR regularly provides monthly reports on the numbers of minors in the licensed shelters. As seen in *Figure* C, the number of minors housed in licensed shelters is far fewer than the perceived number of available shelter beds, as described in the July 1, 2022 Juvenile Coordinator Report. It is understood that the number of minors housed will be fluid from month to month, depending on a wide variety of factors in a complex system of assignment. In addition, shelters may experience short staffing and difficulties in meeting licensed standards. Given these circumstances, ORR has real challenges to overcome in order to ensure the availability of licensed shelter beds for unaccompanied minors under the FSA.

# CERTIFICATE OF SERVICE

Case No. CV 85-4544- DMG (AGRx)

I am a citizen of the United States. My business address is 10940 Wilshire Boulevard, Suite 2000, Los Angeles, California 90024. I am over the age of 18 years, and not a party to the within action.

I hereby certify that on December 7, 2022, I electronically filed the following documents with the Clerk of the Court for the United States District Court, Eastern District of California by using the CM/ECF system:

**NOTICE OF FILING OF CLOSING REPORT BY SPECIAL MASTER/ INDEPDENDENT MONITOR AND SPECIAL EXPERT DR. PAUL H. WISE**

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the United States the foregoing is true and correct. Executed on December 7, 2022 at Los Angeles, California.

_____
Jeff Thomson