CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Peter A. Schey (Cal. Bar No. 58232)
Sarah Kahn (Cal. Bar No. 341901)
256 South Occidental Boulevard
Los Angeles, CA  90057
Telephone: (213) 388-8693
Facsimile: (213) 386-9484
Email: pschey@centerforhumanrights.org
       sarah@centerforhumanrights.org

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MERRICK B. GARLAND, Attorney General of the United States, *et al.*,<br><br>Defendants. | Case No. CV 85-4544-DMG-AGRx<br><br>PLAINTIFFS' RESPONSE TO JUVENILE CARE MONITOR REPORT<br><br>[Doc. # 1360]<br><br>Hearing: October 2, 2023<br>HON. DOLLY M. GEE |

/ / /

*Attorneys for Plaintiffs continued*

USF SCHOOL OF LAW IMMIGRATION CLINIC
Bill Ong Hing (Cal. Bar No. 61513)
2130 Fulton Street
San Francisco, CA 94117-1080
Telephone: (415) 422-4475
Email: bhing@usfca.edu

LA RAZA CENTRO LEGAL, INC.
Stephen Rosenbaum (Cal. Bar No. 98634)
474 Valencia Street, #295
San Francisco, CA 94103
Telephone: (415) 575-3500

/ / /

I. **Introduction**

Pursuant to the Court's July 27, 2023 Order [ECF 1278, 1355, and 1359], on September 15, 2023, Juvenile Care Monitor Dr. Paul Wise ("JCM") filed the September 2023 Juvenile Care Monitor Report ("Report"). [ECF 1360]. These assessments are required by the provisions of a settlement agreement approved by the Court on July 29, 2022 [Docs. ## 1254-1, 1278] ("2022 Settlement") which mandates many new and specific custodial conditions and procedures for immigrant children in federal custody.

Plaintiffs file this submission in response to the Report.

Under the 2022 Settlement, the JCM is tasked with monitoring conditions in CBP detention facilities in U.S. Customs and Border Protection ("CBP") facilities in the Rio Grande Valley ("RGV") and El Paso sectors and the facilities' compliance with the terms of the 2022 Settlement. The 2022 Settlement also established the JCM's mandate to monitor compliance with the 1997 Flores Settlement Agreement ("FSA"). The Report covers the period from June through August 2023.

Plaintiffs are grateful for the thoroughness with which the JCM has carried out his monitoring duties. Plaintiffs file the present submission to supplement, respond to, and expand on observations reported by the JCM.[1]

---

[1] As Plaintiffs informed the Court during its last status conference, Class Counsel's recent monitoring in both the RGV and El Paso sectors disclosed numerous apparent violations of the 2022 Settlement and separate monitoring in CBP sectors in Arizona and California disclosed numerous apparent violations of the 1997 Settlement and this Court's Orders regarding the 1997 Settlement. As the Court urged, Plaintiffs have (1) twice met and conferred with Defendants' counsel, (2) provided Defendants with lists identifying over 100 class members and parents who executed declarations including the locations and specific provisions of the two settlements the declarants stated were violated, and (3) on August 7, 2023, provided Defendants with a written detailed list of apparent settlement violations along with specific proposals for resolution. To date, Defendants have not responded. Plaintiffs therefore anticipate fairly promptly filing a motion to enforce

1    Plaintiffs' Response to
Juvenile Care Monitor Report

## II. CBP Data Analysis

The Report notes that "Children in families … are routinely held for more than 72 hours." Report at 16. In July 2023, 737 class members were detained by CBP for between 3 and 14 days. *Id*. at 17.

This Court has on several occasions made clear that accompanied minors are Class Members protected by the 1997 Settlement. *See, e.g.*, July 24, 2015, In Chambers Order [ECF 177] ("The text of the Agreement provides further support for the finding that the Agreement encompasses all minors who are in custody, without qualification as to whether they are accompanied or unaccompanied.") As such, minors in family units have the same right to release articulated in Paragraph 14 of the 1997 Settlement as their unaccompanied peers:

> "Where the [CBP] determines that the detention of the minor is not required either to secure his or her timely appearance before … the immigration court, or to ensure the minor's safety or that of others, the [CBP] shall release a minor from its custody *without unnecessary delay*, in the following order of preference, to (A) a parent; (B) a legal guardian; (C) an adult relative (brother, sister, aunt, uncle, or grandparent); (D) an adult individual or entity designated by the parent or legal guardian as capable and willing to care for the minor's well-being …; (E) a licensed program willing to accept legal custody; or (F) an adult individual or entity seeking custody, in the discretion of the [CBP], when it appears that there is no other likely alternative to long term detention and family reunification does not appear to be a reasonable possibility."

---

focusing on Defendants' failure to provide class members and parents with several required notices of rights, lists of legal services, and access to telephones, and a subsequent second motion focusing on conditions, many of which are addressed in the JCM's Report.

FSA ¶ 14.

Paragraph 18 of the Agreement states: "*Upon taking a minor into custody*, the [Defendants, including CBP] … shall make and record the *prompt and continuous efforts* on its part toward family reunification and the release of the minor pursuant to Paragraph 14 above. Such efforts at family reunification shall continue so long as the minor is in [CBP] custody." *Id*. (Emphasis added).

Whether or not a child in CBP custody has family also detained in CBP custody – frequently, as this report highlights, in separate parts of the facility and without contact with the minor – does not in any way lessen CBP's obligation "upon taking a minor into custody" to "make and record … prompt and continuous efforts … toward … the release of the minor pursuant to Paragraph 14."

This Court has made clear that Defendants have an obligation under the Agreement to advise older class members and their parents of their right to release: "paragraph 12.A must be read … at minimum [to] include a notice of rights pertaining to custody and release such that Class Members may act upon them." In Chambers Order re Plaintiffs' Motion to Enforce [919] and August 2020 ICE Juvenile Coordinator Interim Report [943] ("September 2020 Order") [Doc. # 987 at 6]. Without addressing precisely how quickly a class member should be released, the Settlement clearly contemplates that steps aimed at release shall commence "upon taking a minor into custody."

The decision as to whether a child should be released to another relative or housing until their parent can join them generally lies with the parent, who is in the position to make decisions in the best interests of their child.

III.     **Separation of Families in Custody**

Of particular concern to Plaintiffs is the ongoing, traumatizing, and detrimental practice of separating children from their accompanying parent or guardian while in CBP custody. The Report finds that "none of interviewed

children had visited with their parents since they were separated, including children who had been separated for 4 days," and that the JCM had interviewed separated children "as young as 8 years old." Report at 23. The same separation was observed by Plaintiffs' counsel during monitoring in June and August. Unless resolved through Plaintiffs' efforts to meet and confer, this issue will be raised in a forthcoming motion to enforce re conditions.

The 2022 Settlement section VII.8.B.1. makes clear that "[a]bsent an articulable operational reason, class members apprehended with adult family members (including non-parents or legal guardians) shall remain with that family member during their time in CBP custody..." The exception to this mandate is when "there is an operational need to house family members separately," and in those cases "CBP shall make and record the reasons for holding them apart and all reasonable efforts to ensure that the family members have the opportunity to interact." As far as Plaintiffs are aware, CBP has not made or recorded reasons for holding families apart.

As the Report notes, "[s]eparating a child from a parent can be profoundly traumatic for children and can have lasting, harmful effects." Report at 28. These effects reach far beyond the trauma and fear that child experiences detention, causing "serious, deleterious effects." *Id*. at 29.

Where a child is already separated from their parent or guardian while in custody, it is even more urgent that both the class member and their parent or guardian be advised of the class member's rights, including the right to release. In many cases, a child's release, far from a family separation, would mean family reunification with a parent or close relative living in the United States who could provide the comfort, care, and necessities that a CBP facility cannot.

IV. **Nutrition**

The Report notes "there has been no improvement in the appropriateness of meals offered young children." Report at 33. "The continued failure to provide

young children with age-appropriate food remains noncompliant with the nutritional requirements outlined in the Settlement." *Id*. Plaintiffs' recent monitoring confirms these observations. Nutrition

### V. Sleeping Mats

The Report notes that "[d]uring the June 28 site visit to the Ursula Facility, the family holding pods for female-headed families were provided with an inadequate number of sleeping mats. In one holding pod, 12 of 32 women reported that they and their child were sleeping on the cement floor because they were not furnished with a sleeping mat … During the July 20 site visit, the lack of available sleeping mats at the Ursula Facility had worsened." Report at 37.

"[F]ailure to provide sleeping mats to UCs and families in custody is a violation of one of the most basic custodial requirements of the Settlement." Report at 39.

Plaintiffs' counsel's June-August monitoring revealed that children often shared mats with strangers or slept on concrete floors. A lack of mats and failure to dim the lights results in loss of sleep, which is clearly deleterious to the health and wellbeing of children and violates both the 1997 and 2022 Settlements and prior Orders of this Court.

### VI.   Medical Risk

The Report repeatedly emphasizes that "The most immediate step to prevent adverse child outcomes in CBP custody is to reduce the clinical burden on the CBP medical system *by expediting the transfer of children at elevated medical risk out of CBP custody*." Report at 55 (emphasis added). In the case of a medically vulnerable child, the Report suggests that "the reduction of medical risk in CBP facilities will require the appropriate, expedited transfer of children at increased medical risk out of CBP custody." Report at 57.

The Report discusses in detail steps that should be taken to address medically vulnerable children. Report 47-68. It does not mention that in some

non-urgent cases, release to a relative who can provide medical care is an option that may be appropriate in some case cases, but requires that parents be informed that their children generally possess the right to be released to relatives.

## VII.  Notices of Rights

Not only does the Report reveal that Class Members and their families were never informed of their rights, a reality starkly reflected in the over-100 interviews recently conducted by Plaintiffs' Class Counsel, it also indicates that even staff are unaware of Class Members' rights: "Discussions with caregivers assigned to the UC holding pods also suggested that they were not aware that children held separately from their parents could request contact with a parent while in custody." Report at 30. Parents could not advocate for reunification with their children because "parents being held apart from their children did not know of the requirement that CBP make and record the reasons for holding parent and child apart." *Id*.

"During the site visits, the JCM did not observe posters or other materials advising parents and minors of their rights to interaction." *Id*. Interviewed Class Members and their families repeatedly reported not knowing their rights: "Interviews with separated children in this age group revealed significant emotional distress related to separation, including sustained crying and disorientation, particularly due to the child's uncertainty as to the location of the parent and when, and even if, child and parent might be reunited." Report at 29.

Class Counsel's June-August monitoring disclosed that the vast majority (close to all) older class members and parents had not been advised of their rights.

The 1997 Settlement provides that "[t]he [Government] shall promptly provide each minor not released with (a) INS Form 1-770." *Id*. ¶ 24D. The 2022 Settlement provides that "[c]lass members age 14 or over and all accompanying adult family members of class members under the age of 14 shall also be …

6

Plaintiffs' Response to
Juvenile Care Monitor Report

provided an I-770 in English and Spanish." 2022 Settlement at XI. The I-770 includes the right to telephone calls, a lawyer, a hearing before a judge, and *the right to contact with family members*. Yet the Report notes that separated families didn't know they could have contact with one another. Report at 30.

The 2022 Settlement section II(7) requires that CBP "post the poster attached as Exhibit 1 in all CBP facilities in the RGV and El Paso sectors." Yet the JCM "did not observe posters or other materials advising parents and minors of their rights to interaction." Report at 30.

This Court has pointed out that failing to advise Class Members of their rights under the Agreement is tantamount to obstructing or even erasing those rights: "Paragraph 37 provides that individual Class Members may bring actions to enforce the Agreement, which presupposes that Class Members are aware of their rights under it. FSA at ¶ 37. Because the FSA 'should be read to give effect to all of its provisions and to render them consistent with each other,' …paragraph 12.A must be read to provide a broader notice of rights than provided for elsewhere in the FSA," including their rights to warm clothing, adequate food, adequate hygiene, judicial review, and release. September 2020 Order at 6.

Without providing the advisals required by the 1997 and 2022 Settlements, these agreements and the Court Orders enforcing them are merely documents written and read by lawyers and the Court, and not, as they were intended, protections in the hands of detained children and their parents.

**VIII.  Conclusion**

Plaintiffs respectfully submit the above responses to Dr. Wise's final JCM Report covering the period of June through August 2023.

Plaintiffs commend the JCM for his monitoring work aimed at ensuring compliance with the 2022 Settlement.

Dated: September 22, 2023           Respectfully submitted,

  /s/ Peter Schey
PETER SCHEY
Center for Human Rights &
Constitutional Law
256 South Occidental Boulevard
Los Angeles, California 90057
Tel: 323-251-3223
Fax: 213-386-9484

pschey@centerforhumanrights.org

*Attorney for Plaintiffs*

# CERTIFICATE OF SERVICE
## CASE NO. CV 85-4544-DMG (AGRx)

I certify that on September 22, 2023, I served a copy of the foregoing pleading on all counsel of record by means of the District Court's CM/ECF electronic filing system.

          /s/ Peter Schey
      PETER SCHEY