CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Carlos Holguín (Cal. Bar No. 90754)
Sarah Kahn (Cal. Bar No. 341901)
256 South Occidental Boulevard
Los Angeles, CA  90057
Telephone: (213) 388-8693
Facsimile: (213) 386-9484
Email: crholguin@centerforhumanrights.org
        sarah@centerforhumanrights.org

*Attorneys for Plaintiffs*
(*Additional counsel listed on next page*)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MERRICK B. GARLAND, Attorney General of the United States, *et al*.,<br><br>Defendants. | Case No. CV 85-4544-DMG-AGRx<br><br>PLAINTIFFS' RESPONSE TO JUVENILE CARE MONITOR REPORT<br><br>[Doc. # 1372]<br><br><br>Hearing: December 1, 2023<br>HON. DOLLY M. GEE |

/ / /

USF SCHOOL OF LAW IMMIGRATION CLINIC
Bill Ong Hing (Cal. Bar No. 61513)
2130 Fulton Street
San Francisco, CA 94117-1080
Telephone: (415) 422-4475
Email: bhing@usfca.edu

LA RAZA CENTRO LEGAL, INC.
Stephen Rosenbaum (Cal. Bar No. 98634)
474 Valencia Street, #295
San Francisco, CA 94103
Telephone: (415) 575-3500

NATIONAL CENTER FOR YOUTH LAW
Mishan Wroe (Cal. Bar No. 299296)
Diane de Gramont (Cal Bar No. 324360)
1212 Broadway Suite 600
Oakland, CA 94612
Telephone: (510) 835-8098
Email: mwroe@youthlaw.org
          ddegramont@youthlaw.org

CHILDREN'S RIGHTS
Leecia Welch (Cal Bar No. 208741)
88 Pine Street Suite 800
New York City, NY 10005
Telephone: (510) 835-8098
Email: lwelch@childrensrights.org

/ / /

Plaintiffs' Response
to Juvenile Care Monitor Report
Case No. CV 85-4544-DMG-AGRx

## I. **Introduction**

Pursuant to the Court's October 4, 2023 Order [ECF 1366], on November 13, 2023 Juvenile Care Monitor Dr. Paul Wise ("JCM") filed the November 2023 Juvenile Care Monitor Report ("November JCM Report") [ECF 1372]. Plaintiffs file this submission in response to the report.

Under the 2022 CBP Settlement Agreement ("2022 Settlement") [ECF 1254-1], the JCM is tasked with monitoring conditions in CBP detention facilities in U.S. Customs and Border Protection ("CBP") facilities in the Rio Grande Valley ("RGV") and El Paso sectors and the facilities' compliance with the terms of the 2022 Settlement. The 2022 Settlement also established the JCM's mandate to monitor compliance with the 1997 Flores Settlement Agreement ("FSA"). The November JCM Report covers the period from September through October 2023.

The report notes continued and persistent noncompliance with several aspects of the 2022 Settlement. In some cases, such as the provision of age-appropriate meals to young children, the report finds that "there has been no improvement," despite repeated reports of noncompliance. November JCM Report at 29.

In other cases, the report supplies new information, such as the existence of newly minted "field guidance" on separation of families in custody, that the JCM has not verified and that CBP has not yet shown cures serious violations of the 2022 Settlement. *Id*. at 24-25. Finally, the JCM report demonstrates that compliance with aspects of the 2022 Settlement is inconsistent. *Id*. at 19 ("[F]indings during this reporting period underscored the dynamic nature of the border in these two sectors.").

Plaintiffs' Response to
Juvenile Care Monitor Report
Case No. CV 85-4544-DMG-AGRx

Plaintiffs agree with the JCM's assessment that "[i]t is essential" that violations "continue to be documented through ongoing monitoring activities." *Id*. at 26; *see e.g.*, November JCM Report at 20, 30, 32, 34, 53-54.

Plaintiffs again express gratitude for the thoughtfulness, thoroughness, and expertise of the JCM and the vital work he has done. This is the JCM's final report, and the findings of persistent noncompliance with components of the 2022 Settlement are cause for concern over the welfare of vulnerable children in CBP's custody. Plaintiffs accordingly believe an extension of the JCM's term warranted, and they have invoked the meet-and-confer provisions of Section IX.10 of the 2022 Settlement toward that end.[1]

## II.   <u>Continued Violations of the 2022 Settlement</u>

### A. Separation of Families in Custody

Of particular concern to Plaintiffs is CBP's continued violation of the Settlement's mandate to hold families together whenever possible. In the event extraordinary circumstances require CBP to physically separate children from their adult family members, the agreement requires the agency to ensure routine contact between the separated family members. 2022 Settlement Section VII.8.8B.1.

The JCM report nonetheless finds that at the Donna facility, "several families … had been held apart for 5 days at the time of the site visit." November JCM Report at 21. Even more detrimental, "[i]nterviews with the children being

---

[1]   On Tuesday, November 14, 2023, Plaintiffs requested by email to meet and confer regarding extension of the Juvenile Care Monitor's term. Defendants responded on November 16, 2023, and Parties are working to find a mutually agreeable time to meet in the next two weeks.

Plaintiffs' Response to
Juvenile Care Monitor Report
Case No. CV 85-4544-DMG-AGRx

held separately at the Donna Facility reported that most had not had any interaction
with a parent since they entered the UC holding pod." *Id*. at 22.

The 2022 Settlement makes clear that "[a]bsent an articulable operational
reason, class members apprehended with adult family members (including non-
parents or legal guardians) shall remain with that family member during their time
in CBP custody…." 2022 Settlement Section VII.8.B.1. The only exception to this
mandate is when "there is an operational need to house family members
separately," and in those cases "CBP shall make and record the reasons for holding
them apart and all reasonable efforts to ensure that the family members have the
opportunity to interact." 2022 Settlement Section VII.8.B.3.

As far as may be discerned from the JCM report, CBP has not articulated an
operational need for the continued separation of families nor made or recorded
reasons for holding families apart. Instead, CBP cites generally "PREA" and
"overcrowding," without further explanation as to why either is an operational
need that requires separation. Nor is there any evidence that CBP is making
reasonable efforts to ensure telephonic or other contact between physically
separated family members. November JCM Report at 5, 24-25.

Instead, the JCM reports that children as young as 13 are held apart from
their families for days at a time with little to no contact and, as the JCM notes,
"[C]hildren of any age could experience significant distress and potentially long-
term harm by being held apart from their parents." *Id*. at 23. The report
underscores the Settlement's clear mandate: "opportunities for interaction should
not be viewed as optional; rather, CBP personnel should have the logistical and
organizational support to ensure routine provision. CBP must also ensure that their
personnel and contracted caregivers inform the affected families of their rights
regarding visitation." November JCM Report at 26. To make matters worse, it

Plaintiffs' Response to
Juvenile Care Monitor Report
Case No. CV 85-4544-DMG-AGRx

appears that CBP routinely fails to inform caregivers, class members, and their families that they have a right to alternative means of maintaining contact when physical separation is necessary.

The report finds that "most [separated children] had not had *any* interaction with a parent since they entered the UC holding pod. In addition, few knew that they were entitled to request such a meeting." *Id*. at 22 (emphasis added). Even caregivers at the JPF "were not aware that children held separately from their parents could request contact with a parent while in custody" and "the JCM did not observe posters or other materials advising parents and children of their rights to interact." *Id*. at 22.[2]

As this Court has previously stated, failing to inform class members and their families of their rights under the FSA essentially renders those rights unenforceable. Order re Plaintiffs' Motion to Enforce [919] and August 2020 ICE Juvenile Coordinator Interim Report [943] [ECF 987] at 6 ("Paragraph 37 provides that individual Class Members may bring actions to enforce the Agreement, which presupposes that Class Members are aware of their rights under it.").

The report notes the recent issuance of CBP's "strengthened field guidance" that apparently requires family unity be protected "absent an articulable safety or security concern," and explains that separated families should be provided at least three visits per 24-hour period in custody. November JCM Report at 24-25. This "strengthened" guidance has not been made available to Plaintiffs, nor does the

---

[2]  Under Section II.7 of the 2022 Settlement, CBP is required "to post the poster attached as Exhibit 1 in all CBP facilities in the RGV and El Paso Sectors where class members are held." The poster includes a statement and graphic informing class members and their families of their right to stay together or have contact if separated. 2022 Settlement Exhibit 1.

Plaintiffs' Response to
Juvenile Care Monitor Report
Case No. CV 85-4544-DMG-AGRx

JCM report having actually seen the guidance. This eleventh hour guidance does little to assuage concerns over the persistent violations of the 2022 Settlement and those violations warrant continued monitoring. *Id*. at 26 ("CBP's family holding practices are of central importance to the well-being of children in custody. It is essential, therefore, that these holding practices continue to be documented through ongoing monitoring activities. While the October 17 field guidance holds promise as an important step forward, how its mandates are implemented over time warrants close, continued scrutiny.").

### B. Nutrition

The JCM report also highlights CBP's persistent failure to meet the 2022 Settlement's requirement that it provide age-appropriate meals and snacks to youth in custody. 2022 Settlement Section VII.4.A.1. This violation has been repeatedly documented with respect to children between two and five years old, without resolution or even discernable improvement between reports. Juvenile Care Monitor Report September 2023 [ECF 1360] ("September JCM Report") at 33; Juvenile Care Monitor Report July 2023 [ECF 1352] ("July JCM Report") at 18; January Juvenile Care Monitor Report [ECF 1326] ("January JCM Report") at 38.

Section VII.4.A.1. of the Settlement requires, "In all facilities, CBP shall ensure that class members have access to age-appropriate meals and snacks that meet class members' daily caloric needs." CBP's long-standing failure to provide age-appropriate food for young children persists. November JCM Report at 28-29 ("During this reporting period, the site visits to both the RGV and El Paso JPFs documented that there has been no improvement in the appropriateness of meals provided to young children."). This issue, too, the JCM concludes, "requires ongoing monitoring." *Id*. at 30.

## C. Temperature

The JCM further reports that children continue to suffer from cold during CBP custody and highlights that "[a]s noted in prior JCM reports, there is no reason that children should report feeling cold for extended periods of time while in CBP custody." November JCM Report at 32.

Section VII.5.B.1 of the Settlement requires CBP to provide "[e]xternal clothing for additional warmth [that] may include garments such as sweatshirts, beanies, sweatshirts, jackets, or other types of garments that provide an extra layer of warmth that is age-appropriate." This seems a requirement that CBP is readily able to meet.

Notably, when the JCM "reported to BP facility leadership" that clothing at Donna was unavailable, CBP "moved quickly to rectify the situation." November JCM Report at 31.

Importantly, the report finds that "[s]ome parents in the family holding pods . . . were not aware that additional clothing was available." *Id*. at 31. The JCM reasonably recommends that CBP staff, class members, and families be advised of their right to warmer clothing. Here again, the JCM concludes, "close monitoring of the temperature and garment availability provisions of the Settlement is warranted." *Id*. at 31-32.

## D. Sleep

The JCM has repeatedly reported CBP's failure to dim lights during sleeping hours, which the agency excuses on the ground its facilities lack dimming capability. September JCM Report at 38-39; July JCM Report at 21; January JCM Report at 42.

Now, confusingly, CBP appears to admit that it *can* dim lights, but during interviews with the JCM families report that CBP fails to meet the requirements of the 2022 Settlement with any consistency. November JCM Report at 33.

Section VII.6.3. of the Settlement mandates that "CBP shall make reasonable efforts to dim the lights between 2200 and 0600." Information from CBP and detained individuals about the ability to dim lights and whether CBP does so remains contradictory. November JCM Report at 33. The report suggests that "It would be useful to review formal, written light dimming protocols for each of the JPFs." *Id*. at 34. Failure to dim the lights has been an ongoing violation, and children continue to report sleep deprivation on account of bright lights throughout the night to Plaintiffs' counsel. Plaintiffs concur in the JCM's recommendation that a formal protocol be adopted and monitored.

### E. Medical Risk

The JCM also identifies several serious inadequacies in CBP's provision of medical services. The report notes, however, that medical care in CBP facilities has improved as a result of "close consultation with the JCM." November JCM Report at 46. In Plaintiffs' view, such consultation remains necessary if the CBP is to come into compliance with those provisions of the 2022 Settlement requiring improvements in CBP's medical care system.

For example, medical information, particularly about youth who have elevated medical risk but are not acutely ill, is *still* being conveyed "irregularly." *Id*. at 50. Since the previous JCM Report, which identified CBP's failure to properly monitor children at elevated medical risk, CBP has attempted to address this failure by increasing medical visits to children in medical isolation. *Id*. at 51-52. While Enhanced Medical Monitoring ("EMM") has helped to improve medical monitoring of medically isolated youth, CBP continues "irregular monitoring of

Plaintiffs' Response to
Juvenile Care Monitor Report
Case No. CV 85-4544-DMG-AGRx

children at elevated medical risk who were not housed in the isolation areas." *Id*. at 51-52.

The report also identifies other weaknesses in CBP's policies, practices, and resources for communicating medical information. It notes, for example, that children's information is not consistently reported from a referral hospital to CBP personnel when a child is released; parents are inconsistently provided a summary of their child's medical care; children are not consistently provided referrals to community care upon release; and communication between CBP medical and nonmedical staff is inconsistent. *Id*. at 54-57.[3]

## III.    End of JCM's Term

Under the 2022 Settlement, the JCM was appointed to a sixteen-month term and the November JCM Report was Dr. Wise's final report of his initial term. The Settlement requires that within "30 days of receiving this final report, the Parties shall meet and confer regarding whether the Juvenile Care Monitor's term shall be extended." 2022 Settlement IX.10. Plaintiffs have requested a meet and confer

---

[3] The JCM's previous report found that CBP personnel sometimes interfere with medical staff directions to transfer a sick child to a hospital because transfer "creates a logistical and staffing burden." November JCM Report at 52. "[P]rior JCM reports strongly recommended that the decision to transfer any individual patient be based on medical considerations alone." *Id.*

The November report also finds that even when CBP staff are more "responsive to medical requests for transfer," CBP will at times bar parents from accompanying their children to the hospital. *Id*. at 53. The report recommends that "protocols for when parents should be allowed to accompany their children to an outside health facility should be developed" and finds that "the transfer of patients to local health facilities require continued reinforcement and monitoring." *Id.*

Plaintiffs' Response to
Juvenile Care Monitor Report
Case No. CV 85-4544-DMG-AGRx

with Defendants to discuss the persistent areas of noncompliance and explore an extension of the JCM's term to continue monitoring.

The 2022 Settlement envisions the transfer of monitoring responsibilities from the JCM to CBP. Unfortunately, given the ongoing violations noted in the report and the lack of information regarding any plans to transition external monitoring, there is scant reason to believe CBP is prepared to assume the role of monitoring its treatment of detained children.

To the contrary, the 2022 Settlement and the Court's order appointing the JCM make clear that "CBP shall provide the Juvenile Care Monitor with all monitoring protocols" and that "[p]rior to the effective transition of monitoring functions, the Juvenile Care Monitor shall approve Defendant's final monitoring protocols." 2022 Settlement IX.12. There is no indication that CBP has complied with either requirement.  Plaintiffs are not aware that any monitoring protocols have been provided to the JCM; certainly, none have been provided to Plaintiffs.

Plaintiffs are aware of no evidence from which one might responsibly conclude that CBP is prepared to take over effective monitoring of the 2022 Settlement. The JCM's holistic expertise and independent perspective have been integral to developing recommendations for important improvements, encouraging CBP to comply with the Settlement, and, ultimately, contributing to children's safety and welfare. Plaintiffs see no evidence – nor do Defendants appear to have furnished any as is required under the Settlement – that CBP can now oversee similarly effective monitoring.

**F. Conclusion**

Plaintiffs commend Dr. Wise for his excellent monitoring and integral role in ensuring compliance with the 2022 Settlement. His monitoring efforts have

Plaintiffs' Response to
Juvenile Care Monitor Report
Case No. CV 85-4544-DMG-AGRx

facilitated important improvements and identified continued violations of the 2022 Settlement, which he and Plaintiffs recognize warrants ongoing monitoring.

Dated: November 17, 2023                    Respectfully submitted,

                                             /s/ Sarah Kahn
                                            Sarah Kahn
                                            Center for Human Rights &
                                            Constitutional Law
                                            256 South Occidental Boulevard
                                            Los Angeles, California 90057
                                            Tel: 415-672-1962
                                            Fax: 213-386-9484

                                            sarah@centerforhumanrights.org

                                            *Attorney for Plaintiffs*

Plaintiffs' Response to
Juvenile Care Monitor Report
Case No. CV 85-4544-DMG-AGRx

# CERTIFICATE OF SERVICE
## CASE NO. CV 85-4544-DMG (AGRx)

I certify that on November 17, 2023, I served a copy of the foregoing pleading on all counsel of record by means of the District Court's CM/ECF electronic filing system.

    /s/ Sarah Kahn
Sarah Kahn

Plaintiffs' Response to
Juvenile Care Monitor Report
Case No. CV 85-4544-DMG-AGRx