ANDREA SHERIDAN ORDIN (SBN 38235)
STRUMWASSER & WOOCHER LLP
1250 Sixth Street, Suite 205
Santa Monica, California 90401
Telephone: (310) 576-1233
Facsimile: (310) 319-0156
E-mail: aordin@strumwooch.com

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MERRICK B. GARLAND,<br>Attorney General of the United States, *et al.*,<br><br>Defendants. | CASE NO. CV 85-4544-DMG (AGRx)<br><br>**NOTICE OF FILING OF JUVENILE CARE MONITOR REPORT BY ANDREA S. ORDIN** |

In accordance with the Court's Orders, Andrea Sheridan Ordin submits the attached Juvenile Care Monitor Report.

This Report is required by the provisions of the Agreement approved by the Court on December 14, 2023 [Doc.# 1381]. The Juvenile Care Monitor has discussed drafts of this Report with the Parties. Either Party may file objections or comments to this Report.

DATED:      May 6, 2024                    Respectfully submitted,

Andrea Sheridan Ordin
STRUMWASSER & WOOCHER LLP

By   _/s/ Andrea Sheridan Ordin_
Andrea Sheridan Ordin

*Juvenile Care Monitor*

**JUVENILE CARE MONITOR REPORT**

**April 2024**

**(Monitoring December 2023 through February 2024)**

**Submitted by Andrea Sheridan Ordin**

**Juvenile Care Monitor**

Dr. Nancy Ewen Wang, Medical Advisor

Dr. Paul H. Wise, Medical Expert

**CONTENTS**

I.    INTRODUCTION ........................................................................3

II.   CBP SETTLEMENT AND THE JUVENILE CARE MONITOR ..............3

III.  MONITORING ACTIVITIES AND DATA ANALYSIS............................9

IV.   CONDITIONS AT CBP FACILITIES..........................................14

V.    CAREGIVERS .................................................................20

VI.   TRAUMA-INFORMED CARE AND CHILD-APPROPRIATE ................22

      ENVIRONMENT .............................................................22

VII.  ENHANCED MEDICAL SUPPORT.........................................24

**GLOSSARY**

BP        Border Patrol
CBP       Customs and Border Protection
CPC       Central Processing Center
CWSP      Child Welfare Specialist Program, Office of Health Security, DHS
EHF       El Paso Hardened Facility
FSA       Flores Settlement Agreement
JCO       Juvenile Coordinator's Office
JCM       Juvenile Care Monitor
JPF       Juvenile Priority Facility
OCMO      Office of the Chief Medical Officer, CBP
ORR       Office of Refugee Resettlement
RGV       Rio Grande Valley
SSF       Soft-sided facility
TIC       Time in custody

## I.      INTRODUCTION

This report presents the evaluation and observations of the Juvenile Care Monitor

who is charged with conducting independent assessments of custodial conditions

for children held in Customs and Border Protection (CBP) facilities in the Rio

Grande Valley (RGV) and El Paso sectors.  These assessments were first required

by the provisions of a settlement agreement approved by the Court on July 29,

2022 [Doc. # 1278] (the Settlement) which mandates many new and specific

custodial conditions and procedures for immigrant children in federal custody.  The

Settlement also established the Juvenile Care Monitor (JCM) position to assess

CBP compliance with the provisions of the Settlement.


## II.     CBP SETTLEMENT AND THE JUVENILE CARE MONITOR

The first JCM appointed was Dr. Paul H. Wise, who served in that position until

the conclusion of his term on December 11,  2023.  On December 14, 2023,

Andrea Sheridan Ordin was appointed Juvenile Care Monitor ( JCM) for six

months and Dr. Paul H. Wise was appointed as the Medical Advisor to the JCM

until February 1, 2024. (Doc. 1381) On February 8, 2024, Dr. Nancy Ewen Wang,

Professor, Pediatric Emergency Medicine at Stanford School of Medicine, was

appointed Medical Advisor and Dr. Paul H. Wise was asked to remain as a

consultant on the monitoring team as Medical Expert, and each will serve through

3

June 14, 2024. (Doc. 1388)  It was anticipated in the Order that the extension of an additional six months of monitoring and analysis of new internal protocols would enable the JCM to make a judgment whether the existing internal systems are sufficiently robust so that the monitoring terms of the JCM, Medical Advisor and Medical Expert can be transferred to CBP by June 14, 2024. (Doc. 1381)

Key terms of the December 14, 2023 Order (Doc. 1381) are summarized  below:

**Monitoring Overcrowding:** The Juvenile Care Monitor shall be responsible for monitoring overcrowding, in addition to monitoring compliance with all terms of the Agreement. Overcrowding is defined as a level of occupancy that exceeds the physical space required to maintain a safe and sanitary environment for each individual in custody.

CBP shall provide the Juvenile Care Monitor with the information she determines, in consultation with CBP, is necessary to assess the potential for, or actual overcrowding, in juvenile priority facilities. This information shall include occupancy data for all pods and cells in CBP facilities in the RGV and El Paso Sectors; demographic data regarding class members in CBP custody; data

4

regarding the time that class members spend in CBP custody; and data regarding the size of available holding areas.

**Term of Monitoring:** The Juvenile Care Monitor's term shall be extended by six months from December 15, 2023, to June 14, 2024. The final report of the Juvenile Care Monitor shall assess the efficacy of CBP's internal monitoring protocols as required by the Order Appointing Juvenile Care Monitor [Doc. # 1280].  It is contemplated that after receiving this final report, the Parties shall meet and confer regarding whether the Juvenile Care Monitor's term shall be extended. If no agreement is reached, Plaintiffs may petition the Court for a single extension of the Monitor's term.

**Transfer of Monitoring to CBP**: At the completion of the Juvenile Care Monitor's term, CBP shall assume responsibility for monitoring compliance with the terms of the Agreement, including monitoring whether there is overcrowding, as defined above. For a period of 30 days after the Juvenile Care Monitor's term ends, the Juvenile Care Monitor will work with the CBP Juvenile Coordinator to ensure an effective transition of monitoring functions, and will be compensated for this work.

5

During the Juvenile Care Monitor's term, CBP shall provide the Juvenile Care Monitor with all monitoring protocols. The Juvenile Care Monitor and the Medical Advisor and Medical Expert may review those protocols and advise CBP on any enhancements or further refinement. Prior to the effective transition of monitoring functions, the Juvenile Care Monitor, with the guidance of the Medical Advisor and Medical Expert will approve CBP's final monitoring protocols.

As contemplated by the Order, the Juvenile Care Monitor, the Medical Advisor, and the Medical Expert are now analyzing the current OCMO (Office of the Chief Medical Officer, CBP) plans for enhanced medical monitoring and discussing those protocols with Dr. Alex Eastman and his medical team.  Joint monitoring duties with OCMO and the Juvenile Coordinator staff on-site at Donna and El Paso will be held in the months of April, May, and June 2024.

This interim report will summarize the observations and assessments of the JCM, Medical Advisor, and Medical Expert developed during the site visits during January and February 2024.  Those visits included interviews with CBP personnel, contracted medical staff, and children and families in CBP custody.  In addition, analyses of data provided by CBP are also included in this report. The JCM has

6

also received the Statements of Work for Caregivers and Medical providers and will be reporting on those Statements of Work in the next report.

While the JCM is to examine all Settlement requirements and report all concerns related to Settlement compliance, the primary focus of the JCM has been on those requirements and concerns that have the greatest potential consequences for the health and well-being of children in CBP custody.  All concerns related to Settlement compliance or other custodial issues observed during site visits are conveyed to CBP for remedial action.

Settlement components that the JCM believes critical to evaluating future monitoring protocols are presented below:

• **Juvenile Priority Facilities.** A fundamental provision in the Settlement is the designation of specific facilities in each sector to house and process Unaccompanied Children (UCs) and families. These Juvenile Priority Facilities (JPFs), often designated Central Processing Centers (CPCs), have been established in both the RGV and El Paso sectors.  In the RGV sector, the JPF during this reporting period was in the Donna Facility in Donna, Texas.   In El Paso, the JPF was located in the El Paso Hardened Facility (EHF).

7

- **Overcrowding.** Overcrowding is the single custodial condition with the greatest potential to undermine the quality of care provided to children in CBP custody. The Settlement defines overcrowding as "A level of occupancy that exceeds the physical space required to maintain a safe and sanitary environment for each individual in custody."

- **The separation of families while in custody.** As noted in prior reports, because any separation of children from their parents during their time in custody creates the potential for profound and lasting harm, the Settlement requires that this practice be justified by compelling operational concerns, take into consideration the child's age and vulnerabilities, and that steps be taken to mitigate any potential harm.

- **Warmth, garments, and sleep.** The Settlement requires that CBP ensure that the holding environments maintain a temperature between 69 and 83 degrees, provide sleeping mats, clean and warm garments to children in custody, and that the holding conditions are conducive to adequate sleep.

- **Nutrition.** The Settlement requires the provision of age-appropriate meals and snacks that meet children's daily nutritional needs. Water and adequate hydration are also mandated by the Settlement.

- **Hygiene and sanitation**. The Settlement outlines a series of hygiene and sanitation requirements for all children entering CBP custody. Showers are to be

provided soon after arrival at the JPF and again at 48-hour intervals. Toothbrushes should be provided daily and also upon request.

- **Caregivers.** The Settlement requires that CBP develop a caregiver program directed at providing a variety of custodial services to children in CBP custody. This provision is seen as the linchpin to provide a child-appropriate, safe and sanitary environment. Caregivers are required to be well-trained in meeting the needs of the children during their stay, including their time in intake and medical isolation.

- **Child-appropriate environment.** The Settlement requires that children be treated with dignity, respect, and in recognition of their particular vulnerabilities.

- **Enhanced medical care.** The requirements of the Settlement mandate that the JCM assess both the structure and the performance of the CBP medical system for children in custody.

## III.   MONITORING ACTIVITIES AND DATA ANALYSIS

**Site Visits**

Between January 1 and March 1, 2024, 4 site visits were conducted at CBP facilities, detailed below. The JCM had full access to all sections of all facilities providing care for children. In addition, the JCM had full freedom to conduct interviews away from CBP personnel with both children and parents in custody.

9

The dates and location of the site visits to CBP facilities were as follows:

- CBP El Paso

  o    January 5, 2024 JCM – Dr. Paul H. Wise and Legal Advisor Andrea Sheridan Ordin

  o    February 12-13, 2024 JCM – Andrea Sheridan Ordin and Medical Advisor Dr. Nancy Ewen Wang

- CBP Rio Grande Valley

  o    January 4, 2024 JCM – Dr. Paul H. Wise and Legal Advisor Andrea Sheridan Ordin

  o    February 29-March 1, 2024 JCM – Andrea Sheridan Ordin and Medical Advisor Dr. Nancy Ewen Wang

**CBP Data Analysis**

CBP provides monthly reports on the number of UCs apprehended as well as the number of family unit encounters (includes all individuals in the family, including both adults and minors). These data are presented for November 2023, December 2023, January 2024, and February 2024 in **Table 1**.

CBP also provides Southwest Border data on all children in custody for longer than 72 hours.  These are presented in **Table 2**.  In January, as reflected **in Tables 2 and 3**, of the 507 children  in CBP custody longer than 72 hours, 494 children belonged in a family unit and 13 children were unaccompanied.  In February, of

10

the 537 children in CBP custody more than 72 hours, 519 belonged to a family unit and 18 children were unaccompanied. Tables 2 and 3. CBP data reflects that in the Southwest Border, many children in families are routinely held for more than 72 hours. The majority of children in custody over 72 hours were in custody between 3 to 5 days, however in January, 61 minors were in custody between 6 to 16 days, and in February, 54 children were in custody between 6 to 16 days. The large number of children in families in custody from 6 to 16 days at a time when the census was comfortably below capacity is of concern. Many factors causing delays are not within the control of the CBP, e.g. differences in removal policies, home country demographics, and local non-governmental organizations' processing capabilities. At future meetings with the CBP, the JCM will explore mitigation strategies for CBP for minors who experience significantly extended stays.

Data is also presented for the length of stay for UAC's in El Paso Facility and Donna Facility for the months of January and February. These data and interviews on site have documented that it was rare for UC's to be in CBP custody for more than 72 hours.

11

**Table 1**. **Total Encounters by Month and Demographic Group, Southwest
Border\***

|  | NOV 2023 | DEC 2023 | JAN 2024 | FEB 2024 |
|---|---|---|---|---|
| **INDIVIDUALS IN FAMILY UNITS** | **104,154** | **123,498** | **60,334** | **65,059** |
| **MINORS--UAC** | **12,808** | **13,464** | **8,523** | **10,444** |

\*Data source: CBP

**Table 2**. **Time in Custody of >72 hours by Demographic Group
All Minors, Southwest Border \***

|  | DEC 2023 | JAN 2024 | FEB 2024 |
|---|---|---|---|
| **3-5 DAYS** | **3,224** | **446** | **483** |
| **6-7 DAYS** | **318** | **46** | **47** |
| **8-16 DAYS** | **50** | **15** | **7** |
| **>16 DAYS** | **0** | **0** | **0** |
| **TOTAL** | **3,592** | **507** | **537** |

\*Data source: CBP

**Table 3.** Unaccompanied Children, Southwest Border *

|             | DEC 2023 | JAN 2024 | FEB 2024 |
|-------------|----------|----------|----------|
| **3-5 DAYS**  | 47 | 9  | 13 |
| **6-7 DAYS**  | 2  | 3  | 2  |
| **8-14 DAYS** | 0  | 1  | 0  |
| **>14 DAYS**  | 0  | 0  | 3  |
| TOTAL       | 49 | 13 | 18 |

*Data source: CBP

**Table 4.** Unaccompanied Children Rio Grande Valley Sector*

|             | DEC 2023 | JAN 2024 | FEB 2024 |
|-------------|----------|----------|----------|
| **3-5 DAYS**  | 0 | 0 | 0 |
| **6-7 DAYS**  | 0 | 1 | 0 |
| **8-14 DAYS** | 0 | 0 | 0 |
| **>14 DAYS**  | 0 | 0 | 0 |
| TOTAL       | 0 | 1 | 0 |

*Data source: CBP

13

**Table 5.** Unaccompanied Children El Paso Sector*

|  | DEC 2023 | JAN 2024 | FEB 2024 |
|---|---|---|---|
| **3-5 DAYS** | 3 | 6 | 8 |
| **6-7 DAYS** | 0 | 2 | 2 |
| **8-14 DAYS** | 0 | 0 | 0 |
| **>14 DAYS** | 0 | 0 | 0 |
| **TOTAL** | 3 | 8 | 10 |

*Data source: CBP

## IV.   CONDITIONS AT CBP FACILITIES

Since August 2023, the JPF has been the Donna Facility, which is composed of a series of large, soft-sided structures, some with hardened walls, and had been long used as the JPF in this sector.  Occasionally, some families have been processed in non-JPF Border Patrol (BP) stations, including the McAllen BP station in particular.

**Overcrowding**

**Current Observations January through February 2024:**

In January 2024, the Juvenile Care Monitor, now Andrea Sheridan Ordin, and Dr. Paul H. Wise monitored the JPF at Donna. The census on January 3, 2024 was

14

significantly below capacity. Similarly, when monitoring at El Paso on January 4th and 5th, the census was far below capacity and no overcrowding was observed in any area.

The Juvenile Care Monitor and Medical Expert, Dr. Nancy Ewen Wang, monitored the Donna facility on February 29 and March 1, 2024. They monitored El Paso in February 12-13.  The census was again, at both facilities significantly below capacity and no overcrowding was observed in any area.

## The Separation of Families While in Custody

**Current Observations January through February 2024:**

**El Paso**

In interviews, the JCM heard from separated children and parents that they were able to have routine visits. In interviews, caregivers appeared aware of the ability of the children and family members' rights to visit, although caregivers and Border Patrol officers said that during times of surge, it was difficult to provide routine visits.  The JCM, during the monitoring trips at El Paso in January and February, observed the required posters were available in the pods which highlighted the children's rights to request meetings with parents, if separated during their time in custody in the facility.

15

**Donna**

Family members and caregivers in each visit said there was no plan for regular or routine visits while the families were separated.  The posters explaining rights were not observed in family pods.  Caregivers are directed to read a script regarding rights at each change of shift, and although caregivers described making announcements, some parents and children appeared unaware of the rights to request visits or did not remember hearing that information.

**Assessment**

As noted in prior reports, given that any separation of children from their parents during their time in custody is potentially harmful, the Settlement requires that this practice be justified by compelling operational concerns, take into consideration the child's age and vulnerabilities, and that steps be taken to mitigate any potential harm.  The failure to effectively communicate visitation rights to families in custody and to implement routine visitation opportunities at the Donna Facility, even during times of low census, stands out as an area of continued concern. Recent CBP guidance issued on October 17, 2023, reiterated, " absent an articulable safety or security concern, all members of a family unit should be housed together to the greatest extent operationally feasible..."  and " if members of a family unit are housed separately within a facility, they should be placed together

16

for visitation for at least 1 hour, at least three times within a 24-hour period.   This

contact must also be documented."  Future site visits by the JCM will include

monitoring of implementation of the CBP October guidance.

## Nutrition

The Settlement requires that CBP ensure that children have access to age-

appropriate meals and snacks that meet their daily nutritional needs. Water and

adequate hydration are also mandated by the Settlement.

## Current Observations

Site visits and interviews with families, children held separately from their

parents, and UCs, documented that water and snacks were always available soon

after apprehension through their time in CBP custody.  During all site visits to the

JPFs, infant formula, bottled water, and mixing instructions were readily

available.  Packets of pureed fruits and vegetables were also available at the JPFs.

UCs had ready access to fruits at all times.  Reports regarding the quality of the

food remain variable.  The lack of menu variety was an issue for families held for

longer than 4-5 days.  However, at both El Paso and Donna, the JCM heard few

complaints about the quality of food and heard many compliments about the

quantity and quality of the snacks.

**Assessment**

The primary nutritional concern remains the continued practice of providing young children (2-5 years) with adult meals.  During this reporting period, the menus for both RGV and El Paso still did not include age-appropriate foods for 2-5-year-olds, however, menus have been developed and a contract has been approved with a delivery date of May 7, 2024 for both RGV and El Paso.

## **Warmth, Garments, and Sleep**

**Current Observations**

The JPFs continue to be in compliance with the temperature requirements of the Settlement.  However, as noted in prior JCM reports, many children feel cold at the lower end of the allowable temperature range.  However, there remains relatively poor communication with parents regarding the availability of warm clothing if needed by their children.  During the January and February trips, there were few complaints about temperature, but in a few cases unaccompanied children had appeared cold. When asked if they were cold, the children answered in the affirmative, but were unaware that they could ask for additional clothing.  In one case, the child had been cold at night and the mother took off her sweatshirt to wrap her child.  She was told she could not have another sweatshirt but was not informed that she could ask for additional clothing for her child.

18

**Assessment**

Greater efforts should be made to make additional clothing available and to ensure
that parents and children are informed that additional garments are available when
needed.  In addition, caregivers should receive additional training regarding their
role in providing additional clothing.

**<u>Sleep</u>**

The Settlement requires that CBP make efforts to create custodial conditions
that are compatible with adequate sleep.

**Current Conditions**

As in more recent visits, site visits and interviews confirmed that in both sector
JPFs, all UCs and families had been provided with a sleeping mat and mylar
blanket.  The census in both sectors had fallen to where there was no
overcrowding, generally the greatest impediment to the sleep environment.
Although the lights still cannot be dimmed in Donna there were no complaints.
Adequate sleeping mats and spacing between the families and the unaccompanied
minors in custody was observed.

19

**<u>Hygiene and Sanitation</u>**

The CBP Settlement outlines a series of hygiene and sanitation requirements for all children entering CBP custody.  Showers are to be provided soon after arrival at the JPF and again at 48-hour intervals. Toothbrushes should be provided daily and also upon request.

**Current Observations**

During January and February, the comments on sanitation and showers were uniformly favorable.  Caregivers appeared to be responsive and understood their role in facilitating showers.

## V.     CAREGIVERS

The CBP Settlement requires that CBP develop a caregiver program directed at providing a variety of direct custodial care services to children in CBP custody. The CBP Settlement requires that CBP develop a caregiver program directed at providing a variety of direct custodial care services to children in CBP custody, including helping parents as well as providing activities for children.

As noted in the prior reports, CBP is meeting the Settlement's requirements regarding the caregiver program.  However, there remain important opportunities

20

for improvement.  The major benefits of the caregiver program have been reviewed in prior JCM reports. Since the last report, there have been significant increases in the number of caregivers, and OCMO has released a January Statement of Work with detailed and specific requirements.  More details on staffing and implementation of the Statement of Work will be included in future reports.

**Current Observations**

Site visits and interviews with minors confirmed that there was significant variation in the extent to which caregivers affirmatively interacted with the families in order to help with child needs directly or for parents, and to supervise child-focused activities.  Caregivers were hesitant about interaction with the families and were not clear about their responsibilities to communicate with the CBP personnel, when the children or families wish to visit other family members, use the telephone, or go for medical advice.

In El Paso, caregivers were actively engaged with unaccompanied children inside the pods.  However, no caregivers were inside the family pods.  At Donna, the caregivers uniformly sat at a desk outside the rooms and stated they were not

allowed to go inside the pods.  (Tender-age children were in a protected open area
with caregivers inside).

**Assessment**

There continues to be variation in caregiver function with mixed understanding of
the caregiver role in the different facilities.  Many of the caregivers are new to the
position. Training and direction must be uniform, consistent and ongoing.

The Office of Health Security, Department of Homeland Security, has established a
Child Welfare Specialist Program (CWSP) which is intended to provide additional
guidance for continued improvements in the caregiver program.  In addition,
OCMO has enhanced its commitment to improving both CBP's caregiver program
and trauma-informed care efforts.

## VI.    TRAUMA-INFORMED CARE AND CHILD-APPROPRIATE ENVIRONMENT

The Settlement mandates that the JPFs implement care strategies that attend to the
emotional and psychological challenges that migrant children confront both before
and during CBP custody.  Recognizing the potential that children in CBP care may
have experienced trauma in their home communities, on their journey, and while in
custody, the Settlement calls upon CBP to make efforts to foster reassurance,
resilience, and psychological well-being. (See Section VII.3.D.7 and Section

VII.8.B8 in the Settlement).  Feeling secure and safe, having the ability to rest and play, to contact sponsors and to know the next steps of the journey (especially for unaccompanied children) are all components of a trauma-informed, child appropriate environment.

**Current Observations**

Interviews with UCs and families continue to confirm that all felt physically safe while in CBP custody and reported having been treated professionally by CBP personnel and contractors.

Of note, the JCM interviewed unaccompanied children in Donna, who were unaware of their right, or unable to make phone calls.  The children consistently expressed anxiety because of lack of information on where they were going.

**Assessment**

CBP has been effective in fostering the belief by the children and families that they are physically safe, and have been treated appropriately.  In order to accomplish the goals of reassurance, and psychological well-being, more emphasis on communication with children and families is necessary.  As noted in prior sections of this report, the beneficial caregiver program although expanded ,

has been inconsistent in providing supportive interactions with the children and families.  Caregiver training on communication elements, including the right of unaccompanied minors to telephone calls, is critical to successfully implementing trauma-informed custodial care.

## VII.   ENHANCED MEDICAL SUPPORT

The Settlement requires a robust medical care system for juveniles in CBP custody. CBP has addressed this requirement by deploying contracted medical teams in the RGV and El Paso JPFs and any other facilities housing children.  These teams include an advanced medical practitioner (either a nurse practitioner or physician assistant) and 2-3 medical support personnel, usually medical assistants or emergency medical technicians.  These teams are required to be present 24 hours a day, 7 days a week.  In addition to the on-site medical teams, supervising physicians, including pediatricians, are assigned in each sector to provide on-call consultation, clinical protocol development, and quality assurance reviews.

JCM monitoring has focused not only on whether the required medical system is in fact present in the JPFs but also on the system's performance in providing quality medical services to children in CBP custody.

Prior JCM reports have attempted to elevate those elements of the CBP medical

care system that required urgent improvement.  These are summarized as falling

into three general strategies:

- The reduction of medical risk in CBP facilities;

- Enhanced pediatric consultation and enhanced medical monitoring of children at elevated medical risk while in CBP custody;

- Improved conveyance of medical information among CBP personnel, contracted health providers, and subsequent medical providers.

During the first three months of this term, the JCM and Medical Advisor have

focused on acquiring the background and information required to understand the

present status of this complex medical system.  This report overall finds a

maintenance of the conditions found in the prior report.  Over the next three

months, the JCM, Medical Advisor, and Medical Expert anticipate reviewing the

new medical protocols and QA plans developed by OCMO and their

implementation, in order to reach a conclusion on the robust operation of the

complex medical system required by the Settlement.


**<u>The Reduction of Medical Risk in CBP Facilities</u>**

Prior JCM reports have suggested that CBP could take steps to reduce the clinical

burden on its medical system by expediting the disposition of children at

significantly elevated medical risk.   The ability to reduce the level of medical risk among the juvenile population in CBP custody has, in turn, three requirements: 1) the identification of children at elevated medical risk; 2) alerting CBP personnel of the presence of a child at increased medical risk; 3) enhanced pediatric consultation and monitoring of children at elevated medical risk while in CBP custody.

## Identification of Children at Elevated Medical Risk

Prior JCM reports have emphasized the importance of accurately identifying children at elevated medical risk upon entry into CBP custody.  It has been a longstanding CBP protocol to administer an initial medical assessment to all juveniles entering CBP custody.  OCMO has recently implemented a protocol to help ensure that the examining medical personnel assess elevated risk in a more complete and standardized format.  This protocol also requires direct consultation with a supervising pediatrician whenever a child with a potentially elevated risk diagnosis was identified. The prior JCM report recognized that while this protocol had been distributed to the contracted CBP medical staff, its use was variable. The report recommended enhanced training of contracted medical staff and stronger accountability mechanisms to ensure the protocol's complete implementation.

**Current Observations**

Identification of children at increased medical risk and communication of this to CBP has been improving over the course of January and February monitoring visits.  Medical staff in El Paso (mid-February) were referring to printed lists of the OCMO EMM conditions. In RGV (end of February), medical personnel stated that the conditions of concern were automatically flagged in the EMR.

**Assessment**

JCM site visits in January and February confirmed that the identification of elevated risk protocol was in use in the JPF medical units.  Further monitoring is required to ensure the systematic and full implementation of these protocols.

**Conveying Essential Medical Information to CBP**

It is essential that medical providers convey information regarding children at increased medical risk to appropriate CBP personnel. CBP is ultimately responsible for the well-being of all individuals in their custody and should know when a child at elevated medical risk enters their custody.

Prior JCM reports noted the lack of a standard mechanism by which medical personnel communicated with CBP operators regarding the medical status of

27

children in custody.  Prior reports indicated the need for a means by which medical personnel could alert CBP leadership in the JPF that a child at elevated medical risk, but not in acute distress, was in custody.

## Current Observations

During January and February interviews, medical staff and CBP personnel confirmed that CBP personnel was alerted by medical staff if a child was at elevated risk. Communication of medical risk between the medical providers and CBP seemed to be primarily by verbal notification in mid-February; while at the end of February, this information appeared to be going into the CBP electronic system directly.

## Assessment

The system still appears to be in transition while developing a digital mechanism for medical personnel to place an alert on the child's computer-based CBP record. Further monitoring is required to ensure the systematic and full implementation of these protocols.

## Pediatric Consultation of Children Identified at Elevated Medical Risk while in CBP Custody

Identification of children at elevated medical risk requires direct consultation with a supervising pediatrician whenever a child with a potentially elevated risk diagnosis is identified or there is a question of risk.

### Current Observations

Interviews with medical staff reported that the supervising pediatricians were now more responsive to the medical staff's consultative phone calls. However, some medical providers reported the on-call physicians sometimes appeared burdened by the number of calls.

### Assessment

These improvements, while promising, will require further assessment of the strength of OCMOs monitoring protocols and a robust QA system.

## Enhanced Medical Monitoring

Children at elevated medical risk require enhanced monitoring of their medical condition.  Early JCM reports documented a worrisome absence of a systematic approach to monitoring children at elevated medical risk. JCM site visits during

29

this reporting period found an Enhanced Medical Monitoring (EMM) protocol for the JPFs which provided guidelines for whom EMM was required and the nature and frequency of the monitoring.  Children placed in EMM status (in isolation or not), were to be checked by EMM personnel every 4 hours.

**Current Observations**

Children were placed in two different areas with EMM status, isolation for ongoing febrile communicable disease, and other areas for non-febrile diagnoses. During the site visit to El Paso, there were no children with EMM and non-communicable disease. There were 3 unaccompanied children in isolation with flu. One was cold and unaware that she could ask for warm clothing.  Two were unaware that they could make a phone call.  Caregivers were outside the cells and stated they would call medical if asked or they observed an issue (such as vomiting), however, they did not offer warm clothing.  Caregivers stated that CBP was in charge of phone calls.

Medical personnel indicated that there was contradictory directive regarding use of foreign medications, as well as a delay in obtaining needed medications.

30

**Assessment**

The EMM program has been developed and is in operation.  The system has improved.  Medication protocols need to be more standardly implemented.  Ongoing monitoring is vital to ensure an effective system.

**<u>Strengthened Procedures for Referral to Local Medical Facilities</u>**

One of the most important components of the CBP medical system is the ability to transfer ill individuals to local health facilities for more definitive care.  Prior JCM reports noted that interviews with medical providers revealed that on occasion, the medical decision to transfer a patient to a local health facility had been questioned by CBP personnel.

Interviews during this reporting period suggested that CBP personnel have been overall  responsive to medical requests for transfer and have facilitated transfers in a timely manner without questioning medical decision-making.

**<u>Disciplined Conveyance of Medical Information Among Health Providers</u>**

All high-quality medical systems have mechanisms that ensure that essential medical information is conveyed to all personnel and institutions with

31

responsibility for patient care. Prior JCM reports have noted a lack of such mechanisms within the CBP medical system.

These issues were not able to be assessed in the January and February site visits. These issues will be addressed in the next Report.

## Ensuring Hospital Records are Conveyed to CBP Medical Personnel

High-quality medical systems ensure that a record of the evaluation and treatment of a patient referred to another health provider be transmitted back to the original referring medical provider.  Prior JCM reports identified a lack of a consistent mechanism to ensure that this communication actually occurred.

Site visits during this reporting period were not able to adequately assess this issue. This issue will be addressed in the next report.

## Conveyance of Medical Information from CBP to the Office of Refugee Resettlement (ORR) or a Child's Parents or Guardian

It is essential that ORR receive relevant medical information regarding the conditions and management of UCs while in CBP custody.  Prior JCM reports

noted that while the conveyance of information to ORR appears to have improved, some inconsistencies in the medical reporting system appeared to persist.

Prior JCM reports have recommended that parents or guardians of children at elevated medical risk should be provided with medical summary sheets that include diagnoses, medications, and other pertinent medical information prior to transfer out of CBP custody.  Prior site visits found that some parents have been provided with summary medical sheets while most have not.

Interviews during this reporting period did not assess these important issues. These issues will be addressed in the next Report.

**Medical Referrals for Children at Elevated Medical Risk in Families Being Released into the United States**

Prior JCM reports have emphasized the need for CBP to ensure appropriate referral for those few children at significantly elevated risk who require specialized care soon after release.  This referral capability would help ensure that children at elevated medical risk do not deteriorate soon after release from CBP custody.

This is an important issue that the JCM will address in a later report.

**<u>Improvement Required in the Medical Quality Assurance Program</u>**

Prior JCM reports have underscored the urgent need to improve CBP's medical
quality assurance program.  Virtually all of the JCM's medical concerns and
recommendations should have been addressed by an effective quality assurance
program.

OCMO continues to create relevant metrics and datasets, including the enhanced
use of the existing electronic medical record for quality assurance purposes.

The JCM, Medical Advisor and Medical Expert look forward to reviewing these
metrics, datasets and EMR enhancements and their influence on maintaining a
continued quality assessment of care.

34

**CERTIFICATE OF SERVICE**

Case No. CV 85-4544- DMG (AGRx)

I am a citizen of the United States. My business address is 250 Sixth Street, Suite 205, Santa Monica, California 90401 . I am over the age of 18 years, and not a party to the within action.

I hereby certify that on May 6, 2024, I electronically filed the following documents with the Clerk of the Court for the United States District Court, Eastern District of California by using the CM/ECF system:

**NOTICE OF FILING OF JUVENILE CARE MONITOR REPORT BY ANDREA S. ORDIN**

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the United States the foregoing is true and correct. Executed on May 6, 2024, at Los Angeles, California.


Jeff Thomson