CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Carlos R. Holguín (Cal. Bar No. 90754)
Sarah E. Kahn (Cal. Bar No. 341901)
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Email: crholguin@centerforhumanrights.org

*Attorneys for Plaintiffs*

*Additional counsel listed on following page*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*, | No. CV 85-4544-DMG-AGRx |
| Plaintiffs, | PLAINTIFFS' RESPONSE TO CBP JUVENILE COORDINATOR REPORT ON OPEN-AIR DETENTION SITES |
| v. | |
| MERRICK GARLAND, Attorney General of the United States, *et al.*, | JUDGE: Hon. Dolly M. Gee |
| Defendants. | |

1

NATIONAL CENTER FOR YOUTH LAW
2
Mishan Wroe (Cal. Bar No. 299296)
Diane de Gramont (Cal. Bar No. 324360)
3
1212 Broadway, Suite 600
4
Oakland, CA 94612
Telephone: (510) 835-8098
5
Email: mwroe@youthlaw.org

6

NATIONAL CENTER FOR YOUTH LAW
7
Rebecca Wolozin (admitted *pro hac vice*)
8
818 Connecticut Ave. NW, Suite 425
Washington, DC 20006
9
Telephone: (202) 868-4792
Email: bwolozin@youthlaw.org
10

11
CHILDREN'S RIGHTS
12
Leecia Welch (Cal. Bar No. 208741)
2021 Fillmore Street
13
San Francisco, CA 94115
14
Telephone: (415) 602-5202
Email: lwelch@childrensrights.org

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.      Introduction

Since at least February 2023, U.S. Customs and Border Protection ("CBP")
has held children in horrific conditions at open-air detention sites ("OADS") along
the U.S. border without providing basic sanitation services, medical assistance,
shelter, or adequate food and water. Pls.' Mot. to Enforce Settlement Re Open-Air
Detention Sites at 2-6 [Doc # 1392-1] ("Plaintiffs' MTE").

On February 29, 2024, Plaintiffs moved to enforce the *Flores* Settlement
Agreement ("Settlement" or "FSA") due to CBP's prolonged detention of children
in unsafe and unsanitary conditions at OADS. *See* Plaintiffs' MTE. On April 3,
2024, this Court partially granted Plaintiffs' motion, finding that children at OADS
are "in the legal custody of CBP because CBP exerts control over their health,
welfare, and physical movement." Order re Pls.' Mot. to Enforce Settlement Re
Open Air Detention Sites, at 9 [Doc. # 1406] (April 3, 2024) ("Order").
Accordingly, this Court ruled children detained at OADS are *Flores* class members
and that conditions at OADS violate the Settlement's requirement that the
government hold children in "safe and sanitary" facilities. *Id.* at 11-12; *see* FSA ¶
12.A. The Court ordered CBP to "expeditiously process all Class Members" and
"place Class Members in facilities that are safe and sanitary and consistent with
DHS's concern for the particular vulnerability of minors." *Id.* at 11. The Court
further ordered CBP to "cease directing minors to open-air sites or holding minors
in open-air sites, except for the amount of time DHS reasonably requires to prepare
the minor and/or actively arrange for transport of the minor to a more suitable
facility, as this behavior constitutes unnecessary delay." *Id.* at 11-12. Lastly, the
Court ordered CBP's Juvenile Coordinator to maintain information about detention
of children at OADS and provide the Court with a report to assess the status of
CBP's compliance with the Order. *Id.* at 12. The Juvenile Coordinator filed his
report on May 17, 2024. [Doc. # 1413, Doc # 1413-1] ("JC Report").

As evidenced by declarations from class members, their parents, and

advocates gathered since April 3, 2024, CBP has not complied with this Court's

order to expeditiously process children and cease directing or holding children at

OADS "except for the amount of time DHS reasonably requires" to prepare to

transport the child. *See* Order at 12. Contrary to the statements in the JC Report,

CBP continues to direct children to wait at OADS, where children often stay for

several hours and sometimes overnight, while they await transport. In several

instances, class members, their parents, and advocates have observed children

awaiting transport at OADS while CBP seemingly fails to take any steps to prepare

minors for transport.

The JC Report acknowledges the uncontroverted evidence that OADS

remain unsafe in violation of Settlement paragraph 12.A. yet fails to demonstrate

CBP's compliance with the Court's order. *See* JC Report at 4, 10-11 (describing

lack of basic services and a hazardous environment created by a lack of shade and

extreme temperatures). CBP has not significantly increased services at the OADS

and still fails to provide shelter, food, or water consistently to class members

waiting in OADS for processing.

Finally, in violation of the Court's order, the Juvenile Coordinator failed to

maintain or provide information about how many children have been detained at

OADS, and for how long. A one-day visit where no class members were observed

is insufficient to comply with the Court's order. Plaintiffs therefore respectfully

request the Court order the Juvenile Coordinator to conduct additional monitoring

and submit a report in June 2024 assessing CBP's compliance with the Order.

## II.   CBP Continues to Detain Class Members in Unsafe and Unsanitary OADS for Prolonged Periods

CBP continues to (1) direct children to OADS, (2) instruct them to remain at

OADS to await processing, and (3) detain children in OADS for unsafe periods of

time, including overnight. Moreover, the Juvenile Coordinator's report

acknowledges that OADS continue to be unsafe and unsanitary, conditions which class members, their parents, and advocates also confirm.

**A. CBP continues to direct children to OADS and instruct children to wait in OADS for processing.**

Since April 3rd, CBP has violated the Court's order that it "cease directing minors to open-air sites . . . except for the amount of time DHS reasonably requires to prepare the minor and/or actively arrange for transport." Order at 11-12. Class members and their parents continue to report that Border Patrol agents directed them to go to and wait at OADS. *See* Exhibit 1, Declaration of KPR ¶ 6, April 30, 2024 ["KPR Decl."] ("The border patrol lit the path for us and took us to a campsite. They stopped us there and they told us that if we walked any farther they would deport us."); Exhibit 2, Declaration of AFBA ¶ 4, April 30, 2024 ["AFBA Decl."] ("We walked for about five hours . . . a Border Patrol agent found us and told us to go and wait at a camp that was about 100 meters away."); Exhibit 3, Declaration of Julian Silva ¶ 4, May 13, 2024 ["Silva Decl."] ("After I crossed the border, I saw a Border Patrol agent. The agent directed us to go to this site."); Exhibit 4, Declaration of Saba Karamat ¶ 5, May 13, 2024 ["Karamat Decl."] ("After we crossed, we saw a border patrol officer and he told us to follow the wall to get to this site."); *see also* Exhibit 5, Declaration of Blaine Bookey ¶ 9, April 15, 2024 ["Bookey Decl."]; Exhibit 6, Declaration of Erika Pinheiro ¶ 7, May 15, 2024 ["Pinheiro Decl."]; Exhibit 8, Declaration of Adriana Jasso ¶¶ 7-8, May 16, 2024 ["Jasso Decl."]; Exhibit 11, Declaration of Lilian Serrano ¶¶ 5-6, 8-9, May 17, 2024 ["Serrano Decl."] (describing a child who fell from the border wall and hurt his ankle but was directed by CBP to walk to Whiskey 8 where he waited, in pain, for about six hours without medical attention).

The Juvenile Coordinator's statement that "[a]t the time of [his] visit, SDC informed [him] that they do not have a policy or practice of directing individuals to these locations, nor requiring them to stay at these areas" is insufficient to

3

1   contradict the significant evidence of this practice in Plaintiffs' MTE, and the

2   statements of class members and their parents since the Court's order. *See* JC

3   Report at 3; *Flores v. Sessions*, 394 F. Supp. 3d 1041, 1054 (C.D. Cal. 2017)

4   (explaining that CBP declarations "generally discuss the policies and practices at

5   the CBP stations" but "[n]one of this generalized evidence . . . undermines the

6   veracity of Plaintiffs' first-hand experiences.").

7       **B. CBP detains class members at OADS without actively arranging to**

8          **transport them.**

9       Border Patrol agents continue to direct class members to wait at OADS and

10  monitor them while they wait, but seemingly do nothing to "prepare the minor

11  and/or actively arrange for transport." Order at 11-12; *see, e.g.*, KPR Decl. ¶ 7

12  ("Border Patrol would come by the campsite and then they would leave, but they

13  wouldn't take any of us out . . . They told us we would have to wait there for two

14  days."); Karamat Decl. ¶ 5 ("[Border Patrol] told us to follow the wall to get to this

15  site . . . We arrived here around 2:30 am . . . [i]t's 7:20 am and we haven't seen any

16  officers yet."); Bookey Decl. ¶¶ 14-17 ("Between 12:40pm and 4:30pm, I did not

17  observe Border Patrol agents taking any steps to prepare the family for transport.");

18  Exhibit 9, Declaration of Dulce Rodas ¶ 10, May 14, 2024 ["Rodas Decl."];

19  Serrano Decl. ¶¶ 6, 8. Border Patrol agents have been seen parked within proximity

20  of OADS and driving by or through OADS where children have been directed to

21  wait, without stopping to speak to children or prepare them to be transported. *See*

22  Exhibit 10, Declaration of Melissa Adamson ¶ 24, May 16, 2024 ["Adamson

23  Decl."]; Pinheiro Decl. ¶ 10; Jasso Decl. ¶¶ 7-9. On more than one occasion since

24  April 3, 2024, Border Patrol has been observed ordering children "to line up in an

25  area with no shade [then] leave the OADS, only to come back several hours later to

26  transport the individuals out." Pinheiro Decl. ¶ 8. Additionally, advocates reported

27  multiple instances of CBP transporting single adults from OADS before families.

28  *See* Jasso Decl. ¶¶ 7, 9, 11; Serrano Decl. ¶ 6; *contra* JC Report at 1. The JC

Report's unsupported statement that CBP expeditiously transports children to be processed is clearly refuted by class members, their parents, and advocates who provide humanitarian assistance at the OADS regularly. *See* JC Report at 15.

Plaintiffs strongly disagree with the JC Report's determination that "expeditious" processing occurs when a child is transported within six hours *of their field interview* at OADS. Starting the clock at the field interview despite how long a child may have been detained at the OADS prior to that interview misrepresents class members' length of detention at OADS and is unsupported by the Court's order. *See* JC Report at 15, 17; Order at 11-12. The JC Report contains insufficient and inaccurate information to support its statement that six hours is currently "the time USBP reasonably requires to prepare the child and arrange for transport." JC Report at 17. For example, the JC Report cites the availability of children's car seats as a transportation issue that causes delay, *see* JC Report at 15, but advocates who are at OADS multiple times a week report that they "have never seen agents use car seats" to transport children from OADS. *See* Jasso Decl. ¶ 10; *see also* Adamson Decl. ¶¶ 11, 16 (Plaintiffs' counsel witnessed Border Patrol transport an infant on his mother's lap in a van, even though that family had been directed to the Whiskey 8 OADS approximately six hours earlier).

Even if CBP needed six hours to "expeditiously" transport children from OADS, the Juvenile Coordinator miscalculates children's length of time in custody by measuring from the time of the field interview and therefore fails to demonstrate expeditious processing. JC Report at 15 n.1. As DHS represented to the Supreme Court, a field interview is not required for custody to begin. *See* Reply in Supp. of Appl. to Vacate the Inj. Pending Appeal, *DHS v. Texas*, No. 23A607, 2024 WL 145108, at **6-8, 19 (U.S. Jan. 10, 2024) ("the noncitizens were apprehended as they exited the river: They were not free to proceed further into the United States on their own, but were directed to a staging area for further evaluation and processing,"); *see also* Pls.' Reply in support of its Mot. to Enforce

Settlement re Open-Air Detention Sites, [Doc. # 1399], Section II.B.1. Some class members wait in OADS at CBP direction for hours—and sometimes overnight—before CBP conducts a field interview, which may *only* occur immediately before the child is transported. *See* Karamat Decl. ¶ 5; Adamson Decl. ¶ 11, 14-17 (describing field interviews occurring in the minutes prior to transportation for family who had been at the Whiskey 8 OADS for approximately six hours); KPR Decl. ¶¶ 6-7; AFBA Decl. ¶¶ 4-5; Pinheiro Decl. ¶¶ 9-12, 15-22, 24 (describing prolonged periods during which children were detained at OADS in April and May, including "two infants under 1 year old [who] waited for 24 hours"); Jasso Decl. ¶¶ 7-10.

The Juvenile Coordinator admits that CBP informs migrants they "will be transported to a CBP facility to be processed if they wait at an [OADS] for pick up," yet fails to report whether CBP then processes class members expeditiously *beginning at that point*. *See* JC Report at 4. Class members directed to go to or wait at OADS are often in custody long before the start of the field interview "because CBP exerts control over the[ ] health, welfare, and physical movement" of children at OADS. *See* Order at 9; *see* Pls.' MTE at Section III.A.1 (arguing CBP has custody of noncitizen children from the moment of first discovery). The Juvenile Coordinator cannot reliably state that CBP expeditiously processes children at OADS if the calculation for time in custody omits the many hours some children wait at OADS—at CBP direction—prior to their field interview.

**C. The Juvenile Coordinator Report acknowledges OADS are unsafe and unsanitary.**

This Court held the conditions at OADS violate the Settlement's requirement that CBP "hold minors in facilities that are safe and sanitary." Order at 10 (citing FSA ¶ 12.A) ("The limited number of dumpsters and porta-potties do not seem to be serviced frequently enough and are overflowing and unusable as a result . . . Class Members are forced to relieve themselves outdoors"). The Juvenile

1   Coordinator acknowledges that conditions at OADS continue to be unsafe and

2   unsanitary. As the JC Report conveys, some of the OADS lack drinking water,

3   porta-potties, hand washing stations, or dumpsters. JC Report at 4. At Whiskey 8,

4   near the San Diego Port of Entry, migrants depend on non-governmental

5   organizations for food. *See id.* Tower 177, an OADS in the Jacumba area, is

6   "incredibly remote," with "no shade for migrants, creating a hazardous desert

7   environment." *Id.* at 11. Temperatures in Jacumba area OADS "can reach up to

8   115º Fahrenheit during the summer." *Id.* Even accepting as true the general

9   statement that CBP transports class members within six hours of their field

10  interview at OADS, *see id.* at 16, the JC Report admits that class members may

11  wait in OADS, with no shade, food, water, or basic sanitation services, for six

12  hours, *see id.* at 4, 10.

13          Class members continue to describe dangerous conditions that persist at

14  OADS after the Court's order. *See* KPR Decl. ¶ 6 (12-year-old boy describing

15  "very cold" conditions at OADS where he had to wait overnight); Exhibit 7,

16  Declaration of JAF ¶ 4, April 29, 2024 (14-year-old girl stating that she stayed at

17  OADS overnight and CBP provided no food); AFBA Decl. ¶ 4 (11-year-old boy

18  describing waiting for 5-6 hours at OADS with "no food"). Parents of young class

19  members also report unsafe and unsanitary conditions. *See* Silva Decl. ¶¶ 6-7

20  (father of 6-year-old girl at Jacumba-area OADS stating that it was "very hot" and

21  that "the only shelter here is made of thin tarps tied to scrap metal, plastic, and

22  stones."); Karamat Decl. ¶¶ 6-8 (mother of 7-month-old baby describing lack of

23  sanitation at Whiskey 8, and that the only aid they received was from volunteers).

24          Advocates on the ground at OADS report that "CBP has not significantly

25  increased services at the OADS since the Court's order and is still not providing

26  shelter, food, or water consistently to migrants waiting in OADS for processing."

27  Pinheiro Decl. ¶ 27; Jasso Decl. ¶ 14; Serrano Decl. ¶ 10; *see also* Rodas Decl. ¶ 7

28  (describing no portable toilets, food, shelter, or water at the Tierra del Sol OADS

where at least 25 children were detained). The basic services CBP has provided, such as water tanks and porta-potties, are not consistently serviced. Pinheiro Decl. ¶¶ 14, 23-24 (reports of water tasting like plastic and at Moon Valley OADS, a water tank had been empty for 11 days, and porta-potties were "unusable"); Jasso Decl. ¶ 13 (woman at Whiskey 8 complained of "severe abdominal pain after drinking the water"). At the Whiskey 8 OADS, Plaintiffs' counsel observed that class members had limited shelter (made from tarps) to protect from rain, sun, and the thick swarm of bugs. *See* Adamson Decl. ¶¶ 6, 9, 12. At the Moon Valley OADS, Plaintiffs' counsel distributed food to class members, which was the only food available at the time. *Id.* ¶¶ 21; Silva Decl. ¶ 7. The conditions at OADS are unsafe for children, even for short periods, exemplifying the importance of CBP's compliance with this Court's order.

### III.   The Juvenile Coordinator's Report Fails to Provide Information Necessary to Establish Compliance with the Court's Order

The Court's order mandated that "the CBP Juvenile Coordinator shall (a) maintain records and statistical information on minors held in CBP custody for more than 72 hours, *inclusive of* the amount of time any Class Member spends in the open-air sites; and (b) monitor compliance with the Agreement with respect to any minors held in open-air sites." Order at 12. Additionally, the Juvenile Coordinator was ordered to "provide the Court with an update regarding the number of minors held in open-air sites and the status of compliance with this Order." *Id.* However, the Juvenile Coordinator did not collect or provide data about children's detention at OADS and monitored compliance with the Order by visiting OADS on only one day during which he spoke to no class members. The Juvenile Coordinator's general assertions of CBP compliance is unpersuasive in the face of abundant evidence showing otherwise.

**A. The Juvenile Coordinator did not maintain or provide information about when, and for how long, CBP detains children at OADS.**

The JC Report failed to provide basic information the Court requested. First, the Juvenile Coordinator did not inform the Court of how many class members CBP has held at OADS since the Order, despite acknowledging that CBP monitors the presence of people at OADS through surveillance cameras and patrolling agents. JC Report at 4. Second, the JC Report does not provide any information about how long class members are detained at OADS. *See generally id.* Even using CBP's own six-hour time frame, the JC Report does not state how many class members were transported from OADS within six hours of the field interview, and how many were detained at OADS for longer periods. *See generally id.* The Juvenile Coordinator failed to provide these critical pieces of information to the Court despite CBP's previous attestation that it collects this data about people at OADS. *See* Declaration of Brent L. Schwerdtfeger in support of Defs.' Opp. to Pls.' Mot. to Enforce ¶ 2 [Doc. # 1398-1], March 15, 2024 ("I also receive reports pertaining to encounters of large groups . . . , including the number of individuals . . . , the location where the large group was encountered, and, . . . the length of time such individuals remained in the field before transport to a detention facility.").

**B. The Juvenile Coordinator did not adequately monitor class members' detention in OADS during the reporting period.**

The Juvenile Coordinator's single visit to OADS was insufficient to comply with the order to "provide the Court with an update regarding . . . the status of compliance with [the April 3rd] Order." Order at 12. The Juvenile Coordinator visited four OADS on only one day and "observed no class members." JC Report at 1. The JC Report does not state at what time of day he visited these sites or how long he stayed at each site. *See generally id.* There is no evidence in the JC Report that he gathered information about class members' presence at the different OADS

during the period between April 3, 2024 and the date of his visit, apart from one

vague reference to unaccompanied children who were processed on April 25, 2024.

*See generally id.*; *id.* at 16-17. Class members' wait times at OADS decreased

significantly immediately following the filing of Plaintiffs' MTE and the Court's

order but began to increase again around April 12-14. *See* Pinheiro Decl. ¶ 6; Jasso

Decl. ¶ 6. The fluctuation in the length of detention at OADS illustrates the

necessity of gathering information over a long span of time, not just one day.

Moreover, it is somewhat unsurprising that the Juvenile Coordinator observed no

class members during his one-day visit to OADS, as this Court's order

acknowledged that "Plaintiffs have submitted evidence that CBP finds the ability

to process children more efficiently in times of scrutiny." Order at 11.

## IV. Plaintiffs recommend additional Juvenile Coordinator reporting that complies with the Court's order.

As explained above, CBP has failed to establish compliance with this

Court's order regarding *Flores* class members held at OADS. The JC Report did

not provide an update on the number of children at OADS, when and for how long

CBP detains them at OADS, or CBP's compliance with the Order. Moreover,

Plaintiffs have submitted further evidence that (1) CBP continues to direct class

members to wait at OADS for processing, (2) CBP seems to detain class members

at OADS without taking steps "to prepare the minor and/or actively arrange for

transport of the minor to a more suitable facility," and (3) OADS remain unsafe

and unsanitary in violation of the Settlement. Therefore, Plaintiffs request that the

Juvenile Coordinator be required to issue a new report in June 2024 that is

compliant with the Order.

Dated: May 17, 2024

CENTER FOR HUMAN RIGHTS AND
CONSTITUTIONAL LAW
Carlos R. Holguín
Sarah Kahn

NATIONAL CENTER FOR YOUTH LAW
Mishan Wroe
Diane de Gramont
Rebecca Wolozin

CHILDREN'S RIGHTS
Leecia Welch

/s/ Mishan Wroe
Mishan Wroe
*One of the Attorneys for Plaintiffs*

11