BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director
FIZZA BATOOL
JOSHUA C. MCCROSKEY
Trial Attorneys
District Court Section
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 616-4863
Fax: (202) 305-7000
Email: fizza.batool2@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MERRICK B. GARLAND, Attorney General of the United States, *et al.*,<br><br>Defendants. | Case No. 2:85-cv-04544-DMG<br><br>**REPLY IN SUPPORT OF MOTION TO TERMINATE THE FLORES SETTLEMENT AGREEMENT AS TO THE U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES**<br><br>Hearing Date: June 21, 2024<br>Time: 10:00 a.m.<br>Hon. Dolly M. Gee |

# **TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................1

II. ARGUMENT .....................................................................................................3

   A. Plaintiffs Misconstrue the Proper Legal Standards for Modification
      and Termination of the FSA ......................................................................3

   B. Modification and Termination of the FSA as to HHS is Warranted
      Under Rule 60(b)(5) ..................................................................................8

      1. Plaintiffs Cannot Dispute Significant, Unforeseen Changed
         Circumstances Warrant Modification and Termination of the FSA
         as to HHS..............................................................................................8

      2. The Foundational Rule Is Suitably Tailored to Significantly
         Changed Circumstances Related to Licensed Placements .................10

         a. The Foundational Rule Provides a Suitably Tailored Response
            to the Unavailability of Licensed Placements .........................11

         b. Plaintiffs' Concerns About Lack of Oversight in Texas and
            Florida Programs Are Unfounded .............................................12

         c. Plaintiffs' Argument that Modification and Termination of
            the FSA is "Premature" in the Absence of a Federal
            Licensing Rule Lacks Merit ......................................................15

         d. Modification and Termination, not Continued Enforcement,
            of the FSA as to HHS is in the Public Interest..........................16

   C. Plaintiffs' Assertions of Other Inconsistencies with the FSA are
      Incorrect...................................................................................................17

      1. Referrals from Remote Locations ......................................................17

      2. Secure and Heightened Supervision Facilities...................................18

      3. Out-of-Network Placements...............................................................19

i

D. Termination of the Agreement as to HHS is Consistent with the Ninth Circuit's Decision in *Flores II* ........................................................19

III. CONCLUSION ...............................................................................................21

CERTIFICATE OF SERVICE ..............................................................................23

# TABLE OF AUTHORITIES

## CASES

*Arlington Heights v. Metro. Hous. Dev. Corp.*,
   429 U.S. 252 (1977)................................................................... 4

*Flores v. Barr*,
   407 F.Supp.3d 909 (2019)........................................................... 7

*Flores v. Rosen*,
   ("*Flores II*"), 984 F.3d 720 (9th Cir. 2020) .................................*passim*

*Flores v. Sessions*,
   862 F.3d 863 (9th Cir. 2017) ....................................................... 2

*Freeman v. Pitts*,
   503 U.S. 467 (1992)................................................................... 7

*Frew ex rel. Frew v. Hawkins*,
   540 U.S. 431 (2004)..........................................................2, 5, 8, 12

*Hampton v. Mow Sun Wong*,
   426 U.S. 88 (1976)................................................................... 4

*Horne v. Flores*,
   557 U.S. 433 (2009)...........................................................*passim*

*Jackson v. Los Lunas Comm. Prog.*,
   880 F.3d 1176 (10th Cir. 2018) .....................................................12

*Jeff D. v. Otter*,
   643 F.3d 278 (9th Cir. 2011) ........................................................ 7

*Marshall v. Lansing*,
   839 F.2d 933 (3rd Cir. 1988).........................................................3

*Mathews v. Diaz*,
   426 U.S. 67 (1976)................................................................... 4

*Pigford v. Veneman*,
   292 F.3d 918 (D.C. Cir. 2002) ....................................................... 4

*Reno v. Flores*,
    507 U.S. 292 (1993) ................................................................... 3

*Rufo v. Inmates of Suffolk County Jail*,
    502 U.S. 367 (1992) ............................................................*passim*

*Smith v. Bd. of Educ. of Palestine-Wheatley Sch. Dist.*,
    769 F.3d 566 (8th Cir. 2014) ...................................................... 4

*Sys. Fed'n No. 91, Ry. Employees' Dep't, AFL-CIO v. Wright*,
    364 U.S. 642 (1961) .................................................................10

*United States v. California*,
    921 F.3d 865 (9th Cir. 2019) .....................................................10

*United States v. Swift & Co.*,
    286 U.S. 106 (1932) .................................................................10

**FEDERAL STATUTES**

6 U.S.C. § 279 ...........................................................................20

8 U.S.C. § 1232 .........................................................................20

8 U.S.C. § 1232(b)(3) ................................................................18

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 60(b)(5)........................................................*passim*

**FEDERAL REGULATIONS**

45 C.F.R. § 410............................................................................ 1

45 C.F.R. § 410.1101 .................................................................18

45 C.F.R. § 410.1105 .................................................................18

45 C.F.R. § 410.1303(e) .............................................................12

45 C.F.R. § 410.1303(g) .............................................................14

45 C.F.R. § 1001........................................................................19

iv

## FEDERAL REGISTER

*Unaccompanied Children Program Foundational Rule* ("*Foundational Rule*"), 89 Fed. Reg. 34,384 (Apr. 30, 2024) ...........................................................1, 15

# I. INTRODUCTION

Plaintiffs' Opposition to Defendants' Motion to Terminate the *Flores* Settlement Agreement ("FSA" or "Agreement") reveals that their objective is to maintain court jurisdiction over a federal agency that has been subject to judicial oversight pursuant to a settlement that is now 27 years old, even though the agency has adopted comprehensive regulations that are consistent with the FSA in every way possible. Plaintiffs provide no legal justification for continued court oversight once the Unaccompanied Children Program Foundational Rule ("Foundational Rule"), 89 Fed. Reg. 34,384 (Apr. 30, 2024) (to be codified at 45 C.F.R. pt. 410), goes into effect on July 1, 2024.

First, Plaintiffs do not dispute that the Foundational Rule provides numerous protections for unaccompanied children in addition to those implementing the FSA. In fact, they do not seek to enjoin the Rule or any parts of it—even those parts that they criticize. Instead, Plaintiffs principally focus on the decisions by Texas, Florida, and South Carolina to cease their licensing functions with respect to ORR-funded programs as the reason that the Court should continue oversight pursuant to the FSA.[1] But Plaintiffs do not and cannot seriously dispute that those state decisions in the context of the significant influx of unaccompanied children in recent years, constitute unforeseen and substantially changed circumstances that make compliance with the FSA's requirements for placement of children in state-licensed facilities substantially more "onerous," "unworkable," and "detrimental to the public interest." ECF No. 1414 at 18 (citing *Rufo*, 502 U.S. at 384). Through the Foundational Rule, ORR has developed a "suitably tailored" response to these changed circumstances that aims to ensure the safety and well-being of

---

[1] Currently, there are no delicensed programs in South Carolina; therefore, for the purposes of the instant Motion, Defendants focus on Texas and Florida, where most of ORR's bed capacity is located. ECF No. 1414 at 7-8.

unaccompanied children without causing extraordinary disruption to ORR-funded programs in Texas and Florida. *Rufo*, 502 U.S. at 383. Plaintiffs do not offer any alternative to the Foundational Rule requirements addressing those changed circumstances—except, presumably, decades more judicial oversight of an agency program that no longer requires it. Moreover, Plaintiffs fail to acknowledge that ORR should be accorded "latitude and substantial discretion" in how it chooses to address the unavailability of state licensure in states that refuse to license ORR-funded programs. *See Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 441-42 (2004).

Second, Plaintiffs identify three purported inconsistencies in the Foundational Rule, but they are incorrect. Except for the state licensed placement requirements of the FSA in relation to programs in states that refuse to license ORR-funded facilities, the Rule fully and consistently implements the FSA.

Finally, Plaintiffs assert that partial termination of the FSA as to the U.S. Department of Health and Human Services ("HHS") is impermissible, even though the Ninth Circuit has already held that partial termination of the FSA in relation to HHS is permitted. *Flores v. Rosen ("Flores II")*, 984 F.3d 720, 737 (9th Cir. 2020). The Ninth Circuit saw no reason to prevent HHS from moving to partially terminate the Agreement, and neither should this Court.

The FSA was designed as a temporary measure, to terminate by its own terms upon the issuance of implementing regulations. As the Ninth Circuit explained, the Agreement "would remain in effect until '45 days following [D]efendants' publication of final regulations' governing the treatment of detained minors." *Flores v. Sessions*, 862 F.3d 863, 869 (9th Cir. 2017); *see also* FSA ¶ 40. That time has come. It is no longer equitable or in the public interest for a substantial portion of the immigration system to be administered under a 27-year-old consent decree. The Foundational Rule is consistent with the Agreement (and exceeds its protections in multiple respects), and where it takes a modified approach, it provides a suitably tailored response. This Court should therefore terminate the FSA as to HHS.

## II. ARGUMENT

### A. Plaintiffs Misconstrue the Proper Legal Standards for Modification and Termination of the FSA.

Federal Rule of Civil Procedure 60(b)(5) provides that the Court may relieve a party from "a final judgment, order, or proceeding [if] applying [the consent decree] prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). This Rule allows "a court to modify or vacate a judgment or order if a significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest." *Horne v. Flores*, 557 U.S. 433, 447 (2009) (internal quotation marks omitted). Once a party carries its burden to show that changed circumstances warrant relief from a consent decree, the court must grant relief "in light of such changes." *Id.*; *accord Flores II*, 984 F.3d at 741. Where, as here, the government seeks changed-circumstance relief from an institutional reform decree, courts must apply a "flexible approach" to "ensure that responsibility for discharging the [government's] obligations is returned promptly to the [government] and its officials when the circumstances warrant." *Horne*, 557 U.S. at *Id.* at 448–50. Courts must consider "whether ongoing enforcement of the original order [is] supported by an ongoing violation of federal law." *Id.* at 454. If the government has implemented a "durable remedy," judicial oversight should cease. *Id.* at 450. The Foundational Rule is a durable remedy—it comports with federal law, is far more protective than the constitutional floor, and provides judicially enforceable legal requirements for HHS. *See Reno v. Flores*, 507 U.S. 292, 302 (1993) (upholding much less protective prior version of regulations against constitutional challenge); *Marshall v. Lansing*, 839 F.2d 933, 943 (3rd Cir. 1988) (stating that agency regulations "have the force of law").

Rule 60(b)(5) also permits a court to modify a decree if the modification is "suitably tailored" to resolve problems created by changed circumstances. *Rufo*, 502

U.S. at 383. When ordering modification, a court should "preserve the essence of the parties' bargain" and consider what each side gained from the consent decree. *Pigford v. Veneman*, 292 F.3d 918, 927 (D.C. Cir. 2002). "A court has the power to order a changed-circumstances modification that effectively terminates the decree." *Smith v. Bd. of Educ. of Palestine-Wheatley Sch. Dist.*, 769 F.3d 566, 573 (8th Cir. 2014). This approach requires deference to the responsible government officials "to resolve the intricacies of implementing a decree modification." *Rufo*, 502 U.S. at 392. Deference is particularly appropriate where the government seeks relief from orders or judgments concerning immigration. The Supreme Court has repeatedly recognized that it is appropriate for the Legislature or Executive, not the Judiciary, to determine how to respond to changed circumstances affecting immigration. *See Mathews v. Diaz*, 426 U.S. 67, 81 (1976); *see also Flores*, 507 U.S. at 305-06; *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268, n.18 (1977); *Hampton v. Mow Sun Wong*, 426 U.S. 88, 101, n.21 (1976). Here, as explained below in Section II.B.2, the Foundational Rule implements a suitably tailored response to Texas' and Florida's refusal to license ORR-funded programs. The parties agreed that the FSA would terminate once the government published regulations implementing the Agreement. Because HHS published consistent regulations to the extent feasible and provided a suitably tailored response to the changed circumstances, maintaining judicial supervision over HHS is no longer equitable. Thus, the Court should grant relief from the FSA's licensed program requirement and terminate the FSA as to HHS.

Plaintiffs do not apply the proper legal standards. As an initial matter, Plaintiffs summarily contend without explanation that complying with the FSA's licensed placements requirement is not "impossible" for ORR. ECF No. 1427 at 6 n.3. But a showing of "impossibility" is not the standard under the equitable prong of Rule 60(b)(5), and Plaintiffs cite no cases in support of that proposition. Modification may be granted where, as here, (1) "changed factual conditions make

compliance with the decree substantially more onerous;" (2) "a decree proves to be unworkable because of unforeseen obstacles;" or (3) "enforcement of the decree without modification would be detrimental to the public interest." *Rufo*, 502 U.S. at 384. For the reasons set forth in Defendants' Motion, ECF No. 1414 at 18-24, and below in Section II.B.1, Defendants have clearly made these showings. Moreover, Plaintiffs fail to acknowledge the deference due ORR's assessment of the operational implications of the decisions by Texas and Florida to cease state licensing. *See Rufo*, 502 U.S. at 392, n.14 (rejecting the idea that institutional concerns of government officials were "only marginally relevant" when the government seeks modification or termination of a consent decree).

In addition, in arguing that the Foundational Rule's "standard program" requirement is not suitably tailored to the changed circumstances resulting from certain states refusing to license ORR-funded facilities, Plaintiffs wrongly claim that "Defendants are not entitled to deference" because "[l]icensing was a central part of the Parties' bargain and HHS itself has concluded that additional rules on federal licensing are required." *Id.* at 11. First, at no time has HHS said that federal licensing is *required*. *See, infra,* Section II.B.2(c). It plainly is not.

Second, in *Frew*, 540 U.S. at 442, the Supreme Court recognized that separation of powers "require that [government] officials with front-line responsibility for administering the program be given latitude and substantial discretion" in carrying out those obligations. *Frew* in no way suggested that the government is not entitled to deference in how it responds to unforeseen changed circumstances. Here, the Foundational Rule responds to the de-licensing efforts of states by requiring ORR-funded programs in those states to continue to adhere to the states' licensing requirements and providing enhanced monitoring of those programs. This response to the issue should be accorded deference, and the Court is required to apply a "flexible standard." *Rufo*, 502 U.S. at 380.

Finally, Plaintiffs wrongly invoke the standards set forth in the first prong of

Rule 60(b)(5). *See* ECF No. 1427 at 18. That prong provides for relief when the judgment has been "satisfied, released, or discharged." *See* Fed. R. Civ. P. 60(b)(5). But Defendants have not moved for relief on those grounds, and thus all of Plaintiffs' unsupported arguments about substantial compliance with the Agreement have no relevance to the legal standards to be applied by this Court in deciding whether to grant Defendants' Motion.[2]

The Supreme Court has explained that the disjunctive language of Rule 60(b)(5) makes "clear that each of the provision's three grounds for relief is *independently* sufficient and therefore that relief may be warranted even if petitioners have not 'satisfied' the original order." *Horne*, 557 U.S. at 454 (emphasis added). In *Horne*, the Supreme Court held that the court of appeals erred by focusing its inquiry on "whether the original order had been satisfied" when the state officials were making an argument based on whether prospective application was equitable. *Id*. at 454. The Supreme Court held that focusing on the terms of the original order led the court of appeals to "improperly substitute[] its own educational and budgetary policy judgments for those of the state and local officials to whom such decisions are properly entrusted." *Id.* at 455. Accordingly, where, as here, a petitioner makes a "changed circumstances" argument based on the equitable clause of Rule 60(b)(5), a court errs by applying the legal standards relevant to the "satisfied, released, or discharged" clause. *Id.*

---

[2] Because Plaintiffs apply the wrong legal standard, Plaintiffs' arguments about Defendants' purported failures to comply with the FSA should be rejected. ECF No. 1427 at 23-24. Plaintiffs' assertions against HHS are not only irrelevant for purposes of this Motion, but they also misrepresent the agency's record of compliance. Moreover, DHS' purported record of compliance is also completely irrelevant here, particularly given that DHS has not sought termination. Finally, the parties agreed in December 2001, that the FSA would terminate once regulations were published— not when substantial compliance was reached, as had previously been negotiated. *Compare* FSA ¶ 40 (rev. Dec. 7, 2001) *with* FSA ¶ 40 (signed Jan. 13, 1997).

Plaintiffs cite *Freeman v. Pitts*, 503 U.S. 467, 491 (1992) extensively, but *Freeman* did not discuss Rule 60(b)(5), let alone cast any doubt about the proper standards for analyzing a changed-circumstances petition for relief under Rule 60(b)(5).[3] ECF No. 1427 at 16. Similarly, *Jeff D. v. Otter*, 643 F.3d 278, 283–84 (9th Cir. 2011)—a case relied upon by this Court in deciding Plaintiffs' motion to enforce and finding that noncompliance with the FSA precluded termination in 2019, *Flores v. Barr*, 407 F.Supp.3d 909, 915-16 (2019)—also does not compel consideration of substantial compliance in deciding Defendants' instant Motion. In *Jeff D.*, unlike here, defendants moved for vacatur under the first prong of Rule 60(b)(5) on the ground that they satisfied the judgment, thus requiring a showing that defendants substantially complied with the terms of the judgment. 643 F.3d at 283. The court in that case did not consider a request for changed-circumstances modification.

In sum, by misapplying the proper legal standards for relief, Plaintiffs fail to contend with the lessons of *Horne* and *Rufo*: freezing in place an outdated, judicially-administered regime of immigration policy is unworkable and not in the public interest given changes in the factual landscape. Denying the Executive Branch the ability to confront and resolve new challenges based on a mechanical application of a 27-year-old consent decree that was never intended to apply indefinitely frustrates federal immigration policy, undermines the democratic process, interferes with core

---

[3] Defendants cited *Freeman* for the proposition that the Court should, in the alternative, terminate the FSA as to all permissible portions of the Foundational Rule if the Court declines to terminate the FSA as to HHS in its entirety. ECF No. 1414 at 25. That analysis, however, also does not require a retrospective analysis of whether Defendants substantially complied with the terms of the FSA during prior years. Indeed, the Ninth Circuit's analysis for termination focused on whether the 2019 Rule was consistent with the FSA. *Flores II*, 984 F.3d at 741. ("Although the Agreement itself contemplates termination upon the promulgation of *consistent* regulations, it certainly does not follow that the executive branch retained the power to bring about termination through the promulgation of *inconsistent* regulations.").

executive branch functions, and impinges upon the separation of powers. The Court should defer to ORR's expertise in responding to the challenges it faces today and terminate the FSA as to HHS. *Frew*, 540 U.S. at 441-42.

**B.    Modification and Termination of the FSA as to HHS is Warranted Under Rule 60(b)(5).**

Plaintiffs argue that the Court should deny Defendants' request to modify and terminate the FSA because (1) it is not "impossible" for ORR to comply with the FSA's licensed placement requirements and (2) the Rule is not "suitably tailored" to the changed licensing circumstances in Texas and Florida. ECF No. 1427 at 2. Both arguments are legally and factually wrong and should therefore be rejected.

**1.    Plaintiffs Cannot Dispute Significant, Unforeseen Changed Circumstances Warrant Modification and Termination of the FSA as to HHS.**

There can be no serious dispute that the decisions by Texas and Florida to cease licensing ORR-funded programs constitute an unforeseen changed circumstance not contemplated by the parties in 1997 when they entered into the Agreement. As Defendants explained in their Motion and the supporting Declaration of Toby Biswas, these fundamental changes, in the context of the significant influx of unaccompanied children in recent years, make compliance with the FSA's requirements for placement of children in state-licensed facilities in all cases substantially more "onerous," "unworkable," and "detrimental to the public interest." ECF No. 1414 at 18 (citing *Rufo*, 502 U.S. at 384). Plaintiffs do not dispute that ORR now receives about 120,000 referrals a year, versus less than 3,000 in 1997, *see* ECF No. 1414 at 7. Nor do Plaintiffs explicitly challenge Defendants' explanation of the critical importance of ORR-funded programs in Texas, and to a lesser extent Florida.

Notwithstanding these fundamental changes, Plaintiffs submit in a footnote that "Defendants' claim that complying with the Settlement's licensing requirement is 'impossible' is palpable hyperbole." ECF No. 1427 at 6, n.3. But that misconstrues

Defendants' Motion: Defendants observed that the states' actions have made it impossible for Texas and Florida providers to maintain state licensing, ECF No. 1414 at 18—which Plaintiffs do not and cannot dispute—and ceasing to operate ORR funded programs in Texas and Florida would be exceedingly onerous, unworkable, and detrimental to the program's objectives—which Plaintiffs also do not and cannot dispute. Moreover, the Court need not conclude it would be "impossible" to operate without Texas and Florida programs because the applicable legal standard is whether the change in factual conditions make compliance "substantially more onerous," "unworkable" or "detrimental to the public interest," for determining whether modification is warranted. Each standard clearly applies here, and Plaintiffs do not claim otherwise.

In support of its "palpable hyperbole" assertion, Plaintiffs Opposition confusingly suggest that "[i]f Defendants insist they suddenly need an immediate solution, Defendants could comply with the Settlement by moving children out of unlicensed facilities 'as expeditiously as possible.'" ECF No. 1427 at 6, n.3 (quoting FSA ¶ 12A.). To the extent that Plaintiffs actually argue that ORR can comply with the FSA by moving all children out of Texas and Florida, Plaintiffs offer no support or explanation for such a sweeping assertion, and the views of responsible government officials who have knowledge about the operational realities of placing and housing unaccompanied children in the current climate—and whose views are to be accorded deference—are to the contrary. Defendants cannot stop placements in Texas or Florida altogether. Nor can Defendants transfer *all* children who are currently in or will be placed in Texas or Florida to other states, and Defendants' opening brief explained a set of reasons why this would be against the best interests

---

[4] Defendants, of course, agree that children can and should be moved out of "*specific*" Texas and Florida placements—just like they could be moved out of specific licensed placements—if there are "unsafe conditions." ECF 1427 at n.3

of unaccompanied children. ECF No. 1414 at 18-20.[4]

Second, Plaintiffs hypothesize that ORR could sue Texas and Florida "to enjoin their blatant discrimination against the federal government," citing *United States v. California*, 921 F.3d 865, 878 (9th Cir. 2019). ECF No. 1427 at 6, n.3. But the outcome of any such litigation would be uncertain and could require years of litigation before any final judgment would be rendered. Other states could also cease state licensing at any time. In any event, ORR must administer its program under the framework that has now been in place since 2021 when these states initially refused to license ORR-funded programs serving unaccompanied children.

For these reasons, Plaintiffs fail to show why a changed-circumstance modification of the FSA's licensing requirements in relation to programs in states that refuse to license ORR-funded programs and termination as to HHS is not warranted under Rule 60(b)(5). *See Horne*, 557 U.S. at 448; *Sys. Fed'n No. 91, Ry. Employees' Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 651 (1961) (quoting *United States v. Swift & Co.*, 286 U.S. 106, 114–15 (1932)).

### 2. The Foundational Rule Is Suitably Tailored to Significantly Changed Circumstances Related to Licensed Placements.

None of the reasons set forth in Plaintiffs' Opposition provide any basis for the Court to find that the Foundational Rule is not suitably tailored to the changed circumstances related to licensed placements. First, as Defendants explained in their Motion and further below, the Foundational Rule provides that programs in those states must continue to meet their state licensing requirements and be subject to enhanced monitoring. Second, Plaintiffs complain about the lack of independent oversight by a child welfare agency but offer no viable alternatives to address a fundamentally changed landscape, and the concerns they raise about the Rule's

_____

(emphasis added). But that is an entirely different operational burden than moving *all* children out of *all* placements in Texas and Florida.

10

requirements for oversight of delicensed programs are unfounded. Third, Plaintiffs are wrong that the possibility of a future federal licensing rule means that termination is premature. Finally, Plaintiffs are wrong that termination of the FSA as to HHS is not in the public interest.

### a. The Foundational Rule Provides a Suitably Tailored Response to the Unavailability of Licensed Placements.

ORR has developed a response to changed circumstances in Texas and Florida that aims to ensure the safety and well-being of unaccompanied children without causing extraordinary disruption to ORR-funded programs. The FSA does not account for possible delicensing by states and therefore does not address how to respond to states' refusal to license ORR facilities. Nevertheless, the Foundational Rule requires programs to adhere to state licensing requirements because state "[l]icensure [requirements] have been important to the UC Program" for decades. ECF No. 1414 at 9.  The essential requirements for standard programs are included in the Foundational Rule. The mechanisms by which ORR will ensure compliance with those requirements will continue to be further developed and implemented through subregulatory guidance and policy. *See, infra,* Section II(B)(2)(b).

The Foundational Rule reflects ORR's reasoned approach to placements in Texas and Florida, based on decades of experience, by implementing all the elements of the FSA's licensed placement requirement that ORR could implement without the willingness of these states to license facilities serving unaccompanied children. As Defendants' Motion explains, under the standard program provision of the Foundational Rule, unaccompanied children must be placed in programs that comply with state licensing standards and will receive the important advantage of having placements near where they are apprehended. In addition, they will benefit from enhanced monitoring and oversight provided by ORR, ACF's Licensing Team, and the Office of the Ombuds.

Deference is due to Defendants' judgment in this regard. *Jackson v. Los Lunas Comm. Prog.,* 880 F.3d 1176, 1192 (10th Cir. 2018) (citing *Frew*, 540 U.S. at 441-42 (2004)). "As public servants, the officials of the [government] must be presumed to have a high degree of competence in deciding how best to discharge their governmental responsibilities." *Frew*, 540 U.S. at 442. The Court should defer to ORR's judgment on how best to address the issue and find that ORR has developed a "suitably tailored" response that ensures safe conditions in ORR-funded programs in Texas and Florida, thus accomplishing the overarching goal of the FSA.

### b. Plaintiffs' Concerns About Lack of Oversight in Texas and Florida Programs Are Unfounded.

Plaintiffs argue that the Foundational Rule is inconsistent with the FSA licensing requirement which is intended "to provide class members the essential protection of regular and comprehensive oversight by an *independent* child welfare agency." ECF No. 1427 at 3. But that argument ignores the reality that there is no independent child welfare agency that could play such a role in states that refuse to license ORR-funded programs, nor do Plaintiffs identify such an agency.

ORR has developed several mechanisms to implement the Rule's requirement that programs in those states comply with their state's licensing requirements even though their states refuse to license ORR-funded programs. First, the Rule provides for enhanced monitoring of facilities in states where the state refuses to license ORR-funded facilities. *See* 45 C.F.R. § 410.1303(e). This monitoring will include more frequent on-site visits and regular desk monitoring to ensure that programs are complying with ORR's policies and regulations. ECF No. 1414, Ex. A, ¶ 20.

Second, beginning July 1, 2024 (the Effective Date of the Rule), a team of state licensing subject-matter experts in the HHS Administration for Children and Families ("ACF Licensing Team"), will monitor all programs in states that refuse to license ORR-funded programs so that ORR can ensure that these programs are in compliance with the state licensing standards, as required by the Rule. *See* Defs.'

Ex. D, Supplemental Declaration of Toby Biswas ("Biswas Suppl. Decl.") ¶ 6; *see also* ECF No. 1414, Ex. A. This monitoring will include any new facilities that come online in Texas and Florida. It will be conducted on the same frequency that the state would conduct its monitoring and inspections and will require the same steps prior to operation that would be required of any facility that is not yet licensed. *See* Defs.' Ex. E, Declaration of Maxine M. Maloney ("Maloney Decl.") ¶¶ 5-7.

Plaintiffs further complain that there is "no clear mechanism for children or *anyone* to report abuse, neglect, or standards violations at unlicensed facilities." ECF 1427 at 8-10. This is patently incorrect. As an initial matter, the Florida licensing authority has not ceased to investigate complaints of abuse or neglect in ORR-funded programs, so Plaintiffs' concerns have no application to Florida. Biswas Suppl. Decl. ¶ 16. With respect to Texas, state law enforcement continues to investigate suspected criminal conduct, and ORR continues to refer suspected sexual offenses to the FBI and HHS OIG, but the relevant state authorities have ceased responding to potential licensing violations and to allegations that do not rise to the level of a crime. Accordingly, since March 2022, ORR has filled that role by conducting in-depth reviews of child abuse or neglect allegations at ORR care provider facilities in Texas. *Id.* ¶ 18. Going forward, ORR will investigate allegations of abuse and neglect at its Texas facilities, but now through a dedicated Division of Investigations, which will be comprised of federal employees with prior investigation experience. *Id.* ¶ 14. The new investigators will begin their work on July 1, 2024 (the Effective Date of the Rule). *Id.*[5]

---

[5] ORR has substantially completed drafting an Interim Final Rule ("IFR") concerning investigations of child abuse and neglect in states that do not perform such functions for ORR-funded programs, currently only Texas. The draft IFR would require care providers in such states to provide additional means for children in their care and stakeholders to report abuse or neglect, including direct reporting to ORR; clarify the responsibilities of investigators and the processes for

Additionally, the Rule expressly provides requirements for all care providers to report any incidents affecting an unaccompanied child's safety and well-being (e.g., significant incidents, emergency incidents, or program-level events) to ORR and other applicable authorities, like the FBI, and specifies required follow-up activities for both ORR and the care provider. *See* 45 C.F.R. § 410.1303(g); *see also* Biswas Suppl. Decl. ¶ 8. Moreover, the Rule creates an Office of the Ombuds, which will serve an important mechanism for unaccompanied children and stakeholders to raise concerns about ORR policies and practices to an independent body that is tasked with investigating those complaints. ECF No. 1414 at 13. Plaintiffs complain that the ombudsperson lacks enforcement authority, ECF No. 1427 at 9, but ignore that the ombudsperson is empowered to refer concerns to the HHS Office of the Inspector General and other federal agencies such as the U.S. Department of Justice that do have enforcement power.

Plaintiffs also fail to acknowledge the role that the HHS OIG and Congress play in providing oversight of ORR-funded programs, including specific care provider facilities. And they fail to mention that, in relation to a number of important provisions, unaccompanied children will have the ability to bring an APA challenge for a violation of the Foundational Rule. This is not an agency that is left to its own devices.

Finally, notwithstanding Plaintiffs' criticisms, requiring accreditation by a nationally recognized accrediting organization provides an additional and substantial layer of protection for children in all facilities. *Cf.* ECF No. 1427 at 9. Defendants recognize that accreditation is not a stand-alone substitute for state

investigation; provide for administrative review and appeal of substantiated claims of abuse or neglect, and provide for barring individuals with sustained allegations from being employed in ORR-funded programs or having any contact with unaccompanied children in ORR-funded facilities. Biswas Suppl. Decl. ¶ 20.

licensing, but it is widely recognized as a "seal of excellence that indicates an organization is committed to implementing and sustaining the implementation of best practices in their field (i.e., child welfare, mental health, residential treatment, etc.)." 89 Fed. Reg. 34,486 (Apr. 30, 2024). It therefore adds an important protection for unaccompanied children by providing quality assurance and continuous improvement of all standard programs by an independent organization.

For these reasons, the Foundational Rule and the steps taken by ORR to carry out the requirements of the Rule suitably address the absence of state licensing in Texas and Florida.

### c. Plaintiffs' Argument that Modification and Termination of the FSA is "Premature" in the Absence of a Federal Licensing Rule Lacks Merit.

Plaintiffs argue that modification and termination of the FSA is "premature" because ORR's expressed intent to develop a federal licensing rule in the future means that ORR has not put in place a "durable remedy." ECF No. 1427 at 5-6. This argument lacks merit.

First, ORR has developed a durable remedy: the Foundational Rule, which codifies the essential requirements of the FSA and is judicially enforceable. Although the Rule does not require a standard program in a state that refuses to license ORR-funded programs to be state licensed (since licensing is unavailable), it requires those programs to nevertheless adhere to the state's licensing standards. This requirement ensures that programs provide what state licensing ensures: that children are placed in programs strictly for children, programs have appropriate staffing ratios, programs adhere to appropriate safety and health standards, and staff are background checked, among many other things. If, in the future, ORR fails to ensure that a program is not in compliance with state licensing standards, an APA action could be brought to ensure compliance. Certainly, a durable remedy is in place.

Second, federal licensing is not required—or even contemplated—by the FSA, and the approach taken in the Foundational Rule to address the unavailability of state licensing in Texas and Florida comes as close as possible to imposing the standards that would apply to Texas and Florida if their states were willing to license programs for all the reasons described above.

Third, while a potential federal licensing rule remains under consideration at ORR, there are multiple decisions remaining to be made relating to the development and implementation of a proposed federal licensing rule.

Finally, Plaintiffs make clear that they are not arguing that federal licensing would be sufficient, but merely that "[u]ntil such regulations are published, neither Plaintiffs nor the Court can assess whether they represent a suitably tailored modification." ECF No. 1427 at 5. But Plaintiffs argue the importance of oversight by an *independent* child welfare agency, an element that could not be satisfied by a federal licensing rule because licensing would be performed by the federal government. Moreover, their comments on the proposed Foundational Rule did not call for federal licensing, and in fact concluded by asserting, "In any event, substituting federal licensure for state licensure is inconsistent with the FSA."  ECF No. 1427-9, Ex. 7, at 9-10. ORR has already put in place a durable remedy in the form of the Foundational Rule; there is no reason for this Court to wait for any future developments. *Horne*, 557 U.S. at 450 ("If a durable remedy has been implemented, continued enforcement of [a consent decree] is not only unnecessary, but improper.").

### d.   Modification and Termination, not Continued Enforcement, of the FSA as to HHS is in the Public Interest.

Plaintiffs appear to suggest that the public interest requires that this Court retain jurisdiction over a 27-year-old consent decree in perpetuity as to HHS because no other oversight mechanism they deem sufficient exists. ECF No. 1427 at 10-11 (arguing that modification is not appropriate until Defendants' remedy "provides

independent oversight comparable to state licensing and returns the Parties as nearly as possible to their original bargain"). But the opposite is true. It would be detrimental to the public interest for the Court to retain jurisdiction of a decades-old consent decree when a durable remedy, in the form of a judicially enforceable Rule that properly addresses unforeseen changed circumstances, is in place. The Supreme Court has stressed that "the public interest and considerations based on the allocation of powers within our federal system require that the district court defer to [government officials] who have the primary responsibility for elucidating, assessing, and solving the problems of institutional reform, to resolve the intricacies of implementing a decree modification." *Rufo*, 502 U.S. at 392.

For all these reasons, the Court should find that the Foundational Rule provides a suitably tailored response to unforeseen and substantially changed circumstances and terminate the FSA as to HHS.

## C. Plaintiffs' Assertions of Other Inconsistencies with the FSA are Incorrect.

Plaintiffs argue that a few purported inconsistencies between the FSA and the Rule precludes termination, but that argument rests on a misreading of those provisions. And, in any event, the Rule reflects agency expertise in addressing the latest challenges with input from the public. Such alleged inconsistencies provide no reason to not terminate the Agreement as to HHS—particularly where Plaintiffs are not seeking to enjoin any part of the Rule.

### 1. Referrals from Remote Locations

First, Plaintiffs allege that the Rule would allow "indefinite delay" in placing unaccompanied children, who are apprehended in a "remote location," in a standard program, which is inconsistent with FSA Paragraph 12A.(4). But FSA Paragraph 12A.(4) does not apply to HHS. Rather, Paragraph 12A.(4), which was later substantially incorporated into the TVPRA, applies to the *referring agency*, *i.e.*, typically DHS. *See* 8 U.S.C. § 1232(b)(3) (requiring federal agency to transfer

unaccompanied children to HHS within 72 hours, absent exceptional circumstances). It is the referring agency's responsibility to transfer unaccompanied children upon apprehension (wherever they are apprehended) to HHS within 72 hours, absent exceptional circumstances, pursuant to federal law.

### 2.    Secure and Heightened Supervision Facilities

Second, Plaintiffs allege that the Rule impermissibly expands the criteria for secure placement beyond the text of FSA Paragraph 21. But they conflate two regulations: § 410.1101, which relates to *time frames* for initial placements in ORR facilities after referral from another federal agency, and § 410.1105, which concerns *criteria* for placing unaccompanied children in secure or heightened supervision (formerly called staff secure or medium security) facilities.

Section 410.1101(d)(6)(i) allows for additional time in making an initial placement if "the referring federal agency indicates that a child '[p]oses a danger to self or others.'" This recognition of the need for extra time in some circumstances does not alter the criteria for when secure placement is permitted—criteria that Plaintiffs do not dispute are consistent with the FSA. Extra time in these infrequent circumstances may be essential for ORR to receive sufficient information to determine the appropriate level of placement.

In contrast, the actual criteria for placement in secure facilities, at § 410.1105(a)(3), are fully consistent with the FSA, and limit the use of secure facilities to a greater extent than is required by the FSA. Biswas Suppl. Decl. ¶¶ 21-23.

Plaintiffs assert that FSA Paragraph 23[6] only permits placement in *medium* security facilities (referred to under the Foundational Rule as heightened supervision

---

[6] Paragraph 23 says, "The INS will not place a minor in a secure facility pursuant to Paragraph 21 if there are less restrictive alternatives that are available and appropriate in the circumstances, such as transfer to (a) a medium security facility

facilities) as an alternative for a child who could otherwise be placed in a secure facility under Paragraph 21. This is plainly not what Paragraph 23 says, and it would make no sense if ORR could only place a child in a heightened supervision facility if the extremely restrictive conditions applicable to secure facilities were met.

### 3.      Out-of-Network Placements

Plaintiffs complain that the Rule exempts out-of-network ("OON") placements from the FSA Exhibit 1 minimum standards. ECF No. 1427 at 12. But the FSA does not address or contemplate the use of OON placements. In fact, Plaintiffs do not identify any requirement in the FSA related to OON placements. Thus, the OON placement requirements in the Foundational Rule are not inconsistent with the FSA. In any event, it would not be administratively feasible for ORR to impose FSA Exhibit 1 requirements on an OON placement that "operates under a single case agreement for the care of a specific child between ORR and the OON provider." *See* 45 C.F.R. § 1001; Biswas Suppl. Decl. ¶ 27. However, ORR has developed multiple safeguards and protections for the rare occasions when an OON placement is needed to ensure that the child's needs for specialized care are met. Biswas Suppl. Decl. ¶ 29.

### D.      Termination of the Agreement as to HHS is Consistent with the Ninth Circuit's Decision in *Flores II*.

Plaintiffs assert that termination of the FSA as to HHS is impermissible even though the Ninth Circuit found partial termination entirely permissible as to HHS. *See Flores II*, 984 F.3d at 737. Plaintiffs made a nearly identical argument to the Ninth Circuit: that "the [FSA] nowhere contemplates piecemeal termination" and Paragraph 40 does not permit termination in "dribs and drabs." *See Flores v. Barr*, 2020 WL 474840, No. 19-56326, Plaintiffs-Appellees' Answering Brief at *42 (Jan.

---

which would provide intensive staff supervision and counseling services or (b) another licensed program. All determinations to place a minor in a secure facility will be reviewed and approved by the regional juvenile coordinator." FSA ¶ 23.

21, 2020). But the Ninth Circuit squarely rejected that argument, permitting HHS to move to partially terminate the FSA in 2020. *See Flores II*, 984 F.3d at 737; *Id.*, n.12. It would have been illogical for the Ninth Circuit to permit HHS to "move to terminate those portions of the Agreement covered by the valid portions of HHS regulations," *id.* at 737, only to later find that partial termination was impermissible. The parties briefed the partial termination question and the Ninth Circuit confirmed that HHS could move to partially terminate the FSA if it "wishes . . . [to] do so." *Id.* 737.

Plaintiffs argue that partial termination is inconsistent with Paragraph 40 of the Agreement given the unitary nature of the Defendant (INS) in 1997 (and in 2001 when Paragraph 40 was modified). ECF No. 1427 at 15. By that same token, the Agreement did not contemplate that the INS would be abolished. In 1997, when the Agreement was signed between Plaintiffs and the now abolished INS, the INS was responsible for apprehending, processing, detaining or releasing, and removing unaccompanied (and accompanied) children. Today, those responsibilities are clearly divided between DHS and HHS as provided in federal law. *See* 8 U.S.C. § 1232; 6 U.S.C. § 279. These laws require cooperation between the two agencies, but also provide for distinct responsibilities.

Plaintiffs also do not explain why under Rule 60(b)(5) the FSA should remain in force as to HHS when there are consistent overlapping regulations also in effect. It would make little sense to maintain court jurisdiction when concurrent consistent HHS regulations are in effect simply because DHS has not promulgated regulations related to its own independent responsibilities under the FSA. Plaintiffs appear to argue that termination as to HHS is impermissible because DHS takes custody of accompanied children. Plaintiffs take footnote 12 of *Flores II* out of context. *See* ECF No. 1427 at 17. Footnote 12 first recognizes that "the government may move to terminate those portions of the Agreement that are covered by the valid portions of the HHS regulations," thus making clear that partial termination is permissible.

Footnote 12 then states that "any motion to terminate" would need to "take into account" that "the Agreement protects both unaccompanied and accompanied minors." *See Flores II*, 984 F.3d at 744 n.12. The Foundational Rule does not adversely impact the rights of accompanied children who are solely within DHS's purview. Therefore, terminating the FSA as to HHS is entirely permissible.

Finally, as addressed in Section II.A, compliance with the FSA is not the proper legal standard here—and DHS's compliance is certainly not relevant to assess whether termination is appropriate as to HHS. Consistent with the Ninth Circuit's decision in *Flores II*, the Court should terminate the FSA as to HHS.

## III.   CONCLUSION

It is not surprising that after the passage of 27 years, the problems addressed by the Agreement would call for new solutions as "the passage of time frequently brings about changed circumstances—changes in the nature of the underlying problem, changes in governing law or its interpretation by the courts, and new policy insights—that warrant reexamination." *Horne*, 557 U.S. at 448. The Foundational Rule is consistent with or exceeds the requirements of the FSA and reflects the agency's reasoned judgment on how to respond to unforeseen and substantially changed circumstances. The Court should terminate the FSA as to HHS.

Dated: June 12, 2024                    Respectfully submitted,


                                        BRIAN M. BOYNTON
                                        Principal Deputy Assistant Attorney General
                                        Civil Division
                                        WILLIAM C. PEACHEY
                                        Director, District Court Section
                                        Office of Immigration Litigation
                                        WILLIAM C. SILVIS
                                        Assistant Director, District Court Section
                                        Office of Immigration Litigation

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Fizza Batool*
FIZZA BATOOL
JOSHUA C. MCCROSKEY
Trial Attorneys
U.S. Department of Justice
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 616-4863
Email: fizza.batool2@usdoj.gov

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 12, 2024, I served a copy of the foregoing pleading and attachments on all counsel of record by means of the District Court's CM/ECF electronic filing system.


*/s/ Fizza Batool*
FIZZA BATOOL
Trial Attorney
U.S. Department of Justice