# EXHIBIT D

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MERRICK B. GARLAND, Attorney General of the United States, *et al.*,<br><br>Defendants. | Case No. 2:85-cv-04544-DMG<br><br><br>Chief District Judge Dolly M. Gee |

### SUPPLEMENTAL DECLARATION OF TOBY BISWAS

I, **Toby Biswas**, pursuant to 28 U.S.C. § 1746, and based on my personal knowledge and information made known to me from official records and reasonably relied upon in the course of my employment, relating to the above-captioned matter, hereby declare as follows:

1. I am the Director of the Division of Unaccompanied Children (UC) Policy in the ORR, Unaccompanied Children (UC) Bureau, an entity within the Administration for Children and Families (ACF), U.S. Department of Health and Human Services (HHS).

2. I am submitting this Declaration to supplement my previous Declaration filed on May 10, 2024. *See* ECF No. 1414-2.

3. I have reviewed excerpts of Plaintiffs' Opposition to Defendants' Motion to Terminate the Flores Settlement Agreement, as well as excerpts of various declarations submitted in support of Plaintiffs' Opposition. *See* ECF No. 1427.

**Ensuring Standard Programs' Compliance with Foundational Rule Requirements**

4. ORR has planned to ensure standard programs' compliance with the obligations and standards of the Foundational Rule in a set of ways. These plans have been thoughtfully considered and sequenced with consideration for the rollout and implementation of the Foundational Rule.

5. First, ORR is revising addendums to the Cooperative Agreements for Texas and Florida standard programs to require these programs to attest by September 15, 2024 and each subsequent year that they are in compliance with state licensing standards.

6. Second, in addition to ORR's ongoing monitoring for compliance with UC program requirements and "enhanced monitoring" of unlicensed programs as discussed in the Foundational Rule, ACF's Licensing Advisory Team, which is composed of subject matter experts on residential licensing operations, will monitor and inspect ORR standard programs located in Texas and Florida regarding their compliance with state licensing standards. The ACF Licensing Advisory Team anticipates that this monitoring will begin on or about July 1, 2024. Going forward, this monitoring would occur at the same time intervals as would have occurred under state requirements (e.g., if the state would conduct a yearly inspection, but for the fact of barring licensing for ORR care providers, the Licensing Advisory Team would arrange for monitoring of adherence to state licensing standards at the same frequency).

**Reporting Child Welfare Concerns under the Rule**

7. The Rule describes several requirements related to the reporting of child welfare concerns. The Rule provides that ORR will monitor care providers for adherence to these and all other requirements under the Rule. In addition, the Rule sets out requirements regarding ORR itself (e.g., non-retaliation against attorneys and child advocates performing their jobs).

8. For example, under the Rule, care provider facilities are required to report significant incidents, as defined, including allegations of abuse or neglect, to ORR and other authorities pursuant to reporting laws. *See* section 410.1303(g). *See also* sections 410.1302(b) and 410.1801(b)(13) (requiring standard programs and secure facilities, and EIFs, respectively, to comply with all State child welfare laws and regulations, such as mandatory reporting of abuse, and all State and local building, fire, health, and safety codes").

9. As further explained by the preamble, the Rule is meant to codify ORR's historic practices regarding its use of Significant Incident Reports. *See, e.g.,* 89 Fed. Reg. 34389, 34453. Under the Rule, these requirements will continue to remain in effect and provides for monitoring and other enforcement measures (e.g., under 45 CFR § 75.371) should care providers fail to implement such requirements. The Rule also requires care providers to develop quality assurance assessment procedures that accurately measure and evaluate service delivery in compliance with the Rule. *See* section 410.1303(f).

10. The Rule also discusses mechanisms by which unaccompanied children can express concerns about their own welfare. For example, the Rule references already-existing requirements that care providers establish procedures for children to report grievances. This requirement has been long-established at 45 CFR 411.52, but the Foundational Rule further requires care providers to provide information regarding grievance reporting policies and procedures in the child's native or preferred language and in an accessible manner. *See* section 410.1306(c)(6).

11. Further, the Rule protects the privacy of unaccompanied children. For example, it implements the FSA Exhibit 1 requirement for a reasonable right to privacy. *See* section 410.1302(c)(14). Similarly, the Rule requires that unaccompanied children be able to conduct private communications with their attorney of record, DOJ Accredited Representative, or legal service provider in a private enclosed area that allows for confidentiality for in-person, virtual, or

3

telephonic meetings. *See* section 410.1309(a)(2)(vi). In addition, as explained in the preamble to the Rule, a child's records including mental health treatment are protected from disclosure at care provider facilities, and post-release services providers may not release unaccompanied children's case file records or information contained in the case files for purposes other than program administration without prior approval from ORR. *See* 89 Fed. Reg. 34442. ORR intends such provisions to encourage children to be open about their circumstances and any potentially concerning issues they face, in order that ORR can provide appropriate care.

12. The Rule also imposes requirements on ORR itself in providing for the involvement of third parties to protect the welfare of unaccompanied children. *See, e.g.*, section 410.1308 (discussing child advocates and including a non-retaliation provision); section 410.1309(e) (describing non-retaliation against legal service providers for reporting harm or misconduct on behalf of a UC or for appearance in an adverse action against ORR). The Rule also explicitly acknowledges the applicability of whistleblower protections regarding the sharing of unaccompanied child case file information. *See* section 410.1303(h)(4).

13. The Rule also provides for the creation of an Ombuds Office, which can receive reports from unaccompanied children and other stakeholders in their care. *See* Subpart K. As an independent office within ACF, the Ombuds Office will establish its own policies and protocols, but as an initial matter the Rule establishes that it has authority to receive reports, including confidential and informal reports, of concerns regarding the care of unaccompanied children; to investigate such reports; to work collaboratively with ORR to potentially resolve such reports; and issue reports concerning its efforts. *See* section 410.2000(b).

**Investigations of Child Abuse and Neglect**

14. Consistent with the requirements under the Rule for care providers to report significant incidents to ORR, ORR has established a Division on Child Protection Investigations which, effective July 1, 2024, will conduct investigations of child

abuse and neglect allegations for Texas programs, and in any other state if it refuses to conduct investigations at ORR care provider facilities and at Emergency or Influx Facilities. *See* Statement of Organization, Functions, and Delegations of Authority, 89 Fed. Reg. 49889 (Jun. 12, 2024). ORR has hired staff for this team over the last four months, having published a solicitation of interest for employment as an ORR investigator in February 2024. The team is comprised of federal employees with prior investigation experience.

15. Historically, ORR has relied on states both to license its care provider facilities and to perform any investigations of alleged child abuse and neglect. Further, ORR requires background checks, including state child abuse and neglect registry checks, of all potential staff and others who may have contact with children at its care provider facilities. *See* 45 CFR § 411.16(c).

16. Currently, one state, Texas, is not conducting child welfare investigations into reports of child abuse and neglect if they arise out of a license exempt ORR care provider. Florida, although it has also made licensing unavailable to ORR care provider facilities, continues to receive reports of child abuse and neglect at ORR facilities in the state, and to investigate and take further action as needed under its laws.

17. My understanding is that because ORR facilities are exempt from licensure in Texas, by operation of State law, neither the State licensing authority nor the Division of Family and Protective Services (DFPS) have jurisdiction to conduct such investigations. I understand that local law enforcement may investigate alleged child abuse and neglect at ORR-funded facilities in Texas; however, I also understand that law enforcement typically only investigates allegations that may rise to the level of a crime.

18. Since ORR became aware that Texas DFPS was no longer conducting needed investigations at ORR care provider facilities, we have undertaken actions, internally within HHS to help mitigate this ongoing situation. In March 2022, ORR began

conducting "in-depth reviews" of child abuse or neglect allegations at ORR care provider facilities in Texas. "In-depth reviews" consist of receiving and reviewing documentation around the allegation, assessing whether proper interventions and reporting requirements under ORR policies and procedures were followed, and making recommendations for appropriate follow-up actions regarding the alleged victim's medical and mental health needs.

19. To compensate for the loss of state investigations of alleged child abuse and neglect in Texas, ORR is taking the following additional steps. First, effective July 1, 2024, ORR will begin conducting its own investigations of alleged child abuse and neglect in Texas facilities—or in any other state if it ceases to perform such investigations. ORR intends to document the results of its investigations for program management purposes, and to share its findings with the relevant care provider facility in order to facilitate appropriate follow up actions.

20. Second, ORR has substantially completed the drafting of an interim final rule (IFR) and anticipates submitting the rule to the Office of Management and Budget within the next 30 days. The IFR will describe the conduct of ORR investigations of alleged child abuse or neglect in states that do not do their own investigations and in ORR's emergency and influx facilities, and will provide for administrative review and appeal of ORR's investigation findings, required disciplinary sanctions for sustained perpetrators, and provide for barring sustained perpetrators of child abuse and neglect from working or volunteering under ORR Unaccompanied Children Bureau grants and contracts, and from having any contact with unaccompanied children in ORR custody. Through this rule, ORR intends to replicate the investigative infrastructure needed to operate the UC Program in states that will not perform abuse and neglect investigations.

**Placement in Secure Facilities**

21. Under the Foundational Rule, the criteria for placement in secure facilities as articulated at section 410.1105(a)(3) are fully consistent with the FSA. Further, in

several ways, the Foundational Rule limits the circumstances in which secure facilities may be used, including limiting such circumstances that are permissible under the FSA at Paragraph 21.

22. For example, FSA paragraph 21 would allow placement in a secure facility for having engaged in certain "chargeable" conduct; or having committed, or has made credible threats to commit, a violent or malicious act against oneself; for being an escape risk; and when a determination is made to hold the unaccompanied child in a secure facility for their own safety. ORR did not include any of these provisions in its Foundational Rule.

23. Moreover, FSA paragraph 12 would allow placement in a secure facility if the unaccompanied child engaged in unacceptably disruptive conduct in any licensed facility; the Foundational Rule allows such placements only if the unacceptably disruptive conduct occurs in a restrictive placement. See section 411.1105(b).

**Out-of-Network Placements**

24. Over time, ORR has found that there are certain rare circumstances where a child has specific needs that cannot be accommodated within ORR's standard facilities and placement in an out-of-network facility is necessary for the child to receive individualized specialized services. Generally, these OON placements include hospitals, residential treatment centers, and therapeutic shelters, among others, which serve individuals other than just unaccompanied children, and may be restrictive or non-restrictive settings.

25. As explained in the Preamble to the Rule, under section 410.1102, ORR *only* places an unaccompanied child in an OON placement when "ORR determines that a child has a specific need that cannot be met within the ORR network of care provider facilities, where no in-network care provider facility equipped to meet the child's needs has the capacity to accept a new placement, or where transfer to a less restrictive facility is warranted and ORR is unable to place the child in a less restrictive in-network care provider facility." 89 Fed. Reg. 34409. Additionally,

ORR will only place an unaccompanied child in an OON placement if the federal field specialist and their supervisor approve the placement as the least restrictive placement in the child's best interest. 89 Fed. Reg. 34410. For example, a child placed in an OON facility may have a violent criminal history (e.g., sexual offense), significant mental health or behavioral health needs, or medical needs (e.g., cancer treatment) which cannot be met in ORR's in-network facilities.

26. ORR exhausts all in-network options before placing a child in an out-of-network facility, and thus OON placements are exceedingly rare. More particularly, ORR places a fraction of one percent of children in its custody in OON placements. As of May 31, 2024, ORR had only ten (10) children in OON placements. As of this date, there were 7,941 children in ORR's custody—meaning that as of May 31, approximately 0.13% of all ORR placements were OON placements.

27. ORR cannot simply impose the FSA's Exhibit 1 standards on OON facilities that agree to receive one unaccompanied child.  These are not the residential childcare facilities contemplated by FSA Exhibit 1, and ORR arranges for individual placements, rather than, e.g., entering into a grant or contract for a dedicated ORR-funded facility. *See* section 410.1001 (defining OON placement as one that "operates under a single case agreement for care of a specific child between ORR and the OON provider").

28. If ORR were to seek to impose such FSA Exhibit 1 requirements that may not be administratively feasible, OONs would not be an available option for these often hard-to-place children who frequently have complex, specialized needs.

29. Notwithstanding the need for OON placements in certain situations, ORR has developed multiple safeguards for placements in OON facilities to ensure that children get the specialized services that they need. For example, per the Rule, OONs must be state-licensed by an appropriate State agency.  Though the licensure is not necessarily "for dependent children," I note that such facilities could not receive children under the Rule if they were not licensed to do so.  I note also that, because

they serve the general population and not unaccompanied children specifically, these OON facilities are not the type of facilities that Texas has made exempt from licensing requirements.

30. Also, as part of its vetting process, "ORR conducts monitoring of OON placements to ensure that they are in good standing with State licensing authorities and are complying with all applicable State child welfare laws and regulations and all State and local building, fire, health, and safety codes." 89 Fed. Reg. 34489.

31. The same due process rights that apply to unaccompanied children placed in restrictive placements in ORR's network such as notice, administrative review, and an opportunity to request reconsideration of the placement, likewise apply to children placed in restrictive placements that are out-of-network. *See, e.g.*, sections 410.1901, 410.1902.

32. OON placements largely provide Exhibit 1 services where they are appropriately tailored to a child's individualized needs. Notably, while the child is in an OON facility, the child's case manager maintains weekly contact with the child and child's OON provider, and monitors the child's care to ensure that the unaccompanied child is receiving services appropriate to their individualized needs as specified in their individualized service plan. That plan is reviewed at least monthly to ensure it meets the child's needs.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 12th day of June, 2024.

Toby R. Biswas -S
Digitally signed by Toby R. Biswas -S
Date: 2024.06.12 14:27:24 -04'00'

_____
Toby Biswas
Director UC Policy, ORR

9