BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director
FIZZA BATOOL
JOSHUA C. MCCROSKEY
Trial Attorneys
District Court Section
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 616-4863
Fax: (202) 305-7000
Email: fizza.batool2@usdoj.gov

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MERRICK B. GARLAND, Attorney General of the United States, *et al.*,<br><br>Defendants. | Case No. 2:85-cv-04544-DMG<br><br>**SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO TERMINATE THE FLORES SETTLEMENT AGREEMENT AS TO THE U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES**<br><br>Hon. Dolly M. Gee |

## I. INTRODUCTION

On June 21, 2024, the Court heard oral arguments regarding Defendants' Motion to Terminate the *Flores* Settlement Agreement ("FSA" or "Agreement") as to the U.S. Department of Health and Human Services ("HHS"). During the hearing, Defendants requested an opportunity to address the Court's tentative ruling concerning certain issues relating to secure, heightened supervision, and out-of-network ("OON") facilities. The Court granted Defendants' request to provide supplemental briefing to address the Court's remaining concerns with respect to termination of the FSA as to HHS. ECF No. 1441. As explained below, the regulations at issue in the Unaccompanied Children Program Foundational Rule ("Foundational Rule"), 89 Fed. Reg. 34,384 (Apr. 30, 2024) (to be codified at 45 C.F.R. pt. 410), are consistent with the FSA. This Court should therefore terminate the FSA as to HHS in its entirety.

## II. ARGUMENT

### A. Under the Foundational Rule, Heightened Supervision Facilities May Only Be Used If There is Clear and Convincing Evidence That a Child Needs Heightened Supervision, and Merely Engaging in Isolated or Petty Offenses Would Not, Itself, Be a Basis for Such a Placement.

The Court expressed concern that under the Foundational Rule, an unaccompanied child could be placed in a heightened supervision (medium security) facility on the basis of isolated or petty offenses. The FSA does not specify the permissible criteria for when a child should be placed in such a facility. However, the Foundational Rule is explicit that the purpose of placing a child in such a facility is because the child needs heightened supervision, that a child would be placed in the facility only if the child meets the criteria for needing such supervision specified in Section 410.1105(b)(2), and clear and convincing evidence supports that determination as required by Section 410.1105(b)(1). Moreover, ORR would not place a child in a heightened supervision facility if the child did not need heightened

supervision, because doing so would be inconsistent with the FSA's requirement that children be placed in the least restrictive setting appropriate to their age and special needs, *see* FSA ¶ 11, and with the TVPRA's requirement, at 8 U.S.C. §1232(c)(2), that children be placed in the least restrictive setting that is in their best interest. *See* 45 C.F.R. § 410.1103(a).

The FSA defines "medium security facilities"—referred to in the Foundational Rule as heightened supervision facilities—in part, as facilities for children who may require additional supervision compared to children in less restrictive placements, "but do not need placement in juvenile correctional facilities." FSA ¶ 8. Medium security facilities must be licensed by an appropriate state agency and must meet the requirements of Exhibit 1. Further, Paragraph 8 states that these facilities maintain stricter security measures and may have a secure perimeter. This definition contrasts "medium security facilities" with placements in "juvenile correctional facilities." *Id.*

The Foundational Rule defines heightened supervision facilities in a manner fully consistent with Paragraph 8 of the FSA. *See* 45 C.F.R. § 410.1001; *see also* 89 Fed. Reg. 34,442 (describing the purpose of heightened supervision facilities as "provid[ing] care to unaccompanied children who require close supervision but do not need placement at a secure facility, including an RTC."). It separately defines and provides placement criteria for "secure facilities," consistent with other provisions of the FSA. *See, e.g.*, FSA ¶¶ 12.A, 21, 23.

Given the important differences between heightened supervision facilities (i.e., medium security facilities) and secure placements, the Foundational Rule separately describes factors for placement at secure and heightened supervision facilities. *See* 45 C.F.R. §§ 410.1105(a) and 410.1105(b). In establishing criteria for placement in heightened supervision facilities, the Foundational Rule differs from the 2019 Rule (Apprehension, Processing, Care, and Custody of Alien Minors and Unaccompanied Alien Children, 84 Fed. Reg. 44,392–535 (Aug. 23, 2019), which

did not specify any criteria for placement of children in such facilities. This is another protection provided by the Foundational Rule.

Section 410.1105(b)(1) provides that a placement in a heightened supervision facility requires clear and convincing evidence, and Section 410.1105(b)(2) describes criteria for such placements. Each criterion describes circumstances in which there is a need for heightened supervision. Section 410.1105(b)(2)(iv), describing one criterion, provides: "Has a non-violent criminal or delinquent history not warranting placement in a secure facility, such as isolated or petty offenses as described in paragraph (b)(2)(iii) of this section." This language must be read in conjunction with Section 410.1105(b)(2)(iii), which is expressly incorporated into Section 410.1105(b)(2)(iv). And Section 410.1105(b)(2)(iii) states: "Has displayed a pattern of severity of behavior, either prior to entering ORR custody or while in ORR care, that requires an increase in supervision by trained staff[.]"

Read together, these provisions do not provide that isolated or petty offenses alone are a justification for placement in a heightened supervision facility. Rather, they explain that in some circumstances non-violent or delinquent offenses could demonstrate a pattern of severity and behavior that prompts the need for heightened supervision. This heighted supervision is important both for the well-being of the child and the protection of others.

This reading is further consistent with both the FSA's requirement that children be placed in the least restrictive setting appropriate to their age and special needs, FSA Paragraph 11, and the requirements of the TVPRA,[1] as implemented at Rule Sections 410.1103 and 1105.

---

[1] *See* 8 U.S.C. § 1232(c)(2) ("Subject to section 279(b)(2) of title 6, an unaccompanied alien child in the custody of the Secretary of Health and Human Services shall be promptly placed in the least restrictive setting that is in the best interest of the child. In making such placements, the Secretary may consider danger to self, danger to the community, and risk of flight.").

3

The requirement that children must be placed in the least restrictive setting that is in the best interest of the child is a fundamental principle informing ORR's administration of the Unaccompanied Children Program, is referenced multiple times throughout the Preamble and text of the Foundational Rule,[2] and applies to any use of heightened supervision facilities and any other restrictive settings. The Foundational Rule is fully consistent with this requirement and likewise provides

---

[2] *See, e.g.,* Foundational Rule Sections 410.1003(f); 1103(a); 1109(a)(2); 1601(a); 1802(a). *See also* Preamble at 89 Fed. Reg. 34,403 (discussing circumstances in which additional time may be needed to make an initial placement determination for children when they are referred from other agencies); 89 Fed Reg. 34,410 (stating that ORR senior staff "must approve any [out-of-network] placement as the least restrictive setting appropriate for the child's needs"); 89 Fed. Reg. 34,413 ("ORR agrees that each unaccompanied child should be placed in the least restrictive setting that is in the best interest of the child and appropriate to the unaccompanied child's age and individualized needs, and that consideration of each child's individualized needs is a key component to ensuring their safety and welfare."); 89 Fed. Reg. 34,422 (describing the purpose of Section 410.1104 of the Rule as "establish[ing] ORR's obligation to place unaccompanied children in standard programs as opposed to restrictive placements or emergency or influx facilities" except in delineated circumstances); 89 Fed. Reg. 34,427 (stating that "in all cases where an unaccompanied child is placed in a secure facility (including an RTC), such a setting must be the least restrictive setting that is in the best interests of the child and appropriate to the child's age and individualized needs"); 89 Fed. Reg. 34,493 (describing limitations on the use of significant incident reports, based on the requirement to place children in the least restrictive setting); 89 Fed. Reg. 34,501 (describing the behavior management provisions of the Rule at Section 410.1304 as being consistent with statutory responsibilities to place unaccompanied children in the least restrictive setting available that is in their best interest, among others); 89 Fed. Reg. 34,563 (describing review of ORR decisions under Subpart J as "fundamental to ensuring unaccompanied children are placed in the least restrictive setting that is in their best interest while also considering the safety of others and runaway risk").

critical due process protections to guard against inappropriate restrictive placements.[3]

### B. Under the Foundational Rule, a Child May be Stepped Down From a Secure Facility to a Non-Restrictive Facility; If Placement in a Secure Facility Is No Longer Justified, a Child May Be Placed in a Heightened Supervision Facility Only Based on Clear and Convincing Evidence.

The Court expressed concern that under the Foundational Rule, a child in a secure facility could be stepped down only to a heightened supervision facility, and not to a standard program that is non-restrictive. However, under the Foundational Rule, a child may be stepped down to a heightened supervision facility or directly to a shelter, whichever is the least restrictive setting in the child's best interests, and consistent with other relevant considerations (e.g., ensuring the unaccompanied child's timely appearance before the immigration courts and protecting the unaccompanied child's well-being and that of others), as well as taking into account danger to self, danger to the community, and risk of flight, consistent with 8 U.S.C. § 1232(c)(2).

As noted above, ORR is required to place children "in the least restrictive setting appropriate to the minor's age and special needs." *See* FSA ¶ 11; *see also* 45 C.F.R. § 410.1103(a) ("ORR shall place each unaccompanied child in the least restrictive setting that is in the best interest of the child and appropriate to the unaccompanied child's age and individualized needs…"). These requirements are also consistent with the requirements of 8 U.S.C. § 1232(c)(2). For example, if after initial placement of a child in a restrictive placement ORR learns of additional information indicating that the child should be stepped down, ORR would transfer the child to the least restrictive setting that is in the child's best interests, based on

---

[3] If a child is placed in a heightened supervision facility, the Foundational Rule requires that notice, administrative review, and an opportunity to challenge the placement be provided. *See*, *e.g.*, §§ 410.1901 (restrictive placement case reviews), 410.1902 (placement review panel).

its updated information. *See* 45 C.F.R. § 410.1601(a). Further, Section 410.1105(b)(1) expressly requires that any placement of a child in a heightened supervision facility must be based on clear and convincing evidence documented in the child's case file, consistent with the *Lucas R.* preliminary injunction, *Lucas R. v. Becerra*, No. 18-cv-05741, ECF No. 391, Step-Up Class, ¶ 2. (C.D. Cal.). These same principles apply equally to initial placements and to stepping a child *down* from a secure placement.

In other words, if a child is ready to be stepped down from a secure facility, but continues to need additional supervision and support, the child may be stepped down to a heightened supervision facility. In fact, a placement in a heightened supervision facility can only be made if clear and convincing evidence supports such a restrictive placement, and if clear and convincing evidence does not support such a placement, a non-restrictive placement will be the appropriate placement. And, notably, if a child *is* stepped down to a heightened supervision facility, the same due process rights that apply to step-ups to any restrictive setting, such as notice, administrative review, and an opportunity to challenge the placement, also apply to step-downs to restrictive settings. *See*, *e.g.*, §§ 410.1901 (restrictive placement case reviews), 410.1902 (placement review panel).

**C. Under the Foundational Rule, Any OON Placements in a Restrictive Setting Are Subject to the Rule's Requirements for Restrictive Settings.**

As this Court recognized in its tentative ruling, the FSA does not expressly address the placement of unaccompanied children in OON facilities, as use of these facilities was not part of program operations in 1997. However, "[o]ver time, ORR has found that there are certain rare circumstances where a child has specific needs that cannot be accommodated within ORR's standard facilities and placement in an [OON] facility is necessary for the child to receive individualized specialized services." *See* ECF No. 1435-1, Defs.' Ex. D, Supplemental Declaration of Toby

6

Biswas ("Biswas Suppl. Decl.") ¶ 24. Therefore, the Foundational Rule addresses placements in these OON facilities, which serve individuals other than just unaccompanied children, and typically include hospitals, residential treatment centers, and therapeutic shelters, among others. The Rule provides essential procedural protections for the placement of children in them. *Id.*

While not all OON placements are restrictive, under the Foundational Rule, OON placements in restrictive settings *are* subject to the very same requirements that apply to ORR's in-network restrictive placements. ORR will place an unaccompanied child in an OON facility only if the federal field specialist and their supervisor approve the placement as the least restrictive placement in the child's best interest. Biswas Suppl. Decl. ¶ 26 (citing 89 Fed. Reg. 34,410). Importantly, as ORR explained in the Preamble, any OON restrictive placement would need to satisfy the criteria for placement or transfer to the same level of restrictive placement (secure, heightened supervision, or residential treatment center) within ORR's network. 89 Fed. Reg. 34,410. This includes, for secure OON placements, secure placement criteria codified at Section 410.1105, which are fully consistent with Paragraph 21 of the FSA. *Id.* Additionally, the same due process rights that apply to unaccompanied children placed in restrictive placements in ORR's network such as notice, administrative review, and an opportunity to request reconsideration of the placement, likewise apply to children placed in restrictive placements that are out-of-network. *See, e.g.*, 45 C.F.R. §§ 410.1901 (restrictive placement case reviews), 410.1902 (placement review panel).

With respect to out-of-network residential treatment centers ("OON RTC"), in particular, ORR has explained that, pursuant to Section 410.1105(c)(2), ORR will place an unaccompanied child at an OON RTC only "when a licensed clinical psychologist or psychiatrist consulted by ORR or a care provider facility has determined that the unaccompanied child requires a level of care only found in an OON RTC (either because the unaccompanied child has identified needs that cannot

be met within the ORR network of RTCs or no placements are available within ORR's network of RTCs), or that an OON RTC would best meet the unaccompanied child's identified needs." 89 Fed. Reg. 34,409. And consistent with the preliminary injunction in *Lucas R.*, ECF No. 391, Step-Up Class, ¶ 1, Section 410.1105(c)(2) specifically states that the criteria for placement in or transfer to RTCs within the ORR network apply to placement or transfer to OON RTCs. *Id.*

## III. CONCLUSION

For all the above reasons and those articulated in Defendants' prior briefing, the Court should terminate the FSA as to HHS in its entirety.

Dated: June 24, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director, District Court Section
Office of Immigration Litigation

*/s/ Fizza Batool*
FIZZA BATOOL
JOSHUA C. MCCROSKEY
Trial Attorneys
U.S. Department of Justice
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 616-4863
Email: fizza.batool2@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on June 24, 2024, I served a copy of the foregoing pleading on all counsel of record by means of the District Court's CM/ECF electronic filing system.

*/s/ Fizza Batool*
FIZZA BATOOL
Trial Attorney
U.S. Department of Justice