CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Carlos R. Holguín (Cal. Bar No. 90754)
Sarah E. Kahn (Cal. Bar No. 341901)
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Email: crholguin@centerforhumanrights.org

*Attorneys for Plaintiffs*
*Additional counsel listed on following page*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*, | No. CV 85-4544-DMG-AGRx |
| Plaintiffs, | |
| v. | PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO MOTION TO TERMINATE *FLORES* SETTLEMENT AS TO HHS |
| MERRICK GARLAND, Attorney General the United States, *et al.*, | |
| Defendants. | Hearing: June 21, 2024 Time: 10:00 a.m. Hon. Dolly M. Gee |

NATIONAL CENTER FOR YOUTH LAW
Mishan Wroe (Cal. Bar No. 299296)
Diane de Gramont (Cal. Bar No. 324360)
1212 Broadway, Suite 600 Oakland, CA 94612
Telephone: (510) 835-8098
Email: mwroe@youthlaw.org

NATIONAL CENTER FOR YOUTH LAW
Rebecca Wolozin (admitted *pro hac vice*)
818 Connecticut Ave. NW, Suite 425
Washington, DC 20006
Telephone: (202) 868-4792
Email: bwolozin@youthlaw.org

CHILDREN'S RIGHTS
Leecia Welch (Cal. Bar No. 208741)
2021 Fillmore Street
San Francisco, CA 94115
Telephone: (415) 602-5202
Email: lwelch@childrensrights.org

*Attorneys for Plaintiffs*

## Table of Contents

I.      INTRODUCTION.................................................................................................1

II.     ARGUMENT.......................................................................................................2

   A.   The Foundational Rule is Inconsistent with the Settlement....................2

     1.   All Children Placed Out-of-Network are Class Members Entitled to the Full Protections of the Settlement.......................................................................2

     2.   The Foundational Rule Does Not Comply with the Settlement's Requirements for Medium-Secure Placement ...................................................4

     3.   The Foundational Rule's Transfer Provisions Violate Paragraph 12.A of the Settlement.........................................................................................................6

   B.   HHS Has Not Yet Codified a Durable Remedy to Changed Licensing Circumstances ...................................................................................................8

   C.   Partial Termination is Contrary to Supreme Court Precedent............11

   D.   Any Remedy Must Ensure HHS is Bound by Enforceable Standards..16

III.    CONCLUSION.................................................................................................17

## Table of Authorities

### CASES

*Bobby M. v. Chiles*, 907 F.Supp. 368 (N.D. Fla. 1995) ............................................ 13
*Brown v. Bd. of Educ. of Topeka*, 978 F.2d 585 (10th Cir. 1992) ........................... 16
*Flores v. Lynch*, 828 F.3d 898 (9th Cir. 2016) .................................................. 2, 3, 4
*Flores v. Rosen*, 984 F.3d 720 (9th Cir. 2020)...................................................*passim*
*Flores v. Sessions*, 2018 WL 4945000 (C.D. Cal. July 9, 2018) .............................. 7
*Freeman v. Pitts*, 503 U.S. 467 (1992) .......................................................... 7, 12, 14
*Jeff D. v. Otter*, 643 F.3d 278 (9th Cir. 2011)............................................................ 13
*Kelly v. Wengler*, 822 F.3d 1085 (9th Cir. 2016).................................................... 11
*Moore v. Tangipahoa Parish School Bd.*, 921 F.3d 545 (5th Cir. 2019)................. 16
*Morgan v. Burke*, 926 F.2d 86 (1st Cir. 1991)......................................................... 16
*Rouser v. White*, 825 F.3d 1076 (9th Cir. 2016). ..................................................... 13
*Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992) ..................... 11, 12, 17
*Williams v. Edwards*, 87 F.3d 126 (5th Cir. 1996) ................................................. 16

### STATUTES

8 U.S.C. § 1232 ............................................................................................................ 8

### REGULATIONS

45 C.F.R. § 410.1001 ............................................................................................. 3, 8
45 C.F.R. § 410.1101 ............................................................................................. 7, 8
45 C.F.R. § 410.1105 ............................................................................................. 5, 6
45 C.F.R. § 410.1303 ................................................................................................. 9
45 C.F.R. § 410.1304 ................................................................................................. 4

### FEDERAL REGISTER

Unaccompanied Children Program Foundational Rule, 89 Fed. Reg. 34,384 (Apr. 30, 2024) ..................................................................................................... 9, 10
Unaccompanied Children Program Foundational Rule: Correction, 89 Fed. Reg. 53,359 (June 26, 2024)............................................................................................ 5

## I.      INTRODUCTION

Defendants' motion is premised on a false sense of urgency, asking the Court to rush to terminate the Settlement as to HHS even though ORR is still developing its response to the lack of state licensing in Texas and Florida and the Foundational Rule itself is not yet effective. Indeed, in the two days since Defendants filed their supplemental brief, ORR has made corrections to the Foundational Rule, including substantive edits to the heightened supervision criteria that directly undermine Defendants' arguments. *See* Section II.A.2, *infra*. Defendants' hurry seems motivated by their inaccurate and unsupported position that the Settlement cannot coexist with the Foundational Rule. The Settlement can coexist with overlapping ORR regulations. *See Flores v. Rosen*, 984 F.3d 720, 737, 744 (9th Cir. 2020).

Termination as to HHS is unjustified because the Foundational Rule is inconsistent with the Settlement as it deprives class members placed out-of-network ("OON") of their rights under the Settlement, authorizes placement in heightened supervision (or "medium security") facilities on grounds not permitted by the Settlement, and permits ORR to indefinitely delay receiving class members from DHS if children are apprehended in remote locations or alleged to be a danger to self or others, in violation of Paragraph 12.A's specific timeframes.

Most importantly, the Rule is fundamentally inconsistent with the Settlement's core licensing requirement, and Defendants have yet to develop a "durable remedy" to changed licensing circumstances in Texas and Florida. For the first time in their reply brief, Defendants describe additional steps ORR plans to take to increase oversight of unlicensed facilities. Significantly, however, none of these proposed steps are mentioned in or required by the Foundational Rule. If the Court grants immediate modification and termination, there will be no enforceable mechanism to ensure Defendants live up to their commitments and children will remain at risk. This would leave an unnecessary chasm between the Parties' original bargain and the post-modification future.

Finally, partial termination is not required or even contemplated by the Settlement and is not justified under governing caselaw. To the extent the Court concludes that immediate modification is needed, it should retain jurisdiction to enforce its modification order and ensure HHS is bound by enforceable requirements.

## II.   ARGUMENT

### A.   <u>The Foundational Rule is Inconsistent with the Settlement</u>

The Foundational Rule fails to implement the Settlement as to class members placed in OON facilities and medium-secure facilities and class members denied timely transfer to ORR custody because they are apprehended in remote locations or are alleged to be a danger to self or others.

Nothing in Defendants' supplemental briefing refutes these clear inconsistencies with the Settlement. Defendants do not contest that the Rule fails to provide Exhibit 1 protections to children placed OON, that the Rule permits children to be placed in medium-secure facilities even if they do not meet the criteria set out in Paragraph 21, or that the Rule's timeline for transfer of children apprehended in remote locations is inconsistent with the Settlement. *See* Defendants' Reply in Support of Motion to Terminate *Flores* Settlement as to HHS, 17-19 [Doc. # 1435] ("Ds. Reply").

#### 1.   All Children Placed Out-of-Network are Class Members Entitled to the Full Protections of the Settlement

Children placed in OON facilities are in ORR custody and are unambiguously class members under the plain language of the Settlement. *See Flores v. Lynch*, 828 F.3d 898, 905 (9th Cir. 2016). Although the Settlement does not explicitly mention out-of-network placements, it does not mention in-network placements either. The only relevant distinctions in the text of the Settlement are among programs state-licensed for the care of dependent children ("licensed program"), facilities designed for minors who require close supervision but not

secure placement ("medium security facility"), and secure facilities. *See* FSA ¶¶ 6, 8, 21, 23. Whether ORR enters into a long-term contract with a facility or places a child in a facility using an individual contract is irrelevant to the determination of children's rights under the Settlement.

Notably, this Court and the Ninth Circuit have repeatedly held that children in family detention facilities are entitled to the full protections of the Settlement even though such facilities are not mentioned in the Settlement. *See, e.g., Flores v. Lynch*, 828 F.3d at 906 (acknowledging "that the Settlement does not address the potentially complex issues involving the housing of family units" but holding that the Settlement remains applicable to accompanied minors).

While some children placed OON are in restrictive facilities, not all OON placements are restrictive. *See* 45 C.F.R. § 410.1001 (OON placements "may include hospitals, restrictive settings, or other settings outside of the ORR network of care"); *see also* Plaintiffs' Opposition to Defendants' Motion to Terminate *Flores* Settlement as to HHS, 13-14 [Doc. # 1427] ("Pls. Opp."). Regardless of whether children are placed in restrictive or non-restrictive OON placements, they are *Flores* class members entitled to the full protections of the Settlement.

Although Defendants assert that children placed in *restrictive* OON placements are entitled to certain *procedural* protections under the Rule, Defendants do not contest that children placed OON lack *substantive* rights under the Rule, in violation of the Settlement's minimum standards. *See* Defendants' Supplemental Brief in Support of Motion to Terminate *Flores* Settlement as to HHS, 7-8 [Doc. # 1443] ("Ds. Supp. Br."); Pls. Opp. at 12-14.[1] This means that

---

[1] Defendants suggest in their Reply that it would be infeasible to require Exhibit 1 standards for children placed out-of-network. *See* Des. Reply at 19. Defendants have not moved for modification of this requirement, nor do they explain which specific standards are infeasible and how it could possibly be a suitably tailored

PLAINTIFFS' SUPPLEMENTAL BRIEF
CV 85-4544-DMG-AGRX

under the Rule children in OON placements may be denied access to basic rights like daily outdoor activity and educational services, as has occurred in the past. *See* Pls. Opp. at 13-14; Declaration of Mishan Wroe ¶¶ 13-14 [Doc. # 1427-1]. They may also be subject to disciplinary practices that are otherwise prohibited by the Settlement and the Rule, simply because they are in an OON facility instead of an ORR care provider. *See* 45 C.F.R. § 410.1304. Defendants cannot unilaterally exclude children from the Settlement's protections by choosing to place them OON. The Settlement must remain in force as to all children placed OON.

### 2. The Foundational Rule Does Not Comply with the Settlement's Requirements for Medium-Secure Placement

Defendants incorrectly assert that "[t]he FSA does not specify the permissible criteria for when a child should be placed" in a heightened supervision ("medium security") facility. Ds. Supp. Br. at 1. Under the Settlement, a "medium security facility" is not a "licensed program" because it is not required to be licensed "for dependent children." *Compare* FSA ¶ 6 (definition of licensed program), *and* FSA ¶ 8 (definition of "medium security facility). The Settlement requires placement in a "licensed program" except in specified circumstances. *See* FSA ¶ 12.A; *see also* FSA¶ 19 ("Except as provided in Paragraphs 12 or 21, such minor shall be placed temporarily in a licensed program . . ..").

HHS thus cannot place a child in a medium-secure facility unless the child qualifies for an enumerated exception to licensed placement. The only relevant exception is Paragraph 21, which sets out the criteria for secure placement. *See* FSA ¶¶ 12.A, 19, 21. Defendants point to no other provision of the Settlement that

---

modification to exempt *all* OON facilities from *all* standards under the Settlement. *See* FSA, Ex. 1; *see also Flores v. Lynch*, 828 F.3d at 910 ("[W]e cannot fathom how a 'suitably tailored' response to the change in circumstances would be to exempt an entire category of migrants from the Settlement . . . ."). ORR has an obligation to contract with facilities that are able to meet minimum standards, or to themselves provide any minimum services the facility cannot provide.

permits an exception to placement in a licensed program for children deemed to require additional supervision. Paragraph 23 authorizes medium-secure placement as a "less restrictive alternative[]" for a child who could otherwise be "place[d] in a secure facility pursuant to Paragraph 21." FSA ¶ 23. Paragraph 23 is the only provision in the Settlement that delineates when a child can be placed in a medium-secure facility.

Defendants do not contest that the Rule permits children to be placed in heightened supervision facilities even if they do not meet the criteria set out in Paragraph 21. *See* Ds. Reply at 18-19. The Rule is therefore inconsistent with the Settlement. It is irrelevant that ORR requires "clear and convincing evidence" that a child meets heightened supervision criteria when the criteria itself is inconsistent with the Settlement. *Cf.* Ds. Supp. Br. at 3.

Contrary to Defendants' representations, the Rule does authorize placement in medium-secure based solely on isolated or petty offenses. Defendants' supplemental brief relies on a cross-reference that ORR has since stated is a technical error that will not be part of the Final Rule. Defendants assert that the "petty or isolated offenses" criterion in Section 410.1105(b)(2)(iv) must be read in conjunction with the "severity of behavior" criterion in Section 410.1105(b)(2)(iii). *See* Ds. Supp. Br. at 3. On June 26, 2024, ORR released a list of technical corrections to the Final Rule. *See* Unaccompanied Children Program Foundational Rule: Correction, 89 Fed. Reg. 53,359 (June 26, 2024), https://www.federalregister.gov/d/2024-13560. The corrected version of Section 410.1105(b)(2)(iv) now reads: "(iv) Has a non-violent criminal or delinquent history not warranting placement in a secure facility, such as isolated or petty offenses **as described in paragraph (a)(3)(i)** of this section." *Id.* at 53,361 (emphasis added). Section 410.1105(a)(3)(i) states that a child will not be placed in a secure facility for "(A) An isolated offense that was not within a pattern or practice of criminal activity and did not involve violence against a person or the use

or carrying of a weapon or (B) A petty offense, which is not considered grounds for stricter means of detention in any case." 45 C.F.R. § 410.1105(a)(3)(i). Under the corrected Rule, the cross-reference in Section 410.1105(b)(2)(iv) in no way limits placement based on isolated or petty offenses—it simply cross-references the definition of those terms.

Moreover, although Defendants assert that a child can be directly stepped down from a secure facility to a shelter, they do not cite any provision of the Rule contemplating direct step down from a secure facility to a non-restrictive placement. *See* Ds. Supp. Br. at 5. The fact remains that the Rule authorizes placement in medium-secure solely on the basis that a child "[i]s assessed as ready for step-down from a secure facility, including an RTC," without requiring any additional determination that the child cannot safely be placed in a non-restrictive setting. *See* 45 C.F.R. § 410.1105.

The Ninth Circuit previously rejected Defendants' argument that the overarching "least restrictive setting" requirement permits deviations from the specific substantive criteria of the Settlement. *See Flores v. Rosen*, 984 F.3d at 733 ("The government's assurance that it will comply with its obligation to place minors in the least restrictive setting appropriate does not affect that conclusion, as it would not prevent the government from relying on the catchall provision as a ground for the determination that a child's least restrictive setting is a secure facility."). For these reasons, the Rule's medium-secure placement criteria is plainly inconsistent with the Settlement. Because the medium-secure placement criteria is derived from Paragraphs 12.A, 21, and 23 of the Settlement, these paragraphs must remain in place as to HHS.

### 3. The Foundational Rule's Transfer Provisions Violate Paragraph 12.A of the Settlement

Unless a specific exception applies, Paragraph 12.A of the Settlement requires (1) transfer to a licensed program (2) within a defined timeframe. In the

case of "an emergency or influx," class members must be placed in licensed programs "as expeditiously as possible." FSA ¶ 12.A.3. A child apprehended in a remote location must be placed in a licensed program within five business days. FSA ¶ 12.A.4. In all other cases, children must be placed in a licensed program within three or five days, depending on where the child is apprehended. FSA ¶ 12.A. A delay in licensed placement beyond these timeframes is a violation of the Settlement. *See Flores v. Sessions*, 2018 WL 4945000, at \*2 (C.D. Cal. July 9, 2018).

Because DHS does not offer licensed placements, or even "standard program" placements as defined in the Rule, a delay in transfer from DHS to HHS custody inevitably creates a delay in licensed placement. Section 410.1101 of the Rule permits ORR to indefinitely delay licensed placement of children apprehended in remote locations or alleged to be a danger to self or others by delaying accepting custody from DHS. *See* 45 C.F.R. §§ 410.1101(b), (d) (exceptions to timely ORR placement). *See* Pls. Opp. at 11-12.

Defendants do not contest that the Rule's provisions relating to the transfer timeframe for children apprehended in remote locations are inconsistent with the Settlement, instead they assert that such transfers are DHS's responsibility. *See* Ds. Reply at 17-18. But ORR cannot disclaim responsibility for transfers under Paragraph 12.A when its own Rule addresses such transfers and affirmatively authorizes placement delays inconsistent with the Settlement. Moreover, it is self-evident that DHS cannot transfer a child to ORR unless ORR accepts custody. If ORR were to refuse to accept transfers of unaccompanied children from DHS, ORR would plainly be violating Paragraph 12.A of the Settlement. ORR's attempt to abdicate responsibility for compliance with Paragraph 12.A further illustrates why partial termination as to HHS is inappropriate given the "intertwined or synergistic" obligations of DHS and HHS. *See Freeman v. Pitts*, 503 U.S. 467, 497 (1992).

1    Moreover, contrary to Defendants' assertions in their reply, Plaintiffs do not
2    conflate transfer criteria and secure placement criteria. Rather, the Settlement itself
3    links these requirements. Specifically, Paragraph 12.A permits a delay in licensed
4    placement if a child meets Paragraph 21 criteria. It does not permit a delay in
5    licensed placement based on generalized "danger to self or others." Defendants'
6    contention that they merely need additional time to find an appropriate placement
7    masks the profound harms of prolonged DHS custody. Ds. Reply at 18; *see* Pls.
8    Opp. at 19, 22 (describing abusive conditions in DHS hotel detention when HHS
9    refused to timely accept custody of unaccompanied minors with heightened needs).

10    The Trafficking Victims Protection Reauthorization Act ("TVPRA") does
11    not offer adequate protection against indefinite delays in placement for children
12    apprehended in remote locations or alleged to be a danger to self or others. The
13    TVPRA requires transfer to HHS custody within 72 hours "[e]xcept in the case of
14    exceptional circumstances." 8 U.S.C. § 1232(b)(3). But the Rule interprets
15    "exceptional circumstances" to include apprehension in a remote location or an
16    allegation that the child "[p]oses a danger to self or others." 45 C.F.R.
17    §§ 410.1101(d)(5), (6)(i). Neither the TVPRA nor the Rule includes a time limit for
18    placement under these circumstances. Paragraph 12.A of the Settlement must
19    therefore remain in place as to HHS to ensure children are transferred within
20    required timeframes.

21    Because the Foundational Rule is inconsistent with the portions of the
22    Settlement related to OON placements, medium-secure placements, and transfer to
23    licensed programs, those provisions must remain in force as to HHS. *See Flores v.*
24    *Rosen*, 984 F.3d at 741.

25    **B. HHS Has Not Yet Codified a Durable Remedy to Changed Licensing**
26       **Circumstances**

27    The Foundational Rule is not a "durable remedy" to changed licensing
28    circumstances in Florida and Texas because Defendants' plans to provide oversight

for unlicensed facilities are not codified in the Foundational Rule and appear to be ever evolving.

The *only* monitoring of unlicensed facilities required by the Foundational Rule is a vague reference to "enhanced monitoring" of unlicensed facilities with no specific requirements. 45 C.F.R. § 410.1303(e). Accreditation is mentioned in the Preamble—not in the Rule itself—and characterized as a waivable requirement for ORR programs. *See* Unaccompanied Children Program Foundational Rule, 89 Fed. Reg. 34,384, 34,485 (Apr. 30, 2024). For the first time in their reply brief, Defendants describe an ACF Licensing Team that they assert will begin monitoring ORR programs as of July 1, 2024. *See* Ds. Reply at 12-13. Like accreditation, neither the Licensing Team itself nor any of its alleged responsibilities are required by the Rule. To Plaintiffs' knowledge, the existence and planned activities of the Licensing Team are not detailed publicly anywhere outside the declarations filed as part of Defendants' reply—not in the Rule, the Preamble to the Rule, or in HHS or ORR policies.[2] By contrast, states include detailed licensing oversight requirements in binding statutes and regulations to ensure that vetting, inspections, complaint investigations, and other monitoring occurs in practice. *See* Pls. Opp. at 7-9 (citing state statutes and regulations).

A mere expression of intent to engage in monitoring activities without binding requirements is not a suitably tailored modification and leaves children vulnerable to placement in unlicensed facilities with no guarantees of meaningful

---

[2] The Maloney declaration itself offers only broad representations of what the Licensing Team will do. *See* Declaration of Maxine M. Maloney [Doc. # 1435-2] ("Maloney Dec."). For example, Ms. Maloney asserts that "the ACF Licensing Advisory Team's efforts will include, in non-licensing states: rigorous initial vetting of prospective grantees with respect to adherence to state licensing standards, to support ORR decision-making as to making grant awards," without specifying what that vetting will entail. Maloney Dec. ¶ 7; *cf.* Pls. Opp. at 7-8 (describing specific state vetting requirements, including inspections).

oversight. HHS is still considering broader federal licensing regulations. *See* 89 Fed. Reg. at 34,392 n.61; *see also* Ds. Reply at 16 ("[T]here are multiple decisions remaining to be made relating to the development and implementation of a proposed federal licensing rule."). Defendants fail to elucidate what these "multiple decisions" are, when those decisions will be made, and *if* federal licensing regulations move forward, what the timeframe would be for that process.

Also for the first time in their reply brief, Defendants mention an Interim Final Rule ("IFR") on child abuse and neglect investigations. *See* Ds. Reply at 13 n.5. Notably, this IFR is specific to child abuse and neglect reporting, *not* licensing oversight more broadly. Defendants' Notice Regarding Interim Final Rule [Doc. # 1442]. Although Defendants represent that the IFR has been submitted to the Office of Management and Budget, it has not yet been promulgated, there is no guarantee it will be promulgated, and its contents are entirely unknown. *Id.* For instance, it is not clear what, if any, public mechanisms the IFR will create for children, mandatory reporters, or members of the public to report suspected child abuse or neglect to ORR investigative authorities. *Id.* Such complaints cannot be made directly to the Licensing Team, as that team is not public.

Given ORR's evolving response to changed licensing circumstances and lack of mandatory oversight mechanisms, modification is patently premature. As Plaintiffs previously stated, Plaintiffs have not and will not demand that ORR close all its facilities in Texas or Florida provided it acts with reasonable dispatch to establish enforceable federal licensing standards and monitoring mechanisms that provide children protections equivalent to those state licensing provides. *See* Pls. Opp. at 6. HHS has represented that it is in the process of promulgating such standards, and the agency has never explained why Settlement requirements should be jettisoned before it has comparable safeguards in place. *Id.* Indeed, in the absence of defined monitoring protocols, the Settlement's reporting and monitoring

PLAINTIFFS' SUPPLEMENTAL BRIEF
CV 85-4544-DMG-AGRX

provisions are the only binding mechanisms ensuring at least some independent oversight of ORR's unlicensed facilities.

If the Court believes immediate modification is required, the Court should at a minimum craft a modification order that requires Defendants to implement and adhere to comprehensive oversight similar to state licensure. The Court could instruct the Parties to meet and confer to propose a detailed modification order and retain jurisdiction to enforce this modification order. Such a modification would bring the Parties closer to their original bargain than the Rule's extremely general reference to "enhanced monitoring." *See Kelly v. Wengler*, 822 F.3d 1085, 1098 (9th Cir. 2016).

### C. Partial Termination is Contrary to Supreme Court Precedent

Defendants have not provided any legal basis for partial termination of some—but not all—the terms of the Settlement. The plain terms of Paragraph 40 of the Settlement permit only full termination. Defendants assert they are moving to terminate based only on changed circumstances and the "no longer equitable" prong of Federal Rule of Civil Procedure 60(b)(5). *See* Ds. Reply at 6-7. But the Supreme Court has made clear that in modifying a consent decree, "[a] court should *do no more*" than craft a modification "tailored to resolve the problems created by the change in circumstances" because "a consent decree is a final judgment that may be reopened only to the extent that equity require." *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 391 (1992) (emphasis added). The changed licensing circumstances in Florida and Texas justify—at most—a modification of the Settlement's state licensing requirement.

Defendants, however, ask the Court to do much more than modify the licensing requirement—they request partial termination of all terms of the Settlement covered by consistent regulations. This partial termination request is not

required to resolve the issues created by changed licensing circumstances.[3]

Defendants argue that equity requires termination as to HHS because the Foundational Rule allegedly complies with the Settlement. *See* Defendants' Memorandum of Points and Authorities in Support of Motion to Terminate, 24 [Doc. # 1414] ("Ds. MPA") ("Because HHS has implemented the FSA by enacting the comprehensive Foundational Rule, the Court should terminate the FSA as to HHS."). In other words, they request partial termination based on partial compliance, not unexpected changed circumstances. *See* Pls. Opp. at 17 n.8. Yet Defendants disclaim reliance on the first prong of Rule 60(b)(5) related to satisfaction of judgment. *See* Ds. Reply at 7. Defendants therefore offer *no* legal standard at all to justify their request for partial termination.

In *Freeman v. Pitts*, the Supreme Court directly addressed the equitable standard for partial termination of a "consent order" based on partial compliance.

---

[3] To the extent Defendants suggest that partial termination is warranted by the division of the former INS's responsibilities between HHS and DHS in the Homeland Security Act ("HSA"), they have entirely failed to meet their burden. Defendants do not make this argument in their opening brief and do not explain how the division of responsibilities makes compliance "substantially more onerous," "unworkable," or "detrimental to the public interest." *Rufo*, 502 U.S. at 384. This Court and the Ninth Circuit have repeatedly rejected the argument that the HSA is a changed circumstance warranting modification of the Settlement. *See, e.g., Flores v. Rosen*, 984 F.3d at 729 (detailing prior cases addressing HSA). Nor do Defendants explain why termination as to HHS would be a suitably tailored modification when the Parties negotiated for full codification of the Settlement and partial termination as to HHS would obstruct enforcement as to DHS. *See* Pls. Opp. at 20-22.

Nor is the Final Rule itself a a changed circumstance. Implementing regulations were actually anticipated—and indeed required—by the Settlement and do not make compliance more difficult. *See Rufo*, 502 U.S. at 760; *see also Flores v. Rosen*, 984 F.3d at 741 ("We reject the notion that the executive branch of the government can unilaterally create the change in law that it then offers as the reason it should be excused from compliance with a consent decree.").

503 U.S. at 472, 491. The Court held that the district court's discretion to approve partial termination "must be exercised in a manner consistent with the purposes and objectives of its equitable power." *Id.* at 491. Specifically, the Court outlined three "factors which *must* inform the sound discretion of the court in ordering partial withdrawal," including "[1] full and satisfactory compliance with the decree in those aspects of the system where supervision is to be withdrawn; [2] whether retention of judicial control is necessary or practicable to achieve compliance with the decree in other facets of the [] system; and [3] whether the [defendant] has demonstrated . . . its good-faith commitment to the *whole* of the court's decree . . .." *Id.* (emphasis added). As Plaintiffs have shown, Defendants cannot satisfy *any*— much less all three—of these factors. *See* Pls. Opp. at 16-25.

The three-factor *Freeman* test is the proper standard to apply when a party seeks partial termination of a consent decree based on partial compliance. *See, e.g.*, *Bobby M. v. Chiles*, 907 F.Supp. 368, 372 (N.D. Fla. 1995) ("*Freeman v. Pitts* sets out a three-part test for determination of whether partial termination of a consent decree is appropriate."). The Ninth Circuit has extended the *Freeman* test and applied the first and third factors to motions for full termination of a consent decree. *See Jeff D. v. Otter*, 643 F.3d 278, 288 (9th Cir. 2011); *Rouser v. White*, 825 F.3d 1076, 1081 (9th Cir. 2016). But it is illogical to argue that *Freeman* applies only in cases of full satisfaction of the decree under the first prong of Rule 60(b)(5) when *Freeman* itself was explicitly about partial termination based on equitable principles. *Cf.* Ds. Reply at 6-7.

Defendants do not identify a single case where a court partially terminated a consent decree based on partial compliance without undertaking a *Freeman* analysis. In *Horne*, the "durable remedy" at issue addressed the entire order, not parts of the order. 557 U.S. at 450.

The Ninth Circuit's opinion in *Flores v. Rosen* is fully consistent with *Freeman*. The Ninth Circuit stated:

> [T]he government *may move* to terminate those parts of the Agreement that are covered by the valid portions of the HHS regulations. *Any* motion to terminate the Agreement in part would have to take into account our holding in *Flores I* that the Agreement protects both unaccompanied and accompanied minors.

*Flores v. Rosen*, 984 F.3d at 744 n.12 (emphasis added). Defendants rely heavily on the first sentence—permitting them to file a motion for partial termination—but entirely dismiss the second sentence as inapplicable to HHS. *See* Ds. Reply at 20-21. The Ninth Circuit fully understood that HHS does not care for accompanied children. *Flores v. Rosen*, 984 F.3d at 729-30. But its instruction aligns with *Freeman*'s requirement that a party seeking partial termination demonstrate "good-faith commitment to the *whole* of the court's decree." *Freeman*, 503 U.S. at 491 (emphasis added). By contrast, the Ninth Circuit's footnote is not consistent with Defendants' suggestion that partial termination is automatic upon finding partial compliance.

Defendants also mischaracterize Plaintiffs' briefing before the Ninth Circuit. Although Plaintiffs argued that the termination clause itself does not permit partial termination, Plaintiffs further noted that:

> [T]he Government moved to *terminate* the Agreement in whole, not in part, and not to modify it at all . . . If the Government has grounds for modifying the Agreement it has not previously argued, *it is free to move the court below* for an appropriate order. The Government should not now be heard to complain that the district court failed to grant relief it failed to request.

*Flores v. Barr*, 2020 WL 474840, No. 19-56326, Plaintiffs-Appellees' Answering Brief at *43 (Jan. 21, 2020) (emphasis added). The Ninth Circuit agreed that any motion for partial termination must be heard in the first instance by this Court. *See Flores v. Rosen*, 984 F.3d at 737.

The Ninth Circuit never addressed Plaintiffs' argument that the termination clause does not permit partial termination and certainly did not hold that the

termination clause affirmatively authorizes partial termination. Even if the Ninth Circuit's opinion is construed as implicitly rejecting Plaintiffs' argument that partial termination is *never* permissible under the Settlement, that is not the argument Plaintiffs make here. Plaintiffs now acknowledge that partial termination may be justified *if* Defendants can meet the equitable standard set out in *Freeman*. The equitable standard for partial termination was not before the Ninth Circuit because Defendants never moved for partial termination. To the extent the Ninth Circuit's dicta in *Flores v. Rosen* is ambiguous, it should be read consistently with the text of the Settlement and with Supreme Court precedent. There is no reason to believe the Ninth Circuit intended to change the law of partial termination of a consent decree *sub silentio* through an instruction to Defendants to file a motion if they desired further relief.

Finally, partial termination of the Settlement is in no way required to permit consistent regulations to take effect and Defendants offer no legal authority stating otherwise. The Settlement and the Foundational Rule can coexist. *See Flores v. Rosen*, 984 F.3d at 737 ("Although we hold that the majority of the HHS regulations may take effect, we also hold that the district court did not abuse its discretion in declining to terminate those portions of the Agreement covered by the HHS regulations . . . The Agreement therefore remains in effect, notwithstanding the overlapping HHS regulations.").

In seeking to terminate the Settlement, Defendants have two choices. They can move to terminate based on Paragraph 40 of the Settlement, which provides for termination of "[a]ll terms" of the Settlement based on regulations fully implementing the Settlement, or they can move for partial termination by meeting the equitable standard announced in *Freeman* and followed by the Ninth Circuit. They have failed to satisfy either standard and partial termination should be denied.

### D. Any Remedy Must Ensure HHS is Bound by Enforceable Standards

Given the inconsistencies between the Rule and the Settlement, the absence of a true "durable remedy" due to Defendants' failure to codify an enforceable alternative to state licensure in Texas and Florida, and the lack of a legal justification for partial termination, termination of the Settlement as to HHS is unjustified.

Although Plaintiffs strongly believe that partial termination is not warranted under governing legal precedent, if the Court disagrees it could grant conditional termination of certain provisions but reserve the authority to reimpose those provisions if HHS does not follow through on its commitments. Because the Court retains jurisdiction over the case, it has the authority to modify the decree to reinstate terminated provisions. *See Williams v. Edwards*, 87 F.3d 126, 129, 131-32 (5th Cir. 1996) (district court had authority to reimpose consent decree terms after previously granting conditional termination as to some but not all state prisons); *Brown v. Bd. of Educ. of Topeka*, 978 F.2d 585, 592-93 (10th Cir. 1992) ("The decision of a court to relinquish supervisory control over one or more facets of the school system is not tantamount to an abandonment of jurisdiction."). It is especially important that the Court retain jurisdiction to reinstate the Settlement given the pending Congressional Review Act resolution that could result in the rescission of the Foundational Rule. *See* Plaintiffs' Notice of Legislative Developments as Related to Defendants' Motion to Terminate *Flores* Settlement as to HHS [Doc. # 1436].

Additionally, the Court has the authority to impose a probationary period prior to partial termination to give HHS the opportunity to institute a durable remedy by fully implementing and codifying an enforceable substitute for state licensure. *Cf. Moore v. Tangipahoa Parish School Bd.*, 921 F.3d 545, 549 (5th Cir. 2019) ("The district court concluded that the Board had gotten most of the way there, but that some doubt remained, warranting a two-year probationary period.");

*Morgan v. Burke*, 926 F.2d 86, 91 (1st Cir. 1991) (concluding that continued monitoring was justified "to attempt in a modest and limited way to assure that the attainment of long sought for goals was not illusory and ephemeral").

Finally, if the Court terminates specific provisions of the Settlement covered by consistent regulations as to HHS, Plaintiffs respectfully request the Court make clear that all other provisions of the Settlement remain intact as to HHS. *See Flores v. Rosen*, 984 F.3d at 744 n.12. For example, in addition to the previously mentioned inconsistencies, Paragraphs 24, 28-33, 37, and 40 are not covered by ORR's regulations. *See* Defendants' Motion to Terminate *Flores* Settlement as to HHS, Appendix A [Doc. # 1414-5 at 25-26, 30-38].[4] Without access to information about class members and the ability to visit facilities and conduct attorney-client interviews with class members, Plaintiffs will be unable to ensure Defendants' compliance with operative provisions of the Settlement.

## III.   CONCLUSION

For these reasons, the Court should deny Defendants' motion or, in the alternative, modify the Settlement no more than necessary to address changed licensing circumstances in Texas and Florida and retain jurisdiction to enforce the Settlement as modified. *See Rufo*, 502 U.S. at 391.

Dated: June 26, 2024         CENTER FOR HUMAN RIGHTS AND
                             CONSTITUTIONAL LAW
                             Carlos R. Holguín
                             Sarah E. Kahn

                             NATIONAL CENTER FOR YOUTH LAW
                             Mishan Wroe
                             Diane de Gramont
                             Rebecca Wolozin

---

[4] Although the Rule does require some data collection similar to that required in Paragraph 28A, Paragraph 28 is cross-referenced in Paragraph 29 and therefore must remain part of the Settlement.

1

2

CHILDREN'S RIGHTS
Leecia Welch

3

4

*/s/ Mishan Wroe*

5

Mishan Wroe
*One of the Attorneys for Plaintiffs*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18

1

## **CERTIFICATE OF COMPLIANCE**

I, the undersigned counsel of record for Plaintiffs, certify that this brief contains **5,432** words, which complies with the word limit of Local Rule 11-6.1.

Dated:  June 26, 2024

*/s/ Mishan Wroe*
Mishan Wroe


## **CERTIFICATE OF SERVICE**

I hereby certify that on June 26, 2024, I caused a copy of Plaintiffs' Request for Judicial Notice to be served to all counsel through the Court's CM/ECF system.

Dated:  June 26, 2024

*/s/ Mishan Wroe*
Mishan Wroe