BRIAN M. BOYNTON
Principal Deputy
Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director
FIZZA BATOOL
JOSHUA C. MCCROSKEY
Trial Attorneys
United States Department of Justice
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: 202-616-4863
Facsimile: 202-305-7000
Email: fizza.batool2@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*, | Case No. 2:85-cv-04544-DMG |
| Plaintiffs, | **JOINT STATUS REPORT IN RESPONSE TO ORDER, ECF NO. 1440** |
| v. | |
| MERRICK GARLAND, Attorney General of the United States, *et al.*, | Hearing Date: August 2, 2024<br>Time: 11:00 a.m.<br>Hon. Dolly M. Gee |
| Defendants. | |

On June 21, 2024, the Court ordered the parties to "meet and confer by July 19, 2024 regarding the present conditions at the [open-air detention sites ('OADS')], the status of any minors detained at the OADS, and how [U.S. Customs and Border

Protection ('CBP')] can come into compliance with both the [*Flores* Settlement Agreement ('FSA')] and the Court's April 3, 2024 Order." ECF No. 1440. The Court also ordered the parties to file a joint status report by July 26, 2024, prior to a status conference set for August 2, 2024. *Id.* The parties submit this joint status report in accordance with the Court's instructions.

On Tuesday, July 16, 2024, the parties met and conferred. The parties agreed that the overall number of apprehensions in the San Diego Sector ("SDC") has fallen over the last several weeks. Defendants informed Plaintiffs that CBP distributed guidance on June 5, 2024, to ensure compliance with the Court's April 3, 2024 Order. The parties discussed their respective understandings of the current factual situation. The parties continue to disagree regarding the present conditions at the OADS, the status of any minors at these locations, and whether CBP is in compliance with the FSA and the Court's April 3, 2024 Order.

I. **DEFENDANTS' REPORT**

    A. **Present Conditions at Outdoor Congregation Areas**

From June 1 to July 23, 2024, the overall numbers of apprehensions have decreased notably in the San Diego Sector ("SDC"). *See* Defs. Ex. A, Declaration of RJay S. Rippel ("Rippel Decl.") ¶ 4. Since June 1, 2024, SDC has documented nine events with over 50 individuals congregating in these areas. *Id.* The specific areas where these nine groups congregated were in the Brown Field Station area of operations (Gun Club, Cuchama Gate & Hwy 94), and the Boulevard Station area of operations (Zone 32 A). *Id.* These groups were transported from these areas within two hours of apprehension by a Border Patrol agent. *Id.*

In the areas that continue to be used by individuals, the number of minors apprehended has been much lower. Due to the smaller numbers, CBP is able to transport individuals much quicker than in the past. Once any minors or family units are apprehended, they are promptly taken into custody and transported to Border Patrol facilities.

**B.      Compliance with the FSA and the Court's April 3, 2024 Order**

On June 5, 2024, Border Patrol issued a guidance memorandum to all sectors about compliance with the Court's April 3, 2024 Order. Given the complexity of the situation on the ground, and the factual and legal findings of the Court, the memorandum was written following a thorough assessment and agency review process. The memorandum instructs agents not to direct noncitizens to outdoor congregation areas where noncitizens have begun congregating or to encourage noncitizens to congregate in certain areas. It instructs agents not to organize, prioritize, or triage individuals *unless* taking steps to apprehend them, and reminds agents that telling individuals not to leave a certain area may trigger custodial obligations. The memorandum states that agents will not install temporary physical barriers around outdoor congregation areas and will not prevent volunteers or other members of the public from accessing areas in which noncitizens are congregating, unless the area is already restricted to the public or an individual is determined to pose a risk to the life and safety of noncitizens or CBP personnel. Even in restricted areas, agents are instructed not to limit volunteers' and advocates' ability to remain near the area and interact with any noncitizens in the area. The memorandum also requires agents to prioritize the transportation and processing of family units and unaccompanied minors at the time of apprehension. Finally, consistent with the memorandum, CBP may provide humanitarian aid to meet the needs of individuals who are waiting to be transported to Border Patrol facilities on a case-by-case basis.

As a result of implementing the guidance issued on June 5 and the lower numbers of apprehensions, CBP is in compliance with the FSA and with each part of the Court's April 3, 2024 Order. *See* ECF No. 1406, at 11–12. CBP is expeditiously processing class members in custody. Within a few hours of apprehending minors in the field, CBP is placing them in facilities that are safe and sanitary and that are consistent with DHS's concern for the particular vulnerability of minors. CBP is not directing minors to outdoor congregation areas or holding

minors in outdoor congregation areas, except for the amount of time DHS reasonably requires to prepare the minor and actively arrange for transport of the minor to a suitable facility. In addition, the CBP Juvenile Coordinator is maintaining statistical information on minors held in CBP custody for more than 72 hours, and the CBP Juvenile Coordinator is monitoring compliance with the FSA with respect to any minors apprehended in outdoor congregation areas. Finally, CBP is providing class members contact with family members apprehended with the minor.

During the meet-and-confer, Plaintiffs expressed concern that certain minors are still being directed to outdoor locations from which CBP transports them to Border Patrol facilities. CBP is not aware of agents directing minors to travel to any outdoor congregation areas, and the June 5, 2024 guidance prohibits such direction. Even if Plaintiffs' view of the factual situation is correct, however, CBP is in compliance with the Court's Order because direction is permitted for the purpose of arranging transport of minors from the field. CBP also notes that only directing minors to outdoor congregation areas does not necessarily trigger legal custody when CBP has not exercised discretion over an individual's health and welfare or otherwise taken physical control of an individual. In the April 3, 2024 Order, the Court held that minors were in CBP's custody when CBP agents had discretion as to minors' health and welfare (although noting that the "mere provision of humanitarian aid would not necessarily imply" custody); and exercised physical control over minors by directing and transporting migrants to the outdoor congregation areas, telling migrants they must stay in certain areas, passing out wristbands, and lining up and counting migrants. ECF No. 1406, at 6–9. Rather, here, CBP is not directing minors to specific areas and even if that did occur, CBP is swiftly transporting minors from the field to safe and sanitary Border Patrol facilities that provide the necessary amenities.

## II. PLAINTIFFS' REPORT

U.S. Customs and Border Protection ("CBP") has failed to comply with the Court's April 3, 2024, order regarding Open Air Detention Sites ("OADS"). *See* Order re CBP Juvenile Care Coordinator's Interim Report, June 21, 2024 [Doc. # 1440]; Order re Pls.' Mot. to Enforce Settlement Re Open Air Detention Sites, April 3, 2024 [Doc. # 1406] ("April 3 Order"). Moreover, as detailed below, the guidance CBP issued to ensure compliance is plainly insufficient. Plaintiffs respectfully request the Court order further remedial measures to protect children's safety. Specifically, Plaintiffs request the Court order Defendants issue new guidance requiring that: (1) CBP immediately begin arranging transport for class members who are directed to proceed to and/or remain at an open-air site; (2) CBP ensure class members have immediate access to drinking water and that their other immediate medical and safety needs are met; and (3) CBP document a child's length of stay at open-air sites beginning at the time CBP first encounters and directs a child to proceed to and/or remain in an open-air site.

### A. CBP's Internal Guidance is Insufficient to Ensure Compliance with the Court's Order

During the Parties' meet and confer discussion on July 16, 2024, Defendants represented that CBP was implementing the Court's April 3 Order through new internal guidance. Following this conversation, Defendants shared a three-page guidance memorandum dated June 5, 2024.[1]

The June 5 guidance fails to comply with the Court's order and is insufficient to protect class members' rights. Rather than provide clear guidance on

---

[1] It is unacceptable that CBP took over two months to issue basic guidance implementing the Court's order, which was effective immediately. *See* April 3 Order at 11-12. Between April and June, numerous class members were placed in danger because of CBP's failure to comply. *See* Pls.' Response to CBP Juvenile Coordinator Report on Open-Air Detention Sites, May 17, 2024 [Doc. # 1422] ("Pls. Response").

4

steps CBP agents should take upon encountering noncitizens, CBP's guidance aims to avoid custodial responsibilities altogether by instructing agents not to direct noncitizens to outdoor congregation areas and not to take other actions that might indicate custody. In practice, however, CBP agents continue to direct and/or transport noncitizens—including children—to specific outdoor sites to await processing for hours without adequate water, food, or shelter. *See* Declaration of Pedro Rios ¶¶ 5-7, July 19, 2024 ("Rios Dec."); Declaration of Erika Pinheiro ¶¶ 9-11, July 25, 2024 ("Pinheiro Dec."). This same pattern has persisted throughout this litigation—CBP consistently claims that it does not direct or transport noncitizens to open-air sites while the evidence on the ground plainly demonstrates otherwise. *See* April 3 Order at 8; Pls. Response at 3-4; *cf.* Declaration of Brent L. Schwerdtfeger ¶ 15, March 15, 2024 [Doc. # 1398-1] ("Schwerdtfeger Dec.").

Because CBP's guidance fails to acknowledge the reality that CBP agents *are* directing noncitizens to open-air sites, it does not include directives necessary to comply with the Court's order. In other words, if a CBP agent encounters a noncitizen child suspected to be inadmissible and is unable to immediately transport the child, the current guidance tells the agent what *not* to do but does not provide affirmative instructions as to what the agent must do. As a result, children are left in unsafe conditions while CBP attempts to avoid responsibility.

The Court ordered CBP to "cease directing minors to open-air sites or holding minors in open-air sites, except for the amount of time DHS reasonably requires to prepare the minor and/or actively arrange for transport of the minor to a more suitable facility, as this behavior constitutes unnecessary delay." April 3 Order at 11-12 ¶ 3. CBP's guidance, by contrast, instructs agents that they *should not* organize, prioritize, or triage noncitizens at outdoor sites. The guidance goes on to state that agents will prioritize the transport and processing of family units and unaccompanied children "[a]t the time of apprehension." The term "apprehension"

5

is undefined in the guidance, however, and Defendants have previously argued that apprehension does not occur until the noncitizen is formally processed and transported out of the open-air site. *See* Defendants' Opposition to Motion to Enforce at 10-13, March 15, 2024 [Doc. # 1398]. Rather than requiring expeditious processing from the time CBP first directs or holds minors in open-air sites—as required by the Court's order—the CBP guidance appears to prohibit prioritizing children for processing until such time that CBP agents unilaterally decide to transport the child. At a minimum, agents are receiving unclear and contradictory instructions as to when to prioritize children for processing.

Similarly, while the Court ordered that statistical information be "*inclusive of* the amount of time any Class Member spends in the open-air sites," April 3 Order at 12 ¶ 4, CBP's guidance indicates that length of time in custody begins at the time of *apprehension.* As just discussed, CBP appears to define apprehension much more narrowly than the Court's order and thus the CBP guidance does not count the time a child is held at an open-air site toward the child's length of stay. The CBP Juvenile Coordinator's report indicated that length of time in custody is calculated from the time of the field interview, which may occur long after a child is first directed to an open-air site. *See* Pls. Response at 5-6.

Alarmingly, the guidance indicates that sectors *may* provide limited humanitarian aid but does not *require* agents to take any steps to ensure that class members are safe and are treated "with special concern for their particular vulnerability as minors." FSA ¶¶ 11-12. In recent weeks CBP agents have directed children to walk for miles to open-air sites in extremely hot temperatures without offering water or taking other minimal steps to ensure the child's immediate safety. *See* Pinheiro Dec. ¶¶ 9, 11. CBP agents have also directed injured children to walk to open-air sites without providing any medical assistance. *See* Declaration of Lilian Serrano ¶ 9, May 17, 2024 [Doc. # 1422-12].

6

CBP's guidance largely reasserts CBP's previously rejected factual and legal positions and does not protect class members. Although Plaintiffs acknowledge that the numbers of children in open-air sites have decreased, this appears to be largely the result of a decrease in unauthorized crossings in the San Diego Sector rather than a change in CBP policy. Children remain at risk and will continue to be at risk until CBP implements policies and practices that fully protect their rights under the Settlement. Further remedial measures are therefore necessary. *See* April 3 Order at 11 ("Failure to process minors in a reasonably expeditious manner following notice of this decision may result in further remedial measures.").

### B. Additional Remedial Measures are Necessary to Ensure Compliance

Plaintiffs respectfully request the Court order CBP to immediately issue new guidance that sets out affirmative steps CBP agents must take when they encounter someone they suspect to be an inadmissible child, including at a minimum: (1) if a CBP agent directs the child to proceed to and/or remain at an open-air site, the agent must immediately begin arranging transport for the child and document these efforts; (2) from the time CBP directs a child to proceed to and/or remain at an open-air site until the child is transported to a safe and sanitary facility, CBP must ensure the child has drinking water and that the child's other immediate medical and safety needs are met, consistent with CBP's special concern for the particular vulnerability of minors; and (3) the child's length of stay must be documented beginning at the time CBP first encounters and directs a child to proceed to and/or remain in an open-air site. Direction to an accompanying adult should be considered direction to the child, even if a CBP agent does not speak to the child individually.

Plaintiffs further request the Court order the CBP Juvenile Coordinator

provide a comprehensive report on CBP's compliance with the Court's orders and CBP's implementation and enforcement of its internal guidance, including statistical information on children's length of stay over the entire reporting period (inclusive of the time in open-air sites). *See* April 3 Order at 12 ¶ 4. Plaintiffs believe that further monitoring by the Independent Monitor and Special Medical Expert may also be beneficial.

Dated: July 26, 2024                           Respectfully submitted,

*/s/ Mishan Wroe*
Mishan Wroe (Cal. Bar No. 299296)
NATIONAL CENTER FOR YOUTH LAW
Diane de Gramont (Cal. Bar No. 324360)
1212 Broadway, Suite 600
Oakland, CA 94612
Telephone: (510) 835-8098
Email: mwroe@youthlaw.org

CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Carlos R. Holguín (Cal. Bar No. 90754)
Sarah E. Kahn (Cal. Bar No. 341901)
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Email: crholguin@centerforhumanrights.org

CHILDREN'S RIGHTS
Leecia Welch (Cal. Bar No. 208741)
2021 Fillmore Street
San Francisco, CA 94115
Telephone: (415) 602-5202
Email: lwelch@childrensrights.org

NATIONAL CENTER FOR YOUTH LAW
Rebecca Wolozin (admitted *pro hac vice*)

818 Connecticut Ave. NW, Suite 425
Washington, DC 20006
Telephone: (202) 868-4792
Email: bwolozin@youthlaw.org

*Attorneys for Plaintiffs*

BRIAN M. BOYNTON
Principal Deputy
Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director

*/s/ Fizza Batool*
FIZZA BATOOL
JOSHUA C. MCCROSKEY
Trial Attorneys
United States Department of Justice
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: 202-616-4863
Facsimile: 202-305-7000
Email: fizza.batool2@usdoj.gov

*Attorneys for Defendants*

**Attestation of Authorization to File**

All other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

*/s/ Fizza Batool*
FIZZA BATOOL
Trial Attorney

## CERTIFICATE OF SERVICE

I certify that on July 26, 2024, I served a copy of the foregoing pleading and attachments on all counsel of record by means of the District Court's CM/ECF electronic filing system.

/s/ *Fizza Batool*
FIZZA BATOOL
Trial Attorney
U.S. Department of Justice