CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Carlos R. Holguín (Cal. Bar No. 90754)
Sarah E. Kahn (Cal. Bar No. 341901)
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Email: crholguin@centerforhumanrights.org

*Attorneys for Plaintiffs*

*Additional counsel listed on following page*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MERRICK GARLAND, Attorney General the United States, *et al.*, <br><br> Defendants. | No. CV 85-4544-DMG-AGRx <br><br> JOINT STATUS REPORT RE EVIDENTIARY HEARING <br><br> JUDGE: Hon. Dolly M. Gee <br><br> Evidentiary Hearing: November 15, 2024 <br> Time: 10 a.m. |

NATIONAL CENTER FOR YOUTH LAW
Mishan Wroe (Cal. Bar No. 299296)
Diane de Gramont (Cal. Bar No. 324360)
1212 Broadway, Suite 600
Oakland, CA 94612
Telephone: (510) 835-8098
Email: mwroe@youthlaw.org

NATIONAL CENTER FOR YOUTH LAW
Rebecca Wolozin (admitted *pro hac vice*)
818 Connecticut Ave. NW, Suite 425
Washington, DC 20006
Telephone: (202) 868-4792
Email: bwolozin@youthlaw.org

CHILDREN'S RIGHTS
Leecia Welch (Cal. Bar No. 208741)
2021 Fillmore Street
San Francisco, CA 94115
Telephone: (415) 602-5202
Email: lwelch@childrensrights.org

CHILDREN'S RIGHTS
Eleanor Roberts (admitted *pro hac vice*)
88 Pine Street, Suite 800
New York, NY 10005
Telephone: (212) 683-2210
Email: eroberts@childrensrights.org

On April 3, 2024, the Court granted in part and denied in part Plaintiffs' motion to enforce the *Flores* Settlement Agreement ("FSA") regarding "open-air detention sites" ("OADS"). [Doc. # 1406] ("April 3 Order"). On August 2, 2024, the Court ordered the parties to "meet and confer regarding the conditions at the OADS, the status of any minors held at the OADS, and how to remedy any continuing disagreement as to [U.S. Customs and Border Protection's ('CBP')] compliance with both the FSA and the Court's April 3, 2024 Order." Doc. # 1458 at 2. The Court ordered the parties to file a Joint Status Report prior to the hearing regarding their meet and confer efforts and "including a summary of what, if any, disputed facts remain." *Id.*

The parties submitted a joint status report in accordance with the Court's order on September 13, 2024. Doc. # 1471. As of that date, the parties' meet and confer efforts were continuing and CBP was still considering Plaintiffs' suggested edits to the CBP guidance document addressing "Open-Air Congregation Sites." *Id.* at 2. On September 17, 2024, the Court approved the parties' stipulation to continue the evidentiary hearing to November 15, 2024. Doc. # 1473.

On September 24, 2024, Defendants informed Plaintiffs that Plaintiffs' recommendations would not be adopted, and the parties moved toward preparing for an evidentiary hearing. Pursuant to the Court's September 17, 2024, order, the parties exchanged witness lists on September 27, 2024, and lodged declarations on October 4, 2024. Each of the declarants was cross-examined over a two-day period between October 23 and October 24, 2024, and the parties lodged transcripts from those depositions on November 1, 2024. Doc. #s 1496-1, 1497-1, 1497-4, 1497-7.

The parties now file this joint status report to inform the Court of the status of the dispute in advance of the November 15, 2024 evidentiary hearing and to request clarification as to the procedure at that hearing.

**A.**   **Plaintiffs' Positions**

This dispute arose after Plaintiffs informed the Court of their belief that

Defendants have not implemented the Court's April 3 Order as evidenced by their failure to adopt a policy that fully implements the Order. The parties continue to dispute the following facts:

**1. Whether CBP Directs Children to Open-Air Sites**

It is undisputed that Border Patrol agents escort or transport noncitizens—including children—to open-air sites to await further processing and transportation. *See* Declaration of Patricia D. McGurk-Daniel ¶ 9 [Doc. # 1479-1]; Deposition of Patricia D. McGurk-Daniel p. 46:3-10, 47:4-19, 49:18-50:1, 108:8-10 [Doc # 1496-1] ("McGurk-Daniel Deposition"); *see also* Declaration of Adriana Jasso ¶ 9 [Doc. # 1478-1] ("Jasso Decl."); Declaration of Lilian Serrano ¶ 7 [Doc. # 1478-3] ("Serrano Decl."). Chief Patrol Agent McGurk-Daniel acknowledged that Border Patrol agents could drive noncitizens to Whiskey 8 and leave them there in exigent circumstances, and that exigent circumstances are not rare. McGurk-Daniel Deposition at 108:11-19, 110:10-13.

Plaintiffs contend that Border Patrol agents also regularly instruct noncitizen families and children to walk to open-air sites such as Whiskey 8 to await further processing and transportation. *See* Jasso Decl. ¶¶ 9-12 & Att. A; Serrano Decl. ¶¶ 7-8; Declaration of Pedro Rios ¶¶ 13-14 [Doc. # 1478-2]; Deposition of Pedro Rios at 49:8-20; 54:23-55:9, 56:18-57:14 [Doc. # 1497-7] ("Rios Deposition"); Deposition of Lilian Serrano at 36:2-18 [Doc. #1497-1] ("Serrano Deposition"). Chief McGurk-Daniel acknowledged that Border Patrol agents did direct noncitizens to open-air sites in the past when border crossings were high and that it is still possible that a Border Patrol agent would ask a family to walk to a different location if transportation is not immediately available. McGurk-Daniel Deposition at 22:16-23:12, 51:23-52, 106:19-107:11. Agents also instruct families to wait at the place of first encounter. Serrano Decl. ¶ 10.

**2. Whether CBP's June 5 Guidance Implements the Court's April 3 Order**

CBP's June 5, 2024, guidance instructs agents <u>not</u> to direct noncitizens to

wait at open-air sites but does not provide any specific guidance as to what agents must do when noncitizen children are transported, escorted, or directed to wait at open-air sites. [Doc. # 1459] (Under Seal); McGurk-Daniel Deposition at 106:19-107:11, 111:1-112:10. Because Border Patrol agents do, in practice, transport, escort, and direct noncitizen children to open-air sites, the June 5 guidance does not implement the Court's April 3 order. Chief McGurk-Daniel acknowledged that it may not be possible to follow this guidance if the number of crossings increases—precisely when children will be most at risk and most in need of clear procedures to ensure their safe and expeditious processing. McGurk-Daniel Deposition at 106:19-107:11

Specifically, the June 5 guidance does not require Border Patrol agents to expeditiously arrange transport to a safe and sanitary facility for noncitizen children directed to or held at open-air sites. [Doc. # 1459] (Under Seal); *cf.* April 3 Order at 11-12 ¶¶ 2-3. The guidance instead instructs agents "that they should not take steps to organize, prioritize, or triage noncitizens who are at an outdoor congregation area, unless they are taking steps to apprehend a noncitizen, at which point custodial obligations will be triggered." Doc. # 1459 at 2. As discussed below in relation to children's time in custody, a child can be detained at an open-air site before they are formally apprehended. McGurk-Daniel Deposition at 37:23-38:11, 41:21-42:14, 43:22-44:13, 46:3-10, 47:4-19, 119:3-21. Further, the June 5, 2024, guidance does not require Border Patrol agents to treat children detained in open-air sites as class members and with "special concern for their particular vulnerability as minors," FSA ¶ 11. The guidance does not require agents to ask about a child's immediate medical and safety needs or provide children with drinking water, food, shade, or restrooms, regardless of how long children are directed to walk to or wait at an open-air site. [Doc. # 1459] (Under Seal); *see also* McGurk-Daniel Deposition at 115:9-116:3. This can lead to dangerous situations for medically vulnerable minors. Jasso Decl. ¶ 15; *cf.* Serrano Decl. ¶ 10.

### 3. Whether CBP Holds Children at Open-Air Sites Longer than Necessary to Arrange Transport

In recent months, Border Patrol has held young children—including infants—at Whiskey 8 for up to seven hours. *See* Rios Decl. ¶¶ 16-17; Jasso Decl. ¶¶ 13, 15-16; Rios Deposition 52:5-11; 73:13-19. Border Patrol does not provide food, shelter, or warm clothing or blankets, at Whiskey 8, and only inconsistently provides access to water. Jasso Decl. ¶ 14; Rios Decl. ¶¶ 9-11; Serrano Decl. ¶ 8. Under these circumstances, it is unsafe for children to spend even a couple of hours at Whiskey 8. Migrants have also reported being instructed by Border Patrol to wait through the night at other locations between the two border walls. Serrano Decl. ¶ 10. There is no time limit for how long children can remain at open-air sites awaiting transport. McGurk-Daniel Deposition at 64:16-24.

Whiskey 8 is not located in a remote area; it is close to the city of San Diego and is accessible by large transport buses. McGurk-Daniel Deposition at 98:22-25; Rios Decl. ¶ 7. The number of individuals crossing the border has declined significantly in recent months. McGurk-Daniel Deposition at 23:9-11; Serrano Decl. ¶ 11. Given low census numbers and the accessibility of Whiskey 8 to Border Patrol stations, children should not be required to wait outdoors for multiple hours.

### 4. Whether CBP Accurately Records Children's Time in Custody at Open-Air Sites

The Court ordered the CBP Juvenile Coordinator to "maintain records and statistical information on minors held in CBP custody for more than 72 hours, *inclusive of* the amount of time any Class Member spends in the open-air sites" and to "monitor compliance with the Agreement with respect to any minors held in open-air sites." April 3 Order at 12 ¶ 4. The CBP Juvenile Coordinator's reports on open-air sites have reported children's time in custody from the time of the field interview or the time of mobile intake. *See* Doc # 1466-1 at 5, 22; Doc. # 1413-1 at

16 & n.1. If mobile intake is not available in the field, the time in custody is recorded from when processing begins at a CBP station. Doc # 1466-1 at 5. CBP's June 5, 2024, memorandum similarly provides that time in custody begins when a noncitizen is apprehended and transported to a CBP facility. Doc. # 1459-1 at 3.

This system for tracking time in custody does not accurately account for the time class members spend in open-air sites because Border Patrol agents may detain and transport noncitizen children to an open-air site prior to conducting a field interview and formally apprehending a child. McGurk-Daniel Deposition at 19:17-20:19; 35:15-24; 47:4-19, 119:3-21. In numerous cases mobile intake does not work in the field and processing begins only when individuals reach a station. McGurk-Daniel Deposition at 68:2-70:3; Doc # 1466-1 at 5. CBP also records the time individuals remain in the field after first encounter with an agent, McGurk-Daniel Deposition at 72:2-10, 73:12-16, 75:8-11, 80:5-18, but the Juvenile Coordinator has not reported this information. The time from first encounter with a CBP agent is a more accurate reflection of how long children are in custody than the time of the formal field interview or mobile intake, which can take place significantly later.

B.  **Defendants' Positions**

The parties disagree about the following issues: (1) whether CBP directs minors to an area located adjacent to and on the south side of a section of the secondary border fence, called "Whiskey 8" in violation of the Court's April 3, 2024 Order; (2) whether CBP holds minors at Whiskey 8 in excess of the time CBP reasonably requires to prepare the child and/or actively arrange for transport of the child to a CBP facility; (3) whether CBP accurately records time in custody for class members in outdoor congregation areas ("OCAs"); (4) whether CBP must offer water, food, shelter, and medical checks to class members while they await transport to a Border Patrol station; and (5) whether CBP complies with the Court's April 3, 2024 order. Defendants discuss Whiskey 8 because Plaintiffs' arguments and

evidence focus exclusively on Whiskey 8. Given that Plaintiffs have not offered evidence of noncompliance at OCAs other than Whiskey 8, there is no genuine dispute about CBP's compliance with the April 3, 2024 Order outside Whiskey 8.[1]

### 1. Whether CBP directs minors to Whiskey 8 in violation of the Court's April 3, 2024 Order

CBP does not have a pattern or practice of directing class members to OCAs and does so only in limited circumstances that do not violate the Court's April 3 Order. Border Patrol Agents may direct class members to locations where transportation to a Border Patrol station or processing facility is possible. When Border Patrol Agents encounter class members between the primary and secondary border fences north of Tijuana, Agents sometimes escort class members to Whiskey 8 for such transportation. This is because the secondary fence at Whiskey 8 contains a gate through which people can walk (when it is open) to exit the area between the primary and secondary border fences, and the ground is flat and smooth enough to allow for transportation out of the area. Agents may sometimes transport individuals from other parts of the area between the primary and secondary border fences to Whiskey 8 in exigent circumstances, such as medical emergencies. In addition, Agents may sometimes inform class members that humanitarian supplies are available at Whiskey 8. Neither transporting, escorting, directing, nor providing information in such circumstances violates the Court's order of April 3, 2024. ECF No. 1405. Directing a minor to OCAs does not constitute custody when CBP does not have decision-making authority over the minor's health and welfare or has not otherwise taken physical control.

---

[1] Because the Court has not held the Evidentiary Hearing, the record is not complete. Defendants therefore do not provide citations for factual assertions herein.

## 2. Whether CBP holds minors at Whiskey 8 in excess of the time CBP reasonably requires to prepare the minor and/or actively arrange for transport of the minor to a CBP facility

CBP disputes Plaintiffs' apparent assertion that minors are in custody whenever they have encountered a Border Patrol Agent or whenever Border Patrol is aware of the minors' presence. To the extent class members are in CBP custody at Whiskey 8, CBP holds class members only for the length of time reasonably required to prepare a minor and to arrange for transport to a CBP facility. The length of time that class members may wait for such transport varies based on numerous factors including the number of migrants encountered in a group, the remoteness of the areas where the class members are encountered, vehicle and staffing constraints, and competing priorities such as humanitarian and medical emergencies in the area where the class member is encountered or elsewhere within Border Patrol San Diego Sector.

## 3. Whether CBP accurately records minors' time in custody

CBP records time in custody starting when an individual is arrested. Arrest occurs when there is probable cause to determine that a violation of law has occurred. The time of arrest is the only administrable point at which to start time in custody. At the time of apprehension, CBP prioritizes the transportation and processing of family units (which by definition include minors), unaccompanied children, and other vulnerable individuals. The Court did not define the moment when custody begins.

## 4. Whether CBP must offer water, food, shelter, and medical checks to class members while they await transport to a Border Patrol station

The Court did not require CBP to offer water, food, shelter, or medical checks to class members any time while they await transport to a Border Patrol station.

### 5. Whether CBP substantially complies with the Court's April 3, 2024 order

On June 5, 2024, Border Patrol issued a guidance memorandum to all sectors about compliance with the Court's April 3, 2024 Order. Whether the guidance, in conjunction with existing San Diego Border Patrol policies, practices, and procedures, is compliant with the Court's Order, however, is a question of law—not a question of fact. The parties do not dispute the contents of the guidance. Factfinding regarding the guidance, therefore, is not necessary.

The memorandum instructs Agents not to direct noncitizens to OCAs or tell noncitizens that leaving an OCA would impact the noncitizens' processing. ECF No. 1459-1, at 2–3. This instruction implements the Court's Order to cease directing minors to OCAs. ECF No. 1406, at 8, 11–12. The memorandum also requires Agents to prioritize the transportation and processing of family units and unaccompanied minors at the time of apprehension. ECF No. 1459-1, at 3. This requirement implements the Court's directive not to hold class members in OCAs "except for the amount of time DHS reasonably requires to prepare the minor and/or actively arrange for transport of the minor to a more suitable facility." ECF No. 1406, at 12. To comply with the Court's Order as to recording time in custody, *id.* at 12, the memorandum provides instructions on when an individual's time in custody begins and encourages the use of mobile intake. ECF No. 1459-1, at 3. Finally, the memorandum provides that CBP may provide humanitarian aid to meet the needs of individuals who are waiting to be transported to Border Patrol facilities on a case-by-case basis. ECF No. 1459-1, at 3. The Court's Order acknowledged that "the mere provision of humanitarian aid would not necessarily imply" custody. ECF No. 1406, at 8. Thus, the memorandum appropriately implements the Court's Order.

### C. Joint Request for Clarification

The parties seek clarification on the following procedural questions regarding the hearing:

(1) Will the parties be permitted to present witnesses for direct examination,

or is the Court's preference to limit the live testimony to cross examination only? Does the Court have any limitations as to time for the direct, cross-examination, and re-direct of the four witnesses? Defendants' position is that time limits will not be necessary.

(2) Would the Court like the parties to file proposed orders corresponding to each parties' position regarding the ongoing factual disputes?

(3) Should the parties exchange exhibits or submit an exhibit list before the Evidentiary Hearing? If so, on what date? Will the parties move to admit exhibits as they come up during the hearing?

Dated: November 8, 2024

CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW
Carlos R. Holguín
Sarah Kahn

NATIONAL CENTER FOR YOUTH LAW
Mishan Wroe
Diane de Gramont
Rebecca Wolozin

CHILDREN'S RIGHTS
Leecia Welch
Eleanor Roberts

*/s/ Mishan Wroe*
Mishan Wroe
*One of the Attorneys for Plaintiffs*

Dated: November 8, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division
DAVID M. MCCONNELL
Director
WILLIAM C. SILVIS
Assistant Director

CHRISTINA PARASCANDOLA
Senior Litigation Counsel

*/s/Joshua C. McCroskey*
JOSHUA C. MCCROSKEY
KATELYN MASETTA-ALVAREZ
Trial Attorneys
U.S. Department of Justice
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-305-1540
joshua.c.mccroskey@usdoj.gov

*Attorneys for Defendants*

## **CERTIFICATION**

Pursuant to Local Rule 5-4.3.4(a)(2)(i), I certify that all of the above signatories concur in this filing's content and have authorized the filing.

Dated: November 8, 2024     */s/ Mishan Wroe*
                            Mishan Wroe
                            *One of the Attorneys for Plaintiffs*