CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Carlos R. Holguín (Cal. Bar No. 90754)
Sarah E. Kahn (Cal. Bar No. 341901)
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Email: crholguin@centerforhumanrights.org

*Attorneys for Plaintiffs*

*Additional counsel listed on following page*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*,<br><br>            Plaintiffs,<br><br>v.<br><br>MERRICK GARLAND, Attorney General of the United States, *et al.*,<br><br>            Defendants. | No. CV 85-4544-DMG-AGRx<br><br>MOTION TO MODIFY 2022 CBP SETTLEMENT<br><br>JUDGE: Hon. Dolly M. Gee<br><br>Hearing: January 24, 2024<br>Time: 9:30 a.m. |

NATIONAL CENTER FOR YOUTH LAW
Mishan Wroe (Cal. Bar No. 299296)
Diane de Gramont (Cal. Bar No. 324360)
1212 Broadway, Suite 600
Oakland, CA 94612
Telephone: (510) 835-8098
Email: mwroe@youthlaw.org

NATIONAL CENTER FOR YOUTH LAW
Rebecca Wolozin (admitted *pro hac vice*)
818 Connecticut Ave. NW, Suite 425
Washington, DC 20006
Telephone: (202) 868-4792
Email: bwolozin@youthlaw.org

CHILDREN'S RIGHTS
Leecia Welch (Cal. Bar No. 208741)
2021 Fillmore Street
San Francisco, CA 94115
Telephone: (415) 602-5202
Email: lwelch@childrensrights.org

CHILDREN'S RIGHTS
Eleanor Roberts (admitted *pro hac vice*)
88 Pine Street, Suite 800
New York, NY 10005
Telephone: (212) 683-2210
Email: eroberts@childrensrights.org

# Table of Contents

I.  INTRODUCTION ..................................................................................... 1

II.  BACKGROUND .................................................................................... 2

  A.  Overview of 2022 CBP Settlement ..................................................... 2

  B.  CBP Continues to Hold Class Members for Extended Periods in RGV and El Paso Thereby Exacerbating Harms of Detention ................................... 3

  C.  Brief History of CBP Non-Compliance .............................................. 4

    1.  *CBP's failure to comply with key terms of the Settlement* ...................... 4

    2.  *The transition to internal monitoring remains incomplete* ...................... 5

III.  ARGUMENT ........................................................................................ 6

  A.  Legal Standard ................................................................................... 6

  B.  CBP Has Failed to Substantially Comply with the Settlement ............ 8

    1.  *CBP has never substantially complied with the family unity provisions of the Settlement* ............................................................................... 8

      a. ... *CBP routinely separates class members from their family members in detention.* ........................................................................ 9

      b. ....*CBP does not comply with family visitation requirements of the Settlement.* ......................................................................... 11

    2.  *CBP has never substantially complied with the phone and legal counsel access provisions of the Settlement* ................................................ 13

    3.  *CBP has never substantially complied with requirements to provide sufficient clean or warm clothing* ................................................... 14

    4.  *CBP has never substantially complied with the child-friendly, trauma-informed approach required by the Settlement* ................................... 15

    5.  *CBP has not implemented satisfactory self-monitoring policies and protocols* ................................................................................... 19

  C.  Extending the CBP Settlement is a Suitably Tailored Modification in the Public Interest ...................................................................................... 20

IV.  CONCLUSION ................................................................................... 23

# Table of Authorities

**CASES**                                                   **Page(s)**

*David C. v. Leavitt*,
  242 F.3d 1206 (10th Cir. 2001)..................................................................7, 21

*Dep't of Fair Emp. and Hous. v. Law Sch. Admission Council*,
  12-CV-01830-JCS, 2018 WL 1156605 (N.D. Cal. Mar. 5, 2018)...............21, 22

*Flores v. Barr*,
  2020 WL 5491445 (C.D. Cal. Sept. 4, 2020)..............................................13

*Flores v. Barr*,
  2020 WL 5666550 (C.D. Cal. Oct. 4, 2020)................................................22

*Flores v. Lynch*,
  828 F.3d 898 (9th Cir. 2016)......................................................................6

*Flores v. Sessions*,
  394 F.Supp.3d 1041 (9th Cir. 2017)............................................................13

*Jeff D. v. Otter*,
  643 F.3d 278 (9th Cir. 2011)..........................................7, 11, 13, 14, 15, 19, 21

*Kelly v. Wengler*,
  822 F.3d 1085 (9th Cir. 2016)..............................................6, 7, 20, 21, 22

*Kerr v. Brede*,
  180 Cal. App. 2d 149 (1960)......................................................................13

*Labor/Cmty. Strategy Ctr. v. Los Angeles Cnty. Metro. Transp. Auth.*,
  564 F.3d 1115 (9th Cir. 2009)..............................................................6, 7, 22

*Rouser v. White*,
  825 F.3d 1076 (9th Cir. 2016)..........................................................7, 11, 12, 21

*Rufo v. Inmates of Suffolk County Jail*,
  502 U.S. 367 (1992)..................................................................................6

*Serpa v. Cal. Sur. Investigations, Inc.*,
  215 Cal. App. 4th 695 (2013)....................................................................14

*Thompson v. U.S. Dep't of Hous. & Urb. Dev.*,
  404 F.3d 821 (4th Cir. 2005)......................................................................7

iv

*United States v. California*,
No. 06-CV-2667, 2012 WL 12906030 (C.D. Cal. Sept. 25, 2012) ...................... 7

**FEDERAL REGULATIONS**

6 C.F.R. § 115.114 ................................................................................................. 10

**STATUTES**

Prison Rape Elimination Act (PREA) ………………………………………….. 10

**OTHER AUTHORITIES**

Carlo Schuengel et al., *Children with Disrupted Attachment Histories:
Interventions and Psychophysiological Indices of Effects* CHILD & ADOLESCENT
PSYCHIATRY & MENTAL HEALTH 2 (2009) ............................................................ 9

U.S. CUST. AND BORDER PROT., NATIONAL STANDARDS ON TRANSPORT, ESCORT,
DETENTION, AND SEARCH (2015) ........................................................................ 8

# I.   INTRODUCTION

For years, U.S. Customs and Border Protection ("CBP") detained children in deeply inhumane and unsafe conditions in violation of the *Flores* Settlement Agreement ("FSA"). In 2019, after multiple Court orders finding CBP in violation of the FSA, Plaintiffs requested a temporary restraining order to address emergency circumstances in CBP facilities in the El Paso and Rio Grande Valley ("RGV") sectors. Specifically, children were unnecessarily separated from family and held for weeks without basic sanitation, nutrition, or the essential requirements for sleep. A dangerous flu was spreading and CBP was failing to provide necessary medical treatment. Mem. of P. & A. in Supp. of Pls.' Ex Parte App. [Doc. No. 572-1] ("Pls.' TRO App.").

In 2022, after years of court-ordered mediation, the Court approved a settlement agreement clarifying CBP's obligations under the FSA for children in the RGV and El Paso sectors. The 2022 CBP Settlement Agreement ("Settlement"), provides for a 2.5-year term and requires independent monitoring and the creation of self-monitoring protocols to ensure that children continue to be held in compliant conditions following the termination of the Settlement. [Doc. No. 1254-1].

Despite the Settlement's clear instructions, CBP continues to hold children in an environment that disregards their fundamental needs and causes harm. CBP has never substantially complied with the Settlement, as reflected in the Juvenile Care Monitor ("JCM")'s consistent reports of non-compliance. In violation of the Settlement, CBP routinely separates children from parents and trusted family members, denies access to legal counsel, denies clean and warm clothing, and provides limited or no child-friendly activities, recreation, or trauma-informed care. The harms caused by these violations are exacerbated by prolonged periods of detention—often a week or longer, even during periods of low census. Finally, despite some important new protocols, CBP is not yet capable of self-monitoring.

CBP's lack of substantial compliance is a significant changed circumstance that justifies modifying the Settlement under Federal Rule of Civil Procedure 60(b). It is vitally important that the Court and JCM continue to oversee the CBP Settlement. To ensure CBP achieves substantial compliance with the Settlement and the FSA, Plaintiffs request the Court modify the Settlement's termination date and extend the Settlement for an additional 2.5 years, or for however long the Court deems appropriate.

## II.    BACKGROUND

### A. Overview of 2022 CBP Settlement

On July 29, 2022, the Court approved a settlement agreement representing the Parties' "understanding of the meaning of certain provisions" - Paragraphs 11 and 12A - "of the Flores Settlement Agreement ("FSA"), as they apply to conditions of CBP detention" and specifically in the El Paso and RGV sectors. CBP Settlement 1; *see also* Order Re Pls.' Ex Parte App. for TRO 1 [Doc. No. 576]; Pls.' TRO App. 1-2.

The Settlement requires access to sanitation, hygiene, and basic physical accommodations (CBP Settlement § VII.4-7); a child-friendly, trauma-informed environment (*Id.* at §§ VII.3.D.7, VII.7.7, VII.8.B.C.2); family unity while in CBP custody and visitation with family members held apart from class members (*Id.* at § VII.8.B); a caregiver program (*Id.* at § VII.9); access to phones and a list of legal service providers (*Id.* at § XI, Exhibit 3); and medical protocols (*Id.* at § VII.3).

The Court appointed Dr. Paul Wise as JCM on August 3, 2022 for a 16-month term. *Id.* at § IX; Order Appointing JCM [Doc. No. 1280]. The Court appointed Andrea Ordin as Legal Advisor and then as JCM, with Dr. Wise serving as Medical Expert and Dr. Nancy Ewen Wang serving as Medical Advisor. *See* Order Granting Legal Advisor [Doc. No. 1320]; Order Approving Medical Professionals [Doc. No. 1389]; Order Approving Extension of JCM Term 1-2, May 23, 2024 [Doc. No. 1426] ("May 2024 JCM Extension"). The Monitors have

filed seven reports with the Court, each highlighting areas of continued noncompliance. *See* JCM Report, January 30, 2023 [Doc No. 1326] ("Jan. 2023 JCM Rep."); JCM Report, July 18, 2023 [Doc. No. 1352] ("July 2023 JCM Rep."); JCM Report, September 15, 2023 [Doc. No. 1360] ("Sept. 2023 JCM Rep."); JCM Report, November 13, 2023 [Doc. No. 1372] ("Nov. 2023 JCM Rep."); JCM Report, May 6, 2024 [Doc. No. 1412] ("Apr. 2024 JCM Rep."); JCM Report, September 10, 2024 [Doc. No. 1468] ("Aug. 2024 JCM Rep."); JCM Report, December 13, 2024 [Doc. No. 1522] ("Dec. 2024 JCM Rep.").

The Settlement establishes a process for transitioning monitoring from the JCMs to CBP. CBP Settlement § IX.12-13. CBP must develop internal protocols that the JCM must approve. CBP Settlement § IX.12. The Settlement provides for a transition period of 30 days during which the JCM will help "ensure an effective transition of monitoring functions." *Id.* at § IX.13.

The Court has extended the JCM's term three times because of a need for continued monitoring. *See* Order for Extension of JCM, December 14, 2023 [Doc. No. 1381]; May 2024 JCM Extension; Order for Extension of JCM, September 11, 2024 [Doc. No. 1470] ("Sept. 2024 JCM Extension"). Most recently, the Court extended the term until December 27, 2024, to allow the Monitors to "make a judgment about whether the existing and new internal protocols are sufficiently robust" to allow monitoring responsibilities to be transferred to CBP. Sept. 2024 JCM Extension 2. In her final report, the JCM did not affirmatively "provide final approval of" CBP's internal monitoring protocols, in part because some protocols remain in the development stage. *Id.* at 6, 26.

The Settlement's original termination clause provided for 2.5 years of compliance. CBP Settlement § II.8. It is currently scheduled to terminate on January 29, 2025. Sept. 2024 JCM Extension 6.

**B. <u>CBP Continues to Hold Class Members for Extended Periods in RGV and El Paso Thereby Exacerbating Harms of Detention</u>**

1    Compliance with the Settlement is especially important because children –

2    particularly accompanied children – are commonly detained for prolonged periods

3    well-exceeding 72 hours. *See, e.g.*, Aug. 2024 JCM Rep. 5-6 (60 children held

4    from six to 14 days in RGV in June and 151 children held between five and 14

5    days in El Paso in May); Jan. 2023 JCM Rep. 14 (half of the accompanied children

6    in custody over 72 hours were under 7 years old). Most recently, despite no

7    overcrowding, some families "had been in custody as long as 15 to 20 days." Dec.

8    2024 JCM Rep. 5; *see also* Sept. 2024 JCM Rep. 8, 10 (most children held for

9    prolonged periods are of tender age).

10    While the Settlement did not resolve Plaintiffs' claims regarding prolonged

11    stays in CBP custody (CBP Settlement Preamble), prolonged detention compounds

12    the harm of Settlement violations. Separating children from family and holding

13    them in windowless pods with little or no recreation or activities is exponentially

14    more concerning when, each month, hundreds of accompanied children are

15    spending between four and 20 days in facilities intended for short-term use (72

16    hours or less). *See* Aug. 2024 JCM Rep. 6, 8; Dec. 2024 JCM Rep. 5; *see also* FSA

17    ¶ 12A; CBP Settlement § VIII.

18    **C. Brief History of CBP Non-Compliance**

19    **1. CBP's failure to comply with key terms of the Settlement**

20    The JCM has filed seven reports, each identifying non-compliance with key

21    terms of the Settlement. The violations identified include: (1) routine separation of

22    children from their family members with no articulated reason; (2) lack of

23    visitation with family members; (3) insufficient warm clothing; (4) practices

24    inconsistent with a child-friendly, trauma-informed environment; and (5) failure to

25    properly implement the Settlement's caregiver program. *See* Jan. 2023 JCM Rep.,

26    July 2023 JCM Rep., Sept. 2023 JCM Rep., Nov. 2023 JCM Rep., Apr. 2024 JCM

27    Rep., Aug. 2024 JCM Rep., Dec. 2024 JCM Rep.

28

In 2023 and 2024, Plaintiffs documented and raised with Defendants these violations as well as CBP's failure to provide clean and warm clothing, legal service provider lists, and access to telephones, particularly for accompanied children. *See* Pls.' Resp. to JCM Report, September 22, 2023 [Doc. No. 1362] ("Pls.' Sept. Resp."); Pls.' Resp. to JCM Report, November 17, 2023 [Doc. No. 1374] ("Pls.' Nov. Resp."); *see also* Ex. 1, Decl. of Sarah Kahn, December 12, 2024 ("Kahn Decl."); Kahn Decl. Ex. 1B, 1C; Ex. 2, Decl. of Rebecca Wolozin, December 20, 2024 ("Wolozin Decl."); Wolozin Decl. Ex. 2A, 2C.

Although CBP has made progress with regard to medical care, the final JCM report reveals serious concerns that require ongoing monitoring, including for example (1) resistance from CBP agents to some medical transfers and a "system for conveying medical information to CBP personnel [that is still] in transition;" (2) use of small medical isolation rooms that "requires immediate reconsideration;" (3) inadequate communication with hospitals regarding a child's medical information, and "no process requiring notification [to] the parent of results of medical examination or procedures;" (4) custodial policies that fail to protect the privacy of minors during medical procedures; (5) incorrect medical information provided to ORR; and (6) CBP having "no standard protocol" to "ensure appropriate referral for . . . children at significantly elevated risk who require specialized care soon after release." Dec. 2024 JCM Rep. 14-19.

## 2. The transition to internal monitoring remains incomplete

CBP has not yet finalized how it will monitor compliance with its newly developed policies and protocols. Because of CBP's limited progress toward creating adequate internal monitoring protocols, the JCM term has been extended for a full year beyond the initial 16-month term. Sept. 2024 JCM Extension 1-2; *see also* Aug. 2024 JCM Rep. 22; Apr. 2024 JCM Rep. 28; CBP Settlement §§ XIII, IX.10.

The final JCM report identifies some areas where CBP has developed monitoring protocols and other areas where protocols are absent or under development. Dec. 2024 JCM Rep. 19-28. The final report highlights the need for continued monitoring of time in custody, general conditions and amenities, caregivers, housing and visitation practices, and medical care. *Id.* at 19-28. Importantly, the JCM has been unable to evaluate the implementation of CBP's monitoring protocols in critical areas, including caregivers, provision of urgent medical care and medical surveillance of children at elevated medical risk. *Id.* at 24-28; *id.* at 28 ("[M]any of the *most important* components of the system are still being implemented or have had only minimal operational experience in actual facility settings.") (emphasis added).

## III.    ARGUMENT

### A. Legal Standard

The FSA and Settlement are consent decrees. *See Flores v. Lynch*, 828 F.3d 898, 905 (9th Cir. 2016). The Court has inherent power—codified at Federal Rule of Civil Procedure 60(b)—to modify a consent decree in response to changed circumstances, including by extending the termination date of the decree in whole. *Kelly v. Wengler*, 822 F.3d 1085, 1097-98 (9th Cir. 2016).

Modification is warranted if the moving party establishes "that a significant change in circumstances warrants revision of the decree" and the Court finds that the "proposed modification is suitably tailored to the changed circumstance." *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383 (1992). Changed factual circumstances justify modification if compliance with the original terms is "more onerous, unworkable, or detrimental to the public interest." *Labor/Cmty. Strategy Ctr. v. Los Angeles Cnty. Metro. Transp. Auth.*, 564 F.3d 1115, 1120 (9th Cir. 2009) (internal quotation omitted).

"The failure of substantial compliance with the terms of a consent decree can qualify as a significant change in circumstances that would justify the decree's

temporal extension." *Id.* at 1120-21; *see also Kelly*, 822 F.3d at 1098 ("Under well

established law, substantial violation of a court order constitutes a significant

change in factual circumstances."); *Thompson v. U.S. Dep't of Hous. & Urb. Dev.*,

404 F.3d 821, 834 (4th Cir. 2005); *David C. v. Leavitt*, 242 F.3d 1206, 1211-12

(10th Cir. 2001); *United States v. California*, No. 06-CV-2667, 2012 WL

12906030, at *1 n.1, 3 (C.D. Cal. Sept. 25, 2012). This type of change in

circumstances is an unanticipated one. *See Thompson*, 404 F.3d at 828-29

("Plaintiffs would not have given up their claims in exchange for an agreement that

they anticipated would not be followed").

"[D]istinct provisions of consent decrees are independent obligations, *each*

*of which* must be satisfied" to achieve substantial compliance. *Rouser v. White*, 825

F.3d 1076, 1081 (9th Cir. 2016) (emphasis added). Substantial compliance also

requires that "the larger purposes of the decrees have been served." *Jeff D. v. Otter*,

643 F.3d 278, 288 (9th Cir. 2011). Even where a party has complied with some

terms of a settlement, "there can be no 'substantial performance' where the part

unperformed touches the fundamental purpose of the contract and defeats the

object of the parties." *Id.* (internal citation omitted). "[M]erely taking significant

steps toward implementing the decree falls far short of 'substantial compliance.'"

*Rouser*, 825 F.3d at 1082 (internal citations omitted).

"[A] modification of a court order is 'suitably tailored to the changed

circumstance' when it 'would return both parties as nearly as possible to where

they would have been absent' the changed circumstances." *Kelly*, 822 F.3d at 1098

(citations omitted). Extending the termination date of a consent decree is a

common modification when a party has failed to substantially comply. *See, e.g.*,

*Kelly*, 822 F.3d at 1098; *Labor/Cmty. Strategy Ctr.*, 564 F.3d at 1120-21; *see also*

*Thompson*, 404 F.3d at 834; *David C.*, 242 F.3d at 1211-12. Extension of a

settlement can be a suitably tailored remedy to provide Plaintiffs with the original

bargained-for period of compliance. *Kelly*, 822 F.3d at 1097-98 (full extension

equal to the initial two-year term of the agreement justified where non-compliance with one provision raised concerns about compliance in other respects of the settlement).

Because CBP has never substantially complied with key terms of the Settlement, changed circumstances justify an extension of the Settlement for an additional 2.5 years and a six-month extension of the JCM term.

**B.    CBP Has Failed to Substantially Comply with the Settlement**

**1.    CBP has never substantially complied with the family unity provisions of the Settlement**

The Settlement requires class members be held together with accompanying family members, including non-parents or legal guardians, "absent an articulable operational reason" that has been recorded for each individual family that has been separated. CBP Settlement §§ VII.8.B.1-3. "Family member" includes relatives like grandparents, aunts, and uncles. *Id.* at §§ VII.8.B.2-3.

"The essential context for these [family unity] Settlement provisions and their legal assessment is the fundamental understanding that hold[ing] a child separately while in custody is bad for children. Separating a child from a parent can be profoundly traumatic for children and can have lasting, harmful effects." Sept. 2023 JCM Rep. 28. Conversely, "there is likely no greater contributor to the well-being of children in custody than holding them together with a parent or trusted adult." Jan. 2023 JCM Rep. 49.

Family unity is also required by CBP's National Standards on Transport, Escort, Detention, and Search ("TEDS"). CBP Settlement § VIII.8.B.1. TEDS provide that "CBP will maintain family unity to the greatest extent operationally feasible, absent a legal requirement or an articulable safety or security concern that requires separation," and "family units with juveniles should not be separated," including holding unaccompanied children with siblings or non-parental adult

relatives. U.S. CUST. AND BORDER PROT., NATIONAL STANDARDS ON TRANSPORT,
ESCORT, DETENTION, AND SEARCH (2015) §§ 1.9, 4.3, 5.6.

Being forcibly separated from a close family member is an extremely
distressing experience for a child. *See, e.g.*, Carlo Schuengel et al., *Children with
Disrupted Attachment Histories: Interventions and Psychophysiological Indices of
Effects*, 26 CHILD & ADOLESCENT PSYCHIATRY & MENTAL HEALTH 2 (2009),
(separations may inhibit children's regulatory processes including temperature
regulation, nutrition, and emotional regulation, in addition to causing the
perception of danger on a neurological level).

> a. CBP routinely separates class members from their family
> members in detention.

The JCMs have identified unjustified, routine separation of children and
their family members in every JCM report. *See* Jan. 2023 JCM Rep. 50 (young
children held in different pods than their caregiving adult relatives and, "CBP
personnel could not provide a particular reason for these separations while in
custody"); July 2023 JCM Rep. 27; Sept. 2023 JCM Rep. 6, 23 (documenting "the
regular practice of separating children from their parents while in custody" in the
RGV sector, including young children of the same gender as their parent); Nov.
2023 JCM Rep. 6; Apr. 2024 JCM Rep. 15-16; Aug. 2024 JCM Rep. 12-14 ("The
holding of children apart from a trusted adult . . . occurs in both JPFs"); Dec. 2024
JCM Rep. 5 ("CBP personnel were unclear about the protocol being used to
determine when to hold children separately from trusted adults").

The practice of routinely separating minors from their parents, siblings, and
other family members remains especially pervasive in the RGV sector. *Flores*
counsel interviews in September 2024 revealed routine separation of families
based on age (older than 12) and regardless of gender. *See, e.g.* Ex. 3, Declaration
of C.N.T.F. ¶¶ 5-6, 8, September 18, 2024 ("C.N.T.F. Decl."); Ex. 4, Declaration of
N.M.F.C. ¶ 4, September 18, 2024 ("N.M.F.C. Decl.") (13-year-old-girl separated

from mother and younger sister); Ex. 5, Declaration of M.A.A. ¶ 4, September 18,
2024 ("M.A.A. Decl.") (13-year-old girl separated from mother and younger
sister).

CBP's insistence on separating children from their family members
undermines the broader purpose of the Settlement by causing class members to
experience "significant emotional distress related to separation." Sept. 2023 JCM
Rep. 29-30; *see also* Dec. 2024 JCM Rep. 6; Ex. 6, Declaration of F.J.D.A. ¶ 4,
September 19, 2024 ("F.J.D.A. Decl.") ("I felt terrible when they forced me to go
without [my mom]. I was scared but I had no choice."); Ex. 7, Declaration of B.B.
¶¶ 9-10, September 18, 2024 ("B.B. Decl."); Ex. 8, Declaration of K.P.I.C. ¶¶ 8-9,
September 18, 2024 ("K.P.I.C. Decl."); Ex. 9, Declaration of D.L.P ¶ 4, September
19, 2024 ("D.L.P. Decl."); Ex. 10, Declaration of B.M.M.C. ¶ 6, November 20,
2024 ("B.M.M.C. Decl.); Ex. 11, Declaration of W.O.R.P. ¶ 13, November 20,
2024 ("W.O.R.P. Decl.").

In violation of § VII.8.B.3 of the Settlement, CBP has not provided
documentation justifying "operational need[s]" for holding children apart from
family members.[1] *See, e.g.*, Aug. 2024 JCM Rep. 12-13; Jan. 2023 JCM Rep. 50;
Sept. 2023 JCM Rep. 30; Pls.' Resp. to Sept. 2023 JCM Rep. 4; Pls.' Resp. to Nov.
2023 JCM Rep. 3; *see also* Wolozin Decl. ¶ 6.B. No such operational necessity
appears to exist, given that CBP previously housed families together at the Donna
facility despite a high census. Sept. 2023 JCM Rep. 31.

In contrast to the routine separations at Donna, the El Paso sector's juvenile
care facility appears to hold some families together. *See, e.g.*, Ex. 12, Declaration

---

[1] Contrary to Defendants' assertion, the Prison Rape Elimination Act (PREA), 34
U.S.C. § 30301 *et seq.*, does not require CBP to separate children from their
families and does not provide an operational reason justifying separation of
children from their accompanying family members. *See* Defs.' Resp. to Sept. 2023
JCM Rep. 2 [Doc. # 1361]; 6 C.F.R. § 115.114.

of M.L.R. ¶ 8, November 20, 2024 ("M.L.R. Decl."); July 2023 JCM Rep. 13

("Families were held with adult males and females (parents) in the same pods"). In

the Tucson soft-sided facility, operational concerns were also addressed while

largely preserving family unity.[2]

To be clear, the limited instances in which CBP preserves family unity do

not amount to substantial compliance with the family unity terms and the

agreement as a whole. *Rouser*, 825 F.3d at 1082. Rather, certain sectors' ability to

hold families together in facilities similar or identical to Donna underscores the

lack of justification for CBP's consistent non-compliance with this central

component of the Settlement. *Jeff D.*, 643 F.3d at 288.

> b. <u>CBP does not comply with family visitation requirements of
> the Settlement.</u>

The FSA requires class members have "contact with family members who

were arrested with the minor." FSA ¶ 12.A. The Settlement similarly requires

children receive visits with separated family members detained in the same facility.

CBP Settlement § VII 8.B.3. The Settlement envisions separated children being

able to spend time with family "throughout the day" in "common area[s] with

benches for visiting," by "sharing meals together," and by "participating in

recreation time together." *Id.* at § VII 8.B.5. Internal CBP guidance issued in

October 2023 requires three visitations for at least an hour each time, in each 24-

hour period of custody. *See* Apr. 2024 JCM Rep. 16-17.

Neither the El Paso nor RGV sectors have substantially complied with the

family visitation requirements of the Settlement. *See, e.g.,* July 2023 JCM Rep 27;

Sept. 2023 JCM Rep. 6, 30 (finding "minimal or no opportunities for phone

---

[2] Class members in the Tucson sector are sometimes held in pods together with
their family members within soft-sided facilities like those used in RGV and El
Paso. *See, e.g.*, Ex. 13, Declaration of M.T. ¶¶ 12-17, May 17, 2024.

contact or direct interaction between parent and [separated] child" in the RGV sector); Nov. 2023 JCM Rep. 21-22 (finding "children and parents were not regularly provided with opportunities to interact while separated" at Donna); Dec. 2024 JCM Rep. 5-6 (noting some trusted adults transferred to a different facility, preventing any contact or visitation). Despite the October 2023 CBP guidance, monitors found that *neither* sector had complied with this directive, even when the census was low. Apr. 2024 JCM Rep. 16.

Nor does CBP ensure children and their family members are aware that they may visit. *See* May 2024 JCM Rep. 16; Aug. 2024 JCM Rep. 13 (in El Paso, "children did not appear to know that they could request visits. Parents and caregivers who did ask for visitation often emphasized that they were told to wait.").

Class members in the RGV sector who were separated from their family members—including from their siblings and parents—report no contact with their family members for days at a time. *See* N.M.F.C. Decl. ¶¶ 5-6; Ex. 15, Declaration of Y.T.C.R. ¶¶ 5, 8, September 18, 2024 ("Y.T.C.R. Decl."); D.L.P. Decl. ¶¶ 4-5. Class members who request visits are told to wait until undetermined future times. *See* Ex. 16, Declaration of A.N.H.S. ¶ 11, September 18, 2024 ("A.N.H.S. Decl."); F.J.D.A. Decl. ¶ 5; M.A.A. Decl. ¶ 5; K.P.I.C. Decl. ¶ 17.

Similarly, in El Paso, children separated from one or more family members were unable to visit with those family members, causing them distress. *See, e.g.* B.M.M.C. Decl. ¶¶ 4-6 (three-year-old had no visitation with separated father for seven days); W.O.R.P. Decl. ¶¶ 5, 13 (no visits with aunt and uncle for nine days despite repeated requests).

The lack of visitation compounds the profound trauma of being separated from family, further undermining Defendants overall substantial compliance. *See Rouser*, 825 F.3d at 1081. CBP has never shown consistent compliance with the visitation requirements in the Settlement and therefore has not shown substantial

compliance with the Settlement as a whole. *See* CBP Settlement § VII 8.B.5; *Jeff D.*, 643 F.3d at 288.

### 2. CBP has never substantially complied with the phone and legal counsel access provisions of the Settlement

The Settlement requires CBP provide children with a list of free legal services and an advisal of the right to make phone calls. CBP Settlement § XI, Exhibit 3 ("You may use the telephone to call a lawyer or other legal representative at any time . . ."). Section XI "goes hand-in-hand" with the Exhibit 3 advisal. *Flores v. Sessions*, 394 F.Supp.3d 1041, 1062 (9th Cir. 2017) ("Paragraph 24D(c) goes hand-in-hand with the Notice of Right of Judicial Review (Exhibit 6)"). The Settlement's exhibits are enforceable parts of the contract. *Kerr v. Brede*, 180 Cal. App. 2d 149, 151 (1960).

Furthermore, the FSA "contemplates attorneys having near-unfettered access to minors in custody." *Flores v. Barr*, 2020 WL 5491445 at *10 (C.D. Cal. Sept. 4, 2020). The Court has found that one phone call a day without being informed of the right to call a lawyer, or having to choose between calling a lawyer or family, is "woefully inadequate." *Id.* at *10, *7.

Children consistently report they have not received lists of legal service providers while detained in the RGV and El Paso sectors. *See, e.g.*, Y.T.C.R. Decl. ¶ 10; M.A.A. Decl. ¶ 13; C.N.T.F. Decl. ¶ 19; N.M.F.C. Decl. ¶ 6; Ex. 18, Declaration of M.A.C.M. ¶ 9, November 20, 2024 ("M.A.C.M. Decl."); Ex. 19, Declaration of A.I.P.P. ¶ 14, November 20, 2024 ("A.I.P.P. Decl."); B.M.M.C. Decl. ¶ 13; Ex. 20, Declaration of P.O. ¶ 10, November 20, 2024 ("P.O. Decl.").

In further violation of the Settlement, children often do not know they have the right to make phone calls. Dec. 2024 JCM Rep. 10 (recommending reevaluating phone access systems and noting "[o]n the posted *Flores* poster, the section regarding rights to phone access was crossed out."). CBP routinely denies class members calls to counsel. *See, e.g.*, C.N.T.F. Decl. ¶¶ 19-20, 22; Ex. 17,

Declaration of G.N.P.C. ¶ 23, September 19, 2024 ("G.N.P.C. Decl."); M.A.C.M.

¶¶ 8-9; M.L.R. ¶ 14; W.O.R.P. Decl.¶¶ 10-11; Ex. 23, Declaration of W.O.C.M. ¶

15, ("W.O.C.M. Decl."); P.O. ¶ 10. Repeated efforts to address these violations

with Defendants have been unsuccessful. Kahn Decl. ¶ 6; Wolozin Decl. ¶¶ 6, 12,

16; Ex. 2B.

Failing to provide children a legal service provider list and access to calls to

counsel impermissibly frustrates the purpose of the Settlement's terms designed to

ensure access to counsel. *Jeff D.*, 643 F.3d at 288; *see also Serpa v. Cal. Sur.

Investigations, Inc.*, 215 Cal. App. 4th 695, 706 (2013).

### 3. CBP has never substantially complied with requirements to provide sufficient clean or warm clothing

The Settlement requires CBP provide children "clean, dry clothing if their

clothing is wet or soiled." CBP Settlement § VII.5.B.2. CBP must either launder

children's own clothing or provide new, clean clothing, including "sweatpants, t-

shirts, socks, and underwear." *Id.* at § VII.7.6. The Settlement further requires that

class members be provided additional blankets and warm clothing when needed.

*Id.* at §§ VII.5.B, VII.6.2.

CBP has not consistently complied with these requirements. Children in the

El Paso sector have been forced to remain in dirty clothes for over a week, even

after requests for clean clothes. *See* W.O.C.M. Decl. ¶ 8 (no clean shirt or sweater

in 16 days); M.A.C.M. Decl. ¶ 11 (no clean clothes for 15 days despite requests);

*see also* Ex. 24, Declaration of S.Y.A.R. ¶¶ 5, 11, November 20, 2024 ("S.Y.A.R.

Decl."); B.M.M.C. Decl. ¶ 11; Ex. 25, Declaration of G.O.F.F. ¶ 14, November 20,

2024 ("G.O.F.F. Decl."); W.O.R.P. Decl. ¶ 7; P.O. Decl. ¶ 7; A.I.P.P. Decl. ¶ 5;

M.L.R. Decl. ¶ 6. Not surprisingly, children's clothes became smelly or itchy after

such continuous wear. *See* W.O.C.M. Decl. ¶ 8; W.O.R.P. Decl. ¶ 7. Class

members similarly reported a lack of clean clothing in El Paso in June 2023. *See*

Ex. 26, Declaration of Y.D.P.G. ¶ 10, June 27, 2023 ("Y.D.P.G. Decl."); Ex. 27,

14

1    Declaration of N.A.D.P. ¶ 12, June 27, 2023 ("N.A.D.P. Decl."); *see also* Kahn

2    Decl. Ex. 1C.

3            CBP also consistently failed to provide class members with blankets and

4    additional warm clothing as required by the Settlement. Aug. 2024 JCM Rep. 15;

5    Apr. 2024 JCM Rep. 18; Nov. 2023 JCM Rep. 32; Dec. 2024 JCM Rep. 7-8.

6    Children in the RGV sector regularly report being cold and having insufficient

7    clothing. *See*, *e.g.*, Ex. 21, Declaration of C.A.C.M. ¶¶ 10, 19, September 19, 2024

8    ("C.A.C.M. Decl."); C.N.T.F. Decl. ¶ 14; M.A.A. Decl. ¶ 6; B.B. Decl. ¶¶ 14-15;

9    K.P.I.C. Decl. ¶ 13; G.N.P.C. Decl. ¶ 15. Children in El Paso similarly reported

10    insufficient warm clothing and blankets. *See, e.g.,* W.O.C.M. Decl. ¶ 9; A.I.P.P.

11    Decl. ¶ 7 (child very cold at night and experiencing respiratory issues).

12            CBP has not substantially complied with these Settlement terms or with the

13    larger purpose of ensuring a safe and sanitary environment for class members. *See*

14    *Jeff D.*, 643 F.3d at 284, 288.

15            **4.  CBP has never substantially complied with the child-friendly,**

16                   **trauma-informed approach required by the Settlement**

17            To treat children "with special concern for their particular vulnerability," the

18    Settlement requires CBP to provide a "child-appropriate environment," to take a

19    "trauma-informed approach to class members in custody," and to "foster

20    reassurance, resilience, orientation, recreation, and distraction" for class members.

21    FSA ¶ 11; CBP Settlement §§ VII.3.D.7, VII.8. A "critical component" of meeting

22    the unique needs of minors in custody under the Settlement is the use of caregivers

23    to meet children's needs and to support a child-friendly environment. *Id.* at §

24    VII.9.A.

25            Unfortunately, CBP has persistently separated children from trusted adults,

26    failed to ensure that caregivers understand and effectuate their responsibilities,

27    failed to provide children with required child-friendly activities and recreation, and

28

failed to offer children reassurance, information, and trauma-informed communication.

        a.  <u>CBP's violation of family unity provisions prevent substantial compliance with the requisite child-friendly, trauma-informed approach.</u>

As explained above, family unity is central to both a trauma-informed approach to custody and to fostering resilience in class members. *See* Sept. 2023 JCM Rep. 10 ("[E]fforts to provide trauma-informed care and a child-friendly environment have been rendered irrelevant for children who have been separated from their parents while in custody."). CBP's persistent non-compliance with the Settlement's family unity provisions is incompatible with trauma-informed, child-friendly approaches to custody. Part III.B.1, *supra*.

        b.  <u>CBP fails to provide class members with regular recreation and child-friendly activities.</u>

The Settlement contemplates that CBP will provide toys and activities and hire caregivers who will support "class members during recreational and exercise activities." CBP Settlement §§ VII.8.C.2, VII.9.D.2.c; *see also* §§ VII.9.D.3.a, VII.3.D.7, Exhibit 4(d). When a child is in CBP custody for longer than 72 hours, the Settlement requires CBP "provides opportunities for recreation and other child-appropriate activities daily" and "make all reasonable efforts to provide class members with outdoor recreation." *Id.* at § VIII.7.

CBP has persistently failed to provide child-appropriate activities and regular recreation or outdoor time to class members, especially as to accompanied children. *See* Dec. 2024 JCM Rep. 9 ("The activities . . . for the accompanied children were extremely limited, primarily including paper and crayons."); Aug. 2024 JCM Rep. 17, 19 ("persistent failure" to provide child-friendly materials); Apr. 2024 JCM Rep. 21-22. Many children spend most of the day in their pods

1   with limited recreational support. *See* Dec. 2024 JCM Rep. 9; Aug. 2024 JCM

2   Rep. 17, 19; Apr. 2024 JCM Rep. 21-22.

3        In violation of the Settlement, children detained over 72 hours in both

4   sectors do not consistently receive daily recreation, child-appropriate activities, or

5   regular outdoor recreation. *See* Dec. 2024 JCM Rep. 9-10 ("All forms of indoor

6   recreation are extremely limited" at both JPFs, and "[o]utdoor activities were not

7   observed at Donna during the month of September"); *see also* A.N.H.S. Decl. ¶¶

8   25-26 ("I don't see the sun."); G.N.P.C. Decl. ¶¶ 11, 17 ("[W]e cannot go outside,

9   we cannot see the sun, there is no fresh air."); B.M.M.C. Decl. ¶ 12; B.B. Decl. ¶¶

10  5, 11-12 (five-year-old boy detained for 10 days with only coloring); G.O.F.F.

11  Decl. ¶¶ 12, 15 (four-year-old girl detained for ten days with only coloring);

12  S.Y.A.R. Decl. ¶ 7 (child experiencing emotional breakdowns from confinement

13  and lack of activity); W.O.R.P. Decl. ¶ 6; A.I.P.P. Decl. ¶¶ 9-10; W.O.C.M. ¶¶ 10-

14  11 (four-year-old detained for 16 days, request for toys denied); M.L.R. Decl. ¶ 11;

15  M.A.C.M. Decl. ¶ 12; Ex. 28, Declaration of T.K. ¶¶ 7, 9-10, November 20, 2024

16  ("T.K. Decl.").

17       As a result, children in both sectors feel bored, lethargic, and unsupported by

18  adults. *See*, *e.g.* G.N.P.C. Decl. ¶ 17; C.A.C.M. Decl. ¶¶ 8, 11-12, 17; Ex. 30,

19  Declaration of H.J. ¶ 6, September 18, 2024 ("H.J. Decl."); Ex. 22, Declaration of

20  K.A.C.M. ¶ 4, September 18, 2024 ("K.A.C.M. Decl."); F.J.D.A. Decl. ¶ 6;

21  W.O.R.P. Decl. ¶ 6; Ex. 29, Declaration of Y.A.C.M. ¶¶ 14, 16, September 18,

22  2024 ("Y.A.C.M. Decl."). Worse, staff actively prevent children from entertaining

23  themselves and playing. *See* B.B. Decl. ¶ 11; C.A.C.M. Decl. ¶ 12 (at Donna,

24  "staff yells at the kids, or goes to the parents and yell at them to 'control your

25  kids.'"); B.M.M.C. Decl. ¶¶ 8, 12 (children are scolded for playing in El Paso);

26  W.O.C.M. ¶ 12 (same). The "persistent failure" to address the absence of "basic

27  child-friendly materials" in all JPFs "undermines the implementation of trauma-

28  informed elements of CBP custodial care." Dec. 2024 JCM Rep. 11.

c. <u>CBP's lack of communication with class members is inconsistent
with a trauma-informed approach.</u>

The Settlement requires CBP to take a trauma-informed approach while
engaging with children to "foster reassurance, resilience, [and] orientation." CBP
Settlement § VII.3.D.7. They must also provide children notice of their rights both
orally and by poster. CBP Settlement §§ VII.8.C.4, XI.

The JCM reports that CBP staff and caregivers have failed to inform,
reassure, or orient class members, leading children to consistently express anxiety
because of a lack of information. *See* Apr. 2024 JCM Rep. 22-24; Aug. 2024 JCM
18-19; Dec. 2024 JCM Rep. 10.

Children and parents in both sectors report that CBP staff respond to them
rudely or do not explain anything to them at all. *See, e.g.,* G.N.P.C. Decl. ¶ 18;
W.O.C.M. Decl. ¶¶ 6, 16; Ex. 14, Declaration of R.E.Z. ¶ 6, September 18, 2024
("R.E.Z. Decl."). This lack of information exacerbates children's stress and fear,
often compounding extreme trauma they experienced on their journey to the
United States. *See, e.g.,* G.O.F.F. Decl. ¶¶ 4, 7-9, 11; P.O. Decl. ¶¶ 3, 5-6; Ex. 31,
Declaration of M.R.K. ¶¶ 4, 6-8, November 20, 2024 ("M.R.K. Decl."); s*ee also*
CBP Settlement § VII.3.D.7.

d. <u>CBP's limited implementation of the caregiver program does not
constitute substantial compliance.</u>

CBP's caregivers have a responsibility to "meet the unique needs and
vulnerabilities of class members in custody" and are required to "have sufficient
experience and training to provide general support to class members in custody."
CBP Settlement § VII.9.A.1-2*; see also* Apr. 2024 JCM Rep. 24 ("Caregiver
training on communication . . . is critical to successfully implementing trauma-
informed custodial care.").

Prior JCM reports have consistently found that caregivers are poorly trained,
fail to care for accompanied children, fail to provide sufficient information

regarding children's rights in custody, and fail to facilitate children getting clean and dry clothing, timely medical responses, and recreation. Dec. 2024 JCM Rep. 8-10; Aug. 2024 JCM Rep. 15, 17-18; Apr. 2024 JCM Rep. 20-24. The written protocol has not yet resulted in effective implementation of the program and the JCM's Final Report indicates that caregiver duties "have still not yet been implemented in any uniform manner" and CBP acknowledges its need to improve caregivers' training but has not yet done so. Dec. 2024 JCM Rep. 9, 24-25.

For these reasons, CBP has not substantially complied with the Settlement's purpose to create a child-friendly and trauma-informed environment or its detailed requirements. *Jeff D.*, 643 F.3d at 284, 288.

### 5. CBP has not implemented satisfactory self-monitoring policies and protocols

Despite an additional year of support from the JCMs, CBP is still not ready for "an effective transition of monitoring functions." CBP Settlement § IX.13; Dec. 2024 JCM Rep. 14-28 (finding numerous policies and procedures that require review, revision, and continued external monitoring). The Settlement provides the JCM must approve Defendants' final monitoring protocols and contemplated that the Settlement would remain in effect for multiple months after CBP adopted and implemented effective self-monitoring protocols. CBP Settlement §§ IX.12-13.

The JCMs are still unable to certify the efficacy of CBP's self-monitoring protocols. *See, e.g.,* Dec. 2024 JCM Rep. 14 ("The system for conveying medical information to CBP personnel is in transition . . . the JCM was not able to assess its use or impact on CBP procedures. Further monitoring is required . . ."). Essential self-monitoring protocol development is still in progress. *See id.* at 26, 28 ("OCMO's monitoring protocols are being developed," and "the JCM cannot provide an assessment of the 'efficacy' of the CBP medical monitoring system"). Nor has CBP planned for robust monitoring by the Juvenile Coordinator Division ("JCD"), which is tasked with monitoring after the JCM's term. Dec. 2024 JCM

Rep. 24 (raising concerns about the JCD's ability to self-monitor because of "the relative infrequency" of visits, with a proposed 2025 schedule to conduct only three visits, compared to the 23 visits conducted by JCMs over the course of a year). Further, CBP has shown "little progress over the past year in optimizing uniformity in caregiver contributions," and JCMs "have noted considerable lag times between the documentation of noncompliance and improvements in family housing and visitation practices." *Id.* at 25.

CBP is not yet able to effectively self-monitor. *See* Dec. 2024 JCM Rep. 24 ("Without a monitoring capability that can conduct regular visits or respond in a timely manner to emerging concerns in a particular sector or facility, it remains unclear how general conditions and amenities will be monitored appropriately."). Failings in CBP's implementation of self-monitoring protocols highlight the serious risks of premature termination of the Settlement. *See id.* at 22 (JCM analysis of data provided about children's time in custody has "raised questions" about the data's accuracy and "[t]he termination of the JCM role would effectively eliminate [a central] mechanism for informing Plaintiffs [and the Court] of overcrowded conditions and the impact of any CBP ameliorative response.").

For these reasons, an additional six-month extension of the JCM term is necessary and warranted, with the opportunity for additional extensions as needed, to ensure effective implementation of CBP's new and developing protocols. *See Kelly*, 822 F.3d at 1098.

## C. **Extending the CBP Settlement is a Suitably Tailored Modification in the Public Interest**

Plaintiffs could not have anticipated CBP would fail to comply with the Settlement consistently throughout its term. Under well-established Ninth Circuit precedent, this lack of compliance is a significant changed circumstances that justifies extension of the Settlement. *Kelly*, 822 F.3d at 1098. CBP's partial

progress toward compliance does not amount to substantial compliance with the Settlement as a whole. *Rouser*, 825 F.3d at 1081; *Jeff D.*, 643 F.3d at 284.

Over the past 2.5 years, CBP has failed to comply with the Settlement's provisions requiring family unity, consistent family visitation, lists of legal service providers and phone access, clean and warm clothing, caregivers, and child-friendly activities and recreation. CBP has not accomplished the broader goals of the Settlement to provide safe and sanitary conditions and a child-friendly, trauma-informed environment and to develop effective self-monitoring protocols to ensure compliance after the Settlement's termination. These violations throughout the full term of the Settlement undermine the fundamental object the parties agreed to at the outset, and therefore CBP has not substantially complied with the Settlement as whole. *Rouser*, 825 F.3d at 1081-82; *Jeff D.*, 643 F.3d at 284.

Although CBP has made progress in implementing some portions of the Settlement focused on medical care and meeting basic physical needs, "merely taking significant steps toward implementing the decree falls far short of substantial compliance." *Rouser*, 825 F.3d at 1082 (internal citations omitted).

Extending the Settlement in its entirety for 2.5 years is suitably tailored to address the varied interrelated and ongoing violations. A 2.5-year extension is necessary to provide Plaintiffs with the promised-for compliance period in service of the larger stated purposes of the agreement. *See Kelly*, 822 F.3d at 1098 ("[T]he court's extension of the settlement agreement [by the original two-year term] returned Plaintiffs to the position they would have occupied had [Defendants] not violated the agreement from its inception."); *David C.*, 242 F.3d at 1211-12 ("[E]xtension of the term of the Agreement to allow Utah to fulfill the very obligations it voluntarily undertook when it entered into the Agreement is not itself an imposition of additional, material obligations on Utah."); *Dep't of Fair Emp. and Hous. v. Law Sch. Admission Council*, 12-CV-01830-JCS, 2018 WL 1156605,

at *26 (N.D. Cal. Mar. 5, 2018) (extending decree by two years because "the most significant violation . . . spanned approximately two years").

A full extension of the Settlement is also suitably tailored because "[t]he requirements of the Decree in large part support and depend on one another" making severance neither "warranted [n]or useful." *Dep't of Fair Emp. and Hous.*, 2018 WL 1156605, at *26. The Ninth Circuit has held that the full extension of a settlement can be justified even when Plaintiffs demonstrated only one primary violation, where that violation led the district court to doubt compliance in other areas. *Kelly*, 822 F.3d at 1098. Here, Plaintiffs have shown multiple persistent violations of the Settlement in key areas essential to children's well-being. These violations, coupled with CBP's lack of demonstrated effective self-monitoring protocols, also creates reason to doubt CBP's compliance with other requirements of the Settlement, including accurate data provision. *Id.*; *see also* Dec. 2024 JCM Rep. 23-24.

An extension of the JCM term is also necessary as a suitably tailored modification. The JCMs have made clear that CBP is not currently prepared to effectively self-monitor and ensure compliance with the requirements of the Settlement. *See* Part III.B.5, *supra*. Premature termination of the JCM will almost certainly lead to further noncompliance given the well-documented lack of effective self-monitoring protocols. It is also in the public interest to extend the Settlement so that CBP can achieve compliance and finally provide "safe and sanitary" conditions of confinement to children in the RGV and El Paso sectors. CBP Settlement § II.1. CBP's continued failure to abide by its commitments has harmed children's psychological and physical wellbeing. Enforcing the original termination date would be "detrimental to the public interest." *Labor/Cmty. Strategy Ctr.*, 564 F.3d at 1120 (internal quotation omitted); *see also Flores v. Barr*, 2020 WL 5666550 at *3 (C.D. Cal. Oct. 4, 2020) ("The public has an interest in protecting the welfare of children."). The Settlement—and particularly its

enhanced monitoring provisions—has shown its value in improving some basic conditions for minors in CBP custody, and it should be extended to provide time for achieving substantial compliance with the Settlement as a whole.

## IV.  CONCLUSION

For the foregoing reasons, the Court should extend the 2022 CBP Settlement in its entirety for an additional 2.5 years, including an additional 6-month term of the JCM, with optional extensions to ensure compliance. In the alternative, Plaintiffs request the Court extend the Settlement and JCM term as it deems appropriate.


Dated: December 20, 2024          CENTER FOR HUMAN RIGHTS AND
                                  CONSTITUTIONAL LAW
                                  Carlos R. Holguín
                                  Sarah Kahn

                                  NATIONAL CENTER FOR YOUTH LAW
                                  Mishan Wroe
                                  Rebecca Wolozin
                                  Diane de Gramont

                                  CHILDREN'S RIGHTS
                                  Leecia Welch
                                  Eleanor Roberts


                                  */s/ Mishan Wroe*
                                  Mishan Wroe
                                  *One of the Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

I, the undersigned counsel of record for Plaintiffs, certify that this brief contains 6,988 words, which complies with the word limit of Local Rule 11-6.1.

Dated:  December 20, 2024

*/s/ Mishan Wroe*
Mishan Wroe