BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division
AUGUST E. FLENTJE
Deputy Director
WILLIAM C. SILVIS
Assistant Director
MICHAEL A. CELONE
CHRISTINA PARASCANDOLA
KATELYN MASETTA-ALVAREZ
Senior Litigation Counsel
JOSHUA C. MCCROSKEY
Trial Attorney
U.S. Department of Justice
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-305-1540
joshua.c.mccroskey@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*,<br><br>          Plaintiffs,<br><br>     v.<br><br>MERRICK B. GARLAND, Attorney General of the United States, *et al.*,<br><br>          Defendants. | Case No. 2:85-cv-04544-DMG-AGRx<br><br>**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY 2022 CBP SETTLEMENT**<br><br>Hearing Date: January 24, 2025<br>Time: 9:30 a.m.<br>Hon. Dolly M. Gee |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ..................................................................................1

II.    BACKGROUND ...................................................................................1

III.   ARGUMENT .......................................................................................3

   A. Rule 60(b) does not permit modification because the Settlement is not an order or judgment. .........................................................................3

   B. In the alternative, and assuming, *arguendo*, that the Settlement is an order or judgment, Plaintiffs have not met their burden under Rule 60(b) to justify modification. ......................................................................6

     1. Plaintiffs have not shown a significant change in circumstances extraordinary enough to warrant extension. ..........................................7

       a. Guidance ......................................................................................8

       b. Facility Designation and Nutrition ....................................................8

       c. Enhanced Medical Support ...............................................................9

       d. Temperature and Warmth .................................................................9

       e. Sleep............................................................................................10

       f. Hygiene and Sanitation..................................................................11

       g. Child-Appropriate Environment ......................................................11

       h. Caregivers ...................................................................................17

       i. Notice Requirements. ....................................................................18

       j. Monitoring ..................................................................................19

     2. The Court should not order a modification because the parties anticipated the allegedly changed circumstances. ................................20

     3. The allegedly changed circumstances do not make compliance with the termination provision more onerous, unworkable, or detrimental to the public interest..........................................................................21

     4. Extending the Settlement's termination date would not be suitably tailored to resolve the problems created by the allegedly changed conditions. ...................................................................................21

IV.    CONCLUSION ...................................................................................23

ii

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashker v. Newsom*,
   81 F.4th 863 (9th Cir. 2023) ...................................................................4

*Ashker v. Newsom*,
   968 F.3d 939 (9th Cir. 2020) ....................................................... 15–16

*Criswell v. Boudreaux*,
   2022 WL 3646049 (E.D. Cal. Apr. 13, 2022) ................................4, 13

*David C. v. Leavitt*,
   242 F.3d 1206 (10th Cir. 2001) ..............................................................7

*Flores v. Lynch*,
   828 F.3d 898 (9th Cir. 2016) ..................................................................5

*Holland v. N.J. Dep't of Corr.*,
   246 F.3d 267 (3d Cir. 2001)....................................................................7

*In re Sawtelle Partners, LLC*,
   No. 2:16-BK-21234-BR, 2019 WL 2855786 (B.A.P. 9th Cir. July 1, 2019)........5

*In re Valdez Fisheries Dev. Ass'n, Inc.*,
   439 F.3d 545 (9th Cir. 2006) ..................................................................5

*Jeff D. v. Otter*,
   643 F.3d 278 (9th Cir. 2011) ..................................................................7

*Kelly v. Wengler*,
   822 F.3d 1085 (9th Cir. 2016) .............................................................5, 7

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994)..............................................................................4–5

*Lab./Cmty. Strategy Ctr. v. Los Angeles Cnty. Metro. Transp. Auth.*,
   564 F.3d 1115 (9th Cir. 2009) ................................................... *passim*

*O'Connor v. Colvin*,
   70 F.3d 530 (9th Cir. 1995) ....................................................................4

*Rouser v. White*,
   825 F.3d 1076 (9th Cir. 2016) ................................................................7

*Rufo v. Inmates of Suffolk Cnty. Jail*,
   502 U.S. 367 (1992)...........................................................................1, 20

*Thompson v. U.S. Dep't of Hous. & Urb. Dev.*,
    404 F.3d 821 (4th Cir. 2005) ............................................................7, 20

*United States v. Asarco Inc.*,
    430 F.3d 972 (9th Cir. 2005) ................................................ 6, 20–21


**Rules**

Fed. R. Civ. P. 23(e)...................................................................5

Fed. R. Civ. P. 60(b) .................................................................3

## I. INTRODUCTION

The parties agreed that the 2022 U.S. Customs and Border Protection ("CBP") Settlement Agreement applicable to the Rio Grande Valley ("RGV") and El Paso U.S. Border Patrol Sectors ("Settlement") "shall terminate two and one half years from its Effective Date, or upon the termination of the *Flores* Settlement Agreement [("FSA")], whichever is sooner." ECF No. 1254-1, § II.8. Under this unambiguous term, the Settlement will terminate on January 29, 2025—two-and-one-half years from its Effective Date. The parties have not agreed to an extension of the termination date, nor have they conferred upon this Court any authority to extend the Settlement.

Plaintiffs ask the Court to extend the Settlement under Rule 60(b) of the Federal Rules of Civil Procedure based on an alleged lack of substantial compliance. *See* Plaintiffs' Motion to Modify 2022 CBP Settlement, ECF No. 1526. But the Settlement is not a court order or judgment subject to a Rule 60(b) modification—it may only be extended with consent of the parties.

Even if Rule 60(b) applied and the Settlement could somehow be extended beyond the period agreed to by the parties, it would require an extraordinary showing to do so, and, as described below, Plaintiffs have failed to make such a showing on the four factors for altering a consent decree under Rule 60(b). *See Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383–93 (1992).

As the parties agreed, the Settlement should terminate on or before January 29, 2025. While the extension sought by Plaintiffs is unsupported and should be denied, Defendants are willing to engage with Plaintiffs on a reasonable path forward to address the concerns raised by the Juvenile Care Monitor ("JCM") in her most recent report to ensure ongoing compliance with the FSA.

## II. BACKGROUND

On June 26, 2019, Plaintiffs filed an Ex Parte Application for a Temporary Restraining Order, asserting that CBP was violating the 1997 FSA. *See* ECF No.

572 ("2019 TRO Motion"). On May 21, 2022, the parties jointly filed a notice of settlement to resolve the 2019 TRO Motion. *See* ECF No. 1254. In the Settlement, the parties intended to "clarify[ ] the Parties' understanding of the meaning of [Paragraphs 11 and 12A] of the [FSA]," as they apply to conditions in the RGV and El Paso Border Patrol Sectors. ECF No. 1254-1, at 3.[1] The parties agreed to specific requirements relating to conditions for minors in CBP custody in those Sectors. *See id.* §§ VII–XII. In the Settlement, the parties also agreed to a sixteen-month appointment of the JCM "to monitor compliance in the RGV and El Paso Sectors with the [FSA] as detailed in this [Settlement]." *Id.* §§ IX.1, IX.10; *see also* ECF No. 1280 (order appointing JCM). The Settlement allows the parties to agree to extend the JCM's term, but "[i]f no agreement is reached, Plaintiffs may petition the Court for a single extension of the Monitor's term." ECF No. 1254-1, § IX.10. Finally, the parties agreed, without a provision for extension, that the Settlement "shall terminate two and one half years from its Effective Date, or upon the termination of the Flores Settlement Agreement, whichever is sooner." *Id.* § II.8. Two-and-one-half years from the Effective Date is January 29, 2025. The Settlement does not include any provision for an extension of the termination date.

Because this case is a class action, the parties moved for final approval of the Settlement under Federal Rule of Civil Procedure 23, *see* ECF No. 1266, at 5–6, which the Court granted on July 29, 2022, ECF No. 1278. Accordingly, the Court denied the 2019 TRO Motion. *Id.* at 3. Separately, the Court issued an order appointing a JCM and specifying the JCM's duties. ECF No. 1280. After the parties agreed to three extensions of the JCM's term, the JCM's term expired on December 27, 2024. *See* ECF Nos. 1381, 1426, 1470, at 1–2. As described in more detail below, since July 2022, CBP has substantially implemented the terms of the

---

[1]    For docket items, page numbers in this memorandum refer to the ECF-stamped page numbers on the top right of the document.

Settlement.  *See generally* Ex. A, Declaration of Gerardus Caanen ("Caanen Decl."); Ex. B, Declaration of Derrick Stamper ("Stamper Decl."); Ex. C, Declaration of Greta Campos ("Campos Decl.").

### III.    ARGUMENT

        **A.    Rule 60(b) does not permit modification because the Settlement is not an order or judgment.**

The parties unambiguously agreed that the Settlement "shall terminate" two-and-one-half years from its effective date and did not agree to any condition or conditions that, if met, or not met, would extend the termination date, or any mechanism for seeking a modification of the Settlement.  Plaintiffs now ask the Court to modify the termination provision of the Settlement pursuant to Rule 60(b) to double the life of the Settlement.  ECF No. 1526-1, at 7; ECF No. 1526-2, at 3. Contrary to Plaintiffs' contention, Rule 60(b) does not empower the Court to amend the terms of the Settlement.  Rule 60(b) states that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding" for any one of several enumerated reasons, including when "applying [the judgment] prospectively is no longer equitable," Fed. R. Civ. P. 60(b)(5), or under a catch-all, "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6).[2]  But the Settlement is not a court order, judgment, or proceeding.  Thus, Rule 60(b) does not apply here.

The Court never entered the Settlement onto the docket as a judgment.  Nor did the Court incorporate the Settlement into an order.  Unlike the order appointing the JCM, the parties never asked the Court to incorporate the Settlement, including the termination provision, into an order.  The Supreme Court has found that a court

---

[2]    Plaintiffs do not articulate the subsection in Rule 60(b) that they believe justifies modification of the Settlement. ECF No. 1526-1.  Indeed, the government doubts Rule 60(b) would apply given that it governs when a party would be "relieve[d]" of a judgment, and Plaintiffs seek instead to *impose* the Settlement on the government.

may make a settlement agreement part of an order of dismissal "either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380–81 (1994). The Court here did neither. The Court denied the 2019 TRO as moot "by agreement of the Parties." ECF No. 1278, at 3. But that language does not incorporate the Settlement into the Order. The Ninth Circuit has held that "an order 'based on' the settlement agreement, without more, does not 'embody the settlement contract.'" *O'Connor v. Colvin*, 70 F.3d 530, 532 (9th Cir. 1995) (per curiam) (quoting *Kokkonen*, 511 U.S. at 381). That the parties filed the Settlement on the docket also does not make it part of the Court order.[3] *Id.*

Importantly, the parties could have asked the Court to enter the Settlement as a judgment or to incorporate the Settlement into a Court order. They did not. Likewise, if Plaintiffs wanted the option to seek an extension of the Settlement based on an alleged lack of substantial compliance, they could have negotiated for such a provision. They did not.[4] Instead, Plaintiffs seek to impose Rule 60(b) on a settlement that is not part of an order. Plaintiffs' arguments are unavailing.

---

[3]    The courts in *O'Connor* and *Kokkonen* found no jurisdiction to enforce the settlements there, but the procedural posture here is different because the Settlement did not result in the dismissal of the entire case. *See Kokkonen*, 511 U.S. at 380–81; *O'Connor*, 70 F.3d at 532. This precise situation likely is uncommon—a settlement that resolved a dispute about an underlying consent decree but was not made part of that consent decree or a separate order.

[4]    The lack of an extension provision distinguishes this settlement from many others. *See, e.g.*, *Ashker v. Newsom*, 81 F.4th 863, 873 (9th Cir. 2023) (noting that the settlement agreement provided that "[t]he Inmates can extend the Settlement Agreement for twelve months" if certain conditions are met); *Criswell v. Boudreaux*, No. 1:20-CV-01048-DAD-SAB, 2022 WL 3646049, at *1 (E.D. Cal. Apr. 13, 2022) (similar).

Plaintiffs note that the Court "approved" the Settlement. ECF No. 1526-1, at 6–7. But approval is not incorporation. A judge's "mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order." *Kokkonen*, 511 U.S. at 380–81. Here, the Court approved the Settlement for purposes of Rule 23(e). *See* ECF No. 1278, at 3. The Rule 23(e) process ensures that a class settlement is "fair, reasonable, and adequate" for the class. Fed. R. Civ. P. 23(e)(2). It says nothing about whether the terms of the class settlement are part of the Court's order. Not all class-action settlements are court orders or judgments. For example, in the bankruptcy context, the Ninth Circuit has rejected the argument that a court's approval of a settlement agreement makes the agreement part of the court's order. *See In re Valdez Fisheries Dev. Ass'n, Inc.*, 439 F.3d 545, 549 (9th Cir. 2006); *In re Sawtelle Partners, LLC*, No. 2:16-BK-21234-BR, 2019 WL 2855786, at *6–7 (B.A.P. 9th Cir. July 1, 2019). Thus, the Court's approval under Rule 23 does not make the Settlement part of a Court order.

The opinions that Plaintiffs cite do not establish that Rule 60(b) empowers the Court to alter the Settlement's termination provision. Plaintiffs cite *Flores v. Lynch*, 828 F.3d 898, 905 (9th Cir. 2016), to claim that the Settlement, like the FSA, is a consent decree, ECF No. 1526-1, at 11, but the fact that the Ninth Circuit has previously considered a motion to modify the FSA does not mean that this Settlement is a modifiable court order. Plaintiffs' reliance upon *Kelly v. Wengler*, 822 F.3d 1085 (9th Cir. 2016), is inapposite. *See* ECF No. 1526-1, at 11–12. In *Kelly*, "[t]he district court's order *explicitly incorporated* the parties' stipulation for dismissal." 822 F.3d at 1094–95 (emphasis added). In turn, the parties' stipulation of dismissal "*explicitly incorporated* the parties' settlement agreement and attached the agreement as an exhibit." *Id.* (emphasis added). Thus, the Ninth Circuit held that "the parties' settlement agreement is incorporated into the court's dismissal order." *Id.* at 1095. The district court's "extension of the settlement agreement was therefore a modification of a court order." *Id.* at 1097–98. In contrast, the Court

5

here did not explicitly incorporate the Settlement into its order, nor did the parties incorporate the Settlement into a stipulation of dismissal.

Rule 60(b) does not grant the Court authority to extend the life of a contract that is not part of a Court order. Therefore, the Court should deny Plaintiffs' motion and recognize that the Settlement terminates on January 29, 2025.

**B.    In the alternative, and assuming, *arguendo*, that the Settlement is an order or judgment, Plaintiffs have not met their burden under Rule 60(b) to justify modification.**

Assuming, *arguendo*, that the Settlement is subject to modification under Rule 60(b), Plaintiffs have not established that any of the reasons in Rule 60(b) would warrant modification.[5] To justify the modification of a consent decree, Plaintiffs must prove that four conditions are met. *Lab./Cmty. Strategy Ctr. v. Los Angeles Cnty. Metro. Transp. Auth.*, 564 F.3d 1115, 1120 (9th Cir. 2009). First, Plaintiffs must show that a "significant change either in factual conditions or in the law" happened after the parties executed the Settlement. *Id.* (quoting *United States v. Asarco Inc.*, 430 F.3d 972, 979 (9th Cir. 2005)). Second, Plaintiffs must prove that they did not anticipate the alleged change when they entered into the Settlement. *Id.* Third, Plaintiffs must demonstrate "that the changed factual circumstance makes 'compliance with the consent decree more onerous, unworkable, or detrimental to the public interest.'" *Id.* (quoting *Asarco Inc.*, 430 F.3d at 979). Finally, Plaintiffs must establish that their proposed extension of the Settlement is "suitably tailored to resolve the problems created by the changed . . . conditions." *Id.* (quoting *Asarco Inc.*, 430 F.3d at 979). Plaintiffs fail to meet any of these four conditions.

---

[5]    Defendants do not concede that the Settlement is a consent decree or otherwise an order or judgment subject to modification pursuant to Rule 60(b).

### 1.    Plaintiffs have not shown a significant change in circumstances extraordinary enough to warrant extension.

Plaintiffs bear the burden of demonstrating that a significant, unanticipated change in circumstances warrants extending the Settlement.[6]  *See Lab./Cmty. Strategy Ctr.*, 564 F.3d at 1120.  Plaintiffs posit that this factor may be satisfied if they can show that CBP did not substantially comply with the Settlement.  ECF No. 1526-1, at 11–12.  While the FSA itself includes a substantial-compliance-termination provision (FSA §§ 31, 35), the Settlement has only a date of termination, making it inappropriate for the Court to condition the termination of the Settlement upon a finding of substantial compliance.  Cases where courts considered an extension under Rule 60(b) involved different or more extreme circumstances.  *See Lab./Cmty. Strategy Ctr.*, 564 F.3d at 1120 (considering substantial compliance only when the decree itself allowed for its extension); *Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, 404 F.3d 821, 827 (4th Cir. 2005) (unanticipated change of circumstances existed when there was a "nearly complete failure to comply with their obligations"); *David C. v. Leavitt*, 242 F.3d 1206, 1212 (10th Cir. 2001) (court found defendant to be "20 percent in compliance and 80 percent in noncompliance" before extending); *Holland v. N.J. Dep't of Corr.*, 246 F.3d 267, 283 (3d Cir. 2001) ("conditions have changed so that the 'basic purpose of the original consent decree' has been 'thwart[ed]'"); *see also Kelly*, 822 F.3d at 1097–98 (affirming the district court's extension of a decree as a contempt sanction).  "[I]n cases in which courts concluded that extensions of the consent decrees were warranted," the courts had found "near total noncompliance."  *Lab./Cmty. Strategy Ctr.*, 564 F.3d at 1123.  Even if a substantial-compliance standard were applied, Plaintiffs would not meet it

---

[6]    Defendants do not have the burden to show that substantial compliance merits termination because they are not the ones seeking a modification, unlike *Rouser v. White*, 825 F.3d 1076, 1080 (9th Cir. 2016), and *Jeff D. v. Otter*, 643 F.3d 278, 280–81 (9th Cir. 2011).

because CBP has substantially complied with its obligations under the Settlement. *Id.* at 1121. Substantial compliance "cannot be satisfied by reference to one particular figure, while ignoring alternative information." *Id.* at 1122. Rather, the Court must use a "holistic view of all the available information" to determine whether compliance is substantial. *Id.* In *Labor/Community Strategy Center*, the Ninth Circuit held that the district court did not abuse its discretion by declining to extend the term of a consent decree where the defendants failed to comply with "just one" of the decree's three "essential" requirements, the metrics used to evaluate compliance were misleading, and the plaintiffs seeking extension of the consent decree "ignore[d] the many ways" in which the defendants had met or exceeded their obligations. *Id.* at 1121–22.

Here, Plaintiffs fail to show that extending the Settlement is warranted because they ignore Defendants' general compliance with the vast majority of the Settlement provisions. In addition, most of Plaintiffs' allegations of noncompliance overstate the noncompliance or rest on misinterpretations of the Settlement.

### a. Guidance

The Settlement requires CBP to issue guidance consistent with the Settlement and distribute it to all employees in the RGV and El Paso Sectors. ECF No. 1254-1, § II.6. CBP has complied with this provision, and the guidance is still in place. *See* Caanen Decl. ¶ 3; Stamper Decl. ¶ 3. Plaintiffs do not allege otherwise.

### b. Facility Designation and Nutrition

In Section VII.1 of the Settlement, the parties agreed that CBP will expeditiously transfer most class members to juvenile-priority facilities and make all reasonable efforts to hold class members in these facilities while in CBP custody. ECF No. 1254-1, § VII.1. CBP also agreed to ensure the safety and security of class members and to maintain an adequate supply of necessary items. *Id.* Section VII.4 further requires CBP to provide age-appropriate meals, drinks, and snacks that meet class members' daily caloric needs. *Id.* § VII.4. CBP has substantially complied

with these requirements.  *See* Caanen Decl. ¶¶ 5–6, 16; Stamper Decl. ¶¶ 5, 11.  The JCM commends CBP's age-appropriate menus, provision of snacks, and food variety.  ECF No. 1522, at 8–9.  Plaintiffs do not allege otherwise.

### c.  Enhanced Medical Support

Next, three pages of the Settlement outline the procedures for Enhanced Medical Support.  *See* ECF No. 1254-1, § VII.3.  This subsection is the largest subsection of the Settlement, as it details the procedures to ensure the health and welfare of minors.  *Id.*  CBP's medical support was also one of the focal points of the litigation leading up to the Settlement.  *See* ECF No. 1254, at 3 (noting that the 2019 TRO Motion "primarily" sought relief related to the medical needs of children and a remediation plan to make facilities safe and sanitary).  Plaintiffs do not allege that CBP has failed to substantially comply with this subsection.  Indeed, according to the recent JCM Report, CBP is generally complying with this section and is constantly making improvements.  *See* ECF No. 1522, at 13–21.  CBP continues to implement the requirements for Enhanced Medical Support and continues to improve its procedures.  *See* Campos Decl. ¶¶ 5–23.  CBP has substantially complied with the requirements for enhanced-medical-support.

### d.  Temperature and Warmth

The parties agreed that CBP will maintain an ambient temperature of 69 to 83 degrees Fahrenheit in Juvenile Priority Facilities, keep a stock of clothing, launder soiled and wet clothing, and provide additional blankets upon a class member's (or their parent's) request.  ECF No. 1254-1, § VII.5.  As the JCM noted, the RGV and El Paso facilities "continue to be in general compliance with the temperature requirements of the Settlement."  ECF No. 1522, at 9; *see* Caanen Decl. ¶ 14; Stamper Decl. ¶ 12.  Moreover, CBP instructs caregivers to advise children that they may ask for additional clothing or blankets, and there are posters in the facilities

advising children of the same.[7]  Campos Decl. ¶ 19; Caanen Decl. ¶¶ 10, 14, 19; Stamper Decl. ¶¶ 14, 18.  The JCM does not report that CBP has failed to "maintain a stock" of warm clothing, provide additional blankets or clothing upon request, or launder soiled clothing, which is what the Settlement explicitly requires.  ECF No. 1254-1, § VII.5.

Plaintiffs argue that class members do not regularly receive new outer garments.  ECF No. 1526-1, at 19.  However, Plaintiffs refer to a temporary, unintentional situation that CBP has since remedied.  *See* Stamper Decl. ¶¶ 12–13 ("This temporary issue has been rectified, such that clean clothes are provided" at every shower, if class members' clothes are dirty, or upon request).

### e. Sleep

The Settlement further outlines procedures for sleeping, generally requiring CBP to provide class members with "sufficient space, as well as a mat and blanket," during sleep hours.  ECF No. 1254-1, § VII.6.  Like the previous section, the parties agreed that CBP will provide additional clothing and blankets to class members when class members request them or express discomfort from cold, or when CBP observes class members "shivering or huddling for warmth."  *Id.*  CBP also agreed to dim the lights if it is safe to do so, make reasonable efforts to minimize noise and disruptions, and place clocks in the rooms.  *Id.*

Plaintiffs do not allege that CBP is not substantially complying with the sleep provisions, nor would the evidence support such an allegation.  Nothing in the recent JCM reports indicate that CBP is not meeting its commitments regarding lighting, noise, space, mats, blankets, or clocks.  Regarding warmth, as noted above, CBP

---

[7]     Plaintiffs want CBP to affirmatively issue extra clothing more often. However, RGV and El Paso Sectors do not "affirmatively issue extra clothing to families and children, as such could result in items not being used, and due to limited storage capacity in holding areas, the clothing may become unclean, unserviceable, lost, or taken without permission." Stamper Decl. ¶ 12; Caanen Decl. ¶ 14.

maintains an adequate stock of warm clothing and blankets, and caregivers are instructed to advise children that they may ask for clothing or blankets.  Caanen Decl. ¶¶ 6, 14, 19; Stamper Decl. ¶¶ 5, 12, 18; Campos Decl. ¶ 19.  Overall, CBP has substantially complied with the provisions regarding sleep.

### f.  Hygiene and Sanitation

CBP must provide hygiene and sanitation items to class members.  ECF No. 1254-1, § VII.7.  Like medical care, this is an "essential" provision that formed the basis for the litigation leading to the Settlement.  *See* ECF No. 1254, at 3.  Specifically, the parties agreed that CBP will provide "hygiene kits" when showers are offered and upon request, and provide showers "as soon as possible" after arrival and at 48-hour intervals thereafter.  No. 1254-1, § VII.7.  Toothbrushes and toothpaste are provided daily and upon request, and caregivers must assist with hygiene routines, as needed.  *Id.*  CBP must also launder soiled clothing "to the extent operationally practicable" and replace soiled clothing.  *Id.*  Facilities must maintain infant-changing stations, functioning toilets and sinks, toilet paper, feminine-hygiene products, and hand soap.  *Id.*

CBP has met its commitments in this subsection.  *See* Caanen Decl. ¶¶ 6, 14, 17, 19; Stamper Decl. ¶¶ 5, 12, 15, 18.  The JCM reports "have documented CBP's general compliance with the conditions and amenity requirements" related to hygiene and sanitation.  ECF No. 1522, at 25.  Other than concerns related to clean clothing, which CBP remedied (*see* Section III.B.1.d., *supra*), Plaintiffs do not allege that CBP has failed to comply with the hygiene-and-sanitation provisions.  Accordingly, Plaintiffs have not demonstrated that CBP has failed to substantially comply with Section VII.7 of the Settlement—one of the essential provisions.

### g.  Child-Appropriate Environment

In the Settlement, the parties agreed that CBP will maintain a child-appropriate environment, which includes family-unity provisions and other "Special Considerations." ECF No. 1254-1, § VII.8.

i.   *Family Unity*

The parties agreed that CBP will maintain family unity by keeping family members in the same pods, absent an "articulable operational reason." *Id.* § VII.8.B.1. The parties envisioned that each facility may hold family members in a different manner based on the facility's demographics and capabilities, and notes that a facility may need to "house all teenage boys together, regardless of whether they entered with a family member." *Id.* § VII.8.B.5. The parties agreed that, when housing family members in the same pods is not operationally feasible, CBP will record the reasons for holding them apart and make "all reasonable efforts" to ensure that the family members have the opportunity to interact. *Id.* § VII.8.B.3. CBP agreed to inform class members that they can request to interact with family members housed in separate pods. *Id.*

The evidence indicates that CBP has substantially complied with the provisions regarding a Child-Appropriate Environment. Caanen Decl. ¶¶ 7–10; Stamper Decl. ¶¶ 6–7. Plaintiffs' assertion that CBP has "never complied" with the family-unity provisions of the Settlement lacks support. Plaintiffs cite JCM reports stating that minors are sometimes held in different pods than their adult relatives and that sometimes CBP could not provide a particular reason for holding the family members separately. ECF No. 1526-1, at 14. However, holding family members in different pods is not a breach of the Settlement; the Settlement envisions that family members may not always be held in the same pod for operational reasons. The RGV and El Paso Juvenile Priority Facilities each face unique and different operational challenges. *See* Caanen Decl. ¶ 7 (noting that the Donna Processing Facility has 6 pods in use); Stamper Decl. ¶ 5 (noting that the El Paso Hardened Facility has 160 pods). For example, the Settlement cites to the possibility that a facility may need to "house *all* teenage boys together." ECF No. 1254-1, VII.8.B.5 (emphasis added). Thus, even if CBP sometimes houses certain groups of children together, rather than with their parent or legal guardians—such as teenage boys or teenage girls—this

decision, by itself, is not a breach of the Settlement. Moreover, in the Settlement, the parties acknowledge that situations may arise when CBP cannot fully comply with the Settlement's standards. *See* ECF No. 1254-1, §§ IV.1, V.1, VI.1.

Plaintiffs' evidence is insufficient to demonstrate that CBP does not provide an "articulable operational reason" for how it holds members of family units. ECF No. 1526-1, at 14–15 (citing 2023 JCM Reports and the December 2024 JCM Report). The December 2024 JCM Report—which is the most recent and therefore the most relevant report (*Criswell*, 2022 WL 3646049, at *8)—only notes that during a September 2024 visit, CBP personnel "at the Donna facility" were "unclear" about the protocol to determine where to house an accompanied minor.[8] ECF No. 1522, at 7.

Next, Plaintiffs' argument that CBP has failed to provide opportunities for family visitation ignores evidence of general compliance and recent improvements. Plaintiffs cite the December 2024 JCM report, in which the JCM notes that some "trusted adults"—*i.e.*, not parents—were transferred from Donna to the Ursula facility and class members could not visit with these adults. ECF No. 1522, at 7–8. CBP acknowledges that, because the Donna Facility generally houses families and unaccompanied children, such trusted adults may be held at the Ursula facility. Caanen Decl. ¶ 5. In such cases, visitation may not be logistically and operationally feasible. *Id.* ¶ 10. In addition, in November 2024, the JCM observed "regular visitation for families" at Donna. ECF No. 1522, at 7–8. The JCM stated that CBP was scheduling and logging visits, and that Donna "scheduled a new visitation

---

[8]    The JCM does not state who the "personnel" were—whether they were caregivers, or other contractors (who do not determine where a minor is placed), or agents. Accordingly, this evidence should be given little, if any, weight because the individuals who made the statement are unknown and the Court cannot determine whether they would know the decision-making behind holding members of family units in separate pods.

program in the afternoon" in which families congregated in recreational areas. *Id.* Overall, the JCM noted that the "regular visits and documentation at Donna" in November was "encouraging." *Id.* Likewise, in El Paso, the JCM noted that the "availability and regularity of visitation for children and families continues to improve," and did not note any compliance issues. *Id.*

While Plaintiffs cite the September 2024 declarations by minors held in RGV as evidence that some minors did not visit with family members for "days at a time," this is not necessarily evidence of a breach of the Settlement. ECF No. 1526-1, at 16–17. The parties agreed that CBP will make "all reasonable efforts" to ensure visitation between family members. ECF No. 1254-1, § VII.8.B.3. The declarants report that minors in Donna did visit with family members in Donna, even if it was not every day or immediately after they requested visits,[9] and, as noted, for minors held in a different facility from non-parent or legal guardian relatives, such visitation is not operationally or logistically feasible. Caanen Decl. ¶ 10. Plaintiffs therefore have not shown that CBP did not make "all reasonable efforts" to ensure visitation between family members.

Next, Plaintiffs imply that CBP is not informing class members about their right to request visitation because class members "did not appear to know that they could request visitation." ECF No. 1526-1, at 17. But the parties agreed that CBP will inform minors, orally and via a poster, of their right to request visitation with family members. ECF No. 1254-1, § VII.8.B.3. CBP routinely complies with this obligation. Caanen Decl. ¶ 10; Stamper Decl. ¶ 7; Campos Decl. ¶ 19.

---

[9]    Notably, the minors held in El Paso who state that they did not receive regular visitation with family members were held with at least one parent. *See, e.g.*, B.M.M.C. Decl. (Nov. 20, 2024), ECF No. 1526-12, ¶¶ 4-6 (three-year-old was housed with mother, but father was in a separate pod); W.O.R.P. Decl. (Nov. 20, 2024), ECF No. 1526-13, ¶¶ 5, 13 (child was housed with father, but the child's aunt and uncle were housed in another pod).

Plaintiffs argue that because CBP has not consistently complied with the visitation provision, CBP has not complied with the Settlement "as a whole." ECF No. 1526-1, at 17–18. Even if Plaintiffs could meet their burden of showing that CBP has not met its commitments in the Settlement's family-unity provisions, this alone would not mandate that CBP failed to substantially comply with other critical provisions of the Settlement such that the Court should alter the parties' agreed-to termination date. *See Lab./Cmty. Strategy Ctr.*, 564 F.3d at 1122.

## ii.    *Special Considerations*

The parties agreed that CBP will make reasonable efforts to include televisions in holding rooms and make "efforts" to include age-appropriate toys, activities, and furniture. ECF No. 1254-1, § VII.8.C. CBP has substantially complied with the "Special Considerations" provisions. CBP provides televisions in Juvenile Priority Facilities for entertainment. Caanen Decl. ¶ 18; Stamper Decl. ¶ 17. The Sectors have also made efforts to provide age-appropriate toys, including coloring books, building blocks, cards, puzzles, and reading books, as well as incorporated daily-recreation time. Caanen Decl. ¶¶ 10, 18; Stamper Decl. ¶¶ 7, 17.

Plaintiffs argue that CBP has failed to substantially comply with this provision and has not implemented a "trauma-informed approach." ECF No. 1526-1, 21–23. But Plaintiffs read too much into these provisions that have an "aspirational tone" and leave the details of implementation to CBP's discretion. *See Ashker v. Newsom*, 968 F.3d 939, 945 (9th Cir. 2020). For example, Plaintiffs allege that CBP falls short because CBP does not provide enough recreation time or a variety of toys. ECF No. 1526-1, at 21–22. The Settlement, however, does not specify how many toys or hours of activity CBP must provide. Instead, it requires that CBP "*make an effort* to have available age-appropriate toys/activities," as long as they do not pose a safety risk. ECF No. 1254-1, § VII.8.C.2 (emphasis added). As the JCM notes in the most recent report, caregivers at Donna "have been consistently observed to be actively involved with the [unaccompanied] children and supervise play with a

variety of child-friendly toys and activities." ECF No. 1522, at 11. The Sectors also report that they have incorporated a variety of safe, age-appropriate toys and activities for all minors. Caanen Decl. ¶ 10, 18; Stamper Decl. ¶ 7, 17. CBP has therefore met its commitment to "make an effort to have available age-appropriate" toys.

As far as recreation time, Plaintiffs ignore the JCM's December 2024 report that, at Donna, CBP implemented a schedule for "daily outdoor activity" in early November 2024. ECF No. 1522, at 11. The El Paso Sector provides similar recreation time. *See* Stamper Decl. ¶¶ 7, 17. Plaintiffs' assertion that "staff actively prevent children from entertaining themselves and playing" is exaggerated and fails to consider that CBP's priority is safety. *See, e.g.*, ECF No. 1522, at 13 ("That UCs and families feel safe in CBP custody is a fundamental precondition for trauma-informed care."). Children are not restricted from engaging in any activities in the pods. *See* Stamper Decl. ¶ 17. However, to maintain the safety of all, there may be situations where a child was prohibited from engaging in activity that may be dangerous. *Id.*

Plaintiffs next complain that caregivers and CBP personnel do not provide minors with information. ECF No. 1526-1, at 23. Although Plaintiffs do not specify what information they refer to, Plaintiffs appear to challenge CBP's failure to inform class members about their immigration proceedings. *See id.* at 23 (citing W.O.C.M. Decl. (Nov 20, 2024), ECF No. 1526-25, ¶ 6 (parent declarant reports that "[t]hey have not told me why I am still here"); R.E.Z. Decl. (Sept. 18, 2024), ECF No. 1526-16, ¶ 6 ("No one has explained to me why I have been here for 10 days or anything about what is happening with my immigration case.")). The Settlement does not require CBP to regularly update class members about the status of their immigration cases, and Plaintiffs should not stretch the "trauma-informed approach" to include such a requirement. *See Ashker*, 968 F.3d at 945. Plaintiffs do not acknowledge that

CBP staff often cannot predict how long a class member will be at a facility and may not be able to immediately look up the minor's case status.

In sum, Plaintiffs fail to show a lack of substantial compliance with the requirements in Section VII.8 of the Settlement.

### h. Caregivers

The Settlement contains provisions related to the hiring, availability, and responsibility of caregivers. ECF No. 1254-1, § VII.9. Caregivers must pass background checks, be available on a 24/7 basis, and have a supervisor available at all times. *Id.* § VII.9.A. CBP must also provide caregivers an orientation. *Id.* § VII.9.B. The parties agreed that caregivers will: (1) support general care to infants and tender-age children; (2) collect laundry; (3) issue and collect shower/hygiene supplies; (4) monitor class members going into and out of showers; (5) assist in bathing class members, as appropriate; (6) store clothing and issue it as needed; (7) maintain a safe environment; and (8) maintain inventory of items. *Id.* § VII.9.C. In addition, the parties agreed that CBP will "make best efforts" to provide additional support for class members via caregivers, including: (1) assisting in communicating and interacting with family members; (2) assisting with the care of class members, such as toileting; and (3) supervising and supporting class members during recreational activities. *Id.* § VII.9.D.

Plaintiffs cite JCM reports to argue that CBP has not substantially complied with its caregiver program. *See* ECF No. 1526-1, at 23–24. But the JCM has found that CBP meets the requirements in Section VII.9. *See* ECF No. 1372, at 42 ("CBP is meeting the Settlement's requirements regarding the caregiver program."); ECF No. 1522, at 11 ("[CBP] is meeting the Settlement's requirements regarding the number and deployment of Caregivers."); *id.* at 10 ("Caregivers responded to families expressing the needs of their children and supervised child-focused activities."); *see also* Campos Decl. ¶¶ 18–21 (describing the caregiver program); Caanen Decl. ¶ 19 (caregivers in the RGV Sector); Stamper Decl. ¶ 18 (caregivers

in the El Paso Sector).  The JCM suggested improvements for CBP to meet the aspirational caregiver provisions—that CBP make its "best efforts" to assist with family interactions and recreational activities—and CBP is striving continually to improve the caregiver program, in accordance with the JCM's suggestions.  *See* Campos Decl. ¶¶ 20–21.  But Plaintiffs have not shown that CBP is in breach of any obligations.

### i.  Notice Requirements

In Section XI of the Settlement, the parties agreed that CBP will post Settlement Exhibit 1, ECF No. 1254-1, at 31, in all facilities where class members can see and read it.  *Id.* § XI.  CBP must also inform class members and, in some cases, their adult family members, of their rights under the Settlement orally and by video.  *Id.*  This advisal is contained in Settlement Exhibit 3.  *Id.* at 35.  CBP must also provide class members a Form I-770.  *Id.* § XI.  Lastly, this section requires CBP to provide a copy of a list of free legal services to all class members.  *Id.*

CBP routinely complies with these notice requirements. *See* Caanen Decl. ¶¶ 11–13, 19; Stamper Decl. ¶¶ 8–9, 14, 18.  Plaintiffs, however, allege that class members frequently report not receiving a list of legal providers.  ECF No. at 1254-1, at 18. But according to CBP, the list of legal providers is provided to every class member during processing.  Caanen Decl. ¶¶ 11–12; Stamper Decl. ¶¶ 8–9.  When a family is released from custody with a Notice to Appear, the family is provided the list again as part of their packet when they leave the Border Patrol facility.  Caanen Decl. ¶ 11; Stamper Decl. ¶ 8.  Unaccompanied children also receive the list upon their transfer to the Office of Refugee Resettlement.  Caanen Decl. ¶ 11; Stamper Decl. ¶ 8.  Because Plaintiffs have not shown that CBP has failed to advise class members in accordance with Section XI, Plaintiffs have not met their burden of proving that CBP failed to substantially comply with the notice requirement.

Plaintiffs next allege that CBP "denies" class members' requests to call counsel.  ECF No. 1526-1, at 18.  But this allegation lacks support.  Rather,

Plaintiffs' declarants state that class members were not *advised* of their right to call legal counsel—not that CBP "denied" their request to call counsel. *See*, *e.g.*, C.N.T.F. Decl. (Sept. 18, 2024), ECF No. 1526-5, ¶¶ 19-20 ("No one has told me that I can call a lawyer or given me a list of free lawyers. No one told my mom she could call a lawyer."); G.N.P.C. Decl. (Sept. 19, 2024), ECF No. 1526-19, ¶ 23 ("My son and I have not been given a list of free legal services or told we can speak a lawyer.").[10]   CBP's advisal of their rights according to the Settlement, as well as CBP's providing the list of legal counsel before class members depart, satisfies the plain language of the Settlement.

### j.  Monitoring

Only one portion of the Settlement was separately embodied in a Court order—the JCM provisions. *See* ECF Nos. 1280, 1381, 1426, 1470.  In the September 11, 2024 Order, the Court adopted the parties' stipulation to extend the JCM's term to December 27, 2024.  ECF No. 1470, at 5–6.  That term has expired. Plaintiffs ask the Court to modify the September 11, 2024 Order to extend the JCM's term to July 27, 2025, pursuant to Rule 60(b).  ECF No. 1526-2, at 3–5.  However, neither the Settlement nor the September 11, 2024 Order permits more extensions. *See* ECF No. 1254-1, § IX.10; ECF No. 1526-2, at 3–5.  Plaintiffs have not established that CBP failed to substantially comply with the Settlement.  Indeed, CBP has developed a robust monitoring system.  Campos Decl. ¶¶ 9, 14–17, 22; Caanen Decl. ¶ 21; Stamper Decl. ¶ 20.  CBP acknowledges that the JCM recommended certain improvements and welcomes her recommendations.  But the JCM did not conclude that CBP's monitoring system is inadequate overall, leaving Plaintiffs short of proving a failure to substantially comply with provisions of the

---

[10]   Plaintiffs also cite a declaration from M.A.C.M. (Nov. 20, 2024), ECF No. 1526-20, ¶ 9 ("We were told that a lawyer cannot help us in here.").  It is unclear who the hearsay declarant is.  It is possible that another person in custody told the individual that a lawyer could not help him.

Settlement. To the extent the Court concludes otherwise and that additional monitoring is appropriate, it should be limited to the issues the JCM identified and for a limited duration. *See* Campos Decl. ¶ 23 (CBP is "working to review and implement these recommendations. OCMO anticipates that such a review will be largely complete within the next six months.").

> ## 2. The Court should not order a modification because the parties anticipated the allegedly changed circumstances.

Plaintiffs also fail to satisfy the second condition for modifying a consent decree under Rule 60(b). Ordinarily, "modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree." *Rufo*, 502 U.S. at 385. "[A] court must first interpret the terms and provisions of the decree as it would a contract to determine if the moving party anticipated a significant change in factual conditions, thereby making modification improper." *Asarco Inc.*, 430 F.3d at 976. Here, the parties anticipated that, at times during the settlement period, CBP "may be able to only partially comply with certain provisions of the Agreement." ECF No. 1254-1, § VI.1; *see also id.* § V.1 ("The Parties are aware that there are situations that . . . may nevertheless impact CBP's ability to maintain full compliance with this Agreement."). The parties also planned for the possibility that disputes may arise about whether CBP was complying with the Settlement. *Id.* § XIII. Nevertheless, Plaintiffs agreed to the termination provision. *Id*. § II.8. Plaintiffs have, at most, alleged partial noncompliance with the Settlement. Plaintiffs have not shown a "nearly complete failure to comply" that could not be anticipated. *Thompson*, 404 F.3d at 827. Because Plaintiffs anticipated possible limited noncompliance when they agreed to the termination provision, the Court should not modify the termination date based on a showing, at most, of limited noncompliance. *See Asarco Inc.*, 430 F.3d at 982–83.

**3.    The allegedly changed circumstances do not make compliance with the termination provision more onerous, unworkable, or detrimental to the public interest.**

Next, Plaintiffs do not prove that compliance with the Settlement's termination provision has become "more onerous, unworkable, or detrimental to the public interest." *Lab./Cmty. Strategy Ctr.*, 564 F.3d at 1120 (quoting *Asarco Inc.*, 430 F.3d at 979). Plaintiffs contend that the Settlement's termination on January 29, 2025, would be detrimental to the public's interest in the welfare of children. ECF No. 1526-1, at 27. But to the extent Plaintiffs believe that CBP is not providing "safe and sanitary" conditions, *id.*, Plaintiffs remain able to seek enforcement of the FSA. FSA ¶ 12.A. Further, CBP has incorporated the Settlement provisions in its guidance, which remains in effect. *See* Caanen Decl. ¶ 3; Stamper Decl. ¶ 3. Therefore, Plaintiffs' allegations of noncompliance do not demonstrate that compliance with the Settlement's termination provision is detrimental to the public interest.

**4.    Extending the Settlement's termination date would not be suitably tailored to resolve the problems created by the allegedly changed conditions.**

Finally, Plaintiffs have not shown that changing the termination date would be "suitably tailored to resolve the problems created by the [alleged] changed . . . condition." *Lab./Cmty. Strategy Ctr.*, 564 F.3d at 1120 (quoting *Asarco Inc.*, 430 F.3d at 979). This Settlement arose from litigation about the interpretation of the FSA and sought to "clarify[ ] the Parties' understanding of the meaning of [Paragraphs 11 and 12A] of the [FSA], as they apply to conditions of CBP detention in the RGV and El Paso Sectors." ECF No. 1254-1, at 3. The FSA obligations continue to apply, and the Settlement has not reduced disputes. Further, while the extension sought by Plaintiffs is unsupported and should be denied, Defendants are willing to engage with Plaintiffs on a reasonable path forward in a way suitably

tailored to address the concerns raised by the JCM in her most recent report and to ensure ongoing compliance with the FSA.

And doubling the duration of the Settlement is under no circumstances suitably tailored. As the government has explained, the Court does not have authority to extend the Settlement, and Plaintiffs have not shown the Rule 60(b) factors. But should this Court determine that it has authority to impose ongoing obligations on the government, it must first consider a much more targeted and time-limited remedy than Plaintiffs propose.

In doing so, the Court must limit court-imposed relief both in scope and time, such as a short extension of the JCM's term. By extending only the JCM's term for a short period, the Court would be targeting relief to enforce the relevant provisions of the FSA rather than imposing new relief without required enforcement proceedings. Indeed, OCMO has explained that it "welcomes the[] recommendations from the JCM, and is working to review and implement [them]," including those

> in her December 2024 final report, [where] the JCM made several recommendations for continued monitoring of various aspects of CBP's medical processes. These included, for example, a continued assessment of the processes and procedures for the transmission of medical information between MSC personnel and CBP personnel, and from CBP personnel to local healthcare systems; an assessment of the use of isolation rooms; and a continued assessment and oversight of MSC consultation with pediatric advisors.

Campos Decl. ¶ 23. OCMO "anticipates that such a review will be largely complete within the next six months." *Id.* Thus, an extension of the JCM term beyond six months is not warranted.

Imposing the Settlement beyond those specific terms where Plaintiffs have made the requisite showing is also not warranted. As explained above, it is undisputed that CBP has achieved substantial compliance in most areas, and

Plaintiffs have failed to establish any unanticipated change in circumstances.  There is no justification for imposing the full Settlement for an additional 2.5 years.

While Plaintiffs use sweeping language to describe CBP's alleged noncompliance with the Settlement, Plaintiffs identify at best a limited number of purported areas of breach.  *See* ECF No. 1526-1, at 8–20.  Plaintiffs suggest that the Court should "doubt CBP's compliance" as to other provisions.  ECF No. 1526-1, at 27.  But it is Plaintiffs' burden to *prove* noncompliance that warrants modification.  *See Lab./Cmty. Strategy Ctr.*, 564 F.3d at 1121.  Moreover, CBP undisputably has complied with many Settlement provisions.  *See* Section III.B.1, *supra.*  Plaintiffs make no effort to prove noncompliance as to the specific, measurable requirements in sections VII.1 (facility designation); VII.2 (contract quality assurance); VII.3 (enhanced medical support); VII.4 (nutrition); VII.5.A (temperature); VII.6.1 and 6.3–6.5 (sleep); and VII.7.1–7.5 and 7.7–7.10 (hygiene and sanitation).  Extending the duration of provisions with which Plaintiffs fail to prove a lack of substantial compliance would be unnecessary.  In sum, if this Court concludes that Rule 60(b) applies and authorizes it to impose the Settlement beyond the clear termination date, suitably tailored relief would be limited to extending the term of the JCM or those specific provisions where Plaintiffs made the requisite showing, and an extension beyond six months is not justified.

## IV.    CONCLUSION

For all the foregoing reasons, the Court should deny the relief requested in Plaintiffs' Motion to Modify the 2022 CBP Settlement.

DATED: January 7, 2025                  Respectfully submitted,

                                        BRIAN M. BOYNTON
                                        Principal Deputy Assistant Attorney General
                                        Civil Division
                                        AUGUST E. FLENTJE
                                        Deputy Director
                                        WILLIAM C. SILVIS
                                        Assistant Director
                                        MICHAEL A. CELONE
                                        CHRISTINA PARASCANDOLA
                                        KATELYN MASETTA-ALVAREZ
                                        Senior Litigation Counsel

                                        */s/ Joshua C. McCroskey*
                                        JOSHUA C. MCCROSKEY
                                        Trial Attorney
                                        U.S. Department of Justice
                                        Office of Immigration Litigation
                                        General Litigation and Appeals Section
                                        P.O. Box 878, Ben Franklin Station
                                        Washington, DC 20044
                                        202-305-1540
                                        joshua.c.mccroskey@usdoj.gov

                                        *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I certify that I served a copy of the foregoing document on all counsel of record by means of the District Court's CM/ECF system.

Dated: January 7, 2025          */s/ Joshua C. McCroskey*
                                 JOSHUA C. MCCROSKEY
                                 Trial Attorney
                                 U.S. Department of Justice

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants, certifies that this brief contains 7,634 words, which complies with the word limit set by Court order dated January 2, 2025, ECF No. 1532.

Dated: January 7, 2025          */s/ Joshua C. McCroskey*
                                 JOSHUA C. MCCROSKEY
                                 Trial Attorney
                                 U.S. Department of Justice