CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Carlos R. Holguín (Cal. Bar No. 90754)
Sarah E. Kahn (Cal. Bar No. 341901)
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Email: crholguin@centerforhumanrights.org

*Attorneys for Plaintiffs*

*Additional counsel listed on following page*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*, | No. CV 85-4544-DMG-AGRx |
| Plaintiffs, | PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO MODIFY 2022 CBP SETTLEMENT |
| v. | |
| MERRICK GARLAND, Attorney General of the United States, *et al.*, | JUDGE: Hon. Dolly M. Gee |
| | Hearing: January 24, 2024 |
| Defendants. | Time: 9:30 a.m. |

NATIONAL CENTER FOR YOUTH LAW
Mishan Wroe (Cal. Bar No. 299296)
Diane de Gramont (Cal. Bar No. 324360)
1212 Broadway, Suite 600
Oakland, CA 94612
Telephone: (510) 835-8098
Email: mwroe@youthlaw.org

NATIONAL CENTER FOR YOUTH LAW
Rebecca Wolozin (admitted *pro hac vice*)
818 Connecticut Ave. NW, Suite 425
Washington, DC 20006
Telephone: (202) 868-4792
Email: bwolozin@youthlaw.org

CHILDREN'S RIGHTS
Leecia Welch (Cal. Bar No. 208741)
2021 Fillmore Street
San Francisco, CA 94115
Telephone: (415) 602-5202
Email: lwelch@childrensrights.org

CHILDREN'S RIGHTS
Eleanor Roberts (admitted *pro hac vice*)
88 Pine Street, Suite 800
New York, NY 10005
Telephone: (212) 683-2210
Email: eroberts@childrensrights.org

# TABLE OF CONTENTS

**I.    Introduction**........................................................................................................1

**II.   Argument** ............................................................................................................2

A.   Extension of the Settlement Based on CBP's Lack of Substantial Compliance is Warranted Under Rule 60(b) ...........................................................................2

*1.   The Court necessarily retained jurisdiction over the Settlement.* ....................2

*2.   Rule 60(b) permits modification of the Settlement's termination provision based on a lack of substantial compliance.* ........................................................5

B.   CBP Has Failed to Substantially Comply with Key Terms and the Broader Goals of the Settlement .....................................................................................7

*1.   Defendants have failed to provide accurate or complete class member data to either the JCM or Plaintiffs.* ............................................................................8

*2.   Extended length of stay exacerbates the harm caused by all violations of the Settlement.* .....................................................................................................10

*3.   Routine separations of family members and lack of adequate visitation violate the Settlement.* .................................................................................................11

*4.   Children are routinely denied access to counsel in CBP custody.* .................14

*5.   CBP's inconsistent compliance with hygiene and warmth requirements suggest non-compliance with quality assurance mechanisms and self-monitoring requirements.* ..................................................................................16

*6.   CBP has failed to provide children with required recreation and child-friendly activities.* ............................................................................................17

*7.   CBP has failed to meet the Settlement's requirements to create a child-friendly environment and implement a caregiver program.* ..........................17

*8.   Defendants admit CBP has not implemented self-monitoring protocols approved by the JCM as required by the Settlement.* .....................................18

C.   Defendants' Noncompliance is an Unanticipated Change in Circumstances Which Warrants Modification under Rule 60(b)..................................................19

D.   Relief From the Termination Provision is Suitably Tailored and in the Public Interest..............................................................................................................20

**III.  Conclusion**........................................................................................................21

**CASES**

*David C. v. Leavitt*,
    242 F.3d 1206 (10th Cir. 2001)............................................................7, 20, 21

*Dep't of Fair Emp. and Hous. v. Law Sch. Admission Council*,
    12-CV-01830-JCS, 2018 WL 1156605 (N.D. Cal. Mar. 5, 2018)......................6

*Flores v. Johnson*,
    212 F.Supp.3d 864, 881-82 (C.D. Cal. 2015) .............................................13, 18

*Flores v. Lynch*,
    828 F.3d 898 (9th Cir. 2016)...........................................................................3

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
    10 F.3d 693 (9th Cir. 1993)............................................................................7

*Jeff D. v. Otter*,
    643 F.3d 278 (9th Cir. 2011)...................................................................6, 8, 20

*Kelly v. Wengler*,
    822 F.3d 1085 (9th Cir. 2016)...............................................................passim

*Kelly v. Wengler*,
    No. 1:11-cv-00185-EJL (D.I.D. Sept. 20, 2011)...........................................6

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) .................................................................................2, 3, 4

*Labor/Cmty. Strategy Ctr. v. Los Angeles Cnty. Metro. Transp. Auth.*,
    564 F.3d 1115 (9th Cir. 2009)...............................................................5, 7, 20

*O'Connor v. Colvin*,
    70 F.3d 530 (9th Cir. 1995)..........................................................................3, 5

*Rouser v. White*,
    825 F.3d 1076 (9th Cir. 2016)...............................................................6, 8, 20

*Thompson v. U.S. Dep't of Hous. & Urb. Dev.*,
    404 F.3d 821 (4th Cir. 2005).........................................................................20

*United States v. California*,
    No. 06-CV-2667, 2012 WL 12906030 (C.D. Cal. Sept. 25, 2012) ..................7

**RULES**

Fed. R. Civ. P. 60(a)..........................................................................................5

Fed. R. Civ. P. 60(b) …………………………………………………………passim

## I.   INTRODUCTION

The 2022 CBP Settlement Agreement ("Settlement") provides for 2.5 years of compliance with its terms, requires court-ordered independent monitoring, and requires U.S. Customs and Border Protection ("CBP") to create self-monitoring protocols to ensure that children continue to be held in compliant conditions following the termination of the Settlement. [Doc. No. 1254-1]. Clearly, this Court has always retained jurisdiction over the above-captioned case, the *Flores* Settlement Agreement ("FSA"), and the Settlement clarifying CBP's obligations under the FSA. Despite the tireless efforts of the Juvenile Care Monitor ("JCM"), CBP remains far from compliant with the Parties' bargained-for agreement and needs more time to meet its obligations.

Although the government has made significant progress in discreet areas, CBP has failed to substantially comply with multiple critical provisions and has not achieved the Settlement's underlying purpose—to provide children safe and sanitary conditions consistent with concern for their special vulnerabilities as minors. Plaintiffs have submitted, and Defendants have failed to refute, voluminous evidence from class members, their parents, and the JCM, that Defendants routinely separate children from their parents and trusted family members, deny access to legal counsel, deny clean and warm clothing, and provide limited or no child-friendly activities, recreation, or trauma-informed care despite prolonged detention. Moreover, Defendants have violated their data reporting obligations, the JCM has not yet approved CBP's internal monitoring protocols, and Defendants admit they need more time to review and implement the JCM's recommendations.

An extension of the Settlement's term is warranted under Federal Rule of Civil Procedure 60(b) and is essential to ensure Plaintiffs receive what they bargained for years ago—compliance with the Settlement.[1]

## II.    ARGUMENT

### A. Extension of the Settlement Based on CBP's Lack of Substantial Compliance is Warranted Under Rule 60(b)

#### 1. The Court necessarily retained jurisdiction over the Settlement.

Defendants argue the Court cannot modify the termination date of the Settlement under Rule 60(b) because the Court did not explicitly incorporate the Settlement into an order.[2] As Defendants acknowledge, however, a court can make a settlement part of a court order through either of two means: (1) retention of jurisdiction or (2) incorporation into the order.[3] Defs.' Resp. in Opp'n. to Pls.' Mot. to Modify at 3-4 [Doc. No. 1534] ("Defs.' Resp.") (quoting *Kokkonen v.*

_____

[1] Plaintiffs have repeatedly sought to work with Defendants to find "a reasonable path forward," but Defendants have not offered any path. *See* Declaration of Sarah Kahn & Exs. 1A, 1B, and 1C [Doc. No. 1526-3] ("Kahn Decl."); Declaration of Rebecca Wolozin & Exs. 2A, 2B, and 2C [Doc. No. 1526-4] ("Wolozin Decl."). Nevertheless, Plaintiffs remain open to negotiating with Defendants to ensure the safety of children in custody.

[2] Despite Plaintiffs' efforts to meet and confer regarding the Motion over several months, including Plaintiffs' explicit intention to move under Rule 60(b) (*see* Wolozin Decl. ¶¶ 6, 10, 12-16; Exs. 2A, 2C), Defendants did not raise this issue with Plaintiffs and therefore did not engage in a meaningful meet and confer process.

[3] The parties and the Court in *Kelly* opted for the second option, incorporation into the court order. *See Kelly v. Wengler*, 822 F.3d 1085, 1094-95 (9th Cir. 2016). The Ninth Circuit held that incorporation into the court's order was sufficient under *Kokkonen* to provide the district court with subject matter jurisdiction. *Id.* at 1094. Because the retention of jurisdiction option was not at issue in *Kelly*, the court did not address it. *Cf.* Defs.' Resp. at 5-6.

*Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380-81 (1994)); *see also Kokkonen*, 511 U.S. at 381-82 ("[T]he court is authorized to embody the settlement contract in its dismissal order or, *what has the same effect, retain jurisdiction* over the settlement contract[] if the parties agree.") (emphasis added).

The Court has always retained jurisdiction over the Settlement as part of its continued jurisdiction over this case and the FSA. The Settlement is a binding agreement—reached by the Parties in lieu of litigating a temporary restraining order to enforce the FSA—dictating how the Parties will implement the requirements of the FSA. *See* Settlement at 1 ("[T]he Parties enter into this Agreement for the purpose of clarifying the Parties' understanding of the meaning of certain provisions of the [FSA]"); § II.8.n.2. The FSA is indisputably a consent decree subject to continued enforcement and modification by the Court. Defs.' Resp. at 5; *Flores v. Lynch*, 828 F.3d 898, 903-05 (9th Cir. 2016).

After approving the Settlement, the Court denied Plaintiffs' application for a temporary restraining order as moot but did not dismiss the underlying case. Ord. Granting Final Approval of Settlement Agreement at 3, July 29, 2022 [Doc. No. 1278] ("Settlement Approval Order"). Far from relinquishing subject matter jurisdiction, the Court approved the Settlement to facilitate future compliance with the FSA. Settlement at 1; Settlement Approval Order at 1-2. The Court's mootness determination was necessarily dependent on the alternative relief provided in the Settlement. This presents a stark contrast from *Kokkonen* and other cases relied upon by Defendants, which involved standalone settlement agreements that terminated the underlying litigation and therefore terminated federal subject matter jurisdiction. *Cf. Kokkonen*, 511 U.S. at 380; *O'Connor v. Colvin*, 70 F.3d 530, 531-32 (9th Cir. 1995); Defs.' Resp. at 4 n.3.

Additionally, the Court's "intention to retain jurisdiction" was "expressed in the order" approving the Settlement. *O'Connor*, 70 F.3d at 532. The Court explained the Parties had reached an agreement "regarding the *manner in which*

the Government will comply with the requirements of paragraphs 11 and 12A of the *Flores* Settlement Agreement ("FSA")." Settlement Approval Order at 1-2 (emphasis added). The Court's approval order also stated the Parties agreed that an independent JCM "shall be *given authority by the Court* to monitor compliance with the FSA and the Agreement in the Rio Grande Valley and El Paso CBP Sectors as detailed in the Agreement." Settlement Approval Order at 2 (emphasis added). The Court plainly could not confer monitoring authority on the JCM unless the Court itself retained jurisdiction over the Settlement.

The Court subsequently appointed a JCM to "assist the efforts of the parties and *the Court to ensure compliance* with the Agreement." Ord. Appointing Juv. Care Monitor, Aug. 3, 2022 [Doc. No. 1280] ("JCM Appointment Order") (emphasis added). The JCM Appointment Order reiterated multiple requirements of the Settlement, including that CBP provide the JCM with "data regarding the time that class members spend in CBP custody," that CBP provide the JCM with all monitoring protocols, and that the JCM "approve CBP's final monitoring protocols." *See e.g.*, JCM Appointment Order at 4-5.

The Parties also explicitly agreed to the Court's retention of jurisdiction over enforcement in the Settlement itself. *See Kokkonen*, 511 U.S. at 382 (court can retain jurisdiction "if the parties agree."). The Settlement provides for quarterly reporting to the Court by the JCM, Court approval for additional aides for the JCM, and sets out a dispute resolution procedure that includes enforcement in this Court. Settlement §§ IX.2, XIII.3-4; *see also Kelly*, 822 F.3d at 1095 (relying on dispute resolution procedure in the settlement to establish that parties agreed to retention of jurisdiction).

The Court therefore retained jurisdiction over the Settlement and has the authority under Rule 60(b) to modify the Settlement clarifying Defendants'

1    obligations under the FSA. The Court also has the authority to modify its orders

2    approving the Settlement and appointing and extending the term of the JCM.[4]

3      **2.  Rule 60(b) permits modification of the Settlement's**

4      **termination provision based on a lack of substantial**

5      **compliance.**

6      Defendants misunderstand the legal standard for Rule 60(b) modification

7    and suggest that extension of the Settlement is inappropriate because the Parties

8    did not agree to an extension and Defendants have complied with some provisions

9    of the Settlement. Defs.' Resp. at 1-2, 7-8. These arguments are plainly contrary to

10   Ninth Circuit precedent.

11     Rule 60(b) authorizes extension of the Settlement as a modification based on

12   changed factual circumstances, namely, Defendants' "failure of substantial

13   compliance." *Labor/Cmty. Strategy Ctr. v. Los Angeles Cnty. Metro. Transp. Auth.*,

14   564 F.3d 1115, 1120-21 (9th Cir. 2009). The legal standard for changed

15   circumstances warranting an extension is "[t]he failure of substantial compliance,"

16   not "near total noncompliance." *Labor/Cmty. Strategy Ctr.*, 564 F.3d at 1123;

17   Defs.' Resp. at 7. Defendants' reliance on *Labor/Cmty. Strategy Ctr.* to argue

18   otherwise omits important context. In affirming the district court's exercise of

19   discretion in declining to extend a consent decree, the court "note[d] that the *de*

20   *minimis* level of noncompliance here is nowhere close to the near total

21   noncompliance" present in other cases cited. *Id.* After finding no abuse of

22

23   _____

24

25   [4] Given that the Court unquestionably maintained jurisdiction over the CBP

26   Settlement, the Court was not required to use the specific words "[t]he Court
     retains jurisdiction" in its approval order. *O'Connor*, 70 F.3d at 532. If the Court

27   believes that such specific words were necessary, notwithstanding the undisputed
     nature of the Court's jurisdiction, and were inadvertently omitted, the Court could

28   correct the approval order under Fed. R. Civ. P. 60(a).

discretion, the Ninth Circuit's holding focused on the relevant legal standard, substantial compliance. *Id.*

Substantial compliance requires compliance with *each* of the distinct provisions of a consent decree and that "the larger purposes of the decrees have been served." *Jeff D. v. Otter*, 643 F.3d 278, 288 (9th Cir. 2011); *Rouser v. White*, 825 F.3d 1076, 1081 (9th Cir. 2016). "[M]erely taking significant steps toward implementing the decree" is insufficient. *Rouser*, 825 F.3d at 1082.[5] The Ninth Circuit and district courts in this Circuit have approved full settlement extensions under Rule 60(b) when a defendant's violations were more than de minimis and undermined substantial compliance, even when the defendant was in partial compliance. *See* Mem. in Support of Pls.' Mot. to Modify at 21-22 [Doc. No. 1526-1] ("Pls.' MTM");[6] *see also Kelly*, 822 F.3d at 1098 (rejecting argument that full extension was inappropriate because Defendants complied with other settlement requirements); *Dep't of Fair Emp. and Hous. v. Law Sch. Admission Council*, 12-CV-01830-JCS, 2018 WL 1156605, at *26 (N.D. Cal. Mar. 5, 2018) (rejecting similar argument regarding partial compliance).

Furthermore, that the Settlement itself does not include a substantial compliance provision does not preclude modification. For example, the settlement at issue in *Kelly* was limited to a two-year term with no provision for extension and in fact purported to explicitly prohibit modification. *Kelly*, 822 F.3d at 1097-98; Stipulation for Dismissal, 6-7 Ex. A ¶¶ 16, 19, *Kelly v. Wengler*, No. 1:11-cv-

---

[5] That Plaintiffs bear the burden of demonstrating a lack of substantial compliance does not change the legal meaning of substantial compliance. *Cf.* Defs.' Resp. at 7 n.6.

[6] Contrary to Defendants' suggestion that Plaintiffs ignored areas of compliance (Defs.' Resp. at 8), Plaintiffs acknowledged areas of progress and explained why relevant precedent nonetheless authorizes a full extension. *See* Pls.' MTM at 5, 20-22. Defendants fail to engage with and respond to this caselaw.

00185-EJL (D.I.D. Sept. 20, 2011) (Doc. No. 25). The Ninth Circuit nonetheless approved an extension under "well established law" that "substantial violation of a court order constitutes a significant change in factual circumstances" justifying modification. *Kelly*, 822 F.3d at 1098.[7]

Defendants' unsuccessfully attempt to distinguish *Kelly* by noting the case involved a finding of contempt. Defs.' Resp. at 7. But a contempt finding is not required to extend the Settlement because Rule 60(b) provides the Court with independent authority to modify. *See United States v. California*, No. 06-CV-2667, 2012 WL 12906030, at *1 n.1, *3 (C.D. Cal. Sept. 25, 2012); *see also Kelly*, 822 F.3d at 1098. That Plaintiffs did not move for a finding of contempt does not diminish the seriousness of Defendants' violations. Moreover, substantial compliance is also the relevant legal standard for a contempt finding. *See In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993).

Defendants' lack of substantial compliance is a significant changed circumstance that justifies relief from the Settlement's 2.5-year termination provision. *See* Fed. R. Civ. P. 60(b); *David C. v. Leavitt*, 242 F.3d 1206, 1211 (10th Cir. 2001).

### B. CBP Has Failed to Substantially Comply with Key Terms and the Broader Goals of the Settlement

The Settlement "represents a commitment by CBP . . . to comply with the requirements of paragraphs 11 and 12A of the [FSA], mandating that class

---

[7] Although the decree at issue in *Labor/Cmty. Strategy Ctr.* did include a provision on modification, the Ninth Circuit noted the requirements of this provision "are essentially identical to those articulated by the Supreme Court in *Rufo* … and applied" in other cases. *Labor/Cmty. Strategy Ctr.*, 564 F.3d at 1120. This provision was not necessary to give the Court the power it already had under current precedent.

members be housed in safe and sanitary conditions with particular regard for the vulnerability of minors." Settlement § II.1. Although Plaintiffs acknowledge that CBP has made progress in meeting some Settlement requirements, it is plain from the record that there are significant areas of noncompliance and, when taken as a whole, CBP has failed to meet its commitment or achieve substantial compliance. *See Rouser*, 825 F.3d at 1081; *Jeff D.*, 643 F.3d at 288. Defendants' attempt to minimize noncompliance as either minor or permissible fails in the face of evidence from Plaintiffs and the JCM of widespread and ongoing violations.

### 1. Defendants have failed to provide accurate or complete class member data to either the JCM or Plaintiffs.

The JCM's December 2024 Final Report raised questions regarding the accuracy of the data CBP is required to provide the JCM and a need for further clarification. *See* JCM Report 4, 22-23, Dec. 13, 2024 [Doc. No. 1522] ("Dec. 2024 JCM Rep."). Based on this limited information, Plaintiffs' Motion noted reasons to doubt CBP's compliance with the data requirements of the Settlement and emphasized the risks of premature termination prior to effective implementation of CBP's self-monitoring protocols. *See* Pls.' MTM at 20, 22.

Recent disclosures by Defendants now reveal that CBP has long provided the JCM and Plaintiffs with egregiously inaccurate data, in violation of the Settlement, the FSA, and the Court's orders.[8] The JCM has relied on this critical

---

[8] The Settlement requires that CBP provide the JCM with information necessary to assess overcrowding, including "data regarding the time that class members spend in CBP custody." Settlement § IX.5.i. The Court's orders also require this data provision. *See* JCM Appointment Order at 4; Ord. for Extension of Juv. Care Monitor Term at 4, Sept. 11, 2024 [Doc. No. 1470] ("Order for JCM Ext."). Separately, CBP has long been required to provide Plaintiffs' counsel with monthly statistical reports on all class members in custody over 72 hours. *See* Ord. re Resp. to Ord. to Show Cause at 15, Aug. 21, 2015 [Doc. No. 189]; FSA ¶ 28A.

data to analyze and report children's time in custody to the Court. *See* Dec. 2024 JCM Rep. 4.

In fall 2024, the JCM raised questions with CBP regarding the accuracy of its data on children's length of stay and repeatedly requested clarification. *See id.* Despite the JCM's diligent efforts, CBP did not provide an explanation prior to the filing of the JCM's final report. *Id.* at 4, 22-23.

On December 20, 2024, Defendants disclosed that CBP has always excluded children transferred to either ICE or ORR custody from its monthly data reports of children held in CBP custody for more than 72 hours. *See* Ex. A, Declaration of Diane de Gramont ¶ 9 & Ex. 2, Jan. 14, 2025 ("de Gramont Decl."). This resulted in a failure to report all children in CBP custody over 72 hours. *Id.* ¶¶ 9-21. Defendants provided corrected data for October 2024 and a report for November 2024 in the same communication. *Id.* Ex. 2. This divulgence came the same day Plaintiffs had previously informed Defendants they would file their Motion. *Id.* ¶¶ 8-9.

Upon closely analyzing the corrected data report for October 2024, Plaintiffs discovered that CBP had dramatically undercounted the number of children held over 72 hours. For example, CBP originally reported *less than half* (1,205) of the 2,489 class members held in CBP custody over 72 hours in October 2024. *See* de Gramont Decl. Ex. 1 at 2. According to the corrected October data, 832 class members were held in CBP custody for over 7 days—*three times the number previously reported*. *Id.* Two previously unreported children in the RGV sector—a 7-year-old and a 14-year-old—were detained for 22 days. *Id.* at 3.

Defendants concede CBP has long provided incomplete data on class member's length of custody. *See* de Gramont Decl. ¶¶ 9-12; Exs. 2 & 3. Defendants' proffered explanation for the noncompliance—that CBP inaccurately assumed these children's time in custody were included in ICE and HHS data reports—does not excuse or justify this violation of the Settlement. de Gramont

Decl. ¶¶ 9-12, 21; Exs. 2 & 3.[9] It was the responsibility of CBP—not ICE or HHS—to ensure the JCM received accurate data regarding children's time in CBP custody. *See* Settlement § IX.5.i. In addition to constituting a substantial violation of the Settlement, Defendants' errors and untimely corrections naturally create reason to "doubt[] [CBP's] compliance in other respects," such as the integrity of the other data they have been providing throughout the term of the Settlement. *Kelly*, 822 F.3d at 1098 (internal citation omitted).

## 2. Extended length of stay exacerbates the harm caused by all violations of the Settlement.

Despite evidence that many more children than previously reported experienced prolonged CBP detention, Defendants fail to address the impact of extended lengths of custody on children, except to disclaim responsibility. *See* Ex. A to Defs.' Resp., Caanen Decl. ¶¶ 20-21 [Doc. No. 1534-1] ("Cannon Decl."); Ex. B to Defs.' Resp., Stamper Decl. ¶¶ 20-21 [Doc. No. 1534-2] ("Stamper Decl."). Defendants' declarants acknowledge they monitor time in custody for processing purposes or medical support, but they do not provide any evidence that CBP considers time in custody when making operational decisions that impact detention conditions. Caanen Decl. ¶ 21; Stamper Decl. ¶¶ 20-21; Ex. C to Defs.' Resp., Campos Decl. ¶ 10 [Doc. No. 1534-3] ("Campos Decl.").

---

[9] CBP's assumption that unaccompanied children held over 72 hours would be included in HHS data reports was especially unreasonable because HHS ceased providing complete monthly data for children in HHS custody as of the July 2024 data report. *See* Ord. re Pls.' Mot. to Enforce *Flores* Settlement Agreement at 3, Nov. 25, 2024 [Doc. No. 1516]. Pursuant to the Court's November 2024 order, HHS now provides Plaintiffs with monthly data regarding only those children held in secure, heightened supervision, and out-of-network facilities. *Id.* at 5-6. Defendants' HHS data reports for July 2024, August 2024, September 2024, October 2024, and November 2024 do not include children's time in CBP custody. *See* de Gramont Decl. ¶¶ 10-12.

As frequently noted by the JCM and Plaintiffs, prolonged detention exacerbates the harms of Settlement violations. For example, remaining in a windowless pod for three days with only occasional access to coloring materials and a deck of Uno cards is boring and difficult for a child, but the same conditions become isolating and debilitating when they last a week or longer. Dec. 2024 JCM Rep. 11; Pls.' MTM at 17. Similarly, being temporarily separated from a parent for three days with daily visitation is likely very challenging for a young person, but separation from a parent for a week or more with only one or no visits is extremely harmful. *See* Dec. 2024 JCM Rep. 6; Pls.' MTM at 8-12.

CBP's failure to consider prolonged custody in its operational decisions makes compliance with the overarching purpose of the Settlement to ensure safe and sanitary conditions impossible. *See, e.g.* Dec. 2024 JCM Rep. 14 ("[H]olding children at elevated medical risk in custody for what appears to be increasingly longer times in custody will inevitably place additional stress on the ability of the CBP medical system to ensure the well-being of children at elevated medical risk while in custody"), at 16 ([T]he size of [small medical isolation rooms] is inappropriate for holding families for any significant length of time."); JCM Report 14, Sept. 10, 2024 [Doc. No. 1468] ("Aug. 2024 JCM Rep.") ("The issue [of nutrition] becomes increasingly problematic as time in custody rises").

### 3. Routine separations of family members and lack of adequate visitation violate the Settlement.

The Settlement, the FSA, and TEDS all require CBP to hold children together with family members. Settlement § VII.8.B.1. Under Defendants' interpretation, the permissible operational exceptions to maintaining family unity swallow the rule. *See* Defs.' Resp. at 12. CBP by its own admission, and particularly in the RGV sector, is *routinely* separating children from their family members. *See* Caanen Decl. ¶ 7; JCM Report 50, Jan. 30, 2023 [Doc No. 1326]; JCM Report 27, July 18, 2023 [Doc No. 1352]; JCM Report 6, 23, Sept. 15, 2023

[Doc. No. 1360]; JCM Report 6, Nov. 13, 2023 [Doc. No. 1372]; JCM Report 15-16, May 6, 2024 [Doc. No. 1412] ("Apr. 2024 JCM Rep."); Aug. 2024 JCM Rep. 12-14; Dec. 2024 JCM Rep. 5-6. Although the Settlement acknowledges certain situations in which family unity may not be operationally feasible, these exceptions do not give CBP authority to disregard the family unity directive across entire facilities or sectors.

Plaintiffs and the JCM have provided evidence that children at Donna were routinely separated from their same-gender parent and/or sibling for the duration of custody.[10] *See* Pls.' MTM at 9-11. These separations occurred even at times of low census, contradicting Defendants' explanation that such separations may be necessary to avoid overcrowding. *See, e.g.,* Aug. 2024 JCM Rep. 12-13; *cf.* Caanen Decl. ¶ 12. Moreover, Defendants fail to explain why holding families with different gendered children and caregivers together presents a safety risk at Donna but not in El Paso, beyond vague references to "demographics." *Compare* Caanen Decl. ¶¶ 7-9, *with* Stamper Decl. ¶ 6.

CBP's recorded reasons for separation are vague and do not satisfy the Settlement's requirements for an "articulable operational reason." Settlement §§ VII.8.B.1-3. CBP "typically" selects "'operationally infeasible' … as the reason for separation" in its system rather than the other available options, which include "family relationship in question; medical or other concerns; or security concern." Caanen Decl. ¶ 9. It therefore appears there are *no* specific safety, health, or security concerns to justify the majority of family separations in the RGV sector. *Id.* In addition, despite CBP's responsibility under the Settlement to "make and

---

[10] The Family Unity section of the Settlement twice defines family members with whom children should be housed together using a broad description including several levels of extended family. Settlement §§ VII.8.B.2-3 ("adult siblings, grandparents, cousins, aunts, uncles, great-aunts, or great-uncles").

record the reasons for holding [families] apart," Settlement § VII.8.B.3, CBP was repeatedly unable to provide these reasons to the JCM. Pls.' MTM at 9.

The Settlement expressly required CBP to plan for new facilities that would comply with the Settlement. Settlement § VII.1.5 ("The planning and construction of new CBP facilities in the RGV and El Paso Sectors have and will take into consideration that the facilities will be permanently or temporarily used as juvenile priority facilities, as outlined in this Agreement."). This includes provisions requiring that "[a]t juvenile priority facilities, CBP *shall* take a trauma-informed approach to class members in custody." Settlement § VII.3.D.7 (emphasis added). Having designated Donna to hold class members in compliance with the Settlement, CBP cannot now claim that the very design of the facility provides an operational reason to routinely hold children apart from their family members. Defs.' Resp. at 8; Settlement § VIII.1.5.

Next, apparent recent improvements in family visitation at Donna as of November 2024, *see* Defs.' Resp. at 13-14; Caanen Decl. ¶ 10—following numerous JCM reports finding noncompliance over the course of multiple years— does not provide Plaintiffs with the compliance they are due or remedy the serious harm to class members from CBP's violations over more than two years. *See Kelly*, 822 F.3d at 1098 (extension of decree suitably tailored to "return[] Plaintiffs to the position they would have occupied had [Defendants] not violated the agreement from its inception."). Understandably, Courts do not look kindly upon last-minute efforts to mitigate anticipated noncompliance. *Id.* at 1093, 1096-97 (belated corrective actions did not preclude a finding that defendant did not substantially comply with the settlement).

Defendants' declarants' general assertions that visitation is—or should be— available, does not refute the many declarations demonstrating that children had not seen or visited with family members for days at a time. Pls.' MTM at 11-13; *see also Flores v. Johnson*, 212 F.Supp.3d 864, 881-82 (C.D. Cal. 2015) ("The

mere existence of those policies tells the Court nothing about whether those policies are actually implemented, and the current record shows quite clearly that they were not."). Defendants do not offer any specific evidence to rebut Plaintiffs' and the JCM's specific examples other than suggesting they *may* have made "all reasonable efforts" to facilitate visitation without success. Defs.' Resp. at 14. Moreover, Defendants do not explain why daily visitation was infeasible despite "all reasonable efforts." To the contrary, Defendants' declarant asserts daily visitation *is* available at Donna *and* operationally feasible. Caanen Decl. ¶ 10. Plaintiffs have shown that CBP made little or no actual effort to ensure visitation through the information and evidence available to them, and Defendants provide no more than broad generalizations of facility policy and how things "should" run. *See* Caanen Decl. ¶ 10; Stamper Decl. ¶ 7.

Family unity is central to the goals of the Settlement, and Defendants' violations in this area undermine substantial compliance with the Settlement as a whole. Pls.' MTM at 9-11. Moreover, Defendants' unsupported suggestion that children somehow *prefer* to be separated from family in order to be with strangers of similar ages (*see* Caanen Decl. ¶ 9) disregards the detention context in which the family unity provision applies, flies in the face of years of evidence in JCM reports and class member declarations asserting the opposite, and is unsupported by research and a basic scientific understanding of child and adolescent development in circumstances of high or chronic stress and trauma. *See* Pls.' MTM at 9-11. Regardless, the Settlement requires CBP to prioritize family unity and does not permit CBP to unilaterally determine that family unity is unnecessary.

### 4. Children are routinely denied access to counsel in CBP custody.

The Settlement requires CBP to "provide a copy of a list of free legal services to all class members." Settlement § XI. Defendants' declarant states that class members can review a list of legal service providers during processing but are

not able to keep the list or other paper while in custody. Caanen Decl. ¶ 11. This policy—which apparently requires children to memorize a list of legal service organizations and numbers if they wish to contact counsel—plainly defeats the purpose of providing class members with a list of legal service providers that they can use to contact a lawyer while in custody. *See* Settlement § XI, Ex. 3. Defendants' purported explanation for this policy—that "paper often ends up getting lost or damaged" in the pods—in no way justifies depriving class members of their right to access counsel. Caanen Decl. ¶ 11.

Only those few children in families who are given a Credible Fear Interview get—by law—a four-hour window in which they can enter a phone booth with a list of legal service providers posted on the wall. *Id.* at ¶ 12; *see also* de Gramont Decl. ¶¶ 23-25 (DHS data indicates a miniscule percentage of individuals encountered by CBP receive credible fear interviews). This leaves most children without meaningful access to a list of legal service providers for the duration of their time in custody.

Defendants do not provide evidence to dispute JCM reports and Plaintiffs' evidence that phone access was actively denied and that class members were not informed of their right to use phones. *See* Dec. 2024 JCM Rep. 10; Pls. MTM at 13-14. Nor do Defendants address the JCM's recent reported observation of advisal posters with phone access crossed out. Dec. 2024 JCM Rep. 10. Additionally, the El Paso sector provides phone access through cell phones brought to each pod for a limited time rather than bringing children to phone booths. Stamper Decl. ¶¶ 9-10; Dec. 2024 JCM Rep. 11. These conditions do not permit private calls to an attorney and do not provide access to any legal service provider list posted in private phone booths.

### 5. CBP's inconsistent compliance with hygiene and warmth requirements suggest non-compliance with quality assurance mechanisms and self-monitoring requirements.

Plaintiffs do not dispute that Defendants generally comply with the temperature range requirements in the Settlement. However, CBP's failure to ensure that children receive additional warm clothing when they are cold undermines substantial compliance with this component of the Settlement. Pls.' MTM at 14-15. Simply stocking sweatshirts and beanies in a storeroom without ensuring that warm items are actually provided when needed does not amount to substantial compliance and serves no benefit to class members. *See* Caanen Decl. ¶ 6; Stamper Decl. ¶ 5; *see also*, Dec. 2024 JCM Rep. 7-8.

Defendants attempt to brush aside the lack of clean clothing in El Paso, claiming it was a "temporary, unintentional situation that CBP has since remedied." Defs.' Resp. at 10. However, Plaintiffs first notified Defendants of this problem more than year ago, in August 2023, and then again in November 2024 following monitoring visits. Kahn Decl. ¶ 8; Ex. 1C; Wolozin Decl. ¶ 12b. Forcing children to wear dirty clothing for more than a week, even despite requests for clean clothes, is a clear violation of the Settlement. *See e.g.*, Settlement § VII.7.6; Ex. 23, W.O.C.M. Decl. ¶ 8 [Doc. No. 1526-25]; Ex. 18, M.A.C.M. Decl. ¶ 11 [Doc. No. 1526-20]; Ex. 24, S.Y.A.R. Decl. ¶ 11 [Doc. No. 1526-26].

Defendants' inconsistent compliance with hygiene and warmth provisions raise questions about their substantial compliance with the quality assurance requirements in the Settlement designed to "monitor the contracts and recommend corrective action if deficiencies are noted" and "to ensure that all of the standards outlined in the contract statement of work are met." Settlement §§ VII.2.3-4; *see also Kelly*, 822 F.3d at 1096 (finding that defendant "failed to take all reasonable steps that would have allowed it to discover" and address settlement violations). Plaintiffs' evidence and the JCM's reports demonstrate that CBP's protocols are

not "sufficiently robust so that the monitoring terms of the JCM, Medical Advisor, and Medical Expert can be transferred to" CBP. Order for JCM Ext. at 2; *see also* Dec. 2024 JCM Rep. 24.

### 6. CBP has failed to provide children with required recreation and child-friendly activities.

Defendants argue the Settlement provisions regarding recreation and age-appropriate toys and activities have an "aspirational tone" and require CBP only to "make an effort." Defs.' Resp. at 15-16. This ignores the Settlement's provisions relating to prolonged detention over 72 hours, which unambiguously require CBP to "provide opportunities for recreation and other child-appropriate activities daily" and "make all reasonable efforts to provide class members with outdoor recreation." Settlement § VIII.7. Plaintiffs provided extensive evidence of children held over 72 hours without access to daily recreation. *See* Pls.' MTM at 16-17.

That Donna "implemented a schedule for 'daily outdoor activity' in early November 2024"—over two years after the effective date of the Settlement—in no way constitutes "all reasonable efforts" over the term of the Settlement, especially given the lack of evidence that children are in fact receiving daily outdoor recreation. Defs.' Resp. at 15-16; *Kelly*, 822 F.3d at 1096-97. Neither the El Paso nor the RGV sectors appear to provide opportunities for daily indoor recreation when outdoor recreation is not possible. Similarly, the provision of child-friendly toys and activities to tender-age *unaccompanied minors* does not fulfill CBP's obligation to provide daily child-appropriate activities to all class members held over 72 hours. *Cf.* Defs.' Resp. at 15-16.

### 7. CBP has failed to meet the Settlement's requirements to create a child-friendly environment and implement a caregiver program.

The Caregiver program "is seen as the linchpin to providing a child-friendly, safe and sanitary environment" for class members. Dec. 2024 JCM Rep. 3; *see also*

Caanen Decl. ¶ 19. Under the Settlement, caregivers are the frontline staff designated to meet the needs of children in custody. Settlement § VII.9.A.; *see also* Campos Decl. ¶ 19; Dec. 2024 JCM Rep. 7-8. Substantial compliance with the whole of the Settlement therefore relies on effective implementation of the Caregiver program.

While CBP has complied with certain components of the Caregiver program, namely the number and deployment of caregivers, Defendants do nothing to rebut evidence from the JCM and Plaintiffs' declarations that the Caregiver program has made little progress and that children do not interact with caregivers, have access to few activities and little or no recreation time, are unaware of their rights, and feel confused about what is happening to them. *See* Pls.' MTM at 15-19; *see also* Dec. 2024 JCM Rep. 7-11, 24-25. Defendants merely provide information regarding existing policies for the Caregiver program without actual evidence of its successful operation. *See* Campos Decl. ¶¶ 18-21; *see also Flores v. Johnson*, 212 F.Supp.3d at 881-82.

In response to JCM recommendations stemming from these deficiencies, OCMO plans to make improvements to the implementation of the program and efforts to create a child-friendly environment, including plans to "identify an approved list of activities and toys for children of various ages at JPFs." Campos Decl. ¶ 21. However, all the available evidence shows that this work is aspirational and incomplete.

**8. Defendants admit CBP has not implemented self-monitoring protocols approved by the JCM as required by the Settlement.**

As Defendants and the JCM note, CBP has improved its procedures for Enhanced Medical Support outlined in the Settlement. However, as Defendants concede, CBP has not yet substantially complied with requirements to establish and implement self-monitoring protocols to ensure compliance with the enhanced

medical support components of the Settlement. Defs.' Resp. at 19-20. In fact, OCMO estimates it will take at least another six months to have all monitoring components in place. Campos Decl. ¶¶ 16-17, 23.

Defendants also do not claim the areas of non-compliance identified in the JCM's December 2024 Final Report, have been addressed. Defs.' Resp. at 19-20 ("welcoming" JCM recommendations and promising to address them *in the future*). At this point, the JCM has not approved CBP's self-monitoring protocols and therefore CBP has not yet substantially complied with these components of the Settlement.

### C. DEFENDANTS' NONCOMPLIANCE IS AN UNANTICIPATED CHANGE IN CIRCUMSTANCES WHICH WARRANTS MODIFICATION UNDER RULE 60(B)

Defendants suggest that Rule 60(b) modification is unwarranted because the Settlement acknowledges the possibility of limited noncompliance. Defs.' Resp. at 20. But the Settlement provides only that there may be situations "outside Defendant CBP's control, where CBP may be able to only partially comply with certain provisions of the Agreement, or limited situations that cause minor 'non-compliance' or delays in compliance by CBP." Settlement § VI.1. Examples "include, for instance, one malfunctioning toilet or sink in a particular facility … or a computer system outage that is rectified within several hours." *Id.* In stark contrast to these minor issues the Parties expected to be "rectified within [] hours," Plaintiffs and the JCM have identified ongoing noncompliance in multiple essential areas of the Settlement. *Id.* This noncompliance has occurred even when the census was low and there was no "surge situation." *Id.* at § V.1; *see, e.g.,* Apr. 2024 JCM Rep. 16.

That the Parties planned for the possibility of disputes over compliance does not mean Plaintiffs anticipated the serious, ongoing lack of compliance evidenced in Plaintiffs' Motion. *Cf.* Defs.' Resp. at 20. The purpose of a consent decree is to

permit continued judicial enforcement of the decree. *See, e.g., Kelly*, 822 F.3d at 1095. Plaintiffs would not have spent years negotiating this Settlement if they expected CBP to pick and choose which provisions it would comply with. *See Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, 404 F.3d 821, 828-29 (4th Cir. 2005).

### D. RELIEF FROM THE TERMINATION PROVISION IS SUITABLY TAILORED AND IN THE PUBLIC INTEREST

Rule 60(b) is an appropriate mechanism to provide Plaintiffs "relief from the [] Termination Provision by extending the term of the Agreement." *David C.*, 242 F.3d at 1211. Such relief is appropriate because the termination provision has become inequitable and contrary to the public interest given Defendants' failure to substantially comply over a significant period of time. *See* Fed. R. Civ. P. 60(b)(5); *Labor/Cmty. Strategy Ctr.*, 564 F.3d at 1120. Defendants argue that termination as planned is not detrimental to the public interest because Plaintiffs can continue to enforce the FSA. Defs.' Resp. at 21. This argument ignores the reason the Settlement became necessary in the first place—persistent CBP noncompliance with the FSA despite years of litigation and multiple court orders. The specificity and monitoring provisions of the Settlement remain essential to protecting children's safety and ensuring safe and sanitary conditions.

CBP's multiple serious and ongoing violations of the Settlement undermine the Settlement's overall purpose of ensuring a safe and sanitary environment and are inconsistent with substantial compliance. *Rouser*, 825 F.3d at 1081-82; *Jeff D.*, 643 F.3d at 284, 288. These violations—including Defendants' belated disclosure of serious data errors—also provide more than sufficient basis to "doubt[] [CBP's] compliance in other respects" and create "reasonabl[e] concern[]" that CBP's failures to comply "affected its ability to comply with the settlement agreement's other requirements." *Kelly*, 822 F.3d at 1098.

Modification of the termination clause would merely provide Plaintiffs with "the relief to which Plaintiffs were originally entitled under the agreement" by ensuring class members have 2.5 years of compliance. *Kelly*, 822 F.3d at 1097; *see also David C.*, 242 F.3d at 1211-12. Given Defendants' ongoing obligation to comply with the FSA and CBP's representations that it has incorporated the Settlement into its internal policies, complying with the Settlement to fruition imposes minimal additional burden.

Defendants admit they require *at least* an additional six months to implement medical monitoring protocols and improvements and oversight for the Caregiver program. Defs.' Resp. at 22. The Settlement and the Courts' orders contemplate a period of transition once CBP has satisfied the Settlement provision to allow the JCMs to monitor implementation. Because Defendants have been in violation throughout the full term of the Settlement and because they themselves admit a need for significant additional time to reach substantial compliance with the Settlement, modifying the termination clause is appropriate. *Kelly*, 822 F.3d at 1098; *David C.*, 242 F.3d at 1211-12.

Defendants' suggestion that the Court extend the term of the JCM without extending the term of the Settlement would not accomplish the Settlement's monitoring transition goals. Without extending the Settlement, the JCM would merely monitor compliance with the FSA, without the additional bargained-for specificity and authority of the Settlement. For the JCM to effectively monitor substantial compliance of the areas where Defendants have not yet complied and facilitate the transition of oversight to CBP, as envisioned in the Settlement and the Court's orders, the entire Settlement must remain in effect.

## III.   CONCLUSION

For the foregoing reasons, the Court should extend the 2022 CBP Settlement in its entirety for an additional 2.5 years, including an additional 6-month term of the JCM, with optional extensions as necessary to ensure

21

compliance. In the alternative, Plaintiffs request the Court extend the

Settlement and JCM term as it deems appropriate.

Dated: January 14, 2025         CENTER FOR HUMAN RIGHTS AND
                                CONSTITUTIONAL LAW
                                Carlos R. Holguín
                                Sarah Kahn

                                NATIONAL CENTER FOR YOUTH LAW
                                Mishan Wroe
                                Rebecca Wolozin
                                Diane de Gramont

                                CHILDREN'S RIGHTS
                                Leecia Welch
                                Eleanor Roberts


                                _/s/ Mishan Wroe_____

                                Mishan Wroe

                                *One of the Attorneys for Plaintiffs*

## **CERTIFICATE OF COMPLIANCE**

I, the undersigned counsel of record for Plaintiffs, certify that this brief contains 6,558 words, which complies with the word limit of Local Rule 11-6.1.


Dated:  January 14, 2025

                                                    */s/ Mishan Wroe*
                                                    Mishan Wroe