ANDREA SHERIDAN ORDIN (SBN 38235)
STRUMWASSER & WOOCHER LLP
1250 Sixth Street, Suite 205
Santa Monica, California 90401
Telephone: (310) 576-1233
Facsimile: (310) 319-0156
E-mail: aordin@strumwooch.com

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MERRICK B. GARLAND, Attorney General of the United States, *et al.*,<br><br>Defendants. | CASE NO. CV 85-4544-DMG (AGRx)<br><br>**NOTICE OF FILING OF STATUS REPORT BY JUVENILE CARE MONITOR ANDREA S. ORDIN** |

1   In accordance with the Court's Orders, the Juvenile Care Monitor has
2   continued to work to ensure an effective transition of monitoring functions since
3   the completion of the JCM's term on December 27, 2024. [Docs. ## 1245, 1469-1,
4   1473.] Andrea Sheridan Ordin submits the attached Status Report.

6   DATED:   January 21, 2025         Respectfully submitted,

                                      Andrea Sheridan Ordin
                                      STRUMWASSER & WOOCHER LLP


                                      By    */s/ Andrea Sheridan Ordin*
                                            Andrea Sheridan Ordin

                                            *Juvenile Care Monitor*

# STATUS REPORT FROM JUVENILE CARE MONITOR
# JANUARY 21, 2025

**Submitted by:**
**Andrea Sheridan Ordin, Juvenile Care Monitor**
**Dr. Nancy Ewen Wang, Medical Advisor**
**Dr. Paul H. Wise Medical Expert**

**I. SUMMARY**

On December 13, 2024, the Juvenile Care Monitor (JCM) presented its Final Report including the evaluation and observations of the JCM, Medical Advisor, and Medical Expert, charged with conducting independent assessments of custodial conditions and protocols for treatment of children held in U.S. Customs and Border Protection's (CPB) facilities in the Rio Grande Valley (RGV) and El Paso sectors. The JCM's term ended on December 27, 2024. [Doc. #1469-1, 1473.]

The *Flores* settlement [Doc. # 1254-1] filed May 21, 2022, provides:

> 13. At the completion of the Juvenile Care Monitor's term, CBP shall assume responsibility for monitoring compliance with the terms of this Agreement, including monitoring whether there is overcrowding, as defined in paragraph 4, above. For a period of thirty days after the Juvenile Care Monitor's term ends, the Juvenile Care Monitor will work with the CBP Juvenile Coordinator to ensure an effective transition of monitoring functions, and will be compensated for this work.

The purpose of this document is to report to the Court and parties on the JCM's work during the 30-day transition period, and to briefly summarize its conclusions on the efficacy of the protocols and implementation of CBP's current monitoring systems, as more fully set out in the Final Report of the JCM.

**II. DISCUSSION**

While CBP is a law enforcement agency that has an extensive array of monitoring systems for individuals in its custody, this document focuses exclusively on the status of those systems that deal with the special custodial needs of children. These special systems fall into two general monitoring categories: (A) monitoring general custodial conditions, amenities, and procedures; and (B) monitoring medical systems.

> **A. Monitoring General Custodial Conditions, Amenities, and Procedures for Children in Custody**

CBP monitoring systems must ensure that basic custodial conditions and essential amenities are consistently provided to juveniles in custody. These basic requirements include adequate nutrition and water, temperature regulation, garments, sleep conditions, and hygiene and sanitation. In addition, the special requirements of caring for children in CBP facilities, including the routine housing of families together and appropriate services for young, unaccompanied children remain essential components of custodial care for children in CBP facilities.

As set forth in the JCM's Final Report, CBP primarily relies on its Juvenile Coordinator Division (JCD) to assess conditions for children in custody. The JCM has reviewed the Juvenile Coordinator Division inspection protocols and has observed this unit's inspection visits to CBP facilities in the El Paso and Rio Grande Valley sectors on several occasions. The JCM has noted that these visits are thorough and conducted by committed and skilled personnel.

Despite the critical contributions of the JCD, as stated in the JCM's Final Report, questions remain about whether the JCD can currently provide the required monitoring capabilities. The primary concern is the relative infrequency with which the JCD can visit facilities, facilities which must operate in a highly dynamic border environment. For example, it is expected that the JCD will conduct only three visits to combined Juvenile Priority Facilities in the El Paso and RGV sectors during 2025. A more appropriate monitoring schedule would require at a minimum one visit to each of the Juvenile Priority Facilities per quarter. In addition, the JCD does not have the capability to conduct urgent monitoring visits in response to a rapidly evolving custodial burden in a sector experiencing a surge in apprehensions or identified inadequacies in service provision or safety.

**Summary Assessment:**

Without a monitoring capability that can conduct more frequent visits and respond in a timely manner to emerging concerns in a particular sector or facility, it remains unclear how general conditions, amenities, and procedures will be monitored appropriately. JCD and the JCM have scheduled an additional meeting regarding the efficacy of its protocols and ability to monitor in the week of January 20, 2025.

### B. Monitoring Medical Care and Caregiver Program for Children in Custody

As set out more fully in the JCM's Final Report, CBP medical monitoring systems must ensure that children do not suffer preventable medical harm or death while in custody. This has required that CBP develop medical capabilities that address the special screening, care, and referral requirements for large numbers of children, most of whom have been apprehended after long and difficult journeys to the border. Accordingly, CBP has implemented a series of enhancements in its medical capabilities and procedures addressing the special medical needs of children in custody. These enhancements and ongoing challenges have been discussed in detail in prior JCM reports.

Responsibility for managing and monitoring the CBP medical system lies with the Office of the Chief Medical Officer (OCMO). In addition, OCMO has responsibility for the conduct and monitoring of a linchpin of the *Flores* Settlement, provision of Caregivers,

3

the system of contracted employees who provide basic care for young, unaccompanied children (UCs) as well as a variety of support services for older UCs and children in families. Prior JCM reports have underscored the importance of the Caregiver program in ensuring the well-being of children as well as in unburdening of Border Patrol agents for the direct care of young children while in CBP custody. JCM reports have also described that the variation in the role and performance of Caregivers in visited CBP facilities has continued.

**Summary Assessment:**

As discussed more completely in the JCM's Final Report, the JCM cannot adequately assess the functional capabilities of the CBP medical and Caregiver monitoring systems. Many of the organizational and technical requirements of a robust medical monitoring system have been developed and a variety are already being piloted in CBP facilities. However, many of the most important elements of the medical and Caregiver monitoring systems are still being planned, have only recently been implemented, or have had only minimal operational experience in actual facility settings. Consequently, the JCM has not had sufficient empirical substrate for making an assessment of CBP's capacity to monitor its medical system for children in custody. CBP and the JCM have scheduled an additional meeting regarding the efficacy of its protocols and ability to monitor in the week of January 20, 2025.

### III. UPDATE ON ACCURACY OF *FLORES* DATA PROVIDED FOR JUVENILES IN CUSTODY FOR GREATER THAN 72 HOURS

As noted in the JCM's Final Report [Doc. # 1522], "analysis of the provided monthly data, however, ha[s] raised questions regarding the definitions used to produce the monthly TIC time reports." The Final Report [Doc. # 1522] specifically noted:

> Of special concern are the number of children in families who are reported to have TIC time greater than 72 hours. Estimates of the portion of apprehended children in families who are reported to have TIC times greater than 72 hours appear to be lower than expected, given the reported number of family apprehensions over the same time period. The JCM has requested clarification of the definitions used in tabulating the monthly reports.

Questions began in summer and fall of 2024 during visits to El Paso and RGV sectors. During those visits, the interviews with both families in custody and with CBP facility leadership indicated that the majority of families had been in custody for longer than 72 hours.

4

In response, we did a rough analysis using the family unit encounter data from the CBP data website. This website provides data on the number of individuals in family units but not figures specifically for juveniles in families. We therefore generated a conservative estimate of the number of juveniles in families by considering that half of the individuals in family units were juveniles. When we compared the provided monthly *Flores* data with the estimates of juveniles in families derived from the CBP website, we became more confident that the monthly *Flores* reports were significantly underrepresenting the number of children in families with TIC times greater than 72 hours.

During the summer and fall of 2024, the JCM exchanged communications with CBP in order to ensure accuracy of the provided data. In December 2024, CBP provided the JCM with revised *Flores* reports for the months of October, November, and December 2024.

Our analysis of the revised data sets suggests that the figures now seem more plausible as the portion of juveniles in families with TIC times greater than 72 is significantly higher in these revised excel data sets.

While the corrections in the revised data sets are appreciated, further explanation of the method and definitions used for the construction of these data sets is warranted. Our examination of the revised data sets suggests that while the number of children in families with TIC times longer than 72 hours now appears plausible, some questions persist. For example, the estimated percentage of juveniles in families with TIC times greater than 72 hours in RGV was more than double that for El Paso. (Please see Table below). While this difference may be real, it does deserve continued review.

**Table:** Percent of estimated juveniles in families with TIC times greater than 72 hours by sector

|  | October | November | December |
|---|---|---|---|
| **El Paso** | 34.1% | 34.2% | 39.2% |
| **RGV** | 74.9% | 69.6% | 53.1% |

We have also examined the reporting of elevated TIC times for unaccompanied children (UCs). JCM observations during site visits and prior JCM reports have suggested that it is comparatively unusual for UCs to have TIC times greater than 72 hours. As in the past, monthly *Flores* reports have included some data on UCs with TIC times greater than 72 hours. However, the completeness of these figures for UCs also requires review.

In the past, the JCM was provided with separate monthly reports of all UCs transferred to the Office of Refugee Resettlement, DHHS. However, the provision of these reports to the JCM was terminated in July 2024. Consequently, it has been difficult for the JCM to determine the precise number of UCs with TIC times greater than 72 hours. The recently revised data sets provided to the JCM appear to include a more complete listing of UCs in CBP custody for greater than 72 hours. Nevertheless, the reporting of UC TIC times should be reviewed as part of the larger effort to ensure the completeness and accuracy of the monthly *Flores* reports.

In sum, CBP has taken important steps to rectify inaccuracies in the monthly *Flores* reports. However, continued clarification of the definitions and methods used to generate these reports would help provide confidence that these reports represent a complete and accurate accounting of in the number of juveniles who have been in CBP custody for greater than 72 hours.

## IV. CONCLUSION

The JCM appreciates the opportunity to assist in evaluating and observing the conditions for accompanied and unaccompanied minors at the border. We look forward to appearing at the Court's hearing, presently scheduled for January 24, 2025.

# CERTIFICATE OF SERVICE

Case No. CV 85-4544- DMG (AGRx)

I am a citizen of the United States. My business address is 250 Sixth Street, Suite 205, Santa Monica, California 90401 . I am over the age of 18 years, and not a party to the within action.

I hereby certify that on January 21, 2025, I electronically filed the following documents with the Clerk of the Court for the United States District Court, Central District of California by using the CM/ECF system:

**NOTICE OF FILING OF STATUS REPORT BY JUVENILE CARE MONITOR ANDREA S. ORDIN**

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the United States the foregoing is true and correct. Executed on January 21, 2025, at Los Angeles, California.

Jeff Thomson