BRETT A. SHUMATE
Acting Assistant Attorney General
Civil Division
AUGUST FLENTJE
Deputy Director
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director
SARAH B. FABIAN
CHRISTINA PARASCANDOLA
KATELYN MASETTA-ALVAREZ
Senior Litigation Counsel
United States Department of Justice
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
202-514-0120
Katelyn.Masetta.Alvarez@usdoj.gov

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JENNY LISETTE FLORES; *et al.*, | Case No. CV 85-4544 |
| Plaintiffs, | **DEFENDANTS' SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY 2022 CBP SETTLEMENT** |
| v. | |
| JAMES MCHENRY, Acting Attorney General of the United States,[1]; *et al.*, | Hearing Date: January 24, 2025<br>Time: 9:30 AM |
| Defendants. | |

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Acting Attorney General James R. McHenry is substituted for former Attorney General Merrick Garland.

I. **INTRODUCTION**

Defendants file this surreply to address an argument raised by Plaintiffs for the first time in their January 14, 2025, Reply to Defendants' Opposition To Motion to Modify 2022 CBP Settlement (ECF No. 1536). Specifically, Plaintiffs incorrectly contend that discrepancies in some of the data that U.S. Customs and Border Protection (CBP) provided to Plaintiffs and to the Juvenile Care Monitor (JCM) bears on the resolution of the instant motion. *Id*. at 11-14. Defendants are working diligently to resolve the issue—including communicating regularly with the JCM and Plaintiffs, and, on December 20, 2024, and January 17, 2025, providing Plaintiffs and the JCM corrected data. But Defendants dispute that this data issue has any bearing on the motion that is currently before the Court. Accordingly, the Court should disregard Plaintiffs' arguments regarding the data issue and deny Plaintiffs' motion.

II. **BACKGROUND**

Paragraph 28A of the *Flores* Settlement Agreement (FSA) requires that Defendants "maintain an up-to-date record of all minors who are placed in proceedings and remain in INS custody for longer than 72 hours." Information to be maintained includes "(1) biographical information such as each minor's name, date of birth, and country of birth, (2) date placed in INS custody, (3) each date placed, removed or released, (4) to whom and where placed, transferred, removed or

1

released, (5) immigration status, and (6) hearing dates." *Id.* Paragraph 29 of the FSA requires that this information be provided to Plaintiffs every six months, a requirement that has been amended to require monthly reporting by subsequent Court orders. The data provided is backward-looking (in other words, data provided in January reflects minors who were in custody in December).

      The requirement for Defendants to provide data to Plaintiffs regarding class members in government custody for more than 72-hours stems from the FSA, *see* FSA ¶¶ 28 and 29, not from the 2022 CBP Settlement (Settlement). In 2020, after Plaintiffs raised some concerns with the form of data being provided pursuant to Paragraphs 28 and 29, the parties met and conferred and agreed on an amended set of reports that would meet the requirements of Paragraph 28. *See* Joint Status Reports, ECF Nos. 820, 898, 930, 1036. Based on those discussions, on or around June and July 2020, the CBP STAT Division (the Division of CBP that runs reports of, and retrieves data from, CBP's electronic systems of records, including data requested as part of litigation, requests from Congress or other outside entities, and data requested for internal consumption) began providing additional data sets including: (1) the date on which CBP apprehended or encountered certain minors identified on data spreadsheets provided by U.S. Immigration and Customs Enforcement (ICE); (2) the date on which CBP apprehended or encountered certain minors identified on data spreadsheets provided by U.S. Department of Health and

Human Services (HHS); and (3) identifying information about certain minors who remained in CBP custody for more than 72 hours who were not transferred to HHS or ICE and, therefore, were not captured in the data described above. Declaration of Latoya Morgan (Morgan Decl.), attached hereto, at ¶¶ 2, 4–6. For this third set of data, CBP STAT "pulled data from the CBP system of record using the following parameters: (1) encounter date, (2) children who are under the age of eighteen (18) years old, regardless of demographic, (3) excluding minors who are recorded in CBP's systems of record as having been transferred to ICE/Enforcement and Removal Operations (ERO) and the HHS/Office of Refugee Resettlement (ORR), (4) the time that the minor remained in CBP custody, (5) applicable across CBP's Office of Field Operations (OFO) and U.S. Border Patrol (USBP), and (6) applied on a nationwide basis." *Id.* ¶ 6.

It is undisputed that the JCM received the same monthly data that was sent to Plaintiffs pursuant to Paragraphs 28 and 29 of the FSA—a practice that began for all Defendants when the JCM was the *Flores* Special Master/Independent Monitor and continued just as to CBP when she became the JCM under the Settlement. That requirement arose from the FSA, not the CBP Settlement

Separate and apart from this periodic backwards-looking data reporting, the CBP Settlement requires CBP to provide the JCM data at her request, including "data regarding the time that class members spend in CBP custody," for the specific

3

purpose of assessing overcrowding. Settlement § IX.5.i. Defendants have provided the JCM with such data upon request. Facility visits required by both agreements also allow the JCM to assess overcrowding. The December JCM Report notes that based on observations she made when visiting CBP facilities in the El Paso and RGV Sectors to assess conditions and overcrowding first-hand, the JCM identified issues with the monthly CBP data that had been provided to her under FSA Paragraph 28. *Id.* at 6 and 24-25.  The JCM explained that the Paragraph 28 data "allow[s] the JCM to assess custodial trends and the emergence of TIC challenges within any given sector." ECF No. 1522 at 24.

After the JCM raised questions about the monthly data, on or around December 2024, CBP STAT reviewed the CBP data pull that it was conducting to determine whether it was possible that it was not pulling all of the data regarding minors who were in CBP custody for more than 72 hours and who were not transferred to HHS or ICE. Morgan Decl. ¶ 7. While conducting that review, CBP STAT "learned from USBP that certain children are recorded in the USBP system of record as being booked out to ICE custody even if they were not physically transferred to ICE custody. These children, therefore, were not captured in the data" provided to CBP STAT by ICE, and at the same time were being excluded from the CBP data being pulled separately by CBP STAT because of the manner in which CBP STAT was conducting its data pull. *Id*. CBP STAT then reconfigured its data

pull so that it would no longer exclude children transferred to HHS and ICE ERO. *Id.* This change also addressed the fact that the HHS reports being provided under Paragraphs 28 and 29 changed after July 2024, when the FSA was partially terminated as to HHS, so that they no longer included all children transferred to ORR custody. Between approximately July 2024 and December 2024, CBP STAT was not aware that the HHS reports had been changed so that the parameters of the three separate CBP STAT data pulls no longer collectively reflected all children in CBP custody.

CBP STAT has now changed its parameters for its monthly reporting to include all minors, including both accompanied and unaccompanied children, who remained in CBP custody for more than 72 hours, regardless of their transfer location, for all USBP Sectors and OFO Field Offices nationwide. Morgan Decl. ¶ 9. CBP STAT has reproduced the monthly data reporting for all months of FY2024 using the updated parameters, and those updated spreadsheets were provided to Plaintiffs and the JCM on January 17, 2025. *Id.* ¶¶ 10-11. CBP STAT also re-pulled previously pulled data for October 2024 and November 2024 using the updated parameters and those updated spreadsheets were provided to Plaintiffs on December 20, 2024. *Id.* CBP STAT is using these updated parameters going forward, starting with the reporting for November 2024. *Id.* ¶ 11.

## III. ARGUMENT

### A. The Recently-Identified Issues with CBP's Monthly Data Production Have No Bearing on the Merits of Plaintiffs' Motion to Modify the Settlement.

Plaintiffs incorrectly contend that issues with the 72 hour stay data compiled and provided under FSA ¶¶ 28 and 29 constitute a violation of the Settlement. The only requirement of the Settlement is that the JCM be provided data the JCM requests to assist her in monitoring overcrowding. Settlement § IX.5.i. While the December JCM Report did note that the JCM had identified some data discrepancies based on in-person observations, the Report does not identify any ways in which the identified data-reporting issues affected the JCM's ability to assess overcrowding. The Report notes that the JCM was aware of some long custody times, ECF No. 1522 at 7, and discusses how time-in-custody (TIC) *may* affect overcrowding, *id.* at 23-25. But the Report does not state any concerns that any data issues related to TIC in these monthly reports affected her ability to evaluate overcrowding. The JCM also does not find, nor is there any basis to conclude, that longer custody times in and of themselves are a violation of the Settlement. Likewise, the JCM does not identify in her Report any violations of the Settlement stemming from longer custody times.

In addressing overcrowding, the Report relies on the JCM's own observations to state that "[t]hroughout September, October, and November, both Donna and El Paso EHF each had a markedly low census." *Id.* at 7. The JCM makes clear that in

assessing overcrowding, she "has generally employed the operational definition of overcrowding as a census that surpasses the assigned maximum capacity of the facility or holding location." *Id.* at 22-23. She also "has always supplemented the maximum facility holding capacity definition of overcrowding with inspections of the actual custodial conditions present in CBP facilities." *Id.* at 23. Thus, nothing in the Report's discussion of overcrowding gives reason to find that issues with the backwards-looking monthly data compiled and provided under FSA ¶¶ 28 and 29 affected the JCM's real-time ability to monitor overcrowding using real time census numbers and personal observations as she stated was her process. Accordingly, there is no basis to find that issues in CBP's Paragraph 28 data constituted any violation of the 2022 Settlement.

In addition to conflating the requirements of the FSA and the 2022 Settlement, Plaintiffs also argue that "Defendants' errors and untimely corrections naturally create reason to 'doubt[] [CBP's] compliance in other respects,' such as the integrity of the other data they have been providing throughout the term of the Settlement." ECF No. 1536 at 14 (quoting *Kelly v. Wengler*, 822 F.3d 1085, 1098 (9th Cir. 2016) (internal citation omitted)). This assertion is vague, unsupported, and unnecessarily inflammatory. It also misunderstands the issue with the Paragraph 28 data, and ignores the reality of how CBP uses TIC data on a day-to-day basis.

As the JCM discusses in the December JCM Report:

7

> CBP currently has real-time ability to accurately monitor overcrowding in its facilities. CBP monitors the TIC times of all populations in custody. USBP coordinates with HHS/ORR on UCs in CBP custody for over 48 hours with no placement scheduled to ensure that the UCs can be transferred out of USBP custody within 72 hours. USBP also monitors family units who have been in custody for 120 hours or more, broken down by sector, including monitoring whether a family unit is on an active manifest to be transferred out of custody. USBP also receives a report of noncitizens who have spent 240 hours or more in custody, broken down by sector and demographic. These reports help inform decisions regarding whether alternative processing pathways should be used to expedite the release/reparation of family units in custody.

ECF No. 1522 at 24. This real time data is accurate—as the JCM acknowledges—and useful for CBP (and the JCM or any other individual(s) tasked with monitoring CBP facilities) to keep track of current census and TIC information for individuals in custody and make real time operational decisions.

      Conversely, Paragraph 28 data is a set of backward-looking data that the parties agreed in 1997 should be provided for monitoring purposes under the FSA. CBP does not rely on the compilation of Paragraph 28 data that is provided to Plaintiffs under Paragraph 29 for any current operational purposes. As discussed above, despite the changing form of data recordation and systems of record throughout the years, Defendants have made ongoing efforts to work with Plaintiffs to provide the data identified in Paragraph 28 as originally agreed by the parties. The issues with this data resulted from good-faith, evolving efforts to pull and provide a

set of data that were identified as necessary for monitoring in 1997. It is therefore inaccurate to suggest that these issues have any bearing on the integrity of CBP's data as a whole.

## IV.  CONCLUSION

For the foregoing reasons, the Court should decline to consider Plaintiffs' arguments about the recently-identified issues with CBP's Paragraph 28 data in conjunction with the instant motion, and should deny Plaintiffs' motion.

Dated: January 23, 2025

Respectfully submitted,

BRETT A. SHUMATE
Acting Assistant Attorney General
Civil Division

AUGUST FLENTJE
Deputy Director
Office of Immigration Litigation

WILLIAM C. SILVIS
Assistant Director

SARAH B. FABIAN
CHRISTINA PARASCANDOLA
Senior Litigation Counsel

/s/ *Katelyn Masetta-Alvarez*
KATELYN MASETTA-ALVAREZ
Senior Litigation Counsel
United States Department of Justice
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044

202-514-0120
Katelyn.Masetta.Alvarez@usdoj.gov

*Attorneys for Defendants*

CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2025, I served the foregoing pleading on all counsel of record by means of the District Clerk's CM/ECF electronic filing system.

/s/ *Katelyn Masetta-Alvarez*
KATELYN MASETTA-ALVAREZ
Senior Litigation Counsel
U.S. Department of Justice
Office of Immigration Litigation

Attorney for Defendants