1                    UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3

4  JENNY L. FLORES, et al.,        ) Case No. LA CV 85-04544-DMG-
                                    )                      (AGRx)
5           Plaintiffs,            )
                                    ) Los Angeles, California
6  vs.                             )
                                    ) Friday, January 24, 2025
7  MERRICK GARLAND, et al.,         )
                                    ) (9:33 a.m. to 9:57 a.m.)
8           Defendants.            )
_____)
9

10   TRANSCRIPT OF MOTION FOR ORDER FOR MODIFICATION OF THE 2022
    CBP SETTLEMENT FILED BY PLAINTIFFS JENNY L. FLORES [1526]
11              BEFORE THE HONORABLE DOLLY M. GEE
              CHIEF UNITED STATES DISTRICT JUDGE
12

13

    Appearances:                    See next page.
14
    Court Reporter:                 Recorded; CourtSmart
15
    Courtroom Deputy:               Derek Davis
16
    Transcribed by:                 C. Okonta
17                                   Echo Reporting, Inc.
                                     9711 Cactus Street
18                                   Suite B
                                     Lakeside, CA 92040
19                                   (858) 453-7590

20

21

22

23

24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.

2

1  APPEARANCES:

2  For the Plaintiffs:        MISHAN R. WROE, ESQ.
                              National Center for Youth Law
3                             1212 Broadway
                              Suite 600
4                             Oakland, California 94612
                              (510) 920-3512
5
                              LEECIA WELCH, ESQ.
6                             Leecia Welch
                              88 Pine Street
7                             Suite 800
                              New York City, New York 10005
8                             (510) 835-8098

9  For the Defendants:        JOSHUA C. MCCROSKEY, ESQ.
                              SARAH B. FABIAN, ESQ.
10                            CHRISTINA PARASCANDOLA, ESQ.
                              United States Department of
11                               Justice
                              Office of Immigration
12                               Litigation - District Court
                                 Section
13                            Post Office Box 868
                              Ben Franklin Station
14                            Washington, DC 20044
                              (202) 305-1540
15

16

17

18

19

20

21

22

23

24

25

3

1    <u>Los Angeles, California; Friday, January 24, 2025 9:33 AM</u>

2                              --o0o--

3                         (Call to Order)

4         THE CLERK:  Calling item number one, Los Angeles

5    civil 85-4544-DMG, Jenny L. Flores, et al versus Merrick

6    Garland, et al.

7         Counsel, please state your appearances, starting

8    with the Plaintiffs.

9         MS. WROE:  Good morning, your Honor.  Mishan Wroe

10   for the Plaintiffs.

11        MS. WELCH (via Zoom):  Good morning, your Honor.

12   Leecia Welch for the Plaintiffs.

13        MR. MCCROSKEY:  Good morning, your Honor.  Joshua

14   McCroskey for the United States.

15        MS. FABIAN:  Good morning, your Honor.  Sarah

16   Fabian for the Government.

17        MS. PARASCANDOLA:  Good morning, your Honor.

18   Christina Parascandola for the United States.

19        THE COURT:  Good morning, everyone.

20        Is Ms. Ordin on the Zoom?

21        MS. ORDIN:  This is Andrea Ordin, juvenile care

22   monitor here in court, over this side.

23        THE COURT:  All right.  Here in court --

24        MS. ORDIN:  Good morning, your Honor.

25        THE COURT:  -- very good.  And Doctor Wise as

4

1  well, welcome.

2          All right.  Thank you, everyone.  I presume that

3  both sides have had a chance to review the Court's

4  tentative.

5          MS. WROE:  Yes, your Honor.

6          THE COURT:  All right.

7          MR. MCCROSKEY:  Yes, your Honor.

8          THE COURT:  Who would like to address the

9  tentative?

10          MR. MCCROSKEY:  I'm happy to.  Yes, your Honor.

11          THE COURT:  All right.  Mr. McCroskey, would you

12  stand at the lectern, please?

13          MR. MCCROSKEY:  Yes, your Honor.

14          Your Honor, at the outset, I want to make clear

15  that the Government is not contesting that this Court has

16  had jurisdiction to enforce allegations of a breach of

17  contract relating to the 2022 settlement.  The difference is

18  where the Court's jurisdiction comes from.  The jurisdiction

19  to enforce the 2022 settlement does not come from the

20  Court's power to vindicate its own authority and enforce its

21  orders.  The power comes from the fact that the underlying

22  case is still ongoing, and therefore the Court has ancillary

23  jurisdiction to hear factually related matters.

24          Rule 60 applies to judgments, orders, and

25  proceedings.  And it is -- while the Kokkonen case is

5

1   instructive, it was not fundamentally a Rule 60 case arising

2   in this context, as your Honor noted in the tentative

3   ruling. However, the differences actually illustrate why

4   the Court here did not make the 2022 settlement part of its

5   order. In <u>Kokkonen</u>, the -- retaining jurisdiction, the

6   Court noted, would have the same effect as incorporating the

7   agreement into an order, and that's true in the context of

8   dismissing a case. Usually, after a federal court dismisses

9   a case, it will only have ancillary jurisdiction over a

10  couple of things, such as attorney's fees and vindicating

11  the authority and -- by enforcing its orders.

12          Treating a settlement in that context as a court

13  order is the main -- perhaps the only way for the Court to

14  still have jurisdiction to enforce it after otherwise

15  dismissing the case. If a court therefore is dismissing a

16  case but says it is retaining jurisdiction to enforce the

17  settlement, it is clear to everyone involved that the Court

18  is treating the settlement like an order or a judgment.

19          Here, the situation is different. Because the

20  case was ongoing because of the underlying 1997 consent

21  decree, the Court already had jurisdiction to enforce a

22  factually related settlement agreement. So even if the

23  Court had said it was retaining jurisdiction, that provision

24  would not have clearly signaled that the settlement was part

25  of the court order. For example, your Honor, in ongoing

6

1  cases, if the parties enter into a settlement agreement, the

2  Court has power under Ninth Circuit law to summarily enforce

3  the settlement agreement if one of the parties tries to back

4  out before the case is actually closed.  But just because

5  the Court has power to enforce that settlement agreement

6  doesn't mean that that settlement agreement has become part

7  of a court order subject to a Rule 60 modification.

8          THE COURT:  Why would this settlement agreement

9  not be considered similar to the underlying Flores

10 Settlement Agreement, given that it is intended to interpret

11 the Flores Settlement Agreement?

12         MR. MCCROSKEY:  The parties intended the 2022

13 settlement to interpret certain terms of the Flores

14 Settlement Agreement in the context of a specific place,

15 these two sectors of border patrol, and a specific time, the

16 two-and-a-half-year term of the settlement.  And so the

17 parties meant for this to be an aid in helping to understand

18 the terms of the 1997 consent decree as applied to specific

19 circumstances, but the parties never moved or never agreed

20 to actually modify the underlying 1997 consent decree, nor

21 did the parties ask the Court to enter this agreement

22 separately as a judgment.

23         THE COURT:  All right.  So your contention is that

24 the 2022 settlement agreement is not a consent decree?

25         MR. MCCROSKEY:  Correct, your Honor.

7

1          Further, I noticed in the tentative, your Honor,

2     that you're relying -- that the Court is relying on Rule

3     60(a) to amend the initial approval order to further clarify

4     the Court's intent that the 2022 settlement be treated as a

5     consent decree.  However, the Court's approval order was

6     based on a stipulation between the parties and a proposed

7     order that the parties presented to the Court.  And so the

8     fact that there wasn't a specific incorporation or a

9     specific retention of jurisdiction phrase in the order was

10    not a mistake or an error subject to correction under Rule

11    60(a).  It was part of the parties' agreements that the

12    Court reviewed for fairness under Rule 23.

13          THE COURT:  Isn't that somewhat academic, in the

14    sense that there is language in the 2022 settlement that

15    requires the Court's continuing jurisdiction to oversee the

16    parties' alternative dispute resolution provisions and to

17    make sure that the provisions regarding monitoring are

18    complied with?

19          MR. MCCROSKEY:  No, your Honor, the distinction is

20    not merely academic.  The parties recognized that the case

21    was still open and ongoing because of the 1997 consent

22    decree, and so they -- the dispute resolution provision

23    provided protections for both parties and a process to go

24    through to resolve disputes and recognized that, because

25    this case was still ongoing, Plaintiffs could bring

*Echo Reporting, Inc.*

8

allegations to the Court if they chose to do so.  And many
of these disputes between the parties related to the meaning
and interpretation of the 2022 settlement have been long
going, but Plaintiffs have not brought that kind of motion
to enforce contemplated by the dispute resolution procedure.

THE COURT:  Isn't the upshot of what you're saying
that there is no remedy for a breach of this agreement,
then?

MR. MCCROSKEY:  No, your Honor.  The remedy for
Plaintiffs has been to bring a motion before the Court
seeking a remedy for a breach during the term of the
settlement agreement.

THE COURT:  Well, in essence, this is a request
for remedial relief because of lack of substantial
compliance with certain aspects of that agreement.

MR. MCCROSKEY:  Yes, your Honor.  But instead of
seeking contract remedies, Plaintiffs have brought a motion
under Rule 60(b) without showing how Rule 60(b) applies to
something that was never incorporated or made part of a
court order or judgement.

THE COURT:  So are you suggesting that they should
have brought a motion for contempt?

MR. MCCROSKEY:  No, your Honor, not a motion for
contempt, because it wasn't a court order, but they should
have brought a motion seeking relief for a breach of

9

1  contract, essentially.  They could have phrased that as a

2  motion to enforce, but that's what it would have been.

3          THE COURT:  Or it could have been a motion for

4  contempt, because, actually, it is encapsulated in an order.

5  There are provisions of the settlement agreement that are

6  quoted in the order.  It was approved by the Court.  So,

7  essentially, you're saying that I cannot impose any remedy

8  as a result of that order not being a consent decree, but it

9  is -- it flows from the Flores Settlement Agreement.  It

10 doesn't stand alone.  It can't be interpreted simply as a

11 standalone agreement.

12         MR. MCCROSKEY:  The Court did summarize the terms

13 of the parties' agreement when reviewing it for Rule 23

14 fairness considerations, but the Court never said, "I am

15 hereby adopting these provisions as the court order itself

16 or as part of the court order," in contrast to, for example,

17 the Kelly (phonetic) case, where the Court did incorporate

18 the parties' stipulation that had incorporated the

19 agreement, and therefore the parties settlement agreement

20 was actually part of the Court's order in that situation.

21         THE COURT:  All right.  Is there anything else?

22         MR. MCCROSKEY:  Your Honor, with regard to the

23 changed circumstances and the application of Rule 60(b), the

24 Government would also like to argue that, you know, setting

25 aside if the Court finds that the 2022 settlement is an

10

order subject to modification under Rule 60(b), the law that
is applicable to modifying under Rule 60(b) in this
situation looks different from cases like Rouser v. White
that the Court cited in talking about the -- what
substantial compliance means.  How substantial compliance
was analyzed by the Ninth Circuit in the Labor Community
Strategy Center case looks very different from how the Ninth
Circuit analyzed substantial compliance in Rouser v. White.
And, in fact, there are a few differences for that
distinction.  One is that the -- in this context, the burden
of proof is on the Plaintiff.  The Court in Labor Community
Strategy Center was also concerned about ongoing judicial
involvement, and so that's why, when analyzing and applying
substantial compliance in that context, the Ninth Circuit
found that the decree had achieved its purpose, even though
one of the three essential requirements had not been met.

        And then it also has to do -- the difference in
analysis has to do with the parties' expectations.  While
some non-compliance can be anticipated and dealt with by the
parties by bargaining for an extension provision or a
substantial compliance provision, when the parties
anticipate some degree of non-compliance or disputes about
compliance, but then still agree to a firm termination date,
it takes more for Plaintiffs to show that a Rule 60(b)
modification is warranted.  So that's why, despite the

11

1  Court's analysis finding that perhaps the monitoring

2  provision has not been fully achieved, the Court could still

3  find that, overall, there has been substantial compliance,

4  because the Court should be following the more flexible

5  analysis taken by the Ninth Circuit in Labor Community

6  Strategy Center, rather than the more rigid analysis in a

7  case where the defendant is moving for termination like

8  Rouser v. White.

9        THE COURT:  All right.  But your 2022 settlement,

10 by its terms, requires the juvenile monitor to approve the

11 monitoring provisions.

12       MR. MCCROSKEY:  It requires final approval by the

13 monitor.  However, what it requires of CBP is that CBP

14 provide monitoring protocols and engage with the monitor

15 throughout the process.  And CBP has done that.  CBP has

16 provided monitoring protocols and has provided what the

17 monitors have asked for and has worked with the monitor in

18 good faith throughout this process to develop protocols.

19 Unfortunately, the process has taken longer than what anyone

20 anticipated, but CBP has still met its obligations, and the

21 parties did not include any condition or penalty for if the

22 monitor did not provide final approval.

23       THE COURT:  All right.  That doesn't make a whole

24 lot of sense, if what we're looking at is substance rather

25 than form.  If, in fact, the CBP hasn't finished developing

12

1  its protocols and has yet to implement them, I don't see how

2  the monitor could possibly approve them.  So, essentially,

3  you're saying that the language in the agreement can't be

4  enforced if the time is up.

5        MR. MCCROSKEY:  The agreement does not provide any

6  mechanism of enforcement or any substantive obligation

7  related to final approval.

8        THE COURT:  And the remedy that the Plaintiffs are

9  asking for that is an extension of time.

10       MR. MCCROSKEY:  Yes, your Honor.

11       THE COURT:  And are you saying I don't have the

12 authority to give that remedy?

13       MR. MCCROSKEY:  Your Honor does have the authority

14 to extend the monitoring term.  However, if the Court does

15 extend the monitoring term, it is important for the

16 Government that the Court provide, as clearly as possible,

17 the parameters of future monitoring and what the scope of

18 the monitoring will be.

19       THE COURT:  All right.  But I think the monitoring

20 has already been delineated for these past many years.  I

21 don't know that we need to have any further delineation in

22 that regard, other than the time parameters.  But is there

23 anything else?

24       MR. MCCROSKEY:  No, your Honor.  That's all I

25 have.  Thank you.

13

1          THE COURT:  All right.  Thank you.

2          Would you like to be heard?

3          MS. WROE:  Yes, please, your Honor.

4          Thank you.  Your Honor, Plaintiffs would not have

5  negotiated a settlement agreement for a two-and-a-half-year

6  term anticipating a lack of substantial compliance.  What

7  benefit Defendants received from the fixed two-and-a-half-

8  year term is that it is Plaintiffs' burden to show that

9  there has not been substantial compliance, and we have met

10  that burden.  So it is true that the two-and-a-half-year

11  fixed term gave something to both sides, and that's part of

12  a negotiation, but what we took on as the onus of that two-

13  and-a-half-year fixed term is proving substantial compliance

14  and taking on that burden, and I believe Plaintiffs have

15  done so.

16          The difference between --

17          THE COURT:  You mean proving lack of substantial

18  compliance.

19          MS. WROE:  I'm sorry, yes, proving lack of

20  substantial compliance.

21          We are not aware of and Defendants do not cite to

22  any case that holds incorporation as specifically required

23  for future modification.  The Supreme Court in Kokkonen said

24  that either incorporation or retention of jurisdiction are

25  suitable methods of retaining 60(b) authority to modify the

14

settlement agreement.  And here, the Court has chosen the
retention of jurisdiction as opposed to incorporation.  And
the -- all of the cases that Defendants cite to, <u>Kokkonen</u>,
<u>O'Connor</u>, et cetera, are significantly different from the
situation presented here, because the Court in those cases
dismissed the underlying action and therefore gave up
federal jurisdiction, federal subject matter jurisdiction,
whereas here there was no dismissal.  The dismissal of the
TRO as moot was necessarily tied to the settlement
provisions.  And moreover, in addition to the JCM monitoring
order, the Court did incorporate its intention to retain
jurisdiction by saying that the Court shall give the monitor
that authority.  So we believe that the Court's analysis in
the tentative is correct.

          And with respect to <u>Rufo</u> and the changed
circumstances --

          THE COURT:  So out of an abundance of caution,
I've indicated that I'm going to incorporate it and retain
jurisdiction.  Are you saying it's not necessary to do that?

          MS. WROE:  I don't think it's -- sorry.
Plaintiffs do not believe it is necessary for the Court to
modify the order because the retention of jurisdiction has
occurred.  However -- and we have not seen any case law to
suggest that the magic words are necessary to do so.
However, the Court clearly has the authority to modify its

15

1  order under 60(a).  That authority is inherent.  And so if

2  the Court decides to modify the order, Plaintiffs have no

3  objection to that.

4          THE COURT:  If I understand Mr. McCroskey's

5  argument, he's saying the -- that order approving the 2022

6  settlement is not a consent decree, and so I don't have the

7  authority to incorporate it into the order and make it a

8  consent decree.

9          MS. WROE:  And Plaintiffs disagree that it is --

10  with that analysis.  It is a consent decree.  It's tied

11  explicitly to the Flores Settlement Agreement, which is

12  undisputedly a consent decree.  In addition to citing

13  specific provisions of the Flores Settlement Agreement and

14  stating that the goal of the 2022 settlement was to clarify

15  the parties' understandings of Defendants obligations under

16  paragraphs 11 and 12(a) of the Flores Settlement, the

17  agreement itself actually terminates when the Flores

18  Settlement Agreement terminates as well, which could have

19  happened earlier than the two-and-a-half-year period.  So

20  the two are inextricably linked to each other, and the

21  consent decree -- the Court has the authority under 60(a)

22  and 60(b) to utilize the inherent power of 60(a) and 60(b)

23  as to the Flores Settlement Agreement, the juvenile care

24  monitor order, and the 2022 settlement.

25          THE COURT:  All right.  Thank you.  Anything

16

1  further?

2          MS. WROE:  I just wanted to also note that the --

3  with respect to the juvenile care monitor term, the

4  settlement agreement contemplates that the juvenile care

5  monitor is -- well, it requires the juvenile care monitor to

6  approve the monitoring protocols, but then it also

7  contemplates a period of time after the approval of the

8  monitoring protocols where this -- where the Defendants are

9  in compliance and working with the monitor to ensure that

10 those protocols are effective.  So it's not just the

11 approval of the protocols themselves, but it's also their

12 implementation.  And the settlement agreement doesn't

13 specify exactly what period of time that is.  I think there

14 are some references to 30 days, but the parties envisioned a

15 time where the protocols would be approved, and then there

16 would still be time where the monitors were working with

17 Defendants to ensure their modification, and I think the

18 Court's tentative grants relief that effectuates that

19 intention.

20         THE COURT:  All right.  Thank you.

21         MS. WROE:  Thank you.

22         THE COURT:  All right.  Mr. McCroskey, any final

23 words?

24         MR. MCCROSKEY:  Your Honor, just very briefly.

25         THE COURT:  All right.

17

1          MR. MCCROSKEY:  Your Honor, Ms. Wroe talked about

2    how there's no case that requires specific incorporation

3    language, and that makes sense, your Honor, that there's not

4    a lot of case law on this issue, because what is or is not

5    an order should be clear to everyone.  No one should have to

6    guess about what is an order or a judgment of the Court.

7    And so I would suggest that to the extent that the question

8    requires extensive analysis or pulling, you know, pieces

9    here and there from orders or from different parts of the

10   settlement, that suggests that the 2022 settlement is not an

11   order under the Rule 60(b) standards.

12          THE COURT:  All right.  Thank you.

13          Ms. Ordin or Doctor Wise, do you have anything

14   that you would like to say or report with regard to the

15   report that you submitted in December?

16          MS. ORDIN:  Thank you, your Honor.  Just a brief

17   comment that I hope the report spoke for itself and

18   indicated that, indeed, we have been working together and in

19   good faith, but because of (indiscernible) to certain

20   portions to be completed, we can't have an opinion on those

21   protocols.  And we have appreciated even the time that we've

22   met during this month period and do think we're making

23   progress.

24          THE COURT:  All right.  Thank you.

25          Doctor Wise, anything?  All right.  Thank you.

18

1          It's good to see you again, Ms. Fabian.  It's been

2    a long time.

3          MS. FABIAN:  Thank you, your Honor.  It's good to

4    see you, too.

5          THE COURT:  All right.  Then the matter will stand

6    submitted, and a written order will issue.  Thank you.

7          MS. WROE:  Thank you, your Honor.

8          MS. WELCH:  Thank you, your Honor.

9        (Proceedings concluded.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

19

1          I certify that the foregoing is a correct

2    transcript from the electronic sound recording of the

3    proceedings in the above-entitled matter.

4

5    /s/Chinago Okonta                    3/13/2025
     Transcriber                          Date
6

7    FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

8

9    /s/L.L. Francisco
     L.L. Francisco, President
10   Echo Reporting, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25