# Exhibit D

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*, | Case No. 2:85-cv-04544-DMG |
| Plaintiffs, | |
| v. | |
| PAMELA BONDI, Attorney General of the United States, *et al.*, | Chief District Judge Dolly M. Gee |
| Defendants. | |

## SUPPLEMENTAL DECLARATION OF TOBY BISWAS

I, **Toby Biswas**, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I am the Director of the Division of Unaccompanied Alien Children (UAC) Policy in the Office of Refugee Resettlement (ORR), UAC Bureau, an entity within the Administration for Children and Families (ACF), U.S. Department of Health and Human Services (HHS).

2. I have held various roles within ORR since joining the agency in November 2009, and I have held my current role since April 2023. My responsibilities encompass the development and implementation of ORR's policies and procedures concerning the care and custody UAC.  In this capacity, I am responsible for ensuring ORR's implementation of and compliance with programmatic policy prerogatives and statutory responsibilities, including those arising under the Homeland Security Act of 2002 (HSA), 6 U.S.C. § 279; Trafficking Victims

Protection Reauthorization Act of 2008 (TVPRA), 8 U.S.C. § 1232; and ORR's regulations, including the Foundational Rule, 45 CFR part 410.[1]

3.  This declaration is based upon my personal knowledge, information acquired in the course of performing my official duties, information contained in the records of ACF and ORR, and information conveyed to me by current agency employees and contractors.  Further, I am generally familiar with the facts and circumstances underlying ORR's promulgation of the Foundational Rule, this Court's order, dated June 28, 2024, partially and conditionally terminating the Flores Settlement Agreement (FSA) as to HHS, and ORR's recent policy revisions in accordance with that order.

Updates to UAC Bureau Policy Guide

4.  Before FY2012, an average of 6,000 to 8,000 UACs were typically placed into ORR custody each year.[2]  In FY2012, the Department of Homeland Security referred 13,625 UACs to ORR.  In FY2023, ORR received 118,938 referrals.

Updates to UAC Bureau Policy Guide

5.  On June 28, 2024, this Court partially and conditionally terminated the FSA as to HHS. The Court terminated the FSA, except paragraphs 28A, 32, and 33, and the provisions pertaining to secure, heightened supervision, and out-of-network

---

[1]  ORR policies with respect to UAC are also embodied in the ORR UAC Bureau Policy Guide ("UAC Policy Guide"), which is publicly available on ORR's website at https://acf.gov/orr/policy-guidance/unaccompanied-children-bureau-policy-guide.

[2]  *See* HHS, Administration for Children and Families, Office of Refugee Resettlement, Unaccompanied Alien Children Program, Fact Sheet (May 2014), available at https://acf.gov/sites/default/files/documents/orr/unaccompanied_childrens_services_fact_sheet.pdf (viewed May 19, 2025), attached as Ex. D-1;  ORR Fact Sheet, Referrals, https://www.acf.hhs.gov/orr/about/ucs/facts-and-data (viewed May 19, 2025), attached as Ex. D-2.

facilities. Regarding such placements, the Court ruled that the Foundational Rule failed to implement the FSA by: (1) "appear[ing] to impermissibly allow isolated or petty offenses to be considered in the decision to place an unaccompanied child in a heightened supervision facility"; (2) "appear[ing], impermissibly, to allow placement in a heightened supervision facility solely because a child is ready to 'stepdown' from a secure facility"; and (3) "fail[ing] to provide substantive protections for the children placed at OON facilities," and failing to ensure that OON placements are governed by the same standards as in network providers.

6. On May 19, 2025, ORR published updates to its Policy Guide to align them with the Court's June 28, 2024 order as to its findings pertaining to secure, heightened supervision, and out-of-network facilities.

7. First, ORR updated its Policy Guide at section 1.2.4[3] to delete reference to isolated and petty offenses as a basis for placement in a heightened supervision facility. Instead, the Policy Guide now explains that, in determining whether to place an unaccompanied alien child in such a facility, ORR will consider if the child "has a non-violent criminal or delinquent history not warranting placement in a secure facility but which evidences a behavioral concern that requires an increase in supervision."

8. Second, ORR updated its policy at section 1.2.4 to remove text that previously provided that in determining whether to place a child in a heightened supervision facility, ORR considers if the child "[i]s ready for step-down from a secure facility…"

9. ORR previously published an update to the Policy Guide in August 2024 to clarify, at section 1.4.2,[4] to clarify that, "Unaccompanied children placed in a secure

---

[3] Available at: https://acf.gov/orr/policy-guidance/unaccompanied-children-program-policy-guide-section-1#1.2.4.

[4] Available at: https://acf.gov/orr/policy-guidance/unaccompanied-children-program-policy-guide-section-1#1.4.2.

facility (including an RTC) are not automatically stepped down to a heightened supervision facility." The revision further clarified that ORR evaluates each child's case and determines the least restrictive setting that meets their individual needs, which may be a heightened supervision facility or a non-restrictive level of care (such as a shelter). ORR believes that this previous update addressed the Court's concerns regarding step-downs from secure facilities by making clear that children will not automatically be placed in heightened supervision simply because they are ready to be stepped down from a secure placement. However, ORR has published additional updates described above at Paragraph 7 to further clarify the process. ORR has also added a footnote to Policy Guide section 1.2.4, providing explicitly that "…Heightened Supervision Facility placement requirements conform to the standards that the U.S. District Court concluded were applicable to such placements under Paragraph 21A of the Flores Settlement Agreement. *Flores v. Garland*, No. CV 85-4544-DMG (AGRX), 2024 WL 3467715, at *6 (C.D. Cal. June 28, 2024) (applying paragraph 21 to "medium security" facilities)."

10. Third, ORR updated its policies with respect to OON facilities, in accordance with the Court's directive that such facilities should be included in the provisions of the rule that governs in-network facilities.

11. As an initial matter, ORR revised the definition of OON placement in the Policy Guide.   The revised definition stipulates that "OON placements must generally adhere to or arrange the standards listed in [section 3.3] of the Policy Guide." (Section 3.3 corresponds with Exhibit 1 of the FSA, now codified in the Foundational Rule at 45 CFR 410.1302 and 1307). The revised definition also clarifies that children placed in OON facilities will generally receive or have arranged the services established for in-network ORR care provider facilities, including the development of behavior management strategies.   However, as consistent with a child's best interests, ORR may determine, in consultation with independent experts, the extent to which a service may be provided for or arranged.

ORR further clarifies that in general, it will not place a UAC in an OON facility if it determines that a service which is required for the child's best interests cannot be provided at the OON facility.

12. ORR also updated Policy Guide section 3.1,[5] adding, "Likewise, OON facilities must provide all services required of in-network care provider facilities, as discussed at Section 1.4.6 Residential Treatment Center and Out-of-Network, subject to the exceptions provided in the policy." In addition, ORR updated section 1.3.2 of the Policy Guide[6] by adding that "OON facilities and providers are generally subject to the same standards of care and service delivery as in-network providers."

13. ORR also updated UAC Policy Guide Section 1.4.6 Residential Treatment Center and Out-of-Network Placements[7] to make clear that, as a general principle and wherever feasible, the same standards applicable to in-network providers should be applied to OON placements. These standards and services encompass healthcare, food, hygiene, needs assessments, education, recreation, orientation, religious services, contact with family, and other essential services as described at Policy Guide Section 3.3 Care Provider Required Services. Additionally, this Policy Guide update clarifies that behavior management policies, as described in the Foundational Rule at Policy Guide Section 3.3.13 Behavior Management (which are consistent with the Foundational Rule at 45 CFR 410.1305), will apply to OON placements.

14. ORR also updated section 1.4.6 of the Policy Guide to incorporate specifics as to how it will ensure UACs in OON facilities are included under provisions of the Foundational Rule and Policy Guide that govern in-network facilities. For example,

---

[5] Available at: https://acf.gov/orr/policy-guidance/unaccompanied-children-program-policy-guide-section-3#3.1

[6] Available at: https://acf.gov/orr/policy-guidance/unaccompanied-children-program-policy-guide-section-1#1.3.2

[7] Available at: https://acf.gov/orr/policy-guidance/unaccompanied-children-program-policy-guide-section-1#1.4.6.

ORR clarified that a case manager at an ORR in-network facility will administer case management services for a child placed in an OON facility. This involves maintaining weekly contact with the child's OON facility to ensure the case manager and assigned ORR federal staff receive weekly updates on the child's progress. ORR has also added the following provision: "For children with identified disabilities who have an Individualized Section 504 Service Plan…ORR will ensure that the services, supports, and reasonable accommodations and modifications responsive to the child's disability-related needs which are specified in the child's Individualized Section 504 Service Plan Disability Plan are provided at the OON placement."

15. ORR has further updated Policy Guide section 1.4.6 to expressly provide that it "does not place an unaccompanied alien child at an OON facility if it determines that a service which is required for the child's best interests, including appropriate behavior management standards, cannot be provided at the facility."

16. ORR notes that when it houses children in OON facilities, it does so based on agreements with those facilities pertaining to specific children, based on their ability to meet the child's individualized needs (e.g., in a manner that ORR's in-network facilities may not have the capacity to provide, but would be in the child's best interest). As a result, OON facilities are not funded in the same way as in-network facilities. In-network facilities are funded via cooperative agreements or (in the case of Emergency or Influx Facilities) contracts, as described in the Federal Grant and Cooperative Agreement Act, 31 U.S.C. chapter 63. ORR identifies and funds in-network facilities, typically through a competitive process, generally to provide for the care and custody of unaccompanied alien children, rather than to care for specific children. As part of that process, ORR imposes requirements in the terms and conditions of the facility's federal award (e.g., organizing the recipient's physical space and human resources to meet ORR's minimum standards for the residential care of unaccompanied alien children). Because OON facilities are used by ORR to meet individual children's needs on a case-by-case basis, ORR is unable to use the

same process it would for in-network facilities. As a result, in applying this Court's June 28, 2024 order, ORR notes that it is not possible to guarantee the provision of all services and standards required at in-network facilities at all OON facilities, all of the time.

17. In recognition of this operational reality, ORR's recent policy revisions provide that, "Due to the operational realities of working with OON facilities, see generally Section 3.3, ORR will coordinate with the in-network care provider facility to provide the services to the child if feasible, or if the in-network facility is unable to provide the services, ORR may itself arrange for the services to the child." For example, if the OON placement does not provide group counseling services, the original in-network care provider facility would provide group counseling services to the child. If that is not feasible, ORR shall provide these services, as is practicable.

18. Together with paragraph 14 above, ORR intends through these updates to make clear that it generally applies the same standards that apply to in-network placements to OON ones, while accounting for operational realities and constraints reflecting the specialized nature of OON facilities and ORR's single-case agreements with such facilities for individual children (which do not operate under cooperative agreements or contracts with ORR, such that ORR could enforce specific requirements as it could with its in-network facilities).

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 22, 2025.

TOBY R.
BISWAS -S

Digitally signed by TOBY
R. BISWAS -S
Date: 2025.05.22
13:02:02 -04'00'

Toby Biswas