# Exhibit D-3

🇺🇸 An official website of the United States government   Here's how you know ⌄

# ORR Unaccompanied Alien Children Bureau Policy Guide: Section 1

 Listen ▶

## Placement in ORR Care Provider Facilities

**Current as of:** May 19, 2025

## 1.1 Summary of Policies for Placement and Transfer of Unaccompanied Alien Children in ORR Care Provider Facilities

The Office of Refugee Resettlement (ORR) coordinates and implements the care and **placement** of **unaccompanied alien children** who are in ORR custody by reason of their immigration status. The majority of unaccompanied alien children come into ORR custody because they were apprehended by Border Patrol agents with the **U.S. Department of Homeland Security (DHS)** while trying to enter the United States without legal authorization. DHS (and in rare circumstances other federal agencies) may refer unaccompanied alien children to ORR's care 24 hours a day, seven days a week.

ORR has procedures in place to obtain background information on the unaccompanied alien child from the referring federal agency to assess whether the child is a danger to self or others, whether there are any known medical and/or mental health issues, and whether other specific individualized needs are known, and then to designate an available care provider. ORR uses this information to determine an appropriate placement in the least restrictive setting for the child.

In certain exceptional cases where the referring agency (or other federal agencies supporting the referring agency) communicates with ORR that a child will likely be determined to be unaccompanied (see **Section 2.2 Sponsor Application Process**), ORR may begin the reunification process in order to diminish the length of time in ORR custody. This can occur:

1. Before the child is in federal custody;
2. Ahead of ORR receiving a written referral; and/or
3. Before the **transfer** of the child into ORR's physical custody and placement in a care provider facility.

ORR may enter into formal agreements with federal agencies (or other entities supporting the federal agency) in order to delineate the types of information ORR will receive ahead of a written referral in order to begin the reunification process, which may include information from non-federal entities.

ORR policies for placing children in its custody into care provider facilities are based on legal requirements as well as child welfare best practices in order to provide a safe environment and place the child in the least restrictive setting appropriate for the child's needs. ORR applies the following general principles to the care and placement of unaccompanied alien children:

1. Within all placements, children must be treated with dignity, respect, and special concern for their particular vulnerability.
2. ORR must hold children in facilities that are safe and sanitary and that are consistent with ORR's concern for the particular vulnerability of unaccompanied alien children.
3. ORR plans and provides care and services based on the individual needs of and focusing on the strengths of the child.
4. ORR encourages children, as developmentally appropriate and in their **best interests**, to be active participants in ORR's decision-making process related to their care and placement.

Case 2:85-CV-04544-DMG-AGR   Document 1567-8   Filed 05/23/25   Page 3 of 28   Page ID #:52815

5. ORR strives to provide quality care tailored to the individualized needs of each child in its custody, ensuring the interests of the child are considered, and that unaccompanied alien children are protected from traffickers and other persons seeking to victimize or otherwise engage them in criminal, harmful, or exploitative activity, both while in ORR custody and upon **release** from the UAC Bureau.

6. In making placement determinations, ORR must place each child in the least restrictive setting that is in the best interests of the child, giving consideration to whether the child poses a danger to self or others, and **runaway risk**.

7. When requesting information or consent from children, ORR consults with parents, **legal guardians**, **child advocates**, and attorneys of record or Department of Justice (DOJ) accredited representatives as needed.

ORR may place a child in a **shelter** facility, **transitional** or **long-term foster care** (which may be a **group home** or **therapeutic**), **heightened supervision** facility or **secure facility** (including **residential treatment centers**), or other care facility that can provide for their specific individualized needs, including **out-of-network (OON)** placements, which may be **restrictive** or non-restrictive (see **Section 1.4.6 Residential Treatment Center and Out-of-Network Placements**). ORR makes reasonable efforts to provide licensed placements in those geographical areas where DHS encounters the majority of unaccompanied alien children.

There are two types of placement decisions:

1. The initial placement into a **care provider facility**; and

2. Transfers between care providers. Although the circumstances and procedures for initial placement and transfer vary, ORR applies the same child welfare principles in its decision-making process.

ORR takes legal custody of the unaccompanied alien child when ORR assumes physical custody of the child from the referring federal agency. The referring federal agency generally transports the unaccompanied alien child to the ORR care provider. However, under certain extenuating and exceptional circumstances, ORR may assume physical custody of the child, and thereby legal custody, to facilitate release to a vetted sponsor in lieu of placement with an ORR care provider.

*Revised 08/01/2024*

# 1.2 ORR Standards for Placement and Transfer Decisions

ORR policies for placing children in its custody into care provider facilities are based on child welfare best practices in order to provide a safe environment and place the child in the least restrictive setting appropriate for the child's needs. ORR may place a child in a **shelter facility**, foster home or group home (which may be **therapeutic**), **heightened** supervision facility or **secure facility** (including **residential treatment centers**), or other care facility that can provide for their specific individualized needs, including an out-of-network (OON) placement (which may be restrictive or non-restrictive) as described in **Section 1.4.6 Residential Treatment Center and Out-of-Network Placements**.

In times of **influx** or **emergency**, ORR may place unaccompanied alien children in care provider facilities that may not meet the standards of a **standard program**, but rather meet the standards in **Section 7: Policies for Influx Care Facilities.**

There are two types of placement decisions: the initial placement into a **care provider facility** or other setting and transfers between care providers. Although the circumstances and procedures for initial placement and transfer vary, ORR applies the same child welfare model to both types of care delivery. ORR places all unaccompanied alien children in standard programs that are not restrictive placements except in the following circumstances:

- An unaccompanied alien child meets the criteria for placement in a restrictive placement (see **Section 1.2.4 Secure and Heightened Supervision Facilities** and **Section 1.4.6**); or

- In the event of an emergency or influx of unaccompanied alien children into the United States, in which case ORR places the unaccompanied alien child as expeditiously as possible.

Case 2:85-cv-04544-DMG-AGR    Document 1567-8    Filed 05/22/25    Page 4 of 28    Page ID #:52816

ORR makes every effort to place children within the ORR care provider network. However, there may be instances when ORR determines there is no in-network care provider available to provide specialized services to meet an unaccompanied alien child's identified needs, no in-network care provider equipped to meet those needs with the capacity to accept a new placement, or transfer to a less restrictive facility is warranted and ORR is unable to place the child in a less restrictive in-network care provider facility. In those cases, ORR will consider an out-of-network placement. An ORR/Federal Field Specialist (FFS) and the FFS Supervisor must approve placement into an out-of-network facility as the least restrictive placement in the child's best interests (see **Section 1.4.6**).

ORR must approve all transfers and releases while a child is in its custody, except in emergency situations where a care provider may temporarily transfer placement of an unaccompanied alien child. In these emergency situations, the care provider must notify ORR of the transfer within eight (8) hours.

*Revised 08/01/2024*

## 1.2.1 Placement Considerations

ORR places each unaccompanied alien child in the least restrictive setting that is in the best interests of the child and appropriate to the child's age and individualized needs, provided that such setting is consistent with the interest in ensuring the unaccompanied alien child's timely appearance before the U.S. Department of Homeland Security (DHS) and the immigration courts and in protecting the child's well-being and that of others.

ORR considers the following factors to the extent they are relevant to the unaccompanied alien child's placement, including:

1. Danger to self;
2. Danger to the community/others;
3. Runaway risk;
4. Trafficking in persons or other safety concerns;
5. Age;
6. Sex;
7. **LGBQI+** status or identity;
8. **Disability**;
9. Any specialized services or treatment required or requested by the unaccompanied alien child;
10. Criminal background;
11. Location of potential sponsor and safe and timely release options;
12. Behavior;
13. Siblings in ORR custody;
14. Language access;
15. Whether the unaccompanied alien child is pregnant or parenting;
16. Location of the unaccompanied alien child's apprehension; and
17. Length of stay in ORR custody.

ORR may utilize information provided by the referring Federal agency, child assessment tools, interviews, and pertinent documentation to determine the placement of all unaccompanied alien children. ORR may obtain any records from local, State, and Federal agencies regarding an unaccompanied alien child to inform placement decisions.

ORR reviews, at least every 30 days, the placement of an unaccompanied alien child in a restrictive placement to determine whether a new level of care is appropriate (see **Section 1.4.2 30-Day Restrictive Placement Case Review**).

5/20/25, 12:39 PM    ORR Unaccompanied Alien Children Bureau Policy Guide: Section 1 | The Administration for Children and Families

Case 2:85-cv-04544-DMG-AGR    Document 1567-8    Filed 05/22/25    Page 5 of 28    Page ID #:52817

When specialized services or treatments (including but not limited to access to medical specialists, **family planning services**, and medical services requiring heightened ORR involvement) are determined to be medically necessary during the referral, intake process, Initial Medical Exam, or at any point while the child is in ORR custody, or the child reasonably requests such medical care while in ORR custody, ORR, to the greatest extent possible, identifies available and appropriate bed space and places the child at a care provider facility that:

- Is able to provide or arrange such care;
- Is in an appropriate location to support the child's healthcare needs; and
- Affords access to an appropriate medical provider who is able to perform any reasonably requested or medically necessary services.

*Revised 02/27/2025*

## 1.2.2 Children with Specific Individualized Needs

Whenever possible, ORR place a child with specific individualized needs in a care provider facility serving the general population but that is able to provide services and treatment for specific individualized needs. In all instances, ORR must place each unaccompanied alien child in the least restrictive setting in the best interests of the child.

ORR gives priority for transitional foster care placements to children in the following special situations:

- Children who are under 13 years of age;
- Sibling groups with one sibling under 13 years of age;
- Children who are pregnant or parenting;
- Children with other specific individualized needs.

ORR assesses each unaccompanied alien child in its care to determine whether the child requires particular services and treatment by staff to address their individualized needs while in the care of the UAC Bureau. An unaccompanied alien child's assessed needs may require particular services, equipment, and treatment by staff for various reasons, including, but not limited to disability, alcohol or substance use, a history of serious **neglect** or abuse, **tender age**, pregnancy, or parenting. If ORR determines that an unaccompanied alien child's individualized needs require particular services and treatment by staff or particular equipment, ORR places the unaccompanied alien child, whenever possible, in a standard program in which the unaccompanied alien child with individualized needs can interact with children without those individualized needs to the fullest extent possible, and provides services and treatment or equipment for such individualized needs.

*Revised 08/01/2024*

## 1.2.3 Safety Issues

The safety and well-being of a child is a primary consideration in placement decisions. Issues related to safety including a child being fearful of others, such as specific individuals who would seek to harm or exploit the child (e.g., smugglers, traffickers, drug cartels, or other organized crime groups) and a child who is a material witness or a victim of crime. ORR collaborates with law enforcement officials on the placement of an unaccompanied alien child who has information that may be relevant to a criminal proceeding (e.g., "material witness").

*Revised 08/01/2024*

## 1.2.4 Secure and Heightened Supervision Facilities

**Determination to Place an Unaccompanied Alien Child in a Restrictive Facility**

Every decision to initially place, transfer, or continue placement of an unaccompanied alien child in a **heightened supervision**, **secure**, **residential treatment center** (RTC), or restrictive out-of-network facility must be supported by clear and convincing evidence documented in the unaccompanied alien child's **case file**. **Clear and convincing evidence** means the conclusion is highly and substantially more likely to be true than untrue. Therefore, ORR must demonstrate that placement in a restrictive facility is appropriate because the available information about the child makes it highly and substantially more likely that:

- The child poses a danger to self or others; and/or
- Poses a risk of running away.

The existence of a report of a **significant incident** must not be used as a basis for an unaccompanied alien child's step-up to a restrictive placement or as the sole basis for a refusal to step a child down to a less restrictive placement. Reports of significant incidents may be used as examples or citations of concerning behavior. However, the existence of a report itself is not sufficient for a step-up or a refusal to step-down.

ORR has two levels of care for unaccompanied alien children who are assessed to be a danger to themselves or others, have a criminal history, or require close supervision. These two levels of care are heightened supervision and secure. Heightened supervision facilities maintain stricter security measures than non-restrictive care providers (e.g., shelters), such as intensive staff supervision, in order to provide supports, manage problem behavior, and prevent children from running away. Secure facilities are for children who require the strictest level of supervision. Secure facilities have a secure perimeter, major restraining construction inside the facility, and procedures typically associated with correctional facilities.

ORR may place an unaccompanied alien child in a heightened supervision or a secure setting either at initial placement or through a transfer to another facility from the initial placement. ORR provides the child written notice of the reasons for placement in a secure or heightened supervision facility by providing the *Notice of Placement in a Restrictive Setting (NOP)* form within 48 hours after an unaccompanied alien child's arrival at a restrictive placement, as well as at minimum every 30 days the child remains in a restrictive placement (see **Section 1.4.2 30-Day Restrictive Placement Case Review**). **Case Managers** review the NOP with children in their preferred language with an explanation that takes into account their level of understanding and is delivered in a child-friendly manner.

If a child has a serious mental health or behavioral health issue and has been evaluated and determined to be a danger to self or others by a licensed psychologist or psychiatrist, ORR may place the child in an RTC or other therapeutic setting. ORR provides the child an NOP form within 48 hours of a child's placement, as well as at minimum every 30 days that the child remains in a restrictive placement, explaining the reasons for placement in an RTC or therapeutic setting (see **Section 1.4.6 Residential Treatment Center and Out-of-Network Placements**).

Within 48 hours of the child's admission to a restrictive facility (as well as every 30 days that the child remains in a restrictive placement), the care provider must also send a copy of the NOP to the child's:

- **Attorney of record**;
- **Legal service provider**;
- Child advocate (if applicable); and
- Parent, unless there are child welfare reasons not to do so, the parent cannot be reached, or when a child 14 years or older states that they do not want the parent to receive a copy of the NOP. Child welfare reasons not to share the NOP may include but are not limited to:
  - Provision of the NOP to the parent would pose a danger to the child;
  - Parent is present in the United States but has declined to be the child's sponsor; or
  - A custodial parent has stated that a copy of the NOP should not be provided to a non-custodial parent.

**Placement of Children with Disabilities in a Restrictive Facility**

Case 2:85-cv-04544-DMG-AGR    Document 1567-8    Filed 05/23/25    Page 7 of 28    Page ID #:52819

ORR is committed to ensuring that children with disabilities are placed in the least restrictive, most integrated setting consistent with their best interests and individualized needs while they are in ORR care and custody.

ORR's determination whether to place a child with one or more disabilities in a restrictive placement (or to transfer a child to such a placement) shall include consideration of whether there are any reasonable program modifications or any aids, supports or services that could be provided in a less restrictive placement (which may be the child's current placement) and would enable the child to be placed (or remain) in such a less restrictive facility.

If a child with one or more disabilities requires placement in a more restrictive program (i.e., an RTC or other restrictive therapeutic facility, heightened supervision, or secure program), the care provider recommending the transfer or the FFS Supervisor approving the initial placement in a restrictive facility must detail in writing the reasons why the child's placement in such a restrictive facility is necessary in order to meet their needs, and identify the services and care that the restrictive facility must provide the child. The documentation must also state why the child's needs cannot be met in a more integrated and less restrictive setting with additional services, supports, and/or program modifications or accommodations.

In the case of a child not previously identified as having a disability, the care provider must refer the child for an evaluation for a disability upon considering the child for placement in a secure, RTC, or other secure therapeutic facility. In accordance with **Section 3.8 Children with Disabilities in ORR Custody**, the care provider must submit the evaluation referral prior to submitting a request to transfer the child to a restrictive placement. The child may be transferred while awaiting the evaluation, but the referral must occur before the transfer is requested. If the restrictive facility is the child's initial placement with ORR, the referral for a disability evaluation must occur immediately.

### Secure Facility (that is not an RTC)

It is expected that care providers address behavioral concerns by children in ORR custody in accordance with **Section 3.3.13 Behavioral Management** prior to seeking placement of a child in a secure facility (that is not an RTC). ORR only places an unaccompanied alien child in a secure facility if there is clear and convincing evidence that the child:

1. Poses a danger to self or others; or
2. Has been charged with or convicted of a criminal offense or is chargeable with such an offense.

In determining whether to place an unaccompanied alien child in a secure care (that is not an RTC), ORR considers if the unaccompanied alien child:

- Has been charged with or has been convicted of a crime, or is the subject of delinquency proceedings, delinquency charge, or has been adjudicated delinquent[1], and where ORR deems that those circumstances demonstrate that the unaccompanied alien child poses a danger to others, not including:
  - Isolated offenses that (1) were not within a pattern or practice of criminal activity and (2) did not involve violence against a person, or the use or carrying of a weapon (e.g., breaking and entering, vandalism, DUI, status offenses, etc.); or
  - Petty offenses which are not considered grounds for a stricter means of detention in any case (e.g., shoplifting, joy riding, disturbing the peace).
- Has committed, or has made credible threats to commit, a violent or malicious act directed at others, while the child was in 1) the U.S. Department of Homeland Security (DHS), 2) ORR's custody, or 3) the presence of an immigration officer, ORR official, or ORR contracted staff.
- Has engaged, while in a restrictive placement, in conduct that has proven to be unacceptably disruptive of the normal functioning of the care provider facility, and removal is necessary to ensure the welfare of others, as determined by the staff of the care provider facility (e.g., stealing, fighting, intimidation of others, or sexually predatory behavior), and ORR determines the unaccompanied alien child poses a danger to others based on such conduct.

5/20/25, 10:39 AM    ORR Unaccompanied Alien Children Bureau Policy Guide: Section 1 | The Administration for Children and Families

Case 2:85-cv-04544-DMG-AGR   Document 1567-8   Filed 05/22/25   Page 8 of 28   Page ID #:52820

A finding that a child poses a danger to self must not be the sole basis for a child's placement in a secure facility (that is not an RTC).

ORR must not place an unaccompanied alien child in a secure facility (that is not an RTC) if less restrictive alternatives in the best interests of the unaccompanied alien child are available and appropriate under the circumstances.

**Heightened Supervision Facility**[2]

A heightened supervision facility is a licensed childcare facility for unaccompanied alien children who require close supervision, but do not require placement in a secure facility. A decision to place a child in a heightened supervision facility is based on clear and convincing evidence that the child meets the criteria for the placement.

In determining whether to place a child in a heightened supervision facility, ORR considers if the child:

- Has been unacceptably disruptive to the normal functioning of a shelter care provider facility such that transfer is necessary to ensure the welfare of the child or others;
- Is at risk of running away;
- Has displayed a pattern of severity of behavior, either prior to entering ORR custody or while in ORR care, that requires an increase in supervision by trained staff; or,
- Has non-violent criminal or delinquent[3] history not warranting placement in a secure facility, but which evidences a behavioral concern that requires an increase in supervision above what would be provided in a non-restrictive facility.

*Revised 05/19/2025*

## 1.2.5 Unaccompanied Alien Children Who Pose a Risk of Running Away

ORR does not place a child in a secure facility solely because they may pose a risk of running away from ORR custody. However, ORR may place a child in a **heightened supervision facility** solely because they are a runaway risk. In all cases, ORR must assess whether an unaccompanied alien child is a runaway risk in order to make an informed placement decision.

When determining whether an unaccompanied alien child is a runaway risk for purposes of placement decisions, ORR considers, among other factors, whether:

- The unaccompanied alien child has previously absconded or attempted to abscond from State or Federal custody.
- The unaccompanied alien child has displayed behaviors indicative of flight or has expressed intent to run away.
- Evidence that the unaccompanied alien child is experiencing a strong **trauma bond** to or is threatened by a trafficker in persons or drugs.
- The unaccompanied alien child is within one month of turning 18 years of age.
- An unaccompanied alien child with an immigration history that includes:
  - A final order of removal (child has a legal duty to report for deportation)
  - A prior breach of a bond
  - Failure to appear before the U.S. Department of Homeland Security or the immigration courts
  - Previous repatriation (return to the home country) through a grant of voluntary departure or a final order of removal from an immigration judge

*Revised 08/01/2024*

## 1.2.6 Long-Term Foster Care

An **unaccompanied alien child** may be placed in a long-term foster care (LTFC) setting, such as community-based foster care or a community-based group home. LTFC providers must ensure that each child is placed in a licensed foster home or group home and consider the child's preference, cultural, and linguistic needs when making placements.

A child is a candidate for LTFC if they:

- Are expected to have a protracted stay of four (4) months or more in ORR custody because they do not have a viable sponsor and/or the child is likely to be in ORR care for a prolonged time for other reasons[4]; and
- Are under the age of 17 and 6 months at the time of placement, unless waived by both the referring and receiving Federal Field Staff (FFS), who will take into account the best interests of the child.

ORR considers the following factors when making an LTFC referral and placement decision:

- The child's mental, emotional, behavioral, and physical health needs;
- The child's ability and commitment to live in a family and community-based setting;
- The child's age;
- Availability of an appropriate placement that meets the child's needs; and
- The legal service provider's (LSP) recommendation of preferred locations for placement based on the child's eligibility for immigration relief.

The LSP's recommendation of preferred locations for placement must be based on the child's potential for immigration relief, type of immigration relief, and status of court hearings or relief petitions. ORR will consider the recommendation, in addition to the factors listed above, in determining the LTFC placement that is in the child's best interests (see **8 U.S.C. § 1232 (c)(2)(A)** ). The referring LSP will conduct the assessment and prepare their recommendations prior to the care provider initiating the transfer request to LTFC (see **Section 1.4.4 Transfer to Long-Term Foster Care**).

When possible, taking into consideration the placement factors listed above, ORR will make a best effort to place the child in a location where their immigration case would be best served. If a bed in the locations included in the LSP's recommendation is not available, a Child Advocate referral must be made (see **Section 2.3.4 Child Advocates**). Additionally, the case must be staffed with the FFS to determine whether to proceed with the LTFC transfer and to determine the placement option that is in the child's best interests.

In regard to a child's consent to share the LSP's recommendation of preferred locations of placement with ORR, LSP's will abide by their professional standards for seeking consent. If the child does not consent to sharing the information on the list of preferred placement options from the LSP, the LSP will not share it with ORR. If the transfer is within the best interests of the child, ORR will proceed with the LTFC placement, even if ORR does not receive the list of preferred placements from the LSP and/or if the child does not consent to sharing the information with ORR.

*Revised 01/16/2025*

## 1.2.7 Placing Family Members (Siblings and Children of Unaccompanied Alien Children)

**Placements**

Under most circumstances, ORR places siblings together and unaccompanied alien children who are parents with their children. The following cases would be an exception to family grouping:

- The unaccompanied alien child wishes otherwise (evaluated on a case-by-case basis);
- The placement would be contrary to the developmental, treatment, or safety needs of the unaccompanied alien child or their children;
- There is an unusual or emergency situation.

5/20/25, 11:23 AM    ORR Unaccompanied Children Bureau Policy Guide: Section 1 | The Administration for Children and Families

Case 2:85-cv-04544-DMG-AGR    Document 1567-8    Filed 05/22/25    Page 10 of 28
Page ID #: 52822

In addition to the ones listed above, there are other exceptional circumstances that would prevent unaccompanied alien child from residing with their children in the same care provider facility. These circumstances include an unaccompanied alien child who is a parent who:

- Requires specialized placement in a setting that cannot provide appropriate care for an infant or young child (for example, a residential treatment center or hospital);
- Does not want their child to reside in the same place;
- Is the subject of open or substantiated allegations of abuse or neglect against their child.

If siblings or children of an unaccompanied alien child must be placed separately, the care provider tries to maintain regular ongoing contact, unless a mental health or child welfare professional deems the contact harmful, or unless the contact is contrary to the wishes of the unaccompanied alien child.

The separation of an unaccompanied alien child from their siblings or from their child requires prior authorization of ORR.

**Services**

ORR provides the same care and services to the children of unaccompanied alien children as it provides to unaccompanied alien children, as appropriate, regardless of the children's immigration or citizenship status.

The United States citizen children of unaccompanied alien children are eligible for public benefits and services to the same extent as other U.S. citizens. Application(s) for public benefits and services are submitted on behalf of the U.S. citizen children of unaccompanied alien children by care provider facilities. Utilization of those benefits and services must be exhausted to the greatest extent practicable before ORR-funded services are utilized.

*Revised 08/01/2024*

# 1.3 Referrals to ORR and Initial Placement

ORR accepts referrals of **unaccompanied alien children** from any department or agency of the Federal Government, at any time of day, every day of the year. Upon notification from any department or agency of the Federal government that a child in its custody is an unaccompanied alien child and therefore must be transferred to ORR custody, ORR identifies a standard program placement for the unaccompanied alien child, unless one of the listed exceptions in **Section 1.2 ORR Standards for Placement and Transfer Decisions** applies, and notifies the referring federal agency within 24 hours of receiving the referring agency's notification whenever possible, and no later than within 48 hours of receiving notification, barring exceptional circumstances.

ORR works with the referring federal agency to accept transfer of custody of the unaccompanied alien child, as required under the **Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA)** (PDF) (8 U.S.C. 1232(b)(3)). ORR takes legal custody of an unaccompanied alien child when it assumes physical custody from the referring agency.

ORR may be unable to timely identify a placement for and timely accept transfer of custody of an unaccompanied alien child due to exceptional circumstances, including:

1. Any court decree or court-approved settlement that requires otherwise;
2. An **influx**;
3. An emergency, including a natural disaster such as an earthquake or hurricane, a facility fire, or a civil disturbance;
4. A large-scale medical emergency affecting unaccompanied alien children (e.g., viral epidemic);
5. The apprehension of an unaccompanied alien child in a remote location;
6. The apprehension of an unaccompanied alien child whom the referring federal agency indicates:
   - Poses a danger to self or others; or

5/20/25, 11:23 PM                    ORR Unaccompanied Children Bureau Policy Guide: Section 1 — US Administration for Children and Families

Case 2:85-cv-04544-DMG-AGR    Document 1567-8    Filed 05/22/25    Page 11 of 28
Page ID #:52823

- Has been charged with or has been convicted of a crime, or is the subject of delinquency proceedings, delinquency charge, or has been adjudicated delinquent, and additional information is essential in order to determine an appropriate ORR placement.

*Revised 08/01/2024*

## 1.3.1 Request for Information from the Referring Federal Agency

As a first step, ORR requests background information from the referring federal agency to assess whether the **unaccompanied alien child** is a danger to self or others, whether there are any known medical and/or mental health issues, and whether other special concerns or needs are known. ORR uses this information to determine an appropriate placement for the child in the least restrictive setting.

ORR requests the following information from the referring agency:

- How the referring agency made the determination that the individual is an unaccompanied alien child;
- Health-related information including, but not limited to, if the unaccompanied alien child is pregnant or parenting and whether there are any known physical or mental health concerns. If there are significant medical concerns (i.e., the unaccompanied alien child is not fit for travel), ORR requests that the referring federal agency medically clears the child before ORR will designate placement. In its discretion, ORR may designate placement for unaccompanied alien children who are pending medical clearance;
- Whether the child has any medication or prescription information, including how many days' supply of the medication will be provided with the child when transferred into ORR custody;
- Biographical and biometric information, such as name, sex, A number, date of birth, country of birth and nationality, date(s) of entry and apprehension, place of entry and apprehension, manner of entry, and the unaccompanied alien child's current location;
- Any information concerning whether the child is a victim of trafficking or other crimes (e.g., "human trafficking indicators");
- Whether the unaccompanied alien child was apprehended or encountered with a sibling, other related unaccompanied alien child, or other adult relative;
- Identifying information and contact information for a parent, legal guardian, or other related adult providing care for the child prior to apprehension or encounter, if known;
- If the unaccompanied alien child was apprehended or encountered in transit to a final destination, what the final destination was and who the child planned to meet or live with at that destination, if known;
- Whether the unaccompanied alien child is a runaway risk, and if so, the runaway risk indicators;
- Any information on a history of violence, juvenile or criminal background, or gang involvement known or suspected, risk of danger to self or others, State court proceedings, and probation;
- If the child is being returned to ORR custody after arrest on alleged gang affiliation or involvement, ORR requests all documentation confirming whether the child is a *Saravia* class member and information on the *Saravia* hearing, including the date and time;
- Any specific individualized needs or other information that would affect the care and placement for the child.

ORR may seek clarification about the information provided by the referring agency as needed. In such instances, ORR notifies and works with the referring agency, including by requesting additional information, in accordance with statutory time frames.

In certain cases where the federal partner agencies, including but not limited to the referring federal agency, communicate with ORR that a child will likely be determined to be unaccompanied (see **Section 2.2 Sponsor Application Process**), ORR may request

additional information from the referring agency, or third-party partners, regarding the potential sponsor(s) of a child likely to enter ORR care to begin the vetting process prior to placement in an ORR care provider facility.

*Revised 02/27/2025*

## 1.3.2 ORR Placement Designation

The Division of Unaccompanied Alien Children Placement Operations (DUACPO) identifies appropriate and available bed space at a care provider, the ORR care provider facility, and/or other setting that provides care for the unaccompanied alien child, and DUACPO contacts the care provider to confirm availability. Consistent with **Section 1.4.1 Least Restrictive Setting**, ORR places each unaccompanied alien child in the least restrictive setting that is in the best interests of the child, giving consideration to the child's danger to self, danger to others, and runaway risk.

ORR attempts to identify and designate a placement for the unaccompanied alien child within 24 hours of the initial referral, whenever possible.

In cases where a child may present a danger to self or others, ORR staff use a standardized checklist (the "Intakes Placement Checklist") to input all available information on the unaccompanied alien child's history and condition.

DUACPO uses the Intakes Placement Checklist if the unaccompanied alien child has:

- A juvenile or adult criminal history, including involvement in human trafficking or smuggling;
- Prior acts of violence or imminent threats of violence in government custody;
- Pattern of severity of behavior that requires increased supervision;
- Prior run away(s) or attempt to run away(s) from government custody;
- Serious mental health or behavioral health concerns where placement into a **Residential Treatment Center (RTC)** is based upon a recommendation by a licensed psychiatrist or psychologist consulted by ORR or an ORR program;
- Committed **sexual abuse** where there is coercion by overt or implied threats of violence against another person and/or there is an immediate danger to others.

ORR may seek clarification about the information provided by the referring federal agency as needed. In such instances, ORR shall notify the referring agency and work with the referring agency, including by requesting additional information, in accordance with statutory time frames. See 8 U.S.C. 1232(b)(3).

Based on the information available, DUACPO recommends a level of care for the unaccompanied alien child. DUACPO reviews the Intakes Placement Checklist with an ORR/Federal Field Specialist (FFS) Supervisor or designated FFS. The **ORR/FFS** Supervisor or designated FFS makes a final placement decision on the level of care based on the information provided to DUACPO, and DUACPO designates the unaccompanied alien child's placement. The ORR/FFS Supervisor may decide to place a child in a restrictive facility (secure, heightened supervision, residential treatment center (RTC), or restrictive out-of-network placement) only if there is clear and convincing evidence to sufficiently support the placement and is documented in the child's case file. A finding that a child poses a danger to self must not be the sole basis for a child's placement in a secure facility (that is not an RTC) (see **Section 1.2.4 Secure and Heightened Supervision Facilities**).

For placement of an unaccompanied alien child who previously ran away from ORR care and custody, DUACPO reviews the child's previous placement history and any documentation provided by the referring agency that indicates how the child spent their time after running away from ORR care and custody if this information is provided by the referring agency. DUACPO will designate a placement for the child at the child's prior care provider if a bed is available and the placement is appropriate to the child's needs. If placement with the child's prior care provider is not available or is not appropriate, ORR may place the child at another ORR care provider in accordance with standard ORR policies and procedures. (see **Sections 1.2.1 Placement Considerations**, **1.2.2 Children with Special**

5/20/25, 11:23 AM     ORR Unaccompanied Children Bureau Policy Guide: Section 1: The Administration for Children and Families

Case 2:85-cv-04544-DMG-AGR   Document 1567-8   Filed 05/22/25   Page 13 of 28
Page ID #:52825

**Needs**, and **1.2.3 Safety Issues**). Any placement, including to the child's previous care provider, will follow standard initial referral requirements.

For placement of an unaccompanied alien child with medical or mental health issues, DUACPO may consult with the **ORR/FFS**, the Division of Health for Unaccompanied Alien Children, or an FFS Supervisor on the placement. Pursuant to **Section 3.8 Children with Disabilities in ORR Custody**, before placing a child identified as having a disability or disabilities in a restrictive placement (a secure facility, a residential treatment center, or a heightened supervision facility) the FFS Supervisor must document in the child's case file the reasons why the child's disability-related needs cannot be met in a more integrated and less restrictive setting with additional services, supports, and/or accommodations. The FFS Supervisor must also describe and document the services or care that will be provided at the restrictive placement, why they are necessary for the child, and why they cannot be provided in a less restrictive placement. The documentation must be included in the child's case file in ORR's online case management system and the Evidentiary Record.

If the child was not previously identified as having one or more disabilities, the child must be referred for an evaluation to determine whether they have a disability or disabilities at the time that the placement into a secure facility, residential treatment center, or other secure therapeutic facility is made. All documentation related to a child's referral for evaluation for a possible disability or disabilities must be included in the Evidentiary Record.

As discussed in **Section 1.4.6 Residential Treatment Center and Out-of-Network Placements**, a child with serious mental health issues may only be placed into an RTC if the child is evaluated and determined to be a danger to self or others by a licensed psychologist or psychiatrist consulted by ORR or an ORR care provider, which includes a determination by clear and convincing evidence documented in the child's case file, including documentation by a licensed psychologist or psychiatrist that placement in an RTC is appropriate.

ORR may initially place a child at an out-of-network (OON) placement (which may be restrictive or non-restrictive) subject to **Section 1.4.1 Least Restrictive Setting**, if ORR determines that:

- A child has a specific need that cannot be met within the ORR network of facilities; or
- No in-network care provider facility equipped to meet the child's needs has the capacity to accept a new placement.

ORR may place a child in an OON RTC, in particular, when a licensed clinical psychologist or psychiatrist consulted by ORR or a care provider facility has determined that the child requires a level of care only found in an OON RTC either because the child has identified needs that cannot be met within the ORR network of RTCs or no placements are available within ORR's network of RTCs, or that an OON RTC would best be able to meet the child's identified needs. The criteria for placement in an RTC also apply to placements in OON RTCs.

OON facilities and providers are generally subject to the same standards of care and service delivery as in-network providers. See further discussion of OON placements at Section 1.4.6.

*Revised 05/19/2025*

## 1.3.3 Care Provider Placement Acceptance

ORR complies with applicable Federal civil rights laws and does not discriminate on the basis of race, color, national origin, age, disability, religion, or sex (including pregnancy and sexual orientation and/or gender identity) (see **HHS Nondiscrimination Notice** ☐; see also **ORR Nondiscrimination Notice**). No ORR care provider, including foster care providers, may refuse placement of a child based solely on a child's disability.

After ORR requests a placement in a particular facility, including for an unaccompanied alien child who was previously in ORR custody and is being referred to ORR on a subsequent occasion, a care provider facility must accept the placement of **unaccompanied alien**

5/20/25, 11:23 AM
Case 2:85-cv-04544-DMG-AGR   Document 1567-8   Filed 05/22/25   Page 14 of 28
ORR Unaccompanied Alien Children Bureau Policy Guide: Section 1 | The Administration for Children and Families
Page ID #:52826

**children** as determined by ORR, and may deny placement only based on the following reasons:

1. Lack of available bed space;
2. Placement of the unaccompanied alien child would conflict with the care provider's State or local licensing rules;
3. Initial placement involves an unaccompanied alien child with a significant physical or mental illness for which the referring federal agency does not provide a medical clearance; or
4. In the case of the placement of an unaccompanied alien child with a disability, the care provider facility concludes it is unable to meet the child's disability-related needs, without fundamentally altering its program, even by providing reasonable modifications and even with additional support from ORR.

Care provider facilities are prohibited from using the existence of a report of a significant incident as a basis for refusing an unaccompanied alien child's placement in their facilities.

Care provider facilities must submit a written request to ORR for authorization to deny placement of unaccompanied alien children, providing the individualized reasons for the denial. Any such request must be approved by ORR before the care provider facility may deny a placement. The care provider's written explanation must be documented in ORR's online case management system. In cases where a care provider has not sufficiently demonstrated that their reasons for denying a placement meet the criteria established above, the denial may be referred to ORR's Care Provider Placement Acceptance Panel for review to ensure their compliance with ORR policies.

In response to a placement denial for a child with one or more disabilities, where appropriate, ORR will work to provide resources to support the child's placement, as is consistent with the requirements that the placement of a child with a disability must be in the least restrictive setting that is in their best interests and the most integrated setting appropriate to their needs.

*Revised 02/27/2025*

## 1.3.4 Transfer of Custody to ORR

The referring federal agency generally transports the **unaccompanied alien children** to the ORR care provider. ORR takes custody of the unaccompanied alien child when the child physically arrives at the designated ORR care provider.

Upon arrival, the care provider requests from the referring federal agency the unaccompanied alien child's prescriptions and medications, as applicable, personal belongings, and any necessary the U.S. Department of Homeland Security (DHS) or other federal agency documentation. If exceptional circumstances prevent the referring federal agency from providing complete documentation, the care provider may not deny or delay admitting the child. If a care provider receives a child with special concerns that were not reported in the referral, the care provider must contact ORR immediately.

*Revised 08/01/2024*

## 1.3.5 Initial Placements in the Event of an Emergency or Influx

Historically, ORR has experienced periods when the U.S. Department of Homeland Security (DHS) apprehends a significantly greater number of **unaccompanied alien children** than at other times of the year. These periodic intervals are called an "influx." In addition to an influx, a natural disaster or other emergency may prevent the prompt (within 24 hours) initial placement of unaccompanied alien children in care provider facilities.

ORR has procedures in place to make sure that care providers are available to accommodate these influx intervals and make initial placements as quickly as possible while successfully providing the range of services that ORR requires for every unaccompanied alien child.

5/20/25, 11:23 PM                    ORR 4 Unaccompanied Alien Children Bureau Policy Guide: Section 1 | The Administration for Children and Families
Case 2:85-cv-04544-DMG-AGR   Document 1567-8   Filed 05/22/25   Page 15 of 28
Page ID #:52827

ORR annually reviews its contingency plans based on the actual and anticipated number of unaccompanied alien children referrals to monitor available resources in light of expected needs.

For more information, see **Section 7.2 Placement into Influx Care Facilities**.

*Revised 08/01/2024*

## 1.3.6 *Saravia* Intakes Screening and Placement Determinations

For cases in which ORR determines that a child was previously in ORR custody and was properly referred to ORR on a second occasion, Division of Unaccompanied Alien Children Placement Operations (DUACPO) verifies the referring agency's determination of *Saravia* class eligibility.

An unaccompanied alien child is a member of the *Saravia* class if they:

1.  Were previously in ORR custody;
2.  ORR released them to a sponsor; and
3.  Were sent to ORR by a referring agency at least partially on the basis of alleged gang affiliation or involvement.

In such cases, and where the child is properly re-referred to ORR custody as an unaccompanied alien child, DUACPO verifies *Saravia* class membership and attempts to obtain documentation from the U.S. Department of Homeland Security confirming the following (while continuing with the placement process):

*   That the unaccompanied alien child was provided notice of a Saravia hearing within 48 hours of arrest;
*   That the notice included information explaining the purpose and nature of proceedings and the specific acts or conduct alleged; and
*   That the Saravia hearing either has already occurred, is scheduled to occur within 10 days of arrest by the referring agency, or that the unaccompanied alien child waived the 10-day hearing requirement in order to retain an attorney.

ORR does not delay the initial placement of possible *Saravia* class members into an appropriate ORR care provider program during the screening process (see **Section 1.3.2 ORR Placement Designation**). ORR places *Saravia* class members in the least restrictive setting that is appropriate for the individual child.

ORR does not place *Saravia* class members in a restrictive setting (e.g., heightened supervision, **secure**, **residential treatment center**) solely based on alleged gang affiliation or involvement that is the basis for *Saravia* class membership.

*Revised 08/01/2024*

# 1.4 Transfers within the ORR Care Provider Network

Because an **unaccompanied alien child**'s placement needs can change, the care provider must conduct ongoing assessments of children's needs throughout the child's stay in ORR custody. Care providers also take into consideration information from the referring federal agency, child assessment tools, interviews, location of the child's sponsor or family in the U.S., records from local, State, and federal agencies, and information from stakeholders, including the child's legal service provider, attorney of record or Child Advocate, as applicable, when making transfer recommendations.

The care provider facility continuously assesses unaccompanied alien children in their care to review whether the children's placements are appropriate. An unaccompanied alien child must be placed in the least restrictive setting that is in the best interests of

the child, subject to considerations regarding danger to self or the community and runaway risk. Care provider facilities must follow ORR guidance, including guidance regarding placement considerations, when making transfer recommendations.

If the care provider facility identifies an alternate placement for the unaccompanied alien child that would best meet the child's needs, the care provider facility makes a transfer recommendation to ORR for approval within three (3) business days of identifying the need for a transfer and immediately in urgent situations.

The care provider facility ensures the unaccompanied alien child is medically cleared for transfer within three (3) business days of ORR identifying the need for a transfer, unless otherwise waived by ORR. For an unaccompanied alien child with acute or chronic medical conditions or seeking medical services requiring heightened ORR involvement, the appropriate care provider facility staff and ORR meet to review the transfer recommendation. If a child is not medically cleared for transfer within three (3) business days, the care provider facility notifies ORR, and ORR reviews and determines if the child is fit for travel. If ORR determines the child is not fit for travel, ORR notifies the care provider facility of the denial and specifies a timeframe for the care provider facility to re-evaluate the child for transfer.

Consistent with **Section 1.4.1 Least Restrictive Setting,** ORR places each unaccompanied alien child in the least restrictive setting that is in the best interests of the child, giving consideration to the child's danger to self, danger to others, and runaway risk. If an alternate placement would better meet the child's individual needs, care providers must make transfer recommendations upon identification of the need for a transfer.

Pursuant to **Section 3.8 Children with Disabilities in ORR Custody**, before placing a child with a disability in restrictive placement (a secure facility, a residential treatment center (RTC), or a heightened supervision facility) the FFS Supervisor must document in the child's **Individualized Section 504 Service Plan** why the child's needs cannot be met in a more integrated and less restrictive setting with additional services, supports, and/or accommodations. The FFS Supervisor must also describe and document the services or care that will be provided at the restrictive placement, why they are necessary for the child, and why they cannot be provided in a less restrictive placement. All documentation related to a child's disability or disabilities must be included in the child's case file in ORR's online case management system and the Evidentiary Record.

Before placing a child in a secure facility or an RTC based on danger to self or others, if the child was not previously identified as having a disability, the child must be referred for an evaluation to determine whether they have a disability when the placement into a secure facility or RTC is made. All documentation related to a child's referral for evaluation for a possible disability or disabilities must be included in the Evidentiary Record.

The **Case Coordinator** identifies the most appropriate care provider facility based upon the individual's needs and the bed capacity within the ORR network.

ORR has final authority on transfer decisions. The ORR/Federal Field Specialist (ORR/FFS) act as agents of ORR and make transfer decisions. Once the FFS approves a transfer request, the referring and receiving care providers coordinate logistics, including the transfer date (generally within three (3) days). The referring care provider facility notifies all designated stakeholders of the transfer (for example, the child's attorney).

Within 48 hours prior to the unaccompanied alien child's physical transfer, the referring care provider facility notifies all appropriate interested parties of the transfer, including the child's attorney of record or a U.S. Department of Justice Accredited Representative, legal service provider, or child advocate, as applicable. However, such advance notice is not required in unusual and compelling circumstances, such as the following cases in which notices are provided within 24 hours following transfer:

- Where the safety of the unaccompanied alien child or others has been threatened;
- Where the unaccompanied alien child has been determined to be a runaway risk (See **Section 1.2.5 Unaccompanied Alien Children Who Pose a Risk of Running Away**);
- Where the interested party has waived such notice.

The unaccompanied alien child is transferred with the child's possessions and legal papers, including, but not limited to:

- Personal belongings;
- Transfer request and tracking forms;
- 30-day medication supply, if applicable;
- All health records; and
- Original documents (including birth certificates).

If the unaccompanied alien child's possessions exceed the amount permitted normally by the carrier in use, the care provider ships the possessions to a subsequent placement of the unaccompanied alien child in a timely manner.

*Revised 08/01/2024*

## 1.4.1 Least Restrictive Setting

Care providers must continuously assess unaccompanied alien children in their care to review whether the children's placements are appropriate. An unaccompanied alien child must be placed in the least restrictive setting that is in the best interests of the child and appropriate to the child's age and individualized needs, subject to considerations regarding danger to self or the community and/or the risk of running away. For children who are initially placed in a least restrictive setting, care providers must provide support services and effective interventions, when appropriate, to help keep a child in the setting.

If a child is placed in a restrictive setting, care providers provide services to facilitate the **unaccompanied alien child**'s successful transfer to a less restrictive setting to allow the child to move when they are ready.

A child may not be placed in a secure facility (that is not an RTC) if less restrictive alternatives in the best interests of the child are available and appropriate under the circumstances. A child may be placed in a heightened supervision facility or other non-secure care provider facility as an alternative, provided that the child does not currently pose a danger to others and does not meet criteria for placement in an RTC.

For children with one or more disabilities, in particular, care providers must provide services, supports, and/or accommodations to enable them to be placed in the least restrictive setting in their best interests and the most integrated setting appropriate to their needs. If a care provider believes they are unable to meet the needs of a specific child with one or more disabilities, the care provider must identify any additional resources that ORR may offer to assist in meeting the child's disability-related needs.

Before seeking to step-up or transfer a child with one or more disabilities to a more restrictive facility, the current care provider must document in the child's case file and the child's Individualized Section 504 Plan, their efforts to meet the child's disability-related needs, and the reasons why the care provider is unable to meet the child's disability-related needs. The care provider must also document why it cannot meet the child's needs in their current placement or a more integrated and less restrictive setting with additional services, supports, and/or accommodations provided by ORR. This documentation must be included in the Individualized Section 504 Service Plan and the Evidentiary Record.

For a child with one or more disabilities who is initially placed in or is continuing placement in a restrictive setting, the care provider receiving the child must document their plan for meeting the child's disability-related needs in the Individualized Section 504 Service Plan and the Summary of the *Notice of Placement in a Restrictive Setting*. This documentation should include a description of the services or care that will be provided, why they are necessary for the child, and why they cannot be provided in a less restrictive placement.

When recommending a child currently in a restrictive placement (i.e., heightened supervision) for possible step-up to a more restrictive setting (i.e., secure or RTC), the current care provider must document their efforts to meet the child's disability-related needs. This documentation should be included in the Individualized Section 504 Service Plan and the Evidentiary Record.

5/20/25, 11:23 AM    ORR 4 Unaccompanied Children Program Policy Guide: Section 1 | The Administration for Children and Families

Case 2:85-cv-04544-DMG-AGR    Document 1567-8    Filed 05/22/25    Page 18 of 28
Page ID #:52830
*Revised 08/01/2024*

## 1.4.2 30–Day Restrictive Placement Case Review

At the time of referral, the ORR Division of Unaccompanied Alien Children Placements, in collaboration with an ORR/Federal Field Specialist (FFS) Supervisor, uses a standardized Intakes Placement Checklist to determine the initial placement of an unaccompanied alien child with a juvenile or criminal background, violent offenses, serious behavioral concerns, and/or potential for running away (see **Section 1.3.2 ORR Placement Designation**). The ORR/FFS Supervisor may only decide to place a child in a restrictive facility if clear and convincing evidence supports the placement (see **Section 1.2.4 Secure and Heightened Supervision Facilities**).

At a minimum of every 30 days, the care provider staff, in collaboration with the **Case Coordinator** and the ORR/FFS, review the placement of a child in a secure, heightened supervision, residential treatment center (RTC), or restrictive out-of-network facility (OON) to determine whether a less restrictive level of care is more appropriate. The ORR/FFS may review the placement earlier than 30 days, particularly if new information indicates an alternative placement is more appropriate. If the decision is to continue the child's restrictive placement, the decision must be supported by clear and convincing evidence that continuing the restrictive placement is required for the safety of the child or others. Care provider staff must document the basis for continued placement in a secure, heightened supervision, RTC, or OON restrictive facility in the child's case file and provide a copy of the *Notice of Placement in a Restrictive Setti*ng (NOP) form to the child and their attorney of record. The program must also automatically provide a copy of the NOP to the child's parent(s) unless certain exceptions are documented (see **Section 1.2.4**). A copy must be provided to the Child Advocate upon request.

For children with identified disabilities in restrictive placements, the 30-day placement review will include and document consideration of the child's disability (or disabilities), the services, supports and/or accommodations needed to meet the child's needs, and whether those services and supports could be provided safely in a less restrictive placement. If the 30-day placement review does not recommend step-down, ORR will document why the child's needs cannot be met in a more integrated and less restrictive setting with additional services, supports, and/or accommodations. For all children placed in an RTC, the 30-day placement review will also include the written recommendation from the treating licensed psychiatrist or psychologist whether to continue the child's RTC placement. If the child has one or more disabilities, the licensed psychiatrist or psychologist's written recommendation will also discuss whether the child cannot be safely stepped down to a less restrictive setting. During the 30-day placement review, the case manager must update the child's Individualized Section 504 Service Plan to indicate the services implemented to support the child's disability-related needs in accordance with **Section 3.8.3 Individualized Section 504 Service Plan**.

The FFS will consult with Supervisory ORR staff for children who have resided in a secure or RTC care facility (including an OON RTC facility) for over 90 days. The FFS consults with Supervisory ORR staff regarding the placement every 30 days thereafter until the child is stepped down or **discharged**. A child may only remain in an in-network RTC or OON RTC placement if a licensed psychiatrist or psychologist, consulted by ORR or an ORR program, has determined that they are a danger to self or others (see **Section 1.4.6. Residential Treatment Center and Out-of-Network Placements**).

An unaccompanied alien child does not require a review of a secure, heightened supervision, in-network RTC, or OON RTC placement if the child is in custody for less than one month from the date of the initial placement designation to the date of the child's 18th birthday. Children who are in ORR care less than 30 days do not require a review of their placement.

**Step-ups and Step-downs**

Step-ups and step-downs refer to transfers to a more restrictive level of care or to a less restrictive level of care, respectively.

Step-ups may occur when a more restrictive level of care is needed for the safety of the child or others. The care provider Case Manager, Case Coordinator, and ORR/FFS staff the case to determine whether the child's behavior, criminal history, or self-disclosures require placement in a more restrictive environment, using the factors identified in **Section 1.2.4**. The ORR/FFS must only decide to

5/20/25, 11:23 PM    ORR 4 Unaccompanied Alien Children Bureau Policy Guide: Section 1 | The Administration for Children and Families

Case 2:85-cv-04544-DMG-AGR    Document 1567-8    Filed 05/22/25    Page 19 of 28
Page ID #:52831

place a child in a restrictive facility if clear and convincing evidence supports the placement. The evidence relied upon by the ORR/FFS must be documented in the Evidentiary Record that is uploaded to the child's case file in ORR's online case management system.

Pursuant to **Section 3.8 Children with Disabilities in ORR Custody**, before placing a child with one or more disabilities in a restrictive placement (a secure facility, RTC, heightened supervision facility, or OON restrictive facility), the care provider must document in the child's case file the reasons why the child's needs cannot be met in a more integrated and less restrictive setting with additional services, supports, and/or accommodations. An integrated setting is one where children with disabilities can interact with children without disabilities to the fullest extent possible. The care provider must also describe and document the services or care that will be provided at the restrictive placement, why they are necessary for the child, and why they cannot be provided in a less restrictive placement. All documentation related to a child's disability or disabilities must be included in the Evidentiary Record and the Individualized Section 504 Service Plan.

If a child is being considered for placement into an RTC or secure facility based on danger to self or danger to others and the child was not previously identified as having a disability, the child must be referred for an evaluation to determine whether they have one or more disabilities. All documentation related to a child's referral for evaluation for a possible disability or disabilities must be included in the Evidentiary Record.

The child may be transferred while awaiting the evaluation, but the referral must occur before the transfer is requested. The placement of the child need not be delayed, however, pending the results of the evaluation.

If a child self-discloses criminal or violent history to other children in care or to care provider staff, ORR investigates the veracity of the claim with the assistance of the care provider. ORR may contact federal, state, and local law enforcement to determine the veracity of the self-disclosed criminal history and request assistance in contacting foreign law enforcement agencies where alleged crimes or incidents took place outside of the United States. ORR may also work with mental health professionals and other specialists as appropriate to determine whether the child's claims are credible.

When a child is stepped up to a restrictive setting (secure, heightened supervision, RTC, or restrictive OON facility), the child must be provided with an NOP in a language that the child understands within 48 hours of admission. The NOP must be automatically provided to the child's attorney, if they have one, within 48 hours of admission to the restrictive facility, and to their parent unless certain exceptions are met (see **Section 1.2.4**).

Step-downs occur when ORR determines there is no longer clear and convincing evidence that the child poses a danger to self or others, or no longer presents a runaway risk (for heightened supervision step downs only). ORR also takes into consideration the independent hearing officer's decision in a risk determination hearing about the child's level of danger when assessing the child's placement and conditions of placement. In making a step-down decision, ORR considers criteria identified in making a restrictive placement and takes into consideration any mitigating factors based on an assessment of the child's current functioning and behavior, previous conduct, self-disclosures, and criminal/delinquent history. The care provider documents the underlying assessment used to make this determination in the child's case file, and through the NOP form if the child is stepped down to a heightened supervision facility.

Unaccompanied alien children placed in a secure facility (including an RTC) are not automatically stepped down to a heightened supervision facility. Rather, ORR evaluates the child's case and steps the child down to the least restrictive setting that is in the best interest of the child and meets their individual needs, which may be a heightened supervision facility or a non-restrictive level of care (such as a shelter).

Unaccompanied alien children determined to have committed sexual abuse, where there is coercion by overt or implied threats of violence against another person and/or there is an immediate danger to others, may not be stepped down below heightened supervision unless the ORR/FFS and the receiving care provider can document specific steps to protect other unaccompanied alien children, staff, and the community.

If the care provider and ORR/FFS determine that step down to a non-restrictive level of care (such as an **ORR shelter**) is appropriate, the care provider must use the ORR process for transferring the child to another care provider. The care provider must notify the U.S. Department of Homeland Security (DHS), the child's attorney of record, legal service provider, and/or child advocate within a reasonable period of time, and, if applicable, apply for a change of address for a timely and safe transport.

The existence of a report of a significant incident must not be used as a basis for an unaccompanied alien child's step-up to a restrictive placement or as the sole basis for a refusal to step a child down to a less restrictive placement. Reports of significant incidents may be used as examples or citations of concerning behavior. However, the existence of a report itself is not sufficient for a step-up or a refusal to step-down.

For an unaccompanied alien child with one or more disabilities, consistent with section 504 of the Rehabilitation Act, 29 U.S.C. 794(a), ORR's determination whether to place an unaccompanied alien child in a restrictive placement must include consideration whether there are any reasonable modifications to the policies, practices, or procedures of an available less restrictive placement or any provision of auxiliary aids and services that would allow the unaccompanied alien child to be placed in that less restrictive facility. ORR's consideration of reasonable modifications and auxiliary aids and services to facilitate less restrictive placement must also apply to transfer decisions and will be incorporated into restrictive placement case reviews.

*Revised 05/19/2025*


## 1.4.3 Long Term Care

In some cases, **unaccompanied alien children** stay in ORR custody for four (4) months or more. ORR considers a stay of four (4) months or longer to be an "extended stay" case. Extended stay cases generally occur when the child has no identified sponsor and:

- A legal service provider or attorney has screened the child as eligible for immigration relief; or
- Another reason prevents return of the unaccompanied alien child to the home country, such as the child's country of origin is in a state of emergency, indicating that the child will likely not be repatriated for an extended period of time.

If there is an indication that an unaccompanied alien child may fall into this extended stay category, the care provider makes a recommendation to ORR regarding long-term care placement. Care providers try to minimize the number of transfers for a child in order to facilitate continuity of relationships with caregivers.

Care providers continue to assess a child placed in long-term foster care to ensure that best efforts are being made to move the unaccompanied alien child toward release from ORR custody into a more permanent arrangement.

*Revised 08/01/2024*


## 1.4.4 Transfer to Long-Term Foster Care

Prior to a transfer to long-term foster care (LTFC), care providers must notify all stakeholders such as legal service providers (LSPs), attorneys of record, child advocates, and family members. The referring care provider requests from the LSP a recommendation of preferred locations for placement for the child at least 14 calendar days prior to initiating the Transfer Request process. The LSP meets with the child within 10 business days of the referring care provider's request to prepare the preferred locations recommendation following **Section 1.2.6 Long-Term Foster Care**. The LSP's recommendation must be based on the child's potential for immigration relief, type of immigration relief, and status of court hearings or relief petitions. The LSP must complete the recommendation within 14 calendar days of the initial notification from the **case manager** that the child is being considered for transfer to LTFC. In the event the child does not consent to the LSP using children's information to submit an LSP recommendation to ORR for transfer, the LSP would inform the requesting care provider that the child has not consented.

5/20/25, 11:23 AM    Case 2:85-cv-04544-DMG-AGR    Unaccompanied Children Bureau Policy Guide: Section 1 | The Administration for Children and Families

Case 2:85-cv-04544-DMG-AGR    Document 1567-3    Filed 05/22/25    Page 21 of 28
Page ID #:52833

The case manager and case coordinator (and other ORR staff, if possible) review the LSP's recommendation to inform the child's transfer placement location and makes referrals to LTFC providers. The LSP's recommendation is one factor ORR considers in making the placement determination for the child (see **Section 1.2.6**). When possible, taking into consideration the placement factors in **Section 1.2.6**, ORR will make a best effort to place the child in a location where their immigration case is best served. If the locations included in the LSP's recommendation are not available, a Child Advocate referral must be made (see **Section 2.3.4 Child Advocates**). Additionally, the case must be staffed with the ORR/Federal Field Specialist (ORR/FFS) to determine whether to proceed with the LTFC transfer and to determine the placement option that is in the child's best interests.

Reviewing LTFC providers have 14 calendar days from receipt of the LTFC referral to accept the referral or notify ORR of a need for an extension to identify whether they can accept the referral. After a receiving LTFC provider accepts the referral, the receiving LTFC provider immediately informs the child's LSP to ensure arrangements are made for legal services, including representation, when possible, for the child in the new jurisdiction. The transfer process may proceed while the LSP arranges for legal services for the child.

*Revised 01/16/2025*

## 1.4.5 Group Transfers

Group transfers (the **transfer** of more than one (1) unaccompanied alien child at a time) may occur because of changes in a **care provider's** bed capacity, through changes in program requirements that would eliminate a care provider from the list of approved facilities, or through an **emergency** event or natural disaster. ORR tries to minimize the number of transfers resulting from bed capacity limitations. ORR considers the circumstances of the individual unaccompanied alien child's case, including the progress of the sponsorship effort and the status of the legal case, when identifying children for group transfers. For group transfers, the care provider facility follows ORR guidance for transfers in **Section 1.4 Transfers within the ORR Care Provider Network**.

*Revised 08/01/2024*

## 1.4.6 Residential Treatment Center and Out-of-Network Placements

### Residential Treatment Center Placements

An **unaccompanied alien child** with serious mental health or behavioral health issues may only be placed into a **residential treatment center** (RTC) if the child is evaluated and determined to be a danger to self or others by a licensed psychologist or psychiatrist, consulted by ORR or an ORR funded care provider, which includes a determination by clear and convincing evidence documented in the child's case file, including documentation by a licensed psychologist or psychiatrist that placement in an RTC is appropriate.

**Care providers** request a transfer to an RTC for an unaccompanied alien child with serious mental health or behavioral health issues as is consistent with the requirements above for placing a child in an RTC. The care provider facility must review the placement of a child in an RTC every 30 days (see **Section 1.4.2 30-Day Restrictive Placement Case Review**).

### Out-of-Network Placements

ORR may place a child at an out-of-network (OON) placement (which may be restrictive or non-restrictive), subject to **Section 1.4.1 Least Restrictive Setting**, under certain limited circumstances, such as an OON RTC or a temporary stay at hospital (for example, for surgery).

Unaccompanied alien children are separated from delinquent offenders in OON placements (except those unaccompanied alien children who meet the requirements for a secure facility placement in **Section 1.2.4 Secure and Heightened Supervision Facilities** or an RTC placement).

Subject to the note below, children placed in an OON facility will generally receive or have arranged the services established under **Section 3.3 Care Provider Required Services**.

The ORR **Case Manager** who is assigned to a child placed in an OON facility will administer the case management services outlined in **Section 2.3.2 Case Managers**. The Case Manager maintains weekly contact with the child's out-of-network provider to ensure the Case Manager and ORR/FFS are receiving weekly updates on the child's progress. The Case Manager provides updates to the **attorney of record** according to **Section 5.10.3 Information Sharing with LSPs, Attorneys of Record, and Child Advocates**.

Additionally, ORR shall require OON placements to develop behavior management strategies that include evidence-based, trauma-informed, and linguistically responsive program rules and behavior management policies that take into consideration the range of ages and maturity in the OON placement and that are culturally sensitive to the needs of each unaccompanied alien child (see **Section 3.3.13 Behavior Management**). ORR shall require OON placements to not use any practices that involve negative reinforcement or involve consequences or measures that are not constructive and are not logically related to the behavior being regulated. OON placements shall not:

- Use or threaten use of corporal punishment, significant incident reports as punishment, unfavorable consequences related to sponsor unification or legal matters (e.g., immigration, asylum); use forced chores or work that serves no purpose except to demean or humiliate the child; forced physical movement, such as push-ups and running, or uncomfortable physical positions as a form of punishment or humiliation; search an unaccompanied alien child's personal belongings solely for the purpose of behavior management; apply medical interventions that are not prescribed by a medical provider acting within the usual course of professional practice for a medical diagnosis or that increase risk of harm to the unaccompanied alien child or others; and

- Use any sanctions employed in relation to an individual unaccompanied alien child that adversely affect an unaccompanied alien child's health, or physical, emotional, or psychological well-being; or deny unaccompanied alien children meals, hydration, sufficient sleep, routine personal grooming activities, exercise (including daily outdoor activity), medical care, correspondence or communication privileges, religious observation and services, or legal assistance.

Due to the operational realities of working with OON facilities, if the OON placement is unable to provide the required services to a child, see generally Section 3.3, ORR will coordinate with the in-network care provider facility to provide the services to the child if feasible, or if the in-network facility is unable to provide the services, ORR may itself arrange for the services to the child.

However, there may be circumstances in which arranging for or providing a particular service is not practicable but placement in a specialized facility is still in an individual child's best interest. In such cases, ORR will consult with independent experts, including health care providers, to determine the extent to which the minimum services may be provided for or arranged. ORR will document the actions taken with respect to required services, including any deviations from services that are required under Section 3.3 along with the underlying reasons for the deviation and why the OON placement is in the best interest of the child.

For children with identified disabilities who have an Individualized Section 504 Service Plan developed pursuant to Section 3.8, ORR will ensure that the services, supports, and reasonable accommodations and modifications responsive to the child's disability-related needs, which are specified in the child's Individualized Section 504 Service Plan, are provided at the OON placement.

In general, ORR does not place an unaccompanied alien child at an OON facility if it determines that a service which is required for the child's best interests, including appropriate behavior management standards, cannot be provided at the facility.

OON RTCs must apply the same standards and criteria for transfer or placement into an in-network RTC. ORR may transfer a child to an OON RTC facility under the following conditions:

- A licensed clinical psychologist or psychiatrist consulted by ORR or an ORR-care provider facility has determined that the child requires a level of care only found in an OON RTC, or that an OON RTC facility would best meet the child's identified

5/20/25, 11:23 AM    ORR 4 Unaccompanied Children Bureau Policy Guide: Section 1 US Administration for Children and Families

Case 2:85-cv-04544-DMG-AGR    Document 1567-8    Filed 05/22/25    Page 23 of 28
Page ID #:52835

needs;

- The current ORR care provider has fully explored placement in ORR care provider facilities, upon recommendation by the licensed clinical psychologist or psychiatrist consulted by ORR, but the child's needs exceed the current capability of the ORR care provider facilities with open bed space; and
- The ORR Federal Field Specialist (FFS) Supervisor has confirmed that recommended placements have been exhausted and that the child continues to need a level of care that can only be provided in an OON RTC facility.

Once it is determined that an OON placement is in the **best interests** of the child and can meet the child's individualized, specialized needs and prior to the physical transfer of the child to the OON facility, the permanent care provider must notify the child's attorney. While the child will be physically located at an OON facility, the child will remain on the roster of the in-network facility and an ORR/FFS will monitor the child's progress and ensure the child is receiving required services.

Where the child is being transferred to an OON restrictive setting, the child is notified at the time of transfer that they are being transferred to the OON facility. The child, along with their attorney, is provided with a **Notice of Placement in a Restrictive Setting (NOP)** within 48-hours of being admitted to the OON **restrictive placement** (see **Section 1.4.2**). The child's parent and/or **legal guardian** is also provided a copy of the NOP unless the situation meets the parental notification exceptions in **Section 1.2.4**.

The child's placement will be reviewed by care provider staff, in collaboration with the **Case Coordinator** and the **ORR/FFS**, at minimum of every 30 days to determine whether a less restrictive level of care is more appropriate. (See **Section 1.4.2**). The child has the right to request reconsideration of their placement prior to the 30-day review via the procedures outlined in **Section 1.4.7 Requesting Reconsideration of a Secure or RTC Placement Designation**.

OON providers are vetted prior to placement via state licensing authorities to ensure the program is in good standing and is complying with all applicable state welfare laws and regulations and state and local building, fire, health, and safety codes.

*Revised 05/19/2025*

## 1.4.7 Requesting Reconsideration of a Restrictive Placement

**Unaccompanied Alien Children** placed in a restrictive placement, including a secure facility, a heightened supervision facility, a **residential treatment center** (RTC), or a restrictive **out-of-network (OON) facility** can seek reconsideration of their **placement** through the **Placement Review Panel (PRP).** Children are notified upon receipt of their initial *Notice of Placement in a Restrictive Setting* **(NOP)** that they may request reconsideration immediately or anytime during their placement in a restrictive placement. Children are informed of the procedures for requesting a PRP during their review of their NOP.

The PRP is a three-member panel consisting of ORR's senior-level career staff with requisite experience in child welfare, including restorative justice, adverse childhood experiences, special populations, and/or mental health. Panel members serving on a PRP for an individual child must not have been involved in the initial decision to place the child in a restrictive placement. Once they have served on a child's PRP, panel members may not serve again on that child's PRP for another evaluation of that child's continued placement in a restrictive setting.

The child can request placement reconsideration by either notifying the **case manager** or by instructing their representative (attorney or **child advocate**) to request a panel review. Where the child does not have an attorney, ORR must encourage the care provider facility to seek assistance for the child from a contracted legal service provider or child advocate. The **care provider** or child's representative requests the panel review by emailing **UACHearings@acf.hhs.gov**.

The child can seek review of their placement by either of the following:

- Panel consideration of written documents only; or
- Panel consideration of written documents and a live hearing before the panel.

ORR must permit the child or the child's counsel to review the evidence in support of step-up or continued restrictive placement and any countervailing or otherwise unfavorable evidence within a reasonable time before the PRP review is conducted. ORR must also share the child's complete case file apart from any legally required redactions with their counsel within a reasonable timeframe to be established by ORR to assist in the legal representation of the child.

ORR must convene the PRP within seven (7) days of an unaccompanied alien child's request for a hearing. ORR may institute procedures to request clarification or additional evidence if warranted, or to extend the seven (7)-day deadline as necessary under specified circumstances.

Only written documents provided for evidence at the time of the request for a PRP and the written statement provided by the child and/or their representative will be considered by the panel in making the recommendation. ORR carries the burden of demonstrating by **clear and convincing evidence** that sufficient grounds exist for the **restrictive placement**. Clear and convincing means the conclusion is highly and substantially more likely to be true than untrue. Here, this means that the panel must demonstrate that the available evidence and facts make it highly and substantially more likely than not that placement in the proposed setting is appropriate. The panel's review considers whether the evidence supporting the most recently issued NOP decision sufficiently demonstrates that the child is a danger to self or others and continues to meet the criteria as stated on the NOP. Should the child opt to have a hearing, the child, or their representative, may call live witnesses or cross-examine ORR's witnesses. However, such witnesses must appear voluntarily as the PRP cannot compel witnesses to attend hearings or provide testimony. At the PRP hearing, a child must be provided access to interpretation services in their native or preferred language, depending on the child's preference and in a way that they effectively understand.

The panel makes one of the following decisions:

- Affirm the NOP decision to continue the current placement;
- Remand the matter to the FFS for further consideration based on the panel's recommendations; or
- Reverse the NOP decision with instructions for the **transfer** of the child to another facility.

The PRP's decision, which must be in writing and in the child's native or preferred language, is final. However, a child who receives an adverse decision by a PRP can initiate a new request upon receipt of a new NOP that continues their current placement or transfer to another restrictive facility. The PRP must issue its written decision within seven (7) days of a hearing and submission of evidence or, if no hearing or review of additional evidence is requested, within seven (7) days following receipt of an unaccompanied alien child's written statement. ORR may institute procedures to request clarification or additional evidence if warranted, or to extend the seven (7)-day deadline as necessary under specified circumstances.

*Revised 08/01/2024*

## 1.4.8 Transfers for *Saravia* Class Members

For a *Saravia* class member (see **Section 1.3.6 *Saravia* Intakes Screening and Placement Determinations** for a definition of class membership) who does not prevail in his or her *Saravia* hearing — meaning an immigration judge has ruled that the child is a danger to self or others and/or a flight risk and must remain in ORR care and custody — ORR follows its standard policies and procedures for **transfer** of the **unaccompanied alien child** (see **Section 1.4 Transfers within the ORR Care Provider Network**).

Conversely, if a *Saravia* class member returns to ORR custody after having prevailed at his or her *Saravia* hearing, the unaccompanied alien child is placed in a **shelter** if there is a shelter where the **care provider** is willing and able to accept the child. If the unaccompanied alien child was in ORR custody in a restrictive setting (i.e., secure facility, including residential treatment center, or heightened supervision) prior to prevailing at the *Saravia* hearing and cannot be released to the child's prior sponsor (see **Section 2.8.7 Release of Saravia Class Members**), the child must be transferred to a shelter facility if there is such a facility able and willing to accept the child.

Case 2:85-cv-04544-DMG-AGR    Document 1567-8    Filed 05/23/25    Page 25 of 28
Page ID #:52837

Likewise, for a *Saravia* class member who prevailed at their *Saravia* hearings, ORR does not use the previous allegations of gang affiliation or involvement that led to the arrest by a federal agency as the basis for **placement** in a restrictive setting, or to delay release (see **Section 2.8.7**).

*Revised 08/01/2024*

# 1.5 Placement Inquiries

Individuals looking for an **unaccompanied alien child** who may be in ORR custody may contact the **ORR National Call Center**, **at 1 (800) 203-7001**, and leave a message that includes the unaccompanied alien child's information, caller's name, contact information, and relationship to the child. (This hotline is operated by an ORR grantee.)

*Revised 9/06/2016*

## 1.5.1 ORR National Call Center

The ORR National Call Center staff reviews the information to see if the unaccompanied alien child is currently in ORR custody. The call center staff contacts the caller and notifies them whether or not the child is in ORR custody, taking safety issues into consideration, as described below.[5]

If the unaccompanied alien child is in ORR custody, the call center staff does not provide information to the caller regarding where the child is located or with which **care provider** until communication is deemed safe and appropriate.

The steps in the process include:

- The call center staff notifies the corresponding care provider with the caller's name, contact information, and relationship to the unaccompanied alien child.
- The care provider determines whether the individual is a safe and approved contact. As deemed appropriate and following ORR's procedures, the care provider may facilitate communication between the caller and the unaccompanied alien child.
- The care provider contacts the individual and informs them that the unaccompanied alien child is safe and in ORR custody.

*Revised 01/13/2025*

# 1.6 Determining the Age of an Individual without Lawful Immigration Status

The **Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA)** (PDF) instructs the U.S. Department of Health and Human Services (HHS) to devise age determination procedures for individuals without lawful immigration status in consultation with the U.S. Department of Homeland Security (DHS). ***To carry out the TVPRA provision, HHS and DHS worked jointly to develop the age determination policies and procedures in this section.***

Typically, DHS is the agency that apprehends individuals without lawful immigration status, including unaccompanied alien child, while HHS is the agency responsible for the care and custody of children transferred to its care. HHS authority to provide care and custody applies only to individuals who have not attained 18 years of age. To meet the definition of an unaccompanied alien child and remain in ORR custody, an individual must be under 18 years of age.

5/20/25, 11:23 AM    ORR 1.6 Unaccompanied Alien Children Bureau Policy Guide: Section 1 DHS Administration for Children and Families

Case 2:85-cv-04544-DMG-AGR   Document 1567-8   Filed 05/22/25   Page 26 of 28
Page ID #:52838

Each agency acknowledges the challenges in determining the age of individuals in custody. These challenges include, but are not limited to:

- Unavailable documentation;
- Contradictory or fraudulent identity documentation and/or statements;
- Physical appearance of the individual; and
- Diminished capacity of the individual.

The TVPRA requires the age determination procedures, at a minimum, to take into account multiple forms of evidence. Accordingly, under these procedures, each case must be evaluated carefully based on the totality of all available evidence, including the statement of the individual in question.

*Revised 08/01/2024*

## 1.6.1 Unaccompanied Alien Children in HHS Custody

The U.S. Department of Health and Human Services (HHS) may make age determinations of an unaccompanied alien child when they are in HHS custody if there is a reasonable suspicion that a child is 18 years or older. If ORR reasonably concludes that an individual is an adult, despite the individual's claim to be under the age of 18, ORR treats such person as an adult for all purposes.

In the event there is conflicting evidence regarding the age of an unaccompanied alien child in HHS custody, the HHS funded care provider case worker must immediately notify the ORR/Federal Field Specialist (FFS). The FFS will make the age determination based on their review of the multiple forms of evidence collected by the care provider. Until the age determination is made, the unaccompanied alien child is entitled to all services provided to unaccompanied alien children in HHS care and custody.

There may be occasions when an unaccompanied alien child's age is questioned at the time of admission to an HHS funded care provider facility during the intakes process. In those cases, the case manager does not complete the intakes process, but consults with the HHS FFS to make the age determination.

*Revised 08/01/2024*

## 1.6.2 Instructions for Age Determinations

Procedures for determining the age of an individual must take into account the totality of the circumstances and evidence, including the non-exclusive use of radiographs, to determine the age of the individual. ORR may require an individual in ORR custody to submit to a medical or dental examination, including X-rays, conducted by a medical professional or to submit to other appropriate procedures to verify their age. If ORR subsequently determines that such an individual is an unaccompanied alien child, the individual will be treated in accordance with ORR's UAC Bureau regulations.

ORR considers multiple forms of evidence in making age determinations, and determinations are made based upon a totality of evidence. ORR may consider information or documentation to make an age determination, including but not limited to:

1. Documentation:
   - Official government-issued documents, including birth certificates. If there is no original birth certificate, certified copy, photocopy or facsimile copy of a birth certificate acceptable to ORR, ORR consults with the consulate or embassy of the individual's country of birth to verify the validity of the birth certificate presented.
   - Authentic government-issued documents issued to the bearer.
   - Other documentation, such as baptismal certificates, school records, and medical records, that indicate the unaccompanied alien child's date of birth.

5/20/25, 11:23 PM                          ORR 4 Unaccompanied Alien Children Bureau Policy Guide: Section 1 | US Administration for Children and Families

Case 2:85-cv-04544-DMG-AGR   Document 1567-8   Filed 05/22/25   Page 27 of 28
Page ID #:52839

2.  Statements by individuals (including the unaccompanied alien child) determined to have personal knowledge of the unaccompanied alien child's age and who HHS concludes can credibly attest to the age of the unaccompanied alien child:

    - Statements provided by the unaccompanied alien child regarding their age or birth date. (An unaccompanied alien child's uncorroborated declaration regarding age is not used as the sole basis for an age determination.)
    - Sworn affidavits from parents or other relatives as to the individual's age or birth date, if such persons can be identified and contacted.
    - Statements from parents or **legal guardians**
    - Statements from other persons apprehended with the individual.
    - Statements from other persons.
    - Information from another government agency (Federal, State, local or foreign)
    - State/local arrest records.
    - Child welfare agency records.

3.  Medical Age Assessments:

Medical Age Assessments include both the use of imaging technology, such as radiography, and physical examinations.

Regarding these assessments:

- Medical age assessments should not be used as a sole determining factor but only in concert with other factors.
- A medical professional experienced in age assessment method(s) must perform the examination, taking into account the individual's ethnic and genetic background.
- Dental maturity assessments using radiographs may be used to determine age, but only in conjunction with other evidence.
- As no current medical assessment method can determine an exact age, best practice relies on the estimated probability that an individual is 18 or older. The examining doctor must submit a written report indicating the probability percentage that the individual is a child or an adult.
- The **ORR/Federal Field Specialist (FFS)** supervisor must review the determination regarding the age submitted by the examining doctor.
- If an individual's estimated probability of being 18 or older is 75 percent or greater according to a medical age assessment, and this evidence has been considered in conjunction with the totality of the evidence, ORR must determine that the individual is 18 years or older and may refer the individual to the U.S. Department of Homeland Security (**DHS**). The 75 percent probability threshold applies to all medical methods and approaches identified by the medical community as appropriate methods for assessing age.
- Ambiguous, debatable, or borderline forensic examination results are resolved in favor of finding the individual is a child.

The FFS compiles all pertinent information (e.g., how reasonable suspicion was raised that the subject is over 18, the information referenced, the individuals or agencies consulted, statements and conclusions) and documents it in a memorandum for review and approval by the FFS Supervisor.

FFS then will forward the memo to the care provider facility case manager to be included in the unaccompanied alien child's case file and to the ICE Detention and Removal Office (DRO) Field Office Juvenile Coordinator (FOJC) for inclusion in the unaccompanied alien child's A-file.

At any time, an unaccompanied alien child in ORR care or their designated legal representative may present new information or evidence that they are 18 or older for re-evaluation of an age determination. New information will be reviewed and evaluated by the FFS and, if necessary, the FFS Supervisor, in a timely manner and shared with the DRO FOJC to determine if the current placement is appropriate.

5/20/25, 11:23 PM    ORR Unaccompanied Alien Children Bureau Policy Guide: Section 1 | The Administration for Children and Families

Case 2:85-cv-04544-DMG-AGR    Document 1567-3    Filed 05/22/25    Page 28 of 28
Page ID #:52840

If the new information or evidence indicates that an individual who is presumed to be an unaccompanied alien child is actually an adult, then HHS will coordinate with the assigned FOJC to transfer the individual out of ORR custody.

*Revised 08/01/2024*

---

**Footnotes**

1. Delinquency refers to behavior by a child that would be considered a crime if performed by an adult.

2. ORR notes that the Heightened Supervision Facility placement requirements conform to the standards that the U.S. District Court concluded were applicable to such placements under the *Flores* Settlement Agreement. *Flores v. Garland*, No. CV 85-4544-DMG (AGRX), 2024 WL 3467715, at *6 (C.D. Cal. June 28, 2024) (applying paragraph 21 to "medium security" facilities).

3. Refers to behavior by a child that would be considered a crime if performed by an adult.

4. Other circumstances which would result in a longer stay, such as the child's country of origin is in a state of emergency, indicating that the child will likely not be repatriated for an extended period of time.

5. ORR National Call Center (ORRNCC) also has other functions including assisting potential **sponsors** in beginning the safe and timely release process (see **Section 2.2.3 The Family Reunification Application**); linking released children and their families or sponsors with services in their local communities (see **Section 2.8.4 Safety and Well-Being Follow Up Call**); and fielding calls from released children, family members, sponsors, **legal service providers**, child advocates, and other members of the community requesting assistance or reporting concerns. The ORRNCC can provide assistance with filing a "change of address" and provide vaccination records upon request. The ORRNCC creates safety plans for children or sponsors experiencing domestic violence, child abuse or **neglect**, self-harm (including suicide attempts), placement disruption, and human trafficking. The ORRNCC reports, as appropriate, matters of concern to ORR, local law enforcement, and/or local child protective services and refers potential victims of human trafficking to the Office on Trafficking in Persons. (See **Section 6.2.1 Referrals and Eligibility** and **6.8.6 Notification of Concern**).