CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Carlos Holguín (Cal. Bar No. 90754)
Bardis Vakili (Cal. Bar No. No. 247783)
Sarah Kahn (Cal. Bar No. 341901)
256 South Occidental Boulevard
Los Angeles, CA  90057
Telephone: (213) 388-8693
Facsimile: (213) 386-9484
Email: crholguin@centerforhumanrights.org
         bardis@centerforhumanrights.org
         sarah@centerforhumanrights.org

*Attorneys for Plaintiffs*
(*Additional counsel listed on next page*)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>PAMELA BONDI, Attorney General of the United States, *et al.*,<br><br>Defendants. | Case No. CV 85-4544-DMG-AGRx<br><br>PLAINTIFFS' RESPONSE TO JUVENILE CARE MONITOR REPORT<br><br>[Doc. # 1570]<br><br><br>Status Conference: June 23, 2025<br>HON. DOLLY M. GEE |

/ / /

NATIONAL CENTER FOR YOUTH LAW
Mishan Wroe (Cal. Bar No. 299296)
Diane de Gramont (Cal. Bar No. 324360)
1212 Broadway, Suite 600
Oakland, CA 94612
Telephone: (510) 835-8098
Email: mwroe@youthlaw.org

NATIONAL CENTER FOR YOUTH LAW
Rebecca Wolozin (admitted *pro hac vice*)
818 Connecticut Ave. NW, Suite 425
Washington, DC 20006
Telephone: (202) 868-4792
Email: bwolozin@youthlaw.org

CHILDREN'S RIGHTS
Leecia Welch (Cal. Bar No. 208741)
2021 Fillmore Street
San Francisco, CA 94115
Telephone: (415) 602-5202
Email: lwelch@childrensrights.org

CHILDREN'S RIGHTS
Eleanor Roberts (admitted *pro hac vice*)
88 Pine Street, Suite 800
New York, NY 10005
Telephone: (212) 683-2210
Email: eroberts@childrensrights.org

/ / /

## I. **Introduction**

Pursuant to the Court's January 30, 2025 Order extending the JCM's term [ECF 1547] ("Order Extending 2022 Settlement"), on May 27, 2025, Juvenile Care Monitors Dr. Paul Wise and Dr. Nancy Ewen Wang ("JCM") filed the May 2025 Juvenile Care Monitor Report ("May 2025 JCM Report" or "Report") [ECF 1570]. Plaintiffs file this submission in response to the report.

Under the 2022 CBP Settlement Agreement ("2022 Settlement") [ECF 1254-1], the JCM is tasked with monitoring conditions in CBP detention facilities in U.S. Customs and Border Protection ("CBP") facilities in the Rio Grande Valley ("RGV") and El Paso sectors and the facilities' compliance with the terms of the 2022 Settlement. The 2022 Settlement also established the JCM's mandate to monitor compliance with the 1997 Flores Settlement Agreement ("FSA"). The Order Extending the 2022 Settlement extended the JCM's term by 18 months, until June 27, 2025.

The May 2025 JCM Report covers the period from February through May 2025.

The report notes continued and persistent noncompliance with several aspects of the 2022 Settlement, including inadequate temperature control, lack of age-appropriate food for young children, lack of caregivers assigned to accompanied children, and concerns with the status and adequacy of CBP's systems and protocols to monitor conditions and medical services. May 2025 JCM Report at 1. The Report also notes that a significant percent of detained children spent more than 72 hours in CBP custody, several spent more than 14 days, and some spent more than 20 days. *Id.* at 3.

Plaintiffs again express gratitude for the commitment, thoroughness, and expertise of the JCM team and the vital work they have done.

## II. Time in Custody

Despite a 98% reduction in family encounters at the border from October 2024 to March 2025 and a 90% reduction in unaccompanied child encounters at the border from October 2024 to March 2025, the Report notes that a significant number of children experienced prolonged detention in CBP. Report at 2-3. CBP facilities are not meant for long term detention, especially for children, and prolonged detention compounds the harm of violations of the standards set by the Flores Settlement Agreement ("FSA") and 2022 Settlement.

For example, in March 2025, there were only 831 family encounters[1] on the Southwest Land Border – down from 36,711 in October 2024 – yet in March 2025 in the RGV sector, there were 17 accompanied children held longer than 7 days and one child was held for 20 days. In El Paso in March, there were 10 accompanied children held longer than 7 days, of which 8 were held longer than 14 days, with at least one child detained for 23 days. Report at 3. Given the dramatically lower census, these numbers are disproportionately large, and they include times in custody exceeding 20 days in both sectors. CBP's own policy directs it to release or transfer even adults within 72 hours.[2] For a child, almost a month of detention in CBP custody is profoundly traumatic.

---

[1] It is unclear whether "family encounters" counts the number of family units, individuals in a family, or children in a family.

[2] U.S. Customs and Border Protection, National Standards on Transport, Escort, Detention, and Search ("TEDS") § 4.1 (October 2015), available at https://www.cbp.gov/sites/default/files/assets/documents/2020-Feb/cbp-teds-policy-october2015.pdf (last visited June 9, 2025).

These numbers likely undercount the true number of children experiencing prolonged detention because, as the report notes, both Plaintiffs and the JCM have continued to identify concerns about the accuracy of CBP's data many months after the JCM first identified data discrepancies. *Id.* at 3; *see also id.* at 14 ("[U]ntil further analysis of the reports and joint technical discussions, the JCM cannot yet express confidence in the monthly TIC data.").

The trend of longer detention for a larger percent of detained children makes violations of the 2022 Settlement and FSA even more harmful to class members.

### III.   Continued Violations of the 2022 Settlement

#### A. Nutrition

The May 2025 Report notes that some hot meals were served cold at the Ursula JPF and that in El Paso, there was a "marked deterioration" in food quality, including hot meals served cold and "off-tasting burrito[s]." May 2025 Report at 4. The JCM noted that prolonged stays compounded the harm of the poor food quality, especially because there was "no variation in dinner content." *Id*. Further, there was "no toddler food service available." *Id*.

Plaintiffs' counsel's interviews with class members revealed similar troubling trends, with children reporting that they lost weight, skipped meals, or felt sick after eating. One child reported that he would not eat because the food tasted so bad he believed it was poisoned. These concerns were sent to Defendants in writing, most recently on May 5, 2025, along with class member declarations. *See* May 5, 2025 Letter to Defendants, attached as Exh. 1.

3

Plaintiffs' Response to
Juvenile Care Monitor Report
Case No. CV 85-4544-DMG-AGRx

### B. Temperature

The JCMs report that in El Paso, "temperature control was reported to be a persistent problem" and that they had received "reports from caregivers and BP agents of temperatures reaching the mid 50s in some pods." May 2025 Report at 5.

Some class members reported during interviews with Plaintiffs' counsel that temperatures dropped so low in the El Paso sector that many of the children became sick and developed severe coughs. These concerns were sent to Defendants in writing, most recently on May 5, 2025, along with class member declarations. *See* Exh. 1.

### C. Caregivers, Family Separation, and Trauma Informed Care

The JCM reports that there "has been a major reduction in the Caregiver program" and that, while this coincides with encounters declining, the "role and functions of the caregivers have also been highly curtailed." Report at 6. Caregivers play a vital role in protecting the mental and physical health of children, including accompanied children, and their presence with accompanied children is significantly more important when children are held separately from family members.

The JCM's report reveals inconsistent policies and practices related to family separation. The report notes that families were routinely separated by gender, with fathers "regularly" being held apart from their children, and that some families reported they "had been held for prolonged periods" with "only intermittent visits despite low census." *Id*. at 7. As the JCM notes, "any separation of children, particularly young children, from parents or family members for substantial period of time in custody creates potential for profound and lasting harm." *Id*. at 7. Consistent with these findings, Plaintiffs' counsel communicated to Defendants on May 5, 2025, that children reported being held separately from

family, receiving few, short, or inconsistent visits, and enduring extreme temperatures in visiting rooms.

The JCM received only a "single complaint of rude and harsh language" but notes in the report that "a declaration obtained by Plaintiff attorneys included allegations of abusive verbal and physical treatment of parents while in CBP custody in RGV." *Id*. In addition to these incidents, Plaintiffs' counsel communicated to Defendants in writing on May 5, 2025, that children in Ursula and El Paso "were told nothing about what would happen to them or their case" in violation of the CBP Settlement. 2022 Settlement at 10, § VII (3)(D)(7) (requiring a "trauma-informed approach to class members in custody" and efforts to "foster reassurance, resilience, orientation, recreation, and distraction"); *Id*. Section VII(8)(C)(4) (requiring CBP to provide unaccompanied children with "at least one daily message . . . orienting them to date, time, location," and "general process/disposition expectations."). *See* Exh. 1. This lack of information is confusing, disorienting, and terrifying to young children, especially those who are fleeing violence, fear being returned to danger, and have a recent history of persecution by their own government.

### D. Medical Risk

The JCM Report documents some improvements to the medical systems in CBP facilities in the covered sectors, while identifying some extremely concerning issues, including lack of privacy during sensitive exams, Report at 11, failure to consult or facilitate access to family members of a sick or injured child when those family members have a child's medical information, Report at 11, and variation in the provision of medical summary reforms to families, Report at 12. Report at 8-15. However, during attorney-client visits, Plaintiffs' counsel learned from some families that CBP officials, who had no medical training, would sometimes inform them that medical care was not available or refuse to bring them to a medical

appointment, making any improvement to the medical services provided ineffective. This concern was reported to Defendants on May 5, 2025. *See* Exh. 1.

### IV. CBP's Monitoring Capabilities

The JCM points out several concerning gaps in CBP's preparedness to monitor itself. First, the JCM notes that CBP may not be capable of monitoring time in custody because "Analysis of the provided monthly data, however, has raised questions regarding the accuracy of the reports." Report at 14. The JCM also notes that while CBP has developed logs to track violations of the standards set out by the 2022 Settlement, there is "inadequacy of an appropriate ameliorative response." Report at 15. Clearly, class members are not benefited by a monitoring system that tracks violations but fails to address them.

The report also notes that the Juvenile Coordinator Division conducts inspections of facilities only twice per year for EHFs and once per year for other facilities. Report at 16. This is woefully inadequate to protect children detained in these facilities, now sometimes for several weeks.

Meanwhile, the reduction in caregivers and restriction of their roles reduces another potential means of monitoring facilities and ensuring that they are safe and sanitary. Report at 17.

The JCM also points to "considerable variation" in important areas like family separation and visitation, which points to inconsistency in reporting by CBP staff, monitoring by CBP leadership, addressing identified issues, or all three. Report at 17.

### V. Conclusion

Plaintiffs commend Dr. Wise, Dr. Wang, and Legal Advisor Ordin for their monitoring work, systemic expertise, and integral role in evaluating compliance

with the 2022 Settlement. Their efforts have facilitated important improvements and identified continued violations of the 2022 Settlement, as well as some significant concerns about CBP's ability to monitor its facilities, which Plaintiffs' counsel share. As demonstrated by the JCM report, CBP has yet to comply with the 2022 Settlement and its monitoring protocols require ongoing assessment and monitoring. *Id.* at 14-17.

Dated: June 10, 2025                    Respectfully submitted,

                                                                                       /s/ Sarah Kahn
Sarah Kahn
Center for Human Rights & Constitutional Law
256 South Occidental Boulevard
Los Angeles, California 90057
Tel: 415-672-1962
Fax: 213-386-9484

sarah@centerforhumanrights.org

*Attorney for Plaintiffs*

# CERTIFICATE OF SERVICE
## CASE NO. CV 85-4544-DMG (AGRx)

I certify that on June 10, 2025, I served a copy of the foregoing pleading on all counsel of record by means of the District Court's CM/ECF electronic filing system.

    /s/ Sarah Kahn
Sarah Kahn