# EXHIBIT 1

Joshua McCroskey
Katelyn Masetta
Office of Immigration Litigation
Joshua.C.McCroskey@usdoj.gov

*Via email*

May 5, 2025

Dear Kate and Joshua,

We write to inform Defendants of violations of the 2022 CBP Settlement in *Flores* ("CBP Settlement"), occurring in CBP's Rio Grande Valley (RGV) and El Paso Sectors. On April 18, 2025, Class Counsel wrote to alert Defendants of violations of the Settlement Agreements and to set a Meet and Confer.

This letter supplements the letter dated April 18, 2025, to provide written notice of violations of the 2022 CBP Settlement pursuant to Paragraph XIII(1) reported to Class Counsel after April 18. The Juvenile Care Monitors are copied on this communication and have been provided a copy of the notice.

Plaintiffs waive Defendants' obligation to respond to these allegations in writing under Paragraph XIII(3). In order to continue the process of meeting to address and resolve these issues, Plaintiffs send this letter as notice of the violations and propose discussing them at the to be scheduled meet and confer.

On April 30, Class Counsel conducted Class Member interviews at Ursula CBP Station. On May 1 and May 2, 2025, Class Counsel conducted Class Member interviews at the Dilley ICE Detention Facility ("Dilley"), where Class Members reported violations of the CBP Settlement that they experienced while detained by CBP prior to transfer to Dilley.

The violations detailed below are of pressing concern due to the prolonged length of detention for many Class Members. Per Section VIII of the CBP Settlement, "If a situation occurs in which a class member remains in CBP custody for longer than 72 hours, CBP shall take prompt additional steps to ensure conditions remain safe and sanitary."

    **I.**    **Prolonged Detention of Minors**

The CBP Settlement clarifies the Parties' understanding of Paragraphs 11 and 12A of the Flores Settlement Agreement ("FSA") relating to conditions of confinement in CBP facilities. CBP Settlement at 1. The Settlement explicitly reserves any claims relating to time in custody for separate litigation: the Settlement dismisses "without prejudice any pending TRO allegations regarding (i) time in custody (ii) Defendants' making and recording of efforts aimed at the prompt release of minors, or (iii) Defendants' notice to class members or accompanying adult relatives of class members' right to release or transfer to a facility licensed for the care of dependent children; the parties agree that these issues are not addressed in this Agreement." *Id*.

1

at 2. Class Members are therefore protected from prolonged detention under the 1997 FSA (CBP "shall expeditiously process [ ] minor[s]," FSA ¶ 12.A) but the CBP Settlement does not address this FSA obligation.

Nonetheless, the CBP Settlement recognizes the exponentially greater harm that arises when violations of the Settlement occur throughout a child's prolonged detention. Per Section VIII. of the CBP Settlement, "If a situation occurs in which a class member remains in CBP custody for longer than 72 hours, CBP shall take prompt additional steps to ensure conditions remain safe and sanitary."

Further, the CBP Settlement recognizes that detention in CBP facilities, stations, and other unlicensed facilities is inherently harmful and therefore requires that children should be promptly removed from holding facilities not designed for children: "CBP shall transfer all juveniles who are not immediately returned to their country of origin to a Juvenile Priority Facility as expeditiously as possible, in general, within 24 hours of arrival at a non-priority facility, but no longer than 48 hours after arrival at a non-priority facility." CBP Settlement Exh. 4(d) at 7.

Three of the four families with accompanied children counsel interviewed at Ursula had been at the facility for six or more days. GBA Dec. ¶ 5 (9 days); FO Dec. ¶ 5 (10 days); MRL ¶ 4 (6 days).

Families at Dilley detention reported stays as long as a month at the El Paso CBP Station. *See* FY Dec. ¶ 6 (one month); MM Dec. ¶ 7 (three weeks).

The harm caused by each of the violations described below is compounded by the egregious lengths of stay these children are forced to endure.

## II. Family Separation and Insufficient Family Visitation: (CBP VII(8)(B))

The CBP Settlement requires that class members remain with accompanying family members including non-parents or legal guardians "absent an articulable operational reason" that has been recorded for each individual family that is separated. CBP Settlement at 14, § VII(8)(B)(1)-(3). The CBP Settlement Agreement also requires that class members be able to ask for (and receive) visits with separated family members in the same facility. CBP Settlement at 14, § VII (8)(B)(3).

A Class Member at Dilley reported that at the El Paso CBP station they were held apart from family and "allowed only twenty minutes every five days in a freezing room to see each other." MM Dec. ¶ 15.

Families at Ursula reported being separated and being granted family visitation, in a crowded and non-private area. This separation was extremely traumatic for the children. *See* FO Dec. ¶ 9.

2

### III.  Insufficient Hygiene Provisions and Unsanitary Conditions; Privacy: (CBP Settlement § VII (5)(B), (7), VIII(3-4))

The CBP Settlement explicitly requires that CBP provide toothbrushes and toothpaste daily. CBP Settlement at 13, § VII (7)(3). All class members must also have access to soap and water and/or hand sanitizer. CBP Settlement at 14, § VII (8). The settlement further requires that class members be given clean clothing if their clothing is wet or soiled. CBP Settlement at 12, § VII (5)(B)(2).

Per Section VIII. of the CBP Settlement, "If a situation occurs in which a class member remains in CBP custody for longer than 72 hours, CBP shall take prompt additional steps to ensure conditions remain safe and sanitary." This includes "showers every 48 hours" (VIII(3)); providing "toothbrushes and toothpaste for class members daily and upon request" (VIII(4)).

Families at Ursula reported there was no soap available at the handwashing stations. *See* FO Dec. ¶ 12; MRL Dec. ¶ 15. They also reported insufficient privacy in the restrooms. *See* MRL Dec. ¶ 14; FO Dec. ¶ 11; MH Dec. ¶ 15. Similarly, families at Dilley reported that there was insufficient privacy in the restrooms and they were denied showers and clean clothes for up to a week at the El Paso CBP station. *See* FY Dec. ¶12; MM Dec. ¶ 20.

### IV.  Lack of Access to Telephones and Counsel: (CBP Settlement § XI; Ex. 3)

The CBP Settlement requires CBP to provide "a list of free legal services to all class members," including notice of the child's right to call a lawyer "at any time prior to your departure from the facility." CBP Settlement, Exhibit. 3. These notices establish the rights they describe, because it would defeat the Parties' purpose for CBP to advise children of rights they do not have.

In clear violation of these requirements, families at Ursula reported they were (1) given no legal service provider numbers; (2) not advised they could call a lawyer; and (3) not provided an opportunity for private calls. *See* GBR Dec. ¶ 12; MRL Dec. ¶ 20.

Families at Dilley similarly reported that at the El Paso CBP station, they were given no legal service provider numbers, not advised they could call a lawyer, in some cases expressly told that they *could not* call a lawyer, and provided only a couple non-private, staff-supervised minutes on the phone for other calls. MM Dec. ¶ 19; FY Dec. ¶ 15.

### V.  Inadequate, Inedible, and Age-Inappropriate Food: (CBP Settlement at 11, § VII (4)(A)(4))

Per Section VIII. of the CBP Settlement, "If a situation occurs in which a class member remains in CBP custody for longer than 72 hours, CBP shall take prompt additional steps to ensure conditions remain safe and sanitary." This will include "adequate food and clean drinking water" and making "reasonable efforts to provide additional variety in the meals available to class members who remain in custody for more than 72 hours." (VIII(6)).

At Ursula, families reported that their children struggled to eat the food, which was unfamiliar to them, not child-friendly, and of extremely poor quality. *See* MRL Dec. ¶ 16-17.

At Dilley, families reported that in El Paso, food was so terrible that one child believed he was being poisoned. *See* MM Dec. ¶ 12.

### VI. Inadequate Sleeping Conditions: (CBP Settlement § VI (6)(3)-(4))

Per Section VIII. of the CBP Settlement, "If a situation occurs in which a class member remains in CBP custody for longer than 72 hours, CBP shall take prompt additional steps to ensure conditions remain safe and sanitary." This will include making "reasonable efforts to dim the lights . . . during hours of sleep" (§ VIII(8)). The CBP settlement also requires CBP to make reasonable efforts to dim the lights and to minimize disruptions of sleep between 10:00 p.m. and 6:00 a.m. CBP Settlement at § VI (6)(3)-(4).

In Ursula, families reported their sleep being disrupted repeatedly. One person reported that she was woken up multiple times in the night and asked to sign paperwork that was not explained to her in her native language. MH Dec. ¶¶ 11-12. Another person reported their children's sleep being impaired because lights in the hall were on all night. FO Dec. ¶ 7.

At Dilley, families reported that in El Paso, lights remained on all night. FY Dec. ¶ 11; MM Dec. ¶ 11.

### VII. Poor Temperature Control, Lack of Warm Clothing, and Inadequate Medical Care: (CBP Settlement §§ VII (9)(C); § VII (5)(B); VIII)

Per Section VIII. of the CBP Settlement, "If a situation occurs in which a class member remains in CBP custody for longer than 72 hours, CBP shall take prompt additional steps to ensure conditions remain safe and sanitary." This will include "supplemental health interview(s)" "every five days" (VIII(1)); "enhanced medical monitoring" "as appropriate" (VIII(2)); and "access to clean and dry clothes" (VIII(5)).

Maintaining facilities at a consistently cold temperature is a violation the CBP Settlement, which requires adequate temperature control in facilities holding children. *See also* CBP Settlement § VII (5)(1). Under the CBP Settlement, class members must be provided additional clothing, blankets, and beanies for warmth. CBP Settlement § VII (5)(B). However, many children in several CBP facilities reported experiencing extreme cold.

At Ursula, families were told that medical care for headaches was not available and that some medications could not be prescribed. *See* MH Dec. ¶¶ 7, 18. They also reported extremely cold temperatures and that they were not given adequately warm clothing. *See* MM Dec. ¶ 10; MRL Dec. ¶ 12.

At Dilley, families reported freezing temperatures in El Paso, so cold that the children became sick. *See* MM Dec. ¶ 8; FY Dec. ¶ 7.

4

### VIII. Lack of Child-Friendly Environment: (CBP Settlement (VIII(7); § VII (8); § VII (3)(D)(7))

Per Section VIII. of the CBP Settlement, "If a situation occurs in which a class member remains in CBP custody for longer than 72 hours, CBP shall take prompt additional steps to ensure conditions remain safe and sanitary." This will include "opportunities for recreation and other child-appropriate activities daily" (VIII(7)).

CBP's obligation to treat children "with special concern for their particular vulnerability as minors" includes providing a "child-appropriate environment." CBP Settlement at 14-14, § VII (8). *See also,* CBP Settlement at 10, § VII (3)(D)(7) (requiring a "trauma-informed approach to class members in custody" and efforts to "foster reassurance, resilience, orientation, recreation, and distraction").

Under the CBP Settlement, special considerations for the particular vulnerabilities of minors includes the provision of age-appropriate toys and activities, and recreation time. *See* CBP Settlement at 14-15, § VII (8)(B)(5), (C)(3)-(4). Additionally, the CBP Settlement requires CBP to provide unaccompanied children with "at least one daily message . . . orienting them to date, time, location," and "general process/disposition expectations." CBP Settlement Section VII (8)(C)(4). Finally, when a child is in custody for longer than 72 hours, the CBP Settlement requires that CBP make all reasonable efforts to provide recreation, child-appropriate activities, and outdoor recreation for children. *Id*. § VIII (7).

Class members and their families reported having minimal activities and recreation, lacking privacy, not receiving necessary and routine information regarding their situations and environment, and being treated poorly by CBP staff. Several children and their family members reported CBP guards who behave in aggressive, controlling, and/or disrespectful ways, which inflicts trauma on children. Furthermore, children also reported not being able to see the sun or go outside, which when coupled with the constant lights within such facilities, make it impossible for them to understand whether it is day or night.

Families at Ursula reported that they did not have windows to the outside and could not go outside at all while detained. *See* MRL Dec. ¶ 19; FO Dec. ¶¶ 6-7.

Families at Dilley reported that in El Paso, they were unable to go outside or were only able to go to a fenced cement area for twenty minutes once per week despite very long stays of up to a month. *See* MM Dec. ¶ 11; FY Dec. ¶ 6.

Children's mental health is also severely impacted by the failure of CBP to provide any reassurance or information about what would happen to them. Families at Ursula reported that they were told nothing about what would happen to them or their case. *See* GBA Dec. ¶ 6. Families at Dilley similarly reported that in El Paso, they were told nothing about what would happen to them or their case. *See* FY Dec. ¶ 10.

\*\*\*\*\*

Because there has already been substantial communication about violations in the CBP Settlement Sectors, Plaintiffs waive Defendants' obligation to respond in writing to this notice and request only that it be taken into consideration at the meet and confer that is currently being scheduled.

Best wishes,
Sarah Kahn

Cc: Andrea Sheridan Ordin, aordin@strumwooch.com; Dr. Paul H. Wise, pwise@stanford.edu; Dr. Nancy Ewen Wang, ewen@stanford.edu.