# EXHIBIT 1

CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Carlos R. Holguín (Cal. Bar No. 90754)
crholguin@centerforhumanrights.org
Bardis Vakili (Cal. Bar No. 247783)
bardis@centerforhumanrights.org
Sarah E. Kahn (Cal. Bar No. 341901)
sarah@centerforhumanrights.org
1505 E 17th St. Ste. 117
Santa Ana, CA 92705l
Telephone: (909) 274-9057

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

Jenny Flores, *et al.*,

        Plaintiffs,

    v.

Pamela Bondi, Attorney General of
the United States, *et al.*

        Defendants.

Case No. CV 85-4544-DMG-AGRx

**DECLARATION OF SARAH KAHN IN
SUPPORT OF MOTION TO ENFORCE
THE FLORES SETTLEMENT
AGREEMENT**

Hearing: July 18, 2025

*Additional Counsel for Plaintiffs*:

NATIONAL CENTER FOR YOUTH LAW
Mishan Wroe (Cal. Bar No. 299296)
Diane de Gramont (Cal. Bar No. 324360)
1212 Broadway, Suite 600
Oakland, CA 94612
Telephone: (510) 835-8098
Email: mwroe@youthlaw.org

NATIONAL CENTER FOR YOUTH LAW
Rebecca Wolozin (admitted *pro hac vice*)
818 Connecticut Ave. NW, Suite 425
Washington, DC 20006
Telephone: (202) 868-4792
Email: bwolozin@youthlaw.org

CHILDREN'S RIGHTS
Leecia Welch (Cal. Bar No. 208741)
2021 Fillmore Street
San Francisco, CA 94115
Telephone: (415) 602-5202
Email: lwelch@childrensrights.org

CHILDREN'S RIGHTS
Eleanor Roberts (admitted *pro hac vice*)
88 Pine Street, Suite 800
New York, NY 10005
Telephone: (212) 683-2210
Email: eroberts@childrensrights.org

Declaration of Sarah Kahn
ISO Plaintiffs' Motion to Enforce

### Declaration of Sarah Kahn
### In Support of Plaintiffs' Motion to Enforce Settlement

I, Sarah Kahn, declare as follows:

1.  I am a staff attorney at the Center for Human Rights & Constitutional Law. I am counsel of record for the Plaintiffs in the above-captioned case. I execute this declaration in support of Plaintiffs' Motion to Enforce the Settlement.

2.  This declaration is based on my personal knowledge and if called to testify in this case, I would testify competently about these facts.

3.  Since June, 2024, Plaintiffs' counsel have met and conferred with Defendant's counsel regarding conditions in CBP facilities on the following dates:

   a. May 7, 2025;

   b. November 20, 2024;

   c. November 8, 2024;

   d. July 2, 2024; and

   e. June 7, 2024.

4.  Since 2024, Plaintiffs' counsel has sent Defendants' counsel letters detailing FSA violations in CBP facilities identified during Flores attorney-client visits on the following dates:

   a. May 5, 2025;

   b. April 18, 2025;

   c. November 25, 2024;

   d. October 16, 2024;

   e. August 9, 2024; and

   f. May 10, 2024.

5.  Plaintiffs' counsel have visited CBP facilities in several sectors and have also interviewed children and families in Karnes and Dilley who reported being detained for prolonged periods in CBP facilities in several states, including

Declaration of Sarah Kahn
ISO Plaintiffs' Motion to Enforce

New York, Illionois, Maine, Arizona, Texas, California, and Ohio. Plaintiffs' counsel  conducted *Flores* attorney-client visits on the following dates, with locations in parentheses, in 2025:

        a.  June 4-5, 2025 (Dilley ICE Family Detention Center)

        b.  May 21, 2025 (Otay Mesa Port of entry);

        c.  May 1-2, 2025 (Dilley ICE Family Detention Center)

        d.  April 30, 2025 (Ursula Station);

        e.  April 10, 2025 (Chula Vista Station);

        f.  March 26, 2025 (Karnes ICE Family Detention Center)

        g.  March 7, 2025 (San Diego Soft Sided Facility); and

        h.  February 13, 2025 (San Diego Soft Sided Facility).

6.    On several of our visits to detention facilities, Defendants' counsel informed us that there were limited hours for attorney client visits based on staff schedules and availability, or that transportation schedules might impact client availability.  These limitations sometimes resulted in Plaintiffs' Counsel not having access to class members, and several interviews were rushed or cut short.

7.    DHS provides only the A number and name of children in a facility, but not the age, accompanying adult information, or country of origin. This makes it difficult to identify languages in advance so that counsel may coordinate translation, or to plan to visit class members with a broad range of factual circumstances to ensure compliance with the agreement.

8.    Defendants' counsel have asked that we provide fourteen days notice prior to any site visit. When Plaintiffs' counsel has not provided fourteen days notice, Defendants have been unable to facilitate *Flores* visits.

9.    Plaintiffs' counsel does not have access to census data ahead of our visits, which sometimes makes it difficult to identify the location of class members and has sometimes resulted in trips to facilities that were not holding class

Declaration of Sarah Kahn
ISO Plaintiffs' Motion to Enforce

members at the time of the trip. On these occassions, Plaintiffs' counsel were unable to conduct interviews.

10.    ICE began detaining families in Karnes Immigration Processing Center in March 2025. In April 2025, ICE then transferred individuals detained in Karnes to Dilley ICE Family Detention. In May 2025, when Plaintiffs' counsel conducted *Flores* interviews in Dilley, there were over 80 children detained in the Dilley Family Detention. There are now about 500 individuals detained at Dilley Family Detention.

11.    Advocates representing families in Dilley reported to us that ICE calculates families' time in custody ("TIC") from the day they arrive in ICE custody, not the day of their apprehension by CBP. On June 4, 2025, Plaintiffs' Counsel sent a letter confirming this understanding by email with Defendants' Counsel.

12.    On June 12, 2025, Plaintiffs' counsel met with Defendants' counsel to confer about this motion.

13.    To obtain data related to release from CBP, I navigated to the CBP Custody and Transfer Statistics, available at https://www.cbp.gov/newsroom/stats/custody-and-transfer-statistics (last visited June 16, 2025). The chart labeled "USBP Monthly Southwest Border Encounters by Processing Disposition" table reflects the disposition of individuals after apprehension and processing. I printed this webpage to PDF. A true and correct copy of the webpage is attached as Exhibit A. There are three categories that reflect individuals who may have been released: Notice to Appear/Own Recognizance (NTA-OR); Paroles; and Notice to Report (NTR). The table shows the following numbers:

    a.    December, 2024:

        i.    Title 8 Apprehensions: 47,324

Declaration of Sarah Kahn
ISO Plaintiffs' Motion to Enforce

  ii. Paroles: 0

  iii. Notice to Report: 0

  iv. Notice to Appear: 7,041 (15% of total apprehensions)

 b. February, 2025:

   i. Title 8 Apprehensions: 8,346

  ii. Paroles: 0

  iii. Notice to Report: 0

  iv. Notice to Appear: 0 (0% of total apprehensions)

 c. March, 2025:

   i. Title 8 Apprehensions: 7,184

  ii. Paroles: 0

  iii. Notice to Report: 0

  iv. Notice to Appear: 5 (0.0007% of total apprehensions)

 d. April, 2025:

   i. Title 8 Apprehensions: 8,383

  ii. Paroles: 0

  iii. Notice to Report: 0

  iv. Notice to Appear: 2 (0.0002% of total apprehensions)

14. I requested the number of people paroled or released from CBP in February, March, and April, 2025, during the June 12, 2025 conference with Defendants' counsel, but they were unable to provide any confirmation or information.

15. On May 15, 2025, CBP posted a memo titled *Rescission of Legacy Policies Related to Care and Custody* to its document library, available at https://www.cbp.gov/document/foia-record/rescission-legacy-policies-related-care-and-custody. That memo lists four policies that it states are rescinded pursuant to the memo. I printed this memo to PDF. A true and correct copy of the memo is

Declaration of Sarah Kahn
ISO Plaintiffs' Motion to Enforce

attached as Exhibit B. One of these policy memos, *Custodial Considerations for Medically At-Risk Individuals* (May 19, 2023), is available in CBP's document library at https://www.cbp.gov/document/directives/cbp-memorandum-custodial-considerations-medically-risk-individuals. I printed this memo to PDF. A true and correct copy of this memo is attached as Exhibit C.

I declare under penalty of perjury that the foregoing is true and correct. Executed June 16, 2025, Anaheim, California.


_____
Sarah Kahn

Declaration of Sarah Kahn
ISO Plaintiffs' Motion to Enforce

# EXHIBIT A

 U.S. Customs and Border Protection

U.S. Customs and Border Protection

# Custody and Transfer Statistics

*Fiscal Year 2025 runs from October 1, 2024 to September 30, 2025.*

 Close all     Open all

## Office of Field Operations - Dispositions and Transfers    +

### OFO Monthly Southwest Border Credible Fear Inadmissibles by Disposition

| Disposition | Oct-24 | Nov-24 | Dec-24 | Jan-25 | Feb-25 | Mar-25 | Apr-25 | May-25 | Jun-25 |
|---|---|---|---|---|---|---|---|---|---|
| Expedited Removal- Credible Fear (ERCF)[1] | 917 | 831 | 904 | 524 | 14 | 18 | 8 | - | - |
| Notice To Appear (NTA)[2] | 40,200 | 38,110 | 38,709 | 24,402 | 56 | 33 | 24 | - | - |
| Notice To Appear | 0 | 0 | 0 | 0 | 0 | 0 | 0 | - | - |

6/16/25, 9:04 PM
Case 2:85-cv-04544-DMG-AGR   Document 1575-3   Filed 06/17/25   Page 11 of 33
Page ID #:53842
Custody and Transfer Statistics | U.S. Customs and Border Protection

| Disposition | Oct-24 | Nov-24 | Dec-24 | Jan-25 | Feb-25 | Mar-25 | Apr-25 | May-25 | Jun-25 |
|---|---|---|---|---|---|---|---|---|---|
| (NTA)-Person Released | | | | | | | | | |
| Notice To Appear (NTA)-Person Detained | 0 | 0 | 0 | 0 | 0 | 0 | 0 | - | - |
| Visa Waiver Program (VWP)-Removal-Limited Review[3] | 0 | 0 | 0 | 0 | 0 | 0 | 0 | - | - |
| Visa Waiver Program (VWP)-Refusal Limited Review[3] | 0 | 0 | 0 | 0 | 0 | 0 | 0 | - | - |
| Stowaway-Limited Review[3] | 0 | 0 | 0 | 0 | 0 | 0 | 0 | - | - |

6/16/25, 9:04 PM
Case 2:85-cv-04544-DMG-AGR   Document 1575-3   Filed 06/17/25   Page 12 of 33
Custody and Transfer Statistics | U.S. Customs and Border Protection
Page ID #:53843

| Disposition | Oct-24 | Nov-24 | Dec-24 | Jan-25 | Feb-25 | Mar-25 | Apr-25 | May-25 | Jun-25 |
|---|---|---|---|---|---|---|---|---|---|
| **Total Credible Fear Inadmissibles** | **41,117** | **38,941** | **39,613** | **24,926** | **70** | **51** | **32** | - | - |
| **Total Title 8 Inadmissibles** | **49,801** | **47,574** | **48,713** | **32,343** | **3,363** | **3,836** | **3,652** | - | - |

## Title 8 Inadmissibles

| Field Office | Oct-24 | Nov-24 | Dec-24 | Jan-25 | Feb-25 | Mar-25 | Apr-25 | May-25 | Jun-25 | Jul-25 |
|---|---|---|---|---|---|---|---|---|---|---|
| **El Paso** | 7,828 | 7,553 | 7,847 | 5,344 | 513 | 510 | 557 | - | - | - |
| **Laredo** | 22,175 | 21,104 | 21,362 | 14,274 | 1,18 | 1,326 | 1,292 | - | - | - |
| **San Diego** | 16,058 | 15,410 | 15,889 | 10,217 | 1,325 | 1,439 | 1,273 | - | - | - |
| **Tucson** | 3,740 | 3,507 | 3,615 | 2,508 | 407 | 560 | 530 | - | - | - |
| **Total** | **49,801** | **47,574** | **48,713** | **32,343** | **3,363** | **3,835** | **3,652** | - | - | - |

## OFO Monthly Southwest Border Credible Fear Inadmissibles by Program

| Program | Oct-24 | Nov-24 | Dec-24 | Jan-25 | Feb-25 | Mar-25 | Apr-25 | May-25 | Jun-25 | Jul-25 | Aug-25 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Migrant Protection Protocols (MPP)- Initial returns | 0 | 0 | 0 | 0 | 0 | 0 | 0 | - | - | - | - |
| Asylum Cooperative Agreement (ACA) Program - Expedited Removal - Credible Fear (ERCF) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | - | - | - | - |
| ACA - Notice to Appear (NTA) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | - | - | - | - |
| Humanitarian Asylum Review Process (HARP) Program - | 0 | 0 | 0 | 0 | 0 | 0 | 0 | - | - | - | - |

| Program | Oct-24 | Nov-24 | Dec-24 | Jan-25 | Feb-25 | Mar-25 | Apr-25 | May-25 | Jun-25 | Jul-25 | Aug-25 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Expedited Removal - Credible Fear (ERCF) | | | | | | | | | | | |
| HARP - Notice to Appear (NTA) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | - | - | - | - |
| **Total** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | **-** | **-** | **-** | **-** |

## OFO Monthly Southwest Border Credible Fear by Transfer Destination

| Destination | Oct-24 | Nov-24 | Dec-24 | Jan-25 | Feb-25 | Mar-25 | Apr-25 | May-25 | Jun-25 | Ju... |
|---|---|---|---|---|---|---|---|---|---|---|
| Federal/State/Local Facility | 101 | 100 | 73 | 65 | 8 | 15 | 7 | - | - | |
| ICE/ERO | 1,280 | 1,228 | 1,348 | 732 | 38 | 31 | 18 | - | - | |
| ICE/HSI | 0 | 0 | 2 | 0 | 0 | 2 | 1 | - | - | |
| OFO | 0 | 0 | 0 | 0 | 0 | 0 | 0 | - | - | |
| Return to Foreign | 0 | 0 | 0 | 1 | 0 | 0 | 0 | - | - | |

| Destination | Oct-24 | Nov-24 | Dec-24 | Jan-25 | Feb-25 | Mar-25 | Apr-25 | May-25 | Jun-25 | Ju 2 |
|---|---|---|---|---|---|---|---|---|---|---|
| **USBP** | 363 | 332 | 353 | 228 | 24 | 1 | 4 | - | - | |
| **Total** | **1,744** | **1,660** | **1,776** | **1,026** | **70** | **49** | **30** | **-** | **-** | |

[1] Includes subjects who indicated a desire to seek asylum or a fear of persecution in Office of Field Operations' (OFO) custody at a port of entry. OFO refers all such claims to USCIS for a credible fear interview. Credible fear may be claimed at any time prior to removal.

[2] This number reflects instances where OFO exercises its discretion and issues a Notice to Appear (NTA) to initiate removal proceedings before an immigration judge. This does not include NTAs issued at the discretion of other DHS components with authority to issue NTAs.

[3] The term "limited review" refers to the process of an immigration judge considering claims of US citizenship, Lawful Permanent Residence, Asylum or Refugee status.

## Office of Field Operations - In Custody    +

### Field Operations - Southwest Border in Custody[1]

| Detention Capacity | Oct-24 | Nov-24 | Dec-24 | Jan-25 | Feb-25 | Mar-25 |
|---|---|---|---|---|---|---|
| **In Custody** | 902 | 902 | 902 | 902 | 902 | 902 |

6/16/25, 9:04 PM Custody and Transfer Statistics. Customs and Border Protection

Case 2:85-cv-04544-DMG-AGR Document 1575-3 Filed 06/17/25 Page 16 of 33
Page ID #:53847

| Detention Capacity | Oct-24 | Nov-24 | Dec-24 | Jan-25 | Feb-25 | Mar-25 |
|---|---|---|---|---|---|---|
| Capacity | | | | | | |
| % | 661 (73.28%)[2] | 700(77.61%)[2] | 652 (72.28%)[2] | 428 (47.45%)[2] | 120 (13.30%)[2] | 44 (4.88% |

[1] Represents an estimate of each cell's coded occupancy limit, as outlined in technical design standards when constructed, multiplied by the total number of cells for all ports of entry within each field office. This number does not account for the unique circumstances that may limit the occupancy of a given cell (e.g., high risk, nursing/pregnant, transgender, unaccompanied minor, etc.) nor does it reflect operational limitations that affect a port's capacity to detain. CBP's capacity to detain individuals in its short-term facilities depends on many factors, including: demographics of the individual in custody; medical or other needs of individuals in custody; ability of ICE ERO (or, if an unaccompanied child, the U.S. Department of Health and Human Services) to transfer individuals out of CBP custody; and OFO's available resources to safely process and hold individuals.

[2] Represents the average number of travelers in custody on a daily basis averaged over the 30-day period, at all Southwest Border Field Office locations. Travelers include inadmissible individuals, lawful permanent residents, asylees, refugees, and United States Citizens who are being detained to verify wants, warrants, criminal, administrative or other judicial process.

## U.S. Border Patrol - Dispositions and Transfers ―

### USBP Monthly Southwest Border Encounters by Processing Disposition

*The processing disposition decision related to each apprehension is made on a case-by-case basis. The processing dispositions below are representative of the time data was aggregated. As dispositions are subject to change throughout the immigration process, the data does not necessarily reflect final dispositions or removals.*

| Processing Disposition | Oct-24 | Nov-24 | Dec-24 | Jan-25 | Feb-25 | Mar-25 | Apr-25 | May-25 | Jun-25 |
|---|---|---|---|---|---|---|---|---|---|
| **Notice to Appear/Own Recognizance (NTA-OR)** | 10,011 | 7,183 | 7,041 | 2,558 | 0 | 5 | 2 | - | - |
| **Paroles** | 5 | 3 | 0 | 1 | 0 | 0 | 0 | - | - |
| **Notice to Report (NTR)** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | - | - |
| **Expedited Removal (ER)** | 320 | 183 | 212 | 223 | 99 | 269 | 727 | - | - |
| **Expedited Removal (ER) - per Interim Final Rule "Securing the Border"[1]** | 28,236 | 23,399 | 24,595 | 16,308 | 4,712 | 3,802 | 4,109 | - | - |
| **Reinstatement of Prior Order of Removal** | 8,969 | 7,926 | 6,187 | 4,330 | 1,793 | 1,794 | 2,083 | - | - |
| **Warrant of Arrest/Notice** | 7,086 | 5,284 | 7,694 | 3,747 | 745 | 601 | 616 | - | - |

| Processing Disposition | Oct-24 | Nov-24 | Dec-24 | Jan-25 | Feb-25 | Mar-25 | Apr-25 | May-25 | Jun-25 |
|---|---|---|---|---|---|---|---|---|---|
| to Appear - (Detained) | | | | | | | | | |
| Voluntary Return | 1,604 | 1,395 | 1,359 | 1,055 | 451 | 529 | 666 | - | - |
| MPP | 0 | 0 | 0 | 0 | 0 | 0 | 0 | - | - |
| Other[2] | 289 | 242 | 223 | 884 | 546 | 184 | 180 | - | - |
| Total Title 8 Apprehensions | 56,520 | 46,615 | 47,324 | 29,101 | 8,346 | 7,184 | 8,383 | - | - |

[1] Subjects enrolled in multiple programs are only counted once based on the following order: PACR, ACA, HARP, MPP

[2] Processing dispositions may include subjects that do not yet have a final disposition at the time the data was collected or subjects processed under the visa waiver program, turned over to, paroled, etc.

## USBP Monthly Southwest Border Apprehensions by Transfer Destination

*Following processing, U.S. Border Patrol arranges transfer of individuals to the appropriate entity based on disposition and other factors such as criminal charges. The transfer destinations below are representative of the time data was aggregated. The data does not reflect subsequent transfer destinations after subjects leave Border Patrol custody and are subject to change if an individual returns to U.S. Border Patrol custody during the same event.*

6/16/25, 9:04 PM
Case 2:85-cv-04544-DMG-AGR    Document 1575-3    Filed 06/17/25    Page 19 of 33
Page ID #:53850
Custody and Transfer Statistics | U.S. Customs and Border Protection

| Transfer Destination | Oct-24 | Nov-24 | Dec-24 | Jan-25 | Feb-25 | Mar-25 | Apr-25 | May-25 | Jun-25 |
|---|---|---|---|---|---|---|---|---|---|
| **Provisional Releases (OR, P, REL)** | 10,071 | 7,235 | 7,080 | 2,592 | 20 | 25 | 24 | - | - |
| **Federal (ERO, ORR, Other)**[1] | 23,191 | 19,795 | 23,120 | 12,033 | 4,649 | 5,113 | 5,465 | - | - |
| **Federal - Northern Triangle Repatriation Flights (ENV)** | 1,956 | 2,163 | 1,333 | 571 | 16 | 17 | 1 | - | - |
| **Federal - Mexican Repatriation Flights (IRI/IFP)** | 634 | 684 | 771 | 457 | 10 | 0 | 0 | - | - |
| **Transferred Port of Entry (Non-MPP)** | 18,747 | 15,383 | 12,358 | 11,988 | 3,364 | 1,525 | 1,847 | - | - |
| **Transferred Port of Entry (MPP)** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | - | - |

| Transfer Destination | Oct-24 | Nov-24 | Dec-24 | Jan-25 | Feb-25 | Mar-25 | Apr-25 | May-25 | Jun-25 |
|---|---|---|---|---|---|---|---|---|---|
| **State and Local Law Enforcement Agencies (Other)** | 1,179 | 979 | 669 | 421 | 151 | 209 | 487 | - | - |
| **Transferred BookOut/TOT-Other[2]** | 735 | 357 | 1,989 | 1,038 | 124 | 273 | 224 | - | - |
| **Total Title 8 Transferred Out of Custody** | **56,513** | **46,596** | **47,320** | **29,100** | **8,334** | **7,162** | **8,048** | - | - |

[1] Manifested as turned over to other Federal agencies, to include Immigration and Customs Enforcement, Health and Human Services, U.S. Marshals, etc.

[2] Includes subjects that have not been transferred out of USBP custody at the time the data was collected or subjects manifested as transferred to hospital, paroled, etc.

## U.S. Border Patrol - Southwest Border In Custody    +

### USBP Average Daily Subjects In Custody by Southwest Border Sector

*U.S. Border Patrol facilities, such as stations and central processing centers, provide short-term holding capacity for the processing and transfer of individuals encountered by agents. Maximum facility capacity along the southwest border is approximately **12,000** which assumes a homogenous population and full operating status at all facilities. Actual capacity fluctuates constantly based on characteristics of in-custody population, to include demographics, gender, criminality, etc.*

| Sector | Oct-24 | Nov-24 | Dec-24 | Jan-25 | Feb-25 | Mar-25 | Apr-25 | May-25 | Jun-25 | Jul-25 | Aug-25 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Big Bend** | 6 | 4 | 7 | 7 | 4 | 6 | 9 | - | - | - | - |
| **Del Rio** | 403 | 449 | 397 | 202 | 34 | 48 | 70 | - | - | - | - |
| **El Centro** | 162 | 68 | 46 | 43 | 5 | 4 | 5 | - | - | - | - |
| **El Paso** | 911 | 1,170 | 1,424 | 796 | 175 | 133 | 113 | - | - | - | - |
| **Laredo** | 639 | 643 | 526 | 470 | 60 | 68 | 68 | - | - | - | - |
| **Rio Grande** | 508 | 428 | 782 | 691 | 206 | 170 | 134 | - | - | - | - |
| **San Diego** | 1,205 | 1,249 | 1,165 | 1,010 | 558 | 115 | 74 | - | - | - | - |
| **Tucson** | 605 | 467 | 478 | 270 | 31 | 30 | 37 | - | - | - | - |
| **Yuma** | 488 | 421 | 372 | 276 | 61 | 15 | 17 | - | - | - | - |

| Sector | Oct-24 | Nov-24 | Dec-24 | Jan-25 | Feb-25 | Mar-25 | Apr-25 | May-25 | Jun-25 | Jul-25 | Aug-25 |
|--------|--------|--------|--------|--------|--------|--------|--------|--------|--------|--------|--------|
| **Total** | **4,927** | **4,901** | **5,198** | **3,764** | **1,134** | **589** | **529** | - | - | - | - |

## SPP Program Overview 

### USBP Southwest Border SPP Program Apprehensions Since Program Inception through April 2025

Apprehension data includes deportable migrants only.

*Data Source: EID through BPERT (Unofficial) as of 5/02/2025 09:56:13 AM*

| SPP Program | SPP Program Type | Inception Date | Apprehensions Since Inception |
|-------------|------------------|----------------|-------------------------------|
| **MPP** | NTA Program | 1/28/2019 | 82,227 |
| **ENV** | Removal Modality | 8/5/2019 | 106,492 |
| **PACR** | ER Program | 10/7/2019 | 3,081 |
| **HARP** | ER Program | 10/28/2019 | 691 |
| **ACA_GUAT** | ER Program | 11/19/2019 | 1,493 |
| **IRI/IFP** | Removal Modality | 12/19/2019 | 37,339 |

## Pathways and Programs Definitions    +

### Migrant Protection Protocols (MPP)

The Migrant Protection Protocols (MPP) is an exercise of the Department of Homeland Security's express statutory authority under the Immigration and Nationality Act (INA) to return certain applicants for admission, or those who enter illegally between the ports of entry, who are subject to removal proceedings under INA Section 240 Removal Proceedings to Mexico pending removal proceedings.

### Prompt Asylum Claim Review (PACR)

The Prompt Asylum Claim Review (PACR) pathway was developed by U.S. Border Patrol (USBP), in coordination with U.S. Immigration and Customs Enforcement (ICE), U.S. Citizenship and Immigration Services (USCIS), and the Executive Office for Immigration Review (EOIR) to promptly address credible fear claims of amenable individuals.

### Asylum Cooperative Agreement (ACA)

U.S. Customs and Border Protection (CBP), in coordination with U.S. Immigration and Customs Enforcement (ICE) Enforcement Removal Operations (ERO), and U.S. Citizenship and Immigration Services (USCIS), have executed Asylum Cooperative Agreements (ACAs) to facilitate the transfer of individuals to a third country where they will have access to full and fair procedures for determining their protection claims, based on the ACAs.

### Humanitarian Asylum Review Process (HARP)

The Humanitarian Asylum Review Process (HARP), was developed by U.S. Customs and Border Protection (CBP), in coordination with U.S. Immigration and Customs Enforcement (ICE), U.S. Citizenship and Immigration Services (USCIS), and the Executive Office for Immigration Review (EOIR) to promptly address credible fear claims of amenable

6/16/25, 9:04 PM
Case 2:85-cv-04544-DMG-AGR   Document 1575-3   Filed 06/17/25   Page 24 of 33
Page ID #:53855
Custody and Transfer Statistics | U.S. Customs and Border Protection

Mexican nationals.

## Electronic Nationality Verification

Under the Electronic Nationality Verification (ENV) program U.S. Customs and Border Protection (CBP), in coordination with U.S. Immigration and Customs Enforcement (ICE) Enforcement and Removal Operations (ERO), remove eligible noncitizens with a final order of removal to their native countries.

## Interior Repatriation Initiative (IRI)

Under the Interior Repatriation Initiative (IRI), U.S. Customs and Border Protection (CBP), in coordination with U.S. Immigration and Customs Enforcement (ICE) Enforcement Removal Operations (ERO) and the Mexican Ministry of the Interior, remove eligible noncitizens from Mexico to the interior of Mexico.

## Additional Statistics                                                    +

USBP's methodology for reporting apprehensions attributes encounters to various enforcement zones throughout the sectors. Due to a unique alignment of enforcement zones in the state of New Hampshire, all apprehensions made in the state would be attributed to stations in Vermont using this methodology. As New Hampshire is the only state that this methodology impacts in such a way, CBP is releasing the number of encounters that took place within the state's boundaries on the below table. Data for New Hampshire reflected on the Nationwide Encounter page's Encounters by State table only includes OFO encounters.

### New Hampshire FY21 - FY24 USBP Apprehensions by Month

**Fiscal Year 2021**

6/16/25, 9:04 PM
Case 2:85-cv-04544-DMG-AGR Document 1575-3 Filed 06/17/25 Page 25 of 33
Page ID #:53856
Custody and Transfer... Custodial and Transfer Statistics

| Region | Oct-20 | Nov-20 | Dec-20 | Jan-21 | Feb-21 | Mar-21 | Apr-21 | May-21 | Jun-21 | Jul-21 | Aug-21 |
|--------|--------|--------|--------|--------|--------|--------|--------|--------|--------|--------|--------|
| Swanton | 0 | 2 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 3 |
| Houlton | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total | 0 | 2 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 3 |

## Fiscal Year 2022

| Region | Oct-21 | Nov-21 | Dec-21 | Jan-22 | Feb-22 | Mar-22 | Apr-22 | May-22 | Jun-22 | Jul-22 | Aug-22 |
|--------|--------|--------|--------|--------|--------|--------|--------|--------|--------|--------|--------|
| Swanton | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 |
| Houlton | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 |

## Fiscal Year 2023

| Region | Oct-22 | Nov-22 | Dec-22 | Jan-23 | Feb-23 | Mar-23 | Apr-23 | May-23 | Jun-23 | Jul-23 | Aug-23 |
|--------|--------|--------|--------|--------|--------|--------|--------|--------|--------|--------|--------|
| Swanton | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 9 | 1 | 3 |
| Houlton | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 9 | 1 | 3 |

## Fiscal Year 2024

| Region | Oct-23 | Nov-23 | Dec-23 | Jan-24 | Feb-24 | Mar-24 | Apr-24 | May-24 | Jun-24 | Jul-24 | Aug-24 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Swanton** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 0 |
| **Houlton** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | **2** | **0** | **0** | **0** |

## Fiscal Year 2025

| Region | Oct-24 | Nov-24 | Dec-24 | Jan-25 | Feb-25 | Mar-25 | Apr-25 | May-25 | Jun-25 | Jul-25 | Aug-25 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Swanton** | 1 | 0 | 0 | 1 | 2 | 0 | 1 | - | - | - | - |
| **Houlton** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | - | - | - | - |
| **Total** | **1** | **0** | **0** | **1** | **2** | **0** | **1** | - | - | - | - |

# Related Resources

## Title 8 and Title 42 Statistics                                    +

[Title 8 Enforcement Actions and Title 42 Expulsions](#)

6/16/25, 9:04 PM
Case 2:85-cv-04544-DMG-AGR   Document 1575-3   Filed 06/17/25   Page 27 of 33
Custody and Transfer Statistics | U.S. Customs and Border Protection
Page ID #:53858

## Previous Year Statistics    +

FY 2024

---

FY 2023

---

FY 2022

---

FY 2021

**Last Modified: May 12, 2025**

# EXHIBIT B

1300 Pennsylvania Avenue, NW
Washington, DC 20229



**U.S. Customs and
Border Protection**

*Commissioner*

**MAY 0 5 2025**

MEMORANDUM FOR:    See Distribution
                   (b) (6), (b) (7)(C)
FROM:              Pete Flores
                   Acting Commissioner

SUBJECT:           **Rescission of Legacy Policies Related to Care and Custody**

Upon review it has been determined that the following policies are either obsolete or misaligned with current Agency guidance and immigration enforcement priorities. As such, the following policies are hereby rescinded, effective immediately:

1. *Processing of Pregnant, and Postpartum Noncitizens and Infants*, January 28, 2022.

2. *Custodial Considerations for Medically At-Risk Individuals*, May 19, 2023.

3. *Additional Guidance on Custodial Considerations for Medically At-Risk Individuals*, October 12, 2023.

4. *Monitoring of Vulnerable Individuals in CBP Custody*, March 19, 2024.

Agency personnel are to continue processing aliens in custody in accordance with the requirements of CBP's *National Standards on Transport, Escort, Detention and Search* and the *Clarification of At-Risk Population and Hold Room Monitoring Provisions in TEDS* while working to transfer aliens from CBP custody as quickly as possible. This recission does not change the requirement for regular and frequent hold-room checks in accordance with each operational office's policies and procedures. CBP personnel must also continue to follow all established policies and procedures regarding medical care and the requirements set forth within the *Flores* Settlement Agreement, related to juveniles and including infants.

The safety of all who we encounter during operations remains a top priority. All CBP personnel are expected to treat those in Agency custody in a professional and respectful manner.

Questions related to the guidance above shall be directed to the Office of the Commissioner-Policy Directorate at      (b) (7)(E)

Rescission of Legacy Policies Related to Care and Custody
Page 2


**Distribution**:  Acting Deputy Commissioner
Chief Operating Officer
All Executive Assistant Commissioners
Chief, U.S. Border Patrol
Chief Counsel
Chief Financial Officer
Assistant Commissioner, Congressional Affairs
Assistant Commissioner, Office of Professional Responsibility
Assistant Commissioner, Public Affairs
Assistant Commissioner, Office of Intelligence
Executive Director, Policy Directorate
Executive Director, Trade Relations
Executive Director, Privacy, FOIA, and EEO
Executive Director, Intergovernmental Public Liaison
Director, Executive Secretariat
Chief of Staff
Deputy Chiefs of Staff

# EXHIBIT C



1300 Pennsylvania Avenue, NW
Washington, DC 20229

**U.S. Customs and
Border Protection**

*Commissioner*

May 19, 2023

MEMORANDUM FOR:    Raul Ortiz
Chief
U.S. Border Patrol

Pete Flores
Executive Assistant Commissioner
Office Of Field Operations

FROM:    Troy A. Miller
Acting Commissioner

SUBJECT:    Custodial Considerations for Medically At-Risk Individuals

The safety of U.S. Customs and Border Protection (CBP) employees, individuals in our custody, and the public is the top priority during all aspects of CBP operations. CBP's National Standards on Transport, Escort, Detention, and Search (TEDS) guidance directs that individuals should generally not be held for longer than 72 hours in CBP holding facilities. Every effort must be made to hold individuals for the least amount of time required for their processing, transfer, release, or repatriation as appropriate and as operationally feasible.

At-risk or medically fragile individuals, which includes but is not limited to individuals with a chronic illness; infants or elderly; minors with an acute injury, medical or mental health condition; pregnant women or post-partum mothers with complications; and individuals with a disabling mental disorder, should be expeditiously processed to minimize the length of time in CBP custody.  While such individuals are in our custody, it is imperative to ensure timely medical assessments, recurring wellness checks, and follow up assessments by medical providers are conducted pursuant to CBP policies and documented via appropriate systems.

It is appropriate for CBP to take steps to consider the impact of custodial conditions, including the length of time-in-custody, the number of individuals in custody, and medical issues for individuals in its custody. As a result, I direct that all Sectors and Field Offices should immediately:

1.    Ensure that at-risk or medically fragile individuals in CBP custody, as determined in consultation with medical providers, are considered for processing or reprocessing ▮

Custodial Considerations for Medically At-Risk Individuals
Page 2

2. Ensure that individuals in CBP custody for whom extended time-in-custody may have greater adverse impacts, such as family units containing minors under the age of 12, pregnant individuals or the elderly have been considered for processing via a pathway that appropriately limits the amount of time they may spend in custody. Such individuals should not be processed in a pathway where their time in custody may exceed 120 hours. CBP will continue to follow the requirements of the *Flores* Settlement Agreement.

In making these decisions, particular consideration shall be given to whether individuals have been or are likely to be in custody for more than 72 hours or the facility is over capacity. All Unaccompanied Children should continue to expeditiously be transferred to HHS as obligated under the law and CBP policies. Moreover, Sectors and Field Offices are reminded to ensure all current laws and policies are followed, including requirements with respect to family unit separation and family group unity.

Finally, it is critical that all monitoring systems in holding facilities used for at-risk individuals, such as Closed-Circuit Television and Incident Driven Video Recording Systems, are fully functioning and used appropriately to enhance transparency and documentation of events.

CC: Executive Assistant Commissioner, Enterprise Services
  Executive Assistant Commissioner, Operations Support
  Chief Council
  Executive Director, Policy Directorate