1  ANDREA SHERIDAN ORDIN (SBN 38235)
   STRUMWASSER & WOOCHER LLP
2  1250 Sixth Street, Suite 205
   Santa Monica, California 90401
3  Telephone: (310) 576-1233
   Facsimile: (310) 319-0156
4  E-mail: aordin@strumwooch.com

5

6

7

8

9              **UNITED STATES DISTRICT COURT**

10        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11

12  JENNY LISETTE FLORES, *et al*.,        CASE NO. CV 85-4544-DMG (AGRx)

13           Plaintiffs,                   **NOTICE OF FILING OF FINAL**
                                           **JUVENILE CARE MONITOR**
14                                         **REPORT BY JUVENILE CARE**
                                           **MONITOR PAUL H. WISE**
15           v.

16

17  PAMELA J. BONDI, Attorney
    General of the United States, *et al*.,
18

19           Defendants.

20

21

22

23

24

25

26

27

28

In accordance with the Court's Orders, the Juvenile Care Monitor has continued to work to ensure an effective transition of monitoring functions pursuant to the Court's Order extending the JCM's term until June 27, 2025. [Doc. 1547.] The Juvenile Care Monitor team discussed with the Parties the JCM Interim Report [Doc. 1570] prior to its filing, and reviewed their written comments.  The Juvenile Care Monitor team also reviewed Plaintiffs' Response to Interim Juvenile Care Monitor Report. [Doc. 1572].

Legal Advisor Andrea Sheridan Ordin submits the attached Final Juvenile Care Monitor Report.

DATED:        June 18, 2025              Respectfully submitted,

Andrea Sheridan Ordin
STRUMWASSER & WOOCHER LLP


By    */s/ Andrea Sheridan Ordin*
        Andrea Sheridan Ordin

        *Legal Advisor*

# JUVENILE CARE MONITOR FINAL REPORT

## JUNE 2025

**Submitted by**

**Dr. Paul H. Wise, Juvenile Care Monitor**

**Andrea Sheridan Ordin, Legal Advisor**

**Dr. Nancy Ewen Wang, Medical Advisor**

This report presents the final observations and assessments of the Juvenile Care Monitor (JCM), Legal Advisor, and Medical Advisor who have been charged with conducting independent assessments of custodial conditions for children held in U.S. Customs and Border Protection (CBP) facilities in the Rio Grande Valley (RGV) and El Paso sectors. These assessments have been required by the provisions of a settlement agreement approved by the Court on July 29, 2022 [Doc. # 1278] (the "Settlement Order" or "Settlement") which mandates specific custodial conditions and procedures for immigrant children in CBP custody in the RGV and El Paso sectors.

The Settlement was the result of approximately 3 years of negotiations between the parties under the guidance of Ms. Andrea Ordin, the Special Master, with technical contributions by Dr. Paul H. Wise, the appointed Medical Expert. The Settlement mandates a series of specific custodial conditions and procedures. It also established the JCM position to assess CBP compliance with the provisions of the Settlement. The first JCM to be appointed was Dr. Paul H. Wise, who served in that position until the conclusion of his term on December 11, 2023. On December 14, 2023, Andrea Sheridan Ordin was appointed Juvenile Care Monitor. Dr. Wise was appointed the Medical Advisor and Dr. Nancy Wang as the Medical Expert. [Doc. # 1381.] On February 8, 2025, Dr. Wise reassumed the role of JCM, Ms. Ordin the Legal Advisor; Dr. Wang continued as the Medical Expert.

The Settlement envisioned that the JCM role would sunset after 16 months with compliance monitoring responsibilities transferred from the JCM to internal CBP monitoring systems. The JCM term was extended several times by agreement of both parties and the Court; the JCM term is currently scheduled to end on June 27, 2025. [Doc. 1547.]

1

The JCM has conducted 32 site visits to the RGV and El Paso sectors and numerous virtual and in-person meetings with both parties since the initiation of the Settlement.  In anticipation of the transfer of monitoring responsibilities to CBP, the Settlement requires that "prior to the effective transition of monitoring functions, the JCM shall approve Defendant's final monitoring protocols." (See Agreement Section IX.12).  CBP has shared relevant monitoring protocols and capabilities with the JCM which has allowed the JCM to critically assess the nature, scope, and quality of these monitoring protocols.

This Final Report builds upon the detailed assessments provided in the recent JCM Interim Report (Doc #1570, filed May 27, 2025) and presents the JCM's conclusions regarding two evaluative issues: 1) Current CBP compliance with the provisions of the Settlement and 2) the adequacy of CBP monitoring systems to replace the JCM once its term has been completed.


## A. SUMMARY

This Final Report presents the evaluation and observations of the Juvenile Care Monitor (JCM), Medical Advisor and Medical Expert who are charged with conducting independent assessments of custodial conditions for children held in U.S. Customs and Border Protection (CBP) facilities in the Rio Grande Valley (RGV) and El Paso sectors.

This report first documents the JCM assessment of CBP compliance with the provisions of the Settlement.  In addition, anticipating the transfer of monitoring responsibilities from the JCM to internal CBP monitoring systems, this report also assesses the current capacity of these CBP systems to assume this monitoring role. **CBP is in substantial compliance with the provisions of the Settlement**. The JCM assessment concludes that CBP has satisfactorily met most of the Settlement

2

requirements. Of greatest importance has been meeting the Settlement requirements pertaining to Juvenile Priority Facilities (JPFs), overcrowding, the maintenance of clean sanitation and hygiene facilities, and the development of an effective medical care system.  Areas that do not currently meet the requirements of the Settlement include the provision of age-appropriate food for young children and ambient temperature control in the El Paso JPF, and the current deployment of Caregivers in both sectors.

**CBP has established generally effective systems for monitoring the custodial care of children in CBP custody.** Effective systems include a strong ability at the facility, sector, and headquarters levels to monitor overcrowding and Time in Custody (TIC times).  The monitoring of most amenities, including safety, temperature, showering, and meals are the responsibility of CBP facility and sector supervisors, using digital logs and direct inspection.  Most elements of the medical care system for children can be monitored well by medical leadership at the headquarters and sector levels through newly implemented, computer-based assessment capabilities.

It should be recognized that the true utility of an effective monitoring system depends upon its effective coupling with a commitment to act whenever needs are identified.  Accordingly, this report addresses both the requirements for appropriate custodial care as well as the monitoring structures necessary to ensure that this level of care is maintained in the months and years to come.

## B. MONTHLY TIME IN CUSTODY REPORTS

CBP has provided monthly reports to the JCM and Plaintiffs on all children with Time in Custody (TIC times) of greater than 72 hours.  The JCM Interim report of May 2025 documented that families routinely have TIC times greater than 7 days,

3

some longer than 14 days.  Recent site visits have noted somewhat shorter TIC times for families than earlier in the year.  Unaccompanied children (UCs) are rarely held in CBP custody for more than 72 hours.

Over the past several months, questions have arisen regarding the accuracy of the CBP TIC time reports.  Concerns have focused on whether some children with TIC times greater than 72 hours were not included in the monthly reports.  In order to address the possibility that there were problems transferring information from the daily sector rosters to the dataset used to construct the monthly reports, the JCM compared the daily rosters of children in custody in the RGV and El Paso sectors for the period January through April 2025 with the names included in the monthly reports.  This analysis found that all children with TIC times greater than 72 hours in the daily rosters were, in fact, included in the monthly reports, except for those children whose TIC times were truncated by the date cut-offs used to produce the reports each month.  In response, CBP will provide the Plaintiffs with supplementary reports that should include all such cases.

**Summary Assessment**

The provision of the supplementary monthly reports should rectify the problems encountered with the monthly reports of children with TIC times greater than 72 hours.  This should allow the Plaintiffs to monitor UC and family TIC times with greater confidence.

## C. ASSESSMENT OF COMPLIANCE WITH SETTLEMENT PROVISIONS

### C.1. Facility Designation

The Settlement requires that CBP establish Juvenile Priority Facilities in each sector. The JPFs are designated to have the special custodial capabilities necessary

to ensure full compliance with the provisions of the Settlement. In addition, "CBP shall transfer all class members who are not immediately returned voluntarily to their country of origin to juvenile priority facilities as expeditiously as possible. Such transfer shall occur within 48 hours of arrival at a non-priority facility and, in general, within 24 hours of arrival at a non-priority facility. CBP shall make all reasonable efforts to hold class members in juvenile priority facilities for the duration of their time in CBP custody.*"*

The designation of a Juvenile Priority Facility in each sector represents a crucial element in CBP's system of custodial care for children. The JPFs allow CBP to concentrate into one facility the range of custodial resources, procedures and personnel specifically committed to meeting the special requirements of holding children and families.

Since July 2022, CBP has established JPFs in the RGV and El Paso sectors in compliance with the requirements of the Settlement. Although the JPFs have changed locations several times in both sectors over the past 3 years, they have consistently been located in facilities characterized by relatively large holding pods, more private but still secure sanitation areas, and somewhat more expansive play areas.

The designated JPFs in both the RGV and El Paso sectors have changed in recent months. Since February 2025, the JPF in RGV is currently located in the Ursula BP facility in McAllen, Texas. In El Paso, the JPF has been located in the CBP Central Processing Center (CPC) since March 2025.

**Summary Assessment**

CBP is in substantial compliance with the obligation to establish JPFs in both sectors and transfer UCs and families to the JPFs within the requisite 48-hour time

frame.  It is expected that the location of the JPFs will change in response to the number of children needing to be housed in the sector.  Care should be taken to ensure that any change in JPF location is not associated with interruptions in custodial services.  Most fundamentally, the practice of designating an appropriate JPF in each sector should be maintained regardless of the UC and family censuses as the custodial care of children would be undermined if dispersed among multiple sector facilities or located in a traditional Border Patrol station.

## C.2. Nutrition

The Settlement recognizes the essential requirement to provide children in custody with edible food and clean water.  Specifically, the Settlement requires that "In all facilities, CBP shall ensure that class members have access to age-appropriate meals and snacks that meet class members' daily caloric needs... CBP shall provide ready access to clean drinking water and cups, as appropriate, at all times…  CBP shall ensure that all class members have access to age-appropriate food that is prepared in a safe and sanitary manner, taking into account all appropriate food safety requirements. Food must be appropriate for class members' age and capabilities."

Age-appropriate foods require that the food offerings must not only provide adequate nutritional value for a young child but also be actually edible by a young child.  Offering adult meals to a very young child is inappropriate, particularly when utensils for cutting up food items are prohibited in holding cells. CBP has routinely provided adequate water and snacks to children soon after apprehension through their entire time in custody.  Infant formula, bottled water, and mixing instructions were also readily available in both the JPFs and other BP

stations in the RGV and El Paso sectors that could potentially hold children, even
if on a temporary basis.

The JCM Interim Report (May 2025) documented that in the JPF transition in El
Paso to the CPC location young child meals were eliminated from the contract.
Young children were being offered adult meals.  In addition, the meals were the
same every day, even for those children who were in custody for extended periods
of time.

**Summary Assessment**

CBP has shown partial compliance with the nutrition provisions of the Settlement.
The lack of appropriate food offerings for young children remains an area of
noncompliance.

## C.3. Warmth, Garments and Sleep

The Settlement requires that children be housed in facilities that maintain a
temperature within the 69° to 83° Fahrenheit range.  In addition, extra garments
should be available for children who feel cold.  Posters explaining the availability
of these garments should be posted in areas easily viewed by children and families
in custody.  Holding conditions should also be compatible with sleep during night
hours, including the availability of sleeping mats, blankets, and reduced lighting
when possible.

Because children can be profoundly cold even in temperatures falling within the
mandated range, it is essential that extra garments are available for children
whenever needed.  These garments include sweatshirts, sweatpants, socks, and for
infants, beanies.

Recent site visits to the Ursula facility in the RGV sector found that all holding pods had operating digital thermometers which read temperatures in compliance with the range mandated by the Settlement.  Parents, children, and Caregivers reported that there was an adequate supply of extra garments for children.

Site visits to the CPC in El Paso have continued to find that temperature control remains a persistent problem.  BP agents, Caregivers, parents, and children continue to report temperatures far outside the mandated range. CBP has reported that they have tasked the relevant contractors to repair the temperature control systems.  Extra garments were available for children upon request. Posters that explain that garments were available were displayed in the holding areas.

Sleep conditions in the JPFs largely depend on the number of individuals assigned to each holding pod.  Recent site visits have found that toilet areas have been generally clean and wash basins were supplied with soap.  Showers were also clean upon inspection.  Holding pods were cleaned at least once per day.

Recent site visits have also documented regular shower and toothbrush availability in compliance with the Settlement requirements.

**Summary Assessment**

CBP is in partial compliance with the amenities provisions of the Settlement.  The transition of the JPF in El Paso to the current CPC facility has been associated with a prolonged violation of the temperature provisions of the Settlement.  The lack of adequate temperature control in the CPC is ongoing, as noted during the JCM site visit of June 15, 2025. When possible, BP has made efforts to transfer families and UCs to holding pods in which the temperatures fall within the mandated range and extra garments have been made available upon request.

## C.4. Caregivers

The Settlement recognizes that "Caregivers are a critical component of CBP's efforts to meet the unique needs and vulnerabilities of class members in custody, and to provide a safe and secure environment for class members." This has required that the Caregiver program provide a variety of direct custodial care services to all children in CBP custody in the RGV and El Paso sectors, including "observing and reporting inappropriate behavior, detainee health conditions, and the recognition and referral of those detainees displaying emotional and mental distress." (See Settlement Section VII.9B).  CBP has assigned oversight of the Caregiver Program to the Office of Chief Medical Officer (OCMO) which underscored the importance of the Caregiver component to health and safety.

There are four primary objectives of the Caregiver program:

- To provide a range of direct custodial services for UCs and for families while in custody.
- To serve as the primary providers of trauma-informed care and activities for children in custody.
- To communicate to all children their rights, including rights to telephone calls, and communication with family members held separately.
- To help ensure that any medical concerns among UCs and families will be brought to the attention of facility medical providers.

Prior to the Settlement's introduction of Caregivers into CBP's system, the feeding, hygiene, and supervision of infants and young children in custody necessarily fell to BP agents, who may have had hundreds of minors in their care.

Caregivers have been essential to UCs and to assist parents with showering and ensuring that children are provided with all necessary garments.  Caregivers also

provide a crucial layer of CBP's system of medical vigilance as caregivers are
trained to provide a frontline capacity to observe levels of distress and the well-
being of children in custody, and to communicate parental concerns about their
children's medical condition.

In the December 2024 JCM Report (Doc. #1522, filed December 13, 2024) the
JCM described in detail the lack of uniformity in implementing the various
Caregiver functions and an apparent lack of understanding of the many facets of
the Caregiver role.  The Report focused on the failure to implement duties and
responsibilities outlined in the 2024 CBP drafted Statement of Work, including
provisions requiring active participation of the Caregivers in pods holding families.
The Report also encouraged that CBP provide a variety of child-friendly activities
as required in the Statement of Work's instruction to Caregivers to participate in
recreation and activities with the children.

Rather than observing significant improvements in the Caregivers' performance in
2025, the JCM observed further diminishment in the Caregivers' performance of
the duties set out in the Settlement and implemented through the Statement of
Work.  There was a major reduction in the numbers of Caregiver positions in both
the RGV and El Paso sectors.  While the major decline in families and UCs in
custody over recent months understandably would result in fewer Caregivers, the
curtailment of Caregiver functions and roles within the JPFs was disturbing and
described in the JCM Interim Report. As stated in the Interim Report, of special
concern was the implementation of staffing levels that eliminated the deployment
of Caregivers in the family holding areas, showers, or isolation units, unless there
were no or very few UCs in custody.

**Summary Assessment**

To the JCM, the significant curtailment of Caregivers in the family pods in both sectors represented a critical area of noncompliance with the Settlement. In discussions with OCMO and CBP after filing the Interim Report, it was learned that although a new Statement of Work in March of 2025 incorporated most of the excellent descriptions of duties of Caregivers, the Statement of Work explicitly gave priority to staffing UCs, and did not require equivalent staffing for both the UCs and children in families.

Through recent discussions with the leadership of OCMO, it is now our understanding that staffing will be increased, and new instructions and training are being prepared to ensure that Caregivers will be deployed to all children at a staffing level adequate to fulfill the requirements and duties of the Settlement, implemented through the Statement of Work.

Implementation of the Caregiver duties and responsibilities set forth in the Statement of Work as described by the leadership of OCMO would constitute substantial compliance with the Settlement.


## C.5. Trauma-Informed Care and Child-Appropriate Environment

The Settlement recognizes that the custodial conditions for holding children are profoundly different than those which have traditionally been considered appropriate for adults. Specifically, the Settlement states, "CBP shall treat all class members in custody with dignity, respect and special concern for their particular vulnerability as minors and place each class member in the least restrictive setting appropriate to the class member's age and special needs." (Section 8.A).

11

Families and UCs have consistently reported to the JCM that they feel physically safe while in CBP custody.  During recent visits, observations and interviews with families and UCs have noted adequate environmental safeguards and child-friendly materials in the areas designated for tender-aged UCs.  However, minimal materials have been available in older UC and family holding areas.  Televisions were generally available in all family and UC holding pods in both JPFs and are being used to provide child-appropriate programming and procedural information. Mandated information posters regarding detainee rights were posted in or adjacent to the UC and family holding pods in both JPFs.  Significantly, the low number of UCs in custody has been associated with UCs having regular access to daily phone calls to family members.

**Summary Assessment**

Currently in the JPFs, CBP is in substantial compliance with the minimal trauma-informed care and child-appropriate environment provisions of the Settlement. That UCs and families feel safe in CBP custody is a fundamental precondition for trauma-informed care.  However, the primary means by which this care is provided depends upon the full deployment, training, and equipping of Caregivers, the consistent commitment to family unity and visitation protocols, and the provision of access to phone calls.  In addition, materials and toys for child activities should be improved and opportunities for time outdoors enhanced.  Therefore, full compliance with the Settlement's trauma-informed care requirements is contingent upon satisfying these related custodial components.

## C.6. Holding Members of Family Separately While in Custody

The Settlement explicitly supports family unity while in CBP custody.  The section entitled "child-appropriate environment" begins with "Absent an articulable

operational reason, class members apprehended with adult family members (including non-parents or legal guardians) shall remain with that family member during their time in CBP custody." The Settlement goes on to insist that "When there is an operational need to house family members separately, CBP shall make and record the reasons for holding them apart and all reasonable efforts to ensure that the family members have the opportunity to interact."

It is important to recognize that when CBP holds children separately from a parent, it is only temporary as the families are reunited upon release from government custody. This custodial practice should not be confused with the family separations associated with the "Zero Tolerance" policy that was implemented in 2017-18. Exceptions to reunification can occur when a parent's criminal history is considered to pose a risk to the child.

The very low number of families in custody in the RGV and El Paso sectors have reduced significantly the practice of holding children separately from their parents. In addition, there has also been substantial improvement in the visitation regimen for parents and children when they are held separately.

**Summary Assessment**

With the marked reduction of families and UCs in custody, CBP is currently in substantial compliance with the family unity provisions of the Settlement. However, it is important to recognize that instances of noncompliance with these provisions have been generally associated with higher JPF censuses. Therefore, the family unity provisions of the Settlement should be viewed as vulnerable to major increases in family apprehensions.

## C.7. Enhanced Medical Support

CBP has made major strides in implementing a robust medical care system for children in custody.  The basic infrastructure of this system includes the deployment of contracted medical teams in the RGV and El Paso JPFs as well as other facilities likely to hold children.  These teams are required to be present 24 hours a day, 7 days a week.  In addition to the on-site medical teams, supervising physicians, including pediatricians, are assigned in each sector to provide on-call consultation, clinical protocol development, and quality assurance reviews.

This system and its medical protocols are not intended to be comprehensive in character.  Rather, they are designed to be fit-for-purpose to address CBP's special medical mission as a frontline, law enforcement agency.  However, the special character of CBP detention should be viewed as shaping the *nature* of required medical services and not justifying a diminished commitment to the *quality* of medical services.

As documented in the JCM Interim Report, CBP's medical system has been developed specifically to meet its special challenges in caring for children. It includes components that address the following issues:

- The immediate care of ill or injured children in the field;
- The identification of children at elevated medical risk;
- Systematic vigilance to identify children experiencing medical deterioration while in custody;
- Enhanced pediatric consultation and medical monitoring of children at elevated medical risk while in custody;
- Improved conveyance of medical information among CBP personnel, contracted health providers, and subsequent medical providers.

**Summary Assessment**

As detailed in the recent JCM Interim Report, CBP's medical system is in substantial compliance with the provisions of the Settlement.  The area of care that remains only partially implemented is the conveyance of medical information, particularly to parents and medical providers evaluating children referred to local hospitals by CBP.


## D. THE ASSESSMENT OF CBP MONITORING CAPABILITIES

The Settlement Agreement of July 2022 (the Settlement) envisioned a transfer of compliance monitoring responsibilities from the Court-appointed Juvenile Care Monitor to internal CBP monitoring systems.  Accordingly, the Settlement included a provision terminating the JCM role after 16 months from the initiation of the Settlement.  This duration was extended several times by agreement of both parties and the Court and is currently scheduled to end on June 27, 2025.

In anticipation of the transfer of compliance monitoring responsibilities to CBP, the Settlement included provisions that permitted the JCM to review all relevant CBP medical and custodial protocols in order to provide CBP with recommendations for enhancements and refinements.  The Settlement also required that the Final report "shall inform the Court and the Parties of the Juvenile Care Monitor's assessment of the efficacy of CBP's internal monitoring protocols…."  The Settlement requires that "prior to the effective transition of monitoring functions, the JCM shall approve Defendant's final monitoring protocols." (See Settlement Section IX.12).  CBP has been forthcoming in sharing relevant monitoring protocols as they have been developed and the JCM has been active in engaging with CBP on the nature, scope, and quality of these protocols.

Many of the CBP monitoring protocols have required detailed technical and operational scrutiny and discussion. For the purpose of this report, CBP monitoring systems can be assessed in 6 operational categories:

- Overcrowding
- Time in Custody
- Amenities
- Caregivers
- Child-Appropriate Environment
- Medical Care

## D.1. Overcrowding

Overcrowding not only results in inappropriately confined living spaces but can also overburden virtually all custodial capabilities, including nutrition, sanitation, hygiene, and medical care.

CBP has implemented a strong, real-time, digital system for monitoring the census of all facilities across the Southwest border. This system is accessible to CBP personnel at the headquarters, sectoral, and facility levels. Each facility has been assigned a maximum occupancy based on initial construction specifications. This allows CBP to monitor the census in relation to the designated maximum occupancy for all facilities holding children. It should be noted, however, that even when the census is low there is still the potential for overcrowding. This can occur when individuals in custody are held in limited spaces. Monitoring overcrowding, therefore, also requires vigilance from facility and sector supervisors. (See Section D.3).

**Summary Assessment**

CBP currently has a real-time capacity to accurately monitor overcrowding in its facilities.

## D.2. Time in Custody (TIC Times)

CBP monitors TIC times using the same digital system employed to monitor facility censuses. This capability allows supervisors at the national, sector, and facility levels to monitor the TIC times of children and families throughout the CBP detention system.

**Summary Assessment**

CBP has a strong capability to monitor the TIC times of all children in custody.

## D.3. General Conditions and Amenities

The JCM has monitored the conditions and amenities required by the Settlement, including the provision of adequate nutrition and water, ambient temperature, garments, sleep conditions, and hygiene and sanitation.  The JCM has also monitored the separate holding of children and parents as well as the requisite visitation practices.

While prior JCM reports have documented CBP's general compliance with the Settlement, certain arenas of custodial care have proven to be quite variable in their compliance, including the availability of additional garments when children were cold, showering and toothbrushing opportunities, and food offerings for young children.

CBP's system for monitoring the conditions and amenities for children in custody is primarily dependent on two mechanisms:

- Facility Amenities Logs

- Inspections by the Juvenile Care Division

## D.3.a. Facility Amenities Logs

The Amenities Logs are a standard digital form intended to document that all safety, general conditions, and required amenities are provided.  The Amenities Logs are completed by CBP or contract personnel stationed in the holding areas who can observe detainee movements and provided services.  JCM reviews of the Amenities Logs in the RGV and El Paso sectors has found that their accuracy can vary with the facility census.  The recent period of very low censuses has allowed generally accurate documentation of the required conditions and amenities. However, during periods of very high censuses, the accuracy of the Amenities Logs appeared to decline.  In addition, some required amenities are not captured by the Amenities Logs, including sleep conditions, food quality, the availability of toddler meals, and whether children and families are being treated professionally by CBP or contracted personnel.

## D.3.b. Juvenile Coordinator Division

The Juvenile Coordinator Division (JCD) employs site visits to assess CBP's compliance with the Settlement and other CBP regulations.  This unit conducts comprehensive inspections of CBP facilities and conveys its findings and recommendations to CBP operational personnel and leadership.  This unit has also provided annual reports to the Court regarding its findings and general assessment of CBP compliance with the Settlement.  In addition to its compliance reports, the JCD conducts trainings and other activities with CBP personnel to enhance their full understanding of CBP custodial policies.

The JCM has reviewed the JCD inspection protocols and has observed this unit's inspection visits to CBP facilities on multiple occasions. JCD site visits are thorough and conducted by committed and skilled personnel. A formal reporting structure is used to convey JCD findings to the appropriate CBP supervisors and the findings are included in an Annual Report.

While the JCD inspections provide a very good assessment of Settlement compliance, they occur relatively infrequently, generally twice per year for JPFs and once a year for other facilities. While the JCD has made some unscheduled site visits to address custodial concerns or court orders, the JCD is not well structured to quickly address concerns at facilities experiencing unexpected custodial challenges, such as a rapid surge of apprehensions.

**Summary Assessment**

The monitoring of amenities and visitation for children in CBP custody relies primarily on the oversight of facility and sector personnel. This stands in contrast to the systems for monitoring overcrowding and TIC times which are regularly monitored at the headquarters level as well. CBP established Juvenile Care Coordinators at the JPF and sector levels with primary responsibility for ensuring that children receive the full range of custodial services. In addition, sector level supervisors are responsible for monitoring the custodial conditions and procedures for all individuals in custody, including adults. This reliance on local personnel can be beneficial in that it relies on operators on the ground, generally present in these facilities on a daily basis. However, this localized strategy is at the same time vulnerable to local staffing, financial, and logistical pressures, pressures that have generated over the past 3 years multiple arenas of noncompliance, albeit mostly temporary, with the Settlement. This vulnerability underscores the

importance of regular JCD inspections, which after the termination of the JCM, will have to provide the only comprehensive reporting of the conditions, amenities and procedures affecting children in CBP custody.

## D.4. Caregivers

As discussed above, the Caregiver Program is a critical component of custodial care provided in the Settlement. OCMO has assumed responsibility for the management of the Caregiver Program including the monitoring of its performance. Any functional elimination of Caregivers in the family holding areas would be a significant area of noncompliance with the Settlement. OCMO has informed the JCM that it will ensure compliance and provide the required Caregiver support for both families and UCs in custody.

Given the variable performance of the Caregiver program over the past year, there was an expectation that the Child Welfare Specialist Program (CWSP) would provide enhanced training and guidance for the Caregivers as part of an integrated child welfare strategy. However, to date, the JCM has not been aware of any CWSP contributions to the nature or scope of Caregiver activities.

### Summary Assessment

Given CBP's commitment to enhance the staffing of the Caregiver program, OCMO will need to provide a strengthened monitoring role in order to ensure greater quality and uniformity in Caregiver activities.

## D.5. Child-Appropriate Environment

The Settlement recognizes that a central requirement of a child-appropriate environment is the housing of a child with her parents, legal guardians, or other family members. (See Settlement Section VII.8.B). The Settlement requires a

20

documented, specific operational need to justify holding a child separately from an adult family member.  The Settlement permits this practice when age and gender discontinuities exist (e.g. holding a teenage female separately from her father who will be housed with other fathers or single adult males) or when another specific operational need for separate housing can be articulated, a need that must be documented.

When a documented operational need exists for housing children separately from their parents, legal guardians, or other family member, the Settlement requires regular opportunities for family visitation while in custody.  The JCM has documented considerable variation in visitation opportunities in the El Paso and RGV sectors, and a lack accurate documentation of visits.

**Summary Assessment**

As with the provision of amenities, the monitoring of compliance with the Settlement's family housing and visitation requirements is the responsibility of CBP operational leaders at the facility level.

## D.6. Medical Care

CBP has made substantial progress in the scope and quality of its medical monitoring systems for children in custody.  Responsibility for CBP's medical monitoring system lies with the Office of the Chief Medical Officer (OCMO), CBP.  OCMO has developed digital alert systems and dashboards at the headquarters level to assess in near real-time critical components of CBP's medical system, including the following major elements:

- Emergency transfer to hospital from the field prior to arrival at CBP facility.

21

- Remote access to all Electronic Medical Records (EMRs) for all children in custody;

- Additional identification of children at elevated medical risk through mandated medical examination within 24 hours of apprehension;

- Mandated consultation with on-call pediatricians for all children identified at elevated medical risk and/or require isolation;

- Administration of medication;

- Entrance of children with elevated risk into the Enhanced Medical Monitoring (EMM) system and the performance of all EMM checks;

- Referral of children from a CBP facility to a local hospital;

- Instances when a medical decision to refer has been made but no transport to hospital has occurred;

- The conveyance of medical information to the Office of Refugee Resettlement, ICE, and parents upon their transfer out of CBP custody;

- The consistent and formal examination of medical "sentinel events" which are serious health-related occurrences, such as deaths or hospitalizations, that warrant detailed medical review.

**Summary Assessment**

CBP's medical monitoring capabilities have improved substantially and have the capacity to help ensure high quality medical care for children in CBP custody.  In addition, OCMO has the capability to monitor Caregiver activities as staffing levels and functions are enhanced.

**CERTIFICATE OF SERVICE**

Case No. CV 85-4544- DMG (AGRx)

I am a citizen of the United States. My business address is 250 Sixth Street, Suite 205, Santa Monica, California 90401. I am over the age of 18 years, and not a party to the within action.

I hereby certify that on June 18, 2025, I electronically filed the following documents with the Clerk of the Court for the United States District Court, Central District of California by using the CM/ECF system:

**NOTICE OF FILING OF FINAL JUVENILE CARE MONITOR REPORT BY JUVENILE CARE MONITOR PAUL H. WISE**

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the United States the foregoing is true and correct. Executed on June 18, 2025, at Los Angeles, California.


Jeff Thomson