1     CENTER FOR HUMAN RIGHTS &
2     CONSTITUTIONAL LAW
      Carlos R. Holguín (Cal. Bar No. 90754)
3     Bardis Vakili (Cal. Bar No. 247783)
4     Sarah E. Kahn (Cal. Bar No. 341901)
      256 South Occidental Boulevard
5     Los Angeles, CA 90057
6     Telephone: (213) 388-8693
      Email:    crholguin@centerforhumanrights.org
7             bardis@centerforhumanrights.org
8             sarah@centerforhumanrights.org

9     Attorneys for Plaintiffs

10
    *Additional counsel listed on following page*
11

12

13                  UNITED STATES DISTRICT COURT

14                  CENTRAL DISTRICT OF CALIFORNIA

15                    WESTERN DIVISION

| | |
|---|---|
| 16   JENNY LISETTE FLORES, *et al.*, | No. CV 85-4544-DMG-AGRx |
| 17     Plaintiffs, | PLAINTIFFS' OPPOSITION TO MOTION TO |
| 18   v. | TERMINATE SETTLEMENT |
| 19 | |
| 20   PAM BONDI, Attorney General of the | Hearing: July 18, 2025 |
| 21   United States, *et al.*, | Time: 2:00 p.m. |
| 22     Defendants. | Hon. Dolly M. Gee |

23

24

25

26

27

28

NATIONAL CENTER FOR YOUTH LAW
Mishan Wroe (Cal. Bar No. 299296)
Diane de Gramont (Cal. Bar No. 324360)
1212 Broadway, Suite 600
Oakland, CA 94612
Telephone: (510) 835-8098
Email: mwroe@youthlaw.org

NATIONAL CENTER FOR YOUTH LAW
Rebecca Wolozin (admitted pro hac vice)
818 Connecticut Ave. NW, Suite 425
Washington, DC 20006
Telephone: (202) 868-4792
Email: bwolozin@youthlaw.org

CHILDREN'S RIGHTS
Leecia Welch (Cal. Bar No. 208741)
2021 Fillmore Street
San Francisco, CA 94115
Telephone: (415) 602-5202
Email: lwelch@childrensrights.org

CHILDREN'S RIGHTS
Eleanor Roberts (admitted pro hac vice)
88 Pine Street, Suite 800
New York, NY 10005
Telephone: (212) 683-2210
Email: eroberts@childrensrights.org

i

# TABLE OF CONTENTS

I.      Introduction. ....................................................................................... 1

II.     Procedural posture of the case at bar............................................... 2

III.    8 U.S.C. § 1252(f)(1) does not strip this Court of jurisdiction
        over the Settlement. ........................................................................... 4

        A.    Defendants' § 1252(f) argument is barred by the law-of-the-
              case doctrine and mandate rule. ............................................. 6

        B.    8 U.S.C. § 1252(f)(1) does not deprive the Court of subject
              matter jurisdiction or remedial power over the Settlement ..... 8

        C.    Defendants' § 1252(f)(1) argument is waived and time-barred........ 11

        D.    Section 1252(f) does not require wholesale termination of the
              FSA. ....................................................................................... 14

IV.     Defendants are not in substantial compliance with the FSA. ....... 15

        A.    HHS's internal policies do not constitute substantial
              compliance. ............................................................................ 16

        B.    DHS's regulations remain violative of the Settlement; its
              internal policies are no substitute for consistent regulations. ....... 19

        C.    DHS continues to flout the FSA. ......................................... 20

V.      Partial termination is not available on Defendants' instant
        motion................................................................................................ 24

        A.    Defendants explicitly move for complete, not partial,
              termination. ........................................................................... 24

        B.    DHS's 2019 regulations do not warrant partial termination............. 25

VI.     No changed circumstances warrant termination of the FSA on
        equitable grounds .............................................................................. 27

        A.    Defendants' arguments are barred by the mandate rule..................... 28

        B.    No change in law warrants termination. .............................. 28

        C.    Defendants fail to show that changes in facts warrant
              termination. ........................................................................... 29

1

2

D.     The Settlement does not violate separation of powers or the Administrative Procedure Act............................................................... 31

E.     Even if changed circumstances existed, termination would not be a suitably tailored remedy .............................................. 36

VII.     Conclusion................................................................................... 37

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Opposition to Motion to Terminate Settlement
CV 85-4544-DMG-AGRX

## TABLE OF AUTHORITIES

**CASES**

*Agostini v. Felton,* 521 U.S. 203 (1997)...................................................12

*All to End Repression v. City of Chicago*, 742 F.2d 1007 (7th Cir. 1984)..............37

*Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal.4th 83 (Cal. 2000) ...................................................................................43

*Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557 (1968)...................................................10

*Berger v. Heckler*, 771 F.2d 1556 (2d Cir. 1985)...................................................39

*Berne Corp. v. Gov't of Virgin Islands*, 105 Fed. Appx. 324 (3d Cir. 2004)..........36

*Biden v. Texas*, 597 U.S. 785 (2022).........................................................5, 10, 17

*Cancino v. Mayorkas*, Case No. 3:17-cv-00491-JO-AHG, ECF Nos. 242-2 (S.D. Cal. 2024) ...................................................................................13

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882 (9th Cir. 2001)...................................................................................42

*Conservation Northwest v. Sherman,* 715 F.3d 1181 (9th Cir. 2013)..............40, 41

*Cotterill v. City & Cnty. of San Francisco*, No. 23-15162, 2025 WL 484697 (9th Cir. Feb. 13, 2025)...................................................................................10

*Cranshire Cap., L.P. v. CBTV-Star, LW, Inc.*, 70 F. App'x 434 (9th Cir. 2003)....42

*Flores v. Barr*, 407 F. Supp. 3d 909 (C.D. Cal. 2019)....................................passim

*Flores v. Barr*, 934 F.3d 910 (9th Cir. 2019) ("*Flores III*") ....................2, 8, 9, 16

*Flores v. Barr*, No. CV-85-4544-DMG, 2020 WL 2758792 (C.D. Cal. Apr. 24, 2020)...................................................................................27

*Flores v. Barr*, No. CV85-4544-DMG, 2020 WL 2758795 (C.D. Cal. May 22, 2020)...................................................................................27

*Flores v. Garland,* No. CV 85-4544-DMG (AGRX), 2024 WL 3467715 (C.D. Cal.

June 28, 2024)................................................................................passim

*Flores v. Johnson*, 212 F. Supp. 3d 864 (C.D. Cal.) ...........................25, 31, 34, 35

*Flores v. Lynch*, 212 F. Supp. 3d 907 (C.D. Cal. 2015).......................15, 16, 25, 43

*Flores v. Lynch*, 828 F.3d 898 (9th Cir. 2016) ("*Flores I*")............................passim

*Flores v. Meese*, 681 F. Supp. 665 (C.D. Cal. 1988) .................................................2

*Flores v. Rosen*, 984 F.3d 720 (9th Cir. 2020) ("*Flores IV*") ........................passim

*Flores v. Sessions*, 2018 WL 4945000 (C.D. Cal. 2018) .................................35, 36

*Flores v. Sessions*, 394 F. Supp. 3d 1041 (C.D. Cal. 2017)............................passim

*Flores v. Sessions*, 862 F.3d 863, 870-71 (9th Cir. 2017) ("*Flores II*") .............2, 33

*Galvez v. Jaddou*, 52 F.4th 821 (9th Cir. 2022) ......................................................6, 14

*Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022) ("*Aleman*") ....................passim

*Greisen v. Hanken*, 925 F.3d 1097 (9th Cir. 2019) ........................................18, 30

*Hernandez Roman v. Mayorkas*, Case No. 5:20-cv-00768-TJH-PVC, ECF No.
    2636-2 (C.D. Cal. 2024) .......................................................................13

*Horne v. Flores*, 557 U.S. 433 (2009)...........................................................32, 42

*Immigrant Defs. L. Ctr. v. Noem*, No. CV 20-9893 JGB (SHKX), 2025 WL
    1172442 (C.D. Cal. Apr. 16, 2025) .......................................................13

*In re Hammer,* 940 F.2d 524  (9th Cir. 1991) ........................................................10

*In re Sanford Fork & Tool Co.*, 160 U.S. 247 (1895) .............................................7

*Jeff D. v. Otter*, 643 F.3d 278 (9th Cir. 2011) ...........................................19, 31, 32

*Jimenez v. Mayorkas*, Case No. 1:18-cv-10225-MLW, ECF No. 654-1 (D. Mass.
    Jan. 16, 2025).........................................................................................13

*Kansas v. Crane*, 534 U.S. 407 (2002)...................................................................35

*Kansas v. Hendricks*, 524 U.S. 346 (1997) ............................................................36

*Kelly v. Wengler*, 822 F.3d 1085 (9th Cir. 2016) ...................................................43

*Local No. 93, Intern. Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*,
    478 U.S. 501 (1986)........................................................................12, 24

*Marathon Entm't v. Blasi*, 42 Cal.4th 974 (Cal. 2008) .........................................43

*Miller v. United States*, 140 F. Supp. 789  (Ct. Cl. 1956) .......................................37

*Montana v. Talen Montana, LLC*, 130 F.4th 675 (9th Cir. 2025)...........................7

*Moses v. Joyner*, 815 F.3d 163 (4th Cir. 2016) ......................................................10

*Musacchio v. United States*, 577 U.S. 237 (2016).....................................................7

*Nehmer v. U.S. Dep't of Veterans Affairs*, 494 F.3d 846 (9th Cir. 2007) ...............32

*Padilla v. ICE*, 2:18-cv-00928-MJP, ECF No. 215-2 (W.D. Wash. 2023).............13

*Poublon v. C.H. Robinson Co.*, 846 F.3d 1251 (9th Cir. 2017) ..............................43

*R.I.L-R v. Johnson*, Case No. 15-11 (JEB), ECF No. 32 (D.D.C. Feb. 20, 2015) ..35

*Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999)....................16

*Rouser v. White*, 825 F.3d 1076 (9th Cir. 2016)......................................................20

*Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367 (1992) .................11, 29, 32, 42

*S. Atl. Ltd. P'ship of Tennessee, LP v. Riese*, 356 F.3d 576  (4th Cir. 2004)............7

*Saravia v. Sessions*, 280 F.Supp.3d 1168 (N.D. Cal. 2017)......................................6

*Sec. Inv'r Prot. Corp. v. Vigman*, 74 F.3d 932 (9th Cir. 1996)...............................16

*United States v. Bekins*, 304 U.S. 27 (1938) ...........................................................37

*United States v. Fifty-Three (53) Eclectus Parrots*, 685 F.2d 1131 (9th Cir. 1982)
.........................................................................................................................20

*United States v. Nixon*, 418 U.S. 683 (1974)...........................................................20

*United States v. Perez*, 116 F.3d 840 (9th Cir. 1997).........................................16, 41

*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010) .........................10

*Wells Benz, Inc. v. United States*, 333 F.2d 89 (9th Cir. 1964)...............................19

**STATUTES**

5 U.S.C. § 705..........................................................................................................10

6 U.S.C § 279.............................................................................................................2

8 U.S.C. § 1225(b)(1) ............................................................................................5, 11

8 U.S.C. § 1225(b)(1)(B)(iii)(IV).............................................................................5

8 U.S.C. § 1231(a)(6) ................................................................................................9

8 U.S.C. § 1231(g) ............................................................................................. 5

8 U.S.C. § 1252(f)(1) ................................................................................. passim

All Writs Act, 8 U.S.C. § 1651 ......................................................................... 10

Homeland Security Act of 2002, Pub. L. 107-296; 116 Stat. 2135 (2002) ("HSA")
.............................................................................................. 1, 2, 28, 32

William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008,
Pub. L. No. 110-457, 122 Stat. 5044 (2008) ("TVPRA") ........................... passim

**OTHER AUTHORITIES**

*Matter of Devison*, 22 I. & N. Dec. 1362 (BIA 2000) ............................................ 28

Comments, Unaccompanied Children Program Foundational Rule,
https://perma.cc/DL56-J2TT ....................................................................... 34

H.R.6190/S.3093, 115th Congress (2017-18) .................................................... 32

H.R.8356, 117th Congress (2021-22) ................................................................ 32

S.1494, 116th Congress (2019-2020) ................................................................ 32

Unaccompanied Children Program Foundational Rule, 89 Fed. Reg. 34,384 (Apr.
30, 2024) (*codified at* 45 C.F.R. pt. 410) ("Foundational Rule") ....... 4, 15, 34, 35

84 Fed. Reg. 44,392-535 (Aug. 23, 2019) ("2019 Regulations") ................... passim

**RULES**

Fed. R. Civ. P. 23(e) ........................................................................................... 2

Fed. R. Civ. P. 60 ............................................................................................... 8

Fed. R. Civ. P 60(b)(4) ....................................................................................... 9

Fed. R. Civ. P. 60(b)(5) ....................................................................................... 9

Fed. R. Civ. P. 60(c) ........................................................................................... 8

L.R. 7-18 ............................................................................................................ 6

**REGULATIONS**

8 C.F.R. § 212.5 ................................................................................................. 7

45 C.F.R. § 1001 .............................................................................................. 2

45 C.F.R. § 410.1302 ....................................................................................... 2

## I.    INTRODUCTION

Defendants move to terminate the settlement approved by this Court in 1997 in its entirety and as to all Defendants. Defendants' motion, however, is but one more of their "thinly-veiled motions for reconsideration of prior Orders rejecting similar arguments." *Flores v. Barr*, 407 F. Supp. 3d 909, 927 (C.D. Cal. 2019), *aff'd in part and rev. in part sub nom. Flores v. Rosen*, 984 F.3d 720 (9th Cir. 2020) ("*Flores IV*"). To paraphrase a more sober era's head of state, there they go again.

As will be seen, Defendants' principal arguments have been briefed, argued, and decided ad nauseam. Their instant brief is festooned with arguments this Court and the Ninth Circuit have repeatedly rejected. It also features arguments Defendants failed to raise despite having many years to do so. Nothing of significance in law or fact has changed since Defendants' last go-round.

Defendants move for complete, not partial, termination of the Settlement. By dint of passing mention in their brief, they improperly invite the Court to grant partial termination should wholesale termination be denied. Defendants fail, however, to meet Rule 60's requirements for partial or total termination.

Additionally, Defendants offer no valid reason to terminate the Settlement on equitable grounds. The Executive freely entered into the Settlement. Congress later preserved the Settlement in both the Homeland Security Act of 2002, Pub. L. 107-296; 116 Stat. 2135 (2002) ("HSA"), and the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, 122 Stat. 5044 (2008) ("TVPRA").

Defendants are, and for years have been, free to exit the Settlement simply by promulgating regulations consistent therewith, as they agreed they would. The Department of Health and Human Services ("HHS") did so, in part, just last year. There is no reason it and the Department of Homeland Security ("DHS") should not finish the job. They have not, and their motion should accordingly be denied.

Opposition to Motion to Terminate Settlement
CV 85-4544-DMG-AGRX

**II.     PROCEDURAL POSTURE OF THE CASE AT BAR**

Plaintiffs initiated this case some four decades ago. *Flores v. Meese*, 681 F. Supp. 665 (C.D. Cal. 1988). After litigating for more than a decade, the Parties agreed to settle. This Court approved the Parties' agreement pursuant to Fed. R. Civ. P. 23(e) on January 28, 1997. Plaintiffs' Motion to Enforce the Settlement, Feb. 2, 2015, Ex. 1 [Doc. # 101].[1]

The Settlement covers children in immigration-related detention, whether unaccompanied or accompanied by their parents, *Flores v. Lynch*, 828 F.3d 898, 905-07 (9th Cir. 2016) ("*Flores I*"), and obliges Defendants to pursue a "general policy favoring release" of children unless continued detention is "required either to secure [their] timely appearance . . . or to ensure the minor's safety or that of others." FSA ¶¶ 11, 14. It further requires that DHS and, until recently,[2] ORR, house the general population of children in non-secure facilities licensed to care for dependent minors. *Id*. ¶¶ 12A, 19.

Finally, the FSA requires DHS and its subordinate entities, Customs

---

[1] In the HSA Congress dissolved the Immigration and Naturalization Service ("INS") and transferred most of its functions to DHS. Congress directed, however, that HHS's Office of Refugee Resettlement ("ORR") should have charge of detained unaccompanied minors. 6 U.S.C § 279. In both the HSA and the TVPRA Congress preserved the Settlement as a binding agreement. *Flores v. Sessions*, 862 F.3d 863, 870-71, 871 n.7 (9th Cir. 2017) ("*Flores II*").

Additional appellate opinions addressing the Settlement include *Flores v. Barr*, 934 F.3d 910 (9th Cir. 2019) ("*Flores III*").

[2] *See* Order re Defendants' Motion to Terminate Flores Settlement Agreement as to Defendant HHS, *Flores v. Garland,* No. CV 85-4544-DMG (AGRX), 2024 WL 3467715 (C.D. Cal. June 28, 2024) [Doc. #1447] ("HHS Terminate Order").

ORR's Settlement obligation to house children in non-secure dependent care facilities is now required by federal regulation. 45 C.F.R. §§ 1001, 410.1302 (2024).

Opposition to Motion to Terminate Settlement
CV 85-4544-DMG-AGRX

and Border Protection ("CBP") and Immigration and Customs Enforcement ("ICE") to house children in safe and sanitary facilities until such time as they may be transferred to a licensed dependent care facility.[3] *Id.*

The Settlement also contains rulemaking and "sunset" provisions. In the former, the Government agreed to promulgate regulations that "implement" the "relevant and substantive terms" of the agreement and that such regulations "shall not be inconsistent" with the Settlement. *Id.* ¶ 9.

The latter, Paragraph 40, provided: "All terms of this Agreement shall terminate the earlier of five years from the date of final court approval of this Agreement or three years after the court determines that the INS is in substantial compliance with the Agreement . . ."

On December 7, 2001, however, the Parties amended Paragraph 40 to provide: "All terms of this Agreement shall terminate 45 days following defendants' publication of regulations implementing this Agreement. . . ." *Id.* ¶ 40 (as amended Dec. 7, 2001), Defendants' Memorandum of Points and Authorities in Support of Motion to Terminate, May 22, 2025 ("Ds. 2025 MTT"), Ex. J at 32 [Doc. # 1567-15].

In 2019, DHS and HHS published regulations aimed at sunsetting the Settlement. Apprehension, Processing, Care, and Custody of Alien Minors and Unaccompanied Alien Children, 84 Fed. Reg. 44,392-535 (Aug. 23, 2019) ("2019 Regulations"). Defendants thereafter sought to exit the agreement on the weight of the 2019 Regulations, but this Court and the Ninth Circuit held that those regulations failed to comply with paragraph 40 and that the Settlement would accordingly remain in force. *Flores v. Barr*, *supra*, 407 F. Supp. 3d 909; *Flores IV.*

---

[3] In 2022, the Court approved the Parties' supplemental agreement that specifies the requirements facilities in CBP's Rio Grande Valley and El Paso sectors must meet to be considered safe and sanitary. Order Granting Final Approval of Settlement [Doc. # 1278].

Opposition to Motion to Terminate Settlement
CV 85-4544-DMG-AGRX

Last year, HHS published the Unaccompanied Children Program Foundational Rule, 89 Fed. Reg. 34,384 (Apr. 30, 2024) (*codified at* 45 C.F.R. pt. 410) ("Foundational Rule"), which incorporated many of the agency's Settlement obligations. This Court thereafter partially terminated the FSA as to HHS, but only to the extent the Foundational Rule was consistent with the Settlement. HHS Terminate Order, *supra*.

DHS has never undertaken similar, consistent rulemaking.

## III.    8 U.S.C. § 1252(f)(1) DOES NOT STRIP THIS COURT OF JURISDICTION OVER THE SETTLEMENT.

Defendants first argue that 8 U.S.C. § 1252(f)(1) precludes this Court from overseeing the Settlement. It does not.

The section provides:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

Part IV of the referenced subchapter refers to "sections 1221 through 1232 of the INA." *Biden v. Texas*, 597 U.S. 785, 798 (2022). This is "a carefully worded provision depriving the lower courts of power to 'enjoin or restrain the operation of' certain sections of the *statute*." *Id.* at 800 (emphasis added). It "does not deprive the lower courts of all subject-matter jurisdiction over claims brought under sections 1221 through 1232 of the INA." *Id.* at 798.

Nothing in the subchapter speaks to the Court's authority to enforce a settlement, particularly one that resolves constitutional claims and does not enjoin the operation of any statute at all. *See Garland v. Aleman Gonzalez*, 596 U.S. 543,

553 n.4 (2022) ("*Aleman*") ("[A] court may enjoin the unlawful operation of a provision *that is not specified in § 1252(f)(1)* even if that injunction has some collateral effect on the operation of a covered provision.").

Nor does the Settlement conflict with anything in part IV of the INA. Both this Court and the Ninth Circuit have held that accompanied children facing expedited removal are entitled to the Settlement's protections. *See, e.g., Flores IV* 984 F.3d at 738-39. Nothing in part IV addresses conditions of detention.[4] The FSA, by contrast, governs the treatment of children while held in immigration detention by requiring minimum conditions.

Defendants' argument, accordingly, boils down to this: "aliens in *expedited-removal* proceedings 'shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.'" Ds. 2025 MTT at 23 (citing 8 U.S.C. § 1225(b)(1)(B)(iii)(IV)) (emphasis added).

Section 1252(f)(1) does not warrant the sweeping relief Defendants seek—indeed, it warrants no relief at all.

/

/

/

---

[4] The closest sections 1221-32 come to regulating detention conditions is granting authority for land acquisition and building construction in 8 U.S.C. § 1231(g).

As for unaccompanied children, the TVPRA, and not part IV of the INA "as modified by the IIRIRA" in 1996, governs children's custody and release. *See Galvez v. Jaddou*, 52 F.4th 821, 830-31 (9th Cir. 2022) ("The TVPRA was enacted in 2008; it could not have enacted a law that was amended by the IIRIRA of 1996."); *Saravia v. Sessions*, 280 F.Supp.3d 1168, 1204 n.19 (N.D. Cal. 2017) ("Because this preliminary injunction neither enjoins nor restrains the proper operation of any part of Part IV of the immigration statutes, 8 U.S.C. § 1252(f)(1) does not bar the relief ordered."). Section 1252(f)(1) is thus irrelevant to the Settlement's protections for unaccompanied children. *See Flores I*, 828 F.3d at 904 (explaining that the "TVPRA partially codified the Settlement.").

### A.    Defendants' § 1252(f) argument is barred by the law-of-the-case doctrine and mandate rule.

"The law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Musacchio v. United States*, 577 U.S. 237, 244–45 (2016) (internal citations and quotation marks omitted).

"The mandate rule states that when a higher court decides an issue and remands the case, that issue is 'finally settled.'" *Montana v. Talen Montana, LLC*, 130 F.4th 675, 691 (9th Cir. 2025) (quoting *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895)). "In this circuit, the mandate rule is jurisdictional—a mandate divests a lower court of jurisdiction to revisit the issue." *Id.* To the extent the Ninth Circuit has resolved the arguments Defendants press anew here, this Court lacks jurisdiction to revisit them.[5]

Similarly, this Court's local rules bar Defendants' previously litigated arguments. L.R. 7-18 (motion for reconsideration must generally be filed within 14 days and only on specified grounds).

In *Flores v. Sessions*, 394 F. Supp. 3d 1041 (C.D. Cal. 2017), *appeal dismissed, Flores III*, this Court ordered CBP to (1) afford children in its custody safe and sanitary conditions, and (2) "make and record continuous efforts" aimed at release. *Id.* at 1063.

Defendants had opposed the order, arguing that the INA bars CBP's releasing accompanied children placed in expedited removal proceedings. *Id.* ("According to Defendants, the Agreement does not require them to make and record continuous efforts to release accompanied minors who are in expedited

---

[5] "The mandate rule does not simply preclude a district court from doing what an appellate court has expressly forbidden it from doing. Under the mandate rule, a district court cannot reconsider issues the parties failed to raise on appeal[.]" *S. Atl. Ltd. P'ship of Tennessee, LP v. Riese*, 356 F.3d 576, 584 (4th Cir. 2004).

1    removal proceedings because they are subject to mandatory detention.").

2    Defendants also argued that, under 8 U.S.C. § 1252(f)(1), the Court could not

3    prohibit detention on a class-wide basis. *Id.* at 1066.

4        This Court disagreed: "While the expedited removal statute generally

5    requires detention, 8 C.F.R. section 212.5 gives Defendants the discretion to

6    release certain detainees on a case by case basis, including class members

7    (juveniles), who are in various stages of the expedited-removal process. Thus, the

8    Agreement does not contravene the expedited removal statute." *Id.* at 1065. The

9    Court rejected Defendants' argument that its order would contravene

10   section 1252(f)(1), noting that the Court was merely ordering Defendants to

11   comply with the Settlement. *Id.* at 1066-67 & n.19. *See also id.* at 1066 (FSA's

12   requiring individualized determination of flight risk did "not dictate how

13   Defendants must exercise their discretion to parole or release minors in every

14   single case").

15       Defendants appealed, but they failed to mention § 1252(f)(1) in their brief

16   and nowhere argued that this Court had exceeded its jurisdiction. *See* Brief for

17   Appellants, *Flores v. Sessions*, No. 17-56297, ECF No. 6 (9th Cir. Jan. 5, 2018).

18   Defendants thus forfeited their instant argument. *Flores III*, 934 F.3d at 917-18.

19       With respect to accompanied children facing expedited removal, the Ninth

20   Circuit held similarly:

21       The government has discretion to place noncitizens in standard removal

22       proceedings even if the expedited removal statute could be applied to them.

23       In other words, the government may place minors into standard,

24       nonexpedited removal proceedings and thus comply with the Agreement by

25       avoiding any mandatory detention allegedly required for expedited removal.

26   *Flores III*, 934 F.3d at 916–17 (citation omitted).

27       The Settlement, the court concluded, "'creates a presumption in favor of

28   releasing minors.' That presumption is fully consistent with the Act's expedited

1  removal provisions." *Id*. (citations omitted).

2  **B.    8 U.S.C. § 1252(f)(1) does not deprive the Court of subject matter**
3  **jurisdiction or remedial power over the Settlement.**

4  Defendants rely on *Aleman* to argue that 8 U.S.C. § 1252(f)(1) suddenly
5  divests the Court of jurisdiction to oversee the Settlement. Ds. 2025 MTT at 22.
6  Their argument is both untimely and meritless.

7  Fed. R. Civ. P. 60 is the procedural mechanism underpinning Defendants'
8  instant motion. Rule 60(c) requires that a party seek modification of a judgment on
9  account of a change in decisional law "within a reasonable time." Fed. R. Civ. P.
10  60(c). Defendants "bear[] the burden of showing timeliness." *Moses v. Joyner*, 815
11  F.3d 163, 166 (4th Cir. 2016); *Cotterill v. City & Cnty. of San Francisco*, No. 23-
12  15162, 2025 WL 484697, at *1 (9th Cir. Feb. 13, 2025).

13  Nowhere in their 15,000-word brief do Defendants explain why they delayed
14  *three years* before arguing *Aleman* in this Court. The Court should decline to
15  entertain that argument now. *See. e.g., Moses*, 815 F.3d at 166 (district court "acted
16  well within its discretion" in holding 15-month delay after change in decisional
17  law unreasonable under Rule 60(c)); *In re Hammer,* 940 F.2d 524, 526 (9th Cir.
18  1991) (affirming denial of Rule 60(b) relief based on movant's "unexcused two-
19  year delay in objecting to default judgment").

20  Even were Defendants' resort to *Aleman* timely, they would remain
21  undeserving of another bite at a meritless apple.

22  Rule 60(b)(4) permits relief from a *void* judgment, which requires an
23  infirmity so "fundamental" that there is not "even an 'arguable basis' for
24  jurisdiction." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270-71
25  (2010).

26  Section 1252(f), however, does not "strip[] the lower courts of subject matter
27  jurisdiction. . ." *Biden,* 597 U.S. at 798; *see also Avco Corp. v. Aero Lodge No.*
28  *735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 561 (1968)

Opposition to Motion to Terminate Settlement
CV 85-4544-DMG-AGRX

("The nature of the relief available after jurisdiction attaches is, of course, different from the question whether there is jurisdiction to adjudicate the controversy."). *Aleman* clearly did not eliminate every "arguable basis" for the Court's jurisdiction to oversee the FSA.

Defendants fare no better under Rule 60(b)(5). Not every change in law justifies Rule 60(b)(5) relief. Rather, "modification of a consent decree may be warranted when the statutory or decisional law has changed to make legal what the decree was designed to prevent." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 388 (1992).

In *Aleman*, the district court held that 8 U.S.C. § 1231(a)(6) "requires the Government to provide bond hearings" and "entered class-wide injunctive relief" requiring the government to conduct such hearings. *Aleman*, 596 U.S. at 546. The Supreme Court reversed, holding that "§ 1252(f)(1) generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions" through "classwide injunctive relief." *Id.* at 550. The Court explicitly recognized that § 1252(f)(1) does not bar injunctions merely because they have "some collateral effect on the operation of a covered provision." *Id.* at 553 n.4.

In exercising jurisdiction over the Settlement, this Court neither enjoined nor restrained the operation of any statute. It is the FSA, "the agreement of the parties, rather than the force of the law upon which the complaint was originally based, that creates the obligations embodied in a consent decree." *Local No. 93, Intern. Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 521-22

(1986).[6]

Finally, *Aleman* nowhere suggests that § 1252(f)(1) bars the Executive's settling a class action simply because the agreement touches upon DHS's detention authority. *Cf.*, *id.* at 525 ("[A] federal court is not necessarily barred from entering a consent decree merely because the decree provides broader relief than the court could have awarded[.]").[7] Post-*Aleman*, Defendants have regularly settled class actions touching upon detention and removal. *See, e.g., Hernandez Roman v. Mayorkas*, Case No. 5:20-cv-00768-TJH-PVC, ECF No. 2636-2 (C.D. Cal. 2024) (requiring COVID-19 protocols in ICE detention center and protecting released class members from re-detention); *Cancino v. Mayorkas*, Case No. 3:17-cv-00491-

---

[6] *Agostini v. Felton,* 521 U.S. 203 (1997), Ds. 2025 MTT at 22, is not to the contrary. In *Agostini*, the Supreme Court held that Establishment Clause jurisprudence had changed such that the defendant's conduct no longer "run[s] afoul of any of three primary criteria we currently use to evaluate whether government aid has the effect of advancing religion." *Id.* at 234. The Court held that Rule 60(b)(5) relief was appropriate to vacate a permanent injunction overtaken by new substantive law. The Court cautioned, however, against courts concluding that decisional law has been overruled "by implication." *Id.* at 237. *Aleman* says nothing about the substantive legal violations that the FSA settled or this Court's jurisdiction to oversee the Settlement. At most, it impacted the availability of one *remedy* for such violations, leaving open many others. This is not the stuff of Rule 60(b)(5) relief.

[7] This Court additionally based its order disapproving DHS's 2019 regulations on the All Writs Act, 8 U.S.C. § 1651. *Flores v. Barr*, 407 F. Supp. 3d at 929. Defendants point to no authority that § 1252(f)(1) strips a court's authority under that Act.

Further still, this Court had authority under the Administrative Procedure Act ("APA") to "issue all necessary and appropriate process to postpone the effective date of an agency action… [o]n such conditions as may be required and to the extent necessary to prevent irreparable injury." *Immigrant Defs. L. Ctr. v. Noem*, No. CV 20-9893 JGB (SHKX), 2025 WL 1172442, at *5 (C.D. Cal. Apr. 16, 2025) (quoting 5 U.S.C. § 705). "Numerous courts have also rejected the argument that Section 1252(f)(1) bars APA relief." *Id.* at *14 (collecting cases).

JO-AHG, ECF Nos. 250-2, 252 (S.D. Cal. 2024) (class action settlement for immigration detainees requiring, *inter alia*, DHS to promptly present class members for immigration court hearings and bond hearings); *Padilla v. ICE*, Case No. 2:18-cv-00928-MJP, ECF Nos. 215-2, 225 (W.D. Wash. 2024) (class action settlement requiring DHS to conduct credible fear interviews under 8 U.S.C. § 1225(b)(1) within 60 days); *Jimenez v. Mayorkas*, Case No. 1:18-cv-10225-MLW, ECF Nos. 654-1, 677 (D. Mass. 2025) (protecting class members from ICE enforcement and providing a process to reopen and dismiss their removal cases).

Defendants will doubtlessly continue to enter into such agreements whenever they think it convenient.

### C.    Defendants' § 1252(f)(1) argument is waived and time-barred.

8 U.S.C. § 1252(f)(1) has been law since 1996, when it was added by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). *See Galvez*, 52 F.4th at 830.

Defendants entered into the FSA—and agreed that this Court would retain jurisdiction to oversee it—in 1997. Apart from their failed attempt in 2017, Defendants have spurned multiple opportunities to argue § 1252(f)(1):

- Defendants felt unconstrained by § 1252(f)(1) when they bargained for the quietude the Settlement affords them. They then joined in moving the Court to approve the agreement and "expressly stated that they knew 'of nothing in this Agreement that exceeds the legal authority of the parties or is in violation of any law.'" *Flores v. Sessions*, 394 F. Supp. 3d at 1065 n.15 (citing FSA ¶ 41); *see also Flores I*, 828 F.3d at 910 (noting that the IIRIRA was passed "in 1996, before the Settlement was approved").

- Again in 2001, Defendants agreed to modify the FSA's sunset clause, heedless of § 1252(f)(1).

- In 2015, Defendants unsuccessfully opposed including accompanied children within the Settlement's protections without mentioning

11

§ 1252(f)(1), and they failed again to raise it on motion for reconsideration. *Flores v. Lynch*, 212 F. Supp. 3d 907, 914-915 (C.D. Cal. 2015), *aff'd in part, rev'd in part*, *Flores I*.

- In 2018, as noted above, Defendants appealed the Court's order in *Flores v. Sessions*, 394 F. Supp. 3d 1041, but did not contest the Court's holding with regard to 8 U.S.C. § 1252(f)(1). Brief for Appellants, *Flores v. Sessions*, No. 17-56297, ECF No. 6 (9th Cir. Jan. 5, 2018).

- In 2019, Defendants moved to terminate the Settlement based on the 2019 Regulations. Defendants never raised § 1252(f)(1). *See* Defendants' Notice of Termination of *Flores* Settlement Agreement (Aug. 30, 2019) [Doc. # 639] ("Ds. 2019 MTT"); Defendants' Response in Opposition to Plaintiffs' Motion to Enforce Settlement (Nov. 09, 2018) [Doc. # 521]. Nor did Defendants argue on appeal that the Court's injunction violated § 1252(f)(1). *See* Defendants-Appellants' Opening Brief, No. 19-56326, ECF No. 10 (9th Cir. Dec. 20, 2019).

These are the tip of a larger iceberg.[8]

Thus, even assuming, arguendo, that § 1252(f)(1) were to strip the Court of jurisdiction over the FSA, Defendants invited the error. *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) ("If the defendant has both invited the error, and relinquished a known right, then the error is waived[.]"); *see also Flores III*, 934

---

[8] *See, e.g.,* Defendants' Protective Notice of Motion to Modify Settlement Agreement at *9, 18 (Mar. 27, 2015) [Doc. #120] (failing to raise a § 1252(f)(1) argument when seeking to modify the Settlement to permit family detention); Defendants' Response to Order to Show Cause Why Remedies Should Not Be Implemented, at *12-13, 20-22, 24 (Aug. 6, 2015) [Doc. #184] (same); Defendants' Response in Opposition to Motion to Enforce Settlement, etc. (Jun. 24, 2016) [Doc. #208] (failing to raise § 1252(f)(1) when defending family detention); Defendants' Response in Opposition to Plaintiffs' Motion to Enforce Settlement (Nov. 09, 2018) [Doc. #521] (failing to raise § 1252(f)(1) in defense of 2019 DHS regulations and in support of terminating the Settlement).

Opposition to Motion to Terminate Settlement
CV 85-4544-DMG-AGRX

F.3d at 917-18 ("[A] party cannot offer up successively different legal or factual theories that could have been presented in a prior request for review.") (quoting *Sec. Inv'r Prot. Corp. v. Vigman*, 74 F.3d 932, 937 (9th Cir. 1996)).

Defendants will no doubt reply that § 1252(f)(1) injects a jurisdictional defect that may not be waived. Plaintiffs disagree.

"By its plain terms, and even by its title, [§ 1252(f)(1)] is nothing more or less than a limit on injunctive relief." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481 (1999). Nowhere does the statute "strip[] the lower courts of subject matter jurisdiction. . ." *Biden*, 597 U.S. at 798 (decided after *Aleman*).

Although "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived," *United States v. Cotton*, 535 U.S. 625, 630 (2002), arguments regarding limitations on a court's *remedial* authority may be forfeited. *Atlas Life Ins. Co. v. W.I. Southern, Inc.*, 306 U.S. 563, 568 n.1 (1939) ("Unlike the objection that the court is without jurisdiction as a federal court, . . . the parties may waive their objections to the equity jurisdiction by consent, or by failure to take it seasonably.") (internal citations omitted); *see also Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003) (challenge to court's equitable authority raised for the first time on appeal waived); *Ellipso, Inc. v. Mann*, 480 F.3d 1153, 1160 (D.C. Cir. 2007) (appellant "waived any objection to any asserted misuse of the court's equitable powers" by failing to raise it). Objections to remedial orders are forfeitable provided subject-matter jurisdiction exists. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-584 (1999).

Principles of invited error, waiver, and forfeiture accordingly bar Defendants' resort to § 1252(f)(1).

/

/

**D.**    **Section 1252(f) does not require wholesale termination of the FSA.**

It is next clear that the detention and release of *unaccompanied* class members is regulated by the TVPRA, and § 1252(f)(1) is therefore immaterial to the Court's authority to oversee the Settlement on behalf of unaccompanied children.

Defendants also appear to concede that § 1252(f)(1) does not bar the Settlement's protecting children *not* placed in expedited removal proceedings. Ds. 2025 MTT at 24 ("Outside of expedited-removal proceedings, the Government has discretion to detain or release an alien on bond pending a decision on whether he or she is to be removed . . ."). There is no gainsaying that many class members are simply not placed in expedited removal proceedings.[9]

Defendants' motion, however, seeks termination of the *entire* Settlement, regardless of a child's status as accompanied or unaccompanied and regardless of whether they are facing expedited removal. It is too late for Defendants to moderate their sweeping demand. *Flores IV*, 984 F.3d at 737 ("[T]he district court did not abuse its discretion in declining to terminate those portions of the Agreement covered by the HHS regulations. The government moved the district court to terminate the Agreement in full, not to modify it or terminate it in part. . . .").[10]

---

[9] During recent monitoring visits to ICE family detention sites, Plaintiffs' counsel encountered children in a wide variety of procedural postures, including those who appeared to be outside of the expedited removal process. *See, e.g.*, Ex. 6, Declaration of E.M.L. ("E.M.L. Dec.") ¶¶ 5-6, 43 (high school junior with pending asylum application detained on a family road trip); Ex. 14, Declaration of E.D.C. (Karnes), March 27, 2025 ("E.D.C. Dec.") ¶ 2 (high school freshman who had lived in the U.S. since he was five.).

[10] Defendants' suggesting the appropriateness of partial termination in their brief does not convert their motion into one for partial termination in the alternative. *Greisen v. Hanken*, 925 F.3d 1097, 1115 n.6 (9th Cir. 2019).

IV.   **DEFENDANTS ARE NOT IN SUBSTANTIAL COMPLIANCE WITH THE FSA**.

Defendants next argue that the Settlement should be terminated because HHS's "new policy guidance eliminates any basis for concluding that the Foundational Rule does not satisfy the FSA." Ds. 2025 MTT at 26.

Defendants continue that DHS's 2019 Regulations constitute substantial compliance by their very existence. *Id.* at 27. Defendants' arguments fail.

First, in 2024 this Court terminated those provisions of the Settlement that HHS implemented via federal regulations. HHS Terminate Order, *supra*. Defendants nowhere argue that HHS has promulgated regulations implementing the remainder of its Settlement obligations, nor do they contend that DHS has promulgated regulations that cure the conflicts in the 2019 Regulations that this Court and the Ninth Circuit held preclude terminating the Settlement.

Defendants instead offer a litany of scurrilous grievances about the Settlement and this Court's orders construing it. *E.g.*, Ds. 2025 MTT at 35 ("While the scope of the FSA was broad from the beginning, this Court's interpretation and enforcement of the FSA have significantly expanded it beyond lawful bounds."); *id.* at 36 ("this Court has repeatedly applied the FSA to situations the parties did not anticipate . . .").

In deciding a motion to terminate based on substantial compliance, courts weigh whether a party has shown "good-faith commitment to the whole of the court's decree . . . " *Jeff D. v. Otter*, 643 F.3d 278, 288 (9th Cir. 2011) (*quoting Freeman v. Pitts*, 503 U.S. 467, 491 (1992)). "Another factor to be considered is the Defendants' 'record of compliance,' . . . which over course of the litigation has been far from exemplary." *Id.* The Court should also give "[e]xplicit consideration [to] the goals of the decree[ ]" and find that "those goals have been adequately served" before vacating the Settlement. *Id.* at 289.

Termination is unavailable if Defendants have violated the FSA in ways that are neither "unintentional" nor "minor [and] trivial," or which "substantially []

1  defeat the object which the parties intend to accomplish." *Id.* (quoting *Wells Benz,*

2  *Inc. v. United States*, 333 F.2d 89, 92 (9th Cir. 1964)); *see also Rouser v. White*,

3  825 F.3d 1076, 1081 (9th Cir. 2016) ("[C]ourts don't release parties from a consent

4  decree unless they have substantially complied with *every one* of its provisions.").

5         **A.   HHS's internal policies do not constitute substantial compliance.**

6        Defendants argue that HHS is in substantial compliance with the FSA

7  simply by virtue of having adopted internal policies. Policies, however, fall short

8  of the Settlement's rulemaking requirement. ORR's internal policies would not

9  warrant terminating the Settlement even were they consistent with the agreement—

10  and they are not.

11        Plaintiffs did not settle for *policy* making— they settled for *rule*making. By

12  definition, HHS is not substantially complying with the Settlement until it

13  promulgates regulations that are consistent with the agreement. Defendants'

14  substantial compliance argument is a non sequitur.

15        First, ORR's Policy Guide is not equivalent to a federal regulation. *Compare*

16  *United States v. Nixon*, 418 U.S. 683, 695 (1974) (regulations have "force of law"),

17  *with United States v. Fifty-Three (53) Eclectus Parrots*, 685 F.2d 1131, 1136 (9th

18  Cir. 1982) (internal agency policy unenforceable unless "promulgated pursuant to a

19  specific statutory grant of authority and in conformance with the procedural

20  requirements imposed by Congress.").

21        Second, ORR easily and frequently amends the Policy Guide. ORR has

22  unilaterally changed the Guide dozens, if not hundreds, of times. *See ORR*

23  *Unaccompanied Alien Children Bureau Policy Guide: Record of Posting and*

24  *Revision Dates*, https://acf.gov/orr/policy-guidance/unaccompanied-children-

25  program-policy-guide-record-posting-and-revision-dates (last visited June 20,

26  2025).

27        Third, ORR even failed to amend the Guide "in response to . . . the Court's

28  June 28, 2024 order" until May 19, 2025— nearly a year after the Court partially

Opposition to Motion to Terminate Settlement
CV 85-4544-DMG-AGRX

1    terminated the Settlement as to HHS—and a mere *three days* before Defendants

2    filed their instant motion. Ds. 2025 MTT at 19.

3         Finally, the Policy Guide is *still* inconsistent with the FSA. For example, the

4    Guide nowhere restricts ORR's stepping up a child to a "heightened supervision"

5    facility on account of petty or isolated offenses. *See* HHS Terminate Order, *supra*,

6    2024 WL 3467715 at *6 (FSA "disallow[s] isolated or petty offenses to have *any*

7    effect upon ORR's decision to place a child in a heightened supervision . . .

8    facility"). Rather, it permits such placements based on "a non-violent criminal or

9    delinquent history not warranting placement in a secure facility." Supp.

10   Declaration of Toby Biswas ¶ 7 [Doc. # 1567-5] (quoting Policy Guide § 1.2.4).

11        As for out-of-network facilities, or OONs, the Policy Guide vaguely requires

12   that such facilities "generally adhere to" the standards applicable to in-network

13   facilities. *Id*. ¶ 11. Defendants acknowledge that children placed in OONs may not

14   receive all required services. *Id*. ¶¶ 11-13, 16-18.

15        And in reality, children's experience in ORR restrictive custody is worse

16   than the Policy Guide permits. Children detained at the Murphy Harpst out-of-

17   network heightened supervision facility, for example, report being held in prison-

18   like dormitories and experiencing seclusion and denial of recreation. *See* Ex. 16,

19   Declaration of J.J.Z.Y. (Murphy Harpst) ¶¶ 25, 27-28, 31, February 18, 2025

20   ("J.J.Z.Y. Dec.") ("It's like a prison here. There is a tiny window all the way up in

21   our room that lets in a tiny bit of sun but that's it . . . When you break a rule, it's 24

22   hours locked in your room. If you try to leave to the living room area, they grab

23   you and put you back."); Ex. 15, Declaration of R.H.L. (Murphy Harpst) ¶¶ 4, 14,

24   February 18, 2025 ("During the day, sometimes they take us to go out to activities

25   but sometimes they leave us locked up inside. Sometimes when you misbehave

26   they don't take you outside for a day. You cannot go out into the sun except to eat .

27   . . They put me in the solitary room once after a fight for twenty minutes. They

28   have put other kids there, too."); Ex. 17, Declaration of J.B.Z.V. (Murphy Harpst)

¶¶ 9, 13, 16, 26, September 12, 2024 ("If there is an argument between kids, the staff will grab kids and lock them in a small room for a few hours until they calm down . . . My bedroom feels like a prison cell.").[11]

ORR has also begun arbitrarily distending children's confinement. The average length of ORR custody for children discharged from ORR climbed from 49 days in February 2025, to 112 days in March. In April 2025, it increased to 217 days. In May 2025, it was 191 days. Fact Sheets and Data, ORR, *Average Monthly Data*, https://acf.gov/orr/about/ucs/facts-and-data (last visited June 15, 2025).

Release statistics corroborate: in February 2025, an average of 2,778 children were in ORR custody, of whom the agency released 1,858. In March, ORR had an average of 2,173 children, but released only 343. In April, an average of 2,281 children were in ORR custody; the agency released just 45. In May, an average of 2,433 children were in custody; the agency released just 118. *Id.*; *see also* Fact Sheets and Data, ORR, *Released to Sponsors*, available at https://acf.gov/orr/about/ucs/facts-and-data (last visited June 15, 2025).[12]

ORR also appears to have eviscerated the independence of its Ombuds Office, abruptly firing its recently hired Ombuds and much of its staff and restricting the Office's ability to monitor detention sites, and investigate complaints of abuse or neglect. *See* Ex. 3, Declaration of Mary Giovagnoli, June 13, 2025, ¶¶ 21, 25 ("As a practical matter, my termination and that of other

---

[11] The Settlement proscribes such conditions. FSA ¶ 8 (medium secure facilities shall "not be equipped internally with major restraining construction"); FSA Ex. 1.A.5, 1.C. (disciplinary sanctions shall not "adversely affect either a minor's health, or physical or psychological well-being" or "deny minors . . . exercise").

[12] ORR appears committed to prolonging children's detention through multifarious techniques. *See, e.g.*, *Angelica S. v. HHS*, __ F. Supp. 3d __, 2025 WL 1635369, at *7-9, 12 (D.D.C. June 9, 2025) (finding that ORR likely acted arbitrarily and capriciously in imposing restrictive documentation requirements on children's proposed custodians).

probationary employees deprived the office of its leader and cut the Ombuds office in half . . . a career official in the Office of Administration, with no expertise in children's issues or immigration, was [appointed] as the Acting Ombuds . . . I am deeply concerned that the current administration intends to sideline the Ombuds office."). A robust Ombuds Office was prominent among the internal oversight mechanisms Defendants argued warranted releasing ORR from the FSA's state licensing requirement. HHS Terminate Order, *supra*, 2024 WL 3467715, at *4.

Such backsliding is a far cry from substantial compliance. Scant foresight is required to predict that ORR can and will revert to policies that violate the Settlement were it free to do so.

**B.**    **DHS's regulations remain violative of the Settlement; its internal policies are no substitute for consistent regulations.**

Defendants next argue that the 2019 Regulations and DHS current internal policies "provide all the relief originally sought" in this action. Ds. 2025 MTT at 52. That is both inaccurate and no reason to terminate. Again, neither CBP's Transport, Escort, Detention, and Search Standards ("TEDS") nor ICE's Family Residential Standards ("FRS"), are binding or even minimally resistant to arbitrary change.[13]

---

[13] Indeed, DHS's detention standards are not even consistently available to the public.

ICE purports to follow *modified* FRS to govern its treatment of children in FRCs. Such modifications are neither publicly available nor have Defendants provided them to Plaintiffs. On June 4, 2025, Plaintiffs' counsel sent a letter memorializing a May 30, 2025 conference of counsel during which Defendants described modifications to the previous standards. Ex. 1, Declaration of Leecia Welch ("Welch Dec."), Ex. A (Plaintiffs' Counsel Letter to Defendants' Counsel re: Dilley Modified Standards), June 19, 2025; *see also* Ex. 2, Declaration of Javier Hidalgo ¶ 11, June 20, 2025. Defendants did not respond to this communication. Further, ICE routinely violates the publicly available and modified standards. See *id*. ¶¶ 10-17.

Defendants' argument is also a straw man. Rather than show that the TEDS, the FRS or the 2019 Regulations are consistent with the Settlement, Defendants argue that "[t]he conditions of confinement today are far from the conditions that prevailed *in the original litigation*." Ds. 2025 MTT at 27 (emphasis added). That is beside the point.

It is well established that litigants may settle for relief greater than the Plaintiffs' complaint initially sought or even what the law requires. *Local No. 93, Intern. Ass'n of Firefighters, AFL-CIO C.L.C.*, 478 U.S. at 522 ("[I]t is the agreement of the parties, rather than the force of the law upon which the complaint was originally based, that creates the obligations embodied in a consent decree."). What matters, then, is whether DHS's regulations accord with *the Settlement*.

DHS cannot be in substantial compliance with the Settlement when both this Court and the Ninth Circuit have ruled that the 2019 Regulations are inconsistent with the Settlement and the agency has failed to amend those regulations. Defendants again invite the Court to revisit issues the Ninth Circuit has foreclosed. *Flores IV,* 984 F.3d at 744 n.11 ("The significant inconsistencies between the DHS regulations and the Agreement detailed in this opinion preclude a finding of substantial compliance.").

### C.   DHS continues to flout the FSA.

And even were DHS's policies to comport nominally with the FSA, they would not amount to substantial compliance because DHS simply does not consistently follow them. *Flores v. Sessions*, *supra*, 394 F. Supp. 3d at 1054.

CBP has persistently failed to provide children with safe and sanitary conditions. *See, e.g., id*. at 1056 (describing, *inter alia*, "unsanitary conditions with respect to the holding cells and bathroom facilities, and lack of privacy while using the restroom, access to clean bedding, and access to hygiene products (i.e., toothbrushes, soap, towels)"); *Flores v. Johnson*, 212 F. Supp. 3d 864, 882 (C.D. Cal.), *clarified on denial of reconsideration sub nom. Flores v. Lynch*, 212 F.

Supp. 3d 907 (C.D. Cal. 2015), *aff'd in part, rev'd in part and remanded*, *Flores I*, ("voluminous evidence . . . of the egregious conditions of the [CBP] holding cells"); *Flores v. Sessions*, 394 F. Supp. 3d at 1053 ("ample evidence that CBP stations in the RGV Sector must be brought into compliance with the Agreement"); Order Re Plaintiffs' Ex Parte Application for Restraining Order and Order to Show Cause Re Preliminary Injunction, March 28, 2020 [Doc. #740] (detained children exposed to COVID-19).[14]

CBP's violations continue despite Defendants' formally agreeing in 2022 to improve conditions children experience in CBP custody. *See* CBP Settlement Agreement, May 21, 2022 [Doc. #1254-1].

Plaintiffs are concurrently presenting evidence of substandard conditions and prolonged detention prevailing today in CBP facilities nationwide. *See* Motion to Enforce Flores Settlement Agreement, June 17, 2025 [Doc. #1575] at 2-10, 13-17 ("CBP MTE").

One class member describes the recent treatment she received in CBP custody thusly:

> They told us to "shut the f___ up" and that asylum had been canceled by President Trump and that there would be no asylum for five years. They handcuffed my mom and they ordered us into a car and took us to Chula Vista detention center. We were still soaking wet and dirty and cold and stinky . . . I heard one officer say about us 'they smell like sh__,' and another officer responded "they are sh__." . . . They treat us like we are not human beings.

CBP MTE, Ex. 21, Declaration of S.G. (Chula Vista) ¶¶ 4, 6, 8-9, April 10, 2025

---

[14] Defendants do not argue that conditions in CBP facilities are *actually* safe and sanitary. They rather grudgingly concede CBP facilities "lack [] amenities." Ds. 2025 MTT at 54.

[Doc. # 1575-23] ("S.G. Dec."); *see also, e.g.,* CBP MTE, Ex. 22, Declaration of A.K. (Otay Mesa) ¶ 19, March 26, 2025 [Doc. # 1575-24] ("When my daughter was sick, a member of medical staff said it's my own fault . . . because it was my decision to bring her here. When I asked for medication, staff told us to go home and we'd get it there."); CBP MTE, Ex. 23, Declaration of S.K. (Otay Mesa) ¶¶ 14, 16, May 25, 2025 [Doc. # 1575-25] ("For five days we were without a window, without sun. There was a light on 24 hours . . . [C]an you imagine being three years old and told not to move for five days? Officers would stop by the room and if the children were moving, the officer would tell them that if they didn't stop they would be taken away."); S.G. Dec. ¶ 5 ("The sleeping place was actually a prison cell. It is very, very cold. There is no door for the toilet, and the floor is very dirty. It's very embarrassing to not have privacy to use the toilet.").[15]

        Defendants next demand that ICE, too, be allowed to exit the FSA. But ICE, too, has repeatedly breached the FSA. *Flores v. Barr*, No. CV-85-4544-DMG, 2020 WL 2758792, at *12 (C.D. Cal. Apr. 24, 2020) (holding that "Plaintiffs' deluge of declarations . . . have raised significant concerns by a preponderance of the evidence about each FRC's ability to provide safe and sanitary conditions," requiring heightened monitoring to protect children from exposure to COVID-19, and finding evidence of "unnecessary delay and failure to make and record prompt

---

[15] Corroborating, Dr. Paul Wise, the Court's independent monitor, reports multiple recent violations in CBP facilities, including (1) routine separation of children from their family for no articulated reason; (2) lack of visitation with family; (3) insufficient warm clothing; (4) practices inconsistent with a child-friendly, trauma-informed environment; and (5) failure to properly implement the CBP Settlement Agreement's caregiver program. *See, e.g.,* CBP Juvenile Care Monitor Report at 2-6, January 30, 2023 [Doc. # 1326]; CBP Juvenile Care Monitor Report, May 27, 2025 [Doc. # 1570]; CBP Juvenile Care Monitor Report at 6, September 15, 2023 [Doc. # 1360] (CBP held "children of the same gender as their parent, some as young as 8 years of age" separately from their parents, doing "significant, and potentially lasting, harm to children.").

Opposition to Motion to Terminate Settlement
CV 85-4544-DMG-AGRX

and continuous efforts at release"); *Flores v. Barr*, No. CV85-4544-DMG, 2020 WL 2758795, at *1 (C.D. Cal. May 22, 2020) ("The ICE report continues to show lack of compliance with Paragraph 18 of the FSA, which requires Defendants to 'make and record the prompt and continuous efforts on its part toward family reunification and the release of the minor.'").

Against this record, Defendants point to ICE standards that discourage commingling of minors with unrelated adults and stipulate that children should receive "education, recreation, [and] visitation . . ." Ds. 2025 MTT at 27-28. The reality of DHS detention does not square with Defendants' rosy claims.

For example, children detained at the Dilley FRC report that ICE had opened a "school" for them just two days before class counsel visited the facility. The FRC's educational program provided school-age children—several of whom were high school students who had been pursuing college preparatory curricula in the United States—only one hour of instruction daily. *See, e.g.,* A.T. Dec. ¶ 45 ("There is a school we can go to for an hour. It was just opened yesterday."); Ex. 10, Declaration of N.K.N.N. (Dilley) ¶ 11, June 5, 2025 ("it's not really school. It's for much younger kids. Mostly I take books out of the library and read."); E.M.L. Dec. ¶ 43 ("If they let me out of here I will have to do summer school to make up all the school I have missed."); Ex. 9, Declaration of C.C.B.C. (Karnes) ¶ 20, March 27, 2025; Ex. 7, Declaration of Y.F.A. (Dilley) ¶ 10, May 1, 2025; Ex. 14, Declaration of E.D.C. (Karnes) ¶ 19, March 27, 2025 ("E.D.C. Dec.") ("There is no actual school here. It makes kids sad that they are missing school. One girl here is a junior from a high school in Texas and she's feeling sad because she had her whole senior year planned out. Her thirteen-year-old brother was sad because he missed out on his football tournament.").

Youth further report being allowed no in-person visitation at Dilley. They report having to pay by the minute even for phone calls, which few can afford. *See, e.g.,* Ex. 8, Declaration of C.M.Z. (Dilley) ¶ 12, June 5, 2025 ("When we got here,

we were given a coupon for 3 minutes each to use the phone. After that, my children and I have to pay to use the phone to call family"); Ex. 13, Declaration of R.B.C. (Karnes) ¶ 10, March 27, 2025; E.M.L. Dec. ¶ 34; Ex. 12, Declaration of I.K. ¶ 45 (Karnes), March 27, 2025 ("I.K. Dec."); E.D.C. Dec. ¶ 23; CBP MTE, Ex. 9, Declaration of M.I.J (San Diego) ¶ 14, March 26, 2025 [Doc. # 1575-11].

Similarly, there is little "recreation" for children, Ds. 20225 MTT at 52, who feel trapped, isolated, bored, and intimidated by harsh treatment from staff. *See, e.g.,* Ex. 11, Declaration of S.L. (Dilley), May 2, 2025 ¶¶ 16, 22 ("They aren't used to being isolated like this . . . some of the staff treat you like dogs. They will whistle at you when they want you to do things."); Ex. 5, Declaration of L.J.H.G. (Dilley) ¶¶ 13, 21-22, June 5, 2025  ("The staff here call us inmates because it is like a prison . . . There are balls that my son plays with, but there aren't actual activities for kids . . . Children are not allowed to have toys or crayons in their rooms.").

DHS's ongoing violations of the Settlement belie Defendants' claim that internal policies meaningfully protect vulnerable children. Defendants demand release from the Settlement not because they have complied with and will continue to observe its fundamental principles, but because they want the "flexibility" to treat children however they wish. Ds. 2025 MTT at 30, 37, 53. Stated otherwise, Defendants ask for "relief . . . [because] it is no longer convenient to live with the terms of a consent decree." *Rufo*, 502 U.S. at 383. That is not substantial compliance. It is not even close.

## V.  PARTIAL TERMINATION IS NOT AVAILABLE ON DEFENDANTS' INSTANT MOTION.

### A.  Defendants explicitly move only for complete, not partial, termination.

Defendants unambiguously insist on nothing short of the wholesale termination of the Settlement. Ds. 2025 MTT at 1 (motion "to terminate the FSA

completely and with respect to all Defendants"). At no point did Defendants raise partial termination during the Parties' L.R. 7-3 conference. *See* Welch Dec., Ex. B (Email from K. Masetta-Alvarez to C. Holguín, *et al.*, May 9, 2025).[16] Partial termination is therefore unavailable. *Flores IV*, 984 F.3d at 737 (affirming decision to keep FSA fully in effect where "[t]he government moved the district court to terminate the Agreement in full, not to modify it or terminate it in part"); *Greisen*, 925 F.3d at 1115 n.6 ("briefly allud[ing]" to an issue in an opening brief is "insufficient to raise the issue").[17]

### B. DHS's 2019 regulations do not warrant partial termination.

Yet even had they actually moved for partial termination, Defendants would not satisfy Rule 60's requirements therefore.

First, in *Flores IV* the Ninth Circuit never suggested that partial termination as to DHS might be appropriate. The court's differential treatment of HHS and DHS is logical given the *fundamental* flaws in DHS's 2019 Regulations. The Ninth Circuit emphasized that "[a]ny motion to terminate the Agreement in part [as to HHS] would have to take into account our holding in *Flores I* that the Agreement protects both unaccompanied and accompanied minors." *Flores IV*, 984 F.3d at

---

[16] Defendants also fail to brief the legal standard for partial termination and do not mention partial termination until page 30 of their brief.

If anything, Defendants raised partial termination more clearly in 2019. *See* Ds. 2019 MTT [Doc. # 639] at 15 ("[T]o the extent the Court believes further litigation over specific issues addressed by the Rule is warranted, it should agree the Agreement is terminated except as to those specific issues."). The Ninth Circuit nonetheless held partial termination unavailable. *Flores IV, supra*.

[17] Defendants' assertion that FSA ¶¶ 11, 12, and 25 "have terminated" automatically following the Ninth Circuit's mandate, Ds. 2025 MTT at 31, misstates the court's holding. The Ninth Circuit was explicit that the FSA "remains in effect, notwithstanding the overlapping HHS regulations. . ." *Flores IV*, 984 F.3d at 737. Any partial termination would accordingly require a separate motion.

744 n.12. Defendants have not cured the serious inconsistencies between the 2019 Regulations and the Settlement, [18] and partial termination as to DHS is accordingly foreclosed.

Even had *Flores IV* authorized it, Defendants have failed to establish that they meet the requirements for partial termination as to DHS on the strength of the 2019 Regulations.

The apposite legal standard is set out in *Freeman v. Pitts, supra*. *Compare Jeff D.*, 643 F.3d at 288 (applying *Freeman* standard to termination of consent decree based on compliance), *and Flores v. Garland*, 2024 WL 3467715, at *9 (declining to apply *Freeman* standard to partial termination as to HHS because Defendants had moved based on changed factual conditions rather than compliance). Partial termination turns on three factors: "[1] whether there has been full and satisfactory compliance with the decree in those aspects of the system where supervision is to be withdrawn; [2] whether retention of judicial control is necessary or practicable to achieve compliance with the decree in other facets of the [] system; and [3] whether the [defendant] has demonstrated . . . its good-faith commitment to the whole of the court's decree." *Freeman*, 503 U.S. at 491.

Far from showing a good-faith commitment to the whole of the Settlement,

---

[18] For example, Defendants assert that the 2019 Regulations are consistent with Paragraph 12. They are not. Paragraph 12's central protection is that children must be promptly released or transferred to a licensed, non-secure facility. FSA ¶ 12A.

The standards set out in Paragraph 12A afford children minimally acceptable conditions in the immediate aftermath of arrest, but barely acceptable conditions are no substitute for prompt transfer or release. *Flores v. Johnson*, 212 F. Supp. 3d 864, 881 (C.D. Cal. 2015) ("[T]he Agreement holds Defendants to a lower standard—'safe and sanitary'—with respect to the temporary holding cells."). Yet no consistent regulation requires the prompt release or transfer of accompanied minors out of CBP facilities. *Flores IV*, 984 F.3d at 739 (affirming injunction of regulation relating to transfer and placement).

Defendants continue to importune that accompanied minors are undeserving of its protections, and they have failed to comply with the Settlement as a whole. DHS cannot show "full and satisfactory compliance" with the provisions it proposes to terminate. *Id.* On the contrary, it transparently seeks to terminate those provisions so that it may detain children for longer and in facilities that the Settlement forbids.[19]

## VI. NO CHANGED CIRCUMSTANCES WARRANT TERMINATION OF THE FSA ON EQUITABLE GROUNDS

To prevail on a motion for equitable termination under Rule 60(b), Defendants must carry "the burden of establishing that they have substantially complied with the [decree] or that facts or law have changed so that 'it is no longer equitable that the judgment should have prospective application." *Jeff D.*, 643 F.3d at 288 (citing *Jeff D. v. Kempthorne*, 365 F.3d 844, 851 (9th Cir.2004) (quoting Rule 60(b)(5) as then phrased); *Rufo*, 502 U.S. at 383; *see also Horne v. Flores*, 557 U.S. 433, 453 n.5 (2009) (courts considering Rule 60(b)(5) motion must "engage in the changed-circumstances inquiry prescribed by *Rufo*" and be "true to the *Rufo* standard"). "The party seeking relief bears the burden of establishing that changed circumstances *warrant relief*." *Horne*, 557 U.S. at 447.

Defendants identify no substantial legal or factual change since this Court and the Ninth Circuit last considered and rejected their last go-round.

/

---

[19] Defendants' suggestion that *any* regulations—even inconsistent ones—warrant termination is foreclosed. *See Flores IV*, 984 F.3d at 741 ("[I]t certainly does not follow that the executive branch retained the power to bring about termination through the promulgation of *inconsistent* regulations."). A federal agency "cannot usurp the power of a district court to construe the provisions of an order it has issued . . . simply by issuing a regulation interpreting that order or declining to follow it." *Nehmer v. U.S. Dep't of Veterans Affairs*, 494 F.3d 846, 860 (9th Cir. 2007).

A. **Defendants' arguments are barred by the mandate rule.**

Defendants make no secret that they wish to relitigate issues that have already been decided, often multiple times. Yet they offer no reason for the Court to ignore the Ninth Circuit's mandate or to excuse their untimely requests for reconsideration of issues previously litigated, waived, or forfeited.

Defendants instead suggest their disagreement with prior rulings is *itself* a basis for equitable termination. Such an argument borders on the frivolous. As has been seen, this Court lacks jurisdiction to revisit Ninth Circuit holdings (1) that DHS's regulations are inconsistent with the Settlement and is therefore not in substantial compliance with it, *Flores IV*, 984 F.3d at 744 & n.11; (2) that neither the HSA nor the TVPRA, nor an "increase in family migration" are changed circumstances warranting termination. *Id.* at 741-42.

B. **No change in law warrants termination.**

As has been seen, to win termination based on a change in law, Defendants must show that "the new law makes complying with the consent decree 'impermissible,' or, on the other hand, if it 'make[s] legal what the decree was designed to prevent.'" *Id*. at 741. Defendants fail to identify any such change in law.

The Ninth Circuit and this Court have repeatedly held that neither the TVPRA nor HSA make the Defendants' continued adherence to the Settlement inequitable. *E.g., Id.* at 741-44; *see also Flores II*, 862 F.3d at 880-881; *Flores I*, 828 F.3d at 908, 909-910.

Defendants offer, without analysis, that the Laken Riley Act, Pub. L. 119-1, 139 Stat. 3 (2025), makes complying with the Settlement impermissible. But Defendants fail to identify any actual conflict between the Settlement and the Laken Riley Act, for there is none. Indeed, Congress nowhere even mentions children in DHS or HHS custody in Laken Riley, nor are children even among the express targets of Laken Riley. *Cf. Matter of Devison*, 22 I. & N. Dec. 1362, 1365

1  (BIA 2000) (juvenile delinquency adjudications not considered criminal

2  convictions).

3  **C.    Defendants fail to show that new facts warrant termination.**

4  Defendants also fail to show that an unforeseen change in facts has made

5  enforcement of the Settlement inequitable. They repeat tired tropes about the

6  "surge in border encounters," Ds. 2025 MTT at 50, which this Court and the Ninth

7  Circuit have repeatedly held fail to warrant modifying the Settlement. *Flores IV*,

8  *supra*, 984 F.3d at 742-43; *Flores I*, 828 F.3d at 910; *Flores v. Barr*, *supra*, 407 F.

9  Supp. 3d at 928 ("The Court declines to reiterate yet again why an increase in

10  numbers of families detained at the southern border does not justify, much less

11  require, dissolution of the parties' bargained-for agreement . . .") (citation omitted).

12  Defendants' claim that the FSA incentivizes unauthorized entry has fared no

13  better. *Flores v. Johnson*, *supra*, 212 F. Supp. 3d at 876, 886 (Defendants'

14  evidence of "the deterrent effect of the detention policy. . . [is] distinctly lacking in

15  scientific rigor.");[20] *Flores v. Sessions*, 2018 WL 4945000, at *2 (C.D. Cal. 2018);

16

17  ───────────────

[20] To this day, no credible evidence shows that prolonging children's detention or
18  subjecting them to inappropriate conditions during confinement discourages
others' unauthorized entry. *See, e.g.*, Ex. 4, Declaration of Tom Wong ¶¶ 12, 26,
19  27-34, June 18, 2025 ("I conducted such analysis and concluded that there was no
20  statistically significant increase in U.S. Border Patrol apprehensions of families at
the southwest border after the 2015 Flores ruling" recent data supports the same
21  conclusion: "Family migration has fluctuated significantly since 2019, ranging
from a monthly high of 123,815 to a low of 829. Given that the Flores settlement
22  has remained constant during this period, there is no evidence of correlation—
much less causation—between recent family migration numbers and the Flores
23  settlement. Suggesting otherwise would be irresponsible and inaccurate."); Report
24  of the DHS Advisory Committee on Family Residential Centers, June 4, 2025,

25

26

27

28

1   *Flores v. Lynch*, *supra*, 212 F. Supp. 3d at 914-15.[21]

2        Even assuming, arguendo, there were evidence that the Settlement

3   encourages unauthorized entry, such evidence would not justify detaining children

4   to deter others. Order, *R.I.L-R v. Johnson*, Case No. 15-11 (JEB), ECF No. 32

5   (D.D.C. Feb. 20, 2015) (enjoining ICE "from detaining class members for the

6   purpose of deterring future immigration to the United States and from considering

7   deterrence of such immigration as a factor in such custody determinations"); *see*

8   *also Kansas v. Crane*, 534 U.S. 407, 412 (2002) (civil detention may not "become

9   a 'mechanism for retribution or general deterrence'—functions properly those of

10  criminal law, not civil commitment") (*quoting Kansas v. Hendricks*, 524 U.S. 346,

11  372-73 (1997) (Kennedy, J., concurring)).

12       Defendants' desire, howsoever ardent, to detain children indefinitely in

13  prison-like settings does not constitute a changed circumstance warranting

14  termination.

15  /

16  /

17  /

18

19  _____

20  *available at* www.ice.gov/sites/default/files/documents/Report/2016/ACFRC-sc-
    16093.pdf (last visited June 8, 2025) ("DHS should not use detention for the

21  purpose of deterring future family migration or punishing families seeking asylum
    in the U.S. Any contrary policy is unlawful, and ineffective.").

22

23  Defendants offer no substantial evidence that the Settlement encourages

24  unauthorized entry. The best they manage is a reference to an exhibit filed in an
    unpublished case from 2007, which merely recounts the government's having then

25  discontinued a purported "catch-and-release" policy. Ds. 2025 MTT at 11 n.5.
    Their argument for termination is otherwise entirely sound bite and ipse dixit.

26

27  [21] Defendants' statistics on unauthorized entries are old news. Migration numbers
    are currently the lowest in decades despite the FSA. CBP MTE, Ex. 2, de Gramont

28  Dec. ¶ 30 [Doc. # 1575-4].

### D. The Settlement does not violate separation of powers or the Administrative Procedure Act.

Although Defendants again assert that the Settlement violates separation of powers and the APA, they tie neither of these arguments to any change in law or fact. In all events, the FSA neither contravenes the INA nor dictates who may enter or remain in the United States. It simply requires that Defendants treat children humanely while they are in Defendants' custody. Neither the Settlement nor this Court's order construing it threatens the constitutional order.

Defendants freely negotiated the Settlement and agreed that this Court would retain authority to oversee it. This Court has repeatedly held that the agreement does not, therefore, infringe the prerogatives of the executive branch. *E.g.*, Order Denying Defendants' "Ex Parte Application for Limited Relief From Settlement Agreement," *supra,* 2018 WL 4945000 at *5 [Doc. # 455] ("The Court did not force the parties into the agreement nor did it draft the contractual language."); *Flores v. Barr*, *supra*, 407 F. Supp. 3d at 925 (FSA "can be overridden by the legislative branch;" "[t]his Court cannot abrogate the consent decree, however, by judicial fiat"); *see also, Berne Corp. v. Gov't of Virgin Islands*, 105 Fed. Appx. 324, 331 (3d Cir. 2004) ("[T]he District Court did not exceed its judicial power when it enforced the Settlement Agreement.").

The government's ability to enter into settlements is "the essence of sovereignty" itself. *United States v. Bekins*, 304 U.S. 27, 51-52 (1938). Refusing to honor its agreements is "a privilege no sovereign enjoys except in a despotic society." *Miller v. United States*, 140 F. Supp. 789, 795 (Ct. Cl. 1956); *All to End Repression v. City of Chicago*, 742 F.2d 1007, 1020 (7th Cir. 1984) ("[W]ho will make a binding agreement with a [government] that is free to walk away from an

agreement whenever it begins to pinch?").[22]

Nor is Defendants' complaining that the Settlement has endured "five Presidential administrations" at all compelling. Ds. 2025 MTT at 41. Any of these prior administrations could have exited the Settlement simply by promulgating rules that are consistent with it. If Defendants wish to exit the FSA, that path remains open to them, too.

Defendants next assert that the Settlement's termination clause impermissibly infringes upon their APA rulemaking prerogatives. That argument, too, has previously failed, and it remains meritless.

Defendants raised a nearly identical argument in their 2019 motion to terminate the FSA. *See* Ds. 2019 MTT at 2 ("[A] settlement that provided for the issuance of rules without regard to considerations required under the APA would violate the APA and impermissibly bind federal action in perpetuity.").

---

[22] For its part, Congress has passed two bills—the HSA and the TVPRA—that preserved the Settlement, while failing to enact several that would have weakened or terminated it.

The Flores Settlement Update and Establishment Act of 2022, H.R.8356, 117th Congress (2021-22), would have allowed DHS to detain children for up to 120 days before transferring them to a licensed facility and would have barred HHS from releasing a child to anyone not "lawfully present" in the United States. The bill never received a vote.

A 2019 Senate bill would have allowed indefinite detention of children and made it so that the "Flores settlement . . . shall not restrict any activities . . . [and DHS] shall have sole discretion as to detention standards of alien minors. . ." Secure and Protect Act of 2019, S.1494, 116th Congress (2019-2020). The bill never reached a vote.

In 2018, Congress received H.R.6190/S.3093, 115th Congress (2017-18), that proposed giving DHS authority to detain accompanied children indefinitely and excuse it from "the stipulated settlement agreement . . . commonly known as the 'Flores settlement agreement'" with regard to accompanied minors. That bill, too, never reached a vote.

This Court disagreed. *Flores v. Barr*, *supra*, 407 F. Supp. 3d at 925 ("Defendants argue that applying a non-APA standard to review the New Regulations would 'create additional procedures for rulemaking …'. But the Court has not created 'additional procedures' by enforcing an agreement into which Defendants willingly entered and agreed to be bound.");[23] *see also Berger v. Heckler*, 771 F.2d 1556, 1579 (2d Cir. 1985) (no error where "Secretary [of HHS] has merely been required to redraft her regulations to bring them into conformity with a court order to which she has consented"). Defendants lost their instant APA argument, and the law-of-the-case doctrine precludes their re-arguing it now.

Yet even were Defendants' APA argument properly at issue, it would have no greater merit. The Settlement simply does not prevent Defendants from following APA rulemaking procedures.[24]

---

[23] On appeal, Defendants argued that their having followed APA rulemaking protocols was *sufficient* to terminate the Settlement regardless of any conflicts, but *not* that the Settlement's rulemaking requirement is itself impermissible. *See* Defendants-Appellants' Opening Brief, No. 19-56326, 2019 WL 7494614, at *23-24, 53-55 (9th Cir. 2019). This argument was therefore forfeited.

The Ninth Circuit affirmed, *Flores IV*, 984 F.3d at 741, and Defendants did not seek further review.

Defendants also waived their instant APA argument on at least two additional occasions: first, when they agreed to ¶¶ 9 and 40 of the FSA; and second, when they agreed to amend the ¶ 40 termination clause in 2001. *Cf. Flores I*, 828 F.3d at 908 ("[T]he government waived its ability to challenge the class certification when it settled the case and did not timely appeal the final judgment.").

[24] When it promulgated its 2019 Regulations, DHS followed APA procedures, but the overwhelming majority of commenters objected only to its failure to comply

Just last year, HHS managed to promulgate regulations implementing most of its Settlement obligations. HHS considered thousands of comments in the course of promulgating those rules. *See* Preamble, ORR Foundational Rule, 89 Fed.Reg. 34,384; Comments, Unaccompanied Children Program Foundational Rule, *available at* https://perma.cc/DL56-J2TT (last visited June 18, 2025).[25] This was hardly "an empty charade." Ds. 2025 MTT at 47 (quoting *Conn. Light & Power Co. v. Nuclear Regul. Comm'n*, 673 F.2d 525, 528 (D.C. Cir. 1982)).[26]

---

with the FSA. *See* 2019 Regulations, 84 Fed. Reg. at 44433 ("Some commenters noted that there may be times when a child needs to be detained, such as when no alternative exists that meets the needs of the child and ICE's security concerns. But most commenters on this topic expressed general opposition to the detention of family units."). Yet DHS "decline[d] to change the proposed regulatory text in response to public comments." *Id.* at 44434.

[25] The resulting rule included many additional provisions. *See, e.g.*, Preamble, 89 Fed. Reg. at 34,434-35 (noting changes to runaway risk considerations in response to comments and departure from specific wording of FSA ¶ 22).

[26] *Conservation Northwest v. Sherman,* 715 F.3d 1181 (9th Cir. 2013), is not to the contrary. In that case, a consent decree amended a land management standard in derogation of rulemaking procedures that applicable environmental laws declared mandatory. *Id*. at 1187-88.

First, the FSA's modified sunset clause *permits* Defendants to exit the Settlement by promulgating implementing regulations, but it does not require them to modify any existing agency rule.

Second, unlike the controlling law in *Conservation Northwest,* the substantive statutes at issue nowhere force Defendants to enshrine policies toward children in formal regulations. Indeed, for decades the bulk of such policies have been found not the Code of Federal Regulations, but in informal manuals and policy guides, a practice that continues to this day. *E.g.*, Office of Refugee Resettlement, *ORR*

The Court thereafter partially terminated the Settlement as to HHS. HHS Terminate Order, *supra*. Defendants explain neither why DHS refuses to do the same, nor why HHS refuses to cure the inconsistencies in the Foundational Rule that this Court held preclude termination. Defendants' appeal to equity is disingenuous. *Flores v. Sessions*, 394 F. Supp. 3d at 1065 n.15 (noting that parties stated they knew of nothing in the Agreement that violated any law); *Perez*, 116 F.3d at 845 (invited errors are waived).

In sum, the Parties agreed that the FSA would terminate upon Defendants' adopting regulations implementing the agreement. The modified sunset clause balances the Parties' interests by providing Defendants with a clear path for termination while affording Plaintiffs modest assurance that children will continue to enjoy humane treatment.[27]

---

*Unaccompanied Alien Children Bureau Policy Guide*, *available at* https://acf.gov/orr/policy-guidance/unaccompanied-children-bureau-policy-guide (last visited June 10, 2025).

Third, the appellant in *Conservation Northwest* was an intervenor who had opposed the settlement, not a settling party.

Finally, neither the APA itself nor a case decided in 2013 constitute a change in law since 2019, when the Court last considered Defendants' argument.

[27] Defendants cavil that the Court's retaining jurisdiction to modify its partial termination order as to HHS means the FSA will continue to bind them forever.

In partially terminating the Settlement as to HHS, the Court, not surprisingly, retained jurisdiction over this matter as a whole. HHS Termination Order, *supra*. Such retained jurisdiction inherently includes authority to modify prior orders. *See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 887

1    Defendants are free to decide when and if they wish to promulgate

2    regulations implementing the Settlement. But they should not be permitted to shirk

3    their obligation to do so and thereby deny Plaintiffs the benefit of their bargain.

4    **E.    Even if changed circumstances existed, termination would not be**

5    **a suitably tailored remedy**

6    Even if Defendants could demonstrate changed circumstances warranting

7    modification and these issues were properly before the Court, wholesale

8    termination would not be a "suitably tailored" remedy. *Rufo*, 502 U.S. at 383.

9    "A proposed modification should not strive to rewrite a consent decree so

10   that it conforms to the constitutional floor." *Id*. at 391.[28] Rather, "the focus should

11   be on whether the proposed modification is tailored to resolve the problems created

12   by the change in circumstances." *Id*. A suitably tailored modification must "'return

13   both parties as nearly as possible to where they would have been absent' the

14   changed circumstances." *Kelly v. Wengler*, 822 F.3d 1085, 1098 (9th Cir. 2016)

15   (quoting *Pigford v. Veneman*, 292 F.3d 918, 927 (D.C. Cir. 2002)).

16   Defendants have made no showing that termination is suitably tailored to the

17   purported changed circumstances they identify. *Flores I*, 828 F.3d at 910 ("[E]ven

18   if the parties did not anticipate an influx of this size, we cannot fathom how a

---

20   (9th Cir. 2001); *Cranshire Cap., L.P. v. CBTV-Star, LW, Inc*., 70 F. App'x 434,

21   436 (9th Cir. 2003). Defendants failed to appeal from that order.

22   Defendants will also be free to challenge any order reinstating HHS's Settlement

23   obligations when and if the Court issues one. (And, of course, Defendants could

     always promulgate regulations that fully implement the Settlement.) Terminating

24   the Settlement now on the weight of speculation over what the Court may do in the

25   indeterminate future would be precipitous.

26   [28] Although *Horne* refers to "an ongoing violation of federal law," 557 U.S. at 454,

27   that case involved a litigated injunction, not a consent decree. No agreement of the

     parties was at issue in *Horne*, nor, *a fortiori*, the concern for discouraging

28   settlement that animated the Court's holding in *Rufo*.

'suitably tailored' response to the change in circumstances would be to exempt an entire category of migrants from the Settlement.").[29]

## VII. CONCLUSION.

Nearly a decade ago, this Court began the first in a long series of orders issued in this case by quoting Mahatma Gandhi: "'An error does not become truth by reason of multiplied propagation, nor does truth become error because nobody sees it.'" *Flores v. Lynch*, *supra*, 212 F. Supp. 3d at 908.

Defendants' instant motion merely continues the propagation of entrenched error.[30] For the foregoing reasons, their motion should be denied.

Dated: January 20, 2025              CENTER FOR HUMAN RIGHTS AND
                                     CONSTITUTIONAL LAW
                                     Carlos R. Holguín
                                     Bardis Vakili
                                     Sarah Kahn

---

[29] This is also consistent with contract law. In California, "courts will generally sever illegal provisions and enforce a contract when nonenforcement will lead to an undeserved benefit or detriment to one of the parties that would not further the interests of justice." *Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 127 (Cal. 2000); *see also Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1273 (9th Cir. 2017) ("[T]he dispositive question is whether 'the central purpose of the contract' is so tainted with illegality that there is no lawful object of the contract to enforce.") (citing *Marathon Entm't v. Blasi*, 42 Cal.4th 974, 996 (Cal. 2008)). Full termination would plainly afford Defendants an undeserved benefit.

[30] Defendants' instant motion appears palpably lacking in substantial justification, and Plaintiffs accordingly reserve the right to seek attorney's fees and costs pursuant to the Equal Access to Justice Act for opposing it.

NATIONAL CENTER FOR YOUTH LAW
Mishan Wroe
Rebecca Wolozin
Diane de Gramont

CHILDREN'S RIGHTS
Leecia Welch
Eleanor Roberts

_/s/ Carlos Holguín_
Carlos Holguín
One of the Attorneys for Plaintiffs

CERTIFICATE OF COMPLIANCE

I, the undersigned counsel of record for Plaintiffs, certify that this brief contains 11,768 words, which complies with the limit of 15,000 words allowed by this Court's order [Doc. # 1568].

Dated: June 20, 2025.                    /s/ *Carlos Holguín*

Carlos Holguín

Opposition to Motion to Terminate Settlement
CV 85-4544-DMG-AGRX