CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Carlos R. Holguín (Cal. Bar No. 90754)
crholguin@centerforhumanrights.org
Bardis Vakili (Cal. Bar No. 247783)
bardis@centerforhumanrights.org
Sarah E. Kahn (Cal. Bar No. 341901)
sarah@centerforhumanrights.org
1505 E 17th St. Ste. 117
Santa Ana, CA 92705l
Telephone: (909) 274-9057

*Attorneys for Plaintiffs*

*Additional counsel listed on following page*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| Jenny Flores, *et al.*,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>Pamela Bondi, Attorney General of the United States, *et al.*,<br><br>　　　　Defendants. | Case No. CV 85-4544-DMG-AGRx<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO QUESTIONS REGARDING JUVENILE COURT MONITORS' REPORTS**<br><br>Judge: Hon. Dolly M. Gee |

i

Pls.' Resp. to Defs.' Objections
CV 85-4544-DMG-AGRX

NATIONAL CENTER FOR YOUTH LAW
Mishan Wroe (Cal. Bar No. 299296)
Diane de Gramont (Cal. Bar No. 324360)
1212 Broadway, Suite 600
Oakland, CA 94612
Telephone: (510) 835-8098
Email: mwroe@youthlaw.org

NATIONAL CENTER FOR YOUTH LAW
Rebecca Wolozin (admitted *pro hac vice*)
818 Connecticut Ave. NW, Suite 425
Washington, DC 20006
Telephone: (202) 868-4792
Email: bwolozin@youthlaw.org

CHILDREN'S RIGHTS
Leecia Welch (Cal. Bar No. 208741)
2021 Fillmore Street
San Francisco, CA 94115
Telephone: (415) 602-5202
Email: lwelch@childrensrights.org

CHILDREN'S RIGHTS
Eleanor Roberts (admitted *pro hac vice*)
88 Pine Street, Suite 800
New York, NY 10005
Telephone: (212) 683-2210
Email: eroberts@childrensrights.org

ii

Pls.' Resp. to Defs.' Objections
CV 85-4544-DMG-AGRX

## I. INTRODUCTION

Pursuant to the Court's Order Re Status Conference, ECF No. 1614, Plaintiffs respond to Defendants' written objections to providing supplemental information ordered by the Court. ECF No. 1620 ("Defs.' Obj.").

The Court's order requiring supplemental reporting is wholly appropriate, and Defendants' objections are misplaced. As Plaintiffs outlined in their response to the Juvenile Coordinator ("JC") reports, ECF No. 1601 ("Pls.' JC Rep. Response"), the JC reports raise serious questions regarding Defendants' compliance with the FSA. Additionally, the ICE JC report lacked the substantive information necessary for the Court to assess compliance with the Settlement as contemplated by Paragraph 30 of the FSA. Importantly, Defendants do not claim any burden imposed by this supplemental reporting, much of which they are already required to collect and track by the FSA or their own regulations and policies. Instead, Defendants base their objections on an incorrect assertion that such supplemental information is not required by the Settlement. Their objections should each be overruled.

## II. PLAINTIFFS' RESPONSES TO DEFENDANTS' OBJECTIONS

### A. *Data Reporting*

Defendants' objection that the data reporting ordered by the Court is beyond the scope of the FSA is unfounded. Paragraph 30 of the FSA requires the juvenile coordinator to "review, assess, and report to the court regarding compliance with the terms of this Agreement." FSA ¶ 30. The FSA further requires the JC to "explain the reasons for" any lack of compliance with the FSA in its report. *Id.* The language contained "within the four corners" of the FSA is broad, and Defendants' objection reads limitations into the agreement that are simply not there. Defs.' Obj. at 2-5. *See Flores v. Barr*, 934 F.3d 910, 915 (9th Cir. 2019) ("We cannot accept that the parties to the Agreement included gratuitous standards that have no practical impact."); FSA ¶¶ 30, 35 (establishing the Court's duty to determine compliance with the agreement and "retain jurisdiction over this action" until it is dismissed).

1

Pls.' Resp. to Defs.' Objections
CV 85-4544-DMG-AGRX

       To the contrary, for the reasons outlined in Plaintiffs' JC Report Response and during the July 25, 2025 Status Conference, the JC reports at a minimum raise questions regarding Defendants' compliance with the FSA's requirement to "expeditiously process" class members, transfer children out of unlicensed detention facilities as expeditiously as possible, and "make and record the prompt and continuous efforts" of DHS toward family reunification and release. FSA ¶¶ 12A, 18. In some cases, as the Court itself identified during the status conference and as Plaintiffs identified in their response, the JC reports themselves identified areas of non-compliance with the FSA. *See* Pls.' JC Rep. Response at 2-3, 5-8.

       Notably, JC Reports have routinely provided the type of information requested by the Court throughout the history of this case and this Court has previously ordered supplemental briefing in line with its most recent order when JC Reports did not provide satisfactory evidence of compliance. *See, e.g.*, *Flores v. Barr*, 2020 WL 2758795 at *1 (C.D. Cal. May 22, 2020) (citing an ICE report showing a continued "lack of compliance with Paragraph 18 of the FSA" and ICE's "cursory explanations for denying minors release under the FSA," among other things); *Flores v. Barr*, 2020 WL 3488040, at *2 (C.D. Cal. June 26, 2020) (modified by 2020 WL 6804512 (C.D. Cal. Nov. 12, 2020). *See also, e.g.*, ECF Nos. 363, 585, 1158 (Orders requiring specific and/or supplemental JC reporting). Similarly, as the Court has often noted, reports to the court regarding compliance require evidence of implementation of protocols rather than mere assertion of the existence of written protocols. *See, e.g., Flores v. Barr*, 2020 WL 3488040, at *2 (C.D. Cal. June 26, 2020); *see also, e.g.*, *Flores v. Barr*, 2020 WL 6804512 (C.D. Cal. Nov. 12, 2020).

       Further, Defendants' assertion that the Court is prohibited from requiring the JCs to provide to the Court information they are already required to collect, maintain, and provide to Plaintiffs under the FSA belies common sense. Defs.' Obj. at 3-4. Paragraphs 28A and 29 of the FSA require the JC to collect and maintain certain information for the purposes of monitoring and enforcement and provide it to Plaintiffs. This also ensures

2

Pls.' Resp. to Defs.' Objections
CV 85-4544-DMG-AGRX

such information is available should the Court itself need it to effectively conduct an annual compliance review. *See, e.g.,* FSA ¶ 28A ("The INS, through the Juvenile Coordinator, shall also collect information regarding the reasons for every placement of a minor in a detention facility or medium security facility.").

    Defendants' objections imply the Court does not regularly have access to the information JCs are required to collect under the Settlement but the JCs can, and often do, choose to proactively include much of the mandated statistical information in their JC reports. Moreover, where a submitted JC report does not provide sufficient information to assess compliance with the FSA, or where Plaintiffs provide the Court with information produced under Paragraph 28A and 29 regarding length of stay in unlicensed facilities, the Court may require the Juvenile Coordinators to submit the additional information it needs. *See* FSA ¶ 30.

    Finally, Defendants' objection that the Court is restricted from ordering supplemental reporting because length of custody is at issue in a pending Motion to Enforce lacks any factual or legal basis. The required reporting is due to the Court a full month after the Motion to Enforce has been fully briefed and argued. That timing alone undermines Defendants' claim that such reporting would somehow be prejudicial to Defendants in the resolution of that motion. Defs. Obj. at 5. Additionally, the stated purpose of the Status Conference—set a year ago well before Plaintiffs filed the pending Motion to Enforce as to CBP—was to evaluate Defendants' compliance based on the annual JC reports required by the plain terms of the FSA. ECF No. 1455, Minute Order. Far from a *sua sponte* order to produce information during an "unrelated" status conference, the Court's order was *directly* related to the evaluating Defendants' compliance and resulted from deficiencies in the initial Annual JC reports. Defs. Obj. at 5.

    The Court should overrule Defendants' objections to supplementing the JC reports because the requested data reporting is well within the plain language of the FSA, and it

3

Pls.' Resp. to Defs.' Objections
CV 85-4544-DMG-AGRX

is aligned with evidence submitted to the Court by the parties throughout the history of this action to allow the Court to monitor compliance with the FSA.

### B. *ICE Family Residential Standards*

Defendants should be required to provide the supplemental reporting ordered by the Court regarding Family Residential Standards ("FRS"), including providing the specific language of the modified standards, because these standards clearly impact the environment and conditions in which children are held in ICE detention. *See, e.g.,* FSA ¶ 29 (requiring Defendants to provide Plaintiffs' counsel with policies or instructions regarding implementation of the FSA). This includes FRS terms that impact the parents and family members with whom children are detained and upon whom they depend.

To the extent there are questions about the relevance of any particular component of the standards, Defendants must provide a detailed explanation as to why the standard is wholly irrelevant to evaluating conditions in which DHS detains children. The "basic standard of relevance . . . is a liberal one" and "generally requires considering the substantive issues the case presents." *Crawford v. City of Bakersfield*, 944. F.3d 1070, 1077 (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 587 (1993)). The *Flores* case is at its heart about issues of safety, security, and consideration of children's needs in immigration detention settings. DHS' treatment of class member's caregivers in the facilities where DHS chooses to hold families, necessarily impacts the conditions in which a child is held. There is certainly more than a "slight" probative value to the Court of being able to review the full Modified Family Residential Standards referenced in the ICE JC's annual report filed with the Court, and the Court should therefore overrule Defendants' relevance objections. *Bacon v. Dept. of Human Svcs.*, 2023 WL 2755592 (9th Cir. 2023).

### C. *Transportation Issues*

For reasons explained above, the Court is also well within its authority to order supplemental reporting on transportation of class members, as referenced in the CBP JC report. *Supra* Part A. As the Court explained, such information is necessary to evaluate

4

Pls.' Resp. to Defs.' Objections
CV 85-4544-DMG-AGRX

Defendants' compliance with paragraphs 12A and 18 of the FSA and to address the cursory explanations for lengthy times in custody reported in the CBP JC Report. Additionally, the FSA explicitly addresses the transportation and transfer of minors in Paragraphs 25-27 of the FSA.

### D. *Issues that Overlap with the pending Motion to Enforce and Motion to Terminate*

As explained *supra*, to the extent Defendants object that these issues are raised in Plaintiffs' Motion to Enforce, ECF No. 1575, that motion will have been fully briefed and argued well before the supplemental reporting ordered by the Court is due. This objection should be overruled.[1] Defendants' assertion that the Court should be prohibited from monitoring compliance with the FSA—as it has done year after year regardless of whether motions were actively pending in this case—is meritless.

Furthermore, Defendants motion to terminate does not operate as a stay of the Court's regularly scheduled business in this case. Should any evidence or statements presented at the Status Conference be admitted into evidence with respect to that Motion, Defendants must address those objections as they arise.[2] An objection based on hypothetical submission and/or admission of evidence related to a separate proceeding yet to be argued or decided is improper. Fed. R. Evid. 103. Defendants' objections under Fed. R. Civ. P. 43(c) and Fed. R. Evid. 603 are therefore premature and misplaced. Defs. Obj. at 7.[3]

---

[1] Alternatively, the Court could order the same data reporting as part of a remedy should it grant Plaintiffs' pending Motion to Enforce, particularly to address Plaintiffs' allegations regarding excessive lengths of stay in CBP and inaccurate DHS data.

[2] This includes any objection to information provided to the Court not under oath. However, Plaintiffs would not object should the Court wish to place the JCs or JCMs under oath to provide evidence related to annual reporting and compliance.

[3] After decrying any consideration of information from the Status Conference in any currently pending motion, Defendants inappropriately make a substantive argument regarding 8 U.S.C. § 1252(f)(1) related to the very motions they rely upon to justify their objection. Defs.' Obj. at n.1. The Court should disregard any such misplaced argument and overrule this objection to the extent it applies at all to the Court's order.

E.  *Juvenile Court Monitor's (JCM) ability to monitor ICE facilities*

The Court should disregard Defendants' vague and out-of-place objection to JCM monitoring of ICE facilities. Neither at nor following the July 25, 2025 status conference did the Court issue an order regarding the JCM's authority or JCM monitoring of ICE facilities, nor did the parties brief that issue. Defendants' objection is premature. Nonetheless, Plaintiffs reiterate what this Court has already held in prior orders: "Federal Rule of Civil Procedure 53 and the All Writs Act (i.e., 28 U.S.C. § 1651(a)) authorize the appointment of a special master to monitor compliance with a court's orders." *Flores v. Sessions*, 2018 WL 6133665, at *2 (C.D. Cal. Nov. 5, 2018).

Should this Court choose to re-appoint a monitor for ICE facilities, it would be well within its authority to do so, just as it has been well within this Court's authority to order monitoring of ICE and ORR facilities in the past. *See id.*; *see also, e.g.*, *Flores v. Barr*, 2020 WL 4260435, at *2 (C.D. Cal. July 25, 2020). Moreover, as the Court noted in the status conference, prior monitoring of FRCs by the independent monitor was discontinued only because Defendants discontinued use of the FRCs. *See* Order of the Court, ECF No. 987 (ordering Independent Monitor to continue to provide enhanced monitoring of FRCs); ICE JC Rep., ECF No. 1259-2. Now that Defendants have chosen to begin detaining families and children in ICE detention again, renewed independent monitoring is appropriate.

Finally, each of the Courts' orders authorizing independent monitoring allow for the monitors to investigate further if the Monitors become aware of potential violations of the FSA beyond the scope of any individual Court monitoring order. *See, e.g. Flores v. Barr*, 2020 WL 4260435, at *2 (C.D. Cal. July 25, 2020); *see also, e.g.*, ECF Nos. 494, 518, 533, 698, 769, 784, 887, 914, 987, 1014, 1050, 1071, 1077, 1096, 1098, 1120, 1219. *See also* ECF Nos. 1280, 1381, 1388, 1423, 1426, 1470 (2022 CBP Settlement JCM Monitoring orders).

Dated: August 8, 2025

CENTER FOR HUMAN RIGHTS AND
CONSTITUTIONAL LAW
Carlos Holguín
Bardis Vakili
Sarah Kahn

NATIONAL CENTER FOR YOUTH LAW
Mishan Wroe
Diane de Gramont
Rebecca Wolozin

CHILDREN'S RIGHTS
Leecia Welch
Eleanor Roberts


*/s/ Rebecca Wolozin*

Rebecca Wolozin
*Attorney for Plaintiffs*

7

Pls.' Resp. to Defs.' Objections
CV 85-4544-DMG-AGRX

# CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2025, I caused a copy of Plaintiffs' Response to Defendants' Objections to be served to all counsel through the Court's CM/ECF system.

Dated: August 8, 2025

*/s/Rebecca Wolozin*
Rebecca Wolozin
*Attorney for Plaintiffs*

8

Pls.' Resp. to Defs.' Objections
CV 85-4544-DMG-AGRX