# EXHIBIT 17

**DECLARATION OF LEECIA WELCH**

CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Carlos R. Holguín (Cal. Bar No. 90754)
Bardis Vakili (Cal. Bar No. 247783)
Sarah E. Kahn (Cal. Bar No. 341901)
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Email:   crholguin@centerforhumanrights.org
         bardis@centerforhumanrights.org
         sarah@centerforhumanrights.org

*Attorneys for Plaintiffs*

*Additional counsel listed on following page*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> PAM BONDI, Attorney General of the United States, *et al.*, <br><br> Defendants. | No. CV 85-4544-DMG-AGRx <br><br> **DECLARATION OF LEECIA WELCH IN SUPPORT OF PLAINTIFFS' RESPONSE TO SUPPLEMENTAL JUVENILE COORDINATOR REPORTS AND DATA** <br><br> Honorable Dolly M. Gee <br> Chief United States District Judge |

NATIONAL CENTER FOR YOUTH LAW
Mishan Wroe (Cal. Bar No. 299296)
Diane de Gramont (Cal. Bar No. 324360)
1212 Broadway, Suite 600
Oakland, CA 94612
Telephone: (510) 835-8098
Email: mwroe@youthlaw.org

NATIONAL CENTER FOR YOUTH LAW
Rebecca Wolozin (admitted pro hac vice)
818 Connecticut Ave. NW, Suite 425
Washington, DC 20006
Telephone: (202) 868-4792
Email: bwolozin@youthlaw.org

CHILDREN'S RIGHTS
Leecia Welch (Cal. Bar No. 208741)
2021 Fillmore Street
San Francisco, CA 94115
Telephone: (415) 602-5202
Email: lwelch@childrensrights.org

CHILDREN'S RIGHTS
Eleanor Roberts (admitted pro hac vice)
88 Pine Street, Suite 800
New York, NY 10005
Telephone: (212) 683-2210
Email: eroberts@childrensrights.org

# DECLARATION OF LEECIA WELCH

I, Leecia Welch, declare as follows:

1. I am a Deputy Director of Litigation at Children's Rights. I represent Plaintiffs in the above-titled action. If called to testify in this case, I would testify competently about these facts.

2. In the past six months, my co-counsel and I have conducted monitoring site visits in our role as *Flores* counsel at the South Texas Family Detention Center ("Dilley") on four separate occasions (May 1-2, June 4-5, July 28-29, and September 9-11, 2025).

3. Class members and their parents have consistently reported serious concerns with Dilley's secure, prison-like environment, the lack of access to know your rights trainings and free legal counsel, the lack of access to drinkable, clean-tasting water and healthy, varied, child-friendly foods and snacks, the inability of class members to sleep due to lights kept on in their living areas all night and noisy bed-checks by guards during that time, the lack of access to adequate or sufficient hygiene products and necessary clothing/bedding, the lack of free calls to family members, and inadequate care for acute emergency medical incidents and children with serious illnesses or disabilities.

4. Following the first three site visits, we provided Defendants with a detailed, comprehensive list of these *Flores* violations. We sent Defendants meet and confer letters regarding these violations on May 7, May 16, May 28, June 4, June 20, and August 14, 2025. We are currently preparing a letter regarding our concerns from the site visit last week. As directed by Defendants, we also raised emergency time-sensitive concerns about particular children via email on June 6, June 17, July 30, and August 5, 2025. To date, Plaintiffs and Defendants have met and conferred three times (May 14, May 30, and July 24, 2025) about the *Flores* violations at Dilley identified in our correspondence.

5. Following the directives of this Court during the July 25, 2025 status conference and August 8, 2025 hearing, Plaintiffs expressly requested in our August 14, 2025 meet and confer letter that the ICE Juvenile Coordinator be included in our next meet and confer meeting, which is scheduled for September 17, 2025. We reiterated that request via email on September 11, 2025. To date, we have not received a response from Defendants regarding whether or not they intend to invite the ICE Juvenile Coordinator to our call.

### Dilley is a Secure Facility

6. Dilley is a 56-acre unlicensed, secure ICE facility located in Dilley, Texas. The facility is operated under a contract with CoreCivic. The perimeter of the facility is surrounded by a high metal fence. In the front of the facility, there is a large parking area for staff and visitors. To enter the facility, visitors must proceed through a locked trailer-style building. Upon entry, all staff and visitors, including *Flores* counsel, must remove *all* items from briefcases, purses, and backpacks and load them into plastic bins. CoreCivic staff then rifle through all items in the bins and identify "contraband" that is not permitted inside the facility. Examples of "contraband" not permitted in the facility from our site visits include: crayons, toy fidget-spinners, small fidgets and pop-its, children's drawing pads, hand-sanitizer and wipes, lip balm, air pods, Apple watches, opened water bottles, and more than $20 in cash. Once all of these items were placed in metal lockers, we were permitted to go through the facility's metal detector system.

7. On the most recent site visit, I expressed concern about the new rule that crayons were not permitted inside the facility. We regularly offer children the chance to draw, color or doodle during an interview to relieve stress or to keep them busy while we are speaking with their parent. I informed CoreCivic staff that if our crayons were not allowed in the facility, CoreCivic would need to be provide us with approved crayons to conduct our interviews or it would be reported to the Court. After another request to the

1  ICE compliance officer, CoreCivic later provided us with small 4-crayon packets to use
2  while at Dilley.
3      8.    Once through security, we are given badges in exchange for our driver's
4  licenses.  We are then escorted by staff through another set of secured doors to the legal
5  visitation trailer.
6      9.    During our site visits, we spend most of the time in the legal visitation
7  trailer.  There is a large open area where chairs are organized in rows for Dilley detainees
8  to await their attorney meetings.  Along the perimeter of the trailer are about ten legal
9  visitation rooms equipped with phones, desks, chairs, and tables.
10      10.    On each of the site visits, either CoreCivic staff or an acting ICE compliance
11  office has led a tour of the facility.  The grounds consist of 5 living zones for detainees
12  with rows of beige trailers.  There are also soft-sided tents divided by dusty gravel paths,
13  astroturf areas, and some grass.  There are very few trees and only a few structures that
14  provide shade.  Temperatures at the facility are regularly above 95 degrees and the lack
15  of shade has been a consistent concern.  During the tours, we are generally shown only
16  one of the living zones.  We have toured the intake trailer, the medical and medical annex
17  areas, the cafeteria soft-sided tent, the hard-sided cafeteria building, the library, the
18  education room, an unoccupied living area (except on the July tour when we were taken
19  to an occupied living area), a soft-sided tent gym, some outdoor space, the commissary
20  room, the caregiver room, and the courtroom trailer.  The facility has the capacity to hold
21  2,400 people, but there have not been more than 500 people at Dilley during any of our
22  site visits.
23      11.    Unlike every other site visit I have been on over the past eight years,
24  Defendants have taken the position that no questions are permitted during the tour.  The
25  tour leaders provide general information about the facility, and we generally walk in
26  silence while they talk.  The information shared on the tour often conflicts with reports
27  from children and parents.  Defendants have directed us to compile our questions and
28  submit them in writing to Defendants' counsel.  We have now submitted three sets of

questions and are working on a fourth set to submit with our next meet and confer letter. The process of keeping notes of our questions, compiling them, attaching them to meet and confer letters, and talking through the questions with Defendants has taken many hours. We have repeatedly expressed to Defendants that this process is inefficient and unnecessarily time-consuming given that most of our questions could be answered easily and quickly during the tour. The answers Defendants provide are often incomplete, unsatisfactory, and generally lead to additional questions, most of which could be answered on site in real time.

### *Flores* violations at Dilley

12. Since Dilley opened, we have interviewed approximately 65 families. While we have seen some improvements at Dilley since it first opened when it was not yet fully functional, children and parents have consistently raised the same concerns, and we have repeatedly shared them with Defendants. ICE's assertions of compliance with the FSA in their supplemental response are refuted by extensive evidence from our interviews with class members. As summarized above, families have consistently reported concerns about access to know your rights trainings and free legal counsel, drinkable water and healthy child-friendly foods and snacks, the inability of class members to sleep due to lights kept on in their living areas all night and noisy bed-checks by guards during that time, the lack of access to hygiene products and necessary clothing/bedding, the lack of free calls to family members, and inadequate care for acute emergency medical incidents and children with serious illnesses or disabilities

13. Children and families at Dilley have consistently reported that they are not apprised of their rights under *Flores*, including their right to access free legal counsel. As recently as the September 9-11 visit and long before then, class members reported never receiving a know-your-rights training, having challenges accessing their immigration lawyers, and not being able to call their immigration lawyers for free. (Some class members reported that some legal calls are free to certain attorneys or if the attorney

schedules a legal call, but not in other situations.)  Many families were unaware they were allowed free legal calls and did not know how to make them.  In earlier visits, families reported not having access to a list of free legal attorneys at all, but legal services posters in English and Spanish are now visible on the walls in various areas of the facility.  Typically, English-language flyers are stapled *over* Spanish language flyers with other languages occasionally available behind those.  Families would have to lift up the English language flyer to see other languages available beneath it.  On several observed bulletin boards, the small print list of which languages materials are available in, was posted at the top perimeter of the bulletin board well above an adult's line of sight.  Plaintiffs' counsel did not observe any sign-up sheets available for legal visits.  Notably, next to the list of pro bono attorneys is a sign-up list for people seeking voluntary departure.  This is the only sign-up list I observed posted on the bulletin boards throughout the facility.  There is no sign-up list to request a legal meeting with RAICES who provides individual meetings regularly at the facility.  As far as I am aware, there is no legal orientation program in operation.  Although a video showing a courtroom is shown in the intake room, the volume has been off or extremely low when I have been on each tour.  The cartoon playing in the small children's area of intake is played loudly.  It is impossible to hear what is being said on the video used for orienting new families in the intake room.  Families who did not speak English or Spanish (which is a significant portion of the population) and families who were trying to access attorneys other than RAICES had an especially difficult time accessing legal counsel.

   14. Although ICE claims to have resolved issues with accessing drinkable water at Dilley, children and parents tell a different story.  As recently as our September 9-11 visit, class members reported that drinkable water continues only to be available in the cafeteria during mealtimes.  Children and parents are not permitted to leave the cafeteria with cups of water or food for later.  Bottled water must be purchased for $1.21 per bottle at the commissary, which most families cannot afford.  The inability of class members to access drinkable water has been consistent and ongoing since May 2025 and raised as a

concern at every Dilley site visit since then. Far too many people have shared that the water in the sinks in living areas is disgusting, makes them sick, and has an odd smell or flavor, and that staff tell them the water in living areas is undrinkable for these concerns to be disregarded. Moreover, if bottled water were available "upon request" as suggested in the ICE supplemental report, why would CoreCivic be selling it in the Commissary for $1.21 per bottle? In my eight years of visiting children in ORR and CBP custody, I have never heard until now of children having to buy water.

15. ICE also claims to have resolved issues with child-appropriate foods and healthy snacks at Dilley by providing "dietitian-approved meals and snacks, including child-friendly options." Yet, class members have continually reported that the food is always the same and there are no toddler-friendly options, leading many to lose weight or stop eating entirely. Families have repeatedly raised concerns about access to baby formula and reported that children's snacks are limited to red apples, sugary cookies, milk and apple juice. My observations on the tour have also confirmed that snacks available outside of mealtimes are only red apples, Teddy Grahams, milk, and apple juice. While this selection might not be inappropriate for short stays, children detained at Dilley for weeks or months need other options. These concerns continued to be reported during Plaintiffs' September visit. It is not too much to ask to provide babies with ample formula or children with fresh fruit like bananas and oranges.

16. Although the Juvenile Coordinator's supplemental report further claims children are provided with hygiene products, as recently as last week, class members reported that the only thing available for them in the showers is liquid hand soap, a complaint we have verified during the tour of the living area. Class members must buy necessary hygiene products, such as shampoo and bar soap, from the commissary. Further, during the September visit, we also heard that class members received a toothbrush (that quickly becomes unusable) and a travel-size toothpaste upon arrival at Dilley, but once they ran out they had to buy more from the commissary. Examples of basic needs products sold in the commissary include: $5.73 for deodorant, $1.44 for soap,

1  $2.39 for toothpaste and $1.30 for a single dose of Tylenol.  The fact that essential items
2  such as body soap, shampoo, toothpaste, menstrual products, and ChapStick are sold at
3  the commissary strongly indicates they are not being provided for free in a timely or
4  adequate manner.
5       17.    Children also have to pay for phone calls to their family, and thus are denied
6  access to communication with non-detained family members unless they have money.
7  The Supplemental Report states that "[e]ach minor is provided with a free phone call,"
8  which as class members have told us, means that they can make one three-minute call
9  upon entry, but have to pay for any further communication.  This is harmful and isolating
10 for children, especially for families without money in their accounts who cannot reach
11 immediate family members by phone.  Our most recent tour confirmed that "social" visits
12 are not permitted under the modified standards, meaning that children who have been
13 detained apart from family members who are living in the interior of the United States—
14 including parents and primary caregivers—are unable to visit with them in-person while
15 detained.
16      18.    The supplemental report admits there is no consistent structured education
17 available at Dilley and instead children are forced to spend day after day learning only
18 from "educational packets" and workbooks.  This aligns with my personal experience
19 touring Dilley and speaking with families.  Parents and children alike expressed serious
20 concerns about the education time they are missing.  Dilley has been open for
21 approximately six months and yet there is no indication as to when there will be adequate
22 educational services provided to class members.  Many of the children detained at Dilley
23 are missing important educational milestones and tests and are falling behind in school.
24 Their education cannot be replaced by an hour of education packets.  Further, children
25 report that the library contains few or no books in most languages other than English or
26 Spanish, and any classes are conducted in English or Spanish.  We verified these
27 concerns on our tour.
28

19. Families also consistently complain about the living arrangements at Dilley. Dual household families must live in separate zones – with mothers and children generally in one zone and fathers living separately in another zone. Although families are allowed to be together during the day, fathers are separated from their children after 8 pm, which is upsetting to many children. There are also limited places to be together as a family during the day, as fathers are not permitted in their wives' and children's living quarters and vice versa. Families also report sometimes sharing their living quarters with two or three other families they do not know, which can create stress and conflict – especially if families do not speak the same language. In addition, families report having difficulty sleeping because lights are kept on in living room areas throughout the night and guards often speak loudly on walkie-talkies.

20. For children with mental health needs or disabilities, detention in secure, restrictive facilities, prolonged separation from their medical care providers, and interruption of their medical care plans cause dangerous decompensation. On my site visits to Dilley this year, I have met with children with life-threatening diseases like leukemia, and children on the autism spectrum who were suffering immensely from missing needed therapies and the harsh conditions at Dilley. Similarly, ICE detention centers are not prepared to respond to medical emergencies. One child we met last week was made to wait more than six hours with acute stomach pain, then was told by a nurse he was fine and should come back in three days. After he vomited, he was finally taken to a hospital, where staff immediately identified that he was suffering from appendicitis and rushed him into emergency surgery.

### Alarming Lengths of Detention at Dilley

21. Our monitoring visits have also revealed an alarming increase in average time in custody at Dilley. In July, we met with several children who had been detained for two or more months. At the most recent monitoring visit, we observed a continuing trend of increasing time in custody. For example, on September 9, 2025, there were

children who had been at Dilley for approximately 98 days, 74 days, 63 days, and 55 days. During the September 2025 site visit, we interviewed fifteen families that had been detained over 20 days. One family we interviewed had been apprehended in April and detained in CBP custody for 16 days before being transferred to Dilley, where they were detained for 45 days. The family was released in July and ordered to attend check-ins. At their first check-in, in August, the family was re-detained and has now been in ICE custody, enduring their second detention, for 20 days. Counsel is aware of other families that have been re-detained after being released from family detention earlier this year.

22. At our meet and confers and in correspondence, we have repeatedly brought these violations and concerns to the attention of Defendants.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 15th day of September, 2025 at San Francisco, California.

_____

Leecia Welch