# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*, | Case No. CV 85-4544-DMG (AGRx) |
| Plaintiffs, | |
| v. | **FINDINGS OF FACT AND** |
| PAMELA BONDI, Attorney General of the United States, *et al.*, | **CONCLUSIONS OF LAW** |
| Defendants. | |

This matter is before the Court following a November 15, 2024 evidentiary hearing regarding Defendants' compliance with the Court's April 3, 2024 Order on Plaintiffs' Motion to Enforce the *Flores* Settlement Agreement ("FSA"). Mishan Wroe and Diane de Gramont appeared on behalf of the Plaintiff Class and Katelyn Masetta-Alvarez, Christina Parascandola, and Joshua McCroskey appeared on behalf of the Government.

Having carefully reviewed the evidence and the arguments of counsel, as presented at the evidentiary hearing and in their written submissions, the Court issues the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

## I.
## BACKGROUND

On February 29, 2024, Plaintiffs filed a motion to enforce the FSA with respect to Class Members allegedly being detained in inhumane conditions at "Open Air Detention Sites" ("OADS") along the California-Mexico border. [Doc. # 1392 ("MTE").] The Court held a hearing on the MTE on March 29, 2024. Concluding that the minors detained at the OADS were Class Members and therefore entitled to the protections provided by the FSA, the Court granted in part and denied in part the MTE. [Doc. # 1406 ("OADS Order" or "April 3, 2024 Order").]

In its April 3, 2024 Order, the Court directed the CBP Juvenile Coordinator ("CBP JC") to file an interim report updating the Court on the number of minors held at the OADS and the status of CBP's compliance with the Order. *Id.* at 12.[1] Plaintiffs filed a response to the report, arguing that CBP was not yet in compliance with the Court's Order. [Doc. # 1422.] Due to the conflicting accounts in the Juvenile Coordinator's report versus Plaintiffs' response thereto, the Court ordered the parties to meet and confer to discuss CBP's compliance with the Court's OADS Order. [Doc. # 1440.] The parties met and conferred several times, both with and without the assistance of the Juvenile Care Monitor,

---

[1] Page citations herein refer to the page numbers inserted by the CM/ECF system.

but they were unable to reach an agreement with respect to CBP's practices at the OADS. The Court accordingly scheduled an evidentiary hearing to resolve any remaining disputed facts and to determine whether CBP had successfully complied with the Court's OADS Order.

The Court held the evidentiary hearing on November 15, 2024. The Parties submitted into evidence declarations from their witnesses as the direct testimony and conducted live cross-examination of the opposing side's witnesses. At the hearing, Plaintiffs presented three witnesses, all of whom are advocates working for humanitarian nonprofits—Adrianna Jasso, Pedro Rios, and Lilian Serrano—and Defendants presented one witness—Border Patrol Chief Patrol Agent Patricia McGurk-Daniel. After reviewing the record, including the transcript of the evidentiary hearing, and the Parties' proposed orders, the Court makes the following findings of fact and conclusions of law.[2]

## II.
## FINDINGS OF FACT[3]

**A.  Whiskey Eight**

1. Whiskey Eight is located within San Diego Sector Border Patrol's ("SDC") Imperial Beach Station Area of Responsibility. Declaration of Chief Patricia McGurk-Daniel ("McGurk Decl.") ¶ 14(a) [Doc. # 1479-1].

2. Whiskey Eight is approximately one mile west of the San Ysidro port of entry and covers an area between a primary border fence and secondary border fence. The secondary border fence has a gate. Evidentiary Hearing Transcript ("Evid. Tr") at 77:16-24.

---

[2] The testimony presented at the evidentiary hearing addressed only the OADS known as "Whiskey Eight," so these findings of fact and conclusions of law focus primarily on Whiskey Eight.

[3] To the extent any of the Court's findings of fact may be considered conclusions of law or vice versa, they are so deemed.

3. Whiskey Eight is about 80 to 100 yards wide (the distance between the two border fences) and 200 yards long, or approximately the size of two football fields. *Id.* at 79:17-20, 80:13-15.

4. Tijuana is directly south of the primary border fence, and the Imperial Beach area is directly north of the secondary border fence. *Id.* at 78:4-5, Defs.' Ex. 4 ("SDC Map") [Doc. # 1512-1].

5. Humanitarian nonprofits and volunteers have set up make-shift shelters against the north side of the secondary border fence, from which they distribute food and other supplies to the noncitizens. McGurk Decl. ¶ 14(a).

6. Volunteers cannot access the area between the two fences. Declaration of Adrianna Jasso ("Jasso Decl.") ¶ 7 [Doc. # 1478-1].

7. The only way to get through the secondary fence is through a gate controlled by CBP. Declaration of Pedro Rios ("Rios Decl.") ¶ 13 [Doc. # 1478-2].

8. Whiskey Eight is one of the only areas in the Imperial Beach Area of Responsibility that is flat and has a gate big enough for transport vans to come in and out. Evid. Tr. at 55:14-18.

9. CBP officials are regularly present at Whiskey Eight, the area is monitored by CBP cameras, and CBP maintains operational control over the area. Evid. Tr. at 68:3-12; Rios Decl. ¶ 7; Jasso Decl. ¶¶ 8, 16.

**B.   Defendants do not have an official policy of directing noncitizens to OADS.**

1. On June 5, 2024, the United States Border Patrol ("USBP") issued a guidance document outlining steps USBP agents should take to ensure compliance with the *Flores* Settlement Agreement. [Doc. # 1459-1 ("June 5 Guidance") (under seal).]

2. The June 5 Guidance does not instruct USBP agents to direct noncitizens to wait at OADS. *Id.*

3. In fact, the June 5 Guidance specifically instructs agents to "not direct noncitizens to [OADs] where noncitizens have begun congregating or encourage noncitizens to congregate in certain areas or locations." *Id.*

4. Border Patrol does not officially designate places as OADS, but it is aware that noncitizens tend to gather in areas such as Whiskey Eight. Deposition of Chief Patricia McGurk-Daniel ("McGurk Depo.") at 94:10-16 [Doc. #1496-1].

**C.  Despite the lack of an official policy, there is an informal practice of directing noncitizens to Whiskey Eight.**

1. As of the time of the evidentiary hearing, Border Patrol agents continued to direct noncitizens, including minors, to Whiskey Eight since the Court's April 3, 2024 Order.

2. To "direct" includes:
    a. transporting noncitizens in vehicles;
    b. escorting noncitizens on-foot;
    c. directing noncitizens in the field to walk to Whiskey Eight on their own; and
    d. telling noncitizens to remain at Whiskey 8 to await transport to a detention facility.

3. Defendants acknowledge that Border Patrol agents sometimes transport or escort noncitizens, including children, to Whiskey Eight to await further transport, to conduct their field interview, or to get them out of a dangerous environment. Evid. Tr. at 55:6-8, 55:18-22, 55:24-56:2, 63:16-18, 65:13-15, 81:9-20.

4. Volunteers from nonprofits have personally observed agents transporting or escorting noncitizens, including children, to Whiskey Eight and telling noncitizens who are already at Whiskey Eight to wait there. Jasso Decl. ¶ 9; Rios Decl. ¶¶ 12, 14; Declaration of Lilian Serrano ("Serrano Decl.") ¶¶ 7, 10 [Doc. # 1478-3]; Evid. Tr. at 20:25-21:10, 41:7-10, 41:19-21.

5. Migrants regularly report that they were instructed by Border Patrol agents to go to, or remain at, Whiskey Eight.[4] Jasso Decl. ¶¶ 10-15; Jasso Decl., Ex. A ("G.L. Statement").

**D. Noncitizens may be directed to OADs in limited circumstances.**

1. Border Patrol agents can transport, escort, and/or direct noncitizen minors to Whiskey Eight to await further transport to a Border Patrol facility. *See* Order re OADS at 11-12; Evid. Tr. at 55:6-56:6.

2. Border Patrol agents can direct minors to remain at Whiskey Eight so they may be processed, so long as they are processed in a reasonably expeditious manner and

---

[4] Defendants object to reports from noncitizens to Plaintiffs' witnesses as hearsay. Joint Pre-Hearing Ex. Stip. at 2-16 [Doc. # 1506]; Evid. Tr. at 22:23-23:1. The statements made by noncitizens to volunteers at Whiskey Eight and the volunteers' subsequent statements in their declarations regarding what the noncitizens told them are double hearsay. The Court nonetheless **OVERRULES** the objections because the first layer of hearsay as to what border agents told noncitizens is an admission by a party opponent under Federal Rule of Evidence 801(d)(2)(D) and the second layer of hearsay is admissible pursuant to the residual exception found in Federal Rule of Evidence 807.

Considering the totality of the circumstances, the volunteers' hearsay statements are supported by sufficient guarantees of trustworthiness because: (1) there is no reason for the noncitizen declarants to misrepresent to the volunteers *how* they arrived at Whiskey Eight, (2) the noncitizens' statements about being transported, escorted, or directed to Whiskey Eight are consistent between statements and with the personal observations of Plaintiffs' witnesses, and (3) some of the noncitizens' statements were offered in the form of signed and dated declarations affirming the truth of the statements contained therein. The noncitizens' statements to the volunteers also are more probative than other evidence that Plaintiffs can obtain through reasonable efforts because the volunteers do not have access to the area between the two border walls. As Defendants acknowledge, the area surrounding Whiskey Eight is "complex," oftentimes dangerous, and difficult to get to due to the mountainous terrain. *See* Evid. Tr. 98:11-24. Accordingly, it would be virtually, if not entirely, impossible for Plaintiffs' witnesses to go out in the field to personally observe what Border Patrol agents are telling noncitizens.

The hearsay statements made by the noncitizens and volunteer declarants are the best evidence of a material fact (whether Border Patrol is directing noncitizens to Whiskey Eight) available to Plaintiffs under these circumstances. *See U.S. v. Bonds*, 608 F.3d 495, 501 (9th Cir. 2010) (stating that the subsequent deportation of a witness constituted an "exceptional" circumstance in which hearsay statements should be admitted under the residual exception); *U.S. v. Valdez-Soto*, 31 F.3d 1467, 1471 (9th Cir. 1994) (explaining that Rule 807 exists to provide judges a "fair degree of latitude" and "flexibility" to admit hearsay).

provided with the requisite amenities (e.g., drinking water).  See Order re OADS at 11; infra. Part III.C ("Conditions at Whiskey Eight").

3. Border Patrol can, and does, transport children to Whiskey Eight for the purposes of conducting field interviews or obtaining access to medical care.  Evid. Tr. at 63:16-19, 81:18-82:2.

**E.  The June 5 Guidance lacks important requirements.**

1. The June 5 Guidance does not include the requirement that minors be processed expeditiously, nor does it require Border Patrol agents to treat children detained in OADS with "special concern for their particular vulnerability as minors." See June 5 Guidance; FSA ¶ 11.

2. The June 5 Guidance does not require CBP to inquire about or respond to any emergent medical needs of minors at OADS.  See June 5 Guidance; Evid. Tr. at 49:3-5.

3. The focus of the June 5 Guidance is how agents can avoid triggering custodial obligations at the OADS.  See June 5 Guidance ("Agents are reminded that they should not take steps to organize, prioritize, or triage noncitizens who are at an outdoor congregation area. . . .").

4. The June 5 Guidance does not instruct Border Patrol agents how to fulfill the government's custodial obligations in the event that they are triggered (e.g., by transporting, escorting, or directing minors to OADS).

5. The June 5 Guidance provides only vague instructions that "sectors shall be required to meet additional care obligations" if custodial obligations are triggered.  See June 5 Guidance.

6. Volunteers personally observed Border Patrol vehicles park near Whiskey Eight, pass by Whiskey Eight multiple times daily, and surveil Whiskey Eight from a distance, but not approach Whiskey Eight to offer resources or to begin processing noncitizens.  Rios Decl. ¶¶ 7, 16; Jasso Decl. ¶¶ 8, 16.

//

**F.     The conditions at Whiskey Eight have improved since the Court's April 3, 2024 Order, but they remain unsafe for minors.**

1. CBP set up porta potties and a water tank at Whiskey Eight. Rios Decl. ¶ 8; Evid. Tr. at 96:15-16.

2. The porta potties are usually serviced by a private company three times a week. Rios Decl. ¶ 8.

3. The water tank fell over in early August 2024 and remained unusable for the remainder of the month. Workers came to repair the water tank on September 27, 2024, but instead drained the water out of it, potentially due to safety concerns. It is unclear whether the water tank has ever been repaired and refilled. Jasso Decl. ¶ 14.

4. Weather at Whiskey Eight can oscillate from very cold at night to very hot during the day. Serrano Decl. ¶ 8; Rios Decl. ¶ 11; Jasso Decl. ¶¶ 14-15.

5. There is little to no shade from the sun when the weather is hot, and Border Patrol is not instructed to provide blankets or extra clothing when it is cold. Serrano Decl. ¶ 8; Rios Decl. ¶ 10-11; Jasso Decl. ¶¶ 14, 16.

6. The only food available to minors waiting at OADS is supplied by humanitarian volunteers. Jasso Decl. ¶¶ 11, 12, 14, 17; Evid. Tr. at 73:9-12.

**G.     Time in Custody Reporting**

1. The June 5 Guidance provides that "time in custody" ("TIC") begins when a minor is "apprehended and transported to a CBP facility." This time is also referred to as the "time of apprehension." The "time of apprehension" is the time as recorded during mobile intake (a process that occurs after arrest or apprehension), or, when mobile intake is not accessible in the field, the apprehension time is entered at the station. *See* June 5 Guidance; September 2024 CBP JC Interim Report at 5 [Doc. # 1466-1].

2. Thus, pursuant to the June 5 Guidance, a minor's TIC may not begin being tracked until some time after their arrival to an OADS, even if they were transported there by a Border Patrol agent.

3. In contrast, the Court's April 3, 2024 Order provides that a minor's TIC includes "the amount of time any Class Member spends in the open-air sites." Order re OADS at 12.

4. CBP internally records the length of time individuals remain in the field prior to transport to a CBP facility (i.e., the length of time between CBP's first encounter with a minor and until a minor's "time of apprehension"), but the CBP Juvenile Coordinator has not included this time in his interim reports. McGurk Decl. ¶ 2; Evid. Tr. at 74:13-75:2; September CBP JC Interim Report at 5, 22.

**H. Relief Requested**

1. Plaintiffs request that Court order CBP to issue new guidance explaining how Border Patrol agents can abide by the April 3, 2024 Order and the FSA if the agents do transport, escort, or otherwise direct a noncitizen minor to wait at Whiskey Eight.

2. Plaintiffs also request that the Court order Defendants to: (1) record the information of any minor who waits for more than two hours at an OADS and provide an explanation for the delay, and (b) file monthly reports under seal, for a period of six months, providing the information collected pursuant to section (a).

3. Plaintiffs lastly request that the CBP Juvenile Coordinator file an additional interim report regarding CBP's compliance with the Court's orders and the FSA with respect to the OADS.

## II.
## CONCLUSIONS OF LAW

**A. Custody**

1. Regardless of whether the Border Patrol agent personally considers the minor to be "detained," minors are detained in the legal custody of DHS and are class members under paragraph 10 of the *Flores* Settlement Agreement if:

   a. They have been transported, escorted, or directed by a Border Patrol agent to an OADS;

  b. They have been instructed by a Border Patrol agent to remain at an OADS; or

  c. Border Patrol agents are aware, or reasonably should be aware, that they are minors and are waiting at an OADS for further processing and/or transport.

*See* April 3, 2024 Order at 9 (explaining that the FSA applies even if Defendants hold minors in their legal custody "by mere coincidence" (citing *Flores v. Barr*, No. CV-85-4544-DMG (AGRx), 2020 WL 5491445 at * 3 (C.D. Cal. Sept. 4, 2020)).

**B.** **Compliance with the Court's April 3, 2024 Order**

  1. <u>Guidance</u>:  CBP's June 5 Guidance fails to effectively implement the Court's April 3, 2024 Order because it does not address what is required once Border Patrol agents do transport, escort, or otherwise direct a minor to an OADS.

  2. <u>Conditions</u>:  To the extent noncitizens still congregate at Whiskey Eight, the conditions at Whiskey Eight, despite some improvements, remain unsafe for minors.

  3. <u>Time in Custody</u>:  CBP's system for tracking time in custody does not comply with the Court's April 3 order because it does not track the time children are detained in OADS prior to formal apprehension.  In further violation of the Court's order, CBP's June 5, 2024, memorandum provides that time in custody begins when a noncitizen is apprehended and transported to a CBP facility.  *Compare* June 5 Guidance at 2 *with* Order re OADS at 12.

  4. <u>Reporting</u>:  The CBP JC's reports on the numbers and conditions at the OADS similarly report minors' time in custody only from the time of formal apprehension, thereby violating the Court's April 3, 2024 Order.

## III.
## REMEDIES

**A.** **Expeditious Processing of Minors and Reporting**

  1. As required by Paragraph 12.A of the Settlement, DHS shall expeditiously process all Class Members in their custody.  DHS shall place Class Members in facilities

that are safe and sanitary and that are consistent with DHS's concern for the particular vulnerability of minors.

2. CBP shall cease directing minors to OADS or holding minors in OADS, except for the amount of time DHS reasonably requires to prepare the minor and/or actively arrange for transport of the minor to a more suitable facility, as this behavior constitutes unnecessary delay.

3. As required by Paragraph 28.A of the FSA, the CBP Juvenile Coordinator shall (a) maintain records and statistical information on minors held in CBP custody for more than 72 hours, *inclusive of* the amount of time any Class Member spends in the open-air sites; and (b) monitor compliance with the Agreement with respect to any minors held in open-air sites.

**B.     Guidance**

1. The June 5 Guidance, alone, is insufficient to ensure compliance with the FSA and the Court's Order.

2. To comply with the Court's April 3, 2024 Order, CBP must issue new guidance consistent with this Order.

3. CBP's new guidance must instruct its agents that if a noncitizen minor is directed to wait in an OADS, the minor must be expeditiously processed and cannot be held outdoors for longer than the time reasonably required to prepare the minor for transport and/or actively arrange transport to a more suitable facility.

4. The guidance must require agents to ask about a minor's immediate medical and safety needs as soon as the agent encounters them, or if it is not safe to do so at that time, as soon as is reasonably practicable under the circumstances.

5. The guidance shall instruct Border Patrol agents to provide children with drinking water and snacks if the children are going to be waiting at an OADS for more than two hours.

//

C. **Conditions at Whiskey Eight**

1. To the extent Whiskey Eight remains an area where noncitizen minors congregate, CBP shall have the water tank at Whiskey Eight repaired, and it shall be serviced at least twice a week.

2. The porta potties shall continue to be serviced at least two to three times per week.

3. CBP shall provide a shaded canopy area at Whiskey Eight, similar to the shade structure pictured on page 7 of the September 2024 CBP JC Interim Report, titled "Photograph 2. Shade structure for USBP vehicle."

4. Border Patrol agents shall carry mylar blankets in their vehicles and provide them to minors upon request.

5. Border Patrol agents shall carry drinking water and snacks in their vehicles and provide them to minors waiting at Whiskey Eight, with priority given to minors who have been waiting for more than two hours.

6. CBP shall put up signage (in both English and Spanish) indicating that: (a) the shaded area is prioritized for minors; (b) minors may request drinking water, snacks, and mylar blankets from Border Patrol agents; and (c) if minors are experiencing an immediate medical or safety need, they should notify a Border Patrol agent.

## IV.
## CONCLUSION

In light of the foregoing, the Court concludes that, as of the date of the evidentiary hearing, Defendants were not yet in compliance with the Court's April 3, 2024 Order. The Court hereby **ORDERS** as follows:

1. Due to the passage of time since the November 15, 2024 evidentiary hearing, the parties shall meet and confer and file a Joint Status Report by **October 9, 2025**, regarding what remedy, if any, remains necessary to address the OADS at Whiskey Eight; and

2. If the parties cannot agree on a remedy, the CBP Juvenile Coordinator shall file an interim report **by November 3, 2025** to provide the Court with an update regarding the number of minors detained at Whiskey Eight, if any, and the status of compliance with this Order.  Plaintiffs may respond to the interim report **by November 10, 2025.** After receipt of the November 3, 2025 interim report and Plaintiffs' response thereto, the Court will determine whether any further remedy regarding Whiskey Eight is necessary.

**IT IS SO ORDERED.**

DATED: September 25, 2025

DOLLY M. GEE
CHIEF U.S. DISTRICT JUDGE