# EXHIBIT 2

CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Carlos R. Holguín (Cal. Bar No. 90754)
Bardis Vakili (Cal. Bar No. 247783)
Sarah E. Kahn (Cal. Bar No. 341901)
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Email:    crholguin@centerforhumanrights.org
          bardis@centerforhumanrights.org
          sarah@centerforhumanrights.org

*Attorneys for Plaintiffs*

*Additional counsel listed on following page*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*,<br><br>        Plaintiffs,<br><br>        v.<br><br>PAM BONDI, Attorney General of<br>the United States, *et al.*,<br><br>        Defendants. | No. CV 85-4544-DMG-AGRx<br><br>**DECLARATION OF LUCÍA Y. GONZÁLEZ IN SUPPORT OF PLAINTIFFS' RESPONSE TO MARCH 13, 2026 ICE JUVENILE STATUS REPORT AND DATA**<br><br>Honorable Dolly M. Gee<br>Chief United States District Judge |

i

NATIONAL CENTER FOR YOUTH LAW
Mishan Wroe (Cal. Bar No. 299296)
Diane de Gramont (Cal. Bar No. 324360)
428 13th Street, Floor 5
Oakland, CA 94612
Telephone: (510) 835-8098
Email: mwroe@youthlaw.org

NATIONAL CENTER FOR YOUTH LAW
Rebecca Wolozin (admitted pro hac vice)
818 Connecticut Ave. NW, Suite 425
Washington, DC 20006
Telephone: (202) 868-4792
Email: bwolozin@youthlaw.org

CHILDREN'S RIGHTS
Leecia Welch (Cal. Bar No. 208741)
2021 Fillmore Street
San Francisco, CA 94115
Telephone: (415) 602-5202
Email: lwelch@childrensrights.org

CHILDREN'S RIGHTS
Eleanor Roberts (admitted pro hac vice)
88 Pine Street, Suite 800
New York, NY 10005
Telephone: (212) 683-2210
Email: eroberts@childrensrights.org

## DECLARATION OF LUCÍA Y. GONZÁLEZ

I, Lucía Y. González, declare as follows:

1.      I am a Paralegal at Children's Rights.  I support Plaintiffs' counsel in the above-titled action.  I graduated in 2024 from the University of Pennsylvania with a minor in Survey Research and Data Analytics.  If called to testify in this case, I would testify competently about these facts.

2.      Pursuant to this Court's December 15, 2025 order (Dkt. 1714), Defendants ICE and CBP were required to provide Plaintiffs' counsel with statistical reports for all class members in custody for 20 days or longer during December 2025 and January 2026.

3.      Defendants publicly filed ICE Family Residential Center 20-Day Reports for December 2025 and January 2026, with personally identifying information redacted. ICE Family Residential Center 20-Day Report – December 2025 ("Dec. 20-Day Census Chart"), Dkt. 1736-2; ICE Family Residential Center 20-Day Report – January 2026 ("Jan. 20-Day Census Chart"), Dkt. 1736-3 (collectively "20-Day Census Charts"). These redacted data only show Facility Lengths of Stay ("FLOS") from the date of arrival at a federal immigration facility ("book-in" date). My calculations, explained below, show LOS ("Length of Stay") from the date of apprehension, which is a far more accurate measure of how long children have been in federal immigration custody.

4.      I relied on the unredacted versions of these data filed under seal in order to determine the unique number of children with LOS over 20 days in December 2025 and January 2026. The only way to ensure that children are counted only once is to use their A Numbers as a unique identifier. Their A numbers do not appear on the publicly filed documents. Unredacted ICE Family Residential Center 20-Day Report – December 2025, Dkt. 1738-3 ("Unredacted Dec. 20-Day Census Chart"); Unredacted ICE Family Residential Center 20-Day Report – January 2026 ("Unredacted Jan. 20-Day Census Chart"), Dkt. 1738-4 (collectively "Unredacted 20-Day Census Charts").

1

Data Methods

5.      The figures herein and reflected in Plaintiffs' Response to the March 13, 2026 ICE JC Status Report ("Pls.' Response") represent counts of unique children (*i.e.,* children who appeared in both the December and January data sets were only counted once).

6.      Defendants' 20-Day Census Charts contained a total of 600 unique children who were in ICE custody for at least 20 days, but five children were in custody for exactly 20 days, so I excluded them from the calculations of the total number of children detained over 20 days – that leaves 595 children.

7.      I used the LOS stated in the release narrative within the "Reason for Length of Stay" column whenever possible (this method was used for 542 children) to calculate length of stay.

8.      Defendants' 20-Day Census Charts specifically state that LOS is determined by calculating the number of days between apprehension and either book-out date or the last day of the month for those who remained in custody Dec. 20-Day Census Chart, Dkt. No. 1736-2 at 1; Jan. 20-Day Census Chart, Dkt. No. 1736-3 at 1. However, Defendants do not provide this figure to Plaintiffs or the public, and instead *only* provide facility length of stay ("FLOS"), which uses the book-in date instead of the apprehension date as the start of children's time in custody. (Once again, Defendants did not provide LOS figures, even though Plaintiffs have raised discrepancies between the FLOS and the LOS in the past. *See* Pls.' Resp. to Dec. Suppl. ICE JC Report, Dkt. 1706, at 7 n.1.)

9.      Using the book-in date undercounts children's actual time in custody. Therefore, the FLOS figures provided to Plaintiffs and the Court may not include time spent, for example, in a holding room, a hotel, in transit, or possibly in a CBP facility, before arriving at the South Texas Family Detention Center ("Dilley").[1] *See, e.g.*, Jan. 20-Day Census Chart, Dkt. 1736-3, at 4 (12th row with 10/10/2025 apprehension date but

---

[1] It is unclear whether the data include time spent in CBP custody or exclusively ICE facilities, as Defendants' 20-Day Census Charts do not define "facility."

11/3/2025 book-in date). To provide the Court with more accurate numbers, I calculated the LOS for each child present in the 20-Day Census Chart from their apprehension date.

10.     For children whose narrative stated that they remained in custody and who had no book-out date (47 children), I calculated LOS between their apprehension date and January 31, 2026. Accordingly, the full LOS may be much longer for children who remained in custody past January 31, 2026. Two of these 47 children had LOSs far longer than the amount of time Dilley has been open, which suggests their apprehension dates may be from previous custody episodes. I used their book-in dates instead to determine LOS. *See* Jan. 20-Day Census Chart, Dkt. 1736-3, at 1 (10th row with 9/17/2023 apprehension date and no LOS specified in narrative), 2 (8th row with 12/4/2024 date and no LOS in narrative).

11.     The entire first page of the January 20-Day Census Chart contains only children who were apprehended in 2022 – 2024. *See, e.g.*, Jan. 20-Day Census Chart, Dkt. 1736-3, at 1. If the LOS for these children were not provided in their narratives, as is the case for the two children mentioned above, Plaintiffs and the Court would not be able to calculate the accurate LOS. It is also possible that some of the LOSs calculated using apprehension dates are overstated if out-of-date apprehension dates exist in the data. If Defendants are apprehending children multiple times, apprehension dates should be updated to reflect the most recent apprehension.

12.     Two children had book-out dates although their narratives stated that they remained in custody.  *See* Jan. 20-Day Census Chart, Dkt. 1736-3, at 22 (5th row), 25 (10th row). For these children, LOS was determined by calculating the number of days between their apprehension and book-out dates, rather than January 31, 2026.

13.     Four children were removed or transferred according to their narrative, but their LOS was not stated. *See, e.g.*, Dec. 20-Day Census Chart, Dkt. 1736-2, at 17 (11th row). For these children, LOS was determined by calculating the days between their apprehension and book-out dates.

14.    Narratives were also reviewed to identify children released through habeas petitions. The 20-Day Census Charts mention habeas petitions for nine children. For six of these children, narratives clearly indicate that habeas was "granted," "ordered," or otherwise resulted in the children's release. *See, e.g.*, Jan. 20-Day Census Chart, Dkt. 1736-3, at 22 (11th row). One of these children was included in both 20-Day Census Charts, and their December narrative mentioned their release through habeas but their January narrative did not. *Compare* Dec. 20-Day Census Chart, Dkt. 1736-2, at 22 (4th row) *with* Jan. 20-Day Census Chart, Dkt. 1736-3, at 18 (14th row). This child was still included in the total of 6 children released through habeas.  For the three other children, narratives mention that habeas petitions were filed and that they were released, but it is unclear whether habeas resulted in their release. *See, e.g.*, Jan. 20-Day Census Chart, Dkt. 1736-3, at 15 (5th row).

Results

15.    My analysis was principally designed to calculate the LOS of each child provided for in the 20-day Census Reports because ICE did not provide that data. I also checked for discrepancies in some of the data.

16.    A total of 595 unique children were in custody for more than 20 days during December 2025 and January 2026 according to the LOS. According to my analysis, 265 of these children were in custody for more than 50 days and 55 children were in custody for more than 100 days.

17.    Habeas petitions led to the release of at least 6 children according to my analysis.

18.    The total number of days in custody is 30,115 according to the FLOS, but 33,037 according to LOS. So, 2,922 days are unaccounted for when relying on the FLOS.

19.    Using FLOS, it would appear that only 590 children were in custody for over 20 days, 200 children over 50 days, and 44 over 100 days. Using LOS, 595 children were in custody for over 20 days, 265 for over 50 days, and 55 for over 100 days. In other

4

words, relying on Defendants' FLOS, five children who were in custody over 20 days, 65 children over 50 days, and 11 children over 100 days would not have been counted in my totals.

20.    The analysis required to calculate LOS was only possible using unredacted data. Without individual A numbers, it is impossible to de-duplicate the data, thus preventing the public from accessing accurate information about how many unique children are being held in custody for more than 20 days and how long children are actually held in federal immigration custody, including time between apprehension and book-in dates.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 20th day of March, 2026 at New York, New York.

Lucía Y. González

5