# EXHIBIT 15

## DECLARATION OF JAVIER O. HIDALGO

I, Javier O. Hidalgo, swearing under penalty of perjury, make the following declaration:

1. My name is Javier O. Hidalgo, and I serve in the role of Legal Director at the Refugee and Immigrant Center for Education and Legal Services ("RAICES").  I have been the Legal Director since 2023. I have been licensed in the State of Texas since January 24, 2019, and in the State of New York since February 27, 2013.

2. I joined RAICES in 2018 and have served in my current role since 2023. Before I assumed my current position I worked as a unit director, supervisor, and previously, as a staff attorney. In my role as Legal Director, I work closely with Asylum Access Services (formerly known as the Family Detention Services Program) and oversee that program's work, which (among other things) serves detained individuals and families facing expedited removal from the United States, as well as people seeking asylum and related protection, including families detained in the Dilley Immigration Processing Center ("Dilley").

3. RAICES is a 501(c)(3) nonprofit, non-partisan organization headquartered in San Antonio, Texas.  It was founded in 1986 and has offices in San Antonio, Austin, Corpus Christi, Dallas, and Houston.  RAICES's mission is to defend the rights of immigrants and refugees; empower individuals, families, and communities of immigrants and refugees (including those who arrive at the border); and advocate for liberty and justice. RAICES provides free and low-cost immigration legal services to underserved immigrant children, families, and individuals, and is the largest immigration legal services provider in Texas.  RAICES provides assistance in numerous areas, including, but not limited to,

asylum applications, removal defense, DACA renewals, and status changes. RAICES provides this full range of immigration-related services to individuals in detention, or who are continuing to fight their cases following release.

4. The Asylum Access Services team provides *pro bono* legal services to minors who are *Flores* class members and their families detained at Dilley. Since Defendants resumed detaining families at Dilley in April 2025, RAICES has served more than 300 families in ICE custody.

5. Through my work at RAICES, including my current role as Legal Director overseeing Asylum Access Services, I have gained extensive familiarity with the terms and requirements of the *Flores* Settlement Agreement ("FSA"), as well as subsequent agreements and/or judicial orders related to it. I am also familiar with United States Immigration and Customs Enforcement's ("ICE") Family Residential Standards ("FRS").

6. This familiarity arises from my years of providing legal services to *Flores* class members and overseeing related programming, including for detained minors and families held at Dilley and Karnes.

7. The FSA is a 1997 agreement setting national standards for the detention, treatment, and release of immigrant children in United States custody. The FRS is a set of guidelines designed to ensure humane environments for families in detention. I have previously submitted declarations in this matter detailing my team's experience with ICE's non-compliance with protections for minors, and I am familiar with prior judicial orders instructing ICE with regard to its compliance.

8. I have read the ICE Juvenile Coordinator's supplemental report filed March 13, 2026 [Doc. # 1736-14] and the attachments to the Juvenile Coordinator's report.

9. The facts set forth below are known personally to me and, if called as a witness, I could and would testify competently thereto under oath.

10. While some many aspects of Defendants' lack of compliance with the FSA remain consistent with what undersigned has reported in prior declarations submitted to this Court, RAICES has observed a worsening in other aspects of how Defendants have mistreated class members in the past several months.

**Harsher treatment of families.**

11. On January 24, 2026, a number of families detained in Dilley were recorded staging a demonstration, reportedly to protest their prolonged detention.[1] This was also shortly after the detention of Liam Ramos and his father. Following the news coverage, there was also an increase in congressional oversight visits in which families also sought to speak with members of Congress.

12. Between January and February 2026, families detained in Dilley consistently reported increasingly harsh treatment by ICE and CoreCivic staff . This increase was most apparent after the January 24, 2026, demonstration and subsequent attempts to speak with members of Congress.

13. RAICES service recipients reported harsher treatment, including increased restrictions on their movement and retaliatory statements and actions from staff. For example, families reported that in the days that followed the January 24, 2026, protest, families were restricted to their rooms while a congressional oversight visit was conducted and guards threw coloring sheets and crayons on the floors of each room to keep the minor children occupied.

---

[1] https://www.texastribune.org/2026/01/24/immigration-facility-protest-texas-liam-conejo-ramos/

14. Families also report their documents and belongings are frequently searched, potentially for anything signaling more organizing or protests, and that even children' s drawings have been confiscated during these searches.

**Exceedingly long periods of detention.**

15. From December 2025 through February 2026, many class members and their families experienced extremely long periods of detention, including over 100 days. For many families, ICE indicated families would be detained indefinitely. In my prior declaration, I highlighted examples of ICE indicating to families that they would be detained indefinitely during their ongoing immigration proceedings, [Doc. # 1706-2]. The pattern of prolonged and indefinite detention extended through February 2026, and only recently have we seen a shift to generally shorter periods of detention.

16. For example, as of February 23, 2026, there were approximately five families detained over 100 days and approximately 14 families detained over 70 days. Recently, we have seen ICE release some families within 20 days. However, a number of families detained well past 20 days remain in Dilley. As of March 19, 2026, one of the families RAICES serves has been detained 130 days.

**Ongoing medical concerns.**

17. Detained families continue to report lack of adequate medical care for class members. Indeed, in the period spanning December 2025 through February 2026, RAICES' records indicate at least 375 additional concerns over inadequate medical care.

18. In addition, class members face potential exposure to serious infectious diseases such as measles[2] and tuberculosis. A parent served by RAICES was diagnosed with tuberculosis

---

[2] https://www.texastribune.org/2026/02/02/measles-dilley-immigrant-detention-facility-liam-ramos-texas/

4

and kept in medical isolation for months; the family has been detained in Dilley for over 100 days.

19. Recent reporting shared various 911 recordings made by Dilley personnel when minor class members faced dire medical emergencies.[3] This is consistent with RAICES' observations and what families have reported. It is important to clarify that such calls often occur well past the time a reasonably prudent person would contact 911 for a medical emergency.

20. In one example of a family RAICES supported, a toddler who appeared to be at the brink of death before finally being rushed to the hospital. Shockingly, ICE returned this toddler to Dilley in the midst of what ICE described as a measles outbreak.[4]

**Ongoing mental health concerns.**

21. RAICES has long observed and identified the very clear harm detention in ICE custody inflicts upon minor class members, causing young children to withdraw and wither emotionally and physically day after day. RAICES staff including the undersigned can testify to seeing multiple children regress to behaviors typical of children several years younger than their actual age. Teenagers have been observed to grow dispondent, sometimes resentful of their parents, desperate, and even suicidal. RAICES' observations and the reports from detained families are consistent with the experiences of a teenage class member who suffered a mental health crisis while in Dilley.[5]

---

[3] https://www.scrippsnews.com/investigations/ice-inc/911-calls-offer-glimpse-of-medical-emergencies-at- family-ice-detention-center

[4] https://www.nbcnews.com/news/us-news/toddler-hospitalized-dilley-ice-detention-rcna257912

[5] https://apnews.com/article/children-immigration-detention-dilley-trump-administration-ice-8ab12c9357ff3b8d400cfa2b2dbe85ed

5

**Lack of Legal Orientation Program and Legal Rights Group Presentations.**

22. Class members and their family members detained in Dilley continue to be deprived of information about their legal process and rights. Families do not have access to a Legal Orientation Program, and do not receive a Legal Rights Group Presentation provided for in section 6.4 of the FRS.

23. As set forth in previous declarations, RAICES requested the requisite permission to provide detained class members and their families with Legal Rights Group Presentations. After Defendants denied the request without explanation, RAICES submitted a FOIA request to seek clarification on DHS' reason for the denial and what they would approve. The FOIA request remains pending without a response.

24. Accordingly, Class members and their families are not provided with information about their rights under the FSA. Nor are they appraised of their basic rights. Instead, families commonly report receiving incorrect legal advice from non-attorney ICE and CoreCivic staff at Dilley. The incorrect advice from ICE and CoreCivic often seem to be intended to deter families from further pursuing their case for protection from harm in their home country.

25. For example, ICE told a family from Colombia who received a negative credible fear finding that they would be able to "withdraw" their case and ask an immigration judge for voluntary departure during the Credible Fear Review hearing, which the family attempted to do in lieu of accepting RAICES' offer to represent them at that hearing. The hearing resulted in the immigration judge affirming the credible fear finding and ICE refusing to release the family due to that result. At this time the family is no longer

6

detained and RAICES has not been able to confirm whether they were released to their sponsor or removed pursuant to the expedited removal order.

**Inadequate Food and Water.**

26. Families continue to report concerns about the quality and appropriateness of the food and water provided to the minor class members. There does not appear to be any improvement.

27. In sum, Defendants needlessly subject class members to many of the same harmful conditions in Dilley that have been reported since last April.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: March 20, 2026

San Antonio, Texas

Javier O. Hidalgo

7