BRETT A. SHUMATE
Assistant Attorney General
Civil Division
WILLIAM C. SILVIS
Assistant Director
MICHAEL A. CELONE
Senior Litigation Counsel
JESSICA R. LESNAU
JOSHUA C. MCCROSKEY
Trial Attorneys
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-305-1540
Joshua.C.McCroskey@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY LISETTE FLORES, *et al.*, | Case No. CV 85-4544-DMG (AGRx) |
| Plaintiffs, | **DEFENDANTS' NOTICE OF MOTION TO PARTIALLY RECONSIDER ORDER OF APRIL 3, 2026; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| TODD BLANCHE, Acting Attorney General of the United States, *et al.*, | |
| Defendants. | Hearing Date:  May 22, 2026 |
| | Time: 9:30 AM |
| | Place: Courtroom 8C, First Street Courthouse |
| | Honorable Dolly M. Gee |
| | Chief United States District Judge |

## NOTICE OF MOTION

NOTICE IS HEREBY GIVEN that Defendants U.S. Department of Homeland Security and U.S. Immigration and Customs Enforcement, by and through undersigned counsel, will bring this motion for hearing on May 22, 2026, at 9:30 a.m. or as soon thereafter as counsel may be heard, before Chief United States District Judge Dolly M. Gee, in Courtroom 8C, 8th Floor, at the Los Angeles – 1st Street courthouse located within the Central District of California.

## COMPLIANCE WITH LOCAL RULE 7-3

This motion is made following a telephonic meeting of counsel pursuant to L.R. 7-3, which took place on April 13, 2026. Plaintiffs oppose this motion.

## MOTION TO PARTIALLY RECONSIDER ORDER OF APRIL 3, 2026

Defendants respectfully move the Court to reconsider and remove the following sentences from its April 3, 2026 Order regarding the March 30, 2026 status conference: "As previously ordered, Defendants shall cease placing minors at hotels, with a narrow exception for brief, one to two-night stays while in transit or prior to flights. [*See* Doc. # 976.] Continued non-compliance will result in the re-appointment of a Special Master/Independent Monitor." Doc. # 1755, at 4. The Order cited, Doc. # 976, is the Court's September 4, 2020 In Chambers—Order Re Plaintiffs' Motion to Enforce Settlement as to "Title 42" Class Members. The September 4, 2020 Order did not impose restrictions on hotel stays outside the Title 42 context, and the reasons for the September 4, 2020 Order's restrictions do not warrant extending those restrictions to current hotel stays. Because the September 4,

2020 Order does not apply to current hotel stays, Defendants were in compliance with that Order.

This motion is based upon the above Notice, the accompanying Memorandum of Points and Authorities, the attached Exhibits, all pleadings and papers on file in this action, and such other matters as may be presented to this court at the time of the hearing on the motion.

DATED: April 17, 2026                    Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

WILLIAM C. SILVIS
Assistant Director

MICHAEL A. CELONE
Senior Litigation Counsel

*/s/ Joshua C. McCroskey*
JOSHUA C. MCCROSKEY
JESSICA R. LESNAU
Trial Attorneys
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-305-1540
Joshua.C.McCroskey@usdoj.gov

*Attorneys for Defendants*

# TABLE OF CONTENTS

BACKGROUND ...................................................................................................2

    A.    Relevant Provisions of the *Flores* Settlement Agreement ....................2

    B.    Title 42 Hotel Use and Litigation...........................................................3

    C.    ICE's Current Use of Hotels....................................................................6

    D.    Ongoing Court Oversight of ICE and April 3, 2026 Order....................8

LEGAL STANDARDS .......................................................................................9

ARGUMENT .....................................................................................................10

I.    The Court should reconsider its extension of hotel restrictions in the September 4, 2020 Order to current hotel uses because the considerations that led to the Title 42 restrictions do not apply to non-Title 42 hotel stays. ...............................................................................10

    A.    The hotel restrictions in the September 4, 2020 Order should be read as limited to implementation of the CDC's public health order under Title 42.......................................................................10

    B.    The Court's reasoning in the Title 42 Orders does not apply to current hotel use. .....................................................................12

II.    The Court should have provided notice and an opportunity to respond before extending the hotel restrictions in its Title 42 Orders to the current situation. ..............................................................................16

CONCLUSION..................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Armstrong v. Brown*,
768 F.3d 975 (9th Cir. 2014) ................................................................................16

*City of L.A., Harbor Div. v. Santa Monica Baykeeper*,
254 F.3d 882 (9th Cir. 2001) ..................................................................................9

*City of Vicksburg v. Henson*,
231 U.S. 259 (1913) ...............................................................................................10

*Edmo v. Corizon, Inc.*,
935 F.3d 757 (9th Cir. 2019) .................................................................................10

*Epic Games, Inc. v. Apple Inc.*,
161 F.4th 1162 (9th Cir. 2025) ..............................................................................10

*Flores v. Garland*,
3 F.4th 1145 (9th Cir. 2021) ....................................................................................6

*Nat. Res. Def. Council, Inc. v. Winter*,
508 F.3d 885 (9th Cir. 2007) .................................................................................11

*Salazar v. Buono*,
559 U.S. 700 (2010) ...............................................................................................10

**Regulations**

Amendment and Extension of Order Suspending Introduction of Certain
Persons from Countries Where a Communicable Disease Exists,
85 Fed. Reg. 31,503 (May 26, 2020). ......................................................................3

**Rules**

Fed. R. Civ. P. 54(b) ....................................................................................................9

**Other Authorities**

Temporary Housing Standards for Children, Families, and Single Adults,
*ICE* (July 2023), https://www.ice.gov/doclib/detention-standards/ths.pdf
[https://perma.cc/GQ8F-56A6] ................................................................ 7, 14–15

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants U.S. Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE") respectfully move the Court to reconsider and remove the following sentences from its April 3, 2026 Order regarding the March 30, 2026 status conference: "As previously ordered, Defendants shall cease placing minors at hotels, with a narrow exception for brief, one to two-night stays while in transit or prior to flights. [*See* Doc. # 976.] Continued non-compliance will result in the re-appointment of a Special Master/Independent Monitor." Doc. # 1755, at 4. The Order cited, Doc. # 976, is the Court's September 4, 2020 In Chambers—Order Re Plaintiffs' Motion to Enforce Settlement as to "Title 42" Class Members. The Order did not impose restrictions on hotel stays outside the Title 42 context, and the reasons for the September 4, 2020 Order's restrictions as to Title 42 placements do not warrant extending those restrictions to current hotel stays. Even if the Court intended to apply the September 4, 2020 Order to all hotel stays, the Court should not do so because the current circumstances are materially different. And, because the September 4, 2020 Order does not apply to current hotel stays, the Court should not have stated that Defendants have been in noncompliance with that Order. In addition, before extending the September 4, 2020 Order to the current circumstances, the Court should have provided Defendants with notice and an opportunity to be heard on whether doing so was proper. For these reasons, Defendants respectfully seek partial reconsideration of the April 3, 2026 Order.

1

# BACKGROUND[1]

## A.   Relevant Provisions of the *Flores* Settlement Agreement

The *Flores* Settlement Agreement ("FSA") covers "[a]ll minors who are detained in the legal custody of the [Immigration and Naturalization Service ('INS')]." FSA ¶ 10. Paragraph 12.A of the FSA states that "[w]henever the INS takes a minor into custody, it shall expeditiously process the minor." *Id.* ¶ 12.A. Although Paragraph 12.A contemplates that minors will be released or transferred to a licensed placement under Paragraph 19 within three or five days, it provides that during an "influx of minors into the United States," the INS shall place minors "as expeditiously as possible." *Id.* ¶ 12.A.3. The FSA defines "influx of minors into the United States" as "those circumstances where the INS has, at any given time, more than 130 minors eligible for placement in a licensed program under Paragraph 19, including those who have been so placed or are awaiting such placement." *Id.* ¶ 12.B. Plaintiffs have not disputed that at all relevant times over the last several years the "influx" provision has been continuously in effect based on the number of minors in immigration custody.

Paragraph 12.A requires DHS to "hold minors in facilities that are safe and sanitary and that are consistent with the INS's concern for the particular vulnerability of minors." *Id.* ¶ 12.A.

---

[1]   Given this Court's familiarity with the case, Defendants provide a summary tailored to the issues related to hotel stays.

**B.      Title 42 Hotel Use and Litigation**

During the COVID-19 pandemic, the Centers for Disease Control and Prevention ("CDC") invoked its authority under Title 42 of the U.S. Code to prohibit the introduction of covered aliens into the United States because of the public health emergency. *See, e.g.*, Amendment and Extension of Order Suspending Introduction of Certain Persons from Countries Where a Communicable Disease Exists, 85 Fed. Reg. 31,503 (May 26, 2020). Unaccompanied alien children and accompanied minors in family units slated for expulsion pursuant to Title 42 were housed in hotels in three cities. *See* Decl. of Mellissa Harper ¶ 2, Doc. # 925-1. In August 2020, Plaintiffs moved to enforce the FSA as to children detained in hotels pending Title 42 expulsion. Doc. # 920-1.

On September 4, 2020, the Court granted Plaintiffs' motion to enforce. *See* In Chambers—Order Re Plaintiffs' Motion to Enforce Settlement as to "Title 42" Class Members, Doc. # 976. The Court noted the Independent Monitor's August 2020 finding that 660 minors between the ages of 10 and 17 had been held in hotels. *Id.* at 3. Of those minors, 577 were unaccompanied. *Id.* The Court described the use of hotels as "a full-scale detention operation for minors and families immediately preceding their expulsion under Title 42." *Id.* at 4. The Court also mentioned the Independent Monitor's recommendation that unaccompanied minors be excluded from the hoteling program. *Id.*

In ruling on the motion to enforce, the Court first held that minors who were detained pending expulsion under Title 42 were *Flores* class members. *Id.* at 6.

3

The Court then held that the use of hotels to effectuate expulsions under the Title 42 public health order violated the FSA. The Court ruled that hotels are not licensed programs and not part of expeditiously placing minors in licensed programs for the purposes of FSA paragraphs 12, 19. *Id.* at 12. The Court reasoned that DHS was not seeking to place minors in licensed programs "as expeditiously as possible" because DHS did not intend to ever send minors subject to Title 42 to licensed placements. *Id.* ("Hoteling has *fully replaced* licensed programs for minors in Title 42 custody for the period prior to expulsion."); *id.* at 16 ("Title 42 has largely replaced the Title 8 framework at the southwest Border."). The Court held that not sending unaccompanied alien children to licensed placements was unreasonable when Office of Refugee Resettlement ("ORR") shelters "were 97% vacant." *Id.* at 13.

The Court next held that, while Title 42 hotel placements were generally "sanitary," they were not "safe" under the circumstances. *Id.* The Court concluded that, in hotels, there was a "lack of qualified, specialized supervision, especially for younger, unaccompanied children." *Id.* at 14. The Court also held that DHS's "oversight of the hoteling program is vague and minimal." *Id.* The Court additionally reasoned that the Title 42 "hotel program is not safe with respect to preventing minors from contracting COVID-19." *Id.* at 15.

Finally, the Court held that the Title 42 hoteling was not consistent with the FSA's provisions related to access to counsel. *Id.* The Court stated that "[l]egal services providers attest that they face unusual difficulty locating children within Title 42 custody, and DHS officials often are unable to provide accurate information

4

as to where a child is at any given moment." *Id.* The Court also credited allegations that "ICE physically prevented [attorneys] from entering [a] hotel" to speak with children and that "ICE has also limited children's ability to speak to attorneys by phone." *Id.* at 16. The Court determined that "Paragraph 32 is straightforward in requiring that Plaintiffs' counsel be allowed to access the facilities and contact the minors, even if they do not yet know the identity of a specific minor." *Id.* The Court emphasized that "Defendants may not exploit Title 42 to send children in their legal custody 'off into the night.'" *Id.* at 17.

The Court ordered that minors pending Title 42 expulsion are *Flores* class members. *Id.* at 17. The Court then ordered DHS to stop placing minors at hotels:

> DHS shall cease placing minors at hotels by no later than September 15, 2020. Consistent with past practice, exceptions may be made for one to two-night stays while in transit or prior to flights, if minors are traveling longer distances, or due to unexpected flight delays. If other exigent circumstances arise that necessitate future hotel placements, Defendants shall immediately alert Plaintiffs and the Independent Monitor, providing good cause for why such unlicensed placements are necessary.

*Id.* The Court ordered DHS to transfer all minors held at hotels to licensed facilities, although the Court acknowledged that accompanied minors would likely be placed in unlicensed family residential centers. *Id.* at 17 & n.10. The Court reasoned that family residential centers "at least have well-established standards of care and oversight in common with licensed facilities." *Id.* The Court also ruled that class counsel "shall be permitted to visit any facility where minors in Title 42 custody are held, and to meet with any minor held in Title 42 custody" and that the Independent

Monitor may "conduct investigations, interviews, and site visits with respect to any minors held in Title 42 custody and any facilities where minors in Title 42 custody are held." *Id.* at 17–18.

On September 21, 2020, the Court denied Defendants' motion for a stay of its September 4, 2020 order. Doc. # 990.[2] But the Court modified the September 4, 2020 order to note that "DHS may implement *brief* hotel stays (not more than 72 hours) as necessary and in good faith to alleviate bottlenecks in the intake processes at licensed facilities." *Id.* at 5. The Court added, "When any Class Members are transferred to hotels for this purpose, Defendants shall notify Plaintiffs' counsel and the Independent Monitor, providing the identities and number of minors subject to the hotel placements, and the locations of the hotels." *Id.* The Ninth Circuit affirmed the district court's September 21, 2020 order. *Flores v. Garland*, 3 F.4th 1145, 1147 (9th Cir. 2021).

**C.    ICE's Current Use of Hotels**

There are important differences between hoteling that was used to facilitate expulsions pursuant to the CDC's public health order under Title 42 and ICE's current use of hotels. ICE currently uses hotels as part of its efforts to expeditiously move minors (1) out of ICE custody through repatriation or other release, or (2) to a family residential center or a licensed facility for unaccompanied alien children. Ex. A, Declaration of Dawnisha M. Helland ("Helland Decl.") ¶ 5. The vast majority of hotel stays for both family units and unaccompanied alien children are less than 48

---

[2]    Defendants refer to the September 4, 2020 Order and the September 21, 2020 Order collectively as the "Title 42 Orders."

6

hours. *Id.* ¶ 6. But several different operational challenges can lead to longer hotel stays, including:

> (1) delays in obtaining necessary travel documents, such as passports for U.S. citizen children from the Department of State, which can take several days if not secured by the parents prior to apprehension;

> (2) holiday and winter weather disruptions, especially during December and January, which impacted processing and travel;

> (3) flight cancellations or rescheduling;

> (4) increased attempted escapes during transfers to repatriation flights, which require additional time and security measures; and

> (5) failure of the aliens to comply with removal procedures.

*Id.* ¶ 8. In many situations, release during the brief period while these operational challenges are resolved is impossible or impracticable given the flight risks and other operational concerns. *Id.* ¶¶ 10–11. In addition, when a family includes a U.S. citizen child, transfer to ORR or ICE's family residential center is not possible because U.S. citizen children cannot be placed with ORR or into family residential centers. *Id.* ¶ 9.

ICE closely monitors the length of stay and amenities provided during hotel placements. *Id.* ¶ 13. ICE Headquarters reviews and monitors hotel stays for children and must approve any hotel stay expected to exceed 48 hours. *Id.* ICE's Temporary Housing Standards, published in July 2023, govern hotel stays. *Id.*; *see* Temporary Housing Standards for Children, Families, and Single Adults, *ICE* (July 2023), https://www.ice.gov/doclib/detention-standards/ths.pdf    [https://perma.cc/GQ8F-56A6].

### D.    Ongoing Court Oversight of ICE and April 3, 2026 Order

Since July 2025, the Court has intensified its own oversight of ICE's compliance with the FSA. The Court has required the ICE Juvenile Coordinator to file supplemental reports about numerous topics and has held multiple status conferences to discuss the supplemental reports and Plaintiffs' responses to the reports.[3] *See* Order Re July 25, 2025 Status Conference, Doc. # 1614; Order Re September 22, 2025 Status Conference, Doc. # 1672; Order Re December 15, 2025 Status Conference, Doc. # 1714; Order Re March 30, 2026 Status Conference, Doc. # 1755. The result of this procedure has been a series of asymmetrical filings: The ICE Juvenile Coordinator files the factual information requested by the Court (Docs. ## 1648-4, 1692-4, 1736-1), but Plaintiffs file allegations about any concerns they have, as well as legal arguments about how to interpret the FSA and the Court's prior orders (Docs. ## 1656, 1706, 1748). Defendants have not sought leave to respond to Plaintiffs' filings because Defendants believed that they would have an opportunity for complete legal briefing before the Court issued any substantive injunctive orders, either through briefing on a motion to enforce or in response to an order to show cause.

As part of the Court's oversight of time in custody, the Court has requested information about lengths of time that class members have spent in hotels while in ICE custody.  *See* Doc. # 1672, at 2; Doc. # 1714, at 2. But, in the April 3, 2026

---

[3]    Defendants objected to the Court's requiring the juvenile coordinators to file supplemental reports and answer questions at status conferences. Doc. # 1620. The Court overruled those objections. Doc. # 1638, at 8. At the September 22, 2025 status conference, the Court recognized that Defendants have a standing objection. *See* Tr. of Sept. 22, 2025 Status Conference at 42, 48–49, Doc. # 1668.

Order regarding the March 30, 2026 status conference, the Court went further than simply requiring more data reporting about hotel stays. Doc. # 1755. The Court mandated, "As previously ordered, Defendants shall cease placing minors at hotels, with a narrow exception for brief, one to two-night stays while in transit or prior to flights. [*See* Doc. # 976.] Continued non-compliance will result in the re-appointment of a Special Master/Independent Monitor." *Id.* at 4. Thus, without any briefing on the issue, the Court appears to have applied its September 4, 2020 Order about implementation of Title 42 hoteling, Doc. # 976, to current, distinct uses of hotels. And the Court has improperly determined that there is "non-compliance." Doc. # 1755, at 4.

Defendants ask the Court to reconsider those conclusions.

## LEGAL STANDARDS

"[A]s long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885, 889 (9th Cir. 2001) (quoting *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981)); *see* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"); *see also* Order of Nov. 5, 2018, Doc. # 518, at 1 (applying this legal standard).[4]

---

[4] The limited grounds for seeking reconsideration in Local Rule 7-18 do not apply here. Local Rule 7-18 only limits the grounds for seeking reconsideration of

9

**ARGUMENT**

**I.    The Court should reconsider its extension of hotel restrictions in the September 4, 2020 Order to current hotel uses because the considerations that led to the Title 42 restrictions do not apply to non-Title 42 hotel stays.**

The Court's September 4, 2020 Order arose from implementation of the CDC's public health order under Title 42, and its injunctions are properly read as limited to that context. Thus, the Court did not previously order restrictions on hotel use generally. In addition, the September 4, 2020 Order's restrictions on hotel stays should remain limited to the Title 42 context because prior use of hotels to facilitate expulsions under the Title 42 public health order differs in important ways from the current use of hotels.

**A.    The hotel restrictions in the September 4, 2020 Order should be read as limited to implementation of the CDC's public health order under Title 42.**

The Court's September 4, 2020 Order is best read as limited to the Title 42 context. To determine an injunction's scope, the order must be read "in context." *See Edmo v. Corizon, Inc.*, 935 F.3d 757, 800 (9th Cir. 2019) (per curiam); *see also Salazar v. Buono*, 559 U.S. 700, 730 (2010) (Scalia, J., concurring) ("The only reasonable reading of the original injunction, in context, is that it proscribed the cross's display on federal land."). And the injunction must "be construed with reference to the issues it was meant to decide." *City of Vicksburg v. Henson*, 231 U.S. 259, 269 (1913); *see Epic Games, Inc. v. Apple Inc.*, 161 F.4th 1162, 1176 (9th Cir. 2025). That rule makes sense because "[i]njunctive relief must be tailored to

an "Order on any motion or application." C.D. Cal. L.R. 7-18. The April 3, 2026 Order was not an order on a motion or application.

remedy the specific harm alleged." *Nat. Res. Def. Council, Inc. v. Winter*, 508 F.3d 885, 886 (9th Cir. 2007).

Read in context with reference to the issues it was meant to decide, the September 4, 2020 Order only limits hotel placements used to facilitate expulsions under Title 42. The Order specifically addressed "Plaintiffs' Motion to Enforce Settlement as to 'Title 42' Class Members." Doc. # 976. The Order resolved the question of whether minors detained pending expulsion under Title 42 were *Flores* class members at all. *Id.* at 6. The Court held that "Title 42 has largely replaced the Title 8 framework at the southwest Border" and that hotel use had "*fully replaced licensed programs for minors in Title 42 custody.*" *Id.* at 12, 16. The Court described the use of hotels as "a full-scale detention operation for minors and families immediately preceding their expulsion under Title 42." *Id.* at 4. The Court concluded its Order by stating "Defendants may not exploit Title 42 to send children in their legal custody 'off into the night.'" *Id.* at 17. And in the rulings at the end of the September 4, 2020 Order, the Court mentioned "Title 42" no less than eight times.

The Court's restrictions on hotel placements must therefore be understood as specifically directed at hoteling in connection with Title 42 expulsions. In September 2020, the Court had no reason to rule on the permissibility of hotel stays outside the Title 42 context, especially because in the Court's view "Title 42 [had] largely replaced the Title 8 framework." Doc. # 976, at 16. Thus, the Court should reconsider its statement that the Court "previously ordered" strict limits on hotel stays generally. Doc. # 1755, at 4.

11

**B.** **The Court's reasoning in the Title 42 Orders does not apply to current hotel use.**

The Court should not apply the restrictions in the September 4, 2020 Order to other uses of hotels for temporary stays because current hotel use differs in meaningful ways from hoteling under Title 42—and the Court has not engaged in factfinding or briefing addressing these changes.

The scale and purpose of current hotel use is vastly different today than at the time of the Court's 2020 orders. The Court described the use of hotels under Title 42 as "a full-scale detention operation for minors and families." Doc. # 976, at 4. The Court reasoned that DHS was not seeking to place minors in licensed programs "as expeditiously as possible" because DHS did not intend to ever send minors subject to Title 42 to licensed placements. *Id.* at 12. In contrast, hotel stays now are part of ICE's efforts to expeditiously move minors (1) out of ICE custody through repatriation or other release, or (2) to a family residential center or a licensed facility for unaccompanied alien children. Helland Decl. ¶ 5. Because hotel stays were the default placement under Title 42, the Court placed default rules and restrictions on its use. But hotel use now is situational, and longer hotel stays typically only occur when difficult-to-plan-for operational challenges arise. *See id.* ¶¶ 6–12. An inflexible rule with only "a narrow exception for brief, one to two-night stays" would not account for the variety of operational challenges that ICE faces in the current environment. Doc. # 1755, at 4.

In the Title 42 context, the alternatives to hotel stays were clear to the Court. The Court found that most of the children between the ages of 10 and 17 who had

12

stayed in hotels were unaccompanied alien children (577 unaccompanied alien children out of 660 total minors). Doc. # 976, at 3–4. The Court believed that these unaccompanied alien children could be sent to licensed ORR shelters, which "were 97% vacant." *Id.* at 13. Thus, the Court held that, instead of presumptively placing children in hotels pending Title 42 expulsion, DHS could transfer unaccompanied alien children to ORR custody. *Id.* Similarly, the Court held that sending families to one of ICE's family residential centers was preferable to hotel stays. *Id.* at 17 n.10.

In the current context, however, hotel stays longer than two nights occur when there is not a practicable alternative. For example, a family with a U.S. citizen child cannot be sent to ORR or to a family residential center. Helland Decl. ¶ 9. In addition, when removal is imminent but delayed by flight cancellations or weather, release or transfer is not practicable because of flight risk or logistical difficulty. *Id.* ¶¶ 8, 10–12. Categorical limits on hotel use would not be workable in this context.

Moreover, the Title 42 context is different from the current situation because the typical length of hotel stays is much shorter now compared to the length of hotel stays during implementation of Title 42. On average, minors stayed in hotels "for just under five days" prior to Title 42 expulsion. Doc. # 976, at 3. In contrast, in December 2025 and January 2026, hotel stays exceeding 48 hours were relatively rare. Helland Decl. ¶ 6. For unaccompanied alien children, approximately 4.4% of hotel stays lasted more than 48 hours. *Id.* Approximately 9.6% of family units had hotel stays over two days. *Id.* Thus, the vast majority of hotel stays for both groups were less than 48 hours—much shorter than the five days that was an average length of stay during implementation of Title 42.

13

The Court's concerns about safety in the Title 42 context do not apply to current hotel stays either. *See* Doc. # 976, at 13. In the Title 42 context, the Court concluded that, in hotels, there was a "lack of qualified, specialized supervision, especially for younger, unaccompanied children" and that DHS's "oversight of the hoteling program is vague and minimal." *Id.* at 14. As an initial matter, the Court's specific concern about supervision of younger, unaccompanied children in the Title 42 context does not translate to current hotel stays for family units where a parent or legal guardian is in the room with the children. In addition, DHS's current oversight of hotel placements is not vague and minimal. ICE closely monitors the length of stay and amenities provided during hotel placements. Helland Decl. ¶ 13. Headquarters staff review and monitor hotel stays for children and must approve any hotel stay expected to exceed 48 hours. *Id.* Moreover, in July 2023, ICE published detailed standards that govern all aspects of hotel stays. *See* Temporary Housing Standards, *supra*.

In 2020, the Court also reasoned that the Title 42 "hotel program is not safe with respect to preventing minors from contracting COVID-19." Doc. # 976, at 15. That concern is now inapplicable because the global pandemic has ended.

Finally, the Court held that the Title 42 hotel program was not consistent with the FSA's provisions related to access to counsel. *Id.* The Court stated that "[l]egal services providers attest that they face unusual difficulty locating children within Title 42 custody, and DHS officials often are unable to provide accurate information as to where a child is at any given moment." *Id.* The Court also credited allegations that "ICE physically prevented [attorneys] from entering [a] hotel" to speak with

14

children and that "ICE has also limited children's ability to speak to attorneys by phone." *Id.* at 16.

Current hotel stays do not implicate the same concerns. Children are not sent "off into the night" without ever having the chance to speak with counsel. *Id.* at 17. The children who have recently stayed in hotels are subject to regular, long-standing Title 8 removal processes where minors have access to counsel. Standard 22 of ICE's Temporary Housing Standards specifically provides for in-person and telephonic access to counsel for those in temporary housing. *See* Temporary Housing Standards, *supra*. 14. While in a hotel placement, unaccompanied alien children and families can access their counsel via ICE-provided phones and tablets. Helland Decl. ¶ 14. Arrangements can also be made for in-person meetings at the nearest field office. *Id.*

In short, none of the special concerns that arose in the Title 42 context justify categorical limits on hotel use today. There is no reason to treat hotels differently from other temporary placements used under the influx provision of Paragraph 12. Expeditious processing is a flexible standard that accounts for the numerous circumstances that can arise while ICE works to release or transfer children. Doc. # 976, at 12. For these reasons, the Court should reconsider its imposition of the Title 42 restrictions from September 2020 onto current operations.

15

**II.    The Court should have provided notice and an opportunity to respond before extending the hotel restrictions in its Title 42 Orders to the current situation.**

"Before issuing injunctive relief, the court must provide the affected party with notice and an opportunity to be heard." *Armstrong v. Brown*, 768 F.3d 975, 979–80 (9th Cir. 2014). As explained above, the Court had not previously ordered specific restrictions on hotel stays outside the Title 42 context. Therefore, the Court should have provided Defendants with notice and an opportunity to be heard before doing so, and the Court should reconsider its April 3, 2026 Order in light of the arguments that Defendants have now raised. If the Court wishes to address these issues, it should require Plaintiffs to file an appropriately noticed motion and allow the government the opportunity to fully brief any issues raised.

## CONCLUSION

For the foregoing reasons, the Court should reconsider and remove the following sentences from its April 3, 2026 Order: "As previously ordered, Defendants shall cease placing minors at hotels, with a narrow exception for brief, one to two-night stays while in transit or prior to flights. [*See* Doc. # 976.] Continued non-compliance will result in the re-appointment of a Special Master/Independent Monitor." Doc. # 1755, at 4.

16

DATED: April 17, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

WILLIAM C. SILVIS
Assistant Director

MICHAEL A. CELONE
Senior Litigation Counsel

*/s/ Joshua C. McCroskey*
JOSHUA C. MCCROSKEY
JESSICA R. LESNAU
Trial Attorneys
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-305-1540
Joshua.C.McCroskey@usdoj.gov

*Attorneys for Defendants*

## L.R. 11-6.2 Certification

The undersigned counsel of record for the United States certifies that this brief contains 4,380 words, which complies with the word limit of L.R. 11-6.1.

Dated: April 17, 2026

*/s/ Joshua C. McCroskey*
JOSHUA C. MCCROSKEY
Trial Attorney