CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Carlos R. Holguín (Cal. Bar No. 90754)
crholguin@centerforhumanrights.org
Bardis Vakili (Cal. Bar No. 247783)
bardis@centerforhumanrights.org
Sarah E. Kahn (Cal. Bar No. 341901)
sarah@centerforhumanrights.org
1505 E 17th St. Ste. 117
Santa Ana, CA 927051
Telephone: (909) 274-9057

*Attorneys for Plaintiffs*

*Additional counsel listed on following page*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| *Jenny Flores*, *et al.*,<br><br>      Plaintiffs,<br><br>  v.<br><br>*Todd Blanche*, *Acting Attorney General of the United States*, *et al.*,<br><br>      Defendants. | Case No. CV 85-4544-DMG-AGRx<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO RECONSIDER**<br><br>Judge: Hon. Dolly M. Gee<br>Hearing Date: May 22, 2026<br>Time: 9:30 A.M.<br>Location: Courtroom 8C, First Street Courthouse |

NATIONAL CENTER FOR YOUTH LAW

Mishan Wroe (Cal. Bar No. 299296)

Diane de Gramont (Cal. Bar No. 324360)

428 13th Street, Floor 5

Oakland, CA 94612

Telephone: (510) 835-8098

Email: mwroe@youthlaw.org


NATIONAL CENTER FOR YOUTH LAW

Rebecca Wolozin (admitted pro hac vice)

818 Connecticut Ave. NW, Suite 425

Washington, DC 20006

Telephone: (202) 868-4792

Email: bwolozin@youthlaw.org


CHILDREN'S RIGHTS

Leecia Welch (Cal. Bar No. 208741)

2021 Fillmore Street

San Francisco, CA 94115

Telephone: (415) 602-5202

Email: lwelch@childrensrights.org


CHILDREN'S RIGHTS

Eleanor Roberts (admitted pro hac vice)

88 Pine Street, Suite 800

New York, NY 10005

Telephone: (212) 683-2210

Email: eroberts@childrensrights.org

Pls.' Opposition to Defs.' Motion to Reconsider

CV 85-4544-DMG-AGRX

# TABLE OF CONTENTS

I.   INTRODUCTION                                                                                    1

II.  ARGUMENT                                                                                        2

   A. Defendants' Motion for Reconsideration Is Untimely                                             2

   B. The Plain Language of the Court's September 2020 Orders, and the Ninth
   Circuit's Opinion Affirming, Clearly Apply to All Class Members                                   3

   C. Defendants' Current Interpretation of the Court's 2020 Orders Is Inconsistent
   with their Prior Conduct and Representations                                                      4

   D. No Changed Factual Circumstances Warrant Reconsideration                                       6

      1.  Conditions of Detention in Hotels Remain Inconsistent with a Concern for the
      Special Vulnerability of Minors                                                                6

      2.  Children in Hotels are Denied Access to Counsel                                            9

      3.  The Court's Orders Already Provide for Exigent Circumstances                              11

III. CONCLUSION                                                                                     14

Pls.' Opposition to Defs.' Motion to Reconsider
CV 85-4544-DMG-AGRX

## I.    INTRODUCTION

Defendants' motion for reconsideration rests on a basic misunderstanding of the Court's September 2020 orders related to unlicensed hotel detention of immigrant children. By their plain text, these orders apply to all *Flores* class members and are not limited to children detained under Title 42. The Court's April 3, 2026, order merely reiterated Defendants' existing obligations and did not extend or modify the Court's prior orders. Defendants' motion for reconsideration is thus both untimely and unfounded.

There were two questions at issue in the September 2020 orders: (1) whether children detained pursuant to Title 42 were class members and, if so, (2) whether extended detention in hotels violated the *Flores* Settlement Agreement ("FSA" or "Settlement"). The Court answered these questions independently in the affirmative. Although Defendants cited Title 42 as a justification for detaining children in hotels in 2020, the Court explicitly rejected Defendants' attempts to treat children detained under Title 42 differently from children detained under Title 8. The Court's September 2020 orders restricting unlicensed hotel detention and the Ninth Circuit's June 2021 decision affirming those orders each rest on the basic requirements of the Settlement, not any Title 42-specific standards. Indeed, following the Court's September 2020 orders, Defendants themselves interpreted these orders to apply generally to all class members and represented to Plaintiffs, the Independent Monitor, and the Court that they were complying with these orders even outside the context of Title 42 expulsions. Defendants cannot now claim surprise at being reminded of their longstanding obligations.

Further, no changed factual circumstances warrant reconsideration of the Court's September 2020 orders. It is undisputed that hotels are not a licensed placement, which the Ninth Circuit found to be an independently sufficient reason to affirm limits on these placements. *Flores v. Garland*, 3 F.4th 1145, 1156-57 (9th Cir. 2021). Moreover, conditions in hotels remain inconsistent with Defendants' basic obligations to provide safe conditions "appropriate to the minor's age and special needs" and consistent with a

Pls.' Opposition to Defs.' Motion to Reconsider
CV 85-4544-DMG-AGRX

"concern for the particular vulnerability of minors." FSA ¶¶ 11, 12.A. Class members detained in hotels lack any access to the outdoors, much less structured recreation. They receive no education and no mental health services. Contrary to Defendants' representations, just as in 2020, children detained in hotels continue to be held almost entirely incommunicado and without access to counsel, even in cases where children already have retained counsel actively attempting to reach them.

## II.   ARGUMENT

### A. Defendants' Motion for Reconsideration Is Untimely

Under Local Rule 7-18, "[a]bsent good cause shown, any motion for reconsideration must be filed no later than 14 days after entry of the Order that is the subject of the motion or application." C.D. Cal. L.R. 7-18. "A motion for reconsideration of an Order on any motion or application may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered." Id. None of these circumstances are present here.

Defendants purport to seek reconsideration of the Court's April 3, 2026, order regarding the March 30, 2026, status conference. *See* Defendants' Memorandum of Points and Authorities in Support of Motion to Partially Reconsider at 1, April 17, 2026 [Doc. # 1760] ("Defs. MPA"). But that order merely reminded Defendants of their obligations under the Court's prior order issued in September 2020. *See* Order re March 30, 2026, Status Conference at 4, April 3, 2026 [Doc. # 1755] ("April 3 Order) ("As previously ordered, Defendants shall cease placing minors at hotels, with a narrow exception for brief, one to two-night stays while in transit or prior to flights. [*See* Doc. # 976.]") (emphasis added). Defendants' request for reconsideration is therefore more

accurately construed as a request to reconsider the Court's 2020 orders. As discussed below, the plain language of the Court's September 2020 orders regarding unlicensed hotel detention apply to all Flores class members and Defendants themselves originally interpreted the Court's September 2020 orders to apply to all class members. The time for reconsideration has long passed, and Defendants have offered no good cause for their delay.[1]

### B. The Plain Language of the Court's September 2020 Orders, and the Ninth Circuit's Opinion Affirming, Clearly Apply to All Class Members

In Plaintiffs' 2020 Title 42 motion to enforce, the parties' primary dispute was whether children held for expulsion under Title 42 were Flores class members entitled to the same treatment as other children in the custody of the Department of Homeland Security ("DHS"). The Court concluded that these children were class members in the legal custody of DHS, rejecting Defendants' argument that children held under Title 42 should be treated differently from children held under Title 8. Order re Plaintiffs' Motion to Enforce Settlement as to "Title 42" Class Members at 5-11, September 4, 2020 [Doc. # 976] ("Sept. 4 Order")). After concluding that children held under Title 42 were class members, the Court analyzed whether prolonged hotel detention complied with the plain text of the Settlement, including the Settlement's requirements regarding licensed placement, safe and sanitary conditions, and access to counsel. *Id.* at 12-16.

Far from creating new standards unique to Title 42 class members, the Court required Defendants to "comply with the Agreement with respect to such minors to the same degree as any other minors held in their custody." *Id.* at 17 ¶ 1 (emphasis added); see also id. at 16-17 (recognizing "the exigencies created by COVID-19" but concluding that there was "no excuse for DHS to skirt the fundamental humanitarian protections that the *Flores* Agreement guarantees for minors in their custody[.]"); Order re Defendants' Ex Parte Application to Stay at 2, September 21, 2020 [Doc. # 990] ("Sept. 21 Order") ("The Court did not demand any formal system of care beyond one that is safe and

---

[1] To the extent Defendants rely on ICE's July 2023 Temporary Housing Standards as a basis for reconsideration, Defs. MPA at 7, this motion comes almost three years too late.

Pls.' Opposition to Defs.' Motion to Reconsider
CV 85-4544-DMG-AGRX

sanitary, appropriate to minors' ages and special needs, and concerned for their particular vulnerability as minors.") (citing FSA ¶¶ 11-12.A). Consistent with this requirement of equal treatment, the Court's restrictions on unlicensed hotel detention apply to all class members, regardless of the legal authority under which they are held. *See* Sept. 4 Order at 17 ¶¶ 2-3 (referencing "minors" and "all minors—both accompanied and unaccompanied"); Sept. 21 Order at 5 ¶¶ 1-2 (referencing "minors" generally and "any Class Members").[2]

The Ninth Circuit affirmed the Court's September 2020 orders and similarly rejected Defendants' efforts to justify differential treatment for children held under Title 42. *Flores v. Garland*, 3 F.4th at 1154-55. Notably, the Ninth Circuit affirmed the Court's restrictions on hotel detention based solely on the fact that these facilities are unlicensed, deeming it unnecessary to consider whether these placements were safe and sanitary in the specific factual circumstances at issue. *Id*. at 1156-57.

### C. Defendants' Current Interpretation of the Court's 2020 Orders Is Inconsistent with their Prior Conduct and Representations

Consistent with the plain language of the Court's September 2020 orders, Defendants themselves originally interpreted these orders to apply to all class members. In March 2021 and May 2021, Defendants' counsel emailed Plaintiffs' counsel and the Independent Monitor to provide notice of exigent circumstances requiring the brief use of hotels to detain families prior to release due to Covid-19 quarantine requirements or other exceptional circumstances. *See* Ex. 1, Declaration of Carlos Holguín ¶¶ 3-4, April 25, 2026. Defendants' counsel noted this communication was made in compliance with the Court's September 2020 orders. *Id*. Given Defendants' representation that these families

---

[2] For this reason, Defendants' arguments related to notice and an opportunity to respond before extending an injunction are inapposite. *See* Defs. MPA at 16. Defendants note that "the Court mentioned 'Title 42' no less than eight times" in its Sept. 4 rulings," Defs. MPA at 11, but neglect to mention that *none* of these references to Title 42 appear in the operative paragraphs restricting hotel detention. Sept. 4 Order at 17 ¶¶ 2-3. Indeed, paragraphs 2 and 3 of the Court's Sept. 4 order are notable for the absence of any mention of Title 42.

Pls.' Opposition to Defs.' Motion to Reconsider
CV 85-4544-DMG-AGRX

were being held awaiting release, it was clear these families were not subject to Title 42 expulsion.[3]

Similarly, the ICE Juvenile Coordinator represented to the Court in their 2022 Annual Report that "[w]hile the hoteling programs have ceased, ICE may have occasion to rely on brief, ad hoc hotel stays for Class Members and their accompanying parents and legal guardians, subject to the terms set forth in this court's September 4 and September 21, 2020 orders." July 1, 2022 ICE Juvenile Coordinator Annual Report at 2, Doc. # 1259-2 (emphasis added).

In July 2022, Plaintiffs requested to meet and confer with Defendants regarding violations of the Settlement and the Court's September 2020 orders based on the extended hotel detention of unaccompanied minors in unsafe and inappropriate conditions, including verbal and physical abuse by ICE security contractors, inability to go outdoors, lack of attention to their mental health needs, and severe restrictions on access to counsel. *See* Declaration of Mishan Wroe ¶¶ 17-20 & Exhibit C at 1-3, May 31, 2024, [Doc. # 1427-1] ("Wroe Decl."); *see also* Declaration of Jennifer Vanegas ¶¶ 9-11, July 19, 2022 [Doc. #1427-10] ("Vanegas Decl."); Declaration of Vaneza Alvarado ¶¶ 7-9, June 24, 2022 [Doc. # 1427-11] ("Alvarado Decl.") (also attached within Ex. C. to Wroe Decl.). Following the conference of counsel, Plaintiffs sent an additional letter in August 2022 explaining that the plain language of the September 2020 orders applies to all class members. *See* Wroe Decl. ¶ 18 & Exhibit D at 4-5. Plaintiffs highlighted the Juvenile Coordinator's recent representation that ICE was complying with the Court's September 2020 orders with regard to hotel detentions and noted that "[i]f Defendants now contend that they may detain children arrested pursuant to Title 8 in hotels without regard to the Court's September 2020 orders, they should correct the record on this

---

[3] Although these emails reflect Defendants' recognition that the September 2020 orders applied outside the Title 42 context, Plaintiffs do not agree that these emails were in fact sufficient to comply with the Court's September 2020 orders.

point." *Id.* Defendants did not act to correct the Juvenile Coordinator's report or seek reconsideration from this Court.

On March 6, 2026—nearly a month before the Court's April 3 order—Plaintiffs again wrote to Defendants' counsel to advise them of violations of the Court's September 2020 orders due to prolonged hotel stays, including a child held in various hotels for over two and a half weeks. *See* Ex. 2, Declaration of Rebecca Wolozin ¶¶ 8-9, May 1, 2026 ("Wolozin Decl."). As of the date of filing, Defendants have offered no substantive response, despite repeated follow-up emails. *Id.* ¶¶ 10, 14.

### D. No Changed Factual Circumstances Warrant Reconsideration

In all material respects, the conditions of hotel detention remain unchanged from September 2020. Hotels are not licensed placements and prolonged detention in a hotel room under the constant supervision of ICE officers without any access to the outdoors, regardless of whether the child's parent is present, remains inappropriate for minors and inconsistent with a "concern for the particular vulnerability of minors." FSA ¶¶ 11, 12.A. Access to counsel remains nearly impossible because ICE prevents children and their parents from calling attorneys and refuses to disclose class members' locations or contact information to their attorneys of record. Defendants have also refused to provide required information regarding hotel stays to Plaintiffs' counsel, making visits by class counsel infeasible. To the extent hotel stays longer than one or two nights are truly necessary due to exigent circumstances, the Court's existing orders already account for those concerns and provide Defendants flexibility.

*1. Conditions of Detention in Hotels Remain Inconsistent with a Concern for the Special Vulnerability of Minors*

As in 2020, "[t]here is no dispute that hoteling is not a licensed program" and hotels do not meet standards for licensed programs such as "educational services, daily outdoor activity, and counseling sessions, among others." Sept. 4 Order at 12. ICE's Temporary Housing Standards, for instance, do not require any access to the outdoors

Pls.' Opposition to Defs.' Motion to Reconsider
CV 85-4544-DMG-AGRX

regardless of the length of stay, merely providing that "ICE/contractor staff shall explore opportunities for outdoor recreation as operationally feasible" after 72 hours. *See* ICE, Temporary Housing Standards for Children, Families, and Single Adults at 26-27 (July 2023), https://www.ice.gov/doclib/detention-standards/ths.pdf. In practice ICE does not appear to provide any access to the outdoors, much less meaningful outdoor recreation. One family with two children aged 12 and 14 years old was detained in a hotel room for nine days in February 2026 and was unable to leave their hotel room or even look out the window. Declaration of M.S.P. ¶¶ 3, 10-12, Mar. 12, 2026, [Doc. # 1751-2] ("M.S.P. Decl."); *see also* Ex. 3, Declaration of Lyndsey Marcelino-Schalkwyk ¶¶ 2, 16, April 28, 2026 ("Marcelino-Schalkwyk Decl.") (8-year old and 14-year old clients held in hotel for two weeks and reported they were not allowed outside the hotel room).

This total lack of access to outdoor recreation for over a week is incompatible with the Settlement's requirements that children be held in conditions appropriate to their "ages and special needs, and concerned for their particular vulnerability as minors." Sept. 21 Order at 2; FSA ¶¶ 11-12.A. The Ninth Circuit has repeatedly held that meaningful access to outdoor recreation is a basic constitutional requirement, even for incarcerated adults who pose known safety concerns. *See Shorter v. Baca*, 895 F.3d 1178, 1185-86 (9th Cir. 2018) (collecting cases); *see also id.* ("[I]n Spain v. Procunier, we concluded that violent inmates in administrative segregation have a 'right of outdoor exercise one hour per day, five days a week unless inclement weather, unusual circumstances, or disciplinary needs made that impossible.'") (quoting 600 F.2d 189, 199 (9th Cir. 1979)). These restrictions are even less justifiable today than in 2020, when Covid-19 protocols were necessary.

Extended hotel detention is especially unsafe and inappropriate for children with special medical needs. As ICE's Juvenile Coordinator acknowledged at the March 30, 2026, status conference, when ICE detains a family in the interior, "unless there are obvious medical issues or information disclosed that would prohibit travel, medical

7

examinations prior to travel are very limited" and "Dilley is really . . . the location in which the families we encounter receive their medical examinations." *See* Transcript of March 30, 2026, Status Conference at 29:16-23 [Doc. # 1757]. One family with two children aged 8 years old and 14 years old were detained in hotels for two weeks in February 2026, and during habeas proceedings the government did not contest allegations that one child, I.A.P.M., was not receiving appropriate medical care for panic attacks and another, A.P.M., was not receiving follow up medical care related to a recent foot surgery. Order Granting Writ of Habeas Corpus at 2-4 & n.2, 10, *M.R. et al. v. Easterwood*, Case No. 26-cv-01405, ECF 8 (D.Minn. Feb. 17, 2026) ("M.R. Order"), attached as Exhibit E to Wolozin Decl.; *see also* Marcelino-Schalkwyk Decl. ¶¶ 2, 11-13, 16 (describing children's health conditions, missed follow-up appointment after foot surgery, and traumatic effects of hotel detention).

Defendants assert that the safety concerns articulated by the Court regarding unaccompanied children held alone in hotel rooms with ICE contractors do not apply to children held with their parents. Defs. MPA at 14. The Court's orders, however, explicitly apply to "all minors—both accompanied and unaccompanied." Sept. 4 Order at 17 & n.10. Special safety concerns related to unaccompanied children were thus not essential to the Court's orders. Further, Defendants acknowledge that even now some unaccompanied children are subjected to extended hotel detention. *See* Defs. MPA at 12-13 (noting that approximately 4.4% of hotel stays for unaccompanied children lasted over 48 hours).[4] ICE's February 2026 census data, for instance, indicates that one child was

---

[4] Even brief hotel stays of unaccompanied children detained alone and forced to share a hotel room with ICE officers pose safety concerns, and the risk of harm becomes more serious the longer a child remains detained. *See, e.g., U.H.A., et al. v. Bondi, et al.*, __F.Supp.3d__, 2026 WL 558824, at *3, 20-21 (D. Minn. Feb. 27, 2026) (noting the "grave and immediate threat of irreparable harm facing Plaintiffs" in a case involving the detention of refugees, including the example of a high school junior "compelled to spend the night in a hotel room with two ICE agents—without even being provided with a room of her own."); *see also* Vanegas Decl. ¶¶ 9-11 (describing extended hotel detention of unaccompanied child client in 2022); Alvarado Decl. ¶¶ 7-9 (same).

transferred from an ORR shelter to ICE custody in mid-February and spent 10 nights in a hotel before removal. Wolozin Decl. ¶¶ 12-13 & Ex. C.[5]

### 2. Children in Hotels are Denied Access to Counsel

Children held in ICE hotel detention remain cut off from access to both their individual counsel and Plaintiffs' counsel, in violation of the Settlement. Defendants' general representations regarding ICE standards for access to counsel, MPA at 15, simply do not reflect class members' experiences in practice.

Families and their attorneys report a near-total inability to access counsel while in hotels. *See* M.S.P. Decl. ¶ 14; Marcelino-Schalkwyk Decl. ¶¶ 2-9, 14; Ex. 4, Declaration of Michael Musa-Obregon ¶¶ 5-12, 16-20, April 30, 2026 ("Musa-Obregon Decl."). The location of families held in hotels does not appear in the ICE Detainee Locator and ICE does not otherwise provide information regarding their location. M.R. Order at 3-4; Marcelino-Schalkwyk Decl. ¶ 5; Musa-Obregon Decl. ¶ 7; Ex. 5, Declaration of Kira Kelley ¶¶ 5-7, April 30, 2026 ("Kelley Decl.").[6] Children and their parents also face extreme restrictions on calls to family members. *See* M.S.P. Decl. ¶ 13 (permitted one brief call to family but not allowed to disclose location); Marcelino-Schalkwyk Decl. ¶¶ 10, 16 (no outgoing phone calls permitted).

These families are caught in a Kafkaesque situation where ICE will not permit them to contact their attorney unless their attorney reaches out first, but ICE simultaneously prevents their attorneys from ascertaining their location or even the procedures to contact them. *See* M.S.P. Decl. ¶ 14 (noting that ICE informed family that their attorney "would have to provide a form proving he was our attorney to them to get access to me. But there was no way for us to let him know he needed to provide this

---

[5] On April 13, 2026, Plaintiffs requested an explanation from Defendants as to the reason for this child's lengthy hotel detention but have not received a response. Wolozin Decl. ¶¶ 12-14 & Ex. C.

[6] Although minors do not appear in the ICE Detainee Locator, their adult parents ordinarily should appear, but do not when they are held in hotels. *See* Marcelino-Schalkwyk Decl. ¶ 5; Musa-Obregon Decl. ¶ 7.

Pls.' Opposition to Defs.' Motion to Reconsider
CV 85-4544-DMG-AGRX

form."); Musa-Obregon Decl. ¶¶ 5-11, 16-20 (attorney for M.S.P. family attesting to his inability to contact his clients despite active habeas case, existing G-28 on file, and prior contact with ICE regarding their case).

I.A.P.M. and A.P.M., the children held for two weeks in hotel detention in early February, had an active habeas case. But neither their immigration attorney, their habeas attorney, nor even the federal district court was able to determine their location. M.R. Order at 3-4, 9-10; Marcelino-Schalkwyk Decl. ¶¶ 2-9, 14. The district court explained that "Petitioners' counsel and the Court have searched more than once to ascertain the location of Petitioners" and "[t]he fact that Petitioner's own counsel cannot locate her clients is of particular concern." M.R. Order at 3-4, 9-10. The court found the government's failure to address the family's current location "unresponsive at best and cruel at worst, especially considering that two of the petitioners in this case are children with medical needs" and noted it was "disturbing that an entire family unit can somehow disappear into an ICE blackhole for more than two weeks." M.R. Order at 4, 9-10.

These examples involve families who not only had retained counsel, but whose counsel was willing to make extraordinary efforts to attempt to find them and file petitions for habeas corpus. Musa-Obregon Decl. ¶¶ 5-11, 16-20; Marcelino-Schalkwyk Decl. ¶¶ 2-9, 14. For children without previously retained attorneys, access to counsel is even further out of reach. Therefore, nothing material has changed since 2020 regarding access to counsel. *See* Sept. 4 Order at 15-16 ("Legal services providers attest that they face unusual difficulty locating children within Title 42 custody, and DHS officials often are unable to provide accurate information as to where a child is at any given moment."). Indeed, Defendants rely on the same types of representations the Court previously found inadequate in 2020. *See* Defs. MPA at 15; *see also* Sept. 4. Order at 16 (noting Defendants' representations that they facilitate legal calls "[i]f an attorney has a notice of appearance on record, or if a minor requests an attorney call").

Plaintiffs' counsel are similarly unable to contact class members or monitor conditions in hotel detention. Despite the Court's September 2020 orders requiring immediate notice to Plaintiffs' counsel of hotel placements and an explanation of good cause, Defendants have not been providing Plaintiffs' counsel such notice. Sept. 4 Order at 17 ¶ 2; Sept. 21 Order at 5 ¶ 2. Plaintiffs receive information regarding hotel placements as part of the monthly census data, but this information comes long after a child's actual placement and generally does not include the location or name of the hotel. Wolozin Decl. ¶¶ 5-7. Based on the information provided, it is not possible for Plaintiffs' counsel to conduct attorney-client visits with children detained in hotels as provided for in Paragraph 32 of the Settlement. *See* Sept. 4 Order at 16 ("Paragraph 32 is straightforward in requiring that Plaintiffs' counsel be allowed to access the facilities and contact the minors, even if they do not yet know the identity of a specific minor.").

Since early March, Plaintiffs have repeatedly asked Defendants to provide an explanation for children's prolonged detention in hotels pursuant to Paragraph 28.A and 29 of the Settlement and the Court's September orders. Wolozin Decl. ¶¶ 8-10, 12-14; *see also* FSA ¶¶ 28.A, 29 (requiring data to include "reasons for every placement of a minor in a detention facility or medium security facility"). As of the time of filing, Defendants have not responded to these requests. Wolozin Decl. ¶ 14 & Exs. A-D, G-H. Plaintiffs have also flagged numerous persistent errors in ICE's monthly data, including a child who was held in a hotel for two weeks but was omitted from ICE's data. *Id*. ¶¶ 9, 13-14 & Exs. A, C, D. Plaintiffs became aware of this missing child only because they had a habeas petition in federal court. *Id*. ¶ 14, Ex. D. Plaintiffs have no way of knowing whether additional children held in hotels are similarly missing from the data reports.

### 3. The Court's Orders Already Provide for Exigent Circumstances

Far from creating a Title 42-specific framework, the Court's September 2020 orders recognized and accommodated ICE's past routine use of hotels outside the Title 42 context, such as in cases of "unexpected flight cancellations or delays." Sept. 4 Order at

11

11. The Court provided for flexibility in the cases of "exigent circumstances" and "bottlenecks in the intake processes at licensed facilities," with immediate notice to Plaintiffs' counsel. Sept. 4 Order at 17 ¶ 2; Sept. 21 Order at 5 ¶ 2; *see also Flores v. Garland*, 3 F.4th at 1156 ("The district court's orders in fact are not strict."). To the extent Defendants interpret the Court's April 3, 2026, order to impose a strict one-to-two-night limit on hotel stays, Plaintiffs have no objection to the Court's clarifying its April 3, 2026, order to note the existing flexibility for exigent circumstances provided for in its September 2020 orders.

Defendants, however, have not complied with the September 2020 orders. Defendants have failed to provide Plaintiffs timely notice of extended hotel placements and have failed to respond to Plaintiffs' repeated requests over the past nearly two months for an explanation for extended hotel stays pursuant to those orders and Paragraph 28.A and 29 of the Settlement. Wolozin Decl. ¶¶ 9-10, 12-14. Plaintiffs therefore cannot fully respond to Defendants' asserted reasons for detaining children beyond one or two nights. But it is clear from Defendants' own articulated "operational challenges" that—as in 2020—extended hotel stays are primarily being used as a standalone placement prior to removal rather than as part of any "good faith effort towards placing children in licensed programs." Sept. 4 Order at 12; *see also* Declaration of Dawnisha Helland ¶¶ 7-11, April 17, 2026, [Doc. # 1760-1] ("Helland Decl.") (listing removal-related issues such as obtaining travel documents, "holiday and winter weather disruptions," delayed or cancelled flights, and non-compliance with removal procedures as justification for hotel stays "beyond 48 hours.").

Given that children are held in hotels essentially incommunicado and often deported immediately afterwards, it is very difficult for Plaintiffs to independently verify the circumstances of children's hotel detention. In the few instances where Plaintiffs were able to determine children's circumstances, they do not match Defendants' description of exigent circumstances or flight risk. I.A.P.M. and A.P.M., for instance, were detained after their mother attended a regularly scheduled ICE check-in and complied with orders

Pls.' Opposition to Defs.' Motion to Reconsider
CV 85-4544-DMG-AGRX

to bring the children to an appointment. M.R. Order at 3; Marcelino-Schalkwyk Decl. ¶¶ 4, 10. The government had previously determined the family was "neither a danger to the community nor a flight risk," the family "complied with all orders regarding their immigration status," and they were "not subject to final orders of removal." M.R. Order at 3. After two weeks in a hotel, the family was released on their own recognizance. Marcelino-Schalkwyk Decl. ¶ 15; *see also* Wolozin Decl. Exs. C & F.

M.S.P. and her two children were similarly detained after attending a scheduled ICE appointment. M.S.P. Decl. ¶ 9; Musa-Obregon Decl. ¶¶ 5, 17. The family had been living in New York for nine years, was complying with release conditions, and the mother was wearing an ankle monitor. M.S.P. Decl. ¶¶ 4, 9. After nine days in a hotel, the family was transferred to Dilley. *Id*. ¶ 16; *cf*. Defs. MPA at 13 (asserting that "hotel stays longer than two nights occur when there is not a practicable alternative," such as when a family cannot be sent to Dilley).

Even some of Defendants' own articulated reasons for detaining children in hotels for prolonged periods indicate a lack of exigency. ICE provided data in their March 13, 2026, filing showing that in December and January, ICE detained 43 children in hotels for over 3 days. December 2025 ICE Hotel Stays Report [Doc. # 1736-6]; January 2026 ICE Hotel Stays Report [Doc. # 1736-7]. The data for January 2026 indicates that multiple families were detained more than two days before their scheduled flights, including one family who "was picked up on 1/16 for the departure flight on 1/22" and another family with two children "picked up on 1/21 for the departure flight on 1/26" (later rescheduled to 1/27), without any further explanation. Doc. # 1736-7 at 5, 7; *see also id*. at 3-4, 6. Another family with two children was on their way to Dilley on January 11, but after an interview with USCIS "was temporarily housed in a hotel pending USCIS decision" before being released on January 15. *Id*. at 3. It is not clear why the family had to remain in a hotel room pending their USCIS decision. Most of the entries for hotel

Pls.' Opposition to Defs.' Motion to Reconsider
CV 85-4544-DMG-AGRX

stays exceeding 72 hours in the December 2025 hotel data merely refer vaguely to "scheduling coordination" before removal. Doc. # 1736-6.

Defendants represent that stays exceeding 48 hours are rare and that ICE headquarters "reviews and monitors hotel stays for children and must approve any hotel stay expected to exceed 48 hours." Defs. MPA at 7, 14 (citing Helland Decl. ¶ 9). Given these representations, there should be no operational obstacle to Defendants promptly notifying Plaintiffs of hotel detentions exceeding two nights and the specific exigent circumstances necessitating such placements.

## III.   CONCLUSION

For the aforementioned reasons, Defendants' motion for reconsideration should be denied.

Dated: May 1, 2026

CENTER FOR HUMAN RIGHTS AND
CONSTITUTIONAL LAW
Carlos Holguín
Bardis Vakili
Sarah Kahn

NATIONAL CENTER FOR YOUTH LAW
Mishan Wroe
Diane de Gramont
Rebecca Wolozin

CHILDREN'S RIGHTS
Leecia Welch
Eleanor Roberts


/s/ *Diane de Gramont*
Diane de Gramont
One of the attorneys for Plaintiffs

14   Pls.' Opposition to Defs.' Motion to Reconsider
CV 85-4544-DMG-AGRX

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 4,749 words, which complies with the word limit of L.R. 11-6.1.


/s/ Diane de Gramont