# EXHIBIT 3

**DECLARATION OF LYNDSEY MARCELINO SCHALKWYK**

I, Lyndsey Marcelino Schalkwyk, do hereby declare as follows:

1. I am a resident of Minnesota and at least 18 years of age. This declaration is based on my personal knowledge, except as to those matters based on information and belief, which I believe to be true. If called to testify, I would testify competently about the following facts.

2. I am a licensed attorney and counsel for Petitioners in *Elizabeth M.R., A.E.P.M., I.A.P.M. v. David Easterwood, et al.*, Civil Case No. 25-01405, in the District of Minnesota. This case involves a petition for a writ of habeas corpus for a mother and her two minor children ages 8 years old and 14 years old detained by Immigration and Customs Enforcement ("ICE") between January 30, 2026, and February 15, 2026.

3. Through my work at my firm, Marcelino & Kim PC, I have filed multiple petitions for habeas corpus on behalf of individuals detained by immigration authorities in Minnesota. I am familiar with the challenges of locating and contacting clients in immigration detention facilities. The *M.R.* case, however, was one of the first times I encountered a situation where I was completely unable to locate or speak with my clients at any point during their ICE detention.

<u>Efforts to Locate Family in ICE Custody</u>

4. I was initially referred this case by Ms. M.R.'s immigration counsel, who reached out to me because they were aware that Ms. M.R. and her children attended an ICE Intensive Supervision Appearance Program ("ISAP") appointment on January 30, 2026, but had since been unable to contact or locate the family despite their best efforts.

5. I made extensive efforts to locate this family but was similarly unable to ascertain their location. I first looked up Ms. M.R. on the ICE Detainee Locator, which is the usual mechanism to locate adults in ICE custody, but the results did not provide any information and said to call an

ICE number for more details. Although I attempted to call this number multiple times, nobody ever answered the phone.

6. I also called the St Paul ERO Field Office located at the Bishop Henry Whipple Federal Building in St. Paul, to check whether the family was there, but also received no answer. In the months that I represented clients who were processed at the Whipple Building, no one ever answered the phone when I called.

7. The family's immigration counsel and I also each contacted the Dilley family detention center in an attempt to contact the family. Upon information and belief, at one point, when the immigration paralegal called, someone at Dilley did answer the phone, seemed confused about where the family was, and confirmed that the family had never been processed at Dilley. He said they might be "held up" at a hotel but would not identify it or where to contact them.

8. Upon information and belief, in or around February 10, 2026, an ICE official told the family's immigration paralegal that Ms. M.R. would call at 2:30pm from a "random number." At 2:30pm, the immigration counsel received a call from a personal cell phone from a man who said he was in a room with Ms. M.R. and her children. He refused to disclose the family's location and said that she "would find out tomorrow." He permitted a very brief phone conversation with Ms. M.R. My understanding is that this call was not private, Ms. M.R. was not permitted to disclose her location, and the immigration paralegal did not speak to the children.

9. Despite being counsel of record for the family in federal court, I was never provided any opportunity to contact the family while they were detained. Even when I asked DHS for their location after the Court ordered the family to be returned to Minnesota, they would not provide me with their location.

10. I was in contact with Ms. M.R.'s sister, who lives in the United States and has a close relationship with Ms. M.R.. She also lost all contact with her sister, niece, and nephew, after their ISAP appointment and did not know where they were or how to speak to them.

Children's Medical Concerns

11. Both A.E.P.M. and I.E.P.M. had preexisting medical vulnerabilities that made their detention by ICE and our inability to locate or reach them particularly concerning.

12. A.E.P.M. recently had foot surgery and had a follow-up medical appointment scheduled for February 5, 2026. She missed this appointment while in detention.

13. I.E.P.M. had preexisting anxiety and mental health conditions that made him prone to panic attacks.

Habeas Petition and Release

14. On February 12, 2026, I filed a petition for habeas corpus on behalf of the family in the District of Minnesota. *See M.R. v. Easterwood*, ECF 1. On February 13, 2026, the Court ordered a response to the petition, enjoined Respondents from removing the family from the District of Minnesota until a final decision on the habeas petition, and ordered the government to immediately return the family to Minnesota if they had already been removed from the state. *Id.* ECF 3. At that time, I still did not know where the family was being detained and was unable to obtain this information from the Department of Justice attorney assigned to the case. On February 15, 2026, the government filed its response to the habeas petition but did not provide further clarity on the family's current location. *Id.* ECF 4.

15. On February 15, 2026, Ms. M.R. and her children were released in Minnesota in a public location on their own recognizance. I was not notified of their release by ICE. Upon information

and belief, the only person notified of their release was Ms. M.R.'s sister, who was instructed to come pick them up.

16. Because of the challenges described above, I did not learn about the specific conditions of the family's detention until I was able to speak with them after their release. In our subsequent conversations, I learned that the family was briefly held at Whipple and then flown to Texas and detained for two weeks in a hotel room. Upon information and belief, the family were provided food and clothes in the hotel but were not allowed outside the hotel room and were not permitted outgoing phone calls. Two ICE officials were watching them at all times, including when they slept. Ms. M.R. reported to me that I.E.P.M.'s pre-existing anxiety and mental health concerns were exacerbated by the stress of detention. Both children appeared traumatized by their experience, which was evident to me by their distress when they learned they would have to return to the Whipple building for ICE check-ins. I understand that both children continue to have difficulty being outside the home due to their trauma. They remain fearful that they are still being monitored, and, given the informal and public nature of their release, they live in constant fear that their release was not legitimate and that they are vulnerable to being re-detained.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 28 day of April, 2026, in Minneapolis, Minnesota

Lyndsey Marcelino Schalkwyk