

1300 Pennsylvania Avenue, NW
Washington, DC 20229

**U.S. Customs and Border Protection**

May 1, 2026

MEMORANDUM FOR:        The Honorable Judge Gee
                       Chief United States District Judge
                       U.S. District Court, Central District of California

FROM:                  Henry A. Moak, Jr.
                       Chief Accountability Officer
                       U.S. Customs and Border Protection

HENRY A MOAK JR    Digitally signed by
                   HENRY A MOAK JR
                   Date: 2026.05.04
                   10:08:27 -04'00'

SUBJECT:               May 4, 2026, Supplemental Report

On April 3, 2026, this Court ordered the U.S. Customs and Border Protection (CBP) Juvenile Coordinator (JC) to "file a supplemental report by May 4, 2026 providing a census of minors who were held in CBP or United States Border Patrol facilities for over 72 hours during the months of February 2026, March 2026, and if possible, April 2026. The supplemental report shall provide the reason(s) why each minor was held for more than 72 hours, including further detail regarding any issues that may have affected the minors' length of time in custody."[1] Further, the Court ordered that "[t]he report shall also address any deficiencies found in the conditions of confinement that have been the subject of monitoring during the months of February, March, and April 2026, or raised by Plaintiffs in their declarations in response to the supplemental report, and any remedial measures to address such deficiencies. The CBP Juvenile Coordinator shall give particular attention to conditions of detention and minors' time in custody at CBP's Chula Vista Station."

This report will not include April Time in Custody (TIC) data as the 72-hour reports are unable to be compiled before the report's submission deadline. Additionally, the Juvenile Coordination Division's (JCD) findings from the inspections during the week of April 27-May 1, 2026, have not been finalized as of this writing; I will include them in my upcoming annual report. The results of all JCD inspections will be included in the annual report due on July 1, 2026. All locations will respond with the corrective actions taken in response to any identified deficiencies; the facilities inspected during the week of April 7-10, 2026, have not yet provided the list of corrective actions at the time of writing. While the issues we identified are included here, the corrective actions are not but will be included in my annual report on July 1, 2026.

---

[1]As previously noted, CBP has two operational components: U.S. Border Patrol (USBP) and the Office of Field Operations (OFO). OFO operates at ports of entry (POEs), which include land ports, seaports, and airports. USBP apprehends aliens who cross into the United States illegally between POEs. This Supplemental Report contains data regarding minors who were encountered and held in custody by OFO or USBP during the months of February to March 2026.

The attached reports are the 72-hour reports for February and March that are compiled under Paragraph 28A of the *Flores* Settlement Agreement (FSA) and submitted to Plaintiffs on a monthly basis. To comply with this Court's order, U.S. Border Patrol (USBP) and the Office of Field Operations (OFO) added the information requested by the Court to the existing monthly reports for February and March. The attached February and March reports include a column entitled "Reason for TIC" that contains the information requested by the Court relating to the minors held in CBP custody for more than 72 hours.

While USBP and OFO are best suited to answer any questions about the details of the minors reflected in these reports, I have reviewed the reports, and I can state the following about the information that is contained therein. Many of the cases involved children processed with family waiting for repatriation or had complicated medical cases. For example, an accompanied child was held for 298.43 hours in CBP custody in February 2026. However, the child's mother was booked out to the hospital multiple times for medical care resulting in a delay of transportation out of CBP custody. Thus, this was a unique circumstance that reflects precisely the type of complicated scenario I referenced in my prior reports.

According to CBP STAT Division, in February the average TIC for all minors in CBP custody over 72 hours was 148.25 hours, and in March it was 130.46 hours. Finally, CBP STAT Division also reports that the percentage of minors in CBP custody over 72 hours was 4.77% in February and 5.87% for March. Thus, the vast majority of minors spend less than 72 hours in CBP custody.

In the majority of cases where children were held over 72 hours, they were processed and awaiting transportation, as shown in the attached 72-hour reports. CBP works with external stakeholders to coordinate and regularly schedule air and ground transfer, including awaiting repatriation, removal, or for Immigration and Customs Enforcement (ICE) Enforcement and Removal Operations (ERO) to take custody. One factor that contributes to the time it takes to transport individuals out of CBP custody is obtaining travel documentation from other countries to facilitate travel. CBP coordinates with multiple external stakeholders to obtain travel documents to minimize delays in transportation, however, delays can occur. It can take days to weeks for countries to issue new passports for people in custody.

In other situations, processing itself may take more time, particularly if an individual or family is processed for expedited removal and expresses a fear of return to their home country or designated country of removal. While in CBP custody, individuals who make a claim of fear are referred to U.S. Citizenship and Immigration Services (USCIS) for appropriate screening. This may include review of the decision by an immigration judge that can take additional time to adjudicate. After the credible fear process is completed, if a negative determination is made, the individual or family unit is amenable to removal, and transportation must be found and scheduled.

CBP has taken, and continues to take, measures to address prolonged detention of children and families in its custody. CBP recently established a Rapid Response Task Force (RRTF), an interagency effort to reduce processing times and facilitate efficient removal or repatriation of individuals in CBP custody, reducing unnecessary transfers between agencies. The task force includes multiple CBP offices as well as other U.S government stakeholders, including USCIS, ICE ERO, and the Office of Refugee Resettlement. Working together, the task force members enhance information sharing and improve timeliness in cases requiring cross-agency action while

helping ensure the timely, safe, and humane processing of people in CBP custody. There is a dedicated branch, Immigration Case Management Branch (IB) that proactively identifies family units with minors in custody as well as UACs on a daily basis, 7 days a week. RRTF-IB conducts comprehensive queries to assess the case with a focus on TIC to help determine what the appropriate next steps might be to ensure a quick resolution of the case. The RRTF-IB also facilitates coordination with transportation contractors to expedite safe and compliant transfers to the appropriate destinations.

## Declaration Allegations

In the declarations attached to Plaintiff's Response to CBP's most recent Supplemental Court Report, Plaintiffs provided several allegations regarding conditions in CBP custody.

There were eight main allegations in the March declarations. One of the top allegations was that the families did not receive a shower or did not receive enough showers. However, during JCD's 11 inspections, employing its established data protocol, JCD did not find any locations that had issues with showers provided. Every child in JCD's sample was offered a shower every 48 hours while in CBP custody.

Another top allegation was that children were cold or hungry. During JCD's inspections, all temperatures were in range, storage areas were adequately stocked with additional warm clothing and food items, the Exhibit 1, *Flores* amenities poster, was posted and visible from holding areas, and in facilities with caregivers, the daily orientation message was communicated to children at the beginning of each shift. The daily orientation message includes the date, time, location, amenities that children can ask for, including warm clothing and availability to request snacks and additional meals. In facilities with caregivers, caregivers were available 24 hours a day. Additionally, all locations provided three meals a day and had ample snacks available upon request in between mealtimes.

All locations had functioning toilets and sinks. In all 11 JCD inspections, the toilet area has waist-high privacy partitions to provide privacy from other children and families in the same holding area while also ensuring the safety of children. Additionally, all cameras in the hold rooms have a block over the toilet area to allow for privacy. While this block is not visible in the hold rooms, I have seen the security footage and verified that the toilets and showers are not visible on camera. Janitorial staff clean bathroom/holding areas at least once daily, ensuring sanitation and hygiene standards are met. JCD inspections note that locations were safe and sanitary.

UACs are permitted access to telephones to call family members. Many facilities have telephone networks that can only contact valid US phone numbers. In one JCD interview, one UAC was provided with phone access, but did not know of a valid US phone number and did not call family. For all inspections with children onsite, all children were provided with a list of free legal service providers.

Some declarations alleged that they were only provided with a small mat and an aluminum Mylar blanket. All JCD inspections observed bedding of at least a mat and a blanket provided to children and families. While not all facilities consistently record that a mat and blanket were provided, all juveniles JCD observed onsite had mats and blankets. Mylar blankets are typically used in disaster

Page **3** of **14**

response or hiking. The Mylar blankets help hold in body heat and are more hygienic. Cloth blankets are not feasible for widespread CBP use due to hygiene concerns with communicable disease, such as scabies or lice. Additionally, dimmable lights were accessible in five locations to increase ability to sleep.

One of the declarations indicated that a child's father was held separately from the rest of his family. In response to this case, CBP cannot hold unrelated males with unrelated females in accordance with the Prison Rape Elimination Act (PREA), the FSA, and CBP policy. As mentioned in my earlier reports, this often means that the mother and child will be held in one room while the father is held in another. They are offered an opportunity to interact daily, subject to operational limitations. In the daily orientation message, caregivers communicate that family members can request to visit their family member if they are held in the same facility. JCD also reviews if this contact is recorded in the system of record as part of the Data Protocol.

## **CBP Conditions**

In February, the JCD team visited El Centro and Yuma Sectors. In early March, I visited the El Paso Processing Transportation Detention Unit (PTDU), which is the Juvenile Priority Facility (JPF) for El Paso Sector (EPT). My team then proceeded to the Rio Grande Valley (RGV) Central Processing Center (CPC), which is the JPF for RGV Sector. In late March, I conducted an unannounced inspection in the San Diego area. In April, the JCD team visited Del Rio Sector, and revisited the San Diego area to reinspect Chula Vista Station.

**Table 1. List of JCD Site Visits Included in this Report**

| Sector/Field Office | Location | Facility Type[2] | Date of Visit |
|---|---|---|---|
| El Centro Sector | El Centro Station | Station | 2-10-26 |
| Yuma Sector | Yuma Station | Station | 2-11-26 |
| EPT Sector | El Paso PTDU | CPC | 3-10-26 |
| RGV Sector | RGV CPC | CPC | 3-12-26 |
| San Diego Sector | Chula Vista Station | Station | 3-24-26 |
| San Diego Sector | Movement Coordination Area | CPC | 3-24-26 |
| San Diego Sector | Brown Field Station | Station | 3-25-26 |
| San Diego Field Office | San Ysidro | POE | 3-26-26 |
| Del Rio Sector^ | Uvalde Station | Station | 4-7-26 |
| Del Rio Sector^ | Eagle Pass South Station | Station | 4-8-26 |
| Del Rio Sector^ | Del Rio Station | Station | 4-9-26 |
| San Diego Field Office* | Calexico | POE | 4-29-26 |
| San Diego Sector* | Movement Coordination Area | CPC | 4-30-26 |

| |
|---|
| ^These inspections have not yet submitted their corrective actions to JCD and thus are not included in the list of corrective actions below. Facilities are working on corrective actions and drafting a report to submit written corrective actions to JCD.<br><br>*The results of these last two inspections will not be included in this report, as the submittal deadline was too close to the visits. They will be included in the Annual Report due on July 1, 2026. |

These site visits demonstrated that CBP's Layered and Integrated Monitoring Strategy is working as intended. USBP, OFO, and the Office of the Chief Medical Officer (OCMO) monitor conditions daily and take steps to quickly address any identified issues. For example, at the Eagle Pass South Station, personnel informed JCD that the shower light had gone out and submitted a work order before JCD was onsite, demonstrating how CBP components oversee the provision of amenities and continuously self-monitor conditions for minors in custody.[3]

USBP Headquarters monitors the status of juvenile detainees daily, from apprehension through transfer or removal. This oversight includes all processing steps, adjudication of fear claims (serving as a liaison between stations/sectors and USCIS or the Executive Office for Immigration Review (EOIR)), and coordination of subsequent facility transfers.

For example, USBP Headquarters provided guidance to a sector struggling to schedule a credible fear review for a family unit. Headquarters facilitated direct communication with the EOIR court,

---

[2] CPCs are "Central Processing Centers" and are typically larger buildings with more holding space than a traditional station. POEs are "port-of-entry" or OFO locations where people can enter the U.S.

[3] This issue is not included in the listed inspection issues below as the station submitted a work order before JCD was onsite and is not considered an inspection identified issue.

helping avoid delays and establishing local connections for future coordination. In another instance, USBP Headquarters, with support from the RRTF, coordinated the transfer of a family unit from USBP to ICE custody; while RRTF worked with the Department of State and the consulate to obtain travel documents. These proactive steps significantly reduced the family's time in USBP custody and sought to expedite their transfer to more suitable facilities.

Locally, as an example of Sector monitoring, San Diego Sector (SDC) has an assigned juvenile coordinator and dedicated personnel monitoring all juveniles in custody. They run reports 3 times a day showing where the children are in the processing stage, if/when they are scheduled to be transferred out of custody, and then the juvenile coordinator spot checks the logs for each one. One morning, the coordinator noticed incomplete logs for a juvenile in custody and reached out directly to the station via phone to inquire. The SDC local data integrity management team is working on a product that will flag records for review when required custody log items are missing while subjects are in custody.

As part of OCMO's Layered and Integrated Monitoring Strategy there are daily data reviews of Electronic Medical Record (EMR) generated metrics to ensure that CBP meets the requirements of its medical services contract and to comply with the 2022 EPT-RGV Settlement Agreement. For example, OCMO monitors a daily dashboard that identifies juveniles in custody who may not have undergone a medical re-assessment by their 5th day in custody. In one such review, OCMO recently identified two juveniles who required a 5-day medical reassessment in an RGV facility. OCMO promptly notified RGV leadership, who then coordinated with medical contract personnel on-site to ensure the reassessments were completed in a timely fashion. These reassessments were subsequently completed and appropriately documented in the CBP EMR soon after the OCMO notification.

**Inspection Issues**

The inspections conducted by JCD demonstrated that CBP facilities were substantially compliant with the requirements of the FSA and, where applicable, the 2022 RGV-EPT Settlement Agreement (the 2022 Agreement). All facilities inspected had temperatures within range, functioning ventilation, functional toilets and sinks, available warm clothing, and available hygiene products. All facilities were safe. All facilities provided hot meals and had adequate supplies of bedding, hygiene supplies, and food items. Additionally, all facilities offered and recorded showers within the required time frame. Both facilities in RGV and EPT Sectors had bilingual formula mixing instructions and the *Flores* amenities poster displayed. All employees completed the required 2022 Agreement training.

Following is a discussion of issues from the inspections listed above in Table 1. All facilities took swift corrective actions to immediately address issues identified during these inspections.

*Data Issues*

Inconsistent data entry continues to be the most frequently identified issue across CBP. The majority of these are minor discrepancies. These are typically data entry errors only and do not reflect a failure to provide the required item; rather, they pertain solely to the documentation process. Such errors are related to the inherent limitations of manual data entry. Importantly, these

recording discrepancies are not systematic. They do not occur in every sample or at every location. However, I consistently remind operators during onsite visit debriefs, *Flores* Implementation Trainings (FIT), and JCD Town Halls that accurate recordation of custodial actions needs to be prioritized.

CBP policy requires that USBP facilities record that children have access to functional toilets, sinks, ventilation, temperature control, and drinking water every shift. At 5 of the 11 inspections, these amenity reports were not recorded for every shift. At all facilities, children had access to functional toilets, sinks, and ventilation. All facilities had temperatures within range. This was an error in recording access every shift rather than access being curtailed. Corrective actions that JCD has received from facilities that have submitted them involved reminding all employees of the importance and requirement to enter all custodial information into the system of record and have taken steps to edit the system to accurately reflect the available amenities.

During 3 of the 11 inspections, the CBP Form 2501, also known as the Medical Summary Form, which lists all medical treatments received while in CBP custody, was not generated for all children who received medical care from medical support contractors while in CBP custody. Additionally, 5 of the 11 locations had provided children with a CBP Form 2501 that did not record some medical encounters or all medications given. These forms were printed per a request from receiving agencies for medical information. Subsequently, the children went back to medical for another medical concern and a CBP Form 2501 was not re-generated with the most up-to-date information before they left the facility, thus resulting in the CBP Form 2501 being printed too early. In response, facilities from which JCD has received the corrective actions coordinated with the medical service contractor to ensure accurate CBP Form 2501s are generated immediately before children leave custody.

At 5 of 11 facilities, children's medical records showed a delay in recording enhanced medical monitoring by contracted medical service personnel. For example, enhanced monitoring was supposed to be recorded every four hours, and it was recorded at the six-hour mark instead of at four hours. It is worth noting that 10 of the 11 facilities had contracted medical personnel onsite, and all children received appropriate care; the issues were primarily in the documentation of actions taken. The one facility that did not have contracted medical personnel onsite utilized a nearby station with contracted medical personnel or quickly transported children to a local hospital for emergency treatment. Facility management coordinated with their medical services contractors to ensure all medical actions were correctly documented and reminded CBP personnel that children are to be taken to the medical office in a timely manner as a corrective action.

JCD's review of custody logs found that at 2 of 11 locations, custody logs did not document the reason for holding family members and children in different cells in the same facility, or whether efforts were made to let them interact. Facilities told JCD onsite that they do facilitate contact. In response to JCD's inspection report, these facilities verbally reminded their personnel of the importance of accurately recording family interactions during daily meetings.

At 3 of 11 facilities, custody logs did not record that children were provided with a mat and blanket; however, mats and blankets were provided onsite and were readily available at all facilities. At all facilities inspected by JCD that had children present, JCD observed that the

children had all been issued mats and blankets. The facilities reminded their personnel to input all custodial actions in custody logs.

CBP policy in RGV and EPT sectors requires that agents record that snacks were available once per shift, or three times per day, but this was not recorded for all children in our sample at 2 of 2 facilities. At both facilities, JCD verified snacks were readily available and caregivers were present to ensure children could receive snacks. Another CBP requirement is to record when UACs are shown a "Know Your Rights" video. While I remain confident that all UACs were shown the "Know Your Rights" video, the two facilities did not properly record that the video was shown to all UACs. This is an example of where CBP policy is stricter than FSA or 2022 Agreement requirements. Facility management reminded personnel of the importance of inputting all custodial actions in custody logs. Additionally, one facility posted instructions on logging amenities near each computer in the pod.

At 2 of 11 facilities, there were gaps in the recording of welfare checks. However, the inspection of one facility made clear that all children were always held in locations that were within sight of CBP personnel or caregivers. This facility has not yet submitted their corrective actions. At the other facility, welfare checks were conducted but were not consistently recorded. This facility has now assigned a juvenile coordinator to monitor and document welfare checks in the system of record.

At one facility, the contracted medical support personnel were not consistently recording that juveniles received a 5-day medical reassessment. The facility spoke with their contracted medical service personnel to ensure accurate recording of medical care and implemented a process to monitor multi-day requirements.

*Nutrition Issues*

At 3 of 11 facilities, there were no tender-aged meals for toddlers. At one facility, meal items provided were smaller than meals provided for older children or adults but were not cut into bite-sized pieces. To correct the issue, one facility coordinated with the food vendor to cut tender-age meals into bite-sized pieces and clarified that if the meal could not be cut into bite-sized pieces, that the vendor needed to change the meal provided. Further, the facility stated that the Supervisory Border Patrol Agents on each shift would spot check delivered meals. At the other two facilities, they now have a contracted meal service that provides tender-age meals. Additionally, the facility has contracted caregivers who assist children with meals.

At 2 facilities, there were issues with providing and recording meals within six hours. At one facility, employees were providing a full meal at morning snack times in addition to the scheduled mealtimes, resulting in a mismatch between what was recorded and when. This facility has switched to contracted meals, served at specific times. At the other facility, the time between breakfast and lunch was scheduled to be seven hours instead of six hours. In the sample JCD pulled for that facility, mealtimes were recorded within the 6 hours timeframe. This facility is in the process of submitting corrective action plans.

At 3 of 11 facilities, expired snacks or expired baby formula were discovered. The baby formula in one facility had expired the month before was identified. The expired snacks and formula were

immediately discarded upon discovery. Two facilities implemented a logging sheet and updated their food storage policy. The other facility is in the process of submitting corrective action plans.

At one facility, JCD raised sanitary concerns were raised regarding the hose used to fill 5-gallon heavy duty water coolers provided in the holding rooms. JCD promptly reported these issues to onsite management. In response, facility management immediately addressed the concern by switching to bottled water.

*Other Issues*

Five facilities lacked child-friendly decorations in all areas holding children. In response, two facilities posted child-friendly decorations. One facility is no longer holding children. The other two facilities are in the process of submitting corrective action plans. Two facilities did not have indoor recreational activities like coloring books or puzzles available for children. At one facility, management ordered child friendly decoration, coloring books, puzzles, and games for children to use while in custody. The other facility is in the process of submitting corrective action plans. One facility, which did not have caregivers, did not provide a daily orientation message as they were unaware of the requirement to do so. They are in the process of submitting corrective action plans.

One facility was unaware of the requirement to provide a CBP Form 2501 to Mexican UACs who were voluntary returning to Mexico as they misunderstood the purpose of the form. The facility thought it was simply a travel clearance form rather than a child's medical records. Facility management messaged the requirements to all employees. One facility was not providing a red wristband to medically at-risk children as required by policy. However, the facility had robust communication between the medical service contracted personnel and the CBP personnel in the holding areas. CBP personnel knew when children were medically at-risk; however, the contracted medical personnel were not utilizing the visual reminder of a wristband to indicate the child was medically at-risk. At no time was a child medically at-risk without CBP being aware of the elevated in-custody risk of the child. This facility discussed with the medical service contractor the requirement of red wristbands for medically at-risk children.

One facility is an older, leased facility. Upon JCD's inspection of the holding cells, they appeared to have significant built-up dirt on exposed concrete walls. The management company of the leased facility only provided contracted janitorial once per day. The facility has begun adding additional janitorial services.

**Chula Vista Update**

While Plaintiffs typically refer to "Chula Vista" in their declarations, children are typically held at the "Movement Coordination Area" (MCA) co-located on Chula Vista Station's campus. For example, the ▮▮▮▮▮▮ family mentioned in the last status conference was located at MCA and not Chula Vista for most of their stay. Therefore, I asked my team to focus in on MCA to comply with the April 3, 2026, order's requirement to "give particular attention to conditions of detention and minors' time in custody at CBP's Chula Vista Station."

JCD visited Chula Vista Station and MCA on March 24, 2026. As previously mentioned in my reports, we inspect six core areas: Physical, Data, Medical, Food, Caregivers, and Interviews with Juveniles/Parents.

At Chula Vista, JCD identified 3 issues: crackers that expired in February 2026, tender-age meals were not available, and a lack of child-friendly decoration.

Chula Vista immediately discarded the crackers. Chula Vista and MCA share the same meal provisions and are looking into meal variety and tender-age availability with the contractor. Child-friendly decorations have been added to areas.

At MCA, JCD identified 8 issues: scheduled mealtimes were not adhered to; tender-age meals were unavailable; the practice of utilizing 5-gallon water jugs was inadequate due to sanitation concerns; amenities reports were not completed once per shift; welfare checks were not consistently recorded; CBP Form 2501s were incorrect; FMUA areas lacked child-friendly decoration; and recordation of enhanced medical monitoring by the contracted medical support personnel for juveniles was incomplete. At MCA, we also interviewed the family from ████ discussed at the previous status conference. We raised their concerns about lack of showers and clean clothing as well as tender-age food for the 2-year-old to station management.

MCA took steps to correct issues identified by JCD. Contracted meals are now being utilized by the facility, including providing toddlers with bite-sized meals. The facility immediately switched to bottled water provision. SDC management now conducts spot checks of logs to ensure that all custody actions are accurately recorded. MCA added child friendly decoration to all areas holding children. Finally, MCA is coordinating with the contracted medical service provider to address concerns with CBP Forms 2501 and required entries.

MCA took additional steps to address concerns raised by JCD. To alleviate temperature concerns, even though the temperature was within range and all children were provided with ample warm clothing, MCA changed the temperature range to be increased by 4 degrees Fahrenheit. SDC now requires two Supervisory Border Patrol Agents per shift at MCA to provide additional oversight. Water bottles and individual soap packets are now being provided to children. SDC has started implementation of self-inspections, where multiple Supervisory Border Patrol Agents will review detention logs to spot potential issues and ensure detailed entries. The team will also visit the facilities where class members may be held to help ensure compliance with *Flores* detention standards. The team is aware they can contact JCD and counsel for help if any compliance questions arise. MCA assured me they are looking into other potential steps to alleviate issues.

### Interviews with Children and/or Parents/Legal Guardians

JCD continued to conduct voluntary interviews with children and/or their parents/legal guardians to understand the experiences of children in CBP custody. JCD conducts interviews to develop an understanding of an individual or family's experience. JCD conducted interviews at five facilities: El Centro Station, El Paso PTDU, RGV CPC, SDC-MCA, and Uvalde Station. JCD did not

conduct interviews at the other six facilities: Yuma CPC, Chula Vista Station, Brown Field Station, San Ysidro POE, Eagle Pass South Station, and Del Rio Station, as either no children were on site when JCD conducted the inspection or the children declined to volunteer to be interviewed.

Overall, children or their parents/legal guardians reported having functional toilets, sinks, and adequate ventilation; receiving hot meals and snacks; having drinking water available; receiving a mat and blanket(s); seeing medical personnel; having hygiene products available, including a hygiene kit for showers; and receiving a daily orientation message.

In two interviews, the parent/legal guardian stated they were provided with food, but the food was not their child's preferred food. While this is a personal preference, JCD informed the facilities and asked if there were any alternative meals or food options they could bring to ensure the children had food they could eat. Both facilities immediately worked to find an alternative main meal for the children. In one interview with a mother and infant, the mother stated that single use baby bottles were provided for formula.

At three facilities, interviewees stated the temperature was cold to them. They all had sweatshirts, blankets, and a mat. JCD personnel mentioned that they could request additional sweatshirts if needed. JCD personnel also observed that all locations were within the temperature range. In facilities where lights were dimmable, families reported that lights were dimmed during sleep hours. For the two FMUAs held in a separate room from their other family members, they stated that they were able to have contact with their family members. Four of the five interviewees also reported that CBP personnel treated them with respect, and one stated that "guards" had used dismissive language with her. JCD immediately raised this concern with USBP management who assured me that they would re-message appropriate language with children to the contracted personnel.

## Conclusion

CBP continues to be compliant with the FSA and the 2022 Agreement. CBP facilities provided regular access to meals and snacks, functioning toilets, functioning sinks, and emergency medical assistance if needed. In addition, holding areas had adequate temperature control and ventilation. RGV and EPT Sectors met the following 2022 Agreement requirements: expanded temperature range; 2022 Agreement amenities poster; disposable baby bottles; dental hygiene products; hygiene kits with showers; beanies and cloth swaddling blankets; and reasonable efforts to provide televisions and recreational activity. When JCD, the Deputy JC, or I, identified issues, management acknowledged them and took swift corrective action.

In my role as the JC, my team and I continue to address and facilitate CBP's compliance with the FSA and the 2022 Agreement by maintaining situational awareness, tracking progress on emerging issues, and continuous monitoring through inspections. We notice the results of this strategy in the inspections that we conducted in February, March, and April with the facilities and their quick response to correcting issues and receptiveness to JCD's FIT program for additional training to enhance compliance. I remain confident that CBP's Layered and Integrated Monitoring Strategy is effective, and my team and I remain committed to ensuring that our monitoring, and the layered and integrated monitoring strategy overall, continue to ensure substantial compliance with the FSA and the 2022 Agreement.

**Appendix 1: CBP Facility Compliance with the FSA**

| Location | Date of Inspection | Access to Food/ Snacks | Access to Clean Drinking Water | Access to Functioning Toilets/ Sinks | Cot/Mat and Blanket Available | Adequate Temperature & Ventilation | Shower Facilities Onsite | Hand Soap or Sanitizer in Hold Room | Contract Medical Personnel Onsite |
|---|---|---|---|---|---|---|---|---|---|
| **San Diego Field Office** | | | | | | | | | |
| San Ysidro POE | 3/26/2026 | Yes | Yes | Yes | Yes | Yes | Yes | No* | Yes |
| **El Paso Sector** | | | | | | | | | |
| El Paso PTDU | 3/10/2026 | Yes* | Yes | Yes | Yes | Yes | Yes | Yes | Yes |
| **San Diego Sector** | | | | | | | | | |
| Movement Coordination Area | 3/24/2026 | Yes* | Yes* | Yes | Yes | Yes | Yes | No* | Yes |
| Chula Vista Station | 3/24/2026 | Yes* | Yes | Yes | Yes | Yes | Yes | No* | Yes |
| Brown Field Station | 3/25/2026 | Yes | Yes | Yes | Yes | Yes | No* | No* | No |
| **RGV Sector** | | | | | | | | | |
| RGV CPC (Ursula) | 3/12/2026 | Yes | Yes | Yes | Yes | Yes | Yes | Yes | Yes |
| **El Centro Sector** | | | | | | | | | |
| El Centro Station | 2/10/2026 | Yes* | Yes | Yes | Yes | Yes | Yes | Yes | Yes |
| **Yuma Sector** | | | | | | | | | |
| Yuma Station | 2/11/2026 | Yes | Yes | Yes | Yes | Yes | Yes | Yes | Yes |
| **Del Rio Sector** | | | | | | | | | |
| Uvalde Station | 4/7/2026 | Yes | Yes | Yes | Yes | Yes | Yes | No* | Yes |
| Eagle Pass South Station | 4/8/2026 | Yes | Yes | Yes | Yes | Yes | Yes | No* | Yes |
| Del Rio Station | 4/9/2026 | Yes | Yes | Yes | Yes | Yes | Yes | No* | Yes |

**Explanation**

Below is an explanation for the items in Appendix 1 with an asterisk. While CBP remains substantially compliant, there is always room for improvement. While onsite, JCD discussed these issues with the inspected facilities.

San Ysidro POE (March 26, 2026)

Soap, hand sanitizer, paper towels and masks were not available in each of the holding areas; however, they were available upon request and in the cafeteria.

El Paso PTDU (March 10, 2026)

No tender-age meals were available. Meals were cut and smaller portion sized, but they were not bite-sized for toddlers. Facility initiated contact with the contractor and identified the miscommunication. Contractor began providing bite-sized toddler meals.

Page **12** of **14**

Movement Coordination Area (March 24, 2026)

No tender-age meals were available. Contracted meals are now being served at this facility, including tender-age meals. The water hose used to fill 5-gallon heavy duty water coolers provided in the holding rooms was not properly sanitized. The facility immediately switched to bottled water. The facility did not have soap or hand sanitizer inside the holding areas; however, hand sanitizer was available upon request with caregivers stationed outside holding areas. Hand soaps are available in all lavatory areas of the holding rooms.

Chula Vista Station (March 24, 2026)

Expired crackers were found; the facility immediately discarded the crackers. No tender-age meals were available. Contracted meals are now being served at this facility, including tender-age meals. The facility did not have soap or hand sanitizer inside the holding areas; however, hand sanitizer was available upon request with caregivers stationed outside holding areas.

Brown Field Station (March 25, 2026)

There are no showers onsite; a paper shower was provided. The facility did not have soap or hand sanitizer inside the holding areas; however, hand sanitizer was available upon request. The facility did not have contract medical onsite; when needed, facility took patients to a nearby station with contracted medical service personnel or to a local health care facility.

El Centro Station (February 10, 2026)

Expired baby food items and juice were found. Food was immediately discarded.

Yuma Station (February 11, 2026)

No issues identified.

Uvalde Station (April 7, 2026)

The facility did not have soap or hand sanitizer inside the holding areas; however, hand sanitizer was available in the Processing Area and upon request.

Eagle Pass South Station (April 7, 2026)

The facility did not have soap or hand sanitizer inside the holding areas; however, hand sanitizer was available in the Processing Area and upon request.

Del Rio Station (April 7, 2026)

The facility did not have soap or hand sanitizer inside the holding areas; however, hand sanitizer was available in the Processing Area and upon request.

**Appendix 2: 2022 Agreement Requirements in RGV/EPT Sectors.**

The table records the requirements specific to the 2022 Agreement in RGV and EPT Sectors and whether the facilities met the requirements on the date of the JCD visit. For answers with an asterisk, explanations are given in the notes.

| 2022 Agreement Requirements | RGV/EPT Juvenile Priority Facilities | |
| --- | --- | --- |
| | RGV CPC | El Paso PTDU |
| | 3/10/26 | 3/12/26 |
| Maintain the required temperature of 69ºF - 83ºF. | Yes | Yes |
| Post the 2022 Agreement amenities poster. | Yes | Yes |
| Show the video with Exhibit 3 information. Personnel will record that this notice was provided orally. | Yes | Yes |
| Provide disposable baby bottles. | Yes | Yes |
| Provide formula mixing instructions in English and Spanish. | Yes | Yes |
| Provide dental hygiene daily and upon request. | Yes | Yes |
| Provide hygiene kits when requested and with showers. | Yes | Yes |
| Provide mechanism to dry hands. | Yes | Yes |
| Provide beanies to children under five (5). | Yes | Yes |
| Provide cloth swaddling blankets to children under two (2). | Yes | Yes |
| Make reasonable efforts to dim lights between 2200-0600. | Yes | Yes |
| Provide a supplemental health interview every five (5) days for children held over 72 hours. | Yes | Yes |
| Provide the "*Flores* Mediation Agreement" orientation training to CBP employees. | Yes | Yes |
| Provide showers as soon as possible after arrival and 48 hours thereafter. | Yes | Yes |
| Make reasonable efforts to provide televisions in pods. | Yes | Yes |
| Place clocks in locations visible from each pod/cell if space is available. | Yes | Yes |
| Provide infant changing stations, where space available. | Yes | Yes |
| Make effort to provide child appropriate "furniture" in areas holding tender age children. | Yes | Yes |
| Make effort to provide age-appropriate toys/activities. | Yes | Yes |