CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Carlos R. Holguín (Cal. Bar No. 90754)
crholguin@centerforhumanrights.org
Bardis Vakili (Cal. Bar No. 247783)
bardis@centerforhumanrights.org
Sarah E. Kahn (Cal. Bar No. 341901)
sarah@centerforhumanrights.org
1505 E 17th St. Ste. 117
Santa Ana, CA 92705
Telephone: (909) 274-9057

*Attorneys for Plaintiffs*

*Additional counsel listed on following page*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| Jenny Flores, *et al.*, | Case No. CV 85-4544-DMG-AGRx |
| Plaintiffs, | **PLAINTIFFS' RESPONSE TO MAY 4, 2026 SUPPLEMENTAL JUVENILE COORDINATOR CBP REPORT AND DATA [DKTS. # 1767-1, 1767-2, 1767-3]** |
| v. | |
| Todd Blanche, Acting Attorney General of the United States, *et al.,* | Judge: Hon. Dolly M. Gee |
| Defendants. | |

NATIONAL CENTER FOR YOUTH LAW
Mishan Wroe (Cal. Bar No. 299296)
Diane de Gramont (Cal. Bar No. 324360)
428 13th Street, Floor 5
Oakland, CA 94612
Telephone: (510) 835-8098
Email: mwroe@youthlaw.org

NATIONAL CENTER FOR YOUTH LAW
Rebecca Wolozin (admitted *pro hac vice*)
818 Connecticut Ave. NW, Suite 425
Washington, DC 20006
Telephone: (202) 868-4792
Email: bwolozin@youthlaw.org

CHILDREN'S RIGHTS
Leecia Welch (Cal. Bar No. 208741)
2021 Fillmore Street
San Francisco, CA 94115
Telephone: (415) 602-5202
Email: lwelch@childrensrights.org

CHILDREN'S RIGHTS
Eleanor Roberts (admitted *pro hac vice*)
88 Pine Street, Suite 800
New York, NY 10005
Telephone: (212) 683-2210
Email: eroberts@childrensrights.org

On April 3, 2026, the Court noted Defendants' noncompliance with six orders issued in this case between 2015 and 2025. In Chambers Order re March 30, 2026 Status Conference, April 3, 2026 at 3 [Dkt. 1755] ("Apr. 3 Order"). In part, the Court ordered the CBP Juvenile Coordinator to submit a supplemental report addressing conditions violations and time in custody in CBP facilities. *Id*. at 2. That supplemental report, filed May 4, 2026, revealed that time in custody in February and March of this year has increased since January, that conditions at several CBP facilities continue to violate the *Flores* Settlement Agreement ("FSA") and this Court's orders, and that internal monitoring has not been effective in addressing these violations, despite Defendants' assertion that it "is working as intended." May 4, 2026 CBP Juvenile Coordinator Supplemental Report at 5 [Dkt. 1767-1] ("May 4 CBP Rep."). In fact, the conditions at some CBP facilities appear to fall far short of the improvements the independent Juvenile Care Monitor oversaw in the RGV and El Paso sectors; meanwhile, conditions in some facilities within the RGV and El Paso sectors appear to have deteriorated since the independent monitor's term expired. In an order on August 15, 2025, the Court denied "for now" and without prejudice Plaintiffs' request for re-appointment of an independent monitor of CBP facilities, "depending on the contents" of Defendants future status reports. Order re July 18, 2025, Motion to Enforce the Flores Settlement Agreement in CBP facilities at 13 [Dkt. 1638] ("August 2025 CBP MTE Order").[1] The May 4 CBP Report demonstrates continued noncompliance.

---

[1] The Court also held that depending on information provided at a status conference and in associated filings scheduled for September 22, 2025, "the Court may reconsider what in essence is Plaintiffs' request for *re-appointment* of an independent monitor at that time." August 2025 CBP MTE Order at 13. On May 18, 2026, the Court reiterated that "[c]ontingent on further discussion regarding the Juvenile Coordinators' supplemental reports and Plaintiffs' responses thereto at the June 1, 2026 status conference, the Court may issue an Order to Show Cause why an independent monitor should not be reappointed, at which point Defendants will have additional notice and opportunity to be

1

**A. Time in Custody**

Since Defendants' last report, class members' time in CBP custody has increased alarmingly, reaching nearly a week on average in February 2026. Several children were held in CBP facilities for over two weeks. U.S. Border Patrol ("USBP") Time in Custody ("TIC") Reports for March and February 2026 [Dkts.1767-2 and 1767-3]. Defendants continue to parrot reasoning that routine challenges such as obtaining travel documents justify prolonged detention in CBP custody. May 4 CBP Rep. at 2. Failing to process a child for release during predictable, lengthy procedures like obtaining passports clearly violates the FSA's mandate to expeditiously process children, yet Defendants make clear that they have no plans to discontinue these violations. FSA ¶¶ 12(A), 14, 18. Holding children for prolonged periods in CBP's short-term holding stations, which CBP acknowledges are ill-equipped for prolonged detention, violates the FSA's requirement that children be held in safe and sanitary conditions.

According to the Juvenile Coordinator's March 2026 Report, "in December the average TIC for all minors in CBP custody over 72 hours was 105.4 hours, and in January it was 117.96 hours." March 13, 2026 CBP Juvenile Coordinator Supplemental Report at 2 [Dkt. 1735-1] ("March 13 CBP Rep."). In February, those numbers rose to "148.25 hours, and in March [to] 130.46 hours." May 4 CBP Rep. at 2. Further, "the percentage of minors in CBP custody over 72 hours was 4.30% in December and 1.92% for January." March 13 Report at 2. In contrast, "the percentage of minors in CBP custody over 72 hours" rose to "4.77% in February and 5.87% for March." May 4 CBP Rep. at 2.

In January 2026, Defendants held 58 children for more than 72 hours in CBP custody. Office of Field Operations ("OFO") and USBP TIC Report [Dkt. 1735-3]. In February 2026, Defendants held 100 children over 72 hours, and in March 2026,

---

heard." Order re Defendants' Motion to Partially Reconsider Order of April 3, 2026 [1760], May 18, 2026 at 4 [Dkt. 1775] ("May 18 Order").

2

Defendants held 155 children over 72 hours. OFO and USBP TIC Reports for March and February 2026 [Dkts.1767-2 and 1767-3]. Concerningly, sixteen children were detained for over two weeks in February and March. *Id*. According to the data Defendants submitted with their March 13 and May 4 Juvenile Coordinator Reports [Dkts. 1735-3, 1767-2, and 1767-3], children were held by CBP as described in the table below:

|  | Number of Children Held over 72 Hours | Number of Children Held Over One Week | Number of Children Held Over 10 Days | Number of Children Held Over Two Weeks | Longest Number of Days a Child was Held |
|---|---|---|---|---|---|
| January | 58 | 7 | 5 | 5 | 17 |
| February | 100 | 22 | 9 | 8 | 28 |
| March | 155 | 27 | 17 | 8 | 17 |

As they have done repeatedly in previous reports and briefs, Defendants assert that "unique circumstance[s]" which are, in reality, routine processes, justify weeks of imprisonment in CBP custody rather than transfer or release. May 4 CBP Rep. at 2; OFO and USBP TIC Data December 2025 [Dkt. 1735-2] (listing delays in flight and travel arrangement as the nearly exclusive cause of prolonged detention); OFO and USBP TIC Data January 2026 [Dkt. 1735-3] (same); Defendants' Opposition to Plaintiffs' Motion to Enforce, July 18, 2025 at 6-7 [Dkt. 1606] (justifying prolonged detention because "OFO was diligently working with ICE to secure commercial airline flights for removal . . . [which] can be a lengthy process.").

In the May 4 Report the JC identified circumstances including "medical care" for a mother "resulting in delay of transportation;" "obtaining travel documentation;" and conducting refoulement interviews if a family "expresses a fear of return." *Id*. The report calls these types of delays "precisely the type of complicated scenario" that justify prolonged detention, noting that "[i]t can take days to weeks for countries to issue new passports." May 4 CBP Rep. at 2. But these are not unusual or unexpected scenarios.

3

These are precisely the type of predictable scenario nearly every family in CBP custody faces: families seeking refuge must all undergo a fear screening process, as has been the case for years, and for those that do not pass such screening, all must wait for arrangements for their deportation. *See* 8 U.S.C. 1225(b)(1). The Juvenile Coordinator concedes that these predictable, routine processes will continue to take "days to weeks," May 4 CBP Rep. at 2, but provides no explanation to justify continuing to hold children and families in CBP border stations rather than transferring them to longer-term facilities or using alternatives to detention. Instead, CBP touts the Rapid Response Task Force ("RRTF"), focused on "reducing unnecessary transfers between agencies" while making efforts to "facilitate efficient removal or repatriation of" class members. *Id.* The RRTF appears to be a taskforce dedicated to "reduc[ing] processing times" in so far as doing so will prevent a child's transfer out of CBP except for removal. *Id.* As this court has repeatedly held, detaining children in CBP stations for the duration of their proceedings or prolonged removal processes violates the FSA. *See, e.g.*, Order re Plaintiffs' Motion to Enforce [1575], Aug. 15, 2025 at 14 [Doc. # 1638] ("Because CBP facilities are intended only for short-term use, CBP shall hold minors in its custody only for the amount of time DHS reasonably requires to process the minor for release."); Order re Plaintiffs' Motion to Enforce [201, 202], June 27, 2017 at 34 [Dkt. 363.].

CBP has not provided reasonable justifications to explain detaining children for weeks on end in holding cells. No fortune-teller is needed to accurately predict what CBP's next reports will reveal if nothing changes: time in CBP custody will continue to be unacceptably high in violation of the FSA, as it has been for the last year. This Court's words bear repeating here: "It's not an appropriate place for children to be. And I think everyone recognizes that." Transcript of March 30, 2026 Status Conference at 10, 3:5.

4

**B. Conditions**

In eleven Juvenile Coordinator inspections, the Juvenile Coordinator uncovered a litany of violations of the standards and protections set out by the FSA. The report does not rebut the content of class members' declarations, at times confirming their experiences and at others relying on a general policy of compliance without evidence that that policy was followed in the class member's case. Most concerning, the report shows that after significant progress in the RGV and El Paso sectors under the guidance of the independent Juvenile Care Monitor, CBP has failed to meet the same minimum standards in other sectors and has been backsliding in the JCM's monitored sectors since the expiration of the JCM's term.

Paragraph 12(A) requires contact with family members and creates safeguards that "reflect a commonsense understanding" of what safe and sanitary conditions, with concern for the particular vulnerability of minors, require. *Flores v. Barr*, 934 F.3d 910, 916 (9th Cir. 2019). This commonsense understanding includes "soap, towels, showers, dry clothing, [and] toothbrushes." Order re Plaintiffs' Motion to Enforce and Appoint a Special Monitor [201, 202], June 27, 2017 at 13 [Dkt. 363]. It also requires "provision of age-appropriate food." Apr. 3 Order at 2. The May 4 Report shows that Defendants continue to violate these orders and the FSA.

Nothing in the May 4 Report rebuts the testimony of children and families detained in CBP, and much of it confirms what families assert in their declarations. *See*, *e.g.*, May 4 Report at 3 ("Some declarations alleged that they were only provided with a small mat and an aluminum Mylar blanket. All JCD inspections observed bedding of at least a mat and a blanket provided to children and families . . . Mylar blankets are typically used"); *Id*. at 4 (describing a policy of holding adult men and older male children separately from their family members and pointing to a policy of providing daily interaction, but acknowledging that visitation is "subject to operational limitations" in response to a child's declaration that they were held separately from their father).

Instead, the report reveals a pattern of noncompliance. According to the May 4 Report, "[a]t 3 of 11 facilities," including El Paso, "there were no tender-aged meals for toddlers." May 4 CBP Rep. at 8. This erosion of hard-fought custodial improvements is cause for alarm. Under the guidance of the Juvenile Care Monitor, and after two years of enforcement of the 2022 CBP Settlement, CBP began serving some separate, age-appropriate food for tender age children. JCM Final Report, Dec. 2024 at 7 [Dkt. 1522] ("For the first time this year, the attached child appropriate menus for toddlers have been implemented in both JPF's."). But rather than building on this progress, gains are quickly being lost. The current lack of age-appropriate food is especially concerning in light of increasing time in custody for many children.

According to the May 4 Report, fathers are routinely held separately from mothers and children, and they are offered "an opportunity to interact daily," but only "subject to operational limitations." May 4 CBP Rep. at 4. "[A]t 2 of 11 locations, custody logs did not document the reason for holding family members and children in different cells in the same facility, or whether efforts were made to let them interact." *Id*. at 7. The independent JCM worked for months to improve family separation practices in the RGV and El Paso sectors, including by protecting children under 12 from separation and requiring consistent visitation for separated families. JCM Report, September 15, 2023 at 28 [Dkt. 1360]; JCM Report, September 10, 2024 at 13 [Dkt. 1468] (reporting that only children over 12 years old were still being held separately from their parents, and that there had been some improvement to family visitation practices.). The JCM has emphasized that "children of any age could experience significant distress and potentially long-term harm by being held apart from their parents." Juvenile Care Monitor Report, November 13, 2023 at 23 [Dkt. 1372]. Yet CBP is increasingly returning to its prior practices of forcing children to endure the trauma of imprisonment without the certainty that their siblings and parents are safe and nearby.

6

Among the eleven stations the Juvenile Coordinator visited, seven did not have hand soap or sanitizer in the hold rooms. May 4 CBP Rep. at 12. This represents a significant step backwards, particularly because this violation appeared to have been corrected under the JCM's watch in the RGV and El Paso Sectors: "Recent site visits have found that toilet areas have been generally clean and wash basins were supplied with soap." Final Juvenile Care Monitor Report, June 18, 2025 at 8 [Dkt. 1578]. Disturbingly, in at least one facility, there are not even showers and the report states only that "a paper shower was provided." May 4 CBP Rep. at 13. Whatever a "paper shower" may mean, it is not a shower. Thus, the report reveals that CBP is no longer meeting the basic, long-settled hygiene requirements of the FSA in a majority of CBP stations inspected by the JC.

Further, Defendants report numerous failures to properly document administration of medication, medical information, medical encounters, and enhanced medical monitoring. May 4 CBP Rep. at 7. This raises serious concerns because temporary detention before release or transfer to an FRC poses critical medical risks, which the JCM recognized increase significantly with each day a child spends in CBP custody, especially if that child has medical needs. Juvenile Care Monitor Report, July 18, 2023 at 42 [Dkt. 1352] ("The most effective, immediate step to prevent adverse child outcomes in CBP custody is to reduce the clinical burden on the CBP medical system by expediting the transfer of children at elevated medical risk out of CBP custody"); *Id*. at 43 ("Ultimately, the reduction of medical risk in CBP facilities will require the expedited transfer of children at increased medical risk out of CBP custody.").

As previously noted, before the expiration of his term, the JCM, Dr. Paul Wise, had long focused on the importance of "medical monitoring systems" as a primary way to "ensure that children do not suffer preventable medical harm or death while in custody." Status Report by Juvenile Care Monitor, January 21, 2025 at 3 [Dkt. 1540]. In response to these concerns, CBP had previously made improvements to the provision and

documentation of medical care that may have prevented unnecessary deaths. Final JCM Report, Dec. 2024 at 11-28 [Dkt. 1522]. It is deeply concerning that these improvements are now eroding rather than being implemented nationwide.

In sum, these violations underscore what this Court has already acknowledged: CBP is not an appropriate place for children. Under the FSA, CBP must expeditiously process children for release from its custody. They are not doing so.

## C. CBP Has Not Demonstrated the Ability to Monitor Itself

The May 4 Report asserts that "site visits demonstrated that CBP's" internal monitoring "is working as intended." May 4 CBP Rep. at 5. In light of the many violations Class Members report and Defendants themselves identify, Plaintiffs disagree. The number of violations in the eleven facilities inspected, paired with the consistency of violations over time, shows that CBP's internal monitoring is insufficient to protect class members. Plaintiffs are particularly concerned that time in custody is once again increasing and frustratingly, some of the progress the Independent Monitor previously made has been undone.

No monitor can make CBP a safe place for the prolonged detention of children. However, under the guidance of the Independent Monitor, CBP made progress in vital areas like medical care, the provision of adequate food and water, interaction with family members during detention, and time in custody. These improvements are now eroding and are at risk of being erased. May 18 Order at 4 (acknowledging "the numerous issues relating to conditions and confinement that the parties and Court have repeatedly discussed at recent status conferences."). Defendants have failed to "address the outstanding issues identified by the Court." *Id*. Defendants' continued noncompliance with the FSA's requirements that it maintain safe and sanitary facilities and expeditiously

8

process children for release from CBP custody warrants an order to show cause as to why there should not be reappointment of a monitor.[2]

## CONCLUSION

CBP conditions and time in custody remain noncompliant and warrant independent monitoring.


Dated: May 18, 2026                    */s/ Sarah Kahn*
                                       CENTER FOR HUMAN RIGHTS AND
                                       CONSTITUTIONAL LAW
                                       Carlos Holguín
                                       Bardis Vakili
                                       Sarah Kahn

                                       NATIONAL CENTER FOR YOUTH LAW
                                       Mishan Wroe
                                       Diane de Gramont
                                       Rebecca Wolozin

                                       CHILDREN'S RIGHTS
                                       Leecia Welch
                                       Eleanor Roberts

---

[2] In 2018, this Court relied on Fed. R. Civ. P. 53(a)(1)(B) to appoint a Flores monitor to assist with implementation of the FSA. Order Appointing Special Master/ Independent Monitor, Oct. 5, 2018 at 3 [Dkt. 494] ("Because of the complexity of the Flores Agreement, the Court's findings of non-compliance, and ongoing disputes between the parties relating to the implementation of the Flores Agreement, the Court finds that the appointment of a Special Master and Independent Monitor is warranted."). Defendants' ongoing noncompliance warrants issuance of "an Order to Show Cause why an independent monitor should not be reappointed." May 18 Order at 4.

9

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2026, I caused a copy of Plaintiffs' Response to Supplemental Juvenile Coordinator Reports and Data to be served to all counsel through the Court's CM/ECF system.


Dated: May 18, 2026                    */s/ Sarah Kahn*
                                       Sarah Kahn
                                       *One of the attorneys for Plaintiffs*

10