UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | June 15, 2026 |
|---|---|---|---|

| Title | ***Jenny Flores, et al. v. Todd Blanche, et al.*** | Page | **1** of 7 |
|---|---|---|---|

Present: The Honorable   DOLLY M. GEE, CHIEF UNITED STATES DISTRICT JUDGE

| DEREK DAVIS | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings:**   **IN CHAMBERS—ORDER RE JUNE 1, 2026 STATUS CONFERENCE; ORDER TO SHOW CAUSE WHY AN INDEPENDENT MONITOR AND SPECIAL MASTER SHOULD NOT BE APPOINTED TO OVERSEE CBP FACILITIES IN THE RGV, EL PASO, AND SAN DIEGO SECTORS, AND ICE'S DILLEY IMMIGRATION PROCESSING CENTER**

**I.
STATUS CONFERENCE**

On June 1, 2026, the Court held a video status conference regarding the Customs and Border Protection ("CBP") and Immigration and Customs Enforcement ("ICE") Juvenile Coordinators' May 2026 Supplemental Reports [Doc. ## 1767, 1768] and Plaintiffs' Responses thereto [Doc. ## 1779, 1780, 1787-1]. Having carefully reviewed and considered the Supplemental Reports, Plaintiffs' Responses, and the topics discussed at the status conference, the Court **ORDERS** the following:

1. The 2026 Annual Status Conference is **RESCHEDULED** from July 24, 2026 at 11:00 a.m. to **July 31, 2026** at **10:00 a.m**. The parties may request to appear by video conference if a personal appearance is unduly burdensome.

2. The CBP and ICE Juvenile Coordinators shall each file their 2026 Annual Reports regarding their respective agency's compliance with the *Flores* Settlement Agreement ("FSA") by **July 1, 2026**. *See* FSA at ¶¶ 28A, 30. Plaintiffs shall file their response to the Annual Reports by **July 15, 2026**. Defendants shall file their reply, if any, by **July 22, 2026**.

   a. Each Juvenile Coordinator shall include in their Annual Reports, *inter alia*: (i) the overall census of minors in the agency's facilities, including a monthly census from June 2025 to May 2026; (ii) the average time in CBP or ICE custody for minors currently in the agency's facilities and for minors who have

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk DD |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | June 15, 2026 |
|---|---|---|---|

| Title | *Jenny Flores, et al. v. Todd Blanche, et al.* | Page | **2** of 7 |
|---|---|---|---|

been released during the period from June 2025 to May 2026; and (iii) discussion of compliance with the terms of the FSA as to any minors detained by the agencies during the reporting period.

**II.**
**ORDER TO SHOW CAUSE WHY AN INDEPENDENT MONITOR AND SPECIAL MASTER SHOULD NOT BE APPOINTED TO OVERSEE CBP FACILITIES IN THE RGV, EL PASO, AND SAN DIEGO SECTORS, AND ICE'S DILLEY IMMIGRATION PROCESSING CENTER**

**A.       CBP Facilities in the RGV, El Paso, and San Diego Sectors**

On August 3, 2022, the Court issued an Order appointing Dr. Paul H. Wise as the Juvenile Care Monitor ("JCM"), consistent with the parties' Customs and Border Protection Settlement Agreement.  [Doc. ## 1254-1 ("CBP Settlement"), 1280 ("JCM Appointment Order").]   On January 19, 2023, the Court granted the JCM's request to appoint Andrea Sheridan Ordin, Esq. as the JCM's Legal Advisor.  [Doc. # 1320.]  The JCM was initially appointed to a single term of 16 months, but the term was extended several times either by the parties' stipulation or by the Court as a remedial measure.

On August 15, 2025, the Court granted in part and denied in part Plaintiffs' Motion to Enforce.  [Doc. # 1638 ("August 15, 2025 MTE Order").]   In relevant part, Plaintiffs sought appointment of an Independent Monitor who would monitor compliance in all CBP sectors, including by "validating data," "monitoring time in custody," and "monitoring and providing guidance on CBP's systems for tracking [time in custody] and expeditiously processing minors for release or transfer."  [Doc. # 1575-1 at ¶ 5.]   The Court denied Plaintiffs' request for re-appointment of a monitor, without prejudice, and informed the parties that it may reconsider the request depending on the contents of the forthcoming Juvenile Coordinators' supplemental reports. August 15, 2025 MTE Order at 13.[1]  With respect to time in custody ("TIC"), the Court noted that "[a]lthough Plaintiffs are correct that these extended times in custody ('TIC times') likely violate the FSA, and seem particularly unnecessary given the extremely low census, the CBP Juvenile Coordinator's most recent report shows that the average TIC times for family units have been going down over the past few months." *Id.* at 7.  The Court also wanted "the benefit of Defendants' explanations as to why they have been detaining class members for extended periods of time" so that it would "be better able to assess whether further enforcement of the Agreement is warranted, or whether Defendants' delays were reasonable due to operational concerns." *Id.* at 7–8.

---

[1] All page references herein are to page numbers inserted by the CM/ECF system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | June 15, 2026 |
|---|---|---|---|

| Title | ***Jenny Flores, et al. v. Todd Blanche, et al.*** | Page | **3** of **7** |
|---|---|---|---|

On September 26, 2025, the JCM's role sunsetted, consistent with the CBP Settlement. [Doc. # 1672.] Subsequently, the Court ordered the CBP Juvenile Coordinator to file supplemental reports providing: (1) a census of minors held in CBP or United States Border Patrol facilities for over 72 hours; (2) details regarding any issues that affected the minors' length of time in custody; and (3) details regarding any deficiencies found in CBP's conditions of confinement. [*See* Doc. ## 1672 (Sept. 26, 2025 Order), 1714 (Dec. 15, 2025 Order), 1755 (Apr. 3, 2026 Order).] Accordingly, the CBP Juvenile Coordinator filed supplemental reports on December 1, 2025 [Doc. # 1692-1], March 13, 2026 [Doc. # 1735-1], and May 4, 2026 [Doc. # 1767-1]. Plaintiffs filed responses to each of the supplemental reports. [*See* Doc. ## 1707, 1747, 1780.]

While Defendants consistently maintain that CBP is in substantial compliance with the FSA and CBP Settlement, Plaintiffs point to an alarming number of minors subject to prolonged detention in CBP facilities and backsliding conditions of confinement. Based on census data provided in the CBP JC's supplemental reports, the average TIC for minors in CBP custody for over 72 hours has increased since August 2025.[2] For example, in August 2025, the average TIC was 112.93 hours, whereas in March 2026, the average TIC was 130.46 hours. [Doc. ## 1692-1 at 2, 1767-1 at 2.] While in January 2026 there were 58 minors held in CBP custody for over 72 hours, by March 2026, that number jumped to 155 minors. [*See* Doc. ## 1735-3, 1767-3.] These numbers are unacceptable.

Moreover, the Court has not been satisfied, so far, by Defendants' explanations as to why they have been detaining class members for extended periods of time. Defendants assert that in "the majority of cases" where minors are held for over 72 hours, the reasons for delay have to do with awaiting transportation, travel documents, or for other agencies, such as ICE, to take custody. [*See* Doc. # 1767-1 at 2.] Defendants also justify delays in situations where an individual or family makes an asylum claim of fear and awaits appropriate screening. *Id.* These generalized circumstances are not unique, nor do they appear to reasonably justify prolonged detention in CBP facilities.[3]

---

[2] The Court notes that the parties have previously disagreed about the accuracy of CBP's TIC data due to shifting and/or erroneous data parameters used to produce the data. *See* June 18, 2025 Final JCM Report at 7 ("Over the past several months, questions have arisen regarding the accuracy of the CBP TIC time reports.") [Doc. # 1578]; Declaration of Diane de Gramont at ¶¶ 5–19 (detailing persistent issues in monthly CBP data resulting in a significant undercounting of class members in CBP custody) [Doc. # 1575-4].

[3] As the Court pointed out in its August 15, 2025 MTE Order, "CBP facilities, by design, are not suitable for minors for long periods of time. Indeed, both sides agree that CBP facilities and POEs [ports of entry] are 'generally designed to be temporary, short-term holding facilities.'" August 15, 2025 MTE Order at 13.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | June 15, 2026 |
|---|---|---|---|

| Title | ***Jenny Flores, et al. v. Todd Blanche, et al.*** | Page | **4** of **7** |
|---|---|---|---|

In addition to the worrisome TIC data, the parties fundamentally disagree on issues pertaining to conditions of confinement at CBP stations. The issues identified in the Court's August 15, 2025 MTE Order (e.g., cold temperatures, inadequate sleeping conditions, lack of soap), have continued to materialize in Plaintiffs' responses to the CBP Juvenile Coordinator's supplemental reports. *See*, *e.g.*, Declaration of J.E.R.V. ("J.E.R.V. Decl.") at ¶¶ 9, 13 [Doc. # 1707-2]; Declaration of L.R.B. at ¶¶ 16, 18–19 [Doc. # 1707-3]; Declaration of O.C.P. ("O.C.P. Decl.") at ¶¶ 22, 32–34 [Doc. # 1707-4]; Declaration of T.H.H. ("T.H.H. Decl.") at ¶¶ 8, 17, 20, 23 [Doc. # 1707-5]; Declaration of V.O. ("V.O. Decl.") at ¶¶ 24 [Doc. # 1747-1]. Plaintiffs also continue to raise issues pertaining to inadequate medical care, family separation, lack of access to the outdoors, and exposed toilets. *See*, *e.g.*, Declaration of Sarah Kahn at ¶ 8 [Doc. # 1707-1]; J.E.R.V. Decl. at ¶ 16; O.C.P. Decl. at ¶¶ 22, 25–26, 30; T.H.H. Decl. at ¶¶ 21, 26; V.O. Decl. at ¶ 21. Since the parties are unable to come to a consensus about basics facts on the ground, it appears even more important to have an Independent Monitor/Special Master to objectively monitor these issues.

As Plaintiffs point out, the CBP Juvenile Coordinator's most recent May 4, 2026 Supplemental Report, itself, identifies areas of noncompliance that suggest a backsliding of previous progress made under the JCM. [*See* Doc. # 1780 at 7–10.] For example, the May 4 Supplemental Report notes, "[a]t 3 of 11 facilities, there were no tender-aged meals for toddlers." [Doc. # 1767-1 at 8.] The Juvenile Coordinator reported several deficiencies in documentation of children's medical treatments, medical encounters, administered medications, and enhanced medical monitoring. *Id.* at 7. The Juvenile Coordinator also reported that numerous stations lacked hand soap or hand sanitizer in the holding areas. *Id.* at 12.

Defendants are **ORDERED TO SHOW CAUSE** ("OSC") why the Court should not appoint an Independent Monitor and Special Master to monitor CBP facilities in the Rio Grande Valley, El Paso, and San Diego Sectors under similar terms as previously ordered in the Court's August 3, 2022 JCM Appointment Order. [*See* Doc. # 1280.]

**B.      ICE Facility:  Dilley Immigration Processing Center**

In April 2025, ICE resumed its practice of detaining families at the Dilley Immigration Processing Center ("Dilley").[4] [Doc. # 1599-2 at 2.] Since then, the Court has held five status conferences and the ICE Juvenile Coordinator has filed five reports/supplemental reports. [*See* Doc. ## 1599-2, 1648-4, 1692-4, 1736-1, 1768-1.] The Court ordered the ICE Juvenile

---

[4] Also known as the South Texas Family Residential Center.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | June 15, 2026 |
|---|---|---|---|

| Title | ***Jenny Flores, et al. v. Todd Blanche, et al.*** | Page | **5** of 7 |
|---|---|---|---|

Coordinator to provide detailed explanations as to the reason(s) for the prolonged detention of minors in excess of 20 days, starting with the data from August 2025. [*See* Doc. # 1672 at 2.] Plaintiffs filed responses to each of the Juvenile Coordinator's reports, along with dozens of declarations alleging violations of the FSA. [*See* Doc. ## 1601, 1656, 1706, 1748, 1779.] On December 15, 2025, the Court ordered the parties to conduct mediation discussions with the assistance of former Special Master/Independent Monitor, Andrea Ordin, and former JCM, Dr. Paul Wise. [Doc. # 1714.] The Court ordered the parties to discuss issues relating to conditions of confinement and notice of rights that were potentially the subject of Plaintiffs' proposed motion to enforce. *Id.* The parties' mediation efforts have focused on conditions at Dilley. [Doc. # 1792 at 2.]

While Plaintiffs allege a litany of conditions violations, the Court focuses this OSC on three issues that have persisted during the Court's recent oversight: (1) TIC; (2) class members' access to adequate medical care; and (3) class members' notice of *Flores* rights.

First is class members' time in custody at Dilley. Between August 2025 and January 2026, the number of class members detained for over 20 days increased.[5] In the months of August and September 2025, approximately 400 minors were detained for more than 20 days. [Doc. # 1692-4 at 2.] During December 2025 and January 2026, the number of minors detained for more than 20 days increased to approximately 595. [*See* Doc. # 1748-3 at ¶ 6 (analyzing census data filed at Doc. ## 1736-2, 1736-3).] In February and March 2026, there was a slight decrease, with 567 minors held for more than 20 days.[6] [Doc. # 1768-1 at 3–6.] The ICE Juvenile Coordinator's most recent May 4, 2026 supplemental report included an analysis of the average/median TIC for the months of February and March 2026.[7] [Doc. # 1768-1 at 3–5.] The average length of stay at Dilley ("FLOS") in February and March 2026 was around 56 days, and the median was around 44 days.[8] *Id.* Similar to CBP, ICE's justifications for delay largely surround transportation

---

[5] The Court notes that due to the government shutdown in late 2025, the Court did not order census data for the months of October 2025 and November 2025 to be filed with the Court.

[6] Notably, there was a sharp decrease in the number of minors held for over 20 days between February 2026 and March 2026, but still with a significant number detained well above the 20-day period which the Government previously requested for periods of influx. [Doc. # 1768-1 at 6 (identifying 426 minors held for over 20 days in February 2026, and 141 minors held for over 20 days in March 2026).]

[7] The Court has not had the benefit of seeing the average/median TICs for the census data from August 2025 to January 2026 because such information was not provided in the Juvenile Coordinator's accompanying reports.

[8] For reference, back in June 2025, the reported average length of stay for minors at Dilley was 14 days. [Doc. 1599-2 at 3.]

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk DD |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | June 15, 2026 |
|---|---|---|---|

| Title | *Jenny Flores, et al. v. Todd Blanche, et al.* | Page | **6** of **7** |
|---|---|---|---|

logistics/delays, coordination issues with other agencies, awaiting documentation, and immigration case-related events. [*See*, *e.g.*, Doc. ## 1692-4 at 2, 1768-1 at 3–6.]

In the parties' June 5, 2026 Joint Status Report, both sides acknowledged that "the number of class members at Dilley and the average time in custody have decreased." [Doc. # 1792 at 2.] While the Court is pleased to hear of progress, too many class members still spend prolonged periods of time at Dilley. Plaintiffs' recent analysis of ICE's census data showed 63 minors held at Dilley for more than 90 days in February 2026, and 17 minors held for more than 90 days in March 2026. [Doc. # 1779 at 8.] Furthermore, Class Counsel reported meeting with families who have been detained for lengths of time such as 323 days, 143 days, and 135 days.[9] *Id.* at 16.

Second, Plaintiffs have repeatedly raised issues pertaining to class members' access to adequate medical care at Dilley. Although ICE claims to maintain a robust infrastructure for medical and behavioral services, *see* Doc. # 1736-1 at 8–13, such claims are contradicted by class members' reported experiences. Since Dilley's reopening, families detained there have raised concerns about inadequate medical care on at least 573 occasions to the organization, Refugee and Immigrant Center for Education and Legal Services ("RAICES"). *See* Declaration of Javier Hidalgo at ¶ 30 [Doc. # 1706-2] (noting 360 concerns received as of December 2025); Declaration of Rodolfo C. Altillo at ¶ 17 [Doc. # 1779-13] (noting 213 concerns received between March 2026 and May 2026). The categories of concerns presented through voluminous declarations include delays in medical treatment, challenges in obtaining medication, medical complaints being ignored or minimized by Dilley staff, and lack of appropriate care for minors with special needs. [*See* Doc. ## 1706 at 15–18, 1748 at 14–17, 1779 at 17–19.] Meanwhile, the ICE Juvenile Coordinator's most recent May 4, 2026 supplemental report concluded that Dilley's "medical and medically related operations remained functional and compliant with applicable standards." [Doc. # 1768-1 at 22.] In the face of stark differences between Defendants' and Plaintiffs' reporting regarding medical care, it appears to the Court that independent oversight in this area is warranted.[10]

---

[9] At the June 1, 2026 status conference, the ICE Juvenile Coordinator explained some extenuating circumstances for the family units with the highest lengths of stay. It would be helpful to the Court to have those types of specific reasons provided in the accompanying report, and for Defendants to address such circumstances in response to this OSC.

[10] Defendants have allowed Dr. Wise to conduct four days of site visits at Dilley between March and April 2026. [Doc. # 1792 at 2.] Defendants report having productive discussions with Dr. Wise and are amenable to continued mediation on medical issues. *Id.* at 3.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 85-4544-DMG (AGRx)** | Date | June 15, 2026 |
|---|---|---|---|

| Title | *Jenny Flores, et al. v. Todd Blanche, et al.* | Page | **7** of 7 |
|---|---|---|---|

A third issue persistently raised by Plaintiffs is that class members are not being notified of their rights under *Flores*.[11] Defendants maintain that all Dilley residents receive, *inter alia*, the following: (1) a "Brief Explanation of Your Rights" video during orientation; (2) Form I-770 Notice of Rights and Request for Disposition; and (3) "The FSA Exhibit 6 Notice of Rights." [Doc. # 1768-1 at 16–17; *see also* Doc. ## 1648-4 at 6, 1692-4 at 32–34, 1736-1 at 36–37.] Plaintiffs maintain, however, that none of these resources, if provided, adequately inform class members of their *Flores* rights. [Doc. # 1779 at 20.] Class Counsel attests that the "Brief Explanation of Your Rights" video makes no mention of *Flores* or *Flores* rights. Declaration of Leecia Welch ISO Plaintiff's Resp. to May 4, 2026 ICE JC Report ("Welch Decl.") at ¶ 8 [Doc. # 1779-2]. The Form I-770 addresses the "right to use the telephone," "the right to be represented by a lawyer," and the "right to a hearing before a judge." [*See* Doc. # 1768-8.] Lastly, Exhibit 6 of the FSA only mentions the right to call a lawyer and to seek judicial review. Welch Decl. at ¶ 8. Perhaps most troubling is that, of the 165 families Class Counsel has spoken to since May 2025, none recall learning about their child's *Flores* rights. *Id.* at ¶ 9.

Defendants are **ORDERED TO SHOW CAUSE** ("OSC") why the Court should not appoint an Independent Monitor and Special Master to monitor Dilley, with respect to time in custody (including the methodology for calculating time in custody), access to adequate medical care, and notice of rights.

**C.    Conclusion**

The Court attaches hereto a draft appointment order detailing the scope of the Independent Monitor's and Special Master's role. Defendants shall file their response to the OSC by **June 25, 2026**. Plaintiffs may file a response to Defendants' response to the OSC by **July 6, 2026**. The parties shall also address any objections or proposed modifications to the draft appointment order in their responses to this OSC.

**IT IS SO ORDERED.**

---

[11] The parties have met and conferred regarding the issue of notice of rights. On April 15, 2026, Plaintiffs provided Defendants with a proposed written notice of *Flores* rights, and as of June 5, 2026, Defendants have not responded to their proposal. [Doc. # 1792 at 2.] Defendants "are still considering Plaintiffs' proposal and their own position or alternate proposal" and remain "amenable to continuing mediation on the notice-of-rights." *Id.* at 2–3.

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY LISETTE FLORES., *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>TODD BLANCHE, Acting Attorney General of the United States, *et al.*,<br><br>        Defendants. | Case No. CV 85-4544-DMG (AGRx)<br><br>**<u>DRAFT</u> ORDER APPOINTING INDEPENDENT MONITOR AND SPECIAL MASTER/LEGAL ADVISOR** |

The Court hereby **APPOINTS** Dr. Paul H. Wise as the Independent Monitor ("IM"), and Andrea Sheridan Ordin, Esq., as the Special Master/Legal Advisor ("SM"), with all of the authorities detailed herein.  The IM and SM shall oversee conditions specified herein at (1) the Rio Grande Valley ("RGV"), El Paso, and San Diego Sectors of Customs and Border Protection ("CBP"); and (2) the Dilley Immigration Processing Center ("Dilley").

**Monitoring Protocol:**  The IM and SM will prepare a monitoring protocol which will be adhered to by the IM, SM, and all Parties.

**Monitoring Time in Custody as to CBP and ICE:**  The IM and SM shall be responsible for monitoring time in custody for compliance with the *Flores* Settlement Agreement ("FSA") and the 2022 CBP Settlement Agreement ("CBP Settlement") at the RGV, El Paso, and San Diego Sectors of CBP ("the subject CBP sectors").  The IM and SM shall also be responsible for monitoring time in custody for compliance with the FSA for class members detained at Dilley.  The IM and SM shall validate data pertaining to time in custody and monitor CBP and ICE's systems for tracking and calculating time in custody.  The IM and SM should verify the monthly data provided by Defendants to Plaintiffs' Counsel under Paragraph 28A and 29 of the FSA.

**Monitoring Conditions of Confinement at Subject CBP Sectors:**  The IM and SM shall be responsible for monitoring conditions of confinement for compliance with the FSA and CBP Settlement at each of the subject CBP Sectors, with particular attention to age-appropriate food/drink, sanitation, sleep conditions, ambient temperature, and access to adequate medical care, as well as the provision of notice of *Flores* rights to class members.

**Monitoring at Dilley:**  In addition to monitoring class members' time in custody at Dilley, the IM and SM shall monitor ICE's FSA compliance with respect to:  (1) adequate access to medical care; and (2) provision of notice of *Flores* rights.  The IM and SM shall be responsible for assisting the Parties in finalizing a notice of *Flores* rights and the manner in which such notice should be disseminated to class members at Dilley.

**Access to Information Necessary for Monitoring:**  The IM and SM will be subject to the Protective Order Governing the Handling of Confidential Material Related to Oversight by Special Master/Independent Monitor ("Protective Order") [Doc. # 513].

Subject to that Protective Order, the IM and SM will have access to CBP and ICE documents and records, may conduct announced and unannounced visits to Dilley and the U.S. Border Patrol facilities in the RGV, El Paso, and San Diego Sectors, may conduct interviews with class members and accompanying adult family members, and may conduct interviews with CBP and ICE employees and the employees of its contractors.

The IM and SM may inspect Dilley and the CBP facilities in the RGV, El Paso, and San Diego Sectors, and may also request data from CBP and ICE in order to determine whether they are in compliance with the terms of the FSA and CBP Settlement.

The IM and SM may, in their discretion, provide Class Counsel with documents or information provided by CBP or ICE, to the extent that they determine that such sharing would facilitate the performance of their duties in monitoring compliance with the terms of the Agreement.

**Reporting:**  The IM and SM will prepare, at a minimum, quarterly reports for the Court and provide them to the Parties.  The IM and SM will file these reports with the Court.  If these reports are deemed confidential for compelling reasons by the IM, SM, or either Party, the Parties will propose to the Court that they be filed under seal. Each report shall be accompanied by a summary without confidential information that will be filed on the public docket.  Either Party may file objections to or comments to the reports.  Any objections or comments regarding confidential matters shall be filed under seal.

//

//

//

**Notification of Noncompliance:** The IM and SM will promptly notify: (1) ICE and Defendants' Counsel of any observed failure to substantially comply with the FSA with regard to time in custody, access to adequate medical care, and notice of rights at Dilley; and  (2) CBP and Defendants' Counsel of any observed failure to substantially comply with the FSA and/or CBP Agreement within the RGV, El Paso, and San Diego Sectors.  If the situation is not timely remedied, the IM and SM shall promptly notify the CBP Juvenile Coordinator and/or ICE Juvenile Coordinator, and Class and Defendants' Counsel of any observed failure to substantially comply with the Agreement.

If the IM and/or SM identifies any concerns or issues related to a suspected failure to substantially comply with the FSA or CBP Settlement beyond the areas of monitoring detailed herein, they may notify the Juvenile Coordinators and Parties.  The Juvenile Coordinators will review the concerns with the IM and SM.  The IM and SM may include any such concerns or issues in their quarterly reports to the Court.

**Fees and Expenses:** The IM and SM shall be entitled to reimbursement from Defendants of reasonable fees and expenses.  These fees and expenses will be subject to a cap of $620,000 annually, inclusive of travel expenses.  On a monthly basis, the IM and SM shall provide CBP and ICE with a detailed record of hours billed and expenses incurred in the preceding month.

If CBP and/or ICE disputes a bill from the IM and SM, it shall have 15 days to review and submit objections to the IM and SM or to request additional documentation from the IM and SM.  If any dispute over the bill is not resolved within 30 days, CBP and/or ICE will submit the dispute to the Court for resolution.

**Monitoring Assistance:**  The IM and SM may identify proposed aides and/or medical professionals unaffiliated with CBP, ICE, or  Plaintiffs, and seek Court approval for the hiring of such aides and/or medical professionals to assist the IM and SM in all aspects of their monitoring work.  The Parties must agree to any proposed aides or medical professionals.  Such aides or medical professionals, acting under the supervision of the IM and SM, may inspect the facilities and records, and interview

CBP/ICE employees, regarding compliance with the Agreement.  These aides and/or medical professionals will be paid for their services, and these payments will be subject to the annual cap designated above.

**IT IS SO ORDERED.**

DATED:  June 15, 2026                    _____

DOLLY M. GEE
CHIEF UNITED STATES DISTRICT JUDGE