# EXHIBIT 3

**DECLARATION OF ELORA MUKHERJEE**

I, Elora Mukherjee, swear under penalty of perjury, that the following information is true and correct to the best of my knowledge and abilities:

1. My name is Elora Mukherjee. I am the Jerome L. Greene Clinical Professor of Law at Columbia Law School. I have served as the founding Director of the Immigrants' Rights Clinic at Columbia Law School since 2014.  I have been licensed in the State of New York since 2006 and the State of New Jersey since 2005.

2. Since January 2007, I have provided pro bono representation to hundreds of children and families in immigration detention facilities, including those detained at the secure federal facilities in Dilley, Karnes City, and Taylor, Texas and in Berks, Pennsylvania.

3. Since 2025, I have provided pro bono representation to more than 90 children and their parents who have been detained at or are currently detained at the family detention facility in Dilley, Texas.

4. From March 1, 2026, to date, I have provided pro bono representation to 40 children and their parents who have been detained or are currently detained at the family detention center in Dilley, Texas.

5. Through my recent work at Dilley, and through my years of experiences working with children and families in detention, I have become familiar with the *Flores* Settlement Agreement and related judicial orders. I am also familiar with U.S. Immigration and Customs Enforcement's ("ICE") Family Residential Standards ("FRS").

6. I have read the ICE Juvenile Coordinator's report and attachments filed July 1, 2026. ECF Nos. 1802-1 ID#: 64505 & 1802-2 ID#: 64529.

7.  The facts set forth are personally known to me and, if called as a witness, I could and would testify competently thereto under oath.

**Exceedingly long periods of detention**

8.  From March 1, 2026 to date, I have been representing children and families who have been detained at Dilley for extremely long periods of time.

9.  Based on my experiences with children and families detained at Dilley from March 1, 2026 onward, I know that ICE is not releasing children without unnecessary delay.

10. Based on my experiences with children and families detained at Dilley from March 1, 2026 onward, I have not seen consistent evidence that ICE is making and documenting prompt and continuous efforts to releasing children.

11. Below are summaries of the experiences of several families who I have been representing from March 1, 2026 to date.

12. My one-year-old client has been in federal immigration custody since about May 23, 2026. This child remains detained at Dilley to this day, for a total of 49 days and counting. This child has experienced severe diarrhea and diaper rash in detention, and has had limited access to age-appropriate food, formula, and bottled water. I have sought this family's release on humanitarian parole and have sought to facilitate an opportunity for the family to file refugee claims with the Canadian Border Services Agency. ICE denied the parole request, and ICE did not respond to my request to make the family available to meet with the Canadian Border Services Agency. I have no information about when ICE may release this child and their parents. To the best of my recollection, ICE never told me that this family had been categorized as a "national security risk" or a "failure to comply" case.

13. My ten-year-old client was in federal immigration custody from April 6, 2026, until today, July 11, 2026, for a total of 96 days. This child needs regular monitoring by pediatric cardiologists for a congenital heart condition. In detention, this child hardly ate. He felt fearful, anxious, withdrawn, and depressed. At night at Dilley, this child was too scared to sleep alone and needed their parent to be with them. At Dilley, this child wet their pants during the day and night. While detained, this child experienced diarrhea, stomach pain, and eczema flare-ups. Every day at Dilley, this child begged to leave the detention center. I filed two humanitarian parole requests for this child and their parent in June 2026. ICE denied these parole requests. On June 22, 2026, I reached out to the U.S. Attorney's Office for the Western District of Texas via email in an effort to seek the release of this family without the need for federal litigation. I have not received a response to my email to date. On June 24, 2026, I filed a federal habeas petition for this child and their parent. The habeas petition has been pending through today. Today, ICE released this child and their parent from Dilley without communicating with me, even though I had entered appearances as their counsel of record. To the best of my recollection, ICE never told me that this family had been categorized as a "national security risk" or a "failure to comply" case.

14. My four-year-old client was in federal immigration custody from May 5, 2026, through today, July 11, 2026, for a total of 67 days. This child has extremely serious special needs. In detention, this child hardly ate and their physical and mental health were deteriorating. I filed three humanitarian parole requests for this child and their parent. Today, ICE released this child and their parent from Dilley without communicating with me, even though I had entered appearances as their counsel of record. To the best of my

3

recollection, ICE never told me that this family had been categorized as a "national security risk" or a "failure to comply" case.

15. My three-year-old client was in federal immigration custody from about December 22, 2025, to June 10, 2026, a total of about 170 days. This child developed breathing difficulties in detention and regressed behaviorally by, for example, wetting the bed. I filed multiple requests for the release of this child and their parent in April 2026. On June 10, 2026, ICE released this child and their parent from Dilley without communicating with me, even though I had entered appearances as their counsel of record. To the best of my recollection, ICE never told me that this family had been categorized as a "national security risk" or a "failure to comply" case.

16. My sixteen-year-old client was in federal immigration custody from about January 15, 2026, to June 13, 2026, a total of about 149 days. I sought the release of this child and their parent on humanitarian parole. ICE denied the parole request on April 13, 2026. Subsequently, this child and their parent pursued a federal habeas petition, which was pending at the time of their release. On June 13, 2026, ICE released this child and their parent from Dilley without communicating with me, even though I had entered appearances as their counsel of record. To the best of my recollection, ICE never told me that this family had been categorized as a "national security risk" or a "failure to comply" case.

17. My clients eleven-year-old M. and twelve-year-old G. were detained at Dilley from about February 17, 2026, to June 11, 2026, a total of about 114 days. I filed four humanitarian parole requests for this family from April to June 2026. On June 11, 2026, ICE released M., G., and their parents from Dilley without communicating with me, even though I had

entered appearances as their counsel of record. To the best of my recollection, ICE never told me that this family had been categorized as a "national security risk" or a "failure to comply" case. Prior to their detention, M., G., and their parents had been building lives in Los Angeles for about four years as bona fide asylum seekers. M., a math-whiz, won a "perfect attendance" award at her school in Los Angeles. G. loved playing soccer, but felt, in his words, like "a bird in a cage" at Dilley. Both children's mental and physical health deteriorated in detention. G. experienced blood in his stools for months. Both children had stomach pain and vomiting after drinking the water at Dilley. Both children were not getting sufficient vegetarian food. At times, including throughout May 2026, M. and G. maintain vegetarian diets for religious reasons, and they did not have access to sufficient vegetarian food at Dilley. Both children were unable to sleep properly at night because the lights are on 24/7 and guards make loud noises throughout the night. They were concerned that they were not receiving appropriate medical care. M. and G.'s mother's health also suffered at Dilley, and M. and G. consistently stayed near her to help her with daily tasks and serve as her caretaker. The family has a motion pending before the Board of Immigration Appeals. M., G., and their parents have spoken publicly about their experiences in detention.[1]

18. My nine-year-old client K. was detained at Dilley for about 85 days. To the best of my recollection, ICE never told me that this family had been categorized as a "national security risk" or a "failure to comply" case. K. and his mother entered the United States

---

[1] Sarah Stillman, *The Return of Family Detention*, The New Yorker (Apr. 13, 2026), https://www.newyorker.com/magazine/2026/04/20/the-return-of-family-detention; Maanvi Singh, *She celebrated her 11th birthday in ICE detention. Her wish: that her family could go home*, The Guardian (Apr. 27, 2026), https://www.theguardian.com/us-news/2026/apr/27/texas-ice-family-detention.

lawfully and were arrested when they were on their way to refill prescription medication for K. K. has severe autism. He could not understand why he was detained at Dilley for weeks on end. He grew increasingly disoriented and distressed at Dilley, hitting himself, crying through the night, and begging to return to his home and school in Louisiana. He could not stand the lights being on 24/7 or the noise of patrolling guards at night. K. was finally released on March 6, 2026, after I filed a parole request for him. K.'s mother has spoken publicly about her family's experiences in detention.[2]

19. My clients fourteen-year-old E.A. and her sixteen-year-old brother J.A. were detained at Dilley for about 126 days. To the best of my recollection, ICE never told me that this family had been categorized as a "national security risk" or a "failure to comply" case. Notably, the U.S. Court of Appeals for the First Circuit stayed this family's removal in February 2026. Prior to their detention, E.A. and J.A. had been building lives in Portland, Maine for more than three years as bona fide asylum seekers. E.A. was a stellar student, and J.A. was both a great student and a star soccer player. During their time in detention, E.A. and J.A. suffered from deteriorating mental health and physical health, they were unable to sleep properly because the lights were on 24/7, and they were unable to obtain appropriate medical care. E.A. and J.A. were devastated on or about November 12, 2026, when federal immigration authorities separated them from their nineteen-year-old sister

---

[2] Mike Hixenbaugh, *'This place broke something in us': Kids languish in ICE detention long past 20-day court limit*, NBC News (Mar. 13, 2026), https://www.nbcnews.com/news/us-news/children-languish-ice-detention-long-20-day-court-limit-rcna262525; *Un niño con autism severo estuvo detenido por ICE cuatro veces más del tiempo permitido (A boy with severe autism was detained by ICE for four times longer than permitted)*, Noticias Telemundo (Mar. 13, 2026), https://www.telemundo.com/noticias/edicion-noticias-telemundo/inmigracion/video/un-nino-con-autismo-severo-estuvo-detenido-por-ice-cuatro-veces-mas-del-tiempo-permitido-tmvo13145416.

Olivia. E.A. and J.A. did not know where their beloved sister was for weeks. Later, Olivia was also detained at Dilley. E.A. and J.A. were released from Dilley on March 18, 2026, after I filed a parole request for them. I also filed a total of four parole requests for Olivia. When the parole requests were unsuccessful, I filed federal habeas litigation for Olivia. Olivia was released from Dilley on May 8, 2026, after the U.S. District Court for the Western District of Texas granted her federal habeas petition. Oliva, J.A., E.A., and their mother have spoken publicly about their experiences in detention.[3]

20. My fifteen-year-old client was detained at Dilley for about 151 days. To the best of my recollection, ICE never told me that this family had been categorized as a "national security risk" or a "failure to comply" case. This family was released into the United States on March 20, 2026, after I filed three parole requests for them.

21. My clients, a seven-year old and their twelve-year old sibling, were in federal immigration custody for about 100 days, including about 99 days at Dilley. To the best of my recollection, ICE never told me that this family had been categorized as a "national security risk" or a "failure to comply" case. I filed two parole requests for this family, but neither was granted. The family was deported on March 14, 2026.

---

[3] Daniella Silva, *A teen and her family fled torture in Congo to resettle in Maine, but then ICE showed up*, NBC News (Apr. 25, 2026), https://www.nbcnews.com/news/us-news/olivia-andre-ice-detention-fled-congo-to-maine-dilley-immigration-rcna341003; Daniella Silva, *Teen says judge's order for her release from immigration detention had her family screaming with joy*, NBC News (May 7, 2026; updated May 8, 2026), https://www.nbcnews.com/news/us-news/olivia-andre-release-dilley-immigration-ice-detention-maine-rcna344006; *Exclusive: Teen asylum seeker detained by ICE for nearly 6 months speaks out*, MS Now (May 10, 2026), https://www.nbcnews.com/news/us-news/olivia-andre-release-dilley-immigration-ice-detention-maine-rcna344006; *Olivia comes home: Teen reunites with family after ICE detainment in Dilley, Texas*, ABC News (May 11, 2026), https://abcnews.com/video/132857770/; *Children 'held like criminals' inside ICE detention center*, CBS News (May 31, 2026), https://www.cbsnews.com/video/children-held-like-criminals-inside-ice-detention-center/.

22. My two-year-old client was in federal immigration custody for about 136 days, including about 134 days at Dilley. To the best of my recollection, ICE never told me that this family had been categorized as a "national security risk" or a "failure to comply" case. The two-year old often refused to eat in detention. The water available at Dilley caused the child to suffer from diarrhea. Medical records from Dilley recorded the child as consistently being in the bottom 1 percentile in weight based on age and height ("weight-for-length ratio"). The child's weight-for-length ratio even dropped to the zero percentile, which qualifies as "severe malnutrition." I filed a parole request and a request for discretionary notices to appear for this family, but neither was granted. The family was deported on March 25, 2025.

23. Other children and families have suffered during their prolonged detention at Dilley in recent months, including some children and families who have spoken publicly about their experiences.[4]

**Ongoing medical concerns and failure to accommodate special needs**

24. I remain deeply concerned about the medical care and mental health care offered at Dilley.

25. I remain deeply concerned that children's special needs are not adequately supported, met, or treated while they are detained at Dilley.

---

[4] *See, e.g.*, *The Families of Dilley ICE Detention: 'Mama, I Don't Want to Live,'* NBC News (May 28, 2026), https://www.nbcnews.com/video/-it-s-simply-impossible-to-be-a-good-parent-there-264024133744; *America's Youngest Detainees: ICE has detained over 500 babies and toddlers under Trump*, MS Now (June 9, 2026), https://www.youtube.com/watch?v=mnlYYD-R2zU; *Las voces de Dilley (The voices of Dilley)*, Univision (May 29, 2026), https://www.youtube.com/watch?v=LcuQ9Y4QPNg&vl=en-US.

26. Children and their families consistently report that they are not receiving appropriate medical care and that children's special needs are not appropriately accommodated or supported.

27. Nearly all of my clients who have been detained at Dilley from March 1, 2026 to date have expressed concern about the medical care provided to them at Dilley.

28. My one-year-old client, currently detained at Dilley, has faced serious medical challenges at Dilley, as described above. This child's parents are extremely concerned about their child's deterioration at Dilley.

29. My ten-year-old client with a congenital heart condition regressed behaviorally at Dilley, as described above. This child's mental and physical health deteriorated in detention, as described above. For months, this child's parent was extremely concerned that this child was not getting appropriate medical care or mental health care at Dilley.

30. My four-year-old client with extremely serious special needs suffered and deteriorated in detention and at Dilley, both in terms of their physical and mental health. For months, this child's parent cried and sobbed each day and repeatedly because this parent was so worried that their child was not receiving appropriate medical or mental health care at Dilley.

31. My clients—a parent and two-year-old child—were kept in medical isolation for months at Dilley. The parent had been diagnosed with tuberculosis.

32. My two-year-old client, K., refused to eat solid food for twelve days while in federal immigration custody. According to his mother, he survived on only water and apple juice. K. and his mother are bona fide asylum seekers who built lives in California and complied with all their ICE check-in requirements and all requirements of the Intensive

9

Supervision Appearance Program (ISAP). They were released on April 1, 2026, after I filed two parole requests for them. His mother has talked publicly about their experiences in detention.[5]

33. My five-year-old nonverbal client, G., who has significant developmental delays, faced serious health problems in federal immigration custody. G. struggled to eat in detention and did not poop for nine days.  The laxatives and enemas provided at Dilley did not significantly improve his conditions. During attorney-client meetings via Zoom video calls with the family, I saw that G.'s stomach appeared visibly distended and uncomfortable. Prior to their detention, G. and his parents complied with all ICE check-in requirements, all ISAP check-in requirements, and were bona fide asylum seekers living in Texas for more than two years. G.'s parents have talked publicly about their experiences in detention.[6]

---

[5] Dara Kerr, *Two-year-old held by ICE sick and not getting adequate care, Democrat warns*, The Guardian (Mar. 30, 2026), https://www.theguardian.com/us-news/2026/mar/30/texas-ice-detention-facility; Pablo Manríquez, *The Toddler in the ICE Prison Who Wouldn't Eat*, Migrant Insider (Apr. 2, 2026); *Kaleth is back home safe*, Lidia Terrazas News (Apr. 3, 2026), https://www.instagram.com/reel/DWrWqG2id8A/; Anna Flagg, *et al.*, *25 Babies and Toddlers Are in ICE Custody on an Average Day*, The Marshall Project (June 9, 2026), https://www.themarshallproject.org/2026/06/09/babies-and-toddlers-in-ice-detention.
[6] Mike Hixenbaugh, *Children's entertainer Ms. Rachel has a new cause: Freeing kids from ICE detention*, NBC News (Mar. 21, 2026), https://www.nbcnews.com/news/us-news/ms-rachel-ice-detention-children-immigration-dilley-texas-center-rcna263786; Mike Hixenbaugh, *Nonverbal 5-year-old who met Ms. Rachel over Zoom is released from ICE detention*, NBC News (Mar. 24, 2026), https://www.nbcnews.com/news/us-news/ice-release-5-year-old-ms-rachel-zoom-dilley-texas-immigration-rcna264926; *Tras su liberación, los padres del niño Gael relatan el calvario que vivieron detenidos por ICE* (*Following their release, the parent of young Gael recount the ordeal they endured while detained by ICE*), Noticias Telemundo (Mar. 26, 2026), https://www.telemundo.com/noticias/noticias-telemundo-en-la-noche/inmigracion/video/tras-su-liberacion-los-padres-del-nino-gael-relatan-el-calvario-que-vivieron-detenidos-por-tmvo13154399; *"Nadie quiere ver eso para un hijo": Hablan los padres de Gael, niño con autismo que estuvo detenido en Dilley, Texas* (*"No one wants to see that happen to their child": The parents of Gael, a boy with autism who was detained in Dilley, Texas, speak out*), Univision (Mar. 25, 2026), https://www.univision.com/shows/noticiero-univision/nadie-quiere-ver-eso-

10

34. As described above and in the associated news coverage, my nine-year-old client K., who has severe autism, struggled throughout his 85 days in detention.

**Ongoing mental health concerns**

35. Babies, toddlers, children and teenagers should not be detained at Dilley. Every child who I have represented in federal immigration custody from March 1, 2026 to date has experienced mental health distress in detention.

**Inadequate access to clean drinking water and lack of appropriate palatable food**

36. Every verbal child and parent who I have worked with at Dilley from March 1, 2026 to date has reported that they do not have access to sufficient clean drinking water.  Families use their limited commissary funds to purchase bottled drinking water. I have reviewed medical records from Dilley for my clients in which children report that they are suffering from stomach pain, vomiting, diarrhea, and other stomach issues as a result of drinking the water that is available for free at Dilley.

37. Every verbal child and parent who I have worked with at Dilley from March 1, 2026 to date has reported that the food is not appropriate or palatable for children and families.

**Access to Counsel and Access to Email**

38. None of my clients has ever told me that they can call me from the Dilley facility at no cost.

39. When clients detained at Dilley call me, I hear an audio recording from Talton, a private corporation that profits from the phone calls of those in detention. The Talton audio

---

para-un-hijo-hablan-los-padres-de-gael-nino-con-autismo-que-estuvo-detenido-en-dilley-texas-video.

11

recording asks me if I would like to accept the call, and I must respond affirmatively before my client can speak with me. I do not believe that these Talton phone calls are confidential or free.

40. My clients detained at Dilley in May, June, and July 2026 have experienced difficulties in accessing the Internet and their email accounts.

41. For example, in June 2026, a parent who is my client reported to me that their family had lost all access to their email account in detention. It took weeks for this family to regain email access by using a new email address while detained at Dilley. My understanding is that this family lost all the emails associated with their original email account.

42. The ICE Juvenile Coordinator's report filed July 1, 2026 states: "Library staff can assist residents who need documents scanned or emailed to counsel." ECF No. 1802-1 ID#: 64505 at 18. This statement is not consistent with the experiences of my clients.

43. In recent months, some of my clients who are children have prepared handwritten letters and drawings that they want to email to me. These children and their families have been told by Dilley staff that their handwritten letters and drawings will not be scanned and emailed to me. Instead, Dilley staff have stated that they are willing to type out the children's handwritten letters and that only the typed versions will be sent to me. These children and families have understandably been frightened to share their letters with Dilley staff. Children and families fear retaliation from Dilley staff. For this reason, I have not received any handwritten letters or drawings from my clients at Dilley via email in recent months.

**Family Separations Within the Dilley Facility**

44. The ICE Juvenile Coordinator's report filed July 1, 2026 states: "Housing assignments are made with consideration of family composition, classification requirements, and the ages of children, with family unity preserved except where separation is required for safety or medical reasons." ECF No. 1802-1 ID#: 64505 at 13. This statement is not consistent with the experiences of my clients.

45. As described above in paragraph 19, my clients fourteen-year-old E.A. and her sixteen-year-old brother J.A. were detained at Dilley for about 126 days. E.A. and J.A. were detained by federal immigration authorities and brought to Dilley with their mother on or about November 12, 2025. E.A. and J.A.'s nineteen-year-old sister Olivia was detained by federal immigration authorities or about November 12, 2025 as well, but then Olivia was detained at several different detention centers for weeks. During these weeks, E.A., J.A., and their mother had no information about the whereabouts or well-being of Olivia. They did not know whether Olivia was in the United States or had been deported. They were emotionally devastated. Every day for weeks, E.A. repeatedly and loudly called, "Olivia! Olivia!" at the Dilley facility in hopes of finding her sister. Eventually, Olivia was brought to the Dilley facility and detained separately from her family. Initially no facility staff or ICE personnel told E.A., J.A., Olivia, or their mother that they were all detained at Dilley. Then, one day, as Olivia was walking to the library at Dilley, she heard a voice calling her name. Facility staff did not permit Olivia to pause to see who was calling her name, and E.A. could not see Olivia, but this moment helped Olivia realize that her younger sister might be detained at Dilley as well. Olivia sought to confirm her family members' whereabouts. From then on, E.A. and J.A. were permitted

13

to spend limited time with Olivia, but they were not permitted to stay together as a family unit in detention. Oliva, J.A., E.A., and their mother have spoken publicly about their experiences of family separation.[7] There were no "safety or medical reasons" justifying the separation of this family for months.

**Education and Recreation**

46. Children and parents I represent continue to express concern that the quality of schooling at Dilley is inadequate to meet children's educational needs.

47. Children and parents I represent continue to express concern that children are not able or willing to meaningfully engage in recreational activities at Dilley because children's physical health, mental health, and emotional well-being are deteriorating in detention.

**Visitation**

48. The ICE Juvenile Coordinator's report filed July 1, 2026 states: "If a visitor knows the resident's A number, has proper identification, and can identify themselves as a friend or family member, the visitor may visit with the resident." ECF No. 1802-1 ID#: 64505 at 18. This statement is not consistent with the experiences of my clients.

---

[7] Daniella Silva, *A teen and her family fled torture in Congo to resettle in Maine, but then ICE showed up*, NBC News (Apr. 25, 2026), https://www.nbcnews.com/news/us-news/olivia-andre-ice-detention-fled-congo-to-maine-dilley-immigration-rcna341003; Daniella Silva, *Teen says judge's order for her release from immigration detention had her family screaming with joy*, NBC News (May 7, 2026; updated May 8, 2026), https://www.nbcnews.com/news/us-news/olivia-andre-release-dilley-immigration-ice-detention-maine-rcna344006; *Exclusive: Teen asylum seeker detained by ICE for nearly 6 months speaks out*, MS Now (May 10, 2026), https://www.nbcnews.com/news/us-news/olivia-andre-release-dilley-immigration-ice-detention-maine-rcna344006; *Olivia comes home: Teen reunites with family after ICE detainment in Dilley, Texas*, ABC News (May 11, 2026), https://abcnews.com/video/132857770/; *Children 'held like criminals' inside ICE detention center*, CBS News (May 31, 2026), https://www.cbsnews.com/video/children-held-like-criminals-inside-ice-detention-center/.

14

49. On May 29, 2026, visitors from a nonprofit organization who had befriended my clients and other detained at Dilley went to the facility for a visit. The visitors were initially permitted to meet with families, including two of my clients. The visitors then left the facility for lunch. When the visitors sought to reenter the Dilley facility to meet with additional friends in detention, CoreCivic employees told them that ICE had determined that their visits with additional friends would not be permitted and that ICE had directed them to leave the premises. One of the visitors asked if she did something wrong. The CoreCivic employee repeated that his directions came from ICE and that the visitors needed to leave. The visitors left immediately and were not able to meet with their friends at Dilley.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and abilities.

July 11, 2026

New York, New York

_____

Elora Mukherjee

15