CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Carlos R. Holguín (Cal. Bar No. 90754)
crholguin@centerforhumanrights.org
Bardis Vakili (Cal. Bar No. 247783)
bvakili@centerforhumanrights.org
Sarah E. Kahn (Cal. Bar No. 341901)
skahn@centerforhumanrights.org
1505 E 17th St. Ste. 117
Santa Ana, CA 927051
Telephone: (619) 983-7910

*Attorneys for Plaintiffs*

*Additional counsel listed on following page*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

Jenny Flores, *et al.*,

Plaintiffs,

v.

Todd Blanche, Attorney General of the United States, *et al.*,

Defendants.

Case No. CV 85-4544-DMG-AGRx

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLARIFICATION OF THE FLORES SETTLEMENT AGREEMENT REGARDING CONFIDENTIAL ATTORNEY CLIENT COMMUNICATION**

Hearing: December 18, 2026 at 9:30am

NATIONAL CENTER FOR YOUTH LAW
Mishan Wroe (Cal. Bar No. 299296)
Diane de Gramont (Cal. Bar No. 324360)
428 13th Street, Floor 5
Oakland, CA 94612
Telephone: (510) 835-8098
Email: mwroe@youthlaw.org

NATIONAL CENTER FOR YOUTH LAW
Rebecca Wolozin (admitted *pro hac vice*)
2300 18th St. NW, P.O. Box 21156
Washington, DC 20009
Telephone: (510) 835-8098
Email: bwolozin@youthlaw.org

CHILDREN'S RIGHTS
Leecia Welch (Cal. Bar No. 208741)
2021 Fillmore Street
San Francisco, CA 94115
Telephone: (415) 602-5202
Email: lwelch@childrensrights.org

CHILDREN'S RIGHTS
Eleanor Roberts (admitted *pro hac vice*)
88 Pine Street, Suite 800
New York, NY 10005
Telephone: (212) 683-2210
Email: eroberts@childrensrights.org

To all Parties and their attorneys of record:

Please take notice that on December 18, 2026, at 9:30 a.m., or as soon thereafter as counsel may be heard, Plaintiffs will and do hereby move the Court for an order clarifying that the Flores Settlement Agreement protects *Flores* class counsel's right to confidential legal calls with class members detained in CBP custody.

This motion is based upon the memorandum of law and exhibits filed concurrently herewith, and all other matters of record; it is brought following a meeting of counsel pursuant to Local Rule 7-3 and Paragraph 37 of the Settlement on October 30, 2026. Declaration of Sarah Kahn, November 12, 2026, ("Kahn Decl.).

Dated: November 13, 2026

CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW
Carlos Holguín
Bardis Vakili
Sarah Kahn

NATIONAL CENTER FOR YOUTH LAW
Mishan Wroe
Diane de Gramont
Rebecca Wolozin

CHILDREN'S RIGHTS
Leecia Welch
Eleanor Roberts

*/s/ Sarah Kahn*
Sarah Kahn
*Attorney for Plaintiff*

CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Carlos R. Holguín (Cal. Bar No. 90754)
crholguin@centerforhumanrights.org
Bardis Vakili (Cal. Bar No. 247783)
bvakili@centerforhumanrights.org
Sarah E. Kahn (Cal. Bar No. 341901)
skahn@centerforhumanrights.org
1505 E 17th St. Ste. 117
Santa Ana, CA 927051
Telephone: (619) 983-7910

*Attorneys for Plaintiffs*

*Additional counsel listed on following page*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| Jenny Flores, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Todd Blanche, Attorney General of the United States, *et al.*,<br><br>Defendants. | Case No. CV 85-4544-DMG-AGRx<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLARIFICATION OF THE FLORES SETTLEMENT AGREEMENT REGARDING CONFIDENTIAL ATTORNEY CLIENT COMMUNICATION**<br><br>Hearing: December 18, 2026 at 9:30am |

NATIONAL CENTER FOR YOUTH LAW
Mishan Wroe (Cal. Bar No. 299296)
Diane de Gramont (Cal. Bar No. 324360)
428 13th Street, Floor 5
Oakland, CA 94612
Telephone: (510) 835-8098
Email: mwroe@youthlaw.org

NATIONAL CENTER FOR YOUTH LAW
Rebecca Wolozin (admitted *pro hac vice*)
2300 18th St. NW, P.O. Box 21156
Washington, DC 20009
Telephone: (510) 835-8098
Email: bwolozin@youthlaw.org

CHILDREN'S RIGHTS
Leecia Welch (Cal. Bar No. 208741)
2021 Fillmore Street
San Francisco, CA 94115
Telephone: (415) 602-5202
Email: lwelch@childrensrights.org

CHILDREN'S RIGHTS
Eleanor Roberts (admitted *pro hac vice*)
88 Pine Street, Suite 800
New York, NY 10005
Telephone: (212) 683-2210
Email: eroberts@childrensrights.org

## I. INTRODUCTION

The *Flores* Settlement Agreement ("FSA" or "Settlement") provides class members with "near-unfettered access" to class counsel. *Flores v. Barr*, No. CV854544DMGAGRX, 2020 WL 5491445, at *10 (C.D. Cal. Sept. 4, 2020). Yet Defendants maintain that the FSA does not require U.S. Customs and Border Protection ("CBP") to permit confidential phone calls with *Flores* class counsel while class members are in CBP custody. Even when a detained class member requests permission from CBP to call class counsel or when class counsel request a legal call with a specific class member, CBP refuses to facilitate legal calls or allow class members to make them. Defendants' interpretation of the FSA does not provide for attorney-client communications with class members in CBP custody other than through in-person visits that Defendants require weeks to arrange.

The Settlement's confidential attorney-client visit provisions contemplate reasonable efforts to ensure class counsel has adequate access to class members, and attorney-client calls are a minimally burdensome method for facilitating such access. The Settlement also makes class counsel responsible for monitoring compliance with the Settlement and protects children's right to enforce their rights under the Settlement, which requires facilitating communication between class members and class counsel. Finally, the Settlement requires CBP to inform children of their right to call a lawyer and instructs CBP to provide children with a list of free legal service providers. Defendants' interpretation of the Settlement thwarts its purpose and leads to an absurd result: that the FSA requires CBP to inform children that they have a right to call counsel but also permits CBP to prohibit children from using a phone to exercise that right.

Plaintiffs respectfully request clarification from the Court that the FSA requires that class members in Department of Homeland Security ("DHS") custody are entitled to confidential legal calls with *Flores* counsel.

## II. BACKGROUND

Class counsel's access to telephonic visits with class members in CBP custody has become increasingly essential to enforcement of the FSA. Under the current administration,

CBP has adopted a general policy against release of recent arrivals, proudly announcing "zero Border Patrol releases" in FY 2026.[1] Further, it appears CBP no longer transfers children to ICE custody. Instead, families are routinely trapped in facilities which, "by design, are not suitable for minors for long periods of time." Order Re Plaintiffs' Motion to Enforce [1575], August 15, 2025, Dkt. 1638 at 13. CBP's data shows increased TIC times in CBP custody across the board. 2026 CBP Juv. Coord. Annual Rep., July 1, 2026 at 2, Dkt. 1801-1 at 5-7. Plaintiffs' counsel have repeatedly encountered families subjected to prolonged detention who have continued to appear in the ICE online database as remaining in CBP custody for days or weeks following in-person monitoring visits conducted pursuant to Paragraph 32 of the FSA. But when Plaintiffs' counsel have requested legal calls with these families, and when class members have tried to contact class counsel from CBP facilities, Defendants have refused to accommodate such calls.

For instance, on March 19, 2026, Plaintiffs' counsel visited the Chula Vista Border Patrol Station. Declaration of Sarah Kahn, November 9, 2026 ¶ 3 ("Kahn Decl."). There was one family present. *Id.* That family, including four children ages five months to fifteen years, had already been detained for 20 days. Declaration of V.O., Dkt. 1747-1 ¶ 6. The family reported freezing temperatures, inadequate access to clothing, limited access to showers, a lack of privacy, and poor-quality food. *Id.* ¶¶ 19-24. CBP prevented them from using a phone to call a loved one or contact a lawyer for the duration of their 20-day imprisonment. *Id.* ¶¶ 8-9. After an immigration judge ordered Border Patrol to provide them a phone call with a lawyer, an agent finally took them to a phone on a Saturday and dialed a lawyer's number on the family's behalf, but upon reaching no one because it was the weekend, stated that the family would have to proceed with telephonic judicial review of their credible fear interview without a lawyer. *Id.* ¶¶ 13-14.

---

[1] CBP, *Under President Trump and Secretary Mullin, DHS Announces Lowest Fiscal Year Border Crossings in American History* (Oct. 16, 2026), available at https://www.dhs.gov/news/2026/10/16/under-president-trump-and-secretary-mullin-dhs-announces-lowest-fiscal-year-border (last visited Oct. 25, 2026).

After the site visit, class counsel checked the ICE online database and found the family remained in CBP custody. Kahn Decl. ¶ 4. On March 24, 2026, Plaintiffs' counsel emailed Defendants' counsel to notify them that the family's "detention violates the FSA's expeditious processing provision and, because of the extreme conditions of CBP detention, including limited access to the outdoors, to showers, to visitation with separated family members, and to a child-friendly environment, violates the FSA's minimum standards for conditions of detention." Kahn Decl., Ex. 1. Counsel requested a response by March 26, 2026. *Id.* On March 26, 2026, Defendants' counsel responded that CBP was "aware of and looking into this situation." *Id.* On March 27, 2026, Plaintiffs' counsel requested a legal call with the family. *Id.* At that time, the family had been detained for 28 days. The same day, Defendants' counsel responded, "The Flores Settlement Agreement does not entitle class counsel to the requests made in your email. Class counsel may schedule in-person attorney-client visits at Chula Vista Station as provided for in Paragraph 32." *Id.*

Compounding Defendants' denial of telephonic access to class members in CBP custody, Defendants generally will not arrange in-person visits unless they are given at least two-week's notice, a condition that Plaintiffs have consistently accommodated although it is not required by the Settlement. Kahn Decl. ¶ 2. This makes it impossible for Plaintiffs' counsel to communicate timely with their clients in CBP custody, including those who have urgent needs. *Id.* On March 27, 2026, Plaintiffs' counsel also noticed a site visit for the following Wednesday, April 1, 2026 to try to meet with the family in person. *Id.*, Ex. 1. Defendants did not respond to this notice. *Id.*, Ex. 1. However, on March 30, 2026, after the family had been detained for approximately 30 days, Defendants notified Plaintiffs that they had been removed. *Id.*

In another example, on September 22, 2026, Plaintiffs' counsel visited Chula Vista Station and met with a family who had been detained since approximately September 7, 2026 – over two weeks. Kahn Decl., ¶¶ 6-7. After the interview, counsel provided the family with her phone number so they could seek assistance if their child's rights under the Settlement were further violated. *Id.* ¶ 8. On October 4, 2026, Plaintiffs' counsel received

a call from an unknown number. *Id.* ¶ 9. The father rushed to explain that a guard had finally agreed to permit a call but had warned him that he only had three minutes. *Id.* Because counsel had not expected the unscheduled call, there was no time to arrange for an interpreter to assist. *Id.* Counsel was able to ascertain that the family had been transferred to a CBP facility in McAllen, Texas before the father was rushed off the phone. *Id.*

Class counsel subsequently attempted to arrange a legal call with the class member's family. *Id.* ¶ 10. Counsel called a publicly available number for CBP and was transferred or directed to six different additional numbers, some of which were disconnected and others of which were answered by agents who directed counsel to another number. *Id.* One agent stated that it was CBP policy that the "client has to call you," even though the family had been allowed only the single, three-minute call during their month-long detention. *Id.* Finally, an agent directed counsel to email a G-28 form to Rio Grande Valley CBP Office of Chief Counsel. *Id.* The office responded by email on October 7, 2026 stating, "While we recognize the importance of counsel, OCC is not in a position to provide information about individuals who CBP has interacted with." *Id.* Ex. 2. Plaintiffs' counsel then emailed Defendants' counsel to request a legal call with the class member's family. *Id.* Ex. 3. Defendants' counsel responded, "As we have discussed previously, the Flores Settlement Agreement does not entitle class counsel to the request made in your email." *Id.*

Class members consistently report they are denied access to telephones in CBP custody. Declaration of G.A.S., April 21, 2026, San Ysidro POE ¶ 17 ("Since arriving to here, I haven't been able to use the phone"); Declaration of Y.F.D., July 13, 2026, Chula Vista ¶ 21 ("We have asked to use it after the interview so we can try to find a lawyer, but we have not been able to use it.") (detained for 27 days, Kahn Decl. ¶ 13); Declaration of A.V., July 13, 2026, Chula Vista ¶ 27 ("They wouldn't let us use the phone. I told them my husband was getting us a lawyer, but they said there are no lawyers here.") (detained for 11 days, Kahn Decl. ¶ 13); Declaration of N.H., September 1, 2026, Chula Vista ¶ 16 ("We used the phone one time since arriving. We were allowed only two minutes and a

guard was nearby supervising the call. We were able to speak just a few words to a family friend.") (detained for at least 13 days) Kahn Decl. ¶ 14; Declaration of R.R., September 22, 2026, Chula Vista ¶¶ 34-35 ("They told all of the families we weren't allowed to call anyone, that all we would be given was a single call to the embassy later . . . Finally, a guard said, if you will continue to translate for us, we will let you make a call. We were able to get a few minutes talking to my brother. Throughout the call they rushed us, saying every minute you spend on the phone is another minute you will spend here."); Declaration of M.S., September 22, 2026, Chula Vista ¶ 25 ("We asked a staff member to call a lawyer, and she told us we could, that she would arrange the call. Then she turned and walked away. We thought she would come back to take us to the phone, but she never returned. We asked the next guard and they said no, you cannot call a lawyer from here.") (detained at least 17 days, Kahn Decl. ¶ 14).

Class members report the same lack of access to phones in Laredo and Del Rio Sectors. *See* Declaration of F.R.J.L., November 2, 2026, South Laredo Station ¶ 17 ("They told me I could make one call, but they wouldn't give me my cellphone so I couldn't get the numbers for my family. They never gave me any list of free legal services. I had one chance to use the phone and no number to call."); Declaration of C.R.T.A., November 2, 2026, South Laredo Station ¶¶ 23-24 ("After this we got our only phone call, a very quick call. Maybe God touched this agent's heart, because he gave us a few minutes to use the phone . . . Since then . . . my daughter and I haven't been permitted to use a phone. [My daughter, who is detained in a cell alone,] wants so much to talk to her mom."); Declaration of T.M., November 3, 2026, Del Rio Station ¶ 20 ("We asked to use the phone and they told us that we get one call to the consulate and nothing else, but they have not even given us the opportunity to call the consulate."); Declaration of Y.M.S., November 3, 2026, Del Rio Station ¶¶ 11-12 ("They asked if I was going to get a lawyer and I told them yes, I want a lawyer. But they didn't give me any information, they didn't let me have a phone call . . . All I want is to talk to my son. They told us all we get here is one call to the [] consulate. For eight days, my family has not known if we are alive.").

## III. LEGAL STANDARD

The district court has inherent authority to enforce, modify, or clarify the Settlement, and the parties agreed to the Court's retention of jurisdiction precisely for this purpose. FSA ¶ 37. "Consent decrees have the attributes of both contracts and judicial acts," and in interpreting consent decrees, courts use contract principles, specifically the contract law of the situs state. *Thompson v. Enomoto*, 915 F.2d 1383, 1388 (9th Cir. 1990). Although "[t]here is no specific Federal Rule of Civil Procedure governing motions for clarification," if parties dispute the meaning of a provision of a settlement or contract, a motion for clarification "can be resolved when appropriate to explain or clarify something that may be ambiguous or vague." *Alexander v. Chadwick*, No. 2:22-CV-01084-CDS-NJK, 2026 WL 1046181, at *1 (D. Nev. Apr. 17, 2026); *see also Walker v. Wolf*, 2024 WL 1746045, at *2 (D. Idaho Apr. 23, 2024) (stating motions for clarification "are appropriate when parties are uncertain about the scope of a ruling or when the ruling is reasonably susceptible to differing interpretations."). Circuit Courts "give deference to the district court's interpretation based on the court's extensive oversight of the decree from the commencement of the litigation." *Gates v. Gomez*, 60 F.3d 525, 530 (9th Cir. 1995).

## IV. ARGUMENT

### A. *The Settlement provides for broad attorney-client access and obstructing counsel from conducting legal calls is inconsistent with the Settlement.*

The plain language of the Settlement provides for expansive attorney-client access, which the Court has called "near-unfettered." *Flores v. Barr*, , 2020 WL 5491445, at *10.[2]

---

[2] Class members also have a First and Fifth Amendment right to call *Flores* counsel. "[M]ost courts have held that, '[o]nce a class has been certified, the rules governing communications [with class members] apply as though each class member is a client of the class counsel.'" *Harris v. Vector Mktg. Corp.*, 716 F.Supp.2d 835, 847 (N.D. Cal. 2010). Thus, class members have the right to confidential communication with *Flores* counsel as their attorneys in a civil matter. *See Orantes-Hernandez v. Meese*, 685 F.Supp. 1488, 1510 (C.D. Cal. 1988), *aff'd sub nom. Orantes-Hernandez v. Thornburgh*, 919 F.2d 549 (9th Cir. 1990) ("The duty not to obstruct access to courts also protects detained class members' right of telephonic access to their legal representatives."); *United States v. Reyes-Bonilla*,

Confidential legal calls with class counsel give effect to the mutual intention of the parties as it existed at the time of contracting, which ensured class counsel access to class members and explicitly contemplated Plaintiffs' Counsel as monitors of compliance. Thus, obstructing class members' access to legal calls with class counsel is inconsistent with the Settlement.

The Settlement explicitly provides for broad attorney-client access for class counsel, requiring that "Plaintiffs' counsel are entitled to attorney-client visits with class members even though they may not have the names of class members who are housed at a particular location." FSA ¶ 32.A. While paragraph 32.A generally describes a process for conducting in-person attorney-client visits, it does not limit class members' access solely to in-person visits or otherwise limit class counsel's representation of or communication with class members. FSA ¶ 32.A.

In the context of hotel detention under Title 42, addressing access to both class counsel and legal service providers, the Court explained that "[t]he Agreement contemplates attorneys having near-unfettered access to minors in custody." *Flores v. Barr*, 2020 WL 5491445, at *10. "Paragraph 32 of the *Flores* Agreement entitles Plaintiffs' counsel to visits with Class Members, even though the attorneys may not have the names of the minors in custody." *Id.* When Defendants argued they were complying with this paragraph by providing "'a minimum of one phone call a day,' with additional phone calls allowed 'upon request,'" the court found "this process is woefully inadequate and not

---

671 F.3d 1036, 1045 (9th Cir. 2012); *Gomez Ruiz v. ICE*, 834 F.Supp.3d 835, 849 (N.D. Cal. 2026) ("Overly restrictive policies that hinder a [detained person's] ability to hire and consult with an attorney violate such detainee's First Amendment" and Fifth Amendment rights) (quoting *Torres v. DHS*, 411 F.Supp.3d 1036 (C.D. Cal. 2019)). Where "access to counsel [was] essential as [Plaintiff's] case" alleging sexual misconduct by prison officials "proceeds," the court found that defendants' "failure to cooperate with Plaintiff's counsel to facilitate a single weekly phone call is even more evidence that Plaintiff unfortunately requires Court intervention to secure a basic right." *Aldrich v. Romo*, 493 F.Supp.3d 853, 857–58 (C.D. Cal. 2020). Access to counsel is clearly essential for children seeking to protect their rights under the Settlement, and nothing in the FSA waives or restricts class members' basic constitutional right to call *Flores* counsel.

substantially compliant with Paragraph 32." *Id.* DHS cannot "put[] the entire onus on the minor to seek out counsel, requiring children to have the wherewithal to put their one phone call a day towards retaining a lawyer." *Id.*

The same reasoning applies here, where Defendants confine class members for prolonged periods incommunicado in CBP custody. Today, children routinely do not even get to make a single call while detained, and Defendants prohibit them from calling counsel. Kahn Decl. Exs. 1 – 3. "This is exactly the scenario the *Flores* Agreement intended to avoid. Paragraph 32 is straightforward in requiring that Plaintiffs' counsel be allowed to access the facilities *and contact the minors*, even if they do not yet know the identity of a specific minor." *Flores v. Barr*, 2020 WL 5491445, at *10 (emphasis added).

### B. *Class members are permitted to enforce their rights under the Settlement, which requires reasonable communication with class counsel.*

The Settlement provides, and this Court's orders affirm, that children may enforce their rights under the Settlement, which requires the ability to contact class counsel.

Confidential legal calls are consistent with the parties' intent in entering the contract. "Under California law, a court must interpret a contract with the goal of giving effect to the mutual intention of the parties as it existed at the time of contracting." *Flores v. Johnson*, 212 F.Supp.3d 864, 869–70 (C.D. Cal. 2015). The Settlement provides expansive provisions for monitoring and includes several provisions by which class counsel can seek to protect the rights of class members through dispute resolution or to enforce the Settlement in the district court. *See, e.g.*, FSA ¶ 28B ("Should Plaintiffs' counsel have reasonable cause to believe that a minor in INS legal custody should have been released pursuant to Paragraph 14, Plaintiffs' counsel may contact the Juvenile Coordinator to request that the Coordinator investigate the case and inform Plaintiffs' counsel of the reasons why the minor has not been released.");[3] FSA ¶ 33 (providing for class counsel to

[3] Notably, Defendants also refuse to accommodate direct communication with the Juvenile Coordinator. Defendants' Objections to Questions Regarding Juvenile Court Monitors' Reports, August 1, 2025 at 2, 5, Dkt. 1620.

tour licensed facilities); FSA ¶ 37 (providing "for the enforcement, in this District Court, of the provisions of this Agreement" and requiring notice of claims of noncompliance to be served on Plaintiffs' counsel). Thus, the intention of the parties at the time they entered the FSA was to provide counsel sufficient access to class members to act as effective monitors of Defendants' compliance. Given that counsel cannot visit hundreds of facilities across the country, that Defendants request two weeks' notice before an in-person visit, and that prolonged detention in CBP custody may last several weeks but rarely lasts more than five weeks, confidential legal calls are often the only way that class counsel can respond to an ongoing violation. Kahn Decl. ¶ 2.

Indeed, this Court has held the FSA requires Defendants to provide class members an advisal of their Settlement rights because "Paragraph 37 provides that individual Class Members may bring actions to enforce the Agreement, which presupposes that Class Members are aware of their rights under it." *Flores v. Barr*, No. CV854544DMGAGRX, 2020 WL 5666551, at *4 (C.D. Cal. Sept. 18, 2020). Following the same reasoning, paragraph 37 presupposes that class members can communicate with the class counsel who are responsible for enforcing their rights. Class members are minors and thus cannot litigate their claims pro se, and class counsel is tasked with enforcing their rights under the Settlement. FSA ¶ 37. Thus, class members have a right to confidential legal calls under the FSA to seek class counsel's assistance with enforcing their rights.

C. *Interpreting the FSA to permit prohibiting class members from calling counsel conflicts with paragraph 24D and frustrates its purpose.*

In keeping with the *Flores* right to expeditious processing, paragraph 24D of the Settlement requires DHS, including CBP, to provide children with the notice in Exhibit 6 stating "you may ask a federal judge to review your case. You may call a lawyer to help you do this." FSA ¶ 24D(b); Ex. 6.[4] Further, the FSA requires Defendants to provide children who are not released or transferred with a list of free legal services. FSA ¶ 24D(c).

[4] Exhibits or attachments incorporated by the parties are an enforceable part of a contract. *Shaw v. Regents of Univ. of California*, 58 Cal. App. 4th 44, 56 (1997).

Interpreting the FSA to require access to phone calls with counsel is consistent with a commonsense understanding of these provisions and avoids absurdity. As this Court noted, "Paragraph 24D(c) goes hand-in-hand with the Notice of Right of Judicial Review (Exhibit 6), which states that '[i]f you cannot afford a lawyer, you may call one from the list of free legal services given to you with this form.'" *Flores v. Sessions*, 394 F.Supp.3d 1041, 1062 (C.D. Cal. 2017). To read the FSA to require DHS to inform children of their right to make a phone call that CBP may prohibit them from making "would result in an absurdity" and is counter to its purpose. *Harris v. Klure*, 205 Cal. App. 2d 574, 578 (1962) (holding contracts should be construed to "give[] effect to the[ir] main apparent purpose"). Without a phone call, the right to call counsel and the list of legal service providers are meaningless, and any interpretation of a contract's provision rendering it "nugatory, inoperative or meaningless" runs contrary to the principals of contract interpretation. *Pinel v. Aurora Loan Servs., LLC*, 814 F.Supp.2d 930, 943 (N.D. Cal. 2011); Cal. Civ. Code § 1641. Further, Defendants' interpretation would thwart paragraph 24's purpose "to permit judicial review of Defendants' placement decisions." FSA ¶ 24C.

## V. CONCLUSION

The FSA explicitly establishes the right of class members to attorney-client access and communication and appoints class counsel to monitor compliance. Counsel cannot fulfill their obligations if they cannot speak to class members by phone. The FSA further grants children the right to enforce its provisions, a right they cannot meaningfully exercise without counsel. Finally, the FSA explicitly provides that children must be notified of their right to call counsel to protect their rights under the Settlement, which presupposes that such a right exists. For the foregoing reasons, this Court should grant this motion and enter an order clarifying that the FSA requires Defendants to facilitate confidential telephonic communication between class counsel and class members when requested by either.

Dated: November 13, 2026

CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW
Carlos Holguín

Bardis Vakili
Sarah Kahn

NATIONAL CENTER FOR YOUTH LAW
Mishan Wroe
Diane de Gramont
Rebecca Wolozin

CHILDREN'S RIGHTS
Leecia Welch
Eleanor Roberts

*/s/ Sarah Kahn*
Sarah Kahn
*Attorney for Plaintiffs*