CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Carlos R. Holguín (Cal. Bar No. 90754)
crholguin@centerforhumanrights.org
Bardis Vakili (Cal. Bar No. 247783)
bvakili@centerforhumanrights.org
Sarah E. Kahn (Cal. Bar No. 341901)
skahn@centerforhumanrights.org
1505 E 17th Street, Suite 117
Santa Ana, CA 92705
Telephone: (619) 983-7910

*Attorneys for Plaintiffs*

*Additional counsel listed on following page*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

Jenny Flores, *et al.*,

Plaintiffs,

v.

Todd Blanche, Attorney General of the United States, *et al.,*

Defendants.

Case No. CV 85-4544-DMG-AGRx

**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO ENFORCE SETTLEMENT RE: DEFENDANTS' FAILURE TO PROVIDE CLASS MEMBERS WITH NOTICE OF THEIR *FLORES* RIGHTS**

Hearing: January 8, 2027

NATIONAL CENTER FOR YOUTH LAW
Mishan Wroe (Cal. Bar No. 299296)
Diane de Gramont (Cal. Bar No. 324360)
428 13th Street, Floor 5
Oakland, CA 94612
Telephone: (510) 835-8098
Email: mwroe@youthlaw.org

NATIONAL CENTER FOR YOUTH LAW
Rebecca Wolozin (admitted *pro hac vice*)
2300 18th St. NW, P.O. Box 21156
Washington, DC 20009
Telephone: (510) 835-8098
Email: bwolozin@youthlaw.org

CHILDREN'S RIGHTS
Leecia Welch (Cal. Bar No. 208741)
2021 Fillmore Street
San Francisco, CA 94115
Telephone: (415) 602-5202
Email: lwelch@childrensrights.org

CHILDREN'S RIGHTS
Eleanor Roberts (admitted *pro hac vice*)
88 Pine Street, Suite 800
New York, NY 10005
Telephone: (212) 683-2210
Email: eroberts@childrensrights.org

To all Parties and their attorneys of record:

Please take notice that on January 8, 2027, at 9:30 a.m., or as soon thereafter as counsel may be heard, Plaintiffs will and do hereby move the Court for a classwide order requiring ICE to provide class members with notice of their *Flores* rights as delineated in Plaintiffs' proposed order.

This motion is based upon the memorandum of law and exhibits filed concurrently herewith, and all other matters of record; it is brought following many meetings of the Parties pursuant to Local Rule 7-3 and Paragraph 37 of the Settlement on May 14, May 30, July 24, and September 17, 2025, and on January 23, February 4, March 2, March 10, and April 27, 2026. Declaration of Leecia Welch, November 20, 2026 ("Welch Decl.") ¶¶ 4-5.

Dated: November 20, 2026

CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW
Carlos Holguín
Bardis Vakili
Sarah Kahn

NATIONAL CENTER FOR YOUTH LAW
Mishan Wroe
Diane de Gramont
Rebecca Wolozin

CHILDREN'S RIGHTS
Leecia Welch
Eleanor Roberts

*<u>/s/ Leecia Welch</u>*
Leecia Welch
*Attorney for Plaintiffs*

CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Carlos R. Holguín (Cal. Bar No. 90754)
crholguin@centerforhumanrights.org
Bardis Vakili (Cal. Bar No. 247783)
bvakili@centerforhumanrights.org
Sarah E. Kahn (Cal. Bar No. 341901)
skahn@centerforhumanrights.org
1505 E 17th Street, Suite 117
Santa Ana, CA 92705
Telephone: (909) 274-9057

*Attorneys for Plaintiffs*

*Additional counsel listed on following page*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

Jenny Flores, *et al.*,

Plaintiffs,

v.

Todd Blanche, Attorney General of the United States, *et al.*,

Defendants.

Case No. CV 85-4544-DMG-AGRx

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT RE: DEFENDANTS' FAILURE TO PROVIDE CLASS MEMBERS WITH NOTICE OF THEIR *FLORES* RIGHTS**

Hearing: January 8, 2027
Time: 9:30 am
Hon. Dolly M. Gee

NATIONAL CENTER FOR YOUTH LAW
Mishan Wroe (Cal. Bar No. 299296)
Diane de Gramont (Cal. Bar No. 324360)
428 13th Street, Floor 5
Oakland, CA 94612
Telephone: (510) 835-8098
Email: mwroe@youthlaw.org

NATIONAL CENTER FOR YOUTH LAW
Rebecca Wolozin (admitted *pro hac vice*)
2300 18th St. NW, P.O. Box 21156
Washington, DC 20009
Telephone: (510) 835-8098
Email: bwolozin@youthlaw.org

CHILDREN'S RIGHTS
Leecia Welch (Cal. Bar No. 208741)
2021 Fillmore Street
San Francisco, CA 94115
Telephone: (415) 602-5202
Email: lwelch@childrensrights.org

CHILDREN'S RIGHTS
Eleanor Roberts (admitted *pro hac vice*)
88 Pine Street, Suite 800
New York, NY 10005
Telephone: (212) 683-2210
Email: eroberts@childrensrights.org

# TABLE OF EXHIBITS

## Exhibit Index to Motion to Enforce re: Defendants' Failure to Provide Class Members with Notice of Their *Flores* Rights

| Exhibit No. | Exhibit Description |
|---|---|
| 1 | Declaration of Leecia Welch, November 20, 2026 ("Welch Decl.") |
| 2 | W.D.B. Declaration (Dilley), October 6, 2026 ("W.D.B. Decl.") |
| 3 | T.C. Declaration (Dilley), October 7, 2026 ("T.C. Decl.") |
| 4 | Y.W. Declaration (Dilley), October 7, 2026 ("Y.W. Decl.") |
| 5 | J.P.R. Declaration (Dilley), October 7, 2026 ("J.P.R. Decl.") |
| 6 | M.M.V. Declaration (Dilley), October 6, 2026 ("M.M.V. Decl.") |
| 7 | D.Z.C. Declaration (Dilley), November 4, 2026 ("D.Z.C. Decl.") |
| 8 | K.O.C. Declaration (Dilley), November 4, 2026 ("K.O.C. Decl.") |
| 9 | P.G.P. Declaration (Dilley), November 4, 2026 ("P.G.P. Decl.") |
| 10 | Y.M.P. Declaration (Dilley), November 4, 2026 ("Y.M.P. Decl.") |
| 11 | Y.Z. Declaration (Dilley), November 4, 2026 ("Y.Z. Decl.") |
| 12 | W.P.P. Declaration (Dilley), July 15, 2026 ("W.P.P. Decl.") |
| 13 | Y.P.R. Declaration (Dilley), July 15, 2026 ("Y.P.R. Decl.") |
| 14 | D.C.S. Declaration (Dilley), October 6, 2026 ("D.C.S. Decl.") |
| 15 | S.R.A. Declaration (Dilley), October 7, 2026 ("S.R.A. Decl.") |
| 16 | G.Z.R. Declaration (Dilley), September 9, 2026 ("G.Z.R. Decl.") |
| 17 | I.O.R. Declaration (Dilley), September 9, 2026 ("I.O.R. Decl.") |
| 18 | M.A.G.Z. Declaration (Dilley), November 4, 2026 ("M.A.G.Z. Decl.") |
| 19 | E.N.P. Declaration (Dilley), July 14, 2026 ("E.N.P. Decl.") |

| | |
|---|---|
| 20 | L.Z. Declaration (Dilley), July 29, 2026 (“L.Z. July Decl.”) |
| 21 | A.C. Declaration (Dilley), October 6, 2026 (“A.C. Decl.”) |
| 22 | W.T.P. Declaration (Dilley), July 15, 2026 (“W.T.P. Decl.”) |
| 23 | J.O. Declaration (Dilley), November 3, 2026 (“J.O. Decl.”) |
| 24 | J.M.O. Declaration (Dilley), October 7, 2026 (“J.M.O. Decl.”) |
| 25 | Y.D. Declaration (Dilley), October 7, 2026 (“Y.D. Decl.”) |
| 26 | D.L.R. Declaration (Dilley), October 6, 2026 (“D.L.R. Decl.”) |
| 27 | X.W. Declaration (Dilley), July 15, 2026 (“X.W. Decl.”) |
| 28 | M.T. Declaration (Dilley), July 15, 2026 (“M.T. Decl.”) |
| 29 | S.N.K. Declaration (Dilley), October 7, 2026 (“S.N.K. Decl.”) |
| 30 | L.R.O. Declaration (Dilley), July 15, 2026 (“L.R.O. Decl.”) |
| 31 | A.D.G. Declaration (Dilley), September 8, 2026 (“A.D.G. Decl.”) |
| 32 | M.G.O. Declaration (Dilley), July 14, 2026 (“M.G.O. July Decl.”) |
| 33 | N.A.P. Declaration (Dilley), November 4, 2026 (“N.A.P. Decl.”) |
| 34 | Declaration of Miguel Chiapetta, November 18, 2026 (“Chiapetta Decl.”) |

**Previously Filed Declarations**

| **Docket No.** | **Description** |
|---|---|
| 1706-2 | Declaration of Javier Hidalgo, December 8, 2025 (“Hidalgo Dec. Decl.”) |
| 1748-16 | Declaration of Javier Hidalgo, March 20, 2026 (“Hidalgo Mar. Decl.”) |
| 1748-21 | Declaration of Z.V. (Dilley), February 11, 2026 (“Z.V. Decl.”) |

| | |
|---|---|
| 1748-24 | Declaration of S.S. (Dilley), January 15, 2026 ("S.S. Decl.") |
| 1748-36 | Declaration of M.L.S. (Dilley), February 12, 2026 ("M.L.S. Decl.") |
| 1779-2 | Declaration of Leecia Welch, May 18, 2026 ("Welch May 2026 Decl.") |
| 1779-8 | Declaration of S.D.C. (Dilley), March 11, 2026 ("S.D.C. Decl.") |
| 1779-18 | Declaration of O.B. (Dilley), April 23, 2026 ("O.B. Decl.") |
| 1811-2 | Declaration of Leecia Welch, July 15, 2026 ("Welch July 2026 Decl.") |
| 1811-4 | Declaration of Elora Mukherjee, July 15, 2026 ("Mukherjee July Decl.") |
| 1811-5 | Declaration of Rodolfo Altillo, July 15, 2026 ("Altillo Decl.") |
| 1811-6 | Declaration of M.A.B.H. (Dilley), June 1, 2026 ("M.A.B.H. Decl.") |
| 1811-7 | Declaration of J.C.B. (Dilley), June 3, 2026 ("J.C.B. Decl.") |
| 1811-9 | Declaration of L.R.V. (Dilley), June 2, 2026 ("L.R.V. Decl.") |
| 1811-11 | Declaration of L.R.P. (Dilley), June 8, 2026 ("L.R.P. Decl.") |
| 1811-12 | Declaration of M.G.O. (Dilley), June 2, 2026 ("M.G.O. June Decl.") |
| 1811-13 | Declaration of J.C.M. (Dilley), June 8, 2026 ("J.C.M. Decl.") |

TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 2

A. Defendants Do Not Give Class Members Meaningful Notice of Their *Flores* Rights. .......... 2

1. Families Consistently Report That No One Tells Them About Their Children's *Flores* Rights. .......... 2

2. ICE Presents Families with Incomplete, Confusing, or Incorrect Information About *Flores*. .......... 4

3. ICE's Materials Do Not Provide Meaningful Notice of Class Members' *Flores* Rights. .......... 6

4. Lack of Language Access Compounds Class Members' Confusion About Their *Flores* Rights and the Ability to Exercise Them. .......... 8

5. Families Face Barriers to Accessing Legal Service Providers to Help Them Understand Their Children's Flores Rights. .......... 9

6. Defendants Have Refused to Allow Legal Service Providers to Present Know-Your-Rights Trainings About Class Members' *Flores* Rights. .......... 11

B. Defendants' Failure to Advise Children of their Comprehensive *Flores* Rights Prevents Families from Effectuating their Children's Rights. .......... 13

III. ARGUMENT .......... 17

A. The FSA and This Court's Orders Require Meaningful Notice of *Flores* Rights. 17

B. Defendants' Materials and Practices Do Not Satisfy These Obligations. .......... 19

C. The Court-Approved Notice Should Be Updated to Reflect Current Detention Practices. .......... 20

D. Regular Know-Your-Rights Presentations Are Necessary to Inform Class Members of Their *Flores* Rights. .......... 22

IV. REQUESTED REMEDIES .......... 23

V. CONCLUSION .......... 25

# I. INTRODUCTION

The *Flores* Settlement Agreement ("FSA" or "Settlement") guarantees children in immigration custody rights governing their detention, treatment, and release. Those rights mean little if children never learn they exist. For more than a year and a half, U.S. Immigration and Customs Enforcement ("ICE") has detained children and families at the South Texas Family Residential Center in Dilley, Texas ("Dilley"), without giving them meaningful notice of their *Flores* rights or consistent access to legal service providers who can explain them. Over 15 site visits, class counsel have interviewed more than 200 families. None recall learning about their children's comprehensive *Flores* rights from ICE or CoreCivic.

Plaintiffs seek to enforce the Settlement and ensure that children and their families are given a notice of their rights while they are detained. Paragraph 12.A of the FSA plainly requires Defendants to provide class members with a notice of rights. This Court has previously held that the notice must inform class members of their custody and release rights sufficiently to allow them to act upon those rights, has already recognized legal service providers' entitlement to broad access to minors in order to explain their *Flores* rights, and has previously approved a Notice of Rights for dissemination. *See* Order re Plaintiffs' Motion to Enforce and August 2020 ICE Juvenile Coordinator Interim Report at 5-6, September 18, 2020 [Doc. # 987] ("Sept. 18, 2020 Order"); Order Approving Final Notice of Rights January 5, 2021 [Doc. # 1056] ("Jan. 5, 2021 Order");

Order re March 19, 2021 Status Conference at 2, March 19, 2021 [Doc. # 1098] ("Mar. 19, 2021 Order").

Since May 2025, Plaintiffs have repeatedly raised these violations with Defendants and reminded Defendants of this Court's prior orders in correspondence, meet and confers, mediation sessions, and court filings. Defendants have made no attempt to cure them. Instead, Defendants maintain that no violations exist. Plaintiffs respectfully ask the Court to enforce the Settlement and its prior Orders to ensure that all class members at Dilley receive meaningful notice of their *Flores* rights and access to legal service providers who can explain those rights.

## II. STATEMENT OF FACTS

### A. Defendants Do Not Give Class Members Meaningful Notice of Their *Flores* Rights.

Time and again since May 2025, Plaintiffs have informed Defendants that families at Dilley are not receiving required information about their children's *Flores* rights. Welch Decl. ¶¶ 3-6, 8-9. Despite Plaintiffs' repeatedly raising the same concerns in correspondence, meet and confers, mediation sessions, and status conference statements, nothing has changed. Defendants have neither addressed these concerns nor provided a substantive response to Plaintiffs' proposed notice of rights shared seven months ago. *Id.* ¶¶ 8-9.

#### 1. <u>Families Consistently Report That No One Tells Them About Their Children's *Flores* Rights.</u>

Class counsel have made 15 site visits to Dilley and interviewed over 200 families.

No family has recalled learning about their child's comprehensive *Flores* rights through a video, training, or notice of rights document from ICE or CoreCivic. Welch Decl. ¶¶ 10-11. Children's and parents' declarations are consistent over this entire time:

- "I have never received an orientation or video about my rights." J.C.M. Decl. ¶ 7 [Doc. # 1811-13].
- "No one ever explained my rights to me here. I asked for them, and ICE told me they don't know what our rights are." L.R.P. Decl. ¶ 15 [Doc. # 1811-11].
- "We received no presentation about our rights." J.C.B. Decl. ¶ 24 [Doc. # 1811-7].
- "No one who works here has mentioned *Flores* to me . . . . There was no know your rights training. They do not do that." W.D.B. Decl. ¶¶ 6, 17.
- "We did not get any paper with our rights on it, and we have never received any rights-related papers over the past few months. . . . I do not remember ever seeing a video about my rights here, either. I have never heard about *Flores* before. No one who worked here ever mentioned this to us or told us about how long our child could be detained. . . . No one ever told us about any of our children's rights." T.C. Decl. ¶¶ 14, 17-19.
- "No one told us anything about our rights. . . . No one did any kind of know your rights training . . . . I have never seen a video about my rights since being here. I have never heard about *Flores* before." Y.W. Decl. ¶¶ 9, 11, 14-15.
- "We didn't see a video about *Flores* . . . ." J.P.R. Decl. ¶ 22.
- "The staff has not explained our rights to us. What we learn is from the other people detained with us." M.M.V. Decl. ¶ 35.
- "They did not tell us about our *Flores* rights at all. We never received a paper with our rights." D.Z.C. Decl. ¶ 9.
- "I was not told about my rights or my daughter's rights. . . . I learned about *Flores* from another person detained here." K.O.C. Decl. ¶¶ 23-24.
- "I was not told about my children's *Flores* rights." P.G.P. Decl. ¶ 10.
- "No one told us our rights. No one told us about my son's rights or a case called *Flores*." Y.M.P. Decl. ¶ 9.

- "When we arrived at Dilley, there was an orientation but I only remember that they told me I would be deported. . . . No one has ever mentioned *Flores* to me or told me that my child and I have any rights related to conditions or release." Y.Z. Decl. ¶¶ 17, 21.

One mother explained:

> No one has given me a handout about my children's rights. I do not remember watching a video about my children's rights either. They showed us a video when we got here, but it was about immigration law and credible fear interviews. . . . I have not heard about my children's right to be released from Dilley without me. No one has told me anything about bond hearings.

M.G.O. June Decl. ¶¶ 16-19 [Doc. # 1811-12].

2. <u>ICE Presents Families with Incomplete, Confusing, or Incorrect Information About *Flores*.</u>

Families report that the only information ICE provides them about *Flores* is that their children cannot be detained for longer than 20 days. *See, e.g.,* W.P.P. Decl. ¶ 14 ("Several days after we arrived, maybe five days, there was an official who gathered us in a group and told us about *Flores* and said we could only be held here for 20 days. I don't remember learning anything else about other *Flores* rights. And anyway, we have been here far longer than 20 days."); Y.P.R. Decl. ¶ 8 ("The only thing they have ever said about *Flores* is that under *Flores*, children are not supposed to be here longer than 20 days. They had us sign a paper about that. But we have now been here for 70 days."); *see also* Y.M.P. Decl. ¶ 8; D.C.S. Decl. ¶ 10; S.R.A. Decl. ¶¶ 20-21.

Families report being confused by their meetings with ICE where they are asked to sign a document purportedly referencing a 20-day limit to detention pursuant to *Flores*. The paper they are asked to sign is in English, which most cannot read, and the 20-day

limit they are told about does not match their experience, since many families are detained far longer. L.R.V. Decl. ¶¶ 6, 9 [Doc. # 1811-9] ("ICE gave us a paper to sign that said that children can't be detained more than 20 days. But the ICE agent told us that even though the paper said kids couldn't be here more than 20 days . . . it really didn't apply to anyone in this facility. . . ."); K.O.C. Decl. ¶ 14 ("I signed a paper when I got here, but I don't know what it said. I was just recently traumatized and couldn't think straight."); M.A.B.H. Decl. ¶ 17 [Doc. # 1811-6] ("[T]hey made me sign the *Flores* paper. But they just put the paper in front of me and told me to sign it. They did not give me the paper after, and I did not get a copy of it, so I do not know what it says exactly."); G.Z.R. Decl. ¶ 24 ("When I got here, I was presented with a paper in English to sign. I think it said something about our rights, but it was not translated. I refused to sign it because I did not understand what it said."); I.O.R. Decl. ¶ 8 (same); Y.W. Decl. ¶ 6 (same); D.C.S. Decl. ¶ 10; S.R.A. Decl. ¶¶ 19-20, 22 ("The page was in English. . . . It said *Flores* applies and you can't be here more than 20 days. I signed it. . . . We don't have an official translator, and we don't receive a copy.").

When Plaintiffs requested a copy of the paper that families are asked to sign, Defendants stated they "ha[ve] no such document in use." Welch Decl., Attachment U ("D.' June 5, 2026 Correspondence to Pls."). Plaintiffs' counsel have not been able to verify what is being provided to class members despite requests to Defendants. Welch Decl. ¶ 14.

Families also report receiving information from ICE that is clearly incorrect and seems designed to discourage them from protecting their children's rights under the FSA. For example, ICE told one family, without explanation, that they "don't qualify for *Flores*." L.R.P. Decl. ¶ 16 [Doc. # 1811-11]. ICE told another family that they have "lost [their] chance to [use *Flores*]." J.C.B. Decl. ¶ 26 [Doc. # 1811-7]. Another family reported that "[a]ll the staff and ICE officers here say *Flores* doesn't work. It's history now. It's a story from back in the 1900s, it's buried." S.S. Decl. ¶ 70 [Doc. # 1748-24]; *see also* M.A.G.Z. Decl. ¶ 11 (". . . ICE said we could fight using *Flores*, but that it was not going to help us.").

3. <u>ICE's Materials Do Not Provide Meaningful Notice of Class Members' *Flores* Rights.</u>

ICE contends it satisfies its *Flores* notice obligations through (1) a generic immigration video, (2) a resident handbook, and (3) two documents (FSA Exhibit 6 and the I-770 form) that reference only the right to use the telephone, to a lawyer, and to a hearing before a judge. *Flores* ICE Juvenile Coordinator's Annual Report 2026 at 14, 18 [Doc. # 1802-1] ("ICE JC Report 2026"). Neither the video nor the handbook even mentions *Flores*, and the two documents do not address the vast majority of class members' rights. None of these materials comes close to informing class members of their comprehensive *Flores* rights. Welch Decl. ¶¶ 11-12.

The immigration video purportedly shared with families covers topics such as asylum eligibility, voluntary departure, and stipulated removal. Welch Decl. ¶ 11. It tells viewers that children have the same rights as adults and makes no mention that children

in immigration custody possess specific rights under the FSA. *Id.* ¶ 11. The video itself actually recognizes the need for individualized legal assistance: it informs viewers that they cannot ask questions or obtain additional information during the presentation and instead must use the law library or consult individually with a pro bono attorney. *Id.* ¶ 11. In any event, many families report never having seen the video. *See* E.N.P. Decl. ¶ 10 ("We have not been shown a video about our legal rights"); Y.P.R. Decl. ¶ 8 ("They have never given us an orientation or shown us a video about our legal rights."); L.Z. July Decl. ¶ 11 ("We have never seen a video about *Flores*, and no one talked to us about *Flores* rights besides what the paper said."); I.O.R. Decl. ¶ 8 ("They have never shown me or told me there was an immigration video we could watch."); A.C. Decl. ¶ 12 ("They have not shown us a video about our immigration rights"); T.C. Decl. ¶¶ 17-18 ("I do not remember ever seeing a video about my rights here . . . . I have never heard about *Flores* before."); Y.W. Decl. ¶¶ 14-15 (same); W.T.P. Decl. ¶ 8 ("The only video showing was *Bluey*—just *Bluey* the whole time. We were so tired."); K.O.C. Decl. ¶ 23 ("I was not shown a video that explained my rights."); J.O. Decl. ¶ 8 ("We were not shown a video about my children's rights or immigration. My friend told me that children have the right to be released after 20 days, but no one here has talked to me about that.").

To the extent families are provided the Resident Handbook, it similarly makes no mention of *Flores* rights.[1] *See* J.M.O. Decl. ¶ 49 ("The [hand]book doesn't mention

[1] Notably, the Resident Handbook that CoreCivic purportedly provides to Dilley detainees expressly authorizes "open access" to "group presentations on U.S.

*Flores*."); S.R.A. Decl. ¶ 26 ("The only type of handbook I've seen is the one in the room that explains how to use the phones."); Y.D. Decl. ¶ 9 ("They did not give us a handbook of the rules."); W.D.B. Decl. ¶ 18 ("We never received a handbook.").

4. Lack of Language Access Compounds Class Members' Confusion About Their *Flores* Rights and the Ability to Exercise Them.

Limited language access for documents and day-to-day communication compounds families' confusion about their *Flores* rights, leaves them unable to understand or verify what ICE tells them, and impedes their ability to exercise their rights. *See supra* Section II.A.2; J.C.M. Decl. ¶¶ 10-11 [Doc. # 1811-13] ("These papers are all in English. . . . [W]e don't receive the papers in our own language. For the *Flores* document, an ICE agent told me what it means, but the paper was still in English. We didn't get a copy of that one."); S.R.A. Decl. ¶ 22 ("When we have to sign something in English, the ICE agent just explains what it means to us, but we don't get it in Spanish."); D.L.R. Decl. ¶ 18 ("Everything I've signed here has been in English. There is no official translator; someone from ICE or CoreCivic just explains it to us."); X.W. Decl. ¶ 9 ("The language barrier makes life very difficult here. We mostly use hand gestures to express ourselves."); L.Z. July Decl. ¶ 30 ("There are a few workers who will use their phones to help translate. But most of the staff here will not."); Y.Z. Decl. ¶ 30 ("We cannot

---

immigration law and procedures and all other relevant issues related to the immigration court, appeals, and discharge processes, including a resident's legal rights." Dilley Immigration Processing Center Resident Handbook at 45 ("Resident Handbook"); Welch May 2026 Decl., Attachment A at 45 [Doc. # 1779-2]. Despite the handbook's statements, ICE has blocked service providers from providing *Flores* trainings. *See infra* Section II.A.6.

communicate with the staff. They do not have translators or staff who speak our language.”).

5. Families Face Barriers to Accessing Legal Service Providers to Help Them Understand Their Children’s *Flores* Rights.

Families also face barriers to understanding their children’s *Flores* rights because they are unable to make free legal calls or reliably send emails to their attorneys. Welch Decl. ¶¶ 16-18; Mukherjee July Decl. ¶¶ 38-43 [Doc. # 1811-4]. The FSA provides for broad access to attorney-client communication. FSA ¶¶ 32.A (allowing class counsel to meet with class members despite not knowing their names), 24.D(b)-(c), Ex. 6 (allowing class members to call lawyers and providing for class members to receive a list of free legal services); *see infra* Section III.A. Families at Dilley consistently report they have no way to make free phone calls to counsel. *See, e.g.,* M.A.B.H. Decl. ¶ 32 [Doc. # 1811-6] (“I have not been able to call lawyers and do not have money for lawyers.”); O.B. Decl. ¶ 12 [Doc. # 1779-18] (“I have not contacted lawyers because I thought I have to pay. This is the first time I am hearing I don’t have to pay for calling lawyers.”); S.D.C. Decl. ¶ 21 [Doc. # 1779-8] (“I haven’t been able to make any free pro bono calls here by using the system where you are supposed to mark 6. I saw a woman try it recently, and it did not work.”); Z.V. Decl. ¶ 24 [Doc. # 1748-21] (“I cannot call my lawyer for free either. I have to pay to call him on his cell phone. I have never heard anyone tell me I should be able to call my lawyers for free.”); E.N.P. Decl. ¶ 20 (“There is no way for me to place a call to my lawyer for free.”); M.M.V. Decl. ¶ 32 (“There is no way to call our attorney for free here. We have to pay each time we call our lawyer. Without money, we cannot

do that."); W.D.B. Decl. ¶ 27 ("[I]f I called my lawyer, I would have to pay for it."); L.Z. July Decl. ¶ 28 ("I can call the attorney at RAICES for free, but I have to pay to call my attorney in California."); Y.Z. Decl. ¶ 27 ("I have never been shown a list of free legal service providers or been told that I can make a free call to a lawyer."). Notably, one family reported that ICE or CoreCivic "showed [them] a list of legal services but told [them] that [they] couldn't have a copy of the list because the legal services wouldn't help a case like [theirs]." K.O.C. Decl. ¶ 16.

The last ICE Juvenile Coordinator Annual Report states that indigent residents may request free legal calls, ICE JC Report 2026 at 18 [Doc. # 1802-1], yet no family with whom counsel has spoken has ever known of that option. Welch Decl. ¶ 16.

> We never received information about how to call lawyers or how to call people for free. I only learned how to call *Flores* attorneys, because other people detained here gave me your information. I used my money to pay for that call, because I do not know how to make calls any other way.

M.L.S. Decl. ¶ 28 [Doc. # 1748-36]; *see also* W.P.P. Decl. ¶ 21 ("If we don't have money, we can't call anyone. That's my understanding of how it works here.").

Families also face constant barriers to emailing their lawyers. One family reports:

> In the library, there is no real access to the internet or email. The facility claims there is access, but I think they also know that in reality, there is not. . . . They say there is Gmail, but they know that it requires two-factor authentication, and no one here has access to their phones or other ways to complete the authentication, so Gmail is simply not available to people. Atomic mail is extremely unreliable, and people's emails often go undelivered. It is actually harming people and their cases. For example, my prior immigration attorney told me that she never received the emails I sent her from my Atomic email account. Finally, they allowed Proton mail. But Proton mail is only free for two weeks, and then it requires a subscription that costs about $5 per month,

> and which also requires a way to pay electronically. Most people cannot pay the fee, so after two weeks, they have to set up a brand-new email account, and they lose access to the previous one. This makes consistent communication with anyone, including legal counsel, difficult or impossible.

M.T. Decl. ¶¶ 12-13. Recently, families reported to Dilley staff that their emails were being blocked, which staff denied outright. *See* W.P.P. Decl. ¶ 28 ("We had a meeting where someone explained that our emails are blocked, and they just said that's not true."); *see also* L.Z. July Decl. ¶ 29 ("We also cannot sign in to Gmail because it requires two-factor authentication."); M.M.V. Decl. ¶ 34 ("We cannot use email here, and the computers are not helpful here because we cannot look things up. Most websites are blocked."); J.O. Decl. ¶ 26 ("I am not able to access my Gmail account here. It's a restricted URL. We are not permitted to access most public websites."); D.Z.C. Decl. ¶ 23 ("We can't access email. We can't search for anything. We try to look up information, and everything says that it's not available. None of the websites work, not even the ones that are on the list. The librarians are of no help. They said the websites on the list work, but it always just loads without opening.").

6. Defendants Have Refused to Allow Legal Service Providers to Present Know-Your-Rights Trainings About Class Members' *Flores* Rights.

Legal service providers are ready and willing to provide what a video, handbook, or untranslated document cannot. RAICES[2] has repeatedly offered to give regular presentations at Dilley to explain to class members their *Flores* rights. Altillo Decl. ¶¶

[2] Refugee and Immigrant Center for Education and Legal Services ("RAICES") is a legal and social services nonprofit organization based in Texas.

29-30 [Doc. # 1811-5]. Defendants have refused. After Plaintiffs asked in May 2025 that RAICES begin its previously approved training, Defendants first responded that ICE was assessing it, then that ICE had no plan to allow a KYR training, and then that the previously approved training was deficient, with no further explanation. Welch Decl., Attachment D at 3 ("Pls.' June 4, 2025 Dilley Letter"); Welch Decl., Attachment F at 2 ("Pls.' August 14, 2025 Dilley Letter"); Welch Decl., Attachment H at 3 ("Pls.' September 18, 2025 Dilley Letter"). Plaintiffs raised the problem again in letters and in filings with the Court. Welch Decl., Attachment I at 2 ("Pls.' October 23, 2025 Dilley Letter"); Welch Decl., Attachment J at 2-3 ("Pls.' November 25, 2025 Dilley Letter"); Pls.' September 2025 Resp. to Suppl. Juvenile Coordinator Reports and Data at 6 [Doc. # 1656]. Although ICE asserted that "[l]egal orientation programs (LOPs) are made available to educate minors" along with "free phone calls to legal counsel," families reported never receiving a rights training, and RAICES remained barred from providing one. Juv. Coord. Dec. 2025 Suppl. Rep. at 33 [Doc. # 1692-4]; Pls.' Resp. to Dec. 1, 2025 ICE Suppl. Rep. at 13-16 [Doc. # 1706]; Hidalgo Dec. Decl. ¶¶ 24-25 [Doc. # 1706-2].

In early 2026, Plaintiffs asked why ICE refuses to allow trainings by independent legal service providers. Defendants responded that in-person trainings are not required by the FSA and that outside organizations will not be permitted to conduct them at Dilley. Welch Decl., Attachment K at 2-3 ("Pls.' January 22, 2026 Dilley Letter"); Welch Decl., Attachment L at 2-3 ("Pls.' February 19, 2026 Dilley Letter").

Prior to Dilley's closure as a family detention center in 2021, RAICES provided in-person know-your-rights trainings to class members:

> In prior years, RAICES services included group legal presentations that would provide know-your-rights ("KYR") information to class members. Such presentations were essential in countering misinformation and lack of information detained class members commonly experience . . . . [P]resentations were also an important opportunity for detained class members to ask questions about their rights.

Hidalgo Dec. Decl. ¶ 24 [Doc. # 1706-2].

RAICES' training remains barred to this day, and its June 2025 FOIA request for the reason for the denial remains unanswered. Altillo Decl. ¶ 30 [Doc. # 1811-5]; Welch July 2026 Decl. ¶ 19 [Doc. # 1811-2]; Hidalgo Mar. Decl. ¶ 23 [Doc. # 1748-16]; Pls.' March 2026 Resp. to Suppl. Juvenile Coordinator Reports and Data at 13 [Doc. # 1748]; Pls.' Resp. to May 4, 2026 ICE JC Rep. at 14 [Doc. # 1779].

### B. Defendants' Failure to Advise Children of their Comprehensive *Flores* Rights Prevents Families from Effectuating their Children's Rights.

Defendants' persistent failure to advise children of their *Flores* rights has concrete consequences, preventing class members from challenging ongoing FSA violations at Dilley. The lack of information and understanding of *Flores* rights also compounds the harm of ongoing FSA violations and contributes to the physical and psychological harm class members experience at Dilley

**Children remain detained for prolonged periods.** Class members and their parents consistently express distress about their prolonged detention and lack of information about their release. *See, e.g.,* L.Z. July Decl. ¶¶ 14, 16 ("We do not know

when we will be released from here. . . . We feel like we have been lied to and tricked. It feels horrible."); S.N.K. Decl. ¶¶ 10-12 (confusion and lack of information caused mom distress-induced fainting spells); D.L.R. Decl. ¶ 52 (seven-year-old son continually asks mom at Dilley to "tell [him] what day" they will leave); E.N.P. Decl. ¶ 11 ("I am worried about my children and feel overwhelmed. My older son has been biting the inside and outside of his hands due to the stress of being here."); M.T. Decl. ¶ 39 ("The anxiety and depression we feel are the most logical outcomes of being plucked out of your normal life and shipped to a place you don't know, and then being locked up with no end in sight. This is a prison sentence that has no release date . . ."); W.T.P. Decl. ¶ 19 ("I hate being locked in here. I don't get any information about what is happening outside of here."); K.O.C. Decl. ¶¶ 13, 15 ("It's been so difficult to be detained with my daughter. . . . No one has given me information on when I'll leave, but they did tell me that they would try to deport me as soon as possible."); M.A.G.Z. Decl. ¶¶ 22-23 ("It feels like a prison. . . . The thing that really stresses us out is that we don't know when we are going to get out of here."); J.O. Decl. ¶ 10 ("When my kids first arrived here, they were very confused. I had tried to explain to them about immigration detention, but they were debating whether this place was a prison.").

**Medical and mental health care remain inadequate.** *See, e.g.,* L.R.O. Decl. ¶ 11 (20-week pregnant mother in a great deal of pain with continuous bleeding could not get ICE to approve a visit to obstetrician-gynecologist); X.W. Decl. ¶ 13 (eight-year-old son regresses behaviorally and wets the bed several times a week at Dilley); J.M.O. Decl. ¶¶

23-25 ("My son has regressed so much here. He doesn't talk anymore. He used to talk before coming here. There is no therapy here for children with autism. . . . Now, he gets no therapy. He is biting other people now, especially me. He is crying a lot. He is hitting. This is unusual behavior for him."); E.N.P. Decl. ¶ 17 (took four weeks for medical unit to treat severe eye infection); L.Z. July Decl. ¶ 22 (when medicine ordered, it can take up to five days to receive it); G.Z.R. Decl. ¶¶ 12, 17 (child experienced untreated serious rash and asthma symptoms, while mother experienced untreated hernia pain despite constant requests for medical aid); D.L.R. Decl. ¶¶ 37, 43 (child with respiratory issues denied breathing machine and mother with tumor denied appropriate medical care); M.M.V. Decl. ¶ 26 (no dental care besides extracting molars is available at Dilley); Y.Z. Decl. ¶ 23 (medical unit did not assist mother in excruciating pain when she suddenly stopped breastfeeding due to separation from her baby).

**ICE continues to deprive children of sleep due to the 24/7 lights and noisy nighttime patrols.** *See, e.g.,* T.C. Decl. ¶ 25 ("Sleeping is hard here because the light is on for 24 hours and because our worries keep us up all night."); X.W. Decl. ¶ 18 ("He is also afraid to go to sleep because of the nighttime patrols, but then in the morning, he does not want to wake up. At night, the lights are too bright for him, and the staff do rounds and make noise, so it is very hard to sleep."); Y.P.R. Decl. ¶ 12 ("We suffer a lot because they make us keep the lights on throughout the night. My daughter and I can't sleep, and we try to put something up to block the lights. It doesn't work. My daughter often stays up until 11:30 p.m. or later because she can't fall asleep."); A.D.G. Decl. ¶ 10

("It's really hard to sleep here with the lights on all night."); M.M.V. Decl. ¶¶ 21-22 (sleeping is impossible due to the thin mattresses, lights on all night, noise, and cold rooms).

**Children continue to lack healthy, child-friendly foods and potable water.** *See, e.g.,* S.N.K. Decl. ¶¶ 18, 20 ("The food here is not good. My brothers aren't really eating the food. . . . The water smells here. I tried drinking it, but I couldn't drink that water. It has some kind of bad, different flavor. We buy the bottled water from the commissary."); L.R.O. Decl. ¶¶ 8-9 ("They don't have food for small children here. My son isn't eating most of the food. It's too processed and spicy. . . . I don't have the money to buy water, so we're not really drinking any."); M.T. Decl. ¶ 18 ("The food here is also a big problem. It is not fresh, and it is not prepared well, and there is not a variety of nutritious food."); L.Z. July Decl. ¶ 24 ("We have to buy water from the commissary because the water here tastes horrible. We have stayed away from the water since we got here. I cannot describe what it is like; there is just this awful smell. So, for the over 160 days we have been at Dilley, we have always bought water."); J.P.R. Decl. ¶ 33 ("I feel hungry a lot here.").

**Guards continue to treat class members harshly and without regard for their vulnerabilities as children.** *See, e.g.,* D.L.R. Decl. ¶¶ 30, 34 ("An officer threatened to hit my seven-year-old the other day . . . . [A staff member] said the officials . . . where we live[] are not prepared to be around kids."); J.M.O. Decl. ¶ 32 ("One time, an officer told my son to sit and play quietly. I explained that he has autism, and the officer said, 'Oh, so

now everyone has autism,' because another child had recently arrived with autism."); M.G.O. July Decl. ¶ 6 ("The staff here continue to be extremely rude and yell at the kids. . . . They are always threatening us with reports even when our children are having normal childhood behaviors."); J.O. Decl. ¶ 16 (five-year-old and three-year-old both started wetting the bed once they arrived at Dilley and staff would not let mother wash the sheets); N.A.P. Decl. ¶¶ 30-31 (child with autism is not shown patience or respect by staff).

## III. ARGUMENT

### A. The FSA and This Court's Orders Require Meaningful Notice of *Flores* Rights.

The FSA requires Defendants to provide minors in its custody "with a notice of rights, including the right to a bond redetermination hearing if applicable." FSA ¶ 12.A. This Court has already defined that duty, holding that Paragraph 12.A "must be read to provide a broader notice of rights than provided for elsewhere in the FSA, and at minimum should include a notice of rights pertaining to custody and release such that Class Members may act upon them." Sept. 18, 2020 Order at 5-6 [Doc. # 987]. The Court noted that the "lack of notice regarding the FSA and its provisions" prevents children from enforcing their rights. *Id*. at 8 n.4.

Further, the Court ordered the Parties to develop a process for providing that notice in a manner that does not "cause[] confusion and unnecessary emotional upheaval." Order re Updated Juvenile Coordinator Reports at 2, May 22, 2020 [Doc. # 799]. In a parallel context, the Court has held that legal service providers should have "near-

unfettered access to minors in custody." Sept. 4, 2020 Order re Plaintiffs' Motion to Enforce Settlement as to 'Title 42' Class Members at 16 [Doc. # 976]; *see* FSA ¶¶ 32.A, 24.D(b)-(c), Ex. 6. The Court has also approved language stating that class members may consult attorneys about their *Flores* rights "as often as needed." *Flores* Settlement Agreement Notice of Rights Pursuant to September 18, 2020, Court Order, January 5, 2021 at 2 [Doc. # 1056-1] ("2021 Notice of Rights"). And in January 2021, the Court approved a Notice of Rights, finding it ready for "dissemination." Mar. 19, 2021 Order at 2 [Doc. # 1098]; Order re Order Discharging Order to Show Cause and Appointing Special Master and Independent Monitor, August 17, 2026 at 15-16 [Doc. # 1827] ("Aug. 17, 2026 Order").

These orders followed the Court's prolonged efforts to remedy the absence of an adequate know-your-rights protocol at Dilley. *See* Order re Defendants' [Ex Parte] Application to Stay Proceedings at 2, July 25, 2020 [Doc. # 887] ("Until the Parties evidence some agreement regarding a know-your-rights protocol, there is none"); Order re August 7, 2020 Status Conference, August 7, 2020 at 2 [Doc. # 914] (Court "impose[d] a remedy [to the missing know-your-rights protocol] for Defendants' past and ongoing violations of Paragraphs 12, 14, and 18 of the FSA" regarding the right to release).

Plaintiffs ask that the Court apply these holdings to current conditions at Dilley to ensure that (1) class members receive notice of their *Flores* custody and release rights sufficient to "act upon" them; (2) legal service providers have "near-unfettered access" to

class members such that they can provide know-your-rights trainings; and (3) class members may consult with attorneys about their *Flores* rights "as often as needed." 2021 Notice of Rights at 2.

**B. Defendants' Materials and Practices Do Not Satisfy These Obligations.**

Defendants assert that the immigration video, handbook, and documents satisfy their obligations. They do not. Defendants' position guarantees no meaningful notice of rights for children just arriving at Dilley after traumatic arrest experiences and exhausting travel or for children detained in prison-like conditions for weeks and months on end.

*First*, none of these materials tells families what the FSA requires. A video and a handbook that never mention *Flores* cannot inform a child of rights under the FSA, including the standards for safe and sanitary conditions, medical and mental health care, food, education, and recreation, and the right to release. Showing families a document they cannot read, telling them it says something about a 20-day detention limit, and providing no explanation of what their rights are in the detention facility or how to pursue release simply cannot adequately or meaningfully inform children of their rights. A child who does not know these rights exist cannot identify a violation, seek assistance, or take steps to vindicate them. *See* Pls.' Sept. 22, 2023 Resp. to JCM Report at 6-7 [Doc. # 1362].

*Second*, the materials are poorly suited to their audience. The video uses complex language delivered by an artificial voice and devotes much of its time to asylum disqualifications and forms of removal. Chiapetta Decl. ¶ 3 and Attachment A; Welch

Decl. ¶ 11. To the extent that ICE officials instruct some families to sign documents they don't understand, this only leads families to feel intimidated and confused. *See supra* Sections II.A.2, II.A.4.

*Third*, Defendants provide no process for class members to ask questions about their *Flores* rights. The video itself specifically says viewers cannot do so. Families consistently report that they remain bewildered about their children's *Flores* rights. *See supra* Section II.A.2.

Defendants' own standards reject use of a video. The ICE Family Residential Standards state that "[a]n electronic presentation will not be considered a replacement or substitute for an in-person or live [legal rights] presentation, when available." U.S. Immigr. & Customs Enf't, Family Residential Standards § 6.4(M) at 416 [Doc. # 1567-13] ("FRS"). Plaintiffs rely on § 6.4(M) not as an independent source of obligation, but as ICE's own recognition of what an adequate notice of rights requires. The Resident Handbook likewise authorizes "open access" to "group presentations . . . including a resident's legal rights." Welch May 2026 Decl., Attachment A at 45 [Doc. # 1779-2]. Live presentations are available and could be easily provided. Altillo Decl. ¶ 30 [Doc. # 1811-5].

**C. The Court-Approved Notice Should Be Updated to Reflect Current Detention Practices.**

As discussed above, nearly six years after this Court's orders, Defendants have yet to finalize a process for notifying class members of their comprehensive *Flores* rights, despite deciding to re-open family detention in 2025. Plaintiffs are aware of no child at

Dilley who has received the court-approved 2021 Notice of Rights or anything like it. Meanwhile, circumstances have changed in this iteration of family detention such that an updated notice of rights is necessary. For example, ICE has barred legal service providers from giving know-your-rights presentations. Welch Decl. ¶ 13. Families repeatedly tell class counsel that they have difficulty making calls to attorneys and scheduling timely meetings with legal service providers. *Id.* ¶ 16. Additionally, most of the families Plaintiffs' counsel have met with over the past year and a half were arrested in the interior of the United States, not at the border. Many of these class members lived here for years and had close ties to their communities and schools, including to potential caregivers in their communities. *See, e.g.*, M.T. Decl. ¶¶ 4, 7 ("We are lawful permanent residents and have lived in California for the past 12 years . . . . I love this country, and I have served it in my work as a community college professor and training PhD students"); S.N.K. Decl. ¶ 5 ("We have been living in Seattle for two years. I was a senior in high school and the captain of my soccer team."); K.O.C. Decl. ¶¶ 5-6 (after having lived in New Orleans for two years with seven-year-old daughter, "[w]hen [her] [non-detained] husband told her [daughter's] teachers she was detained, they were so upset."); M.A.G.Z. Decl. ¶¶ 2, 9 ("I have been living in El Paso for over four years. . . . I am on the varsity cheerleaders dance team . . ."); M.M.V. Decl. ¶ 5 ("I was living with my mom and dad for four and a half years in Chicago and California. . . . I had a GPA above 3.5 and played on the varsity soccer team as the goalie."); L.R.P. Decl. ¶¶ 5-6 [Doc. # 1811-11] (lived in the United States for 3.5 years, and her siblings missed graduation because they were

detained at Dilley). Our interviews with class members show that these families have different questions about their children's custody and release rights than recent border arrivals. Welch Decl. ¶ 5.

Unfortunately, one thing has not changed in this iteration of family detention: children's prolonged detention. The need for meaningful information about class members' *Flores* rights is all the more acute because so many children are held at Dilley for extremely long periods. ICE's prior JC reports indicate that nearly 1,560 children were detained at Dilley for over 20 days during just one six-month period. Pls.' Resp. to ICE JC Annual Report at 3 [Doc. # 1811]. For the thousands of children held over 20 days, understanding *Flores* rights concerning conditions, medical care, education, and release are of paramount importance. *See, e.g.*, M.M.V. Decl. ¶ 38 ("[S]peaking with the *Flores* lawyer now is one of the first times we are hearing about our rights. In the 36 days we've been here no one else has explained anything."). Plaintiffs proposed an updated notice to Defendants in April 2026. Welch Decl. ¶ 5. Defendants have never offered a meaningful response to this proposed notice. *Id.* ¶¶ 8-9.

### D. Regular Know-Your-Rights Presentations Are Necessary to Inform Class Members of Their *Flores* Rights.

A clear, comprehensive notice is the first step toward ensuring class members understand their *Flores* rights, but it is not enough. Whether a family wants or is able to pursue a child's release depends on individual circumstances that a parent, let alone a child, cannot assess without a lawyer. The Court has recognized that families may consult attorneys about *Flores* rights "as often as needed," and Defendants' own standards

promote live presentations whenever they are available. 2021 Notice of Rights at 2; FRS § 6.4(M) at 416 [Doc # 1567-13]. Weekly live presentations by qualified providers would allow families to learn that the Settlement exists, ask questions, and arrange individual consultations.[3]

The relief Plaintiffs seek is narrow: Provide a clear and comprehensive notice of *Flores* rights and make that notice meaningful through access to legal services. This includes implementing what CoreCivic's Resident Handbook already promises: allow legal service providers to give know-your-rights presentations, announce them in advance, and give all class members and their parents an opportunity to attend. Welch May 2026 Decl., Attachment A at 45 [Doc. # 1779-2]. After more than a year of ongoing violations and no cure, an enforceable process is warranted.

## IV. REQUESTED REMEDIES

Plaintiffs therefore respectfully request the Court order Defendants to implement the following:

1. **Notice of Rights.** Within 24 hours of arrival, Defendants must provide every class member and accompanying parent(s) or guardian (s) with a copy of Plaintiffs' proposed *Flores* Settlement Agreement Notice of Rights that they are able to keep. Welch Decl., Attachment T at 1-2. The notice must be provided in a language the class member and their family understand and, if the class

[2] Notably, when the Parties last considered a notice of rights, DHS was permitting in-person know-your-rights presentations weekly. Welch Decl. ¶ 5.

member or their parent is unable to read, Defendants must provide an oral translation using an interpreter.

2. **Information on legal assistance.** Defendants must provide every class member and accompanying parent(s) or guardian(s), upon arrival and in a language they understand, an updated list of free legal service providers and written instructions for contacting them, their previously retained attorneys, and *Flores* counsel free of charge by telephone and email. Defendants must also ensure the free legal call and email systems are operational, and provide a means to report and promptly remedy malfunctions.

3. **Weekly live know-your-rights presentations.** Defendants must permit and facilitate weekly in-person presentations by qualified, independent legal service providers on class members' rights under the Settlement, including a suitable, confidential space, reasonable advance notice to residents, time for questions, and information on scheduling individual consultations.

4. **Records and reporting.** Defendants must maintain and share regularly with Plaintiffs records showing, for each class member, the date and language in which the Notice of Rights was provided, the legal assistance information provided, and the dates live know-your-rights presentations were offered. Defendants must file a status report with the Court regarding compliance within 30 days of the order and provide updates in the Juvenile Coordinator reports.

## V. CONCLUSION

Plaintiffs respectfully request the Court grant their motion to enforce the *Flores* Settlement Agreement and enter the proposed order filed concurrently herewith. The rights the Settlement guarantees cannot protect children if Defendants never tell them those rights exist or give class members meaningful access to the legal service providers who can explain them.

Dated: November 20, 2026

CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW
Carlos Holguín
Bardis Vakili
Sarah Kahn

NATIONAL CENTER FOR YOUTH LAW
Mishan Wroe
Diane de Gramont
Rebecca Wolozin

CHILDREN'S RIGHTS
*/s/ Leecia Welch*
Leecia Welch
Eleanor Roberts

*Attorneys for Plaintiffs*